UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of (LTS)<br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors[1] | Case No. 17-BK-3283<br><br>PROMESA<br>TITLE III<br>re: ECF No. 18239, 18253,1879, 19131, 19736, 19615, 20026, 20216, 20220 |

**REPLY TO DEBTOR'S MOTION IN OPPOSITION TO URGENT MOTION REQUESTING ORDER FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE PRIORITY CLAIM FILED BY JUDGMENT CLAIMANTS OF THE DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS OF THE COMMONWEALTH OF PUERTO RICO**

To the Honorable United States District Court Judge Laura Taylor Swain:

NOW COME, the group creditors in the litigation captioned: Juan Perez Colon et al. v. Puerto Rico Department of Transportation & Public Works, Case No. KAC1990-0487 (the "Perez Colon Master Claim no. 30851") and the group creditors in the litigation captioned: Jeanette Abrams Diaz et al. v. a Department of Transportation & Public Works, Case No. KAC-2005-5021 (the "Abrams Diaz Master Claim No.50221") by and through the undersigned attorney, to respectfully state, allege and pray:

**I. PRELIMINARY STATEMENT**

1. On September 24, 2021 and pursuant to sections 503(b)(1)(A) (i) and (ii) and section 507(a)(2) f the United States Bankruptcy Code (the "Bankruptcy Code"), Movants filed a

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

filed a Motion to seek an Order allowing and mandating immediate payment in Cash, and as an administrative expense priority, of the total pre and post-petition unpaid portion of regular wages awarded by judgment, by Commonwealth court of First Instance, for services rendered to the Debtor by the Juan Perez Colon and Jeannette Abrams group claimants, including the payment of the attorney's fees awarded in favor of the plaintiffs in the case of Juan Perez Colon, since their claims are within the specific category of administrative expenses allowable under § 503(b)(1)(A),(i) and (ii), and under the "fundamental fairness" doctrine derived from Reading Co. v. Brown, 391 U.S. 471 (1968). Mot at 4, 6. See docket entry No.18239.

2.   The Financial Oversight Board [hereinafter FOMB] filed an objection to Movants Motion[2].

3.   The Oversight Board alleges that claimants does not qualify for priority payment because the claim arise prepetition.

4.   For the reasons discussed below, the Movants, as judgment claimants respectfully request that the Court to disregard or deny Debtor's objection and grand Movants Motion requesting Order for allowance and immediate payment of administrative expense priority under subsection (A) (ii), and order Debtor to pay in full the back pay award pre-petition, as an administrative priority for the following reasons:

II.   **The statutory basis for payment as Administrative Expense Prepetition Employees Wages and Benefits**

As fully brief in the Urgent Motion requesting allowance and immediate payment of administrative expense priority, Section 507 (a)(2) of the Bankruptcy Code, divided into

---

[2] See docket entry No.20220. Nonetheless, here must be clarified that the Oversight Board opposition, only address in their motion, Movants claims attributable to the pre-petition period of the unpaid back pay award. See Mot. at 1 and footnote no. 3.

2

nine separate subparts, and defines the various types of creditor claims against a debtor that enjoy administrative status. Also, as to employees' wage claims § 503 (b) (1) (A) provides applicants for administrative priority for the payment of wages and salaries, as administrative priority, if satisfy certain requirements. According to the bankruptcy code's history, originally only post-petition wage, and salary claims could be treated as administrative expenses, under subsection (A) (i).

However, on April 20, 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") which added subsection (ii) to Section 503(b) (1) (A) to provide an additional category of administrative claims, separate from subsection (i). See, e.g., Truland, 520 B.R. at 202-03; Philadelphia Newspapers, 433 B.R. at 173-74. This wage priority provides the statutory basis for payment for Movants pre-petition wage claims, as ahead will be discussed in more detail.

Subsection (A) (ii) of the BAPCPA Amendments, provide administrative status to: "wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered," so long as the payment of such claims won't substantially increase the likelihood of layoffs or terminations of the company's employees.

This legislative text is significant because helps to explain why some courts have confusion with respect the interpretation of the 2005 BAPCPA amendment. This because under prior law, the timing of when the employee's wage related claim arises, and its resulting administrative or priority status was of importance, in cases were the employer

3

laid off employees prior to the filing of a bankruptcy petition, since the workers had stopped working prior the bankruptcy petition, and upon the reading of section (A) (i) they would have prevented the resulting back-pay awards from being granted administrative claim status. The claim arose pre-petition when the violation occurred and no services were rendered after commencement of the case.

Therefore, when the objection submitted by the Board is analyzed, can be determined that said party presents a series of arguments to try to persuade this court that priority payment for pre-petition claims are not allowed, utilizing a pick-and-choose approach that cannot be gleaned from the statutory text, the Bankruptcy Rules, the Civil Rules, or any combination of those sources. To cinch the matter, the debtors' position finds no purchase in the case law.

First, and as an example, the Oversight Board, to try to establish their theory, that wage claims are entitled to administrative expense priority, only on the basis of work done by employees after the filing of the petition, relying in the cases of In re Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and In re Bos. Reg'l Med. Ctr., Inc., 291 F.3d 111, 126 (1st Cir. 2002).

However, both cases are clearly inapplicable to the present case, since were decided prior the 2005 BAPCPA amendment.

Also and although the facts and controversy is clearly distinguishable from the facts relating to Movants Administrative expense claim, the Oversight Board cite In re Old Carco LLC, 424 B.R. 633, 650, 657 (Bankr. S.D.N.Y. 2010), aff'd, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y.), decided in Nov. 2, 2010), to persuade this court as to the critical fact, that the timing of the consideration supplied by the creditor is critical. The Oversight Board's theory is that when …the consideration supporting the claim is

4

supplied pre- petition, courts have determined that those claims are not entitled to administrative priority, even if the right to payment arises post-petition. Mot. at 10.

Movants objects the Boards' argument, as to the timing of the consideration supplied by the creditors, because Old Carco concerned a completely different scenario and controversy and therefore, inapplicable. Specifically, because said case is related with the complaint of certain car Dealers that argued, that the Debtors were obligated to comply with the requirements of the Dealer Laws. As such, the Affected Dealers maintain that their claims are entitled to administrative priority, under the Reading line of cases, as costs associated with failure to comply with the Dealer Laws, which constitute costs incident to the operation of a business; or pursuant to 28 U.S.C. § 959(b).

In addition, because that case, nowhere discusses the administrative priority granted to employees for work performed under subsection (A) (ii) and therefore the Board's case interpretation is seriously misleading[3].

For the same reason, Movants oppose the Oversight Board argument, since is in clear conflict with the rules of statute interpretation, when make reference to the phrase included in section (A)(ii), that the back pay must be attributable to any period of time occurring after commencement of the case under this title and Movants claims seeks

---

[3] Although, the Board also cites the Opinion and Order entered by this court Denying the DRA Parties Motion for allowance of an administrative Expense [ECF 18892], Movants object its application to the case at bar, on the basis of claims and facts....are completely different from those of Movants. The claim underlying the DRA Motion was for the misappropriation or conversion of property belonging to the DRA or HTA, and the Court has already explained why neither entity has a property interest in the retained Act 30-31 Revenues, and such claims. Therefore are not a basis for an allowable administrative expense claim under section 503(b)(1)(A). Also because the reference case, the DRA claims were not bases on subsection (A) (ii), since the DRA partied did not have a back pay judgement in their favor, and there was no post petition transaction conferring post petition benefits on the Commonwealth to support allowance of an administrative expense claim for the DRA Parties under section 503(b) (1) (A).

5

payment for back pay awarded for pre-petition period, and concludes that the pre-petition back pay is inapplicable under bankruptcy code cited disposition.

Movants submits that said interpretation is incorrect, since the phase read in isolation. or standing alone, -does not compel either a broad or a narrow reading.

In addition, because it is difficult to say whether this phrase was meant to signal a distinction or was merely a product of inartful drafting.

Therefore, Movants insist in that this priority Rule (A) (ii) was adopted in 2005 — when Congress enacted the BAPCPA amendment. Thus, the drafters of the rule must have been aware of the dichotomy that Congress created in regards subsection (A) (i). Had the drafters wished to restrict the applicability of the Bankruptcy Rules to post-petition judgments alone, they simply could have used sub-section (i) definition. The fact that the drafters took a different tack suggests that the language employed should be read more broadly. Cf. Ross v. Blake, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) ("When Congress amends legislation, courts must 'presume it intends [the change] to have real and substantial effect.'" (quoting Stone v. INS, 514 U.S. 386, 397, 115 S. Ct. 1537, 131 L. Ed. 2d 465 (1995))).

Also because further support for a broad reading of subsection (ii) and the phrase "as a result of a violation of federal or state law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, during the case under this title".

This language suggests that Congress envisioned a difference between "cases under subsection (i) and Sub section (ii) in title 11 and core cases.

Such a conclusion follows from the venerable principle that, whenever possible, courts should construe statutes to give meaning to each word or phrase. See Gustafson v. Alloyd Co., 513 U.S. 561, 574, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995); Akebia Therapeutics, Inc. v. Azar, 976 F.3d 86, 94 (1st Cir. 2020). Applying this principle, the fact that "back pay judgments under subsection (ii) appears in addition to core cases "arising under title 11" lends credence to the view that these are two distinct (albeit overlapping) categories of cases. If both phrases were intended to define the same universe of cases, there would have been no point in Congress using two phrases and joining them with a conjunction. "under title 11" taxonomy employed by the drafters of the Bankruptcy Rules, it surely leaves that door wide open. See Phar-Mor, 22 F.3d 1228 at 1237 n.14 (explaining that, even though this phraseology does not "clearly encompass 'related to' cases, it does not foreclose the possibility").

In addition, because here, Movants consider telling, that when Congress drafted subsection(A) (ii), made no effort to distinguish between pre or post-petition back pay judgments, when formulating the propriety rule. Congress was aware of subsection (A) (i) but eschewed that distinction when drafting Subsection (ii).

In view of the above considerations, Movants see no conflict between broad constructions of subsection (A) (ii), since this priority provision would make no sense if the debtors' interpretation were correct. Particularly, because the canons of statutory interpretation do not favor constructions that reduce words or phrases within a statute to mere gibberish. See Nat'l Ass'n of Mfrs. v. Dep't of Def., 138 S. Ct. 617, 632, 199 L. Ed. 2d 501 (2018) (explaining, "the Court is 'obliged to give effect, if possible, to every word Congress used'" (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979)).

Other scholars also acknowledge the same interpretation. See R.J. Keach, BAPCPA and WARN Act `Back Pay:' Now, Timing Isn't Everything," 24-Jan. Am. Bankr. Inst. J. 26 (2006) ("`Plain meaning' advocates will have little trouble applying this section to create administrative claim status for WARN Act back-pay awards arising out of pre-petition layoffs or facilities closings where the notice period runs, and the liability for and amount of the back-pay award is adjudicated post-petition."); see also Honorable Wm. Houston Brown, 2005 Bankr. Reform Legis. with Analysis 2d § 9.71 (2006) (stating that under BAPCPA "administrative have been expanded to include certain class of claims or interest"

What is more, Read in context, subsection (ii) intends to balance the clear statutory purpose, that intends to protect employees who performed services for the bankrupt prior to the filling of the petition and that have back pay awards, as a result of a violation of Federal or State law by the debtor and in the other hand, ensure the fundamental role of a Debtor under Chapter 11 is rehabilitation and ascertaining a successful reorganization of debtors, by requiring that the creditors present evidence that establish that the payment of such claims won't substantially increase the likelihood of layoffs or terminations of the company's employees. See In re Escalera Res. Co. Case No. 15-22395-TBM decided by the Bankruptcy court for the District of Colorado, and were the court granted employees pre-petition wage claims.

To said regards, is relevant to mention that Escalera court, made a comprehensive analysis of the underlying Congressional purpose, under Chapter 11 reorganizations and statutory wage priority provisions, and concluded, that unless the bankruptcy estate is administratively insolvent, claims for employees' wages and benefits are required to be paid in Chapter 11 reorganizations.

8

Therefore here is highly telling that in the Board's opposition we only find a bald complaint about how Debtor's disagree with the idea of priority payment of pre-petition judgments, which is evident that said party try to shield itself from liability and obtain a blanket immunity, even though there is a final judgment entered by a state court against said party, for violation of state and federal wage laws and the evidence introduced by Movants clearly demonstrated debtors liquidity and ability to pay Movants pre- petition claim substantially increase the likelihood of layoffs or terminations of the company's employees.[4]

Also because illustrate the lack of substance of the Oversight board's arguments, that in the Opposition Mot at 10, and to try to escape liability for the payment of a pre-petition wage award, the Oversight Board represents, that the critical fact, is the timing of the consideration supplied by the creditor, by citing In re 710 Long Ridge Rd. Operating Co., II, LLC, 505 B.R. 163, 175 (Bankr. D.N.J. 2014). Particularly, because a careful review of the Court determination, court expressed the contrary view, by stating that agree with the Taylor court, (Taylor, 388 B.R. 115 at 118), to express that "This Court, too, is reluctant to insulate a debtor's wrongful conduct based solely on the vagaries of timing."

This statement is relevant to the present case, since the priority seek by Movants, as stated above, is in accordance to the "the interest of the United States (Congress), in eradicating unfair labor practices. So, there is a great public interest in that the back pay claims under sub section (A)(ii) be given the additional sanction of priority in payment." Nathanson, 344 U.S. 25 at 28, 73 S.Ct. 80.

---

[4] To said effect is highly telling debtors mot at 7, were asserts that "the remaining context of section 503 (b) is of no avail."

9

Also because, the focus on the timing of vesting, as the Oversight Board pretends to argue, contradicts the Truland Court's view, since is inconsistent with the plain language of subsection (ii) of Section 503(b) (1) (A)—that the employees are entitled to an administrative expense "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered [.]" 11 U.S.C. § 503(b) (1) (A) (ii).

As another example of the pick-and-choose approach, Movants bring the Board's argument as to other courts have likewise interpreted the phrase "attributable to" refer to wages and benefits that accrue post-petition, and the reference made by the Board to In re Calumet Photographic, Inc., No. 14-08893, 2016 WL 3035468, (Bankr. N.D. Ill. May 19, 2016) Mot at 9, since said argument is inevitable arbitrary, and incorrect. Particularly, when is considered that the different categories of priority included in sections of 503(b)(1)(A) must be read independently, because introduces a non exhaustive, demonstrative list, See In re Truland Grp., Inc., 520 B.R. 197, 203 (Bankr. E.D. Va. 2014) (concluding that the use of the word "and" "does not require [claimants] to satisfy both subsections"); In re Philadelphia Newspapers, LLC., 433 B.R. 164, 174 (Bankr. E.D. Pa. 2010) (same); Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.), 394 B.R. 765, 774 (Bankr. D. Del. 2008) (same).

Any other reading of this section is unreasonable. Moreover in Truland Grp., 520 B.R. at 203 the court expressed that "No one would seriously suggest that an administrative claimant must satisfy all nine subsections in Section 503(b) in order to qualify for administrative expense treatment."); Philadelphia Newspapers, 433 B.R. at 174 ("The nine categories are independent of each other just like subsections (i) and (ii)

10

of § 503(b)(1)(A)."). The plain language of section 503(b)(1)(A) therefore requires that an applicant satisfy only one of its subsections.

Also, because courts have determined that the list of specific administrative expenses provided by § 503(b) of the Code is illustrative, rather than exclusive; § 503(b) begins by directing allowance of administrative expenses "including" those listed. When Congress used "including" in the Code, it intended that the term be construed as "not limiting."

Therefore, and when is considered that a back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. The award of back pay damages can be entered pre-petition or post-petition. See In re 710 Long Ridge Rd. Operating Co., II, LLC, 505 B.R. 163, 175 (Bankr. D.N.J. 2014)

Consequently, Movants also objects, for being equally misleading, the Oversight Board reliance In re 710 Long Ridge Rd. Operating Co., II, LLC, 505 B.R. 163, 167 (Bankr. D.N.J. 2014), since the claimants in referenced case did not qualify for priority status, because did not have a back pay award and there is an absence of authority to support the Oversight Board contention as to the inapplicability od pre-petition wage awards under subsection (A) (ii).

To the contrary, the Long Ridge Rd Court responded that within the Bankruptcy Act, it could find "no warrant for giving these back pay awards any different treatment than other wage claims enjoy."

In light of the statutory language of sub section, (A) (ii) the prepetition back pay claims, owing to the Movants, are entitled to priority regardless of the time they accrued.

For been highly illustrative, we bring to the court consideration that in Nathanson,

11

the Court's discussion regarding back pay was in response to the NLRB's argument that "the interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment." Nathanson, 344 U.S. at 28, 73 S.Ct. 80

That explains why the Oversight Board's objection fails to argue and rely in the unreasonable proposition that "the rest of sub section (A) (ii) is of no avail [see Mot. at 7]. This statement, let alone demonstrates the express intent to minimize and evade Debtor's obligation with respect of the back pay judgments, based on sub section (A)(ii) as priority, which is the best evidence that the Oversight Board's argument misconstrue the case law, and they cobble together in support of the pick-and-choose approach.

Also, because as a practical reality, section 105 (a) provides the bankruptcy court's equitable powers. Scrivner v. Mashburn (In re *5 Scrivner), 535 F.3d 1258, 1262-3 (10th Cir. 2008). Such equitable powers permit the bankruptcy court to fill in statutory gaps. Redmond v. Jenkins (In re Alternative Fuels, Inc.), 789 F.3d 1139, 1146 (10th Cir. 2015). For example, in Alternative Fuels, the Tenth Circuit acknowledged that the Bankruptcy Code did not expressly address re characterization of debt as equity. Nevertheless, the appellate court confirmed that Section 105(a) provided the statutory basis for the bankruptcy court to re characterize debt as equity because " re characterization under § 105(a) is essential to a court's ability to properly implement the priority scheme of the Bankruptcy. Therefore, courts have the flexibility to deal with extraordinary situations, if justice so requires.

More so here, when the Oversight Board, in In re Fin. Oversight & Mgmt. Bd. for P.R., argued, consistent to Movants' position, "that payment of prepetition claims can constitute an administrative expense if they are necessary to preserve the estate. Section

12

503(b) provides that, "after notice and a hearing, there shall be allowed administrative expenses... including–the actual, necessary costs and expenses of preserving the estate, including wages, salaries, that the first clause of Section 503(b) (1) limits administrative claims to those that are "actual, necessary costs and expenses of preserving the estate." That language does not limit those costs to post-petition costs. While the statute goes on to say, that administrative claims include "wages, salaries or commissions for services rendered after the commencement of the case," the language, rather than being limiting, is inclusive. In re Fin. Oversight & Mgmt. Bd. for P.R., 931 F.3d 111, 112 (1st Cir. 2019)

Therefore – and indeed, said expressions are dispositive, in the present case when is considered that the Oversight Board, does not dispute in its opposition that the pre-petition services rendered by Movants benefited the state (DTOP) nor that the underpayment of regular wages mandated by state and federal minimum wage laws, the Debtors 'obtained an unjust enrichment. Therefore, under mentioned circumstances, the characterization regarding the claim aroused pre-petition is immaterial. Particularly, because one fundamental justification for the priority under 503 (b) (1) (A), is that the debtor benefited from the essential services provided by employees and therefore, the bankrupt employer should expect to bear the cost of wage laws violations

Furthermore, because here Movants presented evidence about the Commonwealth cash deposits and is uncontroverted the debtor's ability to pay the back pay award without affecting or jeopardizing the Commonwealth reorganization process.

This outcome is consistent with the goals of the Bankruptcy Code to guarantee Debtor reorganization, by obtaining employees support, and preventing massive resignations, in recognition that the continued contribution of its employees' labor is integral to obtaining employees productivity and an effective reorganization.

13

Also and even if some could argue that debtor may be able to find replacements, as a practical matter failure to pat employees the correct regular wage, no doubt will jeopardize the Commonwealth reorganization, since no debtor can afford to lose very many of its employees. Especially, when this court must acknowledge, that significant turnover of employees will likely lead to operational problems that negatively affect the debtor's business. Also in some areas – massive employee turnover can inhibit a debtor ability to perform its essential duties. Employee familiar with debtors operations and history are essential to prevent interruption of services and comply with operating requirements.

In view of the above, Movants submits that their claims fall under the umbrella of administrative expense claims under the Bankruptcy Code. The "general rule" for administrative expense claims under section 503(b) is that the claimed expense "must (a) confer an actual and demonstrable benefit on the debtor's estate, the creditors, and to the extent relevant, the stockholders, and (b) arise from a transaction with a bankruptcy estate." Sanchez v. Nw. Airlines, Inc., 659 F.3d 671, 677 (eighth Cir. 2011) (citations, quotations, and alterations omitted); see also Pennsylvania Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc., 178 F.3d 685, 689-90 (3d Cir. 1999) [hereinafter Pa. DER] ("Thus, the language of § 503(b), read as a whole, suggests a quid pro quo pursuant to which the estate accrues a debt in exchange for some consideration necessary to the operation or rehabilitation of the estate.").

Therefore, on their face, the Movant's claims here fit this mold, since services rendered are based on an employment contract with the estate, and the state "benefit" from mentioned services, since made possible the continuation of rendering essential services.

In addition, because as stated above, there a number of problems with the Board's argument, since said party has not shown or argued that the payment of the awarded back pay and fees limit the feasibility of reorganization. Thus, taken to its logical conclusion, the Board's objection is meritless.

### III. Application to the case at bar the Fundamental Fairness Doctrine pursuant to Reading Co. v Brown, 391 U.S. 471 (1968).

Debtor contends that Reading is inapplicable to Movant's pre-petition claims and argues that in Reading, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. 391 U.S. at 483-85. Also argues that the exceptional component of Reading's holding is the victim's post-petition tort claim was allowed as an administrative claim even though the receiver's post-petition tort clearly did not benefit the bankrupt's estate and "That the Supreme Court recognized bankrupt estates must be administratively liable for their own negligence; otherwise no one can do business with them and it would be unfair for bankruptcy estates to escape liability.

The argument again misconstrue the case law. The Oversight Board continue cobble together in support of the pick-and-choose approach, to sustain the theory concerning that the post-petition nature of Movants claims preclude the payment of any debt accrued pre-petition.

Contrary to the Boards' argument, and although Movants agree that following Reading, courts have consistently held that claims arising by reason of post-petition tortious conduct by the trustee or debtor in possession, the fact is that an overwhelming number of courts have applied Reading more broadly.[5]

---

6 See Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim [ECF No. 18892] (the "DRA Opinion") at 20, were this court analyzing the rationale of Reading express that reading has been

15

Therefore, in the present case and as fully previously argued, here is important to put in context the relief seek by Movants for priority payment of the pre-petition back pay award, under reading fundamental fairness doctrine. Therefore, Movants submits that they suffered damages as the result of the Commonwealth operation of its "business" in violation of state and federal wage laws.

Since Movants claims are based on violations to statutory provision, Movants sustain that Reading v Brown, applies to their claim, because the DTOP intentionally and illegally violated state and federal minimum wage laws. This act was tortious and had the DTOP refrained from acting in such a negligent manner and had comply with the minimum wage laws would have prevent and unjust enrichment.[6]

Contrary to the Oversight Board's argument, in the present case is applicable the Reading Line of Cases under the "fundamental fairness" exception, since Movants administrative priority claim can be accorded in the context of torts committed by the debtor (DTOP) before and after the course of a chapter 11 proceeding. See In re Puerto Rican Food Corp., 41 B.R. 565, 572-73 (Bankr.E.D.N.Y.1984) (citing Reading Co. v. Brown, 391 U.S. 471, 482, 88 S.Ct. 1759, 1765, 20 L.Ed.2d 751 (1968)) (other citations omitted).

Also because, the present case is not a matter of factors and prongs. To our knowledge, no case has tolerated release from administrative expenses priority for wages

---

applied to prioritize the payment of obligations to a creditor arising from the ongoing nonpayment of unsecured debts that originated before the petition date, and cites Madison Equities, LLC v. Condren (In re Theatre Row Phase II Assocs.), 385 B.R. 511, 521 (Bankr. S.D.N.Y. 2008)and express that ("An allowable claim for an expense of administration must have a satisfactory basis in law other than Code § 503(a)(1), such as contract or tort, as well as factual validity.")

[6] See: Restatement (Third) of Restitution and Unjust Enrichment § 251(1) (Am. Law Inst. 2011) ("If the claimant renders to a third person a contractual performance for which the claimant does not receive the promised compensation, and the effect of the claimant's uncompensated performance is to confer a benefit on the defendant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment."),and compare with the determinations of facts and conclusion of law included in the corresponding judgements. Translation submitted Nov 19, 2021, doctet No. ................

16

owed for services rendered, when the debtor received substantial benefits and consideration from employee's work, and have a back pay judgement granting employees back pay, attributable to debtors' state and federal wage laws violations.

In addition, because, some courts have allowed payment of administrative priority claims even though the claimant did not provide a benefit to the bankruptcy estate in a corporate reorganization. These cases are based upon "fundamental fairness," and primarily rely upon the reasoning of the Supreme Court's decision in Reading Co. v. Brown, 391 U.S. 471 (1968)[7].

Although the "fundamental fairness" exception is most often recognized when the debtor's post-petition operations cause tortious injuries to third parties or when the claim arises from post-petition actions that deliberately violate applicable law and damage others. Subsection (A) (ii) of the bankruptcy code, does not differentiate between pre and post-petition expenses. Movants reject Debtor's argument, since is grounded in an inequitable theory.

IV. **In regards the petition for payment of the attorney fees awarded by the judgment entered by the Commonwealth First Instance court in the litigation captioned Juan Perez Colon,** Movants submits that said claimants are entitled to allowance for the attorneys' fees awarded pre-petition, since the fee claim, comply with all the requirements established under subsection (A)(ii)

The Board presents a series of arguments based on a faulty premises, since for all practical purposes, to allow such a challenge would achieve little more than upending the purpose of res judicata: promoting finality and judicial economy. See Providence Hall

---

[7] See [redacted]

Associates v Wells Fargo Bank 14-2378 (4th Cir. 2016), citing Montana v. United States, 440 U.S. 147, 153–54 (1979)

Therefore, claimants insist that under the special facts and circumstances of the present case, Bankruptcy courts, like all federal courts, must give "preclusive effect to state-court judgments awarding attorney's fees." Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987) (citing Allen v. McCurry, 449 U.S. 90, 96 (1980)). Also, because, "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." Id. at 695; see also Adams v. Adams, 738 F.3d 861 (7th Cir. 2013) (bankruptcy courts cannot allow re-litigation of issues and claims already resolved by other courts.

With mentioned principle in mind, Movants also submits that the Board's objection to the payment of the fees awarded in the Perez Colon judgment, lack of substance.

Particularly, because as above fully argued, section 503(b) provides that the allowance for administrative expenses include expenses related to specific activities. The Bankruptcy Code's Rules of Construction expressly states that the words "includes' and 'including' are not limiting". 11 U.S.C. § 102(3). Based on this language, Courts agrees that the specified activities listed under § 503(b) are not the only activities, which may qualify as compensable administrative expenses.

Also, because here is important to bring to the court consideration that in In re Adelphia Commc'ns Corp., 441 B.R. 6 (Bankr. S.D.N.Y.2010), the court found telling that the list of administrative expenses that may be paid under section 503(b) is preceded by the word "including," which the Bankruptcy Code defines as "not limiting" under section 102(3). As such, the court reasoned that it was free to examine whether other provisions

of the Bankruptcy Code might authorize the Fee Provision. Today, courts generally find authority for the remedy in the broad equitable powers conferred in section 105(a) of the Bankruptcy Code, which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

Therefore, not only is room in the statute under section 503 (b), to allow the fees seek as administrative expense, but also in general, because this Court have broad discretion in determining whether to grant the requested fees such priority treatment, since is essential to the fashioning of effective remedies, in light of fairness concerns.

More so here, in the absence of any allegation or any record facts from the Board, in relation that payment of the fee priority claim would make unfeasible the approved Modified Eight Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico. [8]

## V. CONCLUSION

For all the above reasons and having Movants, met the other requirements established by subsection (A)(ii), since the Commonwealth have sufficient liquidity under the approved Modified Eight Amended Title III Joint Plan of Adjustment of The Commonwealth of Puerto Rico and emerging from bankruptcy, to pay in full, as administrative expense priority, the pre-petition unpaid portion of regular wages for services rendered and the attorney's fees awarded in the case of Juan Perez Colon, respectfully request to deny the Board's opposition and grant Movants Motion and grant such other and further relief as is just.

Respectfully submitted,

---

[8] See Urgent Motion for extension of deadlines [Mot. at paragraph 13, docket entry no. and Exhibit 6, included in the Administrative Expense Motion [Docket 18239]

19

WHEREFORE, the group wage creditors respectfully pray this Honorable the Court to deny Debtor's opposition and enter an order granting Movants the relief requested and granting such additional relief as this Court deems just and necessary.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, on March 15, 2022.

IT IS HEREBY CERTIFIED, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By: /s/ Ivonne González Morales
Ivonne González - Morales
RUA 3725 USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonnegm@prw.net

*Attorney for the Group Creditors*