UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

ORDER REGARDING PROPOSED LIST OF MATERIAL INTERESTED PARTIES
PURSUANT TO THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURE ACT

    The Court has received and reviewed the *Motion of Financial Oversight and Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act* (Docket Entry No. 20194 in Case No. 17-3283)[2] (the "Motion"), filed by the Oversight Board.[3] The

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]     All docket entry references herein are to entries in Case No. 17-3283, unless otherwise specified.

[3]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

Motion presents a proposed List of Material Interested Parties (the "MIP List"), which the Oversight Board argues complies with (a) this Court's *Order Concerning Compliance with the Puerto Rico Recovery Accuracy in Disclosures Act* (Docket Entry No. 19980) (the "Compliance Order") and (b) the *Puerto Rico Recovery Accuracy in Disclosures Act*, Pub. L. No. 117-82 ("PRRADA"). 48 U.S.C. § 2178. For reasons that follow, the Court orders the Oversight Board to expand and resubmit the MIP List so that it includes holders of inactive claims.

Scope of MIP List

The U.S. Trustee has submitted a limited objection (Docket Entry No. 20274) (the "U.S. Trustee Objection"), asserting that the proposed exclusion of creditors who either do not have Active Claims or who are parties to certain active (multi-plaintiff) litigation exceeds the statutory authority granted to the Oversight Board under section 2(c)(3) of PRRADA, which only explicitly permits the Oversight Board (with the Court's approval) to exclude from the MIP List "any person with a claim, the amount of which is below a threshold dollar amount established by the court that is consistent with the purpose of this section." 48 U.S.C.A. § 2178(c)(3) (Westlaw through P.L. 117-80). (U.S. Trustee Obj. at 7-12. See Mot. ¶¶ 11-14.) The U.S. Trustee further argues that section 2(e)(2) allows for the limitation of compensation for the duration of a professional person's employment in connection with a Title III case (U.S. Trustee Obj. at 9-11), if the person during that period either (a) "is not a disinterested person" relative to any entity or person on the MIP List, or (b) "represents or holds an adverse interest in connection with the case." 48 U.S.C.A. § 2178(e)(2) (Westlaw through P.L. 117-80).

The Oversight Board argues that interpreting PRRADA as requiring the disclosure of connections during a professional's entire employment in connection with the case implicates the presumption against retroactivity, both because the intent of Congress was not to

have PRRADA apply retroactively and because doing so would impermissibly threaten the rights and reasonable pre-PRRADA expectations of professionals seeking compensation for work they have already performed in connection with the Title III cases (by opening the door to denial or limitation of compensation for such past services based on a connection with a party who is no longer a creditor). (Docket Entry No. 20314 ¶¶ 3-4 (the "Reply").)

The Oversight Board's argument mistakenly assumes, however, that expanding the MIP List to include holders of inactive claims will automatically have a retroactive effect on professionals' past expectations of compensation. (Reply ¶ 4.) In so doing, the Oversight Board conflates the disclosure requirements of PRRADA (which are independently valuable), with the allowability of a professional person's applications for compensation, eliding the Court's discretion in reviewing such applications. The rights and expectations of professionals to compensation have always been subject to Court approval, and that same discretion is preserved by section 2(e) of PRRADA, which states that the Court "**may** deny allowance of compensation or reimbursement" under certain circumstances. 48 U.S.C.A. § 2178(e) (Westlaw through P.L. 117-80) (emphasis added). The MIP List merely comprises a set of data that the Court must consider when making determinations that have always been within its discretion.[4]

The "presumption that Congress intends to legislate prospectively" is a safeguard against altering "the consequences of actions already taken" based on a misreading of a statute, thus "Congress can overcome this presumption and give legislation a retroactive effect only by clearly indicating its intent to do so." Lattab v. Ashcroft, 384 F.3d 8, 14 (1st Cir. 2004).

---

[4] The Oversight Board also seems to apply its retroactivity argument selectively, since it has already added to the MIP List certain creditors whose claims are inactive, but whose involvement in these cases is particularly noteworthy. (See Mot. ¶¶ 10, 12; U.S. Trustee Obj. at 10.)

In the First Circuit, the analysis of whether assessing a statute can properly be applied retroactively involves a two-step process derived from the Supreme Court's decision in Landgraf v. USI Film Products. 511 U.S. 244 (1994). The first step is to consider "whether Congress has clearly stated an intention to have the statute apply retrospectively." Lattab, 384 F.3d at 14. See also United States v. Miller, 911 F.3d 638, 643 (1st Cir. 2018) ("If Congress has clearly prescribed an intention to give – or not to give – the statute retrospective effect, the statute must be construed as Congress has ordained."). Although "the benchmark for finding unambiguous temporal scope is quite high," Arevalo v. Ashcroft, 344 F.3d 1, 11 (1st Cir. 2003), and "this prong of the test requires Congress's intention to be unmistakable, [the Court's] inquiry is not limited to the statutory text but may include an examination of standard ensigns of statutory constriction, such as the statute's structure and legislative history." Lattab, 384 F.3d at 14.

As written, the temporal scope of section 2(e)(2) of PRRADA is susceptible of divergent interpretations:

> In a case commenced under section 2164 of this title, in connection with the review and approval of professional compensation under section 2176 or 2177 of this title **filed after January 20, 2022**, the court **may** deny allowance of compensation or reimbursement of expenses if . . . **during the professional person's employment** in connection with the case, the professional person—(A) **is not** a disinterested person . . . relative to any entity or person on the [MIP List]; or (B) **represents** or **holds** an adverse interest in connection with the case.

48 U.S.C.A. § 2178(e)(2) (Westlaw through P.L. 117-80) (emphasis added).

The phrase "during the professional person's employment in connection with the case" could be read to encompass a professional's pre- and post-PRRADA service (see U.S. Trustee Obj. at 9), but because subsections (A) and (B) are drafted in the present tense, the same

clause could be construed as referring only to the professional's service from the date of PRRADA's enactment onward (Reply ¶ 3).  When this section is read in light of section 2(c)(3), moreover, it appears that the only allowable exclusion from the MIP List under PRRADA is a court-approved dollar threshold (see U.S. Trustee Obj. at 9 & n.7 (discussing the interpretive canon of expressio unius est exclusio alterius)), and it is not apparent from section 2(c)(2) whether the MIP list of included parties was intended to pertain only to entities and persons who fit the list's description from the date of PRRADA's enactment onward.  48 U.S.C. §§ 2178(c)(2)-(3).

Confronted with ambiguity in the underlying text, then, the Court next considers whether Congress's intention as to the temporal reach of PRRADA may be discerned from the statute's legislative history.  Miller, 911 F.3d at 643; Lattab, 384 F.3d at 14.  The version of PRRADA that passed both houses of Congress and became law was H.R. 1192, but as Senate Report No. 117-48 reveals, the statue as enacted is an amended version that was substituted for the House version pursuant to a proposal by the Senate Committee on Energy and Natural Resources.  See generally S. Rep. No. 117-48 (2021) (the "Senate Report").  The Committee's version was approved as a replacement for the House bill and signed into law.

The most noteworthy feature of the Senate-amended bill is that it not only added the clause "during the professional person's employment in connection with the case" to section 2(e)(2)—which was not in the original House-passed bill—it also removed a clause in the original House-passed bill that directed the Court to consider whether a professional was not disinterested "on or after the date of enactment of this Act."  ((Compare H.R. 1192, 117th Cong. § 2(e)(1)(B) (as passed by House, February 24, 2021) with H.R. 1192, 117th Cong. § 2(e)(2) (enacted).)  The removal of "on or after the date of enactment of this Act" from the House-passed version suggests that Congress wanted to remove a temporal limitation on the Court's

assessment of professionals' disinterestedness, and the addition of "during the professional person's employment in connection with the case" further underscores an apparent intention to widen the temporal scope of the Court's review. (Compare H.R. 1192, 117th Cong. § 2(e)(1)(B) (as passed by House, February 24, 2021) with H.R. 1192, 117th Cong. § 2(e)(2) (enacted).)

Moreover, in articulating the background and need for PRRADA, the Senate Report makes clear that PRRADA takes its inspiration from sections 327 and 328(c) of the Bankruptcy Code and from Federal Rule of Bankruptcy Procedure 2014, under which a bankruptcy court may "deny compensation to a professional if, at any time during the professional's employment under section 327, the professional is not disinterested or holds or represents an adverse interest." (S. Rep. at 4.) Because section 327 does not apply directly to municipal bankruptcies, legislation was needed to enhance the PROMESA Title III court's "ability to police conflicts of interests among professionals under PROMESA." (S. Rep. at 6; see also S. Rep. at 8 ("*Subsection (b)* establishes disclosure requirements for professionals employed in cases under title III of PROMESA that conform to the disclosure requirements of rule 2014 of the Federal Rules of Bankruptcy Procedure for professionals employed pursuant to section 327 of the Bankruptcy Code.").)

The Oversight Board argues that PRRADA's legislative history's focus on the disclosure of only "relevant" connections, supports a finding that PRRADA does not require disclosure of connections with parties who are no longer creditors. (Reply ¶¶ 3 n.5, 8. See S. Rep. at 10.) The Court is not persuaded. Given the clearly stated purposes underlying PRRADA, the entire duration of a professional's employment in connection with a Title III case is relevant, which makes relevant the history of each professional's connections with creditors, regardless of whether their claims are active or inactive. The Court concurs in the U.S. Trustee's observation that "[r]emoving these creditors from the MIP List will defeat the purpose of the

statute, leaving the possibility that real conflicts that persisted during a professional's employment in the case cannot be reviewed by the Court." (U.S. Trustee Obj. at 10.)

Nor would the inclusion on the MIP List of former creditors whose claims are no longer active have an impermissibly retroactive effect. Miller, 911 F.3d at 643; Lattab, 384 F.3d at 14-15. As the First Circuit has stated, there is an impermissibly retroactive effect "if the specified application would 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" Lattab, 384 F.3d at 14 (quoting Landgraf, 511 U.S. at 280). If no impermissibly retroactive effect is found, "retroactive application is permissible." Id. at 15. Here, the approval of fee applications has always been subject to the discretion of the Court. PRRADA merely augments the Court's discretion by enhancing the information available to it and the means of exercising that discretion. The Senate Report makes clear that, "as important as strict enforcement of the disclosure requirements is, 'the bankruptcy judge [is] not bound by a completely inflexible rule mandating denial of all fees in all cases.'" (S. Rep. at 11 (quoting In re Watson Seafood & Poultry Co., Inc., 40 B.R. 436, 440 (Bankr. E.D.N.C. 1984).) Confirming PRRADA's derivation from section 328(c) of the Bankruptcy Code, the Senate Report explains that subsection (e) uses the same "may deny" language as section 328(c) of the Bankruptcy Code. (Id.) Because PRRADA does not diminish the Court's discretion, no pre-PRRADA rights or expectations have been jeopardized by PRRADA's enactment.[5]

---

[5] The mere introduction of PRRADA, on its own, does not change "the legal consequences of actions actually taken (or refrained from) prior to the statute's effective date," and any "[i]nchoate plans to act in the future," like the filing of final fee applications, "even when made in anticipation of the legal consequences of those future actions, do not convey the type of settled expectation that retroactivity seeks to protect." Lattab, 384 F.3d at 16.

The U.S. Trustee's Objection is therefore sustained to the extent it argues the MIP List should be expanded to include creditors whose claims are no longer active.[6] Accordingly, the Oversight Board is ordered to submit an amended MIP List consistent with the foregoing by **March 28, 2022**, at **5:00 p.m. (AST)**. Until then, professionals in these cases are reminded that they shall not file any further fee applications, regardless of which interim fee period such applications relate to, until the required disclosures under the MIP List have been filed and served.[7]

The Court further orders that the Oversight Board add to the MIP List any individual plaintiff members of multi-plaintiff litigations that are otherwise excluded from the MIP List if their individual claims exceed the applicable threshold. (See Reply ¶ 12.) The U.S. Trustee's objection is overruled, however, to the extent it opposes the exclusion of plaintiffs who are members of multi-plaintiff litigations, but whose individual claims do not meet the applicable threshold. (See, e.g., U.S. Trustee Obj. at 7.)

To the extent professional persons (as identified in PRRADA) have already been compliant with the requirements of rule 2014(a) of the Federal Rules of Bankruptcy Procedure,

---

[6] The Court is only deciding today what disclosures are required; consideration of how and whether compensation should be denied or limited in light of particular disclosures or under particular circumstances is an issue for consideration in connection with fee applications.

[7] To the extent fee applications and notices thereof (Docket Entry Nos. 20327, 20328, 20329, and 20330 in Case No. 17-3283; Docket Entry Nos. 2752, 2753, 2754, 2755, 2756, and 2757 in Case No. 17-4780; Docket Entry Nos. 1149 and 1150 in Case No. 17-3567; Docket Entry Nos. 1324 and 1325 in Case No. 17-3566) (the "Applications") have been filed contrary to the Court's direction that "[p]rofessionals in these cases are directed not to file any further fee applications . . . until after they have filed the disclosures required under PRRADA" (Compliance Ord. ¶ 5), the Applications are denied without prejudice.

any future disclosures by such professional persons as required by PRRADA's provisions shall supplement, but need not duplicate, what has already been filed by those professional persons.[8]

SO ORDERED.

Dated: March 21, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

[8] (See, e.g., *Official Committee of Unsecured Creditors' Limited Response and Reservation of Rights to Motion of Financial Oversight and Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosures Act* (Docket Entry No. 20276); *Joinder of the Official Committee of Retired Employees to the Official Committee of Unsecured Creditors' Limited Response and Reservation of Rights to Motion of Financial Oversight and Management Board for Puerto Rico Requesting Order Approving Proposed List of Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosures Act* (Docket Entry No. 20325).)