UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH MARCH 23–24, 2022 OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the March 23–24, 2022 omnibus hearing and in response to this Court's order, dated March 14, 2022 [Case No. 17-BK-03283, ECF No. 20323].

I. **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1. The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus and to utilize effectively federal funding related to the COVID-19 pandemic.

2. On March 15, 2022, the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [Case No. 17-BK-03283, ECF No. 19784] (the "Modified Eighth Amended Plan") became effective, reducing the Commonwealth's debt by nearly eighty percent (80%) and concluding the largest debt restructuring in the history of the municipal bond market and the first restructuring of a territory's debt in the history of the United States. In connection therewith, the Commonwealth distributed approximately $10 billion in cash, in excess of $7 billion of new general obligation bonds, and contingent value instruments to various creditor groups.

3. The Qualifying Modification for the Puerto Rico Convention Center District Authority [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and the Qualifying Modification for the Puerto Rico Infrastructure Financing Authority [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM") also became effective on March 15, 2022. In addition to the issuance of certain contingent value instruments and cash pursuant to the Modified Eighth Amended Plan, (a) $112 million was distributed pursuant to the CCDA QM and the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order") and (b)

$260 million was distributed pursuant to the PRIFA QM and the Confirmation Order. The implementation of the Modified Eighth Amended Plan, CCDA QM, and PRIFA QM are critical steps to restoring fiscal responsibility, access to capital markets, and economic prosperity and growth to Puerto Rico.

4. Since confirmation, the Oversight Board was in constant contact with AAFAF and related governmental entities to identify, prepare for, and implement the transactions required by the Modified Eighth Amended Plan and qualifying modifications. Over one hundred seventy work streams were required. In addition to finalizing the various documents and transactions necessary for the substantial consummation of the Modified Eighth Amended Plan, the Oversight Board has also been focused on the appeals from the Confirmation Order, taken by (a) Federación de Maestros de Puerto Rico, Inc., Grupo Magisterial Educadores(as) por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., and Unión Nacional de Educadores y Trabajadores de la Educación, Inc., (b) Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz, and (c) Suiza Dairy Corp.

5. The Oversight Board also filed a cross-appeal from the portion of the Confirmation Order and the corresponding findings of fact and conclusion of law, holding that claims arising under the Takings Clause of the United States Constitution are nondischargeable or must be paid in full.

6. Prior to the effective date of the Modified Eighth Amended Plan, some appellants requested a stay pending appeal from the United States Court of Appeals for the First Circuit, after this court denied their stay motion. The appellate court held argument on the stay motion and

denied it. In that context, however, the Oversight Board agreed that, if appellants (the teachers' associations) prevailed on the merits, the Oversight Board would manage to pay the teachers the defined benefits that would continue to accrue, rather than argue the appeal is equitably moot. The Oversight Board explained that, while the cost of paying the defined benefits would require acute budget cuts and would severely impair economic growth, in the Oversight Board's judgment, the cost to the Commonwealth of delaying the effective date and risking the unraveling of the restructuring was greater than the onerous cost of the incremental defined benefits in relation to the probability they would have to be paid.

7. The briefing process relating to the merits of these appeals remains ongoing in the U.S. Court of Appeals for the First Circuit, with oral argument scheduled for April 28, 2022.

## II. General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

8. The Oversight Board's relationship with the Government continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues. That said, with the Governor's urging, the Legislature continues to propose and pass bills (i.e., HB 1244) the Oversight Board has determined would impair or defeat the purposes of PROMESA, such as a bill that would exacerbate the Commonwealth's current labor law disallowing termination of employment at will even when there is no discrimination or other illegal motive. The Oversight Board is extremely concerned legislation such as this may substantially deter investment in Puerto Rico and all the jobs and economic

growth and prosperity it would create for the people. If contrary to PROMESA section 108(b)(2), these bills become laws, the Oversight Board will consider taking appropriate action.

9. In addition to working together to implement the Modified Eighth Amended Plan, the CCDA QM, and the PRIFA QM, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), along with other parties in interest, are working together to prepare the plan of adjustment for HTA. To those ends, on February 22, 2022, the Oversight Board certified a revised fiscal plan for HTA and, on March 4, 2022, a revised budget for HTA, both of which support HTA's exit from bankruptcy. Although the "Distribution Conditions," as detailed in the Modified Eighth Amended Plan, have yet to be satisfied, the Oversight Board continues its endeavor to complete the necessary documentation and hopes to file an HTA plan of adjustment and related pleadings in the near future.

10. The Oversight Board also continues to work with AAFAF to prepare a draft of the qualifying modification to restructure bonds issued by the Puerto Rico Public Finance Corporation pursuant to Title VI of PROMESA and the corresponding solicitation materials.

III. **General Status of Communications with Stakeholders Regarding Immediate Next Steps Toward the Resolution of PREPA's Title III Case**

11. On February 18, 2022, the Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group") filed the *Urgent Motion of the Ad Hoc Group of PREPA Bondholders Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment* [Case No. 17-4780, ECF No. 2716] (the "Motion"), requesting the appointment of a mediator and the establishment of various deadlines in connection with a proposed plan of adjustment for PREPA. On February 28, 2022, the Oversight Board, among other parties, submitted objections to parts of the Motion, but did not object to a mediation as long as it was inclusive of major stakeholders

5

12. On March 8, 2022, the Court entered the *Order Denying Urgent Motion of the Ad Hoc Group Of PREPA Bondholders to Appoint a Mediator and Impose Deadlines For a PREPA Plan of Adjustment and Directing Additional Consultation and Filings* [Case No. 17-4780, ECF No. 2748] (the "Order"). The Order, among other things, directed the Oversight Board to meet and confer with AAFAF, the Ad Hoc Group, and all other major stakeholders and interested parties whose collaboration the Oversight Board believes is necessary to construct a proposed plan of adjustment for PREPA, and file a status report regarding its progress by March 18, 2022.

13. Pursuant to the Order, the Oversight Board and AAFAF filed the *Government Parties' Status Report in Furtherance of March 8, 2022 Court Order Regarding Mediation of a PREPA Plan of Adjustment* [Case No. 17-4780, ECF No. 2761] (the "PREPA Status Report"), which, among other things, details that the Oversight Board conferred by email with counsel to (a) AAFAF, (b) the Ad Hoc Group, (c) National Public Finance Guarantee Corp., (d) Assured Guaranty Corp. and Assured Guaranty Municipal Corp., (e) Syncora Guarantee, Inc., (f) La Union de Trabajadores de La Industria Electrica y Riego, (g) PREPA's retirement system, (h) the Official Committee of Unsecured Creditors, and (i) PREPA's fuel line lenders. As indicated in the PREPA Status Report, each of these parties are supportive of engaging in mediation pursuant to a mediation agreement on substantially similar terms to that entered into by the mediation parties in connection with the plan of adjustment for the Commonwealth.

14. The Oversight Board and the other parties in interest are eager to commence mediation as soon as possible. The Oversight Board and AAFAF both hope that a consensual resolution of the key issues necessary for a confirmable PREPA plan of adjustment is achievable in a relatively short time.

IV. **General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

15. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-three notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 44,704 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices. Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of over 26,000 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on March 29, 2022, and the Debtors anticipate reporting the successful resolution of hundreds of additional ACR Designated Claims.

16. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will follow up with the claimants to ensure they have a complete administrative file for such claimants. The Debtors continue to await responses from numerous additional claimants. In many instances, the Debtors have re-sent mailings to claimants who failed to respond to the Debtors' initial letter,

7

reiterating their request for information sufficient to complete the claimants' administrative file, and warning them that ongoing failure to respond may force the Debtors to object to their claims. Certain claimants who failed to respond to both the first and second mailings have received an additional mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims. The Debtors continue to await responses from such claimants, and anticipate they may be forced to object to their claims. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

17. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' reconciliation of outstanding claims remains ongoing, however. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on April 26, 2022. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

18. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-three notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred approximately 946 claims into the ADR Procedures.

19. Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the

ADR Order), sixteen (16) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately thirteen (13) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

20. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. The Debtors continue to await responses from such claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach. In addition, the Debtors are in the process of preparing offers or making Information Requests to additional ADR Designated Claimants. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due May 5, 2022, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

21. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional

accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

V. **Anticipated Timing and Volume of Objections to Claims**

22. The Debtors' claims reconciliation process remains ongoing and the Debtors project that they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings. However, the Debtors anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

23. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, that are late filed, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases. Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes. In addition, as the Debtors' focus shifts to PREPA's restructuring, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

[*Remainder of page intentionally left blank*]

Dated: March 22, 2022
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       brosen@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*