```
 1                       UNITED STATES DISTRICT COURT

 2                        DISTRICT OF PUERTO RICO

 3
      In Re:                    )        Docket No. 3:17-BK-3283(LTS)
 4                              )
                                )        PROMESA Title III
 5    The Financial Oversight and )
      Management Board for       )
 6    Puerto Rico,              )        (Jointly Administered)
                                )
 7    as representative of      )
                                )
 8    The Commonwealth of       )
      Puerto Rico, et al.       )        March 23, 2022
 9                              )
                  Debtors,      )
10

11    _____

12

13                         OMNIBUS HEARING

14     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

15                  UNITED STATES DISTRICT COURT JUDGE

16     AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

17                  UNITED STATES DISTRICT COURT JUDGE

18    _____

19
      APPEARANCES:
20
      ALL PARTIES APPEARING VIA VIDEOCONFERENCE OR TELEPHONICALLY
21
      For The Commonwealth
22    of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                               Mr. Brian S. Rosen, PHV
23                             Ms. Laura Stafford, PHV

24    For Puerto Rico Fiscal
      Agency and Financial
25    Advisory Authority:      Mr. Luis C. Marini-Biaggi, Esq.
```

1   APPEARANCES, Continued:

2   For the Fee Examiner:    Ms. Katherine Stadler, PHV

3   For Jose Onofre
4   Ortiz-Quinones:         Ms. Vanessa Hernandez-Rodriguez, Esq.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by stenography.  Transcript produced by
     CAT.
25

```
 1                        I N D E X

 2   WITNESSES:                                    PAGE

 3         None.

 4

 5   EXHIBITS:

 6         None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | San Juan, Puerto Rico |
| 2 | March 23, 2022 |
| 3 | At or about 9:47 AM |
| 4 | *     *     * |

5      THE COURT:  Buenos dias.  Please turn your cameras on

6  for these introductory remarks and instructions, and keep your

7  microphones muted.

8      Ms. Tacoronte, would you please call the case?

9      COURTROOM DEPUTY:  Good morning, Your Honor.

10      *In re:  The Financial Oversight and Management Board*

11  *for Puerto Rico, as representative of the Commonwealth of*

12  *Puerto Rico, et al.,* PROMESA Title III, case no. 2017-3283,

13  for Omnibus Hearing.

14      THE COURT:  Again, good morning, and welcome counsel,

15  parties in interest, and members of the public and press.  It

16  is good to be with you at a time when progress is being made

17  in restoring Puerto Rico's financial health, and the public

18  health situation is improving.

19      To ensure the orderly operation of today's virtual

20  hearing, once we turn to our Agenda items, all parties

21  appearing by Zoom must mute their microphones when they are

22  not speaking, and turn off their video cameras if they are not

23  directly involved in the presentation or argument.  When you

24  need to speak, you must turn your camera on and unmute your

25  microphone on the Zoom screen.

1          I remind everyone that, consistent with court and

2     judicial conference policies, and the orders that have been

3     issued, no recording or retransmission of the hearing is

4     permitted by anyone, including but not limited to the parties,

5     members of the public, and the press.  Violations of this rule

6     may be punished with sanctions.

7          I will be calling on each speaker during the

8     proceedings.  When I do, please turn your camera on, unmute

9     yourself, and identify yourself by name for clarity of the

10    record.  After the speakers listed on the Agenda for each of

11    today's matters have spoken, I may permit other parties in

12    interest to address briefly any matters raised during the

13    presentations that require further remarks.  If you wish to be

14    heard under these circumstances, please use the "raise hand"

15    feature at the appropriate time.  That feature can be accessed

16    by selecting the reactions icon in the tool bar located at the

17    bottom of your Zoom screen.  I will call on the speakers one

18    by one.  After you have finished speaking, you should select

19    the "lower hand" feature.

20          Please do not interrupt each other or me during the

21    hearing.  If we interrupt each other, it's difficult to create

22    an accurate transcript.  Having said that, and as usual, I

23    apologize in advance for breaking the rule, because I may

24    interrupt if I have questions or if you go beyond your

25    allotted time.  If anyone has difficulty hearing me or another

1   participant, please use the "raise hand" feature immediately.

2          The Agenda, which was filed as docket entry no. 20422

3   in case no. 17-3283, is available to the public at no cost on

4   Prime Clerk for those interested.  I encourage each speaker to

5   keep track of his or her own time.  The Court will also be

6   keeping track of the time, and will alert each speaker when

7   there are two minutes remaining with one buzz, and when time

8   is up, with two buzzes.  Here is an example of the buzzer

9   sound.

10          (Sound played.)

11          THE COURT:  If your allocation is three minutes or

12   less, you will just hear the final two buzzes.

13          If we need to take a break, telephone listen-only

14   participants are asked to remain on the AT&T line during the

15   break.  This morning we will proceed from 9:30 AM to 11:50 AM,

16   and, if necessary, we will resume from 1:10 PM to 5:00 PM.

17          Please turn your cameras off now, and turn your

18   camera back on when we reach your Agenda item or if I call on

19   you.  Thank you.

20          The first Agenda item is, as usual, status reports

21   from the Oversight Board and AAFAF.  As I requested in the

22   Procedures Order, these reports have been made in writing in

23   advance of this virtual hearing, and are available on the

24   public docket at docket entry nos. 20428 and 20429 in case no.

25   17-3283 respectively.

1          I thank the Oversight Board and AAFAF for the care

2   and detail reflected in the reports, which, as always, cover

3   important matters, including progress toward implementation of

4   the Plan of Adjustment for the Commonwealth, PBA, and ERS, and

5   the willingness of the parties to enter into mediation with

6   respect to a plan for PREPA.  I also note that the Oversight

7   Board filed a status report regarding the parties' progress

8   toward eliciting consent for mediation, and the parties'

9   progress toward defining the scope of mediation, which is

10  available on the public docket at docket entry no. 20403 in

11  case no. 17-3283.

12          At this point, would the Oversight Board's

13  representatives like to make any additional comments?  I will

14  then have a couple of questions.  Mr. Bienenstock?

15          Oh, you're muted, Mr. Bienenstock.  You're still

16  muted, Mr. Bienenstock.

17          MR. BIENENSTOCK:  Sorry.

18          THE COURT:  Okay.  Now you're unmuted.

19          MR. BIENENSTOCK:  Good morning, Your Honor.  Martin

20  Bienenstock of Proskauer Rose, LLP, for the Oversight Board.

21  Thank you for the opportunity, but at this time we have

22  nothing to add to the report we filed last night.

23          THE COURT:  Thank you, Mr. Bienenstock.

24          So my first question is, as always, a follow-up on

25  the ADR, the claims issues.  So in the status report you

1   indicated that the maximum number of claims that may be

2   transferred into ADR is 6,000, and the actual number might be

3   as low as 1,000.  Is there any more information that you can

4   give at this time as to the volume and pace of claim

5   objections that the Court should expect?

6          MR. ROSEN:  Your Honor, this is Brian Rosen.  Do you

7   hear me?

8          THE COURT:  Yes.  Good morning, Mr. Rosen.

9          MR. ROSEN:  Good morning, Your Honor.  Thank you.

10  And Ms. Stafford is on with me as well.

11         The answer to your question is that we are doing our

12  best to try and collect as much information as possible.  Part

13  of the problem is that we're still gathering that data from

14  the Puerto Rico DOJ and the respective agencies that have

15  claims outstanding.  Many of the claims that were filed were

16  in totally unliquidated amounts, and many of the files that

17  were associated with those claims, we just don't have the

18  information for.

19         So we're actually going to be putting out

20  informational demands to the respective agencies in accordance

21  with the provisions of PROMESA so that we can come up with an

22  easier way to get that data, and hopefully expeditiously

23  reconcile the claims.  To the extent that we get information,

24  we will try to put that into ADR, Your Honor.  To the extent

25  that there is no information available and we do not get any

1   responses from the respective claimants, which we have been

2   unsuccessful in getting responses to information requests so

3   far, we're going to have to put those, rather, into the

4   objection process rather than into the ADR process.  That's

5   why there is that big delta between what could be and what

6   more likely would go into those.

7          So we're trying to do that, Your Honor.  We know that

8   we have a time period in accordance with the terms of the Plan

9   of Adjustment to get any objections on file, and we're hoping

10   to do this much quicker than that so that we can get

11   distributions out to general unsecured creditors.

12          THE COURT:  Thank you, Mr. Rosen.

13          As to the ACR process, do you believe that

14   substantially the maximum number of claims that will go into

15   ACR have been put on the ACR track, or will there be many

16   more?

17          MR. ROSEN:  We think that significantly all of them

18   or substantially all of them have been placed in there

19   already.  As you saw, Your Honor, in the status report, I

20   believe it was over 44,000 have gone in there already, and I

21   think over 26,000 have already been reconciled.  We don't

22   think that there are any more.

23          We do have the ability to file additional ones, Your

24   Honor.  I believe the next one is due near the end of April.

25   We think the amount that will go in there will be

1    significantly smaller, if any.  And the process has proven to

2    be extremely successful in connection with the expeditious

3    reconciliation of those claims, and the fact that they don't

4    come back to the Court.  Every now and then, Your Honor, we do

5    see one that should actually not be in ACR, but should

6    actually come back to the Court, so we do file sort of a

7    transfer notice to get it back into that process, but those

8    have been relatively few in number.

9           THE COURT:  Thank you, Mr. Rosen.

10          Good morning, Ms. Stafford.

11          MS. STAFFORD:  Good morning, Your Honor.

12          THE COURT:  So I'll turn to my next topic, which is

13   the plan for HTA.  The status report indicates that the Board

14   hopes to file a plan for HTA in the near future, and I'd like

15   to be a little bit more concrete about that.  Do you

16   anticipate filing the plan with a proposed schedule for

17   confirmation-related pleadings and litigation before the end

18   of April?

19          MR. ROSEN:  We do, Your Honor.  Your Honor, as you

20   may have seen, we were -- the distribution conditions that

21   were set forth in the Commonwealth Plan of Adjustment

22   unfortunately had not been satisfied, and those related to the

23   finalization of documentation in connection with the HTA

24   indenture, the plan, and the confirmation orders, as well as

25   trust documentation that had to be agreed upon by the

1    Oversight Board, Assured, and National.  We're still in the

2    process of discussing some outstanding issues with respect to

3    those documents, but we do hope to get that concluded very,

4    very soon, so that we can not only conclude the distribution

5    conditions and distribute the CVIs that were issued pursuant

6    to the Commonwealth Plan of Adjustment, which are currently

7    sitting in a safekeeping arrangement with Bank of New York

8    Mellon, but, also, so that we can file the Plan of Adjustment,

9    Disclosure Statement, and scheduling orders very, very soon.

10          We're hoping, Your Honor, that we would do that in

11   the next three to four weeks, and what that would do, Your

12   Honor, would then, hopefully, carry forth a schedule where we

13   would get to the HTA plan process very soon thereafter, with

14   the Disclosure Statement hearing probably in June, and with

15   the Court's calendar obviously permitting, and a confirmation

16   hearing in accordance with the rules sometime shortly

17   thereafter.

18          THE COURT:  Thank you.  That's good news.  What's

19   your anticipated timetable for the Public Finance Corporation

20   Title VI?

21          MR. ROSEN:  Your Honor, we actually just received

22   comments back the other day from the Trustee that we're

23   working with AAFAF to go through.  It is our hope, Your Honor,

24   that we can file that Title VI, the QM, if you will, in the

25   next few weeks.

1          THE COURT:  That is good news as well.  Thank you.

2          MR. ROSEN:  We've been busy, Your Honor.

3          THE COURT:  Pardon me?

4          MR. ROSEN:  I said we've been very busy.

5          THE COURT:  So it would seem.  So that concludes my

6    questions for the Oversight Board.  Would AAFAF's

7    representative like to make any comments in addition to the

8    written status report?

9          MR. MARINI-BIAGGI:  Good morning, Your Honor.  Luis

10   Marini for AAFAF.

11         THE COURT:  Good morning, Mr. Marini.

12         MR. MARINI-BIAGGI:  Good morning.  Thank you for the

13   opportunity, Your Honor, but we don't have anything to add.

14         THE COURT:  Thank you, Mr. Marini.

15         MR. MARINI-BIAGGI:  Thank you.

16         THE COURT:  I'll give a bit of a status report here

17   myself.  With respect to mediation, what I can say now is that

18   I expect to be able to identify a proposed judicial mediator

19   or team of mediators within the next couple of weeks.  As I've

20   done before, I'll file a preliminary designation notice with a

21   deadline for objections, and then make the appointment if

22   there are no objections, or the objections are overruled.  So

23   stay tuned on that front, and continue to do what you need to

24   do to put yourself in position to participate meaningfully and

25   quickly in mediation.

1          Do any other counsel who are appearing in the hearing

2     have questions or comments that they wish to make in

3     connection with the status reports?  If you do, use the "raise

4     hand" function to indicate your request, and then wait for me

5     to call on you to speak.

6          Thank you.  I don't see any hands raised, and so I

7     will go on to Item II of the Agenda, which is the Joint Motion

8     for the Third Amended Interim Compensation Order.  I do have a

9     question about the structure of the Order, and that is the

10    separation or the distinction made in the Order between

11    requests for compensation that relate to periods prior to the

12    effective date or enactment of PRRADA and then applications

13    that relate to services provided after PRRADA.  As I read the

14    proposal, it would not subject the applications that go to

15    pre-PRRADA services to the disclosure requirements of the

16    statute, but the statute, as I read it, speaks in terms of the

17    timing of the filing of the application, rather than the

18    timing of the rendering of the services.

19         As I've explained in my order relating to the

20    Material Interested Parties List, I read the statute to expect

21    consideration of any conflicts that may exist as to any period

22    of the retention during the case.  So is it Mr. Bienenstock

23    who is going to speak to that?

24         MR. BIENENSTOCK:  Again, good morning, Your Honor.

25    Martin Bienenstock of Proskauer Rose for the Oversight

1  Board.

2         In large part, we defer to the Fee Examiner on that.

3  I would only point out that I expect that the applications for

4  pre-PRRADA services were so far along that the Fee Examiner

5  thought they could be handled, because Your Honor will

6  ultimately have final applications, which would incorporate

7  all the fees.  But, again, I defer to Ms. Stadler on that.

8         THE COURT:  Thank you.

9         MS. STADLER:  Yes.

10         THE COURT:  Ms. Stadler.

11         MS. STADLER:  Thank you.

12         First, I would like to just note that while we have

13  submitted a proposed order and an amended proposed order, this

14  is very much a work in progress and a working document.  As

15  Your Honor knows, there are quite a few moving pieces here,

16  and we've done our best to incorporate everybody's views, with

17  the expectation that dialogue like the one we're having right

18  now would ultimately be necessary.  So I am pleased to have

19  the opportunity to discuss this in this forum.

20         Paragraph three of the proposed order addresses

21  Interim Fee Applications for periods prior to the Enactment

22  date of PRRADA.  You'll note in paragraph three the

23  preliminary phrasing there says, "regardless of whether such

24  interim fee applications were filed prior to or after the

25  enactment date," and then it says, "and subject to paragraphs

1    4(a) and (e) below."

2         And then four, paragraph four, as Your Honor noted,

3    addresses applications covering interim fee periods on or

4    after the enactment date, and that is the one that includes

5    all of the PRRADA compliance procedures.  So we have attempted

6    to incorporate the PRRADA compliance into the interim fee

7    application procedures, but left them separate so that there

8    would be a clear road map for how interim fee applications

9    will be resolved or handled once the PRRADA disclosure process

10   is complete.  But we are absolutely open to suggestions as to

11   ways to restructure the Order that would make that more clear.

12        THE COURT:  Well, obviously I missed that.  It wasn't

13   clear to me, and perhaps it may be something as simple as

14   saying "subject to compliance with paragraphs 4(a) and 4(e)"

15   below in the introductory language to paragraph three.  Does

16   that make sense to you as a clarification?

17        MS. STADLER:  It does.  These two sections of the

18   Order went through many iterations --

19        THE COURT:  Yes.

20        MS. STADLER:  -- that the Court did not see.  There

21   were earlier versions that actually did not use the period

22   prior to the enactment date language, and, instead, referenced

23   the timing contemplated by the statute, that -- the interim

24   fee applications filed prior to the effective date, and then

25   this would have been -- paragraph three would address that

1  procedure, and then paragraph four would address interim fee

2  applications not filed before the enactment date of PRRADA.

3  And then it would have the PRRADA compliant compensation

4  procedures.

5        I think that it is -- the challenge here is of course

6  we have two debtors that are not emerged from Title III, and

7  we also have a group of professionals for the committees who,

8  pursuant to the Plan, will continue to be subject to the Title

9  III process.  So we needed to have an order that contemplated

10  an interim fee process that would continue for those

11  professionals who are continuing to do Title III work, but

12  also have a carve out for the PRRADA compliance.

13        And so that's kind of how it ended up being the way

14  it is, but I'm happy with Your Honor's suggestion to add the

15  compliance language.  It may be that if it was unclear to you,

16  Your Honor, that it might be unclear to other readers, and it

17  might be better then to segregate it out, so that paragraph

18  three simply applies to applications filed before the

19  effective date, and paragraph four applies to applications

20  filed after.  Paragraph four does return to paragraph three

21  and say "paragraph three applies except", and then paragraph

22  four lays out the PRRADA procedures.

23        So we're open to whatever suggestions the Court may

24  have, and whatever is going to end up being the most user

25  friendly for professionals and others following the fee

1   process.

2          THE COURT:  Well, for once I didn't attempt specific

3   wordsmithing on the proposed order.  My reaction was more at

4   the high conceptual level, and so I want to be certain that

5   the Order requires that applications that are filed after the

6   PRRADA effective date are accompanied or preceded by the

7   necessary disclosures.  I can understand the rationale for

8   wanting to keep separate, for record keeping and reference

9   purposes, in a clear way applications that relate to services

10  that were performed at a period -- during periods when PRRADA

11  wasn't in effect.  There may or may not be different arguments

12  about the significance of the disclosures with respect to

13  those --

14         Can everybody hear me?  Because I have a funny little

15  message on my screen that suggests I'm muted.  Ms. Stadler,

16  can you hear me?

17         MS. STADLER:  Yes, I can.  Thank you, Judge.

18         THE COURT:  Okay.  Great.  Thank you.

19         So, anyway, I can see that having reference points

20  so that all of the interim applications aren't lumped in some

21  way crossing service periods.  That makes sense to me.  So I

22  don't have strong feelings about the structure of the Order.

23  I'm just concerned about clarity that every application that

24  is submitted post PRRADA is associated with the necessary

25  disclosures, and so that's a long-winded way of saying I'm

1    open to you taking another cut at it.

2              MS. STADLER:  Okay.

3              THE COURT:  If it's clear to me, then that will be

4    fine.

5              MS. STADLER:  Okay.  Great.  I would just ask then,

6    Your Honor, just because there are so many other pieces of

7    this, that we could just confirm today on the record that,

8    other than the Court's concerns with the issue we've just been

9    discussing, there are no other substantive objections, or if

10   there are, I'd like to know what they are, so that, in the

11   redrafting, we can focus on these two paragraphs and not have

12   to inundate everyone with reams and reams of paper with

13   redlining on it.

14             THE COURT:  Understood.  The Court has no other

15   substantive concerns with the proposed order.

16             MS. STADLER:  Great.  Then we will work with the

17   parties on clarifying three and four, and we'll file an

18   appropriate certification similar to the one we filed in

19   advance of today's hearing.  And then obviously, if the Court

20   has further questions, we can address those in whatever way

21   the Court sees fit.

22             THE COURT:  Thank you very much, and thank you for

23   all of the work that has gone into gearing us up for PRRADA

24   compliance and for your work with the parties in developing

25   the Order that was proposed.

1          I also thank the Oversight Board for their work in

2     developing the Material Interested Parties List.  I understand

3     that these are very big undertakings that are taking place at

4     a time when there are many, many other big undertakings going

5     on, so my thanks to you.

6          MS. STADLER:  Thank you, Your Honor.

7          THE COURT:  The next Agenda item is Contested

8     Matters.  That's Section III of the Agenda, and the first

9     contested matter has to do with the 345th Omnibus Objection to

10    Claims.  So is it Ms. Stafford who's speaking to that?

11         MS. STAFFORD:  Good morning, Your Honor.  Yes.

12         THE COURT:  Good morning, Ms. Stafford.  This is

13    Agenda Item III.1.

14         MS. STAFFORD:  Your Honor, Laura Stafford of

15    Proskauer Rose on behalf of the Oversight Board.

16         I just wanted to mention, before jumping into the

17    contested matters, that a couple of folks have reached out to

18    me indicating that the AT&T line is very difficult to hear,

19    so I don't know if the Court wants to try to address that

20    first.

21         THE COURT:  All right.  Let's take a pause and see

22    what we can do about the AT&T line, so everyone just sit tight

23    for a moment.

24         We're working on the AT&T issue, so just bear with

25    us, everyone.

1          We think that we've fixed the problem with the AT&T

2     line, and so we're now ready to go on.  Ms. Stafford?

3          MS. STAFFORD:  Thank you, Your Honor.

4          So the next four items on the Agenda, starting with

5     III.1 and going through III.4, were all carried over from the

6     January Claim Objections Hearing in light of the Court's

7     desire to give Ms. Ivonne Gonzalez Morales an opportunity to

8     speak on behalf of several claimants who filed pro se

9     responses to certain Omnibus Objections.  I'm happy to report

10    that, after discussions with Ms. Ivonne Gonzalez, we were able

11    to resolve each of these matters, and counsel had authorized

12    me to report on our agreement to the Court.

13         As of this morning, Counsel did also indicate that

14    she intended to appear and make a statement regarding the

15    difficulties of managing duplicate objections.  I don't know

16    if she's on the line at this point, and if the Court would

17    like to hear anything from her prior to hearing our agreement?

18         THE COURT:  Ms. Gonzalez-Morales is not on the Zoom

19    connection, and I am told that she is not in the courtroom in

20    San Juan either.  Those are the two means of being able to

21    appear, so it seems that she has decided not to appear after

22    all.  So would you proceed with your recitation on the record

23    of what the agreement is?

24         MS. STAFFORD:  Of course, Your Honor.  And just to be

25    clear, our agreement was structured around the Omnibus

1  Objections themselves, not along the lines of the Agenda

2  items.  I'm happy to just read out our agreement, and I can

3  note for Your Honor where each claim appears on the Agenda, or

4  I'm happy to go through the Agenda.  Whatever is easiest for

5  you, Your Honor.

6          THE COURT:  Well, as long as you're clear on the

7  record when you read out the agreement as to which claims and

8  Agenda items are resolved by it, I think that will be

9  sufficient and helpful to our court reporter.  Then of course

10  you'll incorporate these resolutions into the orders that you

11  ultimately submit on these claim objections; is that correct?

12          MS. STAFFORD:  That's correct, Your Honor.

13          THE COURT:  Okay.  So please proceed.  Thank you.

14          MS. STAFFORD:  Thank you, Your Honor.

15          So with respect to the 341st objection, which I

16  believe is addressed at Agenda Items III.2 and III.3, the

17  parties agree that Proof of Claim Nos. 12310 and 12526 may be

18  disallowed as duplicative.  This disallowance will not affect

19  any other claims filed by the claimants who filed Proof of

20  Claim Nos. 12310 and 12526.

21          With respect to Omnibus Objection -- to the 345th

22  Omnibus Objection, the parties agree that Proof of Claim No.

23  12337, which appears at Item III.2 on the Agenda; Proof of

24  Claim No. 12312, which appears at Item III.3 of the Agenda;

25  Proof of Claim No. 129809, which appears at Item III.1 of the

1    Agenda; 121773, which appears at Item III.1 of the Agenda;

2    Proof of Claim No. 24315, which appears at Item III.4 of the

3    Agenda; and Proof of Claim No. 20600, which appears at Item

4    III.4 of the Agenda, may be reclassified as general unsecured

5    claims pursuant to the Court's previous order sustaining the

6    345th Omnibus Objection.

7         The parties recognize that Ms. Gonzalez's motion for

8    reconsideration of the Court's order granting the 345th

9    Omnibus Objection remains pending, and the Court's ruling on

10   that motion may affect the classification of these claims.

11   Further, to the extent any of these claims assert liabilities

12   arising from judgments in the *Nilda Agosta*, *Juan Perez-Colon*,

13   *Jeanette Abrams*, or *Tomassini* litigations, the parties

14   recognize that Ms. Gonzalez's motions for treatment of

15   liabilities associated with those judgments as administrative

16   expenses remain pending, and the Court's ruling on those

17   motions may affect the classification of these claims.

18        I have two other notes, Your Honor, with respect to

19   the 345th Omnibus Objection.  First, Claim No. 139753, which

20   appears at Item III.1 of the Agenda, was originally scheduled

21   for the January Omni and was -- or the January Claims

22   Objection Hearing, excuse me, and was adjourned to this

23   hearing in order to allow Ms. Gonzalez to speak regarding the

24   claim.  However, after reviewing the claim, Ms. Gonzalez has

25   represented to us that she does not represent that claimant

1   with respect to the matters asserted in that claim.  That

2   claim asserts separate litigations that Ms. Gonzalez is not a

3   part of.  And, accordingly, we'd submit that that claim should

4   be reclassified on the basis of the materials submitted in

5   connection with the January Claim Objection Hearing.  And

6   we're happy to go through any of that if that would be helpful

7   to Your Honor.

8          THE COURT:  I heard that claim at the January Claim

9   Objection Hearing, and with nothing further being offered in

10  respect of that claim, I am prepared to grant the objection to

11  that claim -- well, to sustain the objection to that claim,

12  but I -- let's see.  Just one moment.

13         I'm sorry.  As you know, it's a little hard to match

14  everything up, so I am --

15         MS. STAFFORD:  Of course.

16         THE COURT:  -- looking through my notes relating to

17  that particular claim.  Yes.  So the Claim No. 139753, which

18  was filed by Neysha Colon-Torres, is reclassified as a general

19  unsecured claim, because the claimant has failed to identify

20  any factual or legal basis supporting her assertion that the

21  claim should be treated as secured with respect to any Title

22  III debtor.

23         MS. STAFFORD:  Thank you, Your Honor.

24         So with respect to the 345th Omnibus Objection, Your

25  Honor, we also took the opportunity during our discussions

1    with Ms. Gonzalez regarding claims adjourned from the January

2    Claim Objection Hearing to discuss three claims that were

3    initially raised at the August 2021 Omnibus Hearing.  In each

4    instance, the Court had asked us to investigate these claims,

5    because they had been referenced in Ms. Gonzalez's response

6    but not in our reply.

7         We spoke with Ms. Gonzalez about each of these

8    claims, and we've reached agreement with respect to the

9    treatment of them as well.  The first of those is Proof of

10   Claim No. 20773, and the parties have agreed that that claim

11   may also be reclassified as a general unsecured claim pursuant

12   to the Court's previous orders, but recognizing that

13   Ms. Gonzalez's motions for reconsideration of the 345th

14   Omnibus Objection Order and her motions seeking admin expense

15   treatment of certain judgments may affect the classification

16   of that claim.

17        The remaining two claims that were previously raised

18   at the August 2020 Omni that we also discussed with

19   Ms. Gonzalez were Proof of Claim Nos. 23166 and 47278.  The

20   parties have agreed that proofs of -- that each of those

21   proofs of claim may be partially disallowed to the extent they

22   assert liabilities associated with the *Acevedo-Camacho*

23   litigation and the *Beltran-Cintron* litigation respectively.

24   The claimants will retain the portions of their claims which

25   assert additional liabilities separate from these two

1   litigations.

2           And, for clarity of the record, Proof of Claim 23166

3   also asserts the *Socorro Cruz* litigation, and Proof of Claim

4   47278 also asserts the *Nilda Agosta* litigation.  The claimants

5   will retain their rights arising from -- the claimants will

6   retain their proofs of claim asserting the *Socorro Cruz* and

7   *Nilda Agosta* litigations, and they will also retain any rights

8   that may arise from master proofs of claim filed by Ivonne

9   Gonzalez on behalf of plaintiffs in the *Acevedo-Camacho* and

10  *Beltran-Cintron* litigations.  And we are happy to incorporate

11  these statements into the proposed order as well.

12          THE COURT:  Thank you.

13          Is there anything further with respect to Items III.1

14  through III.4?

15          MS. STAFFORD:  Nothing further, Your Honor.

16          THE COURT:  Thank you.

17          So that takes us then to Item III.5, which is the

18  417th Omnibus Objection, and the response of Jose Onofre

19  Ortiz-Quinones.

20          Is someone appearing for the claimant?

21          MS. HERNANDEZ-RODRIGUEZ:  Yes, Your Honor.

22          THE COURT:  Good morning, Ms. Hernandez.

23          MS. HERNANDEZ-RODRIGUEZ:  Good morning.

24          THE COURT:  So I will ask the Oversight Board's

25  counsel first to summarize the objection.

1          MS. STAFFORD:  Thank you, Your Honor.

2          The 417th Omnibus Objection, which was filed at ECF

3    no. 20043, seeks to disallow in their entirety proofs of claim

4    that assert liabilities purportedly owed to public employees

5    by entities that are not Title III debtors.  The response for

6    hearing this morning was filed by Mr. Jose Onofre

7    Ortiz-Quinones with respect to Proof of Claim No. 179673, and

8    that response is at ECF no. 20301.

9          The claim and response assert liabilities associated

10   with Mr. Ortiz-Quinones's employment with the Puerto Rico

11   Sugar Corporation.  Specifically, the response asserts that

12   Mr. Ortiz-Quinones is entitled to a pay increase granted by

13   Law 90 of 1986, because that law applied to all public

14   employees subject to the personnel -- public service personnel

15   law and who had not received a federal minimum wage increase;

16   and pursuant to the acquired rights doctrine,

17   Mr. Ortiz-Quinones's right to the salary increase once vested

18   cannot be injured or ignored by subsequent law.  Regardless --

19         THE COURT:  May I -- I'm sorry.  Ms. Stafford, may I

20   just interrupt you for a moment?

21         MS. STAFFORD:  Of course.

22         THE COURT:  My notes to myself indicate that the

23   objection was to claim nos. 179671 and 179673.  You just

24   mentioned 179673, so am I mistaken in thinking that this is

25   directed to claim no. 179671 as well?

1          MS. STAFFORD:  So my understanding of the response

2     was that it was directed to 179673, the response that was

3     filed at ECF 20301.  To the extent that it addresses 179671 as

4     well, my understanding is that the same -- the same arguments

5     are being raised by Mr. Ortiz-Quinones, and we would have the

6     same arguments in response, that this is --

7          THE COURT:  I have a note that Mr. Ortiz-Quinones

8     filed objections at 20301 and 20381 essentially taking the

9     same position.

10          MS. STAFFORD:  I believe these --

11          THE COURT:  Is that correct, Ms. --

12          MS. STAFFORD:  I apologize, Your Honor.

13          THE COURT:  I'm sorry.  So perhaps his counsel can

14     clarify that.  Were there two responses filed taking the same

15     position essentially?

16          MS. HERNANDEZ-RODRIGUEZ:  Yes, Your Honor.  Vanessa

17     Hernandez-Rodriguez, Esquire.

18          Yes.  The claim is 179673.  It's a claim that I

19     filed, motion urgent, to this court.

20          THE COURT:  So did you file something at 20381,

21     another objection for Mr. Ortiz-Quinones?

22          MS. HERNANDEZ-RODRIGUEZ:  Yes, I submit another

23     claim, but it's a supplemental petition for -- in this

24     supplemental petition, I submit evidence to the Government of

25     Puerto Rico, Commonwealth of Puerto Rico, Your Honor.

1          THE COURT:  So should I be considering this evidence

2     and these arguments in connection with both of the Proofs of

3     Claim, 179673 and 179671, or should I consider this argument

4     to concern only 179673?

5          MS. HERNANDEZ-RODRIGUEZ:  Yes.  I submit proof of

6     claim, another -- this document in this name.  I'm sorry.

7     This number -- I receive this number, and Jose Onofre Ortiz

8     pro se submit the proof of claim, yes.  And in the motion --

9     March 16 of this year, I submit Motion Urgent of Objection to

10    417th Omnibus Objection.

11         THE COURT:  So which proof of claim numbers are you

12    appearing to discuss today?  Is it Proof of Claim No. 179673

13    only, or also 179671?

14         MS. HERNANDEZ-RODRIGUEZ:  Both numbers, yes.

15         THE COURT:  Both numbers.

16         MS. HERNANDEZ-RODRIGUEZ:  Yes.

17         THE COURT:  All right.  Thank you.

18         Ms. Stafford, would you continue?

19         MS. STAFFORD:  Yes.  Thank you, Your Honor.  And our

20    arguments in response would address both 179673 and 179671.

21         So, as noted, Mr. Ortiz-Quinones is asserting a right

22    to a pay increase granted by Law 90 of 1986.  However,

23    regardless of whether Mr. Ortiz-Quinones is entitled to that

24    salary increase, he cannot recover for these liabilities

25    against the Commonwealth.

1            As we explained in our reply, the Puerto Rico Sugar

2   Corporation is not a Title III debtor, but, rather, is a

3   former government entity.  When it existed, it was part of the

4   Puerto Rico Land Authority, and it was a separate and

5   independent entity from the Commonwealth of Puerto Rico.  It

6   subsequently has been dissolved, and in connection with that

7   dissolution, its operations and liabilities were transferred

8   to the Puerto Rico Land Authority, which is also a separate

9   and independent entity from the Commonwealth of Puerto Rico.

10  And for those reasons, we'd request the Court sustain the

11  objection and disallow both Proof of Claim Nos. 179673 and

12  179671.

13            Thank you, Your Honor.

14            THE COURT:  Thank you.

15            Ms. Hernandez-Rodriguez?

16            MS. HERNANDEZ-RODRIGUEZ:  Yes.  May it please the

17  Court.  Good morning.

18            Yes.  Okay.  Yes, Your Honor.  The Sugar Corporation,

19  our position is that 189 of year -- the Law of the Transfer of

20  Assets and Liabilities of the Sugar Corporation of year 1996

21  is the one law, special law that gives -- that gives benefit

22  upon this reclamation of this Court.  This is very important,

23  because the principal fundament (ph) for this claim is that

24  the law is clear, Your Honor, the Puerto Rico Sugar

25  Corporation is a public corporation.  And then, of the

1   corporate law, the Law 90 of year 1986 say that all public

2   employees, career, regular or probationary and transitory

3   employees without distinction of status or categories, who are

4   a part of the personnel system created by virtue of the Public

5   Service Personnel Law --

6              COURTROOM DEPUTY:  Your Honor.

7              MS. HERNANDEZ-RODRIGUEZ: -- and who did not receive

8   --

9              COURTROOM DEPUTY:  We're sorry, Your Honor.  The

10  court reporter needs counsel to repeat.

11             MS. HERNANDEZ-RODRIGUEZ:  Okay.

12             THE COURT:  So, Counsel, if you would repeat your

13  remarks a little bit more slowly.  It's just difficult with

14  all of the electronic connections here to make sure the sound

15  comes through clearly enough for us to understand.  So that I

16  understand perfectly and the court reporter can hear, please

17  speak as slowly and distinctly as you can, and we will not

18  hold that against you on the timing front.

19             MS. HERNANDEZ-RODRIGUEZ:  Okay.

20             THE COURT:  We won't buzz at you.

21             MS. HERNANDEZ-RODRIGUEZ:  Okay.  I'm sorry.  Yes.

22             The Law 90 of year 1986, known as *Aumento de Sueldo*

23  *para los Empleados Publicos*, say that all public employees,

24  career, regular or probationary and transitory employees,

25  without distinction of status or categories, who are part of

1    the Personnel System created by virtue of the Public Service

2    Personnel Law, and who did not receive any increase due to the

3    application of the federal minimum wage as of April 15 of year

4    '86, will receive, will receive an increase of 55 dollars

5    effective 1st October of this year.

6         This law says specifically that employees of the

7    municipalities, the teachers, and police officers is excluded

8    of this increase of salary, Your Honor.  And the specific law,

9    the specific law of Public Service Personnel Law Five of 1975,

10   say that the meaning agency include public corporation.  It's

11   clear that Puerto Rico Sugar Corporation is a public

12   corporation, and the Public Service Personnel Law No. Five of

13   1975 say that the meaning agency say specifically corporacion

14   publica (ph).

15        Your Honor, when the words of the law in their

16   application to an existing situation are clear and free from

17   all ambiguity, the letter of the law shall not be disregarded

18   under the pretext of pursuing the spirit, Your Honor.  It's --

19   clear and convincing means exactly what is suggested by the

20   ordinary meaning of the terms making up the phrase, Your

21   Honor.  And it's very important, that opinion of Honorable

22   Federal Supreme Court in *Microsoft Corp. v. i4i P'ship*, case

23   no. 564 U.S. 91, that say "the assumption that the ordinary

24   meaning of the language chosen by Congress accurately

25   expresses the legislative purpose," and say also, "but where

1   Congress uses a common-law term in a statute, we assume the

2   terms come with a common law meaning, absent anything pointing

3   another way," Your Honor.

4        For us, it's very important that it's clear that the

5   Law No. 90 of year '86 give -- give a moment, please.  Upon

6   this law it say that -- also that Jose Onofre Ortiz-Quinones

7   is a creditor in this case, Your Honor, because the

8   Commonwealth of Puerto Rico is the employer, is employer in

9   this case, Your Honor.

10        If I -- if you see -- if Your Honor address to docket

11   20381, Your Honor, the attachment exhibit, you can see the

12   certificate translation by Carlos Lao Davila, federally

13   certified interpreter.  And the first line of this letter,

14   Your Honor, letter of severance, say "Commonwealth of Puerto

15   Rico", and the second line of this letter say "Sugar

16   Corporation of Puerto Rico", Your Honor.

17        In this letter dated November 10 of year 2000, say,

18   the Sugar Corporation of Puerto Rico is in the need of

19   carrying out some layoffs in the Mercedita Refinery, due to

20   the transfer of the assets of the Colonos Refinery, pursuant

21   to what is established by Act -- by the Act 199 (sic) of

22   September 5, 1996, as amended.  And this year, Your Honor, is

23   -- that Law No. 189 supra is called as *Ley de Transferencia*

24   *Activos y Pasivos de la Corporacion Azucarera*.

25        COURT REPORTER:  I'm sorry, Your Honor.  This is the

 1     court reporter.  I need the Spanish name again, please.

 2           MS. HERNANDEZ-RODRIGUEZ:  Yes.  *Ley de Transferencia*

 3     *Activos y Pasivos de la Corporacion Azucarera*.  In English,

 4     Law on the Transfer of Assets and Liabilities of the Sugar

 5     Corporation, Law No. 189 of year 1996.

 6           Your Honor, the explanatory note says the Government

 7     of Puerto Rico has decided to transfer certain assets and

 8     liabilities of the Puerto Rico Sugar Corporation, and/or the

 9     Puerto Rico Land Authority.  This is very important, Your

10     Honor, because the Puerto Rico Sugar Corporation's part of the

11     Puerto Rico Land Authority.  Is the same thing, Your Honor.

12           THE COURT:  You're saying that the Sugar Corporation

13     and the Land Authority are the same?  Is that what you said?

14           MS. HERNANDEZ-RODRIGUEZ:  In the official document,

15     the -- yes, in the official document, Commonwealth of Puerto

16     Rico address to Puerto Rico Sugar Corporation and/or the

17     Puerto Rico Land Authority, Your Honor.

18           In the Article VI, say "all the benefit of the

19     employees and workers of the corporation acquired up to the

20     transfer date shall be the sole responsibility of the

21     corporation," and say "it is provided that benefits for early

22     retirement, years of service, severance pay, and other

23     compensation will be approved for employees of the corporation

24     who qualify and have not been relocated to the government

25     agency of the transferred debts."

1          Okay.  Here, the cert. of Jose Onofre Ortiz-Quinones,

2   not continued working for the Commonwealth of Puerto Rico,

3   Your Honor.  Now is retirement.  It is -- he is in this

4   process of retirement now, and the Article X say, the benefit

5   of this same -- of this same law, Your Honor, 189 supra, the

6   benefit of accreditation of previous services in the Employee

7   Retirement System of the Government of Puerto Rico and its

8   instrumentalities are extended to the employees of the sugar

9   mills that were acquired by the Government of Puerto Rico

10  after year 1970, which participant of the retirement system

11  come with the incorporation of the corporation in the year

12  1976.  The corporation will make the payment of the

13  corresponding employer contribution for each employee per

14  request service accreditation, Your Honor.  And in this

15  moment, Jose Onofre Ortiz-Quinones is in this process, the

16  service accreditation.

17         For us it is very important that he's covered, that

18  he's part of this Title III proceeding in this case, Jose

19  Onofre Ortiz-Quinones, for the disposition specific of law.

20  But it's very important, Your Honor, that also is part, but

21  common sense -- for example, Jose Onofre Ortiz-Quinones was a

22  -- is a student of University of Puerto Rico.  The first line

23  of each document letter say University of Puerto Rico, or

24  University of Harvard, or anywhere else, but the first line of

25  each document that receives the credit of Jose Onofre

1  Ortiz-Quinones say Commonwealth of Puerto Rico, Your Honor.

2  It's part of records.  Always the Commonwealth of Puerto Rico

3  have all documents of Jose Onofre Ortiz.

4  　　　　　For us, it's very important also, because, in all

5  process, there is good faith, Your Honor.  The PROMESA law

6  also have this disposition, Your Honor.  And --

7  　　　　　THE COURT:  Would you please -- I'm sorry,

8  Ms. Hernandez-Rodriguez.  Would you repeat the last two

9  sentences?  You said that the Commonwealth of Puerto Rico has

10 something, and I didn't understand the word.

11 　　　　　MS. HERNANDEZ-RODRIGUEZ:  Yes.  I'm sorry, Your

12 Honor.  The letter of severance, the letter of this chart for

13 employment dated November 10, the year is 20 -- say, the first

14 line is "Commonwealth of Puerto Rico."  For us, it's very

15 important, because his -- the Sugar Corporation of Puerto Rico

16 is a separate entity, and is -- no is part of this case.  Say

17 another word -- no, Commonwealth of Puerto Rico.

18 　　　　　And the personnel history is very important, that all

19 documents of personnel history, the first line also say

20 "Commonwealth of Puerto Rico," and that Jose Ortiz-Quinones is

21 member of personnel.

22 　　　　　THE COURT:  So are you saying that because the

23 Commonwealth of Puerto Rico is the first line on the severance

24 letter, before Sugar Corporation of Puerto Rico and the name

25 of the particular refinery, that the Commonwealth of Puerto

1   Rico was Mr. Ortiz-Quinones's employer, even though there are

2   statutes that say the Sugar Corporation is separate, is a

3   separate public corporation, and the Land Authority is a

4   separate entity from the Commonwealth?

5        MS. HERNANDEZ-RODRIGUEZ:  Yes.  I want clear that --

6   yes, it's -- Commonwealth of Puerto Rico is the first line of

7   all documents that receive Mr. Jose Ortiz-Quinones, but it's

8   very important that the Public Service Personnel Law

9   specifically say that, the meaning agency, the agency of the

10  Commonwealth of Puerto Rico, include, include the corporation,

11  the public corporation, Your Honor.  This is the Law Five of

12  1975, Your Honor.  It's a clear and specific disposition of

13  law, and it's a -- Law No. 90 of year '86 give increase to the

14  salary, increase to salary to all.

15       THE COURT:  Yes.

16       MS. HERNANDEZ-RODRIGUEZ:  To all employees.

17       THE COURT:  I have one additional question for you.

18  As I understand the written arguments, the Oversight Board's

19  position is that those statutes relating to pay levels and

20  increases for public employees set the levels that public

21  corporations were supposed to pay, but did not say that the

22  Commonwealth would pay it.  The Commonwealth required public

23  corporations to pay it, but there is nothing in the particular

24  law that says the Commonwealth itself would have to pay it.

25       So what in the law, or in any other document that you

1    have says that the Commonwealth, as opposed to the Sugar

2    Corporation, would have to pay this compensation to public

3    employees employed by a public corporation?

4        MS. HERNANDEZ-RODRIGUEZ:   Okay.   Your Honor, my

5    opinion -- my opinion is that Law No. 90 of year 1986 is clear

6    that give increase of salary, but also it's very important

7    that acquired right doctrine law say that once a right has

8    been vested, then it may not be altered or reduced by

9    subsequent legislation.   The creditor has not received the

10   salary increase.   Neither, the creditor receive not rise wage

11   to the application of the federal minimum wage of April 15 of

12   law -- 1986.

13       I sustain my argument upon the Doctrine of Acquired

14   Rights that say, "what is meant by acquired rights or the

15   protection of acquired rights" is the question.   "Let us note

16   that the very term 'acquired' or 'vested' right implies and

17   suggests the idea of protection," Your Honor.

18       Also, it's important that -- the line of the

19   epigraph, *Estado Libre Asociado de Puerto Rico*, specifically

20   say, Commonwealth of Puerto Rico, say that give -- join with

21   the specific law, the fundamental part of the law form part of

22   the Title III proceedings, Your Honor.

23       I'm sorry.   Give me a moment, please.

24       THE COURT:   If you would wrap up your comments, I'd

25   be grateful.

1          MS. HERNANDEZ-RODRIGUEZ:  Yes.  And, also, I cannot

2     see this situation for separate, Your Honor -- I need -- we

3     need to see this situation, study that treat the law, the Law

4     90 of supra, and also the Law 189 of year 1996.  In the

5     explanatory notes, it's important that Your Honor see that in

6     one the -- give me a moment.  The second paragraph of the

7     explanatory note say specifically, (Remarks in Spanish.)

8          COURT REPORTER:  Your Honor, excuse me.  I'm sorry.

9     This is the court reporter.  The Spanish does not get

10    translated into the record, so it is needs to be in English.

11         MS. HERNANDEZ-RODRIGUEZ:  Yes.  The second paragraph

12    of explanatory note say -- I'll translate.  Okay.  The

13    Government of Puerto Rico has decided to transfer certain

14    assets and liabilities -- and liabilities of the Puerto Rico

15    Sugar Corporation and the Puerto Rico Land Authority to the

16    companies to be created via cane producer and seller of sugar,

17    Your Honor.  But in the Puerto Rico Article X, say -- the

18    Article VI, I'm sorry, say specifically that all benefit of

19    the employees and workers of the corporation accrued up to the

20    transfer date shall be sole responsibility of the corporation.

21    This meaning is that the responsibility of paying the increase

22    of salary is only the corporation.  And in the corporation, in

23    this moment, Your Honor, is very important that the

24    corporation of this moment, this -- in this moment of law say,

25    and the meaning agency include public corporation.  It's the

1    law in this moment, Your Honor.  No change is correct, but in

2    this moment, when receive increase of salary, Mr. Jose Onofre

3    Ortiz-Quinones, he thought that have a benefit of increase the

4    salary.  By this reason, I mention in my Motion Urgent

5    Objection that if the acquired right doctrine law is

6    application in this case, because one right has been vested,

7    then it may not be altered or reduced by a subsequent

8    legislation, Your Honor.

9            THE COURT:  Thank you.  Your time is up now.

10           MS. HERNANDEZ-RODRIGUEZ:  Okay.  Thank you very much.

11           THE COURT:  Thank you.

12           Ms. Stafford.

13           MS. STAFFORD:  Thank you, Your Honor.

14           Just briefly, as Your Honor noted in your question,

15   the statutes that Ms. Hernandez-Rodriguez cites that relate to

16   the setting of public employees' salaries, the Oversight Board

17   understands those to apply to the Commonwealth and any public

18   corporations, but they do not imply that the Commonwealth is

19   assuming liabilities that are owed by any specific

20   corporation.

21           As noted in our reply and in our opening remarks, the

22   Sugar Corporation was an independent entity with the right to

23   sue and be sued, and with its own liabilities separate from

24   the Commonwealth.  That is also true of the Puerto Rico Land

25   Authority, of which it was originally a subsidiary and to

1   which it transferred its liabilities upon its dissolution.

2          To the extent Ms. Hernandez-Rodriguez is arguing that

3   the fact that the letters sent by the Sugar Corporation

4   included the words "Commonwealth of Puerto Rico", we would

5   submit that that does not eliminate the statutory separation

6   that existed between the Sugar Corporation and the

7   Commonwealth of Puerto Rico.  And, in fact, the statute that

8   Ms. Hernandez-Rodriguez cites notes that liabilities with

9   respect to employee -- alleged back pay or salaries would

10  reside either with the corporation, which no longer exists, or

11  with the Puerto Rico Land Authority, which is not a part of

12  the Commonwealth.  And for those reasons, Your Honor, we would

13  submit that there's no basis to hold the Commonwealth liable

14  for the liabilities that have been asserted by

15  Mr. Ortiz-Quinones, Your Honor.

16          Thank you.

17          THE COURT:  Thank you.

18          I reviewed carefully the submissions prior to today,

19  and I have listened very carefully to the arguments that have

20  been made today.  This is my decision.

21          The 417th Omnibus Objection is sustained as to Claim

22  Nos. 179671 and 179673 filed by Jose Onofre Ortiz-Quinones.

23  Those claims are disallowed in their entirety, because they

24  assert claims arising from claimant's employment with the

25  Sugar Corporation, and the Commonwealth is not liable for

1  those claims.

2  Commonwealth law is clear that the Sugar Corporation

3  had a separate legal identity from that of the Commonwealth.

4  In particular, 28 L.P.R.A. 242(c), which was enacted in 1954,

5  and amended in 1955, provides that the Puerto Rico Land

6  Authority and its subsidiaries are public corporations that

7  have legal existence a   nd legal personality separate and

8  apart from those of the Commonwealth of Puerto Rico; and,

9  consequently, the debts, obligations, and property of the

10  Authority and its subsidiaries shall be understood as being

11  of the said corporations, and not of the Commonwealth of

12  Puerto Rico.

13  The Sugar Corporation was a subsidiary of the Land

14  Authority, and that is reflected also in several judicial

15  decisions, for example, *Mercado-Vega v. Martinez*, 692 F. Supp

16  36, 37, (D.P.R. 1988), where the Court stated "the Sugar

17  Corporation is a subsidiary of the Land Authority of Puerto

18  Rico." Also, *Sugar Corporation of Puerto Rico v.*

19  *Environeering, Inc.,* 520 F. Supp 996, 998, also from the

20  District of Puerto Rico, a 1981 decision, where the Court

21  recognized that Corporacion Azucarera is a subsidiary of the

22  Land Authority of Puerto Rico.  Finally, I also cite *Pedrosa*

23  *de San Miguel v. Blanco Lugo*, 560 F.2d 34, 35, (1st Cir.

24  1977), which identifies the Sugar Corporation as a subsidiary

25  of the Land Authority.

 1          These statutes and cases make it clear that the Sugar

 2   Corporation had its own separate legal existence, and that it

 3   was a subsidiary of the Land Authority.  And nothing in the

 4   statute suggests that the Commonwealth had a direct

 5   responsibility for any liabilities of the Sugar Corporation,

 6   and, in fact, the statutory language is to the contrary.  The

 7   fact that the name of the Commonwealth of Puerto Rico is also

 8   on the letterhead of the Sugar Corporation of Puerto Rico in

 9   the severance notice does not render the Commonwealth of

10   Puerto Rico liable for the liabilities of the Sugar

11   Corporation, which are defined by the statute.

12          The laws that have been cited relating to pay levels

13   and pay increases, in particular Law 90 of 1986, obligates

14   public corporations to provide certain levels of pay.  It does

15   not say that the Commonwealth of Puerto Rico is liable for

16   those payments to people who are employed by public

17   corporations.  Accordingly, the claimant has not demonstrated

18   a basis for holding the Commonwealth liable for the Sugar

19   Corporation's alleged debts, and the proofs of claim which

20   have been filed against the Commonwealth of Puerto Rico are,

21   therefore, disallowed.

22          Thank you, Ms. Stafford, and thank you,

23   Ms. Hernandez-Rodriguez.

24          MS. HERNANDEZ-RODRIGUEZ:  Thank you very much.

25          THE COURT:  Counsel, are there any other matters that

1  need to be addressed today?  Since we have concluded the set

2  Agenda, if you wish to be heard, raise your electronic hand on

3  the screen.

4          I see no hands raised, and so this concludes the

5  hearing Agenda for this Omnibus Hearing.  The next scheduled

6  hearing date is the May 18th to 19th, 2022, Omnibus Hearing.

7  At this point, I expect to preside over that hearing in person

8  at the courthouse in San Juan, Puerto Rico, with a video

9  connection to the courthouse here in New York for viewing and

10  counsel appearance purposes.  Attorneys who will be scheduled

11  to speak on the Agenda should expect to appear in person at

12  the San Juan courthouse or the New York courthouse.

13          Depending on the status of public health

14  restrictions, it may be necessary to limit the number of

15  people who can be present in particular courtrooms, and so the

16  Court encourages parties to keep track of the various

17  guidelines and protocols by visiting the websites of the

18  District of Puerto Rico and the Southern District of New York

19  for up-to-date COVID-19 information and guidelines.  An

20  appropriate procedural order for the hearings providing

21  further details will be issued in due course.

22          As always, I thank the court staff in Puerto Rico, in

23  New York, and in Boston for their work in preparing for and

24  conducting today's hearing, and their ongoing, outstanding

25  support of the administration of these very complex cases.

1    Stay safe and keep well, everyone.  We are adjourned.

2              (At 11:07 AM, proceedings concluded.)

3                        *     *     *

```
 1  U.S. DISTRICT COURT    )

 2  DISTRICT OF PUERTO RICO)

 3

 4      I certify that this transcript consisting of 45 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, and the

 8  Honorable United States Magistrate Judge Judith Gail Dein on

 9  March 23, 2022.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```