Hearing Date: May 18, 2022, at 9:30AM (Atlantic Standard Time)
Response Deadline: May 2, 2022, at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, ERS, and HTA.** |

## FOUR HUNDRED FORTIETH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO PARTIAL DUPLICATE AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Puerto Rico

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Highways and Transportation Authority ("HTA," and together with the Commonwealth and ERS, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this four hundred fortieth omnibus objection (the "Four Hundred Fortieth Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which appears to be based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) an ownership interest in bonds issued by the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment, (*c*) HTA Bridge Bonds (as defined below) for which the Debtors have not guaranteed repayment, (*d*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, and/or (*e*) bond claims that assert liabilities associated with secondarily insured bonds, which, in turn, are duplicative of proofs of claim filed against the Debtors on behalf of the holders of those bonds.  A portion of each of the claims listed on **Exhibit A** hereto will remain asserted against the Commonwealth of Puerto Rico (the "Commonwealth"). In support of the Four Hundred Fortieth Omnibus Objection, the Debtors respectfully represent as follows:

**JURISDICTION**

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

**A.    The Bar Date Orders**

3.    On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017, the Oversight Board issued restructuring certifications pursuant to PROMESA sections 104(j) and 206 and filed voluntary petitions for relief for the Puerto Rico Highways and Transportation Authority and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico pursuant to PROMESA section 304(a), commencing cases under Title III thereof (respectively, the "HTA Title III Case" and the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute**

5.      COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank ("GDB") and the Puerto Rico Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

6.      The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "COFINA Plan") [ECF No. 4652] on January 9, 2019.  The Court considered confirmation of the COFINA Plan and any objections thereto at a hearing on January 16-17, 2019.

7.      On February 4, 2019, the Court confirmed the COFINA Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment*

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].   On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "COFINA Settlement Order").   On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "COFINA Amended Confirmation Order").   The Plan became effective on February 12, 2019 (the "COFINA Effective Date"), when the transactions contemplated therein were consummated.   *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**C.     Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

8.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.   Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Public Buildings Authority ("PBA"), and the University of Puerto Rico ("UPR").

9.     ***PRIFA***— PRIFA is an affiliate of the GDB and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act"). PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRIFA Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRIFA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

10.     Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future,

interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

11.     _**PBA**_—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Claim, ¶¶ 19-21.

12.     _**UPR**_—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614).  Rider to Proof of Claim No. 13382, ¶ 5.

---

[4] Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by US Bank and US Bank Trust.

US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13382 (the "UPR Master Claim," and together with the PRIFA Master Claims and the PBA Master Claim, the "Commonwealth Master Claims").  The UPR Master Claim asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."  *Id.*, ¶ 12.

**D.      Bond Debt Master Proofs of Claim – HTA Title III Case**

13.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

14.      On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "HTA Title III Master Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

15.     Additionally, in accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "Bridge Bonds").  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee with respect to the Bridge Bonds.  On behalf of the holders of Bridge Bonds, Banco Popular filed in the HTA Title III Case a master proof of claim asserting approximately $153 million in liabilities plus unliquidated amounts for "all amounts owed on account of the [Bridge] Bonds," which was logged by Prime Clerk, LLC, as Proof of Claim No. 22624 (the "Bridge Master Claim").

16.     Holders of HTA Bridge Bonds have received and continue to receive all payments owed to holders of the HTA Bridge Bonds in full as they become due and owing.   The Commonwealth has not guaranteed repayment of the HTA Bridge Bonds, and each of the offering statements issued in connection with the HTA Bridge Bonds states "the [HTA Bridge] Bonds are not a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, other than the Authority, and neither the Commonwealth of Puerto Rico nor any of its subdivisions, other than the Authority, is required to pay the Bonds."[5]

17.     Certain bonds or notes issued by HTA have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market.  Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds.  In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market.  Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not

---

[5]*See, e.g.*, https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

part of this contract process.  When a holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance.  Certain bonds issued by HTA have been insured on the secondary market and, accordingly, have been issued new CUSIP numbers which correspond to bonds issued by HTA bearing original CUSIP numbers (the "HTA Secondarily Insured Bonds").

### E.    Bond Debt Issued by the Puerto Rico Aqueduct and Sewer Authority

18.    PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

19.    The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g).  Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2012, PRASA issued $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," or the "PRASA Senior Lien Bonds").

20.    Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing.  Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[6]  In addition, the Commonwealth has not guaranteed repayment of the PRASA Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth

---

[6] *See, e.g.*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[7]

21.    On July 20, 2021, the Oversight Board approved a proposed refunding transaction wherein PRASA would issue a series of 2021ABC and 2022A Senior Lien Bonds to refinance $1.8 billion of PRASA's outstanding 2012AB Senior Bonds (the "PRASA Refinancing Transaction").

**F.    Bond Debt Master Proofs of Claim – ERS Title III Case**

22.    ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.

23.    Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.

24.    BNYM serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of the ERS Bonds, BNYM filed a master proof of claim in the ERS Title III Case with respect to the ERS Bonds, asserting approximately $3.8 billion in liabilities plus unliquidated amounts, which was logged by Prime Clerk as Proof of Claim No. 16777 (the "ERS Master Proof of Claim," and together with the Commonwealth Master Claims, HTA Title III Master Proofs of Claim, Bridge Master Claim, and the Commonwealth Master Claims, the "Master Claims").

---

[7] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series B (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

**G.     Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment**

25.     On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (the "Eighth Amended Plan," as subsequently amended and modified, the "Plan") [ECF No. 19053].   The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

26.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No. 19784].

27.     On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

28.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved, (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto*

*Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

29.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

30.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**H.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

31.     To date, approximately 177,944 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

32.     Of the proofs of claim filed, approximately 117,000 proofs of claim have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 53,355 proofs of claim have been filed in relation to, or reclassified to be asserted against, ERS.  Over 2,278 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.  In addition, numerous of these claims were filed after the applicable Bar Date.

33.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

34.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

35.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 24 hearings and entered orders on over 315 omnibus objections filed by the Commonwealth, COFINA, ERS, HTA, PBA, and/or the Puerto Rico Electric Power Authority ("PREPA").  Based upon rulings and orders of the Court to date, approximately 100,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

36.     This Four Hundred Fortieth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

37.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

38.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

39.     The Four Hundred Fortieth Omnibus Objection seeks to disallow portions of the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed"), each of which purports to be based, in part, on (*a*) bonds issued by COFINA, (*b*) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Commonwealth has not guaranteed repayment, (*c*) an ownership interest in HTA Bridge Bonds, for which the Commonwealth has not guaranteed repayment, (*d*) bond claims that are duplicative of one or more master proofs of claim filed against the Debtors on behalf of the holders of certain bonds, and/or (*e*) bond claims that assert liabilities associated with secondarily insured bonds, which, in turn, are duplicative of proofs of claim filed against the Debtors on behalf of the holders of those bonds.  A portion of each of the Claims to Be Partially Disallowed asserting liabilities associated with general obligation bonds issued by the Commonwealth will remain asserted against the Commonwealth.  Notably, the general obligation bonds asserted by the Claims to Be Partially Disallowed were treated by the Plan and paid pursuant to its terms.  **Exhibit A** hereto further specifies why each of the Claims to Be Partially Disallowed should be disallowed in part.

### A.  No Liability for COFINA Bondholder Claims

40.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "Partial COFINA Bondholder Claims").

41.     As explained above, the COFINA Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the COFINA Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the COFINA Settlement

Order (the "COFINA Settlement Agreement"), and Paragraph 7 of the COFINA Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute. Furthermore, pursuant to Paragraph 29(f) of the COFINA Amended Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  COFINA Amended Confirmation Order, ¶ 29(f).[8] For all of these reasons, the Partial COFINA Bondholder Claims should be disallowed because these claims based on an apparent alleged ownership interest in COFINA Bonds have been satisfied, released, and/or discharged pursuant to the COFINA Settlement Order, COFINA Settlement Agreement, COFINA Amended Confirmation Order, and COFINA Plan.

### B. No Liability for HTA Bridge Bond Claims

42.    As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport to assert, in part, recovery against the Commonwealth for liabilities associated with HTA Bridge Bonds issued by HTA (collectively the "Partial HTA Bridge Bondholder Claims").

43.    As described above, however, the Commonwealth has not guaranteed repayment of the HTA Bridge Bonds, and is not required to make payments to holders in respect of the HTA

---

[8] Pursuant to the COFINA Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

Bridge Bonds.  Moreover, the Partial HTA Bridge Bondholder Claims do not provide a basis for asserting a claim against the Commonwealth for the HTA Bridge Bonds, which, as described above, were issued by HTA and not guaranteed by the Commonwealth.[9]

### C.  No Liability for PRASA Senior Lien Bond Claims

44.    As set forth in Exhibit A hereto, certain of the Claims to Be Partially Disallowed purport to assert liability, in part, based on the alleged ownership of bonds issued by PRASA (the "Partial PRASA Senior Lien Bondholder Claims").

45.    The Partial PRASA Senior Lien Bondholder Claims assert liabilities against the Commonwealth associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Debtors.  The Commonwealth has not guaranteed repayment for the Senior Lien Bonds.  Further, the Partial PRASA Senior Lien Bondholder Claims do not assert a legally sufficient basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth. Because of this failure to comply with the applicable rules, neither the Commonwealth nor the Court are able to determine the validity of the Partial PRASA Senior Lien Bondholder Claims.

### D.  No Liability for Duplicate Bond Claims

46.    As set forth in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport to assert liability, in part, on the basis of bonds issued by HTA, ERS, PBA, UPR, and PRIFA (collectively, the "Partial Duplicate Bond Claims").

---

[9] To the extent the holders of the Partial HTA Bridge Bondholder Claims intended to assert the Partial HTA Bridge Bondholder Claims against HTA, and not the Commonwealth, such claims would be duplicative of the Bridge Master Claim, asserted against HTA on behalf of holders of HTA Bridge Bonds.

47.     Each of the Partial Duplicate Bond Claims purport to assert, in whole or in part, liability against the Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by HTA, ERS, PBA, UPR, and PRIFA.  Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Debtors' Title III Cases.  The holders of the Partial Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

**E.  No Liability for Duplicate Secondarily Insured Bond Claims**

48.     As set forth in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport to assert, in part, liabilities against the Debtors associated with one or more HTA Secondarily Insured Bonds (the "Partial HTA Secondarily Insured Bond Claims").

49.     The CUSIP numbers associated with such Partial HTA Secondarily Insured Bond Claims correspond to bonds issued by HTA bearing original CUSIP numbers. Those original CUSIP numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed in one or more Master Claims.  Therefore, the HTA Secondarily Insured Bonds Claims assert liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims.  Any failure to disallow the Partial HTA Secondarily Insured Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the detriment of other stakeholders in the Title III Cases.  The holders of the HTA Secondarily Insured Bond Claims will not be prejudiced by the partial disallowance of

their claims because the liabilities associated with the Partial HTA Secondarily Insured Bond Claims are subsumed within one or more Master Claims.

50.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Four Hundred Fortieth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and Puerto Rico Highways and Transportation Authority to Duplicate and No Liability Bond Claims*, dated April 1, 2022, attached hereto as **Exhibit B**.

## NOTICE

51.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtors have provided notice of this Four Hundred Fortieth Omnibus Objection to (a) the individual creditors subject to this Four Hundred Fortieth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Four Hundred Fortieth Omnibus Objection is attached hereto as Exhibit C.  Spanish translations of the Four Hundred Fortieth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

52.     No prior request for the relief sought in this Four Hundred Fortieth Omnibus Objection has been made to this or any other court.


*[Remainder of page intentionally left blank.]*

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: April 1, 2022
San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Highways and Transportation Authority*

**Fecha de la vista: 18 de mayo de 2022, a las 9:30 (AST)**
**Fecha límite para responder: 2 de mayo de 2022, a las 16:00 (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA
DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA, el SRE y la ACT.** |

**CUADRINGENTÉSIMA CUADRAGÉSIMA OBJECIÓN GLOBAL (SUSTANTIVA)
DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, DEL SISTEMA DE RETIRO
DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE
PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE
PUERTO RICO A RECLAMACIONES POR BONOS PARCIALMENTE DUPLICADAS
EN LAS QUE NO EXISTE RESPONSABILIDAD**

---

[1]    Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA y el SRE, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta cuadringentésima cuadragésima objeción global (la "Cuadringentésima cuadragésima objeción global") a las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento, cada una de las cuales parece estar basada parcialmente en *a*) unos bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso, *c*) unos Bonos relativos al Puente de la ACT (según se definen abajo) por los que los Deudores no han garantizado el reembolso, *d*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas y/o *e*) reclamaciones por bonos que alegan responsabilidades vinculadas con unos bonos asegurados en el mercado secundario que a su vez constituyen duplicados con respecto a evidencias de reclamaciones radicadas contra los Deudores en nombre de los tenedores de dichos bonos. Una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá

---

[2]       PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

estando alegada contra el Estado Libre Asociado de Puerto Rico (el "ELA"). En apoyo de la
Cuadringentésima cuadragésima objeción global, los Deudores manifiestan respetuosamente lo
siguiente:

### JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene
jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme
a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de
PROMESA.

### ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de
reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición
voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la
sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el
"Caso de Título III del ELA").   El 21 de mayo de 2017, la Junta de Supervisión emitió
certificaciones de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó
peticiones voluntarias de remedio para la Autoridad de Carreteras y Transportación de Puerto Rico
y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico
conforme a la sección 304(a) de PROMESA, iniciando los casos conforme al Título III de dicho
cuerpo legal (respectivamente, el "Caso de Título III de la ACT" y el "Caso de Título III del SRE",
y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el

Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF. núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 16:00 (AST).

**B.      Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

5.      COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico (el "BGF") y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

6.      La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan de COFINA") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan de COFINA y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

7.      El 4 de febrero de 2019, el Tribunal confirmó el Plan de COFINA que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación de COFINA"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada de COFINA"). El Plan entró en vigor

el 12 de febrero de 2019 (la "Fecha de entrada en vigor de COFINA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**C.      Evidencias de reclamaciones principal relativas a la deuda de los bonos: Caso de Título III del ELA**

8.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, en el marco del Caso de Título III del ELA se aportaron evidencias de reclamaciones principales en nombre de los tenedores de determinados bonos o pagarés emitidos por la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP") y la Universidad de Puerto Rico (la "UPR").

9.      *AFI*: la AFI es una filial del BGF y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI

(conjuntamente, los "Bonos de la AFI"), se radicaron evidencias de reclamaciones principales

contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI") por parte de BNYM,

US Bank y UMB Bank, N.A. En primer lugar, BNYM alegó tres evidencias de reclamaciones

principales: la Evidencia de reclamación núm. 16759 alegando, en nombre de los tenedores de los

Pagarés de anticipación de bonos relativos a rentas de fondo de impuestos dedicado, serie 15 (los

"Pagarés de la AFI"), una "reclamación contingente y no liquidada contra el ELA en razón de la

totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Fiduciario o los

Propietarios puedan tener contra el ELA, en virtud de la ley o equidad, sobre la base del Acuerdo

de fideicomiso (o en relación con este), el Acuerdo de tenedores de pagarés, los Pagarés o las

Rentas pignoradas. . . "; la Evidencia de reclamación núm. 19814 alegando, en nombre de los

tenedores de los Pagarés de la AFI, reclamaciones por el principal y los intereses impagados,

además de las tarifas y los gastos del fiduciario; y la Evidencia de reclamación núm. 103718

alegando, en nombre de los tenedores de los bonos de renta emitidos por la AFI, incluidos Bonos

de Renta (Proyecto de la Autoridad Portuaria), serie 2011A, "una reclamación garantizada,

contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas

radicadas, derechos y/o remedios que el Fiduciario o los tenedores de los Bonos tengan o puedan

tener contra el ELA, en virtud de la ley o equidad . . ."

10.     Además, US Bank radicó una evidencia de reclamación principal en relación con

determinados Bonos de la AFI, que fue registrada por Prime Clerk, LLC, como Evidencia de

reclamación núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos

sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie

2006B), alegando "reclamaciones por montos contingentes y no liquidados en relación con los

intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente

al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de Bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las Obligaciones de Bonos pendientes, monto mínimo de $249,099,446.17, cuyo curso de conducta continúa . . .”  Cláusula Adicional de la Evidencia de reclamación núm. 13386, ¶ 26.

11.     _**AEP**_: la AEP supuestamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 62833.[4]     La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4 millones en concepto de capital supuestamente impagado, $160 millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y

---

[4] la Evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm. 13351, que fue radicada inicialmente por US Bank y US Bank Trust.

aquellos que pretendan actuar en nombre del ELA . . ."  Cláusula de la Reclamación Principal de la AEP, ¶¶ 19-21.

12.     **_UPR_**: la UPR es supuestamente "una corporación pública del ELA que integra un sistema orgánico de educación superior", conforme a la Ley núm. 1 de la Asamblea Legislativa de Puerto Rico, aprobada el 20 de enero de 1966 (18 L.P.R.A. §§ 601 a 614). Cláusula Adicional de la Evidencia de reclamación núm. 13382, ¶ 5. US Bank actúa como fiduciario en relación con determinados Bonos de renta de refinanciamiento del sistema universitario, series P y Q emitidos por la UPR, y radicó una evidencia de reclamación principal, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 13382 (la "Reclamación Principal de la UPR", y junto con la Reclamación Principal de la AFI y la Reclamación Principal de la AEP, las "Reclamaciones Principales del ELA"). La Reclamación principal de la UPR alega "reclamaciones contingentes y no liquidadas contra el ELA por todos los derechos y titularidades que U.S. Bank como Fiduciario tenga o pueda tener, de la naturaleza o tipo que fueran, en relación con el Acuerdo de Fideicomiso, o de conformidad con otros documentos o leyes aplicables, lo que incluye incumplimiento de pactos o desviación potencial de rentas pignoradas para el pago de los Bonos, en la actualidad o en el futuro". *Id.*, ¶ 12.

**D.     Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la ACT**

13.     La ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002.

14.     En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III de la ACT (conjuntamente, las "Reclamaciones Principales de Título III de la ACT"): la Evidencia de reclamación núm. 37245, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no liquidados; la Evidencia de reclamación núm. 38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución de 1998, aproximadamente $3200 millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamación núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución de 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

15.     Además, de conformidad con la Ley habilitante de la ACT, la ACT emitió en 2003 una serie de Bonos relativos a rentas de instrumentos financieros especiales para facilitar el financiamiento del puente de Teodoro Moscoso (los "Bonos relativos al puente"). El Banco Popular de Puerto Rico (el "Banco Popular") actúa como fiduciario en relación con los Bonos relativos al puente. En nombre de los tenedores de los Bonos relativos al puente, el Banco Popular presentó, en el marco del Caso de Título III de la ACT, una evidencia de reclamación principal reclamando aproximadamente $153 millones en concepto de responsabilidades más montos no liquidados relativos a "todos los montos adeudados con respecto a los Bonos [relativos al puente]", que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 22624 (la "Reclamación Principal relativa al Puente").

16.     Los tenedores de los Bonos relativos al puente de la ACT han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos relativos al

puente de la ACT, cuando tales bonos hayan sido pagaderos. El ELA no ha garantizado el
reembolso de los Bonos relativos al puente de la ACT; además, en cada una de las declaraciones
de oferta emitidas en relación con los Bonos relativos al puente de la ACT se expone que "los
Bonos [relativos al puente de la ACT] no constituyen deuda del Estado Libre Asociado de Puerto
Rico ni de ninguna de sus subdivisiones políticas, salvo la Autoridad, por lo que ni el Estado Libre
Asociado de Puerto Rico ni ninguna de sus subdivisiones, salvo la Autoridad, tiene la obligación
de pagar los Bonos". [5]

17.    Determinados bonos o pagarés emitidos por la ACT han sido asegurados por una o
más aseguradoras de bonos municipales en el mercado primario o en el secundario. El seguro de
bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos
contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie
de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales
bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los
tenedores de los bonos no asegurados que busquen obtener un seguro en el mercado secundario
entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo
que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono
no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número
CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de
su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado
secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los

---

[5]Véase,                                    por                                    ejemplo,
https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

**E.     Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

18.     La AAA fue creada de conformidad con la Ley núm. 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

19.     La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583"). En 2012, la AAA emitió unos bonos de renta, Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B de 2012" o los "Bonos de Gravamen Prioritarios de la AAA").

20.     Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja que la AAA no ha publicado ninguna notificación de incumplimiento en relación con los Bonos de Gravamen Prioritarios de la AAA.[6]  Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios de la AAA. En consecuencia, las declaraciones de oferta relativas a los Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado

---

[6] *Véase, por ejemplo*,
https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos Bonos".[7]

21.     El 20 de julio de 2021, la Junta de Supervisión aprobó una transacción de reembolso propuesta, conforme a la cual la AAA emitiría las series 2021ABC y 2022A de Bonos de Gravamen Prioritarios para refinanciar unos Bonos Prioritarios de la AAA pendientes por un valor de $1800 millones (la "Transacción de Refinanciamiento de la AAA").

**F.      Evidencias de reclamaciones principal relativas a la deuda de los bonos: Caso de Título III del SRE**

22.     El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.

23.     Presuntamente, conforme a la *Resolución sobre bonos para el financiamiento de pensiones*, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de aproximadamente $2900 millones.

24.     BNYM actúa como agente fiscal con respecto a los Bonos del SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM presentó una evidencia de reclamación principal en el marco del Caso de Título III del SRE en relación con los Bonos del SRE, reclamando aproximadamente $3800 millones en concepto de responsabilidades más montos no

---

[7] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie B (Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

liquidados, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 16777 (la
"Evidencia de Reclamación Principal del SRE", y junto con las Reclamaciones Principales del
ELA, las Evidencias de Reclamaciones Principales de Título III de la ACT, la Reclamación
Principal relativa al Puente y las Reclamaciones Principales del ELA, las "Reclamaciones
Principales").

**G.     Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme
al Título III**

25.     El 3 de noviembre de 2021, la Junta de Supervisión radicó (en nombre del ELA,
del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP")), el *Octavo Plan de
Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado
conforme al Título III,* (el "Octavo Plan de Ajuste"), y en su versión enmendada y modificada
posteriormente denominado, el "Plan") [ECF núm. 19053]. El Tribunal examinó la confirmación
del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los
días 8 y 22 de noviembre de 2021.

26.     Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción
para la confirmación del Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de
Puerto Rico y otros elaborado conforme al Título III*, [ECF núm. 19517] y 2) *Orden sobre las
modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el
Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del
Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF
núm. 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del
Tribunal, radicó un Plan revisado posteriormente. *Véase el Plan de Ajuste Conjunto Enmendado*

*del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III*, [ECF núm. 19784].

27.    El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III*, [ECF núm. 19813].

28.    El 20 de enero de 2022, conforme el Título VI de PROMESA, el Tribunal aprobó, (a) la *Modificación Calificativa para la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Núm. 21-01493, ECF No. 72-1] (el "CCDA QM") y (b) la *Modificación Calificativa para la Autoridad para el Financiamiento de la Infraestructura del Gobierno de Puerto Rico* [Caso Núm. 21-01492, ECF No. 82-1] (el "PRIFA QM"), las cuales complementan las transacciones contenidas en el Plan.

29.    El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF núm. 20349].

30.    El CCDA QM y PRIFA QM también entraron en vigor el 15 de marzo de 2022. Véase, Caso Núm. 21-01493, ECF No. 74; Caso Núm. 21-01492, ECF No. 84.

**H.    Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

31.     Hasta la fecha, se han radicado aproximadamente 177,944 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

32.     De las evidencias de reclamaciones radicadas, aproximadamente 117,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,355 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Más de 2,278 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida. Además, muchas de dichas reclamaciones fueron radicadas luego de la Fecha Límite aplicable.

33.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la*

16

*regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

34.     En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

35.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la

17

fecha más de 24 vistas y ha dictado órdenes sobre más de 315 objeciones globales radicadas por el ELA, COFINA, el SRE, la ACT, la AEP y/o la Autoridad de Energía Eléctrica de Puerto Rico (la "<u>AEE</u>"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

36.    La presente Cuadringentésima cuadragésima objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

37.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso prima facie del reclamante". (se omite cita)).

38.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de

Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

39.   La Cuadringentésima cuadragésima objeción global pretende que se rechacen partes de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente"), cada una de las cuales pretende basarse parcialmente en *a*) bonos emitidos por COFINA, *b*) una participación patrimonial en bonos emitidos por la AAA, que no es un Deudor de Título III, por unos montos por los que el ELA no ha garantizado el reembolso, *c*) una participación patrimonial en los Bonos relativos al puente de la ACT, por los que el ELA no ha garantizado el reembolso, *d*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores en nombre de determinados bonistas y/o *e*) reclamaciones por bonos que alegan responsabilidades vinculadas con unos bonos asegurados en el mercado secundario que, a su vez, constituyen duplicados de las evidencias de reclamaciones radicadas contra los Deudores en nombre de los tenedores de dichos bonos. La parte de cada una de las Reclamaciones que han de ser rechazadas parcialmente, en la que se alegan responsabilidades vinculadas con bonos de obligación general emitidos por el ELA, seguirá estando alegada contra el ELA. Obsérvese que los bonos de obligación general, alegados por las Reclamaciones que han de ser rechazadas parcialmente, han sido tratados por el Plan y pagados de acuerdo con sus términos. El **Anexo A** del presente documento especifica además por qué cada una de las Reclamaciones que han de ser rechazadas parcialmente debe ser rechazada en parte.

### A. Ausencia de responsabilidad por reclamaciones relativas a los bonistas de COFINA

40.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas parcialmente en supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones Parciales de los Bonistas de COFINA").

41.     Como se explicó anteriormente, la Orden de Conciliación de COFINA resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación de COFINA, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del Acuerdo de Conciliación [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación de COFINA (el "Acuerdo de Conciliación de COFINA"), y el párrafo 7 de la Orden de Confirmación Enmendada de COFINA, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada de COFINA, reclamaciones (tales como las Reclamaciones Parciales de los Bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada de COFINA, ¶ 29(f).[8]  Por todos esos motivos, las Reclamaciones Parciales de los

---

[8] Conforme al Plan de COFINA, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo,

Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación de COFINA, el Acuerdo de Conciliación de COFINA, la Orden de Confirmación Enmendada de COFINA y el Plan de COFINA.

### B. Ausencia de responsabilidad por Reclamaciones por Bonos relativos al Puente de la ACT

42.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar, en parte, recuperación contra el ELA por responsabilidades vinculadas con los Bonos relativos al Puente de la ACT emitidos por la ACT (conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas relativas al Puente de la ACT</u>").

43.     Sin embargo, como se explicó anteriormente, el ELA no ha garantizado el reembolso de los Bonos relativos al puente de la ACT, por lo que no tiene la obligación de realizar pagos a los tenedores en relación con los Bonos relativos al puente de la ACT.  Además, las Reclamaciones Parciales de los Bonistas relativas al Puente de la ACT no proporcionan fundamento alguno para alegar una reclamación contra el ELA por los Bonos relativos al puente de la ACT, los cuales, como se señaló anteriormente, fueron emitidos por la ACT y no han sido garantizados por el ELA.[9]

---

accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

[9] En la medida en que los titulares de las Reclamaciones Parciales de los Bonistas relativas al Puente de la ACT tuvieran la intención de alegar dichas reclamaciones contra la ACT, y no contra el ELA, tales reclamaciones estarían duplicadas con respecto a la Reclamación Principal relativa

### C. Ausencia de responsabilidad por las Reclamaciones de Gravamen Prioritario de la AAA

44.     Conforme a lo expuesto en el Anexo A del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los bonos emitidos por la AAA (las "Reclamaciones Parciales de Gravamen Prioritario de los Bonistas de la AAA").

45.     Las Reclamaciones Parciales de Gravamen Prioritario de los Bonistas de la AAA alegan responsabilidades contra el ELA vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la AAA que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente de los Deudores. El ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritario. Asimismo, las Reclamaciones Parciales de Gravamen Prioritario de los Bonistas de la AAA no proporcionan ningún fundamento que sea suficiente desde el punto de vista legal para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni el ELA ni el Tribunal pueden determinar la validez de las Reclamaciones Parciales de Gravamen Prioritario de los Bonistas de la AAA.

### D. Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos

46.     Según se expone en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por la ACT, el SRE, la AEP, la UPR y la AFI (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

---

al Puente, alegada contra la ACT en nombre de los tenedores de los Bonos relativos al Puente de la ACT.

47.    Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende alegar, total o parcialmente, responsabilidad contra los Deudores vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por el la ACT, el SRE, la AEP, la UPR y la AFI. Si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos de Título III de los Deudores. Los titulares de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

**E.   Ausencia de responsabilidad por reclamaciones duplicadas por bonos asegurados en el mercado secundario**

48.    Según se expone en el **Anexo A** del presente documento, algunas de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar, en parte, responsabilidades contra los Deudores vinculadas con uno o más Bonos ACT asegurados en el mercado secundario (las "Reclamaciones parciales por bonos ACT asegurados en el mercado secundario").

49.    Los números CUSIP vinculados con dichas Reclamaciones parciales por bonos ACT asegurados en el mercado secundario corresponden a bonos emitidos por la ACT que llevan los números CUSIP originales. Dichos números CUSIP originales, que reflejan las emisiones de los bonos en los que los reclamantes tienen participación patrimonial, se mencionan en una o más

Reclamaciones Principales. En consecuencia, en las Reclamaciones por bonos ACT asegurados en el mercado secundario se alegan responsabilidades vinculadas con bonos emitidos por la ACT que constituyen duplicados en relación las responsabilidades alegadas en una o más Reclamaciones Principales. Si las Reclamaciones parciales por bonos ACT asegurados en el mercado secundario no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores, en detrimento de otras partes interesadas en los Casos de Título III. Los titulares de las Reclamaciones por bonos ACT asegurados en el mercado secundario no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones parciales por bonos ACT asegurados en el mercado secundario figuran en una o varias Reclamaciones Principales.

50.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Cuadringentésima cuadragésima objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones por bonos duplicadas en las que no existe responsabilidad*, de fecha 1 de abril de 2022, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

51.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores han notificado la presente Cuadringentésima cuadragésima objeción global a) a los acreedores individuales objeto de esta Cuadringentésima cuadragésima objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 16* [ECF núm. 20190-1]), disponibles en el sitio web de casos de los Deudores, en

https://cases.primeclerk.com/puertorico. Una copia de la notificación de esta Cuadringentésima cuadragésima objeción global se adjunta al presente como Anexo C. Las traducciones al español de la Cuadringentésima cuadragésima objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

### AUSENCIA DE SOLICITUDES PREVIAS

52.    No se ha radicado ninguna solicitud de remedio previa a la presente Cuadringentésima cuadragésima objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

*[El resto de la página se deja en blanco intencionadamente.]*

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 1 de abril de 2022
      San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*