**Hearing Date: May 18, 2022 at 9:30AM (Atlantic Time)**
**Response Deadline: May 2, 2022 at 4:00PM (Atlantic Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to ERS and HTA.** |

### FOUR HUNDRED FORTY-FIRST OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO CROSS-DEBTOR DUPLICATE CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Employees Retirement System of the Government of the Commonwealth of Puerto

Rico ("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA," and together

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

with ERS, the "Debtors"), by and through the Financial Oversight and Management Board for

Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to

section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

("PROMESA"),[2] file this four hundred forty-first omnibus objection (the "Four Hundred Forty-

First Omnibus Objection") to the cross-debtor duplicate proofs of claim listed on **Exhibit A** hereto,

and in support of the Four Hundred Forty-First Omnibus Objection, respectfully represent as

follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section

306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board, at the request of the Governor, issued a

restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary

petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to

PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title

III Case").  On May 21, 2017, the Oversight Board issued restructuring certifications pursuant to

PROMESA sections 104(j) and 206 and filed voluntary petitions for relief for ERS and HTA,

pursuant to PROMESA section 304(a), commencing cases under Title III thereof (the "HTA Title

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

III Case" and the "ERS Title III Case," respectively, and together with the Commonwealth Title III Case, the "Title III Cases").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      ERS**

5.      ERS is a trust established by the Commonwealth in 1951 for the economic wellbeing of public employees. ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A. § 775. ERS was established to administer the payment of pensions and other benefits to officers and employees of the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly (the "Legislature"), and officers and employees of public corporations and municipalities. *See* 3 L.P.R.A. § 761.

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.      More than 260,000 active retirees and employees participated in ERS and relied on it for retirement and other benefits.  Many of these beneficiaries relied on payments from ERS as their primary source of income.

7.      Under Act 447 of May 15, 1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788) (the "Enabling Act"), all government employees whose retirement benefits were administered by ERS were to receive defined benefits calculated based on a statutory formula that considered factors including the employee's salary and years of service.  *See* 3 L.P.R.A. § 761, et seq.

8.      ERS was funded primarily by contributions from employers ("Employers' Contributions"), the amount of which was determined by statute pursuant to a formula based on the amount of active employee payroll of participating public employers from time to time (and not based on payments made or to be made to retirees).  Employers covered by ERS included the Commonwealth, its instrumentalities, and municipalities, excluding, among others, the school system and the judiciary.

9.      ERS was underfunded from its inception, and, after many attempts at its reform failed to return ERS to solvency, ERS filed a petition under Title III of PROMESA on May 21, 2017.  *See supra* ¶ 3.

10.     After ERS filed for Title III, on June 25, 2017 and August 23, 2017, the Legislature passed the Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188"), and Governor Rosselló signed Act 106-2017 ("Act 106") into law.  Together, Act 106 and Joint Resolution 188 (collectively, the "Legislation") reformed Puerto Rico's retirement systems by (a) having the Commonwealth assume ERS's obligations to pay pensioners, (b) having employers reimburse the Commonwealth (the "Paygo Payments") for payments actually made by the Commonwealth to the employers' current pensioners, and (c) because ERS would no longer

be responsible for paying benefits, eliminating employers' obligations to contribute to ERS. *See*
Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

11.     As a result of the Legislation, ERS stopped receiving Employers' Contributions as
of July 1, 2017, and was relieved of the obligation to pay retiree benefits.

12.     As part of these reforms, and in partial exchange for the Commonwealth's
assumption of ERS's obligation to pay retirement benefits, ERS was required to sell its assets and
transfer the proceeds, in addition to any existing available funds, to the Puerto Rico Department
of Treasury's general fund to offset a portion of the Commonwealth's assumed pension liabilities.
*See* Act 106, § 1.4; J.R. 188, § 2.

### C.     Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment

13.     November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico
Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title
III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (the "Eighth Amended
Plan," as subsequently amended and modified, the "Plan") [ECF No. 19053]. The Court
considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of
the Plan on November 8-22, 2021.

14.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for
Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth
of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to
the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the
Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the
Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight

Board filed a further revised Plan in compliance with the Court's orders. *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No. 19784].

15.     January 18, 2022, the Court confirmed the Plan. *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

16.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved, (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

17.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

18.     The CCDA QM and PRIFA QM also became effective on March 15, 2022. *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**D.     Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

19.     To date, approximately 177,944 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.     Of the proofs of claim filed, over 53,355 proofs of claim have been filed in relation
to, or reclassified to be asserted against, ERS.  Over 2,278 proofs of claim have been filed in
relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar
Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,
such as being subsequently amended, not putting forth a claim for which the Debtors are liable,
being duplicative of other proofs of claim, or failing to provide information necessary for the
Debtors to determine whether the claim is valid.

21.     In order to efficiently resolve as many of the unnecessary proofs of claim as
possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order
(A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of
Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus
Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion
by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection
Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting
Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,
the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English
and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with
the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions
of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.     In the continued interest of resolving any unnecessary proofs of claims in an
efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking,
among other things, to allow the Debtors to file omnibus objections on substantive bases, to further
expand the number of claims that may be included on an objection, and to approve additional

7

forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

23.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held over 24 hearings and entered orders on over 315 omnibus objections filed by the Commonwealth, ERS, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, the Puerto Rico Electric Power Authority ("PREPA"), and/or the Puerto Rico Public Buildings Authority ("PBA"). Based upon rulings and orders of the Court to date, approximately 100,000 claims, asserting over $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

24.     This Four Hundred Forty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

25.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

26.     The Four Hundred Forty-First Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(3) and the Amended Omnibus Objection

Procedures, claims filed against the Debtors that are duplicative of other proofs of claim filed against the Commonwealth, and for which the asserted liability, if any, would be against the Commonwealth, not the Debtors.

27.     As set forth in **Exhibit A** hereto, certain claims filed against ERS, as identified in the column titled "Claims to Be Disallowed" (collectively, the "Claims to Be Disallowed"), assert the same liabilities as other proofs of claim filed against the Commonwealth, as identified in the column titled "Remaining Claims" (each a "Remaining Claim" and collectively, the "Remaining Claims"). Pursuant to the Legislation, the Commonwealth assumed any obligation to make payments to pensioners or other beneficiaries of ERS. Specifically, Act 106 provides "the disbursement of the benefits of all Pensioners and Beneficiaries are guaranteed by the General Fund [of the Commonwealth] through the 'pay as you go' scheme . . .". Act 106, § 2.1(b); *see also id.* § 2.4(a) ("When this Law enters into effect, the benefits of the Accumulated Pensions of the Retirement System Participants who began working before the Law took effect will be preserved and guaranteed by the Government [of the Commonwealth]"). Act 106 also specified that all benefit obligations of ERS were to be transferred to the Commonwealth, and paid in accordance with ERS's obligations to such beneficiary as of the time of Act 106's enactment, including "disability pensions, death benefits, payments to beneficiaries, reimbursement of contributions, and any sums owed or benefits of a similar nature". *Id.* § 2.3. Accordingly, any claims asserting an entitlement to pension or other benefits by individuals previously participating in ERS properly lie against the Commonwealth.

28.     Many of the Claims to Be Disallowed fall into one or more of the following categories, each of which—if otherwise legally valid and factually accurate—may provide such claimholders an allowed claim against the Commonwealth, but not ERS.

     a.   <u>Class action wages and benefits claims</u>.  Certain claims refer to class action lawsuits commenced by employees of the Commonwealth or its instrumentalities, and assert that in addition to the back wages and other compensation owed by their employers, ERS also owes such employees additional pension benefits based on the higher compensation paid to them pursuant to the pending or resolved class action lawsuits.

     b.   <u>Pension benefits claims</u>.  Certain claims assert an entitlement to pension benefits to be paid by ERS.

29.     Each of the categories of claims set forth above asserts a right to pension or other benefits to be paid by ERS.  As explained above, however, the Legislation transferred any obligation to make such payments to the Commonwealth.  Therefore, the amounts allegedly owed to the claimants who filed the Claims to Be Disallowed—if any—are owed by the Commonwealth, and not ERS.

30.     In addition to pension and other benefits claims against ERS, certain of the Claims to Be Disallowed allege claims unrelated to pension benefits, including claims against the Commonwealth or other public employers for salaries or wage benefits, and employment discrimination claims.  Each of these claims also is improperly asserted against ERS and HTA, and should instead be asserted in the Commonwealth Title III Case.

31.     Accordingly, the asserted liability, if any, for the Claims to Be Disallowed is properly asserted against the Commonwealth—the entity against which the Remaining Claim is asserted.  The Claims to Be Disallowed thus do not represent valid claims against the Debtors.

32.     Any failure to disallow the Claims to Be Disallowed will result in the applicable claimants potentially receiving an unwarranted double recovery against the Debtors, to the

detriment of other stakeholders in the Title III Cases.  The holders of the Claims to Be Disallowed will not be prejudiced by the disallowance of their claims because they will each retain a Remaining Claim against the Commonwealth.  Because this Four Hundred Forty-First Omnibus Objection to the Claims to Be Disallowed does not constitute an objection to the Remaining Claims, the Debtors reserve their rights to object to the Remaining Claims on any other grounds whatsoever.

33.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Four Hundred Forty-First Omnibus Objection (Non-Substantive) of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to Cross-Debtor Duplicate Claims*, dated April 1, 2022, attached hereto as **Exhibit B**.

### NOTICE

34.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, ERS is providing notice of this Four Hundred Forty-Fifth Omnibus Objection to (a) the individual creditors subject to this Four Hundred Forty-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Four Hundred Forty-First Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Four Hundred Forty-First Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

35.     This Four Hundred Forty-First Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to the Remaining Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of any rights available under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

36.     No prior request for the relief sought in this Four Hundred Forty-First Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE ERS respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting ERS such other and further relief as is just.

Dated: April 1, 2022
San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative of
the Employees Retirement System for
the Government of the
Commonwealth of Puerto Rico and
the Puerto Rico Highways and
Transportation Authority*

**Fecha de la vista: 18 de mayo de 2022, a las 9:30 (AST)**
**Fecha límite para responder: 2 de mayo de 2022, a las 16:00 (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el SRE y la ACT.** |

---

**CUADRINGENTÉSIMA CUADRAGÉSIMA PRIMERA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES DUPLICADAS DE DEUDORES RECÍPROCOS**

---

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el SRE, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta cuadringentésima cuadragésima primera objeción global (la "Cuadringentésima cuadragésima primera objeción global") a las evidencias de reclamaciones de deudores recíprocos duplicadas que aparecen en el **Anexo A** del presente documento, y en apoyo de la Cuadringentésima cuadragésima primera objeción global manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión, a petición del Gobernador, emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho

---

[2]  PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

2

cuerpo legal (el "Caso de Título III del ELA").  El 21 de mayo de 2017, la Junta de Supervisión

emitió certificaciones de reestructuración conforme a las secciones 104(j) y 206 DE PROMESA, y

radicó peticiones voluntarias de remedio para el SRE y la ACT conforme a la sección 304(a) de

PROMESA, iniciando casos conforme al Título III de dicho cuerpo legal (el "Caso de Título III

de la ACT" y el "Caso de Título III del SRE" respectivamente, y junto con el Caso de Título III

del ELA, los "Casos de Título III").

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije*

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

*la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Conforme a la

*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)*

*aprueba la forma y la manera de su notificación* [ECF. núm. 2521] (la "Orden Inicial de Fecha

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de

Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*

*evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 16:00 (AST).

**B.     SRE**

5.     El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

independiente del Gobierno del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A. § 775. El SRE fue creado para administrar el pago de las pensiones y otros beneficios a funcionarios y empleados del Gobierno del ELA, miembros y empleados de la Asamblea Legislativa de Puerto Rico (la "Legislatura") y funcionarios y empleados de corporaciones públicas y municipios. *Véase* 3 L.P.R.A. § 761.

6.      Más de 260,000 retirados y empleados activos han participado en el SRE y dependido de él en cuanto a sus beneficios de retiro y otros beneficios. Muchos de esos beneficiarios han dependido de los pagos del SRE como su principal fuente de ingresos.

7.      Conforme a la Ley 447 del 15 de mayo de 1951 (codificada, según enmienda, en 3 L.P.R.A. §§ 761–788) (la "Ley Habilitante"), todos los empleados públicos cuyos beneficios de retiro fueran administrados por el SRE debían recibir beneficios definidos calculados sobre la base de una fórmula legal que tomaba en consideración factores que incluían el salario y los años de servicio del empleado. *Véase* 3 L.P.R.A. § 761, *et seq*.

8.      El SRE estuvo financiado principalmente por aportaciones patronales (las "Aportaciones Patronales"), cuyo monto se determinaba por ley conforme a una fórmula basada sobre el monto de la nómina del empleado activo que los patronos públicos participantes pagaran a lo largo de cierto período de tiempo (y no sobre la base de pagos realizados, o por realizarse, a los retirados). Los patronos cubiertos por el SRE incluían al ELA, sus instrumentalidades y municipios, pero excluían, entre otros, al sistema escolar y la judicatura.

9.      Desde un principio, el SRE estuvo infrafinanciado y, tras muchos intentos fallidos de reforma, el SRE no ha vuelto a ser solvente, por lo que el 21 de mayo de 2017 radicó una petición conforme al Título III de PROMESA. *Véase supra* ¶ *3.*

10.     Tras la radicación por el SRE conforme al Título III, el 25 de junio de 2017 y el 23 de agosto de ese mismo año, la Legislatura adoptó la Resolución conjunta relativa a otras asignaciones para el año fiscal 2017-2018 (la "<u>Resolución Conjunta 188</u>") y el Gobernador Rosselló autorizó la promulgación de la Ley 106-2017 (la "<u>Ley 106</u>"). Juntas, la Ley 106 y la Resolución Conjunta 188 (conjuntamente, la "<u>Legislación</u>") reformaron el sistema de retiro de Puerto Rico al a) hacer que el ELA asumiera las obligaciones del SRE en cuanto al pago de pensiones, b) hacer que los patronos reembolsaran al ELA (los "<u>Pagos PayGo</u>") los pagos efectivamente realizados por el ELA a los pensionados actuales de los patronos, y c) eliminar las obligaciones de los patronos de realizar aportaciones al SRE (ya que el SRE ya no sería responsable de pagar beneficios). *Véase* la Ley 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

11.     Como consecuencia de la Legislación, a partir del 1 de julio de 2017 el SRE dejó de recibir Aportaciones Patronales y fue liberado de la obligación de pagar beneficios de retiro.

12.     Como parte de dichas reformas, y a modo de un intercambio parcial por la asunción por parte del ELA de las obligaciones del SRE consistentes en pagar los beneficios de retiro, el SRE tenía la obligación de vender sus activos y transferir los ingresos obtenidos, además de cualquier fondo disponible ya existente, al fondo general del Departamento de Hacienda de Puerto Rico para compensar por una parte de las responsabilidades relativas a pensiones asumidas por el ELA. *Véase* la Ley 106, § 1.4; J.R. 188, § 2.

**C.     Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III**

13.     El 3 de noviembre de 2021, la Junta de Supervisión radicó (en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "<u>AEP</u>")), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado*

*conforme al Título III,* (el "Octavo Plan de Ajuste"), y en su versión enmendada y modificada posteriormente denominado, el "Plan") [ECF núm. 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 y 22 de noviembre de 2021.

14.    Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III*, [ECF núm. 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF núm. 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III*, [ECF núm. 19784].

15.    El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III*, [ECF núm. 19813].

16.    El 20 de enero de 2022, conforme el Título VI de PROMESA, el Tribunal aprobó, (a) la *Modificación Calificativa para la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Núm. 21-01493, ECF No. 72-1] (el "CCDA QM") y (b) la *Modificación Calificativa para la Autoridad para el Financiamiento de la Infraestructura del Gobierno de*

*Puerto Rico* [Caso Núm. 21-01492, ECF No. 82-1] (el "PRIFA QM"), las cuales complementan las transacciones contenidas en el Plan.

17.    El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF núm. 20349].

18.    El CCDA QM y PRIFA QM también entraron en vigor el 15 de marzo de 2022. *Véase,* Caso Núm. 21-01493, ECF No. 74; Caso Núm. 21-01492, ECF No. 84.

**D.    Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

19.    Hasta la fecha, se han radicado aproximadamente 177,944 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

20.    De las evidencias de reclamaciones radicadas, más de 53,355 evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. Más de 2,278 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras

evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

21.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "<u>Orden de Notificación</u>").

22.    En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*

*vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

23.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado más de 24 vistas y ha dictado órdenes sobre más de 315 objeciones globales radicadas por el ELA, el SRE, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") y/o la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,000 reclamaciones que reivindicaban más de $43 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, el SRE y la AEP fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

24.    Esta Cuadringentésima cuadragésima primera objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

**OBJECIONES A EVIDENCIAS DE RECLAMACIONES**

25.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de

Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

26.    La Cuadringentésima cuadragésima primera objeción global pretende que se rechacen, de conformidad con la regla 3007(d)(3) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones radicadas contra los Deudores que constituyen duplicados de otras evidencias de reclamaciones radicadas contra el ELA, y en las que en todo caso la responsabilidad alegada correspondería al ELA, no a los Deudores.

27.    Como se expone en el **Anexo A** del presente documento, algunas reclamaciones radicadas contra el SRE identificadas en la columna titulada "Reclamaciones que han de ser rechazadas" (conjuntamente, las "Reclamaciones que han de ser rechazadas") alegan las mismas responsabilidades que otras evidencias de reclamaciones radicadas contra el ELA, según lo identificado en la columna titulada "Reclamaciones Restantes" (cada una denominada una "Reclamación Restante" y conjuntamente, las "Reclamaciones Restantes"). Conforme a la Legislación, el ELA asumió todas las obligaciones de realizar pagos a los pensionados u otros beneficiaros del SRE. Más concretamente, la Ley 106 dispone que "el desembolso de los beneficios de todos los Pensionados y Beneficiarios están garantizados por el Fondo General [del ELA] a través del esquema "*pay as you go*" (pago por uso)...".  Ley 106, § 2.1(b); *véase también id*. § 2.4(a) ("Al entrar en vigor esta Ley, se preservarán y garantizarán por el Gobierno [del ELA] los beneficios de las Pensiones Acumuladas de los Participantes en el Sistema de Retiro que comenzaron a trabajar antes de entrar en vigor la presente Ley"). La Ley 106 también especificó que todas las obligaciones de beneficios del SRE tenían que transferirse al ELA y pagarse de acuerdo con las obligaciones del SRE frente a dichos beneficiarios a la fecha de la promulgación

de la Ley 106, lo que incluye "pensiones por discapacidad, beneficios por fallecimiento, pagos a beneficiarios, reembolso de aportaciones y cualquier cantidad adeudada o beneficio de naturaleza similar". *Id.* § 2,3. En consecuencia, lo correcto sería alegar cualquier reclamación, que reivindique un derecho a beneficios de pensiones o a otros beneficios a favor de personas físicas que hayan participado anteriormente en el SRE, contra el ELA.

28.     Muchas de las Reclamaciones que han de ser rechazadas corresponden a una o más de las siguientes categorías, cada una de las cuales (siempre que sean válidas desde el punto de vista legal y efectivamente correctas) podría proporcionar a tales titulares de reclamaciones la posibilidad de radicar una reclamación contra el ELA, pero no contra el SRE.

   a.  Reclamaciones de salarios y beneficios relacionadas con una acción colectiva. Determinadas reclamaciones se refieren a demandas de acción colectiva iniciadas por empleados del ELA o sus instrumentalidades, y alegan que además de salarios atrasados y otras remuneraciones adeudadas por sus patronos, el SRE también les adeuda beneficios adicionales de pensiones sobre la base de una remuneración más alta que cobraban conforme a las demandas de acción colectiva pendientes o resueltas.

   b.  Reclamaciones por beneficios de pensiones. Determinadas reclamaciones alegan un derecho a beneficios de pensiones adeudados por el SRE.

29.     Cada una de las categorías de reclamaciones arriba identificadas alega un derecho a beneficios de pensiones o a otros beneficios adeudados por el SRE. Sin embargo como se explicó anteriormente, la Legislación transfirió al ELA todas las obligaciones de realizar dichos pagos. En consecuencia, los montos supuestamente adeudados a los reclamantes que radicaron las Reclamaciones que han de ser rechazadas los debe pagar en todo caso el ELA, no el SRE.

30.     Además de las reclamaciones por beneficios de pensiones u otros beneficios radicadas contra el SRE, algunas Reclamaciones que han de ser rechazadas alegan reclamaciones no relacionadas con beneficios de pensiones, lo que incluye reclamaciones contra el ELA u otros patronos públicos por beneficios de salarios o sueldos, así como reclamaciones por discriminación laboral. Cada una de dichas reclamaciones también está alegada indebidamente contra el SRE y la ACT, pero debe estar alegada en el Caso de Título III del ELA.

31.     Por lo que en todo caso lo correcto sería alegar la responsabilidad por las Reclamaciones que han de ser rechazadas contra el ELA (entidad contra la cual se alega la Reclamación Restante). En consecuencia, las Reclamaciones que han de ser rechazadas no constituyen reclamaciones válidas contra los Deudores.

32.     Si las Reclamaciones que han de ser rechazadas no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores en detrimento de otras partes interesadas en los Casos de Título III. Los titulares de las Reclamaciones que han de ser rechazadas no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que cada uno de ellos mantendrá una Reclamación Restante contra el ELA. Puesto que esta Cuadringentésima cuadragésima primera objeción global a las Reclamaciones que han de ser rechazadas no constituye una objeción a Reclamaciones Restantes, los Deudores se reservan los derechos a oponerse a las Reclamaciones Restantes sobre la base de cualesquiera otros motivos que fueren.

33.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Cuadringentésima cuadragésima primera objeción global (no sustantiva) del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la*

*Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones Duplicadas de Deudores Recíprocos*, de fecha 1 de abril de 2022, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

34.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el SRE notifica la presente Cuadringentésima cuadragésima primera objeción global a) a los acreedores individuales objeto de esta Cuadringentésima cuadragésima primera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 16* [ECF núm. 20190-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Cuadringentésima cuadragésima primera objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Cuadringentésima cuadragésima primera objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

35.     Esta Cuadringentésima cuadragésima primera objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones Restantes o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objeto, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos que

13

asisten a los Deudores a impugnar cualquier reclamación sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a cualquiera de los derechos disponibles conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

36.   No se ha radicado ninguna solicitud de remedio previa a la presente Cuadringentésima cuadragésima primera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

*[El resto de la página se deja en blanco intencionadamente]*

POR LO QUE el SRE solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al SRE cualesquiera otros remedios que se consideren justos.

Fecha: 1 de abril de 2022  
      San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*  
Hermann D. Bauer  
USDC núm. 215205  
Carla García-Benítez  
USDC núm. 203708  
Gabriel A. Miranda  
USDC núm. 306704  
**O'NEILL & BORGES LLC**  
250 Avenida Muñoz Rivera, local 800  
San Juan, PR 00918-1813  
Tel.: (787) 764-8181  
Fax: (787) 753-8944

*[Firma en la versión en inglés]*  
Martín J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)  
**PROSKAUER ROSE LLP**  
Eleven Times Square  
Nueva York, NY 10036  
Tel.: (212) 969-3000  
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*