**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 19522**<br><br>(Jointly Administered) |

### THE COMMONWEALTH OF PUERTO RICO'S OBJECTION TO MOTION OF NTT DATA STATE HEALTH CONSULTING, LLC FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM [ECF NO. 19522]

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Commonwealth of Puerto Rico (the "Commonwealth")[2], pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Verified Motion of NTT Data State Health Consulting, LLC for Allowance of Administrative Expense Claim* (the "Motion") [ECF No.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Objection on behalf of the Commonwealth.

19522] filed by NTT Data State Health Consulting, LLC (the "Movant"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.

**BACKGROUND**

1. On May 3, 2017 (the "Petition Date"), the Commonwealth, by and through the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of PROMESA, filed a petition with the United States District Court for the District of Puerto Rico (the "Court") under Title III of PROMESA (the "Title III Case").

**A. Movant's Claim**

2. On December 15, 2021, Movant filed the Motion, requesting that the Court enter an order "determining that NTT [Health's] claim[3] be considered an administrative expense of Debtor, entitled to administrative priority pursuant to Section 503 and Section 507 of the Code". See, *Motion* at p. 7.

3. Movant alleges that "[o]n November 30, 2018" Movant and the Puerto Rico Department of Health ("DOH") executed a *Professional Services Contract for the Puerto Rico Medicaid Program for the Provision of Medicaid Management Information System Services*, Contract No. 2019-DS0572 (the "Contract[4]"). According to Movant, the Contract was executed between DOH, an entity of the Commonwealth, and Movant "for independent verification and validation services for the information technology (IT) systems", which Contract was "to be in effect until September 30, 2020". See, *Motion* at p. 2, ¶ 4.

---

[3] Hereinafter, the "Claim".

[4] As stated in the Contract, its purpose was for Movant to provide independent verification and validation services during the design, development and implementation of the Eligibility and Enrollment project of the Puerto Rico Medicaid Program ("PRMP"). See, **Exhibit A**, Contract at p. 2.

2

4. In the Motion, Movant argues that, under the Contract, the DOH "had to pay the submitted certified invoices within a thirty (30) day period after their approval, which approval was not to be unreasonably withheld" by the DOH. See, *Motion* at pp. 2-3, ¶ 5.

5. Movant further asserts that, although the Contract was to end on September 30, 2020, in March 2020, the DOH asked Movant "to discontinue work on a certain deliverable subject" to the Contract, but the DOH and Movant "came to an agreement that the work completed thus far, in addition to completing certain Spanish Translations activities, would be paid for the deliverable". See, *Motion* at p. 3, ¶ 8.

6. Movant alleges that, regarding the services and activities mentioned above, "[o]n or about October 19, 2020, NTT Data submitted certified invoice #9000879701 (the "Original Invoice") for the services rendered from September 2020". See, *Motion* at p. 3, ¶ 10. The Original Invoice was for the amount of $554,867.00 (the "Original Invoice Amount"), and its description stated that it was for "[r]epurposed deliverable per approval from Luz Cruz Romero". See, **Exhibit B-1**, *Original Invoice*.

B. **The Commonwealth's Position**

7. The Contract was executed between the DOH and Cognosante Consulting, LLC ("Cognosante"), an entity that was acquired by Movant on April 1, 2019. The Contract was amended on June 7, 2019, solely to amend the notice addresses for both parties, reflecting Movant's acquisition of Cognosante and Movant thus appearing as successor-in-interest of Cognosante in the Contract.

8. Under the Contact, and prior to the DOH's request to discontinue work, Movant had a deliverable for the completion of the Center for Medicaid Services' ("CMS") Medicaid Eligibility and Enrollment Toolkit ("MEET") Checklists, which would eventually lead to the

3

Certification/Authority to Connect for the Puerto Rico Eligibility & Enrollment system ("PREE"). See, **Exhibit C**, *Spanish Translation Plan – Approved.*

9. As acknowledged in the Motion, on March 2020, the DOH requested that Movant discontinue the work on the MEET. See, *Motion ¶ 8*.

10. The Commonwealth requested that Movant discontinue work on the MEET certification process because the PREE leadership determined that, as part of a pilot program, it would switch from the traditional MEET certification activity method to an Outcomes Based Certification ("OBC") method and that the certification process work under the OBC method would be conducted by another entity. See, **Exhibit D**, *Letter of the DOH dated July 22, 2021*. This shift from the MEET certification activity method to an OBC method was acknowledged by Movant's leadership. Id.

11. Based on the DOH's shift of the certification activity method, from MEET to OBC, Movant's projected services under the Contract were re-purposed with the DOH, as of that time, ceasing to provide data, input and/or documentation related to MEET certification activities. Id.

12. Although Movant acknowledged this shift, the Contract was not amended to include the re-purposed deliverable. As a result, the Original Invoice included item descriptions that did not comply with the OBC certification method established by CMS and could not be processed by the DOH because the services therein described were not approved within the terms of the Contract. Id.

13. Thereafter, on June 2, 2021, the DOH and Movant held a meeting, wherein Movant resubmitted a different invoice (the "New Invoice") on June 11, 2021, for the original deliverable −in spite of having acknowledged that, in March 2020, the DOH requested the discontinuation of such work− in the amount of $443,893.60, with an alleged discount of $110,973.40 when compared

4

to the amount claimed in the rejected Original Invoice. See, **Exhibit B-2**, *New Invoice*. The services description in the New Invoice was changed to "[r]e-submitted deliverable per agreement with PRDoH". Id.

### i. Relevant Contract Provisions

14. Under its *Third Section*, the expiration date of the Contract was September 30, 2020 (the "Contract Expiration Date"). **Exhibit A**, Contract at p. 2.

15. Further, under the *Fourth Section* of the Contract, the same could "be dissolved prior to its termination date by any of the two parties, through written notification to the other party, within thirty (30) days previous notice from the date of the intended solution, with no additional obligations from either party", other than payment obligations of the DOH for any completed deliverables and documented work in process by Movant and in the case of a termination by the DOH, reimbursement of any wind-down costs (costs subject to the DOH's approval) incurred by the DOH. Id. at p. 5.

16. Pursuant to the *Sixth Section* of the Contract, namely, the *Compensation Clause* thereof, **(i)** Movant's invoices were to "be submitted… on a monthly basis, within the first fifteen (15) days following the period invoiced", which invoices **(ii)** were to be for the deliverables defined in Appendix A[5] of the Contract and **(iii)** that the DOH would "not honor invoices submitted ninety days (90) or more after the services were rendered" and that Movant accepted and agreed to comply

---

[5] Appendix A lists several categories for Movant's "statement of work" under the Contract, namely **(i)** Weekly Status Reports, **(ii)** Independent Verification and Validation ("IV&V") Management Plan, **(iii)** Project Assessment Report, **(iv)** CMS Progress Report, **(v)** R2 Milestone Review Checklists and CMS Progress Report and **(vi)** Operations Readiness Assessment. Furthermore, Table 3 of Appendix A included a *Deliverable Payment Schedule*, specifying that any and all deliverables under the Contract were due on September 2020. It should be noted that the Original Invoice Amount in the Original Invoice is the exact same amount that was reflected in Table 3 of Appendix A for the original services. See, **Exhibit A**, Contract, p. 45.

5

with such requirement, understanding "that if the invoices are not submitted on a timely manner it waives the right to get paid for services rendered". Id. at pp. 7-8.

17. For the reasons set forth herein, the Motion should be denied.

## OBJECTION

### A. Movant is Not Entitled to Payment Under the Express Terms of the Contract.

18. The Motion should be denied because **(i)** the Original Invoice failed to describe a valid service under the Contract, pursuant to applicable Puerto Rico law, and **(ii)** the New Invoice was not timely submitted under the Contract.

19. As recently noted by this Court, to further the Bankruptcy Code's purpose of "rehabilitat[ing] and preserv[ing] the value of [a] financially distressed" debtor "grants first priority in the distribution of the limited assets of the estate to administrative expenses allowed under section 503, which include 'the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[]'". In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (D.P.R. Oct. 29, 2021) (citing Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 41 (1st Cir. 2003)). This Court also noted that "[a]lthough there is no 'estate' in a Title III case, the First Circuit has held that, in the context of applying section 503(b)(1)(A) in a Title III case, the term 'estate' should be understood to refer to 'property of the debtor.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (D.P.R. Oct. 29, 2021) (citing Union de Trabajadores de la Industria Eléctrica y Riego v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 7 F.4th 31, 38 (1st Cir. 2021)).

20. In discussing the burden for a request for allowance of administrative expenses, this Court cited the First Circuit's general criteria that should be considered to determine whether to allow an administrative expense, *i.e.*, that a request for priority payment of administrative expense

6

under Section 503(a) of the Bankruptcy Code "may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor", explaining, further, that "statutory priorities are narrowly construed, and the burden of proving entitlement rests with the party seeking it." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (citing Woburn Associates v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1 (1st Cir. 1992); In re Hemingway Transp., Inc., 954 F.2d at 5; In re FBI Distribution Corp., 330 F.3d at 41-42); see also, In re Drexel Burnham Lambert Grp., 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown by the movant.").

21. Pursuant to the general principle expressed in the seminal case of Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir. 1976) that a "creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business" a movant needs to show both elements to seek relief under 11 U.S.C. § 503(b)(1)(A).

22. In other words, there can be no allowance of an administrative expense absent a clear showing that a movant's claim **(i)** arose from a postpetition transaction with the debtor **and (ii)** that, for such transaction "the consideration supporting the claim must have benefitted the estate in some demonstrable way". Malden Mills Indus. v. Maroun (In re Malden Mills Indus.), 303 B.R. 688, 706 (B.A.P. 1st Cir. 2004) (citing In re FBI Distribution Corp., 330 F.3d 36 (1st Cir. 2003); In re Hemingway Transport, Inc., 954 F.2d 1, at *5 (1st Cir. 1992); In re Mammoth Mart, Inc. 536 F.2d 950 (1st Cir. 1976)). The "benefit" analysis is a way of testing whether a particular

7

expense was "necessary" to preserve the estate. The underlying reasoning is that an expense incurred in exchange for something that is not beneficial to the estate cannot be considered as an expense necessary for preserving the estate. See, Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[3][b] (16th ed. 2021).

### *i. The Original Invoice Failed to Describe a Valid Service Under the Contract, Pursuant to Applicable Puerto Rico Law*

23. Here, the Contract was subject to, and would be interpreted pursuant to the laws of the Commonwealth of Puerto Rico; under Puerto Rico law, contracts constitute the law between the contracting parties, so long as such agreement contains conditions essential to its validity[6]. Rivera Fernandez v. Connecticut Mut. Life Ins. Co., 917 F. Supp. 120 (D.P.R. 1996).

24. Furthermore, pursuant to Act 237 of August 31, 2004 ("Act 237-2004"), which establishes the parameters governing professional and/or consulting services with the Commonwealth, this type of contract shall be especially perfected and used for very specific purposes. 3 L.P.R.A. § 8612. Pursuant to Act 237-2004, any such contract "**shall indicate precisely which services or duties are required by the Government**" and "the contracted services must be described in detail in the contract text". 3 L.P.R.A. § 8613(g) (emphasis added). Furthermore, "[t]he contract shall **establish the manner of payment**, that is, whether the invoice shall be based upon fees per hour, or by tasks or finished phases, or by means of a lump sum after the services to be rendered have been completed, among others." 3 L.P.R.A. § 8613(i) (emphasis added). In addition, pursuant to subsection (j) of Act 237-2004, any "invoice shall be specific,

---

[6] Under Puerto Rico law, the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation. Soto v. State Chem. Sales Co. Int'l, 719 F. Supp. 2d 189, 191 (D.P.R. 2010), aff'd sub nom. Soto v. State Indus. Prod., Inc., 642 F.3d 67 (1st Cir. 2011). Further, although the Puerto Rico Civil Code was amended on June 1, 2020, through Act 55-2020 (31 L.P.R.A. § 5311), because the Contract was executed on November 30, 2018, the Puerto Rico Civil Code of 1930 governs.

itemized and accompanied by a report detailing the services rendered and the hours worked in the rendering of said services." 3 L.P.R.A. §8613(j).

25. Thus, even if the Court could determine that the allegations in the Motion could adequately establish that Movant's translation services in connection with the Original Invoice provided a benefit to the Commonwealth, which, for the reasons below, Movant has failed to meet its burden, the Contract was not amended for it to indicate precisely which services or duties were required by the DOH in connection with re-purposed deliverable, a *sine qua non* requirement under 3 L.P.R.A. §§ 8613(g) and (i). In fact, this is the very reason why the Original Invoice was unable to be processed by the DOH, resulting in an invoice that described services not approved under the Contract. See, **Exhibit D**, *Letter of the DOH dated July 22, 2021*.

26. Under these circumstances, even assuming that the re-purposed deliverable services were valid, which is denied, the Commonwealth could not, as a matter of law, process the Original Invoice.

### ii. *The New Invoice Was Presented Outside of the Required Period*

27. Furthermore, on June 2, 2021, Movant submitted the New Invoice, seeking payment of the deliverables after the Contract Expiration Date, and well after the ninety (90) day period to do so, which commenced in March 2020 when it acknowledged the DOH's instructions to stop providing such services[7]. See, **Exhibit D**, *Letter of the DOH dated July 22, 2021*.

28. Thus, even if the New Invoice submitted on June 11, 2021, complied with the *Fourth Clause* of the Contract by seemingly requesting payment of completed, originally-covenanted deliverables, which the Commonwealth denies because the DOH specifically

---

[7] Moreover, Movant's description of services under the New Invoice, which read "[r]e-submitted Deliverable per agreement with PRDoH" clearly did not comply with the "specific" and "itemized" description required under applicable law, further precluding its processing for payment.

9

instructed Movant not to continue such work, with the Movant's acknowledgment, payment of the New Invoice was still inappropriate as a matter of law because it was filed outside of the ninety-day (90) period to do so, pursuant to the *Sixth Section* of the Contract and, thus, Movant waived any right to get paid therefor. Therefore, the sole reason why Movant could not receive payment, neither the Original Invoice nor the New Invoice, was its own failure to adhere to the terms of the Contract.

### B. The Motion Fails to Meet Its Burden Pursuant to 11 U.S.C. § 503(b)(1)(A).

29. Movant has not carried its most basic burden of proving entitlement to its asserted administrative expense priority. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 at 210 (". . . the burden of proving entitlement rests with the party seeking it . . .") (citing Hemingway Transp., 954 F.2d at 5; FBI Distribution, 330 F.3d at 41-42); see also, Drexel, 134 B.R. at 489 ("A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown by the movant.").

30. Here, Movant offers a very limited description of the alleged services rendered to the DOH to arguing that "the amounts herein claimed by NTT Data were the agreed-upon fees for the services" after executing the Contract. See, *Motion* at p. 5, ¶¶ 17, 18. Even this, however, is factually incorrect, because Movant failed to amend the Contract to include the re-purposed deliverable and thus could and should have foreseen that the DOH would be unable to process payment of the Original Invoice.

31. Thereafter, upon realizing that the DOH's inability to process the Original Invoice was directly caused by Movant's failure to amend the Contract to include such services, it submitted the New Invoice after the lapsing of the Contract Expiration Date and, more importantly, after the lapsing of the ninety (90) day period to submit invoices, thereby waiving any alleged right to payment.

32. Movant fails to even attempt to argue why or how the transactions vaguely described therein were demonstrably beneficial to the Commonwealth, which, in itself, dooms a request for relief under 11 U.S.C. §503(b)(1)(A). In fact, it is clear that "[a] creditor's claim is not entitled to priority in bankruptcy proceedings as an administrative expense claim simply because the right to payment arises after the petition date." In re Financial Oversight and Management Board for Puerto Rico, 635 B.R. 201.

33. Therefore, because Movant has failed to establish that the Motion is based on any efforts to preserve the Commonwealth's assets, nor has it claimed that it supplied consideration beneficial to the Commonwealth, the Motion fails the 11 U.S.C. §503(b)(1)(A) test on its face. See, generally, In re Financial Oversight and Management Board for Puerto Rico, 481 F.Supp.3d 60 at *65 ("Movant has not claimed that his Motion is based on any efforts to preserve the debtor's assets, nor has he claimed that he supplied consideration beneficial to the debtor, making section 503(b)(1)(A) inapplicable here.").

### C. *Reading* Is Wholly Inapposite.

34. Next, Movant argues that even assuming that the services in connection with the Claim are not found to be beneficial for the Commonwealth, it is still entitled to priority payment based on the "fundamental fairness" exception discussed in the case of Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), further alluding to the case of In re Healthco International Inc., 272 B.R. 510 (B.A.P. 1st Cir. 2002), as recently cited by this Court in In re Financial Oversight and Management Board for Puerto Rico, 481 F.Supp.3d 60.

35. It should be noted, however, that in the case of Healthco, the Bankruptcy Appellate Panel for the First Circuit ruled although "[c]laims without the required components may qualify for administrative treatment only in limited circumstances, where 'fundamental fairness' requires it", such exception was inapplicable to the facts of that case. In re Healthco, at *512-514.

36. Moreover, in the contested matter of In re Financial Oversight and Management Board for Puerto Rico described above, in which the Commonwealth had, prior to the Petition Date, confiscated (and later auctioned) movant's vehicle as a result of a criminal investigation, this Court recognized the 'fundamental fairness' exception for two (2) categories of claims, namely, when the Commonwealth's postpetition operations occasion tortious injuries to third parties, or when the claim arises from postpetition actions that deliberately violate applicable law and damage others. As a result, this Court concluded that movant was not entitled to an administrative expense claim under such exception because the facts had a pre-petition genesis and because the narrow rule was inapplicable to such facts.

37. Movant's theories extending Reading beyond its intended scope should be rejected for at least two reasons. *First*, Reading is wholly inapplicable to situations of alleged contractual breach. Reading is an exception to the traditional requirement that movants show "benefit" to the estate, based on the intention to compensate tort-like harm created by operating debtors. Extension to this context as Movants argue is not permitted by applicable authority. *Second*, it would not be equitable to reward Movant for failing to comply with the terms of the Contract, of which Movant was well aware and to which Movant explicitly agreed.

### i. *Reading Does Not Apply to Movant's Claims for Contractual Breach.*

38. In *Reading*, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. See 391 U.S. at 483-85. The exceptional component of *Reading*'s holding is the victim's postpetition tort claim was allowed as an administrative claim even though the receiver's postpetition tort clearly did not benefit the bankrupt's estate. The Supreme Court recognized bankrupt estates must be administratively liable for their own negligence; otherwise, it would be unfair for bankruptcy estates to escape liability.

39. The traditional rule—that post-petition claims should only be entitled to administrative expense priority in exchange for a "benefit" provided to the postpetition debtor—is intended to incentivize parties to deal with bankrupt debtors. In re Bos. Reg'l Med. Ctr., Inc., 291 F.3d at 124 ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession[.]"). *Reading* and its progeny are an exception to the traditional, inducement-based "benefit" requirement. Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), aff'd and remanded sub nom. Brandt v. Lazard Freres & Co., LLC (In re Healthco Int'l, Inc.), 310 F.3d 9 (1st Cir. 2002) ("In a nutshell, the 'fundamental fairness' exception is recognized when the debtor's postpetition operations occasion tortious injuries to third parties (*Reading*), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (*Charlesbank*).").

40. Although application of *Reading* has not been limited to intentional or egregious misconduct[8], Movant offers no legal authority—and the Commonwealth has located none—to support its application to circumstances where a non-payment stems from a claimant's failure to adhere to the terms and conditions of a contract.

41. Here, Movant's claim for contractual non-payment is a request to advance Movant's private, pecuniary interests rather than to advance the public's interest in remedying hazards and compensating victims of negligence. See In re Old Carco LLC, 424 B.R. 633, 647 (Bankr. S.D.N.Y. 2010) ("here the Affected Dealers are attempting to advance their private interests and rights under the state Dealer Laws, as opposed to an effort to advance a state's interest in protecting the health and safety of the general public. Even less is there any imminent and

---

[8] See, Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[3][c][i] (16th ed. 2021).

identifiable hazard presented. Therefore, the analysis of the cases that extended the *Reading* rationale to situations involving environmental hazards is not applicable."). It is unremarkable that Puerto Rico, like other jurisdictions, has laws requiring that valid debts must be paid in full. It cannot be the rule, however, that mere non-payment of valid debts encompass actions that "violate applicable law and damage others" qualifying for *Reading* because that would bring within the scope of *Reading* a debtor's ordinary-course transactional obligations—a result that demolishes the requirement that "benefit" for such claims be shown. Accordingly, Movant's request to extend *Reading* to this context should be rejected.

### ii. *Movant Should Not be Rewarded for Failing to Comply with the Contract and Applicable Law.*

42. Movant's reasoning as to the applicability of the "fundamental fairness" exception to its Claim is that "the services performed by NTT Data were done in accordance with the requirements established" in the Contract and that Movant "has not been paid and is owed $443,893.50 under certified invoice 9000879701" which "violates applicable law[9] and is to NTT Data's detriment". See, *Motion* at p. 6, ¶¶ 22, 23. These allegations lack merit and should be discarded.

43. The "fundamental fairness" exception cannot be applicable to the circumstances at bar because, for the reasons stated in detail above, the facts reveal that the proximate cause of any non-payment by the Commonwealth of the Original Invoice was Movant's failure to comply with the terms and conditions of the Contract and not any alleged violation by the Commonwealth of applicable law.

---

[9] For the avoidance of doubt, the Commonwealth notes that "[h]aving a state law claim ... cannot be enough to establish an administrative expense priority. Otherwise, any state law claim would qualify and the exception would swallow the rule." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 635 B.R. 201 (D.P.R. 2021). In any event, however, as discussed below, the Commonwealth acted in harmony with state law and Movant does not have a state law claim.

**WHEREFORE**, the Commonwealth requests the Court enter an order denying the Motion for the reasons stated in this Objection and granting such other relief as is just and proper.

Dated: April 11, 2022

Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*