**COMMONWEALTH OF PUERTO RICO**
**DEPARTMENT OF HEALTH**
**SAN JUAN, PUERTO RICO**

**PROFESSIONAL SERVICES CONTRACT FOR THE PUERTO RICO MEDICAID**
**PROGRAM FOR THE PROVISION OF MEDICAID MANAGEMENT INFORMATION**
**SYSTEM SERVICES**

**APPEARING**

**THE FIRST PARTY:** The **PUERTO RICO DEPARTMENT OF HEALTH** ("PRDoH"), represented by its Designated Secretary, **RAFAEL RODRIGUEZ MERCADO, MD, FAANS, FACS,** of legal age, married, a medical doctor and resident of Guaynabo, Puerto Rico, or the Undersecretary, Concepcion Quinones de Longo, MD, of legal age, married, a medical doctor and resident of Guaynabo, Puerto Rico, who is duly authorized to sign contracts in accordance with Law No. 81 of March 14, 1912, as amended, henceforth referred to as the **FIRST PARTY or PRDoH**.

**THE SECOND PARTY: COGNOSANTE CONSULTING, LLC,** a limited liability company duly organized under the laws of the State of Delaware, USA and authorized to do business under the laws of the Commonwealth of Puerto Rico and in good standing as evidenced by a Certificate of Good Standing issued by the Puerto Rico Department of State; with principal offices at 3110 Fairview Park Drive, Suite 800, Virginia, USA represented herein by **BRUCE DUNHAM** its **Program Director**, of legal age, and authorized to enter into this Agreement and henceforth referred to as **SECOND PARTY.**



**NOW THEREFORE**, pursuant to Act 81 of March 14, 1912, as amended, Circular Letter Number 07-93, issued on March 8, 1993, and the Administrative Bulletin No. OE-1991-24 issued on June 18, 1991 as amended by Administrative Bulletin No. OE-1992-52 issued on August 28, 1992, **BOTH PARTIES** agree as follows:



2 0 1 9 -DS 0 5 7 2

### WITNESSETH

**WHEREAS**, The **FIRST PARTY** requested a proposal to the **SECOND PARTY** execute Independent Verification and Validation services during the Design Development and Implementation (DDI) services of the Eligibility and Enrollment project of the Puerto Rico Medicaid Program. The **SECOND PARTY** presented a proposal to render such professional services as set forth in the **I-APD**.

**WHEREAS**, the **FIRST PARTY** submitted the **Implementation Advance Planning Document for Eligibility and Enrollment Project for Government of Puerto Rico** (PREE IAPD) to the Centers for Medicare & Medicaid Services (CMS), which was approved on a letter dated **July 17, 2018**;

**WHEREAS**, the **SECOND PARTY** presented a document titled "**Puerto Rico Department of Health Eligibility and Enrollment Independent Verification and Validation Statement of Work**", dated August 31, 2018, to provide **Independent Verification and Validation (IV&V)** services as set forth therein, which is incorporated as **Appendix A**;

**WHEREAS**, **BOTH PARTIES** recognize that the project may also involve the "Administración de Seguros de Salud de Puerto Rico" (ASES) working in coordination with the **PRDoH** as part of the Puerto Rico Medicaid Enterprise.



**WHEREAS, FIRST PARTY** intends to engage in a project with the **SECOND PARTY** pursuant to this Agreement for the provision of IV&V services during the PREE Design Development and Implementation (**PREE DDI**), which have a projected duration of **29** months from its commencement, However, the **FIRST PARTY** is required to limit the initial duration of this Agreement to be aligned with the two (2) federal fiscal years beginning October 1, 2018 and ending September 30, 2020; accordingly, the initial term of this Agreement will be from the effective date of this Agreement until September 30, 2020, and the funding will be limited to the amounts of federal funds available to the **FIRST PARTY** during such period.

**WHEREAS**, since the **FIRST PARTY** original intention was to have all project agreements related to the PREE by September 2018, the **FIRST PARTY** requested a 24 months proposal to the **SECOND PARTY**, and the **SECOND PARTY** presented such proposal on August 31, 2018



Case:17-03283-LTS   Doc#:20540-1   Filed:04/11/22   Entered:04/11/22 18:29:33   Desc:
Exhibit A - Contract and Amendment   Page 3 of 49

2 0 1 9 -DS 0 5 7 2

as previously indicated. The **FIRST PARTY** requested contract approval from the Puerto Rico Office of Management and Budget (OMB) for the **SECOND PARTY** 24 month's proposal for the amount of $10,671,945, which was approved by OMB. This agreement total amount will be for the OMB approved amount but will be due by **September 30, 2020**. At such time the **FIRST PARTY** and the **SECOND PARTY** intend to amend this agreement for the remaining project duration months and the pending funding to cover the completion of the services. It is agreed by the **SECOND PARTY** to maintain the same level of service cost for the remaining months as quoted in the **Appendix A**.

**WHEREAS**, **FIRST PARTY** expects additional federal funding for the fiscal year ending September 30, 2021, to be available for the completion of the Project, and in such event, **BOTH PARTIES** intend to enter into an amendment to this Agreement to cover (to the extent that such federal funding is available) the cost and time required for completion of the Project. The expectation is that the prices for the rest of the Project included in the document titled "**Puerto Rico Department of Health Eligibility and Enrollment Independent Verification and Validation**" previously submitted by the **SECOND PARTY** and accepted by the **FIRST PARTY**, which is attached to this Agreement as **Appendix A**, will be the same for the remaining additional periods of this Agreement, except for mutually agreed upon adjustments to reflect changes in costs to the **FIRST PARTY** resulting from inflation.

**WHEREFORE**, The **FIRST PARTY** and the **SECOND PARTY** wish to enter into an agreement subject to the availability of the Government of Puerto Rico funds.

**NOW, THEREFORE**, the **PARTIES** enter into this Agreement under the following:



**TERMS AND CONDITIONS**

**FIRST:** The **FIRST PARTY** agrees to engage the **SECOND PARTY** to render professional services set forth in Appendix (A) that outlines the Services, Deliverables, Timing, and Fees, as directed by **FIRST PARTY,** and **SECOND PARTY** agrees to provide these services (the "Project").



The **SECOND PARTY**, through its staff, will execute this engagement according to policy established by CMS in 45CFR95.626 where entities that receive federal financial participation (FFP) for automatic data processing equipment and services must contract Independent Verification and Validation Services in order to support the efforts of the **FIRST PARTY** to conduct a rigorous independent process that evaluates the correctness and quality of the Project's business product to ensure that it is being developed in accordance with customer requirements and is well-engineered. The scope of work for the following tasks and activities to be supported by the **SECOND PARTY** is included in Appendix (A):

1. Project oversight

2. IV&V Management Plan Update

3. Certification Progress Reporting and Final Assessment Report

4. CMS Dashboard Progress Reporting

5. User Acceptance Testing Oversight

6. Operations Readiness Assessment

7. Contract Review Support

8. Risk and Issue Identification and Analysis

9. IV&V Findings and Recommendations

10. IV&V Support to other PRDOH Initiatives (optional)



The **SECOND PARTY** will communicate with and submit agreed upon reports and the agreed deliverables to the **FIRST PARTY**'s Medicaid Executive Director and E&E Program Manager as the **FIRST PARTY's** contact persons responsible for the administration of this Agreement.

**SECOND: <u>INTERAGENCY SERVICES</u>**: **BOTH PARTIES** acknowledge and agree that the contracted services can be rendered to any entity part of the Executive Branch, with which **FIRST PARTY** has entered into an interagency agreement or by direct order of the Governor's Chief of



2 0 1 9 -DS0 5 7 2

Staff. Said services will be rendered under the same terms and conditions as agreed upon in this Contract.

**THIRD:** <u>**VALIDITY AND DURATION**</u>: This Agreement will be in full force and effect only <u>after the signature of the **FIRST PARTY** until **September 30, 2020**</u>. Upon availability of additional funds, as explained in the WITNESSETH section above, the **FIRST PARTY** and the **SECOND PARTY** will execute extension amendments to evidence the second period of this Agreement.

**FOURTH:** <u>**RESOLUTION AND TERMINATION**</u>:  This contract may be dissolved prior to its termination date by any of the **TWO PARTIES**, through written notification to the **OTHER PARTY**, with thirty (30) days previous notice from the date of the intended dissolution, with no additional obligations from either **PARTY** (other than any payment obligations of the **FIRST PARTY** for any completed Deliverables and documented work in process by the **SECOND PARTY** and in the case of a termination by the **FIRST PARTY** hereunder, reimbursement of any wind-down costs (such costs are subject to the **FIRST PARTY**'s approval) incurred the **SECOND PARTY**, as described in **Appendix A**).

The insufficiency of funds shall be just cause for the immediate termination or modification of the Compensation clause of this contract. In the case of a modification of the Compensation Clause, the Services to be provided by the **SECOND PARTY** will be adjusted accordingly. However, in the case of an immediate termination for insufficiency of funds, reimbursement of wind-down costs (such costs are subject to the **FIRST PARTY**'s approval) incurred by the **SECOND PARTY** as detailed in **Appendix A** shall be payable.



An infraction or failure to comply with the following conditions by the **SECOND PARTY** shall construe just cause for the termination of this contract by the **FIRST PARTY**, and the **FIRST PARTY** shall not be liable for any obligations or responsibilities under this contract other than any payment obligations of the **FIRST PARTY** for any completed Services and/or Deliverables by the **SECOND PARTY**:

2019 -DS0572

1. The infringement or infringements by the **SECOND PARTY** of Act No. 1 of January 3, 2012, as amended, known as the Puerto Rico Government Ethics Act.

2. The **SECOND PARTY**'s uncured material breach of its responsibilities, or the abandonment of its material responsibilities as set forth in Section ELEVENTH: MATERIAL BREACH OF OBLIGATIONS OR ABANDONMENT.

3. The non-compliance by the **SECOND PARTY** of the regulations and procedures established by the **FIRST PARTY** communicated in writing and with reasonable advance notice to the **SECOND PARTY**.

4. The conviction of the **SECOND PARTY** for the commission of a crime or offense against public treasury or government administration or that involves public funds or properties, be it in the federal or state levels.

5. If **SECOND PARTY** is convicted of engaging in or otherwise finally determined by a duly authorized administrative or criminal tribunal to have engaged in acts described in TWENTY THIRD clause of this Contract.

6. If **SECOND PARTY** is convicted of engaging in or otherwise finally determined by a duly authorized administrative or criminal tribunal, to have engaged in the fraudulent acquisition of any credentials.

7. If **SECOND PARTY** loses its professional license or does not maintain its professional license up to date.

8. Cancellation of the professional liability policy, described in TWENTY NINTH clause of this Contract, of **SECOND PARTY**.

9. If **SECOND PARTY** commits a material violation of HIPAA requirements as defined in the THIRTEENTH clause of this Contract.



10. Failure to comply with the necessary professional credentials requirement issued by the pertinent Accrediting Board, in order to fulfill the obligations herein contracted.

11. The non-compliance with any clause of this contract shall be sufficient grounds for immediate termination of the contract.

12. The Governor's Chief of Staff will have the power to terminate this Contract at any moment during its term.

Further, the Governor's Chief of Staff will have the power to terminate this Contract at any moment during its term. However, in the case of an immediate termination, reimbursement



of wind-down costs (such costs are subject to the **FIRST PARTY**`s approval) incurred by the **SECOND PARTY** as detailed in **Appendix A** shall be payable.

It is expressly agreed upon that the **SECOND PARTY** shall complete any work pending at the time of dissolution without **FIRST PARTY** being obligated to pay or additionally compensate **SECOND PARTY** beyond amounts due for the Deliverables received and accepted by the **FIRST PARTY**, except for such pending work that is completed.

**FIFTH: <u>TIMETABLE AND WORK SITE</u>:** The **SECOND PARTY** will work for the **FIRST PARTY** on a flexible schedule in its own facilities or those of the **FIRST PARTY**, using its own resources that may be necessary to fulfill its obligations under this Agreement as set forth in **Appendix A**.

It is recognized by **BOTH PARTIES** that the project timeline and dates for execution of project activities, outlined in the **SCOPE OF SERVICES** in **Appendix A,** are subject to adjustment on the calendar based on the date of approval of this Agreement.  Once this Agreement has been signed by **BOTH PARTIES** a notice will be issued by the **FIRST PARTY** setting the start date for work by the **SECOND PARTY**.  A notice will also be issued by the **FIRST PARTY** setting out an end date for work by the **SECOND PARTY** based on the conclusion of the **SCOPE OF SERVICES**.

**SIXTH: <u>COMPENSATION</u>:** The **FIRST PARTY** agrees to pay the **SECOND PARTY** for the rendering of services described in **Appendix (A)**, the maximum amount of TEN MILLIONS, SIX HUNDRED SEVENTY-ONE THOUSANDS, NINE HUNDRED AND FOURTY-FIVE DOLLARS (**<u>$10,671, 945.00</u>**).

The **FIRST PARTY** will not make any payment in excess of the aforementioned amount. However, nothing herein shall preclude the **PARTIES** from agreeing to increase said amount through an amendment to the Agreement, when circumstances justify such amendment.

Invoices will be submitted to the **FIRST PARTY** on a monthly basis, within the first fifteen (15)



days following the period invoiced.  Invoices will be for deliverables as defined in **Appendix (A)** which are received and accepted by the **FIRST PARTY** and, as appropriate, for time and material hours worked during the period invoiced.  Each invoice will include itemized details of the services rendered to the **FIRST PARTY** and must attach evidence that the deliverables included in the invoice have been accepted by the **FIRST PARTY**.  Each invoice must be duly certified by an authorized representative of the **SECOND PARTY**.

For purposes of the work to be conducted by **SECOND PARTY** pursuant to **Appendix A,** it is not anticipated that **SECOND PARTY** shall be engaged in the conduct of a trade or business in Puerto Rico and, accordingly, the **FIRST PARTY** will not deduct and withhold at source any income taxes pursuant to Sections 1062.03 and 1062.11 of the Puerto Rico Internal Revenue Code for the services rendered outside of Puerto Rico; provided, however, that to the extent the **SECOND PARTY** occasionally renders services within Puerto Rico, the **FIRST PARTY** will deduct and withhold the twenty nine percent (29%) required under Section 1062.11 of the Puerto Rico Internal Revenue Code. To that effect, the **SECOND PARTY** shall invoice the **FIRST PARTY** separately for services rendered within Puerto Rico pursuant to **Appendix A** of this Agreement.

The **FIRST PARTY** will not honor invoices submitted ninety days (90) or more after the services were rendered.  The **SECOND PARTY** accepts and agrees to comply with this requirement, and understands that if the invoices are not submitted on a timely manner it waives the right to get paid for services rendered.

Invoices must include a written certification stating that no officer or employee of the **FIRST PARTY**, its subsidiaries or affiliates, will derive or obtain any benefit or profit of any kind from this Agreement, with the acknowledgment that invoices which do not include this certification will not be paid.  This certification must read as follows:



> "We certify under penalty of nullity that no public employee of the Department of Health will derive or obtain any benefit or profit of any kind from the contractual relationship which is the basis of this invoice.  If such benefit or profit exists, the required waiver has been obtained prior to entering into the Agreement.  The only consideration to be received in exchange for the delivery of goods or for services provided is the agreed-upon price that has been negotiated with an authorized representative of the Department of Health.  The total amount shown on this invoice is true and correct.  The services have been rendered, and no payment has been



received."

The **FIRST PARTY** shall verify the invoices within twenty (20) working days of the receiving date of the invoice and, if they comply with the requirements set forth in this Agreement, it will process the payment to the **SECOND PARTY** within thirty (30) days of the approval of the invoice.   The **FIRST PARTY** will promptly notify the **SECOND PARTY** any questions regarding invoices so that the **SECOND PARTY** can receive timely payment.  The procedure for acceptance of deliverables is defined in the **FOURTH CLAUSE**, from which invoices must include, as attachments, all receipts of accepted final deliverables as proof of acceptance.

**SEVENTH: <u>RESOURCES TO PAY FOR SERVICES</u>:**   The services provided under this agreement will be paid from the following account numbers:

100% Federal Account: **<u>(E-1290) 272-0710000-081-2018-1875XBBAEE (PRIFAS), 272-0710000-06F-2018-H1875XBBAEE (PS 8.4);</u>** or any other account number available, up to a maximum of **<u>$10,671,945.00.</u>**

**EIGHTH: <u>DEFINITIONS</u>:**

The following are definitions of terminology which apply throughout this Agreement:

1. **Catch-all definition:**

    The following terms used in this Agreement shall have the same meaning as those terms in the HIPAA Rules (Breach Notification Rule, Enforcement Rule, Privacy Rule and Security Rule as defined in 45 CFR Parts 160 & 164):

    

    Amend, Data Aggregation, De-identified Data, Disclosure, ePHI, Electronic Media, Electronic Protected Health Information, Group Health Plan, HMO, Health Care Operations, Health Care Provider, Health Information, Health Insurance Issuer, Health Maintenance Organization, Health Plan, Individual, Individually Identifiable Health Information, Limited Data Set, PHI, Protected Health Information, Minimum Necessary, Notice of Privacy Practices, Safeguards (Administrative, Physical & Technical), Required by Law, Security Incident, Standard, State, Subcontractor, Treatment, Unsecured Protected Health Information, Use, Violation (or Violate), Workforce.

2. **Specific Definitions:**



2019 -DS0572

- **APD** – means Advanced Planning Document.  The Advance Planning Document (APD) process governs the procedure by which States obtain approval for Federal financial participation in the cost of acquiring automated data processing equipment and services.  APDs may take the form of P-APDs – Planning Advanced Planning Documents, or I-APDs – Implementation Advanced Planning Documents.

- **ASES** – Stands for "Administración de Seguros de Salud de Puerto Rico" known in English as the Puerto Rico Health Insurance Administration.

- **BA** – means a Business Associate as defined by HIPAA rules and regulations.

- **Breach** – means the acquisition, access, use, or disclosure of protected health information in a manner not permitted under the HIPAA Privacy Rule which compromises the security or privacy of the protected health information.

  1) Breach excludes:
     a) Any unintentional acquisition, access, or use of protected health information by a workforce member or person acting under the authority of a covered entity or a business associate, if such acquisition, access, or use was made in good faith and within the scope of authority and does not result in further use or disclosure in a manner not permitted under the HIPAA Privacy Rule.
     b) Any inadvertent disclosure by a person who is authorized to access protected health information at a covered entity or business associate to another person authorized to access protected health information at the same covered entity or business associate, or organized health care arrangement in which the covered entity participates, and the information received as a result of such disclosure is not further used or disclosed in a manner not permitted under the HIPAA Privacy Rule.
     c) A disclosure of protected health information where a covered entity or business associate has a good faith belief that an unauthorized person to whom the disclosure was made would not reasonably have been able to retain such information.

  2) Except as provided in paragraph (1) of this definition, an acquisition, access, use, or disclosure of protected health information in a manner not permitted under the Privacy rule is presumed to be a breach unless the covered entity or business associate, as applicable, demonstrates that there is a low probability that the protected health information has been compromised based on a risk assessment of at least the following factors:
     a) The nature and extent of the protected health information involved,





including the types of identifiers and the likelihood of re-identification;

b) The unauthorized person who used the protected health information or to whom the disclosure was made;

c) Whether the protected health information was actually acquired or viewed; and

d) The extent to which the risk to the protected health information has been mitigated.

(45 CFR § 164.402)

- **Business Associate** –

1) Except as provided in paragraph (4) of this definition, business associate means, with respect to a covered entity, a person who:

a) On behalf of such covered entity or of an organized health care arrangement in which the covered entity participates, but other than in the capacity of a member of the workforce of such covered entity or arrangement, creates, receives, maintains, or transmits protected health information for a function or activity regulated by this subchapter, including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities listed at 42 CFR §3.20, billing, benefit management, practice management, and repricing; or

b) Provides, other than in the capacity of a member of the workforce of such covered entity, legal, actuarial, accounting, consulting, data aggregation, management, administrative, accreditation, or financial services to or for such covered entity, or to or for an organized health care arrangement in which the covered entity participates, where the provision of the service involves the disclosure of protected health information from such covered entity or arrangement, or from another business associate of such covered entity or arrangement, to the person.

2) A covered entity may be a business associate of another covered entity.



3) *Business associate* includes:

a) A Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect to protected health information to a covered entity and that requires access on a routine basis to such protected health information.

b) A person that offers a personal health record to one or more individuals on behalf of a covered entity.

c) A subcontractor that creates, receives, maintains, or transmits protected health information on behalf of the business associate.

4) *Business Associate* does not include:

---



a) A health care provider, with respect to disclosures by a covered entity to the health care provider concerning the treatment of the individual.

b) A plan sponsor, with respect to disclosures by a group health plan (or by a health insurance issuer or HMO with respect to a group health plan) to the plan sponsor, to the extent that the requirements of 45 CFR § 164.504(f) of the HIPAA Privacy Rule apply and are met.

c) A government agency, with respect to determining eligibility for, or enrollment in, a government health plan that provides public benefits and is administered by another government agency, or collecting protected health information for such purposes, to the extent such activities are authorized by law.

d) A covered entity participating in an organized health care arrangement that performs a function or activity as described by paragraph (1)(a) of this definition for or on behalf of such organized health care arrangement, or that provides a service as described in paragraph (1)(b) of this definition to or for such organized health care arrangement by virtue of such activities or services.

(45 CFR § 160.103)

In reference to the party to this Agreement, the Business Associate shall mean **Cognosante Consulting, LLC.**

▪ **CE** – means Covered Entity.

▪ **Confidentiality** – The protection of sensitive or private information from unauthorized disclosure.

▪ **Covered Entity** – means:

1) A health plan.
2) A health care clearinghouse.
3) A health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter.

(45 CFR § 160.103)



In reference to the party to this Agreement, the Covered Entity shall mean **The Puerto Rico Department of Health**.

▪ **Designated Record Set** – "Designated Record Set" shall generally have the same meaning as the term "designated record set" at 45 CFR §164.501.



2 0 1 9 -DS 0 5 7 2

The Designated Records Set at the **FIRST PARTY** includes the health information record of each applicant or beneficiary in any of the systems maintained by **PRDoH**, ASES, or other entities contracted with either, which contains health information related to eligibility or enrollment processes or other processes of **PRDoH** or ASES.

- **Document** – means any hardcopy or electronic media containing information, reports, answers, records, accounts, papers and other documentary materials.

- **MEDITI** – means Medicaid Integrated Technology Initiative, and is the name given to the Eligibility system of the Puerto Rico Medicaid Program.

- **PRDoH** – Stands for Puerto Rico Department of Health.

- **Policy** – A Document that records a high-level principle or course of action which has been decided upon. A policy's intended purpose is to influence and guide both present and future decision making to be in line with the philosophy, objectives and strategic plans established by the organization's management teams. It is an overall statement approved by senior management to guide decisions and to achieve a desired outcome.

- **Procedure** – A Document that contains a description of the steps necessary to perform specific operations to achieve an activity.

- **Process** – Generally, a collection of interdependent and linked procedures, influenced by the organization's policies and procedures, that take inputs from a number of sources, manipulate the inputs and produce outputs. Processes have clear business reasons for existing, accountable owners, clear roles and responsibilities around the execution of the process, and the means to measure performance.



- **Secretary** – means the Secretary of the U.S. Department of Health and Human Services.

NOTE: usage depends on context and in particular has this meaning when used by itself and in reference to HIPAA laws and regulations. The word "Secretary" may

---



also be used - in the context of "Secretary of Health" to mean the Secretary of the Puerto Rico Department of Health, in the context of "Secretary of Treasury" to mean the Secretary of the Puerto Rico Department of the Treasury.

**NINTH:   INDEPENDENT   CONTRACTOR: BOTH   PARTIES** agree that no employer/employee relationship will be established between the **PARTIES**, and the **SECOND PARTY** acknowledges that it is an independent contractor rendering professional services to the **FIRST PARTY** and waives any action and/or right to claim that it is an employee of the **FIRST PARTY**.   The **SECOND PARTY** will at all times discharge its duties as an independent contractor and will not claim from the **FIRST PARTY** any payment for vacation, sick leave, retirement benefits, Christmas bonus or any other bonus nor claim for payment of a policy for professional responsibility.   **BOTH   PARTIES** accept and acknowledge that no employer/employee relationship will be established upon any deductions and payments whatsoever.

**BOTH PARTIES** agree that the payments provided for in this contract will entail the withholding of the one point five percent (1.5 %) destined to the General Fund of the State Treasury, in accordance with the provisions of Article 1 of Law No. 48 of June 30 of 2013, the Law that establishes a special contribution on contracts with the Commonwealth.

The **SECOND PARTY** is obliged to submit all documents concerning its taxpayer status including but not limited to, certifications, waivers and/or any other document that might be requested by the **FIRST PARTY** or its authorized representative.

The **SECOND PARTY** is responsible for submitting its income tax returns and to pay any taxable amount resulting from the income generated under this Agreement to the Treasury Department's Income Tax Bureau if required by applicable law.   The **FIRST PARTY** will notify the Income Tax Bureau about all payments and reimbursements made to the **SECOND PARTY** under this Agreement if required by applicable law.

**TENTH: <u>MONETARY INTEREST</u>:**

*BD*    **SECOND PARTY** certifies that to the best of its knowledge, no official or employee of the **SECOND PARTY**, nor any member of their family unit has, directly or indirectly, a pecuniary interest in this contract.

*BD*    **SECOND PARTY** certifies that to the best of its knowledge, no official or employee of the **DEPARTMENT OF HEALTH** has had during the preceding two (2) years before occupying his current position, any direct or indirect pecuniary interest in this contract.

*BD*    **SECOND PARTY** certifies that to the best of its knowledge, there is no family relationship with any of its partners, officials or employees that has decision-making authority or influence or participation in the institutional decision-making process of the **FIRST PARTY**.

*N/A* **SECOND PARTY** certifies that one or some of its officers, directors or employees have a family relation with an official or employee of **FIRST PARTY** but the Government Ethics Office issued a waiver. **SECOND PARTY** is hereby obligated to inform of any family relationship and name and place of work of said officer or employee, as expressly established in the certification. Copy of the certification and waiver are made part of this contract.

**FIRST PARTY** certifies that, to the best of its knowledge, no employee or official of the **DEPARTMENT OF HEALTH** or any member of their family unit has, directly or indirectly, any pecuniary interest in this agreement and that no official or employee of the Executive Branch of the government of the Commonwealth of Puerto Rico has any interest in the earnings and benefits resulting from this contract.

**ELEVENTH: <u>MATERIAL BREACH OF OBLIGATIONS OR ABANDONMENT</u>:** **EITHER PARTY** reserves the right to terminate this Agreement without prior notice or approval in any case the **PARTY** deems the **OTHER PARTY** to have materially breached its obligations under this Agreement or its abandonment thereof and fails substantially to cure the breach within thirty (30) days after receiving notice thereof. **BOTH PARTIES** specifically agree that the **SECOND PARTY** will complete any work that is already in progress at the time the termination, if requested to do so by the **FIRST PARTY**, with the **FIRST PARTY** being obligated to pay or additionally compensate the **SECOND PARTY** for any amounts due for the Deliverables received and accepted and the work completed at the request of the **FIRST PARTY**.

**TWELFTH: <u>DISCRIMINATION IN THE RENDERING OF SERVICES</u>:**

The **SECOND PARTY** pledges to abstain from discriminatory practices in the provision of the services, for reasons of a political or religious nature, race, social status, sex, age, nationality, as well as physical or mental limitations (in accordance with the Americans with Disabilities Act (42 U.S.C. § 12101)) or for sexual orientation or gender identity.

**THIRTEENTH:  COMPLIANCE  WITH  THE  FEDERAL  HEALTH  INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 (HIPAA):**

For the purposes of this Agreement, the **FIRST PARTY** is a Covered Entity as defined by HIPAA.  During the execution of this Agreement, the **SECOND PARTY** agrees that it is a Business Associate of the **FIRST PARTY** as defined by HIPAA and accepts its responsibilities as such.  The **PARTIES** hereby agree to the terms of the Business Associate Agreement attached as Appendix B (*Business Associate Agreement*), which is hereby incorporated by reference.  In the event of any conflict among the terms of this Agreement (excluding Appendix B (*Business Associate Agreement*)) and the terms and conditions of Appendix B (*Business Associate Agreement*), the terms and conditions that are more protective of the PHI shall govern to the extent of that conflict.

**FOURTEENTH: INTERPRETATION AND GOVERNING LAW:** This Agreement will always be subject to the Laws and Regulations of the Commonwealth of Puerto Rico and will be interpreted accordingly.  Except as may be otherwise provided in this Agreement, all claims, counterclaims, disputes and other matters in question between the **FIRST PARTY** and the **SECOND PARTY** arising out of or relating to this Agreement or the breach thereof will be decided by arbitration if the parties hereto mutually agree, or in a court of competent jurisdiction  within the Commonwealth of Puerto Rico.  **BOTH PARTIES** hereby waive any other venue to which they might be entitled by virtue of domicile or otherwise.  Should **EITHER PARTY** initiate or bring suit or action before any other court, it is agreed that upon application, any such suit or action shall be dismissed without prejudice, and may be filed in accordance with this provision. The **PARTY** bringing the suit or action before a court not agreed to herein shall pay to the other party all the costs of seeking dismissal including reasonable attorney's fees.  If any provision of this Agreement is declared of found to be illegal, unenforceable, and null or void, **BOTH**



**PARTIES** shall be relieved of all obligations arising under such provisions, but it shall not invalidate this Agreement as whole.

### FIFTEENTH: <u>FORMER GOVERNMENT EMPLOYEES</u>:

 The **SECOND PARTY** certifies that to the best of its knowledge none of its partners, officers and/or directors have been public servants.

_N/A_ The **SECOND PARTY** certifies that to the best of its knowledge more than two (2) years have passed from the termination of the functions of some of its partner(s) and/or incorporators as a public servant and that he/she has not offered information, intervened, cooperated, assessed in any way or represented directly or indirectly any natural person, legal person or public entity before the agency he/she worked, according to the provisions of Section 4.6 of the Governmental Ethics Act, Act Number 1 of January 3rd, 2012.

_N/A_ The **SECOND PARTY** certifies that not more than two (2) years have elapsed since the end of duties as public servant of one or more of its partners, officers or directors and/or one or more of its partners, officers or directors continue rendering services as a public servant. Notwithstanding these facts, services rendered were performed under the provisions of the Political Code of 1902, as amended, Article 177 (3 L.P.R.A. §551) which exempts doctors, dentists, pharmacists, dental assistants, nurses, trainees, x-ray technicians and laboratory personnel from this double compensation prohibition for those who have been public servants with any of Commonwealth of Puerto Rico's instrumentalities or its municipalities.

_N/A_ The **SECOND PARTY** certifies that not more than two (2) years have passed from the termination of the functions of one or some of its officers, directors and/or partners as public servants, nevertheless _ad honorem_ services were being according to the provisions of Section 4.6 of the Governmental Ethics Act, Act Number 1 of January 3, 2012.

_N/A_ The **SECOND PARTY** certifies that one or some of its officers, director and/or partners have been public servants for the **FIRST PARTY**, and that not more than two (2) years have passed from the termination of the functions.
In the event of exceptional circumstances and at the sole discretion of the Office of Governmental Ethics, it may issue a waiver, if contracting the former public servant within the two (2) year period results in benefit for the public service.



### SIXTEENTH: <u>NON-TRANSFERABILITY</u>: The services to be provided by the **SECOND PARTY** under this Agreement shall NOT be transferable without prior notice to and approval by the **FIRST PARTY**, which approval shall not be unreasonably withheld. Their delegation to any other party or parties will be sufficient cause for the revocation of this Agreement. The breach of this clause will result in the **SECOND PARTY** being responsible for any damage caused to the **FIRST PARTY**, either direct or indirect.

---



**SEVENTEENTH:** <u>**RESPONSIBILITY FOR PROPERTY DAMAGES OR PERSONAL**</u> <u>**INJURIES:**</u> Each Party will be responsible for any property damages and personal injuries caused by the negligent handling or the abandonment of the responsibilities under this Agreement.

**EIGHTEENTH:** <u>**INTELLECTUAL PROPERTY:**</u> The **SECOND PARTY** shall be the exclusive owner of all the intellectual property which already exists and is provided and used by the **SECOND PARTY** to fulfill its obligations under this Agreement.

All Deliverables, software, designs, drawings, specifications, notes, electronically or magnetically recorded material and other work in whatever form not developed or licensed by the **SECOND PARTY** prior to the execution of this Agreement, but specifically paid for, Federally-funded, and first developed under this Agreement ("Materials") shall be considered "work for hire" (as that term is used in Section 101 of the United States Copyright Act, 17 U.S.C. § 101, or in analogous provisions of other applicable laws) and the **SECOND PARTY** transfers and assigns any ownership claim to the **FIRST PARTY** and all such Materials will be the property of the **FIRST PARTY**. Further, the **FIRST PARTY** reserves a royalty-free, exclusive, and irrevocable license to reproduce, publish, and otherwise use the copyright of any Materials. During the performance of this Agreement, the **SECOND PARTY** shall be responsible for any loss of or damage to these Materials developed for the **FIRST PARTY** and used to develop or assist in the Services provided while the Materials are in the possession of the **SECOND PARTY**. The **SECOND PARTY** shall provide the **FIRST PARTY** full, immediate, and unrestricted access to the Materials during the term of this Agreement.   The **FIRST PARTY** grants **SECOND PARTY** a royalty free, sub-licensable, perpetual, worldwide license to the Material s for use with, copy for, make derivative works of, display for, perform for, and transmit to **SECOND PARTY's** other healthcare clients. The modifications to the PREE system for the **FIRST PARTY** will be transferred in accordance with 42 CFR § 495.360 Software and ownership rights, except for any third party or **SECOND PARTY**-proprietary software. With respect to any third party or **SECOND PARTY**-proprietary software accompanying or embedded in the PREE system, **SECOND PARTY** grants to the FIRST PARTY a non-exclusive, royalty-free right and license to use such third party or **SECOND PARTY**-proprietary software during the term of this Agreement as necessary for the **FIRST**





**PARTY's** internal purposes.

The **SECOND PARTY** acknowledges the proprietary and confidential nature of the internal non-public information systems, and the financial and business information owned by the **FIRST PARTY**, by the Commonwealth of Puerto Rico, by any of its administrative agencies, corporations, and municipalities.  The **SECOND PARTY** and its employees shall keep confidential all such information and shall not make public or disclose any of that information without the previous written consent of the **FIRST PARTY**.  The **SECOND PARTY** will ensure that any authorized Subcontractor or expert is subject to this confidentiality obligation.

The **SECOND PARTY** will furnish the **FIRST PARTY** with reports, analysis, or other materials it may reasonably request, which shall be the sole property of the **FIRST PARTY**.  The **FIRST PARTY**, however, acknowledges that the **SECOND PARTY** may develop for itself, or for others, problem solving approaches, frameworks or other tools and processes developed in performing **THE SERVICES** and any additional services provided hereunder, and nothing contained herein precludes the **SECOND PARTY** from developing or disclosing such materials and information provided that the same do not contain or reflect confidential information of the **FIRST PARTY**. All such problem solving approaches, frameworks or other tools and processes and any additional services shall be the exclusive property of the **SECOND PARTY** upon creation and no rights are granted to the **FIRST PARTY** or any third party.


**NINETEENTH: <u>CRIMES AGAINST THE PUBLIC TREASURY</u>:**



The **SECOND PARTY** certifies that neither it or its shareholders, partners, officials, principal, employees, subsidiaries or its parent company has  been convicted or found with probable cause for arrest for any crime against the public treasury, the public faith and duty, nor one that involves public property or funds, whether state or federal.

The **SECOND PARTY** acknowledges its obligation to inform, on a continuous basis and while this contract is on effect, of any circumstance related with the status of an ongoing investigation



based on a commission of a crime against the public treasury, the public faith and duty, against government execution or that involves public property or funds, whether state or federal.

The **SECOND PARTY** certifies that ten years prior to the formalization of this contract, it has not been involved in the commission of any crime against the public treasury, the public faith and duty, or one that involves public property or funds, whether state or federal.

**TWENTIETH: <u>ADMINISTRATIVE POLICY</u>: BOTH PARTIES** agree that the **SECOND PARTY** may not make decisions that are contrary to regulations or procedures adopted by the **FIRST PARTY** (with notification to the **SECOND PARTY**) without having the previous written consent of the **FIRST PARTY.**

**TWENTY-FIRS: <u>AUDITS</u>:** The **SECOND PARTY** agrees to make viable the audits that the **FIRST PARTY** and the Office of the Comptroller of Puerto Rico may deem necessary and, accordingly, it must:

1. Maintain available at all times, for examination by the **FIRST PARTY** or the Office of the Comptroller of Puerto Rico, all the files, documents, books and data pertaining to all matters covered by this contract.

2. Preserve all files and any other document pertaining to this Agreement for a period of six (6) years after the expiration of this contract. If an audit has been started and it has not been completed at the end of the six (6) years, the files must be preserved until the final results of the audit are issued.

The **SECOND PARTY** certifies that none of the professionals that will provide their services under this Agreement has been convicted of any unlawful act against the public trust, their public responsibilities, or involving public funds or public properties, be they of a federal or state nature.

This Agreement may become null and void if any of the professionals who provide the services has been convicted of any unlawful act against the public trust, their public responsibilities, or involving public funds or public properties, either of a federal or state nature.



**TWENTY-SECOND: <u>CONFLICTS OF INTEREST</u>:** The **SECOND PARTY** acknowledges that while discharging its professional responsibilities, it has a complete duty to be loyal towards the **FIRST PARTY**, which includes having no adverse interest towards the **FIRST PARTY**. Adverse interest includes representing clients which may or could have conflicting interests with a contracting party. This duty also includes a continuous obligation to disclose to the **FIRST PARTY** all circumstances regarding its relationship with clients and third persons and any interest which may influence the **FIRST PARTY** at the time of granting this Agreement or during the period of the Agreement.

The **SECOND PARTY** certifies that it is not representing and will not represent, during the term of this Agreement, any particular interest in cases or matters which may involve a conflict of interest or against the public policies of the **FIRST PARTY**.

The **SECOND PARTY** represents interests in conflict when, in benefiting one client it is its duty to promote that which should have been opposed in rendering its obligations for a previous, current or potential client. There is also a conflict of interest when conduct is described as such under the professional ethics norms or under the laws and regulations of the Commonwealth of Puerto Rico.

In contracts involving partnerships or firms, it shall constitute a violation of this prohibition if any of the directors, associates or employees are convicted of engaging in the conduct described above in this this **TWENTY FIRST** clause. The **SECOND PARTY** shall also avoid even an appearance of the existence of a conflict of interest.



The **SECOND PARTY** acknowledges the power of the Puerto Rico Secretary of Health to enforce compliance of the prohibition herein stated. If the **SECRETARY OF HEALTH** understands there is an existence or the presence of adverse interest in regard to the **SECOND PARTY**, the **SECRETARY OF HEALTH** shall serve written notice of its findings stating it intent to resolve or terminate the Agreement within the term of thirty (30) days. Within said period of time, the **SECOND PARTY** may request a meeting with the **SECRETARY OF HEALTH** to present its arguments regarding such finding of conflict, which shall be granted in any case. If no meeting is sought within said period of time, or no satisfactory solution is found during said meeting, the Agreement shall be terminated.



**TWENTY-THIRD: <u>ANTI-CORRUPTION CODE FOR THE NEW PUERTO RICO</u>:** The **SECOND PARTY** certifies knowing and complying with the ethical provisions established in Act Number 2 of January 4, 2018, known as the "Anti-Corruption Code for the New Puerto Rico".

**TWENTY-FOURTH: <u>PUBLIC POLICY COMPLIANCE</u>:** If the **SECOND PARTY** is convicted of engaging in or otherwise finally determined by a duly authorized administrative or criminal tribunal to have engaged in any conduct that contravenes legislation and/or public policy for the protection and prohibition of sexual harassment, unlawful discrimination of any kind, use and/or abuse of controlled substances, this contract shall be deemed terminated immediately.

**TWENTY-FIFTH: <u>COMPLIANCE WITH LAW NUMBER 127 OF MAY 31ST, 2004</u>:** **BOTH PARTIES** acknowledge and agree that no services or payments which are the object of this Agreement may be enforced until same has been presented for registration at the Office of the Comptroller as established under Law Number 18 of October 30th, 1975 as amended by Law Number 127 of May 31st, 2004.

**TWENTY-SIXTH: <u>LAWSUITS</u>:** The **SECOND PARTY** certifies that at the time of execution of this Agreement it has no lawsuits in process against any government agency or instrumentality, including the **PRDoH**.

The **SECOND PARTY** further certifies and guarantees that as of the date of execution of this Agreement, it has not been convicted and none of its employees, officers, or agents has been convicted, and that it has no knowledge that any of the foregoing is the subject of any investigation, in connection with a civil or a criminal procedure in a state or federal court for criminal charges related to the public treasury, the public trust, a public function, or a fault that involves public funds or property. It is expressly acknowledged that this certification is an essential condition of this Agreement. If the certification is not correct in its entirety or in any of its parts, it shall constitute sufficient cause for the **FIRST PARTY** to terminate this Agreement immediately, without prior notice.

If the status of the **SECOND PARTY** with regards to the charges previously mentioned should



change at any time during the term of the Agreement, it shall notify the **FIRST PARTY** promptly. The failure to comply with this responsibility constitutes a violation of this Section, and shall result in the remedies mentioned previously.

**TWENTY-SEVENTH: <u>CONFIDENTIALITY</u>:** Either Party may disclose to the other Party technical, financial, or business information, including (for example) product plans, strategies, promotions and customer lists.  Such information will be treated as "Confidential Information" if: (i) marked as confidential when disclosed in writing; (ii) identified to the receiving party in writing ("recipient") as confidential when disclosed verbally, visually or electronically; or (iii) a reasonable person, considering the information and circumstances of disclosure, would understand its confidential character (unless an express exclusions applies). Confidential Information excludes information that: (a) the recipient possessed before disclosure by the disclosing party; (b) is or becomes publicly known without breach by the recipient; (c) is rightfully received from a third party without a duty of confidentiality; (d) the recipient independently develops or learns; or (e) is disclosed by the recipient with the disclosing party's prior written approval; or (f) is required to be disclosed by the recipient by a court, government agency or applicable law.   Confidential Information may be: (i) used by the recipient (including its employees, agents or contactors with a need to know) only for performance of its obligations under this Agreement; and (ii) disclosed to its counsel, auditors and advisors under obligations of confidence. The recipient will protect, and cause its employees, agents, and contractors to protect, the other party's Confidential Information in accordance with applicable standards and policies for Confidential Information and PHI or, if no such standard or policy expressly applies, with reasonable care.

The **FIRST PARTY** may terminate immediately this Agreement in the event of (i) the **SECOND PARTY's** disclosure of confidential information, (ii) violation of Commonwealth or federal law regarding confidentiality which would expose the **FIRST PARTY** to unavoidable liability.  In this case, the **SECOND PARTY** shall, without limitations to any other rights, release and discharge the **FIRST PARTY** from any further obligations and liabilities hereunder, and without having to comply with the notice requirements set forth in Resolution Clause (Clause THIRD) of this Agreement.

**TWENTY-EIGHTH: <u>SUBCONTRACTING</u>:** The **SECOND PARTY** may subcontract with

23



entities and individuals identified in the proposal included in **Appendix A** to provide services object of this Agreement (which includes Enterprise Services Caribe LLC and any of its successors), but may not subcontract any other private entity or individual to delegate the essential services which are the object of this agreement without the written consent of the **FIRST PARTY**. The **SECOND PARTY** may only subcontract personal services and professional and consulting services with the purpose of complying with the services which are the object of this Agreement, with prior written consent of the **FIRST PARTY**. Under no form or manner and under no circumstances it shall be interpreted that the **FIRST PARTY** has consented to authorize any such subcontracts, or which may imply that the **FIRST PARTY** has incurred in additional obligations in excess of the total amount of dollars stipulated in this Agreement, or that the **SECOND PARTY** may have been released of any liability for any loss or damages which may result from any acts by the subcontracting party.

Any subcontracting that the **SECOND PARTY** may determine to be necessary and which is not contemplated within the permissible subcontracting practices shall require the written consent of the **FIRST PARTY**. Any subcontract shall be subject to the specific condition stipulated in this Agreement, and any other condition that the **FIRST PARTY** may determine to be necessary for its approval and as required by the state and federal laws and regulations applicable to the Agreement entered into by the **FIRST PARTY** and the **SECOND PARTY**.

**TWENTY-NINTH: <u>OTHER CONTRACTS</u>:** The **SECOND PARTY** certifies that it does not have any other contract that represents or implies a conflict of interest with this Agreement with any other Agency, Public Corporation or Municipalities of the Commonwealth of Puerto Rico.

If the **SECOND PARTY** or any of its subcontractors has any other contract with the Commonwealth, including with **PRDoH**, it will be disclosed by a written communication to the **FIRST PARTY** stating the nature of the contract, amount of the contract, and the effective and termination dates.

**THIRTIETH: <u>INSURANCE POLICIES</u>:** The **SECOND PARTY** will maintain in force during the period of this Agreement the following insurance policies:



1. Commercial General Insurance with limits of $1,000,000.00 and the following forms:
   - Employers Liability
   - Products and Completed Operations

2. Commercial Auto Liability with limits of $500,000.00 and the following forms:
   - Non-Owned Autos
   - Hired Autos.

   **SECOND PARTY** shall use its best efforts to obtain the following endorsements:
   Naming the DEPARTMENT OF HEALTH of Puerto Rico, as an additional insured.
   Including the Hold Harmless Agreement in favor of the DEPARTMENT OF HEALTH of
   Puerto Rico.

3. Professional Liability Insurance with limits of $1,000,000.00
   Policies cannot be cancelled or modified without providing thirty (30) days prior written notice
   to the **DEPARTMENT OF HEALTH**, Office of Insurance and Risks ("Oficina de Seguros y
   Riesgos"), P. O. Box 70184, San Juan, Puerto Rico 00936-8184.

A copy of certification of insurance will be part of this Agreement's file.

**THIRTY-FIRST:** <u>**NOTICES:**</u> Any notice or demand shall be made by certified or registered mail
to the addresses given herein.  The **EACH PARTY** may, from time to time designate any other
address for this purpose by written notice to the other party.

The **SECOND PARTY** shall also send all invoices to the address of the **FIRST PARTY** or
physically deliver them to the following addresses:

k
For the **FIRST PARTY:**

<u>POSTAL ADDRESS</u>

Departamento de Salud
Oficina del Secretario
PO Box 70184
San Juan, PR 00936-0184

<u>PHYSICAL ADDRESS</u>

Departamento de Salud
Antiguo Hospital de Psiquiatría,
Edif. A,
Centro Médico
San Juan, PR 00936-0184

---

25



For invoices and notices to the **SECOND PARTY:**

POSTAL ADDRESS

Cognosante Consulting, LLC
3110 Fairview Park Dr., Suite 800
Falls Church, VA  22042

PHYSICAL ADDRESS

Cognosante Consulting, LLC
3110 Fairview Park Dr., Suite 800
Falls Church, VA  22042

**THIRTY-SECOND:  CERTIFICATION OH BEHALF OF THE DEPARTMENT OF LABOR AND HUMAN RESOURCES:**

The **SECOND PARTY** certifies and warrants that at the moment of executing this contract it has paid:

_____ Unemployment Insurance

_____ Temporary Disability

_____ Commercial Auto Liability Insurance

It is hereby acknowledged that this is an essential condition for the execution of the contract, and if the previous certification is not correct, in all or in part, shall be sufficient cause for the contracting party to set aside this contract and the **SECOND PARTY** having to reimburse to the **FIRST PARTY** all sums of money received under this contract.

**THIRTY-THIRD: CERTIFICATION BY THE CHILD SUPPORT ADMINISTRATION:**

The **SECOND PARTY** shall submit to the **FIRST PARTY** a certification of compliance issued by the Child Support Administration ("ASUME," for its acronym in Spanish).

This certification is issued to legal entities (companies, corporations, LLCs) to verify compliance with any orders issued to them as employers for salary retention for payment of child support obligations of its employees.

**THIRTY-FOURTH: COMPLIANCE WITH ACT NO. 168 OF AUGUST 12, 2000:**

The **SECOND PARTY** certifies and warrants that it is obliged to comply with the provisions of Act No. 168 of August 12, 2000, known as the "Act for the Enhancement to the Support of the Elderly in Puerto Rico," by which the Program for the Support of the Elderly is

established and ascribed to the Child Support Enforcement Administration ("ASUME," for its acronym in Spanish), the breach of this clause shall result in immediate termination of this contract.

It is expressly acknowledged that the aforementioned certification is an essential condition to this contract, and if it is not accurate at all, or in part, it shall be sufficient cause for the **FIRST PARTY** to terminate the contract and the **SECOND PARTY** shall have to refund to the **FIRST PARTY** any sum of money received under this contract.

_N/A_ The **SECOND PARTY** certifies and warrants that it is not required to comply with the provisions of Act No. 168 of August 12, 2000, known as the "Act for the Enhancement to the Support of the Elderly in Puerto Rico," by which the Program for the Support of the Elderly is established and ascribed to the ASUME, the breach of this clause shall result in immediate termination of this contract.

It is expressly acknowledged that the aforementioned certification is an essential condition of this contract, and if it is not accurate at all, or in part, it shall be sufficient cause for the **FIRST PARTY** to terminate the contract and the **SECOND PARTY** shall have to refund to the **FIRST PARTY** any sum of money received under this contract.

**THIRTY-FIFTH: <u>INCOME TAX CERTIFICATION</u>:**

_BD_ **SECOND PARTY** certifies and warrants that it has fulfilled its income tax obligations and does not have any tax debts with the Commonwealth of Puerto Rico for the past five (5) years prior to the signing of this contract. It further certifies that it has no outstanding debts with the government, such as any income tax debts, excise taxes, real estate or property taxes, including any special liens, license rights, payroll source taxes payment withholdings, interest income, dividend income, annuities income, salaries and any other income for any other concept.

<b>OR</b>

_N/A_ **SECOND PARTY** certifies and warrants that, at the time of executing this contract, it has filed its tax declarations for the five (5) previous years, and that it has adhered to an installment repayment agreement, and that it is complying with its terms and conditions. **Copy of the payment plan or plans shall be included and made part of this contract.**

<b>OR</b>



N/A **SECOND PARTY** certifies that at the time of entering into this contract, it has NOT submitted its tax declaration for some of the tax periods within the five (5) years prior to this contract, and that it does not owe any taxes to the Commonwealth of Puerto Rico. The **SECOND PARTY** also certifies that it does not owe any taxes, in the form of income taxes, sales taxes, real and personal property taxes, including any special liens, license rights, dividends, rents, salaries and other fees owed for any other reason.

**AND**

**SECOND PARTY** shall submit, in original format, a Department of the Treasury's Income Tax Return Filing Certification, Form SC 6088, if pertinent, a Manual Correction to the Income Tax Return Filing Certification (Form SC 2888) and Tax Return Filing Certification (Form SC 6096), and the Center for Municipal Revenue Collection (CRIM) Certification of Property Tax Payment. In the event **SECOND PARTY** does not own property, and does not pay property taxes, **SECOND PARTY** shall submit a sworn statement, pursuant to the requirements of terms on Circular Letter 1300-16-16 of the Department of the Treasury, and a Debt Certification for all concepts that are part of this contract.

**SECOND PARTY** also agrees to submit with its last invoice, Form SC-6096 a Debt Certification issued and model SC-2927 debt certification IVU, by the Department of the Treasury. **SECOND PARTY** accepts and acknowledges that the last payment under this contract shall only be issued if the Debt Certification states that **SECOND PARTY** owes no debts to the Department of the Treasury. In the event of debt, **SECOND PARTY** agrees to cancel such debt through withholdings on the payments due to him for services rendered under this contract.

In fulfillment with Section VII, General Provisions, Item F of Circular Letter 1300-16-16 of January 19th, 2016 from the Commonwealth of Puerto Rico Department of the Treasury, which provides that when the cost of a contract does not exceed the amount of $16,000.00, **SECOND PARTY** shall certify that it has fulfilled all of its tax responsibilities or in the case of an existing tax debt, it is currently subscribed to a payment plan which terms and conditions are being met and shall not be required to present to **FIRST PARTY** any documents required under the aforementioned Circular Letter.

It is expressly accepted that these are essential conditions of this contract, and if the above certification is not accurate in any or all of its parts, this may construe sufficient grounds for the annulment of this contract by **FIRST PARTY**, and for **SECOND PARTY** to be liable for the reimbursement of all sums of money paid under this contract.

**THIRTY-SIXTH: <u>CERTIFICATION OF SALES AND USE TAX - SUT</u>:**

 **SECOND PARTY** certifies and warrants that at the time of this contract's execution it has filed its monthly return of the sales and use tax - SUT during the five (5) years prior to this contract and that it does not owe taxes to the Commonwealth of Puerto Rico.

**OR**

*N/A* **SECOND PARTY** certifies and warrants that at the time of this contract's execution it has filed its monthly tax return during the five (5) years prior to this contract and that is subject to a payment plan with the terms and conditions being met. Copy of the Payment Plan or Plans, are part of the file of this contract.

**OR**

*N/A* **SECOND PARTY** certifies that at the time of this contract's execution it is NOT required to file any monthly tax return as a Withholding Agent of the SUT.

**AND**

**SECOND PARTY** shall submit an original of the Department of the Treasury "Certification of Filing of the Return of Sales and Use Tax – SUT" (Form SC 2942), "Certification of Debt of the Sales and Use Tax" (Form SC 2927) in compliance with the requirements stated in Circular Letter 1300-16-16 issued by the Department of the Treasury.

In fulfillment with Section VII, General Provisions, Item F of Circular Letter 1300-16-16 of January 19th, 2016 from the Commonwealth of Puerto Rico Department of the Treasury, which provides that when the cost of a contract does not exceed the amount of $16,000.00, the **SECOND PARTY** shall certify that it has fulfilled all of its tax responsibilities or in the case of an existing tax debt, it is currently subscribed to a payment plan which terms and conditions are being met and shall not be required to present to the **FIRST PARTY** any documents required under the aforementioned Circular Letter.

It is expressly acknowledged that these are essential conditions to this contract, and if the aforementioned certification is not correct at all, or in part, it shall be sufficient cause for the **FIRST PARTY** to cancel the contract and the **SECOND PARTY** shall have to repay to the **FIRST PARTY** any sum of money received under this contract.

**THIRTY-SEVENTH:** <u>**LIABILITY FOR DAMAGES OR INJURIES:**</u>  Subject to the following paragraph, the **SECOND PARTY** will be liable for any damages caused by the negligent handling or the abandonment of the obligations it assumes under this Agreement.



The aggregate liability of **SECOND PARTY** to the **FIRST PARTY** and the Government of the Commonwealth of Puerto Rico, for any and all Losses arising out of or relating to this agreement including the provision of any services and any time by any of the **SECOND PARTY** shall not exceed in the aggregate, the amounts payable by the **FIRST PARTY** to the **SECOND PARTY** for services rendered under this Agreement. **SECOND PARTY** shall have no liability for the acts of omissions of any third party (other than its subcontractors). In no event shall either party be liable in connection with this Agreement or any of the Services to the other party or any third party for any loss of profit, or incidental, consequential, indirect, special indirect, punitive, or similar damages. Both Parties will use reasonable efforts to mitigate damages for which the other Party may be responsible. The provisions of this clause shall apply to the fullest extent permitted by law. Nothing in this clause limiting the liability of a party shall apply to any liability that has been finally determined by a court to have been caused by the fraud of such party.

For purposes of this Agreement, "Loss" or "Losses" means direct damages, liabilities, interest, costs and expenses, whether arising under any legal theory including, but not limited to, claims sounding in tort (such as for negligence, misrepresentation or otherwise), contract claims seeking to apply any standard of liability such as negligence, statutory violation or otherwise. For the avoidance of doubt, multiple claims arising out of or based upon the same act, error or omission, or series of continuous, interrelated, or repeated acts, errors or omissions shall be considered a single Loss.

**FIRST PARTY** may not make a claim or bring proceedings relating to the services or otherwise under this Agreement against any other **SECOND PARTY** affiliate or **SECOND PARTY**'s or its subcontractors', members, shareholders, directors, officers, partners, principals or employees ("HP Persons".) **FIRST PARTY** shall make any claim or bring proceedings only against **SECOND PARTY**.

**FIRST PARTY** on the one hand and **SECOND PARTY** on the other hand acknowledge and agree that the allocation of risk and liability contained in this Agreement is reasonable in all the circumstances and will not be utilized for any future transactions between the Parties.

The foregoing terms and conditions shall survive termination of the contract and continue in full force and effect.



**THIRTY-EIGHTH: <u>SMOKE FREE WORKING ENVIRONMENT</u>:** The **SECOND PARTY** acknowledges that it shall comply with the dispositions of Law Number 40 of August 3rd, 1993, as amended, known as "Ley para Reglamentar la Práctica de Fumar en Determinados Lugares Públicos y Privados" and with the Regulation issued by the Puerto Rico Secretary of Health and the Puerto Rico Police Number 7304, as amended, which prohibits any smoking practices within its installations, including any open, enclosed, internal or external areas, among others.

**THIRTY-NINETH: <u>SOLE AGREEMENT</u>:** It is understood that this Agreement is the sole agreement between the **PARTIES** herein with regard to the services covered hereby and supersedes any prior agreement, written or oral, with respect to the subject matter hereof.

**FORTIETH: <u>FEDERAL FUNDING ACCOUNTABILITY AND TRANSPARENCY ACT (FFATA) COMPLIANCE</u>:**

**The SECOND PARTY** agrees to provide all necessary documentation and to provide the **FIRST PARTY** evidence of having the Data Universal Numbering System (DUNS) number. In addition, the **SECOND PARTY** must be registered and have an active account in the System for Award Management (SAM). After receiving the aforementioned information, the First Party will register the **SECOND PARTY** in the FFATA Sub-award Reporting System (FSRS) in order to comply with the Federal Funding Accountability and Transparency Act (FFATA).

**FORTIETH – FIRST: <u>WORKPLACE ATTIRE</u>:** Puerto Rico on behalf and representing the **FIRST PARTY**, its personnel shall maintain an adequate and professional attire. The **FIRST PARTY** enacted an Attire Code which can be used as a guideline to fulfill this requirement. The **SECOND PARTY** shall request a copy of the same.

**FORTIETH – SECOND: <u>OTHER PROVISIONS</u>:**

_BD_____ The **SECOND PARTY** acknowledges that it renders services under contract for _____ N I A _____ and that the

---



services provided under such contract do not enter in conflict in any way, with the services to be provided under the terms of this contract.

**FORTIET - THIRD: <u>ULTRA VIRES</u>:**

**IN ACCORDANCE WITH THE RULE OF LAW AND THE STANDARDS THAT GOVERN THE CONTRACTING OF SERVICES, THE PERSONS APPEARING FOR THIS CONTRACT ACKNOWLEDGE THAT NO SERVICES SHALL BE PROVIDED UNDER THIS AGREEMENT UNTIL BOTH PARTIES SIGN IT. LIKEWISE, NO SERVICES WILL BE PROVIDED UNDER THIS AGREEMENT AFTER ITS EXPIRATION DATE, EXCEPT IN THE CASE THAT AT THE EXPIRATION DATE THERE ALREADY EXIST AN AMENDMENT SIGNED BY BOTH PARTIES. THE SERVICES PROVIDED IN VIOLATION OF THIS CLAUSE SHALL NOT BE PAID, DUE TO THE FACT THAT ANY OFFICIAL THAT MIGHT REQUEST AND RECEIVE SERVICES FROM THE OTHER PARTY, IN VIOLATION OF THIS PROVISION, WILL BE DOING SO WITHOUT ANY LEGAL BASIS.**



**IN WITNESS THEREOF,** the **PARTIES** hereto sign this Agreement, in San Juan, Puerto Rico as of this _____ 30 _____ day of ___ Noviembre ___ 2018.


**RAFAEL RODRIGUEZ MERCADO**
**SECRETARY**
**Puerto Rico Department of Health**
Tax ID:


**BRUCE DUNHAM**
**Program Director**
Cognosante Consulting, LLC
Tax ID:

This contract was presented for registration at the Office of the Comptroller of the Commonwealth

of Puerto Rico, today _____, 2018.

---

**CERTIFICATION**

I, _____, Counsel at the Legal Affairs Office of the Department of Health, certify that I have reviewed this contract and find it in accordance with the laws and regulations of the Commonwealth of Puerto Rico. Therefore, I recommend its execution.

Signature: _____    Date: ____ 30 noviembre 30 L$ ____

---

**Appendix A**
**Statement Of Works**



# Puerto Rico Department of Health Eligibility and Enrollment Independent Verification and Validation

# Statement of Work



GOVERNMENT OF PUERTO RICO

Department of Health
Medicaid Program

**Version 1.0**

**Date:** August 31, 2018



This document includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed in whole or in part except as provided in the contract between the Government and Cognosante.

Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

# Contents

OVERVIEW ..................................................................................................................... 1

PUERTO RICO ELIGIBILITY AND ENROLLMENT ................................................................. 1

CONFLICT OF INTEREST ................................................................................................. 1

MAINTAINING INDEPENDENCE ........................................................................................ 2

OVERVIEW OF THE CERTIFICATION LIFECYCLE ............................................................... 2

IV&V PERIOD OF PERFORMANCE ................................................................................... 3

IV&V SCOPE OF SERVICES ............................................................................................ 3

IV&V PROJECT MANAGEMENT PLAN UPDATE .............................................................. 3

CMS PROGRESS REPORTS – PREE PROJECT ............................................................. 4

OVERSIGHT – PREE PROJECT ...................................................................................... 4

USER ACCEPTANCE TESTING (UAT) OVERSIGHT ......................................................... 5

R2 MILESTONE REVIEW CHECKLISTS ........................................................................... 5

OPERATIONS READINESS ASSESSMENT ........................................................................ 5

RISK AND ISSUE IDENTIFICATION AND ANALYSIS .......................................................... 6

IV&V FINDINGS AND RECOMMENDATIONS ................................................................... 6

STAFFING ....................................................................................................................... 6

FACILITIES ...................................................................................................................... 8

PRICING .......................................................................................................................... 8

DELIVERABLES AND PAYMENT SCHEDULE ..................................................................... 8

APPENDIX A – ACRONYMS .......................................................................................... 11

# Tables

Table 1 Team Staffing Matrix ........................................................................................ 6
Table 2 Project Deliverables .......................................................................................... 8
Table 3 Deliverable Payment Schedule ....................................................................... 10





Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

OVERVIEW

The Puerto Rico Medicaid Program (PRMP) is implementing multiple Information Technology (IT) projects to enhance the healthcare capabilities for Puerto Rico. Cognosante Consulting, hereafter referred to as IV&V, has contracted with PRMP to provide Independent Verification and Validation (IV&V) services for the IT systems being procured.

This Statement of Work (SOW) is developed to permit projects and programs to be added as necessary and defines the services that the IV&V Team will provide to support the Design, Development and Implementation (DDI) phase of the Puerto Rico E&E (PREE) Project.

PUERTO RICO ELIGIBILITY AND ENROLLMENT

The Government of Puerto Rico is in the process of implementing an innovative and robust Eligibility and Enrollment (E&E) system. This major initiative will encompass the interaction and participation of several government agencies, with each agency being encouraged to take advantage of the opportunity to streamline their business processes. This initiative will help pave the way for new technology and processes that will help improve health data exchange and reduce costs in the delivery of care for the people of Puerto Rico.

The Puerto Rico Department of Health (PRDoH) and PRMP have taken this major initiative to design, develop, and implement the new PREE system. With financial support from the federal government, the PREE project will be a first of its kind Health Data Management system, producing safer and more secure online account management and eligibility determination for members and new enrollees.

As the PREE Planning phase concluded, PRMP submitted an Implementation-Advanced Planning Document (I-APD) to request enhanced Federal Financial Participation (FFP) from the Center for Medicare and Medicaid Services (CMS). The approval for this I-APD was received from CMS on July 17, 2018. The purpose and objective was to secure a Systems Integration (SI) vendor and professional services to conduct the DDI phase of the PREE project and build on the successful planning phase activities that began in May 2017 and were documented in multiple Planning-Advanced Planning Document Updates (P-APDU).

CONFLICT OF INTEREST

The IV&V Team, serving in the role of IV&V service contractor / provider to the Government of Puerto Rico, for the PREE project is prohibited from soliciting, proposing, or being awarded software design, development, or any other manner of planning, design, development, or implementation phase activity on the PREE project for which these IV&V services are being procured.

This exclusion is executed in accordance with federal regulations at 45 CFR 95.626, which require that this IV&V effort "... be conducted by an entity that is independent from the State (unless the State receives an exception from the Department)."





1



Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

For purposes of clarity, CMS and Children's Health Insurance Program (CHIP) Services defines "the State" in the above regulatory citation as being a State's IT project, the Title IV-D agency itself, and the Title IV-D agency's umbrella agency or department. The primary purpose of this exclusion is to ensure the IV&V service provider avoids any real or perceived conflicts of interest. For federal purposes, the scope of IV&V includes planning, management, and other programmatic activities in conformance with the term's usage in federal regulations at 45 CFR 95.626.

IV&V is the set of verification and validation activities performed by an agency not under the control of the organization developing the software. IV&V services must be provided and managed by an organization that is technically and managerially independent of the subject software development project. This independence takes two mandatory forms.

First, technical independence requires that the IV&V services provider organization, its personnel, and subcontractors are not and have not been involved in the software development or implementation effort or in the project's initial planning and/or subsequent design. Technical independence helps ensure that IV&V review reports are free of personal or professional bias, posturing, or gold plating.

Second, managerial independence is required to make certain that the IV&V effort is provided by an organization that is departmentally and hierarchically separate from the software development and program management organizations. Managerial independence helps ensure that the IV&V service provider can deliver findings and recommendations to State and Federal executive leadership and management without restriction, fear of retaliation, or coercion (e.g., reports being subject to prior review or approval from the development group before release to outside entities, such as the federal government).

## MAINTAINING INDEPENDENCE

The IV&V Team represents State and CMS interests throughout each project and, as such, provides an independent and unbiased perspective on the progress of the PREE system development and the integrity and functionality of the system.  IV&V will ensure independence by using a reporting structure outside the control of the organization directly responsible for the acquisition of the PREE solution. The CMS Regional Office and the PRMP Executive Director are identified as the primary recipients of all status and progress reports.  Planned report submission will be as follows:

- Weekly Status Reports
- Monthly Assessment Reports
- Quarterly Progress Reports

All reports will be submitted directly to the primary recipients per the delivery schedule contained in Table 1. Informational copies of reports will be forwarded to the PREE Program Director after reports have been provided to the primary recipients.

## OVERVIEW OF THE CERTIFICATION LIFECYCLE

The new Medicaid Eligibility and Enrollment Life Cycle (MEELC) works with the various approaches States may use in E&E system development. The MEELC administered by CMS contains four life cycle phases, three types of milestone reviews and accommodates various approaches that States employ to update or upgrade their E&E systems. The flexibility is manifested in four characteristics:



2

Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



• MEELC fits with a State's own System Development Life Cycle (SDLC), whether that SDLC is agile-based, waterfall-based, or a hybrid of the two.

• MEELC accounts for States that choose to outsource some or all of their Medicaid functions.

• MEELC allows CMS and the State to schedule each review to fit within the State SDLC schedule.

• The MEELC is flexible to accommodate a State that contracts with a third party to perform Medicaid functions.

The IV&V Team recognizes that the MEELC lifecycle and its milestone reviews detailed within the Medicaid Eligibility and Enrollment Toolkit (MEET) constitute new guidance from CMS to provide a consistent, detailed process to review the Medicaid E&E business functions. Cognosante Consulting will remain flexible and adaptable to ensure that reviews are completed in agreement with CMS expectations.

## IV&V PERIOD OF PERFORMANCE

IV&V support related to this SOW will begin on or about October 1, 2018 and will continue for 24 months for the PREE project.

## IV&V SCOPE OF SERVICES

The IV&V Team services will be part of the larger oversight of the day-to-day operations and management of the PREE Project for CMS and PRMP during all DDI activities. Additionally, IV&V will provide support and guidance in support of the newly published MEET toolkit and any overlapping or related guidance found in the current Medicaid Enterprise Certification (MECT) Toolkit.  IV&V services include:

### IV&V Project Management Plan Update

Cognosante produced an IV&V Project Management Plan (PMP) during the PREE Planning phase. IV&V will update the previously developed plan to identify the scope, depth, schedule, and resource requirements for the PREE DDI phase. The IV&V PMP will be reviewed quarterly and updated, as required. The IV&V PMP will include:

1. Definitions related to IV&V/Quality Assurance (QA)
2. IV&V Documentation requirements and deliverables
3. All activities required for completion of the IV&V portion and QA portion of the project, including who must complete the activities and where the activities will occur
4. Verification and validation strategy documenting the objectives, scope, approach, standards and procedures, and tools to be used
5. Assumptions and Constraints
6. Administrative requirements and policy
7. Risk documentation and management process
8. Scope and requirement management process



3

Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



9. Issue documentation and management process

10. IV&V Risk and Issue Logs

11. Change Request process and log

12. IV&V tracking and reporting process

## CMS Progress Reports – PREE Project

Periodically, and at least quarterly, the IV&V Team produces exception-based IV&V Progress Reports that objectively illustrates the strengths and weaknesses of a project and provides recommendations for correcting any identified weaknesses. IV&V Progress Reports are prepared in advance of milestone reviews with CMS.

The IV&V Team will interview and observe PREE Project management staff, and the PREE Project SI vendor staff (including any subcontractors). The IV&V Team will also observe project meetings and activities to understand the processes, procedures and tools used in the PREE program and environments. The IV&V team will review and analyze all applicable and available documentation for adherence to accepted, contractually defined, industry standards. The IV&V Team will fill out the reviewer comment portion of the MEET Checklists and append them to the IV&V Progress Report.

In preparation for the milestone reviews, the IV&V Team shall evaluate State documents and evidence along with any working modules / code applicable to that review and complete the reviewer comments portion of the MEET Checklists. The completed checklists are appended to the IV&V Progress Report.

The IV&V Team shall provide the IV&V Progress Reports to CMS at the same time they are presented to the State. This reporting process, in accordance with federal regulations, includes final report issuance, as well as all draft report submissions.

## Oversight – PREE Project

IV&V services will be part of the larger oversight of the day-to-day operations and management of the PREE Project.  The IV&V Team shall have complete access to PREE documents, facilities, and staff during normal business hours, as required to carry out its oversight role. The IV&V Team shall have access to all key staff on site at the PREE Project location(s) daily, as needed to observe meetings, review deliverables and documentation, and conduct interviews, etc., to ensure a high level of integrity and confidence in IV&V's PREE oversight and monitoring.

The IV&V Team will review PREE project, system processes and progress in areas including, but not limited to, the following:



- Project management
  - o Progress against budget and schedule
  - o Risk management
  - o Inclusion of State goals / objectives and all E&E requirements in requests for proposal and contracts
  - o Adherence to the State's SDLC
  - o Incorporation of the standards and conditions for Medicaid IT into design and development
  - o Reasonability, thoroughness, and quality of Medicaid Information Technology Architecture (MITA) self-assessment, concept of operations, information architecture, and data architecture

4

Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



- o Reflection of the State's MITA goals and plans into actual E&E system design and development
- o Configuration management that is robust and includes State or developer configuration audits against configuration baseline
- o Change management
- o Adherence to Service Level Agreements (SLA)

- Modular development
  - o Completeness and reasonability of E&E concept of operations, architecture, and designs
  - o Accuracy of capture of interfaces and data sharing requirements with systems external to E&E
  - o Viability and completeness of the data transition plan
  - o Traceability of requirements through design, development, and testing
  - o Adequacy of system security and privacy policies, plans, technical designs, and implementations
  - o Coverage and integrity of all system testing, including stress testing and testing of interfaces between modules and with external partner systems
  - o Capacity management, including consideration of future vendors' support and release plans for underlying databases, software, and hardware
  - o Adequacy of disaster recovery planning

The list of artifacts included in the CMS MEET Toolkit will be reviewed for applicability with PRMP and CMS. IV&V will evaluate and make recommendations about the State artifacts that are required for PREE milestone reviews.

### User Acceptance Testing (UAT) Oversight

IV&V will review UAT test plans and test results for completeness and accuracy.  As the PREE project evolves through the initial lifecycle phases, IV&V will communicate with the SI vendor and to PRMP to establish the expectations regarding the oversight of the UAT activity.

### R2 Milestone Review Checklists

IV&V will complete the review of submitted CMS Checklists and artifacts submitted by PRMP for adherence to MEET v1.0 standards. The list of Checklists will include at a minimum:

- Access and Delivery
- Eligibility and Enrollment (MEET)
- Information Architecture
- Integration and Utility
- Intermediary and Interface
- Standards and Conditions

The Checklists, access to any associated artifacts and a CMS Progress Report will be included in the submission of this deliverable to PRMP and CMS.



### Operations Readiness Assessment

Prior to implementation, and on a schedule to be agreed upon with PRMP, IV&V will assess the readiness of PRMP, PREE business partners, and users to successfully operate and interact

Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



with Release 1 and subsequent releases of the PREE. In preparation of the Operations Readiness Report, IV&V will monitor:

- User training
- Organizational Change Management
- Operations training
- Effectiveness of operational processes
- Site readiness
- Implementation of policy changes
- System support functions (help desk)

IV&V will complete the Operations Readiness Assessment and submit this deliverable to PRMP on an agreed upon date but no later than the conclusion of this 24-month period.

### Risk and Issue Identification and Analysis

IV&V will provide risk and issue identification and analysis in support of the Risk and Issue Management processes identified by PRMP. Since Risk and Issue Management activities are performed throughout the life of the project, IV&V will provide oversight and input to all elements of sound Risk and Issue management including identification, monitoring, analysis, prioritization, mitigation and resolution.

### IV&V Findings and Recommendations

As part of each Monthly IV&V Assessment and throughout the project, IV&V will document its Finding and Recommendations. A finding is an area of weakness that is a risk to the project; for each finding we provide a recommendation for corrective action. Findings are identified as a result of attending project meetings, reviewing project documents, conducting work product reviews, conducting process evaluations, and interviewing project staff.

### Staffing

Cognosante will provide 8 team members to support the tasks defined in the Scope of Services. The team required for this effort is listed in the table below. Two of the team members (Jim Tardella and Monica Morales) provide crucial continuity afforded by their participation in the preceding Planning phase of the PREE project.

In addition, the IV&V Team will make available Ralph Berwanger, the Program Director, as needed to support the team members.

Table 1 lists the proposed IV&V positions and responsibilities that will be included for the PREE Project.

**Table 1 Team Staffing Matrix**

| Position | Responsibilities |
|---|---|
| Project Manager | Manage the day-to-day activities of the project team, serve as the primary interface of the IV&V Team to PRMP, provide project status updates, serve as the IV&V team's primary representative to the PREE Steering Committee and the Risk Management Team. Responsible and accountable for overall operation of IV&V team. |
| Deputy Project Manager | Monitor and manage day-to-day project team activities in the absence of the Project Manager, serve as the lead for testing oversight, conduct quality reviews of all project deliverables. |



Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



| Senior Technical Analyst | Provide assessments of all deliverables based on the PREE vendor's proposed use of technology, applications and infrastructure; Provide oversight and subject matter expertise of MITA information architecture standards, data management and all applicable technical standards and conditions for the PREE project. |
|---|---|
| Senior Technical Analyst | Provide assessments of all deliverables based on the PREE vendor's proposed use of technology, applications and infrastructure; provide oversight and subject matter expertise of security related protocols and controls applicable to the PREE project. Oversight and assessment of Interfaces with state and federal agencies. |
| Senior Business Analyst | Oversight and assessment of Data Conversion and Master Client Index track.<br><br>Provide valuable business subject matter expertise through consultation with the client. Ensure clients business needs are met by assessing if the project artifacts meet the client's requirements; work directly with the SI vendors, business users and the client to provide feedback to the project team on project issues, risks and recommendations. |
| Senior Business Analyst | Oversight and assessment of Eligibility Determination / Benefits Calculation (EDBC), Benefit Issuance, Benefit Recovery, Reference Tables tracks.<br><br>Provide valuable business subject matter expertise through consultation with the client. Ensure clients business needs are met by assessing if the project artifacts meet the client's requirements; work directly with the SI vendors, business users and the client to provide feedback to the project team on project issues, risks and recommendations. |
| Senior Business Analyst | Oversight and assessment of Worker Portal, Member Portal, Provider Portal tracks.<br><br>Provide valuable business subject matter expertise through consultation with the client. Ensure clients business needs are met by assessing if the project artifacts meet the client's requirements; work directly with the SI vendors, business users and the client to provide feedback to the project team on project issues, risks and recommendations. |
| Business Analyst | Oversight and assessment of Appeals, Hearings, Notices, Reports, Audit History/Maintenance and Document Management tracks.<br><br>Provide valuable business subject matter expertise through consultation with the client. Ensure clients business needs are met by assessing if the project artifacts meet the client's requirements; work directly with the SI vendors, business users and the client to provide feedback to the project team on project issues, risks and recommendations. |





Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

### Facilities

Co-location of the PRMP, PMO, and IV&V teams is critical to the success of the PREE Project and any initiatives. The IV&V Team assumes that the team will reside within the office spaces of PRMP or the PREE PMO.

### Pricing

The total price of this contract is $10, 671,945, covering professional services for the period October 2018 through September 2020. The dates and durations presented in Table 3 below are estimates based on our current understanding of the various vendor work plans and could vary depending on the timing of the actual contract signatures.

### Deliverables and Payment Schedule

This section identifies all deliverables associated with the professional services for IV&V and the deliverable payment schedule. Table 2 notes the name and schedule for Deliverables. Table 3 notes the payment schedule through September 2020.

**Table 2 Project Deliverables**

| Deliverable Name | Date Due |
|---|---|
| Weekly Status Reports | Reports are provided by the noon of the second business day of the week and report the period Monday thru Friday of the previous week. |
| IV&V Project Management Plan | Within 30 calendar days of the Kickoff of the DDI phase. |
| Project Assessment Report | Within 10 business days of the start of each month and report activity for the prior month. |
| CMS Progress Report | The first report is due 90 calendar days after project DDI Phase Kickoff with subsequent reports due at 3-month intervals.  Will be submitted within 10 business days after the end of the 3-month interval. |
| R2 Milestone Review Checklists and CMS Progress Report | Within 30 calendar days after final submission by PRMP of the complete set of R2 Milestone Review checklists. |
| Operations Readiness Assessment | IV&V will complete the Operations Readiness Assessment and submit this deliverable to PRMP on an agreed upon date but no later than the conclusion of this 24 month period. |





Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

**Table 3 Deliverable Payment Schedule**

| Month | Deliverable | Deliverable Price | Monthly Total |
|---|---|---|---|
| October 2018 | Project Assessment Report | $ 369,911 | $ 406,912 |
| | IV&V Management Plan | $ 37,001 | |
| November 2018 | Project Assessment Report | $ 369,911 | $ 369,911 |
| December 2018 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| January 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| February 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| March 2019 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| April 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| May 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| June 2019 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| July 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| August 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| September 2019 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| October 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| November 2019 | Project Assessment Report | $ 369,911 | $ 369,911 |
| December 2019 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| January 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| February 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| March 2020 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| April 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| May 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| June 2020 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 462,389 |
| July 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| August 2020 | Project Assessment Report | $ 369,911 | $ 369,911 |
| September 2020 | Project Assessment Report and CMS Progress Report | $ 462,389 | $ 1,479,645 |
| | R2 Milestone Review Checklists | $ 554,867 | |
| | Operations Readiness Assessment | $ 462,389 | |
| | Total | | $ 10,671,945 |





Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.



Case:17-03283-LTS   Doc#:20540-1   Filed:04/11/22   Entered:04/11/22 18:29:33   Desc:
Exhibit A - Contract and Amendment   Page 46 of 49

Puerto Rico Department of Health
Eligibility and Enrollment IV&V Statement of Work
Version 1.0

*Note:* The dates and durations presented in the tables above are estimates based on our current understanding of the various vendors' work plans and could vary depending on the timing of the actual contract signatures.

### Appendix A – Acronyms

| Acronym | Definition |
|---------|------------|
| CFR | Code of Federal Regulations |
| CHIP | Children's Health Insurance Program |
| CMS | Centers for Medicare and Medicaid Services |
| DDI | Design, Development and Implementation |
| E&E | Eligibility and Enrollment |
| EDBC | Eligibility Determination / Benefit Calculation |
| FFP | Federal Financial Participation |
| I-APD | Implementation-Advanced Planning Document |
| IT | Information Technology |
| IV&V | Independent Verification and Validation |
| MECT | Medicaid Enterprise Certification Toolkit |
| MEELC | Medicaid Eligibility and Enrollment Lifecycle |
| MEET | Medicaid Eligibility and Enrollment Toolkit |
| MITA | Medicaid Information Technology Architecture |
| P-APDU | Planning – Advanced Planning Document Update |
| PMP | Project Management Plan |
| PRDoH | Puerto Rico Department of Health |
| PREE | Puerto Rico Eligibility and Enrollment |
| PRMP | Puerto Rico Medicaid Program |
| QA | Quality Assurance |
| SDLC | System Development Life Cycle |
| SLA | Service Level Agreement |
| SOW | Statement of Work |
| UAT | User Acceptance Training |





Use or disclosure of any data on this sheet is subject to the restriction on this document's title page.

AMENDA – A
2019-DS0572

COMMONWEALTH OF PUERTO RICO
DEPARTMENT OF HEALTH
SAN JUAN, PUERTO RICO

**PROFESSIONAL SERVICES CONTRACT FOR THE PUERTO RICO MEDICAID PROGRAM
FOR THE PROVISION OF PUERTO RICO ELEGIBILITY AND ENROLLMENT PROJECT,
DESIGN DEVELOPMENT AND IMPLEMENTATION (PREE DDI)**

**AMENDMENT <u>A</u> TO CONTRACT 2019-DS0572**

**APPEARING**

**THE FIRST PARTY:** The **PUERTO RICO DEPARTMENT OF HEALTH** ("PRDoH"), represented by its Designated Secretary, **RAFAEL RODRIGUEZ MERCADO, MD, FAANS, FACS,** of legal age, married, a medical doctor and resident of Guaynabo, Puerto Rico, or the Undersecretary, Concepcion Quinones de Longo, MD, of legal age, married, a medical doctor and resident of Guaynabo, Puerto Rico, who is duly authorized to sign contracts in accordance with Law No. 81 of March 14, 1912, as amended, henceforth referred to as the **FIRST PARTY** or **PRDoH**.

**THE SECOND PARTY: COGNOSANTE CONSULTING, LLC,** a limited liability company duly organized under the laws of the State of Delaware, USA and authorized to do business under the laws of the Commonwealth of Puerto Rico and in good standing as evidenced by a Certificate of Good Standing issued by the Puerto Rico Department of State; with principal offices at 3110 Fairview Park Drive, Suite 800, Virginia, USA represented herein by **BRUCE DUNHAM** its **Program Director**, of legal age, and authorized to enter into this Agreement and henceforth referred to as **SECOND PARTY**.

In accordance with Act No. 81 of March 14, 1912, as amended, Circular Memorandum Number 07-93, issued on March 8, 1993 and Administrative Bulletin Number OE-1994, issued in March 9, 1994, the **PARTIES** agree to modify contract number **2019-DS0572** so that from the signing of the **FIRST PARTY**, the Appearance, Recitals, and Clauses number **THIRTY-FIRST** of **NOTICES**, will read as follows:

**APPEARING**

**THE SECOND PARTY: NTT DATA STATE HEALTH CONSULTING, LLC,** a limited liability company duly organized under the laws of the State of Delaware, USA and authorized to do business under the laws of the Commonwealth of Puerto Rico and in good standing as evidenced by a Certificate of Good Standing issued by the Puerto Rico Department of State; with principal offices, 3157 E. Elwood Street, Phoenix, Arizona, USA represented herein by **Jim Joyce** its **Senior Vice President**, of legal age, and authorized to enter into this Agreement and henceforth referred to as the **SECOND PARTY**.

**WITNESSETH**

**WHEREAS,** the **PARTIES** agreed to formalize contract **2019-DS0572** <u>effective from November 30, 2019 to September 30, 2020.</u>

1

**WHEREAS, THE FIRST PARTY** will pay to the **SECOND PARTY** a maximum amount of <u>**TEN MILLION SIX HUNDRED SEVENTY-ONE THOUSAND NINE HUNDRED FORTY-FIVE DOLLARS ($10,671,945.00)**</u> for the duration of this contract, for the services presented in your proposal, entitled "**Puerto Rico Department of Health Eligibility and Enrollment Independent verification and Validation Statement of Work"**, dated August 31, 2018 and which remain as agreed.

**WHEREAS,** the **SECOND PARTY** was acquired by the company **NTT DATA STATE HEALTH CONSULTING, LLC,** assuming all its responsibilities and maintaining the same current employer social insurance.

**WHEREAS,** the **SECOND PARTY** requests that this contract be amended, in order to assume legal responsibility for this agreement.

**NOW, THEREFORE**, the **PARTIES** enter into this Agreement under the following:

<u>**CLAUSES AND CONDITIONS**</u>

**CLAUSE THIRTY-FIRST:** <u>**NOTICES:**</u> Any notice or demand shall be made by certified or registered mail to the addresses given herein. **EACH PARTY** may, from time to time designate any other address for this purpose by written notice to the other party.

The **SECOND PARTY** shall also send all invoices to the address of the **FIRST PARTY** or physically deliver them to the following addresses:

    For the **FIRST PARTY:**

| <u>POSTAL ADDRESS</u> | <u>PHYSICAL ADDRESS</u> |
|---|---|
| Departamento de Salud | Departamento de Salud |
| Oficina del Secretario | Antiguo Hospital de Psiquiatría, |
| PO Box 70184 | Edif. A |
| San Juan, PR 00936-0184 | Centro Médico |
| | San Juan, PR 00936-0184 |

    For invoices and notices to the **SECOND PARTY:**

| <u>POSTAL ADDRESS</u> | <u>PHYSICAL ADDRESS</u> |
|---|---|
| NTT DATA State Health Consulting, LLC | NTT DATA State Health Consulting, LLC |
| 3157 E. Elwood Street | 3157 E. Elwood Street |
| Phoenix, AZ 85034 | Phoenix, AZ 85034 |

**BOTH PARTIES** agree that, with the exception of the amendments contained in the present document, all other terms and conditions subscribed in the original agreement remain intact and in full effect. The Agreement, as amended is hereby ratified in its entirety.

**The rest of the CLAUSES and CONDITIONS of this Agreement will remain unchanged.**

2

ENMIENDA – A

Case:17-03283-LTS Doc#:20540-1 Filed:04/11/22 Entered:04/11/22 18:29:33 Desc:
Exhibit A - Contract and Amendment Page 49 of 49 0S0572

IN WITNESS THEREOF, the PARTIES hereto sign this Agreement, in San Juan,
Puerto Rico as of this _____ day of _____, 2019.

_____

RAFAEL RODRIGUEZ MERCADO
Secretary
Puerto Rico Department of Health
Tax ID

_____

BRUCE DUNHAM
Program Director
Cognosante Consulting, LLC
Tax ID:

_____

JIM JOYCE
Senior Vice President
NTT DATA STATE HEALTH CONSULTING, LLC
Tax ID:

This contract was presented for registration at the Office of the Comptroller of the
Commonwealth of Puerto Rico, today, _____.

---

CERTIFICATION

I, Gladys N. Torres Díaz Attorney for the Legal Division of the
Puerto Rico Department of Health, hereby I certify that I have reviewed the contract, it complies with
the format and mandatory clauses of rigor.

Signature: _____ Date: June 7, 2019

---

3