**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 19520**<br><br>(Jointly Administered) |

**THE COMMONWEALTH OF PUERTO RICO'S OBJECTION**
**TO MOTION OF NTT DATA EAS, INC.**
**FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM [ECF NO. 19520]**

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Commonwealth of Puerto Rico (the "Commonwealth")[2], pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Verified Motion of NTT Data EAS, Inc.*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Objection on behalf of the Commonwealth.

*for Allowance of Administrative Expense Claim* (the "Motion") [ECF No. 19520] filed by NTT Data EAS, Inc. (the "Movant"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.

**Request for Relief**

1. On May 3, 2017 (the "Petition Date"), the Commonwealth, by and through the Oversight Board as the Commonwealth's representative pursuant to section 315(b) of PROMESA, filed a petition with the United States District Court for the District of Puerto Rico (the "District Court") under Title III of PROMESA (the "Title III Case").

**A. Movant's Claim**

2. On December 15, 2021, Movant filed the Motion, requesting that the Court enter an order "determining that NTT [EAS's] claim[3] be considered an administrative expense of Debtor, entitled to administrative priority pursuant to Section 503 and Section 507 of the Code". See, *Motion* at p. 7.

3. Movant alleges that "[o]n September 25, 2018" Movant and the Puerto Rico Environmental Quality Board ("EQB" and, together with Movant, the "Parties") executed a *Professional Services Contract Fiscal Year 2018-2019*, Contract No. 2019-000014 (the "Original Contract"). According to Movant, the Original Contract was executed between EQB and Movant "for consulting services", and the Original Contract was "to be in effect until June 30, 2029". See, *Motion* at p. 2, ¶ 4.

4. On April 8, 2019, the Movant and the EQB, an entity of the Commonwealth, executed a *Professional Services Contract Amendment Fiscal Year 2018-2019*, Contract No. 2019-

---

[3] Hereinafter, the "Claim".

2

000014A (the "First Amendment"). The First Amendment removed a 4,400 billable hours cap established in Article IV of the Original Contract. See, **Exhibit A**, *Contract*, at pp. 4, *Article IV*; compare with pp. 26, *Amended Article IV*.

5. On June 18, 2019, the Parties executed the *Amendment to The Professional Services Contract Fiscal year 2018-2019*, Contract No. 2019-000014B (the "Second Amendment"). Through the Second Amendment the Parties increased the maximum amount to be potentially billed under the Original Contract up to $511,142.00. See, **Exhibit A**, *Contract*, at pp. 28-29.

6. Furthermore, on July 31, 2019, the Movant and EQB executed a second *Amendment to The Professional Services Contract Fiscal year 2018-2019*, Contract No. 2019-000014C (the "Final Amendment") (collectively with the Original Contract and all other amendments, the "Contract"). Through the Final Amendment, Movant and EQB extended the Contract's validity until December 31, 2019. See, **Exhibit A**, *Contract*, at pp. 31-32.

7. In the Motion, Movant argues that, under the Contract, the EQB "had to pay the submitted certified invoices within a sixty (60) day period after their approval, which approval was not to be unreasonably withheld" by the EQB. See, *Motion* at pp. 2, ¶ 5.

8. Movant further alleges that, regarding the services and activities mentioned above, Movant submitted certified invoices # 9201000185, 9201000191, 9201000198, 9201000212 and 9201000216 (collectively, the "Invoices") for the services rendered from August 2019 to December 2019 for the total amount of $176,713.20. See, *Motion* at p. 3, ¶ 14.

9. However, pursuant to the Second Amendment, the maximum amount allowed to be billed by Movant under the Contract was $511,142.00. The EQB's books and records reveal that, by August 2019, Movant had already billed under the Contract−and the EQB had already made

3

payments for–a grand total of $499,638.75, leaving a remaining available balance of $11,503.25. See, **Exhibit B**, *Certification of the DRNA*.

10. Additionally, under the Contract, Movant explicitly agreed that "NTT DATA may not exceed the total amount to be paid nor the maximum number of hours to be billed nor the monthly estimate of billing, without obtaining a written authorization from [EQB]; and if this happens, [EQB] will not be responsible for any excess of billing." See, Second Amendment.

11. All Invoices received after August 2019 total $176,713.20. See, *Motion* at p. 3, ¶ 14.

12. For the reasons set forth herein, the Motion should be denied.

## OBJECTION

### A. Movant is Not Entitled to Payment Under the Express Terms of the Contract.

13. The Motion should be denied because the Invoices fail to adhere to the terms and conditions of the Contract, pursuant to applicable Puerto Rico law, because they were submitted in excess of the maximum allowable amounts thereunder.

14. As recently noted by this Court, to further the purpose of "rehabilitat[ing] and preserv[ing] the value of [a] financially distressed" debtor, the Bankruptcy Code "grants first priority in the distribution of the limited assets of the estate to administrative expenses allowed under section 503, which include 'the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[]'". In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (D.P.R. Oct. 29, 2021) (citing Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.), 330 F.3d 36, 41 (1st Cir. 2003)). This Court also noted that "[a]lthough there is no 'estate' in a Title III

4

case, the First Circuit has held that, in the context of applying section 503(b)(1)(A) in a Title III case, the term 'estate' should be understood to refer to 'property of the debtor.'" In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (D.P.R. Oct. 29, 2021) (citing Union de Trabajadores de la Industria Eléctrica y Riego v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 7 F.4th 31, 38 (1st Cir. 2021)).

15. In discussing the burden for a request for allowance of administrative expenses, this Court cited the First Circuit's general criteria that should be considered to determine whether to allow an administrative expense, *i.e.*, that a request for priority payment of administrative expense under Section 503(a) of the Bankruptcy Code "may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor", explaining, further, that "statutory priorities are narrowly construed, and the burden of proving entitlement rests with the party seeking it." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 (citing Woburn Associates v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1 (1st Cir. 1992); In re Hemingway Transp., Inc., 954 F.2d at 5; In re FBI Distribution Corp., 330 F.3d at 41-42); see also, In re Drexel Burnham Lambert Grp., 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown by the movant."). Pursuant to the general principle expressed in the seminal case of Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir. 1976) that a "creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and

beneficial to the debtor-in-possession in the operation of the business," a movant needs to show both elements to seek relief under 11 U.S.C. § 503(b)(1)(A).

16. In other words, there can be no allowance of an administrative expense absent a clear showing that a movant's claim **(i)** arose from a postpetition transaction with the debtor **and (ii)** that, for such transaction "the consideration supporting the claim must have benefitted the estate in some demonstrable way". <u>Malden Mills Indus. v. Maroun (In re Malden Mills Indus.)</u>, 303 B.R. 688, 706 (B.A.P. 1st Cir. 2004) (citing <u>In re FBI Distribution Corp.</u>, 330 F.3d 36 (1st Cir. 2003); <u>In re Hemingway Transport, Inc.</u>, 954 F.2d 1, at *5 (1st Cir. 1992); <u>In re Mammoth Mart, Inc.</u> 536 F.2d 950 (1st Cir. 1976)). The "benefit" analysis is a way of testing whether a particular expense was "necessary" to preserve the estate. The underlying reasoning is that an expense incurred in exchange for something that is not beneficial to the estate cannot be considered as an expense necessary for preserving the estate. <u>See</u>, Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[3][b] (16th ed. 2021).

17. Here, the Contract was subject to, and would be interpreted pursuant to, the laws of the Commonwealth of Puerto Rico; under Puerto Rico law, contracts constitute the law between the contracting parties, so long as such agreement contains conditions essential to its validity.[4] <u>Rivera Fernandez v. Connecticut Mut. Life Ins. Co.</u>, 917 F. Supp. 120 (D.P.R. 1996).

18. Furthermore, pursuant to Act 237 of August 31, 2004 ("<u>Act 237-2004</u>"), which establishes the parameters governing professional and/or consulting services with the

---

[4] Under Puerto Rico law, the elements of a valid contract are the following: (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation. <u>Soto v. State Chem. Sales Co. Int'l</u>, 719 F. Supp. 2d 189, 191 (D.P.R. 2010), <u>aff'd sub nom.</u> <u>Soto v. State Indus. Prod., Inc.</u>, 642 F.3d 67 (1st Cir. 2011). Further, although the Puerto Rico Civil Code was amended on June 1, 2020 through Act 55-2020 (31 L.P.R.A. § 5311), because the Contract was executed on November 30, 2018, the Puerto Rico Civil Code of 1930 governs.

6

Commonwealth, this type of contract shall be especially perfected and used for very specific purposes. 3 L.P.R.A. § 8612. Pursuant to Act 237-2004, any such contract "shall indicate precisely which services or duties are required by the Government" and "the contracted services must be described in detail in the contract text". 3 L.P.R.A. § 8613(g). Furthermore, "[t]he contract shall establish the manner of payment, that is, whether the invoice shall be based upon fees per hour, or by tasks or finished phases, or by means of a lump sum after the services to be rendered have been completed, among others." 3 L.P.R.A. § 8613(i). Critically, pursuant to Act 237-2004, "[i]t is necessary to establish in the contract the maximum amount to be paid to achieve an **adequate fiscal control**". 3 L.P.R.A. § 8613(h) (emphasis added).

19. Pursuant to *Article IV* of the Original Contract, Movant explicitly agreed Invoices "may not exceed the total amount to be paid nor the maximum number of hours to be billed nor the monthly estimate of billing, without obtaining a written authorization from" the EQB, further stating that if that were to happen, EQB "will not be responsible for any excess of billing". See, **Exhibit A**, *Contract*, at pp. 4, *Article IV*; compare with pp. 26, *Amended Article IV*. This exact same wording was incorporated into the Second Amendment. See, **Exhibit A**, *Contract*, at pp. 28-29.

20. Thus, even if the Court could determine that the allegations in the Motion could adequately establish that Movant's consulting services billed and in excess of the maximum amounts allowed under the Contract provided a benefit to the Commonwealth, which, for the reasons below it has not, the Movant failed to adhere to the maximum billable cap to which it agreed-to under the Contract, resulting in the submittal of Invoices in excess of $165,209.95.

21. The Invoices, both in total and individually, exceed the remaining net balance of $11,503.25 which expressly contradicts the clear terms and conditions of the Contract.

**B. The Motion Fails to Meet Its Burden Pursuant to 11 U.S.C. § 503(b)(1)(A).**

22. Movant has not carried its most basic burden of proving entitlement to its asserted administrative expense priority. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2021 WL 5024287 at 210 (". . . the burden of proving entitlement rests with the party seeking it . . .") (citing Hemingway Transp., 954 F.2d at 5; FBI Distribution, 330 F.3d at 41-42); see also, Drexel, 134 B.R. at 489 ("A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown by the movant.").

23. Here, Movant offers a very limited description of services rendered to the EQB, arguing that "the amounts herein claimed by NTT Data were the agreed-upon fees for the services" after executing the Contract. See, *Motion* at p. 5, ¶ 21. Movant does not argue why or how the transactions undertaken by it in excess of the maximum allowable amounts under the Contract were demonstrably beneficial to the Commonwealth, which, in itself, dooms a request for relief under 11 U.S.C. §503(b)(1)(A).

24. Therefore, because Movant has not even attempted to claim that the Motion is based on any efforts to preserve the Commonwealth's assets, nor has it claimed that it supplied consideration beneficial to the Commonwealth for the amounts billed in excess of the maximum allowable amounts under the Contract, the Motion fails the 11 U.S.C. §503(b)(1)(A) test on its face. See generally, In re Financial Oversight and Management Board for Puerto Rico, 481 F.Supp.3d 60 at *65 ("Movant has not claimed that his Motion is based on any efforts to preserve

8

the debtor's assets, nor has he claimed that he supplied consideration beneficial to the debtor, making section 503(b)(1)(A) inapplicable here.").

25. Movant has not included sufficient evidence to permit a finding of entitlement to priority on its asserted amounts owed. Accordingly, the Court should deny the Motion.

### C. *Reading* Is Wholly Inapposite

26. Next, Movant argues that even assuming that the services in connection with the Claim are found to not be beneficial for the Commonwealth, it is still entitled to priority payment based on the "fundamental fairness" exception discussed in the case of Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), further alluding to the case of In re Healthco International Inc., 272 B.R. 510 (B.A.P. 1st Cir. 2002), as recently cited by this Court in In re Financial Oversight and Management Board for Puerto Rico, 481 F.Supp.3d 60.

27. It should be noted, however, that in the case of Healthco, the Bankruptcy Appellate Panel for the First Circuit ruled although "[c]laims without the required components may qualify for administrative treatment only in limited circumstances, where 'fundamental fairness' requires it", such exception was inapplicable to the facts of that case. In re Healthco, at *512-514.

28. Moreover, in the contested matter of In re Financial Oversight and Management Board for Puerto Rico described above, in which the Commonwealth had, prior to the Petition Date, confiscated (and later auctioned) movant's vehicle as a result of a criminal investigation, this Court recognized the 'fundamental fairness' exception for two (2) categories of claims, namely, when the Commonwealth's postpetition operations occasion tortious injuries to third parties, or when the claim arises from postpetition actions that deliberately violate applicable law and damage others. As a result, this Court concluded that movant was not entitled to an administrative expense

9

claim under such exception because the facts had a pre-petition genesis and because the narrow rule was inapplicable to such facts.

29. Movant's theories extending Reading beyond its intended scope should be rejected for at least two reasons. *First*, Reading is wholly inapplicable to situations of alleged contractual breach. Reading is an exception to the traditional requirement that movants show "benefit" to the estate, based on the intention to compensate tort-like harm created by operating debtors. Extension to this context as Movants argue is not permitted by applicable authority. *Second*, it would not be equitable to reward Movant for failing to comply with the terms of the Contract, of which Movant was well aware and to which Movant explicitly agreed.

### a. *Reading* Does Not Apply to Movant's Claims for Contractual Breach.

30. In Reading, the Supreme Court granted administrative expense priority to a claim for tort damages resulting from the post-petition negligence of a receiver in a Chapter 11 case. See 391 U.S. at 483-85. The exceptional component of Reading's holding is the victim's postpetition tort claim was allowed as an administrative claim even though the receiver's postpetition tort clearly did not benefit the bankrupt's estate. The Supreme Court recognized bankrupt estates must be administratively liable for their own negligence; otherwise it would be unfair for bankruptcy estates to escape liability.

31. The traditional rule—that post-petition claims should only be entitled to administrative expense priority in exchange for a "benefit" provided to the postpetition debtor—is intended to incentivize parties to deal with bankrupt debtors. In re Bos. Reg'l Med. Ctr., Inc., 291 F.3d at 124 ("The justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession[.]"). Reading and its

10

progeny are an exception to the traditional, inducement-based "benefit" requirement. Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), aff'd and remanded sub nom. Brandt v. Lazard Freres & Co., LLC (In re Healthco Int'l, Inc.), 310 F.3d 9 (1st Cir. 2002) ("In a nutshell, the 'fundamental fairness' exception is recognized when the debtor's postpetition operations occasion tortious injuries to third parties (*Reading*), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (*Charlesbank*).").

32. Although application of *Reading* has not been limited to intentional or egregious misconduct[5], Movant offers no legal authority— and the Commonwealth has located none— to support its application to circumstances where a non-payment stems from a claimant's failure to adhere to the terms and conditions of a contract.

33. Here, Movant's claim for contractual non-payment is a request to advance Movant's private, pecuniary interests rather than to advance the public's interest in remedying hazards and compensating victims of negligence. See, In re Old Carco LLC, 424 B.R. 633, 647 (Bankr. S.D.N.Y. 2010) ("here the Affected Dealers are attempting to advance their private interests and rights under the state Dealer Laws, as opposed to an effort to advance a state's interest in protecting the health and safety of the general public. Even less is there any imminent and identifiable hazard presented. Therefore, the analysis of the cases that extended the *Reading* rationale to situations involving environmental hazards is not applicable."). It is unremarkable that Puerto Rico, like other jurisdictions, has laws requiring that valid debts must be paid in full. It cannot be the rule, however, that mere non-payment of valid debts encompass actions that "violate

---

[5] See, Richard Levin & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[3][c][i] (16th ed. 2021).

11

applicable law and damage others" qualifying for Reading because that would bring within the scope of Reading a debtor's ordinary-course transactional obligations—a result that demolishes the requirement that "benefit" for such claims be shown. Accordingly, Movant's request to extend Reading to this context should be rejected.

### b. Movant Should Not be Rewarded for Failing to Comply with the Contract and Applicable Law.

34. Movant's reasoning as to the applicability of the "fundamental fairness" exception to its Claim is that "the services performed by NTT Data were done in accordance with the requirements established" in the Contract and that Movant has not been paid and is allegedly owed $176,713.20 under the Invoices which "violates applicable law and is to NTT Data's detriment". See, *Motion* at pp. 6,7, ¶¶ 26, 27.

35. Here, however, the "fundamental fairness" exception is inapplicable to the circumstances at bar because Movant failed to comply with applicable law by failing to comply with the terms and conditions of the Contract. As discussed in detail above, there is no evidence that Movant obtained written authorization, through an amendment to the Contract or otherwise, to exceed the maximum allotted fees under the Contract, (as none exists), nor does it even attempt to proffer said argument in its Motion.

36. Moreover, through the Final Amendment, the cap of maximum fees established in the Second Amendment was left unaltered. If it were Movant and EQB's intention to increase the amount of available fees to be billed under the Contract, Movants and EQB would have included such amendment in the Final Amendment. However, because such maximum amount (set precisely to achieve an adequate fiscal control for the Contract) was not increased, no basis exists

to allow for the payment of any amounts in excess thereof, much less as an administrative expense priority claim.

37. Thus, because the Motion is, in effect, a vehicle to seek priority administrative expense status for amounts that could otherwise not, as a matter of law, be paid under the Contract, being in excess of the maximum allowable amount thereunder, the Commonwealth respectfully requests that the same should be summarily denied.

**WHEREFORE**, the Commonwealth requests the Court enter an order denying the Motion for the reasons stated in this Objection and granting such other relief as is just and proper.

Dated: April 11, 2022

Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*