# **EXHIBIT C**

**Engagement Letter**

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
THE PUERTO RICO ELECTRIC POWER AUTHORITY

April 22, 2022

Julia Frayer
London Economics International LLC
717 Atlantic Ave, Ste 1A
Boston, MA 02111

Dear Ms. Frayer

The Official Committee of Unsecured Creditors of the Puerto Rico Electric Power Authority (the "Committee"), is pleased to retain London Economics International LLC ("LEI") to provide expert services in connection with Bankruptcy Court-ordered mediation process in relations to the bankruptcy of the Puerto Rico Electric Power Authority ("PREPA"). On behalf of the Committee, LEI will interact with the Mediation Team's advisors as well as the advisors of other Mediation Parties with respect to key issues, such as the amount of PREPA's sustainable debt burden. LEI will advise the Committee through the analysis of reports and findings of other Mediation Parties, and independent analysis of PREPA's budget and business plans, as well as review of the financial and operating conditions of PREPA and, if necessary, preparing expert reports and participating as a witness in hearings before the U.S. District Court for the District of Puerto Rico with respect to matters upon which LEI has provided advice. LEI's services may include other activities as are approved by the Committee, the Committee's counsel, and as agreed to by LEI.

This engagement will be governed by the terms and conditions attached as Exhibit A. LEl's hourly rates for this engagement will be as follows:

**Figure 1. Time and Material Professional Fee Schedule**

| Staff | Hourly Fee Rate (US$) |
|---|---|
| President | $935 |
| Managing Director | $900 |
| Director | $715 |
| Managing Consultant | $635 |
| Senior Consultant | $550 |
| Consultant | $435 |
| Research Associate | $325 |
| Admin | $150 |

Client agrees to be bound by London Economics International LLC's terms and conditions, which follow this letter in Attachment A.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY
By:

*David Mack*
_____
Name: David Mack, on behalf of the Drivetrain, LLC, as the Creditors' Trustee for Doral Financial Corporation, solely in its capacity as a member of the Committee
Title:  Chair of the Committee


Agreed and Accepted:


LONDON ECONOMICS INTERNATIONAL LLC
By:

*Julia Frayer*
_____
Name: Julia Frayer
Title:  Managing Director

# Attachment A:

# London Economics International LLC

# Standard terms and conditions

**1. OUR RESPONSIBILITIES**

1.1 We, London Economics International LLC ("LEI"), will use all reasonable endeavors and commit the necessary resources to complete the services ("Services"), within the estimated time schedule set out in the attached Engagement Letter ("Engagement Letter"). We will not be liable to you (in contract, tort or otherwise) if we fail to meet this schedule.

1.2 The attached Engagement Letter and these Terms and Conditions are the entire agreement between you and us. If there is any inconsistency between these terms and conditions and the Engagement Letter, the Engagement Letter shall prevail. No addition, amendment or variation will bind us unless it is in writing and signed by a Principal and none of our employees or representatives (save for an executive officer, as identified in Section 8.1) is authorized to make any representations or warranties in respect of the Services or the Project.

1.3 We will inform you if the expenses and disbursement or time schedules estimated in the Engagement Letter are likely to be materially varied, but factors beyond our control may result in actual time schedules or costs differing from our estimates, which we do not warrant. The fee referred to in the Engagement Letter shall not change without prior agreement of parties.

1.4 If the Project or the amount of services required from us are altered at your request or because of any change in laws or regulations or because you fail to fulfill your obligations under our agreement or because of any other circumstances beyond our control then we may charge additional amounts beyond those provided for in the Engagement Letter.

1.5 All deliverables will be delivered to the Client in PDF format, unless otherwise required.

**2. YOUR RESPONSIBILITIES**

2.1 You must supply or arrange to be supplied to us (retaining your own back-up copies), without charge and in such a reasonable time and manner as not to disrupt our performance of the Services, all relevant data and information in your possession or control, subject to applicable confidentiality or other non-disclosure agreements and the requirements of applicable law. It is your responsibility to ensure the accuracy of all and any such data you supply to us. You and your employees, agents and sub-contractors must also give us such assistance, as we shall reasonably require in performing the Services.

**3. FEES, EXPENSES AND DISBURSEMENTS**

3.1 Our professional fees are based on the hourly rates set forth in the Engagement Letter.

3.2 Unless otherwise agreed you must reimburse us for all reasonable expenses and disbursements incurred in performing the Services including the cost of all documents, travel expenses, specialist professional services (e.g. legal advice, market research, field work, excluding translation services), air freight and other courier services. This list is not exhaustive.

3.3 The fee paid to us for the formulation and reporting of our findings and conclusions are not contingent upon the findings and conclusions presented.

**4. TERMS OF PAYMENT**

4.1 Fees, expenses and disbursements (plus local taxes as applicable) will be invoiced monthly. Invoices shall include detailed descriptions of the work completed, indicate the hours worked by individual in tenths of an hour and broken down by task, with his or her hourly rate applied per the agreement, unless there is an agreed to fixed price for the work. Receipts shall be provided for all significant expenses and disbursements. Invoices shall be processed and paid in accordance with the Third Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 20546] entered by the U.S. District Court for the District of Puerto Rico in the PROMESA Title III cases of the Commonwealth of Puerto Rico and the other Title III debtors, including PREPA. No fees, expenses, or disbursements will be paid except as authorized and/or allowed in accordance with the aforementioned procedures. Neither the Committee nor any of its members (nor any of their respective advisors) shall be obligated to pay, or shall otherwise be liable for, any fees, expenses, or disbursements of LEI.

**5. CONFIDENTIALITY AND PROPRIETARY RIGHTS**

5.1 Each party must always use all reasonable endeavors to ensure that all confidential or proprietary information received by it or its staff from the other party remains confidential and is not, without the prior consent of the other party, used or disclosed to any third party except as otherwise provided herein. Any materials, including presentations or sections of prepared written reports (referred to collectively as the "Materials"), prepared by LEI may not be shared with third parties without the express written consent of LEI, which shall not be unreasonably withheld, other than to the Committee's legal and financial advisors.

5.2 We will be the exclusive owner of all intellectual property in the Engagement Letter and any reports and other materials prepared by or for us in connection with the Project. We do not permit you to sell our work products or deliverables to third parties. We do not permit you to supply our work products or deliverables to third parties other than to your affiliates and yours and their employees, directors, consultants, advisors, potential lenders and investors ("Representatives") who need to review it. This restriction shall not interfere with the ability of any party to release the deliverables, or any part thereof, as may be required for any regulatory requirement or legal proceeding which the party or any of its affiliates may be involved in or subject to or as requested or required by any judicial, regulatory, legislative or other governmental entity (including without limitation, the Federal Energy Regulatory Commission, Securities and Exchange Commission, and any local, public service commission) with jurisdiction over you or your Representatives to disclose it (whether by interrogatories, subpoenas, civil investigative demands or otherwise), provided that you, to the extent legally permissible and on the advice of counsel, notify London Economics International LLC in a timely fashion that the deliverables have been so released.

5.3 For the avoidance of doubt, Sections 5.1 and 5.2 of these Terms and Conditions shall not apply to the extent disclosure is required in accordance with applicable rules of procedure or court orders. The parties acknowledge and agree that upon any breach by you or us, of your or our obligations under Section 5.1 and 5.2 of these Terms and Conditions, we or you may have no adequate remedy at law, and accordingly will be entitled to seek specific

performance and other appropriate injunctive and equitable relief in addition to all other rights and remedies, at law or in equity, that may be available to us or you. Notwithstanding any other provision herein, neither party shall be entitled to recover consequential, punitive and/or exemplary damages arising under, or as a result of a breach of, this Agreement.

### 6. LIMITATIONS ON LIABILITY

6.1  Neither party will be liable for any failure to perform its obligations under agreement resulting from any cause beyond its reasonable control.

6.2  You can foresee and evaluate better than us any potential damage or loss you may suffer in connection with the Services. We cannot adequately insure against liability which we might have to you and our fees have been calculated on the basis that we will exclude and limit our liability as set out below.

6.3  WE SHALL IN NO CIRCUMSTANCES HAVE ANY LIABILITY FOR YOUR CONSEQUENTIAL OR ECONOMIC LOSS (INCLUDING WITHOUT LIMITATION LOSS OF PROFIT, REVENUE OR GOODWILL) OR FOR YOUR LIABILITY TO ANY OTHER PERSON FOR ANY CONSEQUENTIAL LOSS, ECONOMIC LOSS, CLAIM FOR DAMAGES OR AWARDS HOWSOEVER ARISING.

6.4  We shall not be responsible for any loss or damage however arising or suffered by you or any other person which results directly or indirectly from any act of default of you, your employees or your agents.

6.5  Upon approval of LEI's retention by the U.S. District Court for the District of Puerto Rico in the PROMESA Title III cases, PREPA agrees to indemnify us against all damages, costs and liabilities suffered by us as a consequence of any claims or proceedings brought against us by any third-party (defined as any person other than the Client) in connection with the Services including, without limitation, any liability arising as a result of our complying with your instructions or a breach of your obligations under our agreement, unless such damages, costs or liabilities arise from our willful misconduct or gross negligence.

### 7. TERMINATION

7.1  Our agreement may be terminated by either party giving ten (10) days written notice to the other party.

7.2  Either party may also terminate our agreement with immediate effect by written notice if either party:

    7.2.1  commits any material, persistent or repeated breach of our agreement; or

    7.2.2  ceases or threatens to cease to carry on business or to pay any amount owing to under any agreement.

7.3  Termination shall not affect any rights or obligations (including confidentiality) to which either of us has become entitled or subject before termination.

7.4  If the Project is terminated by us or you before the Services are concluded then our fees will be charged on a pro-rata basis, except in the case of termination pursuant to Section 7.2.

7.5  For the avoidance of doubt, you may allow us to temporarily stop work in the event that fees are not paid timely and allow us to terminate work at any point if payment is denied.

**8. GENERAL**

8.1  All notices given must be delivered personally or by mail or overnight courier or facsimile transmission to the address of the recipient set out in the Engagement Letter or such other address as the recipient may designate and shall be deemed to have been served if by hand, or by overnight courier when delivered, if by mail five (5) days after posting and if by facsimile transmission when dispatched, addressed as follows:

(a) If to **London Economics International LLC**:

> London Economics International LLC
> 717 Atlantic Avenue, Suite 1A
> Boston, MA 02111
> Tel: (617) 933-7200
> E-mail: julie@londoneconomics.com
> Attention: Julie Sharkey

(b) If to the Committee**:**

> Official Committee of Unsecured Creditors of the Puerto Rico Electric Power Authority
> c/o Paul Hastings LLP
> 200 Park Avenue
> New York, NY
> Tel: (212)-318-6000
> E-mail: alexbongartz@paulhastings.com
> Attention: Alexander G. Bongartz

Either party may change its address for the purpose of this section by giving written notice of such change to the other in the manner provided in this section.

8.2  Neither party may assign this agreement or any rights or obligations hereunder without prior approval from the other party, which will not unreasonably withhold.

8.3  Neither party hereto shall without the prior written approval of the other party at any time during this agreement or for twelve (12) months after its termination employ or try to entice away any person that it was introduced to or made aware of as a result of this engagement. The foregoing provision shall not apply to employees who respond to general solicitations for employment, not targeted to them.

8.4  If any provision, or part thereof, of these conditions is held by any competent authority to be invalid or unenforceable in whole or in part, the validity of the other provisions of these conditions and the remainder of the provision in question shall not be affected.

8.5  Any failure by either party to exercise or any delay by it in exercising, any of its rights under this agreement shall not operate as a waiver of such rights and shall not prevent it

      from subsequently enforcing any right. No waiver by either party of any right shall be valid unless in writing signed by the authorized representative of either party.

8.6    This agreement is governed by the laws of the Commonwealth of Massachusetts (excluding its conflict of laws rules) and each of the parties submits to the exclusive jurisdiction, and agrees to venue in, the courts of the Commonwealth of Massachusetts and the United States Federal Courts located in the Commonwealth of Massachusetts.