**Hearing Date [Proposed]:  June 17, 2022**
**Objection Deadline [Proposed]:  June 8, 2022 at 5:00 p.m. (Atlantic Standard Time)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors.[1] | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3567-LTS |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Debtor. | |

**MOTION OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT,
(II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION
HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING
SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES,
(V) APPROVING FORMS OF BALLOTS, AND VOTING AND ELECTION
PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS,
(VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES,
AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

JURISDICTION AND VENUE ......................................................................................5

RELIEF REQUESTED....................................................................................................5

BASIS FOR RELIEF ......................................................................................................7

    A.      Approval of the Disclosure Statement ....................................................7

    B.      Fixing the Voting Record Date ................................................................12

    C.      Establishing Notice, Objection Procedures, and Deadlines for Hearing on Confirmation of the Plan.....................................................15

        (i)      Setting the Confirmation Hearing ................................................15

        (ii)     Approval of the Confirmation Hearing Notice ...........................16

        (iii)    Establishing Objection Procedures and Deadlines for Confirmation of the Plan ................................................................18

    D.      Approval of the Solicitation Package and Distribution Procedures......................21

    E.      Approving Forms of Ballots, and Voting and Election Procedures......................27

    F.      Fixing Voting and Election Deadline ....................................................34

    G.      Approval of the Notice of Non-Voting Status ......................................37

    H.      Approval of Vote Tabulation Procedures ..............................................39

NO PRIOR REQUEST ...................................................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Century Glove, Inc. v. First Am. Bank of New York*,
860 F.2d 94 (3d Cir. 1988)...................................................................................8

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ...............................................................11

*In re Clamp-All Corp.*,
233 B.R. 198 (Bankr. D. Mass. 1999) ...........................................................7, 8, 9

*In re Eastern Maine Elec. Coop*,
125 B.R. 329 (Bankr. D. Me. 1991)........................................................................9

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) ...............................................................8, 9, 11

*In re Oxford Homes, Inc.*,
204 B.R. 264 (Bankr. D. Me. 1997)..........................................................7, 8, 9, 11

*In re Phoenix Petroleum Co.*,
278 B.R. 385 (Bankr. E.D. Pa. 2001) ...................................................................11

*In re V & M Mgmt.*,
215 B.R. 895 (Bankr. D. Mass. 1997) ....................................................................9

*Kaufman v. Public Serv. Co. (In re Public Serv. Co.)*,
43 F.3d 763 (1st Cir. 1995)......................................................................................7

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
337 F.3d 314 (3d Cir. 2003)..............................................................................8, 9

*Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*,
848 F.2d 414 (3d Cir. 1988)....................................................................................9

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1995)......................................................................................8

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,
844 F.2d 1142 (5th Cir. 1988) .................................................................................9

ii

## STATUTES

11 U.S.C. § 105 ..................................................................................................................5

11 U.S.C. § 502 ..................................................................................................................5

11 U.S.C. § 1125 ...............................................................................................5, 7, 12, 21

11 U.S.C. § 1126 .................................................................................5, 25, 39, 40, 41

11 U.S.C. § 1128 ..................................................................................................................5

48 U.S.C. §§ 2101-2241 .......................................................................................................1

48 U.S.C. § 2175 ..................................................................................................................2

PROMESA § 101 ...................................................................................................................1

PROMESA § 104 ...................................................................................................................2

PROMESA § 206 ...................................................................................................................2

PROMESA § 301 ...................................................................................................................5

PROMESA § 304 ...................................................................................................................2

PROMESA § 306 ...................................................................................................................5

PROMESA § 307 ...................................................................................................................5

PROMESA § 310 ...................................................................................................................5

PROMESA § 315 ...............................................................................................................1, 2

## OTHER AUTHORITIES

Fed. R. Bankr. P. 2002 ..................................................................5, 15, 16, 25, 45

Fed. R. Bankr. P. 3001 ....................................................................................................14

Fed. R. Bankr. P. 3016 ......................................................................................................5

Fed. R. Bankr. P. 3017 ............................................................................................ passim

Fed. R. Bankr. P. 3018 .................................................5, 12, 39, 40, 42, 43

Fed. R. Bankr. P. 3020 ..................................................................................................5, 18

Fed. R. Bankr. P. 9013 ......................................................................................................5

Fed. R. Bankr. P. 9014 ................................................................................................................5

Fed. R. Bankr. P. 9021 ................................................................................................................5

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this motion (the "Motion") for an order (i) approving the adequacy of information in the proposed Disclosure Statement (as defined below), (ii) fixing a Voting Record Date (as defined below)[2] for voting to accept or reject the Plan (as defined below), (iii) approving the Confirmation Hearing Notice (as defined below) and confirmation schedule, (iv) approving the proposed contents of the Solicitation Package (as defined below) and procedures for distribution thereof, (v) approving the forms of ballots and notices, and establishing solicitation, voting, distribution election, and balloting procedures, (vi) approving the form and manner of Notice of Non-Voting Status (as defined below), (vii) fixing the Voting Deadline (as defined below) and Election Deadline (as defined below), and (viii) approving procedures for tabulating creditor votes.  In support of this Motion, the Debtor respectfully states as follows:

## **Background**

### *Commencement of Title III Case*

1.      On June 30, 2016, the Oversight Board was established pursuant to PROMESA section 101(b).  The current members of the Oversight Board are David Skeel (Chairman), Andrew Biggs, Arthur Gonzalez, Antonio Medina, John Nixon, Justin Peterson, and Dr. Betty Rosa.

---

[1]    PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[2]    For the avoidance of doubt, and as further detailed in this Motion, the Voting Record Date will not be applicable to claims in the Bond Classes (as defined below).

2.     Pursuant to PROMESA Section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under Section [304] of [PROMESA] . . . submitting . . . a plan of adjustment . . . or otherwise generally submitting filings in relation to the case with the court."  48 U.S.C. § 2175.

3.     On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to Section 304(a) of PROMESA, commencing a case under title III thereof (the "Title III Case"). Pursuant to PROMESA Section 315(b), the Oversight Board is the Commonwealth's representative in the Title III Case.  Background information regarding the Debtor is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1, Case No. 17-3283], attached to the Commonwealth of Puerto Rico's (the "Commonwealth") Title III petition.

***Filing of the Plan and Disclosure Statement***

4.     On April 12, 2021, the Oversight Board reached an agreement in principle with Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured") and National Public Finance Guarantee Corporation ("National") regarding, among other things, the treatment of monies historically conditionally appropriated to certain Commonwealth instrumentalities (colloquially known as the "Clawback Claims").

5.     On May 5, 2021, and consistent with the agreement in principle reached with Assured and National, the Oversight Board, as representative of the Commonwealth and HTA, entered into that certain HTA/CCDA Related Plan Support Agreement (the "HTA/CCDA PSA," a copy of which is attached to the Disclosure Statement (as defined below) as Exhibit B) with

certain holders of bonds issued by HTA and the Puerto Rico Convention Center District Authority ("CCDA"), Assured, and National, solely in their respective capacities as insurers, and asserted holders, deemed holders, or subrogees with respect to HTA bonds and CCDA bonds, as applicable. The HTA/CCDA PSA incorporates, among other things, the terms of the proposed treatment of the Clawback Claims.

6.      In furtherance of the HTA/CCDA PSA, on May 11, 2021, the Oversight Board filed a joint plan of adjustment for the Commonwealth, along with certain of its instrumentalities [Case No. 17-3283, ECF No. 16740] and associated disclosure statement [Case No. 17-3283, ECF No. 16741].

7.      On November 3, 2021, the Oversight Board, on behalf of the Commonwealth, ERS, and PBA, filed the *Modified Eighth Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* [Case No. 17-3283, ECF No. 19053] (the "Eighth Amended Commonwealth Plan"), which incorporated various revisions to address certain confirmation objections.

8.      On November 5, 2021, the Oversight Board entered into the *Stipulation in Connection with DRA Related Parties* [Case No. 17-3283, ECF No. 19100-1] (the "DRA Stipulation") with AmeriNational Community Services, LLC and Cantor-Katz Collateral Monitor LLC (together, the "DRA Parties"), resolving the DRA Parties' objections to confirmation of the Eighth Amended Commonwealth Plan and, among other things, providing for the DRA Parties to support and vote in favor of the Eighth Amended Commonwealth Plan, the Disclosure Statement, and the Plan.

9.      The hearing to consider confirmation of the Eighth Amended Commonwealth Plan commenced on November 8, 2021 and concluded on November 23, 2021.  Pursuant to Court order,

a further modified version of the Eighth Amended Commonwealth Plan was filed on January 14, 2022 [Case No. 17-3283, ECF No. 19784] (the "Commonwealth Plan").

10.     On January 18, 2022, the Commonwealth Plan was confirmed, with the consummation of the Commonwealth Plan having occurred on March 15, 2022. *See* Case No. 17-3283, Docket No. 20349. Confirmation and consummation of the Commonwealth Plan was a critical milestone, as it implemented certain aspects of the HTA/CCDA PSA, including resolving the Clawback Claims against the Commonwealth.

11.     Further carrying out the settlements contemplated pursuant to the HTA/CCDA PSA and the DRA Stipulation, contemporaneously with this Motion, the Oversight Board filed (a) the *Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (as may be amended, modified, or supplemented from time to time, the "Plan"),[3] (b) the *Disclosure Statement for the Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (as may be amended, modified, or supplemented from time to time, the "Disclosure Statement"), (c) the *Motion of the Puerto Rico Highways and Transportation Authority for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* (the "Disclosure Statement Discovery Procedures Motion"), and (d) the *Motion of the Oversight Board for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* (the "Confirmation Discovery Procedures Motion").

---

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## Jurisdiction and Venue

12.     The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this Motion pursuant to PROMESA Section 306(a).

13.     Venue is proper in this district pursuant to PROMESA Section 307(a).

## Relief Requested

14.     By this Motion, pursuant to Sections 105, 502, 1125, 1126(a), 1126(b), 1126(c),

1126(e), 1126(f), 1126(g), and 1128 of the Bankruptcy Code (made applicable to this Title III Case

pursuant to PROMESA Section 301(a)), Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") 2002, 3016, 3017, 3018, 3020, 9013, 9014, and 9021 (made applicable to this Title III

Case pursuant to PROMESA Section 310), and Local Bankruptcy Rules for the United States

Bankruptcy Court for the District of Puerto Rico (the "Local Rules") 3016-2 and 9013-1, the

Debtor seeks an order, substantially in the form attached hereto as **Exhibit A** (the "Disclosure

Statement Order"), as follows:

a.   ***Disclosure Statement.***  Approving the adequacy of the information contained
in the proposed Disclosure Statement;

b.   ***Voting Record Date.***  Fixing a record date for purposes of voting with respect
to the Plan and service thereof (the "Voting Record Date"); *provided*, *however*,
that the Voting Record Date will not be applicable to Claims in the Bond
Classes;

c.   ***Confirmation Hearing Notice.***  Approving the form and manner of notice of
the times for filing objections to, and the hearing to consider confirmation of,
the Plan (the "Confirmation Hearing Notice"), in the form attached to the
Disclosure Statement Order as **Schedule 2**;

d.   ***Confirmation Schedule.***  Approving the confirmation schedule as summarized
below;[4]

---

[4]    Pursuant to the Confirmation Discovery Procedures Motion, the Debtor is also seeking approval of certain
discovery-related deadlines and procedures to facilitate and streamline discovery in connection with confirmation
of the Plan.

e. ***Solicitation Package.***  Approving the proposed contents of the Solicitation Package and procedures for distribution thereof;

f. ***Ballots and Election Instructions***.  Approving the forms of ballots and election instructions attached to the Disclosure Statement Order as **Schedules 3 and 5** (each, a "<u>Ballot</u>" or "<u>Election Notice</u>"), and establishing the solicitation, voting, and balloting procedures requested herein;

g. ***Assured Election Notice***.  Approving the form of notice of exercise of the Assured Election attached to the Disclosure Statement Order as **Schedules 5(c)**, and establishing the procedure for distributing such notice in the event Assured makes the Assured Election on or prior to the commencement of the Disclosure Statement hearing;

h. ***Non-Voting Class Notice***.  Approving the form of notice to non-voting Classes attached to the Disclosure Statement Order as **Schedule 4**;

i. ***Voting Deadline***.  Fixing the voting deadline for creditors to accept or reject the Plan;

j. ***Election Deadline***.  Fixing the deadline for making the distribution election for creditors eligible to elect the form of distribution under the Plan; and

k. ***Tabulating Votes***.  Approving procedures for tabulating votes cast to accept or reject the Plan.

| **<u>Summary of Proposed Schedule</u>** | |
|---|---|
| **Voting Record Date:** | June 17, 2022 for all Claims entitled to vote that are not classified in the Bond Classes (as defined below) |
| **Deadline to Serve Confirmation Hearing Notice:** | On or before five (5) business days after the entry of the Disclosure Statement Order |
| **Solicitation Mailing Deadline:** | Ten (10) business days after the entry of the Disclosure Statement Order |
| **Deadline for Oversight Board to File Initial Proposed Confirmation Order:** | July 13, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Voting Deadline / Election Deadline:** | July 27, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Deadline to File Declaration with Voting Results:** | On or before five (5) business days after the Voting Deadline / Election Deadline |
| **Deadline to Object to Confirmation of Plan, and Initial Proposed Confirmation Order:** | July 27, 2022 at 5:00 p.m. (Atlantic Standard Time) |

| Summary of Proposed Schedule | |
|---|---|
| **Deadline for Oversight Board to File Memorandum of Law in Support of Confirmation, Omnibus Reply to Confirmation Objections, Witness Declarations, Voting Tabulation, and Initial Findings of Fact and Conclusions of Law** | August 3, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Deadline to Object to Initial Findings of Fact and Conclusions of Law:** | August 8, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Proposed Confirmation Hearing:** | August 10, 2022 |

### Basis for Relief

**A.      Approval of the Disclosure Statement**

15.      Pursuant to Section 1125(b) of the Bankruptcy Code, solicitation of votes on a proposed plan may not begin until the court determines that the written disclosure statement for the plan contains adequate information.  *See, e.g., In re Oxford Homes, Inc.*, 204 B.R. 264, 269 (Bankr. D. Me. 1997) ("A plan of reorganization may not be submitted to a debtor's creditors unless and until a disclosure statement has been approved by the court as containing 'adequate information.'"); *Kaufman v. Public Serv. Co. (In re Public Serv. Co.)*, 43 F.3d 763, 766 (1st Cir. 1995); *In re Clamp-All Corp.,* 233 B.R. 198, 208 (Bankr. D. Mass. 1999).  Section 1125(a)(1) defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

16.      Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" about the plan by impaired creditors

entitled to vote on the plan. *See In re Oxford Homes, Inc.*, 204 B.R. at 269; *In re Clamp-All Corp.*, 233 B.R. at 204; *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1995); *see also In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[I]t is important for these average investors/general unsecured creditors that the Disclosure Statement contain simple and clear language . . . so that they can intelligently accept or reject the Plan."). To satisfy this requirement, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. at 19.

17.     The purpose behind requiring disclosure of 'adequate information' is to ensure creditors receive sufficient information to make an informed decision regarding whether to approve or disapprove a proposed plan. *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) (stating that "§ 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote"); *In re Clamp-All Corp.*, 233 B.R. 198, 204 (Bankr. D. Mass. 1999) ("The purpose of requiring an approved disclosure statement is to ensure that all claim holders are provided with adequate information to enable them to make an informed judgment regarding whether to vote for or against a reorganization plan."); *In re Ferretti*, 128 B.R. at 18 (Bankr. D. N.H. 1991). Additionally, such disclosures often facilitate the negotiation process between the debtor and its creditors. *See Century Glove*, 860 F.2d at 100.

18.     Given the important role a disclosure statement plays in the bankruptcy process, courts place great emphasis on the debtor's obligation to make a "full and honest disclosure . . . ." *In re Oxford Homes, Inc.*, 204 B.R. at 269 (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1995)); *see also In re Ferretti*, 128 B.R. at 19; *In re Clamp-*

*All Corp.*, 233 B.R. at 208; *Krystal Cadillac-Oldsmobile*, 337 F.3d at 323; *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417 (3d Cir. 1988). The "statement's adequacy must be evaluated in light of the facts unique to the case," taking into account the debtor's unique circumstances, the final decision falling within the court's discretion. *In re Eastern Maine Elec. Coop*, 125 B.R. 329, 333 (Bankr. D. Me. 1991); *see also In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991) ("The phrase 'adequate information' has been deliberately left vague by Congress to give a bankruptcy court wide discretion to determine on a case by case basis whether the disclosure is reasonable."). Courts take into account many factors, such as the complex nature and size of the bankruptcy case and the nature of the plan proposed. *In re Ferretti*, 128 B.R. at 18.

19. The bankruptcy court, and, in this case, the Title III Court, has broad discretion to determine the adequacy of the information contained in a disclosure statement. *See In re Ferretti*, 128 B.R. at 16; *In re Oxford Homes, Inc.,* 204 B.R. at 269 ("the precise contours of 'adequate information' were vaguely drawn by Congress so that bankruptcy courts might exercise their discretion to limn them in view of each case's peculiar circumstances"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988). The requirements of the adequate information standard vary with each case. *See, e.g., In re Ferretti*, 128 B.R. at 19; *In re Oxford Homes, Inc.,* 204 B.R. at 269 ("what constitutes 'adequate information' will vary from case to case"); *In re V & M Mgmt.*, 215 B.R. 895, 902 (Bankr. D. Mass. 1997) (holding that the 'adequate information' "requirements vary from case to case, according to the nature of the plan, the needs of claim and interest holders, and the availability of information."). Nonetheless, in exercising their broad discretion, bankruptcy courts generally

9

examine whether the disclosure statement contains, if applicable, the following types of information:

    a.   The circumstances that gave rise to the commencement of the case;

    b.   A complete description of the available assets and their value;

    c.   The anticipated future of the debtor, with accompanying financial projections;

    d.   The source of the information provided in the disclosure statement;

    e.   The condition and performance of the debtor during the bankruptcy case;

    f.   Information regarding claims against the estate including those allowed, disputed, and estimated;

    g.   A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

    h.   The accounting and valuation methods used to produce the financial information in the disclosure statement;

    i.   Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

    j.   A summary of the plan of reorganization;

    k.   An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

    l.   The collectability of any accounts receivable;

    m.   Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    n.   Information relevant to the risks being taken by the creditors and interest holders;

    o.   The actual or projected value that can be obtained from avoidable transfers;

    p.   The existence, likelihood and possible success of nonbankruptcy litigation;

    q.   The tax consequences of the plan; and

r.  The relationship of the debtor with affiliates.

*In re Ferretti*, 128 B.R. at 18-19 (Bankr. D.N.H. 1991); *see also In re Oxford Homes, Inc.*, 204

B.R. at 269 n. 17 (adopting the *In re Ferretti* list).  This list is not meant to be comprehensive, nor

must a debtor provide all the information on the list.  Rather, the requirements vary with the facts

of each case.  *See In re Ferretti*, 128 B.R. at 19 ("This list is by no means comprehensive.  Nor

must every debtor provide all the information on the list.  <u>The Court will decide what is appropriate

in each particular case</u>.") (emphasis added); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393

(Bankr. E.D. Pa. 2001) (making use of similar list but cautioning that "no one list of categories

will apply in every case."); *In re City of Detroit*, 524 B.R. 147, 252 (Bankr. E.D. Mich. 2014)

("Every disclosure statement can always include more information.  The only issue is whether the

information that was disclosed was sufficient for creditors . . . to make an informed judgment about

the plan.").

20.     The Debtor has tailored the proposed Disclosure Statement to fit the facts of this

Title III Case.  The proposed Disclosure Statement contains information with respect to many of

the subjects listed above, as applicable, including, but not limited to:

a.  A description of the Debtor's purpose, operations, prepetition debt structure, and cash management (Disclosure Statement, Section III);

b.  Certain events preceding the commencement of the Title III Case (Disclosure Statement, Section IV);

c.  Significant events during the Title III Case (Disclosure Statement, Section V);

d.  An overview of the Plan (Disclosure Statement, Section VI);

e.  The classification and treatment of Claims under the Plan (Disclosure Statement, Section VI.E.);

f.  The administration of the Debtor following confirmation of the Plan (Disclosure Statement, Section VI.Q);

g.  Selected financial information and future projections (Disclosure Statement, Section XII);

h.  Information regarding the securities to be issued under the Plan (the "Plan Securities") (Disclosure Statement, Sections II.B.3. and VI.F);

i.  Information regarding elections with respect to the form of distribution under the Plan available to some of the holders of claims against the Debtor (Disclosure Statement, Sections II.B.2., II.C., VI.E., and VI.G.);

j.  Risk factors affecting the Plan and the Plan Securities (Disclosure Statement, Section VIII);

k.  Tax consequences of the Plan (Disclosure Statement, Sections IX and X);

l.  Voting and election procedures (Disclosure Statement, Section II.D);

m.  Requirements for confirmation of the Plan (Disclosure Statement, Section VII); and

n.  Additional information about the Debtor and the Plan, including with respect to the injunction, exculpation, and release provisions contained in Article XL of the Plan (Disclosure Statement, Sections II.F. and VI.U.

21.    Accordingly, the Debtor believes the proposed Disclosure Statement contains all or substantially all of the information typically considered by courts in evaluating whether a disclosure statement contains adequate information, and requests the Court's approval of the proposed Disclosure Statement as having adequate information within the meaning of Section 1125 of the Bankruptcy Code.

**B.    Fixing the Voting Record Date**

22.    Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes in connection with the confirmation of a plan of adjustment, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

23.     In accordance with these rules, except for any Claims in the Bond Classes,[5] the Debtor requests **June 17, 2022** (the proposed date for the Disclosure Statement hearing) as the date to determine which creditors are entitled to vote to accept or reject the Plan (the "Voting Record Date").  The Debtor submits that a Voting Record Date of **June 17, 2022** will provide the Debtor and Kroll Restructuring Administration LLC ("Kroll"), the Debtor's balloting agent ("Kroll" or the "Balloting Agent"),[6] sufficient time to (i) determine to whom Solicitation Packages should be sent and (ii) properly tabulate votes prior to the Voting Deadline (as defined below). The Voting Record Date will only be applicable to claims that are not classified in the Bond Classes.  The Debtor proposes to use the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") to solicit votes and elections from holders of Claims in the Bond Classes who are eligible to vote, as well as to announce the Notice of Non-Voting Status to holders of Claims in the Bond Classes who are not eligible to vote.  The ATOP system requires that any holder that seeks to vote or make an election must instruct their Nominee (as defined below) to tender the holder's Bonds through the ATOP system.  This obviates the need for a Voting Record Date, as only current holders of the Bonds can cause them to be tendered for voting or election purposes on or before the Voting Deadline or Election Deadline.

24.     In addition, the Debtor requests that the Court establish the Voting Record Date as the date for determining which creditors, if any, in the Class 14 (HTA Moscoso Bond Claims),[7] Class 18 (Section 510(b) Subordinated Claims), and Class 19 (Convenience Claims) are entitled to receive a Notice of Non-Voting Status (collectively, the "Non-Voting Classes").

---

[5]   The "Bond Classes" are Classes 1-14 under the Plan.

[6]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[7]   As noted above, the Notice of Non-Voting Status for applicable Bond Classes, including Class 14 (HTA Moscoso Bond Claims) will be delivered through DTC.  Accordingly, a Voting Record Date is not necessary for delivery of such notice with respect to Class 14.

25.     With respect to any transferred Claim (except for any Claims in the Bond Classes), if the transferor of such Claim is entitled to vote on the Plan, the Debtor proposes that the transferee be entitled to receive a Solicitation Package and vote to accept or reject the Plan on account of the transferred Claim only if: (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed on or before the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date (including instances where the transferor has completed, executed, and returned a Ballot (as defined below)), the transferee of such Claim shall be bound by any vote or election, as applicable, (and the consequences thereof) made on the Ballot by such transferor of such transferred Claim.

26.     The Voting Record Date is an appropriate date to facilitate the practical determination of (i) which creditors are entitled to vote on the Plan (outside of the Bond Classes) and (ii) in the case of creditors in the Non-Voting Classes, or creditors whose claims have been transferred to administrative claims reconciliation, which creditors are entitled to receive a Notice of Non-Voting Status.

27.     As the Court is aware, a substantial amount of the Debtor's outstanding indebtedness is in the form of outstanding bonds (collectively, the "Bonds" or the "Existing Bonds").  The identities of many of the beneficial owners of the Bonds (the "Beneficial Owners") are not known to the Oversight Board and/or the Debtor.  As is customary, securities that are intended to be publicly traded are issued in the name of Cede & Company, which holds the Bonds on behalf of the Nominees (as defined below) of DTC.  The Nominees, in turn, hold the securities in "street name" on behalf of the Beneficial Owners (and other brokerage institutions that hold

14

them on behalf of Beneficial Owners).  The Debtor intends to obtain from DTC a listing of the Nominees and, as described further below, cause the mailing of Solicitation Packages (as applicable) to the Nominees (or such Nominees' agent, including (but not limited to) Broadridge Financial Services) with instructions to cause the Solicitation Packages to be forwarded immediately to the Beneficial Owners of the Bonds.[8]

**C.    Establishing Notice, Objection Procedures, and Deadlines for Hearing on Confirmation of the Plan**

   *(i)    Setting the Confirmation Hearing*

28.    Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of Claims and interests may accept or reject the plan . . . ."  Fed. R. Bankr. P. 3017(c).

29.    In accordance with Bankruptcy Rules 2002(b) and 3017(c), and in view of the Debtor's proposed solicitation schedule outlined herein, the Debtor requests that a hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") be scheduled for August 10, 2022, or as soon thereafter as the Court's calendar permits.

30.    The Confirmation Hearing may be continued from time to time without further notice, except for adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.  The proposed dates for the Confirmation Hearing comply with the Bankruptcy Rules and enable the Debtor to pursue confirmation of the Plan pursuant to an appropriate timetable.  Importantly, the proposed dates for the Confirmation Hearing will allow the Debtor to consummate the Plan expeditiously, as contemplated under the

---

[8]    It is the Debtor's understanding that all Bonds are held exclusively through DTC in the name of Cede & Company. If the Debtor, however, is made aware of any other direct holders of the Bonds holding such Bonds outside of DTC, the Debtor shall send Solicitation Packages directly to such holders within two (2) business days of being provided with the necessary mailing information.

HTA/CCDA PSA, and provide the Debtor relief from the accrual of further administrative expenses while operating in Title III.

(ii)    *Approval of the Confirmation Hearing Notice*

31.    Bankruptcy Rule 2002(b) requires all creditors and indenture trustees be given not less than twenty-eight (28) days' notice of the time fixed for filing objections to confirmation of a plan of adjustment.  In accordance with the Bankruptcy Rules, the Debtor proposes to serve the Confirmation Hearing Notice (in a form substantially similar to the notice approved with respect to confirmation of the Commonwealth Plan), a copy of which is attached to the proposed Disclosure Statement Order as **Schedule 2**, setting forth information regarding: (i) the Voting Deadline and Election Deadlines, (ii) the times fixed for filing objections to confirmation of the Plan (including certain deadlines proposed in the Confirmation Discovery Procedures Motion, subject to the Court's approval), and (iii) the time, date, and place for the Confirmation Hearing. Additionally, the proposed Confirmation Hearing Notice informs parties in interest that the Plan and Disclosure Statement, together with all exhibits thereto, may be obtained: (i) from the Balloting Agent's website at https://cases.primeclerk.com/puertorico/; (ii) by telephoning the Balloting Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available); or (iii) by emailing the Balloting Agent at puertoricoinfo@primeclerk.com. Furthermore, the Debtor proposes to include a copy of the Confirmation Hearing Notice in the Solicitation Package.

32.    The proposed procedure for providing copies of the Plan and Disclosure Statement complies with the requirements of Bankruptcy Rule 3017(a).  The Confirmation Hearing Notice will be sent to the appropriate parties in accordance with the Bankruptcy Rules and Local Rules on or before five (5) business days after entry of the Disclosure Statement Order or as soon as

reasonably practicable thereafter, and with the Solicitation Package on or before the Solicitation

Mailing Date (as defined below).

33.     To give adequate notice of the time for filing and serving objections, and the date

and time for the commencement of the Confirmation Hearing, to (i) those creditors to whom no

other notice will be sent and who are unknown and not reasonably ascertainable by the Debtor,

(ii) known creditors with addresses unknown by the Debtor, and (iii) creditors with potential

Claims unknown by the Debtor, the Debtor proposes to implement procedures similar to what the

Court authorized in connection with the Commonwealth and COFINA confirmation processes.[9]

Specifically, the Debtor proposes to publish the Confirmation Hearing Notice once in each of *El

Nuevo Dia* in Spanish (primary circulation is in Puerto Rico), *Caribbean Business* in English

(primary circulation is in Puerto Rico), *El Diario* in Spanish (primary circulation is in New York),

*El Nuevo Herald* in Spanish (primary circulation is in Miami), *The New York Times*, *The Bond

Buyer*, *El Vocero* in Spanish (primary circulation is in Puerto Rico), and *Primera Hora* in Spanish

(primary circulation is in Puerto Rico) to the extent possible during the week beginning on,

(1) June 27, 2022, (2) July 4, 2022, and (3) July 18, 2022.[10]   Additionally, the Confirmation

Hearing   Notice   will   be   available   electronically   on   the   Debtor's   website,

https://cases.primeclerk.com/puertorico/.   The Debtor submits such publication notice prior to the

Confirmation   Hearing   is   adequate   and   sufficient   notice   to   such   creditors   under   these

circumstances.

---

[9]     See, e.g., Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving
Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution
Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of
Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote
Tabulation Procedures [ECF No. 17639 in Case No. 17-3283] (the "Commonwealth DS Approval Order").

[10]    To the extent any of the proposed publications are unable to publish or suspends publication during the time
periods proposed, the Debtor requests that it be permitted to use reasonable best efforts to secure a similar
alternative publisher without further order of the Court.

34.     Additionally, to the extent possible, the Debtor proposes to cause no less than ten (10) radio advertisements, to be aired during each of the periods below (for a total of thirty (30) radio advertisements) on (a) WMEG FM (contemporary hit radio) in Spanish and (b) WKAQ AM (Spanish language talk radio) in Spanish, informing listeners of (i) the approval of the Disclosure Statement and the scheduling of the Confirmation Hearing, (ii) the date by which Confirmation Objections must be filed and served, (iii) the Voting Deadline and the Election Deadline, and (iv) an information hotline to receive certain additional information, as follows:

- the period from June 27, 2022 up to and including July 1, 2022,

- the period from July 4, 2022 up to and including July 8, 2022, and

- the period from July 18, 2022 up to and including July 22, 2022.

35.     The foregoing procedures will provide parties in interest with approximately 33 days' notice of the Confirmation Objection Deadline, and approximately 47 days' notice of the commencement of the Confirmation Hearing, more than the time periods required pursuant to the Bankruptcy Rules and, accordingly, should be approved.

*(iii)     Establishing Objection Procedures and Deadlines for Confirmation of the Plan*

36.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  Below is a summary of the Debtor's proposed confirmation briefing schedule proposed between this Motion and the Confirmation Discovery Procedures Motion:

| **Summary of Proposed Confirmation Briefing Schedule** | |
| --- | --- |
| **Deadline for Oversight Board to File Initial Proposed Confirmation Order:** | July 13, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Deadline to Object to Confirmation of Plan, and Initial Proposed Confirmation Order:** | July 27, 2022 at 5:00 p.m. (Atlantic Standard Time) |

| Summary of Proposed Confirmation Briefing Schedule | |
|---|---|
| **Deadline for Oversight Board to File Memorandum of Law in Support of Confirmation, Omnibus Reply to Confirmation Objections, Witness Declarations, Vote Tabulations, and Initial Findings of Fact and Conclusions of Law** | August 3, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Deadline to Object to Initial Findings of Fact and Conclusions of Law:** | August 8, 2022 at 5:00 p.m. (Atlantic Standard Time) |
| **Proposed Confirmation Hearing:** | August 10, 2022 |

37.     Pursuant to the Confirmation Discovery Procedures Motion, the Debtor has also requested that the Court approve various discovery deadlines for purposes of streamlining and expediting discovery in connection with confirmation of the Plan that complement the Debtor's proposed confirmation schedule.

38.     Through this Motion, the Debtor requests that the Court approve the following deadlines and procedures in connection with confirmation of the Plan:

*Confirmation Objection Deadline*

39.     The Debtor proposes that any objections or responses be filed, together with proof of service, with the Court and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline").

40.     The proposed Confirmation Hearing Notice provides, and the Debtor requests that the Court direct, that any objections or responses to the proposed confirmation of, or proposed modifications to, the Plan:

(a) be in writing, in English, and signed;

(b) state the name, address, and nature of the Claim of the objecting or responding party;

(c) state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or order confirming the Plan to resolve any such objection or response;

(d) be served so that objections and responses are actually received by the Office of the United States Trustee for the District of Puerto Rico by no later than **5:00 p.m. (Atlantic Standard Time) on July 27, 2022**; and

(e) be filed, together with proof of service, with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on July 27, 2022**.

41.    Furthermore, and consistent with the Court's procedures with respect to the confirmation hearing for the Commonwealth Plan,[11] the Debtor requests that opposing parties that have not filed a timely written objection on or before the Confirmation Objection Deadline not be permitted to make oral remarks at the Confirmation Hearing.

*Debtor's Reply Deadline*

42.    If objections to confirmation of the Plan are interposed, providing sufficient time for the Debtor and other parties in interest to respond will assist the Court and may expedite the Confirmation Hearing.  Accordingly, the Debtor requests it be authorized to file and serve no later than **5:00 p.m. (Atlantic Standard Time) on August 3, 2022**:

- replies or an omnibus reply to any objections to the confirmation of the Plan;

- the Debtor's memorandum of law in support of confirmation of the Plan;

- witness declarations;

- voting tabulation results; and

- the Debtor's proposed order confirming the Plan.

---

[11]  *See* Commonwealth DS Approval Order, ¶ 26.

43.    Such timeframe will permit the Court to review all pleadings sufficiently in advance of the Confirmation Hearing and, if necessary, request additional information or authorities.

44.    The Debtor respectfully requests the Court approve these procedures and timeframe for filing objections to the Plan and any replies thereto.

**D.    Approval of the Solicitation Package and Distribution Procedures**

45.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of Claims for the purpose of soliciting their votes on a plan of adjustment and providing adequate notice of the hearing on confirmation of a plan of adjustment:

> Upon approval of a disclosure statement, – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1)    the plan or a court-approved summary of the plan;
> (2)    the disclosure statement approved by the court;
> (3)    notice of the time within which acceptances and rejections of the plan may be filed; and
> (4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

Fed. R. Bankr. P. 3017(d).

46.    If the Court approves the proposed Disclosure Statement as containing adequate information under Section 1125 of the Bankruptcy Code, the Debtor proposes to mail or cause to be mailed solicitation packages (the "Solicitation Packages") to all known holders (as of the Voting Record Date) of Claims in the following Classes (collectively, the "Voting Classes") by **ten (10)**

**business days** following entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter (the "Solicitation Mailing Date"):[12]

|  | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| HTA General Unsecured Claims | Class 22 |

47.     The Debtor proposes not to mail or cause to be mailed Solicitation Packages to any holders of Claims that are, as of the Voting Record Date, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-3283, ECF No. 12274] ("Administrative Reconciliation Order"), as such holders shall not be entitled to vote such Claims to accept or reject the Plan, unless such holder's claim has been allowed pursuant to an order of the Court on or before

---

[12]   For the avoidance of doubt, as set forth in paragraph 23 above, although the Debtor will use the Voting Record Date for the purpose of mailing (or causing to be mailed) Solicitation Packages to holders of Claims in the Bond Classes, the Voting Record Date does not apply to such Claims in the Bond Classes.

the Voting Deadline.  However, such holders will receive the Confirmation Hearing Notice and

Notice of Non-Voting Status.[13]

48.    Solicitation Packages mailed to creditors holding Claims in the Voting Classes will

contain, in English and Spanish translation:

a.  the Confirmation Hearing Notice;

b.  a flash drive (or otherwise in the Debtor's discretion) containing the Disclosure
Statement (together with all exhibits thereto, including the Plan)[14] and the
Disclosure Statement Order (excluding the exhibits thereto);[15]

c.  if applicable, the appropriate ballot or notice with instructions on how to accept
or reject the Plan and make any applicable elections, in substantially the form
set forth in **Schedules 3 and 5** to the Disclosure Statement Order, with
instructions for voting and/or making any applicable election, and, as
applicable, a pre-addressed, pre-paid return envelope (provided that Ballots to
vote to accept or reject the Plan shall only be provided to Ambac Assurance
Corporation ("Ambac") on account of Claims in Classes 2 and 6; Assured on
account of Claims in Classes 3, 7, and 11; National on account of Claims in
Classes 4, 9, and 13; and Financial Insurance Guaranty Company ("FGIC") on
account of Claims in Classes 8 and 12); and

d.  in the case of creditors in Classes 3, 7, and 11 with respect to whose Assured
Insured Bonds Assured has exercised the Assured Election as of the
commencement of the Disclosure Statement hearing, the Assured Election
Notice, in substantially the form set forth in **Schedule 5(c)** attached to the
Disclosure Statement Order.

49.    The Debtor requests that it be authorized (but not required) to distribute the

Disclosure Statement Order (excluding the exhibits thereto) and Disclosure Statement (together

with all exhibits thereto, including the Plan) to the Voting Classes in electronic format (flash drive).

---

[13]  For the avoidance of doubt, holders of Claims transferred into the alternative dispute procedures pursuant to the
*Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and
(C) Granting Related Relief* [ECF No. 12576 in Case No. 17-03283] will not be precluded from voting such
Claims to accept or reject the Plan, except as otherwise provided in the Disclosure Statement Order.

[14]  The proposed Confirmation Hearing Notice contains information as to how a claimant may obtain a hard copy of
the Disclosure Statement and all exhibits thereto.

[15]  If it is the customary practice for a Nominee or Nominee's agent to provide its Beneficial Holder client(s)
electronic versions (or access to electronic versions via a link or otherwise) to the information contained on the
flash drive, the Nominee or Nominee's agent can follow such customary practice in addition to (or *in lieu* of)
forwarding the flash drive and may return any unused flash drives to the Balloting Agent.

The Confirmation Hearing Notice, Ballots, and Notices, as appropriate, will *only* be provided in paper format.  The Disclosure Statement totals approximately 330 pages (not counting voluminous exhibits, including the Plan) and will cost significantly more to print than to replicate in electronic format.   Distribution of the Disclosure Statement (with all exhibits, including the Plan) in electronic format will preserve the Debtor's resources by reducing both postage and printing costs.  Courts routinely permit debtors to transmit solicitation documents in electronic format in the interest of saving printing and mailing costs.  *See, e.g.,* Commonwealth DS Approval Order, ¶ 15 (authorizing the debtor to transmit solicitation documents through flash drive); *In re GT Advanced Technologies Inc.*, Case No. 14-11916-HJB (Bankr. D.N.H. Feb. 2, 2016) (authorizing the debtors to transmit solicitation documents in electronic format); *In re Buckingham Oil Interests, Inc.*, Case No. 15-13441-JNF (Bankr. D. Mass. Dec. 22, 2015) (same); *In re Women's Apparel Group, LLC*, Case No. 11-16217-JNF (Bankr. D. Mass. May 10, 2012) (same); *In re GST Autoleather, Inc.,* No. 17-12100 (LSS) (Bankr. D. Del. Mar. 12, 2018) (same).[16]

50.     Additionally, the Debtor will provide: (i) complete Solicitation Packages (excluding Ballots) to:

(a) the U.S. Trustee,

(b) counsel to AAFAF,

(c) counsel to Ambac; Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Dennis F. Dunne, Esq., and Atara Miller, Esq.;

(d) counsel to Assured; Cadwalader, Wickersham & Taft, 200 Liberty Street, New York, NY 10281, Attn: Mark Ellenberg, Esq., William J. Natbony, Esq., and Casey Servais, Esq.;

(e) counsel to FGIC; Butler Snow LLP, 2911 Turtle Creek, Suite 1400, Dallas, TX 75219, Attn: Martin A. Sosland, Esq.;

---

[16]   Because of the voluminous nature of the orders cited herein, such orders are not attached to this Motion.  Copies of these orders are available on request of the attorneys for the Oversight Board.

(f) counsel to National; Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Andrew Wilkinson, Esq., Kelly DiBlasi, Esq. and Kirsten Erichsen, Esq.;

(g) counsel to Cantor-Katz Collateral Monitor LLC; Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn:  Douglas Koff, Esq., Adam C. Harris, Esq., Taleah Jennings, Esq., Abbey Walsh, Esq., and Peter J. Amend, Esq.; Schulte Roth & Zabel, LLP, 901 Fifteenth Street, NW, Suite 800, Washington, DC 20005, Attn: Douglas S. Mintz, Esq.;

(h) counsel to AmeriNational Community Services, LLC; McConnell Valdés LLC, 270 Muñoz Rivera Avenue, Suite 7, Hato Rey, Puerto Rico 00918, P.O. Box 364225, Attn: Arturo J. García-Solá, Esq. and Nayuan Zouairabani, Esq.; and

(i) counsel to the Official Committee of Unsecured Creditors; Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Luc A. Despins, Esq. and G. Alexander Bongartz, Esq.; and

(ii) the Disclosure Statement Order (excluding the exhibits thereto) and the Confirmation Hearing Notice to the Debtor's Bankruptcy Rule 2002 list.  Any party who receives the Disclosure Statement in an electronic format but would prefer a paper format may contact the Balloting Agent and request a paper copy of the materials previously received in electronic format, which will then be provided at the Debtor's expense.

51.   Consistent with Bankruptcy Rule 3017(d), the Debtor submits they should not be required to distribute the Disclosure Statement, the Plan, and/or the Disclosure Statement Order to holders of Claims against the Debtor in the Non-Voting Classes, which Claims are either deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code, or deemed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code, unless a party makes a specific request to the Debtor, in writing.  Rather, the Debtor proposes to distribute to holders of such Claims a Notice of Non-Voting Status and the Confirmation Hearing Notice.

52.   The Debtor anticipates some notices of the Disclosure Statement hearing may be returned as undeliverable by the United States Postal Service.  As it would be costly and wasteful

to then mail Solicitation Packages to the same addresses from which such notices of the Disclosure Statement hearing were returned as undeliverable, the Debtor seeks the Court's approval for a departure from the strict notice rule, excusing the Debtor from mailing Solicitation Packages to such addresses, unless the relevant addressees provide the Debtor with updated, accurate addresses before the Voting Record Date.  For purposes of serving the Solicitation Packages, the Debtor seeks authorization to rely on the address information for all Classes as compiled, updated, and maintained by the Balloting Agent as of the Voting Record Date.  In addition, to the extent any Solicitation Packages are returned as undeliverable by the United States Postal Service (including Solicitation Packages from voting creditors), neither the Debtor nor the Balloting Agent are required to conduct additional research for updated addresses or to attempt to reserve the Solicitation Packages on such parties.

53.     Furthermore, the Debtor requests that the Court determine it is not required to distribute copies of the Plan or Disclosure Statement to the following:

   a.   any holder of an unimpaired Claim under the Plan;

   b.   any holder of a Claim in a Class deemed to accept or reject the Plan;

   c.   any party who holds a Claim (whether in the form of a filed proof of claim or an amount listed on the Debtor's List of Creditors [Case No. 17-3283, ECF No. 2163] (the "List of Creditors")) in an amount of $0;

   d.   any holder of a Claim to which the Debtor has served an objection to the Claim or request for estimation by the Solicitation Mailing Date, or that has been expunged by order of the Court;

   e.   any holder of a Claim that is, as of the Voting Record Date, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the Administrative Reconciliation Order; and

   f.   a creditor that has a Claim that has already been paid in full.

54.     Although the Debtor has made, and will continue to make, reasonable efforts to ensure the Solicitation Packages described herein are in final form, the Debtor nonetheless requests

that it be authorized, in accordance with the modification provisions of the Plan and Local Rule 3016-2, to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Notices, the Monoline Election Notices, the Notice of Non-Voting Status, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages as may be necessary, prior to mailing.

55.     The Debtor submits it has shown good cause for implementing the proposed notice and service procedures for the Solicitation Packages.

**E.     Approving Forms of Ballots, and Voting and Election Procedures**

56.     Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot conforming to Official Bankruptcy Form No. B 314, only to "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d).  The Debtor proposes to distribute to the creditors entitled to vote to accept or reject the Plan, as described more fully below, one or more Ballots or Notices substantially in the forms attached to the proposed form of Disclosure Statement Order as **Schedules 3 through 5**.

57.     The forms of the Ballots and Notices are based on Official Bankruptcy Form No. B 314, but have been modified to address particular aspects of this Title III Case and to include certain additional information the Debtor believes is relevant and appropriate for each Class of Claims entitled to vote and/or elect the form of distributions under the Plan.  The appropriate form of Ballot or Notice, if any, will be distributed to the holders of Claims in the Voting Classes, as applicable.  All other Classes under the Plan are not entitled to vote to accept or reject the Plan.

*The Bond Classes (1-14)*

### *Bond Classes Eligible for Elections*

58.    Certain holders of Claims in the following Classes (the "Electing Bond Classes")
have the option to vote to accept or reject the Plan and make certain elections with respect to the
treatment of their claims:

59.    *Assured Insured Bond Elections.*  Pursuant to Section 25.1(a) of the Plan, holders
in the following Classes may have the right to make certain Assured Bondholder Elections with
respect to their treatment to the extent that Assured exercises the Assured Election pursuant to
Section 25.1 of the Plan for such Class:

|  | **Class** |
|---|---|
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |

60.    If Assured exercises the Assured Election, then Assured may elect, in its sole
discretion, to pay off all or any portion of the Assured Insured Bonds giving rise to the Claims in
the Classes above at an Assured Acceleration Price on the Effective Date and thereby satisfy and
discharge all of its obligations under the applicable Assured Insurance Policies.  If Assured makes
the Assured Election with respect to any Assured Insured Bonds on or prior to the commencement
of the Disclosure Statement Hearing, there will be no need for holders of such Assured Insured
Bonds to receive an Election Notice, as such holders will not be entitled to make any elections,
and it would instead be appropriate for such holders to receive a notice (the "Assured Election
Notice"), substantially in the form of **Schedule 5(c)** attached to the Disclosure Statement Order,
informing such holders that Assured has exercised the Assured Election with respect to such
holders' Assured Insured Bonds.  Therefore, to the extent Assured informs the Debtor in writing
on or before the commencement of the Disclosure Statement Hearing that it has exercised the

Assured Election with respect to any Assured Insured Bonds giving rise to Claims in the Classes listed above, the Debtor requests that the Solicitation Packages distributed to the holders of such Assured Insured Bonds contain the Assured Election Notice rather than an Election Notice, but that the manner of distribution of such Solicitation Packages otherwise be the same as with respect to Solicitation Packages containing Election Notices.

61.     With respect to any Assured Insured Bonds for which Assured does not exercise the Assured Election, holders of Claims on account of such Assured Insured Bonds are entitled to elect either to (i) receive from Assured the applicable Assured Acceleration Price no later than ten (10) business days following the Effective Date of the Plan, in full satisfaction and discharge of their Claims and of Assured's obligations under the applicable Assured Insurance Policy, with Assured receiving the Assured Plan Consideration otherwise allocable to such holder under the HTA Plan, or (ii) opt into a custodial trust, escrow arrangement, or other similar structure established by Assured that will provide such holder with an interest in (A) the applicable Assured Insurance Policy and (B) the applicable Assured Plan Consideration (the "Assured Bondholder Election").  The Debtor proposes to provide each such holder with notice of their entitlement to exercise the Assured Bondholder Election in substantially the same form attached to the Disclosure Statement Order as **Schedule 5(b)** (the "Assured Bondholder Election Notice").

62.     *Ambac and National Insured Bond Election*.[17]  Holders of Claims in the following Classes will be entitled to make certain elections with respect to the obligations of the insurer of

---

[17]   As provided in Section 25.2 and 25.4 of the Plan, at or prior to the commencement of the Disclosure Statement Hearing, Ambac and National will: (1) elect and/or further define the form of consideration comprising the Ambac Commutation Consideration and National Commutation Consideration (as applicable); and (2) elect and/or further define the form of treatment to be provided pursuant to the Ambac Non-Commutation Treatment or National Non-Commutation Treatment (as applicable).  Once such election is made by Ambac or National, in their respective sole and absolute discretion, the Election Notice attached to the Disclosure Statement Order as Schedule 5(a) or 5(d), as applicable, shall be updated by the Oversight Board to reflect such elections prior to the Solicitation Packages being sent.

their bonds, either by agreeing to commute the insurance obligations by receiving specified consideration from the insurer of their bonds or maintain the insurance obligations and receive, at the insurer's election, custodial trust certificates from the insurer of their bonds, an interest in an escrow account (this option only available to holders of Allowed National Insured Bond Claims), payment of accelerated amounts, or alternative treatment pursuant to Sections 25.2(b) and 25.4(b) of the Plan, as applicable:

|  | Class |
|---|---|
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims (National) | Class 13 |

### *Voting*

63.     Beneficial Owners of Claims in the below Classes (the "Non-Electing Bond Classes," and together with the Electing Bond Classes, the "Bond Classes") are not entitled to vote to accept or reject the Plan because (a) with respect to Class 2 (HTA 68 Bond Claims (Ambac), pursuant to Section 25.4 of the Plan, holders of HTA 68 Bond Claims (Ambac) are entitled to receive Cash in the amount equal to the Ambac Acceleration Price, in full and final satisfaction, release, and discharge of Ambac's obligations under the applicable Ambac Insurance Policy, and Ambac will receive the Ambac Plan Consideration that would otherwise be allocable to such Claims, and shall be entitled to vote to accept or reject the Plan on account of such Claims, and (b) pursuant to Section 25.3 of the Plan, the insurance policies underlying FGIC Insured Bond Claims will be maintained in a FGIC Trust (as defined in the Plan) and FGIC will be entitled to vote to accept or reject the Plan on account of such Claims:

|  | Class |
|---|---|
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |

64.     Beneficial Owners of Claims in the following Electing Bond Classes will also <u>not</u> be entitled to vote to accept or reject the Plan, but will receive an Election Notice, if applicable, to make an election of the form of distributions under the Plan, as summarized above:

|  | Class |
|---|---|
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (National) | Class 13 |

65.     Pursuant to Article XXXI of the Plan, and as a result of extensive negotiations leading to the entry into the PSA and HTA/CCDA PSA—which include Ambac, Assured, National, and FGIC, and certain holders of insured Bonds—Ambac, Assured, National, and FGIC are entitled to vote to accept or reject the Plan on account of Claims arising from securities insured by such parties.  Pursuant to the PSA and the HTA/CCDA PSA, if the PSA and HTA/CCDA PSA are no longer in effect, all parties to the PSA and HTA/CCDA PSA reserve their rights to seek a determination with respect to Ambac's, Assured's, National's, and FGIC's and their insured bondholders' right to vote to accept or reject the Plan.

66.     Beneficial Owners of Claims in the following Electing Bond Classes are entitled to vote to accept or reject the Plan:

|  | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Sub Bond Claims | Class 10 |

67.     As discussed below, with respect to Class 14 (HTA Moscoso Bond Claims), Ballots need not be provided to the Beneficial Owners of such Claims, because the holders of these Claims are unimpaired pursuant to the Plan and are deemed to accept the Plan

*Voting and Election Procedures*

68.     The Debtor proposes to send Notices to the holders of Claims classified in the Bond Classes (*see* **Schedules 3 through 5**) that will explain the process for voting and/or making an election (as applicable) with respect to their Claims.  The Debtor proposes to set up an electronic voting and election process for holders of Claims in the Bond Classes through ATOP.  For the avoidance of doubt, unless otherwise ordered by the Court, only Ambac, Assured, National, and FGIC will be entitled to cast a vote and will each receive a Ballot with respect to the following Classes, as applicable (the "Insured Bond Classes"):

|  | **Class** |
| --- | --- |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |

69.     To make a valid election or vote (as applicable), holders of Claims in the Bond Classes will have to instruct their broker or nominee (each, a "Nominee") to electronically deliver their bonds via ATOP at DTC in accordance with their desire to either make an election and/or vote on the Plan.  Once the Nominee has received an instruction from a holder of a Claim in the Bond Classes either to vote or to make an election (as applicable), the Nominee will tender the

holders' bonds through the ATOP system to indicate that the holder has made the applicable choice.

70.     When holders of Claims in the Electing Bond Classes instruct their Nominee to tender their bonds via ATOP to make an election with respect to the treatment of their Claims, the holders will be restricted from transferring their bonds.  Holders of Claims in the Bond Classes may revoke their election and withdraw any tendered bonds from ATOP at any time before the Election Deadline.  If holders revoke their election before the Election Deadline, then they will be entitled to trade or transfer their bonds again.  After the Election Deadline, holders of Claims in the Electing Bond Classes that have made an election with respect to the treatment of their Claims will be restricted from transferring their bonds through the Effective Date of the Plan.

71.     Holders of Claims in the Bond Classes (other than the Insured Bond Classes) that do not make an election, if eligible, but vote to either accept or reject the Plan will be restricted from transferring their bonds until the Voting Deadline (or as soon as reasonably practicable thereafter), and will be able to resume transferring or trading their bonds following DTC's release of such bonds from ATOP as soon as possible after the Voting Deadline (which is expected to be one or two days following the Voting Deadline).[18]  Holders of Claims in the Classes above may revoke their vote and withdraw any tendered bonds from ATOP at any time before the Voting Deadline.  If holders revoke their vote before the Voting Deadline, then they will be entitled to trade or transfer their bonds again.

72.     For the purposes of the electronic voting and facilitating the election process through ATOP for holders of Claims in the Bond Classes, ATOP instructions will be accepted in minimum denominations of $1.00 and increments of $1.00 thereafter.

---

[18]   The Debtor, in coordination with DTC, however, may determine that these bonds should remain in ATOP in order to facilitate individualized distributions at the beneficial holder level to such holders.

*Non-Bond Claims.*

73.     With respect to Class 15 (Eminent Domain/Inverse Condemnation Claims), Class 16 (HTA General Unsecured Claims), and Class 17 (HTA/GDB Claims), the Debtor proposes to deliver Ballots directly to holders of Claims arising under such Classes.

**F.     Fixing Voting and Election Deadline**

74.     Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of Claims may accept or reject a plan. The Debtor anticipates completing mailing of the Solicitation Packages by the Solicitation Mailing Date.  Based on this schedule, the Debtor proposes that, to have effect as a vote to accept or reject the Plan, each Ballot (as applicable) must be properly executed, completed, and delivered to the Balloting Agent by (i) first-class mail, in the return envelope provided with each Ballot (or otherwise by first-class mail), (ii) overnight courier, (iii) hand delivery, or (iv) electronic, online submission at Kroll's website (as described more fully below and as permitted in accordance with the instructions set forth on the applicable Ballot), so as to be actually received by the Balloting Agent no later than **5:00 p.m. (Atlantic Standard Time) on July 27, 2022**, unless such time is extended (the "Voting Deadline").[19]  Holders of Claims in the Bond Classes must deliver their voting instruction to the Nominee according to the instructions in the applicable Notice (**Schedules 3(a) – 3(h)**) in sufficient time for the Nominee to receive and effectuate the creditor's election through ATOP in accordance with the procedures of DTC by the Voting Deadline.  The Debtor submits a solicitation period of at least twenty-seven (27) calendar days is a sufficient period within which creditors can make an informed decision whether to accept or reject the Plan.

---

[19]     For the avoidance of doubt, 5:00 P.M. Atlantic Standard Time corresponds to 5:00 P.M. prevailing Eastern Time on July 27, 2022.

75.     The Debtor proposes establishing the following on-island collection sites to accept Ballots from holders of HTA General Unsecured Claims by hand delivery from **July 1, 2022 to July 30, 2022** (except weekends and federal holidays):[20]

| Locations in the Commonwealth<br>Accepting Ballots by Hand Delivery | |
| --- | --- |
| **Address** | **Hours (AST)** |
| Bianca Convention Center<br>Carr 2 KM 143, 1st Floor<br>Añasco, PR 00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Citi Towers<br>250 Ponce de León Ave, Suite 503<br>Hato Rey, San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Piloto 151<br>#151 Calle de San Francisco<br>2nd Floor, Suite L<br>Old San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, P.R. 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

76.     As mentioned above, in addition to accepting Ballots by regular mail, overnight courier or hand delivery, the Debtor seeks authority to accept applicable Ballots via electronic, online transmission through a customized electronic Ballot by utilizing the E-Ballot platform on Kroll's website.  Applicable holders may cast an E-Ballot and electronically sign and submit such

---

[20]   While the Solicitation Agent will use reasonable efforts to keep each on-island ballot collection site open for the full period set forth above, closures of one (1) or more collection sites may occur from time to time in response to COVID-19 and/or related government action.  The Debtor proposes decisions to close collection sites be made at the discretion of the Solicitation Agent, or as required by law, including local ordinances.  The locations below are subject to availability during the solicitation period, and the Debtor reserves its right to modify the list of such locations prior to the commencement of the Disclosure Statement Hearing.

electronic Ballot via the E-Ballot platform.  Instructions for casting an electronic Ballot can be found on the "Submit E-Ballot" section of Kroll's website, at https://cases.primeclerk.com/puertorico.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any electronic Ballot submitted in this manner and the creditor's electronic signature will be deemed to be an original signature that is legally valid and effective.  For the avoidance of doubt, holders of Claims in Class 15 (Eminent Domain/Inverse Condemnation Claims), Class 16 (HTA General Unsecured Claims), and Class 17 (HTA/GDB Claims) may cast Ballots electronically only via the E-Ballot platform.  Ballots submitted by electronic mail, facsimile or any other means of electronic submission not specifically authorized by the solicitation procedures shall not be counted.

77.     The Debtor proposes that, to have effect as an election of the form of distribution under the Plan with respect to the Bond Classes, each creditor eligible to make such an election must deliver its election instruction to the Nominee according to the instructions in the applicable Notice (**Schedules 3(a) – 3(h)**) in sufficient time for the Nominee to receive and effectuate the creditor's election through ATOP in accordance with the procedures of DTC by no later than **5:00 p.m. (Atlantic Standard Time) on July 27, 2022**, unless such time is extended (the "Election Deadline").  Any election of the form of distribution under the Plan executed, completed, and delivered on or before the Election Deadline shall be deemed to be made as of the Election Deadline.

78.     Any creditor who has delivered its election to the Nominee may instruct the Nominee to revoke such creditor's election and withdraw any securities that have been tendered with respect to an election, in sufficient time for the Nominee to receive and effectuate the creditor's revocation through ATOP in accordance with the procedures of DTC on or before the

Election Deadline.  After the Election Deadline, all securities that have been tendered with respect
to an election through DTC's ATOP will be restricted from further trading or transfer until the
Effective Date of the Plan.

**G.    Approval of the Notice of Non-Voting Status**

79.    The Debtor proposes to mail the holders of Claims in the following Classes an
appropriate notice indicating such claimholders are not entitled to vote to accept or reject the Plan
(a "Notice of Non-Voting Status"), forms of which are attached to the Disclosure Statement Order
as **Schedules 4(a)-4(e)**:

- Class 2 (HTA 68 Bond Claims (Ambac)

- Class 8 (HTA 98 Senior Bond Claims (FGIC))

- Class 12 (HTA 98 Sub Bond Claims (FGIC))

- Class 14 (HTA Moscoso Bond Claims)

- Class 18 (Section 510(b) Subordinated Claims)

- Class 19 (Convenience Claims)

80.    The Debtor also proposes to mail a Notice of Non-Voting Status to all known
holders of Claims for which the Debtor has served an objection or request for estimation as of the
Solicitation Mailing Date.

81.    The Notice of Non-Voting Status identifies the Class that will either receive no
distribution or is unimpaired under the Plan, or is otherwise ineligible to submit a vote on the Plan,
as applicable, and sets forth (i) the manner in which holders of Claims in such Class may obtain a
copy of the Plan and Disclosure Statement, (ii) the deadlines for filing objections to confirmation
of the Plan, and (iii) the time and date set for the Confirmation Hearing.  The Debtor requests that

the Court determine it is not required to distribute copies of the Disclosure Statement Order, Plan, or Disclosure Statement to any holder of a Claim listed above, except upon written request.

82.     With respect to holders of Claims in Classes 8 and 12, FGIC is entitled to vote on account of such Claims under the Plan.  Holders of Claims in Classes 8 and 12 shall be deemed to (A) deposit such holder's Pro Rata Share of the FGIC Plan Consideration, the CW/HTA Clawback Recovery, and the FGIC Insured Bonds and related FGIC Insurance Policies allocable to such holder into the applicable FGIC Trust, and (B) be deemed to have received its Pro Rata Share of the FGIC Plan Consideration and FGIC Certificates in consideration therefor.  All rights and remedies under and in accordance with FGIC Insured Bonds deposited into a FGIC Trust and the applicable legislative bond resolutions (other than with respect to the payment obligations of the Commonwealth or its instrumentalities) and the applicable FGIC Insurance Policies (solely as they apply and relate to such FGIC Insured Bonds) shall be preserved and remain in full force and effect solely to the extent necessary to preserve any claims relating to such FGIC Insured Bonds pursuant to the applicable FGIC Insurance Policy.  Accordingly, holders of Claims in such Classes will receive a notice, substantially in the form attached to the Disclosure Statement Order as **Schedule 4(d)**, informing such Holders of their treatment pursuant to the Plan and that FGIC is entitled to vote on their behalf to approve or reject the Plan.

83.     With respect to holders of Claims in Class 2, Ambac is entitled to vote on account of such Claims under the Plan.  Holders of Claims in Class 2 shall receive Cash in the amount equal to the Ambac Acceleration Price, in full and final satisfaction, release, and discharge of Ambac's obligations under the applicable Ambac Insurance Policy, and Ambac shall receive the Ambac Plan Consideration that would be otherwise allocable to such holder, its successors, transferees, or assigns on account of its HTA 68 Bond Claims (Ambac).  For the avoidance of

doubt, the Ambac Acceleration Price will include accrued and unpaid interest as of the date of payment. Upon such payment, Ambac's obligations under the applicable Ambac Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the applicable Ambac Insurance Policy or other documents related to the Ambac Insured Bonds. Accordingly, holders of Claims in such Class will receive a notice, substantially in the form attached to the Disclosure Statement Order as **Schedule 4(e)**, informing such Holders of their treatment pursuant to the Plan and that Ambac is entitled to vote on their behalf to approve or reject the Plan.

84. Finally, as described above, holders of Claims that are, as of the Voting Record Date, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the Administrative Reconciliation Order are not entitled to vote such Claims to accept or reject the Plan, unless such holder's claim has been allowed pursuant to an order of the Court on or before the Voting Deadline. Accordingly, holders of such Claims will receive a notice, substantially in the form attached to the Disclosure Statement Order as **Schedule 4(e)**, informing such Holders that they are not permitted to vote to approve or reject the Plan as a result of such Claims being subject to the Administrative Reconciliation Order, but notifying such Holders of their rights to file a motion pursuant to Bankruptcy Rule 3018(a) to request their Claims be allowed for voting purposes only.

## H.    Approval of Vote Tabulation Procedures

85. Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).  Further, Bankruptcy Rule 3018(a) provides, "[n]otwithstanding objection to

a claim or interest, the court after notice and hearing may temporarily allow the claim or interest

in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  Fed.

R. Bankr. P. 3018(a).

86.     Solely for purposes of voting to accept or reject the Plan and not for the purpose of

the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's

rights in any other context, the Debtor proposes each Claim within a Class of Claims entitled to

vote to accept or reject the Plan be in an amount determined by the following procedures:

    a.  If a Claim is deemed allowed under the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

    b.  If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated, or disputed, undetermined, or unknown in amount, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00; unless such Claim is disputed as set forth in subparagraph "h" below;

    c.  If a proof of claim was timely filed in an amount that is liquidated, non-contingent, and undisputed, such Claim is temporarily allowed in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph "h" below;

    d.  If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

    e.  If a Claim has been estimated or otherwise allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

    f.  If a Claim is listed in the List of Creditors as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court

prior to the Voting Record Date, the Debtor proposes such Claim not be entitled to vote to accept or reject the Plan;

g.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are not entitled to vote;

h.  If the Debtor has served an objection, request for estimation, or ACR transfer notice as to a Claim at least forty (40) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;[21]

i.  Any holders of Claims that are, as of the Voting Deadline, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the Administrative Reconciliation Order shall not be entitled to vote such Claims to accept or reject the Plan;

j.  For purposes of the numerosity requirement of Section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be aggregated based on the reasonable efforts of the Debtor and Balloting Agent as if such creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

k.  Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtor has objected to such duplicate Claims;

l.  If a proof of claim has been amended by a later filed proof of claim filed on or before the Voting Record Date, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtor has objected to such earlier filed Claim;

m.  Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may (but is not required to) contact voters to cure any defects in the Ballots and is authorized to so cure any defects;

n.  There shall be a rebuttable presumption that any claimant who submits a properly completed, superseding Ballot, or withdraws a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule

---

[21]  The Debtor proposes to complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to all known holders of Claims for which the Debtor has served an objection or request for estimation as of the Solicitation Mailing Date.

3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan, such that the earlier submitted Ballot shall be deemed superseded or withdrawn, as applicable;

o. Any Class that contains claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan.

87.     The following additional procedures shall apply with respect to tabulating votes in the Bond Classes:

a. For the purposes of tabulating votes, each Beneficial Owner, shall be deemed to have voted only the principal amount of its public securities as submitted through and reflected in ATOP, or, in the case of an Insurer, only the principal amount of its public securities as submitted through and reflected on the Ballot; any principal amounts thus voted may be thereafter adjusted by the Balloting Agent, on a proportionate basis with a view to the amount of securities actually voted, to reflect the corresponding claim amount with respect to the securities thus voted, including any accrued but unpaid prepetition interest or accreted principal, as applicable.

b. If conflicting votes or "over-votes" are submitted by a Nominee, the Balloting Agent shall use reasonable efforts to reconcile discrepancies with the Nominee.

88.     The Debtor believes the foregoing procedures will provide for a fair and equitable voting process.  If any creditor seeks to challenge the allowance of its Claim for voting purposes in accordance with the above procedures, the Debtor requests the Court direct such claimant to serve on counsel for the Oversight Board, counsel for AAFAF, and counsel for the statutory committees appointed in any of the Title III cases, and file with the Court (with a copy to Chambers) a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim (a "3018(a) Motion") in a different amount for purposes of voting to accept or reject the Plan on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. For the convenience of creditors and other parties in interest, the Debtor requests that the Court approve the form of 3018(a) Motion attached to the Disclosure Statement Order as **Schedule 6**, a copy of which shall also be made available on the Debtor's case website by Kroll.

89.    The Debtor further proposes, in accordance with Bankruptcy Rule 3018, that, as to any claimant filing a 3018(a) Motion, the claimant's Ballot not be counted unless temporarily allowed by an order issued by the Court prior to the Voting Deadline.[22]

90.    In addition, the Debtor requests the following procedures apply with respect to ascertaining the intent of certain creditors who cast votes or make an election with respect to the form of distribution under the Plan:

    a.    whenever a creditor casts more than one vote voting the same Claim(s) or submits more than one distribution election with respect to the same Claim(s) before the Voting Deadline or Election Deadline, as applicable, the last properly completed Ballot, voting instruction or election actually received before the Voting Deadline or Election Deadline, as applicable, shall be deemed to reflect the voter's intent and, thus, to supersede any prior Ballots, votes, or elections, as applicable;

    b.    whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but does not indicate either an acceptance or rejection of the Plan, the Ballot shall not be counted;

    c.    whenever a creditor casts a Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but indicates both an acceptance and rejection of the Plan, the Ballot shall not be counted;

    d.    if Assured does not make the Assured Election with respect to Classes 3, 7, and 11, whenever a creditor in such Class fails to timely make an election of the form of distribution under the Plan, then such creditor shall be deemed to have elected Assured Bondholder Election 2 pursuant to Section 25.1(b) of the Plan;

    e.    whenever a creditor in Classes 4, 9, and 13 (A) fails to timely make an election of the form of distribution under the Plan or (B) submits an election for less than all of its National Insured Bond Claims, then such creditor shall be deemed to have elected to receive the National Commutation Treatment pursuant to section 25.2(a) of the Plan;

    f.    whenever a creditor in Class 6 (A) fails to timely make an election of the form of distribution under the Plan or (B) submits an election for less than all of its Ambac Insured Bond Claims, then such creditor shall be deemed to have elected

---

[22]    The Balloting Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon the Balloting Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

to receive the Ambac Commutation Treatment pursuant to Section 25.4(b) of the Plan; and

g. to assist in the solicitation process, Kroll may contact parties that submit incomplete or otherwise deficient ballots to make a reasonable effort to cure such deficiencies; provided, however, that Kroll is not obligated to do so.

91.    The Debtor further proposes the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected, unless otherwise agreed to by the Debtor:  (i) any Ballot or vote through ATOP received after the Voting Deadline unless the Debtor has granted an extension with respect thereto; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (iii) any Ballot cast by a person or entity that does not hold a Claim in a Voting Class; (iv) any unsigned Ballot; (v) any Ballot without an original signature; provided, however, that any Ballot cast via the Balloting Agent's E-Ballot platform shall be deemed to contain an original signature; and (vi) any Ballot transmitted to the Balloting Agent by facsimile, electronic mail, or other means not specifically approved by this Court.

92.    The Debtor further proposes that, subject to any contrary order of the Court and except as otherwise set forth herein, it may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented (a) by an attorney's certification stating the terms, if any, associated with any such waiver, and (b) in the vote tabulation certification prepared by the Balloting Agent.

93.    Notice of this Motion will be provided by facsimile, electronic mail transmission, regular mail and/or hand delivery to the following parties: (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the bonds issued by the Debtor; (c) the entities on the list of creditors holding the 20 largest unsecured claims against the Debtor; (d) the statutory committees appointed in any of the Title III

44

cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (g) the Puerto Rico Department of Justice; (h) the United States Securities and Exchange Commission; and (h) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**No Prior Request**</u>

94.    No prior request for the relief sought in this Motion has been made to this or any other court.  This Motion amends and supersedes the Initial Motion.

[*Remainder of page intentionally left blank*]

WHEREFORE the Debtor respectfully requests an order (i) granting the relief sought herein, and (ii) granting such other and further relief to the Debtor as may be just and proper.

Dated: May 2, 2022
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen           /*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*

*/s/ Hermann D. Bauer        /*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*