# TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re:* <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del ESTADO LIBRE ASOCICADO DE PUERTO RICO *et al.*, <br><br> Deudores. <br><br> En el asunto de: <br><br> Maira Ivet Feliciano Rosado <br> N.º DE RECLAMACIÓN 10547 <br> 503 (9) - INDETERMINADO | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrada Conjuntamente) <br><br> **La presente reclamación guarda relación con el E.L.A.** |

## RÉPLICA

Comparece hoy, 2 de mayo de 2022, ante la honorable Laura Taylor Swain, en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, los Abogados de la Junta de Supervisión, Proskauer Rose LLP (Counsel for the Oversight Board) y los Abogados del Comité de Acreedores, Paul Hastings LLP (Counsel of the Creditor's Committee), y la Secretaría (Clerk's Office), en el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante la autoridad federal concernida), la parte reclamante como acreedor individual o titular de Reclamación, compuesta por la Sra. Maira Ivet Feliciano Rosado (en adelante Sra. Feliciano Rosado), con jubilación prematura por incapacidad no relacionada al empleo del Sistema de Retiro Para Maestros (SRM), también abogada (aunque sin revalidar aún el título), y vecina del Pueblo de Mayagüez, y en representación de su hijo unigénito, y en solicitud para incluir como reclamante, al menor L.A.R.F., hoy de 17 años, su única riqueza y esperanza de vida, por ser éste la víctima principal de una situación atroz de **«DESAPARICIÓN FORZADA»**. En su defecto, <u>el 27 de abril de 2018, la Sra. Feliciano Rosado entregó el Proof</u>

1

<u>of Claim personalmente en el Centro de Entrega de Añasco, Puerto Rico, del Edificio Bianca, cuya pregunta #6 lee como sigue: ¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? A lo que la Sra. Feliciano Rosado contestó: EL TRIBUNAL DE MAYAGÜEZ POR ROBARME A MI HIJO DESDE EL 14 DE DICIEMBRE DE 2011</u>. Esto significa que desde el principio fue la intención de la Sra. Feliciano Rosado traer a este pleito de clase la causa de **LIBERACIÓN DEL MENOR L.A.R.F.**, aunque en las preguntas 9 y 10, enfatizó como fundamento de su reclamación "Devolución de Cuotas Retenidas Ilegalmente" (preg. 9), por "Retención contra de mi voluntad" (preg. 10) (Ver Anejos 2018), contra la Federación de Maestros de Puerto. Añádase que en la pregunta 13 se especificó que se desconocía con exactitud la cantidad adeudada por la Asociación de Maestros.

Cabe destacar en este punto que la Sra. Feliciano Rosado también presentó la evidencia pertinente el mismo día en que entregó el Proof of Claim, o sea, el 27 de abril de 2018. Pasados los años, el 4 de octubre de 2021, ella entregó personalmente la BOLETA DE VOTACIÓN en el centro de Añasco (Ver Anejos 2021, documentos referidos con ponchador en rojo que se lee así COPY). En adición, ésta también presentó evidencia adicional y voluminosa que retrotrae los hechos del caso de marras, insoslayablemente, a la causa de su jubilación prematura y obligada, toda vez que el ente agresor que subvirtió la autoridad es el mismo Estado.

Así y todo, la Junta determinó (Ver Anejos 2022, documento titulado "If your Claim is Listed Here, One More of the Debtors Are seeking to Disallow Your Claim for the Reason Listed Below", con copia del sobre con matasello del correo del 9 de febrero de 2022). Resulta que la Corte había enviado una tarjeta con acuse de recibo intitulada: "Prime Clerk

2

Received Your Proof of Claim", con fecha del 5 de noviembre de 2021. Esto es prueba fehaciente de que la evidencia llegó en tiempo hábil a manos de los que ostentan la jurisdicción en este pleito de clase en la Corte Federal. Sin embargo, se le negó el Monto de la Reclamación Alegada (con $0.00), con un Tratamiento por Reclamo a ser desestimado, cuya base lee como sigue: "La Evidencia de Reclamo no se presentó a tiempo, ya que el Reclamante presentó el reclamo después de la fecha límite aplicable establecida en las Órdenes de Fecha Límite (Ver Anejo 2021, de Nov. 5, Prime Clerk Received Your Proof of Claim, Date Filed: 10/189/2021, Proof of Claim 179662)".

Pasados los años, resultó que, como fenómeno *in situ* del caso de marras, dicho crimen de lesa humanidad terminó siendo sufragado con la confiscación ilegal de la pensión de un empleado público, la Sra. Feliciano Rosado, que fue obligada a jubilarse prematuramente bajo el Sistema de Retiro para Maestros, precisamente, por la devastación que causó en su vida la «**TOMA DEL MENOR COMO REHÉN**», perpetrada por jueces corruptos, y que, ciertamente, no cumple con los estándares delineados que encuadran con la tipología actual.

Lo cierto es que en los pasados 10 años (2011-2022) mi hijo y yo hemos sido separados arbitrariamente, sin saber nada de la suerte y el paradero del uno del otro, en represalias contra mí por haber denunciado a la Jueza Lynnette Ortiz Martínez, quien actuaba en contubernio con la Lcda. Olga Longoria Vélez, la jefa del grupo criminal, entre otros, a la Oficina de Administración de Tribunales (OAT), allá para el 7 de mayo de 2011, y desde entonces el sistema judicial fue subvertido para perseguirme y encarcelarme y despojarme

3

de mi hijo, como mecanismo de TORTURA, venganza, chantaje, soborno, adoctrinamiento y silenciamiento, entre otros.

### A. LA CUESTIÓN MEDULAR:

La cuestión medular de la presente controversia que es de complicada sencillez, siendo que ya no es un *caso* sino una *causa* de **LIBERACIÓN Y DERECHOS HUMANOS**, tan provocadora que causa un "*shock*" a la conciencia del Pueblo puertorriqueño "*por reflejar una gravedad que trastoca violentamente los pilares de integridad y justicia propios de nuestro «MAGISTERIO»*", Pueblo v. Álvarez, 108 DPR 112 (1978), tratándose de la constatación de la espantosa crueldad de que injustificadamente todavía mantengan como **REHÉN AL MENOR L.A.R.F., HOY JOVEN-ADOLESCENTE, POR EXPLOTACIÓN CON FINES DE SERVIDUMBRE INVOLUNTARIA POR DEUDA AJENA[1] DE PENSIÓN ALIMENTARIA CONTRA SU «MADRE», PARA UNA NUEVA MODALIDAD DE TRATA DE MENORES EN EL TERRITORIO DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO (EN ADELANTE TRÁFICO INFANTIL O TRATA DE MENORES POR PENSIÓN ALIMENTARIA)**, que es bastante difícil de atajar. Esto es debido a que, entre otras cosas, la Convención Internacional para la Protección de Todas las Personas contra las Desapariciones Forzadas (ICPPED, por sus siglas en inglés), y otros instrumentos internacionales, no fueron diseñadas para atender este tipo de casos.

Esto hace necesario que esta Corte Federal y la Junta reevalúen los estándares de reparación de agravios establecidos para dar un aporte estructural importante al sistema de justicia de Puerto Rico que, finalmente, también es **REHÉN** de los grupos criminales internos, a lo que llamamos

---

[1] Artículo 159, SERVIDUMBRE INVOLUNTARIA O ESCLAVITUD, del Código Penal 2012, que fue derogado por el PS 1685 que enmienda el Código Penal, firmada como Ley 159-2020 del 28 de diciembre de 2020 en la 7ma Sesión Extraordinaria, efectiva inmediatamente. Deroga los Artículos 159 y 160, y los sustituye por los nuevos, a saber: Artículo 159-Trata Humana con fines de servidumbre involuntaria o esclavitud y otros tipos de explotación, y Artículo 160- Trata Humana con fines de explotación sexual. Define y tipifica claramente el delito de trata humana en sus distintas modalidades.

4

la «MAFIA», toda vez que los tribunales tienen sus sendas mafias descarriladuras de los procesos e instauradora del "Reino del Terror". ¡Las víctimas no tenemos adónde ir! ¡Todos tienen miedo! Es más, tuvimos la representación legal de 7 abogados, por sucesión o en conjunto, que nos traicionaron, cada uno a su modo, según obra del récord del caso epígrafe. La tragedia que siguió a estos acontecimientos todavía la están pagando estas víctimas genuinas, la madre y su hijo.

**PERDONADME** si no sé dirigirme correctamente ante esta honorable Corte Federal del Distrito de Puerto Rico y la JUNTA, ya que no tengo experiencia en la litigación. Pero, soy experimentada en quebranto, y ¡no tengo a adónde ir! Tampoco es mi intención faltarles el respeto a los jueces ni atacar su autoridad, sino el abuso de poder.

Por otro lado, no me considero una litigante de mala fe, según establece la 28 U.S.C., Sec. 1915(a)(3), *DuLaurance v. Telegen*, No. 15-1537, 2016 WL 10454553, at *1 (1st Cir. Nov. 30, 2016) (Good faith for purpose of Sec. 1915(a) (3) is judged by and objetive standard; i.e., whether the litigant "seek apellate review of any issue not frivolous") (Ver Anejos 2022, Order Concerning Application Filed by Maira I. Feliciano Rosado, 24 de marzo de 2022). No es frívolo luchar por un hijo. Una madre hace lo que sea por un hijo. Es una verdad que la sentimos en el mismo corazón. ¡Yo anhelo que me DEVUELVAN A MI HIJO!, ya que el Estado me **LO ROBÓ** por represalias. Mientras no se reconozca el delito no tengo ninguna posibilidad de prevalecer en los tribunales estatales, ni mucho menos entablar, ahora, una demanda contra el Estado.

Más áun, deseo vehemente y fervientemente que también liberen a otras madres que, al igual que yo, fueron a los tribunales a pedir auxilio y en representación de sus hijos,

5

huyendo de la violencia doméstica coexistente con el maltrato infantil, pero terminaron siendo revictimizados, despojados y asolados. Una injusticia contra un (1) sólo niño es una injusticia contra todos los demás niños de Puerto Rico.

Espero que prevalezca la VERDAD que, en sí misma, es «CRISTO». Él dice: - "…*Yo soy el camino, y la VERDAD, y la vida*" *(Juan 14:6).*

### B. PROPÓSITO PRINCIPAL DE LA OBJECIÓN:

Con el propósito de **OBJTAR MEDIANTE LA PRESENTE RÉPLICA**, comparecemos nuevamente con el presente caso que, sin lugar a dudas, no está desarticulado de las disposiciones estatales y federales, ni es inconexo con los objetivos de reparación de agravios por razón de las deudas en **«VENTAS DE CONSUMO»** contra el Gobierno del Estado Libre Asociado de Puerto Rico (E.L.A.), bajo las disposiciones de la *"Puerto Rico Oversight, Management, and Economic Stability Act"* o PROMESA, 48 U.S.C. §§ 2101-2241, Ley Pub. Num. 114-187, que fue promulgada por el Congreso de los Estados Unidos al amparo del Art. IV, Sec. 3, de la Constitución Federal, y por la cual se nombró la **JUNTA DE CONTROL FISCAL** (en adelante JUNTA) para hacer frente a la crisis económica del país, en virtud del **«NUEVO PODER POLÍTICO»** que representa. Un poder que, ciertamente, "*no debe reducirse a una negociación entre acreedores y deudores*". *Torres Martínez v. ELA*, 2017TA1970. Hay otras voces que claman por **AUXILIO Y JUSTICIA**. A saber, los clamores de los **NIÑOS**, los sujetos jurídicos más vulnerables de la sociedad, y que en las cortes, cada vez con mayor frecuencia, son ¡SACRIFICADOS al **dios MOLOC**[2]! del egoísmo de los poderosos e intocables del país, en elaltar

---

[2] El Sacrificio moderno de niños, 16-nov.-2020, Choice42, https://www.youtube.com/watch?v=Ec6u-rFWwzU (Levítico 18:21 (abominación); 20:2 (apedreará); 1 Reyes 11:7 (Templo); 2 Reyes 23:10; 17:17; 17:31; 19:18; 21:6; Jeremías 19:5, 32:35, 7:31; 32:35; 1 Crónicas 20:1; 2 Crónicas 3:4; Hebreos 7:27; 10:12).

6

del interés del poder y el dinero, cuyo ardiente fuego de honorabilidades corrompidas acallan sus gritos y los llantos[3] de los **NIÑOS** y su **«MADRES»** con crueldad espantosa, <u>aunque ello se desarrolle en la más pura y diáfana legalidad</u>.

Los **NIÑOS**, en la flor de su pureza e inocencia, siempre son los más SACRIFICADOS en el altar que devora. El sacrificio de niños[4] <u>NUNCA SE DETUVO</u>. Ya no los arrojamos al fuego, sino a las llamas de los experimentos ideológicos como la **«IDEOLOGÍA DE GÉNERO»** que dan bríos al mal y horrorizan a cualquier mente cuerda. La **CUSTODIA COMPARTIDA** es un ejemplo de ellos, "*<u>al estar fuera de toda lógica de protección y cariño natural y altruista hacia los hijos, así como del mantenimiento y continuidad de una sociedad</u>*"[5] que protege el pacto matrimonial. Más aquí se deja ver un nuevo **«TRAFICO INFANTIL POR PENSIÓN ALIMENTARIA»**. "*Habida cuenta de la naturaleza dinámica y cambiante de la* **«TRATA DE NIÑOS»** *(y sus respuestas) [...]*". Así lo advierten la OIT, UNICEF y la Iniciativa Mundial de las Naciones Unidas para Luchar contra la **TRATA DE PERSONAS** (UN.GIFT) en el *Manual de capacitación para combatir la* **TRATA DE NIÑOS Y NIÑAS** *con fines de trabajo* del 15 de septiembre de 2009. Tal *definición impone, ahora, una lista numerus apertus para* identificar *y atajar las nuevas formas de* **EXPLOTACIÓN INFANTIL PARA LA TRATA**, *como en el caso de autos.*

¡**LAS VENTAS DE CONSUMO SON LOS NIÑOS**! ¡**LOS NIÑOS**! ¡**MI HIJO, LEO**! Ellos son <u>**LA MONEDA DE CAMBIO**</u>. Con la **CUSTODIA COMPARTIDA** el **TIEMPO** fue convertido en la **MONEDA CORRIENTE**

---

[3]-"*Mas ¡ay de las que estén encintas, y de las que crien en aquellos días!*" (Mat. 24:19). -Es "*Raquel que lamenta por sus hijos, y no quiso ser consolada acerca de sus hijos [...]*" (Jer. 31:15).
[4]Ramos Jonathan, ¡ABOMINACIÓN! Documental: SACRIFICIO de NIÑOS en la antigüedad [ABORTO], Historiador Jonathan Ramos, YouTube. Jonathan es historiador, filósofo, escritor y profesor de la Universidad Católica de Salta. Autor de 4 libros: «Revelaciones Filosóficas», «La antigüedad en poemas», «Historia y concepto de la autoridad en el cristianismo» y «Fundamentación de la religión cristiana». https://www.youtube.com/watch?v=NQ_KoYHEqn4
[5]Velasco Plaza, Ana María, Artículo: "El Sacrificio Infantiles Rituales", Revista Actuall, 5/5/2019.
https://www.actuall.com/criterio/vida/sacrificios-infantiles-rituales-por-ana-maria-velasco-plaza/

7

que ahoga la piedad y la vergüenza de los padres[6] (el "Efecto Lucifer"), que buscan pasar más tiempo con sus hijos sólo por quedar liberados de la pensión alimentaria en premio. El interés ahoga el llanto de los niños que anhelan pasar tiempo de calidad con ellos. Dicha ley da bríos al mal y no sirve más que para burlar los anhelos del alma de los niños, hambrientos de amor y atención. Peor aún, esta ley es caldo de cultivo para la **CORRUPCIÓN JUDICIAL**.

Por más que se quiera dorar la ocurrido, en este caso se SACRIFICAN los derechos y libertades del menor **L.A.R.F.**, para proteger a quienes cometen los crímenes graves contra su vida, en el fuego de la lógica aplastante de las instrumentalidades del E.L.A., y las honorabilidades[7]. Unas honorabilidades corrompidas que todavía arrostran aquélla inmunda macha de su apresado niño indefenso, de entonces 6 a 7 años, que empaña su toga judicial, en su afán de imponerles, a él y a su madre, el **«RÉGIMEN DE LA CUSTODIA COMPARTIDA»**. Dicha utopía totalitaria, fue instrumentada en una sentencia *ad hoc* e inventada de 90 días de servicios comunitarios que no existe en Derecho, pero que todavía hoy se le sigue dando pleno vigor y eficacia desdoblada en la **SENTENCIA DE ALIMENTOS** (Ver Anejos 2011, 2017), que se usa como instrumento de persecución contra la Sra. Feliciano Rosado. Ambos decretos son nulos ab initio.

### C. JURISDICCIÓN:

Habiendo dicho lo anterior, reconocemos que el caso de marras plantea una causa de acción no contemplada hasta entonces por este foro *ad hoc* de la Corte Federal de P.R. De

---

[6] "EL EFECTO LUCIFER", como la gente buena se vuelve mala.
[7] Como decía Nicolás Nogueras (1995): "¿Qué residuo de honor queda en tanto "honorable" que trafica con la felicidad y bienestar de nuestro pueblo? ¿Cuánto honor puede haber en los honorables que con su mezquindad, su servilismo, sus ambiciones y sus debilidades se creen dueños de la vida y hacienda de los demás?" (Los Honorables I, Id., p. 55).

**8**

particular relevancia resulta traer ante la atención de aquellos que ostentan jurisdicción sobre **PROMESA**, al Título II, Sec. 205, de su ley habilitadora, ya que autoriza a la JUNTA, sujeta a su total discreción, a intervenir en "*los efectos de las leyes y órdenes judiciales del territorio en las operaciones del gobierno territorial*". Entre otras cosas, la JUNTA tiene PODER inherente para intervenir en casos que no guardan relación alguna con el presente pleito original, y *"*PARA HACER CAMBIOS ESTRUCTURALES EN EL ORDENAMIENTO JURÍDICO PUERTORRIQUEÑO*" (Dr. Emmanuelli Jiménez (2016). "*Añádase su poder para conciliar la diversidad de fuentes jurídicas y *establecer las nuevas pautas que regirán la vida de los puertorriqueños frente al Estado, sus derechos y la nueva organización política del gobierno local*". Palacios Rivera v. ELA, 2017TA1990. En su defecto, "*quien puede lo más, puede lo menos*". Posadas de P.R. v. Tourism Co. Of P.R., 478 US 328; 106 S. Ct. 2968; 92L. Ed 2d 266 (1986).

### D. ENMARCANDO EL CASO EN PROMESA:

Con ansiosa expectación de hallar justicia, la parte reclamante comparece con el propósito de enmarcar su causa de acción dentro de las garantías de la Ley PROMESA y su JUNTA, cuyos poderes son tan amplios, ya que "*Puerto Rico no es un soberano, sino que bajo el esquema constitucional de Estados Unidos es un territorio sujeto al poder de la cláusula territorial del Art. IV, Sec. 3 de la Constitución Federal*", Pueblo v. Sánchez, 193 DPR 594 (2020). Commonwealth of Puerto Rico v. Franklin California Tax-Free Trust, Et Al., 136 S. Ct. 1938 (2016); Puerto Rico v. Sánchez Valle, 136 S. Ct. 1863 (2016). *De modo que a aquellos que ostentan jurisdicción sobre PROMESA, reconozcan en esta controversia jurídica compleja que en envuelve la vida, libertad y propiedad del

9

menor L.A.R.F., tan sólo representa "*algunos de los cuestionamientos que exigen ser allanados en este MARCO JURÍDICO Y POLÍTICO NOVEL QUE TIENE EFECTOS INSOSPECHADOS sobre la organización política del territorio, los derechos y la vida de millones de ciudadanos americanos residentes en Puerto Rico*". *Pérez Díaz v. ELA*, et al, 2017TA1870. Máxime cuando "*el dominio de la Junta está en todos LOS PODERES INCIDENTALES que posee para lograr presupuestos balanceados y que Puerto Rico mejore su situación fiscal*"[8]. Por tanto, tal soberanía "*no puede reducirse a una negociación entre acreedores y deudores*", supra, cuando existen otros problemas de mayor envergadura que destruyen al Pueblo de Puerto Rico. En especial, a la grey infantil.

El objetivo crucial de la presente OBJECIÓN es DAR VOZ, a modo de ¡**UN GRITO DE AUXILIO**!, al joven-adolescente **LEO**, quien, bajo las circunstancias particulares de este caso, todavía es víctima de los graves delitos de **SECUESTRO Y DESAPARICIÓN FORZADA** (2011-2022) NO reconocidos por el Estado, lo que *a priori* le niega la justicia, y sin que a nadie se le importe algo. Máxime cuando el cautiverio silencioso e invisibilizado del menor, sumada a la violencia y represalias que se ejercen contra la madre-denunciante perseguida y encarcelada ya dos (2) veces, siendo inocente, a raíz de actos vinculados con corrupción en el Gobierno del E.L.A., en el ejercicio de su prerrogativa judicial[9], que no sólo impactan negativamente la economía del país, sino que crean una nueva vertiente de «**EXPLOTACIÓN INFANTIL**» para la «**TRATA**» en

---

[8] Díaz Sánchez, Grecia, Noticia: P.R.O.M.E.S.A.: Una derogación del Gobierno de Puerto Rico, Revista Jurídica, Universidad de Puerto Rico (2016), https://revistajuridica.uprrp.edu/inrev/index.php/2017/08/31/p-r-o-m-e-s-a-una-derogacion-del-gobierno-de-puerto-rico/

[9] Noticias Micro.juris- El Departamento de Justicia plantea que la pena por maltratar a un menor a través de una TERAPIA DE CONVERSIÓN no sea un término fijo de cinco años. Por el contrario, proponen que se establezca un intervalo en la pena de reclusión. Es decir «de tantos a tantos años» *para que la Judicatura pueda tener discreción para establecer la pena. 13 mayo 2021.

10

«VENTAS DE CONSUMO», con niños como mercadería[10], que precisa una solución urgente, aunque la JUNTA, en su defecto, <u>no sea el foro adecuado</u>.

En respuesta a lo anterior, la "Resilience Fund Supporting Community Responses to Organized Crime"[11], en su debate del 28 de agosto de 2020, intitulado: DESAPARICIONES FORZADAS: ¿QUIÉN ES EL VERDADERO PERPETRADOR?, advierte sobre las limitaciones y desarticulaciones de la ICPPED para proteger a las víctimas en escenarios donde la **GOBERNANZA CRIMINAL** continúa creciendo, y en lo pertinente citamos:

> "*<u>Las formas contemporáneas de DESAPARICIONES alrededor del mundo muestran cada vez más relevancia de revisar cómo entendemos el papel que juegan los actores no estatales y, en particular, los grupos delictivos organizados en estos actos</u>*".
>
> "*El derecho internacional y sus instrumentos reconocen las **DESAPARICIONES FORZADAS** mediante la participación del Estado; aun así, la comunidad internacional generalmente puede responsabilizar a los Estados, \*<u>pero solo si estas desapariciones forzadas son demostradas</u>*".
>
> "*<u>El hecho de que las autoridades, como autores probables, sean quienes tienen que comprobar estos crímenes, hace que numerosos casos [...] sean difíciles de catalogar como **DESAPARICIONES FORZADAS**</u>. El número de personas desaparecidas en estos contextos de **GOBERNANZA CRIMINAL** continúa creciendo, al mismo tiempo que los recursos disponibles para la protección de estas víctimas disminuyen*".
>
> "*El énfasis en la participación del Estado <u>no tiene en cuenta la gran cantidad de contextos criminales en los que ocurren la mayoría de las desapariciones, desde el tráfico ilícito de drogas hasta **la trata de personas**</u>*".
>
> "*Más de 330 solicitudes de beca de 67 países representaron LA VARIEDAD DE CONTEXTOS que permiten que ocurran desapariciones. Desde la desaparición de líderes indígenas y el secuestro de migrantes con fines lucrativos hasta EL ROBO DE NIÑOS PARA LA TRATA, estos contextos se presentan en diferentes matices y, a menudo, parecen desarticulados de las definiciones contenidas en los instrumentos internacionales*". Id.

---

[10]Otero, Herminio, Noticia: La mercadería más cruel y sin derechos, (19 de julio de 2012). https://www.panamaamerica.com.pa/opinion/ninos-la-mercaderia-mas-cruel-y-sin-derechos-basicos-828670

[11]https://resiliencefund.globalinitiative.net

11

No cabe duda de que estos hechos configuran los elementos del Artículo 159 SERVIDUMBRE INVOLUNTARIA O ESCLAVITUD, del Nuevo Código Penal 2012, que fue derogado por el <u>Proyecto del Senado 1685 que enmienda el Código Penal, firmada como Ley 159-2020 del 28 de diciembre de 2020 en la 7ma Sesión Extraordinaria, efectiva inmediatamente. Por cuanto al menos se lo priva arbitrariamente de su libertad dentro del espíritu de las leyes locales y convenios internacionales aplicables al crimen de lesa humanidad de **SECUESTRO**, contado desde el 14 de diciembre de 2011, con su eventual **DESAPARICIÓN FORZADA**, contada desde el 13 de mayo de 2013 hasta hoy. *Y, que, tan recientemente como en marzo de 2017 está siendo financiada y, en efecto, perpetuada con el descuento de las pensiones mensuales por jubilación del SRM de la supuesta madre-alimentante, lo que resulta confiscatorio e ilegal. Esto quiere decir que la Administración para el Sustento de Menores (ASUME) está enviando los pagos de dinero, con el método de pago directo de la pensión alimentaria, supuestamente a favor del menor L.A.R.F., a un **«PARADERO DESCONOCIDO»** fuera del E.L.A. y sus territorios (2017-2022), con el concomitante ocultamiento del paradero de éste, sustrayéndola *así de* la ley y siguiendo un patrón de crimen organizado</u>[12], *Pueblo v. Meliá*, 143 DPR 708 (1997), con la Jueza Mariluz Cruz Morales del Tribunal de Humacao.

---

[12]La jurisprudencia federal sobre la Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. sec. 1961 et seq., ha interpretado que una empresa o negocio, posee los términos característicos siguientes: (1) un propósito común o compartido entre las personas asociadas; (2) una organización cuyos miembros funcionen como una unidad continua, esto es, debe existir algún grado de continuidad_estructural y de individuos participantes, o una amenaza de continuidad futura, y (3) la existencia de una estructura diferenciada de los actos específicos que configuren el patrón de crimen organizado. -La LEY CONTRA EL CRIMEN ORGANIZADO Y LAVADO DE DINERO DEL E.L.A, 25 L.P.R.A. sec.971 et seq., establece que para que se configure un patrón de actividad de crimen organizado, se requiere por lo menos dos (2) actos de actividad de crimen organizado, realizados dentro de un período de diez (10) años. Los actos constitutivos de la actividad de crimen organizado son los siguientes: cualquier acto o amenaza relacionado con asesinato, secuestro, juegos ilegales, leyes relativas a la prostitución, incendio, apropiación ilegal, robo, obscenidad, soborno, extorsión o la venta, posesión y transportación de sustancias controladas o armas, sujeto a acusación criminal bajo las leyes del E.L.A. o las de Estados Unidos.

Aquí es donde, específicamente, **«LA TRATA»** y el **«CRIMEN ORGANIZANDO»** comienzan a fundirse, toda vez que la negación cruel y arbitraria de la ASUME a revelarle a su **«MADRE»** el lugar donde le están enviando el dinero de la pensión alimentaria a su hijo, que también supone el lugar donde lo esconden de ella con el apoyo directo de los agentes del Estado, a los fines de mantenerlo en cautiverio silencioso e invisibilizado a perpetuidad, en la forma de una **DESAPARICIÓN FORZADA** para la **TRATA DE MENORES** por explotación de su vulnerabilidad y dependencia por minoría.

Cónsono con lo anterior, desde el punto de vista de la conducta penalizada por la **Ley Contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico**, 25 L.P.R.A. sec. 971 et seq., *"para que se configure un patrón de actividad de crimen organizado, se requiere por lo menos dos (2) actos de actividad de crimen organizado, realizados dentro de un período de diez (10) años"*. Pueblo v. Meliá León, 143 DPR 708 (1997).

En este contexto, la A.S.U.M.E. está consignando un precedente muy siniestro de complicidad en cuanto al crimen de lesa humanidad de **DESPARICIÓN FORZADA DEL MENOR L.A.R.F.** <u>Ante la ausencia de pagos en concepto de pensión alimentaria, los tribunales y la A.S.U.M.E. han actuado como si tuvieran ante sí el caso de una **«MADRE»** que era una deudora empedernida; que se encontraba huyendo de tal obligación de tracto sucesivo.</u> Puesta a saco, demonizaron a la Sra. Feliciano Rosado para aplacar la conciencia de los empleados, funcionarios o agentes, cuyas actuaciones culposas o negligentes los hacen responsables por acción, omisión o encubrimiento, *Leyva vs. Aristud*, 132 DPR 489 (1993), de los actos que causaron daño o pusieron en riesgo

13

la salud e integridad física, mental y emocional de su hijo (2011-2022), y así racionalizar la consecuencia penal de encarcelarla, tal y como expone el delito intencional de incumplimiento de obligación alimentaria en el Art. 117 del Código Penal 2012, 33 L.P.R.A. §5176, en situaciones en las que, de ordinario, aplicaría imponerla. Cuando el presente caso NO ES un caso ordinario, sino ¡UNA GUERRA DE PODER MAFIOSO! muy encarnizada.

*Llegue ahora vuestra SÚPLICA delante de esta Corte Federal para que LIBEREN YA A MI HIJO LEO, ordenando al grupo criminal de secuestradores honorables su traslado inmediato al territorio del Estado Libre Asociado de Puerto Rico, antes de que la Junta de Supervisión Fiscal se vaya de Puerto Rico. Máxime cuando el congresista estadounidense Ritchie Torres, junto a sus colegas, tan recientemente como el 8 de abril de 2022, presentaron una nueva legislación bipartita que propone un proceso para la abolición de la Junta de Supervisión Fiscal, conocida como el "TRUST for Puerto Rico Act of 2022" (HR 7409), y, en efecto, nos quedemos nuevamente desamparados y a merced de un gobierno «CORRUPTO».

Cabe destacar que las siglas de la Ley P.R.O.M.E.S.A. resultan emblemáticas de las esperanzas y aspiraciones de un Pueblo oprimido, esclavizado y sitiado por los más déspotas y despiadados del Gobierno del E.L.A. *"Pero según su «PROMESA», nosotros esperamos nuevos cielos y nueva tierra, en los cuales mora LA JUSTICIA"* (2da Pedro 3:13). ¡DEVUÉLVANME A MI HIJO! ¡LIBEREN A LEO! ¡FREE LEO!

*Llegue ahora vuestra SÚPLICA delante de esta Corte Federal para que subsane la negación de la reparación correspondiente, aduciendo que la Evidencia de Reclamo no se presentó a tiempo, ya que el Reclamante sí presentó el reclamo

14

dentro de la fecha límite aplicable establecida en las Órdenes de Fecha Límite (Ver Anejo 2021, de Nov. 5, Prime Clerk Received Your Proof of Claim, Date Filed: 10/189/2021, Proof of Claim 179662), como ya se dijo.

POR LO QUE la parte reclamante solicita respetuosamente que se tome conocimiento de los hechos precedentemente expresados, y además SUPLICA que se conceda a estos Acreedores Individuales, que ya han sufrido bastante, cualesquiera otros remedios que se consideren justos.

Respetuosamente sometida,

*Maira J. Feliciano Rosado*
Maira Ivet Feliciano Rosado
Calle Elena Segarra #154
Sector El Maní
Mayagüez, P.R. 00682
mfeducderec@yahoo.com
(786) 371-6770
(787) 242-1063

Fecha: 2 de mayo de 2022,
En San Juan (Puerto Rico)

Con copia a la autoridad concernida:

Secretaría (Clerk's Office)
Tribunal de Distrito de los Estados Unidos (*United States District Court*), Sala 150 Edificio Federal (Federal Building), San Juan (Puerto Rico) 00918-1767

Abogados de la Junta de Supervisión (Counsel for the Oversight Board) Proskauer Rose LLP, Eleven Time Square Nueva York, Nueva York 10036-8299. Attn. Martin J. Bienenstock Brian S. Rosen

Abogados del Comité de Acreedores (*Counsel for the Creditors' Committee*)
Paul Hastings LLP
200 Park Avenue
Nueva York, Nueva York 10166
Attn: Lue A. Despins
James Bliss
James Worthington
G. Alexander Bongartz

15