UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtors[1] | PROMESA – TITLE III<br><br>Case No. 17-3283-LTS<br>(Jointly Administered) |

**Urgent Joint Motion Requesting an order for Approval of Modification to the Automatic Stay or in the alternative, requesting a Ruling or entry of Comfort Order as to a limited controversy regarding the applicability to Movant's claims of an Order for Mandatory Mediation**

**To the Honorable United States District Court Judge Laura Taylor Swain:**

**NOW COMES** active or former employees of the Commonwealth of Puerto Rico and that are accumulated in the group litigation cases captioned, **Francisco Beltran-Cintron,** Plaintiff Group collectively (the Beltran-Cintron Plaintiff Group(4,593 Plaintiffs); CASP case no. 2021-05-0345], (originally CFI case no. K AC2009-0809; **Abraham-Giménez**, et al (1,046 Plaintiffs) collectively (the Abraham Giménez, Plaintiffs Group; CASP case No. 2021-05-0346 (Originally CFI case No. K AC 2013-1019; (Claim 22819); **Prudencio Acevedo-Arocho**, et al (1,601 Plaintiffs) CFI Case No. 2005—5022. Also, joins the above wage claimants, a group of active or former employees of the Commonwealth of Puerto Rico, that are accumulated in the group litigation

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

captioned, **Alejo Cruz-Santos,** et al (262 Plaintiffs') collectively (the Cruz Santos Plaintiff Group) CASP case No. 2002-06-1493; **Delfina López-Rosario**, et al Collectively The Lopez-Rosario Plaintiffs Group); (1,345 plaintiffs) CASP case No. 01-10-372; (Claim 15708) and **Madeline Acevedo-Camacho** et al (2,818 Plaintiffs) CASP no. 2016-05-1340 (originally CFI case No. KAC2007-0214) ("Movants"), and together, through the undersigned counsel and in support of this motion, states as follows:

## I.    JURISDICTION AND VENUE

1. The United States District Court for the District of Puerto Rico (the "Court") has subject matte0r jurisdiction over this matter pursuant to PROMESA section 306(a).

2. Venue is proper pursuant to PROMESA section 307(a).

3. The statutory predicate for the relief sought herein is Bankruptcy Code sections 362(d)(1) and 105(a), made applicable to these Title III cases by PROMESA section 301(a).

## II.    RELEVANT BACKGROUND

4. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico ("FOMB") filed a voluntary petition on behalf of the Commonwealth of Puerto Rico pursuant to section 304(a) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").

5. The relationship between the Debtor, and Movants involves an extensive and complex litigation that have been undergoing for more than a decade, and has been conducted before the state court and before the Commonwealth of Puerto Rico Public Personnel Appeal Commission (CASP), and were the claimants seek to recover unpaid wages earned, due to the Debtor's unlawful implementation of Commonwealth and

federal minimum wage laws. The respective cases are pending resolution and accumulates more than 11,000 active or former government employees[2].

6. In the referenced civil actions Movants contends that, as a direct result of the application of the Memorandum 5-86, issue by the Commonwealth Central Personnell Office,(OCAP), the pay scale applicable to Movants employees, was made inoperable since employees assigned up to pay scale 17 of the Retribution Plan, who perform more complex tasks and are required to have a higher level of education and experience, received the same salary of janitors and workers, in clear disregard of the dispositions established in the Uniform Retribution Law of 1979 and its Regulation. Movants further contends that, because all claimants are similarly situated as the other co-workers who prevailed in their claims, under the application of Santiago Declet v Family Department, 153 DPR 206 (2001) doctrine and the constitutional principle of equal pay for equal work, their regular salaries must be corrected.[3]

7. Further, because Movants also contends that the Government, by applying the illegal wage adjustment method established in General Memorandum # 5-86 to implement the minimum wage law and its amendments, obtained an unjust enrichment, by disregarding the express dispositions and guidelines established by Law No. 5 of November 20, 1975, which requires the implementation of a less onerous

---

[2] At present, the cases of Francisco Beltran-Cintron, Plaintiff Group; Abraham-Giménez, Plaintiff Group and Prudencio Acevedo-Arocho Plaintiff Group, despite of a prior stipulation granting the Modification to the Automatic Stay, Movants were subjected to a second stay Motions, filed by the Oversight Board at the respective forums.

[3] See judgments entered in the litigation caption: Juan Pérez Colon et als v DTOP (324 Plaintiffs), case no. K AC1990-0487; Carmen Socorro Cruz Hernández et al v Depto. Familia et als (334 plaintiffs), case no. K AC1991-0665; Nilda Agosto et als v Depto. Familia, et als (729 Plaintiffs) case no. K PE2005-0608, and Jeanette Abrams Diaz et als v DTOP, ( 1,084 Plaintiffs) case no. K AC 2005-5021.

method of shift reduction, if determined that the funds needed to implement minimum wage were insufficient.

8. Regarding the case of Acevedo Arocho, Prudencio – must be brought to the consideration of the Honorable Court that an additional cause of action was accumulated in the complaint regarding 59 Auditors and/or Tax specialists, based on the fact that they were arbitrarily excluded from a legislative pay raise given by the joint Resolution No. 499 of Aug. 15, 1999, and Resolution No. 49 of January 4, 2003, and which was approved in view of the reorganization of the "Bureau" where the Plaintiffs worked, and the resulting increase in responsibilities of the respective positions. Also, because said pay increase was granted by the Commonwealth through the Stipulation entered with the majority of the Bureau employees, who had pending wage claims before the Administrative forum [CASP], based on identical cause of action and operational facts, on account of the mentioned reorganization, in the case of Raúl Hernández-Bujosa *et al* v. Departamento de Hacienda, Case Num. CL RET99-05-1306, and based in the Supreme court decision of Santiago Declet,

9. In view of the controversy above described, the appearing wage claimants groups, since have in common the same cause of action, hereby submits this joinder ("Joinder"), as they share the view that the Oversight Board have not comply in good faith with the Administrative Reconciliation of Claims (ACR) and Alternative Dispute Resolution (ADR) procedures, since the group claims have been arbitrarily excluded from mentioned procedures and their claims against debtor remains outstanding, and respectfully requests the Court take notice of this Joinder [4].

---

[4] The Cruz – Santos, Plaintiff Group, López-Rosario Plaintiffs Group and Madeline Acevedo Plaintiff Group, obtained a consensual modification of the lift of stay order and are currently pending before the Public Service Appellative Commission of Puerto Rico, (Comisión Apelativa del Servicio Público, (CASP).

## III. ARGUMENT

10. On March 12, 2020, and prior request from the Debtors, this Court entered an Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief [ECF No. 12274] (the "ACR Order").

11. The ACR Order further authorized the Commonwealth of Puerto Rico (the "Commonwealth"), together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") to resolve certain Pension/Retiree Claims, Tax Refund Claims, **Public Employee Claims, and Grievance Claims** (each as defined in the ACR Order) utilizing the Debtors' existing "Administrative Claims Reconciliation"

12. After a time consuming and burdensome partial analysis of the notices filed by the Oversight Board concerning the claims transfered to the Administrative Claims Reconciliation procedure, including the "Tenth Administrative Claims Reconciliation" (ACR) Status Notice at Docket Entry No. 20461, the Movants were able to identify, among the thousand of claims transferred, a small group of individual claims from the litigation captioned Beltran-Cintron plaintiff group, and from the litigation captioned Madeline Acevedo Camacho, and which at present are being considered for settlement.[5].

13. Similarly, on April 1, 2020, and prior request, this Court entered an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief [ECF No. 12576] (the **"ADR Order"**). The ADR Order authorized the Commonwealth of Puerto Rico (the "Commonwealth"),

---

[5] For a partial identification of the individual claims that have been transferred to the ACR process, that belong to the litigation captioned Beltran Cintron plaintiff group, and at present are in the stage of settlement evaluation, see claims no. 48526; 30714; 6070; 71643; 60868; 60530; 46298; 9975; 38502; 98155; 30714; 7401; 178744; 14186-1; 26103-1; 11177-1; 111363; 79269; 7924-1. Also in reference of individual wage claims that are included in the group litigation caption Madeline Acevedo Camacho and at present are in the stage of settlement evaluation, see claims no. 6899; 177751 and 35262.

together with the Commonwealth, HTA, ERS, and PREPA, (the "Debtors") to resolve general unsecured claims, **including employment-related litigation claims**, using the procedures approved by the court in the ADR Order [ECF No. 12576-1 as amended, Docket No. 15505] ("ADR Procedures").

14. Likewise, in accordance with the ADR Procedures, the Oversight Board have transferred hundreds of general unsecure claims to the ADR Procedures, and have served upon the claimants associated with the ADR Notice, confidential offers of settlement (the "Offer"). The ADR Notice permitted claimant to designate whether claimant accepted the Offer, rejected the Offer, or submitted a counteroffer. Also, the procedure provides that, if the parties reach and Impasse Regarding the Proof of Claim, the procedure requires to notify the Court, that offer has been rejected, and the Claim is ready to proceed to Evaluative Mediation, as set forth in Section 3, of the ADR Procedures.

15. Upon an analysis of the Tenth Alternative Dispute Resolution Status Notice at Docket entry 20205, also can be determined that the Oversight Board transferred a small number of individual claims included in the group litigation caption of Madeline Acevedo Camacho, and litigation caption of Francisco Beltrán-Cintrón plaintiff's group, and that at present, are in a stage of "offers and exchange".[6]

16. Although the Debtors decision to establish an ACR or ADR procedure is voluntary, the incentives to do so include improved relations with employees and

---

[6] For the identification of individual claims transferred to the ADR procedure, that relates to the litigation caption Madeline Acevedo Camacho, that are at the stage of "offers and exchange" see claims no:18494;;25052; 154211; 157395;162130; 27812; 36686; 80639; 31054; 154224; 162130; 42306;42309;80639. Likewise, for identification of individual claims transferred, from the litigation caption of Francisco Beltrán Cintrón plaintiff's group, see claims No.: 16070; 23633; 52082; 26107; 32116; 32686; 33322; 121790; 28763; 39412; 121790; 157395; 45925; and 78824.

opportunity for successful restructuring, since as an operating government the Commonwealth has the responsibility to continue providing services for its citizens.

17. Nonetheless, is clear that, once the Commonwealth establishes the referenced programs, Movant's are entitled to adequate protection, since the Debtor have the responsibility to administer them, in accordance with the minimum good faith standard. This, because the above procedures, provides a powerful tool, and flexible mechanism and the authority to settle massive employee's wage claims, in the interest of judicial economy and prevent the resulting extraordinary expenses of frivolous litigation.

18. Movants herein submits that when examined the transfer determinations of employees related claims to the ACR or ADR procedures, and proposed settlements, they are persuaded that the Oversight Board has abused its discretion, since have arbitrarily excluded more than 11,000 wage claims asserted by Movant's groups, and they remain outstanding, with the limited identified exceptions.[7]

19. In view of the circumstances above informed and to the extent that this Court has not compel the Commonwealth to provide the Movants with adequate protection, the failure to provide such adequate protection constitutes "cause" for relief from the automatic stay under Section 362 of the Bankruptcy Code.

**20.** Also because, in the present case the Movant's claims satisfy the relevant factors courts consider and weigh to authorize lift of stay, based on the factors first identified by the Second Circuit in, In re: Sonnax Indus., Inc., 907 F.2d 1280, 1285-86 (2d Cir.

---

[7] Here is important to consider that courts generally consider four factors to determine the reasonableness of settlements, see Jeffrey v Desmand, 70 F 3d 183, 185 (1 st Cir. 1995). See also TMT Trailer Ferry, 390 U.Sat 424, 88 S.Ct. 1157 (for a proper reference, and similar mix of factors as "relevant to a full and fair assessment of the wisdom of proposed settlements. Also, see as persuasive, Czyzewiski v Jevic Holding Corp, 137 S. Ct. 973 (2017) were the Supreme court makes clear that a debtor-in possession may not use a structure dismissal of a Chapter 11 case, to make distributions from unencumbered assets to junior claimants in violation of the rules of priority.

1990), since "The party moving for the automatic stay to be lifted need not prove a plurality of these factors. The Courts will generally rely '[on] only a few factors . . . to determine that sufficient cause exist[s] to lift the stay.'" C & A, S.E. v. P.R. Solid Waste Mgmt. Auth., 369 B.R. 87, 95 (D.P.R. 2007) (alteration in original) (citing Goya, 159 B.R. at 95-96).

21. In the instant cases, and as applicable here, among the Sonnax factors that weigh favorably towards lifting the automatic stay on behalf of the Movant's, is the high probability of success. The final prong of this analysis requires just a minimal showing that the Movant's claims are not "frivolous." Id. Even slight probability of success on the merits may be sufficient to support the lifting of the automatic stay for cause in appropriate cases. In re Continental Airlines, Inc., 152 B.R. 420 (D. Del. 1993).

22. To said effect, Movant's submits that, when is considered that their cause of action is based in the same operational facts, were co-workers obtained four favorable judgments in their favor, and is also considered, that the Movant's are similarly situated, in relation of the prevailing co-workers, they have a high probability to prevail on the merits, since is highly persuasive the Supreme Court's decision in Santiago Declet v Departamento de la Familia, 153 DPR 206 (2001). Particularly, due to the constitutional application of equal pay for equal work, and based on the fact that the Debtor's approved new pay scales to comply with the new minimum wage that have come in effect, to restitute affected employees the portion of the regular wages illegally withheld.

23. Under mention circunstances, Movants submits that, the application of an Extended Stay will not only delay the proceedings in the underlying Movants cause

of action indefinitely, but will work as a further constitutional injury to Petitioners, inasmuch as it has operated to deprive Petitioners—without any process—of the right to have their claims of constitutional violations adjudicated by a competent court.

24. Therefore, Hardship Will Result, if the Stay is not modified to allow Movants to continue to pursue their claims against the Debtor in the forums of origin.

25. Also because "The automatic stay was never intended to preclude a determination regarding the **fact and amount of the debtor's liability.** It was merely intended to prevent a prejudicial dissipation of a debtor's assets. A lifting of the stay to allow a plaintiff-creditor to, **1)** properly adjudicate, their respective wage claims pursuant to PR wage laws and, **2)** allow Movants to establish and determine amounts of their individual claims, in an efficient and equitable manner, under the applicable statutes, is in the interests of judicial economy.

26. Therefore, justice will be served by lifting the stay to permit Movants claim to continue in the Commonwealth Appeal Public Service Commission (CASP), and/or before a judge who is familiar with the Commonwealth wage laws and regulations, and has special expertise to hear them. For all the reasons stated above, Movants respectfully request an approval of an Order for the modification to the Automatic stay in the above-identified litigation, in order to allow the case to proceed, to their final resolution before the PR court or administrative forum.

### IV. CERTIFICATION AS TO URGENCY OF MATTER

27. Pursuant to LBR 9013-1(a), the undersigned certify that have carefully examined the matter and have concluded that there is a true need for an urgent hearing, the urgency has not been crested through a lack of due diligence, since Movants have unsuccessfully made multiple bona fide efforts to persuade the Oversight Board to enter

9

a consensual stipulation for the modification of the Automatic Stay, or in the alternative to transfer all the group litigation claims, to the above identified procedures and resolve the claims collectively, through a class action like proceeding, since will be more efficient than handling them in a piece-meal fashion through the ordinary claims process, but no agreement was possible.[8]

28. In addition, because this court entered and Order Regarding Matters that may be resolved in connection with the Modified Eighth Amended Plan, following the Plan's effective date, at Docket entry 20341, and were the Oversight Board was required to submit a list identifying the currently outstanding asserted claims and Disputed claims that will be subject to resolution and provide an explanation of how the matter shall be resolved. However, when the Movants verified the corresponding response, at Docket entry 20445, have ascertained that the Debtor has failed to identify Movants claims in the list of pending relevant matters that remains outstanding.

29. Consequently, is urgent this court, under inherent authority of § 105 (a), grand the present Motion, to fashion equitable remedies . . . and take any action that is necessary or appropriate `to prevent the abuse of process,… when it will avoid "extensive and needless satellite litigation, since is clear that, if the Modification of the stay is not granted, could adversely affect Movants substantive rights.

30. Also, because in the present case, not only must be considered the extraordinary number of affected employees, but the fact that Movants wage claims relates to a

---

[8] See the supplemental answer to claims No. 7401; 30714 and 6899, included as Exhibit I to III, were Movants requested the Oversight Board representatives, to resolve the group wage claims efficiently and more economically by providing a class treatment. To illustrate how some courts has threated WARM Acts claims under class action like procedures, since dramatically reduce expenses and timeline of case management, see: TWL Corp., 712 F.3d at 904 (Graves, J., concurring). Also see In re Dewey & LeBoeuf, LLP, 487 B.R. 169, 179 n.8 (Bankr. S.D.N.Y. 2013) and In re Connaught Grp., Ltd., 491 B.R. 88, 93-94 (Bankr. S.D. N.Y. 2013) (quoting Guippone v. BH S & B Holdings, LLC, No. 09 Civ. 1029(CM), 2011 WL 135041, at *2 (S.D.N.Y. Mar. 30, 2011)).

Debtor's violation of state and federal wage laws, and the tensions between Debtors and employees will continue and will be more difficult to retain capable management, and employees and the reorganization would be more difficult to archive.

31. Because here, the Movant's have established, by the analysis of the Oversight Board's ACR and ADR transfer notices, that they have been unjustly excluded from the mentioned procedures, (with few exceptions) clearly, said determination violates the requirements of 11 U.S.C. § 1123(a) (4), by not Providing Movants Equal Treatment, within the same group Claims litigation, said determination "falls below the lowest point in the range of reasonableness and is not justified under a sound business judgment.

**32. Pursuant to the Sixteenth Amended Case Management Procedures Notice, Case Management and Administrative Procedures Order, at docket entry 20190,** the Movants hereby certifies that prior to filing the instant Motion, the subscribing attorney made bona fide efforts to enter a consensual stipulation for approval of Modification to the Modification of the Stay and in the alternative, refer Movants claims to the ACR or ADR process and mandatory mediation, and made reasonable good faith communications and conferred several times with Debtors attorneys telephonically and thru emails, without being able to reach an agreement.

### V. RELIEF REQUESTED

33. By this Motion Movant's seek entry of an order, substantially in the form of the Proposed Order, (i) for Approval of Modification to the Automatic Stay, in regards the group wage litigation cases below identified, and allow that the pending litigation proceed to its final resolution, before the original state or administrative forum:

(1) Beltrán-Cintrón,et. als v Family Dept. et. als. [CASP case No. 2021-01-0345
(2) Abraham-Giménez, Jorge L. et.als. v. DTOP,[CASP case No. 2021-01-0346
(3) Acevedo-Arocho, Prudencio y/o (1905) v Depto. Hacienda, (CFI) Case No.

K AC 2005-5022.

**34. In the alternative, and in an abundance of caution,** and as this matter can be addressed in a more economical manner, Movants request, pursuant to this Court's inherent authority, under § 105 (a), to enter an order to refer Movant's group wage claims to the ADR mandatory mediation. This request is particularly proper, because to the extent the Board continue negotiating with a selected limited number of individual group wage claimants, as above identified, with the transfer of the remaining group wage claims will be achieve PROMESA's core purpose: "centralizing all disputes concerning government employees claims so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings.

**WHEREFORE,** Movants respectfully requests that the Court to enter an Order for the Modification to the Automatic stay in above identified group litigation, in order to allow the pending litigation to proceed to its final resolution at the forum of origin.

In the alternative, Movant's seeks from this Court to:

A. Enter a ruling or comfort order finding that Oversight Board is acting in contravention of the Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq., by arbitrarily excluding Movants claims from the ACR or ADR procedures;

B. Set a response time of 15 days for the Financial Oversight and Management Board to file its response, to address any or all of the issues raised in the Motion, and address any related issues that remain for resolution by this Court.

C. Schedule the matter at its earliest date outside the scheduled omnibus hearing dates;

D. That the Court provide any other relief in favor of Movants it deems proper.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY,** that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this 3 day of May, 2022.

**ATTORNEY FOR THE WAGE CREDITORS**

By: /s/ **IVONNE GONZALEZ-MORALES**
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
PO BOX 9021828
SAN JUAN, PR 00902-1828
Telephone: (787) 410-0119
E-mail: ivonnegm@prw.net