**Tribunal Superior de Utuado, PR**
**Mrs. Nilsa Yambo, Sec. Ofic. De Archivo**
**Utuado, PR**
**P.O. Box 255**


**Buenos días;**
**Saludos**


Por este medio me dirijo a usted para solicitarles los documentos legales relacionados al caso num.
**#1      L.A.C. 1988-1037**
**#2      L.A.C. 1999-0647**

Sobre extorción y soborno por el Ex – alcalde de Lares, PR Aníbal Pagan Centeno de

$650,000.00 a mi persona por el proyecto que yo construía en Sector La Matilde, Lares PR de

250 solares de Vivienda de interés social.

Para el Dpto. de la Vivienda, San Juan PR, División de Viviendas Rural.

**Victor O Henson Bousquets, Pres.**
**Henson Construction Corporation (n/a)**
**PO Box 78**
**San Sebastián, PR 00685**
**Tel. (787) 609-6720**
**Cel. (939) 865-4070**

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO

SALA DE ARECIBO

| | | |
|---|---|---|
| VICTOR O. HENSON BUSQUETS | * | CIVIL NUM. CS88 - 610 |
| Demandante | | |
| Vs. | | SOBRE: |
| ADMINISTRACION DE VIVIENDA RURAL; COSME HERNANDEZ SILVA | | DAÑOS Y PERJUICIOS, VIOLACION DE CONTRATO |
| Demandados | | GC 34 |
| | * | |

D E M A N D A

AL HONORABLE TRIBUNAL:

Comparece el demandante de epígrafe por conducto de su abogado que suscribe y muy respetuosamene, EXPONE, ALEGA Y SOLICITA:

1. Con fecha del 4 de marzo de 1988 la Administración de Vivienda Rural, a través de uno de sus funcionarios, giró carta certificada al demandante, en la cual le indicaba que no pagarían los gastos incurridos por éste al habérsele adjudicado el desarrollo de un proyecto denominado Extensión Comunidad La Matilde, Lares, Puerto Rico.

2. El demandante contrató con el demandado, Cosme Hernández Silva, y con otros funcionarios de la Administración de Vivienda Rural, el desarrollo de 250 solares para ser repartidos en usufructo y luego del demandante haber incurrido en cuantiosos gastos los cuales incluyen opción por la finca a desarrollarse, mejoras en el terreno, estudios de suelo y percolación, planos y demás gastos, los cuales ascienden a una suma de alrededor de $220,000.00, los demandados se negaron a honrar el compromiso por motivos puramente personales.

3. El demandante por instrucciones del demandado, Cosme Hernández Silva y otros funcionarios de la Administración de Vivienda Rural, gestionó ante la Junta de Planificación, ante la Oficina del Gobernador, ante el Municipio de Lares, ante el Departamento de Agricultura, ante el Department of the Army, ante la Junta de Calidad Ambiental y ante las demás agencias pertinentes con el visto bueno de los demandados, el desarrollo de este proyecto.

4. La actitud de los demandados ha ocasionado graves perjuicios al demandante, ya que éste, además de incurrir en los gastos antes mencionados, no ha podido pagar a los suplidores de servivios, por lo que se ha afectado su crédito y reputación, daños ascendentes a una cantidad no menor de $250,000.00.

-2-

POR TODO LO CUAL, muy respetuosamente se solicita de este Honorable Tribunal declare CON LUGAR la presente demanda y en su consecuencia condene a los demandados al pago solidario de las cantidades que se reclaman en la demanda, los gastos y honorarios de abogado que generen éstos.

Respetuosamente sometida.

En San Sebastián, Puerto Rico, a 4 de abril de 1988.



LCDO. NELSON D. SOTO CARDONA
Apartado 813
San Sebastián, PR  00755
Tel. 896-1246



EN EL TRIBUNAL SUPERIOR DE PUERTO RICO

SALA DE ARECIBO

| | | |
|---|---|---|
| VICTOR O. HENSON BUSQUETS | * | CIVIL NUM. CS-88-610 |
| Demandante | | |
| Vs. | | SOBRE: |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO; COSME HERNANDEZ SILVA | * | INCUMPLIMIENTO DE CONTRATO y DAÑOS Y PERJUICIOS |
| Demandados | | |

DEMANDA ENMENDADA

AL HONORABLE TRIBUNAL:

Comparece el demandante de epígrafe por conducto de su abogado que suscribe y muy respetuosamente, EXPONE, ALEGA Y SOLICITA:

1. Con fecha del 4 de marzo de 1988 la Administración de Vivienda Rural, a través de uno de sus funcionarios, giró carta certificada al demandante, en la cual le indicaba que no pagarían los gastos incurridos por éste al habérsele adjudicado el desarrollo de un proyecto denominado Extensión Comunidad La Matilde, de Lares, Puerto Rico.

2. El demandante contrató con el demandado, Cosme Hernández Silva, y con otros funcionarios de la Administración de Vivienda Rural, el desarrollo de 250 solares para ser repartidos en usufructo y luego del demandante haber incurrido en cuantiosos gastos los cuales incluyen opción por la finca a desarrollarse, mejoras en el terreno, estudios de suelo y percolación, planos y demás gastos, los cuales ascienden a una suma de alrededor de $220,000.00, los demandados se negaron a honrar el compromiso por motivos puramente personales.

3. El demandante por instrucciones del demandado, Cosme Hernández Silva y otros funcionarios de la Administración de Vivienda Rural, gestionó ante la Junta de Planificación, ante la Oficina del Gobernador, ante el Department of the Army, ante la Junta de Calidad Ambiental y ante las demás agencias pertinentes con el visto bueno de los demandados, el desarrollo de este proyecto.

4. La actitud de los demandados ha ocasionado graves perjuicios al demandante ya que éste, además de incurrir en los gastos antes mencionados, no ha podido pagar a los suplidores de servicios, por lo que se ha afectado su crédito y reputación, daños ascendentes a una cantidad no menor de $250,000.00.

5. La Administración de Vivienda Rural es una dependencia del Estado Libre Asociado de Puerto Rico, la cual no tiene capacidad jurídica para demandar o ser

Civil Núm. CD-88-1037
            CD-88-647
página 2

(1), Dos (2) y Tres (3), respectivamente, por estipulación de las partes.

Solicitó además la parte demandante que se le permitiera incluir como parte de su prueba testifical la deposición que se le tomara al Sr. Ramón Martínez Escudero el 5 de marzo de 1991, en sustitución de su testimonio oral por, alegadamente, este haber fallecido. Conforme a la Regla 29.1(c) de las de Procedimiento Civil de Puerto Rico se permite el uso de una deposición en sustitución del testimonio de un testigo no disponible. Sin embargo, la no disponibilidad del testigo tiene que probarse a satisfacción del Tribunal. El Tribunal **no puede tomar conocimiento judicial del fallecimiento de una persona**, según solicita la parte demandante. Por tal razón, el Tribunal declara NO HA LUGAR la solicitud del demandante en torno a la deposición del Sr. Martínez Escudero.

La parte demandante y la parte demandada anunciaron sus respectivos testigos, los cuales una vez juramentados fueron excusados de sala conforme a las reglas pertinentes.

Procedió entonces la parte demandante a presentar su prueba, la cual consistió de amplia prueba testifical y documental. Concluída la presentación de la prueba por la parte demandante, los demandados presentaron Moción de "Non-Suit".

## II.  DETERMINACIONES DE HECHOS

1. La Administración de Vivienda Rural publicó varios edictos en el periódico El Mundo para las fechas del 29 de septiembre de 1986, 24 de octubre de 1986 y el 27 de octubre de 1986 convocando, a las personas interesadas en someter proyectos de desarrollo de vivienda conforme al Programa "Turnkey", a unas reuniones a celebrarse el 17 y 31 de octubre de 1986.

2. Los edictos convocaban a personas interesadas en el desarrollo de proyectos "Turnkey" en varios municipios entre los cuales **no estaba incluido el Municipio de Lares**.

3. El demandante, Victor O. Henson Busquets, asistió a las reuniones del 17 y 31 de octubre de 1986 donde recibió

Civil Núm. CD-88-1037
CD-88-647
página 3

orientación en torno a los trámites a seguir para la aprobación
de un proyecto "Turnkey".

4. En dichas reuniones se le informó claramente a los
asistentes que el primer paso sería la aprobación, por la Junta
de Planificación, de una Consulta de Ubicación del proyecto
propuesto; y que una vez aprobado, si se cumpliese con todos los
demás requisitos de la Administración de Vivienda Rural se
procedería a firmar una carta de intención y, eventualmente, se
procedería con la firma del Contrato.

5. El señor Henson Busquets sometió a la consideración de
la Administración de Vivienda Rural un proyecto para desarrollar
viviendas en el Municipio de Lares.

6. La Consulta de Ubicación fue aprobada por la Junta de
Planificación sujeta al cumplimiento de unos requisitos
especificos.

7. El señor Henson Busquets no cumplió con los requisitos
de la Junta de Planificación.

8. Tampoco cumplió el señor Henson Busquets con los demás
requisitos que le exigía la Administración de Vivienda Rural.

9. Nunca se firmó, y no existe, una Carta de Intención
entre el señor Henson Busquets y la Administración de Vivienda
Rural.

10. Nunca se firmó, y no existe, un Contrato entre el señor
Henson Busquets y la Administración de Vivienda Rural.

11. El señor Henson Busquets llevó a cabo una serie de
gestiones que nunca le fueron requeridas por la Administración de
Vivienda Rural.

12. El señor Henson Busquets tenía conocimiento de que el
Municipio de Lares no era parte del programa presupuestario de la
Administración de Vivienda Rural.

### III.   DETERMINACIONES DE DERECHO

La Demanda presentada por el señor Henson Busquets alega una
causa de acción por incumplimiento de contrato y enriquecimiento
injusto.   Previo a la celebración de la Vista en su Fondo y

Civil Núm.  CD-88-1037
            CD-88-647
página 4

conforme a lo solicitado por la parte demandada, este Tribunal
determinó que la doctrina de enriquecimiento injusto no aplica
contra el Estado (Venancio Morales v. Toa Baja, 87 J.T.S. 107).
Por ser la Administración de Vivienda Rural, una agencia
gubernamental que carece de personalidad jurídica propia, para
todo efecto práctico es el Estado Libre Asociado de Puerto Rico
la parte demandada.  Como tal, se desestima, con perjuicio, la
causa de acción por enriquecimiento injusto presentada por el
demandante.

Una vez desestimada la causa de acción por enriquecimiento
injusto procede determinar si se probaron los elementos
necesarios para constituir una causa de acción por incumplimiento
de contrato.  Es indispensable entonces demostrar que existía un
contrato entre las partes.

Es obligación legal de las agencias gubernamentales el poner
todo contrato por escrito (Guillermo Ocasio Carrasquillo v. José
Rosa Berríos, 88 JTS 42).  Por consiguiente, la mejor prueba que
pudiera haber presentado la parte demandante es el contrato
escrito suscrito con la Administración de Vivienda Rural para el
desarrollo de un Proyecto "Turnkey" en el Municipio de Lares.

La parte demandante no presentó contrato escrito alguno.
Tampoco demostró que existiera un contrato verbal entre las
partes que obligara a su cumplimiento específico.[1]  Por el
contrario, de la prueba testifical ofrecida, el propio demandante
aceptó que nunca firmó una Carta de Intención con la
Administración de Vivienda Rural y que nunca firmó un Contrato
con la Administración de Vivienda Rural, conforme lo disponen las
guías para el desarrollo de Proyectos "Turnkey" sobre las cuales

_____

[1].  La parte demandante alegó que una carta del 20 de marzo de
1988 (Exhibit 4, por estipulación de las partes) constituía un
contrato suficiente entre las partes.  Diferimos de la
interpretación que hace el demandante de dicha carta, ya que lo
único que prueba la misma es que la Administración de Vivienda
Rural estaba realizando los trámites necesarios para obtener el
presupuesto necesario para el desarrollo del Proyecto "Turnkey",
propuesto por el demandante, para el Municipio de Lares.

Civil Núm. CD-88-1037
              CD-88-647
página 5

tenía conocimiento por haber comparecido en dos ocasiones distintas a las reuniones de orientación convocadas mediante edicto por la Administración de Vivienda Rural.[2]

EN MERITO DE LO CUAL, este Tribunal RESUELVE lo siguiente:

1.    Se declara HA LUGAR la Moción de "Non-Suit" presentada por la parte demandada al no haberse probado la existencia de un contrato entre las partes.

2.    Se ordena a la parte demandante al pago de $1,000.00 por concepto de honorarios de abogado por temeridad pues conocía que la ley requiere que un contrato gubernamental conste por escrito y que además no existía un contrato verbal entre las partes.  Con este conocimiento acude ante el Tribunal en una acción claramente frívola, ocasionando gastos y molestias indebidas a la parte demandada y a los numerosos funcionarios públicos a quienes citó como testigos.

REGISTRESE Y NOTIFIQUESE.

En Utuado, Puerto Rico a 10 de febrero de 1993.

                              MIGUEL A. SANTIAGO GOMEZ

                                  JUEZ SUPERIOR

---

[2].  De igual forma el demandante aceptó que conocía, desde el principio, que la Administración de Vivienda Rural no tenía dinero presupuestado para el desarrollo de proyectos "Turnkey" en el Municipio de Lares.   Toda la evidencia ofrecida por la parte demandante demuestra que se realizaron varios trámites con el propósito de obtener el presupuesto necesario.



$10 80
(u21_00719932
5/5/22

**CERTIFICACION**

CERTIFICO QUE LA PRESENTE ES COPIA FIEL 0
EXACTA DEL ORIGINAL QUE OBRA EN AUTOS Y EXPIDO
LA MISMA A PETICIÓN DE

Victor Hasu Busquets

☑ PREVIO EL PAGO DE DERECHOS
☐ PARA USO OFICIAL LIBRE DE DERECHOS

DIANE ALVAREZ VILLANUEVA
Secretaria Regional

Por: JESSICA ALVAREZ RODRÍGUEZ
Secretaria Sub-Secretario Tribunal

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO

SALA DE UTUADO

| | | |
|---|---|---|
| VICTOR O. HENSON Y SU ESPOSA | * | CIVIL NUM.: CS-88-1037 |
| EMILIA DEL CARMEN RODRIGUEZ | * | |
| | * | |
| DEMANDANTES | * | |
| | * | |
| VS | * | SOBRE: |
| | * | |
| FELIX A. PAGAN CENTENO (ALCALDE | * | |
| DE LARES) FELIX PAGAN CENTENO | * | |
| EN SU CARACTER PERSONAL, SU | * | |
| ESPOSA JOHANA DOE Y LA SOCIEDAD | * | |
| LEGAL DE BIENES GANANCIALES | * | ACCION CIVIL SOBRE DAÑOS Y |
| | * | PERJUICIOS |
| DEMANDADOS | * | |
| | * | |

*********************************

D E M A N D A

AL HONORABLE TRIBUNAL:

Comparece la parte demandante representada por el abogado que suscribe y muy respetuosamente expone, alega y solicita:

1. Que allá para el mes de enero del 1987----, el señor Victor O. Henson Bousquets empezó a tramitar con el Sr. Félix A. Pagán Centeno y con el Sr. Cosme Hernández Silva, Director de la ------Administración de Vivienda Rural------, para que se incluyera al pueblo de Lares entre los municipios no publicados en los solares en usufructo, y conseguimos su endoso del Director.

2. Que esto se hizo y se tramitó ya que hacía 12 años que en el pueblo de Lares no se había podido repartir una sola parcela.

3. Que una de las personas que le dio seguimiento a este caso fue la Sra. Maribel Rabell y el Licenciado Mario Rodríguez, de la oficina del Gobernador.

4. Que el Gobernador de Puerto Rico, Honorable Rafael Hernández Colón, vino a Lares a celebrar el cincuentenario del Estado Libre Asociado de Puerto Rico y expresó que el proyecto venía con un total de 250 parcelas y que era un compromiso de él repartir las parcelas.

5. Se empezó a tramitar a través de la Oficina Central en San Juan las solicitudes de las parcelas de las personas que las habían solicitado para ver si las mismas cualificaban para la opción de compra de una parcela.

VICTOR O. HENSON                                              PAG. 2

6.   Que Victor O. Henson consiguió una finca y la opcionó,
midieron y dividieron el terreno y los gastos, del equipo, maqui-
naria y Estudio de Suelo ascienden aproximadamente a $160,000.00.

7.   Que el proyecto costaba alrededor de $1,390,000.00.

8.   Que una vez estaba adelantado el proyecto, y teniéndo el
endoso de la fortaleza, ya que era un compromiso del Gobernador,
el SR. Aníbal Pagán Centeno, Alcalde de Lares, Hoy ex-Alcalde,
envió a buscar al Sr. Henson al proyecto y lo montó en un carro
de su hijo y lo llevó a su finca privada.

9.   Que una vez en la finca, el Sr. Pagán Centeno, le exigió
al Sr. Henson  el 10% del costo total del proyecto para entonces
él mismo endosarlo.

10.   Que el 10% equivalía a $139,000.00.

11.   Que el Sr. Henson le manifestó que le diera la petición
por escrito y que si era un impuesto municipal y el Alcalde le
contestó que que en Lares se hacía lo que que a él le daba la
gana y que si no le daba el dinero no había endoso para el proyecto.

12.  Que el SR. Henson le manifestó que eso no se podía hacer
ya que el proyecto era un "Turn Key" que el banco paga por certi-
ficado, que no tenía dinero y que no lo podía buscar.

13.   Que el Sr. Alcalde le dijo que se fuera para el carajo y
que se olvidara del proyecto; y que no aprobaría ni las calles,
ni recojería la basura y que le haría como a las de Brisas de
Lares y que tendría que dar dinero para comprar un truck de basura.

14.   Que en las semanas que siguieron el Sr. Pagán estuvo en
tres ocasiones a San Juan y se reunió con Cosme Herñandez Silva
y empezó a entorpecer el proyecto.

15.   Que se reunió en el Restaurant La Olla en Lares, en el
Lares Mall con el Sr. Cosme Hernández Silva, Anibal Pagán Centeno,
Albert Velez Vega y Ariel Nazario y allí el Sr. Pagán le manifestó
las discrepancias entre él y el Sr. Henson y se preparó la cons-
piración y el Secretario y el Director le manifestó que buscara
otro contratista, lo cual se tenía pendiente tan pronto mi pro-
yecto se adjudicara.

16.   Que el proyecto se congeló y luego del Sr. Henson cumplir
con todos los requerimientos y endoso de las agencias concernidas

VICTOR O. HENSON                                    PAG. 3

para así adjuicarselo a otro o subastarlo.

11.   Que sto le lha causado daños y perjuicios al Sr. Victor
O. Henson  estimados en $150,000.00.

12.   Que esto le ha causado angustias mentales y sufrimientos
mentales que se estiman en $50,000.00.

POR TODO LO QUE , solicitamos muy respetuosamente de ese
Honorable Tribunal, declare CON LUGAR la presente demanda y
condene a la parte demandada al pago de las cantidades arriba
descritas y una cantidad razonable para costas, gastos y
honorarios de abogado.

En Lares, Puerto Rico, a 30 de agosto de 1988.

RESPETUOSAMENTE SOMETIDO,



VICTOR A. VELEZ CARDONA
ABOGADO DE LA PARTE DEMANDANTE
CALLE ARANA #3
LARES, PUERTO RICO  00669
TEL. 897-2800

A-3590456
689261

VICTOR O. HENSON                                                                    PAG. 4

## DECLARACION JURADA

YO, VICTOR O. HENSON BOUSQUETS, mayor de edad, casado y vecino de San Seb., Puerto Rico, por la presente declaro bajo juramento:

1. Que mi nombre y demas circunstancias personales son las antes expuestas.

2. Que los hechos en la anterior demanda son ciertos y me constan de mi propio y personal conocimiento.

3. Que la misma ha sido redactada por mi abogado de acuerdo a mis instrucciones.

4. Que hago esta declaracion jurada a todos los fines de Ley pertinentes.

Y PARA QUE ASI CONSTE, firmo la presente en Lares, PUerto Rico, a 30 de agosto de 1988,



VICTOR O. HENSON BOUSQUETS

AFF. NUM.: 19017

Jurada y suscrita ante mi por don Victor O. Henson Bousquets de las circunstancias personales antes descritas y a quien doy fe de conocer personalmente en Lares, Puerto Rico, hoy 30 de agosto de 1988,

NOTARIO PUBLICO



L008

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO
SALA DE UTUADO

VICTOR O. HENSON BUSQUETS

    Demandante

v.

ESTADO LIBRE ASOCIADO DE
PUERTO RICO

    Demandados

CIVIL NUM. LAC-88-1037
LAC-89-647

SOBRE:

DAÑOS Y PERJUICIOS

## S E N T E N C I A

En el caso de epígrafe se celebró la Vista en su Fondo el 28 de septiembre de 1992, según señalado. La parte demandante, Victor O. Henson Busquets compareció acompañado por su abogado el Lcdo. Nelson Soto Cardona. La parte demandada, el Estado Libre Asociado de Puerto Rico y el Sr. Cosme Hernández Silva, comparecieron representados por la Lcda. Bámily López Ortiz, del Departamento de Justicia.

La parte demandante reclama el pago de $250,000.00 por concepto de los daños y perjuicios sufridos a raíz del alegado incumplimiento del contrato supuestamente suscrito entre las partes para el desarrollo de un Proyecto "Turnkey" en la Comunidad La Matilde de Lares, Puerto Rico.

Celebrada la vista en sus méritos, disponemos lo siguiente:

### I. ASUNTOS PRELIMINARES

A la "Moción Informando Representación Legal Adicional" presentada por la licenciada López Ortiz, la declaramos HA LUGAR.

Por consistir la reclamación de la parte demandante de una en daños y perjuicios, este Tribunal bifurcó las controversias, de forma tal que la vista del 28 de septiembre se limitó a determinar y adjudicar responsabilidad y negligencia de las partes. Se determinó entonces, que de ser necesario, se celebraría una vista para cuantificar los daños.

Las partes presentaron los documentos estipulados para fines de identificación, en sustitución del testimonio del Sr. Mario S. Rodríguez, los cuales fueron marcados como Exhibits Número Uno

Civil Núm. CD-88-1037
             CD-88-647
página 2

(1), Dos (2) y Tres (3), respectivamente, por estipulación de las partes.

Solicitó además la parte demandante que se le permitiera incluir como parte de su prueba testifical la deposición que se le tomara al Sr. Ramón Martínez Escudero el 5 de marzo de 1991, en sustitución de su testimonio oral por, alegadamente, este haber fallecido. Conforme a la Regla 29.1(c) de las de Procedimiento Civil de Puerto Rico se permite el uso de una deposición en sustitución del testimonio de un testigo no disponible. Sin embargo, la no disponibilidad del testigo tiene que probarse a satisfacción del Tribunal. El Tribunal **no puede tomar conocimiento judicial del fallecimiento de una persona**, según solicita la parte demandante. Por tal razón, el Tribunal declara NO HA LUGAR la solicitud del demandante en torno a la deposición del Sr. Martínez Escudero.

La parte demandante y la parte demandada anunciaron sus respectivos testigos, los cuales una vez juramentados fueron excusados de sala conforme a las reglas pertinentes.

Procedió entonces la parte demandante a presentar su prueba, la cual consistió de amplia prueba testifical y documental. Concluída la presentación de la prueba por la parte demandante, los demandados presentaron Moción de "Non-Suit".

## II. DETERMINACIONES DE HECHOS

1. La Administración de Vivienda Rural publicó varios edictos en el periódico El Mundo para las fechas del 29 de septiembre de 1986, 24 de octubre de 1986 y el 27 de octubre de 1986 convocando, a las personas interesadas en someter proyectos de desarrollo de vivienda conforme al Programa "Turnkey", a unas reuniones a celebrarse el 17 y 31 de octubre de 1986.

2. Los edictos convocaban a personas interesadas en el desarrollo de proyectos "Turnkey" en varios municipios entre los cuales **no estaba incluido el Municipio de Lares**.

3. El demandante, Victor O. Henson Busquets, asistió a las reuniones del 17 y 31 de octubre de 1986 donde recibió

Civil Núm. CD-88-1037
               CD-88-647
página 4

conforme a lo solicitado por la parte demandada, este Tribunal
determinó que la doctrina de enriquecimiento injusto no aplica
contra el Estado (Venancio Morales v. Toa Baja, 87 J.T.S. 107).
Por ser la Administración de Vivienda Rural, una agencia
gubernamental que carece de personalidad jurídica propia, para
todo efecto práctico es el Estado Libre Asociado de Puerto Rico
la parte demandada.  Como tal, se desestima, con perjuicio, la
causa de acción por enriquecimiento injusto presentada por el
demandante.

Una vez desestimada la causa de acción por enriquecimiento
injusto procede determinar si se probaron los elementos
necesarios para constituir una causa de acción por incumplimiento
de contrato.  Es indispensable entonces demostrar que existía un
contrato entre las partes.

Es obligación legal de las agencias gubernamentales el poner
todo contrato por escrito (Guillermo Ocasio Carrasquillo v. José
Rosa Berríos, 88 JTS 42).  Por consiguiente, la mejor prueba que
pudiera haber presentado la parte demandante es el contrato
escrito suscrito con la Administración de Vivienda Rural para el
desarrollo de un Proyecto "Turnkey" en el Municipio de Lares.

La parte demandante no presentó contrato escrito alguno.
Tampoco demostró que existiera un contrato verbal entre las
partes que obligara a su cumplimiento específico.[1]  Por el
contrario, de la prueba testifical ofrecida, el propio demandante
aceptó que nunca firmó una Carta de Intención con la
Administración de Vivienda Rural y que nunca firmó un Contrato
con la Administración de Vivienda Rural, conforme lo disponen las
guías para el desarrollo de Proyectos "Turnkey" sobre las cuales

_____

[1].  La parte demandante alegó que una carta del 20 de marzo de
1988 (Exhibit 4, por estipulación de las partes) constituía un
contrato suficiente entre las partes.  Diferimos de la
interpretación que hace el demandante de dicha carta, ya que lo
único que prueba la misma es que la Administración de Vivienda
Rural estaba realizando los trámites necesarios para obtener el
presupuesto necesario para el desarrollo del Proyecto "Turnkey",
propuesto por el demandante, para el Municipio de Lares.

Civil Núm. CD-88-1037
          CD-88-647
página 5

tenía conocimiento por haber comparecido en dos ocasiones distintas a las reuniones de orientación convocadas mediante edicto por la Administración de Vivienda Rural.[2]

EN MERITO DE LO CUAL, este Tribunal RESUELVE lo siguiente:

1. Se declara HA LUGAR la Moción de "Non-Suit" presentada por la parte demandada al no haberse probado la existencia de un contrato entre las partes.

2. Se ordena a la parte demandante al pago de $1,000.00 por concepto de honorarios de abogado por temeridad pues conocía que la ley requiere que un contrato gubernamental conste por escrito y que además no existía un contrato verbal entre las partes. Con este conocimiento acude ante el Tribunal en una acción claramente frívola, ocasionando gastos y molestias indebidas a la parte demandada y a los numerosos funcionarios públicos a quienes citó como testigos.

REGISTRESE Y NOTIFIQUESE.

En Utuado, Puerto Rico a   10   de   febrero   de 1992.

MIGUEL A. SANTIAGO GOMEZ
JUEZ SUPERIOR

---

[2]. De igual forma el demandante aceptó que conocía, desde el principio, que la Administración de Vivienda Rural no tenía dinero presupuestado para el desarrollo de proyectos "Turnkey" en el Municipio de Lares. Toda la evidencia ofrecida por la parte demandante demuestra que se realizaron varios trámites con el propósito de obtener el presupuesto necesario.



**Sello**

$120
05/04/2022
$10.80

Sello de Rentas Internas
80004-2022-0504-09492007

$10.80
1U21 - 00779931
5/5/22

CERTIFICACION

CERTIFICO QUE LA PRESENTE ES COPIA FIEL Y
EXACTA DEL ORIGINAL QUE OBRA EN AUTOS Y EXPIDO
LA MISMA A PETICION DE

Victor Hensu Bespuets

EL PREVIO EL PAGO DE DERECHOS
EL PAGO USO OFICIAL LIBRE DE DERECHOS

DIANE ALVAREZ VILLANUEVA
Secretario
JESSICA ALVAREZ RODRIGUEZ
Por: Secretaria Auxiliar del Tribunal I
Sub-Secretario

COPIA DEPOSICION DEL SEÑOR
RAMON MARTINEZ ESCUDERO

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO

SALA DE UTUADO

| | | |
|---|---|---|
| VICTOR O. HENSON BOUQUETS | = | |
| | = | Civil Número CS89-647 |
| Demandante | = | |
| | = | sobre: |
| Vs. | = | |
| | = | INCUMPLIMIENTO DE CONTRATO |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET ALS | = | Y DAÑOS Y PERJUICIOS |
| | = | |
| Demandados | = | |
| | = | |

===================================

DEPOSICION TOMADA AL SEÑOR

RAMON MARTINEZ ESCUDERO

El día 5 de marzo de 1991, a las 11:00 de la mañana, en el Salón de Conferencias del Departamento de Vivienda, sita en Hato Rey, Puerto Rico, se procedió a la toma de deposición del Lcdo. Ramón Martínez Escudero.

Los procedimientos se llevaron a cabo como a continuación se transcribe:

-2-

LCDA. CABAÑAS RIOS:

Estamos en récord.

TAQUIGRAFO:

Sí.

LCDA. CABAÑAS RIOS:

Señor Amado Rosario Vélez, levante su mano derecha.
Jura usted tomar bien y fielmente la vista de lo
que aquí se va a hablar y de la grabación la va
a transcribir nuevamente de acuerdo a lo que surja
de la grabación.

TAQUIGRAFO:

Lo juro.

LCDA. CABAÑAS RIOS:

Lcdo. Ramón Martínez Escudero, levante su mano
derecha, por favor.  Jura usted decir la verdad,
toda la verdad y nada más que la verdad de lo
que le pregunten los abogados en esta deposición.

DEPONENTE:

Lo juro.

LCDO. SOTO CARDONA:

Muchas gracias, compañera.  Para fines del regis-
tro se dirige Nelson Soto Cardo, abogado de la
parte demandante en el caso que nos ocupa, Víctor
Henson Bouquets, Vs. Estado Libre Asociado de

-3-

Puerto Rico, del Tribunal Superior de Puerto

Rico, Sala de Utuado, Civil número 89-647 y

88-1037.

LCDO. ESCOBAR TORRES:

No, solamente es uno.

LCDO. SOTO CARDONA:

Es uno, 89-647.  En este momento se encuentra

aquí para tomarle una deposición y se encuentra

presente también antes de identificar al deponen-

te, el compañero Raúl Escobar Torres, del Depar-

tamento de Justicia, en representación de los

demandados, Cosme Hernández Silva y Estado Libre

Asociado de Puerto Rico.  Igualmente se encuentra

el deponente, el Lcdo. Ramón Martínez Escudero

y como taquígrafo el señor Amado Rosario.  Las

reglas de como se llevará la deposición las

hemos previamente acordado y son las siguientes:

Luego de notificada la transcripción de la depo-

sición, el deponente tendrá un término de treinta

días para estudiar la misma y transcurrido el

término de treinta días de no haber ninguna

oposición a la misma se tendrá  como suscrita

por éste bajo juramento.  Quiero también decir

-4-

para récord, que con antelación tomó juramento
al deponente y al taquígrafo la compañera Caroll
Cabañas Ríos. Otras de las reglas que va a regir
esta deposición, es que las objeciones se reser-
varán para el juicio; creo que esto recoge los
acuerdos que hemos llegado.

LCDO. ESCOBAR TORRES:

Así es y que se excusó a la compañera Caroll
Cabañas Ríos, para que no estuviera aquí pre-
sente, luego que tomara los juramentos.

LCDO. SOTO CARDONA:

Es correcto. Entonces vamos a comenzar la
deposición. Nuevamente para fines del registro,
el Lcdo. Nelson Soto Cardona en representación
de la parte demandante. Señor deponente, para
fines del registro, dígame su nombre completo?

R   Ramón Martínez Escudero.

P   ¿A qué usted se dedica?

R   Soy abogado.

P   En la actualidad donde usted trabaja?

R   Trabajo de Ayudante Especial de la Administradora,
en la Administración de Servicios Municipales en
Hato Rey, San Juan, Puerto Rico.

-5-

P   Lcdo. Martínez, allá para el 1987, ¿dónde usted trabajaba?

R   Me desempeñaba como Asesor Auxiliar en asuntos federales, en la Oficina del Gobernador, en la Fortaleza.

P   Esa oficina donde usted trabajaba está adscrita a la Oficina del Gobernador?

R   Sí.

P   En la posición que usted se desempeñaba, a quién usted respondía como jefe inmediato?

R   Al asesor del Gobernador en Asuntos Federales, el Lcdo. Jorge Pérez Díaz en aquel entonces.

P   Qué relación, si alguna tenía el compañero Joaquín Bartolomei con esa oficina?

R   Una relación de trabajo debido a la estructura de oficina, es un compañero de trabajo en otra oficina de otro sector.

P   Y el compañero, que entiendo el compañero abogado Mario Rodríguez?

R   Mario Rodríguez era asesor del Gobernador, en el área de infraestructura.

P   Con relación al caso que nos ocupa, en primer lugar, usted conoce a don Víctor Henson Bousquets?

R   Sí.

-6-

P   Por razón de qué usted lo conoce?

R   Lo conocí cuando fue referido a mi oficina,
    lo recibí en aquel entonces y se le dio el
    acostumbrado trato de los ciudadanos que vienen
    con algún problema a la oficina del Gobernador.

P   ¿Por quien fue referido el señor Víctor Henson,
    a usted?

R   No me acuerdo, o sea, porque venían referidos
    por distintas formas los casos de los ciudadanos
    a la oficina y no puedo precisar  exactamente
    como fue que llegó ese caso a mi oficina.

P   Maribel Rabell trabaja en la ... o trabajaba
    para esa fecha como asesora del Gobernador?

R   Sí.

P   Algunas de estas personas Mario Rodríguez o
    Maribel Rabell, se comunicaron en algún momento
    con usted allá para el 1987 en cuanto al caso
    del señor Víctor Henson?

R   A mi mejor entendido no.

P   Recuerda usted si fue allá para el mes de
    noviembre de 1987, cuando usted se entrevistó
    con el señor Henson?

R   Más o menos en esa fecha, correcto.

-7-

P   No está seguro si fue de la oficina de infra-
estructura del señor Mario Rodríquez, que este
fue referido?

R   No estoy seguro si el referido vino de la oficina de
Mario Rodríguez.

P   Pero pudo haber sido.

R   Sí, pudo haber sido o pudo haber sido de la
oficina de Ayuda al Ciudadano, habían distintas
formas de que llegaran ciudadanos a las oficinas
Asesores Auxiliares para atenderlo.

P   Entonces, cuál fue la problemática que el señor
Henson le presentó para que usted le ayudara a
resolver?

R   El señor Henson me planteó y alegó que estaba
en relaciones con la Administración de Vivienda
Rural, en relación a un proyecto y que ya habían
unos endosos de ciertas agencias otorgados en
el mismo, que se habían incurrido por él ciertos
gastos ya y que la agencia, pues él deseaba se
le diera seguimiento para que se resolviera el
planteamiento de él, en cuanto al proyecto que
él había sometido.

P   Como consecuencia del señor Henson le presenta,
¿qué gestión, si alguna usted hizo?

-8-

R    Como era la costumbre, pues uno identificaba

las partes.  En este caso la agencia concernida

era la Administración de Vivienda Rural.  Deter-

miné también, que en realidad en el área donde

yo trabajaba no había una relación directa con

el asunto, porque nosotros no bregábamos con asun-

tos federales de la oficina del Gobernador y me

tuve que haber comunicado con la agencia, este

al nivel que yo usualmente lo hacía y que era

con el Director Ejecutivo o con sus ayudantes.

Me comuniqué con la oficina de Mario Rodríguez,

el asesor del Gobernador en esa área y específica-

mente con el señor Bartolomei, para indicarle

que había o que tenía un asunto que entendía que

era del área de jurisdicción de ellos, para darle

asesoramiento y darle asistencia al ciudadano.

P    Con motivo de esa conversación que usted mantuvo

con el Lcdo. Joaquín Bartolomei, ayudante de ...

R    El creo que no es abogado.

LCDO. ESCOBAR TORRES:

No, no es abogado.

LCDO. SOTO CARDONA:

P    Con Joaquín Bartolomei, de la oficina del Lcdo. Mario

Rodríguez, es o no correcto que ustedes se comuni-

caron aquí con el señor Gamalier Rodríguez, cuando

-9-

yo digo aquí me refiero a Vivienda Rural y que
estos le notificaron a ustedes que era lo que
había pasado con el proyecto, es eso correcto?

R   Primero, que al momento de 1987 el señor Mario
Rodríguez tampoco era abogado o es abogado.  Si
yo recuerdo haberme comunicado con A.V.R.,
específicamente con Gamalier Rodríguez, para
darle conocimiento que el señor Henson estaba
en nuestra oficina y nosotros, pues habíamos
tomado conocimiento de lo que él planteaba y
cual era la situación en cuanto al proyecto de
él y que se le diera posiblemente atención y/o
audiencia aquí en la agencia para discutir el
asunto.

P   Debo entender, que la agencia denominada oficina
del Gobernador con toda sus divisiones, es una
agencia de enlace entre el ciudadano con la
demás agencias y entre agencias?

R   Sí, puede hacerlo.

P   Cuantas veces el señor Víctor Henson visitó,
por los menos la oficina suya, que usted recuerde?

R   Definitivamente fue más de una, pero no creo
que fuera más de seis, por ahí, como tres o

-10-

cuatro ocasiones, creo que habían llamadas tele-
fónicas también, por un periodo de tiempo corto.

P   Debo entender entonces, que la oficina donde
usted trabajaba se familiarizó con el problema
del señor Henson?

R   Bueno yo, este dentro de la oficina en atenderlo
y recibir sus alegaciones y las comunicaciones
que hizo con Gamalier y con Bartomei, pues si
me enteré de lo que planteaba.

P   Dígame si es correcto, dígame si es cierto o
no, de que una de las últimas conversaciones
que usted tuvo con Vivienda Rural, específica-
mente con el señor Gamalier Rodríguez, ustedes
le informaron a éste que recibiera a Henson,
para que le explicara un cambio que había con
el propuesto desarrollo de la finca allá en
Lares.

R   Yo no me puedo recordar exactamente que haya
sido sobre ese motivo de un cambio en específico,
mis comunicaciones tienen que haber sido relacio-
nada para que lo recibiera y atendiera los plan-
teamientos del señor Henson, pero en específico
de un cambio previsto no me acuerdo que haya
sido ese motivo de una comunicación mía.

-11-

P    Es o no cierto que para ese tiempo de 1987,
el Ex-alcalde de Lares, Félix Aníbal Pagán,
estaba siendo procesado administrativamente
por unos casos de mala administración municipal?

R    No puedo precisarle si yo me recuerdo de eso
en ese momento, pero posiblemente si estaba
sucediendo, pues estaba sucediendo, pero no le
puedo decir que sí, que me acuerdo que estaba
sucediendo ese asunto en esos momentos.

P    Entre las cosas que Henson le informó a usted,
es o no cierto que este le planteó a él, a
usted, de que él iba a proceder en hacer unas
denuncias públicas a la prensa sobre que el
señor Félix Aníbal Pagán le había requerido
un dinero para él endosar el proyecto.

R    El señor Henson planteó un sinnúmero de cosas
desde el punto de vista de él, no me recuerdo
si esos detalles específicamente así como usted
los dice se expresaron, pero él tenía un sin-
números de querellas y alegaciones relacionados
con el caso donde principalmente yo le daba
más importancia a los planteamientos que quizás
yo podía atender como su relación con Vivienda
Rural, pero ese asunto de esa alegación, este yo

-12-

diría que sí, que puede haberse discutido por
él, pero no me acuerdo que se haya abundado
mucho sobre que debía de hacerse sobre eso.

P   Okey, debo entender que sí,  la contestación
    sería sí.

LCDO. ESCOBAR TORRES:

Con el permiso del compañero,  no me le ponga
en la boca al deponente la contestación.  Si
él dice que sí o dice que no, que él se exprese,
porque él es el que está deponiendo y no el
compañero.

LCDO. SOTO CARDONA:

P   Le estoy preguntando, debo entender que sí.

R   No.  Yo no recuerdo específicamente que ese
    punto se haya discutido en la oficina, pero
    el señor Henson planteaba un sinnúmero de
    asuntos relacionados con este caso, que él se
    sentía no le estaban saliendo las cosas bien
    ahí y puede que entra ellas ese punto del Alcalde,
    él lo haya traído; pero yo no recuerdo con una
    certeza para decir, sí, discutimos este asunto
    de que el exalcalde le ofreció dinero, etc. etc.,
    posiblemente sería que él me lo plantería como
    uno de muchos asuntos relacionados con este

-13-

asunto.

P   En una de las últimas reuniones que usted tuvo
    con el señor Henson, éste no le entregó a usted
    unos documentos sobre los gastos incurridos copia
    del cual yo le voy a mostrar, sobre los gastos
    incurridos por él en el proyecto hasta ese
    momento.

R   No, que me entregara documentos no.  Se discutió
    el asunto de los gastos incurridos.

P   Perdóneme, qué se discutió sobre los gastos?

R   Que él había incurrido en un sinnúmeros de
    gastos ya en el desarrollo del proyecto, a los
    cuales él entendía que tenía derecho a reembol-
    so.

P   En las conversaciones que usted tuvo con Cosme
    Hernández o Gamalier Rodríguez, ustedes hablaron
    de esos gastos?

R   Bueno, posiblemente yo le informé a Gamalier
    Rodríguez, que una de las alegaciones del señor
    Henson era que había incurrido en unos gastos
    y que se atendiera ese asunto para dilucidar
    que era lo que procedía.  También y estoy casi se-
    guro que al señor Henson le indiqué, que sería
    importante hiciera un inventario de esos gastos

-14-

para poder presentárselo a la agencia.

P    Le hemos mostrado para fines del registro, al
     deponente una carta de fecha 22 de diciembre
     de 1987, dirigida al señor Cosme Hernández Silva,
     la cual fue recibida en diciembre 29 de 1987.
     La misma tiene un anejo, titulado "Relación
     de Gastos", la vamos a marcar como exhibit uno
     y uno A de la deposición.

LCDO. ESCOBAR TORRES:

     Forma parte de la misma carta o es aparte.

LCDO. SOTO CARDONA:

P    Por eso se identificó como uno y uno A, porque
     son dos hojas. Lcdo. Martínez, pudo usted leer
     el documento que hemos identificado para récord?

R    Sí.

P    Con anterioridad al día de hoy, usted había
     visto dicho documento?

R    No.

P    Con anterioridad al día de hoy, usted había
     visto el anejo que se incluye en ese documento?

R    No.

P    Tiene usted conocimiento de lo que se alega en
     este documento?

-15-

R   Relacionado con los gastos sí.

P   En algún momento usted se comunicó, en las
    comunicaciones que usted tuvo, perdón, en
    las comunicaciones que usted tuvo con Vivienda
    Rural, se acordó, este no el pago, sino que el
    señor Henson enviara esta relación de gastos
    a Vivienda Rural?

R   Bueno, yo le diría que se acordó, o sea, según
    mi recuerdo, el señor Henson alegaba tener esos
    gastos.  Yo le recomendé que era importante
    tener un inventario claro de los gastos que se
    estaban reclamando y en comunicaciones  A.V.R.
    que creo fueron casi exclusivamente por teléfono,
    tengo que haberle comunicado a Gamalier Rodríguez
    que creo era la persona más directa con este caso
    y conmigo, de que había una alegación de gastos
    reclamándose para ser reembolsados y de que el
    señor Henson prepararía su inventario y proce-
    dieran a evaluarlo.

P   Luego de diciembre del ochenta y siete, estaríamos
    ya hablando de 1988, en alguna ocasión se comunicó
    usted con A.V.R. o con algún funcionario de A.V.R.
    sobre el caso de Henson, que usted recuerde?

R   Posiblemente, a instancia del mismo señor Henson

-16-

que después por un periodo corto acudió y lla-
maba a mi oficina para informarme si había suce-
dido algo o no.  Aunque ya ese caso para mi se
había traspasado a la jurisdicción del área de
infraestructura, pues posiblemente si el señor
Henson me llamó en ese tiempo, yo habría hecho
alguna llamada de seguimiento a ver, específica-
mente no me acuerdo si fue para después de diciem-
bre del 87.

P    En el panorama jerárquico, vamos a llamarlo
     así, la oficina suya está por encima de la
     oficina de infraestructura de Mario Rodríguez?

R    No, quedan ...

P    ...a la par.

R    A la par.

P    En algún momento en el transcurso del año 88,
     a principio del año 88, se comunicó usted con
     Mario Rodríguez referente al caso de Henson?

R    Mi comunicación si sucedió en ese tiempo conocer
     a Mario Rodríguez, sería en cuanto a este caso
     con Bartolomei.

P    Con Joaquín Bartolomei.

R    Exactamente, que era el asesor auxiliar a nivel
     mio también.

-17-

P   Y podría usted manifestarnos cuál fue esa última
    conversación o esa conversación entre ustedes a
    principio del ochenta y ocho?

R   No puedo precisarle, pero usualmente era en
    término de seguimiento preguntando, que ha
    pasado con Henson; Henson me llamó este...

P   Licenciado, allá para fines del 87, las visitas
    que hizo Henson a su oficina y las llamadas que
    probablemente pudo haber hecho durante el ochenta
    y ocho, el acercamiento principal de Henson lo
    motivó, lo motiva el que se le pagara los gastos
    incurridos en el proyecto de Turn Key, en el
    proyecto a que nos hacemos referencia Turn Key.

R   Bueno, ese era el planteamiento principal de
    Henson, que él tenía este proyecto, estaba toda-
    vía pendiente en la agencia y que él había incu-
    rrido en unos gastos y que entendía caí bajo el
    proyecto y que necesitaba reembolso.

P   En algún momento en el ochenta y ocho algún
    funcionario de A.V.R. le informó a usted, le
    informó que iban o no iban a pagarle a Henson?

R   Estoy tratando de ser lo más preciso posible
    en cuanto a esto, porque después de las visitas
    oficiales del señor Henson, después el caso pasa

-18-

de nuevo a la oficina de Bartolomei, pues las
comunicaciones mías sobre el caso eran más o
menos marginales, me refiero a que era..., que
ha pasado con el caso y así me enteré de que ...,
por tanto por Henson, que en las últimas llamadas
que él me había hecho me informó que no se estaba
moviendo, o sea no se había movido su caso. Como
en A.V.R., pues de que el caso no había concluido
tal como Henson deseaba en  sus  planteamientos,
o sea, que el caso no se había aprobado. O sea,
yo me enteré de eso, pero ahora precisar si fue
una llamada oficial para mí de A.V.R., indicándome
el caso no se aprobó no estoy completamente seguro
de que haya sido así; me enteré yo creo que fue
por cuestiones marginales, tanto de información
del señor Henson y/o de indigar con A.V.R., este
que pasó con el caso de Víctor Henson.

P   Me quiere usted decir entonces, de que el sin-
número de gestiones que hizo su oficina para,
en primer lugar, plantear de  parte de su oficina
la querella que tenía Henson, ¿en ningún momento
la agencia le dijo a usted la disposición final
de ese asunto, le informó oficialmente?

R   Bueno, oficialmente no.

-19-

P   Nunca le informaron oficialmente?

R   Oficialmente no.

P   Para los efectos de la oficina del Gobernador.

R   De mi oficina.

P   De su oficina.

R   De Asuntos Federales.

P   Nunca se informó oficialmente la disposición
    final del caso?

R   No.

P   De alguna manera o en alguna medida en todas
    esas gestiones que usted hizo y que fueron varias,
    se le informó a su oficina, qué había alguna posi-
    bilidad, que se estaba estudiando la posibilidad
    de pagar esos gastos?

R   Bueno, inicialmente en las primeras comunicaciones
    cuando planteé el caso que tenía el señor Henson
    allí, este me informaron que el caso estaba pen-
    diente.  Por eso es que yo solicito que se reciba
    al señor Henson, que hay de esas gestiones para
    que se discutiera el asunto con él y con la ofi-
    cina de Bartolomei.

P   Cuando usted dice que el caso estaba pendiente,
    se refiere a que se estaba tomando una decisión,

-20-

de si se pagaba o no.

R    No necesariamente si se pagaba o no, era que
     estaba todo el asunto del proyecto todavía bajo
     evaluación, no se había resuelto el asunto del
     proyecto de ese ...

P    Para esa fecha, ellos le informaron que no se había
     resuelto si el proyecto iba o no iba?

R    Para las fechas iniciales, correcto, ellos me
     informaron de que no estaba ..., o sea, entendí
     yo de que el caso todavía estaba bajo examen,
     para evaluación.

P    Licenciado, en algún momento A.V. R., a través
     del Ingeniero Gamalier Rodríguez o a través de
     Gosme Hernández, le informó a usted lo que se
     pretendía con el proyecto, lo que era un proyecto
     concepto Turn Key?

R    Se mencionó.

P    En algún momento le informaron a ellos el
     cambio de propuesta?

R    Ahí yo no quiero.

P    Le informaron ellos a usted?

R    No, ese asunto del cambio o sea ..., posible-
     mente, primero ese detalle me lo informaría a
     mí el señor Henson en su exposición inicial de

-21-

lo que estaba pasando con el caso.

P   Pero al ellos explicarle, este A.V. R. a usted?

R   Posiblemente también ellos tienen que haberme dado detalles del caso, relacionado con eso.

P   Usted no recuerda que razón le dieron ellos para el cambio, si la dieron?

R   No, no recuerdo, si la dieron no recuerdo.

P   Usted no recuerda si usted preguntó porqué el cambio?

R   No.

P   En algún momento del Municipio de Lares, el Alcalde Félix Pagán se comunicó con usted?

R   Que yo recuerde no.

P   Sobre el proyecto.

R   Que yo recuerde no.

P   Recuerda usted si el Lcdo. Mario Rodríguez, me corrigió que no es licenciado, el señor Mario Rodríguez de la Oficina del Gobernador, en algún momento le comunicó a usted, que el Alcalde Pagán se había comunicado con él referente a este proyecto?

R   No, no señor.

P   Licenciado, a base de su experiencia en la vida

-22-

pública en el trato con la gente, entiende
usted que el señor Henson, creyó que a él se le
iban a compensar los gastos incurridos?

R    El creía y manifestaba de que tenía derecho a
ese desembolso.

P    ¿Cuántas veces, si usted recuerda, usted se
comunicó con Henson?

R    Usualmente el señor Henson se comunicaba conmigo.

P    En cuantas ocasiones?

R    En más de una definitivamente, pero como le
indicaría cuatro o cinco veces. Este algunas
veces él pasaba personalmente y cuando estaba
en Fortaleza entonces llamaba por teléfono, pero
fue más o menos ese número de veces y por un
periodo de uno o dos meses.

P    Oiga licenciado, a usted no le preocupó el alcance
y complejidad de la querella que presentaba Henson,
en términos de que Henson planteó, le planteó a
la oficina suya, de que había cotizado un proyecto,
de que había incurrido en unos gastos a base de
unas promesas y que según la opinión de él, de
Henson, el proyecto se había paralizado porque
el Alcalde Pagán había hecho presiones ante la

-23-

agencia para que paralizara el proyecto.   ¿Qué preocupación, si alguna le causó esto.

R   La preocupación razonable de que atendí al señor Henson, analicé los planteamientos de él, lo referí a la oficina que yo entendí que era la adecuada para bregar con esos planteamientos directamente, que era la del asesor Mario Rodríguez; hice gestiones en la concernida para que me aclarara o tuvieran conocimiento de que ese planteamiento se estaba haciendo en la oficina del Gobernador y sí, este le daría mi asistencia al señor Henson individual, o sea, pero como le indiqué.   Al yo evaluar que el asunto que él me planteaba estaba fuera de la jurisdicción normal y razonable de nuestra oficina y al referirlo a la oficina adecuada, pues ahí yo ya me desligo del asunto para atender otros casos.

P   Licenciado, en algún momento usted ha prestado alguna declaración jurada ante una agencia federal o estatal sobre este asunto?

R   No.

P   Sabe usted si existe en su oficina algún documento relacionado con este asunto.

-24-

R   En mi exoficina no debe de existir.

P   Porqué usted dice que no debe de existir?

R   Según me recuerde, yo no he recibido documentos
    relacionados con el caso, como para que se abriera
    un expediente en la oficina y entonces tuvieran
    documentos relacionados.

P   No tengo más preguntas para el deponente y
    le damos la gracias, conteste las preguntas
    que el compañero le pueda hacer.

LCDO. ESCOBAR TORRES:

P   Yo tengo dos o tres.   ¿Compañero Martínez Escu-
    dero, cuáles eran las funciones en sí, de su
    oficina, de su exoficina?

R   Cuando estaba de Asesor Auxiliar, en la Oficina
    de Asuntos Federales, la oficina nuestra se ocu-
    paba de los asuntos relacionados con el gobierno
    federal  de la oficina del Gobernador, así como
    con asuntos relacionados con la Administración
    de Programas Federales de las agencias del go-
    bierno y de los municipios.

P   Su oficina bregaba o tenía alguna inferencia
    o inherencia con relación a casos como este tipo,

-25-

que hubiera algún proyecto de alguna agencia en
particular?

R   Sí hubiera alguna relación con algún programa
federal o algún fondo federal, posiblemente sí.

P   Y en este caso había alguna necesidad de algún
fondo federal?

R   No, directamente así no.

P   En alguna ocasión el señor Gamalier le indicó
a usted, de que el proyecto estaba programado
por la agencia?

R   No, programado así per se  no.

P   O que hubiese alguna posibilidad o alguna progra-
mación para establecer o llevar un proyecto de
esta categoría al Municipio de Lares.

R   No, las comunicaciones de A.V.R. eran ...,
si inicialmente era un proyecto estaba bajo la
consideración de ellos.

P   Pero debo entender cuando usted menciona eso,
es un proyecto que le ofrece el señor Henson,
a la Administración de Vivienda Rural.  O sea,
en otras palabras, yo tengo un proyecto aquí,
se lo presento a ustedes para que ustedes lo
consideren, si me lo van adquirir o no.

R   Eso, más o menos, era el proceso normal y

-26-

y corriente tengo entendido yo, de la agencia
y de los proponentes.

P Usted en algún momento se percató de que había
algún compromiso de la agencia hacia el señor
Henson?

R Bueno, el señor Henson alegaba que él tenía el
proyecto sometido y Vivienda Rural cuando yo
hago el acercamiento tenía conocimiento del
proyecto. Ahora, qué compromisos existían
entre ellos no lo sé.

P Ni Gamalier, ni Cosme le informaron acerca de
eso.

R Que me dijeran que tenían un compromiso con
el señor Henson, no.

P A preguntas del compañero, este el compañero
trajo a colación que había un cambio en el pro-
yecto. ¿Usted sabía cual en sí era el proyecto
y que si algo era el cambio?

R Bueno, sabía que era un proyecto de Vivienda
en base a la información que se me expresaba
por el señor Henson. Lo del cambio como indiqué
anteriormente, no me recuerdo de ese detalle
específicamente y las repercusiones que pudiera

-27-

tener el mismo.

P   Era un proyecto de la agencia o un proyecto
    del señor Henson.

R   Yo entendía que era un proyecto  que el señor
    Henson estaba proponiéndole a la agencia, como
    proponente.

P   No hay más preguntas.

LCDO. SOTO CARDONA:

P   Lcdo. Martínez, usted a preguntas del compañero
    acaba de decir, que esto no era un proyecto pro-
    gramable por la agencia;  que no es o usted no
    sabe si era o no era.

R   Creo que él me preguntó ...

P   Fue la segunda pregunta que él le hizo.

R   Que si se me notificó o se me informó por A.V.R.
    en alguna forma que estaba programado el yo le
    indique que no, que esa comunicación yo nunca
    la recibí de A.V.R. de que estuviera programado
    el proyecto.

P   Pero cuando a usted se le plantea el programa
    por parte de Henson, que usted indaga  en A.V.R.
    ante Gamalier Rodríguez y Cosme Hernández, usted
    no indaga más allá de si había un programa, de
    si había habido unas propuestas en el periódico,

-28-

que tipo de proyecto era, porque se había suspen...,
todas estas cosas que recogen en esencia el asunto.

R   No, porque esos detalles no eran de mi área de
experiencia en el trabajo mío. O sea, por eso
también, es que refiero el caso a la oficina de
Mario Rodríguez. Yo no tengo, ni tenía expertise
en desarrollo de viviendas porque no era mi área,
para quizás hacer esas preguntas específicas
que usted está planteando.

P   Okey, quiere decir, que las contestaciones que
usted le ha dado al compañero en término generales,
esos no que usted dijo, son que usted no sabía,
que usted no sabía que promesas había habido con
Henson, usted no sabe o no sabía que tipo de
proyecto, si alguna se iba a desarrollar y no
que no se iba a desarrollar, es que usted no lo
sabía.

R   Es correcto.

P   Entonces el compañero Escobar manifiesta de
que no tiene preguntas adicionales, este abogado
tampoco tiene preguntas adicionales, así que
damos las gracias ...

LCDO. ESCOBAR TORRES:

Una sola pregunta, el compañero Martínez Escudero
desea expresar algo adicional.

-29-

R    No.

LCDO. SOTO CARDONA:

> Entonces damos por terminada dándole las gracias
> al compañero Martínez Escudero, por haber tenido
> la amabilidad, la gentileza de acompañarnos en
> la mañana de hoy y hasta aquí entonces damos
> por terminada esta deposición.

======
===
=

CERTIFICACION:   Yo, Amado I. Rosario Vélez, Taquígrafo
de Récord, CERTIFICO:  Que lo anterior es una trans-
cripción fiel y exacta de las  notas taquigráficas
tomadas por el suscribiente durante la toma de deposición
al Lcdo. Ramón Martínez Escudero, el día 5 de marzo de
1991, en una de las oficinas del Departamento de la
Vivienda, en Hato Rey, Puerto Rico, relacionada al caso
CS89-647, sobre: Incumplimiento de Contrato y DAños y
Perjuicios.

Hago constar estoy remitiendo original con tres
copias de la presente transcripción al Lcdo. Nelson
Soto Cardona, abogado de la parte demandante, a su
oficina en San Sebastián, Puerto Rico.  El Lcdo. Soto

-30-

Cardona remitirá una copia al Lcdo. Raúl Escobar Torres, abogado de la parte demandada en este caso.

En Aguadilla, Puerto Rico, hoy 30 de abril de 1991.

Cordialmente,

Amado I. Rosario Vélez
Taq. de Récord

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

VICTOR O. HENSO BUSQUEST

    DEMANDANTE-RECURRENTE

       VS.               CASO:  CE-93-0183
                               CASO ORIG. LAC-88-1037

E.L.A. DE P.R., ET. ALS.

    DEMANDADOS-RECURRIDOS

-------------------------------

### SEGUNDA MOCION SOLICITANDO RECONSIDERACION

AL HONORABLE TRIBUNAL:

    Comparece la parte demandante-recurrente representada por su abogado que suscribe y muy respetuosamente expone, alega y solicita:

    1. Que solicitamos reconsideración de la resolución emitida el 23 de julio de 1993 en el caso de epígrafe ya que estamos sometiendo en evidencia una Certificación del Tribunal de Instancia en donde surge claramente la fecha que se presentó la moción solicitando determinaciones de hechos adicionales y la cual estaba en tiempo.

    3. Que a tenor con lo antes expuesto, solicitamos que se reconsidere dicha Resolución y se proceda a tomar en consideración el certiorari sometido.

    POR TODO LO QUE, solicitamos respetuosamente de este Honorable Tribunal, se sirva tomar conocimiento al respecto y provea de conformidad con lo solicitado.

    En Lares, Puerto Rico, a 5 de agosto de 1993.

    CERTIFICO: Que he enviado copia de esta moción al Lcdo. Raúl Escobar Torres, Apartado. 192, San Juan, PR 00902 y al Sr. Secretario, Tribunal Superior, Utuado, PR 00641.

                             RESPETUOSAMENTE SOMETIDO,

                         VICTOR A. VELEZ CARDONA
                         ABOGADO DEL DEMANDANTE
                         RECURRENTE
                         CALLE ARANA #3
                         LARES, PR 00669
                         TEL. 897-2800
                         COLEGIADO NUM. 5868



ESTADO LIBRE ASOCIADO DE PUERTO RICO
### TRIBUNAL GENERAL DE JUSTICIA

TRIBUNAL <u>SUPERIOR</u>

SALA de <u>UTUADO</u>

5 de agosto de 1993.

### C E R T I F I C A C I O N

Yo, Brenda E. Mass Pagán, Sec. Aux. II Asuntos de lo Civil, por este medio Certifico que la presente mocion de la cual se acompaña copia aparece radicada en el expediente del Tribunal Superior de Utuado con fecha del dia 26 de febrero de 1993, a las 9:23 de la mañana.



EDWIN BARREIRO FIGUEROA
SECRETARIO GENERAL

POR: BRENDA E. MASS PAGAN
       SEC. AUX. II

EN EL TRIBUNAL SUPERIOR DE PUERTO RICO

SALA DE UTUADO

VICTOR O. HENSO BUSQUETS

    DEMANDANTE

        VS.

MUNICIPIO DE LARES

    DEMANDADOS

CIVIL NUM: L AC88-1037

SOBRE:

DAÑOS Y PERJUICIOS

------------------------------

## MOCION SOLICITANDO SE HAGAN DETERMINACIONES
## DE HECHOS ADICIONALES

AL HONORABLE TRIBUNAL:

Comparece la parte demandante representada por su abogado que suscribe y muy respetuosamente expone, alega y solicita:

1. Que el 17 de febrero de 1993 se notificó la Sentencia dictada en el caso de epígrafe.

2. Que dicha Sentencia se fundamentó en una moción a base de la Regla 39.2 (c) de Procedimiento Civil Vigente.

3. Que a tenor con la sentencia solicitamos que se hagan las siguientes Determinaciones de Hechos Adicionales:

A. Que aunque la Regla 39.2(c) autoriza al Tribunal poder escuchar toda la prueba antes de declarar con lugar el "Non Suit", el Tribunal estimó dentro de su discreción que no era necesario que la parte demandada fuera.

B. Que el Tribunal estimó que aunque las partes estaban contestes en que el Sr. Ramón Martínez Escudero había fallecido, exigió para ser admitida su deposición como evidencia, que demostraran su muerte a base de la Regla 29.1(c) de Procedimiento Civil en donde se requiere la sustitución de un testigo no disponible.

C. Que el Tribunal estimó que por no haberse presentado un Certificado de Defunción no podía admitir la Deposición como evidencia.

D. Que el Tribunal estimó que el enriquecimiento injusto no se dá contra el Gobierno y que en este caso no hay ninguna excepción que haga variar esa determinación.

-2-

E.   Que el Tribunal no admitió en evidencia una Escritura de Opción de Compra de la finca a ser desarrollada por estimar que no era necesario.

POR TODO LO QUE, solicitamos respetuosamente de este Honorable Tribunal, se sirva tomar conocimiento al respecto y provea de conformidad con lo solicitado.

En Lares, Puerto Rico, a 24 de febrero de 1993.

CERTIFICO:   Que he enviado copia de este escrito al Lcdo. Raúl Escobar, Apartado 192, San Juan, PR  00902 y al Lcdo. Bamily López Ortíz, Apartado 192, San Juan, PR  00902.

RESPETUOSAMENTE SOMETIDO,

VICTOR A. VELEZ CARDONA
ABOGADO DEL DEMANDANTE
CALLE ARANA #3
LARES, PR  00669
TEL. 897-2800
COLEGIADO NUM. 5868



1727936

Estado Libre Asociado de Puerto Rico
TRIBUNAL GENERAL DE JUSTICIA
**Oficina de Administración de los Tribunales**
**SOLICITUD DE SERVICIOS DE DOCUMENTOS**

### PARA USO DEL TRIBUNAL GENERAL DE JUSTICIA Y SUS DEPENDENCIAS

☑ Tribunal de Primera Instancia Sala Superior de _Utuado_

☐ Sala Municipal de _____

Núm. solicitud del Tribunal: _N-65-2022_

☐ Tribunal Supremo ☐ Tribunal de Apelaciones ☐ OAT

☐ Personal ☐ Por correo ☐ Digitalizada

☐ Por fax ☐ Por teléfono ☐ Por correo electrónico Fecha (día/mes/año): _12 abril 22_

Núm. solicitud Archivo Central: _____

**1. Nombre del (de la) Solicitante:** _Victor O. Henson Bosquets_

**2. Dirección:** _PO Box 78 Sn Sebastián_

Código Postal: _00681_

**3. Teléfono*:** ( _787_ ) _609 - 6720_

**4. Correo electrónico:** _939-865-4070_

**5. Servicio que solicita:**
☐ Copia Certificada ☐ Copia Simple ☐ Examinar Expediente
☐ Copia Certificada con envío al Negociado de Traducciones
☐ Otro (indique): _____

**6. Número de copias solicitadas:** _____

**7. Si es para uso oficial de una Agencia Gubernamental, indique el nombre de la Agencia:**

### REFERENCIAS DEL CASO

**8. Dependencia:**
☐ Tribunal Supremo
☐ Tribunal de Apelaciones
☑ Tribunal Primera Instancia
  ☐ Sala Superior ☐ Sala Municipal
☐ Sub-Sección Distrito
☐ OAT
☐ Otro: _____
  (Indique)
_Utuado_
Sala

**9. Asunto**
☑ Civil
☐ Relaciones de Familia
☐ Expropiaciones
☐ Criminal
☐ Tránsito
☐ Otros: _____
(Indique)

**10. Número de Casos:**
_LAC 1989- 0647_

**11. Partes del Caso o Casos:**
_Victor O. Henson Bosquets_
Demandante
v.
_ELA de PR_
Demandado(a)

**12. Documentos que interesa:**
☐ Sentencia
☑ Resolución
☐ Denuncia
☑ Otros: _Petición_
(Indique)

(13) _Victor O. Henson_
Firma del (de la) Solicitante

### PARA USO EXCLUSIVO DEL ARCHIVO

**14. Documentos bajo custodia del:**
☐ Archivo Activo ☐ Archivo Inactivo
☑ Archivo Central

**15. Solicitud atendida por:** _Nilsa Ginés- Ofic. Archivo_

**16. Fecha:** _12 abril 22_
(día/mes/año)

**17. Localización:**

**18. Microfilmado o Digitalizado:** ☐ Sí ☐ No
Rollo Núm.

**19. OBSERVACIONES:**

### DEVOLUCIÓN

**20. Para poder tramitar su solicitud necesitamos que nos envíe lo siguiente:**
☐ Nombre completo del (de la) demandante
☐ Nombre completo del (de la) demandado (a)
☐ Otro: _____

☐ Tribunal donde se vio el caso
☐ Número del caso
☐ Año
☐ Sellos de Rentas Internas por: _____
(Ver desglose)

Devuelva este formulario con la información solicitada. De no recibir ésta dentro de los próximos 15 días, procederemos a archivar su solicitud y deberá radicar una nueva.

Nombre del (de la) Funcionario(a) Autorizado(a)    Firma del (de la) Funcionario(a) Autorizado(a)    Fecha (día/mes/año)

**21. ARANCELES:**

_____    _____
Presentados    Cancelados

_____    _____
Fijados    Devueltos

**22. Solicitud terminada por:**

**23. Solicitud archivada por:**

**24. Fecha:**

_____
(día/mes/año)

**25. Autorización del (de la) Supervisor(a):** ☐ Autorizada ☐ Denegada

_____    _____
26. Nombre del (de la) Supervisor(a)    27. Firma del (de la) Supervisor(a)

* Si la llamada es de larga distancia, la Secretaría del Tribunal o el Área de Administración de Documentos podrían realizar la misma con cargos revertidos.

OAT 85 Solicitud de Servicios de Documentos
(Rev. Octubre 2021)

Página 1 de 2

THIS EDGE IN FIRST ▲

