UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO et al.,

Debtors.[1]

---

PROMESA
Title III

Case No. 17-BK-3283 (LTS)

(Joint Administered)

---

**REPLY OF THE AVOIDANCE ACTIONS TRUSTEE CONCERNING THE OMNIBUS MOTION TO ESTABLISH LITIGATION CASE MANAGEMENT PROCEDURES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Drivetrain, LLC ("Trustee") submits this reply brief in its capacity as the trustee of the Commonwealth Avoidance Actions Trust (the "Avoidance Actions Trust") and in further support of the *Omnibus Motion by the Avoidance Actions Trustee to Establish Litigation Case Management Procedures* [Docket No. 20560] ("Motion")[2] seeking entry of an Order establishing procedures governing the Avoidance Actions, and states:

**INTRODUCTION**

1.  The Trustee's Motion seeks this Court's approval of the Avoidance Action Procedures to streamline the process for resolving more than 50 pending Avoidance Actions that are now Avoidance Actions Trust Assets. The Avoidance Action Procedures are designed to facilitate the prompt and cost-effective resolution of these adversary proceedings while minimizing the Court's administrative burden and conserving the parties' resources. This Court and Bankruptcy Courts in sister districts throughout the country have adopted similar procedures precisely because they work to achieve consensual resolutions with minimal cost.

2.  On May 3, 2022, only the following three defendants timely filed limited objections with the Court in response to the Motion:

    A) ManpowerGroup, Inc. ("Manpower") [Docket No. 20663] (the "Manpower Limited Objection").[3]

    B) Evertec Group, LLC ("Evertec") [Docket No. 20665] (the "Evertec Limited Objection").[4]

    C) International Surveillance Services Corporation ("ISSC") [Docket No. 50 in Case No. 19-202; Docket No. 20674 in Case No. 17-3283] (the "ISSC Limited Objection" and

---

[2] The Trustee respectfully submits that capitalized terms used but not otherwise defined in this reply shall have the meanings ascribed to them in the Motion.
[3] Manpower is a defendant in Adv. Proc. No. 19-088.
[4] Evertec is a defendant in Adv. Proc. No. 19-044.

1

collectively with the Manpower and Evertec Limited Objections, the "Limited Objections").[5]

3. Additionally, after the deadline to file objections expired and without leave of Court, the following parties filed untimely joinders (collectively, the "Joinders") to certain of the Limited Objections:

A) Bristol-Myers Squibb P.R., Inc. ("Bristol Myers") filed a joinder [Docket No. 20669] to the Evertec Limited Objection (filed on May 3, 2022 at 8:40 PM AST).

B) Facsimile Paper Connection Corp. ("Facsimile Paper") filed a joinder [Docket 20694] to the Manpower and Evertec Limited Objections (filed on May 6, 2022).

C) Total Petroleum Puerto Rico Corp. ("Total Petroleum") filed a joinder [Docket 20693] to the Manpower and Evertec Limited Objections (filed on May 6, 2022).

D) Centro de Desarrollo Academico Inc. ("CDA and, together with Bristol Myers, Total Petroleum, and Facsimile Paper, the "Joinder Parties") filed a joinder [Docket No. 20713] to the Total Petroleum joinder (filed May 9, 2022). CDA also filed a "position" as to the Motion in Case No. 19-053 [Docket No. 44].

4. Through the Limited Objections, the defendants ask this Court to exclude them from three narrow subsets of the Avoidance Action Procedures (the "Disputed Procedures") proposed in the Motion. Notably, three of the objectors are represented by the same law firm. The defendants' positions are briefly outlined below:

| Objector | Disputed Procedure | Brief Description of Objection |
|---|---|---|
| Manpower Limited Objection | Summary Judgment; No Seriatim Practice | Manpower objects only to Section VIII(iv)(d) of the proposed Avoidance Action Procedures (the "Single MSJ Provision"), which would require motions for summary judgment to encompass all issues that would be submitted to the Court for consideration. This provision would also preclude seriatim motions on individual topics.[6] |

---

5  ISSC is a defendant in Adv. Proc. No. 19-202.
6  See Manpower Limited Objection at 3-4.

| Objector | Disputed Procedure | Brief Description of Objection |
|---|---|---|
| Evertec Limited Objection | Mandatory Mediation | The Evertec Limited Objection focuses solely on the mandatory mediation provision of the proposed Avoidance Action Procedures.[7] The Bristol Joinder joins only the Evertec Limited Objection. |
| ISSC Limited Objection | Length of the Proposed Stay | ISSC objects to the mandatory mediation provision of the Avoidance Action Procedures. ISSC also objects to the proposed stay period of 120 days, preferring 60 days instead.[8] |

5. As explained below, the Trustee respectfully submits that Manpower, Evertec, and ISSC (and the untimely Joinder Parties) should not be exempted from the proposed Disputed Procedures and the Limited Objections should be overruled in their entirety. To the extent the Court sustains any of the Limited Objections, the Trustee respectfully submits that only the relevant Objecting Defendant should be excused from the Disputed Procedure because the remainder of the entire group of adversary defendants did not object to the Disputed Procedures.

A. **THE LIMITED OBJECTIONS AND JOINDERS ARE PREMATURE**

6. Any objections to the Single MSJ Provision or the Mandatory Mediation Provision are premature and should be denied at this time. At this point, the Limited Objections are directed at a set of hypotheticals that may never happen. For example, the Trustee is committed to continuing negotiations with the defendants in advance of any mediation. Thus, a case may settle before mediation or be disposed of before summary judgment, making objections to mediation premature. As with any procedures order, the parties retain any right to seek a modification to suit actual circumstances that develop while retaining the framework to guide all the avoidance actions.

B. **EACH OF THE JOINDERS ARE UNTIMELY**

7. The Trustee filed the Motion on April 14, 2022. Pursuant to the Court's Sixteenth Amended Case Management Procedures [Docket No. 20190-1], the deadline to file an objection

---

7 See, e.g., Evertec Limited Objection at 5; see also Motion at 11 (Section IV) (the "Mandatory Mediation Provision").
8 See ISSC Limited Objection at 5.

3

("Objection Deadline") to the Motion was May 3, 2022 at 4:00 p.m. The Objection Deadline was also prominently included in the Motion and the corresponding notice of hearing. Nonetheless, the Joinder Parties filed each of the Joinders after the Objection Deadline and did not otherwise seek leave of the Court to do so. Because each of the Joinder Parties failed to comply with the Court's Case Management Order by submitting untimely Joinders (and, with respect to CDA, its untimely "position"), the Trustee respectfully submits that the Court should overrule the Joinders. *In re Harris*, 275 B.R. 850, 852 (Bankr. S.D. Ohio 2002) (overruling untimely objection); *Distefano v. L. Offs. of Barbara H. Katsos, P.C.*, No. 10-MC-0564, 2011 WL 2446318, at *2 (E.D.N.Y. June 15, 2011) (ignoring opposition papers to motion filed after the deadline set by local rule).

### C. THE COURT HAS AMPLE AUTHORITY TO, AND RESPECTFULLY SHOULD, APPROVE THE MANDATORY MEDIATION PROVISION

8. The First Circuit long ago recognized the Court's authority to establish mandatory mediation, which arises from four potential sources: "(a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedure, and (d) the court's inherent powers." *See In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002). The Court has broad discretion to establish mandatory mediation under the District's Local Rules, section 105 of the Bankruptcy Code, and the Court's inherent powers. The Local Rules in this District provide that the Court may "select[]" a case for mediation "at its discretion." D. P.R. Local Rule 83J(b)(1). This is consistent with the Court's inherent power to order parties to participate in the mediation process. *Atl. Pipe*, 304 F.3d at 140; *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis."), *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011); *In re Acme Cake Co., Inc.*, 495 B.R. 212, 219 (Bankr. E.D.N.Y. 2010) (recognizing that "this Court had the authority to direct the parties to

4

mediation" even if the parties did not consent to such mediation order). Further, the Court has the power to direct the proposed mandatory procedures under section 105 of the Bankruptcy Code. *E.g.*, *Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC)*, 410 B.R. 710, 716-17 (Bankr. M.D. Fla. 2009) (ordering mediation under section 105(a) where "both judicial economy and common sense dictate[d] that the parties, or if needed, the Court resolve [the matter] in an organized and unified manner").

9. In addition to possessing the statutory, rule-based, and inherent authority to require ISSC and Evertec to mediate, the Trustee respectfully submits that the Court is justified in exercising that discretion for several reasons. Specifically, ordering mediation will: (i) preserve the resources of the Court and all parties involved in all of the Avoidance Actions by encouraging a resolution before the expense of additional discovery and trial; (ii) ensure that the Court's trial docket will only reflect those cases that resisted reasonable mediation efforts; (iii) minimize the burden on the Court by ordering uniform procedures at the onset, rather than individual motions for arbitration and the commensurate motion practice; and (iv) provide a vehicle to settle and avoid extensive discovery costs, expert fees, additional professional fees, and expenses that would be borne by ISSC, Evertec, and the ultimate beneficiaries of the Avoidance Actions Trust.

10. Ultimately, mediation will likely prove beneficial even if unsuccessful, has little downside, and does not prejudice any party. At the very least, good-faith mediation discussions may inform the parties as to the key issues and potentially narrow the issues in any litigation while providing a preview of the merits of each party's claim. On the other hand, mediation will not prejudice ISSC's or Evertec's rights if it fails to yield a consensual resolution. Mediation therefore has little downside and will likely prove beneficial even if unsuccessful. *See, e.g.*, *Garland v. Rockford Mfg. Co.*, 3:18-CV-277-HSM-HBG, 2019 WL 4264375, at *2 (E.D. Tenn. Aug. 20,

5

2019), *report and recommendation adopted*, 3:18-CV-277, 2019 WL 4264371 (E.D. Tenn. Sept. 9, 2019) ("[E]ven if the parties' dispute is not settled during the mediation process, mediation often forces the parties to reevaluate their claims and positions and serves to narrow and classify issues." (internal quotations omitted)).

11. These very considerations underscore why courts across the country have routinely approved mandatory mediation procedures in cases like this one with numerous adversary proceedings. *See, e.g.*, *In re Sears Holdings Corp.*, Case No. 18-bk-23538, Docket No. 9134 (Bankr. S.D.N.Y. Dec. 20, 2020) (mandating mediation for adversary proceedings that had not been resolved or settled); *In re Sizmek, Inc.*, Case No. 19-bk-10971, Docket No. 1019 (Bankr. S.D.N.Y. May 10, 2021) (same); *In re Zetta Jet USA, Inc.*, Case No. 17-bk-21386, Docket No. 967 (Bankr. C.D. Cal. July 10, 2019) (mandating mediation if avoidance action not resolved within 30 days after answer); *Smith v. Defendants Listed on Exhibits "1" and "2" (In re Draw Another Circle, LLC)*, Case No. 17-50605, Docket No. 5 (Bankr. D. Del. Aug. 30, 2017). The fair and expeditious resolution of complex cases "often is helped along by creative solutions" which may not be "available in the binary framework of traditional adversarial litigation." *In re Atl. Pipe Corp.*, 304 F.3d at 144-45.

12. Notwithstanding these clear, tangible benefits to the Court and all parties, ISSC and Evertec (joined by the Joinder Parties) oppose the mandatory mediation program in the Avoidance Action Procedures. The Trustee briefly explains why these defendants' main arguments are incorrect:

13. *First*, Evertec and ISSC both suggest that they should be excused from mediation because of their unsuccessful informal exchanges with the Trustee's predecessors and the "added

6

expense" accompanying mandatory mediation.[9] But, as set out above, the process is designed to *preserve*—not waste—the resources of all involved, and offer these defendants a flexible, out-of-court resolution to their respective cases. This is a far cry from a burdensome, "additional layer of bureaucracy"[10] about which the defendants now complain.

14. The Avoidance Actions Procedures specifically contemplate and are designed to build off the negotiations that the defendants already undertook before the Avoidance Actions Trust was created. The proposed procedures provide for a stay to allow the Trustee to analyze the information developed in dozens of disputes and exchanged before the Trustee's appointment and then informally negotiate with defendants well before any mediation. No defendant has objected to the informal settlement provisions of the Avoidance Actions Procedures (*e.g.*, Motion at 9, § III). Thus, the procedures are designed to have increasingly structured frameworks for negotiation to ensure the greatest likelihood of settlement at the earliest possible time while reassuring the Court that the parties have exhausted reasonable pre-trial opportunities for resolution.

15. *Second*, Evertec and ISSC suggest that the fact they filed motions to dismiss militates against mandatory mediation in their cases.[11] But, those pending motions would have no bearing on a mediation far later in these cases. Further, defendants do not waive any defenses or rights in mediation because any resolution remains entirely consensual. In fact, an experienced mediator[12] will provide the parties a broader range of resolutions. Thus, the proposed mediation—to use Evertec's words—are more than "reasonably suited to the enhancement of the court's processes, including the orderly and expeditious disposition of pending cases." Evertec Limited

---

9 See Evertec Limited Objection at 6; ISSC Limited Objection at 6.
10 See Evertec Limited Objection at 6-7 (suggesting that mandatory mediation is tantamount to an "additional layer of bureaucracy").
11 See Evertec Limited Objection at 5-6; ISSC Limited Objection at 6.
12 Mediation with the assistance of a skilled facilitator provides parties with the "opportunity to explore a much wider range of options, including those that go beyond conventional zero-sum resolutions." In re Atl. Pipe Corp., 304 F.3d at 144-45.

Objection at 7 (citing *Coyante v. P.R. Ports Auth.*, 105 F.3d 17, 23 (1st Cir. 1997).

16. *Third*, Evertec concludes that mandatory mediation is part of an effort by the Trustee to "control every aspect of the Avoidance Actions" to create some unequal and burdensome "playing field."[13] But Evertec cannot point to any fact that supports their claim that having *all* parties mediate disputes before an agreed-on mediator somehow tilts the "playing field" in favor of the Trustee and against Evertec. Again, to use Evertec's words, this process is imminently "fair" and "expeditious."

### D. THE PROPOSED STAY IS APPROPRIATE

17. ISSC does not object to a stay, but does object to a stay of 120 days, although it concedes that a 60 day stay is reasonable.[14] It fails to offer any substantive rebuttal of any of the factors governing the issuance of the 120-day stay set forth in the Motion. *E.g.*, Motion at 14-17. Instead, ISSC argues that there is "no need" because the Trustee "should benefit" from the informal exchange of information undertaken by the Special Claims Committee and the Committee and because the Court has already previously extended deadlines.[15] This argument is wrong.

18. *First*, ISSC was one of numerous defendants and tolled parties to have participated in an informal information exchange with the Special Claims Committee and the Committee. Any "analysis" that would have been associated with that process was only handed over to the Trustee on the effective date of the Plan a short time ago; a process that is still ongoing. That same volume of information that ISSC contends the Trustee should have, multiplied by over 80 defendants and tolled parties, weighs in favor of providing the Trustee with time to analyze that information.

19. *Second,* a stay of 120 (not 60) days is also important because it provides the parties

---

13 Evertec Limited Objection at 6-7.
14 ISSC Limited Objection at 6 (suggesting a stay of 60 days is reasonable).
15 See id.

a period of time to begin informal settlement discussion without the press or expense of litigation.

20. *Third,* ISSC — as the only party objecting to the stay — has not articulated that it would suffer prejudice from a 120-day stay, although it suggests that a shorter stay is appropriate. Nor has ISSC attempted to apply the other factors considered by courts in evaluating a proposed stay. *See, e.g.*, *Walsh Constr. Co. P.R. v. United Sur. & Indem. Co.*, CV 12-1401 (SEC), 2015 WL 13548470, at *4 (D.P.R. Sept. 28, 2015) (providing in considering a stay, courts generally "balance the equities" and consider the "potential prejudice that [a stay] may entail to each party.").

### E. THE SUMMARY JUDGMENT PROCEDURES ARE APPROPRIATE

21. The Single MSJ Provision is consistent with a fundamental purpose of the proposed Avoidance Action Procedures—provide the parties and the Court an orderly and efficient mechanism for dealing with a large number of cases. Like the rest of the proposed Avoidance Action Procedures, the Court has ample discretion to limit successive motions for summary judgment as part of its inherent power to administer its dockets. *See, e.g.*, *Essex Ins. Co. v. Foley*, 827 F. Supp. 2d 1326, 1329 n.2 (S.D. Ala. 2011) ("[N]o federal litigant has an absolute right to bring multiple, piecemeal motions for summary judgment."); *United States v. Copar Pumice Company, Inc.*, Civ. No. 09-1201, 2013 WL 12159365, * 3 (D.N.M. Sept. 12, 2013) ("The Court concludes that a decision to limit successive summary judgment motions and briefing falls within its sound discretion to manage its docket and secure the efficient resolution of this proceeding.").

22. The Single MSJ Provision promotes judicial efficiency by prohibiting multiple motions for partial summary judgment, and leaning on the 35-page limitation for such motions. This procedure spares the parties and Court the significant expenditure of resources that are involved in the briefing and consideration of multiple summary motions and their correlative statements of material facts. *William Island Synagogue, Inc. v. City of Aventura*, No. 04-20257-

CIV, 2004 WL 2504633, at *2 (S.D. Fla. Nov. 2, 2004) ("The bar imposed by the local rules [concerning multiple summary judgment motions], in part, protects the party opposing summary judgment and conserves judicial resources by preventing [parties] from filing a second (or third or fourth) motion for partial summary judgment."). In fact, nowhere in the Manpower Limited Objection is there an answer to the following, straightforward question: why can't Manpower fit all its summary judgment arguments within 35-pages?

23. Manpower's objections to the Single MSJ Provision are unavailing. Manpower argues that it should be excused from the Single MSJ Provision because the claims at issue in its case involve "several distinct claims" (or, possibly, defenses and "distinct legal issues") that "may become ripe for summary judgment." *See* Manpower Limited Objection at 3-4. But almost every complex case has multiple claims and defenses or "distinct legal issues". Manpower gives no reason why it cannot present arguments relating to multiple claims, defenses, or legal issues in a single motion. Further, Manpower suggests that it "could also be prejudiced" by being unable to move for summary judgment on "threshold issues" that may exist. But threshold issues are for motions to dismiss, and — unsurprisingly — Manpower cannot identify any possible single threshold for summary judgment. *See Santiago-Rivera v. Hosp. Gen. Menonita de Aibonito*, CV 18-1084 (SCC), 2021 WL 1627538, at *2 (D.P.R. Apr. 27, 2021) ("The purpose of a motion for summary judgment is to evaluate record evidence and facts to determine whether a trial is necessary.")

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order, substantially in the form as the order attached to the Motion as Exhibit A, granting the relief requested in the Motion, overruling the objections raised in each of the Limited Objections (and untimely Joinders), and granting the Trustee such other relief as this court deems just and proper.

Dated this 10th day of May 2022

>Respectfully submitted by:
>
>*/s/ John Arrastia*
>John Arrastia, Esq. (*Pro Hac Vice*)
>Jesus M. Suarez, Esq. (*Pro Hac Vice*)
>Angelo M. Castaldi, Esq. (*Pro Hac Vice*)
>**CONTINENTAL PLLC**
>255 Alhambra Cir. Suite 640
>Coral Gables, FL 33134
>Tel: 305-677-2707
>jarrastia@continentalpllc.com
>JSuarez@continentalpllc.com
>ACastaldi@continentalpllc.com
>*Counsel to the Trustee*
>
>/s/ *Juan J. Casillas Ayala*
>Juan J. Casillas Ayala, Esq. (USDC-PR 218312)
>Luis F. Llach Zúñiga, Esq. (USDC-PR 223112)
>Juan C. Nieves González, Esq. (USDC-PR 231707)
>Edna Tejeda Oyola, Esq. (USDC-PR 219803)
>**CASILLAS, SANTIAGO & TORRES LLC**
>El Caribe Office Building
>53 Palmeras Street, Ste. 1601
>San Juan, PR 00901-2419
>Telephone: (787) 523-3434
>jcasillas@cstlawpr.com
>lllach@cstlawpr.com
>jnieves@cstlawpr.com
>etejeda@cstlawpr.com
>*Local Counsel to the Trustee*

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on May 10, 2022 I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all appearing parties in the captioned proceeding.

>/s/ *Juan J. Casillas Ayala*
>Juan J. Casillas Ayala, Esq. (USDC-PR 218312)