Hearing Date: June 29, 2022 at 9:30AM (Atlantic Standard Time)
Response Deadline: June 13, 2022 at 4:00PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to ERS.** |

---

### FOUR HUNDRED FIFTY-FIRST OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS ASSERTED AGAINST THE INCORRECT DEBTOR

---

To the Honorable United States District Court Judge Laura Taylor Swain:

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS," or the "Debtor"), by and through the Financial Oversight and Management Board

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

for Puerto Rico (the "<u>Oversight Board</u>"), as the sole Title III representative of ERS pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[2] files this four hundred fifty-first omnibus objection (the "<u>Four Hundred Fifty-First Omnibus Objection</u>") to the proofs of claim incorrectly asserted against ERS, each as listed on **<u>Exhibit A</u>** hereto, and in support of the Four Hundred Fifty-First Omnibus Objection, respectfully represents as follows:

<u>**JURISDICTION**</u>

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

<u>**BACKGROUND**</u>

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "<u>Commonwealth Title III Case</u>").[3]   On May 21, 2017 (the "<u>Petition Date</u>"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "<u>ERS Title III Case</u>," and together with the Commonwealth Title III

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]  All ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS unless otherwise noted.

Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[4]

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.     ERS**

5.     ERS is a trust established by the Commonwealth in 1951 for the economic wellbeing of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A. § 775.  ERS was established to administer the payment of pensions and other benefits to officers and employees of the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly (the "Legislature"), and officers and employees of public corporations and municipalities.  *See* 3 L.P.R.A. § 761.

---

[4]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.     More than 260,000 active retirees and employees participated in ERS and relied on it for retirement and other benefits.  Many of these beneficiaries relied on payments from ERS as their primary source of income.

7.     Under Act 447 of May 15, 1951 (codified, as amended, at 3 L.P.R.A. §§ 761–788) (the "Enabling Act"), all government employees whose retirement benefits were administered by ERS were to receive defined benefits calculated based on a statutory formula that considered factors including the employee's salary and years of service.  *See* 3 L.P.R.A. § 761, et seq.  ERS also administered additional ancillary benefit programs, including benefit programs for certain government employees who were entitled to receive disability benefits (*see, e.g.*, Act 127-1958, Act 447-1951).

8.     ERS was funded primarily by contributions from employers ("Employers' Contributions"), the amount of which was determined by statute pursuant to a formula based on the amount of active employee payroll of participating public employers from time to time (and not based on payments made or to be made to retirees).  Employers covered by ERS included the Commonwealth, its instrumentalities, and municipalities, excluding, among others, the school system and the judiciary.

9.     ERS was underfunded from its inception, and, after many attempts at its reform failed to return ERS to solvency, ERS filed a petition under Title III of PROMESA on May 21, 2017.  *See supra* ¶ 3.

10.    After ERS filed for Title III, on June 25, 2017 and August 23, 2017, the Legislature passed the Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188"), and Governor Rosselló signed Act 106-2017 ("Act 106") into law.  Together, Act 106 and Joint Resolution 188 (collectively, the "Legislation") reformed Puerto Rico's retirement systems

by (a) having the Commonwealth assume ERS's obligations to pay pensioners, (b) having employers reimburse the Commonwealth (the "Paygo Payments") for payments actually made by the Commonwealth to the employers' current pensioners, and (c) because ERS would no longer be responsible for paying benefits, eliminating employers' obligations to contribute to ERS.  *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

11.     As a result of the Legislation, ERS stopped receiving Employers' Contributions as of July 1, 2017, and was relieved of the obligation to pay retiree benefits.

12.     As part of these reforms, and in partial exchange for the Commonwealth's assumption of ERS's obligation to pay retirement benefits, ERS was required to sell its assets and transfer the proceeds, in addition to any existing available funds, to the Puerto Rico Department of Treasury's general fund to offset a portion of the Commonwealth's assumed pension liabilities. *See* Act 106, § 1.4; J.R. 188, § 2.

**C.     Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA and CCDA Qualifying Modifications**

13.     On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (the "Eighth Amended Plan," as subsequently amended and modified, the "Plan") [ECF No. 19053].   The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

14.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the*

*Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the
Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight
Board filed a further revised Plan in compliance with the Court's orders. *See Modified Eighth
Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No.
19784].

15.     On January 18, 2022, the Court confirmed the Plan. *See Order and Judgment
Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth
of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of
Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

16.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a)
the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No.
21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto
Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"),
which complement the transactions contained in the Plan.

17.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective
Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry
of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the
Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of
the Effective Date* [ECF No. 20349].

18.     The CCDA QM and PRIFA QM also became effective on March 15, 2022. *See*
Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**D.    Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

19.    To date, approximately 178,099 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Associates, LLC ("Kroll").  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.    Of the proofs of claim filed, approximately 117,485 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 53,390 have been filed in relation to, or reclassified to be asserted against, ERS.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

21.    To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.    In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

23.    Pursuant to the Initial Omnibus Objection Procedures and the Amended Omnibus Objection Procedures, the Court has held 24 hearings related to over 315 omnibus objections filed by the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Public Buildings Authority ("PBA") and/or ERS.  Based upon rulings and orders of the Court to date, approximately 100,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

24.     This Four Hundred Fifty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

25.     The Amended Omnibus Objection Procedures allow ERS to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

26.     The Four Hundred Fifty-First Omnibus Objection seeks to reclassify, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(2) and the Amended Omnibus Objection Procedures, the claims identified in the column titled "Asserted" in **Exhibit A** hereto (collectively, the "Incorrect Debtor Claims"), which identify ERS as obligor, when such claims are properly asserted, if at all, against the Commonwealth.

27.     Pursuant to the Legislation, the Commonwealth assumed any obligation to make payments to pensioners or other beneficiaries of ERS.  Specifically, Act 106 provides "the disbursement of the benefits of all Pensioners and Beneficiaries are guaranteed by the General Fund [of the Commonwealth] through the 'pay as you go' scheme . . .".  Act 106, § 2.1(b); *see also id.* § 2.4(a) ("When this Law enters into effect, the benefits of the Accumulated Pensions of the Retirement System Participants who began working before the Law took effect will be preserved and guaranteed by the Government [of the Commonwealth]").  Act 106 also specified that all benefit obligations of ERS were to be transferred to the Commonwealth and paid in accordance with ERS's obligations to such beneficiary as of the time of Act 106's enactment, including "disability pensions, death benefits, payments to beneficiaries, reimbursement of contributions, and any sums owed or benefits of a similar nature".  *Id.* § 2.3.  Accordingly, any

claims asserting an entitlement to pension or other benefits by individuals previously participating in ERS properly lie against the Commonwealth.

28.      Each of the Incorrect Debtor Claims assert liabilities associated with alleged obligations for pension benefits accumulated over the course of the claimant's employment or additional pension contributions following changes to the claimant's salary and benefits.  As explained above, the Legislation transferred any obligation to make such payments to the Commonwealth.  Therefore, the amounts allegedly owed to the claimants who filed the Incorrect Debtor Claims—if any—are owed by the Commonwealth, and not ERS.

29.      In addition to claims related to pensions and other benefits, certain of the Incorrect Debtor Claims allege claims against the Commonwealth or its component agencies for salaries or wage benefits, or alleged employment discrimination.  Each of these claims also is improperly asserted against ERS, because any liabilities associated with these claims lies, if at all, against the Commonwealth.

30.      Accordingly, the Incorrect Debtor Claims should be reclassified to be asserted against the Commonwealth, the Title III Debtor identified in the column titled "Corrected" in **Exhibit A** hereto (collectively, the "Reclassified Claims").  The holders of the Reclassified Claims will not be prejudiced by the reclassification of their claims because their claim will be preserved as asserted against the Commonwealth for determination at a later date.  The Debtors reserve their right to object to the Reclassified Claims on any other grounds whatsoever.

31.      In support of the foregoing, ERS relies on the *Declaration of Jay Herriman in Support of the Four Hundred Fifty-First Omnibus Objection (Non-Substantive) of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Claims Asserted Against the Incorrect Debtor*, dated May 13, 2022, attached hereto as **Exhibit B**.

## NOTICE

32.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, ERS has provided notice of this Four Hundred Fifty-First Omnibus Objection to (a) the individual creditors subject to this Four Hundred Fifty-First Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico.   A copy of the notice for this Four Hundred Fifty-First Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Four Hundred Fifty-First Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  ERS submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

33.     This Four Hundred Fifty-First Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to the Reclassified Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

34.     No prior request for the relief sought in this Four Hundred Fifty-First Omnibus Objection has been made to this or any other court.

WHEREFORE ERS respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting ERS such other and further relief as is just.

Dated: May 13, 2022
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

**Fecha de la vista: 29 de junio de 2022, a las 9:30  (AST)**
**Fecha límite para responder: 13 de junio de 2022, a las 16:00  (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA
DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>          como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>                              Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el SRE.** |

**CUADRINGENTÉSIMA QUINCUAGÉSIMA PRIMERA OBJECIÓN GLOBAL (NO
SUSTANTIVA) DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO
DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES
RADICADAS CONTRA EL DEUDOR INCORRECTO**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor
Swain:

---

[1]  Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de
Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de
cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de
Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva
federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA")
(Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación
contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la
"ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación
contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado
Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos
cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía
Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro
dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos
de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los
"Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la
identificación contributiva federal: 3801) (Los números de los casos de Título III están
enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa
informático).

El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del SRE conforme a la sección 315(b) de la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico ("PROMESA"),[2] radica la presente cuadringentésima quincuagésima primera objeción global (la "Cuadringentésima quincuagésima primera objeción global") a las evidencias de reclamaciones incorrectamente alegadas contra el SRE, según se expone en el **Anexo A** del presente documento, y en apoyo de la Cuadringentésima quincuagésima primera objeción global manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

A.      **Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").[3]  El 21 de mayo de

2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración

conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio

para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III

de dicho cuerpo legal (el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA,

los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió

la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm.

537. [4]

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije*

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

*la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que*

*A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la*

*forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el

Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y

procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III.

Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el

Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 16:00  (AST).

---

[3] Todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra
   Núm. 17 BK 3283-LTS, salvo que se indique lo contrario.

[4] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia
   a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

## B.   SRE

5.      El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es una agencia gubernamental, aparte e independiente del Gobierno del ELA y de otras de sus instrumentalidades. *Véase* 3 L.P.R.A. § 775. El SRE fue creado para administrar el pago de las pensiones y otros beneficios a funcionarios y empleados del Gobierno del ELA, miembros y empleados de la Asamblea Legislativa de Puerto Rico (la "Legislatura") y funcionarios y empleados de corporaciones públicas y municipios. *Véase* 3 L.P.R.A. § 761.

6.      Más de 260,000 retirados y empleados activos han participado en el SRE y dependido de él en cuanto a sus beneficios de retiro y otros beneficios. Muchos de esos beneficiarios han dependido de los pagos del SRE como su principal fuente de ingresos.

7.      Conforme a la Ley 447 del 15 de mayo de 1951 (codificada, según enmienda, en 3 L.P.R.A. §§ 761–788) (la "Ley Habilitante"), todos los empleados públicos cuyos beneficios de retiro fueran administrados por el SRE debían recibir beneficios definidos calculados sobre la base de una fórmula legal que tomaba en consideración factores que incluían el salario y los años de servicio del empleado. *Véase* 3 L.P.R.A. § 761, *et seq*. El SRE también administró programas adicionales de beneficios complementarios, incluidos programas de beneficios para determinados empleados del Gobierno que tenían derecho a recibir beneficios por discapacidad (*véanse, por ejemplo*, la Ley 127-1958 y la Ley 447-1951).

8.      El SRE estuvo financiado principalmente por aportaciones patronales (las "Aportaciones Patronales"), cuyo monto se determinaba por ley conforme a una fórmula basada sobre el monto de la nómina del empleado activo que los patronos públicos participantes pagaran a lo largo de cierto período de tiempo (y no sobre la base de pagos realizados, o por realizarse, a

4

los retirados). Los patronos cubiertos por el SRE incluían al ELA, sus instrumentalidades y municipios, pero excluían, entre otros, al sistema escolar y la judicatura.

9.      Desde un principio, el SRE estuvo infrafinanciado y, tras muchos intentos fallidos de reforma, el SRE no ha vuelto a ser solvente, por lo que el 21 de mayo de 2017 radicó una petición conforme al Título III de PROMESA. *Véase supra ¶ 3.*

10.     Tras la radicación por el SRE conforme al Título III, el 25 de junio de 2017 y el 23 de agosto de ese mismo año, la Legislatura adoptó la Resolución conjunta relativa a otras asignaciones para el año fiscal 2017-2018 (la "Resolución Conjunta 188") y el Gobernador Rosselló autorizó la promulgación de la Ley 106-2017 (la "Ley 106"). Juntas, la Ley 106 y la Resolución Conjunta 188 (conjuntamente, la "Legislación") reformaron el sistema de retiro de Puerto Rico al a) hacer que el ELA asumiera las obligaciones del SRE en cuanto al pago de pensiones, b) hacer que los patronos reembolsaran al ELA (los "Pagos PayGo") los pagos efectivamente realizados por el ELA a los pensionados actuales de los patronos, y c) eliminar las obligaciones de los patronos de realizar aportaciones al SRE (ya que el SRE ya no sería responsable de pagar beneficios). *Véase* la Ley 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

11.     Como consecuencia de la Legislación, a partir del 1 de julio de 2017 el SRE dejó de recibir Aportaciones Patronales y fue liberado de la obligación de pagar beneficios de retiro.

12.     Como parte de dichas reformas, y a modo de un intercambio parcial por la asunción por parte del ELA de las obligaciones del SRE consistentes en pagar los beneficios de retiro, el SRE tenía la obligación de vender sus activos y transferir los ingresos obtenidos, además de cualquier fondo disponible ya existente, al fondo general del Departamento de Hacienda de Puerto Rico para compensar por una parte de las responsabilidades relativas a pensiones asumidas por el ELA. *Véase* la Ley 106, § 1.4; J.R. 188, § 2.

**C.      Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y las Modificaciones Calificativas de PRIFA y CCDA.**

13.      El 3 de noviembre de 2021, la Junta de Supervisión radicó (en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP")), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (el "Octavo Plan de Ajuste"), y en su versión enmendada y modificada posteriormente denominado, el "Plan") [ECF núm. 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

14.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III*, [ECF núm. 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF núm. 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III,* [ECF núm. 19784].

15.      El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y*

*de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III,* [ECF núm. 19813].

16.     El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso núm. 21-01493, ECF núm. 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso núm. 21-01492, ECF núm. 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

17.     El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF núm. 20349].

18.     Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso núm. 21-01493, ECF núm. 74; Caso núm. 21-01492, ECF núm. 84.

**D.     Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

19.     Hasta la fecha, se han radicado aproximadamente 178,099 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Associates, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

20.     De las evidencias de reclamaciones radicadas, aproximadamente 117,485 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 53,390 han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

21.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*

*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

22.   En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

23.   Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado 24 vistas vinculadas con más de 315 objeciones globales radicadas por el Estado Libre Asociado de Puerto Rico (el "ELA"), la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP") y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,000 reclamaciones que reivindicaban $43 billones en responsabilidad

9

contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III.

24.     Esta Cuadringentésima quincuagésima primera objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

25.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al SRE radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

26.     La Cuadringentésima quincuagésima primera objeción global pretende que se reclasifiquen, de conformidad con la regla 3007(d)(2) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, las reclamaciones identificadas en la columna titulada "Alegadas" en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones de Deudores Incorrectos"), las cuales identifican como deudor al SRE, cuando lo correcto sería que tales reclamaciones se alegaran, si acaso, contra el ELA.

27.     Conforme a la Legislación, el ELA asumió todas las obligaciones de realizar pagos a los pensionados u otros beneficiarios del SRE. Más concretamente, la Ley 106 dispone que "el desembolso de los beneficios de todos los Pensionados y Beneficiarios están garantizados por el Fondo General [del ELA] a través del esquema "*pay as you go*" (pago por uso).. .".  Ley 106, § 2.1(b); *véase también id*. § 2.4(a) ("Al entrar en vigor esta Ley, se preservarán y garantizarán por el Gobierno [del ELA] los beneficios de las Pensiones Acumuladas de los Participantes en el Sistema de Retiro que comenzaron a trabajar antes de entrar en vigor la presente Ley"). La Ley

106 también especificó que todas las obligaciones de beneficios del SRE tenían que transferirse al ELA y pagarse de acuerdo con las obligaciones del SRE frente a dichos beneficiarios a la fecha de la promulgación de la Ley 106, lo que incluye "pensiones por discapacidad, beneficios por fallecimiento, pagos a beneficiarios, reembolso de aportaciones y cualquier cantidad adeudada o beneficio de naturaleza similar". *Id.* § 2.3. En consecuencia, lo correcto sería alegar cualquier reclamación, que reivindique un derecho a beneficios de pensiones o a otros beneficios a favor de personas físicas que hayan participado anteriormente en el SRE, contra el ELA.

28.   Cada una de las Reclamaciones de Deudores Incorrectos alega responsabilidades vinculadas con supuestas obligaciones relacionadas con beneficios de pensiones acumulados durante el empleo del reclamante o aportaciones adicionales por pensiones tras producirse los cambios en el salario y los beneficios del reclamante. Como se explicó anteriormente, la Legislación transfirió al ELA todas las obligaciones de realizar dichos pagos. En consecuencia, los montos supuestamente adeudados a los reclamantes que radicaron las Reclamaciones de Deudores Incorrectos los debe pagar en todo caso el ELA, no el SRE.

29.   Además de las reclamaciones relacionadas con pensiones y otros beneficios, algunas Reclamaciones de Deudores Incorrectos alegan reclamaciones contra el ELA o sus agencias integrantes por beneficios de salarios o sueldos, así como por supuesta discriminación laboral. Cada una de dichas reclamaciones también está alegada indebidamente contra el SRE, ya que en todo caso cualquiera de las responsabilidades vinculadas con dichas reclamaciones corresponde al ELA.

30.   En consecuencia, las Reclamaciones de Deudores Incorrectos deben ser reclasificadas como las alegadas contra el ELA, el Deudor de Título III identificado en la columna titulada "Corregidas" en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones

<u>Reclasificadas</u>"). Los titulares de las Reclamaciones Reclasificadas no se verán perjudicados por la reclasificación de sus reclamaciones porque sus reclamaciones serán conservadas como alegadas contra el ELA para su determinación en una fecha posterior. Los Deudores se reservan el derecho a objetar a las Reclamaciones Reclasificadas sobre cualquier otro motivo que fuere.

31.     En apoyo de lo anterior, el SRE invocan la *Declaración de Jay Herriman en apoyo de la Cuadringentésima quincuagésima primera objeción global (no sustantiva) del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones Radicadas contra el Deudor Incorrecto*, de fecha 13 de mayo de 2022, adjunta al presente como **Anexo B**.

<u>**NOTIFICACIÓN**</u>

32.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el SRE ha notificado la presente Cuadringentésima quincuagésima primera objeción global a) a los acreedores individuales objeto de esta Cuadringentésima quincuagésima primera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 16* [ECF núm. 20190-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.ra.kroll.com/puertorico. Una copia de la notificación relativa a esta Cuadringentésima quincuagésima primera objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Cuadringentésima quincuagésima primera objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El SRE sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

**RESERVA DE DERECHOS**

33.     Esta Cuadringentésima quincuagésima primera objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones Reclasificadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a impugnar cualquier reclamación sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

**AUSENCIA DE SOLICITUDES PREVIAS**

34.     No se ha radicado ninguna solicitud de remedio previa a la presente Cuadringentésima quincuagésima primera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente.*]

13

POR LO QUE el SRE solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al SRE cualesquiera otros remedios que se consideren justos.

Fecha: 13 de mayo de 2022                    Respetuosamente sometida,
San Juan (Puerto Rico)

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico.*

14