**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

**FOUR HUNDRED SIXTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO PARTIAL DUPLICATE, DEFICIENT, AND/OR NO LIABILITY BOND CLAIMS**

---

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III

representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA"),[2] files this four hundred sixty-first

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

omnibus objection (the "Four Hundred Sixty-First Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which appears to be based, in part, on (*a*) bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), (*b*) an ownership interest in bonds issued by the Government Development Bank ("GDB"), (*c*) an ownership interest in bonds issued by the Puerto Rico Aqueduct and Sewer Authority ("PRASA") and of the Puerto Rico Conservation Trust Fund ("PRCTF"), which are not Title III Debtors, for amounts for which the Debtors have not guaranteed repayment, (*d*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or (*e*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.   A portion of each of the claims listed on **Exhibit A** hereto will remain asserted against the Commonwealth.   The remaining portions of certain of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim.   In support of the Four Hundred Sixty-First Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A.    The Bar Date Orders

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Title III Case").[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute**

5.      COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth.  Pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray

---

[3] All ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS unless otherwise noted.

certain debt obligations of GDB and the Puerto Rico Public Finance Corporation (the "COFINA Bonds"). Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

6.       The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "COFINA Plan") [ECF No. 4652] on January 9, 2019. The Court considered confirmation of the COFINA Plan and any objections thereto at a hearing on January 16-17, 2019.

7.       On February 4, 2019, the Court confirmed the COFINA Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute"). *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048]. On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "COFINA Settlement Order"). On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "COFINA Amended Confirmation Order"). The Plan became effective on February 12, 2019 (the "COFINA Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**C.**     **Bond Debt Issued by the Puerto Rico Aqueduct and Sewer Authority**

8.     PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

9.     The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2012, PRASA issued $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," or the "PRASA Senior Lien Bonds").

10.     Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing. Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[4]  In addition, the Commonwealth has not guaranteed repayment of the PRASA Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[5]

11.     On July 20, 2021, the Oversight Board approved a proposed refunding transaction wherein PRASA would issue a series of 2021ABC and 2022A Senior Lien Bonds to refinance

---

[4] See, e.g., https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[5] See, e.g., Offering Statement for PRASA Revenue Bonds, Series B (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584465-ER454076-ER856857.pdf.

5

$1.8 billion of PRASA's outstanding 2012AB Senior Bonds (the "PRASA Refinancing
Transaction").

**D.     The GDB Title VI Proceedings and Qualifying Modification**

12.     GDB is a public corporation and governmental instrumentality of the
Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of
the Commonwealth (the "Government") in performing its fiscal duties and in more effectively
carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017,
the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which
contemplated an orderly wind-down of the operations of GDB based upon the determination that
there was no clear path for the long-term viability of GDB based on its then-current financial
condition.

13.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB,
pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August
10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to
PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District
Court for the District of Puerto Rico.

14.     On November 7, 2018, the Court approved the Qualifying Modification pursuant
to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for
Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for,
among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery
Authority in exchange for the cancellation of, among other things, certain participating bonds and
guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the
Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the
guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and

6

its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

15.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

### E.     Bond Debt Issued By The Puerto Rico Conservation Trust Fund

16.     The Puerto Rico Conservation Trust Fund ("PRCTF") is a charitable, irrevocable and perpetual trust fund created under a Deed of Trust dated January 23, 1970.  The principal purpose of PRCTF is to protect and enhance the natural resources and beauty of Puerto Rico. PRCTF has implemented its purpose through the acquisition, active management and development of lands in Puerto Rico. On October 2, 2003, PRCTF released its final offering circular for $100,000,000 worth of 6.30% secured notes with a maturity date of 2033 (the "PRCTF Notes"). The PRCTF Notes were issued as non-recourse debt obligations of PRCTF, payable solely from and secured solely by a pledge of 6.95% cumulative monthly income trust preferred securities to be issued by R&G Capital Trust III.  The offering statement issued in connection with the PRCTF Notes states that the "[PRCTF] Notes are obligations solely of Conservation Trust and do not constitute a debt of the Government of Puerto Rico or any governmental agency . . . ." PRCTF Notes Offering Statement at 1.

**F.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

17.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by PRASA, the Puerto Rico Convention Center District Authority ("PRCCDA"), the Puerto Rico Public Financing Corporation ("PRPFC"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA").

18.      ***ERS***—ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[6]  Purportedly pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[7]  BNYM

---

[6] On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

[7] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master Claim"), which was logged by Kroll as Proof of Claim No. 32004.[8]

19.     ***PRPFC***—PRPFC is a subsidiary corporation of GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  It provides government agencies, instrumentalities, municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth (the "PRPFC Master Claim"), which was logged by Kroll as Proof of Claim No. 13374.

20.     ***PRCCDA***—The Bank of New York Mellon ("BNYM") serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master proof of claim against the Commonwealth, which was logged by Kroll as Proof of Claim No. 37319 (the "PRCCDA Master Proof of Claim").  The PRCCDA Master Claim asserts a "contingent and unliquidated claim against the Commonwealth

---

rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[8] On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075].  For the avoidance of doubt, this Four Hundred Sixty-First Omnibus Objection is without prejudice to the parties' rights with respect to such objection.

on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity."  Addendum to PRCCDA Master Proof of Claim, ¶ 11.

21.    **_PBA_**—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Kroll, as Proof of Claim No. 62833.[9]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."  Rider to PBA Master Claim, ¶¶ 19-21.

22.    **_PRASA_**—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico*, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular")

---

[9] Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by US Bank and US Bank Trust.

serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Kroll as Proof of Claim No. 22620 (the "PRASA Master Claim," and together with the ERS Master Claim, the PRPFC Master Claim, the PRCCDA Master Proof of Claim, and the PBA Master Claim, the "Master Claims"). The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto." Addendum to PRASA Master Claim, ¶ 9.

### G. Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA and CCDA Qualifying Modifications

23.     On November 3, 2021, on behalf of the Commonwealth, ERS, and PBA, the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Eighth Amended Plan," as subsequently amended and modified, the "Plan") [ECF No. 19053]. The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

24.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders. *See Modified Eighth*

*Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 19784].

25.     On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813].

26.     On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

27.     The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

28.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**H.     Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

29.     To date, approximately 178,099 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Associates, LLC ("Kroll").   Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

30.     Of the proofs of claim filed, approximately 117,485 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

31.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

32.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection Procedures</u>").

33.     Pursuant to the Initial Omnibus Objection Procedures and the Amended Omnibus Objection Procedures, the Court has held 24 hearings related to over 315 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>"), the Puerto Rico Electric Power Authority ("<u>PREPA</u>"), PBA, and/or ERS. Based upon rulings and orders of the Court to date, approximately 100,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

34.     This Four Hundred Sixty-First Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

35.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

36.     The Four Hundred Sixty-First Omnibus Objection seeks to partially disallow, in accordance with the Amended Omnibus Objection Procedures, the proofs of claim listed on **<u>Exhibit A</u>** hereto (collectively, the "<u>Claims to Be Partially Disallowed</u>"), many of which purport

14

to assert liabilities arising out of "defaulted" "bonds," "municipal bonds," "bond," or other similar terms asserting liabilities associated with investments in government-issued bonds.  In some instances, the Claims to Be Partially Disallowed provided as supporting documentation a copy of a brokerage statement or other supporting documentation containing information regarding bonds purportedly held by the claimant, but failed to provide information necessary to enable the Commonwealth to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.  Further, the amounts of the bonds included in that supporting documentation did not match the amount on the claimant's proof of claim.  In other instances, the Claims to Be Partially Disallowed did not contain any supporting documentation.

37.     On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

38.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient."  *Id.*

39.     In accordance with the Authorized Mailings Order, the Commonwealth has sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to many of the claimants subject to this Four Hundred Sixty-First Omnibus Objection (the "Mailing").  Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors. In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim. The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to assert, so please provide more detail and do not simply copy over the same information.

> *See* ECF No. 8453-1 at 2, 7.

40.   The Mailings received by the claimants subject to this Four Hundred Sixty-First Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending on the date each Mailing was sent). *See id*. Furthermore, the Mailings cautioned the Claimants that "[i]f you do not respond to this request and do not provide the requested information and documentation in support of your claim, the Debtors may be forced to object to your claim."

41.   Certain of the Claimants identified in **Exhibit A** either failed to respond to the Mailings, or submitted a response that still did not contain information necessary to enable the Commonwealth to reconcile the claim. Accordingly, the Commonwealth reviewed the documentation submitted with the proofs of claim, if available, or with the Mailings for assertions of investments related to government-issued bonds. Based on that review, the Commonwealth understands the Claims to Be Partially Disallowed assert liabilities based, in part, on (*a*) bonds issued by COFINA, (*b*) an ownership interest in bonds issued by GDB, (*c*) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Debtors have not guaranteed repayment, (*d*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, and/or (*e*) one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth. A portion of each of the Claims to Be Partially Disallowed will remain asserted

16

against the Commonwealth.  To the extent certain of the Claims to Be Partially Disallowed purport

to assert additional liabilities not associated with government-issued bonds identified in the proof

of claim, the supporting documentation, or a Mailing response, those portions of the proofs of

claim are deficient because they fail to provide sufficient information to enable the Commonwealth

to reconcile the proofs of claim.

### A.  No Liability for COFINA Bondholder Claims

42.     As identified in **Exhibit A** hereto, certain Claims to Be Partially Disallowed purport

to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA

(collectively the "COFINA Bondholder Claims").

43.     As explained above, the Settlement Order resolved the Commonwealth-COFINA

Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the

Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA

have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF

No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement

Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding

between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has

been dismissed with prejudice following the approval of the compromise and settlement of the

Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended

Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or

relate to the relationship of the Commonwealth and COFINA were released.   Amended

Confirmation Order, ¶ 29(f).[10]  For all of these reasons, the Partial COFINA Bondholder Claims

---

[10] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or
not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,
unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or

should be disallowed because these claims based on an apparent alleged ownership interest in

COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order,

Settlement Agreement, Amended Confirmation Order, and Plan.

**B.   No Liability for GDB Bondholder Claims**

44.     As identified in <u>Exhibit A</u> hereto, certain Claims to Be Partially Disallowed

purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB

(collectively the "<u>GDB Bondholder Claims</u>").

45.     Each of the GDB Bondholder Claims purport to be based in part on the ownership

of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance

of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of

the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer

liable for these claims.   Accordingly, each of the Partial GDB Bondholder Claims has been

released pursuant to the approval and consummation of the Qualifying Modification.   As noted

above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall

release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission

of GDB and its affiliates with respect to any indebtedness of or loan to GDB.   GDB is a public

corporation and instrumentality of the Commonwealth.   The Commonwealth, thus, is an affiliate

of GDB within the scope of the release pursuant to the Qualifying Modification.   Accordingly, the

GDB Bondholder Claims were released upon the consummation of the Qualifying Modification

---

asserted or unasserted; or any right to an equitable remedy for breach or enforcement of
performance, whether or not such right to an equitable remedy is reduced to judgment, fixed,
contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits,
damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action,
demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan §
1.53.

on November 29, 2018.  Because the GDB Bondholder Claims are unenforceable against the
Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be
disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C.  No Liability for Claims Based on Investments in Mutual Funds

46.     As identified in <u>Exhibit A</u> hereto, certain Claims to Be Partially Disallowed purport
to be based in part on investment(s) in one or more mutual funds that, in turn, may have invested
in bonds issued by the Commonwealth (collectively, the "<u>Mutual Funds Claims</u>").

47.     A claimant bears the burden of establishing standing to file a proof of claim.  *In re
Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor
or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11
U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,
392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of
claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's
estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with
"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's
bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no
standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803
F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re
Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest
are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*,
446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving
party must be asserting its own rights and not those belonging to or derivative of a third party");
*In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that

'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

48.   "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Because, at most, the Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Mutual Funds Claims were not filed by an actual creditor of the Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor). Instead, the Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court. *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings"). Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

49.   Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor. To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA? MS. STAFFORD: Correct, your Honor. THE COURT: The objection to the claim is sustained and the

claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Mutual Funds Claims, these claims should be partially disallowed.

### D.  No Liability for Duplicate Bond Claims

50.    As set forth in Exhibit A hereto, certain Claims to Be Partially Disallowed purport to assert liability, in part, on the basis of bonds issued by, HTA, ERS, PBA, PRCCDA, PRIDCO, PRIFA, PRPFC, PRMFA, and the Children's Trust (collectively, the "Duplicate Bond Claims").

51.    Each of the Duplicate Bond Claims purport to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by PRASA, ERS, PRPFC, PRCCDA, and PBA.  Any failure to disallow the Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth's Title III Case.  The holders of the Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### E.  No Liability for PRASA Senior Lien Bonds

52.     As identified in Exhibit A hereto, certain Claims to Be Partially Disallowed purport to assert claims based, in part, on the alleged ownership of bonds issued by PRASA (collectively, the "PRASA Senior Lien Bondholder Claims").

53.     Each of the PRASA Bondholder Claims asserts liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth.  In addition, the Commonwealth has not guaranteed repayment for the Senior Lien Bonds.  Further, the PRASA Senior Lien Bondholder Claims do not assert a basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth.  Accordingly, neither the Commonwealth nor the Court are able to determine the validity of the PRASA Senior Lien Bondholder Claim.

### F.  No Liability for PRCTF Notes

54.     As identified in Exhibit A hereto, certain Claims to Be Partially Disallowed purport to assert claims based, in part, on the alleged ownership of notes issued by PRCTF (collectively, the "PRCTF Note Claims").

55.      Each of the PRCFT Note Claims purports to assert various liabilities against the Commonwealth associated with PRCTF Notes. PRCTF, however, is not a Title III debtor, and is a separate, legally distinct entity from the Commonwealth.  Indeed, the offering statement issued in connection with the PRCTF Notes states that the PRCTF Notes are not an obligation of the Commonwealth.  Moreover, each of the PRCTF Note Claims fails to assert a basis for asserting a claim against the Commonwealth for notes issued by PRCTF that are neither guaranteed by nor a debt of the Commonwealth.  Because of this failure to comply with the applicable rules, neither the Commonwealth nor the Court is able to determine the validity of the PRCTF Note Claims.

56.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Four Hundred Sixty-First Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Partial Duplicate, Deficient and/or No Liability Bond Claims*, dated May 13, 2022, attached hereto as **Exhibit B**.

## NOTICE

57.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth has provided notice of this Four Hundred Sixty-First Omnibus Objection to (a) the individual creditors subject to this Four Hundred Sixty-First Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico.  A copy of the notice for this Four Hundred Sixty-First Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Four Hundred Sixty-First Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

58.     This Four Hundred Sixty-First Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Commonwealth to object to the Claims to Be Partially Disallowed or any other claims on any ground whatsoever.  The Commonwealth expressly reserves all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Commonwealth; (b) a waiver of the Commonwealth's right to dispute any claim on any grounds; (c) a promise or requirement to pay

any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Commonwealth's rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

59.     No prior request for the relief sought in this Four Hundred Sixty-First Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.


Dated: May 13, 2022
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944


/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico*

24

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

**CUADRINGENTÉSIMA SEXAGÉSIMA PRIMERA OBJECIÓN GLOBAL
(SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A
RECLAMACIONES POR BONOS PARCIALMENTE DUPLICADAS, DEFICIENTES
Y/O EN LAS QUE NO EXISTE RESPONSABILIDAD**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión y

Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente cuadringentésima sexagésima primera objeción global (la "Cuadringentésima sexagésima primera objeción global") a evidencias de reclamaciones que figuran en el **Anexo A** del presente documento, cada una de las cuales parece estar basada parcialmente en *a*) unos bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), *b*) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento (el "BGF"), *c*) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA") y el Fondo Fiduciario de Conservación de Puerto Rico (el "FFCPR"), que no son Deudores de Título III, por unos montos por los que los Deudores no han garantizado el reembolso, *d*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de determinados bonistas, y/o *e*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. Parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. Las partes restantes de algunas de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. En apoyo de la Cuadringentésima sexagésima primera objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.     La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.     Órdenes de Fecha Límite

3.     El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III").[3]

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*

---

[3] Todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS, salvo que se indique lo contrario.

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 16:00 (AST).

**B.   Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

5.      COFINA es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del BGF y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos de COFINA"). Bank of New York Mellon actúa como fiduciario con respecto a los Bonos de COFINA.

6.      La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan de COFINA") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan de COFINA y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

7.      El 4 de febrero de 2019, el Tribunal confirmó el Plan de COFINA que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre

4

el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación de COFINA"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada de COFINA"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de entrada en vigor de COFINA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**C.    Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

8.    La AAA fue creada de conformidad con la Ley núm. 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

9.    La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA

emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7

de marzo de 2008 (la "Resolución núm. 1583"). En 2012, la AAA emitió unos bonos de renta,

Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B de

2012" o los "Bonos de Gravamen Prioritarios de la AAA").

10.     Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y

siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de

la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja

que la AAA no ha publicado ninguna notificación de incumplimiento en relación con los Bonos

de Gravamen Prioritarios de la AAA. [4]  Además, el ELA no ha garantizado el reembolso de los

Bonos de Gravamen Prioritarios de la AAA. En consecuencia, las declaraciones de oferta relativas

a los Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado

Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas,

con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos

de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será

responsable por el pago del principal o de los intereses sobre los referidos Bonos". [5]

11.     El 20 de julio de 2021, la Junta de Supervisión aprobó una transacción de reembolso

propuesta, conforme a la cual la AAA emitiría las series 2021ABC y 2022A de Bonos de

Gravamen Prioritarios para refinanciar unos Bonos Prioritarios de la AAA pendientes por un valor

de $1800 millones (la "Transacción de Refinanciamiento de la AAA").

---

[4]     *Véase,                    por                    ejemplo*,
https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[5] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie B
(Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584465-
ER454076-ER856857.pdf.

6

**D.  Procedimientos conforme al Título VI del BGF y Modificación Calificada**

12.     El BGF es una corporación pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

13.     El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

14.     El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento

o préstamo al BGF (incluidos cualesquiera pagarés emitidos o mantenidos por el BGF) o del BGF. *Declaración de Solicitación,* en 57-60, ECF núm. 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

15.    El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico 29 de nov. de 2018), disponible en http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**E.    Deuda de los bonos emitidos por el Fondo Fiduciario de Conservación de Puerto Rico**

16.    El Fondo Fiduciario de Conservación de Puerto Rico (el "FFCPR") es un fondo fiduciario benéfico, irrevocable y perpetuo creado en virtud de un Contrato Fiduciario de fecha 23 de enero de 1970. La finalidad principal del FFCPR es proteger y mejorar los recursos naturales y la belleza de Puerto Rico. El FFCPR ha estado persiguiendo su objetivo a través de la adquisición, gestión activa y desarrollo de terrenos en Puerto Rico. El 2 de octubre de 2003, el FFCPR envió una circular de oferta final relativa a pagarés garantizados con un valor de $100,000,000 al 6.30% con fecha de vencimiento en 2033 (los "Pagarés FFCPR"). Los Pagarés FFCPR fueron emitidos como obligaciones de deuda del FFCPR no susceptibles a recurso, pagaderos y garantizados únicamente mediante una prenda sobre los valores preferentes de fideicomiso acumulativo de ingresos mensuales del 6.95% que ha de emitir R&G Capital Trust III. La declaración de oferta emitida en relación con los Pagarés FFCPR dispone que los "Pagarés [FFCPR] constituyen exclusivamente obligaciones del Fondo Fiduciario de Conservación, por lo que no son deuda del

Gobierno de Puerto Rico ni de ninguna agencia pública". . . ." Declaración de Oferta de los Pagarés FFCPR en 1.

**F.      Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

17.     Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, en el marco del Caso de Título III del ELA se aportaron evidencias de reclamaciones principales en nombre de los tenedores de determinados bonos o pagarés emitidos por la AAA, la Autoridad del Distrito del Centro de Convenciones de Puerto Rico (la "ADCC"), la Corporación para el Financiamiento Público de Puerto Rico (la "CFP"), el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de Edificios Públicos de Puerto Rico (la "AEP").

18.     **_SRE_**: el SRE es una agencia gubernamental, aparte e independiente del Gobierno del ELA y de otras de sus instrumentalidades. *Véase* 3 L.P.R.A § 775.[6] Supuestamente conforme a la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008,

---

[6] El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

y las resoluciones complementarias, el SRE emitió unos bonos prioritarios y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de aproximadamente $2900 millones. [7] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA (la "Reclamación Principal del SRE", que fue registrada por Kroll Restructuring Associates, LLC ("Kroll"), como Evidencia de reclamación núm. 32004.[8]

19. **_CFP_**: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a las agencias públicas, instrumentalidades, municipios y a otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades de

---

[7] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción Global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de Quiebras, artículo 502, y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los Bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[8] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación Principal del SRE. *Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas contra el ELA por el Bank of Nueva York Mellon, como agente fiscal (Reclamación núm. 16775)* [ECF núm. 7075]. En aras de la claridad, la presente Cuadringentésima sexagésima primera objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción.

financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). En nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Kroll como Evidencia de reclamación núm. 13374.

20.    *ADCC*: el Bank of New York Mellon ("BNYM") actúa como fiduciario en relación con determinados Bonos de rentas de impuestos relativos a la ocupación de hoteles, emitidos por la ADCC (los "Bonos de la ADCC"), y en nombre de los tenedores de los Bonos de la ADCC radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Kroll como Evidencia de reclamación núm. 37319 (la "Evidencia de Reclamación Principal de la ADCC"). La Reclamación Principal de la ADCC reivindica una "reclamación contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA en virtud de la ley o equidad". Adenda de la Evidencia de Reclamación Principal de la ADCC, ¶ 11.

21.    *AEP*: la AEP supuestamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de Reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación

Principal de la AEP"), que fue registrada por Kroll como Evidencia de Reclamación núm. 62833.[9]
La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4,000 millones en concepto de capital supuestamente impagado, $160 millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula de la Reclamación Principal de la AEP, ¶¶ 19-21.

22.    _AAA_: la AAA es propietaria y se encarga de los sistemas de suministro público de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, *por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico (el "Banco Popular") actúa como fiduciario en relación con los Bonos de la AAA, y radicó una evidencia de reclamación principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Kroll como Evidencia de Reclamación núm. 22620 (la "Reclamación Principal de la AAA", y junto con la Reclamación Principal del SRE, la Reclamación Principal de la CFP, la Evidencia de Reclamación Principal de la ADCC y Reclamación Principal de la AEP, las "Reclamaciones Principales"). La Reclamación Principal de la AAA alega "una reclamación contingente contra el

---

[9] La Evidencia de Reclamación núm. 62833 enmendó y sustituyó la Evidencia de Reclamación núm. 13351, que fue radicada inicialmente por US Bank y US Bank Trust.

ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de Petición, así como la totalidad de las tasas, costos y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación de tales Bonos". Adenda de la Evidencia de Reclamación Principal de la AAA, ¶ 9.

**G.      Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y las Modificaciones Calificativas de PRIFA y CCDA.**

23.      El 3 de noviembre de 2021, la Junta de Supervisión radicó (en nombre del ELA, del SRE y de la AEP), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (el "Octavo Plan Enmendado", y en su versión enmendada y modificada posteriormente denominado, el "Plan") [ECF núm. 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

24.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF núm. 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF núm. 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF núm. 19784].

25.     El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF núm. 19813].

26.     El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso núm. 21-01493, ECF núm. 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso núm. 21-01492, ECF núm. 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

27.     El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF núm. 20349].

28.     Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso núm. 21-01493, ECF núm. 74; Caso núm. 21-01492, ECF núm. 84.

**H.     Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

29.     Hasta la fecha, se han radicado aproximadamente 178,099 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll. Dichas evidencias de

reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

30.    De las evidencias de reclamaciones radicadas, aproximadamente 117,485 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

31.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*

15

*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

32.     En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

33.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado 24 vistas vinculadas con más de 315 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 100,000 reclamaciones que reivindicaban $43 billones en responsabilidad

contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III.

34.    Esta Cuadringentésima sexagésima primera objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

35.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

36.    La Cuadringentésima sexagésima primera objeción global pretende rechazar parcialmente, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente"), muchas de las cuales pretenden alegar responsabilidades surgidas de "incumplidos", "bonos", "bonos municipales", "bono" u otros términos similares que alegan responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno. En algunos casos, las Reclamaciones que han de ser rechazadas parcialmente proporcionaban como documentación justificativa una copia de un extracto de corretaje u otra documentación justificativa que contenía información sobre bonos supuestamente en posesión del reclamante, pero no proporcionaron información necesaria para que el ELA pueda reconciliar las reclamaciones; por ejemplo, los números CUSIP o montos de los bonos concretos que los reclamantes pretenden alegar. Además, los montos de los bonos incluidos en dicha documentación justificativa no correspondían con el monto que figuraba en la evidencia

17

de reclamación del reclamante. En otros casos, las Reclamaciones que han de ser rechazadas parcialmente no contenían ninguna documentación justificativa.

37. El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores enjuiciar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

38. Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

39. De conformidad con la Orden de Envío Autorizado, el ELA ha enviado al menos una carta a varios reclamantes con sujeción a la presente Cuadringentésima sexagésima primera objeción global esencialmente en formato que se adjunta al presente documento como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al responder a esta carta, rogamos se asegure de proporcionar toda la información solicitada, así como tantos detalles como sea posible aportar sobre su reclamación. Las descripciones que incorporó en su evidencia de reclamación eran demasiado vagas para que los Deudores comprendieran la reclamación que usted trata de alegar, de manera que rogamos proporcione más detalles y no se limite simplemente a copiar la misma información.
>
> *Véase* ECF núm. 8453-1 en 2, 7.

18

40. Los Envíos recibidos por los reclamantes con sujeción a la presente Cuadringentésima sexagésima primera objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en la obligación de oponerse a su reclamación."

41. Algunos de los Reclamantes identificados en el **<u>Anexo A</u>** o bien no respondió a los Envíos, o bien envió una respuesta que tampoco contenía información necesaria que permita al ELA reconciliar la reclamación. En consecuencia, el ELA analizó la documentación sometida con la evidencia de reclamación (si estaba disponible) o con los Envíos en relación con la alegación de inversiones relacionadas con bonos emitidos por el Gobierno. Sobre la base de dicho análisis, el ELA entiende que las Reclamaciones que han de ser rechazadas parcialmente alegan responsabilidades basadas parcialmente en *a*) bonos emitidos por COFINA, *b*) una participación patrimonial en bonos emitidos por el BGF, *c*) una participación patrimonial en bonos emitidos por la AAA, que no es Deudor de Título III, por unos montos por los que los Deudores no han garantizado el reembolso, *d*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos, y/o *e*) una o más inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. Parte de cada una de las Reclamaciones que han de ser rechazadas parcialmente seguirá estando radicada contra el ELA. En la medida en que algunas de las Reclamaciones que han de ser rechazadas parcialmente pretendan alegar responsabilidades adicionales no vinculadas con bonos emitidos por el Gobierno identificados en la evidencia de reclamación, en la documentación justificativa o en el Envío de réplica, dichas

19

partes de las evidencias de reclamaciones son deficientes porque no proporcionan información suficiente para que el ELA pueda reconciliar las evidencias de reclamaciones.

**A. Ausencia de responsabilidad por reclamaciones relativas a los bonistas de COFINA**

42.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas parcialmente en supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones de los Bonistas de COFINA").

43.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones Parciales de los Bonistas de COFINA) que surgieron o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f). [10]   Por todos esos motivos, las Reclamaciones

---

[10] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado,

Parciales de los Bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en

una supuesta y aparente participación patrimonial en los Bonos de COFINA han sido satisfechas,

liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la

Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por Reclamaciones de los Bonistas del BGF**

44.     Conforme a lo identificado en el <u>Anexo A</u> del presente documento, determinadas

Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas,

en parte, en supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las

"<u>Reclamaciones de los Bonistas del BGF</u>").

45.     Cada una de las Reclamaciones de los Bonistas del BGF supuestamente se basa en

parte en la propiedad de los Bonos del BGF objeto de la Modificación Calificada, que dispuso la

emisión de nuevos títulos de valores a cambio de la cancelación de los Bonos del BGF y la

extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no

tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia, cada una de las

Reclamaciones Parciales de los Bonistas del BGF ha sido liberada conforme a la aprobación y la

consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación

Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y

sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u

omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF.

El BGF es una corporación e instrumentalidad pública del ELA. En consecuencia, el ELA es un

---

y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos,
remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción,
procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de
cualquier otra forma". Plan § 1.53.

afiliado del BGF dentro del ámbito de la liberación conforme a la Modificación Calificada. Por lo tanto, las Reclamaciones de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

### C. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

46. Conforme a lo identificado en el <u>Anexo A</u> del presente, determinadas Reclamaciones que han de ser rechazadas parcialmente supuestamente se basan parcialmente en inversión(es) en uno o más fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por el ELA (conjuntamente, las "<u>Reclamaciones de los Fondos Mutuos</u>").

47. Los reclamantes tienen la carga de la prueba para demostrar legitimación a efectos de radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. de Pr. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada "era" persona ajena en relación con el procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del

Deudor".); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

48.     "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamación contra el deudor o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las Reclamaciones de los Fondos Mutuos fueron radicadas en virtud de la condición de reclamante como supuesto acreedor de un supuesto acreedor del ELA, las Reclamaciones de los Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones de los Fondos Mutuos se derivan de reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. Véase el caso Goldman, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla general, carece de

legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo

sigue reteniendo la propiedad de los bonos controvertidos.

49.     En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó

reclamaciones radicadas contra COFINA por unos inversores en los fondos mutuos que, a su vez,

invirtieron presuntamente en los bonos de COFINA, por "carecer de interés individual en los títulos

de valores de COFINA". *Tr. del 13 de marzo de 2019 de la vist. ante su señoría, Laura Taylor

Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su

documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de

esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante

pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra

COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la

reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de

COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global

(sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las

inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la

moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las

Reclamaciones núms. 152470 y 152283* [ECF núm. 9121]. En consecuencia, los reclamantes no

son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas.

Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones de los Fondos

Mutuos, dichas reclamaciones deben rechazarse parcialmente.

## D.  Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos

50.     Según se expone en el <u>Anexo A</u> del presente documento, determinadas

Reclamaciones que han de ser rechazadas parcialmente pretenden alegar responsabilidad, en parte,

sobre la base de bonos emitidos por la ACT, el SRE, la AEP, la ADCC, PRIDCO, la AFI, la CFP, la AFM y el Fideicomiso de los Niños (conjuntamente, las "Reclamaciones Duplicadas por Bonos").

51.     Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la AAA, el SRE, la CFP, la ADCC y la AEP. Si las Reclamaciones Duplicadas por Bonos no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los titulares de las Reclamaciones Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

**E.  Ausencia de responsabilidad por los Bonos de Gravamen Prioritario de la AAA**

52.     Conforme a lo identificado en el Anexo A del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basados parcialmente en supuesta participación patrimonial en los bonos emitidos por la AAA (conjuntamente, las "Reclamaciones de Gravamen Prioritario de los Bonistas de la AAA").

53.     Cada una de las Reclamaciones de los Bonistas de la AAA alega responsabilidades vinculadas con los Bonos AAA de Gravamen Prioritario emitidos por la AAA, que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente del ELA. Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritario. Asimismo, las Reclamaciones

de Gravamen Prioritario de los Bonistas de la AAA no proporcionan fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. En consecuencia, ni el ELA ni el Tribunal pueden determinar la validez de la Reclamación de Gravamen Prioritario de los Bonistas de la AAA.

**F.** Ausencia de responsabilidad por los Pagarés FFCPR

54.    Conforme a lo identificado en el Anexo A del presente documento, determinadas Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basados parcialmente en supuesta participación patrimonial en unos pagarés emitidos por el FFCPR (conjuntamente, las "Reclamaciones por Pagarés FFCPR").

55.    Cada una de las Reclamaciones por Pagarés FFCPR pretende alegar varias responsabilidades contra el ELA vinculadas con los Pagarés FFCPR. Sin embargo, el FFCPR no es deudor de Título III y es una entidad separada y jurídicamente independiente del ELA. En efecto, la declaración de oferta emitida en relación con los Pagarés FFCPR dispone que los Pagarés FFCPR no constituyen una obligación del ELA. Es más, ninguna de las Reclamaciones por Pagarés FFCPR proporciona fundamento alguno para alegar una reclamación contra el ELA por los pagarés emitidos por el FFCPR, que no están garantizados por el ELA ni constituyen su deuda. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni el ELA ni el Tribunal pueden determinar la validez de las Reclamaciones por Pagarés FFCPR.

56.    En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Cuadringentésima sexagésima primera objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos parcialmente duplicadas, deficientes y/o en las que no existe responsabilidad*, de fecha 13 de mayo de 2022, adjunta al presente como **Anexo B**.

26

## NOTIFICACIÓN

57.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA ha notificado la presente Cuadringentésima sexagésima primera objeción global a) a los acreedores individuales objeto de esta Cuadringentésima sexagésima primera objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 16* [ECF núm. 20190-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.ra.kroll.com/puertorico. Una copia de la notificación de esta Cuadringentésima sexagésima primera objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Cuadringentésima sexagésima primera objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

58.     Esta Cuadringentésima sexagésima primera objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA a objetar a las Reclamaciones que han de ser rechazadas parcialmente o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos que asisten al ELA a oponerse a cualesquiera reclamaciones sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud

27

o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

59.    No se ha radicado ninguna solicitud de remedio previa a la presente Cuadringentésima sexagésima primera objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 13 de mayo de 2022
       San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036

28

Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y
Administración Financiera para Puerto
Rico como representante del Estado Libre
Asociado de Puerto Rico.*