UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

| | | |
|---|---|---|
| In re: | : | PROMESA Title III |
| | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | No. 17 BK 3283-LTS |
| | : | (Jointly Administered) |
| As representative of | : | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : | |
| Debtors.[1] | : | |

---

## DECLARATION OF ERNST & YOUNG LLP UNDER THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021

I, Adam Chepenik hereby declare as follows:

1. I am a Principal of Ernst & Young LLP ("EY LLP"). I provide this Declaration on behalf of EY LLP pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, Pub. L. No. 117-82 ("PRRADA").

2. The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

were reviewed by me or professionals of EY LLP and EY US LLP (as defined below) or employees of other member firms of EYGL (as defined below) under my supervision and direction.

3. Ernst & Young Puerto Rico LLC ("EY Puerto Rico"), a Delaware limited liability company that operates in Puerto Rico and a subsidiary of EY US LLP, entered into engagement agreements with the Financial Oversight and Management Board for Puerto Rico (the "Board"). EY Puerto Rico uses employees of its parent entity, EY US LLP, to provide services to the Board (and together with EY LLP and EY Puerto Rico, "EY"). EY has agreed to provide certain advisory services (the "Services") to the Board or its legal advisors in connection with these Title III proceedings. These services include, among other things:

(a) Advise the Board on the assessment of short-term and long-term financial projections.

(b) Advise the Board during the mediation process.

(c) Advise the Board in the development of a Plan of Adjustment ("POA").

(d) Advise the Board on the development of fiscal plan analysis in the area of agency expenditures.

(e) Advise the Board on fiscal plan implementation support, including assisting the Board with bespoke and specialized policy analysis and technical assistance and, if requested by the Board, to government agencies in support of the implementation of fiscal plans.

(f) Consult with the Board and its counsel where the Board and its counsel require EY's assistance related to the assessment of the financial impact of changes to the POA and other matters.

(g) Provide the Board and its counsel with observations related to the financial projections of any appellants of the POA, including an assessment of the calculations, methodologies and assumptions utilized in any actuarial analysis provided by the appellants to support the certifications.

(h) Provide the Board and its counsel with observations related to the financial aspects of the certifications made by the government pursuant to Section 204 of PROMESA, including an assessment of the calculations, methodologies and assumptions utilized in any actuarial analysis provided by the Government to support the certifications.

(i) Provide the Board and its counsel with written expert reports as needed in relation to the actuarial methodologies and reasonability of analyses performed by interested parties in connection with various matters.

(j) Assist the Board and its counsel with potential litigation in connection with the Commonwealth of Puerto Rico POA and Confirmation Order, including the provision of testimony and one or more written expert reports and/or declarations relating to the calculation of the projected costs and other potential consequences arising from any delay in implementing the POA.

(k) Assist the Board with calculations related to pension contributions and benefits under various scenarios.

(l) Assist the Board in negotiations with the Committee of Retirees, union representatives and other interested parties on pension related matters.

(m) As required, update analysis of Puerto Rico's pensions as described by Section 211 of PROMESA to evaluate information provided by pension system advisors.

(n) As required, provide the Board and its counsel with pension analysis support for various POA confirmation processes.

(o) As required, assist the Board with oversight on implementation of pension measures.

(p) As required, assist the Board with pension analysis on Puerto Rico's public pension systems.

(q) Advise the Board on the identification of potential areas of savings or increased efficiency.

(r) Provide the Board with analysis of the fiscal plan's financial implications to unions.

(s) Assist the Board and its counsel in the design of the negotiation strategy.

(t) Advise the Board on the roll forward and on the balances in Government bank accounts as of a date no earlier than December 31, 2018.

(u) Assist the Board with the collection of documents, data and information from governmental agencies, including solicitation of additional agency responses, federal fund deposit accounts, and accounts subject to "claw backs" or litigation claims, or other restrictions, so that the Board's other advisors may make determinations regarding the restricted versus unrestricted nature of the cash balances.

(v) Assist the Board with efforts to bridge existing bank account information to the plan of adjustment, fiscal plans, and budgets, including assistance with scenario analysis on governmental working capital and liquidity needs.

(w) Advise the Board on the development of a comprehensive description of the cash management system of the Commonwealth and its instrumentalities.

(x) To the extent required, perform additional bank account balance analysis.

(y) Prepare other specific financial, economic, and liquidity analysis, as requested by the Board.

(z) Assist the Board with the development of a plan and monitor plan for completion of the carve-out of Puerto Rico Highway and Transportation Authority ("PRHTA") financial information for purposes of Asset Separation Analysis.

(aa) Understand the PRHTA project accounting, general ledger and consolidation architecture during FY2018, FY2019, and FY2020, if available, (together, the "Historical Period"), including organizational dimensions (e.g., business units, profit centers, and cost centers) and chart of accounts.

(bb) Support management in gathering and preparing all required financial information, first centrally and then from other key sources (e.g., auditors and other agencies), as necessary, into a financial reporting model.

(cc) Identify PRHTA income statement and balance sheet accounts directly attributable to the Toll Operations.

(dd) Identify PRHTA income statement and balance sheet accounts that are (i) directly attributable to non-Toll Operations, and thus should be excluded, and (ii) commingled and thus requiring allocations or other carve-out procedures.

(ee) Prepare calculations and analyses as required to support management's conclusion on carve-out and other allocation matters.

(ff) Prepare a template and repository to track all relevant carve-out adjustments.

(gg) As applicable, document account allocation methodologies and accumulate available information to support basis of allocation methodologies (e.g., basis to separate commingled capital expenditures, operating expenses, payroll and other expenses).

(hh) Support management in meetings with other advisors and stakeholders related to any reports on our outputs.

(ii) As needed, compare outputs to PRHTA fiscal plan or other similar projections.

(jj) Advise the Board in connection with the Government's Civil Service Reform pilot.

(kk) Advise the Board on efforts to evaluate a broadband infrastructure grant program administrator, including the structuring of the RFP, procurement process, evaluation of proposals, and onboarding for government staff and preferred bidders.

4

**EY's Disinterestedness**

4. Based on the connections check process that is described herein, to the best of my knowledge, information and belief, EY (a) does not hold or represent an interest adverse to the Debtors' estates, and (b) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as required by PRRADA.

**Ernst & Young Global Limited**

5. The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world. Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The EYGL member firms have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

6. EY LLP is a member firm of EYGL in the United States. EY LLP does not have a parent entity, but rather is 100% owned by its partners. EY LLP engages in the practice of public accountancy and provides accounting and other professional services. All partners of EY LLP are Certified Public Accountants ("CPAs").

7. In addition, Ernst & Young U.S. LLP ("EY US LLP"), the owners of which are EY LLP CPA partners and non-CPA principals, is another member firm of EYGL in the United States. EY US LLP provides infrastructure and support services to EY LLP and EY Puerto Rico, including the services of CPA and non-CPA personnel.

8. Ernst & Young Infrastructure Advisors, LLC ("EYIA") is a subsidiary of EY US LLP that provides advisory services to state and local government agencies, including public-private partnership infrastructure projects. EYIA personnel provide services to the Board.

5

**Disclosure of Connections**

9. In connection with EY LLP's preparation of this Declaration, EY received a copy of the publicly filed list of material interested parties in these cases (the "MIP List") on or about April 12, 2022. The specific names set forth on the MIP List that EY received are referred to herein as the "Parties in Interest."

10. EY has access to a computer database (the "Database") that contains information about actual client engagements and potential engagement activity of all of the member firms of EYGL. The Database also includes the names of other parties that the professionals on the relevant engagement team have identified as also being involved in each engagement (*e.g.*, adverse parties and co-clients). Thus, the Database indicates whether any Debtor entity is involved in an engagement by an EYGL member firm, in which a Party in Interest is a client.[2]

11. EY caused the names of the Parties in Interest to be run through the Database. The disclosure schedule annexed hereto as Exhibit A lists the names of the Parties in Interest and whether a client engagement has been initiated in the Database during the last three years by EY or any other EYGL member firm.

12. To the best of my knowledge, information and belief based on the information set forth in the Database, none of the services rendered to Parties in Interest by EY or any other EYGL member firm have been in connection with the Debtors or these Title III cases, except as otherwise stated herein.

---

[2] The information in the Database is populated by the professionals who are providing services under each engagement. Therefore, the information in the Database may not be 100% correct with respect to all engagements, as human errors may occur. Furthermore, financial information pertaining to engagement activity is the proprietary and confidential information of each individual EYGL member firm. EY may not have the right to access, or if accessed, disclose, such information relating to other EYGL member firms.

13. In 2019, in connection with a third party subpoena issued by a group of investors in a lawsuit against the Employment Retirement System of the Commonwealth of Puerto Rico, EY LLP provided eDiscovery Managed Document Review services to a Citi legal entity pursuant to a contract with Citibank Singapore Limited. That engagement was completed in January 2020.

14. EY LLP is providing grant related services to the New York Power Authority ("NYPA") in connection with NYPA's recovery of costs from the Federal Emergency Management Agency for services provided to the Puerto Rico Electric Power Authority.

15. In 2021, EY Godkendt Revisionspartnerselskab, an EYGL member firm in Denmark ("EY Denmark"), provided contract review and drafting services to International Business Machines Corporation ("IBM") in connection with a spin-off from IBM that included contracts between IBM and the Commonwealth of Puerto Rico. EY Denmark completed work that included contracts with the Commonwealth of Puerto Rico by October 2021.

16. In addition, EY is also providing other services to the Board and/or its counsel but that work does not relate to the Title III proceedings. Those workstreams include, among other things, the Fiscal Year 2023 Commonwealth Budget review, Municipal Revenue Collection Center (CRIM) Support, project management advice at the Puerto Rico Department of Education, contract analysis, capital expenditure studies, and COFINA and Puerto Rico Industrial Company (PRIDCO) fiscal plans and budgets.

17. Additionally, EY conducted a search to determine whether EY (but not any other member firm of EYGL) has paid any person or entity that is specified on Schedule 4 of the MIP List as being a professional service provider that has been retained by a Party in Interest ("Party-Retained Professionals") to provide professional services during the last three years. Based on its search of that database, EY LLP has determined that EY US LLP has paid the following Party-

Retained Professionals during the last three years for professional services: Adsuar Muñiz Goyco Seda & Pérez-Ochoa, P.S.C., Alvarez & Marsal North America, LLC, Berkeley Research Group, LLC, Debevoise & Plimpton Llp, Deloitte Financial Advisory Services LLP, DevTech Systems, Inc., Duff & Phelps LLC, Epiq eDiscovery Solutions, FTI Consulting, Inc., Greenberg Traurig, LLP, Jenner & Block LLP, Milbank LLP, Norton Rose Fulbright US LLP, and Proskauer Rose LLP. EY Puerto Rico has not paid any of the Party-Retained Professionals in the last three years.

18. EY cannot prohibit any other EYGL member firm from accepting any client engagements, including in matters that may be adverse to the Debtors or their bankruptcy estates. Nevertheless, if EY LLP becomes aware of any such engagement by another EYGL member firm, EY LLP will file a supplemental declaration with the Court that contains the pertinent information that EY LLP is authorized to disclose.[3] Moreover, if EY LLP becomes aware that another EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their bankruptcy estates, EY LLP will not permit anyone from such non-US EYGL member firm's engagement team who provides services to the Party in Interest in the adverse matter to be involved in the Services that EY LLP provides for the Debtors during these Title III cases.

19. In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back-office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY LLP). An EY Support Firm assisted EY in

---

[3] There may be situations in which EY LLP will be unable to disclose engagements of non-US EYGL member firms. For example, laws or regulations applicable to a non-US EYGL member firm may preclude that firm from providing information regarding its client engagements to EY LLP, or applicable laws and regulations may prohibit disclosure. If that issue arises, EY LLP will discuss it with the Office of the United States Trustee to try to reach a resolution.

performing EY's connections check for these Title III cases. The costs paid by EY to EY Support Firms for such connections check related services will not be billed to the Debtors.

20. EY Support Firms do not provide client-facing services. Because the Database against which the names of the Parties in Interest was run for EY's connections check contains client engagement information for all client-facing EYGL member firms, no EY Support Firm will run its own connections check or file a declaration in these Title III cases.

21. Before and after the Petition Date, EY Support Firms assisted EY in providing services to the Board and/or the Debtors.

22. During these Title III cases, other EYGL member firms may be subcontracted (the "Subcontracting EYGL Member Firms"), to provide services to one or more Debtor entities during these Title III cases. The fees and expenses of the Subcontracting EYGL Member Firms relating to work performed for the Board will be included in EY LLP's fee applications in these Title III cases. EY LLP will distribute the applicable fees and expenses to the Subcontracting EYGL Member Firms once EY LLP's fee applications are approved by the Court and such fees and expenses are paid by the Debtors. Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all EYGL member firms, the Subcontracting EYGL Member Firms will not run their own connections checks or file declarations in these Title III cases.

23. EY LLP, EY Puerto Rico and other EYGL member firms may perform services for their clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status. The disclosures set forth herein do not include specific identification of such services.

24. As part of its practice, EY appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be parties involved in these Title III cases.

25. EY may currently be a party or participant in certain litigation matters involving Parties in Interest, which matters are unrelated to the Debtors or these Title III cases.

26. Prior to the Petition Date, EY LLP and EY Puerto Rico performed professional services for certain instrumentalities of the Commonwealth of Puerto Rico, including auditing the financial statements of certain of those instrumentalities. In August 2018, the Board designated a Special Claims Committee and delegated to it authority under PROMESA to review findings in an independent investigative report and take any appropriate steps, including the negotiation and prosecution of claims on behalf of the Debtors. On April 30, 2019, EY LLP entered into a tolling agreement with the Board (acting through its Special Claims Committee), and the Official Committee of Unsecured Creditors for the Debtors (other than COFINA) for potential claims for recovery against EY LLP relating to services provided to the Debtors or any other Puerto Rico government entity, including but not limited to services provided to third parties relating to, arising out of, and/or based upon the issuance of bonds by the Debtors or any other Puerto Rico government entity.

27. EY LLP does not directly hold any debt or equity securities of the Debtors. In addition, none of the EY professionals who are currently on the engagement team that is providing Services to the Debtors directly hold any securities in the Debtors, but those engagement team members may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors.

28. It is possible that professionals of EY who are not currently on the engagement team that is providing Services to the Board may directly or indirectly hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors. Additionally, EY professionals, whether or not on the engagement team that is providing services to the Board, may have economic interests in or business associations with Parties in Interest.

29. To the best of my knowledge, information and belief, neither the undersigned nor the professionals expected to assist the Board in these matters are connected to the Judge presiding over the Title III cases, the United States Trustee for the region in which these Title III cases are pending, or any person employed in the Office of the United States Trustee in the city in which these Title III cases are pending as identified in the MIP List.

30. Despite the efforts described above to identify and disclose connections with Parties in Interest, because the Debtors consist of multiple government entities with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein. If EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

31. Certain Parties in Interest are lenders to EY LLP and/or EY US LLP: Citibank, N.A., Santander Bank, N.A. and Wells Fargo Bank, National Association participate in EY LLP's and EY US LLP's Revolving Credit Program; EY LLP and EY US LLP have borrowed long-term debt from American International Group UK Limited (AIG) and American General Life Insurance Company (AIG). Banco Popular provides commercial and cash management services to EY Puerto Rico.

32. To the best of my knowledge, information and belief, prior to the Petition Date, EY performed certain professional services for the Board, namely a financial bridge analysis and an assessment of indebtedness of the Government of Puerto Rico. Before the Petition Date, EY provided audit and tax services to certain instrumentalities of Puerto Rico.

33. EY intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court, and pursuant to any additional procedures that may be established by the Court in these cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 16, 2022

_____
Adam Chepenik
Ernst & Young LLP

**Exhibit A**

**Names of Parties in Interest and whether a Client Engagement has been Initiated by EYGL Member Firms During the Last Three Years**