**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH MAY 18–19, 2022 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the May 18–19, 2022 omnibus hearing and in response to this Court's order, dated May 5, 2022 [Case No. 17-BK-03283, ECF No. 20687].

I. **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1. The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus and to utilize effectively federal funding related to the COVID-19 pandemic. As of May 17, 2022, there was an average of 4,676 COVID-19 cases per day reported in Puerto Rico, which is an increase of twenty-five percent (25%) from the average two weeks ago.

*Proposed Plan of Adjustment for HTA*

2. On May 5, 2021, the Oversight Board, as representative of the Commonwealth and HTA in their Title III Cases, announced that, following extensive discussions guided by the court-appointed Mediation Team, it had entered into that certain HTA/CCDA Related Plan Support Agreement (the "HTA/CCDA PSA") with certain holders and insurers of in excess of $2 billion of claims against HTA, including monoline bond insurers Assured Guaranty Corp. and National Public Finance Corporation. The execution and delivery of the HTA/CCDA PSA not only clears a pathway for confirmation and consummation of the Commonwealth plan of adjustment, but it also (i) resolves certain litigation among the parties to the HTA/CCDA PSA; (ii) set forth the terms of securities to be issued pursuant to the plans of adjustment for the Commonwealth and HTA; and (iii) sets forth the agreement of the parties to support the terms of the plan of adjustment for HTA consistent with the terms of the HTA/CCDA PSA. Following the execution of the HTA/CCDA PSA, twenty-two (22) parties executed joinders to the HTA/CCDA PSA, including, without limitation, Ambac Assured Corp. and Financial Guaranty Insurance Company.

3. As a result of the joinders, the HTA/CCDA PSA has the support of (i) over $700 million of the aggregate principal amount of HTA 68 Bond Claims, HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), and HTA 68 Bond Claims (National) (over eighty-five percent (85%) of that outstanding) and (ii) over $2.1 billion of the aggregate amount of HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (over sixty-seven percent (67%) of that outstanding), each based on an EMMA filing dated July 16, 2021).

4. On November 5, 2021, AmeriNational Community Services, LLC (as servicer for the GDB Debt Recovery Authority ("DRA")), Cantor-Katz Collateral Monitor LLC (a Delaware limited liability company and as collateral monitor for Wilmington Trust, N.A.) (collectively, the "DRA Parties") and the Oversight Board entered into a stipulation (the "DRA Stipulation") [Case No. 17-BK-03283, ECF No. 19100], in which the parties agreed to settle and compromise certain litigation related to the Commonwealth and HTA Title III Cases and for the DRA Parties to support the plans of adjustment for the Commonwealth and HTA and the related solicitation processes. On November 8, 2021, the Title III Court approved the DRA Stipulation [Case No. 17-BK-03283, ECF No. 19124].

5. On May 2, 2022, the Oversight Board filed a proposed *Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03657, ECF No. 1164] (the "HTA Plan") and *Disclosure Statement for the Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03657, ECF No. 1165]. The HTA Plan incorporates the material terms set forth in the HTA/CCDA PSA and the DRA Stipulation.

6. Following the filing of the HTA Plan, the Oversight Board continued to meet with the Official Committee of Unsecured Creditors (the "UCC") appointed in, among other cases, the HTA Title III Case, with the goal of attaining an agreement and reaching a fully consensual plan of adjustment for HTA. On May 9, 2022, the Oversight Board, as representative of HTA in its Title III Case, and the UCC entered into a letter agreement (the "Committee Letter Agreement"), which agreement, among other things, sets forth the treatment for general unsecured claimholders of HTA and the agreement of the UCC to support the terms of the plan of adjustment for HTA.

7. On May 16, 2022, the Oversight Board filed a proposed *Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03657, ECF No. 1177] (the "Amended HTA Plan") and *Disclosure Statement for the Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03657, ECF No. 1178] (the "Disclosure Statement"), which, among other things, incorporates the material terms set forth in the Committee Letter Agreement and clarifying revisions associated with the issuance of New HTA Bonds.

8. The hearing to consider the adequacy of the information contained in the Disclosure Statement is scheduled for June 17, 2022. The Oversight Board is hopeful that the hearing to consider confirmation of the Amended HTA Plan will occur in August, with the effective date of the Amended HTA Plan projected to occur in the third quarter of the calendar year.

*Appeals from the Commonwealth Confirmation Order*

9. After holding oral argument and subsequently denying appellant's request for a stay pending appeal of the confirmation order on March 11, 2022, on April 26, 2022, the United States Court of Appeals for the First Circuit (the "First Circuit"), without hearing further oral argument, affirmed the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of*

4

*Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-BK-03283, ECF No. 19813] (the "Commonwealth Confirmation Order") with respect to the appeal taken by the teachers' associations. On May 10, 2022, the teachers' associations filed a petition for a rehearing *en banc* of the First Circuit's opinion and, on May 13, 2022, the First Circuit denied the petition.

10. On April 28, 2022, the First Circuit heard oral argument on the other appeals from the Commonwealth Confirmation Order, taken by (a) Federación de Maestros de Puerto Rico, Inc., Grupo Magisterial Educadores(as) por la Democracia, Unidad, Cambio, Militancia y Organización Sindical, Inc., and Unión Nacional de Educadores y Trabajadores de la Educación, Inc., (b) Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Vega Alta, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana Díaz, and (c) Suiza Dairy Corp. The First Circuit also heard oral argument on the Oversight Board's cross-appeal from the portion of the Commonwealth Confirmation Order and the corresponding findings of fact and conclusions of law, holding that claims arising under the Takings Clause of the United States Constitution are non-dischargeable or must be paid in full. The First Circuit has not yet issued a ruling on these appeals.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

11. The Oversight Board's relationship with the Government continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico

must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues.

12. The Oversight Board has, whenever necessary, commenced litigation to nullify legislation impairing or defeating PROMESA's purposes. As part of such efforts, the Oversight Board commenced an action against Governor Pierluisi, in his official capacity, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), Luis M. Collazo Rodríguez, in his official capacities as Administrator of the Retirement System for Employees of the Government of Puerto Rico and Executive Director of the Government of Puerto Rico Retirement Board, Juan C. Blanco Urrutia, in his official capacity as Director of the Office of Management and Budget ("OMB") to enjoin the enforcement of and nullify Act 80-2020 ("Act 80"), Act 81-2020 ("Act 81"), and Act 82- 2020 ("Act 82"), which, among other things, sought to reestablish defined benefit plans that originally were a central cause of the Commonwealth's financial distress and were inconsistent with the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [Case No. 17-BK-03283, ECF No. 19784] (the "Modified Eighth Amended Plan"). On December 27, 2021, the Oversight Board, the Government, and the OMB filed a stipulation and proposed order resolving the adversary proceeding subject to court approval [Adv. Pro. No. 21-00119, ECF No. 5] and, on December 28, 2021, the Court approved the stipulation and order [Adv. Pro. No. 21-00119, ECF No. 6] (the "Order"). The Order invalidated the statutes and obligated the Oversight Board and the Government to endeavor to reach agreements regarding alternates to Acts 80, 81, and 82. The Oversight Board and the Government reached agreements regarding Acts 81 and 82 by February 15, 2022, but have not yet reached an agreement regarding Act 80. On February 16, 2022, in an

6

effort to accommodate the Government's desire to continue exploring the possible implementation of some benefits provided by Act 80, the Oversight Board agreed to file a joint informative motion with the Government requesting an additional 120 days to reach an agreement, if possible. [Adv. Pro. No. 21-00119, ECF No. 8]. In that motion, the Government stated that it was "still compiling the information and performing its analysis" with respect to its obligation under the Order to provide certain data to the Oversight Board, *id.* at ¶ 7, necessitating an extension of the deadline until June 11, 2022. The Oversight Board and the Government have exchanged correspondence regarding the status of such efforts, but the Oversight Board does not anticipate agreeing to any further extensions.

13. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board, in consultation with the Government and AAFAF, is developing fiscal plans and/or budgets for the Commonwealth and its various instrumentalities.

14. The Oversight Board continues to work with AAFAF to prepare the qualifying modification to restructure bonds issued by the Puerto Rico Public Finance Corporation pursuant to Title VI of PROMESA and the corresponding solicitation materials.

III. **General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

15. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-three notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the

7

"ACR Transfer Notices"), and have transferred approximately 44,704 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices. Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of approximately 26,319 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on May 27, 2022, and the Debtors anticipate reporting the successful resolution of hundreds of additional ACR Designated Claims.

16. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send further follow up mailings to such claimants to ensure they have a complete administrative file. The Debtors continue to await responses from numerous additional claimants. In many instances, the Debtors have re-sent mailings to claimants who failed to respond to the Debtors' initial letter, reiterating their request for information sufficient to complete the claimants' administrative file, and warning them that ongoing failure to respond may force the Debtors to object to their claims. Certain claimants who failed to respond to both the first and second mailings have received an additional mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims. The Debtors continue to await

responses from such claimants, and anticipate they may be forced to object to their claims. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

17. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' reconciliation of outstanding claims remains ongoing, however. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on June 24, 2022. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

18. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-two notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred approximately 960 claims into the ADR Procedures.

19. Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the ADR Order), seventeen (17) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers. The Debtors are in the

process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

20. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed two objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due June 17, 2022, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

21. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

### IV. **Anticipated Timing and Volume of Objections to Claims**

22. The Debtors' claims reconciliation process remains ongoing and the Debtors project that they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings. However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

23. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases. Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes. In that regard, pursuant to the Plan, unless otherwise extended, the period in which objections to claims must be filed is one hundred eighty (180) days from the Plan's effective date, March 15, 2022. Based upon current projections, the number of unresolved claims and the difficulty in obtaining information regarding such claims, the Oversight Board shall be seeking an extension of such period.

24. In addition, as the Debtors' focus shifts to PREPA's restructuring, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

[*Remainder of page intentionally left blank*]

Dated: May 17, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      brosen@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*