## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 20576**<br><br>(Jointly Administered) |
| GIARRA WASHINGTON–DEL VALLE, *et al.*,<br><br>Movant,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Respondent. | |

## OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION REQUESTING ORDER OR IN THE ALTERNATIVE TO LIFT STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ................................................................................................................ 1

Background ................................................................................................................................. 3

    A.   The Washington Action ...................................................................................... 3

    B.   The García Action .............................................................................................. 5

    C.   The Commonwealth's Title III Case .................................................................. 6

Objection .................................................................................................................................... 8

    I.   The Discharge Injunction Applies to the Prosecution of Claims in the Litigations ....... 8

    II.   Movants Fail to Show Cause for Relief from the Discharge Injunction under the
          *Sonnax* Factors .......................................................................................... 10

Conclusion ............................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A.H. Robins Co.*,
  788 F.2d 994 (4th Cir. 1986) ................................................................................................9

*In re BFW Liquidation, LLC*,
  No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) ....................15

*In re Breitburn Energy Partners LP*,
  571 B.R. 59 (Bankr. S.D.N.Y. 2017) ....................................................................................12

*In re Breitburn Energy Partners LP*,
  No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)....................................13

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
  217 F. Supp. 3d 508 (D.P.R. 2016)..................................................................................11, 15

*Caesars Entm't Operating Co. v. BOKF, N.A.* (*In re Caesars Entm't Operating Co.*),
  808 F.3d 1186 (7th Cir. 2015) ................................................................................................9

*In re Cummings*,
  221 B.R. 814 (Bankr. N.D. Ala. 1998) ..................................................................................13

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight
  & Mgmt. Bd.)*,
  899 F.3d 13 (1st Cir. 2018)....................................................................................................11

*In re Fin. Oversight and Mgt. Bd. for Puerto Rico*,
  939 F.3d 356, 2019 WL 4667824 (1st Cir. 2019)..................................................................13

*In re Fucilo*,
  2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002)........................................................1, 10

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
  2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006)........................................................16

*Hafer v. Melo*,
  502 U.S. 21 (1991)............................................................................................................8, 14

*In re Murrin*,
  477 B.R. 99 (D. Minn. 2012) ................................................................................................13

ii

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ........................................................11

*Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*),
980 F.2d 110 (2d Cir. 1992)..............................................................................................15

*In re Residential Capital, LLC*,
2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) ...................................................16

*In re Residential Capital, LLC*,
No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)......................................12

*Salgado v. Cestero-Lopategui*,
2022 WL 1538119, Case No. 20-1855 (1st Cir. May 12, 2022) ...............................................9

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990)..............................................................................................10

*In re SquareTwo Fin. Servs. Corp.*,
2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017).......................................................1, 10

*In re Taub*,
413 B.R. 55 (Bankr. E.D.N.Y. 2009)....................................................................................12

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) .........................................10, 11

*In re WorldCom, Inc.*,
2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) .........................................................1, 10

**Statutes**

32 L.P.R.A. § 3085 .............................................................................................................2

United States Code title 11 section 362(c)(2)(C)..................................................................1

Bankruptcy Code section 105 ....................................................................................3, 10, 19

Bankruptcy Code section 105(a)...........................................................................................10

Bankruptcy Code section 524(a)(2)........................................................................................8

Commonwealth's Law 9 ......................................................................................................18

P.R. Laws Ann. tit. 32, § 3085..............................................................................................2

*Puerto Rico Oversight, Management, and Economic Stability Act* section 315(b).........................1

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),
as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth" or the
"Debtor"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic
Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion
Requesting Order or in the Alternative to Lift Stay* [ECF No. 20576] (the "Motion"), filed by the
plaintiffs in two cases captioned (a) *Giara Washington del Valle v. Rivera Schatz*, Case No. CV
17-1770-WGY (such plaintiffs, the "Washington Movants" and such case, the "Washington
Action") and (b) *García Perales v. Rivera Schatz*, Case No. CV 18-1081-WGY (the "García
Movants," and together with the Washington Movants, "Movants" and such case, the "García
Action," and together with the Washington Action, the "Litigations"), pending in the United States
District Court for the District of Puerto Rico (the "District Court").  In support of the Objection,
the Debtor respectfully states as follows:

## Preliminary Statement[3]

1.       Movants seek relief from the automatic stay[4] to allow the Litigations, which relate
to Movants' termination from public employment with various branches of the Puerto Rico
government, to proceed to final judgment.  Contrary to Movants' assertions, the Litigations

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]   Capitalized terms used in this Preliminary Statement but not otherwise defined shall have the meanings given to
them in the "Background" section.

[4]   Pursuant to section 362(c)(2)(C) of title 11 of the United States Code (the "Bankruptcy Code"), Section 92.25 of
the Commonwealth Plan, and decretal paragraph 66 of the Confirmation Order, the automatic stay was replaced
by the discharge injunction upon the occurrence of the effective date of the Commonwealth Plan.

To the extent the Court interprets the Motion to seek relief from the discharge injunction, some courts have
considered such relief under the *Sonnax* factors discussed below.  *See In re SquareTwo Fin. Servs. Corp.*, 2017
WL 4012818, at *4 (Bankr. S.D.N.Y. Sept. 11, 2017);  *In re Fucilo*, 2002 WL 1008935, at *8 (Bankr. S.D.N.Y.
Jan. 24, 2002); *In re WorldCom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007).

involve, in part, claims asserted against officers of the Commonwealth in their official capacity, and, therefore, claims against the Commonwealth.  Furthermore, pursuant to 32 L.P.R.A. § 3085 ("Law 9"),[5] the Commonwealth would be obligated to indemnify such officers (with respect to both individual and official capacity claims) under the terms and provision of such law, and, therefore, has an interest in the resolution and outcome of the Litigations, which may impact the recoveries of holders of general unsecured claims pursuant to the Commonwealth Plan.[6]

2.      While Movants also assert in the Litigations claims against officers of the Commonwealth in their individual capacity, such claims arise from the same alleged conduct giving rise to the asserted official capacity claims—therefore, the resolution of such claims is inextricably tied to the resolution of claims against the Commonwealth.  Pursuant to the Confirmation Order and the Commonwealth Plan, unless otherwise extended, the Debtor has until September 11, 2022 (the "Claim Objection Deadline") to assess and object to the allowance of claims.[7]  Allowing the Litigations to proceed at this juncture would short circuit such period provided to the Debtor to conduct a holistic assessment of claims asserted against it—to the detriment of the Commonwealth's other unsecured creditors who will share in the same CW GUC Recovery.  Indeed, if the Litigations were allowed to proceed with respect to the individual capacity claims, the Oversight Board, as the sole Title III representative of the Commonwealth in its Title III case, would be deprived of the ability to participate in the resolution of issues and factual determinations directly impacting the claims against the Commonwealth (*i.e.*, the official

---

[5]   Law 9 provides that a Commonwealth official sued in their personal capacity for alleged civil rights violations "may request the Commonwealth of Puerto Rico to provide him with legal representation, and to subsequently assume the payment of any judgment that may be entered against his person."  P.R. Laws Ann. tit. 32, § 3085.

[6]   Pursuant to Article LXII of the Commonwealth Plan, holders of Allowed CW General Unsecured Claims will receive a pro rata share of the "CW GUC Recovery" (as defined in the Commonwealth Plan), consisting of a limited amount of funds.

[7]   Commonwealth Plan § 82.1(a); Confirmation Order ¶ 42.

capacity claims) and underlying individual capacity claims giving rise to any Law 9 indemnification claims against the Commonwealth.  Accordingly, and for the additional reasons discussed below, the Motion should be denied, without prejudice to further requests for relief from the discharge injunction upon the expiration of the Claim Objection Deadline, to allow the Debtor to assess and address the claims asserted in the Litigations in the Title III claims resolution process (including, to the extent the Oversight Board determines appropriate, through the alternative dispute resolution process established in these cases).

3.      Furthermore, because the District Court entered an order in the Washington Action that would allow the case to proceed to trial and final judgment,[8] and to avoid the need to file a separate motion seeking relief, the Debtor requests the Court enter an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code section 105, confirming the discharge injunction pursuant to Section 92.3 of the Commonwealth Plan and decretal paragraph 59 of the Confirmation Order operates to stay the Litigations, and, to the extent necessary, such discharge injunction extends to the related individual capacity claims in the Litigations, subject to and pending further order of this Court or a court of competent jurisdiction.[9]  Such order will avoid the fractured resolution of claims in multiple fora and preserve judicial resources.

<u>**Background**</u>

### A.  The Washington Action

4.      On June 8, 2017, the Washington Movants commenced the Washington Action in the District Court against various members of the Legislative Assembly, both in their personal and

---

[8]   The order stayed the Washington Action for sixty (60) days (expiring June 6, 2022) "pending status of order" from this Court.  [Case No. 17-1770, ECF No. 276].

[9]   *See* Confirmation Order ¶ 83; Commonwealth Plan § 91.1(k) (providing this Court shall retain and have exclusive jurisdiction "to enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce or restrain interference by any Entity with consummation or enforcement of the Plan or the Confirmation Order, including, without limitation, the provisions of Section 92.2 and 92.3 [of the Commonwealth Plan] . . . .").

official capacities, asserting the violation of the Washington Movants' rights pursuant to the U.S. Constitution and the Puerto Rico Constitution arising from their termination in February 2017 as employees of various branches of the Puerto Rico government. [Case No. 17-1770, ECF No. 1].[10] On May 30, 2019, the Washington Movants filed an amended complaint, seeking against the defendants, in their personal and official capacities, among other things:[11]

    a) Compensatory and punitive damages in excess of $117,000,000.00;

    b) Equitable relief in the form of preliminary and permanent injunctions requiring defendants to: (i) reinstate the Washington Movants to their prior employment, (ii) provide backpay to February 15, 2017, and (iii) refrain from further adverse employment action based on political affiliations and belief; and

    c) Attorneys' fees, costs, and expenses.

[Case No. 17-1770, ECF No. 104].

    5.    On September 30, 2019 and October 4, 2019, the defendants filed motions for summary judgment, which motions were denied on February 8, 2021. [Case No. 17-1770, ECF Nos. 153, 160, 173].[12]

    6.    On March 28, 2022, the Washington Movants filed their *Motion to Lift Stay and Requesting Status Conference* in the Washington Action, asserting "[a]s part of the dispositions of the Plan that were specifically reflected in the Order confirming it, the injunctions and stays in effect in the case shall remain in full force and effect through the Effective Date." [Case No. 17-1770, ECF No. 265]. The motion, however, did not mention the imposition of the discharge injunction pursuant to the Commonwealth Plan and the Confirmation Order. The following day,

---

[10]  As noted below, the automatic stay was lifted on August 17, 2018 pursuant to the *Fifth Omnibus Order Granting Relief from the Automatic Stay* [Case No. 17-3283, ECF No. 3795], allowing the Washington Action to proceed to final judgment solely with respect to any motion to dismiss or motion for summary judgment.

[11]  The amended complaint appears to assert monetary claims against officers in their official capacities. *See* Case No. 17-1770, ECF No. 104, at p. 470-71.

[12]  Defendants appealed the denial of the summary judgment motion, but later voluntarily withdrew the appeals. [Case No. 17-1770, ECF Nos. 246, 247, 248, 249].

on March 29, 2022, the District Court granted the Washington Movant's motion without briefing

or an opportunity to be heard.  [Case No. 17-1770, ECF No. 266].

7.     On March 31, 2022, the defendants filed a motion to reconsider the order.  [Case

No. 17-1770, ECF No. 268].  Following briefing on the motion and a status conference, the District

Court entered an order staying the Washington Action for sixty (60) days (expiring June 6, 2022)

"pending status of order" from this Court.  [Case No. 17-1770, ECF No. 276].

**B.  The García Action**

8.     On February 12, 2018, the García Movants commenced the García Action in the

District Court against various members of the Legislative Assembly, both in their personal and

official capacities, asserting similar claims as those in the Washington Action.  [Case No. 18-1081,

ECF No. 1].  The García Movants seek against the defendants, in their personal and official

capacities, among other things:

    a) Compensatory and punitive damages in excess of $7,500,000.00;

    b) Equitable relief in the form of preliminary and permanent injunctions requiring
       defendants to: (i) reinstate the García Movants to their prior employment with all
       corresponding privileges and benefits, and (ii) refrain from further adverse
       employment action based on political affiliations and belief; and

    c) Attorneys' fees, costs, and expenses.

9.     On May 30, 2018, the defendants moved to dismiss the García Action, arguing,

among other things, Eleventh Amendment immunity bars the García Movants' claims for

monetary damages against all defendants in their official capacity.  [Case No. 18-1081, ECF No.

11].[13]

---

[13]   As noted below, the automatic stay was lifted on August 17, 2018 pursuant to the *Fifth Omnibus Order Granting
Relief from the Automatic Stay* [Case No. 17-3283, ECF No. 3795], allowing the García Action to proceed to final
judgment solely with respect to any motion to dismiss or motion for summary judgment.

10.     On March 31, 2019, the District Court entered the *Memorandum and Order* granting in part and denying in part the defendants' motion to dismiss, holding, among other things, that the claims for monetary relief against the defendants in their official capacity are dismissed with prejudice under the Eleventh Amendment, but the claims against the defendants in their official capacity for injunctive relief and in their personal capacity for monetary damages are not afforded the same immunity.  [Case No. 18-1081, ECF Nos. 23, 24].[14]

11.     On October 1, 2020, the defendants filed a motion for summary judgment, which motions the District Court denied on February 8, 2021.  [Case No. 18-1081, ECF Nos. 47, 50, 81].[15]

12.     On March 28, 2022, the García Movants filed the *Motion to Lift Stay and Requesting Status Conference* [Case No. 18-1081, ECF No. 111], which is currently pending before the District Court.

**C.  The Commonwealth's Title III Case**

13.     On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico (the Court in such case, the "Title III Court"), commencing a case under Title III thereof.

14.     Movants filed various proofs of claim relating to the Litigations.  *See* Case No. 17-1770, ECF No. 271-1; *see also* Proof of Claim Nos. 52966, 52947, 43509, 52347, 139392 (collectively, "Movants' Proofs of Claim").

---

[14]   In comparison, the claims for monetary relief against the defendants in the Washington Action in their official capacity, however, have not been dismissed with prejudice.

[15]   Defendants appealed the denial of the summary judgment motion, but later voluntarily withdrew the appeals.  [Case No. 18-1081, ECF Nos. 99, 100, 101, 102, 103].

15.     On August 21, 2018, the Title III Court entered the *Fifth Omnibus Order Granting Relief from the Automatic Stay* [Case No. 17-3283, ECF No. 3795], modifying the automatic stay to allow the Washington Action and the García Action to proceed to final judgment with respect to any motion to dismiss or motion for summary judgment.

16.     On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order"), confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "Commonwealth Plan").  Among other things, the Commonwealth Plan and the Confirmation Order provide for an injunction on the prosecution of claims discharged pursuant to the Commonwealth Plan from and after the Effective Date of the Commonwealth Plan. *Commonwealth Plan* § 92.3; *Confirmation Order* ¶ 59.

17.     On March 15, 2022, the Plan became effective (the "Effective Date").  Pursuant to the Confirmation Order and the Commonwealth Plan, unless otherwise extended, the Debtor has until September 11, 2022 to assess and object to the allowance of claims.[16]

18.     On March 28, 2022, Movants filed the Motion, seeking (i) a determination that, "upon the expiration of the automatic stay," the Litigations be allowed to proceed, including for the payment of any judgment, or (ii) in the alternative, relief from the automatic stay to allow the Litigations to proceed to trial and payment of any judgment.  Motion at 13.

---

[16]   Commonwealth Plan § 82.1(a); Confirmation Order ¶ 42.

### Objection

### I.   The Discharge Injunction Applies to the Prosecution of Claims in the Litigations

19.     Section 92.3 of the Commonwealth Plan and decretal paragraph 59 of the Confirmation Order permanently enjoins, as of the Effective Date, creditors that hold claims against the Debtor from "commencing or continuing, directly or *indirectly*, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against [the Debtors] . . . ."  (emphasis added).  Pursuant to Bankruptcy Code section 524(a)(2), incorporated into PROMESA Title III pursuant to Section 301(a) of PROMESA, a discharge "operates as an injunction against the commencement or *continuation* of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"  11 U.S.C. § 524(a)(2) (emphasis added).

20.     In the Litigations, Movants assert claims seeking both monetary and equitable relief against the officers of the Commonwealth in both their official and individual capacity.  As this Court has determined, claims against officers of the Commonwealth in their official capacity are functionally claims against the Commonwealth.  *Order on Motion for Reconsideration Filed by Beatriz Nieves-López, et al.*, at 3 [ECF No. 2723] ("An official-capacity suit against a Commonwealth official is functionally a suit against the Commonwealth.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).").  Accordingly, with respect to the official capacity claims, the discharge injunction applies and enjoins Movants from proceeding with the Litigation.

21.     With respect to the individual capacity claims, the Commonwealth has assumed the legal defense and responsibility for any monetary judgments in the Litigations pursuant to Law 9.  Indeed, the First Circuit recognized that personal capacity claims against officials are none other

8

than claims against the government, even where the government's indemnification policy is only permissive. *See Salgado v. Cestero-Lopategui*, 2022 WL 1538119, at *4, Case No. 20-1855 (1st Cir. May 12, 2022) ("Any hope for meaningful recovery necessarily rests on the possibility that the Commonwealth will in some manner step into the shoes of its officials. . . . [T]he sum of the damages requested make clear that the action does indeed have as one of its targets the Commonwealth's purse. . . ."). Furthermore, because the individual capacity claims arise from the same alleged facts and circumstances as the official capacity claims, any determination with respect to the individual capacity claims would impact the resolution of the official capacity claims and Movants' Proofs of Claim (including the quantum of Law 9 indemnification claims).[17] However, the Oversight Board, as sole Title III representative of the Commonwealth in its Title III case, would be deprived of the ability to resolve the quantum of any Law 9 indemnification claim arising from the individual capacity claim because it is not a party to the Litigation.

22.     In addition, allowing the prosecution of the individual capacity claims on a separate track, while having the official capacity claims[18] resolved in connection with Movant's Proofs of Claim in the Title III case, would waste judicial resources by having separate claims arising from the same facts addressed simultaneously in separate fora. Accordingly, prosecution of such individual capacity claims is enjoined pursuant to the discharge injunction as actions *indirectly* seeking to enforce a claim against the Commonwealth.[19]

---

[17]  *See Salgado v. Cestero-Lopategui*, 2022 WL 1538119, at *6, Case No. 20-1855 (1st Cir. May 12, 2022) (" [A] purpose of the Commonwealth's assumption of defense costs is to reduce the risk that such judgment be entered against it.").

[18]  With respect to the Washington Action, such official capacity claims would also include claims for damages.

[19]  Bankruptcy Code section 105(a) permits a court to enjoin litigation against a nondebtor, even where the litigation does not arise out of the "same acts" as those giving rise to disputes relating to the bankruptcy proceeding. *See Caesars Entm't Operating Co. v. BOKF, N.A.* (*In re Caesars Entm't Operating Co.*), 808 F.3d 1186, 1188-89 (7th Cir. 2015); *see also In re A.H. Robins Co.*, 788 F.2d 994 (4th Cir. 1986).

23.     Therefore, because the District Court entered orders lifting the automatic stay in the Washington Action and imposing a sixty-day (60) stay of the Washington Action, expiring June 6, 2022, the Debtor requests the Court enter an order, pursuant to Bankruptcy Code section 105, confirming the discharge injunction pursuant to Section 92.3 of the Commonwealth Plan and decretal paragraph 59 of the Confirmation Order operates to stay the Litigations, and, to the extent necessary, such discharge injunction extends to the related individual capacity claims in the Litigations, subject to and pending further order of this Court or a court of competent jurisdiction.

## II.  Movants Fail to Show Cause for Relief from the Discharge Injunction under the *Sonnax* Factors

24.     To the extent the Court interprets the Motion as request for relief from the discharge injunction, courts have considered such relief under the same "cause" standard as relief from the automatic stay.  *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *4 (Bankr. S.D.N.Y. Sept. 11, 2017); *In re Fucilo*, 2002 WL 1008935, at *8 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re WorldCom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007).  Movants have not established that cause exists to lift the discharge injunction.

25.     "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  To determine whether "cause" exists to grant stay relief, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

26.     Courts in this Circuit have adopted these "*Sonnax* factors."  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

27.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it.  *Brigade*, 217 F. Supp. 3d at 529 n.12.  Movant bears the initial burden of establishing cause, *id.*, and when the movant is

not a secured claimholder asserting a lack of adequate protection, that burden is a high one.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

28.    The Sonnax factors clearly weigh against lifting the discharge injunction.  Denying the Motion would further the goal of the discharge injunction, which is to prevent creditors from disrupting the Debtor's focus on their restructuring efforts (here, the period pursuant to the Commonwealth Plan for the Debtor to assess and object to claims on or before September 11, 2022).  *See In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").  The *Sonnax* factors point squarely toward maintaining the discharge injunction and against the relief Movants seek:

29.    **Sonnax Factor 1**: The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against lifting the discharge injunction. The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See,*

*e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

30.     Here, Movants do not identify any bankruptcy issue related to the Commonwealth's Title III case that would be resolved by allowing Movants to proceed with the Litigation.  As noted above, Movants bear the high burden of establishing cause, and they have made no such showing here.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

31.     Furthermore, because the Commonwealth Plan has been confirmed and consummated, the limited issue in the Commonwealth's Title III case as it relates to the Litigations is the resolution of Movants' Proofs of Claim, which should be accomplished pursuant to the claims objection process pursuant to the Commonwealth Plan and the Confirmation Order, or, to the extent the Oversight Board determines appropriate, through the alternative dispute resolution process established in these cases.  Granting the Motion would only short-circuit the process and timeline established in the Commonwealth Plan and the Confirmation Order for the Debtor to address outstanding claims, and would conflict with PROMESA's core purpose: "centraliz[ing] all disputes concerning property of the [Commonwealth] so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings." *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 939 F.3d 356, 363, 2019 WL 4667824 (1st Cir. 2019) (confirming the denial of a request to lift stay to compel PREPA to comply with the provisions of a prepetition judgment.).

32.     Therefore, the first Sonnax factor supports denying the Motion.

33.     **Sonnax Factor 2**: The second Sonnax factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting the stay.  Movants assert that allowing the Litigations to proceed would not interfere with the Commonwealth Plan because the

Commonwealth is not a party to the Litigations.  However, Movants assert claims in the Litigations against officers of the Commonwealth in their official capacity, seeking reinstatement to their prior employment and backpay.  Furthermore, it appears that Movant seek monetary relief against officers of the Commonwealth in their official capacity in the Washington Action.[20]  Such claims are functionally claims against the Debtor.  *See Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543]; *Order on Motion for Reconsideration Filed by Beatriz Nieves-López, et al.*, at 3 [ECF No. 2723] ("An official-capacity suit against a Commonwealth official is functionally a suit against the Commonwealth.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).").

34.    Because the individual capacity and official capacity claims arise from the same facts and circumstances, and because the Debtor has assumed the legal defense and responsibility for any monetary judgments in the Litigations pursuant to Law 9, any determination with respect to the individual capacity claims would impact the resolution of Movants' Proofs of Claim (including the quantum of Law 9 indemnification claims).  Furthermore, allowing the claims to be resolved in the Litigations would deprive the Oversight Board, as sole Title III representative of the Commonwealth in its Title III case, the ability to assess and seek a resolution to Movants' Proofs of Claim within the timeframe contemplated in the Commonwealth Plan, because the Oversight Board is not a party to the Litigation.

35.    Critically, requiring the Commonwealth to defend Movants' claims separately would undermine that process and upend the "strong bankruptcy code policy that favors

---

[20] *See* Case No. 17-1770, ECF No. 104, at p. 470-71.

centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

36.     Thus, Sonnax factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

37.     **Sonnax Factor 4**: The fourth Sonnax factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion.  The Litigations are pending in the United States District Court for the District of Puerto Rico.  Thus, Sonnax factor 4 weighs in favor of denying the Motion.

38.     **Sonnax Factor 5:** The fifth Sonnax factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with the claims asserted in the Litigation.  Therefore, all the costs of defending the claim would be borne by the Commonwealth.

39.     **Sonnax Factor 6**:  The sixth Sonnax factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties rather than the debtor. *See In re Residential Capital, LLC*, 2012 Bankr.

LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth Sonnax factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

40.     Here, while the Commonwealth is not a named defendant in the Litigations, as noted above, Movants assert claims against officers of the Commonwealth in their official capacities.   Such claims are functionally claims against the Debtor.   *See supra* para. 33. Furthermore, because the Commonwealth has assumed the legal defense and the responsibility for any monetary judgments against the defendants in the Litigations, any judgment in favor of Movants in the Litigations would necessarily impact the quantum of the Law 9 indemnification claims against the Debtor, and ultimately the pro rata distribution of the CW GUC Recovery to all general unsecured claimants of the Commonwealth.[21]   Therefore, the Litigations functionally and primarily involve claims against the Debtor, and Sonnax factor 6 weighs in favor of denying the Motion.

41.     **Sonnax Factor 7:** The seventh Sonnax factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  As noted above, allowing the Litigation to proceed would deprive the Oversight Board, as sole Title III representative of the Commonwealth in its Title III case, the ability to assess and seek a resolution to Movants' Proofs of Claim within the timeframe contemplated in the Commonwealth Plan, because the Oversight Board is not a party to the Litigation.  Short-circuiting such claims resolution

---

[21]   *See supra* note 17.

process would prevent the resolution of all unsecured claims against the Commonwealth in a holistic fashion, which would negatively impact the pro rata distribution of the CW GUC Recovery to all general unsecured claimants of the Commonwealth.  Furthermore, because the official capacity claims arise from the same underlying facts and circumstances as the individual capacity claims, determinations made in the Litigations would necessarily impact the ability for the Oversight Board to resolve the official capacity claims (and to the extent also included, the individual capacity claims) asserted in Movants' Proofs of Claim.  Accordingly, Sonnax factor 7 does not support granting the Motion.

42.     **Sonnax Factors 10 and 11**:  The interests of judicial economy also weigh against stay relief.  If the Motion were granted, the Debtor would be forced to expend resources attending to the trial of the Litigations in the District Court, while at the same time addressing Movants' Proofs of Claim before this Court within the timeframe provided in the Commonwealth Plan and the Confirmation Order.  While the Litigations may be close to being trial-ready, there is no guarantee trial and post-trial appeals would be completed any faster than the claims resolution process in the Commonwealth's Title III case.  Accordingly, Movants fail to meet their burden to show that *Sonnax* factors 10 and 11 favor granting relief from the discharge injunction.

43.     **Sonnax Factor 12**: Balancing of the harms clearly favors denial of the Motion. Movants assert that they are harmed by the delay in resolution of the Litigations.  Motion at 13. However, Movants are in the same position as other creditors who must wait for the resolution and payment of their claims according to the terms of the Commonwealth Plan and the Confirmation Order.  Furthermore, given the magnitude of the monetary claims asserted against the officers in their individual capacity ($117 million in the Washington Action, and $7.5 million in the García Action), it is unclear whether Movants would be able collect a judgment against such officers, if

at all, rather than against the Commonwealth pursuant to the Commonwealth's Law 9 indemnification of such officers—accordingly, it is unclear what harm Movants would suffer as a result of any delay.

44.     However, the impact on the Commonwealth and its creditors if the Motion were to be granted would outweigh any harm that Movants would suffer if the discharge injunction remains in place.  The diversion of the Commonwealth's resources to defend Movants' claims in litigation, and the prejudice to the interests of other similarly situated creditors all weigh in favor of denying the Motion.  Critically, allowing the claims to be resolved in the Litigations would deprive the Oversight Board, as sole Title III representative of the Commonwealth in its Title III case, the ability to assess and seek a resolution to Movants' Proofs of Claim within the timeframe contemplated in the Commonwealth Plan, potentially impacting the pro rata distribution of the CW GUC Recovery to all allowed general unsecured claimants of the Commonwealth.  Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[22]

## Conclusion

The discharge injunction applies to stay the Litigations, and Movants fail to establish that there is cause to lift the discharge injunction to allow Movants to proceed to trial and enforcement of any judgment.  Accordingly, and for the foregoing reasons, the Court should deny the Motion, without prejudice to further requests for relief from the discharge injunction upon the expiration of the Claim Objection Deadline.

Furthermore, because the District Court entered orders lifting the automatic stay in the Washington Action and imposing a sixty-day (60) stay of the Washington Action, expiring June

---

[22]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

6, 2022, the Debtor requests the Court enter an order, pursuant to Bankruptcy Code section 105, confirming the discharge injunction pursuant to Section 92.3 of the Commonwealth Plan and decretal paragraph 59 of the Confirmation Order operates to stay the Litigations, and, to the extent necessary, such discharge injunction extends to the related individual capacity claims in the Litigations, subject to and pending further order of this Court or a court of competent jurisdiction.

Dated: May 18, 2022
        San Juan, Puerto Rico

                                        Respectfully submitted,

                                        /s/ Brian S. Rosen
                                        Martin J. Bienenstock (*pro hac vice*)
                                        Brian S. Rosen (*pro hac vice*)
                                        **PROSKAUER ROSE LLP**
                                        Eleven Times Square
                                        New York, NY 10036
                                        Tel: (212) 969-3000
                                        Fax: (212) 969-2900

                                        *Attorneys for the Financial Oversight and
                                        Management Board as representative for the
                                        Debtor*

                                        /s/ Hermann D. Bauer
                                        Hermann D. Bauer
                                        USDC No. 215205
                                        **O'NEILL & BORGES LLC**
                                        250 Muñoz Rivera Ave., Suite 800
                                        San Juan, PR 00918-1813
                                        Tel: (787) 764-8181
                                        Fax: (787) 753-8944

                                        *Co-Attorneys for the Financial Oversight
                                        and Management Board as representative
                                        for the Debtor*

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. _____**<br><br>(Jointly Administered) |

**ORDER PURSUANT TO PROMESA SECTION 301(A) AND BANKRUPTCY CODE SECTIONS 105(A) AND 524(A)(2) CONFIRMING (I) APPLICATION OF DISCHARGE INJUNCTION, AND (II) STAY OF PREPETITION LITIGATIONS**

Upon the request of the Commonwealth of Puerto Rico pursuant to the *Objection of the Commonwealth of Puerto Rico to Motion Requesting Order or in the Alternative Lift Stay* (ECF No. _____, the "Request");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306; and it appearing that venue in this district is proper pursuant to PROMESA section 307; and the Court having found that the relief requested in the Request is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that the Debtors provided adequate and appropriate notice of the Request under

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Request.

1

the circumstances and that no other or further notice is required; and the Court having reviewed the Request; and the Court having determined that the legal and factual bases set forth in the Request establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT:**

1.      The Request with respect to the confirmation of the applicability of the discharge injunction to the Litigations is granted as set forth herein.

2.      Pursuant to Bankruptcy Code section 524(a)(2), Section 92.3 of the Commonwealth Plan, and decretal paragraph 59 of the Confirmation Order, and subject to any exceptions thereto or other rights or defenses a party may have under applicable law, including the Bankruptcy Code made applicable by PROMESA, the Litigations are stayed in their entirety pending further order of the Court or a court of competent jurisdiction.

3.      The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order.

4.      This Order resolves docket entry no. _____ in Case No. 17-3283.


Dated: _____ 2022
          San Juan, Puerto Rico


                                        _____
                                        LAURA TAYLOR SWAIN
                                        United States District Judge

2