```
 1                   UNITED STATES DISTRICT COURT

 2                    DISTRICT OF PUERTO RICO

 3
      In Re:                    )      Docket No. 3:17-BK-3283(LTS)
 4                              )
                                )      PROMESA Title III
 5    The Financial Oversight and )
      Management Board for       )
 6    Puerto Rico,               )     (Jointly Administered)
                                )
 7    as representative of       )
                                )
 8    The Commonwealth of        )
      Puerto Rico, et al.        )     May 18, 2022
 9                              )
                    Debtors,    )
10

11    _____

12                         OMNIBUS HEARING

13     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

14                 UNITED STATES DISTRICT COURT JUDGE

15      AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

16                 UNITED STATES DISTRICT COURT JUDGE

17    _____

18
      APPEARANCES:
19
      ALL PARTIES APPEARING VIA VIDEOCONFERENCE OR TELEPHONICALLY
20
      For The Commonwealth
21    of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                               Mr. Brian S. Rosen, PHV
22
      For Puerto Rico Fiscal
23    Agency and Financial
      Advisory Authority:      Ms. Carolina Velaz-Rivero, Esq.
24

25
```

```
 1   APPEARANCES, Continued:

 2   Avoidance Actions
     Trustee:                Mr. John Arrastia, Trustee
 3
     For Evertec Group
 4   and Bristol-Myers
     Squibb P.R.:            Mr. Nayuan Zouairabani-Trinidad, Esq.
 5
     For ManpowerGroup:      Mr. Ryan Billings, PHV
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by stenography.  Transcript produced by
     CAT.
25
```

```
 1  ‖                          I N D E X
 2  ‖ WITNESSES:                                          PAGE
 3  ‖      None.
 4  ‖
 5  ‖ EXHIBITS:
 6  ‖      None.
 7  ‖
 8  ‖
 9  ‖
10  ‖
11  ‖
12  ‖
13  ‖
14  ‖
15  ‖
16  ‖
17  ‖
18  ‖
19  ‖
20  ‖
21  ‖
22  ‖
23  ‖
24  ‖
25  ‖
```

1            San Juan, Puerto Rico

2            May 18, 2022

3            At or about 9:31 AM

4                    *      *      *

5       THE COURT:  Good morning.  This is Judge Swain

6  speaking.

7            Ms. Tacoronte, would you please call the case?

8            COURTROOM DEPUTY:  Good morning, Your Honor.

9       The United States District Court for the District of

10 Puerto Rico is now in session.  The Honorable Laura Taylor

11 Swain presiding.  Also sitting, Magistrate Judge Judith Dein.

12       *In re: The Financial Oversight and Management Board*

13 *for Puerto Rico, as representative of the Commonwealth of*

14 *Puerto Rico, et al.,* PROMESA, Title III, case no. 17-BK-3283,

15 for Omnibus Hearing.

16       THE COURT:  Again, good morning.  Please turn your

17 cameras on for these introductory remarks and instructions,

18 and keep your microphones muted.

19            Buenos dias, counsel, parties in interest, and

20 members of the public, and press.  To ensure the orderly

21 operation of today's virtual hearing, once we turn to our

22 Agenda items, all parties appearing by Zoom must mute their

23 microphones when they're not speaking, and turn off their

24 video cameras if they're not directly involved in the

25 presentation or argument.  When you need to speak, turn your

1    camera on and unmute your microphone on the Zoom screen.

2            I remind everyone that consistent with court and

3    judicial conference policies, and the orders that have been

4    issued, no recording or retransmission of the hearing is

5    permitted by anyone, including but not limited to the parties,

6    members of the public, or the press.  Violations of this rule

7    may be punished with sanctions.

8            I'll be calling on each speaker during the

9    proceedings.  When I do, please turn your camera on, unmute

10   yourself, and identify yourself by name for clarity of the

11   record.  After the speakers listed on the Agenda for each of

12   today's matters have spoken, I may permit other parties in

13   interest to address briefly any issues raised during the

14   presentations that require further remarks.  If you wish to be

15   heard under these circumstances, please use the "raise hand"

16   feature of Zoom, which can be accessed through the reactions

17   icon in the tool bar at the bottom of the Zoom screen.  If

18   anyone has difficulty hearing me or another participant,

19   please use the "raise hand" feature immediately.

20           For those interested, the Agenda, which was filed as

21   docket entry no. 20833 in case no. 17-3283, is available to

22   the public at no cost on Prime Clerk.  Although Prime Clerk

23   has now been renamed Kroll Restructuring Administration, the

24   Prime Clerk website addresses and telephone numbers are still

25   operational for this case.

1          I encourage each speaker to keep track of his or her

2     own time, and the Court will also be keeping track of the

3     time.  You will hear a beep when your time has expired.

4          If we need to take a break, the telephone listen only

5     participants on the AT&T line are asked to remain on the line

6     during the break, if any.  This morning we will proceed until

7     11:50 AM, as necessary, and will resume, if necessary, from

8     1:10 PM to 5:00 PM.  All those times are in Atlantic Standard

9     Time.  Please turn your cameras off now, and turn the camera

10    back on when we reach your Agenda item, or if I call on you.

11         The first Agenda item is, as usual, Status Reports

12    from the Oversight Board and AAFAF.  As requested in the

13    Procedures Order, these reports have been made in writing in

14    advance of this virtual hearing, and are available on the

15    public docket at docket entry nos. 20856 and 20859 in case no.

16    17-3283, respectively.  I thank the Oversight Board and AAFAF

17    for the care and detail reflected in their reports, which, as

18    always, cover important matters.

19         First I'll call on the Oversight Board's

20    representative.  Would the Oversight Board's representative

21    like to make any additional comments?  Then I have one

22    question.

23         Mr. Bienenstock, you are muted.

24         MR. BIENENSTOCK:  I'm sorry.  Good morning, Your

25    Honor.  Martin Bienenstock of Proskauer Rose for the Oversight

1    Board.

2             THE COURT:  Good morning.

3             MR. BIENENSTOCK:  We don't have additional comments

4    to our Status Report, but of course I want to respond to the

5    Court's questions.

6             THE COURT:  Thank you.  The one question I have is

7    whether you have an anticipated timetable for commencement of

8    the Public Finance Corporation Title VI proceeding?

9             MR. ROSEN:  Your Honor, this is Brian Rosen from

10   Proskauer Rose on behalf of the Oversight Board.

11            We have been working diligently with the AAFAF team,

12   led by O'Melveny, with respect to the PFC Title VI matter.  We

13   are hopeful that we can commence a qualifying modification

14   proceeding at around the same time as the Disclosure Statement

15   Hearing for HTA, which would be June 17th.

16            THE COURT:  Thank you, Mr. Rosen.

17            MR. ROSEN:  Thank you.

18            THE COURT:  I have no more questions.

19            MR. BIENENSTOCK:  Thank you, Your Honor.

20            THE COURT:  So now we'll turn to the AAFAF report.

21   Would the representative for AAFAF like to make any additional

22   comments?

23            MS. VELAZ-RIVERO:  Good morning, Your Honor.

24   Carolina Velez-Rivero from Marini Pietrantoni Muniz on behalf

25   of AAFAF.  We don't have any additional comments to what we

1   included in the report.

2          THE COURT:  Thank you, and good morning.  I have no

3   questions for AAFAF at this time.

4          If any of the other counsel who are participating in

5   this videoconference have questions or comments that they wish

6   to make in connection with the status report, please use your

7   "raise hand" function to indicate your request now, and then

8   wait for me to call on you to speak.

9          I don't see any hands raised, so this concludes the

10  status report portion of the Agenda.

11         Does anyone wish to be heard on anything other than

12  the one contested matter, which is the Avoidance Actions

13  Trustee's motion concerning case management procedures?  If

14  so, use the "raise hand" feature and I will call on you.

15         I don't see any hands raised for that either.  So,

16  counsel who do not wish to be heard in connection with the

17  Avoidance Actions Trustee's motion may excuse themselves

18  before argument on that matter begins.  The next scheduled

19  hearing is the June 17th, 2022, Disclosure Statement Hearing

20  in connection with the Proposed Plan of Adjustment for the

21  Puerto Rico Highways and Transportation Authority.

22         I now turn the proceedings over to Judge Dein.  Thank

23  you.

24         MAGISTRATE JUDGE DEIN:  Thank you.

25         And, again, anyone who's not involved in the

1  Avoidance Action Procedures issues may be excused.

2          So I think the most efficient way to proceed is to

3  hear the arguments, after which I may have some questions both

4  as to the issues raised in the objections and in connection

5  with some concerns of the Court.  I'm going to ask everyone to

6  please adhere to your allotted time.  We're not going to

7  practice the buzzing today, but there will be a buzz at the

8  end of your time period if you exceed it.  Since we are the

9  only ones on the Agenda, though, there is a little bit of

10 flexibility.

11         The plan today is that after today's proceedings, the

12 Court will issue a revised procedures order incorporating the

13 rulings on the objections and addressing the Court's other

14 concerns, which include some more changes and some substantive

15 issues.  There will be a limited time period for written

16 comment, and then the final order will issue.

17         Since we only have three people who have noticed that

18 they're going to speak today, you can all remain on -- you can

19 all put your cameras on.

20         Okay.  Thank you.

21         All right.  Are you ready to start?

22         MR. ARRASTIA:  Yes, Judge.

23         MAGISTRATE JUDGE DEIN:  Please identify yourself, and

24 I'll hear you.

25         MR. ARRASTIA:  Good morning, Judge.  John Arrastia of

1  Continental, PLLC, on behalf of the Avoidance Actions Trustee,

2  and I will be brief.

3       In order to establish an orderly framework to resolve

4  more than 50 pending avoidance actions transferred to the

5  Avoidance Actions Trust, the Trustee's proposed set of

6  procedures, of all these defendants, only three timely filed

7  limited objections, and there were also four untimely

8  joinders.  I want to address each of those.

9       There is one objection to the length of the requested

10 120-day stay, which the Trustee proposes to use for the

11 purpose of pursuing informal negotiations.  The objection

12 points to the procedural history of the cases before the

13 Trustee was appointed on March 15th of this year to argue that

14 this recently appointed Trustee should be limited to a 60-day

15 stay to begin the negotiations for all these avoidance

16 actions.

17      Now, that objection -- objecting party does not

18 indicate why there's any prejudice to the length of the stay

19 sought, but the procedures motion does set forth good cause

20 for such a period.  The focus of the remaining objections are

21 directed at the mandatory mediation and the proposal for one

22 motion for summary judgment per party.

23      As to mediation, we believe that that objection

24 misses the mark.  During the proposed stay of litigation, the

25 only mediation obligation is that the parties schedule a

1    mediation for some later point in time.  That's it.  Just to

2    schedule it.  That task of scheduling hardly supports the way

3    that it was characterized as, "additional layer of

4    bureaucracy, delay, and cost."

5            Any party wishing to lift the stay at the end of the

6    period, because the informal negotiations weren't successful,

7    can seek to lift the stay.  Consequently, the way that the

8    proposed procedures motions are designed is to allow any party

9    to seek to file a dispositive motion and have it heard well

10   before any scheduled mediation.

11           MAGISTRATE JUDGE DEIN:  Sorry.  So in this stay

12   period, you anticipate only scheduling?

13           MR. ARRASTIA:  Yes.

14           MAGISTRATE JUDGE DEIN:  But if a party does not want

15   to participate in mediation, how is that handled?

16           MR. ARRASTIA:  I think that they need to -- the

17   Procedures Order is a framework.  We have a couple individuals

18   that have objected.  What we would suggest is let's get to the

19   point that there might actually be a mediation, because before

20   mediation, we would anticipate there might be a motion to

21   dismiss, there's going to be informal resolution.  Let's keep

22   the framework in place.  If someone has a legitimate basis not

23   to participate in mediation, well, then they can raise that

24   issue.

25           And what we built into it, which is similar to this

1   Court's orders, is you have to have a meet and confer.  Let's

2   talk about it.  But I think that it's important for the more

3   than 50 cases to have a framework.  And courts have uniformly

4   found, even if a mediation doesn't result in a settlement,

5   it's still beneficial, and we've taken effort to assemble a

6   panel that we think would be very helpful, including retired

7   Judge Cyganowski.  And these are the individuals that we

8   believe can add a lot of value.

9              But right now we're objecting to a procedure that we

10  anticipate will happen well down the road, after there have

11  been opportunities.  Mediation, we're not asking for an early

12  mediation, before everything else could be exhausted.  We

13  anticipate that this will be later in the process if the

14  parties so choose, if that's the way that it wants to be

15  scheduled, but --

16             MAGISTRATE JUDGE DEIN:  You have an outside date for

17  the mediations?

18             MR. ARRASTIA:  No, we do not.  We do not.  Again,

19  this is a framework, and we want the Court obviously to weigh

20  in, because this is something that's going to implicate

21  judicial labor as well.  If people -- if more than the couple

22  of objections out of the more than 50, if that somehow --

23             (Sound played.)

24             MR. ARRASTIA:  -- everybody doesn't want to

25  participate --

 1                   MAGISTRATE JUDGE DEIN:  You can finish up.  You're

 2       muted.

 3                   I'm afraid he got muted.

 4                   MR. ARRASTIA:  I apologize.  As to the summary

 5       judgment, the argument relies on a set of hypothetical facts,

 6       and it concedes as much.  It says it may be that the claims

 7       were not pursued, it may be that the claims were dismissed,

 8       there might be additional issues, but assuming, again, that

 9       the case is not resolved before summary judgment, no one has

10       identified any issues that can't be addressed in one 35-page

11       motion for summary judgment.

12                   On the other hand, multiple motions for summary

13       judgment don't just mean work for the parties.  It means more

14       labor by the Court without an articulated specific benefit.

15       Basically, as with any framework set forth by any procedures

16       motion, any party can seek -- for good cause, can seek a

17       deviation and modification from the Court.  There's no

18       prejudice to any party if the objections are overruled,

19       because there's nothing in the order, the proposed order that

20       precludes a party from seeking to modify the mediation or the

21       summary judgment procedures based on a set of actual existing

22       facts that demonstrate good cause.

23                   We just believe that it's premature right now,

24       because this is a framework.

25                   MAGISTRATE JUDGE DEIN:  Just one other question, and

1  then I'll hear from the others and you can come back.

2        MR. ARRASTIA:  Thank you.

3        MAGISTRATE JUDGE DEIN:  Do you anticipate, during

4  that stay period, that parties could lift -- could move to

5  lift the stay or to be exempt from the mediation?

6        MR. ARRASTIA:  What we -- the way that we had

7  structured it is that, at the end of the stay period, it

8  would -- then the parties could then move to lift the stay.

9  This is what we anticipate.  You have more than 50 actions, so

10  some people will be negotiating, some people might not want to

11  continue the informal negotiations, but there's 50 something

12  avoidance actions.  There's one Avoidance Actions Trustee.  If

13  we move to not have a -- let's call it a period for

14  negotiation, and he is involved in active litigation in some

15  cases, it's going to detract from the ability to negotiate

16  with the other parties.

17        This is just not a two-party race.  This is -- so

18  we're very sensitive, and we've tried to build into the

19  procedures orders an opportunity to give everyone an

20  opportunity to negotiate, to participate in scheduling, how

21  they want to handle the case, but give each side enough time

22  to respond.

23        MAGISTRATE JUDGE DEIN:  Okay.  Thank you.

24        MR. ARRASTIA:  Thank you, Judge.

25        MR. ZOUAIRABANI-TRINIDAD:  Good morning, Your Honor.

1    Can you hear me?

2              MAGISTRATE JUDGE DEIN:  Yes, I can.

3              MR. ZOUAIRABANI-TRINIDAD:  Okay.  Good morning.

4              Attorney Nayuan Zouairabani of McConnell Valdes, LLC,

5    representing Evertec Group and Bristol-Myers Squibb.

6              Your Honor, as a housekeeping matter, the objectors

7    conferred before the hearing, and the issue on the appropriate

8    length of a proposed stay period will be submitted in the

9    pleadings filed by International Surveillance Services

10   Corporation, and will not be argued today.

11             Now, Your Honor, while the Trust talks about the fact

12   that they're recently appointed, I think that some context as

13   to these cases and their history is very important to

14   understand the objections.

15             The first thing is the objectors are not here because

16   they want to.  They're here against their will, because of the

17   complaints filed in April and May of 2019.  These cases have

18   been pending for three years, and have transpired in a manner

19   that's been most favorable to plaintiffs, even though they

20   have the burden to prevail in these actions.

21             During the last three years, many of the objectors

22   have been involved in informal discussions with former

23   plaintiffs, submitted swaths and swaths of documentation and

24   information to help consensually resolve these cases.  In

25   short, plaintiffs have had almost exclusive control in the

1  handling of these cases, while defendants, the most vulnerable

2  parties here, have had minimum say, if any.

3  The Trust continues unfortunately with this trend,

4  and this dynamic, by seeking the imposition of the procedures

5  with the detriment of the objectors, especially the issues

6  that have been highlighted.  As discussed in Evertec's brief,

7  mandatory mediation, as opposed to a voluntary mediation

8  framework, should not be forced here because, A, it will be

9  burdensome on defendants who will have to share the cost of a

10 private mediator.  B, and the fact that -- to one of the

11 points of Mr. Arrastia, it may not even be necessary.  The

12 Trust will have the benefit of the stay period, plus the

13 information delivered by defendants these last three years to

14 resolve these cases.  And, C, the cases will be delayed even

15 further until mediation concludes, whenever that may be.

16 Currently, the framework is too open-ended.

17 In their reply, the Trust cites the First Circuit

18 decision of *In re Atlantic Pipe Corp.*, 304 F.3d 135, to

19 support their request for a blanket mandatory mediation in

20 these cases, but *Atlantic Pipe* actually supports Evertec's

21 argument that mandatory mediation cannot be imposed wholesale

22 without a deep dive of the particularities of each case.

23 In *Atlantic Pipe*, the First Circuit analyzed factors

24 such as the complexity of the case, the parties involved, and

25 the procedural state of the litigation to assess whether

1    mandatory mediation was appropriate.

2           (Sound played.)

3           MR. ZOUAIRABANI-TRINIDAD:  The Omnibus Motion does

4    not take any of these factors into account which need to be

5    assessed on a case-by-case basis.  Mandatory mediation cannot

6    be imposed without this analysis.

7           Lastly, *Atlantic Pipe* held that a mandatory mediation

8    order that does not set reasonable limits on the duration of

9    the mediation and the mediators' fees is doomed to fail,

10   because the order must be crafted in a manner that preserves

11   procedural fairness and shields objecting parties from undo

12   burdens.  The proposed framework does not contain any of these

13   safeguards, unfortunately, and this reason is sufficient to

14   deny the procedures under the *Atlantic Pipe* standard.

15          Your Honor, the problem currently with the framework

16   is that it's an automatic opt-in for everyone involved,

17   regardless of the case, the stage, or the status.  If it had

18   been structured as a voluntary opt-in, without having to jump

19   through hoops to do an opt-out, perhaps we would be looking at

20   a different story, and even then --

21          MAGISTRATE JUDGE DEIN:  Excuse me.  Though I'm not

22   sure they're jumping through hoops, I think having 50 parties

23   file something is more of a burden on the Court than the few

24   people that want to opt out on it.  So I'm not quite getting

25   the same balance of burden as you are expressing.  I agree

1    that there ought to be an opt-out.

2          MR. ZOUAIRABANI-TRINIDAD:  Correct.  And the issue

3    right now is right now there are current parties who have

4    problems with the automatic opt-in.  We know that for a fact.

5    And the fact that those parties would be required under the

6    current procedures, as proposed, to have to come to the Court

7    and seek an opt-out, have to explain on a case-by-case basis

8    why, as opposed to the Trustee having to explain why they

9    should stay, it's burdensome definitely on the parties.

10         I understand the Court's concerns, but the framework

11   currently has deficiencies that need to be addressed, and not

12   the least of it is that there's no limitation on the cost, on

13   the cap -- on how much the mediation might cost, and this is

14   an issue that was flagged in *Atlantic Pipe*.  And also the

15   limitation, which the Trustee just mentioned that they -- the

16   current procedure does not establish how long it's going to

17   be.

18         MAGISTRATE JUDGE DEIN:  Okay.

19         MR. ZOUAIRABANI-TRINIDAD:  And with that, Your Honor,

20   I'll yield whatever remaining time I have to my colleagues,

21   unless the Court has other questions.

22         MAGISTRATE JUDGE DEIN:  I think you're out of time.

23         MR. ZOUAIRABANI-TRINIDAD:  Okay.  Thank you, Your

24   Honor.

25         MAGISTRATE JUDGE DEIN:  But that was very generous.

1            MR. BILLINGS:  Good morning, Your Honor.  Ryan

2     Billings from Kohner, Mann & Kailis for Manpower.

3            MAGISTRATE JUDGE DEIN:  Go ahead.

4            MR. BILLINGS:  And we objected on a very limited

5     issue of the requirement of an omnibus summary judgment

6     motion.  And I have very, very short comments.  I'm going to

7     speak generally and then specifically about our case.

8            So Federal Rule of Civil Procedure 56 and Bankruptcy

9     Rule of Procedure 7056 adopted a framework for summary

10    judgment motions.  It's been tried and tested in thousands of

11    courts, in millions of cases over eight decades.  It is

12    efficient and fair to the parties.  And one of the reasons for

13    that we listed in our brief includes that allowing partial

14    summary judgment motions can streamline the action, narrow the

15    issues, facilitate settlement, reduce the scope at trial, and

16    ultimately reduce the cost on parties and litigants.

17           To my mind, since we already have this framework, the

18    question is whether the Trustee has established good reason

19    for departing from it, and I don't think they have.  Let me

20    talk specifically about the Manpower case.  We have been

21    trying for two and a half years.  We've been engaged in

22    serious and furious settlement negotiations with the former

23    powers that be.  Unfortunately, they're gone, and we're going

24    to now negotiate with new parties.  Those negotiations

25    revealed that there are about five or six issues that were

1   really contested by the parties, and we think we can handicap

2   most of them, but there may be that one issue. There's only

3   really one issue that the parties disagree so much they can't

4   settle the case, and we think it would be efficient to allow

5   us to move just on that issue, so we can get guidance from the

6   Court to resolve that logjam and hopefully resolve the matter

7   outside of court, burdening no one.

8        We have no intention of filing multiple 35-page

9   motions. We just want the flexibility to present limited

10  issues to the Court if that is the issue which is holding up

11  resolution of the matter. And I agree with the Trustee to

12  some extent that we can't project everything that's going to

13  happen. The *Manpower* case involves over a thousand payments

14  over four years and 48 million dollars in dispute.

15       We, as Mr. Zouairabani explained, have provided a lot

16  of information to the debtor, and have not gotten anything

17  back yet, so we don't know what we don't know. But for that

18  reason, I don't think that there's a good cause for departing

19  from the framework that is set up by the rules and that have

20  proven to be fair to both sides.

21       MAGISTRATE JUDGE DEIN: Thank you.

22       All right. The Trustee, do you have responses? And

23  then I have some comments for everybody.

24       MR. ARRASTIA: Your Honor, the entire idea of the

25  mediation -- frankly, I don't want to be in a week-long

1  mediation with 50 parties.  That's not the intention.  One of

2  the reasons that we baked in meet and confer is so that we can

3  discuss things as the issues actually arise, and we can say,

4  does this make sense, does this not make sense, because, if

5  someone files a motion for a simple reason, and it makes

6  sense, they're conferring with us.  Are we going to -- I hope

7  we're not going to object to something that's reasonable and

8  makes sense and is in everyone's best interest, but that being

9  said, the mediation's designed -- that's a few thousand

10 dollars at most, as opposed to discovery costs, expert fees,

11 professional fees, and other expenses.  That's what's going to

12 drive up the cost of the case.  Hardly, in my experience, has

13 mediation been the expensive part of the case.  It's been

14 everything else that mediation is designed to avoid.

15       And with respect to summary judgment, I respect the

16 comments --

17       (Sound played.)

18       MR. ARRASTIA:  -- that were made by opposing counsel.

19 That's something that, if it arises, we should discuss, and if

20 we disagree on that limited instance, the Court can decide.

21       Thank you, Your Honor.

22       MAGISTRATE JUDGE DEIN:  So this is where I am, and

23 then I have a few questions, but, first of all, let me just

24 deal with the timeliness of the joinders, because that was one

25 of the issues.  I do find that the joinders were timely under

```
 1    the 16th Amended Case Management Procedures Act, which --

 2    procedures, not act, procedures, which allowed for the

 3    joinders to objections to be due eight calendar days before

 4    the applicable hearing date.  So I think everything's timely.

 5         The 120-day stay does make sense, but I think ISSC

 6    (International Surveillance Services Corporation) has been

 7    pushing the issue for a long time, and is the only party that

 8    objected to the length of that stay.  So the Order will

 9    provide that there will be a 120-day stay, except that ISSC

10    may, after 60 days, file a motion to lift the stay.

11    Otherwise, the motions to lift stay will be no sooner than 120

12    days.

13         And I'm assuming you mean from the date the Order

14    enters?

15         MR. ARRASTIA:  Yes, Your Honor.

16         MAGISTRATE JUDGE DEIN:  Okay.  And I do -- the stay

17    will remain in effect until lifted, which means that any party

18    can move to lift the stay at the conclusion of the appropriate

19    stay period.

20         I think somebody had suggested an automatic lifting

21    of the stay.  It's procedurally too complicated for us to have

22    cases that are just floating and we don't have a schedule for.

23    So the stays will remain in effect until they're lifted.

24         The Procedures Order will provide and require the

25    Trustee to file a report at the conclusion of the 120-day
```

1   period as to all -- the status of all proceedings, and every

2   30 days thereafter.  And the mediations, at least the initial

3   meetings, need to be scheduled within 60 days of the

4   expiration of the 120-day period.  When --

5            MR. ARRASTIA:  Quick clarification?

6            MAGISTRATE JUDGE DEIN:  Go ahead.

7            MR. ARRASTIA:  The initial meetings, do you mean

8   mediations, scheduling --

9            MAGISTRATE JUDGE DEIN:  A schedule -- you have to

10   have set a schedule, and the goal should be, if at all

11   possible, for the initial session to take place within an

12   additional 60 days, but the Court will entertain an extension

13   of that if necessary.  But we need to get -- I am assuming

14   that some of these matters will go forward during the 120-day

15   period in some form, and that you will at least be able to

16   schedule initial meetings.  Okay?

17            MR. ARRASTIA:  Thank you, Your Honor.

18            MAGISTRATE JUDGE DEIN:  With respect to the

19   objections to the mandatory mediation, I'm trying to balance

20   the need for all the parties to know what they're doing and

21   the Court's ability to actually focus on specific cases.  I

22   think under *Atlantic Pipe Corp.*, the Court does have the

23   jurisdiction, in this broad number of cases, to issue an order

24   requiring mandatory mediation and mandatory cost splitting,

25   provided there's an out.  All right?

1    And so the Order will provide that any party may move

2    for an exemption, either as to the cost or as to the mandatory

3    mediation, but that way the Court will actually have the

4    specifics of each case that it's an issue in fully briefed.  I

5    don't think it's going to be the burden that counsel's afraid

6    of.  I think having 50 parties file motions on whether or not

7    they want mediation is too burdensome, so the Order will be

8    the presumption is mediation, the presumption is cost

9    splitting, but any party may move for an exemption from those.

10    As to the limit to the summary judgment, I agree that

11    it's going to be case by case, so the Order will provide,

12    again, that it's a presumption of one motion, but the parties

13    may seek to modify that in this specific case.  So does

14    anybody have any major problems with any of that?

15    MR. ARRASTIA:  No, Your Honor.

16    MR. ZOUAIRABANI-TRINIDAD:  If I may, Attorney Nayuan

17    Zouairabani on behalf of Evertec.

18    Your Honor, we have a concern.  I understand the

19    Court's logic with regards to the opting out.  The concern

20    that we have is still the framework.  We could -- if I

21    understood the Court correctly, a party could move for either

22    an exemption of the mandatory mediation, on splitting of the

23    cost.  There's still a remaining issue as to how long will the

24    mediation take and setting some sort of limitation there.  So

25    I don't know if that's something that could be addressed as

1   part of the Order that may be entered, but that is still a

2   concern that I believe is still out there.

3           MAGISTRATE JUDGE DEIN:  Okay.  So the Order will

4   provide that the mediation needs to be scheduled at least

5   within 60 days after the expiration of the 120-day period

6   unless you agree otherwise.  All right.  So you have at least

7   the start.  How long a mediation is going to take, I've been

8   doing it for 21 years, I have no idea how long mediation

9   takes.  We have good days and bad days.

10          MR. ZOUAIRABANI-TRINIDAD:  I understand.

11          MAGISTRATE JUDGE DEIN:  But that is something that is

12  part of the conversation, right?  So the parameters of the

13  mediation, picking the mediator, the cost I think can be

14  affected by who you pick and the like.  Those are subjects of

15  conversation.  And if you can't reach agreement on it, either

16  the Court will order something, or you won't go to mediation

17  and we'll go down the litigation path.  Okay.

18          MR. ZOUAIRABANI-TRINIDAD:  Oh, Your Honor, I

19  understand --

20          MR. ARRASTIA:  Your Honor, I --

21          MR. ZOUAIRABANI-TRINIDAD:  I'm sorry.  Go ahead,

22  Counsel.

23          MR. ARRASTIA:  I was going to say, Your Honor, if you

24  like, I can share with you a couple of thoughts that we are

25  contemplating that might address some of these concerns.  One

1   are mediations -- mediators that we are hoping to get will be

2   some on island, retired Judge Cyganowski, who has a higher

3   fee, and folks in the middle.

4          So we want to provide -- we're sensitive to the cost,

5   so we want to provide people that are vetted, that are

6   interested, that we think are -- provide different economic

7   options.  We anticipate that a mediation -- we wouldn't want

8   to schedule it for more than a day, unless the parties agree,

9   because they think they're moving forward.  That's the thought

10  process.  We want to have an opportunity.  We don't want to

11  create a burden, and we don't want to foist an unnecessary

12  expense, because, don't forget, the Trustee has one half of

13  that expense.

14         So I just wanted to share that, to the extent that's

15  helpful to the Court.

16         MAGISTRATE JUDGE DEIN:  Thank you.

17         And the Order, as modified, will provide that you

18  need to confirm that the mediators are -- once one's selected,

19  that they're available, and qualified, and that there's no

20  conflict.  So that will be an amendment you'll see in the

21  Procedures Order.  All right.

22         MR. ZOUAIRABANI-TRINIDAD:  Your Honor, I had one

23  observation to what Mr. Arrastia just indicated.  In terms of

24  the schedule, because I believe that it's going to be

25  scheduled within 60 days, will that proposed schedule be filed

1   with the Court?  I don't know if it's possible that within

2   maybe 60 days, after 120 days, do we file with the Court --

3           MAGISTRATE JUDGE DEIN:  That's -- I'm sorry --

4           MR. ZOUAIRABANI-TRINIDAD:  Uh-huh.

5           MAGISTRATE JUDGE DEIN:  -- but as I've said, the

6   Trustee needs to file a status report on all cases at the

7   120-day mark, and every 30 days thereafter.

8           MR. ZOUAIRABANI-TRINIDAD:  Okay.

9           MAGISTRATE JUDGE DEIN:  So the Court will now -- and,

10  I mean, it sounds like you have a plan that's in your mind on

11  the way that Evertec's claims should be handled.  Then you

12  need to talk to the Trustee, and get that scheduled sooner

13  rather than later if that's what you want.  My guess is some

14  of the parties will want it later rather than sooner, so there

15  may be ample room for that as well.

16          All right.  So we've addressed my list of revisions.

17  The notice of settlement, as proposed, has no identifying

18  information, and I think any notice has to include the

19  adversary case number and identify the settling party, and it

20  needs an objection period in it, because parties can't object

21  to something they don't know what it is.

22          Structurally, in the Procedures Order, if the case is

23  going to go to trial, at that point there will be the option

24  to consent to a magistrate judge or not, but that procedure

25  needs to be reflected in the Procedures Order.  Obviously,

1   under the Rules, only if both parties consent will a matter go

2   to a magistrate judge, but we'll put in that time where

3   everybody will have the option to make that decision.  And I

4   think, given the wide range of topics that are raised by these

5   avoidance actions, it really is too early to set all of the

6   trial rules.  So the Order will sort of knock all that out,

7   and just provide that if you get to -- if you get to

8   litigation, there'll be a conference with the Court, and a

9   pretrial schedule will be set at that point.  Okay?

10           MR. ARRASTIA:  Thank you.  Thank you, Your Honor.

11  Thank you for your time and attention.

12           MAGISTRATE JUDGE DEIN:  So what's going to happen is

13  we'll send out a proposed order in the next day or so.  You'll

14  have a very limited timeframe to respond if you have any

15  objections, and then a final order will be issued.  Okay?

16           MR. ARRASTIA:  Thank you, Your Honor.

17           MAGISTRATE JUDGE DEIN:  All right.

18           MR. BILLINGS:  Thank you, Your Honor.

19           MR. ZOUAIRABANI-TRINIDAD:  Thank you, Your Honor.

20           MAGISTRATE JUDGE DEIN:  Is there any other matter

21  from anybody who's still here?

22           MR. ARRASTIA:  No, Your Honor.

23           MAGISTRATE JUDGE DEIN:  Okay.  So I'm going to

24  conclude this Omnibus Hearing.  As Judge Swain has indicated,

25  the next scheduled hearing is the June 17th, 2022, Disclosure

1   Statement Hearing in connection with the proposed Plan of

2   Adjustment for the Puerto Rico Highways and Transportation

3   Authority.  As with today's hearing, that hearing will occur

4   over a combination of Zoom and listen-only telephone line.

5        And I do want to join with Judge Swain in thanking

6   the court staff in Puerto Rico, Boston, and New York for their

7   work in preparing and for conducting today's hearing, and

8   their amazing and continuous support of the administration of

9   these very complex cases, only what can, I think, kindly be

10  described as challenging circumstances.

11       So I wish everyone good health.  Stay out of trouble.

12  And court is adjourned.  Thank you.

13            MR. ARRASTIA:  Thank you, Your Honor.

14            MR. ZOUAIRABANI-TRINIDAD:  Thank you, Your Honor.

15            (At 10:09 AM, proceedings concluded.)

16                      *     *     *

17

18

19

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT    )
 2  DISTRICT OF PUERTO RICO)
 3
 4       I certify that this transcript consisting of 30 pages is
 5  a true and accurate transcription to the best of my ability of
 6  the proceedings in this case before the Honorable United
 7  States District Court Judge Laura Taylor Swain, and the
 8  Honorable United States Magistrate Judge Judith Gail Dein on
 9  May 18, 2022.
10
11
12
13  S/ Amy Walker
14  Amy Walker, CSR 3799
15  Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```