**UNITED STATES DISTRICT COURT**

**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | |
| The Financial Oversight and Management Board for Puerto Rico, | PROMESA Title III |
| as representative of | No. 17 BK 3283 (LTS) |
| The Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority, | (Jointly Administered) |
| Debtors | |

**REPLY TO "OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION REQUESTING ORDER OR IN THE ALTERNATIVE TO LIFT STAY"**

TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………….. 2

THE DISCHARGE INJUNCTION
DOES NOT APPLY TO THESE CLAIMS …………………………… 2

SONNAX FACTORS …………………………………………………….. 5

CERTIFICATE OF SERVICE ………………………………………… 10

# TABLE OF AUTHORITIES

## US CONSTITUTION

Eleventh Amendment ………………………………………… 5

## STATUTES

28 U.S.C. §1331 ………………………………………………… 4

28 U.S.C. §1343 ………………………………………………… 4

42 U.S.C. §1983 ………………………………………………… 4

28 U.S.C. §1988 ………………………………………………… 4

Puerto Rico Law 104 of June 29, 1955,

as amended by Law 9 of November 26th, 1975 ……………………… 5

## CASES

Brigade Leveraged Capital Structures Fund Ltd. vs. García Padilla,

217 F. Supp. 3d. 508 (2016) ………………………………………… 6

C&A, S.E. v. Puerto Rico Solid Waste Management Authority,

369 B.R. 87 (2007) ……………………………………………….. 6

Deocampo v. Potts, 836 F.3rd 1134 (2016) ………………………… 3

Hafer v. Melo, 502 U.S. 21 (1991) ……………………………………. 4, 6

In re City of Detroit, 524 B.R. 147 (2014) ……………………………… 2

In re Sonnax Industries, Inc., 907 F2d. 1280 (1990) …………………… 5, 6, 9

Kentucky v. Graham, 473 US 159 (1985) ………………………………… 3, 6

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) …………….. 4, 6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>as representative of<br><br>The Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority,<br><br>Debtors | PROMESA Title III<br><br>No. 17 BK 3283 (LTS)<br><br>(Jointly Administered) |
|---|---|

**REPLY TO "OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION REQUESTING ORDER OR IN THE ALTERNATIVE TO LIFT STAY"**

To the Honorable Court:

Come Now Certain Creditors in USDC-PR cases 17-1770 and 18-1081, thru the undersigned attorney and very respectfully aver and pray:

On May 18, 2022, the Financial Oversight and Management Board for Puerto Rico ("FOMB") as sole Title III representative of the Commonwealth of Puerto Rico (the Commonwealth") filed its Objection [ECF No. 20865] to Plaintiffs[1] ("Movants") Motion

[1] In two civil actions currently before the United States District Court for the District of Puerto Rico ("The District Court") , to wit civil cases Washington del Valle v. Rivera Schatz, number 17-1770 (WGY) ("Washington") and García Perales v. Rivera Schatz, number 18-1081 (WGY) ("García").

Requesting Order or in the Alternative to Lift Stay [ECF No. 20576]. Movants, as per Court's instruction proceed to timely file their reply to the Commonwealth's arguments.

## I. PRELIMINARY STATEMENT

The background of the case has been adequately described in Movants' motion [EFC 20576] and the Commonwealth's objection [ECF No. 20865]. However, the Commonwealth incorrectly states that Movants were terminated from public employment from "various branches of the Puerto Rico government".

Movants were all employed by a single branch of government, the Office of the Superintendent which is the office in charge of keeping and maintaining the buildings, offices and structures of the Puerto Rico Legislative Branch.

## II. THE DISCHARGE INJUNCTION DOES NOT APPLY TO THESE CLAIMS

The Commonwealth states in its Objection that Movants' claims are asserted against officers of the Commonwealth in their official capacity, and therefore are claims against the Commonwealth. Based on that assertion, the Commonwealth includes them in the category of litigations subject to the discharge injunction. However, that is not true.

The Commonwealth of Puerto Rico is not a party in any of these cases. Movants' cases are against individuals ("Defendants"), not against the Commonwealth. In In re City of Detroit, 524 B.R. 147 (Bankr. E.D. Mich. 2014), at page 192, the Court, referring to Constitutional Claims, stated that "The Court concludes, therefore, that a Claim against a City employee in his or her

individual capacity is not a claim against the city for bankruptcy purposes. Accordingly, such a claim is neither discharged nor subject to impairment."

Also, "It is a basic precept of Section 1983 litigation that a judgement against a government official in its personal capacity leads to the imposition of liability against the individual defendant, rather than against the entity that employs him." Deocampo v. Potts, 836 F.3rd 1134, at 1142 (9th Cir. 2016) citing Kentucky v. Graham, 473 US 159 (1985). Deocampo goes further stating that: "…Vallejo may be obligated by statute to indemnify the officers for the amount of the judgment, but this "purely intramural arrangement" does not alter the fact that the judgement itself is binding on the officers and the officers alone." Deocampo at 1142-1143. "Therefore, we hold that California's indemnifications statutes do not render a judgement or concomitant fee award against an indemnifiable municipal employee a liability of the municipal employer for purposes of adjusting or discharging the debts of a Chapter 9 debtor. The judgement is the officer's personal liability not Vallejo's." Deocampo at 1143.

The Commonwealth's assertion is that the discharge operates as an injunction against the commencement and continuation of an action, pursuant to Section 92.3 of the Joint Plan of Adjustment of the Commonwealth of Puerto Rico and Other Debtors[2], (the "Plan") and enjoins actions against the Debtor. If the Commonwealth's assertion were applicable to the individual defendants, it would constitute an unconsented third-party release which is contrary to the findings of the Court. (See: FFCL Paragraph 238) [ECF No. 19812, at page 146]

[2] See docket # 19813 of case 17-bk-3283 LTS.

Federal law pertaining civil rights protections plays an important role in protecting the people's fundamental rights against discriminatory actions of an individual even when the individual claims to act under color of state law. "Given that a principal purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims"[3], Congress has granted jurisdiction to the United States District Courts ("USDC") to entertain these claims pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 and 42 U.S.C. §1983 and §1988. The Title III Court or a Bankruptcy Court are specialized courts and not the appropriate forum to determine if the discriminatory actions of the individual defendants resulted in a violation of the Plaintiffs constitutional rights.

The particularities of the Washington and García cases trajectory should be considered as the Commonwealth's objections to Movants' motion are reviewed. Both cases were subjected to the Automatic Stay, and it was upon the Defendants' request that the stay was lifted, allowing the cases to continue until discovery was completed and summary judgement disposition and appeals process finalized[4]. The Washington and García cases are very different from those represented in the case law cited by the Commonwealth in its objection. The cases cited as examples are related

---

[3] Hafer v. Melo, 502 U.S. 21 (1991) at 30 citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989), at 66.

[4] On August 21st, 2018, the "Fifth Omnibus Order Granting Relief from the Automatic Stay" was issued. See, Docket No. 3795 in Case No. 17-03283-LTS in the Bankruptcy Court ECF System. The "Fifth Omnibus Order Granting Relief from the Automatic Stay" modified the automatic stay "*nunc pro tunc* to August 17, 2018 (the date of the Motion)".

The Commonwealth's argument on the need to *preserve judicial resources* comes late in this process. Lifting the Automatic Stay upon Defendants' request allowed the parties to engage in an extensive and costly litigation process including an extensive discovery process of over 500 sets of interrogatories and close to 100 depositions of Plaintiffs and Defendants. Dispositive motions were Denied by the District Court. None of the Appeals to the Court of Appeals for the First Circuit was successful.

to the application and hold of the Automatic Stay prior to confirmation of a Plan, and are cases filed post-petition or cases for which the automatic stay was imposed in the initial phase of litigation.

Granting the Defendants the benefits under Puerto Rico Law 104 of June 29, 1955, as amended by Law 9 of November 26th, 1975, ("Law 9"), is discretionary and could be withdrawn by the Commonwealth. It should be noted that Monetary relief claims against the defendants in their official capacity were dismissed under the Eleventh Amendment but allowed to continue in their personal capacity. Significantly, without a trial, there is no determination as to the alleged violation of civil rights or final judgement. It is such a judgement that would provide a monetary amount to be compensated by the individual defendants, which in turn causes a possibility of payment under Law 9. Furthermore, if the Commonwealth determines that it will make a payment to indemnify the Defendants, it will be a post confirmation claim by Defendants, which should be deemed to be administrative expense.

## III. SONNAX FACTORS

In its Objection rebuffing our alternate analysis, the Commonwealth discussed the alleged reasons why the Movants' causes of actions should remain stayed as those listed by the court in In re Sonnax Industries, Inc., 907 F2d. 1280, 1286 (2d. Cir. 1990), among which are: whether relief would result in a partial or complete resolution of the issues; the interests of judicial economy and the expeditious and economical resolution of litigation; whether the parties are ready for trial in the other proceeding; and, the impact of the stay on the parties and the balance of harms.

While we agree with Commonwealth that not one factor is dispositive, we request from the Court to "engage in an equitable, case by case balancing of the various harms at stake" before deciding Movants' motion and whether to lift the stay or not. Of course, the "decision whether to lift the stay [is committed] to the discretion of the bankruptcy judge", In re Sonnax Industries, supra, at 1286. See Brigade Leveraged Capital Structures Fund Ltd. vs. García Padilla, 217 F. Supp. 3d. 508, 517-519, (D.P.R. 2016). See also C&A, S.E. v. Puerto Rico Solid Waste Management Authority, 369 B.R. 87 (D.P.R. 2007).

We reiterate that the Sonnax factors, either independently or taken together, support a decision to allow the Washington and García cases to proceed in the District Court.

Factor 1 – Lifting the stay will result in complete resolution of the controversies, as it has already been considered in this case when a lift of stay was requested by the Defendants and ordered in 2018. As we have stated before, these two cases are in an advanced stage of litigation and the USDC-PR should be allowed to complete trial proceedings.

Factor 2 – Even though the Commonwealth alleges that the claim is against the Commonwealth, it is not. It is a discretionary and voluntary exercise of the Commonwealth to provide benefits of Law 9 that brings it to the litigation and not a request of the Plaintiffs. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'". (Hafer v. Melo, *supra* at 27; citing Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) quoting Kentucky v. Graham, 473 U. S., at 167, n. 14).

Factor 4 – As we have stated before, Congress granted jurisdiction to hear civil rights claims to the United States District Court not to the Bankruptcy or Title III Courts.

Factor 5 – Although there is no insurance carrier protecting the Debtor, the Commonwealth voluntarily assumed the cost of litigating the case and the possibility of paying for an eventual adverse judgement.

Factor 6 – As we have repeatedly stated, these actions are against individuals in their personal capacity and as such, Defendants in the Washington and García cases are third parties other than the debtor Commonwealth.

Factor 7 - Any allowed claim in this case would impact the other creditors but considering that the litigation was allowed to continue upon Defendants' request to lift the Automatic Stay, the balance of harms has shifted and shows that prejudice of sustaining the stay at this moment falls mostly on the Plaintiffs.

Factor 10-11 - The Movants' claims are against the individual defendants listed in the Complaints for their individual actions against the Plaintiffs. The Commonwealth voluntarily became involved with the litigation by authorizing Law 9 benefits as requested by Defendants, Plaintiffs had no part in that authorization process and should not be victimized once more by delaying their access to their day in Court. The Commonwealth authorized the benefits of Law 9, requested the lift of the Automatic Stay, allowed the costs of an extensive discovery and dispositive motion process, appealed the USDC-PR determinations to the First Circuit, and now come before the Court claiming that allowing the case to move to trial before the District Court Judge is against the interest of judicial economy as the Commonwealth would be forced to expend resources in the

litigation. The fact is that the resources have already been spent and expense has already been incurred.

The judicial economy would be best served by allowing the USDC-PR, which has been involved in the cases through their entirety, to continue to trial and judgement phase. Contrary to what the Commonwealth asserts, these claims are against the individuals, and the cases should be allowed to be heard entirely by the USDC-PR. Whether it is convenient or not to the Commonwealth's claims process should not be a factor against the Plaintiffs claims against defendants in their individual capacity.

Asking this Court to submit the Plaintiffs case to a new process and re-start review of their claims does not generate any economies and results in a waste of resources that have already been paid for to bring this case to a trial ready phase. A new beginning in a Title III Court Ordered proceedings implies the involvement and cost of a substantial amount in legal fees and administrative expenses to review thousands of documents de novo to assess the claims, erasing years of work to perform a task that has already been achieved by the District Court.

Factor 12 - At this stage of proceedings, the balancing of harms favors granting the lift of stay and allowing the case to continue as it is the fastest route to achieve disposition of the case and a determination as to the allegations.

This Court should not favor the continuance of a stay at the request of the same Defendants that came before the Court in 2018 and asked for the Automatic Stay to be lifted, allowing them to continue with the litigation and all the costs associated with it. If the case is not allowed to move to its trial phase, then the lifting of the stay in 2018 would have served no purpose. The Title III

Court should not simply ignore what has already been invested since 2018 in pursuing this litigation when considering the Movants' motion.

The harm caused by sustaining the stay to remain in place is larger than any economic shortfalls the Commonwealth may suffer at this point. Plaintiffs' civil rights violation claims should be allowed to move to trial and be resolved before the USDC-PR.

As stated in Movants' motion, on January 18th, 2022, this Court Confirmed the Plan that became effective on March 15th, 2022.[5] Movants respectfully request that this Honorable Court allow these two cases to continue to their final stage in the District Court including trial and payment for any judgement if one is issued.

**WHEREFORE**, it is respectfully requested from this Honorable Court to (1) determine that upon the expiration of the automatic stay, the case should be allowed to continue to its end in the District Court including possible payment for potential judgement against the Defendants; (2) in the alternative, this Honorable Court should apply the Sonnax standards and proceed to lift the stay, allowing the case to continue to trial and any potential payment for judgement.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 25th day of May, 2022.

/s/David A. Carrión Baralt
David Carrión Baralt
USDC No: 207214
PO Box 364463
San Juan, PR 00936-4463
Tel. (787) 758-5050
Email: davidcarrionb@aol.com

[5] See docket # 20349 of case 17-bk-3283 LTS.

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a notification to all attorneys of record.

In San Juan, Puerto Rico, this 25th day of May 2022.

/s/David A. Carrión Baralt
David Carrión Baralt