# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

<table>
<tr>
<td>

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

</td>
<td>

PROMESA
Title III


Case No. 17-BK-3283 (LTS)

(Jointly Administered)

</td>
</tr>
<tr>
<td>

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

Debtor.

</td>
<td>

PROMESA

Title III

No. 17 BK 4780-LTS

Related to Debtor PREPA Only

</td>
</tr>
</table>

## VERIFIED MOTION OF WALTER M. HIGGINS
## FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

Comes now Walter M. Higgins ("Mr. Higgins"), by and through the undersigned counsel,

hereby files this motion for allowance of his administrative expense claim and respectfully states:

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

**Introduction**

On or about March 8, 2018, eight months after the filing of the present petition, the Governing Board of PREPA appointed Mr. Higgins as PREPA's Executive Director/Chief Executive Officer. As part of the appointment, PREPA guaranteed Mr. Higgins the payment of $900,000.00 (the equivalent of his complete first year of service) if his contract was terminated at any time prior to completing the first year of service, unless the termination was attributable to him. In or about late May and early June 2018, the Legislature of the Commonwealth of Puerto Rico and the then Governor publicly stated that PREPA would breach its agreement with Mr. Higgins by prohibiting the payment to Mr. Higgins of any bonus payment. Despite Mr. Higgins' best efforts with PREPA's Governing Board, PREPA breached its agreement with Mr. Higgins and PREPA's Governing Board effectively terminated Mr. Higgins' contract and appointment on or about or June 20, 2018. At the request of the Governing Board of PREPA, Mr. Higgins continued to serve as PREPA's Executive Director/Chief Executive Officer until a replacement Executive Director/Chief Executive Officer was appointed on July 23, 2018. Contrary to the terms agreed upon by the parties, PREPA refused to pay Mr. Higgins the remaining $750,000.00 it had guaranteed to pay in case of termination (the difference between the $900,000.00 that were guaranteed and the amounts that had been paid at the time of termination). Consequently, and pursuant to the applicable law, Mr. Higgins respectfully requests that his post-petition expense be considered an administrative expense claim of PREPA and be granted priority treatment accordingly.

**Facts**

2

1. On July 2, 2017, the Financial Oversight and Management Board for Puerto Rico ("FOMB") filed a voluntary petition on behalf of PREPA pursuant to section 304(a) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").

2. Mr. Higgins is a natural person, of legal age, married, executive by profession, with his current residence at 5610 Mont Blanc Court, Reno, NV 89511.

3. On or about November 2017, PREPA's Governing Board appointed a "search committee" tasked with identifying candidates for the position of PREPA's Executive Director/Chief Executive Officer. The following members of PREPA's Governing Board were appointed to this committee: Nisha Desai, Rafael Díaz-Granados, and Erroll Davis (as chair of the committee).

4. In early January 2018, PREPA's Governing Board contracted Heidrick & Struggles as the search firm responsible for aiding PREPA in the selection of its future Executive Director/Chief Executive Officer.

5. In January 2018, Heidrick & Struggles interviewed individual members of PREPA's Governing Board, members of PREPA's management team, members of the FOMB, and other key stakeholders to develop a job description and a candidate pool. Heidrick & Struggles identified and pre-screened multiple candidates before presenting the search committee a list of candidates for interview.

6. In late January 2018, two rounds of interviews took place. Mr. Higgins was initially interviewed by the members of the search committee, in Atlanta, Georgia on January 22 and 23, 2018. Mr. Higgins participated in a second interview in San Juan, Puerto Rico on January 29 and 30, 2018.

7.  On or about mid-February 2018, PREPA's Governing Board initiated contract negotiations with Mr. Higgins through Heidrick & Struggles. The negotiations were held at arm's length, with the exchange of multiple communications containing each parties' expectation, term sheets and additional information.

8.  As part of these negotiations, Mr. Higgins was led to believe that he would be compensated according to energy industry standards. Because this ended up not being the case, Mr. Higgins was firm that the lowest compensation he would accept for the position of PREPA's Executive Director/Chief Executive Officer was $900,000.00, which still remained below the compensation of other executive directors in electric power companies similar in size and complexity to PREPA.

9.  PREPA's Governing Board was aware of the above and so recognized it in Resolution 4594. *See* Exhibit 1, Pp. 2-3.

10. However, Mr. Higgins was informed that a $900,000.00 yearly compensation would be "politically" frowned upon. PREPA's Governing Board, thus, proposed to divide Mr. Higgins' compensation in two different components: a base salary and a performance bonus based on goal achievement. Mr. Higgins agreed to the Governing Board's proposal because of political considerations.

11. In consequence, PREPA's Governing Board and Mr. Higgins agreed on the following terms for his appointment as Executive Director/Chief Executive Officer:

    a.  a minimum term of two years, with an automatic one-year extension occurring one month prior to the end of the second full year of employment;

    b.  a base salary of $450,000.00, a bonus opportunity of 100% of the base salary annually based on goal achievement;

c.  the possibility of the bonus reaching 150% based on goal achievements, to be set by the PREPA Board of Directors with Mr. Higgins' concurrence;

d.  a one-time payment of $100,000.00 for initial relocation expenses, temporary living expenses, moving expenses, and return relocation expenses;

e.  guarantee of the payment of the complete compensation for the first year, including the 100% bonus (for a total of $900,000.00), if terminated earlier than the first year of service.

*See* Exhibit 1, Pp. 2-3, ¶¶ 1, 2, 3, 4 & 7; Exhibit 2.

12. PREPA's Governing Board specifically negotiated and agreed on the terms detailed above because it recognized that Mr. Higgins' compensation was below that of similar professionals in the industry. *See* Exhibit 1, p. 3.

13. PREPA's Governing Board's guarantee to Mr. Higgins that the complete compensation for the first year, including the 100% bonus (for a total of $900,000.00), would be paid if he was terminated before the end of his first year in the position was one of the main considerations that moved him to accept the appointment to the position of PREPA's Executive Director/Chief Executive Officer.

14. On March 8, 2018, PREPA's Governing Board issued Resolution 4594, whereby it appointed Mr. Higgins as PREPA's Executive Director/Chief Executive Officer. *See* Exhibit 1.

15. Resolution 4594 specifically refers to the compensation agreement detailed in paragraph 11 above and recognizes that Mr. Higgins' compensation and benefits were below those of executive directors of similar electric power companies. *See* Exhibit 1, Pp. 2-3.

16. Resolution 4594 also recognized that such compensation was necessary to secure an executive director or chief executive officer with the necessary credentials. *See* Exhibit 1, Pp. 2-3.

17. Furthermore, Resolution 4594 stressed that, in determining Mr. Higgins' compensation and benefits, PREPA's Governing Board took into consideration his education, vast professional experience in the electric industry in the United States, as well as PREPA's needs, including its complex financial situation and the need to restructure it. *See* Exhibit 1, p. 2.

18. As stated by Resolution 4594, the Governing Board conducted the selection and appointment of Mr. Higgins as PREPA's Executive Director/Chief Executive Order in compliance with PREPA's enabling act, Act 83-1941, as amended, 22 PR Laws Ann. §§ 194 & 195. *See* Exhibit 1, Pp. 1 & 3.

19. On or about March 25, 2018, Mr. Higgins became PREPA's Executive Director/Chief Executive Officer. At this time, PREPA was already in the midst of the instant Title III proceedings. *See* Exhibit 1, p. 3.

20. However, beginning in May 2018, members of the Puerto Rico Legislature and the Governor of Puerto Rico stated publicly that PREPA would not comply with its agreement with Mr. Higgins because, allegedly, bonus payments were not allowed under Puerto Rican law.

21. Mr. Higgins soon became a hostage to the political class in Puerto Rico.

22. Mr. Higgins informed PREPA's Governing Board of his concern that PREPA would breach the compensation and benefits agreement.

23. Initially, the members of PREPA's Governing Board told Mr. Higgins they were hopeful that a way could be found to comply with the compensation agreement.

24. However, by the end of May 2018 and early June 2018, the political pressure on PREPA's Governing Board had become so great, that Mr. Higgins became aware that the breach of his compensation agreement would not be cured.

25. Mr. Higgins communicated this to the Governing Board and learned that the Governing Board was not able to get PREPA to comply with Mr. Higgins' compensation and benefits agreement. Faced with a likely loss of Mr. Higgins as Executive Director/Chief Executive Officer, the Governing Board began discussions concerning a replacement Executive Director/Chief Executive Officer.

26. On June 18, 2018, after the material breach to the agreement mentioned in the previous paragraph had occurred, Mr. Higgins sent a letter to Mr. Ernesto Sgroi and Mr. Erroll Davis, Chairman of PREPA's Governing Board and member of PREPA's Governing Board, respectively, requesting a written reasonable acceptance assurance that PREPA would honor the terms of his contract. *See* Exhibit 3.

27. In his letter, Mr. Higgins also informed that, if PREPA's Governing Board gave him no such assurance, he would understand that PREPA's Governing Board had terminated his agreement as of June 20, 2018. *See* Exhibit 3.

28. While neither PREPA nor its Governing Board replied to Mr. Higgin's June 18, 2018 letter, they took active steps to find a replacement Executive Director/Chief Executive Officer.

29. Thus, not only did PREPA materially breach Mr. Higgins' contract, but – in addition – PREPA's Governing Board terminated Mr. Higgins' appointment on June 20, 2018, before completion of the first year of service. Although his appointment was constructively

7

terminated on June 20, 2018, Mr. Higgins continued, as requested, to serve as Executive

Director/Chief Executive Officer until his replacement took office on July 23, 2018.

30. Pursuant to the agreement between the parties, PREPA had guaranteed Mr. Higgins the

compensation corresponding to one year of service, *i.e.* $900,000.00. Because Mr. Higgins

had received his base salary for 4 months, but no payment corresponding to the target

bonus, at the time of PREPA's breach and Mr. Higgins' termination, PREPA owed Mr.

Higgins $750,000.00.

31. Mr. Higgins reached out to PREPA's Governing Board, through its President and other

members, to request payment of the amounts owed under his agreement, to no avail.

32. Up to the date of the filing of the present motion, and despite Mr. Higgins' multiple

communications and efforts, Mr. Higgins has not been paid the amount due. Therefore, Mr.

Higgins is entitled to compensation for his post-petition services as an administrative

expense of PREPA pursuant to Section 503 of the Bankruptcy Code and be granted priority

treatment accordingly.

## Applicable Law and Discussion

33. Section 503 of the Bankruptcy Code, as incorporated by Section 301 of PROMESA, allows

a person to timely file a request for payment of an administrative expense. After notice and

a hearing, the actual, necessary costs and expenses of preserving the estate shall be allowed

as an administrative expense. Section 301(a) of PROMESA, 48 U.S.C. 2161(a),

incorporates section 507(a)(2) of the Bankruptcy Code, giving priority to administrative

expenses that are allowed under Section 503 of the Bankruptcy Code.

34. This Court has yet to establish a deadline for filing administrative expense claims regarding

PREPA's petition. Thus, Mr. Higgins request is timely.

8

35. The term "preserving the estate" has been expansively interpreted by the courts on a case-by-case basis and is not to be interpreted narrowly, *see* COLLIER BANKRUPTCY MANUAL 503-18.

> Although the trustee has an implicit duty to preserve and safeguard the estate and its assets for the benefit of all creditors, preservation may also include and be a means to other ends in the administration of an estate, such as the continuation of the business or an orderly liquidation. *Id.*

36. The First Circuit developed a two-prong test to determine whether to allow an administrative expense claim, which was recently followed by this Court. *See In re Financial Oversight and Management Board for Puerto Rico*, 631 B.R. 596, 604 (D.P.R. 2021). According to this recent decision, a request under Section 503(a) of the Bankruptcy Code may qualify if the right to payment arose from a post-petition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and the consideration supporting the right to payment was beneficial to the estate of the debtor. *Id*.

37. In the context of PREPA's Title III petition, this Court ruled that "the text and structure of PROMESA compel the conclusion that operating expenses are eligible for administrative expense priority." *Id*.

38. Furthermore, also in the context of PREPA's Title III petition, this Court concluded that a _termination fee_ associated to the early termination of a post-petition agreement qualifies as an administrative expense. *Id*., at 606.

39. Here, PREPA's Governing Board appointed Mr. Higgins after careful consideration of various candidates and considering Mr. Higgins' education, vast professional experience in the electric industry in the United States, as well as PREPA's needs, including its

9

complex financial situation and the need to restructure it, all in compliance with Act 83-1941, 22 PR Laws Ann. §§ 194(b) & 195(a)-(b).

40. Mr. Higgins' compensation was designed, approved and agreed-upon by the parties, including the guarantee of the compensation of one complete year, following industry standards, pursuant to Section 195(b) of Act 83-1941, as amended, 22 PR Law Ann. § 195(b).

41. Mr. Higgins agreed to become PREPA's Executive Director/Chief Executive Officer with the specific agreement that PREPA would guarantee the complete compensation of one year, amounting to $900,000.00, in case of early termination.

42. This condition was essential to Mr. Higgins' acceptance of the appointment as PREPA's Executive Director/Chief Executive Officer.

43. Thus, Mr. Higgins and PREPA entered into a post-petition transaction, whereby Mr. Higgins relocated to Puerto Rico and accepted a below-industry compensation to act as PREPA's Executive Director/Chief Executive Officer and direct its affairs in the instant restructuring procedures. After PREPA breached its agreement with Mr. Higgins and the Governing Board terminated his appointment before completion of one year of service, Mr. Higgins became entitled to the remainder of the first-year compensation still owed to him ($750,000.00).

44. The critical fact is *when* the relevant consideration is provided to the debtor. *See In re Financial Oversight and Management Board for Puerto Rico*, 635 B.R. 201, 213 (D.P.R. 2021). Without a doubt, Mr. Higgins' consideration – acceptance of the appointment to the detriment of other financial and professional prospects – was provided to PREPA post-petition.

45. Therefore, Mr. Higgins is entitled to, and has a valid, enforceable administrative expense claim for the remainder of the one-year compensation. *See In re Financial Oversight and Management Board for Puerto Rico*, 631 B.R. at 604 (recognizing administrative expense status to termination fees in the case of agreements entered post-petition).

46. In the alternative, and assuming *arguendo* that this Court considers that the requirements of Section 503 are not met, which is hereby denied, this Court can still grant Mr. Higgins' request under the doctrine of "fundamental fairness" adopted by the Supreme Court in the case of *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

47. The *Reading* doctrine was recently recognized by this Court. Citing the Bankruptcy Appellate Panel for the First Circuit in the case of *In re Healthco International Inc.*, 272 B.R. 510 (BAP 1st Cir. 2002), *aff'd.*, 310 F3d 9 (1st Cir. 2002), this Court explained that the "fundamental fairness" exception is recognized, among others "when the claim arises from post-petition actions that deliberately violate applicable law and damage others." *In re Financial Oversight Board and Management Board for Puerto Rico,* 481 F. Supp. 3d 60,65 (D.P.R. 2020).

48. PREPA's Governing Board appointed and contracted Mr. Higgins as provided for in Act 83-1941. However, PREPA breached its contract with Mr. Higgins and the Governing Board terminated his appointment, hence, activating the previously agreed-upon termination fee. Thus, PREPA's violation is the cause of the economic damages suffered by Mr. Higgins.

49. Consequently, considering the equities and the fairness of the case, and even if the Court considers that there was not a direct benefit to the estate, Mr. Higgins is entitled to receive the remainder of his guaranteed first year compensation ($750,000.00).

## Conclusion

For the reasons stated above, Mr. Higgins' claim complies with the requirements of Section 503 of the Bankruptcy Code, as incorporated by Section 301 of PROMESA. Mr. Higgins and PREPA reached their agreement after the filing of the present petition, and the Governing Board appointed Mr. Higgins post-petition, specifically holding that his total compensation and benefits were necessary to secure him as PREPA's Executive Director/Chief Executive Officer. Consequently, Mr. Higgins urges this Court to enter an order granting the present motion and granting administrative expense claim status to Mr. Higgins' claim in the amount of $750,000.

WHEREFORE it is respectfully requested that this Court enter an order determining that Mr. Higgins' claim be considered an administrative expense of PREPA, entitled to administrative priority pursuant to Section 503 and Section 507 of the Code, and enter any other relief as is just and proper.

**Respectfully submitted.**

In Guaynabo, Puerto Rico, on May 26, 2022.

**ARROYO & RIOS LAW OFFICES, P.S.C.**
PMB 688
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Tel.: (787) 522-8080
Fax: (787) 523-5696
E-mail: mrios@arroyorioslaw.com


*s/ Moraima S. Ríos Robles*
Moraima S. Ríos Robles
USDC-PR No. 224912

*s/ Jessica A. Figueroa-Arce*
Jessica A. Figueroa-Arce
USDC-PR No. 225206

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice electronically to all counsel of record, and will provide hard copies to the Court and United States Trustee as soon as practical after the filing of the foregoing, consistent with the Court's Sixteenth Amended Case Management Order. *See* Docket No. 20190-1.

Dated: May 26, 2022.

*s/ Moraima S. Ríos Robles*
Moraima S. Ríos Robles
USDC-PR No. 224912

13

**VERIFICATION UNDER PENALTY OF PERJURY**
**PURSUANT TO 20 U.S.C. § 1746**

I, Walter M. Higgins, of legal age, married, executive by profession, resident of Reno, Nevada, hereby state under penalty of perjury that:

1. I have read the foregoing *Verified Motion of Walter M. Higgins for Allowance of Administrative Expense Claim*.

2. The factual assertions in the *Verified Motion of Walter M. Higgins for Allowance of Administrative Expense Claim* are true and correct to the best of my knowledge, information and belief and/or pursuant to documents in my possession and my personal involvement in the facts of this claim.

3. Attached to this verification as Exhibit 1 is a true and exact copy of PREPA's Governing Board Resolution 4594 Appointing a Chief Executive Officer.

4. Attached to this verification as Exhibit 2 is a true and exact copy of the Term Sheet (Revised and dated 2-22-2018) agreed-upon by the parties for the position of PREPA's Executive Director/Chief Executive Officer.

5. Attached to this verification as Exhibit 3 is a true and exact copy of the June 18, 2018 letter I sent to the Mr. Ernesto Sgroi and Mr. Erroll Davis.

Executed in Reno, Nevada, this 25 day of May 2022.

_____
Walter M. Higgins