## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

------------------------------------------------------------------------ x

: 
: 
: 
: PROMESA
: Title III
: 
: Case No. 17-BK-3283 (LTS)
: 
: (Jointly Administered)
: 
: 

## NOTICE OF HEARING ON FOURTEENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022

**PLEASE TAKE NOTICE** that a hearing on the annexed *Fourteenth Interim Fee Application of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period from October 1, 2021 through January 31, 2022* (the "Application") filed by Paul Hastings LLP, pursuant to section 1103(a)(1) of the Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 or "PROMESA," will be held before the Honorable Laura Taylor Swain, United States District Judge, at the United States

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **September 21, 2022 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

    **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Application by any party other than the Fee Examiner shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Third Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 20546] (the "Interim Compensation Order"), so as to be so filed and received by the Notice Parties (as defined in the Interim Compensation Order) no later than **June 15, 2022 at 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").


*[Remainder of page intentionally left blank.]*

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Interim Compensation Order, if no Objections are timely filed, and if the Fee Examiner issues the Fee Examiner Report (as defined in the Interim Compensation Order) recommending approval of the Application in full or in part, the Court may grant the Application without a hearing.

Dated:  May 26, 2022

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

6.      The Committee and Paul Hastings are authorized and empowered to take all necessary actions to implement the relief granted in this Order.

7.      Notwithstanding the possible applicability of Bankruptcy Rules 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Dated: _____, 2022

_____
HON. LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------------ x
                                                     :

In re:                                                   :

                                                   :

THE FINANCIAL OVERSIGHT AND            :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :    Title III

                                                   :

       as representative of                     :    Case No. 17-BK-3283 (LTS)

                                                   :

THE COMMONWEALTH OF PUERTO RICO, *et al.*,   :    (Jointly Administered)

                                                   :

       Debtors.[1]                                     :
------------------------------------------------------------------------ x

**FOURTEENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS**
**COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR**
**SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD**
**FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022**

**SUMMARY COVER SHEET**

| | |
|---|---|
| Name of applicant: | Paul Hastings LLP ("Paul Hastings") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors (the "Committee")[2] |
| Date of retention: | Order entered August 10, 2017, effective as of June 26, 2017 [Docket No. 999] |
| Period for which compensation and reimbursement are sought: | October 1, 2021 through and including January 31, 2022 (the "Application Period") |

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]    The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

| | |
|---|---|
| Amount of interim compensation sought as actual, reasonable, and necessary: | $1,504,585.00 / $1,203,668.00[3] |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $16,532.01 |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Total compensation approved by interim order to date: | $66,068,237.91 |
| Total expenses approved by interim order to date: | $2,369,839.86 |
| Total allowed compensation paid to date: | $53,802,843.39 |
| Total allowed expenses paid to date: | $2,369,839.86 |
| Blended rate in this Application for all attorneys: | (a) $1,142 /hour; (b) $914 /hour[4] |
| Blended rate in this Application for all timekeepers: | (a) $1,042 /hour; (b) $833 /hour[4] |
| Compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $751,846.80 |
| Expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $10,304.01 |
| The total time expended for fee application preparation during the Application Period: | Approximately 25.2 hours |
| The total compensation requested for fee application preparation during the Application Period: | Approximately $24,941.50 |
| Number of professionals included in this Application: | 14 |

---

[3]   While Paul Hastings seeks allowance of all of its fees incurred during the Application Period, the firm only seeks payment, at this time, of fees in the amount of $1,203,668.00 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $1,504,585.00.

[4]   The calculation of the blended hourly rates reflected in (a) does not take into account Paul Hastings' agreement to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  The impact of the 20% end of the case write-off on the blended hourly rates cannot be calculated at this time.  However, for illustrative purposes only, we have reflected in (b) the blended hourly rate after accounting for the 20% reduction for all attorneys and for all timekeepers.

| | |
|---|---|
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | 3 |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | $176,197.00 / $140,957.60[5] |
| Number of professionals billing fewer than 15 hours to the case during the Application Period: | 4 |
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed in the retention application: | Yes.[6]  When calculated at the rates in effect during the initial fee period (June 26, 2017 through September 30, 2017), total fees for the Application Period would have been $1,206,021.00 (compared to $1,504,585.00 under the current rates).  The rate adjustments reflect not only Paul Hastings' across-the-board increases in its rate scale, but also step increases due to advancing seniority.  While $298,564.00 of Paul Hastings' fees for the Application Period are attributable to periodic changes in rates, $53,949.50 of this amount is attributable to step increases due to advancing seniority.[7]  Thus, only $244,614.50 of the fees in the Application Period are attributable to changes in the firm's rate scale since the date of retention. |

---

[5]   The fee s sought in this Application for the Application Period were approximately $176,197.00 (or $140,957.60 after adjusting to reflect, on a *pro forma* basis, the 20% end-of-case reduction) higher than the fees budgeted for the Application Period.  As detailed below, this discrepancy was primarily due to higher than expected work related to (a) confirmation of the Commonwealth plan of adjustment and (b) research regarding confirmation issues with respect to an HTA plan of adjustment.  We also note that this is the first time in these Title III cases that Paul Hastings's fees for a given application period have been over budget.

[6]   As is customary, and as permitted pursuant to paragraph 2 of Paul Hastings' retention order [Docket No. 999], every year Paul Hastings reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms. As a courtesy to the Committee, Paul Hastings voluntarily agreed to reduce the hourly rate of Luc A. Despins (from $1,360 to $1,280 per hour) and John F. Hilson (from $1,300 to $1,120 per hour) for the Application Period in the Puerto Rico matter (in each case, adjusted to reflect, on a *pro forma* basis, the 20% end-of-case reduction).

[7]   Under the U.S. Trustee's Appendix B Guidelines, rate increases "exclude step increases historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion."

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 26, 2017 through September 30, 2017)** | | | | | | |
| 8/25/17 | 6/26/17 - 7/31/17 | $2,612,026.60 | $128,519.42 | $2,612,026.20 | $128,519.42 | $653,006.65 |
| 10/20/17 | 8/1/17- 8/31/17 | $2,742,786.60 | ($35,965.44) | $2,742,786.60 | ($35,965.44) | $685,696.65 |
| 12/5/17 | 9/1/17 - 9/30/17 | $2,121,569.60 | $40,716.24 | $2,121,569.60 | $40,716.24 | $530,392.40 |
| **Total** | | **$7,476,382.80** | **$133,270.22** | **$7,476,382.40** | **$133,270.22** | **$1,869,095.70** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/23/17 | 10/1/17 - 10/31/17 | $915,475.60 | $14,567.93 | $915,475.60 | $14,567.90 | $228,868.90 |
| 1/5/18 | 11/1/17 - 11/30/17 | $1,445,414.80 | $27,705.47 | $1,445,414.80 | $27,705.47 | $361,353.70 |
| 1/12/18 | 12/1/17 - 12/31/17 | $1,467,883.60 | $22,557.50 | $1,467,883.60 | $22,557.50 | $366,970.90 |
| 3/16/18 | 1/1/18 - 1/31/18 | $1,824,040.20[8] | $30,631.53[9] | $1,822,932.20 | $17,909.03 | $455,733.05 |
| **Total** | | **$5,652,814.20** | **$95,462.43** | **$5,651,706.20** | **$82,739.90** | **$1,412,926.55** |
| | | | | | | |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | |
| 4/18/18 | 2/1/18 - 2/28/18 | $2,015,455.20 | $87,789.71 | $2,015,455.20 | $87,789.71 | $503,863.80 |
| 5/9/18 | 3/1/18 - 3/31/18 | $2,416,111.40 | $53,500.42 | $2,416,111.40 | $53,500.42 | $604,027.85 |
| 6/15/18 | 4/1/18 - 4/30/18 | $1,355,344.60 | $408,763.80 | $1,355,344.60 | $408,763.80 | $339,320.15 |
| 7/13/18 | 5/1/18 - 5/31/18 | $1,152,043.00 | $36,939.73 | $1,152,043.00 | $36,939.73 | $288,010.75 |
| **Total** | | **$6,938,954.20** | **$586,993.66** | **$6,938,954.20** | **$586,993.66** | **$1,735,222.55** |
| | | | | | | |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 9/6/18 | 6/1/18 - 6/30/18 | $983,056.20 | $45,319.10 | $983,056.20 | $45,319.10 | $245,764.05 |

---

[8]   This amount reflects a credit of $13,507.00 for fee reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

[9]   This amount reflects a credit of $21,926.16 for expense reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| 10/8/18 | 7/1/18 - 7/31/18 | $1,061,831.60 | $77,376.40 | $1,061,831.60 | $77,376.40 | $265,457.90 |
| 11/2/18 | 8/1/18 - 8/31/18 | $1,288,866.00 | $39,833.17 | $1,288,866.00 | $39,833.17 | $322,216.50 |
| 11/15/18 | 9/1/18 - 9/30/18 | $1,302,462.40 | $39,196.98 | $1,302,462.40 | $39,196.98 | $325,615.60 |
| **Total** | | **$4,636,216.20** | **$201,725.65** | **$4,636,216.20** | **$201,725.65** | **$1,159,054.05** |
| | | | | | | |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/19/18 | 10/1/18 – 10/31/18 | $968,238.40 | $17,300.41 | $968,238.40 | $17,300.41 | $242,059.60 |
| 01/07/19 | 11/1/18 – 11/30/18 | $695,795.40 | $9,071.96 | $695,795.40 | $9,071.96 | $173,948.85 |
| 02/20/19 | 12/1/18 – 12/31/18 | $932,751.60 | $24,110.50 | $932,751.60 | $24,110.50 | $233,187.90 |
| 03/15/10 | 1/1/19 – 1/31/19 | $1,040,883.79[10] | $38,921.42[11] | $1,040,883.79 | $38,921.42 | $260,220.95 |
| **Total** | | **$3,637,669.19** | **$89,404.29** | **$3,637,669.19** | **$89,404.29** | **$909,417.30** |
| | | | | | | |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 06/13/19 | 2/1/19 – 2/28/19 | $1,098,711.60 | $30,746.31 | $1,098,711.60 | $30,746.31 | $274,677.90 |
| 06/13/19 | 3/1/19 – 3/31/19 | $1,453,006.40 | 25,745.44 | $1,453,006.40 | $25,745.44 | $363,251.60 |
| 07/03/19 | 4/1/19 – 4/30/19 | $1,852,132.00 | $64,731.53 | $1,852,132.00 | $64,731.53 | $463,033.00 |
| 07/15/19 | 5/1/19 – 5/31/19 | $2,143,294.80 | $61,317.34 | $2,143,294.80 | $61,317.34 | $535,823.70 |
| **Total** | | **$6,547,144.80** | **$182,540.62** | **$6,547,144.80** | **$182,540.62** | **$1,636,786.20** |
| | | | | | | |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | |
| 08/21/19 | 6/1/19 – 6/30/19 | $1,841,416.66[12] | $300,689.64 | $1,841,416.66 | $300,689.64 | $478,122.60 |

---

[10]   This amount reflects a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[11]   This amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[12]   This amount reflects a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| 09/27/19 | 7/1/19 – 7/31/19 | $1,955,942.80 | $380,030.21 | $1,955,942.80 | $380,030.21 | $488,985.70 |
| 10/31/19 | 8/1/19 – 8/31/19 | $1,051,966.00 | $127,240.87 | $1,051,966.00 | $127,240.87 | $262,991.50 |
| 11/14/19 | 9/1/19 – 9/30/19 | $1,052,167.20 | $92,968.55[13] | $1,052,167.20 | $92,968.55 | $263,041.80 |
| **Total** | | **$5,901,492.71** | **$900,929.27** | **$5,901,492.66** | **$900,929.27** | **$1,493,141.60** |
| | | | | | | |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | |
| 12/19/20 | 10/1/19 – 10/31/19 | $1,911,593.40 | $113,178.50 | $1,911,593.40 | $113,178.50 | $477,898.35 |
| 01/09/20 | 11/1/19 – 11/30/19 | $830,350.40 | $68,843.54 | $830,350.40 | $68,843.54 | $207,587.60 |
| 02/28/20 | 12/1/19 – 12/31/19 | $8812,363.17[14] | $54,148.03[15] | $812,363.17 | $54,148.03 | $202,867.59 |
| 03/13/20 | 1/1/20 – 1/31/20 | $963,194.20 | $44,734.48 | $963,194.20 | $44,734.48 | $240,263.85 |
| **Total** | | **$4,517,501.17** | **$280,904.55** | **$4,517,501.17** | **$280,904.55** | **$1,128,617.39** |
| | | | | | | |
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | |
| 04/27/20 | 2/1/19 – 2/29/20 | $1,537,133.80 | $64,790.53 | $1,537,133.80 | $64,790.53 | $384,283.45 |
| 05/15/20 | 3/1/20 – 3/31/20 | $1,230,017.80 | $26,061.77 | $1,230,017.80 | $26,061.77 | $307,504.45 |
| 06/05/20 | 4/1/20 – 4/30/20 | $665,122.80 | $30,205.99 | $665,122.80 | $30,205.99 | $166,280.70 |
| 07/10/20 | 5/1/20 – 5/31/20 | $398,858.80 | $18,014.66 | $398,858.80 | $18,014.66 | $99,714.70 |
| **Total** | | **$3,831,133.20** | **$139,072.95** | **$3,831,133.20** | **$139,072.95** | **$957,783.30** |
| | | | | | | |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | |
| 08/6/20 | 6/1/20 – 6/30/20 | $331,160.82[16] | $8,379.46[17] | $331,160.82 | $8,379.46 | $82,790.20 |

---

[13]   This amount reflects a credit of $606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[14]   This amount reflects a credit of $145,627.04 for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[15]   This amount reflects a credit of $227.93 for expense reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| 09/14/20 | 7/1/20 – 7/31/20 | $487,330.80 | $66,532.00 | $487,330.80 | $66,532.00 | $121,832.70 |
| 10/10/20 | 8/1/20 – 8/31/20 | $516,247.20 | $34,799.52 | $516,247.20 | $34,799.52 | $129,061.80 |
| 11/2/20 | 9/1/20 – 9/30/20 | $499,875.60 | $39,927.12 | $499,875.60 | $39,927.12 | $124,968.90 |
| **Total** | | **$1,834,614.42** | **$149,638.10** | **$1,834,614.42** | **$149,638.10** | **$458,653.60** |
| | | | | | | |
| **Eleventh Interim Fee Period (October 1, 2020 through January 31, 2021)** | | | | | | |
| 12/12/20 | 10/1/20 – 10/31/20 | $579,022.80 | $9,489.60 | $579,022.80 | $9,489.60 | $144,755.40 |
| 01/8/21 | 11/1/20 – 11/30/20 | $290,754.00 | $22,036.54 | $290,754.00 | $22,036.54 | $72,688.50 |
| 02/12/21 | 12/1/20 – 12/31/20 | $417,523.60 | $14,383.76 | $417,523.60 | $14,383.76 | $104,380.90 |
| 03/11/21 | 1/1/21 – 1/31/21 | $202,174.00 | $14,267.47 | $202,174.00 | $14,267.47 | $50,543.50 |
| **Total** | | **$1,489,474.40** | **$60,177.37** | **$1,489,474.40** | **$60,177.37** | **$372,368.60** |
| | | | | | | |
| **Twelfth Interim Fee Period (February 1, 2021 through May 31, 2021)** | | | | | | |
| 4/9/21 | 2/1/21 – 2/28/21 | $216,458.14[18] | $24,926.47 | $216,458.14 | $24,926.47 | $54,114.53 |
| 5/7/21 | 3/1/21 – 3/31/21 | $152,465.24[19] | $8,252.75[20] | $152,465.24 | $8,252.75 | $38,116.31 |
| 6/25/21 | 4/1/21 - 4/30/21 | $619,255.60 | $35,459.58 | $619,255.58 | $35,459.58 | $154,813.90 |
| 7/9/21 | 5/1/21 – 5/31/21 | $352,375.60 | $9,950.81 | $352,375.59 | $9,950.81 | $88,092.90 |
| **Total** | | **$1,340,554.58** | **$78,589.61** | **$1,340,554.55** | **$78,589.61** | **$335,137.64** |

---

[16]   This amount reflects a credit of (a) $99,027.94 for fee reductions pursuant to the order approving Paul Hastings' Seventh Interim Fee Application and (b) $73,343.54 for fee reductions pursuant to the order approving Paul Hastings' Eighth Interim Fee Application.

[17]   This amount reflects a credit of (a) $548.31 for expense reductions pursuant to the order approving Paul Hastings' Seventh Interim Fee Application and (b) $99.18 for expense reductions pursuant to the order approving Paul Hastings' Eighth Interim Fee Application.

[18]   This amount reflects a credit of $78,764.83 for fee reductions pursuant to the order approving Paul Hastings' Ninth Interim Fee Application.

[19]   This amount reflects a credit of $162,080.45 for fee reductions pursuant to the order approving Paul Hastings' Tenth Interim Fee Application.

[20]   This amount reflects a credit of $170.77 for cost reductions pursuant to the order approving Paul Hastings' Tenth Interim Fee Application.

7

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| | | | | | | |
| **Thirteenth Interim Fee Period (June 1, 2021 through September 30, 2021)** | | | | | | |
| 8/21/21 | 6/1/21 – 6/30/21 | $622,676.81[21] | $50,044.06 | $622,676.81 | $50,044.06 | $194,122.80 |
| 9/17/21 | 7/1/21 – 7/31/21 | $428,374.40 | $10,110.73 | $428,374.40 | $10,110.73 | $107,093.60 |
| 10/25/21 | 8/1/21 – 8/31/21 | $157,248.40 | $932.25 | $157,248.40 | $932.25 | $39,312.10 |
| 11/12/21 | 9/1/21 – 9/30/21 | $198,100.40 | $2,855.11 | $198,100.40 | $2,855.11 | $49,525.0 |
| **Total** | | **$1,406,400.01** | **$63,942.15** | **$1,406,400.01** | **$63,942.15** | **$390,053.60** |
| | | | | | | |
| **Fourteenth Interim Fee Period (October 1, 2021 through January 31, 2022)** | | | | | | |
| 12/17/21 | 10/1/21 – 10/31/21 | $318,006.00 | $1,536.22 | $318,006.00 | $1,536.22 | $79,501.50 |
| 1/6/22 | 11/1/21 – 11/30/21 | $333,804.00 | $8,207.39 | $333,804.00 | $8,207.39 | $83,451.00 |
| 1/27/22 | 12/1/21 – 12/31/21 | $100,036.80 | $560.40 | $100,036.80 | $560.40 | $25,009.20 |
| 2/24/22 | 1/1/22 – 1/31/22 | $451,821.20 | $6,228.00 | $451,821.20 | $6,228.00 | $112,955.30 |
| **Total** | | **$1,203,668.00** | **$16,532.01** | **$1,203,668.00** | **$16,532.01** | **$300,917.00** |

---

[21]   This amount reflects a credit of $192,268.03 for fee reductions pursuant to the order approving Paul Hastings' Eleventh Interim Fee Application

## PRIOR INTERIM FEE APPLICATIONS

| Date Filed [Docket No.] | Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2040 | 6/26/17 - 9/30/17 | $9,345,478.50 | $133,270.22 | Docket No. 2685 | Allowed: $9,264,712.49 Paid: $7,476,382.40 Authorized to be paid: $7,465,577.20[22] | Allowed: $111,344.06 Paid: $133,270.22 Authorized to be paid: $111,344.06[23] |
| 3/19/18 Docket No. 2735 | 10/1/17 – 1/31/18 | $7,066,017.75 | $95,462.43 | Docket No. 3279 | Allowed: $6,960,689.25 Paid:  $5,651,706.20 Authorized to be paid: $5,651,706.20 | Allowed: $104,666.09[24] Paid: $82,739.90 Authorized to be paid:   $82,739.93 |
| 7/16/18 Docket No. 3568 | 2/1/18 – 5/31/18 | $8,676,112.75 | $586,993.66 | Docket No. 5654 | Allowed: $8,576,523.01 Paid:  $6,938,954.20 Authorized to be paid: $6,861,218.41[25] | Allowed: $583,256.46 Paid: $586,993.66 Authorized to be paid:   $583,256.46[26] |
| 11/16/18 Docket No. 4325 | 6/1/18 – 9/30/18 | $5,795,270.25 | $201,725.65 | Docket No. 5654 | Allowed: $5,736,730.98 Paid:  $4,636,216.20 Authorized to be paid: $4,589,384.78[27] | Allowed: $199,429.03 Paid: $201,725.65 Authorized to be paid: $199,429.03[28] |
| 4/18/2019 Docket No. 5822 | 10/1/18 – 1/31/19 | $4,705,215.50 | $95,438.11 | Docket No. 8189 | Allowed: $4,509,478.17 Paid: $3,637,669.19[29] Authorized to be paid: $3,566,595.46[30] | Allowed: $94,831.15 Paid:  $89,404.29[31] Authorized to be paid: $88,797.33[32] |

---

[22]   Reflects fee reductions in the amount of 80% of $13,507.00 (or $10,806.40), which was credited against amounts payable under the January 2018 fee statement.

[23]   Reflects expense reductions in the amount of $21,926.16, which was credited against amounts payable under the January 2018 fee statement.

[24]   Prior to application of a $21,926.16 credit for expense reductions pursuant to order approving Paul Hastings' First Interim Fee Application.

[25]   Reflects fee reductions in the amount of 80% of $99,589.74 (or $79,671.79), which was credited against amounts payable under the January 2019 fee statement.

[26]   Reflects expense reductions in the amount of $3,737.20, which was credited against amounts payable under the January 2019 fee statement.

[27]   Reflects fee reductions in the amount of 80% of $58,539.27 (or $46,831.42), which was credited against amounts payable under the January 2019 fee statement.

[28]   Reflects expense reductions in the amount of $2,296.62, which was credited against amounts payable under the January 2019 fee statement.

| Date Filed [Docket No.] | Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 7/15/19 Docket No. 8004 | 2/1/19 – 5/31/19 | $8,183,931.00 | $182,540.62 | Docket No. 9687 | Allowed: $7,842,124.12 <br> Paid: $6,547,144.80 <br> Authorized to be paid: $6,430,643.17[33] | Allowed: $182,312.69 <br> Paid: $182,540.62 <br> Authorized to be paid: $182,084.76[34] |
| 11/15/19 Docket No. 9219 | 6/1/19 – 9/30/19 | $7,465,708.00 | $901,536.23 | Docket No. 12861 | Allowed: $7,135,691.63 <br> Paid: $5,901,492.66[35] <br> Authorized to be paid: $5,733,012.71[36] | Allowed: $384,942.38 <br> Paid: $900,929.27[37] <br> Authorized to be paid: $385,549.34[38] |

---

[29] After giving effect to credits for fee reductions in the aggregate amount of 80% of $158,129.01 (or $126,503.21) pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[30] Reflects fee reductions in the amount of 80% of $88,842.16 (or $71,073.73), which was credited against amounts payable under the June 2019 fee statement. Also, amount authorized to be paid is net of $126,503.21 in credits for fee reductions pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[31] After giving effect to credits for expense reductions in the aggregate amount of $6,033.82 pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[32] Reflects expense reductions in the amount of $606.96, which was credited against amounts payable under the September 2019 fee statement. Also, amount authorized to be paid is net of $6,033.82 in credits for expense reductions pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[33] Reflects fee reductions in the amount of 80% of $145,627.04 (or $116,501.63), which was credited against amounts payable under the December 2019 fee statement.

[34] Reflects expense reductions in the amount of $227.93, which was credited against amounts payable under the December 2019 fee statement.

[35] After giving effect to credits for fee reductions in the amount of $88,842.17 (or $71,073.74 after 20% reduction) pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[36] Reflects (a) fee reductions in the amount of 80% of $99,027.94 (or $79,222.35), which will be credited against the amounts payable under the June 2020 fee statement and (b) deferral of fees in the amount of 80% of $111,572.00 (or $89,257.60), as agreed between Paul Hastings and the Fee Examiner. Also, amount authorized to be paid is net of $71,073.73 in credits for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[37] After giving effect to credits for expense reductions in the amount of $606.96 pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[38] Reflects (a) expense reductions in the amount of $548.31, which will be credited against amounts payable under the June 2020 fee statement and (b) deferral of expenses in the amount of $515,438.58, as agreed between Paul Hastings and the Fee Examiner. Also, amount authorized to be paid is net of $606.96 in credits for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

| Date Filed [Docket No.] | Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 3/16/20 Docket No. 12395 | 10/1/19 – 1/31/20 | $5,788,714.00 | $281,132.48 | Docket No. 13824 | Allowed: $5,641,450.42 Paid: $4,517,501.17[39] Authorized to be paid: $4,455,794.74[40] | Allowed: $281,132.48 Paid: $280,904.55[41] Authorized to be paid: $281,033.30[42] |
| 7/15/20 Docket No. 13682 | 2/1/20 – 5/31/20 | $4,788,916.50 | $139,072.95 | Docket No. 15355 | Allowed: $4,633,541.85 Paid: $3,831,133.20 Authorized to be paid: $3,768,121.34[43] | Allowed: $139,072.95 Paid: $139,072.95 Authorized to be paid: $139,072.95 |
| 11/16/20 Docket No. 15160 | 6/1/20 – 9/30/20 | $2,465,639.50 | $150,285.59 | Docket No. 16592 | Allowed: $2,270,277.60 Paid: $1,834,614.42 Authorized to be paid: $1,704,950.06[44] | Allowed: $150,114.82 Paid: $149,638.10 Authorized to be paid: $149,467.33[45] |
| 3/15/21 Docket No. 16067 | 10/1/20 – 1/31/21 | $1,861,843.00 | $60,177.37 | Docket No. 17646 | Allowed:$1,635,017.44 Paid: $1,489,474.40 Authorized to be paid: $1,335,659.98[46] | Allowed: $60,177.37 Paid: $60,177.37 Authorized to be paid: $60,177.37 |

[39]   After giving effect to credits for fee reductions in the amount of $145,627.04 (or $116,501.63 after 20% reduction) pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[40]   Reflects fee reductions in the amount of 80% of $73,343.54 (or $58,674.83), which was credited against amounts payable under the June 2020 fee statement.  Also, amount authorized to be paid is net of $116,501.63 in credits for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[41]   After giving effect to credits for expense reductions in the amount of $227.93 pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[42]   Reflects expense reductions in the amount of $99.18, which was credited against amounts payable under the June 2020 fee statement.

[43]   Reflects fee reductions in the amount of 80% of $78,764.83 (or $63,011.86), which was credited against amounts payable under the February 2021 fee statement.

[44]   Reflects fee reductions in the amount of 80% of $162,080.45 (or $129,664.36), which was credited against amounts payable under the March 2021 fee statement.  Also, amount authorized to be paid is net of $172,371.48 in credits for fee reductions pursuant to the orders approving Paul Hastings' Seventh and Eighth Interim Fee Applications.

[45]   Reflects expense reductions in the amount of $170.77, which was credited against amounts payable under the March 2021 fee statement.  Also, amount authorized to be paid is net of $647.49 in credits for expense reductions pursuant to the orders approving Paul Hastings' Seventh and Eighth Interim Fee Applications.

[46]   Reflects fee reductions in the amount of 80% of $192,268.03 (or $153,814.42), which was credited against amounts payable under the June 2021 fee statement.

| Date Filed [Docket No.] | Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 7/15/21 Docket No. 17380 | 2/1/21 – 5/31/21 | $1,916,538.50 | $78,760.38 | Docket No. 19500 | Allowed: $1,862,000.95 Paid:$1,340,554.55 Authorized to be paid: $ $1,311,333.56[47] | Allowed: $78,560.38 Paid: $78,589.61 Authorized to be paid: $78,560.38[48] |
| 11/15/21 Docket No. 19238 | 6/1/21 – 9/30/21 | $1,950,268.00 | $63,942.15 | NA | Allowed:  TBD | Allowed:  TBD |

[47]   Reflects fee reductions in the amount of 80% of $36,526.28 (or $29,221.02), which will be credited against amounts payable under the February 2022 fee statement.  Also, amount authorized to be paid is net of $240,845.28 in credits for fee reductions pursuant to the orders approving Paul Hastings' Ninth and Tenth Interim Fee Applications.

[48]   Reflects expense reductions in the amount of $200.00, which will be credited against amounts payable under the February 2022 fee statement.  Also, amount authorized to be paid is net of $170.77 in credits for expense reductions pursuant to the order approving Paul Hastings' Tenth Interim Fee Applications.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                    :
In re:                                              :
                                                    :
THE FINANCIAL OVERSIGHT AND                         :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                   :   Title III
                                                    :
          as representative of                      :   Case No. 17-BK-3283 (LTS)
                                                    :
THE COMMONWEALTH OF PUERTO RICO, et al.,            :   (Jointly Administered)
                                                    :
          Debtors.[1]                               :
------------------------------------------------------------------------ x
```

## FOURTEENTH INTERIM APPLICATION OF PAUL HASTINGS LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 9

COMPENSATION AND REIMBURSEMENT REQUEST ..................................................... 17

SUMMARY OF SERVICES ................................................................................................... 22

    I.      Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico
          (Matter ID 00002) ................................................................................................. 23

    II.     PREPA (Matter ID 00006) ...................................................................................... 27

    III.    HTA (Matter ID 00007)............................................................................................ 27

    IV.    Other Adversary Proceedings (Matter ID 00009).................................................... 28

    V.     Creditors Committee Meetings (Matter ID 00012) ............................................... 29

ATTENDANCE AT HEARINGS ............................................................................................ 29

REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND
COMMITTEE ....................................................................................................................... 30

ACTUAL AND NECESSARY DISBURSEMENTS ................................................................ 32

REQUESTED COMPENSATION SHOULD BE ALLOWED.................................................. 33

CONCLUSION ...................................................................................................................... 37

## SUPPORTING DECLARATION, EXHIBITS, AND SCHEDULES

SUPPORTING DECLARATION OF LUC A. DESPINS

| | |
|---|---|
| EXHIBIT A | CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES |
| EXHIBIT B | SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION |
| EXHIBIT C | BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD |
| EXHIBIT C-1 | BUDGETS |
| EXHIBIT C-2 | STAFFING PLANS |
| EXHIBIT D | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY |
| EXHIBIT D-1 | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY AS COMPARED TO BUDGET |
| | FURTHER BREAKDOWN OF COMPENSATION REQUESTED BY PROJECT CATEGORY AND BY MATTER |
| EXHIBIT D-2 | SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY |
| EXHIBIT E | BREAKDOWN OF COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED BY DEBTOR AND BY WHETHER SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE PUERTO RICO |
| SCHEDULE 1 | LIST OF PROFESSIONALS BY MATTER |
| SCHEDULE 2 | MONTHLY STATEMENTS COVERED IN APPLICATION |
| SCHEDULE 3 | PROPOSED ORDER |

To the Honorable United States District Judge Laura Taylor Swain:

Paul Hastings LLP ("Paul Hastings"), counsel to the Official Committee of Unsecured Creditors (the "Committee"),[1] for its fourteenth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA"),[2] section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by Paul Hastings for the period from October 1, 2021 through and including January 31, 2022 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, Paul Hastings continued to handle numerous matters that were of critical importance to the interests of the Debtors and their creditors.  Most importantly, during the Application Period, Paul Hastings continue to lead the Committee's efforts to protect the benefits secured for general unsecured creditors of the Commonwealth and ERS under the letter agreement, July 12, 2021, between the Committee and Oversight Board resolving the Committee's objections to the Plan (the "Plan Settlement"), which settlement was

---

[1]    Prior to August 25, 2017, the Committee was the official committee of unsecured creditors for the Commonwealth's Title III case only.  On August 25, 2017, the U.S. Trustee expanded the Committee's role to also include the Title III cases of HTA, ERS, and PREPA.

[2]    References to PROMESA are references to 48 U.S.C. §§ 2101 *et seq.*

1

incorporated into the Oversight Board's plan of adjustment for the Commonwealth, *et al.* (as amended, the "Plan").[3]

2.      Pursuant to the Plan Settlement, the Plan provides, among other things, an aggregate consideration to or for the benefit of allowed CW General Unsecured Claims and allowed Convenience Claims consisting of (a) cash in the amount of $575 million (subject to certain reductions)[4] and (b) the net recoveries from certain avoidance and recovery actions to be pursued by an avoidances actions trust (the "Avoidance Action Trust").  This represents an **increase of approximately $414 million (or more than 250%) in the aggregate cash consideration** compared to earlier versions of the plans of adjustment (which provided an aggregate cash consideration of approximately $161 million).[5]  Based on the Oversight Board's estimates, and subject to certain assumptions and conditions, the aggregate cash consideration to be made available under the Plan represents an effective recovery rate of approximately 20%.[6] Under the prior version of the Plan, the corresponding recovery percentage had been only 5.1%. Although the Plan Settlement is necessarily a compromise, it ensures far better recoveries for

---

[3]      Capitalized terms used but not defined herein have the meanings set forth in the Plan.

[4]      The $575 million cash consideration will be made available to fund (a) distributions to holders of allowed CW General Unsecured Claims and allowed Eminent Domain Claims, (b) up to $15 million to fund the Avoidance Action Trust (which will pursue avoidance actions and other recovery actions for the benefit of CW General Unsecured Claims and Eminent Domain Claims), (c) expenses for claims-related work by the Avoidance Action Trust Board, and (d) cash required to satisfy allowed Convenience Claims.  In addition, depending on the outcome of the Oversight Board's pending appeal of the confirmation order as it relates to the dischargeability of eminent domain claims, additional reductions will apply.

[5]      Under the earlier versions of the Plan, the aggregate cash consideration made available to or for the benefit of holders of allowed CW General Unsecured Claims, allowed Eminent Domain Claims, and allowed Convenience Claims consisted of (a) $125 million in cash distributions, (b) the Committee's estimate of approximately $26 million in distributions to Convenience Claims, and (c) $10 million of funding for the Avoidance Action Trust.

[6]      The estimated recovery percentage does not account for (a) net recoveries of the Avoidance Action Trust and (b) in the case of Eminent Domain Claims, distribution of monies on deposit with the Court of First Instance with respect to the condemned property.

general unsecured creditors than what had been offered under prior versions of the Plan, while

avoiding high risk and high expense litigation in opposition to the Plan.

3.       During the Application Period, Paul Hastings continued to represent the

Committee in connection with the plan confirmation process.  Among other things, Paul

Hastings (a) analyzed the Plan, the proposed confirmation order, and other related documents as

they were filed and/or amended over the course of the Application Period so as to ensure

compliance with the terms of the Plan Settlement, (b) addressed issues concerning the treatment

of general unsecured claims under the Plan with counsel to the Oversight Board, (c) prepared

reservations of rights related to the confirmation-related documents, (d) reviewed objections to

the Plan and settlements of such objections, (e) attended depositions related to other party's

challenges to confirmation of the Plan, (f) prepared for the effective date of the Plan, (g)

addressed numerous other issues arising during the confirmation process, and (h) attended the

confirmation hearings.  In addition, Paul Hastings spent considerable efforts to finalize the

Avoidance Actions Trust Agreement.  The Avoidance Actions Trust Agreement was a high

priority for the Committee given that the post-confirmation prosecution of avoidance actions on

behalf of general unsecured creditors was a key aspect of the Plan Settlement, and Paul Hastings'

work on the Avoidance Actions Trust Agreement would continue after the end of the Application

Period.  Moreover, in January 2022, Paul Hastings negotiated a settlement with the Oversight

Board that will minimize the dilutive impact on the recoveries of Commonwealth general

unsecured creditors in the event the Oversight Board successfully appeals the District Court's

ruling that eminent domain claims are non-dischargeable.

4.       Furthermore, following the conclusion of the confirmation hearings on the

Commonwealth Plan, Paul Hastings also focused its attention on the treatment of HTA general

unsecured creditors under a (yet-to-be-filed) HTA plan of adjustment.  Initially, this work

included a review and analysis of the plan support agreement with certain HTA bondholders and

monoline insurers as well as the HTA bond resolutions.  At the same time, Paul Hastings

engaged with the Oversight Board regarding a potential settlement regarding the treatment of

HTA general unsecured creditors under an HTA plan of adjustment.  Because the Oversight

Board did not make a settlement proposal during the Application Period—and given that, at the

time, it was anticipated that an HTA plan of adjustment would be filed by the end of January

2022—the Committee had no choice but to develop its own proposal, which was provided to the

Oversight Board on January 24, 2022.  In connection with preparing that proposal, Paul Hastings

undertook substantial legal research related to the Bankruptcy Code provisions addressing

special revenue bonds, including section 927 and 928 of the Bankruptcy Code.  At the same

time, this research was necessary for the Committee to analyze potential legal challenges to an

HTA plan of adjustment, in the event that settlement discussions with the Oversight Board would

not be fruitful.[7]  In fact, during and after the end of the Application Period, because the Oversight

Board had not responded to the Committee's proposal, Paul Hastings prepared a detailed

memorandum to the Committee setting forth Paul Hastings' legal analysis in this regard.

5.     All the while, Paul Hastings has continued to advise the Committee on all issues

bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to

protect their rights, including by:

> a.     reviewing information provided by the Oversight Board's
>         advisors regarding the ongoing claims reconciliation process;

---

[7]     As of the time of this Application, no settlement has been reached with the Oversight Board, but discussions are
ongoing.

b.     working with other Committee advisors and counsel to the
Special Claims Committee of the Oversight Board to oversee
the prosecution and settlement of avoidance actions;

c.     reviewing the Oversight Board's reports regarding the
designation and status of claims in connection with the
alternative dispute resolution ("ADR") process and
administrative claims reconciliation ("ACR") process;

d.     holding regular Committee meetings and communicating
regularly with Committee members regarding ongoing matters
in the Title III cases; and

e.     monitoring hearings, pleadings filed, and orders entered in the
Title III cases and related adversary proceedings (including,
where appropriate, filing objections), and representing the
Committee in hearings before the Court.

6.     Paul Hastings has continued to perform these services in an economic, effective,

and efficient manner commensurate with the complexity and importance of the issues involved.

For example, the work performed by Paul Hastings was carefully assigned to appropriate

professionals or paraprofessionals according to the experience and level of expertise required for

each particular task.  Moreover, whenever possible, Paul Hastings sought to minimize the costs

of Paul Hastings' services to the Committee by utilizing talented junior attorneys and

paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the

extent practicable, questions of Puerto Rico law to local counsel.

7.     In addition, a small core group of Paul Hastings attorneys was utilized for the vast

majority of the work in these Title III cases to minimize the costs of intra-Paul Hastings

communication and education about the cases.  Notably, unless additional attorneys had specific

reasons to attend, only two Paul Hastings attorneys telephonically attended the various hearings

held during the Application Period, thereby minimizing not only the time billed on these

hearings but also the cost of travel and lodging.  This is to be contrasted with other firms that have several partners attending such hearings.

8.      Moreover, to the extent appropriate, Paul Hastings sought to work closely with counsel to the Oversight Board, counsel to the Oversight Board's Special Claims Committee (the "Special Claims Committee"), counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and counsel for the official committee of retirees (the "Retiree Committee") in order to eliminate unnecessary duplication and allocate tasks in an efficient manner.  For example, with limited exceptions, the Committee did not become involved in addressing stay relief requests and, instead, deferred these matters to representatives of the Debtors.  In addition, to the extent appropriate, the Committee joined in the relief sought by other parties (as opposed to incurring the cost of preparing its own standalone motions) or concluded that no pleading was necessary at all.  The Committee has also continued to be very judicious in determining in which adversary proceedings to intervene, despite the First Circuit's ruling affirming the Committee's unconditional right to intervene in adversary proceedings.[8]

9.      Finally, we note that the blended attorney hourly rate ($914 after the 20% reduction) for the Application Period is not comparable to the average hourly rate of other professionals in these Title III cases.  Importantly, the Firm's blended attorney hourly rate does not reflect the numerous cost-saving measures that were put in place, including deferring a variety of matters to the Committee's local counsel, Casillas, Santiago & Torres LLC ("CST"), and the Committee's special litigation counsel, Genovese, Joblove & Battista, P.A.

---

[8]      Paul Hastings has agreed to reduce its total fees by an amount equal to 20% of the firm's case fees (with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process).  For the avoidance of doubt, at this time, Paul Hastings seeks allowance of $1,504,585.00 (*i.e.*, 100% of fees for services rendered during the Application Period), but payment of fees in the amount of $1,203,668.00 (to the extent such amount has not been paid before the hearing scheduled on this Application).

("Genovese"),[9] which have significantly lower rates than Paul Hastings.  For example, Paul

Hastings determined (with Committee approval) that all garden-variety avoidance actions should

be handled by CST.  Moreover, certain other adversary proceedings (such as the complaint

against certain PREPA fuel suppliers) are being handled by Genovese, even where Paul Hastings

does not have a conflict.  If it were not for these cost-saving measures, Paul Hastings would have

used more junior attorneys for these tasks, which would have materially reduced the blended

attorney hourly rate for the Application Period.  Furthermore, Paul Hastings submits that

concentrating work in small teams (that naturally involve more senior attorneys at higher rates) is

more cost-efficient than spreading work out across large teams with numerous junior attorneys

(which would have the effect of artificially lowering the blended hourly rate).  By comparison,

on average, the Paul Hastings core teams are half the size of other firms' core teams.

10.     In sum, Paul Hastings respectfully submits that the services for which it seeks

compensation in this Application were necessary for and beneficial to the Committee, the

Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value

for unsecured creditors during the pendency of these Title III cases.  The results obtained to date

have benefited not only the Committee but also the Debtors and their creditors.  Accordingly, in

light of the nature and complexity of these Title III cases, Paul Hastings' charges for professional

services performed and expenses incurred are reasonable under applicable standards.  For all

these reasons, Paul Hastings respectfully requests that the Court grant the Application and allow

---

[9]   After the conclusion of the Application Period, three former Genovese lawyers who had been primarily
responsible for the representation of the Committee as special litigation counsel joined the firm of Continental
PLLC ("Continental"), and the Committee approved Continental's substitution for Genovese, effective as of
February 14, 2022, all as detailed in the Continental retention application, dated February 28, 2022 [Docket No.
20222].

7

interim compensation for professional services performed and reimbursement for expenses as requested.

11.  This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").[10]  To the extent necessary, Paul Hastings requests a waiver for cause shown of any requirements not met by this Application.

12.  In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of Paul Hastings' timekeepers included in this Application.

- Exhibit C-1 contains the budgets for Paul Hastings' services during the Application Period.

- Exhibit C-2 contains the staffing plans for Paul Hastings' services during the Application Period.

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expense reimbursements requested by category.  An itemized schedule of all such expenses is included in Paul Hastings' monthly statements.

---

[10]  The Committee and Paul Hastings reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit E</u> contains a breakdown of compensation and expense reimbursement requested by Debtor and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

- <u>Schedule 1</u> contains a list of the professionals providing services during the Application Period by matter.

- <u>Schedule 2</u> includes the monthly fee statements covered in this Application.

- <u>Schedule 3</u> includes the proposed order approving this Application.

## **BACKGROUND**

13.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA (the "<u>Commonwealth Title III Case</u>").  Thereafter, the Oversight Board commenced a Title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority (the "<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority (the "<u>PREPA Title III Case</u>," and, together with the Commonwealth Title III Case, the ERS Title III Case, and the HTA Title III Case, the "<u>Title III Cases</u>").[11]  By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

14.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "<u>U.S. Trustee</u>") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338].  On June 26, 2017, the Committee selected Paul Hastings as counsel to the Committee.

---

[11]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

15.     On July 10, 2017, the Committee filed an application to retain and employ Paul
Hastings as counsel, effective June 26, 2017 [Docket No. 610] (the "Retention Application").
By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"),
incorporated herein by this reference, Paul Hastings' retention as counsel to the Committee was
approved effective as of June 26, 2017.

16.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim
Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim
Compensation Order").[12]

17.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of
Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the
Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and
the PREPA Title III Case.  Paul Hastings' retention extends to the representation of the
Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the
PREPA Title III Case.  In particular, the Retention Order provided that "[t]he retention of Paul
Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the
Committee if ever enlarged to include unsecured creditors of other debtors, without the need to
obtain a modification of this Order."

18.     The Retention Order authorized Paul Hastings to be compensated on an hourly
basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316
and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court

---

[12]   The Interim Compensation Order was most recently amended on June 6, 2018.

may direct.[13]  The Retention Order further provides that "[p]ursuant to Bankruptcy Code

section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Paul

Hastings under this Order shall be an administrative expense."  In addition, as provided in the

Retention Order, the Oversight Board has consented to the Debtors' payment of Paul Hastings'

allowed fees and expenses.

19.     Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total

case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul

Hastings (in its sole discretion) in connection with the final fee application process.  For that

reason, at this time Paul Hastings seeks payment of only 80% of its fees incurred during the

Application Period, but allowance of 100% of such fees.  Paul Hastings agreed to this reduction

in reliance on the fact that the timing of the payment of Paul Hastings' fees and expenses would

be governed by Court orders which contained strict procedures and deadlines, and that such

order would be complied with.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA*

*Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

*Related Relief* [Docket No. 1416] (the "Fee Examiner Order").  The Court appointed Brady

Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, Paul Hastings filed its first interim fee application with

respect to the period from June 26, 2017 through September 30, 2017 [Docket No. 2040] (the

"First Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the First Interim

---

[13]   Paragraph 2 of the Retention Order provides, among other things, that "Paul Hastings will charge its regular
hourly rates in effected from time to time; as such rates may be increased periodically, annually or otherwise."

Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[14]  On March 7, 2018, the Court approved the First Interim Fee Application, with the agreed-upon adjustments.

22.     On March 19, 2018, Paul Hastings filed its second interim fee application with respect to the period from October 1, 2017 through January 31, 2018 [Docket No. 2735] (the "Second Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[15]  On June 8, 2018, the Court approved the Second Interim Fee Application, with the agreed-upon adjustments.

23.     On July 16, 2018, Paul Hastings filed its third interim fee application with respect to the period from February 1, 2018 through May 31, 2018 [Docket No. 3568] (the "Third Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[16]  On March 14, 2019, the Court approved the Third Interim Fee Application, with the agreed-upon adjustments.

---

[14]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $67,259.01 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $13,507.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $21,926.16 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[15]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $103,943.50 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $1,385.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $12,722.50 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[16]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $125,338.14 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee

24.     On November 16, 2018, Paul Hastings filed its fourth interim fee application with respect to the period from June 1, 2018 through September 30, 2018 [Docket No. 4325] (the "Fourth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[17]  On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

25.     On March 18, 2019, Paul Hastings filed its fifth interim fee application with respect to the period from October 1, 2018 through January 31, 2019 [Docket No. 5822] (the "Fifth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[18]  On July 23, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

26.     On July 15, 2019, Paul Hastings filed its sixth interim fee application with respect to the period from February 1, 2019 through May 31, 2019 [Docket No. 8004] (the "Sixth

---

application, (b) additional fee reductions in the amount of $99,589.74 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $3,737.20 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[17]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $69,137.26 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $58,539.27 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $2,296.62 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[18]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $106,895.16 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $88,842.17 (which amount was credited against Paul Hastings' June 2019 fee statement), and (c) expense reductions in the amount of $606.96 (which amount also was credited against Paul Hastings' September 2019 fee statement).

Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings

received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee

Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its

requested fees and expenses.[19] On January 2, 2020, the Court approved the Sixth Interim Fee

Application, with the agreed-upon adjustments.

27. On November 15, 2019, Paul Hastings filed its seventh interim fee application

with respect to the period from June 1, 2019 through September 30, 2019 [Docket No. 9219] (the

"Seventh Interim Fee Application"). In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the Seventh

Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain

adjustments in its requested fees and expenses.[20] On April 17, 2020, the Court approved the

Seventh Interim Fee Application, with the agreed-upon adjustments.

28. On March 16, 2020, Paul Hastings filed its eighth interim fee application with

respect to the period from October 1, 2019 through January 31, 2020 [Docket No. 12395] (the

"Eighth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the Eighth Interim

Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

---

[19] These agreed-upon adjustments consisted of (a) fee reductions in the amount of $196,179.84 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $145,627.04 (which amount was credited against Paul Hastings' December 2019 fee statement), and (c) expense reductions in the amount of $227.93 (which amount also was credited against Paul Hastings' December 2019 fee statement).

[20] These agreed-upon adjustments consisted of (a) fee reductions in the amount of $119,416.43 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $99,027.94 (which amount was credited against Paul Hastings' June 2020 fee statement), and (c) expense reductions in the amount of $548.31 (which amount also will be credited against Paul Hastings' June 2020 fee statement). In addition, Paul Hastings and the fee examiner agreed to provisionally defer (a) $111,572.00 in Paul Hastings' fees related to the expert report prepared by London Economics International, LLC ("LEI") and (b) $515,438.58 in expenses related to the expert report prepared by LEI.

its requested fees and expenses.[21]  On July 24, 2020, the Court approved the Eighth Interim Fee

Application, with the agreed-upon adjustments.

29.    On July 15, 2020, Paul Hastings filed its ninth interim fee application with respect

to the period from February 1, 2020 through May 31, 2020 [Docket No. 13682] (the "Ninth

Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings

received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee

Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its

requested fees and expenses.[22]  On December 7, 2020, the Court approved the Ninth Interim Fee

Application, with the agreed-upon adjustments.

30.    On November 16, 2020, Paul Hastings filed its tenth interim fee application with

respect to the period from June 1, 2020 through September 30, 2020 [Docket No. 15160] (the

"Tenth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the Tenth Interim

Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

its requested fees and expenses.[23]  On April 27, 2021, the Court approved the Tenth Interim Fee

Application, with the agreed-upon adjustments.

---

[21]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $73,920.04 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $73,343.54 (which amount was credited against Paul
Hastings' June 2020 fee statement), and (c) expense reductions in the amount of $99.18 (which amount also
was credited against Paul Hastings' June 2020 fee statement).

[22]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $76,609.82 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $78,764.83 (which amount were credited against Paul
Hastings' February 2021 fee statement).

[23]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $33,281.45 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $162,080.45 (which amount was credited against Paul
Hastings' March 2021 fee statement), and (c) expense reductions in the amount of $170.77 (which amount also
was credited against Paul Hastings' March 2021 fee statement).

31.     On March 15, 2021, Paul Hastings filed its eleventh interim fee application with
respect to the period from October 1, 2020 through January 31, 2021 [Docket No. 16067] (the
"Eleventh Interim Fee Application").  In accordance with the Interim Compensation Order, Paul
Hastings received a preliminary report from the Fee Examiner with respect to the Eleventh
Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain
adjustments in its requested fees and expenses.[24]  On August 3, 2021, the Court approved the
Eleventh Interim Fee Application, with the agreed-upon adjustments.

32.     On July 15, 2021, Paul Hastings filed its twelfth interim fee application with
respect to the period from February 1, 2021 through May 31, 2021 [Docket No. 17380] (the
"Twelfth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul
Hastings received a preliminary report from the Fee Examiner with respect to the Twelfth
Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain
adjustments in its requested fees and expenses.[25]  On December 13, 2021, the Court approved the
Twelfth Interim Fee Application, with the agreed-upon adjustments.

33.     On November 15, 2021, Paul Hastings filed its thirteenth interim fee application
with respect to the period from June 1, 2021 through September 30, 2021 [Docket No. 19238]
(the "Thirteenth Interim Fee Application").  In accordance with the Interim Compensation Order,
Paul Hastings received a preliminary report from the Fee Examiner with respect to the Thirteenth

---

[24]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $34,557.53 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application and (b) additional fee reductions in the amount of $192,268.03 (which amount was credited against
Paul Hastings' June 2021 fee statement).

[25]   These agreed-upon adjustments consist of (a) fee reductions in the amount of $18,011.28 to be included within
the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application,
(b) additional fee reductions in the amount of $36,526.28 (which amount will be credited against Paul Hastings'
February 2022 fee statement) and (c) expense reductions in the amount of $200.00 (which amount also will be
credited against Paul Hastings' February 2022 fee statement).

Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[26]

34.     On January 19, 2022, the Court entered an order [Docket No. 19813] confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "Plan").  The effective date of the Plan is expected to occur on March 15, 2022.

## COMPENSATION AND REIMBURSEMENT REQUEST

35.     By this Application, Paul Hastings seeks allowance of compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $1,504,585.00[27] and expense reimbursements in the aggregate amount of $16,532.01. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

---

[26]   These agreed-upon adjustments consist of (a) fee reductions in the amount of $19,911.84 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application and (b) additional fee reductions in the amount of $20,123.34 (which amount will be credited against Paul Hastings' February 2022 fee statement).

[27]   As noted, Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  Accordingly, the firm only seeks payment, at this time, of fees in the amount of $1,203,668.00 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of 1,504,585.00.

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $1,154,707.00 | $13,518.05 | $1,168,225.05 |
| HTA Title III Case | $328,442.00 | $2,913.96 | $331,355.96 |
| ERS Title III Case | $0.00 | $0.00 | $0.00 |
| PREPA Title III Case | $21,436.00 | $0.00 | $21,436.00 |
| **Total** | **$1,504,585.00** | **$16,532.01** | **$1,521,117.01** |

36.     The Committee has approved the amounts requested by Paul Hastings for services performed and expenses incurred in each of the monthly statements submitted to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee during the Application Period.  All services for which compensation is requested herein were performed for or on behalf of the Committee.

37.     As detailed on Exhibit D hereto, the aggregate amount of fees incurred by Paul Hastings during the Application Period were $176,197.00 (or $140,957.60 after adjusting to reflect, on a *pro forma* basis, the 20% end-of-case reduction) above the fees budgeted for the Application Period.  This discrepancy is almost entirely the result of Paul Hastings having to spend more hours than anticipated on Task Code B320 (*i.e.*, plan and disclosure statement), including (a) having to address changes to the Commonwealth plan of adjustment related to the treatment of general unsecured creditors that could not have been anticipated at the time the budgets were prepared (b) having to undertake research (and prepare a related client memorandum) regarding various issues related to confirmation of an HTA plan of adjustment (which research was necessary to formulate, at the request of the Oversight Board, the Committee's proposal regarding the treatment of HTA general unsecured creditors).  Paul Hastings also notes that this is the first time in these Title III cases that its fees for a given application period have been above the fees budgeted.

38.     To date, Paul Hastings has received payments totaling $1,220,200.01 for services
rendered during the Application Period, which amount consists of (a) $1,203,668.00
(representing 80% of the fees for services invoiced during the period from October 1, 2021
through January 31, 2022) and (b) $16,532.01 (representing 100% of expenses invoiced for the
same period).  As of the date of this Application, no amounts remain unpaid with respect to the
Application Period.

39.     Other than payments made in accordance with the Interim Compensation Order,
Paul Hastings has received no payment and no promises of payment from any source for services
rendered during the Application Period.  By this Application, Paul Hastings requests allowance
of all fees and expenses incurred for services rendered during the Application Period.  At this
time, however, Paul Hastings seeks payment of only (a) 80% of the fees for services invoiced
during the Application Period and (b) 100% of expenses invoiced during the Application Period.

40.     In addition, as a courtesy to the Committee and based on circumstances unique to
the Title III Cases, during the Application Period Paul Hastings voluntarily waived fees totaling
$19,780.00.  The time billed by these timekeepers was reasonable, and Paul Hastings reserves
the right to seek allowance and payment of these fees based on the facts and circumstances of
these cases, including, without limitation, if objections are interposed to the allowance or
payment of Paul Hastings' fees and expenses.  Additionally, Paul Hastings did not increase the
hourly rates of timekeepers working on the Puerto Rico matter as of June 1, 2021 and January 1,
2022 and, instead, maintained the pre-June 1, 2021 rates for the Application Period (even though
hourly rates increased on a firm-wide basis as of June 1, 2021 and January 1, 2022).  This
translates into an additional $22,425.00 in fees that Paul Hastings voluntarily agreed to forgo.
Paul Hastings also voluntarily waived expenses totaling $198.59 as a courtesy to the Committee

during the Application Period.  For details regarding the waived fees and expenses, please see
the Declaration of Luc A. Despins filed concurrently herewith.

41.     There is no agreement or understanding between Paul Hastings and any other
person other than the attorneys, employees, and staff of Paul Hastings, for the sharing of
compensation to be received for services rendered in these cases.

42.     Paul Hastings maintains computerized records, in the form of monthly statements,
of the time spent by all Paul Hastings' attorneys and paraprofessionals in connection with its
representation of the Committee.  The monthly statements are in the same form regularly used by
Paul Hastings to bill its clients for services rendered and include the date that the services were
rendered, a detailed, contemporaneous narrative description of the services provided, the amount
of time spent for each service, and the designation of the professional who performed the service.

43.     The fees charged by Paul Hastings in the Title III Cases are billed in accordance
with its existing billing rates and procedures in effect during the Application Period with certain
exceptions.  As a courtesy to the Committee and based on circumstances unique to the Title III
Cases, Paul Hastings agreed to continue to charge reduced rates for the services of the following
attorneys during the Application Period (in each case, adjusted to reflect, on a *pro forma* basis,
the 20% end-of-case reduction):

| Attorney | Standard 2021 Rate (adjusted to reflect 20% end-of-case reduction)[28] | Reduced 2021 Rate (adjusted to reflect 20% end-of-case reduction) |
|---|---|---|
| Luc A. Despins | $1,360 | $1,280 |

Subject to the foregoing exceptions, the rates Paul Hastings charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates Paul Hastings charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Moreover, when Paul Hastings' restructuring professionals and paraprofessionals work on nonbankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

44.     Paul Hastings' rates are set at a level designed to fairly compensate Paul Hastings for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses. Paul Hastings operates in a complicated national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, Paul Hastings set its rates for attorneys and paraprofessionals both in the restructuring group and other practice groups within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and reviews of contemporaneous time records and fee applications filed in other cases, Paul Hastings endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

---

[28]   For purposes of this table, the Standard 2021 Rate is the pre-June 1, 2021 rate, *i.e.*, prior to the firm-wide rate increases on June 1, 2021 and January 1, 2022. As noted above, Paul Hastings did <u>not</u> implement these rate increases in the Title III Cases.

45.     Paul Hastings' professional services during the Application Period required an aggregate expenditure of 1,444.60 recorded hours by Paul Hastings' attorneys and paraprofessionals, broken down as follows: partners (347.80 hours), counsel (363.70 hours), associates (550.50 hours), and paraprofessionals (182.60 hours).  During the Application Period, Paul Hastings' billing rates for attorneys rendering services in this matter ranged from $700.00 to $1,600 per hour (before the application of any fee reductions).

46.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or Paul Hastings has for any other reason not sought compensation or reimbursement with respect to such services or expenses, Paul Hastings reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

47.     During the Application Period, Paul Hastings assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties.  In addition, Paul Hastings has prepared various motions, applications, orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as Schedule 2.[29]  For ease of reference and transparency purposes, Paul Hastings created

---

[29]     The description of services in this Application is limited to those matters in which Paul Hastings provided five (5) or more hours of service during the Application Period.

several matter numbers for its representation of the Committee.  The matter numbers are divided

by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
| --- | --- |
| 00002 | Official Committee of Unsecured Creditors |
| 00004 | Communications with Creditors (other than Committee Members) |
| 00006 | PREPA |
| 00007 | HTA |
| 00009 | Other Adversary Proceedings |
| 00012 | Creditors' Committee Meetings |

## I.   Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002)

(a)   Case Administration (Task Code B110)
Fees:  $19,319.50      Total Hours:  34.70

48.      During the Application Period, Paul Hastings continued to advise the Committee

on general case administration.  In order to efficiently track deadlines, organize documents, and

manage work streams, Paul Hastings maintained a global task list and case calendar.  Further,

Paul Hastings coordinated internally and with the Committee's financial advisor, Zolfo Cooper

LLP ("Zolfo Cooper") regarding Committee communications, case strategy, and work streams.

Paul Hastings also communicated with certain Committee members and others in connection

with the administration of the Title III Cases.

49.      Furthermore, Paul Hastings undertook a variety of other tasks related to case

administration, such as handling administrative matters in connection with the filing and service

of pleadings.

(b)    Pleadings Review (Task Code B113)
        Fees:  $18,597.00          Total Hours:   44.50

50.    During the Application Period, Paul Hastings continued to review and prepare

summaries of pleadings filed and orders entered in the Title III Cases for internal review and

review by the Committee.

(c)    Meetings of and Communications with Creditors (Task Code B150)
        Fees:  $207,786.50         Total Hours:   253.80

51.    During the Application Period, Paul Hastings continued to prepare reports and

summaries to keep the Committee apprised of relevant developments in the Title III Cases and

related adversary proceedings.[30]

(d)    Court Hearings (Task Code B155)
        Fees:  $187,680.50         Total Hours:   138.10

52.    During the Application Period, Paul Hastings attended, (a) the October 6, 2021

omnibus hearing, at which hearing Paul Hastings observed the proceedings but did not address

the Court, (b) the October 25, 2021 status conference with respect to the confirmation hearings,

at which hearing Paul Hastings observed the proceedings but did not address the Court, (c) the

October 28, 2021 hearing on the DRA Parties' motion to compel discovery in connection with

the confirmation hearings, at which hearing Paul Hastings observed the proceedings but did not

address the Court, (d) the November 1, 2021 status conference with respect to the confirmation

hearings, at which hearing Paul Hastings addressed the Court regarding the Plan and related

matters, (e) the confirmation hearings on November 8, 9, 10, 12, 15, 17, 22, and 23, 2021, at

which Paul Hastings addressed the Court regarding the Plan and related matters, (f) the

December 15, 2021 omnibus hearing, at which hearing Paul Hastings observed the proceedings

---

[30]    Meetings and calls with the Committee were recorded separately under Matter ID 00012 (Creditors' Committee
Meetings).

but did not address the Court, and (g) the January 19 and 20, 2022 hearings on omnibus claims objections, at which Paul Hastings observed the proceedings but not address the Court.

53.    In preparation for these hearings, Paul Hastings also reviewed relevant issues raised in the parties' pleadings, prepared materials for the hearings, and filed the requisite informative motions to be heard.  In addition, Paul Hastings observed the Oversight Board's public meeting on January 27, 2022.[31]

(e)    Fee/Employment Applications (Paul Hastings) (Task Code B160)
Fees:   $131,894.00        Total Hours:   169.90

54.    During the Application Period, Paul Hastings prepared, among other things, five monthly fee statements for services provided in the months of August 2021 through December 2021, the Thirteenth Interim Fee Application, and portions of this Application.  In addition, Paul Hastings continued to identify possible connections between the firm and parties in interest in the Title III Cases and prepared portions of a supplemental declaration of Luc A. Despins regarding the firm's retention as Committee counsel.  Paul Hastings also reviewed reports and correspondence from the Fee Examiner and engaged in discussions with the Fee Examiner and his counsel to address questions regarding Paul Hastings' interim fee applications.

(f)    Fee/Employment Applications for Other Professionals (Task Code B165)
Fees: $7,146.00        Total Hours: 9.70

55.    During the Application Period, Paul Hastings assisted the Committee's other professionals, including the Committee financial advisor, Zolfo Cooper, and the Committee's communications advisor, Kroma Advertising, Inc. ("Kroma"), with their fee applications.  Paul Hastings also handled other matters related to the employment of professionals, including updating the parties in interest list.

---

[31]    Monitoring of Oversight Board public meeting in December 17, 2021 was recorded separately under Task Code B150 (Meetings of and Communications with Creditors).

    (g)    <u>Claims Administration and Objections (Task Code B310)</u>
           Fees:   $5,297.00         Total Hours:   11.20

56.     During the Application Period, Paul Hastings continued to review and track claim objections filed by the Oversight Board (as well as responses thereto).  In that regard, Paul Hastings also reviewed the Oversight Board's filings related to the designation of claims for the ADR process and the ACR process, as well as the administrative expense claims filed by certain creditors during the Application Period.

57.     In addition, Paul Hastings undertook a number of other tasks related to the resolution of claims against the Commonwealth.  In particular, Paul Hastings developed the Committee's strategy in response to Ambac Assurance Corporation's objection to the proof of claim filed by the Retiree Committee and prepared the Committee's statement in response to Ambac's scheduling motion with respect thereto.  Paul Hastings also continued to represent the Committee in connection with the Revenue Bond Litigation (prior to be being stayed) during the Application Period, participating in discovery related to same.

    (h)    <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
           Fees: $445,564.50      Total Hours:   359.40

58.     After the Committee's entry in to the Plan Settlement on July 12, 2021, Paul Hastings continued to represent the Committee in connection with the confirmation process, including (a) analyzing the Plan, the proposed confirmation order, and other related documents as they were filed and/or amended over the course of the Application Period so as to ensure compliance with the terms of the Plan Settlement, (b) addressing issues concerning the treatment of general unsecured claims under the Plan with counsel to the Oversight Board, (c) preparing reservations of rights related to the confirmation-related documents, (d) reviewing objections to the Plan and settlements of such objections, (e) attending depositions related to other party's challenges to confirmation of the Plan, (f) preparing for the effective date of the Plan, and (g)

addressing numerous other issues arising during the confirmation process.  One area of particular

focus for Paul Hastings was its work regarding the Avoidance Actions Trust Agreement and

issues related to the prosecution of avoidance actions and oversight of the claims reconciliation

process post-confirmation.  Moreover, in January 2022, Paul Hastings negotiated a settlement

with the Oversight Board that will minimize the dilutive impact on the recoveries of general

unsecured creditors in the event the Oversight Board successfully appeals the District Court's

ruling that eminent domain claims are non-dischargeable.

**II.      PREPA (Matter ID 00006)**

(a)      <u>Restructuring (Task Code B420)</u>
Fees:   $6,984.00          Total Hours: 6.20

59.      During the Application Period, Paul Hastings continued to represent the

Committee in connection with the PREPA restructuring support agreement, including by

preparing the Committee's responses to the PREPA status report filed in October 2021 and

January 2022.

**III.     HTA (Matter ID 00007)**

(b)      <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
Fees:   $328,142.50          Total Hours: 296.20

60.      Following the conclusion of the confirmation hearings on the Commonwealth

Plan, Paul Hastings also focused its attention on the treatment of HTA general unsecured

creditors under a (yet-to-be-filed) HTA plan of adjustment.  Initially, this work included a review

and analysis of the plan support agreement with certain HTA bondholders and monoline insurers

as well as the HTA bond resolutions.  At the same time, Paul Hastings also engaged with the

Oversight Board regarding a potential settlement regarding the treatment of HTA general

unsecured creditors under an HTA plan of adjustment.  Because the Oversight Board did not

make a settlement proposal during the Application Period—and given that, at the time, it was

anticipated that an HTA plan of adjustment would be filed by the end of January 2022—the
Committee had no choice but to develop its own proposal, which was provided to the Oversight
Board on January 24, 2022. In connection with preparing that proposal, Paul Hastings undertook
substantial legal research related to the Bankruptcy Code provisions addressing special revenue
bonds, including section 927 and 928 of the Bankruptcy Code. At the same time, this research
was necessary for the Committee to analyze potential legal challenges to an HTA plan of
adjustment, in the event that settlement discussions with the Oversight Board would not be
fruitful.[32] In fact, during and after the end of the Application Period, because the Oversight
Board had not responded to the Committee's proposal, Paul Hastings prepared a detailed
memorandum to the Committee setting forth Paul Hastings' legal analysis in this regard.

## IV.   Other Adversary Proceedings (Matter ID 00009)[33]

    (a)   <u>General Litigation (Task Code B191)</u>
        Fees:   $59,540.50        Total Hours:   45.30

    61.     During the Application Period, Paul Hastings continued to oversee the
Committee's approach to the prosecution of avoidance actions and the potential settlement of
certain such actions. As part of this effort, Paul Hastings worked closely with the Committee's
other advisors (as well as counsel to the Special Claims Committee of the Oversight Board) to
analyze avoidance action issues, comment on and revise certain pleadings, participate in
settlement discussions, review proposed settlement recommendations, and advise the Committee
regarding same.

---

[32]   As of the time of this Application, no settlement has been reached with the Oversight Board, but discussions are ongoing.

[33]   To the extent practicable, Paul Hastings tracked work in respect of PREPA-related adversary proceedings under Matter ID 00006, HTA-related adversary proceedings under Matter ID 00007, and ERS-related adversary proceedings under Matter ID 00008.

62.     In addition, Paul Hastings continued to monitor other adversary proceedings pending in these Title III cases, including the adversary proceeding by certain Cooperativas and their appeal of the order dismissing that adversary proceeding.

## V.     Creditors Committee Meetings (Matter ID 00012)

(a)     Meetings of and Communications with Creditors (Task Code B150)
Fees:   $62,205.00          Total Hours:   52.10

63.     During the Application Period, Paul Hastings continued to hold regular telephonic conferences with the Committee to provide the Committee with updates on the progress of the Title III Cases as well as to discuss case strategy and next steps.  In preparation for these telephonic conferences, Paul Hastings (a) reviewed relevant pleadings filed in the Title III Cases and related adversary proceedings, (b) prepared presentations for these meetings, and (c) prepared proposed agenda letters for the Committee's consideration.

## ATTENDANCE AT HEARINGS

64.     In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion* to *Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Docket No. 3932] (the "Presumptive Standards Order"), Paul Hastings provides the following summary regarding the attendance of Paul Hastings professionals at Court hearings:[34]

- October 6, 2021:  The October 6, 2021 omnibus hearing, which was held remotely, was attended telephonically by Mr. Despins.

- The October 25, 2021:  The October 25, 2021 status conference with respect to the confirmation hearing, which was held remotely, was attended telephonically by Mr. Despins and M. Bongartz.  In addition, Mr. Bassett also attended a portion of the hearing, which Paul Hastings submits was reasonable given Mr.

---

[34]   Among other things, the Presumptive Standards Order provides that "[f]or attendance at hearings in which a professional anticipates a speaking role, fees and expenses incurred for attendance by timekeepers other than those with meaningful speaking roles (plus one additional timekeeper per speaker) are not compensable."

Bassett's substantial involvement on certain key litigation issues related to the Plan and its implementation, including the avoidance action trust agreement and the transfer of avoidance actions to the avoidance action trust for the benefit of the Commonwealth's general unsecured creditors.

- October 28, 2021:  The October 28, 2021 hearing on the DRA Parties' motion to compel discovery, which hearing was held remotely, was attended telephonically by Mr. Bassett.

- November 1, 2021: The November 1, 2021 status conference with respect to the confirmation hearing, which was held remotely, was attended telephonically by Mr. Despins and Mr. Bongartz (who attended only a portion of this hearing).  In addition, Mr. Bassett also attended a portion of the hearing, which Paul Hastings submits was reasonable given Mr. Bassett's substantial involvement on certain key litigation issues related to the Plan and its implementation.

- November 8, 9, 10, 12, 15, 17, 22, and 23, 2021: The confirmation hearings, which were held remotely, were attended telephonically by Mr. Despins (speaking role) and Mr. Bongartz (who attended only portions of these hearing). In addition, Mr. Bassett also attended portions of the confirmation hearings, which Paul Hastings submits was reasonable given Mr. Bassett's substantial involvement on certain key litigation issues related to the Plan and its implementation.

- December 15, 2021:  The December 15, 2021 omnibus hearing, which was held remotely, was attended telephonically by Mr. Despins and Mr. Bongartz.

- January 19-20, 2022:  The January 19-20, 2022 hearings on omnibus claims objections, which were held remotely, were attended telephonically by Mr. Bongartz.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

65.     As requested by the Fee Examiner, we set forth below the status of the various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for the joint prosecution of causes of action or claims objections.

- GO Bond Claim Objections: Pursuant to the Court's stay order dated March 10, 2020 [Docket No. 12189] (the "Final Stay Order"), the GO Bond Claim Objection

remains stayed pending the effective date of the Plan, at which time the GO Bond
Claim Objections will be deemed resolved in accordance with the Plan.

- <u>Adversary Proceeding Against Underwriters, etc.</u>:  Continental, the Committee's
  special litigation counsel, represents the Committee with respect to the adversary
  proceeding against various underwriters and other parties involved in the issuance
  of Commonwealth bonds [Adv. Proc. No. 19-280].  Paul Hastings has no
  involvement in this adversary proceeding.  Moreover, pursuant to the Final Stay
  Order, the underwriter litigation is stayed the effective date of the Plan.

- <u>Garden-Variety Avoidance Actions</u>:  CST, the Committee's local counsel,
  represents the Committee with respect to the "garden-variety" avoidance actions
  [Adv. Proc. Nos. 19-041 to 19-279, and Adv. Proc. Nos. 19-347 to 19-354].  Paul
  Hastings' involvement in these avoidance actions is limited to reviewing and
  commenting on draft forms of pleadings or "case management" pleadings, and
  providing high-level oversight and direction with respect to these adversary
  proceedings.[35]

- <u>Other Stayed Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay
  Order, the following co-plaintiff adversary proceedings are stayed pending the
  effective date of the Plan, at which point these adversary proceedings will be
  dismissed:

  - Eight adversary proceedings seeking to recover fraudulent transfers made
    on account of GO bonds that were not validly issued [Adv. Proc. No. 19-
    281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-
    284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-
    287, and Adv. Proc. No. 19-288]; and

  - Seven adversary proceedings challenging liens asserted by certain holders
    of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc.
    No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc.
    No. 19-296, and Adv. Proc. No. 19-297].

- <u>HTA-Related Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay
  Order, the following co-plaintiff adversary proceedings are stayed pending an
  order of the Court lifting the stay or confirmation of a plan of adjustment for
  HTA:

---

[35]   We also note that, on July 12, 2019, the Court approved certain procedures establishing a framework for
streamlined execution of settlement agreements and procedures and guidelines for resolving the avoidance
actions through a voluntary mediation process.

      o  Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

- <u>ERS-Related Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Court's stay order dated April 12, 2021 [Docket No. 16385] (the "<u>ERS Stay Order</u>"), the following co-plaintiff adversary proceedings are stayed pending the effective date of the Plan, at which point these adversary proceedings will be dismissed:

      o  Six adversary proceeding related to ERS bond issues [Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-359, Adv. Proc. No. 19-361, Adv. Proc. No. 19-366, and Adv. Proc. No. 19-367].

- <u>Currently Stayed HTA Revenue Bond Co-Plaintiff Adversary Proceeding</u>: Pursuant to the Court's *Final Case Management Order for Revenue Bonds* [Docket No. 12186], Adv. Proc. No. 20-007 is currently stayed.

66.    The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of <u>Exhibit C-1</u> and <u>Exhibit C-2</u> hereto, respectively.  As shown on <u>Exhibit D-1</u>, actual hours incurred on the above matters were well below budget.

## **ACTUAL AND NECESSARY DISBURSEMENTS**

67.    As set forth in <u>Exhibit D-2</u> hereto, Paul Hastings disbursed $16,532.01 as expenses incurred in providing professional services during the Application Period.  This amount includes $0.00 in expenses payable to Trustpoint International, LLC, which provided e-discovery services, including maintaining a database of discovery documents that were critical to Paul Hastings' discovery tasks in connection with the litigation related to the PREPA RSA Motion.

68.    Paul Hastings also disbursed additional amounts in connection with other minor expenses such as the translation of documents and the use of CourtSolutions.

69.    Further, because Paul Hastings believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes,

Paul Hastings encourages computerized legal research even though it is not a profit center for Paul Hastings.

70.     The time constraints imposed by the circumstances of the matters handled by Paul Hastings during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee.  These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis, and satisfy the Committee's needs and demands.  Attorneys and other Paul Hastings employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy.  Paul Hastings' regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

71.     Further, Paul Hastings believes the rates for charges incurred are the market rates that the majority of law firms charge clients for such services.  In addition, Paul Hastings believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

72.     Section 316 of PROMESA provides for the compensation of professionals. Specifically, section 316 provides that a court may award a professional employed by a committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  PROMESA

§ 316(a).  Section 316 also sets forth the criteria for the award of such compensation and

reimbursement:

> (a)   In determining the amount of reasonable compensation to be awarded
> to a professional person, the court shall consider the nature, the extent,
> and the value of such services, taking into account all relevant factors,
> including:
>
> (i)    the time spent on such services;
>
> (ii)   the rates charged for such services;
>
> (iii)  whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward
> the completion of, a case under this chapter;
>
> (iv)   whether the services were performed within a reasonable
> amount of time commensurate with the complexity, importance,
> and nature of the problem, issue, or task addressed;
>
> (v)    with respect to a professional person, whether the person is
> board certified or otherwise has demonstrated skill and
> experience in the restructuring field; and
>
> (vi)   whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in
> cases other than cases under this title or title 11, United States
> Code.

73.   PROMESA § 316(c).  Further, section 317 of PROMESA provides that "a

committee . . . may apply to the court not more than once every 120 days . . . for such

compensation for services rendered . . . ."

74.   In the instant case, Paul Hastings respectfully submits that the services for which

it seeks compensation in this Application were, at the time rendered, believed to be necessary for

and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to

protect, preserve, and maximize value for unsecured creditors during the pendency of the

Title III Cases.  The services rendered to the Committee were performed in an economic,

effective, and efficient manner commensurate with the complexity and importance of the issues involved.  The results obtained to date have benefited not only the Committee but also the Debtors, their stakeholders, and other interested parties.  Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

75.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.  Whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments.  A small group of the same Paul Hastings attorneys was utilized for the vast majority of the work in order to minimize the costs of intra-Paul Hastings communication and education about the Title III Cases.  As demonstrated by this Application, Paul Hastings spent its time economically and without unnecessary duplication.  Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

76.    In accordance with the Interim Compensation Order, Paul Hastings will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC.

In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

[*Remainder of page intentionally left blank.*]

## <u>CONCLUSION</u>

WHEREFORE, Paul Hastings respectfully requests entry of an order, substantially in the

form attached hereto as <u>Schedule 3</u>, (i) allowing interim compensation for professional services

rendered during the Application Period in the amount of $1,504,585.00, representing 100% of

the fees billed during the Application Period, and reimbursement of $16,532.01, representing

100% of the actual and necessary expenses incurred during the Application Period,

(ii) authorizing and directing the Debtors' payment of the difference between (a) the sum of 80%

of the fees allowed (after taking into account any credits) and 100% of the expenses allowed and

(b) the amounts previously paid by the Debtors pursuant to the Interim Compensation Order, (iii)

allowing such compensation and payment for professional services rendered and reimbursement

of actual and necessary expenses incurred be without prejudice to Paul Hastings' right to seek

such further compensation and/or payment for the full value of services performed and expenses

incurred, and (iv) granting Paul Hastings such other and further relief as is just.

Dated: March 15, 2022

                                            */s/ Luc A. Despins*

                                            PAUL HASTINGS LLP
                                            Luc A. Despins, Esq. (Pro Hac Vice)
                                            James R. Bliss, Esq. (Pro Hac Vice)
                                            Nicholas A. Bassett, Esq. (Pro Hac Vice)
                                            G. Alexander Bongartz, Esq. (Pro Hac Vice)
                                            200 Park Avenue
                                            New York, New York 10166
                                            Telephone:  (212) 318-6000
                                            lucdespins@paulhastings.com
                                            jamesbliss@paulhastings.com
                                            nicholasbassett@paulhastings.com
                                            alexbongartz@paulhastings.com

                                            *Counsel to the Official Committee of Unsecured*
                                            *Creditors*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
                                                    :
In re:                                              :
                                                    :
THE FINANCIAL OVERSIGHT AND                         :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                   :   Title III
                                                    :
       as representative of                    :   Case No. 17-BK-3283 (LTS)
                                                    :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,          :   (Jointly Administered)
                                                    :
       Debtors.[1]                             :
------------------------------------------------------------------------ x

### DECLARATION OF LUC A. DESPINS IN SUPPORT OF FOURTEENTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2021 <u>THROUGH JANUARY 31, 2022</u>

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), I, Luc A. Despins, declare that the following is true to the best of my knowledge, information, and belief:

1.      I am an attorney admitted and in good standing to practice in the State of New York.  I am a partner with the law firm of Paul Hastings LLP ("<u>Paul Hastings</u>"), located at, among other offices worldwide, 200 Park Avenue, New York, New York 10166, and am duly authorized to make this Declaration on behalf of Paul Hastings.  I make this Declaration in

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

support of the *Fourteenth Interim Application of Paul Hastings LLP, Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period from October 1, 2021 through January 31, 2022* (the "Application").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

3.      I hereby certify that I have read the Application and, to the best of my knowledge, information, and belief, formed after reasonable inquiry, (a) the compensation and reimbursement of expenses sought in the Application conform with the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and the Local Rules, and (b) the compensation and reimbursement of expenses are billed at rates no less favorable to the Debtors than those customarily employed by Paul Hastings generally.

4.      Paul Hastings provides the following response to the request for information set forth in the U.S. Trustee Guidelines:

Question:      Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the Application Period?

Response:      Yes.  As a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period Paul Hastings agreed to the following voluntary fee reductions and expense write-offs:

(i)      For services rendered during the Application Period, Paul Hastings reduced the rates charged for the following attorneys:

---

[2]      Capitalized terms used but not defined herein have the meanings set forth in the Application.

| Attorney | Standard 2021 Rate (adjusted to reflect 20% end-of-case reduction) | Reduced 2021 Rate (adjusted to reflect 20% end-of-case reduction) |
|---|---|---|
| Luc A. Despins | $1,360 | $1,280 |

The foregoing reduced rates translated into $19,780.00 in waived fees.

(ii)    Additionally, Paul Hastings did not increase the hourly rates of timekeepers working on the Puerto Rico matter as of June 1, 2021 and January 1, 2022, and instead, maintained the pre-June 1, 2021 rates for the Application Period (even though hourly rates increased on a firm-wide basis as of June 1, 2021 and January 1, 2022). This translates into an additional $22,425.00 in waived fees.

In addition, Paul Hastings waived expenses totaling $198.59, as follows:

(i)     The firm waived all charges with respect to late-work, in-office meals (even though the Fee Examiner guidelines permit in-office meal charges of up to $20.00 per meal). At a $20.00 cap per meal, this translates into a total write-off of $0.00;

(ii)    The firm capped car service charges at $100.00 resulting in a write-off of $183.59; and

(iii)   To comply with Local Rule 2016-1(b)(1), the firm reduced color photocopy charges by 50% from 50 cents per page to 25 cents per page (even though the Fee Examiner's guidelines permit color photocopy charges of 50 cents per page), resulting in a write-off of $15.00.

The aggregate amount of the foregoing reductions/write-offs is $42,388.59.

Question:    If the fees sought in this application as compared to the fees budgeted for the Application Period are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    The aggregate amount of fees incurred by Paul Hastings during the Application Period were approximately 13.3% above the fees budgeted for the Application Period, *i.e.*, $176,197.00 (or $140,957.60 after adjusting to reflect, on a *pro forma* basis, the 20% end-of-case reduction). Paul Hastings discussed the reasons for the variation with the client, explaining that this discrepancy was almost entirely the result of Paul Hastings having to spend more hours than anticipated on Task Code B320 (*i.e.*, plan and disclosure statement), including (a) having to address changes to the Commonwealth plan of adjustment related to the treatment of general

3

unsecured creditors that could not have been anticipated at the time the budgets were prepared (b) having to undertake research (and prepare a related client memorandum) regarding various issues related to confirmation of an HTA plan of adjustment (which research was necessary to formulate, at the request of the Oversight Board, the Committee's proposal regarding the treatment of HTA general unsecured creditors).

Question:   Have any of the professionals included in this application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:   No.

Question:   Does the application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.)  If so, please quantify by hours and fees.

Response:   The Application does not include time for preparing, reviewing, or revising time records.  However, in the interest of full disclosure, the Application includes approximately 6.3 hours and associated fees of approximately $8,247.00 related to preparing, reviewing, and revising Paul Hastings' fee statements, including related summary tables, correspondence with notice parties, and ensuring time entries are properly categorized by matter number and task code.  On average, less than 1.5 hours were spent on each of the five monthly fee statements prepared during the Application Period.

Question:   Does this application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:   No.

Question:   If the application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation consistent with ABA Formal Ethics Opinion 11-458?

Response:   As is customary, Paul Hastings adjusts its hourly rates periodically based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  During the Title III Cases, with the Committee's approval, Paul Hastings adjusted its hourly rates in accordance with the Retention Order, the Retention

4

Application, and the supporting *Declaration of Mark Richard* [Docket No. 610-3]. The Retention Order provides that Paul Hastings will charge its regular hourly rates in effect from time to time, as such rates may be increased periodically, annually or otherwise.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 15th day of March 2022

*/s/ Luc A. Despins*
Luc A. Despins