**Hearing Date**: September 21, 2022 at 9:30am (AST)
**Objection Deadline**: June 16, 2022 at 4:00pm (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------- x

In re:                                                          :
                                                                :
THE FINANCIAL OVERSIGHT AND                    : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,     : Title III
                                                                :
As representative of                                    : Case No. 17-BK-3283 (LTS)
                                                                :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,   : (Jointly Administered)
                                                                :
Debtors.[1]                                             :

------------------------------------------------------------------- x

## FOURTEENTH INTERIM FEE APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022

## SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>October 1, 2021 through and including January 31, 2022 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$242,264.00</u>

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: <u>$4,520.01</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $251.14/hour

Blended rate in this application for all timekeepers: $248.73/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 19.20 hours, and the corresponding compensation requested is approximately $4,780.00.

| MONTHLY FEE REQUESTS TO DATE | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Total** | | **$294,120.50** | **$264,708.45** | **$12,052.09** | **$294,120.50** | **$12,052.09** | **$0.00** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $189,873.76 | $6,048.82 | $0.00 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $137,481.97 | $4,921.19 | $0.00 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $108,157.02 | $269.24 | $0.00 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $123,205.91 | $1,760.40 | $0.00 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$558,718.66** | **$12,999.65** | **$0.00** |
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $133,245.59 | $715.53 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $114,751.68 | $4,599.42 | $0.00 |
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $70,487.58 | $773.90 | $0.00 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $76,797.12 | $74.90 | $0.00 |
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$395,281.97** | **$6,163.75** | **$0.00** |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | | |
| 8/13/2020 | 06/01/2020 - 06/30/2020 | $74,223.50 | $66,801.15 | $42.20 | $73,110.14 | $42.20 | $0.00 |
| 9/11/2020 | 07/01/2020 - 07/31/2020 | $85,800.00 | $77,220.00 | $1,903.49 | $84,513.00 | $1,903.49 | $0.00 |
| 10/8/2020 | 08/01/2020 - 08/31/2020 | $62,341.50 | $56,107.35 | $402.92 | $61,406.38 | $402.92 | $0.00 |
| 10/29/2020 | 09/01/2020 - 09/30/2020 | $58,767.50 | $52,890.75 | $3,387.56 | $57,885.99 | $3,387.56 | $0.00 |
| **Total** | | **$281,132.50** | **$253,019.25** | **$5,736.17** | **$276,915.51** | **$5,736.17** | **$0.00** |
| **Eleventh Interim Fee Period (October 1, 2020 through January 31, 2021)** | | | | | | | |
| 12/10/2020 | 10/01/2020 - 10/31/2020 | $69,875.00 | $62,887.50 | $1,444.97 | $68,826.88 | $1,444.97 | $0.00 |
| 1/8/2021 | 11/01/2020 - 11/30/2020 | $56,839.00 | $51,155.10 | $3,798.94 | $55,986.41 | $3,798.94 | $0.00 |
| 2/11/2021 | 12/01/2020 - 12/31/2020 | $42,692.50 | $38,423.25 | $1,640.93 | $42,052.11 | $1,640.93 | $0.00 |
| 3/11/2021 | 01/01/2021 - 01/31/2021 | $46,599.00 | $41,939.10 | $335.33 | $45,900.01 | $335.33 | $0.00 |
| **Total** | | **$216,005.50** | **$194,404.95** | **$7,220.17** | **$212,765.41** | **$7,220.17** | **$0.00** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Twelfth Interim Fee Period (February 1, 2021 through May 31, 2021)** | | | | | | | |
| 4/12/2021 | 02/01/2021 - 02/28/2021 | $55,837.00 | $50,253.30 | $110.00 | $55,083.20 | $110.00 | $0.00 |
| 5/20/2021 | 03/01/2021 - 03/31/2021 | $45,348.00 | $40,813.20 | $3,951.70 | $44,735.80 | $3,951.70 | $0.00 |
| 6/24/2021 | 04/01/2021 - 04/30/2021 | $63,872.00 | $57,484.80 | $403.46 | $63,009.73 | $403.46 | $0.00 |
| 7/8/2021 | 05/01/2021 - 05/31/2021 | $68,141.00 | $61,326.90 | $181.40 | $67,221.10 | $181.40 | $0.00 |
| **Total** | | **$233,198.00** | **$209,878.20** | **$4,646.56** | **$230,049.83** | **$4,646.56** | **$0.00** |
| **Thirteenth Interim Fee Period (June 1, 2021 through September 30, 2021)** | | | | | | | |
| 8/19/2021 | 06/01/2021 - 06/30/2021 | $77,713.00 | $69,941.70 | $186.57 | $77,713.00 | $186.57 | $0.00 |
| 9/16/2021 | 07/01/2021 - 07/31/2021 | $68,345.00 | $61,510.50 | $3,667.74 | $68,345.00 | $3,667.74 | $0.00 |
| 10/20/2021 | 08/01/2021 - 08/31/2021 | $47,313.00 | $42,581.70 | $173.77 | $47,313.00 | $173.77 | $0.00 |
| 11/4/2021 | 09/01/2021 - 09/30/2021 | $52,966.00 | $47,669.40 | $91.43 | $52,966.00 | $91.43 | $0.00 |
| **Total** | | **$246,337.00** | **$221,703.30** | **$4,119.51** | **$246,337.00** | **$4,119.51** | **$0.00** |
| **Fourteenth Interim Fee Period (October 1, 2021 through January 31, 2022)** | | | | | | | |
| 12/16/2021 | 10/01/2021 - 10/31/2021 | $67,733.00 | $60,959.70 | $493.00 | $60,959.70 | $493.00 | $6,773.30 |
| 1/26/2022 | 11/01/2021 - 11/30/2021 | $64,692.00 | $58,222.80 | $3,898.11 | $58,222.80 | $3,898.11 | $6,469.20 |
| 2/17/2022 | 12/01/2021 - 12/31/2021 | $54,285.00 | $48,856.50 | $39.60 | $48,856.50 | $39.60 | $5,428.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/9/2022 | 01/01/2022 - 01/31/2022 | $55,554.00 | $49,998.60 | $89.30 | $0.00 | $0.00 | $5,555.40 |
| **Total** | | **$242,264.00** | **$218,037.60** | **$4,520.01** | **$168,039.00** | **$4,430.71** | **$24,226.40** |

| PRIOR INTERIM FEE APPLICATIONS | | | | | |
| Period | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period ("IFP") Covered | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | $559,558.00 | $12,999.65 |
| 07/15/2020 [Docket No. 13684] | 02/01/2020 - 05/31/2020 | $401,341.50 | $6,163.75 | $401,301.50 | $6,163.75 |
| 11/16/2020 [Docket No. 15155] | 06/01/2020 - 09/30/2020 | $281,132.50 | $5,736.17 | $281,132.50 | $5,736.17 |
| 3/15/2021 [Docket No. 16064] | 10/01/2020 - 01/31/2021 | $216,005.50 | $7,220.17 | $216,005.50 | $7,220.17 |

| 7/15/2021 [Docket No. 17381] | 02/01/2021 - 05/31/2021 | $233,198.00 | $4,646.56 | $233,198.00 | $4,646.56 |
|---|---|---|---|---|---|
| 11/15/2021 [Docket No. 19229] | 06/01/2021 - 09/30/2021 | $246,337.00 | $4,119.51 | $246,337.00 | $4,119.51 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$4,500,914.50** | **$128,826.25** |

Number of professionals with time included in this application: 14

Number of professionals billing fewer than 15 hours to the case in this application: 7

If applicable, number of professionals in this application not included in a staffing plan approved by the client: N/A

If applicable, difference between fees budgeted and compensation sought for this period: N/A

Are any timekeeper's hourly rates higher than those charged and approved upon retention: No

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re: :

:

THE FINANCIAL OVERSIGHT AND     : PROMESA

MANAGEMENT BOARD FOR PUERTO RICO,     : Title III

:

as representative of     : Case No. 17-BK-3283 (LTS)

:

THE COMMONWEALTH OF PUERTO RICO, *et al.*,     : (Jointly Administered)

:

Debtors.[1]     :

------------------------------------------------------------------------ x

## FOURTEENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................4

Background .............................................................................................................10

Compensation and Reimbursement Request ..............................................................16

Summary of Services ...............................................................................................19

General (Matter ID: 396-00002)..........................................20
PREPA (Matter ID: 396-00006)...........................................23
HTA (Matter ID: 396-00007) ..............................................25
Adversary Proceedings (Matter ID: 396-00009) ...................25
Fee Application (Matter ID: 396-00015)...............................26
Claims Review (Matter ID: 396-00017)................................26
Avoidance Actions (Matter ID: 396-00018)..........................28

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Attendance at Hearings ..................................................................................................31

Report on Matters Jointly Pursued by Oversight Board and Committee......................................32

Actual and Necessary Disbursements ...............................................................................34

Requested Compensation Should be Allowed ......................................................................35

Notice ..........................................................................................................................37

Conclusion ...................................................................................................................37

## <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

       C-1.    Budgets

       C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

       D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

              Further Breakdown of Compensation Requested by Project Category and by Matter

       D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its fourteenth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from October 1, 2021 through and including January 31, 2022 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, CST continued to assist and collaborate with Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, particularly with respect to the Committee's efforts to protect the benefits secured for general unsecured creditors of the Commonwealth and ERS under the letter agreement dated July 12th, 2021 by and between the Committee and the FOMB (the "Plan Settlement") settlement which was incorporated into the FOMB's Plan of Adjustment for the Commonwealth (the "Plan") approved by the Court during the Application Period.

2.      Per the Plan Settlement, the Plan provides, among other things, an aggregate consideration to or for the benefit of allowed CW General Unsecured Claims and allowed

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 et. seq.

Convenience Claims consisting of (a) cash in the amount of $575 million and (b) the net recoveries from certain avoidance and recover actions to be pursued by an avoidance actions trust (the "Avoidance Action Trust"). This represents an increase of approximately $414 million in the aggregate cash consideration compared to earlier versions of the plans of adjustment (which provided an aggregate cash consideration of approximately $161 million). Although the Plan Settlement is necessarily a compromise, it ensures far better recoveries for general unsecured creditors than what had been offered under prior versions of the Plan[3], where the recovery percentage had been only 5.1%, while avoiding high risk and high expense litigation in opposition to the Plan.

3.      Following the negotiation of the Plan Settlement and during the Application Period, CST assisted Paul Hastings and continued to represent the Committee in connection with the Plan confirmation process, which included collaborating and assisting with analysis of the Plan, the proposed confirmation order and other related documents as they were filed and/or amended during the Application Period; addressing and discussing issues related to the treatment of general unsecured creditors under the Plan and other numerous issues arising during the confirmation process. CST also assisted and collaborated with Paul Hastings in connection with the trust agreement providing for the creation and governance of the Avoidance Actions Trust. The Avoidance Actions Trust Agreement was a high priority for the Committee insofar as the post-confirmation prosecution of avoidance actions on behalf of general unsecured creditors was a key aspect of the Plan Settlement.

---

[3] Based on the FOMB's estimates and subject to certain assumptions and conditions, the aggregate cash consideration to be made available under the Plan represents an effective recovery rate of approximately 20%.

4.      Similarly, during the Application Period CST provided assistance to Paul Hastings and represented the Committee with respect to PREPA's Title III case, reviewing, and analyzing amended adversary proceedings, amended complaints, dispositive motions and related Opinions from the Court and analyzing and researching related legal issues concerning local laws and regulations. During the Application Period CST also continued to represent the Committee and collaborated closely with the Committee's special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"), in connection with the Fuel Oil Litigation, review and analysis of defendants' dispositive motions and analysis and research of local law issues in connection with the Second Amended Complaint.

5.      Additionally, during the Application Period and given CST's particular insight into the related litigation and past work reviewing a significant portion of Proof of Claims submitted by unsecured creditors, CST collaborated and worked closely with Paul Hastings on analyzing the treatment of HTA unsecured creditors under a yet-to-be-filed HTA plan of adjustment, which required extensive and in-depth review of seventy three (73) Proofs of Claims filed by unsecured creditors against HTA with an asserted value in excess of 1 million dollars, analysis of diverse and related issues of local law concerning said claims and review of judicial files and pleadings before local courts and agencies concerning many of said claims as part of the in-depth review and analysis. This detailed analysis was necessary to prepare an educated and thorough assessment of the merits of the claims asserted against HTA and the potential exposure involved. Additionally, CST also conducted a cursory review of two hundred seventy eight (278) unliquidated claims. Likewise, CST continued to work closely with Paul Hastings with an in-depth analysis of twenty one (21) Proof of Claims filed by unsecured creditors against PREPA to provide a detailed analysis

as to merits and exposure; in-depth analysis that also required thorough examination of judicial files and pleadings pending before local courts and administrative agencies.

6.　　During the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

    a.　reviewing the FOMB's reports concerning the designation and status of claims in connection with the alternative dispute resolution ("ADR") process and administrative claims reconciliation ("ACR") process;

    b.　working with other Committee advisors and counsel to the Special Claims Committee of the FOMB in connection with the prosecution and settlement of avoidance actions as part of the Informal Resolution process involving a myriad of garden variety avoidance actions;

    c.　attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

    d.　reviewing information provided by the Oversight Board's advisors regarding the ongoing claims reconciliation process;

    e.　monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings.

7.　　Additionally, during the Application Period, CST continued to represent the Committee with respect to the "garden-variety" avoidance actions initiated against over 340 vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers and 90-day preferential payments made to fuel oil suppliers of PREPA and related parties.

8.　　CST is counsel for the Committee and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses.

During the Application Period CST continued to collaborate and work closely with Brown Rudnick, counsel for the Special Claims Committee, and Paul Hastings, when required, with analysis of local law matters pertaining to the Avoidance Actions and discussions concerning the potential resolution and settlement of multiple 90-day preference claims.

9.      CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

10.      Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, CST professionals do not travel for Court appearances outside of PR and participate only through the remote video-conference service in San Juan.

11.      In addition, CST along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee.

12.     CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

13.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[4]

14.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

---

[4] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expenses requested by Debtor.

- <u>Exhibit F</u> contains a list of the professionals providing services during the application period by matter.

- <u>Exhibit G</u> includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

15.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[5] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

---

[5] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

16.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

17.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "Retention Application"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "Retention Order"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

18.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim Compensation Order").[6]

19.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

20.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made

---

[6] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order  shall

be  an administrative  expense." In addition, as provided in the Retention  Order,  the  Oversight

Board  has  consented  to  the  Debtors'  payment  of  CST allowed fees and expenses.

21.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections*

*316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related*

*Relief*  (the  "Fee  Examiner  Order")  [Docket  No.  1416].  The  Court  appointed Brady

Williamson as the Fee Examiner in the Title III Cases.

22.     On December 15, 2017, CST filed its first interim fee application with respect to

the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee

Application"). In accordance with the Interim Compensation Order, CST received a preliminary

report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018,

the court approved the First Interim Fee Application.

23.     On March 19, 2018, CST filed its second interim fee application with respect to the

period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim

Fee  Application").  In  accordance  with  the  Interim  Compensation  Order,  CST  received  a

preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On

June 8, 2018, the court approved the Second Interim Fee Application.

24.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures*

*for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the

Second Interim Compensation Order").

25.     On July 16, 2018, CST filed its third interim fee application, covering the period

from  February  1,  2018  through  May  31,  2018  [Docket  No.  3562].  All services for which

compensation is requested were performed for or on behalf of the Committee. In accordance with

the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

26.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

27.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

28.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain

---

[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.
[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.

minimal adjustments in its requested fees and expenses.[9] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

29.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[10] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

30.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On July 24, 2020, the Court approved the Eighth Interim Fee Application.

31.     On July 15, 2020, CST filed its ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020 [Docket No. 13684]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee Application. Per the Fee Examiner's request, CST agreed to

---

[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.
[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.

14

certain minimal adjustments in its requested fees and expenses.[11] On October 26, 2020, the Court approved the Ninth Interim Fee Application, with the agreed-upon adjustments.

32.     On November 16, 2020, CST filed its tenth interim fee application, covering the period from June 1, 2020 through September 30, 2020 [Docket No. 15155]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Tenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On March 8, 2021, the Court approved the Tenth Interim Fee Application.

33.     On March 15, 2021, CST filed its eleventh interim fee application, covering the period from October 1, 2020 through January 31, 2021 [Docket No. 16064]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On August 3, 2021, the Court approved the Eleventh Interim Fee Application.

34.     On July 15, 2021, CST filed its twelfth interim fee application, covering the period from February 1, 2021 through May 31, 2021 [Docket No. 17381]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee

---

[11] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

Examiner for this period. On October 4, 2021, the Court approved the Twelfth Interim Fee Application.

35.     On November 15, 2021, CST filed its thirteenth interim fee application, covering the period from June 1, 2021 through September 30, 2021 [Docket No. 19229]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Thirteenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On January 28, 2022, the Court approved the Thirteenth Interim Fee Application.

36.     This is CST's fourteenth interim fee application, covering the period from October 1, 2021 through January 31, 2022. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

37.     By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $242,264.00; and (b) expense reimbursements in the aggregate amount of $4,520.01. These amounts are allocated among the Commonwealth Title III Case, the PREPA Title III Case, the HTA Title III Case and the ERS Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $221,378.50 | $4,520.01 | $225,898.51 |
| PREPA Title III Case | $16,283.50 | $0.00 | $16,283.50 |
| HTA Title III Case | $4,522.00 | $0.00 | $4,522.00 |

| | | | |
|---|---|---|---|
| ERS Title III Case | $80.00 | $0.00 | $80.00 |
| **Total** | **$242,264.00** | **$4,520.01** | **$246,784.01** |

38.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were below the aggregated amount of the monthly budgets.

39.     As of today, CST has not been paid any amounts pertaining to its invoices for January 2022, for which it requests payment pursuant to this Fee Application.

40.     Also, to date, CST has received payments totaling $172,469.71 for services rendered during the Application Period excluding January 2022, which amount consists of $168,039.00 (representing 90% of the fees for services invoiced during the period of October 1, 2021 through December 31, 2021) and $4,430.71 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $74,314.30 remains unpaid.

41.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

42.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

43. There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

44. CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

45. The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

46. CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market

adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

47. CST's professional services during the Application Period required an aggregate expenditure of 974.00 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (541.30 hours), Members (0.60 hours), Counsels (23.70 hours), Junior Partners (302.70 hours), Senior Associates (90.70 hours), and Paraprofessionals (15.00 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

48. To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

49. During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional

services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[12] For ease of reference and transparency purposes, CST created several matter numbers for its representation of the Committee. The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|---|---|
| 396-00002 | General |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00009 | Adversary Proceedings |
| 396-00015 | Fee Application |
| 396-00017 | Claims Review |
| 396-00018 | Avoidance Actions |

## I.      General (Matter ID: 396-00002)

(a)      <u>Case Administration (Task Code: B110)</u>

> Hours:      5.50          Fees:   $1,058.00

50.      During the Application Period, CST, along with Paul Hastings, continued to advise the Committee on general case administration. In order to efficiently track deadlines, organize documents, and manage work streams, CST maintained a global task list and case calendar, including a tracking chart for all adversary proceedings, non-Title III litigation, and non-judicial affairs that have in effect in these proceedings. To minimize duplication of services, CST developed procedures for allocating responsibilities among team members. CST continued implementing interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage these work streams.

---

[12] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of service during the Application Period.

51.     Furthermore, CST executed a variety of tasks related to case administration including, among other things, handling of filing logistics, procurement of transcripts, research and analysis of extrajudicial matters that impact the Title III proceedings, creation of information packages for meetings and/or public dissemination including translations thereof, and provide status reports of local current events and recent developments that affect the legal issues litigated and the Committee's interests.

(b)     Pleading Reviews (Task Code: B113)

Hours:     190.20     Fees:   $47,405.00

52.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial litigated fronts like plan voting contentions; discovery and Disclosure Statement-specific discovery, and the disputes that arose from these proceedings; administrative expense claim motions; the objection litigation related to certain Proofs of Claim; challenges to several laws in certain adversary proceedings; *in limine* motions related to expert testimony; the Title VI Qualifying Modifications filed by PRIFA and PRCCDA; and the Commonwealth's amendments to the proposed Plan of Adjustment and Disclosure Statements, the many objections thereto, and eventual confirmation of the plan.

53.     CST also kept abreast on the issues on appeal before the First Circuit Court of Appeals and the U.S. Supreme Court.

(c)     Meeting of and Communications with Creditors (Task Code: B150)

Hours:     22.10     Fees:   $5,894.00

54.     During the Application Period, CST kept the Committee apprised of relevant developments in the Title III Cases, such as the avoidance action litigation and the litigation trust,

out-of-court events that affect the Title III proceedings – such as legislative actions, and plan voting procedures and confirmation hearings. CST participated in various telephone and virtual conferences and assisted in the preparation of various documents and communiques for the Committee and other unsecured creditors, particularly those that involve both English and Spanish languages. Notable was CST Law's involvement in the offering of informative sessions on the proposed Plan of Adjustment and its treatment of unsecured creditors, for the general public and unsecured creditors.

(d)     <u>Court Hearings (Task Code: B155)</u>

      Hours:     45.50     Fees:   $12,110.00

55.     During the Application Period, CST attended as local counsel to all court hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared via telephone or virtual conferencing platform at each event.

(e)     <u>Other Contested Matters (Task Code: B190)</u>

      Hours:     33.00     Fees:   $8,080.50

56.     During the Application Period, CST conducting research on various first-impression issues of Puerto Rico Law as it aided Paul Hastings and Special Litigation Counsel in the analysis and drafting of the Committee's position in matters related to debt challenges, underwriting actions, and litigation trusts.

(f)     <u>General Litigation (Task Code: B191)</u>

      Hours:     28.40     Fees:   $7,126.50

57.     During the Application Period, CST aided Paul Hastings and Special Litigation Counsel in various tasks, such as preparation of communiques for the Committee, research and analysis of local law in connection with claims reconciliation, and classification of claims. All this

in association with the proposed Plan of Adjustment and its Disclosure Statement, and the Title VI Qualifying Modifications. CST provides a unique focused insight into the local issues that have an effect on these Title III litigations.

(g)   Plan and Disclosure Statement (Task Code: B320)

   Hours:   21.90        Fees:   $5,892.00

58.   During the Application Period, CST aided Paul Hastings in various tasks in connection with the Board's proposed Plan of Adjustment, its Disclosure Statement, and plan confirmation procedures. Particularly, CST assisted in out-of-court outreach efforts, in the creation of the litigation trust, partook in the review and analysis of the objections to the Plan, and participated in delineating the Committee's strategy in the fight for better treatment of unsecured creditors in the proposed plan.

(h)   Restructurings (Task Code: B420)

   Hours: 6.40        Fees:   $1,728.00

59.   Upon the Commonwealth's filing of the amended proposed Plan of Adjustment, CST Law engaged in multiple efforts to ensure the Committee's and its constituents' interests were represented and not neglected in the distributions to the classes. Noteworthy is the participation of CST team members in the pursue and creation of Avoidance Action Trust, key part to debt restructuring. CST's work in the establishment of the trust has proven instrumental for better net recoveries for general unsecured creditors compared to what had been offered under prior versions of the Plan, while avoiding high risk and high expense litigation in opposition to the Plan.

**II.   PREPA (Matter ID 396-00006)**

60.   During the Application Period CST collaborated with Paul Hastings and represented the Committee with respect to PREPA's Title III case. Among others, CST assisted

and collaborated with Paul Hastings and GJB, the Committee's Special Litigation Counsel, in connection with the extensive review, analysis and discussion of multiple pleadings and dispositive motions, including defendants' motions for summary judgment and motions to dismiss the First and Second Amended Complaint, and the Court's opinions and orders with respect to said dispositive motions. CST also collaborated with GJB, the Committee's Special Litigation Counsel, on matters concerning Fuel Oil Litigation, extensive research of local law aspects raised by defendants in dispositive motions and concerning the preparation of plaintiffs' Second Amended Complaint. During the Application Period and in connection with the Second Amended Complaint and arguments raised by defendants, CST also engaged in considerable efforts to procure and secure extensive documentary evidence from the Senate Special Investigation Commission on Fuel Oil Suppliers irregularities.

(a)     Pleadings Review (Task Code: B113)

   Hours:     27.10     Fees:    $7,093.00

61.     During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST considered crucial and highly contested issues, such as the ongoing negotiations involving PREPA's FRBP 9019 Motion, UTIER's and PREPA Retirees' adversary proceeding challenges, PREPA's Omnibus Objections to claims, Debtor's Bond Trustee's contentions, and PREPA's ongoing motions to assume and reject certain power purchase agreements.

62.     CST also kept abreast of various appellate procedures stemming from PREPA's Title III case.

(b)    Other Contested Matters (Task Code: B190)

Hours:    27.20    Fees:  $7,110.00

63.    During the Application Period, CST aided Paul Hastings and Special Litigation Counsel researching and analyzing various legal issues contended in the Fuel Oil adversary proceedings, in addition to the discovery related to these matters. CST's particular expertise in local law and government groundwork, provided analysis paramount in the establishment of the Committee's strategy and counterarguments.

(c)    General Litigation (Task Code: B191)

Hours:    6.40    Fees:  $1,675.50

64.    CST continued assisting Paul Hastings and Special Litigation Counsel with local housekeeping matters related to the Fuel Oil adversary proceedings, in addition to providing support with local groundwork.

**III.    HTA (Matter ID: 396-00007)**

(a)    Pleadings Review (Task Code: B113)

Hours:    12.00    Fees:  $3,226.00

65.    During the Application Period, in order to provide a more rounded and comprehensive assistance to Paul Hastings in our co-representation of the Committee's interests, CST monitored the HTA-related adversary proceeding asserted by the DRA Parties. This, of course, in compliance with the applicable Rules of Professional Conduct

**IV.    Adversary Proceedings (Matter ID: 396-00009)**

(a)    Case Administration (Task Code: B110)

Hours:    5.10    Fees:  $1,368.00

66.     During the Application Period, CST Law aided in multiple contested matters in the adversary proceedings related to PREPA's Title III case. Specifically, CST assisted special litigation counsel with local law issues surrounding the Committee's position in the matters

## V.     Fee Application (Matter ID: 396-00015)

(a)     <u>Fee / Employment Applications (Task Code: B160)</u>

> Hours:     21.30          Fees:     $4,356.50

67.     CST established a matter to keep track of the time incurred per the Fee Examiner's requests and pursuant to the Presumptive Standard Orders. For this matter, the time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare and file the thirteenth Interim Application.

(b)     <u>Budgeting (Task Code: B161)</u>

> Hours:     6.70          Fees:     $1,797.00

68.     During the Application Period, CST prepared budgets, sub-budgets, and staffing plans pursuant to Fee Examiner's and Committee's requests and conversed with them and counsel for Paul Hastings regarding the matter.

## VI.     Claims Review (Matter ID: 396-00017)

69.     During the Application Period, CST, per Paul Hastings' request, conducted an in-depth review of seventy-three (73) proofs of claim filed by unsecured creditors against HTA, to provide the Committee with assessment concerning merits and potential exposure. CST conducted extensive due diligence in connection with said POCs, conducted legal research involving issues of local law and requested, requested and reviewed select files from the local court system and

administrative agencies and reviewed related dispositive pleadings. Additionally, CST conducted a cursory review of two hundred seventy-eight (278) unliquidated claims asserted against HTA.

70.     During the Application Period CST also conducted extensive work and collaborated closely with Paul Hastings in relation to an in-depth review of twenty one (21) proof of claims filed against PREPA and conducted assessment concerning merits and potential exposure and related legal research concerning matters of local law, in connection with special PREPA claims review project, which also entailed requesting and reviewing judicial case files and pleadings pending before local courts and administrative agencies concerning said claims.

(a)     Other Contested Matters (Task Code: B190)

     Hours:     67.20         Fees:   $16,560.00

71.     During the Application Period, CST reviewed and analyzed certain Proofs of Claim and their supporting documents. CST's extensive research and analysis was instrumental in determining the viability of claims against debtors PREPA and HTA and developing the Committee's strategy.

(b)     General Litigation (Task Code: B191)

     Hours: 107.20         Fees:   $26,052.00

72.     During the Application Period, CST continued working closely with Paul Hastings in the review of claims filed against Debtors PREPA and HTA. This stage of the review project consisted of targeted in-depth review and claim valuation analysis to gain a better understanding of the claims against the Debtors, the viability of these, and assess Debtors' exposure. This information is instrumental for the Committee in advocating for improvements to the treatment of its constituents.

(c)     Non-Working Travel (Task Code: B195)

Hours: 20.20          Fees:  $2,424.00

73.     During the Application Period, a CST Law attorney privy to the Claim Analysis project travelled to local courts to procure case files related to some of the claims under analysis. This task was unavoidable in the instances where no electronic judicial case file is kept.

(d)     Claims Administration and Objections (Task Code: B310)

Hours:     50.50          Fees:  $12,453.00

74.     CST Law provided in-depth analysis of specific claims against the Debtors PREPA and HTA. To efficiently track and manage work streams and minimize duplication of services, CST maintained spreadsheets to track the progress, review and analysis of the claims in scope. Analysis of the potential liability and exposure CST generated during the Application Period, proved to be paramount in the Committee's strategy.

**VII.    Avoidance Actions (Matter ID: 396-00018)**

75.     During the Application Period CST, who represents the Committee with respect to the garden variety avoidance actions and in the Informal Resolution Process, continued to be heavily involved in the analysis, prosecution and resolution of garden-variety avoidance actions against hundreds of vendors of the Debtors, i.e. Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380 to 19-383. As local counsel to the Committee, CST continued to collaborate and work closely with Brown Rudnick, counsel for the Special Claims Committee, and Paul Hastings, when required, with the analysis of local law matters pertaining to the Avoidance Actions and discussions concerning the potential resolution and settlement of multiple 90-day preference claims.

76.     During the Application Period, CST, as the Committee's local counsel, continued to review extensive memoranda and supporting documentation provided by Brown Rudnick, in

connection with ongoing discussions and recommendations concerning outstanding avoidance actions and discussions and negotiations with vendors to address and resolve multiple 90-day preference claims. Additionally, CST continued to review extensive documentary evidence submitted by vendors in support of defenses to 90-day preference claims.

77.     CST also collaborated closely with GJB, the Committee's Special Litigation Counsel, in connection with the review and analysis of defendants' Answers to Amended Complaint and related dispositive motions, omnibus motion to dismiss, individual motions to dismiss, and for judgment on the pleadings, and corresponding analysis and extensive research of local law issues raised by defendants and ultimately addressed by plaintiffs in the Second Amended Complaint (Adv Pro. 19-388) filed during the Application Period.

(a)     Case Administration (Task Code: B110)

Hours:     12.50          Fees:   $3,357.00

78.     During the Application Period, CST utilized and implemented strategies to streamline the workflow associated with the administration of each action, including staff meetings, shared information matrix, and the creation of databases. As such, CST assisted Paul Hastings and Special Litigation Counsel in the ongoing litigation of numerous avoidance actions at their varying stages. CST's main tasks involved interfacing with vendor defendants, reviewing vendor's responses in connection with the Information Exchange Process, reviewing tolling agreements offered to vendors, collaborating in the establishment of the litigation trust and transition process, and participating in settlement negotiations. Some legal research as to issues of local law and analysis thereof for the rest of the avoidance action team was also required.

(b)     Pleadings Review (Task Code: B113)

Hours:     14.30          Fees:   $3,861.00

79. During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy. This in compliance with the applicable Rules of Professional Conduct.

(c)     Avoidance Action Analysis (Task Code: B180)

   Hours:     196.40     Fees:   $49,221.00

80. During the Application Period, most of the active avoidance actions progressed through the mediation stage of the IR Protocol, while settlements were convened in others, and litigation ensued in a few. Every case presents a set of circumstances that require individualized treatment to determine whether Plaintiffs will move for voluntary dismissal of the claims or default, proceed with litigation or mediation, or negotiate a settlement. For those actions in mediation and settlement negotiations, CST and co-counsel spent considerable amount of time assessing defenses, partaking in strategy meetings, and researching and providing legal analysis of the challenges asserted by vendor defendants to establish the Committee's strategy with the rest of the team. Notwithstanding, CST continued providing first-level review of new and supplementing data produced by vendors when requested for purpose of advancement of the litigation.

81. During the Application Period CST Law continued aiding in the construction of the avoidance action litigation trust and the implementation of this strategy in connection with the confirmed Plan of Adjustment.

(d)     General Litigation (Task Code: B191)

   Hours:     18.30     Fees:   $4,941.00

82. As some of these avoidance actions progressed through the IR Protocol into mediation and litigation, during the Application Period CST continued supporting co-counsel in establishing Plaintiffs' strategy. Some of the tasks involve pleading review, researching local law

issues, drafting and editing briefs and pleadings, participate in settlement negotiations, and meeting with co-counsel and opposing counsels.

(e)    Claims Administration and Objections (Task Code: B310)

> Hours:    6.20         Fees:   $1,524.00

83.    The specificities of each garden variety avoidance action subject to the IR Protocol warranted the analysis some of the defenses raised. CST's assessments and evaluations facilitated discussions during ensuing negotiations and potential settlements, and the overall strategy for briefing each case.

*****

84.    The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

### ATTENDANCE AT HEARINGS

85.    In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following summary regarding the attendance of CST professionals at Court hearings, as local counsel to the Official Committee of Unsecured Creditors:

- October 6, 2021: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- October 25, 2021: Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- October 28, 2021: Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 1, 2021: Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 8, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 9, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 10, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 12, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 15, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 17, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 22, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- November 23, 2021: Plan of Adjustment Confirmation Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- December 15, 2021: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- January 19, 2022: Omnibus Hearing on claim objections. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- January 20, 2022: Omnibus Hearing on claim objections. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

86.     As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

- <u>GO Bond Claims Objections [Docket No. 4784] (the "Omnibus Claims Objection")</u>:
  On March 10, 2020, the Court stayed the Omnibus GO Claim Objection pending a
  decision on confirmation of the Commonwealth plan of adjustment.

- <u>Adversary Proceedings Challenging Liens Asserted by Holders of GO Bonds ("GO
  Lien Challenges")</u>
  On March 10, 2020, the Court stayed the Omnibus GO Lien Challenges pending a
  decision on confirmation of the Commonwealth plan of adjustment.

- <u>Adversary Proceeding against Underwriters, etc.</u>: CST, the Committee's local counsel,
  represents the Committee with respect to the adversary proceeding against various
  underwriters and other parties involved in the issuance of Commonwealth bonds [Adv.
  Proc. No. 19-280]. On March 10, 2020, the Court stayed the underwriter litigation
  pending a decision on confirmation on the Commonwealth plan of adjustment.

- <u>Garden-Variety Avoidance Actions</u>: CST, the Committee's local counsel, represents
  the Official Committee of Unsecured Creditors (UCC) with respect to various "garden-
  variety" avoidance actions initiated against vendors of the Commonwealth of Puerto
  Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the
  Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc.
  Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect
  to PREPA [Adv. Proc. Nos. 19-380 to 19-387].

  CST is one of two (2) Puerto Rico law firms (the other being Estrella LLC) serving as
  primary attorney point of contact in the Informal Resolution Process established by the
  Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily
  having to incur in litigation costs and expenses.

  During the Application Period, CST, as the Committee's local counsel, continued to
  review extensive memoranda and supporting documentation provided by Brown
  Rudnick, in connection with ongoing discussions and recommendations concerning
  outstanding avoidance actions and discussions and negotiations with vendors to address
  and resolve multiple 90-day preference claims. Additionally, CST continued to review
  extensive documentary evidence submitted by vendors in support of defenses to 90-
  day preference claims.

- <u>Other Stayed Co-Plaintiff Adversary Proceedings</u>:  Per Judge Swain's March 10,
  2020 stay order, the following adversary proceedings (in which the Committee has
  been appointed as co-plaintiff/co-trustee with the Oversight Board) also remained
  stayed pending a decision on confirmation of the Commonwealth plan of
  adjustment.

o   Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and

o   Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

Per Judge Swain's April 28, 2021 stay order, the following adversary proceedings (in which the Committee has been appointed as co-plaintiff/co-trustee with the Oversight Board) also remained stayed pending a decision on confirmation of the Commonwealth plan of adjustment.

o   Two adversary proceedings regarding lien scope issues with respect to ERS bonds [Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367] and six adversary proceedings regarding ultra vires issues with respect to ERS Bonds [Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361].

87.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

**ACTUAL AND NECESSARY DISBURSEMENTS**

88.     As described in Exhibit D hereto, CST disbursed $4,520.01 as expenses incurred in providing professional services during the Application Period.

89.     Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

90.     The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to

daily inquiries, and satisfy the Committee's needs and demands. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

91.     CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

92.     Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(v) with respect to a professional person, whether the person is board
certified or otherwise has demonstrated skill and experience in the
restructuring field; and

(vi) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases
other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may
apply to the court not more than once every 120 days… for such compensation for services
rendered…"

93.     In the instant case, CST respectfully submits that the services for which it seeks
compensation in this Application were, at the time rendered, believed to be necessary for and
beneficial to the Committee, the Debtors, and their stakeholders and were rendered to
protect, preserve, and maximize the value for unsecured creditors during the pendency of the
Title III Cases. The services rendered to the Committee were performed in an economic, effective,
and efficient manner commensurate with the complexity and importance of the issues involved.
The results obtained to date have benefited not only the Committee but also the Debtors
and their stakeholders. Accordingly, the compensation requested herein is reasonable considering
the nature, extent, and value of such services to the Committee, the Debtors, and all parties in
interest.

94.     The work conducted was carefully assigned to appropriate professionals or
paraprofessionals according to the experience and level of expertise required for each particular
task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee
by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of
the assignments. A small group of the same CST's attorneys was utilized for the vast majority
of the work in this case, to minimize the costs of intra- CST's communication and education about

the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

95.     In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as <u>Schedule 1</u>, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $242,264.00 and expense reimbursements in the amount of $4,520.01; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: March 15, 2022          */s/Juan J. Casillas-Ayala*
                              CASILLAS, SANTIAGO & TORRES LLC
                              Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                              Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
                              PO Box 195075
                              San Juan, PR 00919-5075
                              Tel.: (787) 523-3434
                              Fax: (787) 523-3433
                              jcasillas@cstlawpr.com
                              lllach@cstlawpr.com

                              *Local Counsel to the Official Committee of Unsecured
                              Creditors*