## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors[1]. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### REPLY AND MOTION IN COMPLIANCE WITH ORDER

Appearing today, May 26, 2022, before the Honorable Laura Taylor Swain, in The United States District Court for the District of Puerto Rico (hereinafter Federal Court), and before those who exercise jurisdiction over the Oversight, Management, and Economic Stability Act of 2016, Public Law 114-187, 48 USC secs. 2101 et seq., better known as «PROMESA», the Movant party, as an individual creditor or holder of the claim #179662, having obtained an unfavorable ruling in terms of the "Asserted Claim Amount" (with $ 0.00) (Docket Entry No. 20359 in Case 17-3283) under de classification UNDETERMINED*[1]. The Movant party is composed by Ms. Maira Ivet Feliciano-Rosado (hereinafter Ms. Feliciano-Rosado), retired educator y lawyer (and lawyer although without revalidating her title yet) and neighbor of the Town of Mayagüez, Puerto Rico, who comes to give voice, and in representation of the minor L.A.R.F., aka LEO, now 17 years of age, whose current whereabouts are unknown (2011-2022). This is because it was always the

---

[1]The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19- BK-5532-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[1]*Indicates claim contains UNLIQUIDATED and/or UNDETERMINAED amounts.

United States The Federal Court of District of District of Puerto Rico- Claim #179662, Docket
Entry No. 20359 in Case 17-3283-LTS, May 26, 2022

PAGES

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---

## REPLY AND MOTION IN COMPLIANCE WITH ORDER

## TABLE OF CONTENT AND ANNEXES

### I. TABLE OF CONTENT

A.  Jurisdiction Of those Having Over PROMESA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

B.  Framing The Case In PROMESA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

C.  The Core Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.  Claim Tract Under PROMESA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

E.  CHILD TRAFFICKING FOR CHILD SUPPORT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

F.   SUPPLICA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

### II. ANNEXES

Transcript Report (May 16, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Prime Clerk Received Your PROOF OF CLAIM with postmarked by the United States Post
Office, dated November 5, 2021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Copy of pages 1 and 6 of the "Notice of Agenda of Matters Scheduled For The Hearing on February
16-17, 2022 At 9:30 A.M. AST". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Copy of pages 1 and 6 of the "Notice of Agenda of Matters Scheduled For The Hearing on February
16-17, 2022 At 9:30 A.M. AST". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Order dated March 24, 2022, Order Concerning Application Filed by Maira I. Feliciano Rosado,
March 24, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

The Motion is denied without prejudice to renewal in English dated May 5, 2011, without dateline
y postmarked by the United States Post Office, dated May 5, 2022. . . . . . . . . . . . . . . . . . . . .10

Orders (2) of 1st Circuit Court with dateline dated May 11, 2022 with postmarked by the United
States Post Office, dated May 11, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13-20

United States The Federal Court of District of District of Puerto Rico- Claim #179662, Docket Entry No. 20359 in Case 17-3283-LTS, May 26, 2022

**PAGES**

Objection to the Notice of Intention to Refer Cases Excluded From Enforcing Some Compliance Merchanisms, Case Number 0516701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-21(d)

Proof of Claim, Modified Official Form 410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-25

NOTICE OF PRESENTMENT OF PROPOSED ORDER GRANTING THE FOUR HUNDRED THIRTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS FOR WHICH THE COMMONWEALTH IS NOT LIABLE (ECF NO. 20490), dated May 19, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-30

ORDER GRANTING FOUR HUNDRED THIRTY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS FOR WHICH THE COMMONWEALTH IS NOT LIABLE, dated May 19, 2022, (by Email). . . .31-35

Table- Four Hundred Thirty-Fifth Omnibus Objection Exhibit A - Claims to Be Disallowed . . . 35

Tax Year 2021, Form 480.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

March 2022 Check Stub-abril 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

Las partidas de dinero que se reclamaron en la demanda de derechos civiles de 2012, que fue desestimada. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38-73

intention of this MOTHER-Complainant to bring to this class action under PROMESA the cause of RELEASE of her only son, as expressly stated in your original claim.

FORGIVE ME if I do not know how to address myself correctly before this honorable District Court, since I have no experience in litigation, among other things, despite being a lawyer. Respectfully, the Movant Party ASSERTS, ALLEGES, AND REQUESTS:

1. The Movant requests authorization from this Federal Court to file this amended motion in the English language, which is attached to the voluminous exhibits, which were also translated into English by a certified translator, there for 2011-2013, and in request for waiver of the filing fee, and in compliance with Judge Taylor-Swain's last orders.  It should be noted that it was impossible to translate into English all the annexes submitted in Spanish since 2018. Movant selected the most pertinent, in its opinion. We recognize that the determination of fair and reasonable compensation, in the first place, assumes that there is a liquid and due debt. It is a challenge. For this reason, we bring to the attention of the Federal Court and those who have jurisdiction over PROMESA, pages 38 to 73 of the schedules (See Schedules, pages 38-73), the items of money that were claimed in the 2012 civil rights lawsuit, which was dismissed.

2. t should be noted that it is not Ms. Feliciano-Rosado's intention to disrespect the judges or attempt against their authority, but to denounce the abuse of power.  Reason why this MOTHER-Complainant, without being a human rights activist, who had her only son taken away from her, and with him her lifestyle and her joy of life, for denouncing a judge who «INVENTED A SENTENCE» that does not exist in Law, in order to force a preferred result (2011), raises her voice against «JUDICIAL CORRUPTION», since she is a «MOTHER» before being a lawyer.

3. Those with jurisdiction over PROMESA concluded that Ms. Feliciano Rosado's claim did not constitute a consumer sales business. To which she REPLIES that, in the instant case, the «CONSUMER SALES» is her own son turned into merchandise for the traffic for his child support. «THE CONSUMER SALES» ARE THE CHILDREN! THE CHILDREN! MY CHILD, LEO! They are THE COIN OF EXCHANGE. With JOINT CUSTODY, TIME has become the CURRENT CURRENCY that drowns the pity and shame of parents (the "Lucifer Effect"), who seek to spend more time with their children just to be relieved of child support as a reward.  Interest stifles the cries of children who long to spend quality time with them. Such a law gives fuel to evil and serves only to mock the soul yearnings of children, hungry for love and attention. Worse, this law is a breeding ground for JUDICIAL CORRUPTION.

4. Having said that, it should be noted that above decisions of those who have jurisdiction over PROMESA certainly have the effect of dismissing the case at hand.  It was to be expected that Mrs. Feliciano-Rosado appealed to the appeals forum, given the consistent classification of "undetermined", due to the Affirmed Claim Amount (in the last column) of the Table entitled "Four Hundred Thirty-Fifth Omnibus Objection Exhibit A - Claims to Be Disallowed", from August 20, 2021 to May 19, 2022. Especially when it is at stake, protected by the *ad hoc* rule of law created by PROMESA, whose scope is unsuspected, the only opportunity that the Minor

L.A.R.F. of being RELEASED from his silent and invisible captivity, for being subjected to a new type of ENFORCED DISAPPEARANCE, and that nobody seems to care.

5. Reason for which the Movant appealed to the 1st Circuit in Boston (See Annexes 2022, Transcript Report, p. 1), by filing a Notice of Appeal in the Federal District Court of Puerto Rico, on March 15, 2022. *Nor, on the other hand, does Movant believe that it has defied the Board with recklessness or high-handedness.  However, he has the firm conviction that the Federal District Court and the Board, appointed by the United States Congress, are the only ones with the power to put "JUDICIAL CORRUPTION" in check, thus freeing the Judicial Branch or "Rama Judicial de Puerto Rico" of the criminal groups that, in effect, have taken her HOSTAGE.  AS HOSTAGE AS THEY HAVE TAKEN THE YOUNGEST LEO, from December 14, 2011, until today. Nevertheless, we are of the firm belief that the Federal District Court and the Board, appointed by the U.S. Congress, are the only ones with the power to put "JUDICIAL CORRUPTION" in check, thus freeing the Judicial Branch from the criminals' groups that are, in effect, holding it HOSTAGE.

6. Under a "Reign of Terror", these much-feared groups, what we call the «MAFIA», they are holding HOSTAGE the good judges, officers, and employees of the court under penalty of reprisals, extensive to their families and loved ones, and even death[2], since each court has its own MAFIA derailment of the processes.  Hence, in the past 10 years no one has helped this mother and her son, and those who tried were intimidated and discouraged.  Victims have nowhere to go!

**A. JURISDICTION OF THOSE HAVING JURISDICTION OVER P.R.O.M.E.S.A.**

7. In this context, the statements made by the Chief Justice on Tuesday, May 23, 2022[3], are particularly encouraging, Raúl M. Arias-Marxuach, of the Federal District Court of Puerto Rico, that, in effect, are a call to the court TO MAKE STRUCTURAL CHANGES TO THE LEGAL SYSTEM with respect to CORRUPTION, and in this respect, we quote *ad verbatim* his most recent statements:

> *"Yesterday, the judge estimated that in the federal forum 60% of the cases are criminal, mainly violations of federal drug and weapons laws, and the rest are civil. A minimal number of cases are CORRUPTION CASES.  The judge denied that the court has made changes in the way CORRUPTION CASES are handled, in light of the fact that the entry and exit of defendants accused of these crimes has been perceived differently by representatives of the media.  He said that, if there is any change, judges do not*

---

[2]Figueroa Rosa, Bárbara J., Noticia de Primera Hora de12 de septiembre de 2016, Desgarrador testimonio del esposo de la fiscal asesinada: El abogado Fermín Arraiza le gritó a los acusados en sala.  https://www.primerahora.com/noticias/policia-tribunales/notas/desgarrador-testimonio-del-esposo-de-la-fiscal-asesinada/
[3]Emmanuelli Jiménez, Lcdo. Rolando, J.D., LL.M., All about the PROMESA Law and the Fiscal Oversight Board (November 14, 2016) pr.microjuris.com/noticias/noticia/titulo-vii-de-promesa-la-intencion-del-congreso-en-cuanto-a-las-reformas-fiscales-permanentes-de-crecimiento-economico-reflexiones-finales-sobre-la-ley-y-sus-efectos-en-puerto-rico

*interfere in these decisions, and that this may depend on other components of the justice system, such as bailiffs, prosecutors, or lawyers".*

8.  It is forced to conclude that, by virtue of the words of the Chief Justice of the Federal Court, it is a ministerial duty, which admits no excuses, to make structural changes to eradicate corruption and, therefore, its aspects such as JUDICIAL CORRUPTION[4], taking for certain that there is indeed a serious corruption problem[5] in Puerto Rico. The Island of Terror due to rampant corruption! Likewise, from Title VII of PROMESA and in light of the "INTENT OF THE U.S. CONGRESS" of the Sec. 701, a ministerial duty arises, which admits of no excuses, regarding permanent fiscal reforms for economic growth and their unsuspected scope. This means that the 'SENSE OF CONGRESS' of the Sec. 701 the PROMESA also contains a final Title VII, with a single section, <u>which seems very "GENERAL AND AMBIGUOUS"</u>, but which, in detailed analysis, by experts, may be a threshold <u>of hope for the solution of other problems that affect the economy, health and SECURITY of the Town.</u> Said Title VII literally provides: TITLE VII SENSE OF CONGRESS REGARDING PERMANENT, PRO-GROWTH FISCAL REFORMS **SEC. 701.** SENSE OF CONGRESS REGARDING PERMANENT, PRO-GROWTH FISCAL REFORMS. It is the sense of the Congress that any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms that feature, among other elements, a free flow of capital between possessions of the United States and the rest of the United States. In what is pertinent, we quote *ad verbatim* the words of the Prof. Emmanuelli[6] (2016):

> *"The 'sense of Congress' of Section 701 should be read as an intention or legislative opinion regarding the type of general reforms that they understand should be implemented in Puerto Rico, but a specific legislative will is not expressed regarding what this specifically translates to. It should be noted that the text of the law does not even include the business zones that Representative MacArthur mentioned in Committee. The Section's language allows for a wide margin of discretion and interpretation based on this scant information. Therefore, there is no guarantee that it will serve as a binding criterion when determining the fiscal measures to be implemented, since it will depend on the interpretation given by the officials related to the Law, particularly the Supervisory Board".*

9.  This is where the "ambiguity and generality" of the aforementioned "SENSE OF CONGRESS" of PROMESA, supra, and the defiance launched by the Chief Justice begin to merge. But was it not from the shadows of the First (1st), Third (3rd) and Fifth (5th) Amendments that the right to privacy emerged? *Griswold v. Connecticut*, 381 U.S. 479 (1965). It is a maxim of constitutional law that the right to privacy was implicit in the provisions of the Federal Act, and that it was by judicial fiat and precedent (stare dice) that it was given form, content and expression to what we know today as a right of the highest constitutional rank.

---

[4]The San Diego Union-Tribune, News of May 29, 2014: "FBI arrests first Puerto Rican judge for corruption", https://www.sandiegouniontribune.com/en-espanol/sdhoy-el-fbi-detiene-a-juez-puer torriqueno-por-2014may29-story.html
[5]Reuters, News of August 29, 2019, "Trump califica a Puerto Rico de "corrupto" mientras el huracán Dorian" se dirige a la isla, https://www.reuters.com/article/clima-dorian-idESKCN1V J0CO
[6]Id, Emmanuelli-Jiménez, Prof., supra.

4

The present case sets a very ominous precedent in the "Rama Judicial Puerto Rico" and, in effect, we PLEAD those with jurisdiction over PROMESA to convert said legislation into a threshold of RELEASE FOR ALL HOSTAGES, beginning with the order of RELEASE OF LEO, from the courts of justice, which are so in name only.  PLEASE, FREE LEO!

10. Certainly, it is impossible to achieve the economic restructuring that has been so much sought after without addressing the serious and real problem of the «JUDICIAL CORRUPTION», at the expense of a people crushed by the effects of corruption, misgovernment, poverty, unemployment, and - most recently - a global pandemic.  *In re Jackson Sanabria*, 97 DPR 1 (1969). *Feliciano Rosado v. Matos*, 110 DPR 550 (1981). *In re Hernández Enríquez*, 115 DPR 472 (1984). *In Re Miranda Rivera*, 141 DPR 94 (1996). *In re Martínez*, 151 DPR 519 (2000). *In re Castro Colón*, 155 DPR 110 (2001). *In re López Morales*, 184 DPR 334 (2012). *In re Aprob. Rs. y Com. Esp. Ind.*, 184 DPR 575 (2012). *In re Acevedo Hernández*, 194 DPR 344 (2015). *Pueblo v. Acevedo López*, 195 DPR 357 (2016). *In re Benero García*, 2019 TSPR 82 .

11. Having said the foregoing, the Movant respectfully submits, alleges and requests bringing to the attention of the Federal Court, and those having jurisdiction over PROMESA, the following issues:

   a. In an order issued on March 24, 2022, in No. 3:17-bk-03283-LTS (D.P.R.), the district court certified pursuant to 28 U.S.C. Section 1915(a)(3) and Fed. Application R. P. 24(a)(3)(A) that this appeal was not taken in good faith.  Accordingly, Ms. Feliciano Rosado was ordered to pay the $505.00 filing fee to the district court or file a motion in this court pursuant to Fed. Application R. Pg. 24(a)(5). Failure to take any of these steps will result in dismissal of the action for failure to prosecute (1st Circuit. R.3.0(b)), per the order of the United States Court of Appeals for the First Circuit dated May 11, 2011. By declaring myself a litigant lacking in good faith and, in effect, not granting the exemption from the filing fee, the idea that the claim of Ms. Feliciano Rosado was a right protected under PROMESA is rejected, in what pertains to the freedom of the minor L.A.R.F.

   b. Put to the sack, the Claimant-Appellant Feliciano was denied the exemption of the payment of $505.00, notwithstanding his economic inability to cover the costs associated with an appeal litigation, due to not having recurring income. (See Annexes 2021, Tax Year 2021; See Annexes 2022, March 2022 Check Stub).  In addition, due to their economic condition, requiring the Complaint-Appellant to liquidate their few assets to file their claim would be excessively onerous and contrary to the principle of access to justice. The fact that he wants to exercise his real right to appeal does not imply that he has the financial capacity to file the fees and initiate his cause of action. *Board of Regents v. Roth*, 408 U.S. 564 (1972).

   c. Furthermore, Mrs. Feliciano Rosado does not own a motor vehicle. It turns out that the $1,000 that she was confined to pay as a condition sine qua non of her freedom, and that was quietly consigned in favor of the evader-aggressor, by way of child support payment, by virtue of her 2nd illegal and unjust incarceration (from February 15 to 21, 2017), she managed to obtain with the sale of her car, back in February 2017.

5

Moreover, she relies on car rental to get to the Federal Court, on Chardon Street in San Juan.

d.  There is no bad faith on the Movant party.  However, since I filed the Notice Appeal on March 15, 2022, in the District Court, suddenly and surprisingly, I was ordered to translate the Reply into English that I filed on May 2, 2022 as a sine qua non requirement for its adjudication (See Exhibits 2022, "The Motion is denied without prejudice to renewal in English dated May 5, 2011, without dateline and postmarked by the United States Post Office", dated May 5, 2022). This fact is worrying since PROMESA created an *ad hoc* rule of law that allows the parties, among other advantages, to have access to each of the notifications of the federal court and the Board both in Spanish and in English, which implies the freedom of those to respond in the language they best command.  Furthermore, the original Proof of Claim in this class action was drafted in both languages (bilingual).  In this context, Ms. Feliciano-Rosado has read and responded to said notifications and motions, with voluminous evidence attached as annexes, in her native language: Spanish, since she joined PROMESA in 2018.  Surprisingly, she is ordered translate your writings into English.

e.  As a matter of fact, back in 2012-2014, Ms. Feliciano Rosado filed an action in her own right in this Federal Court under the Federal Civil Rights Act, 42 USCS § 1983, which was dismissed, among other reasons, because of her insolvency to defray the costs of litigation. Gutierrez v. Cartagena, 882 F.2d 553 (1989). Leyva et al. v. Aristud et al., 132 DPR 489 (1993). History of: 32 L.P.R.A. § 3085. (Suits against officers and employees of the E.L.A., Special Legal Proceedings Act, Puerto Rico Code of Civil Procedure).  As a result, she was forced to incur in expenses for the translation of pleadings and evidence into English (See Annexes).  At that time, she was financially supported by her nuclear family.  Precisely the 2011, 2014 and 2013 Annexes that were translated into English, by then, are the ones that Movant is submitting today, attached to this motion.

f.  Movant brings to the attention of this district court and those with jurisdiction over PROMESA, the HIDDEN TRANSFER OF THE MOTION CASE RECORD. Just yesterday morning, a certified translator delivered to this court 14 orders translated into English (See Exhibits 2022, Invoice-Adjusted Price $380.00, May 24, 2022,), selectively chosen as prima facie evidence of the pattern of malicious concealment by the trial courts of Mayagüez and Humacao of the whereabouts of the child, back in August 2015, and which is evidenced by the late notifications of the TRANSFER of the record of the instant case. That is, three years later (See Annexes 2015, from August 31 to October 2015). And compare this with the transfer of the same since February 23, 2017, by way of a cover-up and plot by the judges involved. Failing that, the 14 orders alluded to are part of the voluminous evidence that was already admitted in the Spanish language, by virtue of the Rebuttals previously interposed by Movant.  Thus, the translation into English of the other attachments submitted by Movant under PROMESA would not only be impossible due to the high costs of the service, but would constitute cumulative evidence.

g. Currently, Mrs. Feliciano-Rosado is fighting alone to get her son back. Thanks to the spiritual support of a group of prayer warriors, she has received some financial support from them. In her effort to comply with the order in that regard, and despite her indigent condition (See Attachments, S.R.M. Check Book of April 2022), the Movant is using her credit cards to cover the litigation expenses.

## B. FRAMING THE CASE IN THE PROMISE:

12. Certainly, it is impossible to achieve the economic restructuring that has been so much sought after without addressing the serious and real problem of the «JUDICIAL CORRUPTION», at the expense of a people crushed by the effects of corruption, misgovernment, poverty, unemployment, and - most recently - a global pandemic. *In re Jackson Sanabria*, 97 DPR 1 (1969). *Feliciano Rosado v. Matos*, 110 DPR 550 (1981). *In re Hernández Enríquez*, 115 DPR 472 (1984). *In Re Miranda Rivera*, 141 DPR 94 (1996). *In re Martínez*, 151 DPR 519 (2000). *In re Castro Colón*, 155 DPR 110 (2001). *In re López Morales*, 184 DPR 334 (2012). *In re Aprob. Rs. y Com. Esp. Ind.*, 184 DPR 575 (2012). *In re Acevedo Hernández*, 194 DPR 344 (2015). *Pueblo v. Acevedo López*, 195 DPR 357 (2016). *In re Benero García*, 2019 TSPR 82 .

13. This atypical case makes it necessary for this Federal Court and the Board to reevaluate the standards of redress of grievances established to give an important structural contribution to the justice system and the "Rama Judicial de Puerto Rico" which, finally, is also REHENN of the internal criminal groups, what we call the MAFIA, since the courts have their own mafias that derail the processes and establish the "Reign of Terror". Victims have nowhere to go! Everyone is afraid! In fact, my son and I were represented by 7 lawyers, by succession or jointly, who betrayed us, each one in his own way, according to the record of the case. This case is the lawyers' hot potato. The tragedy that followed these events is still being paid for by these genuine victims: the mother and her son, due to the spiral of escalating violence by the State. Since "*VIOLENCE BY THE STATE INCLUDES BOTH THAT WHICH PERPETRATES AND THAT WHICH TOLERATES*". Diana Valle Ferrer, PhD. (2012). *Town of Castle Rock v. Jessica Gonzales*, 545 US 748 (2005). *Jessica Gonzales v. United States*, REPORT No. 80/11, CASE 12.626, merits, 2011. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013). *Leyva y vs. Aristud*, 132 DPR 489 (1993). *Gutierrez v. Cartagena*, 882 F.2d 553 (1989).

14. Add to the above, the Sec. 205 of PROMESA. Which is why the Movant part draws the attention of the Federal Court to Title II. Board Responsibility, Sec. 205, of the PROMESA, since it authorizes the Board, subject to its total discretion, to intervene in "*the effects of the laws and JUDICIAL ORDERS of the territory in the operations of the territorial government*." Among other things, the Board has the inherent POWER to intervene in cases that are unrelated to this original lawsuit, and *"to make structural changes in the Puerto Rican legal system" (Prof. Emmanuelli Jiménez (2016)[7]. Add to the above that the Board's mission is to work with

---

[7]Emmanuelli Jiménez, Lcdo. Rolando, J.D., LL.M.i, Title VII of PROMESA – The intention of Congress regarding permanent fiscal reforms for economic growth: Final reflections on the Law and its effects in Puerto Rico MICROJURIS.COM (November 14, 2016). pr.microjuris.com/noticias/noticia/titulo-vii-de-promesa-la-intencion-del-congreso-en-cuanto-a-

the people and government of Puerto Rico to create the foundation for sustainable economic growth and restore opportunity for the people of Puerto Rico.

   a. In addition, Sec. 301(a) of PROMESA limits claims against the State to the following. Now the Government cannot be sued, which means double impunity for the kidnapping judges and their accomplices by action, omission, or cover-up. The referred Title III of PROMESA provides in its Section 301(a) the application, among others, of Sections 362 and 922 of Title 11 of the Federal Bankruptcy Code. Thus, the filing of the bankruptcy petition has the immediate and direct "effect of paralyzing" [AUTOMATIC STAYS] any civil action that any natural or legal person has initiated, attempts to continue or from which they request the payment of a judgment against the Government of Puerto Rico and its instrumentalities, while bankruptcy proceedings are pending before the federal court. 11 USC seconds. 362(a), 922(a); 48 USC sec. 2161(a). *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 491 (2010); *Morales v. Clínica Femenina de P.R.*, 135 DPR 810, 820 (1994).

   b. It is unavoidable, for the purpose at hand, the power of PROMESA that emanates from Article IV, Sec. 3 of the Federal Constitution. Eagerly expecting to find justice, the Movants with the purpose of framing his cause of action within the guarantees of the PROMESA Law and its BOARD, whose powers are so broad, since "Puerto Rico is not a sovereign, but under the constitutional scheme of the United States it is a territory subject to the power of the territorial clause of Art. IV, Sec. 3 of the Federal Constitution", *People v. Sanchez*, 193 DPR 594 (2020). *Commonwealth of Puerto Rico v. Franklin California Tax-Free Trust*, Et Al., 136 S. Ct. 1938 (2016); *Puerto Rico vs. Sanchez Valle*, 136 S. Ct. 1863 (2016). *So that those who have jurisdiction over PROMESA, recognize in this complex legal controversy that involves the life, liberty and property of the minor L.A.R.F., it only represents "some of the questions that require to be addressed in this NOVEL LEGAL AND POLITICAL FRAMEWORK WHICH HAS UNSUSPECTED EFFECTS on the political organization of the territory, the rights, and the lives of millions of American citizens residing in Puerto Rico." *Perez Diaz v. ALS*, et al, 2017TA1870. Especially when "the domain of the Board is in all the INCIDENTAL POWERS that it has to achieve balanced budgets and that Puerto Rico improve its fiscal situation." Therefore, such sovereignty "CANNOT BE REDUCED TO A NEGOTIATION BETWEEN CREDITORS AND DEBTORS," supra, when there are other larger problems that destroy the People of Puerto Rico, and where relevant we quote: "*Pursuant to section 212, the PROMESA, the Board may also intervene in any litigation filed against the territorial government and request cease and desist orders, including stay of proceedings*". (Prof. Emmanuelli Jiménez).

15. There are other voices crying out for HELP AND JUSTICE. Namely, the cries of CHILDREN, the most vulnerable legal subjects of society, and that in the courts, with increasing frequency, are SACRIFICED to the god MOLOCH![8] of the egoism of the powerful and untouchables of the country, on the altar of the interest of power and money, whose ardent fire of corrupted

---

las-reformas-fiscales-permanentes-de-crecimiento-economico-reflexiones-finales-sobre-la-ley-y-sus-efectos-en-puerto-rico

[8]Ramos Jonathan, Historiador, Documental: ¡ABOMINACIÓN! SACRIFICIO de NIÑOS en la antigüedad [AB0RT0]. https://www.youtube.com/watch?v=NQ_KoYHEqn4

honor silences their screams and the cries of the CHILDREN and their «MOTHERS», the new bad word of «GENDER IDEOLOGY»[9], with frightful cruelty, even though it develops in the purest and diaphanous legality. The «SATANIC TRINITY» lives on! It is embodied in spirit and action in the GENDER IDEOLOGY and its corollaries, such as «JOINT CUSTODY», mercilessly destroying the most sacred ties to the human heart: the mother-child relationship. A MOTHER'S LOVE IS THE MOST SUBLIME MANIFESTATION OF ABDENATION ON EARTH. CHRIST "WAS" AND "IS" THE SELF-SCRIBING IN PERSON. *"All who follow CHRIST will wear the crown of SACRIFICE. Satan will combat the principle of SELF-SERVICE wherever it manifests itself"*[10]. War against MOTHER is war against «CHRIST»! Thus, the war against the MOTHER is a war against RELIGIOUS LIBERTY, *"this violates the "most sacred and value-laden right: freedom of conscience, which is the most intimate spiritual voice of the human being" Pueblo Int'l., Inc.v. srio. of Justice*, 123 DPR 179 (1989). Regarding this, Ellen White said:

> *The king on his throne has no work superior to that of the «MOTHER». This is the queen of his family. It is up to her to model the character of her children, so that they are suitable for the superior and immortal life. An angel could not ask for a higher mission; because while he performs this work the MOTHER «IS SERVING GOD»".*

16. This bad practice of wanting to control thought, today takes on a dangerous profile with this Marxist-style predictive language, which in advance provides the judge with a legal basis for attacking the personal and religious convictions of citizens.

## C. THE CORE ISSUE

17. The core issue of the present controversy, which is complicated in its simplicity, since it is no longer a case but a cause of LIBERATION AND HUMAN RIGHTS, so provocative that it causes a "shock" to the conscience of the Puerto Rican People by reflecting a seriousness that violently disrupts the pillars of integrity and justice of our «MAGISTRACY», regarding the verification of the appalling cruelty that they still unjustifiably keep the minor L.A.R.F., today youth-adolescent, as hostage, for EXPLOITATION FOR PURPOSES OF INVOLUNTARY SERVITUDE FOR THE DEBT OF OTHERS[11], OF DEBT AGAINST HIS "MOTHER" FOR CHILD SUPPORT, THAT ARISES FROM AN INVENTED SENTENCE THAT IS IMPOSSIBLE TO REPEAL, FOR A NEW MODALITY OF CHILD TRAFFICKING IN THE TERRITORY OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO (HEREINAFTER CHILD TRAFFICKING OR HUMAN TRAFFICKING FOR CHILD

---

[9]Huxley, Aldous. Future Novel: Brave New World (in Spanish is "Un Mundo Feliz") (1932). Predictions of the future? (Audio-summary). https://www.youtube.com/watch?v=SwdWpVq72Qs
[10]White, Helen, The Desire of Ages, Pacific Press, Avenida Doral, Miami, E.U., p. 144.

[11]In *U.S. v. Kozminski*, 487 U.S. 931, 101 L. Ed. 2d 788 (1988), the US Supreme Court, in evaluating the legislation passed by Congress to enforce the Thirteenth Amendment, held that the term "INVOLUNTARY SERVITUDE" meant that condition in which the victim is forced to work for the defendant through the use or threat of imprisonment, physical punishment, or legal coercion.

SUPPORT (EXPLOITED FOR PROFIT), which is quite difficult to stop. This is because, among other things, the International Convention for the Protection of All Persons from Enforced Disappearances (ICPPED), and other international instruments, were not designed to deal with this type of case. This action constitutes a clear involuntary servitude prohibited by our constitution, with a dire consequence against the freedom of a citizen in a democracy. *Children* are considered to be *exploited* whenever a profit is made from their vulnerability and lack of power, whenever *children* are abused to somebody else's [...].

18. In response to the above, the "Resilience Fund Supporting Community Responses to Organized Crime" , in its discussion of August 28, 2020, entitled: ENFORCED DISAPPEARANCES: WHO IS THE TRUE PERPETRATOR?", warns about the limitations and disarticulations of ICPPED to protect victims in scenarios where CRIMINAL GOVERNANCE continues to grow, and in pertinent we quote:

"Contemporary forms of DISAPPEARANCES around the world increasingly show the relevance of reviewing how we understand the role played by non-state actors and, in particular, organized criminal groups in these acts."

"International law and its instruments recognize ENFORCED DISAPPEARANCES through State involvement; even so, the international community can generally hold States accountable, *but only if these enforced disappearances are proven."

"The fact that the authorities, as the probable perpetrators, are the ones who have to prove these crimes, makes numerous cases [...] difficult to categorize as ENFORCED DISAPPEARANCES. The number of missing persons in these contexts of CRIMINAL GOVERNMENT continues to grow, at the same time that the resources available for the protection of these victims diminish."

"The emphasis on state involvement fails to take into account the myriad of criminal contexts in which most disappearances occur, from illicit drug trafficking to human trafficking."

"More than 330 grant applications from 67 countries represented THE VARIETY OF CONTEXTS that allow disappearances to occur. From the disappearance of indigenous leaders and the kidnapping of migrants for profit to CHILD THEFT FOR TRAFFICKING, these contexts come in different shades and often appear disjointed from the definitions contained in international instruments." Id.

19. There is no doubt that these facts configure the elements of Article 159 INVOLUNTARY SERVITUDE OR SLAVERY, of the New Penal Code 2012, which was repealed by Senate Bill 1685 amending the Penal Code 2012 (Provide copy of the amendment), signed as Law 159-2020 of December 28, 2020 in the 7th Extraordinary Session, effective immediately. Inasmuch as the minor is arbitrarily deprived of his liberty within the spirit of local laws and international conventions applicable to the crime against humanity of ABDUCTION, counted from December 14, 2011, with his eventual FORCED DISAPPEARANCE, counted from May 13, 2013 until today. *And, which, as recently as March 2017 is being financed and, in effect, perpetuated with the discounting of the alleged mother-feeder's monthly SRM retirement pensions, which is confiscatory and illegal. This means that the Administration for the Support

of Minors (ASUME) is sending the money payments, with the method of direct payment of alimony, allegedly in favor of the minor L.A.R.F., to an "UNKNOWN PARADERO" outside the E.L.A. and its territories (2017-2022), with the concomitant concealment of the whereabouts of the latter, thus subtracting her from the law and following a pattern of organized crime , Pueblo v. Meliá, 143 DPR 708 (1997), with Judge Mariluz Cruz Morales of the Humacao Court.

20. This is where, concretely, "TRAFFICKING" and "CRIME ORGANIZATION" begin to merge, since the cruel and arbitrary refusal of the ASUME to reveal to his "MOTHER" the place where they are sending the child support money to her son, which also implies the place where they are hiding him from her with the direct support of State agents, to keep him in silent and invisible captivity in perpetuity, in the form of FORCED DISAPPEARANCE for the TRAFFICKING OF MINORS through the exploitation of their vulnerability and dependence as minors.

21. Consistent with the foregoing, from the standpoint of the conducts typified by the Organized Crime and Money Laundering Act of the Commonwealth of Puerto Rico, 25 L.P.R.A. sec. 971 et seq. "for a pattern of organized crime activity to be configured, at least two (2) acts of organized crime activity, performed within a period of ten (10) years, are required." Pueblo v. Meliá León, 143 DPR 708 (1997).

22. In this context, the A.S.U.M.E. is setting a very sinister precedent of complicity in the crime against humanity of FORCED DISMISSAL OF MINOR L.A.R.F. Faced with the non-payment of child support, the courts and the A.S.U.M.E. have acted as if they had before them the case of an inveterate debtor "MOTHER"; who runs away from such obligation of successive tract. They demonized Mrs. Feliciano Rosado to appease the conscience of the employees, officers or agents, whose culpable or negligent actions make them liable for action, omission or concealment, Leyva vs. Aristud, 132 DPR 489 (1993), for acts that caused harm or endangered the physical, mental and emotional health and integrity of her child (2011-2022), and thus rationalize the criminal consequence of incarcerating her, as set forth in the willful offense of breach of maintenance obligation of Art. 117, Penal Code 2012, 33 L.P.R.A. §5176, in situations where, ordinarily, it would be appropriate to impose it. When the present case IS NOT an ordinary case, but a very fierce MAFIOUS POWER WAR!

23. *Let it now come before this Federal Court to RELEASE MY SON LEO NOW, ordering the criminal group of honor kidnappers their immediate removal to the territory of the Commonwealth of Puerto Rico, before the Fiscal Oversight Board leaves Puerto Rico. Especially when U.S. Congressman Ritchie Torres, along with his colleagues, as recently as April 8, 2022, introduced new bipartisan legislation proposing a process for the abolition of the Fiscal Oversight Board, known as the "TRUST for Puerto Rico Act of 2022" (HR 7409), and, in effect, we will once again be left helpless and at the mercy of a "CORRUPT" government.

### D. CLAIM TRACT UNDER PROMESA

24. Failing the above, on April 27, 2018, Ms. Feliciano Rosado delivered the "Proof of Claim" in person at the Añasco, Puerto Rico (See Annexes 2018, April 27, 2018), Delivery Center of the

11

Bianca Building, which question #6 reads as follows: Do you have a claim against any specific agency or department of the Commonwealth of Puerto Rico? <u>To which Mrs. Feliciano Rosado answered: THE MAYAGÜEZ COURT FOR STEALING MY CHILD FROM ME SINCE DECEMBER 14, 2011</u>. This means that from the beginning it was Ms. Feliciano Rosado's intention to bring to this class action case of **«LIBERATION OF MINOR L.A.R.F.»**, although, in questions 9 and 10, she highlighted as the basis of her claim the "Return of fees illegally withheld" (See question 9), for "Withholding against my will." (See question 10) (See Annexes 2018), against **The Teachers' Federation of Puerto Rico** (hereinafter Federation). Add that in question #13 it was specified that the amount owed by the **Puerto Rico Teachers Association** (hereinafter Association) was not known exactly[12].

25. It should be noted at this point that Ms. Feliciano-Rosado also presented the pertinent evidence on the same day that she submitted the Proof of Claim, that is, on April 27, 2018 (See Annexes, 2018). The deadline to make claims of the "creditors" of any of the "debtor" or "debtors" of the Commonwealth of Puerto Rico, under section 304(a) of PROMESA, initiating under Title III cases under PROMESA (each, a "Debtor" and collectively, the "Debtors"), <u>was dated May 29, 2018</u>. In pertinent part, we quote from the order of February 15, 2018 issued by the Federal Court with the title "NOTICE OF DEADLINES FOR THE FILING OF PROOFS OF CLAIM", and which was sent to the potential debtors, Section 1 "The Bar Dates", subsection (a) "General Bar Day", which reads as follows:

"4:00 p.m. (Atlantic Standard Time) on <u>May 29, 2018</u>, is the deadline (the "General Bar Date") for filing proofs of claim (as defined in Bankruptcy Code 101(5)), against the Debtors on account of (i) claims arising, or deemed to have arisen, prior to the respective commencement dates for their Title III Cases, including, for the avoidance of doubt, bond claims and claims arising under Bankruptcy Code section 503(b)(9) , and (ii) claims, asserted by governmental units (as defined in Bankruptcy Code section 101(27))"…

<u>*The date of May 29, 2018 constitutes an essential fact in the case in question.</u>

26. Years passed, on October 4, 2021, she personally delivered the «VOTING BALLOT» in the center of Añasco, Puerto Rico (See Annexes 2021), documents referred to with a red puncher that reads **COPY**, 4/Oct./2021). In addition, the Movant also presented additional and voluminous evidence that inevitably goes back to the facts of the case in question, to the causes of his premature and forced retirement, since the aggressor entity that subverted the authority against the victims (the mother and her son) is the State itself, in the exercise of its judicial function.

27. Even so, those who have jurisdiction over PROMESA dismissed Ms. Feliciano-Rosado's claim on the basis that we cited *ad verbatim*: "<u>Treatment: Claim to be Disallowed. Reason: *Proof of claim was not timely filled, as claimant filled the claim after the applicable deadline set by the Bar Date Orders. Asserted Claim Amount $0.00</u>". (See Annexes 2022, document entitled "If your Claim is Listed Here, One Or More of the Debtors Are seeking to Disallow Your Claim for the Reason Listed Below", with a copy of the envelope postmarked by the mail of 9

---

[12]Amadeol-Murga, Antonio J., The value of damages in civil liability, 2dn Edition (2012).

February 2022). It turns out that the Court had sent a card with an acknowledgment of receipt entitled: "PRIME CLERK RECEIVED YOUR PROOF OF CLAIM", dated November 5, 2021. This proof of receipt card is irrefutable proof that the evidence did reach the hands of those who have jurisdiction over PROMESA within the established period. (See Annexes 2021, of November 5, Prime Clerk Received Your Proof of Claim, Date Filed: 10/189/2021, Proof of Claim 179662).

28. The petitioner has always been prevented from setting a specific amount for the claim, because she was never informed of the exact amount owed to her by the Federation for the fees illegally withheld, counting from August 1999 to May 2007, approximately. It should be noted that from June 2007 to December 2010, Ms. Feliciano-Rosado was studying Law under three (3) unpaid leaves of absence for studies granted by the D.E. On the other hand, the Association also did not fulfill its promise to pay back, with accrued interest, for the fees illegally withheld after having prevailed in court against the Federation in a class action lawsuit. Such a promise was the main reason for Ms. Feliciano-Rosado to affiliate with the Association in August 2011, and under the promise that it would free her from the yoke of compulsory membership of the Federation.

29. In effect, the debt for the refund of fees illegally withheld against the D.E., the government entity that finally made the corresponding payments to the teachers of Puerto Rico, by virtue of the class action lawsuit in that sense, constitutes the original cause by which Ms. Feliciano-Rosado entered the PROMESA class action, 48 USC secs. 2101 et seq, as of April 27, 2018. But it is also true that from the beginning the petitioner brought the KIDNAPPING OF HER SON, perpetrated by State agents, to the attention of the that have jurisdiction over PROMESA (See "Proof of Claim, Modified Official Form 410"). Especially when the Association refused to return the money that corresponded to her as a punishment mechanism for her sudden disaffiliation, back in 2012, and just in the period in which the payments in question were made.

30. Thus, both the Association and the D.E. ruthlessly denied Ms. Feliciano-Rosado the payments that corresponded to her. This even when the *prima facie* evidence establishes that she was affiliated with the first and was listed as an employee of the second, during the scheduling period when the collective action against the Federation was carried out (See Annexes). Therefore, the Association received from the Secretary of the Treasury the amount of the affiliation premiums by discounting the payment of the monthly check of Mrs. Feliciano Rosado.

31. In this way, the Association totally disregarded the chaotic situation that Mrs. Feliciano was facing, consisting of the "ILLEGAL SEIZURE OF HER SON" from the maternity home, in unison with his first (1st) illegal and unjust incarceration, which is nerve-wracking (from 14 as of December 23, 2011) (See Annexes). Failing the foregoing, the petitioner's request to disaffiliate the Association was not due to frivolity or disloyalty, but rather due to sudden insolvency. The mediate cause for the disaffiliation and forced retirement of Ms. Feliciano-Rosado was «THE STOLEN OF YOUR CHILD».

Case:17-03283-LTS Doc#:21065 Filed:05/26/22 Entered:05/31/22 13:33:23 Desc: Main
Document Page 16 of 21
Case:17-03283-LTS-Date 05/26/22- REPLY AND MOTION IN COMPLIANCE WITH ORDER

Page 1 of 19

32. Certainly, «THE HOSTAGE TAKING OF THE MINOR L.A.F.R.» on the part of the State removed Ms. Feliciano Rosado from her career, forcing her to leave her job and salary to retire forced and prematurely due to health problems. In effect, the loss of the son's company and affection caused consequential damages and lost profits. In addition to the non-pecuniary damages caused to both victims, consisting of the traumas of separation from the mother figure, the physical suffering, the mental anguish and the disabilities that have occurred (ensue) during the last 10 years, without knowing anything about each other. Especially when L.A.R.F. was diagnosed with Attention-Deficit Hyperactivity Disorder or ADHD when he was a child, which made him and makes him more vulnerable than his peer group. In addition to the economic damage caused to the minor, now a young teenager, consisting of the loss of her child support that has gone into the hands of others, because of the Child Support Order dating back to the irretrievably null and void proceedings of December 14, 20 and 21, 2011. (See Annexes 2011). Said Child Support Order arises from the **INVENTED SENTENCE** of 90 days of COMMUNITY SERVICES of September 7, 2011 (See Annexes 2011), illegally extrapolated from the 2004 Penal Code, 33 L.P.R.A. sec. 4677, Law 149 of June 18, 2004, then in force, and, therefore, does NOT exist in Puerto Rican Law to family civil cases such as the present case. It is null *ab initio*! Invented sentences are in fashion in the courts of Puerto Rico, whose judicial infallibility is upheld as much as papal infallibility was upheld at the time of the bonfires. *In re Díaz Olivo*, 2019 TSPR 205, In re Díaz Olivo, 2020TSPR79.

### E. CHILD TRAFFICKING FOR CHILD SUPPORT

33. "I AM ASHAMED OF THE LAW OF MY COUNTRY!" declared Lord Dedman in 1836, the Chief Justice of the King's Bench of England, in the face of the LEGAL MONSTRUOSITY produced by *King v. Greenhill* (1836), as it had a similar result to the instant case, and we quote:
   "[Its] effect was to reward the adulterer for repudiating the wife and dissolving the marriage after a unilateral divorce without more, by "permitting the father to deprive[a] his wife, young and virtuous, of the custody of his children, and to place them in the care of a woman with whom he was living in concubinage [...]. Said case, moved the alluded judge to exclaim that "he believed that there was not a single judge who had not been ashamed of the state of the law, and that the same was such as TO MAKE IT HATEFUL IN THE EYES OF THE COUNTRY". *Llopart v. Mesorana*, 49 DPR 250 (1935).

34. The same happens with JOINT CUSTODY. Under this totalitarian regime, based on the utopian ideology of "*dreams are dreams*" (Rebollo López, Ex parte Torres Ojeda, 118 DPR 469 (1987), women are forced to be men by bearing the burden and sweat of the male provider's brow, and then punished for succeeding at it[13]. Embarrassingly, the State continues to force mothers to take on male roles, incarcerating more women allegedly for child-support debt, in an institutional «**FEMINICIDE**»[14] that is one of the country's biggest mistakes. It has been

---

13

[14]Russell Diana, initial promoter of the concept of "FEMINICIDE", explained that "femicide represents the extreme end of a continuum of anti-female terror that includes a wide variety of verbal and physical abuses, such as rape, TORTURE, sexual slavery (particularly prostitution), incestuous or extra-familial child sexual abuse, physical and emotional beatings, among others".

shown that "*incarceration is more harmful to women than to men because of the harm suffered by children when their [...] mothers are sent to prison*"[15] . The man is effeminized in his role as provider, assigned by nature, and made to expect the woman to support him legitimately while he goes off with another.

35. The present case, a tragedy worthy of lamentation, makes odious in the eyes of the country the recent legislation of JOINT CUSTODY, which was integrated to the Civil Code 2020 of Puerto Rico in Arts. 601-606. The *egalitarian* vigilantes (Axel Kaiser (2016), meaning court officials and agents of the state, already given to dogmatic and oppressive obedience because of their devotion to the State, had already been giving JOINT CUSTODY its combative nature by besieging the MOTHERS by *judicial fiat* since the case Ex parte Torres Ojeda, 118 DPR 469 (1987).
As well as attacking the roles of men and women, lashing out with special viciousness against the preferential role of the «MOTHER», "*this violates the "most sacred and value-laden right: freedom of conscience, which is the most intimate spiritual voice of the human being*" Pueblo Int'l., Inc.v. srio. of Justice, 123 DPR 179 (1989).

36. Thereafter, this communal regime was converted into legislation under Act No. 223 of November 21, 2011 (Act 223-2011), known as the Act Protecting the Rights of Minors in the Custody Adjudication Process (32 LPRA secs. 3181-3188), and now moves up in the body of laws of the New Civil Code 2020, as previously stated. Its counterpart law are Secs. 19 and 21 OF REGULATION 8529 of October 30, 2014, as amended, formerly Regulation 7135 of April 24, 2006, of the Mandatory Guidelines for Computing Child Support in Puerto Rico, of the Organic Law of the Administration for the Support of Children (ASUME by its acronym in Spanish), which emanates from Law No. 5 of December 30, 1986, as amended, 8 L.P.R.A. sec. 501 et seq, which also imposes *de jure* joint custody and *de facto* confinement and entrapment. For this reason, we call these two (2) laws the "PREDATORY BINOMIAL OF JOINT CUSTODY", which present a dignified image of the reckless evaders, not infrequently aggressors, so that they are exempted from the maintenance obligation, this being the main purpose, not "*the best welfare and interest of the minor*". Children pay with their own LIFE for the macabre experiment of JOINT CUSTODY. Despite the alarming cases of CHILDREN WHO ARE TAKEN FROM THEIR MOTHERS by the macabre experiment of Gender Ideology, there is no obvious sense of urgency surrounding these tragedies.

37. Said legislation, by either of its two (2) ways, revives the old and discredited **class struggle of Marxism**, accommodated to the practical and scientific in the conquest of power (Hegel's dilemma[16]).    Consequently, it deepens the inequality of men and his «**MACHISTA**

---

Several countries have included it as a crime in their criminal legislation, with variations in the penal type. The word was included in the Dictionary of the Spanish language in 2014. Wikipedia.
[15]Opinion of the European Economic and Social Committee on "Women and poverty in the European Union (2006/C 24/18) (31.1.2006), 28 April 2005.
[16]Armando de la Torre, Dr., a former Marxist and Jesuit who gave for many years the course of Marxism-Leninism for 20 years using the first (1st) Spanish translation of Marx's Communist Manifesto (1892), and abdicated on the understanding that his devotion was worthy of a better

**TERRORISM»**[17] against women, extending post-divorce domestic violence, and within the same framework of the law.  Emboldened in their hedonistic selfishness, the evaders of the child-support embrace the parasitic maxim *"from each according to his capacity, to each according to his needs"*, as a call to INVOLUNTARY SERVANTSHIP and the TRAFFICKING OF MINORS for the exploitation of their right to life in its corollary of receiving food (Art. 653 of the Civil Code 2020).

38. *Now the class struggle is between the woman-victim and the man-victimizer under the pretext of "equality".  A discourse that is *"profitable as it promises benefits to people and exploits envy by resorting to class hatred"* (Axel Kaiser (2016).  The woman is envied by her partner after achieving success in the workplace and is punished for it[18], TAKING AWAY HER CHILDREN, or counteracting the scope of her influence in parenting relationships. We are facing an old discourse of Marxism-Leninism that is *"profitable because it promises benefits to people and exploits envy by resorting to class hatred"* (Axel Kaiser (2016).

39. Therefore, and we quote: "It is decreed that it is the public policy of the Government of Puerto Rico to promote shared custody and CO-RESPONSIBILITY over children; the consideration of the same as FIRST ALTERNATIVE in the cases that adjust to the best well-being of the minor; and promoting the active participation of both parents in the children's activities, to the greatest extent possible".  However, if a minor only spends the night in the home of one of the parents, JOINT CUSTODY will be granted if the other parent is related extensively and to the greatest degree possible with the minor and responsibly performs all the functions that as a parent are incumbent on him and the parental authority imposes on him. *Santiago Guzman v. Harlequin Albino*, 2020TA150. As pertinent, we add:

> *"On the other hand, shared physical custody, presumptive or imposed, can send the message to those who are really not interested in so much time with the minors, that they can obtain advantages in the negotiation over the other aspects of the divorce or the termination of the relationship. the relationship. Furthermore, shared ownership will undoubtedly affect child support, while forcing the parties to maintain two complete homes for the child".*

---

cause, Seminar on Marxism I, II and II (What remains of Marxism without us realizing it: a lot?), since August 31, 2007, Room E-501, at the Francisco Marroquín University, Guatemala. He said: *"Dialectics is a struggle without quarter. There can only be winners and losers. There is no middle ground. If possible, eliminated. Necessarily it has to be so. The only way to ensure progress is not until one defeats and it will be eliminated.  It is a radical disjunctive without compromise.  There is no compromise possible.  Either the lords triumph or the serfs triumph.  Either the masters triumph or the slaves triumph.  Either the bourgeois triumph or the proletarians triumph. It is a process of transformation in which two opposites, the thesis v. the antithesis, are resolved in a superior form: the synthesis"*.

[17]Peker, Luciana, "EL TERRORISMO MACHISTA", February 8, 2018, Press: INECIP IN THE MEDIA, reports of cases of femicides by a machista terrorism that murders. https://inecip.org/pren sa/inecip-en-los-medios/el-terrorismo-machista/

[18]Rubio Calle, Alicia V., Book: When they prohibited us from being Women [...] and they persecuted you for being Men: To understand how gender ideology affects us (Spanish Edition), Kindle edition. Edition and cover La Factoría.Pub (2016-2017), 4th Ed. Revised (2019)

*"The reality never lived up to the ideal in any corner of the world"* (Ben Wattenberg, writer-demographer). (Ben Wattenberg, writer-demographer). To create a good man without CHRIST is I M P O S S I B L E!

## F. SUPPLICA

40. LET, WE BESEECH THEE, OUR SUPPLICATION BE ACCEPTED before the Court and the Board to ORDER the ASUME of the Humacao Region, directed also to the Department of the Family and the Department of Justice, so that they may now reveal the whereabouts of the minor L.A.R.F. and immediately order his removal to the jurisdiction of the E. L.A. and its territories, from any place in the vast territory of the United States where he is being held FORCIBLY DISAPPEARED, with the acquiescence and protection of corrupt judicial officials and agents of the State. L.A.A. and its territories, from any place in the vast territory of the United States where he is being held under FORCED DISAPPEARANCE, with the acquiescence and protection of judicial officials and agents of the State, in flagrant violation of local laws and international conventions applicable to the present case. The fact of denying the information of the substantial fact of the current whereabouts of the minor and, in effect, denying access to justice, by itself, causes the plaintiff a clear, palpable and real damage. Col. Elec. V. A.E.E., 150 DPR 327 (2000).

41. That these organisms, united in evil confederation, reveal now and without excuses, TO WHICH PHYSICAL AND POSTAL ADDRESS THE PERIODIC PAYMENTS FOR THE FEEDING OF THE CHILD L.A.R.F. ARE BEING SENT UNDER SECRETISM, forwarding such vital information to Mrs. Feliciano Rosado, the alleged feeding mother. So that the latter, in strict justice, and in accordance with equity and the constitutional right to information, may be legally able to recover her only son by legal means, and thus be able to file the necessary actions so that the petitioner may be reestablished in her rights as mother and son.

42. WE FURTHER REQUEST that, in compliance with the foregoing, the State be ordered, on behalf of the judicial officials and the ASSUMPTION, to cease its obstinate and stubborn violation of the norms of *ius cogen*, whose crimes do not prescribe, by putting an end to the FORCED ABDUCTION AND DISAPPEARANCE of the minor L.A.R.F. (2011-2021), not only by informing now and without excuse of the current whereabouts of the minor where periodic child support payments are sent, but by ceasing its mafia-like practice of preventing his release by imprisoning his mother, knowing her innocence, rendering motions, pleadings and evidence ineffective, throwing out legitimate efforts to recover her son. Subject to existing tort law, full and exclusive civil liability and condemnation must fall upon the State, which mounted an entire costly and elaborate official apparatus to pervert the useful power to investigate child abuse cases and administer child support and thereby misuse its police power, *People v. Burgos*, 75 DPR 551 (1953), to hold a minor under FORCED DISAPPEARANCE for retaliation against his mother.

43. Therefore, this case is covered by matters of great public interest such as the fundamental right to be a MOTHER, *Santosky v. Kramer*, 455 U.S. 745 (1981); the constitutional right to life in its corollary to receive food (Art. 653, Civil Code, Art. 653, Civil Code, 2020). 2020), being its main interest the welfare of the minor, *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009);

*Argüello v. Argüello*, 155 DPR 62, 70 (2001); *Chévere v. Levis*, 150 DPR 525 (2000); *Rodríguez Avilés v. Rodríguez Beruff*, 117 DPR 616, 621 (1986); the right to information, *Angueira v. J.L.B.P.*, 150 DPR 10 (2000), Noriega v. Governor, 130 DPR 919 (1992); the right to freedom of expression in its corollary to denounce governmental injustices and seek redress of grievances, *Defendini Collazo et al. v. E.L.A., Cotto*, 134 DPR 28 (1993); the right to denounce acts of corruption (See "The IACHR publishes Practical Guide on guidelines and recommendations for the elaboration of risk mitigation plans for human rights defenders" of the IACHR of April 29, 2021, and the "Anticorruption Code for the New Puerto Rico; [...] which elevates the "Interagency Anticorruption Group" to the rank of Law). These last two (2) are rights consubstantial to guarantee the broadest freedom of expression consubstantial with freedom of thought, *Bertnicki v. Vooper*, 532 U.S. 514 (2000); *Vocero v. P.R.*, 113 S. Ct. 2004; *In re Secretary of Justice*, 126 DPR 463 (1990), *Aponte v. Lugo*, 100 DPR 282 (1971).

44. But, the greatest of all the rights that the petitioner comes to defend is the right to LIBERTY OF THE MINOR L.A.R.F., whose most sacred rights have been violated, this being so, the most sacred right that has been violated for this young-adolescent is his human dignity, and his right to grow up with his MOTHER and to enjoy her love, care and attention, since [...] ordinarily *no one cares with greater zeal and affection for a minor than his own mother", *Rodríguez v. Pagán*, 67 DPR 344 (2004), *In re Secretary of Justice*, 126 DPR 466 (1990). Pagán, 67 DPR 345 (1947).

45. *LET, WE BESEECH THEE, OUR SUPPLICATION BE ACCEPTED [...] to RELEASE MY SON LEO NOW [...], before the end of his congressional term in Puerto Rico. Especially when U.S. Congressman Ritchie Torres, along with his colleagues, as recently as April 8, 2022, introduced new bipartisan legislation proposing a process for the abolition of the Fiscal Oversight Board, known as the "TRUST for Puerto Rico Act of 2022" (HR 7409), and, in effect, we will once again be left helpless and at the mercy of a "CORRUPT" government.

46. LET, WE BESEECH THEE, OUR SUPPLICATION BE ACCEPTED [...], so that PROMESA may become a threshold of hope for the victims of the rampant JUDICIAL CORRUPTION that exists in Puerto Rico. The acronym P.R.O.M.E.S.A. is emblematic of the hopes and aspirations of a People oppressed, enslaved and besieged by the most despot and ruthless of the Government.  Add to the above that 2 Peter 3:13 says: "*Nevertheless we, according to his __PROMISE__, look for new heavens and a new earth, wherein dwelleth righteousness*".

47. WHEREFORE, Plaintiff respectfully requests that the above facts be made known, and also SULPICATES that these Private Creditors, who have suffered enough, be granted such other remedies as it deems just.

Respectfully submitted,

*Maira L. Feliciano Rosado*

Maira Ivet Feliciano Rosado
Calle Elena Segarra #154
Sector El Maní
Mayagüez, P.R. 00682

mfeducderec@yahoo.com
(939) 865-3987
(787) 242-1302
(786) 371-6770
(787) 242-1063

Date of delivery:        May 26, 2022,
                  In (Puerto Rico)
        I certify that on the date hereof and through the postal service at the expense of the
Government of the United States of America and in a properly stamped envelope, return receipt
requested, I have mailed true and accurate copies of the motions filed with the 1st Circuit Court of
Appeals, Boston, and this motion with accompanying annexes, to your known address at:

Copy to those with jurisdiction over PROMESA.:
                  Secretaría (Clerk's Office)
                  Tribunal de Distrito de los Estados Unidos (*United States
                  District Court*), Sala 150 Edificio Federal (Federal
                  Building),
                  San Juan (Puerto Rico) 00918-1767

                  Abogados de la Junta de Supervisión (Counsel for the
                  Oversight Board) Proskauer Rose LLP, Eleven Time Square
                  Nueva York, Nueva York 10036-8299.
                  Attn.   Martin J. Bienenstock
                          Brian S. Rosen

                  Abogados del Comité de Acreedores (*Counsel for the
                  Creditors' Committee*) Paul Hastings LLP, 200 Park Avenue
                  Nueva York, Nueva York 10166.
                  Attn:   Lue A. Despins
                          James Bliss
                          James Worthington
                          G. Alexander Bongartz