# EXHIBIT 2

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE PRIMERA INSTANCIA
CENTRO JUDICIAL DE SAN JUAN
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| R&D MASTER ENTERPRISES, INC., PRO PAVE CORP., MATRIX TRANSPORT INC., JOSÉ A. ROVIRA GONZÁLEZ, su esposa MARÍA MAGDALENA DÍAZ VILA, y la sociedad legal de bienes gananciales compuesta por ambos, y otros<br><br>DEMANDANTES<br><br>V.<br><br>BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO, PR RECOVERY AND DEVELOPMENT JV, LLC, y otros<br><br>DEMANDADOS | Caso Civil Núm.:<br><br><br><br>Sobre:<br><br>ACCIÓN DE CLASE<br>-Nulidad de Contrato<br>-Incumplimiento Contractual<br>-Venta Ilícita<br>-Fraude<br>-Dolo<br>-Daños y Perjuicios<br>-Interferencia Torticera<br>-Enriquecimiento Injusto<br>-Temeridad<br>-Honorarios, Costas y Gastos |

**DEMANDA DE CLASE**

AL HONORABLE TRIBUNAL:

COMPARECEN las partes demandantes R&D Master Enterprises, Inc., Pro Pave Corp., Matrix Transport Inc., María Magdalena Díaz Vila y José A. Rovira González (colectivamente, el "Grupo Demandante"), por conducto de su abogado que suscribe, y muy respetuosamente EXPONEN, ALEGAN y SOLICITAN:

**I. JURISDICCIÓN Y COMPETENCIA.**

1.    Este Honorable Tribunal tiene jurisdicción y competencia sobre la acción civil de epígrafe en virtud de las disposiciones pertinentes de la Ley Núm. 21 de 22 de agosto de 2003, según enmendada, conocida como la "Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003", así como bajo la Regla 20 de las Reglas de Procedimiento Civil de Puerto Rico y demás disposiciones aplicables a los hechos materiales y a las causas de acción alegadas en esta Demanda de Clase.

2.    El caso de epígrafe envuelve una acción de clase matizada en las acciones voluntarias, fraudulentas, dolosas y de mala fe

llevadas a efecto por los codemandados Banco de Desarrollo Económico para Puerto Rico, una instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico (en adelante, el "BDE"), PR Recovery and Development JV, LLC, una compañía de responsabilidad limitada organizada bajo leyes del Estado de Delaware (en adelante, "PR Recovery"), y cualquier otra persona natural o jurídica cuya identidad se desconoce a la fecha de esta Demanda de Clase que deba responder solidariamente por las actuaciones culposas y negligentes de los demás codemandados (en adelante, junto con el BDE y PR Recovery, colectivamente, los "Codemandados").

## II. **LAS PARTES**.

3. El demandante R&D Master Enterprises, Inc. es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico. Su dirección postal es: PO Box 21110 San Juan, PR 00928-1110. Su dirección física es: San Isidro Industrial Park PR-188 Km 0.7 Canóvanas, PR 00729.

4. El codemandante Pro Pave Corp. es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico. Su dirección postal es: PO Box 21110 San Juan, PR 00928-1110. Su dirección física es: Carr. 845 Km. 1.6 Antigua Via Cupey Bajo San Juan, PR 00928.

5. El codemandante Matrix Transport, Inc. es una corporación organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico. Su dirección postal es: PO Box 21110 San Juan, PR 00928-1110. Su dirección física es: Carr. 845 Km. 1.6 San Juan, PR 00928.

6. El codemandante José A. Rovira González es mayor de edad, casado con María Magdalena Díaz Vila, ejecutivo y residente de Guaynabo, Puerto Rico. Su dirección postal y física es: C-4 Calle 2, Urb. Villa Mercedes, Guaynabo, PR 00971.

7. La codemandante María Magdalena Díaz Vila, es mayor de edad, casada con José A. Rovira González, ejecutiva y residente de

Guaynabo, Puerto Rico. Su dirección postal y física es: C-4 Calle 2, Urb. Villa Mercedes, Guaynabo, PR 00971.

8. La parte demandada PR Recovery es una compañía de responsabilidad limitada foránea organizada bajo las leyes del Estado de Delaware. La dirección postal de PR Recovery es la siguiente: PO Box 36110, San Juan PR 00936-1110. La dirección física de PR Recovery es: 221 Ponce de León Suite 302 San Juan, PR 00917.

9. La parte codemandada BDE es una institución financiera e instrumentalidad gubernamental del Estado Libre Asociado de Puerto Rico. La dirección postal del BDE es la siguiente: P.O. Box 2134, San Juan, PR 00920. La dirección física del BDE es: 1903 Avenida Jesús T. Piñero, San Juan, PR 00920.

### III. <u>LOS HECHOS MATERIALES Y LAS CAUSAS DE ACCIÓN</u>.

10. El día 7 de septiembre de 2018, PR Recovery entró en un contrato con el BDE titulado "Loan Sale Agreement", referente a la compraventa de una cartera multimillonaria de préstamos originados por el BDE (en adelante, el "Contrato de Compraventa de Cartera de Préstamos"). Dicho Contrato de Compraventa de Cartera de Préstamos obra inscrito en el Registro de Contratos Gubernamentales de la Oficina del Contralor de Puerto Rico bajo el número de registro BDE-2019-000044.

11. El día 7 de noviembre de 2020, el BDE presentó ante el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de San Juan, una Demanda en acción de nulidad y otros remedios en contra de PR Recovery y otros bajo el Caso Civil Núm. SJ2019CV11697, *Banco de Desarrollo Económico Para Puerto Rico v. Garnet Capital Advisors LLC, PR Recovery and Development REO, LLC, PR Recovery and Development JV, LLC, y Parliament Capital Management LLC*, cuyo pleito se encuentra sub judice (en adelante, el "Pleito de Nulidad"). En dicho Pleito de Nulidad el BDE reclama, entre otros remedios, que se declare la nulidad radical y absoluta de la venta

de la cartera multimillonaria de préstamos presuntamente adquiridos por PR Recovery del BDE mediante el Contrato de Compraventa de Cartera de Préstamos, entre los cuales se encuentran subsumidos ciertos préstamos extendidos por el BDE al Grupo Demandante.

12. En dicho Pleito de Nulidad el BDE alega, entre otras cosas, que la transacción del BDE con PR Recovery que fuera llevada a efecto mediante el infortunado Contrato de Compraventa de Cartera de Préstamos: (a) es contraria al fin público y a la razón social por la cual fue creado el BDE; (b) es contraria a la ley orgánica del BDE y sus reglamentos y procedimientos internos; (c) no fue realizada como parte de un proceso de licitación competitiva mediante subasta pública, aplicable a disposiciones de activos del Estado Libre Asociado de Puerto Rico; (d) no fue sometida para la previa evaluación y aprobación de la Junta de Supervisión y Administración Fiscal de Puerto Rico, comúnmente conocida como la Junta de Supervisión Fiscal, lo cual es un requisito indispensable bajo la Ley PROMESA para transacciones gubernamentales de envergadura para el erario público; (e) no fue avalada por el Gobernador de Puerto Rico; y (f) se solicita que la transacción sea declarada nula ab initio para que el Honorable Tribunal ordene la devolución de las contraprestaciones y otros remedios.

13. El día 1 de junio de 2020, en medio de la pandemia global y crisis económica del COVID-19, PR Recovery presentó ante el Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Guaynabo, bajo el Caso Civil Núm. BY2020CV01413, una Demanda Enmendada en contra del Grupo Demandante sobre acción civil en cobro de dinero y ejecución de hipoteca por la vía ordinaria, en torno a ciertos préstamos comerciales extendidos por el BDE al Grupo Deudor (en adelante, el "Pleito de Cobro").

14. No existe relación legal alguna entre PR Recovery y el Grupo Demandante que sea invocable por PR Recovery ante los

4

tribunales del Estado Libre Asociado de Puerto Rico.

15. No existe relación contractual alguna entre PR Recovery y el Grupo Demandante que sea invocable por PR Recovery ante los tribunales del Estado Libre Asociado de Puerto Rico.

16. Todos los documentos de préstamo y de colateral a base de los cuales PR Recovery reclama tener derechos y remedios bajo del Pleito de Cobro incoado por PR Recovery en contra del Grupo Demandante fueron exclusivamente otorgados entre el BDE y el Grupo Demandante y, por sus propios términos y condiciones, no son cedibles por el BDE a ninguna entidad jurídica que no sea un banco, un fideicomiso o una institución.

17. Como cuestión de hecho y de derecho, PR Recovery no era un banco, un fideicomiso o una institución al momento del otorgamiento del Contrato de Compraventa de Cartera de Préstamos, y a la fecha de esta Demanda de Clase PR Recovery aún no ostenta dichas cualificaciones.

18. PR Recovery no es legítimo cesionario de los préstamos extendidos por el BDE al Grupo Demandante.

19. PR Recovery no es legítimo tenedor por endoso de los instrumentos que evidencian los préstamos extendidos por el BDE al Grupo Demandante.

20. El Contrato de Compraventa de Cartera de Préstamos es nulo ab initio, según asimismo lo alega el propio BDE mediante el Pleito de Nulidad.

21. Como cuestión de hecho y de derecho, PR Recovery no es concesionario de ninguna de las licencias requeridas por la Oficina del Comisionado de Instituciones Financieras de Puerto Rico que le faculte para fungir como prestamista y/o como cobrador en Puerto Rico en el curso ordinario de los negocios.

22. Un factor determinante que motivó al Grupo Demandante a cerrar sus préstamos con el BDE en su origen era la premisa de que el BDE nunca cedería ni vendería los mismos a un inversionista

predatorio (como PR Recovery), a un prestamista privado, a un competidor del Grupo Demandante, o a cualquier otro tercero desconocido que, como PR Recovery, no fuera un banco, un fideicomiso o una institución financiera con licencia expedida por la Oficina del Comisionado de Instituciones Financieras de Puerto Rico.

23. A tenor con la cláusula contractual de prohibición de cesión que consta claramente estipulada en la Sección 3.06 del Contrato de Préstamo otorgado el día 4 de agosto de 2016 por y entre el BDE y el Grupo Demandante, el BDE en efecto quedaba contractualmente impedido de efectuar la cesión y venta de los préstamos otorgados por el BDE al Grupo Demandante bajo el Contrato de Préstamo a un cesionario que, como PR Recovery, no fuera un banco, un fideicomiso o una institución. Dicha cláusula 3.06 del Contrato de Préstamo reza en su totalidad como sigue (en adelante, la "Cláusula Limitativa de Traspaso"):

> "Sección 3.06. Cesión de Colateral. *El Banco tendrá el derecho absoluto de vender o ceder a cualquier otro banco, fideicomiso o institución, toda o cualquier parte del Préstamo.* Además, el Banco podrá constituir, a su opción, cualquier gravamen sobre cualquier colateral que garantice el pago del Préstamo para fines de levantar fondos para cumplir, si necesario, con los términos y condiciones de este Contrato." (Énfasis suplido.)

24. El ordenamiento jurídico puertorriqueño solamente reconoce los siguientes distintos tipos de entidades jurídicas con capacidad suficiente para contratar en Puerto Rico:

Banco
Centro Bancario Internacional
Compañía de Responsabilidad Limitada
Compañía de Responsabilidad Limitada con Fin Social
Compañía de Seguros Cooperativa de Ahorro y Crédito
Cooperativa de Consumo Cooperativa de Energía
Cooperativa de Seguros
Cooperativa de Trabajadores
Cooperativa de Vivienda
Cooperativa Juvenil
Cooperativa Mixta
Corporación
Corporación Auspiciada por Municipios
Corporación de Beneficio Social
Corporación Especial para el Desarrollo Municipal
Corporación Especial Propiedad de Trabajadores

Corporación Íntima
Corporación Profesional
Empresa Municipal
Entidad Financiera Internacional
Fideicomiso
Sociedad
Sociedad de Responsabilidad Limitada

25. En ninguna parte de nuestro ordenamiento jurídico puertorriqueño se define ni se reconoce la figura jurídica de "institución", y a la fecha de esta Demanda de Clase PR Recovery y sus abogados se han negado, afirmativa y temerariamente, a descubrir evidencia fehaciente sobre este hecho material en el Pleito de Cobro.

26. La intención del BDE, al referirse al término "institución" en la Sección 3.06 del Contrato de Préstamo otorgado el día 4 de agosto de 2016 por y entre el BDE y el Grupo Demandante, se refería a una de las instituciones financieras reguladas por la Oficina del Comisionado de Instituciones Financieras de Puerto Rico o por cuerpos regulatorios análogos del gobierno federal los Estados Unidos de América.

27. PR Recovery no es una "institución", sino una compañía de responsabilidad limitada foránea organizada bajo las leyes del Estado de Delaware que no consta autorizada para hacer negocios en Puerto Rico, y a la fecha de este escrito aún se desconoce si PR Recovery: (a) radica planillas de contribuciones sobre ingresos al Departamento de Hacienda de Puerto Rico, (b) si hace las remesas pertinentes de los pagos recibidos por concepto de intereses devengados de deudores en Puerto Rico, (c) si radica declaraciones anuales sobre volumen de negocios al Centro de Recaudación de Ingresos Municipales, y (d) si radica patentes municipales en el Municipio de San Juan.

28. El BDE quedaba (y aún queda) contractualmente impedido de venderle o de otra forma cederle a PR Recovery o a cualquier otra persona natural o jurídica que no sea un banco, un fideicomiso o una institución todos y cada uno de los préstamos que son objeto

7

SJ2020CV04491 23/08/2020 07:36:58 pm Entrada Núm. 1 Página 8 de 24

del Contrato de Compraventa de Cartera de Préstamos sujetos a una igual o similar a la Cláusula Limitativa de Traspaso.

29. PR Recovery no ostenta legitimación activa suficiente para incoar pleitos de cobro ante los tribunales de Puerto Rico y/o de los Estados Unidos de América en contra del Grupo Demandante y/o en contra de todos los demás deudores del BDE cuyos contratos de financiamiento incluyan una cláusula limitativa de cesión igual o similar a la Cláusula Limitativa de Traspaso (en adelante, la "Clase"), habida cuenta que: (a) PR Recovery nunca ha sido y aún no es un banco, un fideicomiso o una institución con capacidad legal y contractual suficiente para adquirir los préstamos del BDE; y (b) no existe relación contractual alguna entre los deudores del BDE que sean miembros de la Clase y PR Recovery que sea invocable ante los tribunales de Puerto Rico o de los Estados Unidos de América. Una investigación privada preliminar revela que todos o la mayoría de los préstamos cedidos por el BDE a PR Recovery mediante el infortunado Contrato de Compraventa de Cartera de Préstamos contienen dicha Cláusula Limitativa de Traspaso.

30. Por admisión propia, PR Recovery es un inversionista privado foráneo. PR Recovery no es un banco ni un fideicomiso ni una institución, por lo que el BDE no tenía facultad legal de venderle a PR Recovery los préstamos del Grupo Demandante ni de los demás miembros de la Clase a PR Recovery, ni de entrar en el Contrato de Compraventa de Cartera de Préstamos respecto a los préstamos de la Clase, excepto mediando el previo consentimiento por escrito del Grupo Demandante y de los demás miembros de la Clase.

31. El BDE tiene como propósito de alto interés público el fomentar el desarrollo de la economía de Puerto Rico, promoviendo al sector privado, y dando preferencia al pequeño y mediano empresario de Puerto Rico.

32. La cartera de préstamos del BDE que es objeto del

Contrato de Compraventa de Cartera de Préstamos constituye fondos públicos y propiedades por lo que, por disposición constitucional, solamente puede disponerse de ellos para fines públicos solamente (y no para fines de lucro privado).

33. La pretendida venta a descuento de bienes públicos a una compañía extranjera de inversión (como PR Recovery) no constituye un fin público.

34. Mediante la pretendida venta por el BDE a PR Recovery, el BDE dispuso de bienes públicos para favorecer a una compañía extranjera de inversión privada en violación de la Constitución de Puerto Rico y las leyes aplicables al BDE.

35. En la pretendida venta por el BDE a PR Recovery se dispuso de préstamos, incluyendo los préstamos del Grupo Deudor y de los demás miembros de la Clase, que eran relativamente nuevos, por lo que el BDE aún no había recuperado los fondos públicos invertidos al conceder los mismos.

36. En la pretendida venta celebrada por el BDE a PR Recovery bajo el Contrato de Compraventa de Cartera de Préstamos se entregaron a PR Recovery un total de $384,269,047.00 de bienes patrimoniales de Puerto Rico a cambio de tan sólo $33,843,629.56.

37. Al pretender vender dichos préstamos a un profundo 91% de descuento, el BDE está realmente disponiendo ilegalmente de propiedad pública, sin licitación abierta, y privando a los deudores del BDE y demás miembros de la Clase de sus derechos contractuales, inclusive su derecho al ejercicio del retracto del crédito litigioso.

38. Cuando la contratación involucra el uso de bienes o fondos públicos, se exige la aplicación rigurosa de todas las normas pertinentes a la contratación y al desembolso de esos fondos públicos, a los fines de proteger los intereses y dineros del erario del pueblo de Puerto Rico. El BDE y PR Recovery manipularon la transacción para desfavorecer a los miembros de la Clase a

9

sabiendas de que el traspaso de los préstamos de los miembros de la Clase era una imposibilidad jurídica.

39. La pretendida venta por el BDE a PR Recovery es contraria a los fines para los cuales fue creado el BDE y fue manipulada por ciertos oficiales del BDE para beneficiar a PR Recovery, en menoscabo de los derechos contractuales de los miembros de la Clase.

40. La pretendida venta por el BDE a PR Recovery en nada asiste al pequeño y mediante comerciante de Puerto Rico y a los miembros de la Clase.

41. La pretendida venta por el BDE a PR Recovery en nada fomenta el desarrollo de la economía de Puerto Rico y a los miembros de la Clase.

42. La pretendida venta por el BDE a PR Recovery es nula por haber sido llevada a cabo de manera engañosa, sin mediar el previo consentimiento de los miembros de la Clase, sin mediar subasta pública ni privada, sin mediar solicitudes de propuestas, y sin que se siguieran los requisitos establecidos en las leyes y los reglamentos aplicables del Estado Libre Asociado de Puerto Rico.

43. La pretendida venta por el BDE a PR Recovery bajo el Contrato de Compraventa de Cartera de Préstamos es nula ab initio, por haberse llevado a cabo en abierta violación de las disposiciones de los distintos contratos de financiamientos suscritos por el BDE con los miembros de la Clase, incluyendo, sin limitación, las Cláusulas Limitativas de Traspaso. La Sección 2-117 de la Ley Núm. 208 del 17 de agosto de 1995, según enmendada, conocida como la Ley de Transacciones Comerciales, 19 L.P.R.A. § 517, claramente expone que cuando un instrumento negociable es sujetado a los términos y condiciones de un contrato separado otorgado simultáneamente, prevalecen los términos y condiciones del contrato separado (en este caso, los contratos de préstamos de los miembros de la Clase que incluyan una Cláusula Limitativa de

Traspaso), y todas las demás disposiciones de la Ley de Transacciones Comerciales resultan inaplicables a todos los documentos de garantía y de colateral que son de carácter accesorio al contrato principal.

44.   La pretendida venta por el BDE a PR Recovery es nula por cuanto la Junta de Directores del BDE nunca autorizó el otorgamiento del Contrato de Compraventa de Cartera de Préstamos a sabiendas de que el mismo violentaba las Cláusulas Limitativas de Traspaso que protegían a los miembros de la Clase.

45.   La pretendida venta por el BDE a PR Recovery es nula por cuanto la Junta de Directores del BDE no autorizó a los oficiales del BDE que comparecieron en la negociación y en el otorgamiento del Contrato de Compraventa de Cartera de Préstamos a representar al BDE en dicha transacción a sabiendas de que el mismo violentaba las Cláusulas Limitativas de Traspaso que protegían a los miembros de la Clase.

46.   La pretendida venta por el BDE a PR Recovery es nula por cuanto es contraria a la ley, la moral y el orden público.

47.   PR Recovery no podía adquirir ni adquirió derecho alguno sobre los préstamos extendidos por el BDE al Grupo Demandante y a los demás miembros de la Clase cuyos respectivos contratos de financiamiento incluyan una Cláusula Limitativa de Traspaso.

48.   Por los motivos anteriormente expuestos, PR Recovery no tiene derecho a reclamar suma de dinero alguna a los miembros de la Clase.

49.   El Art. 1041 del Código Civil, 31 LPRA sec. 2991, dispone que "[t]oda obligación consiste en dar, hacer o no hacer alguna cosa".

50.   El Art. 1042 del Código Civil de Puerto Rico, 31 LPRA sec. 2992, establece que las obligaciones nacen de la ley, los contratos y cuasicontratos, y de los actos y omisiones ilícitas o en los que intervenga cualquier género de culpa o negligencia.

51. El Código Civil también establece dos principios que rigen las relaciones contractuales en Puerto Rico, a saber, la autonomía de la voluntad y la doctrina de pacta sunt servanda. *Oriental Bank & Trust v. Perapi S.E. y otros*, 192 DPR 7, 15 (2014).

52. La doctrina de pacta sunt servanda está establecida en el Art. 1044 del Código Civil, 31 LPRA sec. 2994, y dispone que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes y, por lo tanto, se deben cumplir a tenor de tales obligaciones. *Oriental Bank & Trust v. Perapi S.E. y otros*, supra.

53. Para que un contrato tenga fuerza de ley entre las partes, estas tienen que consentir a obligarse respecto de la otra parte, a dar alguna cosa o a prestar algún servicio. 31 LPRA sec. 3371.

54. La autonomía de la voluntad, recogida por el Art. 1207 del Código Civil, 31 LPRA sec. 3372, dispone que, para poder obligarse, las partes pueden establecer cualquier pacto, cláusula o condición, siempre y cuando no sean contrarios a la ley, la moral o al orden público.

55. Los contratos son negocios jurídicos bilaterales que constituyen una de las fuentes de las obligaciones. *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). En ese sentido, el Art. 1209 del Código Civil, 31 LPRA sec. 3374, menciona que los contratos solo producen efecto entre las partes que los otorgan y sus herederos. Así, para que un contrato nazca válidamente es necesario que concurran los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato; y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 LPRA sec. 3391. Véase, además, *Rodríguez Ramos v. ELA*, 190 DPR 448, 455 (2014).

56. En particular, el consentimiento de los contratantes se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que constituirán el acuerdo. Art. 1214 del Código

Civil, 31 LPRA sec. 3401.

57. No obstante, el consentimiento será nulo si se prestó por error, violencia, intimidación o dolo. Art. 1217 del Código Civil, 31 LPRA sec. 3404. Véase, además, *SLG Ortiz-Alvarado v. Great American*, 182 DPR 48, 62 (2011).

58. Por su parte, el Art. 1225 del Código Civil, 31 LPRA sec. 3423, dispone, en lo pertinente, que el objeto de todo contrato debe ser una cosa determinada en cuanto a su especie. Asimismo, el Tribunal Supremo ha manifestado que el objeto es la cosa o el servicio de las obligaciones de dar o de hacer. *S.J. Credit, Inc. v. Ramírez*, 113 DPR 181, 185 (1982). Por otro lado, la causa se refiere a la razón o el porqué de la obligación. Íd.

59. Así pues, una vez concurren las condiciones esenciales para su validez, los contratos son obligatorios. Art. 1230 del Código Civil, 31 LPRA sec. 3451.

60. Así, los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los términos de estos. Art. 1210 del Código Civil, 31 LPRA sec. 3375.

61. Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. 31 LPRA sec. 3375.

62. Cuando los términos de un contrato son claros y no crean ambigüedades, los mismos se aplicarán en atención al sentido literal que tengan. Artículo 1233 del Código Civil de Puerto Rico, 31 LPRA 3471.

63. En *Corp. del FSE v. Unión de Médicos*, 170 DPR 443, 450 (2007), el Tribunal Supremo reiteró que los términos de un contrato son claros cuando son suficientes en contenido para ser entendidos en un único sentido, sin dar lugar a dudas o controversias, sin diversidad de interpretaciones y sin necesitar, para su comprensión, razonamientos o demostraciones susceptibles de

impugnación.

64. Ahora bien, "si lo consignado aparenta ser contrario a la intención de las partes, prevalecerá esta última". Art. 1233 del Código Civil, 31 LPRA sec. 3471; *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1030 (2017).

65. Para analizar la intención de las partes, se tendrán que examinar los actos contemporáneos y posteriores al acuerdo. *Savary et al. v. Mun. Fajardo et al.*, supra.

66. En torno a la interpretación de un contrato válido, es sana administración judicial promover que cuando los términos pactados y la intención de los contratantes sean claros, los tribunales no deben recurrir a las reglas de interpretación y hermenéutica. Art. 1233 del Código Civil, 31 LPRA sec. 3471; *Residentes Parkville Sur v. Díaz Luciano*, 159 DPR 374, 385-386 (2003).

67. Si una cláusula admite diversos sentidos, se debe entender que aplicará el sentido más adecuado para que el contrato produzca efecto. Art. 1236 del Código Civil, 31 LPRA sec. 3474. Al interpretar tal artículo, el Tribunal Supremo ha explicado que el efecto más adecuado se refiere a la eficacia de la función económica del contrato y la finalidad que trata de alcanzar. *BPPR v. Sucn. Talavera*, 174 DPR 686, 708 (2008).

68. Ahora bien, cuando una palabra pudiera tener diversos sentidos, se debe entender el que sea más conforme a la naturaleza y objeto del contrato. Art. 1238 del Código Civil, 31 LPRA sec. 3476.

69. La naturaleza del contrato "se refiere al tipo genérico del contrato, por ejemplo, una compraventa o un arrendamiento, mientras que el objeto se refiere a su finalidad. *BPPR v. Sucn. Talavera*, supra, pág. 708 citando a J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Editorial Bosch, Barcelona, pág. 17.

70. Para lograr el fin de un contrato, es norma establecida

en nuestro ordenamiento jurídico que las cláusulas de los contratos deben de leerse de forma integrada e interpretarse las unas por las otras, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto. Arts. 1236 y 1237 del Código Civil, 31 LPRA secs. 3474 y 3475.

71. Por tanto, el motivo de contratar es para que las partes "lo hagan con el propósito de que sus pactos y convenciones tengan efectividad y no para que resulten declaraciones baldías e ilusorias". *Caguas Plumbing v. Continental Const. Corp.*, 155 DPR 744, 753 (2001) citando a *Morales Garay v. Roldán Coss*, 110 DPR 701, 707 (1981).

72. A causa de la relación de hechos y la normativa legal arriba esbozada, el Honorable Tribunal solamente puede concluir que PR Recovery no es un cesionario elegible de los préstamos originados por el BDE equipados con la Cláusula Limitativa de Traspaso, y que vender los mismos a PR Recovery a un extremo descuento no era una posibilidad jurídica.

73. En el segmento de financiamientos comerciales, la cesión de un préstamo por parte de un acreedor no es algo que ocurre por la mera voluntad del banco cedente. La transferibilidad de un préstamo depende de lo que el acreedor original y el prestatario hayan expresamente pactado en el contrato de préstamo otorgado privadamente entre ellos.

74. Los contratos de préstamo empleados por los principales bancos comerciales que operan en Puerto Rico por lo general expresamente definen quién puede ser un cesionario elegible de sus préstamos. En algunas ocasiones, el cesionario puede ser cualquier persona. En las demás ocasiones, el cesionario solamente puede ser un banco o una institución financiera.

75. Para dar contexto de este punto, a continuación listamos algunas definiciones que ilustran y ejemplifican lo que constituye un cesionario elegible ("eligible assignee"), según las mismas son

15

rutinariamente empleadas por los principales bancos que operan en

Puerto Rico y otros:

BANCO POPULAR DE PUERTO RICO

"Eligible Assignee" means any financial institution organized under the laws of the Commonwealth, the United States of America or any state thereof, Canada, or as otherwise approved by the Bank, in its sole discretion.

"Eligible Assignee" means any financial institution organized under the laws of the Commonwealth, the United States of America, or any state thereof, approved by the Bank, in its sole discretion.

"Eligible Assignee" means: (i) a commercial bank organized under the laws of the Commonwealth, the United States, or any state thereof, and having total assets in excess of $250,000,000; (ii) a commercial bank organized under the laws of any other country, and having total assets in excess of $1,000,000,000; provided that such bank is acting through a branch or agency located in the Commonwealth or any state of the United States; and (iii) any other bank or similar financial institution approved by the Bank.

CITIBANK, N.A.

"Eligible Assignee" means any financial institution organized under the laws of the Commonwealth, the United States of America, or any state thereof, approved by the Bank, in its sole discretion.

"Eligible Assignee" means any Lender, any Affiliate of a Lender, and any other Person approved by the Administrative Agent and the Majority Lenders.

DEUTSCHE BANK AG, NEW YORK BRANCH

"Eligible Assignee" means (i) a multi-seller commercial paper conduit (that is administered by a Lender or an Affiliate of a Lender) or an Affiliate of an existing Lender or the Structuring Agent, or (ii) a Person who is satisfactory to the Administrative Agent, and subject, in the case of any Person chosen pursuant to clause (ii) above, to the prior written consent of the Borrower (which consent shall not be unreasonably withheld or delayed); provided, that, on and after the occurrence of an Event of Default, "Eligible Assignee" shall mean any Person satisfactory to the Administrative Agent in its sole discretion.

FIRSTBANK PUERTO RICO

"Eligible Assignee" means (i) any Lender; (ii) any Affiliate of a Lender that is a financial institution, is majority-owned by such Lender or by the corporation controlling such Lender and has Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000.00; (iii) any commercial bank, national bank, savings and loan association or savings bank organized under the laws of

the United States, or any State thereof, or Puerto Rico, and having Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000.00; or (iv) any Approved Fund; or (v) any other Person approved by the Administrative Agent that is not a competitor of the Borrowers engaged in the retail automotive sales business within the territorial boundaries of Puerto Rico; _provided_, _however_, that no Individual Borrower nor any Affiliate of any Individual Borrower shall qualify as an Eligible Assignee.

"Eligible Assignee" means (i) Lender; (ii) any Affiliate of Lender that is a financial institution, is majority-owned by Lender or by the corporation Controlling Lender and has Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000; (iii) any commercial bank, national bank, savings and loan association or savings bank organized under the laws of the United States, or any State thereof, or Puerto Rico, and having Tier 1 capital (as defined under the applicable federal regulatory capital guidelines) in excess of $100,000,000; or (iv) any other Person approved by Lender.

<u>ORIENTAL BANK</u>

"Eligible Assignee" means: (i) a commercial bank organized under the laws of the Commonwealth, the United States, or any state thereof, and having total assets in excess of $250,000,000; (ii) a commercial bank organized under the laws of any other country, and having total assets in excess of $1,000,000,000; provided that such bank is acting through a branch or agency located in the Commonwealth or any state of the United States; and (iii) any other bank or similar financial institution approved by the Bank.

76. En fin, en el caso de epígrafe PR Recovery no es un cesionario elegible de los préstamos del BDE que pretende cobrarle a los miembros de la Clase a base de representaciones fraudulentas y dolosas, toda vez que no es un banco, un fideicomiso o una institución financiera.

**PRIMERA CAUSA DE ACCIÓN**:
**DECLARACIÓN DE NULIDAD DEL CONTRATO DE COMPRAVENTA DE CARTERA DE PRÉSTAMOS EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A UNA CLÁUSULA LIMITATIVA DE TRASPASO**

77. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 76.

76. Procede que el Honorable Tribunal declare la nulidad de la cesión y venta de los préstamos extendidos por el BDE a los miembros de la Clase a tenor con el fallido Contrato de Compraventa

17

de Cartera de Préstamos, en la medida en que los préstamos pretendidos ser vendidos por el BDE hayan contenido una Cláusula Limitativa de Traspaso.

77. Procede la devolución de las contraprestaciones en cuanto a los préstamos de los miembros de la Clase.

78. Procede que el Honorable Tribunal decrete que todos los préstamos de los miembros de la Clase sean devueltos por PR Recovery al BDE (a base del valor descontado de 91% que PR Recovery le pagó al BDE bajo el Contrato de Compraventa de Cartera de Préstamos), y que el BDE reembolse a PR Recovery el precio que pagó por los mismos (a base del mismo valor descontado de 91% que PR Recovery le pagó al BDE bajo el Contrato de Compraventa de Cartera de Préstamos).

**SEGUNDA CAUSA DE ACCIÓN:**
**DECLARACIÓN DE INTERFERENCIA TORTICERA MEDIANTE FRAUDE Y DOLO EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA CLÁUSULA LIMITATIVA DE TRASPASO**

79. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 78.

80. Procede que el Honorable Tribunal decrete que el otorgamiento del Contrato de Compraventa de Cartera de Préstamos por parte del BDE y de PR Recovery, sin mediar el previo consentimiento por escrito de todos y cada uno de los miembros de la Clase, ha ocasionado serios daños y perjuicios los miembros de la Clase por los cuales el BDE y PR Recovery deben solidariamente responder.

81. Procede que el Honorable Tribunal decrete que los oficiales del BDE y de PR Recovery que promovieron el otorgamiento del Contrato de Compraventa de Cartera de Préstamos actuaron intencionalmente, mediando fraude y dolo, con conocimiento de la existencia de las Cláusulas Limitativas de Traspaso y de las relaciones jurídicas existentes entre el BDE y los miembros de la Clase, así como del incumplimiento con sus respectivos términos.

SJ2020CV04491 23/08/2020 07:36:58 pm Entrada Núm. 1 Página 19 de 24

Ello constituye una interferencia torticera conforme al derecho y a la normativa jurisprudencial aplicable.

82. Procede que el Honorable Tribunal decrete que los Codemandados son solidariamente responsables al Grupo Demandante y a todos los demás miembros de la Clase por todos los daños y perjuicios ocasionados como consecuencia de la interferencia torticera que protagonizaron el BDE y PR Recovery, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

**TERCERA CAUSA DE ACCIÓN:**
**DECLARACIÓN DE ENRIQUECIMIENTO INJUSTO DE PR RECOVERY MEDIANDO FRAUDE Y DOLO EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA CLÁUSULA LIMITATIVA DE TRASPASO**

83. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 82.

84. Procede que el Honorable Tribunal decrete que los daños y perjuicios causados a los miembros de la Clase son consecuencia directa e inmediata del infortunado Contrato de Compraventa de Cartera de Préstamos celebrado entre el BDE y PR Recovery y proclive al enriquecimiento injusto de PR Recovery.

85. Procede que el Honorable Tribunal decrete que los Codemandados son solidariamente responsables al Grupo Demandante y a todos los demás miembros de la Clase por todos los daños y perjuicios sufridos, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

**CUARTA CAUSA DE ACCIÓN:**
**DECLARACIÓN DE INCUMPLIMIENTO DE CONTRATO MEDIANDO FALTA DE CONSENTIMIENTO EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA CLÁUSULA LIMITATIVA DE TRASPASO**

86. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 85.

87. Procede que el Honorable Tribunal decrete que el Contrato de Compraventa de Cartera de Préstamos otorgado entre el BDE y PR Recovery fue otorgado en violación de la ley que exige el

cumplimiento de las obligaciones contractuales que benefician a los miembros de la Clase; en específico, las Cláusulas Limitativas de Traspaso contenidas en los contratos de financiamientos suscritos por el BDE y los miembros de la Clase, por lo cual es ilícita su causa y nulo el contrato sin que se produzca efecto legal alguno en cuanto a los miembros de la Clase.

88. Procede que el Honorable Tribunal decrete que los Codemandados son solidariamente responsables al Grupo Demandante y a todos los demás miembros de la Clase por todos los daños y perjuicios sufridos como resultado del incumplimiento del BDE con los contratos de financiamiento suscritos por el BDE con los miembros de la Clase, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

**QUINTA CAUSA DE ACCIÓN:**
**DECLARACIÓN DE INCUMPLIMIENTO DE CONTRATO MEDIANDO FRAUDE Y DOLO EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA CLÁUSULA LIMITATIVA DE TRASPASO**

89. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 89.

90. Procede que el Honorable Tribunal decrete que el Contrato de Compraventa de Cartera de Préstamos está revestido de un matiz ilícito, particularmente ante la disposición de bienes patrimoniales de Puerto Rico y la interferencia torticera promovida por PR Recovery y por los oficiales del BDE que maliciosamente manipularon la transacción, en detrimento de los miembros de la Clase, bajo engaño, treta y falsas representaciones que persisten a la fecha de esta Demanda de Clase.

91. Procede que el Honorable Tribunal declare la nulidad del Contrato de Compraventa de Cartera de Préstamos y ordene a los Codemandados a resarcir a la Clase por todos los daños y perjuicios ocasionados, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

**SEXTA CAUSA DE ACCIÓN:**
**DAÑOS Y PERJUICIOS EN LO REFERENTE A TODOS LOS PRÉSTAMOS**
**EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA**
**CLÁUSULA LIMITATIVA DE TRASPASO**

92. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 91.

93. Procede que el Honorable Tribunal decrete que PR Recovery ha interferido de manera culposa, y con total conocimiento de sus actos culposos, en las relaciones contractuales privadas preexistentes entre el BDE y todos los respectivos miembros de la Clase.

94. Procede que el Honorable Tribunal decrete que la interferencia torticera de PR Recovery, con la anuencia de los oficiales del BDE que manipularon la transacción para beneficiar a PR Recovery, ha ocasionado graves daños y perjuicios a los miembros de la Clase, por los cuales PR Recovery debe responder solidariamente, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

95. Procede que el Honorable Tribunal decrete que las actuaciones de los oficiales del BDE al proceder con la venta de los préstamos a PR Recovery en abierta violación de las Cláusulas Limitativas de Traspaso recogidas en los contratos de financiamiento firmados por los miembros de la Clase y en violación a los fines legales orgánicos del BDE constituyen un incumplimiento con el deber impuesto por la buena fe contractual, por lo cual los Codemandados también responden a los miembros de la Clase por todos los daños y perjuicios ocasionados, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

96. Procede que el Honorable Tribunal decrete que cada oficial del BDE que manipuló la transacción con PR Recovery ha incurrido en fraude, dolo, culpa y negligencia en el cumplimiento de sus obligaciones para con los miembros de la Clase, por lo que

responde personalmente a los miembros de la Clase por los daños y perjuicios ocasionados, los que se estiman razonablemente a esta fecha en una suma menor no menor de $300,000,000.00.

**SÉPTIMA CAUSA DE ACCIÓN:**
**RESARCIMIENTO DE HONORARIOS LEGALES Y COSTAS Y GASTOS DE LITIGIO EN LO REFERENTE A TODOS LOS PRÉSTAMOS EXTENDIDOS A LOS MIEMBROS DE LA CLASE QUE ESTÉN SUJETOS A LA CLÁUSULA LIMITATIVA DE TRASPASO**

97. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 96.

98. Procede que el Honorable Tribunal decrete que PR Recovery y el BDE, por sus acciones u omisiones, han causado a los miembros de la Clase daños económicos sustanciales como resultado de su manipulación del Contrato de Compraventa de Cartera de Préstamos, inclusive gastos legales y costas y gastos de litigio que han tenido que incurrir los miembros de la Clase para defenderse de las acciones de cobro y ejecución siendo promovidas por PR Recovery, todo ello en violación al Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

99. Procede que el Honorable Tribunal decrete que los miembros de la Clase han tenido que incurrir en gastos innecesarios que son el resultado directo de las acciones culposas y/o las omisiones negligentes de PR Recovery y/o de los oficiales del BDE que manipularon la transacción y el otorgamiento del infortunado Contrato de Compraventa de Préstamos, los que se estiman razonablemente a esta fecha en una suma menor no menor de $30,000,000.00.

100. Conforme al derecho aplicable, PR Recovery y el BDE, o alguno de ellos, le son responsables a los miembros de la Clase por todos los honorarios y gastos ya incurridos y los que tengan que incurrirse en la presente acción de clase, así como en la defensa de cualquier pleito de cobro y de ejecución incoado en su contra por PR Recovery, en concepto de daños y perjuicios y como consecuencia de su manipulación culposa del fallido Contrato de

Compraventa de Cartera de Préstamos, los que se estiman razonablemente a esta fecha en una suma menor no menor de $30,000,000.00.

**OCTAVA CAUSA DE ACCIÓN:**
**DECLARACIÓN DE CRÉDITOS LITIGIOSOS SUJETOS A RETRACTO POR LOS MIEMBROS DE LA CLASE**

101. Se incorporan por referencia todas las alegaciones contenidas en los acápites 1 al 100.

102. Procede que los préstamos de todos los miembros de la Clase sean declarados créditos litigiosos una vez el BDE y/o PR Recovery contesten esta Demanda de Clase, sujetados al derecho de retracto de crédito litigioso que sea permisible y aplicable bajo las leyes del Estado Libre Asociado de Puerto Rico en vigor.

**IV. CONCLUSIÓN.**

Por los fundamentos legales arriba expuestos, todos y cada uno de los contratos de préstamos suscritos entre el BDE y los miembros de la Clase que contengan una Cláusula Limitativa de Traspaso son de carácter principal y personalísimo, y son totalmente intransferibles por el BDE a PR Recovery o a cualquier otra persona que no sea un cesionario elegible (o sea, un banco, un fideicomiso o una institución).

Todos los contratos de préstamo que contengan una Cláusula Limitativa de Traspaso sobrevienen y prevalecen sobre todos y cada uno de los instrumentos de garantía y de colateral que son ancilares y accesorios a los mismos, y los préstamos extendidos por el BDE bajo los mismos no son susceptibles de adquisición por parte de PR Recovery bajo ninguna circunstancia, toda vez que PR Recovery no es un cesionario elegible conforme a los propios términos y condiciones pactados por contrato por el BDE con los miembros de la Clase.

Procede que el Honorable Tribunal declare que el infortunado Contrato de Compraventa de Cartera de Préstamos celebrado entre el BDE y PR Recovery es nulo ab initio e ineficaz en cuanto a la

cobranza de los préstamos a todos los miembros de la Clase.

## V. **SÚPLICA**.

POR TODO LO CUAL, se solicita muy respetuosamente del Honorable Tribunal que declare HA LUGAR todas las alegaciones y causas de acción expuestas en esta Demanda de Clase, y que simultáneamente emita una resolución mediante la cual: (a) CERTIFIQUE la Clase bajo la Regla 20 de Procedimiento Civil; y (b) ORDENE a PR Recovery a cesar, desistir y paralizar todas y cada una de las acciones judiciales de cobro de dinero y de ejecución de colaterales siendo tramitadas por PR Recovery en contra de los miembros de la Clase ante los tribunales del Estado Libre Asociado de Puerto Rico y de los Estados Unidos de América, hasta tanto este pleito de clase y el Pleito de Nulidad hayan sido formalmente adjudicados mediante sentencias finales e inapelables, junto con cualquier otro pronunciamiento que en derecho proceda.

RESPETUOSAMENTE SOMETIDA.

En San Juan, Puerto Rico, a 24 de agosto de 2020.

> LAMOUTTE LLC
> P.O. Box 9022185
> San Juan, Puerto Rico 00902
> Tel. 787-688-6036
>
> f/Carlos M. Lamoutte Navas
> Carlos M. Lamoutte Navas
> RUA 13,826
> cl@carloslamoutte.com