# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 20873**<br><br>(Jointly Administered) |

## OBJECTION TO CARLOS LAMOUTTE'S
*MOTION TO INTERVENE AND TO INFORM THE EXISTENCE AND CONTINUANCE OF AN UNRESOLVABLE CONFLICT OF INTEREST IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 (SIC) ET SEQ. AND PETITION FOR: (A) THE PERMANENT DISQUALIFICATION OF O'NEILL & BORGES LLC AS COUNSEL TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AND (B) THE DISALLOWMENT AND DISGORGEMENT OF LEGAL FEES* **[DOCKET NO. 20873]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations). Notably, the Economic Development Bank for Puerto Rico is not a Title III debtor.

i

# **Contents**

PRELIMINARY STATEMENT ................................................................................................. 2

LEGAL AND FACTUAL BACKGROUND ............................................................................. 6

    A.   PROMESA and the FOMB ........................................................................................... 6

    B.   O&B. ............................................................................................................................ 7

    C.   PRRADA. ..................................................................................................................... 8

    D.   The Economic Development Bank of Puerto Rico ("EDB") ....................................... 9

    E.   The EDB Loan Sale Transaction ............................................................................... 10

ARGUMENT ........................................................................................................................... 10

    A.   O&B did not concurrently represent parties with adverse interests in the EDB Agreement. ................................................................................................................... 10

    B.   Mr. Lamoutte Lacks Standing .................................................................................... 11

    C.   Mr. Lamoutte has not pled the requirements for intervention. .................................. 14

    D.   PRRADA does not apply to professional services rendered to the FOMB outside of Title III. ................................................................................................................................ 15

    E.   The *Motion* constitutes sanctionable litigation misconduct because it is part of a broader litigation campaign initiated by Mr. Lamoutte in bad faith to harass and strong-arm O&B (and through O&B, its client the FOMB) to obtain results he has not been able to achieve otherwise. ..................................................................................................................... 17

CONCLUSION ........................................................................................................................ 18

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 20873**<br><br>(Jointly Administered) |

### OBJECTION TO CARLOS LAMOUTTE'S
### *MOTION TO INTERVENE AND TO INFORM THE EXISTENCE AND CONTINUANCE OF AN UNRESOLVABLE CONFLICT OF INTEREST IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 (SIC) ET SEQ. AND PETITION FOR: (A) THE PERMANENT DISQUALIFICATION OF O'NEILL & BORGES LLC AS COUNSEL TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AND (B) THE DISALLOWMENT AND DISGORGEMENT OF LEGAL FEES* [DOCKET NO. 20873]

To the Honorable United States District Court Judge Laura Taylor Swain:

O'Neill & Borges LLC ("O&B") respectfully submits this objection (the "Objection") to the *Motion To Intervene And To Inform The Existence And Continuance Of An Unresolvable Conflict Of Interest In Violation Of The Puerto Rico Recovery Accuracy In Disclosures Act Of 2021, 48 U.S.C. 2101 (Sic) et seq. and Petition For: (A) The Permanent Disqualification of O'Neill & Borges LLC as Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) The Disallowment and Disgorgement of Legal Fees* [Docket No. 20873] (the "*Motion*"),

1

filed *pro se* by citizen and attorney[2] Mr. Carlos M. Lamoutte Navas, Esq. ("Mr. Lamoutte") in his
personal capacity. In support of its Objection, O&B respectfully states as follows:

### PRELIMINARY STATEMENT[3]

Mr. Lamoutte's *Motion* sets forth a fundamentally flawed analysis which is predicated on
false and misleading allegations, as well as a profound misunderstanding of the *Puerto Rico
Oversight Management and Economic Stability Act,* 48 U.S.C. §§ 2101 *et seq*. ("PROMESA"),
and the *Puerto Rico Recovery Accuracy in Disclosures Act* of 2021, Pub. L. 117-82 of Jan. 20,
2022, 136 Stat. 3 ("PRRADA").  In essence, the *Motion* invites this Court to mistakenly conclude
that a conflict of interest exists by drawing a false equivalency between the Economic
Development Bank for Puerto Rico ("EDB"), the Commonwealth of Puerto Rico
("Commonwealth"), and the Financial Oversight and Management Board for Puerto Rico
("FOMB").

As discussed below, the *Motion* is defective as a matter of law and must therefore be
denied.  However, at the outset, to dispel certain pernicious imputations in the *Motion,* O&B notes
that the *Motion*'s underlying premise –namely, that O&B provided any legal guidance to the
FOMB regarding the EDB Agreement– is simply false. Specifically, Mr. Lamoutte alleges that
O&B represented a purchaser of a loan portfolio from the EDB[4] while simultaneously, in its role

---

[2] On information and belief, Mr. Lamoutte is not admitted to practice before the bar of the U.S. District Court for the
District of Puerto Rico. He is, however, an attorney admitted to practice before the bar of the Supreme Court of the
Commonwealth of Puerto Rico.

[3] Capitalized terms used in this Preliminary Statement but not otherwise defined shall have the meanings given to
them in the "Background" section.

[4] Mr. Lamoutte refers to a certain *Loan Sale Agreement* dated as of September 7, 2018, by and between the EDB, as
seller, and PR Recovery and Development JV, LLC ("PR Recovery"), as purchaser (the "EDB Agreement"), whereby
–among other assets– **Mr. Lamoutte's clients'** debts were sold to the latter.

as counsel for the FOMB, somehow inducing the FOMB to decline to exercise its discretion to review the relevant loan sale contracts pursuant to its contract review policy.

Not only are these contentions based on nothing more than sheer speculation and fiction devoid of any evidentiary foundation but, more importantly, Mr. Lamoutte knows that his contentions lack foundation. He knows this because the FOMB itself advised Mr. Lamoutte via letter dated September 24, 2020 –that is, over a year before he filed his *Motion*– that the premise that O&B represented the Buyer in the transaction where the EDB loan portfolio was sold was incorrect.[5] Moreover, and in any case, O&B has never represented the FOMB in any matters pertaining to the EDB Agreement. Consequently, no conflicting representation could have existed – even if this Court were to give any credence to any of the remaining allegations in the *Motion*.

The *Motion*, moreover, fails as a matter of law. First, Mr. Lamoutte has not alleged any basis to grant him standing to pursue the relief sought in the *Motion*; he appears simply as a private citizen on a *pro se* basis. Second, even assuming *arguendo* that Mr. Lamoutte had any standing to pursue the relief sought in the *Motion*, PRRADA is plainly inapplicable. PRRADA applies to cases commenced under Section 304 of PROMESA and, although the Commonwealth was a debtor under Title III of PROMESA, the EDB is a separate legal entity to the Commonwealth, 7 P.R. Laws Ann. §§ 611a, *et al.,* and is **not** a debtor under Title III.

Mr. Lamoutte also complains about the exercise of the FOMB's discretion under its Contract Review Policy adopted pursuant to PROMESA Title II, particularly the FOMB's decision regarding whether to review or not the EDB Agreement under such policy. This complaint has already been rejected by the United States District Court for the District of Puerto Rico as

---

[5] *See*, *e.g.*, **Exhibit E**, at page 25.

3

untimely,[6] but, in any event, the fact remains that the FOMB was represented by a different law firm, **not** O&B, with respect to the analysis of the issues raised by the EDB Agreement. Because the alleged (albeit nonexistent) conflict of interest touted by Mr. Lamoutte involves contract review and thus arises under the FOMB's functions under Title II of PROMESA, while PRRADA applies to Title III, PRRADA is inapplicable to his *Motion*, which should be denied as a matter of law.

Mr. Lamoutte purports to cure this fatal flaw by suggesting either that: (i) the EDB is an arm or otherwise a component unit of the Commonwealth; or (ii) the designation of the EDB as a covered instrumentality somehow transformed the FOMB into its exclusive representative, thereby creating a conflict of interest actionable under PRRADA. *See*, *Motion*, ¶¶ 6, 7 ("In the Commonwealth's Title III Case, the Oversight Board serves as the sole representative of the Debtor, which includes the [EDB]").   This fallacy, however, at best reflects a gross misunderstanding of Section 315(b) of PROMESA, as the EDB is **not** a Title III debtor nor an entity constituting the Central Government of the Commonwealth.[7] See, *Informative Motion Regarding Entities Constituting the Central Government of the Commonwealth*, Docket No. 2828 (which does not include the EDB).

Finally, O&B must also address what appears to be a violation of Mr. Lamoutte's duty of candor to this Court.  Mr. Lamoutte did not disclose in his *Motion* that he is an attorney admitted to the Puerto Rico Bar. Instead, he represented himself to be a mere "citizen."[8]   See,

---

[6] Case No. 21-cv-1317 (RAM).

[7] O&B sought to disabuse Mr. Lamoutte of the notion that EDB is a Title III debtor. See, **Exhibit F**. Mr. Lamoutte's utter disinterest in even attempting to investigate whether his position had any merit prior to filing the *Motion* is additional evidence of his illegitimate goals in pursuing this matter.  See, **Exhibit G.**

[8] Canon 35 of the Puerto Rico Canons of Professional Ethics provides that "[t]he conduct of any member of the legal profession before the courts toward his client and in his relations with his colleagues should be candid and fair. It is

*Cont'd. in next page…*

https://www.carloslamoutte.com. Mr. Lamoutte, however, not only is an attorney admitted to

practice in Puerto Rico, but also publicly promotes himself as purportedly knowledgeable in

"bankruptcy settlements, plan confirmations and Section 363 asset sales." *Id.*

Most importantly, Mr. Lamoutte also failed to disclose that he represents parties with an

interest in the EDB Agreement. For example, he did not disclose that he sought to intervene, albeit

unsuccessfully, in an on-going litigation between the BDE and PR Recovery whereby the BDE is

challenging the legality of the EDB Agreement[9] on behalf of Mr. Lamoutte's clients, R&D Master

Enterprises, Inc., Pro Pave Corp., Matrix Transport Inc., María Magdalena Díaz Vila, and José A.

Rovira González. <u>See</u>, <u>*e.g.*</u>, **Exhibit A**. Mr. Lamoutte also failed to disclose that ***these same clients***

filed a complaint against the FOMB and its former Executive Director Natalie Jaresko before the

United States District Court for the District of Puerto Rico, Case No. 21-cv-1317 (RAM), seeking

to compel the FOMB to either approve or reject the EDB Agreement, and that that claim was

recently dismissed on April 12, 2022.[10] And Mr. Lamoutte *further* failed to disclose that he is a

litigant actively representing clients in litigation before the Courts of Puerto Rico seeking to set

---

not candid or fair to use means which are inconsistent with the truth nor should the judge be led to error misled by
using guile or false statements of fact or of the law. … A lawyer should deal candidly with the facts in taking the
statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes." CANONS OF
PROF'L. CONDUCT 35, 4 P.R. Laws Annot. Ap. IX, § 35. Moreover, the A.B.A. Model Rules of Professional Conduct
provide that "[a] lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal
system and a public citizen having special responsibility for the quality of justice." MODEL RULES OF PROF'L CONDUCT
pmbl., note 1 (AM. BAR ASS'N 2022). Furthermore, Rule 3.3 of the Model Rules of Professional Conduct "sets forth
the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative
process." MODEL RULES OF PROF'L CONDUCT 3.3 cmt. (AM. BAR ASS'N 2022).

Given that Mr. Lamoutte is a lawyer admitted to the practice of law in the Commonwealth of Puerto Rico, he is subject
to a duty to conduct himself with candor and fairness. Mr. Lamoutte's failure to disclose he is an attorney admitted to
the Puerto Rico Bar, as well as his role as counsel in other proceedings mentioned herein which impact his impartiality
in the filing of the *Motion,* would seem to be conduct proscribed by the applicable codes of professional conduct.

[9] <u>See</u>, ¶ 17 of the *Motion.*

[10] This complaint was dismissed with prejudice on April 12, 2022 (Docket No. 33, 21-cv-1317 (RAM)) and Mr.
Lamoutte's clients are appealing that decision.   Shortly thereafter, Mr. Lamoutte commenced his scurrilous
contentions under the pretext of PRRADA via communications to the U.S. Trustee.

aside the EDB Agreement because, among other arguments, the FOMB has declined to exercise its discretion to review and approve the EDB Agreement.[11]

The most likely inference that can be drawn from Mr. Lamoutte's lack of candor to this Court and from the fundamentally-flawed legal theories he has espoused is that his *Motion* is nothing more the misguided effort of a litigator seeking to leverage the attention and importance of these Title III cases (and this Court's busy docket) to attract local media attention and/or advance his private clients' fledgling claims before the courts in Puerto Rico. See, *e.g.*, **Exhibit B.** Even if Mr. Lamoutte could demonstrate that his conduct was merely misguided, as opposed to malicious, the *Motion* is clearly an abuse of the Title III proceedings and should not be tolerated.

Therefore, and for the reasons discussed below, O&B respectfully asks this Court to (i) deny the *Motion* and (ii) issue an order requiring Mr. Lamoutte to show cause why a monetary sanction should not be imposed upon him to deter any future misconduct.

## LEGAL AND FACTUAL BACKGROUND

### A. PROMESA and the FOMB.

Upon its enactment in 2016, PROMESA, just as Chapter 9 of the Bankruptcy Code, did not incorporate Section 327 of the Bankruptcy Code, which deals with the employment of professional persons in cases filed under the Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.*  Instead, PROMESA vested the FOMB with complete autonomy to retain legal counsel.  *See*, Section 108(b), 48 U.S.C. 2128.  Sections 316 and 317 of PROMESA further underscore the FOMB's

---

[11] See, e.g., *PR Recovery and Development JV, LLC, et al. v. José A. Rovira González*, et al., BY2020CV01413 (Mr. Lamoutte represents defendants, except for BDE); *PR Recovery & Development JV, LLC v. Casa Lee, SE, et al.*, SJ2020CV04138 (Mr. Lamoutte represents defendants); *Jose A. Rovira González, et al. v. Banco Desarrollo Económico, et al.*, SJ2020CV04491 (Mr. Lamoutte represents plaintiffs); *PR Recovery and Development LLC v. Grupo Pera, LLC, et al.*, SJ2020CV06153 (Mr. Lamoutte represents defendants, except for BDE); and *PR Recovery & Development JV, LLC v. SLG de Luis M. Milán Dieppa, et al.*, CG2021CV01774 (Mr. Lamoutte represents defendants).

complete autonomy to retain counsel in connection with cases commenced under Title III of
PROMESA, noting that the FOMB may retain counsel "at its sole discretion." *See*, §§ 316 and
317, 48 U.S.C. §§ 2176-77.

On October 20, 2016, the FOMB published a Request for Proposals ("RFP") for interested
counsel to be retained as outside counsel.[12]   On October 24, 2016, the FOMB issued certain
qualifications to its RFP, noting that "[t]he Board recognizes that many respondents to the RFP
will have some connections to the fiscal crisis and to Puerto Rico generally. The Board will have
to review each situation on its own merit. Therefore, the Board encourages all firms that believe
they are qualified to submit a response to the RFP." *See*, **Exhibit C**.

O&B timely submitted a proposal to the FOMB and, on November 27, 2016, the FOMB
announced its selection of "Proskauer Rose LLP as lead outside legal counsel, [and] O'Neill &
Borges LLC as outside legal counsel." *See*, **Exhibit D**.

## B.  O&B.

O&B is a full-service law firm established in 1962, and located in San Juan, Puerto Rico.
O&B's attorneys strive to adhere to the highest standards of legal and ethical excellence and
service.   O&B has a long-standing history of being involved in many of the most significant
corporate transactions and adversarial proceedings in Puerto Rico, including these proceedings
arising under Title III of PROMESA.

As any full-service law firm, O&B has consistently implemented a firm wide policy to
identify and avoid any situations that would even create the appearance of an ethical conflict of
interest.   O&B has developed and implements various internal controls to verify and identify

---

[12] See, https://drive.google.com/file/d/1McTD5d_oTbfMut6eGjUpm14xj4ElaAD4/view.

whether a potential conflict of interest exist whenever new clients approach the firm for services, as well as when existing clients refer new matters to the firm.

In accordance with the above, the FOMB has retained other Puerto Rico counsel to represent it in matters arising under Titles I, II and III when O&B has deemed that it could not ethically represent the FOMB. *See*, *e.g.,* Docket No. 8016 ("*First Interim Application of Gierbolini & Carroll Law Offices, P.S.C. for Allowance of Compensation For Services rendered and Reimbursement of Expenses Incurred as Attorneys to the Financial Oversight and Management Board for Puerto Rico….");* and Docket No. 20831 ("*Urgent Unopposed Motion Seeking Extension of Deadline to File Verified Statement of A&S Legal Studio, PSC….*", a law firm engaged as local conflicts counsel for Oversight Board as representative of the Title III Debtors).

Among the many matters as to which O&B has not provided legal assistance to the FOMB are the FOMB's analysis, decisions, and actions relating to the EDB Agreement. To avoid any confusion, O&B expressly affirms that it has **not** provided any such assistance to the FOMB with respect to the EDB Agreement.

## C. PRRADA.

PRRADA was enacted more than five years after O&B was engaged by the FOMB. PRRADA sets forth disclosure requirements "in connection with the review and approval of professional compensation …. **filed after January 20, 2022**," pursuant to sections 316 and 317 of PROMESA (*i.e.*, Title III of PROMESA).  *See*, 48 U.S.C.A. § 2178(e)(2) (Westlaw through P.L. 117-80) (emphasis added). Thus, by its own terms, PRRADA applies ***solely*** to requests for compensation for services that were filed ***after*** January 20, 2022 ***and*** for services rendered in a case commenced under Title III of PROMESA. *See*, PRRADA Sections 2(b)(1) and 2(e). Under PRRADA, professionals are required to submit verified statements identifying their connection to

parties identified in the List of Material Interested Parties ("MIP List").[13] Pursuant to PRRADA, the US Trustee is tasked with reviewing the verified statements submitted by professional persons and given the discretion to object to non-compliant disclosures. *See*, PRRADA, Section 2(d).

This Court entered an Order approving the MIP List on March 30, 2022. *See*, Docket No. 20467. The MIP List does **not** include the EDB. *See*, Docket No. 20458. The MIP List further does **not** include PR Recovery (the purchaser in the EDB Agreement) nor Parliament Capital Management, LLC, Parliament High Yield Fund, LLC and Island Portfolio Services, LLC, the other entities which Mr. Lamoutte identified as alleged "stalking horses" in his *Motion*. *Id.*

**D. The Economic Development Bank of Puerto Rico ("EDB").**

The EDB was created as a public instrumentality of the Commonwealth pursuant to Act No. 22 of 1985. 7 P.R. Laws Ann. §§ 611 *et seq.* The EDB has "its own legal personality and existence ***apart from the Commonwealth of Puerto Rico*** and any of its agencies, instrumentalities or public corporations." 7 P.R. Laws Ann. § 611a(b) (emphasis added). The EDB has legal authority to "sue and be sued." 7 P.R. Laws Ann. § 611b(a). The Commonwealth is not liable for EDB's debts, nor does the Commonwealth own the EDB's funds, as the "debts, obligations, contracts, notes, receipts, expenses accounts, funds, enterprises and properties of the [EDB] shall be its sole responsibility and ***not*** the responsibility of the Commonwealth of Puerto Rico…." See, 7 Laws P.R. Ann. § 611a(c) (emphasis added). In other words, the EDB has its own legal existence, separate and distinct from the Commonwealth and any of its agencies, instrumentalities, or public corporations. It is not an arm of the Commonwealth for any purpose relevant here.

---

[13] As per the Court's order granting an extension of time to that effect, the deadline for O&B to file its verified statement in compliance with PRRADA has been extended to June 30, 2022. See, Docket No. 20801.

### E. The EDB Loan Sale Transaction.

The core of Mr. Lamoutte's meritless contention arises from a transaction pursuant to which the EDB sold a portfolio of defaulted loans to PR Recovery. For context, O&B draws the following summary of the EDB Agreement from the *Opinion and Order* entered by Honorable Judge Arias Marxuach:

> Succinctly stated, Plaintiffs take issue with the [EDB] sale of a loan portfolio valued at $384,269,047.00 to private investor PR Recovery … via a Loan Sale Agreement (the "[EDB] Agreement"). [Complaint,] at 4, 7. PR Recovery is currently attempting to collect the amounts owed by Plaintiffs. *Id*. Plaintiffs contend the [EDB] Agreement was signed without prior evaluation and approval by the Board, which PROMESA requires for review of all local government transactions of $10,000,000 or more. *Id.* at 5 and 10. Consequently, they request the Court declare this failure to evaluate as inconsistent with: (1) PROMESA; (2) the Board's Contract Review Policy, and (3) earlier Board conduct regarding government contracts. Id. at 16. Lastly, they request this Court compel the Board to either approve or deny the Agreement. *Id.* at 13-16.

Docket No. 33, Civil Case No. 21-cv-1317 (RAM) (dismissing the claims asserted by Mr. Lamoutte's state-court clients against the FOMB as time-barred).[14]

### ARGUMENT

### A. O&B did not concurrently represent parties with adverse interests in the EDB Agreement.

O&B contends that the *Motion* must be denied as a matter of law because PRRADA is inapplicable to this matter, given that the EDB is not a Title III debtor. Consequently, any analysis of whatever role it played as counsel to any entity interested in the EDB Agreement is ultimately irrelevant. However, given the scurrilous nature of Mr. Lamoutte's unverified allegations in his *Motion*, O&B is compelled to dispel the notion that it has incurred in any conflicts of interest.

---

[14] The FOMB is represented in that case by its local conflicts counsel A&S Legal Studio, PSC.

Pursuant to Rule 1.7 of the Model Rules of Professional Conduct,[15] a concurrent conflict of interest exists when:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Such a conflict does not exist in this case because O&B did **not** represent the FOMB in any matter regarding the EDB Agreement. It also did not represent the EDB's counterparty to that agreement, but the legal point is that, even if it had, such representation would not have been adverse to the FOMB. Therefore, O&B did not engage in the concurrent conflicting representation of two clients with potentially adverse interests.

In addition to this clarification, the *Motion* is legally deficient and should be denied as a matter of law.

## B. Mr. Lamoutte Lacks Standing

Mr. Lamoutte has no standing because he has no personal interest in the outcome of the subject matter of his *Motion to Intervene*. Article III of the U.S. Constitution "confines federal courts to the adjudication of actual cases and controversies." *Pagan v. Calderon*, 448 F.3d 16, 27 (1st Cir. 2006). "A case or controversy exists only when the party soliciting federal court jurisdiction […] demonstrates such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *See*, *Katz v. Pershing*, LLC, 672 F.3d 64, 71 (1st Cir. 2012). In practical terms, this means that, as a threshold matter, a party in federal court must demonstrate to the Court that it has

---

[15] Counsel appearing before the U.S. District Court for the District of Puerto Rico are subject to the Model Rules of Professional Conduct (the "Model Rules"), adopted by the American Bar Association, as amended. *See*, Local Rule 83e(a).

standing to bring a specific claim. *See*, *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) ("the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf") (internal quotations and citations omitted).

As this Court has noted, "[s]tanding has both constitutional and prudential dimensions." *See*, *Jones v. Puerto Rico Elec. Power Auth.*, 546 F. Supp. 3d 141 (D.P.R. 2021). Article III of the U.S. Constitution "requires that a plaintiff demonstrate three things to establish standing: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) the ability of a "favorable decision" by the court to redress the plaintiff's injury. *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). "Prudential standing under Article III of the U.S. Constitution requires that a party demonstrate that its claim is premised *on its own legal rights (as opposed to those of a third party)*." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 301 F. Supp. 3d 306, 312 (D.P.R. 2017) (*citing Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) (emphasis added; internal quotations omitted)).  A party lacks standing when their interest "is not distinct from that of *every other citizen or taxpayer.*" *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 404 F. Supp. 3d 536, 549–50 (D.P.R. 2019) (emphasis added) (*citing Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999) (internal quotations omitted)).

Here, Mr. Lamoutte purports to seek the relief in the *Motion* in his capacity as a "citizen,"[16] without even attempting to explain what **personal** interest he has in the Title III proceeding where

---

[16] Because Mr. Lamoutte is not acting in a representative capacity, O&B reserves the right to address the extent to which he has waived any basis to assert attorney-client privilege with regards to the facts alleged in his *Motion*.

he seeks such relief, or even in the EDB Agreement that serves as the crux of his baseless claim

for disqualification.  Even if he had filed his *Motion* in his role as counsel for his numerous clients

in local court that do seem to have an interest in the EDB Agreement, neither Mr. Lamoutte nor

his clients have been clients of O&B who could therefore complain of O&B's purported role in

the EDB Agreement.  And even though the First Circuit has ruled that nonclients' attorneys may

in limited circumstances have standing to request disqualification of opposing counsel, those

circumstances are not present here. Instead, strong constitutional and prudential considerations

foreclose Mr. Lamoutte's tenuous claim to standing to request O&B's disqualification as counsel

for the FOMB here.

  The only injury to Mr. Lamoutte that can be inferred from the *Motion* is that his clients

have been unsuccessful in prosecuting claims against the FOMB, and that Puerto Rico courts have

not ruled in his favor regarding his clients' attempts to unburden themselves of their payment

obligations by voiding the loan sale transaction set forth in the EDB Agreement. That is plainly

insufficient to confer Art. III standing because that allegation does not show how **he** has suffered

a concrete and particularized injury in fact.

  Furthermore, prudential standing considerations should be heightened by the proposition

that "someone extraneous to an attorney-client relationship raising the specter of a conflict of

interest stemming precisely from this privity and which may result in the removal of counsel of

choice raises valid and competing concerns. T**he risk of this mechanism being used for tactical

or strategic purposes** …. must be weighed by the court as well as the effect of negating chosen

attorney." *Combustion Eng'g Caribe, Inc. v. George P. Reintjes Co.*, 298 F. Supp. 2d 215, 219

(D.P.R. 2003) (citations and internal quotations omitted; emphasis added). Mr. Lamoutte's lack of

a personal stake in the EDB Agreement, lack of an injury related to the Title III process, and his

on-going representation of clients with interests adverse to the FOMB, together signal that the *Motion* is precisely the type of purely tactical and harassing attempt to weaponize motions for disqualification that has earned courts' reluctance to grant those requests. *See*, *Moss v. TACC Int'l Corp.*, 776 F. Supp. 622, 623–24 (D. Mass. 1991) (citations omitted) (noting that "courts have been reluctant to disqualify attorneys because of the severe consequences of a disqualification" and that "[t]his reluctance stems from the fact that disqualification has an **immediate adverse effect on the client** by separating him from the counsel of his choice. Also, many times such motions are made **for tactical, not substantive, reasons** and will most likely cause delay in the litigation" (emphasis added)).

In sum, Mr. Lamoutte's efforts to deprive the FOMB of its chosen counsel,[17] submitted just a few weeks after the dismissal of his clients' complaint against the FOMB, fails because Mr. Lamoutte has not pled that he has suffered any injury in fact. That is enough to conclude that he lacks standing to move this Court for the relief sought in the *Motion*. And any lingering doubts on this score should be outweighed by the clear risk that his motion was filed for tactical purposes.

### C. Mr. Lamoutte has not pled the requirements for intervention.

Standing is not enough for intervention. In addition, Rule 2018 of the Federal Rules of Bankruptcy Procedure ("Rule 2018") requires that a movant establish that it has an economic or similar interest in a matter which is not adequately represented, and that intervention would not result in undue delay or prejudice. *In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 550 (D.N.H. 1988); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989). Rule 2018 is intended to give effect to 11 U.S.C. § 1109(b) of the Bankruptcy Code, which provides, in pertinent part, that a "party in interest, including the debtor, the trustee, a creditors' committee, an

---

[17] *See*, Sections 108(b), 316, and 317 of PROMESA.

equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a [bankruptcy] case."[18] A party in interest is one whose pecuniary interests are directly affected by the bankruptcy proceedings. *See*, *In re Torres Martínez*, 244 B.R. 167 (B.A.P. 1st Cir. 2000).

Mr. Lamoutte has not alleged that he is a creditor or any of the other expressly identified parties in interest under 11 U.S.C. § 1109(b).[19]  While the list in Section 1109(b) is non-exhaustive, Mr. Lamoutte has failed to plead any direct legal interest in the Commonwealth's Title III case. *See*, *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 650 (E.D. Mich. 1994) (where a party is merely interested in the outcome of a matter but does not have a direct legal interest in the bankruptcy case that party is not a "party in interest."). This alone suffices to deny his request to intervene in this matter.

### D. PRRADA does not apply to professional services rendered to the FOMB outside of Title III.

Even assuming *arguendo* that Mr. Lamoutte has standing to intervene and/or to appear before this Title III Court, one of the *Motion*'s fundamental flaws is that it invites this Court to draw a false equivalency between the EDB, the Commonwealth, and the FOMB.  Mr. Lamoutte argues that any representation by O&B of interests adverse to the EDB constitutes a representation adverse to the interests of the FOMB, thereby creating an unavoidable conflict of interest.  He forgets, however, that the EDB is a legal entity that is separate from the Commonwealth (and the FOMB, for that matter) and that the EDB is not and has not been a debtor under Title III of

---

[18] "The Advisory Committee Note indicates that Rule 2018 was intended to implement §§ 1109 and 1164 of the Bankruptcy Code. Resolution Trust Corp. v. Russell Corp., 156 B.R. 347, 349 (N.D. Ga 1993).

[19] Section 1109(b), incorporated to these proceedings by virtue of Section 301 of PROMESA, 48 U.S.C. 2161, provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  *Id.*

PROMESA (nor represented by O&B). Moreover, Mr. Lamoutte's predicate assumption rests on his misguided notion that, because the EDB has been designated as a covered instrumentality by the FOMB, the FOMB must serve as its exclusive representative in any context pursuant to Section 315(b) of PROMESA. *See*, *Motion*, ¶¶6, 7. Mr. Lamoutte is wrong, and his misleading contentions fail to acknowledge the fact that the EDB is a separate and distinct legal entity from the Commonwealth (an entity that O&B also does not represent).  *See*, 7 P.R. Laws Ann. § 611a. Therefore, any contention that seeks to equate the Commonwealth with the EDB, let alone the FOMB, is plainly wrong.

Second, even a cursory reading of PROMESA clearly shows that Section 315(b) of PROMESA is inapplicable to the EDB. Although the FOMB serves as exclusive representative of debtors under Title III of PROMESA pursuant to Section 315(b) of PROMESA, the EDB is not (and has never been) a debtor under Title III of PROMESA.  Se̱e, Section 315(b) of PROMESA.

Finally, PRRADA sets forth disclosure requirements for professional persons seeking compensation pursuant to sections 316 and 317 of PROMESA **after** PRRADA's enactment. PRRADA, by its own terms, applies to requests for compensation filed within a Title III case and requires professional persons to disclose any connections with any entity or person on the MIP List.  *See*, PRRADA Section 2(b)(1). PRRADA further provides that the Court may deny allowance of compensation if during the professional person's employment in connection with the case, the professional person represents or holds an adverse interest in connection ***with the Title III case***. *See*, PRRADA Section 2(e)(2)(B).

Simply put, even assuming *arguendo* that Mr. Lamoutte's unverified, misleading, and false allegations were to be given any credence, as a matter of law, O&B's representation of an interest

adverse to the EDB –if any– does not equate to a representation adverse to the Commonwealth and therefore falls outside the purview of PRRADA.

**E.  The *Motion* constitutes sanctionable litigation misconduct because it is part of a broader litigation campaign initiated by Mr. Lamoutte in bad faith to harass and strong-arm O&B (and through O&B, its client the FOMB) to obtain results he has not been able to achieve otherwise.**

Mr. Lamoutte's arguments are not merely wrong but are, in fact, evidence of bad-faith litigation conduct. The Court may so find in light of (i) Mr. Lamoutte's failure to make significant disclosures concerning his active role as counsel for parties seeking to challenge the EDB Transaction, (ii) the frivolous legal arguments he developed in his Motion, (iii) the unqualified and unverified allegations of purported fact for which he has absolutely no basis, including representations as to the purported advice and counsel allegedly given by O&B to the FOMB regarding the EDB Agreement (*Motion*, at ¶ 21), and (iv) his pattern of harassment through multiple legal proceedings. Seen in this light, Mr. Lamoutte's *Motion* is nothing more than the vexatious tactic of a litigant who is intentionally misusing this forum and wasting the time and resources of this Court, the CW, the FOMB, and O&B in an effort to advance the interests of his clients in other fora.

That finding of bad faith, in turn, is sufficient to authorize the imposition of sanctions, whether it be under the Court's inherent powers, or under one of the various rules or statutory provisions authorizing the imposition of sanctions. For example, a federal court has inherent authority to award sanctions upon finding that a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).  If the Court makes such a finding and exercises its discretion to issue a fee-shifting sanction, such an order should be "limited to the fees the innocent party incurred solely because of the misconduct—

or put another way, to the fees that party would not have incurred but for the bad faith." <u>Goodyear Tire & Rubber Co. v. Haeger</u>, 137 S. Ct. 1178, 1183 (2017).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Attorney Lamoutte's *Motion To Intervene And To Inform The Existence And Continuance Of An Unresolvable Conflict Of Interest In Violation Of The Puerto Rico Recovery Accuracy In Disclosures Act Of 2021, 48 U.S.C. 2101 (Sic) Et Seq And Petition For: (A) The Permanent Disqualification Of O'Neill & Borges LLC As Counsel To The Financial Oversight And Management Board For Puerto Rico, And (B) The Disallowment And Disgorgement Of Legal Fees* and, in addition, order Attorney Lamoutte to show cause why sanctions should not be imposed upon him for engaging in frivolous and bad-faith litigation conduct.

Dated: June 2, 2022
San Juan, Puerto Rico.

Respectfully submitted,

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:   (787) 753-8944

*/s/ Carla García Benítez*
Carla García Benítez
USDC No. 203708
Email: carla.garcia@oneillborges.com

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Carla García Benitez*
Carla García Benítez