**Hearing Date: September 21, 2022 at 9:30 a.m. AST**
**Objection Deadline: June 23, 2022** (for parties other than the Fee Examiner)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO<br>RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## SUMMARY COVER SHEET TO THE FOURTEENTH
## INTERIM APPLICATION OF JENNER & BLOCK LLP
## AS COUNSEL TO THE OFFICIAL COMMITTEE OF
## RETIRED EMPLOYEES OF THE COMMONWEALTH OF
## PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR
## SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
## INCURRED FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022

| | |
|---|---|
| Name of Applicant: | Jenner & Block LLP |
| Authorized to Provide Services To: | The Official Committee of Retired Employees of the Commonwealth of Puerto Rico |
| Retention Date: | June 16, 2017 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| Period for which compensation and reimbursement is sought: | October 1, 2021 through January 31, 2022 |
| Amount of interim compensation sought as actual, reasonable, and necessary: | $981,602.46 |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $124,211.84 |
| Are your fee or expense totals different from the sum of previously served monthly statements? | No |
| Petition Date: | May 3, 2017 |
| Blended rate in this application for all attorneys: | $1,017.66 ($865.01 following 15% fee discount) |
| Blended rate in this application for all timekeepers: | $977.01 ($830.46 following 15% fee discount) |

This is an *interim* application.

The total time expended for Jenner's fee application preparation for the Interim Fee Period is approximately 16 hours and the corresponding compensation requested is approximately $13,000.

| | |
|---|---|
| Total compensation approved by interim order to date: | $21,265,915.98 |
| Total expenses approved by interim order to date: | $1,045,642.32 |
| Total compensation paid to date: | $21,937,363.89 |
| Total expenses paid to date: | $1,186,050.94 |
| Total compensation subject to objection: | None |
| Total expenses subject to objection: | None |
| Number of Professionals Included in this Application: | 14 |
| Difference Between Fees Budgeted and Compensation Sought: | $155,358.00 less than budget |

ii

| Number of Professionals Billing Fewer than 15 Hours to this Case: | 7 |
|---|---|
| Rates Higher than Those Disclosed at Retention: | Jenner adjusted its scheduled hourly rates as of January 1, 2018, January 1, 2019, January 1, 2020, January 1, 2021, and January 1, 2022. Time recorded from October 1, 2021 through December 31, 2021 is at 2021 rates; time recorded from January 1, 2022 through January 31, 2022 is at 2022 rates. |
| Objection Deadline: | June 23, 2022 (for parties other than the Fee Examiner) |

| Name of Professional | Title | Year Admitted | Department | Hourly Billing Rate (2021) | Total Billed Hours (2021) | Hourly Billing Rate (2022) | Total Billed Hours (2022) | Total Fees Requested |
|---|---|---|---|---|---|---|---|---|
| ROBERT D. GORDON | Partner | 1989 | Restructuring & Bankruptcy | $1,300 | 323.2 | $1,450 | 20.3 | $449,595.00 |
| MARC B. HANKIN | Partner | 1992 | Restructuring & Bankruptcy | $1,150 | 13.4 | N/A | N/A | $15,410.00 |
| LANDON S. RAIFORD | Partner | 2008 | Restructuring & Bankruptcy | $975 | 157.3 | $1,075 | 0.8 | $154,227.50 |
| MELISSA M. ROOT | Partner | 2003 | Restructuring & Bankruptcy | $1,025 | 46.5 | $1,150 | 5.7 | $54,217.50 |
| CATHERINE L. STEEGE | Partner | 1982 | Restructuring & Bankruptcy | $1,300 | 83.1 | $1,450 | 1.4 | $110,060.00 |
| BREANA K. DROZD | Associate | 2021 | Restructuring & Bankruptcy | $560 | 0.8 | N/A | N/A | $448.00 |
| KATHERINE A. ROSOFF | Associate | 2018 | Litigation | $755 | 8.9 | N/A | N/A | $6,719.50 |
| ADAM T. SWINGLE | Associate | 2018 | Restructuring & Bankruptcy | $660 | 2.4 | N/A | N/A | $1,584.00 |
| ANNA M. WINDEMUTH | Associate | 2020 | Litigation | $575 | 0.9 | N/A | N/A | $517.50 |
| LAURA E. PELANEK | Special Counsel | 2004 | Litigation | $660 | 263.1 | N/A | N/A | $173,646.00 |
| CARL N. WEDOFF | Special Counsel | 2010 | Restructuring & Bankruptcy | $895 | 158 | $895 | 23.3 | $162,263.50 |
| KENDALL E. ALLEN | Paralegal | N/A | Litigation | $335 | 12.7 | N/A | N/A | $4,254.50 |
| CATHERINE R. CARACCI | Paralegal | N/A | Litigation/Restructuring & Bankruptcy | $360 | 55.5 | N/A | N/A | $19,980.00 |
| JESSICA M. MERKOURIS | Paralegal | N/A | Litigation | $405 | 4.7 | N/A | N/A | $1,903.50 |
| **Sub-Total*** | | | | | | | | **$1,154,826.50** |
| Less 15% Fee Discount on all matters except the Non-working Travel Matter | | | | | | | | $173,224.04 |
| Less 50% Discount on Non-working Travel Matter | | | | | | | | $0.00 |
| **Total** | | | | | | | **1,182.0   Hours** | **$981,602.46** |

**FEE EXAMINER'S REQUESTED ATTACHMENTS TO FEE APPLICATIONS**

**List of Professionals** – Exhibit E
**Compensation by Project Category** – Exhibit G
**Expense Summary** – Exhibit F
**List of Professionals by Matter** – Exhibit H
**Detailed Time Records** – Exhibit H
**Detailed Expense Records –** Exhibit I; additional detail submitted to the Fee Examiner under separate cover
**Customary and Comparable Disclosures** – Exhibit D
**Budget & Staffing Plan –** Submitted to the Fee Examiner under separate cover

**Hearing Date: September 21, 2022 at 9:30 a.m. AST**
**Objection Deadline: June 23, 2022** (for parties other than the Fee Examiner)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**FOURTEENTH INTERIM APPLICATION OF JENNER & BLOCK
LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF
RETIRED EMPLOYEES OF THE COMMONWEALTH OF
PUERTO RICO FOR ALLOWANCE OF COMPENSATION FOR
SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
INCURRED FROM OCTOBER 1, 2021 THROUGH JANUARY 31, 2022**

To the Honorable United States District Court Judge Laura Taylor Swain:

Jenner & Block, LLP ("**Jenner**"), attorneys for The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") in the above-captioned Title III case ("**Title III Case**"), hereby submits this Fourteenth Interim Application (the

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority  (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

"**Application**") for an award of interim compensation for professional services rendered, and reimbursement for actual and necessary expenses incurred in connection with such services, for the period from October 1, 2021 through January 31, 2022 (the "**Interim Period**"). Jenner submits this Application pursuant to: sections 316 and 317 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("**PROMESA**"),[2] 48 U.S.C. §§ 2176, 2177; sections 105(a) and 503(b) of the Bankruptcy Code,[3] 11 U.S.C. §§ 105(a), 503(b); Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")[4]; Rule 2016-1 of the Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "**Local Rules**")[5]; the *Order Authorizing the Employment of Jenner & Block LLP as Attorneys for the Committee of Retired Employees* (the "**Retention Order**") [Dkt. No. 1002]; the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") [Dkt. No. 3269]; the *Third Amended Order Setting Procedures for Interim and Final Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 20546]; the United States Trustee's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"); the *First Amended Order Pursuant to PROMESA §§ 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] The Bankruptcy Code is codified at 11 U.S.C. §§ 101–1532. Unless otherwise noted, all Bankruptcy Code sections cited in the Application are made applicable to this Title III Case pursuant to section 301(a) of PROMESA.

[4] All Bankruptcy Rules referenced in this Application are made applicable to these Title III Cases pursuant to section 310 of PROMESA.

[5] The Local Rules are made applicable here by the Court's *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief* [Dkt. No. 249].

*Related Relief* (the "**Amended Fee Examiner Order**") [Dkt. No. 3324]; the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932]; the *Order Imposing Additional Presumptive Standards: Rate Increases and the Retentions of Expert Witnesses or Other Sub-Retained Professionals* ("**Additional Presumptive Standards Order**") [Dkt. No. 7678]; and the Fee Examiner's November 10, 2017 Memorandum (the "**Fee Examiner Memorandum**"). In support of this Application, Jenner submits the Certification of Robert D. Gordon (the "**Gordon Certification**"), attached hereto as **Exhibit A**, and respectfully represents as follows:

## Preliminary Statement

1.     On August 10, 2017, this Court entered the Retention Order, approving the Retiree Committee's employment of Jenner, effective as of June 16, 2017. A copy of Jenner's engagement letter is attached hereto as **Exhibit B**. The Retiree Committee represents approximately 167,000 retired employees of the Commonwealth of Puerto Rico ("**Commonwealth**" or "**Puerto Rico**") and various Commonwealth agencies and instrumentalities and their surviving beneficiaries, including Puerto Rico's retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories, who hold accrued pension benefits on account of having participated in the Employee Retirement System (the "**ERS**"), the Teachers Retirement System (the "**TRS**"), and/or the Judiciary Retirement System (the "**JRS**"), among other potential post-employment benefits  (the "**Retirees**"). The pensions of the Retirees, along with those held by currently active employees who have participated in the ERS, TRS, and/or JRS, were collectively underfunded by at least $50 billion as of the Petition Date. The Retirees are the largest group of creditors in these Title III Cases.

2.     During the Interim Period, Jenner performed a variety of legal services that were necessary and appropriate for the effective advancement of the Retirees' interests in this Title III

3

Case, including, among other things: meeting and conferring with the Retiree Committee; advising the Retiree Committee regarding its powers and duties; advising the Retiree Committee regarding matters pertaining to or likely to affect Retirees' pension, healthcare, and other accrued retirement benefits; representing the Retiree Committee at court hearings (including the Plan of Adjustment confirmation hearing) and negotiation sessions involving matters pertaining to or likely to affect the benefits of the Retirees; participating in fact and expert discovery on behalf of Retirees; and preparing on behalf of the Retiree Committee motions, applications, orders, and other legal papers.

3.      Jenner's work during the Interim Period was necessary for, and beneficial to, the Retirees and served to ensure that the Retirees' interests were represented and safeguarded in this Title III Case. Jenner respectfully requests that the Court award the fees and expenses requested in this Application.

### Jurisdiction

4.      The United States District Court for the District of Puerto Rico (the "**Court**") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

5.      Venue is proper pursuant to PROMESA section 307(a).

6.      Jenner makes this Application pursuant to PROMESA sections 316 and 317, Bankruptcy Code sections 105(a) and 503(b), Bankruptcy Rule 2016, Local Rule 2016-1, the Retention Order, the Interim Compensation Order, and the UST Guidelines.

### Background

7.      On May 3, 2017, Puerto Rico, by and through the Financial Oversight and Management Board for Puerto Rico ("**FOMB**"), as Puerto Rico's representative pursuant to section 315(b) of PROMESA, filed a petition with the Court under title III of PROMESA.

8.    On May 5, 2017, the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), by and through the FOMB, as COFINA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

9.    On May 21, 2017, the Puerto Rico Highways and Transportation Authority ("**HTA**"), by and through the FOMB, as HTA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

10.    On May 21, 2017, ERS, by and through the FOMB, as the ERS's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

11.    On July 3, 2017, the Puerto Rico Electric Power Authority ("**PREPA**"), by and through the FOMB, as PREPA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

12.    On September 27, 2019, the Puerto Rico Buildings Authority ("**PBA**"), by and through the FOMB, as PBA's representative pursuant to PROMESA section 315(b), filed a petition with the Court under title III of PROMESA.

13.    Through Orders of this Court, the Commonwealth, COFINA, HTA, ERS, PREPA, and PBA title III cases (collectively, the "**Title III Cases**") are jointly administered for procedural purposes only, pursuant to PROMESA section 304(g) and Bankruptcy Rule 1015. [*See* Dkt. Nos. 242, 537, 1417, 8829.]

14.    On June 15, 2017, the U.S. Trustee, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Retiree Committee, consisting of the following nine individuals: Blanca Paniagua, Carmen Nuñez, Juan Ortiz, Lydia Pellot, Marcos A. Lopez, (retired) Judge Miguel Fabre, Milagros Acevedo, Rosario Pacheco, and José Marin.[6] [Dkt. No. 340.]

---

[6] José Marin resigned from the Retiree Committee effective April 12, 2018.

### Jenner's Retention and Fee Request

15.     On June 16, 2017, the Retiree Committee elected to employ Jenner to represent the Retiree Committee.

16.     On July 19, 2017, the Retiree Committee filed its *Application for an Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 670] (the "**Retention Application**") pursuant to sections 105(a) and 1103 of the Bankruptcy Code.[7]

17.     On August 10, 2017, the Court entered the Retention Order approving Jenner's retention as counsel to the Retiree Committee, effective June 16, 2017, on the terms and conditions identified in the Retention Application. A copy of the Retention Order is attached hereto as **Exhibit C**. Pursuant to the Retention Order, Jenner is entitled to compensation for reasonable, actual, and necessary professional services rendered and reimbursement of expenses incurred in connection with the Title III Cases.

18.     On October 6, 2017, the Court entered an Order appointing Brady Williamson as the fee examiner (the "**Fee Examiner**") in these Title III Cases. [Dkt. No. 1416.]

19.     On June 20, 2018, the Court entered the Amended Fee Examiner Order.

20.     On December 15, 2017, Jenner filed its *First Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 16, 2017 Through September 30, 2017* (the "**First Interim Application**") [Dkt. No. 2050], seeking $2,051,975.37 in compensation and $60,916.21 in expenses. On March 7, 2018, the Court entered an Order approving the First Interim Application (the "**First Interim Order**") [Dkt. No. 2685] in

---

[7] In a chapter 11 case, a committee appointed under section 1102 of the Bankruptcy Code ordinarily would seek authority to employ counsel pursuant to section 327. Because PROMESA does not incorporate section 327 of the Bankruptcy Code, the Retiree Committee moved for approval of its Retention Application pursuant to sections 105(a) and 1103(a). *See* PROMESA § 301(a) (omitting Bankruptcy Code sections 327 and 328 from incorporation into PROMESA).

the amount of $2,030,996.12 in compensation and $60,485.71 in expenses, reflecting certain reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the First Interim Order.

21.    On March 19, 2018, Jenner filed its *Second Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2017 Through January 1, 2018* (the "**Second Interim Application**") [Dkt. No. 2741], seeking $2,054,446.59 in compensation and $100,461.26 in expenses. On June 8, 2018, the Court entered an Order approving the Second Interim Application (the "**Second Interim Order**") [Dkt. No. 3279] in the amount of $2,004,389.11 in compensation and $97,413.89 in expenses, reflecting certain reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Second Interim Order.

22.    On July 16, 2018, Jenner filed its *Third Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1, 2018 through May 31, 2018* (the "**Third Interim Application**") [Dkt. No. 3535], seeking $1,969,909.52 in compensation and $71,940.52 in expenses. On November 9, 2018, the Court entered an Order approving the Third Interim Application (the "**Third Interim Order**") [Dkt. No. 4200] in the amount of $1,939,594.08 in compensation and $69,416.41 in expenses, reflecting $30,315.44 in fee reductions and $2,524.11 in expense reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Third Interim Order.

23.    On November 16, 2018, Jenner filed its *Fourth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2018 through September 30, 2018* (the "**Fourth Interim Application**") [Dkt. No. 4267], seeking

$1,817,932.76 in compensation and $108,986.92 in expenses, including $16,302.15 in compensation inadvertently omitted from the Third Interim Application. On March 14, 2019, the Court entered an Order approving the Fourth Interim Application (the "**Fourth Interim Order**") [Dkt. No. 5654] in the amount of $1,787,635.21 in compensation and $104,007.53 in expenses, reflecting $30,297.55 in fee reductions and $4,979.39 in expense reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Fourth Interim Order.

24.     On March 16, 2019, Jenner filed its *Fifth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2018 through January 31, 2019* (the "**Fifth Interim Application**") [Dkt. No. 5781, as corrected by Dkt. No. 5891], seeking $1,600,680.36 in compensation and $70,178.13 in expenses. On June 26, 2019, the Court entered an Order approving the Fifth Interim Application (the "**Fifth Interim Order**") [Dkt. No. 7670] in the amount of $1,573,774.60 in compensation and $66,973.19 in expenses, reflecting $26,905.76 in fee reductions and $3,204.94 in expense reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Fifth Interim Order.

25.     On July 15, 2019, Jenner filed its *Sixth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1, 2019 through May 31, 2019* (the "**Sixth Interim Application**") [Dkt. No. 7967], seeking $1,971,702.85 in compensation and $83,881.88 in expenses. On December 6, 2019, the Court entered an Order approving the Sixth Interim Application (the "**Sixth Interim Order**") [Dkt. No. 9488] in the amount of $1,941,702.85 in compensation and $76,830.83 in expenses, reflecting $30,000.00 in fee reductions and $7,051.05 in expense reductions recommended by the Fee

Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Sixth Interim Order.

26.     On November 15, 2019, Jenner filed its *Seventh Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2019 through September 30, 2019* (the "**Seventh Interim Application**") [Dkt. No. 9207], seeking $1,994,019.44 in compensation and $111,143.17 in expenses. On May 18, 2020, the Court entered an Order approving the Seventh Interim Application (the "**Seventh Interim Order**") [Dkt. No. 13150] in the amount of $1,961,656.51 in compensation and $108,302.29 in expenses, reflecting $32,362.93 in fee reductions and $2,840.88 in expense reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Seventh Interim Order.

27.     On March 16, 2020, Jenner filed its *Eighth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2019 through January 31, 2020* (the "**Eighth Interim Application**") [Dkt. No. 12406], seeking $1,245,646.31 in compensation and $62,799.73 in expenses. On July 24, 2020, the Court entered an Order approving the Eighth Interim Application (the "**Eighth Interim Order**") [Dkt. No. 13824] in the amount of $1,223,518.59 in compensation and $60,799.73 in expenses, reflecting $22,127.72 in fee reductions and $2,000.00 in expense reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Eighth Interim Order.

28.     On July 15, 2020, Jenner filed its *Ninth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1, 2020 through May 31, 2020* (the "**Ninth Interim Application**") [Dkt. No. 13678], seeking

$1,868,971.73 in compensation and $105,122.89 in expenses. On October 26, 2020, the Court entered an Order approving the Ninth Interim Application (the "**Ninth Interim Order**") [Dkt. No. 14925] in the amount of $1,797,644.34 in compensation and $105,122.89 in expenses, reflecting $71,327.39 in fee reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Ninth Interim Order.

29.     On November 16, 2020, Jenner filed its *Tenth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From June 1, 2020 through September 30, 2020* (the "**Tenth Interim Application**") [Dkt. No. 15152], seeking $1,294,238.13 in compensation and $110,631.98 in expenses. On March 8, 2021, the Court entered an Order approving the Tenth Interim Application (the "**Tenth Interim Order**") [Dkt. No. 15971] in the amount of $1,235,530.25 in compensation and $110,631.98 in expenses, reflecting $58,707.88 in fee reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Tenth Interim Order.

30.     On March 15, 2021, Jenner filed its *Eleventh Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From October 1, 2020 through January 31, 2021* (the "**Eleventh Interim Application**") [Dkt. No. 16054], seeking $1,110,091.07 in compensation and $90,736.96 in expenses. On August 3, 2021, the Court entered an Order approving the Eleventh Interim Application (the "**Eleventh Interim Order**") [Dkt. No. 17646] in the amount of $1,048,162.95 in compensation and $90,736.96 in expenses, reflecting $61,928.12 in fee reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses approved in the Eleventh Interim Order

31.     On July 15, 2021, Jenner filed its *Twelfth Interim Application for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred From February 1,*

*2021 through May 31, 2021* (the "**Twelfth Interim Application**") [Dkt. No. 17363], seeking

$1,212,387.30 in compensation and $47,339.95 in expenses. On October 4, 2021, the Court entered

an Order approving the Twelfth Interim Application (the "**Twelfth Interim Order**") [Dkt. No.

18371] in the amount of $1,177,030.52 in compensation and $47,339.95 in expenses, reflecting

$35,356.78 in fee reductions recommended by the Fee Examiner and agreed to by Jenner. Jenner

has received 100% payment of the fees and expenses approved in the Twelfth Interim Order.

33.     On November 15, 2021, Jenner filed its Thirteenth Interim Application for

Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred

From June 1, 2021 through September 30, 2022 (the "**Thirteenth Interim Application**") [Dkt.

No. 19230], seeking $1,591,028.65 in compensation and $61,375.41 in expenses. On March 18,

2022, the Court entered an Order approving the Thirteenth Interim Application (the "**Thirteenth

Interim Order**") [Dkt. No. 20412] in the amount of $1,544,280.85 in compensation and

$61,375.41 in expenses, reflecting $46,747.80 in fee reductions recommended by the Fee

Examiner and agreed to by Jenner. Jenner has received 100% payment of the fees and expenses

approved in the Thirteenth Interim Order.

33.     Pursuant to monthly fee statements, Jenner has received payment of $883,442.21

in fees and $124,211.84 in expenses that are also included in this Fourteenth Interim Application.

34.     Jenner's fees are based upon hours charged, recorded in tenth-of-an-hour

increments, at Jenner's ordinary and customary hourly rates in effect as of January 1 of the calendar

year in which the services are rendered, plus reimbursement of actual, necessary, out-of-pocket

expenses and other charges incurred by Jenner on behalf of the Retiree Committee. Jenner adjusts

its rates annually at the start of each calendar year, as disclosed in its Retention Application and

approved by the Retention Order. Time recorded from October 1, 2021 through December 31,

2021 reflects Jenner's 2021 rates; time recorded from January 1, 2022 through January 31, 2022 reflects Jenner's 2022 rates. These rates are consistent with the rates charged to other clients, including outside of bankruptcy. Jenner has shared its 2021 rates and 2022 rates with the Retiree Committee, and the Retiree Committee has approved these rates. For this matter, Jenner agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% from its rates in effect at the time the services are rendered.

35.     The cover sheet to this Application contains a schedule setting forth all Jenner professionals and paraprofessionals who have performed services on behalf of the Retiree Committee during the Interim Period, the capacity in which each individual is employed by Jenner, the hourly billing rate charged for services performed by each such individual, the aggregate number of hours expended by all such professionals and paraprofessionals, the aggregate fees billed, and, for attorneys, the year in which each professional was first licensed to practice law.

36.     By this Application, Jenner seeks allowance of (a) compensation of $981,602.46 for professional and paraprofessional services provided during the Interim Period; and (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $124,211.84.

37.     This is Jenner's fourteenth request for interim compensation in this Title III Case. As set forth in the Gordon Certification, all the services for which interim compensation is sought herein were rendered for and on behalf of the Retiree Committee in connection with this Title III Case. To the best of Jenner's knowledge and as disclosed in the *Declaration of Robert D. Gordon in Support of Application of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Order Approving the Employment of Jenner and Block LLP* [Dkt. No. 670-2]; the *First Supplemental Declaration of Robert Gordon in Support of Application for Order*

*Approving the Employment of Jenner & Block LLP* [Dkt. No. 1766]; the *Second Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 3612]; the *Third Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 16685]; the *Fourth Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 19863]; the *Fifth Supplemental Declaration of Robert Gordon in Support of Application for Order Approving the Employment of Jenner & Block LLP* [Dkt. No. 20123]; the *Verified Certification of Robert Gordon in Support of the First Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 2050-1]; the *Verified Certification of Robert Gordon in Support of the Second Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 2741-1]; the *Verified Certification of Robert Gordon in Support of the Third Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 3535-1]; the *Verified Certification of Robert Gordon in Support of the Fourth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 4267-1]; the *Verified Certification of Robert Gordon in Support of the Fifth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 5781-1]; the *Verified Certification of Robert Gordon in Support of the Sixth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 7967-1]; the *Verified Certification of Robert Gordon in Support of the Seventh Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 9207-1]; the *Verified Certification of Robert Gordon in Support of the Eighth Interim Application of Jenner & Block LLP for Allowance*

13

*of Compensation and Reimbursement of Expenses* [Dkt. No. 12406-1]; the *Verified Certification of Robert Gordon in Support of the Ninth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 13678-1]; the *Verified Certification of Robert Gordon in Support of the Tenth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 15152-1]; the *Verified Certification of Robert Gordon in Support of the Eleventh Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 16054-1]; the *Verified Certification of Robert Gordon in Support of the Twelfth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 17363-1]; the *Verified Certification of Robert Gordon in Support of the Thirteenth Interim Application of Jenner & Block LLP for Allowance of Compensation and Reimbursement of Expenses* [Dkt. No. 19230-1]; and the Gordon Certification attached as Exhibit A to this Application (together, the "**Gordon Declarations**"), Jenner is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and except as otherwise specified in the Gordon Declarations, Jenner's partners, associates, and special attorneys do not hold or represent any interest adverse to the Retiree Committee.

38.     Jenner might have in the past represented, might currently represent, and likely in the future will represent parties that are parties in interest in these cases in connection with matters unrelated to the Retiree Committee or the Title III Cases. In the Gordon Declarations, Jenner disclosed its connections to parties in interest in the Title III Cases that it has been able to ascertain using reasonable efforts. Jenner will update such disclosures, as appropriate, if Jenner becomes aware of relevant and material new information.

39.     Jenner performed the services for which it is seeking compensation solely on behalf of the Retiree Committee and not on behalf of any other committee, creditor, or other entity.

40.     Jenner has not received payment or a promise of payment from any source other than the Commonwealth for its services rendered and expenses incurred on behalf of the Retiree Committee or to be rendered or incurred in any capacity whatsoever in connection with the Title III Cases.

41.     Jenner does not share fees with any attorneys except to the extent permitted by section 504 of the Bankruptcy Code.

**Fees and Expenses Incurred During Interim Period**

**A.     Customary Billing Disclosures**

42.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by Jenner in this Title III Case are equivalent to the hourly rates and corresponding rate structure used by Jenner for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required. The rates and rate structure reflect that such complex matters typically are national in scope and typically involve great complexity, high stakes, and intense time pressures.

43.     **Exhibit D** to this Application is a summary of blended hourly rates for (i) Jenner professionals (excluding Restructuring and Bankruptcy attorneys) and (ii) timekeepers for which Jenner is seeking hourly compensation in this Application, as required by the UST Guidelines.

**B.     Fees Incurred During Interim Period**

44.     In the ordinary course of Jenner's practice, Jenner maintains records of the time spent on the professional services provided to the Retiree Committee. **Exhibit E** to this

15

Application is a summary of fees incurred and hours worked during the Interim Period for which compensation is sought on an hourly basis in this Application, setting forth the following information:

- the name of each attorney and paraprofessional for whose work compensation is sought;
- each attorney's year of bar admission and area of practice concentration;
- the aggregate time worked and fees billed by each attorney and each paraprofessional during the Interim Period;
- the hourly billing rates for each such attorney and paraprofessional at Jenner's applicable billing rates; and
- a calculation of total compensation requested using the rates disclosed in the Jenner Application.

**C.      Expenses Incurred During Interim Period**

45.      In the ordinary course of Jenner's practice, Jenner maintains a record of expenses incurred in rendering professional services to the Retiree Committee and for which reimbursement is sought. **Exhibit F** to this Application is a summary of the total amount of expenses for which Jenner seeks reimbursement with respect to each category of expenses for the Interim Period. The out-of-pocket disbursement sum is broken down into categories of charges.

<u>**Summary of Legal Services Provided During the Interim Period**</u>

46.      During the Interim Period, Jenner provided important professional services to the Retiree Committee in connection with this Title III Case. A summary of the various services Jenner provided to the Retiree Committee during the Interim Period is set forth in paragraphs 48 through 60 below.

47.      Jenner has established, in accordance with its internal billing procedures, subject matter categories (each, a "**Matter Category**") for keeping time records of the work performed for the Retiree Committee. A schedule setting forth a description of each Matter Category utilized in this case, the number of hours worked by Jenner attorneys and paraprofessionals for each Matter

16

Category, and the aggregate fees associated with each Matter Category is attached as **Exhibit G**.
In addition, subject to redaction for attorney-client privilege, work product, and confidentiality
where necessary to protect the Retiree Committee, Jenner's records of time worked providing
professional services to the Retiree Committee are attached hereto as **Exhibit H**, and Jenner's
records of expenses incurred in the rendition of professional services to the Retiree Committee
during the Interim Period are attached as **Exhibit I**.

48.     The following is a non-exhaustive summary, by Matter Category, of the
professional services provided by Jenner during the Interim Period. This summary is organized in
accordance with Jenner's internal system of matter numbers.

**Committee Governance and Meetings**
**Total Hours: 26.70          Fees: $32.233.50**

49.     Jenner's recorded time entries in this Matter Category relate to its meetings with
the Retiree Committee and various other communications with the Retiree Committee and its
members. The meetings are scheduled periodically so that Jenner can report to, and take direction
from, the Retiree Committee on important matters and positions in the Title III Cases. The time
entries include, among other things:  (a) counseling and assisting the Retiree Committee in the
proper performance of its duties; (b) preparing for, conducting, and participating in meetings of
the Retiree Committee, including presenting on the status of the Title III Cases and other relevant
matters; (c) assisting in preparing agendas and minutes for those meetings; (d) drafting summary
reports to the Retiree Committee regarding developments in the Title III Cases and the Retiree
Committee professionals' work; and (e) rendering other services related to Committee governance.
For each Committee meeting, each Jenner and Bennazar attorney attending the meeting was
responsible for presenting to and/or otherwise advising the Retiree Committee regarding various
agenda items according to their varying knowledge and expertise.

**Court Hearings**
**Total Hours: 129.00          Fees: $154,572.50**

50.     Jenner's recorded time entries in this Matter Category include, among other things:
(a) attending and representing the Retiree Committee at Court hearings, including the eight-day
Plan of Adjustment confirmation hearing; and (b) preparing for Court hearings, including
reviewing hearing agendas, pleadings, and other submissions considered at or relevant to Court
hearings.

**Fiscal Plan/Plan of Adjustment**
**Total Hours: 851.50          Fees: $826,539.00**

51.     It was imperative that the Retiree Committee play an active and vital role in the
Plan of Adjustment and Disclosure Statement process to protect the interests of the Retiree
Committee's 167,000 constituents and ensure the implementation of the FOMB and Retiree
Committee's June 7, 2019 Plan Support Agreement (the "**Retiree Committee PSA**"). During the
Interim Period, Jenner's time entries reflect: (a) extensive review, analysis, and negotiation of the
content of the various iterations of the Plan of Adjustment, Plan Supplement documents, proposed
Plan Confirmation Order, and related materials to ensure these documents satisfy PROMESA's
requirements and are consistent with the Retiree Committee PSA and the interests of Retirees
generally; (b) drafting and negotiation of a complex Pension Reserve Guidelines document and
Pension Reserve Deed of Trust contemplated under the PSA and Plan of Adjustment for, among
other things, the creation of a pension reserve trust, a pension reserve board to manage the trust's
assets, and a pension benefits council to oversee various Plan matters on behalf of retirees post-
confirmation; and (c) participation in Plan-related document discovery and depositions. Jenner
advised the Retiree Committee with respect to the extensive developments concerning the Plan of
Adjustment; analyzed challenges to the Disclosure Statement and Plan of Adjustment; and
conducted diligence of materials produced in discovery relating to confirmation of the Plan of

Adjustment. As the Plan of Adjustment dictates the ultimate disposition of Retiree benefits in the Title III Cases, Jenner's work in this Matter Category was necessary and appropriate.

### Case Administration/Miscellaneous
**Total Hours:  92.00   Fees: $69,715.50**

52.    Jenner's recorded time entries in this Matter Category include, among other things: (a) meeting internally and with other Retiree Committee professionals on strategy, allocation of assignments, and other matters; (b) reviewing legal and political developments relevant to the status and prosecution of the Title III Cases, including developments with respect to confirmation of the Plan of Adjustment; (c) communicating with the FOMB, AAFAF, the Official Committee of Unsecured Creditors, and other parties-in-interest in the Title III Cases regarding general matters; (d) reviewing relevant pleadings and court submissions not attributable to another Matter Category; (e) case and project management; and (f) monitoring public meetings of the FOMB. Jenner conducts periodic calls among Jenner professionals and, prior to confirmation of the Plan of Adjustment, generally held a weekly call among Jenner and the Retiree Committee's other retained professionals to discuss the case status, delegate work, and collaborate on strategy. These calls are designed to both enhance the effective delivery of professional services as well as promote the efficient delivery of those services through coordination of work plans.

### Employment of Professionals/Fee Applications (Jenner Professionals)
**Total Hours: 40.8              Fees: $35,249.00**

53.    Jenner's recorded time entries in this Matter Category include, among other things: (a) preparing Jenner's Thirteenth Interim Application and monthly fee statements, and specifically, ensuring compliance with UST Guidelines and those of the Fee Examiner; (b) reviewing Jenner's invoices to protect confidentiality and privilege; (c) preparing supplemental disclosures regarding Jenner's possible connections to parties in interest in the Title III cases; (d) preparing the required notice of Jenner's hourly rate increases effective January 1, 2022; and (e) reviewing PRRADA

19

legislation and related court filings and other materials to gain an understanding of Jenner's compliance responsibilities thereunder. Jenner does not bill time for routine billing and related administrative tasks.

**Employment of Professionals/Fee Applications (Non-Jenner Professionals)**
**Total Hours: 33.20          Fees: $27,565.00**

54.     Jenner's recorded time entries in this Matter Category include, among other things, assisting the Retiree Committee's financial advisors, actuaries, Information Agent, and Retiree Committee members with their thirteenth interim compensation and expense applications and preparing their monthly statements.

**Claims Issues**
**Total Hours: 4.40          Fees: $3,322.00**

55.     Jenner's recorded time entries in this Matter Category include reviewing and analyzing claims objections relevant to the interests of the Retiree Committee's constituents.

**Communications with Retirees**
**Total Hours: 3.00          Fees: $3,810.00**

56.     A key duty of the Retiree Committee is to ensure that retirees receive clear and accurate communications regarding developments in the Title III cases. Jenner's recorded time entries in this Matter Category include, among other things:  (a) working with the Retiree Committee's professionals to develop and review content for the Retiree Committee website; (b) developing and disseminating answers to frequently asked questions as well as other materials to provide information about the Title III Cases to Retirees through the Retiree Committee website, social media, and other platforms; and (c) analyzing and developing strategies for addressing other needs and initiatives for communicating with the Retiree Committee's constituents.

**Economic and Disaster Recovery Analysis**
**Total Hours: 0.20          Fees: $260.00**

57.     Jenner's recorded time entries in this Matter Category include, among other things, reviewing and analyzing reports regarding economic developments and disaster recovery efforts as they pertain to the Title III cases.

**Mediation**
**Total Hours: 0.40          Fees: $520.00**

58.     Jenner's recorded time entries in this category include time spent representing the Retiree Committee in all aspects of the confidential mediation process. Due to the confidential nature of the mediation, the time entries have been redacted. Jenner provided unredacted copies of its time to the Fee Examiner subject to the confidentiality protections set forth in paragraph 10 of the Amended Fee Examiner Order.

**PREPA**
**Total Hours: 0.80          Fees: $1,040.00**

59.     Jenner's recorded time entries in this Matter Category include reviewing and analyzing reports regarding PREPA's restructuring activities that may have implications for Retiree Committee constituents.

## Actual and Necessary Expenses Incurred by Jenner During the Interim Period

60.     As summarized in Exhibit F and as set forth in detail in Exhibit I, Jenner has incurred a total of $124,211.84 in expenses on behalf of the Retiree Committee during the Interim Period. The expenses identified in Exhibit F are intended to reimburse Jenner's direct costs that are not included in Jenner's hourly billing rates. Only clients who use services of the types set forth in Exhibit F of this Fee Application are charged for such services.

## Jenner's Requested Compensation and Reimbursement Should be Allowed

61.     The services for which Jenner seeks compensation in this Application were, at the time provided, reasonably calculated to be necessary for and beneficial to the Retiree Committee.

21

Jenner performed these services economically, effectively, and efficiently. Jenner submits that the compensation requested is reasonable considering the nature, extent, and value of such services to the Retiree Committee. Accordingly, Jenner submits that the compensation sought in this Application is warranted and should be approved.

**A.     Compensation Under Sections 316 and 317 of PROMESA.**

62.     Section 317 of PROMESA authorizes interim compensation of professionals and incorporates the substantive standards of section 316 of PROMESA to govern the Court's award of interim compensation. Section 316 of PROMESA provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered," and "reimbursement for actual, necessary expenses." 48 U.S.C. § 2176(a)(1), (2). Section 316(c) sets forth the criteria for such an award:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1)     the time spent on such services;
>
> (2)     the rates charged for such services;
>
> (3)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (6)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled

> practitioners in cases other than cases under this subchapter
> or Title 11.

48 U.S.C. § 2176(c).

63.     As analyzed below, Jenner submits the elements governing awards of
compensation under PROMESA justify the allowance requested.

### 1.     The Time and Labor Required

64.     During the Interim Period, Jenner's partners, associates, and paraprofessionals
spent 1,182.00 hours providing professional services to the Retiree Committee for which Jenner
seeks compensation on an hourly basis. Jenner coordinated its efforts with co-counsel to avoid
duplication of efforts. Jenner required this amount of time to conduct its investigations, research
and analyze numerous complex, novel issues arising from the Title III Cases, advise the Retiree
Committee with respect to these issues, participate in seeking resolution of these issues, and
perform the other tasks described herein.

### 2.     The Rates Charged for Such Services

65.     During the Interim Period, Jenner's hourly billing rates ranged from $975.00 to
$1,450.00 per hour for partners, from $560.00 to $775.00 for associates, $660.00 to $895.00 for
special counsel, from $335.00 to $405.00 for paraprofessionals. Based on the recorded hours
expended by Jenner's attorneys and paraprofessionals, the average hourly billing rate was
$1,017.66 for Jenner attorneys and $977.01 for all Jenner timekeepers prior to application of the
15% fee-rate discount provided by Jenner to the Retiree Committee, and $865.01 for Jenner
attorneys and $830.46 for all Jenner timekeepers after accounting for this discount.

66.     Jenner's hourly rates are set at a level designed to compensate Jenner fairly for the
work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead
expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These

hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged by Jenner and the marketplace for services requiring a similar level of sophistication and investment of resources.

67.     The hourly rates and corresponding rate structure that Jenner charges in these cases are equivalent to or less than the hourly rates and corresponding rate structure that Jenner charges for similar complex corporate, securities, litigation, and restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

### 3.     The Necessity of the Services and the Benefit to the Estate's Retirees

68.     As described herein, the services rendered by Jenner were necessary for the effective and efficient representation of the Retiree Committee's interests in this Title III Case. All those services benefitted the Retiree Committee and the Retirees.

69.     The Retiree Committee has reviewed this Application and has approved the compensation and reimbursement of expenses requested herein.

### 4.     The Reasonableness of the Time Spent, Based on the Complexity, Importance, and Nature of the Issues

70.     Jenner's work involved the representation of the Commonwealth's largest creditor constituency—Puerto Rico's 167,000 retired teachers, police officers, firefighters, judges, municipal clerks, engineers, and other government workers of all categories—whose pensions, along with those held by currently active employees who have participated in the ERS, TRS, and/or JRS, were collectively underfunded by at least $50 billion. Jenner's professional services during the Interim Period were necessary to ensure that the interests of the Retirees were properly represented and safeguarded and that all matters relevant to the Retiree Committee were handled in an appropriate manner. Failure of the FOMB and the Commonwealth to properly consider and protect Retiree interests in this Title III Case could have caused significant hardship to the Retirees

and contributed to the failure of any attempt to successfully reorganize and rehabilitate Puerto Rico and its economy. Moreover, this Title III Case presents complex and vital issues of first impression. Considering the foregoing, Jenner submits that the compensation requested is reasonable.

**5.      The Experience, Reputation, and Ability of the Attorneys Providing Services**

71.      As set forth in the Retention Application, the Retiree Committee selected Jenner as its counsel because its attorneys have extensive experience, knowledge, and resources in the areas of complex restructuring and bankruptcy, municipal finance, employee benefits and litigation, and Jenner has the ability to commit substantial resources to the representation of the Retiree Committee. The attorneys representing the Retiree Committee have expertise in the areas of municipal bankruptcies and retiree committee representation. Jenner attorneys have achieved a high degree of expertise and positive reputations in their respective fields. Jenner's Restructuring and Litigation departments frequently receive recognition for their skill and achievements, and Jenner is frequently cited as one of the leading U.S. law firms in these fields. In this complex and high-stakes Title III Case, the unique and specialized skills of Jenner's attorneys are critically important.

**6.      Customary Compensation**

72.      The work for which Jenner seeks compensation in this Application is of the type and nature for which Jenner customarily would seek compensation at the rates identified in this Application, even before applying the 15% discount here. Accordingly, the compensation Jenner seeks in this Application is comparable to, or less than, the compensation it would have sought for comparable work outside of the Title III Cases.

73.      Jenner submits that the compensation requested is reasonable under all the factors considered under sections 316 and 317 of PROMESA and that the factors justify allowing in full Jenner's compensation and reimbursement request.

74.     In view of the foregoing, Jenner respectfully requests that it be allowed interim compensation in the amount of $981,602.46 for services rendered during the Interim Period.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Retiree Committee.**

75.     For the Interim Period, Jenner requests reimbursement of $124,211.84 for reasonable and necessary costs and expenses incurred on behalf of the Retiree Committee.

76.     Jenner's normal billing rates do not take these costs and expenses into consideration. Rather, Jenner bills each cost and expense to the applicable client. Because of the disparity between different clients' requirements for expenses such as travel, computer-assisted research, teleconference services, postage, courier and messenger services, and photocopying, it is difficult to charge costs and expenses fairly and equitably by including them in Jenner's ordinary billing rates. Accordingly, Jenner generally charges each client for such costs and expenses separately, in each case, at Jenner's costs.

77.     Jenner does not include the amortization of the cost of any investment, equipment, or capital outlay in its charges for these services.

78.     Jenner represents that its rate for duplication for black-and-white copies is $0.11 per page, and for color copies the rate is $0.25 per page. In accordance with the Fee Examiner's guidance, Jenner is seeking reimbursement for black-and-white copies at the rate of $0.10 per page. Jenner does not charge for telecopier transmissions.

79.     Any services billed by a third-party vendor, except for certain computer-assisted research charges, are charged to the Retiree Committee in the amount billed to and paid by Jenner. Like many large law firms, Jenner has negotiated a special arrangement with computerized research companies under which Jenner pays a flat rate monthly fee for computerized research services. Consistent with its general policy of billing out-of-pocket expenses only to clients for

26

which the use of such services is required, Jenner separately charges each client for computer-assisted research. To account for such charges while passing through Jenner's cost savings resulting from its special arrangements, Jenner charges those clients for which such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services. These charges are intended to cover Jenner's direct costs for computerized research.

80.     Pursuant to Local Rule 2016-1(b)(7), Jenner seeks reimbursement for air travel limited to the amount spent on coach fare.

81.     Jenner has made reasonable efforts to minimize its costs and expenses in connection with its representation of the Retiree Committee. Each of the costs and expenses Jenner has incurred in providing professional services to the Retiree Committee was necessary, reasonable, and justified under the circumstances to serve the needs of the Retiree Committee.

**Statement by Jenner Under Paragraph C(5) of the UST Guidelines**

82.     This engagement involves variations from Jenner's standard and customary billing rates. Jenner has agreed to discount its fee rates, but not out-of-pocket expenses and internal charges, by 15% off its rates in effect at the time the services are rendered.

83.     None of the professionals included in this Application varied their hourly rate based on the geographic location of their cases.

84.     The Application does not include time or fees specifically related to reviewing or revising time records or preparing, reviewing, or revising invoices.

85.     The Application includes approximately six hours of time and approximately $5,000 of fees spent on reviewing Jenner time records to redact privileged or other confidential information and to ensure compliance with UST and Fee Examiner guidelines.

86.     The hourly rates specified in the Retention Application were effective June 16, 2017. Jenner's engagement letter with the Retiree Committee provides that Jenner periodically adjusts its scheduled hourly rates, generally at the beginning of a calendar year.

87.     Consistent with the UST Guidelines and the Fee Examiner Memorandum, Jenner began submitting budgets to the Fee Examiner for the period beginning January 2018. Jenner's budgets estimated fees for the Interim Period at $1,136,960.00. Jenner is requesting compensation of $981,602.46 for the Interim Period—$155,358.00 less than the amount budgeted.

## Reservation of Rights and Notice

88.     It is possible that some professional time expended or expenses incurred during the Interim Period are not reflected in the Application. Jenner reserves the right to include such amounts in future fee applications.

89.     Pursuant to the Interim Compensation Order, the Retiree Committee has provided notice of this Application to: (a) the U.S. Trustee; (b) counsel to the FOMB; (c) counsel to AAFAF; (d) counsel to the Official Committee of Unsecured Creditors; (e) the Fee Examiner; and (f) all parties that have filed a notice of appearance with the Clerk of this Court, pursuant to Bankruptcy Rule 2002 and applicable provisions of the Local Rules, and requested such notice.

## No Prior Request

90.     No prior application for the relief requested by this Application has been made to this or any other court.

WHEREFORE, Jenner respectfully requests that the Court enter an order awarding Jenner: (a) compensation of $981,602.46 for professional and paraprofessional services provided during the Interim Period; (b) reimbursement of actual, reasonable, and necessary expenses incurred in the Interim Period in the amount of $124,211.84; and (c) such other relief as is appropriate under the circumstances.

Dated: June 3, 2022

Respectfully submitted,

JENNER & BLOCK LLP

/s/ Robert Gordon
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, NY 10036-2711
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

*Counsel for The Official Committee of Retired Employees of Puerto Rico*

29