UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

## CARLOS LAMOUTTE'S REPLY TO THE OBJECTIONS TO DISQUALIFICATION FILED BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO AND THE LAW FIRM O'NEILL & BORGES, LLC, DOCKET ENTRY NUMBERS 21,094 AND 21,096, AND PETITION FOR DECLARATORY JUDGMENT

To the Honorable Judge Laura Taylor Swain:

Movant Carlos Lamoutte ("Movant"), appearing *pro se*, hereby respectfully submits this reply pursuant to the briefing order issued by this Court on May 20, 2022, Docket Entry No. 20,923 (the "May 20 Briefing Order"), and states and prays as follows:

### PRELIMINARY STATEMENT

1. Insiders and friends of the PROMESA[1] establishment cannot be allowed to collusively profit from their proximity to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), to the economic detriment of the Commonwealth of Puerto Rico, its instrumentalities, the creditors of the Commonwealth of Puerto Rico in these Title III proceedings, and unrelated third parties. Such is the case at hand.

---

[1] The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 et seq.

1

2. To the extent that it is the Commonwealth of Puerto Rico (the Title III debtor in this case) who ends up footing the loss of bad transactions conducted by its numerous instrumentalities, this Court has subject matter jurisdiction over any such bad transactions "arising in or related to" cases under Title III.[2]

3. The Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq. ("PRRADA"), lays the procedural framework to deter indiscretions incurred by the professionals that serve the Oversight Board, the sole representative of the Commonwealth of Puerto Rico in this Title III case, specifically in relation to conflicts of interest that end up causing injury to the Commonwealth of Puerto Rico and its instrumentalities, whether directly or indirectly.

4. As of the date of this motion, the law firm O'Neill & Borges, LLC ("O&B") remains in violation of its obligations make disclosures under PRRADA.

5. The case docket reflects that the attorneys of O&B, legal counsel to the Oversight Board, have had both the opportunity and the statutory obligation to disclose to this Court of their conflictive representation of PR Recovery and Development JV, LLC, PR Recovery and Development REO, LLC, Parliament Capital Management, LLC, Parliament High Yield Fund, LLC, and Island Portfolio Services, LLC (collectively, the "Stalking Horse Parties") ever since the time of the negotiation and execution of that certain $384,269,047 Loan Sale Agreement entered into as of September 7, 2018 by and between the Economic Development Bank for Puerto Rico[3] (by its Spanish acronym, the "BDE"), as seller, and PR Recovery and Development JV, LLC and PR Recovery and Development REO, LLC, as purchasers, with the direct assistance of the other Stalking Horse Parties.

6. Nowhere in its recent objection filing does O&B either disclose or deny that O&B has in fact provided legal representation to one or more of the Stalking Horse Parties during the 2017 thru

---

[2] See PROMESA § 306(a).
[3] The Economic Development Bank for Puerto Rico is one of the covered instrumentalities and component units of the Commonwealth of Puerto Rico subject to PROMESA since the date of filing of the insolvency petition in this Title III case. See Docket Entry No. 1, Exhibit B, item 12 (Economic Development Bank for Puerto Rico).

2022 time period, including, but not limited to, the $384,269,047 Loan Sale Agreement that thrust the BDE to its own insolvency without any type of intervention by the Oversight Board, at considerable expense to the Commonwealth of Puerto Rico and its creditors in this Title III case.

7. O&B is biased to favor its private clients, and has failed to "explain away" its connections to the Stalking Horse Parties, as required under PRRADA and applicable bankruptcy case law. Simply put, O&B *"cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away."* See In re Midway Industry Contractors, Inc., 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing In re Granite Partners, L.P., 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998). Detailed explanations are required from O&B.

8. Meanwhile, the Oversight Board continues to sit idle and does nothing whatsoever in relation to the $384,269,047 Loan Sale Agreement that it never reviewed – and that it does not intend to review – in accordance with its own Contract Review Policy. Detailed explanations are also required from the Oversight Board's executives.

9. Contrary to the recent assertions of the Oversight Board and O&B, the interests of the Oversight Board in relation to the Loan Sale Agreement are indeed adverse to the interests of the Stalking Horse Parties, of the BDE, and of the Commonwealth of Puerto Rico, respectively.[4]

10. O&B's statutory obligation to report to this Court of its conflicts of interests is of a continuous and ongoing nature under PRRADA and applicable bankruptcy case law standards. See In Re Sandpoint Castle Company, LLC, 556 B.R. 408, 421 (Bankr. D. Neb. 2016).

---

[4] On one hand, for reasons unknown, the Oversight Board has no interest that the Loan Sale Agreement be reviewed under its own Contract Review Policy (as strange as that may be), either to approve it or to reject it. On the other hand, the Stalking Horse Parties have an interest that the Loan Sale Agreement never be reviewed by the Oversight Board under the Oversight Board's Contract Review Policy, since that would place the Stalking Horse Parties at risk of having the Oversight Board invalidate the Loan Sale Agreement. (O&B seems to support the Stalking Horse Parties' position.) Conversely, the BDE and the Commonwealth of Puerto Rico have an interest that the Loan Sale Agreement be finally reviewed by the Oversight Board, since the BDE is already entangled in costly litigation due to the Oversight Board's admitted failure to intervene with the Loan Sale Agreement in a timely manner.

3

11. The hard fact that O&B continues to conceal from proper disclosure to this Court is that O&B concurrently represented the Oversight Board in this Title III case during the same time periods that O&B also represented the Stalking Horse Parties that arranged the ill-conceived $384,269,047 Loan Sale Agreement without the Oversight Board's prior revision and approval.

12. Concurrent legal representation of adverse parties is simply not permitted under Puerto Rico law[5], PROMESA and PRRADA.

13. O&B's attorneys prefer not to reveal their long-standing connections to the Stalking Horse Parties in order to continue shielding the identity of the Stalking Horse Parties, their ultimate beneficial owners, and ensuing legal effects on the controversial BDE Loan Sale Agreement that is *sub judice* before the Puerto Rico Court of First Instance, San Juan Part, in Civil Case Number SJ2019CV11697, captioned *Banco de Desarrollo Económico Para Puerto Rico v. Garnet Capital Advisors LLC, PR Recovery and Development REO, LLC, PR Recovery and Development JV, LLC, and Parliament Capital Management LLC* (the "Commonwealth's Contract Rejection Case").

14. Competing private and public interests are at play here. The Court's prompt intervention is required in this matter, such that these Title III proceedings do not become tainted by all the irregularities that surround the $384,269,047 Loan Sale Agreement.

15. The Commonwealth of Puerto Rico, the BDE, and hundreds of small business owners that contracted with the BDE are being affected by the Oversight Board's and the Stalking Horse Parties' prolonged mismanagement of the Loan Sale Agreement.

## BACKGROUND

16. On May 19, 2022, Movant filed a *Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification*

---

[5] See Canons 21, 22 and 38 of the Professional Code of Ethics applicable to Puerto Rico attorneys.

of *O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees*, Docket Entry No. 20,873 (hereinafter sometimes referred to as the "Motion to Disqualify").

17. On May 20, 2022, this Court issued the May 20 Briefing Order referenced in the preamble above, Docket Entry No. 20,923.

18. On May 23, 2022, Movant filed *Movant's Request for an Amendment to the Order Scheduling Briefing of Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees, In Order to Abbreviate the Filing Deadlines Applicable to All Parties*, Docket Entry No. 20,946.

19. On May 24, 2022, this Court issued an Order denying Movant's May 23 motion, Docket Entry No. 20,959.

20. On June 2, 2022, the Oversight Board filed a *Response of the Financial Oversight and Management Board for Puerto Rico to Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees*, Docket Entry No. 21,094, and O&B simultaneously filed an *Objection to Carlos Lamoutte's Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight*

*and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees*, Docket Entry No. 21,096 (collectively, the "Objection Motions").

21. This reply motion of the Movant follows the Objection Motions and is presented pursuant to the May 20 Briefing Order.

**ARGUMENT**

22. Movant hereby reaffirms all factual allegations and legal argumentations set forth in the Motion to Disqualify, as if fully transcribed herein.

23. Before proceeding to further argument here, Movant takes exception to all retaliatory attacks contained in the Objection Motions, to the extent that they are biased, baseless, and irrelevant to the adjudication of the Motion to Disqualify. In particular, Movant states that all such retaliatory attacks are incorrect and distract from the business of this Court.

24. In their Objection Motions, the Oversight Board and O&B jointly fail to address the single salient fact that is the subject matter of the Movant's Motion to Disqualify, that is: **Whether any of O&B's timekeepers concurrently represented any of the Stalking Horse Parties during the same time periods that O&B also represented the Oversight Board.**

25. In their Objection Motions, neither the Oversight Board nor O&B provide a clear and transparent response to this Court, in black and white, as to whether any of O&B's timekeepers concurrently represented any of the Stalking Horse Parties during the same time periods that O&B also represented the Oversight Board.

26. The Objection Motions mostly intend to retaliate against the undersigned *qui tam* relator and add confusion to the situation at hand.

27. O&B's ongoing omission to state material facts to this Court and to the U.S. Trustee pertaining to O&B's long-standing connections to the Stalking Horse Parties is outright impermissible under PROMESA, PRRADA, and bankruptcy case law standards. The foregoing disclosure standards are properly substantiated in the Movant's Motion to Disqualify.

6

28. Contrary to the Oversight Board's and O&B's assertions, the BDE is in fact a covered entity and a component unit of the Commonwealth of Puerto that is subject to PROMESA and to the Oversight Board's supervision. Thus, all matters relating to the $384,269,047 Loan Sale Agreement and the Commonwealth's Contract Rejection Case are of the subject matter jurisdiction of this Court. Simply put, to the extent that the Oversight Board retains the ability to approve or reject the BDE Loan Sale Agreement in the exercise of its powers under PROMESA and this Court has the power and authority to compel the Oversight Board to review that controversial contract, the controversy at hand is in effect related to the instant Title III case.

29. As a consequence of the controversial Loan Sale Agreement that is the object of the Commonwealth's Contract Rejection Case, the BDE is today insolvent.

30. The BDE is governed by a board of directors appointed by the Title III debtor and forms part of the plan of adjustment that the Oversight Board implemented and now oversees.

31. Therefore, challenges in the Objection Motions to Movant's alleged lack of standing to pursue the Motion to Disqualify separately raise factual questions that are of the exclusive subject matter jurisdiction of this Court under PROMESA and PRRADA.

32. Given the *sui generis* nature of PROMESA and PRRADA, this Court is the only existing venue having jurisdiction and competence to adjudicate O&B's conflicts of interest.

33. PROMESA provides that all actions "against the Oversight Board, and any action otherwise arising out of this Act," must be brought in the United States District Court for the District of Puerto Rico. See 48 U.S.C. § 2106(a).

34. Title III of PROMESA provides the Chief Justice shall designate "*a*" district court judge "to conduct *the* [Title III] case." *Id.* § 2168(a) (emphasis added). Title III also requires that "any civil proceeding… related to" a Title III case "shall [be] transfer[red]" to the district court in which the Title III case is pending. *Id.* § 2166(d)(3). Although that provision does not expressly require related cases to be transferred to the Title III judge, that is the plain import because otherwise there would be

7

no point to having related cases transferred to the same district as the Title III case. The upshot is that any case related to the Title III case must be transferred to the judge designated by the Chief Justice to preside over the Title III case.

35. Thus, Movant – acting as a *qui tam* relator here – has no other forum at which to ventilate O&B's conflict of interest under PRRADA.

36. This conflict of interest matter is clearly related to the Commonwealth of Puerto Rico's Title III case. Under PROMESA, the "related to" standard is extremely broad. It is taken almost verbatim from the U.S. Code provision granting bankruptcy courts subject-matter jurisdiction over all civil proceedings "arising in or related to cases under [the Bankruptcy Code]." *Compare* 48 U.S.C. § 2166(a)(2) *with* 28 U.S.C. § 1334(b). In the bankruptcy context, "related to" jurisdiction is vast in scope and includes any action that could conceivably have any effect on the bankruptcy estate or the administration of the estate. *See, e.g., Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 663 (1st Cir. 2017) ("'related to' proceedings are those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." (internal citations and quotations omitted)).[6]

37. "Related to" jurisdiction need not necessarily involve the Title III debtor's property. *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995). It exists where the action could interfere with the Title III debtor's reorganization, *see id.*, even where the impact on the Title III debtor's estate or reorganization is contingent on the plaintiff succeeding in a claim against a non-debtor. *See, e.g., Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow*

---

[6] *See also Nat'l Union Fire Ins. Co. v. Titan Energy, Inc. (In re Titan Energy, Inc.)*, 837 F.2d 325,330 (8th Cir. 1988) ("related to" subject matter jurisdiction under 28 U.S.C. § 1334(b) is construed broadly and includes a claim that portends a mere contingent or tangential effect on a debtor's estate"); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) ("A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy.") (internal quotations omitted); *Coen v. Stutz (In re CDC Corp.)*, 610 Fed. App'x. 918, 921 (11th Cir. 2015) (related to jurisdiction exists where "a suit could conceivably affect the bankrupt estate if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) or if it could in any way impact the handling and administration of the bankrupt estate. This 'related to' jurisdiction is extremely broad.") (internal quotations omitted).

8

*Corning Corp.)*, 86 F.3d 482, 494 (6th Cir. 1996); *Coen v. Stutz (In re CDCCorp.)*, 610 F. App'x. 918, 921 (11th Cir. 2015).

38. Congress's use of the broad "related to" language from 28 U.S.C. § 1334(b) reflected its sound judgment to give a single judge a broad mandate "to enable [that judge] to deal efficiently and effectively with the entire universe of matters connected with" the Commonwealth of Puerto Rico's restructuring. *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 100, 105 (1st Cir. 2005). That approach ensures that all actions touching on issues that could affect the restructuring proceed before a single judge who can adjudicate and address the restructuring case in a holistic manner.

39. This conflict of interest dispute is plainly "related to" the Commonwealth of Puerto Rico's Title III case. For one thing, this case could have a direct effect on the property of the debtor because it ultimately seeks to cancel a contract worth over $384 million entered into by a covered territorial instrumentality included in the Commonwealth of Puerto Rico's fiscal plan.

40. The Loan Sale Agreement creates claims against the Commonwealth of Puerto Rico and also creates value for the Commonwealth of Puerto Rico.

41. Because this case is related to the Commonwealth's Title III case, PROMESA and PRRADA require Movant to appear at this venue having subject matter jurisdiction to rule on the controversy.

42. Also, it is widely known that attorneys are authorized to report any ethical violations committed in a case. Any lawyer that becomes aware of facts justifying a disqualification of counsel has standing, indeed is obligated, to call the matter to the attention of the court.[7]

---

[7] *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984); *United States v. Clarkson*, 567 F.2d 270 (4th Cir. 1977) (citing *Estates Theatres v. Columbia Pictures Industries*, 345 F. Supp. 93 (S.D.N.Y. 1972); *Brown & Williamson v. Daniel Int'l.*, 563 F.2d 671 (5th Cir. 1977).

43. In this case, O&B's conflicts of interest in relation to the Stalking Horse Parties are easily verifiable and of public record.

44. It is of public record that the 2018 Loan Sale Agreement, which appears publicly registered at the Puerto Rico Comptroller's Office under registry number BDEPR-2019-000044, at pages 29 and 30, clearly identifies Attorney Walter Alomar, a partner of O&B, as counsel to the Stalking Horse Parties in the same controversial transaction that today is the object of the Commonwealth's Contract Rejection Case. In the Objection Motions, the Oversight Board and O&B fail to address and explain this relevant fact.

45. It is also of public record that Attorney Hermann Bauer, lead partner of O&B's PROMESA team since the commencement of this Title III case, in fact served as legal counsel to Parliament High Yield Fund, LLC[8], one of the Stalking Horse Parties, thereby demonstrating the inexistence of intra-firm ethical walls. See Civil Case Number SJ2019CV04180, captioned *Parliament High Yield Fund, LLC v. Phoenix Acquisitions LLC, et al.* In the Objection Motions, the Oversight Board and O&B also fail to address and explain this relevant fact.

46. Furthermore, it is also widely known among local practitioners that the Parliament entities identified in the Loan Sale Agreement are in fact long-standing private clients of O&B. Attorney Rosa M. Lázaro, Managing Partner of O&B, is capable of validating the foregoing fact to this Court and has failed to do so.

47. Due to O&B's undeniable professional connections to the Oversight Board and to the Stalking Horse Parties, it can be established that attorneys Alomar, Bauer and Lázaro are knowledge witnesses having the capacity to testify before this Court, under oath, as to O&B's dual, concurrent representation of the Oversight Board and of the Stalking Parties during the same time periods, a point that tends towards O&B's disqualification in of itself.

---

[8] Parliament High Yield Fund, LLC is one of the Stalking Horse Parties that provided funding for the 2018 BDE transaction.

48. In resolving this matter, it is important to place into context that the Board of Directors of the BDE, comprised mainly of high-ranking public officials of the Commonwealth of Puerto Rico, is actively challenging the legality of the Loan Sale Agreement pursuant to the Commonwealth's Contract Rejection Case.

49. The Objection Motions reveal that O&B has been neither sincere nor timely in its disclosure obligations to this Court, to the U.S. Trustee, and to the other parties-in-interest in this case, presumably because O&B's attorneys sided to protect the *private interests* of the Stalking Horse Parties rather than to protect the *public interests* of the Oversight Board, of the BDE, and of the Commonwealth of Puerto Rico under PROMESA, respectively.

50. Finally, Section 407(a) of PROMESA sets forth that "**[w]hile an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.**" (Emphasis added.)

51. Given that the Oversight Board and its counsel have admitted to this Court that the Oversight Board has neither reviewed nor approved the $384,269,047 Loan Sale Agreement – an act which is in violation of the Oversight Board's own Contract Review Policy – this Court may issue *sua sponte* judgment in this case pursuant to Section 407(a) of PROMESA declaring such government contract to be null and void *ab initio*.

**CONCLUSION AND PRAYER FOR RELIEF**

52. O&B is burdened by a disqualificatory conflict of interest due to a misalignment of interests that impacts each of the different stakeholders in this case, coupled with the willful misconduct and negligence of the Oversight Board and its counsel in relation to the revision of the

11

BDE's $384,269,047 Loan Sale Agreement.

53. Concurrent legal representation of adverse parties is not permitted under Puerto Rico law[9], PROMESA and PRRADA.

54. This Court is in a position to issue *sua sponte* judgment in this case pursuant to Section 407(a) of PROMESA, to the effect of declaring the BDE's $384,269,047 Loan Sale Agreement null and void *ab initio*, and thereby adequately protecting the interests of the BDE and of the creditors of the Commonwealth of Puerto Rico.

For the reasons set forth above, Movant requests this Court:

(a) To grant the Motion to Disqualify as filed and to issue an Order that: (i) permanently disqualifies the law firm O'Neill & Borges, LLC from serving as local legal counsel to the Financial Oversight and Management Board for Puerto Rico, (ii) provides for the disallowment and disgorgement of fees, and (iii) and grants such other relief that the Court deems just, fair, and equitable; or

(b) In the alternative, that prior to resolving the Motion to Disqualify this Court first issues an Order scheduling an evidentiary hearing at which the following knowledge parties shall appear to be interrogated and cross-examined under the supervision of this Court: (i) Attorney Walter Alomar, partner of O&B, who appears named in the 2018 BDE Loan Sale Agreement as counsel to the Stalking Horse Parties, (ii) Attorney Hermann Bauer, lead partner of O&B's PROMESA team since the commencement of this Title III case, who in turn has also served as legal counsel to Parliament High Yield Fund, LLC and has knowledge of the conflicts of interest that endure, (iii) Attorney Rosa M. Lázaro, Managing Partner of O&B, who may speak under oath of O&B's attorney-client representation of the Stalking Horse Parties and of the firm's time and billing records during the 2017-2022 time period, among other matters, and (iv) Attorney Jaime El Koury, General Counsel of the

---

[9] See Canons 21, 22 and 38 of the Professional Code of Ethics applicable to Puerto Rico attorneys.

12

Oversight Board, who may explain under oath of the motives for which the Oversight Board has consistently delayed and denied to review the $384,269,047 Loan Sale Agreement in violation of the Oversight Board's own Contract Review Policy; and

(c) To issue *sua sponte* judgment in this case pursuant to Section 407(a) of PROMESA, to the effect of declaring the $384,269,047 Loan Sale Agreement null and void *ab initio*.

Dated: June 6, 2022
San Juan, Puerto Rico

Respectfully submitted,

*[signature]*

Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com

13

## Certificate of Service

I hereby certify that, on this date, I filed the foregoing with the Clerk of the Court, in person, who will send notifications of such filing to all CM/ECF participants in this matter.

In San Juan, Puerto Rico, this 6th day of June 2022.

_____
Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com