**<u>EXHIBIT C</u>**

Stipulation  in Connection  with DRA Related Disputes

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, THE
EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO, AND THE PUERTO RICO PUBLIC
BUILDINGS AUTHORITY,

     Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## STIPULATION IN CONNECTION WITH DRA RELATED DISPUTES

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

as sole representative of (i) the Commonwealth of Puerto Rico (the "Commonwealth"), (ii) the

Puerto Rico Public Buildings Authority ("PBA"), (iii) the Employees Retirement System of the

Government of the Commonwealth of Puerto Rico ("ERS") and (iv) the Puerto Rico Highways

and Transportation Authority ("HTA") pursuant to section 315(b) of the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA"),[2] AmeriNational Community Services,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations)

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

LLC (the "Servicer"), as servicer for the GDB Debt Recovery Authority ("DRA"), and Cantor-

Katz Collateral Monitor LLC, a Delaware limited liability company and as collateral monitor for

Wilmington Trust, N.A. (the "Collateral Monitor," and together with the Servicer, collectively, the

"DRA Parties"),[3] by and through their respective counsel and authorized representatives, hereby

stipulate and agree as follows:

## RECITALS

### Creation of DRA

A.     On November 5, 2018, the Oversight Board certified a qualifying modification (the

"GDB QM") for the Government Development Bank ("GDB") pursuant to Title VI of PROMESA.

On November 7, 2018, the United States District Court for the District of Puerto Rico (the "Court")

approved the GDB QM.

B.     DRA is a statutory public trust and public governmental instrumentality of the

Commonwealth, created by the *Government Development Bank for Puerto Rico Debt*

*Restructuring Act*, Act 109-2017, to give effect to the terms of the GDB QM. 7 P.R. Laws Ann. §

3171.

C.     Pursuant to a Master Transfer Agreement, dated as of November 29, 2018 (the

"Transfer Agreement"), between DRA and GDB, GDB transferred substantially all of its assets to

DRA, including, among other things, GDB's legal rights, title, and interest in:

    a.  twenty-three (23) promissory notes issued by HTA in favor of GDB (the "HTA
        Notes");

    b.  $200,000,000 in aggregate original principal amount of HTA Revenue Bonds
        (Series A), issued by HTA pursuant to Resolution No. 98-06 (the "HTA Senior
        98 Bonds");

---

[3]   Each of the Commonwealth, PBA, ERS, HTA, the Servicer, and the Collateral Monitor is a "Party" and,
collectively, they are the "Parties".

c. GDB's security interest in certain incremental revenues implemented through Act No. 30-2013 and Act No. 31-2013;

d. certain loans to PBA in the aggregate principal amount of $137,414,149.15;

e. certain loans to the Commonwealth;

f. certain loans (the "CCDA Loans") to the Puerto Rico Convention Center District Authority ("CCDA");

g. certain loans (the "CRIM Loans") to the Center for Municipal Revenue Collection ("CRIM");

h. certain loans (the "EDB Loans") to the Economic Development Bank ("EDB");

i. certain repurchase transactions (the "HFA Repos") with the Puerto Rico Housing Finance Authority (the "HFA");

j. certain loans (the "Ports Loans") to the Puerto Rico Ports Authority ("Ports"); and

k. to the extent not otherwise identified above, certain GDB Retained Loans as identified in Schedule 8 to the Transfer Agreement (the "GDB Retained Loans").

**Commencement of the Title III Cases and Title VI Proceeding**

D. On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico (the "Title III Court"), commencing a case under Title III thereof (the "Commonwealth Title III Case").

E. On May 21, 2017 (the "HTA/ERS Petition Date"), the Oversight Board filed a voluntary petition for relief for each of HTA and ERS pursuant to PROMESA Section 304(a) in the Title III Court, commencing a case under Title III thereof (the "HTA Title III Case" and the "ERS Title III Case," respectively).

F. On September 27, 2019 (the "PBA Petition Date"), the Oversight Board filed a voluntary petition for relief for PBA pursuant to PROMESA Section 304(a) in the Title III Court, commencing a case under Title III thereof (the "PBA Title III Case" and together with the

3

Commonwealth Title III Case, the ERS Title III Case, and the HTA Title III Case, the "Title III Cases").

G.      Pursuant to PROMESA Section 315(b), the Oversight Board is the sole representative of the Commonwealth, HTA, ERS, and PBA in the Title III Cases.

H.      On August 27, 2021, the Oversight Board, as Administrative Supervisor for CCDA pursuant to PROMESA Section 601(a)(1), certified a qualifying modification (the "CCDA QM") for CCDA, which proposed qualifying modification only restructures certain bond indebtedness issued by CCDA (the "CCDA Bonds"). On October 8, 2021, the Oversight Board commenced an action for CCDA pursuant to Title VI of PROMESA, Case No. 21-01493 (the "CCDA Title VI Case"), for the purpose of seeking approval of the CCDA QM. A hearing to consider approval of the CCDA QM is scheduled to commence on November 8, 2021. The Parties acknowledge that the CCDA QM affects only the CCDA Bonds and does not affect in any way any claims that DRA may hold against CCDA, including, without limitation, the CCDA Loans.

**The Plan of Adjustment**

I.      On July 30, 2021, the Oversight Board filed the *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 17627] (the "Seventh Amended Plan") and corresponding *Disclosure Statement for the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico*, et al. [ECF No. 17628].

J.      On August 2, 2021, the Court entered (i) the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving*

4

*Vote Tabulation Procedures* [ECF No. 17639] (the "Solicitation Procedures Order"), establishing a schedule and procedures relating to solicitation of creditor votes upon the Seventh Amended Plan, and setting the hearing to consider confirmation of the Seventh Amended Plan to begin on November 8, 2021 (the "Confirmation Hearing").

K. In connection with the solicitation of votes to accept or reject the Seventh Amended Plan, DRA voted to reject the Seventh Amended Plan in connection with its asserted claims in Classes 12, 14, 40, and 59 in the Seventh Amended Plan (Ballot Nos. 21060, 21098, 21255, 21283, 21790, and 21296) (collectively, the "DRA Votes").

L. On October 19, 2021, the DRA Parties filed the *Objection of the DRA Parties to the Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Dkt. No. 17627]* (the "DRA Objection").

M. On October 22, 2021, the DRA Parties filed the *Objection of the DRA Parties to the Proposed Order and Judgment Confirming Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "DRA Confirmation Order Objection," and together with the DRA Objection, the "Confirmation Objections"). The DRA Parties have filed additional pleadings in furtherance of DRA's and the DRA Parties' opposition to confirmation of the Seventh Amended Plan.

N. On November 3, 2021, the Oversight Board filed the *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 19053] (the "Plan").[4] As set forth in Section 2.2 of the Plan, for purposes of confirmation and consummation of the Plan and distributions to made thereunder, unless otherwise allowed pursuant to an order of the Title III Court, (1) the 2012 CW Bond Claims and the 2012 CW Bond Claims (Assured) shall be deemed

---

[4] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Plan.

allowed in the aggregate amount of $2,934,427,459.40, and (2) the CW/HTA Claims shall be

deemed allowed in the aggregate amount of $6,377,335,459.34. DRA asserts that it holds 2012

CW Bond Claims in the amount of $63,215,037.71. DRA asserts that it holds a PBA/DRA Secured

Claim and a PBA/DRA Unsecured Claim in the amounts of $66,222,028.00 and $134,357,497.00,

respectively. DRA asserts that it is entitled to a portion of the recovery associated with the

CW/HTA Claims, as delineated in the Priority Distribution Waterfall from Clawback CVI

Allocation to Allowed CW/HTA Claims set forth in Exhibit "J" to the Plan.

**Disputes Relating to the DRA**

O.  The DRA Parties have commenced actions, filed pleadings, and/or participated in

connection with the following, among others (collectively, the "DRA-Related Disputes"):

(i)  **DRA Parties' Lift Stay Motion**.  Litigation arising from (a) *The DRA Parties' Motion and Memorandum of Law in Support of Their Motion for Relief From the Automatic Stay, or in the Alternative, Ordering Payment of Adequate Protection* [ECF No. 7643], (b) *The DRA Parties' Amended Motion and Memorandum of Law in Support of Their Request for Adequate Protection or Relief From the Automatic Stay* [ECF No. 16276], and (c) any other motion or dispute pending as of the date hereof relating to the above motions.

(ii)  **Administrative Expense Motion**.  Litigation arising from (a) *The DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 17009], and (b) any other motion or dispute pending as of the date hereof relating to the above motion.

(iii)  **DRA Adversary Proceeding**.  The litigation styled (a) *AmeriNational Community Services, LLC, et al. v. Ambac Assurance Corporation, et al.*, Adv. Proc. No. 21-00068, and (b) any other motion or adversary proceeding pending as of the date hereof relating to the above action.

(iv)  **PBA Adversary Proceeding**.  The litigation styled (a) *Puerto Rico Public Buildings Authority v. AmeriNational Community Services, LLC, et al.*, Adv. Proc. No. 21-00100, (the "PBA Adversary") and (b) any other motion or adversary proceeding pending as of the date hereof relating to the above action.

(v) **Section 926 Motion**. Litigation arising from (a) the *Urgent Motion for Bridge Order, and Motion for Appointment of Trustee Under 11 U.S.C. §926 of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation*, dated July 17, 2020, filed in the HTA Title III Case [ECF No. 871] and the Commonwealth Title III Case [ECF No. 13708], (b) *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Case No. 20-1847, and (c) any other motion or adversary proceeding pending as of the date hereof seeking appointment of a trustee for HTA in accordance with 11 U.S.C. §926.

(vi) **Lift Stay Motions**. The litigation styled (a) *Assured Guaranty Corp., et al. v. The Financial Oversight and Management Board for Puerto Rico*, filed in the HTA Title III Case [ECF No. 673], (b) *Ambac Assurance Corporation, et al. v. The Financial Oversight and Management Board*, filed in the Commonwealth Title III Case [ECF No. 10104], (c) *Ambac Assurance Corporation, et al. v. The Financial Oversight and Management Board*, filed in the Commonwealth Title III Case [ECF No. 10602], (d) *AmeriNational Community Services, LLC, et al. v. The Financial Oversight and Management Board for Puerto Rico*, filed in the HTA Title III Case [ECF No. 591], (e) *Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.*, Case No. 20-1930, currently pending in the United States Court of Appeals for the First Circuit, (f) *Ambac Assurance Corporation, et al. v. Commonwealth of Puerto Rico, et al.*, Case No. 20-1931, currently pending in the United States Court of Appeals for the First Circuit, (g) *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority, et al.*, Adv. Pro. No. 17-00151-LTS, filed in the HTA Title III Case [ECF No. 1], as amended, (h) *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority, et al.*, Adv. Pro. No. 17-00152-LTS, filed in the HTA Title III Case [ECF No. 1], as amended, and (i) any motion or adversary proceeding seeking to lift the automatic stay provided for in accordance with sections 362 and 922 of the Bankruptcy Code (to the extent applicable) with respect to revenues similar to those at issue in the above-referenced Lift Stay Motions.

(vii) **Debt Related Objections**. Litigation arising from (a) *Omnibus Objection of (I) Financial Oversight and Management Board, Acting through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds*, dated January 14, 2019 [ECF No. 4784], (b) *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds*, dated May 21, 2019 [ECF No. 7057], (c) *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against*

7

*Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds*, dated July 18, 2019 [ECF No. 8141], (d) *Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth*, dated January 8, 2020 [ECF No. 9731], (e) *Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors*, dated February 3, 2020 [ECF No. 10638], and (g) any other objections or joinders to these or such other objections that may be filed pertaining to the same form and counts of requested relief challenging, among other things, the validity and related rights of the 2011 GO Bonds, the 2012 GO Bonds, the 2014 GO Bonds.

(viii) **Clawback Actions**. The litigation styled (a) *The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al.*, Adv. Pro. No. 20-00005-LTS, currently pending in the Title III Court, and (b) *The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al.*, Adv. Pro. No. 20-00007-LTS, currently pending in the Title III Court.

(ix) **Uniformity Litigation**. The litigation styled (a) *Ambac Assurance Corporation v. The Financial Oversight and Management Board for Puerto Rico, et al.*, Adv. Pro. No. 20-00068-LTS, currently pending in the Title III Court, and (b) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the HTA Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigation have been asserted.

P.      On October 29, 2021, the Title III Court entered (a) the *Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 18892] (the "Administrative Expense Opinion") in the Commonwealth Title III Case, and (b) the *Opinion and Order Granting Defendants' Motion to Dismiss the Complaint* [Case No. 21-00068, ECF No. 83] (the "Order Dismissing DRA Adversary Complaint").

**NOW, THEREFORE,** in consideration of the foregoing, the Parties hereby agree as follows:

## **AGREEMENT**

1.     <u>DRA Votes</u>. Promptly upon execution of this Stipulation, the DRA Parties shall notify the Debtors' balloting agent, Prime Clerk LLC, of its determination to change the DRA Votes, and any other votes cast in connection with the Seventh Amended Plan, from "Reject" to "Accept," including, without limitation, to the extent necessary, seeking relief of the Title III Court to modify the DRA Votes, and any other votes cast in connection with the Seventh Amended Plan, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, if required.

2.     <u>Withdrawal of Confirmation Objections</u>. The DRA Parties agree that, promptly upon execution of this Stipulation, the DRA Parties shall withdraw the Confirmation Objections and take any and all other actions reasonably necessary to effectuate such withdrawal, including, but not limited to, withdrawal of (i) all witnesses, including any filed written declarations, offered by the DRA Parties at the Confirmation Hearing, (ii) all exhibits or other evidence proposed by the DRA Parties to be admitted into evidence at the Confirmation Hearing, (iii) any request to examine or otherwise elicit testimony from any witnesses at the Confirmation Hearing, and (iv) any motions filed by the DRA Parties regarding any issue relating to the Confirmation Hearing.

3.     <u>Plan Agreements</u>. From and after the date hereof, and provided that this Stipulation has not been terminated, the Parties agree as follows:

    a.   To the extent further solicitation in connection with the Plan (or any plan of adjustment filed subsequent to the Plan) is required, the Servicer, for and on behalf of the DRA, shall vote to accept the Plan (or any plan of adjustment filed subsequent to the Plan that is in form and substance consistent with and not economically or materially worse than the terms of this Stipulation or the Plan);

    b.   DRA and the DRA Parties shall support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude, the filing of any further plan of adjustment that is consistent with and not economically or materially worse than the terms of this Stipulation or the Plan, the administration of the Plan (or any plan of adjustment filed subsequent to the Plan that is in form and substance

9

consistent with and not economically or materially worse than the terms of this Stipulation or the Plan), entry of an order confirming the Plan (or any plan of adjustment filed subsequent to the Plan that is in form and substance consistent with and not economically or materially worse than the terms of this Stipulation or the Plan) and achievement of the Effective Date; provided, however, that such documents are consistent with the terms set forth herein;

c.   The Oversight Board shall promptly review the PBA/DRA Secured Claims and the PBA/DRA Unsecured Claims and, in the event that the Oversight Board disagrees with the amount of the asserted claims, (1) the Oversight Board shall notify the DRA Parties but in no event later than December 1, 2021, (2) the Parties shall meet and confer as to any disagreement regarding the amount thereof, and (3) to the extent that the Parties are unable to agree upon the amount thereof, the Oversight Board shall file an objection thereto, but in no event later than December 31, 2021 and request that the Title III Court promptly consider such objection;

d.   To the extent the PBA/DRA Secured Claims and the PBA/Unsecured Claims are allowed, DRA shall receive the treatment and recoveries provided for in Articles XVI and XVIII of the Plan, respectively (or the corresponding provisions in any plan of adjustment filed subsequent to the Plan);

e.   On the Effective Date, the 2012 CW Bond Claims held by DRA shall be deemed allowed in the aggregate amount of $63,215,037.71, represented by Loan ID No. 20001721500100347 in the amount of $24,305,448.72, and Loan ID No. 20001721500100356 in the amount of $38,909,588.99; and

f.   The Order Dismissing DRA Adversary Complaint, including, without limitation, that the GDB HTA Loans are subject to subordination to the HTA 68 Bonds and the HTA 98 Bonds qualifies as the "GDB Loan Priority Determination" for purposes of the Plan.

4.   CCDA Title VI Case.   From and after the date hereof, and provided that this Stipulation has not been terminated, each of the DRA Parties agrees to not oppose, and otherwise not, encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude the approval of the CCDA QM in the CCDA Title VI Case, entry of an order approving the CCDA QM, and consummation of the CCDA QM.  To the extent any service of notice on the DRA Parties may be required in connection with the CCDA Title VI Case, DRA and the DRA Parties hereby waive service of such notice.

5.      Dismissal/Withdrawal of DRA-Related Disputes.  The DRA Parties agree to, and

shall, within five (5) Business Days after the date hereof, withdraw and/or dismiss, with prejudice

in each case, the DRA-Related Disputes and any other pending litigation or disputes between the

DRA Parties and the Debtors in the Title III Cases, and take any and all other actions reasonably

necessary to effectuate such withdrawal and/or dismissal, with prejudice in each case.  The DRA

Parties agree not to, and shall not, take any appeals in connection with the DRA-Related Disputes,

including, without limitation, from the Administrative Expense Opinion and the Order Dismissing

DRA Adversary Complaint.  Within five (5) Business Days of the Effective Date, the Oversight

Board shall cause the PBA Complaint to be dismissed with prejudice.

6.      Exculpation of the DRA Parties.   The Oversight Board shall include in the

Confirmation Order (and any plan of adjustment filed subsequent to the Plan) and the HTA Plan

(and any plan of adjustment filed subsequent to the HTA Plan) customary language providing for

the exculpation of the DRA Parties, DRA, and their respective professionals and advisors,

substantially similar to the exculpation provided to certain parties pursuant to Section 92.7 of the

Plan.

7.      HTA Plan Agreements.   From and after the date hereof, and provided that this

Stipulation has not been terminated, the Parties agree as follows:

a.   DRA and the DRA Parties shall support approval of the disclosure statement (the
     "HTA Disclosure Statement") to be filed with respect to the HTA Plan with the
     Title III Court by the Oversight Board in the HTA Title III Case in accordance with
     section 1125 of the Bankruptcy Code, which disclosure statement shall be in form
     and substance consistent with this Stipulation and not economically or materially
     worse than the terms of this Stipulation and reasonably acceptable to the DRA
     Parties;

b.   DRA and the DRA Parties shall support confirmation of the HTA Plan to be filed
     by the Oversight Board, as representative of HTA in the HTA Title III Case, in
     form and substance consistent with this Stipulation and not economically or
     materially worse than the terms of this Stipulation or the Plan and reasonably

11

acceptable to the DRA Parties, in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code;

c. Upon being solicited in accordance with the provisions of PROMESA, the Servicer, for and on behalf of DRA, shall vote to accept the HTA Plan (or any plan of adjustment filed subsequent to the HTA Plan that is consistent with and not economically or materially worse than the terms of this Stipulation);

d. DRA and the DRA Parties shall support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude, the filing of the HTA Plan (or any plan of adjustment filed subsequent to the HTA Plan that is consistent with and not economically or materially worse than the terms of this Stipulation), the administration of the HTA Plan (or any plan of adjustment filed subsequent to the HTA Plan that is consistent with and not economically or materially worse than the terms of this Stipulation), entry of an order confirming the HTA Plan (or any plan of adjustment filed subsequent to the HTA Plan that is consistent with and not economically or materially worse than the terms of this Stipulation) and achievement of the Effective Date (as defined in the HTA Plan); provided, however, that such documents are consistent with the terms herein; and

e. Upon the occurrence of the effective date of the HTA Plan, the HTA Senior 98 Bond Claims, the HTA Senior 98 Bond Claims (Ambac), the HTA Senior 98 Bond Claims (Assured), the HTA 98 Senior Bond Claims (National) and the HTA Senior 98 Bond Claims (FGIC), each as defined in the HTA Plan, shall be allowed in the aggregate amount of $3,129,667,976.84, and DRA's ownership of $200,000,000.00 of principal of the HTA 98 Senior Bonds shall be recognized and be deemed included in such amount.

8. <u>Commitment to Negotiate Further Restructurings</u>. The Oversight Board shall use its reasonable best efforts to, or to cause the applicable entity to:

a. <u>CRIM Loans</u>. Engage in good faith negotiations with CRIM, the DRA Parties, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") to finalize an agreement regarding the restructuring and/or reconciliation of the CRIM Loans on or before December 31, 2021.

b. <u>EDB Loans</u>. Engage in good faith negotiations with EDB, the DRA Parties, and AAFAF to finalize an agreement regarding the restructuring and/or reconciliation of the EDB Loans on or before December 31, 2021.

c. <u>HFA Repos</u>. Engage in good faith negotiations with HFA, the DRA Parties, and AAFAF to develop a proposal on or before January 31, 2022 regarding the restructuring and/or reconciliation of the HFA Repos. The Parties agree that the period in which HFA must answer or otherwise respond to the complaint filed in the litigation styled <u>Autoridad de Recuperacion de La Deuda Del Banco</u>

12

*Gubernamental de Fomento Para Puerto Rico, Representada por su Administrador de Activos AmeriNational Community Services, LLC v. Autoridad Para El Financiamiento de La Vivienda de Puerto Rico*, filed on November 3, 2021, currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Superior Part, is extended up to and including February 15, 2022, to allow the Parties sufficient time to attempt to resolve the dispute in the complaint.

d.  <u>Ports Loans</u>.  Establish in good faith a schedule with Ports, the DRA Parties, and AAFAF for the restructuring and/or reconciliation of the Ports Loans, and engage in such discussions in good faith.

e.  <u>GDB Retained Loans</u>.  Establish in good faith a schedule with AAFAF, the DRA Parties, and applicable governmental entity to such loans for the restructuring and/or reconciliation of the applicable GDB Retained Loans, and engage in such discussions in good faith and use reasonable best efforts to resolve the restructuring and reconciliation of the applicable GDB Retained Loans within twelve (12) months of the Effective Date.

9.  <u>Subsequent Transfers</u>.  The DRA Parties agree to forbear from selling, transferring, pledging, hypothecating, or assigning their HTA Senior 98 Bonds or HTA Notes, or any voting, consent, or direction or participations or other interests therein (a "<u>Transfer</u>").  Notwithstanding anything herein to the contrary, the DRA Parties may effectuate a Transfer to (1) another Party to this Stipulation or (2), in the event that the transferee is not a Party at the time of the Transfer, such transferee that executes and delivers, within three (3) calendar days after execution thereof, to counsel for the Oversight Board, the joinder agreement attached hereto as **Exhibit A** (a "<u>Qualified Transferee</u>"), pursuant to which (y) such Qualified Transferee shall (i) assume all the rights and obligations of the transferor in accordance with the terms and conditions of this Stipulation and (ii) such Qualified Transferee shall then be deemed a Party for all purposes herein, including, without limitation, with respect to any additional HTA Senior 98 Bonds or HTA Notes held by such Qualified Transferee at the time it joins this Stipulation, and shall assume all of the rights and obligations hereunder (other than the right to receive the Restriction Fee) and (z) on or after the effective date of the Transfer, such Party transferor shall be deemed to have relinquished its rights (other than the right to receive the Restriction Fee); and, <u>provided</u>, <u>further</u>, that, to the extent that

13

a Transfer violates the provisions of this section, it shall be void *ab initio* and the applicable HTA Senior 98 Bonds or HTA Notes and the Party attempting such Transfer shall continue to remain subject to the terms of this Stipulation; and, provided, further, that nothing contained herein is intended, nor shall it be construed, to preclude any Party from acquiring additional HTA Senior 98 Bonds or HTA Notes; provided, however, that any such HTA Senior 98 Bonds or HTA Notes acquired from and after the date hereof shall automatically and immediately upon acquisition by a Party be deemed subject to all of the terms and provisions of this Stipulation. Notwithstanding the foregoing, nothing contained herein shall restrict or prohibit any party from taking any action required by the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, any rule or regulations promulgated thereunder, or by any other applicable law or regulation. Notwithstanding the foregoing, a Party may Transfer HTA Senior 98 Bonds or HTA Notes (or interests therein) to a Qualified Marketmaker (defined below), acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a party to this Stipulation if such Qualified Marketmaker subsequently Transfers such HTA Senior 98 Bonds or HTA Notes (or interests therein) to a transferee that is a party to this Stipulation or a transferee who executes and delivers to counsel a Joinder in accordance with the Stipulation, at or before the time of the proposed Transfer. To the extent that a party hereto is acting in its capacity as a Qualified Marketmaker, it may Transfer any HTA Senior 98 Bonds or HTA Notes (or interest therein) that the Qualified Marketmaker acquires from a holder of the HTA Senior 98 Bonds or HTA Notes (or interest therein) that is not a Party to this Stipulation without the requirement that the transferee be or become a Party hereto. A Qualified Marketmaker may, with the consent of the Oversight Board, which consent shall not be unreasonably withheld, join this Stipulation solely on behalf of a specific trading desk. Notwithstanding the foregoing, nothing contained herein

14

supersedes any restriction on DRA and the DRA Parties' ability to sell, transfer, and convey the HTA Senior 98 Bonds or the HTA Notes (or any other Restructuring Property (as defined in the Transfer Agreement) as set forth in the operative agreements implementing the GDB Qualifying Modification).

10.     <u>Qualified Marketmaker</u>.  A "Qualified Marketmaker" shall mean an entity that: (x) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the HTA Senior 98 Bonds or HTA Notes or enter with customers into long and short positions in debt securities such as the HTA Senior 98 Bonds or HTA Notes, in its capacity as a dealer or market marker in such HTA Senior 98 Bonds or HTA Notes; (y) is in fact regularly in the business of making a market in debt securities; and (z) if transacting with respect to HTA Senior 98 Bonds or HTA Notes, is registered with Securities and Exchange Commission and financial institutions regulatory authority.

11.     <u>HTA Distribution Conditions</u>.  Upon satisfaction of the HTA Distribution Conditions, DRA shall be entitled to receive its share of the CW/HTA Clawback Recovery, as delineated in the Priority Distribution Waterfall from Clawback CVI Allocation to Allowed CW/HTA Claims set forth in Exhibit "J" to the Plan.

12.     <u>Restriction Fee</u>.  In consideration for the agreements set forth herein, including the agreement to "lock-up" its HTA Senior 98 Bonds and HTA Notes, DRA shall be entitled to receive on the effective date of the HTA Plan, or as soon as practicable thereafter in accordance with the terms of the HTA Plan, but in no event later than ten (10) Business Days following such date, in the form of an allowed administrative expense claim, Fifteen Million Dollars ($15,000,000.00), in cash, from HTA (the "<u>Restriction Fee</u>"); <u>provided</u>, <u>however</u>, that, if this Stipulation is terminated pursuant to decretal paragraph 16(b) hereof, DRA shall not be entitled to the Restriction Fee.

13. <u>Right to Amend Plan</u>. Provided this Stipulation has not been terminated and remains in full force and effect, in its sole and absolute discretion, the Oversight Board may file any further plan of adjustment (including, without limitation, related documents, such as the CW Fiscal Plan, and plan supplements) amending the Plan or any subsequent plan of adjustment for the Commonwealth or HTA; <u>provided</u>, <u>however</u>, that such plan shall contain provisions consistent with those described in this Stipulation and that nothing in such plan is inconsistent with such provisions; and, <u>provided</u>, <u>further</u>, that the Oversight Board shall not amend such plan in any manner that would diminish the DRA's entitlements and rights pursuant to this Stipulation or the Plan.

14. <u>No Offer to Issue or Sell Securities</u>. Each of the Parties, severally and not jointly, acknowledges and agrees that this Stipulation does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful. NOTWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY PROMESA, THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, ANY RULE OR REGULATIONS PROMULGATED THEREUNDER, OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY ANY ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

15. <u>Duty to Defend</u>. The Oversight Board shall defend any challenge to this Stipulation.

16. <u>Termination</u>. This Stipulation shall terminate, and thereafter shall be null and void and deemed of no further force and effect upon the occurrence of one of the following events: (a)

16

by the DRA Parties, upon the Oversight Board's breach of any of the material terms or provisions of this Stipulation, including the filing of a plan of adjustment for HTA in a manner inconsistent with the terms herein; (b) by the Oversight Board, upon any of the DRA Parties' material breach of the terms or provisions of this Stipulation; or (c) by either the Oversight Board or the DRA Parties, if the Title III Court denies confirmation of the Plan or the HTA Plan (or any plan of adjustment filed subsequent to the HTA Plan) and the Oversight Board fails to file an amended Plan or amended HTA Plan (in each case, consistent with and not economically or materially worse than the terms of this Stipulation), within thirty (30) calendar days after such denial.

17. <u>Specific Performance</u>. The Parties understand and agree that monetary damages would be an insufficient remedy for any breach of this Stipulation by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, without the necessity of proving the inadequacy of monetary damages as a remedy. Specific performance and injunctive or other equitable relief and the right to terminate this Stipulation in accordance with the terms of this Stipulation shall be the sole and exclusive remedies for any breach of this Stipulation by any Party.

18. <u>Further Assurances</u>. Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, such instruments, and to take such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Stipulation.

<u>Miscellaneous Provisions</u>

19. The Court's holdings concerning the applicability of the Asset Restrictions to the DRA Parties in the *Order Concerning the Government Parties' Objection to the DRA Parties' Standing to Seek Relief from the Automatic Stay or in the Alternative, Ordering Payment of*

17

*Adequate Protection Concerning the DRA's Asset Restrictions* [ECF No. 17725] and the Administrative Expense Opinion shall be binding on the Parties.

20.     The Parties, by and through their respective counsel, represent and warrant that they are duly authorized to enter into and be bound by this Stipulation.

21.     The agreements, representations, covenants, and obligations of the Parties under this Stipulation are several only and not joint in any respect and none shall be responsible for the performance or breach of this Stipulation by another.

22.     The execution of this Stipulation is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Stipulation.   None of this Stipulation (including the recitals and exhibits hereto), the settlement, or any act performed or document executed pursuant to or in furtherance of this Stipulation or the settlement herein shall be admissible in any proceeding for any purposes, except to enforce the terms of this Stipulation.

23.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Stipulation.

24.     This Stipulation shall be governed by New York law.

25.     This Stipulation may be executed in multiple counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which will be deemed an original, but all of which together will constitute one instrument.

26.     For the avoidance of doubt, this Stipulation shall not impact any claims of the DRA Parties other than those pertaining to the Debtors and HTA.

Dated: November 5, 2021

[*Signature Pages Follow*]

**THE COMMONWEALTH OF PUERTO RICO**

By: Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico

By: /s/ Brian S. Rosen
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth of Puerto Rico*

**THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By: Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

By: /s/ Brian S. Rosen
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

20

**THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY**

By: Financial Oversight and Management Board for Puerto Rico, as representative of the Puerto Rico Public Buildings Authority


By:  /s/ *Brian S. Rosen*
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Puerto Rico Public Buildings Authority*


**THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

By: Financial Oversight and Management Board for Puerto Rico, as representative of the Puerto Rico Highways and Transportation Authority


By:  /s/ *Brian S. Rosen*
Brian S. Rosen
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Puerto Rico Highways and Transportation Authority*

126714213v4

**THE GDB DEBT RECOVERY
AUTHORITY**

By: AmeriNational Community Services,
LLC as servicer for the GDB Debt Recovery
Authority

By: /s/ *Arturo J. García-Solá*
Arturo J. García-Solá
**MCCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

*Attorneys for AmeriNational Community
Services, LLC as servicer for the GDB Debt
Recovery Authority*

22

**THE GDB DEBT RECOVERY
AUTHORITY**

By: Cantor-Katz Collateral Monitor LLC, as
Collateral Monitor for GDB Debt Recovery
Authority


By: /s/ Douglas S. Mintz
Douglas S. Mintz
**SCHULTE ROTH & ZABEL LLP**
901 Fifteenth Street, NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 729-7470
Facsimile: (202) 730-4520

-and-

Douglas Koff (admitted pro hac vice)
Abbey Walsh (admitted pro hac vice)
Peter J. Amend (admitted pro hac vice)
919 Third Avenue
New York, N.Y. 10022
Tel: 212-756-2000
Fax: 212-593-5955

*Attorneys for Cantor-Katz Collateral
Monitor LLC, as Collateral Monitor for
GDB Debt Recovery Authority*

23