**Hearing Date: June 29, 2022 at 9:30 a.m. (AST)**
**Objection Deadline: June 14, 2022 at 4:00 p.m. (AST)**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | ) PROMESA<br>) Title III<br>)<br>) No. 17 BK 3283-LTS<br>)<br>) (Jointly Administered)<br>)<br>)<br>)<br>) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | ) PROMESA<br>) Title III<br>)<br>) No. 17 BK 4780-LTS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COBRA ACQUISITIONS LLC'S MOTION TO LIFT STAY ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND .....................................................................................................................4

RELIEF REQUESTED...........................................................................................................11

ARGUMENT ........................................................................................................................11

I.     THE INTERESTS OF JUSTICE FAVOR LIFTING THE STAY ON THE
ADMINISTRATIVE EXPENSE MOTION ....................................................................11

       A.     Cobra Continues to Suffer Substantial Harm by Prolonged Extension of
the Stay.......................................................................................................12

       B.     With the Resolution of the Criminal Matter, the Hardship on the
Government Parties Is Vastly Overstated ............................................................14

CONCLUSION.....................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin v. Unarco Indus., Inc.*,
705 F.2d 1 (1st Cir. 1983) ...............................................................................................14

*Gonzalez v. Cruz*,
926 F.2d 1 (1st Cir. 1991) ...............................................................................................12

*In re ATP Oil & Gas Corp.*,
No. 12-36187, 2014 WL 1047818 (Bankr. S.D. Tex. Mar. 18, 2014)..............................15

*In re Jeans.com*,
491 B.R. 16 (Bankr. D.P.R.) ............................................................................................13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................................................................................................11, 14

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) .........................................................................................12, 14

*Ramirez Lluveras v. Pagan Cruz*,
No. 08-CV-1486 (FAB), 2010 WL 11679649 (D.P.R. Aug. 5, 2010) .............................12

**Statutes**

11 U.S.C. § 105(a) ..............................................................................................................1

11 U.S.C. § 503(b) .........................................................................................3, 5, 15, 17

18 U.S.C. § 201....................................................................................................................2

18 U.S.C. § 208(a) ...............................................................................................................2

PROMESA § 301 .................................................................................................................1

**Miscellenous**

Nancy C. Dreher, Joan N. Feeny & Michael J. Stepan,
*Bankruptcy Law Manual* (5th ed. 2021-2) .....................................................................13

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these cases by PROMESA section 301, for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), lifting the stay applicable to Cobra's *Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8789] (the "Administrative Expense Motion") in the Title III Case commenced by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on behalf of the Puerto Rico Electric Power Authority ("PREPA" and, together with the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the "Government Parties").  In support of this Motion, Cobra respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The stay applicable to the Administrative Expense Motion should be lifted because circumstances have changed materially.  The Court originally imposed the stay in October 2019 and has continued it thereafter at regular six-month intervals.  As Cobra consistently has demonstrated during these proceedings, the stay is highly prejudicial to Cobra, which has unpaid invoices in respect of legitimate, necessary and life-saving work it successfully performed totaling approximately $350 million (including approximately $123 million of interest, which continues to accrue).  Moreover, it now is patently clear that the two grounds for the stay can no longer support its prolonged continuance.  Those grounds are as follows: *first*, that a criminal indictment against three individuals (the "Criminal Matter"), including Cobra's former president (but, significantly, not Cobra) could affect the outcome of the Administrative Expense Motion, and, *second*, that FEMA's ongoing analysis of PREPA's contracts with Cobra and performance of hurricane restoration work (the "FEMA Analysis") could affect Cobra's entitlements to payment for the work

1

it performed at PREPA's direction and after multiple rounds of approval by both PREPA and FEMA.

2.      As to the Criminal Matter, Cobra has maintained throughout that the Government Parties' various theories as to how the outcome of those proceedings may affect Cobra were merely speculation, unmoored from the contractual language, applicable law and without any likely effect on the outcome of the Administrative Expense Motion.  These arguments by Cobra now have been fully and finally vindicated.  Specifically, on May 18, 2022, the District Court presiding over the Criminal Matter approved a plea agreement by Cobra's former president, Donald Keith Ellison (the "Plea Agreement"), which is attached hereto as **Exhibit B**.[1]  For purposes of the Administrative Expense Motion, the most relevant part of the Plea Agreement is the stipulation of facts.  In summary, the U.S. Attorney, Mr. Ellison and Ahsha Tribble (a FEMA Region II, Deputy Regional Administrator) agreed that Mr. Ellison provided to Ms. Tribble airfare, accommodations and personal security services having a value of approximately $8,000, and in return Ms. Tribble performed official acts between April 2018 and October 2018 in connection with a proposal by Cobra to reconstruct the electrical grid on the island of Vieques in Puerto Rico.  As the stipulation of facts makes clear, Cobra was ultimately ***not*** awarded this contract.  No other facts relevant to the Contracts at issue under the Administration Expense Motion have resulted from the now resolved Criminal Matter, and the Plea Agreement makes no mention of any conduct related to in any way the Contracts.

---

[1]    Pursuant to the Plea Agreement, Mr. Ellison agreed to plead guilty to violating 18 U.S.C. § 201, which prohibits offering anything of value to a public official in return for an official act.  In this instance, the public official was identified as Ms. Tribble, who at the time was an employee of FEMA, and who also pleaded guilty.  Previously, the third defendant in the Criminal Matter, Jovanda Patterson, pleaded guilty to one count of 18 U.S.C. § 208(a), acts affecting a personal financial interest.  Ms. Patterson's plea wholly related to her conduct as an employee of FEMA, not Cobra, and also has no bearing on the amount owed to Cobra under the Contracts (as defined below).

3.     The second basis for the stay—the FEMA Analysis—likewise does not support the continuance of the stay.  It now is over two years since the FEMA Analysis was expected to be completed and, once again, there is no end in sight.  To date, the various reports issued by FEMA, the RAND Corporation and other disinterested third parties almost universally support Cobra's argument that the services it performed on behalf of PREPA were reasonable, actual and necessary costs.[2]  Ultimately, however, Cobra's Contracts are with PREPA, not FEMA, and FEMA's conclusions are not binding on this Court's independent determination of whether Cobra's claims are entitled to administrative expense treatment within the meaning of Bankruptcy Code section 503(b).  While the FEMA Analysis may affect how much PREPA is reimbursed for the amounts it owes to PREPA, it is fundamentally unfair to continue to subject Cobra to a seemingly never-ending review process by a third party over which it has no control—or even standing—and which (except for a single, inapplicable contractual exception where the failure to secure federal funding is Cobra's "sole fault") will not alter PREPA's liability to Cobra.

4.     Cobra has waited nearly three years to assert its rights and recover the hundreds of millions of dollars PREPA owes it.  These amounts are not simply profits for Cobra, but are reimbursements to Cobra for amounts that it paid out-of-pocket for labor and goods and taxes.  At this point in these proceedings, any alleged hardship on PREPA by lifting the stay is far

---

[2]     *See, e.g.*, Mammoth Energy Services, Inc., Current Report (Form 8-K) (June 9, 2020), Ex. 99.1 (copy of RAND Report, dated as of March 28, 2019, concluding that the Cobra contract was procured in a reasonable procurement process and that Cobra's blended rates fell within the estimates ranges for all scenarios considered for the emergency work performed); Mammoth Energy Services, Inc., *Mammoth Energy Releases Additional Information Regarding Work Performed in Puerto Rico* (Mar. 17, 2021), https://ir.mammothenergy.com/node/8326/pdf (highlighting a recently obtained memorandum from FEMA, dated April 22, 2019, concluding that PREPA (i) awarded the contract in compliance with the emergency procurement provisions of the Commonwealth of Puerto Rico and (ii) the contract rates were reasonable when compared with other proposals available to PREPA at the time); Mammoth Energy Services, Inc., *Mammoth Energy Announces Third Validation of Work Performed In Puerto Rico* (Dec. 8, 2020), https://ir.mammothenergy.com/node/8261/pdf (providing 781-pages obtained from FEMA under FOIA requests that, among other things, highlight Cobra's responsiveness to PREPA and the people of Puerto Rico).

exaggerated and vastly outweighed by the tremendous prejudice Cobra has already, and will continue to, suffer.  With the resolution of the Criminal Matter, the risk of duplication of effort between this Court and the court overseeing the Criminal Matter is gone.  Further, to Cobra's knowledge, there is no information that PREPA needs to review Cobra's invoices that Cobra has not already supplied to PREPA or extensively discussed with PREPA's advisors.  It therefore rings hollow that lifting the stay would open a barrage of discovery or other litigation costs when the parties have most, if not all, the information that they could possibly need to resolve the Administrative Expense Motion in a sensible and efficient manner.  Finally, in light of the PREPA's significant liabilities to Cobra, Cobra's potential claim may have significant ramifications for PREPA's ongoing plan of adjustment process and whether any such plan proposed by PREPA is feasible.  Indeed, the longer that Cobra's claim is unresolved, the more interest that accrues (and which has been accruing at a rate of approximately $3.3 million per month since March 2019) and the more detrimental that claim is to PREPA and its prepetition creditors.

5.      Simply put, circumstances have changed materially and the reasons in favor of a stay no longer support its continuance. With PREPA seeking to exit its Title III Case in the near term, PREPA and its stakeholders will benefit from an efficient and expeditious resolution of Cobra's claims.  Accordingly, Cobra respectfully submits that the interests of justice no longer support the stay of the Administrative Expense Motion and requests that the stay be lifted.

## **<u>BACKGROUND</u>**

6.      When Cobra began its work under the October 19, 2017 Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria (the "<u>First Contract</u>"), Puerto Rico had no power.  Hurricanes Irma and Maria left Puerto Rico a Federal Disaster Zone, with critical infrastructure destroyed or severely damaged.  Flooding, storm surge, landslides and the lack of cell phone service made travel and operations difficult.  Housing was not available for the

many workers needed to undertake the repair work. Hundreds of workers and tons of equipment to perform the work needed to be transported from the mainland. Cobra overcame these difficult conditions to perform the work it contracted to perform to restore Puerto Rico's electrical grid under the First Contract and then, after a competitive bid process, under the May 26, 2018 Master Service Contract for PREPA's Electrical Grid Repairs Hurricane Maria (the "Second Contract" and, together with the First Contract, the "Contracts"). Cobra completed its contracted services in March 2019. PREPA has never disputed that Cobra's work was highly successful in restoring the island's electrical grid and otherwise meeting the goals for which PREPA hired Cobra.

7.     On September 30, 2019, Cobra filed the Administrative Expense Motion, seeking an order allowing an administrative expense claim under Bankruptcy Code section 503(b)(1) of the Bankruptcy Code in respect of Cobra's unpaid postpetition invoices in excess of $200 million under the Contracts between Cobra and PREPA. *See* Admin. Expense Mot. ¶ 15.[3]

8.     On October 17, 2019, the Court granted the relief sought by the Government Parties through the *Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 8838] ("Gov't Parties Stay Mot."), which Cobra opposed [Case No. 17-3283, ECF No. 8850], and stayed proceedings on the Administrative Expense Motion. *See Order Granting Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No.

---

[3]     These unpaid amounts include payments withheld (i) for invoices to which PREPA has raised no substantive objection; (ii) based upon unsubstantiated "headcount" questions; (iii) for completed work erroneously claimed to be outside the scope of the agreements; (iv) for costs and work completed at PREPA's direction in preparation for Hurricane Beryl; (v) for extra mapping work completed at PREPA's direction; (vi) to reimburse Cobra's tax payments in excess of 8.5% of gross revenue (the "Tax Claims"); and (vii) for interest owed on late payments. Admin. Expense Mot. ¶¶ 42-62

8886] (the "Stay Order") at 3.  The Stay Order was based on the notion that the outcomes of the

pending Criminal Matter and the ongoing FEMA Analysis might affect Cobra's ability to recover

the full amount it seeks in its Administrative Expense Motion.  *Id.* at 2.  At the time the Stay Order

was originally entered, the parties expected a jury trial in the Criminal Matter to begin on

December 9, 2019 and for FEMA to complete the FEMA Analysis by May 29, 2020.

9.     On February 3, 2020, following a joint status report by Cobra and the Government

Parties [Case No. 17-3283, ECF No. 10307], the Court entered an order continuing the Stay Order

until the June 2020 omnibus hearing [Case No. 17-4780, ECF No. 1894].

10.    On March 25, 2020, Cobra filed the *Urgent Motion to Modify the Stay Order and

Allow the Undisputed Tax Claims* [Case No. 17-3283, ECF No. 12531] (the "Tax Claims Motion").

By the Tax Claims Motion, Cobra sought to lift the stay solely as to the Tax Claims (in the amount

of approximately $62 million), which seek reimbursement of taxes actually paid to Puerto Rico in

2018 as required by the First Contract.  Tax Claims Mot. ¶ 15.  On April 7, 2020, the Government

Parties filed their opposition to the Tax Claims Motion [Case No. 17-4780, ECF No. 1959] and,

on April 14, 2020, Cobra filed its reply in support of the Tax Claims Motion [Case No. 17-3283,

ECF No. 12752].

11.    On May 21, 2020, the Court entered the *Memorandum Order Denying Cobra

Acquisitions LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims*

[Case No. 17-4780, ECF No. 2004] (the "Tax Claims Order").  The Tax Claims Order recognized

that the "adjournment of the criminal trial until January 2021, at the earliest, constitutes a

significant change in circumstances since the Court entered the Stay Orders."  Tax Claims Order

at 9.  The Court also observed that "PREPA's contractual arguments may well be strained."  *Id.* at

10.  However, after taking account of other relevant factual and procedural considerations, the

6

Court concluded that "Cobra has not demonstrated that there has been a material change warranting modification of the stay of litigation[.]"  *Id.* at 11.

12.     On June 5, 2020, following a joint status report by Cobra and the Government Parties [Case No. 17-3283, ECF No. 13253], the Court entered an order continuing the Stay Order until the December 2020 omnibus hearing [Case No. 17-3283, ECF No. 13373].

13.     On December 9, 2020, following a status report by the Government Parties [Case No. 17-4780, ECF No. 2314], the Court entered an order continuing the Stay Order until the June 2021 omnibus hearing [Case No. 17-3283, ECF No. 15396].

14.     On April 6, 2021, Cobra filed the *Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 16328] (the "First Lift Stay Motion").  By the First Lift Stay Motion, Cobra sought an order lifting the stay applicable to the Administrative Expense Motion because, among other things, (i) trial in the Criminal Matter had, at that time, been postponed indefinitely, (ii) the cost analysis and determination from FEMA had been continually delayed past its original expected delivery date, with no indication of when it would be finally delivered and (iii) Cobra continued to suffer substantial prejudice as a result of the stay.

15.     Following the filing of the First Lift Stay Motion, advisors to the Government Parties informed Cobra that FEMA's determination memorandum with respect to the First Contract was expected imminently and, accordingly, Cobra agreed to adjourn the First Lift Stay Motion to the June 16, 2021 omnibus hearing.  *See Joint Motion of Government Parties and Cobra Acquisitions, LLC to Adjourn Cobra Acquisitions, LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 16405].  On April 14, 2022, the Court entered an order adjourning the First Lift Stay Motion.  *See* Case No. 17-3283, ECF No. 16410.

7

16.     On May 26, 2021, FEMA issued a determination memorandum (the "May 26, 2021 Determination Memorandum") with respect to the First Contract.   The May 26, 2021 Determination Memorandum found that:

- of the $945 million invoiced[4] by Cobra under the First Contract, $46.7 million was not payable under the contract in part because (i) Cobra did not have an alleged minimum number of linemen in Puerto Rico at the outset of the contract ($22 million), (ii) Cobra employed more than an alleged contract maximum of personnel working in Puerto Rico on 43 days in 2018 ($24 million) and (iii) lodging costs incurred to house Cobra's management team and safety personnel were duplicative to field lodging costs ($133,800);

- tax gross-up costs under the First Contract are eligible for FEMA reimbursement, documentation supporting the tax gross up must be supplied at closeout of the First Contract grant and FEMA will not reimburse the cost of tax gross up paid on amounts that FEMA disallows as not payable under the contract.

17.     On June 4, 2021, the Government Parties filed the *Opposition of the Oversight Board, AAFAF, and PREPA to Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 16889].

18.     On June 7, 2021, the Government Parties filed the *Status Report Pursuant to December 9, 2020 Order Setting Deadline for Further Status Regarding Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 16893].

19.     On June 8, 2021, Cobra filed *Cobra Acquisitions LLC's Reply in Support of Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 16902].

---

[4]   The aggregate amount for which PREPA sought reimbursement under the First Contract ($944.7 million) was approximately $700,000 less than the $945.4 million FEMA initially obligated. Accordingly, FEMA also de-obligated this $700,000 difference in addition to the $46 million it determined is not payable under the First Contract, for a total de-obligation of $46.7 million.

20.     On June 14, 2021, the Court entered the *Order Adjourning Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-3283, ECF No. 16970], which adjourned the First Lift Stay Motion to the omnibus hearing scheduled for August 4, 2021.  In addition, the order required the parties to meet and confer regarding the May 26, 2021 Determination Memorandum and any future determination memorandum with respect to the Second Contract.  The order also required the parties to provide a report on: (i) the parties' position on the tax gross-up associated with the work/costs that the Determination Memorandum indicated the FEMA found ineligible; (ii) whether and when a second FEMA cost analysis and determination memorandum concerning the Second Contract is expected to be issued; (iii) the status of the Criminal Matter; and (iv) the parties' positions concerning whether the liquidation of Cobra's administrative expense claim is necessary in advance of PREPA's plan confirmation process.

21.     On July 20, 2021, the Government Parties and Cobra filed the *Joint Status Report Pursuant to June 13, 2021 Order Adjourning Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-4780, ECF No. 2563].

22.     On July 23, 2021, with aid from Cobra, PREPA timely filed an administrative appeal of the $46.7 million disallowance under the May 26, 2021 Determination Memorandum. The appeal requested FEMA approve the full amount disallowed and schedule meetings with PREPA necessary to complete FEMA's review in a timely manner.

23.     On August 10, 2021, the Court entered the *Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 17729], which denied the First Lift Stay Motion, continued the Stay Order and directed the parties to file a joint status report by January 19, 2022.

24.     On January 19, 2022, the Government Parties and Cobra filed the *Joint Status Report Pursuant to August 10, 2021 Order Denying Cobra Acquisitions LLC's Motion to Lift the Stay Order* [Case No. 17-3283, ECF No. 19835].

25.     On January 26, 2022, the Court entered the *Order Setting Deadline for Further Status Report* [Case No. 17-3283, ECF No. 19897], which continued the Stay Order and directed the parties to file a joint status report by July 25, 2022.

26.     On February 4, 2022, PREPA, with Cobra's assistance, submitted a response to a January 5, 2022 request for information ("RFI") from FEMA in connection with the appeal of the May 26, 2021 Determination Memorandum.

27.     On May 11, 2022, PREPA filed a 13-week cash flow update (the "May 11 Cash Flow Update"), attached hereto as **Exhibit C**.  Based on the May 11 Cash Flow Update, PREPA currently has $40.4 million in a PREPA account relating to the work performed by Cobra.  *See* May 11 Cash Flow Update at 9.  This money has not been paid to Cobra.

28.     On May 31, 2022, FEMA issued its decision on the appeal of the May 26, 2021 Determination Memorandum, approving in part and denying in part.  In sum, of the $46.7 million that was originally disallowed by the May 26, 2021 Determination Memorandum, FEMA allowed $24.4 million, but disagreed with the contract interpretation that both PREPA and Cobra had adopted in performing the contract and, therefore, disallowed the balance.  To date, there has been no indication from PREPA that it intends to pay Cobra the amount allowed by FEMA.  Indeed, since the May 26, 2021 Determination Memorandum was issued, PREPA has made no payments to Cobra, notwithstanding the $40.4 million in funds that PREPA apparently has in an account specifically earmarked for Cobra.

29.     At this time, Cobra is not aware of any fixed deadline by which FEMA intends to provide a determination memorandum with respect to amounts owed under the Second Contract.

## RELIEF REQUESTED

30.     By this Motion, Cobra respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, lifting the stay applicable to the Administrative Expense Motion.

## ARGUMENT

### I.     THE INTERESTS OF JUSTICE FAVOR LIFTING THE STAY ON THE ADMINISTRATIVE EXPENSE MOTION

31.     The decision to stay proceedings calls for the trial court to exercise its judgment to "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In *Landis*, the Supreme Court cautioned against "immoderate" stays without reasonable limits and instructed that, "once those limits have been reached, the fetters should fall off." *Id.* at 257. The Court of Appeals for the First Circuit, while acknowledging that this determination is "highly nuanced," has articulated the following seven factors "that typically bear on [a court's] decisional calculus" in staying proceedings:

> (i)     the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire;
>
> (ii)    the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem;
>
> (iii)   the convenience of both the civil and criminal courts;
>
> (iv)    the interests of third parties;
>
> (v)     the public interest;
>
> (vi)    the good faith of the litigants (or the absence of it); and
>
> (vii)   the status of the cases.

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (cleaned up).

A stay, as an extraordinary remedy, "should be granted only in rare circumstances." *Ramirez*

*Lluveras v. Pagan Cruz*, No. 08-CV-1486 (FAB), 2010 WL 11679649, at *4 (D.P.R. Aug. 5, 2010)

(citing *Gonzalez v. Cruz*, 926 F.2d 1, 3 (1st Cir. 1991)).

32.     Here, all relevant factors weigh strongly in favor of lifting the stay applicable to the

Administrative Expense Motion.  Specifically, the primary factors relevant are (a) the interests of

Cobra in "proceeding expeditiously" and the prejudice of delay and (b) the "hardship to

[PREPA]".[5]  With the resolution of the Criminal Matter, the convenience of the courts no longer is

a relevant concern.

### A.     Cobra Continues to Suffer Substantial Harm by Prolonged Extension of the Stay

33.     No party can credibly assert that Cobra has not suffered immense prejudice by the

extended duration of the stay and the lack of payment on its invoices, which now have been

outstanding for over ***38 months***.  These invoices are outstanding notwithstanding that Cobra

successfully completed its work restoring Puerto Rico's power grid, the lack of any evidence or

claim disputing that Cobra provided critical, life-saving services to PREPA under extreme

circumstances and the fact that PREPA has at least $40.4 million in an account earmarked for

Cobra.[6]  Nonetheless, so long as the stay has been in place, Cobra has been prevented from even

---

[5]     The public interest, including the general public interest in the prompt resolution of litigation and the policy of encouraging third-parties to continue providing services to a debtor notwithstanding the bankruptcy, also weighs in favor of lifting the stay.  *See Microfinancial*, 385 F.3d at 79 n.4.  In addition, the interest of third parties—most notably PREPA's prepetition creditors—would be served by a resolution of the Administrative Expense Motion, given that the liquidation of Cobra's claim may have significant effects on PREPA's ongoing plan process.

[6]     It is unclear on what legal basis PREPA is retaining these funds rather than remitting them to Cobra.  As PREPA has previously acknowledged, "[f]unds paid to PREPA by FEMA for the specific purpose of paying unpaid invoices to disaster relief contractors … are required to be paid to the subject contractor under the invoices approved by FEMA for payment … Failure to do so would violate the terms of the grant, and cause FEMA to require return of the funds improperly used at grant closeout."  *See Motion of Puerto Rico Electric Power Authority Pursuant to Bankruptcy Code Section 503(b), PROMESA Section 315(a)(3), and Bankruptcy Rule 9019 for Order Approving Settlement Agreement with Whitefish Energy Holdings, LLC and Granting Related Relief* [Case No. 17-3283, ECF No. 20242], ¶ 21.

*beginning* to seek redress from the Court or address disputes by PREPA that will not be resolved by the FEMA Analysis.

34.     The Government Parties in the past have dismissed Cobra's concern about nonpayment because PROMESA does not require administrative expense claims to be paid until the effective date of a plan of adjustment.  *See, e.g.*, Gov't Parties Stay Mot. ¶ 33.  That argument, of course, ignores reality.  If every claimant were forced to wait 38 months or longer for payment it would eviscerate the policy underlying the administrative priority for postpetition services and the incentives for parties like Cobra to do business with debtors.  *In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013) ("A principal aim of Section 503 is to encourage parties to render post-petition services to debtors by ensuring that payment will be made on a priority basis in the post-petition period.") (citations omitted); *see also* Nancy C. Dreher, Joan N. Feeny & Michael J. Stepan, *Bankruptcy Law Manual*, § 6.32 (5th ed. 2021-2) ("There are several essential policies underlying the priority for administrative expenses: to encourage activities that will benefit the estate; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the estate; to compensate those injured by the estate; and to prevent unjust enrichment of the estate at the expense of its creditors.") (citations omitted).  Indeed, not only do indefinite stays like the one applicable to the Administrative Expense Motion deter business or raise the cost a debtor must incur to continue operating its business, but here, PREPA and its prepetition creditors have undoubtedly benefited from the postpetition work that Cobra performed and that has made PREPA's rehabilitation even possible.

35.     Further, even if it is beyond the Court's power to order PREPA to pay Cobra's claims immediately, substantial value exists in having an ***allowed*** administrative expense claim that would be paid on PREPA's exit from Title III.  The liquidation and allowance of Cobra's claims

would provide objective value both to Cobra and PREPA, as both parties (as well as PREPA's creditors) would benefit from the certainty of knowing the extent of PREPA's liability to Cobra.

**B.    With the Resolution of the Criminal Matter, the Hardship on the Government Parties Is Vastly Overstated**

36.    The Government Parties have long argued that the Stay Order will conserve resources by reducing the need for extensive discovery and related costs.  As set forth in the First Lift Stay Motion, Cobra believes that the parties are capable of crafting a sensible and cost-efficient discovery plan—if discovery is even necessary at this juncture.  But vaguely pointing to the costs of discovery surely falls far short of meeting the Government Parties' "heavy burden" of demonstrating a "clear case of hardship."  *Microfinancial*, 385 F.3d at 77 (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)); *Landis*, 299 U.S. at 255-56 (a stay must be "kept within the bounds of moderation").

37.    This is further compounded by the fact that the Criminal Matter has been resolved, without any ramifications on the Contracts and the Administrative Expense Motion, thus eliminating any concern over potential duplication of effort between these proceedings and the Criminal Matter.  As the stipulation of facts makes clear, the conduct at issue in the Criminal Matter related to a contract that Cobra was never awarded and for work Cobra never performed.  Nothing in the stipulation of facts involved the Contracts at issue here or called into the question the propriety of those Contracts.  And, of course, Cobra never was a defendant in those proceedings. PREPA's various speculative theories on how PREPA may have defenses based on the Criminal Matter that would allow them to terminate the Contracts or render them voidable are simply

without merit.  If PREPA believes otherwise, nothing in the Criminal Matter will assist PREPA in establishing its defense.

38.     Moreover, the FEMA Analysis cannot be viewed in isolation but must be considered against all countervailing factors, including the fact that the FEMA Analysis is ***focused on the conduct of PREPA and FEMA***, not Cobra.  Cobra has no standing before FEMA, the Contracts are solely with PREPA and FEMA's conclusions will not alter PREPA's liability to Cobra.  Indeed, under the Contracts, PREPA is relieved from paying Cobra only if it fails to receive federal funding due to Cobra's "sole fault."  A retroactive decision by FEMA not to reimburse PREPA for amounts PREPA already agreed to pay Cobra under the Contracts could not, under any reasonable interpretation, be due to Cobra's "sole fault."  PREPA, of its own volition, agreed to the terms of the Contracts, including Cobra's rates, and did so only after multiple levels of review, approval and advice of counsel, with the performance of the Contracts subject to oversight by PREPA.  *See, e.g.*, *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 WL 1047818, at *4 (Bankr. S.D. Tex. Mar. 18, 2014) (finding no justification or supporting case law to the debtor's argument that administrative expense claims should be disallowed because, in hindsight, the work may not have benefitted the estate, when such work was performed under contracts, at the authority and direction of the debtor).  Moreover, PREPA has never explained how Cobra could be solely at fault if FEMA made mistakes in reaching its December 2017 conclusion that Cobra's rates for labor and equipment were reasonable or if the RAND Corporation erred in its independent March 2019 finding that the rates PREPA agreed to pay Cobra were reasonable.  In short, the FEMA Analysis may or may not be coextensive with the Court's evaluation of Cobra's claims as "actual [and] necessary" under Bankruptcy Code section 503(b), but, in any event, does not relieve PREPA of its liability to Cobra.

15

39.     While FEMA's analysis of the First Contract has been completed, the status of FEMA's review of the Second Contract is unclear.  Cobra has provided PREPA (and, indirectly, presumably FEMA as well) all information that FEMA and PREPA have requested to further support the work Cobra performed, and Cobra understands that no further information requests are pending.  Given the extensive and informal information and assistance that Cobra voluntarily and its own expense has provided PREPA, it remains mysterious what additional review of the Second Contract must be performed or why such review process now has taken over three years to complete.

40.     Indeed, Cobra understands that PREPA is still analyzing the following issues, notwithstanding Cobra's submission of all information relevant to understand the claims: (i) the Tax Claims; (ii) work associated with the Roosevelt Roads restoration; (iii) work that PREPA has claimed falls outside of the scope of the Second Contract; (iv) certain headcount issues; and (v) demobilization expenses.  As to the Roosevelt Roads restoration and the demobilization expenses, these are irrelevant for purposes of the Stay Order as Cobra has not sought an administrative expense claim at this time for those payments.  *See* Administrative Expense Mot. ¶ 16.  With respect to the Tax Claims, the issues associated therewith have been fully briefed to this Court in the past, *see generally* Tax Claims Mot., and it ultimately is a mechanical calculation that should not require any further discovery or hardship on PREPA.[7]

41.     As to the remaining two items, Cobra has provided all information to support the headcount issues that PREPA has flagged and Cobra is not aware of any additional information or documents that is required to make a determination with respect to those issues.  Finally, PREPA

---

[7]   As noted in the January 19, 2022 status report [Case No. 17-4780, ECF No. 2690], PREPA hired tax advisors to evaluate the Tax Claims and render an opinion.  Cobra negotiated a confidentiality agreement, provided all information requested by such tax advisors and made available its accountants.

has continued to dispute invoices under the Second Contract on the basis that they were beyond the scope of work. *See* Administrative Expense Mot. ¶¶ 49-55. These invoices include amounts due for safety and training exercises, waste disposal and maintenance work and are fully justified by the terms of the Second Contract. From Cobra's view, this does not appear to be a factual dispute, but a legal one that is ripe for determination by this Court as to whether these were actual and necessary costs within the meaning of Bankruptcy Code section 503(b) and should not impose a heavy burden on PREPA to litigate, if necessary.

42. In sum, it is fundamentally unfair to deprive Cobra of its right to payment under contracts entered into with PREPA postpetition solely because FEMA has not yet completed the FEMA Analysis or reimbursed PREPA. Cobra has no standing before FEMA, is not in any contractual relationship with FEMA and has no visibility into FEMA's process or the expected resolution. Cobra is being asked to bear risks substantially different from what it bargained for, and has now borne those risks for over three years despite the fact that the Contracts relieve PREPA of liability only if federal funding is not available due to Cobra's "sole fault"—an exception that is not applicable here. At this point in the proceedings, the universe of open issues appears relatively minimal and the parties are capable of crafting a sensible discovery and litigation plan, if that is even necessary. It is plain that the Government Parties have used the Stay Order to avoid paying Cobra as long as possible to Cobra's clear and indisputable detriment. Accordingly, the Stay Order should be lifted as the interests of justice no longer support its continuance.

## **<u>CONCLUSION</u>**

WHEREFORE, for the reasons set forth above, Cobra respectfully requests that this Court enter an order, substantially in form attached hereto as **<u>Exhibit A</u>**, granting the relief requested herein, and granting Cobra such other relief as this Court deems just and proper.

[*Remainder of page left blank intentionally.*]

18

Dated: June 7, 2022

Respectfully submitted,


/s/ DRAFT
Rafael Escalera Rodríguez (No. 122609)          Ira S. Dizengoff (*pro hac vice*)
Sylvia M. Arizmendi (No. 210714)                Abid Qureshi (*pro hac vice*)
Alana Vizcarrondo-Santana (No. 301614)          Philip C. Dublin (*pro hac vice*)
REICHARD & ESCALERA, LLC                         Steven M. Baldini (*pro hac vice*)
255 Ponce de León Avenue                        AKIN GUMP STRAUSS HAUER & FELD LLP
MCS Plaza, 10th Floor                           One Bryant Park
San Juan, PR 00917-1913                         Bank of America Tower
Telephone: (787) 777-8888                       New York, NY 10036
Email:  escalera@reichardescalera.com           Tel: (212) 872-1000
          arizmendis@reichardescalera.com         Fax: (214) 872-1002
          vizcarrondo@reichardescalera.com        Email: idizengoff@akingump.com
                                                          aqureshi@akingump.com
                                                          pdublin@akingump.com
                                                          sbaldini@akingump.com

                                                --and--

                                                Thomas P. McLish (*pro hac vice*)
                                                Scott M. Heimberg (*pro hac vice*)
                                                Allison Thornton (*pro hac vice*)
                                                AKIN GUMP STRAUSS HAUER & FELD LLP
                                                2001 K Street, N.W.
                                                Washington, DC 20006
                                                Tel: (202) 887-4000
                                                Fax: (202) 887-4288
                                                Email: tmclish@akingump.com
                                                          sheimberg@akingump.com
                                                          athornton@akingump.com

                                                *Attorneys for Cobra Acquisitions LLC*

**<u>Exhibit A</u>**

**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | )  PROMESA<br>)  Title III<br>)<br>)  No. 17 BK 3283-LTS<br>)<br>)  (Jointly Administered)<br>)<br>)<br>)<br>)<br>) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | )  PROMESA<br>)  Title III<br>)<br>)  No. 17 BK 4780-LTS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## [PROPOSED] ORDER ON COBRA ACQUISITIONS LLC'S MOTION TO LIFT STAY ORDER

Upon *Cobra Acquisitions LLC's Motion To Lift Stay Order* [ECF No. ___ in Case No. 17-BK-4780-LTS, the "Motion"),[2] and the Court having found and determined that (i) it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a), (ii) venue is proper

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

pursuant to PROMESA section 307(a), and (iii) due and proper notice of the Motion has been provided, and after due deliberation and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

      1.     The Motion is GRANTED.

      2.     The Stay Order is lifted.

      3.     The Court retains jurisdiction over any disputes relating to the interpretation, implementation and enforcement of this Order.

      4.     This Order resolved ECF No. ____ in Case No. 17-BK-4780.

SO ORDERED.

Dated:_____, 2022
     San Juan, Puerto Rico

                                   _____
                                   LAURA TAYLOR SWAIN
                                   United States District Judge

## **Exhibit B**

**Plea Agreement**

**<u>Exhibit C</u>**

**May 11 Cash Flow Update**