# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: Case No. 4780, ECF No. 2779** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PV PROPERTIES, INC.

     Movant,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

     Respondent.

**This Court Filing Relates only to
PREPA and Shall be Filed in the
lead Case No. 17-BK-3283-LTS
and PREPA's Title III Case (Case
No. 17-BK-4780-LTS).**

**OPPOSITION OF THE PUERTO RICO ELECTRIC POWER
AUTHORITY TO PV PROPERTIES, INC.'S MOTION FOR RELIEF
<u>FROM THE AUTOMATIC STAY UNDER 11 USC §§ 362(b)(4) & 362 (d)(1)</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT…………………………………………………………………1

RELEVANT BACKGROUND……………………………………………………………...3

    A.    Relevant Background on RECs………………………………………………...3

    B.    PV Properties' Complaint Against PREPA…………………………………5

OPPOSITION………………………………………………………………………..7

    I.    PV Properties Does Not Have A Takings Claim………………………………...7

    II.    Movant Fails to Show Cause to Lift the Automatic Stay Under the Sonnax
        Factors…………………………………………………………………………..10

CONCLUSION………………………………………………………………………..13

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Andrus v. Allard*,
    444 U.S. 51 (1979) ............................................................................................... 9

*Brigade Leveraged Cap. Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508. (D.P.R. 2016) ................................................................... 10

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006) ................................................................................. 9

*Connolly v. Pension Benefit Guar. Corp.*,
    475 U.S. 211 (1986) ............................................................................................. 9

*Hendrix v. Plambeck*,
    420 Fed. App'x 589 (7th Cir. 2011) .................................................................... 9

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997) ............................................................... 10

*In re BFW Liquidation, LLC*,
    No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) .................... 11

*In re Breitburn Energy Partners LP*,
    571 B.R. 59 (Bankr. S.D.N.Y. 2017) ................................................................. 10

*In re City of Stockton*,
    484 B.R. 372 (Bankr. E.D. Cal. 2012) ............................................................... 11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    No. 17 BK 3283-LTS, 2017 WL 7135382 (D.P.R. Nov. 3, 2017) .................... 6, 10

*In re Soares*,
    107 F.3d 969 (1st Cir. 1997) ............................................................................... 7

*Lingle v. Chevron U.S.A., Inc.*,
    544 U.S. 528 (2005) .......................................................................................... 8, 9

*Munoz v. City of Union City*,
    481 Fed. App'x. 754 (3rd Cir. 2012) ................................................................... 9

*Penn Cent. Transp. Co. v. City of New York*,
    438 U.S. 104 (1978) ............................................................................................. 8

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110 (2d Cir. 1992)..................................................................................11

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990)..................................................................................2

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty
Prod., Inc.)*,
311 B.R. 551 (Bankr. C.D. Cal. 2004).................................................................12

STATUTES

12 L.P.R.A. § 8121 ..................................................................................................3

12 L.P.R.A. § 8129 ..................................................................................................4

12 L.P.R.A. § 8132 ..................................................................................................4

12 L.P.R.A. § 8132(e) ..............................................................................................4

12 L.P.R.A. § 8133 ..................................................................................................4

22 L.P.R.A. § 8130 ..................................................................................................5

48 U.S.C. §§ 2101–2241 ..........................................................................................1

PROMESA § 301 ....................................................................................................6

PROMESA § 362(d)(1) ............................................................................................6

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),
as Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"),
pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*
("PROMESA"),[2] respectfully submits this opposition (the "Opposition") to *PV Properties, Inc.'s
Motion for Relief from the Automatic Stay* [Case No. 17-4780, ECF No. 2779] (the "Motion") filed
by PV Properties, Inc. ("Movant" or "PV Properties"). In support of this Opposition, the Debtor
respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Movant is again attempting to compel PREPA to buy the Renewable Energy
Credits ("RECs") Movant obtains through its generation of renewable energy on photovoltaic
distributed generation ("DG") systems. The Court denied Movant's previous two attempts to lift
the stay [Case No. 17-4780, ECF Nos. 387 and 1402] and dismissed its related adversary
proceeding against PREPA [Adv. Proc. No. 20-00142, ECF No. 20]. In each of those instances,
Movant argued PREPA has a statutorily imposed obligation to purchase Movant's RECs and
sought to compel PREPA to purchase its RECs at a price arbitrarily determined by Movant. This
Court determined no such obligation exists, and even if it did, Movant had no private right of
action and no private remedy to enforce that obligation for its own benefit. *See* Adv. Proc. No.
20-00142, ECF No. 20.

2.      Movant's new tact is to repackage its grievance as a Takings Claim. It requests
stay relief to commence an inverse condemnation proceeding against PREPA. *See* Motion at 1.
The crux of Movant's theory is that because PREPA has allegedly reported to the Puerto Rico

---

[2]  PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

1

Energy Bureau ("PREB") the existence of such RECs, PREPA has effectively appropriated them without purchasing them.  Movant fails to show cause for stay relief for several reasons.

3.     *First*, PREPA has not issued any regulations regarding any RECs, let alone RECs purportedly owned by PV Properties.  Therefore, it is impossible that PREPA issued regulations diminishing the value of Movant's RECs at all, let alone sufficiently to create a regulatory taking.  At most, Movant is complaining PREPA made an incorrect statement to its regulator, PREB, which is between PREB and PREPA.  Movant has no standing in that putative dispute, which does not exist.

4.     *Second*, Movant's Takings Claim is not colorable because PREPA has not taken any of Movant's property as Movant admits.  Far from alleging it has been deprived of title to the RECs, Movant maintains it continues to hold title to the RECs and seeks to compel PREPA to purchase the RECs from it.  Movant also lacks a colorable claim that PREPA destroyed or even diminished the value of its RECs.  Once PREB establishes the regulations governing the market for the exchange of RECs,[3] Movant will, subject to the regulations, be able to freely sell and trade its RECs to any buyer including PREPA.  PREPA's mere reporting of information to PREB cannot be an act of taking or regulatory taking.

5.     *Third,* Movant fails to grapple with the fact that the Court has twice denied its lift stay motions on *Sonnax*[4] factors grounds.  The Court's reasoning in those decisions is equally applicable to, and fatal to, the instant Motion.  If Movant merely seeks quantification of its claim, it should await the claims administration process like every other creditor.  It does not allege, nor are there any, exigent circumstances that warrant diverting PREPA's attention and resources in the

---

[3] As discussed below, Movant's true grievance, if any, is with PREB, and not PREPA, as PREB has yet to enact regulations that PREPA awaits governing the pricing and purchase of RECs.

[4] *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990).

midst of global mediation with its major creditor constituencies.  If Movant seeks to skip the line

and lift the stay to prosecute anew and collect on its Takings Claim, such relief is clearly contrary

to, and undermines, the orderly administration of claims embodied by PROMESA and Title III.

As discussed below, the *Sonnax* factors and balance of harms weigh heavily in favor of maintaining

the stay.  The Motion should be denied.

## RELEVANT BACKGROUND

### A.  *Relevant Background on RECs*

6.     Movant is a Puerto Rico corporation that generates renewable energy through DG

systems.  Through its generation activities, Movant generates and owns RECs.  Under the *Public

Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in

Puerto Rico Act* (22 L.P.R.A. § 8121, et seq., the "Renewable Energy Policy Act"), a REC is

personal property, *id*. §1.4(8), that constitutes a tradable and negotiable asset or commodity that

may be purchased, sold, assigned, and transferred between persons for any legal purposes, which

is equal to one (1) megawatt-hour of electricity generated from a sustainable renewable energy

source or alternative renewable energy source (issued and registered pursuant to Act 82-2010),

and represents all environmental and social attributes, as defined in Act 82-2010.  Act 82-2010,

Section 1.4; 22 L.P.R.A. § 8121.

7.     The Renewable Energy Policy Act mandates, among other things, that retail

electricity suppliers in Puerto Rico, like PREPA, comply with a Renewable Portfolio Standard

("RPS") that requires specified percentages of their energy production come from renewable

energy sources, escalating over time to twenty percent (20%) by 2022, subject to important

qualifications. Act 82-2010; 22 L.P.R.A. § 8124.  There is no mandate in the Renewable Energy

Policy Act as to the manner in which retail energy providers achieve the RPS, as Section 2.3 of

3

Act 82-2010 provides the methods retail energy providers may use to achieve compliance with the RPS (including by, among others, purchasing RECs). Act 82-2010, Section 2.3; 22 L.P.R.A. § 8124.

8.      Retail electricity suppliers may, but are not required to, acquire RECs to comply with the requirements of the RPS. *See, e.g.*, Act 82-2010, Section 2.10; 22 L.P.R.A. § 8132.  For RECs purchased from distributed renewable energy producers to count towards the RPS, certain requirements must be met, including but not limited to the issuance of regulations by PREB. Act 82-2010, Section 2.10(e); 22 L.P.R.A. § 8132(e).  Critically, PREB has yet to issue any such regulations, including regulations that would govern the pricing and purchase by PREPA of RECs from Movant.

9.      The RPS is subject to a compliance process that includes, among other things, provisions that a supplier receiving a non-compliance notice may establish that it acted reasonably and in good faith to comply, and that its non-compliance was due to one or more of six categories of reasons, or a seventh category of any other justification accepted by the Puerto Rico Energy Commission ("PREC"), now PREB,[5] through regulation consistent with the public policy. Act 82-2010, Section 2.14; 22 L.P.R.A. § 8133.  In brief, the reasons may include, among others, force majeure, insufficiency, or excessive cost.  Excessive costs could include, for example, energy costs as such or associated curtailment costs, as was discussed by PREPA in its first Integrated Resource Plan ("IRP") case and its first Rate Review, case nos. CEPR-AP-2015-0002 and CEPR-AP-2015-0001, respectively.

---

[5]  The Puerto Rico Energy Bureau established by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board, and Act No. 211-2018, formerly the Puerto Rico Energy Commission created under Act No. 57-2014, as amended.

10.    PREPA has not purchased RECs from Movant or any other Distributed Generator. PREPA concluded that before it could purchase RECs it must await PREB's issuance of regulations.  In 2019, PREB initiated a process to evaluate draft regulations governing the REC "market."  In October 2021, PREB issued a draft regulation for comments, but the draft regulation has not progressed since that time.[6]  The draft regulation of the RECs market includes how the prices are established, and provides the prices for each type of REC will be established with a resolution by PREB per each emission type generated with the technology for which the renewable energy was produced. It further provides prices would be revised at least every three (3) years.

11.    Also, Puerto Rico law specifically provides the value to be paid for a REC is the value PREB establishes.  Act 82-2010, Section 2.8; 22 L.P.R.A. § 8130 ("For each REC processed, the Bureau may establish a reasonable processing fee to be paid by a REC holder.  The processing fee may be included in the value of each REC processed.  Any revenues from the processing fees imposed shall be used to carry out all proper and necessary actions that guarantee the attainment of the ends and purposes of this Act.  *The minimum value of each REC shall be the value established by the Bureau* when conducting any legal business with the same, without impairment to any vested right held by the parties prior to the approval of the Puerto Rico Energy Public Policy Act.") (emphasis added).

**B.  PV Properties' Complaint Against PREPA**

12.    On March 3, 2017, PV Properties filed a complaint (the "PV Properties Complaint") with PREC, PREB's predecessor. *See* Case No. CEPR-QR-2017-0001. The PV Properties Complaint sought: (1) a declaration that PREPA's failure to purchase RECs offered by

---

[6] *See* https://energia.pr.gov/wp-content/uploads/sites/7/2021/10/20211021-Resolucion-y-Proyecto-de-Reglamento-CER-2.pdf; *See* https://energia.pr.gov/expedientes/?docket=nepr-mi-2021-0011.

PV Properties violated the Renewable Energy Policy Act; (2) an order compelling PREPA to purchase the RECs offered by PV Properties at a price no less than the one initially offered by PV Properties and any and all RECs offered by PV Properties in the future; and (3) an order requesting that PREC impose any legally available sanction or remedy to ensure that PREPA timely and properly complies with its obligation to purchase any and all RECs offered by PV Properties. *Id.* at 28-29.

13.     On July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA, triggering the automatic stay. *See* PROMESA § 301.

14.     On July 12, 2017, PREPA filed a *Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case under Title III of PROMESA* (the "Notice of Automatic Stay") with PREC, notifying PREC of the stay of the PV Properties proceeding, including any of the requested briefing on the applicability and enforceability of the Renewable Energy Policy Act.

15.     On October 4, 2017, PV Properties filed a motion for relief from the automatic stay (the "2017 Motion") with the Title III court. [Case No. 17-4780, ECF No. 332].  Applying the relevant factors from *Sonnax*, the Court concluded there was no cause for stay relief, and in an order dated November 3, 2017, the Court denied the 2017 Motion. *See In re Fin. Oversight & Mgmt. Bd. for P.R.,* No. 17 BK 3283-LTS, 2017 WL 7135382, at *3 (D.P.R. Nov. 3, 2017).

16.     On May 31, 2019, PV Properties filed a second motion for relief from the automatic stay renewing its request for the relief sought in the 2017 Motion (the "2019 Motion"). [Case No. 17-3283, ECF No. 7179]. Movant again asserted that cause existed pursuant to section 362(d)(1) to merit relief from the automatic stay. *Id.*  The Title III Court denied the motion by order dated June 28, 2019. *See* Case No. 17-3283, ECF No. 7746 (Order denying 2019 Motion).  The Court rejected Movant's attempts to differentiate the 2019 Motion from the 2017 Motion, reiterating its

prior conclusion that even if Movant's RECs would lose value, that was not a sufficient basis to lift the stay because Movant was "not entitled to relief from the automatic stay on the basis of an alleged lack of adequate protection" and application of the *Sonnax* factors "compels the same result reached by the Court in the 2017 Order." *See id.* at 10.

17.     On April 20, 2022, Movant filed the current Motion for relief from the automatic stay, for the third time with this Court, to bring an inverse condemnation claim against PREPA and LUMA Energy, LLC ("LUMA") for the alleged taking of Movant's RECs without compensation. [Case No. 17-4780, ECF No. 2779].  Through the instant Motion, Movant is attempting to retrofit its claim as a Takings Claim to take advantage of the Court's ruling in connection with confirmation of the Commonwealth Title III plan of adjustment that such claims cannot be discharged.[7]

## OPPOSITION

### I.  *PV Properties Does Not Have a Takings Claim*

18.     Movant advances a quasi-property argument that PREPA's alleged reporting of RECs owned by PV Properties to meet its RPS gives rise to a Takings Claim under the Fifth Amendment. *See* Motion at 3.  To the extent Movant asserts its Takings Claim argument gives rise to a property interest sufficient to establish "cause" to lift the stay, the Court need not address the merits of such argument because (1) Movant does not assert it is a secured claimholder with a perfected security interest nor that it lacks adequate protection, and (2) the merits of the underlying claim are irrelevant to the *Sonnax* factor analysis.[8]  Moreover, the Court has previously determined

---

[7]  This ruling is currently on appeal. *See* Brief for Debtors-Appellees/Cross-Appellants, In re Financial Oversight & Management Board for Puerto Rico, Case Nos. 22-1079, 22-1092, 22-1119, 22-1120 (1st Cir. Apr. 1, 2022).

[8]  As stated by the Court in denying Movant's second attempt to lift the automatic stay, creditors often have meritorious claims against debtors; if the mere existence of such claims constituted "cause" for relief from the automatic stay, the automatic stay would cease to provide the "breathing spell" that is critical to debtors' rehabilitation. Cf. *In re Soares*,

a creditor cannot recast its unsecured claim in constitutional terms as a standalone basis to seek stay relief.[9]  Nevertheless, Movant cannot show cause to lift the stay to pursue a Takings Claim for the simple reason it does not even have a Takings Claim.

19.    Movant cites no case law or authority in support of its novel theory that a government entity that merely reports the existence of another's property to a regulatory body effectuates a transfer in ownership of such property.  Moreover, Movant does not (i) attach or cite to any such report by PREPA, or (ii) point to any contract that exists between PV Properties and PREPA and/or LUMA relating to the purchase of the RECs, because no such contract exists.

20.    Even assuming, *arguendo*, that Movant's factual allegations are true, they would still not give rise to a Takings Claim.  Courts have identified two classes of takings: regulatory takings and *per se* takings.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005).  Movant fails to state a claim under either theory.

21.    No regulatory taking can be asserted against PREPA because PREPA has not propounded nor attempted to enforce any regulations with respect to RECs or that are otherwise relevant to PV Properties' claim.  And in any case, PREPA's alleged reporting to PREB does not destroy the property itself, nor does the reporting destroy Movant's ability to enjoy the use of the property.  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124-125 (1978).

---

107 F.3d 969, 975 (1st Cir. 1997) (noting that the automatic stay "enables debtors to resolve their debts in a more orderly fashion" and prevents a "free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets").

[9]  *See* ECF No. 14186 ("To the extent that Movants have constitutionally protected property interests derived from their statutory and contractual rights, it would be unreasonable to conclude that those rights alone provide a basis for stay relief, as doing so would invite unsecured creditors to seek to challenge in alternative for the validity of any Commonwealth government act that they contend has affected their rights by simply recasting their claims in constitutional terms and requesting stay relief as Movants have done here, thereby disrupting significantly, and undermining the fundamental purpose of, these Title III proceedings.").

22.     Nor did PREPA commit a *per se* taking through its reporting of the RECs.  PREPA only reported ownership of RECs to comply with the RPS, which requires specified percentages of PREPA's energy production to come from renewable energy sources, including, RECs, among others, escalating over time to twenty percent (20%) by 2022.  *Per se* takings are limited to cases where the "government requires an owner to suffer a permanent physical invasion of her property" that "completely deprive[s] an owner of '*all* economically beneficial us[e]' of her property.'" *Lingle,* 544 U.S. 528 at 538 (citation omitted).  Reporting the RECs on the PREB filings was not a "physical invasion" of any property because RECs are intangible property, and it does not completely deprive Movant of all of its "property" interest.  Movant still retains title and ownership to the RECs and is therefore able to freely sell, trade, and transfer the RECs on the open market to other retail electrical suppliers if they so choose, pending PREB's issuance of required regulations as described above.  *See Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25 (1986) (analyzing claim of "taking" of contractual right as a regulatory taking); *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006) (same).

23.     Put simply, a *per se* taking of property cannot occur where there has been no transfer of ownership of the property. *Andrus v. Allard,* 444 U.S. 51, 65-66 (1979) ("the denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety.") (citations omitted); *Hendrix v. Plambeck,* 420 Fed. App'x 589 (7th Cir. 2011) (finding demolishing of building on property owner's property was not a taking that would violate the Fifth Amendment where owner retained title to the property.); *Munoz v. City of Union City,* 481 Fed. App'x. 754, 759 (3rd Cir. 2012) ("But the Takings Clause asks not whether the plaintiff's most profitable use of the property has been

9

destroyed. A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property.").

24.     Therefore, Movant does not have a Takings Claim and in any event, fails to show cause exists to lift the automatic stay for any property-related reason.

## II.     Movant Fails to Show Cause to Lift the Automatic Stay under the *Sonnax* Factors

25.     Movant has not established that cause exists for the "extraordinary remedy" of stay relief. *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Movant bears the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017). As discussed above, in the absence of an assertion of lack of adequate protection, this Court examines the factors set forth in *Sonnax* to determine whether "cause" exists.[10]

26.     This Court has twice before denied relief to Movant on *Sonnax* factors grounds. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK 3283-LTS, 2017 WL 7135382, at *3; Case No. 17-3283, ECF No. 7746 (Order Denying Stay Relief). Notwithstanding those decisions

---

[10] The *Sonnax* factors include: (1) whether relief would result in complete or partial resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as fiduciary; (4) whether a specialized tribunal has been established to hear the cause of action at issue; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties rather than the debtor; (7) whether the litigation could prejudice the interest of other creditors; (8) whether a judgment in the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the "balance of hurt."

No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade Leveraged Cap. Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 529 n.12. (D.P.R. 2016).

by this Court, Movant has not made any attempt to address the Court's analysis from those prior decisions or distinguish them from present circumstances, most likely because the Court's analysis is equally applicable here and is dispositive of its Motion.  The *Sonnax* factors again weigh heavily in favor of maintaining the stay.

27.    **Sonnax Factor 1:** Relief would not result in partial or complete resolution of the issues.  Movant does not identify any bankruptcy issue related to PREPA's Title III Case that would be resolved by allowing Movant to proceed with an inverse condemnation proceeding against PREPA and LUMA for the alleged taking of Movant's RECs without compensation. Therefore, the first Sonnax factor supports denying the Motion.

28.    **Sonnax Factor 2**:  Relief would interfere with PREPA's Title III case by diverting PREPA's attention and resources at a pivotal moment where PREPA is mediating with its major creditor constituencies regarding a Title III restructuring. This is equally true if mediation does not conclude in a settlement and PREPA is forced to litigate creditors' rights so it can file a confirmable plan. *In re City of Stockton* is instructive. 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying stay relief where plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case.").

29.    Movant, moreover, provides no reason for expediting consideration of its claim now rather than through the administrative claims resolution process.  Such relief would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ."  *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect

of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

30.     **Sonnax Factors 3-6, 8, 11**:  The relief sought does not relate to a proceeding in which PREPA is a fiduciary, does not require a specialized tribunal, no insurance carrier of PREPA has assumed full responsibility for defending the litigation, it does not primarily involve third parties other than PREPA, it does not concern a judgment in a foreign action subject to equitable subordination, there is not yet a judgment claim arising from the suit, nor a judicial lien, and the amount of potential judgment is unknown; indeed, no proceeding has even been commenced, let alone progressed to a point where the parties are prepared for trial.

31.     **Sonnax Factor 7 and 10:**  The relief sought prejudices other creditors through the depletion of PREPA's resources and attention, and by potentially allowing Movant to "skip the line" in the claims administration process.  *See, e.g.*, *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate").  The interests of judicial economy are not served by stay relief because the parties are nowhere near ready for a resolution given the myriad of factual and legal issues presented here, and PREPA's Title III Case provides a single, expeditious forum for the resolution of claims.

32.     **Sonnax Factor 12**:  The balance of the harms clearly favors denial of the Motion. Movant has failed to demonstrate any harm Movant would face from waiting in line for the resolution of its alleged claim like all other claimants. If Movants' theory is correct and its allegations are taken as true, then it will have a claim for all RECs past and future, and such claims

12

will be appropriately treated pursuant to PREPA's plan of adjustment.  The claim can even be adjudicated after confirmation of a plan of adjustment. Given the diversion of PREPA's resources and prejudice to other creditors, the Motion should be denied.

## CONCLUSION

33.     For the foregoing reasons, the Court should deny the Motion in its entirety with prejudice.

Dated: June 9, 2022
        San Juan, Puerto Rico

Respectfully submitted,

*/s/  Martin J. Bienenstock*

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Daniel Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

*/s/  Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

13