CERTIFIED TRANSLATION

GOVERNMENT OF PUERTO RICO
PUBLIC BUILDINGS AUTHORITY
San Juan, Puerto Rico

2021-S00015

**SERVICE AGREEMENT**
NO. S00015 (2020-2021)

**BY AND BETWEEN**

**THE PARTY OF THE FIRST PART: THE PUBLIC BUILDINGS AUTHORITY**, a corporation of the Government of Puerto Rico, hereinafter referred to as THE AUTHORITY, by virtue of the power granted by Law 56 of June 19, 1958, as amended, and the Internal Regulations of the Authority, represented herein by Melitza López Pimental, Executive Director, of legal age, married, and a resident of San Juan, Puerto Rico.

**THE PARTY OF THE SECOND PART: EVERTEC GROUP, LLC.**, a limited liability company existing under the laws of the Government of Puerto Rico, with registration number 3778-LLC, hereinafter referred to as THE SECOND PARTY, represented herein by its Executive Vice President, Carlos J. Ramírez Padilla, of legal age, single, and a resident of San Juan, Puerto Rico.

WHEREAS

**ONE:** In order to guarantee services in the data and voice communications network of the AUTHORITY, and its client agencies, the AUTHORITY needs to contract with THE SECOND PARTY **in order for it to perform maintenance on the equipment of the Data Center and updating of the AVAYA VoIP telephone systems**.

**TWO:**   The SECOND PARTY filed the Proposal dated June 15, 2020, for the services described in this Agreement, which was accepted by THE AUTHORITY, and is made to form part of this Agreement. In the event that any discrepancy should exist between this Agreement and the Proposal, the Agreement shall prevail for legal matters and the proposal for functional matters.

**THREE:** The SECOND PARTY has the capacity, experience, equipment, and resources necessary to provide the services contracted herein, and to such effects shall provide those related services that are required of it.

The appearing parties, in the capacity held by each, agree to grant the present agreement for the provision of professional services, subject to the following:

**CLAUSES AND CONDITIONS**

**ONE: SERVICES:** The SECOND PARTY undertakes to perform, pursuant to the submitted Proposal, but not limited to the following: (i) maintenance for hardware & software of Fortinet and Avaya products, (ii) maintenance of hardware for the Cisco platform, (iii) replacement of parts for the term specified in the pricing section.

[two sets of initials in left margin]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

2

**TWO: DOCUMENTS:** The AUTHORITY shall provide the SECOND PARTY with all documentation and data that it possesses and that is necessary for the fulfillment of the obligations that they assume by virtue of this agreement.

**THREE: COMPENSATION:** THE AUTHORITY shall compensate THE SECOND PARTY for the services rendered, the amount of which shall not exceed **sixty-nine thousand seventeen dollars and twenty-three cents ($69,017.23)** during its contractual term. THE AUTHORITY shall pay the services covered by this Agreement from account no. 50018000-0000000-10-010-1000-000-2021-0000.

| Service | Total Cost |
|---|---|
| Avaya Maintenance | $38,290.27 |
| Cisco Maintenance | $19,045.84 |
| Fortinent Maintenance | $7,601.13 |
| Evertec Maintenance Labor | $4,080.00 |
| **Total** | **$69,017.23** |

**FOUR: Law 147-1980:** Pursuant to the Organic Act of the Office of Management and Budget [Law 147 of June 18, 1980, as amended], the SECOND PARTY acknowledges that the present Agreement due to being executed in an election year is subject to the prohibition of committing more than 50% of its funds in this first half of Fiscal Year 2020-2021.

**FIVE: SUBCONTRACTING:** THE SECOND PARTY shall not subcontract a consultant and/or consultants, assign, or in any other way transfer the rights and obligations specified in this agreement without the proper express, written authorization of an official authorized by THE AUTHORITY. THE AUTHORITY may deny such requests for subcontracting, assignment, or transfer without any need to communicate any justified cause to THE SECOND PARTY for doing so.

### MANDATORY CLAUSES

**ONE: INVOICES:** When the installation is completed, the SECOND PARTY shall send an invoice to the AUTHORITY, pursuant to the requirements of Law 2 of January 4, 2018, also known as the Anti-corruption Code for the New Puerto Rico (Law 2-2018), and shall certify the following when submitting each one of its invoices:

"I HEREBY CERTIFY: Under penalty of absolute nullity, I certify that no public servant of the government entity is a party to or has any stake in the profits or benefits resulting from the agreement covering this invoice, and if they are a party to or have a stake in the profits or benefits resulting from the agreement, a prior waiver has been executed. The sole consideration for providing the good or services covered by the agreement has been the payment agreed to with the authorized representative of the government entity. The amount of this invoice is fair and correct. The work has been performed, the products have been delivered, and the services have been rendered, and payment has not been received for them."

1. If the AUTHORITY raises an objection to the invoice(s), it shall request that the SECOND PARTY correct them and present its position with regard to the objection(s).
2. In the event that any disputes arise with regard to the correction of the invoice(s), the PARTIES undertake to negotiate in good faith, by way of their respective representatives designated for this



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

3

purpose. The negotiation shall continue until an agreement is reached or it is submitted to a competent forum for adjudication.

3. The payment of the invoices or the non-objected portions shall be made to the Office of the Comptroller of the AUTHORITY within a term of no greater than thirty (30) days from the time that: (i) the invoice has been certified as correct; or (ii) from the expiration of the term of ten (10) days to object to the invoice without objections having been raised; or (iii) regarding the non-objected portion of an invoice, as long as said objections have been raised within the term provided for it in this clause.

4. The SECOND PARTY shall not incur, or invoice the AUTHORITY for any obligation, or provide any service to the account of the AUTHORITY, that is not contemplated in the terms of this agreement.

5. THE SECOND PARTY shall not invoice for work performed by personnel of THE AUTHORITY.

6. THE SECOND PARTY acknowledges that the validity of this agreement shall be conditioned to the presentation of all certifications required by law for the granting thereof and that no payment shall be issued in its favor until said certifications are presented. If one of them is missing without being presented at the granting of the agreement, THE SECOND PARTY shall have sixty (60) days to present them. Failure to do so shall result in the termination of this agreement without any need for prior notice. THE SECOND PARTY also acknowledges that, if it has debts with any dependency of the State or Municipal Government, it may continue to provide its services, provided that it has established a payment plan and is fully complying with such, or gives its consent for THE AUTHORITY to withhold the amount of the debt from the liquid and payable sum of money resulting from this agreement.

**TWO: OFFICE OF THE CHIEF OF STAFF TO THE GOVERNOR AND OFFICE OF MANAGEMENT AND BUDGET: OE-2017-001:** Memorandum No. 2017-001 of the Chief of Staff to the Governor and Circular Letter 141-17 of the Office of Management and Budget dated January 30, 2017, as amended, by Memorandum No. 2018-002 of the Office of the Chief of Staff to the Governor and Circular Letter 155-18 of the Office of Management and Budget:

a. **Inter-agency services clause**: Both contracting parties acknowledge and agree that the contracted services may be provided to any entity of the Executive Branch with which the contracting entity makes an interagency agreement or by direct provision of the Office of the Chief of Staff to the Governor. These services shall be performed under the same terms and conditions pertaining to work hours and compensation set forth in this agreement. For purposes of this clause, the term 'entity of the Executive Branch' includes all agencies of the Government of Puerto Rico, as well as all public instrumentalities and corporations.

b. **Termination Clause**. The Office of the Chief of Staff to the Governor shall have the power to terminate the present agreement at any time.

[two sets of initials in left margin]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

4

---This agreement complies with the fiscal measures to reduce expenses, as provided by OE-2017-001, and Law 66 of June 17, 2014, known as the Special Fiscal and Operational Sustainability Act of the Government of the Government [sic] of Puerto Rico, and Law 3 of January 23, 2017, known as the Act to Address the Economic, Fiscal, and Budgetary Crisis to Ensure the Functioning of the Government of Puerto Rico.

**THREE: COMPLIANCE WITH THE OFFICE OF THE COMPTROLLER**: No benefit or consideration covered by this agreement shall be able to be demanded until such has been filed for registration at the Office of the Comptroller pursuant to that provided in Law 18 of October 30, 1975, as amended. (Law 127 of May 31, 2004).

**FOUR: CONFIDENTIALITY:** THE SECOND PARTY shall maintain in strict confidentiality all documents, materials, and information obtained as part of the services rendered under this agreement or data that THE AUTHORITY provides to it ("Confidential Information"). It shall not make such public or facilitate such to third parties, without first obtaining the prior written authorization of THE AUTHORITY. The following are not considered Confidential Information: (a) Information that THE AUTHORITY discloses to the public, or that becomes part of the public domain by any legal means.

(b)     Prior to its disclosure under this Agreement, it is under the legitimate ownership of THE SECOND Party in a reliably verifiable manner.

(c)     Is developed or acquired independently by the Receiving Party, from or through, persons who have not had direct or indirect access to or knowledge of said Confidential Information.

---THE SECOND PARTY may provide these materials to persons who request this information with the prior written consent of THE AUTHORITY, but the third party must pay the costs associated with the delivery of the material to the second party. The consent of THE AUTHORITY shall not be necessary should a legal order exist.

**FIVE: NONDISCRIMINATION:** The SECOND PARTY undertakes not to engage in any form of discrimination against any person or entity on the basis of race, color, age, sex, religion, economic status, or religious and/or political beliefs in the execution of this agreement.

**SIX: GOVERNMENT ETHICS ACT:** THE SECOND PARTY hereby certifies that, to the best of its knowledge, no employee or official of the AUTHORITY has any direct or indirect pecuniary interest in the granting of this Agreement pursuant to Law 1 of January 3, 2012, as amended, known as the Organic Act of the Office of Government Ethics of Puerto Rico.

---THE SECOND PARTY hereby certifies that none of its directors, associates, or employees is or has been an employee of THE AUTHORITY in the past two (2) years prior to the signing of this agreement.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

5

---THE SECOND PARTY hereby certifies that, to the best of its knowledge, none of its directors or officers have a Family Unit relation to any public servant of THE AUTHORITY.

---The SECOND PARTY shall not engage in any conduct or perform any actions that may be described as contrary to the ethical standards recognized by its profession, or in the laws or regulations of the Government of Puerto Rico.

---THE SECOND PARTY hereby certifies that, to the best of its knowledge, none of its directors, associates, or employees receives any payment or compensation whatsoever for regular services rendered by appointment to another government agency, AUTHORITY, organization, public corporation, or municipality.

**SEVEN: CODE OF ETHICS ACT:** THE SECOND PARTY undertakes to comply with the provisions of Law 2-2018, by way of which the Code of Ethics is established for contractors, vendors, and applicants of financial incentives of the executive AUTHORITY [sic] of the Government of Puerto Rico.

**EIGHT: CONFLICT OF INTEREST:** The SECOND PARTY acknowledges that in the performance of its role it has a duty of complete loyalty to THE AUTHORITY, which includes not having any adverse interests against said government entity. These adverse interests include representing clients that have or may have conflicting interests with THE AUTHORITY.

---THE SECOND PARTY hereby certifies that should it have any contract with another entity or municipality of the Government of Puerto Rico, such do not represent any conflict of interest with regard to the fulfillment of the clauses and other provisions of this agreement.

---This duty moreover includes the ongoing obligation of the SECOND PARTY to disclose to THE AUTHORITY all the circumstances of its relationships with clients and third parties, and any interest that it may have to influence THE AUTHORITY at the time of granting this agreement or during its term.

---The SECOND PARTY shall avoid even the appearance of conflicting interests. This means that it shall not promote what it must oppose in fulfillment of its obligations to THE AUTHORITY, a former client, or a current client.

---In contracts with partnerships or firms, it shall constitute a violation of this prohibition for any of its directors or officers to engage in the conduct described herein.

---The SECOND PARTY acknowledges THE AUTHORITY's oversight power with regard to compliance with the prohibitions contained herein.

---if THE AUTHORITY understands that adverse interests exist or have arisen with the SECOND PARTY, it shall provide written notice of its findings and its intent to terminate this agreement within a term of ten (10) days. Within said term, the SECOND PARTY may state its arguments regarding said determination of conflict, which shall be granted in every case. Should said meeting not be requested within the aforesaid term, or should the dispute not be resolved satisfactorily during the meeting granted, this agreement shall be terminated without prejudice to the right of the SECOND PARTY to request judicial review of the AUTHORITY's determination.

[two sets of initials in left margin]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

6

**NINE: ULTRA VIRES:** Pursuant to the laws and regulations governing the agreement of these services, the parties agree that the services shall not be provided until the parties sign this Agreement. Services rendered in violation of this clause shall not be paid.

---Likewise, the SECOND PARTY shall immediately cease the rendering of services in accordance with the agreement as of the expiration date of its term, except when, on or before the expiration date, a written amendment signed by the PARTIES is executed.

---The SECOND PARTY is duly advised that the AUTHORITY shall not be obliged to pay for services rendered in violation of this clause.

---Any official who requests and/or accepts services from the SECOND PARTY without the existence of a contract duly signed by the PARTIES, or before the formalization and signing of this agreement; or having expired the term of validity of this agreement, shall be acting in violation of the provisions of this clause, before the validity or after expiration of the validity of the agreement, shall be acting in violation of this clause and without any power or legal authority whatsoever.

**TEN: AMENDMENTS:** The PARTIES may, during the validity of this agreement and by mutual agreement, incorporate in writing any amendments that they deem necessary for a better use of the contracted services in line with the needs of the parties.

---The amendment(s) shall be subject to and shall be conditioned to the approval of all pertinent government agencies and must be stated in writing and signed by both parties prior to the expiration of this agreement.

**ELEVEN: DEPARTMENT OF STATE:** The SECOND PARTY shall certify having submitted:

---THE SECOND PARTY undertakes to provide to THE AUTHORITY, prior to the formalization of this agreement, the Certificate of Existence or Certificate of Authorization to do business in Puerto Rico and the Certificate of Good Standing (if applicable). Such documents shall guarantee that the company with which THE AUTHORITY contracts has complied with sending its annual reports to the Department of State and that it current on all matters with said entity.

**TWELVE: DEPARTMENT OF THE TREASURY; CERTIFICATION OF FILING OF RETURNS AND CERTIFICATION OF NO TAX DEBT FROM THE DEPARTMENT OF THE TREASURY:** For the purposes of this agreement a tax debt shall be understood to be any debt that THE SECOND PARTY has, as well as any of its directors or partners, with the Government of Puerto Rico, for taxes on real and personal property, including any imposition of a special nature, licensing fees, taxes withheld at source in the payment of wages and professional services, in the payment of interest, dividends, income to nonresident individuals, corporations, and partnerships, and in the payment of interest, dividends, and other distributions of earnings to residents, payments for unemployment insurance, temporary disability, or social security for drivers.

[two sets of initials in left margin]

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

7

---The SECOND PARTY hereby certifies and guarantees that at the time of granting this agreement it has filed its Income Tax Return for the past five (5) years. Moreover, it certifies that it does not owe any amount whatsoever in income tax to the Department of the Treasury or has established a payment plan.

---The AUTHORITY shall deduct and withhold ten percent (10%) of the payments made for services rendered by THE SECOND PARTY, for purposes of paying income taxes, as provided in Section 1062.03 of the New Puerto Rico Internal Revenue Code of 2011, as amended, by Law 1 of January 31, 2011. If THE SECOND PARTY presents a Certificate of Waiver of Withholding at Source issued by the Department of the Treasury, which exempts or modifies the withholding mentioned herein, the AUTHORITY shall cease to make said withholdings or shall adjust them pursuant to that established in the Certificate of Waiver and shall reimburse THE SECOND PARTY for any exempt amount that has been withheld and has not yet been deposited in the Department of the Treasury.

---The AUTHORITY shall be responsible for notifying the Department of the Treasury of the withholding percentage that the SECOND PARTY has according to the waiver, or in the absence of such, that it does not have any waiver.

---THE SECOND PARTY shall be responsible for issuing the individual contribution of the payment corresponding to the Federal Internal Revenue Bureau, the Social Security Office, and any other contribution that is required by law to be made.

---THE AUTHORITY shall not make withholdings from THE SECOND PARTY or discounts from their wages for the payment of Federal Social Security.

---THE SECOND PARTY is responsible for filing its tax returns and paying the contributions corresponding to the Federal Social Security and the Income Tax Bureau of the Department of the Treasury for any taxable amount as a result of the income earned under this Agreement. THE AUTHORITY shall notify the Income Tax Bureau of the payments and refunds made to THE SECOND PARTY.

---**LAW 48-2013, as amended:** THE AUTHORITY shall deduct and withhold one point five percent (1.5%) of all payments for professional services, consulting, advertising, training, or guidance, as provided by Law 48 of June 30, 2013, which establishes the Special Tax for Professional and Consulting Services; among other things, and in accordance with Circular Letter No. 1300-03-14. This special tax shall be withheld at the time of making the payment for the services rendered, which shall be allocated to the General Fund.

---The Special Tax for Professional Services established in this Law may not, under any circumstances, be taken or interpreted as a credit or deduction against the determined income tax. With the provision that contracts for professional, consulting, advertising, training, or orientation services rendered by individuals whose aggregate contracting amount does not exceed three hundred thousand dollars ($300,000.00) per year shall not be subject to the special tax. (If applicable)

[two sets of initials in left margin]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

8

**THIRTEEN: MUNICIPAL REVENUE COLLECTION CENTER (CRIM)**: The SECOND PARTY certifies:

    (i)      that it filed the Personal Property Tax Return,

    (ii)     that it does not have any personal property or real property debt (DEBT CERTIFICATION FOR ALL CATEGORIES).

**FOURTEEN: CHILD SUPPORT ADMINISTRATION (ASUME):** The SECOND PARTY certifies and guarantees that at the time of signing this agreement:

    (i) It does not have any obligation to contribute financially or to comply with a maintenance obligation by court or administrative order for a minor(s) or elderly person(s),[1] or if so, it is complying with its payments. or with a payment plan.

    (ii) it is complying with its legal obligation as an employer to make de corresponding wage deductions from its employees obligated by orders issued by the Child Support Administration (ASUME) and is current with regard to sending them. Should it currently have a debt for such, it certifies that it is complying with a payment plan.

**FIFTEEN: DEPARTMENT OF LABOR:** The SECOND PARTY certifies that:

    (i)      it is registered as an employer at the Department of Labor,

    (ii)     it does not have any debt for Unemployment Insurance or Disability Insurance,

    (iii)    it does not have any debt for Driver Social Security.

**SIXTEEN: TERMINATION OF THIS AGREEMENT**: The AUTHORITY, for any reason, may terminate this agreement by way of written notice to the SECOND PARTY thirty (30) days prior to the date on which it seeks its termination. However, the prior notice requirement shall not apply whenever:

    (i) against the SECOND PARTY or any of its directors or officers, subsidiaries or parent companies, probable cause is determined for the arrest for any act against the treasury, faith, and public order; against the exercise of government; or involving fraud, or public funds or property, at the federal or state level; as defined in Law 2-2018.

    (ii) THE SECOND PARTY, or any of its shareholders, partners, officers, principals, employees, subsidiaries, or parent companies, engages in negligence or abandonment of duties, or fails to comply with this agreement;

    (iii) the AUTHORITY understands that there is an extraordinary fiscal situation that warrants an immediate cut in expenses.

---In the event that the AUTHORITY notifies the termination of this agreement without just cause, it must pay the SECOND PARTY for the services it has provided up to the date of notice, including obligations contracted on behalf of the AUTHORITY even if they have not been invoiced.

---The negligence, [sic] breach of the terms and conditions of this contract, or the abandonment of duties by THE SECOND PARTY, THE AUTHORITY may render the agreement null and void immediately.

---If THE SECOND PARTY refuses to accept any additional conditions or changes required by THE AUTHORITY within the terms provided in this Agreement. [two sets of initials in left margin]

---

[1] This pursuant to the provisions of Law 168-2000, as amended, better known as the Act for the Improvement of Family Assistance and for the Support of the Elderly.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

9

---If any of the officers or directors of the SECOND PARTY is convicted of crimes against the public treasury, faith, and public order or involving public funds or property at the state or federal level.

---THE SECOND PARTY expressly acknowledges that in the event that funds do not exist or are allocated for the payment of the professional services contracted, this agreement shall be terminated with no other right than to collect for work already performed.

---THE AUTHORITY may terminate this agreement unilaterally if it understands that there has been a change in the conditions that led to the agreement and that maintaining it would be detrimental to its public management. THE SECOND PARTY must deliver the product of its work performed, obligations contracted on behalf of THE AUTHORITY up to that time, and THE AUTHORITY shall be obliged to pay the amount deemed to be to the satisfaction of the parties involved.

---At any time that THE AUTHORITY deems such to be appropriate, it may terminate or rescind this Agreement by giving prior written notice to THE SECOND PARTY thirty (30) days in advance. THE SECOND PARTY shall not be entitled to any additional compensation except that which has been accrued under the agreement until the date on which this agreement was terminated or rescinded, including all obligations contracted on behalf of the AUTHORITY.

**SEVENTEEN: NON-DELEGABILITY**: The services to be provided by the SECOND PARTY will be non-delegable.

---The AUTHORITY may terminate this agreement immediately if the SECOND PARTY delegates to ANOTHER PARTY the services that it undertook to provide in this agreement.

---Failure to comply with this clause shall make it liable responsible for any direct damages caused to the AUTHORITY.

---Nevertheless, the SECOND PARTY may subcontract a portion of the services covered by this agreement, without thereby being released from the obligations, liability, and terms thereof.

**EIGHTEEN: INDEPENDENT CONTRACTOR:** THE SECOND PARTY acknowledges that this agreement does not make it an agent, representative, or employee of THE AUTHORITY for any purpose whatsoever and that it is an independent contractor, wherefore it shall not be entitled to any fringe benefits that are offered to the employees of THE AUTHORITY and those of the Government of Puerto Rico. None of that provided in this Agreement shall be interpreted as THE AUTHORITY and THE SECOND PARTY forming an employer-employee relationship.

---That agreed herein does not limit the power of THE SECOND PARTY to freely practice its profession or conduct lawful business just as any businessman.

**NINETEEN: COMMUNICATION BETWEEN THE PARTIES:** The PARTIES agree to hold meetings to discuss the services requested by the AUTHORITY at no cost.

[two sets of initials in left margin]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

10

---The AUTHORITY shall draft minutes containing the purpose of the meeting and the agreements made at the meeting, reviewed and accepted by THE SECOND PARTY.

---The PARTIES must share information with one another in writing regarding the progress and/or results of the services requested by the AUTHORITY.

---When the AUTHORITY reasonably understands that the SECOND PARTY has breached its contractual obligations, it shall notify the other party in writing, specifying what the breach of this agreement consists of and providing the other party with a term of ten (10) business days, from the notification, to remedy the alleged non-compliance or object to such.

---The PARTIES shall make their best effort to resolve any dispute that may arise as a result of non-compliance with the clauses contained in this agreement, with its termination being the last option.

**TWENTY: LIABILITY FOR DAMAGES:** THE SECOND PARTY holds the AUTHORITY, its employees, or officers harmless against any and all liability for any claim, action, or lawsuit that is directly related exclusively to its fault or negligence related to the operation, activity, or business covered by this agreement up to the maximum amount paid by the Authority. This exoneration and release shall be interpreted in the manner most favorable to the AUTHORITY and includes release from the payment of any judgment as well as litigation expenses, interest, and attorney's fees up to the maximum amount paid by the Authority.

---The AUTHORITY shall not have any direct or indirect liability for any loss or damage that may be suffered by any artificial or natural person due to the fault or negligence of the services of THE SECOND PARTY.

---In the event that the AUTHORITY or its representatives do not provide the SECOND PARTY with the information necessary to comply with the provisions of this agreement, the SECOND PARTY shall not be responsible for providing the services within the terms set forth in this agreement.

**TWENTY-ONE: JURISDICTION AND LEGAL COSTS:** The laws and regulations of the Government of Puerto Rico and the laws and regulations of the Federal Government are those that govern this agreement.

---Should any discrepancies exist between the Agreement and the Proposal, the Agreement shall prevail.

---Should they have to recur to a Court of Justice, any of the parties, in advance, agree that they shall submit to the jurisdiction of the General Court of Justice of Puerto Rico.

---Regarding legal costs, these shall be determined and paid in accordance with that stipulated by the Court.

---THE SECOND PARTY shall comply with all federal and local laws, rules, and regulations applicable to this agreement or the performance thereof.

---If any conflict of law arises between the laws and regulations of the Government of Puerto Rico and this agreement, the laws and regulations of the Government of Puerto Rico shall prevail over this agreement.

[two sets of initials in left margin]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

11

**TWENTY-TWO: LAW 2-2018, as amended:** The SECOND PARTY submitted to the AUTHORITY a Sworn Statement in which it certifies under oath that neither the undersigned, nor the limited liability company it represents, nor any of its officers or directors, subsidiaries, or parent companies have been convicted, nor have pleaded guilty for the crimes listed in Art. 3 of Law 2-2018, as amended.

---The SECOND PARTY also certifies in the same Affidavit that it is not under investigation in any legislative, judicial, or administrative proceeding, whether in Puerto Rico, the United States of America, or any other country for any of the crimes listed in the aforementioned law.

---The SECOND PARTY certifies that it is clear about its duty to report continuously, during the term of this agreement, any fact that is related to the conduct of any investigation for the commission of a crime of the aforementioned by Law 2-2018, at the state or federal level.

---This obligation is continuous in nature during the term of this agreement.

---The SECOND PARTY certifies that during the ten (10) years prior to the execution of this agreement, the person or entity has not committed any crime against the treasury, faith, or public order, against the exercise of government, or involving public funds or property, at the state or federal level, as defined in Law 2-2018.

---The PARTIES agree to refer to the Secretary of Justice those situations or admissions regarding the commission of a crime by either of them, the public instrumentality, director of the executive department, president of the corporation, or another related to the services covered by this agreement, even when there is no indictment, probable cause for arrest, guilty plea for the relevant determinations or recommendations.

---THE SECOND PARTY certifies that, to the best of its knowledge, none of its directors or officers has been convicted, nor are they subject to investigation or civil or criminal proceedings for facts relating to any of the crimes stated in Law 2-2018 as grounds for the termination of the Agreement. It states that it is fully aware of its duty to inform THE AUTHORITY of any situation occurring at any and all stages of the contracting and execution of this Agreement in relation to the aforesaid crimes. (If applicable)

**TWENTY-THREE:** THE PARTIES agree that THE SECOND PARTY may no modify the procedures or decisions that substantially affect the administrative policy established by THE AUTHORITY, without the prior written consent of THE AUTHORITY.

**TWENTY-FOUR: INTERPRETATION AND NULLITY:** This contract constitutes the sole agreement between the parties regarding the professional services described above and supersedes any other previous agreement, negotiations, understandings, and other matters, whether written or verbal, regarding what was agreed in this agreement. Any other representation, letter, and/or oral and/or written

[two sets of initials in left margin]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

12

communication, prior and/or contemporaneous to its execution, shall not alter, modify, and/or amend this agreement in any way.

---The CLAUSES AND CONDITIONS of this agreement are independent and separate from one other, if any provision of this agreement is declared null or invalid, it shall remain valid and in force and shall not be affected by such declaration.

      **TWENTY-FIVE: VALIDITY:** This agreement shall be in force from the date of its execution until **June 30, 2021**.

      IN WITNESS WHEREOF, the parties sign this Agreement in San Juan, Puerto Rico, today, November [hw:] *30*, 2020.

PUBLIC BUILDINGS AUTHORITY                EVERTEC GROUP, LLC

        [signature]                              [signature]
Melitza López Pimentel                      Carlos J. Ramírez Padilla
Executive Director                              Executive Vice President

I,       [signature]         , ATTORNEY FOR THE PUBLIC BUILDINGS AUTHORITY, HEREBY CERTIFY THAT I HAVE REVIEWED THIS AGREEMENT IN ALL ITS DETAILS AND HAVING FOUND IT TO BE SATISFACTORY FROM A LEGAL STANDPOINT, I RECOMMEND ITS SIGNING.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

GOBIERNO DE PUERTO RICO
AUTORIDAD DE EDIFICIOS PÚBLICOS
San Juan, Puerto Rico

2021-S00015

**CONTRATO DE SERVICIOS**
NÚM.  S00015 (2020-2021)

**COMPARECEN**

**DE LA PRIMERA PARTE: LA AUTORIDAD DE EDIFICIOS PÚBLICOS**, una corporación del Gobierno de Puerto Rico, en adelante denominada LA AUTORIDAD, en virtud de la autoridad conferida por la Ley Núm. 56 del 19 de junio de 1958, según enmendada, y los Reglamentos Internos de la Autoridad, representada en este acto por Melitza López Pimentel, Directora Ejecutiva, mayor de edad, soltera, y vecina de San Juan, Puerto Rico.

**DE LA SEGUNDA PARTE:    EVERTEC GROUP, LLC.**, compañía de responsabilidad limitada y existente bajo las leyes del Gobierno de Puerto Rico, con número de registro 3778-LLC, adelante denominada LA SEGUNDA PARTE, representada en este acto por su Vicepresidente Ejecutivo, Carlos J. Ramírez Padilla, mayor de edad, soltero, y vecino de San Juan, Puerto Rico.

EXPONEN

**PRIMERO:** Para garantizar los servicios en la red de comunicaciones de data y voz de la AUTORIDAD, y de sus agencias clientes, La AUTORIDAD necesita contratar a LA SEGUNDA PARTE para que realice el **mantenimiento de los equipos del Centro de Datos de los sistemas telefónicos AVAYA *VoIP*.**

**SEGUNDO:**  LA SEGUNDA PARTE presentó la Propuesta con fecha del 15 de junio de 2020, para los servicios descritos en este Contrato, la cual fue aceptada por LA AUTORIDAD, y que se hace formar parte de este Contrato.   En caso de existir discrepancia entre este Contrato y la Propuesta prevalecerá el Contrato para asuntos legales y la propuesta para asuntos funcionales.

**TERCERO:**  La SEGUNDA PARTE tiene la capacidad, experiencia, equipo y recursos necesarios para prestar los servicios que aquí se contratan, y a tales efectos prestará aquellos relacionados que le sean requeridos.

Las partes comparecientes, en el carácter que cada una de éstas ostentan, convienen en otorgar el presente contrato para la prestación de servicios profesionales sujeto a las siguientes:

**CLÁUSULAS Y CONDICIONES**

**PRIMERA: SERVICIOS:** La SEGUNDA PARTE se compromete a realizar conforme a la Propuesta sometida, pero sin limitarse a lo siguiente: (i) mantenimiento para hardware & software de los productos Fortinet y Avaya, (ii) mantenimiento hardware para la plataforma Cisco (iii) reemplazo de piezas por el término especificado en la sección de precios.

**SEGUNDA: DOCUMENTOS:** La AUTORIDAD suministrará a la SEGUNDA PARTE toda la documentación o datos que posea y que sea necesaria para el cumplimiento de las obligaciones que asumen en virtud de este contrato.

**TERCERA: COMPENSACIÓN:** LA AUTORIDAD compensará a LA SEGUNDA PARTE por los servicios rendidos, cuya cantidad no podrá exceder de **sesenta y nueve mil dieciesiete dólares con veintitrés centavos ($69,017.23)** durante su vigencia contractual. LA AUTORIDAD pagará los servicios objeto de este Contrato de la cuenta núm. 50018000-0000000-10-010-1000-000-2021-0000.

| Servicio | Costo Total |
|---|---|
| Mantenimiento Avaya | $38,290.27 |
| Mantenimiento Cisco | $19,045.84 |
| Mantenimiento Fortinet | $7,601.13 |
| Labor Mantenimiento Evertec | $4,080.00 |
| **Total** | **$69,017.23** |

**CUARTA: Ley 147-1980:** Conforme Ley Orgánica de la Oficina de Gerencia y Presupuesto [Ley Núm. 147 de 18 de junio de 1980, según enmendada], La SEGUNDA PARTE, reconoce que el presente Contrato por ser otorgado en año eleccionario está sujeto a la prohibición de comprometer más del 50% de sus fondos en esta primera mitad del Año Fiscal 2020-2021.

**QUINTA: SUBCONTRATACIÓN:** LA SEGUNDA PARTE no podrá subcontratar a un consultor y/o consultores, ceder, o de cualquier forma traspasar los derechos y obligaciones especificados en este contrato sin la debida autorización expresa y escrita de un funcionario autorizado por LA AUTORIDAD.   LA AUTORIDAD podrá denegar tales solicitudes de subcontratación, cesión o traspaso sin necesidad de comunicar a LA SEGUNDA PARTE causa justificada para así hacerlo.

### CLÁUSULAS MANDATORIAS

**PRIMERA: FACTURAS:** Cuando culmine la instalación la SEGUNDA PARTE, enviará la factura a la AUTORIDAD, conforme requiere la Ley Núm. 2 del 4 de enero de 2018, también conocida como, el Código Anticorrupción para el Nuevo Puerto Rico ('Ley 2-2018), certificará lo siguiente al presentar cada una de sus facturas:




"CERTIFICO:  Bajo pena de nulidad absoluta certifico que ningún servidor público de la entidad gubernamental es parte o tiene algún interés en las ganancias o beneficios producto del contrato objeto de esta factura y de ser parte o tener interés en las ganancias o beneficios producto del contrato ha mediado una dispensa previa. La única consideración para suministrar los bienes o servicios objeto del contrato ha sido el pago acordado con el representante autorizado de la entidad gubernamental. El importe de esta factura es justo y correcto. Los trabajos han sido realizados, los productos han sido entregados y los servicios han sido prestados, y no ha recibido pagó por ellos".

1. Si la AUTORIDAD presenta objeción a la(s) factura(s) le requerirá a la SEGUNDA PARTE que corrija las mismas o presente su posición respecto a la(s) objeción(es).

2. En caso de que surjan controversias sobre la corrección de la(s) factura(s), las PARTES se comprometen a negociar de buena fe, por conducto de sus

respectivos representantes designados para este fin. La negociación continuará hasta que se logre un acuerdo o se someta a un foro competente para adjudicación.

3. El pago de las facturas o de las porciones no objetadas lo realizará la Oficina de Contraloría de la AUTORIDAD dentro de un término no mayor de treinta (30) días desde que: (i) la factura haya sido certificada como correcta; o (ii) desde transcurrido el termino de diez (10) días para objetar la factura sin que se haya levantado objeciones; o (iii) en cuanto a la porción no objetada de una factura, siempre y cuando dichas objeciones hayan sido levantadas dentro del término dispuesto para ello en esta cláusula.

4. La SEGUNDA PARTE no incurrirá, ni facturará a la AUTORIDAD por ninguna obligación, ni proveerá ningún servicio a la cuenta de la AUTORIDAD, que no esté contemplado en los términos de este contrato.

5. LA SEGUNDA PARTE no facturará por trabajo ejecutado por personal de LA AUTORIDAD.

6. LA SEGUNDA PARTE reconoce que la vigencia del presente contrato estará condicionada a la presentación de todas las certificaciones exigidas por ley para el otorgamiento del mismo y que no se emitirá pago a su favor hasta tanto las presente. De faltar una de ellas sin presentar en el otorgamiento del contrato, LA SEGUNDA PARTE tendrá sesenta (60) días para presentarlas. En su defecto, este contrato se dará por resuelto sin necesidad de notificación previa. LA SEGUNDA PARTE también reconoce, que, de tener deudas con alguna dependencia del Gobierno Estatal o Municipal, podrá continuar prestando sus servicios, siempre que esté acogido a un plan de pago y esté cumpliendo cabalmente con el mismo, o dé su consentimiento para que LA AUTORIDAD le retenga el importe de la deuda de la suma líquida y exigible de dinero que devengue del presente contrato.

**SEGUNDA: SECRETARÍA DE LA GOBERNACIÓN Y OFICINA DE GERENCIA Y PRESUPUESTO: OE-2017-001**: Memorando Núm. 2017-001 de la Secretaría de la Gobernación y Carta Circular 141-17 de la Oficina de Gerencia y Presupuesto con fecha del 30 de enero de 2017, según enmendada, por Memorando Núm. 2018-002 de la Oficina de la Secretaría de la Gobernación y Carta Circular 155-18 de la Oficina de Gerencia y Presupuesto:




    a. **Cláusula de servicios interagenciales**: Ambas partes contratantes reconocen y acceden a que los servicios contratados podrán ser brindados a cualquier entidad de la Rama Ejecutiva con la cual la entidad contratante realice un acuerdo interagencial o por disposición directa de la Oficina de la Secretaría de la Gobernación. Estos servicios se realizarán bajo los mismos términos y condiciones en cuanto a horas de trabajo y compensación consignados en este contrato. Para efectos de esta cláusula, el término 'entidad de la Rama Ejecutiva' incluye a todas las agencias del Gobierno de Puerto Rico, así como a las instrumentalidades y corporaciones públicas.

    b. **Cláusula de terminación**: La Oficina de la Secretaría de la Gobernación tendrá la facultad para dar por terminado el presente contrato en cualquier momento.

---Este contrato cumple con las medidas fiscales de reducción de gastos, conforme dispone OE-2017-001, y la Ley Núm. 66 del 17 de junio de 2014, conocida como Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Gobierno de Puerto Rico y la Ley Núm. 3 de 23 de enero de 2017, conocida como Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico.

**TERCERA: CUMPLIMIENTO OFICINA DEL CONTRALOR:** Ninguna prestación o contraprestación objeto de este contrato podrá exigirse hasta tanto el mismo se haya presentado para registro en la Oficina del Contralor a tenor con lo dispuesto en la Ley Núm. 18 de 30 de octubre de 1975, según enmendada. (Ley Núm. 127 de 31 de mayo de 2004).

**CUARTA: CONFIDENCIALIDAD:** LA SEGUNDA PARTE mantendrá bajo estricta confidencialidad todo documento, material, información que obtenga como parte de los servicios prestados bajo este contrato o dato que LA AUTORIDAD le provea ("Información Confidencial"). No los podrá hacer público ni facilitarlos a terceras personas, sin previamente haber tenido la autorización escrita de LA AUTORIDAD. No se considera Información Confidencial (a) Información que la LA AUTORIDAD divulgue al público, o que se convierta en parte del dominio público por cualquier medio legal.

(b) Previo a su divulgación bajo este Contrato, se encuentre bajo la legítima propiedad de LA SEGUNDA Parte de manera fehacientemente comprobable.

(c) Sea desarrollada o adquirida de forma independiente por la Parte Receptora, de o a través de, personas que no hayan tenido acceso o conocimiento directo o indirecto de dicha Información Confidencial.

---LA SEGUNDA PARTE podrá proveer estos materiales a las personas que soliciten esta información previo consentimiento por escrito de LA AUTORIDAD, pero el tercero deberá pagar a la segunda parte los costos asociados con la entrega del material. El consentimiento de AUTORIDAD no será necesario cuando medie un mandamiento legal.

**QUINTA: NO DISCRIMEN:** LA SEGUNDA PARTE se obliga a no ejercer ningún tipo de discrimen contra persona o entidad por motivo de raza, color, edad, sexo, religión, condición económica o creencia religiosa y/o política en la ejecución de este contrato.



**SEXTA: LEY DE ÉTICA GUBERNAMENTAL:** LA SEGUNDA PARTE hace constar que, a su mejor entender, ningún empleado o funcionario de la AUTORIDAD tiene interés pecuniario, directo o indirecto en la otorgación de este Contrato a tenor con Ley Núm. 1 del 3 de enero de 2012, según enmendada, conocida como la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.

---LA SEGUNDA PARTE certifica que ninguno de sus directores, asociados o empleados es ni ha sido empleado de LA AUTORIDAD durante los pasados dos (2) años anteriores a la firma de este contrato.

---LA SEGUNDA PARTE certifica que, a su mejor saber, ninguno de sus directores, u oficiales tiene relación de parentesco de Unidad Familiar con ningún servidor público de LA AUTORIDAD.

---La SEGUNDA PARTE no tendrá una conducta o realizará actuaciones que pudieran ser descritas como contrarias a las normas éticas reconocidas a su profesión, o en las leyes y reglamentos del Gobierno de Puerto Rico.

---LA SEGUNDA PARTE certifica que, a su mejor saber, ninguno de sus directores, asociados o empleados recibe paga o compensación alguna por servicios regulares prestados bajo nombramiento a otra entidad gubernamental, AUTORIDAD, organismo, corporación pública o municipio.

**SEPTIMA: LEY CÓDIGO DE ÉTICA:** LA SEGUNDA PARTE se compromete a cumplir con las disposiciones de la Ley 2-2018, mediante la cual se establece el Código de Ética para contratistas, suplidores y solicitantes de incentivos económicos de las AUTORIDAD ejecutivas del Gobierno de Puerto Rico.

**OCTAVA: CONFLICTO DE INTERESES:** La SEGUNDA PARTE reconoce que en el descargo de su función tiene un deber de lealtad completa hacia LA AUTORIDAD, lo que incluye el no tener intereses adversos a dicho organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con LA AUTORIDAD.

---LA SEGUNDA PARTE certifica que de tener contrato con otro organismo o municipio del Gobierno de Puerto Rico, los mismos no representan conflicto de interés alguno con el cumplimiento de las cláusulas y demás disposiciones de este contrato.

---Este deber, además incluye la obligación continua que tiene la SEGUNDA PARTE de divulgar a LA AUTORIDAD todas las circunstancias de sus relaciones con clientes y terceras personas, y cualquier interés que tenga de influir en LA AUTORIDAD momento de otorgar este contrato o durante su vigencia.

---La SEGUNDA PARTE evitará hasta la apariencia de la existencia de intereses encontrados. Esto significa que no promoverá aquello a lo que debe oponerse en cumplimiento de sus obligaciones con LA AUTORIDAD, un cliente anterior u otro actual.

---En contratos con sociedades o firmas, constituirá una violación de esta prohibición el que alguno de sus directores u oficiales, incurra en la conducta aquí descrita.

---La SEGUNDA PARTE reconoce el poder de fiscalización de LA AUTORIDAD con relación al cumplimiento de las prohibiciones aquí contenidas.

---Si LA AUTORIDAD entiende que existen o han surgido intereses adversos para con la SEGUNDA PARTE, le notificará por escrito sus hallazgos y su intención de resolver este contrato dentro del término de diez (10) días. Dentro de dicho término, la SEGUNDA PARTE podrá exponer sus argumentos a dicha determinación de conflicto, la cual será concedida en todo caso. De no solicitarse dicha reunión en el término mencionado, o de no solucionarse satisfactoriamente la controversia durante la reunión concedida, este contrato quedará resuelto sin perjuicio del derecho de la SEGUNDA PARTE de solicitar revisión judicial de la determinación de la AUTORIDAD.

**NOVENA: ULTRA VIRES:** Conforme a las leyes y reglamentos que gobiernan el pacto de estos servicios, las partes acuerdan que no se prestarán los mismos hasta que las partes firmen este Contrato. Los servicios prestados en violación a esta cláusula no serán pagados.

---De la misma forma, la SEGUNDA PARTE cesará inmediatamente la prestación de servicios conforme al contrato a partir de la fecha de expiración de su vigencia, excepto que, en o antes de la fecha de expiración, se suscriba una enmienda por escrito y firmada por las PARTES.

---La SEGUNDA PARTE queda debidamente advertida de que la AUTORIDAD no vendrá obligada a pagar por servicios prestados en violación de esta cláusula.

---Cualquier funcionario que solicite y/o acepte servicios de la SEGUNDA PARTE sin mediar contrato debidamente firmado y suscrito de las PARTES, o antes de la formalización y firma de este contrato; o habiendo expirado el termino de vigencia de este contrato, estará actuando en violación a lo dispuesto en esta cláusula, antes de la vigencia o luego de expirar la vigencia del acuerdo, estará actuando en violación a esta cláusula y sin tener facultad ni autoridad legal alguna.

**DÉCIMA: ENMIENDAS:** Las PARTES podrán, durante la vigencia de este contrato y por mutuo acuerdo, incorporar por escrito las enmiendas que consideren necesarios para una mejor utilización de los servicios contratados a tono con las necesidades de las partes.

---La(s) enmienda(s) estará(n) sujeta(s) y quedará(n) condicionadas a la aprobación de las agencias gubernamentales pertinentes y deberán constar por escrito y firmada por ambas partes antes del vencimiento de este contrato.

**DÉCIMA PRIMERA: DEPARTAMENTO DE ESTADO:** La SEGUNDA PARTE certifica haber sometido:

---LA SEGUNDA PARTE se compromete a brindar a LA AUTORIDAD, antes de que se formalice este contrato, el Certificado de Existencia o Certificación de Autorización para hacer negocios en Puerto Rico y el Certificado de Buena pro "Good Standing" (Si aplica). Tales documentos garantizarán que la compañía con la cual contrata LA AUTORIDAD, ha cumplido con enviar sus informes anuales al Departamento de Estado y que está al día en sus asuntos con dicho organismo.

**DÉCIMA SEGUNDA: DEPARTAMENTO DE HACIENDA; CERTIFICACIÓN DE RADICACIÓN DE PLANILLAS Y CERTIFICACIÓN NEGATIVA DE DEUDA CONTRIBUTIVA DEL DEPARTAMENTO DE HACIENDA:** A los fines de este contrato se entenderá por deuda contributiva cualquier deuda que tenga LA SEGUNDA PARTE así como cualesquiera de sus directores o socios con el Gobierno de Puerto Rico, por concepto de contribuciones sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias, contribuciones retenidas en el origen en el pago de salarios y servicios profesionales, en el pago de intereses, dividendos, rentas a individuos, sobre corporaciones y sociedades no residentes, y en el pago de intereses, dividendos y otras distribuciones de ganancias a personas residentes, pagos por concepto de seguro de desempleo, incapacidad temporal o de seguro social para choferes.



---La SEGUNDA PARTE certifica y garantiza que al momento de otorgar el presente contrato ha rendido su Planilla de Contribución sobre Ingresos durante los cinco (5) años previos. Además, certifica que no adeuda cantidad alguna de contribución sobre ingresos al Departamento de Hacienda o está acogido a un plan de pago.

---La AUTORIDAD deducirá y retendrá el diez por ciento (10%) de los pagos que efectúe por concepto de los servicios prestados por LA SEGUNDA PARTE, a los fines del pago de contribuciones sobre ingresos, según se dispone en la Sección 1062.03, del Nuevo Código de Rentas Internas de Puerto Rico de 2011, según enmendada, por la Ley Núm. 1 del 31 de enero de 2011. De presentar LA SEGUNDA PARTE un Certificado de Relevo de Retención en el Origen expedido por el Departamento de Hacienda, que le exima o varíe la retención aquí mencionada, la AUTORIDAD cesará de hacer tales retenciones o ajustará las mismas conforme a lo establecido en el Certificado de Relevo y reembolsará a LA SEGUNDA PARTE cualquier cantidad exenta que haya sido retenida y no se haya depositado aún en el Departamento de Hacienda.

 ---La AUTORIDAD será responsable de notificar al Departamento de Hacienda el por ciento de retención que tenga la SEGUNDA PARTE según el relevo, o en su defecto, que no tiene relevo alguno.

---LA SEGUNDA PARTE será responsable de emitir la aportación individual del pago que le corresponde al Negociado de Rentas Internas Federal, la Oficina del Seguro Social y cualquier otra aportación que por ley venga obligado a hacer.

---LA AUTORIDAD, no le efectuará retenciones al LA SEGUNDA PARTE, ni descuentos de su salario para el pago de Seguro Social Federal.

---LA SEGUNDA PARTE es responsable de rendir sus planillas y pagar las aportaciones correspondientes al Seguro Social Federal y al Negociado de Contribución sobre Ingresos del Departamento de Hacienda por cualquier cantidad tributable como resultado de los ingresos devengados bajo este Contrato. LA AUTORIDAD notificará al Negociado de Contribución sobre Ingresos los pagos y reembolsos que sean efectuados a LA SEGUNDA PARTE.

---**LEY 48-2013, según enmendada:** LA AUTORIDAD deducirá y retendrá el uno punto cinco por ciento (1.5%) de todos los pagos por concepto de servicios profesionales, consultivos, publicidad, adiestramiento u orientación, según lo dispone la Ley Núm. 48 del 30 de junio de 2013, que establece la Aportación Especial por Servicios Profesionales y Consultivos; entre otras cosas, y conforme a la Carta Circular Núm. 1300-03-14. Esta aportación especial será retenida al momento de hacer el pago por los servicios prestados, el cual será destinado al Fondo General.

---La Aportación Especial por Servicios Profesionales establecida en esta Ley no podrá, bajo ninguna circunstancia, tomarse o interpretarse como un crédito o deducción contra la contribución sobre ingresos determinada. Disponiéndose, que no estarán sujeto a la aportación especial los contratos de servicios profesionales, consultivos, de publicidad, adiestramiento u orientación prestados por individuos cuyo monto de contratación agregada **no exceda** de trescientos mil dólares ($300,000.00) anuales. (Si aplica)

**DÉCIMA TERCERA: CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)**: La SEGUNDA PARTE certifica:

(i)    que radicó la Planilla de Contribución sobre la Propiedad Mueble,

(ii)    que no tiene deuda de propiedad mueble o inmueble (CERTIFICACIÓN DE DEUDA POR TODOS LOS CONCEPTOS).

**DÉCIMA CUARTA: ASUME**: La SEGUNDA PARTE certifica y garantiza que al momento de suscribir este contrato:

(i) No tiene obligación de aportar económicamente o de cumplir con una obligación alimentaria por orden judicial o administrativa para con un(os) menor(es) o persona(s) de edad avanzada[1], o que de tenerla está cumpliendo con sus pagos o con un plan de pago.

(ii) Está cumpliendo con su obligación legal patronal de realizar las deducciones salariales correspondientes a sus empleados obligados por órdenes de la Administración para el Sustento de Menores (ASUME) y está al día en sus envíos. De tener al presente deuda por dicho concepto, certifica que está cumpliendo con un plan de pago.

**DÉCIMA QUINTA: DEPARTAMENTO DEL TRABAJO**: La SEGUNDA PARTE certifica:

(i) estar registrado como patrono en el Departamento del Trabajo,

(ii) no tener deuda por concepto de Seguro por Desempleo y Seguro por Incapacidad,

(iii) no tener deuda por concepto de Seguro Social Choferil.

**DÉCIMA SEXTA: RESOLUCIÓN DE ESTE CONTRATO**: La AUTORIDAD por cualquier motivo, podrá dar por terminado este contrato mediante notificación escrita a la SEGUNDA PARTE con treinta (30) días de antelación a la fecha en la que desea su terminación. No obstante, el requisito de notificación previa no será de su aplicación cuando:

(i) contra la SEGUNDA PARTE o cualquiera de sus directores u oficiales, subsidiarias o compañías matrices, se determine causa probable para el arresto por cualquier contra el erario, la fe y la función pública; contra el ejercicio gubernamental; o que involucre fraude, fondos o propiedad pública, en el ámbito federal o estatal; según definido en la Ley 2-2018.

(ii) LA SEGUNDA PARTE o cualquiera de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices, incurra en negligencia o abandono de deberes, o incumpla con este contrato;

(iii) cuando la AUTORIDAD entienda que existe una situación fiscal extraordinaria que amerite un recorte inmediato de gastos.

---En caso de que la AUTORIDAD notifique la resolución de este contrato sin justa causa deberá pagar a la SEGUNDA PARTE los servicios que haya prestado hasta la fecha de la notificación incluyendo obligaciones contraídas en nombre de la AUTORIDAD aunque no hayan sido facturados.

---La negligencia, incumplimiento de los términos y condiciones del presente contrato o el abandono de deberes por LA SEGUNDA PARTE, LA AUTORIDAD podrá dejar sin efecto el contrato inmediatamente.

---Si LA SEGUNDA PARTE rehúsa aceptar cualquier condición adicional o cambios que le requiera LA AUTORIDAD dentro de los términos provistos en este Contrato.



---

[1] Esto conforme dispone la Ley Núm. 168-2000, según enmendada, mejor conocida como la Ley para el Fortalecimiento del Apoyo Familiar y Sustento de Personas de Edad Avanzada.

---Si alguno de los oficiales o directores de LA SEGUNDA PARTE resulta convicto por los delitos contra el erario público, la fe y función pública o que envuelvan fondos o propiedad pública en el nivel estatal o federal.

---LA SEGUNDA PARTE expresamente reconoce que en la eventualidad de no existir o asignarse fondos para el pago de los servicios profesionales contratados, este contrato quedará resuelto sin más derecho que el de cobrar lo ya trabajado.

---LA AUTORIDAD podrá terminar este contrato unilateralmente de entender que hubo un cambio en las condiciones que propiciaron el contrato y que manteniéndose el mismo resulte en detrimento a su gestión pública. LA SEGUNDA PARTE deberá entregar el producto de su trabajo realizado, obligaciones contraídas en nombre de LA AUTORIDAD hasta el momento y LA AUTORIDAD vendrá obligada a remunerar la cantidad que se estime a satisfacción de las partes envueltas.

---En cualquier momento que LA AUTORIDAD lo creyere conveniente, podrá resolver o rescindir este Contrato dando previa notificación escrita a LA SEGUNDA PARTE con treinta (30) días de antelación. LA SEGUNDA PARTE no tendrá derecho a compensación adicional alguna excepto lo devengado bajo el mismo hasta la fecha en que se resolvió o rescindió este contrato incluyendo las obligaciones contraídas en nombre de la AUTORIDAD.

**DÉCIMA SÉPTIMA: INDELEGABILIDAD**: Los servicios a prestarse por la SEGUNDA PARTE serán indelegables.

---La AUTORIDAD podrá dar por terminado este contrato, de manera inmediata si la SEGUNDA PARTE delega a OTRA PARTE los servicios que se obligó a prestar en este contrato.

---El incumplimiento de esta cláusula le hará responsable por cualesquiera daños y perjuicios directos que fueran causados a la AUTORIDAD.

---No obstante, la SEGUNDA PARTE podrá subcontratar una porción de los servicios objeto de este contrato, sin que por ello quede relevada de las obligaciones, responsabilidad y términos del mismo.

**DÉCIMA OCTAVA: CONTRATISTA INDEPENDIENTE:** LA SEGUNDA PARTE reconoce que este contrato no lo constituye en agente, representante o empleado de LA AUTORIDAD para propósito alguno y que es un contratista independiente, por lo que no tendrá derecho a los beneficios marginales que se ofrecen a los empleados de LA AUTORIDAD y a los del Gobierno de Puerto Rico. Nada de lo dispuesto en este Contrato deberá interpretarse como que habrá una relación patrono-empleado entre LA AUTORIDAD y LA SEGUNDA PARTE.

---Lo aquí acordado no limita la facultad de LA SEGUNDA PARTE de ejercer libremente su profesión ni de llevar a cabo negocios lícitos como cualquier hombre de negocios.

**DÉCIMA NOVENA: COMUNICACIÓN ENTRE LAS PARTES**: Las PARTES acuerdan celebrar reuniones para discutir los servicios que requiera la AUTORIDAD sin costo alguno.

10

---La AUTORIDAD redactará una minuta que contenga el propósito de la reunión y los acuerdos tomados en la misma, revisada y aceptada por LA SEGUNDA PARTE.

---Las PARTES deberán compartir entre sí información por escrito sobre el progreso y/o resultado de los servicios requeridos por la AUTORIDAD.

---Cuando la AUTORIDAD entienda razonablemente que la SEGUNDA PARTE ha incumplido sus obligaciones contractuales le notificará por escrito, especificando que de que se trata el incumplimiento de este contrato y proveyendo a la otra parte un término de diez (10) días laborables, desde la notificación, para subsanar el alegado incumplimiento u objetar el mismo.

---Las PARTES harán su mejor esfuerzo para solucionar cualquier controversia que pudiera surgir producto del incumplimiento de las clausulas contenidas en este contrato, siendo la resolución del mismo la última opción.

**VIGÉSIMA: RESPONSABILIDAD POR DAÑOS Y PERJUICIOS**: LA SEGUNDA PARTE releva de toda y cualquier responsabilidad a la AUTORIDAD, sus empleados o funcionarios de cualquier reclamación, pleito o demanda que se presente relacionada directatamente exclusivamente por su culpa o negligencia relacionada con la operación, actividad o negocio objeto de este contrato hasta el máximo de lo pagado por la Autoridad. Esta exoneración y relevo se interpretará de la forma más favorable a la AUTORIDAD, e incluye el relevo del pago de cualquier sentencia así como los gastos de litigio, intereses y honorarios de abogado hasta el máximo de lo pagado por la Autoridad.

---La AUTORIDAD no tendrá responsabilidad alguna, directa o indirecta, por pérdida o daño que pueda sufrir cualquier persona jurídica o natural por razón o con motivo de culpa o negligencia de los servicios de LA SEGUNDA PARTE.

---En la eventualidad de que la AUTORIDAD o sus representantes no provean a la SEGUNDA PARTE la información, necesaria para cumplir las disposiciones de este contrato, la SEGUNDA PARTE no será responsable de proveer los servicios dentro de los términos pautados en este contrato.

**VIGÉSIMA PRIMERA: JURISDICCIÓN Y COSTAS LEGALES**: Las leyes y reglamentos del Gobierno de Puerto Rico y las leyes y reglamentos del Gobierno Federal son los que gobiernan este contrato.

---De existir discrepancias entre el Contrato y la Propuesta, prevalecerá el Contrato.

---De tener que acudir a un Tribunal de Justicia, cualquiera de las partes, de antemano, acuerdan que se someterán a la jurisdicción del Tribunal General de Justicia de Puerto Rico.

---En cuanto a las costas legales, estas serán determinadas y pagadas de acuerdo a lo que el Tribunal estipule.

---LA SEGUNDA PARTE cumplirá con todas las leyes, normas y reglamentos locales y federales aplicables a este contrato o a la realización del mismo.

---Si surge un conflicto de ley entre las leyes y reglamentos del Gobierno de Puerto Rico y el presente contrato, prevalecerán las leyes y reglamentos del Gobierno de Puerto Rico, sobre el presente contrato.

**VIGÉSIMA SEGUNDA: LEY NÚM. 2-2018, según enmendada**: La SEGUNDA PARTE presentó a la AUTORIDAD una Declaración Jurada en la que certifica bajo juramento que ni quien la suscribe, ni la compañía de responsabilidad limitada que representa, ni cualesquiera de los sus oficiales o directores, subsidiarias o compañías matrices han sido convictos, ni se han declarado culpable por los delitos enumerados en el Art. 3 de la Ley Núm. 2-2018, según enmendada.

---La SEGUNDA PARTE también certifica en la misma Declaración Jurada que no se encuentra bajo investigación en cualquier procedimiento legislativo, judicial o administrativo, ya sea en Puerto Rico, Estados Unidos de América o cualquier otro país por ninguno de los delitos enumerados en la referida ley.

---La SEGUNDA PARTE hace constar que tiene claro su deber de informar de manera continua, durante la vigencia de este contrato, cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito de los antes mencionados por Ley 2-2018, en el ámbito estatal o federal.

---Esta obligación es de naturaleza continua durante la vigencia de este contrato.

---La SEGUNDA PARTE certifica que durante los diez (10) años anteriores a la formalización de este contrato, la persona o la entidad no ha cometido ningún delito contra el erario, la fe o la función pública, contra el ejercicio gubernamental, o que involucre fondos o propiedad pública, en el ámbito estatal o federal, según definidos en la Ley 2-2018.

---Las PARTES acuerdan referir al Secretario de Justicia aquellas situaciones o admisiones sobre comisión de delito de alguna de ellas, la instrumentalidad pública, director de departamento ejecutivo, presidente de la corporación u otro relacionado a los servicios objeto de este contrato, aun cuando no haya acusación, causa probable para arresto, alegación de culpabilidad para las determinaciones o recomendaciones pertinentes.



---LA SEGUNDA PARTE certifica que, a su mejor entender, ninguno de sus directores u oficiales ha sido convicto, ni que son objeto de investigación o procedimiento civil o criminal por hechos relacionados con cualquiera de los delitos señalados en la Ley 2-2018 como causales para la rescisión del Contrato. Hace constar que tiene claro su deber de informar a LA AUTORIDAD cualquier situación que ocurra durante todas las etapas de la contratación y durante la ejecución de este Contrato que tenga relación con los delitos señalados. (Si aplica)



**VIGÉSIMA TERCERA:** Las Partes acuerdan que LA SEGUNDA PARTE no puede modificar los procedimientos o decisiones que afecten sustancialmente la política administrativa establecida por LA AUTORIDAD, sin el consentimiento previo escrito de LA AUTORIDAD.

**VIGÉSIMA CUARTA: INTERPRETACIÓN Y NULIDAD**: Este contrato constituye el único acuerdo entre las partes sobre los servicios profesionales descritos anteriormente y deja sin efecto cualquier otro acuerdo anterior, negociaciones, entendidos y otros asuntos, sean escritos o verbales, sobre lo acordado en este contrato. Cualquier otra representación, misiva y/o comunicación, oral y/o escrita,

previa y/o contemporánea al otorgamiento, no alterará, modificará y/o enmendará en forma alguna este contrato.

---Las CLÁUSULAS Y CONDICIONES de este contrato son independientes y separadas entre sí, de ser declarada nula o inválida cualquier disposición de este contrato permanecerá válido y vigente y no se afectará por tal declaración.

**VIGÉSIMA QUINTA: VIGENCIA:** Este contrato estará vigente a partir de la fecha de su otorgamiento hasta el **30 de junio de 2021**.

EN TESTIMONIO DE LO CUAL, las partes firman el presente Contrato en San Juan, Puerto Rico, hoy _____ 30 _____ de noviembre de 2020.

AUTORIDAD DE EDIFICIOS PÚBLICOS             EVERTEC GROUP, LLC.


Melitza López Pimentel                       Carlos J. Ramírez Padilla
Directora Ejecutiva                          Vicepresidente Ejecutivo



YO, _____, ABOGADO(A) DE LA AUTORIDAD DE EDIFICIOS PÚBLICOS, CERTIFICO QUE HE REVISADO ESTE CONTRATO EN TODOS SUS PORMENORES Y HABIENDO ENCONTRADO EL MISMO SATISFACTORIO DESDE EL PUNTO DE VISTA LEGAL, RECOMIENDO SU FIRMA.