

*EXHIBIT 1*

2022-EE0059

**GOBIERNO DE PUERTO RICO
DEPARTAMENTO DE EDUCACIÓN
SECRETARÍA ASOCIADA DE EDUCACIÓN ESPECIAL
SAN JUAN, PUERTO RICO**

**CONTRATO DE SERVICIOS PROFESIONALES**

**COMPARECEN**

**DE LA PRIMERA PARTE:** El Departamento de Educación, representado en este acto por el Honorable Lcdo. Eliezer Ramos Pares, en su carácter de Secretario de Educación Interino, mayor de edad, casado y vecino de San Juan, Puerto Rico, o por delegación expresa el Lcdo. Jesús González Cruz, en su carácter de Subsecretario de Administración, mayor de edad, casado y vecino de Corozal, Puerto Rico, en adelante denominados la **PRIMERA PARTE**.

**DE LA SEGUNDA PARTE:** MCG and the Able Child at Centro Multidisciplinario del Caribe, Inc., Corporación con fines de lucro, organizada bajo las leyes del Estado Libre Asociado de Puerto Rico y en cumplimiento con las disposiciones de la Ley de Corporaciones, con oficina principal ubicada en Plaza Cupey Garden 200, Ave. Cupey Garden Suite 6W, San Juan, Puerto Rico, representado en este acto por Alfredo Pedro Gotay Zorilla en su capacidad de Director Ejecutivo, mayor de edad, casado y vecino de Trujillo Alto, Puerto Rico, en adelante denominado la **SEGUNDA PARTE**.

**EXPONEN**

El Departamento de Educación, en el ejercicio de las facultades que le han sido conferidas por la Ley 85-2018, según enmendada, conocida como "*Ley de Reforma Educativa de Puerto Rico*", por la Constitución del Gobierno de Puerto Rico y por las leyes que esta administra, contrató a la **SEGUNDA PARTE** para ofrecer servicios relacionados y atender las necesidades de evaluaciones y terapias de los estudiantes con impedimentos en las Regiones Educativas de Arecibo, Bayamón, Caguas, Humacao, Mayagüez, Morovis, y San Juan.

La **PRIMERA PARTE**, en el ejercicio de las facultades que le han sido conferidas por la recién aprobada Ley 85-2018, conocida como "*Ley de Reforma Educativa de Puerto Rico*", por la Constitución del Gobierno de Puerto Rico y por las leyes que esta administra, desea contratar los servicios profesionales de la **SEGUNDA PARTE**.

La **SEGUNDA PARTE** cuenta con la preparación, capacidad y experiencia necesaria para cumplir con las obligaciones y responsabilidades que asume mediante este contrato.

**AMBAS PARTES** convienen en efectuar este contrato con arreglo a las siguientes:

**CLÁUSULAS Y CONDICIONES**

**PRIMERA:** La **SEGUNDA PARTE** se compromete a prestar a la **PRIMERA PARTE** los servicios profesionales que se describen a continuación, así como aquellos otros servicios que sean incidentales a su labor o que le fuesen requeridos en relación con la misma y prestarán servicios según se indica a continuación:

A. Ofrecer, de acuerdo a los referidos sometidos por la Secretaría Asociada de Educación Especial (en adelante, SAEE), o su representante autorizado, y el Centro de Servicios de Educación Especial (en adelante, CSEE), conforme a lo que se detalla en el inciso I, cubierto bajo la cifra de cuenta determinada en este contrato: servicios de evaluación, reevaluación e intervención según se definen en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I, la cual, con los procedimientos allí descritos, pasa a formar parte del presente contrato. Específicamente:

B. Administrar aquellos instrumentos de evaluación o reevaluación requeridos para determinar la elegibilidad de los niños y jóvenes a los servicios de educación especial. En el caso de reevaluaciones, se administrarán, de ser posible, considerando la edad del estudiante, los mismos que se utilizaron en la evaluación inicial que determinó la elegibilidad.

C. Proveer servicios de evaluación e intervención a los niños y jóvenes de 3 a 21 años, según se especifica en el Programa Educativo Individualizado (en adelante, PEI) del estudiante. Además, podrá proveer servicios a infantes conforme al Convenio Interagencial entre el Departamento de Salud, Programa de Intervención Temprana y el Departamento de Educación.



D. Proveer servicios a niños y jóvenes con aquellos impedimentos señalados en la Ley IDEA y la Ley 51-1996, según enmendada.

E. Atender a niños y jóvenes referidos por la SAEE o su representante autorizado de las Regiones Educativas de Arecibo, Bayamón, Caguas, Humacao, Mayagüez, Morovis, y San Juan o CSEE. Ofrecerá servicios en otras regiones a solicitud de la SAEE, de acuerdo a la necesidad.

F. Ofrecer los servicios de evaluación e intervención dentro del calendario escolar 2021-2022 incluyendo sábados, si el estudiante fuera admitido y ubicado para recibir intervención los sábados. Dicho calendario escolar pasa a formar parte de este contrato, Anejo II. La **SEGUNDA PARTE** podrá ofrecer servicios domingos, días feriados y otros, cuando fuera necesario y sea solicitado por la SAEE o su representante autorizado. Deberá mediar autorización escrita de la **PRIMERA PARTE**, previo al ofrecimiento de estos servicios en domingos y días feriados.

G. Ofrecer los servicios en las escuelas donde el estudiante recibe el servicio educativo, en el lugar designado para este propósito o en el salón de clases cuando sea apropiado, de acuerdo al modelo de servicios a implantarse. Las situaciones excepcionales se atenderán según lo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

H. Ofrecer los servicios de intervención considerando las necesidades de los niños y jóvenes bajo los diferentes modelos que se enumeran en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

I. Ofrecer los servicios compensatorios de acuerdo a los procedimientos establecidos en la Guía para la Provisión de Servicios Relacionados, Anejo I.

J. Entregar los informes correspondientes de acuerdo a lo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

K. Facturar según establecido en la Guía para la Presentación y Validación de Facturas, Anejo IV.

**SEGUNDA:** La **SEGUNDA PARTE** suscribirá y presentará evidencia de una póliza que libere de responsabilidad a la **PRIMERA PARTE**, a sus representantes y otras Agencias del Gobierno, de toda demanda o acción de cualquier naturaleza o tipo que pueda llevarse a cabo por cuenta de daños corporales, muerte o daño a la propiedad tangible, directa o indirectamente causado por la negligencia de la **SEGUNDA PARTE** y/o del personal de la **SEGUNDA PARTE** para desempeñar los servicios a llevarse a cabo bajo las disposiciones de este contrato.

**TERCERA:** La **SEGUNDA PARTE** requerirá de sus especialistas una certificación de que no tiene deuda con la **PRIMERA PARTE** por concepto de becas o pagos de matrícula que ésta haya hecho a su favor en años anteriores. Si se determinase que algún especialista no ha cumplido su compromiso de servicios con la **PRIMERA PARTE**, la **SEGUNDA PARTE** vendrá obligada a notificar a la **PRIMERA PARTE** al respecto. El especialista deudor no podrá proveer sus servicios a la **PRIMERA PARTE** a través de este contrato, excepto que la **SEGUNDA PARTE** se comprometa por escrito a descontar de la cantidad a pagar al especialista el monto de lo adeudado a la **PRIMERA PARTE**. Para hacerlo, notificará al especialista deudor su intención y obtendrá su consentimiento. La **SEGUNDA PARTE** será responsable de emitir el pago correspondiente a favor de la **PRIMERA PARTE** durante el año de vigencia del contrato.

**CUARTA:** La **SEGUNDA PARTE** no podrá emplear y/o contratar empleados o funcionarios activos con la **PRIMERA PARTE**. Esta actuación puede ser contraria a las disposiciones de la Ley 1-2012, según enmendada, conocida como *Ley de Ética Gubernamental de Puerto Rico*. El no cumplir con esta disposición será causa suficiente para rescindir de inmediato el contrato entre las partes. No obstante, la **SEGUNDA PARTE** sí podría emplear y/o contratar empleados o funcionarios activos con la **PRIMERA PARTE**, previa solicitud de la **SEGUNDA PARTE** de una dispensa a la **PRIMERA PARTE**. Esta solicitud deberá recibirse acompañada con la autorización que pide el especialista, empleado por la **SEGUNDA PARTE**, a la Oficina de Ética Gubernamental, y con copia de la carta de determinación final de la Oficina de Ética Gubernamental, remitida al especialista.

**QUINTA:** La negativa de la **SEGUNDA PARTE** a prestar servicios de conformidad con la política pública, normas y procedimientos de la **PRIMERA PARTE** será razón suficiente para rescindir de inmediato el contrato entre las partes.

**SEXTA:** Los especialistas de la **SEGUNDA PARTE** que ofrecen servicios de evaluación e intervención no podrán ofrecer servicios a la Agencia a través de la Unidad Secretarial del Procedimiento de Querellas y Remedio Provisional. Asimismo, si un especialista de la **SEGUNDA**

PARTE renuncia, estará impedido de ofrecer servicios a la Agencia a través de la Unidad Secretarial del Procedimiento de Querellas y Remedio Provisional hasta transcurrido un (1) año a partir de la fecha en que presentó su renuncia a la SEGUNDA PARTE. Será responsabilidad de la SEGUNDA PARTE asegurarse de apercibir a sus especialistas sobre el contenido de esta cláusula.

**SÉPTIMA:** La **SEGUNDA PARTE** expresa que conoce las normas éticas de su profesión y asume entera responsabilidad por cualquier acción suya o de sus empleados que pudiese ser contraria a tales normas éticas.

**OCTAVA:** La **SEGUNDA PARTE** acepta y se compromete a ofrecerle a la **PRIMERA PARTE** acceso total a las instalaciones y dependencias donde se ofrecen los servicios contemplados bajo este contrato en aras de garantizar que la provisión de los servicios sea acorde a los términos estipulados y según los procesos de monitoria y de control de calidad de la Agencia. Además, la **SEGUNDA PARTE** también garantizará a la **PRIMERA PARTE** acceso total a toda la información relacionada con los servicios estipulados bajo este contrato según lo antes expresado.

**NOVENA:** La **SEGUNDA PARTE** se compromete a garantizar la salubridad y seguridad de los estudiantes y clientes servidos bajo los términos de este contrato y conforme a lo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

**DÉCIMA:** La **PRIMERA PARTE** certifica que los fondos a utilizarse para el pago de los servicios contemplados en este contrato, podrían ser objeto de un proceso de auditoría *Single Audit* por parte del Gobierno Federal. La **SEGUNDA PARTE** acepta y se compromete a cooperar cabalmente con dicho proceso de auditoría. Además, como parte de los procesos de monitoria interna contemplados bajo los términos de este contrato, la **SEGUNDA PARTE** acepta que también podría ser objeto de monitoria fiscal o fiscalización del uso de los fondos como parte de la provisión de los servicios contemplados en este contrato.

**DÉCIMA PRIMERA: CONFIDENCIALIDAD:** La **SEGUNDA PARTE** reconoce que toda la información o datos suministrados, obtenidos y producidos como parte de los servicios objeto de este contrato serán considerados confidenciales y, como tal, su divulgación a terceros sin el consentimiento por escrito de la **PRIMERA PARTE** queda estrictamente prohibida. La **SEGUNDA PARTE** reconoce, además, el poder de fiscalización de la **PRIMERA PARTE**, en especial por la Unidad de Monitoria a Evaluaciones y Servicios Relacionados (en adelante, UMESR) de la SAEE, para asegurarse que los servicios están siendo provistos conforme a los términos y condiciones de este contrato, reconociendo así la autoridad de la **PRIMERA PARTE** para visitar el centro en cualquier momento y sin previa coordinación. La **SEGUNDA PARTE** se compromete a mostrar en el momento a la **PRIMERA PARTE** todo documento relacionado al presente contrato requerido por ésta, así como a proveerle copia certificada de los mismos según le sea requerido.

**DÉCIMA SEGUNDA:** La **SEGUNDA PARTE** estará sujeta al cumplimiento de las normas y procedimientos establecidos por la **PRIMERA PARTE**, a los procedimientos que rigen el Programa de Educación Especial y a las visitas de supervisión, investigación y monitoria federal y estatal que realice la **PRIMERA PARTE**.

**DÉCIMA TERCERA:** La **PRIMERA PARTE** se reserva el derecho a imponer sanciones económicas a la **SEGUNDA PARTE** cuando, luego de llevar a cabo las visitas e investigaciones necesarias para apoyar su decisión, encuentre alguno de los incumplimientos establecidos en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

**DÉCIMA CUARTA:** La **PRIMERA PARTE** se reserva el derecho de tomar aquella acción que mejor responda a los intereses de sus estudiantes en los casos en que no se desarrollen acciones correctivas para atender los hallazgos, incluyendo el rescindir el contrato y optar por otras vías para proveer los servicios.

**DÉCIMA QUINTA:** La **SEGUNDA PARTE** contará con un proceso de monitoria y auditoría interna, para mantener y monitorear la calidad de los servicios ofrecidos mediante este contrato. Además, utilizarán las mejores prácticas aceptables dentro de las distintas disciplinas de servicios relacionados.

**DÉCIMA SEXTA: COMPENSACIÓN Y RECURSOS PARA PAGAR LOS SERVICIOS:** Las partes acuerdan, con respecto a la forma de pago de honorarios, lo siguiente:



I: La **PRIMERA PARTE** pagará a la **SEGUNDA PARTE** por los servicios prestados mediante este contrato hasta un máximo de **un millón de dólares ($1,000,000.00)** de acuerdo a las tarifas establecidas por la **PRIMERA PARTE**, las cuales se detallan en el Anejo III (*Hoja de Tarifas*) y dentro del monto presupuestario establecido por la **PRIMERA PARTE**. Bajo ningún concepto la **SEGUNDA PARTE** facturará a la **PRIMERA PARTE** ni al estudiante, sus padres o encargados, cantidad adicional a la

tarifa establecida en este contrato. La **PRIMERA PARTE** se reserva el derecho de ajustar las tarifas establecidas de acuerdo a la disponibilidad de los fondos durante la vigencia de este contrato. Todo esto estará sujeto a la disponibilidad de fondos. La **PRIMERA PARTE** no se hará responsable de cualquier sobregiro en que incurra la **SEGUNDA PARTE** que exceda los fondos separados para este contrato.

II: Los honorarios establecidos en la sub cláusula que precede se pagarán por la **PRIMERA PARTE** por mensualidades vencidas, previa presentación de una factura mensual por cada región educativa a través del *Sistema de Facturación en Línea* y utilizando los formularios provistos por la Secretaría Asociada de Educación Especial según los procedimientos que disponen los Anejos I y II que forman parte de este contrato.

III: Los servicios de intervención serán ofrecidos conforme dispuestos en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I. Los que se ofrezcan bajo el modelo Complementario Colaborativo se facturarán de acuerdo a las tarifas establecidas por la **PRIMERA PARTE**, considerando que, dentro del límite de tiempo destinado a este modelo, el especialista puede ofrecer diferentes servicios, tales como: consultoría, intervención integrada al salón de clases, terapia individual, grupal y otros, según sea apropiado.

IV: Los servicios prestados bajo este contrato se pagarán de las Partidas de Servicios Profesionales y Consultivos, Cifra de Cuenta **2022-E1290-111-01116000-1009-006**, u otra cifra de cuenta que tenga los fondos para pagar los servicios que no exceda el monto asignado al contrato. Los servicios a ser facturados bajo esta cifra de cuenta están descritos en la Guía para la Presentación y Validación de Facturas (Anejo III). Los fondos para esta contratación serán asignados mediante el documento *Separación de Fondos para Contratación de Servicios Profesionales y Consultivos*. En el caso de que se identifiquen otras cifras de cuenta luego de que se asigne la nomenclatura de las cifras de cuenta bajo el sistema financiero que utiliza el Departamento de Educación, se procederá a enmendar el documento de *Separación de Fondos para Contratación de Servicios Profesionales y Consultivos* y no tendrá que proceder a enmendar el contrato para estos efectos.

V: La **PRIMERA PARTE** podrá autorizar el pago de otro tipo de evaluación, no consideradas en este contrato, o algún servicio necesario prestado bajo el presente contrato, a través de una tarifa especial, vía excepción, cuando medien circunstancias especiales no contempladas en los servicios contratados. Esto será posible mediante una autorización escrita de la **PRIMERA PARTE** que detalle la naturaleza del servicio solicitado, la cantidad a ser pagada por el mismo y las razones para considerarlo vía excepción. Las autorizaciones vía excepción requerirán la firma del representante autorizado de la SAEE.

VI: Cuando la **SEGUNDA PARTE** no pueda continuar sirviendo un estudiante admitido, será su responsabilidad pagar, por el resto del año escolar, cualquier diferencia, si alguna, en el costo de dicho servicio, cuando la **PRIMERA PARTE** identifique un proveedor que pueda proveer el mismo, cuando sea a un costo superior. Cualquier diferencia será deducida del pago por servicios que le corresponda a la **SEGUNDA PARTE.**

VII: La **PRIMERA PARTE** pagará a la **SEGUNDA PARTE** los servicios ofrecidos mediante este contrato previa presentación de una factura mensual por cada región educativa debidamente acompañada de los informes y documentos requeridos para facturar, según establecidos en la Guía para la Presentación y Validación de Facturas. Anejo IV.



VIII: La **SEGUNDA PARTE** someterá las facturas a través del *Sistema de Facturación en Línea* según el procedimiento establecido para ello o cualquier otro procedimiento establecido por la **PRIMERA PARTE**. La **SEGUNDA PARTE** será responsable de la veracidad y corrección de la información provista en el *Sistema de Facturación en Línea*.

IX: Las facturas serán presentadas no más tardar de los veinte (20) días después de transcurrido el mes en que se proveyeron los servicios. Una penalidad del tres por ciento (3%) del monto de la factura será aplicada a toda aquella factura entregada después de los treinta (30) días de ofrecidos los servicios.

X: La **PRIMERA PARTE** descontará a la **SEGUNDA PARTE** las cantidades por concepto de multas, penalidades, sanciones o cualquier otra causal contemplada en este contrato. Estos descuentos serán aplicados directamente en el pago de la próxima factura de la **SEGUNDA PARTE** que corresponda para pago.

XI: La **SEGUNDA PARTE** se reserva el derecho de realizar cambios en el procedimiento de facturación en cualquier momento durante la vigencia de este contrato.

XII: La factura debe incluir la siguiente certificación:

"Bajo pena de nulidad absoluta, certifico que ningún servidor público de la **PRIMERA PARTE** es parte o tiene algún interés en las ganancias o beneficios producto del contrato objeto de esta factura y, de ser parte o tener interés en las ganancias o beneficios producto del contrato, ha mediado una dispensa previa. La única consideración para suministrar los bienes o servicios objeto del contrato ha sido el pago acordado con el representante autorizado de la **PRIMERA PARTE**. El importe de esta factura es justo y correcto. Los trabajos han sido realizados, los productos han sido entregados y los servicios han sido prestados y no se ha recibido pago por ellos. La **PRIMERA PARTE** se reserva el derecho de realizar cambios en el procedimiento de facturación."

"**DÉCIMA SÉPTIMA: MULTAS, PENALIDADES y SANCIONES:** El incumplimiento con las obligaciones establecidas en este contrato y sus anejos podría conllevar la imposición de multas, penalidades o sanciones.

I. **Disposiciones Generales:**
   a. La **SEGUNDA PARTE** será responsable del pago de las multas y/o sanciones impuestas a la **PRIMERA PARTE** cuando las mismas se relacionen al incumplimiento de la **SEGUNDA PARTE** con sus deberes y responsabilidades establecidos en virtud del presente contrato. La **PRIMERA PARTE** realizará el descuento que proceda en la próxima factura de la **SEGUNDA PARTE** que corresponda para pago.
   b. La **SEGUNDA PARTE** será responsable de toda la matrícula activa en servicios relacionados en la corporación. Sufragarán los gastos y honorarios por cada caso dejado de servir en los cuales incurra la **PRIMERA PARTE** por los servicios dejados de ofrecer por la **SEGUNDA PARTE**.
   c. La **SEGUNDA PARTE** será responsable del pago cuando por su causa se tengan que proveer servicios a través de otro proveedor y/o por Remedio Provisional. Cuando se trate de servicios provistos a través de otro proveedor de la agencia, la **SEGUNDA PARTE** será responsable del pago correspondiente al periodo de servicios no provistos. Por otra parte, cuando se trate de servicios provistos a través de un proveedor de Remedio Provisional, la **SEGUNDA PARTE** será responsable del pago correspondiente de los servicios por el resto del año escolar. En ambos casos, los pagos se descontarán de las facturas que someta la **SEGUNDA PARTE** a la **PRIMERA PARTE**.
   d. La **SEGUNDA PARTE** documentará las visitas de servicios en el sistema de información el mismo día en que se lleven a cabo. De conformidad con la parte VIII (b) establecida más adelante en esta sección, sanciones se aplicarán a los siete (7) días de haberse ofrecido el servicio y no haber sido el dato actualizado en el sistema.

II. **Proceso de Evaluación:**
   a. Cuando la **SEGUNDA PARTE** no logre servir al estudiante citado, y proceda a devolver (electrónicamente) el referido al CSEE o su representante autorizado, deberá documentar en sistema las gestiones realizadas para citar en tres (3) ocasiones a dicho servicio con la justificación correspondiente, según sea el caso. Cuando no se haya realizado la evaluación en el término establecido de sesenta (60) días, sin justificación para ello, se procederá a aplicar una multa de **diez dólares ($10.00)** por cada referido a evaluación devuelto.
   b. La **SEGUNDA PARTE** estará obligada a entregar los informes comprensivos de la evaluación inicial en original y copia, siguiendo los formularios provistos por la **PRIMERA PARTE**, y entrarlo al Sistema de información del Programa de Educación Especial en siete (7) días calendario después de la fecha de evaluación. Además, entregará todo informe de evaluación adicional y de reevaluación, en original y copia, dentro de quince (15) días calendario a partir de la fecha de la evaluación, exceptuando los casos en que se haya solicitado una reevaluación expedita, la cual se regirá por los parámetros establecidos para la evaluación inicial. Estos informes serán anejados de igual manera en el Sistema de información del Programa de Educación Especial. Durante la vigencia del contrato, la **PRIMERA PARTE**, mediante comunicado, notificará al proveedor cualquier cambio que pudiera surgir, para la entrega de los informes de evaluación. La **SEGUNDA PARTE** estará comprometida a cumplir con las solicitudes de la **PRIMERA PARTE**. De no cumplirse con los términos establecidos por la **PRIMERA PARTE**, las multas, sanciones y gastos en que



incurra o se encuentre incurso la **PRIMERA PARTE**, por razón del incumplimiento, correrán por cuenta de la **SEGUNDA PARTE**.

i. **Diez dólares ($10.00)** por cada informe de evaluación inicial dejado de adjuntar en sistema dentro de siete (7) días calendario posteriores a la fecha de evaluación, según la Sección II, b de la cláusula **DÉCIMA SÉPTIMA**.

ii. **Diez dólares ($10.00)** por cada informe de evaluación inicial dejado de adjuntar en sistema dentro de quince (15) días calendario posteriores a la fecha de evaluación.

iii. **Dos dólares ($2.00)** adicionales por cada día calendario de demora en adjuntar en sistema el informe de evaluación inicial, después de quince (15) días calendario después de la fecha de la evaluación.

iv. **Cien dólares ($100.00)** adicionales cuando el proceso de adjuntar en sistema el informe de evaluación inicial ocurra después de treinta (30) días calendario a partir de la fecha de evaluación y no medien circunstancias excepcionales (fenómenos naturales, enfermedad incapacitante del especialista u otra de similar seriedad). El incurrir en forma repetida en esta práctica será razón suficiente para que no se le refieran estudiantes para este servicio y la **PRIMERA PARTE** podrá rescindir este contrato.

v. **Diez dólares ($10.00)** por cada informe de evaluación adicional o reevaluación dejado de adjuntar en sistema después de quince (15) días calendario, posteriores a la fecha de la evaluación.

vi. **Diez dólares ($10.00)** por cada referido a evaluación devuelto cuando la **PRIMERA PARTE** identifique, que no ha mediado justificación para no haber realizado la misma;

vii. **Diez dólares ($10.00)** por cada referido devuelto cuando hayan transcurrido sesenta (60) días de coordinada una evaluación adicional o reevaluación, no se haya realizado la misma y no medie evidencia en sistema de las tres (3) citas.

viii. **Diez dólares ($10.00)** por cada informe de evaluación donde la **PRIMERA PARTE** identifique, que no cumple en establecer con alguno de estos requerimientos: diagnóstico en su disciplina, frecuencia, duración, modalidad, tiempo estimado de servicios, justificación al recomendar evaluaciones adicionales, y Anejo IV, documento que se adjunta al informe de evaluación, cuando se recomiendan servicios de intervención.

III. **Resumen de resultados de servicios de intervención**

a. **Diez dólares ($10.00)** por cada caso identificado por la **PRIMERA PARTE** donde se incumpla con la redacción en la plataforma del *Resumen de Resultados de Servicios de Intervención* conforme al procedimiento establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

IV. **Plan de Intervención**

a. **Diez dólares ($10.00)** diarios por cada *Plan de Intervención* dejado de subir o redactar en el sistema hasta que se cumpla con la determinada acción conforme lo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

b. **Diez dólares ($10.00)** por cada revisión del *Plan de Intervención* que no fuera adjuntado al sistema o trabajado en sistema, dentro del límite de tiempo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

V. **Servicios de Intervenciones**

a. **Diez dólares ($10.00)** por cada servicio vinculado (momento en que el referido se otorga a la corporación a través del sistema) que no sea procesado como asignado o denegado según corresponda en periodo de cinco (5) días después de vinculado.

b. **Diez dólares ($10.00)** por cada servicio que no sea admitido dentro del periodo de quince (15) días después de asignado.

c. **Doscientos dólares ($200.00)** cuando exista evidencia de que la corporación no está proveyendo el servicio individual a un estudiante referido y cuando el especialista no tiene el veinte por ciento (20%) de espacios en relación con su matrícula total para atender casos individuales o en el hogar, constituirá una

violación a los requerimientos de la Agencia lo que conllevará la imposición de una sanción de $200.00 dólares. Esta sanción se descontará de las facturas sometidas.

d. **Cien dólares ($100.00)** por cada referido cuya sesión de intervención no haya sido documentada en el sistema a los siete (7) días de transcurrida la misma.

e. **Descuento de la tarifa total por sesión** cuando se identifique que ésta fue ofrecida grupal según definidos en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I, a más de cuatro (4) estudiantes, o de dos (2) estudiantes en las intervenciones grupales de menos de cuarenta y cinco (45) minutos.

f. **Doscientos dólares ($200.00)** por especialista para el que no se genere solicitud de dispensa que autorice a supervisar sobre la cantidad estipulada de especialistas según detallado en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

g. **Diez dólares ($10.00)** por cada servicio admitido que no se haya registrado una intervención para el estudiante en un periodo de siete (7) días después de admitido, sin que medie adecuada justificación. **Dos dólares ($2.00)** adicionales por cada día calendario de demora luego del octavo (8) día.

VI. **Traslado de Expediente:**
a. **Diez dólares ($10.00)** por cada día de demora en la entrega de expedientes de un estudiante por traslado de servicios o cuando el expediente sea solicitado.
b. **Diez dólares adicionales ($10.00)** por cada caso que no cuente con el Informe de Alta/Baja cuando corresponda según establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.
c. **Descuento** equivalente a los expedientes devueltos por motivo de traslado, de la totalidad de servicios no provistos: cuando el expediente no cuente con los documentos que sustentan la provisión de los servicios o no cuenten con la debida justificación para no haber sido provistos.
d. **Retención de desembolso de las facturas pendientes a pago** cuando la **SEGUNDA PARTE** conoce que no continuará servicios en el próximo año fiscal y no ha devuelto electrónica ni físicamente los expedientes de los estudiantes, al CSEE de la región educativa correspondiente durante el mes de julio.

VII. **Servicios Compensatorios:**
a. **Doscientos dólares ($200.00)** por el incumplimiento con reposiciones pendientes de ofrecer por causas atribuibles a la **SEGUNDA PARTE**, de acuerdo a lo establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.
b. **Descuento** a la factura equivalente a los servcios no provistos o a los que incurra la **PRIMERA PARTE** cuando por razones atribuibles a la **SEGUNDA** tengan que ser provistos por otro proveedor al mismo o a mayor costo. Ello luego de los 10 días que se conceden para identificar el recurso que continuará con la provisión de servicios. Se entenderá por "razones atribuibles": ausencias por enfermedad prolongada de especialistas, especialistas en licencia por maternidad, renuncia de especialista, cierre de corporación o cualquier otra instancia atribuible a la **SEGUNDA PARTE**.
c. **Descuento** a la factura del costo de los servicios que por causas atribuibles a la **SEGUNDA PARTE** tuvieran que ser ofrecidos por otro proveedor, durante el año escolar siguiente. El incumplimiento reiterado por la **SEGUNDA PARTE** con el ofrecimiento de servicios compensatorios, por causas atribuibles al proveedor, podrá ser motivo para rescindir este contrato.
d. **Cien dólares ($100.00)** en aquellos casos en que se aprueben servicios de reposición durante el verano y no se haya completado el análisis de cierre conforme establecido en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I.

VIII. **Proceso de facturación:**
a. Una penalidad del tres por ciento (3%) del monto de la factura será aplicada a toda aquella factura entregada después de los treinta (30) días de ofrecidos los servicios.

IX. **Calidad de Servicio:**
a. **Cien dólares ($100.00)** cuando la **PRIMERA PARTE** identifique y documentando detalladamente, establezca que los estudiantes son atendidos en



violación a la Ley 194-2000, Carta de Derechos y Responsabilidades del Paciente, conforme descrita en la Parte I, inciso 5 de este contrato.

b. **Doscientos dólares ($200.00)** por cada señalamiento si como resultado de los procesos de monitoria de la UMERS, se identifica la no utilización de los formularios establecidos en la Guía para la Provisión de Servicios Relacionados 2021-2022, Anejo I. Estas partidas se descontarán de las facturas que someta la **SEGUNDA PARTE** a la **PRIMERA PARTE**.

c. **Doscientos dólares ($200.00)** por la incomparecencia o ausencia de especialistas o profesionales convocados a las reuniones profesionales o adiestramientos coordinados según establecido en la Guía para la Provisión de Servicios Relacionados, Anejo I. La **PRIMERA PARTE** podría, además, requerirle a la **SEGUNDA PARTE** que el especialista no provea servicios bajo este contrato. Estas partidas se descontarán de las facturas que someta la **SEGUNDA PARTE** a la **PRIMERA PARTE**.

d. **Quinientos dólares ($500.00)** cuando la **PRIMERA PARTE** identifique y documente instancias en que la **SEGUNDA PARTE** da un trato diferente o que pueden ser consideradas discriminatoria a los estudiantes referidos por la **PRIMERA PARTE** y a quienes da servicio, en virtud de este contrato, al compararse con el trato que observa para con sus clientes en la práctica privada. Estas partidas se descontarán de las facturas que someta la **SEGUNDA PARTE** a la **PRIMERA PARTE**.

e. **Quinientos dólares ($500.00) cuando la PRIMERA PARTE identifique incumplimiento de la SEGUNDA PARTE en realizar el proceso de autoevaluación o monitoria interna para mantener y monitorear la calidad de sus servicios, así como cuando la SEGUNDA PARTE identifique incumplimiento con las acciones correctivas emitidas en Informes de Monitoria de la UMESR.**

La **PRIMERA PARTE** adviene a la determinación de establecer durante la vigencia del contrato la inactivación y reactivación de multas resultantes de situaciones generadas por complicaciones con el sistema electrónico, mediante notificación vía memorando.

**DÉCIMA OCTAVA: VIGENCIA:** Este contrato entrará en vigor <u>a partir del 3 de enero del 2022</u> y estará vigente hasta el <u>30 de junio de 2022.</u> Sin embargo, la **PRIMERA PARTE**, a su entera discreción y por cualquier motivo, podrá dar por terminado el contrato mediante notificación escrita a la **SEGUNDA PARTE** con treinta (30) días de antelación a la fecha en la que desea su terminación, sin derecho a compensación adicional alguna, excepto lo devengado bajo el mismo hasta esa fecha. No obstante, lo anterior, el requisito de notificación previa no será de aplicación cuando:

1. contra la **SEGUNDA PARTE** o cualquiera de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices se determine causa probable para el arresto o resulten convictos por cualquier delito contra el erario, la fe y la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

2. la **SEGUNDA PARTE** o cualquiera de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices incurra en negligencia o abandono de deberes o incumpla con el presente contrato.

3. cuando la **PRIMERA PARTE** entienda que existe una situación fiscal extraordinaria que amerite un recorte inmediato de gastos.



**DÉCIMA NOVENA: INFORMES:** La **SEGUNDA PARTE** realizará y redactará aquellos estudios, informes y documentos que sean necesarios y pertinentes para el buen desempeño de las funciones que se le encomienden bajo las disposiciones de este contrato. La **SEGUNDA PARTE** vendrá, además, obligada a rendir aquellos informes que le solicite la **PRIMERA PARTE** sobre los servicios que se compromete a prestar y los deberes que se compromete a cumplir en virtud de este contrato. Disponiéndose que todo material escrito, incluyendo informes, minutas de reuniones, datos y otros que resulten de los estudios, proyecciones y gestiones que lleve a cabo la **SEGUNDA PARTE** en cumplimiento de las disposiciones de este contrato, serán de la exclusiva propiedad de la **PRIMERA PARTE**, sin que esto conlleve compensación adicional para la **SEGUNDA PARTE**. La **SEGUNDA PARTE** no podrá divulgar, publicar, distribuir o de alguna manera utilizar los mismos sin la autorización previa por escrito de la **PRIMERA PARTE**. La **PRIMERA PARTE** queda también expresamente autorizada y con pleno derecho para dar a dicha producción el uso oficial que estime conveniente.

**VIGÉSIMA:** La **SEGUNDA PARTE** coordinará y se reunirá con la **PRIMERA PARTE** para garantizar una política pública uniforme en cualquier gestión que realice, cuando fuere aplicable.

Convienen las **PARTES** que la **SEGUNDA PARTE** no podrá alterar los procedimientos establecidos o tomar decisiones que afecten sustancialmente la política administrativa establecida por la **PRIMERA PARTE** sin el previo consentimiento por escrito de ésta.

**VIGÉSIMA PRIMERA: INTERÉS PECUNIARIO**: La **PRIMERA PARTE** certifica que, a su mejor entender, ninguno de sus empleados, o funcionarios, o algún miembro de su unidad familiar tiene, directa o indirectamente, interés pecuniario en este contrato y que ningún funcionario o empleado de la Rama Ejecutiva tiene interés en las ganancias o beneficios producto de este contrato o ningún otro interés que afecte adversamente el mismo.

**VIGÉSIMA SEGUNDA**: La **SEGUNDA PARTE** certifica que los servicios a prestarse bajo las disposiciones de este contrato no interfieren con ningún otro contrato o acuerdo de brindar servicios que tenga actualmente o que pueda tener en el futuro con cualquier otra Agencia del gobierno estatal o municipal.

**VIGÉSIMA TERCERA: CONFLICTO DE INTERESES**: La **SEGUNDA PARTE** reconoce que, en el descargo de su función profesional, tiene un deber de lealtad completa hacia la Agencia, lo que incluye el no tener intereses adversos a dicho organismo gubernamental. Estos intereses adversos incluyen la representación de clientes que tengan o pudieran tener intereses encontrados con la **PRIMERA PARTE**. Este deber, además, incluye la obligación continua de divulgar a la **PRIMERA PARTE** todas las circunstancias de sus relaciones con clientes y terceras personas y cualquier interés que pudiera influir en la **PRIMERA PARTE** al momento de otorgar el contrato o durante su vigencia.

La **SEGUNDA PARTE** certifica que no está representando ni representará durante la vigencia de este contrato, intereses particulares en casos o asuntos que involucren conflictos de intereses o de política pública contra la parte contratante. La **SEGUNDA PARTE** representa intereses encontrados cuando, en beneficio de un cliente, es su deber promover aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente anterior, actual o potencial. Representa intereses en conflicto, además, cuando su conducta es descrita como tal en las normas de ética reconocidas en su profesión o en las leyes y reglamentos del Gobierno de Puerto Rico.

En contratos con sociedades o firmas constituirá una violación de esta prohibición el que alguno de sus directores, asociados o empleados incurra en la conducta aquí descrita. La **SEGUNDA PARTE** evitará aún la apariencia de la existencia de intereses encontrados.

La **SEGUNDA PARTE** reconoce el poder de fiscalización del jefe de la Agencia en relación con el cumplimiento de las prohibiciones aquí contenidas. De entender el jefe de la Agencia que existen o han surgido intereses adversos para con la **SEGUNDA PARTE**, le notificará por escrito sus hallazgos y su intención de resolver el contrato en el término de treinta (30) días calendario. Dentro de dicho término, la **SEGUNDA PARTE** podrá solicitar una reunión a dicho jefe de Agencia para exponer sus argumentos a dicha determinación de conflicto, la cual será concedida en todo caso. De no solicitarse dicha reunión en el término mencionado, o de no solucionarse la controversia durante la reunión concedida, este contrato quedará resuelto.

**VIGÉSIMA CUARTA: CONTRATISTAS INDEPENDIENTES**: **AMBAS PARTES** libre y voluntariamente, acuerdan que bajo los términos de este contrato no se están estableciendo relaciones de patrono y empleado y la **SEGUNDA PARTE** actuará y prestará servicios en todo momento como contratista independiente y convienen en que ninguno de los miembros de ésta, así como los que trabajan para ésta, reclamarán a la **PRIMERA PARTE** por concepto de vacaciones, licencias por enfermedad, retiro, bono de navidad, póliza de responsabilidad profesional ni seguro social federal.

A la **SEGUNDA PARTE** no se le efectuarán retenciones ni descuentos de sus honorarios para el pago del seguro social federal. La **PRIMERA PARTE** podrá retener del pago debido a la **SEGUNDA PARTE** por servicios prestados el siete (7) por ciento que dispone la Sección 143C de la *Ley de Contribuciones Sobre Ingresos* de 1954, según enmendada, de conformidad con los reglamentos aprobados por el Secretario de Hacienda.

La **SEGUNDA PARTE** se obliga, como condición necesaria a este contrato, a presentar las certificaciones, relevo y documentos que acrediten su situación contributiva que sean requeridos por la **PRIMERA PARTE** o su representante autorizado.

La **SEGUNDA PARTE** es responsable de rendir sus planillas y pagar las aportaciones correspondientes al Seguro Social Federal y al Negociado de Contribuciones Sobre Ingresos del Departamento de Hacienda, por cualquier cantidad tributable como resultado de los ingresos devengados bajo este contrato. La **PRIMERA PARTE** notificará al Negociado de Contribuciones Sobre Ingresos los pagos y reembolsos que sean efectuados a la **SEGUNDA PARTE**.

La **SEGUNDA PARTE** será responsable de asegurar con el Fondo del Seguro del Estado a sus empleados y todo el personal que preste servicios bajo este contrato. Copia de la *Póliza del Fondo del Seguro del Estado* se une y hace formar parte de este contrato.

**VIGÉSIMA QUINTA:** *Federal Health Insurance Portability and Accountability Act of 1996* **(Ley HIPAA):** La **SEGUNDA PARTE**, de ser identificada como entidad cubierta sujeta a los términos de la Ley HIPAA, deberá cumplir con todas sus disposiciones y requisitos en adición a todas las leyes estatales y federales relacionadas a la confidencialidad de la información de salud de los pacientes y la política y prácticas de confidencialidad de la institución. De igual forma, y **en la medida que sea aplicable**, la **SEGUNDA PARTE** deberá cumplir con las disposiciones de la Ley 243-2006, Ley para disponer la política pública sobre el uso del Número de Seguro Social como verificación de identificación y la protección de su confidencialidad.

**VIGÉSIMA SEXTA:** La **PRIMERA PARTE** retendrá de los pagos efectuados a la **SEGUNDA PARTE** de acuerdo al Boletín Informativo Número 18-24 ("BI RI 18-24") de Rentas Internas del Departamento de Hacienda, del 31 de diciembre de 2018, y del Código de Rentas Internas para un Nuevo Puerto Rico Ley 1-2011, según enmendada, lo siguiente:

- \_\_\_\_ Certifico que no poseo certificado de relevo total ni parcial emitido por el Departamento de Hacienda de Puerto Rico, por lo que se retendrá el diez por ciento (10%).
- \_\_\_\_ Certifico que poseo un certificado de relevo parcial, Modelo S.C. 2755, emitido por el Departamento de Hacienda de Puerto Rico, por lo que se retendrá el seis por ciento (6%).
- \_\_\_\_ Certifico que poseo un certificado de relevo total, Modelo S.C. 2756, emitido por el Departamento de Hacienda de Puerto Rico, por lo que no se efectuará retención alguna.
- \_\_\_\_ Certifico que la institución está excluida de retención alguna conforme a la sección 1062.03 del Código de Rentas Internas para un Nuevo Puerto Rico de 2011, según enmendado.
- \_\_\_\_ Certifico que la Institución está excluida totalmente a la retención del diez por ciento (10%) provista en la sección 1062.03 del Código de Rentas Internas para un Nuevo Puerto Rico de 2011, según enmendado.
- \_\_\_\_ Copia Certificación del Registro de Comerciante.
- \_\_\_\_ Certificación de existencia o autorización para hacer negocios en Puerto Rico (del Departamento de Estado).
- \_\_\_\_ Certificación de Relevo de Retención.
- \_\_\_\_ Resolución Corporativa, Certificando persona autorizada a firmar.
- \_\_\_\_ Certificación de Deuda del Fondo Seguro del Estado.
- \_\_\_\_ Póliza de Seguro

"Según se establece en la Ley 48-2013, todo contrato por servicios profesionales, consultivos, publicidad, adiestramiento u orientación, otorgado por una Agencia, dependencia o instrumentalidad del Gobierno de Puerto Rico, corporación pública, así como la Asamblea Legislativa y la Rama Judicial, se le impondrá una aportación especial equivalente al uno punto cinco (1.5) por ciento del importe total de dicho contrato, el cual será destinado al Fondo General. Esta aportación especial será retenida por el Departamento de Hacienda o por el ente gubernamental, según sea el caso, al momento de hacer el pago por los servicios prestados. La Aportación Especial por Servicios Profesionales establecida en esta Ley no podrá, bajo ninguna circunstancia, tomarse o interpretarse como un crédito o deducción contra la contribución sobre ingresos determinada."

Además, la **SEGUNDA PARTE** no tendrá derecho a reclamar de la **PRIMERA PARTE** beneficios marginales que normalmente se ofrecen a empleados, por lo que la **SEGUNDA PARTE** se hace responsable de efectuar los pagos de la aportación patronal e individual, a través del Negociado de Rentas Internas Federal, a la Oficina del Seguro Social Federal.

**VIGÉSIMA SÉPTIMA:** La **SEGUNDA PARTE** reconoce y acepta que la **PRIMERA PARTE** retenga de los pagos efectuados a la **SEGUNDA PARTE** aquellas cantidades que obedezcan a deudas por concepto de contribuciones sobre ingresos, sobre propiedad mueble e inmueble (CRIM), arbitrios, seguro por desempleo, incapacidad temporal, seguro social para choferes, derechos de licencias, deudas de intereses, dividendos, rentas y otras distribuciones similares y de cualesquiera otras adeudadas por la **SEGUNDA PARTE** al Gobierno de Puerto Rico.

**VIGÉSIMA OCTAVA:** La **SEGUNDA PARTE** presentará, a la firma de este contrato y formará parte del mismo, las siguientes certificaciones:

(X) Certificado de Registro Único de Proveedores de Servicios Profesionales Número 202101066

( ) Certificación de haber rendido Planillas de Contribución sobre Ingresos por los pasados cinco (5) años.
( ) Certificación de No Deuda del Departamento de Hacienda.
( ) Certificación de No Deuda del Centro de Recaudaciones de Ingresos Municipales (CRIM).
( ) Certificación de No Deuda del Departamento del Trabajo y Recursos Humanos (por seguro de desempleo, seguro por incapacidad temporero y/o seguro social para choferes).
( ) Certificación de No Deuda del Fondo del Seguro del Estado.
( ) Certificado de Estado de Cumplimiento de ASUME.
( ) Certificación de razones por las cuales el contribuyente no está obligado por ley a rendir la planilla de contribución sobre ingresos de individuos del Departamento de Hacienda (Modelo SC 2781).
( ) Corrección Manual a la Certificación de Radicación de Planillas de Contribución sobre Ingresos del Departamento de Hacienda (Modelo SC 2888).
( ) Certificación de Radicación de Planillas de Contribución sobre Ingresos del Departamento de Hacienda (Modelo SC 6088).
( ) Certificación de Deuda (Modelo SC 6096)
( ) Certificación de Deuda del Impuesto sobre Ventas y Uso-IVU (Modelo SC 2929)
( ) Copia del Certificado de Registro de Comerciantes (Modelo SC 2918)
( ) Certificación de Radicación de Planillas de Impuesto sobre Ventas y Uso-IVU (Modelo SC 2942).
( ) Certificación de Deuda del Impuesto sobre Ventas y Uso-IVU (Modelo SC 2927).

**VIGÉSIMA NOVENA:** La **SEGUNDA PARTE** certifica y garantiza:

\_\_\_\_ La **SEGUNDA PARTE** certifica que no tiene obligación alimentaria para menores y someterá una Certificación Negativa, expedida por la Administración para el Sustento de Menores (**ASUME**) o una Declaración Jurada bajo apercibimiento de perjurio o desacato, de que no tiene obligación alimentaria alguna.

\_\_\_\_ La **SEGUNDA PARTE** certifica y garantiza que está obligada a pagar una pensión alimentaria y está cumpliendo con los pagos. La **SEGUNDA PARTE** someterá una certificación de estado de cumplimiento expedida por la Administración para el Sustento de Menores (**ASUME**).

\_\_\_\_ La **SEGUNDA PARTE** certifica que está obligada a pagar una pensión alimentaria y que tiene deuda por dicho concepto y está cumpliendo con un Plan de Pago. La **SEGUNDA PARTE** someterá una Certificación para el Sustento de Menores (**ASUME**) respecto a que está cumpliendo con los términos y condiciones del Plan de Pago.

Expresamente se reconoce que ésta es una condición esencial del presente contrato, y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibido bajo este contrato.

**TRIGÉSIMA: CERTIFICACIÓN CONTRIBUTIVA:** La **SEGUNDA PARTE** certifica y garantiza que ha cumplido sus responsabilidades contributivas durante los pasados cinco (5) años, incluyendo la radicación de planillas de contribución sobre ingresos.

\_\_\_\_\_ La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido su planilla contributiva durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Gobierno de Puerto Rico. También certifica que no tiene ninguna deuda contributiva, entendiéndose por deuda contributiva cualquier deuda por concepto de contribución sobre ingresos, arbitrios, contribución sobre la propiedad mueble e inmueble, incluyendo cualquier imposición de carácter especial, derechos de licencias, contribuciones retenidas en el origen en el pago de salarios a empleados, en el pago de intereses, dividendos, rentas, salarios y otros emolumentos a individuos o por cualquier otro concepto. A esos efectos, la **SEGUNDA PARTE** someterá una **Certificación Negativa de Deuda del Departamento de Hacienda** y una **Certificación de Deuda** expedida por el **Centro de Recaudación de Ingresos Municipales (CRIM)**, las cuales se anejan y forman parte de este contrato.

\_\_\_\_\_ La **SEGUNDA PARTE** certifica y garantiza que al momento de suscribir este contrato ha rendido planilla contributiva durante los cinco (5) años previos a este contrato y que se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo. Copia del plan o de los planes de pago o una **Certificación de Deuda** emitida por el **Departamento de Hacienda** y una **Certificación de Deuda** expedida por el **CRIM**, se anejan y forman parte del expediente de este contrato. **Si no está acogido a un plan de pago,** la **SEGUNDA PARTE** se compromete a cancelar dicha deuda mediante retención con cargo a los



pagos que tiene derecho a recibir por virtud del presente contrato. En el caso de que **la deuda exceda el valor del contrato**, la **SEGUNDA PARTE** ha establecido un plan de pago con la Agencia correspondiente, el cual debe formalizarse antes de la aprobación del contrato y el mismo deberá estipular pagos.

_____ La **SEGUNDA PARTE** certifica su condición contributiva mediante declaración jurada adjunta y someterá una **Certificación de Deuda** emitida por el **Departamento de Hacienda** y una **Certificación de Deuda** expedida por el **CRIM**, las cuales se anejan y forman parte de este contrato.

_____ La **SEGUNDA PARTE** certifica que tiene una deuda contributiva, pero que la misma está en proceso de revisión o ajuste en el Departamento de Hacienda y/o en el CRIM. La **SEGUNDA PARTE** expresamente reconoce y se obliga a que, de no proceder la revisión o el ajuste, se compromete a cancelar dicha deuda mediante retención con cargo a los pagos que tiene derecho a recibir por los servicios prestados bajo este contrato. La **SEGUNDA PARTE** someterá una **Certificación de Deuda** emitida por el **Departamento de Hacienda,** una **Certificación de Deuda** expedida por el **CRIM** y una **Declaración Jurada** certificando que la deuda está en proceso de revisión.

_____ La **SEGUNDA PARTE** tiene deuda contributiva con el Departamento de Hacienda o con el CRIM pero se encuentra en revisión administrativa. De no proceder la revisión o el ajuste, la **SEGUNDA PARTE** se compromete a cancelar la deuda mediante la retención. Además, tiene la obligación de informar a la **PRIMERA PARTE** sobre el proceso de revisión. Expresamente se reconoce que ésta es una condición del presente contrato y, de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tenga que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.

_____ La **SEGUNDA PARTE** está obligada a requerir a todas las personas que presten servicios bajo este contrato (socios, miembros, subcontratistas), que provean una certificación de deuda contributiva. El original de dicha certificación tiene que ser enviada acompañada de todos los documentos que evidencien la misma a la **PRIMERA PARTE**, Área de Contratos, Departamento de Educación.

**TRIGÉSIMA PRIMERA:** La **SEGUNDA PARTE** certifica que no se encuentra en incumplimiento de la Ley 168-2000, según enmendada, mejor conocida como *Ley para el Fortalecimiento del Apoyo Familiar y Sustento de Personas de Edad Avanzada*. Si la **SEGUNDA PARTE** está sujeta por orden judicial o administrativa a la realización de alguna aportación económica o cumplir con alguna obligación, a tenor con la Ley 168-2000, certifica que se encuentra en cumplimiento con el pago de la aportación económica o con la obligación impuesta. Certificación de información falsa expondrá a la **SEGUNDA PARTE** a las consecuencias que acarrea el declarar información falsa y conllevará la terminación automática del contrato.

**TRIGÉSIMA SEGUNDA:** La **SEGUNDA PARTE** certifica que está debidamente organizada y que existe válidamente como una corporación al amparo de las leyes del Gobierno de Puerto Rico con completo poder y autoridad para realizar todas las actividades por ésta realizada (o actualmente contempladas a realizarse). La **SEGUNDA PARTE** es dueña, posee o ha obtenido todas las licencias, permisos, órdenes u otras autorizaciones gubernamentales necesarias para realizar sus negocios en el Gobierno de Puerto Rico, según actualmente realizados. La **SEGUNDA PARTE** certifica que las transacciones contempladas en este contrato están dentro de sus poderes y han sido debidamente autorizadas por resolución corporativa a esos efectos. Además, somete Certificado de Buena Pro (*Good Standing*) que garantiza que cumplió con enviar sus informes corporativos anuales al Departamento de Estado del Gobierno de Puerto Rico y que está al día en sus asuntos con dicha Entidad Gubernamental.

**TRIGÉSIMA TERCERA:** La **PRIMERA PARTE** se reserva el derecho a solicitar información trimestral relacionada al fiel cumplimiento de todas y cada una de las cláusulas del contrato. Esto incluye, sin limitarse, a los servicios ofrecidos a los estudiantes, la calidad de esos servicios y cualquier otro factor medible que implique el cumplimiento estricto de lo pactado. Esta evaluación será constante y servirá de base para cualquier decisión futura en términos de la vigencia y/o resolución del contrato.

**TRIGÉSIMA CUARTA:** La **PRIMERA PARTE** podrá comenzar un proceso de investigación conducente a corroborar cualquier alegación que sea sometida ante su consideración relacionada al fiel cumplimiento de las cláusulas de este contrato. La **SEGUNDA PARTE** tendrá la obligación de proveer cualquier información pertinente a la querella presentada, siempre que ésta esté relacionada a cualquier cláusula de este contrato y a permitirle la entrada a los funcionarios de la **PRIMERA PARTE**, para investigar y observar los procedimientos que se llevan a cabo en las facilidades de la **SEGUNDA PARTE**, siempre y cuando la visita esté relacionada con las disposiciones de este contrato. La **PRIMERA PARTE** puede realizar la visita sin avisar a la **SEGUNDA PARTE**.



**TRIGÉSIMA QUINTA: NEGLIGENCIA O ABANDONO:** La negligencia, el abandono o el incumplimiento de las disposiciones de este contrato o conducta impropia de la **SEGUNDA PARTE** se considerará una violación a este contrato y constituirá causa suficiente para dar por terminado el mismo inmediatamente, sin necesidad de una notificación previa. Si la **PRIMERA PARTE** opta por la disolución del presente contrato, la **SEGUNDA PARTE** se abstendrá de realizar cualquier gestión ulterior, a no ser que su inacción pueda perjudicar a la **PRIMERA PARTE** o implique conducta profesional inadecuada, en cuyo caso notificará a la **PRIMERA PARTE** de tal gestión.

**TRIGÉSIMA SEXTA: AMBAS PARTES** reconocen que este contrato es el único acuerdo que existe entre las partes con relación a los servicios aquí discutidos y sus cláusulas solamente podrán ser enmendadas por acuerdo escrito entre las Partes.

**TRIGÉSIMA SÉPTIMA: AMBAS PARTES** reconocen que los servicios que se ofrecerán mediante este contrato no constituyen las funciones de un puesto disponible en estos momentos en los planes vigentes de clasificación y retribución del Departamento de Educación. Los mismos no pueden ser prestados por el personal regular existente, ya que el Departamento no cuenta con los recursos humanos suficientes con la preparación académica y la experiencia profesional necesaria para ofrecer en estos momentos los servicios a ser contratados.

**TRIGÉSIMA OCTAVA: INDELEGABILIDAD:** Los servicios que prestará la **SEGUNDA PARTE** serán **INDELEGABLES. LA SEGUNDA PARTE** no podrá subcontratar, tampoco podrá contratar peritos, ceder ni traspasar los servicios objeto de este contrato sin el consentimiento previo y por escrito de la **PRIMERA PARTE**. La delegación de éstos será causa suficiente para dar por terminado este contrato. El incumplimiento de esta cláusula hará responsable a la **SEGUNDA PARTE** por cualesquiera daños y perjuicios que fueran causados a la **PRIMERA PARTE**, ya sean éstos en forma directa o indirecta.

**TRIGÉSIMA NOVENA: RESPONSABILIDAD POR DAÑOS Y PERJUICIOS:** La **SEGUNDA PARTE** será responsable por cualesquiera daños y perjuicios causados por el desempeño negligente o el abandono de las obligaciones asumidas bajo este contrato y releva así de cualquier obligación y responsabilidad a la **PRIMERA PARTE**.

**CUADRAGÉSIMA: AMBAS PARTES** se comprometen a no discriminar contra ningún empleado o candidato a empleo relacionado con este contrato por motivo de raza, color, sexo, orientación sexual, identidad de género, edad, creencia religiosa, nacimiento, origen o identificación étnica o nacional, ideología política, discapacidad o impedimento físico o mental, condición socioeconómica, información genética, haber sido víctima de violencia doméstica o acecho, estatus de veterano, orientación sexual, identidad de género o estatus migratorio o marital de las partes. De igual forma, se compromete a promover un ambiente libre de hostigamiento sexual. Conforme a las disposiciones de la *Ley de Derechos Civiles* de 1964, en el presente contrato, el uso de los términos niño, estudiante, representante, director, especialista, profesional, maestro, padres, tutor, menor, joven, infante, preescolar, servidor público, personal, cliente y cualquier otro que pueda hacer referencia a ambos sexos, incluye tanto el género masculino como femenino.

**CUADRAGÉSIMA PRIMERA:** La **SEGUNDA PARTE** certifica que no tiene litigios en proceso contra ninguna Agencia, entidad o instrumentalidad gubernamental al momento del otorgamiento de este contrato. Además, la **SEGUNDA PARTE** certifica que no ha sido acusada ni encontrada culpable de ningún delito contra el erario, la fe y función pública o que envuelva propiedad o fondos públicos, ya sean estatales o federales.

Este contrato podrá quedar resuelto **inmediatamente** por causa de que contra la **SEGUNDA PARTE** o cualquiera de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices, se determine causa probable para el arresto o resulte culpable de algún delito contra el erario, la fe y función pública o, que envuelva propiedad o fondos públicos, ya sean estatales o federales, y la **SEGUNDA PARTE** tendrá que reintegrar a la **PRIMERA PARTE** toda suma de dinero recibida bajo este contrato.



**CUADRAGÉSIMA SEGUNDA:** La **SEGUNDA PARTE** no recibe paga o compensación alguna por servicios regulares prestados bajo nombramiento a otra entidad pública.

**CUADRAGÉSIMA TERCERA:** La **SEGUNDA PARTE** certifica que ni ella ni ninguno de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices han sido convictos ni se ha encontrado causa probable para su arresto por ningún delito contra el erario, la fe y la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública en el ámbito federal o estatal.

Este contrato será resuelto inmediatamente en caso de que contra la **SEGUNDA PARTE** se determine causa probable para el arresto por la comisión de algún delito contra el erario, la fe o

la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

La **SEGUNDA PARTE** reconoce su deber de informar de manera continua durante la vigencia del contrato cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública en el ámbito federal o estatal. Esta obligación deberá ser de naturaleza continua durante todas las etapas de la contratación y ejecución del contrato.

La **SEGUNDA PARTE** certifica que durante los diez (10) años anteriores a la formalización del contrato, la persona o entidad contratante no ha cometido ningún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública en el ámbito federal o estatal.

**CUADRAGÉSIMA CUARTA: TRANSFERENCIA DE CONOCIMIENTOS:** En todo lo pertinente y aplicable, la **SEGUNDA PARTE** se obliga expresamente a la transferencia de conocimientos al personal de la **PRIMERA PARTE** durante el término del presente contrato, lo cual es una condición esencial y obligatoria a su cumplimiento del mismo. La violación de esta disposición será causa suficiente para que la **PRIMERA PARTE** pueda dejar sin efecto esta obligación y la **SEGUNDA PARTE** tendrá que reintegrar a la parte contratante toda suma de dinero recibida.

**CUADRAGÉSIMA QUINTA:** La **SEGUNDA PARTE** certifica que conoce y ha leído la Ley 1-2012, según enmendada, conocida como *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*. Cualquier infracción a las disposiciones de esta Ley podrá ser procesada civil y administrativamente, según sea el caso. La **SEGUNDA PARTE** se compromete a regirse por las disposiciones de la Ley 2-2018, mejor conocida como *"Código Anticorrupción para el Nuevo Puerto Rico"*, el cual establece el Código de Ética para Contratistas, Suplidores y Solicitantes de Incentivos Económicos del Gobierno de Puerto Rico. Además, la **SEGUNDA PARTE** hace constar que conoce las normas de ética de su profesión y asume responsabilidad por sus acciones.

**CUADRAGÉSIMA SEXTA: INTERPRETACIÓN:** Este contrato estará sujeto en todo momento a las leyes y reglamentos del Gobierno de Puerto Rico y será interpretado de acuerdo a los mismos.

**CUADRAGÉSIMA SÉPTIMA:** La **SEGUNDA PARTE** se compromete a cumplir con lo establecido en la "Propuesta de Servicios" que sometió y ésta formará parte de este contrato en todo aquello que sea cónsono con la legislación, reglamentación y normativa por las que se rige la **PRIMERA PARTE**.

**CUADRAGÉSIMA OCTAVA:** La **SEGUNDA PARTE** tiene el deber de diligencia por velar que la **PRIMERA PARTE** cumpla con todas las formalidades contractuales. Todo servicio prestado por la **SEGUNDA PARTE** sin un contrato válido, firmado y vigente o su enmienda no será pagado por la **PRIMERA PARTE** y la **SEGUNDA PARTE** asumirá le pérdida. Es deber y obligación del contratista exigirle a la agencia el cumplimiento escrito de las formalidades contractuales antes de prestar cualquier servicio. Las resoluciones de pago o enmiendas retroactivas son nulas e ilegales.

**CUADRAGÉSIMA NOVENA: CLAUSULA DE SERVICIOS INTERAGENCIALES:** Ambas partes contratantes reconocen y acceden a que los servicios contratados podrán ser brindados a cualquier entidad de la Rama Ejecutiva con la cual la entidad contratante realice un acuerdo interagencial o por disposición directa de la Secretaría de la Gobernación. Estos servicios se realizaron bajo los mismos términos y condiciones en cuanto a horas de trabajo y compensación consignados en este contrato. Para efectos de esta cláusula, el término "entidad de la Rama Ejecutiva" incluye a todas las agencias del Gobierno de Puerto Rico, así como las instrumentalidades y corporaciones públicas y a la Oficina del Gobernador.

**QUINCUAGÉSIMA: POLÍTICA DE REVISIÓN DE CONTRATOS DE LA JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO:** Las Partes reconocen que el CONTRATISTA ha presentado la certificación titulada "Requisito de Certificación del Contratista" requerida de conformidad con la Política de Revisión de Contratos de la Junta de Supervisión y Administración Financiera de Puerto Rico, vigente a partir del 6 de noviembre de 2017 y según enmendada el 30 de octubre de 2020, firmada por el Director Ejecutivo del Contratista (u otro funcionario con una posición o autoridad equivalente para emitir tales certificaciones). Se incluye anejo a este contrato, copia firmada del "Requisito de Certificación del Contratista".

**QUINCUAGÉSIMA PRIMERA: CLÁUSULA DE TERMINACIÓN:** La Secretaría de la Gobernación tendrá la facultad para dar por terminado el presente contrato en cualquier momento.

Contrato de Servicios Profesionales Proveedores de Evaluación y Terapias 2021-2022
Página 15 de 15

**QUINCUAGÉSIMA SEGUNDA: ULTRAVIRES:** CONFORME A DERECHO Y LAS NORMAS QUE RIGEN LA CONTRATACIÓN DE SERVICIOS, LOS COMPARECIENTES EN ESTE CONTRATO, TOMAN CONOCIMIENTO DE QUE NO SE PRESTARÁ SERVICIO ALGUNO BAJO ESTE CONTRATO, HASTA TANTO SEA FIRMADO POR AMBAS PARTES, DE LA MISMA FORMA, NO SE CONTINUARÁ DANDO SERVICIOS BAJO ESTE CONTRATO A PARTIR DE SU FECHA DE EXPIRACIÓN, EXCEPTO QUE A LA FECHA DE EXPIRACIÓN EXISTA YA UNA ENMIENDA FIRMADA POR AMBAS PARTES. NO SE PAGARÁN SERVICIOS PRESTADOS EN VIOLACIÓN A ESTA CLÁUSULA, YA QUE CUALQUIER FUNCIONARIO QUE SOLICITE Y ACEPTE SERVICIOS DE LA OTRA PARTE EN VIOLACIÓN A ESTA DISPOSICIÓN, LO ESTÁ HACIENDO SIN AUTORIDAD LEGAL ALGUNA. ASÍ COMO TAMPOCO PODRÁ EXIGIRSE NINGUNA PRESTACIÓN O CONTRAPRESTACIÓN OBJETO DE ESTE CONTRATO HASTA TANTO EL MISMO SE HAYA PRESENTADO PARA REGISTRO EN LA OFICINA DEL CONTRALOR A TENOR CON LO DISPUESTO EN LA LEY NÚM. 18 DEL 30 DE OCTUBRE DE 1975, SEGÚN ENMENDADA.

En testimonio de lo cual, **LAS PARTES** contratantes suscriben este contrato, obligándose así formalmente a cumplir con todas sus cláusulas y condiciones.

En San Juan, Puerto Rico, hoy __14__ de __diciembre__ de 2021.

_____
Lcdo. Eliezer Ramos Parés
Secretario Interino
Seguro Social Patronal # 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
**PRIMERA PARTE**

_____
Alfredo Pedro Gotay Zorrilla
Director Ejecutivo
MCG and the Able Child at Centro
Multidisciplinario del Caribe, Inc.
Seguro Social Patronal # 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
**SEGUNDA PARTE**

**O POR DELEGACIÓN EXPRESA,**

_____
Lcdo. Jesús González Cruz
Subsecretaria de Administración

**DEPARTAMENTO DE EDUCACIÓN**

Sometido por : Dra. Jessica Díaz Vázquez
Secretaria Asociada Interina
Educación Especial
Fecha : 1 dic 2021

Revisión Legal
Por: _____
Fecha: Dic/2/21

## HOJA DE TARIFAS 2021-2022 (enmienda vigente a partir del 1ro de octubre de 2021)

| | TRATAMIENTO | COSTO/UNIDAD |
|---|---|---|
| 1. | Terapias grupales | $22.00 |
| 2. | Intervenciones Municipio Vieques y Culebra | $25.00 |
| 3. | Pasajes ida y vuelta a Vieques | $60.00 (presentar pases de abordaje) |
| 4. | Pasaje ida y vuelta a Culebra | $80.00 (presentar pases de abordaje) |
| 5. | Viaje marítimo ida y vuelta a Vieques | $4.00 (presentar recibo de pago) |
| 6. | Viaje marítimo ida y vuelta a Culebra | $4.50 (presentar recibo de pago) |
| 7. | Terapias individuales | $30.00 (individual de 45 y/o hasta 60 minutos) $25.00 (individual de 30 minutos) |
| 8. | Intervenciones Física individuales | $30.00 (individual de 45 y/o hasta 60 minutos) $25.00 (individual de 30 minutos) |
| 9. | Intervenciones Física grupales | $20.00 |
| 10. | Intervenciones Ocupacional individuales | $35.00 |
| 11. | Intervenciones Ocupacional grupales | $22.00 |
| 12. | Intervenciones ofrecidas en el hogar (Homebound) | $30.00 |
| 13. | Intervenciones de Tipo Consultoría | $20.00 (30 minutos), $25.00 (45 minutos), $30.00 (60 minutos) |
| 14. | Intervenciones de Tipo Instruccional | $20.00 |
| 15. | Intervenciones Complementarias Colaborativas | $18.00 (30 minutos), 20.00 (45 minutos), $22.00 (60 minutos) |
| 16. | Intervención Integrada | $17.00 por especialista |
| 17. | Admisión | $10.00 |
| 18. | Discusión Plan de Tratamiento | $10.00 |
| 19. | Participación en reunión de COMPU | $15.00 (30 minutos), $30.00 (60 minutos) |
| 20. | Terapia oromotora | $65.00 |

| | EVALUACIÓN INICIAL Y TRIANUALES | COSTO/UNIDAD |
|---|---|---|
| 21. | Patología del Habla | $125.00 |
| 22. | Psicología | $125.00 |
| 23. | Terapia Física | $125.00 |
| 24. | Audiología | $65.00 |

| | REEVALUACIONES | COSTO/UNIDAD |
|---|---|---|
| 25. | Patología del Habla | $80.00 |
| 26. | Psicología | $80.00 |
| 27. | Psicoeducativa | $95.00 |
| 28. | Física | $80.00 |
| 29. | Ocupacional | $80.00 |

| | EVALUACIÓN ADICIONALES | COSTO/UNIDAD |
|---|---|---|
| 30. | Patología del Habla | $55.00 |
| 31. | Psicología | $55.00 |
| 32. | Psicoeducativa | $70.00 |
| 33. | Física | $55.00 |
| 34. | Ocupacional | $55.00 |
| 35. | Audiología | $55.00 |

| | 36. OTRAS EVALUACIONES | COSTO/UNIDAD |
|---|---|---|
| 37. | Pediatra | $38.00 |
| 38. | Oftalmólogo | $38.00 |
| 39. | ENT | $38.00 |
| 40. | Neurólogo | $50.00 |
| 41. | Psiquiatra | $60.00 |
| 42. | Optometría | $30.00 |
| 43. | ABR | $130.00 |
| 44. | Low Vision | $50.00 |
| 45. | Disfagia | $110.00 |

46. Asistencia Tecnológica (AT) $100.00 por especialista participante
47. (Evaluaciones en AT tiene requisito de que uno de los evaluadores sea maestro de educación especial certificado en AT)
48. Autismo Infantil $100.00 por especialista participante