

*EXHIBIT 1*

2017-AF0 140

EDUCOMEP

**COMMONWEALTH OF PUERTO RICO
DEPARTMENT OF EDUCATION
HATO REY, PUERTO RICO
SERVICES CONTRACT**

This Agreement made this **14** day of **october**, 2016 by and between the **DEPARTMENT OF EDUCATION OF THE COMMONWEALTH OF PUERTO RICO**, represented by Rafael Román Meléndez, of legal age, married, professor and resident of Bayamón, Puerto Rico, in his official capacity as Secretary of Education, hereinafter designated as the **FIRST PART** and **Corporación de Servicios Educativos de Yabucoa (COSEY)**, a corporation organized under the laws of the Commonwealth of Puerto Rico, represented in this act by its President, Roque Díaz Tizol, of legal age, married, and neighbor of Yabucoa, Puerto Rico, hereinafter designated as the **SECOND PART**.

**WITNESSETH**

**WHEREAS**, the **FIRST PART** has made certain projections to determine the children in the private schools to be served by the **SECOND PART**, eligible to participate in a supplemental education program that meets the criteria established by Title I, Part A, Section 1117 of the Elementary and Secondary Education Act of 1965 (ESEA), as amended, hereinafter referred to as "Title I".

**WHEREAS**, based on such projections the **FIRST PART** has estimated the number of children eligible to be served by the **SECOND PART** under the terms and conditions of this Agreement. The amount of Title I funds allocated for service to students in each private school is determined based on the total number of low-income students attending each private school who reside in Title I participating public school attendance areas.

**WHEREAS**, the **FIRST PART**, in the exercise of the powers that have been conferred to it by the Constitution of the Commonwealth of Puerto Rico and by the laws that the **FIRST PART** administers, contracts the professional services of the **SECOND PART** to serve eligible children who are enrolled in private elementary and secondary schools in various school districts throughout Puerto Rico.

**WHEREAS**, Title I requires that local and state educational agencies provide educational services to children who meet the criteria in Section 1115(b) and are enrolled in private schools. The **FIRST PART** has the obligation to provide equitable Title I services to certain eligible students who attend private schools and are identified as at risk of failing by the **FIRST PART** in consultation with private school officials to comply with legal requirements. The **SECOND PART** under the direction of the **FIRST PART** will provide the services that are indicated below.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants hereinafter set forth, the parties agree as follows:

1. The **FIRST PART** designates the Equitable Services Coordinator of the Federal Affairs Office as its representative in all matters related to this Contract.

2. The **SECOND PART** shall provide to the **FIRST PART** the services, for eligible children enrolled in private schools, that are described in the **"Appendix B"** of this contract for current school year and summer program (2016-2017), as established in the Proposal which is hereby incorporated as part of this contract as **"Appendix A"** for current school year and in accordance with the terms of this contract.



To be eligible for Title I services, a private school child must reside in a participating public school attendance area and must meet the requirements in section 1115(b) of the ESEA, as amended. The private school officials in consultation with the **FIRST PART** will use multiple, educationally related, objective criteria in selecting children to participate in the Title I program and will provide the list to **SECOND PART**. The list of eligible children will be prepared ranking the child that is at the highest risk of failing to the one with a lesser need in the forms provided by the **FIRST PART**.

Consistent with the number of eligible children identified under section 1115(b) of Title I of the ESEA, as amended, the **SECOND PART** provides a Title I program to

private school children, employing methods and instructional strategies for improving academic achievement that have been shown to be effective through scientifically based research. The **SECOND PART** must also give primary consideration to provide extended learning time based on the curriculum of the school where they provide the Title I services.

Based on the needs of the children to be served and decisions made by the **FIRST PART** following timely and meaningful consultation with private school officials, the **SECOND PART** must provide an instructional program that not only supplements but also is well coordinated with the instruction that the private school children are receiving in their regular classrooms. This program should complement classroom instruction and should not be a separate instructional program. Team teaching is not allowed.

The services will be provided in reading and language skills in English and Spanish, Mathematics and Science based on the number of students in the list of private schools (included in **Appendix B**) who are eligible to receive educational services under Title I of the ESEA, as amended, from K to 12th grade (or any grade level in between) upon the educational needs of the students selected for participation by private schools representatives. The services to be provided are described in **Appendix D** hereto, and include, but are not limited to: (1) instructional; and (2) equitable participation of parents and teachers of private school participants in parent and family engagement and (3) professional development as required by Section 1117 of the ESEA, as amended (34 CFR 200.62 through 200.67).

3. The **SECOND PART** shall provide the goods, supplies, instructional equipment and materials, personnel and services necessary to achieve the desired results for those students described in **"Appendix E"** hereto. If the actual number of students receiving services varies from the estimated number of students indicated on **"Appendix E"**, the **SECOND PART** shall provide equipment, goods, and services necessary to serve the actual number of students served. The level of services, equipment and supplies will be equal to the amount of Title I funds that the private school children from low income families generated. The evidence of the teacher's qualifications and certification is to become part of the human resources file kept by the **SECOND PART**. The pooling method is used to assign the funds to the participating private schools.

The **SECOND PART**, in consultation with private school officials, shall make the necessary arrangements to provide effective parent and family engagement activities and professional development activities for teachers of private school participants. The **FIRST PART** in conjunction with the **SECOND PART** shall evaluate and approve the content and effectiveness of the parent and family engagement and professional development activities provided by the **SECOND PART** to determine their effectiveness in increasing student achievement.

4. The Federal funds assigned pursuant to this contract have already been segregated by the **FIRST PART** into the following categories: instructional or educational costs and expenses, parent and family engagement, professional development and administrative expenses.

    a. Instructional or educational costs and expenses are defined under this contract as: teacher salaries, including fringe benefits, and instructional materials, supplies, computers, and computer peripherals in providing services directly to the students. The **SECOND PART** shall submit to the **FIRST PART** each month, a report delineating the amount of instructional dollars expended.

    b. Parent and family engagement expenses may include, but are not limited to: lecturer's fees. The **FIRST PART** only will pay expenses similar to the standardized costs for the public schools.

    c. Professional Development expenses: may include, but are not limited to: lecturer's fees. The **FIRST PART** only will pay costs standardized published in Circular Letter No. 17-2015-2016 for Professional Development activities.

    In the services by group cost, the **SECOND PART** accepts that in case it provides the services authorized to less than the ninety percent (90%) of the amount of participant, included in the Circular Letter No. 17-2015-2016, the

Contract between the Department of Education and Corporación de Servicios Educativos de Yabucoa (COSEY)
Page 3 of 16

**FIRST PART** will determine the cost by participant and will pay to the **SECOND PART** the cost corresponding to the number of participating served. This acceptance applies to the service workshop, technical assistance, demonstration classes, groups of study, seminars/conferences, mentoring or "coaching", conference or any other type of training authorized under the Circular Letter No. 17-2015-2016. The **SECOND PART** shall submit to the **FIRST PART** evidence of the number of participants served in each service to be invoiced.

d. Administrative Expenses are those costs that occur in support of the instructional services portion of the program. They may include, but are not limited to the coordinator's salary and fringe benefits, cost of replacement equipment, furniture, leases, permits, utilities, office space, clerical assistance, travel (trips outside PR are not permitted), etc., and Capital Expenses in schools that do not have facilities to provide the services to the eligibility students. The term 'capital expenses' means—(1) expenditures for noninstructional goods and services, such as the purchase, lease, or renovation of real and personal property, including mobile educational units and leasing of neutral sites or spaces; (2) insurance and maintenance costs; (3) transportation; and (4) other comparable goods and services. The **SECOND PART** shall submit to **FIRST PART** each month, a report delineating the amount of administrative dollars expended.

Under no circumstances shall the **SECOND PART** use federal funds received pursuant to a specific category of this agreement to purchase goods or services that are used for any purpose that is not related to the specific category originally assigned. Furthermore, under no circumstances shall any funds received by the **SECOND PART** pursuant to this agreement and classified as Instructional be utilized for the purchase or acquisition of goods or services that are not within the scope of the Title I ESEA program as contemplated by this Agreement.

5. The **SECOND PART** will submit to the **FIRST PART** the following reports:

   A. <u>Quarterly Progress Reports</u>

   The **SECOND PART** shall submit to the **FIRST PART** a quarterly progress report ten (10) business days after the end of the service period. The report should include the following information:
   a. tasks completed and problems encountered;
   b. description of the program services and activities, especially new services, activities, methods and their results;
   c. a description of the progress of the parent and family engagement program and program effectiveness;
   d. attendance summary of professional development;
   e. a description of the progress of professional development and program effectiveness;
   f. recommendations for improvement as applicable;
   g. list of equipment bought and location.

   B. <u>Progress Reports Dates</u>

   Summary of participant's progress and performance by school;
   a. December 31, 2016
   b. March 31, 2017
   c. June 30, 2017
   d. July 31, 2017 - Final Progress Report

   C. <u>Annual and Final Report</u>

   The **SECOND PART** shall submit an annual report of the program that covers the period from the beginning date of the contract through July 31, 2017. The report shall include the elements from the monthly reports as well as the following components:
   a. Executive Summary
   b. Table of Contents
   c. List of Tables
   d. Purpose of report



- e. Introduction/Program characteristics. Provide at a minimum the following information:
    i. Description of service provided including the researched based instructional models;
    ii. Program goals and objectives;
    iii. Description of participants (gender and age); these reports should include a measure of the annual academic progress of the students during the year.
- f. Program Statistics (Provide at a minimum the following information and provide Tables whenever possible)
    i. Provide by session the total number of participants in attendance;
    ii. By school, provide session dates and times;
    iii. By school, provide mean hours of attendance by each participant and subject area;
    iv. The number of teachers or full-time employees by private school.
- g. Program Results
    i. Provide a short description, by school, of the program including grades and subject areas as well as when the program was provided. The report shall include:
        a. The results of the pre and post-tests performed by the company selected by the **FIRST PART**, demonstrating whether participating children are meeting, or making annual yearly progress toward meeting the student academic achievement standards. The **FIRST PART** has established that seventy-five percent (75%) of the students participating in the Program should achieve five (5) points or more improvement in achievement standards for each subject area from the pre and post-tests results;
        b. A description of program services and activities, especially new services, activities, methods, etc. and the results of their use;
        c. An evaluation of the parent and family engagement activities to use the findings to improve the strategies for parent and family engagement;
        d. An evaluation of professional development activities conducted for eligible private school staff members;
        e. Special problems encountered and solutions applied or anticipated.
    ii. **FIRST PART** regional statisticians will verify if the **SECOND PART** met the Title I of the ESEA, as amended, standards set by the **FIRST PART**.
- h. Conclusions
- i. Recommendations for Improvement

6. The pre and post-tests shall be selected by the **FIRST PART** and prepared and administered by a third party. The **SECOND PART** will coordinate with the participating schools and the company selected by the **FIRST PART** for the administration of the pre and post-tests. The pre-test shall be administered during the first fifteen (15) days after the students are referred for services. The post-test will be administered from April 15, 2017 to April 30, 2017. The **FIRST PART** will provide the **SECOND PART** the dates of the pre and post-tests for each year of the contract. All students participating in the Title I program, including those receiving counseling, will be administered the pre and post-tests.

The results of the post-test shall be submitted to the **FIRST PART** by not later than May 30, 2017.

7. As requested by the **FIRST PART**, the **SECOND PART** will conduct studies, will field reports, shall provide and draw up documents that are relevant and necessary for the effective performance of the obligations assumed under the provisions of this agreement. Provided that all written materials, including reports, minutes of meetings, manuals, teaching materials, information, workshops and others resulting from studies, projections and efforts carried out by the **SECOND PART** in compliance with the provisions of this agreement, will be for the use, disclosure, reproduction, and unlimited distribution by the **FIRST PART**, without carrying

additional compensation for the **SECOND PART**. The **FIRST PART** is also expressly authorized and with full right to give to such production the use official that it deems suitable. This will not imply a violation of any possible copyrights the **SECOND PART** may have upon these materials, workshops and concepts provided in relation with the development of the proposal included as **Appendix A**. The **SECOND PART** may not disclose, publish, distribute or in any way use the same without the previous written authorization of the **FIRST PART**.

8. The **SECOND PART** agrees to conduct an audit and an attestation by an independent certified public accountant licensed to practice in Puerto Rico. The independent certified public accountant shall participate in an external quality control review program as promulgated by the American Institute of Certified Public Accountants ("AICPA"). Those audits shall be conducted in accordance with Generally Accepted Auditing Standards (GAAS) and other standards of the profession.

   The audits will consist of the following:

   a. A full financial audit conducted in accordance with Generally Accepted Auditing Standards to the entity providing the services under this contract for its most recent fiscal year.

   b. An "Agreed upon Procedures Engagement" under the Attestation Standards No. 10 issued by the AICPA. The "Agreed Upon Procedures" Report should include test on the coding and classifications of charges for Instructional or educational and Capital expenses as defined on paragraph 4.d. above to determine that they were expenses, services and activities directly falling within the respective category, are in compliance with the cost principles establish in 2 CFR 200-400 to 475 and certifying that the amounts utilized did not exceed the amounts authorized under each category of expenses.

   The results of the audit and the attestation procedures will be submitted to the **FIRST PART** on or before July 31, 2017 or not later than ten (10) days after the Reports have been submitted to the **SECOND PART** by its auditors, whichever occurs first.

   The **SECOND PART** shall adopt financial, administrative and procurement standards applicable to those required to entities financially supported with federal funds, as indicated in the applicable Section of the Title 34 of the Code of Federal Regulation Parts 75, 76, 77, 79, 81, 82, 84, 86, 97, 98 and 99 (34 CFR 75 to 99) and the applicable Section of the Title 2 of the Code of Federal Regulation Part 200 (2 CFR 200), as may be revised or amended. This requirement is also mandatory for the portion of funds used as a result of this contract for "Capital Expenses".

   In addition to the requirements set forth in this paragraph, the **FIRST PART** shall have the right to conduct its own monitoring or audit procedures whenever it is deemed necessary.

9. Private school officials have the right to complain to the **FIRST PART** if they believe that the **SECOND PART** did not consider their views in the provision of services or did not provide the services in accordance with all applicable statutes, regulations or program plans. After reviewing all allegations, the **FIRST PART** will notify both parties the determination to resolve the complaint.

10. The **SECOND PART** will coordinate and meet with the **FIRST PART** or with their authorized representative or with representatives of other agencies or branches of the Commonwealth of Puerto Rico to guarantee a uniform public policy in any steps that it takes, when applicable.

11. The **SECOND PART** shall not subcontract the performance of the services specified in paragraph number "2" of this Agreement. The **SECOND PART** will be responsible for hiring the personnel that will offer the services under this Agreement. The **FIRST PART** shall have no obligation regarding the working schedule, wages and any other claim on the part of the personnel recruited by the **SECOND PART** under this Agreement.

12. The parties represent and warrant that no employee of the **FIRST PART** has direct or indirect monetary interest in the present Contract.

13. The **SECOND PART** recognizes that in the performance of its professional

functions it owes complete loyalty to the **FIRST PART**, which includes not having adverse interests to said governmental organization. These adverse interests include the representation of clients that may have or could have interests contrary to the **FIRST PART**. Furthermore, this duty includes the continuous obligation of disclosing to the **FIRST PART** all the circumstances of the relationship of the **SECOND PART** with clients and third persons and any interest that could have influenced the **FIRST PART** at the moment of awarding the Contract to the **SECOND PART**.

The **SECOND PART** represents conflicting interests when, in benefit of a client, it is its duty to promote that to which it must be opposed in compliance of its obligations to another prior client, current or potential. Furthermore, it represents conflict of interest when its conduct is contrary to such applicable professional ethical standards, or the laws and regulations of the Commonwealth of Puerto Rico.

In contracts with partnerships or corporations, it will constitute a violation of this prohibition if any of their directors, associates or personnel engages in the conduct described herein. The **SECOND PART** will avoid even the appearance of the existence of conflicting interest.

14. The **SECOND PART** recognizes the power of inspection of the **FIRST PART** in relation to the compliance of the prohibitions here contained. If the Secretary of Education understands that there exists or there have emerged adverse interests towards the **SECOND PART**, the **FIRST PART** will notify the **SECOND PART** of its findings in writing and its intention to rescind the Contract within thirty (30) days. Within such term, the **SECOND PART** will be able to request a hearing with the **FIRST PART** to raise its arguments to such conflict determination. The hearing will be granted in every instance. If such hearing is not requested by the said date or if the controversy is not satisfactorily solved during the hearing, this Contract shall be rescinded.

15. The **FIRST PART** agrees to pay the allowable costs incurred by the **SECOND PART** for the services provided according to the terms of this contract and subject to the current and future statutes and regulations up to a maximum of **six million two hundred sixty-seven thousand six hundred twenty-seven dollars ($6,267,627.00)** prior presentation of a invoices for the costs incurred for the services provided and duly certified by the **FIRST PART**.

    a. For the services to be provided under this contract, the **FIRST PART** will pay the **SECOND PART** the amounts under the following categories:

    1. Instructional or educational activities: a maximum amount of **four million five hundred sixty-one thousand five hundred thirty-one dollars ($4,561,531.00)** will be paid to the **SECOND PART** to provide all the educational services, educational equipment and educational materials to conduct the educational activities required under the proposal submitted by the **SECOND PART** and approved by the **FIRST PART**. Said proposal is hereby incorporated as **Appendix A** of this contract.

    2. The **SECOND PART** shall use up to a maximum of **seventy-two thousand five hundred fifty dollars ($72,550.00)** of the amount set aside for private schools under section 1116 of the ESEA, as amended, to provide effective parent and family engagement for each participating school eligible to receive educational services under Title I.

    3. The **SECOND PART** shall use up to a maximum of sixty-five percent (65%) of the amount set aside of the districtwide funds for private schools for carrying out Title I professional development activities to each participating school which represent up to a maximum of **one hundred eighty-three thousand seven hundred ninety-eight dollars ($183,798.00)**.

    4. Summer program activities: shall use up to a maximum of **two hundred thousand two hundred thirty dollars ($200,230.00)** to provide educational services, educational equipment and educational materials to conduct the educational activities during the summer program. Once the summer program activities are approved and funded, the minimum number of participating children per school cannot be limited by the **SECOND PART**.



5. Administrative activities and expenses: a maximum amount of **one million two hundred forty-nine thousand five hundred eighteen dollars ($1,249,518.00)** will be paid to the SECOND PART to provide all the administrative and support services, equipment and materials to assure the SECOND PART could carry the educational and instructional activities required under this contract.

   Services, equipment and materials shall be based on the amount of funds generated by private school students from low-income families.

   The **FIRST PART** will authorize to the **SECOND PART** the acquisition cost of capital expenses which is limited to expenditures for non-instructional goods and services such as the purchase, lease, and refurbishment of real and personal property, (including, but not limited to, mobile educational units and leasing of neutral sites or spaces) insurance and maintenance costs, transportation and other comparable goods and services. The **SECOND PART** will present to the **FIRST PART** their recommendations, specifications and prices of the equipment prior to its acquisition. The **SECOND PART** is encouraged to provide services within the private schools facilities. Management fee will be calculated and paid by the **FIRST PART** on the total amount of the monthly invoice, not including Capital Expense, Administrative expenses, parent and family engagement expenses and professional development activities expenses.

6. The amount invoiced under this paragraph 15 will be paid by the **FIRST PART** after previous presentation by the **SECOND PART** of monthly invoices, which shall be certified by the **FIRST PART** or its authorized representative. The **FIRST PART** has the right to request additional documentation and withhold payment until that additional documentation is supplied.

b. The **SECOND PART** will submit to the **FIRST PART** monthly invoices during the first ten (10) days of each calendar month.

   In the event that the **SECOND PART** submit invoices for payment after the first forty (40) day of the month following which will render services, the **SECOND PART** accepts that the **FIRST PART** perform an automatic adjustment to the invoice which will lead to a reduction of five percent (5%) of the total amount of the invoice. In case that the **FIRST PART** return to the **SECOND PART** the invoice to correct it the **SECOND PART** will have five (5) working days as from notification of the return to carry out corrections and submit it again. If this does not occur within such five (5) working days, the **SECOND PART** accepts that the **FIRST PART** makes automatic adjustment to the invoice which will lead to a reduction of five percent (5%) of the total amount of the invoice.

   The invoices shall include the following information:

   1. Instructional Expense Reports: The provider shall submit to the **FIRST PART** each month, a report delineating the amount of instructional dollars expended.

   2. Administrative Expenses Reports: The provider shall submit to the **FIRST PART** each month, a report delineating the amount of instructional dollars expended.

   3. Parent and family engagement expenses may include, but are not limited to: lecturer's fees.

   4. Professional Development expenses may include, but are not limited to: lecturer's fees.

   5. Educational Summer Program.

   The **FIRST PART** will provide to the **SECOND PART** the format for preparing the monthly invoices, which is hereby incorporated as part of this contract as **Appendix C**. The **SECOND PART** shall submit the invoices by the on line billing system of according to the procedure established by the **FIRST PART**. The **SECOND PART** will be responsible for the veracity and accuracy of the information provided in the online billing system. If the online billing system not be available, the **FIRST PART** will determine the procedure to follow for the

delivery of the invoices and shall notify it in writing to the **SECOND PART**. The **SECOND PART** certifies that the **FIRST PART** has delivered the documentation or User Manual from the supplier for the use of the online billing system.

c. The **FIRST PART** may retain payment under this contract in any of the above category until the **SECOND PART** submits all reports and other documents required by this contract. The **FIRST PART** has the right to request additional documentation if the documentation already submitted pursuant to the provisions of this contract does not reasonably address the contract requirements.

d. The payment of services rendered to the **SECOND PART** will be made from the projects financial allotment from the following account numbers or from other ccount or accounts with available funds:

**Instructional or educational Activities:**
E1290-222-01057200-06F-2017-00081-S010A160052G-A000232-06F-1290 ($4,462,563.00)
E1290-222-01057200-06F-2017-00081-S010A160052X-A000232-06F-1290 ($98,968.00)

**Section 1116 of ESEA:**
E1290-222-01057200-06F-2017-00081-S010A160052M-A000232-06F-1290 ($72,550.00)

**Professional Development Activities:**
E1290-222-01057200-06F-2017-00081-S010A160052X-A000232-06F-1290 ($183,798.00)

**Summer Program:**
E1290-222-01057200-06F-2017-00081-S010A160052Y-A000232-06F-1290 ($200,230.00)

**Administrative activities and expenses:**
E1290-222-01057200-06F-2017-00081-S010A160052I-A000232-06F-1290 ($1,249,518.00)

e. The **FIRST PART** agrees to comply with Puerto Rico Law, 3 L.P.R.A. §2301 through §2305 in delivering prompt payments to the **SECOND PART**.

16. During the term of this Agreement, the **SECOND PART** will maintain in full force and effect, and at its own expense, insurance policies covering public liability for personal injury or property damage in amounts of not less than the five hundred thousand dollars ($500,000.00) per person and one million dollars ($1,000,000.00) per accident as to personal injury and one hundred thousand dollars ($100,000.00) as to property damage, which shall designate the **FIRST PART** as additional insured party. The **SECOND PART** will submit evidence that it has obtained this insurance within ten (10) days after execution of this Contract. If, for any reason, the **SECOND PART** should fail to name the **FIRST PART** as an additional insured party in its public liability insurance, the **SECOND PART** will be responsible for any liability incurred by the **FIRST PART** as a result of this omission.

17. The **SECOND PART** will use fiscal controls and accounting procedures that guarantee the adequate disbursement of the federal funds received by virtue of this Contract and will make sure that these funds will be accounted separately from the funds of other Contracts or projects. The compliance of this obligation requires that the **SECOND PART** maintain documents that show the following:

  a. The funds received for instructional/educational activities, professional development and parent and family engagement.
  b. The form in which such funds were used.
  c. The total cost of the project.
  d. Any other document that facilitates an effective audit.

18. The **FIRST PART** shall be in control of all federal funds disbursed under the Title I program and shall have title to all materials, equipment, and property purchased with such funds. The federal funds granted pursuant to this Agreement shall not be used for the general testing and assessment of all students attending a private school. In accordance with federal regulations, such federal funds may only be used for the objectives and purposes of the Title I program, including but not limited to the annual assessment of identified Title I children participating in the Title I program.

19. The **SECOND PART** will purchase equipment, acquire material, supplies and other assets necessary to provide services. All equipment acquired with funds received under this Clause will be documented and maintained on a property ledger.

It is agreed that title to any equipment, computers, materials, supplies, etc., that already have been acquired under a previous Title I services contract, as well as those acquired by the **SECOND PART** under this Contract is, and will be, the property of the **FIRST PART**.

20. During the term of this Agreement, the **SECOND PART** shall be responsible for the custody and the maintenance and repair of all equipment, mobile units, computers, and other equipment, etc. acquired pursuant to this Agreement. The **SECOND PART** guarantees good and adequate performance of computers, printers, software and equipment acquired for the **FIRST PART** pursuant this Contract and shall undertake all necessary and convenient acts to ensure that the manufacturers comply with the terms and conditions of the guaranty of the computers, printers, software and equipment.

21. In any and all Educational and Capital acquisitions under this Agreement, the **SECOND PART** shall utilize a system of procurement that is in compliance with all federal and Puerto Rico procurement laws and regulations.

22. The **SECOND PART** will submit to the **FIRST PART** documentation related to the Educational and Capital property or equipment acquired with federal funds granted by virtue of this Contract and will maintain in its files copy of those documents, including:

    i. A description of the property or equipment.
    ii. Serial or identification number.
    iii. Origin of the property.
    iv. Date of acquisition.
    v. Cost of the property.
    vi. Percentage of federal contribution in the cost of the property.
    vii. Location, use of the property and conditions of the property or equipment.
    viii. Physical inventory of the property and equipment.
    ix. Labeled as property of Title I, Part A, Department of Education of Puerto Rico

    The **SECOND PART** shall not purchase, move or relocate, dispose of property or equipment without previous notice and written authorization from the Office of Federal Affairs of the Department of Education. The **SECOND PART** will submit a monthly report of the equipment and property purchase, move or relocated to the **FIRST PART**.

    The **SECOND PART** will be responsible for placing the property numbers assigned to the equipment or property by the **FIRST PART**.

    The **SECOND PART** must take measures to prevent the loss, vandalism, damage or theft of property acquired with Title I funds. If loss, damage, or theft of such property occurs, the **SECOND PART** shall inform in writing to the **FIRST PART** such occurrence within the next business day and will obtain and retain all police records, insurance claim forms, witness statements and other documents related to the loss, damage, or theft. These documents shall be made available to the **FIRST PART**, or its agent, upon demand.

23. The **SECOND PART** will make the necessary arrangements to expedite the visits of officials of the Department of Education of the Commonwealth of Puerto Rico and of the U.S. Department of Education, in order to observe fiscal and administrative capacity, as well as programmatic compliance with federal and state law. The **SECOND PART** specifically agrees to make its facilities and/or documents easily accessible to federal or state officials conducting monitoring visits.

24. The **SECOND PART** agrees that the program will be administered in accordance with all applicable statutes, regulations, program plans, and applications, including but not limited to: the Puerto Rico Department of Education Consolidated State Plan; Title I of the Elementary and Secondary Education Act of 1965, as amended; the General Education Provisions Act; applicable Section of the Title 2 of the Code of Federal Regulation Part 200 (2 CFR 200); all applicable civil rights laws; the Federal Internal Revenue Code; and the Puerto Rico Internal Revenue Code.

25. The **SECOND PART** certifies and guarantees that it does not discriminate under any circumstance on the basis of age, race, color, gender, birth, veteran status, political ideology, religion, social origin or condition, sexual orientation or gender identity, physical or mental disability; or for being a victim of domestic violence,

sexual aggression or harassment, stalking or any other discriminatory cause during the provision of the services to be rendered to the **FIRST PART** pursuant to this contract.

26. This Contract will be in effect from the effective date of the agreement to July 31, 2017 subject to the availability of federal funds, the limitations of Act No. 147 of June 18, 1980, as amended, and the approval of the agencies that by law or regulation may intervene. The obligations under paragraphs 8, 22 and 32 hereof shall survive the termination of this Contract. At the option of the **FIRST PART**, the term of this Contract can be extended by written agreement by both parties. With previous written notification to the **SECOND PART** thirty (30) days in advance, the **FIRST PART** will be able to rescind this Contract, before the expiration date, without any additional compensation to the **SECOND PART**, except for what has been accrued under the same until that date.

The services that will provide the **SECOND PART** to the **FIRST PART** from the effective date of the contract to December 31, 2016 shall not exceed fifty percent (50%) of the total amount of the contract. The **SECOND PART** may invoice for services until December 31, 2016 that exceed fifty percent (50%) of the total amount of the contract only if the **FIRST PART** previously authorized them in writing.

27. The negligence in the compliance or noncompliance of the provisions in this Contract or inappropriate conduct of the **SECOND PART** will constitute sufficient cause to rescind the same forthwith, without the need of a previous notice. If the **FIRST PART** opts for a resolution of the present Contract, the **SECOND PART** shall abstain from performing any ulterior effort unless its inaction could damage the **FIRST PART** or implicate inadequate professional conduct, in which case, it will notify the **FIRST PART** of such effort.

28. The **SECOND PART** certifies and guarantees that it has complied with its federal and Puerto Rico tax liabilities during the past five (5) years, including filing income tax returns on earnings. Furthermore, it certifies that at present it does not have any debt with the Commonwealth of Puerto Rico by said concept, or from personal or real estate taxes, or local excise taxes. The **SECOND PART** specifically represents and warrants that all Commonwealth and federal tax returns have been filed and all obligations have been paid. It is explicitly recognized that this is an essential condition of the present Contract, and if the above certification should prove to have been untruthful in all or in part, this will be sufficient cause for the **FIRST PART** to annul the same and the **SECOND PART** shall refund the **FIRST PART** all the funds received under this Contract.

29. The **SECOND PART** is an independent contractor and not an employee or agent of the **FIRST PART**. Consequently, the actions of the **SECOND PART** shall not be binding on the **FIRST PART**.

30. The **SECOND PART** acknowledges that its employees shall not be entitled to claim any of the fringe benefits granted to government employees.

31. The **FIRST PART** will withhold at source from the **SECOND PART** any amount for income tax purposes. The **FIRST PART** will notify to the Income Tax Bureau the payments and reimbursements made to the **SECOND PART**. In addition, the **SECOND PART** is responsible for making payments of employer and employee contributions to the social security through the Internal Revenue Service.

32. If the **SECOND PART** has a waiver with regard to the withholding at source of payment for services rendered by corporations issued by the Treasury Department, the **FIRST PART** will not withhold at source any amount from payments made to the **SECOND PART**, until December 31, 2016. On or before such date, the **SECOND PART** shall file with the **FIRST PART** a new waiver certificate for payments to be made during 2017.

33. The **SECOND PART** will keep the documents generated in connection to this Contract for a period of six (6) years after the same has expired. If an audit has been initiated and a finding remains unsolved at the end of the said period, the documents will be kept until the resolution of said finding.

34. The **SECOND PART** recognizes that persons duly authorized by the **FIRST PART** or state or federal officials will have access and right to examine the documents

generated in relation to the present Contract. The covenants in this clause shall survive the termination of this Agreement.

35. The **SECOND PART** shall include the name of the **FIRST PART** and the legal reference of the Federal Program, which provides the funds for the project under this contract, in all written material, prepared as part of the services described in the proposal, and for which the **SECOND PART** receives a compensation from the **FIRST PART**.

36. The **SECOND PART** assures that the services shall be rendered in good manner and professionally. If the **SECOND PART** fails to render the services in such manner, the **FIRST PART** will be entitled to contract other persons for the rendering of said services, and the **SECOND PART** shall pay to the **FIRST PART** any cost or expense incurred and attributable to such services if the fees of the **SECOND PART** have been paid or for the amount in excess of the fees under this Agreement for said services if the fees have not been paid by the **FIRST PART**.

37. This contract may not be assigned or transferred in any way by the **SECOND PART** to any other natural or legal person.

38. The **SECOND PART** shall defend, indemnify and hold the **FIRST PART** and its employees harmless from all losses, liabilities, damages, costs, expenses and claims incurred by the **FIRST PART** by reason of a defense against any such claim or for any judgment that may fall against it as a result of any damage or loss that may occur to persons or property by reason of any act or occurrence arising out of or in connection with the activities performed by the **SECOND PART** under this Agreement.

39. The **SECOND PART** warrants that the services to be rendered to the **FIRST PART** pursuant to another contract subscribed with the **FIRST PART**, if any, are not in conflict with the services to be rendered under this Contract.

40. The **SECOND PART** will present to the signature of this Agreement and will be part of this contract the following certifications:

    (X) Certificate of eligibility of the Strategic Network of Services to the Citizen.

    (X) Certificate of Merchant Registry issued by Puerto Rico's Department of Treasury.

    ( ) Certification of Good Standing of State Department.

    ( ) Authorization of the Department of State for doing business in Puerto Rico.

    ( ) Certification of filing income tax returns on earnings for the past five (5) years.

    ( ) Certification of debt issued by Puerto Rico's Department of Treasury.

    ( ) Certificate of filing sales and use tax form issued by Puerto Rico's Department of Treasury.



    ( ) Certificate of sales and use tax debt issued by Puerto Rico's Department of Treasury.

    (X) Certification of debt of the Center of Collection of Municipal Revenue (CRIM).

    ( ) Certificate of filing personal property tax form for the past five (5) years issued by Puerto Rico's Center for Collection of Municipal Revenues (CRIM).

    ( ) Certification of debt of the Department of Labor and Human Resources for Insurance of Unemployment or Temporary Disability.

    ( ) Certification of debt of the Department of the Labor and Human Resources for Insurance Public Health for Chauffeurs.

    ( ) Certification of fulfillment with orders of the Puerto Rico Child Support Enforcement Agency (ASUME).

    ( ) Certificate of debt issued by Puerto Rico's State Insurance Fund.

    ( ) Certification of eligibility of the Puerto Rico Bidder's Registry.

    (X) Sworn Statement of Criminal Records.

41. The **SECOND PART** acknowledges and accepts that the **FIRST PART** may retain from the amounts it owes to the **SECOND PART**, those amounts that are necessary to satisfy or pay any debts for concept of tax revenue, on personal or real property (CRIM), duties, unemployment insurance, disability, chauffeurs social security, and debts for interests, dividends, rents and other similar distributions made by the **SECOND PART** and any other debt which the **SECOND PART** owes to the Government of Puerto Rico.

42. The **SECOND PART** guarantees and certifies that the execution of this contract will be in accordance to:

    a. Executive Order 11246 of September 24, 1965, entitled "Equal Employment Opportunity" as amended by Executive Order 11375 of October 13, 1967, and as supplemented by Department of Labor regulations (41 CFR chapter 60),

    b. The Copeland "Anti-Kickback" Act (18 USC 874) as supplemented in Department of Labor regulations (29 CFR part 3),

    c. The Davis-Bacon Act (40 USC 276a-7) as supplemented by Department of Labor regulations (29 CFR part 5), and

    d. Sections 103 and 107 of the Contract Work Hours and Safety Standards Act (40 USC 327-330) (as supplemented by Department of Labor regulations (29 CFR part 5).

    e. Section 1605 of the "Use of American Iron, Steel, and Manufactured Goods" of the American Recovery and Reinvestment Act of 2009,

    f. The "False Claims Act" (31 U.S.C. 3729 to 3733), and

    g. All the federal, state and local health, security and civil rights laws.

43. The **FIRST PART** may require the reimbursement of funds assigned, paid or transferred to the **SECOND PART** if the **SECOND PART** fails to comply with any state or federal laws or regulations, in the execution of this contract.

44. The **SECOND PART** certifies that neither it, neither any of their officials, employees and subsidiaries have been convicted, neither it has been found probable cause for their arrest, for any crime against the treasury, the public faith or function; against the government exercise; or that involves funds or public property, in the federal or state scope.

45. This contract may be canceled **IMMEDIATELY** in case that there is a determination of probable cause for arrest against the **SECOND PART** for the commission of any crime against the treasury, the public faith or function; against the government exercise; or that it involves funds or public property, at the federal or state scope.

46. The **SECOND PART** acknowledges their obligation to inform the **FIRST PART** in continuous manner during the terms of the contract any fact related to any investigation of a crime against the treasury, the public faith or the function; against the government function; or that involve funds or public property, in the federal or state scope. This obligation will be continuous during all the stages of the execution of the contract.

47. The **SECOND PART** certifies that during the ten (10) years prior to the execution of this contract, that neither it, neither any of their officials, employees and subsidiaries has not incurred in any crime against the treasury, the public faith or function; against the government function; or that involve funds or public property, in the federal or state scope.

48. If the **SECOND PART** fails to perform the services or deliver the supplies specified in this contract, or any extension, the **SECOND PART** shall, in place of actual damages, pay to the **FIRST PART** as fixed, agreed, and liquidated damages, for each calendar day of non-compliance, an amount to be determined through negotiations in the event of the above referenced occurrence.

    a. Alternatively, if delivery or performance is so delayed, the **FIRST PART** may terminate this contract under the paragraph 26 of this contract and in that event, the **SECOND PART** shall be liable for fixed, agreed, and liquidated damages accruing until the time the **FIRST PART** may reasonably obtain delivery or performance of similar supplies or

services. The liquidated damages shall be in addition to excess costs under the paragraph 36.

b. The **SECOND PART** shall not be charged with liquidated damages when the delay in delivery or performance arises out of causes beyond the control and without the fault or negligence of the **SECOND PART**.

49. The services that will be performed by the **SECOND PART** entail access to confidential information and information that is not usually available to the general public. The **SECOND PART** must comply with the ethical responsibilities related to its profession while protecting and keeping the confidentiality of the information obtained rendering the services under this contract. The **SECOND PART** cannot disclose or reveal said information nor use it or appear to use it for purposes different from the services under this contract, nor for its benefit or make it available for the benefit of third parties. This confidentiality agreement will continue in effect even after the relation between the **FIRST PART** and the **SECOND PART** ends.

The **SECOND PART** expressly recognizes that this is an essential condition of this contract. The **SECOND PART** accepts that failure to comply with this condition is sufficient cause for the **FIRST PART** to terminate the contract and the **SECOND PART** agrees to reimburse to the **FIRST PART** all the funds received under this contract.

50. The **SECOND PART** certifies that it meets the ethical standards of its profession and assumes full responsibility for any action that might be contrary to such ethical standards. In addition, the **SECOND PART** certifies that it will comply with Law 1-2012, known as "Governmental Ethics Law", with the purpose, among others to promote and preserve the integrity of the officials and public institutions of the Commonwealth of Puerto Rico. Any breach of the provisions of this law may be processed civil or administratively, as the case may be.

The **SECOND PART** acknowledges and agrees that it shall not request, seek or otherwise receive information, intervention, cooperation or assistance in any way or will be represented in any capacity, directly or indirectly, by a former public servant on official actions, as defined in article 1.2 (a) of Law 1-2012, or matters in which it intervened while he worked as a public servant.

The **SECOND PART** acknowledges and agrees that it will not receive information, intervention, cooperation or assistance in any way from a former public servant or be represented in any capacity, directly or indirectly by said servant before the Agency for which he worked during the two (2) years following the date of completion of his Government employment.

The **SECOND PART** recognizes and accepts that it will not hire, direct or indirectly, a former public servant that has executed an official action, as defined in article 1.2 of Law 1-2012, related to the **SECOND PART** during the year following the date of termination of his Government employment. This prohibition does not apply to intergovernmental agreements.

This prohibition does not apply to former public servants who want to return to the specialized private sector from which they came, provided their official actions, according to defined in the article 1.2 (to) of Law 1-2012, did not favor the entity in which the former public servant proposes to work or have pecuniary interest.

The **SECOND PART** acknowledges and agrees that any public servant may not use confidential or privileged information acquired in the exercise of his official duties to enrich himself or a third party.

The **SECOND PART** acknowledges and agrees that it will not employ or maintain contractual or business relationships with a public employee that, although legally allowed:

1. Have the effect of undermining the independence of judgement of the public servant in the performance of his official duties.

2. Have the faculty to decide or influence the official actions of the Agency related to the **SECOND PART**.

3. Have the authorization to contract or who is empowered to approve or recommend the granting of a contract to the **SECOND PART**.

51. The **SECOND PART** recognizes that Article 18 of Law 103-2006, as amended, regulates and expressly limits the use of public funds to pay for lobbying costs only to those lobbying services exclusively performed to search and identify federal funds or legislation that promotes Puerto Rico's economic well-being.

    The **SECOND PART** certifies that: (a) the services under this contract do not include lobbying services and (b) the funds assigned under this contract will not be used to pay for lobbying services, regardless of their purpose. Through this certification, the **SECOND PART** establishes that it will not use the public funds under this contract to render lobbying services before the following government branches: Federal Government, Federal Congress, state governments, state legislatures, municipal governments, municipal assemblies, and public corporations, among others.

    Any violation to this clause, the regulation and the limitation of Article 18 of Law 103-2006, as amended, will be sufficient cause for the **FIRST PART** to cancel this contract automatically.

52. This contract shall at all times be subject to and interpreted by, and shall be complied with in accordance with the laws of the Commonwealth of Puerto Rico. The General Court of Justice of San Juan of the Commonwealth of Puerto Rico shall has exclusive jurisdiction to resolve any dispute or controversy regarding the application or interpretation of this contract, and the parties hereto irrevocably submit themselves to the exclusive jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico.

53. If any term, covenant or provision of this contract is invalid or unenforceable, the remainder of this Agreement shall not be affected thereby, and each term, covenant or provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

54. In all pertinent and applicable, the **SECOND PART** is specifically committed to the transference of knowledge to the personnel of the **FIRST PART** during the term of the present contract, which is an essential and obligatory condition to its fulfillment. The violation of this disposition will be sufficient cause for the **FIRST PART** to conclude this obligation and the **SECOND PART** will have to refund to the **FIRST PART** all sum of money received under this Contract.

55. No services or payment subject to this Agreement can be claimed until the same has been registered in the Comptroller's Office, as set forth by Public Law Number 18 of October 30, 1975, as amended.

56. The **SECOND PART** will abide by Law 168-2000, as amended, regarding the support of elderly people. In order to obtain or maintain a contract with the **FIRST PART**, it is an essential condition that the person liable for a pension to an elderly person is up to date with the payments or is in compliance with a payment plan, and has not failed to comply with orders, citations, requirements, resolutions or sentences issued by the court or the Administrator by virtue of said law.

57. Each invoice submitted by the **SECOND PART** will contain a certification that reads as follows: "Under penalty of absolute nullity I hereby certify that no employee of the Department of Education has any direct or indirect pecuniary or other interest in this Agreement. If an employee is part or has any direct or indirect pecuniary or other interest in this Agreement, a previous waiver has been presented. The only consideration for providing the goods and services object of this contract has been the accorded payment agreed upon with the authorized representative of the Department of Education. I hereby certify that this invoice is correct and that payment thereof has not been received."

58. The Parties agree to comply with all aspects of the Federal False Claims Act which, in general, prohibits: (i) knowingly presenting, or causing to be presented to the Government of the United States a false claim for payment; (ii) knowingly making, using, or causing to be made or used, a false record or statement to get a false claim paid or approved by the Government of the United States; (iii) conspiring to defraud the Government of the United States by getting a false claim allowed or paid; (iv) falsely certifying to the United States the type or amount of property to be used; (v) certifying receipt of property on a document without completely knowing that the information is true; (vi) knowingly buying Government of the United States property from an unauthorized officer of the Government of the United States, and;

(vii) knowingly making, using, or causing to be made or used a false record to avoid or decrease an obligation to pay or transmit property to the Government of the United States.

59. According to the laws and the rules that guide the contracting of services, both parties in this contract acknowledge that no services will be rendered under this contract until both parties have signed it. Accordingly, no service will be rendered after its date of conclusion. No services will be paid in violation of this clause. Any employee of the **FIRST PART** that solicits and/or accepts services in violation of this disposition does so without any legal authority.

60. The **FIRST PART**, whenever applicable, will retain a special contribution equal to one point five percent (1.5%) of the Agreement's total amount from the payments made to the **SECOND PART** according to Commonwealth of Puerto Rico Law 48-2013.

61. The **SECOND PART** must diligently monitor that the **FIRST PART** complies with all the contractual formalities. All services provided by the **SECOND PART** without a legal, signed and valid contract or amendment will be not paid by the **FIRST PART** and the **SECOND PART** will assume the loss. It is the **SECOND PART** duty and obligation to require the **FIRST PART** strict compliance with the contractual formalities before rendering any service. Payment resolutions or retroactive contract amendments are null and illegal.

62. This contract and the appendixes attached to it constitute the entire agreement of the parties with respect to the subject matter hereof. This contract may be amended only by a document executed by both parties purporting to effect such an amendment.

**IN WITNESS WHEREOF**, the parties have respectively signed and sealed this Agreement as of the day and year first above written.

By: _____
Rafael Román-Meléndez
**FIRST PART**
S.S.: 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

By: _____
Roque Díaz Tizol
**SECOND PART**
S.S.: 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

or
By express delegation:

_____
Lilia M. Torres Torres, CPA
Undersecretary of Administration

Department of Education:

Submitted by : _____
Aixa Montero Avilés, Coordinator Equitable Services

Revised by : _____
César Domínguez, Esq., Legal Consultant

## APPENDIX A

Copy of the Company's Proposal for school year 2016-2017

## APPENDIX B

List of Participating Schools

## APPENDIX C

Policies and Procedures for preparing the invoices manually or electronically

## APPENDIX D

The purpose of Title I is to implement research-based programs that help students improve their academic achievement in the regular private school classrooms (i.e., reading (Spanish and English), Mathematics and Science. The services that can be provided are:

- Instructional activities
- Extended day services;
- Summer school;
- Saturday programs;
- Counseling programs;
- Computer-assisted instructions (CAI) with non-instructional computer technicians who supervise computer labs, maintain disciplines, and escort students to and from class (Their salaries are an administrative cost and may not be charged to funds generated by private school children from low-income families, which is for instruction.);
- Home tutoring;
- Computers and software products;
- Take-home computers (the provider should ensure that families and students are properly trained in computer and software use.).
- Professional development to teachers of children participating in the Program;
- Parent and family engagement of children that participate in the Program;
- Team teaching is not allowed.

## APPENDIX E

List of Eligible Students Forms were prepared by the school teachers and approved by the Director. The forms will be delivered by the Director to the providers when services start at the school.