**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL GENERAL DE JUSTICIA**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **CARLOS E. TORRES VIADA**<br>**DEMANDANTE**<br><br>**V.**<br><br>**ESTADO LIBRE ASOCIADO DE PUERTO RICO, ASEGURADORA ABC**<br>**DEMANDADOS** | **CIVIL NÚM.**<br><br>**SALA:**<br><br>**SOBRE: Pleito contra el Estado; Daños y perjuicios, violación a derechos civiles, acometimiento, sentencia declaratoria.** |

  When a new truth comes upon the earth, or a great idea necessary for mankind is born, where does it come from? Not from the police force, or the prosecuting attorneys, or the judges, or the lawyers, or the doctors. Not there. It comes from the despised and the outcasts, and it comes perhaps from jails and prisons. It comes from men who have dared to be rebels and think their thoughts, and their faith has been the faith of rebels.[1]

  What do you suppose would have happened to the workingmen except for these rebels all the way down through history? Think of the complacent cowardly people who never raise their voices against the powers that be. If there had been only these, you gentlemen of the jury would be hewers of wood and drawers of water. You gentlemen would have been slaves. You gentlemen owe whatever you have and whatever you hope to these brave rebels who dared to think, and dared to speak, and dared to act.[2]

## DEMANDA

**AL HONORABLE TRIBUNAL:**

  **COMPARECE**, el señor Carlos E. Torres Viada por conducto de sus abogados quienes suscriben y muy respetuosamente, **EXPONEN, ALEGAN y SOLICITAN**;

1. El Demandante; el señor Carlos E. Torres Viada ("señor Torres Viada" / "Demandante") es mayor de edad, soltero, y abogado de profesión. Con dirección de oficina y postal en; Calle Eduardo Riera #110, Esquina Araez, Mayagüez, P.R. 00680, número de teléfono; 787-813-6575 y correo electrónico; torresviada@yahoo.com.

---

[1] William M. Kunstler en su argumentación final en el caso de *The State of Illinois v. Abbie Hoffman, et al.*, citando a Clarence Darrow. Véase Michael S. Lief, H. Mitchell Caldwell & Ben Bycel, <u>Ladies and gentlemen of the jury</u>, Touchstone, New York, 1998, p.112.
[2] *Ibídem.*

2. El Demandado; el Estado Libre Asociado de Puerto Rico ("ELA"), tiene capacidad para demandar y ser demandado, y está representado por la Secretaria de Justicia Interina; la Lcda. Inés Del C. Carrau Martínez, con dirección postal; Apartado 902019, San Juan, P.R. 00902-0192.

3. El co-demandado de nombre desconocido, designado como Aseguradora ABC, expidió una póliza a favor del ELA que cubre las reclamaciones, en adelante expuestas, parcial o completamente.

4. El 11 de julio de 2020 el señor Torres Viada participaba de una manifestación ("Manifestación") en la Calle Méndez Vigo y sus inmediaciones en la ciudad de Mayagüez, P.R.

5. Al igual que el señor Torres Viada, en la Manifestación participaba una multitud de ciudadanos.

6. La Manifestación se daba ante una actividad donde participaba la Administración Municipal de Mayagüez, la Gobernadora Wanda Vázquez Garced y otros funcionarios y ciudadanos.

7. Al expresarse el señor Torres Viada -en la Manifestación- de la necesidad imperante de la salida "renuncia" de la Gobernadora Vázquez Garced del cargo que ocupa, varios Policías en funciones y otros agentes del Estado abruptamente intervinieron con el primero, tratando de arrestarlo y empujándolo hasta sacarlo del área donde estaba ubicado.

8. El señor Torres Viada fue removido del lugar donde se ubicaba por la Policía y otros agentes del Estado.

9. En varias instancias -de manera pública- la Policía y otros agentes del Estado empujaron, intimidaron e intentaron privar de su libertad al señor Torres Viada.

10. La Policía y otros agentes del Estado -también- impidieron que el señor Torres Viada se mantuviese en las inmediaciones de la Calle Méndez Vigo y que pudiese continuar participando libremente de la Manifestación.

11. Ante lo señalado, el señor Torres Viada se vio imposibilitado de continuar participando de la Manifestación.

12. Las actuaciones -antes citadas- fueron realizadas públicamente.

13. Las actuaciones -antes citadas- por parte del Estado fueron en violación a los derechos constitucionales del señor Torres Viada.

14. El Estado, por conducto de la Policía de Puerto Rico y otros funcionarios, actuaron en violación al derecho a la libertad de expresión, el derecho a asamblea pacífica, y el derecho a la dignidad del ser humano del señor Torres Viada.

15. El Estado, por conducto de la Policía de Puerto Rico y otros funcionaros, de manera negligente violaron los derechos constitucionales (del señor Torres Viada) antes citados.

16. El Estado, por conducto de la Policía de Puerto Rico y otros funcionaros, de manera negligente ejercieron fuerza excesiva contra el señor Torres Viada mientras lo removían de la Manifestación.

17. Las actuaciones del Estado contra el señor Torres Viada fueron excesivas, negligentes e irrazonables.
18. El señor Torres Viada sufrió daños por razón de las violaciones y la fuerza excesiva incurrida por el Estado según citado anteriormente.
19. El señor Torres Viada -públicamente- fue removido de la Manifestación siendo coartado su derecho a la libertad de expresión y su derecho a la asamblea pacífica.
20. El Estado viene obligado a vindicar los agravios sufridos por el señor Torres Viada ante las actuaciones negligentes citadas.
21. El único remedio ante una violación de los derechos constitucionales citados es una compensación económica.
22. La citada compensación económica no implica que el Estado pueda en una ocasión futura violar, nuevamente, los derechos del señor Torres Viada.
23. El señor Torres Viada sufrió daños como consecuencia de la violación a sus derechos constitucionales, según citados.
24. El señor Torres Viada reclama $75,000.00 como cuantía por los daños sufridos como consecuencia de las actuaciones negligentes del Estado en violación a sus derechos constitucionales.
25. El Estado es responsable del pago de la cuantía antes citada.
26. La Aseguradora ABC responde por la reclamación antes citada de forma parcial o completamente.
27. En cumplimiento con la *Ley de pleitos contra el Estado* se le cursó (mediante correo certificado y acuse de recibo[3]) el 24 de julio de 2020 una notificación de intención de demanda y una petición de preservación de prueba al ELA por conducto de la Secretaria de Justicia Interina; Lcda. Inés Del C. Carrau Martínez.
28. La Sec. 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, consagra el derecho fundamental a la libertad de expresión. <u>Como tal, la Carta de Derechos protege al ciudadano puertorriqueño contra cualquier actuación gubernamental o ley que restrinja la libertad de palabra o de prensa, o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios</u>. Como corolario de la libre expresión, las personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares. (Énfasis nuestro). <u>U.P.R. v. Laborde Torres</u>, 2010 TSPR 225.
29. La garantía constitucional a la libertad de palabra abarca el ámbito general de la libertad de conciencia, de pensamiento, de expresión, y las actividades propias para ejercitar a plenitud, dentro de la más dilatada libertad, la totalidad de los derechos. Además, faculta el desarrollo pleno del individuo y estimula el libre intercambio y la diversidad de ideas, elementos vitales del proceso democrático. <u>U.P.R. v. Laborde Torres</u>, *supra.*
30. Entre las libertades individuales, la libertad de expresión es probablemente la más esencial, una vez garantizado el derecho a la vida y a la libertad física. La libertad de expresión es la quintaesencia de una sociedad democrática. De forma

---

[3] Número de rastreo 70183090000158599519 / recibido el 29 de julio de 2020.

multidimensional, en la constelación de valores democráticos, goza de una primacía peculiar. U.P.R. v. Laborde Torres, *supra.*

31. **Debemos afirmar una vez más que la libertad de expresión protege, incluso, los mensajes controversiales, las ideas que muchos no comparten y hasta las manifestaciones que algunos estimen reprochables.** El gran Juez Douglas del Tribunal Supremo de los Estados Unidos expresó con claridad y elocuencia este aspecto esencial de la libertad de expresión en *Terminiello v. Chicago*, 337 US 1, 4-5 (1949); *A function of free speech… is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea … the alternative would lead to standardization of ideas by legislatures, courts, or dominant political or community groups.* **No pueden los funcionarios públicos suprimir la expresión de alguna persona sólo porque no la comparten o les disgusta**, ni tampoco pueden suprimirla sólo porque los que se oponen a tal expresión no hayan manifestado su propio mensaje; mucho menos pueden hacerlo porque consideran que tal expresión es un punto de vista minoritario. Permitir que el Estado pueda prohibir la divulgación de un mensaje por cualquiera de esas razones equivaldría a la muerte de la libertad de expresión. (Énfasis nuestro).[4]

32. En Puerto Rico, la responsabilidad civil, que se deriva de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Para que exista responsabilidad civil, según este artículo, es necesario que concurran los elementos siguientes: un daño, una acción u omisión negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Toro Aponte v. E.L.A., 97 TSPR 19.

33. En materia de responsabilidad extracontractual, un acto ilícito ocurre cuando se violan los deberes generales de corrección o conducta correcta, deberes que no están escritos en los códigos, pero que representan el presupuesto mínimo sobreentendido del orden de la vida social. Toro Aponte v. E.L.A., *supra.*

34. La Ley de Pleitos contra el Estado constituye una renuncia del soberano a su inmunidad que, aunque amplia, no representa una autorización ilimitada contra la protección que le asiste. Esta ley es, más bien, una renuncia parcial del Estado a su inmunidad, que dispone las circunstancias específicas por las cuales consintió a ser demandado. Entre éstas, la ley impuso responsabilidad vicaria al Estado, autorizando las acciones judiciales en su contra por los daños ocasionados a la persona o a la propiedad, por los actos u omisiones culposas o negligentes de sus empleados, funcionarios o agentes en el descargo oficial de sus funciones. Autorizó, además, las demandas basadas en la Constitución, las leyes o los reglamentos de Puerto Rico. Toro Rivera v. E.L.A. y otros, 2015 TSPR 172.

---

[4] José Julián Álvarez González, Las libertades de expresión y prensa en Puerto Rico, Ed. Temis, Bogotá, Colombia, 2009, p.5-6. (ISBN 0010600401).

35. La existencia de responsabilidad de un patrono, en cuanto al pago de daños y perjuicios en virtud de la actuación de un agente, está predicada en la culpa o negligencia del agente. Por definición, la culpa o negligencia del agente (creadora de la responsabilidad patronal) supone una actuación injustificada y contraria a las normas legales. Sánchez Soto v. E.L.A., 128 DPR 497 (1991).

36. Aunque bajo determinadas circunstancias la actuación delictiva, excesiva o innecesaria puede ser un factor relevante en la comprobación de si el agente ha actuado o no dentro de los límites de sus funciones, ese acto delictivo o el despliegue de violencia excesiva se lleva a cabo como un incidente en la protección de los derechos del patrono y no en protección de los intereses personales del agente, entonces el patrono sería responsable. Sánchez Soto v. E.L.A., *supra.*

37. El hecho en sí de que, al actuar dentro de sus funciones, un policía ejercite fuerza excesiva no excluye automáticamente la responsabilidad del Estado como patrono. El exceso mencionado más bien define esa responsabilidad si está basado en el propósito de beneficiar al Estado. Rodríguez v. Pueblo, 75 DPR 401 (1953).

38. Hemos resuelto que cuando un ciudadano presenta una reclamación alegando que el Estado le ha violado algún derecho constitucional, los tribunales estamos obligados a proveer los remedios que vindiquen efectivamente el agravio sufrido y aminoren el daño provocado por el Estado. Weber Carrillo v. ELA, Et al., 2014 TSPR 46.

39. La sec 1983 de la Ley federal de Derechos Civiles, 42 U.S.C., es un vehículo para qué los ciudadanos puedan hacer valer los derechos que les confieren la Constitución y las leyes de Estados Unidos frente a quienes abusan de su poder cuando actúan so color de autoridad estatal. Para que el demandante prevalezca debe demostrar que el demandado actuó so color de autoridad, y que esta actuación lo privó de los derechos garantizados por la Constitución y las leyes de Estados Unidos. Leyva y otros vs. Aristud y otros, 132 DPR 489 (1993).

40. La Ley federal de Derechos Civiles no precluye las acciones estatales fundamentadas en la responsabilidad extracontractual. En Puerto Rico se le puede imponer responsabilidad al Estado por las actuaciones negligentes de sus agentes, bajo los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142, y con independencia del criterio que se impone al amparo de la Ley federal de Derechos Civiles, U.S.C. sec. 1983, en torno a la responsabilidad personal de agentes del Estado que se desempeñan como supervisores. Leyva y otros vs. Aristud y otros, *supra*.

41. Para un demandante prevalecer en una reclamación como la de autos debe probarse la concurrencia de varios elementos. Véase Leyva y otros vs. Aristud y otros, *supra*. Primero, tiene que probar que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial, al momento de causarle el daño. Hay que establecer "suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado, por razón del ejercicio de funciones expresas o implícitas. Sánchez Soto, et al v. E.L A., res. el 7 de junio de 1991, 128 DPR 497, 506 (1991). Segundo, es necesario que el demandante pruebe que ese agente, funcionario o empleado actuó dentro del marco de su función. Rodríguez v. Pueblo,75

D.P.R. 401 (1953). En tercer lugar, el demandante tiene que probar que la actuación del empleado del E.L.A. fue negligente, y no intencional. Por último, hay que demostrar relación causal entre la conducta culposa y el daño producido. Art. 6, Ley Núm. 104, supra,.32 L.P.R.A. sec. 3081. (d). Véanse, Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199, 206, 207 (1963); Meléndez v. E.L.A., 81 D.P.R. 824, 828 (1960). Leyva y otros vs. Aristud y otros, *supra*.

42. Cumplidos estos requisitos, el E.L.A. está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia, mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente aun cuando dicha conducta tenga algunos elementos intencionales. Véase, Galarza Soto v. E.L.A., 109 D P.R. 179 (1979); Morales Garay v. Roldán Coss, 110 D.P.R 701 (1981); (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de co-causantes del daño por los cuales sí debe responder el Estado. Véase, Negrón v. Orozco Rivera,.113 D.P.R. 712. (1983); Hernández v. E.L.A., 116 DPR 293 (1985); y (4) cuando el Estado a través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución. Leyva y otros vs. Aristud y otros, *supra*.

43. Las Ramas del Gobierno están impedidas de "activar o desactivar" la Constitución a su voluntad. *Véase Boumediene v. Bush, 553 US 723 (2008)*.

44. El poder de los tribunales para dictar Sentencias declaratorias no está limitado a aquellos casos en que las partes o una de ellas tengan alguna causa de acción creada por otra ley distinta a la de Sentencias Declaratorias. Moscoso v. Rivera, 76 DPR 481 (1954).

45. La sentencia declaratoria es un "mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra quien la solicita". Alcalde Guayama v. ELA, 192 DPR 329, 333 (2015). Está disponible independientemente de que existan otros remedios. Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V. Senado de PR v. ELA, 2019 TSPR 138.

46. La sentencia declaratoria tiene la eficacia y el vigor de una sentencia o resolución definitiva. Íd. Se dicta en procesos en los que los hechos demuestren que existe una controversia sustancial entre partes que tienen intereses legales adversos. Tiene el propósito de disipar una incertidumbre jurídica y contribuir a la paz social. Véase Suárez v. C.E.E. I, 163 DPR 347, 354 (2004). Es adecuada como solución a planteamientos constitucionales. Asoc. de Periodistas v. González, 127 DPR 704, 724 (1991). Senado de PR v. ELA, *supra.*

47. El Demandante solicita de este Tribunal dicte sentencia declaratoria en cuanto a las actuaciones del Estado en su contra; declarándolas actuaciones irrazonables, excesivas, negligentes y en violación a los derechos constitucionales del Demandante.

48. El Estado viene obligado a respetar y hacer valer la Constitución.
49. El Estado está impedido de privar a un ciudadano de su derecho a la libertad de expresión, el derecho a la asamblea pacífica o actuar contra su dignidad.
50. El Estado -ante manifestaciones como las realizadas por el señor Torres Viada- no puede remover a un ciudadano de una manifestación y privarlo de sus derechos constitucionales.
51. En el presente caso, el Estado violó los derechos constitucionales del señor Torres Viada al removerlo forzosa y públicamente de la Manifestación, y al privarlo de continuar manifestándose.
52. Las actuaciones del Estado tuvieron el fin de callar la opinión del señor Torres Viada y de callar la opinión de los demás manifestantes que vieron lo ocurrido durante la Manifestación.
53. Las actuaciones del Estado, antes citadas, deben ser condenadas por este Tribunal.
54. Un tribunal concederá lo que en derecho proceda conforme a los hechos que queden probados. Por ello, la Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que se concederá el remedio a que tenga derecho la parte a cuyo favor se dicte la sentencia independientemente de que ésta lo haya o no solicitado en sus alegaciones. Rivera Flores v. Cía. ABC, 95 TSPR 20.

**EN MÉRITO DE LO ANTERIORMENTE EXPUESTO,** se solicita muy respetuosamente de este Honorable Tribunal que posterior a los trámites de rigor; dicte *sentencia declaratoria* en favor del señor Torres Viada y declare **CON LUGAR** la presente *Demanda*, condenando a los Demandados al pago de la cuantía reclamada, junto con cualquier otro pronunciamiento que en justicia y derecho proceda.

**RESPETUOSAMENTE SOMETIDO.** Hoy, a 1 de octubre de 2020.

*f/ Donald R. Milán Guindín*
**LCDO. DONALD R. MILÁN GUINDÍN**

RUA: 19,887 / Colegiado Núm. 20,733
USDC No. 303904
P.O. Box 1565
Lajas, P.R. 00667
Tel. (787) 365-1370
Email: guindinmilan@yahoo.com

*f/ Salvador Tió Fernández*
**LCDO. SALVADOR TIÓ FERNÁNDEZ**

RUA: 3,961 / Colegiado Núm. 5,228
602 Ave. Muñoz Rivera Piso 6
San Juan, P.R. 00918
Tel. 787-294-9260
Email. salvadorelias@gmail.com

*f/ Martín González Vélez*
**LCDO. MARTÍN GONZÁLEZ VÉLEZ**

RUA: 15,100 / Colegiado Núm. 16,470
P.O. Box 591
Mercedita, P.R. 00715-0591
Tel. (787) 840-5600
Fax (787) 841-5607
Email: despachomgv.mggv@gmail.com