# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered)<br><br>**RE: ECF Nos. 19522, 20540** |

## REPLY IN SUPPORT OF NTT DATA STATE HEALTH CONSULTING, LLC'S VERIFIED MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

To the Honorable United States District Court Judge Laura Taylor Swain:

NTT DATA State Health Consulting, LLC (*fka* Cognasante Consulting, LLC) ("NTT" ("NTT DATA"), by and through the undersigned counsel, files this reply (the "Reply") to *The Commonwealth of Puerto Rico's Objection to Motion of NTT Data State Health Consulting, LLC for Allowance of Administrative Expense Claim* at ECF No. 20540 (the "Objection") filed by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Commonwealth of Puerto Rico (the "Commonwealth"), and in further support of its *Verified Motion of NTT DATA Health Consulting, LLC for Allowance of Administrative Expense* (the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

"Motion"). In support of this Reply, NTT DATA respectfully states, represents, and alleges as follows:

**PRELIMINARY STATEMENT**

1. The Motion seeks an order allowing an administrative claim in favor of NTT DATA for certified invoice # 9000879701 in the amount of $443,893.50 for the services rendered by NTT DATA up until September 2020 to the Puerto Rico Department of Health ("DoH") under a certain *Professional Services Contract* executed on November 30, 2018. As per this Court's decisions in connection with the allowance of administrative expenses, the appropriate inquiry is whether the services provided – here the services provided by NTT DATA to the DoH – benefited the Debtor (the Commonwealth). *In re Financial Oversight and Management Board for Puerto Rico*, 621 B.R. 289, 301 (D.P.R. 2020), *aff'd,* 7 F.4th 31 (1st Cir. 2021). As NTT DATA demonstrated in its Motion, its post-petition services under the *Professional Services Contract* and the subject of certified invoice # 9000879701 were specifically contracted and, thus, performed for the benefit of the DoH and the Commonwealth.

2. In its Objection, the Commonwealth does not dispute that NTT DATA provided the services to the DoH nor that these services were requested and provided post-petition. Most notably, the Commonwealth does not aver that the Commonwealth did not receive a benefit from these services.

3. Instead, the Commonwealth argues that the Motion should be denied because: (1) NTT DATA and the Commonwealth did not amend their *Professional Services Contract* to include certain translation services that were requested and approved by the DoH and performed by NTT DATA (*services that were not part of the invoice object of the Motion*); and (2) NTT DATA sent

2

certified invoice # 9000879701 to the DoH outside of the 90-day invoicing period. As discussed below, both arguments fail.

4. Indeed, the Commonwealth's position rests on inaccurate representations of what transpired between NTT DATA and the DoH, the invoices in question, and an incorrect interpretation of Puerto Rico law, specifically, Act 237 of August 31, 2004 ("<u>Act 237-2004</u>"). As such, the Objection fails for various independent reasons as set forth below.

5. *First*, the Executive Director of the Medicaid Program of the DoH specifically approved the Puerto Rico Eligibility and Enrollment ("<u>PREE</u>") translation project and understood that the deliverable under the PREE translation project fell under the existing <u>*Professional Services Contract,*</u> – and thus, no amendment was necessary.

6. *Second*, certified invoice # 9000879701 was timely. It was simply *amended* later per discussions with the DoH to limit it to the tasks that were *completed* before the cancellation of the Certified Checklist Deliverable.

7. *Third*, as this Court has recognized in these Title III proceedings, under Bankruptcy Code § 503(b)(1)(A) the relevant inquiry is the benefit received by the Debtor from the provided services, taking into consideration that the Commonwealth's ability to operate its government post-petition for the benefits to its residents is one of the main aims of PROMESA. *In re Financial Oversight and Management Board for Puerto Rico*, 621 B.R. at 303, *citing, In re Fin. Oversight and Mgmt. Bd. for P.R.*, 432 F.Supp. 3d 25, 30 (D.P.R. 2019). In this case, there was a clear benefit to the estate, which supports approval of NTT DATA's administrative claim.

## ARGUMENT

### I. Facts Relevant to the Motion and the Arguments Raised in the Opposition

3

8. On November 30, 2018, the DoH and Cognasante Consulting, LLC (NTT DATA's corporate predecessor) executed the *Professional Services Contract* concerning certain independent verification and validation ("IV & V") activities services required by the DoH in connection with the PREE project for the Government of Puerto Rico submitted to the Centers for Medicare and Medicaid Services ("CMS"). *See* Professional Services Contract, **ECF. No. 20540-1**, at p. 2 (ECF p. 2 of 49).

9. The scope of the work contracted included: (1) project oversight; (2) IV & V Management Plan Update; (3) Certification Progress Reporting and Final Assessment Report; (4) CMS Dashboard Progress Reporting; (5) User Acceptance Testing Oversight; (6) Operations Readiness Assessment; (7) Contract Review Support; (8) Risk and Issue Identification and Analysis; (9) IV & V Findings and Recommendations; (10) IV & V Support to the other DoH Initiatives. *See* Professional Services Contract, **ECF. No. 20540-1**, § 1, p. 4 (ECF p. 4 of 49).

10. As part of their agreement, NTT DATA and the DoH established a series of deliverables *to define the payment schedule*. Contrary to the Commonwealth's position, the list of deliverables was related to the timing of the payments and was not intended as a limit to the works to be performed. *See* Puerto Rico Department of Health Eligibility and Enrollment Independent Verification Validation Statement of Work, incorporated into Professional Services Contract, **ECF. No. 20540-1**, at p. 9 (ECF p. 45 of 49); Declaration of Jim Tardella, **Exhibit 1**, ¶ 4; Professional Services Contract, **ECF. No. 20540-1**, § 1, p. 4 (ECF p. 4 of 49).

11. The *Professional Services Contract* was approved by the FOMB prior to its signature. *See* November 7, 2018 Letter, **Exhibit 2**.

12. The *Professional Services Contract*'s Resolution and Termination clause provided that either party could terminate the agreement, "through written notification to the OTHER

4

PARTY, with thirty (30) days previous notice of the date of the intended dissolution, with no additional obligation from either PARTY (**other than the payment obligations of the FIRST PARTY for any completed Deliverables and documented work in progress by the SECOND PARTY** …)." *See* Professional Services Contract, **ECF. No. 20540-1**, § 4, p. 5 (ECF p. 5 of 49) (emphasis ours).

13. On March 2020, the DoH requested NTT DATA to stop working on the Certification Checklist Deliverable. The DoH did not terminate the *Professional Services Contract* under the Resolution and Termination clause of the agreement, nor did it request to amend it to delete the Certification Checklist Deliverable. Rather, the DoH and NTT DATA agreed to repurpose the last deliverable to have NTT DATA translate the training materials of the PREE from English to Spanish language. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 5.

14. The translation services were performed under Section 1 of the *Professional Services Contract*, which specifically provided for IV & V Findings and Recommendations and IV & V Support to other PRDOH Initiatives. *See* Professional Services Contract, **ECF. No. 20540-1**, § 1, p. 4 (ECF p. 4 of 49); *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 6.

15. The Puerto Rico Medicaid Director, Luz E. Cruz Romero, understood it as such when she specifically approved the repurposing of the deliverable to include the works performed to date on the Certification Checklist Deliverable and the Spanish translations. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 7; July 2, 2020 email from Jim Tardella to Luz E. Cruz Romero, Puerto Rico Medicaid Director, Re: IV & V Support for Spanish Translations, **Exhibit 3**; July 2, 2020 email from Luz E. Cruz Romero, Puerto Rico Medicaid Director, to Jim Tardella, Re: IV & V Support for Spanish Translations, **Exhibit 4**.

5

16. To this end, on July 2, 2022 Jim Tardella, IV & V Practice Lead for NTT DATA, sent an email to the Puerto Rico Medicaid Director, Luz E. Cruz Romero, confirming a previous discussion in which the parties had agreed that NTT DATA would provide IV & V Support for Spanish Translations. Jim Tardella attached to his email a document titled *IV & V – Re-Purposed Deliverable Options*, which specifically stated that "[t]he only invoice that will be submitted will remain on the same timeline as the original deliverable for the CMS Certification Checklists in Month 24 of our original Statement of Work." *See*, July 2, 2020 email from Jim Tardella to Luz E. Cruz Romero, Puerto Rico Medicaid Director, Re: IV & V Support for Spanish Translations, **Exhibit 3**, Pp. 1 & 3.

17. On that same date, the Puerto Rico Medicaid Director, Luz E. Cruz Romero, confirmed that the Certification Checklists Deliverable be repurposed to provide IV & V Support for Spanish Translations. *See* July 2, 2020 email from Luz E. Cruz Romero, Puerto Rico Medicaid Director, to Jim Tardella, Re: IV & V Support for Spanish Translations, **Exhibit 4**.

18. NTT DATA completed the IV & V Support for Spanish Translations related tasks, and the translated materials were received and approved by the Puerto Rico Medicare Program ("PRMP") Subject Matter Expert's Review Committee on August 25, 2020. *See* IV & V Monthly Assessment Report: Report Ending September 30, 2020, **Exhibit 5**, p. 1, § 1.1.

19. On or about October 19, 2020, NTT DATA submitted certified invoice # 9000879701 certifying the services performed through September 2020 for the "Repurposed Deliverable per Approval from Luz Cruz Romero" (the "Original Invoice") in the amount of $554,867.00. *See* Certified Invoice # 9000879701 (Oct. 19, 2020), **ECF No. 20540-2**.

6

20. Under the *Professional Services Contract*, the DoH had 30 days to pay this invoice, after its approval. This procedure usually took approximately 50 days. *See* Professional Services Contract, **ECF. No. 20504-1**, § 6, p. 9 (ECF p. 9 of 49).

21. This 50-day period coincided with the election of a new Governor for Puerto Rico, who appointed new cabinet members and senior management for the DoH. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 10.

22. In February 2021, NTT DATA started conversations with the new DoH cabinet members and senior management to obtain payment. After multiple communications, the DoH made it clear that it was only willing to pay for the tasks performed under the Certification Checklists Deliverable, not for the tasks performed under the IV & V Support for Spanish Translations project. Given NTT DATA's interest in receiving at least a partial payment on the tasks performed, it agreed to submit an amended invoice *limited to the tasks performed under the Certification Checklists Deliverable* at the time in which it was cancelled. Thus, on June 11, 2021, NTT DATA submitted amended certified invoice # 9000879701 certifying the services performed under the Certification Checklists Deliverable as of September 2020 (the "Amended Invoice") in the amount of $443,893.60. The Amended Invoice indicated it was a "[R]e-submitted Deliverable per Agreement with the PRDoH". *See* Declaration of Jim Tardella, **Exhibit 1**, ¶¶ 11, 12 & 13; Amended Certified Invoice # 9000879701, **ECF No. 19522**, p. 9.

23. On July 22, 2021, the newly appointed Puerto Rico Medicaid Director, Edna Y. Marín Ramos, sent a letter to NTT DATA refusing payment of the Amended Invoice for three reasons: (1) the item certified for payment had been cancelled; (2) the invoice allegedly did not comply with the *Professional Services Contract*; and (3) the invoice was received over 90 days

after the services were rendered. *See* July 22, 2021 letter from Edna Y. Marín Ramos to Jim Joyce, **ECF No. 20540-5**, p. 2.

24. NTT DATA's Motion ensued.

25. The Commonwealth's position that the services performed and invoiced under the Amended Invoice are not entitled to administrative expense priority is twofold. *First*, the Commonwealth maintains that the DoH could not process the Original Invoice for payment because the *Professional Services Contract* was not amended to include the re-purposed deliverable. The Commonwealth argues that such an amendment was necessary under Sections 8613 (g) and (i) of Act 237-2004. *Second*, the Commonwealth argues that the Amended Invoice was submitted outside the 90-day period for invoicing, thus the DoH did not have to pay it under the *Professional Services Contract*. Both reasons are insufficient for denying administrative expense priority.

### II. The Translation Services Provided to the Commonwealth were Covered by the *Professional Services Contract*, which did not Require an Amendment

26. Section 8613 (g) of Act 237-2004 states that a contract between the Commonwealth and another entity for professional services "shall indicate precisely which services or duties are required by the Government. The contracted services must be described in detail in the contract text." 3 L.P.R.A. § 8613(g). NTT DATA has not found any caselaw from the Puerto Rico Supreme Court or Court of Appeals specifically describing the degree of detail necessary under this section, and the Commonwealth does not point to any. Similarly, Section 8613 (i) states that the contract must also establish "the manner of payment, that is, whether the invoice shall be based upon fees per hour, or by tasks or finished phases, or by means of a lump sum after the services to be rendered have been completed, among others." 3 L.P.R.A § 8613(i).

8

27. The Commonwealth avers that NTT DATA failed to amend the *Professional Services Contract* in order to include the IV & V Support for Spanish Translations services in violation of these two Sections of Act 237-2004, and thus the Original Invoice – which is not the object of the Motion – was not approved under the contract and could not be paid.[2]

28. The Commonwealth is mistaken. The premise underlying the Commonwealth's argument is that the *Professional Services Contract* had to specifically state that the parties were contracting the translation services. Because the *Professional Services Contract* did not specifically mention translation services, the Commonwealth seems to argue, the parties had to include them through an amendment. However, there was no need for such an amendment for two reasons.

29. *First*, because Act 237-2004 does not specify the degree of detail in the description of the services, and a reading to the effect that categories of services do not suffice does not stem from the text of Act 237-2004 or its caselaw.

30. *Second*, and critically, the translation services were part of the IV & V Findings and Recommendations and IV & V Support to the other DoH Initiatives contemplated in the *Professional Services Contract* and thus no amendment was necessary. In this regard, in the First Section of the *Professional Services Contract*, the DoH and NTT DATA stipulated that NTT DATA would provide services of: IV & V Findings and Recommendations and IV & V Support to the other DoH Initiatives. *See* Professional Services Contract, **ECF. No. 20540-1**, § 1, p. 4 (ECF p. 4 of 49). The translation of the PREE training materials from English to Spanish fell under these two contracted services, and as such was recognized by the incumbent Puerto Rico Medicaid

---

[2] It must be stressed that this argument is a distraction on the Commonwealth's part because NTT DATA ultimately amended the Original Invoice to exclude the translation services and, hence, these services are not part of the Amended Invoice which is the object to this Motion.

9

Director, Luz E. Cruz Romero, who specifically approved them. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶¶ 6, 7 & 8; July 2, 2020 email from Jim Tardella to Luz E. Cruz Romero, Puerto Rico Medicaid Director, Re: IV & V Support for Spanish Translations, **Exhibit 3**; July 2, 2020 email from Luz E. Cruz Romero, Puerto Rico Medicaid Director, to Jim Tardella, Re: IV & V Support for Spanish Translations, **Exhibit 4**.

31. Under article 1234 of the Puerto Rico Civil Code, "[i]n order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." 31 L.P.R.A. § 3472. As such, this Court must give special weight and consideration to how the persons that implemented the *Professional Services Contract* understood and interpreted it. Thus, the former Puerto Rico Medicaid Director's interpretation that the translation services were part of the IV & V Findings and Recommendations and IV & V Support to the other DoH Initiatives were services specifically considered in the *Professional Services Contract* – and that, as such, there was no need to amend it – must prevail over the after-the-fact interpretation of the newly appointed Puerto Rico Medicaid Director relied upon by the Commonwealth in its Opposition.

32. This conclusion is further supported by the fact that the DoH did not terminate the *Professional Services Contract*. Rather, the DoH cancelled the works on one deliverable, but re-purposed it to cover additional services contemplated in the *Professional Services Contract*. *See* Declaration of Jim Tardella, **Exhibit 2**, ¶ 5.

33. Therefore, the Commonwealth's contention that the Original Invoice was not payable because the services certified therein were not approved under the *Professional Services Contract* is incorrect and cannot provide a basis to deny them administrative expense priority. Furthermore, this argument is irrelevant to this Court's analysis because the object of the Motion

10

is the amount set forth in the Amended Invoice, which, as discussed below, does not include the translation services. That is, NTT DATA is not seeking payment for these translation services, having removed them from the Amended Invoice.

### III. The Amended Invoice was not Untimely

34. The Commonwealth's second argument in opposition is that the services performed in benefit of the Commonwealth should be denied administrative expense priority because, allegedly, NTT DATA failed to comply with the 90-day invoicing period established in the *Professional Services Contract*. To reach this conclusion, the Commonwealth focuses exclusively on the Amended Invoice and dismisses the Original Invoice.

35. However, as previously stated, NTT DATA issued the Amended Invoice in the amount limited to the services that were completed before the DoH's cancellation of the Certification Checklists Deliverable on June 11, 2021, after understanding that the DoH would not pay for the translation services but would pay for the completed tasks under the Certification Checklists Deliverable. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶¶ 11, 12 & 13. That is, the services included in the Amended Invoice had also been included in the Original Invoice, which was submitted on October 19, 2020, well within the 90-day period after the date in which the September 2020 deliverables had to submitted.

36. Furthermore, before submitting the Amended Invoice, NTT DATA held multiple communications with the DoH regarding the services that were performed and the status of the payment. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 11. Therefore, the DoH was aware of the services that had been performed.

37. Hence, the Commonwealth's position that the Amended Invoice was untimely is a subterfuge to avoid paying for previously contracted and performed services. To this end, notice

11

that, even upon termination of the *Professional Services Contract* (which did not occur in this case), the DoH was obliged to pay for "any completed Deliverables and documented work in progress." *See* Professional Services Contract, **ECF. No. 20540-1**, § 4, p. 5 (ECF p. 5 of 49). In consequence, even if the translation services were not part of the *Professional Services Contract* (which, as previously shown, is not the case), NTT DATA's completed tasks under the Certification Checklists Deliverable were documented work in progress that the DoH had to pay at the time in which NTT DATA issued the Original Invoice. The Commonwealth cannot benefit from its breach of the *Professional Services Contract* and have this Court treat the Amended Invoice as a *new* invoice. Rather, the Court must take it for what it is: an Amended Invoice, limiting the amounts owed to those services that the DoH had stated that it would pay. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶¶ 11, 12 & 13.

38. In conclusion, the Commonwealth's argument that the services performed should not be granted administrative expense priority because the Amended Invoice was submitted after the 90-day invoicing period is meritless and should be dismissed by the Court since the amounts at issue were included in the Original Invoice, which was simply amended to accommodate the Commonwealth, and was clearly timely.

**IV. The Services Provided by NTT DATA Should be Afforded Administrative Expense Priority**

39. Congress enacted PROMESA in response to a "fiscal emergency in Puerto Rico," resulting in the Commonwealth being "unable to provide its citizens with effective services." 48 U.S.C. § 2194(m)(1)-(2). Congress incorporated Section 507(a)(2) of the Bankruptcy Code to PROMESA because, "without an assurance of priority, third parties, like [NTT DATA], entering contracts with Puerto Rico's instrumentalities, like [the DoH], have no guarantee their claims to

12

payment will be paid." *In re Financial Oversight and Management Board for Puerto Rico*, 7 F.4th at 38-39.

40. The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" are characterized as administrative expenses and are entitled to priority. 11 U.S.C. §§ 503 and 507. Administrative priority is given as an inducement to engage in business transactions with a debtor's estate. *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416, reh'g denied, 983 F.2d 1060 (5th Cir. 1993). Administrative expense treatment is available under Section 503 of the Bankruptcy Code when (i) the right to payment arises post-petition and (ii) the consideration supporting the right to payment benefited the estate (or, in this case, the Debtor). *In re Financial Oversight and Management Board for Puerto Rico*, 621 B.R. at 301; *see also, In re Jack/Wade Drilling, Inc.,* 258 F.3d 385, 387 (5th Cir. 2001)*; In re Hemingway Transport, Inc.,* 954 F.2d 1, 5 (1st Cir. 1992)*.* This is the appropriate standard for determining whether a claim is entitled to administrative priority, and in this case, there can be no doubt that the amounts requested by NTT DATA in the Motion satisfy this test.

41. In its Opposition, the Commonwealth does not appear to argue that it did not receive a benefit from the services performed by NTT DATA. Indeed, it cannot. The services – both the translation services and the completed tasks under the Certification Checklists Deliverable – were all provided to in order for the DoH to complete and implement its PREE system as per the CMS guidelines. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶ 14.

42. Furthermore, the Commonwealth did not argue that the services were not performed post-petition. It cannot, for the *Professional Services Contract* was approved by the FOMB and executed by the parties post-petition, in November 2018. *See* November 7, 2018 Letter, **Exhibit 2**.

13

43. These services at issue in the Motion benefitted the estate, which the Commonwealth does not appear to seriously dispute. Under the applicable, well-recognized standards of 11 U.S.C. §503(b), NTT DATA is entitled to payment for such services, and the Motion should be granted.

V. **The Services Performed by NTT DATA Merit Administrative Expense Treatment Under the Fundamental Fairness Exception**

44. Finally, the Commonwealth argues that the fundamental fairness exception established by the Supreme Court in *Reading Co. v. Brown*, 391 U.S. 471 (1968), does not apply to the Motion because NTT DATA failed to comply with the *Professional Services Contract* and the applicable local law (namely, Act 237-2004).

45. Nevertheless, as previously demonstrated, there was no need to amend the *Professional Services Contract* because the translation services were contemplated therein. Thus, NTT DATA did not violate Act 237-2004.

46. Similarly, NTT DATA did not breach the *Professional Services Contract*. Rather, it was the DoH who breached the agreement by failing to make any payments under the Original Invoice, even if it understood that the *Professional Services Contract* had been terminated, since the agreement required the DoH to make payments for the work in progress at the time of termination. NTT DATA was forced to issue the Amended Invoice after multiple conversations with the DoH, as a way to accommodate the Commonwealth by limiting the invoice so as to receive payment. *See* Declaration of Jim Tardella, **Exhibit 1**, ¶¶ 11, 12 & 13. Thus, the Commonwealth is estopped from resting on its own breach to avoid payment for the services rendered by NTT DATA.

47. Thus, if the Court understands that the services rendered by NTT DATA did not benefit the Commonwealth (which NTT DATA denies), it may still afford NTT DATA

administrative expense priority under the fundamental fairness exception of *Reading*. To allow the Commonwealth to now avoid paying NTT DATA would violate "fundamental fairness" and result in an injustice to NTT DATA. As a result, for this additional reason, the Motion should be granted.

WHEREFORE NTT DATA respectfully requests the Court (i) overrule the Objection, (ii) enter an order granting the Motion, and (iii) enter any other relief as is just and proper.

**Respectfully submitted.**

In Guaynabo, Puerto Rico, on June 20, 2022.

**ARROYO & RIOS LAW OFFICES, P.S.C.**
PMB 688
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Tel.: (787) 522-8080
Fax: (787) 523-5696
E-mail: mrios@arroyorioslaw.com


*s/ Moraima S. Ríos Robles*
Moraima S. Ríos Robles
USDC-PR No. 224912

*s/ Jessica A. Figueroa-Arce*
Jessica A. Figueroa-Arce
USDC-PR No. 225206

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice electronically to all counsel of record, and will provide hard copies to the Court and United States Trustee as soon as practical after the filing of the foregoing, consistent with the Court's Sixteenth Amended Case Management Order. *See* Docket No. 20190-1.

Dated: June 20, 2021.

*s/ Moraima S. Ríos Robles*
Moraima S. Ríos Robles
USDC-PR No. 224912

15