# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

## COBRA ACQUISITIONS LLC'S REPLY
## IN SUPPORT OF MOTION TO LIFT THE STAY ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this reply (the "Reply") to the *Joint Objection of the Financial Oversight and Management Board for Puerto Rico, Puerto Rico Electric Power Authority, and Puerto Rico Fiscal Agency and Financial Advisory Authority to Cobra Acquisitions LLC's Motion for Stay Relief* [Case No. 17-BK-3283, ECF No. 21241] (the "Objection") to *Cobra Acquisitions LLC's Motion to Lift Stay Order* [Case No. 17-BK-3283, ECF No. 21145] (the "Motion").[1] In support of this Reply, Cobra respectfully states as follows:

**REPLY**

1. At its core, this dispute is about Cobra's legitimate desire to be paid the sums that PREPA contractually owes it and that have been due and accumulating interest for over three years. Since Cobra filed the Administrative Expense Motion in September 2019, Cobra's interests have been continually disregarded to allow the Criminal Matter to be resolved—despite Cobra not having been charged, let alone convicted of any crime—and for the seemingly never-ending FEMA Analysis to reach conclusion. With the entry of guilty pleas for the two remaining defendants, the Criminal Matter no longer supports continuance of the Stay Order. The Government Parties may make whatever arguments they wish regarding how the Criminal Matter affects PREPA's liability to Cobra without implicating the concerns relevant to the Stay Order. While the government is always free to present additional information at the sentencing hearing, that would not change Cobra's position and the defendants do not have to accept or even agree to those representations. In fact, given that the heavily negotiated plea in this matter will result in the dismissal of the indictment and the entry of a single *gratuity* charge—not, contrary to the Government Parties' false assertion in the Objection, a *bribery* charge—and that the parties agreed to a minimal sentence to

---

[1] Unless otherwise specified, capitalized terms have the same meaning as in the Motion or the Objection, as applicable.

2

be imposed, it is most likely that the government will not present any additional evidence. But even if the government were to present some additional information in a few months, that alone is not sufficient grounds to continue to stay this matter.

2. Further, the Government Parties are asking this Court to prioritize the ongoing FEMA Analysis above PREPA's contractual commitments to Cobra—contractual commitments that PREPA agreed to in order to secure Cobra's efforts to help Puerto Rico recover from the greatest national disaster in Puerto Rico's history. The FEMA Analysis concerns whether costs under PREPA's Contracts with Cobra, which PREPA specifically approved, and for work PREPA oversaw, are eligible for federal funding. At its own expense, Cobra has worked with PREPA to respond to questions from FEMA in an effort to help PREPA receive federal funding. But the specific provisions of the Contracts relieve PREPA of liability to Cobra *only if* PREPA's inability to secure federal funding is Cobra's "sole fault." Rather than dispute this specific, controlling language in the Contracts, the Government Parties raise the general possibility that other conditions under the Contracts *may* relieve PREPA of its obligations to pay Cobra. But these entirely hypothetical claims by PREPA are purely contractual disputes between PREPA and Cobra, which would need to be resolved by this Court, not FEMA. That FEMA—over 38 months after Cobra successfully completed its work for the indisputable benefit of PREPA and the people of Puerto Rico—continues to analyze whether and how much federal funding is available for PREPA is not grounds to further stay resolution of contractual disputes between PREPA and Cobra.

3. In effect, the Government Parties seek to impose terms on Cobra that are not provided for under the Contracts and to which Cobra did not consent, all in a veiled attempt to avoid paying Cobra in accordance with its commitments. Nowhere did Cobra agree that it would be paid only when FEMA released funds for PREPA or that PREPA could withhold payment

3

because FEMA had not yet reimbursed PREPA. Nor did Cobra agree that its contracts with PREPA would be subject to the interpretations of the Contracts reached by FEMA. But that is precisely what the Government Parties appear to believe should be the outcome here: that payment of Cobra's outstanding claims should be conditioned on when and whether PREPA receives funding from FEMA, notwithstanding the lack of any contractual basis for such position.

4. The interests of justice not only weigh in favor of lifting the stay, but also implementing a sensible litigation schedule. At this point in the proceedings, PREPA should no longer be permitted to use FEMA as a pretext to evade its own contractual obligations under the Contracts, to which FEMA is not a party. PREPA presumably has the same information that FEMA does. If PREPA believes that it has valid contractual defenses to escape its obligations to Cobra, then PREPA should make those arguments *now*. If PREPA believes that lifting the stay will result in a barrage of discovery and duplicative litigation (surely an unlikely scenario, given the extent of informal information sharing to date), then PREPA should explain specifically what additional information it needs to assess its liabilities to Cobra *now*. Indeed, the Government Parties have it precisely backwards in the Objection when they say that litigating these disputes now could cause "FEMA [to] determine that a dispute exists as to whether costs are payable under the contract and choose to pause its analysis until the litigation is resolved." Obj. ¶ 4. In short, there is no valid reason why the parties cannot work cooperatively to develop a litigation schedule that identifies and narrows issues that will need to be addressed by the Court. In the meantime, Cobra, of course, will continue to assist PREPA in securing as much federal funding as possible. But continuing to wait and see how the FEMA Analysis concludes when the parties explicitly bargained that PREPA would be relieved of liability only if failure to secure federal funding was Cobra's "sole fault," has long ceased to be fair or just.

5. Accordingly, Cobra respectfully requests that the Court grant the Motion.

**A.  The Resolution of the Criminal Matter Weighs in Favor of Lifting the Stay**

6. As an initial matter, the Government Parties repeatedly and misleadingly refer to and characterize the guilty plea entered by Cobra's former president as a "bribery" charge. Obj. ¶¶ 1, 2, 26, 27, 28, 32. To be clear: Cobra's former president did *not* plead guilty to bribery, but rather to a gratuity under 18 U.S.C. § 201(c). Indeed, as part of the plea agreement, the government has agreed to dismiss the bribery charges set forth in the indictment. Against this undeniable fact, the Government Parties' blithe insistence on calling it a bribery charge while also ignoring that the statement of facts supporting the plea agreement has nothing to do with the Contracts, or the work performed thereunder, is indicative of the general manner in which the Government Parties are trying to avoid the relevant and specific contract sections and the statutes at issue by talking about hypotheticals and by using inflammatory generalities.

7. Notwithstanding their derogatory remarks, the Government Parties do not appear seriously to contest that the resolution of the Criminal Matter is a material change in circumstances and no longer weighs in favor of the stay. In an effort to avoid admitting as much, the Government Parties attempt to tie the Criminal Matter to the FEMA Analysis, without any support or logic. The Government Parties suggest that FEMA could rely on evidence submitted at the sentencing hearing in its review process (Obj. ¶ 25), but the Government Parties fail to explain why FEMA would take this bizarre step, as it would punish PREPA for actions taken by Mr. Ellison and Ms. Tribble. While the Government Parties allege that "FEMA was so concerned about the criminal charges" that it directed COR3 to cease making payments of FEMA funds to Cobra (Obj. ¶ 20), not only has Cobra never seen this document (or, until recently, been aware of it existence), but the alleged date of the communication (March 28, 2020) was *more than six months* after the indictments were unsealed and publicly available. Notably, since 2017, Cobra's affiliates have responded to no

5

fewer than 15 storm restoration projects funded by FEMA for natural disaster recovery and have been paid for every single one—a fact that undermines any suggestion that FEMA was "so concerned" about the criminal charges. Indeed, more than half of these storm restoration projects occurred *after* March 28, 2020.

8. More to the point, FEMA did not invoke the Criminal Matter in its May 26, 2021 Determination Memorandum or the subsequent appeal decision, which was released *after* the entry of the guilty pleas. If FEMA were planning to use the Criminal Matter to assist in its analysis of the Contracts, it is perplexing why FEMA would dedicate the resources to continuing such analysis rather than waiting for the final outcome. Indeed, having made the choice to incur over $123 million of contractually due interest on its late payments, it is hard to view the Government Parties' invocations of the effects the Criminal Matter may have on the allowance of interest as anything but posturing.[2] *See* Obj. ¶ 20 (contending that PREPA may be relieved of its obligations to pay Cobra interest because the delay in payment was Cobra's fault).

9. The rest of the Government Parties' arguments as to the continuing relevance of the Criminal Matter suggest only that the Stay Order should be lifted. Specifically, the Government Parties continue their practice of speculating how the Criminal Matter could form the basis of potential contract defenses, invoking (though, as always, without any seeming logic) breaches of loyalty—ignoring the plain language of the Contracts that such duty is owed in connection with "executing" the services "pursuant to" the Contracts, and not as to any conduct unrelated to the

---

[2] The Government Parties, not Cobra, sought entry of the Stay Order, and PREPA stopped paying Cobra in May 2019—almost a year before the single piece of evidence (the March 28, 2020 communication from FEMA) that the Government Parties cite as a possible basis for Cobra being at fault for the cessation of funds to PREPA. Cobra's unpaid work has inured to PREPA's benefit, and Cobra is entitled to its contractual right of compensation for interest on its unpaid invoices. Cobra, simply put, was not the cause of delay here. *See, e.g.*, *Selective Way Insruance Co., v. Servpro of King of Prussia*, 2006 U.S. Dist. LEXIS 117223, at *3-4 (E.D. Pa. June 5, 2006) (finding entitlement to prejudgment interest notwithstanding a stay due to a criminal investigation).

6

Contracts, such as the actions described in Mr. Ellison's plea—and good faith and fair dealing.[3] If PREPA believes in those contract defenses, then it is now time for PREPA to make its claims and serve any additional discovery it believes is necessary. Other than some hypothetical additional information introduced at the sentencing hearing (which, if it does exist, will very likely be disputed by the defendants) that will occur in a matter of months, the Government Parties presumably have the information they need to form their defense and the Criminal Matter no longer supports continuance of the Stay Order. There is no longer a risk of duplication or inconsistent rulings between this Court and the court presiding over the Criminal Matter.

10. As the Objection itself demonstrates, the Government Parties' theories of potential claims against Cobra require consideration far beyond what was produced or considered through the Criminal Matter. In their initial motion to stay these proceedings, the Government Parties asserted that allowing the completion of the Criminal Matter would inform this Court and the parties as to the "relevant facts relating to Ellison, Tribble, and Patterson's alleged crimes and their impact on PREPA's dealings with Cobra." Case No. 17-3283, ECF No. 8838, ¶ 26. With the entry of the guilty pleas, and the Government's agreement to dismiss the indictment, these "relevant facts" regarding the Criminal Matter are now known, and the gratuity charge for actions unrelated to the Contracts and the work performed thereunder is a far cry from the Government Parties' past insinuations regarding "corruption" in the "procurement, administration, and performance of the Cobra Contracts." *Id*. The Government Parties nonetheless state that "it is also not impossible …

---

[3] As in the past, the Government Parties let their imaginations roam free when they suggest that PREPA "possibly may be entitled to disgorgement of all profits obtained from the Cobra Contracts." Obj. ¶ 27. PREPA has never disputed that Cobra performed all of the work required to rebuild Puerto Rico's electrical system as provided in the Contracts, and the high quality and efficacy of Cobra's work has never been disputed. It would be a strange result to suggest that Mr. Ellison's unilateral decision to thank Ms. Tribble for her efforts to direct additional work to Cobra, work that was outside of the Contracts at issue in this proceeding and that never materialized, through the provision of airfare, accommodations and personal security to a FEMA employee having a value of $8,000 resulted in material harm to PREPA of such a degree as to disgorge all of Cobra's profits under the Contracts.

that other improper conduct occurred. Indeed, the Guilty Pleas do not state, and thus do not prove, that no additional facts supporting criminality exist[.]" Obj. ¶ 26. If the Government Parties believe other "improper conduct" occurred, the answer to such is to lift the Stay Order so that the parties may confer on a schedule to litigate such contract defenses and allow any additional discovery that PREPA may need to support its vague, and heretofore unsupported, allegations. Any such schedule can, of course, accommodate the upcoming sentencing hearing so that PREPA is able to evaluate any additional information that may be produced at such hearing. But the Government Parties' conjectures and hypotheticals do not support the continued imposition of the stay.

    **B.  The FEMA Analysis Cannot Be Used to Suspend Indefinitely Cobra's Right to Payment under the Contracts**

  11.  The Government Parties continue to conflate the FEMA Analysis with their liability to Cobra and the analysis required by this Court under Bankruptcy Code section 503(b). *See, e.g.*, Obj. ¶ 3 ("FEMA is determining whether amounts Cobra billed were validly charged under the PREPA contracts; if they were not, Cobra's administrative claims against PREPA would not be allowable."). FEMA, of course, is not a party to the Contracts, and the FEMA Analysis is not binding on this Court or the parties. The FEMA Analysis affects only how much public assistance PREPA may receive. PREPA is expressly obligated to pay Cobra whether or not FEMA reimburses PREPA, unless FEMA's failure to reimburse PREPA was Cobra's "sole fault." Nothing in the record or to Cobra's knowledge has indicated that Cobra would be solely at fault for any failure to secure funding from FEMA. After all, as Cobra has argued before, PREPA voluntarily agreed to the terms of the Contracts following a competitive bidding process, including Cobra's rates, and did so only after multiple levels of review and approval and advice of counsel. Cobra performed

8

its work under the Contracts under the direction of PREPA and FEMA officials, and no party has ever disputed that Cobra was highly successful at restoring power to the island.[4]

12. The Government Parties' arguments to the contrary are unpersuasive. *First*, the Government Parties imply that, because FEMA's review of the First Contract was "comprehensive" (Obj. ¶ 16), the parties should defer to that process and let it run to its conclusion—whenever that may be. Given that FEMA's analysis of the First Contract took approximately two years, it would be surprising if it were not "comprehensive." But what matters is if it was fair and reasonable, and it is a far stretch to suggest that when the Court entered the Stay Order in October 2019 that the Court's conclusion that "FEMA's ongoing analysis of Cobra's contracts with PREPA … weighs in favor of a stay" was meant to effectively stay these proceedings in perpetuity, particularly when FEMA has consistently missed its deadlines. Cobra's response has been consistent: being subjected to an administrative process over which Cobra has no control is not what Cobra bargained for, and, to date, Cobra believes that FEMA's conclusions as to the de-obligated amounts are inconsistent with the First Contract.

13. *Second*, ignoring that FEMA is not party to the Contracts, the Government Parties suggest that the FEMA Analysis will determine PREPA's liability to Cobra. *See* Obj. ¶ 19. Not so. Section 503(b)(1)(A) of the Bankruptcy Code—which section 301 of PROMESA incorporates—grants administrative expense priority to post-petition transactions supplied to and beneficial to the debtor and its operations. *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992); *Supplee v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 479 F.3d 167, 172 (2d Cir. 2007). While federal cost principles may be similar, they are not the same. It is possible that FEMA could reach a different conclusion than this Court about whether

---

[4] The entry of the guilty pleas also cannot support an argument that the failure to secure FEMA funding was Cobra's sole fault, since Ms. Tribble's actions, as an employee of FEMA, could not be attributable solely to Cobra.

9

Case:17-03283-LTS Doc#:21286 Filed:06/21/22 Entered:06/21/22 16:03:03 Desc: Main
Document Page 10 of 14

costs incurred by Cobra were "actual [and] necessary," but only this Court could enter an order binding the parties. *See id.* Further, even if costs were "outside the scope of the contract" (Obj. ¶ 20), the law is clear that such costs could constitute administrative expenses if Cobra were to establish "that its expenses are attributable to the actions of [PREPA] through evidence of either a direct request from [PREPA] or other inducement via the knowing and voluntary post-petition acceptance of desired goods and services." *Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 443, 445-47 (5th Cir. 2019); *accord In re Mammoth Mart Inc.*, 536 F.2d 950, 955 (1st Cir. 1976) (when a debtor "accepts services from a third party without paying for them, the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority.").

14. In light of the foregoing, the Government Parties make various arguments regarding their potential right to setoff if FEMA determines not to reimburse PREPA. But once again, this (wrongly) assumes that FEMA's determinations are binding on Cobra and PREPA under the Contracts. They are not. Absent a finding that the failure to secure federal funding was Cobra's sole fault, it would be contrary to general contractual principles to excuse PREPA of its obligations to Cobra because, for whatever reason, PREPA submitted invoices for payment that FEMA determined were not eligible for federal funding.

15. While the Government Parties may believe the FEMA Analysis is the "most efficient" means of concluding these disputes, as the Objection makes clear, the Government Parties are playing for delay—to Cobra's substantial prejudice.[5] Irrespective of how the

---

[5] In another misrepresentation, the Government Parties state that the tax gross-up amount remains under review by "PREPA *and Cobra*." Obj. ¶ 5, n.5. In reality, PREPA has been reviewing the tax gross-up since 2018, and Cobra has cooperated in that review, most recently by providing additional information to PREPA and meeting with PREPA's tax consultant. Cobra, however, is not reviewing its claim and maintains—as it has consistently—that it is entitled to reimbursement of the tax gross-up amount under the plain terms of the First Contract.

Government Parties characterize their deference to FEMA, this process is not what Cobra bargained for when it agreed to the Contracts and successfully performed its obligations. Cobra has no independent insight into FEMA's process and, more importantly, despite Cobra's best efforts, Cobra has not been paid a cent by PREPA since March 2019.[6] Cobra is more than willing to cooperate, but it is all too apparent that PREPA will continue to use the Stay Order to drag out negotiations and a resolution of Cobra's claims as long as possible.

16. Cobra's request in the Motion is straightforward. The interests of justice no longer support the continuance of the stay. The Criminal Matter is resolved (and, to the extent there is any additional information, it will be submitted by August 17th), and the FEMA Analysis is subject to an indefinite timeline, notwithstanding whatever vague assurances the Government Parties may proffer as to their expectations of its near-term completion. The Administrative Expense Motion has been stayed for nearly three years, with the passage of time greatly increasing the substantial prejudice to Cobra from delay. Whether or not the $40.4 million that PREPA apparently has in an account that was appropriated in respect of the Contracts can or cannot be moved "freely" to other accounts (Obj. ¶ 5), the fact remains that PREPA has more than $1 billion on its balance sheet through which it presumably could pay Cobra what it is owed. Yet Cobra has not received any payment since for over three years. These changed circumstances warrant lifting the Stay Order and allowing the parties to proceed with resolving the outstanding disputes. As Cobra has acknowledged repeatedly, even if the Stay Order is lifted, the parties can act prudently to develop

---

[6] While the Government Parties dismiss Cobra's concerns over its lack of visibility into FEMA's processes, the Objection bears out these concerns. Cobra knows only what PREPA or its advisors decide to share with Cobra. For instance, Cobra has never seen, and did not learn of until recently, the referenced March 28, 2020 communication from FEMA to COR3 (or, for that matter, any further communications in that respect). Obj. ¶ 20. And the Objection otherwise is chock full of vague, often passive, references to communications or "expectations" of which Cobra has no first-hand knowledge. *See, e.g.*, Obj. ¶ 14 ("FEMA advised . . ."); Obj. ¶ 15 ("PREPA is informed that FEMA has prepared . . ."; "all indications are that the project is progressing"; "PREPA has been orally advised by FEMA"); Obj. ¶ 17 (suggesting that delays in the FEMA Analysis were "no doubt exacerbated by the criminal proceedings").

a sensible and rational schedule that focuses the parties on identifying and narrowing the issues in dispute and determining what discovery, in fact, is needed.

## **CONCLUSION**

WHEREFORE, for the reasons set forth in the Motion and herein, Cobra respectfully requests that this Court enter an order, substantially in form attached as **Exhibit A** to the Motion, granting the relief requested therein, and granting Cobra such other relief as this Court deems just and proper.

Dated: June 21, 2022

Respectfully submitted,

/s/ Carlos R. Rivera-Ortiz
Rafael Escalera Rodríguez (No. 122609)
Sylvia M. Arizmendi (No. 210714)
Carlos R. Rivera-Ortiz (No. 303409)
José Feliciano-Boada (No. 307908)
REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888
Email:  escalera@reichardescalera.com
arizmendis@reichardescalera.com
feliciano@reichardescalera.com
riverac@reichardescalera.com

Ira S. Dizengoff (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
Philip C. Dublin (*pro hac vice*)
Steven M. Baldini (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1000
Fax: (214) 872-1002
Email:  idizengoff@akingump.com
aqureshi@akingump.com
pdublin@akingump.com
sbaldini@akingump.com

--and--

Thomas P. McLish (*pro hac vice*)
Scott M. Heimberg (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email:  tmclish@akingump.com
sheimberg@akingump.com

*Attorneys for Cobra Acquisitions LLC*

## **CERTIFICATE OF SERVICE**

We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

/s/ Carlos R. Rivera-Ortiz
No. 303409