# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | (Jointly Administered) |
| Debtors.[1] | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3567-LTS |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Debtor. | |

**NOTICE OF (I) APPROVAL OF DISCLOSURE
STATEMENT, (II) ESTABLISHMENT OF RECORD DATES,
(III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT
AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF
ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE
PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.　　*Approval of Disclosure Statement.* By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**

**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
　　　　**(844) 822-9231 (toll free for U.S. and Puerto Rico)**
　　　　**(646) 486-7944 (for international callers)**

---

[2]　On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3]　All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

> **Email: puertoricoinfo@primeclerk.com**
>
> Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2.       Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

|  | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3.       ***Confirmation Hearing.***  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

   a. Be in writing, in English, and signed;

   b. State the name, address, and nature of the Claim of the objecting or responding party;

   c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;

   d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**.

4

    i.    If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

> United States District Court, Clerk's Office
> 150 Ave. Carlos Chardon Ste. 150,
> San Juan, P.R. 00918-1767

so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and

e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8.    ***Confirmation and Discovery Timetable and Deadlines***.  The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

| Summary of Certain Deadlines | |
|---|---|
| **July 1, 2022** | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "<u>Fact Witness Lists</u>"). |
| | Deadline for Parties to file opening expert disclosures ("<u>Opening Expert Disclosures</u>"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("<u>Production Requests</u>").  Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests.  Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| **July 8, 2022** | Deadline for Parties to serve up to fifteen (15) interrogatories ("<u>Interrogatories</u>"), including subparts.  Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| **July 12, 2022** | Deadline for Parties to file opening expert reports ("<u>Opening Expert Reports</u>"), if any.  If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("<u>Notices of Deposition</u>") (all parties are limited to a seven (7)-hour time limit for depositions). |

| | |
|---|---|
| **July 18, 2022** | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| **July 20, 2022** | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| **July 22, 2022** | Completion of expert discovery (the "Expert Discovery Deadline"). |
| **July 25, 2022** | Deadline for Parties to file Daubert motions and motions *in limine*. |
| **July 27, 2022** | Deadline for: <ul><li>Objections to confirmation of the Plan ("Objections").</li><li>Objections to Proposed Confirmation Order.</li></ul> |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| **July 29, 2022** | Deadline for Parties to file oppositions to Daubert motions and motions *in limine*. |
| **August 1, 2022** | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| **August 3, 2022** | Deadline for Parties to file replies in support of Daubert motions and motions *in limine*. |
| **August 4, 2022** | Deadline for Parties to file objections to counter-designations |
| **August 7, 2022** | Deadline for Debtor to file: <ul><li>Memorandum of law in support of confirmation.</li><li>Omnibus reply to objections to confirmation and proposed confirmation order.</li><li>Witness Declarations & Vote Tabulation.</li><li>Findings of Fact and Conclusions of Law.</li></ul> |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| **August 8, 2022** | Virtual Pretrial conference. |
| **August 15, 2022** | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| **August 17-18, 2022** | Confirmation Hearing |

9.    ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record

Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond

Classes) are entitled to vote on the Plan.  Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10.     ***Voting Deadline.***   The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline").  ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11.     If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline.  ***Failure to follow such instructions may disqualify your vote.***

12.     ***Election Deadline***.  The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline").  If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to

---

4    On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to *actually effectuate* your election through DTC's ATOP on or before the Election Deadline.

13.     ***Parties in Interest Not Entitled to Vote.***  Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14.     Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);

- Class 19 (Convenience Claims).

15.     If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16.     If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed

8

on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17.    If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18.    ***Parties Who Will Not Be Treated as Creditors***.  Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise

9

deemed timely filed under applicable law, shall not be treated as a creditor with respect to such

Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19.       ***Additional Information***.  Any party in interest wishing to obtain information about

the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish

translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC,

by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for

international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish

available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by

accessing    either    https://cases.primeclerk.com/puertorico/    or    the    Court's    website,

https://www.prd.uscourts.gov/.  Please note that a Public Access to Court Electronic Records

("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access

documents on the Court's website.

20.       ***Bankruptcy Rules 2002(c)(3) and 3016(c))*.  In accordance with Bankruptcy**

**Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction**

**provisions contained in the Plan:**

**Section 41.2 – Discharge and Release of Claims and Causes of Action**:

(a)       **Except as expressly provided in the HTA Plan or the HTA
Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and
shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge
and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that
arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the
Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any
nature whatsoever, including any interest accrued on such Claims from and after the HTA
Petition Date, and regardless of whether any property will have been distributed or retained
pursuant to the HTA Plan on account of such Claims or Causes of Action; provided,
however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the
HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended,
nor shall it be construed, to be a grant of a non-consensual third party release of the
HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor.
Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged**

and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan.  For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity.  Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b)    Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c)    Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the

11

HTA Plan.

(d)     SEC Limitation.  Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

(e)     United States Limitation.  Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor.  Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

(f)     Underwriter Actions.  Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims,

12

defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

**Section 41.3 – Injunction on Claims**:

Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective

assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

   **Section 41.5 – Releases by the Debtor and Reorganized HTA**:

   Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.
   **Section 41.6 – Injunction Related to Releases:**

   As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order.  For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and

14

**Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.**

**Section 41.7 – Exculpation:**

**(a)      Government Parties:  The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.  Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.**

**(b)      HTA/CCDA PSA Creditors:  Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(c)      Monoline Insurers:  Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of**

15

obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies <u>provided</u>, <u>however</u>, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).

(d)     <u>Creditors' Committee</u>:    Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and <u>provided</u>, <u>further</u>, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(e)     <u>The DRA Parties</u>:    Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; <u>provided</u>, <u>however</u>, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional

16

**fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation:**

Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.

**Section 41.9 – Bar Order:**

To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

17

**Section 41.11 – Supplemental Injunction:**

**Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a)    Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b)    Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c)    Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d)    Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e)    Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square

18

New York, NY 10036

*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*