**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------------ x
: 
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, *et al.*, : (Jointly Administered)
:
Debtors.[1] :
------------------------------------------------------------------------ x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-4780 (LTS)
:
PUERTO RICO ELECTRIC POWER AUTHOIRTY, :
:
Debtor. :
------------------------------------------------------------------------ x

**LIMITED OMNIBUS OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (A) URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR ORDER EXTENDING MEDIATION TERMINATION DATE AND RELATED PATH FORWARD DEADLINE AND (B) MEDIATION TEAM'S NOTICE AND REQUEST FOR APPROVAL OF SECOND <u>EXTENSION OF TERMINATION DATE OF MEDIATION</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully submits this limited omnibus objection (the "Limited Objection") to (a) the *Urgent Motion of Financial Oversight and Management Board for Order Extending Mediation Termination Date and Related Path Forward Deadline* [Docket No. 2862 in Case No. 17-4780 (LTS)] (the "Oversight Board's Extension Request") and (b) the *Mediation Team's Notice and Request for Approval of Second Extension of Termination Date of Mediation* [Docket No. 2860 in Case No. 17-4780 (LTS)] (the "Mediation Team's Extension Request" and, together with the Oversight Board's Extension Request, the "Extension Requests").[2] In support of this Limited Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. PREPA's Title III case has now been pending for almost five years. During that time, a single strategy has been pursued: to attempt to formulate a plan of adjustment by negotiating exclusively with the PREPA bondholders, while staying indefinitely the Committee's objection to the PREPA bond claims—an objection which seeks to narrowly define the nature and scope of the PREPA bondholders' legal entitlements and thereby drastically simplify the issues in this Title III case. After five years, the results are in: that strategy has gone nowhere. It is time to shift course. The only way to finally make meaningful progress toward the conclusion of this case is for litigation to commence on the key legal issues underlying the scope of the PREPA bondholders' claims and security interest.

---

[1] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Extension Requests.

2. Specifically, as discussed in the Committee's limited objection to the Oversight Board's prior extension request,[3] the Committee proposes that litigation proceed on the following two discrete legal issues (the "Threshold Issues"): (1) whether the PREPA bondholders' security interest is limited to funds actually deposited into specified accounts held by the PREPA bond trustee (in the amount of approximately $8 million as of PREPA's petition date); and (2) whether the PREPA bonds are non-recourse obligations such that the PREPA bondholders have no claim against, and are not entitled to distributions from, PREPA for any difference between the face amount of the bonds and the funds on deposit in the specified accounts. As detailed below, the Committee submits that the Threshold Issues can be litigated on an expedited timetable—especially when compared to the two-and-a-half year delay resulting from the now-terminated RSA. Accordingly, the Committee objects to an additional one-month extension of mediation without also allowing for the proposed litigation to commence.

3. To be clear, the Committee is not requesting that mediation be terminated. The Committee continues to support a mediation process that brings **all parties** to the negotiating table to attempt to reach a global settlement on an expedited timetable. But there is no reason why the parties cannot litigate while settlement discussions continue. In fact, litigation will likely help motivate the parties to make progress in settlement discussions. This approach produced results in many instances in these Title III cases, and there is no reason to believe that it would not work here. For these reasons, and as further detailed below, any extension of the Termination Date until August 1, 2022 should be conditioned on also allowing litigation on the

---

[3] *See Limited Objection of Official Committee of Unsecured Creditors to Urgent Motion of Financial Oversight and Management Board to Extend June 1, 2022 Deadline* [Docket No. 2824 in Case No. 17-4780 (LTS)] (the "Committee's Objection to Prior Extension Request").

2

Threshold Issues to go forward. This will require the Oversight Board to comply with its current July 1, 2022 deadline to propose a litigation schedule.

**LIMITED OBJECTION**

A. **The Time Has Come to End *Ad Seriatim* Extensions That Preclude Litigation Regarding PREPA Bondholders' Legal Entitlements**

4. At first blush, pushing off litigation by one additional month may not appear all that significant in the larger context of PREPA's five-year-long case. The Committee submits, however, that the opposite is true. Since the Oversight Board filed its Rule 9019 motion to approve the RSA in May 2019 [Docket No. 1235 in Case No. 17-4780 (LTS)] (the "9019 Motion"), at least twenty adjournments and extensions were granted in furtherance of the "settlement without litigation" strategy, including (a) eight orders adjourning the briefing and hearing schedule with respect to the 9019 Motion,[4] (b) ten orders granting a stay and extending the stay of the 9019 Motion,[5] which effectively precluded the Committee from moving forward with its challenges to the PREPA bond claims, and (c) most recently, two extensions of the Oversight Board's deadline to file a plan, a plan term sheet, or a proposed litigation schedule.[6] These *ad seriatim* extensions (each for seemingly short periods of time) need to come to an end.

5. Indeed, the Court recognized this when it issued its March 8, 2022 order [Docket No. 2748 in Case No. 17-4780 (LTS)] (the "Path Forward Order") directing the Oversight Board to file, by no later than May 2, 2022 (the "Path Forward Deadline"),[7] (a) a plan of adjustment, (b) a term sheet for a plan of adjustment, (c) a litigation schedule, or (d) a declaration and

---

[4] *See* Docket Nos. 1253, 1366, 1534, 1579, 1639, 1716, 1858, and 1914 in Case No. 17-4780 (LTS).

[5] *See* Docket Nos. 1954, 2006, 2120, 2287, 2341, 2404, 2494, 2548, 2636, 2699, and 2747 in Case No. 17-4780 (LTS).

[6] *See* Docket Nos. 2785 and 2827 in Case No. 17-4780 (LTS).

[7] The Court subsequently extended the Path Forward Deadline, at the request of the Oversight Board, to July 1, 2022.

3

memorandum of law showing cause why the Court should not consider dismissal of the Title III case. As the Court stated in the Path Forward Order, "the Court is willing to entertain a **prompt** consensual revival of a private mediation proposal, accompanied by . . . a **timetable**."[8] Accordingly, the Court imposed the Path Forward Deadline "in light of the **length of time** that has passed since the filing of these cases and the Oversight Board's **indefinitely delayed prosecution of the Rule 9019 Motion**, AAFAF's notice of RSA termination announcement, and the seemingly diminishing prospect of proposing **promptly** a plan of adjustment."[9] Moreover, in its April 8, 2022 order establishing the terms and conditions of mediation, the Court required that mediation conclude by June 1, 2022, subject to a one-month extension to July 1, 2022 at the option of the Mediation Team (which option the Mediation Team exercised), and with any further extension requiring approval of the Court, on notice to parties in interest.[10]

6. The Extension Requests do not address the Court's concerns regarding indefinite delays and the duration of this case, nor do they offer any justification as to why an additional month of mediation (while continuing to stay litigation) would advance the formulation of a plan of adjustment. While the Oversight Board asserts that mediation "requires additional time,"[11] this is not the real issue before the Court—indeed, virtually any mediation that has not yet resulted in a settlement could benefit from more time. The real question is whether one more month of mediation without allowing litigation to commence **would bring PREPA closer to a**

---

[8] Path Forward Order at 10 (emphases added).

[9] *Id.* at 12 (emphases added).

[10] *See Order Establishing the Terms and Conditions of Mediation* [Docket No. 2773 in Case No. 17-4780 (LTS)] (the "Mediation Order") ¶ 3.

[11] Oversight Board's Extension Request ¶ 8. In that respect, the Oversight Board's Extension Request echoes the Mediation Parties' Extension Request, which notes that "it would be beneficial to the mediation process for the Mediation Team to continue facilitating negotiations among Mediation Parties." Mediation Team's Extension Request at 2.

**successful emergence from Title III**. That question requires an assessment of, among other things, whether there is a real prospect that mediation will lead to a successful global settlement within one additional month's time. Neither Extension Request answers that question. The Oversight Board's Extension Request instead concedes that it is "premature" to predict whether mediation will ultimately be successful.[12]

7. The Committee recognizes that the Mediation Parties are precluded from disclosing communications made in connection with the mediation.[13] Because of this, the Committee finds itself in the difficult position of having to explain its limited opposition to the Extension Requests without being able to address the substance of the mediation. The Committee believes, however, that it is free to respond to one process point that the Oversight Board raised in its extension request, namely the assertion that "the Mediation Team and the Mediation Parties have engaged in numerous mediation sessions."[14] The Committee is compelled to clarify that, as to the Committee, that statement is simply not accurate. For that reason, the Committee submits that the Court should view with caution the Oversight Board's sweeping assertion that "the parties continue to engage constructively to determine whether a consensual plan of adjustment is attainable."[15]

8. Moreover, the Oversight Board's position that the Committee is not prejudiced because it will have the opportunity to object to any eventual settlement misses the mark.[16] The Committee has been deprived (for more than two-and-a-half years now) of pursuing a judicial

---

[12] Oversight Board's Extension Request ¶ 8.

[13] Mediation Order ¶ 8.

[14] Oversight Board's Extension Request ¶ 8.

[15] *Id.*

[16] *Id.* ¶ 9

5

determination as to whether (a) the PREPA bondholders' security interest is limited to certain specified accounts and (b) the PREPA bondholders have any unsecured deficiency claim in light of the non-recourse nature of the PREPA bonds. Having the ability to object to the reasonableness of a settlement (assuming one is ever reached) is not a substitute for being able to pursue a ruling on the merits.

**B.      Allowing Litigation on Threshold Issues to Commence Now Would Not Be a Distraction or Costly**

9.      Contrary to the Oversight Board's assertion, allowing litigation of the Threshold Issues to commence at this time (while mediation continues concurrently) would be neither a distraction nor costly—especially when viewed through the lens of the, by far, most significant cost incurred in PREPA's Title III case: the loss of five years. There is no reason to believe that sophisticated parties such as the Oversight Board, AAFAF, the monoline insurers, and the various PREPA bondholders (each of which are represented by capable counsel) could not "walk and chew gum" at the same time. The experience in Puerto Rico's Title III cases has shown that these parties are more than capable of concurrently pursuing mediation and litigation—this is what they have been doing, in essence, for almost the entirety of the Commonwealth, HTA, ERS, and COFINA cases.

10.      Rather than being a distraction to settlement negotiations, litigation of narrow threshold questions is likely to advance PREPA's Title III case—and thus benefit the mediation process—by clarifying the scope of the PREPA bondholders' asserted claims and security interest.[17] Indeed, in these Title III cases, litigation of key legal issues has often acted as the necessary catalyst to bring parties together to reach a settlement. Examples include the

---

[17]   The Committee could further elaborate as to why having clarity on these narrow legal issues would greatly benefit the mediation process; however, in light of mediation confidentiality, the Committee is precluded from doing so.

settlement with holders and insurers of HTA bonds (after the Court ruled on the scope and limits of the HTA bondholders' security interest), the settlement with certain holders of ERS bonds (after the Court issued its most-recent decision in the ERS litigation, which was affirmed on appeal to the First Circuit), and the Commonwealth-COFINA settlement (when settlement was reached after conclusion of the summary judgment hearing while a decision from this Court was forthcoming). Against the backdrop, it is perplexing, to say the least, why the PREPA bondholders have been insulated from challenges to their asserted claims and security interest for five years.

11. Nor is the specter of litigation costs an adequate justification to continue precluding litigation of the Threshold Issues. As the Committee explained in its objection to the Oversight Board's prior extension request, such litigation could proceed on an expedited timetable.[18] The Threshold Issues have already been extensively briefed in (a) the Committee's objection to the PREPA Bonds [Docket No. 1691 in Case No. 17-4780] (which objection was terminated without prejudice in light of the then-pending 9019 Motion) and (b) the Oversight Board's adversary proceeding challenging the scope of the PREPA bondholders' security interest (which adversary proceeding is currently stayed), *see* Adv. Proc. No. 19-391 (LTS). While it is true that the PREPA bondholders have not yet briefed their opposition to these pleadings, they and their counsel should certainly be familiar with all relevant arguments for some time now. Moreover, the Court is already familiar with at least the first of the two Threshold Issues (*i.e.*, the narrow scope of the bondholders' security interest), which it previously addressed in the context of the HTA lift-stay litigation, based on HTA bond documentation that is, for all practical purposes, identical to the PREPA bond documentation. In that case, the Court concluded that the

---

[18] *See* Committee's Objection to Prior Extension Request ¶ 6.

HTA bondholders *did not have even a colorable claim to any form of property right (whether direct ownership or a security interest) in any of the assets targeted by the HTA bondholders other than revenues <u>actually</u> collected and <u>actually</u> deposited into certain designated accounts.* *In re Fin. Oversight & Mgmt. Bd. For P.R.*, 618 B.R. 619, 637-39 (D.P.R. 2020) (subsequent history omitted).[19]

12. Moreover, resolution of the Threshold Issues should not require any fact discovery, as these issues involve pure questions of law and contract interpretation. While the PREPA bondholders have asserted that, just as in the clawback litigation, discovery would be necessary,[20] the comparison to the clawback litigation is inapt. In the clawback litigation, the holders and insurers of HTA, CCDA, and PRIFA bonds asserted property interests in the so-called "clawback" revenues held by the Commonwealth before they were transferred to HTA, CCDA, and PRIFA. In that context, discovery involved complex issues regarding the flow of funds from the Commonwealth to these instrumentalities. By contrast, no Commonwealth accounts or transfer of funds from the Commonwealth are at issue here; all relevant accounts are with PREPA. And even if some limited discovery were necessary with respect to the flow of funds within PREPA (which the Committee does not believe is the case), this is certainly no justification to indefinitely shield the PREPA bondholders from all litigation. Similarly, and contrary to the PREPA bondholders' assertion,[21] the length of the clawback litigation is by no

---

[19] In the PREPA case, the matter is even more clear-cut, as the opinions rendered by PREPA's bond counsel at the times of issuance of the PREPA bonds (which opinions were included as part of the official statements to such bonds) explicitly state that the PREPA bonds are "payable *solely* from the Sinking Fund, . . . which Fund is pledged to and charged with the payment of the principal of and interest on such bonds . . . ." *See, e.g.*, PREPA Series 2013A Official Statement (Aug. 15, 2013), App'x IV ¶ 6 (emphasis added).

[20] *See The PREPA Bondholders' Informative Motion Regarding Reply of the Financial Oversight and Management Board in Support of Motion to Extend June 1, 2022 Deadline* [Docket No. 2828 in Case No. 17-4780 (LTS)] (the "PREPA Bondholders' Informative Motion") ¶ 4.

[21] PREPA Bondholders' Informative Motion ¶ 4.

8

means indicative of how long it would take to litigate the Threshold Issues. As the Court is well aware, the clawback litigation involved multiple, concurrent adversary proceedings (with respect to bonds issued by three different instrumentalities, *i.e.*, HTA, CCDA, and PRIFA) as well as related lift stay motions. Here, there would only be one single adversary proceeding.

13. The PREPA bondholders have also asserted that opening the door to litigation would significantly delay PREPA's Title III case because the bondholders would seek affirmative relief (such as the dismissal of PREPA's Title III case or the appointment a receiver).[22] However, this issue could be easily mitigated by sequencing the litigation, with the resolution of the Threshold Issues to come first. In fact, that makes eminent sense here because (a) the question of dismissal turns, in large part, on whether the Oversight Board is adequately prosecuting this Title III case (which would undoubtedly be the case if litigation on the Threshold Issues goes forward) and (b) the question as to whether the automatic stay should be lifted to allow for the appointment of a receiver depends, in large part, on the extent of the PREPA bondholders' security interest (which would be addressed as part the litigation on the Threshold Issues). For all these reasons, the Committee submits that the Threshold Issues could be litigated (including any appeals to the First Circuit) within a matter of months.[23]

## **CONCLUSION**

14. To repeat, the Committee is not suggesting at this time that mediation be put on hold in favor of litigation. The Committee is merely requesting that the Court condition any extension of the Termination Date on also allowing litigation on the Threshold Issues to

---

[22] *Id.* ¶ 7.

[23] Experience in these Title III cases shows that the First Circuit is willing to consider appeals on an expedited basis under section 106(d) of PROMESA, producing, in some cases, a First Circuit ruling within 45 days after this Court issued its decision. And even where the appeal did not proceed on an expedited basis (for example, in the appeal of the HTA lift stay decision), the First Circuit was able to issue a decision within a few months after the appeal has been docketed.

9

commence now, including by requiring the Oversight Board to propose a litigation schedule by the current July 1, 2022 deadline. Indeed, the Committee has already been deprived for more than two-and-a-half years of its right to seek an adjudication of the PREPA bondholders' legal entitlements. The elusive prospect of a settlement (which may never arrive) should not be used as a sword to continue to deprive the Committee from seeking a ruling from this Court on the merits of the PREPA bondholders' rights.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court grant relief consistent with this Limited Objection.

Dated: June 26, 2022

By: /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11