**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO et al., <br><br> Defendants | PROMESA <br><br> Title III <br> No. 17 BK 3283- LTS |

**RESPONSE TO THREE HUNDRED SEVENTY FOURTH OMNIBUS OBJECTION OF THE COMMONWEALTH OF PUERTO RICO AND PUERTO RICO BUILDINGS AUTHORITIY TO LATE FILED CLAIMS**

**COMES NOW,** Creditor, Quality Construction Services II, LLC (hereinafter referred as "QCS"), through the undersigned counsel, and before this Honorable Court respectfully **STATES**, **ALLEGES**, and **PRAYS** as follows:

## I.  INTRODUCTION

On August 20, 2021, THE FINANCIAL OVERGISHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative for THE COMMONWEALTH OF PUERTO RICO (hereinafter, the "Debtor"), filed an Omnibus Objection to Late Filed Claims (the "Objection to Claims"). *See*, Dk. #17923. Therein, the Debtor objection to the claim filed by Quality Construction Services, LLC ("QCS") in the amount of $500,000.00 on May 12, 2021 ((hereinafter, the "QCS' Proof of Claim" or the "Proof of Claim"). In response thereto, QCS states as follows:

For at least two reasons the Debtor's Objection to QCS' Proof of Claim should be over-ruled. First, QCS' was never served with notice of the Debtor's Bankruptcy Petition nor of the bar date; accordingly, as a matter of due process, QCS' Proof of Claim was not untimely.

1

Second, even if QCS' Proof of Claim is deemed untimely, such negligence should be excused pursuant to the Excusable Neglect Doctrine. *See,* Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

For the above reasons, amongst others, the Debtor's Objection to QCS' Proof of Claim should be over-ruled.

## II.     APPLICABLE FACTS

1. Quality Construction Services, II LLC was never scheduled as a creditor of Debtor with respect to the QSC Proof of Claim, was never notified of the Debtor's bankruptcy with respect to the QSC Proof of Claim, nor was it ever served with the Bar Date to File a Proof of Claims with respect to the QSC Proof of Claim.

2. After extensive negotiations with the Public Buildings Authority, on February 25, 2019, a stipulation was reached in relation to the cases of Quality Construction Services SE v. Public Buildings Authority, Civil No.: K AC2008-0018 and K AC2006-5943 (the "Stipulated Agreement").

3. As part of the Stipulated Agreement, QCS agreed to reduce the debt substantially so that the Public Buildings Authority would only pay $500,000.00 as a settlement payment in favor of QCS; the payment was structured as follows: (i) $200,000.00 in the year fiscal 2019-2020; (ii) $150,000.00 in fiscal year 2020-2021; (iii) $150,000.00 in fiscal year 2021-2022.

4. On February 26, 2019, the Court of First Instance validated the Stipulated Agreement reached between Quality Construction Services SE and the Public Buildings Authority.

5. In addition to being approved by the Court, the Stipulated Agreement was validated by the Debtor, the Financial Oversight Board, and QSC.

6. In compliance with the Stipulated Agreement, on July 2, 2019, Quality Construction Services SE invoiced the Public Buildings Authority for the payment corresponding to $200,000.00, as per the terms of the Stipulated Agreement.

7. Because the Stipulated Agreement had been agreed to by both the Debtor and the Financial Oversight Board, said payment was budgeted into the budget for fiscal year 2019-2020; and was payable for the month of August 2019.

8. At no point after the Stipulated Agreement nor before of December of 2019 did QCS receive notice, actual or constructive, of the Debtor's bankruptcy.

9. After not receiving the aforementioned payment on the agreed date, in December 2019, Quality Construction Services SE met with the EVP & Chief Financial Officer of the Government Development Bank, Fiscal Agency and Financial Advisory Authority (AAFAF).

10. Then and there, the representatives of the Debtor informed QCS' that because the Stipulated Agreement was already budgeted, there was not "legal impediment" to QCS' receiving the agreed to payments.

11. At no point during the December 2019 Meeting did Debtor's representatives inform QCS' that Debtor was in bankruptcy and/or that QCS needed to file a Proof of Claim.

12. In fact, the Debtor's representatives informed that the payments under the payment plan of Quality Construction Services SE would be forthcoming because the payments had been budgeted.

13. Additionally, at the end of December 18, 2019, Quality Construction Services SE sent a letter to the Public Buildings Authority requesting the aforementioned payment. However, because in the month of December 2019 there were some earthquakes in Puerto Rico that caused the closure of government agencies and private entities; QCS did not insist with the matter.

14. On January 15, 2020, Quality Construction Services SE again sent a letter to the Public Buildings Authority requesting the aforementioned payments as agreed.

15. At no point during the December 2019-January 2020 conversations with executives of the Public Building Authority, including conversations with its Executive Vice President, did the Debtor inform QCS of the Debtor's bankruptcy and/or the need to file a Proof of Claim.

16. To the contrary, QCS was informed, at each meeting, that its payments would be forthcoming because the payment plan had been agreed to and budgeted for 2019-2020.

17. In the month of March 2020, the Covid 19 pandemic began. Thereafter, the Debtor, QCS as well as most of society came to a total closure in Puerto Rico and elsewhere.

18. On October 27, 2020, Quality Construction Services SE sent a letter to the Public Buildings Authority notifying that they were not complying with the payment plan as agreed. A response was never received. QCS was never notified that it needed to file a Proof of Claim.

19. On April 21, 2021, QCS sent Debtor a final Letter requesting the agreed to payment; no response was ever received.

20. Despite never having been notified of bankruptcy; given the lack of communication from the Public Buildings Authority, on May 12, 2021 Quality Construction Services SE decided to file a Proof of Claim.

21. On May 12, 2021 QCS filed Claim #179223 (also referred to as the "QCS Proof of Claim"). The QCS Proof of Claim was filed as an unsecured claim in the amount of $500,000.00. *See*, Claim #179223.

22. On August 20, 2021 QCS received the Debtor's Objection to Proof of Claim.

23. Notwithstanding that QCS' claim was never scheduled, that QCS was never notified of Debtor's Bankruptcy, or that QCS was never served with a copy of the Claims Bar Date; the Debtor argued that QCS' Proof of Claim was untimely filed.

24. In response thereto, QCS states as follows.

### III. LEGAL ARGUEMENT

Due process, applicable Federal Rules of Procedure, and precedent from the Supreme Court as well as the Bankruptcy Court for the District of Puerto Rico all confirm that the Objection to QCS' Proof of Claim should be over-ruled. Here, the fact that QCS was not served with a copy of the Claims Bar Date, with respect to the QCS Proof of Claim, impermissible deprives QCS of due process. But even if due process had been complied with, which it has not, "excusable neglect," as defined by statue and decisional case law, confirms that QCS actions, if negligent, should be excused.

**a. QCS did not Received Actual Notice of the Bankruptcy Proceeding with respect to the QCS Proof of Claim.**

QCS did not receive actual notice of the Debtor's bankruptcy proceeding or the Claims Bar Date with respect to the QSC Proof of Claim. In fact, in the multiple conversations that QCS had with the Debtor and the Debtor's representatives, including the Debtor's Executive Vice President, at no point was QSC advised and/or told that the Debtor was subject to a bankruptcy proceeding and/or that QSC needed to file a Proof of Claim. To the contrary, QCS was assured, at all relevant times, that the payments agreed to in the Stipulated Agreement would be forthcoming. Finally, QCS was at ease with its expectations of payments because the Stipulated Agreement had been agreed to by the Financial Oversight Board.

In summary, QCS was the holder of a Stipulated Agreement agreed to by the Debtor, the Financial Oversight Board and which was approved by the presiding local court overseeing the

proceeding. In addition, QCS was further appeased by its conversations with executive at the Debtor which reassured QCS that payment was forthcoming because the Stipulated Agreement had been agreed to and the corresponding payments had been budgeted into the 2019-2020 budget. Finally, QCS had no reason to doubt the representations being made because QCS was never served with actual notice of the bankruptcy and/or the bar date. Thus, QCS did not know nor did it have any reason to know that it needed to file a Proof of Claim.

The bar date, which according to the Debtor lapsed on July 29, 2020, is not imputable upon QCS because QCS was never notified of the same. To impute the bar date upon QCS – which was never notified to the QCS – in order to deprive the QCS from an opportunity to file a claim violates due process. Basic notions of due process dictate that QCS should not be deprived of property rights in absence of advance notice. Because advance noticed was not receive in this case, the Debtor's Objection to QCS' Proof of Claim should be over-ruled.

### b. **Even if the Bar Date Was Imputable Unpon the Debtor, Which It Should Not, QCS's Failure to File the Proof of Claim Prior to the Bar Date Should be Excused Pursuant to Excusable Neglect.**

In the seminal case of *In re Pioneer* case,[1] the United States Supreme Court announced that certain actions, including the failure to timely file a proof of claim, may be excused via the "excusable neglect" doctrine. In addition, "excuseable neglect" is also codified as part of the Federal Rules of Bankruptcy Procedure. At Fed. R. Bank. P. 9006(b)(1), the Rules provides that on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. *See*, Fed. R. Bank. P. 9006(b)(1); *see also*, In re Puerto Rico Hospital Supply, Inc., No. 19-01022, 2020 WL 7133165, at *2 (D.P.R. Dec. 4, 2020). Fed. R. Bank. P. 9006(b)(1) is applicable to this proceeding via Section 310 of

---

[1] Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)

PROMESA. Accordingly, "excusable neglect" is applicable to this proceeding. Moreover, QCS's failure to file a timely proof of claim, if deemed negligent, such negligence should be excused.

Beyond the undeniable fact that Quality was never served with notice of the bankruptcy case, thus, void of due process, the Quality Proof of Claim may also be allowed as a result of Excusable Neglect. In the seminal case of *In re Pioneer* case,[2] the United States Supreme Court announced the relevant analysis to be used when determining if a moving party complies with the "excusable neglect" doctrine. The resulting factors to consider are:

> "(1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; (4) whether the creditor acted in good faith; and (5) whether clients should be penalized for their counsel's mistake or neglect." Id., at 158a–159a (quoting In re Dix, 95 B.R. 134, 138 (CA9 Bkrtcy. Appellate Panel 1988) (in turn quoting In re Magouirk, 693 F.2d 948, 951 (CA9 1982))). The District Court also suggested that the Bankruptcy Court consider whether the failure to comply with the bar date "resulted from negligence, indifference or culpable conduct on the part of a moving creditor or its counsel." App. 159a.

*See*, Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Here, Quality's failure to file a timely proof of claim meets all of the factors for the application of the Excusable Neglect Doctrine.

First, the granting of this Motion will not prejudice the Debtor. Here, the claim in question is an unsecured claim in the amount of $500,000.00. *See*, Proof of Claim #179223. As an unsecured claim, Quality will enjoy a pro-rata distribution – from a pre-determined and fixed pot of funds already allocated by the Debtor for the payment to unsecured creditors - in

---

[2] Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)

7

conjunction with all other unsecured creditors. In other words, the allowance of the QCS Proof of Claim and the denial of Debtor's Objection to the QCS Proof of Claim will not represent an additional economic burden upon the Debtor. Thus, the Debtor will not be prejudiced. Accordingly, the first factor favors the application of Excusable Neglect.

Second, the length of delayed – considering the circumstances – is not extended nor will it impact the efficient administration of this case. Here, the QCS Proof of Claim was filed in May 12, 2021. See, QCS Proof of Claim. The Debtor, in turn, argues that the applicable bar date lapsed approximately nine-months previously, on July 29, 2020. This Honorable Court may take judicial notice of the fact that between August 2020 and May of 2021 many, if not most, of governmental entities as well as private entities were in the midst of the once in a lifetime pandemic. In fact, the height of the pandemic was reached between November 2020 and March of 2021; precisely the months the Debtor will argue that QCS should have been active in the prosecution of its claim. Here, the length of delay is not as extended as other claims adjudicated by this Honorable Court; for example, in other claims, the delay has been much more severe, like 4, 3, and 2 years. Here, the delay is not nearly as extended. Further, the delay – even if deemed slightly extended – is practically shorten by the pandemic circumstances. Factors which would have accelerated the filing of a claim under normal circumstances, i.e., better communication with the Debtor and/or better access to assistance from counsel, was imperfect during the height of the Pandemic. Finally, the delay will not impact the efficient administration of this case because in fact many claims are still being considered and objections to claims litigated. This, this singular claim will not delay the proceedings in this case. Accordingly, the second factor favors the application of Excusable Neglect.

8

Similarly, here, any delay was beyond the reasonable control of QCS. As noted, here QCS delayed was anchored on two factors; neither of which withing QCS' reasonable control. First, QCS was delayed in acting by the consisting assurance by Debtor and Debtor's executives that QCS' payments would be forthcoming. This in addition to the fact that Debtor failed to provide QCS with notice of its bankruptcy and/or of the Proof of Claim Bar Date. The second anchor of the delay, were the life circumstance in the fall of 2020 and spring of 2021 (between July 29, 2020 and May 12, 2021). As noted, a once in a lifetime pandemic – in full heights during these months – delayed what may, otherwise have been swifter actions. For example, if QCS had had better communication with the Debtor during these months, QCS would have realized sooner the need to file a proof of claim. QCS, however, did not attribute the lack of communication to any bankruptcy proceeding; rather, it attributed such lack of communication to the worldwide pandemic that resulted in closings of private and public entities. Similarly, but for the Pandemic, QCS would have had better and easier access to counsel who, in theory, would have counsel QCS to file a proof of claim. These two factors, however, are not attributable to QCS. Accordingly, the third factor also favors the application of Excusable Neglect.

The fourth factor, whether QCS acted in good faith, is also a factor that favors QCS. As has been explained, QCS' first actions, when payments were not received, was to consult with Debtor a party with whom QCS had reached an agreement. In multiple amicable and respectfully conversations, the Debtor represented to QCS that payments would be forthcoming. IN good faith, QCS rested on such assurances. QCS' actions, unequivocally, were in good faith. The Fourth factor also favors the applicable of Excusable Neglect.

Finally, the fifth factor is not applicable. Here, QCS has not attributed the failure to file a proof of claim on counsel. Rather, as discussed QCS did not file a proof of claim because notice

9

was never received to indicate the need to file a proof of claim. Moreover, consistent communication with the Debtor informed QCS that no actions were needed as payments were forthcoming. Accordingly, QCS did not know it needed to file a proof of claim and, based on conversations with the Debtor, had not reason to know that a bankruptcy had been filed and/or that a proof of claim needed to be filed.

For all of the above reasons, if QCS' actions are deemed negligent, such negligence would be excused via the Excusable Neglect Doctrine.

**WHEREFORE**, in view of the foregoing, Quality Construction Services II, LLC. respectfully requests that the Debtor's Objection to QCS' Proof of Claim #179223 be overruled and that Proof of Claim #179223 be deemed an Allowed Claim.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 5th day of June 2022.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589


/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail: jeb@batistasanchez.com