# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) PROMESA<br>) Title III<br>) |
| as representative of | ) Case No. 17–BK–3283–LTS |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) (Jointly Administered) |
| | ) |
| Debtors. [1] | ) |
| | ) |
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) PROMESA<br>) Title III<br>) |
| as representative of | ) Case No. 17–BK–4780–LTS |
| | ) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | ) **This Application relates only to** |
| | ) **PREPA, and shall be filed in the** |
| Debtor. | ) **lead Case No. 17–BK–3283–LTS** |
| | ) **and PREPA's Title III Case** |
| | ) **(Case No. 17–BK–4780–LTS)** |
| | ) |

## SUMMARY SHEET TO
## FIRST INTERIM FEE APPLICATION OF KING & SPALDING LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD <u>AUGUST 1, 2018 THROUGH MARCH 31, 2022</u>

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>")(Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | King & Spalding LLP ("K&S") |
| Retained to Provide Professional Services to: | Puerto Rico Electric Power Authority ("PREPA") |
| Period for Which Compensation is Sought: | August 1, 2017 through March 31, 2022 (the "Compensation Period") |
| Amount of Fees Sought: | $28,212,229.38 |
| Amount of Expense Reimbursements Sought: | $297,297.70 |
| Total Fees and Expenses Sought for Compensation Period | $28,509,527.08 |

This is a(n) ___ Monthly  _X_  Interim ___ Final Fee Application

This is the first interim fee application filed by K&S in the Title III Case.

## TABLE OF SCHEDULES AND EXHIBITS

**Schedule 1**   Additional Information Under the Guidelines

**Schedule 2**   Summary of Fees and Expenses Incurred

                 List and Summary of Hours and Compensation by Professional

Schedule 3
**Schedule 4**   List and Summary of Hours and Compensation by Task Code

**Schedule 5**   Summary of Actual and Necessary Expenses

**Exhibit A**    Certification Under Guidelines

**Exhibit B**    Proposed Order

**Exhibit C-1**  January Through March 2022 Detailed Time and Expense Records

**Exhibit C-2**  2021 Detailed Time and Expense Records

**Exhibit C-3**  2020 Detailed Time and Expense Records

**Exhibit C-4**  2019 Detailed Time and Expense Records

**Exhibit C-5**  2018 Detailed Time and Expense Records

**Exhibit C-6**  2017 Detailed Time and Expense Records

**Schedule 1**

**Additional Information Under the Guidelines**

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Total Compensation approved by interim order to date: | N/A |
| Total Expense Reimbursement approved by interim order to date: | N/A |
| Total allowed compensation paid to date: | N/A |
| Total allowed Expense Reimbursement paid to date: | N/A |
| Total Compensation sought in this Application as allowed: | $25,391,006.44 (not including 10% holdback amount) |
| Total Expense Reimbursement sought in this Application as allowed: | $297,297.70 |
| Blended Rate in this Application for all attorneys: | $785/hour |
| Blended Rate in this Application for all timekeepers: | $752/hour |
| Number of Professionals included in this Application: [1] | 95 |
| Number of Professionals in this Application not included in staffing plan approved by PREPA:[2] | 0 |
| Difference between fees budgeted and Compensation sought for this Compensation Period: | ($1,615,472.92)[3] |
| Number of Professionals billing fewer than 15 hours in the Compensation Period: | 21 attorneys and 11 paraprofessionals |
| Rate increases since date of retention: | No, other than annual step increases, rates have not increased during the Compensation Period.[4] |
| Disclosure of Compensation sought in this Application using rates higher than those approved or disclosed at retention: | N/A |

---

[1]     As used herein, the term "professionals" includes all attorneys and non-paraprofessional timekeepers; "paraprofessionals" only includes non-attorneys.

[2]     Prior to this Application, K&S voluntarily wrote off 79.1 hours and $32,248.66 in fees for 15 K&S timekeepers (including 1 partner, 3 associates and 3 counsel) incurred for services rendered by such timekeepers while they were not on the list of approved timekeepers under the applicable PSA. Thus, all timekeepers for which Compensation is sought under this Application have been approved by PREPA.

[3]     The PSAs authorizes an aggregate Contract Amount (as defined in the Application) totaling $30,125,000 for K&S fees and expenses during the Compensation Period through the end of June 2022, and during the Compensation Period K&S incurred fees and sought reimbursement of expenses totaling $28,509,527.08.

[4]     As a special accommodation for PREPA, all hourly rates for K&S timekeepers during the Compensation Period were frozen since the date each timekeeper first appeared on the list of K&S approved timekeepers in the PSAs.

**Schedule 2**

**Summary of Fees and Expenses**

| Compensation Period | Total Fees Incurred[5] | Fees Paid | Expenses Requested | Expenses Paid |
|---|---|---|---|---|
| August 1, 2017 – March 31, 2022 | $28,212,229.38 | $23,545,304.50 | $297,297.70 | $86,474.29 |

| | |
|---|---|
| Total Fees Incurred | $28,212,229.38 |
| <u>Less</u>: Total 10% Holdback | ($2,821,222.94) |
| **Subtotal: Total Fee Sought for Interim Approval[6]** | **$25,391,006.44** |
| <u>Less</u>: Total Fees Paid | ($23,545,304.50) |
| <u>Plus</u>: Expenses Incurred (100%) | $297,297.70 |
| <u>Less</u>: Expenses Paid | ($86,474.29) |
| **Total Fees Below Holdback and Expenses Sought:** | **$ 2,056,525.35** |

---

[5]    Prior to the submission of this Application, K&S voluntarily wrote off $591,576.98 in fees incurred and billed to PREPA during the Compensation Period (including certain amounts for tax withholdings required under Act 257–2018). Additionally, K&S voluntarily wrote off (i) $32,248.66 of fees as described in <u>Schedule 1</u>, (ii) $105,968 of expenses as described in n. 6 to the Application, and (iii) $431,304.20 of fees incurred but not billed to PREPA during the Compensation Period.

[6]    Under this Application, K&S seeks interim approval of $25,391,006.44 in fees incurred during the Compensation Period and shall seek final approval 10% holdback amount under its final fee application in accordance with the Interim Compensation Order.

**Schedule 3**

**List and Summary of Hours and Compensation by Professional**

| Professional | Title | Department | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Borders, Sarah | Partner | Corporate, Finance and Investment (1988) | 877 | 25.8 | 22,621.06 |
| Bowe, Jim | Partner | Corporate, Finance and Investment (1982) | 945 | 3,476.1 | 3,260,024.45 |
| Cagle, Kim | Partner | Corporate, Finance and Investment (1987) | 783 | 34.4 | 26,935.20 |
| Choy, Sam | Partner | Corporate, Finance and Investment (1992) | 1111 | 42.5 | 47,217.50 |
| Clancy, Lachlan | Partner | Corporate, Finance and Investment (2008) | 1098 | 375.4 | 411,942.48 |
| Cowled, Simon | Partner | Corporate, Finance and Investment (2001) | 880 | 465.5 | 409,640.00 |
| Dalling, Brandon | Partner | Corporate, Finance and Investment (2002) | 1103 | 0.4 | 350.80 |
| De Brito de Gyarfas, Vera | Partner | Corporate, Finance and Investment (1994) | 760 | 115.9 | 88,084.00 |
| Fontham, Jack | Partner | Trial and Global Disputes (1996) | 1084 | 138.5 | 150,134.00 |
| Garner, Rob | Partner | Corporate, Finance and Investment (2008) | 950 | 4.7 | 3,595.50 |
| Giordano, Brad | Partner | Corporate, Finance and Investment (2009) | 1071 | 22.0 | 23,562.00 |
| Greer, Scott | Partner | Corporate, Finance and Investment (1995) | 1062 | 0.8 | 849.60 |
| Guilbert, Shelby | Partner | Trial and Global Disputes (2003) | 940 | 1,259.2 | 1,168,798.00 |
| Hanson, Matthew | Partner | Government Matters (2011) | 1166 | 42.7 | 29,249.50 |
| Katz, Jonathan | Partner | Corporate, Finance and Investment (2010) | 833 | 137.1 | 111,296.50 |
| Kiefer, David | Partner | Trial and Global Disputes (1998) | 981 | 134.0 | 131,057.10 |
| Koch, Alec | Partner | Government Matters (1997) | 965 | 162.0 | 155,996.50 |
| Kupka, Steve | Partner | Corporate, Finance and Investment (1989) | 750 | 3,165.7 | 2,372,286.91 |
| Lang, David | Partner | Corporate, Finance and Investment (2003) | 976 | 349.5 | 338,769.23 |
| Malone, Kelly | Partner | Corporate, Finance and Investment (1992) | 990 | 6,127.4 | 6,002,927.50 |
| McWhirter, Jill | Partner | Corporate, Finance and Investment (1995) | 985 | 7.5 | 7,387.50 |
| Mezzina, Paul | Partner | Trial and Global Disputes (2008) | 1017 | 23.6 | 24,001.20 |

| Michael, Brian | Partner | Government Matters (1999) | 968 | 4.0 | 3,872.00 |
| Misher, Jeff | Partner | Corporate, Finance and Investment (2003) | 904 | 1.2 | 1,084.80 |
| Nakayama, Granta | Partner | Government Matters (1994) | 1107 | 0.5 | 509.00 |
| Nelson, Richard | Partner | Corporate, Finance and Investment (1995) | 855 | 15.0 | 12,825.00 |
| Raskin, Kenneth | Partner | Corporate, Finance and Investment (1984) | 1426 | 0.5 | 713.00 |
| Richardson, Bruce | Partner | Government Matters (1990) | 904 | 95.6 | 86,422.40 |
| Ripley, Ed | Partner | Corporate, Finance and Investment (1985) | 909 | 2.2 | 1,999.80 |
| Rogers, Dan | Partner | Corporate, Finance and Investment (1991) | 1134 | 2.3 | 2,608.20 |
| Slovensky, Larry | Partner | Trial and Global Disputes (1992) | 887 | 17.4 | 15,433.80 |
| Stansbury, Brian | Partner | Government Matters (2002) | 846 | 527.6 | 444,615.60 |
| Tewksbury, David | Partner | Government Matters (1995) | 954 | 5.3 | 5,056.20 |
| Zisman, Stuart | Partner | Corporate, Finance and Investment (1994) | 927 | 800.3 | 723,585.70 |
| **TOTAL FOR PARTNERS:** | | | | **17,582.6** | **$16,085,452.03** |
| Connor, Rory | Counsel | Corporate, Finance and Investment (2008) | 738 | 40.1 | 29,593.80 |
| Delphin, Chris | Counsel | Corporate, Finance and Investment (2005) | 788 | 399.0 | 299,033.70 |
| Ferkin, Zori | Counsel | Corporate, Finance and Investment (1981) | 850 | 44.5 | 37,791.00 |
| Futch, Kevin | Counsel | Corporate, Finance and Investment (2008) | 820 | 6,548.8 | 5,307,485.62 |
| Hill, Eleanor | Counsel | Government Matters (1975) | 1211 | 1.4 | 1,695.40 |
| Hirsch, Eric | Counsel | Government Matters (1998) | 880 | 552.9 | 485,957.00 |
| Lankford, Taylor | Counsel | Trial and Global Disputes (2010) | 1062 | 136.5 | 144,963.00 |
| Patel, Rajesh | Counsel | Corporate, Finance and Investment (2003) | 738 | 0.3 | 221.40 |
| Rice, Bill | Counsel | Corporate, Finance and Investment (1994) | 895 | 16.0 | 14,320.00 |
| Smith, Lisa | Counsel | Trial and Global Disputes (1995) | 751 | 8.4 | 6,308.40 |
| **TOTAL FOR COUNSEL:** | | | | **7,747.9** | **$ 6,327,369.32** |
| Benner, Kate | Associate | Government Matters (2015) | 643 | 64.8 | 41,666.40 |
| Berg, Peter | Associate | Corporate, Finance and Investment (2014) | 882 | 13.8 | 8,128.20 |
| Bromage, Zoë | Associate | Corporate, Finance and Investment (2010) | 815 | 523.1 | 426,326.50 |
| Cadavid, Miguel | Associate | Corporate, Finance and Investment (2018) | 459 | 1,032.0 | 473,638.18 |
| Crespo, Joel | Associate | Government Matters (2011) | 1017 | 121.6 | 89,984.00 |

| Desloover, Kelsey | Associate | Government Matters (2011) | 886 | 220.7 | 195,540.20 |
| Dugat, Katie | Associate | Corporate, Finance and Investment (2015) | 549 | 834.2 | 448,097.80 |
| Englert, Joe | Associate | Trial and Global Disputes (2009) | 774 | 407.0 | 311,626.60 |
| Graessle, James | Associate | Trial and Global Disputes (2018) | 414 | 428.8 | 176,473.80 |
| Guo, Anna | Associate | Corporate, Finance and Investment (2017) | 513 | 186.1 | 95,469.30 |
| Hrvatin, Claudia | Associate | Government Matters (2003) | 670 | 1.7 | 1,139.00 |
| Kazam, Alexander | Associate | Trial and Global Disputes (2016) | 770 | 27.3 | 21,021.00 |
| Kim, Tae | Associate | Corporate, Finance and Investment (2009) | 697 | 9.9 | 7,207.70 |
| Korngold, Evan | Associate | Corporate, Finance and Investment (2016) | 513 | 415.7 | 211,753.50 |
| Kostecka, Brianna | Associate | Trial and Global Disputes (2010) | 936 | 17.8 | 15,685.80 |
| Lachman, Carolyn | Associate | Government Matters (2015) | 468 | 101.9 | 47,689.20 |
| Ladd, Alyssa | Associate | Corporate, Finance and Investment (2014) | 589 | 35.2 | 20,732.80 |
| Langa, Fernando | Associate | Corporate, Finance and Investment (2015) | 680 | 288.2 | 195,976.00 |
| Lim, Stephanie | Associate | Government Matters (2000) | 823 | 22.2 | 18,285.70 |
| Martin, Silvia | Associate | Corporate, Finance and Investment (2013) | 650 | 2,041.7 | 1,323,943.19 |
| Martinez, Russell | Associate | Government Matters (2016) | 612 | 46.8 | 13,491.00 |
| McNerney, Matt | Associate | Government Matters (2018) | 495 | 401.0 | 198,471.00 |
| Papadopoulos, Melanie | Associate | Trial and Global Disputes (2017) | 428 | 107.1 | 44,999.00 |
| Peng, Julie | Associate | Government Matters (2008) | 837 | 24.8 | 15,177.60 |
| Petersen, Josh | Associate | Corporate, Finance and Investment (2012) | 828 | 437.0 | 312,977.20 |
| Petrosino, Matthew | Associate | Corporate, Finance and Investment (2012) | 549 | 85.3 | 44,396.50 |
| Pozzi de Calcena, Rafaela | Associate | Government Matters (2018) | 473 | 130.3 | 61,563.50 |
| Primrose, Sarah | Associate | Corporate, Finance and Investment (2012) | 864 | 144.0 | 124,302.57 |
| Schofield, Sarah | Associate | Corporate, Finance and Investment (2021) | 585 | 30.6 | 17,901.00 |
| Seminario Cordova, Renzo | Associate | Trial and Global Disputes (2016) | 468 | 80.0 | 37,440.00 |
| Smith, Lisa | Associate | Trial and Global Disputes (1995) | 751 | 170.5 | 117,789.10 |
| Snyder, Jesse | Associate | Trial and Global Disputes (2012) | 761 | 299.7 | 227,693.50 |

| Tecson, Christina | Associate | Corporate, Finance and Investment (2010) | 549 | 670.5 | 366,727.30 |
| Thomas, Nathaniel | Associate | Corporate, Finance and Investment (2011) | 760 | 30.3 | 23,028.00 |
| Vernon, Chelsea | Associate | Corporate, Finance and Investment (2018) | 454 | 21.2 | 9,599.60 |
| Whitaker, Kristian | Associate | Corporate, Finance and Investment (2013) | 842 | 11.2 | 7,302.40 |
| Ye, Connie | Associate | Corporate, Finance and Investment (2018) | 739 | 270.7 | 199,989.82 |
| Zhang, Nathan | Associate | Corporate, Finance and Investment (2013) | 652 | 122.2 | 79,674.40 |
| **TOTAL FOR ASSOCIATES:** | | | | **9,876.9** | **$ 6,032,908.36** |
| Massoni, Greg | Project Attorney | Government Matters | 500 | 80.8 | 43,516.50 |
| Molano, Paula | Project Attorney | Trial and Global Disputes (2014) | 160 | 31.6 | 5,056.00 |
| Portillo Diaz, Marco | Project Attorney | Corporate, Finance and Investment | 517 | 62.3 | 32,209.10 |
| Garcia, Nelson | Staff Attorney | Trial and Global Disputes (2012) | 221 | 129.6 | 20,736.00 |
| Sacks, Susie | Staff Attorney | Trial and Global Disputes (2002) | 200 | 28.9 | 5,780.00 |
| Steele, Kelli | Staff Attorney | Trial and Global Disputes (2010) | 185 | 161.6 | 29,896.00 |
| **TOTAL FOR PROJECT & STAFF ATTORNEY:** | | | | **494.8** | **$   137,193.60** |
| **ATTORNEYS GRAND TOTAL** | | | | **35,702.2** | **$28,582,923.31** |

| Paraprofessional | Position/Title | Department | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|---|
| Conley, Christene | Litigation Support | Trial and Global Disputes | 285 | 13.1 | 3,733.50 |
| Duckett, Daniel | Litigation Support | Trial and Global Disputes | 275 | 1.2 | 330.00 |
| Bascus, Daryl | Paralegal | Government Matters | 324 | 4.2 | 1,360.80 |
| Blanton, Alexandra | Paralegal | Corporate, Finance and Investment | 405 | 7.6 | 3,078.00 |
| Crawford, Julie | Paralegal | Government Matters | 360 | 34.2 | 12,265.49 |
| de Varennes, P. Annette | Paralegal | Trial and Global Disputes | 423 | 417.6 | 166,147.90 |
| Haas, Ginger | Paralegal | Corporate, Finance and Investment | 337 | 5.1 | 1,718.70 |
| **PARAPROFESSIONAL GRAND TOTAL:** | | | | **483.0** | **$ 188,634.39** |

| | | |
|---|---|---|
| **Attorneys and Paraprofessionals** | **Total Hours Billed:** | **36,185.2** |
| | Total Compensation: | $28,771,557.70 |
| | Total Other Write Offs: [7] | $(559,328.32) |
| | **Total Compensation Sought:** | **$ 28,212,229.38** |

---

[7]        This does not include the 79.1 hours and $32,248.66 of fees K&S voluntarily wrote off as described in Schedule 1.

**Schedule 4**

**List and Summary of Hours and Compensation by Task Code[8]**

| PREPA – Federal Government Regulatory Matters | | | |
|---|---|---|---|
| **Task Code[9]** | **Task Description** | **Total Hours Billed** | **Total Fees Requested** |
| B803 | Business Operations | 234.0 | 176,806.60 |
| B804 | Case Administration | 36.4 | 20,345.89 |
| B807 | Stay Relief and Adequate Protection | 5.6 | 5,293.60 |
| B809 | Litigation Matters | 376.7 | 253,675.50 |
| B815 | Accounting/Auditing | 4.9 | 3,601.50 |
| B832 | PREC Adversary Proceedings | 2.4 | 2,570.40 |
| B833 | Other Adversary Proceedings | 14.5 | 13,596.80 |
| B834 | Federal Government Affairs | 2,812.8 | 2,072,274.31 |
| B835 | Transformation Matters | 2.9 | 2,740.50 |
| B836 | Matter Management | 14.7 | 12,716.30 |
| B837 | SEC Investigation | 3.8 | 3,667.00 |
| B839 | Costa Sur Insurance Recovery Litigation | 3.2 | 1,219.20 |
| B840 | Hurricane Maria Insurance Recovery Claim | 3.4 | 1,321.80 |
| B841 | Earthquake Insurance Recovery Claim | 23.6 | 9,717.60 |
| N/A | No Task Code Assigned | 339.0 | 252,351.50 |
| | **Total** | **3,877.9** | **$  2,831,898.50** |

| PREPA – Regulatory Restructuring Matters | | | |
|---|---|---|---|
| **Task Code** | **Task Description** | **Total Hours Billed** | **Total Fees Requested** |
| B801 | Asset Analysis and Recovery | 4.7 | 4,264.80 |
| B802 | Asset Disposition | 1.2 | 1,079.60 |
| B803 | Business Operations | 26,486.9 | 21,612,767.94 |
| B804 | Case Administration | 131.2 | 70,438.96 |
| B805 | Claims Administration & Objections | 0.7 | 661.50 |
| B806 | Employee Benefits/Pensions | 25.5 | 20,629.30 |
| B808 | Financing Matters & Cash Collateral | 4.1 | 2,158.20 |
| B809 | Litigation Matters | 208.4 | 130,794.30 |
| B810 | Creditor Committee Issues | 2.1 | 2,249.10 |
| B812 | Fee/Employment Applications | 19.8 | 9,088.20 |

---

[8] This summary includes the 79.1 hours and $32,248.66 of fees K&S voluntary wrote off across the various matters and task codes listed herein as described in <u>Schedule 1</u>, and thus should be adjusted accordingly.

[9] The Task Codes K&S uses are consistent with the meaning ascribed to such terms in the Guidelines, ¶ C.8. (project categories for billing records).

| | | | |
|---|---|---|---|
| B813 | GT Fee/Employment Objections | 3.4 | 3,213.00 |
| B815 | Accounting/Auditing | 0.9 | 753.20 |
| B821 | General Coporate Matters | 24.6 | 16,827.20 |
| B822 | Leases and Executory Contracts | 35.3 | 22,830.70 |
| B825 | Corporate Finance | 24.3 | 19,213.50 |
| B832 | PREC Adversary Proceedings | 7.2 | 3,304.80 |
| B833 | Other Adversary Proceedings | 11.0 | 10,317.60 |
| B834 | Federal Government Affairs | 54.3 | 39,981.80 |
| B835 | Transformation Matters | 1,137.0 | 934,642.80 |
| B836 | Matter Management | 501.6 | 387,391.00 |
| B837 | SEC Investigation | 1.2 | 1,158.00 |
| B838 | FOMB Investigation | 101.9 | 81,467.70 |
| B839 | Costa Sur Insurance Recovery Litigation | 282.0 | 187,132.00 |
| B840 | Hurricane Maria Insurance Recovery Claim | 544.1 | 445,437.40 |
| B841 | Earthquake Insurance Recovery Claim | 780.9 | 594,112.50 |
| N/A | No Task Code Assigned | 150.6 | 107,084.20 |
| | **Total** | **30,544.9** | **$24,708,999.30** |

| PREPA – SEC Investigation | | | |
|---|---|---|---|
| Task Code | Task Description | Total Hours Billed | Total Fees Requested |
| B804 | Case Administration | 22.4 | 19,712.00 |
| B821 | General Coporate Matters | 18.1 | 11,282.40 |
| B835 | Transformation Matters | 0.3 | 164.70 |
| B836 | Matter Management | 3.3 | 1,811.70 |
| B837 | SEC Investigation | 0.2 | 193.00 |
| N/A | No Task Code Assigned | 918.0 | 542,303.86 |
| | **Total** | **962.3** | **$575,467.66** |

| PREPA – Fee Applications | | | |
|---|---|---|---|
| Task Code | Task Description | Total Hours Billed | Total Fees Requested |
| B803 | Business Operations | 130.5 | 74,806.60 |
| | **Total** | **130.5** | **$74,806.60** |

| PREPA – Energy Resource RFPs | | | |
|---|---|---|---|
| Task Code | Task Description | Total Hours Billed | Total Fees Requested |
| B803 | Business Operations | 744.6 | 607,165.70 |
| B821 | General Coporate Matters | 7.4 | 5,468.60 |
| | **Total** | **754.9** | **$612,634.30** |

**<u>Schedule 5</u>**

**Summary of Actual and Necessary Expenses**

| Expense Category | Cost |
|---|---:|
| Airfare | 42,431.93 |
| Color Copies | 1,402.50 |
| Duplicating Cost | 567.60 |
| Filing Fees | 670.00 |
| Hotel | 50,661.21 |
| Litigation Support Vendors | 27,681.20 |
| Outside Counsel Fees | 16,715.65 |
| Contractual Per Diem Expenses | 52,593.00 |
| Professional Fees | 20,000.00 |
| Records Storage | 228.60 |
| Contractual Lodging | 78,800.00 |
| Cabfare | 1,822.42 |
| Business Meals | 1,904.75 |
| Document Delivery | 273.18 |
| Computer Research - Lexis/Westlaw | 267.88 |
| Transportation Cost | 360.82 |
| Document Retrieval | 38.20 |
| Telephone/Conference Calls | 45.26 |
| Standard Translation | 824.00 |
| Postage/Express Mail | 9.50 |
| **Total** | **$297,297.70** |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Title III |
| | ) |
| as representative of | ) Case No. 17–BK–3283–LTS |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) (Jointly Administered) |
| | ) |
| Debtors. [1] | ) |
| | ) |
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Title III |
| | ) |
| as representative of | ) Case No. 17–BK–4780–LTS |
| | ) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | ) **This Application relates only to** |
| | ) **PREPA, and shall be filed in the** |
| Debtor. | ) **lead Case No. 17–BK–3283–LTS** |
| | ) **and PREPA's Title III Case** |
| | ) **(Case No. 17–BK–4780–LTS)** |
| | ) |

## FIRST INTERIM FEE APPLICATION OF KING & SPALDING LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD AUGUST 1, 2018 THROUGH MARCH 31, 2022

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA")(Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

King & Spalding LLP ("K&S"),[2] as counsel to the Puerto Rico Electric Power Authority ("PREPA"), makes its first interim application (this "Application") for allowance of compensation, under sections 316 and 317 of PROMESA, of $28,212,229.38 and reimbursement of expenses of $297,297.70 for the period from August 1, 2017 through March 31, 2022 (the "Compensation Period") pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Third Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17-BK-3283–LTS, ECF No. 20546] (the "Interim Compensation Order").  In further support of this Application, K&S respectfully represents as follows:

### Jurisdiction

1.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

3.     The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to them in the Interim Compensation Order (as defined herein).

## **Background**

4.      On June 30, 2016, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB") was established under PROMESA section 101(b). On August 31, 2016, President Obama appointed the Oversight Board's first seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated PREPA as a "covered entity" under PROMESA section 101(d).

7.      On July 2, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Title III Case"). Pursuant to PROMESA section 315(b), the Oversight Board is PREPA's representative in the Title III Case.

8.      On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [ECF No. 1416], which appointed Brady Williamson of Godfrey & Kahn, S.C. to serve as fee examiner in the Title III Case (the "Fee Examiner").

9.      On August 4, 2017, PREPA initially retained K&S to address an ongoing, non-public SEC investigation of certain PREPA bond offerings pursuant to a professional services agreement setting forth the terms of the engagement, including the effective term, approved K&S

3

timekeepers, and the maximum budgeted compensation allowed thereunder (as defined therein, the "Contract Amount").   Thereafter, PREPA has broadened the scope of the engagement during the Compensation Period to include, among others, a wide variety of energy- and regulatory-related matters, as further described below, pursuant new professional service agreements, and amendments thereto, with K&S covering the subsequent time periods set forth in the table below and authorizing an aggregate Contract Amount for K&S fees and expenses in excess of $30 million through the end of June 2022 (collectively, the "PSAs"):[3]

| Contract | Effective Date | Expiration | Contract # |
|---|---|---|---|
| 1st PSA | 8/4/2017 | 6/30/2018 | 2018-P00012 |
| Amendment to 1st PSA | 11/9/2018 | 6/30/2018 | 2019-P00012A |
| 2nd PSA | 7/24/2018 | 6/30/2019 | 2019-P00006 |
| Amendment to 2nd PSA | 11/9/2018 | 6/30/2019 | 2019-P00006A |
| 3rd PSA | 6/28/2019 | 6/30/2020 | 2019-P00126 |
| Amendment to 3rd PSA | 6/26/2020 | 6/30/2020 | 2019-P00126A |
| 4th PSA | 7/14/2020 | 9/30/2020 | 2021-P00024 |
| Amendment to 4th PSA | 9/30/2020 | 6/30/2021 | 2021-P00024A |
| 5th PSA | 7/21/2021 | 10/30/2021 | 2022-P00006 |
| 6th PSA | 11/22/2021 | 3/31/2022 | 2022-P00026 |
| Amendment to 6th PSA | 3/24/2022 | 6/30/2022 | 2022-P00026A |

10.     PREPA must request that it's Governing Board approve each PSA and any amendments thereto.  PREPA's Governing Board entered resolutions approving each PSA listed above. For example, most recently on February 22, 2022, PREPA's Governing Board issued Resolution 4954 authorizing an amendment to the 6th PSA to increase the Contract Amount and extend the term to June 30, 2022. Additionally, the Oversight Board must (and has) approved PREPA's entry into and the terms of each PSA. As noted in n. 3 *supra*, the aggregate Contract Amount authorized under the PSAs during the Compensation Period through June 2022 is

---

[3]     A copy of all the PSAs and PREPA's Governing Board resolutions approving each PSA are available on PREPA's website at https://aeepr.com/es-pr/QuienesSomos/Paginas/contratos/Contratos_Generales.aspx.

$30,125,000, which exceeds the amount of Compensation sought under the PSAs during such period by over $1.3 million.

11.     As further described below, PREPA engaged K&S for non-restructuring work traditionally performed outside of PREPA's Title III Case, which is excluded from the scope of the Interim Compensation Order and the interim fee process pursuant to paragraph 6 thereof. Therefore, prior to this Application, K&S has exclusively sought and received compensation from PREPA in accordance with the terms of the PSAs.  However, given the interrelated nature of PREPA's governance and operations, and the requirements and restrictions of the Title III Case, K&S has worked with, and therefore been referenced in the invoices of, other professionals rendering services in the Title III Case and filing interim fee applications. K&S has monitored the Title III dockets of the Commonwealth and other Puerto Rico agencies (including PREPA) as a matter of best legal practices to effectively advise PREPA, but other than as specified below, K&S has not engaged in any traditional restructuring work for PREPA.

12.     To the extent K&S was involved in any work related to the Title III Case, its role was limited to serving in an advisory nature to PREPA's other advisors regarding the operational or regulatory aspects of the issues or contracts being addressed in the Title III Case.  For example, K&S helped PREPA renegotiate the CIRO PPOA (as defined in ECF No. 2578) and Xzerta PPOA (as defined in ECF No. 2577) for 2 shovel-ready solar projects with an aggregate capacity of 150 MW, which PREPA then sought to assume in the Title III Case. But Oversight Board's counsel in the Title III Case, Proskauer Rose LLP, assisted by PREPA's restructuring counsel O'Melveny & Meyers LLP, managed the assumption process and drafted all the pleadings; K&S only advised and provided input to Proskauer and O'Melveny as to contract details and negotiation history, among other things, describing the terms and pricing of the PPOAs and possible benefits achieved

thereunder [*see* ¶ 3 ECF Nos. 2577 & 2578].  And after the Court entered the assumption order with respect to the CIRO and Xzerta PPOAs in December 2021 [Case No. 17-BK-3283–LTS, ECN No. 19467], K&S has, in a more limited role, been assisting PREPA administer the projects to commercial operation and maintain compliance with the terms of each PPOA.

13.     After several correspondences, including a memorandum providing a narrative and quantitative description of K&S's work for PREPA, the Fee Examiner in early 2022 concluded compensation for the firm's services and related expense reimbursements are subject to fee review process in the Title III Case.  Therefore, K&S shall hereinafter file interim fee applications and, after this Application, serve monthly fee statements in accordance with the Interim Compensation Order.

14.     Furthermore, to the extent any time and expense records in the Compensation Exhibits (as defined below) are inconsistent with the policies and guidelines of the Fee Examiner, the Interim Compensation Order, or the Guidelines, the Fee Examiner has informed K&S that it does not expect it to review, edit or re-create any non-compliant time entries retroactively.

### Summary of Services Rendered by K&S During the Compensation Period

15.     The instant Application is K&S's first application for interim compensation in the Title III Case. As described above, in 2017, K&S assisted PREPA with a private SEC investigation.  Thereafter, in late 2018, PREPA significantly expanded the scope of K&S's retention to include regulatory and operational advice and federal government affairs services in connection with the operation and transformation of Puerto Rico's electrical grid, as more specifically described below.  Throughout the Compensation Period, K&S advised PREPA on various issues related to local regulatory and operational matters for purposes of achieving commercial benefits, ensuring compliance and encouraging the promulgation of laws and regulations that best facilitate the myriad of processes under PREPA's management. K&S has

worked along PREPA's local counsel to support PREPA in Energy Bureau proceedings relating to the procurement of renewable and energy storage resources through Request for Proposals ("RFP") processes, optimization of the design of minigrids and microgrids, finalization of regulations addressing energy efficiency, demand response, distributed generation and other related matters. Furthermore, K&S supported PREPA in numerous federal government affairs matters to ensure PREPA and Puerto Rico's interests were appropriately and strategically represented.

16.     The services rendered were essential to PREPA and the transformation of Puerto Rico's electrical grid.  During the Compensation Period, numerous external conditions posed acute economic and administrative challenges to PREPA. K&S helped PREPA to navigate and mitigate the effects of these unprecedented events, including the effects of Hurricanes Irma and Maria, the global coronavirus pandemic affecting Puerto Rico, leadership transitions in the Commonwealth and at PREPA, supply chain constraints, and inflationary pressures imposed acute economic and administrative challenges to PREPA.  K&S represented and advised PREPA on numerous complex matters to help PREPA achieve its foundational objective of providing electrical energy service in the most efficient, safe, economical, reliable, and environmentally friendly manner in order to meet the needs of the citizens of Puerto Rico. To that end, K&S helped PREPA develop and implement strategies for maximizing the capacity, reliability, and resiliency of Puerto Rico's electrical grid and procure significant renewable resources to meet the renewable transition targets as mandated by Puerto Rico law.

17.     Throughout the Compensation Period through the end of October 2021, K&S supported PREPA in continuing interactions with the U.S. Congress and Federal agencies.  This work included, but was not limited to: (i) supporting PREPA in responding to inquiries from the

House Natural Resources Committee concerning monthly SAIFI, SAIDI, and CAIDI data from June 1, 2020 to the most recent timeframe available and workforce information for PREPA's T&D operations prior to the transition to LUMA (initially requested informally by Committee Staff on December 7, 2021); (ii) assisting PREPA in responding to follow-up inquiries from House Natural Resources Committee staff or the Committee Chairman likely to be presented in first quarter of 2022, potentially including assistance with preparation of testimony should an oversight hearing be scheduled by the Committee Chairman; (iii) in response to a January 10, 2022 request from House Natural Resources Committee staff, providing monthly informal briefings on the status of the ongoing renewable generation and energy storage RFP process; (iv) supporting PREPA in its monthly briefings with White House/National Security Counsel staff members concerning the current status of the RFP process and the transformation of the Puerto Rico electric grid; (v) monitoring and, as necessary, consulting with PREPA concerning and responding to requests for information in the Federal Energy Regulatory Commission proceeding involving the NFE (as defined below) application for authorization under Section 3 of the Natural Gas Act to site and operate its San Juan Harbor LNG receiving facility supplying natural gas to PREPA's San Juan Units 5 and 6; (vi) monitoring and, as necessary advising PREPA on, the Federal Energy Regulatory Commission proceeding involving limitations in the amount of LNG that may be stored at the EcoEléctrica generating facility in Peñuelas, Puerto Rico; and (vii) Assisting PREPA in responding to inquiries and requests for information from the Resident Commissioner, other Members of Congress, and federal agencies.

18. PREPA and K&S have a history of accomplishing major achievements for the benefit of Puerto Rico's ratepayers during the Compensation Period, including (i) the renegotiation of Power Purchase and Operating Agreements ("PPOAs") with nine operating and nineteen non-

operating solar- and wind-power providers to provide environmentally friendly generation at market-reflective prices; (ii) the renegotiation of the PPOA with EcoEléctrica and the GSPA (as defined below) with Naturgy to achieve significant savings in accordance with PREPA's Fiscal Plan; (iii) advising PREPA on the key issues arising out of several actual and potential energy-related procurements, entailing review and preparation of RFP documentation, analysis of key commercial risks, advising on procurement and contract strategies to minimize these risks while maximizing competitive tension, and (iv) advising PREPA on federal regulatory matters relating to the RFPs. In connection with the aforementioned renegotiation of the operating PPOAs, K&S helped PREPA reach agreements in principle with seven of the nine counterparties to the PPOAs (representing over 250 MW of renewable energy generation) to amend their agreements to provide a targeted 10% savings over the remainder of the contracts. Additionally, in connection with the insurance claim recovery work in 2020, as further described below, K&S helped PREPA secure recovery with a cash value in excess of $100 million in connection with Hurricane Maria, earthquake claims, and the Costa Sur tank collapse litigation.

19.     Most recently, in addition to assistance with administration of PREPA's fuel sale and purchase agreements and the administration, renegotiation and approvals of operating PPOAs to achieve between $495,000,000 and $525,000,000 of savings for Puerto Rico (according to the FOMB), and negotiation and approvals of shovel-ready PPOAs to contract the first greenfield renewable energy project investment in Puerto Rico in years, K&S has been primarily assisting PREPA with the procurement of renewable and energy storage resources through the RFP processes in connection with the renewable energy production requirements mandated under the IRP Final Order concerning PREPA's Integrated Resource Plan ("IRP") issued by Energy Bureau on August 24, 2020.  Such mandates included the requirement that, by 2025, PREPA source at

least 40% of the energy production connected to PREPA's transmission and distribution system from renewable energy generation. In compliance with the IRP, on October 23, 2020, K&S helped PREPA submit the first version of a draft procurement plan, which was subsequently amended in compliance with the Energy Bureau's directives. After the review of the procurement plan by the Energy Bureau and other procedural incidents, on January 26, 2021, the Energy Bureau issued a Resolution and Order[4] through which, among other things, it ordered PREPA to issue the RFP for Tranche 1 as soon as possible. And on February 22, 2021, K&S helped PREPA issue *Request for Proposals 112648 for Renewable Energy Generation and Energy Storage Resources Tranche 1 of 6* ("Tranche 1"), soliciting proposals for renewable energy, energy storage, and virtual power plant resources. PREPA successfully delivered nine executed PPOAs to the Energy Bureau on June 30, 2022, for a total of 430.1 MW as an initial wave of projects to come out of Tranche 1.

20.    K&S provides critical legal and Tranche 1 administration services in support of PREPA through the PSA and carries substantial institutional and process knowledge regarding the RFP and the commercial realities of renewable energy development on the island. PREPA cannot easily replace these. Tranche 1 attracted over 70 proposals and the second tranche will likely have a similar turnout and time requirements. These processes required a significant number of K&S timekeeper hours to review and negotiate with the RFP proponents within the tight deadlines established by the Energy Bureau.

21.    In connection with the foregoing, K&S is currently assisting PREPA in finalizing, executing and implementing over twenty contracts for generation and storage resources (including

---

[4]    *See* Resolution and Order, *In Re: The Implementation of the Puerto Rico Electric Power Authority Integrated Resource Plan and Modified Action Plan,* Case No. NEPR-MI-2020-0012, December 8, 2020. *See, also,* Resolution and Order, *In Re: The Implementation of the Puerto Rico Electric Power Authority Integrated Resource Plan and Modified Action Plan,* Case No. NEPR-Ml-2020-0012, January 5, 2021.

nine that were signed on June 30), which include contracts with an aggregate contract value in excess of $5 billion, representing over 700 MW of total renewable resource capacity, over 300 MW of battery energy storage capacity, as well as the first virtual power plant to be established on the island. Such work, which includes ensuring satisfaction of all closing conditions for each contract in the Tranche 1 RFP process, includes but is not limited to:

    a. Provision of general support during PREPA's re-solicitation of approval to execute and deliver the Tranche 1 contract from PREB, FOMB and P3A (each, a "Stakeholder"), including (i) the preparation of PREPA's responses to requests for additional information from each Stakeholder and other communications, and (ii) representation of PREPA during presentations requested by a Stakeholder covering specific issues;

    b. Provision of general support during the renegotiation with Proponents of, and revision of each of all Tranche 1 RFP documents and contracts for, modified terms required as a result of changes to the process;

    c. Provision of general support during (i) the preparation and finalization of form interconnection agreements for the contracted resources in coordination with LUMA (each, an "Interconnection Agreement"), and (ii) potential negotiation and finalization of more than 20 bespoke Interconnection Agreements based on the foregoing forms;

    d. Provision of general support during the preparation and finalization of a form of interconnection construction contract in coordination with LUMA, which LUMA will use as a template for the procurement of construction services to install the interconnection facilities and carry out network upgrades required for the integration of the utility-scale resources with PREPA's grid system (each, an "Interconnection Construction Contract");

    e. Finalization, in coordination with LUMA, of the arrangements under which each Resource Provider will fund (i) the feasibility, system impact and facility studies required for the integration of each of the utility-scale energy resources with the grid system, and (ii) the payments remitted under the Interconnection Construction Contract;

    f. Coordination with LUMA to review and update the insurance-related provisions of the Tranche 1 contracts, particularly the grid service agreements;

    g. Provision of general support in connection with the PREPA governing board's review and approval of (i) the finalized GSAs, (ii) the revised

11

Tranche 1 contracts, and (iii) the determination whether PREPA should issue a best interests determination for each Tranche 1 contract;

h.  Coordination of all communications with Tranche 1 Proponents, including preparation of responses to messages submitted via RFP messaging portal and drafting other communications from PREPA;

i.  Ongoing coordination with LUMA of all grid system-related issues presented in connection with the finalization of the Tranche 1 contracts, including the preparation of PREPA letters and email correspondence for official transmission to LUMA;

j.  Provision of general support for PREPA in (i) the administration of the replacement and return of proposal securities delivered by Tranche 1 Proponents, (ii) the management of PREPA's calls on such proposal securities, and (iii) the review and approval of proposed deviations from the RFP proposal security forms; and

k.  Review and assessment of over 20 legal opinions confirming the enforceability and due authorization of each of the Tranche 1 contracts.

22.    In addition to the above, below is a summary of the matters K&S worked on for

PREPA during this Compensation Period.

**November 2018 through March 2019[5]**

*Construction Contract Dispute Resolution*. K&S advised PREPA on negotiations arising from disputes with certain construction contractors who performed repair and rehabilitation work for PREPA's transmission and distribution system and some generating facilities. K&S helped PREPA devise a strategy to respond to these claims, participated in discussions with the contractors, responded to related inquiries from stakeholders and drafted correspondence regarding the disputes.

*Insurance Recovery Claims*. K&S conducted a detailed review of PREPA's 2017-18 property insurance policies for potential insurance coverage of losses resulting from Hurricane María. After reviewing a series of reservation of rights letters that PREPA received from Sedgwick, which was acting as the claim adjuster on behalf of the insurers, K&S advised PREPA on the validity of coverage defenses asserted by the insurers. K&S researched various coverage issues under Puerto Rico law in light of recent changes to

---

[5]    This Application does not provide a summary of the work K&S did in connection with SEC and FOMB investigations, which were the only substantive matters K&S handled for PREPA in late 2017 and early 2018 because of the confidential and sensitive nature of such matters.  Furthermore, the Fee Examiner indicated that a narrative description of such matters is not necessary.

Puerto Rico's insurance code following Hurricane María; interviewed Willis Towers Watson on its work in assisting PREPA with the placement of the insurance policies and its handling of the claim on PREPA's behalf; interviewed Ankura on its claim-related work and participated in conference calls regarding claim resolution efforts; reviewed the placement files for PREPA's insurance policies as well as other documents previously gathered by Greenberg Traurig; analyzed the non-standard margin clause in PREPA's policies and its potential application; and prepared demand letters to Sedgwick for an advance payment.

*Renewable PPOA Renegotiation*. K&S supported PREPA management in the renegotiation of PPOAs with developers of solar and wind generating facilities in an effort to secure terms that would reduce PREPA's costs while enabling those developers to proceed with projects to provide environmentally friendly generation at market-reflective prices. Over several weeks, K&S held multiple meetings with numerous "shovel ready" solar PPOA counterparties, as well as teams representing other renewable energy project owners in Puerto Rico, to discuss their (i) current project status and (ii) updated proposals for PPOA pricing with and without federal loans. The PPOA counterparties raised a number of issues for the PREPA team to consider, including: (1) the difficulties associated with obtaining financing given the uncertainty around counterparty credit risk and the legally-required transformation of PREPA; (2) the challenge of procuring tax equity at reasonable prices; (3) the cost increases resulting from insurance and other factors; and (4) their past experiences of PREPA interconnection delays.

K&S had a broad role in mitigating these concerns, including (a) presenting to the PPOA counterparties on the expected post-transformation market structure, (b) supporting the resolution of land issues for a PPOA counterparty by drafting letters to other government agencies, (c) reviewing a procedures motion prepared by O'Melveny & Myers with respect to the terms of the individual PPOAs to expedite Title III court approval thereof and (d) engaging with the Puerto Rico Public-Private Partnerships Authority ("P3A") and the Central Office for Recovery, Reconstruction and Resiliency ("COR3") on post-transformation regulation that could enhance the credit profile of PREPA or the eventual transmission and distribution system operator (e.g. escrow or other priority of payment regimes).

*San Juan 5 & 6 FSPA*. K&S supported the negotiation, drafting and execution of the Fuel Sale and Purchase Agreement ("FSPA") with New Fortress Energy LLC affiliate NFEnergía LLC ("NFE"), a deal valued at $1.5 billion.  The conversion of two generating units at the San Juan Power Plant to consume natural gas enables PREPA to displace environmentally undesirable diesel fuel and was estimated at the time to generate energy cost savings of as much as $750 million.

K&S' involvement with the negotiations began in December 2018, after PREPA announced that NFE had won the tender. PREPA, together with Filsinger Energy Partners ("FEP") and K&S, negotiated a final agreement with NFE (in just over two weeks).  Two sub-agreements comprised the complex document: one portion governed

engineering, procurement and construction, and the other set forth the terms of a long-term natural gas supply agreement supported by NFE's delivery of liquified natural gas ("LNG") into a receiving facility serving the San Juan units.  K&S also achieved on PREPA's behalf a very flexible LNG/gas supply agreement.

K&S then made significant contributions toward securing PREB and Oversight Board approval of the agreement. K&S drafted the cover letter to the agreement that PREPA submitted to PREB, highlighting the flexibility of the LNG supply arrangements and the other features that PREPA and K&S had negotiated to ensure the agreement complied with PREB's directives.  From January to March of 2019, K&S drafted numerous informal and formal items of correspondence to the Oversight Board, including over thirty (30) pages of formal letters addressing Oversight Board questions concerning the NFE Fuel Sale and Purchase Agreement, and K&S also participated in meetings with the Oversight Board to help ensure the Oversight Board and its advisors understood the agreement and supporting analysis.

Following Oversight Board and PREB approval of the agreement, K&S provided on-site support for the signing and finalization of various conditions subsequent, as well as support for PREPA's review and comment on NFE subcontracts with Lord and Mitsubishi for the conversion Works required under the agreement, and the provision of various performance and payment bonds.

_RSA Demand Protection Provisions_. In support of the negotiation and finalization of the RSA among PREPA, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Oversight Board and the members of an Ad Hoc Group of PREPA Bondholders, at the request of PREPA's restructuring counsel, O'Melveny & Meyers LLP, K&S analyzed proposals for Demand Protection (as defined in the RSA) mechanisms presented by the ad hoc bondholder group, discussed them with representatives of PREPA, FEP, Ankura and other advisors, and drafted statements of principles that should inform the development of Transition Charges (as defined in the RSA) and Demand Protection mechanisms. K&S also developed several alternative approaches designed to protect bondholders from erosion in Transition Charge revenues assumed under the RSA.  K&S supported other advisors in their development of Demand Protection alternatives, reviewed draft presentations and analyses addressing the subject of Demand Protection mechanisms, and participated in multiple conference calls addressing the topic.

K&S' work product addressing Demand Protection proposals and alternative structuring of Transition Charges benefitted PREPA by identifying deficiencies in the bondholders' various Demand Protection proposals, articulating governing regulatory and economic principles for the structuring of Transition Charges, and supporting the work of other advisors to present alternatives that better address PREPA and ratepayer concerns.

_IRP Support_. PREPA asked K&S to take responsibility shortly before the due date for the drafting and revision of testimony presented by José Ortiz, Todd Filsinger, and Matt Lee in connection with PREPA's submission of its Integrated Resource Plan ("IRP") to

the Puerto Rico Energy Bureau ("PREB" or the "Energy Bureau"). The work product played a key role in PREPA's satisfaction of its obligations under Energy Bureau regulations.

*PREB Orders*. K&S had a leading role as outside counsel to PREPA in drafting and revising a comprehensive response to an Energy Bureau order directing PREPA to include certain clauses in contracts meeting certain threshold criteria to be executed during periods in which an emergency has been declared by the Governor of Puerto Rico or the President of the United States, to submit such contracts to PREB and to file all contracts meeting the threshold criteria which it executed during the emergency the Governor declared in response to Hurricanes Irma and María. K&S collaborated with PREPA in-house counsel as well as other counsel to PREPA in developing the response, researching authorities relevant to the response, revising it to address comments of PREPA counsel, and finalizing it for submission by PREPA in-house counsel

*Analysis of SB 1121*. K&S analyzed deficiencies existing in the version of Senate Bill 1121 ("SB 1121"), which the Puerto Rico Senate debated in January 2019. K&S presented the analysis to the Governor's office at a time when it appeared that the bill might be quickly moved to passage. In that analysis, K&S observed that SB 1121 failed to clearly define the criteria that would govern the establishment and review of PREPA rates, did not address the potential for the exercise of market power, did not provide adequate mechanisms to police market entry, and omitted predictable terms under which investments in the electricity sector could be made. K&S identified provisions requiring modification that needed attention in order for SB 1121 to achieve the goals of facilitating the successful transformation of Puerto Rico's electric power sector, encouraging new commitments to the sector on the part of public-private partnership participants and investors, and promoting productive investment in Puerto Rico's energy future.

*Pension Plan*. K&S advised PREPA on certain legal aspects related to its pension plan and other post-employment benefit plans, including plan design, responding to information requests and claims (e.g., demands for payment of pension funding shortfalls from the retirement system) and monitoring communications and activities with various service providers (e.g., plan actuary and consultants).

*Government Affairs*. K&S supported PREPA in numerous government affairs matters to ensure that the interests of PREPA and Puerto Rico relating to such matters as federal funding of electric system reconstruction and PREPA's transformation received appropriate attention. K&S' efforts included coordinating and supporting monthly federal congressional and Trump Administration conference calls, and quarterly congressional and Trump Administration briefings in Washington, D.C. K&S managed a congressional delegation briefing on Congressional Member Delegations to Puerto Rico, and served as PREPA's liaison to the Washington, D.C. office of the Puerto Rico Federal Affairs Administration, the House Natural Resources Committee, and the Senate Energy and Natural Resources Committee. K&S also provided monthly briefings to the

15

PREPA Board on federal matters and assistance with the identification of candidates to fill PREPA Board vacancies.

K&S managed weekly PREPA Federal Affairs Working Group conference calls with PREPA Executive Director José Ortiz and his senior staff, PREPA Board members, consultants and PRFAA, AAFAF, Congresswomen González-Colón's staff, DOE, Treasury, and White House, House and Senate staffers. The PREPA Federal Affairs Working Group addressed federal priorities and strategies to assist in finalizing policies for the disbursement of federal funding by the Department of Housing and Urban Development ("HUD") and the Federal Emergency Management Agency ("FEMA") and attempted to address concerns of Trump Administration officials and Senators and Members of Congress.   K&S assisted Executive Director Ortiz in his preparation and presentation of Congressional testimony and participation in committee hearings. Also, K&S assisted Executive Director Ortiz and the PREPA Board in preparing for meetings and briefings in Washington before various federal agencies congressional committees.

*EcoEléctrica PPOA Renegotiations*. K&S supported PREPA during the renegotiation of its PPOA with EcoEléctrica L.P., the owner of a 461 MW LNG-to-power project located in Peñuelas, for the reduction of capacity payments to deliver cost savings to the ratepayers of Puerto Rico.  During the course of these negotiations, K&S advised PREPA's Project Management Office ("PMO") on (i) strategies for securing LNG regassification capacity at the EcoEléctrica LNG Import Terminal in the event that PREPA could not reach agreement with EcoEléctrica, (ii) in the event that PREPA rejected the PPOA under the Title III process, whether EcoEléctrica facility satisfies the requirements under the Public Utility Regulatory Policies Act of 1978 ("PURPA") for a "Qualifying Facility," and if so, whether EcoEléctrica would still have a right to "put" (or require PREPA to purchase) power produced at its facility to PREPA on an "avoided cost" basis under applicable federal regulations, and (iii) general strategies for renegotiations of the PPOA that would realize PREPA's objectives.

*Joint P3A-PREPA Procurement Protocol*. K&S supported PREPA during the development of a Joint Protocol with P3A to procure Partnership Contracts with respect to any Function, Service or Facility of PREPA in accordance with Act 120-2018 and the Regulation promulgated by the Authority for the Procurement, Evaluation, Selection, Negotiation and Award of Partnership Contracts or Sale Contracts Related to the Transformation of the Electric System in Puerto Rico (each of the foregoing as defined in Act 120-2018).  The purpose of this protocol was to facilitate the implementation of PREPA's and other aspects of the Governor's Energy Policy.

*PREPA Credit Enhancement Strategies*. In response to the general concern among PPOA counter-parties with the creditworthiness of PREPA and, with respect to K&S's role in the matter, the inability of P3A to conclude the procurement of battery energy storage systems due in part to similar concerns, K&S supported PREPA and its other advisors during the development of strategy to enhance the creditworthiness of PREPA and the future transmission and distribution system operator through a new regulatory arrangement which (i) segregated that portion of revenue remitted by ratepayers and

designated as the Purchased Power Cost Adjustment ("<u>PPCA Revenue</u>"), and (ii) prioritized the repayment of PPCA Revenue ahead of debt service paid by PREPA or the transmission and distribution system operator.  Implementation of this strategy was intended to remove one of the most significant obstacles that had been delaying the renegotiation of PPOAs and PREPA's procurement of new generation, energy storage and related services.

<u>*LNG-to-Power RFPs*</u>. K&S advised PREPA on issues presented by PREPA's planned implementation of three (3) LNG-to-power projects contemplated by the draft version of PREPA's IRP.  These included the risk of pass-through of LNG take-or-pay liability to PREPA and its ratepayers, procurement strategies for the importation of LNG, the siting of new facilities for the importation of LNG into Puerto Rico, the Federal and Puerto Rico regulatory framework governing LNG importation, the development of ratepayer-friendly PPOA tariff structures, and bid security arrangements.

<u>*Rooftop Solar & Battery Storage RFP*</u>. At the request of the P3A, K&S conducted a detailed review of a draft request prepared by P3A advisors for qualifications to install and operate solar and battery storage systems on the rooftops of municipal buildings located in Puerto Rico.   After soliciting commercial, technical and regulatory information from PREPA and its advisors, K&S recommended the adoption of a utility-side, "front-of-the-meter" transaction structure for the Project in lieu of the "behind-the-meter" structure proposed in the draft Request for Qualifications ("<u>RFQ</u>").  The structure was intended to optimize both the utilization of solar generation within a microgrid environment during periods of main grid curtailment and the stabilization of the main grid during normal operating periods.

<u>*Other Major RFPs*</u>. K&S supported PREPA in the development of RFP processes for vegetation management, call centers, smart meters, and construction of permanent works for the electrical system.  K&S conducted two (2) workshops on lessons learned from the NFE RFP process, offered general recommendations on PREPA's approach to the RFP process, and made specific recommendations for LNG fuel procurement.  K&S also reviewed and commented on numerous RFIs and RFPs and drafted template and specific contracts for, among others, vegetation management.

<u>*Electricity Sector White Paper*</u>. At the request of the P3A, K&S prepared a 28-page White Paper for inclusion in the data room utilized by bidders for the transmission and distribution system operation and maintenance agreement.  That White Paper described in detail the domestic and Federal laws and regulations applicable to the Puerto Rico electricity sector.  K&S worked closely with lawyers at Pietrantoni Méndez & Álvarez LLC, P3A's Puerto Rico counsel, to identify, develop and annotate English translations of the applicable Puerto Rico legislation and regulations.

<u>*Request for Waiver of the Jones Act as it Applies to Transportation of LNG*</u>. Beginning in early 2019, K&S assisted PREPA, technical advisors from FEP and counsel representing PREPA, the Governor and Secretary of State of Puerto Rico and the Economic Development Bank of Puerto Rico in prosecuting a petition to the Department

of Homeland Security/Customs and Border Protection ("CBP") and the Department of Defense seeking a waiver of provisions of the Jones Act that would permit the transportation of U.S.-sourced liquified natural gas to Puerto Rico. K&S provided input on a supplement to the original waiver application prepared by other counsel addressing questions relating to the availability of LNG carrier vessels that could be made Jones Act-compliant and the national security justifications supporting the waiver. K&S lawyers subsequently participated in a March 2019 meeting with representatives of CBP to discuss the waiver request and assisted with the preparation of information requested during that meeting. The waiver request generated a substantial amount of interest within the Trump Administration but was ultimately denied in August 2019.

**April 2019 through March 2020**

*Hurricane María Insurance Claims.* In July 2019, K&S took an active role in the day-to-day management of the Hurricane María insurance claim. In the summer of 2019, K&S' investigation determined that PREPA had not obtained any payments on the Hurricane María Claim from its insurers since early 2018. K&S sent strong legal responses to the insurers' coverage positions; organized regular claim coordination meetings between PREPA's risk management, DFMO, and PMO; revised expert reports where appropriate before submission to insurers; arranged for meetings with COR3 to apply additional pressure on the insurers to make payments; organized meetings with the U.S. Army Corps of Engineers to explain covered work performed on the rehabilitation of the Guajataca Dam; drafted and negotiated interim proofs of loss with insurers' counsel; prepared PREPA employees and consultants for presentations to insurers; identified additional experts; and worked with PREPA's broker and the insurers to set expectations for regular payments from the insurers going forward.

K&S also organized two (2) summits with the insurers' lead adjusters and counsel in San Juan to discuss payments. Approximately thirty (30) claim representatives attended each of these summits. Shortly after the October summit, the insurers agreed in November 2019 to make a $25 million payment, which was secured under the bankruptcy court's December 2017 Order, outlining procedures for receipt of insurance funds. In doing so, K&S successfully resisted the insurers' efforts to force PREPA to obtain a new order from the bankruptcy court, which would have caused a substantial delay. After the February summit, the insurers agreed to make another $25 million payment. K&S also advised PREPA on potential global settlement negotiations with the insurers.

*Earthquake Insurance Claims.* On January 6-7, 2020, PREPA's Costa Sur power plant and numerous other facilities sustained substantial earthquake damage. After the earthquake occurred, K&S reviewed PREPA's policies for coverage, ensured that PREPA properly notified all insurers of the event, coordinated insurance claim recovery efforts with PREPA's DFMO office, organized plant inspections for insurers, ran an RFQ process to select a qualified forensic accounting firm to assist with the preparation of the claim, attended plant inspections, responded to requests for information from the insurers and their counsel, provided regular updates to insurers' counsel and to Oversight

18

Board, prepared PREPA personnel to respond to press inquiries regarding the loss, and prepared senior PREPA executives for meetings and negotiations with the insurers.

After K&S' March 2020 claim meeting with PREPA, the insurers agreed to make an initial advance payment of at least $25 million, which brought reasonably anticipated advance payments on insurance coverage for the fiscal year of 2019-2020 secured by K&S to $100 million. COVID-19 impeded K&S' ability to give the insurers access to Costa Sur to complete damages inspections, but K&S worked closely with PREPA's forensic accounting firm (the Claro Group) to estimate PREPA's "extra expenses" and "business interruption" losses associated with the loss of the Costa Sur plant

*Costa Sur Tank Collapse Insurance Claim Litigation*. K&S represented PREPA in litigation arising out of the collapse of a fuel tank at Costa Sur in 2015, and PREPA's request for coverage for its losses. PREPA sent the insurers a demand letter for $30 million in early 2019, before K&S became involved in this matter. In response to the demand letter, the insurers sued PREPA in June 2019 in a declaratory judgment action seeking an order that would limit the insurers' obligations to PREPA to only $1.72 million. K&S conducted numerous interviews of PREPA employees and brokers to better understand the manner in which the claim was handled before the insurers sued PREPA in 2019 and to prepare a defensible expert report on PREPA's damages.

*Operational PPOA Renegotiation*. K&S worked with PREPA management to push for meaningful economic concessions from the operator of an existing generating facility that were expected to reduce existing prices by approximately 10%, thus creating $70 million of savings for Puerto Rico ratepayers. In addition, K&S supported PREPA in the negotiation of a new deal for the Punta Lima wind generating facility sponsors that would result in the reconstruction of that project at new lower rates and send a positive message to the market about the ability to do business in Puerto Rico.

*Shovel-Ready PPOA Renegotiation*. K&S conducted meetings, phone calls and negotiating sessions with PPOA counterparties representing approximately 18 "shovel ready" solar generation projects. K&S worked with PREPA management (including PMO, planning/operations, risk management and legal), Sargent & Lundy ("S&L"), FEP, Díaz & Vázquez ("D&V") and others to (i) develop a new and approved form of PPOA for these contracts, (ii) coordinate with the Oversight Board, P3A and PREB on expected outcomes, (iii) establish and streamline the interconnection process for these projects, and (iv) negotiate the pricing set by the PREPA Governing Board (which generally achieved a 40% price reduction versus existing agreements) as well as other meaningful concessions versus the original agreements (including firm project timelines, performance metrics and increased operational flexibility).

*Analysis of Existing PPOAs*. K&S advised PREPA management and its restructuring counsel, O'Melveny & Myers and Proskauer, on the operational benefits and disadvantages of PPOAs covering all non-operational/non-shovel ready renewable generation projects along with any shovel-ready projects not prepared to move forward at the established market pricing to inform PREPA's determination of which PPOAs to

reject. In addition to providing background and operational support to PREPA's restructuring counsel, who were leading the rejection process, K&S analyzed the underlying contracts for PREPA's termination rights and prepared termination letters to each of the project developers.

*FSPA Contract Implementation Matters*. K&S advised PREPA legal and PMO personnel on various contract interpretation matters that have arisen from time to time. These included questions regarding the provision of required notices and obligations of the parties to take specific actions or to grant one another access under the FSPA. K&S also drafted notices concerning satisfaction of certain conditions under the FSPA for PREPA's transmission to NFE. A K&S lawyer also participated in a meeting among representatives of PREPA's Fuels office, PMO and NFE to discuss natural gas nomination and invoicing procedures.

*FSPA Analysis of Possible Breaches and Claims*. K&S advised PREPA legal and PMO personnel on the possibility that delays experienced in the completion of the San Juan 5 & 6 conversion works could support a PREPA claim under the FSPA for delay liquidated damages. K&S drafted a detailed analysis of the issues presented by the delays and arguments that could be advanced in support of and in response to a delay damages claim.

*FSPA Analysis of Options to Nominate Zero Natural Gas Deliveries*. Representatives of PREPA's fuels office and S&L consulted K&S concerning PREPA's right under the FSPA to elect to nominate no natural gas given the cost advantage diesel at the time enjoyed over natural gas priced in accordance with the FSPA.

*RFP Contracting Dispute*. In January 2020, PREPA received a memorandum from a construction company ("Proponent"), in which Proponent made a number of allegations directed at PREPA and certain of its executives, including its Executive Director, José Ortiz. Proponent had bid in connection with a PREPA RFP for power restoration work. K&S had not worked on the RFP.

Shortly after receiving the memo, PREPA directed K&S to review and look into Proponent's allegations. PREPA provided K&S with approximately 2,600 emails, representing related communications. PREPA also provided K&S with access to its PowerAdvocate platform, which contained communications between PREPA and prospective vendors in the RFP process, and other select documents requested by K&S. In addition, FEP provided K&S with approximately 1,430 emails concerning Proponent, as well as other documents relating to the RFP process. As part of its review of the Proponent's allegations, K&S interviewed Delis Zambrana Colón, PREPA's Head of Purchasing, and Nathan Pollak from FEP.

*PREB IRP Review Proceeding*. From July 2019 to date, PREPA has actively engaged K&S in assisting PREPA and its advisors, including Siemens, FEP and D&V, in the preparation of PREPA's IRP and presentation of the IRP to the PREB for review and approval. K&S commented on elements of the draft IRP Main Report, and drafted

prepared direct testimony of PREPA witnesses, including Mr. Ortiz, Todd Filsinger, Matt Lee and Nelson Bacalao, in support of the IRP and its selection of a preferred resource plan and action plan. K&S participated in the drafting and revision of responses to multiple rounds of PREB and intervenor requirements of information, and collaborated with PREPA planning personnel and PREPA advisors and counsel in the development of strategy relating to the presentation and defense of the IRP. K&S lawyer Jim Bowe appeared as a PREPA witness on LNG and natural-gas related matters at the initial technical hearing on the IRP and as a witness addressing those matters on two panels during the IRP evidentiary hearing. K&S also prepared several PREPA witnesses for their appearances at the evidentiary hearing. Following the close of the evidentiary hearing phase, K&S assisted with the drafting of PREPA's final brief and took the lead in drafting PREPA's reply brief responding to arguments advanced in various final intervenor briefs.

*RSA Transition Charge and Demand Protection Provisions*. K&S collaborated during the fourth quarter of 2019 and January 2020 with other PREPA advisors, including its restructuring professionals from O'Melveny & Myers and Ankura Consulting, on the drafting, negotiation and revision of legislation implementing the previously agreed RSA. K&S took the lead in drafting the provisions of the legislation addressing the RSA's Transition Charge and Demand Protection mechanisms and assisted with the integration of other elements of the RSA into proposed legislative language. A K&S lawyer also participated in the negotiation of revised legislative language with representatives of bondholder groups.

*PREB Review and Approval of Amended and Restated EcoEléctrica and Naturgy Agreements*. K&S lawyers that supported PREPA in the renegotiation of agreements with EcoEléctrica and Naturgy and in other matters before the PREB worked with PREPA and S&L personnel to develop a presentation advocating for PREB reconsideration of its initial decision to withhold its approval of the EcoEléctrica and Naturgy agreements. K&S lawyers Kelly Malone and Jim Bowe appeared with representatives of PREPA's PMO, S&L and D&V in a day-long technical conference before the PREB on the EcoEléctrica and Naturgy agreements. The PREB subsequently approved the EcoEléctrica and Naturgy agreements.

*Other Regulatory Matters*. Beginning in July 2019, K&S personnel periodically provided substantive input to S&L personnel on the development and documentation of an "Electrical Generation Master Fuel Plan for Puerto Rico." This involved several rounds of comments on elements of the draft plan discussing the federal regulatory environment relevant to certain types of LNG receiving facilities and the applicability of the Jones Act to various LNG shipping arrangements. K&S offered suggestions regarding modifications to the draft plan to address regulatory concerns and to achieve consistency with the proposed IRP.

*EcoEléctrica / Naturgy Renegotiations*. K&S supported PREPA during the renegotiation of the PPOA with EcoEléctrica and the Gas Supply and Purchase Agreement ("GSPA") with Naturgy, to achieve significant savings. During the course of these negotiations,

K&S advised PREPA on (i) strategies for securing LNG regasification capacity at the EcoEléctrica LNG import terminal in the event that PREPA could not reach agreement with EcoEléctrica, (ii) in the event that PREPA rejected the PPOA under the Title III process, whether EcoEléctrica facility satisfies the requirements under PURPA for a "Qualifying Facility," and if yes whether EcoEléctrica would still have a right to "put" (or require PREPA to purchase) power produced at its facility to PREPA on an "avoided cost" basis under applicable federal regulations, (iii) general strategies for renegotiation of the PPOA that would realize PREPA's objectives, (iv) the drafting and negotiation of the amendment and/or restatement of the PPOA, as well as an amendment and/or restatement of the GSPA for the Costa Sur power generation project, and (v) approval processes for PREPA's Governing Board Oversight Board, P3A and PREB.

_Interactions with FERC Staff Concerning Possible LNG Receiving Facilities_. Beginning in December 2019, K&S assisted PREPA and S&L personnel in planning for, arranging and conducting a meeting with members of the Federal Energy Regulatory Commission ("FERC") staff to discuss possible configurations of LNG receiving facilities that would serve electric generating facilities in Puerto Rico. PREPA sought the meeting to acquaint FERC staff members with the various possible facilities configurations and seek their guidance as to whether they believed the siting, construction and operation of any of them would require FERC authorization. K&S assisted S&L and PREPA with the development and refinement of a presentation describing the alternatives, interacted with FERC staff representatives in scheduling the meeting.

_Other Government Affairs_. K&S supported PREPA in numerous Federal government affairs matters to ensure PREPA's and Puerto Rico's interests received appropriate attention. The efforts included coordinating and supporting weekly PREPA Federal Affairs Working Group meetings; providing Federal CARE Act funding support; representing PREPA weekly in AAFAF Federal affairs meetings; coordinating legislative priorities with PRFAA and Congresswoman González-Colón; reviewing and providing briefings on Federal executive orders, legislation and policy initiatives; and coordinating and helping manage PREPA efforts to secure federal funding. K&S also served as liaison for the engagement of Governor Chris Christie as an advisor to PREPA and the Government of Puerto Rico relating to efforts to secure the disbursement of FEMA funding and other Federal affairs matters.

K&S managed weekly PREPA Federal Affairs Working Group conference calls with PREPA Executive Director José Ortiz and his senior staff, PREPA Board members, consultants and representatives of PRFAA, AAFAF, Congresswomen González-Colón's staff, DOE, Treasury, and White House, House and Senate staffers. The PREPA Federal Affairs Working Group addressed federal priorities and strategies to assist in finalizing federal funding at HUD and FEMA and attempted to address concerns of Trump Administration officials, Senators and Members of Congress.  K&S assisted Executive Director Ortiz in his preparation and delivery of Congressional testimony and participation in Congressional committee hearings. Also, K&S assisted Executive Director Ortiz and members of the PREPA Board in preparing for meetings and briefings in Washington before various federal agencies and on Capitol Hill.

*RFPs for New Generation*. K&S advised PREPA on issues arising out of PREPA's efforts to implement (i) an RFP for temporary generation following the 2020 earthquakes and (ii) an RFP for a Mayaguez LNG-to-power project, as well as other LNG-to-power projects contemplated by the draft version of the IRP, including (1) drafting full length documentation in respect of each RFP, (2) advising on the risk of pass-through by IPPs of LNG take-or-pay liability to PREPA and its ratepayers, (3) advising on procurement strategies for the importation of LNG that minimize the foregoing risk, (4) advising on the Federal regulatory framework governing LNG importation and generation procurement, (5) generating procurement strategies that would maximize competitive tension among bidders and would result in the lowest power tariffs for temporary and long-term renewable and thermal generation, (6) implementing ratepayer-friendly tariff structures and procurement strategies, (7) crafting bid security arrangements, and (8) addressing key commercial issues arising out of the possible use of floating storage and regassification units for LNG importation into Puerto Rico.

**April 2020 through March 2022**

*Renewable Energy PPOA Administration*. K&S supported PREPA management in the renegotiation of PPOAs with proponents of operational and shovel-ready solar power projects and wind generating facilities to provide environmentally friendly generation at market-reflective prices. This workstream delivered aggregate savings and avoided liabilities (versus pricing had projects gone forward on existing terms) in excess of $200 million over the duration of the PPOAs.  K&S supported PREPA in (i) the finalization of the PPOA and asset purchase agreement for the Punta Lima Wind Farm, which would result in the reconstruction of that project at new lower rates, and send a positive message to the market about the ability to do business in Puerto Rico, (ii) as described above, the final stakeholder approvals, contract closing and administration of the CIRO and Xzerta PPOAs, the first new development of renewable energy projects in Puerto Rico in several years, and (iii) ongoing operational and contract administration issues for other operational renewable projects.

*FSPA Contract Implementation Matters*. K&S advised PREPA legal and PMO personnel on various contract interpretation matters that have arisen under the FSPA from time to time. These included questions regarding the provision of required notices and obligations of the parties to take specific actions to achieve substantial completion and the commencement of the firm supply period (during which contractually-specified adders are reduced each year). K&S drafted notices concerning satisfaction of certain conditions under the FSPA for PREPA's transmission to NFE. A K&S lawyer advised PREPA on FSPA natural gas nomination and invoicing procedures. K&S also advised on the FSPA's requirements for achieving and acknowledging substantial completion of the San Juna 5 & 6 conversion works and the satisfaction of the FSPA's firm supply conditions.

*FSPA Analysis of Possible Breaches and Claims*. K&S advised PREPA legal and PMO personnel on PREPA's rights and remedies under the FSPA relating to delays

23

experienced in the completion of the San Juan 5 & 6 conversion works and on deficiencies in NFE's invoicing for commissioning gas.

*PREB IRP Review and Implementation Proceedings*. From July 2019 to date, PREPA has engaged K&S in actively assisting PREPA and its advisors, including Siemens, FEP, S&L and D&V, in the preparation of PREPA's IRP, its presentation to the PREB for its review and approval, and in responding to PREB orders addressing the IRP and implementation of the approved IRP and modified action plan. K&S continues to be called upon to support PREPA, S&L and D&V in addressing approved IRP and modified action plan implementation matters.

K&S provides ongoing support to PREPA as needed to supplement local counsel in Energy Bureau proceedings relating to the renewables RFP process, optimization of the design of minigrids and microgrids, finalization of regulations addressing energy efficiency, demand response, distributed generation, and related matters.

*Other Regulatory Matters*. In March 2021 the Federal Energy Regulatory Commission found that it had jurisdiction under Section 3 of the Natural Gas Act over NFE's LNG receiving facility in San Juan Harbor. FERC directed NFE to file an application for authorization to site and operate the LNG receiving facility by September 15, 2021. K&S attorneys advised PREPA during the course of the FERC proceeding that led to its March 2021 order asserting jurisdiction over the NFE receiving facility and drafted a letter from PREPA's Executive Director identifying the benefits associated with the availability of natural gas via the NFE facility and urging FERC not to interfere with the continued operation of the facility should it determine that the facility is subject to FERC's jurisdiction.  This letter was cited by a FERC Commissioner in a concurring statement noting the importance of maintaining continued operation of the NFE facility pending resolution of any FERC proceeding.

At PREPA's request, K&S has assisted NFE in documenting the emissions reduction benefits associated with the use of natural gas in place of diesel fuel in San Juan Units 5 & 6.

In September 2021 NFE submitted an application to FERC for authorization to site and continue to operate its LNG receiving facility, as directed. K&S prepared on PREPA's behalf a motion to intervene in the FERC proceeding.

*EcoEléctrica / Naturgy Renegotiations and Appeal of Motion to Assume*. K&S continued to support PREPA during and following the renegotiation of the PPOA with EcoEléctrica and the GSPA with Naturgy. K&S advised PREPA on ongoing contract administration issues and supported Oversight Board's counsel, Proskauer, and other counsel with respect to background and operational information in responding to challenges before U.S. Court of Appeals for the First Circuit to the PROMESA court's approval of a motion to assume the EcoEléctrica and Naturgy agreements.  Those challenges were unsuccessful in the First Circuit.

*Government Affairs*. K&S supported PREPA in numerous Federal government affairs matters to ensure PREPA's and Puerto Rico's interests received appropriate attention. The firm's efforts included coordinating and supporting weekly PREPA Federal Affairs Working Group meetings; coordinating legislative priorities with PRFAA and Congresswoman González-Colón; reviewing and providing briefings on Federal executive orders, legislation and policy initiatives. More recently, K&S assisted PREPA in interacting with representatives of the White House and the U.S. Department of Energy who have been charged with responsibility for supporting PREPA grid reconstruction and resiliency enhancement efforts.

K&S managed weekly PREPA Federal Affairs Working Group conference calls with PREPA Executive Director José Ortiz (until his departure in August 2020 and, thereafter, with his successor, Efran Parades) and PREPA senior staff, PREPA Board members, consultants and representatives of PRFAA, AAFAF, Congresswomen González-Colón's staff, DOE, Treasury, and White House, House and Senate staffers. The PREPA Federal Affairs Working Group discussed federal priorities and strategies and sought to assist in finalizing policies governing the disbursement of federal funding by HUD and FEMA. K&S assisted Executive Director Ortiz in his preparation and presentation of Congressional testimony and in participating in committee hearings. K&S also assisted Executive Director Ortiz and members of the PREPA Board in preparing for meetings and briefings in Washington before various federal agencies and on Capitol Hill.

23.     As reflected in **Schedule 2**, K&S seeks allowance, pursuant to the Interim Compensation Order, of (a) $28,212,229.38 (and net of the 10% holdback amount, $25,391,006.44) as compensation for professional services rendered, and (b) $297,297.70 as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services. Notably, this Application and such amounts reflect aggregate voluntary reductions made during the Compensation Period to K&S' requests for compensation and for reimbursement of expenses in the amount of $591,576.98 and $105,968 respectively, on top of the sizeable discount embedded in the PSAs.

24.     During the Compensation Period, K&S attorneys and paraprofessionals expended a total of 36,185 hours in connection with the necessary services performed.  K&S maintains computerized records of the time spent by all K&S attorneys and paraprofessionals in connection with the firm's representation of PREPA.  Subject to redaction where necessary to preserve

confidentiality, copies of the computerized records for the fees and expenses billed to PREPA during the Compensation Period separated by year and work done inside and outside of Puerto Rico are attached hereto as Exhibit C-1 for January through March 2022, Exhibit C-2 for 2021, Exhibit C-3 for 2020, Exhibit C-4 for 2019, Exhibit C-5 for 2018, and **Exhibit C-6** for 2020 (collectively the "Compensation Exhibits").

25.     As described above in paragraph 9, each PSA establishes a maximum Contract Amount for the applicable term and sets forth a list of K&S approved timekeepers, which acts as budget and staffing plan.  During the Compensation Period all K&S Professionals appeared on the approved timekeepers list and K&S has not exceeded the aggregate Contract Amounts permitted under the PSAs.

26.     The total time expended during the Compensation Period by K&S attorneys in connection with the preparation of this Application, including in connection with correspondences with the Fee Examiner and PREPA and the preparation of the Compensation Exhibits, was 130.5 hours and $74,806.60, which each constitute less than 0.4% of the total hours and fees included in this Application, respectively.  Such time was reasonable and necessary given the Compensation Period for this first interim fee application covers more than 5 years of K&S services for PREPA and going forward, such services shall be limited to preparation of monthly fee statements and any communications regarding comments to this Application or the forthcoming monthly fee statements.

27.     The number of PREPA approved K&S timekeepers under the PSAs that worked on the aforementioned PREPA matters during the Compensation Period was 95. As the scope of services PREPA engaged K&S to perform expanded under the PSAs, different timekeepers with different areas of expertise were consulted to provide specialized assistance in connection with

related power purchase and operating agreements, electric storage service agreements, grid service agreements, and other matters related to the RFP.  To respond to these broadened demands, K&S increased its staffing to ensure diligent and timely representation was provided to PREPA.

28.     All entries itemized in detailed time records set forth in the Compensation Exhibits comply with the requirements set forth in the PSAs and, as agreed to with the Fee Examiner, time records for the periods after October 2021, comply with the Guidelines and the guidelines established by the Fee Examiner, including, without limitation, (a) beginning in 2019, the utilization of task codes consistent with the project categories set forth in the Guidelines, ¶ C.8. (project categories for billing records) (the "Task Codes"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services. Additionally, Task Codes are organized in accordance with Guidelines, ¶ C.8.b.  If a Task Code does not appear in a particular time record in the Compensation Exhibits after January 2019, K&S did not bill time for that Task Code during the applicable period during Compensation Period but may bill time for that Task Code in the future.

**In addition to summaries included in the Compensation Exhibits for each period covered by the itemized time records included therein, a summary of the titles, hours worked, fees billed and hourly rate of the K&S professionals and paraprofessionals performing services for PREPA during the Compensation Period is set forth on Schedule 3**

29.     Schedule 3.  As required by the Guidelines, **Schedule 4** to this Application (and each Compensation Record), shows a list of K&S professionals and the aggregate recorded hours such professional performed under each Task Code during the Compensation Period.  In accordance with Guidelines paragraph C.3, K&S' blended hourly rates are disclosed in **Schedule 1**.  The fees charged by K&S, as set forth in the Compensation Exhibits and summarized on **Schedule 3**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect K&S' arrangement with PREPA.  The standard rates K&S charges for the services rendered by its professionals and paraprofessionals on behalf of PREPA have been reduced to reflect the unique circumstances of PROMESA, and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedule 3** and  **Schedule 5** show the rates K&S charges PREPA on an hourly basis are below the competitive market rates charged by the other professionals representing PREPA, the Commonwealth of Puerto Rico, and its instrumentalities in connection with similar matters.  No K&S rates were increased as a result of the geographic location of a bankruptcy case (or the Title III Case).

30.     The foregoing professional services performed by K&S on behalf of PREPA during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of PREPA's operational and regulatory affairs, including in connection with the ongoing transformation of Puerto Rico's electrical grid, and were in the best interests of PREPA and its creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

31.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity and essential nature of PREPA's operations and the transformation of Puerto Rico's electrical grid; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) K&S' established expertise in the regulatory and energy fields; and (f) the costs of comparable services other than in a comparable case.

### Applicant Statement in Compliance with Appendix B Guidelines Paragraph C.5

32.     The following answers are provided in response to the questions set forth in Guidelines, ¶ C.5:

| | |
|---|---|
| **Question:** | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain. |
| Response: | Yes, other than during the period from 4/17/20 to 6/30/20, during which K&S provided PREPA with volume discounts for the work performed during such period, the rates of K&S attorneys have been frozen since any such attorney first appeared on the list of approved timekeepers attached to the PSA. Additionally, as a special accommodation to PREPA, in addition to substantial discounts to K&S's normal hourly rates, other than with respect to step increases approved by PREPA and appearing on the list of approved PREPA timekeepers, K&S has not increased the hourly rates of any K&S timekeepers from the respective rates listed for each professional since the date each respective professional was added to list of approved PREPA timekeepers. |
| **Question:** | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | Not applicable. |
| **Question:** | Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the Title III Case? |

29

| Response: | No. |

| **Question:** | Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees. |

| Response: | No. |

| **Question:** | Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees. |

| Response: | Yes, see paragraph 26 *supra*. |

| **Question:** | If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458? |

| Response: | Not applicable. |

### Actual and Necessary Expenses of K&S

33.     Pursuant to the Guidelines, **Schedule 5** is summary of actual and necessary expenses K&S incurred on behalf of PREPA during the Compensation Period.

34.     During the Compensation Period, after the voluntary write offs described in this Application, K&S has disbursed \$297,297.70[6] as necessary and reasonable expenses. K&S has made every effort to minimize its expenses in its representation of PREPA. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the

---

[6]      This includes \$110,449 of contractual per diem expenses and lodging in accordance with the PSAs for a K&S timekeeper working on-site at PREPA from January 2019 to March 2020, when PREPA's offices were shut down due to the pandemic, and prior to Application, K&S voluntarily wrote off \$105,968 of such expenses incurred after March 2020.

circumstances to effectively serve the needs of PREPA and its stakeholders and are intended to

reimburse K&S' direct operating costs, which are not incorporated into the K&S hourly billing

rates, in accordance with PREPA policies and the terms of the PSAs.

### Compensation Paid and Its Source

35.     All services for which K&S seeks compensation, and expenses for which it seeks

reimbursement, were performed on behalf of PREPA. In connection with the matters covered by

this Application, K&S received no payment and no promises of payment for services rendered, or

to be rendered, from any source other than the PREPA. There is no agreement or understanding

between K&S and any other person, other than members of the firm, for the sharing of

compensation received for services rendered to PREPA.

36.     PROMESA sections 316 and 317 provide for interim compensation of

professionals and govern the Court's award of such compensation. PROMESA section 316

provides that a court may award a professional person employed by PREPA "(1) reasonable

compensation for actual, necessary services rendered by the professional person, or attorney and

by any paraprofessional person employed by any such person; and (2) reimbursement for actual,

necessary expenses." PROMESA § 316(a). Section 316 also sets forth the criteria for the award of

such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court
> shall consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including—
>
> 1)  the time spent on such services;
>
> 2)  the rates charged for such services;
>
> 3)  whether the services were necessary to the administration of, or
>     beneficial at the time at which the service was rendered toward the
>     completion of, a case under this chapter;

4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

37.   As noted above, the professional services and expenditures for which K&S seeks compensation and reimbursement in this Application were necessary and beneficial to PREPA, and included, among other things, anticipating or responding to PREPA's needs and assisting in PREPA's navigation of its complex operational footprint and the transformation of Puerto Rico's electric grid.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to PREPA.  PREPA has reviewed and approved this Application.

## Reservations

38.   To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or K&S has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, K&S reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## Notice

39. Pursuant to the Interim Compensation Order and the *Sixteenth Amended Notice, Case Management and Administrative Procedures* [Case No. 17-BK-3283–LTS, ECF No. 20190-1] (the "Case Management Procedures"), notice of this Application has been filed in the Title III Case

32

and the lead Commonwealth of Puerto Rico's Title III Case and served upon the Notice Parties set forth in the Interim Compensation Order and Standard Parties set forth in the Case Management Procedures.

K&S submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE K&S respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$28,212,229.38**, and allowing reimbursement for actual and necessary expenses K&S incurred in connection with such services during the Compensation Period in the amount of **$297,297.70**; (b) authorizing and directing PREPA to pay promptly to K&S, as more fully set forth on **Schedule 2**, the difference between (i) the amount of interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation and expenses previously paid to K&S and the holdback amount, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to K&S' right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application or which arise from the accrued incremental fees from increased rates in the PSAs; and (d) granting K&S such other and further relief as is just and proper.

**[*Remainder of Page Left Intentionally Blank*]**

Dated: July 14, 2022
Atlanta, Georgia

/s/ Sarah R. Borders

Sarah R. Borders (*pro hac vice* pending)
Miguel Cadavid (*pro hac vice* pending)
**KING & SPALDING LLP**
1180 Peachtree Street NE
Atlanta, Georgia 30309
Tel:          (404) 572-4600
Email:        sborders@kslaw.com
              mcadavid@kslaw.com

*Counsel for PREPA*

-and-

Dated: July 14, 2022
San Juan, Puerto Rico

/s/ Janelle Reyes-Maisonet

Janelle Reyes-Maisonet
USDC-PR No. 231102
SÁNCHEZ LRV LLC
270 Muñoz Rivera Ave., SUITE 1110
San Juan, PR 00918
Tel:          (787) 522 6776
Email:        jreyes@sanchezlrv.com

*Counsel for King & Spalding LLP*

## **Exhibit A**

### **Certification under Guidelines**

*See Attached.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Title III |
| | ) |
| as representative of | ) Case No. 17–BK–3283–LTS |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) (Jointly Administered) |
| | ) |
| Debtors. [1] | ) |
| | ) |
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Title III |
| | ) |
| as representative of | ) Case No. 17–BK–4780–LTS |
| | ) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | ) **This Application relates only to** |
| | ) **PREPA, and shall be filed in the** |
| Debtor. | ) **lead Case No. 17–BK–3283–LTS** |
| | ) **and PREPA's Title III Case** |
| | ) **(Case No. 17–BK–4780–LTS)** |
| | ) |

## CERTIFICATION GUIDELINES FOR FEES
## AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF THE
## FIRST INTERIM FEE APPLICATION OF KING & SPALDING LLP FOR
## COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF
## EXPENSES INCURRED AS ATTORNEYS FOR THE PUERTO RICO
## ELECTRIC POWER AUTHORITY, FOR THE PERIOD
## <u>AUGUST 1, 2018 THROUGH MARCH 31, 2022</u>

---

[1]       The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>")(Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Pursuant to the US Trustee Guidelines, Local Rule 2016–1, and the order dated June 26, 2019 [Case No. 17-BK-3283–LTS, ECF No. 7678], the undersigned, a partner of the firm King & Spalding LLP ("K&S"), attorneys for the Puerto Rico Electric Power Authority (the "PREPA"), hereby certifies with respect to (a) *First Interim Fee Application of King & Spalding LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Counsel to the Puerto Rico Electric Power Authority, for the Period August 1, 2018 Through March 31, 2022*, filed concurrently herewith in the PREPA's Title III case (the "Application"; capitalized terms not defined herein shall have the meanings set forth in the Application), and (b) the Court's order dated June 26, 2019 [Case No. 17-BK-3283–LTS, ECF No. 7678] as follows:

1.      I am the professional designated by K&S in respect of compliance with the Guidelines and Local Rule 2016–1.

2.      I make this certification in support of the Application for interim compensation and reimbursement of expenses incurred during the Compensation Period in accordance with the Guidelines and Local Rule 2016–1.

3.      In respect of the Guidelines and Local Rule 2016–1, I certify that:

   a.   I have read the Application;

   b.   to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought fall within the Guidelines;

   c.   except to the extent (i) that fees or disbursements are prohibited by the Guidelines or (ii) K&S agreed to provide discounts to its usual rates in connection with its representation of PREPA, the fees and disbursements sought are billed at rates in accordance with practices customarily employed by K&S and generally accepted by K&S' clients; and

2

      d.   in providing a reimbursable service, K&S does not make a profit on that service, where the service is performed by K&S in house or through a third party.

4.    I certify that K&S has previously delivered invoices of K&S' fees and disbursements to PREPA in accordance with PREPA's policies and the PSAs, except that completing reasonable and necessary internal accounting and review procedures or preparing and filing the Application may have, at times, delayed delivery of invoices to PREPA, and in addition to delivery of the invoices, K&S hereinafter shall file and serve monthly fee statements in accordance with the Interim Compensation Order.

Dated: July 14, 2022
     Washington D.C.

                       */s/ Steven M. Kupka*

                       Steven M. Kupka
                       **KING & SPALDING LLP**
                       1700 Pennsylvania Avenue, NW
                       Suite 900
                       Washington, DC 20006-4707
                       Tel:      (202) 737-0500
                       Email:    skupka@kslaw.com

                       *Counsel for the Puerto Rico Electric Power Authority*

## <u>Exhibit B</u>

**Proposed Order**

*See Attached.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) ) | PROMESA Title III |
| | ) | |
| as representative of | ) | Case No. 17–BK–3283–LTS |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. [18] | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | ) ) | PROMESA Title III |
| | ) | |
| as representative of | ) | Case No. 17–BK–4780–LTS |
| | ) | |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | ) ) | **This Application relates only to PREPA, and shall be filed in the** |
| | ) | **lead Case No. 17–BK–3283–LTS** |
| Debtor. | ) | **and PREPA's Title III Case** |
| | ) | **(Case No. 17–BK–4780–LTS)** |
| | ) | |

# ORDER APPROVING
# FIRST INTERIM FEE APPLICATION OF KING & SPALDING LLP FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY, FOR THE PERIOD <u>AUGUST 1, 2018 THROUGH MARCH 31, 2022</u>

---

[18]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>")(Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon the application (the "Application")[19] of King & Spalding LLP ("K&S"), as attorneys for the Puerto Rico Electric Power Authority (the "Debtor") under section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[20] seeking, pursuant to (a) PROMESA sections 316 and 317, (b) Rule 2016 of the Federal Rules of Bankruptcy Procedure, (c) Local Rule 2016–1, (d) the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B, and (e) this Court's *Third Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17-BK-3283–LTS, ECF No. 20546], allowance of interim compensation for professional services rendered by K&S for the period commencing August 1, 2018 through and including March 31, 2022 in the amount of $28,212,229.38, and reimbursement of its actual and necessary expenses in the amount of $297,297.70 incurred during the Compensation Period; and, this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is hereby **ORDERED** that:

5.      The Application is **GRANTED** as set forth herein.

6.      Compensation to K&S for professional services rendered during the Compensation Period is allowed on an interim basis in the amount of $28,212,229.38.

7.      3. Reimbursement to K&S for expenses incurred during the Compensation Period is allowed on an interim basis in the amount of $297,297.70.

---

[19]     Capitalized terms not defined in this order will have the meanings ascribed to them in the Application.

[20]     PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

2

8.     PREPA is authorized and directed to pay K&S all fees and expenses allowed pursuant to this order within fifteen (15) days of the entry of this order, including those that were previously held back pursuant to the Interim Compensation Order, less any amounts previously paid for such fees and expenses under the terms of the Interim Compensation Order.

9.     The compensation for professional services rendered and reimbursement of actual and necessary expenses incurred allowed pursuant to this order is without prejudice to K&S' right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of the Application or which represent the incremental fees identified in the Summary Sheets.

10.     PREPA is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

Dated: _____, 2022
        San Juan, Puerto Rico

_____
Honorable Laura Taylor Swain
United States District Judge

3

## **Exhibit C-1**

**January through March 2022 Detailed Time and Expense Records**

*See Attached.*

## **Exhibit C-2**

**2021 Detailed Time and Expense Records**

*See Attached.*

## **Exhibit C-3**

**2020 Detailed Time and Expense Records**

*See Attached.*

## **Exhibit C-4**

**2019 Detailed Time and Expense Records**

*See Attached.*

## **Exhibit C-5**

**2018 Detailed Time and Expense Records**

*See Attached.*

## **Exhibit C-6**

**2017 Detailed Time and Expense Records**

*See Attached.*