# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| | ) | **PROMESA** |
| **In re** | ) | **Title III** |
| | ) | |
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** | ) ) | **No. 17 BK 3283-LTS** |
| | ) | |
| As a representative of | ) | **(Jointly Administered)** |
| | ) | |
| **THE COMMONWEALTH OF PUERTO RICO** *et al.,* | ) ) | |
| | ) | |
| **Debtors.**[1] | ) | |
| | ) | |

**FINAL FEE APPLICATION OF DICICCO, GULMAN & COMPANY LLP, AS FINANCIAL ADVISOR TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES RELATED TO THE DEBTOR:  COMMONWEALTH FOR THE PERIOD FROM FEBRUARY 26, 2019 THROUGH MARCH 15, 2022[2]**

| | |
|---|---|
| Name of Applicant: | DiCicco, Gulman & Company LLP ("DGC") |
| Authorized to Provide Professional Services to: | Financial Advisor to The Financial Oversight and Management Board, |

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]     This form has been designed to incorporate many of the requirements of PROMESA §316 and ¶ C.2.l and Exhibit E to the Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases (the "**U.S. Trustee Guidelines**").

| | acting through its Special Claims Committee |
|---|---|
| Date of Retention: | February 26, 2019 |
| Period for which compensation and reimbursement is sought: | February 26, 2019 through March 15, 2022 (Retention Date through Effective |
| | Date) |
| Amount of final compensation sought as actual, reasonable, and necessary: | $7,328,471.05[3] |
| Amount of final expense reimbursement sought as actual, reasonable, and necessary: | $0.00 |
| Blended rate in this application for all attorneys: | $ 375.00              / hour |
| Blended rate in this application for all timekeepers: | $ 375.00              / hour |
| The total time expended for fee application preparation for the Final Fee Period is approximately 0 hours and the corresponding compensation requested is approximately $0.[4] | |

---

[3] Includes previously approved fees of $7,328,471.05 and does not include fees requested but not yet approved of $294,412.50.

[4] DGC is not seeking reimbursement in this application for final fee application preparation during the Final Fee Period.

**SUMMARY OF PRIOR INTERIM FEE APPLICATIONS:**

| Date [Docket No.] | Interim Fee Period ("IFP") Covered[5] | Fees and Expenses Approved | | Date and Docket No. of Fee Order | |
| --- | --- | --- | --- | --- | --- |
| | | Fees | Expenses | Date | Docket No. |
| | *First IFP*<br>5/3/17 to 9/30/17 | | | | |
| | *Second IFP*<br>10/1/17 to 1/31/18 | | | | |
| | *Third IFP*<br>2/1/18 to 5/31/18 | | | | |
| | *Fourth IFP*<br>6/1/18 to 9/30/18 | | | | |
| | *Fifth IFP*<br>10/1/18 to 1/31/19 | | | | |
| 11/22/2019<br>#9315 | *Sixth IFP*<br>2/1/19 to 5/31/19 | 1,441,998.31 | - | 12/6/2019 | 9488 |
| 11/22/2019<br>#9314 | *Seventh IFP*<br>6/1/19 to 9/30/19 | 1,532,459.50 | - | 5/18/2020 | 13150 |
| 5/5/2020<br>#13077 | *Eighth IFP*<br>10/1/19 to 1/31/20 | 1,053,778.87 | - | 12/8/2020 | 15370 |
| 7/4/2020<br>#13829 | *Ninth IFP*<br>2/1/20 to 5/31/20 | 960,763.12 | - | 10/26/2020 | 14925 |
| 12/21/2020<br>#15483 | *Tenth IFP*<br>6/1/20 to 9/30/20 | 753,123.75 | - | 3/8/2021 | 15971 |
| 3/12/2021<br>#16014 | *Eleventh IFP*<br>10/1/20 to 1/31/21 | 825,667.50 | - | 8/3/2021 | 17646 |
| 7/15/2021<br>#17349 | *Twelfth IFP*<br>2/1/21 to 5/31/21 | 490,155.00 | - | 10/4/2021 | 18371 |
| 11/14/2022<br>#19195 | *Thirteenth IFP*<br>6/1/21 to 9/30/21 | 270,525.00 | - | 3/18/2022 | 20412 |
| 6/20/2022<br>#21401 | *Fourteenth IFP*<br>10/1/21 to 1/31/2022 | not approved yet | | | |
| 6/30/2022<br>#21403 | *Fifteenth IFP*<br>2/1/2022 to Plan Effective Date | not approved yet | | | |

---

[5]     If your firm did not file a fee application for a listed Interim Fee Period, please leave the line blank.

| | | |
|---|---|---|
| **Total fees and expenses approved by interim orders to date:**[6] | 7,328,471.05 | |

---

[6]     These totals should equal the amount of your final fee and expense requests.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**FINAL APPLICATION OF**
**DICICCO, GULMAN & COMPANY LLP, FINANCIAL ADVISOR TO**
**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,**
**ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,**
**FOR PROFESSIONAL COMPENSATION RELATED TO**
**THE DEBTOR: COMMONWEALTH**
**FOR THE PERIOD FROM**
**FEBRUARY 26, 2019 THROUGH MARCH 15, 2022**

TO THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE:

DiCicco, Gulman & Company LLP ("DGC"), Financial Advisor to the Financial Oversight

and Management Board, acting through its Special Claims Committee (the "Oversight Board") as

representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing

Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Authority, and the Puerto Rico Public Buildings Authority (collectively, the "Debtors") in the above-caption title III cases (the "Title III Cases") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this final application (the "Final Application" or "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"), Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by this Court on June 6, 2018 [Docket No. 3269] (the "Interim Compensation Order"), seeking entry of a an order allowing and ratifying all prior fee and expense requests during the period commencing February 26, 2019 through March 15, 2022 (the "Compensation Period"). In support of this Application, DGC respectfully states the following:

**Jurisdiction and Venue**

1.      The Court has subject matter jurisdiction to consider and determine this Application pursuant to PROMESA section 306(a).  Venue is proper before this Court pursuant to PROMESA section 307(a).  The statutory predicates for the relief requested herein are PROMESA sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

---

[2]      PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]      The Application solely pertains to fees and expenses incurred with respect to the Debtors' Title III Cases and does not address fees or expenses incurred with respect to other services performed for the Oversight Board outside the Title III process.

[4]      The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.

2.      This Application has been prepared in accordance with the Guidelines and the Interim Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance with the Local Guidelines.

### Background and Case Status

A.      **The Debtors' Title III Cases**

3.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).

4.      On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as "covered entit[ies]" under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

8.      On May 5, 2017, the Oversight Board filed a voluntary petition for relief for the Puerto Rico Sales Tax Financing Corporation ("COFINA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

9.      On May 21, 2017, the Oversight Board filed a voluntary petition for relief for each of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS")

3

and the Puerto Rico Highways and Transportation Authority ("HTA") pursuant to section 304(a) of PROMESA, commencing cases under title III thereof.

10.     On July 2, 2017, the Oversight Board filed a voluntary petition for the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

11.     Through orders issued on June 1, June 29 and October 6, 2017, the Court ordered the joint administration of the Title III Cases for the Debtors, for procedural purposes only [Docket Nos. 242, 537 and 1417].

12.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1] attached to the Commonwealth's Title III petition.

**B.      Retention of DiCicco, Gulman and Company LLP**

13.     DGC is an accounting firm with its offices located in Boston and Woburn, Massachusetts.  DGC has significant experience serving as a consultant or financial expert in bankruptcy actions and litigations in many large, complex cases.

14.     As set forth in the Independent Contract Services Agreements dated February 26, 2019 and July 1, 2020 (the "Services Agreements"),[5] DGC was retained by and authorized to act as financial advisor to the Oversight Board, acting through its Special Claims Committee, to assist the Special Claims Committee regarding investigation and pursuit of potential claims.

**C.      Interim Compensation and Fee Examiner Orders**

15.     On August 23, 2017, the Court entered the Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 1150].

---

[5]     A copy of the Services Agreement is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/.

16.     On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Docket No. 1416] (the "Fee Examiner Order").

17.     On October 31, 2017, the Fee Examiner filed the Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the Due Date and Hearing Date for Interim Compensation [Docket No. 1594].

18.     On November 8, 2017, the Court entered the First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 1715].

19.     On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018 and January 20, 2022, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

20.     On May 8, 2018, the Fee Examiner filed the Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency [Docket No. 3032] (the "Motion to Amend the Fee Examiner Order").

21.     On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Docket No. 3133].

22.     On June 6, 2018, the Court entered the Interim Compensation Order, and in accordance therewith, LS&E and other professionals retained in these Title III Cases were authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

23.     Pursuant to the Interim Compensation Order, the Notice Parties have ten days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no objection

5

is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

24.     On June 20, 2018, the Court entered the First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief [Docket No. 3324] (the "Amended Fee Examiner Order").

### D.     Applications for Interim Compensation

25.     DGC has submitted ten (10) interim fee applications. Each of the interim fee applications are incorporated herein by reference.

26.     This is DGC's final application and covers the period from February 26, 2019 through March 15, 2022.

### Relief Requested

27.     By this Application, DGC seeks a final order authorizing approval and allowance of interim compensation for the professional services rendered and for expenses incurred during the ten interim periods for which comprise DGC's retention.

28.     All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Oversight Board.

29.     Other than with respect to those Monthly Fee Statements, no payments have been made to DGC, and DGC has received no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered during the Compensation Period and addressed by this Application.  There is no agreement or understanding between DGC and any other person, other than the members of DGC, for the sharing of compensation to be received for services rendered in these cases.

30.     In accordance with the Services Agreements, DGC's hourly rate for all professionals is $375. DGC's blended hourly rate compares favorably to some retained financial advisors in these cases.

31.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated herein by reference:

i.      **Exhibit A** declaration of Elisabeth O. da Silva regarding DGC's compliance with the Local Guidelines.

ii.     **Exhibit B** contains a summary of hours and fees and hours billed by each DGC accountant and paraprofessional in services rendered to the Oversight Board during the Compensation Period, including respective titles, hourly rates.

iii.    **Exhibit C** contains a summary of hours billed and fees sought by matter during the Compensation Period.

iv.     **Exhibit D** contains a schedule of bill rates excluding bankruptcy and bill rates in fee applications by each DGC timekeeper who collectively billed at least 10% of the hours to the bankruptcy case during the application period.

v.      **Exhibit E** contains a budget plan with a comparative analysis of budgeted and actual fees during the Compensation Period.

**Summary of Services and Results Achieved**

32.     All of the services rendered by DGC during the Compensation Period were necessary for the execution of the DGC's duties and responsibilities as set forth in the Oversight Board's Request for Proposal dated February 1, 2019 entitled "Accounting and Financial Advisory Services for Special Claims Committee." Moreover, at all times, DGC rendered its services in an effective and efficient manner without any unnecessary duplication of efforts. Therefore, the compensation requested through this Final Application is reasonable in all respects, particularly in light of the nature, extent, and complexity of the matters involved and the benefits conferred by DGC.

7

33.     As described in further detail below, at the direction of the Special Claims Committee, Brown Rudnick commenced several species of litigation arising from the Oversight Board's Special Investigation Committee report in 2018.  DGC served as financial advisor to Brown Rudnick as counsel for the Special Claims Committee in these matters. These litigation actions generally fall into three categories: (i) avoidance actions against vendors; (ii) avoidance actions against bondholders; and (iii) other third-party actions.  Through the litigation, at times in collaboration with official committees and other aligned parties, the Special Claims Committee sought to preserve and liquidate valuable litigation claims held by the Title III debtors for their benefit in the Title III proceedings.  DGC's efforts contributed to the resulting debt reductions under the Commonwealth's plan of adjustment valued at hundreds of millions of dollars, in addition to unliquidatd litigation claims and related proceeds transferred to the Avoidance Actions Trust for prosecution and subsequent distribution to creditors.

(i)     Background

34.     Shortly after the commencement of the Title III proceedings, the Special Investigation Committee of the Oversight Board engaged an independent investigator to carry out its mandate under Section 104 to conduct a comprehensive investigation and review of the factors contributing to Puerto Rico's fiscal crisis, debt issuances, related disclosure and selling practices, use of proceeds from debt offerings, and how its debt practices compare to the debt practices of states and large municipal jurisdictions.

35.     At the conclusion of the investigation, FOMB published the independent investigator's final report, which included an analysis of the historical and more recent macroeconomic and political factors contributing directly and indirectly to Puerto Rico's fiscal crisis, the Puerto Rico municipal bond issuance process, and the legislative efforts to restructure the debt, in addition to its investigative findings, policy recommendations, and identification of potential claims and matters for regulatory attention.

8

36.     Within a few days after the publication of the final report, FOMB created its Special

Claims Committee to pursue claims and causes of action resulting from the findings in the final

report.  Shortly thereafter, the Special Claims Committee retained the law firm Brown Rudnick LLP

as Claims Counsel. In 2019, the Special Claims Committee retained DGC as its financial advisor.

(ii)     Preliminary Activity and Bond Validity Challenge

37.     In December 2018, the Special Claims Committee and the Official Committee of

Unsecured Creditors of the Title III Debtors (other than PBA and COFINA) (the "Committee") filed

a joint claim objection seeking to invalidate certain general obligation bonds issued by the

Commonwealth in 2012 and 2014 because they were purportedly issued in violation of the

Commonwealth's constitutional debt limit.  The Court entered a procedures order for a process to

identify parties interested in participating in the claim objection litigation and to develop a meet and

confer process to identify the timing and sequencing of the claim objection litigation.

38.     Additionally, in advance of the expiration of the statute of limitations for the

Commonwealth, HTA, ERS, and PREPA, the Special Claims Committee jointly filed, with the

Committee, several hundred lawsuits seeking to recover billions of dollars in prepetition payments

the respective Title III debtors made to various vendors, suppliers, bondholders, and professionals,

as described below.

39.     In connection with these lawsuits, DGC investigated, researched and performed

detailed analyses and modeling related to the solvency of the Commonwealth in order to assist the

Special Claims Committee with pursuing the avoidance actions.

40.     DGC also investigated, researched and performed detailed analyses of payment

information in the four years prior to the petition date in order to bring over 300 avoidance actions

for fraudulent transfer and preference actions.

(iii)     Financial Professional Litigation

9

41.     At the direction of the Special Claims Committee, immediately upon its retention Brown Rudnick requested access to the documents reviewed, compiled and created by the independent investigator.  Pursuant to those documents and the investigator's report, Brown Rudnick prepared and filed a complaint against several underwriting investment banks, law firms, and other professionals that advised the Commonwealth of Puerto Rico and other Title III debtors in connection with the issuance of certain bonds subject to validity challenges.

42.     In this action, the Special Claims Committee asserted that the debtors can recover fees and other damages in connection with, among other things, wrongful conduct in financial and professional services transactions with the debtors.

43.     DGC investigated, researched and performed detailed analyses of debt issuances and guaranteed debt obligations.

44.     In July 2019, the action was stayed by a general order directing mediation to develop the Commonwealth's plan of adjustment.  Under the Plan and related settlements, the litigation was transferred to the Avoidance Actions Trust on the Effective Date to be prosecuted and liquidated for the benefit of unsecured creditors of the Commonwealth.

(iv)     Vendor Avoidance Actions

45.     After months of extensive review of the Title III debtors' prepetition payment histories, the Special Claims Committee found cause to file approximately 340 avoidance actions to avoid and recover payments by the various Title III debtors against hundreds of suppliers and vendors to Puerto Rico because the payments were made in violation of Puerto Rico law, the transfers are recoverable as preferences, and/or constructive fraudulent transfers under the Bankruptcy Code.

46.     Approximately 90 vendors accepted offers to resolve litigation claims without formal litigation, and the Special Claims Committee commenced approximately 250 adversary proceedings against the remaining vendors. Cognizant of the burden the vendor actions have caused the business community, the Special Claims Committee instituted an informal resolution process for the actions

10

and obtained court approval establishing litigation deadlines and settlement parameters to support the effort to resolve these actions on a consensual, out-of-court basis.

47.    DGC developed and executed the informal resolution process, a four-phase process to resolve the vendor avoidance actions and tolling agreements.

48.    DGC corresponded with via email and telephone with the tolled parties and adversary parties to the avoidance actions, including at least 11,400 emails with these parties to answer questions, exchange requests and information and work towards a resolution as part of the informal resolution process.

49.    As a result of these efforts, prior to the Plan Effective Date, the Special Claims Committee in partnership with the Committee resolved approximately 250 of the 340 filed or tolled claims without litigation, and held in escrow millions of dollars in proceeds of settled claims.  The Oversight Board during that time negotiated a settlement with the Committee whereby the remaining claims, together with the settlement proceeds and related assets, were transferred to the Avoidance Actions Trust on the Effective Date for liquidation and distribution to holders of unsecured claims.

(v)    Bond Validity Challenge and Avoidance Actions

50.    In addition to the challenge to 2014 GO bonds filed in December 2018, Brown Rudnick at the direction of the Special Claims Committee and as co-plaintiff with the Committee (resolving a trusteeship challenge by the Committee) in April and May of 2019 filed fifteen actions against approximately 1000 holders of Puerto Rico bonds that have been challenged in claim objections filed by the Special Claims Committee and other parties, specifically, bonds issued by the Commonwealth, Public Buildings Authority (PBA), and the Employees Retirement System of Puerto Rico (ERS).

51.    In filing the actions, the Special Claims Committee joined other parties in certain respects in challenging the validity of approximately $12 billion in Commonwealth, PBA and ERS

11

bonds, and in seeking to recover billions of dollars more in payments on allegedly null and void bonds.

52.     DGC investigated, researched and performed detailed analyses in order to assist the Special Claims Committee in bringing these actions related to the constitutional debt limit.

53.     In July 2019, the Court ordered the various bond validity challenges to mediation along with a number of issues concerning plan development.  Brown Rudnick participated in the mediation and assisted in formulation whereby the Commonwealth's indebtedness was effectively reduced by approximately $500 million (the exact amount depending on valuation of replacement bonds issued pursuant to the plan).  The settlement likewise resolved the various avoidance actions related to bond indebtedness.

(vi)     Plan

54.     Following the confirmation hearing and entry of the Court's confirmation order, the Special Claims Committee engaged with the Committee in preparing for the dismissal of certain litigation and transfer of certain claims to the Avoidance Actions Trust as required by the Plan.  On or around the Effective Date, DGC transferred substantially all of its documents relating to transferred litigation to the Trust.

**The Application Should be Granted**

55.     DGC respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement were necessary and beneficial to the Oversight Board. In light of the nature, extent and value of such services, DGC submits that the compensation requested herein is reasonable.

56.     The compensation for DGC's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed with expedition and in an efficient manner.

57.     In sum, the services rendered by DGC were necessary and beneficial to the Oversight

Board, were reasonable in light of the value of such services to the Oversight Board and were

performed with skill and expertise.  Accordingly, DGC submits that approval of the compensation

for professional services and reimbursement of expenses requested in this Final Application is

warranted.

### **Location of Services Provided**

58.     All but 55.45 hours of services during this Compensation Period were rendered and

incurred outside of Puerto Rico.  DGC incorporates its interim fee applications by reference with

respect to the rendering of services in Puerto Rico.

### **Statements Pursuant to Appendix B of the U.S. Trustee Guidelines**

59.     The following statements address information pursuant to Section C.5 of the U.S.

Trustee Guidelines:

a.     **Question**: Did you agree to any variations from, or alternatives to, your
standard or customary billing rates, fees or terms for services pertaining to this
engagement that were provided during the application period?  If so, please
explain.

**Answer**:  Yes, in accordance with the Services Agreements, DGC's the
standard rate for all Partners and associates will be at a rate of $375.

b.     **Question**: If the fees sought in this fee application as compared to the fees
budgeted for the time period covered by this fee application are higher by 10%
or more, did you discuss the reasons for the variation with the client?

**Answer**: Not-applicable/No.

c.     **Question**: Have any of the professionals included in this fee application varied
their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.     **Question**: Does the fee application include time or fees related to reviewing
or revising time records or preparing, reviewing, or revising invoices?  (This
is limited to work involved in preparing and editing billing records that would
not be compensable outside of bankruptcy and does not include reasonable
fees for preparing a fee application.).  If so, please quantify by hours and fees.

13

**Answer**: No.

e.   **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

**Answer**: No.

f.   **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance?  and (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: The Application does not include any additional rate increases.

## Notice

60.   Notice of this Application has been provided to: (a) the United States Trustee for the District of Puerto Rico, (b) the Oversight Board and its counsel, (c) counsel to AAFAF, (d) counsel to the Fee Examiner, (e) counsel to the Official Committee of Unsecured Creditors, (f) counsel to the Official Committee of Retirees, and (g) the Puerto Rico Department of Treasury.  DGC respectfully submits that no further notice of this Application should be required.

## No Prior Request

61.   No prior final application for the relief requested herein has been made to this or any other Court.

## Conclusion

WHEREFORE, DGC respectfully requests that the Court enter an order; (a) approving the final allowance of $7,328,471.05 for compensation for professional services rendered during the Compensation Period, (b) ratifying all prior payments made, and (c) granting such other and further relief as the Court deems just and proper.

_Elisabeth O. da Silva_

_____

Elisabeth O. da Silva
DICICCO, GULMAN AND COMPANY LLP
155 Federal Street
Boston, MA 02110
Tel: (781) 937-5300
edasilva@pkfod.com

15

## EXHIBIT A

**DECLARATION OF ELISABETH O. DASILVA
IN SUPPORT OF THE APPLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**CERTIFICATION OF ELISABETH O. DA SILVA IN SUPPORT OF
FINAL APPLICATION OF
DICICCO, GULMAN & COMPANY LLP, FINANCIAL ADVISOR TO THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS
SPECIAL CLAIMS COMMITTEE,
FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
OF EXPENSES FOR THE PERIOD
FROM FEBRUARY 26, 2019 THROUGH MARCH 15, 2022**

I, Elisabeth O. da Silva , hereby certify that:

1. I am a partner of the firm DiCicco, Gulman & Company LLP ("DGC") with offices located in Boston and Woburn, Massachusetts.

2. DGC was retained on February 26, 2019 as the financial advisor to Brown Rudnick LLP.

3. Brown Rudnick is claims counsel to the Financial Oversight and Management Board, acting through its Special Claims Committee (the "Oversight Board") as representative of the

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Debtors in the above-captioned title III cases pursuant to section 315(b) of the *Puerto Rico Oversight,*

*Management, and Economic Stability Act* ("PROMESA").[2]  I have personal knowledge of all of the

facts set forth in this certification except as expressly stated herein.

4.      In accordance with (a) Local Bankruptcy Rule 2016-1 (the "Local Guidelines"), (b)

Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation*

*and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective as of November 1, 2013 (the

"U.S. Trustee Guidelines"), and (c) the *Second Amended Order Setting Procedures for Interim*

*Compensation and Reimbursement of Expenses of Professionals* entered June 6, 2018 (the "Interim

Compensation Order"), this certification is made with respect to the Final Application of DGC, as

the financial advisor to Brown Rudnick, claims counsel to the Oversight Board, dated July 15, 2022

(the "Application"),[3]  for approving on a final basis all Previously Allowed Fees and Expenses

awarded by this Court on an interim basis pursuant to the Interim Compensation Orders for the period

of February 26, 2019 through and including March 15, 2022 (the "Compensation Period").

5.      With respect to section (a)(4) of the Local Guidelines, I certify that:

a.      I have read the Application;

b.      to the best of my knowledge, information, and belief, formed after reasonable
inquiry, the compensation and reimbursement of expenses sought conforms
with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the
U.S. Trustee Guidelines and these Local Guidelines;

c.      except to the extent that fees or disbursements are prohibited by the Local
Guidelines, the compensation and reimbursement of expenses requested are
billed in accordance with the Services Agreements.  DGC's hourly rate for all
professionals is $375; and

d.      in providing a reimbursable service, DGC does not make a profit on that
service, whether the service is performed by DGC in- house or through a third
party.

---

[2]     PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   Capitalized terms used but not defined herein have the meanings given to them in the Application.

Dated: July 15, 2022
Boston, Massachusetts

Respectfully submitted,

*Elisabeth O. da Silva*

_____
Elisabeth O. da Silva

**DICICCO GULMAN & COMPANY LLP**
155 Federal Street
Boston, Massachusetts  02110
Telephone: (781) 937-5300
edasilva@pkfod.com

**EXHIBIT B - SUMMARY OF TIMEKEEPERS**

| Name | Title | Fees[1] | Hours | Hourly Rate Billed | | Number of rate increases since case inception |
|------|-------|---------|-------|--------------------|--|------------------------------------|
| | | | | In this applications | In first interim application | |
| Almquist | N/A Associate | $ 14,400 | 38.4 | $ 375 | $ 375 | 0 |
| Annino | N/A Manager | $ 6,300 | 16.8 | $ 375 | $ 375 | 0 |
| Banda | N/A Manager | $ 23,100 | 61.6 | $ 375 | $ 375 | 0 |
| Belasque | N/A, manager | $ 118,500 | 316.0 | $ 375 | $ 375 | 0 |
| Bodell | N/A, Senior Advisor | $ 113,700 | 303.2 | $ 375 | $ 375 | 0 |
| Burke | N/A, Partner, MBA | $ 35,625 | 95.0 | $ 375 | $ 375 | 0 |
| Buss | N/A, Associate | $ 1,388 | 3.7 | $ 375 | $ 375 | 0 |
| Catalfamo | N/A, Director | $ 113 | 0.3 | $ 375 | $ 375 | 0 |
| Cieplik | N/A, Associate | $ 57,938 | 154.5 | $ 375 | $ 375 | 0 |
| da Silva | N/A, Partner | $ 849,525 | 2,267.4 | $ 375 | $ 375 | 0 |
| DaCampo | N/A, Associate | $ 43,050 | 114.8 | $ 375 | $ 375 | 0 |
| Davis | N/A, Associate | $ 129,638 | 345.7 | $ 375 | $ 375 | 0 |
| DeVito | N/A Associate | $ 6,525 | 17.4 | $ 375 | $ 375 | 0 |
| Doherty | N/A, associate | $ 33,713 | 89.9 | $ 375 | $ 375 | 0 |
| Donahoe | N/A, associate | $ 1,218,375 | 3,249.0 | $ 375 | $ 375 | 0 |
| Dorsey | N/A Associate | $ 4,500 | 12.0 | $ 375 | $ 375 | 0 |
| Draper | N/A, associate | $ 129,675 | 345.8 | $ 375 | $ 375 | 0 |
| Dziewiszek | N/A Associate | $ 6,825 | 18.2 | $ 375 | $ 375 | 0 |
| Feldman | N/A, Consulting Manager | $ 228,900 | 610.4 | $ 375 | $ 375 | 0 |
| Forecast | N/A, associate | $ 79,350 | 211.6 | $ 375 | $ 375 | 0 |
| Freund | N/A Principal | $ 10,988 | 29.3 | $ 375 | $ 375 | 0 |
| Garrity | N/A, Associate | $ 59,700 | 159.2 | $ 375 | $ 375 | 0 |
| Graham | N/A, associate | $ 191,063 | 509.5 | $ 375 | $ 375 | 0 |
| Hagman | N/A Partner | $ 9,488 | 25.3 | $ 375 | $ 375 | 0 |
| Holleman | N/A, Manager | $ 188 | 0.5 | $ 375 | $ 375 | 0 |
| Hubicsak | N/A Associate | $ 675 | 1.8 | $ 375 | $ 375 | 0 |
| Kessler | N/A Associate | $ 113 | 0.3 | $ 375 | $ 375 | 0 |
| Klerowski | N/A, Principal, CPA | $ 14,663 | 39.1 | $ 375 | $ 375 | 0 |
| Koutoulas | N/A, associate | $ 141,225 | 376.6 | $ 375 | $ 375 | 0 |
| Lengle | N/A, Manager | $ 940,163 | 2,507.1 | $ 375 | $ 375 | 0 |
| LHeureux | N/A, associate | $ 40,988 | 109.3 | $ 375 | $ 375 | 0 |
| Lord | N/A Associate | $ 4,575 | 12.2 | $ 375 | $ 375 | 0 |
| Malloy | N/A, Manager | $ 1,238 | 3.3 | $ 375 | $ 375 | 0 |
| Marden | N/A, manager | $ 11,700 | 31.2 | $ 375 | $ 375 | 0 |
| Meier | N/A Principal | $ 6,975 | 18.6 | $ 375 | $ 375 | 0 |
| Morley | N/A Associate | $ 10,163 | 27.1 | $ 375 | $ 375 | 0 |
| Neier | N/A, Senior Advisor, Restructuring | $ 2,588 | 6.9 | $ 375 | $ 375 | 0 |

| Name | Title | Fees[1] | Hours | Hourly Rate Billed | | Number of rate increases since case inception |
|---|---|---|---|---|---|---|
| | | | | In this applications | In first interim application | |
| Norris | N/A, Associate | $ 3,975 | 10.6 | $ 375 | $ 375 | 0 |
| O'Beirne | N/A Principal | $ 87,150 | 232.4 | $ 375 | $ 375 | 0 |
| Odilon | N/A, Associate | $ 3,563 | 9.5 | $ 375 | $ 375 | 0 |
| Oh | N/A, associate | $ 177,188 | 472.5 | $ 375 | $ 375 | 0 |
| Pappas | N/A Associate | $ 8,850 | 23.6 | $ 375 | $ 375 | 0 |
| Petitt | N/A Manager | $ 30,150 | 80.4 | $ 375 | $ 375 | 0 |
| Powers | N/A, Associate | $ 3,488 | 9.3 | $ 375 | $ 375 | 0 |
| Reid | N/A, Associate | $ 417,863 | 1,114.3 | $ 375 | $ 375 | 0 |
| Reinhard | N/A, principal | $ 558,113 | 1,488.3 | $ 375 | $ 375 | 0 |
| Richards | N/A Associate | $ 4,050 | 10.8 | $ 375 | $ 375 | 0 |
| Romero | N/A Associate | $ 9,525 | 25.4 | $ 375 | $ 375 | 0 |
| Sartori | N/A, Manager | $ 112,688 | 300.5 | $ 375 | $ 375 | 0 |
| Saunders | N/A, associate | $ 385,088 | 1,026.9 | $ 375 | $ 375 | 0 |
| Shrestha | N/A Manager | $ 675 | 1.8 | $ 375 | $ 375 | 0 |
| Sizelove | N/A, associate | $ 87,000 | 232.0 | $ 375 | $ 375 | 0 |
| Surette | N/A Manager | $ 8,513 | 22.7 | $ 375 | $ 375 | 0 |
| Talbott | N/A Associate | $ 22,838 | 60.9 | $ 375 | $ 375 | 0 |
| Temp | N/A Associate | $ 14,888 | 39.7 | $ 375 | $ 375 | 0 |
| Train | N/A, Partner | $ 64,875 | 173.0 | $ 375 | $ 375 | 0 |
| Ward | N/A Associate | $ 1,350 | 3.6 | $ 375 | $ 375 | 0 |
| Wexler | N/A, Senior Advisor | $ 828,731 | 2,210.0 | $ 375 | $ 375 | 0 |
| Wood | N/A Manager | $ 262,688 | 700.5 | $ 375 | $ 375 | 0 |
| Woods | N/A Manager | $ 10,725 | 28.6 | $ 375 | $ 375 | 0 |
| Yu | N/A, Principal | $ 33,825 | 90.2 | $ 375 | $ 375 | 0 |
| Zaffiro | N/A, CPA | $ 20,888 | 55.7 | $ 375 | $ 375 | 0 |
| Zhang | N/A Associate | $ 9,000 | 24.0 | $ 375 | $ 375 | 0 |
| Grand Total | | $ 7,715,306 | 20,576.2 | | | |

[1] Fees reflect what was requested.

EXHIBIT B: FINAL FEE APPLICATION OF DICICCO, GULMAN & COMPANY LLP, financial advisor

to THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, FOR SERVICES RENDERED

AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 26, 2019, through MARCH 15, 2022

VENDOR: COMMONWEALTH

**Exhibit C Summary of Compensation Requested by Project Category**

| Project Category | Hours Budgeted | Fees Budgeted | Hours Billed | Fees Sought[1] |
|---|---|---|---|---|
| Avoidance Actions | | | 23.4 | 8,775.00 |
| Avoidance Actions: Commonwealth | 2,780.6 | 1,042,725.00 | 7,119.4 | 2,669,775.00 |
| Avoidance Actions: ERS | 1,152.7 | 432,262.50 | 17.7 | 6,637.50 |
| Avoidance Actions: HTA | 1,764.1 | 661,537.50 | 67.1 | 25,162.50 |
| Avoidance Actions: PREPA | 1,600.0 | 600,000.00 | 76.3 | 28,612.50 |
| Case Administration | 204.5 | 76,687.50 | 260.2 | 96,825.00 |
| Fee Application | 119.7 | 44,887.50 | 77.7 | 29,137.50 |
| General Investigation | 630.5 | 236,437.50 | 98.3 | 36,862.50 |
| General Investigative | | | 11.0 | 4,125.00 |
| Go Bonds / Debt Limit | 1,953.2 | 732,450.00 | 676.2 | 253,575.00 |
| Meeting and Communication with counsel | 460.3 | 172,612.50 | 180.1 | 67,537.50 |
| Solvency Analysis | 3,809.6 | 1,428,600.00 | 2,640.5 | 990,187.50 |
| Vendor Claim Protocol | 1,826.8 | 685,050.00 | 6.3 | 2,362.50 |
| Vendor Claim Resolution: Dismissal Packages | 3,970.0 | 1,488,750.00 | 1,308.5 | 490,668.75 |
| Vendor Claim Resolution: Meetings with Vendors | 545.0 | 204,375.00 | 39.2 | 14,681.25 |
| Vendor Claim Resolution: Tracker and Mailing List Updates | 1,269.0 | 475,875.00 | 156.3 | 58,612.50 |
| Vendor Claim Resolution: Vendor Outreach Program | 2,655.0 | 995,625.00 | 102.4 | 38,400.00 |
| Vendor Contract Analysis | | | 2,696.3 | 1,011,112.50 |
| Vendor Preference Analysis | 232.0 | 87,000.00 | 1,245.2 | 466,950.00 |
| Vendor Preference Settlement | 1,485.0 | 556,875.00 | 515.5 | 193,293.75 |
| Vendor resolutions | | | 3,258.7 | 1,222,012.50 |
| **Total** | **26,458.0** | **9,921,750.00** | **20,576.2** | **7,715,306.25** |

-

[1] Fees sought reflect what was requested.

EXHIBIT C: FINAL FEE APPLICATION OF DICICCO, GULMAN & COMPANY LLP, financial advisor

to THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, FOR SERVICES RENDERED

AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 26, 2019, through MARCH 15, 2022

VENDOR: COMMONWEALTH

### EXHIBIT D - CUSTOMARY AND COMPARABLE COMPENSATIONS DISCLOSURES WITH FEE APPLICATIONS[1]

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | BILLED OR COLLECTED for preceding year | BILLED in this fee application[2] |
| Partner | $ 482 | $ 358 |
| Senior Advisor | N/A[3] | $ 375 |
| Manager | N/A[3] | $ 375 |
| Associate | N/A[4] | $ 370 |
| Timekeepers Aggregated | $ 482 | $ 370 |

[1] Includes those timekeepers who collectively billed at least 10% of the hours to the bankruptcy case during the application period.

[2] The Blended Hourly Rates include write-downs that have been factored into the calculations.

[3] Timekeeper only worked on this matter.

[4] This is the only matter the timekeeper worked on in this service line.

EXHIBIT D: FINAL FEE APPLICATION OF DICICCO, GULMAN & COMPANY LLP, financial advisor

to THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, FOR SERVICES RENDERED

AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 26, 2019, through MARCH 15, 2022

VENDOR: COMMONWEALTH

**EXHIBIT E - Budget**

| Project Category | Estimated hours | Estimated fees |
|---|---:|---:|
| Avoidance Actions: Commonwealth | 2,781 | 1,042,725 |
|     Data requests | 67 | 25,125 |
|     Dismissal Packages | 3,970 | 1,488,750 |
|     IER requests | 510 | 191,250 |
|     Meetings with Vendors | 545 | 204,375 |
|     Recommendation Packages | 165 | 61,875 |
|     Settlement discussions/mediation prep | 1,485 | 556,875 |
|     Tracker and Mailing List updates | 1,269 | 475,875 |
|     Vendor Outreach program | 2,145 | 804,375 |
| Avoidance Actions: ERS | 1,153 | 432,263 |
| Avoidance Actions: HTA | 1,764 | 661,538 |
| Avoidance Actions: PREPA | 1,600 | 600,000 |
| Case Administration | 205 | 76,688 |
| Fee Application | 120 | 44,888 |
| General Investigation | 631 | 236,438 |
| Go Bonds / Debt Limit | 1,953 | 732,450 |
| Meetings and Communication with counsel | 460 | 172,613 |
| Solvency | 3,810 | 1,428,600 |
| Vendor Claim Resolution: Commonwealth | 1,827 | 685,050 |
| **Grand Total** | **26,458** | **9,921,750** |

EXHIBIT E: FINAL FEE APPLICATION OF DICICCO, GULMAN & COMPANY LLP, financial advisor

to THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, FOR SERVICES RENDERED

AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 26, 2019, through MARCH 15, 2022

VENDOR: COMMONWEALTH