## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 20670** |
| BELTRÁN-CINTRÓN, *ET AL.*; ABRAHAM-GIMÉNEZ, *ET AL.*; ACEVEDO-AROCHO, *ET AL.*; CRUZ SANTOS, *ET AL.*; LÓPEZ ROSARIO, *ET AL.*; AND ACEVEDO CAMACHO, *ET AL.*,<br><br>Movants,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Respondent. | |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Last Four Digits of Federal Tax ID: 3801) (Last Four Digits of Federal Tax ID: 3801) (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 2

BACKGROUND ................................................................................................... 5

    A.    The Commencement of the Title III Case.......................................... 5

    B.    Establishment of the ADR and ACR Procedures .................................. 5

    C.    Omnibus Lift Stay Stipulation Approval Orders .................................. 5

    D.    The Commonwealth Plan of Adjustment............................................. 7

    E.    The Motion and Current Status of the Litigations ................................. 8

OBJECTION.......................................................................................................... 9

    A.    Movants' Request for Stay Relief is Moot with Respect to the Acevedo-Camacho Action, Cruz-Santos Action, and Lopez-Rosario Action ..................... 9

    B.    Movants Fail to Show Cause for Relief from the Discharge Injunction under the Sonnax Factors with Respect to the Outstanding Litigations ............. 10

    C.    Movants' Request for a Ruling or Comfort Order Should Be Denied as Procedurally Improper, or Otherwise Without Merit ........................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abraham-Giménez, et al. v. Dep't of Transp. & Public Works,*
  CASP Case No. 2021-01-0346 ................................................................1, 3, 6, 8

*Acevedo-Arocho, et al. v. Dep't of Treasury, et. al.,*
  Puerto Rico Court of First Instance, Case No. 2005-5022 ............................................. passim

*Acevedo Camacho, et al. v. Dep't of Family Servs., et al.,*
  CASP Case No. 2016-05-1340 ................................................................1, 2, 6, 9

*Beltrán-Cintrón, et al. v. Dep't of Family, et al.,*
  CASP Case No. 2021-01-0345 ................................................................1, 3, 7, 8

*Brigade Leveraged Cap. Structures Fund Ltd. v. Garcia-Padilla,*
  217 F. Supp. 3d 508 (D.P.R. 2016) ................................................................11, 14

*Cruz Santos, et al. v. Dep't of Transp. & Public Works, et al.*
  CASP Case No. 2002-06-1493 ................................................................1, 2, 7, 9

*Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
  899 F.3d 13 (1st Cir. 2018) ................................................................11

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
  2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ........................................................15

*In re Breitburn Energy Partners LP,*
  571 B.R. 59 (Bankr. S.D.N.Y. 2017) ................................................................11

*In re Breitburn Energy Partners LP,*
  No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) ....................................13

*In re City of Stockton,*
  484 B.R. 372 (Bankr. E.D. Cal. 2012) ................................................................16

*In re Cummings,*
  221 B.R. 814 (Bankr. N.D. Ala. 1998) ................................................................12

*In re Fin. Oversight & Mgt. Bd. for Puerto Rico,*
  939 F.3d 356, 2019 WL 4667824 (1st Cir. 2019) ................................................................13

*In re Fucilo,*
  2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002) ........................................................2, 10

*In re Motors Liquidation Co.*,
No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. 2010)......................................................16

*In re Murrin*,
477 B.R. 99 (D. Minn. 2012) ...........................................................................................12

*In re Plumberex Specialty Prod., Inc.*,
311 B.R. 551 (Bankr. C.D. Cal. 2004).............................................................................16

*In re Residential Cap., LLC*,
No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)...............................12, 15

*In re SquareTwo Fin. Servs. Corp.*,
2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017)......................................................2, 10

*In re Taub*,
413 B.R. 55 (Bankr. E.D.N.Y. 2009).................................................................................12

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) .........................................10, 11

*In re WorldCom, Inc.*,
2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) .........................................................2, 10

*López Rosario, et al. v. ELA*,
CASP Case No. 2001-10-372 ..........................................................................................1, 2, 7, 9

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ...................................................11

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990)...........................................................................................10, 11

*United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs.*,
484 U.S. 365 (1988)..........................................................................................................10

**STATUTES & RULES**

48 U.S.C. §§ 2101–2241 ...........................................................................................................1

11 U.S.C. § 362 .........................................................................................................................2

11 U.S.C. § 362(c)(2)(C) ...........................................................................................................2

Local Rule 4001-1.................................................................................................................4, 18

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO
TO URGENT JOINT MOTION REQUESTING AN ORDER
FOR APPROVAL OF MODIFICATION TO THE AUTOMATIC STAY OR IN THE
ALTERNATIVE, REQUESTING A RULING OR ENTRY OF COMFORT ORDER
AS TO A LIMITED CONTROVERSY REGARDING THE APPLICABILITY
TO MOVANT'S CLAIMS OF AN ORDER FOR MANDATORY MEDIATION**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this objection (the "Objection") to the *Urgent Joint Motion Requesting an Order for Approval of Modification to the Automatic Stay or in the Alternative, Requesting a Ruling or Entry of Comfort Order as to a Limited Controversy Regarding the Applicability of Movant's Claims of an Order for Mandatory Mediation* [ECF No. 20670] (the "Motion") filed by plaintiffs in the six litigations captioned as follows (collectively, the "Litigations"):

(i)   *Abraham-Giménez, et al. v. Department of Transportation and Public Works* [CASP Case No. 2021-01-0346] (the "Abraham-Giménez Group");

(ii)   *Acevedo Camacho, et al. v. Department of Family Services, et al.* [CASP Case No. 2016-05-1340] (the "Acevedo-Camacho Group");

(iii)   *Acevedo-Arocho, et al. v. Deptartment of Treasury, et. al.* [Puerto Rico Court of First Instance, Case No. 2005-5022] (the "Acevedo-Arocho Group");

(iv)   *Cruz Santos, et al. v. Department of Transportation and Public Works, et al.* [CASP Case No. 2002-06-1493  (the "Cruz-Santos Group");

(v)   *Beltrán-Cintrón, et al. v. Department of Family, et al.* [CASP Case No. 2021-01-0345] (the "Beltrán-Cintrón Group"); and

(vi)   *López Rosario, et al. v. ELA* (the Commonwealth) [CASP Case No. 2001-10-372] (the "López-Rosario Group," and collectively, "Movants").

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101–2241.

In support of the Objection, the Debtor respectfully states as follows:[2]

## **Preliminary Statement**

1.     Pursuant to the Motion, Movants seek an order (i) modifying the automatic stay[3] pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") to allow the Litigations to proceed to final judgment, or (ii) in the alternative, determining that the Oversight Board "is acting in contravention of [PROMESA] by arbitrarily excluding Movants['] claims from the ACR or ADR procedures." Motion at 12.  With respect to Movants' request for stay relief, such request is moot with respect to the following actions because relief has already been granted pursuant to the applicable Omnibus Lift Stay Stipulation Approval Orders (as defined below):[4]

(i) *Acevedo Camacho, et al. v. Department of Family Services, et al.* [CASP Case No. 2016-05-1340] (the "Acevedo-Camacho Action");

(ii) *Cruz Santos, et al. v. Department of Transportation and Public Works, et al.* [CASP Case No. 2002-06-1493]  (the "Cruz-Santos Action"); and

(iii) *López Rosario, et al. v. ELA* (the Commonwealth) [CASP Case No. 2001-10-372] (the "López-Rosario Action").

2.     With respect to the following actions, the automatic stay was modified pursuant to the Omnibus Lift Stay Stipulation Approval Orders to allow the actions to proceed to final judgment in the Puerto Rico Court of First Instance (including any appeals), but Movants appear

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3]   Pursuant to section 362(c)(2)(C) of the Bankruptcy Code, Section 92.25 of the Commonwealth Plan, and decretal paragraph 66 of the Confirmation Order, the automatic stay was replaced by the discharge injunction upon the occurrence of the effective date of the Commonwealth Plan.

To the extent the Court interprets the Motion to seek relief from the discharge injunction, some courts have considered such relief under the *Sonnax* factors discussed below. *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *4 (Bankr. S.D.N.Y. Sept. 11, 2017); *In re Fucilo*, 2002 WL 1008935, at *8 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re WorldCom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007).

[4]   Based on discussions with Movants' counsel, the Commonwealth understands that Movants are not seeking stay relief beyond the relief already granted in the Omnibus Lift Stay Stipulation Approval Orders with respect to such actions.

to seek further stay relief to allow the actions to proceed to final judgment before the Commission

for Appeals of Public Service ("CASP"):

> (i) *Abraham-Giménez, et al. v. Department of Transportation and Public Works* [CASP Case No. 2021-01-0346] (the "Abraham-Giménez Action"); and

> (ii) *Beltrán-Cintrón, et al. v. Department of Family, et al.* [CASP Case No. 2021-01-0345] (the "Beltrán-Cintrón Action").

3.    With respect to the case captioned *Acevedo-Arocho, et al. v. Deptartment of Treasury, et. al.* [Puerto Rico Court of First Instance, Case No. 2005-5022] (the "Acevedo-Arocho Action," and together with the Abraham-Giménez Action and the Beltrán-Cintrón Action, the "Outstanding Litigations"), the automatic stay was modified pursuant to the applicable Omnibus Lift Stay Stipulation Approval Orders to allow the action to proceed to final judgment on a summary judgment motion (including any appeals).  The Acevedo-Arocho Action is currently pending before the Puerto Rico Supreme Court with respect to an appeal of an order granting partial judgment and dismissing the claims of the claimants , as further summarized below.  Based upon discussions with Movants' counsel, the Commonwealth understands that Movants are seeking stay relief to allow a cause of action for unpaid wages asserted by certain auditors and tax specialists (the "Cause of Action"), which has been stayed in connection with the pending determination by the Puerto Rico Supreme Court regarding the matter on appeal, to proceed to final judgment, but not execution, before the Puerto Rico Court of First Instance.

4.    Accordingly, the Commonwealth understands that Movants are requesting the following relief from the discharge injunction: (i) modification of the discharge injunction to allow the Abraham-Giménez Action and the Beltrán-Cintrón Action to proceed to final judgment, but not execution, before CASP, and (ii) modification of the discharge injunction to allow the Acevedo-Arocho Action to proceed to final judgment, but not execution, solely with respect to the Cause of Action pending before the Puerto Rico Court of First Instance.  Movants' request should

3

be denied because, as further explained below, the pending issue before the Puerto Rico Supreme Court in the Acevedo-Arocho Action relating to the Commonwealth's laches and statute of limitations defenses could be dispositive in resolving the Outstanding Litigations, and allowing such actions to proceed would, among other things, waste Commonwealth resources by requiring it to litigate issues that may be resolved when the Puerto Rico Supreme Court issues its decision in the Acevedo-Arocho Action and short circuit the claims resolution process and time period for the Commonwealth to assess and object to claims pursuant to the confirmed Commonwealth Plan (as defined below).

5.    With respect to Movants' request for a ruling or comfort order determining that the Oversight Board "is acting in contravention of [PROMESA] by arbitrarily excluding Movants['] claims from the ACR or ADR procedures" and an order "to refer Movant's group wage claims to the ADR mandatory mediation" (Motion at 12), such request is procedurally improper pursuant to Rule 4001-1 of the Puerto Rico Local Bankrupcy Rules, which prohibits combining a request for any other type of relief with a motion for relief from stay, unless so authorized by the Court. Nonetheless, on the merits, the ADR Procedures and ACR Procedures (each as defined below) established in these Title III Cases do not create a right for Movants' claims to be addressed under such procedures.  Rather, such procedures are intended to alleviate the administrative burden on the Court and costs for the Debtors to reconcile the unprecedented number of claims asserted in these Title III cases by giving the Court and the Debtors discretion to transfer claims into the ADR and ACR processes.  The Debtors' claims reconciliation process remains ongoing, and the Debtors continue to transfer claims into the ACR Procedures and the ADR Procedures when the Debtors have determined that such procedures are appropriate for any particular claim or set of claims and are prepared to address such claims.  Accordingly, the Motion should be denied.

## Background

### A.     The Commencement of the Title III Case

6.     On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico, commencing a case under Title III thereof.

7.     Movants filed various proofs of claim relating to the Litigations.  *See* Proof of Claim Nos. 130077, 179141, 103035, 51013, 32044, 103072, 93199, 179140, 29642, 130091, 15708, 106588 (collectively, "Movants' Proofs of Claim").

### B.     Establishment of the ADR and ACR Procedures

8.     On March 12, 2020, the Court entered the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order"). The ACR Order authorized the Commonwealth, among other debtors in these Title III cases, to resolve certain Pension/Retiree Claims, Tax Refund Claims, Public Employee Claims, and Grievance Claims (each as defined in the ACR Order) using the Debtors' existing administrative reconciliation processes in accordance with the procedures contained in Exhibit A to the ACR Order (the "ACR Procedures").

9.     On April 1, 2020, this Court entered the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"). The ADR Order authorized the Commonwealth, among other debtors in these Title III cases, to resolve general unsecured claims using the procedures approved by the court in the ADR Order ("ADR Procedures").

### C.     Omnibus Lift Stay Stipulation Approval Orders

10.     Pursuant to (i) the *Sixth Omnibus Order Granting Relief from the Automatic Stay* [ECF No. 4201], dated November 9, 2018 (the "6th Omnibus Order"), (ii) the *Thirteenth Omnibus*

*Order Granting Relief from the Automatic Stay* [ECF No. 9595], dated December 16, 2019 (the

"13th Omnibus Order"), and (iii) the *Seventeenth Omnibus Order Granting Relief from the*

*Automatic Stay* [ECF No. 14010], dated August 11, 2020 (the "17th Omnibus Order," and together

with the 6th Omnibus Order and the 13th Omnibus Order, the "Omnibus Lift Stay Stipulation

Approval Orders"), the Court approved stipulations to modify the automatic stay with respect to

the Litigations as follows:

| Litigation or Related Litigation | Stay Relief |
|---|---|
| Abraham-Giménez Action | Allowed a related action before the Puerto Rico Court of First Instance to proceed to final judgment, including any appeals.  (6th Omnibus Order).<br><br>(The Abraham-Gimenez Action before CASP remains stayed.) |
| Acevedo-Arocho Action | Allowed Acevedo-Arocho Action to proceed to final judgment with respect to a pending motion for summary judgment, including any appeals. (6th Omnibus Order). |
| Acevedo-Camacho Action | Allowed the  appeal of the Acevedo-Camacho Action to proceed to final judgment, including any appeals. (6th Omnibus Order).<br><br>Allowed Acevedo-Camacho Action to proceed to final judgment, including any appeals.  (13th Omnibus Order). |
| Beltrán-Cintrón Action | Allowed a related action before the Puerto Rico Court of First Instance to proceed to final judgment, including any appeals. (6th Omnibus Order).<br><br>(The Beltran-Cintron Action before CASP remains stayed.) |

6

| Litigation or Related Litigation | Stay Relief |
|---|---|
| Cruz-Santos Action | Allowed Cruz-Santos Action to proceed to final judgment, including any appeals.  (6th Omnibus Order). |
| Lopez-Rosario Action | Allowed Lopez-Rosario Action to proceed to final judgment, including any appeals.   (17th Omnibus Order). |

**D.**     ***The Commonwealth Plan of Adjustment***

11.     On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order"), confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "Commonwealth Plan").  Among other things, the Commonwealth Plan and the Confirmation Order provide for an injunction on the prosecution of claims discharged pursuant to the Commonwealth Plan from and after the Effective Date of the Commonwealth Plan.  *Commonwealth Plan* § 92.3;  *Confirmation Order* ¶ 59.

12.     On March 15, 2022, the Plan became effective (the "Effective Date").  Pursuant to the Confirmation Order and the Commonwealth Plan, unless otherwise extended, the Debtor has until September 11, 2022 to assess and object to the allowance of claims.[5]

---

[5]    Commonwealth Plan § 82.1(a); Confirmation Order ¶ 42.

### E.    The Motion and Current Status of the Litigations

13.    On May 5, 2022, Movants filed the Motion, seeking (i) relief from the automatic stay to allow the Litigations to proceed to a final resolution, including for the payment of any judgment, and (ii) in the alternative, a determination that the Oversight Board "is acting in contravention of [PROMESA] by arbitrarily excluding Movants['] claims from the ACR or ADR procedures." Motion at 12.

14.    The Litigations were filed by various groups of current and former employees of various Commonwealth departments, seeking, among other things, back pay in connection with the Commonwealth's alleged violation of various federal and Puerto Rico minimum wage laws in the implementation of such departments' compensation structures prior to the commencement of the Commonwealth's Title III case.  With the exception of the Acevedo-Arocho Action, the Litigations were filed before CASP.[6]  The Acevedo-Arocho Action was filed in the Puerto Rico Court of First Instance.

15.    All of the Litigations, other than the Acevedo-Arocho Action, remain in the initial stages and have not reached discovery.

16.    With respect to the Acevedo-Arocho Action, discovery has been completed and, on January 9, 2017, the Puerto Rico Court of First Instance entered a partial judgment dismissing most of the Acevedo-Arocho Groups' claims with prejudice, except for certain claims filed by a group of auditors and tax specialists.

---

[6]    There are actions related to the Abraham-Gimenez Action and the Beltran-Cintron Action that are before the Puerto Rico Court of First Instance, which were the subject of the Omnibus Lift Stay Stipulation Approval Order, and the Commonwealth understands are not the subject of Movants' request for relief in the Motion.

17.     On October 15, 2019, the Acevedo-Arocho Group appealed the dismissal of their claims pursuant to the partial judgment, which the Puerto Rico Court of Appeals affirmed on January 30, 2020.

18.     On July 15, 2020, the Acevedo-Arocho Group filed an appeal to the Puerto Rico Supreme Court, which was granted on October 30, 2020.  Following the Puerto Rico Supreme Court's decision to hear the appeal, the proceedings before the Court of First Instance with respect to the Cause of Action filed by the group of auditors and tax specialists were stayed pending resolution of the appeal.

19.     Following completion of briefing, on April 26, 2021, the Puerto Rico Supreme Court issued an order stating that the case was submitted for decision, which remains pending to this date.  The issues on appeal to the Puerto Rico Supreme Court relate to, among other things, whether the claims asserted by the Acevedo-Arocho Group are barred by laches or by a three-year statute of limitations and whether the lower court erred in denying the motion for summary judgment relating to the Cause of Action.

## **Objection**

### *A.     Movants' Request for Stay Relief is Moot with Respect to the Acevedo-Camacho Action, Cruz-Santos Action, and Lopez-Rosario Action*

20.     Movants seek stay relief to allow the Litigations to proceed to judgment, but not execution.  Motion at 12.  Pursuant to the Omnibus Lift Stay Stipulation Approval Orders, the stay was already modified to allow the Acevedo-Camacho Action, the Cruz-Santos Action, and the Lopez-Rosario Action to proceed to judgment, but not execution, so that the claims may be liquidated.   Accordingly, the Motion should be denied as to the foregoing actions as moot.

**B.**  ***Movants Fail to Show Cause for Relief from the Discharge Injunction under
the Sonnax Factors with Respect to the Outstanding Litigations***

21.     To the extent the Court interprets the Motion as request for relief from the discharge

injunction, courts have considered such relief under the same "cause" standard as relief from the

automatic stay.  *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *4 (Bankr. S.D.N.Y.

Sept. 11, 2017); *In re Fucilo*, 2002 WL 1008935, at *8 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re

WorldCom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007).  Movants have not

established that cause exists to lift the discharge injunction.[7]

22.     "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90,

95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  To determine whether "cause" exists to

grant stay relief, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc.

v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for
defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

---

[7]     Movants also assert, without support, that they are entitled to adequate protection because "the Debtor have [sic]
the responsibility to administer [the ACR and ADR procedures], in accordance with the minimum good faith
standard."  Motion ¶¶ 17-19.  Movants do not, and cannot, explain how they have an interest in property entitled
to adequate protection.  *See, e.g., United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs.*, 484 U.S. 365, 371
(1988) ("The term 'interest in property' certainly summons up such concepts as 'fee ownership,' 'life estate,' 'co-
ownership,' and 'security interest' more readily than it does the notion of 'right to immediate foreclosure.' . . .
[T]he 'interest in property' protected by § 362(d)(1) does not include a secured party's right to immediate
foreclosure.").

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

23.     Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

24.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

25. The Sonnax factors clearly weigh against lifting the discharge injunction.  Denying
the Motion would further the goal of the discharge injunction, which is to prevent creditors from
disrupting the Debtor's focus on its restructuring efforts (here, the period pursuant to the
Commonwealth Plan for the Debtor to assess and object to claims on or before September 11,
2022, unless otherwise extended).  *See In re Residential Capital, LLC*, No. 12-12020, 2012 WL
3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he
new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by
forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the
Debtors' chapter 11 cases.").  The *Sonnax* factors point squarely toward maintaining the discharge
injunction and against the relief Movants seek:

26. **_Sonnax_ Factor 1:**  The first *Sonnax* factor—whether relief would result in
complete or partial resolution of the issues—weighs against lifting the discharge injunction. The
first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax*
factor would always favor lifting the stay because every lawsuit eventually resolves the issues in
that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the
separate litigation would expeditiously resolve issues relevant to the bankruptcy case.  *See, e.g.,
In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy
litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist
the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this
factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary
bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*,
221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

27.    Here, Movants do not identify any bankruptcy issue related to the Commonwealth's Title III case that would be resolved by allowing Movants to proceed with the Outstanding Litigations.  As noted above, Movants bear the high burden of establishing cause, and they have made no such showing here.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).  Movants' conclusory assertion that "justice will be served" by liquidating their claims now fails to satisfy Movants' heavy burden.  <u>Motion</u> at 9.

28.    Furthermore, because the Commonwealth Plan has been confirmed and consummated, the limited issue in the Commonwealth's Title III case as it relates to the Outstanding Litigations is the resolution of Movants' Proofs of Claim, which should be accomplished pursuant to the claims objection process pursuant to the Commonwealth Plan and the Confirmation Order, or, to the extent the Oversight Board determines appropriate, before the prepetition forum following a decision by the Puerto Rico Supreme Court on the pending appeal. Granting the Motion would only circumvent the process and timeline established in the Commonwealth Plan and the Confirmation Order for the Debtor to address outstanding claims, and would conflict with PROMESA's core purpose: "centraliz[ing] all disputes concerning property of the [Commonwealth] so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings." *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 939 F.3d 356, 363, 2019 WL 4667824 (1st Cir. 2019) (confirming the denial of a request to lift stay to compel PREPA to comply with the provisions of a prepetition judgment.).

29.    Therefore, the first Sonnax factor supports denial of  the Motion and the relief requested therein.

30.    ***Sonnax* Factor 2**:  The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay.  Movants fail to

address whether allowing the Outstanding Litigations to proceed would interfere with the Commonwealth's Title III case. In fact, modifying the discharge injunction to allow the Outstanding Litigations to proceed to final judgment would interfere with the claims resolution process when the Commonwealth Plan provides the Debtor a period of time to review and address claims asserted against it. Furthermore, because the issues on appeal in the Acevedo-Arocho Action before the Puerto Rico Supreme Court relating to the Commonwealth's laches and statute of limitations defenses may have a dispositive impact on the outcome of the Outstanding Litigations, it would waste Commonwealth resources to require it to defend against the Outstanding Litigations while that decision remains pending.

31.     Thus, Sonnax factor 2 weighs in favor of denial of the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

32.     ***Sonnax* Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. With the exception of the Acevedo-Arocho Action, the Litigations were filed before CASP. The Acevedo-Arocho Action was filed in the Puerto Rico Court of First Instance, and an appeal is pending before the Puerto Rico Supreme Court. Even assuming CASP were to qualify as a specialized tribunal under the *Sonnax* factors, the fact that a dispositive issue that would affect all the Outstanding Litigations relating to the Commonwealth's laches and statute of limitations defenses is pending before the Puerto Rico Supreme Court in the Acevedo-Arocho Action weighs in favor of denial of the Motion.

33.     ***Sonnax* Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in

14

connection with the Outstanding Litigations. Thus, *Sonnax* factor 5 does not support granting the Motion.

34.  **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Cap.,* 2012 WL 3860586, at *7 ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),* 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006)  ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

35.  Here, departments of the Commonwealth are the named defendants in the Outstanding Litigations, including the Department of Transportation and Public Works, the Department of Family, and the Department of Treasury. Therefore, *Sonnax* factor 6 weighs in favor of denial of the Motion.

36.  **_Sonnax_ Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  As noted above, allowing the Outstanding Litigations to proceed would deprive the Debtor the ability to assess and seek a resolution to Movants' Proofs of Claim within the timeframe contemplated in the Commonwealth Plan.  Short-circuiting such claims resolution process would prevent the resolution of all unsecured claims against the Commonwealth in a holistic fashion, which would negatively impact the pro rata distribution of the CW GUC Recovery to all general unsecured claimants of the Commonwealth.

37.     Courts have also denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

38.     Here, if the discharge injunction were modified, the Commonwealth would have to expend resources to defend against the Outstanding Litigations while a dispositive issue before the Puerto Rico Supreme Court in the Acevedo-Arocho Action could resolve the claims asserted in all the Outstanding Litigations.  Allowing the Outstanding Litigations to proceed prior to the issuance of the Puerto Rico Supreme Court's decision in the Acevedo-Arocho Action would result in the depletion of the Commonwealth's resources to attend to unnecessary responses, and diversion of the Commonwealth's attention to proceed expeditiously to resolve outstanding claims—inuring to the detriment of the Commonwealth's other creditors. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

39.     ***Sonnax* Factors 10 and 11:**  The interest of judicial economy and the status of the Outstanding Litigations also weigh against stay relief.  As discussed above, the Outstanding Litigations, other than the Acevedo-Arocho Action, are in very preliminary stages and ultimately

could be dismissed pending the decision by the Puerto Rico Supreme Court. If the Motion were granted, the Debtor would be forced to expend resources attending to the trial of the Outstanding Litigations, while at the same time addressing Movants' Proofs of Claim before this Court within the timeframe provided in the Commonwealth Plan and the Confirmation Order. There is no guarantee trial and post-trial appeals would be completed any faster than the claims resolution process in the Commonwealth's Title III case. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion with respect to the Outstanding Litigations.

40. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. Movants assert that they are harmed by the delay in resolution of the Oustanding Litigations. Motion at 9. However, Movants are in the same position as other creditors who must wait for the resolution and payment of their claims according to the terms of the Commonwealth Plan and the Confirmation Order.

41. However, the impact on the Commonwealth and its creditors if the Motion were to be granted would outweigh any harm that Movants would suffer if the discharge injunction remains in place. The diversion of the Commonwealth's resources to defend Movants' claims in litigation, and the prejudice to the interests of other similarly situated creditors all weigh in favor of denying the Motion. Critically, allowing the claims to be resolved in the Outstanding Litigations would deprive the Oversight Board, as sole Title III representative of the Commonwealth in its Title III case, the ability to assess and seek a resolution to Movants' Proofs of Claim within the timeframe contemplated in the Commonwealth Plan, potentially impacting the pro rata distribution of the CW GUC Recovery to all allowed general unsecured claimants of the Commonwealth. Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[8]

---

[8]  The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the

### C.     Movants' Request for a Ruling or Comfort Order Should Be Denied as Procedurally Improper, or Otherwise Without Merit

42.     Movants request in the alternative a ruling or comfort order determining that the Oversight Board "is acting in contravention of [PROMESA] by arbitrarily excluding Movants['] claims from the ACR or ADR procedures." Motion at 12. Such request is procedurally improper pursuant to Rule 4001-1 of the Puerto Rico Local Bankrupcy Rules, which provides "[a] motion for relief from stay shall not be combined with a request for any other type of relief unless so authorized by the court, except that the movant may request adequate protection as alternative relief."

43.     On the merits, Movants have no legal basis for the relief they request. Movants argue that the Oversight Board has "arbitrarily excluded" Movants' claims from resolution pursuant to the ADR Procedures and ACR Procedures, and as support for that assertion, Movants purport to identify several claims associated with plaintiffs in the Litigations that have been transferred into such procedures. Motion at 4, 6-7. As Movants are well aware, however, thousands of individual plaintiffs in the Litigations filed individual proofs of claim, notwithstanding the fact that Movants, through counsel, filed master proofs of claim on behalf of all plaintiffs in the Litigations.[9] Because the individual plaintiffs' proofs of claim did not always clearly indicate that they were asserting the Litigations, the Commonwealth transferred certain individual plaintiffs' proofs of claim into the ADR or ACR Procedures, on the basis of other

---

foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

[9]     See, e.g., Order Granting Three Hundred Seventy-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Duplicate Litigation Claims [Case No. 17-3283, ECF No. 19925] (granting objection to proofs of claim filed by individual palintiffs in the Litigations as duplicative of master proofs of claim filed on behalf of all plaintiffs in the Litigations).

assertions contained within their claims.[10]  To the extent the Commonwealth received information from the individual plaintiffs indicating that their claims assert liabilities associated with the Litigations, the Commonwealth either has or will removed their claims from ACR or ADR and placed on objections expunging the claims as duplicative of master proofs of claim.[11]

44.    In any event, the ADR Procedures and ACR Procedures established in these Title III Cases do not create an independent right for Movants' claims to be addressed under such procedures or to require the Debtors to submit particular claims into the ADR or ACR Procedures at Movants' request.  Rather, such procedures are intended to alleviate the administrative burden on the Court and costs for the Debtors in their ongoing efforts to reconcile the unprecedented number of claims asserted in these Title III cases.  The Debtors' claims reconciliation process remains ongoing, and the Debtors continue to transfer claims into the ADR Procedures and/or ACR Procedures.  The Commonwealth should be afforded the opportunity to continue reviewing and reconciling claims, including by objecting to claims and/or transferring them into the ADR or ACR Procedures when ready to do so, as contemplated by the Plan.  Accordingly, Movants do not have a legal basis for the relief they seek, and the Motion should be denied.

---

[10]  *See, e.g.*, *Order Granting Three Hundred Seventy-Sixth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Partial Duplicate Litigation Claims* [Case No. 17-3283, ECF No. 19932] (disallowing claim in part as duplicative of master proofs of claim filed on behalf of all plaintiffs in the Litigations; retaining remaining claim asserting additional liaibilities not arising out of Litigations).

[11]  Notably, as set forth in the *Tenth Alternative Dispute Resolution Status Notice*, each of the claims marked "Offer and Exchange" "have received either an Offer ***or an Information Request***, as defined in the ADR Procedures." Tenth Alternative Dispute Resolution Status Notice, ECF No. 20205-1, Ex. A, at 4 (emphasis added).  Each of the claimants identified by Movants as individual plaintiffs in the Litigations have received an Information Request, but have not yet received an Offer.  The Debtors are currently evaluating responses received to their Information Requests, if any, to determine whether the claims should be removed from the ADR Procedures in whole or in part and objected to as duplicative of Movants' master proofs of claim.

**WHEREFORE** the Commonwealth respectfully requests that the Court deny the Motion.


Dated: July 15, 2022
      San Juan, Puerto Rico

/s/ *Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for
the Commonwealth of Puerto Rico*


/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight
and Management Board as representative
for the Commonwealth of Puerto Rico*