IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| LUIS A. RIVERA SIACA<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | Re: ECF No. 21408 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**DEBTOR'S OBJECTION TO MOTION TO COMPLY WITH PAYMENT OF ADMINISTRATIVE RENT**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion to Comply with Payment of Administrative Rent* [ECF No. 21408] (the "Motion"), filed by Luis A. Rivera Siaca (the "Movant" or "LARS"). In support of the Objection, the Debtor respectfully represents:

**PRELIMINARY STATEMENT**

1. Movant asserts a claim for administrative expense priority in the amount of $2,259,399.71 for rent allegedly arising from a non-residential lease agreement (contract no. 2021-000148), dated as of January 15, 2021 (the "Contract"), with the Puerto Rico Department of Education ("PRDE"). The Contract, which provides aggregate rental payments of more than $12 million over its asserted term, was executed without prior review and approval by the Oversight Board in violation of the Oversight Board's contract review policy established pursuant to PROMESA Section 204(b)(2) (the "Policy").

2. There is no dispute the Contract was executed without the Oversight Board's prior review. There is also no dispute that the Contract was not submitted to the Oversight Board until February 24, 2022, more than a year after execution. Following its submission, the Oversight Board immediately began to evaluate the Contract and sent a request for information to the PRDE

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

1

three business days later, on March 1, 2022. Since that time, the Oversight Board has been engaged in analysis and correspondence, including several requests for additional information from PRDE, in an effort to determine the Contract's market competitiveness and compliance with Puerto Rico contracting law and the Commonwealth fiscal plan. During such review, the Oversight Board identified irregularities with respect to PRDE's procurement process with the Movant and the overall lack of a competitive procurement process involving the Contract. For example, the Oversight Board learned that, for nineteen (19) months prior to execution of the Contract, PRDE had made monthly payments for the use of Movant's premises without an executed and registered lease agreement, using purchase orders as a method of payment. Furthermore, the Contract, as well as another agreement with Movant, were for terms that were only days or months, respectively, less than five years. Under PRDE's regulations, contracts with terms under five years are exempt from the requirement to pursue a competitive procurement process.

3. In addition, the costs asserted in the Motion are for a period that is not covered by proper registration and certifications. While the Contract provides for a nearly 5-year term, PRDE obtained required certifications from certain entities for a lease agreement lasting only a single year and PRDE has acknowledged that it should not have executed the Contract without the approval of those entities. Similarly, although the Contract was registered with the Puerto Rico Office of the Comptroller, the registration is inaccurate because it only reflects the Contract's annual rent payment for the first year of the Contract and not its total amount. As discussed below, under Puerto Rico law, improper certification and registration can nullify a contract or preclude payment until compliance has been achieved. Accordingly, the Oversight Board has not been able to conclude the Contract complies with Puerto Rico contracting law.

4. Congress's stated goals in PROMESA Section 204(b)—competitive bidding, increased public faith in contracting, compliance with the Fiscal Plan, and efficient use of the

Commonwealth's resources—aim to preserve the financial stability of the Commonwealth and develop financial integrity. *Accord* 11 U.S.C. § 503(b)(1)(A). Here, however, these goals have been impeded as the Oversight Board has been unable to review the Contract for compliance with the Fiscal Plan or market competitiveness prior to execution and payment. The Contract remains under the Oversight Board's review and, despite the Oversight Board's requests for information, satisfactory justification for not engaging in a competitive bid process and compliance with Puerto Rico certification and registration requirements remain outstanding. For these reasons, the alleged services provided pursuant to the Contract do not constitute "actual, necessary costs and expenses of preserving" the Commonwealth and should not be allowed administrative expense priority. 11 U.S.C. § 503(b)(1)(A).[3] Accordingly, for the reasons set forth herein, the Motion should be denied.

## BACKGROUND

1. Pursuant to a non-residential lease agreement (contract no. 2015-000130) (the "Previous Contract"), PRDE leased five floors in LARS' building property located at 34 Calaf Street, San Juan, Puerto Rico (the "Leased Premises") for four and one-half years through May 30, 2019.

2. For a period of nineteen (19) months (between June 2019 and January 14, 2021), PRDE made monthly payments for the use of the Leased Premises without an executed and

---

[3] Movant also asserts Bankruptcy Code section 365(d)(3) as a basis for payment. However, Bankruptcy Code section 365(d)(3) applies to leases that can be "assumed or rejected[.]" 11 U.S.C. § 365(d)(3). A postpetition lease, like the one asserted here, is not subject to assumption or rejection. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. 349, 356 (D.P.R. 2020), *aff'd sub nom. Campamento Contra Las Cenizas En Peñuelas, Inc. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 9 F.4th 1 (1st Cir. 2021) ("There are cases which have addressed the question of whether section 365 applies to postpetition agreements; the learning from these cases is that contracts ... entered into postpetition are not subject to rejection under section 365.") (quoting *In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 300 (Bankr. S.D.N.Y. 1994))

registered lease agreement, using purchase orders as a method of payment.[4] PRDE issued separate monthly payments of $219,129.66 (for a total of $4,163,463.54) via purchase orders for the rent of the Leased Premises during this period.[5] In fact, on at least one occasion, PRDE issued the purchase order retroactively several months after the beginning of the period included in the purchase order.

3. Upon information and belief, PRDE thereafter directly negotiated the Contract with LARS rather than through a competitive procurement process. On January 15, 2021, PRDE executed the Contract, without submitting the Contract to the Oversight Board for its review and approval, for a term from January 15, 2021 until December 31, 2025 and an annual rent of $2,426,430.10 for the first year, representing a monthly rent payment of $202,202.51. Upon conclusion of the first year of the Contract, rent increases annually by three percent (3%) and, as such, the total rent to be paid under the Contract is calculated at $12,883,100.46.

4. On February 24, 2022, more than a year after its execution, the Contract was submitted to the Oversight Board for its review and approval. On March 1, 2022, the Oversight Board sent a request for information to PRDE regarding the Contract. On March 17, 2022, PRDE responded, stating it had submitted a justification memorandum for a budget amendment, but that justification memorandum was for another LARS lease agreement (contract No. 2021-000180). PRDE also provided the Oversight Board with copies of approvals for the Contract from the Office of Management and Budget ("OMB") and the Real Estate Property Review Board ("REPRB"). The certifications submitted by the PRDE to both REPRB and OMB were only for one year even

---

[4] Upon learning of this leasing process, the Oversight Board advised PRDE that the use of purchase orders to avoid executing a lease ignores the requirements of the Fiscal Plan and made clear that PRDE has not made sufficient progress in implementing the competitive procurement procedures required by the Fiscal Plan.

[5] The last rent payments established under the Previous Contract were for $219,129.66 and, as such, it seems the Previous Contract was extended by way of purchase orders under its same terms and conditions.

though the term of the lease was almost five years. PRDE informed the Oversight Board that it had inadvertently sent the REPRB and OMB a request for a lease agreement lasting a single year and has acknowledged that it should not have executed the Contract without the approval of such entities. The Oversight Board has requested that PRDE submit revised certifications and seek approval for the Contract's full term. PRDE informed the Oversight Board it submitted a request for revised certification from REPRB but, to the Board's knowledge, revised certifications from REPRB and OMB have not been obtained.

5. On March 21, 2022, the Oversight Board sent a second request for information to PRDE regarding the Contract. This second request sought, among other things, confirmation that OMB had approved the use of funds for the period after June 30, 2021 and evidence of any such approval. By letter dated March 29, 2022, PRDE confirmed that it did not have the required OMB/RERPB approvals given that OMB requires the Oversight Board approve the Contract before it can approve the use of funds after June 30, 2021.

6. On April 6, 2022, the Oversight Board requested PRDE submit the other lease agreement with LARS (contract no. 2021-000180) and its amendments for review pursuant to the Policy.

7. On April 19, 2022, the Oversight Board sent a third request for information to PRDE requesting an explanation from PRDE regarding the failure to conduct a competitive procurement process.[6]

---

[6] On May 4, 2022, the Oversight Board followed up on its April 6, 2022 and April 19, 2022 requests. The Oversight Board also requested additional clarification as to the Previous Contract and an explanation as to how long PRDE has rented the Leased Premises.

8. On May 18, 2022, PRDE responded to the April 6, 2022 letter and included in its response the submission of contract no. 2021-000180 and a letter describing the PRDE divisions that occupy each of the premises under PRDE's non-residential lease agreements with LARS.

9. On May 20, 2022, PRDE responded to the April 19, 2022 request and forwarded to the Oversight Board a letter, dated April 25, 2022, from LARS to PRDE regarding outstanding balances. At that time, the Oversight Board first became aware of purportedly past-due amounts on the lease.

10. On June 3, 2022, the Oversight Board requested information from PRDE regarding contract no. 2021-000180. That same day, the Oversight Board sent letters to PRDE, the Puerto Rico Office of the Comptroller, and the Puerto Rico Department of Justice identifying contracting abnormalities and PRDE's failure to submit the Contract pursuant to the Oversight Board's Policy.

11. In its June 9, 2022 response letter, PRDE acknowledged that the Contract had not been submitted for Oversight Board prior approval, as required by the Policy, but alleged that PRDE followed all applicable requirements under Commonwealth law, including Act 235-2014 and PRDE Regulation 7545.

12. The Contract remains under the Oversight Board's review. Specifically, the Oversight Board has requested PRDE to adequately (i) demonstrate that the Contract has received all the required government approvals for its execution, including obtaining the necessary certifications from the REPRB and OMB that certify the Contract's approval for the full term of the lease, (ii) explain the factors it considered in determining procurement of the Contract through direct negotiation rather than competitive procurement, in light of the requirements of Regulation 7040 (as defined below), and (iii) establish how it demonstrated to the REPRB that there are no less expensive options than the Contract or why less expensive options are not feasible. Such requests are pending. PRDE informed

the Oversight Board it submitted a request for revised certification from REPRB but, to the Board's knowledge, revised certifications from REPRB and OMB have not been obtained.

## ARGUMENT

13. Section 204(b)(2) of PROMESA authorizes the Oversight Board to:

> establish policies to require *prior* Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government . . . .

PROMESA § 204(b)(2) (emphasis added). Pursuant to this provision, the Oversight Board established the Policy to require prior Oversight Board approval of contracts or series of related contracts, inclusive of any amendments, modifications, or extensions, with an aggregate expected value of $10 million or more, proposed to be entered into by the Commonwealth or any covered instrumentality.

14. Congress also identified certain benefits to the Commonwealth that the Policy was intended to promote, such as competitive procurement, fiscal sustainability and integrity as developed by the Oversight Board through fiscal plans, increased public faith in contracting, and preservation of Commonwealth resources. *See id.* ("to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan"); *id.* § 204(b)(3) ("to increase the public's faith in [the Commonwealth's contracting] process" and "to make appropriate use of the Oversight Board's time and resources"). Similarly, pursuant to Bankruptcy Code section 503(b), Congress required that contract costs must be "actual" and "necessary" for "preserving" the Commonwealth for such costs to obtain administrative expense priority. 11 U.S.C. § 503(b)(1)(A).

15. Here, Congress's goals have been impeded because, contrary to PROMESA Section 204(b), the Oversight Board was not able to review the Contract for compliance with the

7

Fiscal Plan or market competitiveness prior to execution and payment. Accordingly, any alleged benefit provided by the Contract has, at the very least, been reduced by the loss of the benefits that would have been provided had the Contract been reviewed in accordance with the Policy and competitively procured prior to execution. Furthermore, the Oversight Board has been unable to conclude the Contract complies with Puerto Rico's certification and registration requirements. At a minimum, the Contract costs must be payable under applicable law. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law"); *In re Bos. Reg'l Med. Ctr.*, 256 B.R. 212, 220 (Bankr. D. Mass. 2000), *aff'd sub nom. Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 265 B.R. 838 (B.A.P. 1st Cir. 2001), *aff'd on other grounds*, 291 F.3d 111 (1st Cir. 2002) ("In determining whether an obligation arising under state law is a tax under the Bankruptcy Code, courts must look to state law to understand the characteristics and incidents of the obligation"); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-bk-4780, 2022 WL 1401506, at *4 (D.P.R. May 4, 2022) ("Motion for administrative expense treatment fails because [movant] has not demonstrated that it has a contractual right to reimbursement of the Expenses . . . ."). To the extent they are not, the Contract costs do not constitute "actual, necessary costs and expenses of preserving" the Commonwealth. 11 U.S.C. § 503(b)(1)(A).

### A. The Contract is Subject to Ongoing Review Pursuant to the Contract Review Policy

16. In an attempt to discern the Contract's competitiveness in accordance with the Policy, the Oversight Board has analyzed Puerto Rico law and requested applicable justification for the Contract's procurement from PRDE. PRDE's *Regulation for the Acquisition, Sales and Auctions of Goods, Works and Non-Personal Services* ("Regulation 7040") requires competitive procurement processes for the award of certain acquisition contracts. Notably, Regulation 7040 lists real estate lease

8

agreements as acquisition contracts that, as such, must be the subject of a competitive procurement process if they exceed a certain value. Nonetheless, Regulation 7040 expressly exempts from its requirements PRDE's real estate lease agreements that have a term of less than five years.

17. The Previous Contract had a term lasting four years and six months through May 30, 2019. However, PRDE confirmed there was a 19-month period between the expiration of the Previous Contract and the execution of the Contract where PRDE paid rent for the Leased Premises by way of monthly purchase orders, which, on at least one occasion, was paid retroactively. As such, prior to the Contract's execution, the Previous Contract had been effectively extended well beyond the five-year period prescribed by Regulation 7040.[7]

18. With that background, on April 19, 2022, the Oversight Board requested an explanation from PRDE for the failure to conduct a competitive procurement process. However, PRDE's response failed to explain the factors it took into account to avoid conducting a competitive procurement process, including the factors it considered in determining that a contract with a term of four years, eleven months, and sixteen days (just shy of the five-year term contemplated by Regulation 7040) was better procured through direct negotiation than through competitive procurement. Because it was not given an opportunity to review the Contract prior to execution, the Oversight Board could not assist in obtaining competitive procurement, as identified in PROMESA Section 204(b).

19. In addition, the Oversight Board has been analyzing the Contract's procurement for consistency with the certified 2022 Commonwealth Fiscal Plan (the "Fiscal Plan"). The Fiscal Plan observed "PRDE has not made notable progress in implementing structural initiatives to drive sustainable procurement savings, and instead has waited for the procurement centralization within the

---

[7] The Oversight Board also questions whether the use of purchase orders to make retroactive payments without an executed contract was a violation of Act 18. *See e.g.*, 2 L.P.R.A. § 97(a).

General Services Administration (GSA) to realize procurement savings." Fiscal Plan at 232 (emphasis removed). Accordingly, the Fiscal Plan called on PRDE to "define and implement a plan to address all findings identified in state and federal audits [concerning procurement], [and take steps to] digitize the procuring process, establish clear segregation of duties, and enforce comprehensive internal controls."[8] *Id.* at 237. As such, the Oversight Board urged PRDE to evaluate achieving operational efficiencies through the implementation of competitive procurement processes for its real estate property lease agreements.[9] In this context, the Oversight Board's review of the Contract's procurement is relevant to determining consistency with the Fiscal Plan.

### B. The Contract Fails to Comply with Puerto Rico Certification and Registration Requirements

20. Puerto Rico law requires contracts to be registered with the Office of the Comptroller ("OCPR"), and with respect to real property leasing agreements, they must also be submitted to, and receive certifications from, OMB and REPRB prior to their execution. Section 1 of Act No. 18 of October 30, 1975 ("Act 18"), requires all government entities, with no exception whatsoever, to keep a registry of all contracts executed, including amendments thereto, and send a copy thereof to the OCPR within 15 days following the date of the execution or amendment of the contract (this period can be extended to 30 days when the contract is executed outside of Puerto

---

[8] The Fiscal Plan notes PRDE's "time for procuring services can take over 6 months, while at the same time PRDE has ineffective manual processes and paper trails, poor segregation of duties between responsible personnel, and lack of internal controls," *see* Fiscal Plan at 237, all problems which were highlighted in the Federal Government's Audit Reports (2019 Puerto Rico Department of Education's Internal Controls over the Immediate Aid to Restart Schools Operations Program; 2013 Review of Final Expenditures Under ARRA).

[9] As required by the Fiscal Plan, PRDE "must work towards minimizing the spend on retained buildings and therefore achiev[e] the required 2022 Fiscal Plan savings." Fiscal Plan at 229. According to the Fiscal Plan, PRDE "has identified 56 school buildings to repurpose for administrative uses, including 41 to be used as inactive archives, regional offices, and for other administrative uses, and 15 to be used by a non-profit alternative education program (Proyecto Centros de Apoyo Sustentable al Alumno (CASA)." *Id.*

10

Rico). 2 L.P.R.A. § 97(a). Furthermore, Act 18 prohibits government entities from executing contracts retroactively. *Id.* Based on the authority granted by Section 3 of Act 18, 2 L.P.R.A. § 98, to regulate the registration of government contracts, the OCPR created a centralized electronic registry. Government entities are required to register their contracts in the OCPR electronic registry in addition to sending a copy of each contract, following the requirements established in Regulation 33 of the OCPR ("Regulation 33"), which regulates all matters related to the registry of Contracts. Although not registering a contract is not in itself a cause to declare a valid contract null, no provision or consideration of services that are the object of a contract may be demanded until the provisions of Section 1 of Act 18 have been complied with. 2 L.P.R.A. § 98.

21. In addition, real property leasing agreements must comply with Section 22 of Act 66-2014, as amended, known as the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", 3 L.P.R.A. § 9128, and with Act 235-2014, as amended, which created the REPRB. 3 L.P.R.A. §§ 9161 *et seq*. Section 22(a) of Act 66-2014, 3 L.P.R.A. § 9128(a), prohibits government entities of the Executive Branch from renewing or executing new agreements without the previous approval of the OMB, among other requirements established therein. Accordingly, every lease agreement entered into in contravention with Section 22 of Act 66-2014 shall be null. 3 L.P.R.A. § 9128(d). On the other hand, Article 6 of Act 235-2014, 3 L.P.R.A. § 9166, provides that no government entity may lease private real property if it is not duly authorized by the REPRB. Government entities must demonstrate to the REPRB that there is no public building available, either from the central government or any municipal government, to establish their offices. *Id.*

22. Here, while both LARS lease agreements (Contract Nos. 2021-000148 and 2021-000180) appear to have been submitted and registered with the OCPR, the contract value that the

11

registry identifies is inaccurate because it only reflects each contract's annual rent payment for the first year of each of the lease agreements and not their total amounts.[10] Article 8.1(f) of Regulation 33 requires government entities, when registering a contract with the OCPR, to submit the total amount to be paid by the agency. The failure to register the correct amount of the Contract with the OCPR thus violates Regulation 33.

23. Moreover, although both contracts were submitted to the OMB and REPRB, the certifications from these government entities approved the lease agreements only until June 30, 2021. Contract Nos. 2021-000148 and 2021-000180, however, last until December 31, 2025 and June 30, 2026, respectively. Accordingly the Contract was not duly authorized by REPRB. Therefore, PRDE did not comply with Act 235-2014. The PRDE also did not obtain an authorization from the OMB to execute a contract with a term of almost five years but only requested a one-year authorization. Thus, PRDE did not comply with Section 22 of Act 66-2014, and the Contract may be considered null.

24. Even if the Contract were not null and void, the costs asserted in the Motion are for invoices dated June 30, 2021 through May 31, 2022. *See* Mot. Ex. B. Such costs are not within the period that is covered by the existing certifications from REPRB and OMB and registration with the OCPR. PRDE informed the Oversight Board that it had inadvertently sent the REPRB and OMB a request for a lease agreement lasting a single year and has acknowledged that it should not have executed the Contract without the approval of such entities. The Oversight Board is not aware of any exemption that the Contract might have from obtaining such approvals and has requested PRBE to obtain them. But, because of the failure to comply with the Puerto Rico certification and

---

[10] The registration of the Contract can be found on the OCPR's website at https://consultacontratos.ocpr.gov.pr/contract/details?contractid=5137815.

registration requirements, the asserted costs are not entitled to administrative expense priority. *See supra* ¶ 15.

25. Congress's stated goals with respect to the Policy established pursuant to PROMESA section 204(b)—including competitive bidding, increased public faith in contracting, compliance with the Fiscal Plan, appropriate use of the Oversight Board's resources—are important to achieving the overall goals of PROMESA. *Accord* PROMESA § 101(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets."). An uncompetitive process in the procurement of a multi-million dollar contract, however, saps the public's faith in contracting and deprives the public of a process designed to achieve better value for their taxes. Here, the Contract was executed and paid (so far) in violation of the Policy by failing to obtain the Oversight Board's approval prior to execution. In addition, compliance with Puerto Rico's registration and certification requirements remains outstanding. In light of these issues, Movant has not met the burden of proving entitlement to priority.[11] For these reasons, the asserted costs attendant to the Contract should not be allowed administrative expense priority.

*[Remainder of Page Intentionally Left Blank]*

---

[11] "The burden of proving entitlement to priority payment as an administrative expense rests with the party requesting it, and the Court has broad discretion in determining whether to grant a request for such priority treatment." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 631 B.R. 596, 604 (D.P.R. 2021) (citing *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992)); *see also In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013). A party seeking administrative expense treatment must show a "clear relationship between the expenditures made and the benefit conferred on the estate . . . ." *In re Drexel Burnham Lambert Grp.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) (citations omitted).

WHEREFORE the Commonwealth respectfully requests the Court deny the Motion and grant such other and further relief as is just.

Dated: July 15, 2022
San Juan, Puerto Rico

Respectfully submitted,

/s/ Brian S. Rosen
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*

14