**Hearing Date**: November 2, 2022 at 9:30am (AST)
**Objection Deadline**: August 4, 2022 at 4:00pm (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:                                               :
                                                     :
THE FINANCIAL OVERSIGHT AND                          : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                    : Title III
                                                     :
As representative of                                 : Case No. 17-BK-3283 (LTS)
                                                     :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,           : (Jointly Administered)
                                                     :
Debtors.[1]                                          :
------------------------------------------------------------------------ x

## FIFTEENTH INTERIM FEE APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM FEBRUARY 1, 2022 THROUGH MAY 31, 2022

### SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>February 1, 2022 through and including May 31, 2022 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$280,727.00</u>

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: <u>$7,354.74</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $254.88/hour

Blended rate in this application for all timekeepers: $250.85/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is
approximately 19.30 hours, and the corresponding compensation requested is approximately
$4,825.00.

| MONTHLY FEE REQUESTS TO DATE | | | | | | | |
|---|---|---|---|---|---|---|---|
| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |
| **Total** | | **$294,120.50** | **$264,708.45** | **$12,052.09** | **$294,120.50** | **$12,052.09** | **$0.00** |

| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
|---|---|---|---|---|---|---|
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |

| Seventh Interim Fee Period (June 1, 2019 through September 30, 2019) | | | | | | |
|---|---|---|---|---|---|---|
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| Eighth Interim Fee Period (October 1, 2019 through January 31, 2020) | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $189,873.76 | $6,048.82 | $0.00 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $137,481.97 | $4,921.19 | $0.00 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $108,157.02 | $269.24 | $0.00 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $123,205.91 | $1,760.40 | $0.00 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$558,718.66** | **$12,999.65** | **$0.00** |
| Ninth Interim Fee Period (February 1, 2020 through May 31, 2020) | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $133,245.59 | $715.53 | $0.00 |
| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $114,751.68 | $4,599.42 | $0.00 |
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $70,487.58 | $773.90 | $0.00 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $76,797.12 | $74.90 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$395,281.97** | **$6,163.75** | **$0.00** |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | | |
| 8/13/2020 | 06/01/2020 - 06/30/2020 | $74,223.50 | $66,801.15 | $42.20 | $73,110.14 | $42.20 | $0.00 |
| 9/11/2020 | 07/01/2020 - 07/31/2020 | $85,800.00 | $77,220.00 | $1,903.49 | $84,513.00 | $1,903.49 | $0.00 |
| 10/8/2020 | 08/01/2020 - 08/31/2020 | $62,341.50 | $56,107.35 | $402.92 | $61,406.38 | $402.92 | $0.00 |
| 10/29/2020 | 09/01/2020 - 09/30/2020 | $58,767.50 | $52,890.75 | $3,387.56 | $57,885.99 | $3,387.56 | $0.00 |
| **Total** | | **$281,132.50** | **$253,019.25** | **$5,736.17** | **$276,915.51** | **$5,736.17** | **$0.00** |
| **Eleventh Interim Fee Period (October 1, 2020 through January 31, 2021)** | | | | | | | |
| 12/10/2020 | 10/01/2020 - 10/31/2020 | $69,875.00 | $62,887.50 | $1,444.97 | $68,826.88 | $1,444.97 | $0.00 |
| 1/8/2021 | 11/01/2020 - 11/30/2020 | $56,839.00 | $51,155.10 | $3,798.94 | $55,986.41 | $3,798.94 | $0.00 |
| 2/11/2021 | 12/01/2020 - 12/31/2020 | $42,692.50 | $38,423.25 | $1,640.93 | $42,052.11 | $1,640.93 | $0.00 |
| 3/11/2021 | 01/01/2021 - 01/31/2021 | $46,599.00 | $41,939.10 | $335.33 | $45,900.01 | $335.33 | $0.00 |
| **Total** | | **$216,005.50** | **$194,404.95** | **$7,220.17** | **$212,765.41** | **$7,220.17** | **$0.00** |
| **Twelfth Interim Fee Period (February 1, 2021 through May 31, 2021)** | | | | | | | |
| 4/12/2021 | 02/01/2021 - 02/28/2021 | $55,837.00 | $50,253.30 | $110.00 | $55,083.20 | $110.00 | $0.00 |
| 5/20/2021 | 03/01/2021 - 03/31/2021 | $45,348.00 | $40,813.20 | $3,951.70 | $44,735.80 | $3,951.70 | $0.00 |
| 6/24/2021 | 04/01/2021 - 04/30/2021 | $63,872.00 | $57,484.80 | $403.46 | $63,009.73 | $403.46 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/8/2021 | 05/01/2021 - 05/31/2021 | $68,141.00 | $61,326.90 | $181.40 | $67,221.10 | $181.40 | $0.00 |
| **Total** | | **$233,198.00** | **$209,878.20** | **$4,646.56** | **$230,049.83** | **$4,646.56** | **$0.00** |
| **Thirteenth Interim Fee Period (June 1, 2021 through September 30, 2021)** | | | | | | | |
| 8/19/2021 | 06/01/2021 - 06/30/2021 | $77,713.00 | $69,941.70 | $186.57 | $77,713.00 | $186.57 | $0.00 |
| 9/16/2021 | 07/01/2021 - 07/31/2021 | $68,345.00 | $61,510.50 | $3,667.74 | $68,345.00 | $3,667.74 | $0.00 |
| 10/20/2021 | 08/01/2021 - 08/31/2021 | $47,313.00 | $42,581.70 | $173.77 | $47,313.00 | $173.77 | $0.00 |
| 11/4/2021 | 09/01/2021 - 09/30/2021 | $52,966.00 | $47,669.40 | $91.43 | $52,966.00 | $91.43 | $0.00 |
| **Total** | | **$246,337.00** | **$221,703.30** | **$4,119.51** | **$246,337.00** | **$4,119.51** | **$0.00** |
| **Fourteenth Interim Fee Period (October 1, 2021 through January 31, 2022)** | | | | | | | |
| 12/16/2021 | 10/01/2021 - 10/31/2021 | $67,733.00 | $60,959.70 | $493.00 | $60,959.70 | $493.00 | $6,773.30 |
| 1/26/2022 | 11/01/2021 - 11/30/2021 | $64,692.00 | $58,222.80 | $3,898.11 | $58,222.80 | $3,898.11 | $6,469.20 |
| 2/17/2022 | 12/01/2021 - 12/31/2021 | $54,285.00 | $48,856.50 | $39.60 | $48,856.50 | $39.60 | $5,428.50 |
| 3/9/2022 | 01/01/2022 - 01/31/2022 | $55,554.00 | $49,998.60 | $89.30 | $49,998.60 | $89.30 | $5,555.40 |
| **Total** | | **$242,264.00** | **$218,037.60** | **$4,520.01** | **$218,037.60** | **$4,520.01** | **$24,226.40** |
| **Fifteenth Interim Fee Period (February 1, 2022 through May 31, 2022)** | | | | | | | |
| 4/6/2022 | 2/01/2022 - 2/28/2022 | $53,991.00 | $48,591.90 | $1,739.83 | $48,591.90 | $1,739.83 | $5,399.10 |
| 5/4/2022 | 3/01/2022 - 3/31/2022 | $72,337.00 | $65,103.30 | $5,575.68 | $65,103.30 | $5,575.68 | $7,233.70 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/2/2022 | 4/01/2022 - 4/30/2022 | $72,349.50 | $65,114.55 | $2.53 | $65,114.55 | $2.53 | $7,234.95 |
| 7/5/2022 | 5/01/2022 - 5/31/2022 | $82,049.50 | $73,844.55 | $36.70 | $0.00 | $0.00 | $8,204.95 |
| **Total** | | **$280,727.00** | **$252,654.30** | **$7,354.74** | **$178,809.75** | **$7,318.04** | **$28,072.70** |

| PRIOR INTERIM FEE APPLICATIONS | | | | | |
| Period | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period ("IFP") Covered | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | $559,558.00 | $12,999.65 |
| 07/15/2020 [Docket No. 13684] | 02/01/2020 - 05/31/2020 | $401,341.50 | $6,163.75 | $401,301.50 | $6,163.75 |
| 11/16/2020 [Docket No. 15155] | 06/01/2020 - 09/30/2020 | $281,132.50 | $5,736.17 | $281,132.50 | $5,736.17 |
| 3/15/2021 [Docket No. 16064] | 10/01/2020 - 01/31/2021 | $216,005.50 | $7,220.17 | $216,005.50 | $7,220.17 |

| | | | | | |
|---|---|---|---|---|---|
| 7/15/2021 [Docket No. 17381] | 02/01/2021 - 05/31/2021 | $233,198.00 | $4,646.56 | $233,198.00 | $4,646.56 |
| 11/15/2021 [Docket No. 19229] | 06/01/2021 - 09/30/2021 | $246,337.00 | $4,119.51 | $246,337.00 | $4,119.51 |
| 05/27/2022 [Docket No. 21056] | 10/01/2021 - 01/31/2022 | $242,264.00 | $4,520.01 | $0.00 | $0.00 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$4,500,914.50** | **$128,826.25** |

Number of professionals with time included in this application: <u>12</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>4</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------------- x
In re:                                                          :
                                                                :
THE FINANCIAL OVERSIGHT AND                    : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,         : Title III
                                                                :
as representative of                                    : Case No. 17-BK-3283 (LTS)
                                                                :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,    : (Jointly Administered)
                                                                :
Debtors.[1]                                               :
-------------------------------------------------------------------- x

**FIFTEENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC,**
**LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS,**
**FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**FOR PERIOD FROM FEBRUARY 1, 2022 THROUGH MAY 31, 2022**

TABLE OF CONTENTS

Preliminary Statement ..................................................................................................4

Background ....................................................................................................................9

Compensation and Reimbursement Request ...............................................................15

Summary of Services ...................................................................................................18

      General (Matter ID: 396-00002) ...............................................................19
      PREPA (Matter ID: 396-00006) ................................................................22
      HTA (Matter ID: 396-00007) ....................................................................25
      Fee Application (Matter ID: 396-00015) ...................................................26
      Claims Review (Matter ID: 396-00017) ....................................................26
      Avoidance Actions (Matter ID: 396-00018) ..............................................29

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Attendance at Hearings ........................................................................................................31

Report on Matters Jointly Pursued by Oversight Board and Committee.....................................32

Actual and Necessary Disbursements .....................................................................................33

Requested Compensation Should be Allowed ..........................................................................34

Notice ................................................................................................................................36

Conclusion ..........................................................................................................................36

### <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

      C-1.    Budgets

      C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

      D-1.    Summary of Compensation Requested by Project Category as Compared to
              Budget

              Further Breakdown of Compensation Requested by Project Category and by
              Matter

      D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

3

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its fifteenth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from February 1, 2022 through and including May 31, 2022 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.     During the Application Period, CST continued to assist and collaborate with Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, particularly with respect to the Committee's efforts to protect the benefits secured for general unsecured creditors of the Commonwealth and ERS under the letter agreement dated July 12th, 2021 by and between the Committee and the FOMB (the "Plan Settlement") settlement which was incorporated into the FOMB's confirmed Plan of Adjustment for the Commonwealth, ERS and PBA (the "Commonwealth Plan").

2.     During the Application Period, CST collaborated with Paul Hastings and assisted in its efforts to negotiate a settlement with the Oversight Board regarding the HTA plan of

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

adjustment (the "HTA Plan") – hearing on confirmation currently scheduled for August 17-18, 2022. In connection with these efforts, CST continued extensive and in-depth review of multiple Proofs of Claims filed by unsecured creditors against HTA with an asserted value in excess of 1 million dollars, which conducting an analysis of diverse and related issues of local law concerning said claims and an exhaustive review of judicial files and pleadings before local courts and agencies concerning many of said claims as part of the in-depth review and analysis. This detailed analysis was necessary to prepare an educated and thorough assessment of the merits of the claims asserted against HTA and the potential exposure involved and was crucial for the negotiation efforts led by Paul Hastings. As a result of these efforts led by Paul Hastings with the assistance and collaboration of CST, on May 9, 2022, the Committee reached a global settlement with the Oversight Board regarding the terms of the HTA Plan.  Among other things, pursuant to the settlement, the HTA Plan provides aggregate consideration to holders of allowed HTA general unsecured claims and allowed HTA convenience claims consisting of (a) cash in the amount of $48 million and (b) the net recoveries from certain avoidance actions to be pursued by the Avoidance Action Trust (established under the Commonwealth plan of adjustment).  The cash consideration represents a 92% increase over the $25 million that the Oversight Board had proposed under the prior version of the HTA Plan.

3.      Following Plan Confirmation and during the Application Period, CST assisted Paul Hastings and continued to represent the Committee in connection with the Plan and post-confirmation issues following the Court's confirmation of the Commonwealth Plan, including with respect to addressing and discussing issues related to the treatment of general unsecured creditors under the Plan as well as finalization and implementation of the Avoidance Actions Trust Agreement (as defined in the Commonwealth Plan). The Avoidance Actions Trust Agreement was

a high priority for the Committee insofar as the post-confirmation prosecution of avoidance actions on behalf of general unsecured creditors was a key aspect of the Plan Settlement. Said avoidance actions were transferred to the Avoidance Actions Trust Agreement during the Application Period and CST spent considerable efforts in connection with said orderly transfer.

4.        Similarly, during the Application Period CST collaborated with special litigation counsel to the Committee, Continental PLLC, in connection with procuring and securing documents from Senate Archives related to the Fuel Oil Litigation, review of pleadings and dispositive motions filed in Fuel Oil Litigation and analysis of local law issues that arose in the Fuel Oil Litigation during the Application Period. During the Application Period, CST collaborated with and assisted Paul Hastings on various matters related to claims filed against PREPA, while continuing to analyze the general unsecured claims pool.

5.        During the Application Period, CST, at Paul Hastings' request, also spent considerable time reviewing a substantial portion from a pool of 4,000 claims filed against the Commonwealth asserting liquidating amounts of less than $100,000 (part of convenience class pool) in order to evaluate strategy given potential dilution of recoveries for general unsecured creditors should all small claims be paid in full and to contest the Oversight Board's approach of liquidating all claims, regardless of merits. As a result of this exercise the Oversight Board agreed to lower the claim threshold for its proposed expedited review process from $100,000 to $75,000 and clarified to extent of the diligence with respect to such claims.

6.        During the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

a.  reviewing the FOMB's reports concerning the designation and status of claims in connection with the alternative dispute resolution ("ADR") process and administrative claims reconciliation ("ACR") process;

b.  working with other Committee advisors and counsel to the Special Claims Committee of the FOMB to dismiss adversary proceedings that were resolved as part of the Commonwealth Plan;

c.  attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

d.  monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings.

7.  CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

8.  Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, CST professionals do not travel for Court appearances outside of PR and participate only through the remote video-conference service in San Juan.

9.  In addition, CST has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee.

10.     CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

11.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[3]

12.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

---

[3] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expenses requested by Debtor.

- <u>Exhibit F</u> contains a list of the professionals providing services during the application period by matter.

- <u>Exhibit G</u> includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

13.    On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[4] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

---

[4] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

14.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

15.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "Retention Application"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "Retention Order"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

16.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim Compensation Order").[5]

17.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

18.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made

---

[5] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order  shall be  an administrative  expense." In addition, as provided in the Retention  Order,  the  Oversight Board  has  consented  to  the  Debtors'  payment  of  CST  allowed  fees  and  expenses.

19.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A  Fee Examiner and Related Relief*  (the  "Fee  Examiner  Order")  [Docket  No.  1416].  The  Court  appointed  Brady Williamson as the Fee Examiner in the Title III Cases.

20.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

21.     On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee  Application").  In  accordance  with  the  Interim  Compensation  Order,  CST  received  a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On June 8, 2018, the court approved the Second Interim Fee Application.

22.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

23.     On July 16, 2018, CST filed its third interim fee application, covering the period from  February  1,  2018  through  May  31,  2018  [Docket  No.  3562].  All  services  for  which compensation is requested were performed for or on behalf of the Committee. In accordance with

the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

24.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[6] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

25.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

26.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain

---

[6] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.
[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.

minimal adjustments in its requested fees and expenses.[8] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

27.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[9] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

28.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On July 24, 2020, the Court approved the Eighth Interim Fee Application.

29.     On July 15, 2020, CST filed its ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020 [Docket No. 13684]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee Application. Per the Fee Examiner's request, CST agreed to

---

[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.
[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.

certain minimal adjustments in its requested fees and expenses.[10] On October 26, 2020, the Court approved the Ninth Interim Fee Application, with the agreed-upon adjustments.

30.     On November 16, 2020, CST filed its tenth interim fee application, covering the period from June 1, 2020 through September 30, 2020 [Docket No. 15155]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Tenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On March 8, 2021, the Court approved the Tenth Interim Fee Application.

31.     On March 15, 2021, CST filed its eleventh interim fee application, covering the period from October 1, 2020 through January 31, 2021 [Docket No. 16064]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On August 3, 2021, the Court approved the Eleventh Interim Fee Application.

32.     On July 15, 2021, CST filed its twelfth interim fee application, covering the period from February 1, 2021 through May 31, 2021 [Docket No. 17381]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee

---

[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

Examiner for this period. On October 4, 2021, the Court approved the Twelfth Interim Fee Application.

33.     On November 15, 2021, CST filed its thirteenth interim fee application, covering the period from June 1, 2021 through September 30, 2021 [Docket No. 19229]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Thirteenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On January 28, 2022, the Court approved the Thirteenth Interim Fee Application.

34.     On May 27, 2022, CST filed its fourteenth interim fee application, covering the period from October 1, 2021 through January 31, 2022 [Docket No. 21056]. All services for which compensation is requested were performed for or on behalf of the Committee.

35.     This is CST's fifteenth interim fee application, covering the period from February 1, 2022 through May 31, 2022. All services for which compensation is requested were performed for or on behalf of the Committee.

### COMPENSATION AND REIMBURSEMENT REQUEST

36.     By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $280,727.00; and (b) expense reimbursements in the aggregate amount of $7,354.74. These amounts are allocated among the Commonwealth Title III Case, the PREPA Title III Case, the HTA Title III Case and the ERS Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $204,824.50 | $6,818.14 | $211,642.64 |

| | | | |
|---|---|---|---|
| PREPA Title III Case | $56,156.00 | $536.60 | $56,692.60 |
| HTA Title III Case | $19,746.50 | $0.00 | $19,746.50 |
| ERS Title III Case | $0.00 | $0.00 | $0.00 |
| **Total** | **$280,727.00** | **$7,354.74** | **$288,081.74** |

37.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were below the aggregated amount of the monthly budgets.

38.     As of today, CST has not been paid any amounts pertaining to its invoices for May 2022, for which it requests payment pursuant to this Fee Application.

39.     Also, to date, CST has received payments totaling $186,127.79 for services rendered during the Application Period excluding May 2022, which amount consists of $178,809.75 (representing 90% of the fees for services invoiced during the period of February 1, 2022 through April 30, 2022) and $7,318.04 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $101,953.95 remains unpaid.

40.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

41.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

42.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

43.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

44.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

45.     CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market

adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

46.     CST's professional services during the Application Period required an aggregate expenditure of 1,119.10 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (542.20 hours), Members (55.60 hours), Counsels (69.90 hours), Junior Partners (349.30 hours), Senior Associates (73.90 hours), and Paraprofessionals (28.20 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

47.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

## SUMMARY OF SERVICES

48.     During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional

services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[11]
For ease of reference and transparency purposes, CST created several matter numbers for its
representation of the Committee. The matter numbers are divided by Debtor and/or large tasks
the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00015 | Fee Application |
| 396-00017 | Claims Review |
| 396-00018 | Avoidance Actions |

**I.      General (Matter ID: 396-00002)**

(a)      <u>Case Administration (Task Code: B110)</u>

        Hours:     30.10        Fees:    $6,202.00

        49.      During the Application Period, CST, along with Paul Hastings, continued to advise
the Committee on general case administration. In order to efficiently track deadlines, organize
documents, and manage work streams, CST maintained a global task list and case calendar,
including a tracking chart for all adversary proceedings, non-Title III litigation, and non-judicial
affairs that have in effect in these proceedings. To minimize duplication of services, CST
developed procedures for allocating responsibilities among team members. CST continued
implementing interim and long-term strategies to maximize recoveries for general unsecured
creditors and held internal team conference calls and occasional meetings to discuss the status of
the Title III Cases and to manage these work streams.

---

[11] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of
service during the Application Period.

50.      Furthermore, CST executed a variety of tasks related to case administration and housekeeping including, among other things, handling of filing and service logistics, collaborated in the creation of information packages for meetings and/or public dissemination, fielding of general information requests, and provide status reports to co-counsel and the Committee on local current events and recent developments that affect the matters litigated in these proceedings and the Committee's interests.

(b)      Pleading Reviews (Task Code: B113)

>       Hours:      215.30      Fees:   $54,885.00

51.      During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services, advise and counseling to the Committee in addition to supporting Paul Hastings. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial litigated fronts like the multiple attempts at staying the implementation of the Commonwealth's confirmed Plan of Adjustment; dispute funds in certain special accounts; pending administrative expense claim motions; mediation; the objection litigation related to certain Proofs of Claim; challenges to the automatic stay; Avoidance Actions Trust's Litigation Procedures Motion; and the Title VI Qualifying Modifications filed by PRIFA and PRCCDA.

52.      CST also kept abreast on the issues on appeal before the First Circuit Court of Appeals, especially those contesting the confirmation of the Commonwealth's Plan of Adjustment.

(c)      Meeting of and Communications with Creditors (Task Code: B150)

>       Hours:      10.30      Fees:   $2,781.00

53.      During the Application Period, CST kept the Committee apprised of relevant developments in the Title III Cases, such as the avoidance action litigation and the transition into

the litigation trust, and out-of-court events that affect the Title III proceedings – such as legislative actions and Board hearings. CST participated in various telephone and virtual conferences, and assisted in the preparation of various documents and communiques for the Committee and other unsecured creditors, particularly those that involve both English and Spanish languages.

(d)    Court Hearings (Task Code: B155)

>    Hours:    10.90    Fees:    $2,733.00

54.    During the Application Period, CST attended as local counsel to all court hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared via telephone or virtual conferencing platform at each event. CST also handled the procurement of hearing transcripts.

(e)    Other Contested Matters (Task Code: B190)

>    Hours:    22.10    Fees:    $5,547.50

55.    During the Application Period, CST conducted research on various first-impression issues of Puerto Rico Law as it aided Paul Hastings and Special Litigation Counsel in the analysis and establishment of the Committee's position in matters related to the mediation, thinning recoveries, disclosure compliance, subordinance and classification of claims.

(f)    General Litigation (Task Code: B191)

>    Hours:    22.00    Fees:    $5,796.00

56.    During the Application Period, CST aided Paul Hastings and Special Litigation Counsel in various tasks, such as outreach efforts, preparation of communiques for the Committee, and research and analysis of legal issues in connection with claims assessment, contracts law, and the litigation trust; all this in association with the implementation of the Commonwealth's

confirmed Plan of Adjustment and the execution of the Committee's strategy as these Title III litigations continue.

(g)    <u>Plan and Disclosure Statement (Task Code: B320)</u>

Hours:    8.30      Fees:  $2,241.00

57.    It is particularly noteworthy that during the Application Period certain material interested parties in these Title III proceedings (which included CST Law) were compelled to comply with disclosure requirements per the Puerto Rico Puerto Rico Recovery Accuracy in Disclosures Act of 2021 (48 USC §2178). To the extent certain tasks applied to this Matter ID, CST tracked its work under the same.

## II.    PREPA (Matter ID 396-00006)

58.    During the Application Period CST collaborated with Paul Hastings and represented the Committee with respect to PREPA's Title III case. Among others, CST assisted and collaborated with Paul Hastings and Continental PLLC, the Committee's Special Litigation Counsel, in connection with the extensive review, editing analysis and discussion of multiple pleadings and dispositive motions, including co-plaintiffs' motions to strike certain motions to dismiss and affirmative defenses in responsive pleadings filed by defendants, defendants' answers to the Second Amended Complaint, defendants' Omnibus Motion to Dismiss and individual motions to dismiss the Second Amended Complaint, documents and attachments submitted by defendants in supports of their motions to dismiss, and the Court's opinions and orders with respect to said dispositive motions. CST also collaborated with Continental PLLC, the Committee's Special Litigation Counsel, on matters concerning Fuel Oil Litigation, extensive research of local law aspects raised by defendants in dispositive motions and concerning causes of action pursuant to Puerto Rico's Civil Code for rescission / resolution of contracts and available remedies in breach

of contract claims. During the Application Period and in connection with the Second Amended Complaint and arguments raised by defendants, CST also engaged in considerable efforts to procure and secure extensive documentary evidence from the Senate Special Investigation Commission on Fuel Oil Suppliers irregularities.

(a)     Pleadings Review (Task Code: B113)

> Hours:     22.50       Fees:    $5,932.00

59.     During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST considered crucial and highly contested issues, such as the Fuel Oil adversary proceedings, the Motion to Compel Mediation and Appointment of a Mediator, ongoing negotiations involving PREPA's FRBP 9019 Motion, pending Stay Relief Motions, and PREPA's ongoing motions to assume and reject certain power purchase agreements.

60.     CST also kept abreast of various appellate procedures stemming from PREPA's Title III case.

(b)     Other Contested Matters (Task Code: B190)

> Hours:     56.00       Fees:    $13,446.50

61.     During the Application Period, CST aided Paul Hastings and Special Litigation Counsel researching and analyzing various legal issues, especially for the Fuel Oil adversary proceedings and the procedures for bond issuance. As to the contentious matter of PREPA's RSA, CST coordinated strategy and local logistics in support of the Committee's outreach efforts with our constituents, including tasks such as researching legislative action and history, analysis of exposure and policy issues, and preparation of communiques and memoranda. CST's particular

expertise in local law and government groundwork was paramount in the establishment and execution of the Committee's strategy and counterarguments.

(c)    General Litigation (Task Code: B191)

> Hours:    87.10        Fees:    $21,904.00

62.    CST continued assisting Paul Hastings and Special Litigation Counsel with local execution of the Committee's strategy in response to the RSA and mediation. CST aided in the preparation of communiques and memoranda for the Committee, and research and analysis of caselaw and local law. These assessments also supported the Committee's efforts in the Fuel Oil adversary proceedings, and bond issuance matters.

(d)    Plan and Disclosure Statement (Task Code: B320)

> Hours:    44.30        Fees:    $11,426.00

63.    During the Application Period, CST aided Paul Hastings in various tasks in connection with the mediation related to the Board's proposed Plan of Adjustment. Particularly, CST assisted in the analysis of revenue bonds, special revenues, equitable remedies, and litigation trusts. CST also partook in delineating the Committee's strategy to garner better treatment of unsecured creditors in the proposed plan during mediation.

(e)    Restructurings (Task Code: B420)

> Hours:    9.50        Fees:    $2,223.00

64.    As mediation efforts were undertaken during the Application Period in connection with the Debtor's attempts to restructure its debt and the eventual filing of a proposed plan, CST Law team members were involved in the preparation of communiques and memoranda for the Committee and its constituents. CST participated in meetings with Paul Hastings counsellors to

outline the Committee's strategy for the mediation sessions and improve net recoveries for general unsecured creditors compared to what had been offered before.

### III.     HTA (Matter ID: 396-00007)

(a)     <u>Pleadings Review (Task Code: B113)</u>

Hours:     5.90          Fees:   $1,590.00

65.     During the Application Period, to provide a more rounded and comprehensive assistance to Paul Hastings in our co-representation of the Committee's interests, CST monitored the HTA-related adversary proceedings related to the disputed funds in certain HTA accounts. This, of course, in compliance with the applicable Rules of Professional Conduct.

(b)     <u>Other Contested Matters (Task Code: B190)</u>

Hours:     7.90          Fees:   $2,133.00

66.     During the Application Period, CST conducting research on various first-impression issues of Puerto Rico Law as it aided Paul Hastings and Special Litigation Counsel in the analysis and drafting of the Committee's position in matters related to bond recovery and valuation, in support of the upcoming proposed Plan of Adjustment filings.

(c)     <u>General Litigation (Task Code: B191)</u>

Hours:     31.40          Fees:   $7,477.00

67.     During the Application Period, CST aided Paul Hastings and Special Litigation Counsel in various tasks, such as preparation of communiques and memoranda for the Committee, and research and analysis of local law in connection with special revenues and preclusions. All this in association with the upcoming proposed Plan of Adjustment and related proceedings. CST provides a unique focused insight into the local issues.

(d)     <u>Plan and Disclosure Statement (Task Code: B320)</u>

Hours:     29.60          Fees:   $7,440.00

68.     During the Application Period, CST aided Paul Hastings in various tasks in connection with the Board's proposed Plan of Adjustment, its Disclosure Statement, and plan confirmation procedures. Particularly, CST assisted in the analysis of local law matters, particularly legislative action, as these impact the Debtor's proposed Plan; and participated in delineating the Committee's strategy in the fight for better treatment of unsecured creditors in the proposed Plan and during its confirmation proceedings.

**IV.     Fee Application (Matter ID: 396-00015)**

(a)     Fee / Employment Applications (Task Code: B160)

Hours:     18.50          Fees:   $4,050.00

69.     CST established a matter to keep track of the time incurred per the Fee Examiner's requests and pursuant to the Presumptive Standard Orders. For this matter, the time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare and submit – and eventual filing of – the fourteenth Interim Application.

70.     To the extent certain tasks undertaken pursuant to PRRADA applied to this Matter ID, CST tracked its work under the same.

(b)     Budgeting (Task Code: B161)

Hours:     7.50          Fees:   $2,025.00

71.     During the Application Period, CST prepared budgets, sub-budgets, and staffing plans pursuant to Fee Examiner's and Committee's requests and conversed with them and counsel for Paul Hastings regarding the matter.

**V.     Claims Review (Matter ID: 396-00017)**

72.    During the Application Period, CST, per Paul Hastings' request, continued to conduct an in-depth review of a considerable pool of proofs of claim filed by unsecured creditors against HTA, to provide the Committee with assessment concerning merits and potential exposure. CST conducted extensive due diligence in connection with said POCs, conducted legal research involving issues of local law and requested, requested and reviewed select files from the local court system and administrative agencies and reviewed related dispositive pleadings.

73.    During the Application Period CST also conducted extensive work and collaborated closely with Paul Hastings in relation to an in-depth review of a considerable pool of filed claims against PREPA and conducted assessment concerning merits and potential exposure and related legal research concerning matters of local law, in connection with special PREPA claims review project, which also entailed requesting and reviewing judicial case files and pleadings pending before local courts and administrative agencies concerning said claims.

74.    During the Application Period, CST also spent considerable time reviewing a substantial portion from a pool of 4,000 claims filed against the Commonwealth asserting liquidating amounts of less than $100,000 (part of convenience class pool) in order to evaluate strategy given potential dilution of recoveries for general unsecured creditors should all small claims be paid in full and to contest the Oversight Board's approach of liquidating all claims, regardless of merits. As a result of this exercise the Oversight Board agreed to lower the claim threshold for its proposed expedited review process from $100,000 to $75,000 and clarified to extent of the diligence with respect to such claims.

(a)    <u>Other Contested Matters (Task Code: B190)</u>

      Hours:    42.00        Fees:    $11,132.00

75.     During the Application Period, CST actively supported Paul Hastings counsel during the claims reconciliation process. Some of the tasks included review and analysis of certain Proofs of Claim and their supporting documents. In certain cases further research and analysis was needed to provide a thorough assessment of such Claims. CST's extensive research and analysis was instrumental in determining the viability of claims against the Debtors and developing the Committee's strategy in the face of the contentious challenges and possible diluting of recoveries for our creditors.

(b)     General Litigation (Task Code: B191)

        Hours:          64.70          Fees:   $15,904.00

76.     During the Application Period, CST continued working closely with Paul Hastings in the review of claims filed against the Debtors. This stage of the review project consisted of targeted in-depth review and claim valuation analysis to gain a better understanding of certain claims against the Debtors, their viability, and their impact on creditors' recoveries. Some of the claims required a review of the judicial casefile and analysis of the legal theory supporting the claim; in other instances, further legal research and assessment of local law was also needed. This information proved instrumental for the Committee in advocating for improvements to the treatment of its constituents.

(c)     Claims Administration and Objections (Task Code: B310)

        Hours:          199.00         Fees:   $50,117.00

77.     CST Law provided in-depth analysis of specific claims against the Debtor. To efficiently track and manage work streams and minimize duplication of services, CST maintained spreadsheets with our Paul Hastings colleagues to track the progress, review, and analysis of the claims in scope. The evaluation of the claim pools mandated the review of the Proofs of Claims

28

and their supporting documents, some judicial files, and analyze the legal basis of the claims. Specifically, as to HTA claims, the Committee relied heavily on CST's analysis of the claims to assess the scope of the potential exposure to the recoveries for the creditors, as Paul Hastings engaged the Oversight Board as part of the HTA restructuring process (Plan).

## VI.     Avoidance Actions (Matter ID: 396-00018)

78.     During the Application Period CST, who continued to represent the Committee with respect to the garden variety avoidance actions and in the Informal Resolution Process until the transfer of said claims to the Avoidance Actions Trust, continued to engage in communications with vendors and counsel who continued to provide information as part of Informal Resolution Process, to discuss contract coverage (fraudulent transfer claims) issues and defenses and theories in connection with 90-day preference claims, and continued to be involved in negotiations and settlement conversations with counsel for vendors that ultimately led to the settlement of one such avoidance action. As local counsel to the Committee, CST continued to collaborate and work closely with Brown Rudnick, counsel for the Special Claims Committee, to ensure an orderly and smooth transition of the claims to the Avoidance Actions Trust. This entailed extensive review of files and folders obtained by DGC, financial advisor to the Special Claims Committee to the Oversight Board, during the Informal Resolution Process.

79.     CST also engaged in multiple communications and information sessions with counsel for vendors during the Application Period to revise and secure extensions to existing tolling agreements and to discuss and explain nature and status of transition of avoidance actions, including tolled claims, to Avoidance Actions Trust and related procedures.

80.     During the Application Period CST also collaborated closely with Continental PLLC, the Committee's Special Litigation Counsel, in connection with the review and analysis of

defendants' Answers to the Second Amended Complaint and related dispositive motions, omnibus motion to dismiss, individual motions to dismiss, and corresponding analysis and extensive research of local law issues raised by defendants related to co-plaintiffs' causes of action pursuant to Puerto Rico's Civil Code.

(a)    Case Administration (Task Code: B110)

Hours:    5.60        Fees:    $1,512.00

81.    During the Application Period, CST utilized and implemented strategies to streamline the workflow associated with the administration of each action, including staff meetings, shared information matrix, and maintained databases. As such, CST assisted Paul Hastings and Special Litigation Counsel in the ongoing litigation of remaining avoidance actions at their varying stages. CST's main tasks involved interfacing with vendor defendants, reviewing vendor's responses in connection with the Information Exchange Process, negotiate tolling agreements with vendors, collaborating in the transition process to the litigation trust, assist in preference claim assessments, and participating in settlement negotiations.

(b)    Avoidance Action Analysis (Task Code: B180)

Hours:    84.90        Fees:    $21,186.50

82.    During the Application Period, as the remaining active avoidance actions progressed through the Informal Resolution Process, CST Law team members actively collaborated with Special Litigation Counsel in the negotiations of tolling agreements or settlement of the actions, while in other instances assisted in further assessment of preference claims. Every case presents a different set of circumstances that require individualized treatment to determine how to move forward in each litigation. Therefore, CST also continued providing first-level review and legal analysis of new and supplementing data produced by vendors when required for further

assessment, or legal research on the arguments asserted by vendor defendants. It is notable that CST Law continued these services while also ensuring a smooth transition of the avoidance actions into the Avoidance Actions Litigation Trust, pursuant to the Commonwealth's confirmed Plan of Adjustment.

(c)     Other Contested Matters (Task Code: B190)

     Hours:    26.10     Fees:  $6,807.00

83.     As some of the avoidance actions progressed to more contentious litigations, CST worked closely with Special Litigation Counsel as vendor defendants asserted newer more complex defenses. During the Application Period CST's legwork consisted of researching and analyzing a wide variety of some of these legal issues, while engaging opposing counsel.

(d)     General Litigation (Task Code: B191)

     Hours:    32.70     Fees:  $7,980.00

84.     As some of these avoidance actions moved forward through litigation during the Application Period, CST continued supporting co-counsel in executing Plaintiffs' strategy. For certain proceedings, further assessment of preference claims was needed, in addition to reviewing more documents produced as part of the information exchange process. Furthermore, these reviews and analysis were instrumental during the seamless transition into the Avoidance Actions Litigation Trust.

## ATTENDANCE AT HEARINGS

85.     In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following

summary regarding the attendance of CST professionals at Court hearings, as local counsel to the

Official Committee of Unsecured Creditors:

- February 2, 2022: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- February 16, 2022: Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- February 17, 2022: Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- March 23, 2022: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- April 28, 2022:  Oral argument. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- May 18, 2022: Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

86.    As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

- Adversary Proceedings Challenging Liens Asserted by Holders of GO Bonds ("GO Lien Challenges"): As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the GO Lien Challenges are resolved.

- Omnibus Objection of Oversight Board and Committee to 2012-2014 GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the Omnibus GO Claims Objections are resolved.

- Adversary Proceeding against Underwriters, etc.:  Under the Commonwealth plan of adjustment, the Avoidance Action Trustee is taking over the prosecution of the underwriter litigation.

- <u>Garden-Variety Avoidance Actions</u>: Under the Commonwealth plan of adjustment, the claims were transferred to the Avoidance Actions Trust during the Application Period and Avoidance Action Trustee effectively took over the prosecution of the garden variety avoidance actions and underwriter claims.

- <u>Other Co-Plaintiff Adversary Proceedings</u>:  As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the following adversary proceedings are resolved:

  - o  Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and
  - o  Two adversary proceedings regarding lien scope issues with respect to ERS bonds [Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367] and six adversary proceedings regarding ultra vires issues with respect to ERS Bonds [Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361].

  Per Judge Swain's April 10, 2020 stay order, the following adversary proceedings (in which the Committee has been appointed as co-plaintiff/co-trustee with the Oversight Board) remain stayed pending confirmation of an HTA plan of adjustment or further order of the court.

  - o  Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

87.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

### ACTUAL AND NECESSARY DISBURSEMENTS

88.     As described in <u>Exhibit D</u> hereto, CST disbursed $7,354.74 as expenses incurred in providing professional services during the Application Period.

89.     Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

90.    The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

91.    CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

92.    Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
>> (i) the time spent on such services;
>>
>> (ii) the rates charged for such services;

(iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

93.     In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

94.     The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee

by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

95.     In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as Schedule 1,  (i) allowing  interim compensation for professional services rendered during the Application Period in the amount of $280,727.00 and expense reimbursements in the amount of $7,354.74; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and

reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: July 15, 2022

*/s/Juan J. Casillas-Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*