CERTIFIED TRANSLATION

# COMMONWEALTH OF PUERTO RICO COURT OF GENERAL JUSTICE COURT OF FIRST INSTANCE SUPERIOR COURT OF SAN JUAN

| | |
|---|---|
| **CARLOS E. TORRES VIADA** <br> **PLAINTIFF** <br><br> **V.** <br><br> **COMMONWEALTH OF PUERTO RICO, ABC INSURRANCE** <br><br> **RESPONDENTS** | **CIVIL NUMB.** <br><br> **ROOM:** <br><br> **REGARDING: Complaint against the State; Damages, violation of civil rights, battery, declaratory judgement.** |

When a new truth comes upon the earth, or a great idea necessary for mankind is born, where does it come from? Not from the police force, or the prosecuting attorneys, or the judges, or the lawyers, or the doctors. Not there. It comes from the despised and the outcasts, and it comes perhaps from jails and prisons. It comes from men who have dared to be rebels and think their thoughts, and their faith has been the faith of rebels.[1]

What do you suppose would have happened to the workingmen except for these rebels all the way down through history? Think of the complacent cowardly people who never raise their voices against the powers that be. If there had been only these, you gentlemen of the jury would be hewers of wood and drawers of water. You gentlemen would have been slaves. You gentlemen owe whatever you have and whatever you hope to these brave rebels who dared to think, and dared to speak, and dared to act.[2]

---

[1] William M. Kunstler in his closing argument in the case of *The State of Illinois v. Abbie Hoffman, et. al.*, citing Clarence Darrow. See: Michael S. Lief, H. Mitchell Caldwell & Ben Bycel, <u>Ladies and gentlemen of the jury.</u> Touchstone, New York, 1998, p.112.

[2] *Ibidem*



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

## CLAIM BEFORE THE

**HONORABLE COURT:**

**APPEARING,** Mr. Carlos E. Torres Viada represented by the undersigned attorneys, who very respectfully, **EXPOSE, ARGUE and REQUEST;**

1. The <u>Plaintiff;</u> Mr. Carlos E. Torres Viada ( "Mr. Torres Viada" / " Plaintiff") is of legal age, single, and works as a lawyer. With postal and physical work address at: Calle Eduardo Riera #110 with Araez St, Mayagüez, P.R. 00680, phone number: 787-813-6575 and email: torresviada@yahoo.com.

   _____

2. The <u>Respondent,</u> the Commonwealth of Puerto Rico ("ELA"), has the capacity of filing a complaint and be the object of a complaint, and is represented by the Interim Secretary of Justice; Attn. Inés Del C. Carrau Martínez, with postal address; PO Box 902019, San Juan P.R. 00902-0192.

3. The <u>Co-Respondent</u> of unknown name, designated here as Insurance ABC, issued a policy on behalf of the ELA that covers the claims, hereinafter presented, either partially or completely.

4. On July 11, 2020 Mr. Torres Viada was participating in a protest ("Protest") on Méndez Vigo Street, and its vicinity, in the City of Mayagüez, P.R.

5. A multitude of citizens were participating in the Protest, alongside Mr. Torres Viada.

6. The Protest was taking place in tandem with an event in which the Municipal Administration of Mayagüez, Governor Wanda Vázquez Garced and other officials and citizens were participating.

7. Upon Mr. Torres Viada expressing -in the Protest- the imperative need for the exit "resignation" of Governor Vázquez Garced from the position she occupied, several on-duty Police officers and other representatives of the State abruptly intervened with the former, attempting to arrest him and pushing him until removing him from the area he was located in.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

8. Mr. Torres Viada was removed from the place where he was spotted by the Police and other representatives of the State.

9. In several instances -in a public manner- the Police and other representatives of the State pushed, intimidated Mr. Torres Viada and attempted to deprive him of his freedom.

10. The Police and other representatives of the State -also- impeded Mr. Torres Viada from remaining in the vicinity of Méndez Vigo Street and from being able to continue participating freely in the Protest.

11. Given the above, Mr. Torres Viada was impeded from continuing to participate in the Protest.

12. The -abovementioned- actions were carried out publicly.

13. The -abovementioned- actions by the State were in violation of Mr. Torres Viada's constitutional rights.

14. The State, through the Puerto Rico Police Department and other representatives, acted in violation of Mr. Torres Viada's right to freedom of expression, right to peaceful assembly, and right to human dignity.

15. The State, through the Puerto Rico Police Department and other representatives, acted negligently violating (Mr. Torres Viada's) abovementioned constitutional rights.

16. The State, through the Puerto Rico Police Department and other representatives, negligently made excessive use of force against Mr. Torres Viada while removing him from the Protest.

17. The States actions against Mr. Torres Viada were excessive, negligent and unreasonable.

18. Mr. Torres Viada suffered damages because of the violations and the excessive use of force incurred by the State as mentioned above.

19. Mr. Torres Torres Viada was -publicly- removed from the Protest, thus having his right to freedom of expression and his right to peaceful assembly curtailed.

20. The State is required to vindicate the grievances suffered by Mr. Torres Viada given the abovementioned negligent actions.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

21. The only remedy for the abovementioned violation of the cited constitutional rights is monetary compensation.

22. Said monetary compensation does not imply that the State can, on a future occasion, again violate Mr. Torres Viada's rights.

23. Mr. Torres Viada suffered damages as a consequence of the violation of his constitutional rights, as cited.

24. Mr. Torres Viada is claiming $75,000.00 as compensation for the damages suffered as a consequence of the State's negligent actions in violation of his constitutional rights.

25. The State is responsible for the payment of the cited amount.

26. Insurance ABC responds for the above cited claim either partially or completely.

27. In compliance with the *Complaints Against the State Act* on July 24, 2020 a notification of intention to file a complaint and a petition for preservation of evidence was sent (via certified mail with proof of receipt[2]) to the ELA via the Interim Secretary of Justice, Attn. Inés Del C. Carrau Martínez.

28. Section 4 of Art. II of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A., Volume 1, enshrines the fundamental right to the freedom of expression. <u>As such, the Charter of Rights protects Puerto Rican citizens against any governmental action or law that restricts the freedom of speech or press, or the right of a people to gather in peaceful assembly and ask of the government for reparations for grievances</u>. As a corollary of the freedom of expression, people will be allowed to associate and organize freely for any legal ends, with the exception of military or quasi-military organizations. (Emphasis added). <u>U.P.R. v. Laborde Torres</u>, 2010 TSPR 225.

29. The constitutional guarantee to the freedom of speech encompasses the general realm of the freedom of conscience, of thought, of expression, and the activities pertinent to fully exercising, with the most extensive freedom, the totality of these rights. Also, it empowers the full development of the individual and stimulates the free exchange and diversity of ideas, vital elements of the democratic process. <u>U.P.R. v. Laborde Torres</u>, *supra.*

30. Among individual liberties, the freedom of expression is probably the most essential, once the right to life and physical freedom have been guaranteed. The freedom of expression is the quintessence of a democratic society. In a

---

2 Tracking number 70183090000158599519 / received July 29, 2020

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

multidimensional manner, in the constellation of democratic values, it enjoys a peculiar primacy. U.P.R. v. Laborde Torres, *supra*.

31. **We shall affirm once more that the freedom of expression protects, also, controversial messages, ideas that not many (people) share and even protests that some may deem reproachable.** The honorable Judge Douglas of the Supreme Court of the United States expressed with clarity and eloquence this essential aspect of freedom of expression in *Terminiello v. Chicago,* 337 US 1, 4-5 (1949): *A function of free speech … is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea… the alternative would lead to standardization of ideas by legislatures, courts, or dominant political or community groups.* **Public officials cannot suppress the expression of any person simply because they do not share it or it disgusts them,** nor can they suppress it only because those who oppose said expression have not manifested their own message; even less may they do it because they consider that said expression is a minority point of view. (Emphasis Added).[3]

32. In Puerto Rico, civil responsibility, which is derived from the culpable or negligent acts or omissions is ruled by that which is stipulated in Art.1802 of the Civil Code, 31 L.P.R.A. Section 5141. In order for civil responsibility to exist, according to said article, it is necessary for the following elements to coincide: a damage, a negligent action or omission, and the corresponding causal relationship between the damage and the negligent or culpable conduct. Toro Aponte v. E.L.A., 97 TSPR 19.

33. In the matter of non-contractual responsibility, an illicit act occurs when the general duties of correctness or correct conduct are violated, duties that are not written in the codes, but which represent the minimum implicit assumption of the order of social life. Toro Aponte v. E.L.A., *supra*.

---

[3] José Julián Álvarez González, Las libertades de expresión y prensa en Puerto Rico, Ed. Temis, Bogotá, Colombia. 2009, pp.5-6. (ISBN 0010600401).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

34. The Complaints against the State Act constitutes a renunciation of the sovereign to their immunity that, although broad, does not represent an unlimited authorization against the protection that assists them. This Act is, rather, a partial renunciation of the State's immunity, which stipulates the specific circumstances under which it assented to being sued. Among these, the Act imposed vicarious liability onto the State, authorizing judicial actions against it over damages caused to a person or property due to the culpable or negligent acts or omissions of its employees, officials or agents in the fulfilment of their duties. It authorized, as well, complaints based on the Constitution, the laws or regulations of Puerto Rico. Toro Rivera v. E.L.A. and others. 2015 TSPR 172.

    _____

35. The existence of responsibility by an employer, regarding payment over damages resulting from an agent's actions, is predicated on the culpability or negligence by the agent. By definition, the agent's culpability or negligence (creator of the employer's responsibility) entails an unjustified act, contrary to legal norms. Sánchez Soto v. E.L.A., 128 DPR 497 (1991).

36. Although under certain circumstances the criminal, excessive, or unnecessary act may be a relevant factor in corroborating whether the agent has acted or not within the limits of their duties, this criminal act or display of excessive violence is carried out as an incident in the protection of the employer's rights and not in the protection of the personal interests of the agent, then the employer would be responsible. Sánchez Soto v. E.L.A., *supra*.

37. The fact that in and of itself, by acting within its functions, a police officer may exercise excessive use of force, does not automatically exclude the State's responsibility as an employer. The abovementioned excess rather defines said responsibility if it is based on the purpose of benefiting the State. Rodríguez v. Pueblo, 75 DPR 401 (1953).

38. We have resolved that when a citizen presents a complaint alleging that the State has violated a constitutional right, the courts are obliged to provide the remedies that effectively vindicate the grievance endured and reduce the damage caused by the State. Weber Carrillo v. E.L.A. et al. 2014 TSPR 46.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

39. Section 1983 of the federal Civil Rights Act, 42 U.S.C., is a vehicle for citizens to assert the rights granted to them by the Constitution and the laws of the United States when facing those who abuse their power when acting under the guise of state authority. In order for the plaintiff to prevail, they must demonstrate that the respondent acted under the guise of their authority and that said action deprived them of the rights guaranteed by the Constitution and laws of the United States. <u>Leyva and others vs. Aristud and others</u>, 132 DPR 489 (1993).

40. The federal Civil Rights Act, does not preclude State actions founded upon non-contractual responsibilities. In Puerto Rico responsibility can be attributed to the State over the negligent actions of its agents, under Articles 1802 and 1803 of the Civil Code, 31 L.P.R.A. Sections 5141 and 5142, and with independence of judgement that is imposed under the protection of the federal Civil Rights Act, U.S.C. Section 1983, regarding the personal responsibility of the State's agents that carry out supervisory duties. <u>Leyva and others vs. Aristud and others</u>, *supra.*

41. In order for a plaintiff to prevail in a claim such as that under consideration, the concurrence of several elements must be proven. See <u>Leyva and others vs. Aristud and others</u>, *supra.* First, they must prove that the person that caused the damage was an agent, official, or employee of the State and that they were acting in their official capacity at the time of causing the damage. "Sufficient juridic nexus between the negligent action by the police and the interests of the State, by reason of the exercise of express or implicit duties. Sánchez Soto, et al v. E.L.A., res. on June 7, 1991, 128 DPR 497, 506 (1991). Second, it is necessary that the plaintiff proves that said agent, official or employee acted within the realm of their duties. Rodríguez vs. Pueblo, 75 D.P.R. 401 (1953). In the third place, the plaintiff must prove that the actions by the employee of the E.L.A. was negligent and not intentional. Finally, a causal relationship between the culpable conduct and the damage caused must be proven. Art. 6, Act Number 104, supra,. 32 L.P.R.A. sec. 3081. (d). See, Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199, 206, 207 (1963); Meléndez v. E.L.A., 81 D.P.R. 824, 828 (1960). <u>Leyva and others vs. Aristud adn others</u>, *supra.*

42. Having fulfilled said requirements, the E.L.A. is subject to responsibility in any of the following premises: (1) when the employee, agent or official causes a damage due to


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

their sole responsibility or negligence, while carrying out their duties and acts in their official capacity; (2) when the employee, agent or official causes a damage while carrying our their duties and acts in their official capacity due to a preponderantly negligent action, even when said conduct has certain intentional elements. See, Galarza Soto v. E.L.A., 109 D.P.R. 179 (1979); Morales Garay v. Roldán Coss, 110 D.P.R. 701 (1981); (3) when, despite the fact that the damage was directly caused by an entirely intentional act that the State does not respond for, there were other separate negligent acts as co-drivers of the damages for which the State must respond. See: Negrón v. Orozco Rivera, 113 D.P.R. 712 (1983); Hernández v. E.L.A., 116 DPR 293 (1985); and (4) when the State, through its agents, is negligent by omission by not fulfilling a duty imposed by regulations and the Constitution. Leyva and others vs. Aristud and other, *supra.*

43. The Branches of Government are impeded from "activating or deactivating" the Constitution at their will. *See Boumediene v. Bush, 553 US 723 (2008).*

44. The power of the courts to issue Declaratory Judgements is not limited to those cases in which the parties, or one of them, may have a cause for action that emanates from a different law than that of Declaratory Judgements. Moscoso v. .Rivera, 76 DPR 481 (1954).

45. The declaratory judgement is a "remedial and prophylactic mechanism that allows to anticipate the elucidation of the merits of any claim before the courts, as long as a potential danger exists against whomever requests it". Mayor of Guayama v. ELA, 192 DPR 329, 333 (2015). It is available regardless of whether other remedies exist. Rule 59.1 of Civil Procedure, 32 LPRA Ap.V. Senate of PR v ELA, 2019 TSPR 138.

46. The declaratory sentence has the efficacy and vigor of a definitive sentence or resolution. Íd. It is issued in processes in which the facts demonstrate that a substantial controversy exists between parties that have legally adverse. It has the purpose of dissipating a juridic uncertainty and contributing to social peace. See: Suárez v. C.E.E. I, 163 DPR 347, 354 (2004). It is adequate as a solution to constitutional arguments. Asoc. de Periodistas v. González, 127 DPR 704, 724 (1991). Senate of PR v.ELA, supra.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

47. The Plaintiff requests that this Court issues a declaratory sentence regarding the State's actions against him; declaring said actions unreasonable, excessive, negligent and in violation of the Plaintiff's constitutional rights.

48. The State is obligated to respect and enforce the Constitution.

49. The State is impeded from depriving a citizen of their right to freedom of expression, the right to peaceful assembly or to act against their dignity.

50. The State – faced with statements such as those made by Mr. Torres Viada – cannot remove a citizen from a protest and deprive them of their constitutional rights.

51. In the present case, the State violated Mr. Torres Viada's constitutional rights by forcefully removing him from the Protest, and by depriving him of continuing to protest.

52. The State's actions had the objective of silencing Mr. Torres Viada's opinion and to silence the opinions of the rest of the protestors that saw what happened during the Protest.

53. The abovementioned actions by the State, must be condemned by this Court.

54. A court will concede whatever proceeds under the law in accordance with the facts that were proven. Therefore, Rule 43.6 of Civil Procedure, 32 L.P.R.A. Ap.III, stipulates that the remedy that the party in favor of whom the sentence is dictated has a right to [access] will be conceded regardless of what they may have or not requested in their allegations. <u>Rivera Flores v. Cia. ABC</u>, 95 TSPR 20.

**BY VIRTUE OF THE EXPOSITION ABOVE,** we very respectfully request that this Honorable Court, upon completing the required processes, issues a *declaratory judgement* in favor of Mr. Torres Viada and declares the present *complaint* **GRANTED**, condemning the Respondents to the payment of the amount claimed, together with any other declaration that may proceed in terms of justice and law.

**RESPECTFULY SUBMITTED.** On this day, October 1, 2020.

*Signature / Donald R. Milán Guindín*      *f/Salvador Tío Fernández* **ATTN. DONALD R.**
*MILÁN GUINDÍN*      **ATTN. SALVADOR TÍO FERNÁNDEZ**



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

RUA: 19,887 / Bar Member 20,733  
USDC No. 303904  
P.O. Box 1565  
Lajas, P.R. 00667  
Tel. (787) 365-1370  
Email: guindinmilan@yahoo.com

RUA 3,961 / Bar Member 5,228  
602 Ave. Muñoz Rivera Fl. 6  
San Juan, P.R. 00918  
Tel: 787-294-9260  
email: salvadorelias@gmail.com

*Signature / Marín González Vélez*  
**ATTN. MARTÍN GONZÁLEZ VÉLEZ**  
RUA: 15,100 / Bar Member 16,740 P.O. Box 591  
Mercedita, PR 00715-0591  
Tel. (787) 840-5600  
Fax (787) 841-5607  
Email: despachomgv.mggv@gmail.com

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.