# United States Court of Appeals
## For the First Circuit

No. 22-1119

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING
CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE
EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC
BUILDINGS AUTHORITY,

Debtors,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors, Appellees, Cross-Appellants,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtor, Appellee,

v.

COOPERATIVA DE AHORRO Y CREDITO ABRAHAM ROSA; COOPERATIVA DE
AHORRO Y CREDITO DE CIALES; COOPERATIVA DE AHORRO Y CREDITO DE
JUANA DIAZ; COOPERATIVA DE AHORRO Y CREDITO DE RINCON;
COOPERATIVA DE AHORRO Y CREDITO DE VEGA ALTA; COOPERATIVA DE

AHORRO Y CREDITO DR. MANUEL ZENO GANDIA,

Objectors, Appellants, Cross-Appellees,

SUIZA DAIRY CORP.,

Objector, Claimant, Appellant, Cross-Appellee,

LUIS F. PABON BOSQUES; RAUL MARTINEZ PEREZ; ELVIN A. ROSADO MORALES; CARLOS A. ROJAS ROSARIO; RAFAEL TORRES RAMOS,

Creditors, Appellants, Cross-Appellees,

DESARROLLADORA ORAMA, S.E.; C.O.D. TIRE DISTRIBUTORS IMPORTS ASIA, INC.; CORREA TIRE DISTRIBUTOR INC.; WORLD WIDE TIRE, INC.; SEQUERIA TRADING CORPORATION; SABATIER TIRE CENTER, INC.; VICTOR LOPEZ CORTES, INC.; MULTI GOMAS, INC.; JOSE COLLAZO PEREZ; IVELISSE TAVARES MARRERO; MANUEL PEREZ ORTIZ; CORAL COVE, INC.; SUCESION ANGEL ALVAREZ PEREZ; ANTONIO COLON SANTIAGO; COOPERATIVA DE AHORRO Y CREDITO DE AGUADA; VILMA TERESA TORRES LOPEZ; VIVIANA ORTIZ MERCADO; ORLANDO TORRES BERRIOS; GERMAN TORRES BERRIOS; JUAN ALBERTO TORRES BERRIOS; VHERMANOS TORRES TORRES, INC.; CORPORACION PLAYA INDIA, S.E.; MARIANO RAMOS GONZALEZ; RAMON MORAN LOUBRIEL; RAFAEL MORAN LOUBRIEL; ANA MORAN LOUBRIEL; SAN GERONIMO CARIBE PROJECT, INC.; CARIBBEAN AIRPORT FACILITIES INC.; ESTATE OF RAUL DE PEDRO & DIANA MARTINEZ; ALFONSO FERNANDEZ CRUZ; SUN AND SAND INVESTMENTS, CORP.; FDR1500, CORP.; MARGARETA BLONDET; SUCESION COMPUESTO POR MARIA I. RUBERT BLONDET; SONIA RUBERT BLONDET; MARGARITA RUBERT BLONDET; SONIA RUBERT, Administradora; MANUEL A. RIVERA-SANTOS; JORGE RIVERA-SANTOS; CARLOS MANUEL RIVERA-SANTOS; PABLO MELENDEZ BRULLA; SUCESION AGUSTIN RODRIGUEZ COLON; GLORIA M. ESTEVA MARQUES; SUCESION MANUEL MARTINEZ RODRIGUEZ; LUIS REYES FEIKERT; JORGE RAMON POZAS; MIRIAM SANCHEZ LEBRON; JUAN A. TAPIA ORTIZ; ANTONIO PEREZ COLON,

Claimants, Appellees,

PFZ PROPERTIES, INC.; OSCAR ADOLFO MANDRY APARICIO; MARIA DEL CARMEN AMALIA MANDRY LLOMBART; SELMA VERONICA MANDRY LLOMBART; MARIA DEL CARMEN LLOMBART BAS; OSCAR ADOLFO MANDRY BONILLA; GUSTAVO ALEJANDRO MANDRY BONILLA; YVELISE HELENA FINGERHUT MANDRY; MARGARET ANN FINGERHUT MANDRY; VICTOR ROBERT FINGERHUT MANDRY; JUAN CARLOS ESTEVA FINGERHUT; PEDRO MIGUEL ESTEVA FINGERHUT; MARIANO JAVIER MCCONNIE FINGERHUT; JANICE MARIE MCCONNIE FINGERHUT; VICTOR MICHAEL FINGERHUT COCHRAN; MICHELLE ELAINE FINGERHUT COCHRAN; ROSA ESTELA MERCADO GUZMAN; EDUARDO

JOSE MANDRY MERCADO; SALVADOR RAFAEL MANDRY MERCADO; MARGARITA
ROSA MANDRY MERCADO; ADRIAN ROBERTO MANDRY MERCADO; VICENTE
PEREZ ACEVEDO; CORPORACION MARCARIBE INVESTMENT; DEMETRIO AMADOR
INC.; DEMETRIO AMADOR ROBERTS; MARUZ REAL ESTATE CORP.; LORTU-TA
LTD., INC.; LA CUARTEROLA, INC.; JUAZA, INC.; CONJUGAL
PARTNERSHIP ZALDUONDO-MACHICOTE; FRANK E. TORRES RODRIGUEZ; EVA
TORRES RODRIGUEZ; FINCA MATILDE, INC.; JORGE RAFAEL EDUARDO
COLLAZO QUINONES,

Objectors, Claimants, Appellees,

ANTONIO MARTIN CERVERA; MARIA TERESITA MARTIN; WANDA ORTIZ
SANTIAGO; NANCY I. NEGRON-LOPEZ; GROUP WAGE CREDITORS; YASHEI
ROSARIO; ANA A. NUNEZ VELAZQUEZ; EDGARDO MARQUEZ LIZARDI; MARIA
M. ORTIZ MORALES; ARTHUR SAMODOVITZ; MIGUEL LUNA DE JESUS;
ISMAEL L. PURCELL SOLER; ALYS COLLAZO BOUGEOIS; MILDRED BATISTA
DE LEON; JAVIER ALEJANDRINO OSORIO; SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU); INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; MAPFRE PRAICO INSURANCE COMPANY; CERTAIN CREDITORS WHO
FILED ACTIONS IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO; MED CENTRO, INC., f/k/a Consejo de
Salud de la Comunidad de la Playa de Ponce, Inc.; ASOCIACION DE
JUBILADOS DE LA JUDICATURA DE PUERTO RICO; HON. HECTOR URGELL
CUEBAS; COOPERATIVA DE AHORRO Y CREDITO VEGABAJENA; UNIVERSITY
OF PUERTO RICO RETIREMENT SYSTEM TRUST; PETER C. HEIN; MIRIAM E.
LIMA COLON; BETZAIDA FELICIANO CONCEPCION; ANGEL L. MENDEZ
GONZALEZ; ASOCIACION DE MAESTROS PUERTO RICO; ASOCIACION DE
MAESTROS DE PUERTO RICO-LOCAL SINDICAL; MORGAN STANLEY & CO.
LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC;
SANTANDER SECURITIES LLC; SIDLEY AUSTIN LLP; BMO CAPITAL MARKETS
GKST, INC.; CITIGROUP GLOBAL MARKETS INC.; SAMUEL A. RAMIREZ &
CO., INC.; MESIROW FINANCIAL, INC.; MERRILL LYNCH, PIERCE,
FENNER & SMITH INC.; MERRILL LYNCH CAPITAL SERVICES, INC.;
BARCLAYS CAPITAL INC.; RBC CAPITAL MARKETS, LLC; RAYMOND JAMES &
ASSOCIATES, INC.; COMMUNITY HEALTH FOUNDATION OF P.R. INC.;
QUEST DIAGNOSTICS OF PUERTO RICO, INC.; U.S. BANK TRUST NATIONAL
ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and
PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; U.S. BANK
NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds
and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; NILSA
CANDELARIO; EL OJO DE AGUA DEVELOPMENT, INC.; PEDRO JOSE NAZARIO
SERRANO; JOEL RIVERA MORALES; MARIA DE LOURDES GOMEZ PEREZ;
HECTOR CRUZ VILLANUEVA; LOURDES RODRIGUEZ; LUIS M. JORDAN
RIVERA; TACONIC CAPITAL ADVISORS LP; AURELIUS CAPITAL
MANAGEMENT, LP; CANYON CAPITAL ADVISORS LLC; FIRST BALLANTYNE
LLC; MOORE CAPITAL MANAGEMENT, LP; PUERTO RICO FISCAL AGENCY AND

FINANCIAL ADVISORY AUTHORITY; HON. PEDRO R. PIERLUISI URRUTIA;
UNITED STATES, on behalf of the Internal Revenue Service;
ASOCIACION PUERTORRIQUENA DE LA JUDICATURA, INC.; FEDERACION DE
MAESTROS DE PUERTO RICO, INC.; GRUPO MAGISTERIAL EDUCADORES(AS)
POR LA DEMOCRACIA, UNIDAD, CAMBIO, MILITANCIA Y ORGANIZACION
SINDICAL, INC.; UNION NACIONAL DE EDUCADORES Y TRABAJADORES DE
LA EDUCACION, INC.; MARIA A. CLEMENTE ROSA; JOSE N. TIRADO
GARCIA, as President of the United Firefighters Union of Puerto
Rico,

Objectors, Appellees,

VAQUERIA TRES MONJITAS, INC.; BLACKROCK FINANCIAL MANAGEMENT,
INC.; EMSO ASSET MANAGEMENT LIMITED; MASON CAPITAL MANAGEMENT,
LLC; SILVER POINT CAPITAL, L.P.; VR ADVISORY SERVICES, LTD;
AURELIUS CAPITAL MANAGEMENT, LP, on behalf of its managed
entities; GOLDENTREE ASSET MANAGEMENT LP, on behalf of funds
under management; WHITEBOX ADVISORS LLC, on behalf of funds
under management; MONARCH ALTERNATIVE CAPITAL LP, on behalf of
funds under management; TACONIC CAPITAL ADVISORS L.P., on behalf
of funds under management; ARISTEIA CAPITAL, LLC, on behalf of
funds under management; FARMSTEAD CAPITAL MANAGEMENT, LLC, on
behalf of funds under management; FOUNDATION CREDIT, on behalf
of funds under management; CANYON CAPITAL ADVISORS LLC, in its
capacity as a member of the QTCB Noteholder Group; DAVIDSON
KEMPNER CAPITAL MANAGEMENT LP, in its capacity as a member of
the QTCB Noteholder Group; SCULPTOR CAPITAL LP, in its capacity
as a member of the QTCB Noteholder Group; SCULPTOR CAPITAL II
LP, in its capacity as a member of the QTCB Noteholder Group;
AMBAC ASSURANCE CORPORATION; ANDALUSIAN GLOBAL DESIGNATED
ACTIVITY COMPANY; CROWN MANAGED ACCOUNTS, for and on behalf of
Crown/PW SP; LMA SPC, for and on behalf of Map 98 Segregated
Portfolio; MASON CAPITAL MASTER FUND LP; OAKTREE-FORREST MULTI-
STRATEGY, LLC (SERIES B); OAKTREE OPPORTUNITIES FUND IX, L.P.;
OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P.; OAKTREE
OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE HUNTINGTON
INVESTMENT FUND II, L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.;
OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE
OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OAKTREE VALUE
OPPORTUNITIES FUND HOLDINGS, L.P.; OCEANA MASTER FUND LTD.;
OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.;
PWCM MASTER FUND LTD.; REDWOOD MASTER FUND, LTD.; BANK OF NEW
YORK MELLON; OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ASSURED
GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; OFFICIAL
COMMITTEE OF RETIRED EMPLOYEES; NATIONAL PUBLIC FINANCE
GUARANTEE CORP.; FINANCIAL GUARANTY INSURANCE COMPANY;
AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB

Debt Recovery Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as Collateral Monitor for the GDB Debt Recovery Authority; ATLANTIC MEDICAL CENTER, INC.; CAMUY HEALTH SERVICES, INC.; CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES PRIMARY HEALTH CARE SERVICES, INC.; CORP. DE SERV. MEDICOS PRIMARIOS Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC.; CENTRO DE SALUD DE LARES, INC.; CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANER, INC.; GNMA & US GOVERNMENT TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; MORTGAGE-BACKED & US GOVERNMENT SECURITIES FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; PUERTO RICO RESIDENTS BOND FUND I, f/k/a Puerto Rico Investors Bond Fund I; PUERTO RICO RESIDENTS TAX-FREE FUND, INC., f/k/a Puerto Rico Investors Tax-Free Fund, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND II, INC., f/k/a Puerto Rico Investors Tax-Free Fund II, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND III, INC., f/k/a Puerto Rico Investors Tax-Free Fund III, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND IV, INC., f/k/a Puerto Rico Investors Tax-Free Fund IV, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND V, INC., f/k/a Puerto Rico Investors Tax-Free Fund V, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND VI, INC., f/k/a Puerto Rico Investors Tax-Free Fund VI, Inc.; TAX-FREE FIXED INCOME FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund, Inc.; TAX-FREE FIXED INCOME FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund II, Inc.; TAX-FREE FIXED INCOME FUND III FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund III, Inc.; TAX-FREE FIXED INCOME FUND IV FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund IV, Inc.; TAX-FREE FIXED INCOME FUND V FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund V, Inc.; TAX-FREE FIXED INCOME FUND VI FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund VI, Inc.; TAX FREE FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund, Inc.; TAX FREE FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund, Inc.; TAX-FREE HIGH GRADE PORTFOLIO BOND FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Bond Fund II, Inc.; TAX-FREE HIGH GRADE PORTFOLIO TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; TAX FREE TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Target Maturity Fund, Inc.; UBS IRA SELECT GROWTH & INCOME PUERTO RICO FUND; SERVICIOS INTEGRALES EN LA MONTANA (SIM),

Creditors, Appellees,

UNITED STATES,

Respondent, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

———————————

Before

Thompson, Howard, and Kayatta, Circuit Judges.

———————————

Guillermo Ramos Luiña for appellants, cross-appellees
Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro
y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón,
Cooperativa de Cooperativa de Ahorro de Vega Alta, Crédito Dr.
Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana
Díaz.

Rafael A. Gonzalez-Valiente, with whom Godreau & Gonzalez
Law, LLC was on brief, for appellant, cross-appellee Suiza Dairy
Corporation.

Victor M. Rivera-Rios for appellants, cross-appellees Luis F.
Pabón Bosques, Raul Martinez Perez, Elvin A. Rosado Morales, Carlos
A. Rojas Rosario, and Rafael Torres Ramos.

Martin J. Bienenstock, with whom Jeffrey W. Levitan, Mark D.
Harris, Brian S. Rosen, Ehud Barak, Lucas Kowalczyk, Timothy W.
Mungovan, John E. Roberts, Adam L. Deming, Joseph S. Hartunian,
and Proskauer Rose LLP were on brief, for appellee, cross-appellant
Financial Oversight and Management Board for Puerto Rico.

Peter M. Friedman, with whom John J. Rapisardi, Maria J.
DiConza, and O'Melveny & Meyers LLP were on brief, for appellees
Governor Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and
Financial Advisory Authority.

Ana A. Núñez Velázquez, Aguadilla, PR, Pro Se.

Charles A. Cuprill-Hernández, with whom Charles A. Cuprill,
P.S.C. was on brief, for appellees Oscar Adolfo Mandry Aparicio,

———————————

* Of the Southern District of New York, sitting by
designation.

María del Carmen Amalia Mandry Llombart, Selma Verónica Mandry Llombart, María del Carmen Llombart Bas, Oscar Adolfo Mandry Bonilla, Gustavo Alejandro Mandry Bonilla, Yvelise Helena Fingerhut Mandry; Margaret Ann Fingerhut Mandry, Victor Robert Fingerhut Mandry, Juan Carlos Esteva Fingerhut, Pedro Miguel Esteva Fingerhut, Mariano Javier McConnie Fingerhut, Janice Marie McConnie Fingerhut, Victor Michael Fingerhut Cochran, Michelle Elaine Fingerhut Cochran, Rosa Estela Mercado Guzmán, Eduardo José Mandry Mercado, Salvador Rafael Mandry Mercado, Margarita Rosa Mandry Mercado, and Adrián Roberto Mandry Mercado.

Daniel Winik, Attorney, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, W. Stephen Muldrow, United States Attorney, Michael S. Raab, Attorney, Civil Division, and Michael Shih, Attorney, Civil Division, were on brief, for intervenor, appellee the United States.

Russell A. Del Toro Sosa, with whom David Carrion Baralt was on brief, for appellee PFZ Properties, Inc.

Maria Mercedes Figueroa Morgade on brief for appellees Demetrio Amador Inc. and Demetrio Amador Roberts.

Alexis Fuentes-Hernández on brief for appellees Maruz Real Estate Corp., Lortu-Ta LTD., Inc., La Cuarterola, Inc., Juaza, Inc., Frank E. Torres Rodriguez and Eva Torres Rodriguez.

Arturo J. García-Solá, with whom Nayuan Zouairaban and McConnell Valdes LLC were on brief, for appellee AmeriNational Community Services, LLC.

Douglas I. Koff, with whom Peter Amend, Douglas S. Mintz, and Schulte, Roth & Zabel were on brief, for appellee Cantor-Katz Collateral Monitor LLC.

Eduardo J. Capdevila-Díaz, with whom Isabel M. Fullana-Fraticelli and Isabel Fullana-Fraticelli & Assocs., PSC were on brief, for appellee Finca Mitilde, Inc.

Carlos Fernandez-Nadal on brief for appellee Jorge Rafael Eduardo Collazo Quinones.

Maximiliano Trujillo-González on brief for appellees Manuel A. Rivera-Santos, Jorge Rivera-Santos, and Carlos Manuel Rivera-Santos.

Juan A. Tapia Ortiz, Brooklyn, NY, Pro Se.

---

July 18, 2022

---

KAYATTA, **Circuit Judge**.  This appeal raises important questions about the interplay between the power to equitably restructure debts in bankruptcy and the Constitution's requirement that just compensation be paid whenever the government takes private property for public use.  It arises against the backdrop of perhaps the largest and most consequential public bankruptcy in the nation's history: the years-long effort to adjust the sovereign debt of the Commonwealth of Puerto Rico under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act.  Earlier this year, the court charged with overseeing the Title III proceedings confirmed a plan of adjustment for the debts of the Commonwealth and two of its instrumentalities.  Several stakeholders brought different, but contemporaneously argued, appeals challenging various aspects of the court's order confirming that plan.

In this instance, we consider the appeal of the Financial Oversight and Management Board of Puerto Rico (the "Board"), which serves as the representative of the debtor in the Title III proceedings.  The Board takes issue with the Title III court's conclusion that claimants owed just compensation for takings of real property by the debtors are entitled to receive such payments in full.  The Board proposes, instead, to treat claims for just compensation that arose prior to the commencement of the bankruptcy proceedings largely as general unsecured claims, subject to

- 8 -

payment at potentially a fraction of what the taken property was worth.  For the following reasons, we agree with the Title III court and hold that otherwise valid Fifth Amendment takings claims arising prepetition cannot be discharged in Title III bankruptcy proceedings without payment of just compensation.

## I.

We assume some familiarity with the lengthy factual background and circumstances surrounding the fiscal crisis in Puerto Rico and Congress's subsequent decision to enact the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 et seq., known commonly as PROMESA.  A more detailed account of that history has been described in several of our prior opinions pertaining to PROMESA.  See, e.g., In re Fin. Oversight & Mgmt. Bd. for P.R., 32 F.4th 67, 74–75 (1st Cir. 2022); In re Fin. Oversight & Mgmt. Bd. for P.R., 916 F.3d 98, 103–04 (1st Cir. 2019).  We repeat now only the essential details relevant to this appeal.

As we have explained previously, PROMESA "created in Title III a modified version of the municipal bankruptcy code for territories and their instrumentalities," which "authorized the Board to place the Commonwealth and its instrumentalities into bankruptcy proceedings."  In re Fin. Oversight & Mgmt. Bd. for P.R., 32 F.4th at 75.  Pursuant to Title III, the Board stands in as the representative of the debtors and is tasked with, among

other things, proposing and modifying a plan of adjustment for the
debtor. See 48 U.S.C. § 2175; see also id. §§ 2172-73. A plan of
adjustment under PROMESA, like the more typical Chapter 11 plan of
reorganization, designates classes of claims to be adjusted and
specifies treatments for any class of claims that is impaired.
See id. § 2161(a) (incorporating section 1123(a)(1) and (3) of the
Bankruptcy Code into Title III). PROMESA provides that the
Title III court shall confirm a plan of adjustment if it meets
certain conditions, including that "the debtor is not prohibited
by law from taking any action necessary to carry out the plan."
Id. § 2174(b)(3).

Beginning in 2017, the Board filed a series of petitions
under Title III to commence proceedings to restructure the debts
of the Commonwealth and a number of its instrumentalities. After
nearly five years of extensive mediation, negotiation, and
litigation involving a vast array of stakeholders, the Board
proposed a plan of adjustment for the Commonwealth and two of its
instrumentalities (the Employees Retirement System and the Puerto
Rico Buildings Authority).

In the lead up to the plan's development, several groups
of creditors (the "takings claimants") filed proofs of claim with
the Title III court seeking just compensation for alleged
prepetition takings of their private property by the Commonwealth.
Their claims arose in two contexts. One set of claims -- the

"eminent domain claims" -- resulted from proceedings initiated by the Commonwealth under its "quick take" eminent domain statute. See P.R. Laws Ann. tit. 32, § 2907. That statute permits the Commonwealth to acquire private property through eminent domain by depositing an estimated compensation amount with the Puerto Rico court of first instance. If the owner of the taken property regards the deposit as insufficient, the owner may seek a court determination of just compensation. Should just compensation exceed the amount of the deposit, the Commonwealth must pay the difference. A second set of claims -- the "inverse condemnation claims" -- arose out of takings in which the Commonwealth allegedly curtailed an owner's property right without first tendering a deposit. In such instances, the owner may simply sue the Commonwealth for payment in full of just compensation after the physical taking has occurred. Although eminent domain and inverse condemnation claims (collectively, the "takings claims") differ procedurally, as relevant to this appeal, each seeks just compensation for an alleged government taking that occurred prior to the initiation of the Commonwealth's bankruptcy proceedings (i.e., prepetition).

An earlier version of the plan of adjustment submitted by the Board (the fifth modified eighth amended version) proposed to treat these takings claims in the following way. First, for eminent domain claims, the plan proposed to treat any amounts held

on deposit with the court of first instance as secured claims
entitled to full recovery. The plan proposed to treat any claims
for amounts in excess of the deposited funds -- i.e., any
additional claimed amount owed to the property owner to provide
full just compensation for the taking -- as general unsecured
claims entitled to be paid out at a pro-rata share of the overall
recovery for general unsecured creditors. Second, for inverse
condemnation claims, the plan proposed to treat such claims
entirely as general unsecured claims.

Various claimants with takings claims objected to this
earlier version of the plan on the grounds that the Fifth Amendment
prohibits the impairment of any valid takings claim unless just
compensation is paid to the holder of the claim. Accordingly,
they argued that the plan could not be confirmed unless their
eminent domain and inverse condemnation claims were satisfied in
full. The Title III court agreed, concluding that it could not
confirm the then-proposed plan because impairing the takings
claims would violate the Fifth Amendment. See 48 U.S.C.
§ 2174(b)(3)) (allowing plan confirmation only if "the debtor is
not prohibited by law from taking any action necessary to carry
out the plan"). The Title III court then directed the Board to
modify the plan of adjustment to provide for full payment of any

valid eminent domain and inverse condemnation claims if the Board wished to make the plan confirmable.[1]

The Board, while claiming to preserve its right to appeal, obliged by filing the current (and operative) version of the plan, which the Title III court promptly confirmed.  The plan provides for full payment of the takings claims, to the extent they are ultimately allowed, subject to the proviso that:

> in the event that [the Board] appeals from the . . . Title III Court's ruling that Allowed Eminent Domain/Inverse Condemnation Claims must be paid in full or otherwise be rendered unimpaired pursuant to the Plan, . . . such appeal is successful, and . . . a Final Order is entered holding that Allowed Eminent Domain/Inverse Condemnation Claims may be impaired, . . . each holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive . . . payments [consistent with the treatment provided for general unsecured claims].

Several creditors appealed various other aspects of the Title III court's order confirming the plan that are unrelated to the present appeal.  The Board, in turn, cross-appealed the portion of the court's order pertaining to the treatment of the eminent

---

[1]  The Title III court did not purport to decide the quantum of just compensation owed to any particular takings claimant, concluding only that the Fifth Amendment prohibits a plan of adjustment from providing less than just compensation for allowed takings claims through impairment or discharge in bankruptcy.  See In re Fin. Oversight & Mgmt. Bd. for P.R., 637 B.R. 223, 298 n.42 (D.P.R. 2022).  Our opinion should not be construed as speaking to how much (or even whether) just compensation is due to any particular claimant.

domain and inverse condemnation claims. We consolidated the
Board's cross-appeal with other pending appeals of the
confirmation order for the purposes of oral argument and ordered
expedited briefing. We now address in this opinion only the
Board's cross-appeal challenging the ruling of the Title III court
that the Fifth Amendment precludes the plan from impairing
prepetition claims for just compensation that arise under the
Takings Clause.[2] We review the Title III court's legal conclusions
de novo and factual findings for clear error. See In re Fin.
Oversight & Mgmt. Bd. for P.R., 32 F.4th at 76.[3]

**II.**

As an initial matter, we consider whether we (and the
Title III court) can or should avoid addressing the Fifth Amendment
question at all. The United States, as intervenor, invites us to
read the Title III court's conclusion that the takings claims are
not dischargeable as an exercise of the court's equitable powers

---

[2] One set of appellants, cross-appellees -- a group of credit
unions -- contends that we lack jurisdiction to consider the
Board's appeal because it would have no practical effect on the
confirmed plan of adjustment as the plan provides for full payment
of the takings claims and would therefore result in an advisory
opinion from this court. However, as we explained, the plan
expressly provides for such full payment only if the Title III
court's ruling on the takings claims is upheld on appeal.
Accordingly, we have no doubt that a live controversy exists.

[3] No party contests the Board's claim that it preserved its
right to appeal the Title III court's order holding that the plan
need be modified on this matter to be confirmed.

under section 944(c)(1) of the Bankruptcy Code and not as a holding
on an issue of constitutional law.  Section 944(c)(1) -- which is
incorporated into Title III of PROMESA by 48 U.S.C. § 2161(a) --
provides that "[t]he debtor is not discharged . . . from any
debt . . . excepted from discharge by the plan or order confirming
the plan."  11 U.S.C. § 944(c)(1).  Because the Fifth Amendment
question is complex, and one of first impression for this circuit,
the United States suggests that we might sidestep the
constitutional issue by interpreting the Title III court's
confirmation order as categorically exempting takings claims from
discharge as an exercise of discretion under section 944(c)(1).

     The record is clear, though, that the Title III court
did not exempt takings claims from impairment in its confirmation
order as a matter of discretion.  Rather, the court found that the
Board's previously proposed treatment of the takings claims did
not "comport with the requirements of the Takings Clause" and would
therefore compel the Commonwealth to take actions prohibited by
law.  In re Fin. Oversight & Mgmt. Bd. for P.R., 637 B.R. 223, 292
(D.P.R. 2022).  This in turn would violate PROMESA's mandate that
a plan be confirmed only if "the debtor is not prohibited by law
from taking any action necessary to carry out the plan."  48 U.S.C.
§ 2174(b)(3).  In the Title III court's view, the plan of
adjustment thus only became confirmable after the Board modified
it to provide for full payment of the takings claims.

Accordingly, we read the Title III court's ruling to say precisely what it appears to say: that discharging valid, prepetition takings claims for less than just compensation would violate the Fifth Amendment and render a plan providing for such discharge unconfirmable under PROMESA. Our conclusion is reinforced by the fact that the Title III court never once mentioned section 944(c)(1) or purported to exercise any authority under that provision in its confirmation order. Cf. In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17-BK-3283, 2021 WL 7162427, at *11 (D.P.R. Dec. 27, 2021) (addressing expressly the Title III court's power to exempt certain claims from discharge under section 944(c)(1) and concluding in a separate adversary proceeding that a group of creditors were not entitled to such exception).

One might nevertheless posit that if the Title III court did not exercise any discretion under section 944(c)(1), it erred by declining to do so and choosing to address the constitutional question instead. Hence, perhaps we ourselves might avoid tackling the knotty Fifth Amendment issue by vacating the ruling and remanding the matter to the Title III court to do what it clearly did not do: decide whether to reject the Board's proposed treatment of the takings claims by relying on what the United States asserts is within the court's "discretion." But such an approach would simply lead us around the barn and back. To exempt the takings

claims from discharge, the Title III court would have to have a
reason for exercising its discretion in that manner.  Cf. Darden
v. Ill. Bell Tel. Co., 797 F.2d 497, 502 (7th Cir. 1986) ("[A]
decision made in the absence of a basis is an abuse of
discretion."); Schwarz v. Folloder, 767 F.2d 125, 133 (5th Cir.
1985) (explaining that "[w]here a district court fails to explain
its decision," the reviewing court does "not know whether the
decision was within the bounds of its discretion or was based on
an erroneous legal theory").  And the only possible reason one can
glean from the record is the court's statement that the Fifth
Amendment precludes the Board's proposed treatment.

Moreover, we question the premise underlying the United
States' argument that section 944(c)(1) authorizes a court to
reject a plan of adjustment merely because confirmation would
require the court to determine whether the plan is lawful.
Section 944(c)(1) contains no express grant of any discretion.
Rather, it simply confirms a general rule that debts are not
discharged except as provided by a plan or confirmation order.  We
need look elsewhere in the statute to see whether and when a plan
or order may discharge a debt.  In so doing, we find
section 2174(b)(3) in Title III.  That section conditions plan
confirmation on a finding that the debtor "is not prohibited by
law from taking any action" -- such as discharging a debt --
"necessary to carry out the plan."  48 U.S.C. § 2174(b)(3).  It

does not preclude confirmation merely because it requires the court to determine whether the proposed action is lawful. It is therefore unsurprising that the only federal court to expressly invoke section 944(c)(1) to exempt takings claims from discharge explicitly held that discharging prepetition claims for just compensation in bankruptcy _would_ violate the Fifth Amendment; that is, it effectively answered the constitutional question the United States would have us avoid here. See In re City of Detroit, 524 B.R. 147, 268-70 (Bankr. E.D. Mich. 2014).

Thus, while we appreciate the wisdom of declining to venture into a constitutional thicket when the resolution of an independent issue would present a clearer path, we see no such opportunity to do so here.

## III.

Satisfied that we must answer the constitutional question presented by this appeal, we move on to assessing whether the Fifth Amendment precludes the impairment or discharge of prepetition claims for just compensation in Title III bankruptcy. For the following reasons, we conclude that it does.

For purposes of this appeal, all parties agree that the Commonwealth (or one of the instrumentalities governed by the plan) took private property from at least some of the takings claimants before petitioning for relief under Title III. All parties also assume that a factfinder could reasonably determine that the

claimants have not yet received just compensation despite their requests for such.[4]  The Board's position, reduced to its nub, is that, by reorganizing in bankruptcy, the debtors can eliminate their obligation to pay just compensation and instead pay only reduced amounts based on a formula applicable to most unsecured creditors.

To support this assertion, the Board points first to the fact that bankruptcy laws themselves claim an express toehold in the text of the Constitution:  Clause 4 of Article I, Section 8, expressly authorizes Congress to establish "uniform Laws on the subject of Bankruptcies."  But most laws can claim a toehold in the Constitution's text.  Indeed, Article I expressly grants Congress the power to do a great many things, including to collect taxes, to regulate commerce, and so on.  See U.S. Const. art. I, § 8.  The Board does not claim -- nor could it reasonably claim -- that any laws enacted pursuant to such powers would trump the constitutional requirement to pay just compensation for taken

---

[4]  As the Supreme Court has explained, "just compensation" is "the full monetary equivalent of the property taken"; that is, "[t]he owner is to be put in the same position monetarily as he would have occupied if his property had not been taken."  Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 473-74 (1973) (quoting United States v. Reynolds, 397 U.S. 14, 16 (1970)); see also United States v. 125.2 Acres of Land, More or Less, Situated In Town & Cnty. of Nantucket, 732 F.2d 239, 244 (1st Cir. 1984) ("It is well settled that just compensation under the fifth amendment is fair market value as of the date of the taking.").

- 19 -

property merely by nature of their mention in the Constitution.
Otherwise, Congress might largely do away with the requirement to
pay just compensation altogether.

We must therefore consider the relationship between the
Takings Clause and the bankruptcy laws.  And on that point, the
Supreme Court has been very clear:   The bankruptcy laws are
subordinate to the Takings Clause.   See United States v. Sec.
Indus. Bank, 459 U.S. 70, 75 (1982) ("The bankruptcy power is
subject to the Fifth Amendment's prohibition against taking
private property without compensation."); Louisville Joint Stock
Land Bank v. Radford, 295 U.S. 555, 589 (1935) ("The bankruptcy
power, like the other great substantive powers of Congress, is
subject to the Fifth Amendment.").   Accordingly, although the
Constitution grants Congress the express authority to enact
"uniform Laws on the subject of Bankruptcies," U.S. Const. art. I,
§ 8, cl. 4, those laws are not categorically exempt from the
requirements of the Fifth Amendment (any more than they are exempt
from, for example, the First Amendment).

The Board's fallback argument proffers a narrow view of
the Takings Clause itself as not including a requirement to pay
just compensation so long as such a claim for payment arose prior
to the start of bankruptcy proceedings.   That position rests on
two key propositions: first, that the Fifth Amendment prohibits in
bankruptcy only the impairment of rights in specific property held

at the time of filing, not the impairment of unsecured prepetition
claims for money; and second, that despite the express invocation
of "just compensation" in the Takings Clause, a claim for just
compensation is the same as any other claim for monetary
compensation resulting from a constitutional violation.  We take
each of these propositions in turn.

### A.

       The Board first contends that the Takings Clause
protects only rights to specific property held at the time the
debtor petitions for relief in bankruptcy.  Because the takings
claimants no longer possessed any such property rights by the time
the Title III proceedings began, the Board asserts that the takings
claimants now merely possess unsecured claims for money, which may
be adjusted in bankruptcy without issue.

       To support its position, the Board points us to language
in the Supreme Court's opinion in Knick v. Township of Scott, which
held that a Takings Clause claim "arises at the time of the taking,
regardless of post-taking remedies that may be available to the
property owner." 139 S. Ct 2162, 2170 (2019).  Knick rejected an
interpretation of the Fifth Amendment from an earlier Supreme Court
case finding that a Takings Clause violation does not ripen until
just compensation is denied and requiring a property owner to
exhaust state procedures for obtaining compensation for a taking
before suing in federal court, see Williamson Cnty. Reg'l Plan.

Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985).  See Knick, 139 S. Ct. at 2170-75 (overruling Williamson County).  The Board seizes on this portion of Knick to press its view that a Takings Clause violation is keyed only on the actual taking of property rather than on any subsequent denial of just compensation.  And because the takings at issue here all occurred prepetition, the Board contends, any constitutional violation would have arisen only at the time of the taking.  The Board would thus have us understand just compensation as an entitlement to payment that is untethered from the substantive Takings Clause violation itself.

The Board overreads Knick.  Knick rejected Williamson County's conclusion that a Takings Clause claim vests only after a property owner is denied just compensation and held instead that a Fifth Amendment violation occurs "as soon as a government takes . . . property for public use without paying for it."  Id. at 2170.  But nothing in Knick's holding casts doubt on the Fifth Amendment's requirement that just compensation be paid. Recognizing that the "right to full compensation arises at the time of the taking," id., does not imply that the subsequent denial of that compensation does not also raise Fifth Amendment concerns. We decline to read Knick as changing the Fifth Amendment right to receive just compensation into a mere monetary obligation that may be dispensed with by statute.

Next, the Board provides examples of instances in which the Takings Clause has not required the full payment of unsecured prepetition claims for money that are unconnected to secured rights in specific property.  In particular, the Board relies on language in Kuehner v. Irving Trust Co. explaining that the Fifth Amendment "does not prohibit bankruptcy legislation affecting the creditor's remedy for [the] enforcement [of a contract for payments] against the debtor's assets." 299 U.S. 445, 452 (1937).  Kuehner involved a statute that capped the amount a landlord could recover from a debtor-tenant in bankruptcy for lost rent.  Landlords argued that that the law worked a taking of their property in violation of the Fifth Amendment because it "partially destroy[ed] [their] remedy for enforcement of [their] contract[s]." Id. at 450.  The Supreme Court rejected this argument, noting that, with respect to the bankruptcy power, there is "a significant difference between a property interest and a contract since the Constitution does not forbid impairment of the obligation of the latter." Id. at 452. The Board urges us to read Kuehner and a set of lower court cases as standing for the proposition that the Fifth Amendment only protects rights in specific property and not unsecured claims for money.  See, e.g., In re Nichols, 440 F.3d 850, 854 (6th Cir. 2006) (distinguishing between property rights and contractual rights to payment); In re Treco, 240 F.3d 148, 161 (2d Cir. 2001) (noting

that "[i]f the claim is unsecured, it is not 'property' for purposes of the Takings Clause").

These cases, however, are inapposite. They speak only to the question of whether a bankruptcy law has effected a taking of property at all. That is, there was a question of whether a taking had even occurred. But, as we have explained, the issue on appeal here is not whether a taking has occurred -- no one disputes that the government engaged in prepetition takings of some property -- the relevant question is whether the denial of just compensation for such a taking violates the Fifth Amendment. Thus, Kuehner and the other cases the Board cites are only relevant if we assume that claims for just compensation are the same as any contractual claim for payments due, which begs the very question raised by this appeal. Cases that involve no impairment in bankruptcy of claims for just compensation shed no useful light on the Board's contention that Fifth Amendment protection applies only to rights in "specific property."

Along a similar vein, the Board also points to provisions in the Bankruptcy Code that permit debtors to sometimes avoid full payment of otherwise valid obligations, including certain property-based interests. See, e.g., 11 U.S.C. § 547 (allowing a trustee to avoid certain transfers of interests in property of the debtor). The Board implies that prohibiting a debtor from escaping full payment of the takings claims here raises serious

- 24 -

constitutional questions about these other provisions of the
Bankruptcy Code. But these hypothetical challenges involve
questions not present in this appeal, including whether the
specific provisions work a taking at all and whether any creditor
failed to receive just compensation. Unless a provision prevented
the full payment of a claim for just compensation, it would not
implicate the issues we decide here.[5]

Accordingly, we are not persuaded that the Fifth
Amendment should be read to permit the impairment of prepetition
claims for just compensation simply because the claimants no longer
possess rights in the taken property postpetition.

**B.**

We turn next to the Board's contention that nothing about
a claim for just compensation makes it any different for bankruptcy
purposes than a claim for money damages for any other kind of
constitutional violation. The Board argues that because the latter
can be adjusted in bankruptcy without issue,[6] so too can the former.

---

[5] For corresponding reasons, the Board can find no help for
its position in Poinsett Lumber & Mfg. Co. v. Drainage Dist. No. 7.
See 119 F.2d 270 (8th Cir. 1941). That case appears to raise only
a question about whether a reorganization proceeding would itself
work a taking, see id. at 272-73 (relying on Luehrmann v. Drainage
Dist. No. 7, 104 F.2d 696, 702-03 (8th Cir. 1939)), not the
question we consider today: whether an otherwise valid claim for
just compensation may be impaired in bankruptcy.

[6] No party asserts that other claims for monetary
compensation for constitutional violations cannot be impaired or

- 25 -

The language and nature of the Takings Clause, however, suggests to us that just compensation is different in kind from other monetary remedies.  The Fifth Amendment specifies that "private property" shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.  Thus, as the Supreme Court has explained, the Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." First English Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., 482 U.S. 304, 314 (1987).  Just compensation then does not serve only as a remedy for a constitutional wrong; it serves also as a structural limitation on the government's very authority to take private property for public use.  As the Court has stated, "where the government's activities have already worked a taking . . . , no subsequent action by the government can relieve it of the duty to provide compensation." Id. at 321.  Simply put, the Fifth Amendment contemplates a "constitutional obligation to pay just compensation."  Id. at 315 (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

This makes the payment of just compensation unlike most other instances in which the government engages in a constitutional violation and is required to remedy that violation by paying money. For instance, nothing in the Constitution itself specifies any

---

discharged, and we assume without deciding that such claims may be adjusted in bankruptcy without violating the Constitution.

particular remedy that must be provided when the government engages in a Fourth Amendment violation. Indeed, absent remedies provided for by statute or federal common law, there is no right to monetary relief for most constitutional violations. See Egbert v. Boule, 142 S. Ct. 1793, 1802-03 (2022). And because they lack an express basis in the Constitution, claims under 48 U.S.C. § 1983 for money damages stemming from constitutional violations are "routinely adjusted in bankruptcy." In re City of Stockton, 909 F.3d 1256, 1268 (9th Cir. 2018). But, in the case of the Takings Clause, the Constitution clearly spells out both a monetary remedy and even the necessary quantum of compensation due. Accordingly, the denial of adequate (read: just) compensation for a taking is itself constitutionally prohibited. See First English, 482 U.S. at 316 (reaffirming the Supreme Court's "frequently repeated" view that "in the event of a taking, the compensation remedy is required by the Constitution").

In defense of its position, the Board relies chiefly on the Ninth Circuit's majority opinion in In re City of Stockton, which addressed (favorably to the Board's position here) a similar question in the context of the municipal bankruptcy of Stockton, California. See 909 F.3d at 1266. For the reasons stated above, however, we find the dissenting opinion of Judge Friedland in that case to be more persuasive. See id. at 1273-79 (Friedland, J.,

dissenting).[7]   The only other federal court to have squarely addressed the question of whether the Fifth Amendment prohibits the discharge or impairment of claims for just compensation in bankruptcy confirms our view that it does.   See In re City of Detroit, 524 B.R. at 269-70.

### c.

The Board has three other brief rejoinders meriting our attention.   First, the Board argues that claims for just compensation are routinely modified by the operation of law after takings occur, all apparently without offending the Fifth Amendment.   For instance, the Board notes that just compensation claims can become time-barred without violating the Fifth Amendment.   And the Board explains that a claim for just compensation may be waived or settled at less than full value.

In making this argument, however, the Board conflates what makes the denial of just compensation substantively unlawful with what may make a claim for just compensation procedurally

---

[7]   The Board's principal objection to Judge Friedland's dissent is that her opinion cites to reasoning from the since-overruled Williamson County.   But this jab is misplaced.   Judge Friedland invoked Williamson County only in discussing whether the claimant in City of Stockton "had an outstanding constitutional claim for just compensation" at all, not in assessing whether such a claim could be impaired in bankruptcy.   909 F.3d at 1276 (Friedland, J., dissenting).   Judge Friedland's analysis does not rely on the repudiated proposition that "no constitutional violation occurs until just compensation has been denied." Williamson Cnty., 473 U.S. at 194 n.13.

inactionable or waivable by the claimant. A statute of limitations concerns the procedural bounds in which litigation may proceed; it "plays no role in ascertaining whether conduct is wrongful," but "merely sets the deadline by which a legal challenge to that conduct need be initiated." Monsarrat v. Newman, 28 F.4th 314, 319-20 (1st Cir. 2022). Moreover, compliance with a statute of limitations, along with the choice of whether to waive or settle a claim, are litigation decisions that a claimant has control over. The impairment or discharge in bankruptcy of that claimant's entitlement to just compensation is not. And, as to waiver or settlement, no one claims that the Title III court's order bars any such action by the claimants.

Second, the Board contends that the Takings Clause is not the only constitutional provision for which the Constitution itself prescribes a remedy. Specifically, the Board points to suits brought under Bivens and its progeny that recognize causes of actions for damages that are "implied directly under the Constitution." Davis v. Passman, 442 U.S. 228, 230 (1979); see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389 (1971). And the Board references actions brought under 42 U.S.C. § 1983, which provides a statutory remedy for constitutional violations. But, as we explained above, a claim under the Takings Clause is different in kind from actions under Bivens and section 1983. Neither Bivens nor section 1983

rest on a provision of the Constitution that mandates a specific remedy in the same way the Takings Clause mandates just compensation; nor do <u>Bivens</u> or section 1983 prescribe the quantum of compensation required in the event of a violation.[8]

Finally, the Board marches through a parade of horribles, suggesting that our ruling will endanger the ability of municipalities to restructure debt in the future. These horribles all presume that a substantial portion of a hypothetical municipality's debt obligations is unpaid compensation for takings. In other words, the municipality apparently owes a considerable amount of money to property owners for past takings and files for bankruptcy in the hopes that it may leave the takings in place without paying anything like just compensation for the property. On the whole, interpreting the law to create an incentive to pursue such a gambit strikes us as poor policy and certainly not a reason to adopt the Board's position.

Reduced to its nub, the issue we decide is rather simple. The Fifth Amendment provides that if the government takes private

---

[8] The Board contends that distinguishing among Takings Clause claims and other constitutional claims in this way somehow creates a "hierarchy among[] constitutional rights." <u>Caplin & Drysdale, Chartered</u> v. <u>United States</u>, 491 U.S. 617, 628 (1989). But we do not create a "hierarchy" of constitutional rights simply by recognizing that such rights are safeguarded in different ways. All we make clear today is that the Fifth Amendment itself expressly provides that just compensation must be paid whenever the government works a taking.

property, it must pay just compensation.  Because the prior plan proposed by the Board rejected any obligation by the Commonwealth to pay just compensation, the Title III court properly found that the debtor was prohibited by law from carrying out the plan as proposed.  See 48 U.S.C. § 2174(b)(3).

IV.

Accordingly, with respect to the challenges presented in the Board's cross-appeal, we affirm the Title III court's order confirming the plan.