**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**CARLOS LAMOUTTE'S OBJECTION TO *VERIFIED STATEMENT REGARDING DISINTERESTEDNESS OF O'NEILL & BORGES LLC PURSUANT TO THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT* FILED ON JULY 12, 2022, <u>DOCKET ENTRY NO. 21,485</u>**

**To the Honorable United States District Court Judge Laura Taylor Swain:**

Movant Carlos Lamoutte ("Movant"), appearing *pro se*, hereby respectfully submits this objection in response to the motion titled *"Verified Statement Regarding Disinterestedness of O'Neill & Borges LLC Pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act"* filed

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

on July 12, 2022, Docket Entry No. 21,485 (the "PRRADA Disclosures Motion"), and states and prays as follows:

1.      The PRRADA Disclosures Motion filed by the law firm O'Neill & Borges LLC ("O&B"), local legal counsel to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), is incomplete, misleading, untruthful, and contravenes the provisions of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021 codified in 48 U.S.C. 2101 et seq. ("PRRADA").

2.      Under PRRADA, detailed disclosures and explanations as to conflicts of interest and disinterestedness need to be made by all professionals retained by the Oversight Board, yet O&B has _knowingly, intentionally and in bad faith_ elected not to make such detailed disclosures and explanations in this case.

3.      O&B's omission to state material facts as to its undeniable conflictive relationships is tantamount to lying to the Court, to the U.S. Trustee Program, and to the other parties in interest having a need to know, including the Commonwealth of Puerto Rico, who is the debtor here.

4.      Contrary to the generic "verified statements" set forth in O&B's PRRADA Disclosures Motion, O&B in reality is not a disinterested professional person under PROMESA and PRRADA because O&B attorneys in fact hold conflicts of interest that are materially adverse to the Oversight Board and to the Commonwealth of Puerto Rico that the Oversight Board represents.  O&B loosely and self-servingly states to be a disinterested person, but O&B's past and present actions demonstrate that O&B is truly not disinterested.  Disqualification and disgorgement of legal fees is merited.

5.      The same situation applies to other professional persons that form part of the Oversight Board's club of fee-collecting profiteers, who fancy themselves as being above the law

2

and who have similarly double-timed the Commonwealth of Puerto Rico and its creditors thru informal lobbying at the Oversight Board, in order to favor their own private sector clients (and themselves) by leveraging their privileged connections with the Oversight Board's members, executives, and staff.

6.      Whether by design or by omission, this type of cartel-like behavior at the Oversight Board ends up causing economic injury to the Commonwealth of Puerto Rico, its creditors, Puerto Rican taxpayers, and the U.S. federal government.

7.      Congress did not enact PROMESA and PRRADA so that the Oversight Board and its advisors could conduct themselves as entitled, self-dealing members of some sort of private club.

8.      Federal authorities should investigate the inner workings of the Oversight Board and the multiple fee-collecting advisors and consultants that have profited from the PROMESA establishment since its inception (in excess of $1 billion). Conflicts of interest abound and are not being properly disclosed.

9.      In the PRRADA Disclosures Motion, O&B *knowingly, intentionally and in bad faith* omitted to disclose and explain to the Court, to the U.S. Trustee, and to other parties in interest in this case certain material facts that are the subject matter of several unresolved motions pending adjudication by this Court involving O&B's participation in a $384+ million Puerto Rico government contract that the Commonwealth of Puerto Rico has alleged in public court pleadings to be the product of a fraud, to wit:

(a)      On May 19, 2022, Movant filed a "*Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the*

3

*Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees"*, Docket Entry No. 20,873 (the "Motion to Disqualify");

       (b)     On June 2, 2022, the Oversight Board filed a *"Response of the Financial Oversight and Management Board for Puerto Rico to Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees"*, Docket Entry No. 21,094, and O&B simultaneously filed an *"Objection to Carlos Lamoutte's Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowance and Disgorgement of Legal Fees"*, Docket Entry No. 21,096 (collectively, the "Objection Motions"); and

       (c)     In response to the Objection Motions, on June 6, 2022, Movant filed *Carlos Lamoutte's Reply to the Objections to Disqualification Filed by the Financial Oversight and Management Board for Puerto Rico and the Law Firm O'Neill & Borges, LLC, Docket Entry Numbers 21,094 and 21,096, and Petition for Declaratory Judgment*, Docket Entry No. 21,124 ("Movant's Reply").

10.　　In objection to O&B's PRRADA Disclosures Motion, Movant hereby incorporates by reference all allegations and legal arguments set forth in Movant's Motion to Disqualify and Movant's Reply, respectively, as if fully transcribed herein.

11.　　Lying to the Court and to the U.S. Trustee Program is not permitted under any state or federal statute, much less PROMESA and PRRADA.

12.　　Nowhere in the PRRADA Disclosures Motion (or in any other motion previously filed by O&B) does O&B explain its connections to and/or involvement with: (a) PR Recovery and Development JV, LLC, PR Recovery and Development REO, LLC, Parliament Capital Management, LLC, Parliament High Yield Fund, LLC, and Island Portfolio Services, LLC (collectively, the "Stalking Horse Parties"); (b) that certain $384,269,047 Loan Sale Agreement entered into as of September 7, 2018 by and between the Economic Development Bank for Puerto Rico[2] (by its Spanish acronym, the "BDE"), as seller, and PR Recovery and Development JV, LLC and PR Recovery and Development REO, LLC, as purchasers, with the direct assistance of the other Stalking Horse Parties named hereinabove, pursuant to which a commercial loan portfolio was transferred to the Stalking Horse Parties at a 91% liquidation discount and under other suspect circumstances (the "Loan Sale Agreement")[3]; and (c) the ensuing $800 million contract rejection case regarding that Loan Sale Agreement which remains *sub judice* before the Puerto Rico Court of First Instance, San Juan Part, in Civil Case Number SJ2019CV11697, captioned *Banco de Desarrollo Económico Para Puerto Rico v. Garnet Capital Advisors LLC, PR Recovery and Development REO, LLC, PR Recovery and Development JV, LLC, and Parliament Capital*

---

[2] The Economic Development Bank for Puerto Rico is one of the covered instrumentalities and component units of the Commonwealth of Puerto Rico subject to PROMESA since the date of filing of the insolvency petition in this Title III case. See Docket Entry No. 1, Exhibit B, item 12 (Economic Development Bank for Puerto Rico).
[3] At pages 29-30 of the Loan Sale Agreement, the law firm O'Neill & Borges, LLC appears identified as counsel to PR Recovery and Development JV, LLC and PR Recovery and Development REO, LLC.

*Management LLC* (the "$800MM Contract Avoidance Case"). It is both shocking and revealing that O&B is unable to certify to the Court and to the U.S. Trustee Program whether or not O&B represented any of the Stalking Horse Parties during the same time period in which O&B represented the Oversight Board.

13.     O&B is legally compelled to make clear and transparent disclosures under PRRADA, for the public record, in relation to the Stalking Horse Parties and its collaborative role as to the Loan Sale Agreement. Any ruling to the contrary by the Court would be contrary to the legislated spirit of PROMESA and PRRADA.

14.     In abundance of caution and for the avoidance of any doubt, private and confidential disclosures to the Court and to the U.S. Trustee are not permitted under PRRADA. Such disclosures must be published in the case docket, since the objective of PRRADA is to bring transparency to this Title III case.

15.     O&B does not make any of the PRRADA-required disclosures in its PRRADA Disclosures Motion because doing so would reveal that O&B is in reality not a disinterested person under PRRADA.

16.     This PRRADA-related matter is of special relevance to this Title III case because: (a) it is of public record that the BDE (a public instrumentality and component entity of the Commonwealth of Puerto Rico that is subject to the Oversight Board's supervision under PROMESA) has alleged in its court pleadings in the $800MM Contract Avoidance Case that the Loan Sale Agreement is a fraudulent transaction conducted in secrecy and devoid of a competitive bidding process and required governmental approvals, including, but not limited to, the Oversight Board's formal revision and approval); (b) it is of public record that the Oversight Board has taken no enforcement action whatsoever in relation to the controversial Loan Sale Agreement,

the Stalking Horse Parties, and/or the ongoing $800MM Contract Avoidance Case[4]; (c) it is of
public record that O&B represented one or more of the Stalking Horse Parties in the controversial
BDE transaction that is object of the Loan Sale Agreement and the $800MM Contract Avoidance
Case during the same time period in which O&B also simultaneously represented the Oversight
Board, and O&B's record attorneys in this case are today *knowingly, intentionally and in bad
faith* concealing said fact from proper disclosure to the Court, to the U.S. Trustee, and to other
parties in interest; and (d) with the assistance of certain state actors, O&B and the Oversight
Board's staff are in fact collusively hiding O&B's connections to the Stalking Horse Parties and
to the Loan Sale Agreement, in order to financially favor the Stalking Horse Parties and bankrupt
the BDE.

17.     PRRADA and supplemental bankruptcy case standards are crystal clear as to the
disclosure requirements pertaining to disinterestedness that apply to all professionals that serve
the Oversight Board and get compensated with public funds sourced from the debtor's bankruptcy
estate in this Title III case.

18.     Double-timing the Commonwealth of Puerto Rico and its creditors to benefit
private sector parties is not permitted under PROMESA, PRRADA, or any other state or federal
law.

19.     By omitting to state material facts in its PRRADA Disclosures Motion, O&B is
avoiding compliance with PRRADA and supplemental bankruptcy case standards in order to
protect the commercial interests of the Stalking Horse Parties, to influence the fate of the ill-
conceived Loan Sale Agreement in the $800MM Contract Avoidance Case (and in this case), and
to conceal O&B's ethical indiscretions.

---

[4] See the Objection Motions, Docket Entry Numbers 21,094 and 21,096, respectively.

20.     The Stalking Horse Parties do not form part of the MIP List because O&B *knowingly, intentionally and in bad faith* failed to the include the Stalking Horse Parties in the MIP List, *sub silentio*.  Explanations are required here.

21.     O&B's recent PRRADA Disclosures Motion follows the same *modus operandi* that O&B has exhibited in past thru its unilateral omission to disclose material facts of which it has direct knowledge yet does not wish to publicly reveal out of its own convenience.  See the Objection Motions.  Under PRRADA and supplemental bankruptcy case standards, such conduct is tantamount to lying to this Court and to the U.S. Trustee Program and litigating with unclean hands.

22.     This case is the largest municipal bankruptcy in U.S. history.  The Court must not permit O&B to continue to evade compliance with PROMESA, PRRADA, and supplemental bankruptcy case standards in order to favor the commercial interests of one or more of its private clients and to continue concealing its own disqualificatory conduct.

23.     O&B has *knowingly, intentionally and in bad faith* failed to reveal connections which are indicative that O&B is not disinterested in relation to the Stalking Horse Parties, to the Loan Sale Agreement, and to the $800MM Contract Avoidance Case, respectively. At pages 29-30 of the Loan Sale Agreement, the law firm O'Neill & Borges, LLC appears identified as counsel to PR Recovery and Development JV, LLC and PR Recovery and Development REO, LLC. Explanations are mandatory here.

24.     The reasons for O&B's insistent failure to disclose its connections to the Stalking Horse Parties are self-evident.  As the saying goes – "*If it looks like a duck, walks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck.*"

8

25.     The Oversight Board is the so-called *"elephant in the room"* in this fiasco, whose biased acquiescence of its advisors' misconduct the Court and the U.S. Trustee Program cannot ignore.  While the BDE has publicly denounced that the Loan Sale Agreement is the product of a fraud, the Oversight Board has gone so far to admit that it has denied reviewing the Loan Sale Agreement – an act which is clearly contrary to: (a) the intent and spirit of PROMESA; (b) the Oversight Board's own Contract Review Policy; and (c) the Oversight Board's past precedent in similar scenarios.

26.     The Court now needs to exact control measures over all service providers participating in this Title III case, including the Oversight Board itself, the "elephant in the room" who is supposed to dominate the habitat in which these service providers roam wild at an exorbitant cost to the bankruptcy estate of the Commonwealth of Puerto Rico (in excess of $1 billion).

27.     It is outright disturbing that the Oversight Board continues to look the other way in relation to the $384+ million Loan Sale Agreement that the Oversight Board failed to review and approve (as required by PROMESA and the Oversight Board's own Contract Review Policy), especially after the BDE denounced in the $800MM Contract Avoidance Case that the Stalking Horse Parties' Loan Sale Agreement is the product of a fraud.

28.     So, why hasn't the Oversight Board intervened with the 2018 BDE Loan Sale Agreement as required by PROMESA's Contract Review Policy?  Isn't that the job of the Oversight Board?  Is public corruption not the main reason why the Oversight Board exists?  These are all fair questions and explanations must be had.

29.     In the best of scenarios, someone at the Oversight Board fell asleep at the wheel in relation to the Loan Sale Agreement and the $800MM Contract Avoidance Case.   The

Oversight Board should have intervened with the Loan Sale Agreement years ago, after the BDE published its fraud allegations in the $800MM Contract Avoidance Case.

30.     In the likelier of scenarios, the Oversight Board is working hard in tandem with its fee-collecting lawyers and other state actors to maintain the Loan Sale Agreement in obscurity and to commercially favor the Stalking Horse Parties – whom in turn happen to be long-time fee-paying clients of O&B.

31.     In the worst of scenarios, a $384+ million conspiracy to defraud the BDE is underway and is being concealed by insiders of the PROMESA establishment with the acquiescence and collaboration of the Oversight Board and its counsel. As a result of the Loan Sale Agreement that the Oversight Board has insistently denied examining, the BDE today is severely undercapitalized, operates with a net loss of approximately $5 million per year, and has no real prospect of returning to solvency and financial viability unless this Court invalidates and reverts the Loan Sale Agreement.

32.     The Oversight Board exists to bring transparency to government contracting in Puerto Rico, not to enable sham transactions conducted in secrecy and collusion to commercially benefit the private sector clients of the professionals employed by the Oversight Board (such as O&B). Precisely to combat this type of behavior is the reason that PROMESA got enacted.

33.     Insiders and friends of the PROMESA establishment cannot be allowed to collusively profit from their privileged proximity to the Oversight Board, to the corresponding economic detriment and expense of the Commonwealth of Puerto Rico, its instrumentalities (such as the BDE), and the creditors of the Commonwealth of Puerto Rico in these Title III proceedings.

34.     If proper disclosures cannot be extracted from O&B concerning O&B's undeniable connections to the Stalking Horse Parties and the Loan Sale Agreement, then the $384+ million

10

Loan Sale Agreement must be declared null and void *ab initio* by this Court pursuant to Section 407(a) of PROMESA, due to the unlawful circumvention of the Oversight Board's own contract review process and the unresolvable conflict of interest that taints the Loan Sale Agreement.

35.     Time is of the essence.  O&B's attorneys are behaving collusively and deceitfully before this Court and the U.S. Trustee Program in relation to the Stalking Horse Parties and the Loan Sale Agreement, all in violation of PROMESA and PRRADA.  Public disclosures and explanations must be had in this Title III case before the transgressions under the Loan Sale Agreement continue to compound.

36.     In resolving this conflicts of interest matter, the Court ought not reward O&B's indiscretions by tolerating O&B's continued retention as legal counsel to the Oversight Board. The Court should not risk sending the incorrect message to the general public that the best way to do government procurement in Puerto Rico is by hiring the same advisers that the Oversight Board uses.

37.     Reformation is required within the PROMESA establishment.  The Court needs to bring to order the five-year long bender that the Oversight Board has hosted for its intimate group of fee-addicted insiders (and their own private clients) employing taxpayer money and federal funds (in excess of $1 billion).  It's time for some of the partygoers to abandon the party and be sent home.

38.     Undisclosed conflicts of interest must not be tolerated by this Court and the U.S. Trustee Program in this case, the largest municipal bankruptcy in U.S. history.

39.     The Oversight Board's advisors are dealing with unclean hands regarding their PROMESA and PRRADA obligations.  The same standards of conduct that apply to any ordinary

bankruptcy case need to be applied in this Title III case. The U.S. Trustee Program should object to any request for compensation filed by O&B in this Title III case.

40. Given the remarkable lack of honesty exhibited by O&B in its PRRADA Disclosures Motion (and prior filings), Movant hereby petitions the Court to:

(a) Grant the Motion to Disqualify as filed and to issue an Order that: (i) permanently disqualifies the law firm O'Neill & Borges, LLC from serving as local legal counsel to the Financial Oversight and Management Board for Puerto Rico, (ii) provides for the disallowment and disgorgement of fees, and (iii) and grants such other relief that the Court deems just, fair, and equitable; or

(b) In the alternative, that prior to resolving the Motion to Disqualify the Court first issues an Order scheduling an evidentiary hearing at which the following knowledge parties shall appear to be interrogated and cross-examined under the supervision of the Court: (i) Attorney Walter Alomar, partner of O'Neill & Borges, LLC, who appears named in the 2018 BDE Loan Sale Agreement as counsel to the Stalking Horse Parties and has personal knowledge of the disqualificatory conflicts of interest that endure, (ii) Attorney Hermann Bauer, lead partner of O'Neill & Borges, LLC's PROMESA team since the commencement of this Title III case, who in turn has also served as legal counsel to Parliament High Yield Fund, LLC and has personal knowledge of the disqualificatory conflicts of interest that endure, (iii) Attorney Rosa M. Lázaro, Managing Partner of O'Neill & Borges, LLC, who may speak under oath of the firm's attorney-client representation of the Stalking Horse Parties and the identity of each of the firm's timekeepers and billing records during the 2017-2022 time period, among other matters, and (iv) Attorney Jaime El Koury, General Counsel of the Financial Oversight and Management Board for Puerto Rico, who may explain under oath of the motives for which the Financial Oversight and

12

Management Board for Puerto Rico has consistently delayed and denied to review the

$384,269,047 Loan Sale Agreement in blatant violation of its own Contract Review Policy; and/or

(c) To issue *sua sponte* judgment in this case pursuant to Section 407(a) of

PROMESA, to the effect of declaring the $384,269,047 Loan Sale Agreement null and void *ab*

*initio* for failure to follow due process.

Dated:  July 21, 2022
       San Juan, Puerto Rico

Respectfully submitted,

Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com

**Certificate of Service**

I hereby certify that, on this date, I filed the foregoing with the Clerk of the Court, in person, who will send notifications of such filing to all CM/ECF participants in this matter.

In San Juan, Puerto Rico, this 21st day of July 2022.

Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com

14