**Assured's Exhibit 17**



# FINANCIAL GUARANTY INSURANCE POLICY

OBLIGOR: Puerto Rico Highways and Transportation Authority

OBLIGATIONS: $20,000,000.00 Transportation Revenue Refunding Bonds (Series N) 5.500% Maturing on July 1, 2029

Policy No.: 314216D-N

Date of Issuance: August 29, 2007

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY GUARANTEES to each Holder, subject only to the terms of this Policy (which includes each endorsement hereto), the full and complete payment by the Obligor of Scheduled Payments of principal of, and interest on, the Obligations.

For the further protection of each Holder, Financial Security irrevocably and unconditionally guarantees:

(a) payment of the amount of any distribution of principal of, or interest on, the Obligations made during the Term of this Policy to such Holder that is subsequently avoided in whole or in part as a preference payment under applicable law (such payment to be made by Financial Security in accordance with Endorsement No. 1 hereto).

(b) payment of any amount required to be paid under this Policy by Financial Security following Financial Security's receipt of notice as described in Endorsement No. 1 hereto.

Financial Security shall be subrogated to the rights of each Holder to receive payments under the Obligations to the extent of any payment by Financial Security hereunder.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Holder" means the registered owner of any Obligation as indicated on the registration books maintained by or on behalf of the Obligor for such purpose or, if the Obligation is in bearer form, the holder of the Obligation. "Scheduled Payments" means payments which are scheduled to be made during the Term of this Policy in accordance with the original terms of the Obligations when issued and without regard to any amendment or modification of such Obligations thereafter; payments which become due on an accelerated basis as a result of (a) a default by the Obligor, (b) an election by the Obligor to pay principal on an accelerated basis or (c) any other cause, shall not constitute "Scheduled Payments" unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration. "Term of this Policy" shall have the meaning set forth in Endorsement No. 1 hereto.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto, or by the merger, consolidation or dissolution of the Obligor. Except to the extent expressly modified by an endorsement hereto, the premiums paid in respect of this Policy are nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Obligations prior to maturity. This Policy may not be cancelled or revoked during the Term of this Policy. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
31 West 52nd Street, New York, N.Y. 10019

(212) 826-0100

Form 100NY (5/89)

**ENDORSEMENT NO. 1**
**To Financial Guaranty Insurance Policy**

FINANCIAL SECURITY ASSURANCE INC.

OBLIGOR: Puerto Rico Highways and Transportation Authority

Policy Number: 314216D-N

Date of Issuance: 08/29/2007

OBLIGATIONS: $20,000,000.00 Transportation Revenue Refunding Bonds (Series N) 5.500% Maturing on July 1, 2029

1. <u>Definitions</u>. For all purposes of this Policy, the terms specified below shall have the meanings or constructions provided below.

"<u>Business Day</u>" means a day on which banks are not authorized or required by law or executive order to be closed in either the city in which the principal office of Financial Security is located or the city in which the principal office of the Custodian is located.

"<u>Condition Precedent</u>" means a proper claim for payment has been made on the Prior Insurance and the Prior Insurer has failed to pay such claim in the period permitted by the Prior Insurance for reasons other than failure to provide proper documentation required by the Prior Insurer to pay such claim.

"<u>Custodian</u>" means U.S. Bank Trust National Association, as Custodian pursuant to the Custody Agreement or any successor thereto with respect to the Custody Receipts.

"<u>Custody Agreement</u>" means the Master Custody Agreement dated as of September 15, 1988 between the Custodian and Financial Security as amended or supplemented from time to time.

"<u>Custody Receipt</u>" means the receipt issued by the Custodian pursuant to the Custody Agreement evidencing beneficial ownership of an Underlying Custody Receipt or Receipts.

"<u>Holder</u>" means, with respect to a Custody Receipt the person in whose name the Custody Receipt is registered on the registration books maintained by the Custodian pursuant to the Custody Agreement but shall not include the Prior Insurer, the Custodian, the Prior Custodian, the Obligor or any affiliates or successors thereof.

"<u>Obligations</u>" means the obligations identified on the face of the Policy following the heading "OBLIGATIONS" which are represented by the Underlying Custody Receipt and held by the Prior Custodian pursuant to the Prior Custody Agreement and includes the coupons, if any, which are a part of such Obligations and dated after the Date of Issuance indicated on the Face of the Policy, whether or not attached to such Obligation or Obligations.

"Paid in Full." For purposes of this Endorsement, any Obligation shall be "paid in full" upon the first to occur of (a) the date when the Prior Insurer has paid all amounts which may become due under the Prior Insurance and (b) the date when all Scheduled Payments (as defined in the Policy, except that, for purposes of this sentence, without giving any effect to the words "during the Term of this Policy" in such definition) required to be paid by the Obligor, including all principal and accrued interest, have been paid that are required to be paid in accordance with the terms of the Obligations, and any period during which any such payment could have been avoided in whole or in part as a preference payment under applicable law shall have expired before any proceeding requisite to such avoidance shall have been commenced and any Scheduled Payment shall be "paid in full" when such payment has been made by the Obligor or the Prior Insurer, and any period during which any such payment could have been avoided in whole or in part as a preference payment under applicable law shall have expired before any proceeding requisite to such avoidance shall have been commenced.

"Prior Custody Agreement" means the Custody Agreement dated as of July 2003, as amended, between The Bank of New York and the Prior Insurer.

"Prior Custody Agreement" means the Custody Agreement dated as of July 2003, as amended, between The Bank of New York and the Prior Insurer.

"Prior Custodian" means the custodian appointed pursuant to the Prior Custody Agreement.

"Prior Insurance" means the financial guaranty insurance policy delivered by the Prior Insurer with respect to the Obligations represented by the Underlying Custody Receipt.

"Prior Insurer" means Assured Guaranty Re Ltd. (formerly ACE Guaranty Re Inc., its successors and assigns.

"Scheduled Payments" means payments which are scheduled to be made during the Term of this Policy in accordance with the original terms of the Obligations when issued and the Underlying Custody Receipt when executed and without regard to any amendment or modification of such Obligations or Underlying Custody Agreement thereafter; provided that no such amount shall constitute a "Scheduled Payment" unless and until the Condition Precedent has been fulfilled, in which event the Scheduled Payment insured under the Policy shall be the principal and interest scheduled to be made as aforesaid on the Obligations less any amount paid by the Prior Insurer in respect thereof. Payments which become due on an accelerated basis as a result of (a) a default by the Obligor, (b) an election by the Obligor to pay principal on an accelerated basis or (c) any other cause, shall not constitute "Scheduled Payments" unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration. Scheduled Payments shall not include any amounts due in respect of the Obligations attributable to any increase in

interest rate, penalty or other sum payable by the Obligor by reason of any default or event of default in respect of the Obligations, or by reason of any deterioration of the credit worthiness of the Obligor. Scheduled Payments shall, subject to the Condition Precedent, include principal and interest due in respect of the Obligations payable in connection with mandatory sinking fund redemption. In the absence of written consent by Financial Security any waiver, amendment, modification or other action consented to by the Holder or any release of the Prior Insurance shall result in such Obligation ceasing to be insured under this Policy. In addition, the failure by the Holder to provide any waiver, amendment or modification or to take any other action in its capacity as Holder upon the written request of Financial Security shall likewise result in such Obligation ceasing to be insured under the Policy; provided, however, that no such waiver, amendment, modification or action shall be considered to reduce any then existing coverage under this Policy.

"Term of This Policy" means the period from and including the Date of Issuance to and including the date on which the Obligations are Paid in Full.

"Underlying Custody Receipts" means the custodial receipts held by the Custodian pursuant to the Custody Agreement evidencing ownership interests in the Obligations.

2. Notices and Conditions to Payment in Respect of Scheduled Payments. Financial Security will pay out of its funds any amount payable hereunder in respect of Scheduled Payments on the later to occur of (a) the first Business Day following receipt on a Business Day by Financial Security of a notice and certificate from the Custodian in the form set forth as Exhibit A to this Endorsement or (b) the date on which such Scheduled Payment was due (or, if such day is not a Business Day, then on the next succeeding Business Day), subject to fulfillment of the Condition Precedent. Payments due hereunder in respect of Scheduled Payments will be disbursed by Financial Security to the Custodian by wire transfer of immediately available funds. If any notice given hereunder is not in proper form or is otherwise insufficient for the purpose of making claim hereunder, it shall be deemed not to have been received for purposes of this paragraph, and Financial Security or the Fiscal Agent, as defined below, shall promptly so advise the Custodian, and the Custodian may submit an amended notice. Financial Security shall be entitled to pay any amount hereunder in respect of Scheduled Payments on the Obligations, including any amount due on the Obligations on an accelerated basis, whether or not any notice and certificate shall have been received by Financial Security as provided above. Financial Security shall be entitled to pay hereunder any amount due on the Obligations on an accelerated basis at any time or from time to time, in whole or in part, prior to the scheduled date of payment thereof. Financial Security's obligations hereunder in respect of Scheduled Payments shall be discharged to the extent funds are transferred to the Custodian as provided herein whether or not such funds are properly applied by the Custodian; provided, however, that Financial Security shall act promptly, reasonably and in good faith in obtaining from the Custodian, acting as attorney-in-fact for the Holders, or from other Holders, as necessary, the certificates and instruments of assignment required to be delivered to Financial Security as

contemplated herein and in the Custody Agreement as a condition to the Custodian's release to Holders of funds drawn under the Policy.

3. <u>Notices and Conditions to Payment of Preferences</u>. If payment of any Scheduled Payment avoided in whole or in part as a preference payment under applicable law is required to be made under the Policy, Financial Security will, subject to fulfillment of the Condition Precedent, disburse such payment when due to be paid pursuant to the Order referred to below and in any event no earlier than the first to occur of (a) the fourth Business Day following receipt by Financial Security from the Custodian of (i) a certified copy of the order of the court which exercised jurisdiction to the effect that the Holder is required to return a payment of principal or interest constituting a Scheduled Payment and paid on the Obligation during the Term of this Policy because such payment was an avoidable preference under applicable law (the "Order"), (ii) a certificate of the Holder that the Order has been entered and is not subject to any stay, (iii) a certificate stating that the Condition Precedent has been fulfilled accompanied by a certified copy of the claim filed and (iv) an assignment duly executed and delivered by the Holder, in such form as is reasonably required by Financial Security and provided to the Holder by Financial Security or the Custodian, irrevocably assigning to Financial Security all rights and claims of the Holder relating to or arising under the Obligation and the Prior Insurance against the estate of Obligor or the Prior Insurer, as appropriate, or otherwise (provided that if such certified copy, certificate and assignment is received on a day that is not a Business Day or after 12:00 noon, New York City time, on any Business Day, Financial Security shall make such payment on the fifth Business Day following such date), and (b) the date of receipt by Financial Security from the Custodian of the items referred to in clauses (i), (ii), (iii) and (iv) above if, at least four Business Days prior to such date of receipt, Financial Security shall have received written notice from the Custodian that such items were to be delivered on such date of receipt and such date of receipt was specified in such notice (provided that if such notice is received on a day that is not a Business Day or after 12:00 noon, New York City time, on any Business Day, such notice shall be deemed to have been received on the next succeeding Business Day). Such payment shall be disbursed to the receiver, conservator, debtor-in-possession, trustee in bankruptcy or other person named in the Order and not to the Custodian or any Holder directly; unless the Custodian or such Holder has been required previously to disgorge all or part of such payment, as demonstrated to the satisfaction of Financial Security. In connection with the foregoing, Financial Security shall have the rights provided pursuant to Section 3.09 of the Custody Agreement.

4. <u>Governing Law</u>. The Policy is being issued under and pursuant to, and shall be construed under and governed by, the laws of the State of New York.

5. <u>Fiscal Agent</u>. At any time during the Term of this Policy, Financial Security may appoint a fiscal agent (the "Fiscal Agent") for purposes of this Policy by written notice to the Custodian specifying the name and notice address of the Fiscal Agent. From and after the date of receipt of such notice by the Custodian, (i) copies of all notices and documents required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Fiscal Agent and to Financial

Security and shall not be deemed received until received by both, and (ii) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Fiscal Agent on behalf of Financial Security. The Fiscal Agent is the agent of Financial Security only, and the Fiscal Agent shall in no event be liable to Holders for any acts of the Fiscal Agent or any failure of Financial Security to deposit, or cause to be deposited, sufficient funds to make payments due under the Policy.

6. *Waiver of Defenses*. To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, for the benefit of each Holder, all rights (whether by counterclaim, setoff or otherwise) and defenses (including the defense of fraud, including fraud in the inducement), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

7. *Increase in Principal Amount.* Financial Security may, by endorsement to this Policy, increase the principal amount of Obligations to be covered by this Policy.

8. *Exclusions From Insurance Guaranty Funds*. This Policy is not covered by the Property/Casualty Insurance Security Fund specified in Article 76 of the New York Insurance Law. This Policy is not covered by the Florida Insurance Guaranty Association created under Part II of Chapter 631 of the Florida Insurance Code. In the event Financial Security were to become insolvent, any claims arising under this Policy are excluded from coverage by the California Insurance Guaranty Association, established pursuant to Article 14.2 of Chapter 1 of Part 2 of Division 1 of the California Insurance Code.

9. *Subrogation*. In addition to Financial Security being subrogated to the rights of each Holder to receive payment under the Obligations to the extent of any payment by Financial Security hereunder, Financial Security shall be subrogated to the rights of each Holder to receive payment under the Underlying Custody Receipts and the Prior Insurance to the extent of any payment by Financial Security hereunder and shall be subrogated to the rights of the Prior Insurer to the extent of any payment by Financial Security hereunder.

IN WITNESS WHEREOF, FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement No. 1 to be executed by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
    Authorized Officer

Exhibit A to Endorsement No. 1

## NOTICE FOR PAYMENT
## UNDER THE POLICY

Financial Security Assurance Inc.
31 West 52nd Street
New York, NY 10019

    The undersigned, a duly authorized officer of U.S. Bank Trust National Association (the "Custodian"), hereby certifies to Financial Security Assurance Inc. ("Financial Security"), with reference to Financial Guaranty Insurance Policy No. 314216D-N dated August 29, 2007 (the "Policy") issued by Financial Security in respect of the Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series N) 5.500% Maturing on July 1, 2029 (the "Obligations"), that:

    (i) the Custodian is the Custodian under the Master Custody Agreement dated as of September 15, 1988, between Financial Security and the Custodian, as amended or supplemented from time to time;

    (ii) (a) either (i) the Custodian has not received by [insert due date of principal or interest] the full amount of the principal or interest on the Obligations due on such date from the Obligor and has been notified by the bond trustee or paying agent for the Obligations (the "Bond Trustee"), Prior Custodian, Prior Insurer or Financial Security that it will not receive such payment or the Bond Trustee will not confirm to the Custodian that the full payment has been or is that day being made or has been notified by Financial Security that it will not receive such payment or (ii) the Custodian has been notified by the Bond Trustee, Prior Custodian, Prior Insurer or Financial Security, prior to the due date, that the Custodian will not receive the full amount of such principal or interest due on such date, and (b) the Custodian has made a proper claim (a certified copy of which claim shall be attached to this Notice) on the Prior Insurance for such amount and has not received the full amount of the Scheduled Payment in the period permitted by the Prior Insurance for reasons other than failure to provide proper documentation required by the Prior Insurer to pay such claim and (c) the additional amount necessary for the Custodian to have an amount equal to the principal or interest due is _____ (the "Shortfall");

    (iii) the Custodian is making a claim under the Policy for the Shortfall to be applied to the payment of the Scheduled Payment referred to in (ii) above;

    (iv) the Custodian (or its nominee or its agent's nominee) is the person in whose name the Underlying Custody Receipt(s) is registered on the registration books maintained by the Prior Custodian pursuant to the Prior Custody Agreement and holds evidence of the Custodian's right to receive payment of the Scheduled Payment and, upon delivery of the appropriate instruments of assignment from Holders pursuant to (v) hereof, will assign to Financial Security the Custodian's rights with respect to the

page 2 of Exhibit A
to Endorsement No. 1

Underlying Custody Receipts and its rights as the beneficial owner of the Obligations, including its right to the Prior Insurance, to the same extent as provided in such instruments of assignment from the Holders, such assignment to be contingent upon Financial Security's continued performance of its obligations under the Policy; provided, however, that any assignment of rights with respect to Shortfalls which have been paid by Financial Security shall continue until such amounts have been recovered by Financial Security; and

(v) the Custodian shall (a) as to each Holder for whom the Custodian shall act as attorney-in-fact pursuant to Section 3.03(b) of the Custody Agreement, present to Financial Security (x) appropriate instruments of assignment in a form satisfactory to and provided by Financial Security to the effect provided in Section 3.03(b) of the Custody Agreement and also assigning each Holder's interests in the Prior Insurance and (y) appropriate instruments in a form satisfactory to and provided by Financial Security to effect the appointment of Financial Security as agent for such Holder in any legal proceeding with respect to the Underlying Custody Receipts, the Obligations or Prior Insurance, and (b) as to all other Holders, promptly upon presenting this Notice for Payment, notify such Holder that a payment is to be made under the Policy and that payment of the amounts due to each Holder will be made to such Holder upon presentment and surrender by such Holder of instruments of assignments referred to in (x) and (y) above, such instruments being in a form reasonably satisfactory to the Custodian.

Upon such disbursement, Financial Security shall be subrogated to the extent of any payments made by it pursuant to the Policy and any additional interest due on any late payment to all of the Custodian's rights and the rights of the Holders with respect to the Scheduled Payment to which such disbursement relates including the Holder's rights in the Prior Insurance.

Any capitalized term used in this Notice for Payment under the Policy and not defined herein shall have the meaning assigned thereto in the Policy.

IN WITNESS WHEREOF, the Custodian has executed and delivered this Notice for Payment under the Policy as of the      day of              ,     .

U.S. BANK TRUST NATIONAL ASSOCIATION, as Custodian

By _____
Title:_____