# Debtor's Ex. 1

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO,<br>et al., | |
| Debtors. | |
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3567-LTS |
| as representative of | |
| THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY, | |
| Debtor. | |

**THIRD AMENDED TITLE III PLAN OF ADJUSTMENT OF THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board*

*as Representative for the Debtor in Its Title III Case*

Dated: June 17, 2022

## TABLE OF CONTENTS

**Page**

## ARTICLE I

## DEFINITIONS

| | | |
|---|---|---|
| 1.1 | AAFAF | 1 |
| 1.2 | ACR Order | 1 |
| 1.3 | Act 106 | 1 |
| 1.4 | Administrative Claim Bar Date | 1 |
| 1.5 | Administrative Expense Claim | 1 |
| 1.6 | ADR Order | 2 |
| 1.7 | ADR Procedures | 2 |
| 1.8 | Affiliate | 2 |
| 1.9 | AFICA | 2 |
| 1.10 | Allowed | 2 |
| 1.11 | Allowed Claim | 2 |
| 1.12 | Ambac | 2 |
| 1.13 | Ambac Acceleration Price | 2 |
| 1.14 | Ambac Action | 3 |
| 1.15 | Ambac Bondholder Elections | 3 |
| 1.16 | Ambac Bondholder Election Forms | 3 |
| 1.17 | Ambac Bondholder Notice Form | 3 |
| 1.18 | Ambac Certificates | 3 |
| 1.19 | Ambac Commutation Consideration | 3 |
| 1.20 | Ambac Commutation Treatment | 3 |
| 1.21 | Ambac CW/HTA Bond Claims | 3 |
| 1.22 | Ambac Election | 3 |
| 1.23 | Ambac Election Notice | 3 |
| 1.24 | Ambac Insured Bond Claims | 3 |
| 1.25 | Ambac Insured Bondholder | 3 |
| 1.26 | Ambac Insured Bonds | 4 |
| 1.27 | Ambac Insurance Policies | 4 |
| 1.28 | Ambac Non-Commutation Treatment | 4 |
| 1.29 | Ambac Plan Consideration | 4 |
| 1.30 | Ambac Treatment | 4 |
| 1.31 | Ambac Trust | 4 |
| 1.32 | Ambac Trust Assets | 4 |
| 1.33 | Appointments Related Litigation | 4 |
| 1.34 | Assets | 4 |
| 1.35 | Assured | 5 |
| 1.36 | Assured Acceleration Price | 5 |
| 1.37 | Assured Bondholder Elections | 5 |
| 1.38 | Assured Bondholder Elections Form | 5 |
| 1.39 | Assured CW/HTA Bond Claims | 5 |

i

| 1.40 | Assured Election | 5 |
|------|------------------|---|
| 1.41 | Assured Election Notice | 5 |
| 1.42 | Assured Insurance Policies | 5 |
| 1.43 | Assured Insured Bond Claim | 5 |
| 1.44 | Assured Insured Bondholder | 5 |
| 1.45 | Assured Insured Bonds | 5 |
| 1.46 | Assured New HTA Bonds | 6 |
| 1.47 | Assured Plan Consideration | 6 |
| 1.48 | Assured Treatment | 6 |
| 1.49 | Assured Trust | 6 |
| 1.50 | Avoidance Actions | 6 |
| 1.51 | Avoidance Actions Trust | 6 |
| 1.52 | Avoidance Actions Trust Agreement | 7 |
| 1.53 | Avoidance Actions Trust Board | 7 |
| 1.54 | Avoidance Actions Trustee | 7 |
| 1.55 | Ballot Date | 7 |
| 1.56 | Ballot/Election Form | 7 |
| 1.57 | Bankruptcy Code | 7 |
| 1.58 | Bankruptcy Rules | 7 |
| 1.59 | Bar Date | 7 |
| 1.60 | Bar Date Orders | 7 |
| 1.61 | Business Day | 7 |
| 1.62 | Capital Improvements | 8 |
| 1.63 | Cash | 8 |
| 1.64 | Causes of Action | 8 |
| 1.65 | CCDA | 8 |
| 1.66 | Charging Lien | 8 |
| 1.67 | Claim | 8 |
| 1.68 | Class | 8 |
| 1.69 | Clawback Actions | 8 |
| 1.70 | Clawback CVI Indenture | 9 |
| 1.71 | Clawback CVIs | 9 |
| 1.72 | COFINA | 9 |
| 1.73 | Commonwealth | 9 |
| 1.74 | Commonwealth Confirmation Order | 9 |
| 1.75 | Commonwealth Constitution | 9 |
| 1.76 | Commonwealth Effective Date | 9 |
| 1.77 | Commonwealth Loan | 9 |
| 1.78 | Commonwealth Legislature | 9 |
| 1.79 | Commonwealth Plan | 9 |
| 1.80 | Consummation Costs | 10 |
| 1.81 | Convenience Cap | 10 |
| 1.82 | Convenience Claim | 10 |
| 1.83 | Conversion Date | 10 |
| 1.84 | Creditor | 10 |
| 1.85 | Creditors' Committee | 10 |

HTA_CONF 00017137

| 1.86 | CUSIP | 10 |
|---|---|---|
| 1.87 | Custodial Trust Documents | 10 |
| 1.88 | CVIs | 11 |
| 1.89 | CVI Indenture | 11 |
| 1.90 | CVI Legislation | 11 |
| 1.91 | CW/Convention Center Claim | 11 |
| 1.92 | CW/HTA Claim | 11 |
| 1.93 | CW/HTA Clawback Recovery | 11 |
| 1.94 | CW/MBA Claim | 11 |
| 1.95 | CW/PRIFA Rum Tax Claim | 11 |
| 1.96 | Debt | 12 |
| 1.97 | Debtor | 12 |
| 1.98 | Debt Management Policy | 12 |
| 1.99 | Debt Policy Period | 12 |
| 1.100 | Debt Related Objections | 12 |
| 1.101 | Debt Service Fund | 13 |
| 1.102 | Deemed Issuance Date | 13 |
| 1.103 | Definitive Documents | 13 |
| 1.104 | Disallowed | 13 |
| 1.105 | Disbursing Agent | 13 |
| 1.106 | Disclosure Statement | 13 |
| 1.107 | Disclosure Statement Hearing | 13 |
| 1.108 | Disclosure Statement Order | 14 |
| 1.109 | Disputed Claim | 14 |
| 1.110 | Disputed Funds Stipulation | 14 |
| 1.111 | Distribution Record Date | 14 |
| 1.112 | DRA | 14 |
| 1.113 | DRA Parties | 14 |
| 1.114 | DRA Restriction Fee | 14 |
| 1.115 | DRA Stipulation | 14 |
| 1.116 | Dual-Insured Bond | 15 |
| 1.117 | Eminent Domain/Inverse Condemnation Claim | 15 |
| 1.118 | Eminent Domain Proceeding | 15 |
| 1.119 | Entity | 15 |
| 1.120 | ERS | 15 |
| 1.121 | Executory Contract | 15 |
| 1.122 | Federal Claims | 15 |
| 1.123 | FGIC | 15 |
| 1.124 | FGIC Action | 15 |
| 1.125 | FGIC Certificates | 15 |
| 1.126 | FGIC CW/HTA Bond Claims | 15 |
| 1.127 | FGIC Escrow Account Agreements | 16 |
| 1.128 | FGIC Insured Bond Claims | 16 |
| 1.129 | FGIC Insured Bonds | 16 |
| 1.130 | FGIC Insurance Policies | 16 |
| 1.131 | FGIC Plan Consideration | 16 |

HTA_CONF 00017138

1.132   FGIC Rehabilitation Plan ................................................................................16
1.133   FGIC Treatment ...............................................................................................16
1.134   FGIC Trust .......................................................................................................16
1.135   Final Order .......................................................................................................16
1.136   Findings of fact and Conclusions of Law .......................................................17
1.137   Fiscal Plan ........................................................................................................17
1.138   FY ......................................................................................................................17
1.139   GDB ...................................................................................................................17
1.140   GDB/HTA Loans ..............................................................................................17
1.141   GDB Loan Priority Determination ..................................................................17
1.142   GO CVIs ...........................................................................................................17
1.143   Government Entity ...........................................................................................18
1.144   Government Parties ..........................................................................................18
1.145   Government Released Claims ...........................................................................18
1.146   Government Releasees ......................................................................................18
1.147   GUC Recovery Cap ..........................................................................................18
1.148   GUC Reserve ....................................................................................................19
1.149   Highway Assets ................................................................................................19
1.150   HTA ...................................................................................................................19
1.151   HTA 68 Bond Claim .........................................................................................19
1.152   HTA 68 Bond Claim (Ambac) .........................................................................19
1.153   HTA 68 Bond Claim (Assured) ........................................................................19
1.154   HTA 68 Bond Claim (National) .......................................................................19
1.155   HTA 68 Bond Recovery ...................................................................................19
1.156   HTA 68 Bonds ..................................................................................................19
1.157   HTA 98 Bonds ..................................................................................................20
1.158   HTA 98 Senior Bond Claim .............................................................................20
1.159   HTA 98 Senior Bond Claim (Ambac) ..............................................................20
1.160   HTA 98 Senior Bond Claim (Assured) .............................................................20
1.161   HTA 98 Senior Bond Claim (FGIC) .................................................................20
1.162   HTA 98 Senior Bond Claim (National) .............................................................20
1.163   HTA 98 Senior Bond Recovery ........................................................................20
1.164   HTA 98 Senior Bonds .......................................................................................21
1.165   HTA 98 Sub Bond Claim ..................................................................................21
1.166   HTA 98 Sub Bond Claim (Assured) .................................................................21
1.167   HTA 98 Sub Bond Claim (FGIC) .....................................................................21
1.168   HTA 98 Sub Bond Claim (National) .................................................................21
1.169   HTA 98 Sub Bond Recovery ............................................................................22
1.170   HTA 98 Sub Bonds ...........................................................................................22
1.171   HTA Bond Claims .............................................................................................22
1.172   HTA Bonds ........................................................................................................22
1.173   HTA/CCDA Annex Agreement .........................................................................22
1.174   HTA/CCDA Joinder Agreement ........................................................................22
1.175   HTA/CCDA Joinder Deadline ...........................................................................22
1.176   HTA/CCDA Joinder Creditors ..........................................................................22
1.177   HTA/CCDA Plan Support Agreement ...............................................................22

iv

HTA_CONF 00017139

1.178   HTA/CCDA PSA Creditors ............................................................................22
1.179   HTA/CCDA PSA Restriction Fee Creditors ................................................22
1.180   HTA/CCDA PSA Restriction Fee Period .....................................................23
1.181   HTA/CCDA PSA Threshold Attainment ......................................................23
1.182   HTA Clawback CVI .....................................................................................23
1.183   HTA Clawback Recovery .............................................................................23
1.184   HTA Committee Agreement .........................................................................23
1.185   HTA Confirmation Date ...............................................................................23
1.186   HTA Confirmation Hearing ..........................................................................24
1.187   HTA Confirmation Order .............................................................................24
1.188   HTA Distribution Conditions .......................................................................24
1.189   HTA Effective Date .....................................................................................24
1.190   HTA Enabling Act .......................................................................................24
1.191   HTA Fiscal Agent ........................................................................................24
1.192   HTA Fiscal Plan ..........................................................................................24
1.193   HTA/GDB Claim .........................................................................................24
1.194   HTA General Unsecured Claim ....................................................................24
1.195   HTA GUC Recovery ....................................................................................25
1.196   HTA Moscoso Bond Claim ..........................................................................25
1.197   HTA Moscoso Bonds ...................................................................................25
1.198   HTA Petition Date ........................................................................................25
1.199   HTA Plan .....................................................................................................26
1.200   HTA PSA Restriction Fees ...........................................................................26
1.201   HTA Restriction Fee Percentage ..................................................................26
1.202   HTA Title III Case .......................................................................................26
1.203   Initial HTA/CCDA PSA Creditors ...............................................................26
1.204   Insured HTA Bond Claim ............................................................................26
1.205   Invalidity Actions ........................................................................................26
1.206   IRC ..............................................................................................................26
1.207   IRS ..............................................................................................................26
1.208   Late-Filed Claim .........................................................................................26
1.209   Lien .............................................................................................................26
1.210   Lien Challenge Actions ................................................................................27
1.211   Lift Stay Motions ........................................................................................27
1.212   List of Creditors ..........................................................................................27
1.213   Local Bankruptcy Rules ...............................................................................27
1.214   MBA ............................................................................................................27
1.215   MFA ............................................................................................................27
1.216   Monolines ....................................................................................................27
1.217   National .......................................................................................................27
1.218   National Action ...........................................................................................27
1.219   National Acceleration Price ..........................................................................27
1.220   National Bondholder Election Form .............................................................28
1.221   National Certificates ....................................................................................28
1.222   National Commutation Consideration ..........................................................28
1.223   National Commutation Treatment ................................................................28

HTA_CONF 00017140

1.224   National CW/HTA Bond Claims ............................................................................28
1.225   National Election Notice ......................................................................................28
1.226   National Escrow Account ......................................................................................28
1.227   National Escrow Consideration ...........................................................................28
1.228   National HTA Consideration .................................................................................28
1.229   National Insurance Policies ..................................................................................29
1.230   National Insured Bond Claims .............................................................................29
1.231   National Insured Bonds .......................................................................................29
1.232   National Non-Commutation Treatment ...............................................................29
1.233   National Plan Consideration .................................................................................29
1.234   National Treatment ..............................................................................................29
1.235   National Trust ......................................................................................................29
1.236   National Trust Consideration ...............................................................................29
1.237   New HTA Bonds ...................................................................................................29
1.238   New HTA Bonds Indenture ..................................................................................29
1.239   New HTA Bonds Trustee ......................................................................................29
1.240   New HTA CABs ....................................................................................................30
1.241   New HTA CIBs .....................................................................................................30
1.242   New HTA Convertible CABs .................................................................................30
1.243   Outstanding .........................................................................................................30
1.244   Oversight Board ...................................................................................................30
1.245   Partial Disposition ...............................................................................................30
1.246   PayGo ...................................................................................................................30
1.247   PBA ......................................................................................................................30
1.248   Person ..................................................................................................................30
1.249   PFC ......................................................................................................................30
1.250   Plan Supplement .................................................................................................30
1.251   Pledged Revenues ...............................................................................................31
1.252   PRASA ..................................................................................................................31
1.253   PREPA ..................................................................................................................31
1.254   PRIDCO .................................................................................................................31
1.255   PRIFA ....................................................................................................................31
1.256   PRITA ....................................................................................................................31
1.257   Professional .........................................................................................................31
1.258   Professional Claim ...............................................................................................31
1.259   PROMESA ............................................................................................................31
1.260   Pro Rata Share .....................................................................................................31
1.261   Related Persons ...................................................................................................31
1.262   Released Claims ...................................................................................................32
1.263   Released Parties ..................................................................................................33
1.264   Releasing Parties .................................................................................................33
1.265   Reorganized Commonwealth ..............................................................................33
1.266   Reorganized HTA .................................................................................................33
1.267   Reorganized HTA By-Laws ...................................................................................33
1.268   SCC Action ...........................................................................................................33
1.269   SEC ......................................................................................................................33

vi

HTA_CONF 00017141

1.270   Section 103 Bond Counsel ..................................................................................33
1.271   Section 510(b) Subordinated Claim ....................................................................33
1.272   Secured Obligations ...........................................................................................33
1.273   Securities Act ......................................................................................................33
1.274   SIB Account .........................................................................................................33
1.275   Solicitation Agent ...............................................................................................33
1.276   Subordinated Indebtedness ...............................................................................33
1.277   Syncora ................................................................................................................34
1.278   Syncora Acceleration Price ................................................................................34
1.279   Title III .................................................................................................................34
1.280   Title III Case .......................................................................................................34
1.281   Title III Court ......................................................................................................34
1.282   Toll Facilities ......................................................................................................34
1.283   Toll Rate Covenant .............................................................................................34
1.284   Toll Receipts .......................................................................................................34
1.285   Toll Receipt Fund ...............................................................................................34
1.286   Tolls .....................................................................................................................34
1.287   Transit Assets .....................................................................................................34
1.288   Trust Documentation ........................................................................................34
1.289   Trust Estate .........................................................................................................35
1.290   Unclaimed Distribution .....................................................................................35
1.291   Underwriter Actions ...........................................................................................35
1.292   Unexpired Lease .................................................................................................35
1.293   Uniformity Litigation .........................................................................................35
1.294   UPR ......................................................................................................................35
1.295   Voting Record Date .............................................................................................35
1.296   Other Definitions ................................................................................................36
1.297   Rules of Interpretation .......................................................................................36

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES/RESTRUCTURING OF ENTITIES/RETIREE CLAIMS

2.1   Litigation Resolution ..........................................................................................37
2.2   Allowance of Bond Claims ...................................................................................37
2.3   Releases, Injunctions and Exculpation ..............................................................37
2.4   HTA Operational Restructuring ..........................................................................37
2.5   Retiree Claims ......................................................................................................38

## ARTICLE III

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

3.1   Administrative Expense Claims ...........................................................................38
3.2   Professional Compensation and Reimbursement Claims ..................................39
3.3   HTA Consummation Costs ...................................................................................39
3.4   HTA Restriction Fee ............................................................................................39

HTA_CONF 00017142

3.5     DRA Restriction Fee ..................................................................................................41

3.6     Non-Severability ......................................................................................................41

## ARTICLE IV

## CLASSIFICATION OF CLAIMS

4.1     Claims are classified as follows ...............................................................................41

## ARTICLE V

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (CLASS 1)

5.1     Treatment of HTA 68 Bond Claims ..........................................................................42

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (AMBAC) (CLASS 2)

6.1     Treatment of HTA 68 Bond Claims (Ambac) .............................................................42

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (ASSURED) (CLASS 3)

7.1     Treatment of HTA 68 Bond Claims (Assured) ...........................................................42

## ARTICLE VIII

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (NATIONAL) (CLASS 4)

8.1     Treatment of HTA 68 Bond Claims (National) ...........................................................43

## ARTICLE IX

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (CLASS 5)

9.1     Treatment of HTA 98 Senior Bond Claims ................................................................43

## ARTICLE X

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (AMBAC) (CLASS 6)

10.1    Treatment of HTA 98 Senior Bond Claims (Ambac) ..................................................43

HTA_CONF 00017143

# ARTICLE XI

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (ASSURED) (CLASS 7)

11.1    Treatment of HTA 98 Senior Bond Claims (Assured) ......................................................43

# ARTICLE XII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (FGIC) (CLASS 8)

12.1    Treatment of HTA 98 Senior Bond Claims (FGIC) ..........................................................44

# ARTICLE XIII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (NATIONAL) (CLASS 9)

13.1    Treatment of HTA 98 Senior Bond Claims (National)......................................................44

# ARTICLE XIV

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (CLASS 10)

14.1    Treatment of HTA 98 Sub Bond Claims ...........................................................................44

# ARTICLE XV

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (ASSURED) (CLASS 11)

15.1    Treatment of HTA 98 Sub Bond Claims (Assured)...........................................................44

# ARTICLE XVI

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (FGIC) (CLASS 12)

16.1    Treatment of HTA 98 Sub Bond Claims (FGIC)...............................................................45

# ARTICLE XVII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (NATIONAL) (CLASS 13)

17.1    Treatment of HTA 98 Sub Bond Claims (National)..........................................................45

HTA_CONF 00017144

# ARTICLE XVIII

## PROVISIONS FOR TREATMENT OF HTA
## MOSCOSO BOND CLAIMS (CLASS 14)

18.1    Treatment of HTA Moscoso Bond Claims ........................................................................45

# ARTICLE XIX

## PROVISIONS FOR TREATMENT EMINENT
## DOMAIN/INVERSE CONDEMNATION CLAIMS (CLASS 15)

19.1    Treatment of Eminent Domain/Inverse Condemnation Claims........................................45

# ARTICLE XX

## PROVISIONS FOR TREATMENT OF HTA
## GENERAL UNSECURED CLAIMS (CLASS 16)

20.1    Treatment of HTA General Unsecured Claims .................................................................46
20.2    Limitation on Recovery ..................................................................................................47
20.3    GUC Reserve ................................................................................................................47

# ARTICLE XXI

## PROVISIONS FOR TREATMENT OF
## HTA/GDB CLAIMS (CLASS 17)

21.1    Treatment of HTA/GDB Claims.....................................................................................47

# ARTICLE XXII

## PROVISIONS FOR TREATMENT OF
## SECTION 510(b) SUBORDINATED CLAIMS (CLASS 18)

22.1    Treatment of Section 510(b) Subordinated Claims ..........................................................47

# ARTICLE XXIII

## PROVISIONS FOR TREATMENT OF
## CONVENIENCE CLAIMS (CLASS 19)

23.1    Treatment of Convenience Claims...................................................................................48

# ARTICLE XXIV

## PROVISIONS FOR TREATMENT
## OF FEDERAL CLAIMS (CLASS 20)

24.1    Treatment of Federal Claims .........................................................................................48

x

HTA_CONF 00017145

# ARTICLE XXV

## PROVISIONS REGARDING SECURED OBLIGATIONS
## AND ADDITIONAL INDEBTEDNESS

25.1   Issuance and Distribution of the New HTA Bonds .............................................48
25.2   Tax-Exempt Treatment of the New HTA Bonds.................................................52
25.3   Adoption and Maintenance of a Debt Management Policy ...............................52

# ARTICLE XXVI

## PROVISIONS REGARDING ASSURED INSURED BONDS, NATIONAL
## INSURED BONDS, AMBAC INSURED BONDS AND FGIC INSURED BONDS

26.1   Treatment of Assured Insured Bond Claims.....................................................54
26.2   Treatment of National Insured Bond Claims ...................................................56
26.3   Treatment of FGIC Insured Bond Claims.........................................................59
26.4   Treatment of Ambac Insured Bond Claims ......................................................61
26.5   Fiscal Agent Obligations.....................................................................................64

# ARTICLE XXVII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

27.1   Rejection or Assumption of Remaining Executory Contracts and Unexpired
       Leases....................................................................................................................64
27.2   Approval of Rejection or Assumption of Executory Contracts and Unexpired
       Leases....................................................................................................................65
27.3   Inclusiveness .........................................................................................................65
27.4   Cure of Defaults ...................................................................................................65
27.5   Insurance Policies ................................................................................................66
27.6   Rejection Damage Claims....................................................................................66
27.7   Indemnification and Reimbursement Obligations ...........................................66
27.8   Nonoccurrence of HTA Effective Date .............................................................66
27.9   Reservation of Rights...........................................................................................66
27.10  Collective Bargaining Agreements ....................................................................67

# ARTICLE XXVIII

## PROVISIONS GOVERNING DISTRIBUTIONS

28.1   Time and Manner of Distribution ......................................................................67
28.2   Timeliness of Payments .......................................................................................68
28.3   Distributions by the Disbursing Agent ..............................................................68
28.4   Manner of Payment under the HTA Plan ..........................................................68
28.5   Delivery of Distributions .....................................................................................68
28.6   Cancellation of Notes, Instruments, Certificates, and Other Documents .........69
28.7   Undeliverable/Reserved Distributions ...............................................................70
28.8   Withholding and Reporting Requirements .........................................................70

HTA_CONF 00017146

28.9 Time Bar to Cash Payments..........................................................................71
28.10 Distributions After HTA Effective Date.......................................................71
28.11 Setoffs ..........................................................................................................71
28.12 Allocation of Plan Distributions Between Principal and Interest ...................71
28.13 Payment of Trustee Fees and Expenses .........................................................72
28.14 Beneficial Owner ..........................................................................................72
28.15 Value of Distributions...................................................................................73
28.16 Disputed Funds Stipulation...........................................................................73

# ARTICLE XXIX

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE DEBTOR

29.1 Prosecution of Claims ...................................................................................74

# ARTICLE XXX

## ACCEPTANCE OR REJECTION OF THE HTA PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

30.1 Impaired Classes to Vote ..............................................................................74
30.2 Acceptance by Class of Creditors ..................................................................74
30.3 Cramdown.....................................................................................................74

# ARTICLE XXXI

## RIGHTS AND POWERS OF DISBURSING AGENT

31.1 Exculpation ..................................................................................................74
31.2 Powers of the Disbursing Agent ....................................................................75
31.3 Fees and Expenses Incurred From and After the HTA Effective Date............75

# ARTICLE XXXII

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS AND CLAIMS SUBJECT TO ACR PROCEDURES

32.1 Objections to Claims; Prosecution of Disputed Claims....................................75
32.2 Estimation of Claims.....................................................................................76
32.3 Payments and Distributions on Disputed Claims.............................................76
32.4 Authority to Amend Lists of Creditors ..........................................................77
32.5 Non-Accrual of Interest .................................................................................77
32.6 Disallowance of Claims .................................................................................77
32.7 Claims Subject to ACR Procedures ...............................................................78

HTA_CONF 00017147

# ARTICLE XXXIII

## IDENTIFICATION OF CLAIMS IMPAIRED BY THE HTA PLAN
## AND NOT IMPAIRED BY THE HTA PLAN

33.1    Impaired Classes ................................................................................................78
33.2    Unimpaired HTA Classes ..................................................................................78

# ARTICLE XXXIV

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE HTA PLAN

34.1    Conditions Precedent to Confirmation of the HTA Plan ....................................79
34.2    Waiver of Conditions Precedent to Confirmation .............................................80

# ARTICLE XXXV

## CONDITIONS PRECEDENT TO THE HTA EFFECTIVE DATE

35.1    Conditions Precedent to the HTA Effective Date ..............................................80
35.2    Waiver of Conditions Precedent ........................................................................83
35.3    Effect of Non-Occurrence of Conditions to HTA Effective Date .....................84

# ARTICLE XXXVI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE HTA PLAN

36.1    Modification of HTA Plan .................................................................................84
36.2    Revocation or Withdrawal .................................................................................84
36.3    Amendment of Plan Documents ........................................................................84
36.4    No Admission of Liability .................................................................................85

# ARTICLE XXXVII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED HTA

37.1    Corporate Action ...............................................................................................85
37.2    Amendment of By-Laws .....................................................................................86
37.3    Directors of Reorganized HTA ..........................................................................86
37.4    Officers of Reorganized HTA ............................................................................86

# ARTICLE XXXVIII

## PROVISIONS REGARDING OVERSIGHT BOARD AND
## COMPLIANCE WITH PROMESA

38.1    Effect of Confirmation .......................................................................................86
38.2    Ongoing Role of the Oversight Board ...............................................................86
38.3    Preemption of Laws ..........................................................................................86

HTA_CONF 00017148

# ARTICLE XXXIX

## PROVISIONS REGARDING CREDITORS' COMMITTEE

39.1   Dissolution of Creditors' Committee ................................................................87

# ARTICLE XL

## RETENTION OF JURISDICTION

40.1   Retention of Jurisdiction ....................................................................................88

# ARTICLE XLI

## MISCELLANEOUS PROVISIONS

41.1   Title to Assets .....................................................................................................90
41.2   Discharge and Release of Claims and Causes of Action ....................................90
41.3   Injunction on Claims ...........................................................................................93
41.4   Integral to HTA Plan ...........................................................................................93
41.5   Releases by the Debtor and Reorganized HTA ...................................................93
41.6   Injunction Related to Releases ............................................................................94
41.7   Exculpation .........................................................................................................94
41.8   Appointments Related Litigation/Uniformity Litigation ....................................96
41.9   Bar Order .............................................................................................................96
41.10  No Waiver ............................................................................................................97
41.11  Supplemental Injunction .....................................................................................97
41.12  Post-Effective Date Fees and Expenses ..............................................................98
41.13  Securities Act Exemption ....................................................................................98
41.14  Severability ..........................................................................................................98
41.15  Governing Law .....................................................................................................98
41.16  Closing Case ........................................................................................................99
41.17  Section Headings .................................................................................................99
41.18  Inconsistencies ....................................................................................................99
41.19  Document Retention ............................................................................................99
41.20  Immediate Binding Effect ...................................................................................99
41.21  Additional Documents .......................................................................................100
41.22  Reservation of Rights ........................................................................................100
41.23  Successors and Assigns .....................................................................................100
41.24  Notices ...............................................................................................................100
41.25  Term of Injunctions or Stays .............................................................................102
41.26  Entire Agreement ..............................................................................................102
41.27  Plan Supplement ...............................................................................................102

HTA_CONF 00017149

The Financial Oversight and Management Board for Puerto Rico, as Title III representative of the Puerto Rico Highways and Transportation Authority pursuant to Section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act*, hereby proposes the following plan of adjustment.

<h1 style="text-align:center">ARTICLE I</h1>

<h2 style="text-align:center">DEFINITIONS</h2>

As used in the HTA Plan, the following terms have the respective meanings set forth below and are equally applicable to the singular and plural of the terms defined:

1.1 **AAFAF:** Autoridad de Asesoría Financiera y Agencia Fiscal, a public corporation and instrumentality of the Commonwealth, whose name in English is the Puerto Rico Fiscal Agency and Financial Advisory Authority.

1.2 **ACR Order:** That certain Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief, dated March 12, 2020 [Case. No. 17-3283-LTS, ECF No. 12274].

1.3 **Act 106:** Act No. 106 of August 23, 2017, which created the pay-as-you-go pension system known as "PayGo" and established a defined contribution retirement system to replace the retirement benefit plan pursuant to Act No. 12 of October 19, 1954, as amended, Act No. 3 of April 4, 2013, as amended, and Act No. 160 of December 24, 2013, as amended.

1.4 **Administrative Claim Bar Date:** Unless otherwise ordered by the Title III Court, the date established by the Title III Court and set forth in the HTA Confirmation Order as the last day to file proof of Administrative Expense Claims, which date shall be no more than ninety (90) days after the HTA Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtor and Reorganized HTA shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Title III Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by the Debtor during the period from and after the HTA Petition Date, or (e) is the subject of a pending motion seeking allowance of an administrative expense pursuant to section 503(b) of the Bankruptcy Code as of the entry of the HTA Confirmation Order.

1.5 **Administrative Expense Claim:** A Claim against the Debtor or its Assets constituting a cost or expense of administration of the Title III Case asserted or authorized to be asserted, on or prior to the Administrative Claim Bar Date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the HTA Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the HTA Effective Date, and except as provided in Section 3.5 hereof, Consummation Costs and HTA PSA Restriction Fees.

1

1.6 **ADR Order:** That certain Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief, dated April 1, 2020 [Case. No. 17-3283-LTS, ECF No. 12576].

1.7 **ADR Procedures:** The alternative dispute resolution procedures authorized pursuant to the ADR Order.

1.8 **Affiliate:** With respect to any specified Entity, any other Entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Entity.

1.9 **AFICA:** Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority.

1.10 **Allowed:** With respect to any Claim against HTA, such Claim or portion thereof (a) proof of which was filed on or before the applicable Bar Date or (b) if no proof of Claim has been timely filed, which has been or hereafter is listed by the Debtor in the List of Creditors and is not listed thereon as "disputed", "contingent", or "unliquidated" or (c) allowed pursuant to (i) section 502(h) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, (ii) the terms of the HTA Plan or (iii) a Final Order; provided, however, that, with respect to any Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if, and to the extent that, no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the HTA Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which an objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. For purposes of determining the amount of an "Allowed Claim" with respect to distributions within a Class, there shall be deducted therefrom an amount equal to the amount of any, original issue discount not accrued as of the date immediately prior to the HTA Petition Date and any Claim that the Debtor may hold against the holder thereof, to the extent such Claim may be set off pursuant to applicable bankruptcy and non-bankruptcy law. Notwithstanding anything to the contrary herein (x) Claims allowed solely for the purpose of voting to accept or reject the HTA Plan pursuant to an order of the Title III Court shall not be considered "Allowed" hereunder unless otherwise specified herein or by order of the Title III Court, (y) for any purpose under the HTA Plan, "Allowed" shall not include interest, penalties, or late charges arising from or relating to the period from and after the HTA Petition Date, and (z) "Allowed" shall not include any Claim subject to disallowance in accordance with section 502(d) of the Bankruptcy Code.

1.11 **Allowed Claim:** A Claim, to the extent it is or has become Allowed.

1.12 **Ambac:** Ambac Assurance Corporation or its successor or designee.

1.13 **Ambac Acceleration Price:** With respect to any Ambac Insured Bond, an amount equal to the outstanding principal amount of such Ambac Insured Bond plus the accrued and unpaid interest thereon as of the date of payment; provided, however, that such amount shall be adjusted to account for any payment of principal and/or accrued interest made to the holder of such Ambac Insured Bond on account of the Ambac Insurance Policies prior to the payment of

2

an applicable Allowed Ambac Insured Bond Claim in accordance with the terms and provisions of Section 26.4 hereof.

1.14   **Ambac Action:**  The litigation styled <u>Ambac Assurance Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al.</u>, currently pending in the Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV01505.

1.15   **Ambac Bondholder Elections:**  Collectively, the elections provided to Ambac Insured Bond holders in accordance with the terms and provisions of Section 26.4 hereof and set forth in the Ambac Bondholder Election Form.

1.16   **Ambac Bondholder Election Forms:**  The "Election Notice to Holders of Ambac Insured HTA 98 Senior Bond Claims" attached as Schedule 5(a) to the Disclosure Statement Order.

1.17   **Ambac Bondholder Notice Form:**  The "Notice to Holders of Ambac Insured HTA 68 Bond Claims" attached as Schedule 4(e) to the Disclosure Statement Order.

1.18   **Ambac Certificates:**  The certificate(s) or unit(s) to be issued by the Ambac Trust to beneficial holders of HTA Bonds electing treatment pursuant to the terms and provisions of Section 26.4 hereof and which HTA Bonds are deposited into the Ambac Trust.

1.19   **Ambac Commutation Consideration:**  A combination of some or all of the following selected at Ambac's sole discretion at or prior to the commencement of the Disclosure Statement Hearing: (a) some or all of a holder's Pro Rata Share of the Ambac Plan Consideration; (b) a percentage, to be determined at Ambac's sole discretion, of the Consummation Costs and/or the HTA PSA Restriction Fee allocable to Ambac in accordance with the terms and provisions of Article III hereof; and (c) Cash in an amount to be determined by Ambac in its sole discretion.

1.20   **Ambac Commutation Treatment:**  The treatment set forth in Section 25.4(b)(i) hereof.

1.21   **Ambac CW/HTA Bond Claims:**  Collectively, the CW/HTA Claims arising from the HTA Bonds insured by Ambac.

1.22   **Ambac Election:**  Ambac's rights, as set forth in Section 26.4 hereof, to select the form of Ambac Treatment.

1.23   **Ambac Election Notice:**  The "Ambac Election Notice" attached as Schedules 4(e) and 5(a) to the Disclosure Statement Order.

1.24   **Ambac Insured Bond Claims:**  Collectively, the Claims against HTA arising from the Ambac Insured Bonds, including, any HTA 68 Bond Claims (Ambac) and HTA 98 Senior Bond Claims (Ambac).

1.25   **Ambac Insured Bondholder:**  The beneficial holder of an Ambac Insured Bond.

3

HTA_CONF 00017152

1.26 **Ambac Insured Bonds:** Collectively, the HTA Bonds that have been insured by Ambac or are otherwise owned (by subrogation or otherwise) by Ambac, including, without limitation, pursuant to a secondary market insurance policy.

1.27 **Ambac Insurance Policies:** The existing insurance policies issued by Ambac (or a predecessor in interest thereof) relating to the Ambac Insured Bonds, together with any and all agreements and other documents related thereto.

1.28 **Ambac Non-Commutation Treatment:** The treatment set forth in Section 26.4(b)(ii) hereof.

1.29 **Ambac Plan Consideration:** The consideration allocable or distributable to holders of Allowed Ambac Insured Bond Claims and the CW/HTA Recovery allocable to holders of the Allowed Ambac CW/HTA Claims.

1.30 **Ambac Treatment:** The treatment of Ambac Insured Bond Claims set forth in Section 26.4 hereof comprised of the Ambac Commutation Treatment and the Ambac Non-Commutation Treatment.

1.31 **Ambac Trust:** With respect to each class of Ambac Insured Bonds, a separate trust or custodial arrangement that will be formed, on or prior to the HTA Effective Date, by HTA, at the sole cost and expense of Ambac and for the benefit of the beneficial holders of such Ambac Insured Bonds.

1.32 **Ambac Trust Assets:** Collectively, the assets to be deposited into the Ambac Trust(s), consisting of (a) the Ambac Insured Bonds, (b) the Ambac Plan Consideration, and (c) the Ambac Insurance Policies.

1.33 **Appointments Related Litigation:** Collectively, the litigation styled (a) Pinto Lugo, et al. v. United States, Case No. 21-1283 (appealed from Adv. Proc. No. 18-00041-LTS), currently pending in the United States Court of Appeals for the First Circuit, (b) Hermandad De Empleados Del Fondo Del Seguro Del Estado, Inc., et al. v. United States, Case No. 19-2243 (appealed from Adv. Proc. No. 18-00066), currently pending in the United States Court of Appeals for the First Circuit, (c) Hernandez-Montañez, et al. v. The Financial Oversight & Management Board for Puerto Rico, Adv. Proc. No. 18-00090, currently pending in the Title III Court, and (d) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the HTA Effective Date wherein claims or Causes of Action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigations have been asserted.

1.34 **Assets:** Collectively, (i) all "property" of the Debtor, including, without limitation, such property as it may be reflected on the Debtor's books and records and the HTA Confirmation Order as of the HTA Effective Date and (ii) all Causes of Action, and any subsequent proceeds thereof, that have been or may be commenced by the Debtor or other authorized representative for the benefit of the Debtor and its Creditors, unless modified or released pursuant to the HTA Plan or a Final Order, including, without limitation, any Avoidance Action.

4

HTA_CONF 00017153

1.35 **Assured:** Assured Guaranty Corp. and Assured Guaranty Municipal Corp., together with their respective successors or designees.

1.36 **Assured Acceleration Price:** A price equal to the outstanding principal amount of an Assured Insured Bond plus accrued and unpaid interest thereon, or, in the case of any capital appreciation bonds, the compounded amount thereof, in each case, as of the date of payment.

1.37 **Assured Bondholder Elections:** Collectively, the elections provided to Assured Insured Bondholders pursuant to Section 26.1(b) hereof in the event Assured does not exercise the Assured Election.

1.38 **Assured Bondholder Elections Form:** The "Election Notice for Certain Assured Insured Bondholders with Claims in Classes 3 and 7" attached as Schedule 5(b) to the Disclosure Statement Order.

1.39 **Assured CW/HTA Bond Claims:** Collectively, the CW/HTA Claims arising from HTA Bonds insured by Assured, including pursuant to a secondary market insurance policy.

1.40 **Assured Election:** Assured's rights, as set forth in Section 26.1 hereof, to receive the Assured New HTA Bonds allocable to holders of Assured Insured Bonds, and to cause all or any portion of the Assured Insured Bonds selected by Assured to be paid by Assured, in full, on the HTA Effective Date, at an Assured Acceleration Price equal to the outstanding principal amount of such Assured Insured Bonds plus the accrued and unpaid interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) as of the date of payment in accordance with the Assured Insurance Policies insuring the Assured Insured Bonds.

1.41 **Assured Election Notice:** The "Assured Election Notice", a copy of which is attached as Schedule 5(c) to the Disclosure Statement Order.

1.42 **Assured Insurance Policies:** The existing insurance policies issued by Assured relating to the Assured Insured Bonds, together with any and all agreements and other documents related thereto.

1.43 **Assured Insured Bond Claim:** A Claim against HTA arising from an Assured Insured Bond, including any HTA 68 Bond Claims (Assured), HTA 98 Senior Bond Claims (Assured), and HTA 98 Sub Bond Claims (Assured).

1.44 **Assured Insured Bondholder:** The beneficial holder of an Assured Insured Bond.

1.45 **Assured Insured Bonds:** Collectively, the HTA Bonds that have been insured or are otherwise owned (by subrogation or otherwise) by Assured, including, without limitation, pursuant to a secondary market insurance policy; provided, however, that, for the avoidance of doubt, "Assured Insured Bonds" shall include the bonds identified on Exhibit "A" to the Assured Election Notice and Exhibit "A" to the Assured Bondholder Elections Form

5

HTA_CONF 00017154

1.46 **Assured New HTA Bonds:** The New HTA Bonds allocable to holders of Assured Insured Bond Claims.

1.47 **Assured Plan Consideration:** The consideration allocable or distributable to holders of Allowed Assured Insured Bond Claims, consisting of (a) in the case of Assured Insured Bonds that are HTA 68 Bonds or HTA 98 Senior Bonds, but not Dual-Insured Bonds, (i) New HTA Bonds and/or (ii) in the event of an election by the Commonwealth and/or HTA to substitute Cash for the issuance of New HTA Bonds on the HTA Effective Date, Cash resulting from such election by the Commonwealth and/or HTA to substitute Cash for the New HTA Bonds on the HTA Effective Date, (b) in the case of Dual-Insured Bonds, FGIC Certificates, and (c) in the case of Assured Insured Bonds that are HTA 98 Sub Bonds, subject to the terms and provisions of the Commonwealth Plan and the Commonwealth Confirmation Order, any HTA 98 Sub Bond Recovery allocable to the related HTA 98 Sub Bond Claims (Assured); provided, however, that, for the avoidance of doubt, no Cash, securities, or other consideration that Assured is entitled to receive pursuant to Article LXIII of the Commonwealth Plan or decretal paragraph 52 of the Commonwealth Confirmation Order shall constitute Assured Plan Consideration.

1.48 **Assured Treatment:** The treatment of Assured Insured Bond Claims set forth in Section 26.1 hereof.

1.49 **Assured Trust**: A custodial trust, escrow arrangement or similar structure established pursuant to Section 26.1(b)(ii) of the HTA Plan.

1.50 **Avoidance Actions:** The avoidance, recovery, subordination actions identified on Exhibit "A" hereto, as such Exhibit "A" may be amended or modified up to and including the HTA Effective Date, against any Entity that have been brought by or on behalf of the Debtor against an Entity under sections 510, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, or applicable non-bankruptcy law, (b) such other actions that have been brought by or on behalf of the Debtor seeking affirmative recoveries, and which actions are set forth on Exhibit "A" hereto, as such Exhibit "A" may be amended or modified up to and including the HTA Effective Date, and (c) all similar Causes of Action that are currently subject to tolling agreements with HTA; provided, however, that under no circumstances shall "Avoidance Actions" include, (x) any Claim or Cause of Action against any Entity relating to HTA Bond Claims, (y) any Claim or Cause of Action related to the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 17-3283-LTS, ECF No. 15854], as amended, which terminated upon entry of the Commonwealth Confirmation Order, or (z) any Claim or Cause of Action related to the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended, which terminated upon entry of the Commonwealth Confirmation Order.

1.51 **Avoidance Actions Trust:** The trust created on the Commonwealth Effective Date into which have been transferred Claims and Causes of Action of the Commonwealth, ERS,

6

and PBA, and into which on the HTA Effective Date shall be transferred the authority to litigate or compromise and settle the Avoidance Actions.

1.52 **Avoidance Actions Trust Agreement:** That certain Avoidance Actions Trust Agreement, dated as of March 15, 2022, by and among the Commonwealth ERS, PBA, the Oversight Board and Drivetrain, LLC.

1.53 **Avoidance Actions Trust Board:** The three (3) member board appointed as of the Commonwealth Effective Date to govern the Avoidance Actions Trust.

1.54 **Avoidance Actions Trustee:** Drivertrain LLC, the trustee appointed by the Avoidance Actions Trust Board in accordance with the terms and provisions of the Avoidance Actions Trust Agreement.

1.55 **Ballot Date:** The deadline(s) established by the Title III Court and set forth in the Disclosure Statement Order for the submission of Ballots/Election Forms and the election of alternative treatments pursuant to the terms and provisions of the HTA Plan.

1.56 **Ballot/Election Form:** The ballot and election form, the form of which is approved by the Title III Court, distributed to each holder or insurer, as the case may be, of an impaired Claim entitled to vote on, or otherwise make an election with respect to, the HTA Plan, on which form is to be indicated, among other things, (a) acceptance or rejection of the HTA Plan and/or (b) to the extent applicable, an election of distribution and treatment which may be required in accordance with the provisions of the HTA Plan.

1.57 **Bankruptcy Code:** The Bankruptcy Reform Act of 1978, as amended, to the extent codified in Title 11, United States Code, and made applicable to the Title III Case.

1.58 **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, as amended and as applicable to the Title III Case.

1.59 **Bar Date:** The date established by the Title III Court by which proofs of Claim against the Debtor must have been filed pursuant to (a) the Bar Date Orders, (b) a Final Order of the Title III Court, or (c) the HTA Plan.

1.60 **Bar Date Orders:** The orders of the Title III Court establishing the dates by which proofs of Claim against the Debtor or its Assets must have been filed, including, but not limited to, that certain (a) Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF No. 2521], and (b) Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [Case No. 17-3283-LTS, ECF No. 3160].

1.61 **Business Day:** A day other than a Saturday, Sunday, or any other day on which commercial banking institutions in New York, New York and San Juan, Puerto Rico are required to close by law or executive order.

HTA_CONF 00017156

1.62     **Capital Improvements:**  Any project or projects (a) funded, or proposed to be funded, in whole or in part, by or through public monies, to construct, reconstruct, restore, rehabilitate or purchase any equipment, property or facilities of HTA, including, without limitation, buildings, infrastructure, information technology systems or other equipment that is funded on a necessarily non-repeating basis that is to be used as a public asset or for the public benefit, or (b) financed or proposed to be financed, in whole or in part, through the issuance of private activity bonds or other similar instruments.

1.63     **Cash:**  Lawful currency of the United States, including, but not limited to, bank deposits, checks representing good funds, and legal equivalents thereof.

1.64     **Causes of Action:**  All claims, actions, causes of action, rights to payment, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims (including, but not limited to, all claims for breach of fiduciary duty, negligence, malpractice, breach of contract, aiding and abetting, fraud, inducement, avoidance, recovery, subordination, and all Avoidance Actions) that are pending or may be asserted against any Entity whether arising on or before the HTA Effective Date, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise and whether asserted or unasserted as of the HTA Effective Date.

1.65     **CCDA:**  Puerto Rico Convention Center District Authority.

1.66     **Charging Lien:**  A lien or right to priority of payment to which the HTA Fiscal Agent may be entitled pursuant to an applicable governing resolution, trust agreement, or other document or instrument against distributions to be made in accordance with the terms and provisions of the HTA Plan for payment of reasonable compensation, indemnification, fees, expenses and disbursements incurred prior or subsequent to the HTA Effective Date.

1.67     **Claim:**  Any right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, Causes of Action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise.

1.68     **Class:**  A category of Claims set forth in Article IV of the HTA Plan.

1.69     **Clawback Actions:**  Collectively, the litigation styled (a) <u>The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al.</u>, Adv. Pro. No. 20-00005-LTS, currently pending in the Title III Court, (b) <u>The Financial Oversight and</u>

HTA_CONF 00017157

Management Board for Puerto Rico v. Ambac Assurance Corporation, et al., Adv. Pro. No. 20-00004-LTS, currently pending in the Title III Court, (c) The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al., Adv. Pro. No. 20-00003-LTS, currently pending in the Title III Court, and (d) The Financial Oversight and Management Board for Puerto Rico v. Ambac Assurance Corporation, et al., Adv. Pro. No. 20-00007-LTS, currently pending in the Title III Court.

1.70 **Clawback CVI Indenture:** The indenture executed and delivered on the Commonwealth Effective Date pursuant to which the Commonwealth issued the Clawback CVIs, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time in accordance with its terms and conditions.

1.71 **Clawback CVIs:** Collectively, the general obligation securities, the payment for which the Commonwealth has pledged its full faith, credit and taxing power pursuant to Article VI of the Commonwealth Constitution and applicable Puerto Rico law issued on the Commonwealth Effective Date by the Commonwealth in accordance with the terms and conditions of Annex "2" to Exhibit "J" to the Commonwealth Plan, including, without limitation, as implemented in accordance with the Commonwealth Confirmation Order, the Clawback CVI Indenture and the CVI Legislation.

1.72 **COFINA:** Puerto Rico Sales Tax Financing Corporation.

1.73 **Commonwealth:** The Commonwealth of Puerto Rico.

1.74 **Commonwealth Confirmation Order:** The Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority, dated January 18, 2022 (Case No. 17-03283-LTS, ECF No. 19813).

1.75 **Commonwealth Constitution:** The Constitution of the Commonwealth of Puerto Rico.

1.76 **Commonwealth Effective Date:** March 15, 2022, the date on which the Commonwealth Plan was substantially consummated in accordance with its terms and the provisions of the Commonwealth Plan and the Commonwealth Confirmation Order.

1.77 **Commonwealth Loan:** The loan extended by the Commonwealth to HTA in the original principal amount up to Three Hundred Sixty-Two Million Dollars ($362,000,000.00) in connection with, among other things, HTA's obligations pursuant to the HTA/CCDA Plan Support Agreement, the Commonwealth Confirmation Order, and the DRA Stipulation.

1.78 **Commonwealth Legislature:** The Legislative Assembly of Puerto Rico.

1.79 **Commonwealth Plan:** That certain Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al., dated January 14, 2022 [Case No. 17-3283-LTS, ECF. No 19784].

HTA_CONF 00017158

1.80 **Consummation Costs:** Collectively, the amount set forth in Section 3.3 hereof to be paid, in Cash, on the HTA Effective Date, or as soon thereafter as practicable, but in no event later than ten (10) Business Days following the HTA Effective Date, to the applicable Initial HTA/CCDA PSA Creditors in accordance with the terms and provisions of the HTA/CCDA Plan Support Agreement, Article III hereof, and the HTA Confirmation Order.

1.81 **Convenience Cap:** Two Million Five Hundred Thousand Dollars ($2,500,000.00), the aggregate amount of consideration to be made available to holders of Allowed Convenience Claims, unless such limitation is otherwise waived by the Creditors' Committee at or prior to the commencement of the HTA Confirmation Hearing.

1.82 **Convenience Claim:** An Allowed HTA General Unsecured Claim (a) that is equal to or less than Twenty Thousand Dollars ($20,000.00) or (b) the holder of which, at such holder's option, has elected to reduce the amount of such Allowed HTA General Unsecured Claim to Twenty Thousand Dollars ($20,000.00) in accordance with terms and provisions set forth in Section 20.1(b) hereof; provided, however, that, notwithstanding the foregoing, a holder of multiple Allowed HTA General Unsecured Claims that are greater than Forty Thousand Dollars ($40,000.00) in the aggregate, may elect to reduce all such Claims to an aggregate amount of Forty Thousand Dollars ($40,000.00); and, provided, further, that the aggregate amount of consideration to be made available to Convenience Claims shall be Two Million Five Hundred Thousand Dollars ($2,500,000.00), which Convenience Cap may be waived by the Creditors' Committee at or prior to the commencement of the HTA Confirmation Hearing in its sole and absolute discretion; and, provided, further, that, in the event the Convenience Cap is exceeded and not waived by the Creditors' Committee at or prior to the commencement of the HTA Confirmation Hearing, holders of Allowed Convenience Claims shall receive a Pro Rata Share of the Convenience Cap.

1.83 **Conversion Date:** The final compounding date for the accretion period associated with the New HTA Convertible CABs at which time the New HTA Convertible CABs shall begin to accrue and pay interest on a semi-annual basis.

1.84 **Creditor:** Any Entity holding a Claim against the Debtor or any of the Debtor's Assets or, pursuant to section 102(2) of the Bankruptcy Code, against any other property of the Debtor, including, without limitation, a Claim against the Debtor of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case, solely in such Entity's capacity as such.

1.85 **Creditors' Committee:** The statutory committee of unsecured claimholders appointed in the HTA Title III Case.

1.86 **CUSIP:** The Committee on Uniform Securities Identification procedures nine-digit numeric or nine-digit character alphanumeric code.

1.87 **Custodial Trust Documents:** Collectively, the trust agreements and other documents and instruments attendant to the custodial trusts to be created as of the HTA Effective Date and relating to the HTA Bonds insured by a Monoline, if applicable, and the distributions to

10

be made in accordance with the HTA Plan, which trust agreements shall be in form and substance reasonably satisfactory to the Oversight Board and the respective Monolines.

1.88     **CVIs:**  Collectively, GO CVIs and the Clawback CVIs.

1.89     **CVI Indenture:**  Collectively, the GO CVI Indenture and the Clawback CVI Indenture.

1.90     **CVI Legislation:**  Act No. 53 of October 26, 2021, known as the "Law to End the Bankruptcy of Puerto Rico".

1.91     **CW/Convention Center Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to CCDA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order including claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 13 L.P.R.A. §2271v, 23 L.P.R.A. §104(c), and the Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, and OE-2016-31, and (b) the indebtedness issued by CCDA pursuant to that certain Trust Agreement, dated as of March 24, 2006, between CCDA and JPMorgan Chase Bank, N.A., as trustee.

1.92     **CW/HTA Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to HTA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including, without limitation, claims asserted on account of the GDB HTA Loans and claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 9 L.P.R.A. §2021, 13 L.P.R.A. §31751 (a)(3)(C), 23 L.P.R.A. §104(c), and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-14, OE-2016-18, OE-2016-30, and OE-2016-31 and (b) the indebtedness issued by HTA pursuant to that certain (i) Resolution No. 68-18, adopted June 13, 1968, and (ii) Resolution No. 98-06, adopted February 26, 1998.

1.93     **CW/HTA Clawback Recovery:**  The aggregate recovery by holders or insurers of Allowed CW/HTA Claims, consisting of sixty-eight and six tenths percent (68.6%) of the Clawback CVIs, as presented within Annex 4 of Exhibit "J" to the Commonwealth Plan.

1.94     **CW/MBA Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to MBA related to the rights or obligations arising under the provisions of the Commonwealth Constitution, any statute, regulation, or executive order.

1.95     **CW/PRIFA Rum Tax Claim:**  The Claim against the Commonwealth arising from or related to the Commonwealth's retention of certain funds historically transferred to PRIFA pursuant to the provisions of the Commonwealth Constitution, any statute, regulation, or executive order, including Claims related to the rights or obligations arising under (a) Section 8 of Article VI of the Commonwealth Constitution, 3 L.P.R.A. §1914, and Commonwealth of Puerto Rico Administrative Bulletin Nos. OE-2015-46, OE-2016-27, and OE-2016-30, and (b)

11

HTA_CONF 00017160

the indebtedness issued by PRIFA pursuant to that certain Trust Agreement, dated as of October 1, 1988, between PRIFA and U.S. Bank Trust National Association, as successor trustee.

1.96 **Debt:** Collectively, bonds, notes, loans and other evidences of indebtedness for borrowed money; provided, however, that "Debt" shall not include the Secured Obligations.

1.97 **Debtor:** HTA.

1.98 **Debt Management Policy:** The policy developed by HTA, and approved by the Oversight Board, relating to the issuance of indebtedness by Reorganized HTA, as more fully described in Section 24.3 hereof.

1.99 **Debt Policy Period:** The period commencing on the first (1st) calendar day immediately following the HTA Effective Date and ending on the first (1st) calendar day on which no New HTA Bonds or refinancing thereof remain outstanding.

1.100 **Debt Related Objections:** Collectively, that certain (a) Omnibus Objection of (I) Financial Oversight and Management Board, Acting through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds, dated January 14, 2019 [Case No. 17-3283-LTS, ECF No. 4784], (b) Omnibus Objections of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds, dated May 21, 2019 [Case No. 17-3283-LTS, ECF No. 7057], (c) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of Certain Puerto Rico Public Buildings Authority Bonds, dated July 18, 2019 [Case No. 17-3283-LTS, ECF No. 8141], (d) Omnibus Objection of the Lawful Constitutional Debt Coalition, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Bonds Issued or Guaranteed by the Commonwealth, dated January 8, 2020 [Case No. 17-3283-LTS, ECF. No. 9730], (e) Official Committee of Unsecured Creditors Omnibus Objection on Constitutional Debt Limit Grounds to (I) Claim of Government Development Bank for Puerto Rico [Claim Number 29485] Based on Certain Commonwealth-Issued Notes and on Commonwealth Guaranty of Certain Bonds Issued by Port of Americas Authority, (II) Claim of ScotiaBank de Puerto Rico [Claim Number 47658] Based on Full Faith and Credit Note Issued by Puerto Rico General Services Administration, and (III) Claims filed or Asserted Against Commonwealth Based on Commonwealth Guaranty of Certain Notes Issued by Puerto Rico Infrastructure Authority, dated January 8, 2020 [Case No. 17-3283-LTS, ECF No. 9735], solely as it relates to the CW Bond Claims and the CW Guarantee Bond Claims, (f) Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors, dated February 3, 2020 [Case No. 17-3283-LTS, ECF No. 10638], (g) Objection of Official Committee of Unsecured Creditors to Claim of Government Development Bank for Puerto Rico Against Commonwealth of Puerto Rico (Claim Number 29,485) [Case No. 17-3283-LTS, ECF No. 8000], solely as it relates to the CW Bond Claims and the CW Guarantee Bond Claims, and (h) any other (i) litigations or actions, including, without

12

HTA_CONF 00017161

limitation, litigations or actions commenced to recover principal and/or interest with respect to the GO Bonds, the PBA Bonds and/or the PRIFA BANs, and (ii) any other objections or joinders to these or other such objections or joinders to these or such other objections or notices of participation that support the relief requested in such objections filed pertaining to the same form and counts of requested relief challenging, among other things, the validity and related rights of the GO Bonds, the PBA Bonds, the PRIFA BANs, the CW Bond Claims, the CW Guarantee Bond Claims, and the PBA Bond Claims.

1.101  **Debt Service Fund:**  The fund to be created in accordance with the terms and provisions of the New HTA Bonds Indenture and Section 25.1 hereof in connection with the deposit of amounts necessary to satisfy the payments of principal and interest on account of the New HTA Bonds.

1.102  **Deemed Issuance Date:**  The earlier to occur of (a) July 1, 2022 and (b) the HTA Effective Date.

1.103  **Definitive Documents:**  Collectively, the definitive documents and agreements contemplated by the HTA Plan, including, without limitation, (a) the HTA Plan (including any amendments, modifications and supplements thereto) and any documentation or agreements related thereto, (b) the Disclosure Statement, the Disclosure Statement Order, the HTA Confirmation Order, and pleadings in support of entry thereof, (c) the New HTA Bonds Indenture and documents or agreements related thereto, (d) the form of bonds for the New HTA Bonds, and (e) each other document that will comprise the Plan Supplement, in all cases, the form and substance of which shall be acceptable to the Oversight Board in its sole and absolute discretion, and reasonably acceptable to AAFAF and the Monolines, and, in the case of clauses (a) and (b) above, reasonably acceptable to the Creditors' Committee.

1.104  **Disallowed:**  With respect to any Claim against the Debtor, a Claim or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is zero, contingent, disputed, or undisputed and as to which no proof of claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Title III Court, (c) has been withdrawn by agreement of the applicable Debtor and the holder thereof, or (d) has been withdrawn by the holder thereof.

1.105  **Disbursing Agent:**  Such Entity or Entities designated by the Oversight Board, upon consultation with AAFAF, on or prior to the HTA Effective Date to make or to facilitate distributions in accordance with the provisions of the HTA Plan.

1.106  **Disclosure Statement:**  The disclosure statement relating to the HTA Plan and approved by the Title III Court pursuant to section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

1.107  **Disclosure Statement Hearing:**  The hearing held by the Title III Court to consider the adequacy of the information contained in the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA.

HTA_CONF 00017162

1.108 **Disclosure Statement Order:** The order of the Title III Court (a) approving the Disclosure Statement as containing adequate information in accordance with the provisions of section 1125 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and (b) authorizing, among other things, the form and manner of solicitation of (i) acceptances and rejections to the HTA Plan, and (ii) elections, if applicable, of distributions hereunder, which order shall be in form and substance reasonably satisfactory to the Initial HTA/CCDA PSA Creditors and each of the Government Parties.

1.109 **Disputed Claim:** A Claim against the Debtor or its Assets, to the extent the allowance of such Claim is the subject of a timely objection or request for estimation in accordance with the HTA Plan, the Bankruptcy Code, the Bankruptcy Rules, or the HTA Confirmation Order, or is otherwise disputed by the Debtor in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by a Final Order.

1.110 **Disputed Funds Stipulation:** That certain Amended and Restated Stipulation and Agreed Order Regarding the Disputed Funds in the HTA Bond Service Accounts, Redemption Accounts and Reserve Accounts, dated March 11, 2022, between (a) the Commonwealth and HTA, by and through the Oversight Board, and (b) The Bank of New York Mellon, in its capacity as fiscal agent, and approved pursuant to an order of the Title III Court, dated March 16, 2022 (Case No. 17-03283 LTS, ECF No. 20366).

1.111 **Distribution Record Date:** The Ballot Date or such other date as may be established by a separate order of the Title III Court, including the HTA Confirmation Order; provided, however, that the "Distribution Record Date" shall not apply to any publicly held securities that will receive a distribution pursuant to the HTA Plan through The Depository Trust Company.

1.112 **DRA:** The GDB Debt Recovery Authority.

1.113 **DRA Parties:** Collectively, AmeriNational Community Services LLC, in its capacity as servicer for the DRA, and Cantor-Katz Collateral Monitor LLC, in its capacity as collateral monitor for Wilmington Trust N.A. in connection with the bonds issued by DRA pursuant to the Government Development Bank for Puerto Rico Debt Restructuring Act, Act No. 109-2017 (as amended), and the Qualifying Modification for GDB approved in accordance with the terms and provisions of Title VI of PROMESA.

1.114 **DRA Restriction Fee:** The fee to be paid, in Cash, on the HTA Effective Date, in accordance with the terms and provisions of the DRA Stipulation, Section 3.5 hereof, and the HTA Confirmation Order, in the amount of Fifteen Million Dollars ($15,000,000.00).

1.115 **DRA Stipulation:** That certain Stipulation in Connection With DRA Related Disputes, dated as of November 5, 2021, by and among the Oversight Board, as representative of the Commonwealth and HTA, Cantor-Katz Collateral Monitor LLC, and AmeriNational Community Services, LLC, and affirmed pursuant to an order, dated November 8, 2021 of the Title III Court [Case No. 17-3283-LTS, ECF No. 19124].

14

1.116 **Dual-Insured Bond:** An Assured Insured Bond that is or was insured by Assured pursuant to a secondary market insurance policy and that also qualifies as an FGIC Insured Bond insured by FGIC pursuant to a primary market insurance policy.

1.117 **Eminent Domain/Inverse Condemnation Claim:** A Claim arising from or related to (a) an Eminent Domain Proceeding and a Final Order entered therein for an amount in excess of the amount deposited by the condemnor in accordance with the terms and provisions of 32 L.P.R.A. §2907, including, without limitation, interest accrued with respect thereto or (b) an asserted inverse condemnation of property caused by an asserted taking of property for public use by the Debtor without due process of law and without having received just compensation, including, without limitation, through the imposition of development restrictions or use limitations.

1.118 **Eminent Domain Proceeding:** A condemnation action or proceeding commenced by HTA or an agency or entity thereof in the Court of First Instance in accordance with the terms and provisions of 32 L.P.R.A. §2905 to obtain title to real property located on Puerto Rico.

1.119 **Entity:** A Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the office of the United States Trustee, or any other entity.

1.120 **ERS:** Employee Retirement System of the Government of the Commonwealth of Puerto Rico.

1.121 **Executory Contract:** A contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection in accordance with section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.122 **Federal Claims:** Collectively, any and all Claims of the United States of America, its agencies, departments or agents, including, without limitation, the United States Department of Housing and Urban Development, the United States Department of Homeland Security, and the United States Department of Labor.

1.123 **FGIC:** Financial Guaranty Insurance Company or its successor or designee.

1.124 **FGIC Action:** The litigation styled Financial Guaranty Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc., et al., currently pending in the Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2020CV06383.

1.125 **FGIC Certificates:** With respect to each FGIC Trust, the certificate(s) or receipt(s) to be issued by such FGIC Trust to the beneficial holders of the FGIC Insured Bonds which are deposited into the FGIC Trust.

1.126 **FGIC CW/HTA Bond Claims:** Collectively, the CW/HTA Claims arising from the HTA Bonds insured by FGIC, including pursuant to a secondary market insurance policy.

15

1.127 **FGIC Escrow Account Agreements:** Those certain (i) Escrow Account
Agreement FGIC CW/HTA Bond Claims Arising from HTA 98 Senior Bonds, dated as of
March 15, 2022, by and among the Commonwealth, FGIC, as escrow agent thereunder, and
FGIC, as the bond insurer of the FGIC Insured HTA 98 Senior Bonds (as defined in such escrow
account agreement), and (ii) Escrow Account Agreement FGIC CW/HTA Bond Claims arising
from HTA 98 Sub Bonds, dated as of March 15, 2022, by and among the Commonwealth, FGIC,
as escrow agent thereunder, and FGIC, as the bond insurer of the FGIC Insured HTA 98 Sub
Bonds (as defined in such escrow account agreement), pursuant to which escrow accounts were
established for the benefit of the beneficial holders of FGIC CW/HTA Bond Claims to hold such
holders' respective allocable shares of the CW/HTA Clawback Recovery (including any
payments received thereon and the net proceeds from any sales thereof) in escrow pending the
HTA Effective Date, and from which such CW/HTA Clawback Recovery shall, on a
proportionate basis, be distributed to FGIC or deposited into the applicable FGIC Trust as
provided in such escrow account agreements.

1.128 **FGIC Insured Bond Claims:** Collectively, the Claims against HTA arising from
the FGIC Insured Bonds, including, any HTA 98 Senior Bond Claims (FGIC) and HTA 98 Sub
Bond Claims (FGIC).

1.129 **FGIC Insured Bonds:** Collectively, the HTA Bonds that have been insured by
FGIC, including, without limitation, pursuant to a secondary market insurance policy.

1.130 **FGIC Insurance Policies:** The existing insurance policies issued by FGIC (or a
predecessor in interest thereof) relating to the FGIC Insured Bonds, together with any and all
agreements and other documents related thereto, in each case as the same may have been
modified by the FGIC Rehabilitation Plan.

1.131 **FGIC Plan Consideration:** The consideration allocable or distributable to
holders of Allowed FGIC Insured Bond Claims.

1.132 **FGIC Rehabilitation Plan:** The First Amended Plan of Rehabilitation for FGIC,
dated June 4, 2013, together with all exhibits thereto and the documents contained in the plan
supplement thereto, in each case as the same may be amended, revised, supplemented or
otherwise modified from time to time.

1.133 **FGIC Treatment:** The treatment of FGIC Insured Bond Claims set forth in
Section 26.3 hereof.

1.134 **FGIC Trust:** With respect to each FGIC Insured Bond, the trust(s) which may
be formed, on or prior to the HTA Effective Date, by HTA, the sole cost and expense of which,
including, without limitation, the formation and maintenance thereof (including trustee fees and
expenses), shall be satisfied from the assets of the respective trust(s), and for the benefit of the
beneficial holders of the FGIC Insured Bonds that are deposited in each trust and FGIC, the
terms of which shall be set forth in the Plan Supplement.

1.135 **Final Order:** An order or judgment of a court of competent jurisdiction that has
been entered on the docket maintained by the clerk of such court and has not been reversed,

HTA_CONF 00017165

vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, remand proceeding, or other proceedings for a new trial, re-argument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument, or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed, reversed or remanded in part or in full, with no further proceedings on remand, by the highest court to which such order was appealed, certiorari shall have been denied, or a new trial, re-argument, or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order, except as provided in the Federal Rules of Appellate Procedure, the Bankruptcy Rules, or the Local Bankruptcy Rules.

1.136 **Findings of fact and Conclusions of Law:** The findings of fact and conclusions of law of the Title III Court entered in the Title III Case in connection with confirmation of the HTA Plan in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable in the Title III Case in accordance with Section 301 of PROMESA.

1.137 **Fiscal Plan:** A "Fiscal Plan" as defined by Section 5(10) of PROMESA.

1.138 **FY:** A fiscal year of HTA, commencing on July 1st and concluding on June 30th of the following calendar year.

1.139 **GDB:** The Government Development Bank for Puerto Rico.

1.140 **GDB/HTA Loans:** Collectively, the loans, if any, made to HTA by GDB and now held by the GDB Debt Recovery Authority in accordance with the Qualifying Modification consummated under Title VI of PROMESA, but expressly excluding from "GDB HTA Loans" any HTA Bonds.

1.141 **GDB Loan Priority Determination:** The determination, rendered in the Commonwealth Title III Case and the HTA Title III Case, (a) with respect to the relative rights of recovery and priority of payment of the HTA 68 Bonds and the HTA 98 Bonds to the rights of GDB with respect to the GDB HTA Loans, and/or (b) that the DRA, including, without limitation, its predecessors and successors in interest, does not possess an allowable claim or entitlement to recover with respect to the HTA Clawback CVI based upon such GDB HTA Loans, as set forth in that certain Opinion and Order Granting Defendants' Motion to Dismiss the Complaint, dated October 29, 2021, of the Title III Court entered in AmeriNational Community Services, LLC, et al. v Ambac Assurance Corporation, et al., Adv. Pro. No. 21-00068-LTS [ECF No 83].

1.142 **GO CVIs:** Collectively, the general obligation securities issued on the Commonwealth Effective Date by the Commonwealth in accordance with the terms and provisions of Annex "1" to Exhibit "J" to the Commonwealth Plan, the Commonwealth Confirmation Order, the GO CVI Indenture and the CVI Legislation.

17

1.143  **Government Entity:**  Any agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority, or municipality of the Government of Puerto Rico.

1.144  **Government Parties:**  Collectively, (a) the Oversight Board, as the representative of the Debtor in accordance with Section 315(b) of PROMESA, (b) committees and subcommittees of the Oversight Board, including, without limitation, the Special Claims Committee of the Oversight Board, (c) the Debtor, and (d) AAFAF; provided, however, that, notwithstanding the foregoing, for the avoidance of doubt, "Government Parties" shall not include the Commonwealth, AFICA, CCDA, COFINA, ERS, MBA, MFA, PBA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA solely with respect to any Claims against or bonds issued by such Entities.

1.145  **Government Released Claims:**  Collectively, any and all Claims, demands, rights, liabilities, or Causes of Action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, whether asserted or unasserted, which any Person, or anyone claiming through them, on their behalf or for their benefit have or may have or claim to have, now or in the future, against any Government Releasee arising from, related to, or in connection with the Debtor, Claims (including, without limitation, Claims arising from or relating to the HTA Bonds), the Debt Related Objections, the Lien Challenge Actions, and arising prior to the HTA Effective Date; provided, however, that "Government Released Claims" shall not include any and all rights, privileges, Claims, demands, liabilities, or Causes of Action of any and every kind, character or nature whatsoever (a) against (i) the Debtor (or its successor, including Reorganized HTA), the Commonwealth, ERS, PBA or COFINA arising from or relating to the Debtor's, the Commonwealth's, ERS's, PBA's and COFINA's obligations, as applicable, pursuant to the HTA Plan or the securities to be issued pursuant to the HTA Plan or that were issued pursuant to the COFINA Plan or the Commonwealth Plan, or (ii) a Government Releasee unrelated to the Debtor or the Claims discharged pursuant to the terms and provisions of the HTA Plan, (b) arising from or related to any act or omission that constitutes intentional fraud or willful misconduct or (c) arising from or related to claims or bonds issued, or contracts or leases entered into, by the Commonwealth, AFICA, CCDA, COFINA, ERS, MBA, MFA, PBA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA.

1.146  **Government Releasees:**  Collectively, the Government Parties and the Debtor, including all instrumentalities, municipalities, public corporations and public agencies of the Commonwealth, together with their respective current or former board members, directors, principals, agents, officers, employees, advisors and professionals, including, without limitation, any and all advisors and professionals retained by the Government Parties in connection with the Title III Case in their capacities as such; provided, however, that, notwithstanding the foregoing, "Government Releasees" shall not include the Commonwealth, AFICA, CCDA, COFINA, ERS, MBA, MFA, PBA, PFC, PRASA, PRIDCO, PRIFA, UPR and PREPA solely with respect to any Claims against or bonds issued by such Entities.

1.147  **GUC Recovery Cap:**  Forty percent (40%); provided, however, that, for purposes of calculation, any net recoveries by the Avoidance Actions Trust on account of the Avoidance Actions shall not count towards attaining the forty percent (40%) cap.

18

1.148   **GUC Reserve:**  The reserve to be created on or prior to the HTA Effective Date, and held by Kroll Restructuring Administration LLC (formerly, Prime Clerk LLC), solely for the benefit of holders of Allowed HTA General Unsecured Claims, pursuant to a separate agreement that will contain substantially similar protections for holders of HTA General Unsecured Claims as the agreement with respect to the GUC Reserve under the Commonwealth Plan has for holders of CW General Unsecured Claims (as defined in the Commonwealth Plan).

1.149   **Highway Assets:**  Collectively, the Toll Road Assets and the toll-free roads on Puerto Rico, managed, operated or maintained by HTA.

1.150   **HTA:**  Puerto Rico Highways and Transportation Authority.

1.151   **HTA 68 Bond Claim:**  A Claim against HTA on account of HTA 68 Bonds, other than an HTA 68 Bond Claim (Ambac), an HTA 68 Bond Claim (Assured) or an HTA 68 Bond Claim (National).

1.152   **HTA 68 Bond Claim (Ambac):**  A Claim against HTA on account of an HTA 68 Bond that is an Ambac Insured Bond.

1.153   **HTA 68 Bond Claim (Assured):**  A Claim against HTA on account of an HTA 68 Bond that is an Assured Insured Bond.

1.154   **HTA 68 Bond Claim (National):**  A Claim against HTA on account of an HTA 68 Bond that is a National Insured Bond.

1.155   **HTA 68 Bond Recovery:**  The aggregate recovery by holders of Allowed HTA 68 Bond Claims, Allowed HTA 68 Bond Claims (Ambac), Allowed HTA 68 Bond Claims (Assured), and Allowed HTA 68 Bond Claims (National), on account of any such Claims, consisting of (a) Three Hundred Eleven Million Five Hundred Twelve Thousand Eight Hundred Twenty-Two Dollars and Seventeen Cents ($311,512,822.17) in original principal amount of New HTA CIBs, (b) One Hundred Twenty-Three Million Five Hundred Forty-Three Thousand Eight Hundred Forty Dollars and Five Cents ($123,543,840.05) in original principal amount of New HTA CABs, and (c) Two Hundred Eleven Million Three Hundred Thirty-Two Thousand Six Hundred Eighty-Five Dollars and Fifty-Six Cents ($211,332,685.56) in original principal amount of New HTA Convertible CABs; provided, however, at the election of the Commonwealth and HTA, which election shall be disclosed no later than seven (7) days prior to the HTA  Effective Date, in their joint and absolute discretion, the Commonwealth or HTA, as the case may be, may substitute Cash for the New HTA Bonds which would otherwise be issued on the HTA Effective Date in accordance with clauses (a)-(c) above, on a dollar-for-dollar basis.

1.156   **HTA 68 Bonds:**  Collectively, the following bonds issued by HTA pursuant to Resolution No. 68-18, adopted June 13, 1968, as amended and supplemented thereafter: (a) the Highway Revenue Bonds, Series Y, issued by HTA in the original principal amount of Eight Hundred Ninety Million Two Hundred Thirty-Five Thousand Dollars ($890,235,000.00), (b) the Highway Refunding Bonds, Series Z, issued by HTA in the original principal amount of One Hundred Eighty-Five Million Forty Thousand Dollars ($185,040,000.00), (c) the 2003 Highway Revenue Refunding Bonds, Series AA-1, issued by HTA in the original principal amount of One

19

HTA_CONF 00017168

Hundred Eighty-Eight Million Three Hundred Ninety-Five Thousand Dollars ($188,395,000.00), (d) the 2003 Highway Revenue Refunding Bonds, Series AA-2, issued by HTA in the original principal amount of Sixty-Five Million Two Hundred Seventy-Five Thousand Dollars ($65,275,000.00), (e) the 2005 Highway Revenue Refunding Bonds, Series BB, issued by HTA in the original principal amount of One Hundred One Million Six Hundred Twenty-Five Thousand Dollars ($101,625,000.00), (f) the 2007 Highway Revenue Refunding Bonds, Series CC, issued by HTA in the original principal amount of Four Hundred Thirty-One Million Nine Hundred Fifty-Five Thousand Six Hundred Nine Dollars and Five Cents ($431,955,609.05), (g) the 2010 Highway Revenue Refunding Bonds, Series AA-1, issued by HTA in the original principal amount of One Hundred Eighty-Eight Million Three Hundred Ninety-Five Thousand Dollars ($188,395,000.00), (h) the 2010 Highway Revenue Refunding Bonds, Series AA-2, issued by HTA in the original principal amount of Sixty-Five Million Two Hundred Seventy-Five Thousand Dollars ($65,275,000.00), and (i) the Series FHA Bonds issued by HTA in the original principal amount of Nine Hundred Forty-Five Thousand Dollars ($945,000.00).

1.157 **HTA 98 Bonds:** Collectively, the HTA 98 Senior Bonds and the HTA 98 Sub Bonds.

1.158 **HTA 98 Senior Bond Claim:** A Claim against HTA on account of HTA 98 Senior Bonds, other than an HTA 98 Senior Bond Claim (Ambac), an HTA 98 Senior Bond Claim (Assured), an HTA 98 Senior Bond Claim (FGIC) or an HTA 98 Senior Bond Claim (National).

1.159 **HTA 98 Senior Bond Claim (Ambac):** A Claim against HTA on account of HTA 98 Senior Bond that is an Ambac Insured Bond.

1.160 **HTA 98 Senior Bond Claim (Assured):** A Claim against HTA on account of HTA 98 Senior Bond that is an Assured Insured Bond.

1.161 **HTA 98 Senior Bond Claim (FGIC):** A Claim against HTA on account of an HTA 98 Senior Bond that is a FGIC Insured Bond.

1.162 **HTA 98 Senior Bond Claim (National):** A Claim against HTA on account of an HTA 98 Senior Bond that is a National Insured Bond.

1.163 **HTA 98 Senior Bond Recovery:** The aggregate recovery by holders of Allowed HTA 98 Senior Bond Claims, Allowed HTA 98 Senior Bond Claims (Ambac), Allowed HTA 98 Senior Bond Claims (Assured), Allowed HTA 98 Senior Bond Claims (FGIC), and Allowed HTA 98 Senior Bond Claims (National) on account of any such Claims, consisting of (a) Two Hundred Eighty-Eight Million Four Hundred Eighty-Seven Thousand One Hundred Seventy-Seven Dollars and Eighty-Three Cents ($288,487,177.83) in original principal amount of New HTA CIBs, (b) One Hundred Fourteen Million Four Hundred Twelve Thousand Twenty-Eight Dollars and Eight Cents ($114,412,028.08) in original principal amount of New HTA CABs, and (c) One Hundred Ninety-Five Million Seven Hundred Eleven Thousand Nine Hundred Twelve Dollars and One Cent ($195,711,912.01) in original principal amount of the New HTA Convertible CABs; provided, however, at the election of the Commonwealth and HTA, which election shall be disclosed no later than seven (7) days prior to the HTA Effective Date, in their

20

HTA_CONF 00017169

joint and absolute discretion, the Commonwealth or HTA, as the case may be, may substitute Cash for the New HTA Bonds which would otherwise be issued on the HTA Effective Date in accordance with clauses (a)-(c) above, on a dollar-for-dollar basis.

1.164 **HTA 98 Senior Bonds:** Collectively, the following bonds issued by HTA pursuant to Resolution 98-06, adopted February 26, 1998: (a) the 1998 Transportation Revenue Bonds, Series A, issued by HTA in the original principal amount of One Billion One Hundred Twenty-Nine Million Six Hundred Forty-Three Thousand Seven Hundred Forty Dollars ($1,129,643,740.00), (b) the 2002 Transportation Revenue Bonds, Series D, issued by HTA in the original principal amount of Seven Hundred Million Eight Hundred Fifty-Five Thousand Dollars ($700,855,000.00), (c) the 2002 Transportation Revenue Refunding Bonds, Series E, issued by HTA in the original principal amount of Two Hundred Eighty-Four Million Four Hundred Five Thousand Dollars ($284,405,000.00), (d) the 2003 Transportation Revenue Bonds, Series G, issued by HTA in the original principal amount of Five Hundred Sixty-Three Million Six Hundred Fifty Thousand Dollars($563,650,000), (e) the 2003 Transportation Revenue Refunding Bonds, Series H, issued by HTA in the original principal amount of Seventy-Two Million Thirty-Five Thousand Dollars ($72,035,000.00), (f) the 2004 Transportation Revenue Refunding Bonds, Series I, issued by HTA in the original principal amount of Eighty-Two Million Three Hundred Forty Thousand Dollars ($82,340,000.00), (g) the 2004 Transportation Revenue Refunding Bonds, Series J, issued by HTA in the original principal amount of Four Hundred Five Million Nine Hundred Eighty-Five Thousand Dollars ($405,985,000.00), (h) the 2005 Transportation Revenue Refunding Bonds, Series K, issued by HTA in the original principal amount of Eight Hundred Million Dollars ($800,000,000.00), (i) the 2005 Transportation Revenue Refunding Bonds, Series L, issued by HTA in the original principal amount of Five Hundred Ninety-Eight Million Two Hundred Eighty-Five Thousand Dollars ($598,285,000.00), (j) the 2007 Transportation Revenue Refunding Bonds, Series M, issued by HTA in the original principal amount of Two Hundred Fifty Million Dollars ($250,000,000.00), (k) the 2007 Transportation Revenue Refunding Bonds, Series N, issued by the HTA in the original principal amount of One Billion Five Hundred Two Million Nine Hundred Four Thousand Nine Hundred Fifty-Three Dollars and Ninety-Five Cents ($1,502,904,953.95), and (l) the 2010 Transportation Revenue Refunding Bonds, Series H, issued by HTA in the original principal amount of Forty-Four Million Two Hundred Seventy-Five Thousand Dollars ($44,275,000.00).

1.165 **HTA 98 Sub Bond Claim:** A Claim against HTA on account of HTA 98 Sub Bonds, other than an HTA 98 Sub Bond Claim (Assured), an HTA 98 Sub Bond Claim (FGIC), or an HTA 98 Sub Bond Claim (National).

1.166 **HTA 98 Sub Bond Claim (Assured):** A Claim against HTA on account of an HTA 98 Sub Bond that is an Assured Insured Bond.

1.167 **HTA 98 Sub Bond Claim (FGIC):** A Claim against HTA on account of an HTA 98 Sub Bond that is a FGIC Insured Bond.

1.168 **HTA 98 Sub Bond Claim (National):** A Claim against HTA on account of an HTA 98 Sub Bond that is a National Insured Bond.

21

HTA_CONF 00017170

1.169  **HTA 98 Sub Bond Recovery:**  The aggregate recovery by holders of Allowed HTA 98 Sub Bond Claims, Allowed HTA 98 Sub Bond Claims (Assured), Allowed HTA 98 Sub Bond Claims (FGIC), and Allowed HTA 98 Sub Bond Claims (National).

1.170  **HTA 98 Sub Bonds:**  Collectively, the following subordinated bonds issued by HTA pursuant to Resolution 98-06, adopted February 26, 1998, as amended and supplemented thereafter: (a) the Subordinated Transportation Revenue Bonds, Series 1998, issued by HTA in the original principal amount of Seventy-Five Million Fifty Thousand Dollars ($75,050,000.00), and (b) the Subordinated Transportation Revenue Bonds, Series 2003, issued by HTA in the original principal amount of Three Hundred Twenty Million Five Hundred Forty-Five Thousand Dollars ($320,545,000.00).

1.171  **HTA Bond Claims:**  Collectively, a Claim against HTA on account of HTA 68 Bonds, HTA 98 Senior Bonds, and HTA 98 Sub Bonds.

1.172  **HTA Bonds:**  Collectively, the HTA 68 Bonds, the HTA 98 Senior Bonds, and the HTA 98 Sub Bonds.

1.173  **HTA/CCDA Annex Agreement:**  That certain Annex Agreement annexed as Exhibit "I" to the HTA/CCDA Plan Support Agreement pursuant to which certain holders of HTA Bonds and CCDA Bonds became HTA/CCDA PSA Creditors.

1.174  **HTA/CCDA Joinder Agreement:**  That certain Joinder Agreement annexed as Exhibit "H" to the HTA/CCDA Plan Support Agreement pursuant to which certain holders of HTA Bonds and CCDA Bonds became HTA/CCDA PSA Creditors.

1.175  **HTA/CCDA Joinder Deadline:**  With respect to (a) HTA 68 Bond Claims and HTA 68 Bond Claims (Ambac), May 17, 2021, at 11:59 p.m. (Eastern Daylight Time), and (b) HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), and HTA 98 Senior Bond Claims (FGIC), July 15, 2021, at 11:59 p.m. (Eastern Daylight Time), or in either case, such later date and time as may be requested by Assured and National, but in no event later than the commencement of the hearing to consider confirmation of the HTA Plan.

1.176  **HTA/CCDA Joinder Creditors:**  Collectively, those entities holding HTA Bonds or CCDA Bonds that executed and delivered either the HTA/CCDA Joinder Agreement or the HTA/CCDA Annex Agreement prior to the HTA/CCDA Joinder Deadline.

1.177  **HTA/CCDA Plan Support Agreement:**  That certain HTA/CCDA Related Plan Support Agreement, dated as of May 5, 2021, by and among the Oversight Board and the HTA/CCDA PSA Creditors, as it may be amended, modified, or supplemented in accordance with the terms thereof.

1.178  **HTA/CCDA PSA Creditors:**  Collectively, the parties to the HTA/CCDA Plan Support Agreement, other than the Oversight Board.

1.179  **HTA/CCDA PSA Restriction Fee Creditors:**  Collectively, the Initial HTA/CCDA PSA Creditors and the HTA/CCDA Joinder Creditors that executed the HTA/CCDA Plan Support Agreement, the HTA/CCDA Joinder Agreement, or the HTA/CCDA

HTA_CONF 00017171

Annex Agreement prior to the expiration of the HTA/CCDA PSA Restriction Fee Period; provided, however, that, notwithstanding anything contained herein to the contrary, all entities executing an HTA/CCDA Joinder Agreement or an HTA/CCDA Annex Agreement on the date the HTA/CCDA PSA Threshold Attainment is reached shall be considered HTA/CCDA PSA Restriction Fee Creditors; and, provided, further, that, under all circumstances, HTA PSA Restriction Fees shall not be available to holders of HTA 98 Sub Bond Claims, HTA 98 Sub Bond Claims (Assured), HTA 98 Sub Bond Claims (FGIC), or HTA 98 Sub Bond Claims (National) in their capacity as such, and such holders in such capacity shall not be considered HTA/CCDA PSA Restriction Fee Creditors with respect to such HTA 98 Sub Bonds.

1.180 **HTA/CCDA PSA Restriction Fee Period:** The period from May 5, 2021 up to and including the earlier to occur of (a) the HTA/CCDA PSA Threshold Attainment and (b) the applicable HTA/CCDA Joinder Deadline.

1.181 **HTA/CCDA PSA Threshold Attainment:** The date on which HTA/CCDA PSA Restriction Fee Creditors own or have due investment management responsibility and authority for funds or accounts which own, or, with respect to Assured and National, either holds or insures and is authorized to vote in accordance with Section 301(c)(3) of PROMESA, the definitive insurance documents and applicable law, (a) with respect to HTA 68 Bonds, eighty-five percent (85%) of the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), and HTA 68 Bond Claims (National), inclusive of principal and interest as of the HTA Petition Date, (b) with respect to HTA 98 Senior Bonds, sixty-seven percent (67%) of the aggregate amount of HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National), inclusive of principal and interest as of the HTA Petition Date, and (c) with respect to CCDA Bonds, seventy percent (70%) of the aggregate amount of CCDA Bond Claims, and in each case, without duplication and, to the extent any such claims are insured, to the extent an HTA/CCDA PSA Creditor is authorized to vote any such claim in accordance with Section 301(c)(3) of PROMESA, the definitive insurance documents and applicable law.

1.182 **HTA Clawback CVI:** The CVI issued on account of Allowed CW/HTA Claims in accordance with the terms and provisions of the Commonwealth Plan.

1.183 **HTA Clawback Recovery:** The aggregate recovery by holders of Allowed CW/HTA Claims, consisting of HTA Clawback CVIs distributed to holders of such Claims pursuant to the Commonwealth Plan and subject to the Annual Payment Waterfall, as defined in Exhibit "J" of the Commonwealth Plan. .

1.184 **HTA Committee Agreement:** That certain letter agreement, dated May 9, 2022, between the Creditors' Committee and the Oversight Board.

1.185 **HTA Confirmation Date:** The date on which the Clerk of the Title III Court enters the HTA Confirmation Order on the docket.

HTA_CONF 00017172

1.186   **HTA Confirmation Hearing:**  The hearing conducted by the Title III Court pursuant to section 1128(a) of the Bankruptcy Code and Section 314 of PROMESA to consider confirmation of the HTA Plan, as such hearing may be adjourned or continued from time to time.

1.187   **HTA Confirmation Order:**  The order of the Title III Court confirming the HTA Plan in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable in the HTA Title III Case in accordance with Section 301 of PROMESA.

1.188   **HTA Distribution Conditions:**  Collectively, (a) the Commonwealth Effective Date shall have occurred, (b) the documentation of the HTA Plan, the HTA Confirmation Order, the New HTA Bonds Indenture, the Trust Documentation (if any), and the Custodial Trust Documents (solely as they relate to Assured and National) shall have been agreed upon by the Oversight Board, Assured and National, (c) holders of, or insurers entitled to vote with respect to, HTA 68 Bonds, holding or insuring, as the case may be, at least sixty-seven percent (67%) of the outstanding principal amount of HTA 68 Bonds shall have executed the HTA/CCDA Plan Support Agreement (or an HTA/CCDA Joinder Agreement or an HTA/CCDA Annex Agreement with respect thereto), and (d) holders of, or insurers entitled to vote with respect to, HTA 98 Senior Bonds, holding or insuring, as the case may be, at least sixty-seven percent (67%) of the outstanding principal amount of HTA 98 Senior Bonds shall have executed the HTA/CCDA Plan Support Agreement (or a Joinder Agreement or an Annex Agreement with respect thereto); provided, however, that, upon entry of a Final Order with respect to the HTA Confirmation Order, the conditions set forth in subsections (c) and (d) above shall be deemed satisfied.

1.189   **HTA Effective Date:**  The first (1st) Business Day on which (i) all the conditions precedent to confirmation of the HTA Plan specified in Section 35.1 of the HTA Plan shall have been satisfied or waived, as provided in Section 35.2 of the HTA Plan, and (ii) all the conditions precedent to the substantial consummation of the HTA Plan and occurrence of the HTA Effective Date specified in Section 36.1 of the HTA Plan shall have been satisfied or waived as provided in Section 36.2 of the HTA Plan.

1.190   **HTA Enabling Act:**  Act No. 74 of June 23, 1965, known as the "Puerto Rico Highway and Transportation Authority Act".

1.191   **HTA Fiscal Agent:**  The Bank of New York Mellon, solely in its capacity as fiscal agent with respect to the HTA Bonds.

1.192   **HTA Fiscal Plan:**  A Fiscal Plan for the Debtor or Reorganized HTA.

1.193   **HTA/GDB Claim:**  A Claim against HTA with respect to loans extended by GDB to HTA, other than an HTA 68 Bond Claim, HTA 68 Bond Claim (Ambac), HTA 68 Bond Claim (Assured), HTA 68 Bond Claim (National), HTA 98 Senior Bond Claim, HTA 98 Senior Bond Claim (Ambac), HTA 98 Senior Bond Claim (Assured), HTA 98 Senior Bond Claim (FGIC), HTA 98 Senior Bond Claim (National), or HTA 98 Sub Bond Claim (National).

1.194   **HTA General Unsecured Claim:**  A Claim against HTA; provided, however, that, under all circumstances, "HTA General Unsecured Claim" shall not include (a) a Claim arising from or related to the HTA 68 Bonds, the HTA 98 Senior Bonds, the HTA 98 Sub Bonds,

24

HTA_CONF 00017173

the HTA Moscoso Bonds or the GDB/HTA Loans, (b) an Eminent Domain/Inverse Condemnation Claim, (c) a Section 510(b) Subordinated Claim, (d) a Late-Filed Claim, (e) a Convenience Claim, (f) any Claim that is eligible to be transferred into or administered through the ACR process, (g) the Claim asserted in Proof of Claim No. 161091 filed by Concilio Nacional de Policias Inc. and any other Claims related to the litigation styled <u>Frente Unido de Policias Organizados, et al. v. Puerto Rico Police Department</u>, Case No. KAC-2007-4170, (h) any Claims for retiree benefits (including, without limitation, those portions of Proofs of Claim Nos. 93199, 103072, 104127, 130077, 103035, 106588, 115276, 104175 and 130091), regardless of whether such Claims are asserted by retirees or active employees and regardless of whether of such Claims are asserted through litigation or administrative proceedings, but excluding Claims for any increased pension payments that would have been payable prior to adjudication of such Claims (<u>i.e.</u>, pension "back pay") and only up to the amount related to unpaid pensions, (i) all Claims against the Debtor by any Governmental Unit (as defined in section 101 of the Bankruptcy Code), including the United States government, any State government, foreign government, any municipality (whether of the Commonwealth or otherwise), the Commonwealth, any instrumentality of the Commonwealth (including GDB), whether asserted directly by such Governmental Unit or indirectly or derivatively by any other Entity, including, without limitation, any Claims by the GDB asserted by or through the DRA, (j) any Claims related to the Concession Agreement, dated as of December 20, 1991, between HTA and Autopistas de PR, LLC, as amended and supplemented, relating to the operation and maintenance of the Teodoro Moscoso Budge, including, without limitation, Proof of Claim No. 52295, (k) any Claims related to the Toll Road Concession Agreement, dated as of June 27, 2011, between the HTA and Autopistas Metropolitanas de Puerto Rico, LLC, as amended and supplemented, including without limitation, Proof of Claim No. 35566, (l) any unsecured deficiency claims with respect to asserted priority and/or secured Claims, or (m) such other Claim determined by the Title III Court not to be an HTA General Unsecured Claim.

1.195 **HTA GUC Recovery:** The amount equal to (a) Forty-Eight Million Dollars ($48,000,000.00), to be funded in accordance with the terms and provisions of Section 20.3 hereof, <u>plus</u> (b) the net recoveries, if any, by the Avoidance Actions Trust attributable to the Avoidance Actions, <u>minus</u> (c) such amount of Cash as is necessary to satisfy the payment of Allowed Convenience Claims in accordance with the terms and provisions of Article XXIII hereof.

1.196 **HTA Moscoso Bond Claim:** A Claim against HTA on account of the HTA Moscoso Bonds.

1.197 **HTA Moscoso Bonds:** Collectively, the Special Facility Revenue Refunding Bond, 2003 Series A, issued by HTA in the original principal amount of One Hundred Fifty-Three Million Two Hundred Twenty-Two Thousand Two Hundred Seventy dollars and Forty-Five Cents ($153,222,270,45) in accordance with the terms and provisions of that certain Trust Agreement, dated as of October 1, 2003, between HTA and Banco Popular de Puerto Rico, as Trustee in which, as of the HTA Petition Date, where in the aggregate outstanding principal amount of $141,875411.00.

1.198 **HTA Petition Date:** May 21, 2017.

25

HTA_CONF 00017174

1.199 **HTA Plan:** This Third Amended Title III Plan of Adjustment of Puerto Rico
Highways and Transportation Authority, including, without limitation, the exhibits and schedules
hereto, as the same is amended, supplemented, or modified from time to time in accordance with
the provisions of PROMESA, the Bankruptcy Code and the terms hereof.

1.200 **HTA PSA Restriction Fees:** Collectively, the fees to be paid, in Cash, on the
HTA Effective Date, in accordance with the terms and provisions of the HTA/CCDA Plan
Support Agreement, Section 3.4 hereof, and the HTA Confirmation Order, which fees, in the
aggregate, shall not exceed One Hundred Twenty-Five Million Dollars ($125,000,000.00) minus
such amount as may be payable on account of Consummation Costs.

1.201 **HTA Restriction Fee Percentage:** The percentage equal to (a) One Hundred
Twenty-Five Million Dollars ($125,000,000.00) minus such amounts as may be payable on
account of Consummation Costs, divided by (b) the aggregate amount of HTA 68 Bond Claims,
HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims
(National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior
Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims
(National) held or, in the case of a Monoline, either held or insured and is authorized to vote in
accordance with Section 301(c)(3) of PROMESA, governing documents, and applicable law, by
HTA/CCDA PSA Restriction Fee Creditors.

1.202 **HTA Title III Case:** The Title III case under PROMESA pending in the Title III
Court, captioned as In re Financial Oversight & Management Board for Puerto Rico as
representative of the Puerto Rico Highways & Transportation Authority, Case No. 17-3567-LTS
(D.P.R.).

1.203 **Initial HTA/CCDA PSA Creditors:** Collectively, the parties to the HTA/CCDA
Plan Support Agreement, other than the Oversight Board, as of May 5, 2021.

1.204 **Insured HTA Bond Claim:** Collectively, the HTA Bond Claims, the principal
and interest payments of which have been insured by a Monoline, including, without limitation,
pursuant to a secondary market insurance policy.

1.205 **Invalidity Actions:** Collectively, the adversary proceedings challenging the
validity of certain GO Bonds, PBA Bonds, and PRIFA BANs listed on Exhibit "B" hereto.

1.206 **IRC:** The United States Internal Revenue Code of 1986, as amended from time
to time.

1.207 **IRS:** The Internal Revenue Service, an agency of the United States Department
of Treasury.

1.208 **Late-Filed Claim:** A proof of claim filed in the HTA Title III Case from and
after the commencement of the Disclosure Statement Hearing.

1.209 **Lien:** Any charge against or interest in property to secure payment of a debt or
performance on an obligation.

HTA_CONF 00017175

1.210   **Lien Challenge Actions:**  Collectively, the adversary proceedings listed on Exhibit "C" hereto.

1.211   **Lift Stay Motions:**  Collectively, the litigation styled (a) Assured Guaranty Corp., et al. v. The Financial Oversight and Management Board for Puerto Rico, filed in the HTA Title III Case [Dkt. No. 673], (b) Ambac Assurance Corporation, et al. v. The Financial Oversight and Management Board, filed in the Commonwealth's Title III case [Dkt. No. 10104], (c) Ambac Assurance Corporation, et al. v. The Financial Oversight and Management Board, filed in the Commonwealth's Title III case [Dkt. No. 10602], (d) AmeriNational Community Services, LLC, et al. v. The Financial Oversight Management Board of Puerto Rico, filed in the Title III Case [Dkt. No. 591], (e) Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al., Case No. 20-1930, currently pending in the United States Court of Appeals for the First Circuit, (f) Ambac Assurance Corporation, et al, v. Commonwealth of Puerto Rico, et al., Case No. 2—1931, currently pending in the United States Court of Appeals for the First Circuit, (g) Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority, et al., Adv. Pro. No. 17-00152-LTS, filed in the HTA Title III Case [Dkt. No. 1], as amended, and (h) any motion or adversary proceeding seeking to lift the automatic stay provided for in accordance with section 362 and 922 of the Bankruptcy Code (to the extent applicable) with respect to revenues similar to those at issue in the above-referenced Lift Stay Motions.

1.212   **List of Creditors:**  The Creditor List (together with all summaries, notes, and schedules) attached as Exhibit A to the *Notice of Filing of Creditor List for the Puerto Rico Highways and Transportation Authority* filed in the Title III Case [Case No. 17-3283-LTS, ECF No. 10708], pursuant to sections 924 and 925 of the Bankruptcy Code, as such lists, summaries, notes, or schedules have been or may be amended, restated, supplemented or otherwise modified by the Debtor.

1.213   **Local Bankruptcy Rules:**  The Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico and, to the extent applicable to the Title III Case, the Local District Court Rules for the District of Puerto Rico, each as amended from time to time.

1.214   **MBA:**  Puerto Rico Metropolitan Bus Authority.

1.215   **MFA:**  Puerto Rico Municipal Finance Agency.

1.216   **Monolines:**  Collectively, Ambac, Assured, FGIC, and National, as insurers of HTA Bonds, or other Claims or securities issued by the Debtor, as applicable.

1.217   **National:**  National Public Finance Guarantee Corporation.

1.218   **National Action:**  The litigation styled National Public Finance Guarantee Corp., et al. v. UBS Financial Services, Inc., et al., currently pending in the Estado Libre Asociado de Puerto Rico, Sala Superior de San Juan, Civil No. SJ2019CV07932.

1.219   **National Acceleration Price:**  With respect to any National Insured Bond, a price equal to the outstanding principal amount of a National Insured Bond plus the accrued and

27

unpaid interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) as of the date of payment.

1.220 **National Bondholder Election Form:** Collectively or individually, as the case may be, the "Form of Election Notice for Holders of Claims in Class 4" and the "Form of Election Notice for Holders of Claims in Class 9", copies of which are attached as Schedules 5(d) and 5(e), respectively, to the Disclosure Statement Order.

1.221 **National Certificates:** With respect to each National Trust that is formed for the benefit of the beneficial holders of National Insured Bonds, the certificate(s) or receipt(s) to be issued by such National Trust to beneficial holders of such National Insured Bonds that are deposited into the National Trust.

1.222 **National Commutation Consideration:** A combination of some or all of the following, to be selected by National at National's sole discretion at or prior to the commencement of the Disclosure Statement Hearing: (i) some or all of a holder's Pro Rata Share of the National Plan Consideration; (ii) a percentage, to be determined at National's sole discretion, of the Consummation Costs and/or the HTA PSA Restriction Fee distributable to National in accordance with the terms and provisions of Article III hereof; and (iii) Cash in an amount to be determined by National in its sole discretion.

1.223 **National Commutation Treatment:** The treatment set forth in Section 26.2(a) hereof.

1.224 **National CW/HTA Bond Claims:** Collectively, the CW/HTA Claims arising from HTA Bonds insured by National, including, without limitation, pursuant to a secondary market insurance policy.

1.225 **National Election Notice:** The "Notice of Non-Voting Status for Holders of HTA 98 Sub Bond Claims (National)", a copy of which is attached as Schedule 4(f) to the Disclosure Statement Order.

1.226 **National Escrow Account:** A single escrow account that may be formed, on or prior to the HTA Effective Date, by HTA, for the benefit of the beneficial holders of National Insured Bonds whose National Escrow Consideration is deposited therein, the terms of which shall be set forth in the Plan Supplement.

1.227 **National Escrow Consideration:** Some or all of the New HTA Bonds distributable on account of Allowed National Insured Bond Claims and any other consideration that may be selected by National, in National's sole and absolute discretion, at or prior to the commencement of the Disclosure Statement Hearing.

1.228 **National HTA Consideration:** The consideration distributable pursuant to the Commonwealth Plan, the Commonwealth Confirmation Order, the HTA Plan and the HTA Confirmation Order on account of Allowed National Insured Bond Claims and Allowed National CW/HTA Bond Claims, consisting of (a) the Cash and New HTA Bonds distributable on account of Allowed National Insured Bond Claims, and (b) the HTA Clawback CVI distributable on account of Allowed National CW/HTA Bond Claims.

28

1.229   **National Insurance Policies:**  The existing insurance policies, including secondary market insurance policies, initially issued by (a) MBIA Insurance Corporation and subsequently novated to National or (b) FGIC and subsequently novated to National, and relating to the National Insured Bonds, together with any and all agreements and other documents related thereto.

1.230   **National Insured Bond Claims:**  Collectively, the Claims against HTA arising from the National Insured Bonds, including any HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims (National), and HTA 98 Sub Bond Claims (National).

1.231   **National Insured Bonds:**  Collectively, the HTA Bonds that have been insured or are otherwise owned (by subrogation or otherwise) by National, including, without limitation, pursuant to a secondary market insurance policy.

1.232   **National Non-Commutation Treatment:**  The treatment set forth in Section 26.2(b) hereof.

1.233   **National Plan Consideration:**  The consideration distributable on account of Allowed National Insured Bond Claims.

1.234   **National Treatment:**  With respect to each Class of National Insured Bond Claims, the treatment set forth in Section 26.2 hereof.

1.235   **National Trust:**  The trust(s) which may be formed, on or prior to the HTA Effective Date, by HTA, the sole cost and expense of which, including, but not limited to, the formation and maintenance of the trust(s) (including trustee fees and expenses), shall be satisfied from the assets of the National Trust, and for the benefit of beneficial holders of such National Insured Bonds, the terms of which shall be set forth in the Plan Supplement.

1.236   **National Trust Consideration:**  Some or all of the New HTA Bonds distributable on account of Allowed National Insured Bond Claims and any other consideration that may be selected by National, in National's sole and absolute discretion, at or prior to the commencement of the Disclosure Statement Hearing.

1.237   **New HTA Bonds:**  Collectively, the bonds to be issued on the HTA Effective Date by Reorganized HTA in accordance with the terms and conditions of the HTA Plan, the HTA Confirmation Order, and the New HTA Bonds Indenture, including, without limitation, any refunding bonds which may be issued in accordance with the New HTA Bonds Indenture, the repayment of which shall be supported by a pledge of the Pledged Revenues.

1.238   **New HTA Bonds Indenture:**  The indenture or resolution to be executed and delivered as of the HTA Effective Date pursuant to which Reorganized HTA shall issue the Secured Obligations, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions, which indenture or resolution shall be reasonably satisfactory to the Monolines.

1.239   **New HTA Bonds Trustee:**  The trustee appointed in accordance with the terms and provisions of the New HTA Bonds Indenture.

HTA_CONF 00017178

1.240 **New HTA CABs:** Collectively, the series of capital appreciation bonds, accreting interest at the rate of five percent (5.0%) per annum, to be issued pursuant to the HTA Plan as components of New HTA Bonds and to be distributed pursuant to the terms and provisions of the HTA Plan.

1.241 **New HTA CIBs:** Collectively, the series of current interest bonds, accruing interest at the rate of five percent (5%) per annum, to be issued pursuant to the HTA Plan as components of the New HTA Bonds and to be distributed pursuant to the terms and provisions of the HTA Plan.

1.242 **New HTA Convertible CABs:** Collectively, the series of convertible capital appreciation bonds, accreting interest at the rate of five percent (5.0%) per annum, to be issued pursuant to the HTA Plan as components of the New HTA Bonds and to be distributed pursuant to the terms and provisions of the HTA Plan.

1.243 **Outstanding:** Debt that (i) has not been paid in full in accordance with its terms, or (ii) has not been legally defeased in accordance with the defeasance requirements set forth in the applicable definitive issuance documents.

1.244 **Oversight Board:** The Financial Oversight and Management Board for Puerto Rico established pursuant to Section 101 of PROMESA, as the Debtor's representative in the Title III Case pursuant to Section 315(b) of PROMESA.

1.245 **Partial Disposition:** A lease, long-term concession or other public-private partnership arrangement with respect to any real restate or personal property comprising a portion of the Toll Facilities.

1.246 **PayGo:** The pay-as-you-go pension system created in accordance with Act 106 of 2017.

1.247 **PBA:** Puerto Rico Public Buildings Authority.

1.248 **Person:** An individual, general partnership, limited partnership, corporation, limited liability company, limited liability partnership, cooperative, trust, unincorporated organization, association, joint stock company, joint venture, estate, government, or agency or political subdivision thereof, or any other form of legal entity.

1.249 **PFC:** Puerto Rico Public Finance Corporation.

1.250 **Plan Supplement:** A separate volume, to be filed with the Clerk of the Title III Court, including, among other documents, the New HTA Bonds Indenture, forms of the New HTA Bonds, and Reorganized HTA By-Laws, which shall be in form and substance reasonably satisfactory to AAFAF, and the Monolines, and, solely with respect to the provisions affecting Classes 16 and 19, the Creditors' Committee. The Plan Supplement (containing draft or final versions of the foregoing documents) shall be filed with the Clerk of the Title III Court as soon as practicable (but in no event later than seven (7) days) prior to the Ballot Date, or on such other date as the Title III Court establishes. The Plan Supplement shall be deemed incorporated into and part of the HTA Plan as if set forth herein in full.

HTA_CONF 00017179

1.251  **Pledged Revenues:**  Collectively, (a) the Toll Receipts, (b) the rights of Reorganized HTA to receive the Toll Receipts, (c) except for purposes of the Toll Rate Covenant set forth in the New HTA Bonds Indenture, the proceeds derived from or related to any sale or disposition of, or any concession arrangement relating to, all or any part of the Toll Facilities, and (d) investment income received on any amounts held in the Toll Receipts Fund, the Debt Service Fund, the Operating Reserve Fund, the Renewal and Replacement Funds, the Subordinated Indebtedness Fund and the General Reserve Fund, each as defined in the New HTA Bonds Indenture; provided, however, that, under all circumstances, "Pledged Revenues" shall not include the proceeds of any gifts, grants, or other payments to Reorganized HTA from the United States of America, any state, territory, municipality or any public or private instrumentality, individual or entity that are not in the nature of a Toll.

1.252  **PRASA:**  Puerto Rico Aqueduct and Sewer Authority.

1.253  **PREPA:**  Puerto Rico Electric Power Authority.

1.254  **PRIDCO:**  Puerto Rico Industrial Development Company.

1.255  **PRIFA:**  Puerto Rico Infrastructure Financing Authority.

1.256  **PRITA:**  Puerto Rico Integrated Transit Authority.

1.257  **Professional:**  An Entity (a) to be compensated for services rendered prior to or on the HTA Effective Date pursuant to Sections 316 and 317 of PROMESA, and (i) employed in the Title III Case by the Government Parties (in the Government Parties' sole discretion); (ii) employed in the Title III Case by the Oversight Board (in the Oversight Board's sole discretion); or (iii) a committee appointed in accordance with section 1103 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Title III Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.258  **Professional Claim:**  A Claim by a Professional seeking an award by the Title III Court of compensation for services rendered or reimbursement of expenses incurred through and including the HTA Confirmation Date under Sections 316 and 317 of PROMESA.

1.259  **PROMESA:**  The Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. No. 114-187, 130 Stat. 549 (2016), 48 U.S.C. § 2101, et. seq., as it may be amended or modified.

1.260  **Pro Rata Share:**  With respect to Allowed Claims against the Debtor (a) the proportion that an Allowed Claim bears to the sum of all Allowed Claims within such Class, taking into account, and reducing for, unmatured interest thereon as of the HTA Petition Date with respect to individual bonds within such Class, and (b) among more than one Class, the proportion that Allowed Claims within such Class of Claims receive in consideration bears to the sum of consideration received by all Claims within all applicable Classes.

1.261  **Related Persons:**  With respect to any Entity (including for the avoidance of doubt, the Commonwealth, the Government Parties, and the Creditors' Committee), its predecessors, successors and assigns (whether by operation of law or otherwise) and their

31

HTA_CONF 00017180

respective current and former employees, managers, elected or appointed officials, directors, officers, board members, principals, members, equity holders (whether such interests are held directly or indirectly), partners, financial advisors, attorneys, accountants, consultants, agents and professionals (including, without limitation, any and all Professionals retained by the Debtor, AAFAF, and the Creditors' Committee), or other representatives, nominees or investment managers, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals), each in its respective capacity as such; provided, however, that "Related Persons" is not intended, nor shall it be construed, to include the Commonwealth, AFICA, CCDA, COFINA, ERS, MBA, MFA, PBA, PFC, PRASA, PRIDCO, PRIFA, UPR, and PREPA.

     1.262  **Released Claims:**  Collectively, (a) with respect to those Entities party to the HTA/CCDA Plan Support Agreement, Claims and Causes of Action released hereunder and in accordance with the HTA/CCDA Plan Support Agreement, (b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtor or its Assets in the Title III Case, (c) Claims and Causes of Action that have been or could have been asserted by the Debtor (with respect to releases given by the Debtor) and by Creditors or the Government Parties relating to Claims they have against the Released Parties (with respect to releases given by Releasing Parties), (d) Claims and Causes of Action related to the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 17-3283-LTS, ECF No. 15854], as amended, and Claims and Causes of Action related to the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Government Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended, (e) with respect to those Entities party to the DRA Stipulation, Claims and Causes of Action released hereunder and in accordance with the DRA Stipulation, and (f) Claims that otherwise arise from or relate to the Title III Case, the HTA Plan, the HTA/CCDA Plan Support Agreement, the HTA Committee Agreement, and the compromises set forth herein, including, without limitation, in connection with or related to any of the Government Parties, and their respective subsidiaries, assets, liabilities, operations, or property; provided, however, that, "Released Claims" is not intended to include, nor shall it have the effect of including, Claims or Causes of Action unrelated to the Debtor or Claims or Causes of Action for gross negligence, willful misconduct or intentional fraud asserted, or that could have been asserted, whether sounding in contract or tort; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any Entity in its capacity as a defendant in any Avoidance Action, including a party to a tolling agreement with the Commonwealth and/or ERS related to such Cause of Action; and, provided, further, that "Released Claims" is not intended to release, nor shall it have the effect of releasing, any party from the performance of its obligations in accordance with the HTA Confirmation Order or the HTA Plan, including, without limitation, performance of obligations arising from or related to New HTA Bonds, New GO Bonds, the HTA Clawback CVIs or under any policy of insurance or related documents issued by a Monoline; and, provided, further, that "Released Claims" shall not include claims against the Commonwealth, AFICA, CCDA, COFINA, ERS, MBA, MFA, PBA, PFC, PRASA, PRIDCO, PRIFA, UPR, and PREPA.

HTA_CONF 00017181

1.263 **Released Parties:** Collectively, solely to the extent provided in the HTA Plan, (a) the Government Parties, (b) the HTA/CCDA PSA Creditors, (c) the Creditors' Committee, (d) the DRA and the DRA Parties, and (e) with respect to the foregoing clauses (a) through (d), each of their respective Related Persons.

1.264 **Releasing Parties:** Collectively, solely to the extent provided in the HTA Plan, (a) all holders of Claims against the Debtor or its Assets; (b) such holders' current and former Affiliates and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former Related Persons.

1.265 **Reorganized Commonwealth:** The Commonwealth, from and after the Commonwealth Effective Date.

1.266 **Reorganized HTA:** The Debtor, from and after the HTA Effective Date.

1.267 **Reorganized HTA By-Laws:** The by-laws of Reorganized HTA, to the extent applicable, from and after the HTA Effective Date.

1.268 **SCC Action:** The litigation styled <u>Special Claims Committee v. Barclays Capital, et al.</u>, Adv. Proc. No. 19-00280-LTS, currently pending in the Title III Court.

1.269 **SEC:** The United States Securities and Exchange Commission.

1.270 **Section 103 Bond Counsel:** With respect to HTA or Reorganized HTA, as the case may be, counsel providing services with respect to Section 103 of the IRC.

1.271 **Section 510(b) Subordinated Claim:** Any Claim, to the extent determined pursuant to a Final Order, against the Debtor or its Assets arising from or relating to (a) rescission of a purchase or sale of an existing security of the Debtor or an Affiliate of the Debtor, (b) purchase, sale or retention of such a security, or (c) reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.272 **Secured Obligations:** Collectively, the New HTA Bonds and the Subordinated Indebtedness.

1.273 **Securities Act:** The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state, or local law.

1.274 **SIB Account:** The State Infrastructure Bank account established and posted as security for the repayment of HTA 98 Sub Bond Claims (National).

1.275 **Solicitation Agent:** Kroll Restructuring Administration LLC (formerly, Prime Clerk LLC), the claims, balloting, and solicitation agent retained by the Debtor in the Title III Case by Title III Court order.

1.276 **Subordinated Indebtedness:** Collectively, the subordinated indebtedness to be issued to the Commonwealth pursuant to the New HTA Bonds Indenture or a supplement thereto and as a refinancing of HTA's obligations pursuant to the Commonwealth Loan, bearing interest

33

at the rate of two and one-half percent (2.5%) per annum, a maturity date of July 1, 2052, and such other salient payment provisions as set forth on Exhibit "E" annexed hereto.

1.277 **Syncora:** Syncora Guarantee Inc., together with its predecessors, successors, or designees.

1.278 **Syncora Acceleration Price:** With respect to an HTA 98 Senior Bond bearing CUSIP number 745190AY4, and the principal and interest payments of which have been insured by Syncora, a price equal to the outstanding principal amount of such HTA 98 Senior Bond plus the accrued and unpaid interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) as of the date of payment.

1.279 **Title III:** Title III of PROMESA.

1.280 **Title III Case:** The HTA Title III Case.

1.281 **Title III Court:** The United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Cases.

1.282 **Toll Facilities:** Collectively, PR-20, PR-52, PR-53 and PR-66 toll highways.

1.283 **Toll Rate Covenant:** The toll rate covenant referred to in Section 24.1(i) hereof, as set forth herein and as may be revised in accordance with the terms and provisions of the New HTA Bonds Indenture.

1.284 **Toll Receipts:** Collectively, (a) all Cash receipts and automated or electric payments or credits from Tolls (including by way of the "Auto-Expresso" system), and (b) the proceeds of any business interruption insurance relating to the Toll Facilities and of any other insurance which insures against the loss of Toll Receipts.

1.285 **Toll Receipt Fund:** The fund designated, created and established pursuant to Section 5.01 of the New HTA Bonds Indenture to hold the Toll Receipts pending application and distribution in accordance with the terms and conditions of the New HTA Bonds Indenture.

1.286 **Tolls:** Collectively, tolls, fares, incomes, receipts, special fees or permit fees, or other charges imposed by or on behalf of Reorganized HTA on the owners, lessors, lessees or operators of motor vehicles for the operation of or the right to operate those vehicles on the Toll Facilities, and fines and penalties and interest thereon collected as a result of a failure to pay any such amount.

1.287 **Transit Assets:** Tren Urbano.

1.288 **Trust Documentation:** Collectively, the documentation required, if necessary, to establish and maintain the trust into which with respect to HTA, the HTA Clawback CVI shall be deposited pending, and which shall provide for, the distribution thereof to holders of Allowed CW/HTA Claims (including the applicable Monolines) pursuant to the terms of the HTA/CCDA Plan Support Agreement, which documentation in all cases shall be agreed upon by the Oversight Board and the applicable Monolines.

HTA_CONF 00017183

1.289 **Trust Estate:** Collectively, and without limiting the provisions set forth in the New HTA Bonds Indenture, (a) all right, title, and interest of Reorganized HTA in and to the Pledged Revenues, and the right to receive the same, including, without limitation, any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, (i) subject only to the application of Pledged Revenues in accordance with the terms and provisions of the New HTA Bonds Indenture, and (ii) the senior lien and senior security interest granted by the New HTA Bonds Indenture for the benefit of holders of New HTA Bonds, which shall in all respects be senior and superior to the subordinate lien and the subordinate security interest granted by the New HTA Bonds Indenture for the benefit of holders of Subordinated Indebtedness, and (b) except for the Authority Expense Fund and the Arbitrage Rebate Fund, all of Reorganized HTA's right, title and interest in the funds and accounts created pursuant to the New HTA Bonds Indenture and any supplemental trust agreement and the moneys, securities, and other assets on deposit with the New HTA Bonds Trustee in such funds and accounts created pursuant to the New HTA Bonds Indenture and any supplemental trust agreement permitted by the HTA Enabling Act; provided, however, that the priority in which such moneys and securities are applied to the repayment of the Secured Obligations shall be as expressly specified in the New HTA Bonds Indenture.

1.290 **Unclaimed Distribution:** Any distribution to a Creditor that has not (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check, (b) given notice to the Debtor of an intent to accept a particular distribution, (c) responded to the Debtor's requests for information necessary to facilitate a particular distribution or (d) taken any other action necessary to facilitate such distribution.

1.291 **Underwriter Actions:** Collectively, the Ambac Action, the FGIC Action, the National Action, and the SCC Action, or any action brought in the future in any state, federal or Commonwealth court, agency or tribunal against any of the defendants named in such litigations concerning or relating to indebtedness or bonds issued by HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth.

1.292 **Unexpired Lease:** A lease of nonresidential real property to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code, except as provided in Section 311 of PROMESA.

1.293 **Uniformity Litigation:** Collectively, (a) the litigation styled Ambac Assurance Corporation v. The Financial Oversight and Management Board for Puerto Rico, et al., Adv. Pro. No. 20-00068-LTS, currently pending in the Title III Court, and (b) such other litigation as may be currently pending or as may be commenced during the period from and after the date hereof up to and including the HTA Effective Date wherein claims or causes of action consistent with or similar to those asserted or which could have been asserted in the above-referenced litigation have been asserted.

1.294 **UPR:** Universidad de Puerto Rico.

1.295 **Voting Record Date:** The date(s) established by the Title III Court with respect to an entitlement to vote to accept or reject the HTA Plan and set forth in the Disclosure Statement Order; provided, however, that the "Voting Record Date" shall not apply to the

HTA_CONF 00017184

publicly traded securities, the claims with respect to which will be voted through the Depository Trust Company's Automated Tender Offer Platform, known as "ATOP", where the holder of the securities at the time of tender (as opposed to a date certain) is deemed to be the holder entitled to vote.

1.296 **Other Definitions:** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the HTA Plan that is defined in PROMESA or the Bankruptcy Code shall, if defined in PROMESA, have the meaning assigned to that term in PROMESA or, if not defined in PROMESA, but defined in the Bankruptcy Code, shall have the meaning ascribed thereto in the Bankruptcy Code. Unless otherwise specified, (a) all section, schedule, or exhibit references in the HTA Plan are to the respective section in, article of, or schedule or exhibit to, the HTA Plan, as the same may be amended, waived, or modified from time to time and (b) all references to dollars are to the lawful currency of the United States of America. The words, "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the HTA Plan as a whole and not to any particular section, subsection, or clause contained in the HTA Plan. In computing any period prescribed or allowed by the HTA Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.297 **Rules of Interpretation:** For purposes of the HTA Plan, (a) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) unless otherwise specified, any reference herein to a definition, an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it was, or is amended, modified, or supplemented, including, without limitation, updated to conform to the Definitive Documents, (c) unless otherwise specified, all references herein to distributions being made in an "amount" shall be calculated using the principal amount of any bonds issued on the HTA Effective Date pursuant to the HTA Plan plus the amount, if any, of Cash so distributed, (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the HTA Plan, (f) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, (g) unless otherwise specified, references to docket numbers of documents filed in the Title III Case are references to the docket numbers under the Title III Court's CM/ECF system, (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation", and (i) any immaterial effectuating provisions may be interpreted by the Oversight Board in such a manner consistent with the overall purpose and intent of the HTA Plan all without further notice to or action, order, or approval of the Title III Court or any other Entity.

HTA_CONF 00017185

## ARTICLE II

## COMPROMISE AND SETTLEMENT OF DISPUTES/RESTRUCTURING OF ENTITIES/RETIREE CLAIMS

2.1 **Litigation Resolution:** To the extent not resolved pursuant to the Commonwealth Plan or the Commonwealth Confirmation Order, the HTA Plan sets forth the terms and conditions for a global compromise and integrated settlement of, among other issues, asserted and unasserted disputes concerning the rights of holders of HTA 68 Bond Claims, HTA 98 Bond Claims, and CW/HTA Claims, including the disputes (a) set forth in the Debt Related Objections, (b) set forth in the Invalidity Actions, (c) set forth in the Lien Challenge Actions, (d) raised by certain holders of CW Bond Claims, CW Guarantee Bond Claims, and GDB HTA Loans asserting rights to receive revenues historically conditionally appropriated to HTA, as applicable, and "clawed back" by the Commonwealth pursuant to the provisions of the Commonwealth Constitution, (e) relating to the validity, priority, secured status and related rights attendant to the GDB HTA Loans, and (f) set forth in the Lift Stay Motions and the Clawback Actions relating to the CW/HTA Claims.

2.2 **Allowance of Bond Claims:** For purposes of confirmation and consummation of the HTA Plan and distributions to be made hereunder, unless otherwise allowed pursuant to an order of the Title III Court, on the HTA Effective Date, among other Claims, (a) the HTA 68 Bond Claims, the HTA 68 Bond Claims (Ambac), the HTA 68 Bond Claims (Assured), and the HTA 68 Bond Claims (National), shall be deemed allowed in the aggregate amount of $831,189,105.55, (b) the HTA 98 Senior Bond Claims, the HTA 98 Senior Bond Claims (Ambac), the HTA 98 Senior Bond Claims (Assured), the HTA 98 Senior Bond Claims (National), and the HTA 98 Senior Bond Claims (FGIC), including, without limitation, Claims arising from HTA 98 Senior Bonds held by the DRA, shall be deemed allowed in the aggregate amount of $3,129,667,976.84, (c) the HTA 98 Sub Bond Claims, the HTA 98 Sub Bond Claims (Assured), the HTA 98 Sub Bond Claims (FGIC), and the HTA 98 Sub Bond Claims (National) shall be deemed allowed in the aggregate amount of $277,107,234.18, and (d) the HTA/GDB Claims shall be deemed allowed in the aggregate amount of $2,149,579,432.

2.3 **Releases, Injunctions and Exculpation:** The releases, injunctions and exculpation provided in Article XLI herein are integral to obtaining the value provided hereunder and constitute an essential component of the compromises reached and are not severable from the other provisions of this HTA Plan.

2.4 **HTA Operational Restructuring:** On or as soon as practicable following the HTA Effective Date, including, without limitation, upon approval of the United States Department of Transportation Federal Transit Administration, Reorganized HTA shall be operationally restructured through the separation of the Highway Assets from the Transit Assets, with such Transit Assets and all Transit Revenues being transferred to PRITA.

(a) **Transit Assets**. The Transit Assets shall be supported by the Transit Revenues and by such other expressly identified, dedicated revenue stream, or revenue streams of PRITA or the Commonwealth, as the case may be, sufficient to cover the Transit Assets' operational and maintenance expense deficits and capital improvement expenditure needs and

37

approved as adequate for such purposes by the United States Department of Transportation Federal Transit Administration and the Oversight Board.

(b) **Highway Assets**. From and after the HTA Effective Date, Reorganized HTA shall retain the Highway Assets and, as soon as practicable thereafter, such Highway Assets shall be operationally and financially separated between Toll Road Assets and non-toll road assets, with a "Ring-Fenced" structure and allocation of cost and expenses implemented, including, without limitation, (i) the internal separation of legal, financial and operational functions and the establishment of separate Toll Road Assets and non-toll road assets management offices, and (ii) the consolidation of all non-toll-road management responsibilities of the Puerto Rico Department of Transportation and Public Works with and into Reorganized HTA.

(c) **Inventory of Highway Assets**. From and after the HTA Effective Date, Reorganized HTA shall use its reasonable best efforts to inventory all available Highway Assets and provide such inventory to the Oversight Board.

2.5 **Retiree Claims:** In accordance with the terms and provisions of Act 106 and the Commonwealth Plan, any and all obligations of the Debtor to former employees have been assumed and will be paid by the Commonwealth through Pay-Go, with the Debtor making "pay-as-you-go" contributions to the Commonwealth consistent with the provisions of Act 106 and the Commonwealth Plan, and are not otherwise treated pursuant to the HTA Plan.

## ARTICLE III

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301(a) of PROMESA, Administrative Expense Claims and Professional Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article IV of the HTA Plan.

3.1 **Administrative Expense Claims:** On the later to occur of (a) the HTA Effective Date and (b) the date on which an Administrative Expense Claim shall become an Allowed Claim, Reorganized HTA shall (i) pay to each holder of an Allowed Administrative Expense Claim, in Cash, the full amount of such Administrative Expense Claim or (ii) satisfy and discharge such Allowed Administrative Expense Claim in accordance with such other terms no more favorable to the claimant than as may be agreed upon by and between the holder thereof and Reorganized HTA; provided, however, that Allowed Administrative Expense Claims representing indebtedness incurred in the ordinary course prior to the HTA Effective Date by the Debtor shall be paid in full and performed by Reorganized HTA in accordance with the terms and subject to the conditions of any agreement governing, investment evidencing, or other document relating to such transactions, including, without limitation, all obligations of HTA and Reorganized HTA with respect to payment of the Commonwealth Loan; and, provided, further, that, with respect to the Commonwealth Loan, the repayment thereof shall be satisfied in accordance with the terms and provisions of the New HTA Bonds Indenture; and, provided, further, that, if any such ordinary course expense is not billed, or a written request for payment is

38

not made, within one hundred fifty (150) days after the HTA Effective Date, such ordinary course expense shall be barred and the holder thereof shall not be entitled to, or receive, a distribution pursuant to the HTA Plan.

3.2  **Professional Compensation and Reimbursement Claims:**  All Entities awarded compensation, including, without limitation, to the fullest extent provided in respective letters of engagement or similar instruments or agreements, or reimbursement of expenses by the Title III Court, including, without limitation, experts who provided services to the Debtor during the Title III Case, shall be paid in full, in Cash, in the amounts allowed by the Title III Court (a) as soon as reasonably practicable following the later to occur of (i) the HTA Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Government Parties; provided, however, that, except as provided herein, each Professional, including, without limitation, experts who provided services to the Debtor during the Title III Case, must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the date that is one hundred twenty (120) days following the HTA Effective Date.  Reorganized HTA shall pay compensation for professional services extended and reimbursement of expenses incurred after the HTA Effective Date in the ordinary course and without the need for Title III Court approval.

3.3  **HTA Consummation Costs:**  Notwithstanding anything contained in the HTA Plan to the contrary, in order to compensate certain parties for the cost of negotiation, confirmation and consummation of the HTA Plan, each Initial HTA/CCDA PSA Creditor shall be entitled to receive on the HTA Effective Date, or as soon thereafter as is practicable but in no event later than ten (10) Business Days following the HTA Effective Date, a pro rata share of Cash, in the form of an Allowed Administrative Expense Claim, in an amount equal to one percent (1.00%), truncated to two decimal points, of the aggregate amount of such Initial HTA/CCDA PSA Creditor's HTA 68 Bond Claims, HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Assured) and HTA 98 Senior Bond Claims (National) (insured or otherwise and, with respect to each of Assured and National, including positions that it holds or has insured), without duplication, held and/or insured by such Initial HTA/CCDA PSA Creditor as of 5:00 p.m. (EST) on May 5, 2021, in an aggregate amount not greater than One Hundred Twenty-Five Million Dollars ($125,000,000.00).

3.4  **HTA Restriction Fee:**  In exchange for executing the HTA/CCDA Plan Support Agreement, and agreeing to all of its terms and conditions, including the agreement to "lock-up" its bonds in accordance with the terms thereof, subject to the entry of the HTA Confirmation Order, each HTA/CCDA PSA Restriction Fee Creditor holding or insuring HTA 68 Bonds or HTA 98 Senior Bonds (including the applicable Monolines, to the extent such Monolines are authorized to vote the applicable Insured HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law) shall be entitled to receive the HTA PSA Restriction Fee in the form of an allowed administrative expense claim, payable in cash, at the time of consummation of the HTA Plan in an amount equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National),

39

HTA_CONF 00017188

HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent an HTA/CCDA PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with Section 301(c)(3) of PROMESA, the definitive insurance documents and applicable law) held or, in the case of the Monolines held or insured, by such HTA/CCDA PSA Restriction Fee Creditor as of the expiration of the HTA/CCDA PSA Restriction Fee Period; provided, however, that each HTA/CCDA PSA Restriction Fee Creditor who acquires any HTA 68 Bonds and/or HTA 98 Senior Bonds after the Joinder Deadline (including (i) a holder of a Monoline-insured HTA Bond (other than a Monoline-insured HTA Bond insured by Assured or National, as the case may be), to the extent such HTA/CCDA PSA Restriction Fee Creditor is authorized to vote the claim with respect to such Monoline-insured HTA Bond in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law, and (ii) Assured and National, to the extent Assured or National, as applicable, is authorized to vote such Insured HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law) shall be entitled to receive such HTA PSA Restriction Fee equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (without duplication and, to the extent any such claims are Monoline-insured, solely to the extent an HTA/CCDA PSA Creditor is authorized to vote any such claim in accordance with Section 301(c)(3) of PROMESA the definitive insurance documents and applicable law) held and/or insured by such HTA/CCDA PSA Restriction Fee Creditor as of the earlier to occur of the PSA Threshold Attainment attributable to the HTA Bond Claims and the entry of the HTA Confirmation Order; and, provided, further, that, if an HTA/CCDA PSA Restriction Fee Creditor sells any HTA 68 Bonds or HTA 98 Senior Bonds for which it would have been entitled to receive the HTA PSA Restriction Fee, the purchasing party shall not be entitled to receive the HTA PSA Restriction Fee on account thereof and such entitlement shall remain with the selling party; and, provided, further, that, in all circumstances, the sum of the aggregate HTA PSA Restriction Fee plus the Consummation Costs attributable to holders of HTA 68 Bond Claims, HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Assured), or HTA 98 Senior Bond Claims (National), as the case may be, shall not exceed One Hundred Twenty-Five Million Dollars ($125,000,000.00); and, provided, further, that, in the event the HTA/CCDA Plan Support Agreement is terminated pursuant to the terms of Sections 7.1(b)(iii) or (c) thereof (subject to the extension provided for in Sections 7.1(b) or (c) thereof), or the Oversight Board terminates the HTA/CCDA Plan Support Agreement for any reason other than (i) a breach of the HTA/CCDA Plan Support Agreement by a non-Government Party, (ii) the denial of confirmation of the HTA Plan by the Title III Court (or the Title III Court renders a decision or states its position that it will deny confirmation absent modification of the Commonwealth Plan or the HTA Plan, and such modification would have a material adverse effect on the Parties ability to consummate the Commonwealth Plan or the HTA Plan on terms consistent with the HTA/CCDA Plan Support Agreement, including, but not limited to, the terms set forth in the Settlement Summary annexed thereto as Exhibit "J"), or (iii) the entry of an order with respect to one or more of the matters set forth in Section 7.1(b)(ii) of the HTA/CCDA Plan Support Agreement, the aggregate HTA PSA

40

Restriction Fee and Consummation Costs, in the amount of Twenty Million Dollars ($20,000,000.00) shall be paid, ratably, in cash, as an administrative expense claim under the HTA Plan to the Initial HTA/CCDA PSA Creditors as of the date of termination; and, <u>provided</u>, <u>further</u>, that, in all other circumstances, upon termination of the HTA/CCDA Plan Support Agreement, including, without limitation, termination of the HTA/CCDA Plan Support Agreement in accordance with other provisions of Section 7.1 thereof, no Consummation Costs or HTA PSA Restriction Fee shall be due and payable to the party to HTA/CCDA Plan Support Agreement terminating such agreement or against the party such agreement is terminated.

 3.5 **DRA Restriction Fee**:  In exchange for executing the DRA Stipulation, and agreeing to all of its terms and conditions, including the agreement to "lock-up" its HTA 98 Senior Bonds and the HTA/GDB Claims in accordance with the terms thereof, on the HTA Effective Date, or as soon as practicable thereafter in accordance with the terms hereof, but in no event later than ten (10) Business Days following the HTA Effective Date, DRA shall be entitled to receive the DRA Restriction Fee.

 3.6 **Non-Severability**:  The allowance and payment of the Consummation Costs and HTA PSA Restriction Fees as set forth in this Article III compensate the HTA/CCDA Restriction Fee Creditors for value received and constitute an essential component of the compromises and settlements embodied herein and are not severable from the other terms and provisions set forth herein.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS

4.1 <u>**Claims are classified as follows**</u>:

| | | |
|---|---|---|
| (a) | **Class 1:** | HTA 68 Bond Claims |
| (b) | **Class 2:** | HTA 68 Bond Claims (Ambac) |
| (c) | **Class 3:** | HTA 68 Bond Claims (Assured) |
| (d) | **Class 4:** | HTA 68 Bond Claims (National) |
| (e) | **Class 5:** | HTA 98 Senior Bond Claims |
| (f) | **Class 6:** | HTA 98 Senior Bond Claims (Ambac) |
| (g) | **Class 7:** | HTA 98 Senior Bond Claims (Assured) |
| (h) | **Class 8:** | HTA 98 Senior Bond Claims (FGIC) |
| (i) | **Class 9:** | HTA 98 Senior Bond Claims (National) |
| (j) | **Class 10:** | HTA 98 Sub Bond Claims |

41

HTA_CONF 00017190

|   (k)   | **Class 11:** | HTA 98 Sub Bond Claims (Assured)            |
|--------|---------------|---------------------------------------------|
|   (l)   | **Class 12:** | HTA 98 Sub Bond Claims (FGIC)               |
|   (m)   | **Class 13:** | HTA 98 Sub Bond Claims (National)           |
|   (n)   | **Class 14:** | HTA Moscoso Bond Claims                     |
|   (o)   | **Class 15:** | Eminent Domain/Inverse Condemnation Claims  |
|   (p)   | **Class 16:** | HTA General Unsecured Claims                |
|   (q)   | **Class 17:** | HTA/GDB Claims                              |
|   (r)   | **Class 18:** | Section 510(b) Subordinated Claims          |
|   (s)   | **Class 19:** | Convenience Claims                          |
|   (t)   | **Class 20:** | Federal Claims                              |

## ARTICLE V

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (CLASS 1)

5.1     **Treatment of HTA 68 Bond Claims:**  On the HTA Effective Date, each holder of an Allowed HTA 68 Bond Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 68 Bond Claim, such holder's Pro Rata Share of the HTA 68 Bond Recovery.

## ARTICLE VI

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (AMBAC) (CLASS 2)

6.1     **Treatment of HTA 68 Bond Claims (Ambac):**  Subject to the terms and provisions of Section 26.4 hereof, on the HTA Effective Date, each holder of an Allowed HTA 68 Bond Claim (Ambac) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 68 Bond Claim (Ambac), such holder's Pro Rata Share of the HTA 68 Bond Recovery.

## ARTICLE VII

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (ASSURED) (CLASS 3)

7.1     **Treatment of HTA 68 Bond Claims (Assured):**  Subject to the terms and provisions of Section 26.1 hereof, on the HTA Effective Date, each holder of an Allowed HTA

42

HTA_CONF 00017191

68 Bond Claim (Assured) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 68 Bond Claim (Assured), such holder's Pro Rata Share of the HTA 68 Bond Recovery.

## ARTICLE VIII

## PROVISIONS FOR TREATMENT OF HTA
## 68 BOND CLAIMS (NATIONAL) (CLASS 4)

8.1    **Treatment of HTA 68 Bond Claims (National):** Subject to the terms and provisions of Section 26.2 hereof, on the HTA Effective Date, each holder of an Allowed HTA 68 Bond Claim (National) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 68 Bond Claim (National), such holder's Pro Rata Share of the HTA 68 Bond Recovery.

## ARTICLE IX

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (CLASS 5)

9.1    **Treatment of HTA 98 Senior Bond Claims:** On the HTA Effective Date, each holder of an Allowed HTA 98 Senior Bond Claims shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 98 Senior Bond Claim, such holder's Pro Rata Share of the HTA 98 Bond Recovery.

## ARTICLE X

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (AMBAC) (CLASS 6)

10.1    **Treatment of HTA 98 Senior Bond Claims (Ambac):** Subject to the terms and provisions of Section 26.4 hereof, on the HTA Effective Date, each holder of an Allowed HTA 98 Senior Bond Claim (Ambac) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 98 Senior Bond Claim (Ambac), such holder's Pro Rata Share of the HTA 98 Senior Bond Recovery.

## ARTICLE XI

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (ASSURED) (CLASS 7)

11.1    **Treatment of HTA 98 Senior Bond Claims (Assured):** Subject to the terms and provisions of Section 26.1 hereof, on the HTA Effective Date, each holder of an Allowed HTA 98 Senior Bond Claim (Assured) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 98 Senior Bond Claim (Assured), such holder's Pro Rata Share of the HTA 98 Senior Bond Recovery.

HTA_CONF 00017192

## ARTICLE XII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (FGIC) (CLASS 8)

12.1  **Treatment of HTA 98 Senior Bond Claims (FGIC):**  Subject to the terms and
provision of Section 26.3 hereof, on the HTA Effective Date, each holder of an Allowed HTA 98
Senior Bond Claim (FGIC) shall be entitled to receive, in full consideration satisfaction, release,
and exchange of such holder's Allowed HTA 98 Senior Bond Claim (FGIC), such holder's Pro
Rata Share of the HTA 98 Senior Bond Recovery.

## ARTICLE XIII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SENIOR BOND CLAIMS (NATIONAL) (CLASS 9)

13.1  **Treatment of HTA 98 Senior Bond Claims (National):**  Subject to the terms
and provisions of Section 26.2 hereof, on the HTA Effective Date, each holder of an Allowed
HTA 98 Senior Bond Claim (National) shall be entitled to receive, in full consideration,
satisfaction, release, and exchange of such holder's Allowed HTA 98 Senior Bond Claim
(National), such holder's Pro Rata Share of the HTA 98 Senior Bond Recovery.

## ARTICLE XIV

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (CLASS 10)

14.1  **Treatment of HTA 98 Sub Bond Claims:**  On the HTA Effective Date, each
holder of an Allowed HTA 98 Sub Bond Claim shall be entitled to receive, in full consideration,
satisfaction, release and exchange of such holder's Allowed HTA 98 Sub Bond Claim, such
holder's Pro Rata Share of the HTA 98 Sub Bond Recovery.

## ARTICLE XV

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (ASSURED) (CLASS 11)

15.1  **Treatment of HTA 98 Sub Bond Claims (Assured):**  Subject to the terms and
provisions of Section 26.1 hereof, on the HTA Effective Date, each holder of an Allowed HTA
98 Sub Bond Claim (Assured) shall be entitled to receive, in full consideration, satisfaction,
release, and exchange of such holder's Allowed HTA 98 Sub Bond Claim (Assured), such
holder's Pro Rata Share of the HTA 98 Sub Bond Recovery.

44

HTA_CONF 00017193

## ARTICLE XVI

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (FGIC) (CLASS 12)

16.1     **Treatment of HTA 98 Sub Bond Claims (FGIC):**  Subject to the terms and provisions of Section 26.3 hereof, on the HTA Effective Date, each holder of an Allowed HTA 98 Sub Bond Claim (FGIC) shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 98 Sub Bond Claim (FGIC), such holder's Pro Rata Share of the HTA 98 Sub Bond Recovery.

## ARTICLE XVII

## PROVISIONS FOR TREATMENT OF HTA
## 98 SUB BOND CLAIMS (NATIONAL) (CLASS 13)

17.1     **Treatment of HTA 98 Sub Bond Claims (National):**  Subject to the terms and provisions of Section 26.2 hereof, on the HTA Effective Date, each holder of an Allowed HTA 98 Sub Bond Claim (National) shall (a) be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA 98 Sub Bond Claim (National), such holder's Pro Rata Share of the HTA 98 Sub Bond Recovery, and (b) release any interest in or Lien upon the SIB Account.

## ARTICLE XVIII

## PROVISIONS FOR TREATMENT OF HTA
## MOSCOSO BOND CLAIMS (CLASS 14)

18.1     **Treatment of HTA Moscoso Bond Claims:**  On the HTA Effective Date, Allowed HTA Moscoso Bond Claims shall be deemed unimpaired, including, without limitation, the curing of all monetary defaults, if any, with respect thereto and, on the HTA Effective Date, each holder of an Allowed HTA Moscoso Bond Claim, in full consideration, satisfaction, release, and exchange of such Allowed HTA Moscoso Bond Claim, shall be entitled to receive payments of principal and interest in accordance with the terms and conditions of the HTA Moscoso Bonds.

## ARTICLE XIX

## PROVISIONS FOR TREATMENT EMINENT
## DOMAIN/INVERSE CONDEMNATION CLAIMS (CLASS 15)

19.1     **Treatment of Eminent Domain/Inverse Condemnation Claims:**  From and after the HTA Effective Date, (a) to the extent not modified prior thereto, the automatic stay extant pursuant to section 362 of the Bankruptcy Code shall be deemed modified in order to permit the holder of an Eminent Domain/Inverse Condemnation Claim to (i) liquidate such Eminent Domain/Inverse Condemnation Claim in such holder's Eminent Domain Proceeding and (ii) cause the Clerk of the Court of First Instance to distribute to such holder the amount of

45

HTA_CONF 00017194

monies on deposit with the Court of First Instance with respect to the condemned property, and (b) subject to the entry of the HTA Confirmation Order or the Findings of Fact and Conclusions of Law in respect of the HTA Plan providing such claims must be paid in full to the extent they are Allowed Claims for just compensation, upon each such order becoming a Final Order, and upon the occurrence of another Final Order determining the validity and amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim, the holder of an Allowed Eminent Domain/Inverse Condemnation Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's unpaid balance of its Allowed Eminent Domain/Inverse Condemnation Claim, in Cash, one hundred percent (100%) of such unpaid balance; provided, however, that, in the event that the Oversight Board's appeal of the Commonwealth Confirmation Order and the Findings of Fact and Conclusions of Law entered with respect thereto relating to the non-dischargeability of Eminent Domain/Inverse Condemnation Claims against the Commonwealth is successful and such Commonwealth Confirmation Order is reversed to such extent, the holder of such unpaid balance of an Allowed Eminent Domain/Inverse Condemnation Claims shall be entitled to receive, in full consideration, satisfaction, release and exchange therefor, payments from HTA equal to, and on the same timeframe as, the payments to be made to holders of Allowed HTA General Unsecured Claims pursuant to the terms and provisions of Sections 20.1, 20.2 and 20.3 hereof.

## ARTICLE XX

## PROVISIONS FOR TREATMENT OF HTA
## GENERAL UNSECURED CLAIMS (CLASS 16)

20.1    **Treatment of HTA General Unsecured Claims:**

(a)      Treatment of HTA General Unsecured Claims.  Subject to the election set forth in Section 20.1(b) hereof, on the HTA Effective Date, each holder of an Allowed HTA General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction, release, and exchange of such holder's Allowed HTA General Unsecured Claim, such holder's Pro Rata Share of the HTA GUC Recovery up to the GUC Recovery Cap.

(b)      Election to be Treated as a Convenience Claim.  Notwithstanding the provisions of Section 20.1(a) of the HTA Plan, any holder of (i) an Allowed HTA General Unsecured Claim, other than a HTA General Unsecured Claim that is a component of a larger General Unsecured Claim, portions of which may be held by such or any other holder of an Allowed Claim, whose Allowed HTA General Unsecured Claim is more than Twenty Thousand Dollars ($20,000.00), and who elects to reduce the amount of such Allowed HTA General Unsecured Claim to Twenty Thousand Dollars ($20,000.00) and (ii) multiple Allowed HTA General Unsecured Claims that are greater than Forty Thousand Dollars ($40,000.00) in the aggregate, and who elects to reduce the aggregate amount of such Allowed HTA General Unsecured Claims to Forty Thousand Dollars ($40,000.00) shall, at such holder's option, be entitled to receive, based on such Allowed HTA General Unsecured Claim as so reduced, distributions pursuant to Section 23.1 hereof.  Such election must be made on the Ballot and be received by the Oversight Board on or prior to the Ballot Date.  Any election made after the Ballot Date shall not be binding upon HTA unless the Ballot Date is expressly waived, in

46

writing, by the Oversight Board; provided, however, that, under no circumstances may such waiver by the Oversight Board occur on or after the HTA Effective Date.

20.2    **Limitation on Recovery:**  Notwithstanding anything contained herein to the contrary, in the event that distributions with respect to Allowed HTA General Unsecured Claims from the HTA GUC Recovery equal the GUC Recovery Cap, without consideration of any net recoveries by the Avoidance Actions Trust with respect to the Avoidance Actions, any funds remaining in the GUC Reserve following attainment of the GUC Recovery Cap and distributions made or reserved on account thereof shall be turned over to HTA for general purposes.

20.3    **GUC Reserve:**  The GUC Reserve shall be funded as follows: (a) Twenty-Four Million Dollars ($24,000,000.00) on the HTA Effective Date; and (b) Twenty-Four Million Dollars ($24,000,000.00) on the first (1st) anniversary of the HTA Effective Date; provided, however, that amounts necessary to satisfy Allowed Convenience Claims shall be deemed to satisfy a portion of the amount to be deposited into the GUC Reserve and be funded directly to the Disbursing Agent and not into the GUC Reserve; and, provided, further, that, in accordance with the provisions of Section 20.2 hereof, in the event recoveries on account of Allowed HTA General Unclaimed Claims from the HTA GUC Recovery equal the GUC Recovery Cap, (y) any funds (other than any recoveries by the Avoidance Actions Trust with respect to the Avoidance Actions) remaining in the GUC Reserve following attainment of the GUC Recovery Cap and distributions made or reserved on account thereof shall be turned over to HTA for general purposes, or (z) to the extent such GUC Recovery Cap is reached prior to a future funding obligation, HTA shall be relieved of such future funding obligation.

## ARTICLE XXI

## PROVISIONS FOR TREATMENT OF
## HTA/GDB CLAIMS (CLASS 17)

21.1    **Treatment of HTA/GDB Claims:**  Pursuant to the terms and provisions of the DRA Stipulation, Allowed HTA/GDB Claims shall not receive a distribution pursuant to the HTA Plan and each holder of an Allowed HTA/GDB Claim shall be deemed to have accepted the HTA Plan.

## ARTICLE XXII

## PROVISIONS FOR TREATMENT OF
## SECTION 510(b) SUBORDINATED CLAIMS (CLASS 18)

22.1    **Treatment of Section 510(b) Subordinated Claims:**  Section 510(b) Subordinated Claims shall not receive a distribution pursuant to the HTA Plan and each holder of an Allowed Section 510(b) Subordinated Claim shall be deemed to have rejected the HTA Plan with respect to such Section 510(b) Subordinated Claims.

HTA_CONF 00017196

# ARTICLE XXIII

## PROVISIONS FOR TREATMENT OF
## CONVENIENCE CLAIMS (CLASS 19)

23.1 **Treatment of Convenience Claims:** On the later of the HTA Effective Date and the date such Allowed Convenience Claim becomes an Allowed Claim, or as soon thereafter as is practicable, the Disbursing Agent shall pay to each holder of an Allowed Convenience Claim, in Cash, the full amount of such Allowed Convenience Claim, in full satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Convenience Claim.

## ARTICLE XXIV

## PROVISIONS FOR TREATMENT
## OF FEDERAL CLAIMS (CLASS 20)

24.1 **Treatment of Federal Claims**: On the later to occur of (a) the HTA Effective Date and (b) the date on which a Federal Claim shall become an Allowed Claim, Reorganized HTA shall (i) in its sole and absolute discretion, and in full consideration, satisfaction, release and exchange of an Allowed Federal Claim, (1) pay to each holder of an Allowed Federal Claim, in Cash, the full amount of such Allowed Federal Claim, (2) satisfy and discharge such Allowed Federal Claim in accordance with the terms and conditions of such documents evidencing such Allowed Federal Claims, or (3) pay to each holder of an Allowed Federal Claim, in Cash, the full amount of such Allowed Federal Claim in forty (40) equal amount installments, with such payments commencing on the third (3rd) anniversary of the HTA Effective Date and continuing on each anniversary thereafter, or (ii) satisfy and discharge such allowed Federal Claims on such terms as Reorganized HTA and the holder of any such Allowed Federal Claim shall agree.

## ARTICLE XXV

## PROVISIONS REGARDING SECURED OBLIGATIONS
## AND ADDITIONAL INDEBTEDNESS

25.1 **Issuance and Distribution of the New HTA Bonds:** On the HTA Effective Date, Reorganized HTA shall issue the Secured Obligations, in minimum denominations of One Dollar ($1.00) and increments of One Dollar ($1.00) thereafter, consisting of New HTA CIBs, New HTA CABs, New HTA Convertible CABs, and Subordinated Indebtedness, as more particularly described herein and in the New HTA Bonds Indenture. The maturities, interest rates and amortization schedules for the Secured Obligations are annexed hereto as Exhibits "D" and "E". All debt service on the Secured Obligations which is not paid when due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid in full and shall be paid. Interest shall accrue on such overdue debt service at the regular coupon rate (accretion rate for CABs), compounding semiannually, until the applicable Secured Obligations are paid or satisfied in full in accordance with their terms. Interest on the Secured Obligations shall be calculated on a 30/360 basis. To the extent the Government Parties, each acting in its sole and absolute discretion, determine to apply for ratings on the New HTA Bonds, the Government Parties shall use their commercially reasonable best efforts to obtain ratings on the New HTA

48

Bonds, including promptly responding in good faith to documentary or other requests, as soon as reasonably practicable as determined solely by the Government Parties. After the Government Parties determine which rating agencies to apply for ratings from, the Government Parties shall use their commercially reasonable best efforts to obtain the best possible ratings. Notwithstanding anything contained in the HTA Plan to the contrary, to the extent that taxable New HTA Bonds are issued, such New HTA Bonds shall be distributed pro rata to recipients of New HTA Bonds.

      (a)   **New HTA CIBs:** Subject to any adjustments provided for herein, the New HTA CIBs shall have the original principal amount, coupon, maturity date and taxable status as follows: Six Hundred Million Dollars ($600,000,000.00), five percent (5.0%), July 1, 2062, and tax exempt. New HTA CIBs shall not carry any default rate of interest; provided, however, that interest shall continue to accrete on all overdue debt service, at the regular accretion rate, compounding semi-annually, until paid or satisfied in full in accordance with their terms.

      (b)   **New HTA CABs:** Subject to any adjustments provided for herein, the New HTA CABs shall have the original principal amount, accretion yield, maturity date and taxable status as follows: Two Hundred Thirty-Seven Million Nine Hundred Fifty-Five Thousand Eight Hundred Sixty-Eight Dollars and Thirteen Cents ($237,955,868.13), five percent (5.0%), July 1, 2032, and tax-exempt. New HTA CABs shall not carry any default rate of interest; provided, however, that the interest shall continue to accrete on all overdue debt service, at the regular accretion rate, compounding semi-annually, until paid or satisfied in full in accordance with their terms.

      (c)   **New HTA Convertible CABs:** Subject to any adjustments provided for herein, the New HTA Convertible CABs shall have the original principal amount, accretion yield, maturity date and taxable status as follows: Four Hundred Seven Million Forty-Four Thousand Five Hundred Ninety-Seven Dollars and Fifty-Seven Cents ($407,044,597.57), five percent (5.0%), July 1, 2053, a Conversion Date of July 1, 2032, and tax-exempt. New HTA Convertible CABs shall not carry any default rate of interest; provided, however, that the interest shall continue to accrete on all overdue debt service, at the regular accretion rate, compounding semi-annually, until paid or satisfied in full in accordance with their terms.

      (d)   **Subordinated Indebtedness:** Subject to any adjustments provided herein, the Subordinated Indebtedness shall have the original principal amount, coupon and maturity date as follows: the outstanding principal amount of the Commonwealth Loan as of the HTA Effective Date, plus all accrued and unpaid interest on the Commonwealth Loan as of the HTA Effective Date, two and one-half percent (2.5%), and July 1, 2052.

      (e)   **Deemed Issuance Date:** Notwithstanding the timing of the HTA Effective Date, interest on the New HTA Bonds shall commence to accrue or accrete, as applicable on the earlier to occur of (i) July 1, 2022, and (ii) the HTA Effective Date, which date shall be designated as the "dated date" of the New HTA Bonds.

HTA_CONF 00017198

(f)   **Call Provisions/Optional Redemption:**  The New HTA Bonds shall be callable, in whole or in part, in any order of maturity, at par plus accrued interest thereon, upon thirty (30) day's prior written notice as follows:

**New HTA CIBs:**

2062 CIBS:  Callable at par on and after 7/1/32

**New HTA CABs:**

2032 CABS:  Non-Callable

**New HTA Convertible CABs:**

2053 CCABS:  Callable at par on and after 1/1/33

(g)   **Extraordinary Call Provisions:**  Notwithstanding the terms and provisions of Section 25.1(d) hereof, from and after the HTA Effective Date and until the New HTA Bonds have been satisfied in full in accordance with their terms, (i) upon a full disposition of the Toll Facilities, the New HTA Bonds Trustee shall redeem the New HTA Bonds, at par, plus accrued or accreted interest thereon, and (ii) upon a Partial Disposition, the New HTA Bonds Trustee shall redeem, at par, plus accrued or accredited interest thereon, the allocable portion of New HTA Bonds related to the Toll Facilities subject to such Partial Disposition; provided, however, that, in the event that such redemption is for only a portion of the New HTA Bonds, such redemption shall be done in a manner to preserve the prevailing tax-exempt status of the New HTA Bonds.  Reorganized HTA will not enter into a Partial Disposition unless there is delivered to the New HTA Bonds Trustee a certificate of Reorganized HTA, and approved by the traffic consultant, a certificate setting forth (i) the amount of Net Receipts, as defined in the New HTA Bonds Indenture, that would have been collected in the most recently completed FY had such Partial Disposition occurred prior to the first day of such FY, (ii) maximum annual debt service on the Secured Obligations that will remain outstanding after such agreement becomes effective in accordance with its terms, and (iii) the percentages derived by derived by dividing the amount in clause (i) above by the amounts shown in clause (ii) above, which percentage shall not be less than one hundred twenty percent (120%).

(h)   **Pledge of Trust Estate:**  From and after the HTA Effective Date, until the Secured Obligations have been paid or satisfied in full in accordance with their terms, the New HTA Bonds Trustee, on behalf of the holders of Secured Obligations, shall have a valid and perfected first-priority lien on and first-priority security interest in the Trust Estate, subject only to (i) the terms and provisions of the New HTA Bonds Indenture establishing the Authority Expense Fund and the Arbitrage Rebate Fund, and (ii) the senior lien and senior security interest granted in the Trust Estate for the benefit of holders of New HTA Bonds, which shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted in Trust Estate for the benefit of holders of Subordinated Indebtedness.

(i)   **Monthly Deposits of Toll Receipts:**  On the first (1st) Business Day of each calendar month, the New HTA Bonds Trustee shall withdraw the Toll Receipts from the

50

Toll Receipts Fund and transfer and apply such amounts in accordance with the terms and provisions of the New HTA Bonds Indenture. Without in any way limiting the foregoing, on the HTA Effective Date, Reorganized HTA shall deposit into the Toll Receipt Fund such additional amounts as may be necessary to account for the New HTA Bonds being issued as of the Deemed Issuance Date.

(j) **Additional Covenants for New HTA Bonds:** On the HTA Effective Date, the New HTA Bonds Indenture will contain customary terms, conditions and covenants for similarly structured and supported bonds, and such conditions and covenants shall be deemed incorporated herein as though set forth in full.

(k) **Rights of Acceleration:** The New HTA Bonds shall not have rights of acceleration.

(l) **Non-Impairment Covenant:** Pursuant to the New HTA Bonds Indenture, and/or the HTA Confirmation Order, Reorganized HTA shall covenant, pledge to, and agree, for the benefit of all initial and subsequent holders of New HTA Bonds, (i) to enforce the covenant of the Commonwealth set forth in § 2019 of the HTA Enabling Act that the Commonwealth will not limit or restrict the rights or power vested in HTA or Reorganized HTA, as the case may be, under the HTA Enabling Act until all New HTA Bonds, together with all interest thereon, are fully met and discharged and (ii) to take no action that would (A) impair the first-priority lien on and first-priority security interest in the Trust Estate, (B) impair the senior lien and senior security interest on the Trust Estate granted to the holders of New HTA Bonds, which shall in all respects be senior and superior to the subordinate lien and subordinate security interest on the Trust Estate granted to the holders of outstanding Subordinated Indebtedness, (C) impair or prevent the monthly deposits of Toll Receipts as set forth in subsection (i) of this Section 25.1, (D) limit or alter the rights vested in Reorganized HTA in accordance with the HTA Plan and the HTA Confirmation Order to fulfill the terms of any agreements with the holders of the New HTA Bonds or, (E) impair the rights and remedies of the New HTA Bonds Trustee or holders of the New HTA Bonds under the New HTA Bonds Indenture, including, without limitation, the defaults and remedies thereunder.

(m) **Automatic Perfection of Lien on Trust Estate:** The first-priority lien on the Trust Estate established pursuant to the New HTA Bonds Indenture shall be deemed automatically perfected as of the HTA Effective Date.

(n) **Direct Right of Action:** Pursuant to the New HTA Bonds Indenture, and subject to such additional rights as provided therein, the New HTA Bonds Trustee shall have a direct right of action to enforce the terms of the New HTA Bonds Indenture, including, without limitation, with respect to funding deposits made in accordance therewith and seeking specific performance and other available remedies for any breach of covenants in the New HTA Bonds Indenture.

(o) **HTA Fiscal Plans:** HTA Fiscal Plans certified on or after the HTA Effective Date shall provide for the measures necessary to service the obligations contemplated pursuant to this HTA Plan, the New HTA Bonds, and the New HTA Bonds Indenture.

HTA_CONF 00017200

(p)   **Stamp or Legend:**  The New HTA Bonds shall bear a stamp or similar legend stating that the United States District Court for the District of Puerto Rico has determined that such New HTA Bonds are valid, legally binding and enforceable pursuant to the HTA Confirmation Order.

(q)   **Retention of Jurisdiction:**  The Title III Court shall retain jurisdiction to enforce the HTA Plan, the New HTA Bonds, and the New HTA Bonds Indenture, including, without limitation, the Toll Rate Covenant, or, in the event the Title III Court declines such retention of jurisdiction or the HTA Title III Case has been closed in accordance with the terms and provisions of PROMESA, the United States District Court for the District of Puerto Rico is hereby designated to enforce this HTA Plan, the New HTA Bonds and the New HTA Bonds Indenture, including, without limitation, the Toll Rate Covenant.

(r)   **Governing Law:**  The New HTA Bonds Indenture and the New HTA Bonds issued thereunder shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law; provided, however, that, notwithstanding the application of the laws of the State of New York to govern the New HTA Bonds Indenture and the New HTA Bonds, the authorization regarding the issuance of the New HTA Bonds is provided by the laws of the Commonwealth.

25.2   **Tax-Exempt Treatment of the New HTA Bonds:**  In the event that the Government Parties obtain a determination from the IRS or an opinion from Section 103 Bond Counsel (collectively, a "Determination") that all of the New HTA Bonds to be issued on the HTA Effective Date are tax-exempt, the holders of any Claims receiving New HTA Bonds pursuant to the HTA Plan shall receive the benefit of such Determination in the form of tax-exempt New HTA Bonds issued pursuant to the HTA Plan with coupons for all maturities equal to the coupons on the tax-exempt New HTA Bonds set forth on Exhibit "D" hereto; provided, however, that, in the event that the Determination is obtained subsequent to the HTA Effective Date, then the holders of the taxable New HTA Bonds affected by such Determination  (the "Invited Bonds") shall be invited to exchange such bonds for converted bonds (the "Exchange Offer") and, subject to the application of all reasonable expenses incurred by the Government Parties in connection with such Exchange Offer, the interest rate on the converted bonds shall be the same as the interest on Invited Bonds of the same type, interest rate, series and maturity; and, provided, further, that, such converted bonds shall be accompanied by the favorable opinion of Section 103 Bond Counsel that the interest, other than pre-issuance accrued interest, on such converted bonds, and on the Invited Bonds exchanged for such converted bonds from the original date of delivery of such Invited Bonds so exchanged, is, in such counsel's opinion, excluded from gross income for federal income tax purposes and from U.S., state, Commonwealth and local income taxation; and, provided, further, that, in the event that neither of the foregoing determinations are obtained, the covenants to seek such determinations shall terminate upon the earlier to occur of (1) June 15, 2022, (2) notification by the IRS to the Commonwealth that IRS is unable to issue a favorable private letter ruling, closing agreement or other type of IRS determination with respect to the matters addressed by this subsection, and (3) the amendment of the New HTA Bonds Indenture following receipt of a favorable determination and consummation of an Exchange Offer.

25.3   **Adoption and Maintenance of a Debt Management Policy:**  During the Debt

HTA_CONF 00017201

Policy Period, Reorganized HTA shall maintain and comply with a Debt Management Policy designed to ensure that certain past Debt issuance practices of HTA are not repeated. While Reorganized HTA may revise and update its Debt Management Policy to reflect changing bond market conditions and standards, the Debt Management Policy shall, unless otherwise approved, in writing, by the Oversight Board, at all times include the following principles and limitations:

      (a)    **Long-Term Borrowing for Capital Improvements Only:** To ensure Reorganized HTA achieves and maintains a structurally balanced budget consistent with PROMESA's requirement that Puerto Rico return to fiscal responsibility, Debt issued by HTA after the HTA Effective Date may only be incurred to finance Capital Improvements, as determined by HTA and approved by AAFAF, and, to the extent not terminated, the Oversight Board, or to refinance Debt in accordance with the terms and provisions of Section 25.3(d) hereof. Proceeds derived from any such issuance may be used to cover any and all direct and indirect expenses that, in HTA's reasonable discretion, are necessary to carry out such Capital Improvements, including, without limitation, any and all expenses incurred in connection with the issuance itself.

      (b)    **30-Year Maturity Limitation on All Borrowings:** No Debt issued by HTA after the HTA Effective Date may have a legal final maturity later than thirty (30) years from the date of its original issuance, and no such Debt may be refinanced by any Debt extending such legal final maturity date beyond such original thirty (30)-year maturity date limitation; provided, however, that, the foregoing shall not apply to Debt issued to refinance New HTA Bonds.

      (c)    **Required Principal Amortization:** No Debt issued from and after the HTA Effective Date may be issued unless its principal commences to amortize within two (2) years from the placed-in-service date of the project being financed, and continues amortizing in each and every year until such Debt is no longer outstanding.

      (d)    **Refinancings Permitted only for Cash Flow Savings in Every Fiscal Year:** Refinancings of Debt are permitted only if (i) there is no increase in the amount of bond principal and interest payable in any fiscal year and (ii) such refinancing produces positive present value savings, after taking into consideration transaction expenses, at the levels specified by Reorganized HTA in its Debt Management Policy; provided, however, that, refinancings without cash flow savings in every FY are permitted if the refinancing is completed in direct response to a hurricane, earthquake, pandemic, terrorism or other natural disaster and similar emergencies and the debt service due in any future FY does not increase by more than ten percent (10%) and the financing is required by its terms to be repaid in full within ten (10) years.

      (e)    **Fiscal Plan Debt Service:** Any post-HTA Effective Date HTA Fiscal Plan shall include provisions for the payment, in each FY of principal and interest (and/or accreted value, as applicable) with respect to the Secured Obligations, including, without limitation, sinking fund payments due in such FY.

Notwithstanding the foregoing, nothing contained herein shall prohibit Reorganized HTA from adopting, maintaining and complying with a Debt Management Policy that is more restrictive than the requirements set forth above. The Debt Management Policy shall be in addition to any

HTA_CONF 00017202

other limitations imposed by law and nothing contained herein shall be construed as superseding, amending, or repealing any additional restrictions imposed by the Commonwealth Constitution.

## ARTICLE XXVI

## PROVISIONS REGARDING ASSURED INSURED BONDS, NATIONAL INSURED BONDS, AMBAC INSURED BONDS AND FGIC INSURED BONDS

26.1    **Treatment of Assured Insured Bond Claims:**  In the event that Classes 3, 7, and 11 vote to accept the HTA Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, and all Assured Insurance Policies and related agreements relating to Assured Insured Bonds are in full force or effect, or have otherwise been fully performed by Assured, with no outstanding payment defaults by Assured with respect to such Assured Insured Bonds up to and including the HTA Effective Date, then, notwithstanding any other provision of the HTA Plan, holders of Assured Insured Bond Claims shall receive the following treatments, which treatments shall be selected by Assured, in its sole and absolute discretion, prior to the commencement of the Disclosure Statement Hearing and as set forth in the Assured Election Notice or the Assured Bondholder Elections Form, as applicable:

(a)    **Assured Election:**  With respect to the Assured Insured Bonds identified on Exhibit "A" to the Assured Election Notice, subject to the rights of the HTA Fiscal Agent, Assured shall receive the Assured Plan Consideration allocable to holders of such Assured Insured Bonds, and such Assured Insured Bonds selected by Assured shall be paid by Assured, in full, on the HTA Effective Date, at an Assured Acceleration Price equal to the outstanding principal amount of such Assured Insured Bonds, plus the accrued and unpaid interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) as of the date of payment in accordance with the Assured Insurance Policies insuring the relevant Assured Insured Bonds; provided, however, that, for the avoidance of doubt, Assured shall not be required to pay itself any Assured Acceleration Price with respect to any Assured Insured Bonds owned by Assured, by subrogation or otherwise, and Assured shall receive the Assured Plan Consideration on account of such Assured Insured Bonds owned by Assured.  Payment of the applicable Assured Acceleration Price with respect to any Assured Insured Bond, including in accordance with the Assured Election, shall satisfy and discharge all of Assured's obligations under the Assured Insurance Policies with respect to such Assured Insured Bond.

(b)    **Assured Insured Bondholder Elections:** Each beneficial holder of an Assured Insured Bond identified on Exhibit "A" to the Assured Bondholder Elections Form may elect one of the following two Assured Bondholder Elections, in each case on terms acceptable to Assured; provided, however, that, in the event that an Assured Insured Bondholder eligible to make an Assured Bondholder Election fails to make such an Assured Bondholder Election, such Assured Insured Bondholder shall be deemed to have elected Assured Bondholder Election 2; and, provided, further, that, for the avoidance of doubt, Assured Insured Bonds owned by Assured (by subrogation or otherwise) shall not be subject to the Assured Bondholder Elections set forth in this Section 26.1(b), and Assured shall receive the Assured Plan Consideration on account of such Assured Insured Bonds:

54

(i)     **Assured Bondholder Election 1:** Each Assured Insured Bondholder who elects Assured Bondholder Election 1 shall receive from Assured the applicable Assured Acceleration Price on the HTA Effective Date, in full satisfaction and discharge of Assured's obligations with respect to such holder under the applicable Assured Insurance Policies, and Assured shall receive the Assured Plan Consideration allocable to such holder under the HTA Plan; or

(ii)     **Assured Bondholder Election 2:** Each Assured Insured Bondholder who elects Assured Bondholder Election 2 will opt into a custodial trust, escrow arrangement, or similar structure established by Assured that will provide such Assured Insured Bondholder with an interest in (A) the applicable Assured Insurance Policy and (B) the applicable Assured Plan Consideration in accordance with terms acceptable to Assured. The interests granted in a custodial trust, escrow arrangement, or similar structure established in connection with Assured Bondholder Election 2 must be DTC eligible.

Pursuant to the terms and provisions of Section 26.1(c) hereof, the payment of the principal of the Assured Insured Bonds shall be accelerated from and after the HTA Effective Date, and such Assured Insured Bonds shall be due and payable from and after the HTA Effective Date at the Assured Acceleration Price of one hundred percent (100%) of the principal amount thereof, plus accrued interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment. Without limiting the foregoing, pursuant to the applicable Assured Insurance Policies, (A) Assured may elect, in its sole and absolute discretion, to make any principal payment, in whole or in part, on any date on which such principal payment is due by reason of acceleration or other advancement of maturity, and (B) in the case of any Assured Insured Bonds the holders of which have elected (or are deemed to have elected) Assured Bondholder Election 2, Assured will retain the right to pay the Assured Acceleration Price and fully satisfy its obligations with respect to such bonds and the applicable Assured Insurance Policies at any time after the HTA Effective Date upon thirty (30) days' prior written notice to the relevant holders. Assured's retention of this right will be reflected in the applicable custodial trust or escrow documentation. From and after payment of the Assured Acceleration Price, including without limitation, on (i) the HTA Effective Date or (ii) such other date of payment selected by Assured, with thirty (30) days' prior written notice, interest on such Assured Insured Bonds shall cease to accrue and be payable. Payment of the applicable Assured Acceleration Price with respect to any Assured Insured Bond in accordance with any of the provisions above, including, without limitation, on the HTA Effective Date, shall satisfy and discharge all of Assured's obligations under the Assured Insurance Policies with respect to such Assured Insured Bond.

(c)     **Acceleration of Assured Insured Bonds:** Notwithstanding any other provision of the HTA Plan, to the extent that there are no outstanding payment defaults by Assured with respect to Assured Insured Bonds up to and including the HTA Effective Date, the payment of the principal of the Assured Insured Bonds shall be accelerated from and after the HTA Effective Date, and such Assured Insured Bonds shall be due and payable from and after the HTA Effective Date at the Assured Acceleration Price of one hundred percent (100%) of the principal amount thereof plus accrued interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.

55

HTA_CONF 00017204

(d) **Assignment of Redemption Rights:** Notwithstanding any other provision of the HTA Plan, on the HTA Effective Date, HTA shall be deemed to have assigned to Assured any rights to redeem and call the Assured Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by Assured as if it were HTA for such purpose, and any amounts due in connection with such redemption shall be equal to the lesser of the applicable redemption price and the Assured Acceleration Price.

(e) **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, the solicitation of acceptances and rejections to the HTA Plan by holders of Assured Insured Bond Claims shall be made by the Oversight Board to Assured in accordance with the provisions of Section 301(c)(3) of PROMESA

(f) **Dual-Insured Bonds:** In the event any distributions of Cash are made to owners of Dual-Insured Bonds (rather than to Assured as the holder of the related HTA 98 Senior Bond Claims) pursuant to decretal paragraph 52 of the Commonwealth Confirmation Order, such Cash distributions shall be deemed to have reduced the principal amounts of such Dual-Insured Bonds as of the date of such Cash distributions and to have resulted in a corresponding reduction in FGIC's obligations under the applicable FGIC Insurance Policies and Assured's obligations under the applicable Assured Insurance Policies. In the event any distributions of Cash are made on account of Dual-Insured Bonds to Assured as the holder of the related HTA 98 Senior Bond Claims pursuant to decretal paragraph 52 of the Commonwealth Confirmation Order, such Cash distributions shall be deemed to have reduced the principal amounts of such Dual-Insured Bonds as of the date of such Cash distributions and to have resulted in a corresponding reduction in FGIC's obligations under the applicable FGIC Insurance Policies, but shall be deemed not to have reduced (i) Assured's obligations under the applicable Assured Insurance Policies or (ii) the principal amount of any custody receipt evidencing a beneficial interest in such Dual-Insured Bonds and related Assured Insurance Policies.

26.2 **Treatment of National Insured Bond Claims:** In the event that Classes 4, 9 and 13 vote to accept the HTA Plan in accordance with section 1126 of the Bankruptcy Code, and all National Insurance Policies and related agreements related to National Insured Bonds are in full force and effect, or have otherwise been fully performed by National, with no outstanding payment defaults by National with respect to such National Insured Bonds up to and including the HTA Effective Date, then, notwithstanding any other provision of the HTA Plan, on the HTA Effective Date, holders of Allowed National Insured Bond Claims shall receive the following treatments, which treatments shall be selected by National, in its sole and absolute discretion, at or prior to the commencement of the Disclosure Statement Hearing and be set forth on the National Bondholder Election Form or the National Election Notice, as applicable; provided, however, that, for the avoidance of doubt, National Insured Bonds owned or held by National (by subrogation or otherwise) shall not be subject to the treatment elections set forth in this Section 26.2 and, subject to the rights of the HTA Fiscal Agent, National shall receive the National Plan Consideration on account of such bonds; and, provided, further, that, subject to providing holders of Allowed National Insured Bond Claims with the treatment or elections set forth in this Section 26.2 and satisfying all such treatment or elections, National shall have all right, title and interest in the National HTA Consideration and shall manage the National HTA Consideration in its sole and absolute discretion subject to and in accordance with all applicable laws and regulations; and, provided, further, that any calculations and/or payments to be made to a holder based on, or

56

in relation to, such holder's Allowed National Insured Bond Claim pursuant to the options set forth in this Section 26.2 will take into account any payments of principal and/or accrued interest already made to such holder by National pursuant to the terms of the relevant National Insurance Policies, and such holder shall not be compensated for any amounts already paid to such holder pursuant to the terms of the relevant National Insurance Policies:

      (a)    **National Commutation Treatment of HTA 68 Bond Claims (National) and HTA 98 Senior Bond Claims (National):**  Each holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) shall have the option to elect on the National Bondholder Election Form to receive, on the HTA Effective Date, the National Commutation Consideration, distributable by or at the direction of National, and, if elected, (i) the holder thereof shall have no other or further rights under or with respect to the applicable National Insurance Policy or any National Trust or National Escrow Account, (ii) the holder thereof shall not receive any payments from National under the National Insurance Policies on account of accrued and unpaid interest on and after, or, in the case of any capital appreciation bonds, the accreted value on and after, the Deemed Issuance Date, and to the extent any accrued or accreted interest is paid to such holder by National after such date, such amount shall be credited against the Cash such holder, their successors, transferees or assigns are otherwise entitled to receive as National Commutation Consideration, and (iii) National shall receive the National Plan Consideration distributable on account of the applicable Allowed National Insured Bond Claim.  The National Insured Bonds of a holder that timely and validly elects to receive the National Commutation Treatment or makes an improper election as described in Section 26.2(g) hereof, shall be deemed cancelled on the HTA Effective Date, and National's obligations under the applicable National Insurance Policies shall be fully and finally satisfied, released, and discharged.

      (b)    **National Non-Commutation Treatment of HTA 68 Bond Claims (National) and HTA 98 Senior Bond Claims (National):**  In the event that a holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) timely and validly elects on the National Bondholder Election Form to receive the National Non-Commutation Treatment in accordance with the provisions of Sections 26.2(b) and (g) hereof, (i) National shall receive the National Plan Consideration distributable on account of the applicable Allowed National Insured Bond Claim, and (ii) such holder shall receive one or more of the following treatments, at National's election, which election shall be exercised by National at or prior to the commencement of the Disclosure Statement Hearing, and as detailed in the applicable National Bondholder Election Form:

          (i)    **Custodial Trusts:**  Such holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) shall (A) deposit, or be deemed to have deposited, among other things, such holder's Pro Rata Share of the National Trust Consideration, the National Insured Bonds allocable to such electing holder, and the related National Insurance Policies into the applicable National Trust, (B) be deemed to have received its Pro Rata Share of the National Trust Consideration and National Certificates in consideration therefor, and (C) have no recourse to National or the National Insurance Policies other than as provided for under the terms of the National Trust.

57

      (ii)    **Escrow:**  Such holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) shall deposit, or be deemed to have deposited, among other things, such holder's Pro Rata Share of the National Escrow Consideration in the National Escrow Account and such deposited National Escrow Consideration shall be held as security for National's obligations to the holders of the National Insured Bonds whose National Escrow Consideration was deposited in the National Escrow Account under the National Insurance Policies.

      (iii)    **Payment of Accelerated Amounts:**  National shall receive the National Plan Consideration that would be otherwise allocable to such holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) and National shall fully and completely discharge its obligation to such holder of an Allowed National Insured Bond Claim by paying on the HTA Effective Date, in Cash, the amount thereof at the National Acceleration Price as of the date of payment.

      (iv)    **Alternative Treatment:**  The Oversight Board and National reserve the right to formulate an alternative election or implementation option with respect to the National Insured Bonds that is mutually acceptable to the Oversight Board and National, each in their respective sole discretion; provided, however, that any such alternative election or implementation option must be proposed, in writing, prior to the commencement of the Disclosure Statement Hearing.

Notwithstanding the foregoing, and for the avoidance of doubt, National may make different elections, with respect to different CUSIPs and different holders of National Insured Bonds.

      (c)    **Acceleration of National Insured Bonds:**  Notwithstanding any other provision of the HTA Plan, to the extent that there are no outstanding payment defaults by National with respect to National Insured Bonds up to and including the HTA Effective Date, the payment of the principal of the National Insured Bonds shall be accelerated as of the HTA Effective Date, and such National Insured Bonds shall be due and payable from and after the HTA Effective Date at the National Acceleration Price of one hundred percent (100%) of the principal amount thereof plus interest accrued thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.  National shall have the right to pay the National Acceleration Price with respect to the National Insured Bonds at any time, and the holder of the National Insured Bonds and the trustee or fiscal agent (as applicable) shall be required to accept the same in satisfaction of National's obligations under the applicable National Insurance Policy with respect to such bonds, and, upon such payment, National's obligations under the applicable National Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the applicable National Insurance Policy or other documents related to the National Insured Bonds.  For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any National Insurance Policy unless National elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis.

      (d)    **Treatment of HTA 98 Sub Bond Claims (National):**  On the HTA Effective Date, or as soon as reasonably practicable thereafter, but in no event later than the tenth (10th) Business Day following the HTA Effective Date, each holder of an Allowed HTA 98 Sub

HTA_CONF 00017207

Bond Claim (National) shall receive Cash in an amount equal to the National Acceleration Price, in full and final satisfaction, release, and discharge of National's obligations under the applicable National Insurance Policy, and National shall receive the National Plan Consideration that would be otherwise distributable to such holder, its successors, transferees, or assigns on account of its HTA 98 Sub Bond Claim (National).

(e) **Assignment of Redemption Rights:** Notwithstanding any other provision of the HTA Plan, to the extent permitted pursuant to applicable definitive documents and not inconsistent with the rights provided in accordance with the applicable National Insurance Policy, on the HTA Effective Date, HTA shall be deemed to have assigned to National any and all rights to redeem and call the National Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by National as if it were HTA for such purpose. Any amounts due in connection with any such redemption shall be equal to the lesser of the applicable redemption price and the National Acceleration Price.

(f) **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, (a) the solicitation of acceptances and rejections to the HTA Plan by holders of National Insured Bond Claims shall be made by the Oversight Board to National in accordance with the provisions of Section 301(c)(3) of PROMESA, applicable law and governing documents, and (b) the election to choose between the National Commutation Treatment as set forth in Section 26.2(a) hereof and the National Non-Commutation Treatment as set forth in Section 26.2(b) hereof shall be made by the beneficial holders of the applicable National Insured Bonds on the applicable National Bondholder Election Form; provided, however, that the form of the National Non-Commutation Treatment shall be selected by National in accordance with Section 26.2(b) hereof.

(g) **Improper Election:** If a holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) (1) fails to timely and validly elect the National Non-Commutation Treatment pursuant to Section 26.2(b) hereof, or (2) submits an election for less than all of its National Insured Bond Claims in a particular class (in which case, such election shall be void and of no force or effect), such holder shall be deemed to have elected to receive the National Commutation Treatment set forth in Section 26.2(a) hereof with respect to such National Insured Bond Claims, to commute the applicable National Insurance Policies, to release and discharge National's obligations under such National Insurance Policies, and to receive distributions in accordance with Section 26.2(a) hereof. In addition, the National Insured Bonds of a holder of an Allowed HTA 68 Bond Claim (National) or Allowed HTA 98 Senior Bond Claim (National) that does not validly elect to receive the National Non-Commutation Treatment pursuant to clauses (1) or (2) above shall be deemed cancelled on the HTA Effective Date, and National's obligations under the applicable National Insurance Policies shall be fully and finally satisfied, released, and discharged.

26.3 **Treatment of FGIC Insured Bond Claims:** In the event that Classes 8 and 12 vote to accept the HTA Plan in accordance with the provisions of section 1126 of the Bankruptcy Code, and all FGIC Insurance Policies and related agreements relating to FGIC Insured Bonds are in full force and effect, as may have been modified pursuant to the FGIC Rehabilitation Plan, then, notwithstanding any other provision of the HTA Plan, on the HTA Effective Date, holders of FGIC Insured Bond Claims shall receive the following treatments:

59

HTA_CONF 00017208

(a)     **FGIC Insured Bond Claims Treatment**:  Each holder of an Allowed
FGIC Insured Bond Claim (except as provided in Section 26.3(b) hereof) shall (A) deposit, or be
deemed to have deposited, among other things, such holder's Pro Rata Share of the FGIC Plan
Consideration, its proportionate share of the CW/HTA Clawback Recovery, and the FGIC
Insured Bonds and related FGIC Insurance Policies allocable to such holder into the applicable
FGIC Trust, and (B) be deemed to have received its Pro Rata Share of the FGIC Plan
Consideration and FGIC Certificates in consideration therefor.  All rights and remedies under
and in accordance with FGIC Insured Bonds deposited into a FGIC Trust and the applicable
related legislative bond resolutions (other than with respect to the payment obligations of the
Commonwealth or its instrumentalities) and the applicable FGIC Insurance Policies (solely as
they apply and relate to such FGIC Insured Bonds) shall be preserved and remain in full force
and effect solely to the extent necessary to preserve any claims relating to such FGIC Insured
Bonds under the applicable FGIC Insurance Policy.  For the avoidance of doubt, each
distribution of cash made by a FGIC Trust to the holders of interests therein shall automatically
and simultaneously reduce on a dollar-for-dollar basis the outstanding principal amount of the
FGIC Insured Bonds held in such FGIC Trust and shall result in a corresponding reduction in
FGIC's obligations under the applicable FGIC Insurance Policies.

(b)     **FGIC Insured Bond Claims Owned By FGIC:**  With respect to all
Allowed FGIC Insured Bond Claims owned by FGIC, on the HTA Effective Date, and subject to
the rights of the HTA Fiscal Agent, FGIC shall be entitled to receive, in full consideration,
satisfaction, release and exchange of such Allowed FGIC Insured Bond Claims, its Pro Rata
Share of the FGIC Plan Consideration allocable to such Allowed FGIC Insured Bond Claims.

(c)     **Dual-Insured Bonds:**  FGIC Certificates allocable to holders of Dual-
Insured Bonds shall be distributed in accordance with the terms and provisions of Section 26.1
hereof.

(d)     **Acceleration of FGIC Insured Bonds:**  Notwithstanding any other
provision of the HTA Plan or the FGIC Insured Bonds, the payment of the principal of the FGIC
Insured Bonds shall be accelerated as of the HTA Effective Date, and the FGIC Insured Bonds
shall be due and payable from and after the HTA Effective Date at an "acceleration price" of one
hundred percent (100%) of the principal amount thereof, plus interest accrued thereon (or, in the
case of capital appreciation bonds, the compounded amount thereof) to the date of payment;
<u>provided</u>, <u>however</u>, that for the avoidance of doubt, notwithstanding such acceleration, there
shall be no acceleration of any payment required to be made by FGIC under a FGIC Insurance
Policy, unless FGIC elects, in its sole and absolute discretion, to make such payment(s) on an
accelerated basis and FGIC has the express right to accelerate any such payment under the
applicable FGIC Insurance Policy or the related agreements relating to the applicable FGIC
Insured Bonds.

(e)     **Assignment of Redemption Rights:**  Notwithstanding any other
provision of the HTA Plan, to the extent permitted pursuant to applicable definitive insurance
documents and the applicable FGIC Insurance Policy, on the HTA Effective Date, HTA shall be
deemed to have assigned to FGIC any and all rights to redeem and call the FGIC Insured Bonds
and any related rights such that such rights may be exercised directly and exclusively by FGIC as
if it were HTA for such purpose.

HTA_CONF 00017209

(f) **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, the solicitation of acceptances and rejections to the HTA Plan by holders of FGIC Insured Bond Claims shall be made by the Oversight Board to FGIC in accordance with the provisions of Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents.

26.4    **Treatment of Ambac Insured Bond Claims**:  In the event that Classes 2 and 6 vote to accept the HTA Plan in accordance with section 1126 of the Bankruptcy Code, and all Ambac Insurance Policies and related agreements related to Ambac Insured Bonds are in full force and effect, with no outstanding payments defaults by Ambac with respect to such Ambac Insured Bonds up to and including the HTA Effective Date, then, notwithstanding any other provision of the HTA Plan, on the HTA Effective Date, holders of Ambac Insured Bond Claims shall receive the following treatment, as provided in the Ambac Election Notice and to the extent offered by Ambac, in its sole and absolute discretion, at or prior to the commencement of the Disclosure Statement Hearing; provided, however, that, notwithstanding the following, Ambac may make different elections with respect to different CUSIPs and different Ambac Insured Bonds:

(a) **Treatment of HTA 68 Bond Claims (Ambac)**:  On the HTA Effective Date, or as soon as reasonably practicable thereafter, but in no event later than the tenth (10th) day following the HTA Effective Date, each holder of an Allowed HTA 68 Bond Claim (Ambac) shall receive Cash in the amount equal to the Ambac Acceleration Price, in full and final satisfaction, release, and discharge of Ambac's obligations under the applicable Ambac Insurance Policy, and, subject to the rights of the HTA Fiscal Agent, Ambac shall receive the Ambac Plan Consideration that would be otherwise allocable to such holder, its successors, transferees or assigns on account of its HTA 68 Bond Claims (Ambac).  For the avoidance of doubt, the Ambac Acceleration Price will include accrued and unpaid interest as of the date of payment.

(b) **Treatment of HTA 98 Senior Bond Claims (Ambac):**  On the HTA Effective Date, or as soon as reasonably practicable thereafter, but in no event later than the tenth (10th) day following the HTA Effective Date, each holder of an Allowed HTA 98 Senior Bond Claim (Ambac) shall receive one of the following treatments:

(i) **Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment:**  To the extent offered by Ambac, in its sole and absolute discretion, each holder of an Allowed HTA 98 Senior Bond Claim (Ambac) shall have the option to elect on the Ambac Bondholder Election Forms, to receive, on the HTA Effective Date, the Ambac Commutation Consideration, distributable by or at the direction of Ambac, and, if elected, (i) such beneficial holder shall have no other or further rights under or with respect to the applicable Ambac Insurance Policy or any Ambac Trust(s), and (ii) subject to the rights of the HTA Fiscal Agent, Ambac shall receive the Ambac Plan Consideration that otherwise would be allocable or distributable to such holder.  The Ambac Insured HTA 98 Senior Bonds of a holder that validly elects to receive the Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment, or makes an improper election as described in Section 26.4(f) hereof, shall be deemed to have had, on or after the HTA Effective Date, its Ambac Insured HTA 98 Senior Bonds cancelled, and

HTA_CONF 00017210

Ambac's obligations under the applicable Ambac Insurance Policy shall be fully and finally satisfied, released, and discharged.

       (ii)    **Allowed HTA 98 Senior Bond Claim (Ambac) Non-Commutation Treatment:**  In the event that a holder of an Allowed HTA 98 Senior Bond Claim (Ambac) timely and validly elects on the Ambac Bondholder Election Form, to receive the Allowed HTA 98 Senior Bond Claim (Ambac) Non-Commutation Treatment, such holder of an Allowed Ambac Insured Bond Claim shall receive one or more of the following treatments offered by Ambac, in its sole and absolute discretion, and as detailed in the applicable Ambac Bondholder Election Form:

       (1)    **Custodial Trusts:**

       (i)    Such holder of an Allowed HTA 98 Senior Insured Bond Claim (Ambac) shall deposit, or be deemed to have deposited, into the applicable Ambac Trust(s), (A) such holder's Ambac Insured Bonds with respect to which the election has been made and the related Ambac Insurance Policies, (B) such holder's Pro Rata Share of the Ambac Plan Consideration, consisting of (1) Cash, (2) the CW/HTA Clawback Recovery, consisting of the HTA Clawback CVIs and all payments on or collections in respect of such HTA Clawback CVIs, and (3) the New HTA Bonds, and (C) shall be deemed to have received Ambac Certificates in consideration therefor; such holders shall have no recourse to Ambac or the applicable Ambac Insurance Policies other than as provided for under the terms of the Ambac Trust(s).  In the event the interim distribution amounts provided for in decretal paragraph 52 of the Commonwealth Confirmation Order have been distributed directly to holders of Ambac Insured Bonds prior to the HTA Effective Date, thereby reducing the principal amount of such Ambac Insured HTA 98 Senior Bonds, such interim cash distributions need not be deposited into the Ambac Trust(s).

       (ii)    The terms of the Ambac Trust(s) shall be set forth in a trust agreement or trust agreements which shall be filed as part of the Plan Supplement, but shall include the following terms, without limitation: (A) Ambac shall not insure any payments on the Ambac Certificates, shall not be required to pay any default or other interest amounts with respect to the Ambac Insured Bonds, and is only required to pay its obligations under the applicable Ambac Insurance Policy as provided therein and in the agreement HTA 98 Senior governing the Ambac Trust(s); (B) Ambac shall be deemed the sole holder of the Ambac Insured HTA 98 Senior Bonds in the Ambac Trust(s) with respect to voting, amendment, acceleration, events of default, and election and direction of rights and remedies, including, without limitation, in connection with insolvency proceedings during the period that there are no outstanding payment defaults by Ambac under the applicable Ambac Insurance Policies; and (C) the agreement governing the Ambac Trust(s) will provide, among other things, that (1) all rights of a holder of Ambac HTA 98 Senior Insured Bonds held by the Ambac Trust(s) (whether as to amendments and consents, direction of remedies or otherwise) shall be exercisable solely by Ambac and no holder of the Ambac Certificates shall be entitled to any right with respect to the Ambac Insured HTA 98 Senior Bonds (other than as otherwise described in the Ambac Trust(s)), (2) Ambac may, at its option, elect to direct a distribution of a proportional percentage of the underlying Ambac Insured HTA 98 Senior Bonds to individual holders of Ambac Certificates upon the release of such holder's claims on the related Ambac Insurance Policy and against the

HTA_CONF 00017211

Ambac Trust(s); such distribution and release shall not give rise to any other holder of Ambac Certificates asserting a right to receive the same treatment, and (3) Ambac may, at its option, elect to direct the sale of any Ambac Trust Assets.

(1) **Payment of Accelerated Amounts:** Ambac shall receive the Ambac Plan Consideration that would be otherwise allocable to the holders of Allowed HTA 98 Senior Insured Bond Claims (Ambac) and Ambac's obligations to such holders shall be fully and completely discharged upon the payment, on the HTA Effective Date, or as soon as practicable thereafter, but in no event later than the tenth (10th) day following the HTA Effective Date, in Cash, of the Ambac Acceleration Price with respect thereto.

(2) **Alternative Treatment:** The Oversight Board and Ambac reserve the right to formulate an alternative election or implementation option with respect to the Allowed HTA 98 Senior Bond Claim (Ambac) Non Commutation Treatment of the Ambac Insured HTA 98 Senior Bonds that is mutually acceptable to the Oversight Board and Ambac, each in their respective sole discretion; provided, however, that any such alternative election or implementation option must be proposed, in writing, at or prior to the commencement of the Disclosure Statement Hearing.

(c) **Deemed Acceleration of Ambac Insured Bonds:** Notwithstanding any other provision of the HTA Plan, to the extent that there are no outstanding payment defaults by Ambac with respect to its obligations under the applicable Ambac Insurance Policies up to and including the HTA Effective Date, the Ambac Insured Bonds shall be deemed accelerated and immediately due and payable as of the HTA Effective Date. Ambac shall have the right to pay the Ambac Acceleration Price with respect to such bonds at any time, and the holder of the Ambac Insured Bonds and the trustee or fiscal agent (as applicable) shall be required to accept the same in satisfaction of Ambac's obligations under the applicable Ambac Insurance Policy with respect to such bonds, and, upon such payment, Ambac's obligations under the applicable Ambac Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the applicable Ambac Insurance Policy or other documents related to the Ambac Insured Bonds. For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any Ambac Insurance Policy unless Ambac elects, in its sole and absolute discretion to make such payment(s) on an accelerated basis.

(d) **Assignment of Redemption Rights:** Notwithstanding any other provision of the HTA Plan, to the extent permitted pursuant to applicable definitive documents and not inconsistent with the rights provided in accordance with the applicable Ambac Insurance Policy, on the HTA Effective Date, HTA shall be deemed to have assigned to Ambac any and all rights to redeem and call the Ambac Insured Bonds and any related rights such that such rights may be exercised directly and exclusively by Ambac as if it were HTA for such purpose. Any amounts due in connection with any such redemption shall be equal to the lesser of the applicable redemption price and the Ambac Acceleration Price.

(e) **Entitlement to Vote:** Subject to the terms and provisions of the Disclosure Statement Order, (1) the solicitation of acceptances and rejections of the HTA Plan by holders of Ambac Insured Bond Claims shall be made by the Oversight Board to Ambac in

63

HTA_CONF 00017212

accordance with the provisions of Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents, and (2) where applicable and as described in Section 26.4(b) hereof, the election to choose between the Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment as set forth in Section 26.4(b)(i) hereof and the Allowed HTA 98 Senior Bond Claim (Ambac) Non-Commutation Treatment as set forth in Section 26.4(b)(ii) hereof shall be made by the beneficial holders of Ambac Insured HTA 98 Senior Bonds; provided, however, that the form of the Ambac Non-Commutation Treatment shall be selected by Ambac in accordance with the terms and provisions of Section 26.4(b)(ii) hereof.

(f)     **Improper Election:**  If a holder of an Allowed HTA 98 Senior Bond Claim (Ambac) (1) fails to timely and validly elect either the Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment set forth in Section 26.4(b)(i) hereof or the Allowed HTA 98 Senior Bond Claim (Ambac) Non-Commutation Treatment as set forth in Section 26.4(b)(ii) hereof, or (2) submits an election for less than all of its Ambac Insured HTA 98 Senior Bond Claims in a particular class (in which case, such election shall be void and of no force or effect), such holder shall be deemed to have elected to receive with respect to its HTA 98 Senior Bond Claims (Ambac), the Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment set forth in Section 26.4(b)(i) hereof, to commute the applicable Ambac Insurance Policies, and to fully and finally satisfy, release and discharge Ambac's obligations under such Ambac Insurance Policies, and shall receive, with respect to its HTA 68 Bond Claims (Ambac), the Allowed 68 Bond Claim (Ambac) Treatment, if any, as set forth in Section 26.4(a) hereof.  In addition, a holder of an Allowed HTA 98 Senior Bond Claim (Ambac) that does not validly elect to receive either the Allowed HTA 98 Senior Bond Claim (Ambac) Commutation Treatment or the Allowed HTA 98 Senior Bond (Ambac) Non-Commutation Treatment pursuant to clauses (1) or (2) above shall be deemed to have had, on or after the HTA Effective Date, its Ambac Insured HTA 98 Senior Bonds cancelled, and Ambac's obligation under the applicable Ambac Insurance Policy shall be fully and finally satisfied released and discharged.

26.5     **Fiscal Agent Obligations**:  Notwithstanding anything contained in the HTA Plan to the contrary, including, without limitation, the terms and provisions of this Article XXVI, the HTA Fiscal Agent shall have no duties or responsibilities with respect to any HTA Bonds that are deposited into any of the Ambac Trust, the Assured Trust, the FGIC Trust, or the National Trust from and after the HTA Effective Date.

## ARTICLE XXVII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

27.1     **Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases**:  Pursuant to sections 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and subject to the provisions of Sections 27.5 and 27.7 hereof, all Executory Contracts and Unexpired Leases that exist between the Debtor and any Entity, and which have not expired by their own terms on or prior to the HTA Effective Date, shall be deemed rejected by the Debtor as of the HTA Effective Date, except for any Executory Contract and Unexpired Lease (a) that has been assumed and assigned or rejected pursuant to an order of the Title III Court entered prior to the HTA Effective Date, (b) that is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the

64

Plan Supplement, (c) that has been registered with the Office of the Comptroller of Puerto Rico, (d) that has been exempt from registration with the Office of the Comptroller of Puerto Rico pursuant to 2 L.P.R.A. § 97 and regulations promulgated pursuant thereto, (e) has been approved by the Oversight Board or authorized by the Title III Court, unless specifically designated a contract to be rejected in the Plan Supplement, (f) with the United States, or any of its agencies, departments or agents or pursuant to any federal program, or (g) by or between any Commonwealth agencies, departments, municipalities, public corporations or instrumentalities (other than leases to which PBA is a party); provided, however, that the Debtor reserves the right, on or prior to the HTA Effective Date, to amend such schedules to delete any Executory Contract and Unexpired Lease therefrom or add any Executory Contract and Unexpired Lease thereto, in which event such Executory Contract(s) and Unexpired Lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and assigned as of the HTA Effective Date. The Debtor shall serve (y) notice of any Executory Contract and Unexpired Lease to be assumed or assumed and assigned through the operation of this Section 27.1, by including a schedule of such contracts and leases in the Plan Supplement and (z) notice of any Executory Contract and Unexpired Lease to be rejected through the operation of this Section 27.1, by serving a separate notice to the relevant counterparties to such agreements. To the extent there are any amendments to such schedules, the Debtor shall provide notice of any such amendments to the parties to the Executory Contract and Unexpired Lease affected thereby. The listing of a document on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission by the Debtor that such document is an Executory Contract and Unexpired Lease or that the Debtor have any liability thereunder.

27.2 **Approval of Rejection or Assumption of Executory Contracts and Unexpired Leases**: Entry of the HTA Confirmation Order by the Title III Court shall constitute approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection, assumption, or assumption and assignment, as the case may be, of an Executory Contract and an Unexpired Lease pursuant to Section 27.1 of the HTA Plan.

27.3 **Inclusiveness**: Unless otherwise specified on the schedules to the Plan Supplement, each Executory Contract and Unexpired Lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract and Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed on such schedule.

27.4 **Cure of Defaults**: Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to Section 27.1 of the HTA Plan, the Debtor shall, pursuant to the provisions of section 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within at least twenty (20) days prior to the HTA Confirmation Hearing, file with the Title III Court and serve by first class mail on each non- Debtor party to such Executory Contracts and Unexpired Leases to be assumed pursuant to Section 27.1 of the HTA Plan, a notice, which shall list the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned. The parties to such Executory Contracts and Unexpired Leases will have twenty (20) days from the date of service of such notice to file and serve any objection to the cure amounts listed by the Debtor. If

65

there are any objections filed, the Title III Court shall hold a hearing on a date to be set by the Title III Court. Notwithstanding the terms and provisions of Section 27.1 of the HTA Plan, the Debtor shall retain its rights to reject any of its Executory Contracts and Unexpired Leases that are subject to a dispute concerning amounts necessary to cure any defaults through the HTA Effective Date.

27.5 __Insurance Policies__: Subject to the terms and provisions of Section 27.7 hereof, each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the HTA Plan; provided, however, that, except to the extent provided herein, the HTA Confirmation Order and the Definitive Documents, such treatment shall not, and shall not be construed to, discharge or relieve any Monoline with respect to its respective obligations to holders of Claims under policies of insurance and applicable law and governing documents with respect thereto.

27.6 __Rejection Damage Claims__: If the rejection of an Executory Contract and Unexpired Lease by the Debtor hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or its properties or agents, successors, or assigns, including, without limitation, Reorganized HTA, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized HTA, as the case may be, on or before thirty (30) days after the later to occur of (i) the HTA Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

27.7 __Indemnification and Reimbursement Obligations__: For purposes of the HTA Plan, (i) to the extent executory in nature, the obligations of the Debtor, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the HTA Petition Date, shall be deemed assumed as of the HTA Effective Date, and (ii) indemnification obligations of the Debtor arising from conduct of officers and directors during the period from and after the HTA Petition Date, as the case may be, shall be Administrative Expense Claims; provided, however, that, under no circumstances shall the Debtor or Reorganized HTA, as the case may be, be responsible for any indemnification obligation, cost, or expense associated with the gross negligence, intentional fraud or willful misconduct of their respective officers or directors.

27.8 __Nonoccurrence of HTA Effective Date__: In the event that the HTA Effective Date does not occur, the Title III Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

27.9 __Reservation of Rights__: Nothing contained in the HTA Plan or the Plan Supplement shall constitute an admission by the Debtor, Reorganized HTA or any other party that any such contract or lease is in fact an Executory Contract and Unexpired Lease or that the Debtor have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or Reorganized HTA shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

66

HTA_CONF 00017215

27.10 **Collective Bargaining Agreements**: Except as provided in Article XXVII hereof, none of the Debtor's collective bargaining agreements shall be treated as Executory Contracts and none shall be assumed or rejected or otherwise treated pursuant to the HTA Plan, but shall remain in effect subject, in all instances, to Puerto Rico law and Section 2.5 hereof regarding the payment and ongoing treatment of pension and related claims and obligations.

## ARTICLE XXVIII

## PROVISIONS GOVERNING DISTRIBUTIONS

28.1 **Time and Manner of Distribution**: Except as otherwise provided herein, distributions under the HTA Plan shall be made to each holder of an Allowed Claim as follows:

(a) **Distributions to Holders of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), and HTA 68 Bond Claims (National):** Except as otherwise provided herein, on the HTA Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed HTA 68 Bond Claim, an Allowed HTA 68 Bond Claim (Ambac), an Allowed HTA 68 Bond Claim (Assured), or an Allowed HTA 68 Bond Claim (National), and in each case consistent with the terms hereof, such holder's Pro Rata Share, if any, of the HTA 68 Bond Recovery, the HTA Restriction Fee, and HTA Consummation Costs, if applicable.

(b) **Distributions to Holders of HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National):** Except as otherwise provided herein, on the HTA Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed HTA 98 Bond Claim, an Allowed HTA 98 Senior Bond Claim (Ambac), an Allowed HTA 98 Senior Bond Claim (Assured), an Allowed HTA 98 Senior Bond Claim (FGIC), or an Allowed HTA 98 Senior Bond Claim (National), such holder's Pro Rata Share, if any, of (i) HTA 98 Senior Bond Recovery, (ii) the HTA PSA Restriction Fee, and (iii) HTA Consummation Costs, in each case, to the extent applicable.

(c) **Distributions to Holders of HTA 98 Sub Bond Claims, HTA 98 Sub Bond Claims (Assured), HTA 98 Sub Bond Claims (FGIC), and HTA 98 Sub Bond Claims (National):** Except as otherwise provided herein, on the HTA Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed HTA 98 Sub Bond Claim, an Allowed HTA 98 Sub Bond Claim (Assured), an Allowed HTA 98 Sub Bond Claim (FGIC), or an Allowed HTA 98 Sub Bond Claim (National), such holder's Pro Rata Share of the HTA 98 Sub Bond Recovery.

(d) **Distributions with Respect to HTA General Unsecured Claims:** Except as otherwise provided herein, on the HTA Effective Date, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed HTA General Unsecured Claim such holder's Pro Rata Share, if any, of the HTA GUC Recovery.

(e) **Distributions with Respect to Eminent Domain/Inverse Condemnation Claims:** Except as otherwise provided herein, within ten (10) Business Days

67

following the occurrence of a Final Order determining the validity and amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Eminent Domain/Inverse Condemnation Claim, Cash in the amount of such Allowed Claim.

(f) **Distribution of Cash to Holders of Allowed Administrative Expense Claims:** Except as otherwise provided herein, on or as soon as practicable after the later of (i) the HTA Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Administrative Expense Claim, Cash in the amount of such Allowed Claim.

(g) **Distribution of Cash to Holders of Allowed Convenience Claims:** Except as otherwise provided herein, on or as soon as practicable after the later of (i) the HTA Effective Date and (ii) the date on which such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute, or cause to be distributed, to each holder of an Allowed Claim, Cash in the amount of such Allowed Convenience Claim.

28.2 **Timeliness of Payments**: Any payment or distribution to be made pursuant to the HTA Plan shall be deemed to be timely made if made within ten (10) Business Days after the date specified in the HTA Plan. Whenever any distribution to be made under this HTA Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due, including, without limitation, deeming distributions made pursuant to Section 28.1 hereof to have been made on the HTA Effective Date.

28.3 **Distributions by the Disbursing Agent**: Except as otherwise provided herein or in the HTA Confirmation Order, all distributions under the HTA Plan shall be made by the Disbursing Agent. The Disbursing Agent shall be deemed to hold all property to be distributed hereunder in trust for the Entities entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in such property.

28.4 **Manner of Payment under the HTA Plan**: Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made, at the election of the payor, by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payment shall be made to a holder of an Allowed Claim until such time, if ever, as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

28.5 **Delivery of Distributions**: Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in the HTA Confirmation Order or herein, distributions and deliveries to holders of Allowed Claims shall be made through The Depository Trust Company or at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address; provided, however, that initial distributions by the Disbursing Agent on account of Allowed HTA Bond Claims shall be made to, or at the direction of, the HTA Fiscal Agent in accordance with the respective governing documents for such

68

obligations; and, _provided, further,_ that the Disbursing Agent may make distributions of HTA
PSA Restriction Fees, and Consummation Costs in Cash to a party entitled thereto in a manner
mutually agreed upon between such party and the Disbursing Agent. The HTA Fiscal Agent (or
the HTA Fiscal Agent's designee) shall, in turn, deliver the distribution to the applicable holders
in the manner provided for in the applicable governing documents. Regardless of whether such
distributions are made by the HTA Fiscal Agent or the Disbursing Agent at the direction of the
HTA Fiscal Agent, any Charging Lien of the HTA Fiscal Agent shall attach to such distributions
in the same manner as if such distributions were made by or through the HTA Fiscal Agent. The
HTA Fiscal Agent may rely upon the distribution instructions received from the Debtor or its
agents with respect to delivery of distributions in accordance with the terms and provisions of
this Article XXVII, including any contra-CUSIP positions and escrow positions set up by the
debtor or its agents with the Depository Trust Company. The Debtor, its agents and servicers,
the HTA Fiscal Agent, and the Disbursing Agent shall have no obligation to recognize any
transfer of HTA Bond Claims after the Distribution Record Date; _provided, however,_ that the
New HTA Bonds and the HTA Clawback CVIs will be transferable and recognized in
accordance with the terms and conditions of the New HTA Bonds Indenture and the CVI
Indenture, respectively.

28.6    **Cancellation of Notes, Instruments, Certificates, and Other Documents**:
Except (a) as provided in any contract, instrument or other agreement or document entered into
or delivered in connection with the HTA Plan, (b) for purposes of evidencing a right to
distribution under the HTA Plan, or (c) as specifically provided otherwise in the HTA Plan
(including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 27.1
hereof), on the HTA Effective Date, the HTA Bonds and all instruments and documents related
thereto will be deemed automatically cancelled, terminated and of no further force or effect
against the Debtor without any further act or action under any applicable agreement, law,
regulation, order or rule, with the Debtor and the applicable trustee, paying agent or fiscal agent,
as the case may be, having no continuing obligations or duties and responsibilities thereunder
and the obligations of the parties to the Debtor, under the HTA Bonds and all instruments and
documents related thereto shall be discharged; _provided, however,_ that, notwithstanding anything
contained herein to the contrary, the HTA Bonds and such other instruments and documents shall
continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth
in the HTA Plan and to perform such other necessary administrative or other functions with
respect thereto, (ii) to allow holders of Allowed HTA Bond Claims and Allowed Insured HTA
Bond Claims to receive distributions in accordance with the terms and provisions of the HTA
Plan, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and
documents related thereto, to perform necessary functions, including making distributions, in
accordance with the HTA Plan and to have the benefit of all the rights and protections and other
provisions of such instruments and documents, as applicable, and all other related agreements,
(iv) to set forth the terms and conditions applicable to parties to such documents and instruments
other than the Debtor, (v) to allow Assured and National to exercise the redemption or call rights
assigned to Assured and National pursuant to the provisions of Sections 26.1 and 26.2 hereof,
respectively, or (vi) as may be necessary to preserve any claims under the respective insurance
policies and related documents issued by a Monoline and the Oversight Board shall request that
HTA use its reasonable efforts to (1) maintain the existing CUSIP numbers for the Monoline-
insured HTA Bonds, and (2) take such other reasonable steps as may be necessary to preserve

HTA_CONF 00017218

and effectuate such Claims; and, provided, further, that, notwithstanding the foregoing or anything else contained in the HTA Plan to the contrary, the HTA Fiscal Agent shall have no duties or responsibilities with respect to any HTA Bonds that are deposited into any of the Ambac Trust, the Assured Trust, the FGIC Trust, or the National Trust from and after the HTA Effective Date.  Notwithstanding the foregoing, and except as otherwise expressly provided in the HTA Plan, such bonds or bond documents that remain outstanding shall not form the basis for the assertion of any Claim against the Debtor or Reorganized HTA, as the case may be.

28.7    **Undeliverable/Reserved Distributions**:

(a)    **Holding of Undeliverable Distributions by the Disbursing Agent:**  If any distribution to any holder is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified, in writing, of such holder's then-current address.  Subject to the terms and provision of Section 32.7(b) hereof, undeliverable distributions shall remain in the possession of the Disbursing Agent until such time as a distribution becomes deliverable.  All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals thereon of any kind.  Nothing contained in the HTA Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

(b)    **Failure to Claim Undeliverable Distributions:**  If (i) a check is sent, by the Disbursing Agent to a holder in respect of distributions and such check is not negotiated within one hundred twenty (120) days following the date on which such check was issued, or (ii) any other form of distribution to a holder is otherwise undeliverable, the Disbursing Agent (or its duly authorized agent) shall, on or prior to the date that is one hundred eighty (180) days from (i) the HTA Effective Date, with respect to all Allowed Claims as of the HTA Effective Date, and (ii) the date that a distribution is made with respect to any Disputed Claim that becomes an Allowed Claim subsequent to the HTA Effective Date, file a list with the Title III Court setting forth the names of those Entities for which distributions have been made hereunder that have not been negotiated or have been returned as undeliverable as of the date thereof.  Any holder of an Allowed Claim on such list that does not identify itself and assert its rights pursuant to the HTA Plan to receive a distribution within six (6) months from the date so listed shall have its entitlement to such undeliverable distribution discharged and shall be forever barred from asserting any entitlement pursuant to the HTA Plan, against Reorganized HTA, the trustees, or their respective professionals, agents, or property, and any (1) Cash in the possession of the Disbursing Agent or the trustee with respect to existing securities, as the case may be, shall be released to Reorganized HTA for use to discharge operating expenses of Reorganized HTA, and (2) the HTA Bonds in the possession of the Disbursing Agent or trustee with respect to existing securities shall be released to Reorganized HTA for cancellation or deposit into the treasury of Reorganized HTA, as determined by Reorganized HTA in its sole and absolute discretion.

28.8    **Withholding and Reporting Requirements**:  Any party issuing any instrument or making any distribution under the HTA Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state or local tax law or tax authority, and all distributions under the HTA Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the HTA Plan shall have the sole and exclusive responsibility for the

HTA_CONF 00017219

satisfaction and payment of any taxes imposed on such holder by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the HTA Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the HTA Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent may require, as a condition to the receipt of a distribution, that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

28.9    **Time Bar to Cash Payments**:  Checks issued by the Disbursing Agent on account of Allowed Claims shall be null and void if not negotiated within one hundred twenty (120) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (i) the first (1st) anniversary of the HTA Effective Date or (ii) ninety (90) days after the date of issuance of such check, if such check represents a final distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Disbursing Agent shall retain all monies related thereto for the sole purpose of redistribution to holders of Allowed Claims in accordance with the terms and provisions hereof.

28.10    **Distributions After HTA Effective Date**:  Distributions made after the HTA Effective Date to holders of Claims that are not Allowed Claims as of the HTA Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of Article XXVIII of the HTA Plan.

28.11    **Setoffs**:  Except as otherwise provided in the HTA Plan or in the HTA Confirmation Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the HTA Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and Causes of Action of any nature that the Debtor or Reorganized HTA may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized HTA of any such claims, rights, and Causes of Action that the Debtor or Reorganized HTA may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this Section 28.11 shall affect the releases and injunctions provided in Article XLI of the HTA Plan.

28.12    **Allocation of Plan Distributions Between Principal and Interest**:  Unless otherwise specified herein, to the extent that any Allowed Claim entitled to a distribution under

HTA_CONF 00017220

the HTA Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated <u>first</u>, to interest accrued and unpaid as of the date immediately preceding the HTA Petition Date, <u>second</u>, to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts; <u>provided</u>, <u>however</u>, that the Debtor or Reorganized HTA's treatment of any distributions for its tax purposes will not be binding on any Creditor as to the treatment of such distributions for any regulatory, tax or other purposes.

28.13    **Payment of Trustee Fees and Expenses**:  The distributions to be made pursuant to the HTA Plan and the Commonwealth Confirmation Order to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims are intended to be inclusive of any and all of the HTA Fiscal Agent's reasonable fees and expenses due and owing by HTA pursuant to the applicable bond resolutions with respect to amounts discharged pursuant to the HTA Plan (the "<u>HTA Fiscal Agent's Fees and Expenses</u>").  To the extent not deducted in connection with payments made in accordance with the Commonwealth Confirmation Order upon satisfaction of the Distribution Conditions, the HTA Fiscal Agent's Fees and Expenses shall be deducted on a pro rata basis from distributions to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims, such that the cost of such HTA Fiscal Agent's Fees and Expenses is shared equally by all holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims based on the amount of their Claims; <u>provided</u>, <u>however</u>, that, notwithstanding anything in the HTA Plan, the HTA Confirmation Order, or the applicable bond resolutions to the contrary, the HTA Fiscal Agent's Fees and Expenses shall not exceed $2,360,681.02.  In the event amounts reserved or deducted by the HTA Fiscal Agent from the distributions to be made to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims exceed the HTA Fiscal Agent's Fees and Expenses, such excess amounts shall be distributed by, or at the direction of, the HTA Fiscal Agent on a pro rata basis to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on the HTA Effective Date (the "<u>Excess Distribution</u>").  For purposes of this Section 28.13, the applicable Monolines shall constitute the holders of the HTA 68 Bond Claims and the HTA 98 Senior Bond Claims arising from the HTA Bonds which are insured by any such Monoline, if any, in accordance with Section 301(c)(3) of PROMESA, applicable law, and governing insurance and other documents applicable to such HTA Bonds; <u>provided</u>, <u>however</u>, that, notwithstanding the foregoing, (a) with respect to any HTA 98 Senior Bonds owned by FGIC, the HTA Fiscal Agent shall make the Excess Distribution attributable thereto, if any, to FGIC, and (b) with respect to any HTA 98 Senior Bonds insured by FGIC, but not owned by FGIC, the HTA Fiscal Agent shall make the Excess Distribution attributable thereto, if any, to the owners of such HTA 98 Senior Bonds.  Except as otherwise provided in this Section 28.13, the HTA Plan does not, nor shall it be construed to, limit the rights of the HTA Fiscal Agent to payment of such amounts from the distributions to be made hereunder, including, without limitation, the imposition of any Charging Lien.

28.14    **Beneficial Owner**:  For all purposes of the HTA Plan, including, without limitation, for purposes of distributions pursuant to the terms and provisions of this Article XXVIII, the "holder" of a Claim shall mean any Entity who, directly or indirectly, has investment power with respect to any Claim, which includes the power to dispose or to direct the disposition of such Claim; <u>provided</u>, <u>however</u>, that, for purposes of Article XXVIII hereof and section 1126 of the Bankruptcy Code, (a) National shall constitute the "holder" of any National Insured Bond Claims and any National CW/HTA Bond Claims in accordance with Section

HTA_CONF 00017221

301(c)(3) of PROMESA, applicable law and governing insurance and other documents applicable to the National Insured Bond Claims and the National CW/HTA Bond Claims, (b) Assured shall constitute the "holder" of any Assured Insured Bond Claims, any Assured CW/Convention Center Claims, any Assured CW/HTA Bond Claims, and any Assured CW/PRIFA Rum Tax Claims in accordance with Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents applicable to the Assured Insured Bond Claims, the Assured CW/Convention Center Claims, the Assured CW/HTA Bond Claims, and the Assured CW/PRIFA Rum Tax Claims, (c) Ambac shall constitute the "holder" of any Ambac Insured Bond Claims, any Ambac CW/Convention Center Claims, any Ambac CW/HTA Bond Claims, and any Ambac CW/PRIFA Rum Tax Claims in accordance with Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents applicable to the Ambac Insured Bond Claims, the Ambac CW/Convention Center Claims, the Ambac CW/HTA Bond Claims, and the Ambac CW/PRIFA Rum Tax Claims, (d) FGIC shall constitute the "holder" of any FGIC Insured Bond Claims and any FGIC CW/HTA Bond Claims, in accordance with Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents applicable to the FGIC Insured Bond Claims, the FGIC CW/HTA Bond Claims, (e) Syncora shall constitute the "holder" of any HTA Bond Claims and CW/HTA Bond Claims arising from or related to HTA 98 Senior Bonds bearing CUSIP number 745190AY4, and the principal and interest payments of which have been insured by Syncora in accordance with Section 301(c)(3) of PROMESA, applicable law and governing insurance and other documents applicable to such Claims; provided, however, that, solely to the extent permitted by governing insurance and other documents, on the HTA Effective Date, Syncora shall pay the beneficial owners of such HTA 98 Senior Bonds the Syncora Acceleration Price; and, provided, further, that Syncora shall indemnify and hold the Oversight Board, the Commonwealth, HTA, and Reorganized HTA harmless from any and all claims, liabilities, damages, and causes of action arising from or related to the acceleration of such HTA 98 Senior Bonds and the payment of the Syncora Acceleration Price, and (f) the "holder" of any other Insured HTA Bond Claims shall be determined in accordance with Section 301(c)(3) of PROMESA and any law or governing documents applicable to such Insured HTA Bond Claims.

28.15 **Value of Distributions**:  For purposes of calculating the value of distributions made to holders of Allowed Claims, (a) Cash shall be valued in the amount distributed and (b) the New HTA Bonds shall be valued at the original principal amount thereof.

28.16 **Disputed Funds Stipulation**:  In the event that the Distribution Conditions are not satisfied prior to the HTA Effective Date, on the HTA Effective Date, the Distribution Conditions shall be deemed satisfied and payments and distributions to be made in connection therewith pursuant to the terms and provisions of the Commonwealth Confirmation Order and the HTA/CCDA Plan Support Agreement shall be made on the HTA Effective Date to holders of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National), including, without limitation, the distribution of monies in accordance with the Disputed Funds Stipulation, subject to the rights of The Bank of New York Mellon, as fiscal agent, to assert and apply, on a pro rata basis, any and all of its rights with respect thereto.

HTA_CONF 00017222

# ARTICLE XXIX

## PROSECUTION AND EXTINGUISHMENT OF CLAIMS HELD BY THE DEBTOR

29.1     **Prosecution of Claims**:  Except as settled and released herein, from and after the HTA Effective Date, the Avoidance Actions Trustee shall have the exclusive right and power to (a) litigate any and all of the Avoidance Actions and (b) compromise and settle such Avoidance Actions, upon approval of the Title III Court.  The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be included in the HTA GUC Recovery and be distributed to holders of Allowed HTA General Unsecured Claims.

# ARTICLE XXX

## ACCEPTANCE OR REJECTION OF THE HTA PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

30.1     **Impaired Classes to Vote**:  Each holder of a Claim, as of the Voting Record Date or at the time of tender into ATOP, as the case may be, in an impaired Class not otherwise deemed to have rejected or accepted the HTA Plan in accordance with Article XXXIII of the HTA Plan shall be entitled to vote separately to accept or reject the HTA Plan.

30.2     **Acceptance by Class of Creditors**:  An impaired Class of holders of Claims shall have accepted the HTA Plan if the HTA Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the HTA Plan.

30.3     **Cramdown**:  In the event that any impaired Class of Claims shall fail to accept, or be deemed to reject, the HTA Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to (i) request that the Bankruptcy Court confirm the HTA Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) subject to the consent of the HTA/CCDA PSA Creditors, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, amend the HTA Plan.

# ARTICLE XXXI

## RIGHTS AND POWERS OF DISBURSING AGENT

31.1     **Exculpation**:  From and after the HTA Effective Date, the Disbursing Agent shall be exculpated by all Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the HTA Plan or any order of the Title III Court entered pursuant to or in furtherance of the HTA Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct of such Disbursing Agent.  No holder of a Claim or other party in interest shall have or pursue any claim or cause of action against the Disbursing Agent for making payments in accordance with the HTA Plan or for implementing the provisions of the HTA Plan,

HTA_CONF 00017223

except for claims or causes of action arising from the gross negligence or willful misconduct of the Disbursing Agent.

31.2    **Powers of the Disbursing Agent**:  Except as may be provided otherwise hereunder, the Disbursing Agent shall be empowered to (a) take all steps and execute all instruments and documents necessary to effectuate the HTA Plan, (b) make distributions contemplated by the HTA Plan, (c) comply with the HTA Plan and the obligations thereunder, and (d) exercise such other powers as may be vested in the Disbursing Agent pursuant to order of the Title III Court, pursuant to the HTA Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the HTA Plan.

31.3    **Fees and Expenses Incurred From and After the HTA Effective Date**:  Except as otherwise ordered by the Title III Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent from and after the HTA Effective Date and any reasonable compensation and expense reimbursement claims, including, without limitation, reasonable fees and expenses of counsel, incurred by the Disbursing Agent, shall be paid in Cash without further order of the Title III Court; provided, however, that the Disbursing Agent shall not be entitled to reimbursement or indemnification by Reorganized HTA related to claims or causes of action arising from the gross negligence or willful misconduct of the Disbursing Agent.

## ARTICLE XXXII

## PROCEDURES FOR TREATMENT OF DISPUTED CLAIMS
## AND CLAIMS SUBJECT TO ACR PROCEDURES

32.1    **Objections to Claims; Prosecution of Disputed Claims**:

(a)    Except with respect to Allowed Claims, and subject to the terms and conditions of the ADR Procedures and the ADR Order, Reorganized HTA, by and through the Oversight Board, and in consultation with AAFAF, shall object to, and shall assume any pending objection filed by the Debtor to, the allowance of Claims filed with the Title III Court with respect to which it disputes liability, priority or amount, including, without limitation, objections to Claims that have been assigned and the assertion of the doctrine of equitable subordination with respect thereto.  All objections, affirmative defenses and counterclaims shall be litigated to Final Order; provided, however, that Reorganized HTA, by and through the Oversight Board, and in consultation with AAFAF, shall have the authority to file, settle, compromise or withdraw any objections to Claims, without approval of the Title III Court.  Unless otherwise ordered by the Title III Court, to the extent not already objected to by the Debtor, Reorganized HTA shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than one hundred eighty (180) days following the HTA Effective Date or such later date as may be approved by the Title III Court.  Following the making of distributions to holders of Allowed HTA Bond Claims in accordance with the provisions hereof, any HTA Bond Claim filed by any Entity, for amounts due under existing securities, shall be deemed satisfied and expunged and the Oversight Board shall instruct Kroll Restructuring Administration LLC (formerly Prime Clerk LLC), its court-appointed representative, to remove such HTA Bond Claims from the claims registry maintained for the benefit of the Title III Court; provided, however, that, in the event

75

that an order reversing or vacating the HTA Confirmation Order with respect to HTA Bond Claims becomes a Final Order, such HTA Bond Claims shall be reinstated on the claims registry.

(b) The two (2) Creditors' Committee appointees to the Avoidance Actions Trust Board shall (i) receive monthly updates to the claims reconciliation process with respect to HTA General Unsecured Claims, which process shall continue to be administered by the Oversight Board, with the assistance of AAFAF, (ii) have the right to (A) review the claims objections and reconciliation process, including the ADR Procedures, as it relates to HTA General Unsecured Claims and Convenience Claims, regardless of the size of the asserted Claim amount, (B) ensure compliance with the exclusions from HTA General Unsecured Claims as provided in the HTA Plan, and (C) in the event that such appointees disagree with any settlement of an HTA General Unsecured Claim, for an allowed amount in excess of Five Hundred Thousand Dollars ($500,000.00), such appointees may seek relief from the Title III Court to cause (upon a showing that such settlement is not in the best interest of HTA and its creditors) the Oversight Board or AAFAF, as the case may be, to obtain approval of the Title III Court for any such settlement in accordance with the standard for approval under Bankruptcy Rule 9019. Such appointees and their advisors shall not be entitled to compensation in excess to that provided pursuant to the Commonwealth Plan and the Commonwealth Confirmation Order.

(c) From and after the HTA Effective Date, all Late-Filed Claims shall be deemed denied, with prejudice, and the Oversight Board shall instruct Kroll Restructuring Administration LLC (formerly Prime Clerk LLC), its court-appointed representative, to remove such Late-Filed Claims from the claims registry maintained for the benefit of the Title III Court and the Oversight Board shall cause a notice with respect thereto to be served upon the holder of such Late-Filed Claim.

32.2 **Estimation of Claims**: Except with respect to Allowed Claims, on and after the HTA Effective Date, and unless otherwise limited by an order of the Title III Court, including, without limitation, the ACR Order, and the ADR Order, Reorganized HTA, by and through the Oversight Board, may at any time request the Title III Court to estimate for final distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to or sought to estimate such Claim, and the Title III Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Title III Court, in the event that the Title III Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Title III Court; provided, however, that, if the estimate constitutes the maximum limitation on such Claim, Reorganized HTA, by and through the Oversight Board, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, provided, further, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

32.3 **Payments and Distributions on Disputed Claims**:

76

(a) **Disputed Claims Holdback:** From and after the HTA Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized HTA shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized HTA; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above. To the extent that Reorganized HTA retains any New HTA Bonds on behalf of Disputed Claims holders, until such New HTA Bonds are distributed, Reorganized HTA shall exercise voting or consent rights with respect to such obligations.

(b) **Allowance of Disputed Claims:** At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Disbursing Agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the HTA Plan, together with any earnings that have accrued thereon (net of any expenses, including any taxes, relating thereto), but only to the extent that such earnings are attributable to the amount of the Allowed Claim. Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Title III Court allowing such Disputed Claim becomes a Final Order, but in no event more than ninety (90) days thereafter.

32.4 **Authority to Amend Lists of Creditors**: Except with respect to HTA Bond Claims, and subject to the limitations in Section 32.1(b) hereof, the Debtor shall have the authority to amend the List of Creditors with respect to any Claim and to make distributions based on such amended List of Creditors without approval of the Title III Court. If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, the Debtor will provide the holder of such Claim with notice of such amendment and such holder will have twenty (20) days to file an objection to such amendment with the Title III Court. If no such objection is filed, the Disbursing Agent may proceed with distributions based on such amended List of Creditors without approval of the Title III Court.

32.5 **Non-Accrual of Interest**: Unless otherwise specifically provided for herein or by order of the Title III Court, post-petition interest shall not accrue or be paid on Claims, Allowed or otherwise, and no holder of a Claim, Allowed or otherwise, shall be entitled to interest accruing on or after the HTA Petition Date, on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any disputed claim with respect to the period from the HTA Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

32.6 **Disallowance of Claims**: All Claims of any Entity from which property is sought by the Debtor under sections 550, or 553 of the Bankruptcy Code or that the Debtor alleges is a transferee of a transfer that is avoidable under sections 544, 545, 547, 548, or 549 of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor, on the

HTA_CONF 00017226

other hand, agree or the Title III Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

32.7    **Claims Subject to ACR Procedures**:  To the extent not already transferred as of the HTA Effective Date in accordance with the terms and conditions of the ACR Order, the Debtor or Reorganized HTA, as the case may be, shall transfer Claims in accordance with the terms and conditions of the ACR Order, and, upon transfer, all such Claims shall (a) be reconciled pursuant to the applicable regulatory and administrative procedures of the Debtor and Reorganized HTA, as the case may be, (b) be paid in full in the ordinary course of business, and (c) except as otherwise provided in the HTA Plan, shall not be included in HTA General Unsecured Claims to be satisfied from the HTA GUC Recovery or Convenience Claims. Notwithstanding the foregoing, (y) the Oversight Board may remove a claim from the ACR process in the event that it was improperly transferred into the ACR process because it did not qualify in accordance with the terms and provisions of the ACR Order, including, without limitation, bond claims or "child" claims relating to a "parent" class action proofs of claim (in which case, such claims may be transferred into the appropriate Class under the HTA Plan) and (z) claims that are eligible to be transferred to or administered through the ACR process and for which no proof of claim was required to be filed (whether or not a proof of claim was filed) shall not be transferred into Class 16 or Class 19 under the HTA Plan and shall be administered through the ACR process, in accordance with the terms of the ACR Order and subsections (a) and (b) of this Section 32.7.

## ARTICLE XXXIII

### IDENTIFICATION OF CLAIMS IMPAIRED BY THE HTA PLAN AND NOT IMPAIRED BY THE HTA PLAN

33.1    **Impaired Classes**:  The Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, and 20 are impaired and receiving distributions pursuant to the HTA Plan, and are therefore entitled to vote to accept or reject the HTA Plan; provided, however, that, based upon the elections made on the Ballot/Election Form, Class 19 is deemed to have accepted the HTA Plan.  The Claims in Class 18 are impaired and not receiving a distribution pursuant to the HTA Plan and, therefore, Class 18 is deemed to have rejected the HTA Plan.

33.2    **Unimpaired HTA Classes**:  Claims in Class 14 and 19 are unimpaired pursuant to the HTA Plan, are deemed to have accepted the HTA Plan and are not entitled to vote to accept or reject the HTA Plan.

HTA_CONF 00017227

# ARTICLE XXXIV

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE HTA PLAN

34.1 **Conditions Precedent to Confirmation of the HTA Plan**: Confirmation of the HTA Plan is subject to satisfaction of the following conditions precedent:

(a) **Fiscal Plan Certification:** The Oversight Board shall have certified an HTA Fiscal Plan consistent with the HTA Plan and shall have certified the submission of the HTA Plan, and any modifications to the HTA Plan through the HTA Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.

(b) **Required Orders:** The Clerk of the Title III Court shall have entered an order or orders (including, without limitation, the Disclosure Statement Order and the HTA Confirmation Order) providing for the following:

(i) Approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(ii) Authorizing the solicitation of votes and elections with respect to the HTA Plan;

(iii) Determining that all votes and elections or deemed elections are binding and have been properly tabulated;

(iv) Confirming and giving effect to the terms and provisions of the HTA Plan, including the releases set forth in Article XLI of the HTA Plan;

(v) Determining that the compromises and settlements set forth in the HTA Plan are appropriate, reasonable and approved and authorizing the transactions contemplated therein;

(vi) Determining that all applicable tests, standards and burdens in connection with the HTA Plan have been duly satisfied and met by the Oversight Board, the Debtor and the HTA Plan;

(vii) Approving the documents in the Plan Supplement, other than the Reorganized HTA By-Laws, and determining that such documents are valid and binding on parties with respect thereto; and

(viii) Authorizing Reorganized HTA to execute, enter into, and deliver the documents in the Plan Supplement, and to execute, implement and take all actions otherwise necessary or appropriate to give effect to the transactions contemplated by the HTA Plan, and the documents in the Plan Supplement.

(c) **Form of Orders:** The HTA Confirmation Order and the HTA Plan are each in form and substance reasonably acceptable to the Oversight Board, AAFAF, the Debtor,

HTA_CONF 00017228

the HTA/CCDA PSA Creditors and, solely with respect to provisions affecting Classes 16 and 19, the Creditors' Committee.

(d)  **HTA Confirmation Order:**  The HTA Confirmation Order includes (i) determinations that all of the settlements and compromises contained in the HTA Plan satisfy applicable standards under sections 365, 1123(b)(3) and 1129 of the Bankruptcy Code and Bankruptcy Rule 9019, to the extent applicable, (ii) the releases, exculpations and injunctions set forth in Article XLI of the HTA Plan and (iii) the applicable provisions set forth in Section 34.1(b) hereof.

34.2  **Waiver of Conditions Precedent to Confirmation**:  Subject to the terms and provisions of the HTA/CCDA Plan Support Agreement and the HTA Committee Agreement, and to the extent practicable and legally permissible, each of the conditions precedent in Section 34.1 hereof may be waived, in whole or in part, by the Oversight Board, subject to the prior written consent of the Debtor, and the Initial HTA/CCDA PSA Creditors, and solely with respect to the provisions affecting Classes 16 and 19, the Creditors' Committee, which consent shall not be unreasonably withheld.  Any such waiver of a condition precedent may be effected at any time by filing a notice thereof with the Title III Court executed by the Oversight Board.

# ARTICLE XXXV

# CONDITIONS PRECEDENT TO THE HTA EFFECTIVE DATE

35.1  **Conditions Precedent to the HTA Effective Date**:  The occurrence of the HTA Effective Date and the substantial consummation of the HTA Plan are subject to satisfaction of the following conditions precedent:

(a)  **Fiscal Plan Certification:**  The Oversight Board shall have determined that the HTA Plan is consistent with the Debtor's Fiscal Plan and shall have certified the submission of the HTA Plan, and any modifications to the HTA Plan through the HTA Confirmation Date, in accordance with Sections 104(j) and 313 of PROMESA.  The HTA Fiscal Plan certified as of the HTA Effective Date shall include provisions for the payment of principal and interest with respect to the New HTA Bonds and the Subordinated Indebtedness, including, without limitation, sinking fund payments.

(b)  **Entry of the HTA Confirmation Order:**  The Clerk of the Title III Court shall have entered the HTA Confirmation Order in accordance with Section 314 of PROMESA and section 1129 of the Bankruptcy Code, made applicable to the Title III Case pursuant to Section 301 of PROMESA, which shall be in form and substance reasonably acceptable to the Oversight Board, the Initial HTA/CCDA PSA Creditors, and the Creditors' Committee and the HTA Confirmation Order shall provide for the following:

(i)  Authorize the Debtor and Reorganized HTA, as the case may be, to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the HTA Plan;

80

(ii)     Decree that the provisions of the HTA Confirmation Order and the HTA Plan are nonseverable and mutually dependent;

(iii)     Authorize the Debtor and Reorganized HTA, as the case may be, to (1) make all distributions and issuances as required under the HTA Plan and (2) enter into any agreements and transactions, as set forth in the Plan Supplement;

(iv)     Authorize the implementation of the HTA Plan in accordance with its terms;

(v)     Determine the New HTA Bonds Indenture, the New HTA Bonds, the Subordinated Indebtedness, and the covenants by Reorganized HTA, including, without limitation, the Toll Rate Covenant, for the benefit of the holders of the New HTA Bonds and the Subordinated Indebtedness, as provided in the New HTA Bonds Indenture, or the HTA Confirmation Order, as applicable, constitute valid, binding, legal and enforceable obligations of Reorganized HTA under Puerto Rico, New York and federal law;

(vi)     Determine that the New HTA Bonds Indenture, upon issuance of the Secured Obligations, including, without limitation, the Subordinated Indebtedness issued as a refinancing of the Commonwealth Loan, grants a first priority lien on and first priority security interest on all of Reorganized HTA's legal and equitable right, title and interest in the Trust Estate to the Secured Obligations, subject only to (1) the terms and provisions of the New HTA Bonds Indenture establishing the Authority Expense Fund and the Arbitrage Rebate Fund, and (2) the senior lien and senior security interest granted in the Trust Estate for the benefit of holders of New HTA Bonds, which first-priority lien and first-priority security interest shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted in the Trust Estate for the benefit of holders of Subordinated Indebtedness, in each case, as permitted by the HTA Enabling Act, and shall be deemed automatically perfected as of the HTA Effective Date and shall in any event be valid, binding, perfected, and enforceable against all Entities having claims of any kind in tort, contract or otherwise against Reorganized HTA or its assets, irrespective of whether such Entities have notice of such lien or security interest, without any further act or agreement by any Entity, and will be "closed" and shall remain in full force and effect until the Secured Obligations have been paid or satisfied in full in accordance with their terms;

(vii)     Determine the HTA Confirmation Order is full, final, complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (1) the Debtor, (2) Reorganized HTA, (3) the Commonwealth and its instrumentalities, (4) each Entity asserting claims or other rights against HTA, the Commonwealth, or any other Commonwealth instrumentality, including each holder of a bond claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by the Debtor or any Commonwealth agency or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such Entity are impaired pursuant to the HTA Plan and, if impaired, whether or not such Entity accepted the HTA Plan, (5) any other Entity, and (6) each of the

HTA_CONF 00017230

foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representatives, attorneys, beneficiaries or guardians;

(viii)    Provide that the HTA Fiscal Plan, certified as of the HTA Effective Date, and any post-HTA Effective Date HTA Fiscal Plan include provisions for the payment in each FY of principal and interest payable on the New HTA Bonds and the Subordinated Indebtedness, including, without limitation, any sinking fund payments which may become due in such FY;

(ix)    Provide that the automatic stay in any future insolvency proceeding commenced on behalf of HTA (whether under Title III of PROMESA or otherwise) shall be deemed waived with respect to Net Receipts held in the funds and accounts established in accordance with the New HTA Bonds Indenture (other than the Net Receipts on deposit in the Arbitrage Rebate Fund established pursuant to the New HTA Bonds Indenture;

(x)    Determine that, consistent with the HTA Fiscal Plan and corresponding budget, the discharge of debt to occur as of the HTA Effective Date is necessary for the Oversight Board to certify that expenditures do not exceed revenues for HTA as determined in accordance with modified accrual accounting standards;

(xi)    Determine that the HTA Plan is consistent with the Debtor's Fiscal Plans and satisfies Section 314(b)(7) of PROMESA;

(xii)    Provide that no party, Person or Entity shall enact, adopt, or implement any law, rule, regulation, or policy that impedes, financially or otherwise, consummation and implementation of the transactions contemplated by the HTA Plan;

(xiii)    Provide that the Government Parties, including, without limitation, HTA and Reorganized HTA, individually and jointly, as appropriate, shall take any and all actions necessary to consummate the transactions contemplated by the HTA Plan; and

(xiv)    Provide that, in consideration for the structuring of payments to be made to holders of CW/HTA Claims, CW/Convention Center Claims, CW/PRIFA Rum Tax Claims and CW/MBA Claims, and in accordance with the terms and provisions of Section 6.1(d) of the HTA/CCDA Plan Support Agreement and the Commonwealth Confirmation Order, the Commonwealth shall make payments on the HTA Effective Date to Assured and National in the amounts of Thirty-Nine Million Three Hundred Thousand Dollars ($39,300,000.00) and Nineteen Million Three Hundred Thousand Dollars ($19,300,000.00), respectively.

(c)    **No Injunction:**  The HTA Confirmation Order shall not be stayed in any respect.

(d)    **Authorizations:**  All (1) authorizations, consents, regulatory approvals, rulings, or documents, if any, that are necessary to implement and effectuate the HTA Plan, have been obtained or enacted or entered and not revoked or reversed, and (2) except to the extent expressly provided herein and not inconsistent with any other provision of the HTA Plan, unless otherwise permitted or required by PROMESA or similar authority, completion of any other required legislative or other governmental action required to consummate the HTA Plan.

HTA_CONF 00017231

(e)     **Execution of Documents; Other Actions:**  All actions and all contracts, instruments, settlements, releases and other agreements or documents, including Definitive Documents, necessary to implement the terms and provisions of the HTA Plan are effected or executed and delivered, as applicable, and are in full force and effect.

(f)     **Opinions:**  Usual and customary legal opinions for issuances of the type similar to the New HTA Bonds by outside counsel to the Debtor covering matters not expressly addressed in the HTA Confirmation Order, in form and substance reasonably acceptable to the Initial HTA/CCDA PSA Creditors, have been delivered to the applicable trustee or other parties regarding the Definitive Documents and the HTA Plan.

(g)     **Lift Stay Motions and Clawback Actions:**  The clawback funds at issue in the Lift Stay Motions and the Clawback Actions have been determined by the Title III Court to constitute property of the Commonwealth.

(h)     **Commonwealth Effective Date:**  The Commonwealth Effective Date shall have occurred.

(i)     **HTA Clawback CVI:**  In accordance with the decretal paragraph 34(f) of the Commonwealth Confirmation Order, the HTA Clawback CVI shall have been distributed to the applicable Creditors.

(j)     **HTA Interim Distribution:**  In accordance with decretal paragraph 52 of the Commonwealth Confirmation Order, including, without limitation, the satisfaction of conditions set forth therein, HTA shall have made interim distributions to holders of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC) and HTA 98 Senior Bond Claims (National) in the amounts of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00), respectively, in Cash; provided, however, that, for purposes of this Section 34.1(j), the applicable Monolines shall constitute the holders of the HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), and HTA 98 Senior Bond Claims (National) arising from the HTA Bonds insured or owned by any such Monoline, if any, in accordance with Section 301(c)(3) of PROMESA; and, provided, further, that, notwithstanding the foregoing, (i) with respect to any HTA 98 Senior Bond Claims (FGIC) arising from HTA 98 Senior Bonds (or related payment rights) owned by FGIC, HTA shall have made such distribution to FGIC, and (ii) with respect to any HTA 98 Senior Bond Claims (FGIC) arising from HTA 98 Senior Bonds insured, but not owned, by FGIC, HTA shall have made such interim distribution to the beneficial owners of such HTA 98 Senior Bonds.

35.2     **Waiver of Conditions Precedent**:  Subject to the provisions of the HTA/CCDA Plan Support Agreement, the Oversight Board may waive any of the conditions to the HTA Effective Date set forth in Section 35.1 hereof at any time without any notice to any other parties in interest, other than the HTA/CCDA PSA Creditors, the Creditors' Committee and the Government Parties, and without any further notice to or action, order, or approval of the Title

HTA_CONF 00017232

III Court, and without any formal action other than proceeding to confirm and consummate the HTA Plan; provided, however, that, subject to the terms and provisions of the HTA Committee Agreement, each of the conditions precedent in Section 35.1 hereof with respect to the provisions affecting Classes 16 and 19, may be waived, in whole or in part, by the Oversight Board subject to the prior written consent of the Creditors' Committee, which consent shall not be unreasonably withheld.

35.3    **Effect of Non-Occurrence of Conditions to HTA Effective Date**:  If prior to the HTA Effective Date, the HTA Confirmation Order is vacated pursuant to a Final Order, then, except as provided in a Final Order vacating the HTA Confirmation Order, the HTA Plan will be null and void in all respects, and nothing contained in the HTA Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims, or Causes of Action; (b) prejudice in any manner the rights of the Debtor, the Oversight Board, the Creditors' Committee, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor, the Oversight Board, the Creditor's Committee, or any other Entity.

## ARTICLE XXXVI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE HTA PLAN

36.1    **Modification of HTA Plan**:  Subject to (a) Sections 104(j) and 313 of PROMESA and sections 942 and 1127(d) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and (b) the terms and provisions of the HTA/CCDA Plan Support Agreement and the HTA Committee Agreement, the Oversight Board may alter, amend or modify the HTA Plan or the Exhibits at any time prior to or after the HTA Confirmation Date but prior to the HTA Effective Date.  A holder of a Claim that has accepted the HTA Plan shall be deemed to have accepted the HTA Plan as altered, amended or modified so long as the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

36.2    **Revocation or Withdrawal**:

(a)    Subject to the terms and provisions of the HTA/CCDA Plan Support Agreement and the HTA Committee Agreement, the HTA Plan may be revoked or withdrawn prior to the HTA Confirmation Date by the Oversight Board.

(b)    If the HTA Plan is revoked or withdrawn prior to the HTA Confirmation Date, or if the HTA Plan does not become effective for any reason whatsoever, then the HTA Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claim by the Debtor or any other Entity, or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceeding involving the Debtor.

36.3    **Amendment of Plan Documents**:  From and after the HTA Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the HTA Plan, and any document attached to any of the

HTA_CONF 00017233

foregoing, shall be as provided in such Plan Supplement, Exhibit to the Plan Supplement, or Exhibit to the HTA Plan and their respective attachments, as the case may be.

36.4 **No Admission of Liability:**

(a) The submission of this HTA Plan is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Entity with respect to any of the matters addressed in this HTA Plan.

(b) None of this HTA Plan (including, without limitation, the Exhibits hereto), or any settlement entered, act performed or document executed in connection with this HTA Plan: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim, or any allegation made in any of the Related Actions or of any wrongdoing or liability of any Entity; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Entity in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as an admission or evidence against Reorganized HTA, the Debtor, or any other Entity with respect to the validity of any Claim. None of this HTA Plan or any settlement entered, act performed or document executed in connection with this HTA Plan shall be admissible in any proceeding for any purposes, except to carry out the terms of this HTA Plan or enforce any such agreement, and except that, once confirmed, any Entity may file this HTA Plan in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

## ARTICLE XXXVII

## CORPORATE GOVERNANCE AND MANAGEMENT OF REORGANIZED HTA

37.1 **Corporate Action**: On the HTA Effective Date, all matters provided for under the HTA Plan that would otherwise require approval of the directors of the Debtor or Reorganized HTA, including, without limitation, to the extent applicable, the authorization to issue or cause to be issued the New HTA Bonds, the authorization to enter into the Definitive Documents, the adoption of Reorganized HTA By-Laws, and the election or appointment, as the case may be, of directors and officers of Reorganized HTA pursuant to the HTA Plan, as applicable, shall be authorized and approved in all respects, in each case, in accordance with the New HTA Bonds Indenture, and the new corporate governance documents, as applicable, and without further action by any Entity under any other applicable law, regulation, order, or rule. Other matters provided under the HTA Plan involving the corporate structure of Reorganized HTA or corporate action by Reorganized HTA, as applicable, shall be deemed to have occurred, be authorized, and shall be in effect in accordance with the New HTA Bonds Indenture, and the new corporate governance documents, as applicable, and without requiring further action by any Entity under any other applicable law, regulation, order, or rule. Without limiting the foregoing, from and after the HTA Confirmation Date, the Debtor and Reorganized HTA shall take any and

85

HTA_CONF 00017234

all actions deemed appropriate in order to consummate the transactions contemplated herein in accordance with the New HTA Bonds Indenture, and the new corporate governance documents, as applicable.

37.2 **Amendment of By-Laws:** The by-laws of Reorganized HTA shall be amended as of the HTA Effective Date to provide substantially as set forth in Reorganized HTA By-Laws.

37.3 **Directors of Reorganized HTA:** On the HTA Effective Date, and pursuant to the terms and provisions of Section 36.2 hereof, the Reorganized HTA By-Laws shall provide that the board of directors of Reorganized HTA shall be appointed consistent with the terms and provisions of the HTA Enabling Act. The initial directors shall be disclosed prior to the HTA Confirmation Hearing. In the event that, during the period from the HTA Confirmation Hearing up to and including the HTA Effective Date, circumstances require the substitution of one (1) or more persons selected to serve on the board of directors of Reorganized HTA, the Governor of the Commonwealth, upon consultation with the Oversight Board, shall choose a substitute consistent with the independence and qualification standards set forth above and the Debtor shall file a notice thereof with the Title III Court and, for purposes of section 1129 of the Bankruptcy Code, any such replacement person, designated in accordance with the requirements of the immediately preceding sentence, shall be deemed to have been selected and disclosed prior to the HTA Confirmation Hearing. The Reorganized HTA amended corporate governance documents shall provide that all board members shall owe a fiduciary duty to Reorganized HTA as consistent with Puerto Rico law and its Constitution.

37.4 **Officers of Reorganized HTA**: To the extent applicable, the board of directors of Reorganized HTA shall elect officers of Reorganized HTA as of or after the HTA Effective Date.

## ARTICLE XXXVIII

## PROVISIONS REGARDING OVERSIGHT BOARD AND COMPLIANCE WITH PROMESA

38.1 **Effect of Confirmation**: Nothing in this HTA Plan or the HTA Confirmation Order shall discharge, substitute, alter or otherwise modify the powers and responsibilities of the Oversight Board pursuant to PROMESA or the obligations of Reorganized HTA under PROMESA. From and after the HTA Effective Date, Reorganized HTA shall continue to have all of their obligations pursuant to PROMESA, including, without limitation, the terms and conditions of Titles I and II thereof.

38.2 **Ongoing Role of the Oversight Board**: Nothing in the HTA Plan or the HTA Confirmation Order shall discharge any or all obligations of the Debtor under PROMESA and, from and after the HTA Effective Date, the Oversight Board's powers and responsibilities under PROMESA shall continue, and the Debtor's duties and obligations shall continue and be unaffected by the HTA Plan and the consummation thereof.

38.3 **Preemption of Laws**: As of the HTA Effective Date, and to the extent not previously preempted pursuant to an order of the Title III Court, provisions of Commonwealth

HTA_CONF 00017235

laws that affect the Debtor or Reorganized HTA and are inconsistent with PROMESA shall be preempted for the reasons, and to the extent, set forth in Exhibit "A" to the Findings of Fact and Conclusions of Law, such preempted laws, rules and regulations include, without limitation, (a) pursuant to Section 4 of PROMESA, all laws, rules, and regulations (or such portions thereof) of the Commonwealth of Puerto Rico to the extent they give rise to obligations of the Debtor discharged by the HTA Plan and the HTA Confirmation Order pursuant to PROMESA, and such discharge shall prevail over any general or specific provisions of territory laws, rules, and regulations, and (b) laws enacted prior to June 30, 2016, to the extent they provide for transfers or other appropriations after the enactment of PROMESA, including transfers from the Debtor or Reorganized HTA to the Commonwealth or any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, are preempted to the extent inconsistent with the HTA Plan's discharge of the Debtor's obligations and all such laws shall not be enforceable to the extent they are inconsistent with the HTA Plan's discharge of the Debtor's obligations or any of the transactions contemplated by the HTA Plan. Without in any way limiting the foregoing, (y) the Commonwealth laws preempted by PROMESA that affect the Debtor include, without limitation, those listed on Exhibit "F" hereto for the reasons and to the extent set forth in Exhibit "A" to the Findings of Fact and Conclusions of Law, and (z) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit "F" hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the HTA Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal. For the avoidance of doubt, the non-inclusion of a payment obligation arising from a valid law in a certified Fiscal Plan or HTA budget is not a basis for disallowance of such obligation to the extent the claim arising therefrom otherwise satisfies the requirements for allowance of a claim under the relevant provisions of the Bankruptcy Code.

## ARTICLE XXXIX

## PROVISIONS REGARDING CREDITORS' COMMITTEE

39.1 **Dissolution of Creditors' Committee**: On the HTA Effective Date, the Creditors' Committee shall be (a) dissolved and be deemed to have satisfied all of its respective duties and obligations, and (b) released and discharged from any action or activity taken, or required to be taken, in connection with the Title III Case; provided, however, that (x) in the event that an appeal of the HTA Confirmation Order is taken, the Creditors' Committee shall not be dissolved until the HTA Confirmation Order becomes a Final Order, (y) the Creditors' Committee shall not be dissolved with respect to its duties and obligations in connection with PREPA's Title III case, and (z) the Creditors' Committee shall be entitled to defend applications for allowance of compensation and reimbursement of expenses of their respective professionals. To the extent that, as of the date immediately prior to the HTA Effective Date, the Creditors' Committee was a party to a contested matter or adversary proceeding in connection with the Title III Case, including, without limitation, the Debt Related Objections, the Invalidity Actions, the Lien Challenge Actions, the Appointments Clause Litigation, the Uniformity Litigation, the Clawback Actions, the Lift Stay Motions, and any objection to claim, from and after the HTA Effective Date and to the extent not already a party thereto, Reorganized HTA shall be deemed to have assumed such role and responsibility in connection with such contested matter and, upon

87

HTA_CONF 00017236

such assumption, the Creditors' Committee shall be relieved of any role, responsibility or obligation with respect thereto.

## ARTICLE XL

## RETENTION OF JURISDICTION

40.1   **Retention of Jurisdiction**: The Title III Court shall retain and have exclusive jurisdiction over any matter arising under PROMESA, arising in or related to, the Title III Case and the HTA Plan, or that relates to the following:

(a)   to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim not compromised or settled hereby, including, without limitation, the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims not compromised or settled hereby;

(b)   to resolve any matters related to Executory Contracts or Unexpired Leases, including, without limitation, (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(c)   to ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the HTA Plan and adjudicate any and all disputes arising from or relating to distributions under the HTA Plan;

(d)   to adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor or Reorganized HTA that may be pending on the HTA Effective Date or brought thereafter;

(e)   to decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to PROMESA, the HTA Plan or orders entered by the Title III Court;

(f)   to enter and implement such orders as may be necessary or appropriate to execute, implement, consummate or enforce the provisions of (i) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Title III Case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction, and (ii) the HTA Plan, the HTA Confirmation Order, the Definitive Documents and any other contracts, instruments, securities, releases, indentures, and other

88

HTA_CONF 00017237

agreements or documents created in connection with the HTA Plan, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

    (g) to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the HTA Plan, the HTA Confirmation Order, the Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the HTA Plan or any Entity's rights arising from or obligations incurred in connection with the HTA Plan or such documents, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

    (h) to approve any modification of the HTA Plan or approve any modification of the HTA Confirmation Order or any contract, instrument, security, release or other agreement or document created in connection with the HTA Plan or the HTA Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the HTA Plan, the HTA Confirmation Order or any contract, instrument, security, release or other agreement or document created in connection with the HTA Plan or the HTA Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the HTA Plan;

    (i) to adjudicate, decide or resolve any matters relating to the Debtor's compliance with the HTA Plan and the HTA Confirmation Order consistent with section 945 of the Bankruptcy Code;

    (j) to determine any other matters that may arise in connection with or relate to the HTA Plan, the Disclosure Statement, the HTA Confirmation Order, Definitive Documents, or any contract, instrument, security, release or other agreement or document created, entered into or delivered in connection with the HTA Plan, the Disclosure Statement or the HTA Confirmation Order, in each case, solely to the extent that any such document does not provide for another court or courts to have exclusive jurisdiction;

    (k) to enter and implement other orders, or take such other actions as may be necessary or appropriate to enforce or restrain interference by any Entity with consummation or enforcement of the HTA Plan or the HTA Confirmation Order, including, without limitation, the provisions of Sections 41.2 and 41.3 hereof;

    (l) to adjudicate any and all controversies, suits or issues that may arise regarding the validity of any actions taken by any Entity pursuant to or in furtherance of the HTA Plan or HTA Confirmation Order, including, without limitation, issuance of the New HTA Bonds and enter any necessary or appropriate orders or relief in connection with such adjudication;

    (m) to enter and implement such orders as are necessary or appropriate if the HTA Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

    (n) to enter an order or final decree concluding or closing the Title III Case pursuant to section 945(b) of the Bankruptcy Code;

89

HTA_CONF 00017238

(o)     to resolve disputes that may arise between the Oversight Board or AAFAF, as the case may be, and the two (2) Creditors' Committee appointees to the Avoidance Actions Trust Board in accordance with the provisions of Section 32.1(b) of the HTA Plan;

(p)     to enforce and clarify any orders previously entered by the Title III Court in the Title III Case; and

(q)     to hear any other matter over which the Title III Court has jurisdiction under Sections 305 and 306 of PROMESA.

## ARTICLE XLI

## MISCELLANEOUS PROVISIONS

41.1    **Title to Assets**:  Except as provided in the HTA Confirmation Order, on the HTA Effective Date, title to all Assets and properties of the Debtor encompassed by the HTA Plan shall vest in Reorganized HTA, free and clear of all Liens, including, without limitation, any Lien upon or security interest in the SIB Account, but expressly excluding Liens granted pursuant to the HTA Plan and the HTA Confirmation Order.

41.2    **Discharge and Release of Claims and Causes of Action:**

(a)     Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 hereof, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor.  Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan.  For the avoidance of doubt, nothing contained herein or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity.  Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be

90

HTA_CONF 00017239

addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c) Notwithstanding any other provisions of this Section 41.2, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this Section 41.2.

(d) <u>SEC Limitation</u>. Notwithstanding anything contained herein or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

(e) <u>United States Limitation</u>. Notwithstanding anything contained herein or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or

91

HTA_CONF 00017240

injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii)
discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA
to the United States arising from and after the HTA Effective Date, (B) any liability to the United
States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the
United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and
recoupment of such parties are expressly preserved, (D) the continued validity of the obligations
of the United States, the Debtor or Reorganized HTA, as the case may be, under any United
States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's
obligations arising under federal police or regulatory laws, including, but not limited to, laws
relating to the environment, public health or safety, or territorial laws implementing such federal
legal provisions, including, but not limited to, compliance obligations, requirements under
consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other
penalties, and (F) any liability to the United States on the part of any non-debtor.  Without
limiting the foregoing, nothing contained herein or in the HTA Confirmation Order shall be
deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor
and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax
status, or tax filing and withholding obligations of any entity, including, but not limited to, the
Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any
claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to
grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment
Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

(f)     Underwriter Actions.  Notwithstanding anything contained herein or in the
HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and
41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA,
nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set
forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify,
diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the
plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions,
from asserting their respective rights, claims, causes of action and defenses in the Underwriter
Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of
setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability
or any other basis for the reduction of (or credit against) any judgment in connection with the
Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the
avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the
affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant
and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the
Commonwealth, or any other agency or instrumentality of the Commonwealth in connection
with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions,
including, without limitation, plaintiffs, defendants, and, to the extent named third-party
defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or
Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is
barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA
Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the
Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or
counterclaims for purposes of obtaining an affirmative monetary recovery, including, without

92

limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

41.3     **Injunction on Claims**:  Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 hereof or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 hereof are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

41.4     **Integral to HTA Plan**:  Each of the discharge, injunction, exculpation and release provisions provided in this Article XLI is an integral part of the HTA Plan and is essential to its implementation.  Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article XLI.

41.5     **Releases by the Debtor and Reorganized HTA**:  Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for

HTA_CONF 00017242

good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.

41.6    **Injunction Related to Releases**:  As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 hereof; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order.  For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.

41.7    **Exculpation:**

(a)    **Government Parties**:  The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.  Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government

94

HTA_CONF 00017243

Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.

(b)     **HTA/CCDA PSA Creditors:**  Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c)     **Monoline Insurers:**  Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).

(d)     **Creditors' Committee:**  Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection

95

HTA_CONF 00017244

with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(e)     **The DRA Parties:** Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

41.8    **Appointments Related Litigation/Uniformity Litigation**:  Notwithstanding anything contained herein to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.

41.9    **Bar Order**:  To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or

HTA_CONF 00017245

litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

41.10 **No Waiver**: Notwithstanding anything to the contrary contained in Sections 41.5 and 41.6 hereof, the releases and injunctions set forth in such sections shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Oversight Board, AAFAF, Reorganized HTA, the HTA/CCDA PSA Creditors or the Avoidance Actions Trust to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by any of them.

41.11 **Supplemental Injunction**: Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

HTA_CONF 00017246

(d)     Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

41.12   **Post-Effective Date Fees and Expenses**:  From and after the HTA Effective Date, Reorganized HTA shall, in the ordinary course of business and without the necessity for any approval by the Title III Court, retain professionals and pay the reasonable professional fees and expenses incurred by Reorganized HTA related to implementation and consummation of the HTA Plan without further approval from the Title III Court.  Without limiting the foregoing, from and after the HTA Effective Date, Reorganized HTA shall, in the ordinary course of business and without the necessity for any approval by the Title III Court, but in no event later than forty-five (45) days following the submission of invoices or statements with respect to the incurrence of fees and expenses to Reorganized HTA, pay the reasonable and documented fees and reimburse the expenses of the Oversight Board and its professionals related to the implementation and consummation of the HTA Plan and in connection with its duties and responsibilities pursuant to PROMESA and the terms and provisions of the HTA Plan.

41.13   **Securities Act Exemption**:  Pursuant to section 1145 of the Bankruptcy Code and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the New HTA Bonds pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

41.14   **Severability**:  Subject to the terms and provisions of the HTA/CCDA Plan Support Agreement and the HTA Committee Agreement, if, prior to the HTA Confirmation Date, (a) any term or provision of the HTA Plan shall be held by the Title III Court to be invalid, void or unenforceable, the Title III Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted or (b) the Oversight Board determines to modify or amend the HTA Plan, the HTA Plan provisions applicable thereto shall be deemed severed and to be of no force or effect.

41.15   **Governing Law:**  Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto or any document to be entered into in connection herewith provides otherwise, the rights, duties, and obligations arising under this HTA Plan shall be

HTA_CONF 00017247

governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

41.16 **Closing Case**: The Oversight Board shall, promptly upon the full administration of the Title III Case, file with the Title III Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Title III Court. Notwithstanding the closing of the Title III Case, the Title III Court shall retain jurisdiction of all of the matters set forth in Article XL of the HTA Plan.

41.17 **Section Headings**: The section headings contained in this HTA Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the HTA Plan.

41.18 **Inconsistencies**: To the extent of any inconsistency between (a) the information contained in the Disclosure Statement and the terms and provisions of the HTA Plan, the terms and provisions contained herein shall govern, (b) the terms and provisions of the HTA Plan and the terms and provisions of the HTA Confirmation Order, the terms and provisions of the HTA Confirmation Order shall govern and be deemed a modification of the HTA Plan, and (c) the terms and provisions of the HTA Plan and the New HTA Bonds Indenture, the terms and provisions of the New HTA Bonds Indenture shall govern; provided, however, that under no circumstances shall the HTA Confirmation Order modify the economic terms set forth herein absent consent of the Oversight Board.

41.19 **Document Retention**: From and after the HTA Effective Date, the Debtor may maintain documents in accordance with standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtor.

41.20 **Immediate Binding Effect**: Pursuant to section 944(a) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the HTA Effective Date, the terms of the HTA Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on any and all holders of Claims and their respective successors and assigns, whether or not the Claim of any such holder is impaired under the HTA Plan and whether or not such holder has accepted the HTA Plan. The releases, exculpations, and settlements effected under the HTA Plan shall be operative, and subject to enforcement by the Title III Court, from and after the HTA Effective Date, including pursuant to the injunctive provisions of the HTA Plan. Once approved, the compromises and settlements embodied in the HTA Plan, along with the treatment of any associated Allowed Claims, shall not be subject to collateral attack or other challenge by any Entity in any court or other forum. As such, any Entity that opposes the terms of any compromise and settlement set forth in the HTA Plan must (a) challenge such compromise and settlement prior to confirmation of the HTA Plan and (b) demonstrate appropriate standing to object and that the subject compromise and settlement does not meet the standards governing settlements under Bankruptcy Rule 9019 and other applicable law.

HTA_CONF 00017248

41.21 **Additional Documents**: On or before the HTA Effective Date, the Oversight Board may file with Clerk of the Title III Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the HTA Plan. The Debtor and all holders of Claims receiving distributions pursuant to the HTA Plan and all other parties in interest, from time to time, may prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the HTA Plan.

41.22 **Reservation of Rights**: Except as expressly set forth herein, the HTA Plan shall have no force or effect unless the Title III Court shall enter the HTA Confirmation Order. None of the filing of the HTA Plan, any statement or provision contained in the HTA Plan, or the taking of any action by the Debtor with respect to the HTA Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims prior to the HTA Effective Date. Except as expressly set forth herein, the rights and powers of the government of Puerto Rico under the Commonwealth Constitution and PROMESA, including, without limitation, under Sections 303 and 305 of PROMESA, are expressly reserved (subject to any limitation thereon imposed by the Commonwealth Constitution, the U.S. Constitution or PROMESA), and nothing herein shall be deemed a waiver of any such rights and powers.

41.23 **Successors and Assigns**: Except as expressly provided otherwise in the HTA Plan, the rights, benefits, and obligations of any Entity named or referred to in the HTA Plan or the HTA Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

41.24 **Notices**: All notices, requests to, demands or other document(s) required by the HTA Plan or the HTA Confirmation Order to be served on or delivered to the Oversight Board, the Debtor or AAFAF to be effective shall be in writing including by facsimile transmission and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Oversight Board, to:   Financial Oversight and Management Board for Puerto Rico
                                 268 Muñoz Rivera Ave, Suite 1107
                                 San Juan, PR 00918-1813
                                 Attn: Executive Director

                                 – with a copy to –

                                 PROSKAUER ROSE LLP
                                 Eleven Times Square
                                 New York, NY 10036
                                 Attn: Martin J. Bienenstock, Esq.
                                      Brian S. Rosen, Esq.
                                 Tel: (212) 969-3000

HTA_CONF 00017249

Fax: (212) 969-2900

– and –

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave, Suite 800
San Juan, PR 00918-1813
Attn: Hermann Bauer, Esq.
Tel: (787) 764-8181
Fax: (212) 753-8944

If to the Debtor, to:            Puerto Rico Highways and Transportation Authority
c/o Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907
Attn: Office of the Executive Director

– with a copy to –

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq.
       Brian S. Rosen, Esq.
Tel: (212) 969-3000
Fax: (212) 969-2900

– and –

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave, Suite 800
San Juan, PR 00918-1813
Attn: Hermann Bauer, Esq.
Tel: (787) 764-8181
Fax: (212) 753-8944

– and –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn: John Rapisardi, Esq.
       Peter Friedman, Esq.
       Maria J. DiConza, Esq.
Tel: (212) 326-2000
Fax: (212) 326-2061

101

HTA_CONF 00017250

If to AAFAF, to:  Fiscal Agency and Financial Advisory Authority
Roberto Sánchez Vilella (Minillas) Government Center
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

– with a copy to –

O'MELVENY & MYERS LLP
Seven Times Square
New York, NY 10036
Attn:  John Rapisardi, Esq.
Peter Friedman, Esq.
Maria J. DiConza, Esq.
Tel:  (212) 326-2000
Fax:  (212) 326-2061

41.25  **Term of Injunctions or Stays**:  Unless otherwise provided herein or in the HTA Confirmation Order, all injunctions or stays in effect in the Title III Case (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the HTA Confirmation Date (excluding any injunctions or stays contained in the HTA Plan or the HTA Confirmation Order) shall remain in full force and effect until the HTA Effective Date. All injunctions or stays contained in the HTA Plan or the HTA Confirmation Order shall remain in full force and effect in accordance with their terms.

41.26  **Entire Agreement**:  Except as otherwise indicated, the HTA Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the HTA Plan.

41.27  **Plan Supplement**:  All documents included in the Plan Supplement are incorporated into and are a part of the HTA Plan as if set forth in full in the HTA Plan.  Upon the filing of the Plan Supplement with the Clerk of the Title III Court, copies of the documents contained therein shall be made available upon written request to the Oversight Board's counsel at the address above or by downloading such documents from https://cases.primeclerk.com/ puertorico/ or the Title III Court's website, available via PACER.  Unless otherwise ordered by the Title III Court, to the extent any document in the Plan Supplement is inconsistent with the terms of any part of the HTA Plan that does not constitute the Plan Supplement, such part of the HTA Plan that does not constitute the Plan Supplement shall control; provided, however, that, with respect to matters governed by the New HTA Bonds Indenture to the extent that any provisions of the HTA Plan are inconsistent with the New HTA Bonds Indenture the New HTA Bonds Indenture shall control.

Dated: San Juan, Puerto Rico
June 17, 2022

HTA_CONF 00017251

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY, by and
through the Financial Oversight and Management
Board for Puerto Rico as its representative


By: /s/ David A. Skeel Jr.
     Name: David A. Skeel Jr.
     Title: Chairman

HTA_CONF 00017252

# EXHIBIT A

SCHEDULE OF AVOIDANCE ACTIONS

HTA_CONF 00017253

Remaining Adversary Vendors

| Vendor Name | Vendor Type | Adversary Proceeding No. |
|---|---|---|
| GILA LLC | Adversary | 19-00354 |

A-2

HTA_CONF 00017254

**EXHIBIT B**

SCHEDULE OF INVALIDITY ACTIONS

HTA_CONF 00017255

**Invalidity Actions**

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Jefferies LLC, Adv. Proc. No. 19-00281

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. BNY Mellon/POP Sec, Adv. Proc. No. 19-00282

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. First Southwest Co., Adv. Proc. No. 19-00283

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1E-59E , Adv. Proc. No. 19-00284

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1A-100A, Adv. Proc. No. 19-00285

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1B-100B, Adv. Proc. No. 19-00286

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1C-53C, Adv. Proc. No. 19-00287

The Special Claims Comm. Of the Fin. Oversight and Mgmt Board of for Puerto Rico and the Official Comm. of Unsecured Creditors of the Commonwealth of Puerto Rico v. Defendants 1D-73D, Adv. Proc. No. 19-00288

HTA_CONF 00017256

## **EXHIBIT C**

SCHEDULE OF LIEN CHALLENGE ACTIONS

HTA_CONF 00017257

**Lien Challenge Actions**

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Autonomy Master Fund Ltd., Adv. Proc. No. 19-00291

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Cooperativa de Ahorro t Credito de Rincon, Adv. Proc. No. 19-00292

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Ortiz de la Renta, Adv. Proc. No. 19-00293

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Martinez Sanchez, Adv. Proc. No. 19-00294

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Valdivieso, Adv. Proc. No. 19-00295

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Friedman, Adv. Proc. No. 19-00296

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Blackrock Fin. Mgmt., Adv. Proc. No. 19-00297

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Valdivieso, Adv. Proc. No. 19-00362

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Ambac Assurance Corporation, Adv. Proc. No. 19-00363

The Financial Oversight and Management Board of Puerto Rico, as Representative of Commonwealth of Puerto Rico, et al., and the Official Committee of Unsecured Creditors of All Title III  Debtors (Other Than COFINA) v. Davidson Kempner Capital Management LP, Adv. Proc. No. 19-00364

The Special Claims Comm. Of the Fin. Oversight and Mgmt. Board of Puerto Rico and the Official Committee of Unsecured Creditors of All Title III Debtors (Other Than COFINA) v. Banco Popular de Puerto Rico, Adv. Proc. No. 19-00365

C-2

HTA_CONF 00017258

# EXHIBIT D

SCHEDULE OF CASH FLOW OF NEW HTA BONDS

D-1

HTA_CONF 00017259

EXHIBIT: D

Exhibit: Schedule of Cash Flow of New HTA Bonds:

| Fiscal Year (7/1) | Maturity | New HTA CIBs | | |
|---|---|---|---|---|
| | | Principal | Interest 5.000% | Debt Service |
| Total | | 600,000,000.00 | 1,085,949,250.00 | 1,685,949,250.00 |
| 2023 | 7/1/23 | - | 30,000,000.00 | 30,000,000.00 |
| 2024 | 7/1/24 | - | 30,000,000.00 | 30,000,000.00 |
| 2025 | 7/1/25 | - | 30,000,000.00 | 30,000,000.00 |
| 2026 | 7/1/26 | - | 30,000,000.00 | 30,000,000.00 |
| 2027 | 7/1/27 | - | 30,000,000.00 | 30,000,000.00 |
| 2028 | 7/1/28 | - | 30,000,000.00 | 30,000,000.00 |
| 2029 | 7/1/29 | - | 30,000,000.00 | 30,000,000.00 |
| 2030 | 7/1/30 | - | 30,000,000.00 | 30,000,000.00 |
| 2031 | 7/1/31 | - | 30,000,000.00 | 30,000,000.00 |
| 2032 | 7/1/32 | - | 30,000,000.00 | 30,000,000.00 |
| 2033 | 7/1/33 | - | 30,000,000.00 | 30,000,000.00 |
| 2034 | 7/1/34 | - | 30,000,000.00 | 30,000,000.00 |
| 2035 | 7/1/35 | - | 30,000,000.00 | 30,000,000.00 |
| 2036 | 7/1/36 | - | 30,000,000.00 | 30,000,000.00 |
| 2037 | 7/1/37 | - | 30,000,000.00 | 30,000,000.00 |
| 2038 | 7/1/38 | - | 30,000,000.00 | 30,000,000.00 |
| 2039 | 7/1/39 | - | 30,000,000.00 | 30,000,000.00 |
| 2040 | 7/1/40 | - | 30,000,000.00 | 30,000,000.00 |
| 2041 | 7/1/41 | - | 30,000,000.00 | 30,000,000.00 |
| 2042 | 7/1/42 | - | 30,000,000.00 | 30,000,000.00 |
| 2043 | 7/1/43 | - | 30,000,000.00 | 30,000,000.00 |
| 2044 | 7/1/44 | - | 30,000,000.00 | 30,000,000.00 |
| 2045 | 7/1/45 | - | 30,000,000.00 | 30,000,000.00 |
| 2046 | 7/1/46 | - | 30,000,000.00 | 30,000,000.00 |
| 2047 | 7/1/47 | - | 30,000,000.00 | 30,000,000.00 |
| 2048 | 7/1/48 | - | 30,000,000.00 | 30,000,000.00 |
| 2049 | 7/1/49 | - | 30,000,000.00 | 30,000,000.00 |
| 2050 | 7/1/50 | - | 30,000,000.00 | 30,000,000.00 |
| 2051 | 7/1/51 | - | 30,000,000.00 | 30,000,000.00 |
| 2052 | 7/1/52 | - | 30,000,000.00 | 30,000,000.00 |
| 2053 | 7/1/53 | 14,190,000.00 | 30,000,000.00 | 44,190,000.00 |
| 2054 | 7/1/54 | 53,125,000.00 | 29,290,500.00 | 82,415,500.00 |
| 2055 | 7/1/55 | 55,785,000.00 | 26,634,250.00 | 82,419,250.00 |
| 2056 | 7/1/56 | 58,575,000.00 | 23,845,000.00 | 82,420,000.00 |
| 2057 | 7/1/57 | 61,500,000.00 | 20,916,250.00 | 82,416,250.00 |
| 2058 | 7/1/58 | 64,575,000.00 | 17,841,250.00 | 82,416,250.00 |
| 2059 | 7/1/59 | 67,805,000.00 | 14,612,500.00 | 82,417,500.00 |
| 2060 | 7/1/60 | 71,195,000.00 | 11,222,250.00 | 82,417,250.00 |
| 2061 | 7/1/61 | 74,755,000.00 | 7,662,500.00 | 82,417,500.00 |
| 2062 | 7/1/62 | 78,495,000.00 | 3,924,750.00 | 82,419,750.00 |

D-2

HTA_CONF 00017260

*Deemed Issuance Date is 7/1/2022

| Fiscal Year (7/1) | Maturity | New HTA CABs | | |
| --- | --- | --- | --- | --- |
| | | Initial Principal | Accreted Value at each Redemption Date (2) | Maturity Value (3) |
| Total | | 237,955,868.13 | 334,856,647.24 | 389,919,000.00 |
| 2023 | 7/1/23 | - | - | - |
| 2024 | 7/1/24 | - | - | - |
| 2025 | 7/1/25 | 25,289,588.80 | 29,327,916.80 | 41,440,000.00 |
| 2026 | 7/1/26 | 22,310,860.93 | 27,183,444.45 | 36,559,000.00 |
| 2027 | 7/1/27 | 25,083,317.54 | 32,108,471.38 | 41,102,000.00 |
| 2028 | 7/1/28 | 28,817,559.67 | 38,756,163.54 | 47,221,000.00 |
| 2029 | 7/1/29 | 35,543,345.34 | 50,221,494.18 | 58,242,000.00 |
| 2030 | 7/1/30 | 35,310,832.47 | 52,419,172.95 | 57,861,000.00 |
| 2031 | 7/1/31 | 33,610,009.98 | 52,419,983.94 | 55,074,000.00 |
| 2032(1) | 7/1/32 | 31,990,353.40 | 52,420,000.00 | 52,420,000.00 |

(1) Stated maturity; not a sinking fund redemption
(2) Equals the initial principal amount plus accreted interest to each sinking fund redemption date
(3) Equals the total accreted value that would be represented by the portion of the bonds being redeemed if held to maturity
*Deemed Issuance Date is 7/1/2022

D-3

HTA_CONF 00017261

| Fiscal | | | New HTA CCABs | | |
| Year | | | (a) | (b) | (c = a + b) |
| (7/1) | Maturity | Initial Principal | Maturity Value | CCAB Interest (2) | CCAB Debt Service |
|---|---|---|---|---|---|
| Total | | 407,044,597.57 | 666,991,000.00 | 419,638,900.00 | 1,086,629,900.00 |
| 2023 | 7/1/23 | - | - | - | - |
| 2024 | 7/1/24 | - | - | - | - |
| 2025 | 7/1/25 | - | - | - | - |
| 2026 | 7/1/26 | - | - | - | - |
| 2027 | 7/1/27 | - | - | - | - |
| 2028 | 7/1/28 | - | - | - | - |
| 2029 | 7/1/29 | - | - | - | - |
| 2030 | 7/1/30 | - | - | - | - |
| 2031 | 7/1/31 | - | - | - | - |
| 2032 | 7/1/32 | - | - | - | - |
| 2033 | 7/1/33 | 11,637,848.90 | 19,070,000.00 | 33,349,550.00 | 52,419,550.00 |
| 2034 | 7/1/34 | 12,220,046.48 | 20,024,000.00 | 32,396,050.00 | 52,420,050.00 |
| 2035 | 7/1/35 | 12,830,926.75 | 21,025,000.00 | 31,394,850.00 | 52,419,850.00 |
| 2036 | 7/1/36 | 13,472,320.52 | 22,076,000.00 | 30,343,600.00 | 52,419,600.00 |
| 2037 | 7/1/37 | 14,146,058.60 | 23,180,000.00 | 29,239,800.00 | 52,419,800.00 |
| 2038 | 7/1/38 | 14,853,361.53 | 24,339,000.00 | 28,080,800.00 | 52,419,800.00 |
| 2039 | 7/1/39 | 15,596,060.12 | 25,556,000.00 | 26,863,850.00 | 52,419,850.00 |
| 2040 | 7/1/40 | 16,375,985.18 | 26,834,000.00 | 25,586,050.00 | 52,420,050.00 |
| 2041 | 7/1/41 | 17,194,967.52 | 28,176,000.00 | 24,244,350.00 | 52,420,350.00 |
| 2042 | 7/1/42 | 18,054,837.95 | 29,585,000.00 | 22,835,550.00 | 52,420,550.00 |
| 2043 | 7/1/43 | 18,957,427.28 | 31,064,000.00 | 21,356,300.00 | 52,420,300.00 |
| 2044 | 7/1/44 | 19,905,176.59 | 32,617,000.00 | 19,803,100.00 | 52,420,100.00 |
| 2045 | 7/1/45 | 20,900,526.96 | 34,248,000.00 | 18,172,250.00 | 52,420,250.00 |
| 2046 | 7/1/46 | 21,945,309.20 | 35,960,000.00 | 16,459,850.00 | 52,419,850.00 |
| 2047 | 7/1/47 | 23,042,574.66 | 37,758,000.00 | 14,661,850.00 | 52,419,850.00 |
| 2048 | 7/1/48 | 24,194,764.42 | 39,646,000.00 | 12,773,950.00 | 52,419,950.00 |
| 2049 | 7/1/49 | 25,404,319.56 | 41,628,000.00 | 10,791,650.00 | 52,419,650.00 |
| 2050 | 7/1/50 | 26,674,901.70 | 43,710,000.00 | 8,710,250.00 | 52,420,250.00 |
| 2051 | 7/1/51 | 28,008,341.65 | 45,895,000.00 | 6,524,750.00 | 52,419,750.00 |
| 2052 | 7/1/52 | 29,408,911.30 | 48,190,000.00 | 4,230,000.00 | 52,420,000.00 |
| 2053(1) | 7/1/53 | 22,219,930.70 | 36,410,000.00 | 1,820,500.00 | 38,230,500.00 |

(1) Stated maturity; not a sinking fund redemption
(2) New HTA CCAB conversion date is 7/1/2032
*Deemed Issuance Date is 7/1/2022

D-4

HTA_CONF 00017262

Aggregate Debt Service Cash Flows

| Fiscal Year (7/1) | Maturity | CIB Debt Service | CAB Accreted Value at each Redemption Date | CCAB Debt Service | Total Debt Service |
|---|---|---|---|---|---|
| Total | | 1,685,949,250.00 | 334,856,647.24 | 1,086,629,900.00 | 3,107,435,797.24 |
| 2023 | 7/1/23 | 30,000,000.00 | - | - | 30,000,000.00 |
| 2024 | 7/1/24 | 30,000,000.00 | | - | 30,000,000.00 |
| 2025 | 7/1/25 | 30,000,000.00 | 29,327,916.80 | - | 59,327,916.80 |
| 2026 | 7/1/26 | 30,000,000.00 | 27,183,444.45 | - | 57,183,444.45 |
| 2027 | 7/1/27 | 30,000,000.00 | 32,108,471.38 | - | 62,108,471.38 |
| 2028 | 7/1/28 | 30,000,000.00 | 38,756,163.54 | - | 68,756,163.54 |
| 2029 | 7/1/29 | 30,000,000.00 | 50,221,494.18 | - | 80,221,494.18 |
| 2030 | 7/1/30 | 30,000,000.00 | 52,419,172.95 | - | 82,419,172.95 |
| 2031 | 7/1/31 | 30,000,000.00 | 52,419,983.94 | - | 82,419,983.94 |
| 2032 | 7/1/32 | 30,000,000.00 | 52,420,000.00 | - | 82,420,000.00 |
| 2033 | 7/1/33 | 30,000,000.00 | - | 52,419,550.00 | 82,419,550.00 |
| 2034 | 7/1/34 | 30,000,000.00 | - | 52,420,050.00 | 82,420,050.00 |
| 2035 | 7/1/35 | 30,000,000.00 | - | 52,419,850.00 | 82,419,850.00 |
| 2036 | 7/1/36 | 30,000,000.00 | - | 52,419,600.00 | 82,419,600.00 |
| 2037 | 7/1/37 | 30,000,000.00 | - | 52,419,800.00 | 82,419,800.00 |
| 2038 | 7/1/38 | 30,000,000.00 | - | 52,419,800.00 | 82,419,800.00 |
| 2039 | 7/1/39 | 30,000,000.00 | - | 52,419,850.00 | 82,419,850.00 |
| 2040 | 7/1/40 | 30,000,000.00 | - | 52,420,050.00 | 82,420,050.00 |
| 2041 | 7/1/41 | 30,000,000.00 | - | 52,420,350.00 | 82,420,350.00 |
| 2042 | 7/1/42 | 30,000,000.00 | - | 52,420,550.00 | 82,420,550.00 |
| 2043 | 7/1/43 | 30,000,000.00 | - | 52,420,300.00 | 82,420,300.00 |
| 2044 | 7/1/44 | 30,000,000.00 | - | 52,420,100.00 | 82,420,100.00 |
| 2045 | 7/1/45 | 30,000,000.00 | - | 52,420,250.00 | 82,420,250.00 |
| 2046 | 7/1/46 | 30,000,000.00 | - | 52,419,850.00 | 82,419,850.00 |
| 2047 | 7/1/47 | 30,000,000.00 | - | 52,419,850.00 | 82,419,850.00 |
| 2048 | 7/1/48 | 30,000,000.00 | - | 52,419,950.00 | 82,419,950.00 |
| 2049 | 7/1/49 | 30,000,000.00 | - | 52,419,650.00 | 82,419,650.00 |
| 2050 | 7/1/50 | 30,000,000.00 | - | 52,420,250.00 | 82,420,250.00 |
| 2051 | 7/1/51 | 30,000,000.00 | - | 52,419,750.00 | 82,419,750.00 |
| 2052 | 7/1/52 | 30,000,000.00 | - | 52,420,000.00 | 82,420,000.00 |
| 2053 | 7/1/53 | 44,190,000.00 | - | 38,230,500.00 | 82,420,500.00 |
| 2054 | 7/1/54 | 82,415,500.00 | - | - | 82,415,500.00 |
| 2055 | 7/1/55 | 82,419,250.00 | - | - | 82,419,250.00 |
| 2056 | 7/1/56 | 82,420,000.00 | - | - | 82,420,000.00 |
| 2057 | 7/1/57 | 82,416,250.00 | - | - | 82,416,250.00 |
| 2058 | 7/1/58 | 82,416,250.00 | - | - | 82,416,250.00 |
| 2059 | 7/1/59 | 82,417,500.00 | - | - | 82,417,500.00 |
| 2060 | 7/1/60 | 82,417,250.00 | - | - | 82,417,250.00 |
| 2061 | 7/1/61 | 82,417,500.00 | - | - | 82,417,500.00 |
| 2062 | 7/1/62 | 82,419,750.00 | - | - | 82,419,750.00 |

D-5

HTA_CONF 00017263

**EXHIBIT E**

SUBORDINATED INDEBTEDNESS PAYMENT TERMS

HTA_CONF 00017264

|  | Principal | Interest | Agg. Loan Payments |
|---|---|---|---|
| Total | 362,000,000.00 | 173,538,404.20 | 535,538,404.20 |
| 7/1/23 | 10,763,135.00 | 11,714,722.22 | 22,477,857.22 |
| 7/1/24 | 9,447,509.00 | 8,780,921.63 | 18,228,430.63 |
| 7/1/25 | 4,810,622.00 | 8,544,733.90 | 13,355,355.90 |
| 7/1/26 | 5,197,995.00 | 8,424,468.35 | 13,622,463.35 |
| 7/1/27 | 5,600,394.00 | 8,294,518.48 | 13,894,912.48 |
| 7/1/28 | 6,018,302.00 | 8,154,508.63 | 14,172,810.63 |
| 7/1/29 | 6,452,216.00 | 8,004,051.08 | 14,456,267.08 |
| 7/1/30 | 6,902,647.00 | 7,842,745.68 | 14,745,392.68 |
| 7/1/31 | 7,370,121.00 | 7,670,179.50 | 15,040,300.50 |
| 7/1/32 | 7,855,180.00 | 7,485,926.48 | 15,341,106.48 |
| 7/1/33 | 8,358,382.00 | 7,289,546.98 | 15,647,928.98 |
| 7/1/34 | 8,880,300.00 | 7,080,587.43 | 15,960,887.43 |
| 7/1/35 | 9,421,525.00 | 6,858,579.93 | 16,280,104.93 |
| 7/1/36 | 9,982,665.00 | 6,623,041.80 | 16,605,706.80 |
| 7/1/37 | 10,564,346.00 | 6,373,475.18 | 16,937,821.18 |
| 7/1/38 | 11,167,211.00 | 6,109,366.53 | 17,276,577.53 |
| 7/1/39 | 11,791,923.00 | 5,830,186.25 | 17,622,109.25 |
| 7/1/40 | 12,439,163.00 | 5,535,388.18 | 17,974,551.18 |
| 7/1/41 | 13,109,633.00 | 5,224,409.10 | 18,334,042.10 |
| 7/1/42 | 13,804,055.00 | 4,896,668.28 | 18,700,723.28 |
| 7/1/43 | 14,523,171.00 | 4,551,566.90 | 19,074,737.90 |
| 7/1/44 | 15,267,745.00 | 4,188,487.63 | 19,456,232.63 |
| 7/1/45 | 16,038,563.00 | 3,806,794.00 | 19,845,357.00 |
| 7/1/46 | 16,836,434.00 | 3,405,829.93 | 20,242,263.93 |
| 7/1/47 | 17,662,190.00 | 2,984,919.08 | 20,647,109.08 |
| 7/1/48 | 18,516,687.00 | 2,543,364.33 | 21,060,051.33 |
| 7/1/49 | 19,400,805.00 | 2,080,447.15 | 21,481,252.15 |
| 7/1/50 | 20,315,451.00 | 1,595,427.03 | 21,910,878.03 |
| 7/1/51 | 21,261,555.00 | 1,087,540.75 | 22,349,095.75 |
| 7/1/52 | 22,240,075.00 | 556,001.88 | 22,796,076.88 |

E-2

## **EXHIBIT F**

SCHEDULE OF PREEMPTED STATUTES

HTA_CONF 00017266

## List of Statutes Preempted by PROMESA[1]

**I.      Puerto Rico Highway and Transportation Authority Act**

1.      Act 74, approved on June 23, 1965:

   a.   9 L.P.R.A. §§ 2004(f), (h), (j), (l), (m), (n), (q)

   b.   9 L.P.R.A. § 2004a(3)

   c.   [9 L.P.R.A. § 2006]

   d.   9 L.P.R.A. § 2008

   e.   [9 L.P.R.A. § 2010]

   f.   9 L.P.R.A. §§ 2012(a), (b), (d), (e), (g) (h)

   g.   9 L.P.R.A. §§ 2013(a), (b)

   h.    9 L.P.R.A. § 2019

   i.   9 L.P.R.A. § 2020

2.      Act 1, approved on January 15, 2015:

   a.   9 L.P.R.A. § 2024

   b.   9 L.P.R.A. §§ 2026(b), (c), (d)(first paragraph), (d)(1), (d)(2), (d)(6), (d)(7), (d)(12), (d)(15)

   c.   9 L.P.R.A. § 2027

   d.   9 L.P.R.A. § 2030

   e.   9 L.P.R.A. § 2032

   f.   9 L.P.R.A. § 2035

---

[1]   The statutes listed herein are preempted for the reasons and solely to the extent set forth in Exhibit "A" to the Proposed Findings of Fact and Conclusions of Law.

The Debtor reserves the right to amend this list prior to the entry of the HTA Confirmation Order.

HTA_CONF 00017267

## II. Uniform Rate Revision and Modification Act

1. Act 21, approved on May 31, 1985:

   a. 27 L.P.R.A. § 261a

   b. 27 L.P.R.A. § 261b

   c. 27 L.P.R.A. § 261c

   d. 27 L.P.R.A. § 261d

HTA_CONF 00017268