# Debtor's Ex. 23

**MASTER TRUST AGREEMENT**

**by and between**

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

**and**

**_____, as Trustee**

———————————

*Dated as of _____, 2022*

———————————

## **TABLE OF CONTENTS**

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATION ...............................................6

    Section 1.01   Definitions.........................................................................6
    Section 1.02   Rules of Construction .....................................................20

ARTICLE II. AUTHORIZATION AND ISSUANCE OF SECURED OBLIGATIONS...........21

    Section 2.01   Authorization of Secured Obligations ..........................21
    Section 2.02   Provisions for Issuance of Secured Obligations...........22
    Section 2.03   Supplemental Trust Agreements ..................................23
    Section 2.04   Additional Indebtedness ................................................24

ARTICLE III. GENERAL TERMS AND PROVISIONS OF BONDS ....................................26

    Section 3.01   Place and Medium of Payment .....................................26
    Section 3.02   Legends..........................................................................27
    Section 3.03   CUSIP Numbers.............................................................27
    Section 3.04   Execution and Authentication .......................................27
    Section 3.05   Interchangeability of Bonds ..........................................27
    Section 3.06   Transfer and Registry ...................................................28
    Section 3.07   Transfer of Bonds..........................................................28
    Section 3.08   Regulations with Respect to Exchanges and Transfers............28
    Section 3.09   Bonds Mutilated, Destroyed, Lost or Stolen.................29
    Section 3.10   Book Entry Bonds ..........................................................29
    Section 3.11   Preparation of Definitive Bonds; Temporary Bonds.................30

ARTICLE IV. REDEMPTION OF BONDS.......................................................................31

    Section 4.01   Authorization of Redemption.........................................31
    Section 4.02   Redemption at the Election of the Authority ................31
    Section 4.03   Redemption Other Than at Authority's Election ..........32
    Section 4.04   Selection of Bonds to be Redeemed ............................32
    Section 4.05   Notice of Redemption....................................................33
    Section 4.06   Payment of Redeemed Bonds .....................................33

ARTICLE V. FUNDS AND ACCOUNTS;  PLEDGED REVENUES AND APPLICATION
THEREOF ....................................................................................................................34

    Section 5.01   Establishment of Funds and Accounts.........................34
    Section 5.02   Application of Secured Obligation Proceeds................35
    Section 5.03   Application of Money in the Costs of Issuance Fund ............35
    Section 5.04   Deposit of Toll Receipts in the Toll Receipts Fund ...............36
    Section 5.05   Application of Toll Receipts ...........................................36
    Section 5.06   Debt Service Fund .........................................................37
    Section 5.07   Operating Reserve Fund ...............................................38
    Section 5.08   Renewal and Replacement Fund..................................38
    Section 5.09   Subordinated Indebtedness Fund.................................39
    Section 5.10   General Reserve Fund ...................................................39
    Section 5.11   Arbitrage Rebate Fund..................................................40

i

**Page**

Section 5.12    Transfer of Investments ..................................................................40

**ARTICLE VI. SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS** ....................41

Section 6.01    Security for Deposits .......................................................................41
Section 6.02    Investment of Funds and Accounts Held by the Trustee ..........................41
Section 6.03    Liability for Investments ..................................................................42

**ARTICLE VII. PARTICULAR COVENANTS** .................................................................42

Section 7.01    Rate Covenant .................................................................................42
Section 7.02    Annual Budget and Disbursement Schedule .........................................45
Section 7.03    Operation and Maintenance Covenants ...............................................47
Section 7.04    Retention of Consulting Engineer, Traffic Consultant and Other
                Consultants ....................................................................................47
Section 7.05    Payment of Principal, Redemption Price and Interest .............................48
Section 7.06    Extension of Payment of ...................................................................48
Section 7.07    Powers as to ...................................................................................49
Section 7.08    Further Assurance ...........................................................................49
Section 7.09    Accounts and Audits ........................................................................49
Section 7.10    Creation of Liens and Indebtedness ...................................................50
Section 7.11    Restricted Payments ........................................................................50
Section 7.12    Offices for Payment and Registration of Secured Obligations ................50
Section 7.13    Payment of Lawful Charges ..............................................................50
Section 7.14    General ..........................................................................................50
Section 7.15    Tax Exemption Covenant .................................................................50
Section 7.16    Enforcement of Commonwealth Covenant ...........................................51
Section 7.17    Corporate Existence .........................................................................51
Section 7.18    Covenant Against Sale or Encumbrance; Exception ..............................51
No part of the Toll Facilities shall be sold, mortgaged, leased or otherwise disposed of or
                encumbered; provided, that: .............................................................51
Section 7.19    Separateness ...................................................................................52
Section 7.20    Insurance ........................................................................................52
Section 7.21    Compliance .....................................................................................52
Section 7.22    Continuing Disclosure ......................................................................53
Section 7.23    Non-Impairment ..............................................................................53

**ARTICLE VIII. CONCERNING THE TRUSTEE AND THE PAYING AGENT** ....................53

Section 8.01    Appointment and Acceptance of Trustee .............................................53
Section 8.02    Appointment and Acceptance of Paying Agents ...................................53
Section 8.03    Responsibilities of Trustee and Paying Agents ....................................53
Section 8.04    Property Held in Trust ......................................................................54
Section 8.05    Rights of the Trustee and the Paying Agent ........................................54
Section 8.06    Compensation and Indemnification .....................................................56
Section 8.07    Permitted Acts .................................................................................57
Section 8.08    Resignation of Trustee .....................................................................57
Section 8.09    Removal of Trustee ..........................................................................57
Section 8.10    Successor Trustee and/or Paying Agent ..............................................57

ii

HTA_CONF 00016077

**Page**

Section 8.11 Transfer of Rights and Property to Successor Trustee ............................. 58
Section 8.12 Merger or Consolidation of the Trustee.................................................. 59
Section 8.13 Ancillary Agreements.............................................................................. 59

ARTICLE IX. SUPPLEMENTAL TRUST AGREEMENTS ...................................................... 59

Section 9.01 Modification and Amendment without Consent ..................................... 59
Section 9.02 Supplemental Trust Agreements Effective with Consent of Bondholders 61
Section 9.03 General Provisions Relating to Supplemental Trust Agreements............ 61

ARTICLE X. AMENDMENTS OF TRUST AGREEMENT......................................................... 61

Section 10.01 Powers of Amendment ............................................................................ 61
Section 10.02 Consent of Holders of ............................................................................. 63
Section 10.03 Modifications by Unanimous Consent ..................................................... 63
Section 10.04 Mailing..................................................................................................... 63
Section 10.05 Exclusion of ............................................................................................. 63
Section 10.06 Notation on............................................................................................... 64

ARTICLE XI. DEFAULTS AND REMEDIES ........................................................................ 64

Section 11.01 Events of Default...................................................................................... 64
Section 11.02 No Acceleration with Respect to the Secured Obligations...................... 66
Section 11.03 Enforcement of Remedies........................................................................ 66
Section 11.04 Priority of Payments after Default........................................................... 67
Section 11.05 Termination of Proceedings..................................................................... 69
Section 11.06 Bondholders' Direction of Proceedings................................................... 69
Section 11.07 Control by Holders of Bonds; Limitations .............................................. 69
Section 11.08 Actions by Trustee; Possession of........................................................... 70
Section 11.09 Waiver and Non–Waiver of Default......................................................... 70
Section 11.10 Notice of Event of Default....................................................................... 70
Section 11.11 Remedies Not Exclusive .......................................................................... 70

ARTICLE XII. ..................................................................................................................... 71

ARTICLE XIII. DEFEASANCE ............................................................................................. 73

Section 13.01 Defeasance ............................................................................................... 73

ARTICLE XIV. EXECUTION OF INSTRUMENTS BY BONDHOLDERS  AND PROOF OF
OWNERSHIP OF SECURED OBLIGATIONS ......................................................................... 75

Section 14.01 Evidence of Signatures of Bondholders and Ownership of..................... 75

ARTICLE XV. MISCELLANEOUS ........................................................................................ 76

Section 15.01 Preservation and Inspection of Documents .............................................. 76
Section 15.02 Money and Funds Held for Particular ..................................................... 76
Section 15.03 Cancellation of ......................................................................................... 76
Section 15.04 No Recourse under Trust Agreement or on the ....................................... 76
Section 15.05 Severability of Invalid Provision............................................................. 76
Section 15.06 Parties of Interest..................................................................................... 77

HTA_CONF 00016078

**Table of Contents (continued)**

**Page**

Section 15.07  Certain Provisions Relating to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds ...................................................................77
Section 15.08  Notices .................................................................................................77
Section 15.09  Headings ..............................................................................................78
Section 15.10  Governing Laws ...................................................................................78
Section 15.11  Retention of Jurisdiction of Title III Court .........................................78
Section 15.12  Signatures and Counterparts ...............................................................78
Section 15.13  Successors and Assigns .......................................................................78
Section 15.14  Conflicts...............................................................................................78

EXHIBIT A - CONFIRMATION ORDER

HTA_CONF 00016079

# MASTER TRUST AGREEMENT

THIS MASTER TRUST AGREEMENT, dated as of _____, 2022, by and between the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the "**Authority**"), a body both corporate and politic of the Commonwealth of Puerto Rico (the "**Commonwealth**") performing essential governmental functions of the Commonwealth, duly created and existing under and by virtue of the laws of the Commonwealth and _____ (the "**Trustee**"), a _____ organized and existing under and by virtue of the laws of _____ and authorized to exercise corporate trust powers in the Commonwealth, with a place of business located in _____, as Trustee, under the circumstances summarized in the following recitals (the capitalized terms not defined in the recitals and granting clauses being used therein as defined in Section 1.01).

# R E C I T A L S

Pursuant to the authority granted pursuant to Act No. 74-1965, 9 L.P.R.A §§2001-2035, as amended (the "**Act**"), the Authority was created for the purpose of, among other things, the construction, operation, and maintenance of the Commonwealth's transportation system.

On June 30, 2016, the United States of America enacted the Puerto Rico Oversight, Management and Economic Stability Act, Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq. ("**PROMESA**"); pursuant to Section 4 of PROMESA, the provisions thereof prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent therewith.

On May 3, 2017 and May 21, 2017, respectively, the Financial Oversight and Management Board for Puerto Rico (together with any successors thereto, the "**Oversight Board**"), established by the United States of America pursuant to Section 101(b) of PROMESA, filed petitions for relief for the Commonwealth of Puerto Rico and the Authority pursuant to Section 304(a) of PROMESA in the United States District Court for the District of Puerto Rico (the "**Title III Court**"), commencing debt adjustment cases under title III of PROMESA (the "**Title III Cases**").

Pursuant to Section 306(b) of PROMESA, upon commencement of the Title III Cases, the Title III Court exercises exclusive jurisdiction over all property of the Commonwealth of Puerto Rico and the Authority, wherever located.

By entry of the order attached hereto as Exhibit A (the "**Confirmation Order**"), the Title III Court confirmed the Authority's Plan of Adjustment (as defined below).

*[DETERMINATIONS SET FORTH BELOW ARE SUBJECT TO REVISION TO REFLECT FINAL ORDER]*

Pursuant to PROMESA, and in accordance with the Confirmation Order, the Plan of Adjustment, and the Act, the Title III Court made a binding determination that the Secured Obligations are valid obligations of the Authority benefiting from the following protections, which were determined to be valid, binding, legal, and enforceable against the Authority, the Commonwealth of Puerto Rico, and other persons and entities:

HTA_CONF 00016080

(i)      The Authority is an independent public corporation and instrumentality of the Commonwealth, separate from the Commonwealth and any other instrumentality thereof;

(ii)     Upon the Effective Date, the Authority shall have all legal and equitable right, title, and interest in the Pledged Revenues which, except as granted herein and in the Confirmation Order, shall be free and clear of all liens, claims, encumbrances, and other interests of any party;

(iii)    The Trust Agreement grants a first-priority lien and first-priority security interest on all of the Authority's legal and equitable right, title, and interest in the Trust Estate (as defined in Article I of this Trust Agreement) to the Secured Obligations, subject only to (A) Sections 5.01(b) and 5.01(c) herein and (B) the senior lien and senior security interest granted hereby in the Trust Estate for the benefit of Holders of Bonds, which first-priority lien and first-priority security interest shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted hereby in the Trust Estate for the benefit of the Holders of Subordinated Indebtedness, in each case, as permitted by the Act, and such first priority lien shall be deemed automatically perfected as of the Effective Date and shall in any event be valid, binding, perfected, and enforceable against all entities having claims of any kind in tort, contract or otherwise against the Authority or its assets, irrespective of whether such entities have notice of such lien or security interest, without any further act or agreement by any entity, and will be "closed" and shall remain in full force and effect until the Secured Obligations have been paid or satisfied in full in accordance with their terms;

(iv)    The Pledged Revenues do not and will not constitute, nor will they be deemed to be "available resources" or "available revenues" of the Commonwealth, as that term is used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution);

(v)     The Authority's sole and exclusive ownership of the Pledged Revenues will not be affected in any way by the manner of or control over collection; any person who collects or holds Pledged Revenues shall do so on behalf of the Authority, and no entity that collects or holds the Pledged Revenues shall have any legal or equitable right, title, or interest to the Pledged Revenues other than the Authority, for the benefit of the Holders of the Secured Obligations;

(vi)    The covenants and agreements of the Authority and the Commonwealth, as the case may be, (including, but not limited to, that described in Section 7.17 of this Trust Agreement) will constitute adequate protection for the property interests of the Authority and the Holders of Secured Obligations in the Trust Estate;

(vii)   The Authority has waived, and shall be deemed to have waived, the automatic stay in any future insolvency proceeding commenced on behalf of the Authority (whether under Title III of PROMESA or otherwise) with respect to Net Receipts held in the funds and accounts established herein (other than the Net Receipts in the Arbitrage Rebate Fund);

- 2 -

HTA_CONF 00016081

(viii)   The Secured Obligations are not "Tax Supported Debt," as defined and set forth in the Government of Puerto Rico's Debt Management Policy adopted pursuant to the Commonwealth Plan; and

(ix)   The Confirmation Order is full, final, complete, conclusive, and binding upon and will not be subject to collateral attack or other challenge in any court or other forum, and the Title III Court has retained jurisdiction for the life of the Secured Obligations to ensure compliance with the Plan of Adjustment, including through specific performance if necessary.

All things have been done which are necessary to make the Secured Obligations, when executed by the Authority and authenticated and delivered by the Trustee hereunder, the valid obligations of the Authority, and to constitute this Trust Agreement a valid trust for the security of the Secured Obligations, in accordance with the terms of this Trust Agreement.

**NOW, THEREFORE, THIS TRUST AGREEMENT WITNESSETH:**

It is hereby covenanted and declared that all the Secured Obligations are to be authenticated and delivered and the property subject to this Trust Agreement is to be held and applied by the Trustee, subject to the covenants, conditions and trusts hereinafter set forth, and the Authority does hereby covenant and agree to and with the Trustee as follows:

This Trust Agreement provides for the following transactions:

(a)   Issuance by the Authority of its obligations to (i) settle certain claims made by the Authority's creditors, including claims relating to indebtedness previously issued by the Authority under its (x) Resolution No.  68-18, adopted June 13, 1968, as amended and supplemented thereafter and (y) Resolution No. 98-06, adopted February 26, 1998, as amended and supplemented and (ii) to fund new capital projects of the Authority relating to the Toll Facilities or, to refund, refinance or defease any obligations issued hereunder;

(b)   To establish that Secured Obligations issued by the Authority hereunder, in accordance with the Act and this Trust Agreement, are secured by a valid, binding and perfected first-priority lien on, and first-priority security interest in, the following, which shall be enforceable against all Persons having claims of any kind in tort, contract or otherwise against the Authority of its assets, irrespective of whether such Persons have notice of such first-priority lien or first-priority security interest (the "**Trust Estate**"):

(i)   All right, title and interest of the Authority in and to the Pledged Revenues and the right to receive the same, including, without limitation, any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, subject only to (A) Sections 5.01(b) and 5.01(c) herein and (B) the senior lien and senior security interest granted hereby in the Trust Estate for the Holders of Bonds, which shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted hereby in the Trust Estate for the benefit of Holders of Subordinated Indebtedness; and

- 3 -

HTA_CONF 00016082

(ii)      Except for the Authority Expense Fund and the Arbitrage Rebate Fund, all of the Authority's right, title and interest in the funds and accounts created pursuant to this Trust Agreement and any Supplemental Trust Agreement and the money, securities and other assets on deposit with the Trustee in such funds and accounts created pursuant to this Trust Agreement and any Supplemental Trust Agreement and permitted by the Act; *provided, however*, that the priority in which such money and securities are applied to the repayment of the Secured Obligations shall be as expressly specified herein; and

(c)      Application of proceeds of such Secured Obligations, if any; and

(d)      The rights and remedies of the Holders from time to time of the Authority's obligations.

**IN TRUST**, that in accordance with the Confirmation Order, such first-priority lien and first-priority security interest in the Trust Estate for the benefit of the Holders of the Secured Obligations granted hereby shall be deemed automatically perfected as of the Effective Date and shall in any event be valid, binding, perfected and enforceable against all Persons having claims of any kind in tort, contract or otherwise against the Authority or its assets irrespective of whether such Persons have notice of such lien or security interest;

**IN TRUST**, that in order to secure the payment of principal of, redemption premium (if any), and interest on all Bonds issued and to be issued under this Trust Agreement, and the performance and observance of each and every covenant and condition contained herein and in the Bonds, and for the consideration of the premises and of the acceptance by the Trustee of all trusts hereby created, and of the acceptance of the Bonds by the respective Holders thereof, and for other good valuable consideration, the sufficiency of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the Bonds shall be issued, authenticated, delivered, secured, and accepted by all Persons who shall from time to time be or become Holders thereof, the Authority does hereby assign, pledge and grant a senior lien upon and a senior security interest in all of its right, title, and interest in the Trust Estate to the Trustee and its successors and assigns for the benefit of the Holders of Bonds, which shall in all respects be senior and superior to the subordinate lien and subordinate security interest pledged herein to the Holders of Subordinated Indebtedness;

**IN TRUST**, that in order to secure the payment of principal of, redemption premium (if any), and interest on all Subordinated Indebtedness issued and to be issued under this Trust Agreement, and the performance and observance of each and every covenant and condition contained herein and in the Subordinated Indebtedness, and for the consideration of the premises and of the acceptance by the Trustee of all trusts hereby created, and of the acceptance of the Subordinated Indebtedness by the respective Holders (as hereinafter defined) thereof, and for other good valuable consideration, the sufficiency of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the Subordinated Indebtedness shall be issued, authenticated, delivered, secured, and accepted by all Persons (as defined herein) who shall from time to time be or become Holders thereof, the Authority does hereby assign, pledge and grant a subordinate lien upon and a subordinate security interest in all of its right, title, and interest in the Trust Estate to the Trustee and its successors and assigns for the benefit of the Holders of Subordinated Indebtedness, *provided, however*,  that the lien and interest granted

- 4 -

hereby for the benefit of Holders of Subordinated Indebtedness shall in all respects be junior, inferior and subordinate to and expressly subject to the senior lien and senior security interest in the Trust Estate pledged herein to the payment of the Bonds.

**IN TRUST**, that upon execution of this Trust Agreement, the first-priority lien and first-priority security interest securing the Secured Obligations shall immediately attach to the Trust Estate (including, without limitation, all Pledged Revenues and to the right to receive Toll Receipts) and shall thus immediately attach to any Toll Receipts, whether collected now or at any other time in the future by or on behalf of the Authority;

**IN TRUST**, no diversion, application, or misappropriation of the Trust Estate (including, without limitation, the Toll Receipts) shall limit, impair, defeat, or interfere with the first-priority lien and first-priority security interest securing the Secured Obligations;

**IN TRUST**, other than with respect to moneys in the Authority Expense Fund and Arbitrage Rebate Fund, which are specifically identified herein as not constituting the Trust Estate, the liens on Toll Receipts and the Trust Estate securing the Secured Obligations shall continue to remain in full force and effect with respect to such property that is deposited in any deposit account or other type of account or fund of the Authority, any successor of the Authority, or other Person, bank, or institution (including the Trustee) where Toll Receipts, the Trust Estate, or other proceeds have been commingled with other funds;

**IN TRUST**, the liens securing the Secured Obligations shall not be affected or impaired by, among other things, the commingling of Toll Receipts, the Trust Estate, or any proceeds thereof with other amounts regardless of the Person, bank, or institution holding such amounts (including the Trustee);

**IN TRUST**, upon the terms and trusts herein set forth, the Trust Estate shall be held and applied for the equal and *pro rata* benefit and security of each and every owner of the Bonds issued and to be issued hereunder, without preference, priority or distinction as to participation in the senior lien and senior security interest granted by this Trust Agreement, and the benefit and protection thereof of one Bond over or from the others, by reason of priority in the issue or negotiation or maturity thereof, or for any other reason whatsoever, except as herein otherwise expressly provided, so that each of such Bonds shall have the same right, lien and privilege hereunder and shall be equally secured hereby with the same effect as if the same shall have been made, issued and negotiated simultaneously with the delivery hereof and were expressed to mature on one and the same date;

**IN TRUST**, subject in all respects to the senior lien and senior security interest in the Trust Estate pledged to the payment of the Bonds, the Trust Estate shall be held and applied for the equal *and pro rata* benefit and security of each and every owner of Subordinated Indebtedness issued and to be issued hereunder, without preference, priority or distinction as to participation in the subordinate lien and subordinate security interest granted by this Trust Agreement, and the benefit and protection thereof of any Subordinated Indebtedness over or from the others, by reason of priority in the issue or negotiation or maturity thereof, or for any other reason whatsoever, except as herein otherwise expressly provided, so that each of such Subordinated Indebtedness shall have the same right, lien and privilege under this Trust Agreement and shall be equally secured hereby

HTA_CONF 00016084

with the same effect as if the same shall have been made, issued and negotiated simultaneously with the delivery hereof and were expressed to mature on one and the same date;

**IN TRUST,** that these presents are upon the express condition that if the Authority or its successors or assigns shall well and truly pay or cause to be paid (i) the Principal of Bonds with interest, according to the provisions set forth in this Trust Agreement and in the Bonds, respectively and each of them or shall provide for the payment of Bonds by depositing or causing to be deposited with the Trustee the funds and/or securities required by Section 13.01 of this Trust Agreement, when and as authorized by the provisions of Section 13.01 of this Trust Agreement, (ii) the Principal of Subordinated Indebtedness with interest, according to the provisions set forth in this Trust Agreement and in the Subordinated Indebtedness, respectively and each of them or shall provide for the payment of Subordinated Indebtedness by depositing or causing to be deposited with the Trustee the funds and/or securities required by Section 13.01 of this Trust Agreement, when and as authorized by the provisions of Section 13.01 of this Trust Agreement and (iii) shall also pay or cause to be paid all other sums payable hereunder by the Authority, then, provided no Secured Obligations remain Outstanding hereunder, these presents and the estate and rights granted hereby and by the Act shall cease and be terminated, and thereupon the Trustee, on payment of its lawful charges and disbursements then unpaid, on demand of the Authority and upon the payment of the cost and expenses thereof, shall duly execute, acknowledge and deliver to the Authority such instruments of satisfaction or release as may be specified by the Authority as necessary or proper to discharge this Trust Agreement, including, if appropriate, any required discharge of record, and, subject to the provisions of the Act and the Plan of Adjustment, if necessary shall grant, reassign and deliver to the Authority, its successors or assigns, all and singular the property, rights, privileges and interest by it granted, conveyed and assigned by the Act, and all substitutes therefor, or any part thereof, not previously disposed of or released as herein provided; otherwise this Trust Agreement shall be and remain in full force.

**IT IS HEREBY COVENANTED, DECLARED AND AGREED** by and between the parties hereto that all Secured Obligations are to be issued, authenticated and delivered, and that the Trust Estate and any other property or amounts subject to the lien of this Trust Agreement and pledged to the payment of the Secured Obligations are to be held and applied, subject to the further covenants, conditions, releases, uses and trusts hereinafter set forth, and the Authority, for itself and its successors, does hereby covenant and agree to and with the Trustee and its respective successors in said trust as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**Section 1.02   Definitions.** As used in this Trust Agreement the following terms have the following meanings, unless a different meaning clearly appears from the context:

**"AAFAF"** means the Puerto Rico Fiscal Agency and Financial Advisory Authority and any successors thereto.

**"Accreted Value"** means, with respect to the Capital Appreciation Bonds and Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to

- 6 -

HTA_CONF 00016085

Convertible Capital Appreciation Bonds), as of the date of calculation, the Principal amount at initial issuance thereof, plus interest thereon to such date of calculation, capitalized semiannually on each Valuation Date at the accretion rate stated within the applicable Supplemental Trust Agreement until paid at stated maturity, or prior redemption permitted by the terms of the applicable Supplemental Trust Agreement or after stated maturity following payment default by the Authority, assuming that between Valuation Dates such Accreted Value increases in equal daily amounts on the basis of a 360-day year of twelve 30-day months; *provided, however*, that Accreted Value shall be, as of the time of the Authority actually makes a Sinking Fund Installment payment or other payment required or permitted to be made on such Capital Appreciation Bond or Convertible Capital Appreciation Bond, reduced by the amount, if any, that such payment exceeds accrued interest on such Capital Appreciation Bond or Convertible Capital Appreciation Bond (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bond) from the prior Valuation Date.

**"Act"** has the meaning given to such term in the Recitals.

**"Additional Bonds"** means Bonds issued by the Authority in accordance with Section 2.04(b).

**"Additional Subordinated Indebtedness"** means Subordinated Indebtedness issued by the Authority in accordance with Section 2.04(c) or Section 2.04(d).

"**Ancillary Agreements**" means this Trust Agreement, the Confirmation Order, the Plan of Adjustment and any other agreement or instrument entered into by the Authority or the Trustee in connection with, or in furtherance of, the Restructuring Transaction and in accordance with, or in furtherance of, the Plan of Adjustment.

"**Annual Budget**" means, for each Fiscal Year, the Authority's budget for the Toll Facilities, which shall be adopted pursuant to Section 7.02 of this Trust Agreement.

**"Annual Debt Service"** shall mean for any Fiscal Year, (i) an amount equal to the sum of the Principal due on all Outstanding Bonds or Subordinated Indebtedness, as applicable, in such Fiscal Year and on the next succeeding Principal Payment Date, excluding Principal actually paid on the first day of such Fiscal Year and including any Principal unpaid in prior Fiscal Years plus (ii) an amount equal to 100% of the interest due and payable on all Outstanding Bonds or Outstanding Subordinated Indebtedness, as applicable, in such Fiscal Year and on the next succeeding July 1, excluding interest actually paid on the first day of such Fiscal Year and including any interest unpaid in prior Fiscal Years (and, for the avoidance of doubt, interest on any overdue interest) calculated based on a 360-day year consisting of twelve (12) 30-day months for such Fiscal Year.  For purposes of calculating such Annual Debt Service, the following assumptions are to be used:

(a)     For all Secured Obligations other than Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), in determining the Annual Debt Service for Secured Obligations in a Fiscal Year, payments shall be assumed to be made in accordance with the

HTA_CONF 00016086

amortization schedule then in effect for such Secured Obligations, including any Sinking Fund Installments on of such Secured Obligations;

(b)      With respect to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), the Accreted Value of Capital Appreciation Bonds or Convertible Capital Appreciation Bonds becoming due at maturity or by virtue of a Sinking Fund Installment shall be included in the calculation of Annual Debt Service only from and after the Valuation Date that is one year prior to the date on which such Accreted Value becomes so due, and the Principal and interest portions of such Accreted Value shall be deemed to accrue in equal daily installments from such Valuation Date to such due date.

"**Arbitrage Rebate Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Authority**" has the meaning given to such term in the Recitals.

"**Authority By-Laws**" means the by-laws adopted by the Authority's board of directors and in effect on the Effective Date.

"**Authority Expense Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof

"**Authorized Officer**" means (a) in the case of the Authority, the Executive Director, and when used with reference to any act or document also means any other person authorized by a resolution or the Authority By-Laws to perform such act or execute such document and (b) in the case of the Trustee, any vice president, assistant vice president, senior associate, associate or other officer of the Trustee customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject and having direct responsibility for the administration of this Trust Agreement, and when used with reference to any act or document also means any other person authorized to perform any act or sign any document by or pursuant to a resolution of the Board of Directors of the Trustee or the by-laws of the Trustee.

"**Bankruptcy Laws**" has the meaning given to such term in Section 11.01(d).

"**Bankruptcy Proceeding**" means any voluntary or involuntary insolvency, debt adjustment, any other proceeding under Bankruptcy Laws, any reorganization, receivership, liquidation, or any other similar case with respect to the Authority or with respect to a material portion of the Authority's assets.  For the avoidance of doubt, a Bankruptcy Proceeding shall include any and all of the actions listed in Section 11.01(d) of this Trust Agreement.

"**Bond**" means the Initial Bonds and any bond of the Authority authorized and issued pursuant to Section 2.01 hereof and the applicable Supplemental Trust Agreement, including Refunding Bonds and Additional Bonds issued in compliance with Section 2.02 and Section 2.04(a) or 2.04(b), as applicable; ***provided, however,*** that in no event shall Bonds include Subordinated Indebtedness.

- 8 -

HTA_CONF 00016087

**"Bondholder"**, **"Holder of Bonds"** or **"Holder"** or any similar term, when used with reference to a Secured Obligation, means the registered owner thereof; **_provided, however_**, that for purposes of this Trust Agreement, in the case of any Insured Bonds, the applicable Bond Insurer shall be treated as (a) the sole Holder of the Insured Bonds insured by such Bond Insurer for the purpose of consenting to any modification or amendment, exercising any voting right or privilege, giving any consent or direction, or taking any action that the Holders of such Insured Bonds are entitled to take pursuant to the provisions of this Trust Agreement pertaining to defaults and remedies and the duties and obligations of the Trustee, and (b) an additional Holder of the Insured Bonds insured by such Bond Insurer for purposes of receiving any notices or exercising any rights to inspect documents provided for under this Trust Agreement.

**"Bond Insurance Policy"** means a municipal bond insurance policy, if any, issued by a Bond Insurer that guarantees payment of Principal of and interest on Insured Bonds.

**"Bond Insurer"** means the provider of a Bond Insurance Policy, if any, specified in a Supplemental Trust Agreement.

**"Book Entry Bond"** means a Secured Obligation issued to and registered in the name of a Depository for the participants in such Depository.

**"Business Day"** means any day other than (a) a Saturday or a Sunday or a legal holiday or (b) a day on which banking institutions in San Juan, Puerto Rico or New York, New York, are required or authorized by law, regulation or executive order to be closed.

**"Capital Appreciation Bond"** means any Secured Obligation as to which interest is capitalized on each Valuation Date therefor and is stated to be payable only at the maturity or prior redemption thereof.

**"Code"** means the Internal Revenue Code of 1986, as amended, and the applicable regulations thereunder.

"**Commonwealth**" means the Commonwealth of Puerto Rico.

**"Commonwealth Note"** means the Puerto Rico Highways and Transportation Authority Restructured Toll Revenue Subordinated Indebtedness, Series 2022-1, as authorized to be issued by the Second Supplemental Trust Agreement, dated as of even date herewith, by and between the Authority and the Trustee.

**"Confirmation Order"** has the meaning given to such term in the Recitals.

**"Consulting Engineer"** means an independent engineer or engineering firm, or an affiliate thereof selected by the Authority that (a) is nationally recognized as being experienced with determining the costs of construction, operation, maintenance, repair, and/or replacement of facilities similar to the Toll Facilities and (b) has at least ten (10) years of experience in the field; provided, however, that for so long as the Financial Oversight and Management Board for Puerto Rico remains in existence, the Authority shall select the Consulting Engineer from a list of at least three (3) candidates provided to the Authority by the Financial Oversight and Management Board.

HTA_CONF 00016088

"**Convertible Capital Appreciation Bonds**" means Secured Obligations the interest in which is not paid prior to a specified Interest Commencement Date and is compounded periodically on certain designated dates prior to the Interest Commencement Date.

"**Costs of Issuance**" means the items of expense to be paid by the Authority which are incurred prior to, upon and during a reasonable period of time after issuance of the Secured Obligations of a Series, in each case in connection with the authorization, sale and issuance of the Secured Obligations, which items of expense may include, but not be limited to, underwriting discount or fees, structuring fees, placement fees, document printing and reproduction costs, filing and recording fees, costs of credit ratings, initial fees and charges of a Depository or the Trustee and its counsel, other legal fees and charges, professional consultants' fees, fees and charges for execution, transportation and safekeeping of the Secured Obligations, premiums, fees and charges for insurance on the Secured Obligations, and other costs, charges and fees in connection with the foregoing.

"**Cost of Operation, Maintenance and Administration**" means all costs and expenses of operating, maintaining and administering the Toll Facilities as determined by the Consulting Engineer to keep the Toll Facilities open to public travel or which are otherwise attributable to the Toll Facilities and includes, without limitation, reasonable expenses of administration of the employees of the Authority's solely with respect to the Toll Facilities (including nineteen percent (19%) of the monthly paygo invoices received by the Authority), costs of collecting and accounting for Tolls, insurance, employee bond premiums, fees of the Traffic Consultant, Consulting Engineer, accountants and legal fees, and, with respect to Toll Facilities, all other expenses determined by the Consulting Engineer to be required for the operation, maintenance and administration of the Toll Facilities; *provided, however*, that the costs and expenses of the Trustee do not constitute Costs of Operation, Maintenance and Administration and shall be paid solely from amounts on deposit in the Trustee Expense Fund.   Cost of Operation, Maintenance and Administration does not include (x) costs with respect to other facilities of the Authority that do not constitute Toll Facilities, (y) Renewal and Replacement Expenses or (z) any other capitalized expenditures.

"**Costs of Issuance Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Current Interest Bonds**" means Secured Obligations on which the interest is payable on the Interest Payment Dates provided therefor in a Supplemental Trust Agreement, which Supplemental Trust Agreement may also provide that Secured Obligations initially issued as Convertible Capital Appreciation Bonds may become Current Interest Bonds on the date specified therein.

"**Debt Service Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Defeasance Security**" means:

(a)    a direct obligation of, or any obligation the timely payment of the principal of and interest on which is guaranteed by, the United States of America;

- 10 -

HTA_CONF 00016089

(b)      any other US Government Obligation (including the interest component of Resolution Funding Corporation bonds for which the separation of principal and interest is made by request of the Federal Reserve Bank of New York in book-entry form), that is not subject to redemption prior to maturity other than at the option of the holder thereof or that has been irrevocably called for redemption on a stated future date; **provided** that at the time an investment therein is made such US Government Obligation is rated in the highest senior unsecured rating category by at least two Rating Services; and

(c)      a Municipal Obligation (i) that is not subject to redemption prior to maturity other than at the option of the holder thereof or as to which irrevocable instructions have been given to the trustee or paying agent of such Municipal Obligation by the obligor thereof to give due notice of redemption and to call such Municipal Obligation for redemption on the date or dates specified in such instructions and such Municipal Obligation is not otherwise subject to redemption prior to such specified date other than at the option of the holder thereof, (ii) the timely payment of the principal or redemption price thereof and interest thereon is fully secured by a fund consisting only of cash or obligations described in clause (a) above, which fund may be applied only to the payment of such principal of and interest and redemption premium, if any, on such Municipal Obligation on the maturity date thereof or the redemption date specified in the irrevocable instructions referred to in clause (i) above, and (iii) that at the time an investment therein is made is rated in the highest senior unsecured rating category by at least two Rating Services; **_provided, however,_** that such term shall not mean any interest in a unit investment trust or mutual fund or in "CATS," "TIGRS" or "TRS".

**"Depository"** means The Depository Trust Company, New York, New York, a limited purpose trust company organized under the laws of the State of New York (or its nominee), any other person, firm, association or corporation designated in the Supplemental Trust Agreement authorizing a Series of Secured Obligations to serve as securities depository for Secured Obligations of such Series, or any successor of any of the foregoing, as applicable.

**"Disbursement Schedule"** means a monthly schedule of Costs of Operation, Maintenance and Administration of the Toll Facilities for a Fiscal Year, as provided in Section 7.02.

**"Effective Date"** means the date that the Plan of Adjustment becomes effective in accordance with its terms and the Confirmation Order.

**"Electronic Means**" means facsimile transmission, email transmission, secure electronic transmission containing applicable authorization codes, passwords and/or authentication keys issued by the Trustee, or another electronic method or system specified by the Trustee as available for use in connection with its services hereunder.

**"Eligible Investments"** means any of the following obligations or securities that the Authority is permitted to hold as an investment under the laws of the Commonwealth:

(a)      Defeasance Securities;

(b)      interest-bearing general obligations of the United States of America;

HTA_CONF 00016090

(c)     United States treasury bills and other non-interest bearing general obligations of the United States of America when offered for sale in the open market at a price below the face value of same, so as to afford the Authority a return on such investment in lieu of interest;

(d)     short-term discount US Government Obligations;

(e)     certificates of deposit of a Qualified Financial Institution which are (i) fully collateralized at least one hundred and ten percent (110%) by marketable US Government Obligations marked to market at least monthly, or (ii) insured by the Federal Deposit Insurance Corporation;

(f)     banker's acceptances of banks whose senior obligations are rated in one of the top two short-term rating categories by at least two Rating Services and maintaining such rating during the term of such investment;

(g)     commercial paper of banks whose senior obligations are rated in one of the top two short-term rating categories by at least two Rating Services and maintaining such rating during the term of such investment;

(h)     tax-exempt securities exempt from federal arbitrage provisions applicable to investments of proceeds of the Authority's tax-exempt debt obligations, provided that such securities must be rated by at least two Rating Services (with one such Rating Service being S&P or Moody's) no less than AA (or equivalent) and no less than the rating on the Bonds, and provided, further, that any such securities must be in book-entry form through The Depository Trust Company or a comparable depository;

(i)     domestic money market mutual funds regulated by and in good standing with the Securities and Exchange Commission and rated in one of the highest two short-term rating categories by at least two Rating Services, including any such fund for which the Trustee or any of its affiliates provides any service including any service for which a fee may be paid;

(j)     Investment Agreements that are fully collateralized by Eligible Investments; and

(k)     domestic money market mutual funds regulated by and in good standing with the Securities and Exchange Commission that invest solely in investments of the types described in clauses (a), (b), (c) and/or (d) of this definition.

**"EMMA"** means the Electronic Municipal Market Access system operated by the Municipal Securities Rulemaking Board or any successor nationally recognized municipal securities information repositories recognized by the Securities and Exchange Commission for the purposes referred to in Rule 15c2-12, as promulgated by the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934, as amended.

**"Event of Default"** has the meaning given to such term in Section 11.01 hereof.

**"Fiscal Year"** means a period of twelve (12) consecutive months beginning July 1 of a calendar year and ending on June 30 of the next subsequent calendar year.

HTA_CONF 00016091

"**Fitch**" means Fitch Ratings and its successors.

"**Force Majeure Event**" shall mean any of the following events. to the extent that such event is beyond the reasonable control of the Authority; an act of God, riot, war, terrorist act, epidemic, pandemic, quarantine, civil commotion, earthquake or natural catastrophe.

"**General Reserve Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Government Entity**" means any agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the Commonwealth.

"**Initial Bonds**" means collectively (i) the Puerto Rico Highways and Transportation Authority Restructured Toll Revenue Bonds, Series 2022A, (ii) the Puerto Rico Highways and Transportation Authority Restructured Toll Revenue Bonds, Series 2022B, and (iii) the Puerto Rico Highways and Transportation Authority Restructured Toll Revenue Bonds, Series 2022C, each as authorized to be issued by the First Supplemental Trust Agreement, dated as of even date herewith, by and between the Authority and the Trustee.

"**Instructions**" has the meaning given to such term in Section 8.05.

"**Insured Bond**" means a Bond issued hereunder and designated as an Insured Bond in the Supplemental Trust Agreement authorizing the issuance thereof.

"**Interest Account**" means the account within the Debt Service Fund so designated, created and established pursuant to Section 5.01 hereof.

"**Interest Commencement Date**" means, with respect to any particular Convertible Capital Appreciation Bonds, the date specified in the Supplemental Trust Agreement providing for the issuance of such Convertible Capital Appreciation Bonds (which date must be prior to the maturity date for such Convertible Capital Appreciation Bonds) after which interest accruing on such Convertible Capital Appreciation Bonds shall thereafter be payable on Interest Payment Dates, with the first such payment being the applicable Interest Payment Date immediately succeeding such Interest Commencement Date.

"**Interest Payment Date**" means each January 1 and July 1; **provided, however,** that with respect to the Initial Bonds that are not issued as Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), such term also includes the Effective Date.

"**Investment Agreement**" means a repurchase agreement or other agreement for the investment of money with a Qualified Financial Institution.

"**KBRA**" means Kroll Bond Rating Agency Inc.  and its successors.

"**Majority in Interest**" means as of any particular date of calculation, the Holders of a majority of the Outstanding Bonds eligible to act on a matter, measured by (a) with respect to

- 13 -

Bonds, including Convertible Capital Appreciation Bonds after the applicable Interest Commencement Date with respect thereto and excluding Capital Appreciation Bonds and Convertible Capital Appreciation Bonds prior to the applicable Interest Commencement Date with respect thereto, the Principal amount thereof and (b) with respect to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), the Accreted Value of such Bonds as of such date; *provided, however,* that in the event there are no Bonds Outstanding hereunder, "Majority in Interest" means as of any particular date of calculation, the Holders of a majority of the Outstanding Subordinated Indebtedness eligible to act on a matter.

"**Maximum Annual Debt Service**" means the maximum Annual Debt Service with respect to any specified indebtedness for any Fiscal Year during the term of such indebtedness.

"**Monthly Disbursement Date**" means the first Business Day of each calendar month.

"**Moody's**" means Moody's Investor Service, Inc. and its successors.

"**Municipal Obligation**" means an obligation of any state or territory of the United States of America, any political subdivision of any state or territory of the United States of America, or any agency, authority, public benefit corporation or instrumentality of such state, territory or political subdivision.

"**Net Receipts**" means, for any particular period required to be calculated herein, the amount of Toll Receipts less Costs of Operation, Maintenance and Administration of the Toll Facilities for such period.

"**Operating Reserve Fund**" shall mean the Operating Reserve Fund established in Section 5.01.

"**Operating Reserve Requirement**" shall mean the amount set forth in the Disbursement Schedule delivered with respect to any Monthly Disbursement Date to pay Costs of Operation, Maintenance and Administration of the Toll Facilities for the third and fourth months immediately succeeding such Monthly Disbursement Date.

"**Outstanding**", when used in reference to Secured Obligations, means, as of a particular date (which may be a date on or after the final maturity date of such Secured Obligations), all such Secured Obligations authenticated and delivered hereunder and under any applicable Supplemental Trust Agreement except:

(a)     any Secured Obligations canceled by the Trustee at or before such date;

(b)     any Secured Obligations deemed to have been paid in accordance with Section 13.01 hereof;

(c)     any Bond canceled or paid pursuant to Section 3.09 and Section 4.06 hereof or any Bond in lieu of or in substitution for which another Bond, as applicable, shall have been authenticated and delivered pursuant to Article III, Section 4.06 or Section 10.06 hereof; and

- 14 -

HTA_CONF 00016093

(d)      for the purpose of calculating a Majority in Interest or a Quarter in Interest of Outstanding Secured Obligations hereunder, any Secured Obligation deemed to not be Outstanding in accordance with Section 10.05 hereof; and

(f) any Subordinated Indebtedness in lieu of or in substitution for which another Subordinated Indebtedness shall have been authenticated and delivered in accordance with the provisions of the Supplemental Trust Agreement pursuant to which such Subordinated Indebtedness was issued.

**"Oversight Board"** has the meaning given to such term in the Recitals.

**"Paying Agent"** means, with respect to the Secured Obligations of any Series, the Trustee and any other bank or trust company and its successor or successors, appointed pursuant to the provisions hereof or of a Supplemental Trust Agreement.

**"Person"** includes corporations, firms, associations, partnerships, joint ventures, joint stock companies, trusts, unincorporated organizations, or any government or any agency, instrumentality, or political subdivision thereof, as well as natural persons.

**"Plan of Adjustment"** means the plan of adjustment consummated in connection with the Authority's case under Title III of PROMESA, including the Confirmation Order entered by the Title III Court.

**"Pledged Revenues"** means (1) the Toll Receipts, (2) the right of the Authority to receive the Toll Receipts, (3) except for purposes of Section 7.01 of this Agreement, the proceeds derived from or related to any sale or disposition of, or any concession arrangement relating to all or any part of the Toll Facilities, and (4) investment income received on any amounts held in the Toll Receipts Fund, the Debt Service Fund, the Operating Reserve Fund, the Renewal and Replacement Fund, the Subordinated Indebtedness Fund and the General Reserve Fund. "Pledged Revenues" shall not include the proceeds of any gifts, grants, or other payments to the Authority from the United States of America, any state, territory, municipality or any public or private instrumentality, individual or entity that are not in the nature of a Toll.

**"Principal"** means collectively, the principal payment required to be made on a Secured Obligation on its final maturity date and each Sinking Fund Installment of a Secured Obligation due on a Principal Payment Date.

**"Principal Account"** means the account within the Debt Service Fund so designated, created and established pursuant to Section 5.01 hereof.

**"Principal Payment Date"** means each July 1.

**"Proceeding"** means any suit in equity, action at law or other judicial or administrative proceeding.

**"PROMESA"** has the meaning given to such term in the Recitals.

- 15 -

HTA_CONF 00016094

"**Qualified Financial Institution**" means any of the following entities that has an equity capital of at least $125,000,000 or whose obligations are unconditionally guaranteed by an affiliate or parent having an equity capital of at least $125,000,000:

(a)      a securities dealer, the liquidation of which is subject to the Securities Investors Protection Corporation or other similar corporation, and (i) that is on the Federal Reserve Bank of New York list of primary government securities dealers and (ii) whose senior unsecured long term debt is at the time an investment with it made rated by at least one Rating Service no lower than in the second highest rating category, or, in the absence of a rating on long term debt, whose short term debt is rated by at least one Rating Service no lower than in the highest rating category for such short term debt;

(b)      a bank, a trust company, a national banking association, a corporation subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956 or any successor provisions of law, a federal branch pursuant to the International Banking Act of 1978 or any successor provisions of law, a domestic branch or agency of a foreign bank which branch or agency is duly licensed or authorized to do business under the laws of any state or territory of the United States of America, a savings bank, a savings and loan association, an insurance company or association chartered or organized under the laws of any state of the United States of America, whose senior unsecured long term debt is at the time an investment with it made rated by at least one Rating Service no lower than in the second highest rating category, or, in the absence of a rating on long term debt, whose short term debt is rated by at least one Rating Service no lower than in the highest rating category for such short term debt;

(c)      a corporation affiliated with or which is a subsidiary of any entity described in (a) or (b) above or which is affiliated with or a subsidiary of a corporation which controls or wholly owns any such entity, whose senior unsecured long term debt is at the time an investment with it made rated by at least one Rating Service no lower than in the second highest rating category, or, in the absence of a rating on long term debt, whose short term debt is rated by at least one Rating Service no lower than in the highest rating category for such short term debt;

(d)      the Government National Mortgage Association or any successor thereto, the Federal National Mortgage Association or any successor thereto, or any other federal agency or instrumentality approved by the Authority; or

(e)      a corporation whose obligations, including any investments of any money held hereunder purchased from such corporation, are insured by an insurer that meets the applicable rating requirements set forth above.

"**Quarter in Interest**" means as of any particular date of calculation, the Holders of 25% or more of the Outstanding Bonds eligible to act on a matter, measured by (a) with respect to Bonds, including Convertible Capital Appreciation Bonds after the applicable Interest Commencement Date with respect thereto and excluding Capital Appreciation Bonds and Convertible Capital Appreciation Bonds prior to the applicable Interest Commencement Date with respect thereto, the Principal amount thereof and (b) with respect to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), the Accreted Value of such Bonds as of

- 16 -

HTA_CONF 00016095

such date; *provided, however,* that in the event there are no Bonds Outstanding hereunder, "Quarter in Interest" means as of any particular date of calculation, the Holders of 25% or more of Outstanding Subordinated Indebtedness eligible to act on a matter.

"**Rating Confirmation**" means the written confirmation of each Rating Service to the effect that the rating assigned, without regard to any insurance or other credit enhancement, to each of the Secured Obligations rated by such Rating Service will remain unchanged (without regard to changes in any rating outlook) and will not be withdrawn, suspended or reduced as a consequence of some act or occurrence.

"**Rating Service**" means as of any particular date of determination each of Fitch, KBRA, Moody's and S&P, or their respective successors, or any other nationally recognized statistical rating organization identified as such by the Securities and Exchange Commission.

"**Record Date**" means, when used in relation to the Bonds of a Series, the date specified as the record date for such Bonds in the Supplemental Trust Agreement authorizing such Bonds.

"**Redemption Price**" when used with respect to a Bond, means the Principal amount of such Bond plus the applicable premium, if any, payable upon redemption prior to maturity thereof pursuant hereto or to the applicable Supplemental Trust Agreement.

"**Refunding Bonds**" means any of the Bonds issued to refund, refinance or defease other Bonds in compliance with the provisions of Section 2.04(a) hereof.

"**Refunding Subordinated Indebtedness**" means any Subordinated Indebtednss issued to refund, refinance or defease Secured Obligations in compliance with the provisions of Section 2.04(c) hereof.

"**Renewal and Replacement Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Renewal and Replacement Expenses**" means the costs of any replacement or renewal of capital assets or facilities of the Toll Facilities or unusual or extraordinary maintenance or repairs of the Toll Facilities.

"**Renewal and Replacement Requirement**" means the amount, if any, for the then-current Fiscal Year in the Annual Budget.

"**Reporting Agreement**" means the reporting agreement entered into on or around the date hereof substantially in the form attached hereto.

"**Required Deposits**" means for any Fiscal Year, an amount equal to the sum of (i) Costs of Operation, Maintenance and Administration of the Toll Facilities for such Fiscal Year; (ii) Annual Debt Service on Bonds for such Fiscal Year; (iii) Trustee Expenses Cap; (iv) deposit to Arbitrage Rebate Fund, if any, for such Fiscal Year; and (v) Toll Receipts required to be deposited in the Renewal and Replacement Fund in order to satisfy the Renewal and Replacement Requirement for such Fiscal Year.

HTA_CONF 00016096

"**Restructuring Transaction**" means the transactions contemplated by, or in furtherance of, the Plan of Adjustment.

"**S&P**" means S&P Global Ratings and its successors.

"**Secretary of Treasury**" means the Secretary of the Treasury of the Puerto Rico Department of Treasury.

"**Secured Obligations**" means collectively, all Bonds and Subordinated Indebtedness.

"**Serial Bonds**" means the Secured Obligations so designated in a Supplemental Trust Agreement.

"**Series**" means (i) with respect to Bonds, all of the Bonds authenticated and delivered on original issuance and pursuant hereto and to the Supplemental Trust Agreement authorizing such Bonds as a separate Series of Bonds, and any Bonds thereafter authenticated and delivered in lieu of or in substitution for such Bonds pursuant to Article III, Section 4.06 or Section 10.06 hereof, regardless of variations in maturity, interest rate, Sinking Fund Installments or other provisions, and (ii) with respect to Subordinated Indebtedness, all of the Subordinated Indebtedness authenticated and delivered on original issuance and pursuant hereto and to the Supplemental Trust Agreement authorizing such Subordinated Indebtedness as a separate Series of Subordinated Indebtedness, and any Subordinated Indebtedness thereafter authenticated and delivered in lieu of or in substitution for such Subordinated Indebtedness pursuant to the Supplemental Trust Agreement authorizing such Subordinated Indebtedness, regardless of variations in maturity, interest rate, Sinking Fund Installments or other provisions.

"**Sinking Fund Installment**" means, as of any date of computation, the amount of money required to be paid on a single future July 1 for the retirement of any Secured Obligations which mature after said future July 1, but does not include any amount payable by the Authority by reason only of the maturity of a Secured Obligation.

"**Subordinated Indebtedness**" means the Commonwealth Note and any indebtedness of the Authority authorized and issued as Subordinated Indebtedness pursuant to Section 2.01 and the applicable Supplemental Trust Agreement, including indebtedness issued in compliance with Section 2.02 and 2.04(c) or 2.04(d); *provided, however,* that in no event shall Subordinated Indebtedness include Bonds.  Notwithstanding any contrary provision in this Trust Agreement, any Subordinated Indebtedness shall be governed in all respects by Article XII of this Trust Agreement.

"**Subordinated Indebtedness Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Subordinated Payment Default**" means a failure by the Authority to pay when due, the principal of or interest on Subordinated Indebtedness.

"**Supplemental Trust Agreement**" means any Trust Agreement of the Authority amending or supplementing this Trust Agreement or any prior Supplemental Trust Agreement executed and becoming effective in accordance with the terms and provisions of Article IX hereof.

HTA_CONF 00016097

**"Tax Exempt Bond"** means any Secured Obligation as to which Transaction Counsel has rendered an opinion to the effect that interest on it is excluded from gross income for purposes of federal income taxation.

**"Term Bond"** means a Secured Obligation Bond so designated in a Supplemental Trust Agreement and payable from Sinking Fund Installments.

**"Testing Period**" has the meaning given to such term in Section 2.01(b)(i).

**"Title III Cases"** has the meaning given to such term in the Recitals.

**"Title III Court"** has the meaning given to such term in the Recitals.

"**Toll Facilities**" means collectively, PR-20, PR-52, PR-53 and PR-66.

**"Tolls"** means tolls, fares, incomes, receipts, special fees or permit fees, or other charges imposed by or on behalf of the Authority on the owners, lessors, lessees or operators of motor vehicles for the operation of or the right to operate those vehicles on the Toll Facilities, and fines and penalties and interest thereon collected as a result of a failure to pay any such amount.

"**Toll Receipts**" means (i) all cash receipts and automated or electric payments or credits from Tolls (including by way of the Auto-Expresso system) and (ii) the proceeds of any business interruption insurance relating to the Toll Facilities and of any other insurance which insures against loss of Toll Receipts.

"**Toll Receipts Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Toll Schedule**" has the meaning given to such term in Section 7.01(d) of this Trust Agreement.

**"Traffic Consultant"** means any traffic and revenue consultant or firm of traffic and revenue consultants of national recognition with expertise and experience regarding the operation, management and financing of, and the collection of revenues from, bridges and toll roads, selected and employed by the Authority from time to time, provided, however, that for so long as the Financial Oversight and Management Board for Puerto Rico remains in existence, the Authority shall select the Traffic Consultant from a list of at least three (3) candidates provided to the Authority by the Financial Oversight and Management Board.

**"Traffic Consultant Study"** has the meaning given to such term in Section 7.01(d) of this Trust Agreement.

**"Transaction Counsel"** means a nationally recognized bond counsel as may be selected by the Authority for a specific purpose hereunder.

**"Trust Agreement"** means this Master Trust Agreement as amended or supplemented from time to time by Supplemental Trust Agreements in accordance with the terms and provisions hereof.

- 19 -

"**Trust Estate**" has the meaning given to such term in the granting clause of this Trust Agreement.

"**Trustee**" means the bank or trust company appointed as Trustee for the Secured Obligations pursuant to Section 8.01 hereof and having the duties, responsibilities and rights provided for herein, and its successor or successors and any other bank or trust company which may at any time be substituted in its place pursuant hereto.

"**Trustee Expenses**" means the permitted costs, fees and expenses of the Trustee arising out of or incurred in connection with carrying out and administering its duties hereunder, but excludes the Trustee's rights to indemnification, including the fees and expenses incurred in connection with any indemnified claim.

"**Trustee Expense Fund**" means the fund so designated, created and established pursuant to Section 5.01 hereof.

"**Trustee Expenses Cap**" means an amount not to exceed $100,000.00.

"**US Government Obligation**" means (a) a direct obligation of, or an obligation the timely payment of the principal of and interest on which is guaranteed by, the United States of America, the Federal Home Loan Mortgage Corporation, the Federal National Mortgage Association, Federal Home Loan Banks, the Government National Mortgage Association, or the Federal Farm Credit System and (b) an obligation of the United States of America which has been stripped by the United States Department of the Treasury itself or by any Federal Reserve Bank (not including "CATS," "TIGRS" and "TRS").

"**Valuation Date**" means with respect to any Capital Appreciation Bond or Convertible Capital Appreciation Bond (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bond), each January 1 and July 1; **provided, however,** that with respect to the Initial Bonds that are issued as Capital Appreciation Bonds or Convertible Capital Appreciation Bonds, such term also includes the Effective Date.

**Section 1.03   Rules of Construction.**   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations and corporations, including public bodies as well as natural persons.

The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation". The terms "hereby," "hereof," "hereto," "herein," "hereunder," and any similar terms, as used in this Trust Agreement, refer to this Trust Agreement. All references to Articles and Sections in this Trust Agreement refer to the Articles and Sections hereof unless otherwise expressly stated. All references to articles and sections of other documents or statutes shall use the numbers of the applicable articles or sections in effect as of the date hereof.

"**$**" and "**dollars**" each refer to United States dollars, or such other money of the United States of America that at the time of payment is legal tender for payment of public and private debts.

- 20 -

HTA_CONF 00016099

## ARTICLE II.

## AUTHORIZATION AND ISSUANCE OF SECURED OBLIGATIONS

**Section 2.01   Authorization of Secured Obligations.**   The Secured Obligations hereby authorized to be issued and, in accordance with, and as provided by Section ___ of the Confirmation Order are secured by a first-priority lien on and first-priority security interest in the Trust Estate for the payment of the Principal and Redemption Price of and interest on all Outstanding Secured Obligations and, which Section ___ of the Confirmation Order provides shall be deemed automatically perfected as of the Effective Date and shall be valid, binding, perfected and enforceable against all Persons having claims of any kind in tort, contract or otherwise against the Authority or its assets irrespective of whether such Persons have notice of such first-priority lien or first-priority security interest.

There are hereby authorized to be issued Bonds of the Authority to be designated as "Restructured Toll Revenue Senior Bonds," which, in accordance with, and as provided by Section ___ of the Confirmation Order are secured by a senior lien on and senior security interest in the Trust Estate for the payment of the Principal and Redemption Price of and interest on all Outstanding Bonds, which lien and security interest shall in all respects be senior and superior to the subordinate lien and security interest granted to the Holders of the Subordinated Indebtedness. The Bonds shall be special obligations of the Authority payable solely from the Trust Estate in the manner provided herein.

There is further hereby authorized to be issued Subordinated Indebtedness of the Authority to be designated as "Restructured Toll Revenue Subordinated Indebtedness," which, in accordance with, and as provided by Section ___ of the Confirmation Order are secured by a subordinate lien on and subordinate security interest in the Trust Estate for the payment of the Principal and Redemption Price of and interest on all Outstanding Subordinated Indebtedness, which lien and security interest shall in all respects be subject to and subordinate to the senior lien and senior security interest on the Trust Estate granted to the Holders of Outstanding Bonds.   The Subordinated Indebtedness shall be special obligations of the Authority payable solely from the Trust Estate in the manner provided herein.   Notwithstanding any contrary provision in this Trust Agreement, any Subordinated Indebtedness shall be governed in all respects by Article XII of this Trust Agreement

The aggregate principal amount of Secured Obligations which may be executed, authenticated and delivered is not limited except as provided hereby and the terms and conditions authorized by the Authority and set forth in the Ancillary Agreements.

The Secured Obligations may, if and when authorized by the Authority pursuant hereto and to one or more Supplemental Trust Agreements, be issued in one or more Series and the Secured Obligations of each Series shall contain an appropriate Series designation.

The Secured Obligations shall not constitute a debt of the Commonwealth or of any Government Entity other than the Authority.   The Secured Obligations shall not constitute indebtedness or an obligation of the Commonwealth or any subdivision thereof within the purview of any constitutional or statutory limitation or provision or a charge against the general credit or

- 21 -

taxing powers, if any, of any of them but shall be payable solely from the Trust Estate, including, particularly, the Pledged Revenues, as set forth herein. The Authority has no taxing power.

     **Section 2.02  Provisions for Issuance of Secured Obligations.**  The Authority shall issue Secured Obligations under this Trust Agreement in accordance with the terms of this Trust Agreement. The Secured Obligations are permitted to be issued as provided herein. The issuance of the Initial Bonds, the Commonwealth Note and each Series of Additional Bonds, Refunding Bonds and Subordinated Indebtedness permitted to be issued hereunder shall be authorized by a Supplemental Trust Agreement or Supplemental Trust Agreements. The Secured Obligations of a Series authorized to be issued shall be executed by the Authority and delivered to the Trustee. Such Secured Obligations shall from time to time and in such amounts as directed by the Authority be authenticated by the Trustee and by it delivered to or upon the order of the Authority upon receipt of the consideration therefor and upon delivery to the Trustee of:

     (a)    A copy of this Trust Agreement and the Supplemental Trust Agreement authorizing such Secured Obligations, certified by an Authorized Officer of the Authority;

     (b)    A written order as to the delivery of such Secured Obligations, signed by an Authorized Officer of the Authority, describing the Secured Obligations to be delivered and the purpose or purposes for which the Secured Obligations are being issued, designating the person(s) to whom such Secured Obligations are to be delivered and stating the consideration for such Secured Obligations (other than with respect to the Initial Bonds and the Commonwealth Note);

     (c)    A certificate of an Authorized Officer of the Authority stating that the Authority is not, and, as a result of the issuance of such Secured Obligations, will not:

          (i)    be, in default in the performance of any of the covenants, conditions, agreements or provisions contained herein or in the Ancillary Agreements (to the extent affecting the issuance of the Secured Obligations), or stating that after the issuance thereof the Authority shall no longer be in default in the performance of any of the covenants, conditions, agreements or provisions contained herein; and

          (ii)    violate the restrictions on the issuance of Secured Obligations contained in the Ancillary Agreements;

     (d)    A certificate of an Authorized Officer of the Authority demonstrating compliance with applicable provision of Section 2.04 of this Trust Agreement (other than with respect to the Initial Bonds and the Commonwealth Note);

     (e)    A certified copy of the resolution of the board of AAFAF approving the issuance of the Series of Secured Obligations by the Authority; *provided, however*, that if AAFAF is no longer in existence and has no successor, or if its successor is not required to approve the issuance of the applicable Series of Secured Obligations, then no such resolution shall be required; and

     (f)    An opinion of Transaction Counsel to the effect that (i) this Trust Agreement and the applicable Supplemental Trust Agreement authorizing the Series of Secured Obligations have been duly and lawfully authorized, executed and delivered by the Authority; (ii) this Trust Agreement and the applicable Supplemental Trust Agreement are in full force and effect and are

- 22 -

HTA_CONF 00016101

valid and binding upon the Authority and enforceable in accordance with their terms; and (iii) the Authority is duly authorized and entitled to issue such Series of Secured Obligations and, upon the execution and delivery thereof and upon authentication by the Trustee, such Series of Secured Obligations will be duly and validly issued and will constitute valid and binding special obligations of the Authority entitled to the benefits of this Trust Agreement; *provided, however,* that such opinion of Transaction Counsel may rely on the determinations of the Title III Court as set forth in the Confirmation Order; *provided, further*, that such opinion of Transaction Counsel may be qualified to the extent that enforceability of rights and remedies may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or as to the availability of equitable remedies or any particular remedy.

Section 2.03 **Supplemental Trust Agreements.** Each Supplemental Trust Agreement authorizing the issuance of a Series of Secured Obligations shall specify the following:

(a) The authorized principal amount of such Series of Secured Obligations;

(b) The date or dates of the Secured Obligations, the maturity date or dates and principal amounts of each maturity of the Secured Obligations of such Series, the amount and date of each Sinking Fund Installment, as applicable, and which Secured Obligations of such Series are Serial Bonds or Term Bonds, if any, and the Record Date or Record Dates of the Secured Obligations of such Series;

(c) The interest rate or rates, if any, on the Secured Obligations of such Series, which may include Capital Appreciation Bonds, Convertible Capital Appreciation Bonds or Current Interest Bonds, and the first date on which interest on the Secured Obligations of such Series shall be payable; *provided, however,* in no event shall a Holder of Secured Obligations be entitled to the payment of a penalty for a payment default (including, without limitation, penalty interest and any interest or other amounts due thereon) other than overdue interest that accrues at the regular non-penalty rate of the applicable Secured Obligation or interest accruing on such overdue interest at the regular non-penalty rate of the applicable Secured Obligation;

(d) If all or a portion of the Secured Obligations of such Series are Capital Appreciation Bonds or Convertible Capital Appreciation Bonds, the Valuation Dates for such Secured Obligations and the Accreted Value on each such Valuation Date;

(e) The denomination or denominations of and the manner of numbering and lettering of the Secured Obligations of such Series;

(f) The Redemption Price or Redemption Prices, if any, and, subject to Article IV hereof, the redemption terms, if any, for the Secured Obligations of such Series;

(g) Provisions for the sale or exchange of the Secured Obligations of such Series and for the delivery thereof;

(h) The form of the Secured Obligations of such Series and the form of the Trustee's certificate of authentication thereon, and whether any Secured Obligations of such Series are to be issued as Book Entry Bonds and the Depository therefor;

- 23 -

HTA_CONF 00016102

(i)     Directions for the application of the proceeds of the Secured Obligations of such Series, including the amount of proceeds expected to be applied to each specific Toll Facility;

(j)     If all or a portion of such Secured Obligations will be issued as Insured Bonds, the terms and conditions for payment of such Insured Bonds under the applicable Bond Insurance Policy; ***provided, however,*** in no event shall the Holder of Insured Bonds or the Bond Insurer be entitled to the payment of a penalty for a payment default (including, without limitation, penalty interest and any interest or other amounts due thereon);

(k)     If Subordinated Indebtedness, the general terms and provisions of such Subordinated Indebtedness, including provisions relating to the redemption thereof; and

(l)     Any other provisions deemed advisable by an Authorized Officer of the Authority not in conflict with the provisions hereof or of any Ancillary Agreement.

**Section 2.04   Additional Indebtedness.** Following the issuance of the Initial Bonds and the incurrence of the Commonwealth Note, the Authority may not incur any additional indebtedness secured by a lien on the Trust Estate, except that the Authority may issue or incur:

(a)     Refunding Bonds, provided that there is delivered to the Trustee a certificate of an Authorized Officer of the Authority dated the date of issuance of such Refunding Bonds demonstrating that upon the issuance of such Series of Refunding Bonds, the Annual Debt Service on Outstanding Bonds in the then-current and each future Fiscal Year immediately after the issuance of the Refunding Bonds shall be equal to or less than the Annual Debt Service due on Outstanding Bonds in the then-current and each future Fiscal Year immediately prior to such issuance;

(b)     Additional Bonds to fund new capital projects of the Authority relating to the Toll Facilities, or to refund, refinance or defease Secured Obligations Outstanding hereunder, provided that there is delivered to the Trustee a certificate dated the date of initial issuance of such Additional Bonds, signed by an Authorized Officer of the Authority and approved by the Consulting Engineer and Traffic Consultant, setting forth:

(i)     (A) the amount of the Net Receipts for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of issuance of such Additional Bonds; provided that such amount shall be adjusted to give effect for such twelve (12) month period to any increases or decreases in Toll rates for which all legal conditions to effectiveness have been met on the date of issuance of such Additional Bonds; (B) the Maximum Annual Debt Service on the Bonds to remain Outstanding after the issuance of such Additional Bonds (including the Additional Bonds to be issued); (C) the Maximum Annual Debt Service on the Secured Obligations to remain Outstanding after the issuance of such Additional Bonds (including the additional Secured Obligations to be issued); (D) the percentage derived by dividing the amount in item (A) above by the amount shown in item (B) above, which percentage shall not be less than 120%; and (E) the percentage derived by dividing the amount in item (A) above by the amount shown in item (C) above, which percentage shall not be less than 115%; and

- 24 -

HTA_CONF 00016103

(ii)      (A) the amount of Net Receipts projected by the Traffic Consultant to be received by the Authority during the current Fiscal Year and each of the next succeeding five full Fiscal Years (the "**Testing Period**") following the issuance of such Additional Bonds (including the Secured Obligations to be issued); (B) the Annual Debt Service on the Additional Bonds to remain Outstanding after the issuance of such Additional Bonds (including the Additional Bonds to be issued) for the Testing Period; (C) the Annual Debt Service on the Secured Obligations to remain Outstanding after the issuance of such additional Secured Obligations (including the Secured Obligations to be issued) for the Testing Period; (D) the percentages derived by dividing the amount in item (A) above by the amounts shown in item (B) above, which percentages shall not be less than 120% in any Fiscal Year within the Testing Period; and (E) the percentages derived by dividing the amount in item (A) above by the amounts shown in item (C) above, which percentages shall not be less than 115% in any Fiscal Year within the Testing Period.

(c)      Refunding Subordinated Indebtedness, provided that there is delivered to the Trustee a certificate of an Authorized Officer of the Authority dated the date of issuance of such Refunding Subordinated Indebtedness demonstrating that upon the issuance of such Series of Refunding Subordinated Indebtedness, the Annual Debt Service on Outstanding Subordinated Indebtedness in the then-current and each future Fiscal Year immediately after the issuance of the Refunding Subordinated Indebtedness shall be equal to or less than the Annual Debt Service due on Outstanding Subordinated Indebtedness in the then-current and each future Fiscal Year immediately prior to such issuance; and

(d)      Subordinated Indebtedness to fund new capital projects of the Authority relating to the Toll Facilities, or to refund, refinance or defease Secured Obligations Outstanding hereunder, provided that there is delivered to the Trustee a certificate dated the date of initial issuance of such additional Subordinated Indebtedness, signed by an Authorized Officer of the Authority and approved by the Consulting Engineer and Traffic Consultant, setting forth:

(i)      (A) the amount of the Net Receipts for any twelve (12) consecutive calendar months out of the eighteen (18) calendar months immediately preceding the date of issuance of such additional Subordinated Indebtedness; provided that such amount shall be adjusted to give effect for such twelve (12) month period to any increases or decreases in Toll rates for which all legal conditions to effectiveness have been met on the date of issuance of such Subordinated Indebtedness; (B) the Maximum Annual Debt Service on the Secured Obligations to remain Outstanding after the issuance of such additional Subordinated Indebtedness (including Secured Obligations to be issued); and (C) the percentage derived by dividing the amount in item (A) above by the amount shown in item (B) above, which percentage shall not be less than 115%; and

(ii)      (A) the amount of Net Receipts projected by the Traffic Consultant to be received by the Authority during the Testing Period following the issuance of such additional Subordinated Indebtedness (including the Secured Obligations to be issued); (B) the Annual Debt Service on the Secured Obligations to remain Outstanding after the issuance of such additional Subordinated Indebtedness (including Secured Obligations to be issued) for the Testing Period and (C) the percentages derived by dividing the amount

- 25 -

HTA_CONF 00016104

in item (A) above by the amounts shown in item (B) above, which percentages shall not be less than 115% in any Fiscal Year within the Testing Period.

## ARTICLE III.

## GENERAL TERMS AND PROVISIONS OF BONDS

**Section 3.01  Place and Medium of Payment.**  The Bonds shall be payable, with respect to interest, Principal and Redemption Price, in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts. Except in the case of Book Entry Bonds (as provided in Section 3.10 hereof) or as otherwise provided in Section 4.06 hereof, upon presentation and surrender of Bonds, the Principal or Redemption Price of such Bonds that is due and payable shall be payable at the designated corporate trust office of the Trustee.  Payments on the Bonds shall be paid by check mailed to the registered owner thereof at the address thereof as it appears on the registry books of the Authority or if authorized by the Supplemental Trust Agreement authorizing a Series of Bonds by wire transfer to such registered owner of the Bonds of such Series.  For purposes of this Section, interest is payable on an Interest Payment Date to the registered owner of a Bond at the close of business on the Record Date for such Bond.  All payments of Principal or Redemption Price of or interest on Bonds shall specify the CUSIP number or numbers of the Bonds in connection with which such payment is made.

The Bonds of each Series shall be issued in the form of fully registered Bonds without coupons.

Bonds of each Series issued prior to the first Interest Payment Date thereof shall be dated as of the date specified in the Supplemental Trust Agreement authorizing the issuance thereof. Bonds of each Series issued on or subsequent to the first Interest Payment Date thereof shall be dated as of the Interest Payment Date immediately preceding the date of authentication thereof by the Trustee, unless such date of authentication shall be an Interest Payment Date, in which case they shall be dated as of such date of authentication; *provided, however,* that if, as shown by the records of the Trustee, interest on the Bonds of any Series has not been paid as of the Interest Payment Date immediately preceding the date of authentication thereof by the Trustee, the Bonds of such Series issued in lieu of Bonds surrendered for transfer or exchange shall be dated as of the date through which interest has been paid in full on the Bonds surrendered or, if no interest has been paid on the Bonds surrendered since their authentication, as of the date of authentication of the surrendered Bonds.  Bonds of each Series shall bear interest from (and including) their date and shall bear interest on overdue interest at the interest rate of such Bonds.  For the avoidance of doubt, if any Principal of, Redemption Price or accrued interest on, a Bond is not paid when due, such Principal, Redemption Price and interest shall remain due and payable until paid.

All Bonds of each Series shall mature and/or have Sinking Fund Installments on July 1 of the year or years fixed by the Supplemental Trust Agreement authorizing the issuance of such Bonds.  Interest on all Bonds (other than Capital Appreciation Bonds or Convertible Capital Appreciation Bonds) shall be payable on each Interest Payment Date of each year.  The first installment of interest due on the Bonds of a Series may be for such period as the Authority shall fix in the Supplemental Trust Agreement authorizing the issuance thereof.

- 26 -

**Section 3.02   Legends.**   The Bonds may contain, or have endorsed thereon, such provisions, specifications and descriptive words not inconsistent herewith or with any Supplemental Trust Agreement authorizing the same, as may be necessary or desirable and as may be determined by the Authority prior to their delivery.  The Initial Bonds shall distinctively bear the following legend: "DETERMINED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO TO BE VALID, LEGALLY BINDING, AND ENFORCEABLE PURSUANT TO THE JUDGMENT AND CONFIRMATION ORDER, ENTERED ON THE ____ DAY OF _____, 2022."

**Section 3.03   CUSIP Numbers.**   The Authority shall provide for the assignment of CUSIP numbers for all Bonds and cause such CUSIP numbers to be printed thereon, and the Trustee shall use such CUSIP numbers in notices of redemption and on all checks payable to Bondholders as a convenience to Bondholders; *provided, however,* that any such notice may state that no representation is made as to the correctness of such number either as printed on such Bonds or as contained in any notice of redemption, and that an error in a CUSIP number as printed on such Bond or as contained in any notice of redemption shall not affect the validity of the proceedings for redemption.  The Authority shall promptly notify the Trustee of any change in the CUSIP numbers assigned to any Bond of which the Authority has knowledge.  The Trustee shall deliver a copy of the foregoing notice to the Holders promptly following its receipt thereof.

**Section 3.04   Execution and Authentication.**   The Bonds shall be executed in the name of the Authority by the manual or facsimile signature of an Authorized Officer thereof, and attested by the manual or facsimile signature of the Secretary or an Assistant Secretary of the board of the Authority or other Authorized Officer of the Authority, or in such other manner as may be permitted by law.  In case any one or more of the officers or employees who shall have signed any of the Bonds shall cease to be such officer or employee before the Bonds so signed shall have been actually authenticated and delivered by the Trustee, such Bonds may, nevertheless, be delivered as provided herein, and may be issued as if the persons who signed such Bonds had not ceased to hold such offices or be so employed.  Any Bond may be signed on behalf of the Authority by such persons as at the actual time of the execution of such Bond shall be duly authorized or hold the proper office in or be employed by, the Authority, although at the date of the Bonds such persons may not have been so authorized or have held such office or employment.

The Bonds of each Series shall bear thereon a certificate of authentication, in the form set forth in the Supplemental Trust Agreement authorizing the issuance of such Bonds, executed manually by the Trustee.  Only such Bonds as shall bear thereon such executed certificate of authentication shall be entitled to any right or benefit hereunder and no Bond shall be valid or obligatory for any purpose until such certificate of authentication shall have been duly executed by the Trustee.  Such certificate of the Trustee upon any Bond executed on behalf of the Authority shall be conclusive evidence that the Bond so authenticated has been duly authenticated and delivered hereunder and that the Holder thereof is entitled to the benefits hereof.

**Section 3.05   Interchangeability of Bonds.**   Bonds, upon surrender thereof at the designated corporate trust office of the Trustee with a written instrument of transfer satisfactory to the Trustee, duly executed by the registered owner or his attorney duly authorized in writing, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of Bonds of the same Series, maturity and tenor of any other authorized denominations.

- 27 -

**Section 3.06    Transfer and Registry.**  So long as any of the Bonds remain Outstanding, the Authority shall maintain and keep, or cause to be maintained and kept, at the designated corporate trust office of the Trustee, books for the registration and transfer of Bonds; and, upon presentation thereof for such purpose at said office, the Authority shall register or cause to be registered therein, and permit to be transferred thereon, under such reasonable regulations as it or the Trustee may prescribe, any Bond entitled to registration or transfer.  So long as any of the Bonds remain Outstanding, the Authority shall make all necessary provisions to permit the exchange of Bonds at the designated corporate trust office of the Trustee.

**Section 3.07    Transfer of Bonds.**  Each Bond shall be transferable only upon the books of the Authority, which shall be kept for that purpose at the designated corporate trust office of the Trustee, by the registered owner thereof in person or by his attorney duly authorized in writing, upon surrender thereof together with a written instrument of transfer satisfactory to the Trustee duly executed by the registered owner or his duly authorized attorney and the payment of a charge sufficient to reimburse the Authority or the Trustee for any tax, fee or other governmental charge required to be paid with respect to such transfer.  Upon the transfer of any such Bond, the Authority shall cause to be issued in the name of the transferee a new Bond or Bonds of the same aggregate principal amount, Series, maturity and tenor as the surrendered Bond.

The transferor shall provide or cause to be provided to the Trustee all information necessary to allow the Trustee to comply with any applicable tax reporting obligations, including without limitation any cost basis reporting obligations under Section 6045 of the Code.  The Trustee may rely on the information provided to it and shall have no responsibility to verify or ensure the accuracy of such information.

The Authority and the Trustee may deem and treat the person in whose name any Outstanding Bond shall be registered upon the books of the Authority as the absolute owner of such Bond, whether such Bond shall be overdue or not, for the purpose of receiving payment of, or on account of, the Principal or Redemption Price of and, subject to the provisions of Section 3.01 hereof with respect to Record Dates, interest on such Bond and for all other purposes whatsoever, and all such payments so made to any such registered owner or upon his order shall be valid and effectual to satisfy and discharge the liability upon such Bond to the extent of the sum or sums paid, and neither the Authority nor the Trustee shall be affected by any notice to the contrary.  The Authority agrees to indemnify and save the Trustee harmless from and against any and all loss, cost, charge, expense, judgment or liability incurred by it, acting in good faith and without negligence hereunder, in so treating such registered owner.

**Section 3.08    Regulations with Respect to Exchanges and Transfers.**  In all cases in which the privilege of exchanging Bonds or transferring Bonds is exercised, the Authority shall execute and the Trustee shall authenticate and deliver Bonds in accordance with the provisions hereof.  All Bonds surrendered in any such exchanges or transfers shall forthwith be canceled by the Trustee.  For every such exchange or transfer of Bonds, whether temporary or definitive, the Authority or the Trustee may make a charge sufficient to reimburse it for any tax, fee or other governmental charge required to be paid with respect to such exchange or transfer, which sum or sums shall be paid by the person requesting such exchange or transfer as a condition precedent to the exercise of the privilege of making such exchange or transfer.  Notwithstanding any other provisions hereof, the cost of preparing each new Bond upon each exchange or transfer, and any

- 28 -

other expenses of the Authority or the Trustee incurred in connection therewith, shall be paid by the person requesting such exchange or transfer.  The Authority shall not be obliged to make, or cause to be made, any exchange or transfer of Bonds of any Series during the period beginning on the Record Date for such Bonds immediately preceding an Interest Payment Date on such Bonds and ending on such Interest Payment Date, or, in the case of any proposed redemption of Bonds of such Series, after the date immediately preceding the date notice of redemption has been mailed.

**Section 3.09   Bonds Mutilated, Destroyed, Lost or Stolen.**  In case any Bond shall become mutilated or be destroyed, lost or stolen, the Authority in its discretion may execute, and upon its request the Trustee shall authenticate and deliver, a new Bond of like Series, maturity, tenor and principal amount as the Bond so mutilated, destroyed, lost or stolen, in exchange and substitution for the mutilated, destroyed, lost or stolen Bond, upon surrender and cancellation of such mutilated Bond or in lieu of and substitution for such Bond so destroyed, lost or stolen, upon filing with the Authority evidence satisfactory to the Authority and the Trustee that such Bond has been destroyed, lost or stolen and proof of ownership thereof, and upon furnishing the Authority and the Trustee with indemnity satisfactory to them and complying with such other reasonable regulations as the Authority and the Trustee may prescribe and paying such expenses as the Authority and the Trustee may incur in connection therewith.  All Bonds so surrendered to the Trustee shall be canceled by it and evidence of such cancellation shall be given to the Authority. In case any Bond which has matured or is about to mature shall have become mutilated or have been destroyed, lost or stolen, the Authority may, instead of issuing a Bond in exchange or substitution therefor, pay or authorize the payment of such mutilated Bond upon the surrender on or after the maturity date thereof, or authorize the payment of such destroyed, lost or stolen Bond, upon the Holder thereof filing evidence satisfactory to the Authority and the Trustee that such Bond has been destroyed, lost or stolen and proof of ownership thereof, and upon furnishing the Authority and the Trustee with indemnity satisfactory to them and complying with such other reasonable regulations as the Authority and the Trustee may prescribe and paying such expenses as the Authority and the Trustee may incur in connection therewith.

**Section 3.10   Book Entry Bonds.**  Anything herein to the contrary notwithstanding, Bonds may be authorized and issued as Book Entry Bonds in accordance with the Supplemental Trust Agreement authorizing such Bonds.

For all purposes of this Trust Agreement the Holder of a Book Entry Bond shall be the Depository therefor and neither the Authority nor the Trustee shall have responsibility or any obligation to the beneficial owner of such Bond or to any direct or indirect participant in such Depository.  Without limiting the generality of the foregoing, neither the Authority nor the Trustee shall have any responsibility or obligation to any such participant or to the beneficial owner of a Book Entry Bond with respect to (a) the accuracy of the records of the Depository or any participant with respect to any beneficial ownership interest in such Bond, (b) the delivery to any participant of the Depository, the beneficial owner of such Bond or any other person, other than the Depository, of any notice with respect to such Bond, including any notice of the redemption thereof, or (c) the payment to any participant of the Depository, the beneficial owner of such Bond or any other person, other than the Depository, of any amount with respect to the Principal or Redemption Price of, or interest on, such Bond.  The Authority and the Trustee may treat the Depository therefor as the absolute owner of a Book Entry Bond for the purpose of (x) payment of the Principal or Redemption Price of and interest on such Bond, (y) giving notices of redemption

- 29 -

HTA_CONF 00016108

and of other matters with respect to such Bond, (z) registering transfers with respect to such Bond, and for all other purposes whatsoever.  The Trustee shall pay all Principal or Redemption Price of and interest on such Bond only to or upon the order of the Depository, and all such payments shall be valid and effective to fully satisfy and discharge the Authority's obligations with respect to such Principal or Redemption Price and interest to the extent of the sum or sums so paid.  No person other than the Depository shall receive a Bond or other instrument evidencing the Authority's obligation to make payments of the principal or Redemption Price thereof and interest thereon.

Anything herein to the contrary notwithstanding, payment of the Redemption Price of a Book Entry Bond which is redeemed in part prior to maturity may be paid to the Depository by wire transfer without surrender of such Bond to the Trustee; *provided, however,* that the Trustee shall maintain records as to each such payment and of the principal amount of such Bond Outstanding, which shall be binding on the Authority and the Holders from time to time of such Bond.

The Authority, without the consent of the Trustee, the beneficial owner of a Book Entry Bond or any other person, may terminate the services of the Depository with respect to a Book Entry Bond if the Authority reasonably determines in good faith following consultation with the Trustee that (a) the Depository is unable to discharge its responsibilities with respect to such Bonds or (b) a continuation of the requirement that all of the Outstanding Bonds of like Series issued in book entry form be registered in the registration books of the Authority in the name of the Depository, is not in the best interest of the beneficial owners of such Bonds, and the Authority shall terminate the services of the Depository upon receipt by the Authority and the Trustee of written notice from the Depository that it has received written requests that such Depository be removed from its participants having beneficial interests, as shown in the records of the Depository, in an aggregate amount of not less than a Majority in Interest of the then Outstanding Bonds for which the Depository is serving as Depository.

Upon the termination of the services of a Depository with respect to a Book Entry Bond, or upon the resignation of a Depository with respect to a Book Entry Bond, after which no substitute securities depository willing to undertake the functions of such Depository can be found which, in the reasonable opinion of the Authority following consultation with the Trustee, is able to undertake such functions upon reasonable and customary terms, such Bonds shall no longer be registered in the registration books kept by the Trustee in the name of a Depository, but shall be registered in the name or names of the Bondholders transferring or exchanging such Bonds shall designate, in accordance with the provisions of Article III hereof.

In connection with any proposed transfer outside the book-entry system, the Authority or the Depository shall provide or cause to be provided to the Trustee all information necessary to allow the Trustee to comply with any applicable tax reporting obligations, including without limitation any cost basis reporting obligations under Section 6045 of the Code.  The Trustee may rely on the information provided to it and shall have no responsibility to verify or ensure the accuracy of such information.

**Section 3.11   Preparation of Definitive Bonds; Temporary Bonds.**  The definitive Bonds of each Series shall be lithographed or printed on steel engraved borders, except that Book Entry Bonds may be typewritten.  Until the definitive Bonds of any Series are prepared, the

- 30 -

HTA_CONF 00016109

Authority may execute, in the same manner as is provided in Section 3.04 hereof, and deliver, in lieu of definitive Bonds, but subject to the same provisions, limitations and conditions as the definitive Bonds, except as to the denominations thereof and as to exchangeability for registered Bonds, one or more temporary Bonds, substantially of the tenor of the definitive Bonds in lieu of which such temporary Bond or Bonds are issued, in authorized denominations or any whole multiples thereof authorized by the Authority, and with such omissions, insertions and variations as may be appropriate to such temporary Bonds.  The Authority at its own expense shall prepare and execute and, upon the surrender at the designated corporate trust office of the Trustee of such temporary Bonds for exchange and the cancellation of such surrendered temporary Bonds the Trustee shall authenticate and, without charge to the Holder thereof, deliver in exchange therefor, at the designated corporate trust office of the Trustee, definitive Bonds of the same aggregate principal amount, Series and maturity as the temporary Bonds surrendered.  Until so exchanged, the temporary Bonds shall in all respects be entitled to the same benefits and security as definitive Bonds issued pursuant hereto.

All temporary Bonds surrendered in exchange for a definitive Bond or Bonds shall be forthwith canceled by the Trustee.

## ARTICLE IV.

## REDEMPTION OF BONDS

**Section 4.01   Authorization of Redemption.**   Bonds subject to redemption prior to maturity pursuant hereto or to a Supplemental Trust Agreement shall be redeemable, in accordance with this Article IV, at such times, at such Redemption Prices and upon such terms as may otherwise be specified herein or in the Supplemental Trust Agreement authorizing such Series.

**Section 4.02   Redemption at the Election of the Authority.**

(a)      In the case of any redemption of Bonds other than as provided in Section 4.03 hereof, the Authority shall give written notice to the Trustee of its election to redeem, of the Series and of the principal amounts and Redemption Prices of the Bonds of each maturity of such Series to be redeemed.  Such notice shall be given not less than thirty (30) days prior to the redemption date.  The Series, maturities and principal amounts thereof to be so redeemed shall be determined by the Authority in its sole discretion, subject to, in the case of the redemption of less than all of any maturity of Bonds, any limitations with respect thereto contained herein (including, without limitation, Section 4.04 below) or in the Supplemental Trust Agreement authorizing such Series. The Authority shall pay to the Trustee, for the benefit of the Holders of the Bonds to be redeemed, on or prior to the redemption date an amount which, in addition to other amounts available therefor held by the Trustee in the Debt Service Fund, is sufficient to redeem on the redemption date at the Redemption Price thereof, together with interest accrued and unpaid thereon to the redemption date, all of the Bonds to be so redeemed.

(b)      In the case of a Partial Disposition pursuant to Section 7.18, the Bonds shall be subject to redemption, at a Redemption Price equal to the par amount thereof, plus accrued interest to the date of redemption, in an amount no less than (i) the allocable portion of Bonds related to the Toll Facilities subject to the disposition and (ii) the amount required to be redeemed in order

- 31 -

to maintain for the Tax-Exempt Bonds that will remain Outstanding after such Partial Disposition, the exclusion of interest on such Tax Exempt Bonds from gross income for purposes of federal income taxation, all as provided in the Supplemental Trust Agreement.

     **Section 4.03   <u>Redemption Other Than at Authority's Election</u>.**   Whenever by the terms hereof or of a Supplemental Trust Agreement the Trustee is required to redeem Bonds through the application of mandatory Sinking Fund Installments, the Trustee shall select the Bonds of the Series and maturities to be redeemed in the manner provided in Section 4.04 hereof, give the notice of redemption and pay out of money available therefor the Redemption Price thereof, together with interest accrued and unpaid thereon to the redemption date, to the appropriate Paying Agents in accordance with the terms of this Article IV.

     **Section 4.04   <u>Selection of Bonds to be Redeemed</u>.**   Unless otherwise provided in the Supplemental Trust Agreement authorizing the issuance of Bonds of a Series, in the event of redemption of less than all of the Outstanding Bonds of like Series, maturity and tenor, the Trustee shall assign to each Outstanding Bond of the Series, maturity and tenor to be redeemed a distinctive number for each unit of the principal amount of such Bond equal to the lowest denomination in which the Bonds of such Series are authorized to be issued and shall select by lot, using such method of selection as it shall deem proper in its discretion, from the numbers assigned to such Bonds as many numbers as, at such unit amount equal to the lowest denomination in which the Bonds of such Series are authorized to be issued for each number, shall equal the principal amount of such Bonds to be redeemed.  In making such selections the Trustee may draw the Bonds by lot (i) individually or (ii) by one or more groups, the grouping for the purpose of such drawing to be by serial numbers (or, in the case of Bonds of a denomination of more than the lowest denomination in which the Bonds of such Series are authorized to be issued, by the numbers assigned thereto as in this Section 4.04 provided) which end in the same digit or in the same two digits.  In case, upon any drawing by groups, the total principal amount of Bonds drawn shall exceed the amount to be redeemed, the excess may be deducted from any group or groups so drawn in such manner as the Trustee may reasonably determine.  The Trustee may in its discretion assign numbers to aliquot portions of Bonds and select part of any Bond for redemption.  The Bonds to be redeemed shall be the Bonds to which were assigned numbers so selected; ***provided, however,*** that only so much of the principal amount of each such Bond of a denomination of more than the lowest denomination in which the Bonds of such Series are authorized to be issued shall be redeemed as shall equal the lowest denomination in which the Bonds of such Series are authorized to be issued for each number assigned to it and so selected.

     For purposes of this Section 4.04, the lowest denomination in which a Capital Appreciation Bond or Convertible Capital Appreciation Bond is authorized to be issued shall be the lowest Accreted Value authorized to be due at maturity on such Bonds.

     Notwithstanding the foregoing, in the event that a Depository shall be the registered owner of all of such Bonds of the Series being redeemed, if less than all of the Bonds of a particular Series are called for redemption, the Authority shall select the maturity or maturities of such Series to be redeemed and the Depository, on behalf of the Trustee, shall select the Bonds within the same maturity of such Series to be redeemed by means of a random lottery and in any event in accordance with the applicable practices of the Depository.

HTA_CONF 00016111

**Section 4.05   Notice of Redemption.**   Whenever Bonds are to be redeemed, the Trustee shall give notice of the redemption of the Bonds in the name of the Authority which notice shall specify:  (a) the Bonds to be redeemed which shall be identified by the designation of the Bonds given in accordance with Article II hereof; (b) the maturity dates and interest rates or Accreted Value of the Bonds to be redeemed and the date of such Bonds; (c) the numbers and other distinguishing marks of the Bonds to be redeemed, including CUSIP numbers; (d) the redemption date; (e) the Redemption Price, if then known; (f) with respect to each such Bond, the principal amount thereof to be redeemed; (g) that, except in the case of Book Entry Bonds, such Bonds will be redeemed at the designated corporate trust office of the Trustee giving the address thereof and the telephone number of the Trustee to which inquiries may be directed; (h) that no representation is made as to the correctness of the CUSIP number either as printed on the Bonds or as contained in such notice and that an error in a CUSIP number as printed on a Bond or as contained in such notice shall not affect the validity of the proceedings for redemption; and (i) if the Authority's obligation to redeem the Bonds is subject to conditions, a statement to that effect and of the conditions to such redemption.  Such notice shall further state that, if on such date all conditions to redemption have been satisfied, there shall become due and payable on such date upon each Bond to be redeemed the Redemption Price thereof, together with interest accrued and unpaid thereon to the redemption date, and that, from and after such date, payment having been made or provided for, interest thereon shall cease to accrue.  Such notice shall be given by mailing a copy of such notice not less than thirty (30) days nor more than sixty (60) days prior to the redemption date.  Such notice shall be sent by first class mail, postage prepaid (i) to the registered owners of the Bonds which are to be redeemed, at their last known addresses, if any, appearing on the registration books, and (ii) to the Bond Insurer (if any) insuring the Bonds to be redeemed, at the Bond Insurer's last known address, not more than ten (10) Business Days prior to the date such notice is given.  Upon giving such notice, the Trustee shall promptly certify to the Authority that it has mailed or caused to be mailed such notice to the Holders of the Bonds to be redeemed in the manner provided herein.  Such certificate shall be conclusive evidence that such notice was given in the manner required hereby.  The failure of any Holder of a Bond to be redeemed to receive such notice shall not affect the validity of the proceedings for redemption of the Bonds.

The Trustee shall, if any of the Bonds to be redeemed are Book Entry Bonds, transmit a copy of the notice of redemption to the Depository for such Book Entry Bonds not less than thirty (30) days nor more than sixty (60) days prior to the redemption at the most recent address therefor, or to any successor thereof (or, if the Bonds are held by the Depository, such notice shall be given in accordance with the procedures of the Depository).  Transmittal of such copy to the Depository in accordance with the foregoing sentence shall be conclusive evidence of delivery thereof to the holders of beneficial interests in a Book Entry Bond and no such notice shall be required to be transmitted by the Authority directly to any such beneficial holder nor shall transmittal to a beneficial holder by the Authority be a condition precedent to such redemption or affect the validity of the proceedings for redemption of the Bonds.  This paragraph shall not alter the Trustee's obligation to transmit a notice of redemption to the Bond Insurer as provided in the preceding paragraph.

**Section 4.06   Payment of Redeemed Bonds.**   Notice having been given in the manner provided in Section 4.05 hereof, the Bonds or portions thereof so called for redemption shall become due and payable on the redemption date so designated at the Redemption Price, plus interest accrued and unpaid to the redemption date, except as otherwise provided in Section 3.10

HTA_CONF 00016112

hereof, upon presentation and surrender of such Bonds, at the office or offices specified in such notice, and, in the case of Bonds presented by other than the registered owner, together with a written instrument of transfer duly executed by the registered owner or his duly authorized attorney, such Bonds, or portions thereof, shall be paid at the Redemption Price plus interest accrued and unpaid to the redemption date; *provided, however,* that payment of the Redemption Price may be paid by wire transfer to such registered owner if so authorized in the Supplemental Trust Agreement that authorized the Bonds of the Series to be redeemed. If there shall be called for redemption less than all of the principal amount of a registered Bond, the Authority shall execute and the Trustee shall authenticate and deliver, upon the surrender of such Bond, without charge to the owner thereof, for the unredeemed balance of the principal amount of the registered Bond so surrendered, Bonds of like Series, maturity and tenor in any of the authorized denominations. If, on the redemption date, money for the redemption of all Bonds or portions thereof of any like Series, maturity and tenor to be redeemed, together with interest accrued and unpaid thereon to the redemption date, shall be held by the Trustee and Paying Agents so as to be available therefor on such date and if notice of redemption shall have been mailed as aforesaid, then, from and after the redemption date, interest on the Bonds or portions thereof so called for redemption shall cease to accrue and such Bonds shall no longer be considered to be Outstanding hereunder. If such money shall not be so available on the redemption date, such Bonds or portions thereof shall continue to bear interest until paid at the same rate as they would have borne had they not been called for redemption.

## ARTICLE V.

## FUNDS AND ACCOUNTS;
## PLEDGED REVENUES AND APPLICATION THEREOF

**Section 5.01   Establishment of Funds and Accounts.**   (a) The following funds and separate accounts within funds constituting a portion of the Trust Estate are hereby established and shall be held, in trust, and maintained by the Trustee:

> Costs of Issuance Fund;
> Tolls Receipts Fund;
> Trustee Expense Fund;
> Debt Service Fund;
> > Interest Account; and
> > Principal Account;
> Operating Reserve Fund;
> Renewal and Replacement Fund
> Subordinated Indebtedness Fund; and
> General Reserve Fund

(b)      The Authority Expense Fund shall be established and maintained by the Authority in a bank or trust company which is eligible under the laws of the Commonwealth to receive deposits of public funds. The Authority shall use amounts in the Authority Expense Fund to pay Costs of Operation, Maintenance and Administration of the Toll Facilities. Moneys deposited in the Authority Expense Fund in accordance with, and solely in the amounts provided for in this

- 34 -

HTA_CONF 00016113

Trust Agreement, shall be released from, and no longer subject to, the lien of this Trust Agreement and shall no longer constitute part of the Trust Estate.

(c)     The Arbitrage Rebate Fund is hereby established and created and shall be held by the Trustee for the benefit of the Authority.  Moneys deposited in the Arbitrage Rebate Fund in accordance with, and solely in the amounts provided for in this Trust Agreement, shall be released from, and no longer subject to, the lien of this Trust Agreement and shall not longer constitute part of the Trust Estate.

(d)     Each such fund may contain one or more accounts or subaccounts, for purposes of internal accounting, as necessary for arbitrage calculations or as the Authority may otherwise deem proper.  All money at any time deposited in any fund, account or subaccount created hereby or by any Supplemental Trust Agreement or required hereby or thereby (other than the Authority Expense Fund and the Arbitrage Rebate Fund) to be created shall be held in trust for the benefit of the Holders of Bonds, but shall nevertheless be disbursed, allocated and applied solely for the uses and purposes provided herein.

**Section 5.02  Application of Secured Obligation Proceeds.**  Upon the receipt of proceeds from the sale of a Series of Secured Obligations (other than the Initial Bonds and the Commonwealth Note), the Authority shall apply such proceeds as specified in the Supplemental Trust Agreement authorizing such Series.

Accrued interest, if any, received upon the delivery of a Series of Secured Obligations shall be deposited in the Debt Service Fund unless all or any portion of such amount is to be otherwise applied as specified in the Supplemental Trust Agreement authorizing such Series.

**Section 5.03  Application of Money in the Costs of Issuance Fund.**  (a) As soon as practicable after the delivery of each Series of Secured Obligations, there shall be deposited by the Authority into each account within the Costs of Issuance Fund the amount, if any, required to be deposited therein pursuant to the Supplemental Trust Agreement authorizing such Series.

(b)     Except as otherwise provided in this Article V and in any applicable Supplemental Trust Agreement, money in the Costs of Issuance Fund shall be used only to pay the Costs of Issuance of the Secured Obligations payable by the Authority.  Such payments shall be made by the Trustee upon the direction of an Authorized Officer of the Authority that sets forth in reasonable detail the purpose of the payment, the amount of such payment and the name of the payee.  If such payment is to be made by bank wire, such direction shall include the routing and account numbers of the payee.  If such payment is to be made by check, such direction shall include the address of the payee.  The Trustee shall rely fully on any such written direction delivered pursuant to this Section and shall not be required to make any investigation in connection therewith.

(c)     The money remaining in the Costs of Issuance Fund after paying or making provision in accordance with the direction of an Authorized Officer of the Authority for the payments required to be made pursuant to paragraph (b) of this Section, including any Costs of Issuance then unpaid, shall be applied by the Trustee in the following order of priority:

- 35 -

HTA_CONF 00016114

First, to the Arbitrage Rebate Fund, the amount determined by the Authority to be required to be deposited therein; and

Second, to the Debt Service Fund, any balance remaining therein.

**Section 5.04   Deposit of Toll Receipts in the Toll Receipts Fund.**  (a)  Effective on the date of issuance of the Initial Bonds, the Authority has directed that all Toll Receipts be deposited with the Trustee in the Toll Receipts Fund on behalf of the Authority, until all Secured Obligations are fully paid or defeased in accordance with Section 13.01 below.  The Authority shall take all necessary actions to cause the prompt deposit of the Toll Receipts directly into the Toll Receipts Fund.

(b)   In the event that the Authority receives any Toll Receipts, the Authority shall promptly (and in no event later than three (3) Business Days) following the receipt thereof transfer all such Toll Receipts to the Trustee for deposit in the Toll Receipts Fund.  All Toll Receipts received by the Trustee shall be deposited as soon as practicable and in no event more than two (2) Business Days after receipt thereof by the Trustee, into the Toll Receipts Fund.  Amounts held in the Toll Receipts Fund shall be applied by the Trustee to fund the deposits in the priority set forth in Section 5.05 below.

**Section 5.05   Application of Toll Receipts**.  (a) On each Monthly Disbursement Date, the Trustee shall withdraw Toll Receipts from the Toll Receipts Fund and transfer and apply such amounts as follows and in the following order of priority:

*First*:  To the Trustee Expense Fund, Toll Receipts in an amount sufficient to fund the Trustee Expense Fund at the Trustee Expenses Cap; ***provided***, ***however***, in no event shall the deposits to the Trustee Expense Fund exceed the Trustee Expenses Cap for the Fiscal Year.  Amounts on deposit shall be applied, subject to the approval of an Authorized Officer of the Authority (which approval shall not be unreasonably withheld), to the payment of the reasonable costs and expenses of the Trustee;

*Second*: To the Authority for deposit into the Authority Expense Fund, Toll Receipts in an amount such that the amount on deposit in the Authority Expense Fund equals the amount set forth in the Disbursement Schedules delivered with respect to such Monthly Disbursement Date to pay Costs of Operation, Maintenance and Administration of the Toll Facilities for the two months immediately succeeding such Monthly Disbursement Date.  The monthly payments shall be increased or decreased, as necessary, to reflect amendments to the Disbursement Schedule, provided that any increase in Costs of Operation, Maintenance and Administration of the Toll Facilities effectuated by such amendment shall comply with the requirements of Section 7.02 herein.  Toll Receipts on deposit in the Authority Expense Fund shall be applied by the Authority from time to time solely to pay the Costs of Operation, Maintenance and Administration of the Toll Facilities;

*Third:* To the following accounts in the following order of priority:

(i)   the Interest Account of the Debt Service Fund, Toll Receipts in an amount equal to one-sixth (1/6) of the amount of interest due and payable on the Bonds on the next Interest Payment Date, plus an amount equal to any shortfall from prior periods; and

- 36 -

HTA_CONF 00016115

(ii)     the Principal Account of the Debt Service Fund, Toll Receipts in an amount equal to one-twelfth (1/12) of the Principal amount of the Bonds due and payable on the next Principal Payment Date, including Sinking Fund Installments and Accreted Value, if applicable, plus an amount equal to any shortfall from prior periods;

In making such deposits, the Trustee shall reduce the amount of the Required Deposits by any investment earnings which have accrued in such Account.

*Fourth*:  If a Subordinated Payment Default shall have occurred and be continuing, Toll Receipts in an amount sufficient to pay all past due principal of and interest on the Subordinated Indebtedness;

*Fifth*:  To the Trustee for deposit into the Operating Reserve Fund, Toll Receipts to maintain a balance therein equal to the Operating Reserve Requirement;

*Sixth*:  Upon the written direction of an Authorized Officer of the Authority, to the extent Toll Receipts are available therefor, to the Arbitrage Rebate Fund, Toll Receipts in the amount set forth in such direction;

*Seventh*:  To the Renewal and Replacement Fund, Toll Receipts in an amount equal to one-twelfth (1/12) of the Renewal and Replacement Requirement budgeted to be funded from Toll Receipts as set forth in the applicable Annual Budget  for such Fiscal Year; ***provided, however***, that in the event the Authority shall determine that the amounts on deposit therein are excessive for the purpose of the Renewal and Replacement Fund, the Authority shall amend the Annual Budget to decrease the Renewal and Replacement Requirement solely to the extent such amendment is accompanied by a certificate by the Consulting Engineer that supports any decrease in the Renewal and Replacement Requirement and such excess amount may be withdrawn from the Renewal and Replacement Fund by the Authority and transferred to and deposited in the General Reserve Fund and used as provided herein;

*Eighth*:  To the Subordinated Indebtedness Fund, to the extent Toll Receipts are available to pay (i) interest on Subordinated Indebtedness due on the next succeeding Interest Payment Date, and (ii) principal on Subordinated Indebtedness on the next succeeding Principal Payment Date; and

*Ninth*:  To the General Reserve Fund, any remaining balance.

**Section 5.06  <u>Debt Service Fund.</u>**  (a)  The Trustee shall pay out of the Debt Service Fund, the Principal of and interest on all Outstanding Bonds as the same is due and payable. Amounts paid to a Paying Agent for payments pursuant to this Section shall be irrevocably held in trust for Holders of Bonds and applied to such payments.

(b)     Notwithstanding the provisions of this Section, the Authority may, at any time but in no event less than thirty-five (35) days prior to the succeeding date on which a Sinking Fund Installment is scheduled to be due, direct the Trustee to purchase, with money on deposit in the Debt Service Fund, at a price not in excess of the Principal amount (with respect to Bonds that are not Capital Appreciation Bonds or Convertible Capital Appreciation Bonds) or the Accreted Value (with respect to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to

- 37 -

the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds)) thereof plus interest accrued and unpaid to the date of such purchase, Term Bonds to be redeemed from such Sinking Fund Installment; *provided, however*, that the portion of such purchase price funded from the Principal Account shall not exceed the amount of the upcoming Sinking Fund Installment due on such purchased bond and the portion of such purchase price funded from the Interest Account shall not exceed the amount of interest accrued and unpaid on such purchased bond to the date of such purchase; *provided, further,* that in the case of Capital Appreciation Bonds or Convertible Capital Appreciation Bonds (prior to the applicable Interest Commencement Date with respect to Convertible Capital Appreciation Bonds), no portion of the purchase price may be funded from the Interest Account.  Any Term Bond so purchased or otherwise purchased and delivered to the Trustee shall be canceled upon receipt thereof by the Trustee and evidence of such cancellation shall be given to the Authority.  The Principal amount or Accreted Value, as applicable, of each Term Bond so canceled shall be credited against the Sinking Fund Installment due on such date.

(c)    If at the time the Trustee is required to make a withdrawal from the Debt Service Fund the moneys therein shall not be sufficient for such purpose, the Trustee shall withdraw the amount of such deficiency *first*, from moneys on deposit in the General Reserve Fund in accordance with Section 5.10(b) of this Trust Agreement; *second*, from the Toll Receipts on deposit in the Renewal and Replacement Fund; *third*, from the moneys on deposit in the Operating Reserve Fund; and, *fourth*, from the moneys on deposit in the Subordinated Indebtedness Fund, and, in each instance, transfer the same to the Debt Service Fund.

**Section 5.07   Operating Reserve Fund.**  (a) The moneys in the Operating Reserve Fund shall be used, when necessary, to pay Costs of Operation, Maintenance and Administration of the Toll Facilities to the extent that the monies on deposit in the Authority Expense Fund are insufficient therefor; provided any requisition by the Authority for funds from the Operating Reserve Fund to pay Costs of Operation, Maintenance and Administration of the Toll Facilities shall be accompanied by a certificate of the Consulting Engineer, which certificate shall set forth an explanation of the reason such monies are required and shall be subject to the requirements of Section 7.02(a)(v) and (vi) herein.

(b)    Amounts on deposit in the Operating Reserve Fund shall be transferred, to the extent required to the following funds, in the following order of priority (i) in accordance with Section 5.06(c), to the Debt Service Fund, if at the time the Trustee is required to make a withdrawal from the Debt Service Fund, the moneys therein shall not be sufficient therefor and after the amounts, if any, transferred from the General Reserve Fund and the Toll Receipts, if any, transferred from the Renewal and Replacement Fund are not sufficient for such purpose and (ii) in accordance with Section 5.11(a), to the Arbitrage Rebate Fund, if at the time the Trustee is required to make a withdrawal from the Arbitrage Rebate Fund, the moneys therein, the amounts, if any, transferred from the General Reserve Fund and the Toll Receipts, if any, transferred from the Renewal and Replacement Fund are not sufficient for such purpose.

**Section 5.08   Renewal and Replacement Fund**.  (a) The Authority shall cause to be deposited in the Renewal and Replacement Fund, the proceeds of all gifts, grants, or other payments to the Authority from the United States of America, any state, territory, municipality or any public or private instrumentality, individual or entity, which proceeds are required to be

- 38 -

HTA_CONF 00016117

applied to the payment of Renewal and Replacement Expenses of the Toll Facilities. Except as provided in subsection (b), the moneys in the Renewal and Replacement Fund shall be used, when necessary, for the purpose of paying Renewal and Replacement Expenses. Improvements funded from moneys in the Renewal and Replacement Fund are deemed to be part of the Toll Facilities.

(b)    Toll Receipts on deposit in the Renewal and Replacement Fund shall be transferred to the following funds and accounts in the following order of priority (i) in accordance with Section 5.06(c), to the Debt Service Fund, if at the time the Trustee is required to make a withdrawal from the Debt Service Fund the moneys therein shall not be sufficient therefor and after the amounts, if any, transferred from the General Reserve Fund are not sufficient for such purpose and (ii) in accordance with Section 5.11(a), to the Arbitrage Rebate Fund, if at the time the Trustee is required to make a withdrawal from the Arbitrage Rebate Fund the moneys therein and the amounts, if any, transferred from the General Reserve Fund are not sufficient for such purpose.

**Section 5.09   Subordinated Indebtedness Fund.**  (a) The Trustee shall pay out of the Subordinated Indebtedness Fund, the Principal of and interest on Outstanding Subordinated Indebtedness as the same is due and payable.  Amounts paid to a Paying Agent for payments pursuant to this Section shall be irrevocably held in trust for Holders of Subordinated Indebtedness and applied to such payments.

(b)    Amounts on deposit in the Subordinated Indebtedness Fund shall be transferred to the Debt Service Fund in accordance with Section 5.06(c), if at the time the Trustee is required to make a withdrawal from the Debt Service Fund the moneys therein shall not be sufficient therefor and after the amounts, if any, transferred from the General Reserve Fund, the Toll Receipts, if any, transferred from the Renewal and Replacement Fund, and the amounts, if any, transferred from the Operating Reserve Fund are not sufficient for such purpose.

(c)    Money in the Subordinated Indebtedness Fund that on the last day of each Fiscal Year is in excess of the amount then required by Section 5.05 hereof to be therein may at the direction of the Authority either be retained therein or transferred to any other fund or account established pursuant hereto; ***provided, however***, that if no direction has been given by the Authority, the excess on the last day of each Fiscal Year shall be transferred by the Trustee to the General Reserve Fund.

**Section 5.10   General Reserve Fund.**  (a) Unless an Event of Default has occurred and is continuing, amounts deposited in the General Reserve Fund shall be applied by the Trustee at the direction of the Authority, in such manner, in such priority, and at such times as the Authority shall determine (i) to the purchase or redemption of Bonds, or (ii) for any Toll Facility-related lawful purpose of the Authority; ***provided, however***, that no moneys on deposit in the General Reserve Fund shall be used in any Fiscal Year for the purposes provided in this subsection unless all payments required in clauses *first* through *eighth* of Section 5.05(a), including any deficiencies for prior payments, have been made in full for such Fiscal Year, the Operating Reserve Fund and Renewal and Replacement Fund are each funded at their applicable requirements and the Authority shall have fully complied in all material respects with all covenants and agreements contained in this Trust Agreement.

- 39 -

HTA_CONF 00016118

(b)     Amounts on deposit in the General Reserve Fund shall be transferred to the following funds and accounts in the following order of priority (i) in accordance with Section 5.06(c), to the Debt Service Fund, if at the time the Trustee is required to make a withdrawal from the Debt Service Fund the moneys therein are not sufficient for such purpose and (ii) in accordance with Section 5.11(a), to the Arbitrage Rebate Fund at any time money is required for such purpose.

Section 5.11   **Arbitrage Rebate Fund**.  (a) The Trustee shall deposit to the Arbitrage Rebate Fund any money delivered to it by the Authority for deposit therein and, in accordance with the provisions of this Article V, shall transfer to the Arbitrage Rebate Fund from the following funds, in the following order of priority in accordance with the written direction of the Authority (i) moneys on deposit in the General Reserve Fund, (ii) Toll Receipts on deposit in the Renewal and Replacement Fund, and (iii) moneys on deposit in the Operating Reserve Fund, at such times and in such amounts as shall be set forth in such written directions of the Authority.

(b)     Money on deposit in the Arbitrage Rebate Fund shall be applied by the Trustee in accordance with the direction of an Authorized Officer of the Authority only for the purpose of making payments to the Department of the Treasury of the United States of America at such times and in such amounts as the Authority shall determine, based on an opinion of Transaction Counsel, to be required by the Code to be rebated to the Department of the Treasury of the United States of America.  Money which an Authorized Officer of the Authority determines to be in excess of the amount required to be so rebated, shall, at the direction of the Authority, either be retained therein or transferred to any other fund or account established pursuant hereto.

(c)     If and to the extent required by the Code, the Authority shall periodically, at such times as may be required to comply with the Code, determine the amount required by the Code to be rebated to the Department of the Treasury of the United States of America with respect to Tax Exempt Bonds and (i) transfer or direct the Trustee to transfer from any other of the funds and accounts held hereunder (excluding any funds or accounts earmarked for the payment of the Secured Obligations pursuant to Article V hereof) and deposit to the Arbitrage Rebate Fund, such amount as the Authority shall have determined to be necessary in order to enable it to comply with its obligation to rebate money to the Department of the Treasury of the United States of America with respect to Tax Exempt Bonds and (ii) pay out of the Arbitrage Rebate Fund to the Department of the Treasury of the United States of America the amount, if any, required by the Code to be rebated thereto.

Section 5.12   **Transfer of Investments.**   Whenever money in any fund or account established hereunder is to be paid in accordance herewith to another such fund or account, such payment may be made, in whole or in part, by transferring to such other fund or account investments held as part of the fund or account from which such payment is to be made, whose value, together with the money, if any, to be transferred, is equal to the amount of the payment then to be made; ***provided, however,*** that no such transfer of investments would result in a violation of any investment standard or guideline applicable to such fund.

- 40 -

HTA_CONF 00016119

## ARTICLE VI.

## SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS

**Section 6.01   Security for Deposits**.  All moneys held hereunder by the Trustee shall be continuously and fully secured, for the benefit of the Holders of the Bonds, and solely to the extent of any moneys held by the Trustee for the benefit of the Authority pursuant to the terms of this Trust Agreement, for the benefit of the Authority, in such manner as may then be required by applicable federal or Commonwealth laws and regulations regarding security, by Eligible Investments of a market value at least equal at all times to the amount of the deposit so held by the Trustee.  The Trustee shall have no obligation for the payment of interest on moneys properly held by it that are uninvested hereunder.

**Section 6.02   Investment of Funds and Accounts Held by the Trustee**.  (a) Subject to the limitations set forth in this paragraph, money held hereunder, if permitted by law, shall, as nearly as may be practicable, be invested by the Trustee in any Eligible Investments in accordance with the direction of an Authorized Officer of the Authority given in writing.  Money in the Toll Receipts Fund shall only be invested in Eligible Investments of the type described in clause (a), (b), (c) or (d) of the definition of the term "Eligible Investments" set forth in Section 1.01 hereof and such investments shall mature no later than the next succeeding Monthly Disbursement Date. Money in the Debt Service Fund shall only be invested in Eligible Investments of the type described in clause (a), (b), (c) or (d) of the definition of the term "Eligible Investments" set forth in Section 1.01 hereof and such investments shall mature no later than the date on which such moneys are required to be used to pay Principal of and interest on Bonds when due.

(b)      The Trustee may conclusively rely upon the Authority's written instructions as to both the suitability and legality of the directed investments.  Ratings of Eligible Investments shall be determined at the time of purchase of such Eligible Investments.  The Trustee may make any and all such investments through its own investment department or that of its affiliates or subsidiaries, and may charge its ordinary and customary fees for such trades, including investment maintenance fees.

(c)      Obligations purchased or other investments made as an investment of money in any fund or account held under the provisions hereof shall be deemed at all times to be a part of such fund or account and the income or interest earned, profits realized or losses suffered by a fund or account due to the investment thereof shall be credited or charged, as the case may be, to such fund or account.

(d)      In computing the amount in any fund or account held by the Trustee under the provisions hereof, obligations purchased as an investment of money therein or held therein shall be valued at the market value thereof, inclusive of accrued interest to the date of valuation.

(e)      Subject to the provisions hereof, the Authority, in its discretion, may, and the Trustee at the direction of an Authorized Officer of the Authority, shall sell, present for redemption or exchange any investment held pursuant hereto and the proceeds thereof may be reinvested as provided in this Section.  Except as otherwise provided herein, such investments shall be sold by the Authority or by the Trustee at the direction of an Authorized Officer of the Authority at the

- 41 -

HTA_CONF 00016120

best price reasonably obtainable by it, or presented for redemption or exchange, whenever it shall be necessary in order to provide money to meet any payment or transfer from the fund or account in which such investment is held. The Trustee shall advise the Authority in writing, on or before the fifteenth (15th) day of each calendar month, of the amounts required to be on deposit in each fund and account hereunder and of the details of all investments held for the credit of each fund and account in its custody under the provisions hereof as of the end of the preceding month and as to whether such investments comply with the provisions of paragraphs (a) and (b) of this Section. The details of such investments shall include the par value, if any, the cost and the current market value of such investments as of the end of the preceding month. The Trustee shall also describe all withdrawals, substitutions and other transactions occurring in each such fund and account in the previous month.

(f)  Although the Authority recognizes that it may obtain a broker confirmation or written statement containing comparable information at no additional cost, the Authority hereby agrees that confirmations of Eligible Investments are not required to be issued by the Trustee for each month in which a monthly statement is rendered.

**Section 6.03  Liability for Investments.** Neither the Authority nor the Trustee shall have any liability arising out of or in connection with the making of any investment authorized by the provisions of this Article VI, in the manner provided in this Article VI, for any depreciation in value of any such investment, or for any loss, fee, tax or other charge, direct or indirect, resulting from any such investment, reinvestment or liquidation of an investment.

## ARTICLE VII.

## PARTICULAR COVENANTS

The Authority (and, as authorized by the Act, the Commonwealth with respect to Section 7.16 hereof) covenants and agrees with the Holders of the Bonds as follows:

**Section 7.01  Rate Covenant.**

(a)  The Authority covenants (the "**Rate Covenant**") that, except as provided in subsection (d) of this Section, it will at all times charge and collect or cause to be charged and collected Tolls for the use of the Toll Facilities at rates not less than those set forth in the schedule of such Tolls then in effect and as shall be required in order that Toll Receipts in each Fiscal Year shall equal at least the aggregate of (i) one hundred ten percent (110%) of the aggregate of the Required Deposits for such Fiscal Year and (ii) one hundred percent (100%) of Annual Debt Service on Subordinated Indebtedness.

(b)  No later than December 31 of each year, the Authority shall perform the calculations to determine compliance with the Rate Covenant for the previous Fiscal Year based upon (x) the audited financial statements for such Fiscal Year or (y) if no audited financial statements for such Fiscal Year are then available, a certificate of an Authorized Officer of Authority setting forth (A) the Toll Receipts for such Fiscal Year, (B) the Required Deposits for such Fiscal Year and (C) Annual Debt Service on Subordinated Indebtedness for such Fiscal Year.

- 42 -

A certificate of an Authorized Officer of the Authority setting forth such calculations will be delivered to the Trustee and posted on EMMA under the CUSIPs for the Outstanding Bonds.

(c)     Additionally, on or before July 1 of each year the Authority shall deliver to the Trustee and AAFAF:

(i)     a certificate of the Traffic Consultant setting forth a reasonably detailed projection of the Toll Receipts to be received in the Fiscal Year commencing on such July 1 and for the next succeeding Fiscal Year; provided that such projection shall take into account any increases or decreases in Toll rates for which all legal conditions to effectiveness have been satisfied;

(ii)    a certificate of the Consulting Engineer setting forth a reasonably detailed projection of (A) the Required Deposits and (B) Annual Debt Service on Subordinated Indebtedness, in each case, for the Fiscal Year commencing on such July 1 and for the next succeeding Fiscal Year, and

(iii)   a certificate of an Authorized Officer of the Authority calculating, based on the certificates delivered pursuant to clauses (i) and (ii) of this paragraph (c), the Rate Covenant for the Fiscal Year commencing on such July 1 and for the next succeeding Fiscal Year.

A certificate of an Authorized Officer of the Authority setting forth the calculations required by this subsection (c) will be delivered to the Trustee and posted on EMMA under the CUSIPs for the Outstanding Bonds.

(d)     If a certificate of the Authority delivered pursuant to either paragraph (b) or (c) above demonstrates that the Toll Receipts were not or will not be sufficient to satisfy the Rate Covenant, the Authority will cause the Traffic Consultant to make a study (a "**Traffic Consultant Study**") and to recommend a schedule of Tolls ("**Toll Schedule**") which will provide sufficient Toll Receipts in the then current or next succeeding Fiscal Year to comply with the Rate Covenant above and will cause additional Pledged Revenues to be collected in the following and later Fiscal Years sufficient to eliminate any deficiency at the earliest practicable time; *provided, however*, that the Authority will not be required to obtain a Traffic Consultant Study as required by this subsection (d) if (x) the Authority has obtained a Traffic Consultant Study pursuant to this subsection (d) in any of the previous two Fiscal Years and the Authority is in material compliance with the recommendations of the Traffic Consultant set forth therein or (y) the Traffic Consultant determines that such noncompliance is directly attributable to the occurrence of a Force Majeure Event.  The Authority shall promptly (i) implement the Toll Schedule set forth in the Traffic Consultant Study and other recommendations of the Traffic Consultant or (ii) undertake an alternative course of action designed to ensure the Authority's ability to satisfy the Rate Covenant, to the extent approved by the Traffic Consultant.

(e)     Except as described in the next sentence, failure to comply with the Rate Covenant in any Fiscal Year will not constitute an event of default under this Trust Agreement if either (i) the Authority complies with the covenant described in paragraph (d) above or (ii) the Authority's Traffic Consultant is of the opinion that a Toll Schedule which will comply with the Rate Covenant

- 43 -

is impracticable at that time, and the Authority therefore cannot comply with the Rate Covenant, and the Authority establishes a Toll Schedule that is recommended by the Traffic Consultant to comply as nearly as practicable with the Rate Covenant, which shall in any event yield, in any Fiscal Year, Toll Receipts in an amount at least equal to the Required Deposits plus Annual Debt Service on Subordinated Indebtedness for such Fiscal Year. Notwithstanding the first sentence of this subsection (e), failure to comply with the Rate Covenant shall be an Event of Default hereunder if (x) for four consecutive Fiscal Years, the certificate delivered by the Authority as required by subsection (b) above demonstrates that the Authority has failed to comply with the Rate Covenant in each such Fiscal Year or (y) the certificate delivered by the Authority as required by subsection (b) above demonstrates that the Authority has failed to comply with the Rate Covenant at the end of the second full Fiscal Year after which a Traffic Consultant delivered a Traffic Consultant Study in accordance with subsection (d) above and the Toll Receipts as set forth in such certificate are less than 100% of the Required Deposits plus Annual Debt Service on Subordinated Indebtedness for such Fiscal Year.

(f)     The Authority will not reduce any toll (except by way of certain adjustments or reclassifications of toll rates as referred to below) unless the following conditions and tests shall be met:

(i)     There shall have been delivered to the Trustee a certificate of an Authorized Officer of the Authority to the effect that the cumulative reductions in the immediately preceding twelve (12) months, including the proposed and all other reductions as if they had been in effect for such period, would not reduce Net Receipts for such period by more than one percent (1%), with Toll Schedules demonstrating such conclusion and that, taking into account such reductions, the Authority would have met the Rate Covenant for such period; or

(ii)    There shall have been delivered to the Trustee a certificate of an Authorized Officer of the Authority to the effect (A) the Rate Covenant for the preceding Fiscal Year after taking into account such Toll reductions, would have been satisfied; (B) after giving effect to such Toll reductions, the estimated Toll Receipts (as set forth in a report of the Traffic Consultant) and the estimated Required Deposits and Annual Debt Service on Subordinated Indebtedness (as set forth in a report of the Consulting Engineer) for the then current and each future Fiscal Year to and including the latest maturity of the Bonds shall equal at least the amount necessary to satisfy the Rate Covenant for each such Fiscal Year; and (C) the Authority is not in default in the performance of any of the provisions of the Secured Obligations or this Trust Agreement.

(g)     The Authority may increase Tolls from time to time and may make any other adjustments or reclassifications of Tolls or establish special Tolls, introductory Tolls or temporary Tolls (but no reductions other than those permitted by subsection (f) of this Section 7.01), provided that, in the opinion of the Traffic Consultant, such action will not cause the Authority to fail to comply with the Rate Covenant as set forth in subsection (a) of this Section 7.01.

- 44 -

(h)     The Authority covenants that it will continue in effect the schedule of Tolls for traffic using the Toll Facilities until such schedule is increased or otherwise modified or reconfigured as provided herein.

(i)     The Authority covenants that all Tolls will be classified in a reasonable manner to cover all Traffic, and that no free vehicular passage on the Toll Facilities will be permitted except as permitted under current reference rules, regulations, resolutions and orders.

**Section 7.02   Annual Budget and Disbursement Schedule**.

(a)     The Authority covenants that:

(i)     On or before April 15 in each year it shall (A) prepare (1) a preliminary Annual Budget for the next three Fiscal Years and (2) a preliminary Disbursement Schedule for the next succeeding Fiscal Year and (B) deliver copies of such preliminary Annual Budget and Disbursement Schedule to the Traffic Consultant, the Consulting Engineer, the Trustee and AAFAF.   Within forty-five (45) days of receipt of the preliminary Annual Budget and Disbursement Schedule, the Traffic Consultant and the Consulting Engineer shall deliver to the Authority and AAFAF any comments thereon, as contemplated under Sections 7.04(b) and (c).

(ii)     On or before the first day of each Fiscal Year the Authority shall adopt the Annual Budget and Disbursement Schedule for that Fiscal Year reasonably incorporating the comments of the Traffic Consultant and the Consulting Engineer.   The Authority shall file copies of the Annual Budget and Disbursement Schedule with the Traffic Consultant, the Consulting Engineer, the Trustee and AAFAF and shall post the same on the Authority's website and on EMMA linked to the CUSIPs for the Outstanding Bonds.

(iii)     Each Annual Budget prepared and delivered in accordance with subsection (a)(i) above, shall show in reasonable detail (A) the Toll Receipts that the Traffic Consultant projects to be received for such Fiscal Year and other Pledged Revenues estimated by the Authority to be received during each Fiscal Year provided that such projection shall take into account any increases or decreases in Toll rates for which all legal conditions to effectiveness have been satisfied, (B) the amount of Annual Debt Service for each Fiscal Year, (C) the Costs of Operation, Maintenance and Administration of the Toll Facilities that the Consulting Engineer expects to be incurred during such Fiscal Year (calculated on an accrual basis), (D) the Toll Receipts and the total amount required to be deposited in the Renewal and Replacement Fund, if any, to make the amount on deposit therein equal to the amount of the Renewal and Replacement Requirement for such Fiscal Year and (E) the amount of Toll Receipts that will be sufficient to meet the Rate Covenant required pursuant to Section 7.01(a) for such Fiscal Year.   The Annual Budget shall be prepared in sufficient detail to show also the amounts to be deposited in the various funds, accounts and subaccounts created by or under this Trust Agreement.

(iv)     Each annual Disbursement Schedule prepared and delivered in accordance with subsection (a)(i) above, shall show in reasonable detail, the Costs of Operation, Maintenance and Administration of the Toll Facilities that the Consulting Engineer expects

- 45 -

HTA_CONF 00016124

to be incurred during such Fiscal Year (calculated on a cash basis), including (A) all cash disbursements contained in the Annual Budget for the Fiscal Year, (B) expenses that may have accrued in prior years and are expected to be paid in the current Fiscal Year, (C) amounts that are necessary to pay for or result from an emergency condition, (D) amounts that are necessary to pay judgments or otherwise result from the settlement of litigation, and (E) other similar disbursements.

(v)     On or before each Monthly Disbursement Date or any date on which the Authority submits a requisition for the withdrawal of funds from the Operating Reserve Fund for the payment of Costs of Operation, Maintenance and Administration of the Toll Facilities, an Authorized Officer of the Authority shall revise the Disbursement Schedule and deliver a certified copy of such revised Disbursement Schedule to the Trustee, the Traffic Consultant, the Consulting Engineer and AAFAF, which schedule shall include the information required by Section 7.02(a)(iv) ***provided, however***, no such revision will be effective if such revision, together with any previous revisions in the same Fiscal Year, result in a decrease of Net Receipts by more than 5%, unless the report required by clause (vi) is so provided.

(vi)     The Authority may amend the Annual Budget at any time during the Fiscal Year and any amendment which decreases Net Receipts by 5% or more in the aggregate for such Fiscal Year shall be accompanied by (i) a report of the Traffic Consultant and (b) a report of the Consulting Engineer, which reports collectively shall set forth an explanation of the amendments made to the Annual Budget (including, to the extent requested by the Consulting Engineer, with respect to Costs of Operation, Maintenance and Administration, and what actions, if any, the Authority should undertake to decrease Costs of Operation, Maintenance and Administration) and what actions, if any, the Authority should undertake to increase Net Receipts to the level set forth in such Annual Budget.  A copy of each amendment to the Annual Budget shall be filed promptly with the Trustee, the Traffic Consultant. the Consulting Engineer and AAFAF and shall be posted on EMMA linked to the CUSIPs for the Outstanding Bonds.

(vii)     The Costs of Operation, Maintenance and Administration of the Toll Facilities incurred in any Fiscal Year shall not exceed the amount of Costs of Operation, Maintenance and Administration of the Toll Facilities determined by the Consulting Engineer and set forth in the Annual Budget, as amended as provided in this Section 7.02. However, nothing in this Section shall limit the amount which the Authority may expend for Cost of Operation, Maintenance and Administration expenditures of the Toll Facilities in any year provided any amounts expended therefor in excess of the Annual Budget shall be received by the Authority from a source other than the Pledged Revenues and the Authority shall not make any reimbursement therefor from the Pledged Revenues.

(iv)     If for any reason the Authority has not adopted the Annual Budget before the first day of any Fiscal Year, the Annual Budget for the preceding Fiscal Year shall be deemed to be in force and shall be treated as the Annual Budget for the then-current Fiscal Year under the provisions of this Trust Agreement until the adoption of the Annual Budget for that Fiscal Year. Such Annual Budget will be adjusted upward or downward to reflect any changes in Annual Debt Service for such then-current Fiscal Year from the preceding

- 46 -

Fiscal Year and to take into account any increases or decreases in Toll rates for which all legal conditions to effectiveness have been satisfied. However, notwithstanding the foregoing, the failure to adopt an Annual Budget for two (2) successive Fiscal Years shall constitute an Event of Default hereunder.

(b)      If for any reason the Authority has not adopted the Disbursement Schedule before the first day of any Fiscal Year, the Disbursement Schedule for the preceding Fiscal Year shall be deemed to be in force and shall be treated as the Disbursement Schedule for the then-current Fiscal Year under the provisions of this Trust Agreement until the adoption of the Disbursement Schedule for that Fiscal Year. However, notwithstanding the foregoing, the failure to adopt the Disbursement Schedule for two (2) successive Fiscal Years shall constitute an Event of Default hereunder.

(c)      Upon the occurrence and continuance of an Event of Default (other than an Event of Default specified in 11.01(c)), the Authority shall prepare and deliver to the Trustee a Disbursement Schedule which sets forth on a monthly cash basis the Costs of Operation, Maintenance and Administration of the Toll Facilities, which Disbursement Schedule must be approved by the Consulting Engineer.

**Section 7.03   Operation and Maintenance Covenants**.  The Authority covenants that:

(a)      it will operate and maintain the Toll Facilities in conformity with law and all requirements of all governmental authorities having jurisdiction thereover, and modifications or alterations of the Toll Facilities, including changes in design, alignment or location as may be approved by the Authority, shall not substantially increase the cost of operating the Toll Facilities or substantially affect adversely the volume or character of the traffic using the Toll Facilities; and

(b)      (i) it will establish and enforce reasonable rules and regulations governing the use and the operation of the Toll Facilities, (ii) all compensation, salaries, fees and wages paid by it in connection with the maintenance, repair and operation of the Toll Facilities shall be reasonable, (iii) no more persons will be employed by it than are necessary, (iv) it will maintain and operate the Toll Facilities in an efficient and economical manner, (v) from the revenues of the Toll Facilities it will at all times maintain the Toll Facilities in good repair and in sound operating condition and will make all necessary repairs, renewals, improvements and replacements, and (vi) it will comply with all valid applicable acts, rules, regulations, orders and directions of any legislative, executive, administrative or judicial body applicable to the Toll Facilities or the Authority.

**Section 7.04   Retention of Consulting Engineer, Traffic Consultant and Other Consultants**.

(a)      The Authority covenants and agrees that it will, for the purpose of performing and carrying out the duties imposed on the Consulting Engineer, the Traffic Consultant and other consultants by this Section 7.04, retain the Consulting Engineer, the Traffic Consultant and other consultants; *provided, however*, that the termination of the engagement of any  Consulting Engineer or Traffic Consultant by the Authority or the resignation of any Consulting Engineer or Traffic Consultant shall not be effective, unless and until a successor Consulting Engineer or

- 47 -

HTA_CONF 00016126

Traffic Consultant, as applicable, shall have been appointed by the Authority and such consultant shall have accepted such appointment.  Except for fees and expenses incurred in connection with the issuance of Bonds, the cost of retaining the Consulting Engineer, the Traffic Consultant and other consultants shall be treated as a part of Cost of Operation, Maintenance and Administration of the Toll Facilities.

(b)     It shall be the duty of the Consulting Engineer to prepare and file reports with the Authority and the Trustee, no later than thirty (30) days after receipt of the Annual Budget, setting forth the following:

(i)     the recommendations of the Consulting Engineer as to the proper maintenance, repair and operation of the Toll Facilities during each of the next three succeeding Fiscal Years, and an estimate of the amounts of money necessary for such purposes;

(ii)     the recommendations of the Consulting Engineer as to the amount that should be deposited during each of the next three succeeding Fiscal Years to the credit of the Renewal and Replacement Fund; and

(iii)     the findings of the Consulting Engineer whether the Toll Facilities have been maintained in good repair and sound operating condition, and their estimate of the amount, if any, required to be expended to place such properties in such condition and the details of such expenditures and the approximate time required therefor.

(c)     It shall be the duty of the Traffic Consultant to prepare and file reports with the Authority and the Trustee, no later than thirty (30) days after receipt of the Annual Budget, setting forth the recommendations of the Traffic Consultant as to the adequacy of the existing Toll schedule for purposes of the Rate Covenant contained in Section 7.01 hereof for the then current Fiscal Year to date and recommendations as to any necessary or advisable revisions of the Toll schedule and such other advices and recommendations as they may deem desirable

(d)     The Authority further covenants that the Consulting Engineer, Traffic Consultant and other consultants shall at all times have free access to the Toll Facilities and every part thereof for the purposes of inspection and examination, and that its books, records and accounts may be examined by the Consulting Engineer, the Traffic Consultant and other consultants at all reasonable times.

**Section 7.05   <u>Payment of Principal, Redemption Price and Interest</u>.**  The Authority shall pay or cause to be paid every Secured Obligation, including Redemption Price and interest thereon, on the dates and at the places and in the manner provided herein and in the Secured Obligations according to the true intent and meaning thereof.

**Section 7.06   <u>Extension of Payment of Secured Obligations</u>.**  The Authority shall not directly or indirectly extend or assent to the extension of the maturity of any of the Secured Obligations or claims for interest by the purchase or funding of such Secured Obligations or claims for interest on Secured Obligations or by any other arrangement and, in case the maturity of any of such Secured Obligations or the time for payment of any such claims for interest on Secured Obligations shall be extended only with the written consent of the Holders of such Secured

- 48 -

HTA_CONF 00016127

Obligations, such Secured Obligations, or claims for interest shall not be entitled, in case of any default hereunder, to the benefit hereof or of any Supplemental Trust Agreement or to any payment out of any assets of the Authority or the funds (except funds held in trust for the payment of particular Secured Obligations  or claims for interest pursuant hereto and to any Supplemental Trust Agreement) held by the Trustee, except subject to the prior payment of the principal of all Outstanding Secured Obligations the maturity of which has not been extended and of such portion of the interest on such Secured Obligations  as shall not be represented by such extended claims for interest.

**Section 7.07   Powers as to Secured Obligations.**   Pursuant to the Act, the Plan of Adjustment and the Confirmation Order, the Authority is duly authorized to create, issue, execute and deliver the Secured Obligations and to execute this Trust Agreement and each Supplemental Trust Agreement.  The Authority further covenants that the Trust Estate is and shall be free and clear of any pledge, lien, charge or encumbrance thereon or with respect thereto, prior to, or of equal rank with, or junior to (other than as provided in Article XII), the first-priority lien on and first-priority security interest in the Trust Estate granted hereby.  The Authority further covenants that all corporate action on the part of the Authority to that end has been duly and validly taken. The Authority further covenants that the Secured Obligations and the provisions hereof and of each Supplemental Trust Agreement are and shall be the valid and legally enforceable obligations of the Authority in accordance with their terms and the terms hereof and of each Supplemental Trust Agreement.  The Authority further covenants that it shall not fail to at all times, to the extent permitted by law, defend, preserve and protect, or cause to be defended, preserved and protected, the lien and all of the rights of the Trustee for the benefit of the Holders of Secured Obligations under this Trust Agreement and each Supplemental Trust Agreement including, but not limited to, the first-priority lien and first-priority security interest in the Trust Estate created by this Trust Agreement against all claims and demands of all persons whomsoever.

**Section 7.08   Further Assurance.**   The Authority, at any and all times, shall, so far as it may be authorized by law, pass, make, do, execute, acknowledge and deliver all and every such further resolutions, acts, deeds, conveyances, assignments, transfers and assurances as may be necessary or desirable for the better assuring, conveying, granting, assigning and confirming all and singular the first-priority lien on and first-priority security interest in Pledged Revenues and other assets of the Trust Estate, the priority in all respects of the lien and security interest in the Trust Estate of the Bonds over the lien and security interest in the Trust Estate of the Subordinated Indebtedness and the validity, perfection and enforceability of such lien  against all Persons having claims of any kind in tort, contract or otherwise against the Authority or its assets irrespective of whether such Persons have notice of such first-priority lien or first-priority security interest of the same, or which the Authority may hereafter become bound to pledge or assign.

**Section 7.09   Accounts and Audits.**   The Authority shall keep proper books of records and accounts (separate from all other records and accounts of the Commonwealth and other Government Entities), which may be kept on behalf of the Authority by the Trustee, in which complete and correct entries shall be made of the accounts and its transactions relating to each Series of Bonds, which books and accounts, at reasonable hours and subject to the reasonable rules and regulations of the Authority, shall be subject to the inspection of the Secretary of Treasury, the Trustee or of any Holder of a Secured Obligation or a representative of any of the foregoing duly authorized in writing.  The Authority shall cause such books and accounts to be audited

- 49 -

annually after the end of each Fiscal Year by a nationally recognized independent certified public accounting firm selected by the Authority.  Annually within thirty (30) days after receipt by the Authority of the report of such audit, a copy of such report, signed by an Authorized Officer of the Authority, shall be furnished to the Trustee, the Oversight Board, and the Commonwealth and posted on EMMA, cross-referenced to each original issuance CUSIP number applicable to the Secured Obligations of which the Authority has knowledge.

Section 7.10   **Creation of Liens and Indebtedness.**  The Authority shall not create or cause to be created any lien, pledge, or charge on the Trust Estate other than the lien, pledge and charge on the Trust Estate created by this Trust Agreement; ***provided, however,*** that nothing contained herein shall prevent the Authority from issuing Additional Bonds in accordance with Section 2.04(a) or 2.04(b) of this Trust Agreement or additional Subordinated Indebtedness in accordance with Section 2.04(c) or 2.04(d) of this Trust Agreement; ***provided, however***, that any agreements governing Subordinated Indebtedness shall provide that any right to payment, liens, or enforcement of such claims shall be junior, inferior, and subordinate in all respects to the Bonds, and shall be subject in all respects to Article XII of this Trust Agreement.

Section 7.11   **Restricted Payments.**  The Authority shall not, directly or indirectly, make any payments or distributions of the Pledged Revenues or money in the funds and accounts established hereunder except in accordance with this Trust Agreement.

Section 7.12   **Offices for Payment and Registration of Secured Obligations.**  Unless all of the Bonds are Book Entry Bonds, the Authority shall at all times maintain an office or agency in the Borough of Manhattan, in The City of New York where Bonds may be presented for payment, which office or agency may be at or through the designated corporate trust office of the Trustee.  The Authority may, pursuant to a Supplemental Trust Agreement, designate an additional Paying Agent or Paying Agents where Secured Obligations of the Series authorized thereby or referred to therein may be presented for payment.  The Authority shall at all times maintain an office or agency in the Borough of Manhattan in The City of New York where Secured Obligations may be presented for registration, transfer or exchange and the Trustee is hereby appointed as its agent to maintain such office or agency for the registration, transfer or exchange of Secured Obligations.  The provisions of this Section shall be subject to the provisions of Section 3.01 hereof.

Section 7.13   **Payment of Lawful Charges.**  The Authority shall pay all taxes and assessments or other municipal or governmental charges, if any, lawfully levied or assessed upon the Trust Estate, when the same shall become due.

Section 7.14   **General**.  The Authority shall do and perform or cause to be done and performed all acts and things required to be done or performed by or on behalf of the Authority under the provisions hereof in accordance with the terms of such provisions.

Section 7.15   **Tax Exemption Covenant**.  The Authority covenants that it shall not take any action that would, or fail to take any action, if such failure would, (a) cause the Authority to lose its status as an issuer of municipal obligations for federal income tax purposes or (b) cause interest on the Tax Exempt Bonds to become includable in gross income for federal income tax purposes and that it will do and perform all acts and things permitted by law and reasonably

- 50 -

necessary or desirable to assure that interest paid to the Holders of any Tax Exempt Bonds shall be and remain excludable from gross income for federal income tax purposes.

**Section 7.16   Enforcement of Commonwealth Covenant**.  The Authority covenants to enforce the covenant of the Commonwealth set forth in §2019 of the Act, that the Commonwealth will not limit or restrict the rights or powers vested in the Authority under the Act until all Secured Obligations, together with the interest thereon, are fully met and discharged.

**Section 7.17   Corporate Existence**.  To the extent permitted by law, the Authority shall not take any action, or fail to take any action, the result of which would be the Authority failing to keep in full effect its existence, rights, duties, obligations and franchises as a public corporation and governmental instrumentality of the Commonwealth under the laws of the Commonwealth, including, without limitation, the Act.  Without limiting the generality of the immediately preceding sentence, the Authority shall not merge or consolidate, directly or indirectly, with any other legal person.

**Section 7.18   Covenant Against Sale or Encumbrance; Exception**.

No part of the Toll Facilities shall be sold, mortgaged, leased or otherwise disposed of or encumbered; provided, that:

(a)     the Authority may from time to time, sell, exchange or otherwise dispose of any machinery, fixtures, apparatus, tools, instruments or other movable property constituting a portion of the Toll Facilities, if the Authority determines that such articles are no longer needed or are no longer useful in connection with the construction or operation and maintenance of the Toll Facilities, and the proceeds thereof are applied to the replacement of the properties so sold or disposed of or are paid to be deposited in the Toll Receipts Fund and applied in accordance with Section 5.05 hereof.  The Authority may from time to time sell, exchange or otherwise dispose of any real property or release, relinquish or extinguish any interest therein as the Consulting Engineer certifies is not needed or serves no useful purpose in connection with the maintenance and operation of the Toll Facilities, and the proceeds thereof, if any, are required to be deposited in the Toll Receipts Fund and applied in accordance with Section 5.05 hereof; and

(b)     the Authority will not enter into a lease, long-term concession or other public-private partnership arrangement with respect to any real estate or personal property comprising a portion of the Toll Facilities (a "**Partial Disposition**"), unless there is delivered to the Trustee a certificate dated not earlier than thirty (30) days prior to the financial closing of any such arrangement, by an Authorized Officer of the Authority and approved by the Traffic Consultant, setting forth (i) the amount of Net Receipts that would have been collected in the most recently completed Fiscal Year had such Partial Disposition occurred prior to the first day of such Fiscal Year provided that such projection shall take into account any increases or decreases in Toll rates for which all legal conditions to effectiveness have been satisfied; (ii) Maximum Annual Debt Service on the Secured Obligations that will remain Outstanding after such agreement become effective in accordance with its terms; and (iii) the percentages derived by dividing the amount in item (i) above by the amounts shown in item (ii) above, which percentage shall not be less than 120%.  Proceeds from a Partial Disposition remaining after the repayment of (x) Bonds in accordance with Section 4.02(b), (y) any other Secured Obligations to the extent required to be

- 51 -

redeemed in order to maintain for the Tax-Exempt Bonds that will remain Outstanding after such Partial Disposition, the exclusion of interest on such Tax Exempt Bonds from gross income for purposes of federal income taxation and (z) if no Bonds are then Outstanding, Subordinated Indebtedness in accordance with the applicable Supplement Trust Agreement, shall be deposited in the Toll Receipts Fund and applied in accordance with Section 5.05 of this Trust Agreement.

Section 7.19   **Separateness**.  The Authority shall operate as a legally separate entity from the Commonwealth (including all public corporations, agencies, and instrumentalities thereof) and all other legal persons and as a bankruptcy remote, single purpose entity (limited to the activities authorized in the Act).  The Authority shall (a) avoid commingling the Pledged Revenues and other assets of the Authority with those of the Commonwealth or any Governmental Entity or other legal person; (b) keep the Authority By-Laws separate and in full force and effect; (c) maintain separate financial statements, bank accounts, and books and records; (d) observe separate corporate governance, management and other formalities of the Authority; (e) otherwise operate as an entity that is separate and distinct from all other legal persons, including, without limitation, the Commonwealth and its other public corporations, agencies and instrumentalities; and (f) comply with the separateness covenants contained in the Authority By-Laws.

Section 7.20   **Insurance**.  The Authority covenants that it will at all times maintain, to the extent reasonably obtainable, the following kinds and the following amounts of insurance, or otherwise make provision for the payment of claims against the Authority, with such variations as shall be reasonable to be required to conform to the applicable standard or customary insurance practice including by AM Best insurers with ratings of "A+" or better , to the extent available and subject to exceptions and permissible deductions as are ordinarily required, all to be determined by the Authority in its sole discretion after consultation with its insurance consultants:

(a)   Property insurance on all real and personal property, including bridges and viaducts owned by the Authority as part of the Toll Facilities in sufficient amounts to cover direct physical loss or damage from causes normally insured against;

(b)   Liability insurance to cover injury to Persons or damage to property for claims arising out of the construction, maintenance, reconstruction, or operation of the Toll Facilities;

(c)   Business interruption insurance covering loss of Pledged Revenues for a period of at least two (2) years, due to any interruption in the use of the Toll Facilities which cause a loss of revenue to the Authority;

(d)   Any coverage which is customarily required to be maintained by any Commonwealth or federal law, including, but not limited to, workers' compensation coverage, and motor vehicle liability coverage; and

(e)   Any additional insurance which may be necessary or advisable to protect the interests of the Authority.

Section 7.21   **Compliance**.  The Authority is required to deliver to the Trustee, within 120 days after the end of each Fiscal Year or within 14 days of request, a certificate of the Authority signed by the Authorized Officer thereof indicating whether the signers thereof know of any Event

- 52 -

of Default that occurred during the period from and including the last such certificate of the Authority or, if none, to the date hereof. The Authority is required to deliver to the Trustee, as soon as practicable after the occurrence thereof, a certificate of the Authority signed by the Authorized Officer thereof indicating any default of which it has actual knowledge and any Events of Default, the status thereof and what action the Authority is taking or proposes to take in respect thereof.

Section 7.22  **Continuing Disclosure.**  The Authority covenants that, in connection with the delivery of the Initial Bonds hereunder, it will enter into a Reporting Agreement. An event of default under such Reporting Agreement, including the failure to timely provide the notices or information described therein shall not be an Event of Default hereunder and the exclusive remedies available to any Person shall be as described in the Reporting Agreement.

Section 7.23  **Non-Impairment**.  As required by the Confirmation Order, the Authority shall take no action under this Trust Agreement or otherwise that would (i) impair the first-priority lien and first-priority security interest on the Trust Estate, (ii) impair the senior lien and senior security interest on the Trust Estate granted to the Holders of Outstanding Bonds, which shall in all respects be senior and superior to the subordinate lien and subordinate security interest on the Trust Estate granted to the Holders of Outstanding Subordinated Indebtedness, (iii) impair or prevent the monthly deposits under Section 5.05, (iv) limit or alter the rights vested in the Authority in accordance with the Plan of Adjustment and the Confirmation Order in connection with the Secured Obligations, or (v) impair the rights and remedies of the Trustee or the Bondholders under this Trust Agreement and, in particular, Article XI.

## ARTICLE VIII.

## CONCERNING THE TRUSTEE AND THE PAYING AGENT

Section 8.01  **Appointment and Acceptance of Trustee**.  The Trustee, by its execution and delivery of this Trust Agreement, does signify its acceptance of its appointment as and of the duties and obligations of Trustee and Paying Agent imposed upon it hereby.

Section 8.02  **Appointment and Acceptance of Paying Agents**.  In addition to the Trustee, the Authority may appoint one or more Paying Agents for the Secured Obligations of any Series in the Supplemental Trust Agreement authorizing such Secured Obligations or in the manner provided herein or in such Supplemental Trust Agreement or shall appoint such Paying Agent or Paying Agents prior to the authentication and delivery of the Secured Obligations so long as any such Paying Agents satisfy the requirements set forth in Section 8.10 hereof, and may at any time or from time to time appoint one or more other Paying Agents in the manner and subject to the conditions set forth in Section 8.10 hereof for the appointment of a successor Paying Agent. Each Paying Agent shall signify its acceptance of the duties and obligations imposed upon it hereby by written instrument of acceptance deposited with the Authority and the Trustee.

Section 8.03  **Responsibilities of Trustee and Paying Agents**.  The recitals of fact contained herein and in each Supplemental Trust Agreement and in the Secured Obligations shall be taken as the statements of the Authority and neither the Trustee nor any Paying Agent assumes any responsibility for the correctness of the same. Neither the Trustee nor any Paying Agent makes

- 53 -

any representations as to the validity or sufficiency hereof, of any Supplemental Trust Agreement or of any Secured Obligations, or in respect of the security afforded hereby or by each Supplemental Trust Agreement, and neither the Trustee nor any Paying Agent shall incur any responsibility in respect thereof.  Neither the Trustee nor any Paying Agent shall be under any responsibility or duty with respect to: (i) the issuance of the Secured Obligations for value; (ii) the application of the proceeds thereof except to the extent that such proceeds are received by it in its capacity as Trustee or Paying Agent; or (iii) the application of any money paid to the Authority or others in accordance herewith and with each Supplemental Trust Agreement except as to the application of any money paid to it in its capacity as Trustee or Paying Agent.  Neither the Trustee nor any Paying Agent shall be liable in connection with the performance of or failure to perform its duties hereunder and under each Supplemental Trust Agreement except for its own negligence or willful misconduct.

The duties and obligations of the Trustee and any Paying Agent shall be determined by the express provisions hereof and of each Supplemental Trust Agreement and neither the Trustee nor any Paying Agent shall be liable except for the performance of or failure to perform such duties and obligations as are specifically set forth herein and in each Supplemental Trust Agreement, and no implied covenants or obligations should be read into this Trust Agreement against the Trustee. If any Event of Default under this Trust Agreement shall have occurred and be continuing, the Trustee shall exercise such of the rights and powers vested in it by this Trust Agreement and shall use the same degree of care as a prudent person, as a trustee under a trust agreement, would exercise or use in the circumstances in the conduct of such prudent person's own affairs.

Section 8.04   **Property Held in Trust.**  All money and securities conveyed to or held by the Trustee at any time pursuant to the terms hereof and of each Supplemental Trust Agreement shall be and hereby are assigned, transferred and set over unto the Trustee in trust for the purposes and under the terms and conditions hereof and of each Supplemental Trust Agreement.

Section 8.05   **Rights of the Trustee and the Paying Agent.**  The Trustee and any Paying Agent shall be protected in acting upon any notice, resolution, request, consent, order, certificate, report, opinion, bond or other paper or document reasonably believed by it in good faith to be genuine, and to have been signed or presented by the proper party or parties.  The Trustee and any Paying Agent may consult with counsel of its selection, who may or may not be of counsel to the Authority, and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it in good faith and in accordance therewith.

Whenever the Trustee or any Paying Agent shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder and under any Supplemental Trust Agreement, such matter (unless other evidence in respect thereof be specifically prescribed hereby) may be deemed to be conclusively proved and established by a certificate signed by an Authorized Officer of the Authority.  Such certificate shall be full warrant for any action taken or suffered in good faith under the provisions hereof and of the Supplemental Trust Agreement upon the faith thereof, but in its discretion the Trustee or any Paying Agent may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as it may deem reasonable.  Except as otherwise expressly provided herein and in each Supplemental Trust Agreement, any request, order, notice or other direction required or permitted to be furnished pursuant to any provision hereof and of any Supplemental Trust Agreement by the

- 54 -

HTA_CONF 00016133

Authority to the Trustee or any Paying Agent shall be sufficiently executed if executed in the name of the Authority by an Authorized Officer thereof.

The Trustee shall not be deemed to have notice of any Event of Default hereunder unless an Authorized Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such an Event of Default is received by the Trustee at the designated corporate trust office of the Trustee and such notice references the Secured Obligations relative to which an Event of Default has occurred.

The Trustee may request that the Authority deliver a certificate of an Authorized Officer of the Authority setting forth the names of individuals and their respective titles of officers authorized at such time to take specified actions pursuant to this Trust Agreement and any Supplemental Trust Agreement, which certificate may be signed by any person authorized to sign an officer's certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

Neither the Trustee nor any Paying Agent shall be under any liability for interest on any moneys received hereunder except as may be otherwise agreed upon.

Notwithstanding the effective date of this Trust Agreement or anything to the contrary in this Trust Agreement, the Trustee shall have no liability or responsibility for any act or event relating to this Trust Agreement which occurs prior to the date the Trustee formally executes this Trust Agreement and commences acting as Trustee hereunder.

The Trustee shall have no responsibility with respect to any information, statement or recital in any official statement, offering memorandum or any other disclosure material prepared or distributed with respect to the Secured Obligations, except for any information provided by the Trustee, and shall have no responsibility for compliance with any state or federal securities laws in connection with the Secured Obligations.

The Trustee shall have no liability for any action or failure to act in good faith in accordance with a direction of the Holders of a Quarter in Interest of Outstanding Bonds or Majority in Interest of Outstanding Bonds, as applicable, pursuant to the terms hereof in respect of such action or failure to act, except to the extent of its negligence or willful misconduct in connection therewith.

The Trustee and any Paying Agent shall have the right to accept and act upon instructions, including funds transfer instructions given pursuant to this Trust Agreement and delivered using Electronic Means ("**Instructions**"); *provided, however*, that the Authority shall provide to the Trustee and each Paying Agent an incumbency certificate listing officers with the authority to provide such Instructions and containing specimen signatures of such officers, which incumbency certificate shall be amended by the Authority whenever a person is to be added or deleted from the listing.  If the Authority elects to give the Trustee or a Paying Agent Instructions using Electronic Means and the Trustee or such Paying Agent in its discretion elects to act upon such Instructions, the Trustee's or such Paying Agent's understanding of such Instructions shall be deemed controlling.  The Authority understands and agrees that the Trustee or a Paying Agent cannot determine the identity of the actual sender of such Instructions and that the Trustee and such Paying Agent shall conclusively presume that directions that purport to have been sent by an Authorized

- 55 -

HTA_CONF 00016134

Officer of the Authority listed on the incumbency certificate provided to the Trustee or such Paying Agent have been sent by such Authorized Officer.  The Authority shall be responsible for ensuring that only Authorized Officers thereof transmit such Instructions to the Trustee or any Paying Agent and that the Authority and all Authorized Officers are solely responsible to safeguard the use and confidentiality of applicable user and authorization codes, passwords or authentication keys upon receipt by the Authority.  Neither the Trustee nor any Paying Agent shall be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's or such Paying Agent's reliance upon and compliance with such Instructions notwithstanding such directions conflict or are inconsistent with a subsequent written instruction unless due to gross negligence or willful misconduct of the Trustee.  The Authority agrees: (i) to assume all risks arising out of the use of Electronic Means to submit Instructions to the Trustee or any Paying Agent, including without limitation the risk of the Trustee or such Paying Agent acting on unauthorized Instructions, and the risk of interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting Instructions to the Trustee or any Paying Agent and that there may be more secure methods of transmitting Instructions than the method(s) selected by the Authority; (iii) that the security procedures (if any) to be followed in connection with its transmission of Instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances; and (iv) to notify the Trustee and any Paying Agent immediately upon learning of any breach, compromise or unauthorized use of the security procedures.

**Section 8.06   Compensation and Indemnification.**   Unless otherwise provided, the Authority shall pay to the Trustee and to each Paying Agent, from time to time, such compensation as shall be agreed in writing for all services rendered by it hereunder and under the applicable Supplemental Trust Agreement, and also all reasonable and necessary expenses, charges, counsel fees and expenses and other disbursements, including those of their attorneys, agents and employees, required to be incurred in the performance of their powers and duties hereunder and under the applicable Supplemental Trust Agreement.  The Authority shall indemnify and save the Trustee and each Paying Agent harmless against any liabilities which it may incur in the acceptance, exercise and performance of its powers and duties hereunder and under the applicable Supplemental Trust Agreement and which are not due to its negligence or willful misconduct.  None of the provisions contained herein or in any Supplemental Trust Agreement shall require the Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers, if there is reasonable ground for believing that the repayment of such funds or liability is not reasonably assured to it.  The Trustee Expenses Cap does not apply to or limit the Authority's liability under this Section for the fees, expense and indemnification of the Trustee and each Paying Agent.

The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and to each agent, custodian and other person employed to act hereunder.

The provisions of this Section shall survive termination of this Trust Agreement and the resignation and removal of the Trustee.

- 56 -

**Section 8.07   Permitted Acts.**   The Trustee may become the owner of or may deal in Bonds as fully and with the same rights as if it were not such Trustee or a Paying Agent. The Trustee may act as depository for, and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, the Authority or any committee formed to protect the rights of Holders of Secured Obligations or to effect or aid in any reorganization growing out of the enforcement hereof or of the Secured Obligations or any Supplemental Trust Agreement whether or not such committee shall represent the Holders of a Majority in Interest of the then Outstanding Bonds in respect of which any such action is taken.

The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys appointed with due care.

The permissive rights of the Trustee to do things enumerated in this Trust Agreement shall not be constructed as a duty unless so specified herein.

**Section 8.08   Resignation of Trustee.**   The Trustee, or any successor thereof, may at any time resign and be discharged of its duties and obligations hereunder and under each Supplemental Trust Agreement by giving not less than sixty (60) days' written notice to: (a) the Authority, and (b) the Holders of the Secured Obligations by first class mail, postage prepaid, at their last known addresses, if any, appearing on the registration books or, in the case of a Bond Insurer, at such Bond Insurer's last known address,  Such resignation shall take effect upon the date specified in such notice (which shall be no sooner than the date specified in the immediately preceding sentence) unless previously a successor shall have been appointed as provided in Section 8.10 hereof, in which event such resignation shall take effect immediately on the appointment of such successor; ***provided, however,*** that such resignation shall not take effect until a successor Trustee has been appointed and has accepted such appointment pursuant to Section 8.10 hereof.

**Section 8.09   Removal of Trustee.**   The Trustee and/or Paying Agent, or any successor thereof, may be removed at any time upon thirty (30) day's written notice by the Authority (provided no Event of Default has occurred or is continuing) or the Holders of a Quarter in Interest of the Outstanding Bonds, by an instrument or concurrent instruments in writing signed and acknowledged by such Bondholders or by their attorneys-in-fact duly authorized and delivered to the Authority.  The Trustee and/or Paying Agent, or any successor thereof, may also be removed at any time for cause or any breach of trust or for acting or proceeding in violation of, or failing to act or proceed in accordance with, any provisions hereof or of any Supplemental Trust Agreement with respect to the duties and obligations of the Trustee, as applicable, by any court of competent jurisdiction upon application by the Holders of a Quarter in Interest of the Outstanding Bonds.  No removal hereunder shall take effect until a successor Trustee has been appointed and has accepted such appointment.  A copy of each instrument or order providing for the removal of the Trustee, or any successor thereof, shall be delivered by the applicable Holders to the Trustee or such successor thereof and to the Authority.

**Section 8.10   Successor Trustee and/or Paying Agent.**   In case the Trustee and/or Paying Agent, or any successor thereof, shall resign or shall be removed or shall become incapable of acting, or shall be adjudged a bankrupt or insolvent, or if a receiver, liquidator or conservator of the Trustee and/or Paying Agent or of its property shall be appointed, or if any public officer shall take charge or control of the Trustee and/or Paying Agent or of its property or affairs, a

HTA_CONF 00016136

successor may be appointed by the Holders of a Quarter in Interest of the Outstanding Bonds, by an instrument or concurrent instruments in writing signed and acknowledged by such Holders or by their attorneys-in-fact duly authorized and delivered to such successor Trustee and/or Paying Agent, notification thereof being given to the Authority and the predecessor Trustee and/or Paying Agent; **provided, nevertheless,** that unless a successor Trustee and/or Paying Agent shall have been appointed by the Holders as aforesaid, the Authority by a duly executed written instrument signed by an Authorized Officer of the Authority shall forthwith appoint a Trustee and/or Paying Agent to fill such vacancy until a successor Trustee and/or Paying Agent shall be appointed by the Holders as authorized in this Section.  The Trustee and/or Paying Agent shall mail a copy of the notice of any such appointment, postage prepaid, to the Holders of any Secured Obligations, at their last addresses appearing on the registry books or, in the case of a Bond Insurer, at such Bond Insurer's last known address.  Any successor Trustee and/or Paying Agent appointed by the Authority shall, immediately and without further act, be superseded by a Trustee and/or Paying Agent appointed by the Holders of a Quarter in Interest of the Outstanding Bonds.

If in a proper case no appointment of a successor shall be made within forty–five (45) days after the giving of written notice in accordance with Section 8.08 hereof or after the occurrence of any other event requiring or authorizing such appointment, the Trustee and/or Paying Agent or any Holder may apply, at the expense of the Authority, to any court of competent jurisdiction for the appointment of such a successor, and such court may thereupon, after such notice, if any, as such court may deem proper, appoint such successor.  Any successor appointed under the provisions of this Section shall be a bank having trust powers, a trust company or national banking association, in each case located in the State of New York and having a capital and surplus aggregating at least $50,000,000, if there be such a bank having trust powers or trust company or national banking association willing and able to accept the appointment on reasonable and customary terms and authorized by law to perform all the duties required hereby and by each Supplemental Trust Agreement.

Neither the Authority, the Commonwealth, any Government Entity nor any public corporation, agency or instrumentality of the foregoing nor any entity or person affiliated with the foregoing may be appointed as Trustee or Paying Agent hereunder.

**Section 8.11   <u>Transfer of Rights and Property to Successor Trustee</u>.**  Any successor appointed under the provisions of Section 8.10 hereof shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument accepting such appointment, and thereupon such successor, without any further act, deed or conveyance shall become fully vested with all money, estates, properties, rights, powers, duties and obligations of its predecessor hereunder and under each Supplemental Trust Agreement, with like effect as if originally appointed as Trustee.  However, the Trustee then ceasing to act shall nevertheless, on request by the Authority or of such successor, and upon payment of all amounts owed to it hereunder, execute, acknowledge and deliver such instruments of conveyance and further assurance and do such other things as may reasonably be required for more fully and certainly vesting and confirming in such successor all the right, title and interest of such Trustee in and to any property held by it hereunder, and shall pay over, assign and deliver to such successor any money or other properties subject to the trusts and conditions set forth herein.  Should any deed, conveyance or instrument in writing from the Authority be required by such successor for more fully and certainly vesting in and confirming to it any such money, estates, properties, rights, powers, duties or obligations, any and

- 58 -

all such deeds, conveyances and instruments in writing shall, on request, and so far as may be authorized by law, be executed, acknowledged and delivered by the Authority.

Section 8.12   **Merger or Consolidation of the Trustee.**   Any company into which the Trustee may be merged or with which it may be consolidated or any company resulting from any merger or consolidation to which it shall be a party or any company to which such Trustee may sell or transfer all or substantially all of its corporate trust business, provided such company shall be a bank having trust powers or trust company or national banking association qualified to be a successor to such Trustee under the provisions of Section 8.10 hereof, shall be the successor to such Trustee, without any further act, deed or conveyance.  In the event that such entity is not so qualified, such entity shall nevertheless continue to serve as Trustee until a successor Trustee is appointed by the Holders of a Quarter in Interest of the Outstanding Bonds.

Section 8.13   **Ancillary Agreements.**   The Trustee is authorized to enter into and perform its obligations under the any Ancillary Agreement to which it is a party.

## ARTICLE IX.

## SUPPLEMENTAL TRUST AGREEMENTS

Section 9.01   **Modification and Amendment without Consent.**   Notwithstanding any other provisions of this Article IX or Article X hereof, the Authority and the Trustee may execute and deliver at any time or from time to time Supplemental Trust Agreements for any one or more of the following purposes, and each such Supplemental Trust Agreement shall become effective in accordance with its terms:

(a)   To provide for the issuance of a Series of Bonds under and in accordance with (and, for the avoidance of doubt, not in any way contrary to or inconsistent with) the provisions hereof and to prescribe the terms and conditions pursuant to which such Bonds may be issued, paid or redeemed;

(b)   To provide for the issuance of Subordinated Indebtedness and to prescribe the terms and conditions pursuant to which such Subordinated Indebtedness may be issued, paid or redeemed, the creation of any additional funds and accounts required for the payment or security thereof, and the provision of any additional rights and remedies applicable thereto; ***provided, however***, that in no event shall the provisions of such Supplemental Trust Agreement provide for any additional rights or remedies that are inconsistent with the provisions of this Trust Agreement relating to the senior lien and senior security interest on the Trust Estate granted to the Holders of Bonds, the priority of payment of such Bonds, the provisions of Article XII of this Trust Agreement and the rights and remedies applicable thereto for so long as any such Bonds remain Outstanding

(c)   To add additional covenants and agreements of the Authority for the purpose of further securing the payment of the Bonds or Subordinated Indebtedness, provided such additional covenants and agreements are not contrary to or inconsistent with the covenants and agreements of the Authority or the Commonwealth contained herein, in the Ancillary Agreements or in the Act; provided that, in respect of the Bonds, such additional covenants and agreements shall be for the equal benefit and security of all Bonds, without discrimination or preference and, in respect of

- 59 -

any Subordinated Indebtedness, in no event shall such covenants or agreements provide for any additional rights or remedies that are inconsistent with the provisions of this Trust Agreement relating to the senior lien and senior security interest in the Trust Estate granted to the Holders of Bonds, the priority of payment of such Bonds, the provisions of Article XII of this Trust Agreement and the rights and remedies applicable thereto for so long as any such Bonds remain Outstanding;

(d)     To prescribe further limitations and restrictions upon the issuance of Refunding Bonds, Additional Bonds and Subordinated Indebtedness by the Authority which are not contrary to or inconsistent with the limitations and restrictions thereon theretofore in effect including the limitations and restrictions set forth in the Act and the Plan of Adjustment;

(e)     To surrender any right, power or privilege reserved to or conferred upon the Authority by the terms hereof, provided that the surrender of such right, power or privilege is not contrary to or inconsistent with the covenants and agreements of the Authority or the Commonwealth contained herein, in the Ancillary Agreements or in the Act; provided that same shall be for the benefit and security of all Secured Obligations, without discrimination or preference except as otherwise provided herein;

(f)     To confirm, as further assurance to secure the repayment of the Secured Obligations, the first-priority lien and first-priority security interest, and the subjection to the first-priority lien and first-priority security interest, of the Authority's right title and interest in the Pledged Revenues and other assets of the Trust Estate, or any other money, investments thereof or funds, provided that such further assurance shall be for the benefit and security of all Secured Obligations, without discrimination or preference except as otherwise provided herein;

(g)     To modify any of the provisions hereof or any previously adopted Supplemental Trust Agreement to accommodate the issuance of Subordinated Indebtedness provided that such modifications do not materially and adversely affect the rights of any of the Holders of Bonds, and provided that such modifications may not conflict with Article XII of this Trust Agreement;

(h)     To modify any of the provisions hereof or of any previously adopted Supplemental Trust Agreement in any other respects, provided that such modifications shall not be effective until after all Secured Obligations of any Series of Secured Obligations Outstanding as of the effective date of such Supplemental Trust Agreement shall cease to be Outstanding, and all Secured Obligations issued under such Supplemental Trust Agreements shall contain a specific reference to the modifications contained in such subsequent Supplemental Trust Agreement;

(i)     With the consent of the Trustee, to cure any ambiguity or defect or inconsistent provision herein or to insert such provisions clarifying matters or questions arising hereunder as are necessary or desirable, provided that such modification shall not, in the opinion of Transaction Counsel to be provided in accordance with the last paragraph of this Section 9.01, materially adversely affect the interests of the Bondholders or holders of Subordinated Indebtedness in any respect.

Notwithstanding the above, no Supplemental Trust Agreement authorized by this Section 9.01 shall be effective unless and until it is executed by both the Trustee and the Authority and the Authority has delivered to the Trustee an opinion of Transaction Counsel to the effect that

HTA_CONF 00016139

the execution of the Supplemental Trust Agreement will not adversely affect: (i) the excludability of interest on the Tax Exempt Bonds from gross income of the Holders for federal income tax purposes, and (ii) with respect to a modification or amendment made pursuant to paragraphs (b) – (f) above, the rights of the Holders of the Secured Obligations in any other materially adverse respect.

For the avoidance of doubt, no Supplemental Trust Agreement shall be permitted pursuant to this Section 9.01 to the extent it would effectuate a modification or amendment that is only permitted under Section 10.01 with the consent of each affected Holder.

**Section 9.02** <u>**Supplemental Trust Agreements Effective with Consent of Bondholders.**</u>  The provisions hereof may also be modified or amended at any time or from time to time by a Supplemental Trust Agreement, subject to compliance with Section 10.01 of this Trust Agreement, such Supplemental Trust Agreement to become effective upon the filing with the Trustee of a copy thereof certified by an Authorized Officer of the Authority.

**Section 9.03** <u>**General Provisions Relating to Supplemental Trust Agreements.**</u>  This Trust Agreement shall not be modified or amended in any respect except in accordance with and subject to the provisions of this Article IX, Article X or Section 7.08 hereof.  Nothing contained in this Article IX or Article X hereof shall affect or limit the rights or obligations of the Authority to make, do, execute or deliver any Supplemental Trust Agreement, act or other instrument pursuant to the provisions of Section 7.08 hereof or the right or obligation of the Authority to execute and deliver to the Trustee or any Paying Agent any instrument elsewhere herein provided or permitted to be delivered to the Trustee or any Paying Agent.

A copy of every Supplemental Trust Agreement, when filed with the Trustee for the Trustee's execution, shall be accompanied by the opinion of Transaction Counsel required by Section 9.01, the Rating Confirmation, if any is required by Section 9.01(j), and an opinion of Transaction Counsel stating that such Supplemental Trust Agreement has been duly and lawfully adopted in accordance with the provisions hereof, is authorized or permitted hereby and is valid and binding upon the Authority and enforceable in accordance with its terms.  The Trustee shall be fully protected in relying on such an opinion of Transaction Counsel.

Notwithstanding anything to the contrary herein, no Supplemental Trust Agreement shall become effective without the written consent of the Trustee.

The Authority, as soon as practicable after a Supplemental Trust Agreement changing, amending or modifying any provisions of this Trust Agreement has become effective, shall give written notice thereof to each Rating Service then providing a rating on the Outstanding Bonds at the request of the Authority and shall post a copy of such Supplemental Trust Agreement on the Authority's website and EMMA under the CUSIPs for the Outstanding Bonds.

**ARTICLE X.**

<u>**AMENDMENTS OF TRUST AGREEMENT**</u>

**Section 10.01** <u>**Powers of Amendment.**</u>

- 61 -

(a)     Except as provided in Section 9.01 hereof, any modification or amendment hereof and of the rights and obligations of the Authority and of the Holders of the Secured Obligations hereunder may only be made by a Supplemental Trust Agreement, with the written consent given as hereinafter provided in Section 10.02 hereof, (i) of the Holders of at least a Majority in Interest of the Bonds Outstanding at the time such consent is given, or (ii) in case less than all of the Series of Secured Obligations then Outstanding are affected by the modification or amendment, of the Holders of at least a Majority in Interest of the Bonds of each Series so affected and Outstanding at the time such consent is given; ***provided, however,*** that if such modification or amendment will, by its terms, not take effect so long as any Secured Obligations of any specified like Series, maturity and tenor remain Outstanding, the consent of the Holders of such Secured Obligations shall not be required and such Secured Obligations shall not be deemed to be Outstanding for the purpose of any calculation of Outstanding Bonds under the definition of Majority in Interest for purposes of this Section.

(b)     No such modification or amendment shall, without the prior written consent of the Holder of such Secured Obligation, permit a change in the provisions related to the timing or amount of any payment on the Secured Obligations, including, without limitation, any change in the currency to be used to pay Principal of and interest on the Secured Obligations, any change in the amount or date of any Sinking Fund Installment, payment of Principal or any other payment, the terms of redemption or maturity of the principal of any Outstanding Secured Obligations or of any installment of interest thereon or a reduction in the principal amount or the Redemption Price thereof or in the rate of interest thereon.  Further, no such modification or amendment shall (i), without the prior written consent of the Holder of such Secured Obligation, reduce the percentages or otherwise affect the classes of Secured Obligations the consent of the Holders of which is required to effect any such modification or amendment, create a lien upon or pledge of the Trust Estate (other than the liens created under this Trust Agreement), create a preference of priority of any Bond or Bonds over any other Bond or Bonds, to create a preference or priority of any Subordinated Indebtedness over any Bond or Bonds, or to otherwise modify the covenant in section 7.10 and (ii) materially adversely affect the rights of any holder of Bonds or Subordinated Indebtedness without the prior written consent of such holder of Bonds or Subordinated Indebtedness. Further, no waiver of any default or compliance with any provision of this Section 10.01(b) shall be granted without the prior written consent of the Holder of such Secured Obligation.

(c)     For the purposes of this Section, a Series shall be deemed to be affected by a modification or amendment hereof if the same adversely affects or diminishes the rights of the Holders of Secured Obligations of such Series in any respect.  The Trustee may in its discretion reasonably determine whether or not, in accordance with the foregoing provisions, the Secured Obligations of any particular Series or maturity would be affected by any modification or amendment hereof and any such determination shall be binding and conclusive on the Authority and all Holders of Secured Obligations.  If the Trustee does not make such a determination, the Trustee shall obtain an opinion of Transaction Counsel as to whether the Secured Obligations of any particular Series or maturity would be so affected by any such modification or amendment hereof, which such opinion shall be binding and conclusive on the Authority and all Holders of Secured Obligations.

HTA_CONF 00016141

**Section 10.02  Consent of Holders of Secured Obligations.**  The Authority may at any time execute and deliver a Supplemental Trust Agreement making a modification or amendment permitted by the provisions of Section 10.01 hereof to take effect when and as provided in this Section.  Upon the adoption of such Supplemental Trust Agreement, a copy thereof, certified by an Authorized Officer of the Authority shall be filed with the Trustee for the inspection of the Holders of Secured Obligations.  A copy of such Supplemental Trust Agreement (or summary thereof or reference thereto in form approved in writing by the Trustee) together with a request to Holders of Secured Obligations, to the extent required hereby, for their consent thereto in form satisfactory to the Trustee, shall be mailed or distributed by Electronic Means by the Authority to each affected Holder of Secured Obligations.  Such Supplemental Trust Agreement shall not become effective until (a) there shall have been filed with the Trustee (i) the written consent of the Holders of the percentages of Outstanding Secured Obligations specified in Section 10.01 hereof and (ii) the opinions of Transaction Counsel required by Section 9.03 and (b) a notice shall have been mailed or distributed by Electronic Means as hereinafter in this Section provided.  Any such consent shall be binding upon the Holder of the Secured Obligations giving such consent and on any subsequent Holder of such Secured Obligations (whether or not such subsequent Holder has notice thereof).  At any time after the Holders of the required percentages of Secured Obligations shall have filed their consent to the Supplemental Trust Agreement, notice, stating in substance that the Supplemental Trust Agreement has been consented to by the Holders of the required percentages of Bonds and will be effective as provided in this Section, shall be given by the Trustee to the Holders of Secured Obligations by mailing such notice to Holders of Secured Obligations or by Electronic Means.  The Authority shall file with the Trustee proof of giving such notice.  Such Supplemental Trust Agreement shall be deemed conclusively binding upon the Authority and the Holders of all Secured Obligations at the expiration of sixty (60) days after the filing with the Trustee of the proof of the giving of such notice, except in the event of a final decree of a court of competent jurisdiction setting aside such consent in legal action or equitable proceeding commenced for such purpose within such sixty (60) day period; ***provided, however***, that the Authority during such sixty (60) day period and any such further period during which any such action or proceeding may be pending shall be entitled in its absolute discretion to take such action, or to refrain from taking such action, with respect to such Supplemental Trust Agreement as it may deem expedient.

**Section 10.03  Modifications by Unanimous Consent.**  The terms and provisions hereof and the rights and obligations of the Authority and of the Holders of the Secured Obligations may be modified or amended in any respect upon the execution, delivery and filing with the Trustee by the Authority of a copy of a Supplemental Trust Agreement certified by an Authorized Officer of the Authority and the consent of the Holders of all of the Secured Obligations then Outstanding, such consent to be given as provided in Section 10.02.

**Section 10.04  Mailing**.  Any provision in this Article X for the mailing of a notice or other document to Holders of Secured Obligations shall be fully complied with if it is mailed postage prepaid or distributed by Electronic Means only (a) to each registered owner of Secured Obligations then Outstanding at such person's address, if any, appearing upon the registry books of the Authority, (b) to the Trustee, and (c) to the Bond Insurer at its last known address.

**Section 10.05  Exclusion of Secured Obligations.**  Secured Obligations owned or held by or for the account of the Authority shall not be deemed Outstanding for the purpose of consent or

HTA_CONF 00016142

other action provided for herein, and the Authority shall not be entitled with respect to such Bonds to give any consent or take any other action provided for herein.  At the time of any consent or other action taken hereunder, the Authority shall furnish the Trustee a certificate of an Authorized Officer of the Authority, upon which the Trustee may rely, describing all Secured Obligations so to be excluded.

**Section 10.06 <u>Notation on Secured Obligations.</u>** Secured Obligations delivered after the effective date of any action taken as provided in Article IX hereof or this Article X may, and if the Trustee so determines, shall, bear a notation by endorsement or otherwise in form approved by the Authority and the Trustee as to such action, and in that case upon demand of the Holder of any Bond Outstanding at such effective date and upon presentation of his Secured Obligation for such purpose at the designated corporate trust office of the Trustee suitable notation shall be made on such Secured Obligation by the Trustee as to any such action.  If the Authority or the Trustee shall so determine, new Secured Obligations so modified as, in the opinion of the Trustee and the Authority, conform to such action shall be prepared and delivered, and upon demand of the Holder of any Secured Obligations then Outstanding shall be exchanged, without cost to such Holder, for Secured Obligations of the same Series and maturity then Outstanding, upon surrender of such Secured Obligations.

## ARTICLE XI.

## <u>DEFAULTS AND REMEDIES</u>

**Section 11.01 <u>Events of Default.</u>**  An Event of Default shall exist hereunder and under each Supplemental Trust Agreement (herein called "**Event of Default**") if:

(a)    Payment of the Principal or Redemption Price of any Bond shall not be made by the Authority when the same shall become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b)    Payment of an installment of interest on any Bond shall not be made by the Authority when the same shall become due and payable; or

(c)    Except under Sections 11.01(f), (g) and (h), the Authority shall default in the due and punctual performance of any of the covenants, conditions, agreements and provisions contained herein or in the Bonds or in any Supplemental Trust Agreement on the part of the Authority to be performed and such default shall continue for sixty (60) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the Holders of not less than a Quarter in Interest of the Outstanding Bonds, unless, if such default is capable of being cured but is not capable of being cured within sixty (60) days, the Authority has commenced to cure such default within sixty (60) days and does cure such default within ninety (90) days of the date the default initially occurred, *__provided, however__*, that the cure period for non-compliance with the Rate Covenant shall be the periods established in Section 7.01 (e) of this Trust Agreement; or

- 64 -

HTA_CONF 00016143

(d)     The Authority, pursuant to or within the meaning of any U.S., federal or Commonwealth insolvency, bankruptcy, reorganization, restructuring receivership or any other form of debtor relief law, including without limitation, PROMESA (collectively, "**Bankruptcy Laws**"):

(i)     commences Bankruptcy Proceedings to be adjudicated bankrupt or insolvent;

(ii)     consents to the institution of Bankruptcy Proceedings against it;

(iii)     files, or consents to the filing of, a petition or answer or consent seeking an arrangement of debt, reorganization, dissolution, winding up or relief under applicable Bankruptcy Law;

(iv)     consents to the appointment of a receiver, interim receiver, receiver and manager, liquidator, assignee, trustee, sequestrator or other similar official of it or for all or any substantial part of its property;

(v)     makes a general assignment for the benefit of its creditors;

(vi)     takes any corporate or similar action in furtherance of any of the foregoing; or

(vii)     admits in writing the inability to pay its debts as they mature or is otherwise insolvent;

(e)     a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(i)     is for relief against the Authority in a proceeding in which the Authority is to be adjudicated bankrupt or insolvent;

(ii)     approves as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Authority under any Bankruptcy Law;

(iii)     appoints a receiver, interim receiver, receiver and manager, liquidator, assignee, trustee, sequestrator or other similar official of the Authority for all or any substantial part of the property of the Authority;

(iv)     orders the liquidation, dissolution or winding up of the Authority and the order or decree remains unstayed and in effect for 60 consecutive days; or

(f)     the Authority permits the validity or effectiveness of this Trust Agreement or the Bonds to be impaired, and such impairment affects the enforceability of or payments on the Bonds, or the Authority or the Commonwealth to be released from any covenants or obligations with respect to the Bonds; or

- 65 -

HTA_CONF 00016144

(g)      the Authority shall default in the due and punctual performance of any of its covenants contained in Sections 7.01(e) (subject to the cure period therein) and 7.06 hereof;

(h)      the first-priority lien on the Trust Estate shall at any time and for any reason cease to be in full force and effect or a final judgment shall be rendered which shall declare such first-priority lien to be null and void or shall declare that such first-priority lien on the Trust Estate does not establish in any material respect the lien it purports to establish; or

(i)      the occurrence of a Subordinated Payment Default; *provided, however,* that such Subordinated Payment Default shall not be an Event of Default under this Agreement for so long as any Bonds remain Outstanding hereunder.

**Section 11.02   No Acceleration with Respect to the Secured Obligations.**   There shall be no right of acceleration with respect to the Secured Obligations.

**Section 11.03   Enforcement of Remedies.**

(a)      If an Event of Default occurs and is continuing, the Trustee shall make payments in accordance with Section 11.04 below.

(b)      If an Event of Default described in clauses (d) or (e) of Section 11.01, occurs the automatic stay is deemed waived with respect to Net Receipts held in the funds and accounts established in this Trust Agreement (other than Net Receipts on deposit in the Arbitrage Rebate Fund).

(c)      If an Event of Default occurs and is continuing, the Trustee may, and upon written request of Holders holding not less than a Quarter in Interest of the Outstanding Bonds, shall proceed to protect and enforce its rights and the rights of the Holders by such of the following remedies as the Trustee shall deem most effective to protect and enforce such rights or such of the following remedies as Holders holding not less than a Quarter in Interest of the Outstanding Bonds shall instruct:

(i)      initiation of Proceedings to (A) collect all amounts due in respect of the Bonds limited, upon recovery thereunder, to the Trust Estate; (B) enforce any and all rights of the Holders, (C) enforce any covenant or agreement in this Trust Agreement, or (D) enforce any other remedy or legal or equitable right vested in the Trustee or the Holders by this Trust Agreement, the Act or other applicable law;

(ii)      enforcement of the lien of this Trust Agreement and enforcement of the Authority's rights or remedies in respect of the Trust Estate to the same extent as the Authority;

(iii)      by action or suit in law or in equity for specific performance of any covenant or agreement contained in this Trust Agreement or in aid or execution of any power granted in this Trust Agreement or for the enforcement of any proper legal or equitable remedy, as the Trustee shall deem to be most effectual to protect and enforce such rights; or

- 66 -

HTA_CONF 00016145

(iv)     by action or suit in law or in equity or to enjoin any acts or things which may be unlawful or in violation of the rights of the Bondholders.

(d)     In any Proceedings brought by the Trustee (and also any Proceedings involving the interpretation of any provision of this Trust Agreement to which the Trustee shall be a party), the Trustee shall be held to represent all the Holders, and it shall not be necessary to make any Holder a party to any such Proceedings.

(e)     If an Event of Default occurs and is continuing, the Trustee shall be under no obligation to exercise any of the rights or powers under this Trust Agreement at the request or direction of any of the Holders if the Trustee reasonably believes it will not be adequately indemnified against the costs, expenses and liabilities which might be incurred by it in complying with such request.

In the enforcement of any remedy hereunder and under each Supplemental Trust Agreement the Trustee shall be entitled to sue for, enforce payment of, and receive any and all amounts then, or during any default becoming, and at any time remaining, due from the Authority for Principal or interest or otherwise under any of the provisions of this Trust Agreement or of any Supplemental Trust Agreement or of the Secured Obligations, with interest on overdue payments of the Principal of or interest on the Secured Obligations at the rate or rates of interest specified in such Secured Obligations, together with any and all costs and expenses of collection and of all proceedings hereunder and under any Supplemental Trust Agreement and under such Secured Obligations, including the fees and expenses of the Trustee and its attorneys and other agents, without prejudice to any other right or remedy of the Trustee or of the Holders of such Secured Obligations, and to recover and enforce judgment or decree against the Authority but solely as provided herein, in any Supplemental Trust Agreement and in such Secured Obligations, for any portion of such amounts remaining unpaid, with interest, costs and expenses, and to collect in any manner provided by law, the money adjudged or decreed to be payable.

**Section 11.04 <u>Priority of Payments after Default.</u>**   Notwithstanding anything in this Trust Agreement to the contrary, following the occurrence and continuance of an Event of Default, if at any time the moneys in the Debt Service Fund, the General Reserve Fund, the Renewal and Replacement Fund, the Operating Reserve Fund and the Subordinated Indebtedness Fund shall not be sufficient to pay the principal of, the redemption premium (if any), or the interest on the Bonds as the same are then due and payable, such money, together with any money then available or thereafter becoming available for such purposes (including all Toll Receipts), whether through the exercise of remedies provided for this Article XI or otherwise, shall be applied, as follows:

*First*:  To the payment of reasonable amounts due to the Trustee and Paying Agents under Section 8.06;

*Second*:  To the Authority, in each month, an amount equal to the amount set forth in the Disbursement Schedule prepared in accordance with Section 7.02(d) to pay Costs of Operation, Maintenance and Administration of the Toll Facilities for the next succeeding two months, to the extent not paid pursuant to clause First above;

*Third, Pro rata*:

- 67 -

(A)    To the payment to the Bondholders of all installments of interest on the Bonds then due (including amounts previously due but not yet paid) in the order of the maturity of the installments of such interest, and, if the amount available shall not be sufficient to pay in full any installment, then to the payment thereof ratably, according to the amounts due on such installment, to the Bondholders, without any discrimination or preference; and

(B)    To the payment to the persons entitled thereto of the unpaid Principal or Redemption Price of any Bonds which shall have become due whether at maturity or by call for redemption in the order of their due dates and, if the amount available shall not be sufficient to pay in full all such amounts due on any such due date, then to the payment thereof ratably, according to the amount of Principal or Redemption Price due on such date, to the persons entitled thereto, without any discrimination or preference.

*Fourth, Pro rata*:

(A)    To the payment to the Holders of Subordinated Indebtedness, all installments of interest on the Subordinated Indebtedness then due (including amounts previously due but not yet paid) in the order of the maturity of the installments of such interest, and, if the amount available shall not be sufficient to pay in full any installment, then to the payment thereof ratably, according to the amounts due on such installment, to the Holders of Subordinated Indebtedness without any discrimination or preference; and

(B)    To the payment to the persons entitled thereto of the unpaid Principal or Redemption Price of any Subordinated Indebtedness which shall have become due whether at maturity or by call for redemption in the order of their due dates and, if the amount available shall not be sufficient to pay in full all such amounts due on any such due date, then to the payment thereof ratably, according to the amount of Principal or Redemption Price due on such date, to the persons entitled thereto, without any discrimination or preference.

Whenever money is to be applied by the Trustee pursuant to the provisions of this Section, such money shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such money available for application and the likelihood of additional money becoming available for such application in the future.  The setting aside of such money in trust for application in accordance with the provisions of this Section shall constitute proper application by the Trustee, and the Trustee shall incur no liability whatsoever to the Authority, to any Holder of Secured Obligations or to any other person for any delay in applying any such money so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions hereof as may be applicable at the time of application by the Trustee.  Whenever the Trustee shall exercise such discretion in applying such money, it shall fix the date (which shall be on an Interest Payment Date unless the Trustee shall deem another date more suitable) upon which such application is to be made, and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue.  The Trustee shall give such notice as it may deem appropriate of the fixing of any such date.

HTA_CONF 00016147

Amounts held by the Trustee after payments to be made pursuant to this Section 11.04 have been made and no Secured Obligations are Outstanding and unpaid shall be paid and applied in accordance with Section 5.05 hereof.

**Section 11.05 <u>Termination of Proceedings</u>.**  In case any proceedings commenced by the Trustee on account of any default shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Trustee, then and in every such case the Authority, the Trustee and the Bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no such proceeding had been commenced.

**Section 11.06 <u>Bondholders' Direction of Proceedings</u>.**  Anything herein to the contrary notwithstanding, the Holders of a Quarter in Interest of the Outstanding Bonds shall have the right by an instrument in writing executed and delivered to the Trustee, to direct the choice of remedies and the time, method and place of conducting any proceeding for any remedy available to the Trustee hereunder, under each Supplemental Trust Agreement or otherwise, or exercising any trust or power conferred upon the Trustee, including the power to direct or withhold directions with respect to any remedy available pursuant to Section 11.03, provided, (i) such direction shall not be otherwise than in accordance with law and the provisions hereof and of each Supplemental Trust Agreement, (ii) that the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction, and (iii) that the Trustee shall have the right to decline to follow any such direction which in the opinion of the Trustee would be unjustly prejudicial to Bondholders not parties to such direction.

**Section 11.07 <u>Control by Holders of Bonds; Limitations</u>.**  No Holder of any of the Secured Obligations shall have any right to institute any suit, action or proceeding in equity or at law for the execution of any trust hereunder, or for any other remedy hereunder unless such Holder previously shall have given to the Trustee written notice of the Event of Default on account of which such suit, action or proceeding is to be instituted, and unless also the Holders of not less than a Quarter in Interest of the Outstanding Bonds, shall have made written request to the Trustee after the right to exercise such powers or right of action, as the case may be, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers granted hereby or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses, and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time (and in no event shall a delay of more than thirty (30) days be deemed reasonable for such purposes) after receipt thereof.  Such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts hereof or for any other remedy hereunder and in equity or at law.  Notwithstanding the right of the Holders to direct proceedings in accordance with Section 11.06 above, it is understood and intended that, no one or more Holders of the Secured Obligations secured hereby shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security hereof, and that all proceedings at law or in equity shall be instituted and maintained for the benefit of all Holders of the Outstanding Secured Obligations. Notwithstanding any other provision hereof and subject in all respects to Article XII of this Trust Agreement, the Holder of any Secured Obligation shall have the right which is absolute and unconditional to receive payment of the Principal of (and redemption premium, if any) and interest

- 69 -

HTA_CONF 00016148

on such Bond on the stated maturity expressed in such Secured Obligation (or, in the case of redemption, on the redemption date or, in the case of interest, on the Interest Payment Date on which such interest is due) and to institute suit for the enforcement of any such payment, and such right shall not be impaired without the consent of such Holder.

Section 11.08 **Actions by Trustee; Possession of Secured Obligations by Trustee Not Required.**  All rights of action hereunder or under any of the Secured Obligations secured hereby and thereby, enforceable by the Trustee, may be enforced by it without the possession of any of such Secured Obligations or the production thereof at the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all the Holders of the Secured Obligations to which such action relates, subject to the provisions hereof.

Section 11.09 **Waiver and Non–Waiver of Default**.  No delay or omission of the Trustee or any Bondholder to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein. Every power and remedy given by this Article XI to the Trustee and the Bondholders, respectively, may be exercised from time to time and as often as may be deemed expedient.

The Trustee may, and upon written request of the Holders of not less than a Majority in Interest of the Outstanding Bonds, shall waive any default which in its opinion shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions hereof or before the completion of the enforcement of any other remedy hereunder; ***provided, however,*** the Trustee may not waive any default if it has received a direction from not less than a Majority in Interest of the Outstanding Bonds that such default may not be waived by the Trustee; ***provided, further,*** that no such waiver shall extend to or affect any other existing or any subsequent default or defaults or impair any rights or remedies consequent thereon.

Section 11.10 **Notice of Event of Default**.  The Trustee shall give notice of each Event of Default or Subordinated Payment Default hereunder known to the Trustee to the Authority and AAFAF, within ten (10) days after knowledge of the occurrence thereof and to the Holders of Secured Obligations within thirty (30) days after knowledge of the occurrence thereof, unless such Event of Default or Subordinated Payment Default shall have been remedied or cured before the giving of such notice; ***provided, however***, that failure to provide notice to the AAFAF of any Event of Default shall in no way limit the exercise of remedies by the Trustee or Bondholders.  In the case of the Holders of the Secured Obligations, each such notice of Event of Default shall be given by the Trustee by mailing written notice thereof to all registered Holders of Secured Obligations, as the names and addresses of such Holders appear on the books for registration and transfer of Secured Obligations as kept by the Trustee and to the Bond Insurer at its last known address.

Section 11.11 **Remedies Not Exclusive**.  No remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to any other remedy given hereunder or now or hereafter existing at law or in equity, by statute or by contract.

- 70 -

HTA_CONF 00016149

## ARTICLE XII.

## SUBORDINATION

**Section 12.01    Agreement to Subordinate.**    The indebtedness evidenced by all Subordinated Indebtedness, and any liens or property interests securing such Subordinated Indebtedness, shall be junior, inferior, and expressly subordinate in all respects to and subject in all respects to the prior payment in full of the Bonds and to any liens securing the Bonds, except as set forth below, and the holder of any Subordinated Indebtedness whether upon original issue or upon transfer or assignment thereof accepts and agrees to be bound by such provision.  Notwithstanding any defect or deficiencies in, or failure to perfect or lapse in perfection of, or avoidance as a fraudulent conveyance or otherwise of, any liens securing the Bonds, and regardless of any Bankruptcy Proceeding, any liens securing the Subordinated Indebtedness shall be junior and subordinate in all respects to any liens securing the Bonds. Subject in all respects to the provisions of this Article XII and to the express subordination of the Subordinated Indebtedness to the senior lien and senior security interest in the Trust Estate pledged to the payment of the Bonds provided for in this Trust Agreement, holders of Subordinated Indebtedness shall be entitled to receive payments of principal and interest with respect to the Subordinated Indebtedness and to seek specific performance thereof.  Each provision in this Article XII shall constitute a subordination agreement for purposes of section 510(a) of the Bankruptcy Code.

**Section 12.02    Distributions in Bankruptcy Proceedings.**    Upon any payment or distribution of any kind in any Bankruptcy Proceeding (including, without limitation, any plan distributions, interim distributions, or adequate protection), or otherwise:

(a)    All Bonds (including principal, interest, premiums, and fees on such Bonds due or to become due, absolute or contingent, now existing or hereafter arising, and including interest, premiums, and fees that accrue after the commencement of any Bankruptcy Proceeding, regardless of whether such interest, premiums, and fees are allowed claims in such proceeding) shall first be paid or duly provided for to the extent of such payment or distribution before any payment or distribution of any kind is made upon the indebtedness evidenced by the Subordinated Indebtedness;

(b)    Any payment or distribution of assets of the Authority of any kind or character, whether in cash, property, securities, or any other form of consideration to which the Holders of the Subordinated Indebtedness would be entitled except for the provisions of this Article, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of the Authority being subordinated to the payment of the Subordinated Indebtedness, shall be paid by the liquidating trustee or agent or other person making such payment or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of the Bonds, to the extent necessary to provide for the payment of all Bonds in full before any payment is made upon the indebtedness evidenced by the Subordinated Indebtedness;

(c)    In the event that, any payment or distribution of any kind shall be received by the Trustee or by the holders of the Subordinated Indebtedness in respect of any Subordinated Indebtedness before all Bonds are paid or duly provided for in full, such payment or distribution

- 71 -

shall be segregated and held in trust and forthwith shall be paid over to the holders of the Bonds for application to the payment thereof until such Bonds shall have been paid or provision for such payment shall have been made in full;

(d)     For purposes of this Article XII, all references to payment of Bonds in full shall include all principal, interest, premiums, and fees on such Bonds due or to become due, absolute or contingent, now existing or hereafter arising, and including interest, premiums, and fees that accrue after the commencement of any Bankruptcy Proceeding, regardless of whether such interest, premiums, and fees are allowed claims in such proceeding; and

(e)     Notwithstanding any other provision to the contrary herein, if an Event of Default described in clauses (a) through (h) of Section 11.01 of this Trust Agreement has occurred and is continuing, all Holders of the Subordinated Indebtedness and any representatives for such Subordinated Indebtedness hereby agree that unless and until the Bonds have been paid in full, they shall not exercise any rights or remedies or take any action or proceeding to collect or enforce any of the Subordinated Indebtedness or any liens securing such Subordinated Indebtedness.

**Section 12.03 <u>Prohibition on Contesting Liens and Claims.</u>**     Each Holder of Subordinated Indebtedness and each representative of the Holders of such Subordinated Indebtedness, agrees that it will not (and hereby waives any right to) directly or indirectly contest or support any other Person in contesting, in any proceeding (including any Bankruptcy Proceeding), the priority, validity, perfection, extent or enforceability of any claims of the holders of Bonds or the Trustee or any lien held, or purported to be held, by or on behalf of any of the Trustee or the holders of the Bonds in the Trust Estate pursuant to this Trust Agreement.  Until the Bonds have been discharged and paid in full, so long as an Event of Default (other than an Event of Default described in Section 11.01(i), provided that no other Events of Default described in Section 11.01 have occurred and be continuing) shall have occurred and be continuing, no Holder of Subordinated Indebtedness or any representative of the Holders of such Subordinated Indebtedness will assert any marshaling, appraisal, valuation or other similar right that may otherwise be available to a junior secured creditor; ***provided, however,*** that if an Event of Default (other than an Event of Default described in Section 11.01(i)) has occurred and is continuing and the Trustee (on behalf of the Holders of Bonds) or the Holders of Bonds (to the extent permitted by Section 11.07) exercise remedies, the Holders of Subordinated Indebtedness may join in such actions, but only if their participation is not in opposition to, and does not otherwise conflict with, the relief sought by the Holders of the Bonds or the Trustee, as applicable.

**Section 12.04 <u>Post-Petition Interest</u>**. Each of the parties hereto hereby acknowledges and agrees that the Holders of Bonds shall be entitled to receive, in addition to amounts distributed to them in respect of principal, prepetition interest and other claims, all amounts owing in respect of post-petition interest regardless of whether such amounts are allowed in any Bankruptcy Proceeding (including, without limitation, any additional interest payable pursuant to this Trust Agreement, the Bonds, or any Ancillary Agreements, arising from or related to a default, which is disallowed as a claim in any Bankruptcy Proceeding), if any, before any distribution is made in respect of the claims held by the Holders of Subordinated Indebtedness with respect to the Trust Estate, with Holders of Subordinated Indebtedness or any representative thereof hereby acknowledging and agreeing to turn over to the Trustee, for itself and on behalf of each other Holder of Bonds, any portion of the Trust Estate otherwise received or receivable by them to the

- 72 -

extent necessary to effectuate the intent of this sentence, even if such turnover has the effect of reducing the claim or recovery of the Holders of Subordinated Indebtedness.

## ARTICLE XIII.

## DEFEASANCE

**Section 13.01   Defeasance.**   (a) If the Authority shall pay or cause to be paid to the Holder of a Secured Obligation the Principal or Redemption Price of and interest thereon, at the times and in the manner stipulated therein, herein, and in the applicable Supplemental Trust Agreement, then all rights granted hereby and by the Act to such Secured Obligation shall be discharged and satisfied.  In such event, the Trustee shall, upon the request of the Authority, execute and deliver such documents to evidence such discharge and satisfaction as may be reasonably required by the Authority, and all money or investments thereof held by it pursuant hereto and to the applicable Supplemental Trust Agreement which are being held for the sole benefit of such Secured Obligations and which are not required for the payment or redemption of Secured Obligations of the same Series as such Secured Obligation shall be applied by the Trustee as follows: first, to the Arbitrage Rebate Fund, the amount required to be deposited therein in accordance with the direction of an Authorized Officer of the Authority, second, to the Debt Service Fund, to the extent the amount then on deposit therein is less than Annual Debt Service for the then current Fiscal Year, and third, to the extent not required to be deposited in the Arbitrage Rebate Fund or the Debt Service Fund, at the direction of the Authority, shall be transferred to any other fund or account established pursuant hereto.

(b)      Secured Obligations for the payment or redemption of which money shall have been set aside and shall be held in trust by the Trustee (through deposit of money for such payment or redemption or otherwise) at the maturity or redemption date thereof shall be deemed to have been paid within the meaning and with the effect expressed in paragraph (a) of this Section. All Outstanding Secured Obligations of any Series or any maturity within a Series or a portion of a maturity within a Series shall prior to the maturity or redemption date thereof be deemed to have been paid within the meaning and with the effect expressed in paragraph (a) of this Section if:

(i)      in case any of said Secured Obligations are to be redeemed on any date prior to their maturity, the Authority shall have given to the Trustee, in form satisfactory to it, irrevocable instructions to give as provided in Article IV hereof notice of redemption on said date of redemption of such Secured Obligations; and

(ii)      there shall have been deposited with the Trustee either money in an amount which shall be sufficient, or Defeasance Securities the principal of and interest on which when due will provide money which, together with the money, if any, deposited with the Trustee at the same time, shall be sufficient in the judgment of a nationally recognized verification agent to pay when due the Principal or Redemption Price, if applicable, and interest due and to become due on said Bonds on and prior to the redemption date or maturity date thereof, as the case may be; and

(iii)      in the event said Secured Obligations are not by their terms subject to redemption within the next succeeding sixty (60) days, the Authority shall have given the

- 73 -

Trustee, in form satisfactory to it, irrevocable instructions to give, as soon as practicable, by first class mail, postage prepaid, to the Holders of said Secured Obligations at their last known addresses appearing on the registration books, a notice to the Holders of such Secured Obligations that the deposit required by (II) above has been made with the Trustee and that said Secured Obligations are deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which money is to be available for the payment of the Principal or Redemption Price, if applicable, of and interest on said Secured Obligations; and

> (iv)     the Authority shall have delivered to the Trustee an opinion of Transaction Counsel to the effect that (A) any Secured Obligation having been deemed to have been paid as provided in this Section is no longer Outstanding hereunder and is no longer secured by or entitled to the benefits of this Trust Agreement, (B) such defeasance is in accordance with the terms hereof and (C) with respect to a Tax Exempt Bond, such defeasance will not adversely affect the exclusion of interest on such Tax Exempt Bond from gross income for purposes of federal income taxation.

The Authority shall give written notice to the Trustee of its selection of the Series and maturity payment of which shall be made in accordance with this Section. The Trustee shall select the Secured of like Series and maturity payment of which shall be made in accordance with this Section in the manner provided in Section 4.04 hereof. Neither the Defeasance Securities nor money deposited with the Trustee pursuant to this Section nor principal or interest payments on any such Defeasance Securities shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the Principal or Redemption Price, if applicable, of and interest on said Bonds; *provided, however,* that any money received from such principal or interest payments on such Defeasance Securities deposited with the Trustee, if not then needed for such purpose in the judgment of a nationally recognized verification agent, shall, to the extent practicable, be reinvested in Defeasance Securities maturing at times and in amounts sufficient to pay when due the Principal or Redemption Price, if applicable, of and interest to become due on said Secured Obligations on and prior to such redemption date or maturity date hereof, as the case may be. Any income or interest earned by, or increment to, the investment of any such money so deposited, shall, to the extent certified by the Trustee to be in excess of the amounts required hereinabove to pay the Principal or Redemption Price, if applicable, of and interest on such Secured Obligations, as realized, shall be applied by the Trustee as follows: first, to the Arbitrage Rebate Fund, the amount required to be deposited in accordance with the direction of an Authorized Officer of the Authority, second, to the Debt Service Fund, to the extent the amount then on deposit therein is less than the sum of the Interest Funding Requirement for the then current Fiscal Year and the Principal Funding Requirement for the then current Fiscal Year, and third, to the extent not required to be deposited in the Arbitrage Rebate Fund or the Debt Service Fund, at the direction of the Authority, shall be retained therein or transferred to any other fund or account established pursuant hereto.

> (c)     Anything herein to the contrary notwithstanding, any money held by the Trustee or a Paying Agent in trust for the payment and discharge of any of the Secured Obligations of a Series or the interest thereon which remain unclaimed for three (3) years after the date when all of the Secured Obligations of such Series have become due and payable, either at their stated maturity dates or by call for earlier redemption, if such money was held by the Trustee or Paying Agent at

HTA_CONF 00016153

such date, or for three (3) years after the date of deposit of such money if deposited with the Trustee or Paying Agent after said date when all of the Secured Obligations of such Series become due and payable, or three (3) years after the date when the Principal or Redemption Price of or interest on the Secured Obligations for which said money is held was due and payable, shall, at the written request of the Authority, be repaid by the Trustee or Paying Agent to the Authority as its absolute property and free from trust, and the Trustee or Paying Agent shall thereupon be released and discharged with respect thereto and the Holders of Secured Obligations shall look only to the Authority for the payment of such Secured Obligations.

## ARTICLE XIV.

### EXECUTION OF INSTRUMENTS BY BONDHOLDERS AND PROOF OF OWNERSHIP OF SECURED OBLIGATIONS

**Section 14.01  Evidence of Signatures of Bondholders and Ownership of Secured Obligations.**  Any request, consent or other instrument which this Trust Agreement may require or permit to be signed and executed by a Holder or Holders of Secured Obligations may be in one or more instruments of similar tenor, and shall be signed or executed by such Holder or Holders of Secured Obligations in person or by his or their attorneys duly appointed in writing.  Proof of the execution of any such instrument, or of an instrument appointing any such attorney, or the holding or owning by any person of such Secured Obligations, shall be sufficient for any purpose hereof (except as otherwise herein expressly provided) if made in the manner set forth below, but the Trustee may nevertheless in its discretion require further or other proof in cases where it deems the same desirable.

The fact and date of the execution by any Bondholder or his attorney of such instrument may be proved by the certificate, which need not be acknowledged or verified, of any officer of a bank or trust company satisfactory to the Trustee or of any notary public or other officer authorized to take acknowledgments of deeds to be recorded in the state in which he purports to act, that the person signing such request or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution, duly sworn to before such notary public or other officer. The corporation of the person or persons executing any such instrument on behalf of a corporate Bondholder may be established without further proof if such instrument is signed by a person purporting to be the president or a vice–president of such corporation with a corporate seal affixed and attested by a person purporting to be its secretary or an assistant secretary.

The ownership of Secured Obligations and the amount, numbers and other identification, and date of holding or owning the same shall be proved by the registry books.  Any request, consent or vote of the owner of any Secured Obligations shall bind all future owners of such Secured Obligation in respect of anything done or suffered to be done or omitted to be done by the Authority or the Trustee in accordance therewith.  The Authority or the Trustee may fix a record date in connection with any such request, consent or vote.

- 75 -

HTA_CONF 00016154

## ARTICLE XV.

## MISCELLANEOUS

**Section 15.01 <u>Preservation and Inspection of Documents</u>.** All documents received by the Trustee from the Authority or from Bondholders under the provisions hereof or of any Supplemental Trust Agreement shall be retained in its possession and shall be subject at all reasonable times to the inspection of the Authority any Bondholder and their agents and their representatives, any of whom may make copies thereof; **_provided, however,_** that with respect to inspection by a Bondholder a written request of such Bondholder must have been received by the Trustee at least five (5) Business Days prior to the date of inspection. The Trustee shall provide to the Authority account balances and other information reasonably requested by the Authority.

**Section 15.02 <u>Money and Funds Held for Particular Secured Obligations</u>.** The amounts held by the Trustee or any Paying Agent for the payment of the Principal or Redemption Price of and interest on the Secured Obligations due on any date with respect to particular Bonds shall, pending such payment, be set aside and validly and irrevocably held in trust by it for the Holders of such Secured Obligations entitled thereto, and for the purposes hereof such Principal or Redemption Price of and interest on such Secured Obligations, due after such date thereof, shall no longer be considered to be unpaid.

**Section 15.03 <u>Cancellation of Secured Obligations</u>.** The Trustee or any Paying Agent shall forthwith cancel all Secured Obligations which have been redeemed or paid and shall dispose of such Bonds in accordance with its customary procedures. No such Secured Obligations shall be deemed Outstanding Secured Obligations hereunder and no Secured Obligations shall be issued in lieu thereof.

**Section 15.04 <u>No Recourse under Trust Agreement or on the Secured Obligations</u>.** All covenants, stipulations, promises, agreements and obligations of the Authority contained herein shall be deemed to be the covenants, stipulations, promises, agreements and obligations of the Authority and not of any member, officer or employee of the Authority, and no recourse shall be had for the payment of the Principal or Redemption Price of or interest on the Secured Obligations or for any claims based thereon, hereon or on the Supplemental Trust Agreement against any member, officer or employee of the Authority or any person executing the Secured Obligations, all such liability, if any, being expressly waived and released by every Holder of Secured Obligations by the acceptance of the Secured Obligations.

**Section 15.05 <u>Severability of Invalid Provision</u>.** If any one or more of the covenants, stipulations, promises, agreements and obligations provided herein or in any Supplemental Trust Agreement on the part of the Authority or the Trustee to be performed should be contrary to law, then such covenant or covenants, stipulation or stipulations, promise or promises, agreement or agreements or obligation or obligations shall be null and void, shall be deemed and construed to be severable from the remaining covenants, stipulations, promises, agreements and obligations herein contained and shall in no way affect the validity of the other provisions hereof or of such Supplemental Trust Agreement or of the Secured Obligations.

HTA_CONF 00016155

**Section 15.06 <u>Parties of Interest.</u>**   Nothing herein or in any Supplemental Trust Agreement adopted pursuant to the provisions hereof, expressed or implied, is intended to or shall be construed to confer upon or to give to any person or party other than the Authority, the Trustee, the Paying Agents and the Holders and, to the extent provided in this Trust Agreement and any Supplemental Trust Agreement, any Bond Insurer any rights, remedies or claims hereunder or by reason hereof or of any Supplemental Trust Agreement or any covenant, condition or stipulation thereof.  All covenants, stipulations, promises and agreements herein or in any Supplemental Trust Agreement contained by or on behalf of the Authority shall be for the sole and exclusive benefit of the Authority, the Trustee, the Paying Agents, the Holders and the Bond Insurer.  Any Bond Insurer of any Insured Bonds issued under this Trust Agreement is an express third party beneficiary of this Trust Agreement and of any applicable Supplemental Trust Agreement.

**Section 15.07 <u>Certain Provisions Relating to Capital Appreciation Bonds or Convertible Capital Appreciation Bonds</u>**.   For the purposes of receiving payment of the Redemption Price of a Capital Appreciation Bond or Convertible Capital Appreciation Bond (prior to the applicable Interest Commencement Date with respect to such Convertible Capital Appreciation Bond) redeemed prior to maturity, the then current Accreted Value of such Bond shall be deemed to be its principal amount.  In computing the principal amount of Bonds held by the registered owner of a Capital Appreciation Bond or Convertible Capital Appreciation Bond (prior to the applicable Interest Commencement Date with respect to such Convertible Capital Appreciation Bond) in giving to the Authority or the Trustee any notice, consent, request, or demand pursuant hereto for any purpose whatsoever, the Accreted Value of such Bond as at the immediately preceding Valuation Date shall be deemed to be its principal amount. Notwithstanding any other provision hereof, the amount payable at any time with respect to the Principal of and interest on any Capital Appreciation Bond or Convertible Capital Appreciation Bond (prior to the applicable Interest Commencement Date with respect to such Convertible Capital Appreciation Bond) shall be equal to its Accreted Value thereof at such time plus redemption premium, if any.

**Section 15.08 <u>Notices.</u>**   Except as otherwise provided herein, any notices, directions or other instruments required to be given or delivered pursuant hereto or to any Supplemental Trust Agreement shall be in writing and shall be delivered by hand against the written receipt therefor or sent by registered or certified mail addressed:  in the case of the Authority, to it to the attention of the Authority's Executive Director with a copy to the Secretary of the Authority's board, at Roberto Sanchez Vilella (Minillas) Government Center, de Diego Ave No.  100, San Juan, PR 00907; and in the case of the Trustee, addressed to it at the designated corporate trust office of the Trustee at _____, _____, _____ att.: _____; in the case of the Commonwealth or the Secretary of the Treasury, to the attention of the Secretary of Treasury at 10 Paseo Covadonga, San Juan, Puerto Rico, 00901, or, in each case, to such other individual and at such other address as the person to be notified shall have specified by notice to the other persons.  Any such communication may also be sent by Electronic Means, receipt of which shall be confirmed.

In the event the Trustee sends a notice to the Holders of any series of Secured Obligations, the Trustee shall also provide such notice in electronic format, accompanied by such identifying information as is prescribed by the Municipal Securities Rulemaking Board, including the CUSIP numbers for the Secured Obligations of the series to the Authority's dissemination agent for distribution through the EMMA system.  The Authority shall cooperate with the Trustee to the

HTA_CONF 00016156

extent necessary to facilitate the foregoing. The Trustee shall not be liable under any circumstances for monetary damages to any person for any breach of the provisions of this paragraph. The sole remedy for failure of the Trustee to perform is specific performance.

Section 15.09 **Headings.** Any headings preceding the text of the several Articles and Sections hereof, and any table of contents or marginal notes appended to copies hereof, shall be solely for convenience of reference and shall not constitute a part hereof nor shall they affect its meaning, construction or effect.

Section 15.10 **Governing Laws.** This Trust Agreement and the Bonds shall be governed by the laws of the State of New York applicable to agreements made in and to be performed wholly within such jurisdiction, and the laws of the State of New York, without giving effect to principles of conflicts of laws, shall apply to any action or proceeding arising under this Trust Agreement and the Bonds; ***provided, however***, that the authorization of this Trust Agreement and the issuance of the Secured Obligations by the Authority shall be governed by the laws of the Commonwealth.

Section 15.11 **Retention of Jurisdiction of Title III Court.** The Title III Court shall retain jurisdiction from and after the Effective Date of all matters arising from or related to the Plan of Adjustment, the Confirmation Order and this Trust Agreement, including, without limitation, with respect to the payment of the Secured Obligations and the enforcement of the remedies set forth herein to the fullest extent permitted by law. Any disputes, legal action, suit, or proceeding arising from or related to this Trust Agreement or the Secured Obligations (a) shall be brought in accordance with the terms of this Trust Agreement in the Title III Court and any appellate court therefrom, or, in the event such court does not have or accept such jurisdiction, in any federal district court sitting in Puerto Rico and any appellate court therefrom or, in the event such federal district court does not have or accept jurisdiction, a Commonwealth court and any appellate court therefrom and (b) the parties shall be deemed to consent to the jurisdiction thereof.

Section 15.12 **Signatures and Counterparts.** This Trust Agreement and each Supplemental Trust Agreement may be executed and delivered in any number of counterparts, each of which shall be deemed to be an original, but such counterparts together shall constitute one and the same instrument.

Section 15.13 **Successors and Assigns.** Whenever in this Trust Agreement the Authority is named or referred to, it shall be deemed to include its successors and assigns and all the covenants and agreements in this Trust Agreement contained by or on behalf of the Authority shall bind and inure to the benefit of its successors and assigns whether so expressed or not.

Section 15.14 **Conflicts.** All resolutions or other proceedings of the Authority or parts thereof in conflict herewith are repealed insofar as such conflict exists.

[Remainder of page intentionally left blank; signature page follows]

- 78 -

     **IN WITNESS WHEREOF**, the parties hereto have executed this Trust Agreement as of the date first written above.

                    **PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY**

By:_____
Name:
Title:

_____, as Trustee

By:_____
Name:
Title: