# Debtor's Ex. 24

**Execution Copy**

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** is dated as of July 8 [1], 2022 (this "<u>Agreement</u>") and made between the Puerto Rico Highways and Transportation Authority ("HTA" or the "<u>Authority</u>") and the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>").

**WHEREAS**, pursuant to the authority granted pursuant to Act No. 74-1965, certified as 9 L.P.R.A §§2001-2035, as amended (the "<u>Act</u>"), the Authority was created for the purpose of, among other things, the construction, operation, and maintenance of the Commonwealth's transportation system;

**WHEREAS**, on June 30, 2016, the United States of America enacted the Puerto Rico Oversight, Management and Economic Stability Act, Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq. ("<u>PROMESA</u>"); pursuant to Section 4 of PROMESA, the provisions thereof prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent therewith;

**WHEREAS**, on May 3, 2017 and May 5, 2017, respectively, the Financial Oversight and Management Board (together with any successors thereto, the "<u>Oversight Board</u>"), established by the United States of America pursuant to Section 101(b) of PROMESA, filed petitions for relief for the Commonwealth and the Authority pursuant to Section 304(a) of PROMESA in the United States District Court for the District of Puerto Rico (the "<u>Title III Court</u>"), commencing debt adjustment cases under title III of PROMESA (the "<u>Title III Cases</u>");

**WHEREAS**, on May 5, 2021, the Oversight Board as Title III representative of the Commonwealth and the Authority and certain creditors of the Authority's bonds and insurers entered into that certain HTA/CCDA Related Plan Support Agreement (the "<u>HTA/CCDA PSA</u>"), pursuant to which the parties agreed to certain terms of the CW Plan of Adjustment (as defined below) and HTA Plan of Adjustment (as defined below), including that (i) the Commonwealth and the Authority would "take such action as is necessary to make payments, in cash, of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) to holders of HTA 68 Bond Claims and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00) to holders of HTA 98 Senior Bond Claims," HTA/CCDA PSA § 4.2 and 4.3, and (ii) the Authority would pay certain creditor parties an HTA Restriction Fee (as defined in the HTA/CCDA PSA) in an amount not to exceed $125 million on the HTA Effective Date (as defined below), *see* HTA/CCDA PSA § 6.1(b);

**WHEREAS**, on January 18, 2022, the Title III Court entered the CW Confirmation Order (defined below) confirming the CW Plan of Adjustment, which, pursuant to Section 86.1(b)(xv) thereof, provides that, subject to the HTA Distribution Conditions (as defined in the CW Plan of Adjustment), "HTA shall make an interim distribution to holders of HTA 68 Bonds

---

[1] Date of the Agreement will be the date of the first disbursement, following satisfaction of the HTA Distribution Conditions.

HTA_CONF 00011929

and HTA 98 Senior Bonds in the amounts of One Hundred Eighty-Four Million Eight Hundred Thousand Dollars ($184,800,000.00) and Seventy-Nine Million Two Hundred Thousand Dollars ($79,200,000.00), respectively, in Cash" (collectively, the "HTA Bonds Cash");

**WHEREAS**, on January 27, 2022, the Oversight Board certified the CW Fiscal Plan, which provides Section 5.2.6 thereof that the Commonwealth will provide a loan to the Authority for Fiscal Year 2022 in the amount of $314 million to implement the Authority's initial cash payment obligations under the CW Plan of Adjustment and HTA Plan of Adjustment;

**WHEREAS**, on February 21, 2022, the Oversight Board certified a joint resolution approving the Commonwealth's modified annual budget for Fiscal Year 2022, which included $314 million for the HTA Loan and provided that the Secretary of the Treasury, on behalf of the Commonwealth, is authorized "to make one or more loans or extend one or more credit facilities to the Authority, pursuant to those agreed upon terms and conditions, to satisfy payments required in accordance with the POA, Confirmation Order, and Section 1(II)(D)(ii)(c) of this Joint Resolution" and authorizes the Authority "to receive the proceeds of such loan or credit facility, which shall be repaid pursuant to the terms and conditions agreed to with the Secretary of the Treasury;"

**WHEREAS**, on February 22, 2022, the Oversight Board certified the HTA Fiscal Plan, which provides under chapter 16 that the Commonwealth will provide a one-time loan to the Authority for Fiscal Year 2022 in the amount of $314 million to implement the Authority's initial cash payment obligations under the CW Plan of Adjustment and HTA Plan of Adjustment;

**WHEREAS**, on May 2, 2022, the Oversight Board filed the contemplated HTA Plan of Adjustment with the Title III Court;

**WHEREAS**, on June 3, 2022, the Oversight Board certified an amended annual budget for the Commonwealth that increased the amount of the HTA Loan to $362 million;

**WHEREAS**, the contemplated HTA Plan of Adjustment provides that the GUC Reserve shall be funded as follows: (a) Twenty-Four Million Dollars ($24,000,000.00) on the HTA Effective Date and (b) Twenty-Four Million Dollars ($24,000,000.00) on the first anniversary of the HTA Effective Date;

**WHEREAS**, pursuant to the HTA Fiscal Plan and the contemplated HTA Plan of Adjustment, the Authority has requested that the Commonwealth provide a loan to the Authority in the amount provided herein to be applied by the Authority in accordance with the HTA Fiscal Plan and the Commonwealth is willing to do so on the terms and conditions set forth herein; and

**WHEREAS**, given that the loan is in furtherance of the CW Plan of Adjustment and included in the contemplated HTA Plan of Adjustment, as well as the CW Fiscal Plan and Budget and the HTA Fiscal Plan, the Agreement is approved pursuant to Section 207 of PROMESA.

2

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

### ARTICLE I

### DEFINITIONS; RULES OF INTERPRETATION

SECTION 1.01.    Defined Terms.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined).

"Business Day" means any day other than (a) a Saturday or a Sunday or a legal holiday or (b) a day on which banking institutions in San Juan, Puerto Rico or New York, New York, are required or authorized by law, regulation or executive order to be closed.

"CW Confirmation Order" means the Title III Court's *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of Puerto Rico, and the Puerto Rico Public Buildings Authority*, dated January 18, 2022 [Case No. 17-03283-LTS, ECF No. 19813], which confirmed the CW Plan of Adjustment.

"CW Effective Date" means the date that the CW Plan of Adjustment becomes effective in accordance with its terms and the CW Confirmation Order.



"CW Fiscal Plan" means the 2022 Fiscal Plan for Puerto Rico, as certified by the Oversight Board on January 27, 2022 (as may be further amended, modified, and/or supplemented from time to time).

"CW Plan of Adjustment" means the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, dated January 14, 2022 [Case No. 17-03283-LTS, ECF No. 19813-1], as confirmed by the Title III Court pursuant to the CW Confirmation Order.

"Dollars" and the symbols "$" and "US$" mean dollars in the lawful money of the United States of America.

"Fiscal Year" means a period of twelve (12) consecutive months beginning July 1 of a calendar year and ending on June 30 of the next subsequent calendar year.

"GUC Reserve" has the meaning set forth in the contemplated HTA Plan of Adjustment.

"HTA Bonds Cash" has the meaning set forth in the fifth *whereas* clause hereof.

3

HTA_CONF 00011931

"HTA Confirmation Order" means the order of the Title III Court, by entry of which the Title III Court confirms the HTA Plan of Adjustment.

"HTA Effective Date" means the date that the HTA Plan of Adjustment becomes effective in accordance with its terms and the HTA Confirmation Order.

"HTA Fiscal Plan" means the 2022 Fiscal Plan for the Authority, as certified by the Oversight Board on February 22, 2022 (as may be further amended, modified and/or supplemented from time to time).

"HTA Plan of Adjustment" means the plan of adjustment in connection with the Authority's case under Title III of PROMESA and approved by the HTA Confirmation Order.

"HTA 68 Bonds" has the meaning set forth in the CW Plan of Adjustment.

"HTA 98 Senior Bonds" has the meaning set forth in the CW Plan of Adjustment.

"Interest Payment Date" means each January 1 and July 1, commencing July 1, 2023.

"Loan Payments" means the payments made by the Authority pursuant to the term of this Agreement.

"Maturity Date" means July 1, 2052.



"New HTA Bonds" means, collectively, the bonds to be issued on the HTA Effective Date by the Authority in accordance with the terms and conditions of the HTA Plan of Adjustment, the HTA Confirmation Order, and the New HTA Bonds Indenture, including, without limitation, the Subordinated Series and any refunding bonds which may be issued in accordance with the New HTA Bonds Indenture, the repayment of which shall be secured by the Trust Estate.

"New HTA Bonds Indenture" means the trust agreement to be executed and delivered as of the HTA Effective Date pursuant to which the Authority shall issue the New HTA Bonds, and including all of the terms and provisions in connection therewith, as it may be amended, supplemented or modified from time to time, in accordance with its terms and conditions.

"Oversight Board" means the Financial Oversight and Management Board for Puerto Rico.

"Person" means any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency, instrumentality or political subdivision thereof.

"Principal Payment Date" means each July 1 commencing July 1, 2023.

"Sinking Fund Cash" means the amount of $92,364,193.32 held by The Bank of New York Mellon as fiscal agent in respect of the HTA 68 Bonds and HTA 98 Senior Bonds.

4

"Subordinated Series" means a series of New HTA Bonds to be issued in certificated and nontransferable form to the Commonwealth pursuant to the New HTA Bonds Indenture having terms and conditions substantially similar to those of the Loan; it being understood that the Subordinated Series shall be payable solely from the Trust Estate and shall be subordinated to the other series of New HTA Bonds.

"Trust Estate" means the trust estate (which shall include the toll revenues) to be established to the benefit of the holders of the New HTA Bonds pursuant to the terms of the New HTA Bonds Indenture.

SECTION 1.02.    Rules of Interpretation.  The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "will" shall be construed to have the same meaning and effect as the word "shall".  Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, amended and restated, supplemented or otherwise modified (subject to any restrictions on such amendments, amendments and restatements, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Articles, Sections, Exhibits, Schedules and Annexes shall be construed to refer to Articles and Sections of, and Exhibits, Schedules and Annexes to, this Agreement, (e) any reference to any law or regulation herein shall, unless otherwise specified, refer to such law or regulation as amended, modified, or supplemented from time to time, and (f) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

## ARTICLE II

## THE LOAN

SECTION 2.01.    The Loan.  On the date hereof, upon the terms and conditions set forth in this Agreement, the Commonwealth agrees to make a multi-draw term loan to the Authority in the aggregate principal amount of US$359,635,806.68 (the "Loan"); it being understood that (a) an initial draw in the principal amount of US$171,635,806.68 shall be made on the date hereof and (b) a second draw in the principal amount of US$188,000,000.00 shall be made upon the occurrence of the HTA Effective Date, in each case for the purposes set forth in Section 2.06.

5

SECTION 2.02.    Interest.

(a)    The Authority agrees to pay interest in respect of the unpaid principal amount of the Loan from the date hereof until the maturity thereof (whether by acceleration or otherwise) at a rate per annum which shall be equal to two point five percent (2.5%) per annum.

(b)    Accrued interest on the Loan shall be payable in arrears on each Interest Payment Date; provided that in the event of any repayment or prepayment of the Loan, accrued interest on the principal amount repaid or prepaid shall be payable on the date of such repayment or prepayment.

(c)    All interest hereunder shall be computed on the basis of a 360-day year consisting of twelve (12) 30-day months and shall be payable for the actual number of days elapsed (including the first day but excluding the last day).

(d)    In no event shall the Commonwealth be entitled to the payment of a penalty for a payment default (including, without limitation, penalty interest and any interest or other amounts due thereon) other than interest that shall continue to accrue on any unpaid principal of the Loan.

SECTION 2.03.    Sole Source of Payment; Repayment.

(a)    The Authority hereby unconditionally promises to pay to the Commonwealth the Loan in consecutive installments on each Principal Payment Date in the amounts set forth below opposite such Principal Payment Date (which amounts shall be reduced, as a result of the application of any prepayments in accordance with Section 2.04):

|         | Principal      | Interest       | Agg. Loan Payments[2] |
|---------|----------------|----------------|------------------------|
| Total   | 359,635,806.68 | 171,747,856.12 | 531,383,662.80         |
| 7/1/23  | 10,763,135.00  | 11,638,214.30  | 22,401,349.30          |
| 7/1/24  | 9,447,509.00   | 8,721,816.79   | 18,169,325.79          |
| 7/1/25  | 4,810,622.00   | 8,485,629.07   | 13,296,251.07          |
| 7/1/26  | 5,197,995.00   | 8,365,363.52   | 13,563,358.52          |
| 7/1/27  | 5,600,394.00   | 8,235,413.64   | 13,835,807.64          |
| 7/1/28  | 6,018,302.00   | 8,095,403.79   | 14,113,705.79          |
| 7/1/29  | 6,452,216.00   | 7,944,946.24   | 14,397,162.24          |
| 7/1/30  | 6,902,647.00   | 7,783,640.84   | 14,686,287.84          |
| 7/1/31  | 7,370,121.00   | 7,611,074.67   | 14,981,195.67          |

---

[2] Principal and interest amounts assume entire Loan amount will be disbursed on the date hereof. Actual principal amount and interest amounts will be lower depending on second disbursement date.

HTA_CONF 00011934

| | | | |
|---|---|---|---|
| 7/1/32 | 7,855,180.00 | 7,426,821.64 | 15,282,001.64 |
| 7/1/33 | 8,358,382.00 | 7,230,442.14 | 15,588,824.14 |
| 7/1/34 | 8,880,300.00 | 7,021,482.59 | 15,901,782.59 |
| 7/1/35 | 9,421,525.00 | 6,799,475.09 | 16,221,000.09 |
| 7/1/36 | 9,982,665.00 | 6,563,936.97 | 16,546,601.97 |
| 7/1/37 | 10,564,346.00 | 6,314,370.34 | 16,878,716.34 |
| 7/1/38 | 11,167,211.00 | 6,050,261.69 | 17,217,472.69 |
| 7/1/39 | 11,791,923.00 | 5,771,081.42 | 17,563,004.42 |
| 7/1/40 | 12,439,163.00 | 5,476,283.34 | 17,915,446.34 |
| 7/1/41 | 13,109,633.00 | 5,165,304.27 | 18,274,937.27 |
| 7/1/42 | 13,804,055.00 | 4,837,563.44 | 18,641,618.44 |
| 7/1/43 | 14,523,171.00 | 4,492,462.07 | 19,015,633.07 |
| 7/1/44 | 15,267,745.00 | 4,129,382.79 | 19,397,127.79 |
| 7/1/45 | 16,038,563.00 | 3,747,689.17 | 19,786,252.17 |
| 7/1/46 | 16,836,434.00 | 3,346,725.09 | 20,183,159.09 |
| 7/1/47 | 17,662,190.00 | 2,925,814.24 | 20,588,004.24 |
| 7/1/48 | 18,516,687.00 | 2,484,259.49 | 21,000,946.49 |
| 7/1/49 | 19,400,805.00 | 2,021,342.32 | 21,422,147.32 |
| 7/1/50 | 20,315,451.00 | 1,536,322.19 | 21,851,773.19 |
| 7/1/51 | 21,261,555.00 | 1,028,435.92 | 22,289,990.92 |
| 7/1/52 | 19,875,881.68 | 496,897.04 | 20,372,778.72 |

SECTION 2.04.   Prepayments upon Dispositions. In the event of a sale, joint venture, or public-private partnership with respect to the toll road assets, the Authority (with the prior written consent of the Oversight Board while it is in existence) may elect to prepay the Loan in whole or in part solely with the proceeds of such disposition, at any time thereafter, without premium or penalty.

SECTION 2.05.   Payments Generally. The Authority shall make each payment required to be made by it hereunder (whether of principal, interest or otherwise) prior to 12:00 noon (prevailing eastern time) on the date when due, without defense, deduction, recoupment, set-off or counterclaim. Any amounts received after such time on any date may, in the discretion of the Commonwealth, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon and fees with respect thereto. If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day, and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension. At the time of any prepayment hereunder the Authority shall pay to the Commonwealth any amount due hereof as a result of such prepayment. All

7

prepayments of the Loan shall be applied to the principal installments then outstanding in inverse order of maturity.

SECTION 2.06.    Use of Proceeds.  The Authority shall use the proceeds of (i) the initial draw of the Loan solely to pay the HTA Bonds Cash (after application of the Sinking Fund Cash) and (ii) the second draw of the Loan solely to (A) pay "Restriction Fees" and "Consummation Costs" under the HTA Plan of Adjustment in the amount of $125,000,000, (B) pay $15,000,000 as a "Restriction Fee" to the GDB Debt Recovery Authority, (C) deposit $24,000,000 in the GUC Reserve and (D) deposit $24,000,000 in an escrow account under the terms of an escrow agreement, in each case satisfactory to the Authority, the Commonwealth and the Oversight Board, such escrow agreement to provide for the transfer of such amount by the escrow agent to the GUC Reserve on the first anniversary of the HTA Effective Date.

SECTION 2.07.    Administrative Expense Claim.  The Commonwealth and the Authority hereby agree that the Loan is an administrative expense claim for all purposes of the HTA Plan of Adjustment, constituting a cost or expense of the administration of the Authority's Title III Case asserted, prior to the administrative claim bar date, in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code arising during the period up to and including the HTA Effective Date, and otherwise complying with applicable Puerto Rico law, including, without limitation, subject to the occurrence of the HTA Effective Date and other costs and fees to be payable in accordance with the HTA Plan of Adjustment.  Notwithstanding any terms and conditions applicable to other administrative expense claims pursuant to the HTA Plan of Adjustment, considering that this Loan was incurred by the Authority in the ordinary course prior to the HTA Effective Date, this Loan shall be paid in full and performed by the Authority in accordance with the terms and subject to the conditions hereto, subject to replacement on the HTA Effective Date as set forth in Section 2.08.



SECTION 2.08.    Conversion to Subordinated Series.  On the HTA Effective Date, the Commonwealth hereby agrees to accept a Subordinated Series of New HTA Bonds, which shall have a principal amount equal to the outstanding principal amount of the Loan at the date of issuance, plus any accrued and unpaid interest thereon, under the terms of the New HTA Bonds Indenture, in lieu of cash payments in full satisfaction of the Commonwealth's administrative expense claim on account of the Loan. Upon the delivery of the Subordinated Series to the Commonwealth, the Loan and this Agreement shall be deemed immediately terminated and no longer in effect.

SECTION 2.09.    Security Interest.  In the event that the HTA Effective Date does not occur and the New HTA Bonds are not issued on or prior to June 30, 2023, the Authority agrees to seek approval from the Title III Court to grant a subordinate lien in favor of the Commonwealth on all toll revenues, subject to terms and conditions to be agreed upon by the parties hereto at such time.

**ARTICLE III**

**EXECUTION, AUTHORIZATION AND ENFORCEABILITY**

8

HTA_CONF 00011936

SECTION 3.01.     Each party hereto hereby agrees that:

(a)     it has full legal capacity to execute, deliver and perform this Agreement and to perform all of its obligations arising or created hereunder; and

(b)     this Agreement has been duly authorized, executed and delivered by it and is its legal, valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or of law.

## ARTICLE IV

### COVENANTS

SECTION 4.01.     The Authority hereby covenants to the Lender that, so long as any Obligation remains outstanding, the Authority shall perform the following obligations:

(a)     <u>Additional Indebtedness</u>.  The Authority covenants that, so long as the Loan and this Agreement are in effect, it will not incur any additional indebtedness outside the ordinary course of business without approval of the Oversight Board while it is in existence, other than the New HTA Bonds.



(b)     <u>Delivery of Information to the Oversight Board</u>.  The Authority shall, simultaneously with the delivery to the Commonwealth of any certificate or report required to be delivered under this Agreement, deliver a copy of such certificate or report to the Oversight Board.

(c)     <u>Negative Pledge</u>.  The Authority shall not create or cause to be created any lien or charge on the toll revenues or any proceeds thereon (other than any liens existing as of the date hereof or created upon the issuance of the New HTA Bonds).

(d)     <u>Further Assurances</u>.  The Authority will execute and deliver, or cause to be executed and delivered, to the Commonwealth such other documents, agreements and instruments, and will take or cause to be taken any further actions, which may be required by law or which the Commonwealth may, from time to time, reasonably request to carry out the terms and conditions of this Agreement, all at the expense of the Borrower.

## ARTICLE V

### EVENTS OF DEFAULT

SECTION 5.01.     <u>Events of Default</u>.  Each of the following events and occurrences will constitute an "<u>Event of Default</u>" under this Agreement:

9

HTA_CONF 00011937

(a)     Payment of the principal of the Loan shall not be made by the Authority when the same shall become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b)     Payment of interest on the Loan shall not be made by the Authority when the same shall become due and payable; or

(c)     The Authority shall default in the due and punctual performance of any of the conditions, agreements and provisions contained herein on the part of the Authority to be performed and such default shall continue for sixty (60) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Commonwealth, unless, if such default is capable of being cured but is not capable of being cured within sixty (60) days, the Authority has commenced to cure such default within sixty (60) days and does cure such default within ninety (90) days of the date the default initially occurred; or

(d)     The Title III Case in respect of the Authority shall be dismissed by the Title III Court.

SECTION 5.02.     <u>No Acceleration</u>.  There shall be no right of acceleration with respect to the Loan.

SECTION 5.03.     <u>Enforcement of Remedies</u>.



(a)     If an Event of Default occurs and is continuing, the Loan Payments shall be applied pursuant to Section 5.04 below.

(b)     If an Event of Default described in clauses (d) of Section 5.01, occurs the automatic stay is deemed waved with respect to Loan Payments.

(c)     If an Event of Default occurs and is continuing, the Commonwealth may proceed to protect and enforce its rights, including, but not limited to, the initiation of proceedings to collect all amounts due and unpaid.

SECTION 5.04.     <u>Priority of Payments after Default</u>.  If at any time the Authority fails to pay in whole any installment of interest or principal of the Loan, as the same shall become due and payable, the Loan Payments shall be applied (a) first, to the payment to the Commonwealth of all installments of interest due on the Loan in the order of maturity of such interest and (b) second, to the payment to the Commonwealth of the unpaid principal of the Loan which shall have become due.

## ARTICLE VI

## <u>MISCELLANEOUS</u>

SECTION 6.01.     <u>Entire Agreement</u>.  This Agreement and the documents referred to herein constitute the entire obligation of the parties with respect to the subject matter hereof and

10

HTA_CONF 00011938

shall supersede any prior expressions of intent or understanding with respect to the transactions herein and therein contemplated.

SECTION 6.02. Amendments, Etc. No amendment, modification, termination, forgiveness, postponement, reduction or waiver of any provision of this Agreement, shall in any event be effective unless the same shall be in writing and signed by the Commonwealth and the Authority and approved by the Oversight Board, while still in existence, pursuant to PROMESA 207. Any amendment, modification, termination, forgiveness, postponement, reduction or waiver shall be effective only in the specific instance and for the specific purpose for which given. Any amendment, modification, termination, or waiver of any provision of this Agreement without the written consent of the Oversight Board, while the Oversight Board is in existence, will be null and void.

SECTION 6.03. No Assignment. Neither this Agreement nor any of the rights and obligations may be assigned by any of the parties.

SECTION 6.04. Counterparts. This Agreement may be executed in one or more counterparts (including by means of facsimile or other electronic transmission), each of which shall be deemed an original but all of which together will constitute one and the same agreement. To the extent this Agreement is signed and delivered by means of a facsimile machine or other electronic transmission, it will be treated in all manner and respects as an original agreement and will be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.



SECTION 6.05. Severability. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 6.06. Reinstatement. The Authority further agrees that, if any payment made by it and applied to the obligations hereunder is at any time annulled, avoided, set aside, rescinded, invalidated, declared to be fraudulent or preferential or otherwise required to be refunded or repaid, under Bankruptcy Law, state or federal law, common law or equitable cause, then, to the extent of such payment or repayment, such obligation shall be and remain in full force and effect, as fully as if such payment had never been made.

SECTION 6.07. Retention of Jurisdiction of Title III Court. The Title III Court shall retain jurisdiction from and after the CW Effective Date and HTA Effective Date of all matters arising from or related to the CW Plan of Adjustment and HTA Plan of Adjustment to the extent set forth therein and in the CW Confirmation Order and HTA Confirmation Order, respectively, including, without limitation, with respect to the payment of the Loan and the enforcement of the remedies set forth herein to the fullest extent permitted by law. Any disputes, legal action, suit, or proceeding arising from or related to this Agreement or the Loan (a) shall be brought in accordance with the terms of this Agreement in the Title III Court and any appellate court therefrom, or, in the event such court does not have or accept such jurisdiction, in any federal district court sitting in

11

HTA_CONF 00011939

Puerto Rico and any appellate court therefrom or, in the event such federal district court does not have or accept jurisdiction, a Commonwealth court and any appellate court therefrom and (b) the parties shall be deemed to consent to the jurisdiction thereof.

SECTION 6.08.     Governing Laws.   This Agreement shall be governed by and construed in accordance with the laws of Puerto Rico applicable to agreements made in and to be performed wholly within such jurisdiction.

SECTION 6.09.     Notices.   Except as otherwise provided herein, any notices, directions or other instruments required to be given or delivered pursuant hereto shall be in writing and shall be delivered by hand against the written receipt therefor or sent by registered or certified mail addressed:  in the case of the Authority, to it to the attention of the Authority's Executive Director with a copy to (a) the Secretary of the Authority's board, at Roberto Sanchez Vilella (Minillas) Government Center, de Diego Ave No. 100, San Juan, PR 00907, and (b) the Fiscal Agency and Financial Advisory Authority, at Roberto Sánchez Vilella (Minillas) Government Center, de Diego Ave. Stop 22, San Juan, PR, 00907; in the case of the Commonwealth or the Secretary of the Treasury, to the attention of the Secretary of Treasury at 10 Paseo Covadonga, San Juan, Puerto Rico, 00901, with a copy to the Fiscal Agency and Financial Advisory Authority, at Roberto Sánchez Vilella (Minillas) Government Center, de Diego Ave. Stop 22, San Juan, PR, 00907; or in case of the Oversight Board, to the attention of the Executive Director at 268 Muñoz Rivera Ave, Suite 1107, San Juan, PR 00918.  Any such communication may also be sent by electronic means, receipt of which shall be confirmed.



*[Remainder of page intentionally left blank]*

12

*[Signature Page to Loan Agreement]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

PUERTO   RICO   HIGHWAYS   AND
TRANSPORTATION   AUTHORITY,   as
borrower

By: _____

Name:
Title:

*[Signature Page to Loan Agreement]*

**COMMONWEALTH OF PUERTO RICO**, as
lender

By: _Francisco Parés III_____

Name: Francisco A. Parés Alicea
Title: Secretary of P.R. Treasury

HTA_CONF 00011942

[*Signature Page to Loan Agreement*]

Authorized pursuant to PROMESA 207:


**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD**, Title III Representative of HTA and the Commonwealth


By: _____

Name:   David A. Skeel, Jr.
Title:    Chairman

HTA_CONF 00011943