# Debtor's Ex. 25

Debtor's Ex. 25

(7)

## CERTIFICATE OF SECRETARY OF THE AUTHORITY
## AS TO TRUST AGREEMENT

I, Sonia Ramírez, Secretary of Puerto Rico Highways and Transportation Authority (the "Authority"), DO HEREBY CERTIFY, that attached hereto is a true and correct copy of the Trust Agreement, dated as of October 1, 2003, by and between the Authority and Banco Popular de Puerto Rico, trustee, which was presented to the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico on October 22, 2003 and approved by him in Section 3 of Resolution No. 2003-66, duly adopted on said date.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Authority, this 30th day of October, 2003.

(SEAL)

Secretary
Puerto Rico Highways
and Transportation Authority

1

HTA_CONF 00017043

TRUST AGREEMENT

Between

Puerto Rico Highways and Transportation Authority

and

Banco Popular de Puerto Rico,

Trustee

Dated as of October 1, 2003

Securing
$153,222,270.45
Puerto Rico Highways and Transportation Authority
Special Facility Revenue Refunding Bonds, 2003 Series A
(Teodoro Moscoso Bridge)

NYI 5442588v15

HTA_CONF 00017044

# ARTICLE I.

## Definitions.

Section 101.   Definitions................................................................................... 14

Section 102.   Miscellaneous ............................................................................. 22

# ARTICLE II.

## Form, Execution, Authentication, Delivery and Exchange of Bonds.

Section 201.   Limitation on Issuance of Bonds ................................................. 23

Section 202.   Form of Bonds ............................................................................. 23

Section 203.   Details of Bonds.......................................................................... 23

Section 204.   Authentication of Bonds ............................................................. 25

Section 205.   Exchange of Bonds ..................................................................... 25

Section 206.   Registration of Transfers of Bonds ............................................. 25

Section 207.   Ownership of Bonds; Transfer of Title....................................... 26

Section 208.   Authorization of Bonds............................................................... 26

Section 209.   Temporary Bonds........................................................................ 29

Section 210.   Mutilated, Destroyed or Lost Bonds........................................... 30

# ARTICLE III.

## Redemption of Bonds.

Section 301.   Redemption of Bonds .................................................................. 31

Section 302.   Redemption Notice ...................................................................... 32

Section 303.   Effect of Calling for Redemption ............................................... 33

Section 304.   Redemption of Portions of the Bonds.......................................... 33

# ARTICLE IV.

## Net Proceeds Fund.

Section 401.   Net Proceeds Fund...................................................................... 34

NYI 5442588v15

HTA_CONF 00017045

Section 402.    Requisites for Payments from Net Proceeds Fund ................................................ 34

Section 403.    Reliance on Certificates of Payment................................................................... 34

Section 404.    Balance in Net Proceeds Fund ........................................................................... 35

ARTICLE V.

Revenues and Funds.

Section 501.    Covenants as to Rates .......................................................................................... 36

Section 502.    Uniformity of Tolls............................................................................................... 36

Section 503.    Revenue Fund ....................................................................................................... 36

Section 504.    Sinking Fund, Renewal and Replacement Fund and General Fund ..................... 37

Section 505.    Application of Moneys in Bond Service Account ................................................. 39

Section 506.    Application of Moneys in Redemption Account .................................................. 39

Section 507.    Application of Moneys in Reserve Account......................................................... 40

Section 508.    Application of Moneys in the Renewal and Replacement Fund........................... 43

Section 509.    Application of Moneys in the General Fund; Creation of and Application
of Moneys in the Company Reserve Fund............................................................. 43

Section 510.    Application and Pledge of Moneys in the Sinking Fund ...................................... 45

Section 511.    Moneys Withdrawn from Sinking Fund ............................................................... 45

Section 512.    Cancellation of Bonds upon Payment.................................................................. 45

Section 513.    Covenants of Authority upon Termination of Concession Agreement ................ 45

Section 514.    Covenant of Authority Relating to Amendment of Bond Resolution................... 47

Section 515.    Agreement of the Authority to Assume the Company's Obligations under
the Loan Agreement under Certain Circumstances ............................................... 48

ARTICLE VI.

Depositaries of Moneys, Security for Deposits and Investment of Funds.

Section 601.    Security for Deposits............................................................................................ 49

Section 602.    Investment of Moneys.......................................................................................... 49

NY1 5442588v15

HTA_CONF 00017046

Section 603.   Valuation of Investments .................................................................. 50

## ARTICLE VII.

### Particular Covenants and Provisions.

Section 701.   Covenant to Pay Bonds; Bonds Limited Obligations of Authority;
Covenant as to Security Interest ................................................... 51

Section 702.   Covenant to Perform Obligations under this Agreement and Loan
Agreement...................................................................................... 51

Section 703.   Covenant to Perform Further Acts.................................................. 51

Section 704.   Trustee May Enforce Authority's Rights under Loan Agreement........ 52

Section 705.   Use and Operation of Project......................................................... 52

Section 706.   Payment of Lawful Charges........................................................... 53

Section 707.   Maintenance of Project Permitted from Other Funds .......................... 53

Section 708.   Insurance ..................................................................................... 53

Section 709.   Additional Insurance ..................................................................... 54

Section 710.   Inspection of Insurance Policies ..................................................... 55

Section 711.   No Inconsistent Action .................................................................. 55

Section 712.   Records and Reports ..................................................................... 55

Section 713.   Accounts and Records.................................................................... 57

Section 714.   Covenant Against Sale or Encumbrance Exceptions............................ 57

## ARTICLE VIII.

### Events of Default and Remedies.

Section 801.   Extension of Payment of Interest.................................................... 58

Section 802.   Events of Default .......................................................................... 58

Section 803.   Acceleration ................................................................................. 58

Section 804.   Enforcement of Remedies............................................................... 59

Section 805.   Trustee May File Claim in Bankruptcy ............................................. 59

NY1 5442588v15

HTA_CONF 00017047

Section 806.   Pro Rata Application of Funds ........................................................... 60

Section 807.   Effect of Discontinuance of Proceedings ............................................ 62

Section 808.   Holders of Majority in Principal Amount of Bonds May Control
Proceedings ................................................................................... 62

Section 809.   Restrictions upon Actions by Individual Bondholder ........................... 62

Section 810.   Actions by Trustee ........................................................................... 63

Section 811.   No Remedy Exclusive ....................................................................... 63

Section 812.   No Delay or Omission Construed To Be a Waiver ................................ 63

Section 813.   Waiver of Past Defaults .................................................................... 63

Section 814.   Notice of Default .............................................................................. 63

## ARTICLE IX.

### Concerning the Trustee.

Section 901.   Acceptance of Trusts ......................................................................... 64

Section 902.   Trustee Entitled to Indemnity ........................................................... 64

Section 903.   Trustee Not Responsible for Insurance, Taxes or Execution of Agreement ......... 64

Section 904.   Trustee Not Responsible for Acts of the Authority or Application of
Moneys Applied in Accordance with this Agreement ........................... 65

Section 905.   Certain Duties and Responsibilities of the Trustee .............................. 65

Section 906.   Compensation ................................................................................... 67

Section 907.   Monthly Statement of Funds on Deposit ............................................ 67

Section 908.   Notice of Default .............................................................................. 68

Section 909.   Trustee May Be Bondholder .............................................................. 68

Section 910.   Trustee Not Responsible for Recitals .................................................. 68

Section 911.   Trustee Not Responsible for Recording ............................................... 68

Section 912.   Trustee May Rely on Certificates ....................................................... 68

Section 913.   Qualification of the Trustee ............................................................... 69

NY1 5442588v15

HTA_CONF 00017048

Section 914.  Resignation and Removal of Trustee ..................................................... 69

Section 915.  Successor Trustee ................................................................................. 70

Section 916.  Money Held in Trust ............................................................................ 71

ARTICLE X.

Execution of Instruments by Bondholders and Proof of Ownership of Bonds.

Section 1001.  Execution of Instruments by Bondholders and Proof of Ownership of
Bonds .................................................................................................... 72

ARTICLE XI.

Supplements and Amendments to Agreement.

Section 1101.  Supplements and Amendments Not Requiring Bondholder Consent ................... 73

Section 1102.  Supplements and Amendments Requiring Consent of Holders of a
Majority in Principal Amount of Bonds ................................................ 73

Section 1103.  Supplements and Amendments Deemed Part of Agreement ................................ 74

Section 1104.  Discretion of Trustee in Entering into Supplements and Amendments ................ 75

Section 1105.  Consent of Company Required ............................................................ 75

ARTICLE XII.

Supplements and Amendments to Loan Agreement and the Concession Agreement.

Section 1201.  Supplements and Amendments Not Requiring Consent ....................................... 76

Section 1202.  Supplements and Amendments Requiring Consent of Holders of a
Majority in Principal Amount of Bonds ................................................ 76

Section 1203.  Consent of Trustee Required ................................................................ 77

ARTICLE XIII.

Defeasance.

Section 1301.  Defeasance ........................................................................................ 78

ARTICLE XIV.

Miscellaneous Provisions.

NY1 5442588v15

5

HTA_CONF 00017049

Section 1401. Covenants of Authority Bind its Successors........................................................ 80

Section 1402. Notices .................................................................................................................. 80

Section 1403. Substitute Mailing................................................................................................ 81

Section 1404. Rights Under Agreement ..................................................................................... 81

Section 1405. Severability .......................................................................................................... 81

Section 1406. Covenants of Authority Not Covenants of Officials Individually....................... 81

Section 1407. Governing Law .................................................................................................... 81

Section 1408. Payments Due on Days That Are Not Business Days .......................................... 81

Section 1409. Execution in Counterparts.................................................................................... 82

Section 1410. Headings Not Part of Agreement......................................................................... 82

NY1 5442588v15

HTA_CONF 00017050

**THIS TRUST AGREEMENT**, dated as of October 1, 2003, by and between PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (the "Authority"), and BANCO POPULAR DE PUERTO RICO, a bank duly organized and existing under the laws of the Commonwealth of Puerto Rico (the "Commonwealth") and having its principal office in the Municipality of San Juan, Puerto Rico, which is authorized under such laws to exercise corporate trust powers and is subject to examination by Commonwealth authority (said bank and any bank, banking association or trust company becoming successor trustee under this Agreement being hereinafter called the "Trustee"),

## WITNESSETH:

WHEREAS, Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended (the "Act"), created Puerto Rico Highways and Transportation Authority as a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth; and

WHEREAS, the Act authorizes the Authority to enter into contracts with private entities for the construction, operation and maintenance of bridges, highways, avenues and expressways and to issue bonds to provide funds to pay all or part of the cost of such facilities and to issue refunding bonds therefor; and

WHEREAS, the Authority has heretofore entered into a Concession Agreement for the Final Design, Construction, Operation and Maintenance of a Privatized Transportation Facility, dated as of December 20, 1991, as amended on March 20, 1992, and as further amended on October 30, 2003 (the "Concession Agreement"), with Autopistas de Puerto Rico y Compañía, S.E., a partnership organized and existing under the laws of the Commonwealth (the "Company"), providing for the final design, construction, operation and maintenance of a bridge over the San José Lagoon, with necessary and appurtenant facilities (collectively, the "Project"); and

WHEREAS, the Authority has heretofore issued its Puerto Rico Highway and Transportation Authority Special Facility Revenue Bonds, 1992 Series A, B and C (San Jose Lagoon Bridge Project) (the "1992 Bonds") and has loaned the proceeds of the 1992 Bonds to the Company for the purpose of paying all or a portion of the cost of the Project; and

WHEREAS, the Project was completed by the Company and opened for traffic on February 24, 1994; and

WHEREAS, because, *inter alia*, traffic using the Project has not increased as rapidly as was originally projected at the time of the issuance of the 1992 Bonds and net toll revenues have become insufficient to pay debt service on the 1992 Bonds, the Company has requested to the Authority that it issue bonds to refund the 1992 Bonds in whole; and

WHEREAS, the Authority has determined to issue such refunding bonds; and

WHEREAS, the Authority has entered into a Loan Agreement, dated as of October 1, 2003 (the "Loan Agreement"), with the Company providing for the issuance of bonds by the

HTA_CONF 00017051

Authority to refund the 1992 Bonds and the obligation of the Company to pay, or cause to be paid, to the Trustee, among other things, amounts sufficient to pay the principal of and the redemption premium, if any, and the interest on such bonds; and

WHEREAS, the Authority is entering into this Agreement for the purpose of authorizing, among other things, $153,007,270.45 initial principal amount of its Special Facility Revenue Refunding Bonds, 2003 Series A (Teodoro Moscoso Bridge) and securing the payment thereof by assigning to the Trustee certain of its interests in the Loan Agreement, including its rights to a portion of the Revenues (as defined in this Agreement) thereunder; and

WHEREAS, the Authority has determined that the bonds to be issued hereunder and the certificate of authentication to be endorsed thereon by the Trustee shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement:

2

NY1 5442588v15

HTA_CONF 00017052

[FORM OF BONDS (other than Capital Appreciation Bonds)]

No. RA-_____                                               $_____

United States of America

Commonwealth of Puerto Rico

### PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY SPECIAL FACILITY REVENUE REFUNDING BOND, 2003 SERIES A (TEODORO MOSCOSO BRIDGE)

Interest Rate                    Maturity Date                    Cusip No.

Registered Owner:

Principal Amount:

Puerto Rico Highways and Transportation Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner set forth above, or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), in the Municipality of San Juan, Puerto Rico, the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the regular record date for such interest, which date shall be the 15th day of the month next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority or by wire transfer to the account specified in writing to the Trustee by such 15th day of the Registered Owner owning not less than $1,000,000 initial aggregate principal amount of bonds (hereinafter mentioned), interest on said Principal Amount from the date hereof or from the interest payment date next preceding the date of authentication to which interest shall have been paid or duly provided for, unless such date of authentication is an interest payment date to which interest shall have been paid, in which case from such date, on the first day of each month, commencing December 1, 2003, in like coin or currency at the Interest Rate set forth above until payment of said Principal Amount and (to the extent payment of such interest shall be legally enforceable) on any overdue installment of interest. Any such interest not so punctually paid or duly provided for shall forthwith cease to be payable to the Registered Owner on such regular record date and may instead be paid to the person in whose name this bond (or one or more predecessor bonds) is registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Trustee, notice thereof being given to bondholders not less that 10 days prior to such special record date, all as more fully provided in the Agreement. Interest is computed on the basis of a 360-day year of twelve 30-day months.

3

HTA_CONF 00017053

This bond shall not be a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, other than the Authority, and neither the Commonwealth of Puerto Rico nor such political subdivisions, other than the Authority, shall be liable thereon, but this bond shall be payable as to principal, premium, if any, and interest solely from the special fund provided therefor as hereinafter set forth.

Pursuant to the Act (hereinafter mentioned), the Commonwealth of Puerto Rico has pledged to and agreed with the holders of the bonds that the Commonwealth of Puerto Rico shall not limit or restrict the rights or powers vested in the Authority pursuant to the Act until the bonds and interest thereon are fully met and discharged.

This bond is one of a duly authorized series of revenue bonds of the Authority known as "Puerto Rico Highways and Transportation Authority Special Facility Revenue Refunding Bonds, 2003 Series A (Teodoro Moscoso Bridge)" (the "bonds"), dated the date hereof, consisting of bonds maturing in annual installments on the 1st day of July in the years 2008 through 2013 (herein collectively called the "serial bonds"), of bonds maturing on the 1st day of July in the years 2018, 2020 and 2025 and on the 1st day of March, 2027 (herein collectively called the "term bonds") and of bonds maturing in annual installments on the 1st day of July in the years 2021 through 2026 (herein collectively called the "capital appreciation bonds") and issued for the purpose of refunding all of the Authority's outstanding Special Facility Revenue Bonds 1992 Series A, B and C (San José Lagoon Bridge Project) (the "1992 Bonds") issued for the purpose of paying a portion of the cost of designing, developing and constructing a toll bridge over the San José Lagoon in the Municipalities of Carolina and San Juan, Puerto Rico (the "Project"). In connection therewith the Authority and the Company entered into a Concession Agreement for the Final Design, Construction, Operation and Maintenance of a Privatized Transportation Facility dated as of December 20, 1991, as amended (the "Concession Agreement").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental hereto as therein permitted, being herein called the "Agreement"), dated as of October 1, 2003, by and between the Authority and Banco Popular de Puerto Rico (said bank and any national banking association, bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee in the Municipality of San Juan, Puerto Rico. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of the bonds, the collection and disposition of payments under the Loan Agreement (hereinafter mentioned) and other revenues, a description of the funds charged with and pledged to the payment of the principal of and interest on the bonds, the nature and extent of the security, the terms and conditions under which the bonds are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement. All capitalized terms not defined herein shall have the meanings assigned to such terms in the Agreement.

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of

4

HTA_CONF 00017054

Puerto Rico, including Act. No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended (the "Act"), and under and pursuant to a resolution duly adopted by the Authority.

The Authority has entered into a Loan Agreement, dated as of October 1, 2003 (herein called the "Loan Agreement"), with Autopistas de Puerto Rico y Compañía, S.E. (herein called the "Company"), under the provisions of which the Authority has agreed to issue the bonds and provide to the Company certain proceeds of such bonds to refund the 1992 Bonds. The Loan Agreement provides that the Company shall make loan repayments from the net revenues of the Project and other sources specified in the Loan Agreement and at the times required and in amounts sufficient to pay the principal of and premium, if any, and interest on all the bonds as the same shall become due and payable and certain fees and expenses of the Authority and the Trustee. The Loan Agreement provides that the loan repayments in respect of the bonds shall be made directly to the Trustee for the account of the Authority, and that, subject to the termination and source of repayment provisions of the Loan Agreement, the Company's obligation to make such payments shall be absolute and unconditional. The obligations of the Company under the Loan Agreement are not secured by any lien or mortgage on the Project or on any other property of the Company. The Company is required to make such payments solely from the revenues of the Project and other moneys provided therefor under the Loan Agreement.

Under the Agreement the Authority has, for the benefit of the holders of the bonds, assigned and conveyed to the Trustee in trust the Authority's interests in the Loan Agreement (subject to the reservation of certain rights of the Authority under the Loan Agreement, including its rights to payment of certain expenses and to indemnity) and the loan repayments thereunder and other revenues derived therefrom. The Agreement provides for the deposit of a sufficient amount of the revenues of the Project, over and above the cost of maintenance, repair and operation of the Project and reserves for such purposes, to the credit of a special fund designated "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Interest and Sinking Fund" (herein called the "Sinking Fund") which fund is pledged to and charged with the payment of the principal of and the interest on all bonds issued under the Agreement.

Upon termination of the Concession Agreement, the Authority has agreed to exchange any remaining outstanding bonds for Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds, of the same maturity and bearing interest at the same rate and being subject to optional and mandatory redemption on the same terms (mutatis mutandis), of the Authority issued under Section 210 or (at the Authority's option) under Section 208 of Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended ("Resolution 98-06"), and pending such exchange, to assume the Company's payment obligation for the bonds, in which case the Authority has covenanted that any bonds remaining outstanding under the Agreement shall be payable from the revenues of the Project, after payment of such cost of maintenance, repair and operation, and from moneys available therefor under Resolution 98-06, after payment of debt service on its Transportation Revenue Bonds.

If the concession on the Project or any part or all of the Project shall have been condemned, confiscated, appropriated or taken by eminent domain, then the bonds at the time outstanding will be subject to redemption at the direction of the Company in whole at any time or in part (in inverse order of maturity unless otherwise agreed by the Authority and the Company) from and to the extent of the Net Proceeds (as defined in the Trust Agreement)

NY1 5442588v15

HTA_CONF 00017055

received in connection therewith on the next interest payment date occurring not earlier than 45 days after receipt by the Trustee of notice of the occurrence thereof and of such Net Proceeds at a redemption price equal to the principal amount thereof and accrued interest to the redemption date.

If any part or all of the Project shall have been damaged or destroyed, the cost of restoration of the Project to its former condition is in excess of 25% of the new replacement cost of the Project and the Net Proceeds are sufficient to pay all of the bonds, and the Company shall have elected in accordance with the Loan Agreement to cause the redemption of the bonds in whole, then the bonds at the time outstanding will be subject to redemption in whole from and to the extent of the Net Proceeds received in connection therewith on the next interest payment date occurring not earlier than 45 days after receipt by the Trustee of notice of the occurrence thereof and of such Net Proceeds at a redemption price equal to the principal amount thereof and accrued interest to the redemption date.

The bonds at the time outstanding are also subject to redemption in whole or in part (and if in part, in such order of maturity as the Authority shall determine) at the option of the Authority at any time not earlier than forty-five (45) days following the date that the Authority has become obligated to notify the Trustee of the occurrence of any event giving rise to the termination or deemed termination of the Concession Agreement, at a redemption price equal to the principal amount thereof plus accrued interest to the redemption date, without premium.

The bonds at the time outstanding which mature after July 1, 2011 are subject to redemption prior to their respective maturities at the option of the Company, in whole at any time not earlier than October 1, 2011 or in part (in inverse order of maturity, unless otherwise agreed by the Authority and the Company or unless such bonds shall be redeemed from moneys contributed to the Company by its partners for such purpose or moneys available for distribution by the Company to its partners, in which case such bonds shall be redeemed in such order of maturity as the Company shall specify), on any interest payment date not earlier than October 1, 2011, from any moneys available for such purpose (other than monies deposited in the Sinking Fund in respect of an amortization requirement) at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, plus a premium of 1% of such principal amount if redeemed on or prior to September 30, 2012, ½ of 1% if redeemed thereafter and on or prior to September 30, 2013, and without premium if redeemed thereafter; provided, however, that the term bonds maturing July 1, 2018, 2020, 2025 and 2027 are subject to redemption in part from moneys in the Sinking Fund, at their Principal Amount plus accrued interest without premium beginning July 1, 2014, 2019, 2021 and 2026, respectively, and on each July 1 thereafter in the principal amount of the Amortization Requirement therefor set out in the resolution of the Authority authorizing the issuance of such bonds.

If fewer than all of the bonds outstanding of a particular maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Trustee by lot or such other method as it shall deem fair and appropriate, all as provided in the Agreement.  If a bond is delivered for partial redemption, then the Trustee shall deliver to or upon the order of the holder, without charge therefor, for the unredeemed portion of such bond, a

6

HTA_CONF 00017056

new bond of the same series and maturity, of any denomination or denominations authorized by the Agreement and bearing interest at the same rate.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by certified first-class mail, postage prepaid, to all registered owners whose bonds are to be redeemed and shall be made in the manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been given as provided in the Agreement, the bonds or portions of bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys or certain direct or guaranteed obligations of the United States of America the principal of and the interest on which when due will provide sufficient moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee and to receive a new bond or bonds for the unredeemed portion thereof.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement. The Trustee is not required to enforce the Agreement unless it receives indemnity satisfactory to it.

Upon the occurrence of certain events of default, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturity thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

The serial bonds are issuable as fully registered bonds in denominations of $1,000 and any multiple thereof, the term bonds and the capital appreciation bonds are issuable as fully registered bonds in denominations and maturity amounts, respectively, of $5,000 and any multiple thereof. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same maturity, of authorized denominations and bearing interest at the same rate. The Trustee is required to keep at its corporate trust office the books of the Authority for the registration of and for the registration of transfers of bonds. The transfer of this bond is registrable by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Trustee in the Municipality of San Juan, Puerto Rico, but upon such books and only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender hereof to the Trustee together with an assignment duly executed

NY1 5442588v15

HTA_CONF 00017057

by the registered owner hereof or his attorney or legal representative in the form set forth on this bond or such other form as shall be satisfactory to the Trustee. Upon any registration of transfer the Trustee shall deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in an aggregate principal amount equal to the principal amount of this bond, of the same maturity and bearing interest at the same rate. The Authority or the Trustee shall charge for every exchange or registration of transfer of bonds a sum sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer. The Trustee shall not be required to make an exchange or registration of transfer of any bond during the fifteen (15) days prior to the date of first giving of notice of redemption or exchange or after such bond has been selected for redemption.

Subject to the provisions for registration stated herein and contained in the Agreement, nothing contained in this bond or in the Agreement shall affect or impair the negotiability of this bond. As declared by the Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction, except that the rights, limitations of rights, immunities, duties and obligations of the Trustee shall be governed by and construed in accordance with the laws of the jurisdiction under which it is organized.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth to happen, exist and be performed precedent to and in connection with the issuance of this bond and the execution and delivery of the Agreement and the Loan Agreement have happened, exist and have been performed as so required.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by [bear the facsimile signature of] the Secretary of Transportation and Public Works and the Executive Director of the Authority and to be signed by [bear the facsimile signature of] its Secretary, and [a facsimile of] its corporate seal to be impressed [imprinted] hereon, all as of the ___ day of _____, 2003.

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

By_____
Secretary of Transportation and Public Works

8

By_____
Executive Director


By_____
Secretary


[Corporate seal]


## CERTIFICATE OF AUTHENTICATION

This is one of the bonds designated therein and issued under the provisions of the Agreement mentioned therein.

Banco Popular de Puerto Rico as Trustee


By_____
Authorized Signatory

Date of authentication: _____

9

HTA_CONF 00017059

## ASSIGNMENT

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto (Please Print or Typewrite Name and Address of Transferee) _____

_____ the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____

_____ attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated:_____        Signature:_____

NOTICE:  The signature to this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Signature Guaranteed* by:  _____

\*        Signatures must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements will include membership or participation in the Securities Transfer Agents Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

### [FORM OF CAPITAL APPRECIATION BONDS]

Same as Form of Bonds except as follows:

1.        Substitute the following for the caption and the first paragraph.

No. RA-___

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
SPECIAL FACILITY REVENUE REFUNDING BOND, 2003 SERIES A
(TEODORO MOSCOSO BRIDGE)

10

HTA_CONF 00017060

Interest Rate:                    Maturity Date:                    CUSIP No.:

Original Issue Date:

Registered Owner:

Initial Principal Amount:         Dollars

Amount Due at Maturity:           Dollars

Puerto Rico Highways and Transportation Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received hereby promises to pay, solely from the special fund provided thereof as hereinafter set forth, to the Registered Owner set forth above, or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), in the Municipality of San Juan, Puerto Rico, the Amount Due at Maturity stated above (or the Accreted Value, hereinafter defined, on the date of earlier payment if this bond is redeemed or paid prior to the Maturity Date), which Amount Due at Maturity consists of the Initial Principal Amount set forth above and interest thereon at the Interest Rate set forth above from the Original Issue Date set forth above, compounded on each January 1 and July 1 of each year, commencing _____ 1, _____ (each such date a "Valuation Date"), during the period from the Original Issue Date to the Maturity Date. The Principal Amount of this bond plus the interest accrued to any given date, based upon the Interest Rate stated above, as so compounded, is its "Accreted Value". The Accreted Value per $5,000 Amount Due at Maturity on certain dates is set forth in the Accreted Value Table herein. The Accreted Value on any other date is the sum of (i) the Accreted Value on the preceding Valuation Date and the product of (a) a fraction, the numerator of which is the actual number of days having elapsed from the preceding Valuation Date and the denominator of which is the actual number of days from such preceding Valuation Date to the next succeeding Valuation Date and (b) the difference between the Accreted Values on such Valuation Dates. The payment of the Accreted Value of and redemption premium, if any, on this bond is payable in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts.

; and

WHEREAS, the execution and delivery of this Agreement and the Loan Agreement have been duly authorized by a resolution of the Authority; and

WHEREAS, all acts, conditions and things required by the Puerto Rican Federal Relations Act, the Constitution and laws of the Commonwealth and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the execution and delivery of this Agreement and the Loan Agreement have happened, exist and have been performed as so required in order to make this Agreement a legal, valid and binding trust agreement for the security of the bonds to be issued hereunder in accordance with its terms and in order to make the Loan Agreement a legal, valid and binding agreement in accordance with its terms; and

11

HTA_CONF 00017061

WHEREAS, the Trustee has accepted the trusts created by this Agreement and in evidence thereof has joined in the execution hereof; now, therefore,

THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds to be issued hereunder by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which such bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of the principal of all such bonds at any time issued and outstanding hereunder and the premium, if any, and the interest thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged, assigned and to the extent not inconsistent with the provisions of Section 701 hereof grants a security interest in and does hereby pledge and assign to the Trustee and to the extent similarly not inconsistent grant a security interest in the Authority's rights, title and interest in the Loan Agreement (except its rights under the Loan Agreement to receive notices, reports and other statements given both to the Authority and the Trustee, its rights under Sections 4.05(b), 4.06, 5.06 and 7.04 of the Loan Agreement to payment of certain costs and expenses and to indemnification, and to individual and corporate rights to exemption from liability under Sections 5.05(a), 9.14 and 9.15 of the Loan Agreement) and the tolls and other revenues of the Project and other moneys to the extent provided in this Agreement as security for the payment of the principal of and the premium, if any, and the interest on such bonds and as security for the satisfaction of any other obligation assumed by it in connection with such bonds, and it is so mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders of the bonds issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise;

TO HAVE AND TO HOLD the trust estate forever, subject, however, to the rights of the Company under the Loan Agreement and the Concession Agreement and to the exceptions, reservations and matters therein and herein recited but in trust, nevertheless, for the equal and proportionate benefit and security of the owners from time to time of the bonds authenticated and delivered hereunder and issued by the Authority and outstanding, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise;

PROVIDED, HOWEVER, that if the Authority, or its successors or assigns, shall well and truly pay, or cause to be paid, or provide for the payment, pursuant to the provisions of this Trust Agreement, the principal of all the Bonds and the interest and any redemption premium due or to become due thereon, at the times and in the manner mentioned in the Bonds and this Agreement, according to the true intent and meaning thereof and hereof, and shall pay or cause to be paid to the Trustee all sums of money due or to become due to it in accordance with the terms and provisions hereof, then upon such performance and payments this Agreement and the

12

HTA_CONF 00017062

rights hereby granted shall cease, terminate and become void, as provided in Article XIII hereof, and thereupon the Trustee shall cancel and discharge this Agreement and execute and deliver to the Authority and the Company such instruments in writing as shall be required to evidence the discharge hereof; otherwise this Agreement to be and remain in full force and effect.

THIS AGREEMENT FURTHER WITNESSETH, and it is expressly declared, that all bonds issued and secured hereunder are to be issued, authenticated and delivered and the payments under the Loan Agreement and other revenues and funds hereby pledged are to be dealt with and disposed of under, upon and subject to the terms, conditions, stipulations, covenants, agreements, trusts, uses and purposes as hereinafter expressed, and the Authority has agreed and covenanted, and does hereby agree and covenant, with the Trustee and with the owners, from time to time, of such bonds, or any portion thereof, as follows, that is to say:

NY1 5442588v15

HTA_CONF 00017063

ARTICLE I.

Definitions.

Section 101. Definitions.   In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is intended:

"Accreted Value" means, with respect to any capital appreciation bond, an amount equal to the principal amount of such Bond on the date of original issuance plus the interest accrued on such Bond from the date of original issuance, such interest to accrue at the rate set forth in the resolution of the Authority providing for the issuance of said Bond, but not exceeding the maximum rate permitted by law, compounded periodically at the times provided for in said resolution.

"Act" means Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended, and all future acts supplemental thereto or amendatory thereof.

"Act of Bankruptcy" means the filing of a petition commencing a case under the United States Bankruptcy Code by or against the Company or by the Authority.

"Agreement" means this Trust Agreement, together with all agreements supplemental hereto as herein permitted.

"Amortization Requirement" means, for any fiscal year, the principal amount fixed or computed for such fiscal year as hereinafter set forth for the retirement of term bonds by purchase, redemption or payment.

The Amortization Requirements for the term bonds shall be initially the respective principal amounts for each fiscal year as fixed in a resolution of the Authority adopted prior to the issuance of the bonds.   The aggregate amount of such Amortization Requirements for the term bonds shall be equal to the aggregate principal amount of the term bonds.

If before and during any fiscal year the total principal amount of term bonds retired by purchase or redemption or called for redemption under the provisions of Section 506 of this Agreement shall be in excess of the amount of the Amortization Requirement for the term bonds for such fiscal year, then at the close of such fiscal year, the amount of the Amortization Requirements for the term bonds shall be reduced in inverse order .  If, however, the Trustee is otherwise notified in writing by an Authority Representative and an Authorized Company Representative, or solely by an Authorized Company Representative in the event moneys used for such redemption were contributed by the Company from moneys available for distribution under Section 509(a) of this Agreement or from moneys contributed by the partners of the Company contemporaneously for such purpose or moneys transferred from the Company Reserve Fund, such Amortization Requirements shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as an Authorized Company Representative prior to the Authority's becoming obligated to give the Assumption Notice and as the Executive Director thereafter shall specify in an order filed with the Trustee on or before July 10 following the close of such fiscal year.  After any adjustments required by said order, the

14

HTA_CONF 00017064

Amortization Requirement for the then current fiscal year shall continue to be applicable during the balance of such current fiscal year and no adjustment shall be made therein by reason of term bonds purchased or redeemed or called for redemption during such current fiscal year.

"Annual Budget" means the annual budget of Current Expenses for a fiscal year prepared by the Company pursuant to Section 5.01 of the Loan Agreement.

"Assumption Notice" has the meaning set forth in Section 513 of this Agreement.

"Authority" means Puerto Rico Highways and Transportation Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth and any body, agency or instrumentality of the Commonwealth which shall hereafter succeed to the powers, duties and functions of the Authority.

"Authority Representative" means each person designated to act on behalf of the Authority by a written certificate furnished to the Trustee and the Company, containing the specimen signature of such person and signed on behalf of the Authority by an authorized officer thereof.

"Authorized Company Representative" means each person designated to act on behalf of the Company by a written certificate furnished to the Trustee and the Authority, containing the specimen signature of such person and signed on behalf of the Company by an authorized officer thereof.

"Available 401(g) Construction Fund Moneys" has the meaning set forth in Section 513 of this Agreement.

"Board" means the Secretary of Transportation and Public Works of the Commonwealth or the board, body or officer succeeding to the principal functions thereof or to whom the powers of the Authority shall be given by law.

"Bondholder" or "holder" means the registered owner of any bond issued under the provisions of Section 208 of this Agreement.

"Bond Resolution" means Resolution No. 98-06, adopted by the Board on February 26, 1998, as amended, authorizing and securing the Authority's Transportation Revenue Bonds.

"Bonds" means the bonds authorized to be issued under the provisions of Section 208 of this Agreement.

"Bond Service Account" means the Bond Service Account created in the Sinking Fund by the provisions of Section 504 of this Agreement.

"Business Day" means a day which is not a Saturday, Sunday or other day on which banking institutions in the Commonwealth are authorized or required by law or executive order to close or are customarily closed for business.

"Commonwealth" means the Commonwealth of Puerto Rico.

NY1 5442588v15

HTA_CONF 00017065

"Company" means Autopistas de Puerto Rico y Compañía, S.E., a partnership organized and existing under the laws of the Commonwealth which has elected to be treated under such laws as a special partnership, and its successors and permitted assigns and any surviving, resulting or transferee entity and any concessionaire duly appointed by the Authority under the Concession Agreement.

"Company Reserve Fund" means the Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Company Reserve Fund, a special fund created and designated by the provisions of Section 509(b) of this Agreement.

"Concession Agreement" means the Concession Agreement for the Final Design, Construction, Operation and Maintenance of a Privatized Transportation Facility, dated as of December 20, 1991, as amended on March 20, 1992 and on October 30, 2003, by and between the Authority and the Company, together with any amendments thereto as therein permitted.

"Current Expenses" means the reasonable and necessary current expenses incurred in operating, maintaining and repairing the Project and shall include, without limiting the generality of the foregoing, all ordinary and usual expenses of operation, maintenance and repair, which may include expenses not annually recurring, all administrative expenses, insurance premiums, engineering expenses relating to operation and maintenance, fees and expenses of the Trustee, legal expenses, advertising expenses, any taxes lawfully levied on the Project, and all other expenses required to be paid under the provisions of this Agreement, the Loan Agreement, the Concession Agreement or by law, but shall not include any reserves for extraordinary maintenance or repair or any charge for depreciation or any deposits to the credit of the Sinking Fund, the Renewal and Replacement Fund or the General Fund.

"Defaulted Interest" has the meaning specified in Section 203 hereof.

"Executive Director" means the Executive director or the Acting Executive Director of the Authority for the time being, or if there is no Executive Director or Acting Executive Director, then any person designated by the Board or authorized by the by-laws of the Authority to perform the functions of the Executive Director.

"Fiscal Year" means the period commencing on the 1st day of July and ending on the last day of June of the following calendar year.

"Government Obligations" means (i) direct obligations of, or obligations the timely payment of principal of and the interest on which are unconditionally guaranteed by, the United States Government, (ii) direct obligations of or obligations the principal of and interest on which shall be unconditionally guaranteed by any of the following:  Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export Import Bank of the United States, Federal Financing Bank, Government National Mortgage Association or Federal Land Banks, Farmer's Home Administration, Federal Home Loan Mortgage Corporation, Federal National Mortgage Association or Federal Housing Administration which obligations are rated at the time of purchase in the highest rating category by both Moody's and S&P, (iii) all other obligations issued or unconditionally guaranteed as to principal and interest by an agency or instrumentality of the United States of America or person controlled or supervised by and acting as an

NY1 5442588v15

HTA_CONF 00017066

instrumentality of the United States of America pursuant to authority granted by the Congress, (iv) municipal obligations, the payment of the principal of and interest and redemption premium, if any, on which are irrevocably secured by obligations described in clause (i) of this definition and which obligations are not subject to redemption prior to the date on which the proceeds attributable to the principal of the obligations are to be used and have been deposited in an escrow account which is irrevocably pledged to the payment of the principal of and interest and redemption premium, if any, on such municipal obligations, and (v) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clauses (i), (ii), (iii) and (iv) of this definition held by a bank or trust company as custodian and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated.

"Initial Reserve Account Letter of Credit" means that certain irrevocable, stand-by letter of credit in favor of the Trustee (No. S000542) issued by Banco Santander Puerto Rico.

"Interest payment date" means the first day of each month, commencing December 1, 2003.

"Investment Agreement" shall mean any agreement for the investment of moneys entered into by the Trustee with a Qualified Financial Institution or collateralized at all times by Government Obligations, having a market value at least equal to the principal amount of such agreement, as to which collateral the Trustee has a perfected first priority security interest, which collateral is held by the Trustee or its agent free and clear of claims by third parties and which collateral will result in the agreement being rated in the highest rating category by both Moody's and S&P.

"Investment Obligations" means (i) Government Obligations, (ii) direct and general obligations of any state or territory of the United States of America to the payment of the principal of and interest on which the full faith and credit of such state or territory are pledged, provided that such obligations are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's and S&P, (iii) bankers' acceptances, certificates of deposit or time deposits of any bank or national banking association, trust company or savings and loan association (including any investment in pools of such bankers' acceptances, certificates of deposit or time deposits), which to the extent that such obligations are not insured by the Federal Deposit Insurance Corporation, are either (A) issued by a bank, banking association, trust company or savings and loan association having a combined capital and surplus aggregating at least $50,000,000 or (B) collateralized at all times by such securities as are described in clause (i) or (ii) above, having a market value at least equal to the principal amount of such bankers' acceptances, certificates of deposit or time deposits (or portion thereof not so insured); provided that the Trustee has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties, (iv) any repurchase, reverse repurchase or investment agreement with any bank or trust company organized under the laws of any state of the United States or the Commonwealth or any national banking association, insurance company, or government bond dealer reporting to, trading with, and recognized as a primary dealer by the Federal Reserve Bank of New York and a member of the Security Investors Protection Corporation, which agreement is secured by such securities described in clause (i) or (ii) above, provided that the

17

HTA_CONF 00017067

Trustee has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties, (v) obligations, whether or not insured, issued by any state or territory of the United States, or any political subdivision, agency or instrumentality thereof which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's and S&P, (vi) participating shares in a mutual fund or investment pool for local government investment, provided that the investments of such mutual fund or investment pool are rated in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's and S&P, (vii) shares of stock in a corporation rated in the highest rating category by Moody's and S&P; (viii) any other obligations permitted under the laws of the Commonwealth which are rated, or which are issued by issuers which are rated, on the date of investment therein, in any of the three highest rating categories (without regard to any gradations within any such category) by both Moody's  and S&P, or which are collateralized by other Investment Obligations, (ix) money market accounts of any state, Commonwealth or federally chartered bank, banking association, trust company or subsidiary trust company, including the Trustee, that is rated or whose parent bank is rated in the highest short-term rating category or in the highest long-term rating category by Moody's or S&P (without regard to any gradations within any such category) or money market funds registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, and having rating by S&P of "AAAm-G" or "AAAm", (x) units of beneficial interest in any investment program pools created by Government Development Bank for Puerto Rico or any of its subsidiaries or affiliates, (xi) any obligations permitted under the laws of the Commonwealth which are rated in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's and S&P; and (xii) any securities otherwise permitted as eligible collateral under Act No. 69 of the Legislature of Puerto Rico, approved August 14, 1991, as amended.

"Loan Agreement" means the Loan Agreement, dated as of October 1, 2003, by and between the Authority and the Company, together with any amendments or supplements thereto as herein permitted.

"Moody's" means Moody's Investors Service, Inc. or any successors thereto.

"Net Proceeds" means the gross proceeds derived from insurance or any eminent domain award or agreement in lieu of award in eminent domain proceedings, less payment of attorneys' fees and expenses properly incurred in the collection of such gross proceeds.

"Net Proceeds Fund" means the Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Net Proceeds Fund, a special fund created and designated by the provisions of Section 401 of this Agreement.

"Net Revenues" for any particular period means the amount of the excess of the Revenues for such period over the Current Expenses for such period.

"1998 Construction Fund" has the meaning set forth in Section 513 of this Agreement.

18

HTA_CONF 00017068

"outstanding" when used with respect to the bonds means, as of the date of determination, all bonds authenticated and delivered under this Agreement, except:

> (i)     bonds canceled or delivered to the Trustee for cancellation;
>
> (ii)    bonds for whose payment or redemption moneys or Government Obligations in the necessary amount have been theretofore deposited with the Trustee in trust for the holders of such bonds, provided that, if such bonds are to be redeemed, notice of such redemption has been duly given pursuant to this Agreement or provision therefor satisfactory to the Trustee has been made; and
>
> (iii)   bonds in exchange for or in lieu of which other bonds have been authenticated and delivered pursuant to this Agreement;

provided, however, that in determining whether the holders of the requisite principal amount of bonds outstanding have given any request, demand, authorization, direction, notice, consent or waiver hereunder, bonds owned by the Company or the Authority or any affiliate of either thereof shall be disregarded and deemed not to be outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only bonds which the Trustee knows to be so owned shall be so disregarded. Bonds so owned which have been pledged in good faith may be regarded as outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such bonds and that the pledgee is not the Company or the Authority or any affiliate of either thereof.

"Pledged Revenues" means (i) prior to the termination of the Loan Agreement and without duplication, the Net Revenues, the payments required or deemed to be made by the Company under and from Net Revenues and the other sources specified in Section 4.01 of the Loan Agreement and any other funds derived under the Loan Agreement and this Agreement to the extent provided in this Agreement and (ii) after the termination of the Loan Agreement, the Net Revenues, Available 401(g) Construction Fund Moneys (to the extent provided in Section 513 hereof) and any other funds derived under this Agreement to the extent provided in this Agreement.

"predecessor bonds" of any particular bonds means every previous bond evidencing all or a portion of the same debt as that evidenced by such particular bond; and, for purposes of this definition, any bond authenticated and delivered under Section 210 in lieu of a lost, destroyed or mutilated bond shall be deemed to evidence the same debt as the lost, destroyed or mutilated bond.

"principal" means, (a) with respect to any capital appreciation bond the initial principal amount, when used in connection with the order of payments under Section 806 hereof, and the Accreted Value thereof, when used in all other circumstances, including in connection with determining whether the holders of the requisite principal amount of bonds outstanding have given any request, demand, authorization, direction, notice, consent or waiver hereunder or with respect to the redemption price of such bond, unless otherwise expressly provided by the

NY1 5442588v15

HTA_CONF 00017069

Authority, and (b), with respect to all other bonds, other than capital appreciation bonds, the amount stated to be payable at maturity or at earlier redemption.

"Principal and Interest Requirements" for any fiscal year, as applied to the bonds, means the sum of:

> (i)   the amount required to pay the interest on all outstanding bonds on the first day of each month after July in such fiscal year and on July 1 in the following fiscal year;
>
> (ii)  the amount required to pay the principal of all outstanding serial bonds on July 1 in such following fiscal year; and
>
> (iii) the Amortization Requirement for the term bonds for such fiscal year.

The Principal and Interest Requirements shall be computed, as required from time to time, by the Trustee.  In computing the Principal and Interest Requirements for any fiscal year, the Trustee shall assume that an amount of term bonds equal to the Amortization Requirements for the term bonds for such fiscal year will be retired by purchase or redemption on July 1 of the following fiscal year.  In the case of capital appreciation bonds, the Accreted Value thereof due at maturity or by virtue of an Amortization Requirement shall be included in the calculation of Principal and Interest Requirements in the fiscal year in which such Accreted Value is due.

"Prior Bonds" means the Puerto Rico Highway and Transportation Authority Special Facility Revenue Bonds, 1992 Series A, B and C (San José Lagoon Bridge Project).

"Project" means "Project" as defined in the Loan Agreement, including any modifications thereof, substitutions therefor or additions thereto made in accordance with and subject to the Concession Agreement, and excluding deletions therefrom.

"Qualified Financial Institution" means the Federal National Mortgage Association or any bank, trust company or national banking association or a corporation subject to registration with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, as amended or any government securities dealer, insurance company or other financial institution whose unsecured obligations or uncollateralized long term debt obligations (or obligations guaranteed by its parent entity) shall at all times during the term of the Investment Agreement issued by such Qualified Financial Institution have been assigned a rating by Moody's and S&P in the highest rating category, or which has issued a letter of credit, contract or agreement in support of debt obligations which at all times shall have been so rated.

"Redemption Account" means the special account created in the Sinking Fund by the provisions of Section 504 of this Agreement.

"Regular Record Date" means the 15th day of the month next preceding an interest payment date.

NY1 5442588v15

HTA_CONF 00017070

"Renewal and Replacement Fund" means the Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Renewal and Replacement Fund, a special fund created and designated by the provisions of Section 504 of this Agreement.

"Reserve Account" means the special account created in the Sinking Fund by the provisions of Section 504 of this Agreement.

"Reserve Account Insurance Policy" means the insurance policy, surety bond or other acceptable evidence of insurance, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or Investment Obligations on deposit therein, for the purpose of making the payments required to be made from the Reserve Account under Section 507 hereof. The issuer providing such insurance shall be a municipal bond insurer whose policy or bond results in the rating of municipal obligations secured by such policy or bond to be rated, at the time of deposit into the Reserve Account, in one of the three highest long-term rating categories (without regard to any gradations within any such category) by (i) either S&P or Moody's or (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

"Reserve Account Letter of Credit" means the Initial Reserve Account Letter of Credit or a successor irrevocable, transferable letter of credit, if any, to be deposited in the Reserve Account in lieu of or in partial substitution for cash or securities on deposit therein, as provided in and for the purpose of making the payments required to be made from the Reserve Account under Section 507 hereof.  The issuer providing such letter of credit shall be a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit to be rated, at the time of deposit into the Reserve Account, in one of the three highest long-term rating categories (without regard to any gradations within any such category) by (i) either S&P or Moody's (ii) if both such corporations shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, a nationally recognized rating agency.

"Reserve Requirement" means the amount of $8,000,000.00.

"Revenue Fund" means the Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Revenue Fund, a special fund created and designated by the provisions of Section 503 of this Agreement.

"Revenues" means all moneys received by the Authority or the Company in connection with the ownership or operation of the Project, including all moneys received from tolls, rates, rentals, fees and other charges, proceeds of business interruption insurance on the Project and income from investments made under the provisions of this Agreement, except income from the investment of moneys in the Net Proceeds Fund and in the Renewal and Replacement Fund.

"S&P" means Standard & Poor's Ratings Service or any successors thereto.

"Secretary" means the Secretary or any Assistant Secretary of the Authority, or if there is no secretary or assistant secretary, then any person designated by the Board or authorized by the by-laws of the Authority to perform the functions of the Secretary.

NY1 5442588v15

HTA_CONF 00017071

"serial bonds", "term bonds" and "capital appreciation bonds" mean the bonds designated as such in a resolution of the Board adopted prior to the issuance of such bonds.

"Sinking Fund" means the Special Facility Revenue Bonds (Teodoro Moscoso Bridge) Interest and Sinking Fund, a special fund created and designated by the provisions of Section 504 of this Agreement.

"Special Record Date" means a date fixed by the Trustee for the payment of Defaulted Interest pursuant to Section 203 hereof.

"Substitute Bonds" has the meaning set forth in Section 513 of this Agreement.

"Trustee" means the Trustee acting hereunder whether original or successor.

Section 102. <u>Miscellaneous</u>.   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the context shall otherwise indicate, "bond", "bondholder", "owner" and "person" shall include the plural as well as the singular number and "person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

22

HTA_CONF 00017072

## ARTICLE II.

Form, Execution, Authentication, Delivery and
Exchange of Bonds.

Section 201. <u>Limitation on Issuance of Bonds</u>. No bonds may be issued under the provisions of this Agreement except in accordance with the provisions of this Article.

Section 202. <u>Form of Bonds</u>. The definitive bonds are issuable as registered bonds without coupons, in denominations of $5,000 and any multiple thereof ($5,000 maturity amount and any multiple thereof with respect to capital appreciation bonds) except that the serial bonds shall be in denominations of $1,000 and any multiple thereof, as provided by resolution of the Board, and shall be substantially in the form hereinabove set forth, with such appropriate variations, omissions and insertions as permitted or required by this Agreement and with such additional changes as may be necessary or appropriate to conform to the provisions of the resolution or resolutions providing for the issuance of such bonds. All bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or of any securities exchange on which the bonds may be listed or traded or any usage or requirement of law with respect thereto or as may be authorized by the Authority and approved by the Trustee.

Section 203. <u>Details of Bonds</u>. The bonds shall be dated, shall bear interest until their payment, such interest to the maturity thereof being payable in the case of bonds other than capital appreciation bonds monthly on the 1st day of each month in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided.

Each bond shall bear interest from the interest payment date next preceding the date on which it is authenticated to which interest shall have been paid or duly provided for, unless authenticated on an interest payment date to which interest shall have been paid or duly provided for, in which case it shall bear interest from such interest payment date, or unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any bond interest is in default, such bond shall bear interest from the date to which interest shall have been paid or duly provided for. Interest on the bonds shall be computed on the basis of a 360-day year of twelve 30-day months.

The bonds shall be signed by, or bear the facsimile signatures of, the Secretary of Transportation and Public Works, the Executive Director and the Secretary, and a facsimile of the corporate seal of the Authority shall be imprinted or impressed on the bonds.

In case any officer whose signature shall appear on any bonds shall cease to be such officer before the delivery of such bonds, such signature shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any bond may bear the signature of such persons as at the actual time of the execution of such bond shall be the proper officers to sign such bond although at the date of such bond such persons may not have been such officers.

23

HTA_CONF 00017073

The principal of and the premium, if any, and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of and the premium, if any, on all bonds shall be payable only to the registered owner or his legal representative at the corporate trust office of the Trustee, and payment of the interest on each bond which is payable and is punctually paid or duly provided for on any interest payment date shall be paid by the Trustee to the person in whose name such bond (or one or more predecessor bonds) is or was registered at the close of business on the Regular Record Date, by check mailed to such person at his address as it appears on the registration books of the Authority hereinafter provided for and by wire transfer to a registered owner owning not less than $1,000,000 initial aggregate principal amount of bonds who specifies in writing to the Trustee not later than the corresponding Regular Record Date the account to which such interest is to be paid. Except as provided in Sections 209 and 210 of this Agreement, payment of the principal of and the premium, if any, on all bonds shall be made upon the presentation and surrender of such bonds as the same shall become due and payable.

Interest on any bond which is payable, but is not punctually paid or duly provided for within five (5) days after the same shall become due and payable (herein called "Defaulted Interest"), shall forthwith cease to be payable to the holder on the relevant Regular Record Date solely by virtue of his having been such holder; and such Defaulted Interest may be paid by the Authority, at its election in each case, as provided in clause (1) or (2) below:

(1)     The Authority may elect to make payment of any Defaulted Interest to the persons in whose names the bonds (or their respective predecessor bonds) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Authority shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each such bond and the date of the proposed payment, and at the same time the Authority shall deposit or cause to be deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money (when deposited) to be held in trust for the benefit of the persons entitled to such Defaulted Interest as in this clause provided. Thereupon, the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall promptly notify the Authority and the Company of such Special Record Date and, in the name and at the expense of the Company, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, certified mail, first-class postage prepaid, to each holder of such bonds at his address as it appears in the

24

HTA_CONF 00017074

registration books maintained under Section 206 of this Agreement not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been mailed as aforesaid, such Defaulted Interest shall be paid to the persons in whose names such bonds or their respective predecessor bonds are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (2).

(2)     The Authority may make payment of any Defaulted Interest in any other lawful manner if, after notice given by the Authority to the Trustee of the proposed payment pursuant to this clause, such payment shall be deemed practicable by the Trustee.

Subject to the foregoing provisions of this Section, each bond delivered under this Agreement upon registration of transfer of or in exchange for or in lieu of any other bond shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other bond.

Section 204. <u>Authentication of Bonds</u>.  Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form hereinabove set forth, duly executed by the Trustee, shall be entitled to any benefit or security under this Agreement.  No bond shall be valid or become obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Trustee, and such certificate of the Trustee upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Agreement.  The Trustee's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized signatory of the Trustee, but it shall not be necessary that the same signatory sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time.

Section 205. <u>Exchange of Bonds</u>.  Bonds, upon surrender thereof at the corporate trust office of the Trustee, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Trustee, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of bonds of the same maturity, of any denomination or denominations authorized by this Agreement and bearing interest at the same rate.

Section 206. <u>Registration of Transfers of Bonds</u>.  The Trustee shall keep books for the registration of transfers of bonds as provided in this Agreement.  Said registration books shall be available at all reasonable times for inspection by the Authority, the Company and their agents and representatives and the Trustee shall provide to the Company and the Authority upon their written request an accurate copy of the names and addresses of the holders set forth in such books.

The transfer of any bond may be registered only upon the books kept for the registration of transfers of bonds upon surrender thereof to the Trustee together with an assignment, duly executed by the registered owner or his attorney or legal representative, in such form as shall be

NY1 5442588v15

HTA_CONF 00017075

satisfactory to the Trustee.  Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for such bond a new bond or bonds registered in the name of the transferee, in the aggregate principal amount equal to the principal amount of such bond surrendered or exchanged of the same maturity, of any denomination or denominations authorized by this Agreement and bearing interest at the same rate.

In all cases in which bonds shall be exchanged or the transfer of bonds shall be registered hereunder, the Authority shall execute and the Trustee shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Agreement.  All bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Trustee.  No fee or service charge shall be made for any such registration of transfer or exchange of bonds, but the Authority or the Trustee may require payment of a sum sufficient to reimburse it for any tax or other governmental charge that may be imposed with respect to such exchange or registration of transfer.  Neither the Authority nor the Trustee shall be required to make any such exchange or registration of transfer of a bond during the fifteen (15) days immediately preceding the date of first giving of notice of any redemption of bonds, or after a bond or any portion thereof has been selected for redemption.

Section 207.  Ownership of Bonds; Transfer of Title.  As to any bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of any such bond and the interest on any such bond shall be made only to or upon the order of the registered owner thereof or his legal representative.  All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond including interest thereon to the extent of the sum or sums so paid.

The owner of any bond is hereby granted the power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond.  Every prior owner of any bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

Section 208.  Authorization of Bonds.  There shall be issued under and secured by this Agreement bonds of the Authority in the aggregate principal amount of $153,222,270.45 for the purposes of providing funds for refunding the Prior Bonds and all costs incident to the refunding and the issuance of the bonds.  Said bonds shall be dated their date of delivery, shall bear interest at such rate or rates not exceeding the maximum rate permitted by law and shall be numbered as may be provided by resolution of the Board adopted prior to the issuance of such bonds and shall be designated "Puerto Rico Highways and Transportation Authority Special Facility Revenue Refunding Bonds, 2003 Series A (Teodoro Moscoso Bridge)":

$11,890,000 of said bonds shall be serial bonds maturing annually on the 1st day of July in the years and amounts as follows:

NY1 5442588v15

HTA_CONF 00017076

| Year of Maturity | Principal Amount |
|---|---|
| 2008 | $ 525,000 |
| 2009 | 740,000 |
| 2010 | 990,000 |
| 2011 | 1,870,000 |
| 2012 | 3,185,000 |
| 2013 | 4,580,000 |

$125,455,000 of said bonds shall be term bonds consisting of $35,240,000 principal amount of bonds maturing July 1, 2018, $23,580,000 principal amount of bonds maturing July 1, 2020, $40,930,000 principal amount of bonds maturing July 1, 2025 and $25,920,000 principal amount of bonds maturing March 1, 2027, and the remaining bonds shall be capital appreciation bonds maturing annually on the 1st day of July in the years and having the Accreted Values at maturity set forth below:

| Maturity | Accreted Value | Maturity | Accreted Value |
|---|---|---|---|
| 2021 | $10,315,000 | 2024 | $8,065,000 |
| 2022 | 8,525,000 | 2025 | 8,195,000 |
| 2023 | 7,355,000 | 2026 | 8,830,000 |

Interest on all said bonds (other than the capital appreciation bonds) shall be payable on the first day of each month, beginning on December 1, 2003.  Interest on the capital appreciation bonds shall be payable as part of their Accreted Value upon maturity or earlier payment in full.

The term bonds shall have such Amortization Requirements as may be provided by resolution of the Board adopted prior to the issuance of such bonds.

The bonds authorized by this Section shall be executed substantially in the form and manner hereinabove set forth and shall be deposited with the Trustee for authentication, but before the Trustee shall authenticate and deliver said bonds there shall be filed or deposited with the Trustee the following:

(a)     a copy, certified by the Secretary, of the resolutions mentioned above;

(b)     a copy, certified by the Secretary, of the resolution of the Board awarding such bonds and directing the authentication and delivery of said bonds to or upon the order of the purchasers named therein upon payment of the purchase price therein set forth and the accrued interest, if any, on such bonds;

(c)     a certified counterpart of the Loan Agreement;

(d)     an opinion of counsel to the Company substantially to the effect that the execution and delivery of the Loan Agreement has been duly authorized by the Company, that the Loan Agreement is in the form so authorized and has been duly executed by the Company, and that, assuming proper authorization and execution of the

27

HTA_CONF 00017077

Loan Agreement by the Authority, the Loan Agreement is a valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except to the extent that the enforceability thereof may be limited by bankruptcy, insolvency or other laws affecting creditors' rights generally and subject to general principles of equity (regardless of whether said enforceability is considered in a proceeding in equity or at law);

(e)     an opinion of counsel, who may be counsel for the Authority, substantially to the effect that (i) the Authority has the legal right and power to enter into this Agreement and the Loan Agreement and has duly authorized and validly executed and delivered this Agreement and the Loan Agreement and this Agreement and the Loan Agreement are each legally valid and binding upon the Authority and enforceable against the Authority in accordance with their terms, except to the extent that the enforceability thereof may be limited by bankruptcy, insolvency or other laws affecting creditors' rights generally and subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law), (ii) this Agreement creates a legally valid and effective pledge of the moneys, securities and funds held or set aside under this Agreement as security for the bonds, subject to the application thereof to the purposes and on the conditions permitted by this Agreement, and that no filing or recording of any document is necessary in order to make such pledge effective or to continue it in effect (or specifying the place or places, if any, where such filing or recording is necessary and furnishing any officially authenticated certificates, or other documents, by which such filing or recording is evidenced and stating that such filings or recordings have been made and no other filing or recording is necessary), (iii) the issuance of the bonds will not violate any provision of law or of the by-laws of the Authority or result in the breach of, or constitute a default under, any agreement, indenture or other instrument to which the Authority is a party or by which it may be bound, (iv) no authorization, consent or approval or withholding of objection of any governmental body or regulatory authority is requisite to the legal issue of said bonds (unless such opinion shall show that no authorization, consent or approval or withholding of objection is requisite to the legal issue of said bonds, it shall specify and furnish any officially authenticated certificates, or other documents, by which such authorization, consent or approval or withholding of objection is evidenced and stating that no other authorization, consent or approval or withholding of objection is required), (v) the bonds are legally valid and binding direct obligations of the Authority, enforceable in accordance with their terms and the terms of this Agreement and have been duly and validly authorized and issued in accordance with applicable law and this Agreement, and (vi) the conditions precedent to the delivery of the bonds have been fulfilled and covering such other matters as the Trustee may reasonably request;

(f)     the Initial Reserve Account Letter of Credit;

(g)     a certified copy of the escrow deposit agreement, dated as of October 1, 2003, by and between the Authority and Banco Santander Puerto Rico relating to the Prior

NYI 5442588v15

HTA_CONF 00017078

Bonds and the opinions of counsel required by and an executed instrument of release delivered by Banco Santander Puerto Rico under Section 1301 of the trust agreement securing the Prior Bonds;

(h)     the executed financing statement referred to in Section 701 hereof; and

(i)     an opinion of counsel to Banco Santander Puerto Rico as to the validity and enforceability of the Initial Reserve Account Letter of Credit referred to in clause (f) above.

When the documents mentioned above in this Section shall have been filed with the Trustee and when said bonds shall have been executed and authenticated as required by this Agreement, the Trustee shall deliver said bonds at one time to or upon the order of the purchasers mentioned in the resolution mentioned in clause (b) of this Section, but only upon payment to the Trustee of the purchase price of said bonds.

The Trustee shall be entitled to rely upon the resolutions mentioned in clauses (a) and (b) of this Section as to all matters stated therein.

The proceeds (including any premium) of the Bonds shall be applied by the Trustee as follows:

(1)     an amount equal to the capitalized interest on the Bonds, if any, shall be deposited to the credit of the Bond Service Account in the Sinking Fund;

(2)     such amount as shall be specified by the Executive Director in a certificate filed with the Trustee shall be deposited with Government Development Bank for Puerto Rico for payment of expenses incident to the financing or shall be paid directly to the persons entitled to the payment thereof; and

(3)     any balance of such proceeds shall be transferred to the trustee for the Prior Bonds to be applied to the defeasance of the Prior Bonds.

Section 209. <u>Temporary Bonds</u>. Until definitive bonds are ready for delivery, there may be executed, and upon the written request of the Authority, the Trustee shall authenticate and deliver, in lieu of definitive bonds and subject to the same limitations and conditions, temporary printed, typewritten, engraved or lithographed bonds, in the form of registered bonds without coupons in such denominations, or in the form of a single registered bond without coupons in a denomination equal to the aggregate principal amount of such definitive bonds, with payment record attached for the notation of payments of interest, without presentation and surrender of such single registered bond, as the Authority by resolution may provide, substantially of the tenor hereinabove set forth and with such appropriate omissions, insertions and variations as may be required.

Until definitive Bonds are ready for delivery, any temporary bond may, if so provided by the Authority by resolution, be exchanged at the corporate trust office of the Trustee without charge to the holder thereof for an equal aggregate principal amount of temporary registered

NYI 5442588v15

bonds without coupons of authorized denominations, of like tenor, of the same maturity and bearing interest at the same rate.

If temporary bonds shall be issued, the Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Trustee, and the Trustee, upon presentation to it at its corporate trust office of any temporary bond, shall cancel the same and authenticate and deliver in exchange therefor at the place designated by the holder, without charge to the holder thereof, a definitive bond or bonds of an equal aggregate principal amount as the temporary bond surrendered, of the same maturity and bearing interest at the same rate as the temporary bond surrendered. Until so exchanged, the temporary bonds shall in all respects be entitled to the same benefit and security of this Agreement as the corresponding definitive bonds to be issued and authenticated hereunder. No charge of any kind shall be made against the holder upon an exchange of a temporary bond for a definitive bond.

Section 210. Mutilated, Destroyed or Lost Bonds. A mutilated bond may be surrendered and thereupon the Authority shall execute and the Trustee shall authenticate and deliver in exchange therefor a new bond of like tenor and principal amount to the surrendered bond.

If there shall be delivered to the Authority, the Company and to the Trustee

(a)     evidence to the satisfaction of each of them of the destruction or loss of any bond, and

(b)     such security or indemnity as may be required by each of them to save each of them harmless,

then, in the absence of notice to the Authority or the Trustee that such bond has been acquired by a bona fide purchaser, the Authority shall execute and upon its request the Trustee shall authenticate and deliver in lieu of any such destroyed or lost bond, a new bond of like tenor and principal amount.

In case any such mutilated, destroyed or lost bond has become or is about to become due and payable, the Authority in its discretion, instead of issuing a new bond, may pay such bond.

Upon the issuance of any new bond under this Section, the Authority may require from the holder of the bond the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every bond issued pursuant to the provisions of this Section 210 in exchange or substitution for any bond which is mutilated, destroyed or lost shall constitute an additional contractual obligation of the Authority, whether or not the destroyed or lost bond shall be found at any time, or be enforceable by anyone, and shall be entitled to all the benefits hereof equally and proportionately with any and all other bonds duly issued under this Agreement. All bonds shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed or lost bonds, and shall preclude any and all other rights or remedies, notwithstanding any law or statute existing or

30

HTA_CONF 00017080

hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

## ARTICLE III.

## Redemption of Bonds.

Section 301.  <u>Redemption of Bonds</u>.  The bonds shall be subject to prior redemption as follows:

(i)  <u>Extraordinary Mandatory Redemption and Extraordinary Optional Redemption</u>. In the event the Company shall become obligated to prepay all or part of the entire amount payable under Section 4.01 of the Loan Agreement in accordance with Section 8.02 of the Loan Agreement, the bonds shall be called for redemption in whole or in part, to the extent permitted by the Loan Agreement, and if in part, in inverse order of maturity, unless otherwise agreed by the Authority and the Company, from such Net Proceeds, at a redemption price equal to the principal amount of the bonds to be redeemed plus accrued interest to the redemption date, without premium, which redemption date shall be the next interest payment date occurring not earlier than forty-five (45) days after receipt by the Trustee of the Net Proceeds paid on account of the taking mentioned in said Section 8.02.

In the event that the Authority and the Trustee shall receive written notice pursuant to the Loan Agreement that the Company shall have elected to prepay all of the amounts payable under Section 4.01 of the Loan Agreement pursuant to Section 8.01(a) (2) of the Loan Agreement and that all of the bonds are to be redeemed, the bonds shall be called for redemption in whole from such Net Proceeds on the next interest payment date occurring not less than forty-five (45) days after receipt of such notice and of the Net Proceeds received on account of the casualty events mentioned in said Section 8.01(a)(2) at a redemption price equal to the principal amount thereof plus accrued interest to the redemption date, without premium.

The bonds at the time outstanding are subject to redemption in whole or in part (and if in part, in such order of maturity as the Authority shall determine) at the option of the Authority at any time not earlier than forty-five (45) days following the date on which the Authority becomes obligated to give the Assumption Notice, at a redemption price equal to the principal amount thereof plus accrued interest to the redemption date, without premium.

(ii)  <u>Optional Redemption</u>.  In the event that the Authority and the Trustee shall receive written notice pursuant to Loan Agreement that the Company shall have elected to prepay all or a portion of the loan pursuant to the Loan Agreement and that all or part of the bonds are to be redeemed, then the bonds maturing after July 1, 2011 shall be called for redemption from any available moneys (other than moneys set aside in the Sinking Fund in respect of an Amortization Requirement), in whole on any date selected by the Company not earlier than October 1, 2011 (which date shall be not less than thirty (30) days from the date that notice of such redemption is given by the Company to the Trustee) or in part, in inverse order of maturity, unless otherwise agreed by the Authority and the Company or unless the available moneys used to effect such redemption consist of moneys contemporaneously contributed to the Company for  such purpose by its partners, of Revenues available to be distributed to the

NYI 5442588v15

HTA_CONF 00017081

partners of the Company in accordance with this Agreement and the Loan Agreement or of moneys transferred from the Company Reserve Fund, in which case such bonds shall be redeemed in such order of maturity as the Company shall direct, on any interest payment date selected by the Company not earlier than October 1, 2011 at the following redemption prices (expressed as a percentage of the principal amount so redeemed), plus accrued interest to the date fixed for redemption:

| Redemption Date | Redemption Price |
| --- | --- |
| October 1, 2011 through September 30, 2012 | 101% |
| October 1, 2012 through September 30, 2013 | 100½% |
| October 1, 2013 and thereafter | 100% |

(iii)    Mandatory Sinking Fund Redemption.  In addition, the term bonds shall be subject to redemption to the extent of the Amortization Requirements therefor on July 1 in each fiscal year in which there is an Amortization Requirement in respect of such bonds at a redemption price equal to the principal amount thereof, together with accrued interest to the date fixed for redemption.

(iv)    Selection of Bonds for Redemption.  Except in the case of redemption pursuant to clause (ii) above or as otherwise provided in clause (i) above, if part of the bonds shall be called for redemption, bonds shall be redeemed in inverse order of maturity unless otherwise agreed by the Authority and the Company.  If fewer than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Trustee by lot or such other method as it shall deem fair and appropriate.

Section 302.  Redemption Notice.  At least thirty (30) days before the redemption date of any bonds, the Trustee shall cause a notice of any such redemption, either in whole or in part, signed by the Trustee to be mailed, certified first-class mail, postage prepaid, to all bondholders whose bonds are to be redeemed.  Each such notice shall set forth (1) the date fixed for redemption, (2) the redemption price to be paid, (3) if fewer than all of the bonds then outstanding of any one maturity shall be called for redemption, the distinctive numbers and letters, if any, of such bonds to be redeemed and, in the case of bonds to be redeemed in part only, the portion of the principal amount thereof to be redeemed, (4) that on the date fixed for redemption such redemption price will become due and payable upon each bond or portion thereof called for redemption, and that interest thereon shall cease to accrue on and after said redemption date, and (5) the place where such bonds or portions thereof called for redemption are to be surrendered for payment of such redemption price, and shall otherwise comply with Securities Exchange Act of 1934 Release No. 34-23856, dated December 3, 1986 (the "Redemption Release").  In addition, the Trustee shall cause a copy of the above notice of redemption to be sent to the persons specified in Sections B and D of the Redemption Release at least two Business Days before notice is given in accordance with the preceding sentence.  In case any bond is to be redeemed in part only, the notice of redemption which relates to such bond shall state also that on or after the redemption date, upon surrender of such bond, a new bond or bonds of the same maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued.  Failure to comply with the requirements of the Redemption Release shall not affect the validity of the proceedings for redemption and failure to mail such notice to any holder

NY1 5442588v15

HTA_CONF 00017082

or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of the bonds of any other holders.

Section 303. <u>Effect of Calling for Redemption</u>.   On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided, the bonds or portions of bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, and, if sufficient moneys for payment of the redemption price and the accrued interest, if any, are held in separate accounts by the Trustee in trust for the holders of the bonds or portions of bonds to be redeemed, as provided in this Agreement, interest on the bonds or portions of bonds so called for redemption shall cease to accrue, such bonds or portions of bonds shall cease to be entitled to any lien, benefit or security or to be outstanding under this Agreement, and the owners of such bonds or portions of bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and the accrued interest, if any, and, to the extent provided in Section 304 hereof, to receive bonds for any unredeemed portions of the bonds.

Section 304. <u>Redemption of Portions of the Bonds</u>.   In case part but not all of an outstanding bond shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Trustee for payment of the principal amount thereof so called for redemption and any redemption premium due on such principal amount, and the Authority shall execute and the Trustee shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the bond so surrendered, a new bond or bonds of the same maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Agreement.

NY1 5442588v15

HTA_CONF 00017083

ARTICLE IV.

Net Proceeds Fund.

Section 401. <u>Net Proceeds Fund</u>. A special fund is hereby created and designated the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Net Proceeds Fund" (the "Net Proceeds Fund"). There shall be deposited to the credit of the Net Proceeds Fund any Net Proceeds paid to the Trustee on account of damage to or destruction of the Project and applied to the payment of the cost of the restoration of the Project; provided, however, upon receipt of a written notice from the Company pursuant to the Loan Agreement, on account of prepayment pursuant to Section 8.01(a) or Section 8.02 of the Loan Agreement, the Trustee shall withdraw the entire amount then to the credit of the Net Proceeds Fund and deposit the amount so withdrawn to the credit of the Redemption Account.

The moneys in said Fund shall be held by the Trustee in trust and applied as hereinafter provided with respect to such Fund and, pending such application, shall be subject to a security interest, lien and charge in favor of the owners of the bonds issued and outstanding under this Agreement and for the further security of such owners until paid out or transferred as herein provided.

Section 402. <u>Requisites for Payments from Net Proceeds Fund</u>. Payments from the Net Proceeds Fund shall be made by the Trustee for the repair or replacement of the Project from such Net Proceeds upon the receipt of a certificate for payment of the Authority in accordance with the provisions of this Section, signed by an Authority Representative, stating:

(a)    the name of the Fund from which such payment shall be made,

(b)    the item number of each such payment,

(c)    the name of the person, firm or corporation (including the Company) to whom each such payment is due,

(d)    the respective amounts to be paid, and

(e)    that obligations in the stated amounts have been incurred and are payable, and that each item thereof is a proper charge against the Net Proceeds Fund, and has not been paid previously from the Net Proceeds Fund.

Upon receipt of any such certificate for payment, the Trustee shall pay forthwith such obligation from the Net Proceeds Fund. If prior to payment of any item in a certificate of payment the Authority should for any reason desire not to pay such item, the Authority shall give written notice of such decision to the Trustee and if such notice is received by the Trustee before the payment has been made, the Trustee shall not make such payment. In making any disbursement, the Trustee shall pay each such obligation as set forth in the certificate for payment of the Authority directing such disbursement.

Section 403. <u>Reliance on Certificates of Payment</u>. All certificates of payment received by the Trustee, as required in this Article as conditions of payment from the Net Proceeds Fund,

34

HTA_CONF 00017084

may be relied upon by the Trustee and shall be retained by the Trustee, subject at all reasonable times to examination by the Company, the Authority, any bondholder and the agents and representatives thereof.

Section 404. <u>Balance in Net Proceeds Fund</u>.  Any balance remaining in the Net Proceeds Fund after repair or replacement of the Project shall be deposited in the Bond Service Account.

NY1 5442588v15

HTA_CONF 00017085

ARTICLE V.

Revenues and Funds.

Section 501. <u>Covenant as to Rates</u>. The Authority covenants that, upon its becoming obligated to give the Assumption Notice, it will not reduce the tolls then in effect on the Project.

Section 502. <u>Uniformity of Tolls</u>. The Authority covenants that, upon its becoming obligated to give the Assumption Notice, tolls for traffic using the Project will be classified in a reasonable way to cover all traffic, so that the tolls may be uniform in application to all traffic falling within any reasonable class regardless of the status or character of any person, firm or corporation participating in the traffic, and that no reduced rate of toll will be allowed within any such class except that, subject to the provisions of Section 501 of this Article, provision may be made for the use of commutation or other tickets or privileges based upon frequency or volume and the use of electronic toll collection systems. The Authority further covenants that, after it has become obligated to give the Assumption Notice, no free vehicular passage will be permitted on the Project except to vehicles of officials and employees of the executive, legislative and judicial departments of the Commonwealth while they are in the discharge of their official duties, to vehicles of members, officers and employees of the Authority while they are in the discharge of their official duties, to vehicles of any fire or police department of the Commonwealth or any political subdivision thereof while operated in the discharge of their official duties and to vehicles owned or operated by agents and independent contractors of the Authority and by lessees of the Authority and their agents and independent contractors that are used in connection with the maintenance or operation of the Project, and except on such portions of any approaches of the Project as may be determined by the Authority.

Section 503. <u>Revenue Fund</u>. A special fund is hereby created and designated the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Revenue Fund" (herein sometimes called the "Revenue Fund"). The Authority covenants that all rentals, rates, fees, tolls and other charges and revenues derived from the operation or ownership of the Project will be collected and deposited daily, so far as practicable, with the Trustee to the credit of the Revenue Fund. The Trustee shall also deposit to the credit of the Revenue Fund the proceeds of the operation bond, business interruption insurance, liability insurance and fidelity insurance carried by the Company pursuant to Sections 14.1 and 14.2 of the Concession Agreement and Section 5.11 of the Loan Agreement.

The moneys in the Revenue Fund shall be held by the Trustee in trust and applied as hereinafter provided, and pending such application, such moneys shall be subject to a security interest, lien and charge in favor of the owners of the bonds issued and outstanding hereunder.

The Authority covenants that it will cause the Company to and after it has become obligated to give the Assumption Notice, the Authority will on or before the 1st day of June in each fiscal year prepare a budget of Current Expenses for the ensuing fiscal year (the "Annual Budget"), copies of which shall be filed with the Trustee and, prior to its becoming so obligated, also with the Authority. The Authority covenants that it will cause the Company to and after the Authority has become obligated to give the Assumption Notice, the Authority will prepare such

36

NYI 5442588v15

HTA_CONF 00017086

budget on the basis of monthly requirements so that it will be possible to determine from said budget the Current Expenses for each month in the fiscal year.

If for any reason the Annual Budget shall not have been adopted before the first day of any fiscal year, the budget for the preceding fiscal year shall, until the adoption of the Annual Budget, be deemed to be in force and shall be treated as the Annual Budget under the provisions of this Article.

The Authority agrees that the Company and after the Authority has become obligated to give the Assumption Notice, the Authority may at any time adopt an amended or supplemental Annual Budget for the remainder of the then current fiscal year, and the Annual Budget, as so amended or supplemented, shall be treated as the Annual Budget under the provisions of this Article.  The Authority covenants to cause the Company to and after the Authority has become so obligated, the Authority will file copies of any such amended or supplemental Annual Budget with the Trustee and, prior to its becoming so obligated, also with the Authority.

The Authority further covenants (1) to cause the Company to agree that and (2) that after the Authority has become obligated to give the Assumption Notice the Current Expenses incurred in any fiscal year will not exceed the reasonable and necessary amount thereof and that the Company and after it has become so obligated, the Authority will not expend any amount or incur any obligations for maintenance, repair and operation of the Project in excess of the amount provided for Current Expenses in the Annual Budget, except amounts which may be paid from moneys paid to the Company pursuant to Section 509(a) of this Agreement or from the Renewal and Replacement Fund and except as may otherwise be permitted by Section 5.01 of the Loan Agreement.

Section 504.  <u>Sinking Fund, Renewal and Replacement Fund and General Fund</u>.   A special fund is hereby created and designated the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Interest and Sinking Fund" (herein sometimes called the "Sinking Fund").  There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Redemption Account" and "Reserve Account", respectively.  Two additional special funds are hereby created and designated the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Renewal and Replacement Fund" (herein sometimes called the "Renewal and Replacement Fund") and the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) General Fund" (herein sometimes called the "General Fund").

The moneys in each of said Funds and Accounts shall be held by the Trustee in trust and applied as hereinafter provided with respect to each such Fund or Account and, pending such application, shall be subject to a security interest, lien and charge in favor of the owners of the bonds issued and outstanding under this Agreement and for the further security of such owners until paid out or transferred as herein provided.  The balance of the Renewal and Replacement Fund created under the Trust Agreement, dated as of April 1, 1992, between the Authority and Banco Santander Puerto Rico, successor trustee, shall be transferred to the Renewal and Replacement Fund created hereby upon the defeasance of said Trust Agreement.

It shall be the duty of the Trustee, on or before the last day of each month, to withdraw from the Revenue Fund an amount equal to the sum of all moneys then held for the credit of the

NY1 5442588v15

HTA_CONF 00017087

Revenue Fund, transfer to the Company a sum equal to the amount of Current Expenses set forth in the Annual Budget for the next month and deposit the remainder of the sum so withdrawn to the credit of the following Accounts or Funds in the following order:

(a)     to the credit of the Bond Service Account, such amount thereof (or the entire sum so withdrawn if less than the required amount) as may be required to make the total amount then to the credit to the Bond Service Account equal to the sum of (i) the amount of interest then or to become on the next interest payment date due and payable on the bonds then outstanding, and (ii) one-twelfth of the amount of principal of the serial bonds to become within the next ensuing twelve (12) months due and payable;

(b)     to the credit of the Redemption Account, such amount, if any, of any balance remaining after making the deposit under clause (a) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in the then current fiscal year to the credit of the Redemption Account equal to one-twelfth of the Amortization Requirements, if any, for such fiscal year for the term bonds then outstanding plus the premiums, if any, on such principal amount of term bonds which would be payable in such fiscal year if such principal amount of term bonds were to be redeemed in such fiscal year from moneys held for the credit of the Sinking Fund;

(c)     to the credit of the Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account equal to the Reserve Requirement;

(d)     to the credit of the Renewal and Replacement Fund, such amount, if any, of any balance remaining after making the deposits and payments under clauses (a), (b) and (c) above (or the entire balance if less than the required amount) as may be required to make the amount deposited in each six-month period ending June 30 and December 31, as the case may be, equal to $75,000 or such greater amount as the Company (or the Authority, after it has become obligated to give the Assumption Notice) may determine in a certificate signed by an Authorized Company Representative or Authority Representative, as appropriate, and filed with the Trustee; and

(e)     to the credit of the General Fund prior to the Authority's becoming obligated to give the Assumption Notice, and to the Redemption Account thereafter, any balance remaining after making the deposits and payments under clauses (a), (b), (c) and (d) above.

In addition, the Trustee shall deposit to the credit of the Redemption Account all Net Proceeds received on account of the taking of the concession evidenced by the Concession Agreement or of any part or all of the Project for any public use or purpose by the exercise of the power of eminent domain (or deed given in contemplation thereof), and any Net Proceeds pursuant to Section 401 hereof.

NY1 5442588v15

HTA_CONF 00017088

If the amount deposited in any month to the credit of any of the Accounts or Funds specified in clauses (a) through (d) above shall be less than the required amount for such month, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited in each month thereafter until such time as such deficiency shall have been made up.

Section 505. <u>Application of Moneys in Bond Service Account</u>.   The Trustee shall, immediately preceding each interest payment date, withdraw from the Bond Service Account and (a) remit by mail or by wire transfer, to the extent provided in the resolution of the Authority authorizing the issuance of the bonds, to each owner of bonds the amounts required for paying the interest on such bonds as such interest becomes due and payable and (b) set aside the amounts required for paying the principal of all serial bonds as such principal becomes due and payable.

Section 506. <u>Application of Moneys in Redemption Account</u>. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Agreement as follows:

(a)     Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase bonds or portions of bonds secured hereby and then outstanding, whether or not such bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Section 301(ii) of this Agreement if such bonds or portion of bonds should be called for redemption on such date. The Trustee shall pay the interest accrued on such bonds or portions of bonds to the date of settlement therefor from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made by the Trustee within the period of forty-five (45) days immediately preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Agreement except from moneys other than the moneys set aside or deposited for the redemption of bonds.

(b)     Subject to the provisions of paragraph (c) of this Section, the Trustee shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys in the Sinking Fund such amount of bonds or portions of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the moneys then held to the credit of the Redemption Account as nearly as may be; provided, however, that not less than Fifty Thousand Dollars ($50,000) principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Agreement. Prior to calling bonds or portions of bonds for redemption the Trustee shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts the respective amounts required for paying the principal of and the interest and the redemption premium, if any, on the bonds or portions of bonds so called for redemption.

NY1 5442588v15

HTA_CONF 00017089

(c)     Moneys in the Redemption Account shall be applied by the Trustee in each fiscal year to the retirement of bonds then outstanding in the following order:

**first**, the term bonds to the extent of the respective Amortization Requirements, if any, for such fiscal year for the term bonds then outstanding, and, if the moneys available in such fiscal year shall not be at least equal thereto, then, to the extent practicable, in proportion to the Amortization Requirements, if any, for such fiscal year for the term bonds then outstanding, plus the applicable premium, if any;

**second,** any balance then remaining shall be applied to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

**third,** any balance then remaining shall be applied to the retirement of the term bonds in proportion, to the extent practicable, to the respective Amortization Requirements, if any, for such fiscal year for the term bonds then outstanding, plus the applicable premium, if any; and

**fourth**, after the retirement of all term bonds any balance still remaining shall be applied to the retirement of the outstanding serial bonds in the order of maturity provided in clause (iv) of Section 301 of this Agreement.

The Trustee shall pay from the Revenue Fund all expenses in connection with any such purchase or redemption at the direction of the Company prior to the Authority's becoming obligated to give the Assumption Notice and of the Authority thereafter.

Section 507.  <u>Application of Moneys in Reserve Account</u>.  Moneys held for the credit of the Reserve Account or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall first be used for the purpose of paying interest on the bonds and maturing principal of the bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account (including moneys transferred from the General Fund to the credit of Bond Service Account pursuant to the provisions of the second paragraph of Section 509(a) of this Agreement) shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 504 of this Agreement whenever and to the extent that the withdrawals from the Revenue Fund (and moneys transferred from the General Fund to the Redemption Account pursuant to the second paragraph of Section 509(a) of this Agreement) are insufficient for such purpose.  If at any time the moneys held for the credit of the Reserve Account, including amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit, shall exceed the Reserve Requirement, such excess shall be transferred by the Trustee to the credit of the Bond Service Account.  If at any time moneys within the Reserve Account are used to pay the principal of or redemption premium, if any, or interest on, any bond, the Trustee shall promptly file with the Company and the Authority a notice thereof.

Notwithstanding anything to the contrary contained elsewhere in this Agreement, in lieu, or in partial satisfaction, of any required deposit into the Reserve Account, the Company (prior

NY1 5442588v15

to the termination of the Loan Agreement) and thereafter, the Authority may at any time cause to be deposited in the Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit for the benefit of the holders of the bonds in an amount equal to the required deposit or any portion thereof, and which Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be payable or available to be drawn upon, as the case may be (upon the giving of notice as required thereunder), on any date on which moneys are required to be paid out of the Reserve Account pursuant to the first sentence of this Section. If a disbursement is made under the Reserve Account Insurance Policy or the Reserve Account Letter of Credit, the Authority shall cause the Company to be obligated, subject to the limitations set forth in the third paragraph of Section 4.01 of the Loan Agreement (or, after the Authority has become obligated to give the Assumption Notice, the Authority shall be obligated), either to reinstate the amount of such Reserve Account Insurance Policy or Reserve Account Letter of Credit or to deposit into the Reserve Account moneys, in accordance with the provisions of Section 504 hereof, in the amount of the disbursement made under such Reserve Account Insurance Policy or Reserve Account Letter of Credit, or a combination of such alternatives.

Nothing in this Agreement or in the Loan Agreement shall require the Company (or after the Authority has become obligated to give the Assumption Notice, the Authority) to reinstate the stated amount of any Reserve Account Letter of Credit or Reserve Account Insurance Policy (if applicable), the Company or the Authority, as the case may be, only being obligated to ensure that the balance to the credit of the Reserve Account, after taking into account any transfers and deposits to the Reserve Account in accordance with the provisions of this Section and of Sections 504(c) and 509 of this Agreement, equals the Reserve Requirement.

Prior to the expiration date of any Reserve Account Letter of Credit or Reserve Account Insurance Policy (including any expiration on account of a default under the agreement, if any, under which such Letter of Credit or Insurance Policy is issued), the Company, if prior to the Authority's becoming obligated to give the Assumption Notice, and thereafter, the Authority shall (x) cause the term of such Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended, (y) cause any such Reserve Account Insurance Policy to be replaced with moneys (which may include, without limitation, moneys available under the Reserve Account Insurance Policy or from any other source available for such purpose), a Reserve Account Letter of Credit, another Reserve Account Insurance Policy or Investment Obligations, or a combination of such alternatives, or (z) cause any such Reserve Account Letter of Credit to be replaced with moneys (which may include, without limitation, moneys available under the Reserve Account Letter of Credit or from any other source available for such purpose), a Reserve Account Insurance Policy, another Reserve Account Letter of Credit or Investment Obligations, or a combination of said alternatives. If, however, the Authority or the Company, as the case may be, has not caused the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended or replaced by the thirtieth (30th) day prior to such date of expiration or if the Trustee has received notice that any such Letter of Credit or Insurance Policy is otherwise terminating, the expiring or terminating Reserve Account Insurance Policy or Reserve Account Letter of Credit shall, prior to such date of expiration or termination, be drawn upon in full and the proceeds thereof deposited to the credit of the Reserve Account.

NY1 5442588v15

HTA_CONF 00017091

The Company has the right to instruct the Trustee at any time to deposit to the credit of the Reserve Account any moneys contemporaneously contributed to the Company by its partners for such purpose or moneys on deposit to the credit of the Company Reserve Fund and, to the extent and at the time available to be distributed to the Company in accordance with Section 509 of this Agreement, of the General Fund and thereby to reduce the then current stated amount, in whole or in part, of any Reserve Account Letter of Credit or Reserve Account Insurance Policy as long as, after any such transfer and reduction, the balance to the credit of the Reserve Account shall be not less than $4,000,000.

For purposes of this Agreement, other than Article VI hereof, moneys deposited to, or held for the credit of, the Reserve Account shall include amounts available under any Reserve Account Letter of Credit or Reserve Account Insurance Policy on deposit in the Reserve Account.

If the Trustee receives the Assumption Notice prior to the fifth anniversary of the date of delivery of the bonds to the initial purchasers thereof, the Trustee shall within seven (7) days of its receipt of the Assumption Notice, deliver to or for the account of the Company, the balance then held to the credit of the Reserve Account (including any Reserve Account Letter of Credit or Reserve Account Insurance Policy), but in no event shall the amount so withdrawn be in excess of the Reserve Requirement.

If on or after said fifth anniversary, in addition to its receipt of said Assumption Notice, the Company and the Authority notify the Trustee that the Concession Agreement has been terminated as a result of a default by the Authority thereunder, the Trustee shall within seven (7) days of its receipt of such notice, withdraw and deliver to or for the account of the Company, the balance then held to the credit of the Reserve Account (including any Reserve Account Letter of Credit or Reserve Account Insurance Policy), but in no event shall the amount so withdrawn be in excess of the Reserve Requirement.

If on or after said fifth anniversary, in addition to its receipt of said Assumption Notice, the Company and the Authority notify the Trustee that the Concession Agreement has been terminated at the option of the Company as therein permitted, the Trustee shall within seven days of its receipt of the Assumption Notice, withdraw and deliver to or for the account of the Company the balance above $4,000,000 then held to the credit of the Reserve Account (including any Reserve Account Letter of Credit or Reserve Account Insurance Policy).

If on or after said fifth anniversary, in addition to its receipt of said Assumption Notice, the Authority and the Company notify the Trustee that the Concession Agreement has been terminated as a result of a default by the Company thereunder, the Trustee shall make no withdrawal from the Reserve Account.

After its giving of the Assumption Notice, the Authority shall deposit with the Trustee for the credit of the Reserve Account in equal quarterly installments not later than each March 31, June 30, September 30 and December 31, commencing with the first such date occurring immediately after its giving of such Assumption Notice, any combination of cash, Investment Obligations, a Reserve Account Letter of Credit or a Reserve Account Insurance Policy such that the balance within the Reserve Account shall equal the Reserve Requirement.

NYI 5442588v15

HTA_CONF 00017092

Section 508.  Application of Moneys in the Renewal and Replacement Fund.  Moneys held for the credit of the Renewal and Replacement Fund shall be disbursed only for the purpose of paying the cost of unusual or extraordinary maintenance or repairs, maintenance or repairs not recurring annually and renewals and replacements, including the costs mentioned in Section 9 of Exhibit G to the Concession Agreement.  Such disbursements shall be made by requisition signed by an Authorized Company Representative.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the General Fund to the credit of the Bond Service Account pursuant to the second paragraph of Section 509(a) of this Agreement) shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Trustee shall transfer from any moneys held for the credit of the Renewal and Replacement Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency.  If at any time the moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the General Fund to the credit of the Redemption Account pursuant to the second paragraph of Section 509(a) of this Agreement) shall be insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements therefor, then the Trustee shall transfer to the credit of the Redemption Account from any moneys held for the credit of the Renewal and Replacement Fund an amount sufficient to make up any such deficiency.

Section 509.  Application of Moneys in the General Fund; Creation of and Application of Moneys in the Company Reserve Fund.  (a)  If at any time moneys transferred from the Revenue Fund to the Company for the payment of Current Expenses pursuant to the third paragraph of Section 504 of this Agreement shall not be sufficient to pay the Current Expenses for any month, then the Trustee shall transfer to the Company from any moneys held for the credit of the General Fund an amount sufficient to make up such deficiency within three (3) Business Days after being notified to such effect in writing by the Company signed by an Authorized Company Representative.

If on any payment date in respect of the Bonds moneys held for the credit of the Bond Service Account shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Trustee shall transfer from any moneys held for the credit of the General Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency (or the entire balance of the General Fund if less than the required amount).  If on any payment date in respect of the Bonds the moneys held for the credit of the Redemption Account shall be insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements, if any, therefor at the end of the fiscal year to which such payment relates, then the Trustee shall transfer from any moneys held for the credit of the General Fund an amount sufficient to make up any such deficiency (or the entire balance of the General Fund if less than the required amount); provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 504 of this Agreement.

43

HTA_CONF 00017093

Subject to the first two paragraphs of this Section 509(a), the Trustee shall, on the last Business Day of each month, withdraw from the General Fund and deposit to the credit of the Reserve Account such amount thereof (or the entire balance of the General Fund if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account equal to the Reserve Requirement.

Subject to the preceding paragraphs of this Section 509(a), on or prior to the tenth (10th) day following the end of each fiscal year, the Trustee will determine the percentage derived by dividing (i) the sum of the Net Revenues for such fiscal year plus the balance held to the credit of the General Fund on the last day of the fiscal year immediately preceding such fiscal year by (ii) the aggregate Principal and Interest Requirements for such fiscal year on account of the outstanding bonds. Anything in this Agreement to the contrary notwithstanding, the Trustee will base its determination of Net Revenues solely upon (X) the total amount of Revenues deposited to the credit of the Revenue Fund during such fiscal year in accordance with the provisions of Section 503 of this Agreement and Section 4.01 of the Loan Agreement and (Y) the total amount transferred by the Trustee to the Company to pay Current Expenses during such fiscal year in accordance with the provisions of Section 504 of this Agreement and this Section 509. If the percentage so derived is greater than 110%, the Trustee shall withdraw from the General Fund an amount equal to the ending balance of the General Fund for such fiscal year and pay such amount to the Company for distribution in accordance with the provisions of Section 7.9 of the Concession Agreement or at the written direction of the Company, transfer such amount to the credit of the Company Reserve Fund. If the percentage so derived is not greater than 110%, the Trustee shall make no withdrawal from the General Fund and payment to, or transfer at the direction of, the Company under this paragraph.

(b)     A special fund is hereby created and designated the "Special Facility Revenue Refunding Bonds (Teodoro Moscoso Bridge) Company Reserve Fund" (herein sometimes called the "Company Reserve Fund"). The moneys in the Company Reserve Fund shall be held by the Trustee in trust and applied as hereinafter provided. Pending such application, such moneys shall not be subject to any security interest, lien and charge in favor of the holders of the bonds, the Trustee or the Authority notwithstanding any contrary provision herein or in the Loan Agreement. The moneys held to the credit of the Company Reserve Fund shall not be available to pay any amounts payable in connection with the operation of the Project, to make any deposits to the various Funds and Accounts established hereunder or to pay the principal of or interest or premium, if any, on the bonds except as provided below in this Section. No amounts on deposit to the credit of any of the other Funds and Accounts established hereunder shall be transferred to the credit of the Company Reserve Fund, except as provided in Section 509(a) above.

(c)     The Company shall have the right, subject to satisfaction of its prior obligations under the Loan Agreement, to deposit moneys to the credit of the Company Reserve Fund from its own funds or from funds available for distribution to its partners pursuant to the last paragraph of Section 509(a) above. Unless and until such time as the balance then to credit of the Reserve Account is less than $4,000,000, the Trustee is hereby authorized and directed to follow the written instructions of the Company regarding application of moneys then to the credit of the Company Reserve Fund, including instructions to the Trustee to transfer all or any part of the moneys then to the credit of the Company Reserve Fund to the Company or to the Reserve Account and in such latter case to reduce the stated amount, in whole or in part, of any Reserve

NY1 5442588v15

HTA_CONF 00017094

Account Letter of Credit or Reserve Account Insurance Policy, to the extent that after any such transfer and reduction, the balance to the credit of the Reserve Account shall not be less than $4,000,000. Upon the balance in the Reserve Account falling (and for so long as such balance shall remain) below $4,000,000, the Trustee shall withdraw from the Company Reserve Fund and deposit to the credit of the Reserve Account such amount thereof (or the entire balance of the Company Reserve Account if less than the required amount) as may be required to make the amount then to the credit of the Reserve Account equal $4,000,000.

Section 510. <u>Application and Pledge of Moneys in the Sinking Fund</u>.  Subject to the terms and conditions set forth in this Agreement, moneys held for the credit of the Sinking Fund shall be held in trust and disbursed by the Trustee for (a) the payment of interest on the bonds issued hereunder as such interest becomes due and payable, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase or redemption price of such bonds before their respective maturities, and such moneys are hereby pledged to secure, and are charged with, the payments mentioned in this Section.

Section 511. <u>Moneys Withdrawn from Sinking Fund</u>.  All moneys which the Trustee shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside for the purpose of paying any of the bonds, either at the maturity thereof or upon call for redemption, shall be held in trust for the respective holders of such bonds, but any moneys which shall be so withdrawn or set aside and which shall remain unclaimed by the holders of such bonds for a period of two years after the date on which such bonds shall have become due and payable shall be paid to the Authority.  Thereafter the holders of such bonds shall look only to the Authority for payment and then only to the extent of the amount so received without any interest thereon, and the Trustee shall have no responsibility with respect to such moneys.

Section 512. <u>Cancellation of Bonds upon Payment</u>.  All bonds paid, redeemed or purchased, either at or before maturity, shall be cancelled upon the payment, redemption or purchase of such bonds. All bonds cancelled under any of the provisions of this Agreement shall be held by the Trustee until such time as they shall be destroyed by the Trustee. Any cancelled bond so held by the Trustee shall be destroyed no later than six years after cancellation of such bond. The Trustee shall execute a certificate in triplicate describing the bonds so destroyed, and one executed certificate shall be filed with the Authority, one executed certificate shall be filed with the Company and the other executed certificate shall be retained by the Trustee.

Section 513. <u>Covenants of Authority upon Termination of Concession Agreement</u>. (a) Upon a termination of the Concession Agreement for any reason, including a deemed termination as provided in Section 515 of this Agreement, the Authority shall promptly notify the Trustee of such termination.

After the date of the giving of such notice (such notice being herein called the "Assumption Notice"), whenever moneys held to the credit of the Sinking Fund, the Renewal and Replacement Fund and the General Fund are insufficient for any reason to pay the principal of and interest on the bonds then outstanding under this Agreement as the same become due and payable (such insufficiency being herein called a "Deposit Deficiency"), the Trustee shall notify the Authority thereof, specifying the amount of the Deposit Deficiency. The Authority agrees to pay to the Trustee the amount of such Deposit Deficiency but solely from Available 401(g)

45

HTA_CONF 00017095

Construction Fund Moneys (as hereinafter defined). The Trustee shall deposit the amounts paid by the Authority first to the credit of the Bond Service Account and then to the credit of the Redemption Account to the extent of any deficiencies therein.

Unless and until such time as a Deposit Deficiency shall exist, nothing in this Agreement shall prohibit the Authority from withdrawing and expending or pledging or otherwise encumbering the moneys held to the credit of the Puerto Rico Highways and Transportation Authority Construction Fund created under the Bond Resolution (the "1998 Construction Fund"), and deposited to the credit of such Fund pursuant to Section 401(g) thereof (such moneys being herein called "Available 401(g) Construction Fund Moneys"), and any such withdrawal and expenditure, pledge or encumbrance of such Moneys made prior to any Deposit Deficiency shall be valid and binding and superior to the lien thereon, security interest therein and pledge thereof under this Agreement.

Upon the occurrence of, and for so long as there shall exist, a Deposit Deficiency, the Authority hereby covenants that it shall make no withdrawals and expenditures, pledges or encumbrances of Available 401(g) Construction Fund Moneys and that all such Available 401(g) Construction Fund Moneys shall, from the date of the occurrence of a Deposit Deficiency until the same shall be cured, be deemed to be the subject of a lien on, security interest in and pledge in favor of the holders of the bonds issued and outstanding hereunder.

The Authority covenants that after it is required to give the Assumption Notice, it shall as soon as reasonably possible (but in no event later than 60 days thereafter, subject to its being able to comply with the tests for the issuance of such bonds under the Bond Resolution), exchange the bonds then outstanding hereunder for other bonds (the "Substitute Bonds") issued under (at the option of the Authority) (a) Section 210 of the Bond Resolution or (b) Section 208 of the Bond Resolution, subject to its option to redeem the bonds then outstanding hereunder in accordance with the third paragraph of Section 301(i) of this Agreement.

The Authority agrees that after it is required to give the Assumption Notice it will not issue any additional bonds under Section 210 or 208, as the case may be, of the Bond Resolution except (i) specified series of bonds authorized to be issued by resolutions (in addition to the Bond Resolution) of the Authority then in effect, and which bonds the Authority shall have committed to issue prior to the time when it shall be required to give such Assumption Notice, (ii) bonds issued under the Bond Resolution to refund other bonds issued under the Bond Resolution, to refund other obligations as permitted therein or to pay outstanding notes of the Authority which were issued to finance temporarily the costs of Transportation Facilities, as defined in the Bond Resolution, or to reimburse the Authority for expenditures incurred prior to becoming obligated to give such Assumption Notice in respect of Transportation Facilities and which expenditures may be reimbursed from the proceeds of long term financing under applicable reimbursement regulations of the Code, or to pay all or part of the cost of additional Transportation Facilities for which construction contracts have been awarded, (iii) Substitute Bonds and (iv) bonds issued to redeem bonds then outstanding under this Agreement. Each Substitute Bond shall be in the same principal amount, have the same maturity, bear interest at the same rate and be payable on the same date as the bond issued hereunder to be exchanged, such Substitute Bond to bear interest from the interest payment date on the outstanding bond preceding the date of authentication to which interest shall have been paid or duly provided for,

NY1 5442588v15

HTA_CONF 00017096

and shall be subject to redemption at the option of the Authority on the same terms and conditions set forth in Section 301(ii) and 301(iii) hereof, *mutatis mutandis*. If less than all the term bonds are called for exchange, the Substitute Bonds issued in exchange for such term bonds will have such Amortization Requirements in such fiscal year as the Authority shall determine by resolution so that the Amortization Requirements for such Substitute Bonds issued and the Amortization Requirements for the term bonds not called for exchange will in the aggregate be the same for each fiscal year as such term bonds immediately prior to such exchange.

In the event the Authority issues Substitute Bonds, the Authority shall notify the Trustee, specifying the maturities of the outstanding bonds hereunder to be exchanged and the date of such exchange, which date shall not be less than forty-five (45) days after such notice. At least thirty (30) days before the exchange date, the Trustee shall cause notice of such exchange to be mailed by certified mail, first class postage prepaid, to all bondholders whose bonds are to be exchanged. Each such notice shall set forth (1) the date fixed for exchange, (2) if less than all of the bonds then outstanding shall be called for exchange, the distinctive numbers and letters of such bonds to be exchanged and, in the case of bonds to be exchanged in part only, the portion of the principal amount thereof to be exchanged, (3) that on the date fixed for exchange interest on such bonds to be exchanged shall cease to accrue on and after said exchange date, and (4) the place where such bonds or portions thereof are to be surrendered for exchange. In case any bond is to be exchanged in part only, the notice of exchange shall state also that on or after the exchange date, upon surrender of such bond, a new bond or bonds of the same maturity, of authorized denominations, bearing interest at the same rate and in principal amount equal to the unexchanged portion of such bond will be issued.

On the date so designated for exchange, notice having been given in the manner and under the conditions hereinabove provided and Substitute Bonds, executed and authenticated as required by the Bond Resolution being held for delivery by the Trustee, interest on the bonds or portions of bonds so called for exchange shall cease to accrue, such bonds or portions of bonds shall cease to be entitled to any lien, benefit or security under this Agreement, and the registered owners of such bonds or portions of bonds shall have no rights in respect thereof except to receive the Substitute Bonds in exchange therefor and, to the extent provided in this Section 513, to receive bonds for any unexchanged portions of bonds.

All bonds surrendered for exchange shall be cancelled by the Trustee under the conditions provided in Section 512 of this Agreement.

Section 514. <u>Covenant of Authority Relating to Amendment of Bond Resolution</u>. The Authority covenants that, for so long as the Company has the right granted by Section 11.1 of the Concession Agreement to terminate the Concession Agreement and until the issuance of Substitute Bonds by the Authority in exchange for all bonds at the time outstanding hereunder or the Authority shall otherwise have elected to retire all of the bonds at the time outstanding hereunder, it will not adopt a resolution supplemental to the Bond Resolution which would reduce the respective percentages set forth for the issuance of additional bonds under Section 208 or 210 thereof below the percentages in effect on the date of the execution and delivery of this Agreement.

47

HTA_CONF 00017097

Section 515. Agreement of the Authority to Assume the Company's Obligations under the Loan Agreement under Certain Circumstances. (a) After applying moneys held to the credit of the Bond Service Account and the Redemption Account to the payment of principal of and interest on the bonds on each interest or principal payment date (such application being called the "debt service application" and each such day being called a "Determination Date"), the Trustee shall determine whether the amounts on deposit in the Sinking Fund (including amounts available to be drawn under any Reserve Account Letter of Credit or Reserve Account Insurance Policy) are sufficient to make all payments of interest on and principal of the Bonds required to be made on the following three payment dates in respect of the Bonds (whether interest or principal). In the event that the amount remaining on deposit in the Sinking Fund after the debt service application on any Determination Date is not sufficient to make such next three payments, the Trustee shall notify the Authority and the Company of such deficiency. The Authority agrees that the Company shall have the right (but not the obligation) to make deposits to the Sinking Fund (including by restoring the stated amount of any Reserve Account Letter or Credit or Reserve Account Insurance Policy) from moneys contributed to it by its partners or available to be distributed to its partners in accordance with Section 509 of this Agreement, to cure such deficiency. If the Trustee determines after making the debt service application on any interest or principal payment date, that moneys remaining on deposit in the Sinking Fund are not sufficient to pay the principal of and interest on the Bonds on the immediately following payment date, the Trustee will notify the Authority and the Company, whereupon (i) the Authority will automatically assume the Company's obligations under the Loan Agreement, including its obligation to pay interest on and the principal of the Bonds as they become due, (ii) the Authority will be deemed to have acquired the concession under the Concession Agreement, and (iii) the Concession Agreement will automatically terminate.

(b) If the Authority becomes obligated to give the Assumption Notice, (i) the Authority will automatically assume the Company's obligations under the Loan Agreement, including its obligation to pay interest on and the principal of the Bonds as they become due, and (ii) the Authority will be deemed to have acquired the Concession.

(c) If the Authority assumes the Company's obligations under the Loan Agreement for any other reason, (i) the Authority will be deemed to have acquired the Concession, and (ii) the Concession Agreement will automatically terminate.

48

HTA_CONF 00017098

ARTICLE VI.

Depositaries of Moneys, Security for Deposits
and Investment of Funds.

Section 601. <u>Security for Deposits</u>.  All moneys deposited with the Trustee under the provisions of this Agreement or the Loan Agreement shall be held in trust and applied only in accordance with the provisions of this Agreement and the Loan Agreement and shall not be subject to lien or attachment by any creditor of the Authority or the Company.

All moneys deposited with the Trustee under this Agreement and the Loan Agreement in excess of the amount guaranteed by the Federal Deposit Insurance Corporation or other federal agency shall be continuously secured for the benefit of the Authority and the holders of the bonds either (a) by lodging with a bank or trust company approved by the Authority and by the Trustee as custodian, or, if then permitted by law, by setting aside under control of the trust department of the bank holding such deposit, as collateral security, Government Obligations or, with the approval of the Trustee, other marketable securities eligible as security for the deposit of trust funds under regulations of the Comptroller of the Currency of the United States of America, or applicable Commonwealth or state law or regulations, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or (b) if the furnishing of security as provided in clause (a) of this Section is not permitted by applicable law, in such other manner as may then be required or permitted by applicable Commonwealth, state or federal laws and regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Trustee to give security for any moneys which shall be represented by the investments purchased under the provisions of this Article as an investment of such moneys.

Section 602. <u>Investment of Moneys</u>.  Except as provided in Article XIII hereof, moneys held for the credit of the Bond Service Account, the Redemption Account, and the Revenue Fund shall, as nearly as may be practicable, be invested and reinvested by the Trustee at the direction of the Company prior to the Authority's becoming obligated to give the Assumption Notice and the Authority thereafter in Government Obligations, or Investment Obligations secured by Government Obligations, which shall mature, or which shall be subject to redemption at the option of the holder thereof, not later than the respective dates when moneys held for the credit of said Fund and Accounts will be required for the purposes intended.

Moneys held for the credit of the Net Proceeds Fund, the Reserve Account, the Renewal and Replacement Fund and the General Fund shall at the direction of the Company prior to the Authority's becoming obligated to give the Assumption Notice and the Authority thereafter be invested and reinvested by the Trustee in Investment Obligations which shall mature, or which shall be subject to redemption at the option of the holder thereof, not later than the respective dates when moneys held for the credit of said Funds and Accounts will be required for the purposes intended.  Moneys held for the credit of the Company Reserve Fund shall be invested and reinvested in such investments as the Company shall specify in writing signed by an Authorized Company Representative.

49

HTA_CONF 00017099

Government Obligations and Investment Obligations so purchased as an investment of moneys in any Fund or Account shall be deemed at all times to be part of such Fund or Account, and any interest accruing on and any profit realized from such investment shall be credited to such Fund or Account and any loss resulting from such investment shall be charged to such Fund or Account, except that any such interest accruing on and profit realized from the investment of moneys in the Renewal and Replacement Fund and the General Fund shall be transferred to the Revenue Fund. Neither the Trustee nor the Authority shall be liable or responsible for any loss resulting from any such investment.

The Trustee is hereby authorized to enter into one or more Investment Agreements upon the direction of the Authority, and to take all actions contemplated by such Investment Agreements, subject to the requirement that any Investment Agreement must be an unconditional obligation of the Qualified Financial Institution and shall provide for payment of interest at a fixed rate (payable not later than each interest payment date) during the entire term of the Investment Agreement.

If the Trustee is authorized or obligated under any such Investment Agreement or this Agreement to withdraw moneys therefrom, the Authority shall provide to the Trustee, timely written instructions, signed by the Executive Director, containing such information as the Trustee may require by the terms of such Investment Agreement to enable said Trustee properly and timely to withdraw such moneys, which moneys shall upon receipt by said Trustee be credited to the Fund or Account to which such Investment Agreement relates or otherwise applied pursuant to the terms of this Agreement. The Trustee shall be under no obligation (not otherwise set forth in any such Investment Agreement) to make any such withdrawal in the absence of its timely receipt from the Authority of the information referred to in the preceding sentence.

Section 603. Valuation of Investments. In computing the amount in any Fund or Account held by the Trustee under the provisions of this Agreement, obligations purchased as an investment of moneys therein shall be valued at the cost or market price thereof, whichever is lower, inclusive of accrued interest, and any letter of credit or similar instrument held for the credit of the Reserve Account shall be valued at its stated amount. If upon valuation of the Reserve Account the balance in such Account, including accrued interest to the date of valuation, is less than the Reserve Requirement, the Trustee shall compute the amount by which the Reserve Requirement exceeds such balance and shall immediately give the Authority and the Company notice of such deficiency and the amount necessary to cure the same.

NYI 5442588v15

HTA_CONF 00017100

## ARTICLE VII.

### Particular Covenants and Provisions.

Section 701. <u>Covenant to Pay Bonds; Bonds Limited Obligations of Authority; Covenant as to Security Interest</u>.  The Authority covenants that it will cause to be paid promptly the principal of and interest on every bond on the dates and in the manner provided herein and in said bond, according to the true intent and meaning thereof.  Except as in this Agreement otherwise provided, such principal and interest are payable solely from the Pledged Revenues and the moneys in the various Funds and Accounts established hereunder as herein specified.  The Pledged Revenues and moneys in the Revenue Fund (to the extent specified in Section 503), the Net Proceeds Fund (to the extent specified in Section 401) and the Funds and Accounts referred to (and to the extent specified) in Section 504 are hereby pledged to, and the Authority hereby grants a security interest therein to secure, the payment of such principal and interest in the manner and to the extent hereinabove particularly specified, which security interest shall be enforceable by the Trustee in accordance with the terms hereof.  Prior to the delivery of the bonds to or for the account of the purchasers thereof in accordance with Section 208, the Authority shall execute and file a financing statement evidencing such security interest in the form and at the office required by the Commonwealth Commercial Transactions Law and shall deliver to the Trustee a copy thereof together with evidence of filing.  The Authority covenants that it has not and will not pledge or grant a security interest in any of the foregoing or file any other financing statement in respect thereof.

The bonds issued under the provisions of this Agreement and the interest thereon shall not be a debt of the Commonwealth or any of its political subdivisions, other than the Authority, and neither the Commonwealth nor any such political subdivision, other than the Authority, shall be liable thereon, but the bonds shall be payable solely from the Revenues, funds and proceeds provided therefor, and the Authority is not obligated to pay the principal of bonds or the interest thereon except from the Revenues, funds and proceeds pledged therefor.

Section 702. <u>Covenant to Perform Obligations under this Agreement and Loan Agreement</u>.  The Authority covenants that it will faithfully perform at all times any and all covenants, undertakings, stipulations and provisions contained in this Agreement, in the bonds and in all proceedings of the Authority pertaining thereto and filed with the Trustee and will faithfully observe and perform at all times any and all covenants, undertakings, stipulations and provisions of the Loan Agreement and the Concession Agreement on its part to be observed or performed.  The Authority covenants that it is duly authorized under the Constitution and laws of the Commonwealth, including particularly and without limitation the Act, to issue the bonds authorized hereby and to enter into this Agreement, to pledge in the manner and to the extent herein set forth the payments and other funds derived from the Loan Agreement and this Agreement; that all action on its part for the issuance of the bonds and the execution and delivery of this Agreement has been duly and effectively taken; and that such bonds in the hands of the owners thereof are and will be valid and enforceable obligations of the Authority according to the tenor and import thereof.

Section 703. <u>Covenant to Perform Further Acts</u>.  The Authority covenants that it will do, execute, acknowledge and deliver or cause to be done, executed, acknowledged and delivered,

51

HTA_CONF 00017101

such agreements supplemental hereto and such further acts, instruments and transfers as the Trustee may reasonably require for the better pledging unto the Trustee all and singular the payments and any other revenues and other funds pledged hereby to the payment of the principal of and interest on the bonds.

Section 704.  <u>Trustee May Enforce Authority's Rights under Loan Agreement</u>.  The Loan Agreement, a duly executed counterpart of which has been filed with the Trustee, sets forth the covenants and obligations of the Authority and the Company, including a provision in Section 9.13 thereof that subsequent to the issuance of the bonds and prior to payment of the bonds, the Loan Agreement may not be effectively amended, changed, modified, altered or terminated except in accordance with this Agreement, and reference is hereby made to the Loan Agreement for a detailed statement of said covenants and obligations of the Company under the Loan Agreement, and the Authority agrees that the Trustee, subject to the provisions of the Loan Agreement and this Agreement reserving certain rights to the Authority and respecting actions by the Trustee in its name or in the name of the Authority, may enforce all rights of the Authority and all obligations of the Company under and pursuant to the Loan Agreement for and on behalf of the bondholders whether or not the Authority is in default hereunder.

*The following Sections 705 to 714, inclusive, shall be in effect upon the Authority's becoming obligated to give the Assumption Notice.*

Section 705.  <u>Use and Operation of Project</u>.  The Authority covenants that it will establish and enforce reasonable rules and regulations governing the use of the Project and the operation thereof, that all conditions of employment and all compensation, salaries, fees and wages paid by it in connection with the maintenance, repair and operation of the Project will be reasonable, that no more persons will be employed by it than are necessary, that all persons employed by it will be qualified for their respective positions, that it will maintain and operate the Project in an efficient and economical manner, that, from the Revenues, it will at all times maintain the same in good repair and in sound operating condition and will make all necessary repairs, renewals and replacements, and that it will observe and perform all of the terms and conditions contained in the Act.

The Authority further covenants that it will take all lawful action on its part which may be necessary or desirable to advertise the Project to the traveling public, that it will provide and maintain highway designation signs and adequate directional signs to the Project which, in the judgment of the Authority, may be beneficial to the Project or necessary to protect against the diversion of the traffic from the Project and that the Project will at all times be designated as a federal or Commonwealth route and marked with proper highway markers.

The Authority further covenants that it will not construct any additional bridge or tunnel or construct any highway which may be necessary to connect any other bridge or tunnel hereafter constructed with public highways in the Commonwealth in competition with the Project, unless there shall be filed with the Trustee a statement, signed by an Authority Representative, to the effect that, in his opinion, either such construction will not result in diverting traffic from the Project or the Revenues after such diversion will be sufficient to pay the Current Express in each fiscal year thereafter and to provide for the required deposits to the Bond Service Account and the Redemption Account pursuant to the provisions of Section 504(a) and (b) hereof.

NY1 5442588v15

HTA_CONF 00017102

Section 706. <u>Payment of Lawful Charges</u>.   The Authority covenants that, except as otherwise permitted in Section 714 of this Article, it will not create or suffer to be created any lien or charge upon the Project or upon the Revenues except the lien and charge of the bonds secured hereby upon the Revenues and that, from the Revenues or other available funds, it will pay or cause to be discharged, or will make adequate provision to satisfy and discharge, within sixty (60) days after the same shall accrue, all lawful claims and demands for labor, materials, supplies or other objects which, if unpaid, might by law become a lien upon the Project or the Revenues; provided, however, that nothing in this Section contained shall require the Authority to pay or cause to be discharged, or make provision for, any such lien or charge so long as the validity thereof shall be contested in good faith.

Section 707. <u>Maintenance of Project Permitted from Other Funds</u>.   Notwithstanding any other provision of this Agreement, the Authority may permit the United States of America, the Commonwealth or any of their agencies, departments or political subdivisions to pay all or any part of the cost of maintaining, repairing and operating the Project.

Section 708. <u>Insurance</u>.   The Authority covenants that it will insure and at all times keep the Project insured with a responsible insurance company or companies, qualified to assume the risk thereof, against physical loss or damage however caused, with such exceptions as are ordinarily required by insurers of structures or facilities of similar type in an amount not less than eighty per centum (80%) of the replacement value of the Project, less depreciation.

The amount of insurance required for the Project, pursuant to the foregoing provisions of this Section, shall at all times be sufficient to comply with any legal or contractual requirement which, if breached, would result in assumption by the Authority of a portion of any loss or damage as a co-insurer, and such insurance may provide for the deduction from each claim for loss or damage (except in case of a total loss) of not more than two per centum (2%) of the replacement value of the property insured, less depreciation.

If at any time the Authority shall be unable to obtain such insurance to the extent above required, either as to amount of such insurance or as to the risks covered thereby or the deductible provision thereof, it will not constitute an event of default under the provisions of this Agreement if the Authority shall carry such insurance to the extent reasonably obtainable.

The Authority further covenants that, if and when war risk insurance is obtainable, it will obtain such insurance on the Project in such amount and during such period as it shall deem reasonable.

All such policies shall be for the benefit of the Trustee and the Authority as their interests shall appear, shall be made payable to the Trustee and shall be deposited with the Trustee, and the Trustee shall have the sole right to receive and receipt for the proceeds of such insurance. The Net Proceeds of any and all such insurance shall be held by the Trustee as security for the bonds issued hereunder until paid out as hereinafter provided.

The Authority further covenants that, immediately after any substantial damage to or destruction of any part of the Project, it will prepare plans and specifications for repairing, replacing or reconstructing the damaged or destroyed property (either in accordance with the

53

HTA_CONF 00017103

original or a different design) and an estimate of the cost thereof, and to file copies of such estimate with the Trustee.

The Net Proceeds of all insurance referred to in this Section shall be available for, and shall to the extent necessary be applied to, the repair, replacement or reconstruction of the damaged or destroyed property, and such disbursement by the Trustee for such purposes shall be made in accordance with the provisions of Section 402 of this Agreement for payments from the Net Proceeds Fund to the extent that such provisions may be applicable. If such Net Proceeds are more than sufficient for such purpose, the balance remaining shall be deposited to the credit of the Redemption Account. If such Net Proceeds shall be insufficient for such purpose, the deficiency shall be supplied by the Trustee upon requisition of the Authority from any moneys held for the credit of the Renewal and Replacement Fund or the General Fund.

The Authority further covenants that, in the case of any substantial damage to or destruction of the Project, it will forthwith, with any funds available for such purpose, commence and diligently proceed with the repair, replacement or reconstruction of the damaged or destroyed property.

The Net Proceeds of any such insurance not applied or obligated within eighteen (18) months after their receipt by the Trustee to repairing, replacing or reconstructing the damaged or destroyed property, unless the Authority shall advise the Trustee in writing that it has been prevented from so doing because of conditions beyond its control or unless the Authority, with the consent of the holders of a majority in principal amount of all the bonds then outstanding, shall otherwise direct, shall be deposited to the credit of the Redemption Account.

Section 709. <u>Additional Insurance</u>. The Authority covenants that it will at all times carry in a responsible insurance company or companies qualified to assume the risk thereof:

(a)     business interruption insurance covering loss of revenues from the Project by reason of necessary interruption, total or partial, in the use of any thereof, resulting from damage to or destruction of any part thereof however caused, with such exceptions as are ordinarily required by insurers carrying similar insurance, in such amount as the Authority shall estimate is sufficient to cover such loss during the period of suspension of use; provided, however, that such insurance shall cover a period of suspension of not less than twelve (12) months and such longer period as the Authority shall approve, and that such insurance may exclude loss sustained by the Authority during the first thirty (30) days of any total or partial interruption of use; and provided, further, that if at any time the Authority shall be unable to obtain such insurance to the extent above required, either as to the amount of such insurance or as to the risks covered thereby or as to the deductible period, it will not constitute an event of default under the provisions of this Agreement if the Authority shall carry such insurance to the extent reasonably obtainable; and

(b)     such workmen's compensation or employer's liability insurance as may be required by law and such public liability, property damage and other insurance as the Authority may determine.

NY1 5442588v15

HTA_CONF 00017104

Copies of all estimates made by the Authority under the provisions of this Section shall be filed with the Trustee.

In estimating the amount of business interruption insurance to be carried, the Authority shall give consideration to the expected as well as current and prior Revenues from the operation of the Project, and may also make allowance for any probable decrease in the costs of maintenance, repair or operation or other charges and expenses while use of the Project is interrupted. All policies providing business interruption insurance shall be made payable to and deposited with the Trustee, and the Trustee shall have the sole right to receive and receipt for any proceeds for such policies. Any Net Proceeds of business interruption insurance paid to the Trustee shall be deposited by it forthwith to the credit of the Revenue Fund.

Section 710. <u>Inspection of Insurance Policies</u>. All insurance policies referred to in Sections 708 and 709 of this Article shall be open at all reasonable times to the inspection of the bondholders and their agents and representatives. The Authority covenants that it will take such action as may be necessary to demand, collect and sue for any insurance money which may become due and payable under any policy payable to the Trustee. The Trustee is hereby authorized in its own name to demand, collect, sue and receipt for any insurance money which may become due and payable under policies payable to it.

Any appraisement or adjustment of any loss or damage under any policy payable to the Trustee and any settlement or payment of indemnity under any such policy which may be agreed upon by the Authority, the Trustee and any insurer shall be evidenced by a certificate, signed by an Authority Representative and by the Trustee, and filed with the Trustee. The Trustee shall in no way be liable or responsible for the collection of insurance moneys in case of any loss or damage.

Section 711. <u>No Inconsistent Action</u>. The Authority covenants that none of the Revenues of the Project will be used for any purpose other than as provided in this Agreement and no contract or contract will be entered into or any action taken by it which shall be inconsistent with the provisions of this Agreement.

Section 712. <u>Records and Reports</u>. The Authority covenants that it will keep an accurate record of the daily tolls and other revenues collected, of the number and class of vehicles using the Project, and of the application of such tolls and other revenues. Such records shall be open at all reasonable times to the inspection of the Trustee and the bondholders and their agents and representatives.

The Authority further covenants that at least once each month it will cause to be filed with the Trustee and mailed to all bondholders who shall have filed their names and addresses with the Secretary for such purpose, copies of any revisions of the schedules of tolls during the preceding calendar month and a report setting forth in respect of the preceding calendar month

(a)   an income and expense account for the Project,

(b)   the number of vehicles in each toll class using the Project and the revenues derived from each such class, and the number and classification of vehicles given

NYI 5442588v15

HTA_CONF 00017105

free passage by the Authority pursuant to the provisions of Section 502 of this Agreement,

(c)     all deposits to the credit of and withdrawals from each Fund and Account created under the provisions of this Agreement,

(d)     the details of all bonds issued, paid, purchased or redeemed,

(e)     a balance sheet as of the end of such month,

(f)     the amount on deposit at the end of such month to the credit of each such Fund and Account, the security therefor, and the details of any investments thereof, and

(g)     the amounts of the proceeds received from any sale of property pursuant to the provisions of Section 714 of this Article and the amounts of the proceeds of any insurance received pursuant to the provisions of Sections 708 and 709 of this Article, and the disposition thereof.

The Authority further covenants that promptly after the close of each fiscal year it will cause an audit to be made of its books and accounts relating to the Project for the preceding fiscal year by an independent firm of certified public accountants of recognized ability and standing, to be chosen by the Authority. The Trustee shall make available to such accountants all its books and records pertaining to the Project. Promptly thereafter, reports of each such audit shall be filed with the Authority and the Trustee and copies of such reports shall be mailed by the Authority to all bondholders who shall have filed their names and addresses with the Secretary for such purpose. Each such audit report shall set forth in respect of the preceding fiscal year the same matters as are hereinabove required for the monthly reports, the findings of such public accountants as to whether the moneys received by the Authority under the provisions of this Agreement during such fiscal year have been applied in accordance with the provisions of this Agreement, whether any obligations for Current Expenses were incurred in the preceding fiscal year in excess of the annual budget for such fiscal year, whether the Revenues for the preceding fiscal year have exceeded or were less than the amount for such fiscal year and whether the Authority is in default in the performance of any of the covenants contained in Section 503, and also a schedule of all insurance policies referred to in Sections 708 and 709 of this Article which are then in effect, stating with respect to each policy the name of the insurer, the amount, the number, the expiration date and the risks covered thereby. Such monthly reports and audit reports shall be open at all reasonable times to the inspection of the bondholders and their agents and representatives.

The Authority further covenants that it will cause any additional reports or audits relating to the Project to be made as required by law and that, as often as may be requested, it will furnish to the Trustee and the holder of any bond issued hereunder such other information concerning the Project or the operation thereof as any of them may reasonably request.

The cost of the reports and audits referred to in this Section shall be treated as a part of the cost of operation of the Project.

NYI 5442588v15

HTA_CONF 00017106

Section 713.  <u>Accounts and Records</u>.  The Authority covenants that all the accounts and records of the Authority will be kept according to recognized accounting practices consistent with the provisions of this Agreement.

Section 714.  <u>Covenant Against Sale or Encumbrance Exceptions</u>.  The Authority covenants that, except as in this Section otherwise permitted, it will not sell, lease or otherwise dispose of or encumber the Project or any part thereof.  The Authority may, however, from time to time, sell any machinery, fixtures, apparatus, tools, instruments or other movable property acquired by it from the proceeds of bonds issued on account of the Project or from the Revenues thereof, if the Authority shall determine that such articles are no longer needed or are no longer useful in connection with the maintenance and operation of the Project, and the proceeds thereof shall be deposited to the credit of the Renewal and Replacement Fund.  The Authority may from time to time sell any real estate owned by it in the name of the Commonwealth as the Authority by resolution shall determine is not needed or serves no useful purpose in connection with the maintenance and operation of the Project.  The proceeds of any sale of real estate shall be disposed of as hereinabove provided for proceeds of the sale or disposal of movable property.

Upon any sale of property under the provisions of this Section the Authority shall notify the Trustee of the property so sold and the amount and disposition of the proceeds thereof.

The Authority may lease, or grant easements, franchises or concessions for the use of, any part of the Project not needed or required for the maintenance and operation thereof as a toll bridge, and the net proceeds of any such lease or concession shall be deposited as received to the credit of the Revenue Fund.

NYI 5442588v15

HTA_CONF 00017107

## ARTICLE VIII.

### Events of Default and Remedies.

Section 801. <u>Extension of Payment of Interest</u>. In case the time for the payment of the interest on any bond shall be extended, whether or not such extension be by or with the consent of the Authority, such interest shall not be entitled in case of default hereunder to the benefit or security of this Agreement except subject to the prior payment in full of the principal of all bonds then outstanding and interest the time for the payment of which shall not have been extended.

Section 802. <u>Events of Default</u>. Prior to the giving by the Authority to the Trustee of the Assumption Notice, each of the following events is hereby declared an "event of default", that is to say: if

(a)    payment of the principal of and the redemption premium, if any, on any of the bonds shall not be made when the same shall become due and payable, either at maturity or by proceedings for redemption or otherwise; or

(b)    payment of any installment of interest on any of the bonds shall not be made within five (5) days after the same shall become due and payable; or

(c)    an event of default under the Loan Agreement as defined in Section 7.01 thereof shall have occurred; or

(d)    the Authority shall default in the due and punctual performance of any of the covenants, conditions, agreements and provisions contained in the bonds or in this Agreement on the part of the Authority to be performed (other than a default specified in clause (a) or (b) of this Section), and such default shall continue for thirty (30) days after written notice specifying such default and requiring same to be remedied shall have been given to the Authority by the Trustee, which may give such notice in its discretion and shall give such notice at the written request of the owners of not less than 10% in aggregate principal amount of the bonds then outstanding.

Section 803. <u>Acceleration</u>. Upon the happening and continuance of any event of default specified in Section 802 hereof, then and in every such case the Trustee may, and upon the written direction of the holders of not less than 25% in aggregate principal amount of the bonds then outstanding shall, by notice in writing to the Authority and the Company, declare the principal of all of the bonds then outstanding (if not then due and payable) to be due and payable immediately after the date of such notice, and upon such declaration the same shall become and be due and payable immediately after the date of such notice, anything contained in the bonds or in this Agreement to the contrary notwithstanding; provided, however, that if at any time   after the principal of the bonds shall have been so declared to be due and payable, and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Agreement, sufficient moneys shall have accumulated in the Sinking Fund to pay the principal of all matured bonds and all arrears of interest, if any, upon all bonds then outstanding (except the principal of any bonds

58

HTA_CONF 00017108

not then due and payable by their terms and the interest accrued on such bonds since the last interest payment date), interest on overdue installments of interest (to the extent permitted by law) at the rate then borne by the bonds, and the charges, compensation, expenses, disbursements, advances and liabilities of the Trustee and all other amounts then payable by the Authority hereunder shall have been paid or a sum sufficient to pay the same have been deposited with the Trustee, and every other default known to the Trustee in the observance or performance of any covenant, condition, agreement or provision contained in the bonds or in this Agreement (other than a default in the payment of the principal of such bonds then due and payable only because of a declaration under this Section 803), then and in every such case the Trustee may, and upon the written direction of the holders of not less than a majority in aggregate principal amount of the bonds then outstanding shall, by a notice in writing to the Authority, rescind and annul such declaration and its consequences, but no such rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

Section 804. <u>Enforcement of Remedies</u>.  Upon the happening and continuance of any event of default specified in Section 802 hereof, then and in every such case the Trustee may, and upon the written direction of the holders of not less than 25% in aggregate principal amount of the bonds then outstanding hereunder, shall, proceed, subject to the provisions of Section 902 hereof, to protect and enforce its rights and the rights of the bondholders under applicable laws, under the Loan Agreement, or under this Agreement by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the specific performance of any covenant or agreement contained herein or therein in aid or execution of any power herein or therein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights.

In the enforcement of any remedy under this Agreement the Trustee shall, in its own name and as trustee of an express trust, be entitled to sue for, enforce payment of and recover judgment for, any and all amounts then or after any default becoming, and at any time remaining, due from and unpaid by the Authority for principal, interest or otherwise under any of the provisions of this Agreement or the bonds, with interest on overdue payments of principal, premium, if any, and interest (to the extent permitted by law) at the rate of interest then specified in the bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under the bonds, without prejudice to any other right or remedy of the Trustee or of the bondholders, and to recover and enforce any judgment or decree against the Authority, but solely as provided herein and in the bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect (but solely from moneys in the Sinking Fund and any other moneys available for such purpose), in any manner provided by law, the moneys adjudged or decreed to be payable.

Section 805. <u>Trustee May File Claim in Bankruptcy</u>.  In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other similar judicial proceeding relative to the Authority or the Company or to property of the Authority or the Company or the creditors or either of them, the Trustee (irrespective of whether the principal of the bonds shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Trustee shall have made

NY1 5442588v15

HTA_CONF 00017109

any demand on the Authority or the Company for the payments equal to overdue principal or interest) shall be entitled and empowered, by intervention in such proceeding or otherwise,

(a)   to file and prove a claim for the whole amount of principal, and premium, if any and, interest owing and unpaid in respect of the bonds and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and of the bondholders allowed in such judicial proceeding; and

(b)   to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same;

and any receiver, custodian, assignee, trustee, liquidator, sequestrator (or other similar official) in any such judicial proceeding is hereby authorized by each bondholder to make such payments to the Trustee, and in the event that the Trustee shall consent to the making of such payments directly to the bondholders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 902 hereof.

Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any bondholder any plan of reorganization, arrangement, adjustment or composition affecting the bonds or the rights of any holder thereof, or to authorize the Trustee to vote in respect of the claim of any bondholder in any such proceeding.

Section 806. <u>Pro Rata Application of Funds</u>. Anything in this Agreement to the contrary notwithstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the principal of or premium, if any, or interest on the bonds as the same shall become due and payable (either by their terms or by acceleration of maturities under the provisions of Section 803 of this Article) such moneys, together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied, following the satisfaction of any payments due to the Trustee under the provisions of Sections 902 and 906 of this Agreement, as follows:

(a)   If the principal of all the bonds shall not have become due and payable or shall not have been declared due and payable, all such moneys shall be applied

<u>first</u>:   to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable, with interest on such installments of interest, to the extent permitted by law, at the rate of such interest from the respective dates upon which such installments became due and payable, and, if the amount available shall not be sufficient to pay in full any particular installment, together with interest thereon, then to the payment first, to the extent permitted by law, of the interest of such installment, ratably, according to the amount of such interest due on such date, and then to the payment of such installment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any

60

HTA_CONF 00017110

discrimination or preference, except as to any difference in the respective rates of interest specified in the bonds;

second:        to the payment to the persons entitled thereto of the unpaid principal of or premium, if any, on any bonds which shall have become due and payable (other than bonds deemed to have been paid in accordance with Article XIII hereof) in the order of their due dates, with interest on the principal amount of such bonds at the respective rates specified therein from the respective dates upon which such bonds became due and payable, and, if the amount available shall not be sufficient to pay in full the principal of the bonds and premium, if any, due and payable on any particular date, together with such interest, then to the payment first of such interest, ratably, according to the amount of such interest due on such date, and then to the payment of such principal and premium, if any, ratably, according to the amount of such principal and premium, if any, due on such date, to the persons entitled thereto without any discrimination or preference, except as to any difference in the respective rates of interest specified in the bonds; and

third:   to the payment of the interest on and the principal of and premium, if any, on the bonds, to the purchase and retirement of bonds and to the redemption of bonds, all in accordance with the provisions of this Agreement.

(b)     If the principal of all the bonds shall have become due and payable or shall have been declared due and payable, all such moneys shall be applied to the payment of the principal, premium, if any, and interest (including, to the extent permitted by law, interest on any overdue installment of interest) the due upon the bonds, without preference or priority of principal over interest or premium, or of interest over principal or premium, or premium over principal or interest, or of any installment of interest over any other installment of interest, or of any bond over any other bond, ratably, according to the amounts due respectively for principal, interest and premium, if any, to the persons entitled thereto without any discrimination or privilege, except as to any difference in the respective rates of interest specified in the bonds.

The provisions of subsections (a) and (b) of this Section 806 are in all respects subject to the provisions of Section 801 hereof.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section 806, such moneys shall be applied by the Trustee at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future; the setting aside of such moneys in trust for the proper purpose shall constitute proper application by the Trustee; and the Trustee shall incur no liability whatsoever to the Authority, to any bondholder or to any other person for any delay in applying any such moneys, so long as the Trustee acts with reasonable diligence, having due regard to the circumstances, and ultimately applies the same in accordance with such provisions of this Agreement as may be applicable at the time of application by the Trustee. Whenever the Trustee

61

HTA_CONF 00017111

shall exercise such discretion in applying such moneys, it shall fix the date (which shall be an interest payment date unless the Trustee shall deem another date more suitable) upon which such application is to be made and upon the date of such application interest on the amounts of principal to be paid on such date shall cease to accrue. The Trustee shall give such notice as it may deem appropriate of the fixing of any such date and shall not be required to make payment to the holder of any unpaid bond until such bond shall be surrendered to the Trustee for appropriate endorsement, or for cancellation if fully paid.

Section 807. <u>Effect of Discontinuance of Proceedings</u>. In case any proceeding taken by the Trustee or bondholders on account of any default shall have been discontinued or abandoned for any reason or determined adversely to the Trustee, then and in every such case the Authority, the Trustee, the Company and the bondholders shall be restored to their former positions and rights hereunder, respectively, and all rights, remedies, powers and duties of the Trustee shall continue as though no proceeding had been taken.

Section 808. <u>Holders of Majority in Principal Amount of Bonds May Control Proceedings</u>. Anything in this Agreement to the contrary notwithstanding (but subject, however, to Sections 803 and 804 hereof), the holders of a majority in principal amount of the bonds then outstanding hereunder shall have the right, subject to the provisions of Section 902 hereof, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the time, method and place of conducting all remedial proceedings to be taken by the Trustee hereunder or exercising any trust or power conferred upon the Trustee, provided that (i) such direction shall not be otherwise than in accordance with law and the provisions of this Agreement, and (ii) subject to the provisions of Section 901 hereof, that the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction.

Section 809. <u>Restrictions upon Actions by Individual Bondholder</u>. No holder of any of the bonds shall have any right to institute any suit, action or proceeding in equity or at law on any bond or for the execution of any trust hereunder or for any other remedy hereunder unless such holder previously shall have given to the Trustee written notice of the event of default on account of which such suit, action or proceeding is to be instituted, and unless also the holders of not less than twenty-five per centum (25%) in aggregate principal amount of the bonds then outstanding shall have made written request of the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued, and shall have afforded the Trustee a reasonable opportunity either to proceed to exercise the powers hereinabove granted or to institute such action, suit or proceeding in its or their name, and unless, also, there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee shall have refused or neglected to comply with such request within a reasonable time; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or to any other remedy hereunder. It is understood and intended that, except as otherwise above provided, no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the security of this Agreement, or to enforce any right hereunder except in the manner herein provided, that all suits, actions and proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders of

NY1 5442588v15

HTA_CONF 00017112

such outstanding bonds, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

Section 810. <u>Actions by Trustee</u>. All rights of action and claims under this Agreement or under any of the bonds secured hereby, enforceable by the Trustee, may be prosecuted and enforced by it without the possession of any of the bonds or the production thereof in the trial or other proceeding relative thereto, and any such suit, action or proceeding instituted by the Trustee shall be brought in its name for the benefit of all of the holders of such bonds, subject to the provisions of this Agreement.

Section 811. <u>No Remedy Exclusive</u>.  No remedy herein conferred upon or reserved to the Trustee or to the holders of the bonds is intended to be exclusive of any other remedy or remedies herein provided, and each and every such remedy shall be cumulative and shall be in addition to every other remedy given hereunder.

Section 812. <u>No Delay or Omission Construed To Be a Waiver</u>.  No delay or omission of the Trustee or of any holder of the bonds to exercise any right or power accruing upon any default shall impair any such right or power or shall be construed to be a waiver of any such default or any acquiescence therein; and every power and remedy given by this Agreement to the Trustee and to the holders of the bonds, respectively, may be exercised from time to time and as often as may be deemed expedient.

Section 813. <u>Waiver of Past Defaults</u>. The Trustee may, and upon the written request of the holders of not less than a majority in aggregate principal amount of the bonds then outstanding shall, waive any past default under Section 802(c) hereof and its consequences except a default in respect of a covenant or provision of the Loan Agreement which under Section 1202 hereof cannot be modified or amended without the consent of the holder of each outstanding bond affected.

Upon such waiver, such default shall cease to exist, and any event of default arising therefrom shall be deemed to have been cured, for every purpose of this Agreement; but no such waiver shall extend to any subsequent or other default or impair any right or remedy consequent thereon.

Section 814. <u>Notice of Default</u>. The Trustee shall mail, certified mail, first class postage prepaid, to all owners of bonds, at their addresses as they appear on the registration books, with a copy to each of the Authority and the Company written notice of the occurrence of any event of default set forth in Section 802 of this Agreement within thirty (30) days after the Trustee shall have notice, pursuant to the provisions of Section 908 of this Agreement, that any such event of default shall have occurred, unless such default shall have been cured or waived; provided, however, that, in the case of an event of default specified in clause (c) of Section 802 of this Agreement arising out of a default specified in clause (c) of Section 7.01 of the Loan Agreement, the Trustee shall be protected in withholding such notice if and so long as the Trustee in good faith determines that the withholding of such notice is in the interests of the bondholders. The Trustee shall not, however, be subject to any liability to any bondholder by reason of its failure to mail any such notice.

NY1 5442588v15

HTA_CONF 00017113

# ARTICLE IX.

## Concerning the Trustee.

Section 901. <u>Acceptance of Trusts</u>. The Trustee accepts and agrees to execute the trusts imposed upon it by this Agreement, but only upon the terms and conditions set forth in this Article and subject to the provisions of this Agreement including the following express terms and conditions, to all of which the parties hereto and the respective holders of the bonds agree. The Trustee also accepts, and agrees to do and perform, the duties and obligations imposed upon it by and under the Loan Agreement, but only upon the terms and conditions set forth in the Loan Agreement and this Agreement.

Section 902. <u>Trustee Entitled to Indemnity</u>. The Authority shall indemnify the Trustee for, and hold it harmless against, any loss, liability or reasonable expense (including, without limitation, fees and expenses of its agents and counsel) incurred without gross negligence on its part, arising out of or in connection with the acceptance or administration of the trust or trusts hereunder or in connection with the exercise or performance of any of its powers or duties hereunder. The Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement or under the Loan Agreement, or to enter any appearance in or in any way defend against any suit in which it may be made a defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder or under the Loan Agreement until it shall be indemnified to its satisfaction against any and all reasonable costs and expenses, outlays and reasonable counsel fees and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without prior indemnity, and in such case the Authority shall reimburse and indemnify the Trustee from funds available therefor under the Loan Agreement for all liabilities, reasonable costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred without negligence or willful misconduct in connection therewith. If the Authority shall fail to make such reimbursement or indemnification, the Trustee may reimburse or indemnify itself from any moneys in its possession under the provisions of this Agreement (other than moneys held to the credit of the Sinking Fund or set aside under Section 511 for the payment of the principal of or interest on the Bonds) and shall be entitled to a preference therefor over any of the bonds outstanding hereunder.

Section 903. <u>Trustee Not Responsible for Insurance, Taxes or Execution of Agreement</u>. The Trustee shall not be under any obligation to effect or maintain insurance or to renew any policies of insurance or to inquire as to the sufficiency of any policies of insurance carried by the Authority or the Company, or to report, or make or file claims or proof of loss for, any loss or damage insured against or which may occur, or to keep itself informed or advised as to the payment of any taxes, insurance premiums or assessments, or to require any such payment to be made. The Trustee shall have no responsibility in respect of the validity, sufficiency, due execution or acknowledgment of this Agreement by the Authority or the validity or sufficiency of the security provided hereunder or, except as to the authentication thereof, in respect of the validity of the bonds or the due execution or issuance thereof. The Trustee shall not be under any obligation to see that any duties herein imposed upon any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed, shall be done or

64

HTA_CONF 00017114

performed, and the Trustee shall be under no obligation for failure to see that any such duties or covenants are so done or performed.

Section 904. Trustee Not Responsible for Acts of the Authority or Application of Moneys Applied in Accordance with this Agreement. The Trustee shall not be liable or responsible because of the failure of the Authority or of any of its employees or agents to make any collections or deposits or to perform any act herein required of the Authority or because of the loss of any moneys arising through the insolvency or the act or default or omission of any other depositary in which such moneys shall have been deposited under the provisions of this Agreement. The Trustee shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it and paid out, withdrawn or transferred hereunder if such application, payment, withdrawal or transfer shall be made in accordance with the provisions of this Agreement. The immunities and exemptions from liability of the Trustee hereunder shall extend to its directors, officers, employees and agents.

Section 905. Certain Duties and Responsibilities of the Trustee. (a) Except during the continuance of an event of default specified in Section 802 of this Agreement,

> (1) the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement or the Loan Agreement, and no implied covenants or obligations shall be read into this Agreement or the Loan Agreement against the Trustee; and

> (2) in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Agreement or the Loan Agreement; but in the case of any such certificates or opinions which by any provisions hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Agreement or the Loan Agreement.

(b) In case an event of default specified in Section 802 of this Agreement has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(c) None of the provisions of this Agreement shall be construed to relieve the Trustee from liability for its own grossly negligent action, its own grossly negligent failure to act, or its own willful misconduct, or the grossly negligent action, grossly negligent failure to act, or willful misconduct of its directors, officers, employees or agents, except that

> (1) this subsection shall not be construed to limit the effect of subsection (a) of this Section;

> (2) the Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the corporate trust department of the

Trustee, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(3)    the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the holders of not less than a majority in principal amount of the bonds then outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under the provisions of this Agreement; and

(4)    no provision of this Agreement or the Loan Agreement shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)    Whether or not therein expressly so provided, every provision of this Agreement or the Loan Agreement relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section.

(e)    Except as otherwise above provided in this Section:

(1)    the Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, or other paper or document reasonably believed by it to be genuine and to be signed or presented by the proper party or parties;

(2)    whenever in the administration of this Agreement, prior to the occurrence of an event of default specified in Section 802 hereof, the Trustee shall deem it desirable that a matter be proved or established prior to taking, omitting or suffering any action hereunder, such matters (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate of an Authority Representative or an Authorized Company Representative and such certificate, in the absence of bad faith on the part of the Trustee, shall be full warrant to the Trustee for any action taken, omitted or suffered by it under the provisions of this Agreement upon the faith thereof;

(3)    the Trustee may consult with counsel, and the advice of such counsel or any written opinion of counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(4)    the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, or other paper or document, but

66

HTA_CONF 00017116

the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Authority and the Company, personally or by agent or attorney; provided, however, that the aforesaid right of examination shall be exercised only upon such reasonable and necessary terms and conditions as the Authority or the Company, as the case may be, shall prescribe, which conditions shall be deemed to include, but not be limited to, reasonable notice and those conditions necessary to protect the Authority's or the Company's trade secrets and proprietary rights; and

(5)     the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through attorneys, and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder or under the Loan Agreement.

Section 906.  <u>Compensation</u>.  The Authority shall pay or cause the Company to pay to the Trustee its reasonable fees and expenses in accordance with Section 4.05(a) of the Loan Agreement (which fees and expenses shall not be limited to those of a trustee for an express trust).  If the Company shall fail to make any payment required by this Section 906, the Trustee may, but shall be under no obligation to, make such payment from any moneys in its possession under the provisions of this Agreement other than moneys in the Sinking Fund or set aside under Section 510 for the payment of the principal of and interest on the Bonds and shall be entitled to a preference therefor over any of the Bonds outstanding hereunder.

Section 907.  <u>Monthly Statement of Funds on Deposit</u>.  It shall be the duty of the Trustee, on or before December 10, 2003, and monthly thereafter, to file with the Authority and the Company a statement setting forth in respect of the preceding calendar month:

(a)     the amount withdrawn or transferred by it and the amount deposited with it on account of each Fund and Account held by it under the provisions of this Agreement,

(b)     a brief description and valuation of all the obligations held by it as an investment of moneys in each such Fund and Account,

(c)     the amounts applied to the payment, purchase or redemption of bonds and a description of the bonds so paid, purchased, or redeemed,

(d)     the amount applied to the payment of interest on the bonds, and

(e)     any other information relating to such Funds and Accounts known to the Trustee which the Authority or the Company may reasonably request.

All records and files pertaining to the Project and the trusts hereunder in the custody of the Trustee shall be open at all reasonable times to the inspection of the Authority and the Company and their agents and representatives.

NYI 5442588v15

HTA_CONF 00017117

Section 908. <u>Notice of Default</u>.  Except upon the happening of any event of default specified in clause (a) or (b) of Section 802 of this Agreement or specified in clause (c) of said Section 802 and arising as a result of an event of default under Section 7.01(d) or (e) of the Loan Agreement as to which the Trustee has received notice from the applicable tribunal or the Company (or its counsel), the Trustee shall not be obliged to take notice or be deemed to have notice of any event of default hereunder or under the Loan Agreement, unless specifically notified in writing of such event of default by the holders of not less than twenty-five per centum (25%) in aggregate principal amount of the bonds hereby secured and then outstanding.

Section 909. <u>Trustee May Be Bondholder</u>.  The bank, national banking association or trust company acting as Trustee under this Agreement, and its directors, officers, employees or agents, may in good faith buy, sell own, hold and deal in any of the bonds, and may join in the capacity of a bondholder in any action which any bondholder may be entitled to take with like effect as if such bank, national banking association or trust company were not the Trustee under this Agreement, may engage, as principal or agent, or be interested in any financial or other transaction with the Authority or the Company, may maintain any and all other general banking and business relations with the Authority and the Company with like effect and in the same manner as if the Trustee were not a party to this Agreement, and may act as depositary, trustee or agent for any committee or body of holders of the bonds issued under and secured by this Agreement or other obligations of the Authority or the Company with like effect and in the same manner as if the Trustee were not a party to this Agreement; and no implied covenant shall be read into this Agreement against the Trustee in respect of such matters; provided, however, that if any such relationship conflicts with the duties of the Trustee under this Agreement, it shall either eliminate the conflict or resign as Trustee.

Section 910. <u>Trustee Not Responsible for Recitals</u>.  The recitals, statements and representations contained herein and in the bonds (excluding the Trustee's certificate of authentication on the bonds) shall be taken and construed as made by and on the part of the Authority and not by the Trustee, and the Trustee shall not be under any responsibility for the correctness of the same.  The Trustee makes no representations as to the validity or sufficiency of this Agreement, the Loan Agreement or of the bonds.  The Trustee shall not be accountable for the use or application, other than those required to be made by the Trustee as herein provided, of any of the proceeds of the bonds.

Section 911. <u>Trustee Not Responsible for Recording</u>.  The Trustee shall not be under any obligation to see to the recording or filing of this Agreement, the Loan Agreement or any other agreement or instrument or otherwise to the giving to any person of notice of the provisions hereof or thereof.

Section 912. <u>Trustee May Rely on Certificates</u>.  The Trustee shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this Agreement, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other paper or document which it shall in good faith reasonably believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of the Loan Agreement or this Agreement, or upon the written opinion of any attorney, engineer, accountant or other expert believed by it to be qualified in relation to the

68

HTA_CONF 00017118

subject matter, and the Trustee shall not be under any duty to make any investigation or inquiry as to any statements contained or matters referred to in any such document.

Section 913. <u>Qualification of the Trustee</u>. There shall at all times be a Trustee hereunder which shall be a corporation organized and doing business under the laws of the United States of America, the Commonwealth or any state, authorized under such laws to exercise corporate trust powers, having or being a part of a holding company system having, a combined capital and surplus of at least $50,000,000 (or whose obligations hereunder are guaranteed by a bank, banking association or trust company duly authorized to exercise corporate trust powers and subject to examination by federal, Commonwealth or state authority, of good standing, and having at the time of the appointment of such Trustee, a combined capital and surplus of at least such amount), subject to supervision or examination by federal, Commonwealth or state authority, and having its corporate trust office in the Commonwealth or in one of the states of the United States of America. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section 913, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus and reported deposits, respectively, as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 913, it shall resign immediately in the manner and with the effect specified in Section 914 hereof.

Section 914. <u>Resignation and Removal of Trustee</u>. (a) No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee under Section 915 hereof.

(b)     The Trustee may resign at any time by giving written notice thereof to the Authority and the Company. If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the retiring Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)     The Trustee may be removed at any time by demand of the holders of a majority in principal amount of the bonds then outstanding, signed in person by such holders or by their attorneys, legal representatives or agents and delivered to the Trustee, the Authority and the Company (such demand to be effective only when received by the Trustee, the Authority and the Company).

(d)     If at any time:

(1)     the Trustee shall cease to be eligible under Section 913 hereof and shall fail to resign after written request therefor by the Company or by any bondholder who shall have been a bona fide bondholder for at least six months, or

(2)     the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

NY1 5442588v15

HTA_CONF 00017119

then, in any such case, (i) the Authority or the Company may remove the Trustee, or (ii) subject to Section 902 hereof, any bondholder who has been a bona fide bondholder for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e)     If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause, the Authority with the approval of the Company shall promptly appoint a successor Trustee. If within one year after such resignation, removal or incapability, or the occurrence of such vacancy, a successor Trustee shall be appointed by an instrument or concurrent instruments in writing executed by the holders of a majority in principal amount of the bonds then outstanding delivered to the Authority, the Company and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede the successor Trustee appointed by the Authority and approved by the Company. If no successor Trustee shall have been so appointed by the Authority and approved by the Company or the bondholders and accepted appointment in the manner hereinafter provided, any bondholder who has been a bona fide holder of a bond for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(f)     The Authority shall give written notice by certified mail, first-class postage prepaid, of each resignation and each removal of the Trustee and each appointment of a successor Trustee to all bondholders. Each notice shall include the name and address of the corporate trust office of the successor Trustee.

Section 915. <u>Successor Trustee</u>.   Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority and the Company, an instrument in writing accepting such appointment hereunder, and thereupon such successor Trustee without any further act, shall become fully vested with all the rights, immunities, powers and trusts, and subject to all the duties and obligations, of its predecessors; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 906 hereof, execute and deliver an instrument transferring to such successor Trustee all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Trustee shall deliver all property and moneys held by it hereunder to its successor, subject, nevertheless, to its preference, if any, provided for in Sections 902 and 906 hereof. Should any instrument in writing from the Authority be required by any successor Trustee for more fully and certainly vesting in such Trustee the rights, immunities, powers and trusts hereby vested or intended to be vested in the predecessor Trustee, any such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Authority.

Notwithstanding any of the foregoing provisions of this Article, any bank, national banking association or trust company having power to perform the duties and execute the trusts of this Agreement and otherwise qualified to act as Trustee hereunder with or into which the bank, national banking association or trust company acting as Trustee may be converted, merged or consolidated, or to which the corporate trust business assets as a whole or substantially as a whole of such bank, national banking association or trust company may be sold, shall be deemed

70

HTA_CONF 00017120

the successor of the Trustee without the execution or filing of any paper or other instrument or further act on the part of any of the parties hereto.

Section 916. <u>Money Held in Trust</u>.   Money held by the Trustee in trust under this Agreement need not be segregated from other funds except to the extent required by law.  Subject to the provisions of Section 602 hereof, the Trustee shall be under no liability for interest on any money received by it under this Agreement except as otherwise agreed with the Authority or the Company.

71

HTA_CONF 00017121

# ARTICLE X.

Execution of Instruments by Bondholders and Proof
of Ownership of Bonds.

Section 1001. <u>Execution of Instruments by Bondholders and Proof of Ownership of Bonds</u>. (a) Any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by bondholders may be in any number of concurrent instruments of similar tenor and may be signed or executed by such bondholders or their attorneys or legal representatives. Proof of the execution of any such instrument and of the ownership of bonds shall be sufficient for any purpose of this Agreement and shall be conclusive in favor of the Trustee with regard to any action taken by it under such instrument if made in the following manner:

(1) The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution. Where such execution is by a person other than an individual, such verification or affidavit shall also constitute sufficient proof of the authority of the signer.

(2) The ownership of bonds shall be proved by the registration books kept under the provisions of Section 206 hereof.

Nothing contained in this Section 1001 shall be construed as limiting the Trustee to such proof, it being intended that the Trustee may accept any other evidence of the matters herein stated which may be sufficient.

(b) If the Authority shall solicit from the holders any request, direction, consent or other instrument in writing required or permitted by this Agreement to be signed or executed by bondholders, the Authority may, at its option, fix in advance a record date for the determination of holders entitled to give such request, direction, consent or other instrument, but the Authority shall have no obligation to do so. If a record date is fixed, such request, direction, consent or other instrument may be given before or after such record date, but only the holders of record at the close of business on such record date shall be deemed to be holders for the purposes of determining whether holders of the requisite proportion of bonds have authorized or agreed or consented to such request, direction, consent or other instrument, and for that purpose the bonds shall be computed as of such record date; provided that no such consent by the holders on such record date shall be deemed effective unless it shall become effective pursuant to the provisions of this Agreement not later than six months after the record date.

(c) Any request or consent of the holder of any bond shall bind every future holder of the same bond or any bond issued in place thereof in respect of anything done by the Trustee in pursuance of such request or consent.

NY1 5442588v15

HTA_CONF 00017122

## ARTICLE XI.

### Supplements and Amendments to Agreement.

Section 1101. <u>Supplements and Amendments Not Requiring Bondholder Consent</u>.  The Authority and the Trustee may, without the consent or approval of, or notice to, any of the bondholders, at any time and from time to time, enter into such supplements and amendments to this Agreement, in form satisfactory to the Trustee (which supplements and amendments shall thereafter form a part hereof):

(a)     to cure any ambiguity or formal defect or omission, to correct or supplement any provision herein which may be inconsistent with any other changes herein, or to make any other changes with respect to matters or questions arising under this Agreement and which shall not be inconsistent with the provisions of this Agreement and shall not, in the opinion of the Trustee (which may be based upon such opinions, certificates, reports, studies and the like as the Trustee shall not judge unreliable), be detrimental to the interests of the bondholders, or

(b)     to grant to or confer upon the Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders or the Trustee, or

(c)     to correct or amend any description of, or to reflect changes in, any properties comprising the Project, or

(d)     to add to the covenants of the Authority for the benefit of the bondholders or to surrender any right or power herein conferred upon the Authority.

Section 1102. <u>Supplements and Amendments Requiring Consent of Holders of a Majority in Principal Amount of Bonds</u>.  With the consent of the holders of not less than a majority in aggregate principal amount of the bonds at the time outstanding, the Authority and the Trustee may, from time to time and at any time, enter into supplements and amendments to this Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of any supplement or amendment to this Agreement or of modifying in any manner the rights of the holders of the bonds; provided, however, that nothing herein contained shall permit, or be construed as permitting (a) an extension of the time for the payment of the principal of or the interest on any bond, or (b) a reduction in or change of the date of payment of the principal amount of any bond or the redemption premium or the rate of interest thereon, or (c) the creation of any lien or security interest with respect to the Loan Agreement or the payments thereunder or the Revenues, other than the lien created by this Agreement, or (d) a preference or priority of any bond or bonds over any other bond or bonds, or (e) a reduction in the aggregate principal amount of the bonds required for consent to such supplement or amendment or any waiver hereunder.  Nothing herein contained, however, shall be construed as making necessary the approval by bondholders of the execution of any supplemental agreement as authorized in Section 1101 hereof.

73

HTA_CONF 00017123

It shall not be necessary for the consent of the holders of bonds under this Section 1102 to approve the particular form of any proposed supplement or amendment, but it shall be sufficient if such consent shall approve the substance thereof.

If at any time the Authority shall request the Trustee to enter into any supplement or amendment to this Agreement for any of the purposes of this Section 1102, the Trustee shall, at the expense of the Authority, cause notice of the proposed execution of such supplement or amendment to be mailed, certified mail, first-class postage prepaid, to all bondholders, Such notice shall briefly set forth the nature of the proposed supplement or amendment and shall state that copies thereof are on file at the corporate trust office of the Trustee for inspection by all bondholders. The Trustee shall not, however, be subject to any liability to any bondholder by reason of its failure to mail the notice required by this Section 1102, and any such failure to mail such notice or any defect in such notice shall not affect the validity of such supplement or amendment when consented to as provided in this Section 1102.

Whenever, at any time within one year after the date of the mailing of such notice, the Authority shall deliver to the Trustee an instrument or instruments in writing purporting to be executed by the holders of not less than a majority in aggregate principal amount of the bonds then outstanding, which instrument or instruments shall refer to the proposed supplement or amendment described in such notice and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof referred to in such notice, thereupon, but not otherwise, the Trustee may execute such supplement or amendment in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

If the holders of not less than a majority in aggregate principal amount of the bonds outstanding at the time of the execution of such supplement or amendment or any record date established in connection therewith pursuant to Section 1001(b) hereof shall have consented to and approved the execution thereof as herein provided, no holder of any bond shall have any right to object to the execution of such supplement or amendment, or to object to any of the terms and provisions contained therein or the operation thereof or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Authority from executing the same or from taking any action pursuant to the provisions thereof.

Section 1103. Supplements and Amendments Deemed Part of Agreement. The Trustee is authorized to join with the Authority in the execution of any supplement or amendment herein provided. Any supplement or amendment to this Agreement executed in accordance with the provisions of this Article shall thereafter form a part of this Agreement, and all of the terms and conditions contained in any such supplement or amendment as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and conditions of this Agreement for any and all purposes. Upon the execution of any supplement or amendment to this Agreement pursuant to the provisions of this Article, this Agreement shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Agreement of the Authority, the Trustee and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced hereunder, subject in all respects to such modifications and amendments. In case of the execution and delivery of any

NY1 5442588v15

HTA_CONF 00017124

supplement or amendment, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Trustee.

Section 1104. <u>Discretion of Trustee in Entering into Supplements and Amendments</u>. In each and every case provided for in this Article, the Trustee shall not be obligated to execute any proposed supplement or amendment if the rights, obligations and interests of the Trustee would be thereby adversely affected, and the Trustee shall not be under any responsibility or liability to the Authority, the Company or to any bondholder or to anyone whomsoever, for its refusal in good faith to enter into any such supplement or amendment if such supplement or amendment is deemed by it to be contrary to the provisions of this Article.

The Trustee shall be entitled to receive, and shall be fully protected in relying upon, an opinion of any counsel approved by it, as conclusive evidence that any such proposed supplement or amendment does or does not comply with the provisions of this Agreement, and that it is or is not proper for it, under the provisions of this Article, to join in the execution of such supplement or amendment.

Section 1105. <u>Consent of Company Required</u>.  Anything herein to the contrary notwithstanding, any such supplement or amendment to this Agreement shall not become effective unless and until the Company shall have consented thereto in writing.

75

HTA_CONF 00017125

# ARTICLE XII.

## Supplements and Amendments to Loan Agreement
## and the Concession Agreement.

Section 1201. <u>Supplements and Amendments Not Requiring Consent</u>.  The Authority and the Company may enter into, form time to time and at any time, such amendments and supplements to the Loan Agreement and the Concession Agreement, which shall be filed with the Trustee and in form satisfactory to the Trustee (which supplements and amendments shall thereafter form a part thereof),

    (i)    to cure any ambiguity or to make any other provisions with respect to matters or questions arising under the Loan Agreement or the Concession Agreement and which shall not, in the opinion of the Trustee, be detrimental to the interests of the bondholders, or

    (ii)    to correct or amend any description of, or to reflect changes in, any properties comprising the Project, or

    (iii)    to grant to or confer upon the Authority or Trustee for the benefit of the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Authority or bondholders or the Trustee, or

    (iv)    to add to the covenants of the Company or the Authority so long as such additions do not adversely affect the rights of the bondholders or to surrender any right or power therein conferred upon the Company, or

    (v)    to change the term of the Concession Agreement or the economic and financial covenants therein or to make any other change which, in the judgment of the Trustee, will not restrict, limit or reduce the obligation of the Company to make the payments under the Loan Agreement, to pay the principal of or interest on the bonds or otherwise impair the security of the bondholders under this Agreement.

Section 1202. <u>Supplements and Amendments Requiring Consent of Holders of a Majority in Principal Amount of Bonds</u>.  Except for supplements or amendments provided for in Section 1201, the Authority shall not enter into and the Trustee shall not consent to any supplement or amendment to the Loan Agreement or the Concession Agreement unless notice of the proposed execution of such supplement or amendment shall have been given and the holders of not less than a majority in aggregate principal amount of the bonds then outstanding shall have consented to and approved the execution thereof, all as provided for in Section 1102 hereof in the case of supplements and amendments to this Agreement and with the same effect as provided in Section 1103; provided that the Trustee shall be entitled to exercise its discretion in consenting or not consenting to any such supplement or amendment in the same manner as provided for in Section 1104 hereof in the case of supplements and amendments to this Agreement; and provided

76

HTA_CONF 00017126

further, that no such supplement or amendment shall be consented to by the Trustee which would change Section 4.01 or 4.05 or Article VIII of the Loan Agreement.

Section 1203. <u>Consent of Trustee Required</u>.   Anything herein to the contrary notwithstanding, any such supplement or amendment shall not become effective unless and until the Trustee shall have consented thereto in writing.

NYI 5442588v15

HTA_CONF 00017127

ARTICLE XIII.

Defeasance.

Section 1301. <u>Defeasance</u>.  If the Authority shall pay or cause to be paid from the Sinking Fund in accordance with the provisions of Article V hereof to the holders of all of the outstanding bonds secured hereby the principal of and premium, if any, and interest which is and shall thereafter become due and payable thereon, together with all other sums payable hereunder by the Authority, then and in that case the rights, title and interest of the Trustee hereunder shall cease, terminate and become void, and such bonds shall cease to be entitled to any lien, benefit or security under this Agreement.  In such event, the Trustee shall transfer and assign to the Authority all property then held by the Trustee, shall execute such documents as may be reasonably required by the Company prior to the Authority's becoming obligated to give the Assumption Notice and the Authority thereafter to evidence such transfer and assignment and shall, subject to Sections 902 and 906 hereof turn over to the Company prior to the Authority's becoming obligated to give the Assumption Notice and the Authority thereafter any surplus in the Revenue Fund, the Sinking Fund, the Renewal and Replacement Fund, the Net Proceeds Fund and the General Fund for application in accordance with the Concession Agreement.  If the Authority shall pay or cause to be paid to the holders of less than all of the outstanding bonds the principal of and premium, if any, and interest which is and shall thereafter become due and payable upon such bonds, such bonds, or portions thereof, shall cease to be entitled to any lien, benefit or security under this Agreement.

Any outstanding bond shall be deemed to have been paid within the meaning and with the effect expressed in this Section 1301 when the whole amount of the principal of and premium, if any, and interest on such bond shall have been paid or duly provided for and the conditions set forth in clauses (c), (d) and (e) below have been satisfied or when (a) in case said bond or such portion has been duly called for redemption and irrevocable instructions to call such bond or such portion for redemption shall have been given to the Trustee by the Authority (b) whether or not such bond or portion thereof has been so called for redemption, there shall have been deposited with the Trustee either moneys in an amount which shall be sufficient, or Government Obligations, which shall not contain provisions permitting the redemption thereof at the option of the issuer prior to the redemption date of said bond, the principal of and the interest on which when due, and without any reinvestment thereof, will provide moneys which, together with the moneys, if any, deposited with or held by the Trustee and available therefor, shall be sufficient, to pay when due the principal of and premium, if any, and interest due and to become due on said bond or such portion on or prior to the maturity or redemption date thereof, verified by a firm of independent certified public accountants, (c) in the event said bond or such portion does not mature and is not to be redeemed within the next succeeding 60 days, the Authority shall have given the Trustee irrevocable instructions to give, as soon as practicable, a notice to the holder of said bond or such portion by certified mail, first-class postage prepaid, stating that the deposit of moneys or Government Obligations required by clause (b) of this paragraph has been made with the Trustee and that said bond or such portion is deemed to have been paid in accordance with this Section and stating the maturity or redemption date upon which moneys are to be available or the payment of the principal of and premium, if any, and interest on said bond or such portion, (d) the Trustee shall have received an opinion of nationally recognized counsel, which counsel is experienced in bankruptcy matters, satisfactory to the Trustee and the

78

HTA_CONF 00017128

Authority, to the effect that payment to the bondholders of the moneys described in clause (b) of this paragraph would not constitute a transfer which may be avoided under any provision of the United States Bankruptcy Code in the event of an Act of Bankruptcy and (e) the Trustee shall have received an opinion of counsel experienced in tax matters under the Internal Revenue Code of 1986, as amended, satisfactory to the Trustee and the Authority, to the effect that the deposit described in clause (b) of this paragraph or other provision for the payment of the bonds would not adversely affect the treatment of interest received by the bondholders as income from sources within the Commonwealth under the general sourcing rules of the Code in effect on the date of the delivery of the bonds.

Neither the moneys nor Government Obligations deposited with the Trustee pursuant to this Section nor principal or interest payments on any such obligations shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of and premium, if any, and interest on said bonds or portions thereof deemed to have been paid in accordance with the provisions of this Article; provided, however, that to the extent any income or interest earned by, or increment to the investments held under this Section is determined from time to time by the Trustee to be in excess of the amount required to be held by the Trustee for the purposes of this Section 1301, that income, interest or increment shall be transferred at the time of that determination to the Authority.  If bonds, or portions thereof, are deemed to have been paid in accordance with the provisions of this Article by reason of the deposit with the Trustee of moneys or Government Obligations, no amendment to the provisions of this Section which would adversely affect the holders of such bonds, or portions thereof, shall be made without the consent of each holder affected thereby.

NY1 5442588v15

HTA_CONF 00017129

## ARTICLE XIV.

### Miscellaneous Provisions.

Section 1401. <u>Covenants of Authority Bind its Successors</u>.   In the event of the dissolution of the Authority, all of the covenants, stipulations, obligations and agreements contained in this Agreement by or on behalf of or for the benefit of the Authority shall bind or inure to the benefit of the successor or successors of the Authority from time to time and any officer, board, commission, authority, agency or instrumentality to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

Section 1402. <u>Notices</u>.   Any notice, demand, direction request or other instrument authorized or required by this Agreement to be given to or filed with the Authority, the Trustee or the Company shall be in writing and shall be deemed to have been sufficiently given or filed for all purposes of this Agreement if mailed, by certified mail, first-class postage prepaid, addressed as follows:

| | |
|---|---|
| If to the Authority: | Puerto Rico Highways and Transportation Authority<br>Minillas Government Center<br>Avenida de Diego<br>San Juan, Puerto Rico  00940<br>Attention:  Executive Director |
| If to the Company: | Autopistas de Puerto Rico y Compañía, S. E.<br>Attention:  President of Managing Partner<br>Calle Montellano (Final)<br>Embalse San Jose<br>San Juan, Puerto Rico 00923 |
| If to the Trustee: | Banco Popular de Puerto Rico<br>Popular Center Building<br>4th Floor<br>209 Muñoz Rivera Avenue<br>San Juan, Puerto Rico 00918<br>Attention:  Trust Division |

Such notices and other communications to the Trustee by the Authority or the Company shall, if sent by mail in accordance with this Section, be deemed given three (3) Business Days after being deposited in the mail as aforesaid, and if sent by any other method, shall be effective only if and when received by the Trustee.   All documents received by the Trustee under the provisions of this Agreement, or photographic copies thereof, shall be retained in its possession until this Agreement shall be released in accordance with the provisions of this Agreement, subject at all reasonable times to the inspection of the Authority, the Company and the bondholders and the agents and representatives thereof.

NY1 5442588v15

A duplicate copy of each notice, certificate, request or other communication given to the Authority, the Company or the Trustee shall also be given to each of the others. The Authority, the Trustee and the Company may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates or other communications shall be sent.

Section 1403. <u>Substitute Mailing</u>. In case, by reason of the suspension of regular mail service as a result of a strike, work stoppage or similar activity, it shall be impractical to mail notice of any event to bondholders when such notice is required to be given pursuant to any provision of this Agreement, any manner of giving notice as shall be satisfactory to the Trustee and the Authority shall be deemed to be a sufficient giving of such notice.

Section 1404. <u>Rights Under Agreement</u>. Except as herein otherwise expressly provided, nothing in this Agreement expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto, the Company and the holders of the bonds any right, remedy or claim, legal or equitable, under or by reason of this Agreement or any provision hereof, this Agreement and all its provisions being intended to be and being for the sole and exclusive benefit of the parties hereto, the Company and the holders from time to time of the bonds issued hereunder.

Section 1405. <u>Severability</u>. In case any one or more of the provisions of this Agreement or of the bonds issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Agreement or of the bonds, but this Agreement and the bonds shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Agreement shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

Section 1406. <u>Covenants of Authority Not Covenants of Officials Individually</u>. No Covenant, stipulation, obligation or agreement contained herein shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member, agent or employee of the Authority in his individual capacity, and neither the members of the Board nor any other officer of the Board or the Authority executing the bonds shall be liable personally on the bonds or be subject to any personal liability or accountability by reason of the issuance thereof. No member of the Board or the Authority and no officer, agent or employee of the Board of the Authority shall incur any personal liability in acting or proceeding or in not acting or not proceeding, in good faith, reasonably and in accordance with the terms of this Agreement.

Section 1407. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth, except that the rights, limitation of rights, immunities, duties and obligations of the Trustee shall be governed by and construed in accordance with the laws of the jurisdiction under which it is organized.

Section 1408. <u>Payments Due on Days That Are Not Business Days</u>. In any case where the date of maturity of interest on or principal of or premium, if any, on the bonds or the date fixed for redemption of any bonds shall be a day which is not a Business Day, then payment of

81

HTA_CONF 00017131

interest, premium, if any, or principal need not be made on such date but may be made on the next succeeding Business Day with the same force and effect as if made on the date of maturity or the date fixed for redemption, and no interest on such payment shall accrue for the period after such date.

Section 1409. <u>Execution in Counterparts</u>.  This Agreement may be executed in multiple counterparts, each of which shall be regarded for all purposes as an original, and such counterparts shall constitute but one and the same instrument.

Section 1410. <u>Headings Not Part of Agreement</u>.  Any headings preceding the text of the several articles or sections hereof and any table of contents or marginal notes appended to copies hereof shall be solely for convenience of reference and shall not constitute a part of this Agreement, and they shall not affect its meaning, construction or effect.

NY1 5442588v15

HTA_CONF 00017132

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this Agreement to be executed in its name and on its behalf be its Executed Director and its corporate seal to be impressed hereon and attested by its Secretary or an Assistant Secretary and the Trustee has caused this Agreement to be executed in its behalf by one of its authorized officers and its corporate seal to be impressed hereon and attested by one of its authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY


By_____
                    Executive Director


[SEAL]

Attest:

_____
                    Secretary


BANCO POPULAR DE PUERTO RICO


By_____
                    Authorized Officer


[SEAL]

Attest:

_____
       Authorized Officer


83

HTA_CONF 00017133

Commonwealth of Puerto Rico )
: ss.:
Municipality of San Juan )

On the _28_ day of October, 2003, before me personally came Dr. Jack T. Allison, to me known, who, being by me duly sworn, did depose and say that he resides at _Mayagüez_, Puerto Rico; that he is the Executive Director of Puerto Rico Highways and Transportation Authority; and that he signed his name to the above instrument by order of the Authority, the Authority being the public corporation described in and which executed the above instrument.

Affidavit # _1547_

NOTARY PUBLIC

[SEAL]

Commonwealth of Puerto Rico )
: ss.:
Municipality of San Juan )

On the _29_ day of October, 2003, before me personally came _Luis Cintrón_, to me known, who, being by me duly sworn, did depose and say that he resides at _Guaynabo_, Puerto Rico; that he is a Vice President and the Executive Trust Officer of Banco Popular de Puerto Rico, the corporation described in and which executed the above instrument; that he knows the seal thereof; that the seal affixed to said instrument is the corporate seal of said corporation; that it was so affixed by authority of said corporation; and that he signed his name thereto by like authority, _And That he is Married, of Legal Age and Executive._

Affidavit # _096_

NOTARY PUBLIC

[SEAL]



84