# Debtor's Ex. 35

Debtor's Ex. 35

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL
DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). /
Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☒ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC



170328380007412

## Modified Official Form 410 / Formulario Oficial 410 Modificado
# Proof of Claim / Evidencia de reclamación
04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

☐ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

| **Part 1 / Parte 1** | Identify the Claim / Identificar la reclamación |
|---|---|

| 1. Who is the current<br>creditor?<br><br>¿Quién es el<br>acreedor actual? | Assured Guaranty Municipal Corp.<br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor    See attached Annex to Proof of Claim.<br>Otros nombres que el acreedor usó con el deudor _____ |

**Claim Number: 31427**

HTA_CONF 00016231

| | |
|---|---|
| **2. Has this claim been acquired from someone else?**<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☒ No / No<br>☐ Yes. From whom?<br>    Sí. ¿De quién? _____ |

| | | |
|---|---|---|
| **3. Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>¿A dónde deberían enviarse las notificaciones al acreedor?<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>¿A dónde deberían enviarse las notificaciones al acreedor?<br><br>See Annex to Proof of Claim<br>Assured Guaranty Municipal Corp.<br>Attn: Terence Workman<br>Name / Nombre<br><br>1633 Broadway<br>Number / Número    Street / Calle<br><br>New York    NY    10019<br>City / Ciudad    State / Estado    ZIP Code / Código postal<br><br>(212) 408-6053<br>Contact phone / Teléfono de contacto<br><br>tworkman@agltd.com<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?**<br>(if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente)<br><br>See Annex to Proof of Claim<br>Assured Guaranty Municipal Corp.<br>Attn: Terence Workman<br>Name / Nombre<br><br>1633 Broadway<br>Number / Número    Street / Calle<br><br>New York    NY    10019<br>City / Ciudad    State / Estado    ZIP Code / Código postal<br><br>(212) 408-6053<br>Contact phone / Teléfono de contacto<br><br>tworkman@agltd.com<br>Contact email / Correo electrónico de contacto |

| | |
|---|---|
| **4. Does this claim amend one already filed?**<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☒ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>    Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>    Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA) |

| | |
|---|---|
| **5. Do you know if anyone else has filed a proof of claim for this claim?**<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>    Sí. ¿Quién hizo la reclamación anterior?_____ |

| **Part 2 / Parte 2:** | **Give Information About the Claim as of the Petition Date**<br>**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.** |
|---|---|

| | |
|---|---|
| **6. Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☐ No / No<br>☒ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>    Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>    Puerto Rico Energy Commission and Transportation and Public Works (DTOP) |

| | |
|---|---|
| **7. Do you supply goods and / or services to the government?**<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>    Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>    List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>    Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

HTA_CONF 00016232

| | |
|---|---|
| 8. How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | $ _See Annex_____. Does this amount include interest or other charges?<br>¿Este importe incluye intereses u otros cargos?<br>☐ No / No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
| 9. What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>_See attached Annex to Proof of Claim._____ |
| 10. Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ☐ No / No<br>☒ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☒ Other. Describe:<br>Otro. Describir:   _See Annex to Proof of Claim._____<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br>_____ _See Annex to Proof of Claim._____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención).<br><br>**Value of property / Valor del bien:** $ _See Annex to Proof of Claim._____<br><br>**Amount of the claim that is secured /**<br>Importe de la reclamación que está garantizado: $ _See Annex to Proof of Claim._<br><br>**Amount of the claim that is unsecured /**<br>Importe de la reclamación que no está garantizado: $ _See Annex to Proof of_ Claim.<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso : $ _____<br>_____ _See Annex to Proof of Claim._<br><br>**Annual Interest Rate** (on the Petition Date) (See Annex to Proof of Claim)<br>**Tasa de interés anual** (cuando se presentó el caso) _____ %<br>☐ Fixed / Fija<br>☐ Variable / Variable |
| 11. Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ☒ No / No<br>☐ Yes. Amount necessary to cure any default as of the Petition Date.<br>Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $ _____ |

HTA_CONF 00016233

| | |
|---|---|
| **12. Is this claim subject to a right of setoff?**<br><br>¿La reclamación está sujeta a un derecho de compensación? | ☐ No / No<br><br>☒ Yes. Identify the property /<br>Sí. Identifique el bien: _____ **See Annex** _____ |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☒ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**  $_____<br><br>Sí. **Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en los que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.** |

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☐   I am the creditor. / Soy el acreedor.

☒   I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐   I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐   I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___05/24/2018___ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma ___*Holly Horn*_____

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

Name          **Holly Horn**
              First name / Primer nombre          Middle name / Segundo nombre          Last name / Apellido

Title / Cargo    **Chief Surveillance Officer – Public Finance**

Company / Compañía **Assured Guaranty Corp./Assured Guaranty Municipal Corp.**
              Identify the corporate servicer as the company if the authorized agent is a servicer.
              Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección  **1633 Broadway**
              Number / Número          Street / Calle

              **New York**                                    **NY**          **10019**
              City / Ciudad                              State / Estado    ZIP Code / Código postal

Contact phone / Teléfono de contacto  **212.339-3526**      Email / Correo electrónico  **hhorn@agltd.com**

HTA_CONF 00016234

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>               Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3567-LTS |

## ANNEX TO PROOF OF CLAIM OF ASSURED GUARANTY MUNICIPAL CORP.

This is an Annex to the proof of claim (the "Proof of Claim") filed by Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("AGM" or "Claimant"). Claimant is the holder of certain claims (collectively, and including any portion thereof, the "Claims") against the Puerto Rico Highways and Transportation Authority ("PRHTA" or the "Debtor"), as described on the prefixed Proof of Claim to which this Annex relates and as set forth in further detail herein.

Nothing herein shall constitute a waiver of any of Claimant's rights or defenses against the Debtor, the Financial Oversight and Management Board for Puerto Rico ("FOMB"), the Commonwealth of Puerto Rico (the "Commonwealth"),[1] or any other party in any litigation arising from or relating to Claimant's Claims.

THIS ANNEX CONSTITUTES A PART OF THE PROOF OF CLAIM AND IS INCORPORATED THEREIN BY REFERENCE. Copies of certain supporting documents relating to the Claims are attached hereto and are incorporated by reference into this Proof of Claim. Because the documents are voluminous, the Claimant has not attached documents that are in the possession of the Debtor or that are otherwise publicly available. Claimant will furnish the Debtor with copies of any additional pertinent documentation upon request or as otherwise required by order of the United States District Court for the District of Puerto Rico (the "Title III Court"), and all pertinent documentation is hereby incorporated into this proof of claim by reference. The descriptions provided herein are summaries of the underlying Claims and documentation supporting such Claims, and the failure to reference any specific provision within such documentation shall not constitute a waiver by Claimant as to the contents therein.

1.    Background and Basis for Claims: On or around May 21, 2017 (the "Petition Date"), FOMB, as representative for the Debtor, filed a voluntary petition for relief under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), in

---

[1] Claimant incorporates herein by reference its proof of claim filed in the Commonwealth's Title III case (Case No. 17-bk-03283).

HTA_CONF 00016235

the Title III Court.  The Debtor's Title III case number is 17 BK 3567-LTS.  The Debtor is obligated to Claimant for the Claims described herein, which arise, without limitation, under the transaction documents described herein, under other applicable law, or in equity.

The Claims arise from or are related to transactions with the Debtor in which the Claimant, pursuant to certain primary market and secondary market insurance policies (the "Policies"), guaranteed scheduled principal and interest payments on bonds (the "Bonds", and to the extent insured by Claimant, the "Insured Bonds") issued by the Debtor under general bond resolutions (the "Bond Resolutions") adopted in 1968 and 1998.  Claimant insures no less than $824,865,000 of Insured Bonds outstanding as of the Petition Date.  The Policies insuring the Insured Bonds include those listed on the schedule attached hereto as Exhibit A.  Payment by Claimant of claims under the Policies does not discharge the Debtor of its liability and obligations with respect to the Insured Bonds.  Rather, upon payment, Claimant effectively became the owner of the Insured Bonds.

Under its insurance agreements (the "Insurance Agreements") and/or the Policies, Claimant is deemed to be the sole owner of the Bonds that it insures for purposes of, or otherwise has control rights over, consents and other bondholder actions, including exercising rights and remedies of Bondholders.  Claimant is also recognized as a third-party beneficiary under the Bond Resolutions.

The Claims also arise from various Insurance Agreements by and among Claimant and the Debtor, which govern the nature of the insurance provided by Claimant, the rights and remedies of Claimant, and certain obligations of the Debtor.  These Insurance Agreements were entered into concurrently with the execution of the respective Policies.  Under the Insurance Agreements, the Debtor agreed, among other things, that for all purposes of rights of giving notice, making a request, granting consent, and giving direction and exercising remedies, Claimant shall be deemed to be the sole owner of the Insured Bonds.  The Debtor also agreed that Claimant shall be recognized as and have all rights available to it as a third party beneficiary under the applicable Bond Resolution.  The Debtor also agreed to pay or reimburse Claimant for any and all charges, fees, costs, and expenses which Claimant may reasonably pay or incur related to the Bonds, including, but not limited to, reasonable fees and expenses of attorneys, accountants, consultants and auditors.

On or around June 30, 2017 and December 28, 2017, the fiscal agent (the "Fiscal Agent") for the Bonds delivered notices of claims and notices of deficiency (the "Notices"), pursuant to which the Fiscal Agent made claims under the Policies for principal and interest then due on the Insured Bonds.  Notices were delivered to Claimant for scheduled payments on the Insured Bonds due on or around July 1, 2017 and January 1, 2018.[2]  Claimant has paid no less than $74,414,962.50 in aggregate primary and secondary market claims by PRHTA Bondholders, including as set forth in greater detail in the schedule attached hereto as Exhibit B.  Specifically, Claimant has made the following payments under its Policies in response to the Notices, as set forth in greater detail in Exhibit B:

---

[2] The Notices include those attached hereto as Exhibit C.

HTA_CONF 00016236

i.   On or around June 30, 2017, the Fiscal Agent delivered notices of claims under primary market Policies for Insured Bonds due and payable on or around July 1, 2017. Claimant paid approximately $51,245,218.75 on account of such primary market Insured Bonds.

ii.  On or about December 28, 2017, the Fiscal Agent delivered notices of claims under primary market Policies for Insured Bonds due and payable on or around January 1, 2018. Claimant paid approximately $18,827,593.75 on account of such primary market Insured Bonds.

In addition, Claimant insured the Bonds through certain secondary market insurance policies. As of the date hereof, Claimant has made scheduled payments under such policies of no less than $4,342,150.00 on account of the Bonds subject to such secondary market insurance policies, as set forth in greater detail in Exhibit B.

As a result of the payment of claims with respect to the Bonds, Claimant is subrogated to the rights of the holders of the Insured Bonds whose claims it paid.

All failures by the Debtor to comply with its obligations under the Insurance Agreements, including, without limitation, (i) the Debtor's failure to comply with the notification, reporting, and information sharing requirements set forth in the applicable Insurance Agreement; (ii) the Debtor's failure to invest funds pledged to the payment of the Insured Bonds in "Qualified Investments" as defined in the applicable Insurance Agreement and in a manner consistent with the applicable Bond Resolution; and (iii) the Debtor's failure to comply with any covenant, or any similar provision, of the applicable Insurance Agreement, not to enter into any contract or take any action by which the rights of Claimant or security for or sources of payment of the Bonds would be impaired in any material respect, constitute breaches of the Insurance Agreements and give rise to Claims of Claimant against the Debtor. All such breaches of the Insurance Agreements or the Bond Resolutions, breaches of the Debtor's disclosure requirements under applicable securities regulations and laws, violations by the Debtor of any other law, and the making of any untrue statement in the Debtor's Official Statements for the Bonds give rise to further Claims of Claimant against the Debtor for damages and for reimbursement for all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which Claimant may reasonably pay or incur, including for any professionals' fees. Furthermore, Claimant has Claims on account of the Debtor's agreement in the Insurance Agreements to pay or reimburse Claimant for any and all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which Claimant or its officers, directors, shareholders, employees, agents and each person, if any, who controls within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended, may reasonably pay or incur, including, but not limited to, reasonable fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, of any nature in connection with, in respect of or relating to the transactions contemplated by the Bond Resolutions by reason of (i) any omission or action (other than of or by Claimant) in connection with the offering, issuance, sale, remarketing or delivery of the Bonds; (ii) the negligence, bad faith, willful misconduct, misfeasance, malfeasance or theft committed by any director, officer, employee or agent of the Debtor in connection with any transaction arising from or relating to the applicable Bond Resolution; (iii) the violation by the Debtor of any law, rule or regulation, or any judgment, order or decree applicable to it; (iv) the breach by the Debtor of any representation, warranty or covenant under the applicable Bond Resolutions or the occurrence, in

HTA_CONF 00016237

respect of the Debtor, under the applicable Bond Resolution of any "event of default" or any event which, with the giving of notice or lapse of time or both, would constitute any "event of default"; or (v) the making of any untrue statement or alleged untrue statement of a material fact contained in any Official Statement for Insured Bonds or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading.

In addition, beginning in or around November 2015, the Debtor has failed to apply the Pledged Special Revenues (as defined below) to payment of the Bonds as required by the Bond Resolutions and by contract and statute and instead has used the Pledged Special Revenues for other purposes. Claimant has Claims against the Debtor for the full value of all Pledged Special Revenues taken or otherwise used by the Debtor in contravention of Claimant's liens and applicable contracts and statutes, including, without limitation, Claims (i) for just compensation under the takings clause (the "U.S. Takings Clause")[3] of the Fifth Amendment of the U.S. Constitution and Article II, Section 9 of the Commonwealth Constitution (the "Commonwealth Takings Clause",[4] and together with the U.S. Takings Clause, the "Takings Clauses"); and (ii) under Section 407 of PROMESA.

2.     <u>Total Amount of Claims</u>:   Claimant's secured Claims total no less than $899,279,963, including (i) Claims of no less than $824,865,000 on account of amounts outstanding on Insured Bonds as of the Petition Date and (ii) Claims of no less than $74,414,962.50 on account of primary and secondary market claims paid by Claimant under its insurance policies insuring the Insured Bonds. Claimant's Claims also include interest accruing after the Petition Date and any contingent or unliquidated claims not presently ascertainable. In addition, Claimant's Claims include all costs of enforcement, including professionals' fees.

The Bonds accrued and continue to accrue interest at the rates specified within the Bonds, and the Claims include all interest, fees, costs, charges, expenses, disbursements, liabilities, losses, damages, indemnification, reimbursement, or contribution, and other amounts, including, without limitation, legal fees, and expenses (including, without limitation, those incurred in connection with the preparation, filing, and prosecution of this Proof of Claim), that exist or arise before, as of, or after the date of the filing of this Proof of Claim, whether prior to, on, or subsequent to the Petition Date, in each case to the extent or as may be permitted, provided, or contemplated in the supporting documentation and under applicable law.

In addition, Claimant has unsecured Claims totaling no less than $899,279,963, including Claims (i) arising under the Takings Clauses and (ii) arising under Section 407 of PROMESA.

3.     <u>Security for Secured Claims</u>:  Under the Bond Resolutions, the Bonds are secured by a gross lien on special revenues that include, among other things, (i) revenues derived from PRHTA's toll facilities (the "Pledged Toll Revenues"); (ii) special excise taxes consisting of taxes on gasoline, diesel, crude oil, and other special excise taxes (the "Pledged Tax Revenues"); and (iii) special excise taxes consisting of motor vehicle license fees (the "Vehicle Fees";

---

[3] The U.S. Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

[4] The Commonwealth Takings Clause provides that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law." P.R. Const. art. II, § 9.

HTA_CONF 00016238

together with the Pledged Tax Revenues, the "Pledged Special Excise Taxes"; and together with the Pledged Toll Revenues and the Pledged Tax Revenues, the "Pledged Special Revenues"). Each Bond Resolution constitutes a contract between PRHTA and the holders (including Claimant, the "Bondholders") of the Bonds. Each Bond Resolution also constitutes a "security agreement," including as defined in section 101(50) of title 11 (the "Bankruptcy Code") of the United States Code. 11 U.S.C. § 101(50). The Bondholders' liens on the Pledged Special Revenues are perfected, including by the filing of UCC financing statements.[5]

The Commonwealth's Secretary of Treasury acts as a collection agent on behalf of the Bondholders with respect to the Pledged Special Excise Taxes. Upon collection, the Secretary of Treasury is required by statute to hold the Pledged Special Excise Taxes in a segregated account for the benefit of PRHTA and the Bondholders and to transfer the Pledged Special Excise Taxes to the Fiscal Agent each month for the benefit of the Bondholders. From the time of their collection, the Pledged Special Excise Taxes constitute trust funds that are property of PRHTA held for the benefit of the Bondholders. See, e.g., 13 L.P.R.A. § 31751(a)(1); 9 L.P.R.A. §§ 2013(a)(2), 2021, 5681 (collectively, and including any related statutes, the "Excise Tax Statutes"). Pursuant to the Excise Tax Statutes, the Pledged Special Excise Taxes may not be used for any purpose other than payment of the Bonds, and the Excise Tax Statutes give rise to statutory liens in favor of the Bondholders on the Pledged Special Excise Taxes. See 11 U.S.C. § 101(53). At any time that the Commonwealth or PRHTA is in possession of PRHTA Pledged Special Revenues, the Commonwealth or PRHTA holds possession of such PRHTA Pledged Special Revenues for the PRHTA Bondholders' benefit, subject only to a valid "clawback."[6]

The Pledged Toll Revenues likewise constitute trust funds collected and held by PRHTA on behalf of the Bondholders and are property of PRHTA held for the benefit of the Bondholders. See 9 L.P.R.A. § 2013(a)(2).

The Claims of Claimant are unsecured Claims only to the extent of any deficiency, if any, following any exercise by Claimant of any rights of setoff that Claimant may have against the Debtor. Claimant hereby asserts any and all rights of setoff it may have in respect of the Claims, including, without limitation, the right to setoff its Claims against any claims that the Debtor (or any successor, assignee, purchaser, or person claiming through the Debtor) may assert against it.

4.    Credits: The amount of all payments on the Claims, if any, has been credited and deducted for purposes of making this Proof of Claim. Moreover, (i) aggregate figures for claims paid by Claimant on account of its insurance policies and (ii) figures for claims paid by Claimant as reflected in the schedules attached as exhibits to this Proof of Claim have been adjusted to

---

[5] Copies of such UCC financing statements are publicly available from the Puerto Rico Department of State and are incorporated into this Proof of Claim by reference.

[6] The Excise Tax Statutes grant Bondholders first-priority liens on the Pledged Special Excise Taxes, subject only to the conditions that, in a fiscal year in which Article VI, Section 8 of the Commonwealth Constitution (the "Constitutional Debt Priority Provision") is in effect, the Pledged Special Excise Taxes may be "clawed back" (i) to be used *solely* to pay the public debt, but (ii) *only if the public debt remains unpaid after a first application of all other available resources to the payment of public debt*. These preconditions to a "clawback" of the Pledged Special Excise Taxes have never been satisfied, because the Commonwealth has at all relevant times had sufficient available resources to pay the public debt in accordance with the Constitutional Debt Priority Provision.

HTA_CONF 00016239

reflect any reimbursements received by Claimant as of the date of the filing of this Proof of Claim.

5.     Reservation of Rights:  In filing this Proof of Claim, Claimant expressly reserves all rights and causes of action, including, without limitation, contingent or unliquidated rights that it may have against the Debtor.  The description and classification of Claims in this Proof of Claim is not a concession or admission as to the correct characterization or treatment of any such Claims or a waiver of any rights of Claimant.  Claimant expressly reserves its right to bring claims derivatively on behalf of the Puerto Rico Electric Power Authority, the Puerto Rico Aqueduct and Sewer Authority, or any other entity, and all such derivative claims constitute Claims encompassed and preserved by this Proof of Claim on behalf of Claimant and the applicable entity.

In addition to any and all other rights expressly reserved herein, Claimant also expressly reserves all rights to amend, modify, or supplement this Proof of Claim in any respect, including, without limitation, with respect to the filing of an amended proof of claim for the purpose of fixing and liquidating any contingent or unliquidated claim set forth herein, or to file additional proofs of claim for additional claims, including, without limitation, claims for interest, fees, and related expenses (including, without limitation, attorneys' fees) that it has not ascertained at this time.

This Proof of Claim is filed without prejudice to any and all of the rights of Claimant to assert that any and all Claims asserted in this Proof of Claim, including any portions thereof, are (i) entitled to administrative priority or (ii) not subject to treatment or discharge under a plan of adjustment, including (a) on the grounds that such Claims constitute postpetition claims; (b) on the grounds that such Claims do not constitute "claims" as defined in section 101 of the Bankruptcy Code (as incorporated by Section 301(a) of PROMESA); or (c) on the grounds that treatment or discharge of such Claims under a plan of adjustment would be contrary to PROMESA and/or unconstitutional.  Further, this Proof of Claim is filed by Claimant without prejudice to its right to request payment of any additional administrative expense claims that it may have against the Debtor, including, without limitation, administrative expenses not described in this Proof of Claim, and Claimant reserves the right to request payment of such administrative expenses at a later date or when required by the Title III Court.

This Proof of Claim is filed without prejudice to the filing by Claimant or its affiliates of additional proofs of claim or requests for payment with respect to any other indebtedness, liability, or obligation of the Debtor.  Claimant does not, by this Proof of Claim or any amendment or other action, waive any rights with respect to any scheduled claim.

By filing this Proof of Claim, Claimant does not waive any rights under Title III of PROMESA, or chapter 5 or any other provision of the Bankruptcy Code made applicable by virtue of section 301(a) of PROMESA, or under any other law or constitution of the United States or the Commonwealth of Puerto Rico.

In executing and filing this Proof of Claim, Claimant does not submit to the jurisdiction of the Title III Court for any purpose other than with respect to this Proof of Claim against the Debtor and does not waive or release:  (i) any rights or remedies against any other person or entity that may be liable for all or part of the Claims set forth herein, whether an affiliate or

HTA_CONF 00016240

subsidiary of the Debtor, an assignee, successor, purchaser, guarantor or otherwise; (ii) any obligation owed to Claimant, or any right to any security that may be determined to be held by Claimant or for Claimant's benefit; (c) any past, present or future defaults (or events of default) by the Debtor or others; or (d) any right to the subordination, in favor of Claimant, of indebtedness or liens held by other creditors of the Debtor.  The filing of this Proof of Claim is not, and shall not be construed as, an election of remedies or limitation of rights or remedies.

Nothing contained in this Proof of Claim, nor any subsequent appearance, pleading, claim, or suit is intended to be a waiver or release of:  (i) the right of Claimant to have final orders in non-core matters entered only after de novo review by a court of competent jurisdiction (other than the Title III Court); (ii) the right of Claimant to a jury trial in any proceeding so triable herein, or in any case, any controversy, or any proceeding related hereto; (iii) the right of Claimant to have any unliquidated portions of its Claim determined by applicable state or Commonwealth courts; or (iv) any other rights, claims, actions, defenses, setoffs or recoupments to which Claimant is or may be entitled under agreements, documents or instruments, in law or equity, all of which rights, claims, actions, defenses, setoffs and recoupments are expressly reserved.

6.      Notices:  All notices with respect to the Claims should be sent to:

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn:   Kevin Lyons, Esq.
        Terence Workman, Esq.
        Daniel Weinberg
Email: klyons@agltd.com
        tworkman@agltd.com
        dweinberg@agltd.com
Phone: 212.339.3546 (Kevin Lyons)
        212.408.6053 (Terence Workman)
        212.893.2763 (Daniel Weinberg)

with copies to:

Cadwalader, Wickersham & Taft LLP
200 Liberty Street
New York, NY 10281
Attn:  Ivan Loncar, Esq.
        Thomas J. Curtin, Esq.
        Casey Servais, Esq.
Phone: 212-504-6000
Fax:    212-504-6666
Email: ivan.loncar@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

HTA_CONF 00016241

## EXHIBIT A

| Policy Number | Originating Company | Primary Market/Secondary Market | Gross Par Exposure (000s) |
|---|---|---|---|
| 21011 | AGM | PRIMARY | 87,075 |
| 200688 | AGM | PRIMARY | 110,775 |
| 205801 | AGM | PRIMARY | 39,900 |
| 208186 | AGM | PRIMARY | 237,650 |
| 31145AC1 | AGM | SECONDARY | 10,000 |
| 31145AD1 | AGM | SECONDARY | 10,000 |
| 31145AD2 | AGM | SECONDARY | 5,000 |
| 31145AE1 | AGM | SECONDARY | 15,000 |
| 31145AE2 | AGM | SECONDARY | 445 |
| 31145AF1 | AGM | SECONDARY | 12,145 |
| 28452 | AGM | PRIMARY | 266,355 |
| 31145X1 | AGM | SECONDARY | 30,520 |

HTA_CONF 00016242

## EXHIBIT B

| Official Policy | Primary / Secondary Market | Claim Date | Claim Type | Adjusted Gross Amount |
|---|---|---|---|---|
| 21011 | PRIMARY | 7/2017 | I - Interest | 2,696,375.00 |
| 21011 | PRIMARY | 1/2018 | I - Interest | 2,696,375.00 |
| 31145AD2 | SECONDARY | 7/2017 | I - Interest | 137,500.00 |
| 31145AD2 | SECONDARY | 1/2018 | I - Interest | 137,500.00 |
| 31145AE1 | SECONDARY | 7/2017 | I - Interest | 412,500.00 |
| 31145AE1 | SECONDARY | 1/2018 | I - Interest | 412,500.00 |
| 31145AC1 | SECONDARY | 7/2017 | I - Interest | 275,000.00 |
| 31145AC1 | SECONDARY | 1/2018 | I - Interest | 275,000.00 |
| 31145AD1 | SECONDARY | 7/2017 | I - Interest | 275,000.00 |
| 31145AD1 | SECONDARY | 1/2018 | I - Interest | 275,000.00 |
| 31145AE2 | SECONDARY | 7/2017 | I - Interest | 12,237.50 |
| 31145AE2 | SECONDARY | 1/2018 | I - Interest | 12,237.50 |
| 31145AF1 | SECONDARY | 7/2017 | I - Interest | 333,987.50 |
| 31145AF1 | SECONDARY | 1/2018 | I - Interest | 333,987.50 |
| 200688 | PRIMARY | 7/2017 | I - Interest | 2,741,681.25 |
| 200688 | PRIMARY | 1/2018 | I - Interest | 2,741,681.25 |
| 208186 | PRIMARY | 7/2017 | I - Interest | 6,238,312.50 |
| 208186 | PRIMARY | 1/2018 | I - Interest | 6,238,312.50 |
| 205801 | PRIMARY | 7/2017 | I - Interest | 1,047,375.00 |
| 205801 | PRIMARY | 1/2018 | I - Interest | 1,047,375.00 |
| 31145X1 | SECONDARY | 7/2017 | I - Interest | 724,850.00 |
| 31145X1 | SECONDARY | 1/2018 | I - Interest | 724,850.00 |
| 28452 | PRIMARY | 7/2017 | B - P&I | 38,521,475.00 |
| 28452 | PRIMARY | 1/2018 | I - Interest | 6,103,850.00 |

HTA_CONF 00016243

# EXHIBIT C

HTA_CONF 00016244



## BNY MELLON

The Bank of New York Mellon

### NOTICE OF CLAIM AND CERTIFICATE

June 30, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

Re:   **Puerto Rico Highways and Transportation Authority, Highway Revenue Bonds
(Series Y), maturing July 1, 2015, 2016, and 2021, and Highway Revenue Bonds
(Series Z), maturing July 1, 2016 and 2018 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference to Municipal Bond Insurance Policy No. 21011-N, dated April 9,
1996; (the "Policy") issued by AGM, formerly known as Financial Security Assurance Inc., in
respect of the Bonds, that:

(i)     The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18,
adopted on June 13, 1968 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $2,696,375.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on July 1, 2017 (the "Scheduled Payments").

(iii)   The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)    The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$2,696,375.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver
such Bond to AGM.

(v)     The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"); (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2017.

2

HTA_CONF 00016246

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By

Name: Diana F. Torres
Title: Client Manager Services, VP

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016247

EXHIBIT A

Transportation Revenue Bonds

| Policy Number 21011-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| Y | 745181NF0 | 6.25% | 7/1/2021 | $67,300,000.00 | $2,103,125.00 | $0.00 | $2,103,125.00 |
| Z | 745181M79 | 6.00% | 7/1/2018 | $19,775,000.00 | $593,250.00 | $0.00 | $593,250.00 |

HTA_CONF 00016248



# BNY MELLON

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

June 30, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

Re:  **Puerto Rico Highways and Transportation Authority, Highway Revenue Refunding Bonds (Series AA), maturing on July 1, 2026 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the "Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp. ("AGM"), with reference to Municipal Bond Insurance Policy No. 200688-N, dated April 29, 2003 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in respect of the Bonds, that:

(i)       The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18, adopted on June 13, 1968 (as amended and supplemented from time to time, the "Resolution"), by the Puerto Rico Highway and Transportation Authority (the "Authority"), pursuant to which the Authority issued the Bonds.

(ii)      The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund and available for distribution to the Holders pursuant to the Resolution will be $2,741,681.25 (the "Shortfall") less than the aggregate amount of principal and interest due for Payment on July 1, 2017 (the "Scheduled Payments").

(iii)     The Fiscal Agent is making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Fiscal Agent and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered for such payment, shall stamp on each such Bond the legend "$2,741,681.25 paid by AGM and the balance hereof has been canceled and reissued" and then shall deliver such Bond to AGM.

(v)      The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the

Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)      The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)     Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2017.

2

HTA_CONF 00016250

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title: Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

## EXHIBIT A

Transportation Revenue Bonds

| Policy Number 200688-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| AA | 745181N52 | 4.95% | 7/1/2026 | $110,775,000.00 | $2,741,681.25 | $0.00 | $2,741,681.25 |

HTA_CONF 00016252



**BNY MELLON**

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

June 30, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:    Puerto Rico Highways and Transportation Authority, Highway Revenue
Refunding Bonds (Series BB), maturing July 1, 2022 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference Municipal Bond Insurance Policy No. 205801-N, dated October 4,
2005 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in
respect of the Bonds, that:

(i)    The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18,
adopted on June 13, 1968 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)   The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $1,047,375.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on July 1, 2017 (the "Scheduled Payments").

(iii)  The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)   The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$1,047,375.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver
such Bond to AGM.

(v)    The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights
of the Holders with respect to the Bonds to the extent of any payments under the

Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2017.

2

HTA_CONF 00016254

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title:  Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016255

## EXHIBIT A

Transportation Revenue Bonds

| Policy Number 205801-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| BB | 745181P35 | 5.25% | 7/1/2022 | $39,900,000.00 | $1,047,375.00 | $0.00 | $1,047,375.00 |

HTA_CONF 00016256



**BNY MELLON**

The Bank of New York Mellon

### NOTICE OF CLAIM AND CERTIFICATE

June 30, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:**   **Puerto Rico Highways and Transportation Authority, Highway Revenue Refunding Bonds (Series CC), maturing July 1 in the years 2032-2034, and 2036 (the "Bonds)**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the "Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp. ("AGM"), with reference to Municipal Bond Insurance Policy No. 208186-N, dated March 6, 2007 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in respect of the Bonds, that:

(i)   The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18, adopted on June 13, 1968 (as amended and supplemented from time to time, the "Resolution"), by the Puerto Rico Highway and Transportation Authority (the "Authority"), pursuant to which the Authority issued the Bonds.

(ii)   The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund and available for distribution to the Holders pursuant to the Resolution will be $6,238,312.50 (the "Shortfall") less than the aggregate amount of principal and interest due for Payment on July 1, 2017 (the "Scheduled Payments").

(iii)   The Fiscal Agent is making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)   The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Fiscal Agent and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered for such payment, shall stamp on each such Bond the legend "$6,238,312.50 paid by AGM and the balance hereof has been canceled and reissued" and then shall deliver such Bond to AGM.

(v)   The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights

of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2017.

2

HTA_CONF 00016258

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title: Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016259

## EXHIBIT A

Transportation Revenue Bonds

| Policy Number 208186-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| CC | 745181C54 | 5.25% | 7/1/2032 | $42,790,000.00 | $1,123,237.50 | $0.00 | $1,123,237.50 |
| CC | 745181C62 | 5.25% | 7/1/2033 | $ 45,045,000.00 | $1,182,431.25 | $0.00 | $1,182,431.25 |
| CC | 745181C70 | 5.25% | 7/1/2034 | $47,405,000.00 | $1,244,381.25 | $0.00 | $1,244,381.25 |
| CC | 745181C88 | 5.25% | 7/1/2036 | $102,410,000.00 | $2,688,262.50 | $0.00 | $2,688,262.50 |



# BNY MELLON

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

June 30, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:**   **Puerto Rico Highways and Transportation Authority, Transportation Revenue
Refunding Bonds (Series D), maturing July 1, 2027 and July 1, 2032, and
Transportation Revenue Refund Bonds (Series E), maturing July 1 in the years
2017 – 2023 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference to Municipal Bond Insurance Policy No. 28452-N, (the "Policy"),
issued by AGM, formerly known as Financial Security Assurance Inc., in respect of the
Bonds, that:

(i)    The Fiscal Agent is the successor fiscal agent under Resolution No. 98-06,
adopted as of February 26, 1998 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $38,521,475.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on July 1, 2017 (the "Scheduled Payments").

(iii)    The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)    The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$38,521,475.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver
such Bond to AGM.

(v)     The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 30th day of June, 2017.

2

HTA_CONF 00016262

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title: Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016263

## EXHIBIT A

Transportation Revenue Bonds

| Policy Number 28452-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| D | 745190J41 | 5.00% | 7/1/2027 | $36,240,000.00 | $906,000.00 | $0.00 | $906,000.00 |
| D | 7451902B3 | 5.00% | 7/1/2032 | $105,075,000.00 | $2,626,875.00 | $0.00 | $2,626,875.00 |
| E | 745190HC5 | 5.50% | 7/1/2017 | $31,550,000.00 | $867,625.00 | $31,550,000.00 | $32,417,625.00 |
| E | 745190HD3 | 5.50% | 7/1/2018 | $19,260,000.00 | $529,650.00 | $0.00 | $529,650.00 |
| E | 745190HE1 | 5.50% | 7/1/2019 | $13,250,000.00 | $364,375.00 | $0.00 | $364,375.00 |
| E | 745190HF8 | 5.50% | 7/1/2020 | $14,110,000.00 | $388,025.00 | $0.00 | $388,025.00 |
| E | 745190HG6 | 5.50% | 7/1/2021 | $14,420,000.00 | $396,550.00 | $0.00 | $396,550.00 |
| E | 745190HH4 | 5.50% | 7/1/2022 | $15,790,000.00 | $434,225.00 | $0.00 | $434,225.00 |
| E | 745190HJ0 | 5.50% | 7/1/2023 | $16,660,000.00 | $458,150.00 | $0.00 | $458,150.00 |

HTA_CONF 00016264



## BNY MELLON

The Bank of New York Mellon

### NOTICE OF CLAIM AND CERTIFICATE

December 28, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

Re:     **Puerto Rico Highways and Transportation Authority, Highway Revenue Bonds
(Series Y), maturing July 1, 2015, 2016, and 2021, and Highway Revenue Bonds
(Series Z), maturing July 1, 2016 and 2018 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference to Municipal Bond Insurance Policy No. 21011-N, dated April 9,
1996; (the "Policy") issued by AGM, formerly known as Financial Security Assurance Inc., in
respect of the Bonds, that:

(i)      The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18,
adopted on June 13, 1968 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $2,696,375.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on January 2, 2018 (the "Scheduled
Payments").

(iii)    The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)     The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$2,696,375.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver
such Bond to AGM.

(v)     The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

2

HTA_CONF 00016266

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By_____

Name: Diana F. Torres
Title:  Client Manager Services, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016267

## EXHIBIT A

Transportation Revenue Bonds

| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
|--------|-----------|------|---------------|--------------------|----------|-----------|-----------|
| Policy Number 21011-N | | | | | | | |
| Y | 745181NF0 | 6.25% | 7/1/2021 | $67,300,000.00 | $2,103,125.00 | $0.00 | $2,103,125.00 |
| Z | 745181M79 | 6.00% | 7/1/2018 | $19,775,000.00 | $593,250.00 | $0.00 | $593,250.00 |

HTA_CONF 00016268



# BNY MELLON

The Bank of New York Mellon

### NOTICE OF CLAIM AND CERTIFICATE

December 28, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:** **Puerto Rico Highways and Transportation Authority, Highway Revenue Refunding Bonds (Series AA), maturing on July 1, 2026 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the "Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp. ("AGM"), with reference to Municipal Bond Insurance Policy No. 200688-N, dated April 29, 2003 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in respect of the Bonds, that:

(i)     The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18, adopted on June 13, 1968 (as amended and supplemented from time to time, the "Resolution"), by the Puerto Rico Highway and Transportation Authority (the "Authority"), pursuant to which the Authority issued the Bonds.

(ii)     The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund and available for distribution to the Holders pursuant to the Resolution will be $2,741,681.25 (the "Shortfall") less than the aggregate amount of principal and interest due for Payment on January 2, 2018 (the "Scheduled Payments").

(iii)     The Fiscal Agent is making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)     The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Fiscal Agent and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered for such payment, shall stamp on each such Bond the legend "$2,741,681.25 paid by AGM and the balance hereof has been canceled and reissued" and then shall deliver such Bond to AGM.

(v)     The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights

of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)     The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

2

HTA_CONF 00016270

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres

Title:  Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016271

## EXHIBIT A

<u>Transportation Revenue Bonds</u>

| Policy Number 200688-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| AA | 745181N52 | 4.95% | 7/1/2026 | $110,775,000.00 | $2,741,681.25 | $0.00 | $2,741,681.25 |

HTA_CONF 00016272



# BNY MELLON

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

December 28, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:    Puerto Rico Highways and Transportation Authority, Highway Revenue
Refunding Bonds (Series BB), maturing July 1, 2022 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference Municipal Bond Insurance Policy No. 205801-N, dated October 4,
2005 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in
respect of the Bonds, that:

(i)       The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18,
adopted on June 13, 1968 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)      The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $1,047,375.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on January 2, 2018 (the "Scheduled
Payments").

(iii)     The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)      The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$1,047,375.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver
such Bond to AGM.

(v)       The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights

HTA_CONF 00016273

of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

THE BANK OF NEW YORK MELLON,

2

HTA_CONF 00016274

as Fiscal Agent

By _Diana_ _____

Name: Diana F. Torres
Title:  Client Services Manager, VP

_____

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016275

## EXHIBIT A

<u>Transportation Revenue Bonds</u>

| Policy Number 205801-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| BB | 745181P35 | 5.25% | 7/1/2022 | $39,900,000.00 | $1,047,375.00 | $0.00 | $1,047,375.00 |

HTA_CONF 00016276



# BNY MELLON

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

December 28, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

Re:   **Puerto Rico Highways and Transportation Authority, Highway Revenue
      Refunding Bonds (Series CC), maturing July 1 in the years 2032-2034, and 2036
      (the "Bonds)**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference to Municipal Bond Insurance Policy No. 208186-N, dated March 6,
2007 (the "Policy"), issued by AGM, formerly known as Financial Security Assurance Inc., in
respect of the Bonds, that:

(i)     The Fiscal Agent is the successor fiscal agent under Resolution No. 68-18,
adopted on June 13, 1968 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $6,238,312.50 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on January 2, 2018 (the "Scheduled
Payments").

(iii)   The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)    The Fiscal Agent agrees that, following receipt of funds from AGM, it shall
(a) hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose;
(c) not commingle such funds with other funds held by the Fiscal Agent and (d)
maintain an accurate record of such payments with respect to each Bond and the
corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to
be surrendered for such payment, shall stamp on each such Bond the legend
"$6,238,312.50 paid by AGM and the balance hereof has been canceled and reissued"
and then shall deliver such Bond to AGM.

(v)    The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)   The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)  Payment should be made by wire transfer directed to



Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

2

HTA_CONF 00016278

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title:  Client Services Manager, VP

---

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

HTA_CONF 00016279

## EXHIBIT A

Transportation Revenue Bonds

| Policy Number 208186-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| CC | 745181C54 | 5.25% | 7/1/2032 | $42,790,000.00 | $1,123,237.50 | $0.00 | $1,123,237.50 |
| CC | 745181C62 | 5.25% | 7/1/2033 | $ 45,045,000.00 | $1,182,431.25 | $0.00 | $1,182,431.25 |
| CC | 745181C70 | 5.25% | 7/1/2034 | $47,405,000.00 | $1,244,381.25 | $0.00 | $1,244,381.25 |
| CC | 745181C88 | 5.25% | 7/1/2036 | $102,410,000.00 | $2,688,262.50 | $0.00 | $2,688,262.50 |



# BNY MELLON

The Bank of New York Mellon

## NOTICE OF CLAIM AND CERTIFICATE

December 28, 2017

Assured Guaranty Municipal Corp.
1633 Broadway
New York, NY 10019
Attn: Valery Marfitsin

**Re:     Puerto Rico Highways and Transportation Authority, Transportation Revenue
Refunding Bonds (Series D), maturing July 1, 2027 and July 1, 2032, and
Transportation Revenue Refund Bonds (Series E), maturing July 1 in the years
2017 – 2023 (the "Bonds")**

The undersigned, a duly authorized officer of The Bank of New York Mellon (the
"Fiscal Agent"), as fiscal agent, hereby certifies to Assured Guaranty Municipal Corp.
("AGM"), with reference to Municipal Bond Insurance Policy No. 28452-N, (the "Policy"),
issued by AGM, formerly known as Financial Security Assurance Inc., in respect of the
Bonds, that:

(i)     The Fiscal Agent is the successor fiscal agent under Resolution No. 98-06,
adopted as of February 26, 1998 (as amended and supplemented from time to time, the
"Resolution"), by the Puerto Rico Highway and Transportation Authority (the
"Authority"), pursuant to which the Authority issued the Bonds.

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the Puerto
Rico Highways and Transportation Authority Transportation Revenue Bonds Interest
and Sinking Fund and available for distribution to the Holders pursuant to the
Resolution will be $6,103,850.00 (the "Shortfall") less than the aggregate amount of
principal and interest due for Payment on January 2, 2018 (the "Scheduled
Payments").

(iii)   The Fiscal Agent is making a claim under the Policy for the Shortfall to be
applied to the payment of Scheduled Payments.

(iv)    The Fiscal Agent agrees that, following receipt of funds from AGM, it shall (a)
hold such amounts in trust and apply the same directly to the payment of Scheduled
Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c)
not commingle such funds with other funds held by the Fiscal Agent and (d) maintain
an accurate record of such payments with respect to each Bond and the corresponding
claim on the Policy and proceeds thereof, and, if the Bond is required to be surrendered
for such payment, shall stamp on each such Bond the legend "$6,103,850.00 paid by
AGM and the balance hereof has been canceled and reissued" and then shall deliver

HTA_CONF 00016281

such Bond to AGM.

(v)    The Fiscal Agent, on behalf of the Holders, hereby assigns to AGM the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to AGM in respect of such payments. Payments to AGM in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Fiscal Agent shall take such action and deliver such instruments as may be reasonably requested or required by AGM to effectuate the purpose or provisions of this clause (v).

(vi)    The Fiscal Agent, on its behalf and on behalf of the Holders, hereby appoints AGM as agent and attorney-in-fact for the Fiscal Agent and each such Holder in any legal proceeding with respect to the Bonds. The Fiscal Agent hereby agrees that, so long as AGM shall not be in default in its payment obligations under the Policy, AGM may at any time during the continuation of any proceeding by or against the Issuer or other obligor under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of AGM but subject to reimbursement as provided in the Resolution and (C) the posting of any surety, supersedeas or performance bond pending any such appeal. In addition, the Fiscal Agent hereby agrees that AGM shall be subrogated to, and the Fiscal Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Fiscal Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    Payment should be made by wire transfer directed to



        Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

        IN WITNESS WHEREOF, the Fiscal Agent has executed and delivered this Notice of Claim and Certificate as of the 28th day of December, 2017.

HTA_CONF 00016282

THE BANK OF NEW YORK MELLON,
as Fiscal Agent

By _____

Name: Diana F. Torres
Title:  Client Services Manager, VP

For AGM or
Fiscal Agent Use Only
Wire transfer sent on_____By _____
Confirmation Number _____

3

## EXHIBIT A

### Transportation Revenue Bonds

| Policy Number 28452-N | | | | | | | |
|---|---|---|---|---|---|---|---|
| Series | CUSIP No. | Rate | Maturity Date | Amount Outstanding | Interest | Principal | Shortfall |
| D | 745190J41 | 5.00% | 7/1/2027 | $36,240,000.00 | $906,000.00 | $0.00 | $906,000.00 |
| D | 7451902B3 | 5.00% | 7/1/2032 | $105,075,000.00 | $2,626,875.00 | $0.00 | $2,626,875.00 |
| E | 745190HD3 | 5.50% | 7/1/2018 | $19,260,000.00 | $529,650.00 | $0.00 | $529,650.00 |
| E | 745190HE1 | 5.50% | 7/1/2019 | $13,250,000.00 | $364,375.00 | $0.00 | $364,375.00 |
| E | 745190HF8 | 5.50% | 7/1/2020 | $14,110,000.00 | $388,025.00 | $0.00 | $388,025.00 |
| E | 745190HG6 | 5.50% | 7/1/2021 | $14,420,000.00 | $396,550.00 | $0.00 | $396,550.00 |
| E | 745190HH4 | 5.50% | 7/1/2022 | $15,790,000.00 | $434,225.00 | $0.00 | $434,225.00 |
| E | 745190HJ0 | 5.50% | 7/1/2023 | $16,660,000.00 | $458,150.00 | $0.00 | $458,150.00 |

HTA_CONF 00016284

# Prime Clerk



## <u>Brooklyn</u>

### <u>CLAIM/BALLOT HAND DELIVERY</u>
### <u>CONFIRMATION SHEET</u>

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC

DATE RECEIVED: _____

CASE: _____ Puerto Rico _____

NO. OF CLAIMS: _____ 2 _____

NO. OF BALLOTS: _____

COPIES: _____ handed back _____

RECEIVED BY: _____

HTA_CONF 00016285