# Debtor's Ex. 37

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico / El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date: May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA) / La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date: May 5, 2017 |
| ■ Puerto Rico Highways and Transportation Authority / La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date: May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico / El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date: May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority / La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date: July 2, 2017 |

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC

## Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

☒ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| 1. **Who is the current creditor?** ¿Quién es el acreedor actual? | The Bank of New York Mellon, as Fiscal Agent |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación) |
| | Other names the creditor used with the debtor Otros nombres que el acreedor usó con el deudor _____ |



170328380006738

**Claim Number: 32622**

HTA_CONF 00016286

| 2. | **Has this claim been acquired from someone else?**<br><br>**¿Esta reclamación se ha adquirido de otra persona?** | ■ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ |
|---|---|---|

3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g |

**Where should notices to the creditor be sent?**
**¿A dónde deberían enviarse las notificaciones al acreedor?**

Reed Smith LLP Attn: Eric A. Schaffer, Esq.
Name / Nombre

225          Fifth Avenue, Suite 1200
Número / Número    Street / Calle

Pittsburgh      PA          15222
City / Ciudad    State / Estado    ZIP Code / Código postal

(412) 288-3131
Contact phone / Teléfono de contacto

eschaffer@reedsmith.com
Contact email / Correo electrónico de contacto

**Where should payments to the creditor be sent?** (if different)
**¿A dónde deberían enviarse los pagos al acreedor?** (En caso de que sea diferente)

Bank of New York Mellon Attn: Alex T. Chang
Name / Nombre

101          Barclay Street
Número / Número    Street / Calle

New York      NY          10286
City / Ciudad    State / Estado    ZIP Code / Código postal

(212) 815-2816
Contact phone / Teléfono de contacto

alex.chang@bnymellon.com
Contact email / Correo electrónico de contacto

| 4. | **Does this claim amend one already filed?**<br><br>**¿Esta reclamación es una enmienda de otra presentada anteriormente?** | ■ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
|---|---|---|
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?**<br><br>**¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación?** | ■ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí.  ¿Quién hizo la reclamación anterior?_____ |

**Part 2 / Parte 2:**  **Give Information About the Claim as of the Petition Date**
**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.**

| 6. | **Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**<br><br>**¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico?** | ■ No / No<br>☐ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>_____ |
|---|---|---|
| 7. | **Do you supply goods and / or services to the government?**<br><br>**¿Proporciona bienes y / o servicios al gobierno?** | ■ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number \| Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

HTA_CONF 00016287

**8. How much is the claim?**

¿Cuál es el importe de la reclamación?

$ ___See Attached Addendum___ . **Does this amount include interest or other charges?**
¿Este importe incluye intereses u otros cargos?

☐ No / No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).
Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A).

---

**9. What is the basis of the claim?**

¿Cuál es el fundamento de la reclamación?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

See Attached Addendum

---

**10. Is all or part of the claim secured?**

¿La reclamación está garantizada de manera total o parcial?

☐ No / No

☑ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

**Nature of property / Naturaleza del bien:**
☐ Motor vehicle / Vehículos

☑ Other. Describe:
Otro. Describir: See Attached Addendum

**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)

**Value of property / Valor del bien:** $_____

**Amount of the claim that is secured /**
**Importe de la reclamación que está garantizado:** $ See Attached Addendum

**Amount of the claim that is unsecured /**
**Importe de la reclamación que no está garantizado:** $_____
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

**Amount necessary to cure any default as of the Petition Date /**
**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $_____

**Annual Interest Rate** (on the Petition Date)
**Tasa de interés anual** (cuando se presentó el caso)_____%
☐ Fixed / Fija
☐ Variable / Variable

---

**11. Is this claim based on a lease?**

¿Esta reclamación está basada en un arrendamiento?

☑ No / No

☐ Yes. **Amount necessary to cure any default as of the Petition Date.**
Sí. **Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso** $ _____

---

HTA_CONF 00016288

| 12. **Is this claim subject to a right of setoff?**<br><br>*¿La reclamación está sujeta a un derecho de compensación?* | ■ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
|---|---|

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>*¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?* | ■ No / No<br><br>☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. | $ _____ |
|---|---|---|

---

| **Part 3 / Parte 3:** | **Sign Below / Firmar a continuación** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

■ I am the creditor. / Soy el acreedor.

☐ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el   05/22/2018 _____ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma _____

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

| Name | Alex | T. | Chang |
|---|---|---|---|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

| Title / Cargo | Vice President |
|---|---|

| Company / Compañía | The Bank of New York Mellon |
|---|---|

Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

| Address / Dirección | 101 | Barclay Street | | |
|---|---|---|---|---|
| | Number / Número | Street / Calle | | |
| | New York | | NY | 10286 |
| | City / Ciudad | | State / Estado | ZIP Code / Código postal |

Contact phone / Teléfono de contacto  (212) 815-2816      Email / Correo electrónico  alex.chang@bnymellon.com

---

HTA_CONF 00016289

## ADDENDUM TO PROOF OF CLAIM OF THE
## BANK OF NEW YORK MELLON, AS FISCAL AGENT

### CLAIMANT

1.        The Bank of New York Mellon (the "<u>Fiscal Agent</u>") is the claimant in
its capacity as fiscal agent under Resolution No. 98-06 (as amended and supplemented from time
to time, the "<u>98 Resolution</u>"), adopted on February 26, 1998,  and Resolution No. 98-31 (as
amended and supplemented from time to time, the "<u>98 Subordinate Resolution</u>" and, together
with the 98 Resolution, the "<u>Resolutions</u>"), adopted on August 1, 1998, by the Puerto Rico
Highways and Transportation Authority (the "<u>Authority</u>").[1]

2.        The Fiscal Agent has corporate trust offices at 101 Barclay Street,
New York, NY 10286 (Attn:  Alex T. Chang).

3.        The Fiscal Agent is authorized to file this proof of claim (the "<u>Claim</u>")
pursuant to 11 U.S.C. § 501(a), which is made applicable to this title III proceeding pursuant to
48 U.S.C. § 2161(a), and the *Order (A) Establishing Deadlines and Procedures for Filing Proofs
of Claim and (B) Approving Form and Manner of Notice Thereof.*  [Case No. 17-3283 (LTS) (D.
P.R. Feb. 15, 2018), Doc. No. 2521].

4.        Alex T. Chang, Vice President, is authorized to make this claim on
behalf of the Fiscal Agent.

### BASIS FOR CLAIM

5.        Pursuant to the authorization provided in, and subject in all respects to,
the Resolutions, the Authority issued the Subordinated Bonds (the "<u>Subordinated Bonds</u>").

6.        This Claim is on account of amounts due or becoming due on or in
connection with the Subordinated Bonds under the 98 Resolution.  The Fiscal Agent is filing a

---

[1]     Capitalized terms used but not defined herein have the meanings given in the 98 Resolution.

US_ACTIVE-139805585.5-RSAINVIL

separate proof of claim contemporaneously herewith on account of amounts due or becoming due on or in connection with the 98 Resolution and bonds issued pursuant to Resolution No. 68-18.

7.      The 98 Resolution provides for the creation of separate accounts in the Subordinated Bond Service Account, to pay the principal of and interest on all subordinate bonds issued under the 98 Resolution. *See* 98 Resolution, Article IV.

8.      **1998 Subordinate Bonds.** On August 1, 1998, the Authority adopted the 98 Subordinate Resolution, pursuant to which the Authority initially issued the Authority's Subordinated Transportation Revenue Bonds (Series 1998) (Puerto Rico State Infrastructure Bank) in the aggregate principal amount of $75,050,000. *See* 98 Subordinate Resolution, § 2; *see also* 98 Resolution, § 210 (authorizing the issuance of Subordinated Bonds under, and secured by, the 98 Resolution). The Subordinated Bonds consisted of $16,990,000 Serial Bonds, which have all matured, and $58,060,000 Term Bonds that mature in the years and in the principal amounts, and bear interest payable on each Interest Payment Date at the interest rates per annum, as set forth below:

$58,060,000 Term Bonds

$12,770,000 5.00% Term Bonds due July 1, 2018
$15,520,000 5.00% Term Bonds due July 1, 2022
$29,770,000 5.00% Term Bonds due July 1, 2028

9.      **2003 Subordinate Bonds.** On April 10, 2003, the Authority adopted Resolution No. 2003-24 ("Resolution 2003-24") authorizing the issuance of the Subordinated Transportation Revenue Bonds (Series 2003) (the "2003 Subordinated Bonds") in the aggregate principal amount of $320,545,000. The 2003 Subordinated Bonds consisted of $320,545,000 Serial Bonds (some of which have matured) and Term Bonds that mature in the years and in the

- 2 -

principal amounts, and bear interest payable on each Interest Payment Date at the interest rates

per annum, as set forth below:

### 2003 Subordinated Bonds (Serial)

$14,700,000 5.25% Serial Bonds due July 1, 2017
$500,000 4.10% Serial Bonds due July 1, 2017
$15,000,000 5.25% Serial Bonds due July 1, 2018
$110,000 4.20% Serial Bonds due July 1, 2018
$11,025,000 5.75% Serial Bonds due July 1, 2019
$1,320,000 4.75% Serial Bonds due July 1, 2019
$15,465,000 5.75% Serial Bonds due July 1, 2020
$16,320,000 5.75% Serial Bonds due July 1, 2021
$17,245,000 5.75% Serial Bonds due July 1, 2022
$225,000 4.875% Serial Bonds due July 1, 2022
$18,265,000 5.00% Serial Bonds due July 1, 2023

### 2003 Subordinated Bonds (Term)

$105,985,000 5.00% Term Bonds due July 1, 2028

10.      The Authority's Subordinated Bonds and other bonds subsequently

issued under the Resolutions are payable solely from, and secured by a pledge of, the Revenues.

98 Resolution § 601-602; *id.* §101, "Revenues."  The Revenues are free and clear of any other

pledge, lien, charge, or encumbrance, *id.* § 602.

11.      The Authority is a public corporation and government instrumentality

of the Commonwealth of Puerto Rico created by Act No. 74 ("Act No. 74") of the Legislative

Assembly of Puerto Rico, approved June 23, 1965, as amended and supplemented, for the

purpose of assuming responsibility for the construction, operation, and maintenance of highways

and other mass transportation systems in Puerto Rico.  *See* P.R. Laws Ann. tit. 9, § 2002.

12.      Pursuant to Act No. 74, the Authority is authorized to issue bonds and

secure payment of principal and interest thereon by pledge of and lien on the Authority's

HTA_CONF 00016292

property and revenues, as well as by any tax "made available to the Authority by the Commonwealth." *See* P.R. Laws Ann. tit. 9, § 2004(l); *see also id.* § 2012(e)(1), (h).

13.     The Subordinated Bonds are also payable from moneys required to be transferred to an account established in the Subordinated Bond Reserve Fund from an account within the Puerto Rico State Infrastructure Bank Trust Fund (the "<u>SIB Trust Fund</u>"). *See* 98 Resolution, § 401; *id.* § 101, "Subordinated Bond Reserve Fund." On the date of issuance of the Subordinated Bonds, the amount on deposit in said account in the SIB Trust Fund, which amount is derived from federal capitalization grants and Authority matching funds, should equal the Subordinated Reserve Requirement fixed by the Authority in 98 Subordinate Resolution. *See* 98 Resolution, § 101, "Subordinated Reserve Requirement."

14.     The Authority pledged to "promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution." 98 Resolution, § 601.

15.     On May 21, 2017, the Financial Oversight and Management Board of Puerto Rico filed a petition for relief on behalf of the Authority under title III of the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2201 *et seq*.

16.     On June 20, 2017, the Puerto Rico Fiscal Agency and Financial Advisory Authority instructed the Fiscal Agent to refrain from making the scheduled payment to holders of the Bonds. Since that time, additional amounts of principal and interest on the Bonds have become due for payment, yet remain unpaid.

AMOUNT OF CLAIM

17.     The amount of the Fiscal Agent's secured claim on account of the Subordinated Bonds is $279,492,702.01, which amount is calculated as follows:

> Principal (Maturity Value): $271,055,000.00, allocated among the Bonds as set forth on **Exhibit A**.

- 4 -

HTA_CONF 00016293

Accrued but Unpaid Interest:  $8,225,231.05 as of May 21, 2017, plus accrued, unpaid interest thereafter on the outstanding Bonds at the rates of interest specified in the Resolution, allocated among the Bonds as set forth on **Exhibit A**.

Fees and Expenses:  $212,470.96 as of May 21, 2017 and all amounts due thereafter and becoming due to the Fiscal Agent for services rendered under the Resolution and reimbursement of all reasonable expenses, disbursements, and advances made or incurred by the Fiscal Agent, its agents, and employees in connection with its powers and duties under the Resolution, for indemnification, and for all other amounts due or becoming due to the Fiscal Agent.

Other Claims Under the Bonds or Resolution:  Any and all claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have under or in connection with the Subordinated Bonds and/or the Resolutions, including any and all other interest, charges, penalties, premiums, and advances that may be due or become due under or in connection with the Subordinated Bonds and/or the Resolution (whether under applicable law or principles of equity), which amounts presently may be unliquidated or contingent, but may become fixed and liquidated in the future, and which may constitute administrative claims;

Any and all other claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have arising at law or in equity based upon or relating to the Resolutions and/or the Subordinated Bonds, including, but not limited to, claims for breach of contract, specific performance, indemnification, contribution, rescission, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and all past, present, or future litigations, actions, or transactions by, among, or involving the Fiscal Agent, the Owners, and/or the Authority; and

Any and all other claims, arising at law or in equity, arising in, in connection with, and/or related to any and all transactions and/or transfers concerning or related to the Subordinated Bonds and/or the Resolutions between or involving the Fiscal Agent and/or the Owners and the Authority, including, but not limited to, any and all written or oral contracts, pledges, security interests, leases, guaranties, indemnities, contributions, fiduciary obligations, trusts, quasi-contracts, properties, replevins, conversions, misrepresentations, set offs, or frauds.

## SECURITY AND NATURE OF CLAIM

18.     The Claim is secured by the 98 Resolution, pursuant to which the

Authority pledged to the Fiscal Agent, among other things, an interest in and lien on the

- 5 -

HTA_CONF 00016294

Revenues, which consist of (i) the total amount of excise taxes, up to $120 million per fiscal year, imposed by the Commonwealth on certain petroleum products; (ii) toll revenues on the Authority's traffic facilities that were not financed with Highway Revenue Bonds issued under Resolution No. 68-18; (iii) certain investment earnings; and (iv) the following to the extent they are unencumbered and available after payment of debt service of the Authority's outstanding Highway Revenue Bonds: (x) all current gasoline taxes, a portion of the current gas oil and diesel oil taxes and a portion of the current motor vehicle license fees allocated to the Authority by the Commonwealth, (y) all toll revenues of the Authority's traffic facilities financed with Highway Revenue Bonds, and (z) certain investment earnings. *See* 98 Resolution; *id.* §101, "Revenues."

19. Additionally, the following UCC-1 financing statements (the "Financing Statements") were filed with the Department of State of the Commonwealth of Puerto Rico:

- UCC-1 Financing Statement No. 2014003809, dated August 4, 2014;
- UCC-1 Financing Statement No. 2014003810, dated August 4, 2014;
- UCC-1 Financing Statement No. 2014004845, dated September 9, 2014;
- UCC-1 Financing Statement No. 2014004846, dated September 9, 2014;
- UCC-1 Financing Statement No. 2014004847, dated September 9, 2014; and
- UCC-1 Financing Statement No. 2014004848, dated September 9, 2014.

## SUPPORTING DOCUMENTS

20. The documents supporting the Claim include, but are not limited to, the 98 Resolution, the 98 Subordinate Resolution, and the Financing Statements. A true and correct copy of each of these supporting documents is attached as an exhibit to this Claim.

- 6 -

HTA_CONF 00016295

## RESERVATION OF RIGHTS

21.     The Fiscal Agent reserves the right to amend, modify, and/or supplement its Claim and Addendum to Proof of Claim, including in respect of any additional claims arising under or in connection with the Resolutions and related documents.  Nothing in this Claim or Addendum to Proof of Claim shall be deemed a waiver of any rights or remedies that the Fiscal Agent may have under the Resolution and/or in connection with this title III proceeding.  All such rights and remedies are expressly reserved.  This Claim is filed without prejudice to the filing by the Fiscal Agent or any other applicable party of additional proofs of claim with respect to any other liability or indebtedness.

HTA_CONF 00016296

**Exhibit A**

Claim Calculation Detail

| CUSIP | Rate | Maturity | Principal (Maturity Value) | Accrued, Unpaid Interest as of 5/21/2017 |
|---|---|---|---|---|
| **Series 98 SUB** | | | | |
| 745190CN6 | 5.00% | 7/1/2018 | $9,805,000.00 | $680,902.78 |
| 745190CP1 | 5.00% | 7/1/2022 | $15,520,000.00 | $1,077,777.78 |
| 745190CQ9 | 5.00% | 7/1/2028 | $29,770,000.00 | $2,067,361.11 |
| **Subtotals -** | | | $55,095,000.00 | $3,826,041.67 |
| | | | | |
| **Series 2003 SUB** | | | | |
| 745190MF2 | 5.25% | 7/1/2017 | $14,770,000.00 | $300,125.00 |
| 745190MG0 | 4.10% | 7/1/2017 | $500,000.00 | $7,972.22 |
| 745190MH8 | 5.25% | 7/1/2018 | $15,000,000.00 | $306,250.00 |
| 745190MJ4 | 4.20% | 7/1/2018 | $110,000.00 | $1,796.67 |
| 745190MK1 | 5.75% | 7/1/2019 | $11,025,000.00 | $246,531.25 |
| 745190ML9 | 4.75% | 7/1/2019 | $1,320,000.00 | $24,383.33 |
| 745190MM7 | 5.75% | 7/1/2020 | $15,465,000.00 | $345,814.58 |
| 745190MN5 | 5.75% | 7/1/2021 | $16,320,000.00 | $364,933.33 |
| 745190MP0 | 5.75% | 7/1/2022 | $17,045,000.00 | $381,145.14 |
| 745190MQ8 | 4.875% | 7/1/2022 | $225,000.00 | $4,265.63 |
| 745190MR6 | 5.00% | 7/1/2023 | $18,265,000.00 | $355,152.78 |
| 745190MS4 | 5.00% | 7/1/2028 | $105,985,000.00 | $2,060,819.44 |
| **Subtotals -** | | | $215,960,000.00 | $4,399,189.38 |
| **Totals -** | | | **$271,055,000.00** | **$8,225,231.05** |

US_ACTIVE-139805585.5-RSAINVIL

**EXHIBIT B**

<u>98 Resolution</u>

(Attached)

US_ACTIVE-139805585.5-RSAINVIL

HTA_CONF 00016298

# PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

## Resolution No. 98 - 06

### Adopted February 26, 1998

### Authorizing and Securing

### TRANSPORTATION REVENUE BONDS

HTA_CONF 00016299

## TABLE OF CONTENTS

PAGE

### ARTICLE II.

#### AUTHORIZATION, FORM, ISSUANCE, DELIVERY AND REGISTRATION OF BONDS

SECTION 201.  Limitation on issuance of bonds ........................................................ 17
SECTION 202.  Details of bonds; Resolution for benefit of holders of bonds without
              preference .................................................................................... 17
SECTION 203.  Execution of bonds ........................................................................ 18
SECTION 204.  Form of bonds ............................................................................... 19
SECTION 205.  Exchange and registration of transfer of bonds ............................... 32
SECTION 206.  Ownership of bonds ....................................................................... 32
SECTION 207.  Initial issue of Transportation Revenue Bonds (Series A) ............... 32
              Disposition of bond proceeds ........................................................... 35
SECTION 208.  Issuance of additional senior bonds ............................................... 35
SECTION 209.  Issuance of refunding senior bonds................................................ 37
SECTION 210.  Issuance of subordinated bonds..................................................... 42
SECTION 211.  Issuance of refunding subordinated bonds ..................................... 45
SECTION 212.  Temporary bonds .......................................................................... 49
SECTION 213.  Mutilated, destroyed, lost or stolen bonds...................................... 49

### ARTICLE III.

#### REDEMPTION OF BONDS

SECTION 301.  Redemption of bonds ..................................................................... 50
              Selection by Fiscal Agent for partial redemption ............................. 50
SECTION 302.  Redemption notice ......................................................................... 50
SECTION 303.  Effect of calling for redemption...................................................... 51
SECTION 304.  Cancellation of bonds and redeemed.............................................. 51
SECTION 305.  Bonds called for redemption not deemed outstanding...................... 51
SECTION 306.  Delivery of bonds upon partial redemption ..................................... 51

### ARTICLE IV.

#### REVENUES AND FUNDS

SECTION 401.  Senior Bond Sinking Fund .............................................................. 52
              Subordinated Bond Sinking Fund..................................................... 52
SECTION 402.  Deposits of Revenues ..................................................................... 52
              Deposition of balances in 1968 Resolution funds and accounts
SECTION 403.  Applicatioin of moneys in Senior Bond Service Account.................. 55
SECTION 404.  Application of moneys in Senior Bond Redemption Account............. 56
SECTION 405.  Application of moneys in Senior Bond Reserve Account................... 57
SECTION 406.  Application of moneys in Subordinated Bond Service Account ......... 57
SECTION 407.  Application of moneys in Subordinated Bond Redemption Account ... 58
SECTION 408.  Application of moneys in Subordinated Bond Reserve Fund ............. 59

SECTION 409.   Certificates to be filed for withdrawal from Construction Fund,
application of moneys in Construction Fund................................................ 60
SECTION 410.   Pledge of moneys in Senior Bond Service Account, Senior Bond
Redemption Account and Senior Bond Reserve Account ............................ 60
SECTION 411.   Pledge of moneys in Subordinated Bond Service Account,
Subordinated Bond Redemption Account and Subordinated Bond
Reserve Fund ............................................................................................. 61
SECTION 412.   Moneys unclaimed for two years after maturity of bonds ................................ 61
SECTION 413.   Cancellation of bonds upon payment ............................................................... 62
SECTION 414.   Balance in funds to Authority when bonds paid ............................................... 62

## ARTICLE V.

## DEPOSITARIES OF MONEYS, SECURITY FOR
## DEPOSITS AND INVESTMENT OF FUNDS

SECTION 501.   Deposits constitute trust funds ....................................................................... 62
Security for deposits ....................................................................................... 62
SECTION 502.   Investment of moneys .................................................................................... 63
Investments deemed to be part of Fund or Account for which
purchased....................................................................................................
Crediting and charging of interest and profit or loss on investments ................ 62
SECTION 503.   Valuation of investments................................................................................. 64

## ARTICLE VI.

## PARTICULAR COVENANTS

SECTION 601.   Payment of principal, interest and premium..................................................... 64
SECTION 602.   Pledge of revenues ......................................................................................... 65
SECTION 603.   Master plan for constructionof Transportation Facilities and
priorities construction program for five year period ..................................... 65
Five year priorities construction program to be updated each year ................... 66
SECTION 604.   Costs of maintaining Traffic Facilities and Transportation Facilities
to be paid from Construction Fund if not paid from general funds
of Commonwealth ........................................................................................ 65
Annual general evaluation of maintenance of Traffic Facilities and
Transportation Facilities to be made by Transportation Engineers
SECTION 605.   Annual report of Transportation Engineers...................................................... 66
Filing of copies of report................................................................................. 67
Repairs recommended by report to be made .................................................... 67
SECTION 606.   Annual statement concerning Transportation Facilities program to
be submitted to Legislature, Planning Board and others by
Authority ..................................................................................................... 66
SECTION 607.   Authority to keep accurate records and accounts ............................................ 67
Annual Audit................................................................................................... 68
SECTION 608.   Employment of Traffic Engineeers under 1968 Resolution and
Transportation Engineers............................................................................... 67
SECTION 609.   Covenants as to repeal of 1968 Resolution and amendments thereof ............... 67

2

SECTION 610.   Continuation of deposits to 1968 Construction Fund until 1968
                Resolution repealed; prohibition of liens and pledges of 1968
                Construction Fund moneys; exception ........................................ 68
SECTION 611.   Agreement as to application of 1968 Resolution revenues and no
                adverse actions. ..................................................................... 68
SECTION 612.   Restriction of issuance of additional 1968 Resolution Bonds;
                exceptions .............................................................................. 68
SECTION 613.   Rating agencies to be notified of Swap agreements ........................... 68
SECTION 614.   Covenant as to tolls ................................................................. 68
SECTION 615.   Restriction of issuance of obligations by Metropolitan Bus
                Authority ............................................................................... 69

## ARTICLE VII.

### CONCERNING THE FISCAL AGENT

SECTION 701.   Appointment of Fiscal Agent; acceptance of duties ......................... 70
SECTION 702.   Limitations on responsibilities of Fiscal Agent ............................... 70
SECTION 703.   Fiscal Agent not liable for failure of Authority to act ....................... 70
SECTION 704.   Quarterly statements from Fiscal Agent ....................................... 70
SECTION 705.   Fiscal Agent protected in relying on certain documents ..................... 71
SECTION 706.   Qualification of Fiscal Agent ................................................... 71
SECTION 707.   Resignation of Fiscal Agent ..................................................... 72
SECTION 708.   Removal of Fiscal Agent ......................................................... 72
SECTION 709.   Appointment of successor Fiscal Agent ......................................... 72
SECTION 710.   Vesting of rights in successor Fiscal Agent ................................... 73
SECTION 711.   Compensation and indemnification of Fiscal Agent .......................... 73
SECTION 712.   Fiscal Agent under no duty to investigate ...................................... 74
SECTION 713.   Fiscal Agent may employ agents ................................................ 74
SECTION 714.   Fiscal Agent may own bonds .................................................... 74

## ARTICLE VIII.

### SUPPLEMENTAL RESOLUTIONS

SECTION 801.   Restrictions on adoption of supplemental resolutions ....................... 74
                Notice of supplemental resolution ................................................ 76
SECTION 802.   Consent of bondholders .......................................................... 75
SECTION 803.   Supplemental resolution thereafter part of Resolution ....................... 76
SECTION 804.   Modification of rights or obligations of Fiscal Agent or any Paying
                Agent not to be made without consent .......................................... 76
                Fiscal Agent not responsible for propriety of supplemental
                resolutions ............................................................................. 77

## ARTICLE IX.

### SUBORDINATION

SECTION 901.   Subordinated bonds subordinated to senior bonds ........................... 76
SECTION 902.   Distribution of assets upon dissolution, etc. ................................... 77
SECTION 903.   When payments on subordinated bonds permitted ........................... 77
SECTION 904.   Subrogation; obligation and rights remaining unimpaired .................. 77

HTA_CONF 00016302

SECTION 905.   Payments under credit facility, etc. to holders of subordinated bonds
               not subject to rights of holders of senior bonds ............................................ 78
SECTION 906.   When payment by authority required to be paid to holders of senior
               bonds not deemed payment by authority ...................................................... 78
SECTION 907.   Altering senior bonds .................................................................................. 78

### ARTICLE X.

### DEFEASANCE

SECTION 1001.  Bondholders' rights cease upon provision for payment of bonds ...................... 79

### ARTICLE XI.

### MISCELLANEOUS PROVISIONS

SECTION 1101.  Authority may finance transportation facilities by obligations not
               secured by Resolution ................................................................................. 80
SECTION 1102.  Successorship of Authority ............................................................................ 80
SECTION 1103.  Manner of giving notice ................................................................................ 80
SECTION 1104.  Authority, Fiscal Agent and bondholders alone have rights under
               Resolution .................................................................................................. 80
SECTION 1105.  Effect of partial invalidity ............................................................................ 81
SECTION 1106.  Effect of covenants ...................................................................................... 81
SECTION 1107.  Duties of officers and agents of Authority ...................................................... 81
SECTION 1108.  Repeal of inconsistent resolutions ................................................................ 81
SECTION 1109.  Principal amount of capital appreciation bonds to be accreted value
               in certain situations .................................................................................... 81
               Principal amount of capital appreciation and income bonds to be
               appreciated value in certain situations .......................................................... 82
SECTION 1110.  Proof of execution and ownership ................................................................ 81
SECTION 1111.  Resolution effective upon passage ................................................................ 82

# Resolution No. 98 - 06

## A RESOLUTION AUTHORIZING THE ISSUANCE
## OF PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
## TRANSPORTATION REVENUE BONDS

WHEREAS, Act No. 74, approved June 23, 1965, as amended (hereinafter sometimes called the "Enabling Act"), created the Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority") as a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico for the purpose of continuing the government program of providing highways and other means of transportation to facilitate the movement of vehicular traffic, relieve hazards and handicaps on the congested roads and highways of the Commonwealth and to meet the increasing demand for additional transportation facilities resulting from the continuing economic development of the Commonwealth of Puerto Rico; and

4

WHEREAS, by virtue of the Enabling Act, the Authority has, among others, the power

(i) to have perpetual existence as a corporation,

(ii) to have complete control and supervision of any Transportation Facilities owned, operated, constructed or acquired by it under the provisions of the Enabling Act, including without limitation the determination of the site, location, and the establishment, limit and control of points of ingress to and egress from such facilities, and materials of construction and the construction, maintenance, repair and operation thereof,

(iii) to have complete control and supervision over the character of and necessity for all of its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provision of any laws governing the expenditure of public funds,

(iv) to sue and be sued, complain and defend in all courts of justice and administrative bodies,

(v) to make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers,

(vi) to determine, fix, impose, alter and collect tolls or ferriage, rentals, assessments, and other reasonable charges for the use of the Transportation Facilities owned, operated, constructed, acquired or financed by the Authority or for the services rendered thereby. In fixing or altering these charges the Authority shall take into account such factors as will promote the use of the Transportation Facilities owned or operated by it in the broadest and most varied manner economically possible. To fix or alter such charges the Authority shall hold a public hearing of an informative and quasi-legislative character, before the Authority Board, or before any official or officials that the Authority may designate for the purpose. Such hearings shall be announced reasonably in advance, stating the place and time of the hearing and the proposed charges or alteration,

(vii) to borrow money for any of its corporate purposes, and to issue bonds of the Authority in evidence of such indebtedness and to secure payment of such bonds and interest thereon by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth,

(viii) to issue bonds for the purpose of funding, refunding, purchasing, paying or discharging any of its outstanding bonds,

(ix) to construct or reconstruct any traffic or transportation facility or any part or parts thereof, and any additions, improvements or expansions of any traffic or transportation facility of the Authority,

(x) to contribute to the development of a Transportation Plan and, under instructions of the Secretary of Transportation and Public Works, to establish and implement the necessary mechanisms in order to efficiently plan, evaluate and develop the highway and mass transportation system of the Commonwealth, and

(xi) to do all acts or things necessary or desirable to the carrying out of the powers granted to the Authority by the Enabling Act or by any other act of the Legislature of Puerto

5

HTA_CONF 00016304

Rico; provided, however, that neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to clause (vii) of this preamble; and

WHEREAS, by virtue of the Enabling Act, the Secretary of Transportation and Public Works is authorized to enter into agreements with the Authority for the study, design, construction, repair, maintenance, acquisition of properties and easements, and any other matter necessary to carry out the purposes of said Act and the Authority is authorized to enter into agreements under which the Secretary of Transportation and Public Works agrees to pay in whole or in part, the cost of repairs, maintenance and operation of any traffic and transportation facilities financed under the provisions of the Enabling Act with funds of the Commonwealth covered into the public treasury; and

WHEREAS, pursuant to the Enabling Act the Authority has entered into an agreement with the Secretary of Transportation and Public Works pursuant to which the Secretary of Transportation and Public Works has agreed to pay the costs from general funds of the Commonwealth of Puerto Rico which are made available to him for that purpose, of maintaining, repairing and operating certain traffic and transportation facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of the 1968 Resolution (hereinafter mentioned) and this Resolution; and

WHEREAS, by Subtitle B of Act No. 120, approved October 31, 1994, as amended, the proceeds of the sixteen cents a gallon tax imposed on gasoline and one half of the eight cents per gallon tax imposed on gas oil and diesel oil was allocated to the Authority for use for its corporate purposes and expressly authorized the Authority to pledge the proceeds of said sixteen cents a gallon and four cents a gallon tax received by it to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, the tax proceeds so pledged being subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed therefor but only to the extent that the other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose; and

WHEREAS, by Act No. 9, approved August 12, 1982, the proceeds of the $15 increase per vehicle of annual motor vehicle license fees imposed by the Commonwealth was allocated to the Authority for use for its corporate purposes and expressly authorized the Authority to pledge the proceeds of said $15 increase in fees received by it to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, the license fees so pledged being subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed therefor but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose; and

WHEREAS, the Authority for the purpose of continuing the government program of providing highways and other road improvements has heretofore borrowed money and issued its Highway Revenue Bonds, outstanding on the date hereof in the aggregate principal amount of $2,411,955,000, under and pursuant to the provisions of Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended by supplemental resolutions of the Authority adopted on February 17, 1972, October 29, 1990, June 23, 1992, July 15, 1993 (effective September 8, 1993) and August 10, 1993 (said Resolution No. 68-18 as so amended, together with all future amendments and all resolutions supplemental thereto as therein permitted, being herein called the

6

"1968 Resolution") said Highway Revenue Bonds being secured in part by a pledge of the proceeds of the taxes and fees allocated to the Authority by said Act No. 120 and Act No. 9; and

WHEREAS, by virtue of Act No. 1, approved March 6, 1991, the Authority was authorized to undertake transportation projects in addition to those for which Highway Revenue Bonds have heretofore been issued under the 1968 Resolution, including projects for mass transit and similar undertakings for the more efficient movement of people; and

WHEREAS, the 1968 Resolution states that nothing contained therein is to be construed as preventing the Authority from financing any facilities by the issuance of bonds or other obligations which are not secured under the provisions of the 1968 Resolution; and

WHEREAS, based upon surveys, estimates and recommendations, the Authority has found and determined that it is necessary and advisable to provide funds for additional highway and transportation facilities consistent with the broader powers granted to the Authority under said Act No. 1, and has determined that it is necessary to increase its capacity to issue revenue bonds secured as hereinafter provided to provide funds for the foregoing purposes; and

WHEREAS, by Act No. 34, approved July 16, 1997, as amended, the first $120 million of annual proceeds of the tax paid for the use in Puerto Rico of crude oil, unfinished oils or end products derived from oil and any other hydrocarbon mixture was allocated to the Authority for use for its corporate purposes and expressly authorized the Authority to pledge the proceeds of said tax received by it to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, the tax proceeds so pledged being subject to first being applied to the payment and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed therefor but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose; and

WHEREAS, the Authority has determined to pledge the proceeds of the tax allocated to the Authority by said Act No. 34 to secure (with other revenues as hereinafter provided) such revenue bonds; and

WHEREAS, the Authority deems it advisable to make provision for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Resolution for any authorized purpose of the Authority; now, therefore,

BE IT RESOLVED by the Puerto Rico Highways and Transportation Authority:

7

HTA_CONF 00016306

## ARTICLE I.

## DEFINITIONS.

SECTION 101.  In addition to words and terms elsewhere defined in this Resolution, the following words and terms as used in this Resolution shall have the following meanings, unless some other meaning is plainly intended:

The term "Accreted Value" shall mean, with respect to any Capital Appreciation Bond or Capital Appreciation and Income Bond, an amount equal to the principal amount of such Bond on the date of original issuance plus the interest accrued on such Bond from the date of original issuance to the date of computation or the Interest Commencement Date, as the case may be, such interest to accrue at the rate set forth in the resolution of the Authority providing for the issuance of said Bond, but not exceeding the maximum rate permitted by law, compounded periodically at the times provided for in said resolution.

The term "Amortization Requirements" shall mean

(a) with respect to the term bonds issued under the provisions of Section 207 of this Resolution, the following amounts in the following fiscal years, respectively:

(1) $114,360,000 term bonds maturing on July 1, 2028:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---|---|---|---|
| 2019 | $ 9,160,000 | 2024 | $11,600,000 |
| 2020 | 9,600,000 | 2025 | 12,165,000 |
| 2021 | 10,065,000 | 2026 | 12,755,000 |
| 2022 | 10,550,000 | 2027 | 13,375,000 |
| 2023 | 11,065,000 | | |

(2) $200,000,000 term bonds maturing on July 1, 2028:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---|---|---|---|
| 2019 | $16,090,000 | 2024 | $20,290,000 |
| 2020 | 16,855,000 | 2025 | 21,250,000 |
| 2021 | 17,655,000 | 2026 | 22,260,000 |
| 2022 | 18,495,000 | 2027 | 23,315,000 |
| 2023 | 19,370,000 | | |

8

(3) $250,000,000 term bonds maturing on July 1, 2038:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---|---|---|---|
| 2029 | $19,685,000 | 2034 | $25,370,000 |
| 2020 | 20,860,000 | 2035 | 26,640,000 |
| 2021 | 21,905,000 | 2036 | 27,975,000 |
| 2022 | 23,005,000 | 2037 | 29,375,000 |
| 2033 | 24,155,000 | | |

(4) $253,685,000 term bonds maturing on July 1, 2038:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---|---|---|---|
| 2029 | $20,415,000 | 2034 | $25,730,000 |
| 2020 | 21,385,000 | 2035 | 26,955,000 |
| 2021 | 22,400,000 | 2036 | 28,230,000 |
| 2022 | 23,460,000 | 2037 | 29,570,000 |
| 2033 | 24,570,000 | | |

and

(b) with respect to term bonds of any other Series issued under the provisions of this Resolution, the respective amounts which are required in each year to provide for redeeming from time to time under the provisions of this Resolution all of such bonds by their stated maturity as fixed in the resolution providing for the issuance of such bonds.

If during any fiscal year the total principal amount of term bonds of any Series retired by purchase or redemption or called for redemption under the provisions of this Resolution or deemed to have been paid pursuant to Section 1001 of this Resolution shall be in excess of the amount of the Amortization Requirements for the term bonds of such Series for such fiscal year, then the amount of the Amortization Requirements for the term bonds of such Series shall be reduced for such subsequent fiscal years in such amounts aggregating the amount of such excess as shall be determined by the Executive Director in an order filed with the Fiscal Agent on or before the 10th day of July following the close of such fiscal year.

The term "Appreciated Value" shall mean, with respect to any Capital Appreciation and Income Bond, (i) as to the Interest Commencement Date set forth in the resolution providing for the issuance of such Bond, the Accreted Value and (ii) as of any date of computation on and after the Interest Commencement Date, the Accreted Value on the Interest Commencement Date.

The word "bonds" shall mean the bonds issued by the Authority under the provisions of this Resolution.

The term "Capital Appreciation Bonds" shall mean any bonds as to which interest is compounded periodically on each of the applicable dates designated for compounding in the resolution authorizing said Bonds and payable in an amount equal to the then current Accreted Value only at the maturity, earlier redemption or other payment date therefor, all as so designated by such resolution and which may be either serial bonds or term bonds.

9

HTA_CONF 00016308

The term "Capital Appreciation and Income Bonds" shall mean any bonds as to which accruing interest is not paid prior to the interest payment date immediately following the Interest Commencement Date specified in the resolution authorizing such Bonds and the interest on which is compounded periodically on the dates designated in such resolution prior to the Interest Commencement Date for such Capital Appreciation and Income Bonds, and which may be either serial bonds or term bonds.

The term "Construction Fund" shall mean the Puerto Rico Highways and Transportation Authority Transportation Construction Fund, a special fund created and designated by Section 207 of this Resolution.

The term "corporate trust office" shall mean the principal office of the Fiscal Agent in the Borough of Manhattan, City and State of New York, at which, at any particular time, its corporate trust business shall be administered, except that with respect to presentation of bonds for payment or for registration of transfer and exchange, and the location of the bond registration books, such term shall mean the office or agency of the Fiscal Agent in said City at which, at any particular time, its corporate agency business shall be conducted.

The term "Cost of Transportation Facilities" or "cost of Transportation Facilities" shall mean the cost of acquisition and construction of Transportation Facilities and the cost of all labor, materials, machinery and equipment, the cost of all lands, property, rights, easements and franchises acquired, interest prior to and during construction and for any additional period authorized by law if so provided by, and subject to any limitations in, the resolution authorizing the issuance of a Series of bonds, the cost of engineering and legal services, preliminary surveys, or plans and specifications, expenses of administration properly chargeable to such construction or acquisition, legal, architectural and engineering expenses and fees, the cost of audits and of preparing and issuing the bonds, fees and expenses of the Fiscal Agent and consultants, financing charges, taxes or other governmental charges lawfully assessed during construction, claims arising in connection with construction, premiums on insurance in connection with construction, premiums for bond insurance, interest rate insurance or insurance assuring availability of the amounts required to be on deposit in the Senior Bond Reserve Account or any account in the Subordinated Bond Reserve Fund, any amounts required to be deposited in the Senior Bond Reserve Account or any account in the Subordinated Bond Reserve Fund, initial set-up fees and annual fees for any Credit Facility or Liquidity Facility and tender agent fees and fees payable for remarketing bonds supported by any Credit Facility or Liquidity Facility during such period, as may be specified in the resolution authorizing the issuance of such Series of bonds and all other items of expense not elsewhere in this definition specified, incident to the financing or construction of any Transportation Facilities and the placing of the same in operation.

The term "Credit Facility" shall mean an irrevocable letter of credit, policy of municipal bond insurance, guaranty, bond purchase agreement, credit agreement or similar facility in which the entity providing such facility irrevocably agrees to provide funds to make payment of the principal of and redemption premium, if any, and interest on bonds.

The term "crossover refunding bonds" shall mean refunding bonds issued under the provisions of Section 209 hereof which are payable until a date designated in the resolution authorizing their issuance from the investment of the proceeds thereof and payable after such date on a parity with the bonds from moneys in the Sinking Fund and any other available moneys.

10

The term "Enabling Act" shall mean Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as the same may be amended from time to time or any successor legislation by which the authority shall be created and from which it shall derive its powers.

The term "Executive Director" shall mean the Executive Director or the Deputy Executive Director of the Authority for the time being, or if there is no Executive Director or Deputy Executive Director, then any person designated by the Authority to perform the functions of the Executive Director.

The term "Existing Tax and Fee Revenues" shall mean (1) the proceeds of the sixteen cents a gallon tax imposed on gasoline and one-half of the eight cents per gallon tax imposed on gas oil and diesel oil imposed by Subtitle B of Act No. 120, approved October 31, 1994, as amended, and allocated to the Authority by Act No. 223 of November 30, 1995, as amended, and by said Act's predecessor statutes and (2) the proceeds of the $15 increase per vehicle of annual motor vehicle license fees imposed by the Commonwealth of Puerto Rico and allocated to the Authority by Act No. 9, approved August 12, 1982.

The term "Existing Toll Facilities Revenues" shall mean the tolls or other charges imposed by the Authority for the use of any Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution Bonds, including any extensions, betterments or improvements to such Facilities added after the issuance of bonds under the provisions of Section 207 of this Resolution however financed or otherwise paid for.

The term "Fiscal Agent" shall mean the bank or trust company appointed by the Authority and acting as Fiscal Agent pursuant to the provisions of this Resolution, and shall be held and construed to mean the Fiscal Agent for the time being, whether original or successor.

The term "Fiscal Year" shall mean, for the purposes of this Resolution, the period commencing on the first day of July and ending on the last day of June of the following calendar year or any other twelve month period designated by the Authority.

The term "Government Obligations" shall mean (i) direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government, (ii) bonds, debentures or notes issued by any of the following Federal Agencies: Banks for Cooperatives, Federal Intermediate Credit Banks, Federal Home Loan Banks, Export-Import Bank of the United States, Government National Mortgage Association or Federal Land Banks, (iii) obligations issued or guaranteed by an agency of the United States of America or person controlled or supervised by and acting as an instrumentality of the United States of America pursuant to authority granted by the Congress, (iv) municipal obligations, the payment of the principal of and interest and redemption premium, if any, on which are irrevocably secured by obligations described in clause (i) of this definition and which obligations are not subject to redemption prior to the date on which the proceeds attributable to the principal of the obligations are to be used and have been deposited in an escrow account which is irrevocably pledged to the payment of the principal of and interest and redemption premium, if any, on such municipal obligations, and (v) evidences of ownership of proportionate interests in future interest or principal payments on obligations specified in clauses (i), (ii), (iii) and (iv) of this definition held by a bank (including the Fiscal Agent) or trust company as custodian and which underlying obligations are not available to satisfy any claim of the custodian or any person claiming through the custodian or to whom the custodian may be obligated.

11

HTA_CONF 00016310

The term "Initial Transportation Facilities" shall mean the transportation facilities designated as the Initial Transportation Facilities in a resolution of the Authority adopted prior to the issuance of the bonds under the provisions of Section 207 of this Resolution.

The term "Interest Commencement Date" shall mean, with respect to any particular Capital Appreciation and Income Bonds, the date specified in the resolution providing for the issuance of such bonds, after which interest accruing on such bonds shall be payable on a periodic basis prior to maturity, with the first such payment date being the interest payment date immediately succeeding such Interest Commencement Date.

The term "Investment Obligations" shall mean

    (i)    Government Obligations,

    (ii)    direct and general obligations of any state or territory of the United States of America to the payment of the principal of and interest on which the full faith and credit of such state or territory is pledged, provided that such obligations are rated, on the date of investment therein, in any of the three highest rating categories (without regard to any gradations, within any such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services or any successors thereto,

    (iii)    bankers' acceptances, certificates of deposit or time deposits of any bank or national banking association (including the Fiscal Agent), trust company or savings and loan association (including any investment in pools of such bankers' acceptances, certificates of deposit or time deposits), which to the extent that such obligations are not insured by the Federal Deposit Insurance Corporation, are either (A) issued by a bank, trust company or savings and loan association having a combined capital and surplus aggregating at least $50,000,000 or (B) collateralized at all times by such securities as are described in clauses (i) or (ii) above, having a market value at least equal to the principal amount of such bankers' acceptances, certificates of deposit or time deposits (or portion thereof not so insured); provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties,

    (iv)    any repurchase, reverse repurchase or investment agreement with any bank or trust company organized under the laws of any state of the United States or the Commonwealth of Puerto Rico or any national banking association (including the Fiscal Agent), insurance company, or government bond dealer reporting to, trading with, and recognized as a primary dealer by the Federal Reserve Bank of New York and a member of the Security Investors Protection Corporation, which agreement is secured by any one or more of the securities described in clauses (i) or (ii) above, provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties,

    (v)    obligations, whether or not insured, issued by any state or territory of the United States, or any political subdivision, agency or instrumentality thereof which are rated, on the date of investment therein, in one of the

12

HTA_CONF 00016311

three highest rating categories (without regard to any gradations within any such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services or any successors thereto,

(vi) participating shares in a mutual fund or investment pool for local government investment; provided that the investments of such mutual fund or investment pool are rated in one of the three highest rating categories (without regard to any gradations within any such category) by both Moody's Investors Service, Inc. or any successors thereto, and Standard & Poor's Ratings Services or any successors thereto,

(vii) (1) shares of stock in a corporation rated in the highest rating category by Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services or any successors thereto (without regard to gradations within such category) that (A) is a regulated investment company within the meaning of Section 851(a) of the Internal Revenue Code of 1986, as amended, and, meets the requirements of Section 852(a) of said Code for the calendar year; (B) invests all of its assets in obligations described in clauses (i) and (ii) above; and (C) has at least 98% of (I) its gross income derived from interest on, or gain from the sale of or other disposition of, such obligations or (II) the weighted average of its assets is represented by investments in such obligations or (2) money market accounts of the Fiscal Agent or any state or federally chartered bank, banking association, trust company or subsidiary trust company that is rated or whose parent state bank is rated in the highest short-term rating category or in one of the two highest long-term rating categories by Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services or any successors thereto (without regard to any gradations within such category), and

(viii) any other obligations permitted under the laws of the Commonwealth of Puerto Rico which are rated, or which are issued by issuers which are rated, on the date of investment therein, in any of the three highest rating categories (without regard to any gradations within any such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services or any successors thereto, or which are collateralized by Investment Obligations.

The term "Liquidity Facility" shall mean a letter of credit, line of credit, policy of municipal bond insurance, guaranty, bond purchase agreement or similar facility in which the provider of such facility agrees to provide funds to pay the purchase price of bonds which by their terms may be tendered at the option of the holder thereof for payment prior to maturity.

The term "Mass Transit Facilities" shall mean the equipment, omnibus facilities, rail facilities, and real property constituting or to constitute part of, or used or reasonably anticipated to be used in connection with the operation of, any mass transportation facility or system, and related services operated by the Authority directly or by contract, lease or other arrangements entered into by the Authority, as the foregoing may from time to time be augmented or diminished.

13

HTA_CONF 00016312

The term "1968 Construction Fund" shall mean the Puerto Rico Highways and Transportation Authority Construction Fund, a special fund created and designated by the provisions of Section 207 of the 1968 Resolution.

The term "1968 Fiscal Agent" shall mean the fiscal agent under the 1968 Resolution for the time being, whether original or successor.

The term "1968 Resolution" shall mean Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended by supplemental resolutions adopted on February 17, 1972, October 30, 1990, June 23, 1992, July 15, 1993 (effective September 8, 1993) and August 10, 1993, together with all future resolutions supplemental thereto as therein and herein permitted.

The term "1968 Resolution Bonds" shall mean all bonds issued under the 1968 Resolution.

The word "Outstanding" or "outstanding" when used with reference to any bonds shall mean, as of any date of determination, all bonds theretofore issued except:

      (i)     bonds theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for or after cancellation;

      (ii)    bonds which are deemed paid and no longer Outstanding as provided herein;

      (iii)   bonds in lieu of which other bonds have been issued pursuant to the provisions hereof relating to bonds destroyed, mutilated or lost, unless evidence satisfactory to the Fiscal Agent has been received that any such bond is held by a bona fide purchaser;

      (iv)   bonds tendered or deemed tendered pursuant to any tender provision, as further provided in the resolution authorizing such Series of bonds; and

      (v)    for purposes of any consent or other action to be taken hereunder by the holders of a specified percentage of principal amount of bonds, bonds held by or for the account of the Authority.

The term "predecessor bonds" of any particular bond shall mean every previous bond evidencing all or a portion of the same debt as that evidenced by such particular bond; and, for purposes of this definition, any bond delivered under Section 212 or 213 of this Resolution in lieu of a mutilated, destroyed or lost bond shall be deemed to evidence the same debt as the mutilated, destroyed or lost bond.

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under the provisions of this Resolution, shall mean the sum of:

(a) the amount required to pay the interest on all Outstanding bonds of such Series which is payable after July 31 in such fiscal year and on or before July 31 in the following fiscal year,

14

HTA_CONF 00016313

(b) the amount required to pay the principal of the serial bonds of such Series then outstanding which is payable after July 31 in such fiscal year and on or before July 31 in the following fiscal year, and

(c) the Amortization Requirement for the term bonds of such Series for such fiscal year.

The following rules shall apply in determining the amount of the Principal and Interest Requirements for any period:

(i)    in the case of Capital Appreciation Bonds, the Accreted Value of Capital Appreciation Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included when due and payable as part of the principal or Amortization Requirements in accordance with the above provisions;

(ii)    in the case of Capital Appreciation and Income Bonds, the Appreciated Value of Capital Appreciation and Income Bonds becoming due at maturity or by virtue of an Amortization Requirement shall be included when due and payable as part of the principal or Amortization Requirements in accordance with the above provisions;

(iii)    the interest rate on bonds issued with a variable, adjustable, convertible or similar rate of interest shall be the greater of (A)(1) the average rate of interest on such bonds for the preceding twelve months or such shorter period that such bonds shall have been Outstanding, or (2) if such bonds had not been Outstanding prior to the date of calculation, the rate of interest on such bonds on the date of calculation and (B) the lesser of the maximum rate then permitted by law and the maximum rate permitted on such bonds by the resolution authorizing the issuance thereof; provided, however, that if the Authority has notified the Fiscal Agent that a Swap agreement is in effect in respect of such bonds, then for all purposes of this paragraph, except for the purpose of determining the required deposits to the Senior Bond Sinking Fund or the Subordinated Bond Sinking Fund pursuant to Section 401 hereof, the interest rate on such bonds shall be the Swap rate under such Swap agreement; and if such Swap rate is a variable rate, the interest rate on such bonds (except for the purpose specified above in this paragraph) shall be the average Swap rate for the preceding twelve months or such shorter period that the Swap agreement has been in effect, or if such Swap agreement has not been in effect prior to the date of calculation, the Swap rate on the date of calculation;

(iv)    in the case of bonds which by their terms may be tendered at the option of the holder thereof for payment prior to maturity, the tender date or dates shall be ignored if the tender price for such bonds is payable from a Credit Facility or Liquidity Facility and the stated dates for Amortization Requirements and principal payments shall be used; provided, however, that if the issuer of the Credit Facility or Liquidity Facility has advanced funds thereunder and such amount has not been repaid, Principal and Interest Requirements shall include the repayment obligations thereof in accordance with the principal repayment schedule and interest rate or rates specified in the Credit Facility or Liquidity Facility or in the

15

HTA_CONF 00016314

agreement with the Authority providing for the issuance of such instrument;

(v)    in the case of bonds the maturity of which may be extended by and at the option of the holder of the bonds or the Authority, the bonds shall be deemed to mature on the later of the stated maturity date and the date to which such stated maturity date has been extended;

(vi)    in the case of bonds (A) which are expected to be repaid from the proceeds of bonds or other indebtedness or (B) on which interest is payable periodically and for which twenty-five percent (25%) or more of the principal amount matures during any one year and for which no Amortization Requirements have been established, the debt service requirements of the bonds may be excluded and in lieu thereof the bonds shall be treated, for purposes of the computation of Principal and Interest Requirements, as debt securities having a comparable federal tax status as such bonds, maturing in substantially equal annual payments of principal and interest over a period of not more than thirty (30) years from the date of issuance thereof, bearing interest at a fixed rate per annum equal to the average interest rate per annum for such debt securities issued on the date of issuance of the bonds and issued by issuers having a credit rating, issued by Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Ratings Services or any successors thereto, comparable to that of the Authority, as shown by a certificate of an underwriting or investment banking firm experienced in marketing such securities; and

(vii)    if all or a portion of the principal of or interest on a Series of bonds is payable from moneys irrevocably set aside or deposited for such purpose, together with projected earnings thereon to the extent such earnings are projected to be from Investment Obligations irrevocably set aside or deposited for such purpose on the date of computation, such principal or interest shall not be included in determining Principal and Interest Requirements; provided that the above computation shall be supported by a verification report from a nationally recognized independent certified public accountant as to the sufficiency of such moneys set aside and projected earnings.

The term "principal underwriters" shall mean the firm or corporation or the firms or corporations named as principal underwriters in the resolution of the Authority awarding the bonds of each Series. In the event any such underwriter shall retire from active business leaving no successor, the term shall thereafter mean the remaining principal underwriter or underwriters. In the event each such underwriter shall retire from active business leaving no successor, the provisions of this Resolution which relate to the principal underwriters shall no longer be in force. For the purposes of this paragraph any firm or corporation succeeding to the business of any such underwriter by assignment, merger or otherwise shall be deemed to be a principal underwriter.

The term "Record Date" shall mean the 15th day of the calendar month next preceding an interest payment date or such other date as may be designated for any bonds in a resolution adopted by the Authority prior to the issuance of such bonds.

16

HTA_CONF 00016315

The term "Reserve Account Insurance Policy" shall mean an insurance policy, surety bond or other acceptable evidence of insurance, which policy, bond or other evidence of insurance constitutes an unconditional senior obligation of a municipal bond insurer whose policy or bond results in the rating of municipal obligations secured by such policy or bond, at the time of deposit to the credit of the Reserve Account, in either of the two highest rating categories (without regard to any gradations within either such category) of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Ratings Services or any successors thereto.

The term "Reserve Account Letter of Credit" shall mean an irrevocable, transferable letter of credit, which letter of credit constitutes an unconditional senior obligation of a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit, at the time of deposit to the credit of the Reserve Account, in either of the two highest categories (without regard to any gradations within either such category) of either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Ratings Services or any successors thereto.

The term "Responsible Officer" or "Responsible Officers", when used with respect to the Fiscal Agent, shall mean the chairman of the board of directors, any vice chairman of the board of directors, the chairman of the executive committee, the vice chairman of the executive committee, the president, any vice president, the secretary, the treasurer, any trust officer, any assistant vice president, any assistant secretary, any assistant treasurer, any assistant trust officer, or any other officer or assistant officer of the Fiscal Agent customarily performing functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of his knowledge of and familiarity with the particular subject.

"Revenue Fund" shall mean the Puerto Rico Highways and Transportation Authority Revenue Fund, a special fund created and designated by the provisions of Section 401 of this Resolution.

The word "Revenues" shall mean all moneys received by the Authority on account of the crude oil tax allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, all Existing Tax and Fee Revenues upon the repeal and cancellation of the 1968 Resolution, any tolls or other charges imposed by the Authority for the use of any of the Toll Facilities other than Existing Toll Facilities Revenues received by the Authority prior to the repeal and cancellation of the 1968 Resolution, the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on bonds or other obligations of the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of this Resolution, and investment earnings on deposits to the credit of funds and accounts established hereunder, except for the Construction Fund.

The word "Secretary" shall mean the Secretary or any Assistant Secretary of the Authority for the time being, or if there is no Secretary or Assistant Secretary, then any person designated by the Authority to perform the functions of the Secretary.

The term "Secretary of Transportation" shall mean the Secretary of Transportation and Public Works of the Commonwealth from time to time, or such other officer or the board or body succeeding to the powers and principal functions of the Secretary of Transportation and

17

Public Works of the Commonwealth insofar as such powers and principal functions pertain to governance of the Authority.

The term "Senior Bond Redemption Account" shall mean the special account created in the Senior Bond Sinking Fund by the provisions of Section 401 of this Resolution.

The term "Senior Bond Reserve Account" shall mean the special account created in the Senior Bond Sinking Fund by the provisions of Section 401 of this Resolution.

The term "senior bonds" shall mean the bonds issued under Sections 207, 208 and 209 of this Resolution.

The term "Senior Bond Service Account" shall mean the special account created in the Senior Bond Sinking Fund by the provisions of Section 401 of this Resolution.

The term "Senior Bond Sinking Fund" shall mean the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund, a special fund created and designated by Section 401 of this Resolution.

The term "Senior Reserve Requirement" with respect to the senior bonds shall mean the lesser of (i) the maximum Principal and Interest Requirements for any fiscal year on account of the Outstanding senior bonds and (ii) ten (10%) percent of the original principal amount of each Series of senior bonds Outstanding determined on the basis of their initial offering prices to the public.

The term "serial bonds" shall mean the bonds of a Series designated as serial bonds in the resolution authorizing such bonds.

The word "Series" shall mean either the bonds issued under the provisions of Section 207 of this Resolution or the bonds delivered at any one time under the provisions of Sections 208 through 212 of this Resolution.

The term "Subordinated Bond Redemption Account" shall mean the special account created in the Subordinated Bond Sinking Fund by the provisions of Section 401 of this Resolution.

The term "Subordinated Bond Reserve Fund" shall mean the Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Reserve Fund, a special fund created and designated by the provisions of Section 401 of this Resolution.

The term "Subordinated Bond Service Account" shall mean the special account created in the Subordinated Bond Sinking Fund by the provisions of Section 401 of this Resolution.

The term "Subordinated Bond Sinking Fund" shall mean the Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Interest and Sinking Fund, a special fund created and designated by the provisions of Section 401 of this Resolution.

"subordinated bonds" shall mean the bonds issued under Sections 210 and 211 of this Resolution.

18

The term "Subordinated Reserve Requirement" with respect to any Series of subordinated bonds shall mean that amount fixed from time to time by resolution of the Authority as the amount required to be held to the credit of a separate account in the Subordinated Bond Reserve Fund corresponding to such Series. For purposes of determining the amount on deposit to the credit of any such separate account, any agreement between the Fiscal Agent and a financial institution serving as the depository institution of the Commonwealth of Puerto Rico state infrastructure bank (or other similar fund) created by virtue of Section 350 of the National Highway System Designation Act of 1995, as amended (23 U.S.C. Section 101), or any similar federal legislation, pursuant to which agreement such depository institution irrevocably agrees to provide funds to the Fiscal Agent for deposit to the credit of any separate account in the Subordinated Bond Reserve Fund shall be treated as satisfying the applicable Subordinated Reserve Requirement to the extent of the maximum amount of funds so available to be provided to the Fiscal Agent for deposit to the credit of such separate account.

The term "Swap agreement" shall mean an agreement between the Authority and a Swap party whereby the Swap party agrees to pay to the Authority amounts calculated on the basis of all or a portion of the interest on bonds issued hereunder with a variable, adjustable, convertible or similar rate of interest at or prior to the times such interest is due and payable in consideration of the Authority's payment to the Swap party of amounts set forth in the Swap agreement.

The term "Swap party" shall mean a person who is party to a Swap agreement and whose senior obligations are rated at the time of the execution and delivery of such Swap agreement in one of the three highest rating categories (without regard to any gradations within any such category) by (i) Standard & Poor's Ratings Services or any successors thereto and (ii) Moody's Investors Service, Inc. or any successors thereto.

The term "Swap rate" shall mean the fixed rate per annum on the principal amount of bonds issued hereunder with a variable, adjustable, convertible or similar rate of interest covered by a Swap agreement equal to the percentage derived by dividing (i) the sum of the amounts in the last twelve months paid by the Authority in respect of interest on such bonds and to the Swap party less the amount paid to the Authority by the Swap party by (ii) such principal amount of bonds; provided, however, that if such Swap agreement has been in effect for less than twelve months, such percentage shall be multiplied by 360 divided by the number of days between the effective date of such Swap agreement and the date of calculation determined on the basis of 30-day months.

The term "term bonds" shall mean the bonds of a Series designated term bonds by the resolution authorizing such bonds.

The term "this Resolution" shall mean this Resolution No. 98-06, passed and adopted on February 26, 1998, together with all resolutions supplemental hereto duly passed and adopted as herein permitted.

The term "Toll Facilities" shall mean any Traffic Facilities for the use of which the Authority imposes tolls.

The term "Traffic Facilities" shall mean any of the following facilities for which 1968 Resolution Bonds or bonds or other obligations shall be issued by the Authority under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds

19

HTA_CONF 00016318

or other obligations shall not have been reimbursed to the Authority from funds not encumbered by this Resolution or the 1968 Resolution:

(1) roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals and any other land or water facilities necessary or desirable in connection with the movement of persons, freight, vehicles or vessels;

(2) parking lots and structures and other facilities necessary or desirable in connection with parking, loading or unloading of all kinds of vehicles or vessels; and

(3) all property rights, easements, and interests therein necessary or desirable for the construction, maintenance, control, operation or development of such traffic facilities.

The term "Transportation Engineers" shall mean the engineer or engineers or engineering firm or firms or corporation or corporations at the time employed by the Authority under the provisions of Section 608 of this Resolution.

The term "Transportation Facilities" shall mean all Traffic Facilities, all Mass Transit Facilities, any other highway, road, transportation or other facilities or undertakings permitted from time to time by the Enabling Act for which bonds or other obligations shall be issued by the Authority under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to the Authority from funds not encumbered by this Resolution.

SECTION 102. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall include any individual, firm, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

## ARTICLE II.

### AUTHORIZATION, FORM, ISSUANCE,
### DELIVERY AND REGISTRATION OF BONDS.

SECTION 201. No bonds may be issued under the provisions of this Resolution except in accordance with the provisions of this Article. All of the covenants, agreements and provisions of this Resolution shall be for the benefit and security of all and singular the present and future holders of the bonds so issued, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond by reason of priority in the issue, sale or negotiation thereof or otherwise.

SECTION 202. The definitive bonds of each Series issued under the provisions of this Resolution shall be issuable as registered bonds without coupons, shall be in such denominations, shall be numbered, shall be dated, shall be stated to mature, shall bear interest, if any, payable on such date or dates, and shall be made subject to the right of prior redemption, all as provided in the

HTA_CONF 00016319

resolution or resolutions authorizing the issuance of such Series of bonds; except that (i) Capital Appreciation Bonds shall bear interest as described under the defined term Accreted Value, payable only at maturity or upon redemption or other payment thereof, and (ii) Capital Appreciation and Income Bonds, prior to the Interest Commencement Date, shall bear interest as described under the defined term Appreciated Value, payable only on the interest payment date immediately following the Interest Commencement Date and each interest payment date thereafter and other payment at maturity or earlier redemption thereof.

Each bond shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any bond interest is in default, such bond shall bear interest from the date to which interest shall have been paid.

The principal of and the redemption premium, if any, and the interest on the bonds shall be payable in any coin or currency of the United States of America which, at the respective dates of payment thereof, is legal tender for the payment of public and private debts (or such other coin or currency as provided for in the resolution authorizing the issuance of the particular Series of bonds). Except as may otherwise be provided in Section 212 or 213, payment of the interest on the bonds shall be made to the person whose name appears on the bond registration books of the Authority hereinafter provided for as the registered owner thereof (or of one or more predecessor bonds) on the Record Date, such interest to be paid by check mailed to such registered owner at his address as it appears on such registration books or by wire transfer, if so provided in the resolution authorizing such bonds. Interest on any bond shall not be paid in an amount in excess of the amount which causes the effective interest rate on such bond to exceed the maximum legal effective rate per annum and shall be payable as provided herein below. In the event that interest is not punctually paid or duly provided for on any interest payment date, such interest shall forthwith cease to be payable to the registered owner shown on the registration books held by the Fiscal Agent at the close of business on the Record Date preceding such interest payment date and may be paid to the person in whose name such bonds (or one or more predecessor bonds) are registered at the close of business on a special record date for the payment of such defaulted interest to be fixed by the Fiscal Agent, notice having been given by the Fiscal Agent to the registered holder not less than ten (10) days prior to such special record date on a special payment date established by the Fiscal Agent, or may be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the bonds may be listed and upon such notice as may be required by such exchange, or as more fully provided for in the resolution authorizing the issuance of the bonds.

SECTION 203. The bonds shall be signed by or bear the facsimile signatures of the Chairman of the Authority, the Executive Director and the Secretary, and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds. In case any officer whose signature or a facsimile of whose signature shall appear on any bonds shall cease to be such officer before the delivery of such bonds, such signature or facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any bond may be signed by or bear the facsimile signature of such persons as at the actual time of the execution of such bond shall be the proper officers to execute such bond although at the date of such bond such persons may not have been such officers.

Only such of the bonds as shall have endorsed thereon a certificate of authentication substantially in the form herein below set forth, duly executed by the Fiscal Agent, shall be entitled

21

to any benefit or security under this Resolution.  No bond shall be valid or become obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Fiscal Agent, and such certificate of the Fiscal Agent upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Resolution.  The Fiscal Agent's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Fiscal Agent, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time.

SECTION 204.  The bonds and the certificate of authentication to be endorsed on the bonds, shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Resolution:

22

[Form of senior bonds]

No. R__-__                                                          $ _____

United States of America

Commonwealth of Puerto Rico

## PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

Transportation Revenue [Refunding] Bond (Series __)

| Maturity Date | Interest Rate | Cusip No. |
|---------------|---------------|-----------|
|               |               |           |

REGISTERED OWNER:

PRINCIPAL AMOUNT:                          **DOLLARS**

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority), a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on the _____ or _____ next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority, interest on said Principal Amount from the date hereof or from the _____ or _____ next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is a _____ or _____ to which interest shall have been paid, in which case from such date, such interest being payable on _____ and _____ in each year, commencing _____ , _____, at the Interest Rate per annum specified above until payment of said Principal Amount. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivisions shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of revenue bonds of the Authority (herein called the "bonds") designated "Puerto Rico Highways and Transportation Authority Transportation Revenue [Refunding] Bonds (Series __)", aggregating _____ DOLLARS ($_____), consisting of [$_____ bonds maturing in annual installments on July 1 in each of the years _____ to _____, inclusive (herein called the "serial bonds"),] [and of $_____ bonds maturing on July 1, _____ (herein called the "term bonds"),] issued by the Authority for the purpose of [insert purpose]. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional bonds

23

HTA_CONF 00016322

designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds" for any lawful purpose of the Authority and for the purpose of refunding, among others, any bonds issued by the Authority under the provisions of the Resolution or Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended (the "1968 Resolution") (such bonds and the bonds being herein collectively called the "senior bonds").

All of the bonds are issued pursuant to Resolution No. 98-06 adopted by the Authority on February 26, 1998 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the collection and disposition of revenues, the funds charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the corporate trust office of _____, fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the _____.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (the "Revenue Fund"), and, subject to the limitations of the next two sentences of this paragraph, for the deposit to the credit of said special fund of all moneys received by the Authority (a) from the taxes on crude oil and derivative products heretofore allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, (b) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by Subtitle B of Act No. 120, approved October 31, 1994, as amended, (c) from certain receipts of annual motor vehicle license fees allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (d) from any tolls or other charges imposed by the Authority for the use of any Transportation Facilities (other than until the 1968 Resolution is repealed and cancelled, any such Facilities financed under the 1968 Resolution and any extensions, improvements or betterments thereof however financed or otherwise paid for (such Facilities being herein called the "Existing Toll Facilities")) and (e) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution. The proceeds of the taxes on crude oil and derivative products so allocated to the Authority by said Act No. 34, the proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Act No. 120, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose. The 1968 Resolution provides for the prior deposit to the credit of a special fund designated "Puerto Rico Highways and Transportation Authority Construction Fund" (herein called the "1968 Construction Fund") of the moneys referred to in clauses (b), (c) and, with respect to the Existing Toll Facilities,

24

(d) after the required deposits of such moneys have been made to the credit of the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund. In the Resolution, the Authority has covenanted to deposit monthly to the credit of the Revenue Fund until the outstanding 1968 Resolution Bonds (hereinafter mentioned) have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, all unencumbered moneys held to the credit of the 1968 Construction Fund.

The Resolution provides for the creation of another special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Revenue Fund to pay the principal of and the interest on all senior bonds issued under the Resolution as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the premium, if any, and the interest on the senior bonds.

The Authority has heretofore issued under the provisions of the 1968 Resolution Puerto Rico Highways and Transportation Authority Highway Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1968 Resolution, called the "1968 Resolution Bonds"). Until all of the 1968 Resolution Bonds have been paid or provision shall have been made for their payment and the repeal and cancellation of the 1968 Resolution, the moneys referred to in clauses (b), (c) and to the extent therein specified, (d) of the second preceding paragraph are pledged to the extent required to the payment of the principal of and the premium, if any, and the interest on the outstanding 1968 Resolution Bonds.

[Insert applicable terms of redemption]

The moneys in the Sinking Fund available for the purchase or redemption of senior bonds shall be allocated to all series of senior bonds outstanding under the Resolution in the manner provided in the Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Fiscal Agent in such manner as it shall deem fair and appropriate.

At least thirty (30) days before the redemption date of any bonds to be redeemed, whether such redemption be in whole or in part, the Fiscal Agent shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses appearing upon the bond registration books of the Authority. The failure to mail such notice to any registered owner of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other registered owners. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for the redemption of such bonds or portions thereof on such date, and, if sufficient moneys, or certain securities permitted under the Resolution, the principal of and interest on which securities when due will provide sufficient moneys, for the payment of such redemption price and the accrued interest are held by the Fiscal Agent, as provided in the Resolution, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds or such portions shall cease to be entitled to any lien, benefit or security under the Resolution, and the registered owners thereof shall have no rights in respect of such bonds or such portions except to receive payment of the redemption price thereof and the accrued interest so held by the Fiscal Agent and, in the manner

25

provided by the Resolution, bonds for unredeemed portions of bonds. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof, of any authorized denomination or denominations, of the same series and maturity and bearing interest at the same rate as the bonds surrendered for partial redemption will be issued to the registered owner hereof or his legal representative upon the surrender of this bond.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The bonds are issuable only as fully registered bonds in denominations of $5,000 and any multiple thereof. At the corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The transfer of this bond is registrable and this bond may be exchanged by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Fiscal Agent but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate. No fee or service charge shall be made to any bondholder for any such exchange or registration of transfer, but the Authority or the Fiscal Agent may make a reasonable service charge to such bondholder for every such exchange or registration sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.

Subject to the provisions for registration contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As declared by the Enabling Act, this bond shall be negotiable in accordance with the meaning and for all intents and purposes of the negotiable instruments law of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by or to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and [Assistant]

26

Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the ___ day of _____.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
        Secretary of Transportation
        and Public Works

(SEAL)

By: _____
        Executive Director

By: _____
        [Assistant] Secretary

Certificate of Authentication

This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

_____,
        as Fiscal Agent

By: _____
        Authorized Officer

Date of authentication: _____

27

[Form of subordinated bonds]

No. R__-__                                                                    $_____

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

Subordinated Transportation Revenue [Refunding] Bond (Series __)

| Maturity Date | Interest Rate | Cusip No. |
|---|---|---|
|  |  |  |

REGISTERED OWNER:

PRINCIPAL AMOUNT:                                        DOLLARS

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority), a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on the _____ or _____ next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority, interest on said Principal Amount from the date hereof or from the _____ or _____ next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is a _____ or _____ to which interest shall have been paid, in which case from such date, such interest being payable on _____ and _____ in each year, commencing _____, _____, at the Interest Rate per annum specified above until payment of said Principal Amount. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivisions shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of revenue bonds of the Authority (herein called the "bonds") designated "Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue [Refunding] Bonds (Series __)", aggregating _____ DOLLARS ($_____), consisting of [$_____ bonds maturing in annual installments on July 1 in each of the years ____ to ____, inclusive (herein called the "serial bonds"),] [and of $_____ bonds maturing on July 1, ____ (herein called the "term bonds"),] issued by the Authority for the purpose of [insert purpose]. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of

28

HTA_CONF 00016327

additional bonds designated "Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds" for the purpose of _____ (such bonds and the bonds being herein collectively called the "subordinated bonds") and for the purpose of refunding any subordinated bonds issued by the Authority under the provisions of the Resolution. The Resolution also provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of bonds designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds" (such bonds being herein collectively called the "senior bonds").

All of the bonds are issued pursuant to Resolution No. 98-06 adopted by the Authority on February 26, 1998 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the collection and disposition of revenues, the funds charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the corporate trust office of _____, fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (the "Revenue Fund"), and, subject to the limitations of the last sentence of this paragraph and the limitations contained in the next paragraph, for the deposit to the credit of said special fund of all moneys received by the Authority (a) from the taxes on crude oil and derivative products heretofore allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, (b) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by Subtitle B of Act No. 120, approved October 31, 1994, as amended, (c) from certain receipts of annual motor vehicle license fees allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (d) from any tolls or other charges imposed by the Authority for the use of any Transportation Facilities (other than until the 1968 Resolution is repealed and cancelled, any such Facilities financed under the 1968 Resolution and any extensions, improvements or betterments thereof however financed or otherwise paid for (such Facilities being herein called the "Existing Toll Facilities")) and (e) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution. The proceeds of the taxes on crude oil and derivative products so allocated to the Authority by said Act No. 34, the proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Act No. 120, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose.

HTA_CONF 00016328

The Authority has heretofore issued under the provisions of Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended (the "1968 Resolution"), Puerto Rico Highways and Transportation Authority Highway Revenue Bonds (herein with any additional bonds which hereafter may be issued under the provisions of the 1968 Resolution, called the "1968 Resolution Bonds"). The 1968 Resolution  provides for the prior deposit to the credit of a special fund designated "Puerto Rico Highways and Transportation Authority Construction Fund" (herein called the "1968 Construction Fund") of the moneys referred to in the preceding paragraph in clauses (b), (c) and, with respect to the Existing Toll Facilities, (d) after the required deposits of such moneys have been made to the credit of the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund. In the Resolution, the Authority has covenanted to deposit monthly to the credit of the Revenue Fund until the outstanding 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, all unencumbered moneys held to the credit of the 1968 Construction Fund. Until all of the 1968 Resolution Bonds have been paid or provision shall have been made for their payment and the repeal and cancellation of the 1968 Resolution, the moneys referred to in clauses (b), (c) and to the extent therein specified, (d) of the preceding paragraph are pledged to the extent required to the payment of the principal of and the premium, if any, and the interest on the outstanding 1968 Resolution Bonds.

The Resolution provides for the creation of another special fund designated "Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Interest and Sinking Fund" (herein called the "Subordinated Bond Sinking Fund") and for the deposit into the Subordinated Bond Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Revenue Fund after making the required deposits to the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund, a special fund created under the Resolution, to provide for the payment of the principal of and interest on all senior bonds issued under the Resolution as the same become due and payable and the required reserves therefor, to pay the principal of and the interest on all subordinated bonds issued under the Resolution as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the premium, if any, and the interest on the subordinated bonds.

[Insert applicable terms of redemption]

The moneys in the Subordinated Sinking Fund available for the purchase or redemption of subordinated bonds shall be allocated to all series of subordinated bonds outstanding under the Resolution in the manner provided in the Resolution.

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Fiscal Agent in such manner as it shall deem fair and appropriate.

At least thirty (30) days before the redemption date of any bonds to be redeemed, whether such redemption be in whole or in part, the Fiscal Agent shall cause a notice of such redemption to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses appearing upon the bond registration books of the Authority. The failure to mail such notice to any registered owner of bonds or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of bonds of other registered owners. On the date fixed for redemption, notice having been given as aforesaid, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for the

HTA_CONF 00016329

redemption of such bonds or portions thereof on such date, and, if sufficient moneys, or certain securities permitted under the Resolution, the principal of and interest on which securities when due will provide sufficient moneys, for the payment of such redemption price and the accrued interest are held by the Fiscal Agent, as provided in the Resolution, interest on the bonds or the portions thereof so called for redemption shall cease to accrue, such bonds or such portions shall cease to be entitled to any lien, benefit or security under the Resolution, and the registered owners thereof shall have no rights in respect of such bonds or such portions except to receive payment of the redemption price thereof and the accrued interest so held by the Fiscal Agent and, in the manner provided by the Resolution, bonds for unredeemed portions of bonds. If a portion of this bond shall be called for redemption, a new bond or bonds in an aggregate principal amount equal to the unredeemed portion hereof, of any authorized denomination or denominations, of the same series and maturity and bearing interest at the same rate as the bonds surrendered for partial redemption will be issued to the registered owner hereof or his legal representative upon the surrender of this bond.

Upon any payment or distribution of assets of the Authority upon any dissolution or winding up or total or partial liquidation of the Authority, whether in bankruptcy, insolvency or receivership proceedings, or otherwise, the indebtedness evidenced by the subordinated bonds is, to the extent provided in the Resolution, subordinate and subject in right of payment to the prior payment in full of all Senior Indebtedness (as defined in the Resolution), and this bond is issued subject to such provisions and each holder of this bond, by accepting the same, agrees to and shall be bound by such provisions and authorizes the Fiscal Agent in his behalf to take such action as may be necessary and appropriate to effectuate the subordination so provided and appoints the Fiscal Agent his attorney-in-fact for such purpose.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The bonds are issuable only as fully registered bonds in denominations of $5,000 and any multiple thereof. At the corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The transfer of this bond is registrable and this bond may be exchanged by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Fiscal Agent but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond a new bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate. No fee or service charge shall be made to any bondholder for any such exchange or registration of transfer, but the Authority or the Fiscal Agent may make a reasonable service charge to such bondholder for every such exchange or registration sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.

Subject to the provisions for registration contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As declared by the

31

HTA_CONF 00016330

Enabling Act, this bond shall be negotiable in accordance with the meaning and for all intents and purposes of the negotiable instruments law of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by or to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and [Assistant] Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the ____ day of _____.

> PUERTO RICO HIGHWAYS AND
> TRANSPORTATION AUTHORITY
>
> By: _____
> Secretary of Transportation
> and Public Works

(SEAL)

> By: _____
> Executive Director
>
> By: _____
> [Assistant] Secretary

Certificate of Authentication

This is one of the bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

_____,
as Fiscal Agent

32

HTA_CONF 00016331

By: _____
      Authorized Officer

Date of authentication: _____

HTA_CONF 00016332

**[Form of Assignment]**

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto

_____ the within bond and all
rights thereunder, and hereby irrevocably constitutes and appoints _____
attorney to register the transfer of the within bond on the books kept for registration thereof with
full power of substitution in the premises.

Dated: _____

Signature:_____

NOTICE:  The signature on this assignment must
correspond with the name as it appears on the
face of the within bond in every particular,
without alteration or enlargement or any change
whatever and such signature must be guaranteed
by a member firm of the New York Stock
Exchange or a commercial bank or a trust
company.

Social Security Number or
Employer Identification Number
of Transferee:_____

Signature Guaranteed:

34

HTA_CONF 00016333

SECTION 205.  Bonds, upon surrender thereof at the corporate trust office of the Fiscal Agent, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Fiscal Agent, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of bonds of the same Series and maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate.

The Authority shall cause books for the registration of, and for the registration of transfer of, the bonds as provided in this Resolution to be kept by the Fiscal Agent.  The transfer of any bond may be registered only upon surrender thereof at the corporate trust office of the Fiscal Agent, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Fiscal Agent, such registration of transfer to be made on such books.  Upon any such registration of transfer, the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for such bond a new bond or bonds registered in the name of the transferee, of any denomination or denominations authorized by this Resolution, in an aggregate principal amount equal to the principal amount of such bond, of the same Series and maturity and bearing interest at the same rate.  In all cases in which the transfer of bonds shall be registered or bonds shall be exchanged hereunder, the Authority shall execute and the Fiscal Agent shall authenticate and deliver at the earliest practicable time bonds in accordance with the provisions of this Resolution.  All bonds surrendered in any such registration of transfer or exchange shall forthwith be cancelled by the Fiscal Agent.  No fee or service charge shall be made to any bondholder for the privilege of registration of transfer and exchange herein above granted, but any bondholder requesting any such registration of transfer or exchange shall pay any tax, fee or other governmental charge required to be paid with respect thereto.  The Fiscal Agent shall not be required to register the transfer of any bond during the period of fifteen (15) days next preceding the date of first giving notice of redemption of such bond or any portion thereof or after such bond or any portion thereof has been selected for redemption.

SECTION 206.  As to any bond, the person in whose name the same shall be registered shall be deemed and regarded as the absolute owner thereof for all purposes, and payment of or on account of the principal of any such bond shall be made only to or upon the order of the registered owner thereof or his legal representative.  All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond to the extent of the sum or sums so paid.

Any owner of any bond is hereby granted power to transfer absolute title thereto by assignment thereof to a bona fide purchaser for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his assignor or any person in the chain of title and before the maturity of such bond.  Every prior owner of any bond shall be deemed to have waived and renounced all of his equities or rights therein in favor of every such bona fide purchaser, and every such bona fide purchaser shall acquire absolute title thereto and to all rights represented thereby.

SECTION 207.  There shall be initially issued and secured by this Resolution bonds of the Authority in the aggregate principal amount of One Billion One Hundred Twenty-nine Million Six Hundred Forty-three Thousand Seven Hundred Forty Dollars ($1,129,643,740).  Said bonds shall be designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series A)", shall bear interest from their date until their payment at a rate or rates not exceeding the maximum rate then permitted by law and shall be stated to mature (subject to prior redemption as hereinafter provided) as follows:

35

$271,730,000 of said bonds shall be serial bonds and shall be stated to mature in annual installments on July 1 in the years and in the amounts as follows:

| Year of Maturity | Principal Amount | Year of Maturity | Principal Amount |
|---|---|---|---|
| 1999 | $11,980,000 | 2007 | $16,720,000 |
| 2000 | 12,490,000 | 2008 | 17,440,000 |
| 2001 | 13,020,000 | 2009 | 18,310,000 |
| 2002 | 13,530,000 | 2010 | 19,320,000 |
| 2003 | 14,205,000 | 2011 | 20,380,000 |
| 2004 | 14,785,000 | 2012 | 21,500,000 |
| 2005 | 15,395,000 | 2013 | 22,685,000 |
| 2006 | 16,040,000 | 2014 | 23,930,000 |

$39,868,740 of said bonds shall be serial Capital Appreciation Bonds and shall be stated to mature in annual installations on July 1 in the years and in the principal amounts on the date of original issuance as follows:

| Year of Maturity | Original Principal Amount |
|---|---|
| 2015 | $10,845,127.50 |
| 2016 | 10,235,845.00 |
| 2017 | 9,651,307.50 |
| 2018 | 9,136,460.00 |

The remaining $818,045,000 of said bonds shall be term bonds consisting of $114,360,000 and $200,000,000 principal amounts of bonds stated to mature on July 1, 2028 and $250,000,000 and $253,685,000 principal amounts of bonds stated to mature on July 1, 2038.

Each of said bonds shall be executed substantially in the form and manner hereinabove set forth, and shall be deposited with the Fiscal Agent for authentication and delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolution of the Authority fixing the form, denominations and date of said bonds and, subject to the provisions of Article III of this Resolution, the times and prices at which said bonds are to be redeemable and designating the Initial Transportation Facilities, the cost of which facilities shall be paid in whole or in part from the proceeds of said bonds;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding said bonds, specifying the interest rate of each of said bonds and directing the delivery of said bonds to or upon the order of the principal underwriters therein named upon payment of the purchase price therein set forth; and

(c) an opinion of the counsel to the Authority to the effect that

(i)     the issuance of such bonds has been duly authorized and all conditions precedent to the authentication and delivery of such bonds have been duly fulfilled;

36

HTA_CONF 00016335

(ii)    the form and terms of such bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

(iii)    such bonds, when authenticated and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv)    the issuance of such bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(v)    assuming due authentication and delivery of such bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or other public authority which has not been obtained is required for the issuance, authentication and delivery of such bonds pursuant to this Resolution.

When the documents mentioned in clauses (a) to (c), inclusive, of this Section shall have been filed with the Fiscal Agent and when said bonds shall have been executed and authenticated as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters named in the resolution mentioned in clause (b) of this Section, but only upon payment to the Fiscal Agent of the purchase price of said bonds and the accrued interest, if any. The Fiscal Agent shall be entitled to rely upon the resolutions mentioned in clauses (a) and (b) of this Section as to all matters stated therein.

Simultaneously with the delivery of said bonds the Fiscal Agent shall apply the proceeds (including accrued interest and any premium) of said bonds as follows:

(1) Such sum as is required for the purpose shall be applied to the payment of such principal amount of outstanding notes or other obligations, designated by the Executive Director, theretofore issued by the Authority to finance temporarily the cost of the Initial Transportation Facilities, including any unpaid interest thereon.

(2) Such sum as is required for the purpose shall be applied to the refunding of such principal amount of outstanding 1968 Resolution Bonds, designated by the Executive Director, theretofore issued by the Authority including any redemption premium and interest to accrue thereon to the date or dates fixed for redemption.

(3) The amount paid as accrued interest on said bonds, if any, shall be deposited to the credit of the Senior Bond Service Account.

(4) Such sum as is specified in a certificate signed by the Executive Director of the Authority and filed with the Fiscal Agent shall be deposited with Government Development Bank for Puerto Rico for the payment of expenses incident to the financing and the fees and expenses of the Fiscal Agent for its services under Article II of this Resolution, including its services in connection with the acceptance of the trusts hereby created. When all expenses incident to the issuance of such bonds have been paid, any balance remaining of the sum so deposited shall be deposited to the credit of the Construction Fund. In the event that the sum

HTA_CONF 00016336

so deposited is not sufficient to pay all of such expenses and fees the Authority shall pay the balance of the amounts required for such purpose from any available funds.

(5) A sum equal to the Senior Reserve Requirement on account of said bonds shall be deposited with the Fiscal Agent to the credit of the Senior Bond Reserve Account.

(6) Such sum, if any, as is specified by the Executive Director in a certificate filed with the Fiscal Agent shall be deposited to the credit of the Senior Bond Service Account as capitalized interest.

(7) The balance of such proceeds, if any, shall be deposited with the Fiscal Agent to the credit of a special fund hereby created and designated "Puerto Rico Highways and Transportation Authority Transportation Construction Fund" (herein sometimes called the "Construction Fund") and applied by the Authority to the payment of the cost of Transportation Facilities.

SECTION 208.  In addition to the bonds issued under the provisions of Section 207 of this Article, senior bonds of the Authority may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times for any lawful purpose of the Authority.

Before any bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such bonds and fixing the amount and the details thereof, describing in brief and general terms the purpose or purposes of said bonds, and specifying any Reserve Account Insurance Policy or Reserve Account Letter of Credit to be deposited in the Senior Bond Reserve Account in connection with the issuance of such bonds.  The bonds of each Series issued under the provisions of this Section shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law,  shall be stated to mature in such year or years, shall have such Amortization Requirements and may be made redeemable at such times and prices (subject to the provisions of Article III of this Resolution), all as may be provided by the resolution authorizing the issuance of such bonds.

Such bonds shall be executed substantially in the form and manner hereinabove set forth, with such changes as shall be necessary or appropriate to conform to the provisions of the resolution or resolutions authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for authentication and delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolutions mentioned above in this Section;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters or purchasers named therein upon payment of the purchase price therein set forth and the accrued interest, if any, on such bonds;

(c) a certificate, signed by the Executive Director of the Authority not earlier than thirty (30) days prior to the delivery date of such bonds, setting forth:

38

HTA_CONF 00016337

(i)     the amount of Revenues received by the Authority and until the outstanding 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, the amount deposited to the credit of the Revenue Fund in accordance with the third sentence of the second paragraph of Section 401 of this Resolution in each of the fifteen (15) months immediately preceding the month in which such certificate is signed, adjusted (I) to give effect to legislation enacted on or prior to the date of delivery of such bonds that would have increased the Revenues or the amounts deposited to the credit of the Revenue Fund from the 1968 Construction Fund as aforesaid if such legislation (x) had been in effect throughout such fifteen (15) months, (y) allocates additional moneys to the Authority and (z) expressly permits the Authority to pledge to the payment of the bonds issued under the provisions of this Resolution or the 1968 Resolution until the 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution and the Authority has expressly pledged such additional moneys to such payment on or prior to such date of delivery and (II) to reflect the moneys which would have been received if (A) the schedule of tolls in effect on the date of delivery of such bonds had been in effect and (B) the Toll Facilities to be financed in whole or in part with the proceeds of such bonds had been in operation throughout such fifteen (15) months,

(ii)     the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all senior bonds theretofore issued under the provisions of this Resolution and then Outstanding and the senior bonds then requested to be delivered, and

(iii)     the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all senior bonds and subordinated bonds theretofore issued under the provisions of this Resolution and then Outstanding and the senior bonds then requested to be delivered; and

(d) an opinion of counsel to the Authority to the effect that

(i)     the issuance of such bonds has been duly authorized and all conditions precedent to the authentication and delivery of such bonds have been duly fulfilled;

(ii)     the form and terms of such bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

(iii)     such bonds, when authenticated and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv)     the issuance of such bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority

HTA_CONF 00016338

is bound and under which long-term debt of the Authority is outstanding; and

(v)     assuming due authentication and delivery of such bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or other public authority which has not been obtained is required for the issuance, authentication and delivery of such bonds pursuant to this Resolution

When the documents mentioned in clauses (a) to (d), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters or purchasers named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds and the accrued interest, if any, on such bonds. The Fiscal Agent shall be entitled to rely upon such resolutions as to all matters stated therein, but the Fiscal Agent shall not deliver such bonds unless the percentages derived by dividing (X) the sum of the amounts shown in item (i) of the certificate mentioned in clause (c) of this Section for any twelve (12) consecutive months by the amount shown in item (ii) of said clause (c) and (Y) the sum of the amounts shown in item (i) of said certificate for such twelve (12) consecutive months by the amount shown in item (iii) of said clause (c), shall not be less than one hundred fifty per centum (150%) and one hundred per centum (100%), respectively.

The proceeds of such bonds (including accrued interest and any premium) shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the bonds.

SECTION 209. Refunding senior bonds of the Authority may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times, for the purpose of providing funds for refunding at or prior to their maturity or maturities all or any part of (i) the outstanding bonds of any one or more Series, or (ii) any other outstanding debt of the Authority, including in either case the payment of any redemption premium thereon and the interest which will accrue on such bonds or other debt to date or dates fixed for redemption or maturity date or dates occurring prior thereto, for making a deposit to the Senior Bond Reserve Account and for paying any costs of issuance of such bonds.

Before any bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms the purpose or purposes of said bonds, and specifying any Reserve Account Insurance Policy or Reserve Account Letter of Credit to be deposited in the Senior Bond Reserve Account in connection with the issuance of such bonds, and describing the bonds or other debt to be refunded. Such refunding bonds shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature in such year or years, shall have such Amortization Requirements and may be made redeemable at such times and prices (subject to the provisions of Article III of this Resolution) all as may be provided by the resolution authorizing the issuance of such bonds.

Such refunding bonds shall be executed substantially in the form and manner hereinabove set forth with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for authentication and delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

40

(a) a copy, certified by the Secretary of the Authority, of the resolutions mentioned above in this Section;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters named therein upon payment of the purchase price therein set forth and the accrued interest, if any, on such bonds;

(c) an opinion of counsel to the Authority to the effect that

    (i)    the issuance of such bonds has been duly authorized and all conditions precedent to the authentication and delivery of such bonds have been duly fulfilled;

    (ii)    the form and terms of such bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

    (iii)    such bonds, when authenticated and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

    (iv)    the issuance of such bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

    (v)    assuming due authentication and delivery of such bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or other public authority which has not been obtained is required for the issuance, authentication and delivery of such bonds pursuant to this Resolution;

(d) the certificate required by Section 208(c) *mutatis mutandis*; provided that the Authority need not deliver said certificate in case such bonds are to be issued for the purpose of refunding senior bonds of any Series if the Executive Director delivers a certificate to the effect that the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the senior bonds to be Outstanding after the issuance of the bonds then requested to be delivered shall be equal to or less than the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the senior bonds outstanding prior to the issuance of the bonds then requested to be delivered;

(e) in case such bonds are to be issued for the purpose of refunding bonds of any Series, such documents as shall be required by the Fiscal Agent to show that provision has been duly made in accordance with the provisions of this Resolution for the payment of the principal of and the redemption premium, if any, and the interest on all of the bonds to be refunded to and including the respective redemption or maturity dates thereof; and

(f) in case such bonds are to be issued for the purpose of refunding all or part of any other outstanding debt of the Authority, such documents as shall be required by the Fiscal

41

HTA_CONF 00016340

Agent to show that provision has been made in accordance with the provisions of the instruments under which such debt to be refunded was issued for the payment of the principal of and the redemption premium, if any, and the interest on all such debt to be refunded to and including the respective redemption or maturity dates thereof.

When the documents mentioned in clauses (a) to (f), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Resolution, the Fiscal Agent shall deliver such bonds at one time to or upon the order of the principal underwriters or purchasers named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds. The Fiscal Agent shall be entitled to rely upon such resolutions as to all matters stated therein, but the Fiscal Agent shall not deliver such bonds

(I) unless the proceeds (excluding any accrued interest but including any premium) of such refunding bonds plus any other moneys available for such purpose and the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will accrue thereon to the redemption or maturity date or dates occurring prior thereto and the expenses incident to the issuance of such bonds and

(II) if the certificate substantially to the effect required by Section 208(c) has been filed with the Fiscal Agent, and

(A) in case such bonds are to be issued for the purpose of providing funds for refunding at or prior to their maturity or maturities all or any part of the outstanding senior bonds of any one or more Series or any other outstanding debt of the Authority, the percentages derived by dividing (X) the sum of the amounts shown in item (i) of such certificate for any twelve (12) consecutive calendar months by the amount shown in item (ii) of such certificate and (Y) the sum of the amounts shown in item (i) of such certificate for such twelve (12) consecutive months by the amount shown in item (iii) of such certificate, shall be not less than one hundred fifty per centum (150%) and one hundred per centum (100%), respectively, or

(B) in case such bonds are to be issued for the purpose of providing funds for refunding at or prior to their maturity or maturities all or any part of the outstanding subordinated bonds of any one or more Series, the percentage derived by dividing the sum of the amounts shown in item (i) of the certificate substantially to the effect required by Section 208(c) for any twelve (12) consecutive calendar months by the amount shown in item (ii) for such certificate in case all or any part of the outstanding subordinated bonds shall be refunded shall be not less than one hundred fifty per centum (150%) and in case less than all of the outstanding subordinated bonds shall be refunded, the percentage derived by dividing the sum of the amounts shown in item (i) of such certificate for such twelve (12) consecutive calendar months by the amount shown in item (iii) of such certificate shall be not less than one hundred per centum (100%).

Simultaneously with the delivery of such refunding bonds the Fiscal Agent shall

(A) in the case of refunding any senior bonds, upon the written direction of the Executive Director specifying the amount to be withdrawn from each Account, withdraw from (i) the Senior Bond Service Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the interest which is payable on the senior bonds to be refunded on the next interest payment date and on account of the next maturing installment of principal of the senior bonds to be refunded, (ii)

42

the Senior Bond Redemption Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the current Amortization Requirement for the senior bonds to be refunded less any amount applied to the retirement of the senior bonds of the Series to be refunded pursuant to the provisions of Section 404 of this Resolution and (iii) the Senior Bond Reserve Account (a) an amount not in excess of the amount held to the credit of such Account attributable to the senior bonds to be refunded and (b) notwithstanding the provisions of Section 405 hereof, an amount (not in excess of the amount in such Account) in excess of the Senior Reserve Requirement determined after giving effect to the withdrawal of the amount mentioned in clause (a) of this subparagraph (A), the issuance of the refunding bonds and the retirement of the senior bonds to be refunded and

(B) in case of refunding any subordinated bonds, upon the written direction of the Executive Director specifying the amount to be withdrawn from each Account, withdraw from (i) the Subordinated Bond Service Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the interest which is payable on the subordinated bonds to be refunded on the next interest payment date and on account of the next maturing installment of principal of the subordinated bonds to be refunded, (ii) the Subordinated Bond Redemption Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the current Amortization Requirement for the subordinated bonds to be refunded less any amount applied to the retirement of the subordinated bonds of the Series to be refunded pursuant to the provisions of Section 407 of this Resolution and (iii) the Subordinated Bond Reserve Account (a) an amount not in excess of the amount held to the credit of such Account attributable to the subordinated bonds to be refunded and (b) notwithstanding the provisions of Section 408 hereof, an amount (not in excess of the amount in such Account) in excess of the Subordinated Reserve Requirement determined after giving effect to the withdrawal of the amount mentioned in clause (a) of this subparagraph (B), the issuance of the refunding senior bonds and the retirement of the subordinated bonds to be refunded.

Any amount so withdrawn, the proceeds (excluding accrued interest but including any premium) of such refunding bonds and any other moneys which have been made available to the Fiscal Agent for such purpose shall be held by the Fiscal Agent in trust for the sole and exclusive purpose of paying the principal of and redemption premium and interest on the obligations to be refunded. Moneys so held in trust in respect of the refunding of outstanding bonds of any Series shall, as nearly as may be practicable and reasonable, be invested and reinvested by the Fiscal Agent at the direction of the Authority in Government Obligations which shall mature, or which shall be subject to redemption at the option of the holder thereof, not later than the respective dates when the moneys so held will be required for the purposes intended. The Fiscal Agent shall not be liable or responsible for any loss resulting from any such investment made in good faith and without gross negligence. Any balance of the moneys so held in trust which balance shall remain after the payment in full of the principal of and redemption premium, if any, and the interest on the obligations to be refunded shall be deposited to the credit of the Senior Bond Reserve Account.

Any balance of such proceeds as shall be specified by the Executive Director in a certificate filed with the Fiscal Agent shall be (x) deposited with Government Development Bank for Puerto Rico for payment of expenses incident to the issuance of such refunding bonds, including the fees and expenses of the Fiscal Agent for its services under Article II of this Resolution and (y) deposited with the Fiscal Agent in the Senior Bond Reserve Account so that, together with other funds of the Authority available therefor, the sum then on deposit to the credit of the Senior Bond

43

Reserve Account, together with any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit therein, shall be equal to the Senior Reserve Requirement. Any balance of the sum so deposited with Government Development Bank for Puerto Rico which shall remain after the payment of such expenses and fees shall be deposited to the credit of the Senior Bond Reserve Account. In the event that the sum so deposited is not sufficient to pay all of such expenses, the Authority shall pay the balance of the amounts required for such purpose from any available funds.

The amount paid as accrued interest on such refunding bonds shall be deposited to the credit to the Senior Bond Service Account.

Crossover refunding senior bonds may be issued under and secured by this Resolution, subject to the conditions hereinabove provided in this Section for the issuance of refunding bonds and for the same purposes as such refunding bonds; provided, however:

(A) the resolution authorizing the issuance of such crossover refunding subordinated bonds shall fix the date (the "crossover date") on which the obligations to be refunded shall be paid or redeemed;

(B) the certificate of the Executive Director of the Authority as to the reduction in maximum Principal and Interest Requirements mentioned in clause (d) above shall relate only to the Principal and Interest Requirements on such crossover refunding bonds and other obligations to be outstanding after the crossover date;

(C) there shall be delivered to the Fiscal Agent a report or other document furnished by or on behalf of the Authority to show that the moneys and investments in the special redemption fund referred to below will be sufficient to pay when due (i) all principal and interest on such crossover refunding subordinated bonds maturing on and prior to the crossover date and (ii) the principal or redemption price (including any applicable premium) on the crossover date on the obligations to be refunded; and

(D) the proceeds of such crossover refunding senior bonds (including accrued interest and any premium) and any other moneys provided by the Authority for such purpose shall be applied by the Fiscal Agent as follows:

(i) Such amount of the proceeds as is specified by the Executive Director of the Authority in a certificate filed with the Fiscal Agent shall be held by the Fiscal Agent in a special redemption fund appropriately designated for the exclusive purposes of paying the principal of and interest on such crossover refunding senior bonds maturing on and prior to the crossover date and paying the principal of and redemption premium, if any, and interest on the obligations to be refunded on the crossover date. Moneys held for the credit of such redemption fund shall, as nearly as may be practicable and reasonable, be invested and reinvested by the Fiscal Agent at the direction of the Authority in Government Obligations, which shall mature, or which shall be subject to redemption at the option of the holder thereof not later than the respective dates when the moneys held for the credit of such redemption fund will be required for the purposes intended. Prior to the crossover date income derived from the investment of moneys held to the credit of such special redemption fund shall be credited to such fund and applied to the payment of the maturing principal of and interest on such crossover refunding senior bonds, and thereafter such income and other moneys held to the credit of such special redemption fund shall be

44

applied to the payment of the obligations to be refunded. The Fiscal Agent shall not be liable or responsible for any loss in any such redemption fund resulting from any such investment made in good faith and without gross negligence. Any balance of the funds which shall remain in said special redemption fund after the payment in full of the principal of and redemption premium, if any, and the interest on such obligations to be refunded shall be deposited to the credit of the Senior Bond Reserve Account.

(ii)    The provisions of clauses (x) and (y) in the second preceding paragraph above shall apply to crossover refunding subordinated bonds.

(iii)    The provisions of the fourth preceding paragraph of this Section shall not apply to crossover refunding senior bonds.

Prior to the crossover date the provisions of Sections 401, 403, 404, 405, 409, 410, 411 and 601 shall not apply to such crossover refunding senior bonds.

SECTION 210. Subordinated bonds of the Authority may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times for the purpose of paying all or a portion of the Cost of any Transportation Facilities falling within the definition of "Federal-aid highway" or "capital projects" under Section 101 of Title 23 and Section 5302 of Title 49, respectively, of the United States Code, as such definitions may be amended from time to time, or otherwise eligible for federal assistance to defray (directly or indirectly) a portion of such Cost, including the repayment of moneys advanced for paying such Cost, and if deemed necessary by the Authority, the payment of the interest to accrue on such moneys advanced to the date of such payment, and for providing moneys for deposit to the credit of the appropriate account in the Subordinated Bond Reserve Fund.

Before any bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such bonds and fixing the amount and the details thereof, describing in brief and general terms the purpose or purposes of said bonds, and specifying any Reserve Account Insurance Policy or Reserve Account Letter of Credit to be deposited in the account corresponding to such bonds in the Subordinated Bond Reserve Fund in connection with the issuance of such bonds. The bonds of each Series issued under the provisions of this Section shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature in such year or years, shall have such Amortization Requirements and may be made redeemable at such times and prices (subject to the provisions of Article III of this Resolution), all as may be provided by the resolution authorizing the issuance of such bonds.

Such bonds shall be executed substantially in the form and manner hereinabove set forth, with such changes as shall be necessary or appropriate to conform to the provisions of the resolution or resolutions authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for authentication and delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolutions mentioned above in this Section;

45

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters named therein upon payment of the purchase price therein set forth and the accrued interest, if any, on such bonds;

(c) a certificate, signed by the Executive Director of the Authority not earlier than thirty (30) days prior to the delivery date of such bonds, setting forth:

   (i)    the amount of Revenues received by the Authority and until the outstanding 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, the amount deposited to the credit of the Revenue Fund in accordance with the third sentence of the second paragraph of Section 401 of this Resolution in each of the fifteen (15) months immediately preceding the month in which such certificate is signed, adjusted (I) to give effect to legislation enacted on or prior to the date of delivery of such bonds that would have increased the Revenues or the amounts deposited to the credit of the Revenue Fund from the 1968 Construction Fund as aforesaid if such legislation (x) had been in effect throughout such fifteen (15) months, (y) allocates additional moneys to the Authority and (z) expressly permits the Authority to pledge to the payment of the bonds issued under the provisions of this Resolution or the 1968 Resolution until the 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution and the Authority has expressly pledged such additional moneys to such payment on or prior to such date of delivery and (II) to reflect the moneys which would have been received if (A) the schedule of tolls in effect on the date of delivery of such bonds had been in effect and (B) the Toll Facilities to be financed in whole or in part with the proceeds of such bonds had been in operation throughout such fifteen (15) months, and

   (ii)   the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all senior bonds and subordinated bonds theretofore issued under the provisions of this Resolution and then Outstanding and the subordinated bonds then requested to be delivered; and

(d) an opinion of counsel to the Authority to the effect that

   (i)    the issuance of such bonds has been duly authorized and all conditions precedent to the authentication and delivery of such bonds have been duly fulfilled;

   (ii)   the form and terms of such bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

   (iii)  such bonds, when authenticated and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

46

(iv)    the issuance of such bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(v)    assuming due authentication and delivery of such bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or other public authority which has not been obtained is required for the issuance, authentication and delivery of such bonds pursuant to this Resolution

When the documents mentioned in clauses (a) to (d), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters or purchasers named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds and the accrued interest, if any, on such bonds. The Fiscal Agent shall be entitled to rely upon such resolutions as to all matters stated therein, but the Fiscal Agent shall not deliver such bonds unless the percentage derived by dividing the sum of the amounts shown in item (i) of the certificate mentioned in clause (c) of this Section for any twelve (12) consecutive months by the amount shown in item (ii) of said clause (c) shall not be less than one hundred twenty-five per centum (125%).

The proceeds of such bonds (including accrued interest and any premium) shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the bonds.

SECTION 211. Refunding subordinated bonds of the Authority may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times, for the purpose of providing funds for refunding at or prior to their maturity or maturities all or any part of the outstanding subordinated bonds of any one or more Series, including the payment of any redemption premium thereon and the interest which will accrue on such bonds to date or dates fixed for redemption or maturity date or dates occurring prior thereto, for making a deposit to the Subordinated Bond Reserve Account and for paying any costs of issuance of such bonds.

Before any bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such bonds, fixing the amount and the details thereof, describing in brief and general terms the purpose or purposes of said bonds, and specifying any Reserve Account Insurance Policy or Reserve Account Letter of Credit to be deposited in the account corresponding to such bonds in the Subordinated Bond Reserve Fund in connection with the issuance of such bonds, and describing the subordinated bonds to be refunded. The bonds of each Series of refunding bonds shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature in such year or years, shall have such Amortization Requirements and may be made redeemable at such times and prices (subject to the provisions of Article III of this Resolution) all as may be provided by the resolution authorizing the issuance of such bonds.

Such refunding bonds shall be executed substantially in the form and manner hereinabove set forth with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for

47

authentication and delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolutions mentioned above in this Section;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters named therein upon payment of the purchase price therein set forth and the accrued interest, if any, on such bonds;

(c) an opinion of counsel to the Authority to the effect that

(i) the issuance of such bonds has been duly authorized and all conditions precedent to the authentication and delivery of such bonds have been duly fulfilled;

(ii) the form and terms of such bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

(iii) such bonds, when authenticated and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv) the issuance of such bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority outstanding; and

(v) assuming due authentication and delivery of such bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or other public authority which has not been obtained is required for the issuance, authentication and delivery of such bonds pursuant to this Resolution;

(d) the certificate required by Section 210(c) *mutatis mutandis*; provided that the Authority need not deliver said certificate in case such bonds are to be issued for the purpose of refunding subordinated bonds of any Series if the Executive Director delivers a certificate to the effect that the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the subordinated bonds to be Outstanding after the issuance of the subordinated bonds then requested to be delivered shall be equal to or less than the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the subordinated bonds outstanding prior to the issuance of the subordinated bonds then requested to be delivered; and

(e) such documents as shall be required by the Fiscal Agent to show that provision has been duly made in accordance with the provisions of this Resolution for the payment of the principal of and the redemption premium, if any, and the interest on all of the subordinated bonds to be refunded to and including the respective redemption or maturity dates thereof.

48

HTA_CONF 00016347

When the documents mentioned in clauses (a) to (e), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and authenticated as required by this Resolution, the Fiscal Agent shall deliver such bonds at one time to or upon the order of the principal underwriters or purchasers named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds. The Fiscal Agent shall be entitled to rely upon such resolutions as to all matters stated therein, but the Fiscal Agent shall not deliver such bonds unless (I) the proceeds (excluding accrued interest but including any premium) of such refunding bonds plus any other moneys available for such purpose and the principal of and the interest on the investment of such proceeds or any such moneys, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will accrue thereon to the redemption or maturity date or dates occurring prior thereto and the expenses incident to such financing and (II) if the certificate substantially to the effect required by Section 210(c) has been filed with the Fiscal Agent, the percentage derived by dividing the sum of the amounts shown in item (i) of such certificate for any twelve (12) consecutive calendar months by the amount shown in item (ii) of such certificate shall be not less than one hundred twenty-five per centum (125%).

Simultaneously with the delivery of such refunding bonds the Fiscal Agent shall upon the written direction of the Executive Director specifying the amount to be withdrawn from each account, withdraw from (i) the Subordinated Bond Service Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the interest which is payable on the subordinated bonds to be refunded on the next interest payment date and on account of the next maturing installment of principal of the subordinated bonds to be refunded, (ii) the Subordinated Bond Redemption Account an amount not in excess of the amount deposited to the credit of such Account under the provisions of Section 401 of this Resolution on account of the current Amortization Requirement for the subordinated bonds to be refunded less any amount applied to the retirement of the subordinated bonds of the Series to be refunded pursuant to the provisions of Section 407 of this Resolution and (iii) the account(s) in the Subordinated Bond Reserve Fund corresponding to the subordinated bonds to be refunded (a) an amount not in excess of the amount held to the credit of such account(s) attributable to the subordinated bonds to be refunded and (b) notwithstanding the provisions of Section 408 hereof, an amount (not in excess of the amount in such account(s)) in excess of the corresponding Subordinated Reserve Requirement determined after giving effect to the withdrawal of the amount mentioned in clause (a) of this sentence, the issuance of the refunding subordinated bonds and the retirement of the corresponding subordinated bonds to be refunded.

Any amount so withdrawn, the proceeds (excluding accrued interest but including any premium) of such refunding bonds and any other moneys which have been made available to the Fiscal Agent for such purpose shall be held by the Fiscal Agent in trust for the sole and exclusive purpose of paying the principal of and redemption premium and interest on the subordinated bonds to be refunded. Moneys so held in trust in respect of the refunding of outstanding subordinated bonds of any Series shall, as nearly as may be practicable and reasonable, be invested and reinvested by the Fiscal Agent at the direction of the Authority in Government Obligations which shall mature, or which shall be subject to redemption at the option of the holder thereof, not later than the respective dates when the moneys so held will be required for the purposes intended. The Fiscal Agent shall not be liable or responsible for any loss resulting from any such investment made in good faith and without gross negligence. Any balance of the moneys so held in trust which balance shall remain after the payment in full of the principal of and redemption premium, if any, and the interest on the subordinated bonds to be refunded shall be deposited to the credit of the appropriate account in the Subordinated Bond Reserve Fund.

49

HTA_CONF 00016348

Any balance of such proceeds as shall be specified by the Executive Director in a certificate filed with the Fiscal Agent shall be (x) deposited with Government Development Bank for Puerto Rico for payment of expenses incident to the issuance of such refunding subordinated bonds, including the fees and expenses of the Fiscal Agent for its services under Article II of this Resolution and (y) deposited with the Fiscal Agent in the account in the Subordinated Bond Reserve Fund to which such refunding subordinated bonds relate so that, together with other funds of the Authority available therefor, the sum then on deposit to the credit of such account, together with any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit therein, shall be equal to the applicable Subordinated Reserve Requirement. Any balance of the sum so deposited with Government Development Bank for Puerto Rico which shall remain after the payment of such expenses and fees shall be deposited to the credit of such account in the Subordinated Bond Reserve Fund. In the event that the sum so deposited is not sufficient to pay all of such expenses, the Authority shall pay the balance of the amounts required for such purpose from any available funds.

The amount paid as accrued interest on such refunding bonds shall be deposited to the credit to the Subordinated Bond Service Account.

Crossover refunding subordinated bonds may be issued under and secured by this Resolution, subject to the conditions hereinabove provided in this Section for the issuance of refunding subordinated bonds and for the same purposes as such refunding bonds; provided, however:

(A) the resolution authorizing the issuance of such crossover refunding subordinated bonds shall fix the date (the "crossover date") on which the subordinated bonds to be refunded shall be paid or redeemed;

(B) the certificate of the Executive Director of the Authority as to the reduction in maximum Principal and Interest Requirements mentioned in clause (d) above shall refer only to the Principal and Interest Requirements on such crossover refunding subordinated bonds and other subordinated bonds to be outstanding after the crossover date;

(C) there shall be delivered to the Fiscal Agent a report or other document furnished by or on behalf of the Authority to show that the moneys and investments in the special redemption fund referred to below will be sufficient to pay when due (i) all principal and interest on such crossover refunding subordinated bonds maturing on and prior to the crossover date and (ii) the principal or redemption price (including any applicable premium) on the crossover date on the subordinated bonds to be refunded; and

(D) the proceeds of such crossover refunding subordinated bonds (including accrued interest and any premium) and any other moneys provided by the Authority for such purpose shall be applied by the Fiscal Agent as follows:

(i)     Such amount of the proceeds as is specified by the Executive Director of the Authority in a certificate filed with the Fiscal Agent shall be held by the Fiscal Agent in a special redemption fund appropriately designated for the exclusive purposes of paying the principal of and interest on such crossover refunding subordinated bonds maturing on and prior to the crossover date and paying the principal of and redemption premium, if any, and interest on the subordinated bonds to be refunded on the crossover date. Moneys held for the credit of such redemption fund shall, as nearly as may be practicable and reasonable, be invested and reinvested by the Fiscal Agent at the direction of the Authority in Government

50

Obligations, which shall mature, or which shall be subject to redemption at the option of the holder thereof not later than the respective dates when the moneys held for the credit of such redemption fund will be required for the purposes intended. Prior to the crossover date income derived from the investment of moneys held to the credit of such special redemption fund shall be credited to such fund and applied to the payment of the maturing principal of and interest on such crossover refunding subordinated bonds, and thereafter such income and other moneys held to the credit of such special redemption fund shall be applied to the payment of the subordinated bonds to be refunded. The Fiscal Agent shall not be liable or responsible for any loss in any such redemption fund resulting from any such investment made in good faith and without gross negligence. Any balance of the funds which shall remain in said special redemption fund after the payment in full of the principal of and redemption premium, if any, and the interest on such subordinated bonds to be refunded shall be deposited to the credit of the appropriate account in the Subordinated Bond Reserve Fund.

(ii)     The provisions of clauses (x) and (y) in the second preceding paragraph above shall apply to crossover refunding senior bonds.

(iii)    The provisions of the fourth preceding paragraph of this Section shall not apply to crossover refunding subordinated bonds.

Prior to the crossover date the provisions of Sections 401, 406, 407, 408, 409, 410, 411 and 601 shall not apply to such crossover refunding subordinated bonds.

SECTION 212. Until the definitive bonds are ready for delivery, there may be executed, and upon request of the Executive Director of the Authority, the Fiscal Agent shall deliver, in lieu of definitive bonds and subject to the same limitations and conditions except as to identifying numbers, temporary printed, engraved, lithographed or typewritten bonds in such denominations as the Authority shall determine, substantially of the tenor hereinabove set forth, and with appropriate omissions, insertions and variations as may be required. The Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Fiscal Agent without unreasonable delay, and the Fiscal Agent, upon presentation to it of any temporary bond shall cancel the same and authenticate and deliver, in exchange therefor, at its corporate trust office, without expense to the holder, a definitive bond or bonds of the same Series, in the same aggregate principal amount, maturing on the same date and bearing interest at the same rate as the temporary bond surrendered. Until so exchanged, the temporary bonds shall in all respects be entitled to the same benefits of this Resolution as the definitive bonds to be issued and authenticated hereunder, and interest on such temporary bonds, when payable, if the definitive bonds shall not be ready for exchange, shall be paid on presentation of such temporary bonds and notation of such payment shall be endorsed thereon.

SECTION 213. In case any bond issued hereunder shall become mutilated or be destroyed or lost, then, in the absence of notice to the Authority or the Fiscal Agent that such lost bond has been acquired by a bona fide purchaser, the Authority shall cause to be executed, and the Fiscal Agent shall authenticate and deliver, a new bond of like date, Series, maturity and tenor in exchange and substitution for and upon the cancellation of such mutilated bond or in lieu of and in substitution for such bond destroyed or lost, upon the holder's paying the reasonable expenses and charges of the Authority and the Fiscal Agent, and any governmental charge, in connection therewith and, in

HTA_CONF 00016350

the case of a bond destroyed or lost, his filing with the Fiscal Agent evidence satisfactory to it and to the Authority that such bond was destroyed or lost, and of his ownership thereof, and furnishing the Authority and the Fiscal Agent with indemnity satisfactory to them. Every substitute bond issued pursuant to the provisions of this Section shall constitute an original additional contractual obligation of the Authority, whether or not the destroyed or lost bond shall be found at any time, or be enforceable by anyone, and shall be entitled to all the benefits of this Resolution equally and proportionately with any and all other bonds duly issued under this Resolution to the same extent as the bonds in substitution for which such bonds were issued.

In case any mutilated, destroyed or lost bond has become or is about to become due and payable, the Authority in its discretion, instead of issuing a new bond, may pay such bond.

## ARTICLE III.

## REDEMPTION OF BONDS.

SECTION 301. The bonds of each Series may be made subject to redemption, either in whole or in part, and at such times and prices, all as may be provided by resolution adopted by the Authority prior to the issuance of such bonds.

If less than all of the bonds of a Series of any one maturity shall be called for redemption, the particular bonds or portions of bonds to be redeemed shall be selected by the Fiscal Agent in such manner as the Fiscal Agent in its discretion may determine to be appropriate and fair; provided, however, that the portion of any bond of any Series to be redeemed shall be in the principal amount equal to the lowest denomination authorized for such Series or some multiple thereof, and that, in selecting bonds for redemption, the Fiscal Agent shall treat each bond as representing that number of bonds which is obtained by dividing the principal amount of such bond by the amount of such lowest authorized denomination.

SECTION 302. At least thirty (30) days before the redemption date, the Fiscal Agent shall cause a notice of any such redemption, either in whole or in part, signed in the name of the Authority by the Fiscal Agent, to be mailed, first-class, postage prepaid, to all owners of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided. Each such notice shall set forth (1) the date fixed for redemption, (2) the place or places at which payment will be made, (3) the redemption price to be paid, (4) if less than all of the bonds of a Series then outstanding shall be called for redemption, the maturities and numbers of such bonds, and (5) that on such date fixed for redemption the redemption price will become due and payable upon each bond called for redemption and that interest thereon shall cease to accrue from and after said date and shall otherwise comply with Securities Exchange Act of 1934 Release No. 34-23856, dated December 3, 1986 (the "Redemption Release"). In addition, the Fiscal Agent shall cause a copy of the above notice of redemption to be sent to the persons specified in Sections B and D of the Redemption Release at least two business days before notice is given in accordance with the preceding sentence. In case any bond is to be redeemed in part only, the notice of redemption which relates to such bond shall state also the portion of the principal amount to be redeemed and that on or after the redemption date, upon surrender of such bond, a new bond or bonds, of the same Series and maturity, bearing interest at the same rate and in principal amount equal to the unredeemed portion of such bond will be issued. Failure to comply with the requirements of the Redemption Release shall not affect the validity of the proceedings for the redemption of any bonds, and failure to mail such notice to any holder or any defect in any notice so mailed shall not affect the validity of the proceedings for the redemption of the bonds of any other holders.

52

HTA_CONF 00016351

SECTION 303.  On the date so designated for redemption, notice having been given in the manner and under the conditions hereinabove provided, the bonds or portions of bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, and, if sufficient moneys, or Government Obligations, the principal of and the interest on which when due will provide sufficient moneys, for payment of the redemption price are held in separate accounts by the Fiscal Agent in trust for the holders of the bonds or portions thereof to be redeemed, as provided in this Resolution, then on and after such date (unless there shall be a default in the payment of the principal and premium, if any, plus accrued interest, if any) interest on the bonds or portions thereof so called for redemption shall cease to accrue and the owners of such bonds or portions thereof shall have no rights in respect thereof except to receive payment of the redemption price thereof and accrued interest, if any, and, to the extent provided in Section 306 hereof, to receive bonds for any unredeemed portions of bonds.

SECTION 304.  Bonds so called for redemption, presented and surrendered, shall be cancelled upon the surrender thereof.

SECTION 305.  In the event that sufficient moneys or Government Obligations the principal of and the interest on which when due will provide sufficient moneys are held in separate accounts by the Fiscal Agent in trust for the payment of (i) the principal, any redemption premium and interest to accrue to the redemption date of all bonds which have been duly called for redemption under the provisions of this Article or with respect to which irrevocable instructions to call for redemption have been given to the Fiscal Agent in form satisfactory to it, and (ii) the principal of all bonds, if any, refunded under this Resolution which mature prior to the earliest redemption date of the bonds subject to redemption, and the interest to accrue on such bonds to the maturity date or dates thereof, such bonds so called for redemption and any such bonds which mature prior to such redemption date shall not thereafter be deemed to be outstanding under the provisions of this Resolution and shall cease to be entitled to any lien, benefit or security under this Resolution, other than the right to receive payment from such moneys and to receive bonds for any unredeemed portion thereof.

SECTION 306.  In case part but not all of an outstanding bond shall be selected for redemption, the registered owner thereof or his attorney or legal representative shall present and surrender such bond to the Fiscal Agent for payment of the principal amount thereof so called for redemption, and the Authority shall execute and the Fiscal Agent shall authenticate and deliver to or upon the order of such registered owner or his legal representative, without charge therefor, for the unredeemed portion of the principal amount of the bond so surrendered, a new bond or bonds of the same Series and maturity, bearing interest at the same rate and of any denomination or denominations authorized by this Resolution.

## ARTICLE IV.

## REVENUES AND FUNDS.

SECTION 401.  A special fund is hereby created and designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Senior Bond Sinking Fund"). There are hereby created in the Senior Bond Sinking Fund three separate accounts designated "Senior Bond Service Account", "Senior Bond Redemption Account" and "Senior Bond Reserve Account", respectively.  Another special fund is hereby created and designated "Puerto Rico Highways and Transportation Authority Subordinated

53

Transportation Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Subordinated Bond Sinking Fund"). There are hereby created in the Subordinated Bond Sinking Fund two separate accounts designated "Subordinated Bond Service Account" and "Subordinated Bond Redemption Account", respectively. Another special fund is hereby created and designated "Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Reserve Fund" (herein called the "Subordinated Bond Reserve Fund"). The Authority may by resolution establish one or more accounts within the Subordinated Bond Reserve Fund to the extent necessary to correspond to those Series of subordinated bonds with different Subordinated Reserve Requirements. Each such account shall be designated "Subordinated Bond Reserve Account (Series __)" (inserting a year or a letter to identify the particular Series of subordinated bonds to which such account relates).

There is hereby also created a special fund designated the "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (herein sometimes called the "Revenue Fund"). The Authority covenants that all Revenues (except investment earnings or deposits to the credit of the funds and accounts established hereunder) will be deposited when received to the credit of the Revenue Fund. Until the outstanding 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, the Executive Director or any officer or employee of the Authority designated by him for such purpose shall on or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 207 of this Resolution and on or before the 25th day of each month thereafter withdraw from the 1968 Construction Fund and transfer to the credit of the Revenue Fund all unencumbered moneys held for the credit of the 1968 Construction Fund, such transfer to be made on the books of the Authority as of the close of the preceding month. The Authority covenants that all moneys to the credit of the Revenue Fund will be applied to the purposes and in the order set forth in this Article.

The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

The Authority covenants that on or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 207 of this Resolution and on or before the 25th day of each month thereafter, it shall be the duty of the Executive Director or any officer or employee of the Authority designated by him for such purpose to withdraw from the Revenue Fund all of the moneys then held to the credit of such Fund and deposit such moneys and any other funds of the Commonwealth allocated to and received by the Authority for the payment of principal of and interest on bonds of the Authority issued under the provisions of this Resolution with the Fiscal Agent to the credit of the following Accounts and Fund in the amounts specified and in the following order:

(a) to the credit of the Senior Bond Service Account, an amount equal to one-sixth (1/6) of the amount of interest payable on all senior bonds of each Series issued hereunder on the interest payment date next succeeding and (beginning with the twelfth month preceding the first maturity of any serial bonds of such Series) an amount equal to one-twelfth (1/12) of the next maturing installment of principal of such serial bonds until the amount held to the credit of the Senior Bond Service Account is equal to the sum of such amount of interest payable on such interest payment date plus the amount of such installment of principal; provided, however, that the amount so deposited on account of interest in each month after the delivery

54

of the senior bonds of any Series under the provisions of this Resolution up to and including the month immediately preceding the first interest payment date thereafter of the bonds of such Series shall be that amount which when multiplied by the number of such deposits will be equal to the amount of interest payable on such bonds on such first interest payment date less the amount of any accrued interest paid on such bonds and deposited with the Fiscal Agent to the credit of the Senior Bond Service Account;

(b) to the credit of the Senior Bond Redemption Account, for a period of 12 consecutive months beginning with the month preceding each fiscal year in which there is an Amortization Requirement for the senior bonds of any Series, an amount equal to one-twelfth (1/12) of the Amortization Requirement for such fiscal year for the term bonds of each Series of senior bonds then outstanding plus an amount equal to one-twelfth (1/12) of the premium, if any, which would be payable on the first redemption date in the following fiscal year on a like principal amount of bonds if such principal amount of bonds should be redeemed prior to their maturity from moneys in the Senior Bond Sinking Fund;

(c) to the credit of the Senior Bond Reserve Account, such amount, if any, of any balance remaining after making the deposits under clauses (a) and (b) above (or the entire balance if less than the required amount) as may be required to make the amount deposited to the credit of said Account in the then current fiscal year at least equal to twenty per centum (20%) of the Senior Reserve Requirement; provided, however, that no such deposit under this clause (c) shall be made in any month if the amount then to the credit of the Senior Bond Reserve Account shall be equal to the Senior Reserve Requirement or in excess of such amount as may be required to make the amount then to the credit of the Senior Bond Reserve Account equal to such Senior Reserve Requirement; and provided, further, that notwithstanding the above, in the event that the Senior Reserve Requirement shall have increased on account of the issuance of additional Series of senior bonds, the amount deposited in each of the five (5) years commencing in the fiscal year in which such additional Series of senior bonds is issued, shall equal 20% of such increase in the Senior Reserve Requirement;

(d) to the credit of the Subordinated Bond Service Account, an amount equal to one-sixth (1/6) of the amount of interest payable on all subordinated bonds of each Series issued hereunder on the interest payment date next succeeding and (beginning with the twelfth month preceding the first maturity of any serial bonds of such Series) an amount equal to one-twelfth (1/12) of the next maturing installment of principal of such serial bonds until the amount held to the credit of the Subordinated Bond Service Account is equal to the sum of such amount of interest payable on such interest payment date plus the amount of such installment of principal; provided, however, that the amount so deposited on account of interest in each month after the delivery of the subordinated bonds of any Series under the provisions of this Resolution up to and including the month immediately preceding the first interest payment date thereafter of the bonds of such Series shall be that amount which when multiplied by the number of such deposits will be equal to the amount of interest payable on such bonds on such first interest payment date less the amount of any accrued interest paid on such bonds and deposited with the Fiscal Agent to the credit of the Subordinated Bond Service Account;

(e) to the credit of the Subordinated Bond Redemption Account, for a period of 12 consecutive months beginning with the month preceding each fiscal year in which there is an Amortization Requirement for the subordinated bonds of any Series, an amount equal to one-twelfth (1/12) of the Amortization Requirement for such fiscal year for the term bonds of each Series of subordinated bonds then outstanding plus an amount equal to one-twelfth (1/12) of

55

HTA_CONF 00016354

the premium, if any, which would be payable on the first redemption date in the following fiscal year on a like principal amount of bonds if such principal amount of bonds should be redeemed prior to their maturity from moneys in the Subordinated Bond Sinking Fund;

(f) to the credit of each separate account within the Subordinated Bond Reserve Fund, such amount, if any, of any balance remaining after making the deposits under clauses (a) through (e) above (or the entire balance if less than the required amount, allocated pro rata to each such account on the basis of the corresponding Subordinated Reserve Requirements) as may be required to make the respective amounts deposited to the credit of said accounts in the then current fiscal year at least equal to the deposit requirement for each such account established by resolution of the Authority; provided, however, that no such deposit to any such account under this clause (f) shall be made in any month if the amount then to the credit of such account shall be equal to the applicable Subordinated Reserve Requirement or in excess of such amount as may be required to make the amount then to the credit of such account equal to such Subordinated Reserve Requirement; and provided, further, that notwithstanding the above, in the event that any Subordinated Reserve Requirement shall have increased on account of the issuance of additional Series of subordinated bonds, the Authority may by such resolution provide for equal annual deposits of such amounts (not to be more than 20% of the amount of such increase) as will ensure that the amounts so deposited will cause the sum held to the credit of any such account to equal such Requirement not earlier than the end of a 5-year period following the issuance of such Series of subordinated bonds; and

(g) the balance, if any, remaining after making the deposits under clauses (a) through (f) above, shall be deposited to the credit of the Construction Fund for use by the Authority for any of its authorized purposes, subject to the provisions of Sections 604 and 605 of this Resolution.

If the amount so deposited in any month to the credit of any Account mentioned in clauses (a) through (f) above shall be less than the required amount, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited to the credit of such account in each month thereafter until such time as such deficiency shall be made up.

The Authority further covenants that any other funds which it receives from the Commonwealth or any other source to make up any deficiencies in the amounts needed to pay the principal of and interest on any bonds issued under the provisions of the 1968 Resolution and this Resolution will be applied for such purpose first to make up any deficiencies in the amounts needed to pay the principal of and interest on any 1968 Resolution Bonds and then to make up any such deficiencies needed to pay such principal of and interest on the senior bonds and then the subordinated bonds. The Fiscal Agent is authorized to receive at any time payments from the Authority or any other person for deposit to the credit of the various funds and accounts established under this Resolution as shall be specified by the Authority or such person.

The Authority shall, by resolution adopted in connection with the issuance of Variable Rate Bonds, modify the monthly amount required to be deposited pursuant to clause (a) above as shall be necessary to pay interest on said Bonds on the next interest payment date and pursuant to clause (c) above as shall be necessary to make the amount deposited to the credit of the Senior Bond Reserve Account or the applicable accounts within the Subordinated Bond Reserve Fund for any fiscal year equal to the amount required to be so deposited by virtue of said clause (c).

56

SECTION 402. At such time as the outstanding 1968 Resolution Bonds shall be paid or provision shall be made for their payment and the 1968 Resolution shall have been repealed and cancelled, all moneys (other than moneys held for the redemption or payment of 1968 Resolution Bonds), including any obligations purchased as an investment of such moneys, then held for the credit of the special funds and accounts created under the provisions of the 1968 Resolution shall be withdrawn and deposited to the credit of the special funds and accounts created under the provisions of this Resolution, as follows:

| 1968 Resolution | This Resolution |
|---|---|
| Construction Fund | Revenue Fund |
| Sinking Fund, including Reserve Account | Revenue Fund |

SECTION 403. The Fiscal Agent shall, from time to time, withdraw from the Senior Bond Service Account and (1) remit to each registered owner of senior bonds the amount required for paying interest upon such bonds as such interest becomes due and (2) set aside in trust an amount equal to the amount of, and for the sole and exclusive purpose of paying, the principal of all senior bonds as such principal becomes due.

Notwithstanding the foregoing or any other provision herein to the contrary, if any amount applied to the payment of principal of and premium, if any, and interest on senior bonds that would have been paid from the Senior Bond Service Account or the Senior Bond Redemption Account is paid instead under a Credit Facility or a Liquidity Facility, amounts deposited in the Senior Bond Service Account and the Senior Bond Redemption Account, as applicable, and allocable to such payment for said bonds shall be paid, to the extent required under any agreement providing for the issuance of such Facility, to the issuer of the Credit Facility or the Liquidity Facility having made such payment. The Fiscal Agent shall establish one or more subaccounts within the Senior Bond Service Account and the Senior Bond Redemption Account, to the extent required by a resolution of the Authority, to segregate amounts paid to the issuer of a Credit Facility or a Liquidity Facility and amounts paid from a Credit Facility or a Liquidity Facility.

SECTION 404. Moneys held for the credit of the Senior Bond Redemption Account shall be applied to the retirement of senior bonds issued under the provisions of this Resolution as follows:

(a) Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall endeavor to purchase senior bonds secured hereby and then outstanding, whether or not such bonds shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, having regard to interest rate and price, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds if such bonds should be called for redemption on such date from moneys in the Senior Bond Sinking Fund. The Fiscal Agent shall pay the interest accrued on such bonds to the date of delivery thereof from the Senior Bond Service Account and the purchase price from the Senior Bond Redemption Account, but no such purchase shall be made within the period of forty-five (45) days next preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Resolution except from moneys in excess of the amounts set aside or deposited for the redemption of senior bonds.

57

HTA_CONF 00016356

(b) Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall call for redemption on each date on which senior bonds are subject to redemption from moneys in the Senior Bond Sinking Fund on the forty-fifth day prior to such redemption date such amount of senior bonds then subject to redemption as, with the redemption premium, if any, will exhaust the Redemption Account as nearly as may be; provided, however, that not less than Fifty Thousand Dollars ($50,000) in principal amount of senior bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Resolution. Not less than thirty (30) days before the redemption date the Fiscal Agent shall withdraw from the Senior Bond Service Account and from the Senior Bond Redemption Account and set aside in separate accounts the respective amounts required for paying the interest on the senior bonds so called for redemption and the principal of and the redemption premium, if any, on such bonds.

(c) Moneys in the Senior Bond Redemption Account shall be applied to the purchase or redemption of senior bonds in the following order:

*first,* term bonds of each Series of senior bonds, if any, in the order of their issuance, to the extent of the Amortization Requirement, if any, of the then current fiscal year for such term bonds and any deficiency in preceding fiscal years in the purchase or redemption of such term bonds under the provisions of this subdivision; provided, however, that if none of the term bonds of a Series of senior bonds shall be subject to redemption from moneys in the Senior Bond Sinking Fund and if the Fiscal Agent shall at any time be unable to exhaust the moneys applicable to the bonds of any such Series in the purchase of such bonds under the provisions of paragraph (a) of this Section, such moneys or the balance of such moneys, as the case may be, shall be retained in the Senior Bond Redemption Account and, as soon as it is feasible, applied to the retirement of the bonds of such Series;

*second,* to the purchase of any senior bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third,* term bonds of each Series of senior bonds in proportion (as nearly as practicable) to the aggregate principal amount of the bonds of each such Series originally issued under the provisions of this Resolution; and

*fourth,* after the retirement of all term senior bonds, any balance still remaining shall be applied to the retirement of serial bonds of each Series of senior bonds in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Resolution.

All expenses in connection with such purchase or redemption shall be paid from the Construction Fund.

Upon the retirement of any senior bonds by purchase or redemption the Fiscal Agent shall file with the Authority a statement briefly describing such senior bonds, and setting forth the date of their purchase or redemption, the amount of the purchase price or the redemption price of such bonds, and the amount paid as interest thereon.

SECTION 405. Subject to the provisions of the second paragraph of Section 409 and to the provisions of the last paragraph of Section 411, moneys held for the credit of the Senior Bond Reserve Account shall be used for the purpose of paying interest on the senior bonds and maturing

58

principal of serial senior bonds whenever and to the extent that the moneys held for the credit of the Senior Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Senior Bond Redemption Account pursuant to the requirements of clause (b) of Section 401 of this Resolution whenever and to the extent that the Revenues or other moneys deposited to the credit of the Revenue Fund are insufficient for such purpose.

The Authority may at any time deposit to the credit of the Senior Bond Reserve Account a Reserve Account Insurance Policy or a Reserve Account Letter of Credit. Moneys held to the credit of the Senior Bond Reserve Account may be applied at any time to reinstate any Reserve Account Insurance Policy or Reserve Account Letter of Credit to the extent of such moneys (but not in excess of any such instrument's maximum stated amount). If at any time the moneys held for the credit of the Senior Bond Reserve Account or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall exceed the Senior Reserve Requirement, such excess may be retained in the Senior Bond Reserve Account, may be applied to the payment of outstanding notes issued by the Authority to finance temporarily any Transportation Facilities or outstanding senior bonds to be refunded pursuant to Section 209 of this Resolution, or may be deposited to the credit of the Senior Bond Service Account, the Senior Bond Redemption Account or the Construction Fund, or any Reserve Account Insurance Policy or Reserve Account Letter of Credit may be reduced to the extent of such excess, at the option of the Authority; provided, however, that any such excess arising from the deposit of a Reserve Account Insurance Policy or a Reserve Account Letter of Credit shall be paid to the Authority.

SECTION 406. The Fiscal Agent shall, from time to time, withdraw from the Subordinated Bond Service Account and (1) remit by mail to each registered owner of subordinated bonds the amount required for paying interest upon such bonds as such interest becomes due and (2) set aside in trust an amount equal to the amount of, and for the sole and exclusive purpose of paying, the principal of all subordinated bonds as such principal becomes due.

Notwithstanding the foregoing or any other provision herein to the contrary, if any amount applied to the payment of principal of and premium, if any, and interest on subordinated bonds that would have been paid from the Subordinated Bond Service Account or the Subordinated Bond Redemption Account is paid instead under a Credit Facility or a Liquidity Facility, amounts deposited in the Subordinated Bond Service Account and the Subordinated Bond Redemption Account, as applicable, and allocable to such payment for said bonds shall be paid, to the extent required under any agreement providing for the issuance of such Facility, to the issuer of the Credit Facility or the Liquidity Facility having made such payment. The Fiscal Agent shall establish one or more subaccounts within the Subordinated Bond Service Account and the Subordinated Bond Redemption Account, to the extent required by a resolution of the Authority, to segregate amounts paid to the issuer of a Credit Facility or a Liquidity Facility and amounts paid from a Credit Facility or a Liquidity Facility.

SECTION 407. Moneys held for the credit of the Subordinated Bond Redemption Account shall be applied to the retirement of subordinated bonds issued under the provisions of this Resolution as follows:

(a) Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall endeavor to purchase subordinated bonds secured hereby and then outstanding, whether or not such bonds shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, having regard to interest rate and price, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on

HTA_CONF 00016358

the next redemption date to the holders of such bonds if such bonds should be called for redemption on such date from moneys in the Subordinated Bond Sinking Fund. The Fiscal Agent shall pay the interest accrued on such bonds to the date of delivery thereof from the Subordinated Bond Service Account and the purchase price from the Subordinated Bond Redemption Account, but no such purchase shall be made within the period of forty-five (45) days next preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Resolution except from moneys in excess of the amounts set aside or deposited for the redemption of subordinated bonds.

(b) Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall call for redemption on each date on which subordinated bonds are subject to redemption from moneys in the Subordinated Bond Sinking Fund on the forty-fifth day prior to such redemption date such amount of subordinated bonds then subject to redemption as, with the redemption premium, if any, will exhaust the Subordinated Bond Redemption Account as nearly as may be; provided, however, that not less than Fifty Thousand Dollars ($50,000) in principal amount of subordinated bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Resolution. Not less than thirty (30) days before the redemption date the Fiscal Agent shall withdraw from the Subordinated Bond Service Account and from the Subordinated Bond Redemption Account and set aside in separate accounts the respective amounts required for paying the interest on the subordinated bonds so called for redemption and the principal of and the redemption premium on such bonds.

(c) Moneys in the Subordinated Bond Redemption Account shall be applied to the purchase or redemption of subordinated bonds in the following order:

*first,* term bonds of each Series of subordinated bonds, if any, in the order of their issuance, to the extent of the Amortization Requirement, if any, of the then current fiscal year for such term bonds and any deficiency in preceding fiscal years in the purchase or redemption of such term bonds under the provisions of this subdivision; provided, however, that if none of the term bonds of a Series of subordinated bonds shall be subject to redemption from moneys in the Subordinated Bond Sinking Fund and if the Fiscal Agent shall at any time be unable to exhaust the moneys applicable to the bonds of any such Series in the purchase of such bonds under the provisions of paragraph (a) of this Section, such moneys or the balance of such moneys, as the case may be, shall be retained in the Subordinated Bond Redemption Account and, as soon as it is feasible, applied to the retirement of the bonds of such Series;

*second,* to the purchase of any subordinated bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

*third,* term bonds of each Series of subordinated bonds in proportion (as nearly as practicable) to the aggregate principal amount of the bonds of each such Series originally issued; and

*fourth,* after the retirement of all term subordinated bonds, any balance still remaining shall be applied to the retirement of serial bonds of each Series of subordinated bonds in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Resolution.

60

HTA_CONF 00016359

All expenses in connection with such purchase or redemption shall be paid from the Construction Fund.

Upon the retirement of any subordinated bonds by purchase or redemption the Fiscal Agent shall file with the Authority a statement briefly describing such bonds, and setting forth the date of their purchase or redemption, the amount of the purchase price or the redemption price of such bonds, and the amount paid as interest thereon.

SECTION 408.   Moneys held for the credit of each account in the Subordinated Bond Reserve Fund shall be used for the purpose of paying interest on each Series of subordinated bonds and maturing principal of serial subordinated bonds of each such Series to which such account relates whenever and to the extent that the moneys held for the credit of the Subordinated Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the applicable account in the Subordinated Bond Redemption Fund pursuant to the requirements of clause (e) of Section 401 of this Resolution whenever and to the extent that the Revenues or other moneys deposited to the credit of the Revenue Fund are insufficient for such purpose.

The Authority may at any time deposit to the credit of any account in the Subordinated Bond Reserve Fund a Reserve Account Insurance Policy or a Reserve Account Letter of Credit.  Moneys held to the credit of any account in the Subordinated Bond Reserve Fund may be applied at any time to reinstate any Reserve Account Insurance Policy or Reserve Account Letter to the extent of such moneys (but not in excess of any such instrument's maximum stated amount).  If at any time the moneys held for the credit of any account in the Subordinated Bond Reserve Fund or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall exceed the corresponding Subordinated Reserve Requirement, such excess may be retained in such account, may be applied to the payment of outstanding notes issued by the Authority to finance temporarily any Traffic Facilities or undertakings of the Authority for which subordinated bonds may be issued hereunder or outstanding subordinated bonds to be refunded pursuant to Section 211 of this Resolution, or may be deposited to the credit of the Subordinated Bond Service Account, the Subordinated Bond Redemption Account or the Construction Fund, or any Reserve Account Insurance Policy or Reserve Account Letter of Credit may be reduced to the extent of such excess, at the option of the Authority; provided, however, that any such excess arising from the deposit of a Reserve Account Insurance Policy or a Reserve Account Letter of Credit shall be paid to the Authority.

SECTION 409.  Except for such withdrawals as are required by the provisions of the next paragraph, before any payment or withdrawal shall be made from moneys in the Construction Fund there shall be filed with the Fiscal Agent a certificate signed by the Executive Director of the Authority or an officer of the Authority designated by him for such purpose setting forth the amount of money to be so disbursed and stating that such money will be used to pay the costs of constructing Transportation Facilities or for other authorized purposes. Upon receipt of such certificate the Fiscal Agent shall withdraw from the Construction Fund and deposit to the credit of a special checking account in its commercial department in the name of the Authority the amount so specified in such certificate. The Fiscal Agent shall also at any time at the written direction of the Executive Director of the Authority transfer any part of the moneys in the Construction Fund to the credit of any account in the Senior Bond Sinking Fund.  The Fiscal Agent is authorized to establish separate accounts or sub-accounts within the Construction Fund corresponding to the source of moneys specified herein for each deposit made into the Construction Fund so that the Fiscal Agent may at all times ascertain the source and date of the deposit of funds in each such account or sub-account.

61

HTA_CONF 00016360

If on any date on which interest on or principal of any senior bond is due and payable the total of the moneys held to the credit of the Senior Bond Service Account or the Senior Bond Redemption Account shall not be sufficient for paying such interest or principal, the Fiscal Agent shall prior to making any withdrawal from the Senior Bond Reserve Account pursuant to Section 405 hereof withdraw any unencumbered funds derived from Revenues or moneys deposited to the credit of the Revenue Fund pursuant to the third sentence of the second paragraph of Section 401 then on deposit to the credit of the Construction Fund and transfer all such funds so withdrawn first to the Senior Bond Service Account and then (if necessary) to the Senior Bond Redemption Account in the respective amounts necessary to cure each such insufficiency (or the entire balance of such unencumbered funds in the Construction Fund if less than the sum of the respective required amounts).

SECTION 410.  Subject to the terms and conditions set forth in this Resolution, moneys held for the credit of the Senior Bond Service Account, the Senior Bond Redemption Account and the Senior Bond Reserve Account shall be held in trust and disbursed by the Fiscal Agent for (a) the payment of interest upon the senior bonds issued hereunder as such interest falls due, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase price or redemption price of such bonds, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Senior Bond Service Account, the Senior Bond Redemption Account and the Senior Bond Reserve Account shall be sufficient for paying the principal of and the interest accrued on all senior bonds then outstanding under the provisions of this Resolution and any redemption premium and any amounts needed to pay redemption expenses, such moneys shall be applied by the Fiscal Agent to the payment, purchase or redemption of such bonds.

SECTION 411.  Subject to the terms and conditions set forth in this Resolution, moneys held for the credit of the Subordinated Bond Service Account, the Subordinated Bond Redemption Account and the Subordinated Bond Reserve Fund shall be held in trust and disbursed by the Fiscal Agent for (a) the payment of interest upon the subordinated bonds issued hereunder as such interest falls due, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase price or redemption price of such bonds, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever (after taking into account the provisions of the next paragraph) the total of the moneys held for the credit of the Subordinated Bond Service Account, the Subordinated Bond Redemption Account and the Subordinated Bond Reserve Fund shall be sufficient for paying the principal of and the interest accrued on all subordinated bonds then outstanding under the provisions of this Resolution and any redemption premium and any amounts needed to pay redemption expenses, such moneys shall be applied by the Fiscal Agent to the payment, purchase or redemption of such bonds.

If on any date on which the interest on or principal of any senior bond is due and payable the total of the moneys held to the credit of the Senior Bond Service Account or Senior Bond Redemption Account shall not be sufficient for paying such principal or interest after making any transfers provided by the second paragraph of Section 409, the Fiscal Agent shall, prior to making any payment in respect of interest or premium, if any, on or principal of any subordinated bond on such date and prior to making any withdrawal from the Senior Bond Reserve Account pursuant to Section 405 hereof, withdraw first, any moneys then held to the credit of the Subordinated Bond Redemption Account, second, any moneys then held to the credit of the Subordinated Bond Service

HTA_CONF 00016361

Account in respect of the principal of any subordinated bonds and third, any other moneys then held to the credit of the Subordinated Bond Service Account and transfer all such moneys so withdrawn first to the Senior Bond Service Account and then (if necessary) to the Senior Bond Redemption Account in the respective amounts necessary to cure each such insufficiency (or the entire balance in each of such Accounts if less than the sum of the respective required amounts).

SECTION 412. (a) All moneys which the Fiscal Agent shall have withdrawn from the Senior Bond Sinking Fund or shall have received from any other source and set aside for the purpose of paying any of the senior bonds hereby secured, either at the maturity thereof or upon call for redemption, shall be held in trust for the respective holders of such bonds. But any moneys which shall be so set aside or deposited by the Fiscal Agent and which shall remain unclaimed by the holders of such bonds for a period of two (2) years after the date on which such bonds shall have become payable shall upon request in writing be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Fiscal Agent shall have no responsibility with respect to such moneys.

(b) All moneys which the Fiscal Agent shall have withdrawn from the Subordinated Bond Sinking Fund or shall have received from any other source and set aside for the purpose of paying any of the subordinated bonds hereby secured, either at the maturity thereof or upon call for redemption, shall be held in trust for the respective holders of such bonds. But any moneys which shall be so set aside or deposited by the Fiscal Agent and which shall remain unclaimed by the holders of such bonds for a period of two (2) years after the date on which such bonds shall have become payable shall upon request in writing be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Fiscal Agent shall have no responsibility with respect to such moneys.

SECTION 413. All bonds paid, redeemed or purchased, either at or before maturity, shall be delivered to the Fiscal Agent when such payment, redemption or purchase is made, and such bonds shall thereupon be cancelled. The Fiscal Agent shall certify to the Executive Director and to the Treasurer of the Authority the details of all bonds so cancelled. All bonds cancelled under any of the provisions of this Resolution shall be destroyed by the Fiscal Agent, which shall execute a certificate of destruction in duplicate, describing the bonds so destroyed, and one executed certificate shall be filed with the Treasurer of the Authority and the other executed certificate shall be retained by the Fiscal Agent.

SECTION 414. After provision shall be made for the payment of all bonds secured hereby and the interest thereon and all expenses and charges herein required to be paid, the Fiscal Agent shall pay any balance in the Senior Bond Sinking Fund and the Subordinated Bond Sinking Fund and any balance in any other fund then held by it to the Authority.

HTA_CONF 00016362

## ARTICLE V.

### DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS
### AND INVESTMENT OF FUNDS.

SECTION 501. All moneys deposited with the Fiscal Agent under the provisions of this Resolution shall be held in trust and applied only in accordance with the provisions of this Resolution, and shall not be subject to lien or attachment by any creditor of the Authority other than the liens and charges created by or pursuant to this Resolution in favor of the holders of the bonds issued and outstanding under this Resolution.

All moneys deposited with the Fiscal Agent hereunder shall be continuously secured, for the benefit of the Authority and holders of the bonds, either (a) by lodging with a bank or trust company approved by the Authority as custodian, or, if then permitted by law, by setting aside under control of the trust department of the bank holding such deposit, as collateral security, Investment Obligations eligible as security for the deposit of trust funds under regulations of the Comptroller of the Currency of the United States of America or applicable Commonwealth of Puerto Rico or state law or regulations, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or (b) if the furnishing of security as provided in clause (a) above is not permitted by applicable law, in such other manner as may then be required or permitted by applicable Commonwealth, state or federal laws or regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Fiscal Agent to give security for any moneys which shall be represented by obligations purchased under the provisions of this Article as an investment of such moneys.

All moneys deposited with the Fiscal Agent shall be credited to the particular Fund or Account to which such moneys belong.

SECTION 502. Moneys held for the credit of the Revenue Fund, the Senior Bond Service Account, the Senior Bond Redemption Account, the Subordinated Bond Service Account and the Subordinated Bond Redemption Account shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Government Obligations, and moneys held for the credit of the Construction Fund, the Senior Bond Reserve Account and each account in the Subordinated Bond Reserve Fund shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Investment Obligations, which Government Obligations and Investment Obligations shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Accounts and Funds will be required for the purposes intended; provided, however, that the amounts on deposit in the Senior Bond Reserve Account and each account in the Subordinated Bond Reserve Fund shall be invested in Investment Obligations which mature not later than the final maturity date of any senior bonds or subordinated bonds Outstanding, as the case may be.

Obligations so purchased as an investment of moneys in said Accounts and Funds shall be deemed at all times to be a part of said Accounts and Funds, and any profit or loss realized on the sale or maturity thereof shall be credited or debited to said Accounts and Funds. The Fiscal Agent, at the written direction of the Authority, shall sell at the best price reasonably obtainable any Investment Obligations so purchased as an investment in any Fund or Account maintained by the Fiscal Agent hereunder whenever it shall be necessary to do so in order to provide moneys to meet any payments or transfers from any such Fund or Account. Neither the Fiscal Agent (to the extent

64

it has acted in good faith and without gross negligence) nor the Authority shall be liable or responsible for any loss resulting from any such investment; provided that the foregoing shall not be deemed to limit the Authority's obligation to make deposits to the credit of the Funds and Accounts otherwise required by this Resolution.

Investment earnings on moneys on deposit to the credit of the Revenue Fund, the Construction Fund, the Senior Bond Sinking Fund and the Subordinated Bond Sinking Fund shall be applied as follows:

(a) Investment earnings on moneys on deposit to the credit of the Senior Bond Service Account, the Senior Bond Redemption Account, the Subordinated Bond Service Account, the Subordinated Bond Redemption Account and the Construction Fund shall be transferred to the credit of or retained in the Construction Fund; provided that the Authority may elect to have such investment earnings remain to the credit of the Senior Bond Service Account, the Senior Bond Redemption Account, the Subordinated Bond Service Account or the Subordinated Bond Redemption Account to fund the next payment of principal of, Amortization Requirements for and interest on the senior bonds or the subordinated bonds, in which event the Authority shall receive a credit against the amounts required to be deposited in said Accounts as applicable;

(b) Investment earnings on moneys on deposit to the credit of the Senior Bond Reserve Account and each account in the Subordinated Bond Reserve Fund shall be retained in said accounts at any time that the respective amounts on deposit to the credit of said accounts is less than the Senior Reserve Requirement or the corresponding Subordinated Reserve Requirement, as applicable; and

(c) Investment earnings on moneys on deposit to the credit of the Revenue Fund shall be retained therein.

SECTION 503. In computing the amount in any Fund or Account created pursuant to the provisions of this Resolution, obligations purchased as an investment of moneys therein shall be valued at par if purchased at par or at amortized value if purchased at other than par, plus, in each case, accrued interest. Amortized value, when used with respect to an obligation purchased at a premium above or a discount below par, means the value as of any given time obtained by dividing the total premium or discount at which such obligation was purchased by the number of days remaining to maturity on such obligation at the date of such purchase and by multiplying the amount thus calculated by the number of days having passed since such purchase; and (1) in the case of an obligation purchased at a premium by deducting the product thus obtained from the purchase price and (2) in the case of an obligation purchased at a discount by adding the product thus obtained to the purchase price. Valuation on any particular date shall include the amount of interest then earned or accrued to such date on any moneys or investments in such Fund or Account. The computation of the amount held to the credit of the Fund and Accounts created under this Resolution and the valuation of the investments of such amount shall be performed by the Fiscal Agent as of the close of business on the last day of each fiscal year and at such other times as the Authority shall request, and such computation and valuation shall not be required to be performed at other times.

65

HTA_CONF 00016364

## ARTICLE VI.

### PARTICULAR COVENANTS.

SECTION 601. The Authority covenants that it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution at the places, on the dates and in the manner provided herein and in said bonds and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Except as in this Resolution otherwise provided, such principal, interest and premiums are payable solely from Revenues and other moneys deposited to the credit of the Revenue Fund and from any funds received by the Authority for that purpose from the Commonwealth, which Revenues, moneys and funds are hereby pledged (with such priorities with respect to the use and disposition of Revenues as are in this Resolution specified) to the payment thereof in the manner and to the extent hereinabove particularly specified. Forthwith upon the repeal and cancellation of the 1968 Resolution, all Existing Tax and Fee Revenues and Existing Toll Facilities Revenues shall be hereby pledged to the payment of the principal of and premium, if any, and interest on the bonds issued under the provisions of this Resolution to the same extent and with the same effect as the pledge of the preceding sentence.

SECTION 602. The Authority further covenants that, except as provided in this Resolution, it will not incur any indebtedness nor create or suffer to be created any lien, pledge, assignment, encumbrance or charge upon the Revenues ranking equally with or prior to the senior bonds, except the lien and charge of the senior bonds secured hereby upon such Revenues, or ranking equally with the subordinated bonds, except the lien and charge of the subordinated bonds secured hereby upon such Revenues.

Any other indebtedness incurred by the Authority after the effective date hereof under documents not in effect on the effective date hereof shall contain a statement that such indebtedness is junior, inferior and subordinate in all respects to the bonds as to lien on and source and security for payment from Revenues hereunder. For purposes of the above limitation on incurrence of indebtedness, indebtedness shall not be deemed to include contracts entered into in the ordinary course of business or agreements to repay advances received from the Federal government or to repay amounts drawn under any Credit Facility, Liquidity Facility, Reserve Account Insurance Policy or Reserve Account Letter of Credit to the extent of the amounts so drawn. Nothing in this Resolution shall be deemed to prohibit the Authority from entering into currency swaps, interest rate swaps or other arrangements for hedging of interest rates on any indebtedness.

SECTION 603. The Authority has adopted a master plan for the construction of required Transportation Facilities in Puerto Rico and a priorities construction program thereof covering the five year period 1997-1998 to 2001-2002 which has been evaluated by the Transportation Engineers who have made their recommendations thereon. The Authority covenants that the master plan will be supplemented periodically as necessary and that the five year priorities construction program will be updated each year to cover the Transportation Facilities to be constructed by the Authority in the ensuing five year period. A copy of each supplement or revision of said master plan and said five year priorities construction program made by the Authority shall be furnished to the Transportation Engineers.

SECTION 604. As recited in the preambles hereof the Authority has entered into an agreement with the Secretary of Transportation pursuant to which the Secretary of Transportation has agreed to pay the costs of maintaining, repairing and operating all Traffic Facilities financed by the Authority in whole or in part by the issuance of 1968 Resolution Bonds and all

HTA_CONF 00016365

Transportation Facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of this Resolution, from general funds of the Commonwealth of Puerto Rico which are made available to him for such purpose. The Authority covenants, however, that if and to the extent funds for this purpose are not provided by the Commonwealth of Puerto Rico, the Authority will pay such costs from unencumbered funds then on deposit in the Construction Fund or from the Revenues or any amounts deposited to the credit of the Revenue Fund in accordance with the third sentence of the second paragraph of Section 401 of this Resolution and which are thereafter deposited to the credit of the Construction Fund pursuant to clause (g) of Section 401 of this Resolution and not from funds then on deposit or thereafter deposited to the credit of the 1968 Construction Fund.

The Authority further covenants that it will cause an annual general evaluation to be made by the Transportation Engineers of the level of maintenance, repair and operating condition of all Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution Bonds and all Transportation Facilities financed in whole or in part by the issuance of bonds of the Authority under this Resolution, which Facilities shall be, in the judgment of the Authority with the approval of the Transportation Engineers, material to the overall system of Transportation Facilities. References in Section 605 to "the Transportation Facilities referred to in Section 604" shall mean those Transportation Facilities which are financed in whole or in part by the issuance of 1968 Resolution Bonds or bonds of the Authority issued under this Resolution and which are material, in the judgment of the Authority and the Transportation Engineers, to the overall system of Transportation Facilities.

The Authority further covenants that it will operate or cause to be operated the Toll Facilities, any Mass Transit Facilities and all other Transportation Facilities that it may from time to time operate or cause to be operated in an efficient and economical manner, that it will at all times maintain or cause to be maintained such Transportation Facilities in good repair and in sound operating condition and that it will make or cause to be made all necessary repairs, renewals and replacements thereto to restore such Facilities to such repair and condition.

SECTION 605. The Authority covenants that it will cause the Transportation Engineers to prepare a report each year promptly after the completion of their general evaluation of the level of maintenance, repair and operating condition of the Transportation Facilities referred to in Section 604 of this Resolution, setting forth (i) their comments with respect to any supplements or revisions made by the Authority in the master plan or in the five year priorities construction program referred to in Section 603 of this Resolution and their recommendations as to any additional supplements or revisions which should be made in such plan or in such priorities program, and (ii) their findings resulting from such general evaluation of the level of maintenance, repair and operating condition of such Facilities as to whether such Facilities have been maintained in good repair, working order and sound condition and their recommendations as to repairs, renewals or replacements which are needed.

A copy of such report shall be filed with the Authority, the Fiscal Agent, the Secretary of Transportation and the Secretary of the Treasury. If it appears from such report that repairs, renewals or replacements of any such Facilities are necessary, the Authority shall promptly cause such Facilities to be restored to a condition of good repair and to sound operating condition, and if and to the extent that funds for such purpose have not been made available by the Commonwealth of Puerto Rico, unencumbered funds then on deposit in the Construction Fund, or Revenues or any amounts deposited to the credit of the Revenue Fund in accordance with the third sentence of the second paragraph of Section 401 of this Resolution and which are thereafter deposited to the credit of said Fund pursuant to clause (g) of Section 401 of this Resolution shall first, and no funds then

HTA_CONF 00016366

on deposit or thereafter deposited to the credit of the 1968 Construction Fund shall, be applied for such purpose.

In the event it shall be necessary for the Authority to apply unencumbered funds then on deposit in the Construction Fund for any of the purposes specified in this Section 605, such application shall first be made in respect of any Transportation Facilities operated and maintained by or on behalf of the Authority and then in respect of any other Transportation Facilities.

SECTION 606. The Authority shall on or before October 1 of each year submit to the Planning Board, the Director of the Office of Management and Budget, the Secretary of the Treasury, the Fiscal Agent and the Traffic Engineers, a statement setting forth (i) a brief description of the program of Transportation Facilities to be carried out during the next fiscal year, (ii) its estimate of the total construction cost of such program, (iii) a description of the rights of way which will be needed to carry out such program and the respective dates by which they will be needed, and (iv) the estimated costs of such rights of way and the amount of general funds of the Commonwealth which the Legislature is requested to appropriate for such purpose. The Authority covenants that it will, pursuant to Section 14 of the Enabling Act, file a copy of such statement with the Legislature prior to its next regular session.

SECTION 607. The Authority covenants that it will keep accurate records and accounts of all items of cost and of all expenditures relating to the Transportation Facilities and of the Revenues and the application of moneys held to the credit of the Revenue Fund. Such records and accounts shall be open to the inspection of all interested persons.

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts relating to the Transportation Facilities financed hereunder and under the 1968 Resolution by an independent firm of certified public accountants of suitable experience and responsibility. Within a reasonable time thereafter, but not later than 90 days after the beginning of such fiscal year, reports of each such audit shall be filed with the Fiscal Agent and Government Development Bank for Puerto Rico and copies of such reports shall be mailed by the Secretary of the Authority to the principal underwriters and to each bondholder who shall file his name and address with the Secretary of the Authority for such purpose. Each such audit report shall set forth in respect of the preceding fiscal year:

(a) the Revenues received by the Authority and all deposits to the credit of the Revenue Fund,

(b) the deposits or transfers to the credit of and all withdrawals from each other special fund or account created under the provisions of this Resolution,

(c) the details of all bonds paid, purchased and redeemed, and

(d) the amounts on deposit with the Fiscal Agent at the end of the preceding fiscal year to the credit of each such fund or account and the security held therefor, and showing the details of the investments thereof.

SECTION 608. The Authority covenants and agrees that so long as any 1968 Resolution Bonds are outstanding it will, for the purpose of performing and carrying out the duties imposed on the Traffic Engineers by the 1968 Resolution, employ such Traffic Engineers as are employed under Section 608 of the 1968 Resolution, and in respect of any Transportation Facilities not financed under the 1968 Resolution and in any event after the 1968 Resolution Bonds shall have been paid or provision shall have been made for their payment and the 1968 Resolution shall have

68

HTA_CONF 00016367

been repealed and cancelled and so long as any bonds are outstanding under this Resolution, it will, for the purpose of performing and carrying out the duties imposed on the Transportation Engineers by this Resolution, employ an independent engineer or engineers or engineering firm(s) or corporation(s) having a nationwide and favorable repute for skill and experience in the particular work to be carried out by such Engineers.

SECTION 609.   The Authority covenants that it will cause the 1968 Resolution to be repealed and cancelled at the earliest practicable date.  The Authority further covenants that it will not adopt any resolution supplemental to the 1968 Resolution for the purpose of granting to or conferring upon the 1968 Fiscal Agent for the benefit of the holders of the bonds issued under the 1968 Resolution any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon such holders or the 1968 Fiscal Agent, or for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in the 1968 Resolution, or for the purpose of extending the maturity of any 1968 Resolution Bond or creating a lien upon or a pledge of revenues ranking prior to or on a parity with the lien or pledge created by the 1968 Resolution.  Nothing herein contained shall prevent the Authority from adopting a resolution supplemental to the 1968 Resolution to cure any ambiguity or formal defect or omission in the 1968 Resolution.

SECTION 610.   The Authority covenants that so long as any 1968 Resolution Bonds are outstanding under the provisions of the 1968 Resolution it will cause to be made the deposits to the credit of the 1968 Construction Fund required by the 1968 Resolution, it will not incur any indebtedness nor create or suffer to be created any lien, pledge, assignment, encumbrance or charge upon the Existing Toll Facilities Revenues or the Existing Tax and Fee Revenues ranking equally with or prior to the 1968 Resolution Bonds and except for the Authority's obligation in the second paragraph of Section 401 of this Resolution, it will not withdraw, expend, pledge or otherwise encumber moneys held to the credit of the 1968 Construction Fund whether for the purpose of satisfying the Authority's priorities construction program or otherwise, except for the satisfying the Authority's obligations under Section 513 of that certain trust agreement, dated as of April 1, 1992, by and between the Authority and Banco Santander Puerto Rico, successor trustee.

SECTION 611.   The Authority covenants and agrees that, so long as any of the bonds secured hereby shall be outstanding, none of the Existing Tax and Fee Revenues  and Existing Toll Facilities Revenues will be used for any purpose other than as provided in the 1968 Resolution and this Resolution, and that no contract or contracts will be entered into or any action taken by which the rights of the Fiscal Agent or of the bondholders might be impaired or diminished.

SECTION 612.   The Authority covenants that so long as any bonds shall be Outstanding under the provisions of this Resolution it will not issue additional 1968 Resolution Bonds except for (a) refunding bonds issued under the provisions of Section 209 of the 1968 Resolution issued in satisfaction of the test set forth in clause (2) of the third paragraph of Section 209 of the 1968 Resolution and (b) bonds issued under the provisions of Section 208 of the 1968 Resolution in exchange for bonds then outstanding under the trust agreement referred to in Section 610 hereof for the purpose of meeting the obligations of the Authority under Section 11.4(b) of that certain Concession Agreement for the Final Design, Construction, Operation and Maintenance of a Privatized Transportation Facility, dated December 20, 1991, as amended, by and between the Authority and Autopistas de Puerto Rico y Compañía, S.E., in either case maturing not later than July 1, 2036.

69

HTA_CONF 00016368

SECTION 613. The Authority hereby covenants that it will not enter into a Swap agreement unless it first delivers copies of the proposed Swap agreement to Standard & Poor's Ratings Services, Moody's Investors Service, Inc. and any other rating agency then rating the bonds.

SECTION 614. Notwithstanding the provisions of Section 609 of the 1968 Resolution, the Authority covenants that it will not reduce the tolls or other charges imposed by it for the use of its Toll Facilities unless, as of the effective date of such reduction, the Authority delivers to the Fiscal Agent a certificate, signed by the Executive Director of the Authority not earlier than thirty (30) days prior to the effective date of such reduction, setting forth:

(i) the amount of Revenues received by the Authority and, until the outstanding 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, the amount deposited to the credit of the Revenue Fund in accordance with the third sentence of the second paragraph of Section 401 of this Resolution in each of the fifteen (15) months immediately preceding the month in which such certificate is signed, adjusted (I) to give effect to legislation enacted on or prior to the effective date of such reduction that would have increased the Revenues or the amounts deposited to the credit of the Revenue Fund from the 1968 Construction Fund as aforesaid if such legislation (x) had been in effect throughout such fifteen (15) months, (y) allocates additional moneys to the Authority and (z) expressly permits the Authority to pledge to the payment of the bonds issued under the provisions of this Resolution or the 1968 Resolution until the 1968 Resolution Bonds have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution and the Authority has expressly pledged such additional moneys to such payment on or prior to such date of delivery and (II) to reflect the moneys which would have been received if (A) the schedule of tolls in effect on such effective date had been in effect and (B) any Toll Facilities which have commenced operation or been removed from operation during such fifteen (15) months either had been in operation or not operating throughout such fifteen (15) months,

(ii) the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all senior bonds theretofore issued under the provisions of this Resolution and then Outstanding, and

(iii) the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all senior bonds and all subordinated bonds theretofore issued under the provisions of this Resolution and then Outstanding and

it shall appear from such certificate that the percentages derived by dividing the sum of the amounts shown in item (i) of such certificate for any twelve (12) consecutive months by the amount shown in item (ii) of said certificate and by the amount shown in item (iii) of said certificate, shall not be less than one hundred fifty per centum (150%) and one hundred per centum (100%), respectively.

SECTION 615. The Secretary of Transportation covenants and agrees that so long as the provisions of Section ___ of Act No. ___, approved _____ __, 1997, remain in effect, he will not authorize the issuance of any obligations of the Metropolitan Bus Authority, a body corporate

70

HTA_CONF 00016369

and politic constituting a public body and governmental instrumentality of the Commonwealth, created and existing by virtue of Act No. 5, approved May 11, 1959, as amended (known as the Metropolitan Bus Authority Act), that would have a claim on any of the tax revenues derived from the tax on gas oil or diesel oil imposed by Subtitle B of Act No. 120, approved October 31, 1994, as amended.

## ARTICLE VII.

### CONCERNING THE FISCAL AGENT..

SECTION 701. The Chase Manhattan Bank, in the Borough of Manhattan, City and State of New York, is hereby appointed as Fiscal Agent under this Resolution. Prior to the issuance of bonds under the provisions of this Resolution the Authority shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution. Said bank shall have only such duties and obligations as are expressly specified by this Resolution, and no other duties or obligations of said bank shall be implied by, or read into, this Resolution.

SECTION 702. The recitals of fact, statements and representations herein and in the bonds are made by the Authority, and the Fiscal Agent assumes no responsibility in respect thereof. The Fiscal Agent shall not have any responsibility and makes no representation in respect of the validity or sufficiency of this Resolution or of the bonds or the due execution or issuance thereof or in respect of the security afforded by this Resolution and the Fiscal Agent shall not have any responsibility or duty and makes no representation with respect to the issuance of the bonds for value. The Fiscal Agent shall not have any responsibility or duty as to the amount of bonds issued or outstanding at any time, and the Fiscal Agent shall have no responsibility and makes no representation as to whether the signatures or facsimile signatures on any bond are genuine or as to whether any bond is in the form authorized by the Authority or as to whether any bond is within the amount the Authority is authorized to issue. The Fiscal Agent shall not be under any obligation to see that any duties herein imposed upon the Authority or on any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed shall be done or performed, and the Fiscal Agent shall not be under any obligation for failure to see that any such duties or covenants are so done or performed. The Fiscal Agent shall have no obligation or duty to perform any act which would involve it in expense or liability or to institute or defend any suit in respect hereof, or to advance any of its own moneys, unless properly indemnified to its satisfaction. The Fiscal Agent shall not be liable in connection with the performance of its duties hereunder except for its own negligence or wilful misconduct. The Fiscal Agent shall have no duty, obligation, responsibility or liability to examine the reports or certificates filed with it pursuant to Sections 409, 605, 606 and 607 of this Resolution or to take any action with respect to such reports or certificates or in any other respect whatsoever, except that the Fiscal Agent shall retain such reports or certificates in its possession pursuant to Section 1103 of this Resolution.

SECTION 703. The Fiscal Agent shall not be liable or responsible because of the failure of the Authority or any of its employees or agents to make any collections or deposits or to perform any act herein required of them. The Fiscal Agent shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it which are paid out, withdrawn or transferred in accordance with the provisions of this Resolution. The immunities and exemptions from liability of the Fiscal Agent hereunder shall extend to its directors, officers, employees and agents.

71

HTA_CONF 00016370

SECTION 704.  It shall be the duty of the Fiscal Agent on or before the 15th day of January, April, July and October of each year to file with the Authority and the Government Development Bank for Puerto Rico a statement setting forth in respect of the preceding three months' period:

(a)  the amount deposited with it and the amount withdrawn or transferred by it on account of each fund and account held by it under the provisions of this Resolution,

(b)  the amount on deposit with it at the end of each such three months' period to the credit of each such fund and account,

(c)  a brief description of all obligations held by it as an investment of moneys in each such fund and account,

(d)  the amount, if any, applied to the purchase or redemption of bonds under the provisions of Sections 404 and 407 of the Resolution and a description of the bonds so purchased or redeemed, and

(e)  any other information which the Authority may reasonably request.

SECTION 705.  The Fiscal Agent shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, and in accordance with the terms of this Resolution, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other document which it shall in good faith believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution. The Fiscal Agent may consult with counsel, who may or may not be counsel to the Authority, or any engineer, consultant or accountant and the written opinion of such counsel, engineer, consultant or accountant shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in accordance therewith. Whenever the Fiscal Agent shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by the Executive Director, Secretary or any authorized officer of the Authority; but in its discretion the Fiscal Agent may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as to it may seem reasonable. Except as otherwise expressly provided herein, any request, order, notice, consent or other direction required or permitted to be furnished pursuant to any provision hereof by the Authority to the Fiscal Agent shall be sufficient if executed by the Executive Director, Secretary or other authorized officer of the Authority.

SECTION 706.  There shall at all times be a Fiscal Agent hereunder which shall be a corporation organized and doing business under the laws of the United States of America, the Commonwealth of Puerto Rico or any state, authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $100,000,000 (or whose obligations hereunder are guaranteed by a bank or trust company duly authorized to exercise corporate trust powers and subject to examination by federal, Commonwealth of Puerto Rico or state authority, of good standing, and having at the time of the appointment of such Trustee, a combined capital and surplus of at least such amount), subject to supervision or examination by federal, Commonwealth of Puerto Rico or state authority, and having its principal corporate trust office in the Commonwealth of Puerto Rico or in one of the states of the United States of America.  If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section, the combined capital and surplus and the reported deposits of such corporation shall be deemed to be

72

its combined capital and surplus and reported deposits, respectively, as set forth in its most recent report of condition so published. If at any time the Fiscal Agent shall cease to be eligible in accordance with the provisions of this Section, it shall resign immediately in the manner and with the effect specified in Section 707(b) hereof.

SECTION 707. (a) No resignation or removal of the Fiscal Agent and no appointment of a successor Fiscal Agent pursuant to this Article shall become effective until the acceptance of appointment by the successor Fiscal Agent under Section 709 hereof.

(b) The Fiscal Agent may resign at any time by giving written notice thereof to the Authority. If an instrument of acceptance by a successor Fiscal Agent shall not have been delivered to the Fiscal Agent within thirty (30) days after the giving of such notice of resignation, the retiring Fiscal Agent may petition any court of competent jurisdiction for the appointment of a successor Fiscal Agent.

SECTION 708. The Fiscal Agent may be removed at any time by an instrument or concurrent instruments in writing, signed by the holders of not less than a majority in principal amount of the senior bonds and a majority in principal amount of the subordinated bonds hereby secured and then Outstanding, signed in person by such holders or by their attorneys, legal representatives or agents and delivered to the Fiscal Agent, the Authority and Government Development Bank for Puerto Rico (such demand to be effective only when received by the Fiscal Agent, the Authority and Government Development Bank for Puerto Rico). The Fiscal Agent may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Resolution with respect to the duties and obligations of the Fiscal Agent by any court of competent jurisdiction upon the application of the Authority or the holders of not less than five per centum (5%) in aggregate principal amount of the senior bonds then Outstanding hereunder or five per centum (5%) in aggregate principal amount of the subordinated bonds then Outstanding hereunder.

SECTION 709. (a) If at any time:

(i)     the Fiscal Agent shall cease to be eligible under Section 706 hereof and shall fail to resign after written request therefor by the Authority or by any bondholder who shall have been a bona fide bondholder for at least six months, or

(ii)    the Fiscal Agent shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Fiscal Agent or of its property shall be appointed or any public officer shall take charge or control of the Fiscal Agent or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (i) the Authority may remove the Fiscal Agent, or (ii) any bondholder who has been a bona fide bondholder for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Fiscal Agent and the appointment of a successor Fiscal Agent.

(b) If the Fiscal Agent shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Fiscal Agent for any cause, the Authority shall promptly appoint a successor Fiscal Agent.

73

HTA_CONF 00016372

(c) If, within one year after any resignation, removal or incapability, or the occurrence of any vacancy, a successor Fiscal Agent shall be appointed by the Authority, the holders of a majority in principal amount of the senior bonds then Outstanding by an instrument or concurrent instruments in writing delivered to the Authority and Government Development Bank for Puerto Rico and the retiring Fiscal Agent, shall appoint a successor Fiscal Agent, the successor Fiscal Agent so appointed shall, forthwith upon its acceptance of such appointment, become the successor Fiscal Agent and supersede the successor Fiscal Agent appointed by the Authority. If no successor Fiscal Agent shall have been so appointed by the Authority or the bondholders and accepted appointment in the manner hereinafter provided, any bondholder who has been a bona fide holder of a bond for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Fiscal Agent.

(d) The Authority shall give written notice by first-class mail, postage prepaid, of each resignation and each removal of the Fiscal Agent and each appointment of a successor Fiscal Agent to all bondholders. Each notice shall include the name and address of the principal corporate trust office of the successor Fiscal Agent.

SECTION 710. Every successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor, and also to the Authority, an instrument in writing accepting such appointment hereunder, and thereupon such successor, without any further act, shall become fully vested with all the rights, immunities powers and trusts, and subject to all the duties and obligations, of its predecessors; but such predecessor shall, nevertheless, on the written request of its successor or of the Authority, and upon payment of the expenses, charges and other disbursements of such predecessor which are payable pursuant to the provisions of Section 711 hereof, execute and deliver an instrument transferring to such successor all the rights, immunities, powers and trusts of such predecessor hereunder; and every predecessor Fiscal Agent shall deliver all property and moneys held by it hereunder to its successor. Should any instrument in writing from the Authority be required by any successor Fiscal Agent for more fully and certainly vesting in such Fiscal Agent the rights, immunities, powers and trusts hereby vested or intended to be vested in its predecessor, and such instrument in writing shall and will, on request, be executed, acknowledged and delivered by the Authority.

Notwithstanding any of the foregoing provisions of this Article, any bank or trust company having power to perform the duties and execute the trusts of this Resolution and otherwise qualified to act as Fiscal Agent hereunder with or into which the bank or trust company acting as Fiscal Agent may be merged, consolidated or converted, or to which the corporate trust business assets as a whole or substantially as a whole of such bank or trust company may be sold, shall be deemed the successor of the Fiscal Agent.

SECTION 711. Subject to the provisions of any contract between the Authority and the Fiscal Agent, the Authority shall, from unencumbered moneys to the credit of the Construction Fund or any other moneys available therefor, pay to the Fiscal Agent reasonable compensation for all services rendered by it hereunder and also all its reasonable expenses, charges and other disbursements and those of its attorneys, agents and employees incurred in and about the administration and execution of the trusts hereby created, and the performance of its powers and duties hereunder, and, from such moneys or any other funds available therefor, agrees to indemnify and save the Fiscal Agent harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder. In default of such payment by the Authority, the Fiscal Agent may deduct the same from any moneys coming into its hands and shall be entitled to a preference in payment over any of the bonds outstanding hereunder. The obligation of the

74

Authority under this Section shall survive payment of the bonds issued under this Resolution and the resignation or removal of the Fiscal Agent.

SECTION 712. The Fiscal Agent shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond or other paper or document.

SECTION 713. The Fiscal Agent may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys, and the Fiscal Agent shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

SECTION 714. The Fiscal Agent and any officer, director or employee thereof may become the owner or pledgee of bonds issued under this Resolution and may otherwise deal with the Authority with the same rights it would have were it not such Fiscal Agent.

## ARTICLE VIII.

### SUPPLEMENTAL RESOLUTIONS

SECTION 801. Without the consent of any bondholders, the Authority may, from time to time and at any time, adopt such resolutions supplemental hereto as shall not be inconsistent with the terms and provisions hereof (which supplemental resolutions shall thereafter form a part hereof)

(a) to cure any ambiguity or formal defect or omission or to correct any inconsistent provisions or errors in this Resolution, provided such action shall not adversely affect the interests of the bondholders, or

(b) to grant to or confer upon the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the bondholders, or

(c) to add to the conditions, limitations and restrictions on the issuance of bonds under the provisions of this Resolution other conditions, limitations and restrictions thereafter to be observed, or

(d) to add to the covenants and agreements of the Authority in this Resolution other covenants and agreements thereafter to be observed by the Authority or to surrender any right or power herein reserved to or conferred upon the Authority, or

(e) to amend the conditions, limitations and restrictions on the issuance of subordinated bonds or the covenants and agreements relating to the subordinated bonds (as shall not adversely affect the interests of the holders of any senior bonds) as may be required to enable the Authority to comply with the provisions of any federal legislation, rules or regulations or court decisions or orders relating to the receipt by the Authority of grants or other assistance from the United States Government.

Within thirty (30) days after the adoption of any supplemental resolution for any of the purposes of this Section, the Fiscal Agent shall at the request of the Authority cause a notice of the adoption of such supplemental resolution to be mailed, first-class, postage prepaid, to all

75

HTA_CONF 00016374

bondholders at their addresses as they appear on the registration books and to Government Development Bank for Puerto Rico. Such notice shall briefly set forth the nature of the supplemental resolution and shall state that copies thereof are on file at the office of the Fiscal Agent for inspection by all bondholders. A failure on the part of the Fiscal Agent to mail the notice required by this Section shall not affect the validity of such supplemental resolution.

SECTION 802. Subject to the terms and provisions contained in this Section, and not otherwise, the holders of not less than a majority in aggregate principal amount of the senior bonds and of the subordinated bonds then Outstanding affected thereby shall have the right, from time to time, anything contained in this Resolution to the contrary notwithstanding, to consent to and approve the adoption of such resolution or resolutions supplemental hereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Resolution; provided, however, that nothing herein contained shall permit, or be construed as permitting without the consent of the holders of all bonds affected thereby (a) an extension of the maturity of the principal of or the interest on any bond issued hereunder, or (b) a reduction in the principal amount of any bond or the redemption premium or the rate of interest thereon, or (c) the creation of a lien upon or a pledge of Revenues other than the liens and pledges created by or pursuant to this Resolution, or (d) a preference or priority of any bond or bonds over any other bond or bonds, (e) a reduction in the aggregate principal amount of the bonds required for consent to such supplemental resolution, or (f) a change in the subordination provisions. Nothing herein contained, however, shall be construed as making necessary the approval by bondholders of the adoption of any supplemental resolution as authorized in Section 801 of this Article.

If at any time the Authority shall determine that it is necessary or desirable to adopt any supplemental resolution for any of the purposes of this Section, the Fiscal Agent at the expense and request of the Authority shall cause notice of the proposed adoption of such supplemental resolution to be mailed, first-class, postage prepaid, to all bondholders and to Government Development Bank for Puerto Rico. Such notice shall briefly set forth the nature of the proposed supplemental resolution and shall state that copies thereof are on file at the office of the Fiscal Agent for inspection by all bondholders. The Fiscal Agent shall not, however, be subject to any liability to any bondholders by reason of its failure to cause the notice required by this Section to be mailed, and any such failure shall not affect the validity of such supplemental resolution when consented to and approved as provided in this Section.

Whenever, at any time within one year after the date of the mailing of such notice, the Authority shall obtain an instrument or instruments in writing purporting to be executed by the holders of not less than a majority in aggregate principal amount of the senior bonds and of the subordinated bonds then Outstanding, which instrument or instruments shall refer to the proposed supplemental resolution described in such notice and shall specifically consent to and approve the adoption thereof in substantially the form of the copy thereof referred to in such notice, and the Authority shall deliver to the Fiscal Agent a certificate signed by the Executive Director that the holders of such required percentage of bonds have filed such consents, thereupon, but not otherwise, the Authority may adopt such supplemental resolution in substantially such form, without liability or responsibility to any holder of any bond, whether or not such holder shall have consented thereto.

If the holders of not less than a majority in aggregate principal amount of the senior bonds and of the subordinated bonds Outstanding at the time of the adoption of such supplemental resolution shall have consented to and approved the adoption thereof as herein provided, no holder of any bond shall have any right to object to the adoption of such supplemental resolution, or to object to

76

HTA_CONF 00016375

any of the terms and provisions contained therein or the operation thereof, or in any manner to question the propriety of the adoption thereof, or to enjoin or restrain the Authority from adopting the same or from taking any action pursuant to the provisions thereof, and such consent shall be binding on the holder giving such consent and upon any subsequent holder, whether or not he has notice thereof.

SECTION 803. Upon the adoption of any supplemental resolution pursuant to the provisions of this Article, this Resolution shall be and be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Resolution of the Authority, the Fiscal Agent and all holders of bonds then outstanding shall thereafter be determined, exercised and enforced in all respects under the provisions of this Resolution as so modified and amended.

Any supplemental resolution adopted in accordance with the provisions of this Article shall thereafter form a part of this Resolution, and all of the terms and conditions contained in any such supplemental resolution as to any provision authorized to be contained therein shall be and shall be deemed to be part of the terms and conditions of this Resolution for any and all purposes. In case of the adoption and approval of any supplemental resolution, express reference may be made thereto in the text of any bonds issued thereafter, if deemed necessary or desirable by the Authority.

SECTION 804. No supplemental resolution pursuant to this Article changing, amending or modifying the rights or obligations of the Fiscal Agent may be adopted by the Authority without the written consent of the Fiscal Agent. The Fiscal Agent shall have no liability, duty, responsibility or obligation with respect to whether any supplemental resolution is authorized or permitted by this Resolution or whether any necessary consent of the holders of bonds has been obtained, or in any other respect whatsoever.

## ARTICLE IX.

## SUBORDINATION.

SECTION 901. The indebtedness evidenced by the subordinated bonds shall to the extent provided in this Article be subordinate and subject in right of payment to the prior payment in full of the senior bonds, and the holder of any subordinated bond whether upon original issue or upon transfer or assignment thereof accepts and agrees to be bound by such provision.

SECTION 902. Upon any payment or distribution of assets of the Authority upon any dissolution or winding up or total or partial liquidation of the Authority whether in bankruptcy, insolvency or receivership proceedings, or otherwise,

(1) all senior bonds shall first be paid or duly provided for to the extent of such payment or distribution before any payment is made upon the indebtedness evidenced by the subordinated bonds;

(2) any payment or distribution of assets of the Authority of any kind or character, whether in cash, property or securities, to which the holders of the subordinated bonds or the Fiscal Agent would be entitled except for the provisions of this Article, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of the Authority being subordinated to the payment of the subordinated bonds, shall be paid by the liquidating trustee or agent or other person making such payment

77

or distribution, whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise, directly to the holders of the senior bonds, to the extent necessary to pay or provide for the payment of all senior bonds in full before any payment is made upon the indebtedness evidenced by the subordinated bonds; and

(3) in the event that, notwithstanding the foregoing, upon any such dissolution or winding up or liquidation any payment or distribution of assets of the Authority of any kind or character, whether in cash, property or securities, including any such payment or distribution which may be payable or deliverable by reason of the payment of any other indebtedness of the Authority being subordinated to the payment of the subordinated bonds, shall be received by the Fiscal Agent or by the holders of the subordinated bonds before all senior bonds are paid or duly provided for in full, such payment or distribution shall be paid over to the holders of such senior bonds for application to the payment thereof until such senior bonds shall have been paid or provision for such payment shall have been made in full.

Upon any payment or distribution of assets of the Authority referred to in this Section the Fiscal Agent and the holders of the subordinated bonds shall be entitled to rely upon a certificate of the liquidating trustee or agent or other person making any payment or distribution to the Fiscal Agent or the holders of the subordinated bonds for the purpose of ascertaining the persons entitled to participate in such payment or distribution, the holders of the senior bonds and other indebtedness of the Authority, the amount thereof or payable thereon, the amount or amounts paid or distributed thereon and all other facts pertinent thereto, or to this Article.

SECTION 903. Nothing contained in this Resolution or in any of the senior bonds or subordinated bonds shall, however, (a) affect the obligation of the Authority to make, or prevent the Authority from making, at any time, except as provided in Section 902, payments of principal of or premium, if any, or interest on the senior bonds or the subordinated bonds, or (b) prevent the application by the Fiscal Agent of any moneys deposited with it hereunder for such purpose to the payment of or on account of the principal of or premium, if any, or interest on the senior bonds or the subordinated bonds, including moneys held for the credit of the Subordinated Bond Sinking Fund, if, at the time of such payment or deposit, the Fiscal Agent did not have written notice or actual knowledge of any event prohibiting the making of such deposit by the Authority.

SECTION 904. Subject to the payment in full of all senior bonds as provided in Section 902, the holders of the subordinated bonds shall be subrogated to the rights of the holders of senior bonds to receive payments or distributions of assets of the Authority made on the senior bonds until the subordinated bonds shall be paid in full, and no payments or distributions to the holders of the senior bonds by the Authority or by the holders of the subordinated bonds shall, as between the Authority and the holders of the subordinated bonds, be deemed to be a payment by the Authority to or on account of the subordinated bonds, it being understood that the provisions of this Article are and are intended solely for the purpose of defining the relative rights of the holders of the subordinated bonds and of the senior bonds and nothing in this Article shall or is intended to, as between the Authority and the holders of the subordinated bonds, impair the obligation of the Authority, which is unconditional and absolute, to pay from the sources herein provided to the holders of the subordinated bonds the principal of and premium, if any, and interest on the subordinated bonds in accordance with their terms, nor shall anything in this Article prevent the Fiscal Agent or the holder of any subordinated bond from exercising all remedies otherwise permitted by applicable law upon default hereunder, subject to the rights, if any, under this Article of the holders of senior bonds in respect of cash, property or securities of the Authority received upon the exercise of any such remedy.

78

HTA_CONF 00016377

SECTION 905. Any payment made under a Credit Facility, Liquidity Facility, Reserve Account Insurance Policy or Reserve Account Letter of Credit to the holders of the subordinated bonds having the benefit of such Credit Facility, Liquidity Facility, Insurance Policy or Letter of Credit by the appropriate obligor thereof shall be retained by such holders for their own account, and no holder of senior bonds is to have any right with respect to any such payment so made.

SECTION 906. As between the obligor whose Credit Facility, Liquidity Facility, Reserve Account Insurance Policy or Reserve Account Letter of Credit, as the case may be, secures any subordinated bond and the holder of such subordinated bonds, any payment made on such subordinated bond by the Authority which, under the subordination provisions of this Article, is required to be paid over to the holders of the senior bonds, shall not constitute a payment on such subordinated bond but, instead, shall be treated for all purposes of such Credit Facility, Liquidity Facility, Insurance Policy or Letter of Credit as though such payment had not been made by the Authority. Until the holder of the subordinated bond so guaranteed has received from the Authority, or from such obligor, moneys which such holder is entitled to retain for its own account, equal in the aggregate to the principal amount of his subordinated bond and any accrued and unpaid interest thereon, such obligor shall remain liable on its Credit Facility, Liquidity Facility, Reserve Account Insurance Policy or Reserve Account Letter of Credit and, unless otherwise provided in such Credit Facility, Liquidity Facility, Insurance Policy or Letter of Credit, shall not be subrogated to any of the rights of the holder of such subordinated bond.

SECTION 907. Unless otherwise provided therefor in the senior bonds, the holders of the senior bonds may extend, renew, modify or amend the terms of the senior bonds or any security therefor and release, sell or exchange such security and otherwise deal freely with the Authority, all without notice to or consent of the holders of the subordinated bonds and without affecting the liabilities and obligations of the Authority or the holders of the subordinated bonds.

ARTICLE X.

DEFEASANCE.

SECTION 1001. If there is paid or caused to be paid to the holders of all of the bonds secured hereby the principal of and interest on which is and shall thereafter become due and payable thereon, together with all other sums payable hereunder by the Authority, then and in that case the rights, title and interest of the Fiscal Agent hereunder shall cease, terminate and become void, and such bonds shall cease to be entitled to any lien, benefit or security under this Resolution. In such event, the Authority shall repeal and cancel this Resolution and the Fiscal Agent shall transfer and assign to the Authority all property then held by the Fiscal Agent, shall execute such documents as may be reasonably required by the Authority to evidence such transfer and assignment and shall turn over to the Authority or to such other person or entity as the Authority shall direct in writing to the Fiscal Agent any surplus in the Senior Bond Sinking Fund, the Subordinated Bond Sinking Fund and the balances remaining in any other fund or accounts, other than moneys held for the payment or redemption of bonds. If the Authority shall pay or cause to be paid to the holders of less than all of the Outstanding bonds the principal of and interest which is and shall thereafter become due and payable upon such bonds, such bonds, or portions thereof, shall cease to be entitled to any lien, benefit or security under this Resolution.

Any Outstanding bond, or any portion thereof in the principal amount of the lowest authorized denomination or any multiple thereof, shall be deemed to have been paid within the meaning and with the effect expressed in this Section 1001 when the whole amount of the principal of and

79

interest on such bond shall have been paid or when (a) in case such bond or portion thereof has been selected for redemption in accordance with Section 301 hereof prior to its maturity, the Authority shall have given to the Fiscal Agent irrevocable instructions to give in accordance with the provisions of Section 302 hereof notice of redemption of such bond or portion thereof, (b) whether or not such bond or portion thereof, has been selected for redemption, there shall be on deposit with the Fiscal Agent moneys, or Government Obligations which shall not contain provisions permitting the redemption thereof other than at the option of the holder the principal of and the interest on which when due, and without any reinvestment thereof, will provide moneys which shall be, sufficient to pay when due the principal of and premium, if any, and interest due and to become due on such bond or portion thereof on or prior to the redemption date or maturity date thereof, as the case may be (calculated in the case of interest on Variable Rate Bonds at the maximum rate permitted by the terms of such Bonds), and (c) in the event such bond does not mature and is not to be redeemed within the next succeeding 60 days, the Authority shall have given the Fiscal Agent irrevocable instructions to give notice, as soon as practicable in the same manner as a notice of redemption is given pursuant to Section 302 hereof, to the holder of such bond, or portion thereof, stating that the deposit of moneys or Government Obligations required by clause (b) of this paragraph has been made with the Fiscal Agent and that such bond, or portion thereof, is deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal of and premium, if any, and interest on such bond or such portion. If payment of less than all of the bonds is to be provided for in the manner and with the effect expressed in this Section, the Fiscal Agent shall select such bonds, or portions thereof, in the manner specified in Section 301 hereof for selection for redemption of less than all of the bonds in the principal amounts designated by the Authority.

The moneys and Government Obligations deposited with the Fiscal Agent pursuant to this Section and all payments of principal of or interest on any such Obligations shall not be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of and premium, if any, and interest on said bonds, or portions thereof, deemed to have been paid in accordance with this Section. If bonds, or portions thereof, are deemed to have been paid in accordance with the provisions of this Article by reason of the deposit with the Fiscal Agent of moneys and Government Obligations, no amendment to the provisions of this Section which would adversely affect the holders of such bonds, or portions thereof, shall be made without the consent of each holder affected thereby.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS.

SECTION 1101. Nothing in this Resolution expressed or implied shall be construed as preventing the Authority from financing any facilities authorized by the Enabling Act by the issuance of bonds or other obligations which are not secured under the provisions of this Resolution.

SECTION 1102. All of the covenants, stipulations, obligations and agreements contained in this Resolution shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by law, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor or successors thereof from time to time, and upon any officer, board, commission, authority, agency or instrumentality to whom or to

HTA_CONF 00016379

which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

SECTION 1103. Any notice, demand, direction, request or other instrument authorized or required by this Resolution to be given to or filed with the Authority or the Fiscal Agent shall be deemed to have been sufficiently given or filed for all purposes of this Resolution:

To the Authority, if and when sent by registered mail, return receipt requested to the Authority if addressed to the Executive Director of the Authority, San Juan, Puerto Rico; and

To the Fiscal Agent, if given or made in writing at the corporate trust office of the Fiscal Agent addressed to the attention of its Corporate Trust Department.

Any notice required or permitted to be mailed hereunder shall be given by first class mail, postage prepaid.

All documents received by the Fiscal Agent under the provisions of this Resolution and not required to be redelivered shall be retained in its possession, subject at all reasonable times to the inspection of the Authority, any bondholder and the agents and representatives thereof.

SECTION 1104. Except as herein otherwise expressly provided, nothing in this Resolution expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the Authority, the Fiscal Agent and the holders of the bonds issued under and secured by this Resolution any right, remedy or claim, legal or equitable, under or by reason of this Resolution or any provision hereof, this Resolution and all its provisions being intended to be and being for the sole and exclusive benefit of the Authority, the Fiscal Agent and the holders from time to time of the bonds issued hereunder.

SECTION 1105. In case any one or more of the provisions of this Resolution or of the bonds issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Resolution or of said bonds, but this Resolution and said bonds shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Resolution shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

SECTION 1106. No covenant, stipulation, obligation or agreement contained herein or in the bonds shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member of the Authority or agent, officer or employee of the Authority in his individual capacity, and neither the members of said Authority nor any official executing the bonds shall be liable personally on the bonds or be subject to any personal liability or accountability by reason of the issuance thereof. This Resolution is adopted with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

SECTION 1107. The officers and agents of the Authority are hereby authorized and directed to do all the acts and things required of them by the bonds and this Resolution for the full, punctual and complete performance of all of the terms, covenants, provisions and agreements contained in the bonds and this Resolution.

81

HTA_CONF 00016380

SECTION 1108. · All resolutions and parts thereof, which are in conflict or inconsistent with any provisions of this Resolution are hereby repealed and declared to be inapplicable to the provisions of this Resolution.

SECTION 1109. (a) For the purposes of (i) receiving payment of the redemption price if a Capital Appreciation Bond is redeemed prior to maturity or (ii) computing the amount of bonds held by the owner of a Capital Appreciation Bond in giving to the Authority or the Fiscal Agent any notice, consent, request or demand pursuant to this Resolution for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value.

(b) For the purposes of (i) receiving payment of the redemption price if a Capital Appreciation and Income Bond is redeemed prior to maturity or (ii) computing the amount of bonds held by the owner of a Capital Appreciation and Income Bond in giving to the Authority or the Fiscal Agent any notice, consent, request or demand pursuant to this Resolution for any purpose whatsoever, the principal amount of a Capital Appreciation and Income Bond shall be deemed to be its Appreciated Value.

SECTION 1110. (a) Any request, direction, consent or other instrument in writing required or permitted by this Resolution to be signed or executed by the holders of the bonds may be in any number of concurrent instruments of similar tenor and may be signed or executed by such holders or their attorneys or legal representatives. Proof of the execution of any such instrument and of the ownership of bonds shall be sufficient for any purpose of this Resolution and shall be conclusive in favor of the Fiscal Agent with regard to any action taken by it under such instrument if made in the following manner:

(1) The fact and date of the execution by any person of any such instrument may be proved by the verification of any officer in any jurisdiction who, by the laws thereof, has power to take affidavits within such jurisdiction, to the effect that such instrument was subscribed and sworn to before him, or by an affidavit of a witness to such execution. Where such execution is by a person other than an individual, such verification or affidavit shall also constitute sufficient proof of the authority of the signer.

(2) The ownership of bonds shall be proved by the registration books kept under the provisions of Section 205 hereof.

Nothing contained in this Section shall be construed as limiting the Fiscal Agent to such proof, it being intended that the Fiscal Agent may accept any other evidence of the matters herein stated which may be sufficient.

(b) If the Authority shall solicit from the holders any request, direction, consent or other instrument in writing required or permitted by this Resolution to be signed or executed by the holders of the bonds, the Authority may, at its option, fix in advance a record date for the determination of holders entitled to give such request, direction, consent or other instrument, but the Authority shall have no obligation to do so. If such a record date is fixed, such request, direction, consent or other instrument may be given before or after such record date, but only the holders of record at the close of business on such record date shall be deemed to be holders for the purposes of determining whether holders of the requisite proportion of bonds have authorized or agreed or consented to such request, direction, consent or other instrument, and for that purpose the bonds shall be computed as of such record date; provided that no such consent by the holders on such record date shall be deemed effective unless it shall become effective pursuant to the provisions of this Resolution not later than six months after the record date.

82

HTA_CONF 00016381

(c)  Any request or consent of the holder of any bond shall bind every future holder of the same bond or any bond issued in place thereof in respect of anything done by the Fiscal Agent in pursuance of such request or consent.

SECTION 1111.  The provisions of this Resolution shall become effective immediately upon its passage.

PASSED AND ADOPTED February 26, 1998.

83

## CERTIFICATE OF SECRETARY OF PUERTO RICO HIGHWAYS AND
## TRANSPORTATION AUTHORITY AS TO THE ATTACHED RESOLUTION

I, **Rebeca F. Rojas Colón,** Secretary of Puerto Rico Highways and Transportation Authority ("PRHTA"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the following resolution number 1998-06 duly adopted by the Secretary of Transportation and Public Works on February 26, 1998.

**IN WITNESS WHEREOF,** I have hereunto set my hand this 2nd day of December, 2009.

Rebeca F. Rojas Colón, Esq.
Secretary
Puerto Rico Highways and Transportation Authority

HTA_CONF 00016383

**APPENDIX A**

Unless the context otherwise requires, the terms defined below in this Appendix A shall have the meanings defined herein, the following definitions to be equally applicable to both the singular and plural forms of any of the terms defined herein:

Alternate Liquidity Facility

"Alternate Liquidity Facility" has the meaning specified in Section 24 hereof.

Alternate Rate

"Alternate Rate" means, on any Rate Determination Date, the rate per annum specified in the index (the "Index") published by the Indexing Agent and in effect on such Rate Determination Date. The Index shall be based upon yield evaluations at par of bonds, the interest on which is excluded from gross income for federal income tax purposes, of not less than five "high grade" component issuers selected by the Indexing Agent which issuers shall include, without limitation, issuers of general obligations bonds and which issuers may be changed from time to time by the Indexing Agent in its discretion and which bonds on which the Index is based shall not include any bonds the interest on which is subject to a "minimum tax" or similar tax under the Code, unless all tax-exempt bonds are subject to such tax. The yield evaluation period for the Index shall be 30-day yield evaluations.

If no Index satisfying the requirements of the preceding paragraph is published, the Alternate Rate for an Interest Period shall be the rate per annum specified in the most recently published Index for a comparable Interest Period.

Authorized Denominations

"Authorized Denominations" means (i) with respect to Series A Variable Rate Bonds in a Weekly Mode, $100,000 and any multiple thereof, and (ii) with respect to Bonds in a Fixed Rate Mode, $5,000 and any multiple thereof.

Available Interest Commitment

"Available Interest Commitment" means the amount of the interest portion of the Standby Agreement during the Weekly Mode.

Bank

"Bank" means the provider of the Standby Agreement.

A-1

HTA_CONF 00016384

<u>Bank Interest Rate</u>

"Bank Interest Rate" means the interest rate, not to exceed the maximum interest rate permitted by law, payable on Bank-Owned Bonds and determined pursuant to the Standby Agreement.

<u>Bank-Owned Bonds</u>

"Bank-Owned Bonds" has the meaning specified in Section 23 hereof.

<u>Bond Counsel</u>

"Bond Counsel" means any firm of nationally recognized municipal bond attorneys selected by the Authority and experienced in the issuance of municipal bonds and matters relating to the exclusion of the interest thereon from gross income for federal income tax purposes.

<u>Business Day</u>

"Business Day" means a day on which the Fiscal Agent, the Remarketing Agent, the Bank or banks or trust companies in New York, New York, are not authorized or required to remain closed and on which the New York Stock Exchange is not closed.

<u>Electronic Means</u>

"Electronic Means" means telecopy, telegraph, telex, facsimile transmission or other similar electronic means of communication, including a telephonic communication confirmed by writing or written transmission.

<u>Expiration Tender Date</u>

"Expiration Tender Date" means the day [five] Business Days before the then outstanding Standby Agreement is to expire or terminate.

<u>Favorable Opinion of Bond Counsel</u>

"Favorable Opinion of Bond Counsel" means, with respect to any action the occurrence of which requires such an opinion, an unqualified Opinion of Counsel, which shall be Bond Counsel, to the effect that such action is permitted under the Enabling Act and this resolution and will not impair the exclusion of interest on the Series A Variable Rate Bonds from gross income for purposes of Federal income taxation (subject to the inclusion of any exceptions similar to those contained in the opinion delivered upon original issuance of the Series A Variable Rate Bonds).

A-2

Fixed Rate

"Fixed Rate" means the per annum interest rate or rates to be borne by the Series A Variable Rate Bonds on and after a Mode Change Date, which rate or rates shall be determined in accordance with Sections 7 and 10 hereof.

Fixed Rate Bonds

"Fixed Rate Bonds" means the Series A Variable Rate Bonds during the Fixed Rate Mode.

Fixed Rate Mode

"Fixed Rate Mode" means the Mode during which the Series A Variable Rate Bonds bear interest at a Fixed Rate.

Indexing Agent

"Indexing Agent" means Kenny Information Systems, a corporation duly organized and existing under the laws of the State of New York, and its successors and assigns, except that if such corporation shall be dissolved or liquidated or shall no longer publish the indices referred to in the definition of Alternate Rate, then the term "Indexing Agent" shall be deemed to refer to any other entity selected by the Authority publishing similar indices and approved by the Bank and the Remarketing Agent.

Indicative Rate

"Indicative Rate" means the interest rate or rates determined by the Remarketing Agent on the Indicative Rate Determination Date as the lowest fixed rate or rates which would in the sole judgment of the Remarketing Agent, under existing market conditions, result in the sale of the Series A Variable Rate Bonds on such Rate Determination Date at a price equal to the Purchase Price.

Indicative Rate Determination Date

"Indicative Rate Determination Date" means the thirty-fourth (34th) day next preceding the Mode Change Date with respect to a change to the Fixed Rate Mode.

Interest Accrual Period

"Interest Accrual Period" means the period during which the Series A Variable Rate Bonds accrue interest payable on any Interest Payment Date. Each Interest Accrual Period shall commence on the last Interest Payment Date to which interest has been paid (or, if no interest has been paid in such Mode, from the date of original authentication and delivery of the Series A Variable Rate Bonds,

A-3

HTA_CONF 00016386

or the Mode Change Date, as the case may be) to, but not including, the Interest Payment Date on which interest is to be paid.

Interest Payment Date

"Interest Payment Date" means (i) with respect to the Fixed Rate Mode each January 1 and July 1; and (ii) with respect to the Weekly Mode, the first Wednesday of each month; (iii) with respect to Bank-Owned Bonds, the dates required under the Standby Agreement; (iv) any Mode Change Date; and (v) the Maturity Date.

Interest Period

"Interest Period" means the period of time that an interest rate remains in effect.

Mandatory Purchase Date

"Mandatory Purchase Date" means (i) the Mode Change Date, (ii) the Substitution Tender Date, and (iii) the date specified by the Bank in the second sentence of Section 15.

Maturity Date

"Maturity Date" means July 1, 2028 and, upon a change to the Fixed Rate Mode, any Serial Maturity Date established pursuant to Section 7.

Maximum Rate

"Maximum Rate" means, on any day, the maximum rate permitted by Puerto Rico law.

Mode

"Mode" means, as the context may require, the Weekly Mode or the Fixed Rate Mode.

Mode Change Date

"Mode Change Date" means the day following the last day of the Weekly Rate Mode on which the Fixed Mode begins.

Mode Change Notice

"Mode Change Notice" means the notice from the Authority to the other Notice Parties of the Authority's intention to change Modes.

A-4

HTA_CONF 00016387

Moody's

"Moody's" means Moody's Investors Service, a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, and its successors and assigns, except that if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, then the term "Moody's" shall be deemed to refer to any other nationally recognized securities rating agency selected by the Authority and approved by the Bank.

Notice Parties

"Notice Parties" means the Authority, the Remarketing Agent, the Fiscal Agent and the Bank.

Opinion of Counsel

"Opinion of Counsel" means a written legal opinion from a firm of attorneys experienced in the matters to be covered in the opinion and acceptable to Moody's and S&P.

Owner

"Owner" means the registered owner of a Series A Variable Rate Bond.

Principal Payment Date

"Principal Payment Date" means any date upon which the principal amount of Series A Variable Rate Bonds is due hereunder, including the Maturity Date, any Serial Maturity Date, any Redemption Date, or the date the maturity of any Bond is accelerated pursuant to the terms hereof or otherwise.

Purchase Account

"Purchase Account" means the account by that name created in Section 21 hereof.

Purchase Date

"Purchase Date" means with respect to Series A Variable Rate Bonds (i) during the Weekly Mode, any Business Day on which the Owners of Series A Variable Rate Bonds have elected to have their Bonds (or portion thereof) purchased in accordance with Section 13 and (ii) with respect to Bank-Owned Bonds, any Business Day on which the Remarketing Agent is able to sell such Bonds.

A-5

HTA_CONF 00016388

Purchase Fund

     "Purchase Fund" means the Puerto Rico Highways and Transportation Authority Series A Variable Rate Bonds Purchase Fund, the special fund created and designated in Section 21 hereof.

Purchase Price

     "Purchase Price" means (i) an amount equal to the principal amount of any Series A Variable Rate Bonds (or any portions thereof) purchased on any Purchase Date, plus, in the case of any purchase of Series A Variable Rate Bonds (or portions thereof) in the Weekly Mode, accrued interest, if any, to the Purchase Date, or (ii) an amount equal to the principal amount of any Series A Variable Rate Bonds (or portions thereof) purchased on a Mandatory Purchase Date, plus, accrued interest, if any, to the Mandatory Purchase Date.

Rate Determination Date

     "Rate Determination Date" means the date on which the interest rate or rates on the Series A Variable Rate Bonds shall be determined, which, (i) in the case of the Weekly Mode, shall be each Tuesday or, if Tuesday is not a Business Day, the next succeeding day or, if such day is not a Business Day, then the Business Day next preceding such Tuesday; and (ii) in the case of the Fixed Rate Mode, shall be a date determined by the Remarketing Agent which shall be at least one Business Day and not more than twenty days prior to the Mode Change Date.

Rating Confirmation Notice

     "Rating Confirmation Notice" means a notice from each rating agency then rating the Series A Variable Rate Bonds confirming that the rating on such Bonds will not be lowered or withdrawn (other than a withdrawal of a short term rating upon a change to the Fixed Rate Mode) as a result of the action proposed to be taken.

Record Date

     "Record Date" means (i) with respect to Series A Variable Rate Bonds in the Weekly Mode, the day (whether or not a Business Day) next preceding each Interest Payment Date, and (ii) with respect to Series A Variable Rate Bonds in the Fixed Rate Mode, the fifteenth (15th) day (whether or not a Business Day) of the month next preceding an Interest Payment Date.

Redemption Date

     "Redemption Date" means the date fixed for redemption of Series A Variable Rate Bonds.

A-6

Redemption Price

"Redemption Price" means an amount equal to the principal of and premium, if any, and accrued interest, if any, on the Series A Variable Rate Bonds to be paid on the Redemption Date.

Remarketing Agent

"Remarketing Agent" means PaineWebber Incorporated, or any other successor investment banking firm performing the duties of the Remarketing Agent as provided in Section 26 hereof.

Remarketing Agreement

"Remarketing Agreement" means that certain Remarketing Agreement relating to the Series A Variable Rate Bonds, dated as of February 15, 1998, by and between the Authority and the Remarketing Agent or any similar agreement between the Authority and any successor Remarketing Agent, as it may be amended or supplemented from time to time in accordance with its terms.

Remarketing Proceeds Account

"Remarketing Proceeds Account" means the account by that name created in Section 21 hereof.

Seasoned Funds

"Seasoned Funds" means (i) moneys derived from the remarketing of Series A Variable Rate Bonds or the purchase of said Bonds under the Standby Agreement pursuant to Section 16 hereof, (ii) moneys received by the Fiscal Agent and held in funds and accounts created under the Bond Resolution or this resolution for a period of at least one hundred twenty-four (124) consecutive days and not commingled with any moneys so held for less than said period and during and prior to which period no petition in bankruptcy was filed by the Authority under the United States Bankruptcy Code, (iii) moneys with respect to which the Fiscal Agent shall have received an Opinion of Counsel experienced in matters pertaining to the United States Bankruptcy Code that the contemplated use of such moneys would not constitute a transfer of property voidable under Section 544 or 547 of the United States Bankruptcy Code should the Authority become a debtor under such Code or (iv) investment income derived from the investment of moneys described in clause (i), (ii) or (iii).

Serial Bonds

"Serial Bonds" shall be the Series A Variable Rate Bonds maturing on the Serial Maturity Dates, as determined pursuant to Section 6(iii) hereof.

HTA_CONF 00016390

Serial Maturity Date

"Serial Maturity Date" has the meaning giving it in Sections 6(iii) hereof.

Serial Payment

"Serial Payment" means the payment of principal of the Serial Bonds on a Serial Maturity Date.

S&P

"S&P" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., a corporation duly organized and existing under and by virtue of the laws of the State of New York, and its successors and assigns, except that if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, then the term "S&P" shall be deemed to refer to any other nationally recognized securities rating agency selected by the Authority and approved by the Bank.

Standby Agreement

"Standby Agreement" means that certain Standby Bond Purchase Agreement, dated as of February 15, 1998, by and among the Bank, the Fiscal Agent and the Authority or, if an Alternate Liquidity Facility has been delivered, the corresponding agreement, if any, in connection with such Alternate Liquidity Facility.

Substitution Date

"Substitution Date" means the date on which an Alternate Liquidity Facility is to be delivered to the Fiscal Agent.

Substitution Tender Date

"Substitution Tender Date" means the date five Business Days prior to the Substitution Date.

Weekly Mode

"Weekly Mode" means the Mode during which the Weekly Rate is in effect.

Weekly Rate

"Weekly Rate" means the per annum interest rate on any Series A Variable Rate Bond in the Weekly Mode determined pursuant to Section 5 hereof which, initially, shall be in effect from and including the date of delivery of and payment for the Series A Variable Rate Bonds to and including the

A-8

HTA_CONF 00016391

following Tuesday and, thereafter, from and including each Wednesday to and including the following Tuesday.

SECTION 1. <u>Form and Denominations</u>. The Series A Variable Rate Bonds shall be issued in the form of fully registered Bonds in Authorized Denominations.

SECTION 2. <u>Principal Amount; Maturity; Amortization Requirements; Place of Payment; and Dating of Series A Variable Rate Bonds</u>. The Series A Variable Rate Bonds shall be issued in the aggregate principal amount of $200,000,000 and shall be stated to mature, subject to the right of prior redemption as hereinafter set forth and to the serialization of said Bonds as permitted in Section __ hereof, on the 1st day of July, 2028.

The interest on the Series A Variable Rate Bonds shall be paid on the Interest Payment Dates by wire transfer of immediately available funds to an account specified by the Owner in a writing delivered to the Fiscal Agent in the case of Series A Variable Rate Bonds in the Weekly Mode. Any such request shall remain in effect until revoked or revised by such Owner by an instrument in writing delivered to the Fiscal Agent. The principal of and premium, if any, on each Series A Variable Rate Bond shall be payable on the applicable Principal Payment Date, upon presentation and surrender thereof at the principal corporate trust office of the Fiscal Agent.

The Remarketing Agent may treat the Owner of a Series A Variable Rate Bond as the absolute owner thereof for all purposes and to the same extent as the Authority and the Fiscal Agent may by virtue of Section 205 of the Bond Resolution.

The Series A Variable Rate Bonds shall be dated the date of authentication and delivery thereof.

SECTION 3. <u>All Times to be New York City Time</u>. All times set forth in this Appendix by which actions must be taken, shall be understood to be New York City time.

SECTION 4. <u>Calculation and Payment of Interest</u>. (a) When the Weekly Mode is in effect, interest shall be calculated on the basis of a 365/366 day year for the actual number of days elapsed. When the Fixed Rate Mode is in effect, interest shall be calculated on the basis of a 360 day year consisting of twelve 30-day months. Payment of interest shall be made on each Interest Payment Date for unpaid interest accrued during the Interest Accrual Period.

(b) The Series A Variable Rate Bonds shall initially be in the Weekly Mode and may be converted in whole to the Fixed Rate Mode at the time and in the manner hereinafter provided. Subsequent to such conversion in Mode, the Fixed Rate Mode shall be in effect until the Maturity Date and may not be changed. Prior to the change to the Fixed Rate Mode, the Authority must deliver to the Fiscal Agent a Favorable Opinion of Bond Counsel with respect to such change.

A-9

HTA_CONF 00016392

(c)  Absent manifest error, the interest rates contained in the records of the Fiscal Agent shall be conclusive and binding upon the Authority, the Remarketing Agent, the Fiscal Agent, the Bank and the Owners.

(d)  In the absence of manifest error, the determination of interest rates by the Remarketing Agent shall be conclusive and binding upon the Remarketing Agent, the Fiscal Agent, the Bank, the Authority and the Owners.

SECTION 5.  Determination of Interest Rate During the Weekly Mode.  The interest rate for the Series A Variable Rate Bonds in the Weekly Mode shall be the rate of interest per annum determined by the Remarketing Agent on and as of the Rate Determination Date as that minimum rate of interest which, in the judgment of the Remarketing Agent under then existing market conditions, would result in the sale of all such Bonds on the Rate Determination Date at a price equal to the Purchase Price.

The Remarketing Agent shall determine the Weekly Rate by 4:00 p.m. on each Rate Determination Date.  The Remarketing Agent shall make the Weekly Rate available (i) after 4:00 p.m. on the Rate Determination Date by telephone to the Fiscal Agent, any Owner or other Notice Party requesting such rate and (ii) by Electronic Means to the Fiscal Agent not later than the second Business Day immediately succeeding the Rate Determination Date.

SECTION 6.  Determination of Fixed Rate(s).  The Remarketing Agent shall determine the Fixed Rate and any Serial Maturities in the manner and at the times described below:

(i)  Not later than 4:00 p.m. on the Indicative Rate Determination Date, the Remarketing Agent shall determine an Indicative Rate or, if Serial Bonds are created, as described in clause (iii) below, Indicative Rates and shall give notice of such Rate or Rates to the Fiscal Agent by Electronic Means not later than 4:30 p.m. on such Date, and the Fiscal Agent shall then immediately notify the Authority by Electronic Means of the Rate or Rates so determined.

(ii)  Not later than 4:00 p.m. on the Rate Determination Date, the Remarketing Agent shall determine the Fixed Rate for the Series A Variable Rate Bonds.  The Remarketing Agent shall make the Fixed Rate available by telephone to any Notice Party requesting the same.

(iii)  In connection with the establishment of the Fixed Rate, the Remarketing Agent shall, at the request of the Authority, designate such principal amount of the Series A Variable Rate Bonds corresponding to one or more of the Amortization Requirements to mature on July 1 (any such July 1, a "Serial Maturity Date") immediately after the fiscal year to which such Amortization Requirement relates and to designate a Fixed Rate for such principal amount; provided, that the Authority may specify another method of establishing the principal amounts of the Series A Variable Rate Bonds and Serial Maturity Dates upon receipt by the Fiscal Agent and the Remarketing Agent of a Favorable Opinion of Bond Counsel.

A-10

HTA_CONF 00016393

SECTION 7. <u>Alternate Rate for Interest Calculation</u>. If with respect to the Series A Variable Rate Bonds during the Weekly Mode the Remarketing Agent fails or is unable to determine the Weekly Rate, the Series A Variable Rate Bonds shall thereupon, until such time as the Remarketing Agent again makes such determination or until there is delivered an Opinion of Counsel to the effect that the method of determining such rate is enforceable, bear interest at the Alternate Rate from the last date on which such Weekly Rate was effective.

SECTION 8. <u>Interest on Bank-Owned Bonds</u>. Subject to the provisions of the last paragraph of Section 23 below, each Bank-Owned Bond shall bear interest on the outstanding principal amount thereof at the Bank Interest Rate for each day from and including the date any Series A Variable Rate Bond becomes a Bank-Owned Bond to, but not including, the date such Bond is paid in full.

If the rate of interest payable on Bank-Owned Bonds shall exceed the Maximum Rate for any period for which interest is payable, (a) interest at the Maximum Rate shall be due and payable with respect to such period, and (b) interest at the rate equal to the difference between (i) the rate of interest calculated in accordance with the Standby Agreement and (ii) the Maximum Rate (the "Excess Interest") shall be deferred until such date as the rate of interest calculated in accordance with the Standby Agreement ceases to exceed the Maximum Rate, at which time the Authority shall pay to the Bank such portion of the deferred Excess Interest as will cause the rate of interest then paid to the Bank on such Bank-Owned Bonds to equal the Maximum Interest Rate, which payments of deferred Excess Interest shall continue until all deferred Excess Interest is fully paid to the Bank. If Bank-Owned Bonds are transferred by the Bank or the principal amount thereof is paid before payment in full to the Bank of the Excess Interest, the provisions of this Section shall continue to apply until all Excess Interest owing the Bank for all periods during which it held such Bank-Owned Bonds has been paid.

Interest on Bank-Owned Bonds shall be payable as provided in the Standby Agreement. Bank-Owned Bonds shall not bear interest at the Bank Interest Rate after such Bonds have been remarketed unless such Bonds shall again become Bank-Owned Bonds. Interest on Bank-Owned Bonds shall be calculated based upon a 360 day year for the actual number of days elapsed.

SECTION 9. <u>Change to Fixed Rate Mode</u>. Subject to the provisions of this Section, the Authority may effect a change to the Fixed Rate Mode with respect to the Series A Variable Rate Bonds by following the procedures set forth in this Section.

Not less than forty-five (45) days (or such shorter time as may be agreed to by the Authority, the Fiscal Agent and the Remarketing Agent) before the proposed Mode Change Date, the Authority shall give written notice to the Notice Parties stating that the Mode will be changed to the Fixed Rate Mode and setting forth the proposed Mode Change Date.

Any such change in Mode shall be made as follows:

(i) The Mode Change Date shall be a Business Day.

A-11

HTA_CONF 00016394

(ii)   Not less than 30 days before the proposed Mode Change Date, the Fiscal Agent shall cause a notice of such proposed change, signed in the name of the Authority by the Fiscal Agent, to be mailed, postage prepaid, to the Owners stating:

(A)   that the Mode will be changed to the Fixed Rate Mode;

(B)   the proposed Mode Change Date;

(C)   the expected Indicative Rate(s), together with a statement that the actual Fixed Rate may be greater than or less than the Indicative Rate(s) and, if the Authority has requested the Remarketing Agent to designate Serial Maturities pursuant to Section 6(iii) above, a listing of such expected Maturities;

(D)   the date by which the Fixed Rate and Serial Maturities will be determined and the procedure, which may include providing a telephone number which an Owner may call, for informing the Owner of such Fixed Rate and Maturities;

(E)   the Interest Payment Dates for the payment of interest at the Fixed Rate;

[(F)   that the Series A Variable Rate Bonds will no longer be subject to redemption at the option of the Authority;] [to be discussed]

(G)   that, subject to such Owner's right to elect to retain such Owner's Series A Variable Rate Bonds after the proposed Mode Change Date, such Owner is required to tender his Series A Variable Rate Bonds for purchase on the Mode Change Date (describing the procedures to be followed to exercise such election to retain including the election deadline);

(H)   that from and after the Mode Change Date, the Standby Agreement will no longer be in effect and the anticipated ratings on the Bonds;

(I)   if the Authority has requested the Remarketing Agent to serialize all or a portion of the Series A Variable Rate Bonds as set forth in Section 6(iii) above, and an Owner elects to retain his Series A Variable Rate Bonds in the Fixed Rate Mode, such retained Bonds shall mature on the first Serial Maturity designated unless a later Maturity may be accommodated;

(J)   the conditions to the effectiveness of the change in Mode as set forth in clause (iii) below; and

A-12

HTA_CONF 00016395

      (K)     if all conditions precedent to the effectiveness of the change in Mode are not met, the Series A Variable Rate Bonds will remain in the Mode applicable thereto prior to the proposed change.

     (iii)   The change to the Fixed Rate Mode shall not occur unless there shall have been delivered to the Fiscal Agent and the Remarketing Agent on the proposed Mode Change Date a Favorable Opinion of Bond Counsel dated the Mode Change Date and addressed to the Fiscal Agent and the Remarketing Agent.

     (iv)   If any of the conditions precedent have not been satisfied on or prior to the proposed Mode Change Date, the Fixed Rate Mode shall not become effective, and all Series A Variable Rate Bonds will remain in the Weekly Mode.

    SECTION 10.  Redemption Provisions.  The Series A Variable Rate Bonds at the time outstanding may be redeemed prior to maturity on any Interest Payment Date at the option of the Authority from any Seasoned Funds (other than moneys deposited in the Senior Bond Sinking Fund (as defined in the Bond Resolution) in respect of an Amortization Requirement) either in whole or in part, at the principal amount of the Series A Variable Rate Bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption, without premium; provided, however, that an amount of the Series A Variable Rate Bonds equal to the Amortization Requirements therefor may be redeemed from moneys in the Sinking Fund on July 1, 2019 and on July 1 in each year thereafter (to the extent Serial Maturities have not been established as set forth in Section 6(iii)) at par and accrued interest, without premium.

    Rider X. [To Come.]

    SECTION 11.  Selection of Bonds for Redemption.  Notwithstanding the last paragraph of Section 301 of the Bond Resolution, Bank-Owned Bonds shall be selected for redemption prior to the selection of any other Series A Variable Rate Bonds if less than all the Series A Variable Rate Bonds shall be called for redemption.

    SECTION 12.  Notice of Redemption.  The Fiscal Agent shall give a copy of each notice of redemption of any Series A Variable Rate Bonds to the Bank and the Remarketing Agent.

    SECTION 13.  Optional Tenders of Series A Variable Rate Bonds in the Weekly Mode.  Each Owner of Series A Variable Rate Bonds in the Weekly Mode may elect to have his Series A Variable Rate Bonds (or portions thereof in Authorized Denominations) purchased on any Business Day at a price equal to the Purchase Price, upon delivering irrevocable written notice of tender or irrevocable telephonic notice of tender to the Remarketing Agent, promptly confirmed in writing to the Remarketing Agent, not later than 4:00 p.m. on a Business Day not less than seven (7) days before the Purchase Date specified by the Owner in such notice; and delivering such Bonds (with all necessary endorsements) to the principal corporate trust office of the Fiscal Agent in the Borough of Manhattan, City and State of New York, not later than 12:00 noon on such Purchase Date.  Each notice of tender

HTA_CONF 00016396

shall state the CUSIP number, Bond number and the principal amount of such Bond (or portion thereof) and that such Bond (or portion thereof) shall be purchased on the Purchase Date specified above. The Remarketing Agent shall promptly return any written notice that is incomplete or improperly completed or not delivered within the times required by this resolution to the person or persons submitting any such notice upon surrender of the receipt, if any, issued therefor. The Remarketing Agent's determination of whether a notice is properly completed or delivered on a timely basis shall be binding on the Notice Parties and the Owner of the Series A Variable Rate Bond submitting such notice. All Series A Variable Rate Bonds so purchased shall be delivered (with all necessary endorsements) at or before 12:00 noon on the Purchase Date at the principal corporate trust office of the Fiscal Agent in the Borough of Manhattan, City and State of New York; provided, however, that payment of the Purchase Price shall be made pursuant to this Section only if the Bond so delivered conforms in all respects to the description thereof in the notice described in this Section. Payment of the Purchase Price with respect to purchases under this Section shall be made to the Owners of tendered Bonds by wire transfer in immediately available funds by the Fiscal Agent by the close of business on the Purchase Date but only upon such delivery. An Owner who gives the notice of tender as set forth above may repurchase the Bonds (or portions thereof) so tendered on any such Purchase Date if the Remarketing Agent agrees to sell the Bonds (or portions thereof) so tendered to such Owner. If such Owner decides to repurchase such Bonds (or portions) and the Remarketing Agent agrees to sell the specified Bonds (or portions) to such Owner, the delivery requirements set forth above shall be waived.

SECTION 14. Mandatory Purchase on Change to Fixed Rate. The Series A Variable Rate Bond shall be subject to mandatory purchase on the date on which the Fixed Rate will become effective at the Purchase Price as provided in this Section; provided that the Owners of such Bonds may elect to retain such Bonds (or portions thereof in Authorized Denominations) in accordance with the provisions of Section 9. Series A Variable Rate Bonds (or portions) purchased pursuant to this Section shall be delivered by the Owners (with all necessary endorsements) to the principal corporate trust office of the Fiscal Agent in the Borough of Manhattan, City and State of New York, at or before 12:00 noon on the date on which the Fixed Rate will become effective and, subject to such delivery, payment of the Purchase Price shall be made by wire transfer of immediately available funds by the close of business on the mode change date on which the Fixed Rate will become effective. The Fiscal Agent shall give notice of such mandatory purchase as part of the notice of change of Mode to be sent to the Owners pursuant to Section 9 above.

SECTION 15. Mandatory Purchase Upon Standby Agreement Default or Expiration or Substitution of Alternate Liquidity Facility. If by the Renewal Date the Authority has not caused the then existing Standby Agreement to be extended or an Alternate Liquidity Facility to be executed by the Fiscal Agent pursuant to Section 24 below and in either case the Authority has not delivered a Mode Change Notice relating to a change to the Fixed Rate Mode, or in the event that on or prior to the forty-fifth (45th) day next preceding the Substitution Date the Authority has failed to deliver to the Fiscal Agent a Rating Confirmation Notice in connection with the proposed execution by the Fiscal Agent of an Alternate Liquidity Facility, the Series A Variable Rate Bonds shall be subject to mandatory purchase in whole on the Expiration Tender Date or Substitution Tender Date, as the case

A-14

may be. In addition, the Series A Variable Rate Bonds are subject to mandatory purchase in whole on the date specified by the Bank in a written notice given to the Fiscal Agent that an Event of Default (as defined in the Standby Agreement) has occurred and is continuing (which date shall be a Business Day not later than the next Interest Payment Date occurring not earlier than 30 days succeeding the date the Fiscal Agent receives such notice and not earlier than two Business Days after receipt of such notice by the Fiscal Agent.

The Fiscal Agent shall give notice of such mandatory purchase by mail to the Owners of the Series A Variable Rate Bonds no less than thirty (30) days (no more than two days after receipt of notice in the case of a mandatory purchase in accordance with the last sentence of the preceding paragraph) prior to the Mandatory Purchase Date.

Each such notice shall state the Mandatory Purchase Date, the Purchase Price, that if sufficient Seasoned Funds are held on such Mandatory Purchase Date in separate accounts by the Fiscal Agent in trust for the Owners of the Series A Variable Rate Bonds, interest on the Series A Variable Rate Bonds shall cease to accrue from and after the Mandatory Purchase Date and such Bonds shall no longer be deemed to be outstanding to the Owners of the Series A Variable Rate Bonds under the Bond Resolution, that the Series A Variable Rate Bonds shall be required to be surrendered to the Fiscal Agent on the Mandatory Purchase Date, and that if any such Bond is not so tendered, it shall be deemed to have been tendered on such Date. Failure to mail any such notice with respect to any Bond shall not affect the validity of the mandatory purchase of any other Bond. Any notice mailed will be conclusively presumed to have been given, whether or not actually received by any Owner.

Series A Variable Rate Bonds purchased pursuant to this Section shall be delivered by the Owners (with all necessary endorsements) to the principal corporate trust office of the Fiscal Agent in New York, New York, at or before 12:00 noon on the Mandatory Purchase Date, and, subject to such delivery, payment of the Purchase Price of such Bonds shall be made by wire transfer in immediately available funds by the Fiscal Agent by the close of business on such Mandatory Purchase Date.

SECTION 16. Remarketing of Series A Variable Rate Bonds.

(a)   Remarketing of Bonds. The Remarketing Agent shall use its best efforts to offer for sale:

(i)   all Series A Variable Rate Bonds or portions thereof as to which notice of tender pursuant to Section 13 has been given;

(ii)   all Series A Variable Rate Bonds required to be purchased pursuant to Sections 14 and 15, except for Series A Variable Rate Bonds to be changed to the Fixed Rate Mode whose Owners have exercised the election to retain in the manner described in Section 20 below; and

(iii)   all Bank-Owned Bonds (other than Bank-Owned Bonds purchased on any Principal Payment Date), subject to any limitations contained in the Remarketing Agreement

A-15

HTA_CONF 00016398

on the Purchase Date specified or determined by the Remarketing Agent with respect to any Bank-Owned Bonds at the best price available but not at a price less than the principal amount of such Bonds (or portion thereof) plus accrued interest to such date, if any. The Remarketing Agent may sell such Bonds at such premium necessary to adjust for changes in prevailing market conditions between the date on which the rate of interest then borne by such Bond was established and the date of sale. No such Bonds shall be remarketed unless there is in effect in respect of such Bonds or Standby Agreement covering purchases of such Bonds.

(b) _Transfer of Purchase Price to Fiscal Agent._ The Remarketing Agent shall transfer to the Fiscal Agent in immediately available funds amounts equal to the aggregate Purchase Price of Series A Variable Rate Bonds (or portions thereof) sold by the Remarketing Agent pursuant to subsection (a) of this Section. Such transfer shall occur on or before 1:00 p.m. on each appropriate Purchase Date or Mandatory Purchase Date (assuming with respect to any remarketing of Bank-Owned Bonds (or portions thereof) for purposes of such transfer that such Bank-Owned Bonds bear interest at the rate at which the Series A Variable Rate Bonds (other than Bank-Owned Bonds) bore interest during the period that such Bank-Owned Bonds were held by or on behalf of the Bank). The Fiscal Agent shall upon receipt of such amounts immediately deposit such amounts to the credit of the Remarketing Proceeds Account pursuant to Section 21(a) below.

(c) _Notice of Remarketing; Registration Instructions; New Series A Variable Rate Bonds._ On each Purchase Date or Mandatory Purchase Date, as the case may be:

(i) Unless the Remarketing Agent has notified the Fiscal Agent otherwise, the Remarketing Agent shall notify the Fiscal Agent by Electronic Means not later than 11:30 a.m. of the aggregate principal amount of tendered Series A Variable Rate Bonds which were remarketed, the names of the tendering Owners and the registration instructions (i.e., the names, addresses and taxpayer identification numbers of the purchasers and the desired Authorized Denominations) with respect thereto;

(ii) the Authority shall execute and the Fiscal Agent shall authenticate new Series A Variable Rate Bonds in an aggregate principal amount equal to the principal amount set forth in paragraph (i) of this subsection (c), registered in the names of the respective purchasers thereof, regardless of whether the former Owners of the Series A Variable Rate Bonds (or portions thereof) being purchased have delivered such Bonds to the Fiscal Agent, which new Bonds shall be picked up by the Remarketing Agent not later than 1:30 p.m.;

(iii) if Series A Variable Rate Bonds are purchased by the Fiscal Agent for the benefit of the Bank under the Standby Agreement, the Authority shall execute and the Fiscal Agent shall authenticate new Series A Variable Rate Bonds in an aggregate principal amount equal to the Series A Variable Rate Bonds (or portions thereof) purchased with moneys described in Section 17(b) below, registered in the name of the Bank or its nominee for delivery in accordance with Section 18(b) below; and

A-16

HTA_CONF 00016399

(iv) an aggregate principal amount of Series A Variable Rate Bonds equal to the Bonds or portions thereof purchased with moneys described in Section 17(c) below shall be delivered to the Fiscal Agent for cancellation.

(d)     Transfer of Funds. On each Purchase Date or Mandatory Purchase Date, as the case may be:

(i) the Remarketing Agent shall give notice to the Fiscal Agent of receipt of the aggregate Purchase Price of remarketed Bonds by 11:30 a.m.; and

(ii) the Fiscal Agent shall cause the Bank by 1:30 p.m. to purchase at the Purchase Price all Series A Variable Rate Bonds tendered or deemed tendered less the aggregate amount of remarketing proceeds notice of the receipt of which was given to the Fiscal Agent by the Remarketing Agent pursuant to clause (i) of this Section 16(c) and shall deposit any drawings in respect of the payment of the Purchase Price in the Purchase Account of the Purchase Fund.

(e)     Subsequent Remarketings. In the event that the Remarketing Agent is able to remarket any Series A Variable Rate Bonds (or portions thereof) required to be purchased pursuant to Sections 13 though 15 above after the time on which the Remarketing Agent is required to provide notice to the Fiscal Agent as specified in Section 16(c)(i), or in the event the Remarketing Agent is able to remarket any Bank-Owned Bonds (or portions thereof), the Remarketing Agent shall give to the Fiscal Agent notice by Electronic Means in the manner and containing the details set forth in Section 16(c)(i) (assuming with respect to any remarketing of Bank-Owned Bonds (or portions thereof) for purposes of such notice that such Bank-Owned Bonds bear interest at the rate at which the Series A Variable Rate Bonds (other than Bank-Owned Bonds) bore interest during the period that such Bank-Owned Bonds were held by the Bank or its nominee).

(f)     No Reissuance Intended. It is the express intention of the Authority that any purchase, sale or transfer of Series A Variable Rate Bonds, as provided in this Appendix A, shall not constitute or be construed to be the extinguishment of any Series A Variable Rate Bonds or the indebtedness represented thereby or the reissuance of any Series A Variable Rate Bonds.

SECTION 17. Source of Funds for Purchase of Series A Variable Rate Bonds. By the close of business on the Purchase Date or the Mandatory Purchase Date, as the case may be, the Fiscal Agent shall purchase tendered Series A Variable Rate Bonds from the tendering Owners at the Purchase Price by wire transfer in immediately available funds. Funds for the payment of such Purchase Price shall be derived solely from the following sources in the order of priority indicated, and neither the Fiscal Agent nor the Remarketing Agent shall be obligated to provide funds from any other source:

(a)     immediately available funds on deposit in the Remarketing Proceeds Account;

A-17

HTA_CONF 00016400

(b)     immediately available funds on deposit in the Purchase Account; and

(c)     any other Seasoned Funds available therefor.

SECTION 18.   Delivery of Series A Variable Rate Bonds.   On each Purchase Date or Mandatory Purchase Date, as the case may be, new Series A Variable Rate Bonds shall be delivered as follows:

(a)     Subject to the provisions of paragraph (b) of this Section in respect of the remarketing of Bank-Owned Bonds, Series A Variable Rate Bonds sold by the Remarketing Agent and for which funds are on deposit as specified in Section 17(a) above shall be delivered by the Remarketing Agent to the purchasers of those Bonds by 3:00 p.m.; and

(b)     Series A Variable Rate Bonds purchased by the Bank with moneys described in Section (b) above shall be delivered to the Bank or its nominee on or before 1:30 p.m.  In respect of Bank-Owned Bonds purchased on a date other than a Principal Payment Date, the Fiscal Agent shall not authenticate any other Series A Variable Rate Bonds in lieu thereof until the Fiscal Agent receives notification from the Bank that the amounts drawn under the Letter of Credit in respect of such Bank-Owned Bonds have been repaid or reimbursed and the amount available for the purchase of Series A Variable Rate Bonds under such Letter of Credit has been reinstated.  Upon receipt of such notification the Fiscal Agent shall cancel such Bank-Owned Bonds in accordance with the provisions of Section 413 of the Bond Resolution.

SECTION 19.   Undelivered Bonds.   If Series A Variable Rate Bonds to be purchased are not delivered by the Owners to the Fiscal Agent by 12:00 noon on the Purchase Date or the Mandatory Purchase Date, as the case may be, the Fiscal Agent shall hold any funds received for the purchase of those Bonds in trust in separate accounts and shall pay such funds to the former Owners of such Bonds upon presentation and surrender thereof.  Such undelivered Series A Variable Rate Bonds shall cease to accrue interest as to the former Owners on the Purchase Date or the Mandatory Purchase Date, as the case may be, if such funds received for such purchase and held in trust shall be sufficient to pay the Purchase Price thereof, and moneys representing such Purchase Price shall be available against delivery of such Bonds at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, City and State of New York; provided, however, that any funds which shall be so held by the Fiscal Agent and which remain unclaimed by the former Owner of a Series A Variable Rate Bond not presented for purchase for a period of two (2) years after delivery of such funds to the Fiscal Agent shall be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same and thereafter the former Owner of such Bond shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon and the Fiscal Agent shall have no further responsibility with respect to such moneys.

SECTION 20.   Election to Retain Series A Variable Rate Bonds to be Changed to Fixed Rate Mode.   (a) The Owner of a Series A Variable Rate Bond subject to mandatory purchase pursuant to

A-18

HTA_CONF 00016401

Section 14(b) upon a change to the Fixed Rate Mode may elect to retain such Bond (or a portion thereof in Authorized Denominations) after the Mandatory Purchase Date by giving an irrevocable written notice to the Fiscal Agent prior to 4:00 p.m. on the fifteenth (15th) day (or the next succeeding Business Day if such fifteenth (15th) day is not a Business Day) next preceding the Mandatory Purchase Date, which notice shall (i) state that the person delivering the notice is an Owner, (ii) specify the numbers and principal amount of Series A Variable Rate Bonds (or portions thereof) to be retained, (iii) acknowledge that such Owner has received the notice of Mode change, including the notice of the Indicative Rate(s) and expected Serial Maturities, if applicable, and (iv) direct the Fiscal Agent not to purchase the Series A Variable Rate Bonds (or portions thereof) so specified.

(b)     Any such notice delivered to the Fiscal Agent shall be irrevocable and binding upon the Owner delivering the notice and upon subsequent Owners of such Bonds, including any Series A Variable Rate Bonds issued in exchange therefor or upon registration of transfer thereof.

(c)     Not later than 11:00 a.m. on the Business Day following the receipt of an irrevocable written notice of an election described in this Section, the Fiscal Agent shall notify the Remarketing Agent, the Bank and the Authority by Electronic Means of the principal amount of Series A Variable Rate Bonds to be retained and shall promptly thereafter mail to the Remarketing Agent, the Bank and the Authority a copy of such notice.

SECTION 21.   Purchase Fund.   There is hereby established with the Fiscal Agent a special fund designated "Puerto Rico Highways and Transportation Authority Series A Variable Rate Bonds Purchase Fund" in which the Fiscal Agent shall establish two accounts to be known as the "Purchase Account" and the "Remarketing Proceeds Account". Amounts to the credit of the Purchase Fund shall be held by the Fiscal Agent in trust and applied as hereinafter provided and, pending such application, shall be subject to a lien and charge in favor of the Owners of the outstanding Series A Variable Rate Bonds, including Bank-Owned Bonds, and for the further security of such Owners until paid out as herein provided.

(a)     Remarketing Proceeds Account.   Upon receipt of the proceeds of a remarketing of Series A Variable Rate Bonds on any Purchase Date or Mandatory Purchase Date, the Fiscal Agent shall deposit such proceeds in the Remarketing Proceeds Account for application to the Purchase Price of the Series A Variable Rate Bonds.  Notwithstanding the foregoing, upon the receipt of the proceeds of a remarketing of Bank-Owned Bonds, the Fiscal Agent shall immediately pay such proceeds to the Bank to the extent of any amount owing to the Bank.

(b)     Purchase Account.   Upon receipt from the Bank of the immediately available funds under the Standby Agreement pursuant to Section 17(b) hereof, the Fiscal Agent shall deposit such money in the Purchase Account for application solely to the Purchase Price of the Series A Variable Rate Bonds to the extent that the moneys on deposit in the Remarketing Proceeds Account shall not be sufficient to pay the Purchase Price of such Series A Variable Rate Bonds in accordance with paragraph (a). Any amount deposited in the Purchase Account and not needed with respect to any

HTA_CONF 00016402

Purchase Date or Mandatory Purchase Date for the payment of the Purchase Price for any Series A Variable Rate Bonds shall be immediately returned to the Bank.

      (c)      <u>Investment</u>. Amounts held in the Purchase Fund shall be held uninvested.

      (d)      <u>Remaining Moneys</u>. Any moneys remaining in the Remarketing Proceeds Account or the Purchase Account after making the payments specified in Section 17 shall be returned to the depositors thereof as promptly as practicable (and in the case of the Bank in immediately available funds) after 3:00 p.m. on any Purchase Date or Mandatory Purchase Date.

      SECTION 22.  <u>No Commingling of Moneys in Purchase Fund; Authority Funds Not to be Deposited Therein</u>. Amounts on deposit in the Purchase Account or the Remarketing Proceeds Account of the Purchase Fund shall not be commingled with any amounts held by the Fiscal Agent under this resolution, the Bond Resolution or otherwise. No funds provided by or on behalf of the Authority thereof shall be accepted for deposit to the credit of either of said Accounts, nor shall any such funds if deposited therein by mistake or otherwise be used for the payment of the Purchase Price of the Series A Variable Rate Bonds.

      SECTION 23.  <u>Bank-Owned Bonds</u>. Notwithstanding anything to the contrary contained herein or in the Series A Variable Rate Bonds, Series A Variable Rate Bonds which are purchased by the Bank (herein called "Bank-Owned Bonds") shall be owned by the Bank and shall not be deemed to be paid by the Authority within the meaning of the Bond Resolution, and such Bank-Owned Bonds shall remain in full force and effect in all respects and shall bear interest at the Bank Interest Rate until such time as the principal of and interest on such Bonds is paid by the Authority to the Bank in the manner and in the amounts set forth in the Standby Agreement.

      [The Series A Variable Rate Bonds, upon their purchase by the Bank pursuant to Section above, and any Bank-Owned Bonds held by or for the account of the Bank for not more than ___ days after their purchase pursuant to Sections 13 through 15 hereof and as to which the Bank has provided the notice required by Section ___ of the Standby Agreement, shall become and be immediately due and payable at the Purchase Price and shall accrue interest at the Bank Interest Rate until the same is paid in full.] All Bank-Owned Bonds purchased by the Bank pursuant to Sections  through  above shall remain outstanding and unpaid until payment in full to the Bank of all amounts owing thereunder.

      Section 24.  <u>Alternate Liquidity Facility</u>. At any time prior to the expiration of the Standby Agreement then outstanding, the Authority may at its option provide for the delivery to the Fiscal Agent of an Alternate Liquidity Facility providing for the payment of the Purchase Price of Series A Variable Rate Bonds (collectively, the "Alternate Liquidity Facility"). Any Alternate Liquidity Facility must be for a term at least as long as the remaining term of the Standby Agreement which is being replaced, and shall contain administrative provisions reasonably acceptable to the Fiscal Agent.

      The Fiscal Agent shall not accept delivery of any Alternate Liquidity Facility unless it shall have received on or prior to the delivery thereof the following documents:

A-20

(1) an executed copy of the agreement relating to the Alternate Liquidity Facility;

(2) an opinion of counsel or counsels to the effect that (A) either (i) the acceptance by the Fiscal Agent of the Alternate Liquidity Facility will not require that the Bonds or the Alternate Standby Agreement be registered under the Securities Act of 1933, as amended, or the qualification of any indenture under the Trust Indenture Act of 1939, as amended, or (ii) any registration statement required to be filed under the Securities Act of 1933, as amended, with respect to the Bonds or the Alternate Liquidity Facility is effective under such Act, and any such indenture has been duly qualified under the Trust Indenture Act of 1939, as amended, and (B) the Alternate Liquidity Facility is a legal, valid and binding obligation or agreement of the Bank;

(3) a Favorable Opinion of Bond Counsel;

(4) a Rating Confirmation Notice from Moody's if the Series A Variable Rate Bonds are then rated by Moody's Investors Service, and S&P's if the Series A Variable Rate Bonds are then rated by Standard & Poor's Corporation;

(5) written evidence satisfactory to the Fiscal Agent of the purchase of all Bank-Owned Bonds, at a price equal to the principal amount thereof plus accrued and unpaid interest, and payment of all amounts owing to the Bank under the Standby Agreement; and

(6) such other documents and opinions as the Fiscal Agent may reasonably request.

If at any time prior to the expiration of the Standby Agreement there shall have been delivered to the Fiscal Agent an Alternate Liquidity Facility and the documents mentioned above, then the Fiscal Agent shall execute the agreement relating to the Alternate Liquidity Facility . The Fiscal Agent shall comply with the procedures set forth in any Standby Agreement relating to the termination thereof.

The Fiscal Agent shall not consent to any amendment or modification of any provision of the Standby Agreement which would reduce the amount of any payment required to be made thereunder to the Fiscal Agent, or would postpone the time of any such payment, or would alter the conditions under which any such payment is made, or any other amendment or modification which would adversely affect the security of the Owners of the Series A Variable Rate Bonds.

In the event of a default by the Bank, the Fiscal Agent is hereby authorized and required to enforce all of its rights in and under the Standby Agreement, by such actions, at law or in equity, as it deems necessary in order to protect the interest of the Owners of the Series A Variable Rate Bonds. No default by the Bank under the terms of its Standby Agreement shall relieve or reduce any obligations of the Authority under this resolution or the Bond Resolution.

A-21

HTA_CONF 00016404

SECTION 25.   Concerning Tendered Series A Variable Rate Bonds.   With respect to any Bonds or portions thereof required to be purchased pursuant to Sections 13 through 15 above as to which sufficient funds to accomplish such purchase are available to the Fiscal Agent at the respective times at which payment of the Purchase Price was to be made as provided herein:

(a)   Such Bonds or portions thereof shall be deemed to have been purchased, for all purposes of this resolution, irrespective of whether or not such Bonds shall have been presented to the Fiscal Agent, and the former Owner or Owners of such Bonds shall have no claim under this resolution or otherwise for any amount other than the Purchase Price thereof (and in the same manner and to the same extent provided in Section 303 of the Bond Resolution, to receive Series A Variable Rate Bonds for any unpurchased portion thereof), and such Bonds or portions thereof shall cease to be entitled to any lien, benefit or security under the Bond Resolution or this resolution.

(b)   In the event that any Series A Variable Rate Bonds or portions thereof required to be purchased pursuant to Sections 13 through 15 shall not be presented to the Fiscal Agent, the Fiscal Agent shall segregate in the Remarketing Proceeds Account and the Purchase Account, as appropriate, and, subject to Section 19 of this Appendix A, hold the moneys for the Purchase Price of such Bonds or portions thereof in trust, uninvested and without liability for interest thereon, for the benefit of the former Owners of such Bonds, who shall, except as provided below, thereafter be restricted exclusively to such moneys for the satisfaction of any claim for the Purchase Price of such Bonds or portions thereof.

(c)   The Fiscal Agent shall maintain a record of the Series A Variable Rate Bonds or portions thereof tendered for purchase pursuant to Section 13 but not properly presented and any Series A Variable Rate Bonds or portions thereof required to be tendered for purchase in accordance with Sections 13 through 15 together with the names and addresses of the former Owners thereof.

(d)   In case any Series A Variable Rate Bonds or portions thereof which have been deemed purchased as provided in paragraph (a) above are delivered to the Fiscal Agent subsequent to the date and time specified for such delivery for payment of the Purchase Price thereof accompanied by an instrument of transfer thereof, in form satisfactory to the Fiscal Agent, executed in blank by the Owner thereof with the signature of such Owner guaranteed by a bank, trust company or member firm of the New York Stock Exchange, on any Business Day, the Fiscal Agent shall, subject to the provisions of Section 19 of this Appendix A, pay the Purchase Price of such Bond or portion thereof to the Owner no later than 3:00 p.m. on such Business Day if the Owner thereof presents his Series A Variable Rate Bond by 10:00 a.m. on such Business Day, or no later than 12:00 noon on the next Business Day if the Owner thereof presents his Series A Variable Rate Bond after 10:00 a.m. on the previous Business Day, and, if appropriate, shall also deliver to such Owner a new Series A Variable Rate Bond or Bonds in Authorized Denominations, in an aggregate principal amount equal to the portion of any Series

A-22

HTA_CONF 00016405

A Variable Rate Bond or portion thereof not so purchased, bearing interest in the same Mode. Any such Series A Variable Rate Bonds so delivered to the Fiscal Agent shall be cancelled.

(e)     The Fiscal Agent agrees to accept delivery of all Series A Variable Rate Bonds surrendered to it in accordance with Sections 13 through 15 of this Appendix A, and to hold such Bonds in trust for the benefit of the respective Owners that shall have so surrendered such Bonds, until the Purchase Price of such Bonds shall have been delivered to or for the account of or to the order of such Owners or otherwise held by the Fiscal Agent pursuant to Section __.

(f)     In purchasing Series A Variable Rate Bonds hereunder, the Fiscal Agent shall be acting as a conduit and shall not be purchasing bonds for its own account and in the absence of written notice from the Authority shall be entitled to assume that any Series A Variable Rate Bond tendered to it or deemed tendered to it for purchase is entitled under this resolution to be so purchased.

SECTION 26.   Appointment of Remarketing Agent.   The Authority hereby appoints the Remarketing Agent to remarket Series A Variable Rate Bonds pursuant to this resolution, and to keep such books and records as shall be consistent with prudent industry practice and to make such books and records available for inspection by the Bank, the Authority and the Fiscal Agent at all reasonable times.

The Remarketing Agent may at any time resign and be discharged of the duties and obligations created by this resolution by giving at least thirty (30) days' notice to the Authority, the Fiscal Agent and the Bank. The Remarketing Agent may be removed at any time, at the direction of the Authority, by an instrument filed with the Remarketing Agent, the Fiscal Agent and the Bank and upon at least thirty (30) days' notice to the Remarketing Agent. Any successor Remarketing Agent shall be selected by the Authority and shall be a member of the National Association of Securities Dealers, Inc., shall have a capitalization of at least fifteen million dollars ($15,000,000), and shall be authorized by law to perform all the duties set forth in this resolution. The Authority shall obtain the Bank's consent to the appointment of any such successor Remarketing Agent. The Authority's delivery to the Fiscal Agent of a certificate setting forth the effective date of the appointment of a successor Remarketing Agent and the name of such successor shall be conclusive evidence that (i) if applicable, the predecessor Remarketing Agent has been removed in accordance with the provisions of this resolution and (ii) such successor has been appointed and is qualified to act as Remarketing Agent under the terms of this resolution.

A-23

**RESOLUTION NO. 98-30**

**A SUPPLEMENTAL RESOLUTION MODIFYING THE
DEFINITION OF RESERVE ACCOUNT LETTER OF CREDIT
IN SECTION 101 OF RESOLUTION NO. 98-06 ADOPTED BY
THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY ON FEBRUARY 26, 1998.**

**WHEREAS**, on February 26, 1998, Puerto Rico Highways and Transportation Authority

(herein sometimes called the "Authority"), adopted Resolution No. 98-06 (hereinafter called

"Resolution No. 98-06"), authorizing the issuance of bonds of the Authority for the purpose of

providing funds for the payment of the cost of Transportation Facilities as defined in Resolution

No. 98-06; and

**WHEREAS**, pursuant to the provisions of Resolution No. 98-06, the Authority has

heretofore issued its Puerto Rico Highways and Transportation Authority Transportation

Revenue Bonds (Series A) in the aggregate principal amount of $1,129,643,740, all of which are

currently outstanding; and

**WHEREAS**, in the definition of "Subordinated Reserve Requirement" in Section 101 of

Resolution No. 98-06, the Authority may treat any agreement between the Fiscal Agent (as

defined in Resolution No. 98-06) and a financial institution serving as the depository institution

of the Commonwealth of Puerto Rico state infrastructure bank (or other similar fund) created by

virtue of Section 350 of the National Highway System Designation Act of 1995, as amended, or

any similar legislation (such agreement, a "funding agreement"), pursuant to which funding

agreement such depository institution irrevocably agrees to provide funds to the Fiscal Agent for

deposit to the credit of any separate account in the Subordinated Bond Reserve Fund established

under Resolution No. 98-06, as satisfying the applicable Subordinated Reserve Requirement to

NYLIB1/446102

the extent of the maximum amount of funds so available to be provided to the Fiscal Agent for deposit to the credit of such separate account; and

**WHEREAS**, certain rules of the Federal Highway Administration require as a condition of the receipt of certain grant moneys from the United States Government that the beneficiary of any such funding agreement provide proper security to ensure repayment by said beneficiary of amounts drawn under such funding agreement; and

**WHEREAS**, Section 408 of Resolution No. 98-06 provides in part that the Authority shall repay amounts owing under any Reserve Account Insurance Policy or Reserve Account Letter of Credit from moneys to the credit of the account in the Subordinated Bond Reserve Fund corresponding to the series of subordinated bonds having the benefit of such Policy or Letter of Credit, and the Authority has been advised that such a repayment mechanism satisfies the repayment requirements of said Administration should it also apply to repayment of amounts drawn under any funding agreement referred to above; and

**WHEREAS**, the Authority has determined that in light of the provisions of the definition of Subordinated Reserve Requirement treating any such agreement as satisfying said Requirement to the extent therein permitted and the provisions of Section 408 concerning repayment of any Reserve Account Insurance Policy and Reserve Account Letter of Credit, it was the intention of the Authority to require as well that such funding agreement should be characterized as a Reserve Account Letter of Credit; and

**WHEREAS**, Section 801(e) of Resolution No. 98-06 provides that the Authority may adopt supplemental resolutions to amend *inter alia* the covenants and agreements relating to the subordinated bonds (as defined in Resolution No. 98-06, and as shall not adversely affect the

NYLIB1/446102

2

interests of the holders of any senior bonds (as defined in Resolution No. 98-06)) as may be required to enable the Authority to comply with the provisions of any federal legislation, rules or regulations or court decisions or orders relating to the receipt by the Authority of grants or other assistance from the United States Government; **now, therefore,**

**BE IT RESOLVED** by Puerto Rico Highways and Transportation Authority that the definition of Reserve Account Letter of Credit in Section 101 of Resolution No. 98-06 is hereby amended to read as follows:

"The term 'Reserve Account Letter of Credit' shall mean an irrevocable, transferable letter of credit, which letter of credit constitutes an unconditional senior obligation of a banking association, bank or trust company or branch thereof whose letter of credit results in the rating of municipal obligations secured by such letter of credit, at the time of deposit to the credit of the Reserve Account, in either of the two highest categories (without regard to any gradations within either such category) by either Moody's Investors Service, Inc. or any successors thereto or Standard & Poor's Ratings Services or any successors thereto and any agreement of the type referred to in the definition of 'Subordinated Reserve Requirement'."

The Fiscal Agent is hereby requested pursuant to Section 801 of Resolution No. 98-06 to cause a notice of the adoption of this Supplemental Resolution to be mailed in the form and manner and to the persons specified in said Section 801. This resolution shall become effective immediately upon its adoption.

PASSED AND ADOPTED: July 23, 1998

_____
Secretary of Transportation and Public Works

NYLIB1/446102

3

HTA_CONF 00016409

**CERTIFICATE OF SECRETARY OF PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY AS TO THE ATTACHED RESOLUTION**

I, **Rebeca F. Rojas Colón,** Secretary of Puerto Rico Highways and
Transportation Authority ("PRHTA"), **DO HEREBY CERTIFY** that attached hereto is
a true and correct copy of the following resolution number 1998-30 duly adopted by the
Secretary of Transportation and Public Works on July 23, 1998.

"A Supplemental Resolution Modifying the Definition of Reserve
Account Letter of Credit in Section 101 of Resolution No. 98-06 Adopted
by The Puerto Rico Highways and Transportation Authority on February
26, 1998."

**IN WITNESS WHEREOF,** I have hereunto set my hand this 2nd day of
December, 2009.

Rebeca F. Rojas Colón, Esq.
Secretary
Puerto Rico Highways and Transportation
Authority

HTA_CONF 00016410

RESOLUTION NO. 2003-30

A SUPPLEMENTAL RESOLUTION MODIFYING SECTION 612 OF RESOLUTION NO. 98-06 ADOPTED BY THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26, 1998, AS AMENDED.

WHEREAS, on February 26, 1998, Puerto Rico Highways and Transportation Authority (herein sometimes called the "Authority"), adopted Resolution No. 98-06 (hereinafter called "Resolution No. 98-06"), authorizing the issuance of bonds of the Authority for the purpose of providing funds for the payment of the cost of Transportation Facilities as defined in Resolution No. 98-06; and

WHEREAS, pursuant to the provisions of Resolution No. 98-06, the Authority has heretofore issued the following amounts of bonds outstanding in the indicated amounts:

| Issue | Date | Amount Outstanding |
|-------|------|--------------------|
| Series A (Senior) | March 19, 1998 | $1,071,516,968 |
| Series 1998 (Subordinate) | August 6, 1998 | $75,050,000 |
| Series B (Senior) | June 8, 2000 | $267,140,000 |
| Series C (Senior) | June 8, 2000 | $14,880,000 |
| Series D (Senior) | February 7, 2002 | $700,855,000 |
| Series E (Senior) | February 7, 2002 | $284,405,000 |
| Series F (Senior) | April 3, 2002 | $118,615,000 |

;and

WHEREAS, Section 612 of Resolution No. 98-06 limits the purposes for which the Authority may issue its highway revenue bonds under Resolution No. 68-18, adopted by the Authority on June 13, 1968, as amended; and

NY1 5363700v2

1

HTA_CONF 00016411

WHEREAS, the Authority has been advised that clause (a) of said Section 612 includes an incorrect cross-reference with the result that said clause (a) contains an error; and

WHEREAS, Section 801(a) of Resolution No. 98-06 provides that the Authority may adopt supplemental resolutions to amend Resolution No. 98-06 to cure any ambiguity or formal defect or omission or to correct any inconsistent provisions or errors in Resolution No. 98-06, provided such action shall not adversely affect the interests of the bondholders

WHEREAS, the Authority has determined to amend clause (a) of said Section 612 in order to correct such error; **now, therefore,**

BE IT RESOLVED by Puerto Rico Highways and Transportation Authority that clause (a) of Section 612 of Resolution No. 98-06 is hereby amended be deleting the phrase "clause (2) of the third" and inserting in its place the following: "the proviso set forth in clause (f) of the second".

The Fiscal Agent is hereby requested pursuant to Section 801 of Resolution No. 98-06 to cause a notice of the adoption of this Supplemental Resolution to be mailed in the form and manner and to the persons specified in said Section 801. This resolution shall become effective immediately upon its adoption.

PASSED AND ADOPTED: April 29, 2003

_____
Secretary of Transportation and Public Works

2

HTA_CONF 00016412

**CERTIFICATE OF SECRETARY OF PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY AS TO THE ATTACHED RESOLUTION**

I, **Rebeca F. Rojas Colón,** Secretary of Puerto Rico Highways and
Transportation Authority ("PRHTA"), **DO HEREBY CERTIFY** that attached hereto is
a true and correct copy of the following resolution number 2003-30 duly adopted by the
Secretary of Transportation and Public Works on April 28, 2003.

"A Supplemental Resolution Modifying the Section 612 of Resolution No.
98-06 Adopted by The Puerto Rico Highways and Transportation
Authority on February 26, 1998, as Amended."

**IN WITNESS WHEREOF,** I have hereunto set my hand this 2nd day of
December, 2009.

Rebeca F. Rojas Colón, Esq.
Secretary
Puerto Rico Highways and Transportation
Authority

HTA_CONF 00016413

**EXHIBIT C**

<u>98 Subordinate Resolution</u>

(Attached)

US_ACTIVE-139805585.5-RSAINVIL

## AGREEMENT

**AGREEMENT**, dated as of August 1, 1998 by and among the Puerto Rico Department of Transportation and Public Works, an executive department of the Government of Puerto Rico (the "Department"), represented herein by the Hon. Dr. Carlos I. Pesquera Morales, Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico (the "Secretary"); Puerto Rico Highways and Transportation Authority, a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico (the "Obligor"); The Chase Manhattan Bank, a bank organized and existing under the laws of the State of New York ("Chase"); and Government Development Bank for Puerto Rico, trustee (the "SIB trustee") of the Puerto Rico State Infrastructure Bank Trust Fund (the "SIB") under the Puerto Rico Infrastucture Bank Agreement, dated June 12, 1998 (the "SIB Agreement"), by and among the Authority, the Department and the SIB trustee;

## WITNESSETH:

WHEREAS, the Obligor is issuing its Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds (Series 1998) (Puerto Rico State Infrastructure Bank), in the aggregate principal amount of $75,050,000 on August 6, 1998 (the "Bonds"), pursuant to Resolution No. 98-06 adopted by the Secretary on February 26, 1998, as amended (the "Bond Resolution"); and

WHEREAS, the Bond Resolution permits the Authority for purposes of satisfying the Subordinated Reserve Requirement (as defined in the Bond Resolution) relating to the Bonds to deposit with Chase, in its capacity as the fiscal agent under the Bond Resolution (the "Fiscal Agent"), to the credit of the Series 1998 Subordinated Reserve Account in the Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Reserve Fund any agreement between the Fiscal Agent and a financial institution serving as the depository institution of the Commonwealth of Puerto Rico state infrastructure bank (or other similar fund) created by virtue of Section 350 of the National Highway System Designation Act of 1995, as amended (23 U.S.C. Section 101), or any similar federal legislation, pursuant to which agreement such depository institution irrevocably agrees to provide funds to the Fiscal Agent for deposit to the credit of any separate account in the Subordinated Bond Reserve Fund (as defined in the Bond Resolution); and

WHEREAS, pursuant to the SIB Agreement, the SIB is authorized to make loans or provide other assistance, including assistance in the form of credit enhancements, at the direction of the Secretary; and

WHEREAS, the Secretary has directed the SIB trustee to execute this Agreement, guaranteeing from moneys to the credit of the Series 1998 Subordinated Bonds Highway Subaccount in the Highway Account of the SIB certain payments by the Obligor subject to the terms and limitations of this Agreement; and

WHEREAS, the Authority has determined in connection with the issuance of the Bonds that this Agreement will satisfy such Subordinated Reserve Requirement; and

HTA_CONF 00016415

WHEREAS, the Obligor has agreed to reimburse the SIB for payments made by the SIB under this Agreement from Legally Available Funds, all as more fully set forth in this Agreement; and

WHEREAS, Chase in its capacity as Fiscal Agent under the Bond Resolution has joined in the execution of this Agreement for the purpose of acknowledging its consent to the responsibilities of the "Fiscal Agent" under this Agreement;

NOW, THEREFORE, in consideration of the premises and of the agreements herein contained, the parties hereto agree as follows:

HTA_CONF 00016416

## ARTICLE I

## DEFINITIONS; AGREEMENT TO PROVIDE FUNDS
## TO FISCAL AGENT; EXPENSES

Section 1.01. **Definitions.** Except as otherwise expressly provided herein or unless the context otherwise requires, the terms which are capitalized herein shall have the meanings specified in Annex A hereto.

Section 1.02. **Creation of Subordinated Series 1998 Bonds Highway Subaccount within Highway Account and Deposit Thereto; Restriction on Encumbering Moneys in the Highway Account of the Trust Fund Until Bonds No Longer Outstanding.** The Secretary hereby directs the SIB trustee to establish within the Highway Account of the SIB a special subaccount designated "Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds (Series 1998) Highway Subaccount" (herein called the "Series 1998 Bonds Highway Subaccount"). Upon the execution and delivery of this Agreement, the SIB trustee shall establish such subaccount and deposit to the credit thereof the sum of $15,010,735. For so long as the Bonds shall be outstanding under the Bond Resolution, the SIB trustee will make no withdrawals and expenditures, pledges or other encumbrances of amounts held to the credit of the Series 1998 Bonds Highway Subaccount, except for payments required to be made by the SIB trustee pursuant to Section 1.03 of this Agreement. Such amounts shall be invested as provided in this Agreement and in the Cooperative Agreement and applied for the purposes and subject to the terms, circumstances and conditions provided in this Agreement and for no other purpose. All payments to the Fiscal Agent pursuant to the provisions of Section 1.03 of this Agreement shall be made solely from moneys held to the credit of the Series 1998 Bonds Highway Subaccount.

Section 1.03. **Agreement To Provide Funds To Fiscal Agent.**

(a)     The Secretary hereby irrevocably directs the SIB trustee to make available to the Fiscal Agent the amounts referred to and on the dates specified in paragraph (b) below, and the SIB trustee, subject to the terms and conditions set forth herein and in the SIB Agreement, agrees to make such payments on such dates; provided that the amount available at any particular time to be paid to the Fiscal Agent under the terms hereof shall not exceed the Subordinated Reserve Requirement, as that term is defined in the Bond Resolution (the "Reserve Account Bond Coverage"), and the Reserve Account Bond Coverage shall be reduced and may be reinstated from time to time as set forth herein.

(b)     Upon the later of: (i) one (1) business day after receipt by the SIB trustee of a demand for payment in the form attached hereto as Attachment 1 (the "Demand for Payment"), duly executed by the Fiscal Agent certifying that payment due under the Bond Resolution in respect of the Bonds has not been made to the Fiscal Agent; or (ii) the payment date of the Bonds as specified in the Demand for Payment duly executed by the Fiscal Agent and presented to the SIB trustee, the SIB trustee will withdraw from the Series 1998 Subordinated Bonds Highway Subaccount in the Highway Account of the SIB an amount equal to the amount which is then due to the Fiscal Agent under the Bond Resolution up to but not in excess of the Reserve Account Bond Coverage and transfer the amount so withdrawn to the Fiscal Agent or its successor.

HTA_CONF 00016417

(c)     Each Demand for Payment hereunder may be made by prepaid telecopy, telex, or telegram of the duly executed Demand for Payment to the SIB trustee. If a Demand for Payment made hereunder does not, in any instance, conform to the terms and conditions of this Agreement, the SIB trustee shall give notice to the Fiscal Agent as promptly as reasonably practicable that such Demand for Payment was not effected in accordance with the terms and conditions of this Agreement and briefly state the reason(s) therefor. Upon being notified that such Demand for Payment was not effected in accordance with this Agreement, the Fiscal Agent may attempt to correct any such nonconforming Demand for Payment if, and to the extent that, the Fiscal Agent is entitled and able to do so.

(d)     The Reserve Account Bond Coverage shall be reduced automatically to the extent of each payment made by the SIB trustee pursuant to paragraph (b) above and will be reinstated to the extent of each reimbursement of the SIB by the Obligor pursuant to Article II of this Agreement; provided that in no event shall such reinstatement exceed the Reserve Account Bond Coverage. The SIB trustee will notify the Fiscal Agent, in writing within five (5) days of such reimbursement, that the Reserve Account Bond Coverage has been reinstated to the extent of such reimbursement pursuant to this Agreement, and such reinstatement shall be effective as of the date the SIB trustee gives such notice. The notice to the Fiscal Agent will be substantially in the form attached hereto as Attachment 2. The Reserve Account Bond Coverage shall be automatically reduced to the extent that the Reserve Requirement for the Bonds is lowered or reduced pursuant to the terms of the Bond Resolution.

(e)     This Agreement is noncancelable for any reason. The term of this Agreement shall expire on the earlier of (i) July 1, 2028 (the final maturity date of the Bonds) and (ii) the date on which the Obligor, to the satisfaction of the Secretary, has made all payments required to be made on the Bonds pursuant to the Bond Resolution.

(f)     The maximum liability of the SIB under this Agreement and the coverage and term thereof shall be subject to and limited by the Reserve Account Bond Coverage and the terms and conditions of this Agreement.

Section 1.04. **Certain Other Expenses**. The Obligor will pay all reasonable fees and disbursements of the SIB's counsel related to any modification of this Agreement.

## ARTICLE II

## REIMBURSEMENT OBLIGATIONS OF OBLIGOR AND SECURITY THEREFOR

Section 2.01. **Reimbursement for Payments under this Agreement and Expenses**. (a) The Obligor will reimburse the SIB, in accordance with the terms of the Bond Resolution and this Agreement, from Legally Available Funds without demand or notice by the SIB trustee to the Obligor or any other person, to the extent of each Reserve Account Agreement Payment with interest on each such Payment from and including the date made to the Fiscal Agent to the date of the reimbursement by the Obligor at the Effective Interest Rate. The Obligor agrees that it shall repay each Reserve Account Agreement Payment from and to the extent of any moneys deposited to the credit of the Series 1998 Subordinated Reserve Account pursuant to Section 401(f) of the Bond Resolution. Interest on each Reserve Account Agreement Payment shall

HTA_CONF 00016418

accrue on such unpaid amounts at a rate equal to the Effective Interest Rate. At its option, the Obligor may reimburse the SIB for all or any portion of the amounts owing the SIB hereunder at any time and to the extent that the Obligor shall have Legally Available Funds.

(b) The Obligor also agrees to reimburse the SIB, from Legally Available Funds, immediately and unconditionally upon demand for all reasonable expenses incurred by the SIB in connection with the enforcement by the SIB of the Obligor's obligations under this Agreement, together with interest on all such expenses at the Effective Interest Rate from and including the date which is 30 days from the date a statement for such expenses is received by the Obligor to the date of payment.

Section 2.02. **Allocation of Payments**. The SIB and the Obligor hereby agree that each repayment of principal received by the SIB from or on behalf of the Obligor as a reimbursement to the SIB as required by Section 2.01(a) hereof shall be applied to reinstate all or a portion of the Reserve Account Bond Coverage to the extent of such repayment. Any interest payable pursuant to Section 2.01(a) hereof shall not be applied to the reinstatement of any portion of the Reserve Account Bond Coverage.

Section 2.03. **Security for Payments; Instruments of Further Assurance**. To the extent, but only to the extent, that the Bond Resolution pledges to the Owners or the Fiscal Agent or grants a security interest or lien in or on any collateral property, revenues or other payments ("Collateral and Revenues") in order to secure the Bonds or provide a source of payment for the Bonds, the Obligor hereby grants to the SIB a security interest in or lien on, as the case may be, and pledges to the SIB trustee for the benefit of the SIB all such Collateral and Revenues as security for payment of all amounts due hereunder, which security interest, lien and/or pledge created or granted under this Section 2.03 shall be subordinate to the interests of the Owners and Chase, as Fiscal Agent under the Bond Resolution, in such Collateral and Revenues. The Obligor agrees that it will, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, any and all financing statements, if applicable, and all other further instruments as may be required by law or as shall reasonably be requested by the Secretary for the perfection of the security interest, if any, granted under this Section 2.03 and for the preservation and protection of all rights of the SIB trustee for the benefit of the SIB under this Section 2.03.

Section 2.04. **Unconditional Obligation**. The obligations of the Obligor hereunder are absolute and unconditional and will be paid or performed strictly in accordance with this Agreement, subject to the limitations of the Bond Resolution, irrespective of:

(a) any lack or validity or enforceability of, or any amendment or other modification of, or waiver with respect to the Bond Resolution or the Bonds;

(b) any exchange, release or nonperfection of any security interest in property securing the Bonds or this Agreement or any obligations hereunder;

(c) any circumstances which might otherwise constitute a defense available to, or discharge of, the Obligor with respect to the Bonds; or

HTA_CONF 00016419

(d) whether or not such obligations are contingent or matured, disputed or undisputed, liquidated or unliquidated.

## ARTICLE III

## AMENDMENTS TO BOND RESOLUTION

As long as this Agreement is in effect, the Obligor agrees that it will not amend the Bond Resolution pursuant to Section 802 thereof without the prior written consent of the SIB.

## ARTICLE IV

## EVENTS OF DEFAULT; REMEDIES

Section 4.01. **Events of Default**. The following events shall constitute Events of Default hereunder:

(a) the Obligor shall fail to pay to the SIB any amount payable under Section 2.01 hereof and such failure shall have continued for a period in excess of 10 days;

(b) any material representation or warranty made by the Obligor hereunder or in any report, certificate, financial statement or other instrument provided in connection herewith shall have been materially false at the time when made;

(c) except as otherwise provided in this Section 4.01, the Obligor shall fail to perform any of its other obligations under this Agreement, provided that such failure continues for more than thirty (30) days after receipt by the Obligor of notice of such failure to perform; or

(d) the Obligor shall (i) voluntarily commence any proceeding or file any petition seeking relief under the United States Bankruptcy Code or any other Federal, Commonwealth or foreign bankruptcy, insolvency or similar law, (ii) consent to the institution of, or fail to controvert in a timely and appropriate manner, any such proceeding or the filing of any such petition, (iii) apply for or consent to the appointment of a receiver, paying agent, custodian, sequestrator or similar official for the Obligor or for a substantial part of its property, (iv) file an answer admitting the material allegations for a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors, (vi) become unable, admit in writing its inability or fail generally to pay its debts as they become due or (vii) take action for the purpose of effecting any of the foregoing.

Section 4.02. **Remedies**. If an Event of Default shall occur and be continuing, then the SIB trustee may take whatever action at law or in equity may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement or to enforce performance of any obligation of the Obligor to the SIB under the Bond Resolution or any related instrument and any obligation, agreement or covenant of the Obligor under this Agreement; provided, however, that no such default shall serve as a bar to the Fiscal Agent submitting a Demand for Payment hereunder or the honoring of any such Demand for Payment, it being understood that any such Demand for Payment shall be honored as long as it conforms to the terms and conditions of this Agreement, and provided further that the SIB trustee may not

NYLIB1/411885/5

6

HTA_CONF 00016420

take any action to direct or require acceleration or other early redemption of the Bonds or adversely affect the rights of the Owners or Chase in its capacity as Fiscal Agent under the Bond Resolution. All rights and remedies of the SIB under this Section 4.02 are cumulative and the exercise of any one remedy does not preclude the exercise of one or more of the other available remedies.

## ARTICLE V

## SETTLEMENT

The Secretary shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the SIB, the Obligor or any other party on this Agreement shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the SIB's decision thereon, if made in good faith, shall be final and binding upon the Obligor. An itemized statement of payments made by the SIB, certified by an officer of the SIB trustee, or the voucher or vouchers for such payments, shall be prima facie evidence of the liability of the Obligor, and if the Obligor fails to reimburse the SIB, pursuant to subsection (b) of Section 2.01 hereof, upon the receipt of such statement of payments, interest shall be computed on such amount from the date and at the rate set forth in subsection (a) of Section 2.01 hereof.

## ARTICLE VI

## COVENANTS

Section 6.01. **Additional Notices; Rights of Inspection**.

(a)     While this Agreement is in effect, the Obligor or Chase as the Fiscal Agent under the Bond Resolution, as appropriate, shall (if such entity is in possession of the requested information) furnish to the SIB trustee:

(1)     as soon as practicable after the filing thereof, a copy of the audit and annual report of the Obligor;

(2)     a copy of any notice to be given to the Owners of the Bonds and any certificate rendered pursuant to the Bond Resolution relating to the security for the Bonds; and

(3)     such additional information it may reasonably request.

(b)     The Obligor will permit the Secretary to discuss the affairs, finances and accounts of the Obligor or any information the Secretary may reasonably request regarding the security for the Bonds with appropriate officers of the Obligor. The Fiscal Agent or Obligor, as appropriate, will permit the SIB trustee to have access to and to make copies of all books and records relating to the Bonds at any reasonable time.

(c)     Notwithstanding any other provision of the Bond Resolution, the Fiscal Agent shall immediately notify the SIB trustee if at any time there are insufficient moneys to make any payments of principal of and interest on the Bonds as required and immediately upon the occurrence of any default thereunder.

NYLIB1/411885/5

7

Section 6.02. **Available Moneys**. The Obligor hereby covenants that it will not, from and after the date of any payment made by the SIB trustee to the Fiscal Agent pursuant to this Agreement, encumber any unencumbered moneys in the Construction Fund under the Bond Resolution subject, however, to the existing covenants and encumbrances and permitted encumbrances set forth in the Bond Resolution until the later of the dates on which the Reserve Account Coverage shall have been reinstated to its maximum amount and the SIB shall have been fully reimbursed for expenses in accordance with the terms of this Agreement.

Section 6.03. **Obligations of Obligor Not as Debt**. The obligations of the Obligor under this Agreement shall not be deemed to constitute a debt of the Commonwealth or of any of its political subdivisions. Neither the Commonwealth nor any such political subdivisions shall be liable to make reimbursement payments in respect of Reserve Account Agreement Payments or SIB expenses or otherwise or the interest thereon except from Legally Available Funds, and neither the faith and credit nor the taxing power of the Commonwealth or of any of its political subdivisions is pledged to the payment of the principal of or the interest on any such obligations.

Section 6.04. **Duties of Chase**. Chase hereby accepts the responsibilities of the Fiscal Agent hereunder but on the same terms and conditions as it serves as Fiscal Agent under the Bond Resolution.

## ARTICLE VII

## MISCELLANEOUS

Section 7.01. **Computations**. All computations of interest and fees hereunder shall be made on the basis of the actual number of days elapsed over a year of 360 days.

Section 7.02. **Exercise of Rights**. No failure or delay on the part of the SIB trustee for the benefit of the SIB to exercise any right, power or privilege under this Agreement and no course of dealing between the SIB and the Obligor or any other party shall operate as a waiver of any such right, power or privilege, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the SIB trustee for the benefit of the SIB would otherwise have pursuant to law or equity. No notice to or demand on any party in any case shall entitle such party to any other or further notice or demand in similar or other circumstances, or constitute a waiver of the right of the other party to any other or further action in any circumstances without notice or demand.

Section 7.03. **Amendment and Waiver**. No provision of this Agreement may be amended, waived, supplemented, discharged or terminated without the prior written consent of the parties hereto.

Section 7.04. **Successors and Assigns; Descriptive Headings**.

(a)     This Agreement shall bind, and the benefits thereof shall inure to, the parties hereto and their respective successors and assigns; provided, that the Obligor may not transfer or

HTA_CONF 00016422

assign any or all of its rights and obligations hereunder without the prior written consent of the SIB.

(b)     The descriptive headings of the various provisions of this Agreement are inserted for convenience of reference only and shall not be deemed to affect the meaning or construction of any of the provisions hereof.

Section 7.05. **Obligor's Liability under Agreement not Affected by any Claims**  The Obligor's liability shall not be affected by any claim that other indemnity or security was to have been obtained nor by the release of any indemnity, nor the return or exchange of any collateral that may have been obtained.

Section 7.06. **Notices, Requests, Demands.**  Except as otherwise expressly provided herein, all written notices, requests, demands or other communications to or upon the respective parties hereto shall be deemed to have been given or made when actually received, or in the case of telex or telecopier notice sent over a telex or a telecopier machine owned or operated by a party hereto, when sent, addressed as specified below or at such other address as any of the parties hereto may hereafter specify in writing to the others:

If to the Obligor:

Puerto Rico Highways and Transportation Authority
Minillas Government Center
Avenida de Diego, Parada 22
San Juan, Puerto Rico 00940
Attention: Executive Director

If to the Fiscal Agent:

The Chase Manhattan Bank
450 W. 33rd Street – 15th Floor
New York, N.Y. 10001
Attention:  Global Trust Services

If to the SIB:

c/o Government Development Bank for Puerto Rico
Minillas Government Center
Avenida de Diego, Parada 22
San Juan, Puerto Rico  00940
Attention:  President

If to the Secretary:

HTA_CONF 00016423

Section 7.07. **Survival of Representations and Warranties**.   All representations, warranties and obligations contained herein shall survive the execution and delivery of this Agreement.

Section 7.08. **Governing Law**.   This Agreement and the rights and obligations of the parties under this Agreement shall be governed by and construed and interpreted in accordance with the laws of the Commonwealth.

Section 7.09. **Counterparts**.   This Agreement may be executed in any number of copies and by the different parties hereto on the same or separate counterparts, each of which shall be deemed to be an original instrument.

Section 7.10. **Severability**.   In the event any provisions of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

HTA_CONF 00016424

**IN WITNESS WHEREOF**, each of the parties hereto has caused a counterpart of this Agreement to be duly executed and delivered as of the date first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By_____

Dr. Sergio L. Gonzalez
Executive Director

THE CHASE MANHATTAN BANK

By_____
Assistant
Vice President

PUERTO RICO STATE INFRASTRUCTURE
BANK

By Government Development Bank
for Puerto Rico, trustee

By_____

Marcos Rodriguez-Ema
President

PUERTO RICO DEPARTMENT OF
TRANSPORTATION AND PUBLIC WORKS

By_____

Dr. Carlos I. Pesquera Morales
Secretary of Transportation
and Public Works

NYLIB1/411885/5

11

**Attachment 1**

**DEMAND FOR PAYMENT**

_____, 199_

Puerto Rico State Infrastructure Bank
c/o Government Development Bank for Puerto Rico
Minillas Government Center
Avenida de Diego, Parada 22
San Juan, Puerto Rico  00940

Attention:  President

Reference is made to the Agreement, dated as of August 1, 1998 (the "Agreement"), by and among the Department of Transportation and Public Works, Puerto Rico Highways and Transportation Authority, The Chase Manhattan Bank, fiscal agent under Resolution No. 98-06, adopted by said Authority on February 26, 1998, as amended, and the Puerto Rico State Infrastructure Bank. The terms which are capitalized herein and not otherwise defined have the meanings specified in the Agreement unless the context otherwise requires.

The Fiscal Agent hereby certifies that:

(a) The Fiscal Agent is required to pay an amount equal to $_____ (the "Amount Due") to the Owners of the Bonds on _____.

(b) $_____ has been deposited in the Subordinated Bond Service Account or the Subordinated Bond Redemption Account (as each is defined in the Bond Resolution) from moneys paid by the Obligor or from other funds legally available to the Fiscal Agent, for payment to the Owners of the Bonds, which amount is $_____ less than the Amount Due (the "Deficiency").

(c) The Fiscal Agent has not heretofore made demand under the Agreement for the Amount Due or any portion thereof.

The Fiscal Agent hereby requests that payment of the Deficiency (up to but not in excess of the Reserve Account Bond Coverage) be made by the SIB under the Agreement and directs that payment of the Deficiency be made to the following account by bank wire transfer of federal or other immediately available funds in accordance with the terms of the Agreement:

_____     [Fiscal Agent's Account]


_____

By:_____
Name:_____

Its:_____

NYLIB1/411885/5

HTA_CONF 00016426

**Attachment 2**

Series 1998 Subordinate Reserved Account Bond

**NOTICE OF REINSTATEMENT**

_____, 199_

[Fiscal Agent]
[Address]

Reference is made to the Agreement, dated as of August 1, 1998 (the "Agreement"), by and among the Department of Transportation and Public Works, Puerto Rico Highways and Transportation Authority, The Chase Manhattan Bank, fiscal agent under Resolution No. 98-06, adopted by said Authority on February 26, 1998, as amended, and the Puerto Rico State Infrastructure Bank. The terms which are capitalized herein and not otherwise defined have the meanings specified in the Agreement unless the context otherwise requires.

The SIB hereby delivers notice that it is in receipt of payment from the Obligor pursuant to Article II of the Agreement and as of the date hereof the Reserve Account Bond Coverage is $_____, subject to a reduction as the Subordinated Reserve Requirement for the Bonds is lowered or reduced pursuant to the terms of the Bond Resolution.

**PUERTO RICO STATE
INFRASTRUCTURE BANK**

Attest:_____          By:_____
Title                                                    Title

NYLIB1/411885/5

## ANNEX A

### DEFINITIONS

For all purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires, all capitalized terms shall have the meaning as set out below.

"Agreement" means this Agreement.

"Bond Resolution" has the same meaning as set forth in the preamble of this Agreement.

"Bonds" has the same meaning as set forth in the preamble of this Agreement.

"Collateral and Revenues" has the same meaning as set forth in Section 2.03 hereof.

"Commonwealth" means the Commonwealth of Puerto Rico.

"Cooperative Agreement" has the meaning given to that term in the SIB Agreement.

"Debt Service Payment" means that payment required to be made by the Obligor which will be applied to payment of principal of and interest on the Bonds.

"Effective Interest Rate" means the lesser of the Reimbursement Rate and the maximum rate of interest permitted by then applicable law; provided, however, that the Effective Interest Rate shall in no event be less than the highest interest rate on the Bonds.

"Event of Default" means those events of default set forth in Section 4.01 of this Agreement.

"Fiscal Agent" has the same meaning as set forth in the preamble of this Agreement.

"Legally Available Funds" means:

(i)     as to the repayment of Reserve Account Agreement Payments (but not the interest thereon) described in Section 2.01(a) hereof, (x) Revenues (as defined in the Bond Resolution) and other moneys deposited to the credit of the Series 1998 Subordinated Reserve Account described in clause (f) of Section 401 of the Bond Resolution, and

(ii)    as to interest on the repayments of Reserve Account Agreement Payments described in Section 2.01(a) hereof and as to the expenses described in Section 2.01(b) hereof and any other amounts payable by the Obligor under this Agreement, any unencumbered moneys held to the credit of the Construction Fund (as defined in the Bond Resolution, subject to the provisions of Section 604 and 605 thereof).

"Obligor" has the same meaning as set forth in the preamble of this Agreement.

HTA_CONF 00016428

"Owner" means the registered owner of any Bond as indicated in the books maintained by the Fiscal Agent for such purpose. The term "Owner" shall not include the Obligor or any person or entity whose obligation or obligations by agreement constitute the underlying security or source of payment for the Obligations.

"Reimbursement Rate" means, as of the date of any Reserve Account Agreement Payment, Citibank, N.A.'s prime rate, said "prime rate" being the rate of interest announced from time to time by Citibank, N.A., New York, New York, as its prime rate. The rate of interest shall be calculated on the basis of a 360-day year.

"Reserve Account Bond Coverage" means the amount available at any particular time to be paid to the Fiscal Agent under the terms of this Agreement, which amount shall be equal to the Subordinated Reserve Requirement (as that term is defined in the Bond Resolution).

"Reserve Account Agreement Payment" means an amount equal to the Debt Service Payment required to be made by the Obligor pursuant to the Bond Resolution less (i) that portion of the Debt Service Payment paid by the Obligor, and (ii) other funds legally available to the Fiscal Agent for payment to the Owners, all as certified by the Fiscal Agent in a demand for payment rendered pursuant to the terms of this Agreement.

"SIB" has the same meaning as set forth in the preamble of this Agreement.

"SIB trustee" has the same meaning as set forth in the preamble of this Agreement.

HTA_CONF 00016429

**EXHIBIT D**

Financing Statements

(Attached)

HTA_CONF 00016430

2014004845

REGISTRO DE
° AND STRIDES COMMERCIAL °

2014 SEP -9 PM 3: 01

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

**Corporation Service Company**

**801 Adlai Stevenson Drive**

**Springfield, IL 62703**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION * | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Wall Street | New York | NY | 10286 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

---- REFER TO EXHIBIT A ATTACHED HERETO, INCORPORATED HEREIN BY REFERENCE AND MADE A
PART HEREOF. ----

---- Exhibit A attached hereto consists of two pages. ----

*   HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION 98-06 ADOPTED BY THE PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26, 1998, TOGETHER WITH ALL
AMENDMENTS THERETO THEREAFTER AS THEREIN PERMITTED

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☒ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Filed with: Services Commercial Transactions Registry of the Puerto Rico Department of State   286583-004

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev 04/20/11)

**EXHIBIT A**
**TO**
**UNIFORM COMMERCIAL CODE FINANCING STATEMENT** 3: 01

<u>DEBTOR:</u>

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY
Minillas Government Center, South Building
San Juan, Puerto Rico 00921

<u>SECURED PARTY:</u>

HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION 98-06 ADOPTED BY THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26,
1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER AS THEREIN
PERMITTED

One Wall Street
New York, New York 10286

<u>COLLATERAL DESCRIPTION</u>

Pursuant to that certain Resolution No. 98-06 adopted on February 26, 1998 (as the same
may be amended or supplemented from time to time, the "1998 Resolution"), all of the Debtor's
right, title and interest in and to (a) all "Revenues," which include, without limitation, (i) all
moneys received by the Debtor on account of the crude oil tax allocated to the Debtor by Act No.
34, approved July 16, 1997, as amended, (ii) all Existing Tax and Fee Revenues upon the repeal
and cancellation of the 1968 Resolution, (iii) any tolls or other charges imposed by the Debtor
for the use of any of the Toll Facilities other than Existing Toll Facilities Revenues received by
the Debtor prior to the repeal and cancellation of the 1968 Resolution and (iv) the proceeds of
any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may in the
future allocate to the Debtor and has expressly authorized or in the future expressly authorizes
the Debtor to pledge to the payment of the principal of and interest on bonds or other obligations
of the Debtor and which are pledged by the Debtor to the payment of the principal of and interest
on bonds or other obligations issued under the provisions of the 1998 Resolution, and investment
earnings on deposits to the credit of funds established under the provisions of the 1998
Resolution, (b) the Puerto Rico Highways and Transportation Authority Transportation Revenue
Bonds Interest and Sinking Fund (and all accounts created therein by or pursuant to the 1998
Resolution, including without limitation, the "Senior Bond Service Account," "Senior Bond
Redemption Account," and "Senior Bond Reserve Account"), the Puerto Rico Highways and
Transportation Authority Subordinated Transportation Revenue Bonds Interest and Sinking Fund
(and all accounts created therein by or pursuant to the 1998 Resolution, including without
limitation, the "Subordinated Bond Service Account" and "Subordinated Bond Redemption
Account"), the Puerto Rico Highways and Transportation Authority Subordinated Transportation
Revenue Bonds Reserve Fund (and all accounts created therein by or pursuant to the 1998
Resolution), the Puerto Rico Highways and Transportation Authority Transportation Revenue
Fund (and all accounts created therein by or pursuant to the 1998 Resolution) and the Puerto

HTA_CONF 00016432

Rico Highways and Transportation Authority Transportation Construction Fund, a special fund created and designated by the 1998 Resolution and all other accounts and funds created by or pursuant to the 1998 Resolution; and (c) all proceeds and products of the foregoing.

When used herein, the following terms have the following meanings:

"1968 Resolution" means Resolution No. 68-18 adopted by the Debtor on June 13, 1968, as amended by supplemental resolutions of the Debtor adopted on February 17, 1972, October 29, 1990, June 23, 1992, July 15, 1993 (effective September 8, 1993) and August 10, 1993, together with all amendments thereto thereafter as therein permitted.

"1968 Resolution Bonds" means all bonds issued under the 1968 Resolution.

"Existing Tax and Fee Revenues" means (1) the proceeds of the sixteen cents a gallon tax imposed on gasoline and one-half of the eight cents per gallon tax imposed on gas oil and diesel oil imposed by Subtitle B of Act No. 120, approved October 31, 1994, as amended, and allocated to the Debtor by Act No. 223 of November 30, 1995, as amended, and by said Act's predecessor statutes and (2) the proceeds of the $15 increase per vehicle of annual motor vehicle license fees imposed by the Commonwealth of Puerto Rico and allocated to the Debtor by Act No. 9, approved August 12, 1982.

"Existing Toll Facilities Revenues" means the tolls or other charges imposed by the Debtor for the use of any Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution Bonds, including any extensions, betterments or improvements to such Traffic Facilities added after the issuance of bonds under the provisions of Section 207 of the 1998 Resolution however financed or otherwise paid for.

"Toll Facilities" means any Traffic Facilities for which the Debtor imposes tolls.

"Traffic Facilities" means any of the following facilities for which 1968 Resolution Bonds or bonds or other obligations shall be issued by the Debtor under the provisions of the 1998 Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to the Debtor from funds not encumbered by the 1998 Resolution or the 1968 Resolution:

(1) roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals and any other land or water facilities necessary or desirable in connection with the movement of persons, freight, vehicles or vessels;

(2) parking lots and structures and other facilities necessary or desirable in connection with parking, loading or unloading of all kinds of vehicles or vessels; and

(3) all property rights, easements, and interests therein necessary or desirable for the construction, maintenance, control, operation or development of such traffic facilities.

HTA_CONF 00016433

2014004846

REGISTRO DE
TRANSACCIONES COMERCIAL

2014 SEP -9  PM 3: 00

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

Corporation Service Company

801 Adlai Stevenson Drive

Springfield, IL 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION * | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| One Wall Street | New York | | NY | 10286 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

—REFER TO EXHIBIT A ATTACHED HERETO, INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF. —

— Exhibit A attached hereto consists of one page. —

* HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION NO. 98-06, ADOPTED BY THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26, 1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER AS THEREIN PERMITTED

| 5. Check only if applicable and check only one box. Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☒ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien  ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor | | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | | |
| Filed with: Services Commercial Transactions Registry of the Puerto Rico Department of State   286583-001 | | | |

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev 04/20/11)

**EXHIBIT A**
**TO**
**UNIFORM COMMERCIAL CODE FINANCING STATEMENT**

REGISTRO DE
TRANSACCIONES COMERCIA
2018 FEB -9  PM 3: 00

---

DEBTOR:

>   PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
>   Minillas Government Center, South Building
>   San Juan, Puerto Rico  00921

SECURED PARTY:

  HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION NO. 98-06, ADOPTED BY
THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON
FEBRUARY 26, 1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER
AS THEREIN PERMITTED
>   One Wall Street
>   New York, New York  10286

### COLLATERAL DESCRIPTION

  The Puerto Rico Highways and Transportation Authority (the "Authority") has executed
and delivered a certain Security Agreement dated as of February 7, 2002 and has granted to the
holders of all bonds issued under the Authority's Resolution No. 98-06, adopted on February 26,
1998, as amended (the "Resolution"), a security interest in (i) all Revenues (as defined in the
Resolution) of the Authority, (ii) the Puerto Rico Highways and Transportation Authority
Transportation Revenue Bonds Interest and Sinking Fund, as such term is defined in the
Resolution (and all accounts therein maintained under the Resolution), (iii) the Puerto Rico
Highways and Transportation Authority Transportation Revenue Fund, as such term is defined in
the Resolution (and all accounts therein maintained under the Resolution), and (iv) all amounts
on deposit and required to be on deposit therein by the terms of the Resolution including all
proceeds and all after-acquired property, subject to application as permitted by the Resolution.

710972992 14458010

Page 1 of 1

HTA_CONF 00016435

2014004847

REGISTRO DE
TRANSACCIONES COMERCIAL

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

2014 SEP -9  PM 2: 59

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |

Corporation Service Company

801 Adlai Stevenson Drive

Springfield, IL 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION * | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Wall Street | New York | NY | 10286 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

---- REFER TO EXHIBIT A ATTACHED HERETO, INCORPORATED HEREIN BY REFERENCE AND MADE A
PART HEREOF. ----

—— Exhibit A attached hereto consists of two pages. ——

*   HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION 98-06 ADOPTED BY THE PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26, 1998, TOGETHER WITH ALL
AMENDMENTS THERETO THEREAFTER AS THEREIN PERMITTED

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☒ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Filed with:  Services Commercial Transactions Registry of the Puerto Rico Department of State          286583~003

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**EXHIBIT A**

REGISTRO DE
ANSACCIONES COMERCIA'

**TO**

?918 SEP -9 PM 2: 59

**UNIFORM COMMERCIAL CODE FINANCING STATEMENT**

DEBTOR:

> PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
> Minillas Government Center, South Building
> San Juan, Puerto Rico  00921

SECURED PARTY:

HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION 98-06 ADOPTED BY THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26,
1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER AS THEREIN
PERMITTED

> One Wall Street
> New York, New York  10286

COLLATERAL DESCRIPTION

Pursuant to that certain Resolution No. 98-06 adopted on February 26, 1998 (as the same may be amended or supplemented from time to time, the "1998 Resolution"), all of the Debtor's right, title and interest in and to (a) all "Revenues," which include, without limitation, (i) all moneys received by the Debtor on account of the crude oil tax allocated to the Debtor by Act No. 34, approved July 16, 1997, as amended, (ii) all Existing Tax and Fee Revenues upon the repeal and cancellation of the 1968 Resolution, (iii) any tolls or other charges imposed by the Debtor for the use of any of the Toll Facilities other than Existing Toll Facilities Revenues received by the Debtor prior to the repeal and cancellation of the 1968 Resolution and (iv) the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may in the future allocate to the Debtor and has expressly authorized or in the future expressly authorizes the Debtor to pledge to the payment of the principal of and interest on bonds or other obligations of the Debtor and which are pledged by the Debtor to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the 1998 Resolution, and investment earnings on deposits to the credit of funds established under the provisions of the 1998 Resolution, (b) the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund (and all accounts created therein by or pursuant to the 1998 Resolution, including without limitation, the "Senior Bond Service Account," "Senior Bond Redemption Account," and "Senior Bond Reserve Account") , the Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Interest and Sinking Fund (and all accounts created therein by or pursuant to the 1998 Resolution, including without limitation, the "Subordinated Bond Service Account" and "Subordinated Bond Redemption Account"), the Puerto Rico Highways and Transportation Authority Subordinated Transportation Revenue Bonds Reserve Fund (and all accounts created therein by or pursuant to the 1998 Resolution), the Puerto Rico Highways and Transportation Authority Transportation Revenue Fund (and all accounts created therein by or pursuant to the 1998 Resolution) and the Puerto

710972992 14458010

Page 1 of 2

REGISTRO DE

Rico Highways and Transportation Authority Transportation Construction Fund, a special fund
created and designated by the 1998 Resolution and all other accounts and funds created by or
pursuant to the 1998 Resolution; and (c) all proceeds and products of the foregoing.

When used herein, the following terms have the following meanings:

"1968 Resolution" means Resolution No. 68-18 adopted by the Debtor on June 13, 1968, as
amended by supplemental resolutions of the Debtor adopted on February 17, 1972, October 29,
1990, June 23, 1992, July 15, 1993 (effective September 8, 1993) and August 10, 1993, together
with all amendments thereto thereafter as therein permitted.

"1968 Resolution Bonds" means all bonds issued under the 1968 Resolution.

"Existing Tax and Fee Revenues" means (1) the proceeds of the sixteen cents a gallon tax
imposed on gasoline and one-half of the eight cents per gallon tax imposed on gas oil and diesel
oil imposed by Subtitle B of Act No. 120, approved October 31, 1994, as amended, and allocated
to the Debtor by Act No. 223 of November 30, 1995, as amended, and by said Act's predecessor
statutes and (2) the proceeds of the $15 increase per vehicle of annual motor vehicle license fees
imposed by the Commonwealth of Puerto Rico and allocated to the Debtor by Act No. 9,
approved August 12, 1982.

"Existing Toll Facilities Revenues" means the tolls or other charges imposed by the Debtor for
the use of any Traffic Facilities financed in whole or in part by the issuance of 1968 Resolution
Bonds, including any extensions, betterments or improvements to such Traffic Facilities added
after the issuance of bonds under the provisions of Section 207 of the 1998 Resolution however
financed or otherwise paid for.

"Toll Facilities" means any Traffic Facilities for which the Debtor imposes tolls.

"Traffic Facilities" means any of the following facilities for which 1968 Resolution Bonds or
bonds or other obligations shall be issued by the Debtor under the provisions of the 1998
Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations
shall not have been reimbursed to the Debtor from funds not encumbered by the 1998 Resolution
or the 1968 Resolution:

(1) roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations,
    terminals and any other land or water facilities necessary or desirable in connection
    with the movement of persons, freight, vehicles or vessels;
(2) parking lots and structures and other facilities necessary or desirable in connection
    with parking, loading or unloading of all kinds of vehicles or vessels; and
(3) all property rights, easements, and interests therein necessary or desirable for the
    construction, maintenance, control, operation or development of such traffic facilities.

HTA_CONF 00016438



ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMENTO DE E

Registro de Transacciones Comercial      2014003810



14 AUG -4   AM 11: 55

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO:   (Name and Address)*

Arent Fox LLP
Attention: David Dubrow
1675 Broadway
New York, NY 10019

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí☐ y provea la información del Deudor Individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here*☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | |
|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | |

OR

| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* / CÓDIGO POSTAL / *POSTAL CODE* | PAÍS / *COUNTRY* |
| VERIFY [Minillas Government Center, South Building] | San Juan | PR / 00940 | USA |

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cuplera en el espacio provisto en la 2b, ceje toda la sección 2 en blanco, marque aquí☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here*☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | |
|---|---|---|---|

OR

| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* / CÓDIGO POSTAL / *POSTAL CODE* | PAÍS / *COUNTRY* |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
   *SECURED PARTY'S NAME (or NAME of ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

| 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | |
|---|---|---|---|
| Ambac Assurance Corporation ("Ambac") for benefit of holders of all bonds ("1998 Resolution Bonds") issued under Resolution 98-06. | | | |

OR

| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | SUFIJO / *SUFFIX* |
|---|---|---|---|
| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO / *STATE* / CÓDIGO POSTAL / *POSTAL CODE* | PAÍS / *COUNTRY* |
| One State Street Plaza | New York | NY / 10004 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

All of the Debtor's rights, title, and interest in and to (i) all moneys on account of taxes on crude oil and crude oil derivative products received by, or allocated to, the Debtor pursuant to Act No. 34 of 1997, as amended; (ii) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (iii) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels other than those for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1998 Resolution Bonds and investment earnings therein; and (v) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and authorize the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque sólo si aplica y sólo una opción: Colateral está ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) ☐ administrado por Representante de un difunto | Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and instructions) ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Marque sólo si aplica y una sola alternativa / *Check only if applicable and check only one box:* | | 6b. Marque *solo* si aplica y sola una alternativa / *Check only if applicable and check only one box:* | |
|---|---|---|---|
| ☑ Transacción de Financiamiento Público / *Public-Finance Transaction* | ☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction* | ☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | ☐ Gravamen Agrícola / *Agricultural Lien* |
| | | | ☐ Inscripción extrarregistral / *Non-UCC Filing* |

| 7. DESIGNACIÓN ALTERNA (si aplica) *ALTERNATIVE DESIGNATION (if applicable):* | ☐ Arrendador/Arrendatario *Lessee/Lessor* | ☐ Consignatario/ Consignador *Consignee/Consignor* | ☐ Vendedor/ Comprador *Seller/Buyer* | ☐ Depositario/ Fiador *Bailee/Bailor* | ☐ Concesionario/Concedente *Licensee/Licensor* |
|---|---|---|---|---|---|

8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

COPIA OFICINA DE REGISTRO—DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)

HTA_CONF 00016439

ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMEN

Registro de Transacciones Co   2014003809



14 AUG -4 AM 11: 56

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO:   (Name and Address)*

Arent Fox LLP
Attention: David Dubrow
1675 Broadway
New York, NY 10019

**EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO**
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto; no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí☐ y provea la información del Deudor Individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | | |
| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO/*SUFFIX* |
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |
| Minillas Government Center, South Building, Floor 17 | San Juan | PR | 00940 | USA |

OR

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier aparte de un nombre no cubiera en el el espacion provisto en la 2b, deje toda la sección 2 en blanco, marque aquí☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO SUFFIX |
| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |

OR

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea sólo un nombre de Acreedor Garantizado (3a o 3b)
*SECURED PARTY'S NAME (or NAME of ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

| 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Holders of all bonds ("1998 Resolution Bonds") issued under Resolution 98-06. | | | | |
| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO SUFFIX |
| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |
| 1675 Broadway, 34th Floor | New York | NY | 10019 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

All of the Debtor's rights, title, and interest in and to (i) all moneys on account of taxes on crude oil and crude oil derivative products received by, or allocated to, the Debtor pursuant to Act No. 34 of 1997, as amended; (ii) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (iii) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels other than those for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1998 Resolution Bonds and investment earnings therein; and (v) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and authorize the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque solo si aplica y solo una opción: Colateral está☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones)☐ administrado por Representante de un difunto | Check *only* if applicable and check *only* one box: Collateral is☐ held in a Trust (See UCC1AdPR, item 17 and instructions)☐ being administered by a Decedent's Personal Representative | |
|---|---|---|
| 6a. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:*<br>☐ Transacción de Financiamiento Público / *Public-Finance Transaction* ☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction* ☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | 6b. Marque *solo* si aplica y solo una alternativa / *Check only if applicable and check only one box:*<br>☐ Gravamen Agrícola / *Agricultural Lien* ☐ Inscripción extralegistral *Non-UCC Filing* | |
| 7. DESIGNACIÓN ALTERNA (si aplica) *ALTERNATIVE DESIGNATION (if applicable):* | ☐ Arrendador/Arrendatario *Lessee/Lessor* ☐ Consignatario/ Consignador *Consignee/Consignor* ☐ Vendedor/ Comprador *Seller/Buyer* ☐ Depositario/ Fiador *Bailee/Bailor* ☐ Concesionario/Concedente *Licensee/Licensor* | |
| 8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:* | | |

COPIA OFICINA DE REGISTRO   DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PPI) (Pov. 05/00/14)

HTA_CONF 00016440

2014004848

REGISTRO DE
TRANSACCIONES COMERCIALES

2014 SEP -9 PM 2: 58

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Corporation Service Company

801 Adlai Stevenson Drive

Springfield, IL 62703

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| HOLDERS OF ALL BONDS ISSUED UNDER THE 1998 RESOLUTION * | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One Wall Street | New York | NY | 10286 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

---REFER TO EXHIBIT A ATTACHED HERETO, INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF. —

--- Exhibit A attached hereto consists of one page. ---

* HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION NO. 98-06, ADOPTED BY THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON FEBRUARY 26, 1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER AS THEREIN PERMITTED

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☒ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Filed with: Services Commercial Transactions Registry of the Puerto Rico Department of State   286583-002

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

HTA_CONF 00016441

REGISTRO DE
TRANSACCIONES COMERCIAL

**EXHIBIT A**
**TO**
'2019 SEP -9 PM 2:58

**UNIFORM COMMERCIAL CODE FINANCING STATEMENT**

---

<u>DEBTOR</u>:

      PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
      Minillas Government Center, South Building
      San Juan, Puerto Rico  00921

<u>SECURED PARTY</u>:

  HOLDERS OF ALL BONDS ISSUED UNDER RESOLUTION NO. 98-06, ADOPTED BY
THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ON
FEBRUARY 26, 1998, TOGETHER WITH ALL AMENDMENTS THERETO THEREAFTER
AS THEREIN PERMITTED
          One Wall Street
          New York, New York  10286

<u>COLLATERAL DESCRIPTION</u>

        The Puerto Rico Highways and Transportation Authority (the "<u>Authority</u>") has executed
and delivered a certain Security Agreement dated as of February 7, 2002 and has granted to the
holders of all bonds issued under the Authority's Resolution No. 98-06, adopted on February 26,
1998, as amended (the "<u>Resolution</u>"), a security interest in (i) all Revenues (as defined in the
Resolution) of the Authority, (ii) the Puerto Rico Highways and Transportation Authority
Transportation Revenue Bonds Interest and Sinking Fund, as such term is defined in the
Resolution (and all accounts therein maintained under the Resolution), (iii) the Puerto Rico
Highways and Transportation Authority Transportation Revenue Fund, as such term is defined in
the Resolution (and all accounts therein maintained under the Resolution), and (iv) all amounts
on deposit and required to be on deposit therein by the terms of the Resolution including all
proceeds and all after-acquired property, subject to application as permitted by the Resolution.

710972992 14458010                     Page 1 of 1

# ReedSmith

**Jared S. Roach**
Direct Phone: +1 412 288 3277
Email: jroach@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel +1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

May 23, 2018

**VIA UPS OVERNIGHT MAIL**

Commonwealth of Puerto Rico Claims
Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
New York, NY  11232

**Re:**   **In re The Commonwealth of Puerto Rico,**
'   **Case No. 17-bk-03283-LTS (D. P.R.)**

**In re Puerto Rico Highways and Transportation Authority,**
**Case No. 17-bk-03567-LTS (D.P.R.)**

Dear Sir or Madam:

Enclosed for filing, please find the original Proofs of Claim submitted by The Bank of New York
Mellon, as Fiscal Agent.  I have also enclosed copies of the Proof of Claim form and related Addenda.
Please return a time-stamped copy of the Proof of Claim form and related Addenda in the self-addressed
stamped envelope.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

REED SMITH LLP

By:

Jared S. Roach

JSR:as

Enclosures

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-140711482.1-RSAINVIL 05/23/2018 12:02 PM

HTA_CONF 00016443

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC

Jared S. Roach

**ReedSmith**

Driving progress
through partnership

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222

011800/600318/60175

To Be Filed in the
Commonwealth's Title III Case

HTA_CONF 00016444

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| PVA INTERACTIVE | THE UPS STORE | WALTMIRE PHARMACY |
| 2004 SMALLMAN ST | 1735 E CARSON ST | 1435 SPRING GARDEN AVE |
| PITTSBURGH ,PA 15222 | PITTSBURGH ,PA 15203 | PITTSBURGH ,PA 15212 |

FOLD HERE



HTA_CONF 00016445