# Debtor's Ex. 38

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☑ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

**RECEIVED**

MAY 2 4 2018

PRIME CLERK LLC



170328380006740

## Modified Official Form 410 / Formulario Oficial 410 Modificado
# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

**Quienes presenten la documentación deben omitir o editar** información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

☑ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

| **Part 1 / Parte 1** | **Identify the Claim / Identificar la reclamación** |
|---|---|

**1. Who is the current creditor?**

**¿Quién es el acreedor actual?**

The Bank of New York Mellon, as Fiscal Agent

Name of the current creditor (the person or entity to be paid for this claim)
Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

Other names the creditor used with the debtor
Otros nombres que el acreedor usó con el deudor _____

**Claim Number: 37245**

**Claim Number: 37245**

HTA_CONF 00016446

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ■ No / No<br>❑ Yes. From whom?<br>    Sí. ¿De quién? _____ | | |
|---|---|---|---|---|

| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>¿A dónde deberían enviar las notificaciones al acreedor?<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>¿A dónde deberían enviare las notificaciones al acreedor?<br><br>Reed Smith LLP Attn: Eric A. Schaffer, Esq.<br><br>Name / Nombre<br><br>225      Fifth Avenue, Suite 1200<br>Number / Número    Street / Calle<br><br>Pittsburgh    PA      15222<br>City / Ciudad   State / Estado   ZIP Code / Código postal<br><br>(412) 288-3131<br>Contact phone / Teléfono de contacto<br><br>eschaffer@reedsmith.com<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?**<br>(if different)<br>¿A dónde deberían enviare los pagos al acreedor? (En caso de que sea diferente)<br><br>Bank of New York Mellon Attn: Alex T. Chang<br><br>Name / Nombre<br><br>101      Barclay Street<br>Number / Número   Street / Calle<br><br>New York    NY      10286<br>City / Ciudad   State / Estado   ZIP Code / Código postal<br><br>(212) 815-2816<br>Contact phone / Teléfono de contacto<br><br>alex.chang@bnymellon.com<br>Contact email / Correo electrónico de contacto | |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ■ No / No<br>❑ Yes.  Claim number on court claims registry (if known)<br>    Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>    Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
|---|---|---|

| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ■ No / No<br>❑ Yes. Who made the earlier filing?<br>    Sí. ¿Quién hizo la reclamación anterior?_____ |
|---|---|---|

| **Part 2 / Parte 2:** | **Give Information About the Claim as of the Petition Date**<br>**Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.** |
|---|---|

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ■ No / No<br>❑ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>    Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>_____ |
|---|---|---|

| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ■ No / No<br>❑ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |
|---|---|---|

HTA_CONF 00016447

| | |
|---|---|
| **8. How much is the claim?**<br><br>¿Cuál es el importe de la reclamación? | $ ___See Attached Addendum___ . **Does this amount include interest or other charges?**<br>¿Este importe incluye intereses u otros cargos?<br>☐ No / No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
| **9. What is the basis of the claim?**<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>___See Attached Addendum___ |
| **10. Is all or part of the claim secured?**<br><br>¿La reclamación está garantizada de manera total o parcial? | ☐ No / No<br>☑ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☑ Other. Describe:<br>Otro. Describir:  ___See Attached Addendum___<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br>_____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br>**Value of property / Valor del bien:**  $_____<br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $ ___See Attached Addendum___<br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $_____<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $_____<br>_____<br><br>**Annual Interest Rate** (on the Petition Date)<br>**Tasa de interés anual** (cuando se presentó el caso)_____%<br>☐ Fixed / Fija<br>☐ Variable / Variable |
| **11. Is this claim based on a lease?**<br><br>¿Esta reclamación está basada en un arrendamiento? | ☑ No / No<br>☐ Yes. **Amount necessary to cure any default as of the Petition Date.**<br>Sí. **Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso** $ _____ |

HTA_CONF 00016448

| 12. **Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ☑ No / No<br><br>☐ Yes. Identify the property /<br>    Sí. Identifique el bien: _____ |
|---|---|
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☑ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received**  $ _____<br>**by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**<br><br>Sí. **Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.** |

## Part 3 / Parte 3:

### Sign Below / Firmar a continuación

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☑ I am the creditor. / Soy el acreedor.

☐ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el   05/22/2018  _____ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma   _____

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

| Name | Alex | T. | Chang |
|---|---|---|---|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

| Title / Cargo | Vice President |
|---|---|

| Company / Compañía | The Bank of New York Mellon |
|---|---|

Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

| Address / Dirección | 101 | Barclay Street | | |
|---|---|---|---|---|
| | Number / Número | Street / Calle | | |
| | New York | | NY | 10286 |
| | City / Ciudad | | State / Estado | ZIP Code / Código postal |

Contact phone / Teléfono de contacto  (212) 815-2816   Email / Correo electrónico  alex.chang@bnymellon.com

HTA_CONF 00016449

## ADDENDUM TO PROOF OF CLAIM OF THE
## BANK OF NEW YORK MELLON, AS FISCAL AGENT

### CLAIMANT

1.          The Bank of New York Mellon (the "Fiscal Agent") is the claimant in its capacity as fiscal agent under Resolution No. 68-18 (as amended and supplemented from time to time, the "68 Resolution"), adopted on June 13, 1968, by the Puerto Rico Highways and Transportation Authority (the "Authority"), pursuant to which the Bonds were issued.[1]

2.          The Fiscal Agent has corporate trust offices at 101 Barclay Street, New York, NY 10286 (Attn: Alex T. Chang).

3.          The Fiscal Agent is authorized to file this proof of claim (the "Claim") pursuant to 11 U.S.C. § 501(a), which is made applicable to this title III proceeding pursuant to 48 U.S.C. § 2161(a), and the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof.* [Case No. 17-3283 (LTS) (D. P.R. Feb. 15, 2018), Doc. No. 2521].

4.          Alex T. Chang, Vice President, is authorized to make this claim on behalf of the Fiscal Agent.

### BASIS FOR CLAIM

5.          Pursuant to the authorization provided in, and subject in all respects to, the Resolutions, on June 13, 1968, the Authority adopted the 68 Resolution, pursuant to which the Authority initially issued the Authority's Series A Bonds in the aggregate principal amount of $40,000,000 for the purpose of constructing highways and other traffic facilities. 68 Resolution, § 207.

---

[1]     Capitalized terms used but not defined herein have the meanings given in the 68 Resolution.

HTA_CONF 00016450

6.      The Authority's other bonds (as set forth below) subsequently issued under the 68 Resolution (collectively, the "68 Resolution Bonds") are payable solely from, and secured by a pledge, of the Revenues. 68 Resolution § 601-602; *id*. §101, "Revenues." The Revenues are free and clear of any other pledge, lien, charge, or encumbrance, *id*. § 602.

7.      By way of further explanation, the 68 Resolution Bonds are secured by a valid, enforceable, first-priority pledge of and lien on:  (a) the stream of current and future Toll Revenues collected by the Authority, consisting of certain tolls and other charges derived from HTA's operation of specific highways, thoroughfares, and speedways located in the Commonwealth; (b) current and future Tax Revenues, consisting of certain excise taxes and vehicle license fees imposed by the Commonwealth and allocated to the Authority by statute; and (c) funds held in, and investment earnings on, deposits to the credit of certain funds and accounts established under the 68 Resolution.  68 Resolution §§ 401, 406, 407, 501, 601, 602.

8.      **1968 Series Y Bonds**.  On March 28, 1996, the Authority adopted Resolution 96-12 ("Resolution 96-12") authorizing a series of bonds designated as Highway Revenue Bonds (Series Y) (the "Series Y Bonds") in the aggregate principal amount at issuance of $890,235,000.00.  The Series Y Bonds currently consist of Term Bonds that bear interest payable on each Interest Payment Date at the interest rates per annum, as set forth below:

1968 Series Y Term Bonds

$67,300,000 6.25% Term Bonds due July 1, 2021

9.      **1968 Series Z Bonds**.  On March 28, 1996, the Authority adopted Resolution 96-12 ("Resolution 96-12") authorizing a series of bonds designated as Highway Revenue Refunding Bonds (Series Z) (the "Series Z Bonds") in the aggregate principal amount

- 2 -

at issuance of $185,040,000.00.  The Series Z Bonds currently consist of Term Bonds that bear

interest payable on each Interest Payment Date at the interest rates per annum, as set forth below:

1968 Series Z Term Bonds

$19,775,000 6.00% Term Bonds due July 1, 2018

10. **2003 Series AA Bonds and 2010 Series AA-1 and AA-2 Bonds**.  On

April 10, 2003, the Authority issued the Highway Revenue Refunding Bonds (Series AA) in the

aggregate principal amount of $717,365,000 pursuant to Resolution 2003-23 (the "2003 Series

AA Bonds").  The 2003 Series AA Bonds consisted of $717,365,000 Serial Bonds and Term

Bonds (some of which have matured).  The 2003 Series AA Bonds currently consist of Term

Bonds that bear interest payable on each Interest Payment Date at the interest rates per annum, as

set forth below.  On June 17, 2010, the Authority reoffered the Highway Revenue Refunding

Bonds (Series AA-1 and AA-2) in the aggregate principal amounts of $188,395,000 (Series AA-

1) and $65,275,000 (Series AA-2) pursuant to Resolution 2010-13 (the "2010 Series AA

Reoffered Bonds").  The 2010 Series AA Reoffered Bonds currently consist of Serial Bonds and

Term Bonds that bear interest payable on each Interest Payment Date at the interest rates per

annum, as set forth below:

- 3 -

HTA_CONF 00016452

2003 Series AA Serial Bonds

$16,870,000 5.50% Serial Bonds due July 1, 2017
$1,770,000 5.50% Serial Bonds due July 1, 2018
$12,310,000 5.50% Serial Bonds due July 1, 2019
$13,015,000 5.50% Serial Bonds due July 1, 2020
$1,515,000 4.50% Serial Bonds due July 1, 2021
$1,655,000 4.625% Serial Bonds due July 1, 2023

2003 Series AA Term Bonds

$9,570,000 5.00% Term Bonds due July 1, 2028
$17,990,000 5.00% Term Bonds due July 1, 2035

2010 Series AA Reoffered Bonds

$110,775,000 4.95% Term Bonds due July 1, 2026 (Series AA-1)
$65,275,000 5.30% Term Bonds due July 1, 2035 (Series AA-2)

11.     **2005 Series BB Bonds**.  On September 22, 2005, the Authority

adopted Resolution 2005-29 ("Resolution 2005-29") authorizing a series of bonds designated as

Highway Revenue Refunding Bonds (Series BB) (the "Series BB Bonds") in the aggregate

principal amount at issuance of $101,625,000.00.  The Series BB Bonds currently consist of

Serial Bonds that bear interest payable on each Interest Payment Date at the interest rates per

annum, as set forth below:

2005 Series BB Serial Bonds

$13,115,000 5.25% Serial Bonds due July 1, 2017
$10,055,000 5.25% Serial Bonds due July 1, 2018
$39,900,000 5.25% Serial Bonds due July 1, 2022

12.     **2007 Series CC Bonds**.  On February 15, 2007, the Authority adopted

Resolution 2007-08 ("Resolution 2007-08") authorizing a series of bonds designated as Highway

Revenue Refunding Bonds (Series CC) (the "Series CC Bonds") in the aggregate principal

amount at issuance of $431,955,609.05.  The Series CC Bonds currently consist of Serial Bonds

and Term Bonds and Capital Appreciation Bonds that, except for the Capital Appreciation

- 4 -

HTA_CONF 00016453

Bonds, bear interest payable on each Interest Payment Date at the interest rates per annum, as set forth below:

### 2007 Series CC Serial Bonds

$34,545,000 5.50% Serial Bonds due July 1, 2028
$36,445,000 5.50% Serial Bonds due July 1, 2029
$38,445,000 5.50% Serial Bonds due July 1, 2030
$40,565,000 5.50% Serial Bonds due July 1, 2031
$42,790,000 5.25% Serial Bonds due July 1, 2032
$45,045,000 5.25% Serial Bonds due July 1, 2033
$47,405,000 5.25% Serial Bonds due July 1, 2034

### 2007 Series CC Term Bonds

$102,410,000 5.25% Term Bonds due July 1, 2036

### Series CC Capital Appreciation Bonds

$693,894.60 Capital Appreciation Bonds due July 1, 2021 (maturity value $1,305,000)
$627,835.00 Capital Appreciation Bonds due July 1, 2023 (maturity value $1,300,000)
$598,416.00 Capital Appreciation Bonds due July 1, 2024 (maturity value $1,300,000)
$570,154.00 Capital Appreciation Bonds due July 1, 2025 (maturity value $1,300,000)
$543,023.00 Capital Appreciation Bonds due July 1, 2026 (maturity value $1,300,000)
$13,764,800.70 Capital Appreciation Bonds due July 1, 2027 (maturity value $34,545,000)

13.    **Series FHA Bonds**.  Pursuant to the 68 Resolution, the Authority issued Series FHA Bonds.  The Series FHA Bonds currently consist of Terms Bonds that bear interest payable on each Interest Payment Date at the interest rates per annum, as set forth below below:

### Series FHA Bonds

$945,000 5.00% Term Bonds due July 1, 2020

14.    The Authority is a public corporation and government instrumentality of the Commonwealth of Puerto Rico created by Act No. 74 ("Act No. 74") of the Legislative Assembly of Puerto Rico, approved June 23, 1965, as amended and supplemented, for the

HTA_CONF 00016454

purpose of assuming responsibility for the construction, operation, and maintenance of highways
and other mass transportation systems in Puerto Rico. *See* P.R. Laws Ann. tit. 9, § 2002.

15.     Pursuant to Act No. 74, the Authority is authorized to issue bonds and
secure payment of principal and interest thereon by pledge of and lien on the Authority's
property and revenues, as well as by any tax "made available to the Authority by the
Commonwealth." *See* P.R. Laws Ann. tit. 9, § 2004(l); *see also id.* § 2012(e)(1), (h).

16.     The Authority pledged to "promptly pay the principal of and the
interest on every bond issued under the provisions of this Resolution." Resolution, § 601.

17.     On May 21, 2017, the Financial Oversight and Management Board of
Puerto Rico filed a petition for relief on behalf of the Authority under title III of the Puerto Rico
Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2201 *et seq*.

18.     On June 20, 2017, the Puerto Rico Fiscal Agency and Financial
Advisory Authority instructed the Fiscal Agent to refrain from making the scheduled payment to
holders of the Bonds. Since that time, additional amounts of principal and interest on the Bonds
have become due for payment, yet remain unpaid.

## AMOUNT OF CLAIM

19.     The amount of the Fiscal Agent's secured claim on account of the 68
Resolution Bonds is $847,221,399.79, which amount is calculated as follows:

> Total Principal Amount: $830,535,000.00 allocated amount the Bonds as set
> forth on **Exhibit A.**
>
> Total Accrued but Unpaid Interest: $16,473,928.83 as of May 21, 2017, plus
> accrued, unpaid interest thereafter on the outstanding Bonds at the rates of interest
> specified in the 68 Resolution, allocated among the Bonds as set forth on **Exhibit
> A**.
>
> Fees and Expenses: $212,470.96 as of May 21, 2017 and all amounts due and
> becoming due thereafter to the Fiscal Agent for services rendered under the 68

- 6 -

Resolution and reimbursement of all reasonable expenses, disbursements, and advances made or incurred by the Fiscal Agent, its agents, and employees in connection with its powers and duties under the 68 Resolution, for indemnification, and for all other amounts due or becoming due to the Fiscal Agent.

Other Claims Under the Bonds or Resolution:  Any and all claims, rights and/or remedies the Fiscal Agent and/or the Owners may have under or in connection with the 68 Resolution Bonds and/or the 68 Resolution, including any and all other interest, charges, penalties, premiums, and advances that may be due or become due under or in connection with the 68 Resolution Bonds and/or the 68 Resolution (whether under applicable law or principles of equity), which amounts presently may be unliquidated or contingent, but may become fixed and liquidated in the future, and which may constitute administrative claims;

Any and all other claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have arising at law or in equity based upon or relating to the 68 Resolution and/or the 68 Resolution Bonds, including, but not limited to, claims for breach of contract, specific performance, indemnification, contribution, rescission, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and all past, present, or future litigations, actions, or transactions by, among, or involving the Fiscal Agent, the Owners, and/or the Authority; and

Any and all other claims, arising at law or in equity, arising in, in connection with, and/or related to any and all transactions and/or transfers concerning or related to the 68 Resolution Bonds and/or the 68 Resolution between or involving the Fiscal Agent and/or the Owners and the Authority, including, but not limited to, any and all written or oral contracts, pledges, security interests, leases, guaranties, indemnities, contributions, fiduciary obligations, trusts, quasi-contracts, properties, replevins, conversions, misrepresentations, set offs, or frauds.

SECURITY AND NATURE OF CLAIM

20.      The Claim is secured by the 68 Resolution, pursuant to which the

Authority pledged to the Fiscal Agent, among other things, an interest in and lien on the

Revenues, which consist of (a) all moneys received by the Authority on account of gasoline tax

allocated the Authority, (b) tolls or other charges imposed by the Authority for use of any of its

Traffic Facilities, (c) the proceed of any other taxes, fees or charges which the Legislature of

Puerto Rico has allocated to the Authority; and (d) investment earnings on deposit to the credit of

- 7 -

HTA_CONF 00016456

the funds and accounts established under the 68 Resolution.  *See* 68 Resolution § 602; *id.* §101,

"Revenues."

21.     Additionally, the following UCC-1 financing statements (the "Financing

Statements") were filed with the Department of State of the Commonwealth of Puerto Rico:

- UCC-1 Financing Statement No. 2014002566, dated May 16, 2014;
- UCC-1 Financing Statement No. 2014002568, dated May 16, 2014;
- UCC-1 Financing Statement No. 2014003807, dated August 4, 2014; and
- UCC-1 Financing Statement No. 2014003808, dated August 4, 2014.

### SUPPORTING DOCUMENTS

22.     The 68 Resolution and the Financing Statements are attached as

exhibits to this Claim.  The remaining supporting documents are voluminous and may be

requested from the Fiscal Agent.

### RESERVATION OF RIGHTS

23.     The Fiscal Agent reserves the right to amend, modify, and/or

supplement its Claim and Addendum to Proof of Claim, including in respect of any additional

claims arising under or in connection with the Resolutions and related documents.  Nothing in

this Claim or Addendum to Proof of Claim shall be deemed a waiver of any rights or remedies

that the Fiscal Agent may have under the Resolution and/or in connection with this title III case.

All such rights and remedies are expressly reserved.  This Claim is filed without prejudice to the

filing by the Fiscal Agent or any other applicable party of additional proofs of claim with respect

to any other liability or indebtedness.

HTA_CONF 00016457

## Exhibit A

### Claim Calculation Detail

| CUSIP | Rate | Maturity | Principal (Maturity Value) | Accrued, Unpaid Interest as of 5/21/2017 |
|---|---|---|---|---|
| **Series Y** | | | | |
| 745181NF0 | 6.25% | 7/1/2021 | $67,300,000.00 | $1,635,763.89 |
| **Subtotals -** | | | $67,300,000.00 | $1,635,763.89 |
| | | | | |
| **Series Z** | | | | |
| 745181M79 | 6.00% | 7/1/2018 | $19,775,000.00 | $461,416.67 |
| **Subtotals -** | | | $19,775,000.00 | $461,416.67 |
| | | | | |
| **Series AA** | | | | |
| 745181N52 | 4.95% | 7/1/2026 | $110,775,000.00 | $2,132,418.75 |
| 745181K97 | 5.30% | 7/1/2035 | $65,275,000.00 | $1,345,390.28 |
| 745181N60 | 5.50% | 7/1/2017 | $16,870,000.00 | $360,830.56 |
| 745181N78 | 5.50% | 7/1/2018 | $1,770,000.00 | $37,858.33 |
| 745181N86 | 5.50% | 7/1/2019 | $12,310,000.00 | $263,297.22 |
| 745181N94 | 5.50% | 7/1/2020 | $13,015,000.00 | $278,376.39 |
| 745181XN2 | 4.50% | 7/1/2021 | $1,515,000.00 | $26,512.50 |
| 745181XQ5 | 4.625% | 7/1/2023 | $1,655,000.00 | $29,767.01 |
| 745181XR3 | 5.00% | 7/1/2028 | $9,570,000.00 | $186,083.33 |
| 745181XS1 | 5.00% | 7/1/2035 | $17,990,000.00 | $349,805.56 |
| **Subtotals -** | | | $250,745,000.00 | $5,010,339.93 |
| | | | | |
| **Series BB** | | | | |
| 745181ZJ9 | 5.25% | 7/1/2017 | $13,115,000.00 | $267,764.58 |
| 745181ZK6 | 5.25% | 7/1/2018 | $10,055,000.00 | $205,289.58 |
| 745181P35 | 5.25% | 7/1/2022 | $39,900,000.00 | $814,625.00 |
| **Subtotals -** | | | $63,070,000.00 | $1,287,679.17 |
| | | | | |
| **Series CC** | | | | |
| 745181B97 | 5.50% | 7/1/2028 | $34,545,000.00 | $738,879.17 |
| 745181C21 | 5.50% | 7/1/2029 | $36,445,000.00 | $779,518.06 |
| 745181C39 | 5.50% | 7/1/2030 | $38,445,000.00 | $822,295.83 |
| 745181C47 | 5.50% | 7/1/2031 | $40,565,000.00 | $867,640.28 |
| 745181C54 | 5.25% | 7/1/2032 | $42,790,000.00 | $873,629.17 |
| 745181C62 | 5.25% | 7/1/2033 | $45,045,000.00 | $919,668.75 |
| 745181C70 | 5.25% | 7/1/2034 | $47,405,000.00 | $967,852.08 |
| 745181C88 | 5.25% | 7/1/2036 | $102,410,000.00 | $2,090,870.83 |
| 745181B22 | N/A | 7/1/2021 | $1,305,000.00 | $0.00 |
| 745181B48 | N/A | 7/1/2023 | $1,300,000.00 | $0.00 |

HTA_CONF 00016458

| | | | | |
|---|---|---|---|---|
| 745181B55 | N/A | 7/1/2024 | $1,300,000.00 | $0.00 |
| 745181B63 | N/A | 7/1/2025 | $1,300,000.00 | $0.00 |
| 745181B71 | N/A | 7/1/2026 | $1,300,000.00 | $0.00 |
| 745181B89 | N/A | 7/1/2027 | $34,545,000.00 | $0.00 |
| **Subtotals -** | | | $428,700,000.00 | $8,060,354.17 |
| | | | | |
| **Series FHA** | | | | |
| 745194XC | 5.00% | 7/1/2020 | $945,000.00 | $18,375.00 |
| **Subtotals -** | | | $945,000.00 | $18,375.00 |
| | | | | |
| **Totals -** | | | **$830,535,000.00** | **$16,473,928.83** |

HTA_CONF 00016459

**EXHIBIT B**

<u>68 Resolution</u>

(Attached)

US_ACTIVE-139680931.5-RSAINVIL

# PUERTO RICO HIGHWAY AUTHORITY

## Resolution No. 68-18

### Adopted June 13, 1968

### Authorizing and Securing
### HIGHWAY REVENUE BONDS

HTA_CONF 00016461

i

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Title | 1 |
| Preambles: | |
| Act No. 74, approved June 23, 1965 | 1 |
| Powers of Authority | 1 |
| Power to enter into agreements with Secretary of Public Works | 2 |
| Agreement with Secretary of Public Works | 3 |
| Act No. 75, approved June 23, 1965, as supplemented | 3 |
| Line of Credit | 3 |
| Determination to issue bonds | 4 |
| Provisions for issuance of additional bonds | 4 |

## ARTICLE I.
### DEFINITIONS.

| | | PAGE |
|---|---|---|
| SEC. 101. | Meanings of words and terms: | |
| | "Amortization Requirements" | 4 |
| | "bonds" | 5 |
| | "Construction Fund" | 5 |
| | "Executive Director" | 5 |
| | "Fiscal Agent" | 5 |
| | "fiscal year" | 5 |
| | "Government obligations" | 5 |
| | "Outstanding Notes" | 5 |
| | "Paying Agents" | 5 |
| | "Principal and Interest Requirements" | 5 |
| | "principal underwriters" | 6 |
| | "Revenues" | 6 |
| | "Series" | 6 |
| | "Sinking Fund" | 6 |
| | "Traffic Engineers" | 7 |
| | "Traffic Facilities" | 7 |
| SEC. 102. | Miscellaneous | 7 |

## ARTICLE II.
### AUTHORIZATION, FORM, ISSUANCE, DELIVERY AND
### REGISTRATION OF BONDS.

| | | PAGE |
|---|---|---|
| SEC. 201. | Authorization of bonds | 7 |
| SEC. 202. | Certain details of bonds | 8 |
| SEC. 203. | Execution of bonds and coupons | 9 |
| | Form of bonds | 9 |
| | Provisions for registration and reconversion | 13 |
| | Form of coupons | 14 |

ii

TABLE OF CONTENTS—*continued*

|  |  |  | PAGE |
|---|---|---|---|
| Sec. | 204. | Registration of bonds | 15 |
| Sec. | 205. | Ownership of registered bonds | 15 |
|  |  | Ownership of bearer bonds and coupons | 16 |
| Sec. | 206. | Reconversion of registered bonds | 16 |
| Sec. | 207. | Initial issue of $40,000,000 Highway Revenue Bonds (Series A) | 16 |
|  |  | Disposition of bond proceeds | 18 |
| Sec. | 208. | Issuance of bonds to complete any Traffic Facilities and for additional Traffic Facilities | 18 |
| Sec. | 209. | Issuance of refunding bonds | 21 |
| Sec. | 210. | Deposit of accrued interest | 24 |
| Sec. | 211. | Temporary bonds | 24 |
| Sec. | 212. | Mutilated, destroyed, lost or stolen bonds | 25 |

## ARTICLE III.
### REDEMPTION OF BONDS.

| Sec. | 301. | Redemption of bonds | 26 |
|---|---|---|---|
|  |  | Selection by Fiscal Agent for partial redemption | 26 |
| Sec. | 302. | Redemption notice | 26 |
| Sec. | 303. | Effect of calling for redemption | 27 |
| Sec. | 304. | Matured coupons | 27 |
| Sec. | 305. | Cancellation of bonds and coupons redeemed | 27 |
| Sec. | 306. | Bonds called for redemption not deemed outstanding | 27 |

## ARTICLE IV.
### REVENUES AND FUNDS.

| Sec. | 401. | Sinking Fund | 28 |
|---|---|---|---|
|  |  | Bond Service Account, Redemption Account and Reserve Account | 28 |
|  |  | Deposits of Revenues | 28 |
| Sec. | 402. | Application of moneys in Bond Service Account | 30 |
| Sec. | 403. | Application of moneys in Redemption Account | 30 |
| Sec. | 404. | Application of moneys in Reserve Account | 32 |
| Sec. | 405. | Certificate to be filed for withdrawal from Construction Fund | 32 |
| Sec. | 406. | Pledge of moneys in Bond Service Account, Redemption Account and Reserve Account | 32 |
| Sec. | 407. | Moneys set aside for principal and interest held in trust | 33 |
|  |  | Moneys unclaimed for six years after maturity of bonds and coupons | 33 |
| Sec. | 408. | Cancellation of bonds and coupons upon payment | 33 |
| Sec. | 409. | Balance in funds to Authority when bonds paid | 34 |

HTA_CONF 00016463

iii

TABLE OF CONTENTS—continued

PAGE

## ARTICLE V.

### DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS
### AND INVESTMENT OF FUNDS.

| | | | |
|---|---|---|---|
| SEC. | 501. | Deposits constitute trust funds .......................... | 34 |
| | | Security for deposits ................................. | 34 |
| SEC. | 502. | Investment of moneys ................................ | 35 |
| | | Investments deemed to be part of Fund or Account for which purchased ........................................ | 36 |
| | | Interest and profit on investments to be credited to Reserve Account and any loss charged to Reserve Account ....... | 36 |

## ARTICLE VI.

### PARTICULAR COVENANTS.

| | | | |
|---|---|---|---|
| SEC. | 601. | Payment of principal, interest and premium .............. | 36 |
| SEC. | 602. | Pledge of Revenues ................................... | 37 |
| SEC. | 603. | Master plan for construction of Traffic Facilities and priorities construction program for five year period .............. | 37 |
| | | Five year priorities construction program to be updated each year ............................................. | 37 |
| SEC. | 604. | Costs of maintaining Traffic Facilities to be paid from Construction Fund if not paid from general funds of Commonwealth ............................................ | 37 |
| | | Annual general evaluation of maintenance of Traffic Facilities to be made by Traffic Engineers ...................... | 37 |
| SEC. | 605. | Annual report of Traffic Engineers ...................... | 37 |
| | | Filing of copies of report .............................. | 38 |
| | | Repairs recommended by report to be made .............. | 38 |
| SEC. | 606. | Annual statement concerning Traffic Facilities program to be submitted to Legislature, Planning Board and others by Authority ............................................ | 38 |
| SEC. | 607. | Authority to keep accurate records and accounts .......... | 39 |
| | | Annual Audit ........................................ | 39 |
| SEC. | 608. | Employment of Traffic Engineers ....................... | 39 |

## ARTICLE VII.

### CONCERNING THE FISCAL AGENT.

| | | | |
|---|---|---|---|
| SEC. | 701. | Appointment of Fiscal Agent; acceptance of duties ........ | 40 |
| SEC. | 702. | Limitations on responsibilities of Fiscal Agent ............. | 40 |
| SEC. | 703. | Fiscal Agent not liable for failure of Authority to act ...... | 41 |
| SEC. | 704. | Quarterly statements from Fiscal Agent .................. | 41 |
| SEC. | 705. | Fiscal Agent protected in relying on certain documents ..... | 41 |

iv

## TABLE OF CONTENTS—continued

| | | | PAGE |
|---|---|---|---|
| Sec. | 706. | Resignation of Fiscal Agent | 42 |
| Sec. | 707. | Removal of Fiscal Agent | 42 |
| Sec. | 708. | Appointment of successor Fiscal Agent | 43 |
| Sec. | 709. | Vesting of rights in successor Fiscal Agent | 44 |
| Sec. | 710. | Compensation and indemnification of Fiscal Agent and Paying Agents | 44 |

## ARTICLE VIII.

### Supplemental Resolutions.

| | | | |
|---|---|---|---|
| Sec. | 801. | Restrictions on adoption of supplemental resolutions | 45 |
| | | Notice of supplemental resolution | 45 |
| Sec. | 802. | Consent of bondholders | 46 |
| Sec. | 803. | Supplemental resolution thereafter part of Resolution | 48 |
| Sec. | 804. | Modification of rights or obligations of Fiscal Agent or any Paying Agent not to be made without consent | 48 |
| | | Fiscal Agent not responsible for propriety of supplemental resolutions | 48 |

## ARTICLE IX.

### Defeasance.

| | | | |
|---|---|---|---|
| Sec. | 901. | Bondholders' rights cease upon provision for payment of bonds | 48 |

## ARTICLE X.

### Miscellaneous Provisions.

| | | | |
|---|---|---|---|
| Sec. | 1001. | Authority may finance traffic facilities by obligations not secured by Resolution | 49 |
| Sec. | 1002. | Successorship of Authority | 50 |
| Sec. | 1003. | Successorship of Paying Agent | 50 |
| Sec. | 1004. | Manner of giving notice | 50 |
| Sec. | 1005. | Authority, Fiscal Agents and bondholders alone have rights under Resolution | 51 |
| Sec. | 1006. | Effect of partial invalidity | 51 |
| Sec. | 1007. | Effect of covenants | 51 |
| Sec. | 1008. | Duties of officers and agents of Authority | 52 |
| Sec. | 1009. | Repeal of inconsistent resolutions | 52 |
| Sec. | 1010. | Resolution effective upon passage | 52 |

HTA_CONF 00016465

1

# Resolution No. 68-18

## A RESOLUTION AUTHORIZING THE ISSUANCE OF PUERTO RICO HIGHWAY AUTHORITY HIGHWAY REVENUE BONDS

WHEREAS, Act No. 74, approved June 23, 1965 (hereinafter sometimes called the "Enabling Act") created the Puerto Rico Highway Authority (hereinafter sometimes called the "Authority") as a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico for the purpose of continuing the government program of providing highways to facilitate the movement of vehicular traffic, relieve hazards and handicaps on the congested roads and highways of the Commonwealth and to meet the increasing demand for additional traffic facilities resulting from the continuing economic development of the Commonwealth; and

WHEREAS, by virtue of the Enabling Act, the Authority has, among others, the power

(i) to have perpetual existence as a corporation,

(ii) to have complete control and supervision of any traffic facilities owned, operated, constructed or acquired by it under the provisions of the Enabling Act, including without limitation the determination of the site, location, and the establishment, limit and control of points of ingress to and egress from such facilities, and materials of construction and the construction, maintenance, repair and operation thereof,

(iii) to have complete control and supervision over the character of and necessity for all of its expenditures and the manner in which they shall be incurred, allowed and paid without regard to the provision of any laws governing the expenditure of public funds,

(iv) to sue and be sued, complain and defend in all courts of justice and administrative bodies,

(v) to make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers,

HTA_CONF 00016466

2

(vi) to determine, fix, impose, alter and collect tolls or ferriage, rentals, assessments, and other reasonable charges for the use of the traffic facilities owned, operated, constructed, acquired or financed by the Authority or for the services rendered thereby. In fixing or altering these charges the Authority shall take into account such factors as will promote the use of the traffic facilities owned or operated by it in the broadest and most varied manner economically possible. To fix or alter such charges the Authority shall hold a public hearing of an informative and quasi-legislative character, before the Authority Board, or before any official or officials that the Authority may designate for the purpose. Such hearings shall be announced reasonably in advance, stating the place and time of the hearing and the proposed charges or alteration,

(vii) to borrow money for any of its corporate purposes, and to issue bonds, notes or other obligations of the Authority in evidence of such indebtedness and to secure payment of bonds, notes and other obligations and interest thereon by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth,

(viii) to issue bonds for the purpose of funding, refunding, purchasing, paying or discharging any of its outstanding bonds or other obligations, and

(ix) to do all acts or things necessary or desirable to the carrying out of the powers granted to the Authority by the Enabling Act or by any other act of the Legislature of Puerto Rico; provided, however, that neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to clause (vii) of this preamble; and

WHEREAS, by virtue of the Enabling Act, the Secretary of Public Works is authorized to enter into agreements with the Authority for

HTA_CONF 00016467

3

the study, design, construction, repair, maintenance, acquisition of properties and easements, and any other matter necessary to carry out the purposes of said Act and the Authority is authorized to enter into agreements under which the Secretary of Public Works agrees to pay in whole or in part, the cost of repairs, maintenance and operation of any traffic facilities financed under the provisions of the Enabling Act with funds of the Commonwealth covered into the public treasury; and

WHEREAS, pursuant to the Enabling Act the Authority has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary of Public Works has agreed to pay the costs from general funds of the Commonwealth of Puerto Rico which are made available to him for that purpose, of maintaining, repairing and operating all traffic facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of this Resolution; and

WHEREAS, by Act No. 75, approved June 23, 1965 as supplemented by Act No. 50, approved May 22, 1968, the proceeds of six-elevenths of the eleven cents a gallon tax imposed on gasoline by Act No. 2, approved January 20, 1956, as amended, was allocated to the Authority for use for its corporate purposes and expressly authorized the Authority to pledge the proceeds of said six cents a gallon tax received by it to the payment of the principal of and the interest on bonds or other obligations of the Authority or for any other lawful purpose of the Authority, the tax proceeds so pledged being subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed therefor but only to the extent that the other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose; and

WHEREAS, the Authority for the purpose of continuing the government program of providing highways has heretofore borrowed money and issued its temporary notes pursuant to a line of credit extended to the Authority by The Chase Manhattan Bank (National Association) (such notes as are outstanding and unpaid being hereinafter called the "Outstanding Notes"); and

HTA_CONF 00016448

4

WHEREAS, the Authority has determined to provide at this time for the issuance of bonds of the Authority for the purpose of providing funds to pay the Outstanding Notes and for providing additional funds for use by the Authority for continuing its highway construction program; and

WHEREAS, the Authority has also determined to provide for the issuance from time to time of additional bonds under the terms and conditions hereinafter set forth for any of the purposes specified in the Enabling Act; now, therefore,

BE IT RESOLVED by the Puerto Rico Highway Authority:

## ARTICLE I.

### DEFINITIONS.

SECTION 101. In addition to words and terms elsewhere defined in this Resolution, the following words and terms as used in this Resolution shall have the following meanings, unless some other meaning is plainly intended:

The term "Amortization Requirements" shall mean

(a) with respect to the term bonds issued under the provisions of Section 207 of this Resolution, the following amounts in the following fiscal years, respectively:

| Fiscal Year | Amount | Fiscal Year | Amount |
|---|---|---|---|
| 1988-89 | $1,600,000 | 1993-94 | $2,100,000 |
| 1989-90 | 1,700,000 | 1994-95 | 2,150,000 |
| 1990-91 | 1,800,000 | 1995-96 | 2,200,000 |
| 1991-92 | 1,900,000 | 1996-97 | 2,250,000 |
| 1992-93 | 2,000,000 | 1997-98 | 2,300,000 |

, and

(b) with respect to term bonds issued under the provisions of Sections 208 and 209 of this Resolution, the respective amounts which are required in each year to provide for redeeming from time to time under the provisions of this Resolution all of such

HTA_CONF 00016469

5

bonds by their stated maturity as fixed in the resolution providing for the issuance of such bonds.

The word "bonds" shall mean the bonds issued under this Resolution.

The term "Construction Fund" shall mean the Puerto Rico Highway Authority Construction Fund, a special fund created and designated by Section 207 of this Resolution.

The term "Executive Director" shall mean the Executive Director of the Authority or the officer succeeding to his principal functions and duties.

The term "Fiscal Agent" shall mean the bank or trust company appointed by the Authority and acting as Fiscal Agent pursuant to the provisions of this Resolution, and shall be held and construed to mean the Fiscal Agent for the time being, whether original or successor.

The term "fiscal year" shall mean, for the purposes of this Resolution, the period commencing on the first day of July and ending on the last day of June of the following calendar year.

The term "Government obligations" shall mean direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States Government.

The term "Outstanding Notes" shall have the meaning set forth in the preambles of this Resolution.

The term "Paying Agents" shall mean the banks or trust companies at which the principal of and the interest on the bonds shall be payable.

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series issued under the provisions of this Resolution, shall mean the sum of:

(a) the amount required to pay the interest on the serial bonds of such Series then outstanding which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year,

(b) the amount required to pay the principal of the serial bonds of such Series then outstanding which is payable on July 1 in the following fiscal year,

(c) the amount required to pay the interest on the term bonds of such Series then outstanding, which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year, and

Case:17-03283-LTS   Doc#:21620-18   Filed:07/27/22   Entered:07/27/22 19:19:01   Desc:
Debtors Ex. 38   Page 27 of 142

6

(d) the Amortization Requirement for the term bonds of such Series for such fiscal year,

the computation of such amount for each fiscal year to be based on the assumption that the serial bonds of such Series at the time outstanding will be retired according to their stated maturities and that an amount of term bonds of each such Series equal to the Amortization Requirement for such fiscal year will be retired by purchase or redemption on July 1 in the following fiscal year.

The term "principal underwriters" shall mean the firm or corporation or the firms or corporations named as principal underwriters in the resolution of the Authority awarding the bonds of each Series. In the event any such underwriter shall retire from active business leaving no successor, the term shall thereafter mean the remaining principal underwriter or underwriters. In the event each such underwriter shall retire from active business leaving no successor, the provisions of this Resolution which relate to the principal underwriters shall no longer be in force. For the purposes of this paragraph any firm or corporation succeeding to the business of any such underwriter by assignment, merger or otherwise shall be deemed to be a principal underwriter.

The word "Revenues" shall mean all moneys received by the Authority on account of the gasoline tax allocated to the Authority by Act No. 75, approved June 23, 1965, any tolls or other charges imposed by the Authority for the use of any of the Traffic Facilities, and the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on bonds or other obligations of the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of this Resolution.

The word "Series" shall mean either the bonds issued under the provisions of Section 207 of this Resolution or the bonds delivered at any one time under the provisions of Sections 208 or 209 of this Resolution.

The term "Sinking Fund" shall mean the Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund, a special fund created and designated by Section 401 of this Resolution.

HTA_CONF 00016471

7

The term "Traffic Engineers" shall mean the engineer or engineering firm or corporation at the time employed by the Authority under the provisions of Section 608 of this Resolution.

The term "Traffic Facilities" shall mean any of the following facilities for which bonds or other obligations shall be issued by the Authority under the provisions of this Resolution the cost of which facilities paid from the proceeds of such bonds or other obligations shall not have been reimbursed to the Authority from funds not encumbered by this Resolution:

(1) roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, and any other land or water facilities necessary or desirable in connection with the movement of persons, freight, vehicles or vessels;

(2) parking lots and structures and other facilities necessary or desirable in connection with the parking, loading or unloading of all kinds of vehicles and vessels;

(3) all property, rights, easements, and interests therein necessary or desirable for the construction, maintenance, control, operation or development of such traffic facilities.

SECTION 102. Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders. Unless the context shall otherwise indicate, the words "bond", "coupon", "owner", "holder" and "person" shall include the plural as well as the singular number, the word "person" shall include corporations and associations, including public bodies, as well as natural persons, and the word "holder" or "bondholder" when used herein with respect to bonds issued hereunder shall mean the holder or registered owner, as the case may be, of bonds at the time issued and outstanding hereunder.

## ARTICLE II.

### AUTHORIZATION, FORM, ISSUANCE, DELIVERY AND REGISTRATION OF BONDS.

SECTION 201. For the purpose of providing funds to pay the Outstanding Notes and to provide additional funds for use by the Authority for the construction of Traffic Facilities, there shall be issued under and pursuant to the Enabling Act, bonds of the Authority in the amount and subject to the conditions hereinafter provided in Section

8

207 of this Article. All of the covenants, agreements and provisions of this Resolution shall be for the benefit and security of all and singular the present and future holders of the bonds and interest coupons so issued, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond by reason of priority in the issue, sale or negotiation thereof or otherwise.

SECTION 202. The definitive bonds of each Series issued under the provisions of this Resolution shall be in the denomination of Five-Thousand Dollars ($5,000) each, shall be numbered consecutively from 1 upwards, shall be dated, shall bear interest from their date until their payment, such interest to the respective maturities of the bonds being payable semi-annually on the 1st days of January and July in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided.

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts. The principal of and interest on the bonds, unless registered, shall be payable at The Chase Manhattan Bank (National Association), in the Borough of Manhattan, City and State of New York, or in the Municipality of San Juan, Puerto Rico, or at Bank of America National Trust and Savings Association, in the City of San Francisco, California (herein sometimes called the "Paying Agents") at the option of the holder. The Authority reserves the right to designate additional Paying Agents from time to time. Payment of the interest on the bonds to the respective maturities thereof shall be made only upon presentation and surrender of the coupons, if any, representing such interest as the same respectively become due; or, if any bond shall be registered, payment of the interest on such bond on any interest payment date shall be made to the person appearing on the bond registration books of the Authority hereinafter provided for as the registered owner thereof, such interest to be paid by check or draft mailed to the registered owner at his address as it appears on such registration books. The principal of any registered bond shall be payable upon presentation and surrender thereof at the principal office of The Chase Manhattan Bank (National Association).

9

SECTION 203. The bonds shall bear the facsimile signature of the Chairman of the Authority and shall be signed by the Executive Director and the Secretary or an Assistant Secretary of the Authority, and a facsimile of the corporate seal of the Authority shall be imprinted on the bonds. The interest coupons to be attached to the bonds shall be executed with the facsimile signature of said Chairman. In case any officer whose signature or a facsimile of whose signature shall appear on any bonds or coupons shall cease to be such officer before the delivery of such bonds, such signature or such facsimile shall nevertheless be valid and sufficient for all purposes the same as if he had remained in office until such delivery, and also any bond or coupon may bear the facsimile signature of, or may be signed by, such persons as at the actual time of the execution of such bond or coupon shall be the proper officers to execute such bond or coupon although at the date of such bond or coupon such persons may not have been such officers. The bonds and the interest coupons to be attached thereto, and the provisions for registration and reconversion to be endorsed on the bonds, shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Resolution:

[FORM OF BONDS]

No._____                                                          $5,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

## PUERTO RICO HIGHWAY AUTHORITY

### HIGHWAY REVENUE BOND (SERIES A)

The Puerto Rico Highway Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer or, if this bond be registered, to the registered owner hereof, on the 1st day of _____, 19____ (or earlier as hereinafter referred to), the principal sum of

### FIVE THOUSAND DOLLARS

and to pay, solely from said special fund, interest thereon from the date

HTA_CONF 00016474

10

hereof at the rate of _____ per centum (_____%)
per annum until payment of such principal sum, such interest to the
maturity hereof being payable semi-annually on the 1st days of
January and July in each year. Both the principal of and the interest
on this bond are payable in any coin or currency of the United States
of America which, at the respective dates of payment thereof, is legal
tender for the payment of public and private debts. Unless registered,
both the principal of this bond and the interest hereon are payable at

_____ at the option of the holder. Payment of the in-
terest on this bond to the maturity hereof will be made only upon
presentation and surrender of the coupons, if any, representing such
interest as the same respectively become due; or, if this bond be regis-
tered payment of the interest on this bond on any interest payment
date will be made to the person appearing on the bond registration
books of the Authority as the registered owner hereof, such interest
to be paid by check or draft mailed to the registered owner at his
address as it appears on such registration books. The principal of this
bond if registered is payable upon the presentation and surrender
hereof at the principal office of The Chase Manhattan Bank (National
Association).

This bond is one of a duly authorized series of bonds of the Au-
thority designated "Highway Revenue Bonds (Series A)", aggregating
Forty Million Dollars ($40,000,000), consisting of $20,000,000 bonds
maturing in annual instalments on July 1 in each of the years 1970 to
1988, inclusive (herein called the "serial bonds"), and of $20,000,000
bonds maturing on July 1, 1998 (herein called the "term bonds") and
issued to pay the cost of constructing highways and other traffic facili-
ties, as such term is defined in the Enabling Act hereinafter mentioned,
including the payment of notes heretofore issued by the Authority for
such purpose. The Resolution provides for the issuance, from time to
time, under the conditions, limitations and restrictions therein set forth,
of additional bonds for the purpose of paying all or a part of the cost
of additional traffic facilities, and for the purpose of refunding any
bonds issued by the Authority under the provisions of the Resolution
hereinafter mentioned. All of the bonds are issued or are to be issued
under and pursuant to Resolution No. 68-18, duly adopted by the Autho-
rity on June 13, 1968 (said Resolution No. 68-18 being herein called

HTA_CONF 00016475

11

the "Resolution"), reference to which is hereby made for the provisions,
among others, with respect to the application of the proceeds of bonds
issued under the Resolution, the collection and disposition of revenues,
the fund charged with and pledged to the payment of the interest on and
the principal of the bonds, the nature and extent of the security, the
rights, duties and obligations of the Authority and of the Fiscal Agent
under the Resolution and the rights of the holders of the bonds, and, by
the acceptance of this bond, the holder hereof assents to all of the pro-
visions of the Resolution.

This bond is issued and the Resolution was adopted under and
pursuant to the Puerto Rican Federal Relations Act and the Consti-
tution and laws of the Commonwealth of Puerto Rico, particularly
Act No. 74, approved June 23, 1965, as amended (said Act as amended
being herein called the "Enabling Act"). The Resolution provides
for the creation of a special fund designated "Puerto Rico Highway
Authority Highway Revenue Bonds Interest and Sinking Fund" (here-
in called the "Sinking Fund"), which special fund is pledged to and
charged with the payment of the principal of and the interest on all
bonds issued under the provisions of the Resolution, and also provides
for the deposit to the credit of said special fund of a sufficient amount
of the moneys received by the Authority (a) from the gasoline taxes
allocated to the Authority by Act No. 75, approved June 23, 1965, (b)
from any tolls or other charges imposed by the Authority for the use
of any traffic facilities to the extent provided in the Resolution and (c)
from the proceeds of any other taxes, fees or charges which the Legis-
lature of Puerto Rico may allocate to the Authority and expressly
authorize the Authority to pledge to the payment of the principal of
and interest on bonds or other obligations issued by the Authority
and which are pledged by the Authority to the payment of the principal
of and interest on bonds or other obligations issued under the provi-
sions of the Resolution, to pay such principal and interest as the same
shall become due and to create and maintain a reserve therefor. The
proceeds of the gasoline taxes so allocated to the Authority by said
Act No. 75 and any other taxes, fees or charges which the Legislature
of Puerto Rico may allocate to the Authority are subject to first being
applied to the payment of interest and amortization of the public debt
in accordance with the provisions of Section 8 of Article VI of the
Constitution of Puerto Rico if needed for such purpose, but only to the

HTA_CONF 00016476

12

extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose.

The bonds at the time outstanding may be redeemed prior to their respective maturities at the option of the Authority (here insert the applicable redemption provisions).

If less than all of the bonds of any one maturity shall be called for redemption, the particular bonds to be redeemed shall be selected as provided in the Resolution.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Resolution, and shall be made in the manner and under the terms and conditions provided in the Resolution. Bonds which have been duly called for redemption, or with respect to which irrevocable instructions to call for redemption at the earliest redemption date have been given to the Fiscal Agent, notice having been published and moneys for the payment of the redemption price being held by the Fiscal Agent or by the paying agents, all as provided in the Resolution, shall become and be due and payable at the redemption price provided for redemption of such bonds on the date designated for redemption, interest on such bonds so called for redemption shall thereafter cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, and the holders or registered owners thereof shall have no rights in respect of such bonds so called for redemption except to receive payment of the redemption price thereof so held by the Fiscal Agent or by the paying agents.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

This bond may be registered as to both principal and interest and, if registered, may be reconverted into a coupon bond, in accordance with the provisions endorsed hereon and subject to the terms and conditions set forth in the Resolution.

Subject to the provisions for registration endorsed hereon and contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As

13

declared by the Enabling Act, this bond shall be deemed to be fully negotiable.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the resolutions of the Authority to happen, exist and be performed precedent to and in the issuance of this bond have happened, exist and have been performed as so required.

IN WITNESS WHEREOF, the Puerto Rico Highway Authority has caused this bond to be signed with the facsimile signature of its Chairman and to be signed by its Executive Director and (insert either "its Secretary" or "an Assistant Secretary"), and a facsimile of its corporate seal to be imprinted hereon, and the interest coupons attached hereto to be executed with the facsimile signature of said Chairman, all as of the 1st day of January, 1968.

_____          _____
        *Chairman*                    *Executive Director*


(Seal)                            _____
                                          *Secretary*

## PROVISIONS FOR REGISTRATION
## AND RECONVERSION

This bond may be registered as to both principal and interest on books of the Authority kept by The Chase Manhattan Bank (National Association), New York, N. Y., under the within mentioned Resolution, as Bond Registrar, upon presentation hereof to the Bond Registrar at its principal office which shall detach and retain in its custody all unmatured coupons and all matured coupons, if any, not theretofore paid or provided for and shall make notation of such registration in the registration blank below, and this bond may thereafter be transferred only upon an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, such transfer to be made on such books and endorsed

14

hereon by the Bond Registrar; after such registration both the principal of and the interest on this bond shall be payable only to or upon the order of the registered owner or his legal representative. This bond, if converted into a registered bond, may be reconverted into a coupon bond upon presentation hereof to the Bond Registrar, accompanied by an instrument duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar; upon any such reconversion the Bond Registrar shall reattach hereto the coupons representing the interest to become due thereafter on this bond to the date of maturity and the interest, if any, not theretofore paid and shall make notation in the registration blank below that this bond is payable to bearer.

| *Date of Registration* | *Name of Registered Owner* | *Signature of Bond Registrar* |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

[FORM OF COUPONS]

No. _____                                $_____

On _____ 1, 19___, the Puerto Rico Highway Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Resolution referred to in said bond and provision for payment thereof shall have been duly made) at

_____

upon the presentation and surrender hereof, the sum of _____

Dollars in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and

15

private debts, as provided in and for the semi-annual interest then due
upon, its Highway Revenue Bond (Series A), dated as of January 1,
1968, No. _____

———————————————————————
*Chairman*

SECTION 204. Title to any bond, unless such bond is registered in
the manner hereinafter provided, and to any interest coupon shall pass
by delivery in the same manner as a negotiable instrument payable to
bearer. The Authority shall cause books for the registration and for
the transfer of the bonds as provided in this Resolution to be kept by
The Chase Manhattan Bank (National Association), New York, N. Y.,
as Bond Registrar. At the option of the bearer, any bond (but not any
temporary bond unless the Authority shall so provide) may be regis-
tered as to both principal and interest on such books upon presentation
thereof to the Bond Registrar accompanied by all unmatured coupons
and all matured coupons, if any, not theretofore paid or provided for,
and the Bond Registrar shall make notation of such registration thereon
and detach therefrom and retain in its custody all such coupons. Any
registered bond may thereafter be transferred only upon an assignment
duly executed by the registered owner or his attorney or legal repre-
sentative in such form as shall be satisfactory to the Bond Registrar,
such transfer to be made on such books and endorsed on the bond by
the Bond Registrar. The principal of and redemption premium, if any,
and interest on any registered bond shall be payable only to or upon
the order of the registered owner or his legal representative. No charge
shall be made to any bondholder for the privilege of registration and
transfer hereinabove granted, but any bondholder requesting any such
registration or transfer shall pay any tax or other governmental charge
required to be paid with respect thereto. The Bond Registrar shall not
be required to transfer any registered bond during the period of
fifteen (15) days next preceding any interest payment date of such
bond, nor after such bond has been selected for redemption. No regis-
tered bond shall thereafter be discharged from registration except as
provided in Section 206 of this Article.

SECTION 205. As to any registered bond the person in whose name
the same shall be registered shall be deemed and regarded as the
absolute owner thereof for all purposes, whether such bond shall be

HTA_CONF 00016480

16

overdue or not and neither the Authority, the Fiscal Agent, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary, and payment of or on account of the principal of or redemption premium, if any, or interest on any such bond shall be made only to or upon the order of the registered owner thereof or his legal representative, but such registration may be changed as herein provided. All such payments shall be valid and effectual to satisfy and discharge the liability upon such bond to the extent of the sum or sums so paid. The Authority, the Fiscal Agent, the Bond Registrar and the Paying Agents may deem and treat the bearer of any bond which shall not at the time be registered. and the bearer of any coupon appertaining to any bond as the absolute owner of such bond or coupon, as the case may be, whether such bond or coupon shall be overdue or not, for the purpose of receiving payment thereof and for all other purposes whatsoever, and neither the Authority, the Fiscal Agent, the Bond Registrar nor the Paying Agents shall be affected by any notice to the contrary.

SECTION 206. Any registered bond may be reconverted into a coupon bond upon presentation thereof to the Bond Registrar, together with an instrument requesting such reconversion duly executed by the registered owner or his attorney or legal representative and in such form as shall be satisfactory to the Bond Registrar. Upon any such presentation the Bond Registrar shall reattach to such bond the coupons representing the interest to become due thereafter on the bond to the date of maturity and interest then due and unpaid, if any, and shall make notation thereon that the bond is payable to bearer.

No charge shall be made to any bondholder for any such reconversion except that the Bond Registrar shall require the payment by such bondholder of any tax or other governmental charge required to be paid with respect to such reconversion. The Bond Registrar shall not be required to reconvert any bond under the provisions of this Section during the period of fifteen (15) days next preceding any interest payment date of such bond nor after such bond has been selected for redemption.

SECTION 207. There shall be initially issued and secured by this Resolution bonds of the Authority in the aggregate principal amount of Forty Million Dollars ($40,000,000). Said bonds shall be designated "Puerto Rico Highway Authority Highway Revenue Bonds (Series A)", shall be dated as of the 1st day of January, 1968, shall bear interest

17

from their date until their payment at a rate or rates not exceeding the maximum rate then permitted by law and shall be stated to mature (subject to prior redemption as hereinafter provided) as follows:

$20,000,000 of said bonds shall be serial bonds and shall be stated to mature in annual instalments on July 1, in the order of their numbers, lowest numbers first, in the years and in the amounts as follows:

| Year of Maturity | Principal Amount | Year of Maturity | Principal Amount |
|---|---|---|---|
| 1970 | $ 675,000 | 1979 | $1,010,000 |
| 1971 | 710,000 | 1980 | 1,060,000 |
| 1972 | 735,000 | 1981 | 1,110,000 |
| 1973 | 775,000 | 1982 | 1,160,000 |
| 1974 | 810,000 | 1983 | 1,225,000 |
| 1975 | 850,000 | 1984 | 1,280,000 |
| 1976 | 880,000 | 1985 | 1,350,000 |
| 1977 | 925,000 | 1986 | 1,420,000 |
| 1978 | 965,000 | 1987 | 1,500,000 |
| | | 1988 | 1,560,000 |

The remaining $20,000,000 of said bonds shall be term bonds and shall be stated to mature on July 1, 1998.

Each of said bonds shall be executed substantially in the form and manner hereinabove set forth, and shall be deposited with the Fiscal Agent for delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolution of the Authority fixing, subject to the provisions of Article III of this Resolution, the times and prices at which said bonds are to be redeemable;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding said bonds, specifying the interest rate of each of said bonds and directing the delivery of said bonds to or upon the order of the principal underwriters therein named upon payment of the purchase price therein set forth; and

(c) an opinion of the Legal Counsel of the Authority stating that the issuance of said bonds has been duly authorized and that all conditions precedent to the delivery of said bonds have been fulfilled.

18

When the documents mentioned in clauses (a) to (c), inclusive, of this Section shall have been filed with the Fiscal Agent and when said bonds shall have been executed as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters named in the resolution mentioned in clause (b) of this Section, but only upon payment to the Fiscal Agent of the purchase price of said bonds. The Fiscal Agent shall be entitled to rely upon such resolution as to the names of the principal underwriters, the interest rate of each of said bonds and the amount of such purchase price.

Simultaneously with the delivery of said bonds the Fiscal Agent shall apply the proceeds (excluding accrued interest but including any premium) of said bonds as follows:

(1) Such sum as is required for the purpose shall be applied to the payment of the Outstanding Notes upon the cancellation of said Notes and the delivery thereof to the Authority.

(2) Such sum as is specified in a certificate signed by the Executive Director of the Authority and filed with the Fiscal Agent shall be deposited to the credit of a special checking account in the name of the Authority to be used for the payment of expenses incident to the financing as shall be approved by the Executive Director. When all expenses incident to the financing have been paid, any balance remaining to the credit of such special checking account shall be deposited to the credit of the Construction Fund.

(3) The balance of such proceeds, if any, shall be deposited with the Fiscal Agent to the credit of a special fund hereby created and designated "Puerto Rico Highway Authority Construction Fund" (herein sometimes called the "Construction Fund") and applied by the Authority to the payment of the costs of Traffic Facilities.

SECTION 208. In addition to the bonds issued under the provisions of Section 207 of this Article, bonds of the Authority may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times for the purposes of providing funds for completing payment of the cost of any Traffic Facilities, or for paying all or any part of the cost of any additional Traffic Facilities.

19

Before any bonds shall be issued under the provisions of this Section the Authority shall adopt a resolution authorizing the issuance of such bonds and fixing the amount and the details thereof. The bonds of each Series issued under the provisions of this Section shall be designated "Puerto Rico Highway Authority Highway Revenue Bonds (Series _____)", (inserting an identifying series letter), shall be dated, shall be stated to mature on July 1 in such year or years not later than fifty (50) years from their date and may be made redeemable at such times and prices (subject to the provisions of Article III of this Resolution), all as may be provided by the resolution authorizing the issuance of such bonds. In case any of the bonds of any such Series shall be serial bonds, the maturities of such bonds shall begin not earlier than one year following the date of delivery of such bonds, and in case the bonds of any such Series shall consist of term bonds or both serial bonds and term bonds, the Amortization Requirements for each fiscal year for such term bonds shall begin in a fiscal year not earlier than the fiscal year immediately following the date of delivery of such bonds, and such Amortization Requirements shall be fixed by the resolution authorizing the issuance of such bonds. Such bonds shall be executed substantially in the form and manner hereinabove set forth, with such changes as shall be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolution mentioned above;

(b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters named therein upon payment of the purchase price therein set forth;

(c) a certificate, signed by the Chairman and by the Executive Director of the Authority not earlier than thirty (30) days prior to the delivery date of such bonds, setting forth:

(i) the amount of Revenues, excluding tolls or other charges, if any, imposed by the Authority for the use of any Traffic Facilities, received by the Authority in each of the

HTA_CONF 00016484

20

fifteen (15) months immediately preceding the month in which such certificate is signed, and

(ii) the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all bonds theretofore issued under the provisions of this Resolution and then outstanding and the bonds then requested to be delivered;

(d) a certificate, signed by the Executive Director of the Authority, stating that the Authority is not then in default in the performance of any of the covenants, conditions, agreements or provisions contained in this Resolution; and

(e) a written opinion of the Legal Counsel of the Authority stating that in his opinion the issuance of such bonds has been duly authorized and all conditions precedent to the delivery of such bonds have been fulfilled.

When the documents mentioned in clauses (a) to (e), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed as required by this Resolution, the Fiscal Agent shall deliver said bonds at one time to or upon the order of the principal underwriters named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds. The Fiscal Agent shall be entitled to rely upon such resolution as to the names of the principal underwriters, the interest rate of each of such bonds and the amount of such purchase price. But the Fiscal Agent shall not deliver such bonds unless the percentage derived by dividing the sum of the amounts shown in item (i) of the certificate mentioned in clause (c) of this Section for any twelve (12) consecutive months by the amount of the maximum Principal and Interest Requirements shown in item (ii) of said clause (c), shall not be less than one hundred fifty per centum (150%).

The proceeds of such bonds (excluding accrued interest but including any premium) shall be applied by the Fiscal Agent as follows:

(1) If, under the provisions of the resolution mentioned in clause (a) of this Section, any amount of the proceeds of the bonds is to be applied to the payment of any outstanding notes of the Authority which were issued to finance temporarily the costs of

HTA_CONF 00016485

21

the Traffic Facilities for which such bonds are to be issued, the
Fiscal Agent shall make such application in accordance with the
provisions of such resolution.

(2) Such sum as is specified in a certificate signed by the
Executive Director of the Authority and filed with the Fiscal Agent
shall be deposited to the credit of a special checking account in the
name of the Authority to be used for the payment of expenses
incident to the financing as shall be approved by the Executive
Director. When all expenses incident to the financing have been
paid, any balance remaining to the credit of such special checking
account shall be deposited to the credit of the Construction Fund.

(3) The balance of the proceeds of the bonds shall be deposited
with the Fiscal Agent to the credit of the Construction Fund and
applied to the payment of the costs of Traffic Facilities.

SECTION 209. Refunding bonds of the Authority may be issued
under and secured by this Resolution, subject to the conditions herein-
after provided in this Section, at any time or times, for the purpose of
providing funds for refunding at or prior to their maturity or maturities
all of the outstanding bonds of any Series, including the payment of
any redemption premium thereon and the interest which will accrue on
such bonds to their earliest redemption date or maturity date or dates
occurring prior thereto. Before any such bonds shall be issued under
the provisions of this Section, the Authority shall adopt a resolution
authorizing the issuance of such bonds, fixing the amount and the details
thereof and describing the bonds to be refunded. Such refunding bonds
shall be designated, shall be dated, shall be stated to mature on
July 1, in such year or years, not later than fifty (50) years from
their date, all as may be provided by the resolution authorizing the
issuance of such bonds. In case any of the bonds of a Series issued
under the provisions of this Section shall be serial bonds, the maturities
of such bonds shall begin not earlier than one year from the date of
delivery of such bonds, and in case the bonds of any such Series shall
consist of term bonds or of both serial and term bonds the Amortization
Requirement for each fiscal year for such term bonds shall begin in a
fiscal year not earlier than the fiscal year immediately following the
date of delivery of such bonds, and such Amortization Requirements
shall be fixed by the resolution authorizing the issuance of such bonds.
Such bonds shall be made redeemable at such times and prices (subject

HTA_CONF 00016486

22

to the provisions of Article III of this Resolution) as may be provided by the resolution authorizing the issuance of such bonds.

Such refunding bonds shall be executed substantially in the form and manner hereinabove set forth with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such bonds, and shall be deposited with the Fiscal Agent for delivery, but before such bonds shall be delivered by the Fiscal Agent there shall be filed with it the following:

(a) a copy, certified by the Secretary of the Authority, of the resolution authorizing the issuance of such bonds;

(b) a copy, certified by the Secretary of the Authority, of the resolution adopted by the Authority awarding such bonds, specifying the interest rate of each such bond and directing the delivery of such bonds to or upon the order of the principal underwriters named therein upon payment of the purchase price therein set forth;

(c) a written opinion of the Legal Counsel of the Authority stating that in his opinion the issuance of such bonds has been duly authorized and that all conditions precedent to the delivery of such bonds have been fulfilled; and

(d) such documents as shall be required by the Fiscal Agent to show that provision has been duly made in accordance with the provisions of this Resolution for the redemption of all of the bonds to be refunded prior to their stated maturity or maturities.

When the documents mentioned in clauses (a) to (d), inclusive, of this Section shall have been filed with the Fiscal Agent and when the bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed as required by this Resolution, the Fiscal Agent shall deliver such bonds at one time to or upon the order of the principal underwriters named in the resolution mentioned in said clause (b), but only upon payment to the Fiscal Agent of the purchase price of such bonds. The Fiscal Agent shall be entitled to rely upon such resolution as to the names of the principal underwriters, the interest rate of each of such bonds and the amount of such purchase price. But the Fiscal Agent shall not deliver such bonds unless

23

(1) the proceeds (excluding accrued interest but including any premium) of such refunding bonds plus any moneys to be withdrawn from the Sinking Fund by the Fiscal Agent for such purpose as hereinafter provided, together with any other available funds of the Authority, shall be not less than an amount sufficient to pay the principal of and the redemption premium, if any, on the bonds to be refunded and the interest which will accrue thereon to the redemption date or maturity dates occurring prior thereto and the expenses incident to such financing, and

(2) the maximum amount of the Principal and Interest Requirements for any fiscal year thereafter on account of all bonds to be outstanding after the issuance of such refunding bonds and the redemption of the bonds to be refunded, shall be less than the maximum amount of the Principal and Interest Requirements for any fiscal year thereafter on account of all of the bonds outstanding prior to the issuance of such refunding bonds and the redemption of the bonds to be refunded.

Simultaneously with the delivery of such refunding bonds the Fiscal Agent shall withdraw from the Reserve Account in the Sinking Fund an amount sufficient, together with any excess of the proceeds (excluding accrued interest but including any premium) of such refunding bonds and any other moneys made available for the purpose, over the amount required for paying the principal of and the redemption premium, if any, on the bonds to be refunded and the expenses incident to the financing, to pay the interest on the bonds to be refunded which will accrue on such bonds to their redemption date or maturity date or dates occurring prior thereto. The amount so withdrawn, if any, and the proceeds of such refunding bonds (excluding accrued interest but including any premium) and any other moneys provided by the Authority for such purpose shall be applied by the Fiscal Agent as follows:

(1) An amount sufficient to pay such principal, redemption premium and interest shall be held by the Fiscal Agent in a special redemption fund appropriately designated, to be held in trust for the sole and exclusive purpose of paying such principal, redemption premium and interest. Moneys held for the credit of such redemption fund shall, as nearly as may be practicable and reasonable, be invested and reinvested by the Fiscal Agent in Government

HTA_CONF 00016488

24

obligations which shall mature, or which shall be subject to re-
demption by the holder thereof at the option of such holder, not
later than the respective dates when the moneys held for the credit
of such redemption fund will be required for the purposes intended.
In lieu of such investments, time deposits if then permitted by law
and subject to the approval of the Executive Director of the Au-
thority, may be made by the Fiscal Agent with respect to any
moneys held for the credit of such redemption fund; provided,
however, that each such time deposit shall permit the moneys so
placed to be available for use not later than the respective dates
when the moneys held for the credit of such redemption fund will
be required for the purposes intended.

(2) Such sum as is specified in a certificate signed by the
Executive Director of the Authority and filed with the Fiscal
Agent shall be deposited to the credit of a special checking account
in the name of the Authority to be used for the payment of
expenses incident to the financing as shall be approved by the
Executive Director. When all expenses incident to the financing
have been paid, any balance remaining to the credit of such special
checking account shall be deposited to the credit of the Reserve
Account in the Sinking Fund.

(3) Any balance of such proceeds shall be deposited to the
credit of the Reserve Account in the Sinking Fund.

SECTION 210. All moneys received as accrued interest on bonds
issued under the provisions of this Resolution shall be deposited with
the Fiscal Agent to the credit of the special account hereinafter created
in the Sinking Fund and designated "Bond Service Account".

SECTION 211. Until the definitive bonds are ready for delivery, there
may be executed, and upon request of the Executive Director of the
Authority, the Fiscal Agent shall deliver, in lieu of definitive bonds
and subject to the same limitations and conditions except as to identify-
ing numbers, temporary printed, engraved, lithographed or typewritten
bonds in the denomination of Five Thousand Dollars ($5,000) or any
multiple thereof, substantially of the tenor hereinabove set forth, with
or without coupons, and with or without the privilege of registration as

HTA_CONF 00016489

25

to both principal and interest as the Authority may provide, and with appropriate omissions, insertions and variations as may be required. The Authority shall cause the definitive bonds to be prepared and to be executed and delivered to the Fiscal Agent, and the Fiscal Agent, upon presentation to it of any temporary bond accompanied by all unmatured coupons, and all matured coupons representing interest not paid or duly provided for, if any, shall cancel the same and deliver, in exchange therefor, at its principal office, without expense to the holder, a definitive bond or bonds in the same aggregate principal amount, maturing on the same date and bearing interest at the same rate as the temporary bond surrendered. Upon any such exchange, all coupons appertaining to the definitive bonds and representing interest theretofore paid shall be detached and cancelled by the Fiscal Agent. Until so exchanged, the temporary bonds shall in all respects, including the privilege of registration if so provided, be entitled to the same benefit of this Resolution as the definitive bonds to be issued hereunder, and interest on such temporary bonds, when payable, if the definitive bonds with interest coupons shall not be ready for exchange, shall be paid on presentation of such temporary bonds and notation of such payment shall be endorsed thereon, or such interest shall be paid upon the surrender of the appropriate coupons if coupons representing such interest shall be attached to such temporary bonds.

SECTION 212. In case any bond or any coupon issued hereunder shall become mutilated or be destroyed, lost or stolen the Authority shall cause to be executed, and the Fiscal Agent shall deliver, a new bond of like date, maturity and tenor in exchange and substitution for and upon the cancellation of such mutilated bond and its interest coupons, if any, or in lieu of and in substitution for such bond and its coupons, if any, destroyed, lost or stolen, provided that if any such coupon or bond shall have matured or shall be about to mature, the Authority may pay such coupon or such bond in lieu of issuing a new bond, all upon the holder's paying the reasonable expenses and charges of the Authority and the Fiscal Agent in connection therewith, and, in the case of a bond or coupon destroyed, lost or stolen, his filing with the Fiscal Agent evidence satisfactory to it and the Authority that such bond and coupons, if any, were destroyed, lost or stolen and of his ownership thereof, and furnishing the Authority and the Fiscal Agent with indemnity satisfactory to them.

26

## ARTICLE III.

### REDEMPTION OF BONDS.

SECTION 301. The bonds of each Series may be made subject to redemption, either in whole or in part, and at such prices, all as may be provided by the Authority by resolution prior to the issuance of such bonds; provided, however, that term bonds shall be made subject to redemption on July 1 immediately following each fiscal year in which there is an Amortization Requirement for such bonds, at least to the extent of the Amortization Requirement for such preceding fiscal year.

A redemption of any part of the bonds issued under the provisions of this Resolution and then outstanding less than the whole thereof shall be either (i) a redemption from the proceeds of refunding bonds issued under the provisions of Section 209 of this Resolution or from any moneys otherwise made available for the purpose, or (ii) a redemption subject to the conditions set forth in paragraph (c) of Section 403 of this Resolution.

If less than all of the serial bonds of a Series of any one maturity or less than all of the term bonds of a Series shall be called for redemption, the particular bonds to be redeemed shall be selected by the Fiscal Agent in such manner as the Fiscal Agent in its discretion may determine to be appropriate and fair.

SECTION 302. At least thirty (30) days before the redemption date of any bonds, the Fiscal Agent shall cause a notice of any such redemption, signed in the name of the Authority by the Fiscal Agent, (a) to be published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents, and (c) to be mailed, postage prepaid, to all registered owners of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided for; but failure so to mail any such notice shall not affect the validity of the proceedings for such redemption. Each such notice shall set forth the date fixed for redemption, the redemption price to be paid and, if less than all of the bonds then outstanding shall be called for redemption, the maturities and the numbers of such bonds.

27

SECTION 303. On the date so designated for redemption, notice having been published and filed in the manner and under the conditions hereinabove provided and moneys for payment of the redemption price being held in separate accounts by the Fiscal Agent or by the Paying Agents in trust for the holders of the bonds to be redeemed, all as provided in this Resolution, the bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds on such date, interest on the bonds so called for redemption shall cease to accrue, the coupons for interest thereon payable subsequent to the redemption date shall be void, and the holders or registered owners of such bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof.

SECTION 304. All unpaid interest coupons which appertain to bonds so called for redemption and which shall have become payable on or prior to the date of redemption designated in such notice shall continue to be payable to the bearers severally and respectively upon the presentation and surrender of such coupons.

SECTION 305. Bonds so called for redemption and all unmatured coupons appertaining thereto shall be cancelled upon the surrender thereof.

SECTION 306. In the event that sufficient moneys or Government obligations or time deposits the principal of and the interest on which when due will provide sufficient moneys are held in separate accounts by the Fiscal Agent or by the Paying Agents in trust for the payment of (i) the principal, any redemption premium and interest to accrue to the redemption date of all bonds which have been duly called for redemption under the provisions of this Article or with respect to which irrevocable instructions to call for redemption have been given to the Fiscal Agent in form satisfactory to it, and (ii) the principal of all bonds, if any, refunded under this Resolution which mature prior to the earliest redemption date of the bonds subject to redemption, and the interest to accrue on such bonds to the maturity date or dates thereof, such bonds so called for redemption and any such bonds which mature prior to such earliest redemption date shall not thereafter be deemed to be outstanding under the provisions of this Resolution and shall cease to be entitled to any lien, benefit or security under this Resolution, other than the right to receive payment from such moneys.

HTA_CONF 00016492

28

## ARTICLE IV.

### REVENUES AND FUNDS.

SECTION 401. A special fund is hereby created and designated "Puerto Rico Highway Authority Highway Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created in the Sinking Fund three separate accounts designated "Bond Service Account", "Redemption Account" and "Reserve Account", respectively.

The moneys in said Funds and Accounts shall be held by the Fiscal Agent in trust and applied as hereinafter provided with regard to each such Fund and Account and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders until paid out or transferred as herein provided.

The Authority covenants that all of the Revenues, and any other funds of the Commonwealth allocated to the Authority for the payment of principal and interest on bonds of the Authority issued under the provisions of this Resolution, which it receives will be deposited monthly with the Fiscal Agent to the credit of the following Accounts and Fund in the amounts specified and in the following order:

(a) to the credit of the Bond Service Account, an amount equal to one-sixth (1/6) of the amount of interest payable on all bonds of each Series issued hereunder on the interest payment date next succeeding and (beginning with the twelfth month preceding the first maturity of any serial bonds of such Series) an amount equal to one-twelfth (1/12) of the next maturing instalment of principal of such serial bonds; provided, however, that the amount so deposited on account of interest in each month after the delivery of the bonds of any Series under the provisions of this Resolution up to and including the month immediately preceding the first interest payment date thereafter of the bonds of such Series shall be that amount which when multiplied by the number of such deposits will be equal to the amount of interest payable on such bonds on such first interest payment date less the amount of any accrued interest paid on such bonds and deposited with the Fiscal Agent to the credit of the Bond Service Account;

29

(b) to the credit of the Redemption Account, for a period of 12 months beginning with the second month preceding each fiscal year in which there is an Amortization Requirement for the bonds of any Series, an amount equal to one-twelfth (1/12) of the Amortization Requirement for such fiscal year for the term bonds of each Series then outstanding plus an amount equal to one-twelfth (1/12) of the premium, if any, which would be payable on the first redemption date in the following fiscal year on a like principal amount of bonds if such principal amount of bonds should be redeemed prior to their maturity from moneys in the Sinking Fund;

(c) to the credit of the Reserve Account, such amount as is required to make the amount deposited to the credit of said Account in the then current fiscal year at least equal to twenty per centum (20%) of the maximum amount of the Principal and Interest Requirements for any fiscal year thereafter on account of all bonds issued under the provisions of this Resolution and then outstanding; provided, however, that no such deposit under this clause (c) shall be made in any month if the amount then to the credit of the Reserve Account shall be equal to the maximum amount of the Principal and Interest Requirements for any fiscal year thereafter on account of all bonds issued under the provisions of this Resolution and then outstanding or in excess of such amount as may be required to make the amount then to the credit of the Reserve Account equal to such maximum requirement; and

(d) the balance, if any, remaining after making the deposits under clauses (a), (b) and (c) above, shall be deposited to the credit of the Construction Fund for use by the Authority for any of its authorized purposes subject to the provisions of Sections 604 and 605 of this Resolution.

If the amount so deposited in any month to the credit of any Account mentioned in clauses (a), (b) or (c) above shall be less than the required amount, the requirement therefor shall nevertheless be cumulative and the amount of any deficiency in any month shall be added to the amount otherwise required to be deposited to the credit of such account in each month thereafter until such time as such deficiency shall be made up.

The Authority further covenants that any other funds which it receives from the Commonwealth to make up any deficiencies in the amounts needed to pay the principal of and interest on any bonds

HTA_CONF 00016494

30

issued under the provisions of this Resolution will be applied for such purpose.

Section 402. The Fiscal Agent shall, from time to time, withdraw from the Bond Service Account and (1) remit by mail to each registered owner of bonds the amount required for paying interest upon such bonds as such interest becomes due, (2) set aside or deposit in trust with the Paying Agents sufficient moneys for paying the interest on the remaining bonds as such interest becomes due, (3) set aside in trust an amount equal to the amount of, and for the sole and exclusive purpose of paying, the principal of all serial bonds which are registered as such principal becomes due, and (4) deposit in trust with the Paying Agents sufficient moneys for paying the principal of serial bonds not registered as such becomes due.

Section 403. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Resolution as follows:

(a) Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall endeavor to purchase bonds secured hereby and then outstanding, whether or not such bonds shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, having regard to interest rate and price, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders of such bonds under the provisions of Article III of this Resolution if such bonds should be called for redemption on such date from moneys in the Sinking Fund. The Fiscal Agent shall pay the interest accrued on such bonds to the date of delivery thereof from the Bond Service Account and the purchase price from the Redemption Account, but no such purchase shall be made within the period of forty-five (45) days next preceding any interest payment date on which such bonds are subject to call for redemption under the provisions of this Resolution except from moneys in excess of the amounts set aside or deposited for the redemption of bonds; provided, however, that the Fiscal Agent shall withhold a sufficient amount of the moneys held for the credit of the Redemption Account to redeem at least $50,000 principal amount of bonds under the provisions of paragraph (b) of this Section unless all of such moneys, as nearly

HTA_CONF 00016495

31

as may be, are applied to the purchase of bonds under the provisions of this paragraph (a).

(b)  Subject to the provisions of paragraph (c) of this Section, the Fiscal Agent shall call for redemption on each interest payment date on which bonds are subject to redemption from moneys in the Sinking Fund such amount of bonds then subject to redemption as, with the redemption premium, if any, will exhaust the Redemption Account as nearly as may be; provided, however, that not less than Fifty Thousand Dollars ($50,000) in principal amount of bonds shall be called for redemption at any one time. Such redemption shall be made pursuant to the provisions of Article III of this Resolution. Not less than thirty (30) days before the redemption date the Fiscal Agent shall withdraw from the Bond Service Account and from the Redemption Account and set aside in separate accounts or deposit with the Paying Agents the respective amounts required for paying the interest on the bonds so called for redemption and the principal of and the redemption premium on such bonds.

(c)  Moneys in the Redemption Account shall be applied to the purchase or redemption of bonds in the following order:

*first*, term bonds of each Series, if any, issued under the provisions of Sections 207, 208 or 209 of this Resolution, in the order of their issuance, to the extent of the Amortization Requirement, if any, of the then current fiscal year for such term bonds and any deficiency in preceding fiscal years in the purchase or redemption of such term bonds under the provisions of this subdivision; provided, however, that if none of the term bonds of a Series shall be subject to redemption from moneys in the Sinking Fund and if the Fiscal Agent shall at any time be unable to exhaust the moneys applicable to the bonds of any such Series in the purchase of such bonds under the provisions of paragraph (a) of this Section, such moneys or the balance of such moneys, as the case may be, shall be retained in the Redemption Account and, as soon as it is feasible, applied to the retirement of the bonds of such Series;

*second*, to the purchase of any bonds secured hereby and then outstanding whether or not such bonds shall then be subject to redemption, in accordance with the provisions of paragraph (a) of this Section;

32

*third*, term bonds of each Series in proportion (as nearly as practicable) to the aggregate principal amount of the bonds of each such Series originally issued; and

*fourth*, after the retirement of all term bonds, serial bonds issued under the provisions of this Resolution in the inverse order of their maturities, and to the extent that serial bonds of different Series mature on the same date, in proportion (as nearly as practicable) to the principal amount of each Series maturing on such date.

All expenses in connection with such purchase or redemption shall be paid from the Construction Fund.

Upon the retirement of any bonds by purchase or redemption the Fiscal Agent shall file with the Authority a statement briefly describing such bonds, and setting forth the date of their purchase or redemption, the amount of the purchase price or the redemption price of such bonds, and the amount paid as interest thereon.

SECTION 404. Moneys held for the credit of the Reserve Account shall be used for the purpose of paying interest on the bonds and maturing principal of serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making deposits to the credit of the Redemption Account pursuant to the requirements of clause (b) of Section 401 of this Resolution whenever and to the extent that the Revenues are insufficient for such purpose.

SECTION 405. Before any payment or withdrawal shall be made from moneys in the Construction Fund there shall be filed with the Fiscal Agent a certificate signed by the Executive Director of the Authority or an officer of the Authority designated by him for such purpose setting forth the amount of money to be so disbursed and stating that such money will be used to pay the costs of constructing Traffic Facilities or for other purposes permitted by this Resolution. Upon receipt of such certificate the Fiscal Agent shall withdraw from the Construction Fund and deposit to the credit of a special checking account in its commercial department in the name of the Authority the amount so specified in such certificate. The Fiscal Agent shall also at any time at the written direction of the Executive Director of the Authority transfer any part of the moneys in the Construction Fund to the credit of the Redemption Account.

HTA_CONF 00016497

33

SECTION 406. Subject to the terms and conditions set forth in this Resolution, moneys held for the credit of the Bond Service Account, the Redemption Account and the Reserve Account shall be held in trust and disbursed by the Fiscal Agent for (a) the payment of interest upon the bonds issued hereunder as such interest falls due, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase price or redemption price of such bonds, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Redemption Account and the Reserve Account shall be sufficient for paying the principal of and the interest accrued on all bonds then outstanding under the provisions of this Resolution and any redemption premium and any amounts needed to pay redemption expenses, such moneys shall be applied by the Fiscal Agent to the payment, purchase or redemption of such bonds.

SECTION 407. All moneys which the Fiscal Agent shall have withdrawn from the Sinking Fund or shall have received from any other source and set aside, or deposited with the Paying Agents, for the purpose of paying any of the bonds hereby secured, either at the maturity thereof or upon call for redemption, or for the purpose of paying any maturing coupons appertaining to any of the bonds hereby secured, shall be held in trust for the respective holders of such bonds or coupons. But any moneys which shall be so set aside or deposited by the Fiscal Agent and which shall remain unclaimed by the holders of such bonds or of such coupons for a period of six (6) years after the date on which such bonds or such coupons shall have become payable shall be paid to the Authority or to such officer, board or body as may then be entitled by law to receive the same, and thereafter the holders of such bonds or coupons shall look only to the Authority or to such officer, board or body, as the case may be, for payment and then only to the extent of the amounts so received without any interest thereon, and the Fiscal Agent and the Paying Agents shall have no responsibility with respect to such moneys.

SECTION 408. All bonds paid, redeemed or purchased, either at or before maturity, shall be delivered to the Fiscal Agent when such payment, redemption or purchase is made, together with all unmatured coupons, if any, appertaining thereto, and such bonds and coupons

HTA_CONF 00016498

34

shall thereupon be cancelled. All interest coupons shall be cancelled upon their payment and delivered to the Fiscal Agent. The Fiscal Agent shall certify to the Executive Director and to the Treasurer of the Authority the details of all bonds and coupons so cancelled. All bonds and coupons cancelled under any of the provisions of this Resolution shall be destroyed by the Fiscal Agent, which shall execute a certificate of destruction in duplicate, describing the bonds and coupons so destroyed, except that the numbers of the bonds to which such coupons appertain may be omitted unless otherwise directed by the Executive Director, and one executed certificate shall be filed with the Treasurer of the Authority and the other executed certificate shall be retained by the Fiscal Agent.

SECTION 409. After provision shall be made for the payment of all bonds secured hereby and the interest thereon and all expenses and charges herein required to be paid, the Fiscal Agent shall pay any balance in the Sinking Fund and any balance in any other fund then held by it to the Authority.

### ARTICLE V.

#### DEPOSITARIES OF MONEYS, SECURITY FOR DEPOSITS AND INVESTMENT OF FUNDS.

SECTION 501. All moneys deposited with the Fiscal Agent under the provisions of this Resolution shall be held in trust and applied only in accordance with the provisions of this Resolution, and shall not be subject to lien or attachment by any creditor of the Authority.

All moneys deposited with the Fiscal Agent hereunder shall be continuously secured, for the benefit of the Authority and the holders of the bonds, either (a) by lodging with a bank or trust company approved by the Authority as custodian, as collateral security, Government obligations or other marketable securities eligible as security for the deposit of trust funds under regulations of the Comptroller of the Currency of the United States of America, having a market value (exclusive of accrued interest) not less than the amount of such deposit, or (b) in such other manner as may then be required or permitted by applicable Commonwealth or federal laws and regulations regarding the security for, or granting a preference in the case of, the deposit of trust funds; provided, however, that it shall not be necessary for the Paying Agents to give security for the deposit of any moneys with it

HTA_CONF 00016499

35

for the payment of the principal of or the redemption premium or
the interest on any bond issued hereunder, or for the Fiscal Agent to
give security for any moneys which shall be represented by obligations
purchased under the provisions of this Article as an investment of
such moneys.

All moneys deposited with the Fiscal Agent shall be credited to
the particular Fund or Account to which such moneys belong.

SECTION 502. Moneys held for the credit of the Construction Fund
shall, as nearly as may be practicable, be continuously invested and
reinvested by the Fiscal Agent in Government obligations which shall
mature, or which shall be subject to redemption by the holder thereof
at the option of such holder, not later than the respective dates, as
set forth in a certificate or certificates filed with the Fiscal Agent by
the Executive Director of the Authority, when the moneys held for
the credit of the Construction Fund will be required for the purposes
intended.

Moneys held for the credit of the Reserve Account in the Sinking
Fund shall, as nearly as may be practicable, be continuously invested
and reinvested by the Fiscal Agent in Government obligations which
shall mature, or which shall be subject to redemption by the holder
thereof at the option of such holder, (i) approximately 25% in princi-
pal amount, not later than the next interest payment date of bonds
issued under this Resolution, (ii) approximately 25% not later than
18 months after the date of such investment, (iii) approximately 25%
not later than 5 years after the date of such investment, and (iv) the
balance as directed by order mentioned below.

Twenty-five per centum (25%) of the moneys held for the credit
of the Reserve Account shall be invested by the Fiscal Agent upon
receipt of an order signed by the Executive Director of the Authority
stating the amount to be invested and directing such investment in
Government obligations having such maturities as are specified in such
order. Such obligations shall be sold by the Fiscal Agent upon receipt
of an order signed by the Executive Director of the Authority.

Moneys held for the credit of the Bond Service Account and the
Redemption Account shall, as nearly as may be practicable, be con-
tinuously invested and reinvested by the Fiscal Agent in Government
obligations which shall mature, or which shall be subject to redemption
by the holder thereof at the option of such holder, not later than the

HTA_CONF 00016500

36

respective dates when the moneys held for the credit of said Accounts will be required for the purposes intended.

In lieu of the investments above provided to be made, and subject to the provisions of Section 501 of this Article, the Authority may enter into agreements with the Fiscal Agent for the moneys held for the credit of any or all of said Funds or Accounts to be held by the Fiscal Agent as interest-bearing time deposits or other similar arrangements (hereinafter called "time deposits"); provided, however, that each such time deposit shall permit the moneys so placed to be available for use at the times provided above with respect to the investments of such moneys.

Obligations so purchased as an investment of moneys in any such Fund or Account and any time deposits made with respect to such moneys, shall be deemed at all times to be a part of such respective Fund or Account. The interest received on obligations so purchased as an investment of moneys in any of such Fund or Accounts, or on such time deposits, and any profit realized from such investment, shall be credited to the Reserve Account in the Sinking Fund and any loss resulting from such investment shall be charged to the Reserve Account in the Sinking Fund. The Fiscal Agent shall sell at the best price obtainable or present for redemption any obligations so purchased whenever it shall be necessary so to do in order to provide moneys to meet any payment or transfer from any such Fund or Account. The Fiscal Agent shall not be liable or responsible for any loss in any such Fund or Account resulting from any such investment.

## ARTICLE VI.

### PARTICULAR COVENANTS.

SECTION 601. The Authority covenants that it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution at the places, on the dates and in the manner provided herein and in said bonds and in any coupons appertaining to said bonds, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Except as in this Resolution otherwise provided, the principal, interest and premiums are payable solely from Revenues and from any funds received by the Authority for that purpose from the Commonwealth which Revenues and funds are hereby pledged to

37

the payment thereof in the manner and to the extent hereinabove particularly specified.

SECTION 602. The Authority further covenants that, except as provided in this Resolution, it will not create or suffer to be created any lien or charge upon the Revenues ranking equally with or prior to the bonds, except the lien and charge of the bonds secured hereby upon such Revenues.

SECTION 603. The Authority has adopted a master plan for the construction of required Traffic Facilities in Puerto Rico and a priorities construction program thereof covering the five year period 1968-69 to 1972-73 which has been approved by the Traffic Engineers. The Authority covenants that the master plan will be supplemented periodically as necessary and that the five year priorities construction program will be updated each year to cover the Traffic Facilities to be constructed by the Authority in the ensuing five year period. A copy of each supplement or revision of said master plan and said five year priorities construction program made by the Authority shall be furnished to the Traffic Engineers.

SECTION 604. As recited in the preambles hereof the Authority has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary of Public Works has agreed to pay the costs of maintaining, repairing and operating all Traffic Facilities financed by the Authority in whole or in part by the issuance of bonds of the Authority under the provisions of this Resolution, from general funds of the Commonwealth of Puerto Rico which are made available to him for such purpose. The Authority covenants, however, that if and to the extent funds for this purpose are not provided by the Commonwealth of Puerto Rico, the Authority will pay such costs from unencumbered funds then on deposit in the Construction Fund or from the Revenues thereafter deposited to the credit of the Construction Fund pursuant to clause (d) of Section 401 of this Resolution.

The Authority further covenants that it will cause an annual general evaluation to be made by the Traffic Engineers of the level of maintenance of said Traffic Facilities financed in whole or in part by the issuance of bonds under the provisions of this Resolution, such evaluation to be directed towards surface and shoulder conditions, condition of all structures and signing on said Traffic Facilities.

HTA_CONF 00016502

38

Section 605. The Authority covenants that it will cause the Traffic Engineers to prepare a report each year promptly after the completion of their general evaluation of the level of maintenance of the Traffic Facilities referred to in Section 604 of this Resolution, setting forth (i) their comments with respect to any supplements or revisions made by the Authority in the master plan or in the five year priorities construction program referred to in Section 603 of this Resolution and their recommendations as to any additional supplements or revisions which should be made in such plan or in such priorities program, and (ii) their findings resulting from such general evaluation of the level of maintenance of such Traffic Facilities as to whether such Traffic Facilities have been maintained in good repair, working order and sound condition and their recommendations as to repairs, renewals or replacements which are needed.

A copy of such report shall be filed with the Authority, the Fiscal Agent, the Secretary of Public Works and the Secretary of the Treasury. If it appears from such report that repairs, renewals or replacements of any such Traffic Facilities are necessary the Authority shall promptly cause the same to be made and if and to the extent that funds for such purpose have not been made available by the Commonwealth of Puerto Rico, moneys on deposit to the credit of the Construction Fund which have not theretofore been encumbered for other purposes, and moneys which are thereafter deposited to the credit of said Fund pursuant to clause (d) of Section 401 of this Resolution shall first be applied for such purpose.

Section 606. The Authority shall on or before October 1 of each year submit to the Planning Board, the Director of the Bureau of the Budget, the Secretary of the Treasury, the Fiscal Agent and the Traffic Engineers, a statement setting forth (i) a brief description of the program of traffic facilities to be carried out during the next fiscal year, (ii) its estimate of the total construction cost of such program, (iii) a description of the rights of way which will be needed to carry out such program and the respective dates by which they will be needed, and (iv) the estimated costs of such rights of way and the amount of general funds of the Commonwealth which the Legislature is requested to appropriate for such purpose. The Authority covenants that it will, pursuant to Section 14 of the Enabling Act, file

HTA_CONF 00016503

39

a copy of such statement with the Legislature prior to its next regular session.

SECTION 607. The Authority covenants that it will keep accurate records and accounts of all items of cost and of all expenditures relating to the Traffic Facilities and of the Revenues and the application of the Revenues. Such records and accounts shall be open to the inspection of all interested persons.

The Authority further covenants that in the first month of each fiscal year it will cause an audit to be made of its books and accounts relating to the Traffic Facilities financed hereunder by an independent firm of certified public accountants of suitable experience and responsibility. Within a reasonable time thereafter, but not later than 90 days after the beginning of such fiscal year, reports of each such audit shall be filed with the Fiscal Agent and the Government Development Bank for Puerto Rico and copies of such reports shall be mailed by the Secretary of the Authority to the principal underwriters and to each bondholder who shall file his name and address with the Secretary of the Authority for such purpose. Each such audit report shall set forth in respect of the preceding fiscal year:

(a) the Revenues received by the Authority,

(b) the deposits or transfers to the credit of and all withdrawals from each special fund or account created under the provisions of this Resolution,

(c) the details of all bonds paid, purchased and redeemed, and

(d) the amounts on deposit with the Fiscal Agent at the end of the preceding fiscal year to the credit of each such fund or account and the security held therefor, and showing the details of the investments thereof.

SECTION 608. The Authority covenants that it will, for the purpose of performing and carrying out the duties imposed on the Traffic Engineers by this Resolution, employ an independent engineer or engineering firm or corporation having a nationwide and favorable repute for skill and experience in such work. The Authority further covenants that before employing any engineer or engineering firm or corporation as Traffic Engineers under this Resolution other than the Traffic Engineers who are now employed by the Authority, it will secure the written approval of the Fiscal Agent.

40

## ARTICLE VII.

### CONCERNING THE FISCAL AGENT.

SECTION 701. The Chase Manhattan Bank (National Association), in the Borough of Manhattan, City and State of New York, is hereby appointed as Fiscal Agent. Prior to the issuance of bonds under the provisions of this Resolution the Authority shall obtain from a duly authorized officer of said bank a written acceptance of the duties, obligations and trusts imposed upon said bank by this Resolution. Said bank shall have only such duties and obligations as are expressly specified by this Resolution and no other duties or obligations shall be implied to said bank.

SECTION 702. The recitals of fact, statements and representations herein and in the bonds are made by the Authority, and the Fiscal Agent assumes no responsibility in respect thereof. The Fiscal Agent shall not have any responsibility and makes no representation in respect of the validity or sufficiency of this Resolution or of the bonds or of the coupons or the due execution or issuance thereof or in respect of the security afforded by this Resolution and the Fiscal Agent shall not have any responsibility or duty and makes no representation with respect to the issuance of the bonds for value. The Fiscal Agent shall not have any responsibility or duty as to the amount of bonds issued or outstanding at any time and the Fiscal Agent shall have no responsibility and makes no representation as to whether the signatures on any bond are genuine or as to whether any bond is in the form authorized by the Authority or as to whether any bond is within the amount the Authority is authorized to issue. The Fiscal Agent shall not be under any obligation to see that any duties herein imposed upon the Authority or on any party other than itself, or any covenants herein contained on the part of any party other than itself to be performed shall be done or performed, and the Fiscal Agent shall not be under any obligation for failure to see that any such duties or covenants are so done or performed. The Fiscal Agent shall have no obligation or duty to perform any act which would involve it in expense or liability or to institute or defend any suit in respect hereof, or to advance any of its own moneys, unless properly indemnified to its satisfaction. The Fiscal Agent shall not be liable in connection with the performance of its duties hereunder except for its own negligence or default. The Fiscal Agent shall have no duty,

HTA_CONF 00016505

41

obligation, responsibility or liability to examine the reports or certificates filed with it pursuant to Sections 405, 605, 606 and 607 of this Resolution or to take any action with respect to such reports or certificates or in any other respect whatsoever, except that the Fiscal Agent shall retain such reports or certificates in its possession pursuant to Section 1004 of this Resolution.

SECTION 703. The Fiscal Agent shall not be liable or responsible because of the failure of the Authority or any of its employees or agents to make any collections or deposits or to perform any act herein required of them. The Fiscal Agent shall not be responsible for the application of any of the proceeds of the bonds or any other moneys deposited with it which are paid out, withdrawn or transferred in accordance with the provisions of this Resolution. The immunities and exemptions from liability of the Fiscal Agent hereunder shall extend to its directors, officers, employees and agents.

SECTION 704. It shall be the duty of the Fiscal Agent on or before the 15th day of January, April, July and October of each year to file with the Authority and the Government Development Bank for Puerto Rico a statement setting forth in respect of the preceding three months' period:

(a) the amount deposited with it and the amount withdrawn or transferred by it on account of each fund and account held by it under the provisions of this Resolution,

(b) the amount on deposit with it at the end of each such three months' period to the credit of each such fund and account,

(c) a brief description of all obligations held by it as an investment of moneys in each such fund and account,

(d) the amount, if any, applied to the purchase or redemption of bonds under the provisions of Section 403 of the Resolution and a description of the bonds so purchased or redeemed, and

(e) any other information which the Authority may reasonably request.

SECTION 705. The Fiscal Agent shall be protected and shall incur no liability in acting or proceeding, or in not acting or not proceeding, in good faith, and in accordance with the terms of this Resolution, upon any resolution, order, notice, request, consent, waiver, certificate, statement, affidavit, requisition, bond or other document which it

42

shall in good faith believe to be genuine and to have been adopted or signed by the proper board or person or to have been prepared and furnished pursuant to any of the provisions of this Resolution. The Fiscal Agent may consult with counsel, who may or may not be counsel to the Authority, or any engineer, consultant or accountant and the written opinion of such counsel, engineer, consultant or accountant shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in accordance therewith. Whenever the Fiscal Agent shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by the Chairman, Executive Director, Secretary or any authorized officer of the Authority; but in its discretion the Fiscal Agent may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as to it may seem reasonable. Except as otherwise expressly provided herein, any request, order, notice, consent or other direction required or permitted to be furnished pursuant to any provision hereof by the Authority to the Fiscal Agent shall be sufficient if executed by the Chairman, Executive Director, Secretary or other authorized officer of the Authority.

SECTION 706. The Fiscal Agent may resign and thereby become discharged from the trusts hereby created, by notice in writing to be given to the Authority and to the principal underwriters and published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, not less than sixty (60) days before such resignation is to take effect, but such resignation shall take effect immediately upon the appointment of a new Fiscal Agent hereunder, if such new Fiscal Agent shall be appointed before the time limited by such notice and shall then accept the trusts hereof.

SECTION 707. The Fiscal Agent may be removed at any time by an instrument or concurrent instruments in writing, signed by the holders of not less than a majority in principal amount of the bonds hereby secured and then outstanding, and filed with the Authority. A

HTA_CONF 00016507

43

photostatic copy of each such instrument shall be delivered promptly by the Authority to the Fiscal Agent. The Fiscal Agent may also be removed at any time for any breach of trust or for acting or proceeding in violation of, or for failing to act or proceed in accordance with, any provision of this Resolution with respect to the duties and obligations of the Fiscal Agent by any court of competent jurisdiction upon the application of the Authority or the holders of not less than five per centum (5%) in aggregate principal amount of the bonds then outstanding hereunder.

Section 708. If at any time hereafter the Fiscal Agent shall resign, be removed, be dissolved, or otherwise become incapable of acting, or if the bank or trust company acting as the Fiscal Agent shall be taken over by any governmental official, agency, department or board, the position of the Fiscal Agent shall thereupon become vacant. If the position of the Fiscal Agent shall become vacant for any of the foregoing reasons or for any other reasons, the Authority shall appoint a Fiscal Agent to fill such vacancy. The Authority shall publish notice of any such appointment by it made once in each week for two (2) successive weeks in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, and shall mail a copy of the notice of appointment to the principal underwriters.

At any time within one year after any such vacancy shall have occurred, the holders of a majority in aggregate principal amount of the bonds hereby secured and then outstanding, by an instrument or concurrent instruments in writing, executed by such bondholders or their attorneys in fact or legal representatives and filed with the Authority, may appoint a successor Fiscal Agent which shall supersede any Fiscal Agent theretofore appointed by the Authority. Photostatic copies of each such instrument shall be delivered promptly by the Authority to the predecessor Fiscal Agent and to the Fiscal Agent so appointed by the bondholders.

If no appointment of a successor Fiscal Agent shall be made pursuant to the foregoing provisions of this Section, the holder of any bond outstanding hereunder or any retiring Fiscal Agent may apply to any court of competent jurisdiction to appoint a successor Fiscal Agent.

HTA_CONF 00016508

50

facilities authorized by the Enabling Act by the issuance of bonds or other obligations which are not secured under the provisions of this Resolution.

SECTION 1002. All of the covenants, stipulations, obligations and agreements contained in this Resolution shall be deemed to be covenants, stipulations, obligations and agreements of the Authority to the full extent authorized or permitted by law, and all such covenants, stipulations, obligations and agreements shall be binding upon the successor or successors thereof from time to time, and upon any officer, board. commission, authority, agency or instrumentality to whom or to which any power or duty affecting such covenants, stipulations, obligations and agreements shall be transferred by or in accordance with law.

SECTION 1003. Any bank or trust company with or into which any Paying Agent may be merged, consolidated or converted, or to which the assets and business of such Paying Agent may be sold, shall be deemed the successor of such Paying Agent for the purposes of this Resolution. If the position of any Paying Agent shall become vacant for any reason, the Authority shall, within thirty (30) days thereafter, appoint a bank or trust company located in the same city as such Paying Agent to fill such vacancy; provided, however, that if the Authority shall fail to appoint such Paying Agent within said period, the Fiscal Agent shall make such appointment.

SECTION 1004. Any notice, demand, direction, request or other instrument authorized or required by this Resolution to be given to or filed with the Authority or the Fiscal Agent shall be deemed to have been sufficiently given or filed for all purposes of this Resolution:

To the Authority, if and when sent by registered mail, return receipt requested to the Authority if addressed to the Executive Director of the Authority, San Juan, Puerto Rico;

To the Fiscal Agent, if given or made in writing at the principal office of the Fiscal Agent addressed to the attention of its Corporate Trust Department.

Any notice required or permitted to be mailed hereunder shall be given by first class mail, postage prepaid.

51

All documents received by the Fiscal Agent under the provisions of this Resolution and not required to be redelivered shall be retained in its possession, subject at all reasonable times to the inspection of the Authority, any bondholder and the agents and representatives thereof.

SECTION 1005. Except as herein otherwise expressly provided, nothing in this Resolution expressed or implied is intended or shall be construed to confer upon any person, firm or corporation other than the Authority, the Fiscal Agent, the Paying Agents and the holders of the bonds issued under and secured by this Resolution any right, remedy or claim, legal or equitable, under or by reason of this Resolution or any provision hereof, this Resolution and all its provisions being intended to be and being for the sole and exclusive benefit of the Authority, the Fiscal Agent, the Paying Agents and the holders from time to time of the bonds issued hereunder.

SECTION 1006. In case any one or more of the provisions of this Resolution or of the bonds or coupons issued hereunder shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provision of this Resolution or of said bonds or coupons, but this Resolution and said bonds and coupons shall be construed and enforced as if such illegal or invalid provision had not been contained therein. In case any covenant, stipulation, obligation or agreement contained in the bonds or in this Resolution shall for any reason be held to be in violation of law, then such covenant, stipulation, obligation or agreement shall be deemed to be the covenant, stipulation, obligation or agreement of the Authority to the full extent permitted by law.

SECTION 1007. No covenant, stipulation, obligation or agreement contained herein shall be deemed to be a covenant, stipulation, obligation or agreement of any present or future member of the Authority or agent, officer or employee of the Authority in his individual capacity, and neither the members of said Authority nor any official executing the bonds shall be liable personally on the bonds or be subject to any personal liability or accountability by reason of the issuance thereof. This Resolution is adopted with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

HTA_CONF 00016510

52

SECTION 1008. The officers and agents of the Authority are hereby authorized and directed to do all the acts and things required of them by the bonds and this Resolution for the full, punctual and complete performance of all of the terms, covenants, provisions and agreements contained in the bonds and this Resolution.

SECTION 1009. All resolutions and parts thereof, which are in conflict or inconsistent with any provisions of this Resolution are hereby repealed and declared to be inapplicable to the provisions of this Resolution.

SECTION 1010. The provisions of this Resolution shall become effective immediately upon its passage.

PASSED AND ADOPTED JUNE 13, 1968.

HTA_CONF 00016511

RESOLUTION NO. 72-08

A SUPPLEMENTAL RESOLUTION ADDING A PROVISION
TO SECTION 404 OF RESOLUTION NO. 68-18
ADOPTED BY THE PUERTO RICO HIGHWAY AUTHORITY
ON JUNE 13, 1968.

WHEREAS, the Puerto Rico Highway Authority (herein some-
times called the "Authority"), adopted on June 13, 1968, Resolution
No. 68-18 (hereinafter called "Resolution No. 68-18"), authorizing
the issuance of bonds of the Authority for the purpose of providing
funds for the payment of the cost of Traffic Facilities as defined
in Resolution No. 68-18; and

WHEREAS, pursuant to the provisions of Resolution No. 68-18
the Authority has heretofore issued several series of Highway Revenue
Bonds; and

WHEREAS, the provisions of Section 401(c) of Resolution
No. 68-18 provides for the deposit of a specified portion of the
Revenues (as defined in Resolution No. 68-18) of the Authority to the
credit of the Reserve Account and states that no such deposit under
that provision is to be made in any month if the amount then to the
credit of the Reserve Account shall be equal to the maximum amount of
the Principal and Interest Requirements for any fiscal year there-
after on account of all bonds issued under the provisions of Resolution
No. 68-18 and then outstanding or in excess of such amount as may be
required to make the amount then to the credit of the Reserve Account
equal to such maximum requirement; and

WHEREAS, Article V of Resolution No. 68-18 requires the
moneys held for the credit of the Reserve Account to be invested by
the Fiscal Agent in certain Government obligations or to be held by
the Fiscal Agent as interest-bearing time deposits and provides that

HTA_CONF 00016512

such obligations and time deposits made with respect to the Reserve
Account shall be deemed at all times to be a part of such account and
that the interest received on such obligations or on such time de-
posits, and any profit realized from such investment, is to be
credited to the Reserve Account and any loss resulting from such
investment is to be charged to the Reserve Account; and

WHEREAS, the Authority has determined in the light of the
provisions of said Section 401(c) that it was the intention of the
Authority that the Reserve Account was to be built up to and main-
tained at an amount equal to the maximum amount of the Principal and
Interest Requirements specified therein and that no additional moneys
are to be accumulated in the Reserve Account and that it is desirable
that the provisions of Resolution No. 68-18 be amended so that the
provisions thereof will conform to such intention; and

WHEREAS, the Authority has further determined that it is
in the interest of the Authority and the holders of bonds issued
under Resolution No. 68-18 that any moneys held for the credit of the
Reserve Account in excess of the maximum requirement for the Reserve
Account under the provisions of Section 401(c) of Resolution No. 68-18
be either made available for application to the payment of the cost
of Traffic Facilities or be deposited to the credit of the Redemption
Account; and

WHEREAS, Section 801 of Resolution No. 68-18 provides that
the Authority may adopt supplemental resolutions to cure any ambiguity
or formal defect or omission or to correct any inconsistent provisions
or errors in Resolution No. 68-18; now, therefore,

BE IT RESOLVED by the Puerto Rico Highway Authority that
Section 404 of Resolution No. 68-18 is hereby amended by adding the
following paragraphs at the end of said Section:

-2-

"If at any time the moneys held for the credit of the Reserve Account shall exceed the maximum requirement for the Reserve Account under the provisions of Section 401(c) of this Article, such excess shall be transferred by the Fiscal Agent to the credit of the Construction-Fund or the Redemption Account as shall be determined from time to time by the Executive Director of the Authority."

"For the purpose of determining the amount on deposit to the credit of the Reserve Account, obligations in which moneys in said Account have been invested shall be valued (a) as to obligations which mature within six months from the date of the valuation thereof, at the purchase price of such obligations, and (b) as to obligations which mature more than six months after the date of the valuation thereof, at the lesser of (i) the purchase price of such obligations, or (ii) the bid quotation thereof on the business day next preceding the date of such valuation as reported in The Wall Street Journal or in the event said newspaper is not published or such price is not reported in said newspaper, in a newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, selected by the Fiscal Agent, or (iii) the price at which such obligations are redeemable by the holder at his option."

The Fiscal Agent is hereby requested pursuant to Section 801 of Resolution Number 68-18 to cause a notice of this Supplemental Resolution to be mailed in the form and to the person specified in said Section 801. This Resolution shall become effective 30 days after the giving of such notice.

HTA_CONF 00016514

RESOLUTION NO. 83-01

A RESOLUTION PLEDGING CERTAIN LICENSE
FEES TO THE PAYMENT OF BONDS ISSUED
PURSUANT TO THE PROVISIONS OF SECTION
208 OF RESOLUTION NO. 68-18, ADOPTED
UNDER AUTHORITY OF ACT NO. 74, APPROVED
JUNE 23, 1965, AS AMENDED, WHICH AUTHORIZES
THE ISSUANCE OF HIGHWAY REVENUE BONDS
FOR THE PURPOSE OF PROVIDING FUNDS FOR
USE BY THE AUTHORITY FOR CONTINUING
THE GOVERNMENT PROGRAM OF PROVIDING
HIGHWAYS AND OTHER FACILITIES FOR THE
MOVEMENT OF VEHICULAR TRAFFIC.

WHEREAS, Act No. 9 of the Legislature of Puerto Rico, approved August 12, 1982 (the "Act"), amends the Vehicle and Traffic Law of Puerto Rico (Act No. 141 of the Legislature of Puerto Rico, approved July 20, 1960) (as amended, the "Vehicle and Traffic Law") and imposes a fifteen dollar ($15.00) increase in the amount of certain license fees to be paid in connection with public and private automobiles and effective for all fiscal years beginning after June 30, 1982 (the "Additional License Fees"); and

WHEREAS, the Act allocates the proceeds of the Additional License Fees to a special deposit account in the name and for the benefit of Puerto Rico Highway Authority (the "Authority"); and

WHEREAS, the Act expressly authorizes the Authority to pledge such proceeds to the payment of the principal of and interest on bonds and other obligations of the Authority; now, therefore,

I, Rafael Faria Gonzalez, Secretary of Transportation and Public Works, DO HEREBY DETERMINE AND RESOLVE, as follows:

HTA_CONF 00016515

-2-

As authorized by the Act and subject to the terms
hereinafter stated, the full amount of the proceeds of the Additional
License Fees are hereby pledged by the Authority to the payment
of the principal of, premium, if any, and interest on bonds or
other obligations heretofore or hereafter issued under the provisions
of Resolution No. 68-18, adopted on June 13, 1968, as amended by
Resolution No. 72-08, adopted on February 17, 1972 (the "Bond
Resolution"). Such pledge shall be effective beginning as of
February 26_____, 1983 and shall terminate when all of the
following events shall have occurred:

(a) a law shall have been enacted by the Legislature
of Puerto Rico and approved by the Governor (i) increasing the
amount of the tax on gasoline above the 16¢ per gallon tax in
effect on the date hereof (the "Additional Gasoline Tax"), (ii)
allocating the Additional Gasoline Tax to the Authority, (iii)
expressly authorizing the Authority to pledge the full amount of
the proceeds of the Additional Gasoline Tax to the payment of the
principal of, premium, if any, and interest on bonds or other
obligations theretofore or thereafter issued under the Bond
Resolution and (iv) expressly providing that the Additional
Gasoline Tax will not be eliminated or reduced until the principal
of and interest on all bonds of the Authority for the payment of
which the proceeds of the Additional Gasoline Tax are pledged are
fully paid,

-3-

(b)   the full amount of the proceeds of the Additional Gasoline Tax shall have been effectively pledged by the Authority to the payment of the principal of, premium, if any, and interest on bonds or other obligations theretofore or thereafter issued under the Bond Resolution, and

(c)   there shall have been delivered to the Fiscal Agent:

(i)   A certified copy of a resolution adopted by the Secretary of Transportation and Public Works stating the Authority's intent to remove the pledge of the proceeds of the Additional License Fees to the payment of the principal of, premium, if any, and interest on the bonds or other obligations issued under the provisions of the Bond Resolution and concurrently with the effectiveness of such removal pledging the full amount of the proceeds of the Additional Gasoline Tax to the payment of the principal of, premium, if any, and interest on bonds or other obligations theretofore or thereafter issued under the provisions of the Bond Resolution; and

(ii)   A certificate signed by the Executive Director of the Authority setting forth:

(1)   his estimate of the amount of the proceeds projected to be received from the Additional License Fees in each of the next ten (10) fiscal years,

HTA_CONF 00016517

-4-

(2)  his estimate of the amount of the proceeds

projected to be received from the Additional Gasoline

Tax in each of the next ten (10) fiscal years,

and demonstrating that in each of the next ten (10) fiscal

years the estimated proceeds set forth in (2) are not less

than one hundred and five percent (105%) of the estimated

proceeds set forth in (1); and

(iii)  A certificate of the Traffic Engineers (as defined

in the Bond Resolution) to the effect that they have reviewed

the certificate of the Executive Director of the Authority

referred to in clause (ii) above and concur in his estimates

and calculations set forth therein.

PASSED AND ADOPTED:     February 24, 1983.

_____
Secretary of Transportation and
Public Works

CERTIFICATE

I, RAFAEL RODRÍGUEZ GUASP, Secretary of the Puerto Rico
Highway Authority _____ do hereby Certify that ··
an exact and true copy of Resolution No.83-01 ____, an
Secretary of Transportation and Public Works on February 24,
19 83

IN WITNESS THEREOF I hereunto set my hand and affixed
Corporate Seal of the Puerto Rico Highway Authority
24 day of February _____, 19 83

_____
RAFAEL RODRÍGUEZ GUASP
Secretary

HTA_CONF 00016518

**PUERTO RICO HIGHWAY AUTHORITY**

**RESOLUTION NO. 90-42**

**ADOPTED OCTOBER 29, 1990**

**Supplementing and Amending**
**Resolution No. 68-18 adopted June 13, 1968,**
**as amended and supplemented,**
**Authorizing and Securing**

**HIGHWAY REVENUE BONDS**

HTA_CONF 00016519

RESOLUTION NO. 90-42

**A RESOLUTION SUPPLEMENTING RESOLUTION NO. 68-18 OF PUERTO RICO HIGHWAY AUTHORITY ENTITLED "A RESOLUTION AUTHORIZING THE ISSUANCE OF PUERTO RICO HIGHWAY AUTHORITY HIGHWAY REVENUE BONDS"**

WHEREAS, Puerto Rico Highway Authority (the "Authority") has heretofore caused to be adopted Resolution No. 68-18 on June 13, 1968, as amended and supplemented by Resolution No. 72-08 adopted February 17, 1972 (together with all resolutions supplemental thereto as therein permitted, the "Resolution"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, Article II of the Resolution authorizes the issuance of revenue bonds with coupons for interest and registered bonds without coupons for interest; and

WHEREAS, Section 801 of the Resolution provides that the Authority may, from time to time and at any time, adopt such resolutions supplemental thereto as shall not be inconsistent with the terms and provisions thereof (which supplemental resolutions shall thereafter form a part of the Resolution) to, among other things, cure any ambiguity or formal defect or omission in the Resolution or any supplemental resolution or to grant to or confer upon the bondholders any additional rights, remedies, powers, authority or security that may lawfully be granted or conferred upon the bondholders; and

WHEREAS, the Authority has determined that it is desirable to add further provisions to the Resolution relating to the issuance of registered bonds without coupons; and

WHEREAS, all acts, conditions and things required by the Constitution and laws of the Commonwealth of Puerto Rico, and by the resolutions of the Authority to happen, exist and be performed precedent to and in the adoption of this supplemental resolution have happened, exist and have been performed as so required; and

WHEREAS, The Chase Manhattan Bank (National Association), as Fiscal Agent and Registrar under the Resolution (the "Fiscal Agent"), has accepted the duties created by this supplemental resolution; and

WHEREAS, the Authority has previously adopted a supplemental resolution and proposed for adoption two additional resolutions supplemental to the Resolution and this resolution constitutes the

fourth resolution supplemental to the Resolution (the "Fourth
Supplemental Resolution");

NOW, THEREFORE, BE IT RESOLVED BY PUERTO RICO HIGHWAY AUTHO-
RITY as follows:

Section 1.   The Resolution is hereby amended in the following
respects:

A.   There is added immediately after the definition of
"Construction Fund" in Section 101 the following definition:

"The term 'Date of Adoption of the Fourth
Supplemental Resolution' shall mean
October 29, 1990."

B.   The definition of "Paying Agents" contained in Section
101 is changed to read as follows:

"The term 'Paying Agents' shall mean the banks
or trust companies at which the principal of
and the interest on coupon bonds not regis-
tered as to both principal and interest shall
be payable."

C.   There is added immediately after the definition of
"Paying Agents" in Section 101 the following definition:

"The term 'predecessor bonds' of any par-
ticular registered bond without coupons shall
mean every previous registered bond without
coupons evidencing all or a portion of the
same debt as that evidenced by such particular
bond; and, for purposes of this definition,
any bond delivered under Section 212 or 213 of
this Resolution in lieu of a mutilated,
destroyed, lost or stolen bond shall be deemed
to evidence the same debt as the mutilated,
destroyed, lost or stolen bond."

D.   There is added immediately after the definition of
"principal underwriters" in Section 101 the following
definition:

"The term 'Record Date' shall mean with
respect to any coupon bond registered as to
both principal and interest issued after the
Date of Adoption of the Fourth Supplemental
Resolution and any registered bond without
coupons and any registered replacement bond
without coupons the 15th day (whether or not

-2-

a business day) of the month next preceding an interest payment date."

E.  Section 202 is changed to read as follows:

"The definitive bonds of each Series issued under the provisions of this Resolution shall be issuable as coupon bonds registrable as to both principal and interest or as registered bonds without coupons, shall be in such denominations, shall be numbered consecutively from 1 upwards as to coupon bonds and from R___-1 (inserting an identifying Series letter) upwards as to registered bonds without coupons, shall be dated, shall bear interest until their payment, such interest to the respective maturities of the bonds being payable semi-annually on the 1st days of January and July in each year, and shall be stated to mature (subject to the right of prior redemption), all as hereinafter provided.

Each coupon bond shall bear interest from its date.  Each registered bond without coupons shall bear interest from the interest payment date next preceding the date on which it is authenticated, unless authenticated on an interest payment date, in which case it shall bear interest from such interest payment date, or, unless authenticated prior to the first interest payment date, in which case it shall bear interest from its date; provided, however, that if at the time of authentication of any registered bond without coupons interest is in default, such bond shall bear interest from the date to which interest shall have been paid.

Both the principal of and the interest on the bonds shall be payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts.   The principal of and interest on coupon bonds, unless registered, shall be payable at The Chase Manhattan Bank (National Association), in the Borough of Manhattan, City and State of New York, or in the Municipality of San Juan, Puerto Rico, or at Bank of America National Trust and Savings Association, in the City of San Francisco,

-3-

California (herein sometimes called the
"Paying Agents") at the option of the holder.
The Authority reserves the right to designate
additional Paying Agents from time to time.
Payment of the interest on the coupon bonds to
the respective maturities thereof shall be
made only upon presentation and surrender of
the coupons, if any, representing such inter-
est as the same respectively become due; or,
if any coupon bond shall be registered as to
both principal and interest, payment of the
interest on such bond on any interest payment
date shall be made to the person appearing on
the bond registration books of the Authority
hereinafter provided for as the registered
owner thereof, such interest to be paid by
check mailed to the registered owner at his
address as it appears on such registration
books.  Payment of interest on any registered
bond without coupons shall be made to the
person appearing on the bond registration
books of the Authority as the registered owner
thereof (or of one or more predecessor bonds)
on the Record Date, such interest to be paid
by check mailed to such registered owner at
his address as it appears on such registration
books; provided, however, that to the extent
provided in the resolution authorizing the
issuance of bonds, interest may be payable by
wire transfer.  The principal of any coupon
bond registered as to both principal and
interest or any registered bond without cou-
pons shall be payable upon presentation and
surrender thereof at the principal corporate
trust office of The Chase Manhattan Bank
(National Association)."

F.   The first two sentences of Section 203 are deleted and
the following three sentences are inserted to read as follows:

"Coupon bonds shall bear the facsimile
signature of the Secretary of Transportation
and Public Works of the Commonwealth and shall
be signed by the Executive Director and the
Secretary or an Assistant Secretary of the
Authority, and a facsimile of the corporate
seal of the Authority shall be imprinted on
such bonds.  The interest coupons to be
attached to the coupon bonds shall bear the
facsimile signature of the Secretary of
Transportation and Public Works of the
Commonwealth.  Registered bonds without cou-

-4-

pons shall bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth and of the Executive Director and the Secretary or an Assistant Secretary of the Authority and a facsimile of the corporate seal of the Authority shall be imprinted on such bonds."

G.   Immediately prior to the last sentence of the first paragraph of Section 203 the following two sentences are inserted to read as follows:

"As to registered bonds without coupons, only such bonds as shall have endorsed thereon a certificate of authentication substantially in the form set forth hereinbelow, duly executed by the Fiscal Agent, shall be entitled to any lien, benefit or security under this Resolution.   No registered bond without coupons shall be valid or obligatory for any purpose unless and until such certificate of authentication shall have been duly executed by the Fiscal Agent, and such certificate of the Fiscal Agent upon any such bond shall be conclusive evidence that such bond has been duly authenticated and delivered under this Resolution.   The Fiscal Agent's certificate of authentication on any bond shall be deemed to have been duly executed if signed by an authorized officer of the Fiscal Agent, but it shall not be necessary that the same officer sign the certificate of authentication on all of the bonds that may be issued hereunder at any one time."

H.   The last sentence of Section 203 is deleted through "[Form of Bonds]", and there is added as the first sentence of a new second paragraph of Section 203 (immediately before the form of bonds) the following sentence:

"The coupon bonds, the interest coupons to be attached thereto, the provisions for registration and reconversion to be endorsed on such coupon bonds, the registered bonds without coupons, the certificate of authentication by the Fiscal Agent to be endorsed on all such registered bonds without coupons and the form of assignment shall be, respectively, substantially in the forms set forth below, with such variations, omissions and insertions as are required or permitted by this Resolution, as the same may be amended from time to time.

-5-

All such bonds may have endorsed thereon such legends or text as may be necessary or appropriate to conform to any applicable rules and regulations of any governmental authority or any usage or requirement of law with respect thereto.

[Form of Coupon Bonds]"

I.     Section 204 is changed to read as follows:

"Section 204.   Registered bonds without coupons, upon surrender thereof to the Fiscal Agent, as Bond Registrar, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of coupon bonds of the same Series (if authorized for such Series) and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same Series and maturity, of any denomination or denominations authorized by this Resolution, and bearing interest at the same rate, and, in either case, with the exception of the differences between the form of coupon bonds and the form of registered bonds without coupons which are set forth in this Resolution, in the same form as the registered bonds without coupons surrendered for exchange.

Title to any coupon bond, unless such bond is registered in the manner hereinafter provided, and to any interest coupon shall pass by delivery in the same manner as a negotiable instrument payable to bearer.  The Authority shall cause books for the registration and for the registration of transfer of the bonds as provided in this Resolution to be kept by The Chase Manhattan Bank (National Association), New York, New York, as Bond Registrar.  At the option of the bearer, any coupon bond (but not any temporary bond unless the Authority shall so provide) may be registered as to both principal and interest on such books upon presentation thereof to the Bond Registrar accompanied by all unmatured

-6-

coupons and all matured coupons, if any, not
theretofore paid or provided for, and the Bond
Registrar shall make notation of such regis-
tration thereon and detach therefrom and
retain in its custody all such coupons.   The
transfer of any registered bond without cou-
pons and any coupon bond registered as to both
principal and interest may thereafter be
registered only upon an assignment duly
executed by the registered owner or his attor-
ney or legal representative in such form as
shall be satisfactory to the Bond Registrar,
such registration of transfer to be made on
such books and, in the case of a coupon bond,
endorsed on the bond by the Bond Registrar.
In the case of the registration of transfer of
a registered bond without coupons, the
Authority shall execute and the Bond Registrar
shall authenticate and deliver in exchange for
such bond a new registered bond or bonds
without coupons registered in the name of the
transferee, of any denomination or denomina-
tions authorized by this Resolution or, at the
option of the transferee and if coupon bonds
are authorized for such Series of bonds,
coupon bonds with coupons attached
representing all unpaid interest due or to
become due thereon, in an aggregate principal
amount equal to the principal amount of such
registered bond without coupons, of the same
Series and maturity and bearing interest at
the same rate.   The principal of and redemp-
tion premium, if any, and interest on any
coupon bond registered as to both principal
and interest and of any registered bond with-
out coupons shall be payable in accordance
with the provisions of Section 202 of this
Resolution.   In all cases in which the trans-
fer of registered bonds without coupons shall
be registered or registered bonds without
coupons shall be exchanged hereunder, the
Authority shall execute and the Bond Registrar
shall authenticate and deliver at the earliest
practicable time registered bonds without
coupons or coupon bonds, if authorized, with
coupons attached representing all unpaid
interest due or to become due thereon (except
that coupon bonds need not be authenticated),
in accordance with the provisions of this
Resolution.   All registered bonds without
coupons surrendered in any such registration

-7-

HTA_CONF 00016526

of transfer or exchange shall forthwith be
cancelled by the Bond Registrar.

No charge shall be made to any bondholder for
the privilege of registration, registration of
transfer and exchange hereinabove granted, but
any bondholder requesting any such regis-
tration, registration of transfer or exchange
shall pay any tax or other governmental charge
required to be paid with respect thereto.  The
Bond Registrar shall not be required to trans-
fer any coupon bond registered as to both
principal and interest and issued prior to the
Date of Adoption of the Fourth Supplemental
Resolution during the fifteen (15) days
immediately preceding any interest payment
date of such bond, nor after such bond has
been selected for redemption.  The Bond
Registrar shall not be required to transfer
any coupon bond registered as to both
principal and interest and issued after the
Date of Adoption of the Fourth Supplemental
Resolution or any registered bond without
coupons during the fifteen (15) days
immediately preceding the date of mailing of
notice of redemption or after such bond has
been selected for redemption.  No coupon bond
registered as to both principal and interest
shall thereafter be discharged from
registration except as provided in Sections
206 and 213 of this Article."

J.    Section 205 is changed to read as follows:

"Section 205.  As to any registered bond
without coupons and any coupon bond registered
as to both principal and interest, the person
in whose name the same shall be registered
shall be deemed and regarded as the absolute
owner thereof for all purposes, whether such
bond shall be overdue or not and neither the
Authority, the Fiscal Agent, the Bond
Registrar nor the Paying Agents shall be
affected by any notice to the contrary, and
payment of or on account of the principal of
or redemption premium, if any, or interest on
any such bond shall be made only to or upon
the order of the registered owner thereof or
his legal representative, but such registra-
tion may be changed as herein provided.  All
such payments shall be valid and effectual to
satisfy and discharge the liability upon such

-8-

bond to the extent of the sum or sums so paid.
The Authority, the Fiscal Agent, the Bond
Registrar and the Paying Agents may deem and
treat the bearer of any coupon bond which
shall not at the time be registered, and the
bearer of any coupon appertaining to any
coupon bond, as the absolute owner of such
bond or coupon, as the case may be, whether
such bond or coupon shall be overdue or not,
for the purpose of receiving payment thereof
and for all other purposes whatsoever, and
neither the Authority, the Fiscal Agent, the
Bond Registrar nor the Paying Agents shall be
affected by any notice to the contrary."

K.    Section 206 is changed to read as follows:

"Section 206.  Any coupon bond registered as
to both principal and interest may be
reconverted into a coupon bond upon
presentation thereof to the Bond Registrar,
together with an instrument requesting such
reconversion duly executed by the registered
owner or his attorney or legal representative
and in such form as shall be satisfactory to
the Bond Registrar.  Upon any such presenta-
tion the Bond Registrar shall reattach to such
bond the coupons representing the interest to
become due thereafter on the bond to the date
of maturity and interest then due and unpaid,
if any, and shall make notation thereon that
the bond is payable to bearer.

No charge shall be made to any bondhol-
der for any such reconversion, except that the
Bond Registrar shall require payment by such
bondholder of any tax or other governmental
charge required to be paid with respect to
such reconversion.  The Bond Registrar shall
not be required to reconvert any coupon bond
under the provisions of this Section during
the period of fifteen (15) days next preceding
any interest payment date of such bond nor
after such bond has been selected for
redemption."

L.    The second sentence of the second paragraph of Section
208 is changed to read as follows:

"The bonds of each Series issued under the
provisions of this Section shall be designated
'Puerto Rico Highway Authority Highway Revenue

-9-

Bonds (Series___)', (inserting an identifying
series letter), shall be dated, shall be
issued in such form, shall be stated to mature
on July 1 in such year or years not later than
fifty (50) years from their date and may be
made redeemable at such times and prices
(subject to the provisions of Article III of
this Resolution), all as may be provided by
the resolution authorizing the issuance of
such bonds."

M.  The fourth sentence of the second paragraph of Section
208 is changed to read as follows:

"Such bonds shall be executed substantially in
the form and manner hereinabove set forth,
with such changes as shall be necessary or
appropriate to conform to the provisions of
the resolution authorizing the issuance of
such bonds, and shall be deposited with the
Fiscal Agent for delivery and, if such bonds
consist of registered bonds without coupons,
authentication, but before such bonds shall be
delivered and, if applicable, authenticated by
the Fiscal Agent there shall be filed with it
the following:"

N.  The first sentence of the third paragraph of Section 208
is changed to read as follows:

"When the documents mentioned in clauses (a)
to (e), inclusive, of this Section shall have
been filed with the Fiscal Agent and when the
bonds described in the resolutions mentioned
in clauses (a) and (b) of this Section shall
have been executed and, if applicable, authen-
ticated, as required by this Resolution, the
Fiscal Agent shall deliver said bonds at one
time to or upon the order of the principal
underwriters named in the resolution mentioned
in said clause (b), but only upon payment to
the Fiscal Agent of the purchase price of such
bonds."

O.  The third sentence of the first paragraph of Section 209
is changed to read as follows:

"Such refunding bonds shall be designated,
shall be dated, shall be issued in such form
and shall be stated to mature on July 1, in
such year or years, not later than fifty (50)
years from their date, all as may be provided

-10-

by the resolution authorizing the issuance of
such bonds."

P.   The first sentence of the second paragraph of Section 209
is changed to read as follows:

"Such refunding bonds shall be executed sub-
stantially in the form and manner hereinabove
set forth, with such changes as may be neces-
sary or appropriate to conform to the provi-
sions   of   the   resolution   authorizing   the
issuance of such bonds, and shall be deposited
with the Fiscal Agent for delivery and, if
such bonds consist of registered bonds without
coupons, authentication, but before such bonds
shall be delivered and, if applicable, authen-
ticated by the Fiscal Agent there shall be
filed with it the following:"

Q.   The first sentence of the third paragraph of Section 209
is changed to read as follows:

"When the documents mentioned in clauses (a)
to (d), inclusive, of this Section shall have
been filed with the Fiscal Agent and when the
bonds described in the resolutions mentioned
in clauses (a) and (b) of this Section shall
have been executed and, if applicable, authen-
ticated, as required by this Resolution, the
Fiscal Agent shall deliver such bonds at one
time to or upon the order of the principal
underwriters named in the resolution mentioned
in said clause (b), but only upon payment to
the Fiscal Agent of the purchase price of such
bonds."

R.   The third and fourth sentences of Section 211 are changed
to read as follows:

"Upon   any   such   exchange,   all   coupons
appertaining to definitive coupon bonds and
representing interest theretofore paid shall
be detached and cancelled by the Fiscal Agent.
Until so exchanged, the temporary bonds shall
in all respects, including the privilege of
registration if so provided, be entitled to
the same benefit of this Resolution as the
definitive bonds to be issued hereunder, and
interest on such temporary bonds, when pay-
able, if the definitive bonds shall not be
ready   for   exchange,   shall   be   paid   on
presentation of  such  temporary bonds and

-11-

notation of such payment shall be endorsed
thereon, or such interest shall be paid upon
the surrender of the appropriate coupons if
coupons representing such interest shall be
attached to such temporary bonds."

S.   Section 212 is changed to read as follows:

"Section 212.  In case any bond or any coupon
issued hereunder shall become mutilated or be
destroyed, lost or stolen the Authority shall
cause to be executed, and the Fiscal Agent
shall authenticate (if such bond is a
registered bond without coupons) and deliver,
a new bond of like date, maturity and tenor in
exchange and substitution for and upon the
cancellation of such mutilated bond and its
interest coupons, if any, or in lieu of and in
substitution for such bond and its coupons, if
any, mutilated, destroyed, lost or stolen;
provided, however, that if any such coupon or
bond shall have matured or shall be about to
mature, the Authority may pay such coupon or
such bond in lieu of issuing a new bond, all
upon the holder's paying the reasonable
expenses and charges of the Authority and the
Fiscal Agent in connection therewith, and, in
the case of a bond or coupon destroyed, lost
or stolen, his filing with the Fiscal Agent
evidence satisfactory to it and the Authority
that such bond and coupons, if any, were
destroyed, lost or stolen and of his ownership
thereof, and furnishing the Authority and the
Fiscal Agent with indemnity satisfactory to
them."

T.   Two new Sections are hereby inserted immediately follow-
ing Section 212 to read as follows:

"Section 213.  Subject to the provisions of
Section 212 of this Resolution, at the request
of the holder of any mutilated, destroyed,
lost or stolen coupon bond, the Authority
shall cause to be executed, and the Bond
Registrar shall authenticate and deliver, in
lieu of a new definitive coupon bond prepared
in the same manner as the original bond, a
registered replacement bond without coupons,
which may be typewritten, printed, or other-
wise prepared, of like date and tenor with
such appropriate variations, omissions and
insertions as are required by this Section.

-12-

Such replacement bond shall be registered in the name designated by such holder and shall bear interest from the interest payment date to which interest has been paid immediately preceding the date, if any, on which a stop-payment notice was given with respect to the original bond. The principal of such replacement bond shall be payable, upon presentation and surrender thereof to the Fiscal Agent, only to the registered owner or his legal representative, and payment of the interest on such replacement bond shall be made on each interest payment date to the person appearing on the registration books of the Authority herein provided for as the registered owner thereof on the Record Date, if any, for such interest payment date, by check mailed to such registered owner at his address as it appears on such registration books.

Except with respect to the exchange or transfer of such registered replacement bond (which shall be governed solely by the provisions of this Section), such replacement bond shall be entitled to the same lien, benefit and security of this Resolution as the definitive bonds issued hereunder.

Registered replacement bonds without coupons, upon surrender thereof to the Bond Registrar, together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar, may, at the option of the registered owner thereof, be exchanged for an equal aggregate principal amount of definitive coupon bonds of the same Series and maturity and bearing interest at the same rate, having attached thereto coupons representing all unpaid interest due or to become due thereon, and prepared in the same manner as the original definitive coupon bonds. No charge shall be made to any bondholder for the privilege of any such exchange hereinabove granted, but any bondholder requesting any such exchange shall pay any tax or other governmental charge required to be paid with respect to such exchange and the reasonable expenses and charges of the Authority and the Bond Registrar in connection therewith, including

-13-

HTA_CONF 00016532

the costs of printing new definitive coupon bonds.

The Authority shall cause books for the registration of and the registration of transfers of registered replacement bonds without coupons as provided in this Section to be kept by the Fiscal Agent as Bond Registrar. The transfer of any registered replacement bond without coupons may be registered only upon such books upon surrender thereof to the Bond Registrar together with an assignment duly executed by the registered owner or his attorney or legal representative in such form as shall be satisfactory to the Bond Registrar. Upon any such registration of transfer the Authority shall execute and the Bond Registrar shall authenticate (in the case of (i) below) and deliver in exchange for such replacement bond, at the option of the transferee, (i) a new registered replacement bond or (ii) new definitive coupon bonds with coupons attached representing all unpaid interest due or to become due thereon, in aggregate principal amount equal to the principal amount of such replacement bond, of the same Series and maturity and bearing interest at the same rate. No charge shall be made to any bondholder for the privilege of any such registration of transfer hereinabove granted, but any bondholder requesting any such registration of transfer shall pay any tax or other governmental charge required to be paid with respect to such registration of transfer and the reasonable expenses and charges of the Authority and the Bond Registrar in connection therewith, including the costs of printing new definitive coupon bonds.

All replacement bonds surrendered in any such exchange or registration of transfer shall forthwith be cancelled by the Bond Registrar. Neither the Authority nor the Bond Registrar shall be required to make any such exchange or registration of transfer of replacement bonds after the Record Date or during the fifteen (15) days next preceding the date of first giving of the notice of any redemption or after such bonds have been selected for redemption.

-14-

Registered replacement bonds without
coupons may also be issued under the provi-
sions of this Section to the holder of any
mutilated, destroyed, lost or stolen coupon
upon surrender of the original definitive
coupon bond to which such coupon appertains
and all remaining coupons appertaining there-
to.

In case any mutilated, destroyed, lost or
stolen coupon bond or coupon, as the case may
be, has become or is about to become due and
payable, the Authority in its discretion may
pay such bond or coupon."

"Section 214. Notwithstanding anything to the
contrary contained in this Resolution, a
Series of coupon bonds may be issued hereunder
after the Date of Adoption of the Fourth
Supplemental Resolution only upon delivery by
the Authority to the Fiscal Agent of an
opinion of counsel of recognized standing in
the field of law relating to municipal bonds
to the effect that the issuance of bonds in
coupon form will not cause the interest on
bonds issued hereunder as bonds the interest
on which is excludable from gross income for
federal income tax purposes to be includable
in gross income for federal income tax pur-
poses; provided, however, that no such opinion
shall be required in connection with the
reconversion into a coupon bond of a coupon
bond registered as to principal and interest
or a registered replacement bond."

U.   The last paragraph of Section 301 is changed to read
follows:

"If less than all of the serial bonds of a
Series of any one maturity or less than all of
the term bonds of a Series shall be called for
redemption, the particular bonds or portions
of registered bonds without coupons to be
redeemed shall be selected by the Fiscal Agent
in such manner as the Fiscal Agent in its
discretion may determine to be appropriate and
fair; provided, however, that the portion of
any registered bond without coupons of any
Series to be redeemed shall be in the prin-
cipal amount equal to the lowest denomination
authorized for such Series or some multiple
thereof, and that, in selecting bonds for

-15-

HTA_CONF 00016534

redemption, the Fiscal Agent shall treat each registered bond without coupons as representing that number of bonds which is obtained by dividing the principal amount of such registered bond without coupons by the amount of such lowest authorized denomination."

V.   Section 302 is changed to read as follows:

"Section 302.   At least thirty (30) days before the redemption date of any bonds, the Fiscal Agent shall cause a notice of any such redemption, signed in the name of the Authority by the Fiscal Agent, (a) to be published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, (b) to be filed with the Paying Agents and (c) to be mailed, by first class mail, postage prepaid, to all registered owners of bonds to be redeemed at their addresses as they appear on the registration books hereinabove provided for, but failure to mail any such notice shall not affect the validity of the proceedings for the redemption of bonds of a Series consisting only of coupon bonds not registered as to principal and interest; provided, however, that with respect to the redemption of bonds of a Series consisting of coupon bonds registered as to both principal and interest or registered bonds without coupons, published notice of redemption shall not be required, and the failure to mail notice of redemption or any defect in any such notice shall not affect the validity of the proceedings for redemption of any other bonds of such Series to the holders of which notice of such redemption has been properly mailed.   Each such notice shall set forth (1) the date fixed for redemption, (2) the redemption price to be paid, (3) that on the date fixed for redemption the redemption price will become due and payable upon each bond or portion thereof called for redemption, if moneys for the payment of the redemption price shall be on deposit on such date, (4) that interest thereon shall cease to accrue on and after said redemption date, (5) the place where such bonds are to be surrendered for payment of such redemption price and (6) if less than all

-16-

HTA_CONF 00016535

of the bonds then outstanding shall be called
for redemption, the maturities and the numbers
of the bonds to be redeemed.   In case any
registered bond without coupons is to be
redeemed in part only, the notice of redemp-
tion which relates to such bond shall state
also the portion of the principal amount to be
redeemed and that on or after the redemption
date, upon surrender of such bond, a new
registered bond or bonds without coupons, of
the same Series and maturity, bearing interest
at the same rate and in principal amount equal
to the unredeemed portion of such bond will be
issued.

In addition to the foregoing notice, further
notice shall be mailed by the Fiscal Agent as
set out below, but no defect in said further
notice nor any failure to give all or any
portion of such further notice shall in any
manner defeat the effectiveness of a call for
redemption if notice thereof is given as above
prescribed.

(a)   Each further notice of redemp-
tion given hereunder shall contain the
information required above for an offi-
cial notice of redemption plus (i) the
date of issue of the bonds as originally
issued; (ii) the rate of interest borne
by each bond being redeemed; (iii) the
maturity date of each bond being
redeemed; and (iv) any other descriptive
information needed to identify accurately
the bonds being redeemed.

(b)   Each further notice of redemp-
tion shall be sent by registered or
certified mail or overnight delivery
service or by facsimile transmission for
receipt at least two (2) business days
prior to the thirtieth (30) day before
the redemption date to the registered
securities depositories and national
information services whose names and
addresses are included on the most recent
list furnished to the Fiscal Agent by the
Authority.

(c)   The Fiscal Agent shall cause a
second notice of redemption to be mailed
in the manner and in the form specified

-17-

above for the initial notice of redemption to holders of registered bonds or portions thereof to be redeemed who have not surrendered their bonds within sixty (60) days after the redemption date."

W.   Section 303 is changed to read as follows:

"Section 303.   On the date so designated for redemption, notice having been given and filed in the manner and under the conditions hereinabove provided and moneys for payment of the redemption price being held in separate accounts by the Fiscal Agent or by the Paying Agents in trust for the holders of the bonds or portions thereof to be redeemed, all as provided in this Resolution, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or portions of bonds on such date, interest on the bonds or portions thereof so called for redemption shall cease to accrue, the coupons for interest thereon payable subsequent to the redemption date shall be void, and the holders or registered owners of such bonds or portions thereof shall have no rights in respect thereof except to receive payment of the redemption price thereof and, to the extent provided in Section 307 hereof, to receive bonds for any unredeemed portions of registered bonds without coupons."

X.   Section 305 is changed to read as follows:

"Section 305.   Coupon bonds so called for redemption, all unmatured coupons appertaining thereto and registered bonds without coupons so called for redemption, shall be cancelled upon the surrender thereof."

Ẏ.   Section 306 is changed to read as follows:

"Section 306.   In the event that sufficient moneys or Government obligations or time deposits the principal of and interest on which when due will provide sufficient moneys are held in separate accounts by the Fiscal Agent or by the Paying Agents in trust for the payment of (i) the principal, any redemption premium and interest to accrue to the redemp-

-18-

HTA_CONF 00016537

tion date of all bonds or portions of bonds
which have been duly called for redemption
under the provisions of this Article or with
respect to which irrevocable instructions to
call for redemption have been given to the
Fiscal Agent in form satisfactory to it, and
(ii) the principal of all bonds, if any,
refunded under this Resolution which mature
prior to the earliest redemption date of the
bonds subject to redemption, and the interest
to accrue on such bonds to the maturity date
or dates thereof, such bonds or portions of
bonds so called for redemption and any such
bonds which mature prior to such earliest
redemption date shall not thereafter be deemed
to be outstanding under the provisions of this
Resolution and shall cease to be entitled to
any lien, benefit or security under this
Resolution, other than the right to receive
payment from such moneys."

Z.   Insert a new Section immediately following Section 306
to read as follows:

"Section 307.   In case part but not all of an
outstanding registered bond without coupons
shall be selected for redemption, the regis-
tered owner thereof or his attorney or legal
representative shall present and surrender
such bond to the Fiscal Agent for payment of
the principal amount thereof so called for
redemption, and the Authority shall execute
and the Bond Registrar shall authenticate and
deliver to or upon the order of such regis-
tered owner or his legal representative,
without charge therefor, for the unredeemed
portion of the principal amount of the regis-
tered bond without coupons so surrendered, a
new registered bond or bonds without coupons
of the same Series and maturity, bearing
interest at the same rate and of any denomina-
tion or denominations authorized by this
Resolution."

AA.   Section 402 is changed to read as follows:

"The Fiscal Agent shall, from time to time,
withdraw from the Bond Service Account and (1)
remit by mail to each owner of registered
bonds or coupon bonds registered as to both
principal and interest the amount required for
paying interest upon such bonds as such

-19-

interest becomes due, (2) set aside or deposit in trust with the Paying Agents sufficient moneys for paying the interest on the remaining bonds as such interest becomes due, (3) set aside in trust an amount equal to the amount of, and for the sole and exclusive purpose of paying, the principal of all serial bonds which are registered as such principal becomes due, and (4) deposit in trust with the Paying Agents sufficient moneys for paying the principal of serial bonds not registered as such principal becomes due; provided, that the Fiscal Agent may withdraw the amounts required for paying interest by wire transfer to the extent provided for in the resolution adopted by the Authority authorizing the issuance of the registered bonds.  If Paying Agents other than the Fiscal Agent have been designated, the Fiscal Agent will transfer such amounts to the Paying Agents to permit the Paying Agents to comply with the foregoing sentence."

BB.   There is inserted immediately after the form of coupons in Section 203 the following forms of registered bond without coupons, certificate of authentication by the Fiscal Agent and the form of assignment:

-20-

[Form of registered bonds without coupons]

[Front side of bond]

No. R__-__                                                    $_____

### United States of America

### Commonwealth of Puerto Rico

### PUERTO RICO HIGHWAY AUTHORITY

### Highway Revenue [Refunding] Bond (Series ____)

| Maturity Date | Interest Rate | Original Issue Date | Cusip No. |
|---|---|---|---|
| | | | |

REGISTERED HOLDER:

PRINCIPAL AMOUNT:                                    DOLLARS

Puerto Rico Highway Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Holder shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the principal corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay to the Registered Holder hereof, from said special fund, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is a January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing _____ 1, _____, at the Interest Rate per annum specified above, until payment of said Principal Amount.  The interest so payable and punctually paid, or duly provided for, on any interest payment date will be paid to the person in whose name this bond (or one or more predecessor bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on the fifteenth (15th) day (whether or not a business day) of the calendar month next preceding such interest payment date, by check mailed to such

-21-

HTA_CONF 00016540

person at his address as it appears on the bond registration books of the Authority maintained by the Fiscal Agent [add wire transfer provisions, if applicable].  All such payments shall be made in such coin or currency of the United States as at the time of payment is legal tender for payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivision shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

ADDITIONAL PROVISIONS OF THIS BOND ARE SET FORTH ON THE REVERSE HEREOF AND SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH HERE.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution herein described until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highway Authority has caused this bond to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and [Assistant] Secretary of Puerto Rico Highway Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the 1st day of _____.

PUERTO RICO HIGHWAY AUTHORITY


By:_____
    Secretary of Transportation
       and Public Works

(SEAL)


By:_____
      Executive Director


By:_____
    [Assistant] Secretary


-22-

HTA_CONF 00016541

EXHIBIT A

PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY

RESOLUTION NO. 92-42

ADOPTED JUNE 23, 1992

Supplementing and Amending
Resolution No. 68-18, adopted June 13, 1968,
as amended and supplemented,
Authorizing and Securing

HIGHWAY REVENUE BONDS

HTA_CONF 00016542

charges the Authority shall take into account such factors as will promote the use of the traffic facilities owned or operated by it in the broadest and most varied manner economically possible.  To fix or alter such charges the Authority shall hold a public hearing of an informative and quasi-legislative character, before the Authority Board (which, pursuant to the Reorganization Plan No. 6 of 1971, is the Secretary of Transportation and Public Works of the Commonwealth) or before any official or officials that the Authority may designate for the purpose.  Such hearings shall be announced reasonably in advance, stating the place and time of the hearing and the proposed charges or alteration,·

(vii) to borrow money for any of its corporate purposes, and to issue bonds, notes or other obligations of the Authority in evidence of such indebtedness and to secure payment of bonds, notes and other obligations and interest thereon by pledge of, or other lien on, all or any of its properties, revenues or other income, and subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth, pledge to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth,

(viii) to issue bonds for the purpose of funding, refunding, purchasing, paying or discharging any of its outstanding bonds or other obligations, and

(ix)  to do all acts or things necessary or desirable to the carrying out of the powers granted to the Authority by the Enabling Act or by any other act of the Legislature of Puerto Rico; provided, however, that neither the Commonwealth of Puerto Rico nor any of its political subdivisions shall be liable for the payment of the principal of or interest on any bonds issued by the Authority and such principal and interest shall be payable only from the funds of the Authority pledged for such payment pursuant to clause (vii) of this preamble; and

WHEREAS, pursuant to the Enabling Act, the Authority has heretofore adopted Resolution No. 68-18 on June 13, 1968, as amended and supplemented by Resolution No. 72-08, adopted February 17, 1972 and Resolution No. 90-42, adopted October 29, 1990 (together with all resolutions supplemental thereto as therein permitted, the "Resolution"), for the purpose of fixing and declaring the terms and conditions upon which revenue bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to provide for the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

WHEREAS, pursuant to the Resolution, the Authority has heretofore issued its Highway Revenue Bonds and Highway Revenue Refunding Bonds (the "Highway Revenue Bonds"), outstanding on the

- 2 -

date of adoption hereof in the aggregate principal amount of $965,545,000; and

WHEREAS, Section 802 of the Resolution provides that the Authority may from time to time and at any time, with the consent and approval of the holders of not less than two-thirds (2/3) in aggregate principal amount of the bonds then outstanding, adopt such resolutions supplemental thereto as shall be deemed necessary or desirable by the Authority for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, certain of the terms or provisions contained in the Resolution; and

WHEREAS, the Authority has determined that it is desirable to modify certain provisions of the Resolution as hereinafter described through the adoption of this resolution (the "Second Supplemental Resolution");

WHEREAS, The Chase Manhattan Bank (National Association), as Fiscal Agent under the Resolution (the "Fiscal Agent"), has (i) caused notice of the proposed adoption of the Second Supplemental Resolution to be given as required under the Resolution, (ii) received a certificate signed by the Executive Director of the Authority that the holders of at least two-thirds (2/3) in aggregate principal amount of the bonds outstanding have specifically consented to and approved the adoption by the Authority of this Second Supplemental Resolution, and (iii) received an opinion of counsel that the adoption by the Authority of this Second Supplemental Resolution is authorized by the provisions of Section 802 of the Resolution; and

WHEREAS, all acts, conditions and things required by the Constitution and laws of the Commonwealth of Puerto Rico and by the resolutions of the Authority to happen, exist and be performed precedent to and in the adoption of this Second Supplemental Resolution have happened, exist and have been performed as so required;

NOW, THEREFORE, BE IT RESOLVED by Puerto Rico Highway and Transportation Authority:

Section 1.  Amendment to Article I. Article I of the Resolution is hereby deleted and replaced as follows, except for the definitions of Construction Fund, Executive Director, Fiscal Agent, Outstanding Notes, Paying Agents, principal underwriters, Sinking Fund, Traffic Engineers and Traffic Facilities which shall remain in effect without modification:

- 3 -

thereunder and applicable regulations promulgated under the Internal Revenue Code of 1954, as amended.

The word 'Construction' or 'construction' shall mean construction or acquisition or both.

The term 'Cost of Traffic Facilities' or 'cost of Traffic Facilities' shall mean the cost of construction of Traffic Facilities and the cost of all labor, materials, machinery and equipment, the cost of all lands, property, rights, easements and franchises acquired, interest prior to and during construction and for any additional period authorized by law if so provided by, and subject to any limitations in, the resolution authorizing the issuance of a Series of Bonds, cost of engineering and legal services, cost of preliminary surveys, plans and specifications, expenses of administration properly chargeable to such construction or acquisition, legal, architectural and engineering expenses and fees, cost of audits and of preparing and issuing the Bonds, fees and expenses of the Fiscal Agent, Paying Agents, consultants, financing charges, taxes or other governmental charges lawfully assessed during construction, claims arising in connection with construction, premiums on insurance in connection with construction, premiums for bond insurance, interest rate insurance or insurance assuring availability of the amounts required to be on deposit in the Reserve Account, any amounts required to be deposited in the Reserve Account, initial set-up fees and annual fees for any Credit Facility or Liquidity Facility and tender agent fees and fees payable for remarketing Bonds supported by any Credit Facility or Liquidity Facility during such period, as may be specified in the resolution authorizing the issuance of such Series of Bonds and all other items of expense not elsewhere in this definition specified, incident to the financing or construction of any Traffic Facilities and the placing of the same in operation.

The term 'Credit Facility' shall mean an irrevocable letter of credit, policy of municipal bond insurance, guaranty, purchase agreement, credit agreement or similar facility in which the entity providing such facility irrevocably agrees to provide funds to make payment of the principal of, redemption premium, if any, and interest on Bonds.

The term 'Extendible Maturity Bonds' shall mean Bonds the maturities of which, by their terms, may be extended by and at the option of the Holders of the Bonds or the Authority.

The term 'fiscal year' shall mean the period commencing on the first day of July of any year and ending on the last day of June of the following year or any other twelve month period designated by the Authority.

The term 'Government Obligations' shall mean (i) direct obligations of, or obligations the payment of the principal of and

- 6 -

interest on which are unconditionally guaranteed by, the United
States of America; (ii) municipal obligations, the payment of the
principal of, redemption premium, if any, and interest on which are
irrevocably secured by obligations described in clause (i) above,
which obligations are not subject to redemption prior to the date
on which the proceeds attributable to the principal of the oblig-
ations are to be used and have been deposited in an escrow account
which is irrevocably pledged to the payment of the principal of,
redemption premium, if any, and interest on such municipal oblig-
ations; (iii) evidences of ownership of proportionate interests in
future interest or principal payments on obligations specified in
clauses (i) and (ii) above held by a bank (including the Fiscal
Agent) or trust company as custodian, under which the owner of said
interests is the real party in interest and has the right to pro-
ceed directly and individually against the issuer of the underlying
obligations described in said clauses (i) and (ii) and which under-
lying obligations are not available to satisfy any claim of the
custodian or any person claiming through the custodian or to whom
the custodian may be obligated; and (iv) Time Deposits.

The term 'Interest Commencement Date' shall mean, with respect
to any particular Capital Appreciation and Income Bonds, the date
specified in the resolution authorizing the issuance of such Bonds
after which interest accruing on such Bonds shall be payable on a
periodic basis prior to maturity, with the first such payment date
being the applicable Interest Payment Date immediately succeeding
such Interest Commencement Date.

The term 'Interest Payment Date' shall mean the date on which
interest on a Series of Bonds or portion thereof is scheduled to
be due and payable, as provided in the resolution authorizing the
issuance of such Series of Bonds.

The term 'Interim Bonds' shall mean any Bonds issued under
this Resolution on an interim basis which are expected to be repaid
from the proceeds of other Bonds or other indebtedness.

The term 'Investment Obligations' shall mean any of the
following, to the extent that the same is legal for the investment
of public funds under the laws of the Commonwealth:

        (i)    Government Obligations;

        (ii) obligations issued or guaranteed by any
instrumentality or agency of the United States of
America, whether now existing or hereafter organized,
including but not limited to those of the Federal
Financing Bank, Federal Home Loan Banks, the Export-
Import Bank, Government National Mortgage Association
and the Tennessee Valley Authority;

- 7 -

HTA_CONF 00016546

(iii) bankers' acceptances, certificates of deposit or time deposits of any bank or national banking association (including the Fiscal Agent), trust company or savings and loan association (including any investment in pools of such bankers acceptances, certificates of deposit or time deposits), which to the extent that such obligations are not insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation, are either (A) issued by a bank, trust company or savings and loan association having a combined capital and surplus aggregating at least $50,000,000 or (B) collateralized at all times by such securities as are described in clauses (i) or (ii) above or (iv) or (v) below, having a market value at least equal to the principal amount of such bankers acceptances, certificates of deposit or time deposits (or portion thereof not so insured); provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

(iv) obligations issued by any state or territory of the United States, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto;

(v) municipal obligations, the payment of the principal of and the interest on which is insured, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto;

(vi) any repurchase, reverse repurchase or investment agreement with any bank or trust company organized under the laws of any state of the United States or the Commonwealth of Puerto Rico or any national banking association (including the Fiscal Agent), insurance company, or government bond dealer reporting to, trading with, and recognized as a primary dealer by the Federal Reserve Bank of New York and a member of the Security Investors Protection Corporation, which agreement is secured by any one or more of the securities described in clauses (i) or (ii) above, provided that the Fiscal Agent has a perfected first security interest in the collateral and that such collateral is held free and clear of claims by third parties;

- 8 -

HTA_CONF 00016547

(vii)   commercial paper rated, or backed by a letter of credit or line of credit the issuer of which is rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto; and

(viii)   any other investment obligations, which are rated, on the date of investment therein, in one of the three highest rating categories (without regard to any gradation within such category) by both Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Corporation or any successors thereto.

The term 'Liquidity Facility' shall mean a letter of credit, line of credit, policy of municipal bond insurance, guaranty, purchase agreement or similar facility in which the provider of such facility agrees to provide funds to pay the purchase price of Put Bonds upon their tender by the Holders of Put Bonds.

The word 'Outstanding' when used with reference to the Bonds shall mean, as of any date of determination, all Bonds theretofore issued except:

(i)   Bonds theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for or after cancellation;

(ii)   Bonds which are deemed paid and no longer Outstanding as provided herein;

(iii)   Bonds in lieu of which other Bonds have been issued pursuant to the provisions hereof relating to Bonds destroyed, mutilated, stolen or lost, unless evidence satisfactory to the Fiscal Agent has been received that any such Bond is held by a bona fide purchaser;

(iv)   Bonds tendered or deemed tendered pursuant to any tender provision, as further provided in the resolution authorizing such Series of Bonds; and

(v)   for purposes of any consent or other action to be taken hereunder by the Holders of a specified percentage of principal amount of Bonds, Bonds held by or for the account of the Authority.

- 9 -

gations irrevocably set aside or deposited for such
purpose on the date of computation, such principal or
interest shall not be included in determining Principal
and Interest Requirements; provided that the above com-
putation shall be supported by a verification report
from a nationally recognized independent certified pub-
lic accountant as to the sufficiency of such moneys set
aside and projected earnings.

The term 'principal corporate trust office' or
'principal office' of the Fiscal Agent means the principal
corporate trust office of the Fiscal Agent at which, at any
particular time, its corporate trust business shall be
administered, except that with respect to presentation of
Bonds for payment or of Bonds for registration of transfer or
exchange and the location of the bond registration books, such
term shall mean the office or agency of the Fiscal Agent, if
different, at which, at any particular time, its corporate
agency business shall be conducted.

The term 'Put Bonds' shall mean Bonds which by their
terms may be tendered by and at the option of the Holder
thereof for payment prior to the stated maturity thereof.

The term 'Reserve Account Insurance Policy' shall mean
the insurance policy, surety bond or other acceptable evidence
of insurance, which policy, bond or other evidence of insur-
ance constitutes an unconditional senior obligation of the
issuer thereof.  The issuer shall be a municipal bond insurer
whose senior debt obligations, ranking pari passu with its
obligations under such policy, bond or other evidence of
insurance, are rated at the time of deposit to the credit of
the Reserve Account in any of the three highest rating cate-
gories (without regard to any gradation within any such cate-
gory) of either Moody's Investors Service, Inc. or any suc-
cessors thereto or Standard & Poor's Corporation or any suc-
cessors thereto.

The term 'Reserve Account Letter of Credit' shall mean
the irrevocable, transferable letter of credit, if any, depos-
ited to the credit of the Reserve Account in lieu of or in
partial substitution for moneys or securities on deposit
therein, which letter of credit constitutes an unconditional
senior obligation of the issuer thereof.  The issuer providing
such letter of credit shall be a banking association, bank or
trust company or branch thereof whose senior debt obligations,
ranking pari passu with its obligations under such letter of
credit, are rated at the time of deposit to the credit of the
Reserve Account in any of the three highest rating categories
(without regard to any gradation within any such category) of
either Moody's Investors Service, Inc. or any successors

- 12 -

HTA_CONF 00016549

thereto or Standard & Poor's Corporation or any successors thereto.

The term 'Reserve Requirement' shall mean the lesser of (a) the maximum Principal and Interest Requirements for any fiscal year on account of the Outstanding Bonds and (b) ten (10%) percent of the original principal amount of each Series of Bonds Outstanding.

The word 'Resolution' shall mean the Authority's Resolution No. 68-18, adopted June 13, 1968, as amended and supplemented by Resolution No. 72-08, adopted February 17, 1972 and Resolution No. 90-42, adopted October 29, 1990, together with all resolutions supplemental thereto as herein permitted.

The word 'Revenues' shall mean (a) all moneys received by the Authority on account of the gasoline tax allocated to the Authority by Act No. 75, approved June 23, 1965; (b) Toll Revenues; (c) the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the principal of and interest on Bonds or other obligations of the Authority and which are pledged by the Authority to the payment of the principal of and interest on Bonds or other obligations issued under the provisions of this Resolution; and (d) investment earnings on deposits to the credit of funds and accounts established hereunder, except for the Construction Fund.

The word 'Secretary' shall mean the Secretary of Transportation and Public Works of the Commonwealth from time to time, or such other officer or the board or body succeeding to the powers and principal functions of the Secretary of Transportation and Public Works of the Commonwealth insofar as such powers and principal functions pertain to governance of the Authority.

The term 'Serial Bonds' shall mean the Bonds of a Series designated as serial Bonds in the resolution authorizing such Bonds.

The word 'Series' shall mean all of the Bonds delivered at any one time on original issuance and pursuant to any resolution authorizing such Bonds as a separate Series of Bonds, or any Bonds thereafter delivered in lieu of or in substitution for such Bonds pursuant to Article II hereof, regardless of variations in maturity, interest rate or other provisions.

The term 'Term Bonds' shall mean the Bonds of a Series designated as term Bonds in the resolution authorizing such Bonds.

- 13 -

The term 'Time Deposits' shall mean one or more agreements with the Fiscal Agent for moneys held for the credit of any or all of the funds or accounts established hereunder to be held by the Fiscal Agent as interest-bearing time deposits or other similar arrangements; provided, however, that such Time Deposits shall be secured in the manner set forth in Section 501 of this Resolution.

The term 'Toll Revenues' shall mean the tolls or other charges, if any, imposed by the Authority for the use of any of its Traffic Facilities.

The term 'Variable Rate Bonds' shall mean Bonds issued with a variable, adjustable, convertible or similar interest rate which is not fixed in percentage at the date of issue for the term thereof, but which may or may not be convertible to a fixed interest rate for the remainder of their term.

SECTION 102.   Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.   Words defined in Section 101 hereof that appear in this Resolution in lower case form shall have the meanings ascribed to them in the definitions in Section 101 unless the context shall otherwise indicate.   The words 'Bond', 'coupon', 'Owner', 'Holder' and 'person' shall include the plural as well as the singular number unless the context shall otherwise indicate.   The word 'person' shall include corporations and associations, including public bodies, as well as natural persons, unless the context shall otherwise indicate.   The word 'Bond' or 'Bonds' and the terms 'revenue bond' or 'revenue bonds' shall mean any Bond or Bonds or all of the Bonds, as the case may be, issued under the provisions of this Resolution.   The word 'Resolution' shall include this Resolution and each resolution supplemental hereto.   The word 'hereof' shall mean of this Resolution, unless the context clearly indicates otherwise."

Section 2.   Amendment to Section 202.   The first two paragraphs of Section 202 of the Resolution are hereby changed to read as follows:

"The definitive bonds of each Series issued under the provisions of this Resolution shall be issuable as coupon bonds registrable as to both principal and interest or as registered bonds without coupons, shall be in such denominations, shall be numbered consecutively from 1 upwards as to coupon bonds and from R__-1 (inserting an identifying Series letter) upwards as to registered bonds without coupons, shall be dated, shall bear interest until their payment, which interest shall be payable at such times, and shall be stated to mature (subject to the right of prior redemption), all as

- 14 -

HTA_CONF 00016551

shall be provided in the resolution authorizing the issuance
of said Series.

Each coupon Bond shall bear interest from its date.
Registered Bonds without coupons shall be dated as provided
in the resolution authorizing the issuance of such Series of
Bonds; may bear interest, which may be fixed or variable, from
the Interest Payment Date next preceding the date on which
they are authenticated unless otherwise provided in the reso-
lution authorizing the issuance of such Series of Bonds or
unless they are authenticated upon an Interest Payment Date
in which event they shall bear interest from such Interest
Payment Date, or are authenticated before the first Interest
Payment Date, in which event they shall bear interest from the
date as of which the first issued Bonds of said Series bear
interest; provided, however, that if at the time of authenti-
cation of any registered Bond without coupons interest is in
default, such Bond shall bear interest from the date to which
interest shall have been paid; except for (i) Capital Appre-
ciation Bonds which shall bear interest as described under the
defined term Accreted Value, payable only upon redemption or
maturity thereof and (ii) Capital Appreciation and Income
Bonds which shall bear interest as described under the defined
term Appreciated Value, payable on the amount due at maturity
but only from and after the Interest Commencement Date.  The
interest rate shall not exceed the maximum legal rate per
annum, with interest on the Bonds being payable as provided
hereinbelow.  In the event that interest on registered Bonds
without coupons is not punctually paid or duly provided for
on any Interest Payment Date, such interest not so punctual-
ly paid or duly provided for shall forthwith cease to be pay-
able to the registered owner shown on the registration books
held by the Fiscal Agent at the close of business on the
Record Date preceding such Interest Payment Date and may be
paid to the person in whose name such Bonds are registered at
the close of business on a special record date for the pay-
ment of such defaulted interest to be fixed by the Fiscal
Agent, notice having been given by the Fiscal Agent to the
registered Holder not less than ten (10) days prior to such
special record date on a special payment date established by
the Fiscal Agent, or may be paid at any time in any other
lawful manner not inconsistent with the requirements of any
securities exchange on which the Bonds may be listed and upon
such notice as may be required by such exchange, or as more
fully provided for in the resolution authorizing the issuance
of the Bonds.  The above procedure for the payment of overdue
interest may be varied in resolutions authorizing the issu-
ance of specific Series of Bonds, which resolutions may pro-
vide for the payment of such interest at defaulted interest
rates."

- 15 -

HTA_CONF 00016552

(b)   a copy, certified by the Secretary of the Authority, of the resolution of the Authority directing the authentication, if applicable, of such Bonds, specifying the interest rate or interest rate modes of each such Bond, and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

(c)   a certificate dated the date of original issuance of such Bonds, signed by the Executive Director, setting forth

(i)   the amount of the Revenues for any twelve (12) consecutive calendar months out of the fifteen (15) calendar months immediately preceding the month in which such certificate is signed;

(ii) the amount of the Toll Revenues for the twelve (12) calendar months for which the Revenues are shown in item (i) of this clause (c);

(iii) the difference between the amounts set forth in items (i) and (ii) of this clause (c);

(iv) the amount of the maximum Principal and Interest Requirement for any fiscal year thereafter on account of the Bonds then Outstanding and the Bonds then requested to be delivered; and

(v)   the percentage derived by dividing the amount in item (i) above by the amount shown in item (iv) above; and

(vi) the percentage derived by dividing the amount shown in item (iii) above by the amount shown in item (iv) above;

(d)   an opinion of counsel for the Authority dated the date of the original issuance of such Bonds to the effect that

(i)   the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication, if applicable, and delivery of such Bonds have been duly fulfilled;

(ii) the form and terms of such Bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

- 18 -

(iii) such Bonds, when authenticated, if applicable, and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv) the Authority has the corporate power to issue such Bonds and has duly taken all necessary corporate action with respect to such issuance;

(v) the issuance of such Bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(vi) all requirements of this Resolution applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication, if applicable, and delivery of such Bonds by the Fiscal Agent, no author- ization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the issuance, authentication, if applicable, and delivery of such Bonds pursuant to this Resolution.

When the documents mentioned above shall have been filed with the Fiscal Agent and when the Bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and, if applicable, authenticated, as required by this Resolution, the Fiscal Agent shall deliver such Bonds to or upon the order of the purchasers named in the resolution mentioned in said clause (b) upon payment to the Fiscal Agent of the purchase price of such Bonds. The Fiscal Agent shall not deliver such bonds unless the percentage men- tioned in item (v) or (vi) of the certificate mentioned in clause (c) of this Section is not less than one hundred fifty per centum (150%).

Bonds may be issued under this Section as part of a Series of Bonds which contains Bonds issued under Section 209 hereof, in which event the conditions to execution, delivery and, if applicable, authentication listed above shall pertain

- 19 -

only to the portion of the Series of Bonds issued for the purposes described in this Section.

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the Bonds."

**Section 5.** Amendment to Section 209. Section 209 of the Resolution is hereby deleted and replaced by the following:.

"SECTION 209. Bonds may be issued under and secured by this Resolution, subject to the conditions hereinafter provided in this Section, at any time or times, for the purpose of providing funds for refunding all or any part of the Outstanding Bonds of any one or more Series by payment at maturity or redemption at a selected redemption date or dates or combination of such payment at maturity and redemption, including the payment of any redemption premium thereon, for making a deposit to the Reserve Account and for paying any costs of issuance of such Bonds. Before any Bonds shall be issued under the provisions of this Section, the Authority shall adopt a resolution authorizing the issuance of such Bonds, fixing the amount and the details of the Bonds, and describing the Bonds to be refunded. The Bonds authorized by any such resolution shall be designated, shall be dated, shall be in such denominations, shall be numbered, shall be issued in such form, shall bear interest until their payment at any rate or rates not exceeding the maximum rate permitted by applicable law, shall be stated to mature at such time or times, shall have such Amortization Requirements (to the extent that such Bonds are term Bonds), and may be made subject to redemption, either in whole or in part, at such times and prices (subject to the provisions of Article III of this Resolution), as may be determined by resolution adopted prior to the issuance of such Bonds. Prior to the issuance of Variable Rate Bonds, the Authority shall adopt a resolution specifying, among other things, the interest rate calculation methods and any conversion features and any Credit Facility or any Liquidity Facility which may be drawn upon to make principal and interest payments on the Variable Rate Bonds. The Variable Rate Bonds may provide that the Holder of any such Bond may demand payment of principal and interest within a stated period after delivering notice to a designated agent for the Authority and providing a copy of the notice with the tender of the Variable Rate Bond to such agent. The designated agent for the Authority, in accordance with the terms of a remarketing agreement, may provide for the resale or redelivery of the Variable Rate Bonds on behalf of the Authority at a price provided for in such agreement. If the Variable Rate Bonds shall not be resold or redelivered within a stated period, the agent for the Authority may be authorized

– 20 –

HTA_CONF 00016555

to draw upon a Credit Facility or Liquidity Facility for payment of interest on and principal of such Bonds. The particular form or forms of such demand provisions, the period or periods for payment of principal and interest after delivery of notice, the appointment of the agent for the Authority, the terms and provisions for the remarketing agreement, and the terms and provisions of the Credit Facility or Liquidity Facility, including the terms of any lien on Revenues in connection with the Credit Facility or Liquidity Facility, shall be as designated by a resolution of the Authority. Prior to the issuance of Put Bonds, the Authority shall adopt a resolution which, among other terms and provisions, may provide for some of the above terms and provisions. Prior to the issuance of Extendible Maturity Bonds, the Authority shall specify by resolution the terms and conditions of the exercise by the Holders or the Authority of any option to extend the maturity of said Bonds. Prior to the issuance of Capital Appreciation Bonds and Capital Appreciation and Income Bonds, the Authority shall specify by resolution the manner in which and the period during which interest shall be deemed to accrue on such Bonds.

All Bonds issued under the provisions of this Section shall be executed substantially in the form and manner hereinabove set forth, with such changes as may be necessary or appropriate to conform to the provisions of the resolution authorizing the issuance of such Bonds, and shall be deposited with the Fiscal Agent for delivery and, if such bonds consist of registered bonds without coupons, authentication, but before any of such Bonds shall be delivered and, if applicable, authenticated, by the Fiscal Agent, there shall be filed with the Fiscal Agent the following:

     (a) a copy, certified by the Secretary of the Authority, of the resolution mentioned above;

     (b) a copy, certified by the Secretary of the Authority, of the resolution of the Authority directing the authentication, if applicable, of such Bonds, specifying the interest rate or interest rate modes of each such Bond and directing the delivery of such Bonds to or upon the order of the purchasers therein named upon payment of the purchase price therein set forth;

     (c) an opinion of counsel for the Authority dated the date of the original issuance of such Bonds to the effect that

          (i) the issuance of such Bonds has been duly authorized and that all conditions precedent to the authentication, if applicable, and delivery of such Bonds have been fulfilled;

- 21 -

HTA_CONF 00016556

(ii) the form and terms of such Bonds have been established by or pursuant to one or more resolutions adopted by the Authority, in conformity with the provisions of this Resolution;

(iii) such Bonds, when authenticated, if applicable, and delivered by the Fiscal Agent and issued by the Authority in the manner and subject to any conditions specified in such opinion of counsel, will constitute valid and legally binding obligations of the Authority, enforceable in accordance with their terms, and will be entitled to the benefits of this Resolution;

(iv) the Authority has the corporate power to issue such Bonds, and has duly taken all necessary corporate action with respect to such issuance;

(v) the issuance of such Bonds will not contravene the Enabling Act or result in any violation of any of the terms or provisions of any law or regulation or of any indenture, mortgage or other agreement by which the Authority is bound and under which long-term debt of the Authority is outstanding; and

(vi) all requirements of this Resolution applicable to the Authority in respect of the execution and delivery by the Authority of such Bonds have been complied with and that, assuming due authentication, if applicable, and delivery of such Bonds by the Fiscal Agent, no authorization, approval or consent by any regulatory or statutory or other public authority which has not been obtained is required for the issuance, authentication, if applicable, and delivery of such Bonds pursuant to this Resolution;

(d)    such documents as shall be required by counsel of recognized standing in the field of law relating to municipal bonds to show that provision has been made in accordance with the provisions of this Resolution for the payment or redemption of all the Bonds to be refunded;

(e)    a certificate dated the date of original issuance of the Bonds, signed by the Executive Director, that the sum of the net proceeds (excluding accrued interest but including any premium) of such Bonds, together with investment earnings on said proceeds,

- 22 -

other moneys to be deposited and investment earnings on said moneys, shall not be less than an amount sufficient to pay the principal of, the redemption premium, if any, and interest accrued to the payment dates on the Bonds to be refunded, and the expenses incident to such financing; and

(f)     the certificate required by Section 208(c); provided that the Authority need not deliver said certificate if the Executive Director delivers a certificate to the effect that the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the Bonds to be Outstanding after the issuance of the Bonds then requested to be delivered shall be equal to or less than the maximum Principal and Interest Requirements for any fiscal year thereafter on account of the Bonds Outstanding prior to the issuance of the Bonds then requested to be delivered.

When the documents mentioned above shall have been filed with the Fiscal Agent and when the Bonds described in the resolutions mentioned in clauses (a) and (b) of this Section shall have been executed and, if applicable, authenticated, as required by this Resolution, the Fiscal Agent shall deliver such Bonds to or upon the order of the purchasers named in the resolution mentioned in clause (b) upon payment of the purchase price of such Bonds.  If the certificate required by Section 208(c) has been filed with the Fiscal Agent, the Fiscal Agent shall not deliver such Bonds unless the percentage mentioned in either item (v) or (vi) of said certificate is not less than one hundred fifty per centum (150%).

Bonds may be issued under this Section as a part of a Series of Bonds which contains Bonds issued under Section 208 hereof, in which event the conditions to execution, delivery and, if applicable, authentication listed above shall pertain only to the portion of the Series of Bonds issued for purposes described in this Section.

The proceeds of the Bonds issued under the provisions of this Section shall be applied by the Fiscal Agent as provided in a resolution of the Authority adopted prior to the issuance of the Bonds.  Simultaneously with the delivery of the Bonds, the Fiscal Agent may withdraw from the Bond Service Account and the Redemption Account amounts theretofore deposited which are allocable to the Bonds to be refunded (including amounts transferred to the Bond Service Account from the Reserve Account due to any excess therein) and shall transfer said amounts in accordance with such resolution.

- 23 -

**Section 6.** <u>Addition of Section 215</u>.  The following Section is hereby added as Section 215 to the Resolution:

"Section 215.  The Fiscal Agent is hereby authorized to enter into agreements with The Depository Trust Company of New York and other depository trust companies, including but not limited to agreements necessary for wire transfers of interest and principal payments with respect to the Bonds, utilization of electronic book entry data received from The Depository Trust Company of New York and other depository trust companies in place of delivery of definitive Bonds and provision of notices with respect to Bonds registered in the name of The Depository Trust Company of New York and other depository trust companies (or any of their designees identified to the Fiscal Agent) by overnight delivery, courier service, telegram, telecopy or other similar means of communication.  No such agreements with The Depository Trust Company of New York and other depository trust companies may adversely affect the interests of any of the Holders of the Bonds; provided, however, that the Fiscal Agent shall not be liable with respect to any such agreements it may enter into pursuant to this Section."

**Section 7.** <u>Addition of Section 216</u>.  The following Section is hereby added as Section 216 to the Resolution:

"SECTION 216.  For purposes of determining the principal amount of a Capital Appreciation Bond or a Capital Appreciation and Income Bond for redemption or computation of the amount of Bonds held by the Holder thereof in giving to the Authority or the Fiscal Agent any notice, covenant, request or demand pursuant to this Resolution for any purpose whatsoever, the principal amount of a Capital Appreciation Bond shall be deemed to be its Accreted Value and the principal amount of a Capital Appreciation and Income Bond shall be deemed to be its Appreciated Value."

**Section 8.** <u>Amendment to Section 301</u>.  The first two paragraphs of Section 301 of the Resolution are hereby deleted and replaced by the following paragraph:

"SECTION 301.  The Bonds of each Series may be made subject to redemption, either in whole or in part and at such times and prices, as may be provided in the resolution authorizing the issuance of such Bonds.  Term Bonds shall be made subject to redemption to the extent of any Amortization Requirements therefor, as specified in the resolution authorizing the issuance of such term Bonds."

**Section 9.** <u>Amendment to Section 303</u>.  Section 303 of the Resolution is hereby deleted and replaced by the following:

- 24 -

HTA_CONF 00016559

"SECTION 303. On the date so designated for redemption, notice having been given and filed in the manner and under the conditions hereinabove provided, the Bonds or portions of registered Bonds so called for redemption shall become and be due and payable at the redemption price provided for redemption of such Bonds or portions thereof on such date, and, if sufficient moneys for payment of the redemption price and accrued interest or Sufficient Government Obligations as defined in Section 306 hereof are held by the Fiscal Agent or the Paying Agents in trust for the Holders of the Bonds or portions thereof to be redeemed, all as provided in this Resolution, interest on the Bonds or portions of Bonds so called for redemption shall cease to accrue, any coupons for interest thereon payable subsequent to the redemption date shall be void, such Bonds or portions of Bonds shall cease to be entitled to any lien, benefit or security hereunder and shall no longer be Outstanding under this Resolution, and the Holders of such Bonds or portions of Bonds shall have no rights in respect thereof except to receive payment of the redemption price thereof and accrued interest, and, to the extent provided in Section 307 hereof, to receive Bonds for any unredeemed portions of registered Bonds."

Section 10. Amendment to Section 306. Section 306 of the Resolution is hereby deleted and replaced by the following:

"SECTION 306. If (a) Bonds shall have been duly called for redemption under the provisions of this Article or irrevocable instructions have been given by the Authority to the Fiscal Agent or the Paying Agents, as applicable, to (i) call Bonds for redemption under the provisions of this Article or (ii) pay Bonds at their maturity or maturities (the Bonds described in clause (a) are herein collectively called the "Bonds to be Paid"), and (b) sufficient moneys for payment of the principal of, redemption premium, if any, and interest on the Bonds to be Paid to their redemption or maturity or Sufficient Government Obligations (as defined below) are held in separate accounts by the Fiscal Agent, the Paying Agents or other appropriate fiduciary institution acting as escrow agent solely for the Holders of the Bonds to be Paid, then, notwithstanding any other provisions herein to the contrary, the Bonds to be Paid shall not be deemed to be Outstanding under the provisions of this Resolution and shall cease to be entitled to any lien, benefit or security under this Resolution.

For purposes of this Section 306 "Sufficient Government Obligations" shall mean Government Obligations that are in such principal amounts, bear interest at such rate or rates and mature (without option of prior redemption) on such date or dates so that the proceeds to be received upon payment of such Government Obligations at their maturity and the interest

- 25 -

to be received thereon, without any reinvestment thereof, will
provide sufficient moneys on the dates required to pay the
principal of, redemption premium, if any, and the interest on
the Bonds to be Paid to the dates of their redemption or
maturity."

**Section 11. Addition to Section 401(a)**.  The following para-
graphs are hereby added as new paragraphs after paragraph (a) in
Section 401 of the Resolution:

"In the event that the Authority has issued Variable
Rate Bonds pursuant to the provisions of Sections 208 or 209
of this Resolution, Revenues shall be deposited at such addi-
tional times and amounts as established in the resolution
under which the Variable Rate Bonds are issued as necessary
to pay the interest coming due on the Variable Rate Bonds on
the next Interest Payment Date.

If the period between Interest Payment Dates will be
other than six (6) months, the period between principal
payment dates will be other than twelve (12) months, or the
period for Amortization Requirements will be other than twelve
(12) months, then such monthly deposits shall be increased or
decreased, as appropriate, in sufficient amounts to provide
the required interest amount coming due on the next Interest
Payment Date, principal amount maturing on the next principal
payment date and the amount of the next Amortization Require-
ment."

**Section 12. Addition to Section 401(c)**.  The following is
hereby added to the end of Section 401(c) of the Resolution in lieu
of the "and":

"provided, further, that notwithstanding the above, in the
event of an increase in the Reserve Requirement due to the
issuance of additional Series of Bonds, such increase may be
funded by deposits in each of five (5) years commencing in
the fiscal year in which such additional Series of Bonds is
issued, of 20% of such increase in the Reserve Requirement;
and".

**Section 13. Addition to Section 401**.  Section 401 of the
Resolution is hereby amended by inserting at the end thereof a new
paragraph, as follows:

"Notwithstanding the provisions of clause (c) above, in
lieu of any required deposit of Revenues to the credit of the
Reserve Account, or in substitution for all or a portion of
the moneys then held to the credit of the Reserve Account, the
Authority may deposit to the credit of the Reserve Account a
Reserve Account Insurance Policy or a Reserve Account Letter
of Credit for the benefit of the Holders in an amount equal

- 26 -

to the required deposit, which Reserve Account Insurance
Policy or Reserve Account Letter of Credit shall be payable
or available to be drawn upon, as the case may be (upon the
giving of notice as required thereunder), on any Interest
Payment Date on which a deficiency exists which cannot be
cured by moneys in any other fund or account held by the Fis-
cal Agent pursuant to this Resolution and available for such
purpose.  If a disbursement is made under the Reserve Account
Insurance Policy or the Reserve Account Letter of Credit, the
Authority shall be obligated either to reinstate the limits
of such Reserve Account Insurance Policy or Reserve Account
Letter of Credit following such disbursement, or to deposit
into the Reserve Account from the Revenues, funds in the
amount of the disbursement made under such Reserve Account
Insurance Policy or Reserve Account Letter of Credit, or to
undertake a combination of such alternatives."

**Section 14.  Amendment to Section 402.**  Section 402 of the
Resolution is hereby amended by inserting at the end thereof a new
paragraph, as follows:

"Notwithstanding the foregoing or any other provision
herein to the contrary, if any amount applied to the payment
of principal of and premium, if any, and interest on the Bonds
that would have been paid from the Bond Service Account or the
Redemption Account is paid instead under a Credit Facility or
a Liquidity Facility, amounts deposited in the Bond Service
Account and the Redemption Account, as applicable, and allo-
cable to such payment for said Bonds shall be paid, to the
extent required under any agreement with the issuer of the
Credit Facility or Liquidity Facility, to the issuer of the
Credit Facility or the Liquidity Facility having theretofore
made said corresponding payment. The Fiscal Agent shall esta-
blish one or more subaccounts within the Bond Service Account
and the Redemption Account, to the extent required by a reso-
lution of the Authority, to segregate amounts paid to the
issuer of a Credit Facility or a Liquidity Facility and
amounts paid from a Credit Facility or a Liquidity Facility."

**Section 15. Amendment to Section 404.**  The second paragraph
of Section 404 of the Resolution is hereby deleted and replaced by
the following:

"Any moneys in the Reserve Account in excess of the
Reserve Requirement shall, at the option and upon the written
direction of the Authority, be transferred to and deposited
to the credit of the Construction Fund, the Bond Service
Account or the Redemption Account, as the Authority shall
direct."

**Section 16. Amendment to Section 502.**  Section 502 of the
Resolution is hereby deleted and replaced by the following:

- 27 -

"SECTION 502. Moneys held for the credit of the Bond Service Account and the Redemption Account shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Government Obligations, and moneys held for the credit of the Construction Fund and the Reserve Account shall, as nearly as may be practicable, be continuously invested and reinvested at the written direction of the Authority in Investment Obligations, which Government Obligations and Investment Obligations shall mature, or which shall be subject to redemption by the holder thereof at the option of such holder, not later than the respective dates when moneys held for the credit of said Accounts and Fund will be required for the purposes intended; provided, however, that the amounts on deposit in the Reserve Account shall be invested in Investment Obligations which mature not later than the final maturity date of any Bonds Outstanding.

Obligations so purchased as an investment of moneys in said Accounts and Fund shall be deemed at all times to be a part of said Accounts and Fund, and any profit or loss realized on the sale or maturity thereof shall be credited or debited to said Accounts and Fund. The Fiscal Agent, at the written direction of the Authority, shall sell at the best price reasonably obtainable any obligations so purchased as an investment in any Fund or Account maintained by the Fiscal Agent hereunder whenever it shall be necessary to do so in order to provide moneys to meet any payments or transfers from any such Fund or Account. Neither the Fiscal Agent nor the Authority shall be liable or responsible for any loss resulting from any such investment; provided that the foregoing shall not be deemed to limit the Authority's obligation to make deposits to the credit of the Fund and Accounts otherwise required in other Sections hereof.

Investment earnings on moneys on deposit to the credit of the Construction Fund and the Bond Service Account, the Redemption Account and the Reserve Account shall be applied as follows:

    (a)   Investment earnings on moneys on deposit to the credit of the Bond Service Account, the Redemption Account and the Construction Fund shall be transferred to the credit of or retained in the Construction Fund; provided that the Authority may elect to have such investment earnings remain to the credit of the Bond Service Account or the Redemption Account to fund the next payment of principal of, Amortization Requirements for and interest on the Bonds, in which event the Authority shall receive a credit against the amounts

- 28 -

required to be deposited in either of said Accounts as
applicable; and

(b)    Investment earnings on moneys on deposit to
the credit of the Reserve Account shall be retained in
said Account at any time that the amount on deposit to
the credit of said Account is less than the Reserve
Requirement and, if moneys on deposit therein are suf-
ficient for such purposes, then such earnings shall be
withdrawn and deposited to the credit of the Construc-
tion Fund, the Bond Service Account or the Redemption
Account, as the Authority shall direct."

Section 17. Addition of Section 503. The following paragraph
is added as a new Section 503 to the Resolution:

"SECTION 503.   In computing the amount in any Fund or
Account created pursuant to the provisions of this Resolution,
obligations purchased as an investment of moneys therein shall
be valued at par if purchased at par or at amortized value if
purchased at other than par, plus, in each case, accrued
interest.   Amortized value, when used with respect to an
obligation purchased at a premium above or a discount below
par means the value as of any given time obtained by dividing
the total premium or discount at which such obligation was
purchased by the number of days remaining to maturity on such
obligation at the date of such purchase and by multiplying the
amount thus calculated by the number of days having passed
since such purchase; and (1) in the case of an obligation pur-
chased at a premium by deducting the product thus obtained
from the purchase price and (2) in the case of an obligation
purchased at a discount by adding the product thus obtained
to the purchase price. Valuation on any particular date shall
include the amount of interest then earned or accrued to such
date on any moneys or investments in such Fund or Account.
The computation of the amount held to the credit of the Fund
and Accounts created under this Resolution and the valuation
of the investments of such amount shall be performed by the
Fiscal Agent as of the close of business on the last day of
each fiscal year and at such other times as the Authority
shall request, and such computation and valuation shall not
be required to be performed at other times."

Section 18. Addition of Section 504. The following Section
is added as a new Section 504 of the Resolution:

"SECTION 504.   The Authority covenants and agrees that
so long as any Bonds remain Outstanding, to the extent per-
mitted by the Constitution and laws of the Commonwealth of
Puerto Rico, it shall comply with the requirements of the
Code, including any arbitrage rebate covenants contained in
any certificate of the Authority or any agreement entered into

- 29 -

by and between the Authority and the Fiscal Agent in connection with the issuance of any Series of Bonds, except to the extent failure so to comply would not, in the written opinion of counsel of recognized standing in the field of law relating to municipal bonds, delivered to the Fiscal Agent, result in the interest payable on such Bonds being included in gross income for Federal income tax purposes to the Holders thereof under the Code.   Notwithstanding anything to the contrary contained herein or otherwise, the Authority shall not be required to comply with the covenants herein contained to the extent that interest on any Bonds issued hereunder shall be intended by the Authority, on the date of issuance of such Bonds, to be included in gross income for Federal income tax purposes to the Holders thereof under the Code."

**Section 19.** <u>Amendment to Section 602</u>.   Section 602 of the Resolution is hereby deleted and replaced by the following:

"SECTION 602.   The Authority will not incur any indebtedness nor create or cause or suffer to be created any debt, lien, pledge, assignment, encumbrance or any other charge having a priority to or being on a parity with the lien on Revenues on the Bonds, except upon the conditions and in the manner provided herein; provided that, subject to Section 802(c) of the Resolution, as said Section may be amended from time to time, the Authority may, and is hereby permitted to, enter into agreements with issuers of Credit Facilities or Liquidity Facilities which involve liens on Revenues on a parity with, but not prior to, that of the Bonds.   Any other indebtedness incurred by the Authority after the effective date hereof under documents not in effect on the effective date hereof shall contain a statement that such indebtedness is junior, inferior and subordinate in all respects to the Bonds and agreements with issuers of Credit Facilities or Liquidity Facilities secured on a parity with the Bonds as to lien on and source and security for payment from Revenues hereunder.   For purposes of the above limitation on incurrence of indebtedness, indebtedness shall not be deemed to include contracts entered into in the ordinary course of business or agreements to repay advances received from the Federal government.   Nothing in this Resolution shall be deemed to prohibit the Authority from entering into currency swaps, interest rate swaps or from other arrangements for hedging of interest rates on any indebtedness."

**Section 20.** <u>Amendment to Section 604</u>.   Section 604 of the Resolution is hereby amended by the deletion of the second paragraph and replacement thereof with the following:

"The Authority further covenants that it will cause an annual general evaluation to be made by the Traffic Engineers of the level of maintenance of said Traffic Facilities

- 30 -

financed in whole or in part by the issuance of bonds under
the provisions of this Resolution, which Traffic Facilities
shall be, in the judgment of the Authority with the approval
of the Traffic Engineers, material to the overall system of
traffic facilities operated by the Authority, such evaluation
to be directed towards surface and shoulder conditions, condi-
tion of all structures and signs on said Traffic Facilities.
References in Section 605 to "the Traffic Facilities referred
to in Section 604" shall mean those Traffic Facilities which
are financed in whole or in part by the issuance of Bonds and
which are material, in the judgment of the Authority and the
Traffic Engineers, to the overall system of traffic facilities
operated by the Authority."

**Section 21. Addition of Section 609.**  The following paragraph
is added as a new Section 609 to the Resolution:

"SECTION 609.  If the percentage shown in item (vi) of
the certificate mentioned in clause (c) of Section 208 filed
with the Fiscal Agent in connection with the issuance of any
Series of Bonds is less than 150%, the Authority covenants
that it will not reduce the tolls or other charges imposed by
it for the use of its Traffic Facilities such that, as of the
effective date of such reduction, the amount of Revenues for
any twelve (12) consecutive calendar months out of the fifteen
(15) calendar months immediately preceding such effective
date, adjusted to reflect the Toll Revenues it would have
received, based on the volume of traffic for such twelve (12)
months, if such reduction had been in effect for such twelve
(12) months, is less than 150% of the maximum Principal and
Interest Requirements for any fiscal year thereafter on
account of all Bonds then Outstanding."

**Section 22. Amendment to Section 801.**  Section 801 of the
Resolution is hereby amended by adding after subsection (d) thereof
", or" and the following subsections (e) and (f):

"(e)   to make such changes as may be necessary to adjust
the terms hereof so as to facilitate the issuance of Variable
Rate Bonds, Capital Appreciation Bonds, Capital Appreciation
and Income Bonds, Put Bonds, Extendible Maturity Bonds,
Balloon Bonds, Interim Bonds and such other Bonds as may be
marketable from time to time; or

(f)   to make such changes (other than changes described
in clauses (a) through (e) of the proviso to the first sen-
tence of the first paragraph of Section 802 hereof) as may
evidence the right and interest herein of an issuer of a
Credit Facility or a Liquidity Facility that secures any
Series of Bonds."

- 31 -

**Section 23.** <u>Amendment to Section 901</u>.   Section 901 of the Resolution is hereby deleted and replaced by the following:

"SECTION 901.  If all the Outstanding Bonds shall have been paid or deemed to have been paid as provided below, and provision shall have been made for the payment of all other sums payable hereunder, then and in that case the right, title and interest of the Bondholders hereunder shall cease, terminate and become void, and such Bonds shall cease to be entitled to any lien, benefit or security under this Resolution; provided that until the Outstanding Bonds have been surrendered and cancelled, said Bonds shall be entitled to the benefits, <u>inter alia</u>, of Sections 205, 206 and 212 hereof and the provisions of Article VII hereof shall continue to apply. In such event, the Authority shall repeal and cancel this Resolution (except to the extent provided in the immediately preceding sentence) and may apply any surplus in the Sinking Fund and all balances remaining in any other Funds and Accounts other than moneys held for the redemption or payment of Bonds to any lawful purposes of the Authority as the Secretary shall determine.

Any Outstanding Bond shall be deemed to have been paid within the meaning and with the effect expressed in this Section 901 when the whole amount of the principal of, redemption premium, if any, and interest on such Bond shall have been paid or duly provided for and the conditions set forth in clause (c) below have been satisfied or when (a) in case such bond has been called for redemption in accordance with Article III hereof prior to its maturity or the Authority shall have given to the Fiscal Agent irrevocable instructions to give in accordance with the provisions of Section 302 hereof notice of redemption of such bond, (b) there shall have been deposited with the Fiscal Agent, or other appropriate fiduciary institution acting as escrow agent for the Holder of such Bond and other Bonds being defeased and specifically designated for the purpose of defeasance either moneys in an amount which shall be sufficient, or Sufficient Government Obligations, as defined in Section 306 hereof, to pay when due the principal of, redemption premium, if any, and interest due and to become due on such Bond on or prior to the redemption date or maturity date thereof, as the case may be, and (c) if such bond shall be a coupon bond, the Fiscal Agent shall within thirty (30) days after such moneys or Sufficient Government Obligations shall have been deposited with it cause a notice signed by the Fiscal Agent to be published once in a daily newspaper of general circulation published in San Juan, Puerto Rico, and in a daily newspaper of general circulation or a financial journal published in the Borough of Manhattan, City and State of New York, stating that, or if such bond shall be a registered bond without coupons and in the event such Bond does not mature and is not to be redeemed

- 32 -

within the next succeeding sixty (60) days, the Authority shall have given the Fiscal Agent irrevocable instructions to give, as soon as practicable, a notice to the Holder of such Bond by first-class mail, postage prepaid, stating that the deposit of moneys or Sufficient Government Obligations mentioned in clause (b) of this paragraph has been made with the Fiscal Agent or other appropriate fiduciary institution acting as escrow agent for the Holder of such Bond, and that such Bond is deemed to have been paid in accordance with this Section and stating such maturity or redemption date upon which moneys are to be available for the payment of the principal of, redemption premium, if any, and interest on such Bond.

Neither the moneys nor Sufficient Government Obligations deposited with the Fiscal Agent or other appropriate fiduciary institution acting as escrow agent pursuant to this Section nor principal or interest payments on any such obligations shall be withdrawn or used for any purpose other than, and shall be held in trust for, the payment of the principal of, redemption premium, if any, and interest on such Bonds.

As to Variable Rate Bonds, the amount required for the interest thereon shall be calculated at the maximum rate permitted by the terms of the provisions of the resolution which authorized the issuance of such Variable Rate Bonds.

Notwithstanding any of the provisions of this Resolution to the contrary, Put Bonds and Extendible Maturity Bonds may only be fully discharged and satisfied either by paying the principal of and interest on said Bonds as they become due and payable or by depositing moneys which shall be sufficient at the time of such deposit to pay when due the maximum amount of principal of, redemption premium, if any, and interest on such Put Bonds and Extendible Maturity Bonds which could become payable to the Holders of such Bonds upon the exercise of any options provided to the Holders of such Bonds and the Authority; provided, however, that if, at the time a deposit is made pursuant to this Section, the options originally exercisable on the Put Bonds and Extendible Maturity Bonds are no longer exercisable, such Bonds shall not be considered Put Bonds or Extendible Maturity Bonds for purposes of this Section.

If any portion of the moneys deposited for the payment of the principal of, redemption premium, if any, and interest on any portion of Bonds is not required for such purpose, the Authority may use the amount of such excess, subject to Section 504 hereof, free and clear of any trust, lien, security interest, pledge or assignment securing said Bonds or otherwise existing under this Resolution."

- 33 -

Section 24. <u>Fiscal Agent Not Responsible for Recitals, etc.</u>
The recitals, statements and representations contained herein shall
be taken and construed as made by and on the part of the Authority
and not by the Fiscal Agent, and the Fiscal Agent assumes and shall
be under no responsibility for the correctness of the same.

Section 25. <u>Effective Date</u>.   The provisions of this Second
Supplemental Resolution shall become effective immediately upon
its passage.

- 34 -

RESOLUTION NO. 93-25


A SUPPLEMENTAL RESOLUTION AMENDING CERTAIN
PROVISIONS OF RESOLUTION NO. 68-18 ADOPTED BY
PUERTO RICO HIGHWAY AUTHORITY (NOW PUERTO
RICO HIGHWAY AND TRANSPORTATION AUTHORITY) ON
JUNE 13, 1968, AS AMENDED.


WHEREAS, Puerto Rico Highway and Transportation

Authority (herein sometimes called the "Authority"), adopted on

June 13, 1968, Resolution No. 68-18 (hereinafter with all

supplemental resolutions thereto being called the "Resolution"),

authorizing the issuance of bonds of the Authority for the

purpose of providing funds for the payment of the cost of Traffic

Facilities as defined in the Resolution; and

WHEREAS, Section 801 of the Resolution provides that

the Authority may adopt supplemental resolutions to cure any

ambiguity or formal defect or omission or to correct any

inconsistent provisions or errors in the Resolution or to add to

the conditions, limitations and restrictions on the issuance of

bonds under the Resolution other conditions, limitations and

restrictions thereafter to be observed, or to add to the

covenants and agreements other covenants and agreements

thereafter to be observed by the Authority; now, therefore,

BE IT RESOLVED, by Puerto Rico Highway and

Transportation Authority:


-1-

Section 1:  In Section 101 in the definition of
Principal and Interest Requirements clause (a) of the third
paragraph is revised to read as follows:

> "(a)    in the case of Variable Rate Bonds,
> the interest rate thereon shall be assumed to
> be the greater of (A) one hundred ten percent
> (110%) of the average interest rate on such
> Variable Rate Bonds during the twelve months
> ending with the month preceding the date of
> calculation or such shorter period that such
> Variable Rate Bonds shall have been
> Outstanding, (B) the actual rate of interest
> on such Variable Rate Bonds on the date of
> calculation and (C) the lesser of the maximum
> rate then permitted by law and the maximum
> rate permitted on such Variable Rate Bonds by
> the resolution authorizing the issuance
> thereof;"

Section 2:  In Section 101 the definition of Reserve
Requirement is revised to be read as follows:

> "The term 'Reserve Requirement' shall mean the
> lesser of (a) the maximum Principal and Interest
> Requirements for any fiscal year on account of the
> Outstanding Bonds and (b) ten percent (10%) of the
> proceeds of each Series of Bonds Outstanding determined
> on the basis of their initial offering prices to the
> public."

Section 3:  In Section 101 the definition of Revenues
is revised to read as follows:

> The word 'Revenues' shall mean (a) all moneys received
> by the Authority on account of gasoline tax allocated
> to the Authority by Act No. 75, approved June 23, 1965;
> (b) Toll Revenues; (c) the proceeds of any other taxes,
> fees or charges which the Legislature of Puerto Rico
> has allocated or may hereafter allocate to the
> Authority and expressly authorize the Authority to
> pledge to the payment of the principal of and interest
> on Bonds or other obligations of the Authority and
> which are pledged by the Authority to the payment of
> the principal and interest on Bonds or other
> obligations issued under the provisions of this
> Resolution; provided that written notice of such pledge
> has been delivered to Standard & Poor's Corporation,
> Moody's Investors Service, Inc. and any other rating

-2-

HTA_CONF 00016571

agency then rating the bonds; and (d) investment earnings on deposit to the credit of the funds and accounts established hereunder, except for the Construction Fund."

Section 4:  In Section 101 the following definition is added immediately after the definition of "Sinking Fund":

"The term 'SWAP agreement' shall mean an agreement between the Authority and a second party whereby such second party agrees to pay the Authority amounts calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and payable in consideration of the Authority's payment to such second party of amounts set forth in the SWAP agreement."

Section 5:  In Section 401 the first clause of the first sentence of the third paragraph is revised to read as follows:

"The Authority covenants that all of the Revenues (other than investment earnings on deposits to the credit of funds and accounts established hereunder),"

Section 6:  Section 401(c) is revised to read as follows:

"(c) to the credit of the Reserve Account, such amount as is required to make the amount deposited to the credit of said Account in the then current fiscal year at least equal to twenty per centum (20%)  of the Reserve Requirement; provided, however, that no such deposit under this clause (c) shall be made in any month if the amount then to credit of the Reserve Account shall be equal to the Reserve Requirement or in excess of such amount as may be required to make the amount then to credit the Reserve Account equal to the Reserve Requirement; provided, further, that notwithstanding the above, in the event of an increase in the Reserve Requirement due to the issuance of additional Series of Bonds, such increase may be funded by deposits in each of five (5) years commencing in the fiscal year in which such additional

-3-

HTA_CONF 00016572

Series of Bonds is issued, of 20% of such
increase in the Reserve Requirements, and"

Section 7:  The following is inserted immediately after
Section 609.

"Section 610.  The Authority hereby covenants
that it will not enter into a SWAP agreement
unless it first delivers copies of the
proposed SWAP agreement to Standard and
Poor's Corporation, Moody's Investor's
Service, Inc. and any other rating agency
then rating the bonds."

The Fiscal Agent is hereby requested pursuant to
Section 801 of Resolution No. 68-18 to cause a notice of this
Supplemental Resolution to be mailed in the form and to the
persons specified in said Section 801.  This Supplemental
Resolution shall become effective 30 days after the giving of
such notice.

-4-

HTA_CONF 00016573

RESOLUTION NO. 93 - 30

A RESOLUTION SUPPLEMENTING RESOLUTION NO. 68-
18 OF PUERTO RICO HIGHWAY AND TRANSPORTATION
AUTHORITY, AS SUPPLEMENTED.

WHEREAS, Puerto Rico Highway and Transportation Authority
(the "Authority") adopted Resolution No. 68-18 on June 13, 1968,
as supplemented (the "Resolution"), authorizing the issuance of
bonds of the Authority for the purpose of providing funds for the
payment of the cost of Traffic Facilities as defined in the
Resolution; and

WHEREAS, Section 802 of the Resolution provides that the
Authority may, with the consent of the holders of not less than
two-thirds (2/3) in aggregate principal amount of the bonds then
outstanding, adopt such resolutions supplemental thereto as shall
be deemed necessary or desirable by the Authority for the purpose
of modifying, altering, amending, adding to or rescinding, in any
particular, certain terms or provisions contained in the
Resolution (which supplemental resolutions shall thereafter form
a part of the Resolution); and

WHEREAS, the Authority has determined that it is desirable
to modify certain provisions of the Resolution as hereinafter
described; and

WHEREAS, The Chase Manhattan Bank (National Association), as
Fiscal Agent under the Resolution (the "Fiscal Agent"), has (i)
caused notice of the proposed adoption of this supplemental
resolution to be given as required under the Resolution and (ii)
received a certificate signed by the Executive Director of the
Authority that the holders of not less than two-thirds in
aggregate principal amount of the bonds outstanding have
specifically consented to and approved the adoption of this
supplemental resolution; now, therefore,

BE IT RESOLVED BY PUERTO RICO HIGHWAY AND TRANSPORTATION
AUTHORITY as follows:

Section 1:    The Resolution is hereby amended in the
following respects:

A.    In Section 101 in the definition of Principal and
Interest Requirements clause (a) of the third paragraph is
revised to read as follows:

-1-

HTA_CONF 00016574

"(a)    in the case of Variable Rate Bonds, the interest rate thereon shall be assumed to be the greater of (A) one hundred ten percent (110%) of the average interest rate on such Variable Rate Bonds during the twelve months ending with the month preceding the date of calculation or such shorter period that such Variable Rate Bonds shall have been Outstanding, (B) the actual rate of interest on such Variable Rate Bonds on the date of calculation and (C) the lesser of the maximum rate then permitted by law and the maximum rate permitted on such Variable Rate Bonds by the resolution authorizing the issuance thereof; provided, however, that if the Authority has notified the Fiscal Agent that a SWAP agreement is in effect in respect of Variable Rate Bonds, then for all purposes of this paragraph the interest rate on such Variable Rate Bonds shall be the SWAP rate under such SWAP agreement."

B.    Section 101 is hereby supplemented by the addition of the following definitions after the definition of "Sinking Fund":

"The term 'SWAP agreement' shall mean an agreement between the Authority and a SWAP party whereby the SWAP party agrees to pay to the Authority amounts calculated on the basis of all or a portion of the interest on Variable Rate Bonds at or prior to the times such interest is due and payable in consideration of the Authority's payment to the SWAP party of amounts set forth in the SWAP agreement.

"The term 'SWAP party' shall mean a person who is party to a SWAP agreement and whose senior obligations are rated at the time of the execution and delivery of such SWAP agreement in one of the three highest rating categories (without regard to gradations within a category) by (i) Standard & Poor's Corporation or its successor and (ii) Moody's Investors Service, Inc. or its successor.

-2-

"The term 'SWAP rate' shall mean the fixed rate per
annum on the principal amount of Variable Rate Bonds
covered by a SWAP agreement equal to the percentage
derived by dividing (i) the sum of the amounts in the
last twelve months paid by the Authority in respect of
interest on such bonds and to the SWAP party less the
amount paid to the Authority by the SWAP party by (ii)
such principal amount of Variable Rate Bonds; provided,
however, that if such SWAP agreement has been in effect
for less than twelve months, such percentage shall be
multiplied by 360 divided by the number of days between
the effective date of such SWAP agreement and the date
of calculation determined on the basis of 30-day month;
provided, further, that if no amount has been paid
under the SWAP agreement, the SWAP rate shall be deemed
to be the fixed rate per annum contracted to be paid by
the Authority to the SWAP party."

     Section 2.  The provisions of this resolution shall become
effective immediately upon its adoption.

-3-

**EXHIBIT C**

<u>Financing Statements</u>

(Attached)

US_ACTIVE-139680931.5-RSAINVIL

REGISTRO DE
TRANSACCIONES COMERCIAL

2014002566

2018 MAY 16   AM 10: 49

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Cadwalader, Wickersham & Taft LLP
Attention: Lary Stromfeld
One World Financial Center
New York, NY  10281

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Holders of all Bonds issued under the 1968 Resolution (as defined below) | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| One World Financial Center | New York | | NY | 10281 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

Pursuant to that certain Resolution 68-18 adopted on June 13, 1968 (the "1968 Resolution"), all of the Debtor's right, title, and interest in and to "Revenues," which include, without limitation, (i) all moneys received by the Debtor on account of gasoline tax allocated to the Debtor by Act No. 75 of 1965; (ii) tolls or charges imposed by the Debtor for the use of any of the Debtor's traffic facilities, including, without limitation, (a) all highway, road, thoroughfare, speedway, bridge, and tunnel toll facilities, and (b) all parking lots and similar facilities; (iii) proceeds of any other taxes, fees, or charges which the Legislature has allocated to the Debtor and for which the Debtor is expressly authorized to pledge to the repayment of the Bonds; and (iv) funds and accounts pledged as security for Bonds and investment earnings therein.   Capitalized terms used herein and not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) | | being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☑ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility | | ☐ Agricultural Lien   ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor | | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)



## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read and follow all Instructions, especially Instruction 1; use of the correct name for the Debtor is crucial.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. The filing office cannot give legal advice.

Send completed form and any attachments to the filing office, with the required fee.

### ITEM INSTRUCTIONS

A and B.   To assist filing offices that might wish to communicate with filer, filer may provide information in item A and item B. These items are optional.

C.   Complete item C if filer desires an acknowledgment sent to them. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form the Acknowledgment Copy or a carbon or other copy of this form for use as an acknowledgment copy.

1.   **Debtor's name.** Carefully review applicable statutory guidance about providing the debtor's name. Enter only one Debtor name in item 1 — either an organization's name (1a) or an individual's name (1b). If any part of the Individual Debtor's name will not fit in line 1b, check the box in item 1, leave all of item 1 blank, check the box in item 9 of the Financing Statement Addendum (Form UCC1Ad) and enter the Individual Debtor name in item 10 of the Financing Statement Addendum (Form UCC1Ad).  Enter Debtor's correct name.  Do not abbreviate words that are not already abbreviated in the Debtor's name.  If a portion of the Debtor's name consists of only an initial or an abbreviation rather than a full word, enter only the abbreviation or the initial.  If the collateral is held in a trust and the Debtor name is the name of the trust, enter trust name in the Organization's Name box in item 1a.

1a.   Organization Debtor Name.  "Organization Name" means the name of an entity that is not a natural person.  A sole proprietorship is **not an** organization, even if the individual proprietor does business under a trade name.  If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed public organic records to determine Debtor's correct name.  Trade name is insufficient.  If a corporate ending (e.g., corporation, limited partnership, limited liability company) is part of the Debtor's name, it must be included.  Do not use words that are not part of the Debtor's name.

1b.   Individual Debtor Name.  "Individual Name" means the name of a natural person; this includes the name of an individual doing business as a sole proprietorship, whether or not operating under a trade name.  The term includes the name of a decedent where collateral is being administered by a personal representative of the decedent.  The term does not include the name of an entity, even if it contains, as part of the entity's name, the name of an individual.  Prefixes (e.g., Mr., Mrs., Ms.) and titles (e.g., M.D.) are generally not part of an individual name.  Indications of lineage (e.g., Jr., Sr., III) generally are not part of the individual's name, but may be entered in the Suffix box.  Enter individual Debtor's surname (family name) in individual's Surname box, first personal name in First Personal Name box, and all additional names in Additional Name(s)/Initial(s) box.

If a Debtor's name consists of only a single word, enter that word in individual's Surname box and leave other boxes blank.

For both organization and individual Debtors.  Do not use Debtor's trade name, DBA, AKA, FKA, division name, etc. in place of or combined with Debtor's correct name; filer may add such other names as additional Debtors if desired (but this is neither required nor recommended).

1c.   Enter a mailing address for the Debtor named in item 1a or 1b.

2.   **Additional Debtor's name.** If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. For additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3.   **Secured Party's name.** Enter name and mailing address for Secured Party or Assignee who will be the Secured Party of record. For additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP). If there has been a full assignment of the initial Secured Party's right to be Secured Party of record before filing this form, either (1) enter Assignor Secured Party's name and mailing address in item 3 of this form and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Assignee's name and mailing address in item 3 of this form and, if desired, also attach Addendum (Form UCC1Ad) giving Assignor Secured Party's name and mailing address in item 11.

4.   **Collateral.** Use item 4 to indicate the collateral covered by this financing statement. If space in item 4 is insufficient, continue the collateral description in item 12 of the Addendum (Form UCC1Ad) or attach additional page(s) and incorporate by reference in item 12 (e.g., See Exhibit A). Do not include social security numbers or other personally identifiable information.

Note:   If this financing statement covers timber to be cut, covers as-extracted collateral, and/or is filed as a fixture filing, attach Addendum (Form UCC1Ad) and complete the required information in items 13, 14, 15, and 16.

5.   If collateral is held in a trust or being administered by a decedent's personal representative, check the appropriate box in item 5. If more than one Debtor has an interest in the described collateral and the check box does not apply to the interest of all Debtors, the filer should consider filing a separate Financing Statement (Form UCC1) for each Debtor.

6a.   If this financing statement relates to a Public-Finance Transaction, Manufactured-Home Transaction, or a Debtor is a Transmitting Utility, check the appropriate box in item 6a.  If a Debtor is a Transmitting Utility and the initial financing statement is filed in connection with a Public-Finance Transaction or Manufactured-Home Transaction, check only that a Debtor is a Transmitting Utility.

6b.   If this is an Agricultural Lien (as defined in applicable state's enactment of the Uniform Commercial Code) or if this is not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 6b and attach any other items required under other law.

7.   **Alternative Designation.** If filer desires (at filer's option) to use the designations lessee and lessor, consignee and consignor, seller and buyer (such as in the case of the sale of a payment intangible, promissory note, account or chattel paper), bailee and bailor, or licensee and licensor instead of Debtor and Secured Party, check the appropriate box in item 7.

8.   **Optional Filer Reference Data.** This item is optional and is for filer's use only.  For filer's convenience of reference, filer may enter in item 8 any identifying information that filer may find useful.  Do not include social security numbers or other personally identifiable information.

REGISTRO DE
TRANSACCIONES COMERCIALES

2014002568

2014 MAY 16  AM 10: 48

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

> Cadwalader, Wickersham & Taft LLP
> Attention: Lary Stromfeld
> One World Financial Center
> New York, NY  10281

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | | |
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS  Minillas Government Center, South Building | CITY  San Juan | STATE  PR | POSTAL CODE  00921 | COUNTRY  USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR  2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Assured for the benefit of Holders of all Bonds under the 1968 Resolution (as defined below) | | | | |
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS  31 W. 52nd St., #26 | CITY  New York | STATE  NY | POSTAL CODE  10019 | COUNTRY  USA |

4. COLLATERAL: This financing statement covers the following collateral:

Pursuant to that certain Resolution 69-18 adopted on June 13, 1968 (the "1968 Resolution"), all of the Debtor's right, title, and interest in and to "Revenues," which include, without limitation, (i) all moneys received by the Debtor on account of gasoline tax allocated to the Debtor by Act No. 75 of 1965; (ii) tolls or charges imposed by the Debtor for the use of any of the Debtor's traffic facilities, including, without limitation, (a) all highway, road, thoroughfare, speedway, bridge, and tunnel toll facilities, and (b) all parking lots and similar facilities; (iii) proceeds of any other taxes, fees, or charges which the Legislature has allocated to the Debtor and for which the Debtor is expressly authorized to pledge to the repayment of the Bonds; and (iv) funds and accounts pledged as security for Bonds and investment earnings therein.  "Assured" means Assured Guaranty Corp. and Assured Municipal Corp. (formerly known as Financial Security Assurance Inc.).  Capitalized terms used herein and not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☑ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY --- UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read and follow all Instructions, especially Instruction 1; use of the correct name for the Debtor is crucial.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. The filing office cannot give legal advice.

Send completed form and any attachments to the filing office, with the required fee.

**ITEM INSTRUCTIONS**

A and B. To assist filing offices that might wish to communicate with filer, filer may provide information in Item A and Item B. These Items are optional.

C.   Complete Item C if filer desires an acknowledgment sent to them. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form the Acknowledgment Copy or a carbon or other copy of this form for use as an acknowledgment copy.

1.   **Debtor's name.** Carefully review applicable statutory guidance about providing the debtor's name. Enter only one Debtor name in Item 1 — either an organization's name (1a) or an individual's name (1b). If any part of the Individual Debtor's name will not fit in line 1b, check the box in Item 1, leave all of Item 1 blank, check the box in Item 9 of the Financing Statement Addendum (Form UCC1Ad) and enter the Individual Debtor name in Item 10 of the Financing Statement Addendum (Form UCC1Ad). Enter Debtor's correct name. Do not abbreviate words that are not already abbreviated in the Debtor's name. If a portion of the Debtor's name consists of only an initial or an abbreviation rather than a full word, enter only the abbreviation or the initial. If the collateral is held in a trust and the Debtor name is the name of the trust, enter trust name in the Organization's Name box in Item 1a.

1a.  Organization Debtor Name. "Organization Name" means the name of an entity that is not a natural person. A sole proprietorship is **not** an organization, even if the individual proprietor does business under a trade name. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed public organic records to determine Debtor's correct name. Trade name is insufficient. If a corporate ending (e.g., corporation, limited partnership, limited liability company) is part of the Debtor's name, it must be included. Do not use words that are not part of the Debtor's name.

1b.  Individual Debtor Name. "Individual Name" means the name of a natural person; this includes the name of an individual doing business as a sole proprietorship, whether or not operating under a trade name. The term includes the name of a decedent where collateral is being administered by a personal representative of the decedent. The term does not include the name of an entity, even if it contains, as part of the entity's name, the name of an individual. Prefixes (e.g., Mr., Mrs., Ms.) and titles (e.g., M.D.) are generally not part of an individual name. Indications of lineage (e.g., Jr., Sr., III) generally are not part of the individual's name, but may be entered in the Suffix box. Enter Individual Debtor's surname (family name) in Individual's Surname box, first personal name in First Personal Name box, and all additional names in Additional Name(s)/Initial(s) box.

     If a Debtor's name consists of only a single word, enter that word in Individual's Surname box and leave other boxes blank.

     For both organization and individual Debtors. Do not use Debtor's trade name, DBA, AKA, FKA, division name, etc. in place of or combined with Debtor's correct name; filer may add such other names as additional Debtors if desired (but this is neither required nor recommended).

1c.  Enter a mailing address for the Debtor named in Item 1a or 1b.

2.   **Additional Debtor's name.** If an additional Debtor is included, complete Item 2, determined and formatted per Instruction 1. For additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3.   **Secured Party's name.** Enter name and mailing address for Secured Party or Assignee who will be the Secured Party of record. For additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP). If there has been a full assignment of the initial Secured Party's right to be Secured Party of record before filing this form, either (1) enter Assignor Secured Party's name and mailing address in Item 3 of this form and file an Amendment (Form UCC3) [see Item 5 of that form]; or (2) enter Assignee's name and mailing address in Item 3 of this form and, if desired, also attach Addendum (Form UCC1Ad) giving Assignor Secured Party's name and mailing address in Item 11.

4.   **Collateral.** Use Item 4 to indicate the collateral covered by this financing statement. If space in Item 4 is insufficient, continue the collateral description in Item 12 of the Addendum (Form UCC1Ad) or attach additional page(s) and incorporate by reference in Item 12 (e.g., See Exhibit A). Do not include social security numbers or other personally identifiable information.

*Note:* If this financing statement covers timber to be cut, covers as-extracted collateral, and/or is filed as a fixture filing, attach Addendum (Form UCC1Ad) and complete the required information in Items 13, 14, 15, and 16.

5.   If collateral is held in a trust or being administered by a decedent's personal representative, check the appropriate box in Item 5. If more than one Debtor has an interest in the described collateral and the check box does not apply to the interest of all Debtors, the filer should consider filing a separate Financing Statement (Form UCC1) for each Debtor.

6a.  If this financing statement relates to a Public-Finance Transaction, Manufactured-Home Transaction, or a Debtor is a Transmitting Utility, check the appropriate box in Item 6a. If a Debtor is a Transmitting Utility and the initial financing statement is filed in connection with a Public-Finance Transaction or Manufactured-Home Transaction, check only that a Debtor is a Transmitting Utility.

6b.  If this is an Agricultural Lien (as defined in applicable state's enactment of the Uniform Commercial Code) or if this is not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in Item 6b and attach any other items required under other law.

7.   **Alternative Designation.** If filer desires (at filer's option) to use the designations lessee and lessor, consignee and consignor, seller and buyer (such as in the case of the sale of a payment intangible, promissory note, account or chattel paper), bailee and bailor, or licensee and licensor instead of Debtor and Secured Party, check the appropriate box in Item 7.

8.   **Optional Filer Reference Data.** This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in Item 8 any identifying information that filer may find useful. Do not include social security numbers or other personally identifiable information.

HTA_CONF 00016581





ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMENTO DE EST

Registro de Transacciones Comerciales

2014003807

14 AUG -4 AM 11: 53

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*

SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO: (Name and Address)*

Arent Fox LLP
Attention: David Dubrow
1675 Broadway
New York, NY 10019

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí ☐ y provea la información del Deudor individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority ("Debtor") | | | | |
| OR 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO /*SUFFIX* |
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |
| Minillas Government Center, South Building, Floor 17 | San Juan | PR | 00940 | USA |

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el 2b, deje toda la sección 2 en blanco, marque aquí ☐ y provea la información del Deudor completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| OR 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO /*SUFFIX* |
| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
   *SECURED PARTY'S NAME (or NAME of ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

| 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Ambac Assurance Corporation ("Ambac") for benefit of holders of all bonds ("1968 Resolution Bonds") Issued under Resolution 68-18. | | | | |
| OR 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO /*SUFFIX* |
| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS COUNTRY |
| One State Street Plaza | New York | NY | 10004 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

All of the Debtor's rights, title, and interest in and to (i) all moneys on account of gasoline tax received by, or allocated to, the Debtor pursuant to Act No. 75 of 1965, as amended; (ii) all moneys on account of tax on gas oil and diesel oil received by, or allocated to, the Debtor pursuant to Act No. 120 of 1994, as amended; (iii) all moneys on account of motor vehicle license fees received by, or allocated to, the Debtor pursuant to Act No. 141 of 1960, as amended; (iv) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (v) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1968 Resolution Bonds and investment earnings therein; and (vii) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and authorize the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque solo si aplica y solo una opción: Colateral está ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) ☐ administrado por Representante de un difunto | Check *only if applicable and check only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* ☑ Transacción de Financiamiento Público / *Public-Finance Transaction* ☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction* ☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | 6b. Marque *solo* si aplica y solo una alternativa / *Check only if applicable and check only one box:* ☐ Gravamen Agrícola / *Agricultural Lien* ☐ Inscripción extraregistral / *Non-UCC Filing* |
| 7. DESIGNACIÓN ALTERNA (si aplica) / *ALTERNATIVE DESIGNATION (if applicable):* ☐ Arrendador/Arrendatario *Lessee/Lessor* ☐ Consignatario/ Consignador *Consignee/Consignor* ☐ Vendedor/ Comprador *Seller/Buyer* ☐ Depositario/ Fiador *Bailee/Bailor* ☐ Concesionario/Concedente *Licensee/Licensor* | |
| 8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:* | |

COPIA OFICINA DE REGISTRO—DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)



ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMENTO DE ESTADO

Registro de Transacciones Comercial                    2014003808



14 AUG -4 AM 11: 54

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

| A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)* |
|---|

| B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)* |
|---|

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO:  (Name and Address)*

> Arent Fox LLP
> Attention: David Dubrow
> 1675 Broadway
> New York, NY 10019

**EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO**
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí☐ y provea la información del Deudor Individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here* ☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| | 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | | |
|---|---|---|---|---|---|---|
| OR | Puerto Rico Highway and Transportation Authority | | | | | |
| | 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO /*SUFFIX* |

| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL* CODE | PAÍS COUNTRY |
|---|---|---|---|---|
| Minillas Government Center, South Building, Floor 17 | San Juan | PR | 00940 | USA |

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea sólo un Deudor adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el espacio provisto en la 2b, deje toda la sección 2 en blanco, marque aquí☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here* ☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| | 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | | |
|---|---|---|---|---|---|---|
| OR | | | | | | |
| | 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO *SUFFIX* |

| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL* CODE | PAÍS COUNTRY |
|---|---|---|---|---|

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea sólo un nombre de Acreedor Garantizado (3a o 3b)
   *SECURED PARTY'S NAME (or NAME of ASSIGNEE): Provide only one Secured Party name (3a or 3b)*

| | 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | | |
|---|---|---|---|---|---|---|
| OR | Holders of all bonds ("1968 Resolution Bonds") Issued under Resolution 68-18. | | | | | |
| | 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO *SUFFIX* |

| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL* CODE | PAÍS COUNTRY |
|---|---|---|---|---|
| 1675 Broadway, 34th Floor | New York | NY | 10019 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*
All of the Debtor's rights, title, and interest in and to (i) all moneys on account of gasoline tax received by, or allocated to, the Debtor pursuant to Act No. 75 of 1965, as amended; (ii) all moneys on account of tax on gas oil and diesel oil received by, or allocated to, the Debtor pursuant to Act No. 120 of 1994, as amended; (iii) all moneys on account of motor vehicle license fees received by, or allocated to, the Debtor pursuant to Act No. 141 of 1960, as amended; (iv) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (v) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1968 Resolution Bonds and investment earnings therein; and (vii) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated o may hereafter allocate to the Authority and authorize the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque solo si aplica y solo una opción: Colateral esté ☐ en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e Instrucciones) ☐ administrado por Representante de un difunto | Check *only* if applicable and check *only* one box: Collateral is ☐ held in a Trust (See UCC1AdPR, Item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* | 6b. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:* |
|---|---|
| ☑ Transacción de Financiamiento Público / *Public-Finance Transaction*    ☐ Transacción de Casa Prefabricada / *Manufactured-Home Transaction*    ☐ Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | ☐ Gravamen Agrícola / *Agricultural Lien*    ☐ Inscripción extraregistral / *Non-UCC Filing* |

| SIGNACIÓN ALTERNA (si aplica): TIVE DESIGNATION (if applicable): | ☐ Arrendador/Arrendatario /*Lessee/Lessor* | ☐ Consignatario/ Consignador /*Consignee/Consignor* | ☐ Vendedor/ Comprador /*Seller/Buyer* | ☐ Depositario/ Fiador /*Bailee/Bailor* | ☐ Concesionario/Concedente /*Licensee/Licensor* |
|---|---|---|---|---|---|

| PCIONALES DE REFERENCIA PARA EL / *OPTIONAL FILER REFERENCE DATA:* |
|---|

A DE REGISTRO—DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)

HTA_CONF 00016583

# ReedSmith

**Jared S. Roach**
Direct Phone: +1 412 288 3277
Email: jroach@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Tel +1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

May 23, 2018

**VIA UPS OVERNIGHT MAIL**

Commonwealth of Puerto Rico Claims
Processing Center
c/o Prime Clerk LLC
850 Third Avenue, Suite 412
New York, NY 11232

**Re:** **In re The Commonwealth of Puerto Rico,**
**Case No. 17-bk-03283-LTS (D. P.R.)**

**In re Puerto Rico Highways and Transportation Authority,**
**Case No. 17-bk-03567-LTS (D.P.R.)**

Dear Sir or Madam:

Enclosed for filing, please find the original Proofs of Claim submitted by The Bank of New York Mellon, as Fiscal Agent. I have also enclosed copies of the Proof of Claim form and related Addenda. Please return a time-stamped copy of the Proof of Claim form and related Addenda in the self-addressed stamped envelope.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

REED SMITH LLP

By:

Jared S. Roach

JSR:as

Enclosures

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-140711482.1-RSAINVIL 05/23/2018 12:02 PM

RECEIVED

MAY 2 4 2018

PRIME CLERK LLC

Jared S. Roach

**ReedSmith**

Driving progress
through partnership

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222

011800/600318/60175

To Be Filed in the
Commonwealth's Title III Case

HTA_CONF 00016585

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| PVA INTERACTIVE | THE UPS STORE | WALTMIRE PHARMACY |
| 2004 SMALLMAN ST | 1735 E CARSON ST | 1435 SPRING GARDEN AVE |
| PITTSBURGH ,PA 15222 | PITTSBURGH ,PA 15203 | PITTSBURGH ,PA 15212 |

FOLD HERE



HTA_CONF 00016586