# Debtor's Ex. 43

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | | |
|---|---|---|---|
| ☐ | Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ | Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☑ | Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ | Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ | Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

**RECEIVED**

**JUN 2 6 2018**

**PRIME CLERK LLC**

170328380020362

Debtor [DebtorName] has listed your claim in their Creditor List in Schedule [CreditorList] as a [CUD] claim in an $[ScheduleAmount] amount. You must timely file a proof of claim or be forever barred from participating or sharing in any distribution or being treated as a claim for purposes of voting or distribution.

El deudor [DebtorName] ha listado su reclamación en la lista de acreedores en el Schedule [CreditorList] como un reclamo [CUD] por un monto de $ [ScheduleAmount]. Debe presentar una prueba de reclamación oportunamente o se le prohibirá por siempre participar o compartir en cualquier distribución o ser tratado como un reclamo para fines de votación o distribución.

## Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

☑ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☐ No Copy Provided

**Part 1 / Parte 1**   Identify the Claim / Identificar la reclamación

1. **Who is the current creditor?**

   **¿Quién es el acreedor actual?**

   Peaje Investments LLC

   Name of the current creditor (the person or entity to be paid for this claim)
   Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

   Other names the creditor used with the debtor    N/A
   Otros nombres que el acreedor usó con el deudor

**Claim Number: 102929**

HTA_CONF 00016803

**2. Has this claim been acquired from someone else?**

¿Esta reclamación se ha adquirido de otra persona?

☐ No / No
☑ Yes. From whom?
Sí. ¿De quién?   See attachment

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g

**Where should notices to the creditor be sent?**
¿A dónde deberían enviar las notificaciones al acreedor?

c/o Allan S. Brilliant
Name / Nombre

Dechert LLP, 1095 Avenue of the Americas
Number / Número     Street / Calle

New York | NY | 10036-6797
City / Ciudad   State / Estado   ZIP Code / Código postal

(212) 698-3600
Contact phone / Teléfono de contacto

allan.brilliant@dechert.com
Contact email / Correo electrónico de contacto

**Where should payments to the creditor be sent?**
(if different)
¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente)

Peaje Investments LLC
Name / Nombre

c/o Cogency Global, Inc., 850 New Burton Road, Suite 201
Number / Número     Street / Calle

Dover | DE | 19904
City / Ciudad   State / Estado   ZIP Code / Código postal

(800) 483-1140
Contact phone / Teléfono de contacto

peajeinfo@dechert.com
Contact email / Correo electrónico de contacto

**4. Does this claim amend one already filed?**

¿Esta reclamación es una enmienda de otra presentada anteriormente?

☑ No / No
☐ Yes.  Claim number on court claims registry (if known)
Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)
Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA)

**5. Do you know if anyone else has filed a proof of claim for this claim?**

¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación?

☑ No / No
☐ Yes. Who made the earlier filing?
Sí.  ¿Quién hizo la reclamación anterior?

---

**Part 2 / Parte 2:**   Give Information About the Claim as of the Petition Date

Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

**6. Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**

¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico?

☑ No / No
☐ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)
Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).

**7. Do you supply goods and / or services to the government?**

¿Proporciona bienes y / o servicios al gobierno?

☑ No / No
☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:

Vendor / Contract Number | Número de proveedor / contrato: _____

List any amounts due after the Petition Date (listed above) but before June 30, 2017:
Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $_____

---

HTA_CONF 00016804

**8. How much is the claim?**

¿Cuál es el importe de la reclamación?

$ See attachment

**Does this amount include interest or other charges?**
¿Este importe incluye intereses u otros cargos?

☐ No / No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).
Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A).

**9. What is the basis of the claim?**

¿Cuál es el fundamento de la reclamación?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

Claimant owns outstanding bonds issued by PRHTA under its enabling act (Act No. 74 of June 23, 1965, as amended) and Resolution No. 68-18 (see attachment for additional information)

**10. Is all or part of the claim secured?**

¿La reclamación está garantizada de manera total o parcial?

☐ No / No

☑ Yes. The claim is secured by a lien on property.
Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

**Nature of property / Naturaleza del bien:**
☐ Motor vehicle / Vehículos

☑ Other. Describe:
Otro. Describir: see attachment

**Basis for perfection / Fundamento de la realización de pasos adicionales:** see attachment

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)

**Value of property / Valor del bien:** $ Not less than the amount of Peaje's claim

**Amount of the claim that is secured /**
**Importe de la reclamación que está garantizado:** $ 100% of the claim

**Amount of the claim that is unsecured /**
**Importe de la reclamación que no está garantizado:** $ N/A
(The sum of the secured and unsecured amounts should match the amount in line 7.)
(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

**Amount necessary to cure any default as of the Petition Date /** See attachment
**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :** $

**Annual Interest Rate** (on the Petition Date)
**Tasa de interés anual** (cuando se presentó el caso) ___%
☐ Fixed / Fija
☐ Variable / Variable

(nominal interest rates differ based on the series of bonds; see attachment)

**11. Is this claim based on a lease?**

¿Esta reclamación está basada en un arrendamiento?

☑ No / No

☐ Yes. **Amount necessary to cure any default as of the Petition Date.**
Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso $

HTA_CONF 00016805

**12. Is this claim subject to a right of setoff?**

¿La reclamación está sujeta a un derecho de compensación?

☑ No / No

☐ Yes. Identify the property / 
Sí. Identifique el bien: ___

**13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**

¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?

☑ No / No

☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**

$ ___

Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.

---

## Part 3 / Parte 3:

**Sign Below / Firmar a continuación**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☐ I am the creditor. / Soy el acreedor.

☑ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___6/25/18___ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma ___

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

| Name | Allan | S. | Brilliant |
|------|-------|-----|-----------|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

Title / Cargo: **Partner**

Company / Compañía: **Dechert LLP**

Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección: **1095 Avenue of the Americas**
Number / Número   Street / Calle

| New York | NY | 10036-6797 |
|----------|-----|-----------|
| City / Ciudad | State / Estado | ZIP Code / Código postal |

Contact phone / Teléfono de contacto **212-698-3600**   Email / Correo electrónico **allan.brilliant@dechert.com**

HTA_CONF 00016806

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                              12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

## How to fill out this form

- **Fill in all of the information about the claim as of the petition date.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.** Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

   Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child (John Doe, parent, 123 Main St., City, State).* See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form or contact the Claims and Noticing Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), or by email at puertoricoinfo@primeclerk.com. You may view a list of filed claims in the Title III cases by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/puertorico.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the petition date, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the petition date. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy or confidential information. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

**Do not file these instructions with your form**

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**If by overnight courier or hand delivery:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

HTA_CONF 00016808

# Instrucciones para la Evidencia de reclamación

Tribunal de Quiebras de los Estados Unidos                                                                                                    12/15

**Estas instrucciones y definiciones explican la ley de forma general. En ciertas circunstancias, tales como casos de quiebra que los deudores no presentan de forma voluntaria, se pueden aplicar excepciones a estas normas generales. Debe considerar la posibilidad de obtener el asesoramiento de un abogado, en especial si no conoce el proceso de quiebra y las reglamentaciones de privacidad.**

## Cómo completar este formulario

- **Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

- **Complete el título en la parte superior del formulario.**

- **Si la reclamación se ha adquirido de otra persona, indique la identidad de la última parte** que fue propietaria de la reclamación o fue titular de la reclamación y que la transfirió a usted antes de que se presente la reclamación inicial.

- **Adjunte cualquier documento de respaldo a este formulario.**
  Adjunte copias editadas de cualquier documento que demuestre que la deuda existe, que un gravamen garantiza la deuda, o ambos. (Ver la definición de *edición* en la siguiente página).

  También adjunte copias editadas de cualquier documento que demuestre el perfeccionamiento de un derecho de garantía o cualquier cesión o transferencia de la deuda. Además de los documentos, puede agregarse un resumen. Norma federal del procedimiento de quiebra (denominada "Norma de quiebra") 3001(c) y (d).

- **No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de examinarlos.**

- **Si la reclamación se basa en la prestación de bienes o servicios de atención médica, no divulgue información de atención médica confidencial. Omita o edite la información confidencial tanto en la reclamación como en los documentos adjuntos.**

- **El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo el año de la fecha de nacimiento de una persona.** Ver la Norma de quiebra 9037.

- **En el caso de un menor, complete solamente las iniciales del menor y el nombre completo y la dirección del padre o madre o el tutor del menor.** Por ejemplo, escriba *A.B., un menor* (*John Doe, padre, calle 123, ciudad, estado*). Ver la Norma de quiebra 9037.

## Confirmación de que se ha presentado la reclamación

Para recibir una confirmación de que se ha presentado la reclamación, puede adjuntar un sobre autodirigido y estampillado y una copia de este formulario o comunicarse con el representante de reclamaciones y notificaciones al (844) 822-9231 (número gratuito para EE. UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), o por correo electrónico a puertoricoinfo@primeclerk.com. Para ver una lista de las reclamaciones presentadas en los casos del Título III, visite el sitio web del representante de reclamaciones y notificaciones en https://cases.primeclerk.com/puertorico.

## Comprenda los términos utilizados en este formulario

**Gastos administrativos:** En términos generales, gastos que se generan luego de presentar un caso de quiebra en relación con el manejo, la liquidación o la distribución del patrimonio de la quiebra.

Título 11 § 503 del Código de los Estados Unidos (U.S.C.).

**Reclamación:** El derecho de un acreedor a recibir un pago por una deuda del deudor a la fecha en la que el deudor solicitó la quiebra. Título 11 §101 (5) del U.S.C. Una reclamación puede estar garantizada o no garantizada.

**Reclamación de conformidad con el Título 11 § 503(b)(9) del U.S.C.:** Una reclamación que surge del valor de cualquier bien recibido por el Deudor dentro de los 20 días anteriores a la fecha en la que se presentó el caso , en el que los bienes se han vendido al Deudor en el transcurso normal de los negocios del Deudor. Adjunte la documentación que respalde dicha reclamación.

**Acreedor:** Una persona, una sociedad anónima u otra entidad con la que el deudor tiene una deuda que se contrajo en la fecha en la que el deudor solicitó la quiebra o con anterioridad. Título 11 § 101 (10) del U.S.C.

**Deudor:** Una persona, una sociedad anónima u otra entidad que está en quiebra. Utilice el nombre del deudor y el número de caso tal como se muestran en el aviso de quiebra que recibió. Título 11 § 101 (13) del U.S.C.

**Prueba de pasos adicionales:** La prueba de la realización de pasos adicionales para hacer valer un derecho de garantía puede incluir documentos que demuestren que se ha presentado o registrado un derecho de garantía, tal como una hipoteca, un derecho de retención, un certificado de propiedad o una declaración de financiamiento.

**Información que debe mantenerse en privado:** El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo las iniciales del nombre de un menor y el año de la fecha de nacimiento de una persona. Si una reclamación se basa en la prestación de bienes o servicios de atención médica, limite la divulgación de los bienes o servicios a fin de evitar la incomodidad a la divulgación de información de atención médica confidencial. Es posible que, más adelante, se le solicite que brinde más información si el síndico u otra persona de interés se opone a la reclamación.

**Evidencia de reclamación:** Un formulario que detalla el monto de la deuda que el deudor mantiene con un acreedor a la fecha de la presentación. El formulario debe ser presentado en el distrito donde el caso se encuentra pendiente de resolución.

**Edición de información:** Ocultamiento, corrección, o eliminación de cierta información para proteger la privacidad o la información confidencial. Quienes presenten la documentación deben editar u omitir información sujeta a **privacidad** en el formulario de *Evidencia de reclamación* y en cualquier documento adjunto.

**Reclamación garantizada en virtud el Título 11 § 506(a) del U.S.C.:** Una reclamación respaldada por un derecho de retención sobre un bien en particular del deudor. Una reclamación está garantizada en la medida que un acreedor tenga el derecho a recibir un pago proveniente del bien antes de que se les pague a otros acreedores. El monto de una reclamación garantizada generalmente no puede ser mayor que el valor del bien en particular sobre el cual el acreedor mantiene un derecho de retención. Cualquier monto adeudado a un acreedor que sea mayor que el valor del bien generalmente se lo considera una reclamación no garantizada. Sin embargo, existen excepciones; por ejemplo, el Título 11 § 1322(b) del U.S.C., y la oración final de § 1325(a).

Algunos ejemplos de derechos de retención sobre bienes incluyen una hipoteca sobre un inmueble u derecho de garantía sobre un automóvil. Un derecho de retención puede ser otorgado de manera voluntaria por un deudor o puede obtenerse a través de un procedimiento judicial. En algunos estados, una resolución judicial puede ser un derecho de retención.

**Compensación:** Ocurre cuando un acreedor se paga a sí mismo con dinero que pertenece al deudor y que mantiene en su poder, o cuando el acreedor cancela una deuda que mantiene con el deudor.

**Reclamación no garantizada:** Una reclamación que no cumple con los requisitos de una reclamación garantizada. Una reclamación puede no estar garantizada en parte en la medida que el monto de la reclamación sea mayor que el valor del bien sobre la cual un acreedor tiene un derecho de retención.

## Ofrecimiento de compra de una reclamación

Algunas entidades compran reclamaciones por un monto menor que su valor nominal. Estas entidades pueden contactar a acreedores para ofrecerles la compra de sus reclamaciones. Algunas comunicaciones por escrito de estas entidades pueden confundirse fácilmente con documentación judicial oficial o con comunicaciones del deudor. Estas entidades no representan al tribunal de quiebras, al síndico de la quiebra, ni al deudor. Un acreedor no tiene obligación alguna de vender su reclamación. Sin embargo, si decide hacerlo, cualquier transferencia de esa reclamación está sujeta a la Norma de Quiebras 3001(e), a las correspondientes disposiciones del Código de Quiebras (Título 11 § 101 y subsiguientes del U.S.C.) y a cualquier resolución del tribunal de quiebras que corresponda al caso.

## Envíe la(s) Evidencia(s) de reclamación completa(s) a:

**Si por correo de primera clase:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**Si por el mensajero de una noche o la entrega de mensajero a mano:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

**No presente estas instrucciones con su formulario**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | |
| as representative of | ) | |
| | ) | |
| PUERTO RICO HIGHWAYS & | ) | No. 17 BK 3567-LTS |
| TRANSPORTATION AUTHORITY, | ) | |
| | ) | |
| Debtor. | ) | |

**ATTACHMENT TO SECURED PROOF OF
CLAIM OF PEAJE INVESTMENTS LLC**

1.       Peaje Investments LLC ("Peaje") files this proof of claim (the proof of claim form together with this attachment are referred to herein as the "Claim") in the above-captioned case of the Puerto Rico Highway & Transportation Authority ("HTA")[1] on account of Peaje's ownership of $71.95 million principal face amount of bonds that HTA issued under its enabling act (Act No. 74 of June 23, 1965, as amended) (the "Enabling Act" or the "Act") and a regulatory resolution HTA enacted in 1968 (Resolution 68-18, as amended) (the "68 Resolution", and the bonds issued thereunder, the "68 Bonds").  Peaje also owns bonds that HTA issued under a separate resolution HTA enacted in 1998 (the "98 Resolution", and the bonds issued thereunder, the "98 Bonds").[2] In accordance with the Court's *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (available at [ECF No. 2521] in Case No. 17 BK 3283-LTS), Peaje has filed an additional proof of claim against the

---

[1] HTA's case was commenced under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. 114-187 ("PROMESA").

[2] The 68 and 98 Resolutions are publicly available and can be found at: http://www.gdb.pr.gov/investors_resources/puerto-rico-transportation-highway.html

Commonwealth of Puerto Rico (the "Commonwealth") on account of its ownership of the 68 Bonds, as well as separate proofs of claim on account of its 98 Bond ownership. In support of this Claim, Peaje represents as follows:

## BASIS FOR CLAIM

### I.  Issuance of the Bonds.

2.  HTA is a public corporation and government instrumentality of the Commonwealth created to assume responsibility for the construction, operation, and maintenance of highways and other mass transportation systems in Puerto Rico. *See* 9 L.P.R.A. § 2002. To finance these activities, the Enabling Act authorized HTA to access the capital markets and conferred on HTA the power to issue bonds. *See* 9 L.P.R.A. § 2004(g), (h), (l).

3.  Over the years, HTA issued several series of bonds under the 68 Resolution and, as noted, a different resolution executed in 1998, the 98 Resolution. A total of approximately $4.2 billion in principal amount of these bonds remain outstanding, apportioned between the 68 Bonds and 98 Bonds as follows:

|  | 68 Bonds | 98 Bonds | All HTA Bonds |
|---|---|---|---|
| Aggregate Principal Amount Issued and Outstanding | $830 million | $3.37 billion | $4.2 billion |

4.  At present, Peaje owns $71.95 million principal face amount of the 68 Bonds, consisting of 68 Bonds in the following series and carrying nominal rates of interest as follows:

| CUSIP | Description | Face Amount ($USD) | Coupon | Accrued Claim as of the Filing of HTA's Title III Petition ($USD) |
|---|---|---|---|---|
| 745181C88 | PRHTA HIGHWAY (RES 68-18) 5.25% 7/1/36 | $80,000 | 5.25% | $81,611 |

2

HTA_CONF 00016812

| 745181B48 | PRHTA HIGHWAY (RES 68-18) 0% 7/1/23 | $109,899 | ("zero coupon bond") | $109,899 |
|---|---|---|---|---|
| 745181B89 | PRHTA HIGHWAY (RES 68-18) 0% 7/1/27 | $14,276,700 | ("zero coupon bond") | $14,276,700 |
| 745181XR3 | PRHTA HIGHWAY (RES 68-18) 5% 7/1/28 | $1,223,014 | 5.00% | $1,223,014 |
| 745181XS1 | PRHTA HIGHWAY (RES 68-18) 5% 7/1/35 | $1,233,205 | 5.00% | $1,233,205 |
| 745181K97 | PRHTA HIGHWAY (RES 68-18) 5.3% 7/1/35 | $34,385,079 | 5.30% | $34,385,079 |
| 745181B97 | PRHTA HIGHWAY (RES 68-18) 5.5% 7/1/28 | $837,299 | 5.50% | $837,299 |
| 745181C21 | PRHTA HIGHWAY (RES 68-18) 5.5% 7/1/29 | $5,105,479 | 5.50% | $5,105,479 |
| 745181C39 | PRHTA HIGHWAY (RES 68-18) 5.5% 7/1/30 | $6,315,478 | 5.50% | $6,315,478 |
| 745181C47 | PRHTA HIGHWAY (RES 68-18) 5.5% 7/1/31 | $954,725 | 5.50% | $954,725 |

As previously disclosed to HTA and the Commonwealth, funds managed by an affiliate of Peaje purchased certain of these 68 Bonds beginning in 2013 in open market transactions and transferred them to Peaje, a special purpose entity that such affiliate formed to hold HTA-issued Bonds. The remainder of such 68 Bonds were purchased by Peaje in open market transactions. Of the $71.95 million principal face amount of 68 Bonds that Peaje owns, $71.87 million are uninsured. The remaining $80,000 are guaranteed by a third-party monoline insurer. As mentioned, Peaje also owns 98 Bonds and has submitted separate proofs of claim on account of these holdings. The amount of the 68 Bonds owned by Peaje may change due to trading of the 68 Bonds. This Claim is submitted with respect to the amount of the 68 Bonds that Peaje owns at any given time, including any Bonds acquired after submission of this Claim. Peaje reserves its right to supplement this Claim with updated amounts from time to time, but does not undertake any obligation to do so.

3

HTA_CONF 00016813

## II.     Security.

### a.     68 Bond Collateral.

5.      Under Puerto Rico law, the 68 Bonds are secured by a valid, enforceable, first-

priority pledge of and lien on:

(a)     the stream of current and future tolls and other charges derived from HTA's
operation of specific highways, thoroughfares, and speedways located in the
Commonwealth, including PR-20, PR-52, and PR-53 (the "68 Toll
Revenues");

(b)     the current and future proceeds of certain excise taxes and vehicle license
fees imposed by the Commonwealth and allocated to HTA by statute (the
"68 Tax Revenues"); and

(c)     funds held in, and investment earnings on, deposits to the credit of certain
funds and accounts established under the 68 Resolution (clauses (a)-(c),
collectively, the "68 Revenues").

*See* 68 Resolution §§ 401, 406, 407, 501, 601, 602; 9 L.P.R.A. §§ 2004(l), 2012(c), 2015.

6.      Among other things, the Enabling Act expressly directs that any bonds issued by

HTA "shall be valid and binding," and that all bonds bearing the recital that they are issued under

the Act (which the 68 Bonds recite) "shall be conclusively deemed to be valid and to have been

issued in conformity with the provisions of this [Act]." *Id.* § 2012(c).  The Enabling Act directs

further that the 68 Bonds are non-recourse in nature, meaning that they may be paid only from the

collateral securing them: "nor shall such bonds or the interest thereon be payable out of funds other

than those pledged for the payment of such bonds…." *Id.* § 2015.  Regarding enforceability, the

Enabling Act authorizes bondholders to bring suit to enforce their rights. *Id.* § 2013.

7.      Following Section 2015 of the Enabling Act, the 68 Resolution grants a lien on the

68 Toll Revenues and the 68 Tax Revenues to secure payment of the 68 Bonds: "the principal,

interest and premiums are payable solely from Revenues and from any funds received by [HTA]

for that purpose from the Commonwealth *which Revenues and funds are hereby pledged to the*

4

HTA_CONF 00016814

*payment thereof*…." 68 Resolution § 601 (emphasis added).[3] The 68 Resolution defines the term "Revenues" to include "Toll Revenues," and "Toll Revenues" to mean "the tolls or other charges…imposed by [HTA] for the use of any of its Traffic Facilities." 68 Resolution § 101. "Revenues" is also defined to include the "Tax Revenues," specifically "all moneys received by the Authority on account of gasoline tax allocated to the Authority by Act No. 75, approved June 23, 1965," as well as "the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the…Bonds…and which are pledged by the Authority to the payment of the…Bonds…." *Id.*

8.     The 68 Resolution repeatedly refers to the pledge under Section 601 as a "lien on Revenues," and establishes both the perfection and priority of this lien, directing that HTA "will not incur any indebtedness nor create nor cause or suffer to be created any debt, lien, pledge, assignment, encumbrance or any other charge having a priority to or being on a parity with the lien on Revenues…[,]" except in certain situations not relevant here. 68 Resolution § 602; *see also* 68 Resolution §§ 802 (prohibiting HTA from creating "a lien upon or a pledge of Revenues other than the lien and pledge created by this Resolution"), 409 (referring to "all bonds secured hereby").[4]

---

[3] In revenue bond financings, a "pledge" means a lien on the project or tax revenues to secure payment of the bonds.

[4] By prohibiting any other person from having a lien on the 68 Toll Revenues and/or 68 Tax Revenues superior to the lien of the 68 Bondholders, Section 602 further establishes the priority of Peaje's lien. Section 602 also establishes the perfected status of Peaje's lien. The concept of perfection simply tests whether a secured creditor has an interest superior to that of a subsequent judgment lien creditor or bona fide purchaser under applicable state law. Under Section 602, HTA is prohibited from incurring any obligation "having a priority to or being on parity with the lien on Revenues on the Bonds…." 68 Resolution § 602. Given that no other creditor (or purchaser) may hold a lien superior to that of the 68 Bondholders, the perfection requirement is satisfied. Alternatively, the lien is perfected under Puerto Rico's version of Article 9 by virtue of various filed financing statements. As mentioned, the Enabling Act also grants the 68 Bondholders various means to enforce their rights, including the

HTA_CONF 00016815

9.      To ensure that the 68 Bonds are paid, the 68 Resolution requires HTA to deposit the 68 Toll Revenues and the 68 Tax Revenues with a fiscal agent—presently the Bank of New York Mellon (the "Fiscal Agent").  *See* 68 Resolution § 401.  The 68 Resolution provides that the Fiscal Agent holds these funds "in trust" and subject to "a lien and charge in favor of the holders of the bonds issued and outstanding under this Resolution and for the further security of such holders…."  *Id.*; *see also* 68 Resolution § 409 (directing that the funds are not subject to any other lien).  In this way, the Enabling Act and 68 Resolution establish that Peaje's lien attaches on the stream of revenues itself, *see* 68 Resolution § 601, and on the proceeds deposited with the Fiscal Agent, *see* 68 Resolution § 401.

10.     The 68 Resolution further establishes that the 68 Bondholders' lien in these funds is a "gross" lien, directing that HTA must first deposit sufficient funds into the 68 Bondholders' collateral account to meet all debt service and reserve requirements ***before*** HTA may spend the funds elsewhere.  *See* 68 Resolution §§ 401, 405.  The Commonwealth, in turn, is required by statute to transfer the 68 Tax Revenues to HTA to fund HTA's operations and further secure the 68 Bonds. *See, e.g.*, 13 L.P.R.A. § 31751(a)(1)(B) (pledge of excise taxes); 9 L.P.R.A. §§ 2021, 5681 (pledge of vehicle license fees).   Separately, the Commonwealth agreed to fund the maintenance, repair, and operation of the roads.  *See* 68 Resolution § 604.  Notably, the grant of Peaje's lien rights predate, among other things, the enactment of PROMESA and the various laws passed by the Commonwealth in the wake of its fiscal crisis—*e.g.*, the "Moratorium Act," the Puerto Rico Financial Emergency and Fiscal Responsibility Act of 2017, and the Fiscal Plan Compliance Law (P. de la C. 938)—and Peaje's lien rights are constitutionally protected with respect to legislation enacted after such grant.

---

remedy of mandamus.  *See* 9 L.P.R.A. § 2013.

HTA_CONF 00016816

11.     Numerous public documents confirm that Peaje's lien extends to the ongoing stream of current and future 68 Toll Revenues and 68 Tax Revenues, including, without limitation, the following documents:

(a)     Official Statement for Issuance of Series AA Bonds, dated June 17, 2010 (the "Series AA Offering Statement") (providing that the 68 Bonds are secured by a pledge of and lien on, among other collateral, the 68 Toll Revenues and 68 Tax Revenues);

(b)     Official Statement for Issuance of Series CC Bonds, dated Feb. 15, 2007 (the "Series CC Offering Statement") (same);

(c)     UCC-1 financing statements (the "UCC-1 Statements") (indicating that the 68 Bondholders' collateral includes the 68 Toll Revenues and 68 Tax Revenues), attached hereto as **Exhibit A**; and

(d)     Audited Financial Statements for HTA, FY 2014 and 2013 (stating that "[t]he bonds are secured by a pledge of," among other collateral, "the gross receipts of the gasoline excise taxes and one half of the diesel oil excise taxes,…$15 per vehicle per year from motor vehicle license fees,…[and] proceeds of any tolls or other charges which the Authority may impose for the use of any of its traffic facilities….").[5]

12.     As noted, HTA made numerous representations to potential investors that the 68 Bonds are in fact secured. *See* Series AA Offering Statement, pp. 14, 25; Series CC Offering Statement, pp. 28, 39.   These representations were a material inducement to Peaje and other investors in deciding whether to purchase the 68 Bonds.  In addition, the Commonwealth and HTA admitted the existence of Peaje's lien in earlier proceedings concerning the 68 Bonds.  Specifically, the Commonwealth and HTA represented to the U.S. Court of Appeals for the First Circuit that the 68 Bonds are "secured by a pledge of revenues generated by highway tolls, excise taxes on gasoline, vehicle license fees, and investment earnings."  *See* Respondents-Appellees Br. at *10,

---

[5] Due to the voluminous nature of these documents, all of which are publicly available and are, or should be, in the Commonwealth's and HTA's possession, custody, or control, Peaje has not annexed the documents to this Claim. The aforementioned documents will be provided to any party in interest upon reasonable request.

7

*Peaje Investments LLC v. Alejandro Garcia-Padilla*, No. 16-2377 (1st Cir. Dec. 23, 2016),

*available at*: 2016 WL 7438090.  Moreover, Judge Besosa of this Court and the Court of Appeals

found that such a lien exists.  In a published decision, Judge Besosa found that:

> …Peaje Investments **continues to hold a security interest in a**
> **stable, recurring source of income** that will eventually provide
> funds for the repayment of the PRHTA bonds.  Though it will not
> receive the **pledged revenues** during the stay period, this enduring
> security interest means that it faces only a delay in recouping such
> funds, not a permanent loss of them.  The Court believes that the
> **existence of this continuing lien on a perpetual source of revenue**
> satisfies the "flexible" standard applicable to determinations of
> adequate protection….

*Peaje Investments LLC v. García-Padilla*, No. 16-02365, 2016 U.S. Dist. LEXIS 153711, at \*23

(D.P.R. Nov. 2, 2016) (emphasis added).  The Court of Appeals likewise found that "[t]he bonds

are secured by a lien on toll revenues, among other things."  *Peaje Investments LLC v. García-*

*Padilla*, 845 F.3d 505, 510 (1st Cir. 2017).

13.     During an evidentiary hearing held before this Court in connection with the current

Title III proceedings, witnesses for the Commonwealth and HTA also admitted that the 68 Bonds

are in fact secured.  On cross-examination by Peaje's counsel, Sergio Gonzalez, HTA's Executive

Director for nearly a decade and a current HTA consultant, admitted that "highway revenue bonds"

are to be paid with the gross revenues of highway tolls and that his understanding was based upon

"financial conditions **and statutes of the authority** at the time."  Tr. of Aug. 8, 2017 Hr'g 88:8-

89:16, *Peaje Investments LLC v. Puerto Rico Highways & Transportation Authority*, Adv. Proc.

No. 17-151-LTS in 17 BK 3567-LTS (D.P.R.) (emphasis added).  As Executive Director, Gonzalez

signed offering documents for the 68 Bonds.  These documents provided that:

> …debt service on the Authority's revenue bonds constitute a first
> lien on its gross revenues, which consist of all the proceeds of the
> gasoline tax, one half of the proceeds of the tax on gas, oil, or diesel
> oil, highway toll revenues and the gross receipts of 15 dollars per

8

vehicle per year from certain motor vehicle license fees.

*Id.* 93:4-12.  Gonzalez conceded that this statement was accurate and that the "principal and interest on the 1968 bonds had to be paid first with the toll revenues before any other expenses of the HTA could be paid with the toll revenues." *Id.* 93:4-12, 94:7-13.  Similarly, Andrew Wolfe, a consultant for the Financial Oversight and Management Board for Puerto Rico and "an author of the model of the [Commonwealth fiscal] plan," testified that the 68 Toll Revenues were "pledged revenue to these bonds…." *Id.* 131:24-25, 151:15-20.  The Commonwealth and HTA are bound by these admissions and findings.

**b.      98 Bond Collateral.**

14.      The 98 Bonds, on the other hand, are secured by: (a) a separate stream of toll revenues derived from the operation of highway PR-66; (b) the proceeds of certain taxes, fees, and deposits (which are distinct from the taxes, fees, and investment earnings assigned to the 68 Bonds); and (c) any 68 Revenues remaining on deposit after payment or provision for the payment of debt service and required reserves on outstanding 68 Bonds.  *See* 98 Resolution §§ 401, 501, 601; 9 L.P.R.A. § 2004(l).  In this way, the 68 Bondholders enjoy priority of payment from the 68 Revenues (including the 68 Toll Revenues and 68 Tax Revenues) ahead of, among other persons, the 98 Bondholders.

**c.      Waterfall Payment Protocol.**

15.      As noted, the 68 Resolution explicitly requires HTA to deposit the 68 Toll Revenues and 68 Tax Revenues on a monthly basis with the Fiscal Agent acting for the 68 Bonds. *See* 68 Resolution § 401.  In addition, the 98 Resolution contains similar provisions requiring HTA to deposit the 68 Toll Revenues, 68 Tax Revenues, and other pledged revenues with the Fiscal Agent for the benefit of the 68 and 98 Bondholders.  *See* 98 Resolution § 401.  Once received, the

9

Fiscal Agent is required to allocate these funds between certain designated accounts based on a

"waterfall" payment protocol established pursuant to the 68 and 98 Resolutions. *See* 68 Resolution

§ 401; 98 Resolution § 401.  This protocol may be depicted graphically as follows:



10

HTA_CONF 00016820

16.     This arrangement prioritizes distributions of the funds beginning with the highest priority category at the top of the waterfall and descending to the lowest priority category at the bottom.  Moneys deposited in the first three accounts under the waterfall provision—which serve as the 68 Bondholders' collateral account and are often referred to collectively as the "68 Sinking Fund"—are held in trust for, and are subject to a lien and charge in favor of, the 68 Bondholders until disbursed by the Fiscal Agent to those holders in accordance with the 68 and 98 Resolutions. *See* 68 Resolution §§ 401, 406, 501.  With respect to the 68 Bonds, the waterfall operates in such a manner as to ensure that by the semi-annual debt service dates (January and July), sufficient funds are on deposit in the 68 Bondholders' collateral account to cover the entire interest payment, and by the annual principal payment date (July), the full principal installment is also available to be paid.  In addition, HTA is required to maintain a consistent collateral reserve in the "68 Reserve Account" (depicted above) equal to the lesser of: (a) the maximum principal and interest requirements for any fiscal year on account of the outstanding 68 Bonds; and (b) 10% of the proceeds of each series of 68 Bonds outstanding, as determined on the basis of those bonds' initial offering prices to the public. *See* 68 Resolution § 101 (definition of "Reserve Requirement").

17.     Together, these protections are designed to ensure that the Fiscal Agent steadily accumulates enough funds to make principal and interest payments to the 68 Bondholders in advance of the relevant due dates, and to provide a suitable reserve to cover shortfalls to the extent ordinary collections of the 68 Toll Revenues, the 68 Tax Revenues, and other pledged revenues are insufficient to fund the payments.  Aside from its obligation to deposit the 68 Toll Revenues, the 68 Tax Revenues, and other pledged revenues with the Fiscal Agent, HTA covenanted in the 68 Resolution that "it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution at the places, on the dates and in the manner provided

11

herein…."   68 Resolution § 601.   Furthermore, HTA covenanted that it "will not incur any

indebtedness nor create or cause or suffer to be created any debt, lien, pledge, assignment,

encumbrance or any other charge having a priority to or being on a parity with the lien on Revenues

on the Bonds, except upon the conditions and in the manner provided herein…." 68 Resolution §

602.

## III.   Priority Under Puerto Rico Law.

18.   The Commonwealth's ability to alter the payment rights of the 68 Bonds is carefully

circumscribed under Puerto Rico law.   The Constitution of Puerto Rico provides that the

Commonwealth may divert or otherwise retain "available resources" for payment of the "public

debt" (namely, the Commonwealth's general obligation bonds), but only in a limited set of

circumstances.   Section 8 of Article VI of the Constitution of Puerto Rico provides:

> In case the available resources including surplus for any fiscal year
> are insufficient to meet the appropriations made for that year,
> interest on the public debt and amortization thereof shall first be
> paid, and other disbursements shall thereafter be made in accordance
> with the order of priorities established by law.

*See* P.R. Const. art. VI, § 8.

19.   Under the Constitution and statutes of Puerto Rico, the 68 Toll Revenues and

investment earnings pledged to payment of the 68 Bonds cannot be reallocated for other means

because they do not qualify as "available resources" of the Commonwealth.[6]   Instead, the 68

Bondholders' lien on the stream of current and future 68 Toll Revenues and investment earnings

---

[6] Recognizing this, a group of general obligation bondholders who represent to owning a "substantial amount" of such bonds have admitted in other proceedings that the Toll Revenues "are not available resources subject to clawback for payment of the Commonwealth's Constitutional Debt." *See* [ECF No. 36] in *ACP Master, LTD v. The Commonwealth of Puerto Rico*, Adv. Pro. No. 17-00159-LTS in No. 17 BK 3283-LTS (D.P.R. 2017).   This is significant because the general obligation bondholders are, as noted, the sole beneficiaries of the constitutional "claw back" to the extent it were to spring into effect.

12

is a first-priority lien, which cannot be reprioritized, subordinated, or redirected for any purpose. The 68 Tax Revenues, by contrast, *are* considered "available resources," and thus can be reallocated in some cases, but only for payment of the public debt. Moreover, before that can happen, an important precondition must be satisfied: all other available resources for the relevant fiscal year must be insufficient to pay the public debt.

20. Various laws of the Commonwealth expressly afford the 68 Bondholders a right of priority to the 68 Tax Revenues second only to payment of the public debt. *See, e.g.*, 13 L.P.R.A. § 31751(a)(1)(B) (pledge of excise taxes); 9 L.P.R.A. §§ 2021, 5681 (pledge of vehicle license fees); *see also* 23 L.P.R.A. § 104(c)(1)-(5) (Puerto Rico Office of Management and Budget Act "priority guidelines" for disbursement of public funds) (assigning a second priority to HTA debt, junior only to payment of the public debt). These statutes further establish that the 68 Tax Revenues cannot be diverted to fund the Commonwealth's or HTA's general expenditures. Rather, they can only be diverted to satisfy the Commonwealth's general obligation debt to the extent the Commonwealth lacks funds to pay that debt in any given fiscal year. Given that the Commonwealth has not satisfied the preconditions necessary to "claw back" the 68 Tax Revenues under the Puerto Rico Constitution, Peaje's lien on the 68 Tax Revenues is also a first-priority lien.

## IV. Bondholder Rights and Remedies.

21. The Enabling Act provides that 68 Bondholders such as Peaje may bring suit upon the 68 Bonds, including "[b]y mandamus or other suit, action, or proceeding at law or in equity to enforce [their] rights against...[HTA], its officers, agents, and employees to perform and carry out its and their duties and obligations [under the Enabling Act] and its and their covenants and agreements with bondholders...." 9 L.P.R.A. § 2013. Additionally, the Enabling Act authorized

13

HTA_CONF 00016823

HTA to "sue and be sued, complain and defend in all courts of justice and administrative bodies…." 9 L.P.R.A. § 2004(g).

## V.     Additional Covenants.

22.     As referenced in the 68 Resolution, HTA "has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary…agreed to pay the costs of maintaining, repairing and operating all Traffic Facilities financed by the [HTA] in whole or in part by the issuance of bonds of the [HTA] under the provisions of this Resolution, *from general funds of the Commonwealth of Puerto Rico*, which are made available to him for such purpose." 68 Resolution § 604 (emphasis added). In the event such funds are not available, the 68 Resolution provides that HTA may only use funds that are left over after the payment of debt service on, among other things, the 68 Bonds. *Id.*

23.     Furthermore, in Section 2019 of the Enabling Act, "[t]he Commonwealth Government…pledge[s] to, and agree[s] with, any person, firm or corporation, or any federal, commonwealth or state agency, subscribing to or acquiring bonds of [HTA] to finance in whole or in part any traffic facilities or any part thereof, that it will not limit or restrict the rights or powers hereby vested in [HTA] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." 9 L.P.R.A. § 2019.

## VI.     Perfection and Enforceability Under Article 9.

24.     Peaje's lien is validly created, perfected and enforceable and its priority is established by the Enabling Act and the 68 Resolution. To the extent Peaje's lien is not governed comprehensively by the Enabling Act and the 68 Resolution with respect to any issue regarding the lien's creation, perfection, priority, or enforceability, other applicable Puerto Rico law, including Puerto Rico's version of Article 9 of the Uniform Commercial Code, applies and

14

establishes Peaje's lien rights.  *See* 9-109(a), (c)(2), 19 L.P.R.A. § 2219; 9-201, 19 L.P.R.A. §

2231.[7]  Section 9-109(c)(2) provides that the provisions of Article 9 "do[] not apply *to the extent*

*that*…another statute of this state expressly governs the creation, perfection, priority, or

enforcement of a security interest created by this state or a governmental unit of this state."  9-

109(c)(2), 19 L.P.R.A. § 2219 (emphasis added).  Section 9-109(c)(2) "reflect[s] the view that

Article 9 should apply to security interests created by a State…or a 'governmental unit'…except

to the extent that another statute governs *the issue* in question."  9-109, 19 L.P.R.A. § 2219, cmt.

9 (emphasis added).  Thus, Section 9-109(c)(2) "excludes only transfers covered by another

statute…*to the extent* the statute governs the creation, perfection, priority, or enforcement of

security interests."  9-101, cmt. 4a (emphasis added).

     25.    To the extent Peaje's lien is not validly established under the Enabling Act and the

68 Resolution, the provisions for the creation of enforceable liens under Article 9 would be

satisfied.  *See* 9-109(a) and (c)(2), 19 L.P.R.A. § 2219; 9-201, 19 L.P.R.A. § 2231.  Under Article

9, a security interest is valid and enforceable if (i) value has been given, (ii) "the debtor has rights

in the collateral or the power to transfer rights in the collateral to a secured party," and (iii) "[t]he

debtor has authenticated a security agreement that provides a description of the collateral…."  9-

203, 19 L.P.R.A. § 2233.  Peaje's lien meets all three requirements.  First, value was given in

exchange for the secured 68 Bonds.  Second, the Enabling Act establishes that HTA had the power

---

[7] Section 9-109(a)(1) provides that Article 9 applies to "a transaction, regardless of its form, that creates
a security interest in personal property or fixtures by contract."  9-109(a)(1), 19 L.P.R.A. §2219.  A
"security interest" is an interest in personal property "which secures payment or performance of an
obligation."  1-201(b)(35), 19 L.P.R.A. §451(37).  The term "contract" means "the total legal
obligation that results from the parties' agreement as determined by [the UCC] as supplemented by
other applicable laws."  1-201(b)(12), 19 L.P.R.A. §451(11).  Thus, a contract is more than the terms
of a parties' written agreement, and includes terms or obligations supplied at law—*e.g.*, under the
Enabling Act and 68 Resolution.

HTA_CONF 00016825

to transfer rights in its gross receipts of the 68 Toll Revenues and the 68 Tax Revenues to the 68

Bondholders.  *See* 9 L.P.R.A. § 2004(l); *see also* 9 L.P.R.A. § 2012(e).  Third, the 68 Resolution,

by itself and/or in conjunction with other documents, serves as a security agreement, specifically

defining the collateral pledged to the 68 Bondholders and establishing their lien in the collateral.

*See* 68 Resolution §§ 101 (defining "Revenues"), 401, 501, 601, 602.[8]

26.     If, on the other hand, the Enabling Act and 68 Resolution were determined to

govern the creation of Peaje's lien on the 68 Toll Revenues and/or 68 Tax Revenues, but not the

perfection, priority, or enforceability of such lien, the provisions of Article 9 would supplement

the Enabling Act and 68 Resolution with respect to these issues only.  *See, e.g.*, 9-203, 19 L.P.R.A.

§ 2233.  Thus, under Puerto Rico law, Peaje's lien rights could be established in part under the

Enabling Act and 68 Resolution, and in part under Article 9.  Assuming Article 9 applies regarding

the perfection of Peaje's lien, Peaje's lien on the stream of current and future 68 Toll Revenues

and 68 Tax Revenues is also perfected by the filing of UCC-1 financing statements, including

those referenced herein, which properly (1) name the debtor (HTA), (2) name the secured party

(the 68 Bondholders), and (3) indicate the collateral covered by the financing statement (the 68

Toll Revenues and 68 Tax Revenues, among other collateral).  *Accord* 19 L.P.R.A. §§ 2260, 2322.

To the extent the priority and remedies provisions under the Enabling Act and the 68 Resolution

do not apply, these respective features of Article 9 would also apply.  Because Peaje's lien satisfies

all the requirements of Article 9, Peaje contends in the alternative that Article 9 serves as a further

basis for validating its lien and enforcing its rights.[9]

---

[8] The Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico authenticated the 68 Resolution on HTA's behalf on June 13, 1968.  *See* 68 Resolution, *Certificate of Secretary of the Authority as to Resolution 68-18, as Amended.*  The documents referenced on page 7 *supra* concerning the validity of Peaje's lien further establish the existence of a security agreement.

[9] A second provision of Article 9 further validates Peaje's lien if it is not fully established and governed

HTA_CONF 00016826

## PENDING LITIGATION CONCERNING PEAJE'S 68 BONDS

27. On May 3, 2017, the Commonwealth filed a petition for relief under Title III of PROMESA. HTA commenced its own bankruptcy case on May 21, 2017. In July of 2017, HTA defaulted on its payment obligations under the 68 Bonds and 98 Bonds.

28. Shortly after HTA's bankruptcy filing, Peaje commenced a set of adversary proceedings (the "Action") by filing a complaint in the Commonwealth's and HTA's respective bankruptcy cases. On October 10, 2017, Peaje filed its *Amended Complaint* (the "Amended Complaint") in the Action. The Amended Complaint is attached hereto as **Exhibit B** and incorporated by reference.

29. The Action concerns Defendants'[10] ongoing taking and dissipation of Peaje's collateral in violation of applicable law. Through the Action, Peaje seeks a judgment and order, among other things, declaring its rights with respect to the 68 Toll Revenues under Sections 922 and 928 of the Bankruptcy Code; determining that the automatic stays applicable under a Title III case do not apply with respect to Peaje's exercise of rights and remedies, or, alternatively, granting relief from stay unless Peaje is adequately protected; requiring Defendants to resume depositing the 68 Toll Revenues with the Fiscal Agent in accordance with applicable law; and preventing

---

by the Enabling Act and the 68 Resolution. Specifically, Section 9-702(b)(1) provides that "[t]ransactions and liens that were not governed by former [Article 9], were validly entered into or created before this act takes effect, and would be subject to this chapter if they had been entered into or created after this act takes effect, and the rights, duties, and interests flowing from those transactions and liens remain valid after this act takes effect." 9-702(b)(1), 19 L.P.R.A. § 2402. Thus, even if Peaje's lien was not subject to the former version of Article 9 but would be subject to the current version of Article 9 if it were granted after the current version took effect in Puerto Rico, it remains valid.

[10] The defendants currently named in the Action are: HTA and its Executive Director, currently the Hon. Carlos Contreras Aponte, the Commonwealth and its Governor, currently the Hon. Ricardo Rosselló, the Puerto Rico Fiscal Agency and Financial Advisory Authority and its Executive Director, currently the Hon. Gerardo Portela Franco, and Hon. Raúl Maldonado Gautier and Hon. José Iván Marrero Rosado, who are Commonwealth officials (the foregoing parties, collectively, "Defendants").

HTA_CONF 00016827

Defendants from interfering with the obligation of HTA and its Executive Director to deposit the 68 Toll Revenues with the Fiscal Agent. The Action also seeks a judgment and order declaring and determining that Defendants' diversion of the 68 Toll Revenues and 68 Tax Revenues violates the Takings and Contract Clauses of the U.S. Constitution, and granting relief in the form of just compensation for the value of Peaje's property that has been taken, impaired, or destroyed subsequent to the filing of HTA's Title III case. As of the date hereof, the Action remains pending before this Court.

**CLAIMS ARISING UNDER THE 68 BONDS
AND CLASSIFICATION THEREFOF**

30.     Under Puerto Rico law and pursuant to certain obligations, including those manifested in the Enabling Act and the 68 Resolution, the Commonwealth and HTA are indebted to Peaje in the following amounts:

a)     Principal Amount:  HTA is indebted to Peaje for the principal face amount of the 68 Bonds in the amount $71.950 million.  The Commonwealth is separately indebted to Peaje for any such principal that remains unpaid as a result of Peaje's claims against the Commonwealth specified in subsections (c), (d), (e), and (i) below.

b)     Interest: HTA is indebted to Peaje for: (i) accrued and unpaid pre-petition interest, plus (ii) accrued and unpaid post-petition interest at the nominal rate of interest borne under Peaje's 68 Bonds, plus (iii) interest on overdue principal and overdue installments of interest on Peaje's 68 Bonds, compounded daily. The Commonwealth is separately indebted to Peaje for such amounts on account of Peaje's claims against the Commonwealth specified in subsections (c), (d), (e), and (i) below.

c)     Claims, Damages, and Liabilities, and Other Amounts Arising From the Allegations of the Amended Complaint: The Commonwealth and HTA are indebted to Peaje in an unliquidated amount for all claims, damages, and other liabilities arising from the allegations of the Amended Complaint.

d)     Constitutional Claims: As stated in the Amended Complaint, Peaje's interest in the 68 Toll Revenues and 68 Tax Revenues is protected under the Fifth Amendment of the U.S. Constitution, and cannot be expropriated without Peaje receiving just compensation.  The Commonwealth's and

18

HTA's diversion of the 68 Toll Revenues and 68 Tax Revenues also violates the Contract Clause of the U.S. Constitution. Consequently, the Commonwealth and HTA must provide Peaje just compensation for the value of Peaje's property that has been taken, impaired, or destroyed, as well as damages for the impairment of Peaje's contractual rights.[11] Peaje's claims arising under the Takings and Contract Clauses are entitled to special priority and are non-dischargeable.

e)     <u>Claims Arising From Inter-Debtor Transfers</u>:  The Commonwealth and HTA are indebted to Peaje in an unliquidated amount for all claims, damages, and other liabilities arising from the debtors' violations of Section 407 of PROMESA, 48 U.S.C. § 2195(a).  Section 407 provides, in relevant part, that "[w]hile an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property." *Id.*  The Commonwealth has been using the 68 Tax Revenues for purposes other than securing payment of the 68 Bonds.  In the absence of the 68 Tax Revenues, HTA has been raiding the 68 Toll Revenues to fund its operations, rather than using such revenues to secure the 68 Bonds.  Such transfers are in violation of applicable law under which 68 Bondholders such as Peaje have a valid pledge of, security interest in, and lien on those assets—*i.e.*, the Enabling Act and 68 Resolution.  These transfers also deprive HTA of property in violation of the Enabling Act and the 68 Resolution, as well as other Puerto Rico statutes, which are meant to assure the transfer of such property to HTA for the benefit of its creditors (including Peaje).  Consequently, transferees of the 68 Toll Revenues and/or 68 Tax Revenues—as is relevant here, the Commonwealth and HTA—are liable to Peaje.

f)     <u>Claim for Inadequate Adequate Protection</u>:  HTA is indebted to Peaje pursuant to Section 507(b) of the Bankruptcy Code in an amount equal to the diminution in value of Peaje's collateral on account of the stay of action against such property under Section 362 from the use of such property. 11 U.S.C. §§ 362, 507.  Such claims shall have priority over every other claim allowed under section 507(a).  *See id.*

g)     <u>Fees and Expenses Incurred By Peaje</u>:  HTA is indebted to Peaje in an unliquidated amount for all amounts due and to become due to Peaje,

---

[11] While Peaje's Amended Complaint seeks just compensation for property that has been taken subsequent to the filing of HTA's Title III petition, this Claim seeks relief with respect to violations of the Takings Clause whether they incurred *before or after the Title III filing*.

HTA_CONF 00016829

whether arising prior to or after the debtors' bankruptcy filings, on account of (x) expenses, advances, and/or disbursements for Peaje's legal and financial advisors, accountants, experts, and other agents and enforcement costs, as well as (y) all other amounts, including, without limitation, all indemnification rights, due or to become due to Peaje under any applicable document or law (clauses (x) and (y), the "Fees and Expenses").

h)   Amount Necessary to Cure Default as of the Petition Date: All of the prepetition defaults cannot be cured by the payment of money. With respect to monetary defaults, HTA has not provided Peaje with sufficient information regarding funds required to be deposited or on deposit in the 68 Reserve Account as of the petition date. Therefore, Peaje cannot calculate the amount necessary to cure prepetition monetary defaults. Such amount would include (in each case, as of the petition date) any payment default, if any on any of the 68 Bonds, and any amount required to replenish the 68 Reserve Account to the level required by the 68 Resolution plus interest and fees. *See, e.g.*, 68 Resolution § 101 (definition of "Reserve Requirement").

i)   Other Unliquidated Amounts: The Commonwealth and HTA are indebted to Peaje for any and all other amounts due or to become due with respect to the 68 Bonds, whether under the Enabling Act, the 68 Resolution, and/or pursuant to any related or ancillary documents and/or agreements, and whether under applicable law and/or principles of equity, whether now due or hereafter arising, which amounts may, presently, be unliquidated or contingent, but may become fixed and liquidated in the future, including, without limitation: (A) amounts owed as or for interest, including, without limitation, post-petition interest, deferred interest, interest on overdue principal and overdue premiums, if any, and interest on overdue installments of interest or reimbursement of expenses, and to the extent lawful, at the rate of interest borne by the 68 Bonds compounded daily; (B) premiums, penalties, expenses, indemnities, taxes, compensatory, secondary and/or punitive damages, all compensation, and reimbursement and indemnification obligations due, if any; (C) the Commonwealth's and HTA's obligations to pay taxes, assessments, or other governmental charges, if any; (D) any and all benefits accruing to Peaje resulting from any of the Commonwealth's and HTA's covenants set forth in the Enabling Act, the 68 Resolution, or pursuant to any other agreement or under applicable law; (E) damages for fraud, misrepresentation, or any other breach of any covenant, representation, warranty, or other provision of the Enabling Act, the 68 Resolution, the offering statements disseminated with respect to the 68 Bonds and/or 98 Bonds, and/or any other agreement entered into by the parties and/or any other related document; and (F) any other claims arising under state or federal law, including, without limitation, the securities laws, applicable fraudulent conveyance laws, and/or PROMESA.

HTA_CONF 00016830

## INQUIRY NOTICE

31.     This Claim serves, and is intended to serve, as notice of a claim for any amount due or to become due under the Enabling Act, the 68 Resolution, the 98 Resolution, the Amended Complaint, the UCC-1 Statements, and/or the Series AA and Series CC Offering Statements, the provisions of which are expressly incorporated herein by reference, whether or not summarized or identified specifically in this Claim, and all interested parties are on notice of, and advised to examine the provisions in, such documents.

32.     All notices and communications concerning this Claim should be sent to:

> Peaje Investments LLC
> c/o Cogency Global, Inc.
> 850 New Burton Road, Suite 201
> Dover, DE 19904

> with a copy to:

> Dechert LLP
> 1095 Avenue of the Americas
> New York, NY 10036
> Attn:   Allan S. Brilliant
>       G. Eric Brunstad, Jr.
>       Andrew C. Harmeyer

## RESERVATION OF RIGHTS

33.     Peaje does not waive, and expressly reserves, all rights and remedies at law or in equity that it has or may have against the Commonwealth and its instrumentalities (including HTA), their respective officers and agents, and any other person or entity. Without limiting the generality of the foregoing paragraph, this Claim is not, nor shall it be deemed or construed to be: (a) a waiver or release of the terms and provisions of the Enabling Act, the 68 Resolution, or any other document concerning the 68 Bonds; (b) an election of remedies or waiver of any past, present, or future defaults or events of default under the Enabling Act, the 68 Resolution, and/or all related and ancillary documents and/or agreements, whether under applicable law and/or

21

principles of equity; (c) a waiver of Peaje's rights or remedies against any other person or entity

that may be liable for all or part of the claims set forth herein; (d) a waiver of release of Peaje's

right to trial by jury, or a consent to trial by jury, in this or any other court; (e) an admission by

Peaje that any property currently held or controlled by the Commonwealth or its instrumentalities

(including HTA) is property of a Title III debtor; (f) a waiver or release of, or any other limitation

on, Peaje's right to assert that any portion of the Claim asserted herein or any other claims are

entitled to treatment as priority claims or are non-dischargeable under applicable law; or (g) a

waiver or release of any lien or security interest.

34.     Peaje expressly reserves its right to replace, amend, or supplement this Claim at

any time and in any respect (including, without limitation, as necessary or appropriate to (i) amend,

quantify, or correct amounts, (ii) to provide additional detail regarding the Claim set forth herein,

(iii) to fix the amount of any contingent or unliquidated component of the Claim, or (iv) to include

any claim at law or in equity), to file additional proofs of claim or further pleadings for additional

claims, and to assert any and all other claims, actions, defenses, setoffs, recoupments, rights, or

remedies of whatever kind or nature that it currently has, or may have in the future against the

Commonwealth and its instrumentalities (including HTA) and their respective officers and agents,

or any other person, including without limitation, administrative or other priority claims, setoff

and recoupment rights, lien rights, interest, and the right to assert claims that are otherwise

warranted in any related actions.  The filing of this Claim shall not be deemed a waiver of any

claim in law or in equity that Peaje may have against the Commonwealth or HTA, including, but

not limited to, administrative claims, priority claims, secured claims, constructive trust claims or

the right to assert claims that are otherwise warranted in any related action.

22

HTA_CONF 00016832

35.     To the best of Peaje's knowledge, the Claim set forth herein is not subject to any setoff or counterclaim by the Commonwealth or HTA; provided, however, that Peaje expressly reserves and does not waive any right of setoff or recoupment it may possess.

36.     Peaje specifically reserves all of its procedural and substantive defenses and rights with respect to any claim or counterclaim, including, but not limited to, with respect to jurisdictional issues, that may be asserted against Peaje by the Commonwealth or HTA, any of their successors and assigns, any trustee for property of the debtors, or any other person or entity.

37.     Peaje expressly reserves the right to claim that any portion of the Fees and Expenses Peaje incurred on or after the debtors' bankruptcy filings constitute expenses of administration to the extent such expenses are not otherwise paid in full, and Peaje reserves the right to file a claim or application for payment of administrative expenses.

HTA_CONF 00016833

A

HTA_CONF 00016834

# EXHIBIT A

HTA_CONF 00016835

REGISTRO DE
TRANSACCIONES COMERCIAL

2014002566

2018 MAY 16 AM 10: 49

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| --- |

| B. E-MAIL CONTACT AT FILER (optional) |
| --- |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Cadwalader, Wickersham & Taft LLP
Attention: Lary Stromfeld
One World Financial Center
New York, NY 10281

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| Puerto Rico Highway and Transportation Authority | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| Minillas Government Center, South Building | San Juan | PR | 00921 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |
| Holders of all Bonds issued under the 1968 Resolution (as defined below) | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| One World Financial Center | New York | NY | 10281 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

Pursuant to that certain Resolution 69-18 adopted on June 13, 1968 (the "1968 Resolution"), all of the Debtor's right, title, and interest in and to "Revenues," which include, without limitation, (i) all moneys received by the Debtor on account of gasoline tax allocated to the Debtor by Act No. 75 of 1965; (ii) tolls or charges imposed by the Debtor for the use of any of the Debtor's traffic facilities, including, without limitation, (a) all highway, road, thoroughfare, speedway, bridge, and tunnel toll facilities, and (b) all parking lots and similar facilities; (iii) proceeds of any other taxes, fees, or charges which the Legislature has allocated to the Debtor and for which the Debtor is expressly authorized to pledge to the repayment of the Bonds; and (iv) funds and accounts pledged as security for Bonds and investment earnings therein. Capitalized terms used herein and not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
| --- | --- |

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
| --- | --- | --- | --- | --- |
| ☑ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

| 7. ALTERNATIVE DESIGNATION (if applicable): | ☐ Lessee/Lessor | ☐ Consignee/Consignor | ☐ Seller/Buyer | ☐ Bailee/Bailor | ☐ Licensee/Licensor |
| --- | --- | --- | --- | --- | --- |

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read and follow all instructions, especially Instruction 1; use of the correct name for the Debtor is crucial.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. The filing office cannot give legal advice.

Send completed form and any attachments to the filing office, with the required fee.

### ITEM INSTRUCTIONS

A and B. To assist filing offices that might wish to communicate with filer, filer may provide information in item A and item B. These items are optional.

C. Complete item C if filer desires an acknowledgment sent to them. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form the Acknowledgment Copy or a carbon or other copy of this form for use as an acknowledgment copy.

1. **Debtor's name.** Carefully review applicable statutory guidance about providing the debtor's name. Enter only one Debtor name in item 1 — either an organization's name (1a) or an individual's name (1b). If any part of the Individual Debtor's name will not fit in line 1b, check the box in item 1, leave all of item 1 blank, check the box in item 9 of the Financing Statement Addendum (Form UCC1Ad) and enter the Individual Debtor name in item 10 of the Financing Statement Addendum (Form UCC1Ad). Enter Debtor's correct name. Do not abbreviate words that are not already abbreviated in the Debtor's name. If a portion of the Debtor's name consists of only an initial or an abbreviation rather than a full word, enter only the abbreviation or the initial. If the collateral is held in a trust and the Debtor name is the name of the trust, enter trust name in the Organization's Name box in item 1a.

1a. Organization Debtor Name. "Organization Name" means the name of an entity that is not a natural person. A sole proprietorship is not an organization, even if the individual proprietor does business under a trade name. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed public organic records to determine Debtor's correct name. Trade name is insufficient. If a corporate ending (e.g., corporation, limited partnership, limited liability company) is part of the Debtor's name, it must be included. Do not use words that are not part of the Debtor's name.

1b. Individual Debtor Name. "Individual Name" means the name of a natural person; this includes the name of an individual doing business as a sole proprietorship, whether or not operating under a trade name. The term includes the name of a decedent where collateral is being administered by a personal representative of the decedent. The term does not include the name of an entity, even if it contains, as part of the entity's name, the name of an individual. Prefixes (e.g., Mr., Mrs., Ms.) and titles (e.g., M.D.) are generally not part of an individual name. Indications of lineage (e.g., Jr., Sr., III) generally are not part of the individual's name, but may be entered in the Suffix box. Enter individual Debtor's surname (family name) in individual's Surname box, first personal name in First Personal Name box, and all additional names in Additional Name(s)/Initial(s) box.

If a Debtor's name consists of only a single word, enter that word in individual's Surname box and leave other boxes blank.

For both organization and individual Debtors. Do not use Debtor's trade name, DBA, AKA, FKA, division name, etc. in place of or combined with Debtor's correct name; filer may add such other names as additional Debtors if desired (but this is neither required nor recommended).

1c. Enter a mailing address for the Debtor named in item 1a or 1b.

2. **Additional Debtor's name.** If an additional Debtor is included, complete item 2, determined and formatted per Instruction 1. For additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3. **Secured Party's name.** Enter name and mailing address for Secured Party or Assignee who will be the Secured Party of record. For additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP). If there has been a full assignment of the initial Secured Party's right to be Secured Party of record before filing this form, either (1) enter Assignor Secured Party's name and mailing address in item 3 of this form and file an Amendment (Form UCC3) [see item 5 of that form]; or (2) enter Assignee's name and mailing address in item 3 of this form and, if desired, also attach Addendum (Form UCC1Ad) giving Assignor Secured Party's name and mailing address in item 11.

4. **Collateral.** Use item 4 to indicate the collateral covered by this financing statement. If space in item 4 is insufficient, continue the collateral description in item 12 of the Addendum (Form UCC1Ad) or attach additional page(s) and incorporate by reference in item 12 (e.g., See Exhibit A). Do not include social security numbers or other personally identifiable information.

Note: If this financing statement covers timber to be cut, covers as-extracted collateral, and/or is filed as a fixture filing, attach Addendum (Form UCC1Ad) and complete the required information in items 13, 14, 15, and 16.

5. If collateral is held in a trust or being administered by a decedent's personal representative, check the appropriate box in item 5. If more than one Debtor has an interest in the described collateral and the check box does not apply to the interest of all Debtors, the filer should consider filing a separate Financing Statement (Form UCC1) for each Debtor.

6a. If this financing statement relates to a Public-Finance Transaction, Manufactured-Home Transaction, or a Debtor is a Transmitting Utility, check the appropriate box in item 6a. If a Debtor is a Transmitting Utility and the initial financing statement is filed in connection with a Public-Finance Transaction or Manufactured-Home Transaction, check only that a Debtor is a Transmitting Utility.

6b. If this is an Agricultural Lien (as defined in applicable state's enactment of the Uniform Commercial Code) or if this is not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in item 6b and attach any other items required under other law.

7. **Alternative Designation.** If filer desires (at filer's option) to use the designations lessee and lessor, consignee and consignor, seller and buyer (such as in the case of the sale of a payment intangible, promissory note, account or chattel paper), bailee and bailor, or licensee and licensor instead of Debtor and Secured Party, check the appropriate box in item 7.

8. **Optional Filer Reference Data.** This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in item 8 any identifying information that filer may find useful. Do not include social security numbers or other personally identifiable information.

HTA_CONF 00016837

REGISTRO DE
TRANSACCIONES COMERCIALES

2014002568

2014 MAY 16 AM 10: 48

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Cadwalader, Wickersham & Taft LLP
Attention: Lary Stromfeld
One World Financial Center
New York, NY  10281

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| Minillas Government Center, South Building | San Juan | PR | 00921 | | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Assured for the benefit of Holders of all Bonds under the 1968 Resolution (as defined below) | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 31 W. 52nd St., #26 | New York | NY | 10019 | | USA |

4. COLLATERAL: This financing statement covers the following collateral:

Pursuant to that certain Resolution 69-18 adopted on June 13, 1968 (the "1968 Resolution"), all of the Debtor's right, title, and interest in and to "Revenues," which include, without limitation, (I) all moneys received by the Debtor on account of gasoline tax allocated to the Debtor by Act No. 75 of 1965; (ii) tolls or charges imposed by the Debtor for the use of any of the Debtor's traffic facilities, including, without limitation, (a) all highway, road, thoroughfare, speedway, bridge, and tunnel toll facilities, and (b) all parking lots and similar facilities; (iii) proceeds of any other taxes, fees, or charges which the Legislature has allocated to the Debtor and for which the Debtor is expressly authorized to pledge to the repayment of the Bonds; and (iv) funds and accounts pledged as security for Bonds and investment earnings therein.  "Assured" means Assured Guaranty Corp. and Assured Municipal Corp. (formerly known as Financial Security Assurance Inc.).  Capitalized terms used herein and not otherwise defined herein will have the meanings given to such terms in the 1968 Resolution.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
| ☑ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor | |
| 8. OPTIONAL FILER REFERENCE DATA: | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

HTA_CONF 00016838

## Instructions for UCC Financing Statement (Form UCC1)

Please type or laser-print this form. Be sure it is completely legible. Read and follow all instructions, especially Instruction 1; use of the correct name for the Debtor is crucial.

Fill in form very carefully; mistakes may have important legal consequences. If you have questions, consult your attorney. The filing office cannot give legal advice.

Send completed form and any attachments to the filing office, with the required fee.

### ITEM INSTRUCTIONS

A and B.  To assist filing offices that might wish to communicate with filer, filer may provide information in Item A and Item B. These items are optional.

C.  Complete Item C if filer desires an acknowledgment sent to them. If filing in a filing office that returns an acknowledgment copy furnished by filer, present simultaneously with this form the Acknowledgment Copy or a carbon or other copy of this form for use as an acknowledgment copy.

1.  **Debtor's name.** Carefully review applicable statutory guidance about providing the debtor's name. Enter only one Debtor name in Item 1 — either an organization's name (1a) or an individual's name (1b). If any part of the Individual Debtor's name will not fit in line 1b, check the box in Item 1, leave all of Item 1 blank, check the box in Item 9 of the Financing Statement Addendum (Form UCC1Ad) and enter the Individual Debtor name in Item 10 of the Financing Statement Addendum (Form UCC1Ad). Enter Debtor's correct name. Do not abbreviate words that are not already abbreviated in the Debtor's name. If a portion of the Debtor's name consists of only an initial or an abbreviation rather than a full word, enter only the abbreviation or the initial. If the collateral is held in a trust and the Debtor name is the name of the trust, enter trust name in the Organization's Name box in Item 1a.

1a.  **Organization Debtor Name.** "Organization Name" means the name of an entity that is not a natural person. A sole proprietorship is not an organization, even if the individual proprietor does business under a trade name. If Debtor is a registered organization (e.g., corporation, limited partnership, limited liability company), it is advisable to examine Debtor's current filed public organic records to determine Debtor's correct name. Trade name is insufficient. If a corporate ending (e.g., corporation, limited partnership, limited liability company) is part of the Debtor's name, it must be included. Do not use words that are not part of the Debtor's name.

1b.  **Individual Debtor Name.** "Individual Name" means the name of a natural person; this includes the name of an individual doing business as a sole proprietorship, whether or not operating under a trade name. The term includes the name of a decedent where collateral is being administered by a personal representative of the decedent. The term does not include the name of an entity, even if it contains, as part of the entity's name, the name of an individual. Prefixes (e.g., Mr., Mrs., Ms.) and titles (e.g., M.D.) are generally not part of an individual name. Indications of lineage (e.g., Jr., Sr., III) generally are not part of the individual's name, but may be entered in the Suffix box. Enter Individual Debtor's surname (family name) in Individual's Surname box, first personal name in First Personal Name box, and all additional names in Additional Name(s)/Initial(s) box.

  If a Debtor's name consists of only a single word, enter that word in Individual's Surname box and leave other boxes blank.

  For both organization and individual Debtors. Do not use Debtor's trade name, DBA, AKA, FKA, division name, etc. in place of or combined with Debtor's correct name; filer may add such other names as additional Debtors if desired (but this is neither required nor recommended).

1c.  Enter a mailing address for the Debtor named in Item 1a or 1b.

2.  **Additional Debtor's name.** If an additional Debtor is included, complete Item 2, determined and formatted per Instruction 1. For additional Debtors, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP) and follow Instruction 1 for determining and formatting additional names.

3.  **Secured Party's name.** Enter name and mailing address for Secured Party or Assignee who will be the Secured Party of record. For additional Secured Parties, attach either Addendum (Form UCC1Ad) or Additional Party (Form UCC1AP). If there has been a full assignment of the initial Secured Party's right to be Secured Party of record before filing this form, either (1) enter Assignor Secured Party's name and mailing address in Item 3 of this form and file an Amendment (Form UCC3) [see Item 5 of that form]; or (2) enter Assignee's name and mailing address in Item 3 of this form and, if desired, also attach Addendum (Form UCC1Ad) giving Assignor Secured Party's name and mailing address in Item 11.

4.  **Collateral.** Use Item 4 to indicate the collateral covered by this financing statement. If space in Item 4 is insufficient, continue the collateral description in Item 12 of the Addendum (Form UCC1Ad) or attach additional page(s) and incorporate by reference in Item 12 (e.g., See Exhibit A). Do not include social security numbers or other personally identifiable information.

*Note*: If this financing statement covers timber to be cut, covers as-extracted collateral, and/or is filed as a fixture filing, attach Addendum (Form UCC1Ad) and complete the required information in Items 13, 14, 15, and 16.

5.  If collateral is held in a trust or being administered by a decedent's personal representative, check the appropriate box in Item 5. If more than one Debtor has an interest in the described collateral and the check box does not apply to the interest of all Debtors, the filer should consider filing a separate Financing Statement (Form UCC1) for each Debtor.

6a.  If this financing statement relates to a Public-Finance Transaction, Manufactured-Home Transaction, or a Debtor is a Transmitting Utility, check the appropriate box in Item 6a. If a Debtor is a Transmitting Utility and the initial financing statement is filed in connection with a Public-Finance Transaction or Manufactured-Home Transaction, check only that a Debtor is a Transmitting Utility.

6b.  If this is an Agricultural Lien (as defined in applicable state's enactment of the Uniform Commercial Code) or if this is not a UCC security interest filing (e.g., a tax lien, judgment lien, etc.), check the appropriate box in Item 6b and attach any other items required under other law.

7.  **Alternative Designation.** If filer desires (at filer's option) to use the designations lessee and lessor, consignee and consignor, seller and buyer (such as in the case of the sale of a payment intangible, promissory note, account or chattel paper), bailee and bailor, or licensee and licensor instead of Debtor and Secured Party, check the appropriate box in Item 7.

8.  **Optional Filer Reference Data.** This item is optional and is for filer's use only. For filer's convenience of reference, filer may enter in Item 8 any identifying information that filer may find useful. Do not include social security numbers or other personally identifiable information.



ESTADO LIBRE ASOCIADO DE
## PUERTO RICO
DEPARTAMENTO DE EST.      2014003807

Registro de Transacciones Comerciales

14 AUG -4 AM 11: 53

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*

B. CORREO ELECTRÓNICO DE CONTACTO (opciona) / *E-MAIL CONTACT AT FILER (optional)*

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección): / *SEND ACKNOWLEDGMENT TO:   (Name and Address)*

Arent Fox LLP
Attention: David Dubrow
1675 Broadway
New York, NY 10019

EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME:* Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí ☐ y provea la información del Deudor individual en el renglón 10 del Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check* ☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority ("Debtor") | | | | |

OR

| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO /*SUFFIX* |
|---|---|---|---|---|

| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO *STATE* | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |
|---|---|---|---|---|
| Minillas Government Center, South Building, Floor 17 | San Juan | PR | 00940 | USA |

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME:* Provea sólo un nombre adicional (2a o 2b) (Use el nombre completo y exacto; no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el el espacion provisto en la 2b, deje toda la sección 2 en blanco, marque aquí ☐ y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here* ☐ *and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|

OR

| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO *SUFFIX* |
|---|---|---|---|---|

| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO *STATE* | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |
|---|---|---|---|---|

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
*SECURED PARTY'S NAME (or NAME of ASSIGNEE):  Provide only one Secured Party name (3a or 3b)*

| 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Ambac Assurance Corporation ("Ambac") for benefit of holders of all bonds ("1968 Resolution Bonds") issued under Resolution 68-18. | | | | |

OR

| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO *SUFFIX* |
|---|---|---|---|---|

| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO *STATE* | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |
|---|---|---|---|---|
| One State Street Plaza | New York | NY | 10004 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

All of the Debtor's rights, title, and interest in and to (i) all moneys on account of gasoline tax received by, or allocated to, the Debtor pursuant to Act No. 75 of 1965, as amended; (ii) all moneys on account of tax on gas oil and diesel oil received by, or allocated to, the Debtor pursuant to Act No. 120 of 1994, as amended; (iii) all moneys on account of motor vehicle license fees received by, or allocated to, the Debtor pursuant to Act No. 141 of 1960, as amended; (iv) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (v) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1968 Resolution Bonds and investment earnings therein; and (vii) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated o may hereafter allocate to the Authority and authorizes the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque solo si aplica y solo una opción: Colateral está ☐ en posesión de un Fideicomiso. (véase UCC1AdPR, renglón 7 e Instrucciones) ☐ administrado por Representantes de un difunto | | *Check only if applicable and check only one box: Collateral is* ☐ *held in a Trust (See UCC1AdPR, item 17 and Instructions)* ☐ *being administered by a Decedent's Personal Representative* | | |
|---|---|---|---|---|
| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* ☑ Transacción de Financiamiento Público / *Public-Finance Transaction* ☐ Transacción de Case Prefabricada / *Manufactured-Home Transaction* ☐ Un Deudor es una entidad transmisora : A Debtor is a *Transmitting Utility* | | 6b. Marque solo si aplica y solo una alternativa / *Check only if applicable and check only one box:* ☐ Gravamen Agrícola *Agricultural Lien* ☐ Inscripción extraregistral *Non-UCC Filing* | | |
| 7. DESIGNACIÓN ALTERNA (si aplica) ALTERNATIVE DESIGNATION *(if applicable):* | ☐ Arrendador/Arrendatario *Lessee/Lessor* ☐ Consignatario/ Consignador *Consignee/Consignor* | ☐ Vendedor/ Comprador *Seller/Buyer* | ☐ Depositario/ Fiador *Bailee/Bailor* | ☐ Concesionario/Concedente *Licensee/Licensor* |

8. DATOS OPCIONALES DE REFERENCIA PARA EL SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

COPIA OFICINA DE REGISTRO—DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)

HTA_CONF 00016840



ESTADO LIBRE ASOCIADO DE

# PUERTO RICO

DEPARTAMENTO DE ESTADO

Registro de Transacciones Comercial       2014003808



14 AUG -4  AM 11: 54

## DECLARACIÓN DE FINANCIAMIENTO / *FINANCING STATEMENT*
SIGA INSTRUCCIONES/ *FOLLOW INSTRUCTIONS*

A. NOMBRE Y NÚMERO DE CONTACTO (opcional) / *NAME & PHONE OF CONTACT AT FILER (optional)*

B. CORREO ELECTRÓNICO DE CONTACTO (opcional) / *E-MAIL CONTACT AT FILER (optional)*

C. ENVIAR CONFIRMACIÓN A (Nombre y Dirección) / *SEND ACKNOWLEDGMENT TO:  (Name and Address)*

Arent Fox LLP
Attention: David Dubrow
1675 Broadway
New York, NY 10019

**EL ESPACIO ARRIBA ES PARA USO DEL OFICIAL DE REGISTRO**
*THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY*

1. NOMBRE DEL DEUDOR / *DEBTOR'S NAME*: Provea sólo un nombre de Deudor (1a o 1b) (use el nombre completo y exacto, no omita, modifique o abrevie ningún componente del nombre); si algún aparte del nombre del Deudor no cabe en la línea 1b, déjela en blanco, marque aquí [ ] y provea la información del Deudor individual en el renglón 10 e la Anejo a la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here [ ] and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 1a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Puerto Rico Highway and Transportation Authority | | | | |
| 1b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
| 1c. DIRECCIÓN POSTAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |
| Minillas Government Center, South Building, Floor 17 | San Juan | PR | 00840 | USA |

2. NOMBRE DEL DEUDOR/ *DEBTOR'S NAME*: Provea nombre adicional (2a o 2b) (Use el nombre completo y exacto, no omita, modifique o abrevie ninguna parte del nombre). Si cualquier parte de un nombre no cupiera en el espacio provisto en la 2b, deje toda la sección 2 en blanco, marque aquí [ ] y provea el nombre completo en el renglón 10 en el Anejo de la Declaración de Financiamiento (Forma UCC1AdPR) / *Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here [ ] and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1AdPR)*

| 2a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| 2b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
| 2c. DIRECCIÓN / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |

3. NOMBRE DEL ACREEDOR GARANTIZADO (o NOMBRE DE CESIONARIO): Provea solo un nombre de Acreedor Garantizado (3a o 3b)
*SECURED PARTY'S NAME (or NAME of ASSIGNEE):  Provide only one Secured Party name (3a or 3b)*

| 3a. NOMBRE DE LA ENTIDAD / *ORGANIZATION'S NAME* | | | | |
|---|---|---|---|---|
| Holders of all bonds ("1968 Resolution Bonds") issued under Resolution 68-18. | | | | |
| 3b. APELLIDO / *INDIVIDUAL'S SURNAME* | NOMBRE / *FIRST PERSONAL NAME* | SEGUNDO NOMBRE / *ADDITIONAL NAME* | | SUFIJO / *SUFFIX* |
| 3c. DIRECCIÓN POSAL / *MAILING ADDRESS* | CIUDAD / *CITY* | ESTADO STATE | CÓDIGO POSTAL / *POSTAL CODE* | PAÍS *COUNTRY* |
| 1675 Broadway, 34th Floor | New York | NY | 10019 | USA |

4. COLATERAL: Esta declaración de financiamiento cubre la siguiente colateral: / *COLLATERAL: This financing statement covers the following collateral:*

All of the Debtor's rights, title, and interest in and to (i) all moneys on account of gasoline tax received by, or allocated to, the Debtor pursuant to Act No. 75 of 1965, as amended; (ii) all moneys on account of tax on gas oil and diesel oil received by, or allocated to, the Debtor pursuant to Act No. 120 of 1994, as amended; (iii) all moneys on account of motor vehicle license fees received by, or allocated to, the Debtor pursuant to Act No. 141 of 1960, as amended; (iv) up to $20 million per fiscal year on account of cigarette tax received by, or allocated to, the Debtor pursuant to Act No. 30 of 2013, as amended; (v) tolls or other charges imposed by the Debtor for the use of roads, avenues, streets, thoroughfares, speedways, bridges, tunnels, channels, stations, terminals, any other land or water transportation facilities, parking lots and structures and other facilities for parking, loading or unloading of vehicles and vessels for which 1968 Resolution Bonds were or will be issued; (vi) funds and accounts pledged as security for the 1968 Resolution Bonds and investment earnings therein; and (vii) the proceeds of any other taxes, fees or charges that the Legislature of Puerto Rico has allocated o may hereafter allocate to the Authority and authorize the Authority to pledge to the payment of principal and interest on bonds or other obligations of the Authority.

| 5. Marque solo si aplica y solo una opción: Colateral está [ ] en posesión de un Fideicomiso (véase UCC1AdPR, renglón 7 e instrucciones) [ ] administrado por Representante de un difunto | *Check only if applicable and check only one box.* Collateral is [ ] held in a Trust (See UCC1AdPR, item 17 and instructions) [ ] being administered by a Decedent's Personal Representative |
|---|---|

| 6a. Marque solo si aplica y una sola alternativa / *Check only if applicable and check only one box:* | 6b. Marque **solo** si aplica y solo una alternativa / *Check only if applicable and check only one box:* |
|---|---|
| [■] Transacción de Financiamiento Público / *Public-Finance Transaction*   [ ] Transacción de Casa Prefabricada / *Manufactured-Home Transaction*   [ ] Un Deudor es una entidad transmisora / *A Debtor is a Transmitting Utility* | [ ] Gravamen Agrícola / *Agricultural Lien*   [ ] Inscripción extraregistral / *Non-UCC Filing* |

| 7. DESIGNACIÓN ALTERNA (si aplica) / *ALTERNATIVE DESIGNATION (if applicable):* | [ ] Arrendador/Arrendatario *Lessee/Lessor* | [ ] Consignatario/ Consignador *Consignee/Consignor* | [ ] Vendedor/ Comprador *Seller/Buyer* | [ ] Depositario/ Fiador *Bailee/Bailor* | [ ] Concesionario/Concedente *Licensee/Licensor* |
|---|---|---|---|---|---|

8. DATOS OPCIONALES DE REFERENCIA PARA EL
SOLICITANTE / *OPTIONAL FILER REFERENCE DATA:*

COPIA OFICINA DE REGISTRO—DECLARACIÓN DE FINANCIAMIENTO (Forma UCC1PR) (Rev. 05/09/14)

HTA_CONF 00016841

B

HTA_CONF 00016842

# EXHIBIT B

HTA_CONF 00016843

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | |
| as representative of | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | No. 17 BK 3283-LTS |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | |
| as representative of | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, | ) | No. 17 BK 3283-LTS |
| | ) | |
| PUERTO RICO HIGHWAYS & | ) | No. 17 BK 3567-LTS |
| TRANSPORTATION AUTHORITY, | ) | (This Filing Relates to |
| | ) | These Debtors) |
| Debtor. | ) | |
| PEAJE INVESTMENTS LLC, | ) | |
| | ) | Adv. Proc. No. 17-151-LTS |
| Plaintiff, | ) | in 17 BK 3567-LTS |
| | ) | |
| -against- | ) | Adv. Proc. No. 17-152-LTS |
| | ) | in 17 BK 3283-LTS |
| PUERTO RICO HIGHWAYS & | ) | |
| TRANSPORTATION AUTHORITY, | ) | |
| HON. CARLOS CONTRERAS APONTE, | ) | |
| THE COMMONWEALTH OF PUERTO RICO, | ) | |
| HON. RICARDO ROSSELLÓ, | ) | |
| HON. RAÚL MALDONADO GAUTIER, | ) | |
| HON. JOSÉ IVÁN MARRERO ROSADO, | ) | |
| PUERTO RICO FISCAL AGENCY AND | ) | |
| FINANCIAL ADVISORY AUTHORITY, | ) | |
| HON. GERARDO PORTELA FRANCO, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

23749190

HTA_CONF 00016844

Plaintiff Peaje Investments LLC ("Plaintiff"), by and through its attorneys, Dechert LLP and Monserrate Simonet & Gierbolini, LLC, for its Amended Complaint[1] against Defendants the Puerto Rico Highways & Transportation Authority ("HTA") and its Executive Director, currently the Hon. Carlos Contreras Aponte (the "Executive Director"), the Commonwealth of Puerto Rico (the "Commonwealth") and its Governor, currently the Hon. Ricardo Rosselló (the "Governor"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and its Executive Director, currently the Hon. Gerardo Portela Franco (the "AAFAF Director"), and Hon. Raúl Maldonado Gautier and Hon. José Iván Marrero Rosado, who are Commonwealth officials (together with the Governor and AAFAF Director, the "Officials," and collectively with HTA, its Executive Director, the Commonwealth, and AAFAF, "Defendants"), alleges on knowledge as to its own acts, and otherwise on information and belief, as follows:

## NATURE OF THE ACTION

1.      This is an adversary proceeding pending in the above-captioned case of Defendant HTA, which case was commenced under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. 114-187 ("PROMESA"). In accordance with the Court's case management procedures, a companion adversary proceeding is pending in the case of the Commonwealth, also commenced under Title III of PROMESA, No. 17 BK 3283-LTS.

2.      This action concerns Defendants' ongoing taking and dissipation of Plaintiff's collateral in violation of applicable law. Plaintiff is the holder of certain bonds secured by a valid, enforceable, first-priority lien on certain toll revenues that HTA collects in its operations

---

[1] By agreement between Plaintiff and Defendants reached on September 22, 2017 and so ordered by the Court on September 26, 2017, October 10, 2017 is the last day for Plaintiff to amend its previously filed complaint without leave of Court.

HTA_CONF 00016845

(the "Toll Revenues"). In addition to the Toll Revenues, Plaintiff's bonds are secured by a valid
and enforceable lien on certain excise taxes and vehicle license fees (collectively, the "Tax
Revenues," and together with the Toll Revenues, the "Pledged Revenues") that have been
allocated to HTA by Puerto Rico statute. As explained below, Plaintiff's lien on the Tax
Revenues is also a first-priority lien given that the Commonwealth has not satisfied the
preconditions necessary to "claw back" these revenues under the Puerto Rico Constitution.

3.        Under the terms of the resolution governing Plaintiff's bonds (the "68
Resolution," and the bonds issued thereunder, the "68 Bonds"), HTA is required to deposit these
Pledged Revenues with a fiscal agent (the "Fiscal Agent")[2] for purposes of paying the 68 Bonds.
Critically, the 68 Bonds are "limited recourse" obligations, meaning that, ordinarily, they are
payable solely from the collateral securing them. For over a year-and-a-half, Defendants have
been unlawfully diverting the Toll Revenues and Tax Revenues, causing HTA to fail to deposit
such revenues with the Fiscal Agent as required under the 68 Resolution and applicable law.

4.        As a result of this ongoing diversion, the Fiscal Agent has been left with
insufficient funds to continue paying Plaintiff's 68 Bonds. On July 3, 2017, HTA defaulted on
its obligation to pay principal and interest on the 68 Bonds, as well as payments on another series
of bonds issued under a separate resolution, Resolution 98-06 (the "98 Resolution," and the
bonds issued thereunder, the "98 Bonds"). Defendants have further indicated that, rather than
remedying the default, they have no intention of depositing either the Toll Revenues or the Tax
Revenues with the Fiscal Agent for at least the next decade. Instead, Defendants have made
clear that they intend to continue diverting these Pledged Revenues for other purposes, leaving
the 68 Bonds unpaid. As a result, Plaintiff is suffering and will continue to suffer irreparable

---

[2] The Fiscal Agent is presently Bank of New York Mellon.

HTA_CONF 00016846

harm in the form of the destruction of its lien rights, the taking of its collateral, and the
impairment of its 68 Bonds.

      5.      This is an action to require Defendants to resume depositing the Pledged
Revenues with the Fiscal Agent as required under the 68 Resolution and applicable law, or,
alternatively, for other relief.  Specifically, Plaintiff seeks a judgement and order:

(a)      determining and declaring that Plaintiff's 68 Bonds are secured by a valid,
enforceable, first-priority lien on the stream of current and future Toll
Revenues and Tax Revenues under Puerto Rico law, and that, for bankruptcy
purposes, these Pledged Revenues qualify as "pledged special revenues"
under Section 922(d) of the Bankruptcy Code;

(b)      determining and declaring that, pursuant to Section 922(d) of the Bankruptcy
Code, the stays provided for under Sections 362 and 922(a) of the Bankruptcy
Code do not apply to Plaintiff's efforts to prevent Defendants from diverting
the Toll Revenues and/or Tax Revenues, or prevent Plaintiff from otherwise
enforcing rights and remedies with respect to its 68 Bonds, including, without
limitation, to enforce the application of such revenues to the payment of such
bonds;

(c)      to the extent the stays under Sections 362 and 922 apply, directing HTA to
provide Plaintiff with adequate protection pursuant to Section 361 of the
Bankruptcy Code in the form of HTA depositing a sufficient amount of Toll
Revenues and/or Tax Revenues with the Fiscal Agent to ensure the timely
payment of principal and interest on Plaintiff's 68 Bonds, or failing that,
lifting the bankruptcy stays to allow Plaintiff to enforce its rights and remedies
with respect to such bonds;

(d)      determining and declaring that the "special revenue" protections of the
Bankruptcy Code—in particular, Section 922(d)—preempt the
Commonwealth Fiscal Plan (as implemented by the Fiscal Plan Act) (each as
defined below), the former Governor's unlawful Executive Orders (as defined
below) (insofar as they have not expired), the Circular Letter (as defined
below), and Section 208(e) of the Puerto Rico Financial Emergency and Fiscal
Responsibility Act of 2017 (the "Fiscal Responsibility Act");

(e)      determining and declaring that Section 922(d) of the Bankruptcy Code
requires HTA and its Executive Director to turn over the Toll Revenues and
Tax Revenues to the Fiscal Agent in the manner provided under the 68
Resolution governing Plaintiff's 68 Bonds;

(f)      determining and declaring that Defendants' diversion of the Toll Revenues

4

HTA_CONF 00016847

and Tax Revenues violates the Takings and Contract Clauses of the U.S. Constitution, and granting relief in the form of just compensation for the value of Plaintiff's property that has been taken, impaired, or destroyed subsequent to the filing of HTA's Title III case;

(g)     determining and declaring that neither Section 552(a) nor Section 928(b) of the Bankruptcy Code apply to Plaintiff's 68 Bonds because, among other things, those bonds are secured by a statutory lien on the stream of current and future Toll Revenues and Tax Revenues;

(h)     determining and declaring that, to the extent Sections 552(a) or 928(b) apply to Plaintiff's 68 Bonds, the expropriation of the 68 Bondholders' lien on the Toll Revenues and Tax Revenues violates the Fifth Amendment of the U.S. Constitution, or, in the alternative, that the 68 Bondholders' lien on the Toll Revenues can only be surcharged to pay for the expenses necessary to preserve the specific toll roads that generate such revenues, and, with respect to the Tax Revenues, that the 68 Bondholders' lien on the Tax Revenues is not subject to surcharge;

(i)     lifting the stays provided for under Sections 362 and 922 of the Bankruptcy Code (to the extent applicable) to allow Plaintiff to commence and prosecute an action challenging, among other things, the unlawful diversion of the Toll Revenues and/or Tax Revenues under color of the Commonwealth Fiscal Plan (as implemented by the Fiscal Plan Act), the unlawful Executive Orders and the Circular Letter, and Section 208(e) of the Fiscal Responsibility Act;

(j)     determining and declaring that the funds on deposit in the 68 Bondholders' collateral account maintained with the Fiscal Agent (the "Collateral Account") must be released to the 68 Bondholders for payment of the 68 Bonds in accordance with the priorities set forth in the 68 Resolutions and applicable law;

(k)     enjoining Defendants from continuing to divert the Toll Revenues and Tax Revenues in violation of Section 922(d) of the Bankruptcy Code, the U.S. Constitution, and other applicable law;

(l)     directing Defendants to resume depositing the Toll Revenues and Tax Revenues as required under Section 922(d) of the Bankruptcy Code, the U.S. Constitution, and other applicable law;

(m)    directing AAFAF to rescind the AAFAF Letter (as defined below) and replace it with instructions to the Fiscal Agent to release the funds held in the 68 Bondholders' Collateral Account for payment of the 68 Bonds, and otherwise prohibiting Defendants from interfering with the application of such funds to the payment of the 68 Bonds; and

5

HTA_CONF 00016848

(n)     directing HTA and its Executive Director to deposit sufficient funds with the
Fiscal Agent in advance of the semi-annual debt service payment dates under
the 68 Resolution to ensure the timely payment of all principal and interest on
Plaintiff's 68 Bonds, and otherwise prohibiting the Commonwealth, AAFAF,
and their respective Officials from interfering with Plaintiff's execution of that
judgment.

6.     Plaintiff is the beneficial owner of more than $65 million in uninsured 68 Bonds.

Under Puerto Rico law, the 68 Bonds are secured by a valid, enforceable, first-priority pledge of

and lien on, among other collateral, the stream of current and future Pledged Revenues.  As

noted, the 68 Resolution explicitly requires HTA to deposit these Pledged Revenues on a

monthly basis into a series of accounts maintained with the Fiscal Agent for the benefit of the 68

Bondholders.  *See* 68 Resolution § 401.  Because the 68 Bondholders benefit from a "gross lien"

on the stream of current and future Pledged Revenues, HTA must *first* deposit sufficient funds

into the 68 Bondholders' accounts maintained with the Fiscal Agent to meet the debt service and

reserve requirements under the 68 Resolution *before* it can spend the funds elsewhere.

7.     Typical of a "special revenue" financing, the 68 Bonds are, as noted, "limited

recourse" obligations, meaning they are ordinarily payable *solely* from the Pledged Revenues,

and no other source.  Aside from its obligation to deposit the Pledged Revenues, HTA

covenanted in the 68 Resolution that "it will promptly pay the principal of and the interest on

every bond issued under the provisions of this Resolution at the places, on the dates and in the

manner provided herein…." *See* 68 Resolution § 601.

8.     Notably, the grant of Plaintiff's lien rights predate, among other things, the

enactment of PROMESA and the various laws passed by the Commonwealth in the wake of its

fiscal crisis—*e.g.*, the "Moratorium Act," the Fiscal Responsibility Act, and the Fiscal Plan

Act—and Plaintiff's lien rights are constitutionally protected with respect to legislation enacted

after such grant.   Nonetheless, beginning in May 2016, first under the guise of the Moratorium

HTA_CONF 00016849

Act and continuing through the present under the Fiscal Responsibility Act and the Fiscal Plan

Act, Defendants have continued to take Plaintiff's collateral, without compensating Plaintiff for

the impairment and destruction of its lien rights.  As a result of the limited-recourse nature of the

68 Bonds, the diversion of the Pledged Revenues reduces the limited pool of collateral available

to satisfy the 68 Bonds.  To the extent the diversion continues (as Defendants have indicated that

it will), Plaintiff will not be paid in full on its 68 Bonds.

9.       On June 30, 2016, President Obama signed into law PROMESA.  PROMESA

was intended to authorize a process for the reorganization of the Commonwealth's financial

affairs, and created an Oversight Board to facilitate that process.  Among other things, the

enactment of PROMESA initiated an interim stay of certain creditor actions as specified under

Section 405 of PROMESA, 48 U.S.C. § 2194(b), which interim stay could have been lifted "for

cause shown" during the stay's effective period, *see* 48 U.S.C. § 2194(e)(2), but in any event the

interim stay expired on May 1, 2017, *see* 48 U.S.C. § 2194(d)(2).  In contrast, the debtor's filing

of a Title III case initiates the stays normally applicable in a Chapter 9 bankruptcy proceeding,

*see* 11 U.S.C. §§ 362 and 922, which are incorporated into Title III under Section 301 of

PROMESA, 48 U.S.C. § 2161.  Of particular relevance to this case, Section 922(d) of the

Bankruptcy Code affords special protection to "special revenue" bonds, largely exempting the

holders of such bonds from the bankruptcy stays and providing that the debtor must turnover

"pledged special revenues in a manner consistent with Section 928 of [the Bankruptcy Code] to

payment of indebtedness secured by such revenues."  11 U.S.C. § 922(d).[3]

10.       As explained below, the Pledged Revenues securing Plaintiff's 68 Bonds are

---

[3] Section 922(d) refers to Section 927 of the Bankruptcy Code, but this is a scrivener's error, and should instead be read as a cross-reference to Section 928.  *See* 6-922 COLLIER ON BANKRUPTCY ¶ 922.05 at n.20.

HTA_CONF 00016850

"special revenues" within the meaning of Section 922(d). For bankruptcy purposes, Plaintiff's

lien is a "statutory lien" within the meaning of Section 101(53) of the Bankruptcy Code, 11

U.S.C. § 101(53). As a result, Section 552 of the Bankruptcy Code does not apply to Plaintiff's

68 Bonds, as the application of that provision is limited to "lien[s] resulting from any security

agreement…[,]" *see* 11 U.S.C. § 552(a). In any event, even if Section 552 would otherwise

apply, it is inapplicable in this case under Section 928(a) because the collateral in question here

constitutes "special revenues." *See* 11 U.S.C. § 928(a). Nor does Section 928(b) of the

Bankruptcy Code apply to Plaintiff's 68 Bonds. That provision in some instances subordinates a

bondholder's lien on "special revenues" to the "necessary operating expenses" of the "project or

system" that generates those revenues, but is also limited in application to "lien[s] resulting from

any security agreement…[,] *see* 11 U.S.C. § 928(b).

      11.     Alternatively, if Plaintiff's lien on the Pledged Revenues is not a "statutory lien"

for bankruptcy purposes, such lien for all purposes is still a valid, enforceable, first-priority lien

under Puerto Rico law (including, to the extent applicable, Puerto Rico's version of Article 9 of

the Uniform Commercial Code). To the extent Plaintiff's lien is not a statutory lien for

bankruptcy purposes, Plaintiff's lien is properly characterized as a "security interest" for

bankruptcy purposes. *See* 11 U.S.C. § 101(51). While Section 928(b) normally extends to liens

arising from a "security agreement," that provision still would not apply to Plaintiff's 68 Bonds

in this matter because surcharging Plaintiff's "gross" lien on the Pledged Revenues to pay for

HTA's operating expenses would constitute a retroactive destruction of Plaintiff's lien rights in

violation of the U.S. Constitution.

      12.     Under PROMESA, the Commonwealth and any of its instrumentalities that are

"designated" by the Oversight Board must submit a fiscal plan to the board that "provide[s] a

HTA_CONF 00016851

method to achieve fiscal responsibility and access to the capital markets," among several other requirements. *See* 48 U.S.C. § 2141(b)(1). In many cases, the fiscal plan is intended to serve as the framework for a reorganization under Title III of PROMESA, which provides for a judicially-supervised reorganization by way of a plan of adjustment, subject to court approval.

13.     As a "designated" instrumentality, HTA developed its own fiscal plan and submitted it to the Oversight Board. Among other things, HTA's fiscal plan projects that the 68 Bondholders will not receive payment of debt service for at least the next ten years. As part of this scheme, the Commonwealth intends to claw back from HTA an average annual net amount of approximately $340 million in funds that have historically been provided to fund HTA's operations, and instead use these funds to pay the Commonwealth's general expenditures and certain favored creditors. The Commonwealth apparently intends to continue taking this money notwithstanding the fact that the Commonwealth is obligated to pay the costs of maintaining, repairing, and operating the roads.

14.     Defendants' refusal to stop the diversion of Plaintiff's collateral represents a remarkable change of position. In earlier proceedings between the parties addressing whether the interim stay provided under PROMESA should be lifted, HTA and its former Executive Director, as well as the Commonwealth and certain of its officials (including the former Governor), represented to the courts that Plaintiff's interest in the Toll Revenues was "adequately protected" because there will be sufficient Toll Revenues in the future to pay Plaintiff's 68 Bonds. *See Peaje Investments LLC v. Alejando García-Padilla*, 845 F.3d 505, 514 (1st Cir. 2017) ("[T]he Commonwealth responded that '[a]ny particular toll revenue not allocated to the…bonds today could simply be made up for by toll revenues collected tomorrow.'"); *Peaje Investments LLC v. Garcia-Padilla*, 3:16-cv-02365-FAB, [Dkt. No. 60]

HTA_CONF 00016852

(motion of HTA and its former Executive Director to join the Commonwealth's brief opposing Plaintiff's motion to lift the interim stay).

15.      On April 29, 2017, the Commonwealth enacted the Fiscal Plan Compliance Law (P. de la C. 938, the "Fiscal Plan Act").[4]  This statute is meant to effectuate the Commonwealth's fiscal plan (the "Commonwealth Fiscal Plan").[5]  The implementation of the Commonwealth Fiscal Plan through the Fiscal Plan Act is referred to throughout this Amended Complaint as the "Fiscal Plan Implementation".

16.      Among other things, the Commonwealth Fiscal Plan prioritizes the Commonwealth's general expenses over the payment of debt service on Plaintiff's 68 Bonds, disregarding the 68 Bondholders' lien on the Tax Revenues and the priority of such lien under applicable law.  In implementing this scheme, the Fiscal Plan Act also purportedly authorizes the Commonwealth to take "surplus" revenues from HTA after payment of its operating expenses, without making payment or provision for payment of debt service to the 68 Bondholders out of the Toll Revenues.  *See* Fiscal Plan Act, art. 4.01, 4.02.  The Fiscal Plan Act establishes a committee comprised of Commonwealth officials, and purportedly gives them discretion to determine the extent to which the 68 Bondholders' collateral will be taken as "surplus" revenues. *See id.* at art. 4.02.

17.      On May 3, 2017, the Commonwealth and the Puerto Rico Sales Tax Financing Corporation ("COFINA") filed petitions for relief under Title III of PROMESA in this Court.

---

[4] A copy of the Fiscal Plan Act, along with a certified translation of Chapters 4 and 6 of that act, is attached hereto as **Exhibit A**.

[5] The Commonwealth Fiscal Plan was first amended on March 13, 2017, and was again revised on April 15, 2017 to incorporate additional corrections.  A conformed copy of the Commonwealth Fiscal Plan—which was posted to the Oversight Board's official website and purportedly incorporates these revisions—is attached hereto as **Exhibit B**.

10

HTA_CONF 00016853

On May 21, 2017, HTA filed its own Title III petition in this Court.  The filing of HTA's

petition, as noted, initiated the bankruptcy stays—incorporated into Title III under Section 301 of

PROMESA, 48 U.S.C. § 2161—with respect to certain creditor actions against HTA and its

Executive Director, but not as to the enforcement of "special revenue" pledges under Section

922(d) of the Bankruptcy Code.

18.     Through this adversary proceeding, Plaintiff seeks to enforce and protect its lien

and other rights in the Pledged Revenues in the manner provided under the U.S. Constitution,

PROMESA, and other applicable law.  Among other things, Plaintiff submits that Section 922(d)

of the Bankruptcy Code requires Defendants to turn over the Pledged Revenues for payment of

Plaintiff's 68 Bonds.   Plaintiff also contends that the unlawful diversion of the Pledged

Revenues at Defendants' direction violates Plaintiff's rights secured under the Fifth Amendment

of the U.S. Constitution, as well as the Contract Clause.  In any event, the Executive Orders, the

Circular Letter, and the Fiscal Plan Implementation—all of which purport to serve as authority

for Defendants' diversion of Plaintiff's collateral—are preempted under the Supremacy Clause

of the U.S. Constitution and Section 922(d) of the Bankruptcy Code.

### THE PARTIES

19.     Plaintiff is a Delaware limited liability company with its principal place of

business in New York, New York.  It is the beneficial owner of approximately $65.25 million in

uninsured 68 Bonds, presently consisting of 68 Bonds in the following series:

| Resolution | Series | Amount |
|---|---|---|
| 68 Resolution | Series AA | $30.435 million |
| | Series CC | $11.995 million |
| | Series CC Capital Appreciation | $22.82 million |

20.     Defendant HTA is a public corporation and government instrumentality of the

HTA_CONF 00016854

Commonwealth created by Act No. 74-1965 (hereinafter, the "Enabling Act").

21.     Defendant Hon. Carlos Contreras Aponte is the Executive Director of HTA.
Plaintiff sues the Executive Director in his official capacity.

22.     Defendant the Commonwealth of Puerto Rico is a territory of the United States.

23.     Defendant Hon. Ricardo Rosselló is the Governor of the Commonwealth of
Puerto Rico.  Plaintiff sues the Governor in his official capacity.

24.     Defendant Hon. Raúl Maldonado Gautier is the Secretary of Treasury of the
Commonwealth (the "Treasurer").  Plaintiff sues the Treasurer in his official capacity.

25.     Defendant Hon. José Iván Marrero Rosado is the Executive Director of the
Commonwealth's Office of Management and Budget (the "OMB Director").  Plaintiff sues the
OMB Director in his official capacity.

26.     Defendant AAFAF is a public corporation organized under the laws of the
Commonwealth.

27.     Defendant Gerardo Portela Franco is the Executive Director of AAFAF.  Plaintiff
sues the AAFAF Director in his official capacity.

## JURISDICTION AND VENUE

28.     This is an adversary proceeding brought pursuant to Rule 7001, Federal Rules of
Bankruptcy Procedure, applicable in Title III under Section 310 of PROMESA, 48 U.S.C. §
2170.

29.     This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C.
§§ 1331 and 1332, and Article III, Section 2 of the U.S. Constitution.  Section 306 of
PROMESA, 48 U.S.C. § 2166, provides an additional basis for the Court's subject matter
jurisdiction because the controversy between the parties arises under Title III of PROMESA, or

12

HTA_CONF 00016855

at a minimum, arises in, or is related to, a case under Title III.  Finally, to the extent any of the issues or claims raised herein lie beyond the Court's original jurisdiction, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 because such issues or claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

30.     The Court may enter a judgment declaring the rights and other legal relations of the parties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 7001, Federal Rules of Bankruptcy Procedure.  Under the All Writs Act, 28 U.S.C. § 1651, the Court may issue any writ necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claims occurred, and continue to occur, in this District.  Venue is also proper under 48 U.S.C. § 2167 because this adversary proceeding is brought in a Title III proceeding.

## FACTS

### I.     The HTA Bonds

#### a.     Issuance

32.     Defendant HTA is a public corporation and government instrumentality of the Commonwealth created to assume responsibility for the construction, operation, and maintenance of highways and other mass transportation systems in Puerto Rico.  *See* 9 L.P.R.A. § 2002.  To finance these activities, the Enabling Act authorized HTA to access the capital markets and conferred on HTA the power to issue bonds.  *See* 9 L.P.R.A. § 2004(g), (h), (l).

33.     Over the years, HTA issued several series of bonds under the 68 Resolution and a different resolution executed in 1998, the 98 Resolution (together with the 68 Resolution, the

HTA_CONF 00016856

"Resolutions"). A total of approximately $4.2 billion in principal amount of these bonds remain

outstanding, apportioned between the 68 Bonds and 98 Bonds as follows:

|  | 68 Bonds | 98 Bonds | All HTA Bonds |
|---|---|---|---|
| Aggregate Principal Amount Issued and Outstanding | $830 million | $3.37 billion | $4.2 billion |

    **b.**    **Security**

        **i.**    **68 Bond Collateral**

34. Under Puerto Rico law, the 68 Bonds are secured by a valid, enforceable, first-

priority pledge of and lien on:

(a) the stream of current and future Toll Revenues collected by HTA, consisting of certain tolls and other charges derived from HTA's operation of specific highways, thoroughfares, and speedways located in the Commonwealth, including of relevance to this case, PR-20, PR-52, and PR-53 (the "Toll Roads");

(b) current and future Tax Revenues, consisting of certain excise taxes and vehicle license fees imposed by the Commonwealth and allocated to HTA by statute; and

(c) funds held in, and investment earnings on, deposits to the credit of certain funds and accounts established under the 68 Resolution (clauses (a)-(c), collectively, the "68 Revenues").

*See* 68 Resolution §§ 401, 406, 407, 501, 601, 602; 9 L.P.R.A. § 2004(l).

35. Plaintiff's lien on the Pledged Revenues attaches at different points. First, Section

601 of the 68 Resolution provides that the 68 Bonds are secured by a direct pledge of (*i.e.,* a lien

on)[6] the stream of current and future Toll Revenues and Tax Revenues. In particular, Section

601 states expressly that the 68 Bonds are "payable solely from Revenues and from any funds

---

[6] In revenue bond financings, a "pledge" grants an encumbrance, charge against, or interest in the project or tax revenues to secure payment of principal of and interest on the bonds.

HTA_CONF 00016857

received by the Authority for that purpose from the Commonwealth *which Revenues and funds are hereby pledged to the payment thereof*…." 68 Resolution § 601 (emphasis added).[7] Section 602 reiterates that the 68 Bondholders have a lien directly on the stream of current and future Toll Revenues and Tax Revenues by expressly prohibiting HTA from incurring other secured debt with a priority ahead of the 68 Bondholders' "*lien on Revenues*." 68 Resolution § 602 (emphasis added).[8] Second, Section 401 provides for an additional lien on the *proceeds* of these Pledged Revenues once deposited with the Fiscal Agent for the 68 Bondholders' account. *See* 68 Resolution § 401.

36.      Numerous public documents confirm that Plaintiff's lien extends to the ongoing stream of current and future Toll Revenues and Tax Revenues, including, without limitation, the following documents:

(a)      Official Statement for Issuance of Series AA Bonds, dated June 17, 2010 (providing that the 68 Bonds are secured by a pledge of and lien on, among other collateral, the Pledged Revenues);

(b)      Official Statement for Issuance of Series CC Bonds, dated Feb. 15, 2007 (same);

(c)      UCC-1 financing statements (indicating that the 68 Bondholders' collateral includes the Pledged Revenues); and

(d)      Audited Financial Statements for HTA, FY 2014 and 2013 (stating that "[t]he bonds are secured by a pledge of," among other collateral, the "the gross

---

[7] In turn, Section 101 defines "Revenues" to include "Toll Revenues," and "Toll Revenues" as the "tolls or other charges, if any, imposed by the Authority for the use of any of its Traffic Facilities." 68 Resolution § 101. "Revenues" is also defined to include the "Tax Revenues," specifically "all moneys received by the Authority on account of gasoline tax allocated to the Authority by Act No. 75, approved June 23, 1965," as well as "the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico has allocated or may hereafter allocate to the Authority and expressly authorize the Authority to pledge to the payment of the…Bonds…and which are pledged by the Authority to the payment of the…Bonds…." *Id*.

[8] Other provisions in the 68 Resolution also reference the lien on "Revenues," including provisions that prohibit amendments that would create a "lien upon or other pledge of Revenues *other than the lien and pledge created under this Resolution*." 68 Resolution § 802 (emphasis added).

HTA_CONF 00016858

receipts of the gasoline excise taxes and one half of the diesel oil excise taxes,…$15 per vehicle per year from motor vehicle license fees,…[and] proceeds of any tolls or other charges which the Authority may impose for the use of any of its traffic facilities….").

37.    Finally, Defendants admitted the existence of Plaintiff's lien in earlier

proceedings concerning the 68 Bonds.  Specifically, the Commonwealth and HTA represented to

the Court of Appeals for the First Circuit that the 68 Bonds are "secured by a pledge of revenues

generated by highway tolls, excise taxes on gasoline, vehicle license fees, and investment

earnings."  *See* Respondents-Appellees Br. at \*10, *Peaje Investments LLC v. Alejandro Garcia-*

*Padilla*, No. 16-2377 (1st Cir. Dec. 23, 2016), *available at*: 2016 WL 7438090.  Moreover, both

Judge Besosa of this Court and the Court of Appeals found that such a lien exists.  In a published

decision, Judge Besosa found that:

> …Peaje Investments ***continues to hold a security interest in a***
> ***stable, recurring source of income*** that will eventually provide
> funds for the repayment of the PRHTA bonds.  Though it will not
> receive the ***pledged revenues*** during the stay period, this enduring
> security interest means that it faces only a delay in recouping such
> funds, not a permanent loss of them.  The Court believes that the
> ***existence of this continuing lien on a perpetual source of revenue***
> satisfies the "flexible" standard applicable to determinations of
> adequate protection….

*Peaje Investments LLC v. García-Padilla*, No. 16-02365, 2016 U.S. Dist. LEXIS 153711, at \*23

(D.P.R. Nov. 2, 2016) (emphasis added).  The Court of Appeals likewise found that "[t]he bonds

are secured by a lien on toll revenues, among other things."  *Peaje Investments LLC v. García-*

*Padilla*, 845 F.3d 505, 510 (1st Cir. 2017).  Defendants are bound by their admissions and these

findings.

### ii.    98 Bond Collateral

38.    The 98 Bonds, on the other hand, are secured by: (a) a separate stream of toll

revenues derived from the operation of highway PR-66; (b) the proceeds of certain taxes, fees,

HTA_CONF 00016859

and deposits (which are distinct from the taxes, fees, and investment earnings assigned to the 68 Bonds); and (c) any unencumbered 68 Revenues remaining on deposit after payment or provision for the payment of debt service and required reserves on outstanding 68 Bonds. *See* 98 Resolution §§ 401, 501, 601; 9 L.P.R.A. § 2004(l). In this way, the 68 Bondholders enjoy priority of payment from the 68 Revenues (including the Toll Revenues and Tax Revenues) ahead of, among other persons, the 98 Bondholders.

### iii.    Waterfall Payment Protocol

39.    As noted, the Resolutions explicitly require HTA to deposit the Pledged Revenues on a monthly basis with the Fiscal Agent acting for the 68 Bonds. *See* 68 Resolution § 401; 98 Resolution § 401. Once received, the Fiscal Agent is required to allocate these funds between certain designated accounts based on a "waterfall" payment protocol established pursuant to the Resolutions. *See id.* This protocol may be depicted graphically as follows:

17



40.     This arrangement prioritizes distributions of the funds beginning with the highest

priority category at the top of the waterfall and descending to the lowest priority category at the

bottom.  Moneys deposited in the first three accounts under the waterfall provision—which serve

as the 68 Bondholders' Collateral Account and are often referred to collectively as the "68

18

HTA_CONF 00016861

Sinking Fund"—are held in trust for, and are subject to a lien and charge in favor of, the 68 Bondholders until disbursed by the Fiscal Agent to those holders in accordance with the Resolutions. *See* 68 Resolution §§ 401, 406, 501.

41.     With respect to the 68 Bonds, the waterfall operates in such a manner as to ensure that by the semi-annual debt service dates (January and July), sufficient funds are on deposit in the 68 Bondholders' Collateral Account to cover the entire interest payment, and by the annual principal payment date (July), the full principal installment is also available to be paid. In addition, HTA is required to maintain a consistent collateral reserve in the "68 Reserve Account" (depicted above) equal to the lesser of: (a) the maximum principal and interest requirements for any fiscal year on account of the outstanding 68 Bonds; and (b) 10% of the proceeds of each series of 68 Bonds outstanding, as determined on the basis of those bonds' initial offering prices to the public. *See* 68 Resolution § 101 (definition of "Reserve Requirement").

42.     Together, these protections are designed to ensure that the Fiscal Agent steadily accumulates enough funds to make principal and interest payments to the 68 Bondholders in advance of the relevant due dates, and to provide a suitable reserve to cover shortfalls to the extent ordinary collections of the Pledged Revenues are insufficient to fund the payments. Aside from its obligation to deposit the Pledged Revenues, HTA covenanted in the 68 Resolution that "it will promptly pay the principal of and the interest on every bond issued under the provisions of this Resolution at the places, on the dates and in the manner provided herein…." 68 Resolution § 601. Furthermore, HTA covenanted that it "will not incur any indebtedness nor create or cause or suffer to be created any debt, lien, pledge, assignment, encumbrance or any other charge having a priority to or being on a parity with the lien on Revenues on the Bonds, except upon the conditions and in the manner provided herein…." 68 Resolution § 602.

19

HTA_CONF 00016862

43.     The 68 Bondholders are, as noted, beneficiaries of a "gross" lien on the stream of current and future Pledged Revenues under Puerto Rico law. *See* 68 Resolution §§ 401, 405. Pursuant to that lien, HTA must *first* deposit sufficient funds into the 68 Bondholders' Collateral Account to meet the debt service and reserve requirements under the Resolutions *before* it can spend the funds elsewhere. (By contrast, a "net lien" would permit the payment of certain items described in the financing documents before payment of debt service.)

44.     Typical of a "special revenue" financing, the 68 Bonds are, as noted, "limited-recourse" obligations, meaning they are ordinarily payable *solely* from the revenues pledged to their repayment, and no other source. This is in contrast to a "general obligation" financing, in which the bondholders have a direct claim against the municipality and its taxing power. As a result of the limited-recourse nature of the 68 Bonds, the unlawful diversion of the Pledged Revenues immediately reduces the limited pool of collateral available to satisfy the 68 Bonds, thereby increasing the risk of non-payment.

c.     **Priority Under Puerto Rico Law**

45.     The Commonwealth's ability to alter the payment rights of the 68 Bonds is carefully circumscribed under Puerto Rico law. The Constitution of Puerto Rico provides that the Commonwealth may divert or otherwise retain "available resources" for payment of the "public debt" (namely, the Commonwealth's general obligation bonds), but only in a limited set of circumstances. Section 8 of Article VI of the Constitution of Puerto Rico provides:

> In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

*See* P.R. Const. art. VI, § 8.

20

46.    Under the Constitution and statutes of Puerto Rico, the Toll Revenues and
investment earnings pledged to payment of the 68 Bonds cannot be reallocated for other means
because they do not qualify as "available resources" of the Commonwealth.[9]  Instead, the 68
Bondholders' lien on the stream of current and future Toll Revenues and investment earnings is a
first-priority lien, which cannot be reprioritized, subordinated, or redirected for any purpose.
The Tax Revenues, by contrast, *are* considered "available resources," and thus can be reallocated
in some cases, but only for payment of the public debt.  Moreover, before that can happen, an
important precondition must be satisfied: all other available resources for the relevant fiscal year
must be insufficient to pay the public debt.

47.    Various laws of the Commonwealth expressly afford the 68 Bondholders a right
of priority to the Tax Revenues second only to payment of the public debt.  *See, e.g.*, 13 L.P.R.A.
§ 31751(a)(1)(B) (pledge of excise taxes); 9 L.P.R.A. §§ 2021, 5681 (pledge of vehicle license
fees); *see also* 23 L.P.R.A. § 104(c)(1)-(5) (Puerto Rico Office of Management and Budget Act
"priority guidelines" for disbursement of public funds) (assigning a second priority to HTA debt,
junior only to payment of the public debt).  These statutes further establish that the Tax
Revenues cannot be diverted to fund the Commonwealth's or HTA's general expenditures.
Rather, they can only be diverted to satisfy the Commonwealth's general obligation debt to the
extent the Commonwealth lacks funds to pay that debt in any given fiscal year.

---

[9] Recognizing this, a group of general obligation bondholders who represent to owning a "substantial
amount" of such bonds have admitted in other proceedings that the Toll Revenues "are not available
resources subject to clawback for payment of the Commonwealth's Constitutional Debt." *See ACP
Master, LTD v. The Commonwealth of Puerto Rico*, Adv. Pro. No. 17-00159-LTS in No. 17 BK
3283-LTS, [Dkt. No. 36] (D.P.R. 2017).  This is significant because the general obligation
bondholders are, as noted, the sole beneficiaries of the constitutional "claw back" to the extent it
were to spring into effect.

HTA_CONF 00016864

48.    The Commonwealth's claw back of the Tax Revenues plainly violates these provisions.  By all indications, the Commonwealth has been diverting the Tax Revenues to pay its general expenditures and certain favored creditors, and not its general obligation debt.  Nor is there any indication that "available resources" are insufficient to pay the public debt.  Under the circumstances, the Tax Revenues must be used to pay fund HTA's expenses and obligations.

### d.    Bondholder Rights and Remedies

49.    The Enabling Act provides that 68 Bondholders such as Plaintiff may bring suit upon the 68 Bonds, including "[b]y mandamus or other suit, action, or proceeding at law or in equity to enforce [their] rights against...[HTA], its officers, agents, and employees to perform and carry out its and their duties and obligations [under the Enabling Act] and its and their covenants and agreements with bondholders…." 9 L.P.R.A. § 2013.  Additionally, the Enabling Act authorized HTA to "sue and be sued, complain and defend in all courts of justice and administrative bodies…." 9 L.P.R.A. § 2004(g).

### e.    Additional Covenants

50.    As referenced in the 68 Resolution, HTA "has entered into an agreement with the Secretary of Public Works pursuant to which the Secretary…agreed to pay the costs of maintaining, repairing and operating all Traffic Facilities financed by the [HTA] in whole or in part by the issuance of bonds of the [HTA] under the provisions of this Resolution, *from general funds of the Commonwealth of Puerto Rico*, which are made available to him for such purpose."  68 Resolution § 604 (emphasis added).  In the event such funds are not available, the 68 Resolution provides that HTA may only use funds that are left over after the payment of debt service on, among other things, the 68 Bonds.  *Id.*

51.    Furthermore, in Section 2019 of the Enabling Act, "[t]he Commonwealth

22

HTA_CONF 00016865

Government...pledge[s] to, and agree[s] with, any person, firm or corporation, or any federal, commonwealth or state agency, subscribing to or acquiring bonds of [HTA] to finance in whole or in part any traffic facilities or any part thereof, that it will not limit or restrict the rights or powers hereby vested in [HTA] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." 9 L.P.R.A. § 2019.

### f.      Maturity

52.     The 68 Bonds mature on different dates depending on the series in which they were issued.  The maturity dates for the 68 Bonds beneficially owned by Plaintiff are set forth below.

| 68 Bond Series | Maturity Date |
| --- | --- |
| Series AA-2 Bonds | July 1, 2035 (unless redeemed prior to the final maturity date) |
| Series CC Serial Bonds | Maturity dates ranging between July 1, 2028 – 2030 |
| Series CC Term Bonds | July 1, 2036 |
| Series CC Capital Appreciation Bonds | Maturity  dates ranging between July 1, 2023 – 2027 |

### g.      Perfection

53.     To the extent that Puerto Rico's version of Article 9 of the UCC applies, Plaintiff's lien on the stream of current and future Pledged Revenues is also perfected by the filing of UCC-1 financing statements, which properly (1) name the debtor (HTA), (2) name the secured party (the 68 Bondholders), and (3) indicate the collateral covered by the financing statement (the Pledged Revenues, among other collateral).

HTA_CONF 00016866

### III.     Unlawful Diversion of the Tax Revenues

54.     On November 30, 2015, then-Governor García Padilla issued Administrative Bulletin No. OE-2015-046 (the "November 2015 Executive Order")[10] directing the Commonwealth Treasurer to retain the Tax Revenues for application to the public debt instead of releasing such funds to HTA for deposit with the Fiscal Agent. *See* November 2015 Executive Order, "First" clause.  In addition, the November 2015 Executive Order expressly states that the Commonwealth is funding general "expenses" ("los gastos") with the revenues pledged to repayment of the 68 Bonds. *See id.* at fifth "Whereas" clause.

55.     On December 8, 2015, then-Governor García Padilla issued an additional executive order—Administrative Bulletin No. OE-2015-049 (the "December 2015 Executive Order," and together with the November 2015 Executive Order, the "2015 Executive Orders").[11] While the December 2015 Executive Order directed the OMB Director to be guided by the statutory priorities under Puerto Rico law when making "budgetary adjustments," he was directed to do so with "the purpose of guaranteeing essential services and ensuring the proper functioning of the Government…." *See* December 2015 Executive Order, "First" clause. Various other officers and agents of the Commonwealth were then ordered to take into account, whether directly or indirectly, the OMB Director's budgetary adjustments when managing the Commonwealth's cash flows. *See id.* at "Second," "Third," and "Fourth" clauses.  The December 2015 Executive Order expired on June 30, 2016. *See id.* at "Fifth" clause.

---

[10] A copy and certified translation of the November 2015 Executive Order is attached hereto as **Exhibit C**.

[11] A copy and certified translation of the December 2015 Executive Order is attached hereto as **Exhibit D**.

24

HTA_CONF 00016867

56.     On December 17, 2015, the Deputy Secretary of the Treasury, Juan Flores

Galarza, partially implemented the December 2015 Executive Order by issuing Circular Letter

No. 1300-15-16 (the "Circular Letter").[12]  The Circular Letter set forth guidelines for the release

of funds under the custody of the Commonwealth Treasurer, including the proceeds of the

diverted Tax Revenues.  After excluding certain federal funds from their application, these

guidelines directed the payment of interest and amortization on the public debt and various

general expenditures of the Commonwealth, while entirely omitting any mention of expenditures

for payment of HTA debt from the Pledged Revenues.  *See* Circular Letter at 2-4.

## IV.     Diversion of the Pledged Toll Revenues Under Authority of the Moratorium Act

### a.     Enactment of the Moratorium Act

57.     On April 6, 2016, the Commonwealth enacted the Puerto Rico Emergency

Moratorium and Financial Rehabilitation Act, Act No. 21-2016 (the "Moratorium Act").  The

Moratorium Act directed then-Governor García Padilla to prioritize the payment of "essential

services" over the debt obligations of government entities (including HTA) during the

statutorily-defined "covered period."  *See* Moratorium Act §§ 103(m), 201(a).  The statute's

"covered period" ran from the date of enactment until January 31, 2017 (subject to extension for

up to two months by executive order of the Governor).  *See id*.

58.     The Moratorium Act purported to give then-Governor García Padilla wide latitude

to issue executive orders to: (a) declare a "state of emergency" with respect to the

Commonwealth or any other "government entity" within the Commonwealth, defined to include

---

[12] A copy and certified translation of the Circular Letter is attached hereto as **Exhibit E**.

25

HTA_CONF 00016868

The supporting documents for this claim are too voluminous to include in the proof of claim PDF.  They are available upon request by emailing (**puertoricoinfo@PrimeClerk.com**) or by calling **844-822-9231**.

HTA_CONF 00016869



# Prime Clerk

## **Brooklyn**

### CLAIM/BALLOT HAND DELIVERY CONFIRMATION SHEET

DATE RECEIVED:     6-26-18

CASE:     Puerto Rico

NO. OF CLAIMS:     4

NO. OF BALLOTS:     0

COPIES:     Returned

RECEIVED BY:     Christine

RECEIVED
JUN 26 2018
PRIME CLERK LLC