# Debtor's Ex. 45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JANET VÁZQUEZ-VELÁZQUEZ, et al.,

   Plaintiffs,

    v.

PUERTO RICO HIGHWAY AND
TRANSPORTATION AUTHORITY, et al.,

   Defendants.

CIVIL NO.: 15-1727 (MEL)

## OPINION AND ORDER

### I. Procedural Background

The plaintiffs here are sixty-nine employees of the Puerto Rico Highway and Transportation Authority ("PRHTA") ("Plaintiff Employees") as well as their spouses and conjugal partnerships (collectively "Plaintiffs"). ECF No. 21, ¶¶ 6, 13–14. The defendants are PRHTA and PRHTA's Executive Director (collectively "Defendants"). Id. ¶¶ 7–8. On August 18, 2015, Plaintiffs filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants violated their rights of procedural due process and substantive due process under the Fourteenth Amendment Due Process Clause. Id. at 5, 37-44. In the amended complaint, Plaintiffs also alleged that their rights were violated by Defendants under the Takings Clause of the Fifth Amendment, Equal Protection Clause of the Fourteenth Amendment, and the Contract Clause in Article 1, Section 10, Clause 1 of the Constitution of the United States. Id. Plaintiffs also alleged several claims in the amended complaint under Puerto Rico law statutes including Title 29, Annotated Laws of Puerto Rico, Section 250, et seq. ("Law 180"), Title 29, Annotated Laws of Puerto Rico, Section 146, et seq. ("Law 100"), and Title 31, Annotated Laws of Puerto Rico, Section 5141 ("Article 1802"). Id. at 21, 45.

HTA_CONF 00016981

On September 10, 2015, Defendants filed a motion to dismiss requesting that Plaintiffs'

claims in the amended complaint be dismissed. ECF No. 28. Defendants' request in its motion to

dismiss were granted in part and denied in part on January 14, 2016. ECF No. 56. Regarding

Plaintiff Employees' spouses' and the conjugal partnerships' Sections 1983 claims, Defendants'

motion to dismiss was granted and consequently their substantive due process, procedural due

process, takings clause, Contract Clause, and equal protection claims were dismissed with

prejudice. Id. at 21-22. Plaintiff Employees' substantive due process, takings clause, and equal

protection claims were also dismissed with prejudice. Id. at 22. Defendants' motion to dismiss

was denied as to Plaintiff Employees' procedural due process claim. Id. Defendants' request that

Plaintiff Employees' Contract Clause claim be dismissed was denied without prejudice. Id.

Because Defendants did not make any specific argument as to Plaintiffs' claims under Law 100,

Law 180, and Article 1802, those claims remained active. Id.

On January 26, 2021, Plaintiffs' claims pursuant to Law 100 were dismissed with

prejudice in view that Plaintiffs informed that they voluntarily "desist with prejudice as to any

claim pursuant to Law 100." ECF Nos. 152, 155. On February 17, 2021, Plaintiffs' claims under

Law 180 were also dismissed with prejudice in light that Plaintiffs moved to "voluntarily desist

all claims under [Law 180], consenting to dismissal with prejudice as to said allegations." ECF

Nos. 162, 170.

A pretrial and settlement videoconference was held on February 25, 2021. ECF No. 172.

After listening to the arguments of the attorneys of record at said conference, a deadline to file

cross-motions for summary judgment was set for April 26, 2021. Id. at 2. Pending before the

court are Plaintiffs' and Defendants' cross-motions for summary judgment on Plaintiff

Employees' remaining Section 1983 claims alleging Defendants violated their rights under the

2

HTA_CONF 00016982

Fourteenth Amendment Procedural Due Process Clause and Contract Clause, and Plaintiffs'
claims pursuant to Article 1802. ECF Nos. 183, 188. A joint stipulation of facts and exhibits was
filed on May 24, 2021. ECF No. 189. Plaintiffs filed a response to Defendants' motion for
summary judgment on June 1, 2021. ECF No. 191. On June 7, 2021, Defendants filed a response
to Plaintiffs' motion for summary judgment. ECF No. 192. A reply was filed by Plaintiffs on
July 13, 2021 and a surreply was filed by Defendants on July 16, 2021. ECF Nos. 205, 209.

## II.      Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay
the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ.
Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is
granted when the record shows that "there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if
the evidence about the fact is such that a reasonable jury could resolve the point in the favor of
the non-moving party. A fact is material if it has the potential of determining the outcome of the
litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting
Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a
genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the
movant presents a properly focused motion "averring 'an absence of evidence to support the
nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of
at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d
112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).
For issues where the nonmoving party bears the ultimate burden of proof, the party cannot

3

HTA_CONF 00016983

merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply 'require us to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.'" Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnerships, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (quoting Adria Int'l Group, Inc., v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)). "Although it is well-settled that the court must decide each motion for summary judgment on its own merits, this does not mean that 'each motion must be considered in a vacuum. Where, as here, cross-motions for summary

4

HTA_CONF 00016984

judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time,' applying the same standards to each motion." Id. (citing P.R. American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)).

## III. Uncontested Material Facts

Plaintiff Employees are current or former employees of PRHTA and are professionals or administrators. ECF No. 189-1, at 1, ¶¶ 1, 5. The rest of the plaintiffs are the respective spouses of the Plaintiff Employees. ECF No. 189-1, at 1, ¶ 29. PRHTA is a public corporation created by law, with faculty to sue and be sued. ECF No. 189-1, at 1, ¶ 2. The regional offices of PRHTA are located in the municipalities of Manatí ("North Region"), Mayagüez ("West Region"), Ponce ("South Region"), Humacao ("East Region") and San Juan ("Metro Region"). ECF No. 189-1, at 1, ¶ 3. Each Regional Office is directed by a Regional Director who holds a trust position. ECF No. 189-1, at 1, ¶ 4. Under the Regional Office, there are Project Supervisors and Project Administrators. ECF No. 188-2, at 1, ¶ 1; ECF No. 193-1, at 1, ¶ 1.

Among the Plaintiff Employees, there are fifty-four PRHTA current or former employees with career appointments as Engineers in Training, Engineer I, Engineer II, Engineer III, Engineer IV or Chiefs of Brigade that at all times pertinent to this complaint served as Project Administrators. ECF No. 189-1, at 1, ¶ 25. The Project Administrators serve as the direct link between the PRHTA and the private contractors that build its construction projects. ECF No. 189-1, at 1, ¶ 26. Among the Project Administrators' main duties is the inspection of the construction project to make sure that the private contractor builds in accordance with the plans and specifications under the construction contract. ECF No. 189-1, at 1, ¶ 27. There are also fifteen engineers that serve as Project Supervisors among the Plaintiff Employees at the filing of the complaint. ECF No. 188-2, at 2, ¶ 4; ECF No. 189-1, at 1, ¶ 7; ECF No. 193-1, at 1, ¶ 4.

5

HTA_CONF 00016985

A Project Supervisor may supervise multiple Project Administrators in one or more municipalities within his region. ECF No. 188-2, at 1-2, ¶ 3; ECF No. 193-1, at 1, ¶ 3. The Project Supervisors and Project Administrators may work alongside the public works' private contractors. ECF No. 184-1, at 1, ¶ 1; ECF No. 191-1, at 1, ¶ 1; ECF No. 188-2, at 2, ¶ 6; ECF No. 193-1, at 1, ¶ 6. Plaintiff Employees are nonunion employees of the PRHTA. ECF No. 189-1, at 2, ¶ 28.

Plaintiff Employees receive a regular salary for their employment classification with the PRHTA. ECF No. 189-1, at 1, ¶ 19. Since the year 2000, PRHTA has provided a compensation program to Plaintiff Employees in addition to their regular salary. The latest version of this program was Regulation 02-017, "Compensation Program for Management of Construction Projects" (hereinafter "Regulation 02-017") which was adopted by PRHTA on November 28, 2011. ECF No. 188-2, at 2-3, ¶¶ 5, 11; ECF No. 193-1, at 1-2, ¶¶ 5, 11; ECF No. 189-1, at 1, ¶ 6. Plaintiff Employees, as engineers, engineers in training, or chiefs of brigades performing duties as Project Supervisors or Project Administrators, were participants of the compensation program established by Regulation 02-017. ECF No. 189-1, at 1, ¶ 7.

Article I of Regulation 02-017 provides that "[t]he Construction Project Management Compensation Program . . . recognizes the difference in tasks, duties, and responsibilities that exist between the officials assigned to the management of the construction projects and other employees with the same classification who do not work in these types of projects." ECF No. 189-1, at 1, ¶ 8. Article I of Regulation 02-017 also provides that "[i]t is emphasized that, in the fulfillment of their responsibilities, these officials are obligated to make extraordinary efforts to ensure that the contractors carry out the projects effectively and efficiently, as agreed in the contract." ECF No. 189-1, at 1, ¶ 9. Additionally, according to Article I of the Regulation 02-

6

HTA_CONF 00016986

017, "[t]his situation, among other factors, causes an adverse effect on their family relationships, risking their safety and health. For this reason, they are in a disadvantageous position compared to the other colleagues of the Authority." ECF No. 189-1, at 1, ¶ 10. Article I of the Regulation 02-017 provides that "[i]n accordance with the foregoing, it is worthwhile to establish an evaluation system that provides these officers with fair and reasonable compensation, in addition to the salary they earn, considering the level of execution and performance achieved with respect to their tasks, duties, and responsibilities." ECF No. 189-1, at 1, ¶ 11. Article I of the Regulation 02-017 further provides that "[t]herefore, it recognizes the employees of the Construction Area assigned to the project management, whose requirement of duties exceed what is established in the position they hold." ECF No. 189-1, at 1, ¶ 12.

As a condition for the compensation payment under Regulation 02-017, an evaluation of the Plaintiff Employees' execution of duties and performance had to be performed. ECF No. 189-1, at 1, ¶¶ 14, 15. The PRHTA quarterly furnished (every three months) the additional compensation under Regulation 02-017 to the Plaintiff Employees. ECF No. 189-1, at 1, ¶ 13. Compensation payments under Regulation 02-017 were not a fixed amount and could fluctuate depending on the evaluation percentages received by the Plaintiff Employees. ECF No. 189-1, at 1, ¶ 17; ECF No. 184-1, at 1, ¶ 2; ECF No. 191-1, at 1, ¶ 2. PRHTA had the power to remove any of the Plaintiff Employees from the compensation program if they failed to achieve the minimum evaluation requirements. ECF No. 189-1, at 1, ¶ 16. The PRHTA withheld income, Medicare and Social Security taxes in accordance with the Federal Insurance Contribution Act ("FICA") and local laws from the payments received by Plaintiff Employees under Regulation 02-017. ECF No. 189-1, at 1, ¶ 18; ECF No. 188-2, at 3, ¶ 13; ECF No. 193-1, at 3, ¶ 13.

7

HTA_CONF 00016987

On June 17, 2014, the Puerto Rico Legislature enacted P.R. Act No. 66-2014, "The

Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability

Act" (hereinafter "Act No. 66-2014"). ECF No. 189-1, at 1, ¶ 21; ECF No. 188-2, at 3, ¶ 14;

ECF No. 193-1, at 3, ¶ 14. Act No. 66-2014 applies to PRHTA as a public corporation of the

Executive Branch of the Commonwealth of Puerto Rico.[1] ECF No. 189-1, at 1, ¶ 22.

On October 2, 2014, PRHTA issued Informative Bulletin 2015-007, "Measures for

Expense Reduction in Compliance with Articles 9, 10, 11, and 17 of Act No. 66-2014,

Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability

Act" (hereinafter "Informative Bulletin 2015-007"). ECF No. 189-1, at 1, ¶ 23; ECF No. 188-2,

at 3-4, ¶ 15; ECF No. 193-1, at 3, ¶ 15. Informative Bulletin 2015-007 specified, *inter alia*, that

the compensation payments under Regulation 02-017 were left without effect pursuant to Act

No. 66-2014 and were prohibited retroactively to July 1, 2014. ECF No. 184-1, at 2, ¶¶ 10, 11;

ECF No. 189-3, at 6, 15. The rescinded compensation payments under Regulation 02-017 were

not replaced by another regulation. ECF No. 188-2, at 5, ¶ 21; ECF No. 193-1, at 4, ¶ 21.

Plaintiff Employees' regular salaries, however, have not been impaired, modified, or changed by

PRHTA. ECF No. 189-1, at 1, ¶ 20.[2]

---

[1] Defendants' proposed facts 3-7 are not really facts but rather Defendants' legal interpretation of statutory provisions.
[2] According to plaintiffs Mr. Carlos Céspedes Gómez, Ms. Janet Vázquez Velázquez, and Ms. Sheila Pacheco Sánchez, who often work outside of regular working hours, they were unaware that they would not be paid additional compensation for their work in accordance with Regulation 02-017 subsequent to the enactment of Act No. 66-2014. Mr. Céspedes, Ms. Vázquez, and Ms. Pacheco also contend that their duties and responsibilities have not changed after the Regulation 02-017 compensation payments were eliminated and they continue to give the same level of service, time, and dedication. See ECF No. 188-2, ¶¶ 7, 18, 19, 22-25. However, it is unclear whether the same work circumstances of plaintiffs Mr. Céspedes, Ms. Vázquez, and Ms. Pacheco are shared by the other Plaintiff Employees. The statements under penalty of perjury of plaintiffs Mr. Céspedes, Ms. Vázquez, and Ms. Pacheco do not establish the foundation for their personal knowledge of the work circumstances of the remaining Plaintiff Employees. See ECF Nos. 188-4, 188-5, 188-6. Nor do the subsequent statements under penalty of perjury submitted by Mr. Céspedes, Ms. Vázquez, and Ms. Pacheco stating that they discussed work schedules, work hours, work conditions, and the work performed before and after Informative Bulletin 2015-007 was issued with the remaining Plaintiff Employees cure this deficiency. See ECF Nos. 195-2; 195-3; 195-4. These statements do not offer specifics regarding when and where the conversations took place, who was present, and what was

HTA_CONF 00016988

## IV. Legal Analysis

### A. Plaintiff Employees' Procedural Due Process Claims

Plaintiff Employees contend that Defendants violated their procedural due process rights by terminating the compensation payments under Regulation 02-017 without providing them with hearings or appellate rights. ECF No. 188, at 24-26. "The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property without due process of law.'"[3] Torres-Rivera v. Puerto Rico Elec. Power Auth., 598 F. Supp. 2d 250, 255 (D.P.R. 2009) (quoting U.S. Const. Amend. XIV, § 1). "In order to properly assert a procedural due process claim under § 1983, '[p]laintiffs must allege they have a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived them of that property interest without constitutionally adequate process.'" Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 182 (D.P.R. 2009) (quoting Mercado–Alicea v. P.R. Tourism Co., 396 F.3d 46, 53 (1st Cir. 2005)). "In evaluating a procedural due process claim under the Fourteenth Amendment, the Court's role is to determine 'whether [the plaintiff] was deprived of a protected interest, and, if so, what process was his due.'" Velázquez v. Mun. Gov't of Cataño, 91 F. Supp. 3d 176, 192 (D.P.R. 2015) (quoting Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, (1982)). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Mulero Abreu v. Oquendo-Rivera, 729 F.

---

specifically discussed. These statements constitute inadmissible hearsay under the Federal Rules of Evidence. Nor have statements under penalty of perjury been submitted by the other Plaintiff Employees. However, even if the work circumstances of plaintiffs Mr. Céspedes, Ms. Vázquez, and Ms. Pacheco applied to all Plaintiff Employees, it would not make a difference to Plaintiff Employees' claims as the analysis will subsequently show.

[3] "Puerto Rico is considered a state for Fourteenth Amendment purposes." Camacho-Morales v. Caldero, 68 F. Supp. 3d 261, 292 (D.P.R. 2014) (citing Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 599 (1976)).

HTA_CONF 00016989

Supp. 498, 520-21 (D.P.R. 2010) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

In the case at hand, Plaintiff Employees argue that they have a property interest in the compensation payments under Regulation No. 02-017 because they have a contractual right to said payments. ECF No. 188, at 15-17, 24; ECF No. 191, at 7. Certain sections of Regulation 02-017 indicate that Plaintiff Employees were "entitled" to receive the compensation payments. See ECF No. 189-2, at 5 ("This Regulation shall be applicable to those officials that hold positions included in Table 1 – Maximum Compensation per Participant . . . who will be entitled to the compensation and benefits provided in this regulation."); ECF No. 189-2, at 9 ("Said compensation will be additional to the salary of these officials, so they will be entitled to receive it according to their classification and the level of complexity of the project.").

A statute or regulation may create an enforceable contractual right that serves as the source of a constitutionally protected property interest. See Maine Ass'n of Retirees v. Board of Trustees of Main Public Employees Ret. Sys., 758 F.3d 23, 29 (1st Cir. 2014) (explaining that a "statute will be found to have created contractual obligations 'when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.'" (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 17 n.14 (1977)); Savage v. Mills, 478 F. Supp. 3d 16, 31 (D. Me. 2020) ("[F]ederal property interests under the 14th Amendment usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities." (citations omitted)). Plaintiff Employees, however, have not cited to any pertinent authority establishing that a contractual right arising from a regulation automatically qualifies as a constitutionally protected property interest. Nor have Plaintiff Employees shown that the compensations payments under

10

HTA_CONF 00016990

Regulation 02-017 stemmed from an "independent source" to qualify as a constitutionally protected benefit because said regulation was enacted by PRHTA, a party in this case. Yet, even recognizing that a contractual right could derive from a regulation, the mere entitlement to a contractual right is not necessarily synonymous with the possession of a constitutionally protected property interest.

The First Circuit has "long distinguished between garden-variety contract breach and those property deprivations that rise to the Constitutional level." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 155 (1st Cir. 2006); see García González v. Puig-Morales, 761 F.3d 81, 89 (1st Cir. 2014) ("Additionally, we have repeatedly held that 'a simple breach of contract does not amount to an unconstitutional deprivation of property,' and that 'the existence of a state contract, simpliciter, does not confer upon the contracting parties a constitutionally protected property interest.'" (citing Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 10 (1st Cir. 2005)). The mere breach of a contractual right is not axiomatic of a Fourteenth Amendment due process violation, otherwise "virtually every controversy involving an alleged breach of contract by a government or a governmental institution, agency or instrumentality would have to be a constitutional case." Casey v. Depetrillo, 697 F.2d 22, 23 (1st Cir. 1983).

"'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it.'" Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002) (citing Roth, 408 U.S. at 577); see Rodríguez Cruz v. Trujillo, 443 F. Supp. 2d 240, 244 (D.P.R. 2006) ("In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that [he] has a legally recognized expectation to the property interest at issue."); Cruz v. Puerto Rico Power Auth., 878 F. Supp. 2d 316, 330-31 (D.P.R. 2012) ("To

11

have a property interest in a benefit, such as an increase in salary or a promotion, a person clearly

must have more than an abstract need or desire for said benefit.").

A legitimate entitlement to a constitutionally protected property interest may exist where

said interest may be withheld only "for cause." See Logan, 455 U.S. at 428 ("The hallmark of

property . . . is an individual entitlement grounded in state law, which cannot be removed except

'for cause.'"); Beitzell v. Jeffrey, 643 F.2d 870, 874 (1st Cir. 1981) ("Thus, in the area of

government employment, a person who holds a job from which he can be removed only 'for

cause', has a protected property interest, while one who can be removed 'at will' does not.");

Tundo v. Cnty. of Passaic, 923 F.3d 283, 287 (3rd Cir. 2019) ("We recognize a protected interest

in a benefit, for example, if the government can withhold it only "for cause.").

A legitimate claim of entitlement to a constitutionally protected property interest may

also exist where the government's discretion in withholding the benefit is restricted. See Beitzell,

643 F.2d at 874 ("the more circumscribed is the government's discretion (under substantive state

or federal law) to withhold a benefit, the more likely that benefit constitutes 'property'"); Brown

v. City of Michigan City, Ind., 462 F.3d 720, 729 (7th Cir. 2006) ("A property interest of

constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the

plaintiff cannot be denied the interest 'unless specific conditions are met.'"); Blocktree Prop.,

LLC v. Public Util. Dist. No. 2 of Grant Cnty. Washington, 447 F. Supp. 3d 1030, 1039 (E.D.

Was. Mar. 12, 2020) ("When the law 'contains mandatory language that restricts the discretion'

of the body administering the benefit, it is more likely that the benefit is a protected property

interest. On the other hand, if a statute gives the administering body broad authority to act with

regard to the benefit, then the plaintiff is less likely to establish that he or she is entitled to that

benefit. Thus, the benefit is less likely to be a protected property interest.").

HTA_CONF 00016992

In the case at hand, Plaintiff Employees argue that they have a legitimate entitlement to the compensation payments provided by Regulation 02-017. ECF No. 188, at 24. Defendants contend that the Regulation 02-017 compensation was a "bonus" over which the Plaintiff Employees do not possess a legitimate claim of entitlement. ECF No. 183-1, at 19. Plaintiff Employees, however, refute Defendants' characterization of the Regulation 02-017 compensation as a bonus and instead refer to it as "additional compensation." ECF No. 191, at 8; ECF No. 191-1, at 4, ¶ 13.

Regulation 02-017 explicitly states that the compensation provided under said regulation is "additional renumeration to the salary of the official for being a participant of the Program which will be subject to the classification of the participant, level of complexity of the project and the result obtained in the performance and performance [sic] evaluations." ECF No. 189-2, at 6. Regardless of whether the Regulation 02-017 compensation was indeed a "bonus," the parties agree that Plaintiff Employees receive a regular salary for their employment classification with the PRHTA and that said salary has not been impaired, modified, or changed. ECF No. 189-1, at 2, ¶¶ 19, 20. Hence, the issue is whether Plaintiff Employees have a legitimate claim to the compensation payments under Regulation 02-017, which is not part of their regular salary, as a constitutionally protected property interest. It is hereby concluded that the answer to this inquiry is in the negative. "Where a plaintiff does not contend that his employment was terminated, but rather asserts that he was demoted, or his compensation diminished, Puerto Rico law will not afford him a constitutionally protected interest." See Méndez-Fradera v. Vázquez-Collazo, Civ. No. 14-1875, 2016 WL 917910, at *5 (D.P.R. Mar. 8, 2016). In this case, Plaintiff Employees have not claimed that their employment positions were terminated.

13

HTA_CONF 00016993

Furthermore, the conditionality of the compensation payments under Regulation 02-017 shows that no reasonable jury could find that Plaintiff Employees possessed a legitimate claim to a constitutionally protected benefit. The evidence reflects that as a condition for the Regulation 02-017 compensation payments, Plaintiff Employees' execution of duties and performance were subject to an evaluation. ECF No. 189-1, at 2, ¶¶ 14, 15; ECF No. 189-2, at 11-12, 20-23. Additionally, according to Regulation 02-017, all evaluations are subject to a review by Committee consisting of the Executive Auxiliary Director of Infrastructure, Assistant Executive Director of Human Resources and Labor Affairs, the Director of the Construction area and "the corresponding Regional Directors to pass judgment on the results obtained and validate them." ECF No. 189-2, at 19. Regulation 02-017 provides that "[i]f errors are found, evaluations without supported data and/or inconsistencies, this Committee may revoke and/or modify the results of the evaluations under review." ECF No. 189-2, at 19. Moreover, the compensation payments under Regulation 02-017 could fluctuate as the amount was dependent on the outcome of the evaluations. ECF No. 189-1, at 2, ¶ 17; ECF No. 189-2, at 13. PRHTA also "had the power to remove any of the Plaintiff Employees from the program if they failed to achieve the minimum evaluation requirements." ECF No. 189-1, at 2, ¶ 16; ECF No. 189-2, at 13. Thus, the many conditional requirements in Regulation 02-017 shows that PRHTA held ample discretion in administering payments under the compensation program.

Additionally, Plaintiff Employees have not cited to any language in Regulation 02-017 indicating that compensation payments could be withheld only "for cause." As stated earlier, the amount of compensation payments was determined by the percentage that was achieved on the evaluation of the duties and performance of a Plaintiff Employee. ECF No. 189-2, at 13. Thus, Plaintiff Employees' claim that they were entitled to the Regulation 02-017 compensation

14

HTA_CONF 00016994

payments is unsustainable when they have not cited to any record evidence indicating that they achieved the requisite percentage on the evaluations for the pertinent time periods. The fact that the payment of the Regulation 02-017 compensation was dependent upon a subjective evaluation renders Plaintiff Employees' alleged entitlement to a constitutionally protected property interest untenable.

Given that the compensation provided under Regulation 02-017 was contingent on evaluations of the Plaintiff Employees, the uncertainty of the amounts of said compensation, and the absence of explicit assurances regarding the benefit, Plaintiff Employees have not shown that the Regulation 02-017 compensation payments constituted a constitutionally protected property interest. See Heynneman v. Housing Auth. of City and Cnty. of San Francisco, Civ. No. 94-4013, 1995 WL 302429 (N.D. Cal. May 15, 1995) ("Further, [plaintiff] does not have a property right in promotions or bonuses that are only an expectancy rather than a certainty. Moreover, even assuming these benefits were property interests, they are not sufficiently weighty to warrant constitutional protection."); McKinney v. Univ. of Pittsburgh, 915 F.3d 956, 961 (3rd Cir. 2019) ("Although the Supreme Court itself has not had occasion to address the contours of a property interest in base salary, some of our sister circuits have done so, holding that a public employee may claim such an interest only where there is explicit assurance to that effect." On the other hand, "the more detailed and conditional the understanding becomes between employer and employee, the weaker the linkage becomes between those understandings and the Due Process Clause."); Roybal v. Toppenish Sch. Dist., 871 F.3d 927, 961-62 (9th Cir. 2017) (holding that a statute "limiting the grounds on which salary may be reduced, creates a reasonable expectation that [public school] principals will continue to receive their salary, and therefore, a protected property right."); McRae v. New York State Thruway Auth., Civ. No. 15-991, 2016 WL

15

HTA_CONF 00016995

4179990, at *4 (N.D.N.Y. Aug. 5, 2016) ("It is well established that in most instances there is 'no legitimate claim of entitlement to a particular salary increase.'" (citation omitted)).

Plaintiff Employees argue that "the fact that the compensation that [they] would receive pursuant to [Regulation 02-017] could vary in no way changes the contractual nature of the relationship. As an example, a person who is paid depending on the hours he works nevertheless has a contract that requires that he be paid and has rights for redress of violations of that contract." ECF No. 191, at 7-8. However, as stated previously, the possession of a contractual right is not equivalent to a constitutionally protected property interest. Because Plaintiff Employees have not satisfied the first element of a procedural due process claim by showing the existence of a legitimate entitlement to a constitutionally protected property interest, but rather a mere expectation of compensation that is not part of their regular salary, the second element need not be addressed. See Redondo-Borges, 421 F.3d at 11 ("Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the section 1983 inquiry.").

However, even assuming arguendo that Plaintiff Employees established a legitimate entitlement to a constitutionally protected property interest, their procedural due process claims would still fail. After it has been established that a protected property interest has been taken, the question remains what process is due under the particular circumstances. Hadiak v. Univ. of Massachusetts-Amherst, 933 F.3d 56, 66 (1st Cir. 2019) (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Bibiloni Del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 182 (D.P.R. 2009). "No rigid taxonomy exists 'for evaluating the adequacy of state procedures in a given case.'" Larrieux-Cruz v. Consejo de Educación de Puerto Rico,

16

HTA_CONF 00016996

Civ. No. 17-2030, 2020 WL 1623664, at *11 (D.P.R. 2020) (citing González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011)). "Instead, due process is flexible and calls for such procedural protections as the particular situation demands. Whether the deprivation was, in fact, justified is not an element of the procedural due process inquiry." Id.

Plaintiff Employees argue that they were deprived of due process because PRHTA has done nothing to remedy the "substantial cut in their respective compensation" and they were not provided with hearings or appellate rights. ECF No. 188, at 24-25; ECF No. 188-2, at 10, ¶ 52.[4] Defendants, on the other hand, contend that the termination of the compensation payments under Regulation 02-017 constituted a cost-cutting or reorganization measure, and thus, hearings were not required under the "reorganization exception." ECF No. 192-1, at 11. "Pre-termination hearings are not always required. We have held that pre-termination hearings are not required by due process where a bona fide government reorganization plan bases dismissals on factors unrelated to personal performance." Rodríguez-Sánchez v. Mun. of Santa Isabel, 658 F.3d 125, 130 (1st Cir. 2011). "When the termination at issue is in good faith directed at positions rather than individuals . . . the hearing contemplated by the Supreme Court's due process precedent loses its relevance. In such cases, since there are no charges against the employee . . . involved, there would be no occasion for a hearing, and it would be idle to hold one." Whalen v. Mass. Trial Court, 397 F.3d 19, 25 (1st Cir. 2005).

In the case at hand, the reorganization exception is not applicable because Plaintiff Employees' positions were not terminated. However, Plaintiff Employees have not explained the

---

[4] Plaintiff Employees assert that they engaged in various efforts to voice their concerns regarding Informative Bulletin 2015-007 to PRHTA that ultimately proved unsuccessful. For example, Plaintiff Employees contend that they sent multiple letters seeking redress from Informative Bulletin 2015-007 to the PRHTA Executive Director and the President of PRHTA's Board of Directors that were never answered. It is also contended by Plaintiff Employees that they had several meetings with the PRHTA Executive Director and the President of PRHTA's Board of Directors that were unfruitful. See ECF No. 188-2, ¶¶ 26-51. These efforts, however, do not show that they availed themselves of the procedure afforded through Act No. 66-2014.

HTA_CONF 00016997

necessity of a pre-deprivation hearing. The provision of Informative Bulletin 2015-007 that
eliminated compensation payments under Regulation 02-017 did not target specific individuals
but rather affected an entire class of positions. No evidence has been presented showing that
charges were levied against the Plaintiff Employees or that their work performance was
evaluated in rescinding the Regulation 02-017 compensation payments. Thus, a fact-finding pre-
deprivation hearing would be an idle endeavor. See Rodríguez-Sánchez, 658 F.3d at 130
("Because such a plan is aimed at positions of employment rather than at individual employees, a
pre-termination hearing would be a futile exercise."); Alvin v. Suzuki, 227 F.3d 107, 121 (3rd
Cir. 2000) (finding that the absence of pre-deprivation notice or a hearing did not, in itself,
violate plaintiff's due process rights where "there were no factual disputes that could have been
resolved at a hearing.").

Furthermore, Plaintiff Employees' assertion that they were not provided with appellate
rights cannot flourish because they failed to avail themselves of the procedure afforded through
Act No. 66-2014. "[A] state cannot be held to have violated due process requirements when it
has made procedural protection available and the plaintiff has simply refused to avail himself of
them." Bonilla v. Rodríguez, 635 F. Supp. 148, 153 (D.P.R. 1986). "The availability of recourse
to a constitutionally sufficient administrative procedure satisfies due process requirements if the
complainant merely declines or fails to take advantage of the administrative procedure." Id. "If
there is a process on the books that appears to provide due process, the plaintiff cannot skip that
process and use the federal courts as a means to get back what he wants." Alvin, 227 F.3d at 116.

In the case at hand, Plaintiff Employees were provided with recourse through Act No. 66-
2014 to contest the termination of the compensation payments under Regulation 02-017 by
Informative Bulletin 2015-007. Section 14 of Act No. 66-2014 provides as follows:

HTA_CONF 00016998

The Public Service Appellate Commission ("PSAC") . . . shall have exclusive primary jurisdiction to address appeals arising as a result of actions taken or decisions made in accordance with this Chapter filed by employees covered or not covered by the provisions of Act No. 45-1998, as amended, known as the Public Service Labor Relations Act, as well as those filed by nonunion employees of the Entities of the Executive Branch excluded from the application of the provisions of Act No. 184-2004, as amended, known as the Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico, and employees of the Entities of the Executive Branch that do not have labor unions, but to whom the provisions of Act No. 184-2004 apply.[5]

ECF No. 185-1, at 79, Sec. 14. In this case, Informative Bulletin 2015-007 clearly provided that it was implemented as a result of the mandates of Act No. 66-2014. See ECF No. 189-3, at 1 ("[t]his memorandum is issued for the purpose of notifying all the employees of the Highway and Transportation Authority (HTA) the measures in compliance with the provisions of Section 9, 10, 11, and 17 of Law 66-2014. [Act No. 66-2014]"). Informative Bulletin 2015-007 also provided that the compensation program under Regulation 02-017 was "left without effect during the validity of Law 66-2014 [Act No. 66-2014] . . ." Id. at 16. As such, there can be no ambiguity that Informative Bulletin 2015-007 constitutes PRHTA's application of its understanding of the mandates of Act No. 66-2014.[6] Therefore, PSAC has exclusive jurisdiction over Plaintiff Employees' appeals contesting Informative Bulletin 2015-007.[7]

---

[5] Act No. 184-2004 provided that its provisions "shall not apply to the following government agencies and instrumentalities: 1. Legislative Branch, 2. Judicial Branch (In the event of Act No. 45 [3 L.P.R.A. §§ 1451-1454a] apply to Judicial Branch employees, the categories of auxiliary bailiff and court stenographer shall be excluded.), 3. Public or public-private corporations or instrumentalities that operate as private businesses, 4. University of Puerto Rico, 5. Office of the Governor proper, 6. Commonwealth Elections Commission of Puerto Rico, 7. The Office of Government Ethics of Puerto Rico." P.R. Act No. 184-2004, Sec. 5.3. Act No. 184-2004 was repealed and replaced by Act No. 09-2017 on February 4, 2017.

[6] A reasonable argument can be made that PRHTA's interpretation of the mandates of Act No. 66-2014 was flawed. Act No. 66-2014, Section 11 provides that "the economic benefits or special monetary compensations granted to the employees of the Entities of the Executive Branch shall not be increased . . ." ECF No. 185-1, at 71. Thus, Informative Bulletin 2015-007's explanation that Regulation 02-017 compensation payments were prohibited by Act No. 66-2014 is questionable because it is plausible that Act No. 66-2014 did not prohibit the payment of special monetary compensation but merely prohibited the increase of said compensation. ECF No. 189-3, at 6. That does not mean, however, that Plaintiff Employees' constitutional rights under the Fourteenth Amendment Procedural Due Process Clause and Contract Clause were violated.

[7] Section 14 of Act No. 66-2014 applies to Plaintiff Employees because said provision applies to "nonunion employees of the Entities of the Executive Branch excluded from the application of the provisions of Act No. 184-

19

HTA_CONF 00016999

Plaintiff Employees have not cited to any record evidence that they availed themselves of their appellate rights through PSAC to contest Informative Bulletin 2015-007. Nor have Plaintiff Employees provided any argumentation that pursuing an appeal through PSAC would be an inadequate, unavailable, or futile procedure. Instead, it is contended by Plaintiff Employees that they were deprived of due process because Informative Bulletin 2015-007 does not explicitly mention Section 14 of Act No. 66-2014. ECF No. 191, at 9. Plaintiff Employees also assert that they were never provided with notice that they had to file a claim with PSAC. Id.; ECF No. 191-1, at 4, ¶ 14. "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Maria Serrano v. Figueroa-Sancha, Civ. No. 11-1427, 2012 WL 13170960, at *2 (D.P.R. Feb. 7, 2012) (citing United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010)). "The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." In re Arch Wireless, Inc., 534 F.3d 76, 83 (1st Cir. 2008) (quoting Mullane v. Cen. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

While Plaintiff Employees were not advised of their ability to file an appeal with PSAC by Informative Bulletin 2015-007, it is well-established that due process does not require individualized notice in every instance and may be satisfied through publicly available statutory notice. See City of W. Covina v. Perkins, 525 U.S. 234, 241 (1999) ("No similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law."); Gates v. City of Chicago, 623 F.3d 389, 398 (7th Cir. 2010) ("When state law remedies are established by

---

2004." See P.R. Act No. 66-2014, Sec. 14. Plaintiff Employees are nonunion employees of PRHTA which is a public corporation, and thus, not covered by Act No. 184-2004. See P.R. Act No. 184-2004, Sec. 5.3.

HTA_CONF 00017000

published, generally available state statutes and case law, no individualized notice of those

procedures is required."); Reams v. Irvin, 561 F.3d 1258, 1265 (11th Cir. 2009) (finding that

statutory notice satisfied due process where plaintiff had "thirty days from the time of the

impoundment to request a hearing . . . . this was ample time for [plaintiff] to consult publicly

available documents, discover her right to a hearing, and exercise that right."). However,

statutory notice does not satisfy due process where "those remedial procedures are dictated by an

internal, non-publicly available procedure . . ." Conyers v. City of Chicago, 162 F. Supp. 3d 737,

745 (N.D. Ill. 2016); Larrieux-Cruz v. Consejo de Educación de Puerto Rico, Civ. No. 17-2030,

2020 WL 1623664, at *11 (D.P.R. Mar. 31, 2020) ("Admittedly, the principle of legislative

notice does not extend to regulations that are not publicly available.").

    In the case at bar, Plaintiff Employees have not cited to any evidence in the record

indicating that the procedures to contest Informative Bulletin 2015-007 were contained in

internal, non-publicly available documents. Instead, the pertinent procedures available to them

through PSAC were published in a public statute, Section 14 of Act No. 66-2014, rendering

individualized notice of said procedure unnecessary to satisfy due process. Hence, Plaintiff

Employees' claims that Defendants violated their procedural due process rights cannot prosper

because they failed to raise appeals with PSAC contesting Informative Bulletin 2015-007. See

Bonilla, 635 F. Supp. at 153; Diaz Camacho v. López Rivera, 699 F. Supp. 1020, 1024 (D.P.R.

1988) ("For due process requires only an opportunity to be heard; if an individual chooses not to

take advantage of that opportunity, due process has nevertheless been satisfied.").

    There is a lack of evidence for a reasonable jury to infer that Plaintiff Employees

possessed a legitimate entitlement to the compensation payment under Regulation 02-017 as a

constitutionally protected property interest. Plaintiff Employees have also not presented evidence

21

that they availed themselves of the procedures afforded to them by Section 14 of Act No. 66-2014. Accordingly, Plaintiff Employees' claims pursuant to Section 1983 that their Fourteenth Amendment procedural due process rights were violated by Defendants are DISMISSED WITH PREJUDICE.

### B. Plaintiff Employees' Contract Clause Claims

Plaintiff Employees argue that PRHTA violated their rights under the Contract Clause by issuing Informative Bulletin 2015-007 that infringed on their contractual rights to the compensation payments under Regulation 02-017. ECF No. 188, at 15-24. The Contract Clause provides that "[n]o State shall … pass any …. Law impairing the Obligation of Contracts …."[8] U.S. Const. art. I, § 10, cl. 1. "The Contract Clause protects individuals and legal entities who have freely entered into contracts from legislative action that impairs the obligations under those contracts." Universal Ins. Co. v. Dep't of Justice, 866 F. Supp. 2d 49, 67 (D.P.R. 2012). "Despite its unequivocal language, this constitutional provision 'does not make unlawful every state law that conflicts with any contract ….'" United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) (quoting Local Div. 589, Amalgamated Transit Union v. Massachusetts, 666 F.2d 618, 638 (1st Cir. 1981)).

To prevail on a Contract Clause claim, Plaintiff Employees must satisfy a two-part inquiry. Parker v. Wakelin, 123 F.3d 1, 4-5 (1st Cir. 1997). "The first inquiry is whether a 'change in state law has resulted in the substantial impairment of a contractual relationship.'" Universal, 866 F. Supp. 2d at 68 (quoting Parella v. Ret. Bd. of the Rhode Island Emp.'s Ret. Sys., 173 F.3d 46, 59 (1st Cir. 1999)). "This inquiry is broken down into three separate elements: (1) whether there is a contractual relationship, (2) whether a change in law impairs that

---

[8] The First Circuit has applied the Contract Clause to Puerto Rico even though it is not a state. See Mercado-Boneta v. Administración del Fondo de Compensación al Paciente, 125 F.3d 9, 18 (1st Cir. 1997).

HTA_CONF 00017002

contractual relationship, and (3) whether the impairment is substantial." <u>United Auto v. Fortuño</u>, 677 F. Supp. 2d 530, 535 (D.P.R. 2009). "If a substantial impairment is found, the Court must then address the second inquiry, which is 'whether or not the impairment is nonetheless justified as reasonable and necessary to serve an important public purpose.'" <u>Universal</u>, 866 F. Supp. 2d at 68 (citations omitted).

The parties dispute whether a contractual relationship existed between them concerning the compensation payments under Regulation 02-017. ECF Nos. 188, at 15-18; 192-1, at 6-7; <u>see</u> <u>Robertson v. Kulongoski</u>, 466 F. 3d 1114, 1117 (9th Cir. 2006) ("Importantly, [t]he first sub-inquiry is not whether any contractual relationship whatsoever exists between the parties, but whether there was a contractual agreement regarding the specific ... terms allegedly at issue." (citations omitted)). However, whether a contractual relationship existed between PRHTA and Plaintiff Employees regarding compensation payments under Regulation 02-017 need not be addressed because Plaintiff Employees have not satisfied the threshold requirement of a contract clause claim by presenting evidence that their rights were impaired by legislative action.

"The Contract Clause prevents the impairment of obligations only by legislative action." <u>Future Dev. of Puerto Rico v. Estado Libre Asociado de Puerto Rico</u>, 276 F. Supp. 2d 228, 241 (D.P.R. 2003); <u>see</u> <u>Rivera-Nazario v. Corporación del Fondo del Seguro Del Estado</u>, Civ. No. 14-1533, 2015 WL 5254417, at *15 (D.P.R. Sept. 9, 2015) ("A Contract Clause violation also requires that the alleged impairment arises out of a legislative action."). "This is because the Contract Clause 'is aimed at the legislative power of the State, and not at the decisions of its courts, the acts of administrative or executive boards or officers, or the doings of corporations or individuals.'" <u>Rivera-Nazario</u>, 2015 WL 5254417, at *15 (citing <u>New Orleans Waterworks Co.</u> <u>v. La. Sugar Ref. Co.</u>, 125 U.S. 18, 30 (1888)); <u>Alarm Detection Sys., Inc. v. Vill. of</u>

23

HTA_CONF 00017003

Schaumburg, 930 F.3d 812, 823 (7th Cir. 2019) ("[u]nlike most constitutional deprivations, there

is just one way to violate the Contracts Clause: legislative action . . . Contracts Clause liability

therefore presupposes legislative power."); Welch v. Brown, 551 Fed. Appx. 804, 805 (6th Cir.

2014) ("A cause of action under the Contract Clause must be based on legislative acts . . .").

     In the case at hand, Plaintiff Employees explicitly assert that "we must make clear that

plaintiffs are not challenging law 66-2014 [Act No. 66-2014]. What they challenge is the

Informative Bulletin [Informative Bulletin 2015-007]." ECF No. 188, at 20. Thus, Plaintiff

Employees are not claiming that their rights were infringed by Act No. 66-2014 that was passed

by the Puerto Rico legislature. Instead, Plaintiff Employees are alleging that their rights were

violated by Informative Bulletin 2015-007 that was issued by PRHTA, a public corporation of

the Executive Branch of the Commonwealth of Puerto Rico. ECF No. 189-1, at 1-2, ¶¶ 2, 22, 23.

     Although PRHTA is not a legislative body with intrinsic legislative power, the legislative

action requirement of the Contract Clause may nonetheless be satisfied where executive action

occurs pursuant to delegated legislative authority. See Arriaga v. Members of Bd. of Regents,

825 F. Supp. 1, 4 (D. Mass. 1992) ("Nevertheless, some exercise of legislative power is essential

to implicate the Contracts Clause. Thus, actions solely by executive officers affecting contractual

rights would not, unless constituting the exercise of a delegated legislative function, involve a

potential violation of the Contracts Clause."); Educ. Networks of America Inc. v. Wasden, Civ.

No. 16-379, 2017 WL 411206, at *10 (D. Idaho Jan. 30, 2017) (explaining that the "Contract

Clause reaches 'every form in which the legislative power is exerted,' which may include certain

executive actions, such as the issuance of 'a regulation or order [through] delegated legislative

authority.'" (citing Ross v. Oregon, 227 U.S. 150, 162-63 (1913)).

HTA_CONF 00017004

"Courts have defined 'legislative power' as the lawmaking power of a legislative body involving actions that relate to subjects of permanent or general character." Rivera-Nazario, 2015 WL 5254417, at *16; see Transp. Workers Union of America, Local 290 v. Se. Penn. Trans Auth., Civ. No. 96-0814, 1996 WL 420826, at *3 (E.D. Pa. July 25, 1996) ("Legislative power is defined as '[t]he lawmaking power[ ]' of a legislative body. Actions which relate to subjects of permanent or general character are 'legislative.'" (citations omitted)). Plaintiff Employees have not cited to any record evidence or included any developed argumentation that PRHTA acted with delegated legislative authority in issuing Informative Bulletin 2015-007. The specific section of Informative Bulletin 2015-007 that is challenged by Plaintiff Employees, Section IV(B)(1), relates only to those provisions rescinding the compensation payments under Regulation 02-017 during the validity of Act No. 66-2014. ECF No. 189-3, at 6.

Informative Bulletin 2015-007, Section IV(B)(1) does not possess the characteristics of a law of general applicability because it is not enforced against the public. Instead, its application is limited to select PRHTA employees that received compensation payments under Regulation 02-017. See Transp. Workers Union of America, 1996 WL 420826, at *5-6 (dismissing Contract Clause claim after determining that a resolution passed by the Southeastern Pennsylvania Transportation Authority ("SEPTA") did not constitute legislative action because it only extended to SEPTA employees that were members of an employee benefit plan); Skoutelas v. Port Auth. of Allegheny Cnty, Civ. No. 07-1077, 2008 WL 1773876, at *4 (W.D. Pa. Apr. 16, 2008) (determining that a resolution passed by the board of directors of the Port Authority of Allegheny County that amended the terms of the deferred retirement option plan as to current and future retirees that reduced Plaintiff's monthly pension by $3,114.84 did not constitute a legislative action because it did not possess characteristics of a law of general application.).

25

HTA_CONF 00017005

Moreover, PRHTA's issuance of Informative Bulletin 2015-007 is also not reflective of an exercise of power that belongs exclusively to the legislative branch. See New Orleans Waterworks Co., 125 U.S. at 31 (explaining that "the power of determining what persons and property shall be taxed belongs exclusively to the legislative branch of the government, and, whether exercised by the legislature itself, or delegated by it to a municipal corporation, is strictly a legislative power."). Because Informative Bulletin 2015-007 does not resemble a legislative act of "permanent or general character" or possess "any of the characteristics of a law of general application," its issuance by PRHTA does not encompass "an exercise of legislative power delegated by the Puerto Rico legislature." Rivera-Nazario, 2015 WL 5254417, at *16.

While Plaintiff Employees contend that PRHTA's interpretation of the mandates of Act No. 66-2014 was erroneous and negligent, executive action that implements the law is beyond the purview of the Contract Clause. ECF Nos. 191, at 10; 188, at 27-28. See Sullivan v. Nassau Cnty. Interim Finance Auth., 959 F.3d 54, 61 (2d Cir. 2020) (explaining that in evaluating a Contract Clause claim, an action is "deemed not legislative if it involves the application, as opposed to the creation, of a rule."); Underwood v. City of Chicago, Ill., 779 F.3d 461 (7th Cir. 2015) ("The Contracts Clause covers legislative as opposed to executive action."); Jamaica Ash & Rubbish Removal Co., Inc v. Ferguson, 85 F. Supp. 2d 174, 183 (E.D.N.Y. 2000) (dismissing a Contract Clause claim because the challenged state action bore "none of the hallmarks of a legislative act; it was an application of the law, not the creation of a law."). Viewing the evidence in the light most favorable to Plaintiff Employees, no reasonable fact finder could infer that Informative Bulletin 2015-007 constituted legislative action that infringed upon Plaintiff Employees' alleged contractual rights. Whether PRHTA misapplied Act No. 66-2014 is an issue in dispute between the parties. It is clear, however, that when the controversy gears around how

26

HTA_CONF 00017006

the law was applied as opposed to the creation of the law itself, the Contract Clause is not the

vehicle to pursue the remedy sought by Plaintiff Employees. Accordingly, Plaintiff Employees'

claims pursuant to Section 1983 that Defendants violated their rights under the Contract Clause

are DISMISSED WITH PREJUDICE. See Rivera-Nazario, 2015 WL 5254417, at *17.

### C. Plaintiffs' Article 1802 Claims

Plaintiffs and Defendants both move for summary judgment on Plaintiffs' Article 1802

claims which are grounded in Puerto Rico law. ECF No. 188, at 26-27; ECF No. 183-1, at 23. "A

district court retains the discretion . . . to decline to exercise supplemental jurisdiction where the

district court has dismissed all claims over which it had original jurisdiction." Marrero–Gutierrez

v. Molina, 491 F.3d 1, 7 (1st Cir. 2007) (citing 28 U.S.C. § 1367(c)(3)). Having dismissed all

federal law claims, the court will not exercise supplemental jurisdiction over Plaintiffs' Article

1802 claims arising from Puerto Rico law. Therefore, Plaintiff's Puerto Rico Article 1802 claims

are DISMISSED WITHOUT PREJUDICE.[9]

## V.      Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 183) is

GRANTED IN PART AND DENIED IN PART. Plaintiff Employees' claims pursuant to 42

U.S.C. § 1983 alleging that Defendants violated their rights under the Fourteenth Amendment

Procedural Due Process Clause and the Contract Clause are hereby DISMISSED WITH

PREJUDICE. Having declined to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico

---

[9] The court also declines to exercise its discretion regarding Plaintiffs' request for "declaratory judgment as to the illegality of the Informative Bulletin" and to reinstate Regulation 02-017. ECF No. 21, at 45. See Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995) (explaining that "federal courts retain substantial discretion in deciding whether to grant declaratory relief. As we have stated, the Declaratory Judgment Act 'neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies.'" (citations omitted)); El Día, Inc. v. Hernández Colón, 963 F.2d 488, 493 (1st Cir. 1992) ("declaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201, is discretionary.").

27

HTA_CONF 00017007

Article 1802 claims, these claims are DISMISSED WITHOUT PREJUDICE. Plaintiffs' motion

for summary judgment (ECF No. 188) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of August, 2021.

s/Marcos E. López
U.S. Magistrate Judge

HTA_CONF 00017008