**Exhibit A**

**Reorg**

2022-07-28 16:15:10

Puerto Rico

# Governor Vetoes Bills Conditioning PREPA Debt Restructuring, Privatization Processes; Oversight Board Chairman Skeel Discusses PREPA Bond Lien Amid Ongoing Mediation

Tue 07/19/2022 18:04 PM

*Relevant Documents:*
House Bill 1383 Veto (Spanish)
House Bill 774 Veto (Spanish)
House Bill 775 Veto (Spanish)

Gov. Pedro Pierluisi issued express vetoes today of three bills that would establish mandatory conditions on the restructuring of the Puerto Rico Electric Power Authority's debt and alter the oversight, terms, financing and execution of P3s at the public utility. Also today, PROMESA oversight board Chairman David Skeel discussed the oversight board's view of PREPA bondholder liens and the effort to reach a new PREPA restructuring deal, during a panel discussion on Puerto Rico's bankruptcy sponsored by the Brookings Institute.

**Governor Vetoes 'Toxic' Restructuring Bill**

The governor discussed the vetoes of House Bill 1383, House Bill 774 and House Bill 775 during a press conference to announce the availability of a working capital advance pilot program for energy system reconstruction projects approved by the Federal Emergency Management Agency. He detailed the reasons for the vetoes in separate letters on each bill to House Speaker Rafael "Tatito" Hernández.

Regarding HR 1383, which was already flagged for enjoinment by the oversight board, Pierluisi rejected the measure as "totally toxic" if some of its aims are laudable. The proposed PREPA Debt Restructuring Law would have amended three laws to establish mandatory conditions on the restructuring of PREPA's debt, including that consumer rates never rise above 20 cents per kilowatt-hour; PREPA's bondholders receive no more than a 25% recovery; PREPA's pension system is not subject to any reform or adjustment; and PREPA's collective bargaining agreements are not rejected (preventing any renegotiation of these agreements).

Stating that PROMESA is the controlling law over PREPA's debt restructuring, Pierluisi noted that the process is being overseen by the federal Title III court and is subject to ongoing mediation among stakeholders toward a plan of adjustment.

"This bill basically ignores all of that," the governor said, adding that its conditions are "impossibile" on their face "because they violate PROMESA from beginning to end" and, if enacted, would raise the risk that a state court could order a receiver to take over PREPA at the request of bondholders to pay them in full. "The role of a receiver under PREPA's bond documents is to ensure bondholders recover 100% of what they lent," he said.

Turning to HR 774 and HR 775, Pierluisi said the measures seek to change the commonwealth's energy public policy and hinder ongoing energy system transformation efforts that include private operation of PREPA's transmission and distribution system and legacy generation assets.

"These bills would change the course of this transformation. What we want is to finish it," the governor said, adding that the measures run counter to both the commonwealth and PREPA fiscal plans. "So I had to veto them," he said.

Hernández, the House speaker, had urged Pierluisi to sign the bills in connection with the Legislature's consideration of a measure to provide short-term relief from rate hikes at PREPA and

the Puerto Rico Aqueduct and Sewer Authority, Senate Bill 931, by tapping the State Insurance Fund for as much as $225.5 million.

Asked about the cloudy prospects for passage of SB 931, which is the key item on the agenda of the special legislative session called by Pierluisi that ends next week, the governor signaled he was not yet prepared to consider the measure dead. "There is still time for lawmakers who are thinking of voting against it to reconsider," he said. "Who wants a rate hike? I want to know who."

**Skeel Reiterates Need to Renegotiate PREPA RSA**

Meanwhile, during a panel discussion today on Puerto Rico's debt restructuring, Skeel reiterated the oversight board's view that the PREPA restructuring support agreement had to be renegotiated because the economics of the deal no longer made sense in the changed economic landscape from the Covid-19 pandemic.

Skeel, citing mediation confidentiality rules, would not comment on the oversight board's ability to comply with an Aug. 1 deadline to submit a restructuring proposal for PREPA set by Judge Laura Taylor Swain or if he expected another extension of the deadline to be granted by the Title III court. Specifically, the oversight board must file either (a) a plan of adjustment, (b) a term sheet for a plan of adjustment, (c) a litigation schedule or (d) a declaration and memorandum of law showing cause as to why the court should not consider dismissal of PREPA's Title III case.

Skeel indicated that no parties involved in PREPA's restructuring think dismissal of the Title III case would be a "good outcome," but he added that if mediation did not produce a new agreement, the Title III court litigate a number of issues that have arisen during the yearslong effort to restructure PREPA debt.

"One of the big ones is whether the bondholders have a valid lien and if they have a valid lien, a lien on what, how much do they have a lien on. **Our view is if they have a valid lien, the only lien they have is on amounts that have already been transferred into a trust; it's a very small amount**," Skeel said.

Asked if bondholders have a lien on PREPA's ability to generate future revenues, Skeel said, "Our view is no."

"They only have a lien on payments made by customers once those are put into an account for the benefit of bondholders. Until they are put into that account, the lien does not cover them," Skeel added.

In July 2019, the oversight board and the Puerto Rico Fiscal Agency and Financial Advisory Authority jointly challenged PREPA bondholder's "erroneously" asserted security interests in PREPA revenue in a complaint against U.S. Bank, as fiscal agent and secured party for PREPA bonds. The filing of the PREPA lien challenge was contemplated under the PREPA RSA, which would then see the matter tolled and resolved via the contemplated PREPA restructuring. The oversight board and AAFAF also filed a motion to stay the adversary proceeding shortly after filing the complaint, which would remain in effect until the earlier of 60 days after the court denies the PREPA RSA settlement motion, the effective date of a plan of adjustment, and the filing of a "litigation notice" by the co-plaintiffs/trustees.

Skeel indicated that the joint complaint is one of the matters the Title III court would address if a new restructuring agreement is not reached. Additionally, he said the unsecured creditors committee also has litigation it is ready to pursue if a deal is not achieved.

In a court filing last month, the UCC argued that mediation should not be terminated at this time, but also that litigation of threshold issues should go forward, and it urged the court to order the oversight board to propose a litigation schedule. The UCC reiterated to the court that litigation should focus on two threshold issues: "(i) whether the PREPA bondholders' security interest is limited to funds actually deposited into specified accounts held by the PREPA bond trustee (in the amount of approximately $8 million as of PREPA's petition date); and (2) whether the PREPA bonds are non-

recourse obligations such that the PREPA bondholders have no claim against, and are not entitled to distributions from, PREPA for any difference between the face amount of the bonds and the funds on deposit in the specified accounts."

Skeel's comments were made during the panel "Puerto Rico's Bankruptcy: Lessons Learned for the Island and for the Muni Market." Also appearing on the panel was former oversight board Executive Director Natalie Jaresko, Sergio Marxuach of the Center for a New Economy, and John Ceffalio of CreditSights.

Marxuach said that recent actions by Puerto Rico's political class "do not inspire a lot of trust," describing SB 931, which is backed by the governor, as "raiding the SIF to cover electric fees for three months." He said such actions are what drove Puerto Rico into insolvency in the first place.

This publication has been prepared by Reorg Research, Inc. or one of its affiliates (collectively, "Reorg") and is being provided to the recipient in connection with a subscription to one or more Reorg products. Recipient's use of the Reorg platform is subject to Reorg's Terms of Use or the user agreement pursuant to which the recipient has access to the platform (the "Applicable Terms"). The recipient of this publication may not redistribute or republish any portion of the information contained herein other than with Reorg's express written consent or in accordance with the Applicable Terms. The information in this publication is for general informational purposes only and should not be construed as legal, investment, accounting or other professional advice on any subject matter or as a substitute for such advice. The recipient of this publication must comply with all applicable laws, including laws regarding the purchase and sale of securities. Reorg obtains information from a wide variety of sources, which it believes to be reliable, but Reorg does not make any representation, warranty, or certification as to the materiality or public availability of the information in this publication or that such information is accurate, complete, comprehensive or fit for a particular purpose. Recipients must make their own decisions about investment strategies or securities mentioned in this publication. Reorg and its officers, directors, partners and employees expressly disclaim all liability relating to or arising from actions taken or not taken based on any or all of the information contained in this publication. © 2022 Reorg. All rights reserved. Reorg® is a registered trademark of Reorg Research, Inc.

© Copyright 2012 - 2022