IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.,*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| ACEVEDO AROCHO GROUP PLAINTIFFS,<br><br>Movants,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,,<br><br>Respondent. | Re: ECF No. 21230 |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**DEBTOR'S OBJECTION TO APPLICATION FOR ALLOWANCE OF PAYMENT OF POST PETITION ADMINISTRATIVE EXPENSE PRIORITY CLAIMS FILED BY THE CREDITORS IN THE ACEVEDO AROCHO LITIGATION**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Application for Allowance of Payment of Post Petition Administrative Expense Priority Claims,. Filed by the Group in Litigation Caption Acevedo Arocho et als. v. the Departmento Hacienda and Resevation of Rigths* [Sic] [ECF No. 21230] (the "Motion"), filed by plaintiffs (collectively, the "Movants") in the litigation captioned *Acevedo Arocho, Prudencio, et als. v. Departamento de Hacienda*, Case No. K AC 2005-5022 (the "Underlying Action"). In support of the Objection, the Debtor respectfully represents:

**PRELIMINARY STATEMENT**

1. Movants, a group of employee plaintiffs pursuing an appeal to the Puerto Rico Supreme Court of their loss in the trial court assert they are entitled to administrative expense priority for back pay attributable to prepetition and postpetition services allegedly provided to the Puerto Rico Department of Treasury. In support, they claim they are similarly situated to other agency employees who have obtained a judgment (the "Judgment")[3] in those other litigants' favor, and are therefore entitled to a substantially similar correction of their wages and payment of the shortfall. Specifically, Movants contend that, although not a party to the Judgment, it should be

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] *See* Mot. at 3 (identifying *Juan Perez Colon et als v the Department of Transportation and Public Works (DTOP) and the Central Personnel Office (OCAP)*, Case No. K AC 1990-0487).

2

extended to provide that the Commonwealth is liable for a shortfall of Movants' salaries caused by not properly adjusting Movants' wages for their tenure, job functions, responsibilities and requirements for services provided to the Commonwealth by Movants, on occasion when the Commonwealth implemented the Federal minimum wage laws. Mot. at 3-4.

2. In the Motion, Movants provide a breakdown of the amounts allegedly owed prior to and after the date of the Commonwealth's Title III petition, estimating $1,292,001.00 to be owed for services allegedly attributable to the postpetition period (the "Postpetition Portion"), id. at 9, and by reference to Proof of Claim No. 51013, an estimated $28 million allegedly attributable to services provided in the prepetition period (the "Prepetition Portion"). Id. at 6. For the Prepetition Portion, Movants request the Commonwealth set aside funds for this entire amount and reserve their rights to amend the Motion in the event they are successful in the underlying Commonwealth litigation. Id. at 7.

3. With respect to the Prepetition Portion, Movants are not entitled to administrative expense priority. As the Court is aware, during the Commonwealth's Title III case, the Court denied a substantially similar request for priority status by sustaining the Oversight Board's objection that wage creditors' proofs of claim should be classified as prepetition, general unsecured claims and not as allowable administrative expenses. See Aug. 4, 2021 Hr'g. Tr. at 113:18-24. In particular, the Court noted Bankruptcy Code section 503(b)(1)(A) permits priority only for "claims arising from events that occur after the commencement of a bankruptcy case, and all of these claimants are asserting claims that long predate the debtors' Title III petitions." Id. Following such ruling, those claimants requested the Court's reconsideration [ECF No. 17892] (the "Reconsideration Motion"), and the Court denied such request on April 18, 2022, reiterating that the claimants "failed to persuade the Court that 11 U.S.C. § 503(b)(1)(A) applied to their

3

claims." *Order Denying Motion for the Reconsideration of the Order Entered on August 4, 2021, at the Omnibus Hearing Concerning the "Three Hundred Forty-Fifth Omnibus Objection"* [ECF No. 20569] at 4.

4. Here, Movants duplicate arguments raised in the Reconsideration Motion and separately attempt to challenge the Court's ruling on this issue. The reasons for denying the Motion are the same as the Oversight Board articulated in its opposition to the Reconsideration Motion [ECF No. 18013] and in its oppositions [*e.g.*, ECF No. 19091] to other motions filed by counsel for Movants with substantially identical arguments [*e.g.*, ECF No. 18282]. In sum, the plain text of Bankruptcy Code section 503(b)(1)(A)(ii) limits administrative priority under the section to claims "attributable to any period of time occurring *after* commencement of the case . . . ." 11 U.S.C. § 503(b)(1)(A)(ii) (emphasis added).

5. With respect to the Postpetition Portion, the Underlying Action is being litigated in a Commonwealth tribunal. Notwithstanding Movants' assertions that Movants are similarly situated to other Commonwealth employees who have obtained the Judgment, and their apparent belief that a judgment will be entered in their favor eventually, Movants have *not* obtained a judgment and, at best, a bona fide dispute exists while such liability continues to be litigated in Commonwealth courts. Moreover, the Commonwealth has raised defenses that Movants' claims are time barred pursuant to statutes of limitations and laches. These issues are currently pending a ruling before the Puerto Rico Supreme Court in the Underlying Action. Consequently, Movants have not met their burden of proof showing they are entitled to priority.

6. Accordingly, for the reasons set forth herein, the Motion should be denied.

## BACKGROUND

7. The Underlying Action is currently pending before the Puerto Rico Supreme Court upon appeal by Movants of the trial court's dismissal of their principal cause of action. Mot. at 3.

4

Pursuant to the *Sixth Omnibus Order Granting Relief from the Automatic Stay* [ECF No. 4201], dated November 9, 2018 (the "6th Omnibus Order"), the Court approved a stipulation to modify the automatic stay to allow the Underlying Action, to proceed to final judgment on a motion for summary judgment and any appeals, but not for purposes of execution or enforcement. *See* 6th Omnibus Order, Ex. 1 at 3.

8. Notwithstanding the 6th Omnibus Order, Movants sought further stay relief with respect to the Underlying Action by filing a motion for stay relief at [ECF No. 20670] (the "Stay Relief Motion") seeking to allow the Underlying Action to proceed to final resolution in its original forum. The Commonwealth opposed the Stay Relief Motion at [ECF No. 21507], including on the basis that it would waste Commonwealth resources to require it to defend against the Underlying Action while a decision before the Puerto Rico Supreme Court in connection with the Underlying Action remains pending. As of this Objection, the Stay Relief Motion remains pending before the Court.

9. With respect to the Underlying Action, discovery has been completed and, on January 9, 2017, the Puerto Rico Court of First Instance entered a partial judgment dismissing most of the plaintiffs' claims with prejudice, except for certain claims filed by a group of auditors and tax specialists. On October 15, 2019, the plaintiffs appealed the dismissal of their claims pursuant to the partial judgment, which dismissal the Puerto Rico Court of Appeals affirmed on January 30, 2020.

10. On July 15, 2020, plaintiffs filed an appeal to the Puerto Rico Supreme Court. Following the Puerto Rico Supreme Court's decision to hear the appeal, the proceedings before the Court of First Instance with respect to the cause of action filed by the group of auditors and tax specialists were stayed pending resolution of the appeal.

11. Upon completion of briefing, on April 26, 2021, the Puerto Rico Supreme Court issued an order stating that the case was submitted for decision, which remains pending as of the date hereof. The issues on appeal to the Puerto Rico Supreme Court relate to, among other things, whether the claims asserted by the plaintiffs in the Underlying Action are barred by laches or by a three-year statute of limitations and whether the lower court erred in denying the motion for summary judgment relating to the cause of action.

## ARGUMENT

I. **Movants' Prepetition Claims are Not Entitled to Administrative Expense Status**

12. Movants assert, notwithstanding the prepetition nature of their asserted claim, they are entitled to administrative expense priority. This theory fails. Neither the statutory text nor caselaw supports Movants' request for administrative expense priority.

13. Section 503(b)(1)(A)(ii) plainly states that: only "wages and benefits awarded . . . as back pay *attributable to any period of time occurring after commencement of the case* . . . without regard to the time of the occurrence of unlawful conduct . . ." are eligible for treatment as an administrative expense. 11 U.S.C. § 503(b)(1)(A)(ii) (emphasis added). Movants concede the prepetition back pay asserted is attributable to the prepetition period. Mot. at 6 ("in regards the pre-petition claim, Movants submits, [sic] that if the pending payroll claim is allowed by the Commonwealth courts, all the employees in the present case are Entitled to Administrative Priority, under subsection A (ii) for an estimated amount of $28,000,000.00 according to the undisputed Proof of Claim No 51013."). Movants identify no portion of section 503(b) that permits administrative expense status for prepetition periods.[4]

---

[4] Movants argue that payment of the asserted claims would not cause the Debtor to become insolvent. Mot. at 8. This appears to address the requirement under Bankruptcy Code section 503(b)(1)(A)(ii) that payment under that provision will not "substantially increase the probability of layoff or termination of current employees . . . ." 11 U.S.C. § 503(b)(1)(A)(ii). This requirement

6

14. In support of their position, Movants cite *Matthews v. Truland Group., Inc. (In re Truland Group., Inc.)*, 520 B.R. 197 (Bankr. E.D. Va. 2014) and *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 175 (Bankr. D.N.J. 2014), neither of which support Movants' position. In *Truland Group*, the claims arose from application of the WARN Act, and the liabilities asserted were determined to be "attributable to" the postpetition period, even if the violation occurred prepetition. 520 B.R. at 203-05. The WARN Act requires payment of sixty days of wages if employees are terminated on less than sixty days' notice. Thus, if some of the sixty days occur postpetition, some courts have ruled the wages due during those days are postpetition claims. With respect to the Prepetition Portion, Movants are requesting wages for prepetition work, not compensation on account of WARN Act pay.

15. *710 Long Ridge Rd.* does not assist—and in fact cuts against—Movants because that case recognized, while the *award* for back pay can be entered prepetition, to qualify for administrative expense priority the award must be *attributable to* the postpetition period. *710 Long Ridge Rd.*, 505 B.R. at 176 (granting administrative expense priority to portion of claims regarding lost wages for several postpetition days thus "attributable to" postpetition period). Other courts, have likewise interpreted the phrase "attributable to" to refer to wages and benefits that accrue post-petition. *See, e.g.*, *In re Calumet Photographic, Inc.*, No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) ("Basically, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."); *In re Phila. Newspapers, LLC*, 433 B.R. 164, 176 (Bankr. E.D. Pa. 2010) ("The amount which [employee movant] paid for healthcare premiums post-

---

is unnecessary to address because, for the reasons stated herein, Movants have not met the first requirement that the wages be "attributable to" the postpetition period. *Id.*

petition is obviously attributable to the period of time occurring after the Debtors filed for bankruptcy.").[5]

16. Nor does the phrase "without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered" alter the result: rather, that phrase brings within the statute wages owed for services rendered *post*-petition, when the illegal conduct giving rise to such wages owed occurred *pre*-petition. *In re Trump Ent. Resorts, Inc.*, No. 14-12103, 2015 WL 1084294, at *4 (Bankr. D. Del. Mar. 9, 2015) ("Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date[.]").

17. As the Court has recognized,[6] the critical fact is the timing of the consideration supplied by the creditor. Here, Movants assert liabilities associated with unpaid wages for work actually performed prior to the filing of the Commonwealth's Title III case. Unlike WARN Act

---

[5] At least one court has adopted an even stricter approach, concluding that only employee claims that *vest* after the petition date are entitled to administrative expense treatment. Thus, in *Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.)*, a group of discharged employees asserted claims against the debtor in respect of wages and benefits owed pursuant to a federal law and sought administrative expense priority for any damages awarded in the suit. 394 B.R. 765 (Bankr. D. Del. 2008). The court noted that section 503(b)(1)(A)(ii) "describes two different times: the period to which back pay is *attributable* and the time of the *occurrence* of the unlawful conduct and/or when the services were rendered." *Id.* at 774. The court then held that "the only relevant consideration is the former time, the time to which the back pay is attributable which is when the rights or claims *vest or accrue*, and how that time relates to the petition date." *Id.* at 774-75. "If a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim." *Id.* at 775. Applying these principles to the claim, the court concluded that because the employees were terminated pre-petition, and their rights vested under the federal statute pre-petition, any damages from their suit would be "back pay attributable to" the pre-petition period and thus not eligible for administrative expense priority. *Id.* at 776.

[6] *See Opinion and Order Denying the DRA Parties' Motion for Allowance of an Administrative Expense Claim* [ECF No. 18892] (the "DRA Opinion") at 17-18 (discussing the "clear lesson" of seminal cases analyzing administrative expense priority).

8

liability, which is a prospective right to payment when the employee is not allowed to work, the liability asserted here is underpayment for work actually performed prepetition. The claims' prepetition nature precludes administrative expense priority. *Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.)*, 330 F.3d 36, 48 (1st Cir. 2003) ("The consideration supporting the Retention Agreement—to forgo other employment opportunities—was supplied the moment she signed the agreement. Only the right to payment arose after the petition date."); *Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 291 F.3d 111, 126 (1st Cir. 2002) ("We therefore hold that the Division's claims are entitled to administrative expense priority so far as, but no further than, the claims are for reimbursement for unemployment compensation paid on the basis of work done by employees after the filing of the Center's petition."); *In re Old Carco LLC*, 424 B.R. 650, 657 (Bankr. S.D.N.Y. 2010), *aff'd*, No. 09-50002 AJG, 2010 WL 4455648 (S.D.N.Y. Nov. 2, 2010) ("where . . . the consideration supporting the claim is supplied pre-petition, court[s] have determined that those claims are not entitled to administrative priority, even if the right to payment arises post-petition.").

18. This Court's interpretation of section 503(b)(1)(A)(ii) as extending only to "events that occur after the commencement of a bankruptcy case," Aug. 4, 2021 Hr'g. Tr. at 113:19-24, is therefore entirely consistent with the plain language of the statute and the authority interpreting the phrase "attributable to." Neither the statutory language, the asserted facts, nor the caselaw Movants cite provides any basis for Movants' contrary reading.

## II. The Motion Does Not Establish Entitlement to Allowance for the Postpetition Portion

19. Parties seeking administrative priority status for their claims must establish liability under applicable law. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law"); *In re Bos. Reg'l Med. Ctr.*, 256 B.R. 212, 220 (Bankr. D. Mass. 2000), *aff'd sub nom. Mass. Div. of Emp. & Training v. Bos. Reg'l Med.*

9

*Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 265 B.R. 838 (B.A.P. 1st Cir. 2001), *aff'd on other grounds*, 291 F.3d 111 (1st Cir. 2002) ("In determining whether an obligation arising under state law is a tax under the Bankruptcy Code, courts must look to state law to understand the characteristics and incidents of the obligation . . . ."); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-bk-4780, 2022 WL 1401506, at *4 (D.P.R. May 4, 2022) ("Motion for administrative expense treatment fails because [movant] has not demonstrated that it has a contractual right to reimbursement of the Expenses . . . ."). To the extent they are not, the asserted costs do not constitute "actual, necessary costs and expenses of preserving" the Commonwealth. 11 U.S.C. § 503(b)(1)(A)(i).

20. "'The burden of proving entitlement to priority payment as an administrative expense . . . rests with the party requesting it,' and the Court has broad discretion in determining whether to grant a request for such priority treatment." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 631 B.R. 596, 604 (D.P.R. 2021) (quoting *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992)); *see also In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013). A party seeking administrative expense treatment must show a "clear relationship between the expenditures made and the benefit conferred on the estate . . . ." *In re Drexel Burnham Lambert Grp.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) (citations omitted).

21. Here, Movants have not met the burden of proving entitlement to priority payment for the Postpetition Portion. Movants concede that the Prepetition Portion is contingent on the resolution of the Underlying Action. Mot. at 6 ("in regards the pre-petition claim, Movants submits, [sic] that *if* the pending payroll claim is allowed by the Commonwealth courts, all the employees in the present case are Entitled to Administrative Priority . . . ."). (emphasis added). The same contingency applies to the Postpetition Portion because it is based on the same theory of liability. Movants acknowledge that their proffered entitlement to priority arises from the theory

10

that Movants are "similarly situated" to "the other auditors and tax specialist that entered settlement agreement and obtained the reclasifications [sic] of their positions or pay increases" pursuant to another case. *Id.* at 3-4.

22. However, unlike the other claimants who obtained the Judgment, a determination of liability in favor of Movants remains non-existent. The Puerto Rico Department of Justice continues to defend the Commonwealth in the Underlying Action and have succeeded at the trial and appellate level. On January 9, 2017, the Puerto Rico Court of First Instance entered a partial judgment dismissing most of Underlying Action's claims with prejudice, except for certain claims filed by a group of auditors and tax specialists. On October 15, 2019, the plaintiffs therein appealed the dismissal of their claims pursuant to the partial judgment, which dismissal the Puerto Rico Court of Appeals affirmed on January 30, 2020. On July 15, 2020, plaintiffs filed an appeal to the Puerto Rico Supreme Court.[7] Upon completion of briefing, on April 26, 2021, the Puerto Rico Supreme Court issued an order stating that the case was submitted for decision, which remains pending as of the date hereof. The issues on appeal in the Underlying Action before the Puerto Rico Supreme Court relate to the Commonwealth's laches and statute of limitations defenses.

23. In short, Movants' theory of liability underlying the Motion has been denied by two Commonwealth courts. At best, the Underlying Action remains subject to litigation, where Movants face substantial obstacles. While the Movants have sought, and the Commonwealth courts have thus far denied, a ruling in their favor on liability, Movants have not met their burden of showing entitlement to priority.

---

[7] Following the Puerto Rico Supreme Court's decision to hear the appeal, the proceedings before the Court of First Instance with respect to the cause of action filed by the group of auditors and tax specialists were stayed pending resolution of the appeal.

11

24. With respect to the Postpetition Portion, litigating liability in the context of the Title III proceeding is thus premature considering the pending status of the Underlying Action. Rather, the completion of the Underlying Action is likely to yield facts and determinations that will assist the parties and the Court in determining the amount and existence of the Debtor's liability, if any, in connection with the Motion. Accordingly, once the Puerto Rico Supreme Court has issued its ruling, informing the resolution of the Underlying Action, and once the Underlying Action is completed, the Court and the parties will be in a proper position to determine the existence and amount of any associated liability. The denial of the Motion would preserve judicial and Debtor resources and avoid potentially divergent determinations between tribunals.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth respectfully requests the Court deny the Motion and grant such other and further relief as is just.

Dated: July 28, 2022
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Ehud Barak (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*