Objection Deadline:  September 14, 2022 at 4:00 p.m. (AST)
Hearing Date:  September 21, 2022 at 9:30 a.m. (AST)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO (the "ERS"),<br><br>        Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03566-LTS |

**<u>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO'S</u>**
**<u>MOTION TO ENFORCE THE PLAN OF ADJUSTMENT</u>**
**<u>AND FOR RELATED INJUNCTIVE RELIEF</u>**

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

JURISDICTION AND VENUE ...................................................................................... 3

RELEVANT PROCEDURAL BACKGROUND............................................................. 4

    A.    Beneficiaries Of The ERS Bring Derivative Claims On Behalf Of The
        ERS, Which The ERS Later Joins As A Plaintiff To Pursue On Its Own
        Behalf. ............................................................................................................ 4

    B.    The Commonwealth And The ERS Commence The PROMESA
        Proceedings. ................................................................................................... 5

    C.    The Court Approves The Plan. ...................................................................... 5

    D.    The Plan Protects The Pension Benefits Of The Retirees................................ 6

    E.    The Plan Places The ERS's Litigation Assets In A Litigation Trust For
        The Benefit Of Creditors Other Than The Retirees....................................... 6

    F.    The Court Adjusts The Plan In Response To A Last-Minute Request From
        Plaintiffs In The Commonwealth Action. ..................................................... 8

    G.    The Plan Becomes Effective And ERS's Litigation Assets Are Transferred
        To The Avoidance Actions Trust. .................................................................. 9

ARGUMENT .................................................................................................................. 9

I.     THE ERS NO LONGER OWNS THE CLAIMS ASSERTED IN THE
      COMMONWEALTH ACTION. .................................................................... 9

II.    THE FORMER ERS BENEFICIARIES HAVE NO REMAINING INTEREST IN
      THE CLAIMS.................................................................................................. 11

    A.    Derivative Standing Has Been Lost................................................................ 11

    B.    The ERS Beneficiaries Do Not Have Any Direct, Personal Claims Against
        UBS.............................................................................................................. 13

    C.    Law No. 3 Of 2013 Does Not Provide A Basis To Recognize Individual
        Claims Separate From The ERS's Claims. ..................................................... 16

III.   THE BALANCE OF THE EQUITIES SUPPORTS ENJOINING FURTHER
      PROSECUTION OF THE COMMONWEALTH ACTION............................. 24

## TABLE OF AUTHORITIES

### Cases

*AFT Michigan v. Michigan (On Remand)*,
  893 N.W.2d 90 (Mich. Ct. App. 2016),
  *aff'd in relevant part*, 904 N.W.2d 417 (Mich. 2017) ......................................21

*Aner Investment Corp. v. Junta de Planificación*,
  148 D.P.R. 421 (1999) ...............................................................................17

*In re Bernard Law. Madoff Investment Securities LLC*,
  740 F.3d 81 (2d Cir. 2014)..........................................................................14

*Eastern Enterprises v. Apfel*,
  524 U.S. 498 (1998).........................................................................22, 23, 24

*Elbert v. True Value Co.*,
  550 F.3d 690 (8th Cir. 2008) .......................................................................18

*Espinoza v. Bank of America, N.A.*,
  823 F. Supp. 2d 1053 (S.D. Cal. 2011)..........................................................18

*Garcia-Rivera v. Allison*,
  No. 04-1757(PG), 2006 WL 2261065 (D.P.R. Aug. 7, 2006).........................11

*In re General Development Corp.*,
  179 B.R. 335 (S.D. Fla. 1995) .....................................................................11

*Hantz v. Belyew*,
  194 F. App'x 897 (11th Cir. 2006) ...............................................................12

*Holmes v. Securities Investor Protection Corp.*,
  503 U.S. 258 (1992).....................................................................................15

*Hughes Aircraft Co. v. United States*,
  520 U.S. 939 (1997)...............................................................................17, 18

*International Ass'n of Fire Fighters, Local 2665 v. City of Clayton*,
  320 F.3d 849 (8th Cir. 2003) .......................................................................15

*Jackson National Life Insurance Co. v. Ligator*,
  949 F. Supp. 200 (S.D.N.Y. 1996).................................................................16

*Jackson v. Fischer*,
  No. 11-cv-2753-PJH, 2015 WL 5569133 (N.D. Cal. Sept. 21, 2015)..............14

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994).................................................................................17

*Lawson v. BNSF Railway Co.*,
    No. 2:15-CV-0094-TOR, 2016 WL 2858833 (E.D. Wash. May 16, 2016) ....................15

*Medina-Padilla v. U.S. Aviation Underwriters, Inc.*,
    815 F.3d 83 (1st Cir. 2016).................................................................10, 11

*Native American Arts, Inc. v. Waldron Corp.*,
    253 F. Supp. 2d 1041 (N.D. Ill. 2003) ..............................................................18

*Oliveira v. Sugarman*,
    152 A.3d 728 (Md. Ct. App. 2017).................................................................14

*Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984)...............................................................................22

*Porn v. National Grange Mutual Insurance Co.*,
    93 F.3d 31 (1st Cir. 1996)..........................................................................11

*Puerto Rican Renewal Party v. Commonwealth of Puerto Rico*,
    115 D.P.R. 631 (1984) .........................................................................18, 19

*In re REFCO Inc. Securities Litigation*,
    Nos. 07-md-1902 (JSR) et seq., 2010 WL 1375946 (S.D.N.Y. Feb. 3, 2010),
    *report and recommendation adopted*, Nos. 07 MDL 1902(JSR) et seq., 2010 WL
    1404198 (S.D.N.Y. Mar. 31, 2010) ...........................................................12, 13

*In re Regina Metropolitan Co.*,
    35 N.Y.3d 332 (2020) ............................................................................21

*Ritchie Capital Management, L.L.C. v. General Electric Capital Corp.*,
    121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ....................14

*Rivas v. Rail Delivery Service, Inc.*,
    423 F.3d 1079 (9th Cir. 2005) ....................................................................18

*Rivera-Flores v. P.R. Telephone Co.*,
    64 F.3d 742 (1st Cir. 1995)........................................................................17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    Adv. P. Nos. 08-01789 (SMB) et seq., 2017 WL 921963 (Bankr. S.D.N.Y. Mar.
    7, 2017), *aff'd*, 598 B.R. 102 (S.D.N.Y. 2019), *and aff'd sub nom. Marshall v.*
    *Cap. Growth Co.*, 818 F. App'x 48 (2d Cir. 2020)........................................13, 14

*Sizer v. Lopez Velasquez*,
    270 A.3d 299 (D.C. 2022) ........................................................................18

iv

*Stone v. Hamilton*,
    308 F.3d 751 (7th Cir. 2002) ......................................................................18

*Teachers Asscociation v. Department of Education*,
    200 D.P.R. 974 (2018) , __ P.R. Offic. Trans., __ (2018) ..................................19

*Teachers Association of Puerto Rico v. Puerto Rico Teachers Retirement System*,
    190 D.P.R. 854 (2014), __ P.R. Offic. Trans. __ (2014) ...........................20, 21

*Thornton v. Bernard Technologies, Inc.*,
    C.A. No. 962-VCN, 2009 WL 426179 (Del. Ch. Feb. 20, 2009) .....................11

*Travelers Indemnity Co. v. Bailey*,
    557 U.S. 137 (2009) ........................................................................................4

*United States v. Commonwealth of Puerto Rico*,
    144 F. Supp. 2d 46 (D.P.R. 2001), *aff'd and remanded sub nom. United States v.*
    *Puerto Rico*, 287 F.3d 212 (1st Cir. 2002).....................................................18

*United States Fidelity & Guaranty Co. v. McKeithen*,
    226 F.3d 412 (5th Cir. 2000) ...................................................................23, 24

*In re Vitamins Antitrust Litigation*,
    No. 99-197 (TFH), 1285, 2000 WL 1511376 (D.D.C. Oct. 6, 2000) ...............18

*Warner Lambert Co. v. Tribunal Superior*,
    101 D.P.R. 378 (1973) ...........................................................................19, 20, 21

## Statutes

11 U.S.C. § 105(a) ................................................................................................4

28 U.S.C. § 1331 ..................................................................................................3

28 U.S.C. § 1391(b) .............................................................................................4

31 L.P.R.A. § 3 ...................................................................................................17

48 U.S.C. § 2161(a) .............................................................................................4

48 U.S.C. § 2166(a) .............................................................................................3

48 U.S.C. § 2167(a) .............................................................................................4

P.R. Const. art. II, § 7 .............................................................................19, 21, 23

U.S. Const. amend. V ................................................................................21, 23

U.S. Const. amend. XIV ............................................................................21

v

U.S. Const. art. 1, § 10, cl. 1 ...........................................................................................................19

UBS Financial Services Incorporated of Puerto Rico ("UBS"),[2] by and through the undersigned counsel, moves this Court for an Order pursuant to Section 91.1 of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et al. (the "Plan of Adjustment" or the "Plan") to enforce the Plan and to enjoin the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS") and seven former beneficiaries of the ERS from litigating claims that were transferred to other creditors under the Plan and no longer belong to the ERS or its former beneficiaries.  In support of this Motion, UBS states as follows:

## PRELIMINARY STATEMENT

1.      Since before these PROMESA proceedings began, the ERS and seven of its beneficiaries have been litigating claims for breach of contract and breach of fiduciary duty against UBS in an action captioned *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Financial Services Inc. of Puerto Rico*, Civ. No. KAC-2011-1067, in the Commonwealth Court in San Juan (the "Commonwealth Action"). In violation of the Plan, the ERS and its seven now former beneficiaries have continued to litigate those claims against UBS, despite the fact that the Plan transferred those claims from the ERS to a litigation trust created for the benefit of other creditors.   Furthermore, to the extent that such claims were not transferred to the litigation trust, then those claims, along with all other assets of the ERS, were transferred to the Commonwealth under the terms of the Plan.  Under no circumstances did those claims remain with the ERS for the benefit of the retirees.  Rather, the interests of the retirees were protected by other provisions of the Plan.  UBS therefore brings this

---

2      Effective July 17, 2021, UBS Financial Services Incorporated of Puerto Rico was merged into UBS Financial Services Inc.

Motion to enforce the Plan and enjoin the ERS and its seven former beneficiaries from continuing to litigate claims that they no longer own.

2. There is clear overlap between the claims that the ERS and its seven former beneficiaries are litigating in the Commonwealth Court and the claims controlled by the litigation trustee in an adversary proceeding in this Court captioned *Drivetrain, LLC v. Barclays, et al.*, Adv. Proc. No. 19-000280-LTS (the "Underwriter Adversary Action"). The separate pursuit of these claims in the Commonwealth Action violates the terms of the Plan, threatens the rights of other creditors, and could unfairly subject UBS to duplicative liability for the same causes of action. Allowing the ERS and a small number of its former beneficiaries to continue to litigate those claims would destroy the intent and purpose of the Plan. Beneficiaries of the ERS, who were treated quite favorably under the Plan, should not be allowed to double-dip by also taking claims assigned for the benefit of other creditors. Furthermore, UBS could never settle these claims because two distinct groups purport to control them.

3. But there is no genuine debate over who owns these claims – under the plain terms of the Plan, the claims ***no longer*** belong to the ERS and its beneficiaries. The claims in the Commonwealth Court are undoubtedly the same claims brought in the Underwriter Adversary Action. In both cases, the plaintiffs seek to hold UBS liable for its role in the ERS's issuance of pension obligation bonds in 2008. Indeed, the two cases assert claims based on alleged breaches of the ***same contract*** between UBS and the ERS.

4. Furthermore, the balance of the equities favors enjoining the ERS and its seven beneficiaries from pursuing the Commonwealth Action. The ERS has no further interest in the outcome of that lawsuit. As part of the Plan, the ERS distributed all of its assets and is proceeding to dissolve. To the extent that the litigation rights were not transferred to the

litigation trustee, then those claims (and all other assets of the ERS) were transferred to the

Commonwealth. Nothing stayed with the ERS. Likewise, the seven individual beneficiaries

have no interest in the Commonwealth Action because they were expressly pursuing *derivative*

claims on the ERS's behalf. Those derivative rights were extinguished when the ERS filed for

protection under PROMESA.

5.      In the past, the ERS Beneficiaries[3] have pointed to a special Puerto Rico statute

concerning pension obligation bonds, Law No. 3 of 2013, as a basis for their standing. UBS

acknowledges that Law No. 3 of 2013 – which was passed five years after the ERS bond

issuances and two years after the Commonwealth Action was filed – was intended to give the

ERS Beneficiaries standing to pursue derivative claims on behalf of the ERS, which was unclear

at the time the complaint was filed. However, nothing in Law No. 3 of 2013 transforms those

previously derivative claims into individual causes of action for the retiree plaintiffs. As

explained below, not only does the language of Law No. 3 not support that outcome, but reading

the statute in that manner would render it unconstitutional under the Constitutions of both Puerto

Rico and the United States.

6.      For all of these reasons, and as explained more fully below, UBS respectfully

requests that the Court enter an order enforcing the Plan and enjoining the ERS and its seven

former beneficiaries from continuing to litigate the Commonwealth Action.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction to grant the relief sought in this Motion pursuant to 28

U.S.C. § 1331, 48 U.S.C. § 2166(a) and Section 91.1 of the Modified Eighth Amended Title III

---

[3]    As defined *infra*, Section A ¶ 8.

Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., approved by the Court on

January 18, 2022 (Dkt. 19813-1).  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)

(affirming that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own

prior orders").  *See also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title."); 48 U.S.C. §

2161(a) (stating that 11 U.S.C. § 105 applies to cases brought pursuant to PROMESA).  Venue is

proper in this Court pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

## RELEVANT PROCEDURAL BACKGROUND

**A.    Beneficiaries Of The ERS Bring Derivative Claims On Behalf Of The ERS, Which The ERS Later Joins As A Plaintiff To Pursue On Its Own Behalf.**

8.    On September 29, 2011, Pedro José Nazario Serrano and his wife, Juanita Sosa

Pérez, in their capacities as beneficiaries of the ERS, commenced a self-titled "Derivative

Action," brought on behalf of the ERS, in the Commonwealth Court.  In a subsequent

amendment, five more purported beneficiaries joined their suit (together with the initial

plaintiffs, the "ERS Beneficiaries").  In 2016, in yet another amendment, the ERS realigned itself

as a plaintiff to pursue the claims on its own behalf.  On April 17, 2019, the ERS and the ERS

Beneficiaries filed their Fourth Amended Complaint, which is the operative complaint in the

Commonwealth Action.  (*See* Ex. A ("4th AC"))  Even after the ERS joined the suit, the claims

asserted by the ERS Beneficiaries remained derivative claims.  At no time did they plead a class

action on behalf of all retirees.

9.    The claims in the Commonwealth Action are based on the ERS's issuances of

pension obligation bonds in 2008.  (*See generally id.*)  The ERS and the ERS Beneficiaries seek

to hold UBS liable for its role in the bond issuances, which they assert harmed the ERS.

Specifically, they allege that UBS violated its "underwriting contracts with the System for the issue and sale of the Bonds."  (4th AC ¶ 6.18)

10.     The ERS Beneficiaries expressly pleaded their case as a derivative action that asserts claims on behalf of the ERS.  They have not asserted that they had any direct contact with UBS and they are not parties or third-party beneficiaries to the contracts at issue in the Commonwealth Action.

**B.     The Commonwealth And The ERS Commence The PROMESA Proceedings.**

11.     On May 3, 2017, the Commonwealth filed a petition in this Court to restructure its debt under PROMESA.  The ERS filed a follow-on petition of its own on May 21, 2017.

12.     Over the next several years, the Oversight Board worked to negotiate an agreement with the Commonwealth and the ERS's many creditors.  The ERS's beneficiaries were represented in those negotiations by The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retirees' Committee").

**C.     The Court Approves The Plan.**

13.     On January 18, 2022, this Court entered an order confirming the Plan of Adjustment to restructure the Commonwealth's and the ERS's debt, including the outstanding debt to pensioners and holders of the ERS's pension obligation bonds.  (Dkt. 19813 ("Confirmation Order"); 19813-1 (the Plan))  The Court explained that its confirmation of the Plan was a "crucial step in the effort to achieve the economic recovery of the Commonwealth of Puerto Rico and its instrumentalities."  (Dkt. 19812, Findings of Fact and Conclusions of Law ("FFCL") at 14)  "The Plan required extraordinary work over the course of several years to negotiate the terms of various plan support agreements and resolve disputes…."  (*Id.*; *see also id.* ¶ 141)

**D.  The Plan Protects The Pension Benefits Of The Retirees.**

14.  A critical component of the Plan is that it provides that government employees and retirees will continue to receive their pension benefits.  The Plan "eliminates any reduction in accrued pensions and certain other retiree benefits for retired and active employees and provides for the creation of the Pension Reserve Trust," which will be funded by annual contributions from the Commonwealth.  (FFCL ¶ 131; Confirmation Order ¶ 23; Plan §§ 1.389, 83.2)  According to the Court, "[t]he Pension Reserve Trust is projected to have a balance of $3.1 billion through the end of fiscal year 2031 based on the Fiscal Plan.  Further, the Pension Reserve Trust will be professionally and independently managed to insulate the funding available to pay pensions from political or economic influences." (FFCL ¶ 198)  In confirming the Plan, the Court explained that it prioritized continued benefits for retirees over the claims of other creditors.  (FFCL ¶ 130 (noting that "[a]ny cut to pensions of retired government employees would have a negative impact on Puerto Rico's economy"))

**E.  The Plan Places The ERS's Litigation Assets In A Litigation Trust For The Benefit Of Creditors Other Than The Retirees.**

15.  Other creditors did not fare as well as the retirees, but they still received specified benefits under the Plan.  Pursuant to the Plan, causes of action, such as the claims against underwriters, were placed in trust for the benefit of creditors other than the retirees.  Specifically, Section 78.3 states that "[o]n the Effective Date, the Debtors shall transfer all of the Avoidance Actions Trust Assets to the Avoidance Actions Trust."  (Plan § 78.3) The Avoidance Actions Trust Assets contain not just classic avoidance claims, but also the claims being asserted in the Underwriter Adversary Action.  (*See id.* § 1.108 (defining "Avoidance Actions Trust Assets" to include "(c) such other actions that have been brought by or on behalf of the Debtors seeking

6

affirmative recoveries, and which actions are set forth in the respective litigation lists on Exhibit 'B' hereto"); *see also id.* Exhibit B, listing the Underwriter Adversary Action)

16.     The claims placed in the Avoidance Actions Trust are no longer under the control of the ERS or the Commonwealth.  Rather, under Section 78.6 of the Plan, the Avoidance Actions Trustee has the "rights, powers and duties" to "hold the Avoidance Actions Trust Assets for the benefit of the Avoidance Actions Trust Beneficiaries" and "to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust." (*Id.* § 78.6)

17.     These provisions also give control over the claims in the Commonwealth Action to the Avoidance Action Trustee because complaints in both cases contain essentially the same claims. (Compare Underwriter Adversary Action Compl. ¶¶ 48-55, 510-514, 543-547 (asserting claims for breach of contract against UBS arising out of purchase contracts underwriters entered in connection with System's 2008 POB issuances); and 4th AC ¶ 6.18 (alleging UBS violated its "underwriting contracts with the System for the issue and sale of the Bonds"))

18.     In any event, to the extent that the claims in the Commonwealth Action were not assigned to the Avoidance Actions Trustee, they were sold to the Commonwealth.  No assets stayed with the ERS.  Specifically, under the Plan, the Commonwealth agreed to purchase, and the ERS agreed to sell, all of the ERS's remaining assets.  (FFCL ¶ 189)  Section 2.4 of the Plan provides that:

> On the Effective Date, (a) the Commonwealth shall purchase, and ERS shall sell, assign, transfer and convey to the Commonwealth, all of ERS's right, title and interest in ERS's Assets, including, without limitation, such Assets subject to a valid and perfected lien or security interest for an aggregate purchase price equal to the sum of Three Hundred Seventy-Three Million Dollars ($373,000,000.00)….

(Plan § 2.4)  "Assets" is defined in the Plan to include:  "all Causes of Action, and any

subsequent proceeds thereof, that have been or may be commenced by the Debtors or other

authorized representative for the benefit of the Debtors and its Creditors[.]"  (Plan § 1.83)

19.    Finally, the Plan provides that, upon the Effective Date, the ERS would dissolve.

(Plan § 88.2)  Upon information and belief, the lawyers purporting to represent the ERS in the

Commonwealth Action no longer have a contract with the ERS and are acting without authority

in continuing to litigate that case on the ERS's behalf.

**F.    The Court Adjusts The Plan In Response To A Last-Minute Request From
Plaintiffs In The Commonwealth Action.**

20.    On the day this Court was scheduled to rule on the Plan, counsel in the

Commonwealth Action intervened to object to a provision that would require automatic

dismissal of the Commonwealth Action.  (Dkt. 19766)  To avoid this last-minute holdup, the

Oversight Board agreed to remove the provision requiring dismissal of the Commonwealth

Action.  (Dkt. 19791 ¶ 4)  The Oversight Board, however, specifically reserved the

Commonwealth's rights over the ERS's litigation assets:

> [T]he Debtors reserve their respective rights pursuant to the Plan, including
> without limitation, in connection with the conveyance of all ERS assets to the
> Commonwealth, such as the claims and causes of action set forth in the UBS
> Action [defined as *Administración de los Sistemas de Retiro de los Empleados del
> Gobierno y la Judicatura de Puerto Rico v. UBS Financial Services Inc. of Puerto
> Rico*, Civ. No. KAC-2011-1067 (803)].

(*Id.* ¶ 5)  After the Oversight Board removed the provision automatically dismissing the

Commonwealth Action, the ERS Beneficiaries raised no further objection.  They did not

object to the Oversight Board's reservation of rights or to any other provision of the Plan

transferring causes of action away from the ERS.  (*See* Dkt. 19790 ¶ 4 (acknowledging

their objection was moot))

G.     **The Plan Becomes Effective And ERS's Litigation Assets Are Transferred To The Avoidance Actions Trust.**

21.     On March 15, 2022, the Effective Date, the Plan was substantially consummated. (Dkt. 20349)  As a result, (i) the Avoidance Actions Trust Assets were transferred to the litigation trustee; (ii) the ERS's remaining assets were sold to the Commonwealth; and (iii) the ERS agreed to dissolve.

## ARGUMENT

I.     **THE ERS NO LONGER OWNS THE CLAIMS ASSERTED IN THE COMMONWEALTH ACTION.**

22.     The ERS should be enjoined from further litigating the Commonwealth Action because it transferred the claims in that action to the Avoidance Actions Trust for the benefit of creditors other than the ERS retirees.  While styled slightly differently in certain respects, the claims in Commonwealth Action are effectively the same as the claims now being pursued by the Avoidance Actions Trustee in the Underwriter Adversary Action.  Indeed, the primary claim in both actions is exactly identical.  The Underwriter Adversary Action asserts that UBS entered contracts to underwrite the 2008 pension obligation bonds and that they breached those agreements.  (Underwriter Adversary Action Compl. ¶¶ 48-49, 511, 513, 544, 546)  The Commonwealth Action asserts the same exact claims based on the very same underwriting contracts.  The operative complaint in the Commonwealth action provides (in translation):

- "UBS proposed to the System that it contract UBS itself as an underwriter to issue and sell the proposed bonds" (4th AC ¶ 4.5);

- "the System and UBS awarded contracts for the issuance and sale of the Bonds" (*id.* ¶ 4.11);

- "[p]ursuant to said UBS contract with the System, during the first half of 2008, UBS acted as lead underwriter in the following three issuances, distributions and sales in the local market of System bonds" (*id.* ¶ 4.13);

9

- "[b]y not only endorsing, but also participating as the lead underwriter in the illicit and grossly negligent issuance of the Bonds, UBS violated its contractual, non-contractual and fiduciary obligations towards the System" (*id.* ¶ 6.11);

- UBS violated its "underwriting contracts with the System for the issue and sale of the Bonds." (*id.* ¶ 6.18); and

- "UBS, in addition, acted as investment banker and lead underwriter in the issuance of Bonds, under contracts with the System" (*id.* ¶ 6.21).

23.     That claim is indistinguishable from the claim pleaded in the Underwriter Adversary Action, which was given to the Avoidance Actions Trust Assets under the Plan.  (Plan §§ 1.108, 78.3)  According to the Plan, the Avoidance Actions Trustee has the "right[], power[] and dut[y]" to "hold the Avoidance Actions Trust Assets for the benefit of the Avoidance Actions Trust Beneficiaries" and "to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust." (*Id.* § 78.6)  Thus, the ERS's continued pursuit of its former claim violates the Plan, which gives exclusive control over that claim to the Avoidance Actions Trustee.

24.     In addition to contract claims, the Commonwealth Action also includes claims under Article 1802 of Puerto Rico Civil Code for negligence in providing services to the ERS pursuant to underwriting or advisory contracts.  The complaint concedes that the fiduciary duty claims are based on the exact same conduct as the breach of contract claims.  (*See* 4th AC ¶ 7.2 (admitting that the tort claim was based on a violation of UBS's "contractual" duties))

25.     While styled under a different legal theory, these torts claims cannot be distinguished from the contract claims and also belong to the Avoidance Action Trust.  Indeed, a tort claim based on contractual obligations cannot be split off from the contract claim because they are treated as the same for purposes of *res judicata* under Puerto Rico and federal law.  *See Medina-Padilla v. U.S. Aviation Underwriters, Inc.*, 815 F.3d 83 (1st Cir. 2016) (*res judicata* barred tort action where previous suit had alleged breach of contract based on same factual

predicates) (applying Puerto Rico law); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31 (1st Cir.

1996) (federal *res judicata* principles precluded raising of bad faith claims that could have been

resolved in initial suit against insurer for breach of contract); *see also Garcia-Rivera v. Allison*,

No. 04-1757(PG), 2006 WL 2261065, at *4 (D.P.R. Aug. 7, 2006) (dismissing claim under

Article 1802 because plaintiff's damages arose from breach of contract and so plaintiff "d[id] not

have a separate cause of action for negligence") (internal quotations omitted).

26.     Moreover, even if the claims had not been transferred to the Avoidance Actions

Trust, they would still not belong to the ERS.  The ERS sold all of its remaining assets –

including all causes of action that have been or may be commenced by it or for its benefit – to

the Commonwealth.  (Plan §§ 1.83, 2.4)  The ERS did not retain the right to sue anyone.

## II.     THE FORMER ERS BENEFICIARIES HAVE NO REMAINING INTEREST IN THE CLAIMS.

### A.     Derivative Standing Has Been Lost.

27.     For the same reason, the ERS Beneficiaries must also dismiss their derivative

claims that were brought on behalf of the ERS.  They have no standing to sue derivatively any

longer for at least three reasons.

28.     ***First,*** when the ERS filed for protection under PROMESA, its claims came under

the exclusive control of this Court, which cut off any right to sue derivatively on the ERS's

behalf.  *See Thornton v. Bernard Techs., Inc.*, No. 962-VCN, 2009 WL 426179, at *3 (Del. Ch.

Feb. 20, 2009) ("The derivative claims, upon the commencement of the bankruptcy proceeding,

became the property of the bankruptcy estate and subject to the control of the Bankruptcy

Court."); *In re Gen. Dev. Corp.*, 179 B.R. 335, 338 (S.D. Fla. 1995) ("A corporation's filing for

bankruptcy cuts off a shareholder's ability to bring a derivative claim.").

29.     **Second**, under the Plan, the ERS's rights were transferred to the Avoidance

Actions Trust.  As derivative plaintiffs who stand in the shoes of the ERS, they have no better

rights than the ERS itself, which no longer owns the claims.

30.     Allowing the seven ERS Beneficiaries – who were separately and generously

provided for under the Plan – to seize control of assets intended for the Avoidance Actions Trust

would disrupt the carefully balanced rights of competing creditor groups that were resolved

through years of negotiations in the PROMESA proceedings.  *See Hantz v. Belyew*, 194 F. App'x

897, 899 (11th Cir. 2006) (dismissing derivative claims where shareholders were divested of

stock in bankruptcy reorganization, noting that "bankruptcy proceedings provided the plaintiffs

with an adversarial proceeding in which to air their grievances").  The retirees participated in

those negotiations through counsel and achieved an outstanding outcome.  The retirees' benefits

are no longer tied to the pension obligation bonds but are separately funded through the Pension

Reserve Trust, which will be "independently managed to insulate [it] from political or economic

influences." (FFCL ¶ 198)  (*See also* 4th AC ¶ 4.23 (raising concern that "the assets of the

System and its capacity to pay benefits to its pensioners and future pensioners" were

"diminished" by the bond issuances))  Given the strong protections negotiated by the retirees in

the PROMESA proceedings, allowing a small set of retirees to get another bite at the apple

through the Commonwealth Action would be grossly unfair to all of the other PROMESA

constituencies.

31.     Disrupting the clear transfer of title to these claims under the Plan would be

especially unfair to UBS because it would subject UBS to a potential double recovery.  *See In re*

*REFCO Inc. Sec. Litig.*, Nos. 07-md-1902 (JSR) et seq., 2010 WL 1375946, at *7 (S.D.N.Y. Feb.

3, 2010) (recommending dismissal of investors' claims where the funds in which investors held

shares were separately pursuing the same claims because denying dismissal would result in a double recovery), *report and recommendation adopted*, Nos. 07 MDL 1902(JSR) et seq., 2010 WL 1404198 (S.D.N.Y. Mar. 31, 2010).

32.     As a practical matter, absent the relief sought on this Motion, UBS will be effectively unable to settle the Underwriter Adversary Action because a settlement with the Avoidance Actions Trustee would not provide the necessary global peace that any defendant would require.  This is inconsistent with the Plan's grant of exclusive authority to settle the Underwriter Adversary Action to the Avoidance Actions Trustee.

33.     ***Third***, even if these claims were not transferred to the Avoidance Actions Trustee, then the seven ERS Beneficiaries would still lack standing to pursue the claims because they would have been transferred to the Commonwealth.  Again, because the rights of the ERS Beneficiaries are derivative of the rights of the ERS, they no longer have any derivative interest in the ERS's former causes of action.

34.     In short, enjoining the further prosecution of the Commonwealth Action by the ERS or its former beneficiaries is necessary to maintain the careful balance the Court struck in approving the Plan.

**B.     The ERS Beneficiaries Do Not Have Any Direct, Personal Claims Against UBS.**

35.     To the extent that the ERS Beneficiaries contend that they are suing on their own behalf and not on behalf of the ERS, that argument is refuted by a review of any of the five complaints filed in the Commonwealth Action.   From the outset of that litigation, the ERS Beneficiaries always expressly pleaded their claims based on duties owed *to the ERS*.

36.     But this determination is not just a matter of stylistic pleading.  The hallmark of an independent, individual claim is a duty owed directly to the individual asserting the claim. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. P. Nos. 08-01789 (SMB) et

seq., 2017 WL 921963, at *4 (Bankr. S.D.N.Y. Mar. 7, 2017) (holding critical feature of non-derivative claim is that it "arises from the wrongdoer's breach of a separate legal obligation owed to the victim"), *aff'd*, 598 B.R. 102 (S.D.N.Y. 2019), *and aff'd sub nom. Marshall v. Cap. Growth Co.*, 818 F. App'x 48 (2d. Cir. 2020).  In order to plead an individual claim, a party cannot merely allege "secondary harms flowing from" injury to debtor.  *See In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 93 (2d Cir. 2014).

37.      Here, there is no allegation that UBS owed contractual duties directly to the beneficiaries.  None of the contracts between UBS and the ERS identifies the ERS Beneficiaries as parties or third party beneficiaries.  (*See generally* Exs. B-D)  Nor have the ERS Beneficiaries alleged that UBS made any representations to them personally.

38.      In short, there is no factual allegation in the Commonwealth Action that could support claims independent of the ERS's claims.  *See Jackson v. Fischer*, No. 11-cv-2753-PJH, 2015 WL 5569133, at *19 (N.D. Cal. Sept. 21, 2015) (dismissing individual's breach of fiduciary duty claim because "apart from pleading the duties the defendants owed to the corporations, plaintiff has not alleged the existence of a duty based upon a fiduciary relationship"); *Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 335 (S.D.N.Y. 2015) (dismissing creditors' claims as derivative because "there was no direct relationship or communication between the plaintiffs and defendants," "the defendants had no duty to the plaintiffs," and "no facts were alleged that distinguish[] the plaintiffs' injury from that of other creditors"), *aff'd*, 821 F.3d 349 (2d Cir. 2016); *Oliveira v. Sugarman*, 152 A.3d 728, 745 (Md. Ct. App. 2017) (holding shareholders could not pursue individual claims for breach of contract because there was no contract between shareholders and board).

39.     Here, the ERS Beneficiaries' alleged injuries derive entirely from the ERS
purportedly taking on too much debt.  For instance, in an attempt to identify personal harm,
Plaintiff Nazario Serrano alleges that as a result of losses suffered by the ERS, he lost a summer
bonus and the right to receive reimbursement for the cost of medications.  (4th AC ¶ 2.2)
Notably, UBS did not owe Nazario Serrano any obligation (contractual or otherwise) with
respect to his summer bonus or medical expenses.  Assuming the ERS owed him those
obligations, and that the ERS missed payments because of the pension obligation bonds (which
seems implausible given that those bonds increased the cash available to the ERS), then those
missed payments are still only secondary losses.  Those losses arose from the alleged injury to
the ERS, not a direct injury to Nazario Serrano caused by UBS's conduct.  Such remote,
secondary injuries do not support individual claims.  *See Holmes v. Sec. Inv. Prot. Corp.*, 503
U.S. 258, 271 (1992) (holding customers of broker dealers lacked standing to sue parties who
had allegedly defrauded broker dealers because the customers' injuries derived from injury
sustained by broker dealers); *Int'l Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d
849, 851 (8th Cir. 2003) (affirming dismissal for lack of standing where beneficiaries of pension
plan sued city regarding its obligations to make contributions to the plan, explaining that they
could only bring the case as a derivative action because "only the pension plan, if anyone, has
possibly suffered actionable injury"); *Lawson v. BNSF Ry. Co.*, No. 2:15-CV-0094-TOR, 2016
WL 2858833, at *6 (E.D. Wash. May 16, 2016) (holding plaintiff's personal economic loss was
insufficient to support individual claim because he incurred the loss only because his employer
was injured first).

42.     Courts carefully parse whether an individual claim exists because recognizing
individual claims alongside duplicative derivative claims would threaten double damages and

disrupt settlements. *See, e.g.*, *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 204, 207 (S.D.N.Y. 1996) (dismissing individual claims because lender's "injury arises only from the alleged wrongdoing by the defendants that left the intermediary companies … without the wherewithal to repay the financing," and noting that "the potential for duplicative recoveries" "has always troubled [the court] in this action").

**C.   Law No. 3 Of 2013 Does Not Provide A Basis To Recognize Individual Claims Separate From The ERS's Claims.**

44.    At other times in the Commonwealth Action, the ERS Beneficiaries have pointed to a special Puerto Rico statute concerning pension obligation bonds, Law No. 3 of 2013, as a basis for their standing.  UBS concedes that Law No. 3 of 2013 gave the ERS Beneficiaries standing to pursue derivative claims on behalf of the ERS prior to PROMESA.  However, nothing in Law No. 3 of 2013 creates new retroactive causes of action against the UBS Defendants based on bond issuances completed five years earlier.   As explained below, not only does the language of Law No. 3 not support that outcome, but reading the statute in that manner would render it unconstitutional under the Constitutions of both Puerto Rico and the United States.

**1.    The Plain Language Of Law No. 3 Does Not Create New Individual Claims Independent Of The ERS's Claims.**

47.    Basic rules of statutory construction defeat the ERS Beneficiaries' argument that Law No. 3 granted them rights to sue independently of the ERS's claims.  First, there is nothing in the language of Law No. 3 purporting to create new substantive claims.  The pertinent text of Law No. 3 provides:

> The participants and retirees … are acknowledged to have a cause of action pursuant to this Act to sue, by themselves, the non-government advisors and underwriters in any transaction in which the [System] has issued bonds (pension obligation bonds), for any damages caused to the System or to its beneficiaries.

16

48.     This statute, on its face, does not create new causes of action but merely acknowledges claims that would have already existed.  The statute is focused on standing – it allows retirees to sue for damages caused to the ERS, but it does not reclassify those claims for injuries to the ERS as direct claims rather than derivative claims.  It says nothing about that issue at all.

49.     Notably, Law No. 3 was passed five years after the pension obligation bonds were issued.  Absent an express legislative intent, the Court cannot recognize new rights and duties arising out of transactions that have long since concluded.  Under Article 3 of the 1930 Civil Code, "[l]aws shall not have a retroactive effect unless they expressly so decree." 31 L.P.R.A. § 3; *see also* Art. 9 of the 2020 Civil Code (same).  Puerto Rico courts have interpreted this provision to prohibit the retroactive application of legislation "unless the statute expressly or by inescapable inference demonstrates a contrary legislative intent." *Rivera-Flores v. P.R. Tel. Co.*, 64 F.3d 742, 751 (1st Cir. 1995); *see also Aner Inv. Corp. v. Junta de Planificación*, 148 D.P.R. 241, 253 (1999) ("The letter of the act or the legislative history should state for the record the intention to give a retroactive effect to a statute.") (our translation).  *See also Landgraf v. USI Film Prods.*, 511 U.S. 244, 268 (1994) ("[A] requirement that [the legislature] first make its intention clear helps ensure that [the legislature] itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.").

50.     Absent an intent expressed in the statute itself, courts should not interpret a law to "expand[ the] universe of plaintiffs" who can file claims or "increase Defendants' potential liability" for past conduct.  *See Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950 (1997);

17

*Rivas v. Rail Delivery Serv., Inc.*, 423 F.3d 1079, 1084 (9th Cir. 2005).[4]  And that presumption is even stronger where the case involves contractual rights.  *See United States v. Commonwealth of Puerto Rico*, 144 F. Supp. 2d 46, 52 (D.P.R. 2001), *aff'd and remanded sub nom. United States v. Puerto Rico*, 287 F.3d 212 (1st Cir. 2002).[5]

51.    Here, Law No. 3 does not expressly identify any intent to create new substantive rights that did not exist at the time the bond transactions occurred.  Rather, it acknowledges the ability to sue the advisors and underwriters for direct personal injuries where they previously existed, and, for damages caused to the System, allows a beneficiary to sue on behalf of the ERS. It does not, however, create retroactive individual claims against UBS independent of the ERS's claims where none previously existed.

### 2.    Recognizing New Individual Claims For The ERS Beneficiaries Would Violate UBS's Constitutional Rights.

52.    The Court should also reject the ERS Beneficiaries' interpretation of Law No. 3 because courts should avoid interpreting laws in a way that renders them unconstitutional.  *P.R.*

---

[4]    *See also Elbert v. True Value Co.*, 550 F.3d 690, 693 (8th Cir. 2008) (statute that conferred federal district courts with jurisdiction over employee complaints "ha[d] an impermissible retroactive effect" because it "broadened the class of individuals who may pursue a cause of action in district courts"); *Stone v. Hamilton*, 308 F.3d 751, 756 (7th Cir. 2002) (refusing to apply amendments to Food Stamp Act retroactively because it increased liability for past conduct); *Sizer v. Lopez Velasquez*, 270 A.3d 299, 306 (D.C. 2022) (amendment to the Consumer Protection Procedures Act allowing for a private right of action could not apply retroactively to conduct pre-dating the amendment); *Native Am. Arts, Inc. v. Waldron Corp.*, 253 F. Supp. 2d 1041, 1044 (N.D. Ill. 2003) (amendment providing new parties with standing to sue could not be interpreted to apply to conduct pre-dating the amendment); *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 1285, 2000 WL 1511376, at *5 (D.D.C. Oct. 6, 2000) (rejecting retroactive application of statutory amendment because it would "strip defendants of a [standing] defense which was still viable at the time that these [] violations occurred").

[5]    *See also Espinoza v. Bank of Am., N.A.*, 823 F. Supp. 2d 1053, 1058 (S.D. Cal. 2011) (refusing to interpret a statute to apply retroactively to eliminate contractual terms that lender and borrower agreed to before the statute was passed because it would "interfere[] with parties' antecedent rights").

*Renewal Party v. Commonwealth of Puerto Rico*, 115 D.P.R. 631, 642 (1984), 15 P.R. Offic.

Trans. 828, 840 (1984) ("[T]he Judicial Power—in deference to the Legislative Power—should

strive to attain congruent interpretations that are compatible with maintaining the

constitutionality of a statute."); *Teachers' Ass'n v. Dep't of Educ.*, 200 D.P.R. 974, 988 (2018),

__ P.R. Offic. Trans., __ (2018) (Rivera García, J., concurring) (noting "obligation to strive to

achieve an interpretation consistent with the upholding of the constitutionality of a statute").

Here, the ERS Beneficiaries' interpretation of Law No. 3 as creating retroactive individual

claims would violate multiple constitutional provisions.

### (a)   The ERS Beneficiaries' Interpretation Would Impair Contracts.

53.     If Law No. 3 created retroactive individual claims, then that law would illegally

impair UBS's contractual rights.  Under Puerto Rico's Constitution, "[n]o laws impairing the

obligation of contracts shall be enacted."  P.R. Const. art. II, § 7.  A similar prohibition exists

under the U.S. Constitution.  *See* U.S. Const. art. 1, § 10, cl. 1 ("No State shall … pass any …

Law impairing the Obligation of Contracts….").   As the Puerto Rico Supreme Court has

explained, the Legislative Assembly's exercise of its police power "is not boundless" and "can

never be arbitrary or unreasonable."  *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378

(1973), 1 P.R. Offic. Trans. 527, 550 (1973).  In particular, when it comes to contractual

agreements:

> the law should not modify th[e legal] consequences [of agreements] to the
> detriment of one of the contracting parties. The parties so trust. The stability of
> the contractual relationship is a social value which requires protection in the
> juridical order.

*Id.* at 550-51.  If a statute retroactively impacts contract rights, then it can be deemed

constitutional *only* if it is reasonable, which "is determined by taking into consideration

19

mainly the substantiality of the public interest promoted by the statute and the dimension

of the impairment caused by its retroactive application." *Id.* at 552.

54.     The Puerto Rico Supreme Court has applied these principles to overrule a statute

where the Legislative Assembly intended to retroactively modify contract rights. *See id.* at 540-

43.  That case involved a distribution contract that permitted either party to unilaterally terminate

the contract at any time.  After the contract was executed, the legislature passed a law imposing a

just cause requirement on terminations.  But the Supreme Court refused to apply the statute

retroactively.  According to the Court, the statute destroyed contractual rights to terminate

without just cause.  Even if the legislature had a "solid justification," the Court held that the

statute was "unreasonable, arbitrary, and oppressive." *Id.* at 558.

55.     The same would be true here.  Recognizing new individual claims five years after

the issuance of the bonds would mean granting thousands of beneficiaries their own individual

recoveries from UBS for breach of a contract that UBS entered into solely with the System.  That

would be particularly unfair because the legislature would be imposing obligations on UBS that

its contracts expressly disclaimed.  The purchase contracts between UBS and the ERS clearly

state that they were "made solely for the benefit of the System and the Underwriters (including

the successors or assigns of any Underwriter) and *no other person shall acquire or have any

right hereunder or by virtue hereof*." (*See* Exs. B-D ¶ 13 (emphasis added))  The legislature

would not only be rewriting the parties' agreement after the fact, but would be imposing

duplicative liability for the exact same harm.

56.     Moreover, unlike *Warner Lambert*, which involved contracts between private

parties, the contract here is with the government itself.  Courts apply strict scrutiny when the

government tries to unilaterally rewrite its own contracts through legislation. *See Teachers Ass'n*

20

*of P.R. v. P.R. Teachers Ret. Sys.*, 190 D.P.R. 854, 869 (2014), __ P.R. Offic. Trans. __ (2014)

("[W]hen a state obligation is modified, a stricter scrutiny must be applied because the State,

being a party to the contract, could act in its own benefit."); *AFT Mich. v. Mich. (On Remand)*,

893 N.W.2d 90, 97 (Mich. Ct. App. 2016) (applying heightened scrutiny to impairment of

contracts claim where governmental entity was party to contract), *aff'd in relevant part*, 904

N.W.2d 417 (Mich. 2017).

57.     Because the ERS Beneficiaries' interpretation of Law No. 3 would impair UBS's

contractual rights in violation of the U.S. and Puerto Rico Constitutions, the Court should reject

it.

### (b)     The ERS Beneficiaries Interpretation Violates Due Process.

58.     Interpreting Law No. 3 to have created individual claims would also violate

UBS's right to due process.  Under both the U.S. and Puerto Rico Constitutions, UBS has a right

not to be deprived of their property "without due process of law."  *See* U.S. Const. amend. V,

XIV; P.R. Const. art. II, § 7.  If the ERS Beneficiaries' view of Law No. 3 were adopted, then the

same unfairness that renders Law No. 3 invalid under the Contracts Clause would also violate

due process.  *See Warner Lambert*, 101 D.P.R. at 395, 1 P.R. Offic. Trans. at 551 (invalidating a

law under the Contracts Clause, and holding that "the same result would be reached by applying

the due process of law clause").

59.     Retroactive legislation that imposes disproportional liability on a party contrary to

that party's expectations at the time of the disputed conduct violates due process.  *See In re*

*Regina Metro. Co.*, 35 N.Y.3d 332, 367, 384 (2020) (declining to apply law lengthening statute

of limitations because, if applied retroactively, it would "punish owners more severely for past

conduct they cannot change").  As Justice Kennedy explained:

> If retroactive laws change the legal consequences of transactions long closed, the
> change can destroy the reasonable certainty and security which are the very
> objects of property ownership.

*E. Enters. v. Apfel*, 524 U.S. 498, 548 (1998) (Kennedy, J., concurring); *see also Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984) ("It does not follow … that what Congress can legislate prospectively it can legislate retrospectively.  The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.") (alternation in original) (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976)).

60.     That is exactly what would happen here.  The ERS Beneficiaries' reading of Law No. 3 creates a solution that is both disproportional and contrary to UBS's reasonable expectations when it provided services to the ERS.  It would single out UBS for direct liability to individual pensioners on top of the liability it already faces to the ERS based on the same purported contractual violations.  Further, as this litigation demonstrates, providing duplicative, retrospective rights to individual retirees would complicate the ability to restructure the ERS's obligations. Even if the Legislative Assembly had a rational basis to conclude that the bond issuances contributed to the ERS's financial crisis, there is no rational basis for making UBS pay twice for the same injury.  Creating a new, separate individual cause of action for each of the ERS's thousands of participants and retirees to pursue on their own would create potentially thousands of duplicative recoveries, something UBS could not have reasonably expected when it entered its contracts with the ERS.

61.     In short, were the Court to accept the ERS Beneficiaries' interpretation of Law No. 3, it would violate UBS's right to due process.

**(c)     The ERS Beneficiaries' Approach Is A Taking Of Property.**

22

62.     Recognizing new individual claims under Law No. 3 would also amount to an

unconstitutional taking.  Both the U.S. and Puerto Rico Constitutions prohibit the government

from impairing UBS's property rights without just compensation.  *See* U.S. Const. amend. V;

P.R. Const. art. II, § 7.  An unlawful taking can arise from economic legislation or regulations

that are applied retroactively.  *See E. Enters. v. Apfel*, 524 U.S. 498, 537 (1998); *U.S. Fid. &*

*Guar. Co. v. McKeithen*, 226 F.3d 412, 416 (5th Cir. 2000).  The factors to consider in

determining whether an unlawful taking has occurred include:  "'the economic impact of the

regulation, its interference with reasonable investment backed expectations, and the character of

the governmental action.'"  *E. Enters.*, 524 U.S. at 523-24 (quoting *Kaiser Aetna v. United*

*States*, 444 U.S. 164, 175 (1979)).  As a plurality of the U.S. Supreme Court explained, even

where a law is aimed at a serious concern and promotes an important public purpose, "the

Constitution does not permit a solution to the problem … that imposes [] a disproportionate and

severely retroactive burden."  *Id.* at 536.

63.     In *Eastern Enterprises*, the court struck down a law requiring a coal company to

fund medical benefits for retired coal workers.  Even though the law was designed to protect

miners who had "sacrificed their health on behalf of this country's industrial development," it

unfairly singled out employers who had long since left the coal industry and "attache[d] new

legal consequences to an employment relationship completed before its enactment."  *Id.* at 532,

536-37 (internal quotations omitted).

64.     The circumstances here would be even harsher.  Allowing individuals to bring

direct claims independent of the ERS's rights would put UBS at risk of having to pay twice for

the exact same purported harm.  There is no reason that UBS would have expected to face

duplicative liability when it entered its contracts with the ERS.  *See U.S. Fid. & Guar.*, 226 F.3d

at 416-17 (workers' compensation regulation constituted unlawful taking because, among other reasons, the financial burden it imposed was disproportionate to party's expectations).

45.     Because the ERS Beneficiaries' interpretation of Law No. 3 "implicates fundamental principles of fairness underlying the Takings Clause," it should be rejected.  *E. Enters.*, 524 U.S. at 537; *see also id.* at 522 ("The aim of the [Takings] Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'") (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

## III.     THE BALANCE OF THE EQUITIES SUPPORTS ENJOINING FURTHER PROSECUTION OF THE COMMONWEALTH ACTION.

46.     As discussed above, allowing the ERS and seven of its beneficiaries to continue to pursue the Commonwealth Action would violate the carefully negotiated Plan and thereby harm the interests of other creditors and the general public.  Absent an injunction, UBS would also be subject to a potential double recovery and would be effectively unable to settle the claims transferred to the Avoidance Adversary Trustee.   On the other hand, the ERS and the ERS Beneficiaries have no legitimate competing interests.  The ERS has been, or soon will be, dissolved.  In addition, the Plan provides substantial benefits to the retirees.  Allowing seven retirees to get even more, at the expense of other creditors, would be grossly unfair.

47.     For all of these reasons, the Court should enjoin the ERS and the seven ERS Beneficiaries from continuing to litigate the Commonwealth Action on the grounds that their pursuit of those claims violates the express terms of the Plan.  No further violations of the Plan by the ERS and the ERS Beneficiaries should be permitted.

## NOTICE

48.     Notice of this Motion has been provided to (a) Plaintiffs in the Commonwealth Action, and (b) all other persons receiving notice via the Court's ECF filing system.  UBS respectfully submits that further notice of this Motion is neither required nor necessary.

WHEREFORE, UBS respectfully requests that the Honorable Court enter an order enforcing the Plan and enjoining the ERS and its former beneficiaries from continuing to litigate the Commonwealth Action.

Respectfully Submitted:

In San Juan, Puerto Rico, this 28th day of July, 2022.

OF COUNSEL:

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Paul J. Lockwood (*admitted pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

McCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.:  (787) 250-2631
Fax:  (787) 759-9225

By:  */s/ Roberto C. Quiñones-Rivera*
        Roberto C. Quiñones-Rivera, Esq.
        USDC-PR Bar No. 211512
        rcq@mcvpr.com

*Counsel for UBS Financial Services
Incorporated of Puerto Rico*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR<br>PUERTO RICO, | No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| as representative of | |
| THE COMMONWEALTH OF PUERTO<br>RICO, *et al.*, | |
| Debtors.[6] | |
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR<br>PUERTO RICO, | No. 17 BK 03566-LTS |
| as representative of | |
| THE EMPLOYEES RETIREMENT<br>SYSTEM OF THE COMMONWEALTH OF<br>PUERTO RICO (the "ERS"), | |
| Debtor. | |

**[PROPOSED] ORDER ENFORCING THE PLAN OF
ADJUSTMENT AND GRANTING INJUNCTIVE RELIEF**

---

[6]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico
Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last
Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:
9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of
Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-
LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers
due to software limitations).

Upon consideration of the *UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief* (Dkt. No. _____) (the "Motion") and all related filings; adequate notice having been given to all relevant parties; objections to the requested relief having been withdrawn or overruled on the merits; for good cause shown, it is hereby **ORDERED** that:

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to Section 91.1 of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al., approved by the Court on January 18, 2022 (Dkt. 19813-1) and Bankruptcy Code section 105(a), made applicable by PROMESA section 301(a), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS"), Pedro José Nazario Serrano, Juanita Sosa Pérez, Joel Rivera Morales, María De Lourdes Gómez Pérez, Héctor Cruz Villanueva, Lourdes Rodríguez, and Luis M. Jordán Rivera are enjoined from litigating the claims asserted in *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Fin. Servs. Inc. of Puerto Rico*, Civ. No. KAC-2011-1067 (803) (the "Commonwealth Action").

3.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4.      A copy of this Order shall be entered on the docket in the Commonwealth Action by UBS Financial Services Incorporated of Puerto Rico and served on all appropriate parties to the Commonwealth Action.

5.      The parties reserve all rights and defenses.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2022        _____

Honorable Laura Taylor Swain
United States District Judge