**Objection Deadline: September 6, 2022 at 4:00 p.m. (AST)**
**Hearing Date: September 21, 2022 at 9:30 a.m. (AST)**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et. al.*,<br><br>Debtor | PROMESA<br>Title III<br><br><br>No. 17-03283 -LTS<br><br>(Jointly Administered) |
| LUIS A. RIVERA SIACA<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et. al.*,<br><br>Debtors | Re: ECF No. 21408<br><br><br>Department of Education of the Commonwealth of Puerto Rico |

## RESPONSE TO DEBTOR'S OBJECTION TO MOTION TO COMPLY WITH PAYMENT OF ADMINISTRATIVE RENT

**TO THE HONORABLE COURT:**

COMES NOW, Luis A. Rivera Siaca ("Movant"), through his undersigned counsel, and respectfully states and requests:

## I. INTRODUCTION

1. On July 1, 2022, Movant filed a motion (the "Motion") for an order directing the Commonwealth of Puerto Rico ("Debtor") to comply with the payment of the post-petition rent due Movant under non-residential unexpired lease contract number 081-2021-0148, by and between Movant, as lessor, and the Department of Education of the Commonwealth of Puerto Rico (the "DE"), as lessee, (the "Contract"), regarding 123,106.55 square feet, including floors 1-5 and 150 parking spaces, where the offices of the DE are located at Calle Calaf Number 34, San Juan, Puerto Rico (the "Leased Premises").

2. The Contract was entered into in writing on January 15, 2021, thus after the filing by the Financial Oversight and Management Board for Puerto Rico (the "Board"), on May 3, 2017, of the Title III petition under the Puerto Rico Oversight Management and Economic Stability Act ("PROMESA") on behalf of Debtor. The Contract expires on December 31, 2025, was recorded with the Office of the Comptroller of Puerto Rico on January 22, 2021, at 3:46 a.m., and is in full force and effect.

3. While in full use and occupancy of the Leased Premises, the Commonwealth has failed to comply with its obligations under the Contract by not paying the rent due thereunder, owing Movant $2,259,399.71 for rent as of June 6, 2022, plus the rent accruing thereafter.

4. On January 15, 2021, the Board, on behalf of the Commonwealth, filed an objection to the Motion, recognizing the existence of the Contract, not contesting the amount claimed by Movant, but averring that the Contract was executed without its prior approval in violation of its contract review policy established pursuant to Section 204(b)(2) of PROMESA (the "Policy")[1].

---

[1] Section 204(b)(2) of PROMESA states:

2

5. The Board further avers that the Contract was not submitted thereto until February 24, 2022, more than a year after its execution; that since March 1, 2022, it has been evaluating the same, detecting irregularities in the DE's procurement process involving the Contract, submitting that the "costs" claimed by Movant "are for a period that is not covered by proper regulations and certifications and that the DE has acknowledged that it should not have executed the Contract without the approval of certain entities"; and that there was an inaccurate recording of the Contract with the Office of the Comptroller of the Commonwealth (the "Comptroller"), all of which are directed to the DE not to Movant.

6. The Board states that, notwithstanding the Contact having been before its consideration for over 5 months, it still has been unable to conclude if it complies with Puerto Rico's laws of contracts, while not disputing that the DE is in the possession and enjoyment of the Leased Premises, with no payment to Movant, tantamount to a post Title III petition taking without paying Movant just compensation in violation of the Fifth Amendment to the Constitution of the United States of America, the resulting claim not being dischargeable in the Commonwealth's bankruptcy proceedings and to be paid in full under the Commonwealth's Plan of Adjustment, as held by this Court and affirmed by the United States Court of Appeals for the First Circuit on July 18, 2022, in the case of *In re Fin. Oversight and Mgt. Bd. P.R.*, Case No. 22-1119.

7. The Board concludes that "the alleged services provided pursuant to the Contract do not constitute actual necessary costs and expenses of preserving the estate and should not be allowed administrative expense priority under 11 U.S.C. § 5503(b)(1)(A)[2], while at no time

---

AUTHORITY TO REVIEW CERTAIN CONTRACTS. —The Oversight Board may establish policies to require prior Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government, to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan.

[2] 11 U.S.C. § 503(b)(1) states:

3

contesting that the Contract was in fact executed by the DE and that the DE is using the Leased Premises as its offices, without any compensation to Movant, since the execution of the Contract.

## II. FACTS

8. As evidenced by non-residential lease contract number 2015-000130 (the "Previous Contract"), Movant has been leasing the Leased Premises to the DE since December 1, 2014.

9. The Previous Contract was executed on November 21, 2014, for a term of 4 ½ years with an expiration date of May 30, 2019.

10. After May 30, 2019, util January 15, 2021, the DE continued in possession of the Leased Premises. During the interim period between the expiration of the Previous Contract and the execution of the Contract the DE paid Movant $219,129.66 per month, totaling $4,163,463.54, providing Movant just compensation for the occupancy of the Leased Premises.

11. The Contract executed on January 15, 2021, is in fact a renewal of the Previous Contract for a term of 4 years 11 months and 15 days, was submitted to the Office of the Comptroller of Puerto Rico on January 22, 2021, at 3:46 a.m. for its full term (**Exhibit A** and **B**).

12. It was the DE's decision to renew its contractual relationship with Movant by executing the Contract, otherwise it would have had to surrender the Leased Premises where it has its offices.

13. Both the Commonwealth, as well as its representative, the Board, are now estopped from questioning the Contract and causing the DE not to comply with its payment obligations

---

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)
(A) the actual, necessary costs and expenses of preserving the estate including—
(i) wages, salaries, and commissions for services rendered after the commencement of the case; and

Made applicable to this case by Section 301 of PROMESA, 48 U.S.C. § 2161(a).

thereunder, as the DE is contractually bound to do, premised on internal non-public requirements imposed on the DE, particularly when, as admitted at paragraph 4 of the Board's objection, the DE has submitted to the Board copies of the approvals of the Contract from the Office of Management and Budget ("OMB") and the Real Estate Review Board ("RERB"), albeit for one year, resulting from the DE's submission of the approvals for that term, also a factor not under Movant's control or responsibility.

14. That the Board has requested that the DE submits revised certifications and seek approval for the Contract's full term, which may be pending, doesn't and can't justify the taking of Movant's property without just compensation.

15. Nor can the circular submission that the DE, in response to the Board's request for confirmation of OMB's approval of funds, stated that it did not have the required OMB/ RERB approvals since OMB requires for the Board to approve the Contract first. (See Objection ¶ 5).

16. The Board at paragraphs 6-11 of its objection refers to "abnormalities" regarding the DE's alleged failures, not Movant's, regarding another lease contract between the DE and Movant, number 2021-000180, not the one object of the Motion and thus irrelevant to the matter at bench.

17. In the meantime, the Contract remains under the Board's review, while the DE continues with the use and occupancy of the Leased Premises, subject to demands of the Board to meet additional requirements, without paying Movant for their use and occupancy. (See Objection ¶ 12)

### III. ARGUMENT

18. The Board submits that Section 204(b)(2) of PROMESA provides it with authority to establish policies requiring the Board's prior approval of "certain contracts" including leases to a governmental entity proposed to be executed by the Commonwealth, which can't be made

5

applicable to the specific factual scenario of this case, particularly since those "policies" are not public, unbeknown to Movant.

19. Moreover, while Section 204(b)(2) doesn't specify which are those "certain contracts", the Board has established the Policy of requiring its prior approval of contracts or services of related contracts with an aggregate value of $10 million or more, to be entered into by the Commonwealth or any covered instrumentality, in accordance to the Board for the purpose of promoting the benefits indicated in paragraph 14 of the Objection.

20. The Board sustains that those goals have been trumped in this case because it was not able to review the Contract for compliance with the Fiscal Plan or market competitive, prior to execution and payment, disregarding the specific facts of this case, where the DE has been in possession and use of the Leased Premises, where it has its offices since December 1, 2014, and without paying rent since June, 2021, not a situation in which there is a proposed contract in process, without an occupancy of private property by a governmental entity, now for more than 13 months, pretentiously without any remedy other than to evict the DE and claim either the contractual rent, or use or occupancy under 11 U.S.C. § 503(b)(1)(A), since it can't be questioned that the occupancy of the Leased Premises by the DE, refers to a right to payment which arose from a post-petition transaction for the use of DE's offices in the regular course of DE's business activities, providing Movant with an administrative claim for "actual" and "necessary" costs and expenses for "preserving" the Commonwealth's estate, which can't be eclipsed by theoretical contentions as those proposed in paragraph 15 of the objection, a yet to be concluded speculative process to review if the Contract complies with Puerto Rico Law, when we are before a factual scenario where the Commonwealth has ripped the benefits of the Contract and is thus estopped from avoiding the contractually agreed to payment of rent to Movant. See *In re Hemingway*

6

*Transp.*, 954 F.2d 1, 5 (1st Cir. 1992). The Board's posture undermines the legislative intent in creating Section 503(b)(1)(A).

21. As held in *In re Hopkinton Indep. Sch., Inc.*, 499 B.R. 158, 164 (Bankr. N.H. 2013), the purpose of 11 U.S.C. §503(b) is to incentivize businesses to provide services to a debtor's bankruptcy estate, services that make it possible for debtors in possession to operate. The test is applied to determine whether an expense ought to merit an administrative priority, whether the transaction was a post-petition transaction with the estate and whether the transaction actually benefited the estate, is essentially an effort to determine whether the underlying statutory purpose, as here, will be furthered by granting priority to the claim in question.

22. The aforesaid is premised on the principle stated in *In re Boston Reg'l Med. Ctr.*, 291 F.3d 111, 124 (1st Cir. 1982), as follows: "[t]he justification for this rule is that the administrative priority is necessary to induce potential contractors to do business with the debtor-in-possession, which in turn is necessary to prevent the business from collapsing entirely with the filing".

23. Despite the policy of strict application of the administrative expense priority, applicable to the facts of this case, courts have been willing to recognize certain special categories of expenses which are entitled to administrative priority status based on considerations of fundamental fairness. See *Reading Co. v. Brown,* 391 U.S. 471 (1968); *In re Hemingway Transp.*, supra; *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 2003 (1st Cir. 1985). affd. 310 F. 3d 9 (1st Cir. 2002); *In re Mammoth Mart*, 536 F. 2d. 950 (1st Cir. 1976).

24. Otherwise, Movant alternatively would be entitled to the claimed rent as an administrative priority based on the fundamental "fairness" decision of *Reading Co. v. Brown*, supra, due to the Commonwealth's violation of Puerto Rico's law of contracts, even in its most

restrictive form, damaging Movant's economic well-being. *In re Healthco Int'l, Inc.*, 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002); *In re Charlesbank Laundry,* supra.

25. The Board's "Ongoing Review Permit of the Contract Review Policy", still in process, cannot be an excuse for the taking of Movant's property without justly compensating him in violation of the Fifth Amendment of the Constitution of the United States, which overrides any policies or provisions under PROMESA, or the laws of Puerto Rico in contravention thereof.

26. It must be underscored, that as admitted by the Board, Regulation 7040 "expressly exempts from its requirements PRDE's real estate lease agreements that have a term of less than five years", including "competitive procurement processes". Therefore, the Contract being for less than 5 years is exempted from the requirements advocated by the Board as a basis for its review thereof. The presumption of validity of the contract can't be challenged by mere theoretical speculations, which don't contradict that the Contract is for less than 5 years. Even if it were for more, which it is not, Movant has a valid contract under the Civil Code of Puerto Rico, which is binding on the Commonwealth, who must comply with its obligations thereunder.

27. Article 1230 of the Civil Code of Puerto Rico of 2020[3], 31 L.P.R.A. § 9751, provides that the contract is a judicial bilateral business by which two or more parties express their consent in the form provided by law to create, regulate, modify or extinguish obligations.

28. To this effect, Article 1237 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9771, states that a contract is perfected from the time the parties manifest their consent as to its object and cause, except in the cases in which compliance with a solemn formality is required or when a suspensive condition is required.

29. In turn Article 1232 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9753, provides that it is optional to contract or not and to do so or not with a determined person, which

---

[3] Effective on November 28, 2020, and thus applicable to the Contract.

8

rights can't be exercised abusively nor against a provision of law, but the parties can agree to any clause that is not contrary to the law, morals or public order.

30. In Puerto Rico, that what is agreed to in the contracts has the force of law among the parties, before their successors and third parties in the manner provided by law. Article 1232 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 9754.

31. As set forth in Article 1331 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 10101, by the lease contract, the lessor obligates itself to temporarily assign to the lessee the use and enjoyment of a property in exchange of a price certain.

32. As to the obligations of the Commonwealth as a lessee in this case, Article 1346 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 10162, inter alia provides:

> The lessee is obliged:
> (1) To receive and use the property leased
> (2) To punctually pay the rent in the manner agreed upon.
> (3) To conserve and give maintenance to the property.

33. The Contract fully complies with the provisions of the Civil Code of Puerto Rico as to its validity, its effect on the parties and requires the Commonwealth to pay the agreed to rent.

34. Furthermore, the Contract complies with the formal requirements that must be observed when contracting with a governmental entity: 1) the Contract is in writing; 2) a registry thereof is maintained to establish its existence; 3) copy of the Contract was forwarded to the Office of the Comptroller; and 4) its certainty of time that it was realized and executed 15 days before is established. *Vicar Builders Development, Inc v. ELA, et al.*, 2015 PR Sup. LEXIS 13; *Rodriguez Ramos et al. v ELA et al.*, 2014 TSPR 32.

35. We can't ignore that, throughout the objection, the Board fails to offer any facts showing improper conduct on the part of Movant, limiting its qualms to the DE, for allegedly not following the inapplicable Policy to the less than 5 years Contract and other requirements directed thereto, not to Movant.

9

36. The Board also submits that the Contract "Fails to Comply with Puerto Rico Certification and Registration Requirements", to the effect that the law requires contracts to be registered with the Office of the Comptroller (the "OCPR") and its submission and certification from OMB and REPRB prior to its execution.

37. As to the first requirement, the objection at paragraph 20 states that in accordance to Act No. 18 of October 30, 1975 ("Act 18"), it is for the DE to send a copy of the Contract within 15 days following its execution to the OCPR pursuant to 2 L.P.R.A § 97(a), recognizing that "not registering contracts is not in itself cause to declare a valid contract null", merely precluding a party from demanding any provision or consideration of services that are object of the contract, until the electronic registration of the contract with the OCPR is accomplished, 2 L.P.R.A. § 98. Here, contrary to the Board's representation, the Contract was executed on January 15, 2021, and registered with the OCPR on January 22, 2021. (**Exhibits A** and **B**).

38. As to lease agreements, the Board refers to Section 22 of Act 66-2014, 3 L.P.R.A. § 9128 and Act 235-2014, as amended, which created the REPRB, 3 L.P.R.A. § § 9161 et. seq., as prohibiting government entities of the Executive Branch from seeking or executing new agreements without OMB's prior approval, which if not obtained renders the contract null. The Board also submits that in accordance with Article 6 of Act 235-2014, 3 L.P.R.A. § 9166 "no government entity may lease private real property if its is not duly authorized by the REPRB, to whom they must demonstrate that there are no public buildings available".

39. Amazingly, the Board then states at paragraph 22 of the objection, without submitting evidence thereof, that here, while both Movant's lease agreements "appear" to have been submitted and registered with OCPR, the contract value "is inaccurate because it inly reflects each contract's annual rent payments for the first year of each of the lease agreements and not their total amounts", apparently seeking to tax that so called inaccuracy on Movant, when the

10

requirement of Article 8(f) of Regulation 33 imposes the registration requirement on the DE. Moreover, assuming, in arguendo, the accuracy of the Commonwealth's contention, a simple mathematical multiplication of the contract yearly rent by the number of years of each contract would result in their total amount, particularly since as **Exhibits A** and **B** hereto reveal on their face the recording with the OCPR indicates the full term of the Contract, providing public notice thereof. Whatever mistakes were done by the DE in the registration process of the Contract can't be taxed on Movant and are for the DE to correct. The fact remains that the Contract was recorded with the OCPR within the time provided by law, which is what the law requires.

40. At paragraph 23 and 24 of the objection, the Board continues to attempt to lodge on Movant omissions by the DE in the registration process of the Contact, while admitting its submission to OMB and REPRB, of the DE's responsibility and not Movant's, such as that the certifications were until June 2021 and that in this case, the Contract expires on June 30, 2025, actually December 31, 2025, and that therefore it was not duly authorized by REPRB, not complying with Act 235-2014.

41. While previously admitting that the Contract was executed on January 15, 2021 and stating that it expires on June 30, 2026, when the Contract expiration date is December 31, 2025, unbelievably the Board sustains that the rental charges in support of Movant's monetary demand do not fall within the scope of REPRB and OMB's certifications, which omission, even if true, can't be imposed on Movant, particularly when the Board recognizes at paragraph 2 of the objection that "PRDE informed the Oversight Board that it had inadvertently sent the REPRB and OMB a request for a lease agreement lasting a single year" using that as an excuse to conclude that as a result of this inadvertency Movant's monetary request is not entitled to administrative expense priority, in contradiction of the foundation of 11 U.S.C. § 503(b)(1)(A), while pretending for the DE to continue to use Movant's property without compensation.

11

42. Even under the most elementary principles of estoppel, the Commonwealth is impeded from having benefitted from the use and enjoyment of the Leased Premises and then claiming that it should be for free. The Commonwealth is impeded by its own acts from doing so. *CMI Hospital Equipment Corp. vs. Departamento de Salud*, 171 D.P.R. 313 (2007); *Colón v. Secretary of the Treasury*, 99 D.P.R. 779 (1971); *Aldarondo v. P.R. Gov't Emples. Ass'n*, 94 D.P.R. 564 (1967). As set forth in Article 6 of the Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 5316, courts have an inexcusable duty to diligently resolve matters before their consideration, attending to the system of sources of the established legal system. The court that refuses to rule under the pretext of silence, obscurity or insufficiency of the law or any other motive will incur in responsibility.

43. The Civil Code of Puerto Rico of 2020 has codified the doctrine of unjust enrichment in its Articles 1526 and 1527, 31 L.P.R.A. § 10771 and 10772, which at the very least would be applicable to the Board's pretension. Article 1526 states that a person, who without just cause, enriches itself at the expense of another, is obliged to indemnify that other person as to the correlative patrimonial diminution up to its own enrichment, whether it arises from the obtention of an advantage or to avoid a harm.

44. The doctrine of unjust enrichment consists of a general principle of law based on equity. *Ortiz Andújar v. Commonwealth*, 122 D.P.R. 817, 822 (1988), citing J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch (1983), T. II Vol. 3 p.p. 43-74; Hernández Gil, Derecho de Obliaaciones, Madrid, Libreria Bosch (1960), T. I. p. 262 et. seq.; L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Tecnos (1972), p.p. 73-81; A. de Rovira Mola, Enriaue-cimiento Iniusto, VIII Nueva Enciclopedia Jurídica 570 (1956); M. Albaladejo, Comentarios al Código Civil v compilaciones forales, Madrid, Ed. Rev. Der. Privado (1984), T. XXIV, p.p. 10-43.

45. The unjust enrichment is a doctrine or general principle of law that can be applied to different situations, provided that they have in common an element, which if not applied would perpetrate the inequity that someone would unjustly enrich himself to the prejudice of another. *Silva v. Indus. Comm'n of P.R.*, 91 D.P.R. 891, 897-98 (1965). It constitutes a norm rooted in equity principles, that is, justice that permeates all of our legal system. *Municipio de Quebradillas v. Corporación de Salud de Lares*, 180 D.P.R. 1003 (2011).

46. As indicated in Article 1527 Civil Code of Puerto Rico of 2020, 31 L.P.R.A. § 10772, the action for restitution is not applicable: (1) if the law denies the action; (2) if the law attributes other effects to the enrichment; (3) if the law allows the impoverished to exercise other action; or (4) if among the parties exists a contractual relationship. While not applicable here due to the contractual relationship between Movant and the DE, it would under the applicability of the assumption that the Contract is null and void, which is denied.

47. We turn to this principle when the law has not foreseen a situation which produces a patrimonial displacement for which there is no reasonable explanation in the applicable system of law. *Municipio de Quebradillas v. Corporación de Salud de Lares*, *supra*, p. 1019; *Ortiz Andújar v. Commonwealth*, *supra*, p. 823; *Sánchez Torres v. Pila Iglesias*, 186 D.P.R. 503, 515-16 (2012).

48. Consequently, assuming in arguendo, that the Commonwealth would not be contractually bound to pay Movant the rent due under the Contract, which is denied, under the codified doctrine of unjust enrichment it would be obligated to do so for the use and occupancy of the Leased Premises.

**WHEREFORE**, it is respectfully requested that Movant's motion be granted, and the Board's opposition denied.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all ECF participants.

San Juan, Puerto Rico this 2nd day of August 2022

*s*/**Charles A. Cuprill-Hernandez**
USDC-PR 114312
Charles A. Cuprill, P.S.C., Law Offices
356 Fortaleza Street - Second Floor
San Juan, PR  00901
Tel.: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com

14