Hearing Date: September 21, 2022, at 9:30 AM (Atlantic Standard Time)
Response Deadline: September 5, 2022, at 4:00 PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

                Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**This filing relates to the Commonwealth.**

## FOUR HUNDRED NINETY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO MISCLASSIFIED AND OVERSTATED CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight,*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Management, and Economic Stability Act* ("PROMESA"),[2] files this Four Hundred Ninety-Fifth

omnibus objection (the "Four Hundred Ninety-Fifth Omnibus Objection") to the misclassified and

overstated proofs of claim listed on **Exhibit A** hereto, and in support of the Four Hundred Ninety-

Fifth Omnibus Objection, respectfully represents as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section

306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A.     The Bar Date Orders

3.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.     On January 16, 2018, the Debtor filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines*

*and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice*

*Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in

the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the

Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors,

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.     Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment and the PRIFA and CCDA Qualifying Modifications**

5.     On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (the "Eighth Amended Plan," as subsequently amended and modified, the "Plan") [ECF No. 19053].   The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.     Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.   *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No. 19784].

7.     On January 18, 2022, the Court confirmed the Plan.   *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth*

of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority [ECF No. 19813].

8.       On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.       The Plan became effective on March 15, 2022 (the "Commonwealth Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.      The CCDA QM and PRIFA QM also became effective on March 15, 2022. *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**C.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

11.      To date, approximately 178,975 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration, LLC ("Kroll"). Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.      Of the proofs of claim filed, approximately 118,198 have been filed in relation to, or reclassified to be asserted against, the Commonwealth. In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable,

being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid, or asserting an incorrect or improper priority or classification.

13.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection Procedures</u>").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 26 hearings and entered orders on over 315 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>"), the Puerto Rico Electric Power Authority ("<u>PREPA</u>"), the Puerto Rico Public Buildings Authority ("<u>PBA</u>"), and/or ERS.  Based upon rulings and orders of the Court to date, approximately 102,536 claims asserting \$43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, PBA, and ERS have been disallowed and expunged from the claims registry in the Title III proceedings.

16.     This Four Hundred Ninety-Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## <u>OBJECTIONS TO PROOFS OF CLAIM</u>

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Four Hundred Ninety-Fifth Omnibus Objection seeks to reclassify, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(8) and the Amended Omnibus Objection Procedures, claims that assert an incorrect or improper classification and that are overstated on the claims registry in the Title III Cases.

19.     As set forth in **<u>Exhibit A</u>** hereto, the claims identified in the column titled "Asserted" (each a "<u>Claim to Be Reclassified and Reduced</u>," and collectively, the "<u>Claims to Be</u>

6

Reclassified and Reduced") incorrectly or improperly assert that they are secured or entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9) or 11 U.S.C. § 507(a)(4).  Upon a reasonable review of the Commonwealth's books and records, the Commonwealth has concluded that the Claims to Be Reclassified and Reduced are not entitled to priority status and should appropriately be classified as general unsecured claims.

20.     Certain of the Claims to Be Reclassified and Reduced assert entitlement to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9) (the "Incorrect 503(b)(9) Administrative Expense Claims"), but the proof of claim and supporting documentation do not demonstrate claimant's entitlement to such priority.  Only creditors who sold goods to the Debtor within twenty days of the commencement of the Debtor's Title III Case are entitled to administrative expense priority pursuant to 11 U.S.C. § 503(b)(9).   Based on the supporting documentation submitted with the proofs of claim, however, none of the Incorrect 503(b)(9) Administrative Expense Claims were filed by creditors who sold goods within the required statutory time frame of twenty days prior to commencement of the Debtor's Title III Case.  For example, one of the Incorrect Administrative Expense Claims was filed by a provider of goods to the Puerto Rico Department of Housing, but the goods identified in the supporting documentation were received earlier than the statutorily prescribed 20-day period, or were received post-petition.

21.     Other of the Claims to Be Reclassified and Reduced assert entitlement to administrative expense priority pursuant to 11 U.S.C. § 507(a)(4) (the "Incorrect 507(a)(4) Administrative Expense Claims"), but the proof of claim and supporting documentation do not demonstrate claimant's entitlement to such priority.  Section 507(a)(4) grants priority to "unsecured claims . . . earned within 180 days before the date of the filing of the petition . . . for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an

individual." 11 U.S.C. § 507(a)(4).  Only creditors whose claims arose against the Debtors within

180 days of the commencement of the Debtor's Title III Cases are entitled to administrative

expense priority pursuant to 11 U.S.C. § 507(a)(4).   Based on the supporting documentation

submitted with the proofs of claim, however, none of the Incorrect 507(a)(4) Administrative

Expense Claims were filed by creditors whose claims arose within the required statutory time

frame of 180 days prior to commencement of the Debtor's Title III Cases.

22.     Certain other Claims to Be Reclassified and Reduced assert secured status (the

"Incorrect Secured Status Claim"), but the proof of claim and supporting documentation provide

no basis for the claimant's assertion that their claim is secured.  Specifically, the Incorrect Secured

Status Claim asserts liabilities arising from claimant's provision of transportation services to the

Puerto Rico Department of Education, but provides no basis for the assertion such liabilities are

entitled to secured status.

23.     In addition, certain of the Claims to Be Reclassified and Reduced assert liabilities

purportedly associated with the Commonwealth; however, claimant failed to provide sufficient

documentation to substantiate a claim against the Commonwealth.  As such, the Commonwealth

is not able to determine whether claimant has valid liabilities against the Commonwealth or any

of the other Title III Debtors.  Certain other of the Claims to Be Reclassified and Reduced assert

liabilities against the Commonwealth for invoices for which the Commonwealth's books and

records reflect that those amounts have been paid by the Commonwealth and are satisfied.  As a

result, any failure to reduce the amounts asserted in the Claims to Be Reclassified and Reduced to

the extent they have been paid or satisfied will result in the applicable claimants potentially

receiving an unwarranted excess recovery against the Commonwealth, to the detriment of other

stakeholders in the Title III Case.

24.     Other of the Claims to Be Reclassified and Reduced assert amounts that are duplicative of amounts already asserted within the claim.  Due to the manner in which Kroll records and logs proofs of claim, certain of the Claims to Be Reclassified and Reduced is overstated on the claims registry. Box 8 of the proof of claim form requests claimants provide the total amount of the claim. Other portions of the claim form allow claimants to indicate whether they believe all or a portion of their claims are entitled to secured status or priority. For example, Box 7 of the proof of claim form allows claimants to indicate whether they supply goods and/or services to the government, and if so, whether any amounts were due to claimant for the period between the Debtor's petition date and June 30, 2017; Box 10 allows claimants to indicate whether they believe all or a part of their claim is secured, and if so, the amount of the claim that is secured and the amount that is unsecured; and Box 13 allows claimants to indicate whether all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9), and if so, the amount of the claim entitled to administrative priority treatment.  For certain of the Claims to Be Reclassified and Reduced, the claimant entered the total amount they believe is owed in Box 8, but also entered the total amount owed in Boxes 7, 10, and/or 13. When Kroll logged the Claims to Be Reclassified and Reduced on the Title III claims registry, it interpreted each amount entered in Boxes 7, 8, 10, and/or 13 as a separate assertion of liability. As a result, the claims registry reflects that each of the Claims to Be Reclassified and Reduced assert an amount that is double or triple the actual liabilities asserted in the proof of claim, as demonstrated by the total amount identified by the applicable claimant in Box 8. Accordingly, the Debtor requests the Court reduce the Claims to Be Reclassified and Reduced such that they assert only the total liabilities identified by the applicable claimant, as set forth in Exhibit A hereto.

25.     Failure to reduce the Claims to Be Reclassified and Reduced will prejudice other claimants in these Title III Case, as holders of the Claims to Be Reclassified and Reduced may receive an unwarranted excess recovery above the liabilities actually asserted.  Further, holders of the Claims to Be Reclassified and Reduced will not be prejudiced by the requested relief, because they will retain a claim against the Debtor in the total amount indicated by claimants on their proofs of claim.

26.     Accordingly, because the Claims to Be Reclassified and Reduced do not provide a basis for secured status, the claims should be reclassified as general unsecured claims, each as set forth in **Exhibit A** hereto.  Reclassification of the Claims to Be Reclassified and Reduced is necessary to avoid prejudicing other holders of general unsecured claims.  The holders of the Claims to Be Reclassified and Reduced will retain a modified claim against the Commonwealth, as set forth in the column entitled "Modified" on **Exhibit A** hereto.  Because this Four Hundred Ninety-Fifth Omnibus Objection to the Claims to Be Reclassified and Reduced does not constitute an objection to the validity or amount of the Claims to Be Reclassified and Reduced, the Commonwealth reserves its right to object to the Claims to Be Reclassified and Reduced on any other grounds whatsoever.

27.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Four Hundred Ninety-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Misclassified and Overstated Claims*, dated August 5, 2022, attached hereto as **Exhibit B**.

## NOTICE

28.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth has provided notice of this Four Hundred Ninety-Fifth Omnibus Objection to (a) the individual creditors subject to this Four Hundred Ninety-Fifth Omnibus

Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtor's case website at https://cases.ra.kroll.com/puertorico.  A copy of the notice for this Four Hundred Ninety-Fifth Omnibus Objection is attached hereto as Exhibit C.  Spanish translations of the Four Hundred Ninety-Fifth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

29.     No prior request for the relief sought in this Four Hundred Ninety-Fifth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: August 5, 2022                                    Respectfully submitted,
San Juan, Puerto Rico

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico*

**Fecha de la vista: 21 de septiembre de 2022 a las 9:30 a.m. (AST)**
**Fecha límite para responder: 5 de septiembre de 2022 a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>   como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>                              Deudores.[1] | PROMESA<br>Título III<br><br>Número 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

**CUADRINGENTÉSIMA NONAGÉSIMA QUINTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES ERRÓNEAMENTE CLASIFICADAS Y SOBREESTIMADAS**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Número 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente Cuadringentésima nonagésima quinta objeción global (la "Cuadringentésima nonagésima quinta objeción global") a las evidencias de reclamaciones erróneamente clasificadas y sobreestimadas que figuran en el **Anexo A** del presente documento, y en apoyo de la Cuadringentésima nonagésima quinta objeción global manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "<u>Caso de Título III del ELA</u>").

4.     El 16 de enero de 2018, el Deudor radicó su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF número 2255] (la "<u>Moción de Fecha Límite</u>"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF número 2521] (la "<u>Orden Inicial de Fecha Límite</u>"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF número 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "<u>Órdenes de Fecha Límite</u>"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III y de las Modificaciones Calificadas de la AFI y de la ADCC**

5.     El 3 de noviembre de 2021, la Junta de Supervisión radicó (en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "<u>AEP</u>")), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (el "<u>Octavo Plan de Ajuste</u>"), y en su versión enmendada y modificada posteriormente denominado, el "<u>Plan</u>") [ECF número 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

6.        Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF número 19784].

7.        El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF número 19813].

8.        El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso número 21-01493, ECF número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso número 21-01492, ECF número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.        El Plan entró en vigor el 15 de marzo de 2022 (la "Fecha de entrada en vigor del ELA"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A)*

4

*emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del*

*Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III*

*de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF número 20349].

10.    Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de

marzo de 2022. *Véase* Caso número 21-01493, ECF número 74; Caso número 21-01492, ECF

número 84.

**C.    Evidencias de reclamaciones, procedimientos relativos a objeciones globales y
objeciones a reclamaciones**

11.    Hasta la fecha, se han radicado aproximadamente 178,975 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring

Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total

aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los

montos no liquidados reclamados.

12.    De las evidencias de reclamaciones radicadas, aproximadamente 118,198 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información

necesaria para que los Deudores determinen si la reclamación es válida, o hacer valer una prioridad

o clasificación incorrecta o indebida.

13.    Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF número 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF número 4230]; *Procedimientos relativos a Objeciones Globales* [ECF número 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF número 4381] (la "<u>Orden de Notificación</u>").

14.     En aras del interés constante por resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio

de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)*
*exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*
*de notificación adicionales y D) concede el remedio relacionado* [ECF número 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

15.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha más de 26 vistas y ha dictado órdenes sobre más de 315 objeciones globales radicadas por
el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la
Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad de Energía
Eléctrica de Puerto Rico (la "AEE"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP")
y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha,
aproximadamente 102,536 reclamaciones que reivindicaban $43 billones en responsabilidad
contra el ELA, COFINA, la ACT, la AEE, la AEP y el SRE fueron rechazadas y retiradas del
registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III.

16.     Esta Cuadringentésima nonagésima quinta objeción global se radica de
conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA
radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases
recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra
(*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en
los Procedimientos Enmendados relativos a Objeciones Globales.

18.     La Cuadringentésima nonagésima quinta objeción global pretende que se
reclasifiquen reclamaciones que afirman una clasificación incorrecta o inadecuada y que están

sobreestimadas en el registro de reclamaciones en el marco de los Casos de Título III, de conformidad con la regla 3007(d)(8) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales.

19.     Como se indica en el **Anexo A** del presente documento, las reclamaciones identificadas en la columna titulada "Alegadas" (cada una denominada una "Reclamación que ha de ser reclasificada y reducida" y conjuntamente, las "Reclamaciones que han de ser reclasificadas y reducidas") alegan incorrecta o indebidamente que están garantizadas o tienen derecho a la prioridad de gastos administrativos de conformidad con el Título 11. U.S.C., § 503(b)(9) o Título 11 U.S.C. § 507(a)(4). Tras una revisión razonable de los libros y registros del ELA, este último ha llegado a la conclusión de que las Reclamaciones que han de ser reclasificadas y reducidas no tienen derecho al estatus de prioridad, y deben ser clasificadas apropiadamente como reclamaciones generales no garantizadas.

20.     Algunas de las Reclamaciones que han de ser reclasificadas y reducidas alegan tener derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 503(b)(9) (las "Reclamaciones incorrectas de gastos administrativos conforme al artículo 503(b)(9)"), pero la evidencia de reclamación y la documentación justificativa no demuestran el derecho del reclamante a dicha prioridad. Solo los acreedores que vendieron bienes al Deudor dentro de un plazo de 20 días antes del inicio del Caso de Título III del Deudor tienen derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 503(b)(9). Sin embargo, según la documentación justificativa sometida con la evidencia de reclamación, ninguna de las Reclamaciones incorrectas de gastos administrativos conforme al artículo 503(b)(9) fue radicada por acreedores que vendieron bienes dentro del plazo legalmente establecido de 20 días antes del inicio del Caso de Título III del Deudor. Por ejemplo, alguna de las Reclamaciones

incorrectas de gastos administrativos fuer radicada por un proveedor de bienes a el Departamento de Vivienda de Puerto Rico, pero los bienes identificados en la documentación justificativa fueron recibidos antes del plazo legalmente establecido de 20 días o fueron recibidos después de la petición.

21.     Otra de las Reclamaciones que han de ser reclasificadas y reducidas alega tener derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 507(a)(4) (las "Reclamaciones incorrectas de gastos administrativos conforme al artículo 507(a)(4)"), pero la evidencia de reclamación y la documentación justificativa no demuestran el derecho del reclamante a dicha prioridad. El artículo 507(a)(4) otorga prioridad a "reclamaciones no garantizadas . . . que hayan devengado dentro de 180 días antes de la fecha de la radicación de la petición . . . por sueldos, salarios o comisiones, incluidas pagos por vacaciones, indemnización licencia por enfermedad a las que tenga derecho la persona." Título 11 U.S.C., § 507(a)(4). Solo los acreedores cuyas reclamaciones surgieron contra los Deudores dentro de un plazo de 180 días antes del inicio de los Casos de Título III del Deudor tienen derecho a la prioridad de gastos administrativos de acuerdo con el Título 11 U.S.C., § 507(a)(4). Sin embargo, según la documentación justificativa sometida con la evidencia de reclamación, ninguna de las Reclamaciones incorrectas de gastos administrativos conforme al artículo 507(a)(4) fue radicada por acreedores cuyas reclamaciones surgieron dentro del plazo legalmente establecido de 180 días antes del inicio de los Casos de Título III del Deudor.

22.     Algunas de las Reclamaciones que han de ser reclasificadas y reducidas alegan un estatus garantizado (la "Reclamación Incorrecta de Estatus Garantizado"), pero ni la evidencia de reclamación ni la documentación justificativa proporcionan fundamento alguno para que el reclamante alegue que su reclamación esté garantizada. Más concretamente, la Reclamación

Incorrecta de estatus Garantizado alega responsabilidades que surgen de la prestación por parte del reclamante de unos servicios de transportación al Departamento de Educación de Puerto Rico, pero no proporciona ningún fundamento para alegar que dichas responsabilidades tengan derecho a un estatus garantizado.

23.     Además, algunas de las Reclamaciones que han de ser reclasificadas y reducidas alegan responsabilidades supuestamente vinculadas con el ELA; sin embargo, los reclamantes no han proporcionado documentación suficiente para justificar una reclamación contra el ELA. En este sentido, el ELA no puede determinar si el reclamante tiene responsabilidades válidas contra el ELA o cualesquiera otros Deudores de Título III. Algunas otras Reclamaciones que han de ser reclasificadas y reducidas alegan responsabilidades contra el ELA por unas facturas en relación con las cuales los libros y registros del ELA muestran que este último ya ha pagado aquellos montos, por lo que dichos montos están satisfechos. En consecuencia, si los montos alegados en las Reclamaciones que han de ser reclasificadas y reducidas no se redujeran en la medida en la que han sido pagados o satisfechos, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación excesiva no justificada contra el ELA en detrimento de otras partes interesadas en el Caso de Título III.

24.     Otras Reclamaciones que han de ser reclasificadas y reducidas alegan montos que están duplicados con respecto a los montos ya alegados en la reclamación. Debido a la forma en la que Kroll anota y registra las evidencias de reclamaciones, determinadas Reclamaciones que han de ser reclasificadas y reducidas están sobreestimadas en el registro de reclamaciones. La Casilla 8 del formulario de la evidencia de reclamación pide que los reclamantes proporcionen el monto total de la reclamación. Otras partes del formulario de reclamación permiten a los reclamantes indicar si consideran que toda o parte de sus reclamaciones tienen derecho al estatus

garantizado o a la prioridad. Por ejemplo, la Casilla 7 del formulario de la evidencia de reclamación permite a los reclamantes indicar si proveen productos y/o servicios al Gobierno, y de ser así, si se adeudaba algún monto al reclamante por el período entre la fecha de petición del Deudor y el 30 de junio de 2017; la Casilla 10 permite a los reclamantes indicar si consideran que toda o parte de su reclamación está garantizada, y de ser así, el monto de la reclamación que está garantizado y el monto que no lo está; y la Casilla 13 permite a los reclamantes indicar si toda o parte de la reclamación tiene derecho a prioridad administrativa conforme al Título 11 U.S.C., § 503(b)(9), y de ser así, el monto de la reclamación que tiene derecho al tratamiento de prioridad administrativa. En el caso de determinadas Reclamaciones que han de ser reclasificadas y reducidas, el reclamante introdujo en la Casilla 8 el monto total que consideraba que se le adeudaba, pero también introdujo el monto total adeudado en las Casillas 7, 10 y/o 13. Cuando Kroll registró las Reclamaciones que han de ser reclasificadas y reducidas en el registro de reclamaciones de Título III, interpretó cada monto introducido en las Casillas 7, 8, 10 y/o 13 como alegaciones de responsabilidad aparte. En consecuencia, el registro de reclamaciones refleja que cada una de las Reclamaciones que han de ser reclasificadas y reducidas alega un monto que está duplicado o triplicado con respecto a las responsabilidades reales alegadas en la evidencia de reclamación, según se demuestra por el monto total que el reclamante en cuestión identifica en la Casilla 8. Por lo tanto, el Deudor solicita que el Tribunal reduzca las Reclamaciones que han de ser reclasificadas y reducidas de tal manera que solo aleguen las responsabilidades totales identificadas por el reclamante en cuestión, según se establece en el Anexo A del presente documento.

25.      Si las Reclamaciones que han de ser reclasificadas y reducidas no se reducen, ello perjudicaría a otros reclamantes en el marco de estos Casos de Título III, puesto que los titulares de las Reclamaciones que han de ser reclasificadas y reducidas podrían recibir una recuperación

excesiva no justificada por encima de las responsabilidades realmente alegadas. Además, los titulares de las Reclamaciones que han de ser reclasificadas y reducidas no se verán perjudicados por el remedio solicitado, ya que mantendrán una reclamación contra el Deudor por el monto total indicado por los reclamantes en sus evidencias de reclamaciones.

26.     En consecuencia, puesto que las Reclamaciones que han de ser reclasificadas y reducidas no proporcionan fundamento alguno para un estatus garantizado, las reclamaciones deben ser reclasificadas como reclamaciones generales no garantizadas, cada una de ellas como se establece en el **Anexo A** del presente documento. La reclasificación de las Reclamaciones que han de ser reclasificadas y reducidas es necesaria para no perjudicar a otros titulares de reclamaciones generales no garantizadas. Los titulares de las Reclamaciones que han de ser reclasificadas y reducidas mantendrán una reclamación modificada contra el ELA, tal y como se establece en la columna titulada "Modificadas" en el **Anexo A** del presente documento. Puesto que esta Cuadringentésima nonagésima quinta objeción global a las Reclamaciones que han de ser reclasificadas y reducidas no constituye una objeción a la validez o al monto de las Reclamaciones que han de ser reclasificadas y reducidas, el ELA se reserva el derecho a oponerse a las Reclamaciones que han de ser reclasificadas y reducidas sobre la base de cualesquiera otros motivos que fueren.

27.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Cuadringentésima nonagésima quinta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones erróneamente clasificadas y sobreestimadas*, de fecha 5 de agosto de 2022, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

28.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA ha notificado la presente Cuadringentésima nonagésima

quinta objeción global a) a los acreedores individuales objeto de esta Cuadringentésima nonagésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista Maestra de Notificaciones (según se define en los *Procedimientos de administración de casos enmendados número 16* [ECF número 20190-1]), disponibles en el sitio web de casos del Deudor, en https://cases.ra.kroll.com/puertorico. Una copia de la notificación de esta Cuadringentésima nonagésima quinta objeción global se adjunta al presente como Anexo C. Las traducciones al español de la Cuadringentésima nonagésima quinta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## **AUSENCIA DE SOLICITUDES PREVIAS**

29.    No se ha radicado ninguna solicitud de remedio previa a la presente Cuadringentésima nonagésima quinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 5 de agosto de 2022
   San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC número 215205
Carla García-Benítez
USDC número 203708
Gabriel A. Miranda
USDC número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico.*

14