# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: 21562, 21563, 21704**<br><br>(Jointly Administered) |

## AAFAF'S OMNIBUS RESPONSE
## TO (I) MOTION TO COMPEL ENFORCEMENT OF THE TERMS OF
## STIPULATION AND CONTEMPT AND (II) MEMORANDUM IN SUPPORT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND ..................................................................................................................2

    I.   The Stipulations .....................................................................................................2
    II.  The Reimbursement Proceedings .........................................................................4
    III. Public Policy of the Commonwealth regarding Electronic Payments ................6
    IV. Notice of Electronic Payments............................................................................7
    V.  The Assumption Order and the Plan of Adjustment ............................................8
    VI. The Motion to Compel.........................................................................................9

OMNIBUS RESPONSE .....................................................................................................10

    A.  The Commonwealth has not breached the Stipulations as the form of payment was not stipulated by the parties to the Stipulations ..................................................10
    B.  Electronic Payment of the Reimbursement of Approved Claims is Complaint with the Stipulations and Consistent with the Public Policy of the Commonwealth......................14
    C.  The Notifications provided by the Commonwealth are not inconsistent with the terms of the Stipulations..........................................................................................................17
    D.  Approved Claims have been Paid and will Continue to the Paid consistent with the terms of the Stipulations ...........................................................................................19
    E.  Since the Commonwealth has not Breached the Stipulations, Movants' Unsupported request for the appointment of a monitor should be rejected............................................20
    F.  Proposal to Address Registration of Movants in Treasury EFT Payment System ...........20

CONCLUSION…………………………………………………………………….......21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arthur Young & Co. v. Vega, 136 DPR 157, 169-70 (1994) ........................................................12

García Rubiera y als. v. Hon. Luis G. Fortuño, et al.,
Civil Case No. 02-1179 (GAG) ...........................................................................................3, 4

García Rubiera, et als v. Joint Underwriting Association for the Compulsory Motor
Vehicle Liability Insurance, et al, Civil Case No. K DP2001-1441 .........................................3,4, 5

García v. World Wide Entmt. Co., 132 DPR 378, 384 (1992) ...................................................13

In re LaPointe, 253 B.R. 496 (B.A.P. 1st Cir. 2000) ...............................................................19

IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010)..............................................13

Jones v. Flowers, 547 U.S. 220, 229 (2016) .....................................................................18,19

Morris v. Bank of America Settlement. 3:18-CV-157-RJC-DSC, (W.D.N.C. Jan. 21, 2022) ......15

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 307, 70 S. Ct. 652, 654, 94 L. Ed. 865
(1950)...................................................................................................................18,19

In re PaineWebber Ltd. Partnerships Litigation, 171 F.R.D. 104, 123 (S.D. N.Y. 1997) ............13

Quiñones López v. Manzano Pozas, 141 DPR 139, 154 (1996)..................................................12

Rawa v. Monsanto Company, 934 F.3d 862, 871 (8th Cir. 2019).................................................13

Soto v. State Chem. Sales Co. Int'l, 719 F. Supp. 2d 189, 191 (D.P.R. 2010)...............................12

Soto v. State Indus. Prod., Inc., 642 F.3d 67 (1st Cir. 2011).....................................................12

Wright v. Union Cent. Life Ins. Co., 304 U.S. 502, 516 (1938)…………………………………17

Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 435
(1934)…………………………………………………………………………………..……..17

**Statutes**

Act 230 of August 26, 2004 ("Act 230-2004")...........................................................................3

Act 103 of May 25, 2006, as amended, known as the "Commonwealth of Puerto Rico
Government Fiscal Reform Act of 2006" ("Act 103-2006"), §19...................................6,13,14,17

Act No. 253 of 1995 ("Act 253-1995") ...............................................................................2, 3

P.R. Laws Ann. Tit 26, §8052(j)........................................................................................2

P.R. Laws Ann. Tit 26, §8053(a).......................................................................................3

P.R. Laws Ann. Tit 26, §8055(j)........................................................................................3

P.R. Laws Ann. Tit 26, §8056(a).......................................................................................3

P.R. Laws Ann. Tit 26, §8061(a) .......................................................................................3

P.R. Laws Ann. Tit 3, §8769 .............................................................................................6

P.R. Laws Ann. Tit. 31, §3471 ........................................................................................13

P.R. Laws Ann. Tit. 31 §3391 .........................................................................................12

P.R. Laws Ann., Tit. 31 § 3371 ........................................................................................12

P.R. Laws Ann., Tit. 31 § 2994 ........................................................................................13

**Commonwealth Title III Cases**

PROMESA Section 304(a) ...............................................................................................4

PROMESA section 315(b)................................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other District Court References**

ECF No. 14588-1 ...................................................................................................8

ECF No. 15171 ..............................................................................................4, 6, 8

ECF No. 17185 ...................................................................................................8

ECF No. 19784 at p. 139 ....................................................................................9

ECF No. 19813 ...................................................................................................9

ECF No. 20349 ...................................................................................................9

ECF No. 21562-1 at p. 4-5 .................................................................................19

ECF No. 21562-1 at p. 5-6 ............................................................................5,11

ECF No. 21562-3 at p. 18-21 .............................................................................6

ECF No. 21562-3 at p. 22-25 .....................................................................7,14,17

ECF No. 21562-3 at p. 22-23 ............................................................................14

ECF No. 2434 .....................................................................................................8

iii

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Commonwealth of Puerto Rico (the "Commonwealth")[2], pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this omnibus response (the "Response") to (i) the *Motion to Compel Enforcement of the Terms of Stipulation and for Contempt* [ECF No. 21562] and (ii) *the Memorandum in Support of Motion to Compel Enforcement of the Terms of Stipulation and for Contempt* [ECF No. 21563] (jointly both, the "Motion to Compel").

### **Preliminary Statement**

The Commonwealth is in compliance with the terms of the Stipulations, defined below, executed with Movants and rejects any allegations that such Stipulations have somehow been breached.[3] The Motion to Compel alleges that the Commonwealth has grossly breached the Stipulations by requesting that Movants of approved claims access a portal created by the Puerto Rico Treasury Department ("Treasury"), and provide certain information therein, to allow for the electronic payment of their claims. Movants improperly request that the Commonwealth issue checks, not an electronic payment, to each such claimants, and incorrectly assert that requesting additional information to process payments electronically is a breach of the Stipulations. Moreover, without providing any basis for such extraordinary remedies, Movants request attorneys' fees and the appointment of a monitor to oversee the disbursement of the funds.

Movants' allegations are unsupported by and contrary to the clear and unequivocal language of the Stipulations. As detailed in this Response, the Commonwealth submits that (i) a

---

[2]   Any reference to the Commonwealth includes the Treasury Department, which is an entity of the Commonwealth.

[3]   Capitalized terms not defined in the Preliminary Statement shall have the meaning provided to them below.

form of payment of the approved claims solely by check (or the exclusion of electronic payment as a means to satisfy such claims) was not stipulated by the parties to the Stipulations; (ii) the electronic payment of the reimbursements is compliant with the Stipulations and consistent with the public policy of the Commonwealth to ensure the efficient, cost-effective and timely payment of the approved claims; (iii) the EFT payment Notifications provided by the Commonwealth are not inconsistent with the terms of the Stipulations; (iv) approved claims have been paid and will continue to be paid consistent with the terms of the Stipulations; and (v) because the Commonwealth has not breached the Stipulations, Movants' unsupported request for the appointment of a monitor should be rejected. Lastly, without waiving any rights and defenses, and in an attempt to pave the way for a consensual resolution of the Motion to Compel, the Commonwealth submits various proposals to increase the registration of individual Movants in the Treasury's electronic payment system. For these reasons and those stated below, the Commonwealth requests that this Court deny the Motion to Compel. In the alternative, the Commonwealth requests that the Court order the parties to meet and confer to discuss the proposals made by the Commonwealth and to evaluate a consensual resolution of the matters set forth in the Motion to Compel, in the best interests of the Movants and the Commonwealth.

## **Background**

### I.    **The Stipulations**

1.      Under the terms of Act No. 253 of 1995 ("Act 253-1995"), motor vehicle owners are required to maintain liability insurance coverage for an amount of no less than $3,000 for every vehicle in use on public roads. P.R. Laws Ann. Tit 26, §8052(j). In order to obtain such coverage, the vehicle owners pay an annual premium to the Commonwealth's Secretary of Treasury (the "Treasury Secretary") when they acquire or renew their vehicle registration corresponding to

$99.00 for each private passenger vehicle and $148.00 for each commercial vehicle. *Id.* §8056(a). Once received, the Treasury Secretary "shall transfer the total amount of the premiums collected to the Joint Underwriting Association" ("JUA"), which is an entity created under the same Act 253-1995. P.R. Laws Ann. Tit 26, §8053(a) and §8055.

2.      Pursuant to Act 235-1995, to the extent that a motor vehicle owner purchases private insurance "with a coverage similar to or greater than that of the compulsory liability insurance" the vehicle owner may use such traditional insurance to comply with the insurance requirements. P.R. Laws Ann. Tit 26, §8061(a). Nevertheless, the motor vehicle owners who obtain private insurance, after paying the compulsory insurance premium may seek reimbursement of the compulsory premiums from the JUA, or from their private insurer who itself seeks reimbursement from JUA. *Id.* § 8055(j).

3.      In 2001, a class of motor vehicle owners (the "Movants") filed an action before the Court of First Instance, San Juan Part (the "State Court") in a case captioned Garcia Rubiera, et als v. Joint Underwriting Association for the Compulsory Motor Vehicle Liability Insurance, et al, Civil Case No. K DP2001-1441 (the "State Litigation") in order to compel the JUA to transfer certain duplicative insurance premiums that had accumulated.

4.      Thereafter, Act 230 of August 26, 2004 ("Act 230-2004"), as amended, was enacted to require the transfer by JUA of accumulated duplicate premiums to the Treasury Secretary every two (2) years. *Id.* § 8055(j).

5.      In 2002, Movants commenced the litigation of García Rubiera et als. V. Hon. Luis G. Fortuño, et al., Civil Case No. 02-1179 (GAG) (the "Federal Litigation") before the United States District Court for the District of Puerto Rico (the "District Court"). As a result of the

commencement of the Federal Litigation, the State Litigation was stayed pending resolution of the former. García Rubiera v. Fortuño, 727, F. 3d 102, 268 n. 7 (1st Cir. 2013)

6.      On February 29, 2016, the Movants, in the Federal Litigation, executed a *Stipulation for Permanent Injunction* with the defendants, which included the Commonwealth (the "Federal Stipulation"). *See*, Exhibit A to ECF No. 21562. On March 1, 2016, the District Court approved the Federal Stipulation and entered the corresponding judgment. *See*, ECF No. 447 and 448 in the Federal Litigation.

7.      On March 29, 2016, Movants in the State Litigation executed a *Joint Motion on Partial Agreement and Stipulation* (the "State Stipulation" and with the Federal Stipulation, the "Stipulations"). *See*, ECF No. 15171 at p. 21-26. On July 8, 2016, the State Court entered a Partial Judgment consistent with the terms of the State Stipulation. *Id* at p. 20.

8.      Pursuant to the terms of the Stipulations, the Commonwealth began processing claims and either approving or rejecting the same. Nevertheless, this process was stayed, on May 3, 2017, since, on such date, the Commonwealth, by and through the Financial Oversight And Management Board (the "Oversight Board"), as the Commonwealth's representative pursuant to PROMESA section 315(b), filed a voluntary petition with the District Court for relief pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

## II.    The Reimbursement Proceedings

9.      The Stipulations set forth the procedure for reimbursement titled *Reimbursement Period and Reimbursement Procedure*. In particular, the Federal Stipulation states the following:

> The parties agree that the vehicle owners can file their claims by making an application to the Secretary of the Treasury containing their name, address, Social Security Number, the vehicle license plates number, the Vehicle Identification number (VIN), the name of the insurance company, the policy number and the year of the policy as said information

appears in the lists sent by ASC to the Secretary of Treasury and a statement to the effect that: (a) the applicant was, during the pertinent year, the owner of the motor vehicle and that he/she/it paid the private insurance premium and also the compulsory insurance premiums; (b) has not been reimbursed of the compulsory insurance premium; and (c) is the person who appears in the list of vehicle owners entitle to reimbursement sent by the ASC to the Secretary of the Treasury for the years 1998 to 2010. **No additional information shall be required in the application.** The application may contain the request for reimbursement for one or more motor vehicles or one or more years. A sample of the application form is included herewith.

Applicants may seek reimbursement by filing an application through the internet website designated by the Secretary of Treasury or by mail to the stated postal address of the Secretary of Treasury.

The Secretary of the Treasury will have 120 days to verify whether the information is correct and the applicant appears in the lists sent by the ASC and whether the applicant does not have any debt of taxes to the Government of Puerto Rico. Once the verification is made, the Secretary will proceed to approve the application and reimburse or credit the vehicle owner. If an application is rejected the reasons for the rejection will be notified to the applicant.

ECF No. 21562-1 at p. 5-6 (emphasis added).

10.     The State Stipulation includes similar language regarding the reimbursement

process:

The parties agree that in order to claim the devolution of the payment made for compulsory insurance, class members shall file an application with the following information and requirements: name, address, Social Security number, the vehicle's license plate and VIN, the name of the private insurer and policy number, and the year for which the claim is filed, as said information appears in the lists sent by JUA to the Secretary of the Treasury. In addition, the claimant shall certify under penalty of perjury that for the pertinent year and motor vehicle, he/she was the owner and paid the compulsory insurance and a private insurance policy; that he/she has never received any kind of reimbursement or credit for the duplicate payment of compulsory insurance; that he/she is the person who appears in the list sent by JUA to the Department of the Treasury of vehicle owners who paid the compulsory liability insurance while having a valid private insurance for the years 1999 and 2010, as such lists have been published or made accessible by the Department of the Treasury via internet or otherwise. The claim application form is attached to this agreement and shall be available at the Treasury Department collection offices (Attachment D). The application form may include a claim for reimbursement for one or more motor vehicles, or one or more years.
[…]
**Claimant shall not be requested to provide any additional information to file the corresponding claim.**

> After the claim application form is filed, the Department of the Treasury shall have 120 days to verify whether the claimant made the duplicate payment and issue the corresponding refund to those entitled to receive it. Within the same term, if refund is not applicable, the Department shall notify the vehicle owner the reasons why such reimbursement does not apply and will not be made.

ECF No. 15171 at p. 24 (emphasis added).

### III.   Public Policy of the Commonwealth regarding Electronic Payments

11.   Act 103 of May 25, 2006, as amended, known as the "Commonwealth of Puerto Rico Government Fiscal Reform Act of 2006" ("Act 103-2006") set forth, in its Article 19, that:

> It shall be the public policy of the Government of the Commonwealth of Puerto Rico to create incentives for the development of technology by promoting that every disbursement of public funds be conducted through electronic means, provided that the department of the Treasury shall establish a mechanism of electronic cards for those employees who do not wish to receive their salary in their personal bank account, in compliance with Act No. 268 of September 1, 1998. The savings generated by the promptness and efficiency added to the system, in addition to the reduction in costs pertaining to the printing of payroll checks, shall defray the cost of the implementation of this system.

P.R. Laws Ann. Tit 3, § 8769.

12.   Consistent with the public policy articulated by Act 103-2006, Treasury issued Circular Letter No. 1300-0121 (the "Treasury Circular Letter") dated July 7, 2020. ECF No. 21562-3 at p. 18-21. The Treasury Circular Letter established that, consistent with a previous circular letter to that effect, the public policy of Treasury is that the principal method of payment shall be electronic funds transfer ("EFT") and that the issuance of checks will only be authorized by way of exception. *Id.* To that end, Treasury instructed all agencies or entities which funds are under the custody of Treasury, and which payments are issued under such department, to make sure that their suppliers, employees, public or private entities and individuals on behalf of which payments are made are registered in the electronic portal of Registry of Electronic Payment for Suppliers so that Treasury can issue the corresponding payments *via* EFT. *Id.* The Treasury

Circular Letter also provided the link to the website to do so and the instructions for completing the relevant forms. *Id.*

### IV.      Notice of Electronic Payments

13.      Consistent with its public policy, the Commonwealth determined that payments to Movants under the Stipulations would be issued *via* EFT. *See*, **Exhibit A**, Declaration of José F. Chaves Ortiz.

14.      The Commonwealth, through the Treasury, worked tirelessly throughout the year 2021 to develop a software system that would facilitate EFT payments of approved claims under the Stipulations. *Id.*

15.      In particular, a module was prepared in the Colecturía Virtual website that would allow Movants to enter their bank account information to receive the payment deposit. *Id.* Movants had to include their name and surname of the account custodian, routing and transit number, account number. *Id.*

16.      As part of the notification process to Movants regarding the necessary information for issuance of EFT payments (jointly all, the "Notifications"), Treasury made the following notices: (i) an ad was published in El Nuevo Día on October 27, 2021; (ii) the same ad was published on the Treasury's main webpage: http://hacienda.gobierno.pr; (iii) various publications were made in digital platforms including Facebook and Twitter; and (iv) a permanent banner was posted in Treasury's Colecturía Virtual website https://colecturiavirtual.hacienda.pr.gov/portal/. *See*, ECF No. 21562-3 at p. 22-25; *see also*, **Exhibit A**.

17.      Counsel for Movants was also notified of the Notifications and the procedure set forth by Treasury for the issuance of the EFT payments under the Stipulations on various dates, including March 7, 2022. ECF No. 21562-3 at p. 22-25. *Id.*; *see also*, **Exhibit A**.

18.     The electronic payment system of Treasury that allows for EFT payments is fully operational. *See,* **Exhibit A.**

19.     As of today, 83,536 claims have been processed and approved and 343 claims have been paid. *Id.* The Commonwealth continues to process and pay approved claims pursuant to the terms of the Stipulations. *Id.*

### V.     The Assumption Order and the Plan of Adjustment

20.     After various procedural events including the filing, by Movants, of a *Motion Requesting Relief of Stay Under 362(d)(1) of the Bankruptcy Code* [ECF No. 2434] (the "Lift Stay Motion") seeking relief from the automatic stay and the enforcement of the Stipulations, on October 15, 2020, the Commonwealth and Movants filed a *Stipulation Resolving Motion Requesting Relief of Stay Under 362(d)(1) of the Bankruptcy Code* [ECF No. 14588-1] (the "Lift Stay Stipulation") to resolve the Lift Stay Motion, which included, among other things, the filing of a motion to assume Stipulations in the Commonwealth's Title III case.

21.     On November 17, 2020, the Oversight Board filed a *Motion of the Commonwealth of Puerto Rico Pursuant to Bankruptcy Code Section 365 for Entry of Order Approving Assumption of Settlement Agreements with García Rubiera Class Plaintiffs* (the "Assumption Motion"). ECF No. 15171. Through the Assumption Motion, the Oversight Board sought to assume the Stipulations.

22.     On June 29, 2021, the District Court entered an *Order Approving Assumption of Settlement Agreements with García Rubiera Class Plaintiffs* (the "Assumption Order"). ECF No. 17185.

23.     On January 18, 2022, the District Court entered the *Order and Judgment Confirming Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of*

*Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "<u>Order Confirming the Commonwealth Plan</u>"). ECF No. 19813. Under the terms of the *Modified Eight Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "<u>Commonwealth Plan</u>") [ECF No. 19784], Movants were assigned to Class 67 with the following treatment:

> 71.1 Treatment of Gracia Gracia Claims: On the Effective Date, the Gracia Gracia Settlement shall be deemed assumed and (a) the members of the class certified in the Gracia Gracia CW Action and the Gracia Gracia Federal Action and the counsel to such classes shall be entitled to receive funds in accordance with the terms and provisions of the Gracia Gracia Settlement and (b) pursuant to the Confirmation Order, all pending motions, applications, litigations and appeals with respect to the Gracia Gracia CW Action and the Gracia Gracia Federal Action shall be deemed withdrawn with prejudice.

ECF No. 19784 at p. 139.

24.     On March 15, 2022, the effective date of the Commonwealth Plan occurred (the "<u>Effective Date</u>"), and the Commonwealth Plan was substantially consummated. ECF No. 20349.

25.     Pursuant to the terms of the Commonwealth Plan, the Stipulations would be deemed assumed on the Effective Date.

### VI.     The Motion to Compel

26.     On July 21, 2022, Movants filed their Motion to Compel requesting that the Commonwealth "be ordered to pay the approved claims submitted by the members of the Class to their addresses", which Movants have incorrectly interpreted to mean that the Commonwealth should send checks to Movants under the alleged terms of the Stipulations. *See*, Motion at p. 4-5. Nevertheless, Movants are unable to cite to any such payment form requirement in the Stipulations, as there is none. In addition, Movants generally request that a monitor should be appointed to

ensure compliance by the Commonwealth of the Stipulations, which the Commonwealth has been

complying with, yet it fails to provide any legal basis to do so.

27.     Accordingly, for the reasons set forth herein, the Motion to Compel should be

denied. In the alternative, the Commonwealth requests that the Court order the parties to meet and

confer to discuss the proposals made by the Commonwealth and to evaluate a consensual

resolution, in the best interests of the Movants and the Commonwealth.

## OMNIBUS RESPONSE

**A. The Commonwealth has not breached the Stipulations as the form of payment was not stipulated by the parties to the Stipulations.[4]**

As evidenced by the clear language of the Stipulations, the form of payment of approved

claims was not stipulated by the Movants or the Commonwealth as part of the agreements included

in the Stipulations. Because no specific method of payment was negotiated and stipulated by the

parties to the Stipulations, the Commonwealth, contrary to Movants' allegations, could not have

breached the Stipulations. In fact, the Stipulations contain no specific reference to any form of

payment. In their Motion to Compel, Movants allege that the Commonwealth breached the terms

of the Federal Stipulation as the same "did not require class members to submit any additional

information aside from the one stated therein to get approval and payment of their claims". *See*,

Motion to Compel at p. 4 ¶ (A) and (B). Nevertheless, Movants incorrectly cite the Stipulations

for such proposition. In particular, the Federal Stipulation, which Movants incorrectly reference

as basis for their Motion to Compel, only states that when discussing the information to be included

in the claim reimbursement application "**[n]o additional information shall be required in the**

---

[4] Although the Motion to Compel only appears to reference the Federal Stipulation at times, the State Stipulation relates to the same matter and was assumed by the Oversight Board via the Assumption Order. As a result, any reference to the Stipulations also refers to the Federal Stipulation and *viceversa*.

**application".** ECF No. 21562-1 at p. 5-6 (emphasis added). As is evident by the clear language of the Stipulations, the agreement that no additional information shall be required was directed at the application form, as the paragraph where such sentence is included enumerated the required information to be included in such application, particularly:

> The parties agree that the vehicle owners can file their claims by making an application to the Secretary of the Treasury containing their name, address, Social Security Number, the vehicle license plates number, the Vehicle Identification number (VIN), the name of the insurance company, the policy number and the year of the policy as said information appears in the lists sent by ASC to the Secretary of Treasury and a statement to the effect that: (a) the applicant was, during the pertinent year, the owner of the motor vehicle and that he/she/it paid the private insurance premium and also the compulsory insurance premiums; (b) has not been reimbursed of the compulsory insurance premium; and (c) is the person who appears in the list of vehicle owners entitle to reimbursement sent by the ASC to the Secretary of the Treasury for the years 1998 to 2010. **No additional information shall be required in the application.** The application may contain the request for reimbursement for one or more motor vehicles or one or more years. A sample of the application form is included herewith.

*Id* (emphasis added).

Movants, in their Motion to Compel, failed to consider the entirety of paragraph where the sentence highlighted above, which serves as basis for the request for remedies, was included. The Commonwealth has not required any additional information in connection with the application form and processing of claims and the Treasury continues to either approve or reject claims pursuant to the clear and unequivocal terms set forth in the Stipulations. The Stipulations' reference to payments, after approval of the application, are mentioned in a separate paragraph and, as discussed above, the same does not specify or require any particular form of payment:

> The Secretary of the Treasury will have 120 days to verify whether the information is correct and the applicant appears in the lists sent by the ASC and whether the applicant does not have any debt of taxes to the Government of Puerto Rico. Once the verification is made, **the Secretary will proceed to approve the application and reimburse or credit the vehicle owner**. If an application is rejected the reasons for the rejection will be notified to the applicant.

*Id.* (emphasis added).

Nevertheless, based on the allegations made in the Motion to Compel, it appears as if Movants are attempting to interpret the Stipulations at their convenience, in contradiction with the clear language included therein. The Stipulations neither state that payment should be issued by check nor do the Stipulations limit the Commonwealth's ability to set forth a specific form of payment consistent with its public policy. Movants' after-the-fact attempt at rewriting the Stipulations at their sole convenience is not supported by the case law and should be summarily rejected.

Under the Puerto Rico Civil Code, a contract exists "from the time one or more persons agree to bind themselves with respect to other or others, to give something or render a service." (English translation provided). *See*, Art. 1206 of the Puerto Rico Civil Code, Laws of PR Ann., Tit. 31 § 3371. For a contract to be binding, three elements must concur, namely, (1) consent; (2) a definitive and legal object; and (3) consideration. *See*, PR Laws Ann., Tit. 31 § 3391; *see also*, Soto v. State Chem. Sales Co. Int'l, 719 F. Supp. 2d 189, 191 (D.P.R. 2010), aff'd sub nom. Soto v. State Indus. Prod., Inc., 642 F.3d 67 (1st Cir. 2011); Quiñones López v. Manzano Pozas, 141 DPR 139, 154 (1996) (English translation) (stating that three essential conditions of contract validity are consent, a definite object that may be the subject matter of a contract, and consideration).

Moreover, Art. 1207 of the Puerto Rico Civil Code contains the principle of freedom to contract, which allows a person to establish the contractual covenants, clauses, and conditions which they desire, so long as they are not in contravention of the law, morality, or public order. *See*, PR Laws Ann. Tit. 31 § 3391. Consequently, "the kinds of agreements contracting parties may reach are only limited by their imagination, and that the will of the parties is the supreme law between them." Arthur Young & Co. v. Vega, 136 DPR 157, 169-70 (1994). (English translation

provided).

Once perfected, contracts have legal force and should be fulfilled in accordance with the terms and conditions agreed upon therein. See, Civil Code, Art. 1044, Laws of P.R. Ann., Tit. 31 § 2994; *see also*, García v. World Wide Entmt. Co., 132 DPR 378, 384 (1992). "Article 1233 of the Puerto Rico Civil Code provides that where 'the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of Its stipulations shall be observed.'" IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010) (citing P.R. Laws Ann. tit. 31, § 3471).

In the context of class actions, and as Movants appear to request in this case, courts have held that "[d]istrict courts do not rewrite settlement agreements". Rawa v. Monsanto Company, 934 F.3d 862, 871 (8th Cir. 2019); *see also*, § 13:46. Notably, in the case of Rawa, the Court of Appeals for the Eighth Circuit noted that class counsel was requesting, in essence "that the district court redraft the terms of the agreement to allow for an alternative method of fund distribution for the amount in question." *see also*, In re PaineWebber Ltd. Partnerships Litigation, 171 F.R.D. 104, 123 (S.D. N.Y. 1997), af''d, 117 F.3d 721 (2d Cir. 1997) (stating that the court is not to "substitute its own judgment for that of Class Counsel").

As a result of the clear language of the Stipulations and the case law cited above it is evident, that the directive that no additional information would be required relates to the claims application process and not to the payment process for which, consistent with its public policy since the enactment of Act 103-2006, the Commonwealth has correctly determined shall be made *via* EFT payment. The Commonwealth has not required any additional information for the processing of claims. Movants' incorrect interpretation of the clear language of the Stipulations to somehow ask this Court to require from the Commonwealth their preferred form of payment is

13

inconsistent with the language of the Stipulation. There is no basis to include additional requirements to the Stipulations that were not negotiated or included therein as the terms of such Stipulations are clear and unequivocal and their literal sense should be observed. Moreover, because the Commonwealth has not breached the Stipulations, Movants' unfounded request for attorney's fees should also be rejected.

**B. Electronic Payment of the Reimbursements of Approved Claims is Compliant with the Stipulations and Consistent with the Public Policy of the Commonwealth.**

As detailed above, since the Stipulations did not specify or require a particular form of payment, the Commonwealth, consistent with its public policy as further detailed in Act 103-2006, the Treasury Circular Letter, and the sound administration of public funds through the use of technological tools, determined that, to ensure the receipt of the disbursements by the Movants, the Commonwealth would issue such disbursements through EFT. *See*, **Exhibit A**, Declaration of José F. Chaves Ortiz. To that end, the Commonwealth, through the Treasury, worked tirelessly throughout the year 2021 to develop a software system that would facilitate EFT payments of approved claims under the Stipulations in anticipation of the Effective Date. *Id.* In particular, a module was prepared in the Colecturía Virtual website that would allow Movants to enter their bank account information to receive the payment deposit (name and surname of the account custodian, routing and transit number, account number). *Id.* In order to inform Movants of the EFT module created by Treasury, the Commonwealth issued various Notifications through publications, various of its webpages and social media. *See*, ECF No. 21562-3 at p. 22-23; *see also*, **Exhibit A**. Moreover, counsels for Movants were also notified of the Notifications and the procedure set forth by Treasury for the issuance of the EFT payments under the Stipulations on March 7, 2022. ECF No. 21562-3 at p. 22-25. Id; *see also*, **Exhibit A.** This notification to Movants' counsel occurred eight (8) days before the Effective Date, the date on which the Stipulations would

be assumed consistent with the Assumption Order and the Order Confirming the Commonwealth Plan. *Id*. Contrary to Movants' allegations, the Notifications provided were not arbitrary or *ex parte*. Because the form of payment was not part of the Stipulations, there was no requirement to notify the Notifications regarding the EFT software in any particular manner or form. *Id.*

Furthermore, in their Motion to Compel, and for the proposition that the "most convenient and efficient ways […] is to mail a check by first class mail to the claimants' addresses as contemplated in the Stipulation and is customary in class action suits" the Movants incorrectly cite to the case of Morris v. Bank of America Settlement. 3:18-CV-157-RJC-DSC, (W.D.N.C. Jan. 21, 2022), *See, Memorandum* at p. 6. Nevertheless, a closer review of the settlement proposed in such case reveals that a distribution to class members would be done either by check or direct deposit. See, 3:18-CV-157-RJC-DSC, Docket Entry 90-1, p. 14. Accordingly, the case cited by Movant does not support their contention; in fact, it supports payment through electronic means as well.

Nevertheless, despite the public policy clearly articulated by the Commonwealth as described above, the Movants, in their Motion to Compel, seem adamant in asking the District Court to require from the Commonwealth, at its sole cost, that it issue checks in favor of Movants, despite such requirement not arising anywhere in the Stipulations. The Commonwealth opposes said request for various reasons. First, the Commonwealth understands that payment via EFT is the most efficient and safe way for Movants to receive their payment of approved claims. *See,* **Exhibit A**. In particular, the Commonwealth notes that there is a risk that the checks may be lost or damaged by Movants or that the check may expire for which, in both situations, a new check would be required. *Id.* This concern is based on the fact that some of the data provided by Movants in their applications, particularly as to their addresses, is almost six (6) years old (since the Stipulations are dated 2016), therefore, the Commonwealth understands that unclaimed mail could

15

be significant. *Id.*

Second, the Commonwealth submits that the issuance of payments via EFT is the most cost-efficient alternative to safeguard public funds. *Id.* In particular, the cost of issuing checks by mail is substantial. *Id.* Specifically, the estimated and approximate cost to be incurred by the Commonwealth if payments of approved claims are made *via* check and sent *via* certified mail is approximately, $714,708.36. *Id.* It should be noted that the Commonwealth understands that this estimate is conservative and does not contemplate certain cost revisions relating to the cost for the check form to be printed in security paper. *Id.* This estimate also does not contemplate the possibility of having to re-issue checks due to certain checks becoming lost, damaged or expired. *Id.* As a result of the above, the costs of payment via check could substantially increase. *Id.* However, if payment is made by EFT, as is the public policy of the Commonwealth, the cost per transaction would be $.009, that is, a total of $751.82 for all approved claims as of today. *Id.* In other words, payment by the Commonwealth *via* EFT would represent savings for the Commonwealth totaling at least $713,956.54. *Id.* Furthermore, this expense associated with a requirement, not included in the Stipulations, that the payments of approved claims be sent out *via* check has not been contemplated within the Commonwealth's Certified Budget since, as described above, payment via EFT is the method of payment consistent with the Commonwealth's public policy. *Id.*

Third, the Commonwealth understands that issuance of payments via EFT is the best alternative to timely issue the payments of approved claims. *Id.* In particular, the Commonwealth notes that if it is required to issue checks for payment of approved claims, the process of printing checks and mailing them may require several additional months as such process also requires the ordering of certain materials. *Id.* In addition, the Commonwealth submits that the processes of

standardizing, printing notifications, and putting them in envelopes could take an estimated time of six (6) to eight (8) working weeks to complete, excluding the time it would take for the mailing room's staff to be able to manually handle the certified mail slip and green card. *Id.* Furthermore, as per a quote received by Treasury from a local bank, it would take about twenty (20) to twenty-two (22) weeks to print the checks from the time of starting printing until the delivery of the printed checks to Treasury. *Id.* Conversely, once the Movants register in the system set forth by Treasury, the issuance of payments via EFT normally takes between 1-2 business days. *Id.* As a result of the above, the Commonwealth understands that, besides it being the public policy of the Commonwealth, efficiency, cost-effectiveness and timeliness all favor the issuance of payments via EFT, as has been done and will continue to be done by the Commonwealth.

In addition, the Commonwealth submits that, consistent with the above, the Commonwealth's laws, including Act 103-2006, enacted ten (10) years before the Stipulations were executed and which sets forth the public policy of the Commonwealth, are read into every contract. <u>See</u> e.g., <u>Wright v. Union Cent. Life Ins. Co.</u>, 304 U.S. 502, 516 (1938) ("Not only are existing laws read into contracts in order to fix obligations as between parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order."); *see also*, <u>Home Bldg. & Loan Ass'n v. Blaisdell</u>, 290 U.S. 398, 435 (1934). As a result of the above, the public policy detailed in Act 103-2006 must also be deemed incorporated into the Stipulations in favor of the issuance of payments via EFT.

### C. The Notifications provided by the Commonwealth are not inconsistent with the terms of the Stipulations.

As described above, the Commonwealth issued various Notifications throughout its various websites, publications and social media. *See*, ECF No. 21562-3 at p. 22-25; *see also*, **Exhibit A**. Moreover, Counsel for Movants was also notified of the Notifications and the

procedure set forth by Treasury for the issuance of the EFT payments under the Stipulations on March 7, 2022 in anticipation of the Effective Date of the Commonwealth Plan when the Stipulations would be deemed as assumed. *Id.* Contrary to Movants' allegations, the Notifications provided were neither arbitrary nor *ex parte*. *Id.* Since the form of payment was not part of the Stipulations, there was no requirement to notify the procedure set forth by Treasury for the issuance of the EFT payments in any particular manner or form. *Id.*

In their Motion to Compel, for the allegation that the Commonwealth allegedly imposed new conditions not contained in the application, which the Commonwealth has already established it did not do, Movants cite the case of Jones v. Flowers, for the proposition that the Commonwealth had to "notify such new conditions in the same manner in which claimants notified their application for payment, *i.e.*, to their mailing addresses", further alleging that, in such case, the Supreme Court of the United States (the "Supreme Court") clarified that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Jones v. Flowers, 547 U.S. 220, 229 (2016). However, assuming the allegations of the Movants as true, which they are not, Movants' reliance on the case of Jones v. Flowers is misplaced. For starters, the legal controversy in the case of Jones is clearly distinguishable from that of the matter at hand, in that in Jones, the Supreme Court, in the context of a government taking of property without due process, dealt with the question of "whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed". *Id.* at *227. Movant's citation of Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 307, 70 S. Ct. 652, 654, 94 L. Ed. 865 (1950) fares no better, as, in that case, the Supreme Court also dealt with deprivations of property without notice requirements of the Fourteenth Amendment and, therefore, were done without due process of law. Moreover, as

with <u>Jones</u> and <u>Mullane</u>, Movant's reliance in the case of <u>In re LaPointe</u>, 253 B.R. 496 (B.A.P.

1st Cir. 2000), is further inapposite, in that in <u>LaPointe</u>, the United States Bankruptcy Appellate

Panel for the First Circuit ruled that a party's failure to provide notice of a foreclosure sale to

another interested party, demonstrated a lack of reasonable diligence. Here, assuming Movants'

allegations as correct, which they are not, there is no taking nor deprivation of property whatsoever

by the Commonwealth as to the Movants, by requesting that individual claimants access the

Treasury platform developed for that purpose and plug in their information in order to receive

payment of approved claims since the Stipulations did not establish a particular form of payment.

Moreover, although the Stipulations set forth a specific procedure for a general notice

regarding the initial notification that a motor vehicle owner could be entitled to reimbursement,

the Stipulations do not include any specific procedure regarding subsequent notices, including

those relating to the Commonwealth's efforts to inform the Movant of the EFT payment system.

ECF No. 21562-1 at p. 4-5. As described in Section B above, the payment through EFT is

consistent with the public policy of the Commonwealth and is targeted at handling efficiently and

timely the payment of claims under the Stipulations. To that end, the Movant's allegations as to

alleged constitutional violations are squarely unsupported and incorrect.

**D. Approved Claims have been Paid and will Continue to be Paid consistent with the terms of the Stipulations.**

As of today, 83,536 claims have been processed and approved the Commonwealth has paid

343 claims via EFT. *See*, **Exhibit A**. Consistent with the clear language of the Stipulations, no

specific form of payment was stipulated by the parties. As a result, the Commonwealth, consistent

with its public policy, developed the EFT payment system to facilitate the payment of approved

claims under the Stipulations. *Id.* As described above, the EFT payment system represents, for the

Commonwealth, the most efficient, safe, cost-effective and fastest way in which it can issue

payment of approved claims. *Id*.

**E. Since the Commonwealth has not Breached the Stipulations, Movants' Unsupported request for the appointment of a monitor should be rejected.**

In their Motion to Compel, Movants generally request, without providing any legal basis whatsoever, that a monitor should be appointed to supervise "prompt distribution of the funds to approved claimants". *See*, Memorandum at p. 7. Movants do not cite any source for such proposition. As stated above, the Commonwealth has not breached the terms of the Stipulations, continues to issue the relevant payments *via* its EFT system and at all times has been available to respond to any questions or concerns or to discuss with Movants' counsel a possible consensual resolution even after the filing of the Motion to Compel, to no avail. As a result of the above, the unsupported request for the appointment of a monitor should be summarily rejected.

**F. Proposal to Address Registration of Movants in Treasury EFT Payment System**

Despite the Commonwealth's position regarding the terms of the Stipulations and the validity of its EFT payment system and the relevant Notifications, and without waiving any rights or defenses, the Commonwealth recognizes that the majority of Movants have yet to register with Treasury's EFT payment system. To that end, and  in order to continue promoting the registration of Movants to allow them to receive their payment via EFT consistent with the terms of the Stipulations and the public policy of the Commonwealth, the Commonwealth proposes the following: (i) providing additional notifications *via* media (social media, radio or tv) and through the various websites of Treasury; (ii) coordinating with Movants' counsel additional public notices that the parties may deem necessary; and/or (iii) discussing a proposed amendment to the Stipulation with Movant's counsel to reach an agreement as to additional notifications, not contemplated in the Stipulations

## <u>CONCLUSION</u>

**WHEREFORE**, for the foregoing reasons, the Motion to Compel should be denied. In the alternative, the Commonwealth requests that the Court order the parties to meet and confer to discuss the proposals made by the Commonwealth and to evaluate a consensual resolution, in the best interests of the Movants and the Commonwealth.

[*Remainder of page intentionally left blank*]

Dated: August 5, 2022
San Juan, Puerto Rico


Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

22