# Debtor's Ex. 57

# (Part 1 of 2)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

---------------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 3567 (LTS) |

---------------------------------------------------------------x

**<u>AFFIDAVIT OF PUBLICATION AND RADIO ADVERTISEMENTS</u>**

I, Christina Pullo, declare and state as follows:

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

1. I am a Managing Director, Head of Restructuring Administration and Issuer Services at Kroll Restructuring Administration LLC ("***Kroll***"),[2] the Solicitation, Notice, and Claims Agent for the Debtors in the above-captioned cases under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

2. This Affidavit of Publication includes verification that the *Notice of (I) Approval of Disclosure Statement, (II) Establishment of Record Dates, (III) Hearing on Confirmation of the Plan of Adjustment and Procedures for Objection to Confirmation of the Plan of Adjustment, (IV) Procedures and Deadline for Voting on the Plan of Adjustment and Making Certain Elections Thereunder* (the "***Notice of Confirmation Hearing***") was published on June 30, 2022 in the National Edition of *The New York Times, Bond Buyer,* and *Caribbean Business* as described (respectively) on **Exhibit A** through **Exhibit C** attached hereto.

3. This Affidavit of Publication includes verification that the *Notificación de (I) la Aprobación de la Declaración de Divulgación, (II) el Establecimiento de Fechas de Registro, (III) la Vista de Confirmación del Plan de Ajuste y los Procedimientos de Objeción a la Confirmación del Plan de Ajuste, (IV) los Procedimientos y Fechas Límite de Votación Sobre el Plan de Ajuste y la Celebración de Determinadas Elecciones Dentro de su Marco* (the "***Notice of Confirmation Hearing (ES)***") was published on June 30, 2022 in *El Nuevo Herald*; *El Diario NY*; *El Nuevo Dia*; *El Vocero de Puerto Rico*; and *Primera Hora* as described (respectively) on **Exhibit D** through **Exhibit H** attached hereto.

4. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing was published on July 6, 2022 in the National Edition of *The New York Times* and in *Bond Buyer* as described (respectively) on **Exhibit I** and **Exhibit J** attached hereto.

---

[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

5. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing (ES) was published on July 6, 2022 in *El Nuevo Herald*; *El Diario NY*; *El Nuevo Dia*; *El Vocero de Puerto Rico*; and *Primera Hora* as described (respectively) on **Exhibit K** through **Exhibit O** attached hereto.

6. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing was published on July 7, 2022 in *Caribbean Business* as described on **Exhibit P** attached hereto.

7. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing was published on July 20, 2022 in the National Edition of *The New York Times* and in *Bond Buyer* as described (respectively) on **Exhibit Q** and **Exhibit R** attached hereto.

8. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing (ES) was published on July 20, 2022 in *El Nuevo Herald*; *El Diario NY*; *El Nuevo Dia*; *El Vocero de Puerto Rico*; and *Primera Hora* as described (respectively) on **Exhibit S** through **Exhibit W** attached hereto.

9. This Affidavit of Publication includes verification that the Notice of Confirmation Hearing was published on July 21, 2022 in *Caribbean Business* as described on **Exhibit X** attached hereto.

10. Further, Kroll received confirmation that a total of seventy-two (72) sixty-second (60-second) radio advertisements aired during the periods from (i) July 4, 2022 up to and including July 8 2022; (ii) July 11, 2022 up to and including July 15, 2022; and (iii) July 18, 2022 up to and including July 22, 2022, on (x) WMEG FM (contemporary hit radio) in Spanish and (y) WKAQ AM (Spanish language talk radio) in Spanish, informing listeners of (a) the approval of the Disclosure Statement[3] and the scheduling of the Confirmation Hearing, (b) the date by which Confirmation Objections must

[3] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan, Disclosure Statement Order, or Notice of Confirmation Hearing.

be filed and served, (c) the Voting Deadline and the Election Deadline, and (d) an information hotline to receive certain additional information.

[*Remainder of Page Intentionally Left Blank / Signature Page to Follow*]

11. I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct and that, if called as a witness, I could and would competently testify thereto.

Dated: August 1, 2022

*/s/Christina Pullo*
Christina Pullo

State of New York
County of New York

Subscribed and sworn (or affirmed) to me on August 1, 2022, by Christina Pullo, proved to me on the bases of satisfactory evidence to be the person who executed this affidavit.

*/s/ HERBERT BAER*
Notary Public, State of New York
No. 01BA6205563
Qualified in Westchester County
Commission Expires May 11, 2025

# Exhibit A

***The New York Times***

**(June 30, 2022)**



The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

# PROOF OF PUBLICATION

Jul-20, 20 22

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

June 30, 2022, NYT & Natl, pg B3 - July 06, 2022, NYT & Natl, pg B3

July 20, 2022, NYT & Natl, pg B3

Sworn to me this 20th day
of July, 2022

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**ECONOMY | AIRLINES**

# *Fed's Efforts to Tame Inflation Threw Cold Water on Housing Market*

FROM FIRST BUSINESS PAGE

ral into a recession if they stifle home purchases and development activity too much.

While housing does not account for a huge amount of economic output, it is a boom-bust industry that has historically played an outsize role in downturns. The sector runs on credit, and new home purchases are often followed by new furniture, new appliances and new electronics that are important pieces of consumer spending.

***From bidding wars to moribund markets in mere weeks.***

**5.81%**

Interest rate on a 30-year fixed rate mortgage, up from 3.22 percent at the beginning of 2022.

"We need the housing market to bend to rein in inflation, but we don't want it to break, because that would mean a recession," said Mark Zandi, chief economist at Moody's Analytics.

Home prices are still at record levels, and they are likely to take months or longer to fall — if they ever do. But that caveat, which real estate agents often hold up as a shield, cannot paper over the fact that demand has waned considerably and that the market direction has changed.

Sales of existing homes fell 3.4 percent in May from April, according to the National Association of Realtors, and construction is also down. Homebuilders that had been parsing out their inventory with elaborate lotteries now say their pandemic lists have shriveled to the point that they are lowering prices and sweetening incentives — like cheaper counter and bathroom upgrades — to get buyers over the line.

"There was this collective belief that housing was invincible — that it was so undersupplied and demand so high that nothing could stop price growth," said Ali Wolf, chief economist with Zonda, a housing data and consulting firm. "A very rapid increase in interest rates and home prices has proven that theory to be false."

It is a stark change for a market that blossomed soon after the initial shock of the pandemic, which for many people turned out to be a perfect time to buy a home. Rock-bottom mortgage rates lowered borrowing costs, while the shift to home offices and Zoom meetings opened up new swaths of the country to buyers who had been struggling to penetrate the market near their jobs.

**Weekly Average 30-Year Fixed Mortgage Rate**

Source: Freddie Mac

THE NEW YORK TIMES

That caused prices to explode in far-flung exurbs and once-affordable places like Spokane, Wash., where a crush of new home buyers decamped from pricey West Coast cities. People became so willing to move long distances to buy a home that "the normal laws of supply and demand didn't apply," Mr. Kelman said.

After two years of swift price increases, however, places that once seemed cheap no longer are. Home values have risen about 40 percent over the past two years, according to Zillow, forcing buyers to stretch ever further in price even as they run out of geography.

Now add in mortgage rates, which have nearly doubled this year. And inflation, which is eating into savings for some families as it increases household expenses. And a wobbly stock market, which has reduced the value of portfolios that many buyers intended to tap for a down payment.

Larisa Kiryukhin and her family were long ago priced out of the San Francisco Bay Area, where they had lived for decades. Ms. Kiryukhin, 44, is a medical assistant who was tied to her hospital, but the pandemic gave her husband, who works in information technology, the flexibility to move to a more affordable city. So Ms. Kiryukhin switched jobs, and this year the couple and their two children moved to Tampa, Fla., in hopes of buying a home.

In April, the family went into contract on a $425,000 house and was quoted an interest rate of 4 percent. Then the closing date was extended because the seller wanted time to find a new home. Then interest rates jumped, adding about $700 to the monthly payment, and the family backed out.

"I moved here just to buy a house, and here we go: The prices got so high we can't afford it," Ms. Kiryukhin said.

The typical home buyer makes about $70,000 a year, according to Moody's Analytics. A $600-a-month increase in housing costs — about how much rising interest rates have added to the typical mortgage payment — is more than most people can shoulder.

Steve Silbar, a real estate agent in Spokane, Wash., said he had seen a sharp deterioration in interest among buyers looking for homes under $500,000. Rising mortgage rates "have moved them out of the market," he said.

Heather Renz and her husband, clients of Mr. Silbar's, were preparing to buy a home for $360,000. Ms. Renz is her mother's caregiver. To qualify for a mortgage, her husband, who works as a technician at an aerospace company, was going to pull money out of his retirement account and bolster their down payment. But the recent stock market declines pushed the amount he could withdraw below what they needed to qualify.

"We were three-quarters of the way through the process," Ms. Renz said.

The interest rate on a 30-year fixed rate mortgage has risen to 5.81 percent from 3.22 percent in the first week of January, according to the mortgage giant Freddie Mac. Some of that adjustment anticipated future Fed interest rate increases. Officials raised rates by three-quarters of a percentage point in June alone, the largest increase since 1994, and have signaled that a similarly large move is on the table in July. Any further surprises could push mortgage rates even higher.

Inflation is running at the fastest pace in 40 years, forcing the Fed to stake out an aggressive policy response to try to bring it under control.

Because higher interest rates slow down big purchases made on credit, from homes and cars to business equipment, they can limit demand and allow supply to catch up, tempering price increases across the economy.

Jeanna Smialek contributed reporting.

# *With 2 Suitors, Spirit Airlines Puts Off Vote*

**By PETER EAVIS and LAUREN HIRSCH**

On the eve of a planned shareholder meeting on an acquisition by Frontier Airlines, Spirit Airlines said Wednesday evening that it was putting off the vote and would continue to talk to both Frontier and a rival suitor, JetBlue.

The postponement, until July 8, was a stunning turn in a battle that analysts say could reshape the airline sector. The decision is a blow for the leaders of Frontier and Spirit, budget carriers that want to combine so they can more effectively compete with the nation's four dominant airlines.

The Frontier stock-and-cash proposal values Spirit at roughly $2.4 billion, while JetBlue's all-cash offer totals about $3.6 billion. There are competing carrots to investors, like how much the rivals would pay shareholders if regulators blocked the deal — $350 million in the case of Spirit and $400 million in the case of JetBlue.

"This says both marriage proposals are attractive," said Samuel Engel, a senior vice president and airline industry analyst at ICF, a consulting firm. "They want to see what the maximum dowry is that they can get."

Frontier argues that despite its offer's lower nominal value, the share portion allows Spirit investors to further benefit should shares of the combined company climb. It has also attacked JetBlue's bid as less likely to win regulatory approval.

Still, Frontier's offer would face a tough look from the Biden administration, which has taken a skeptical view of large corporate mergers. The number of big airlines has fallen over the past two decades as carriers have merged, and customers are upset with airlines as they contend with mass flight cancellations.

Shares of Spirit were up 2.2 percent, to $22.90, in after-hours trading on Wednesday, but well below the $33.50 JetBlue has offered.

Spirit and Frontier announced a proposal to merge in February. Weeks later, JetBlue countered with its offer. What followed were rounds of one-upmanship and, at times, bitter words. Spirit dismissed JetBlue's offer as a "cynical attempt" to disrupt its merger with Frontier, while JetBlue took aim at Spirit's board, arguing that its ties with Frontier inhibited its objectivity in evaluating the deal.

Barry Biffle, Frontier's chief executive, was a top Spirit executive from 2005 to 2013. William A. Franke, Frontier's chairman, is a managing partner of Indigo Partners, the private equity firm that once owned both companies. He is expected to head the board if the Frontier-Spirit deal is approved. Frontier, which is now public, remains majority owned by Indigo.

Combined, Frontier and Spirit would become the fifth-largest U.S. airline, with an 8.2 percent share of the market, putting it behind American, Southwest, Delta and United.

Frontier and Spirit contend that with cost savings and a larger network, their combined carrier would be able to compete for more customers while still offering very low fares, pressuring larger rivals to hold down their fares, too.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br>Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>Debtor. | PROMESA<br>Title III<br>No. 17 BK 3567-LTS |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. ***Approval of Disclosure Statement.*** By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**
**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
**(844) 822-9231 (toll free for U.S. and Puerto Rico)**
**(646) 486-7944 (for international callers)**
**Email: puertoricoinfo@primeclerk.com**
Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2. Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

a. Be in writing, in English, and signed;

b. State the name, address, and nature of the Claim of the objecting or responding party;

c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;

d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**.

i. If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767

so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and

e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8. ***Confirmation and Discovery Timetable and Deadlines.*** The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

**Summary of Certain Deadlines**

| | |
|---|---|
| **July 1, 2022** | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "Fact Witness Lists"). |
| | Deadline for Parties to file opening expert disclosures ("Opening Expert Disclosures"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("Production Requests"). Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests. Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| **July 8, 2022** | Deadline for Parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| **July 12, 2022** | Deadline for Parties to file opening expert reports ("Opening Expert Reports"), if any. If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("Notices of Deposition") (all parties are limited to a seven (7)-hour time limit for depositions). |
| **July 18, 2022** | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| **July 20, 2022** | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| **July 22, 2022** | Completion of expert discovery (the "Expert Discovery Deadline"). |
| **July 25, 2022** | Deadline for Parties to file Daubert motions and motions *in limine*. |
| **July 27, 2022** | Deadline for:<br>• Objections to confirmation of the Plan ("Objections").<br>• Objections to Proposed Confirmation Order. |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| **July 29, 2022** | Deadline for Parties to file oppositions to Daubert motions and motions in *limine*. |
| **August 1, 2022** | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| **August 3, 2022** | Deadline for Parties to file replies in support of Daubert motions and motions *in limine*. |
| **August 4, 2022** | Deadline for Parties to file objections to counter-designations |
| **August 7, 2022** | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation.<br>• Omnibus reply to objections to confirmation and proposed confirmation order.<br>• Witness Declarations & Vote Tabulation.<br>• Findings of Fact and Conclusions of Law. |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| **August 8, 2022** | Virtual Pretrial conference. |
| **August 15, 2022** | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| **August 17-18, 2022** | Confirmation Hearing |

9. ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond Classes) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10. ***Voting Deadline.*** The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11. If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

12. ***Election Deadline***. The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline"). If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to ***actually effectuate*** your election through DTC's ATOP on or before the Election Deadline.

13. ***Parties in Interest Not Entitled to Vote.*** Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14. Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);
- Class 19 (Convenience Claims).

15. If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan. Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16. If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18. ***Parties Who Will Not Be Treated as Creditors***. Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (https://pacer.uscourts.gov) password and login are needed to access documents on the Court's website.

20. ***Bankruptcy Rules 2002(c)(3) and 3016(c).*** **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 41.2 – Discharge and Release of Claims and Causes of Action:**

**(a) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors, and their respective Related Persons by Creditors of the Debtor. Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan. For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.**

**(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.**

**(c) Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the HTA Plan.**

**(d) SEC Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.**

**(e) United States Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor. Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).**

**(f) Underwriter Actions. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.**

**Section 41.3 – Injunction on Claims: Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.**

**Section 41.5 – Releases by the Debtor and Reorganized HTA: Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.**

**Section 41.6 – Injunction Related to Releases: As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order. For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.**

**Section 41.7 – Exculpation:**

**(a) Government Parties: The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.**

**(b) HTA/CCDA PSA Creditors: Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(c) Monoline Insurers: Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).**

**(d) Creditors' Committee: Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(e) The DRA Parties: Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation: Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.**

**Section 41.9 – Bar Order: To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).**

**Section 41.11 – Supplemental Injunction: Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022, San Juan, Puerto Rico

Respectfully submitted, /s/ Brian S. Rosen, Martin J. Bienenstock (*pro hac vice*), Brian S. Rosen (*pro hac vice*), **PROSKAUER ROSE LLP,** Eleven Times Square, New York, NY 10036, *Attorneys for the Financial Oversight and Management Board as representative for the Debtor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, USDC No. 215205, **O'NEILL & BORGES LLC,** 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3] All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

[4] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

# Exhibit B

***Bond Buyer***

**(June 30, 2022)**

# Copy Of Advertisement Of

# Certificate of Publication

Yohanna Beato, is the Billing Coordinator of the BOND BUYER, a daily newspaper printed and published at One State Street Plaza, in the City of New York, County of New York, State of New York; and the notice, of which the annexed is a printed copy, was regularly published in said BOND BUYER on June 30th 2022.

X Yohanna Beato

*Billing Coordinator*

*June 30th 2022*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br>Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>Debtor. | PROMESA<br>Title III<br>No. 17 BK 3567-LTS |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. ***Approval of Disclosure Statement.*** By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**

**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**

**(844) 822-9231 (toll free for U.S. and Puerto Rico)**

**(646) 486-7944 (for international callers)**

**Email: puertoricoinfo@primeclerk.com**

Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2. Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

a. Be in writing, in English, and signed;

b. State the name, address, and nature of the Claim of the objecting or responding party;

c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;

d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time).**

i. If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767

so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and

e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8. ***Confirmation and Discovery Timetable and Deadlines***. The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

| Summary of Certain Deadlines | |
|---|---|
| July 1, 2022 | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "Fact Witness Lists"). |
| | Deadline for Parties to file opening expert disclosures ("Opening Expert Disclosures"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("Production Requests"). Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests. Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| July 8, 2022 | Deadline for Parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| July 12, 2022 | Deadline for Parties to file opening expert reports ("Opening Expert Reports"), if any. If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("Notices of Deposition") (all parties are limited to a seven (7)-hour time limit for depositions). |
| July 18, 2022 | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| July 20, 2022 | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| July 22, 2022 | Completion of expert discovery (the "Expert Discovery Deadline"). |
| July 25, 2022 | Deadline for Parties to file Daubert motions and motions *in limine*. |
| July 27, 2022 | Deadline for:<br>• Objections to confirmation of the Plan ("Objections").<br>• Objections to Proposed Confirmation Order. |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| July 29, 2022 | Deadline for Parties to file oppositions to Daubert motions and motions *in limine*. |
| August 1, 2022 | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| August 3, 2022 | Deadline for Parties to file replies in support of Daubert motions and motions *in limine*. |
| August 4, 2022 | Deadline for Parties to file objections to counter-designations |
| August 7, 2022 | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation.<br>• Omnibus reply to objections to confirmation and proposed confirmation order.<br>• Witness Declarations & Vote Tabulation.<br>• Findings of Fact and Conclusions of Law. |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| August 8, 2022 | Virtual Pretrial conference. |
| August 15, 2022 | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| August 17-18, 2022 | Confirmation Hearing |

9. ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond Classes) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10. ***Voting Deadline.*** The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11. If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

12. ***Election Deadline***. The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline"). If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to ***actually effectuate*** your election through DTC's ATOP on or before the Election Deadline.

13. ***Parties in Interest Not Entitled to Vote.*** Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14. Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);
- Class 19 (Convenience Claims).

15. If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan. Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16. If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18. ***Parties Who Will Not Be Treated as Creditors***. Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (https://pacer.uscourts.gov) password and login are needed to access documents on the Court's website.

20. ***Bankruptcy Rules 2002(c)(3) and 3016(c).*** **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 41.2 – Discharge and Release of Claims and Causes of Action**:

(a) **Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distrib-**

*continue reading on the next page►*

Legal Notice (Page 2 of 3)

uted or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor. Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan. For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c) Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the HTA Plan.

(d) SEC Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

(e) United States Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor. Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

(f) Underwriter Actions. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of set-off or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

Section 41.3 – Injunction on Claims: Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

Section 41.5 – Releases by the Debtor and Reorganized HTA: Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.

Section 41.6 – Injunction Related to Releases: As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order. For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.

Section 41.7 – Exculpation:

(a) Government Parties: The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.

(b) HTA/CCDA PSA Creditors: Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c) Monoline Insurers: Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).

(d) Creditors' Committee: Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document pro-

continue reading on the next page►

Legal Notice (Page 3 of 3)

**vided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(e) The DRA Parties: Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation: Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.**

**Section 41.9 – Bar Order: To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).**

**Section 41.11 – Supplemental Injunction: Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022, San Juan, Puerto Rico

Respectfully submitted, /s/ Brian S. Rosen, Martin J. Bienenstock (*pro hac vice*), Brian S. Rosen (*pro hac vice*), **PROSKAUER ROSE LLP,** Eleven Times Square, New York, NY 10036, *Attorneys for the Financial Oversight and Management Board as representative for the Debtor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, USDC No. 215205, **O'NEILL & BORGES LLC,** 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3] All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

[4] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Grow your municipal finance workforce.

- Analyst
- Associate
- Bond counsel
- Municipal advisor
- Managing director
- Municipal trader
- Broker-dealer
- Investment banker
- Trustee

Among others....

**Leverage *The Bond Buyer*'s extensive municipal bond market reach.**

**To place a job posting, contact Wei-Ke (Victor) Kuo at**
1-212-803-8612 or wei-ke.kuo@arizent.com

Case:17-03566-LTS Doc#:1247 Filed:08/08/22 Entered:08/08/22 12:09:24 Desc:
Debtors Ex. 57 (Part 2 of 2) Page 14 of 101

# Exhibit C

***Caribbean Business***

**(June 30, 2022)**

Latin Media House

PO BOX 11472
San Juan, PR 0922-1472

**AFFIDAVIT OF PUBLICATION**

In the city of San Juan, Puerto Rico, on July 26th, 2022, Mariecruz Ortiz representing Latin Media House, LLC., hereby certify that in our newspaper of Caribbean Business for the edition dated June 30th of the present year, was published:

***THE COMMONWEALTH OF PUERTO RICO***

Signed: ___________________________________

Mariecruz Ortiz
Manager

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br>Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>Debtor. | PROMESA<br>Title III<br>No. 17 BK 3567-LTS |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. ***Approval of Disclosure Statement.*** By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**

**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
**(844) 822-9231 (toll free for U.S. and Puerto Rico)**
**(646) 486-7944 (for international callers)**

**Email: puertoricoinfo@primeclerk.com**

Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2. Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

a. Be in writing, in English, and signed;

b. State the name, address, and nature of the Claim of the objecting or responding party;

c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;

d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time).**

i. If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767

so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and

e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8. ***Confirmation and Discovery Timetable and Deadlines***. The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

| **Summary of Certain Deadlines** | |
|---|---|
| **July 1, 2022** | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "Fact Witness Lists"). |
| | Deadline for Parties to file opening expert disclosures ("Opening Expert Disclosures"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("Production Requests"). Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests. Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| **July 8, 2022** | Deadline for Parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| **July 12, 2022** | Deadline for Parties to file opening expert reports ("Opening Expert Reports"), if any. If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("Notices of Deposition") (all parties are limited to a seven (7)-hour time limit for depositions). |
| **July 18, 2022** | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| **July 20, 2022** | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| **July 22, 2022** | Completion of expert discovery (the "Expert Discovery Deadline"). |
| **July 25, 2022** | Deadline for Parties to file Daubert motions and motions *in limine.* |
| **July 27, 2022** | Deadline for:<br>• Objections to confirmation of the Plan ("Objections").<br>• Objections to Proposed Confirmation Order. |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| **July 29, 2022** | Deadline for Parties to file oppositions to Daubert motions and motions *in limine.* |
| **August 1, 2022** | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| **August 3, 2022** | Deadline for Parties to file replies in support of Daubert motions and motions *in limine.* |
| **August 4, 2022** | Deadline for Parties to file objections to counter-designations |
| **August 7, 2022** | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation.<br>• Omnibus reply to objections to confirmation and proposed confirmation order.<br>• Witness Declarations & Vote Tabulation.<br>• Findings of Fact and Conclusions of Law. |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| **August 8, 2022** | Virtual Pretrial conference. |
| **August 15, 2022** | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| **August 17-18, 2022** | Confirmation Hearing |

9. ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond Classes) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10. ***Voting Deadline.*** The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11. If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

12. ***Election Deadline***. The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline"). If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to ***actually effectuate*** your election through DTC's ATOP on or before the Election Deadline.

13. ***Parties in Interest Not Entitled to Vote.*** Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14. Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);
- Class 19 (Convenience Claims).

15. If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan. Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16. If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18. ***Parties Who Will Not Be Treated as Creditors***. Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (https://pacer.uscourts.gov) password and login are needed to access documents on the Court's website.

20. ***Bankruptcy Rules 2002(c)(3) and 3016(c)).*** **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

Section 41.2 – Discharge and Release of Claims and Causes of Action:

(a) **Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor. Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan. For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.**

**(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.**

**(c) Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released**

*continue reading on the next page*►

**Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the HTA Plan.**

**(d) SEC Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.**

**(e) United States Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor. Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).**

**(f) Underwriter Actions. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.**

**Section 41.3 – Injunction on Claims: Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.**

**Section 41.5 – Releases by the Debtor and Reorganized HTA: Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.**

**Section 41.6 – Injunction Related to Releases: As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order. For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.**

**Section 41.7 – Exculpation:**

**(a) Government Parties: The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.**

**(b) HTA/CCDA PSA Creditors: Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(c) Monoline Insurers: Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).**

**(d) Creditors' Committee: Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(e) The DRA Parties: Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation: Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.**

**Section 41.9 – Bar Order: To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).**

**Section 41.11 – Supplemental Injunction: Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022, San Juan, Puerto Rico

Respectfully submitted, */s/ Brian S. Rosen*, Martin J. Bienenstock (*pro hac vice*), Brian S. Rosen (*pro hac vice*), **PROSKAUER ROSE LLP,** Eleven Times Square, New York, NY 10036, *Attorneys for the Financial Oversight and Management Board as representative for the Debtor* -and- */s/ Hermann D. Bauer*, Hermann D. Bauer, USDC No. 215205, **O'NEILL & BORGES LLC,** 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3] All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

[4] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

# CARIBBEAN BUSINESS

THURSDAY, JUNE 30-JULY 6, 2022 | VOL. 8 EDITION 25 | ©2022 LATIN MEDIA HOUSE | CARIBBEANBUSINESS.COM | WEEKLY $2.99

TOP STORY / PAGE 4

## Act 154 Substitute Bill Set to Pass

Eyes on Fine Print at US Treasury

LEAD STORY / PAGE 5

## Political Will Absent on CRIM

Robust Oversight Lacking on Property Tax

# Glass More Than Half Empty

Drought Comes Back to the Fore

FULL STORY ON PAGE

SWAIN'S WORLD / PAGE 7

## Oversight Board to Impose Own Budget—Again

# Exhibit D

***El Nuevo Herald***

**(June 30, 2022)**



State of Florida July 20, 2022
County of Monroe, Dade and Broward

I *Matthew Weisberg* Being Duly Sworn on oath say he is and during all times herein stated has been the publisher's designated agent of the publication known as ***EL Nuevo Herald*** has full knowledge of the facts herein stated as follows:

The run of paper advertisement (ROP) in the Main section A of EL nuevo Herald for:

Tribunal De Los Estados Unidos Para El Distrito De Puerto Rico

Promes Tituli 111 Num. 17 BK 3283-LTS
(Administrado de manera conjunta)

Promesa Titulo 111 Num. 17 BK 3567-LTS

was distributed to Publishers full circulations (EL Nuevo Herald)

- On the 30th day of June 2022.
- On the 6th day of July 2022.
- On the 20th day of July 2022.

By: *Matthew Weisberg*

Subscribed and sworn to before me this 20th day of July, 2022

3511 NW 91 Avenue, Miami, FL 33172 | *********@miamiherald.com | www.miamiherald.com | www.elnuevoherald.com

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante de
ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,
Deudores.

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante de la
AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO,
Deudor.

PROMESA
Título III
Núm. 17-BK-3283-LTS
(Administrada de manera conjunta)

PROMESA
Título III
Núm. 17 BK-3567-LTS

**NOTIFICACIÓN (I) DE LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA VISTA DE CONFIRMACIÓN DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE VOTACIÓN SOBRE EL PLAN DE AJUSTE Y LA CELEBRACIÓN DE DETERMINADAS ELECCIONES DENTRO DE SU MARCO**

Si tiene usted derecho de voto o si elegir una opción con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.

**FECHA LÍMITE DE VOTACIÓN Y ELECCIÓN: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**

FECHA LÍMITE PARA OBJECIONES: 5:00 p.m. (hora estándar del Atlántico del 27 de julio de 2022

VISTA DE CONFIRMACIÓN: 17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)
Consulte las fechas límites adicionales más adelante.

[The remainder of this notice consists of dense multi-column legal text in Spanish, including sections on the aprobación de la Declaración de divulgación, la Vista de confirmación, tables of claim classifications, and procedural deadlines, which is too small to reproduce with confidence.]

# Exhibit E

***El Diario NY***

**(June 30, 2022)**



EL CAMPEON DE LOS HISPANOS
EL DIARIO
LA PRENSA
WWW.ELDIARIONY.COM

an impreMedia company

**Affidavit of Publication State of New York County of New York, ss: The undersigned, Esperanza Ruiz, is an Account Executive of EL DIARIO/LA PRENSA** a company of Impremedia, located at 41Flatbush Avenue, 1 Fl., Brooklyn, NY 11217

This is a daily newspaper published in **New York State.** The legal notice of **The Commonwealth of Puerto Rico – TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO** was published in said newspaper as set forth below or in the annexed exhibit.

This newspaper has been designated by the Clerk of New York County for this purpose.

**Said Notice was published on:**

**Thursday, June 30, 2022**
**Wednesday, July 6, 2022**
**Wednesday, July 20, 2022**

**Subscribed and sworn to before me this**

**day** 22 **of** July 2022

[signature]
Esperanza Ruiz
Account Executive

[signature]
**Notary Public, New York County, N.Y.**

XING YI JOLLY WANG
Notary Public - State of New York
No. 01WA6367075
Qualified in Queens County
My Commission Expires 11/13/2025

## Aviso Público (página 1 de 2)

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

En el asunto de:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

como representante de

ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,
Deudores.[1]

PROMESA
Título III
Núm. 17 BK 3283-LTS
(Administrado de manera conjunta)

En el asunto de:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

como representante de la

AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO,
Deudor.

PROMESA
Título III
Núm. 17 BK 3567-LTS

**NOTIFICACIÓN DE (I) LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA VISTA DE CONFIRMACIÓN DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE VOTACIÓN SOBRE EL PLAN DE AJUSTE Y LA CELEBRACIÓN DE DETERMINADAS ELECCIONES DENTRO DE SU MARCO**

Si tiene usted derecho de voto o a elegir una opción con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.

**FECHA LÍMITE DE VOTACIÓN Y ELECCIÓN: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**

**FECHA LÍMITE PARA OBJECIONES: 5:00 p.m. (hora estándar del Atlántico del 27 de julio de 2022**

**VISTA DE CONFIRMACIÓN: 17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**

**Consulte fechas límites adicionales más adelante.**

Para cualquier consulta relativa a esta notificación, sírvase ponerse en contacto con Kroll Restructuring Administration LLC ("Kroll")[2] a través del teléfono (844) 822-9231 (gratuito para EE.UU. y Puerto Rico), o bien al (646) 486-7944 (para llamadas internacionales). El horario de atención es desde las 10:00 a.m. hasta las 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien al correo electrónico puertoricoinfo@primeclerk.com.

**SÍRVASE TOMAR NOTA DE LO SIGUIENTE:**

1. **Aprobación de la Declaración de divulgación.** Mediante la orden de fecha 22 de junio de 2022 (la "Orden de Declaración de divulgación"), el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "Tribunal") aprobó como adecuada la información contenida en la *Declaración de divulgación de la Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según pueda ser modificada o enmendada, incluyendo todos los anexos y documentación adjuntos a la misma, la "Declaración de divulgación"), registrada por la Junta de Supervisión y Administración Financiera de Puerto Rico, que autoriza al Deudor a solicitar votos con respecto a la aceptación o rechazo de la *Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según la misma pueda ser enmendada o modificada, incluyendo todos los anexos y complementos de la misma, el "Plan"), adjunta como **Anexo A** a la Declaración de divulgación.

Podrá solicitar una copia impresa del Plan y de la Declaración de divulgación, incluyendo sus correspondientes traducciones al español, al Agente de votación, Kroll Restructuring Administration LLC (anteriormente denominado Prime Clerk LLC):
Teléfono (de 10:00 a.m. a 7:00 p.m. (AST)) (disponible en español):
(844) 822-9231 (gratuito en EE.UU. y Puerto Rico)
(646) 486-7944 (para llamadas internacionales)
Correo electrónico: puertoricoinfo@primeclerk.com
Alternativamente, puede acceder a las copias electrónicas de la Declaración de divulgación y del Plan visitando el sitio https://cases.primeclerk.com/puertorico/.

2. De conformidad con la Orden de la Declaración de divulgación, el Deudor enviará los materiales necesarios para votar por la aceptación o rechazo del Plan, o para elegir opciones en materia de las distribuciones propuestas (el "Paquete de convocatoria") a los titulares de Reclamaciones de las siguientes Clases (denominadas colectivamente "Clases con derecho a voto"):

| | Clase |
|---|---|
| Reclamaciones de Bonos 68 de la ACT | Clase 1 |
| Reclamaciones de Bonos 68 de la ACT (Ambac) | Clase 2 |
| Reclamaciones de Bonos 68 de la ACT (Assured) | Clase 3 |
| Reclamaciones de Bonos 68 de la ACT (National) | Clase 4 |
| Reclamaciones de Bonos Senior 98 de la ACT | Clase 5 |
| Reclamaciones de Bonos Senior 98 de la ACT (Ambac) | Clase 6 |
| Reclamaciones de Bonos Senior 98 de la ACT (Assured) | Clase 7 |
| Reclamaciones de Bonos Senior 98 de la ACT (FGIC) | Clase 8 |
| Reclamaciones de Bonos Senior 98 de la ACT (National) | Clase 9 |
| Reclamaciones de Bonos subordinados 98 de la ACT | Clase 10 |
| Reclamaciones de Bonos subordinados 98 de la ACT (Assured) | Clase 11 |
| Reclamaciones de Bonos subordinados 98 de la ACT (FGIC) | Clase 12 |
| Reclamaciones de Bonos subordinados 98 de la ACT (National) | Clase 13 |
| Reclamaciones de Dominio eminente/Expropiación forzosa inversa | Clase 14 |
| Reclamaciones generales no garantizadas de la ACT | Clase 15 |
| Reclamaciones de la ACT/BGF | Clase 17 |
| Reclamaciones federales | Clase 20 |

3. **Vista de confirmación.** Una vista para considerar la confirmación del Plan (la "Vista de confirmación") se celebrará ante la Honorable Laura Taylor Swain, del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (o según se determine en virtud de una orden del Tribunal), el **17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**.

a. La Vista de confirmación podrá ser continuada periódicamente por la Junta de Supervisión, sin necesidad de notificaciones adicionales o mediante los aplazamientos anunciados durante las sesiones, o bien indicados en cualquier notificación de orden del día de asuntos a tratar programado para la vista y presentada ante el Tribunal, y el Plan podrá ser modificado, si fuera necesario, antes, durante o como resultado de la Vista de confirmación, de conformidad con las cláusulas de modificación del Plan y de la Regla local 3016-2, sin necesidad de notificación adicional a las partes interesadas.

4. **Depositario de Confirmación del Plan.** La información relativa a la confirmación del Plan está disponible en línea en el sitio del Depositario de Confirmación del Plan, titleiiiplandataroom.com.

5. **Fecha límite para objeciones a la confirmación.** El Tribunal ha establecido las **5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022** (la "Fecha límite de objeción a la confirmación"), como fecha límite para registrar objeciones o respuestas a la confirmación del Plan propuesto. Las partes que no presenten una objeción al Plan antes de la Fecha límite de objeción a la confirmación tendrán prohibido hacer presentaciones orales antes el Tribunal durante la Vista de confirmación.

7. **Objeciones y respuestas a la confirmación.** Las objeciones y respuestas a la confirmación del Plan deberán:

a. Presentarse por escrito, en inglés, y estar firmadas;

b. Indicar el nombre, dirección y naturaleza de la Reclamación de la parte objetora o replicante;

c. Indicar específicamente el fundamento y naturaleza de la Reclamación de cualquier objeción o respuesta, e incluir, si procediese, el texto propuesto para insertar en el Plan, con el objeto de resolver dicha objeción o respuesta;

d. Presentarse ante el Tribunal en los expedientes de la Autoridad de Carreteras y Transportación de Puerto Rico, Caso núm. 17 BK 3567-LTS, y (ii) en el asunto del Estado Libre Asociado de Puerto Rico, Caso núm. 17 BK 3283-LTS, a través del sistema de presentación de casos del Tribunal, en formato de documento portátil con función de búsqueda **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**.

e. Si no es usted abogado registrado como usuario en el sistema de presentación de casos del Tribunal, podrá enviar su objeción por correo postal a la oficina de la Secretaría del Tribunal:
Tribunal de Distrito de Estados Unidos, Secretaría
150 Avenida Carlos Chardón, Suite 150,
San Juan, P.R. 00918-1767
para que sea recibida **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**; y

e. Cursarla a la Oficina del Fideicomisario de los Estados Unidos para el Distrito de Puerto Rico, Edificio Ochoa, Calle Tanca 500, Suite 301, San Juan, PR 00901 (ref: En el asunto de: Autoridad de Carreteras y Transportación de Puerto Rico), para que sea recibida como más tardar en la Fecha límite de objeción a la confirmación.

8. **Calendario y fechas límite de confirmación e indagatoria.** El Tribunal ha establecido las siguientes fechas y plazos límite para indagatorias, que serán aplicables al Deudor y a otras partes interesadas:

**Resumen de ciertas fechas límite**

| | |
|---|---|
| 1 de julio de 2022 | Fecha límite para que las Partes registren una lista de testigos de hechos, detallando los temas acerca de los cuales testificará cada uno de ellos (las "Listas de testigos de hecho"). |
| | Fecha límite para que las partes registren las declaraciones iniciales de peritos ("Declaraciones iniciales de peritos"), si las hubiere. |
| 8 de julio de 2022 | Fecha límite para que las Partes cursen solicitudes de procedimiento que no estén bajo custodia del Depositario (las "Solicitudes de presentación"). Las respuestas y objeciones a las citadas Solicitudes de presentación podrán cursarse dentro de un plazo de siete (7) días desde la recepción de dichas Solicitudes. Las Partes podrán cursar hasta una ronda adicional de Solicitudes de presentación, siempre y cuando se haga en o antes del 11 de julio de 2022. |
| | Fecha límite para que las Partes cursen hasta quince (15) interrogatorios ("Interrogatorios"), incluyendo las subpartes. Las respuestas y objeciones a los citados Interrogatorios podrán cursarse dentro de un plazo de siete (7) días desde la recepción de dichos Interrogatorios. |
| 12 de julio de 2022 | Fecha límite para que las partes registren los informes periciales iniciales ("Informes periciales iniciales"), si los hubiera. Si se presenta algún Informe pericial inicial, las refutaciones a las divulgaciones de expertos deberán presentarse en un plazo de tres (3) días desde dicha presentación, y las respuestas a dichas refutaciones se presentarán cinco (5) días después de las divulgaciones. |
| | Fecha límite para que las partes cursen las notificaciones de declaraciones juradas, temas y horarios solicitados para las mismas ("Notificaciones de declaraciones juradas") Dudas las partes estarán limitadas a un límite de siete (7) horas para declaraciones juradas). |
| 18 de julio de 2022 | Fecha límite para que las Partes cursen solicitudes de admisión, limitadas a la autenticación de documentos ("Solicitudes de Admisión"). Las respuestas y objeciones a las citadas Solicitudes de Admisión podrán cursarse dentro de un plazo de cuatro (4) días laborables desde la recepción de dichas Solicitudes de Admisión. |
| 20 de julio de 2022 | Conclusión de la indagatoria de hechos (la "Fecha límite de indagatoria de hechos"). |
| | Fecha límite para que el Deudor registre la propuesta de Orden de confirmación (la "Propuesta de Orden de confirmación"). |
| 22 de julio de 2022 | Conclusión de la indagatoria de peritos (la "Fecha límite de indagatoria de peritos"). |
| 25 de julio de 2022 | Fecha límite para que las partes presenten mociones Daubert y mociones in limine. |
| 27 de julio de 2022 | Fecha límite para:<br>• Objeciones a la confirmación del Plan ("Objeciones").<br>• Objeciones a la Propuesta de Orden de confirmación.<br>• Fecha límite de votación / Fecha límite de elección<br>Fecha límite para que las partes registren las listas de testigos, las listas de pruebas y las designaciones de declaraciones juradas definitivas. |
| 29 de julio de 2022 | Fecha límite para que las partes presenten oposiciones a las mociones Daubert y mociones in limine. |
| 1 de agosto de 2022 | Fecha límite para que las partes presenten (a) objeciones a las listas de pruebas y (b) designaciones de declaraciones juradas y (b) designaciones opuestas. |
| 3 de agosto de 2022 | Fecha límite para que las partes presenten sus respuestas en apoyo de las mociones Daubert y las mociones in limine. |
| 4 de agosto de 2022 | Fecha límite para que las Partes presenten objeciones a las designaciones opuestas. |
| 7 de agosto de 2022 | Fecha límite para que el Deudor presente:<br>• Memorando de ley en apoyo de la confirmación.<br>• Réplicas generales a las objeciones a la confirmación y a la propuesta de orden de confirmación.<br>• Declaraciones de testigos y recuento de votos.<br>• Antecedentes de hecho y conclusiones de derecho.<br>• Réplicas finales para no deudores presentación de testigos. |
| 8 de agosto de 2022 | Conferencia virtual previa al juicio. |
| 15 de agosto de 2022 | Fecha límite para que las Partes presenten sus Antecedentes de hecho |
| 17-18 de agosto de 2022 | Vista de confirmación |

9. **Fecha de registro de votación.** La Fecha de registro de votación será el **17 de junio de 2022** (la "Fecha de registro de votación"), que será la fecha para determinar cuáles titulares de Reclamaciones de las Clases con derecho a voto (excepto las Clases de bonos) tienen derecho a votar a favor o en contra del Plan. Por consiguiente, solamente podrán votar a favor o en contra del Plan los acreedores de una Clase con derecho a votar por el Plan que mantenga Reclamaciones contra el Deudor antes de las Clases de bonos) a la Fecha de registro de votación.

10. **Fecha de votación.** La fecha límite para votar a favor o en contra del Plan es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicho plazo sea prorrogado (la "Fecha límite de votación"). Usted no está obligado a votar a favor o en contra del Plan para percibir distribuciones de conformidad con los términos y condiciones del Plan, si este es confirmado por el Tribunal, siempre y cuando sea titular de una Reclamación permitida.

11. Si recibió un Paquete de convocatoria, incluyendo una Papeleta o Notificación, y tiene previsto ejercitar su voto sobre el Plan, **deberá** (a) atenerse estrictamente a las instrucciones; (b) cumplimentar **todos** los datos requeridos en la Papeleta (según proceda); y (c) o bien (i) ejecutar y devolver la Papeleta cumplimentada de conformidad con las instrucciones de votación incluidas en el Paquete de convocatoria, de modo que su Papeleta sea **efectivamente recibida** por el Agente de convocatoria del Deudor, Kroll Restructuring Administration LLC ("Kroll", o el "Agente de votación")" como más tardar en la Fecha límite de votación, o bien (ii) ordenar a su intermediario o persona designada (cada uno de ellos, una "Persona designada") que envíe electrónicamente una Papeleta maestra a través del Programa Automatizado de Oferta de Presentación ("ATOP") en The Depository Trust Company ("DTC") en función de su deseo de votar para aceptar o rechazar el Plan en o antes de la Fecha límite de votación. **El incumplimiento de estas instrucciones puede hacer que su voto sea descalificado.**

12. **Fecha límite de elección.** La fecha límite para que los tenedores de Reclamaciones de Bonos elegibles que tengan derecho a elegir la forma de distribución según el Plan realicen dicha elección es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo si dicho plazo es prorrogado (la "Fecha límite de elección"). Si ha recibido una Notificación con la opción de hacer una elección **deberá** (a) atenerse estrictamente a las instrucciones; (b) cumplimentar **todos** los datos requeridos en las instrucciones de elección, de modo que sean **efectivamente** recibidas por su Persona designada con suficiente antelación para que esta pueda **ejecutar efectivamente** su elección a través del sistema ATOP de DTC como más tardar en la Fecha límite de elección.

13. **Partes interesadas sin derecho a voto.** Se considera que los acreedores de la Clase 18 (Reclamaciones subordinadas de la Sección 510(b)) rechazan el Plan, por lo cual no tienen derecho de votar.

14. Se considera que los siguientes Clases aceptan el Plan, por lo cual no tienen derecho de votar:
• Clase 14 (Reclamaciones de Bonos Moscoso de la ACT);
• Clase 19 (Reclamaciones de convivencia).

15. Si una Reclamación está incluida en la Lista de acreedores del Deudor (Registro en el expediente judicial núm. 2163 en el Caso núm. 17-3283) como contingente, no liquidada o impugnada, y (i) no se registró una evidencia de reclamación en la Fecha de registro de votación (según procede); o (ii) no se registró una evidencia de reclamación en la Fecha de registro de votación (según procede); o (iii) considerada debidamente registrada por orden del Tribunal antes de la Fecha límite de votación, dicha reclamación no tendrá derecho a votar por la aceptación o rechazo del Plan. Tampoco las prueba de reclamación presentadas por $0.00 o aquellas desestimadas por orden del Tribunal tendrán derecho de

voto.

16. Si usted ha presentado oportunamente una evidencia de reclamación y no está de acuerdo con la clasificación del Deudor, la objeción a la solicitud de estimación de su Reclamación y crea que deberá tener derecho a votar sobre el Plan, debe notificarlo al Deudor y a las partes enumeradas en el apartado 16 de la Orden de Declaración de divulgación y presentar ante el Tribunal (con copia al Despacho de la juez) una moción (una "Moción conforme a la Regla 3018(a)") para obtener una orden a tenor de la Regla 3018 2019 de las Reglas Federales de Procedimiento de Quiebra (las "Reglas de Quiebra") que permita de forma provisional su Reclamación por un monto diferente o una Clase diferente a los efectos de votar para aceptar o rechazar el Plan. Todas las Mociones de la Regla 3018(a) deben presentarse como más tardar décimo (10) día después de la que las siguientes fechas: (i) la notificación de esta Vista de Confirmación y (ii) la notificación de una objeción o solicitud de estimación, si la hubiera, en cuanto a dicha Reclamación, lo que más tarde se produzca. De acuerdo con la Regla Bankr 3018(a), en lo que respecta a cualquier acreedor que presente una Moción conforme a la Regla 3018(a), la Papeleta de dicho acreedor no se contabilizará, salvo que el Tribunal ordene lo contrario antes de la Fecha límite de votación (**27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**). Los acreedores podrán ponerse en contacto con el Agente de votación (i) a través de correo postal certificado o de un servicio de mensajería, dirigiéndose al Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (anteriormente conocida como Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) por teléfono llamando al (844) 822-9231 (gratuito en EE.UU. y Puerto Rico) o al (646) 486-7944 (llamadas internacionales), con atención de lunes a viernes en horario de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricoinfo@primeclerk.com. Papeleta adecuada para cualquier Reclamación para la que se haya presentado oportunamente una evidencia de reclamación y se haya aceptado una Moción conforme a la Regla 3018(a). Las Mociones de la Regla 3018(a) que no se hayan presentado a tiempo o en forma establecida en el presente no serán tenidas en cuenta.

17. Si desea que su Reclamación sea admitida provisionalmente a efectos de votación de conformidad con la Regla de Quiebras 3018(a), encontrará un formulario de la Regla 3018(a) con instrucciones para completar y presentar la moción en https://cases.primeclerk.com/puertorico/.

18. **Partes que no están indicadas para votar.** Si el titular de una Reclamación que (i) esté incluido en la Lista de Acreedores a $0.00 y que no sea objeto de una evidencia de Reclamación presentada a tiempo o de una evidencia de Reclamación que se considere presentada a tiempo y objeto de una evidencia de Reclamación presentada a tiempo y presentada en el Tribunal a tenor del Código de Quiebras de cualquier orden del Tribunal, o que se considere presentada a tiempo según la ley aplicable, o bien (ii) no esté programada y no sea objeto de una evidencia de reclamación presentada a tiempo o una evidencia de reclamación considerada como presentada a tiempo y objeto de una evidencia de reclamación considerada oportunamente a tiempo ante el Tribunal conforme al Código de quiebras o cualquier orden del Tribunal, y de otra manera considerada como presentada a tiempo conforme a la ley aplicable, no será tratado como un acreedor con potestad de reclamar por efectos de su recibir notificaciones sobre el Plan, y (b) votar sobre el Plan.

19. **Información adicional.** Cualquier parte interesada que desee obtener información sobre los procedimientos de convocatoria o copias de la Declaración de Divulgación o del Plan, incluyendo sus traducciones al español, debe ponerse en contacto con el Agente de votación, Kroll Restructuring Administration LLC, por teléfono llamando al (844) 822-9231 (llamada gratuita para EE.UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricoinfo@primeclerk.com, podrá ver todos documentos accediendo a https://cases.primeclerk.com/puertorico/ o al sitio web del Tribunal, https://www.prd.uscourts.gov/. Tenga en cuenta que se requiere una contraseña y credenciales de inicio de sesión para acceder a los documentos que figuran en el sitio web del Tribunal a través del Sistema de Gestión y Archivo de los Registros Electrónicos del Tribunal ("PACER, por sus siglas en inglés") (https://pacer.uscourts.gov).

20. **Reglas de Quiebra 2002(c)(3).** De acuerdo con las Reglas de Quiebra 2002(c)(3) y 3016(c), a continuación se ofrece una descripción de disposiciones de descargo, exculpación e interdicto contenidas en el Plan:

**Sección 41.2 – Exoneración y descargo de reclamaciones y causas de acción:**

(a) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio de, y en completa satisfacción, liquidación, exoneración y descargo de, todas las Reclamaciones o Causas de acción contra o Deudor y la ACT Reorganizada que surgieron, en todo o en parte, antes de la Fecha de vigencia de la ACT, en relación con las Clases Títulos III el Deudor, la ACT reorganizada o cualquiera de sus respectivos Activos, bienes o intereses de todo índole, incluidos los intereses devengados por dichas Reclamaciones en o a partir de la Fecha de petición de la ACT, e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan a causa de dichas Reclamaciones o Causas de acción; teniendo en cuenta, sin embargo, que, no obstante los derechos de exculpación establecidos en la Sección 41.7 del Plan de la ACT, nada de lo contenido en el Plan de la ACT o en la Orden de Confirmación de la ACT tiene la intención de ser, ni deberá ser interpretado, como un otorgamiento de una exención no consensuada a terceros de las Acreedores del AAP de la ACT/ADCC y sus respectivas Personas Vinculadas por parte de los Acreedores del Deudor. En la Fecha de vigencia de la ACT, el Deudor y la ACT reorganizada se considerarán exonerados y eximidos de todas y cada una de las Reclamaciones, Causas de acción y cualquier otra deuda generada, total o parcialmente, antes de la Fecha de vigencia de la ACT, y todas las Reclamaciones del tipo especificado en las secciones 502(g), 502(h) o 502(i) del Código de Quiebras, en la Sección 407 de la Ley PROMESA, ya sea o no (a) una evidencia de reclamación basada en tal deuda presentó o se consideró presentada conforme a la Sección 41.1 del Plan de la ACT, nada de lo contenido en el Plan de la ACT o la Orden de Confirmación de la ACT tiene por objeto ni deberá interpretarse como una exención del Código de Quiebras, (b) que se autorice dicha Reclamación conforme a la sección 502 del Código de Quiebras y la Sección 407 de la Ley PROMESA, ya sea o no (a) una evidencia de reclamación basada en tal deuda se presentó o se considere presentada conforme a la Sección 41.1 del Plan de la ACT, sea o no aceptada conforme al Título III de la Ley PROMESA, ya sea o no (c) el titular de una Reclamación basada en dicha deuda haya aceptado el Plan.

(b) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las Entidades estarán despedidas de hacer valer todas y cada una de las Reclamaciones contra el Deudor y la ACT reorganizada, y cualesquiera de sus respectivos Activos, bienes y derechos, recursos, Reclamaciones o Causas de acción o responsabilidades de todo índole, relacionadas con las Causas del Título III, el Deudor y la ACT reorganizada o cualquiera de sus respectivos Activos, bienes y derechos en base de cualquier documento, instrumento o orden judicial, acuerdo u otro acuerdo o alegación de cualquier índole relacionada con la circunstancia descrita o declarada en cualquiera de las anteriores, ya sea o no (a) una evidencia de reclamación basada en la cual se presente o se considere afirmada conforme a la Sección 41.1 del Plan de la ACT constituiría una determinación judicial, a la Fecha de vigencia de la ACT, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción o deuda, contra el Deudor y la ACT reorganizada a tenor de las Secciones 524 y 944 del Código de Quiebras, aplicable al caso de Título III conforme a la Sección 301 de la Ley PROMESA, y dicha exoneración anulará y extinguirá cualquier sentencia obtenida contra el Deudor y la ACT reorganizada y en cualquier momento, en la medida en que dicha sentencia esté relacionada con una Reclamación, deuda o responsabilidad que sea objeto de dicha exoneración. A la Fecha de vigencia de la ACT, y en consideración a las obligaciones del Deudor y la ACT reorganizada a tenor de la Sección 301 de la Ley PROMESA, y dicha exoneración anulará y extinguirá cualquier sentencia obtenida contra el Deudor y la ACT reorganizada, de cada uno de los tenedores de una Reclamación, así como sus respectivos Activos y bienes y cualquier interés de todo índole, se considerará que cada titular de una Reclamación, así como su respectiva persona vinculada, ha dado su consentimiento, por la totalidad de los alcances permitidos por la ley aplicable, incluyendo, entre otros, en las Acciones de recuperación (Clawback) y las Mociones de levantamiento de la paralización, y (ii) no ayudarán directa ni indirectamente a ninguna persona o entidad a realizar ninguna acción con respecto a las Reclamaciones exoneradas de Gobierno que se le prohíba por

(continúa en la página siguiente)

## Aviso Público (página 2 de 2)

*(continúa de la página anterior)*

**Sección 41.2 del Plan de la ACT.**

**(d) Limitación de la SEC. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que la SEC haga valer sus potestades en materia de políticas o reglamentos; ni (ii) impedir, limitar, perjudicar ni retrasar que la SEC incoe o prosiga reclamaciones, pleitos, procedimientos o investigaciones contra personas físicas o jurídicas no deudoras en ningún foro.**

**(e) Limitación de Estados Unidos. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que Estados Unidos o cualquiera de sus organismos, departamentos o agentes eximan de algún modo al Deudor o a la ACT reorganizada, según proceda, de cumplir las leyes y requisitos federales o territoriales que implementen programas federalmente autorizados o delegados para la protección de la salud, la seguridad y el medio ambiente de personas de dicho territorio, (ii) amplíe el ámbito de cualquier exoneración, exención o recurso a los cuales el Deudor o la ACT reorganizada tengan derechos de conformidad con el Título III, ni (iii) eximan, libren, impidan o prohíban de alguna manera (A) cualquier responsabilidad del Deudor o la ACT reorganizada ante Estados Unidos derivados de, y posteriores a, la Fecha de vigencia, (B) cualquier responsabilidad de cara a los Estados Unidos que no sea una Reclamación, (C) cualquier defensa afirmativa o cualquier derecho de compensación o recobro de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, reservándose expresamente dichos derechos de compensación y recobro de las citadas partes, (D) la continuidad de la validez de las obligaciones de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, en virtud de cualquier subsidio o acuerdo de asistencia cooperativa de Estados Unidos, (E) las obligaciones del Deudor o la ACT reorganizada derivadas de políticas, leyes o reglamentos federales, incluyendo, entre otros, leyes relativas al medio ambiente, la salud o la seguridad pública, o leyes territoriales que implementen dichas disposiciones legales federales, incluyendo, entre otros, obligaciones de cumplimiento normativo, requisitos de decretos de consentimiento o de órdenes judiciales, y obligaciones de pagar las correspondientes penalizaciones administrativas, civiles y de otra índole, (F) cualquier responsabilidad para con Estados Unidos de parte de cualquier no deudor. Sin que ello suponga una limitación a la generalidad de lo antedicho, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT podrá considerarse (i) una determinación de la obligación tributaria de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (ii) vinculante para el IRS con respecto a las obligaciones tributarias federales, estatus fiscal u obligaciones de declaración y retención de impuestos de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (iii) una exención, satisfacción, excepción ni prohibición de cualquier recaudación reclamada por el IRS contra cualquier entidad que no sean el Deudor y la ACT reorganizada, y (iv) otorgar ninguna exención a ninguna Entidad que el Tribunal tenga prohibido por la Ley de Sentencias Declaratorias, 28 U.S.C. § 2201(a) o la Ley contra Medidas Cautelares aplicables a impuestos, 26 U.S.C. § 7421(a).**

**(f) Actuaciones de las aseguradoras. No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT o en la Orden de confirmación de la ACT, incluyendo, entre otros, las Secciones 41.2, 41.3 y 41.11 del Plan de la ACT, salvo que pueda ser impedida a tenor de las cláusulas de la Ley PROMESA, nada de lo contenido en el Plan de la ACT, la Orden de confirmación de la ACT o cualquier otro documento relacionado con el Plan de la ACT o en el Suplemento de la ACT, tiene por objeto, ni podrá interpretarse como dirigido a, perjudicar, alterar, modificar, disminuir, prohibir, impedir, restringir, limitar, eximir, reducir, eliminar o limitar los derechos de los demandantes y demandados, incluyendo, entre otros, las partes de las Acciones de las aseguradoras, de hacer valer sus respectivos derechos, reclamaciones, causas de acción y defensas en dichas Acciones, incluyendo, entre otros, las Reclamaciones, defensas, causas de acción y derechos de compensación o recobro (en la medida en que estuvieran disponibles), o cualesquiera otros derechos de determinación de responsabilidad u otros fundamentos para la reducción de (o acreditación contra) cualquier sentencia relacionada con las Acciones de las aseguradoras (en conjunto, los "Derechos de defensa"); aunque siempre en el bien entendido de que, a efectos de disipar cualquier duda, bajo ninguna circunstancia podrá utilizarse alguno de los Derechos de defensa para obtener o conseguir el pago afirmativo de dinero o el traspaso afirmativo de bienes a algún demandante, demandado o, en la medida en que proceda, demandado tercero, por parte del Deudor, de la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otra agencia u organismo del mismo, en relación con una Acción de aseguradora, y asimismo siempre y cuando a ninguna de las partes de estas Acciones, incluyendo, entre otros, demandantes, demandados y, si los hubiera, demandados terceros, se le permita incoar: (i) contra el Deudor o la ACT reorganizada, ninguna Reclamación o Causa de acción con el objeto de obtener un recobro monetario afirmativo que, de otro modo, esté excluida o desestimada como consecuencia de las Órdenes de Fecha límite, el Plan de la ACT y/o la Orden de confirmación de la ACT; y/o (ii) contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier organismo o agencia del mismo, cualesquiera Reclamaciones o contrarreclamaciones a efectos de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, planteadas con el objeto de obtener un recobro monetario afirmativo, Reclamaciones o contrarreclamaciones que serán consideradas desautorizadas, desestimadas, exoneradas o restringidas de conformidad con los términos y disposiciones del Plan de la ACT y la Orden de confirmación de la ACT; entendiéndose asimismo que nada de lo contenido en la Orden de confirmación de la ACT tiene por objeto, ni deberá interpretarse como un intento de, prohibir, excluir, vetar, modificar o limitar en modo alguno la capacidad de cualquier demandado de una Acción de aseguradora de plantear Derechos de defensa para reducir, eliminar o limitar la cuantía de cualquier responsabilidad o sentencias de la Acción de una aseguradora. Las partes de las Acciones de aseguradoras estarán permanentemente excluidas, restringidas, prescritas y limitadas para emprender, incoar o demandar contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otro organismo o agencia del mismo, Reclamaciones o contrarreclamaciones con el objeto de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, en la medida en que se planteen con el objetivo de conseguir un recobro monetario afirmativo basado en, derivado de o relacionado con, las Acciones de aseguradoras, tanto si dicha Reclamación o contrarreclamación pueda incoarse como si no ante un tribunal, un arbitraje, una agencia o foro administrativo, o de cualquier otra manera.**

**Sección 41.3 – Interdicto sobre las Reclamaciones:**

**Salvo que se disponga expresamente lo contrario en el Plan de la ACT, en la Orden de confirmación de la ACT o en cualquier otra Orden final del Tribunal del Título III que pudiera ser aplicable, todas las Entidades que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor con la Sección 41.2 del Plan de la ACT o que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor de la Sección 41.2 del Plan de la ACT tienen permanentemente prohibido, en o a partir de la Fecha de vigencia de la ACT, (a) incoar o continuar, directa o indirectamente, en cualquier modalidad, cualquier acción u otro procedimiento (incluyendo, entre otros, cualquier procedimiento judicial, arbitral, administrativo u otro) de toda índole sobre cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, (b) la ejecución, el embargo, el cobro o la recuperación por cualquier forma o medio de cualquier sentencia, laudo, decreto u orden contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT, (c) crear, perfeccionar o aplicar gravámenes de toda índole contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT; y (d) salvo en la medida en que se disponga, permita o preserve en las secciones 553, 555, 556, 559 o 560 del Código de Quiebras o conforme al derecho consuetudinario de recobro o de hacer valer cualesquiera derechos de compensación, subrogación o recuperación de toda índole con cargo cualquier obligación debida de cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, con respecto a cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT. Este interdicto se extenderá a todos los sucesores y cesionarios de las Partes exoneradas y sus respectivos activos y bienes.**

**Sección 41.5 – Exoneraciones del Deudor y de la ACT reorganizada:**

**Salvo que se disponga expresamente lo contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, en la Fecha de vigencia de la ACT, y a cambio de una contrapartida válida y valiosa, por la presente se considerará que tanto el Deudor como la ACT reorganizada, el Agente pagador y cada una de las Personas relacionadas del Deudor y la ACT reorganizada, han renunciado, exonerado, absuelto y relevado irrevocable, incondicional, plena y definitivamente y a perpetuidad, a las Partes exoneradas de todas y cada una de las Reclamaciones o Causas de acción que el Deudor, la ACT reorganizada y el Agente pagador, o cualquiera de ellos o que reclame a través de ellos, en su nombre o para su propio beneficio, tengan o pudieran tener o reclamar tener, ahora o en el futuro, contra cualquier Parte exonerada que sean Reclamaciones exoneradas.**

**Sección 41.6 – Interdictos relacionados con descargos:**

**A la Fecha de vigencia de la ACT, todas las Entidades que tengan, hayan tenido o puedan tener una Reclamación exonerada considerada como tal de conformidad con la Sección 41.2 del Plan de la ACT, quedan y quedarán, de manera permanente, completamente y para siempre, suspendidas, restringidas, prohibidas, vetadas y desestimadas para llevar a cabo cualquiera de las siguientes acciones, tanto directa como indirectamente, de forma derivada o de otra manera, por cuenta de, o fundamentándose en, el asunto de dichas Reclamaciones exoneradas: (i) incoar, emprender o continuar de cualquier modo, tanto directa como indirectamente, cualquier juicio, acción u otro procedimiento (lo que incluye, entre otros, cualquier procedimiento judicial, arbitral, administrativo o de otro tipo) en cualquier foro; (ii) ejecutar, incautar (lo que incluye, entre otros, cualquier embargo previo a la sentencia), cobrar o intentar de otro modo recobrar cualquier sentencia, laudo, decreto u otra orden; (iii) crear, perfeccionar o de cualquier otro modo aplicar en cualquier cuestión, directa o indirectamente, cualquier Gravamen; (iv) compensar, exigir reintegros, aportaciones o subrogaciones, o recuperar de cualquier otra manera, directa o indirecta, cualquier cuantía en concepto de cualquier pasivo u obligación adeudados a cualquier Entidad exonerada conforme a la Sección 41.2 del Plan de la ACT; e (v) iniciar y continuar de cualquier otro modo y lugar, un procedimiento judicial, de arbitraje o administrativo en cualquier foro, que no cumpla o no sea compatible con las disposiciones del Plan de la ACT o de la Orden de confirmación de la ACT. Para evitar dudas, las siguientes estipulaciones se extinguirán con el registro de la Orden de confirmación de la ACT: (i) la Cuarta Estipulación enmendada entre el Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Suspensión de la prescripción y Orden de consentimiento [Caso núm. 173283-LTS, ECF núm. 15854] y sus enmiendas, y (ii) y sus enmiendas; y la Cuarta Estipulación enmendada y Orden de consentimiento entre los Deudores del Título III (salvo COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, actuando en nombre de las entidades gubernamentales enumeradas en el Apéndice "B" en relación con la Suspensión de la prescripción [Caso núm. 17-3283-LTS, ECF núm. 17394] y sus enmiendas.**

**Sección 41.7 – Exculpación:**

**(a) Partes del Gobierno: La Junta de Supervisión, la AAFAF, el Deudor y cada una de las respectivas Personas Relacionadas, actuando exclusivamente en su calidad de tales en cualquier momento hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7 no afectarán las responsabilidades de cualquier Entidad que de otro modo hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa. Ninguna de las disposiciones anteriores de esta Sección 41.7 menoscabará el derecho de ninguna de las Partes del Gobierno, ni de los funcionarios y directivos de las Partes del Gobierno que cumplan funciones en cualquier momento hasta la Fecha de vigencia de la ACT inclusive, ni de cada uno de sus profesionales respectivos de recurrir al asesoramiento de un abogado como defensa respecto de sus deberes y responsabilidades en virtud del Plan de la ACT.**

**(b) Acreedores del AAP de ACT/ADCC: Cada uno de los Acreedores del AAP de ACT/ADCC, actuando exclusivamente en su calidad de tales como parte del Acuerdo de Apoyo al Plan de ACT/ADCC y un Acreedor y/o Aseguradora, según proceda, desde la Fecha de petición de la ACT y hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la mediación, negociación, formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, el Acuerdo de Apoyo al Plan de ACT/ADCC, los Documentos definitivos o cualquier contrato, instrumento, publicación o convenio o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7(b) no afectarán a las responsabilidades de cualquier Entidad que, de otro modo, hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa.**

**(c) Aseguradoras Monolínea: Ambac, Assured, FGIC, National y sus respectivas Personas relacionadas, no tendrán ni incurrirán en responsabilidad legal alguna ante ninguna Entidad por acciones u omisiones compatibles con el Plan de la ACT o en relación con la formulación, preparación, difusión, implementación, aceptación, confirmación o aprobación del Plan de la ACT, lo que incluye, entre otros, el tratamiento de las Reclamaciones de Bonos asegurados por Ambac, las Reclamaciones de Bonos asegurados por Assured, las Reclamaciones de Bonos asegurados por FGIC o las Reclamaciones de Bonos asegurados por National, los procedimientos de votación, los procedimientos de elección y cualquier descargo de obligaciones en virtud de las Pólizas de seguro de Ambac, las Pólizas de seguro de Assured, las Pólizas de seguro de FGIC o las Pólizas de seguro de National correspondientes, siempre en el bien entendido de que, no obstante cualquier otra disposición en sentido contrario aquí contenida, los términos y condiciones del Plan de la ACT no relevarán ni exculparán, ni se entenderá que relevan o exculpan, cualesquiera obligaciones de pago—a tenor de la Póliza de Seguro de Ambac, la Póliza de Seguro de Assured, la Póliza de Seguro de FGIC o la Póliza de Seguro de National—a cualquier titular usufructuario de Bonos asegurados por Ambac, Bonos asegurados por Assured, Bonos asegurados por FGIC o Bonos asegurados por National, según proceda, de conformidad exclusivamente con sus términos, en la medida en que dicho titular no reciba el Tratamiento de Ambac, el Tratamiento de Assured, el Tratamiento de FGIC o el Tratamiento de National, según corresponda (o cualesquiera reclamaciones que Ambac, Assured, FGIC o National pudiera plantear contra un titular usufructuario de sus bonos respectivamente asegurados en relación con las obligaciones asumidas por Ambac, Assured, FGIC o National en virtud de las Pólizas de Seguro de Ambac, las Pólizas de Seguro de Assured, las Pólizas de Seguro de FGIC o las Pólizas de Seguro de National, respectivamente).**

**(d) Comité de Acreedores: Cada uno de los miembros del Comité de Acreedores, exclusivamente en su calidad de miembro del Comité de Acreedores, desde la Fecha de petición de la ACT hasta la Fecha de vigencia de la ACT, inclusive, y cada una de las Personas relacionadas del Comité de Acreedores, no tendrán ni incurrirán en responsabilidad legal alguna ante cualquier Entidad por acciones u omisiones relacionadas con los Casos de Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT de cualquier compromiso o acuerdo contenido en este documento, la Declaración de divulgación de la ACT o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que, no obstante la exculpación precedente, en caso de que se emprenda contra un miembro del Comité de Acreedores un litigio vinculado con las acciones precedentes, cada miembro tendrá derecho a que se le reintegren honorarios y gastos legales razonables y a que se le indemnice por los daños adjudicados en cada caso, por la ACT como consecuencia de una Orden Final; y asimismo en el bien entendido de que las cláusulas precedentes de esta Sección 41.7(d) no afectarán a la responsabilidad de alguna Entidad que, de otro modo, conllevaría dicha acción u omisión, en la medida en que, en una Orden final, se determine que dicha acción u omisión constituyó fraude intencional o conducta dolosa.**

**(e) Las Partes de la ARD: Cada una de la ARD y las Partes de la ARD, desde la Fecha de Petición de la ACT hasta e incluyendo la Fecha de Entrada en Vigencia de la ACT y cada uno de los predecesores, sucesores y cesionarios respectivos de las Partes de la ARD (ya sea de oficio o de otra manera), y sus respectivos asesores financieros, abogados, contadores, consultores, agentes y profesionales, u otros representantes, cada uno actuando en tal capacidad, y cualquier Entidad que actúe para o en nombre de cada uno de ellos, en cada caso, únicamente en la medida de que actúen en tal capacidad, no tendrá ni incurrirá en ninguna responsabilidad ante ninguna Entidad por cualquier acto realizado u omitido en relación con el Caso de Título III, mediación, negociación, formación, preparación, diseminación, implementación, confirmación u aprobación del Plan de la ACT o cualquier transacción o conciliación contenido en estas, la Declaración de Divulgación, la Estipulación de la ARD, o cualquier contrato, instrumento, descargo u otro acuerdo o documento dispuesto o contemplado en relación con el perfeccionamiento de las transacciones estipuladas en el Plan de la ACT; siempre en el bien entendido de que las disposiciones anteriores de esta Sección 41.7 (e) no afectarán la responsabilidad de cualquier Entidad que resultaría de otra manera de dicho acto u omisión en la medida en que dicho acto u omisión estuviera determinado en una Orden Final como constituyente de fraude o conducta dolosa.**

**Sección 41.8 – Litigio relacionado con las designaciones:**

**No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT, en el caso de que se dictase una Orden final en relación con el Litigio relacionado con las designaciones o el Litigio de uniformidad con posterioridad a la emisión de la Orden de confirmación de la ACT, como contrapartida por las distribuciones efectuadas, que vayan a efectuarse o que se considerarán efectuadas de conformidad con los términos y disposiciones del Plan de la ACT y los documentos e instrumentos relacionados con el mismo, todos los Acreedores o las demás Entidades que reciban, o se considere que hayan recibido, distribuciones de conformidad con, o como resultado de, el Plan de la ATC, consienten y aceptan que dicha Orden final no revertirá, afectará ni modificará de ningún otro modo las transacciones contempladas en el Plan de la ACT y en la Orden de confirmación la ACT, lo cual incluye, entre otros, los descargos, exculpaciones e interdictos previstos en el Artículo XLI del Plan de la ACT; siempre en el bien entendido de que, en la medida en que una parte demandante del Litigio relacionado con las designaciones o del Litio de uniformidad sea parte del Acuerdo de Apoyo al Plan de GO/AEP, el Acuerdo de Apoyo al Plan de ACT/ADCC, el Acuerdo de Apoyo al Plan de la AFI o la Estipulación de SRE, en un plazo de cinco (5) días laborables desde la Fecha de vigencia del Plan de la ACT, dicho demandante adoptará todas y cada una de las medidas necesarias para que se desestimen, sin perjuicio—o, en el caso de que hubiera otros demandantes que fuesen partes de dichos litigios para, sin perjuicio, retirarse—de dichos Litigios relacionados con designaciones o Litigios de uniformidad, según proceda, incluyendo, entre otros, cursando notificaciones de desestimación o retirada a la Secretaría del Tribunal competente.**

**Sección 41.9 – Orden de prohibición:**

**Dentro de los límites que se estipulan en el Plan de la ACT, a todas y a cada una de las Entidades se les impide, prohíbe y restringe de manera permanente, instituir, emprender, tramitar o litigar de cualquier manera todas y cada una de las Reclamaciones, demandas, derechos, responsabilidades o causas de acción de cualquier índole, carácter o naturaleza, tanto en derecho como en equidad, conocidos o desconocidos, directos o indirectos y tanto alegados como si no, contra cualquiera de las Partes exoneradas, sobre la base de, relacionados con o derivados de o en relación con cualquiera de las Reclamaciones exoneradas, la confirmación y perfeccionamiento del Plan de la ACT, la negociación y perfeccionamiento del Acuerdo de Apoyo al Plan de ACT/ADCC o cualquier reclamación, actuación, hecho, transacción, incidencia, declaración u omisión en relación con, o alegada o que pudiera alegarse, en los Casos de Título III, lo cual incluye, entre otros, cualquier reclamación, demanda, derecho, responsabilidad o causa de acción a efectos de indemnización, contribución u otro fundamento de este tipo, en derecho o en equidad, por daños y perjuicios, costos u honorarios incurridos que derivados directa o indirectamente de los Casos de Título III o que estén relacionados con ellos de alguna otra manera, sea directa o indirectamente por cualquier Persona para beneficio directo o indirecto de cualquier Parte exonerada, derivado de, o relacionado con, las reclamaciones, actuaciones, hechos, transacciones, incidencias, declaraciones u omisiones que son, o podrían o pudieran ser alegados en las acciones relacionadas o cualquier otra acción iniciada, o que pudiera iniciarse por, a través de, en nombre de, o en beneficio de cualquiera de las Partes exoneradas (tanto de conformidad con leyes federales como estatales o extranjeras, e independientemente de dónde se aleguen).**

**Sección 41.11 – Interdicto complementario:**

**No obstante lo dispuesto en sentido contrario en el Plan de la ACT, y salvo dentro de los límites que se estipulan en el Plan de la ACT, todas las Entidades, incluidas las Entidades que actúan en su propio nombre, que actualmente mantengan o aleguen, o hayan mantenido o alegado, o pudieran mantener y alegar, cualquier Reclamación exonerada en contra de cualquiera de las Partes exoneradas basadas en, atribuibles a, derivadas de o relacionadas con, los Casos del Título III o cualquier Reclamación contra el Deudor, sea y dondequiera que se planteen o aleguen, tanto en EE. UU. como en cualquier otra parte del mundo, contractual o extracontractualmente, en virtud de alguna garantía, ley o cualquier otra teoría en derecho o equidad, o de cualquier otra índole, estará, y se considerará que está, permanentemente paralizada, restringida y prohibida de iniciar cualquier acción contra cualquiera de las Partes exoneradas a efectos de cobrar, recobrar o percibir, directa o indirectamente, cualquier pago o recobro con respecto a cualquier Reclamación exonerada que se planteara con anterioridad a la Fecha de vigencia de la ACT (incluso con anterioridad a la Fecha de petición de la ACT), incluyendo, entre otros:**

**(a) Iniciar o continuar de cualesquiera maneras, actuaciones u otros procedimientos de toda índole con respecto a dichas Reclamaciones exoneradas contra cualquiera de las Partes exoneradas o los activos o bienes de cualquiera de ellas;**

**(b) Ejecutar, incautar, cobrar o recobrar, de cualquier manera y por cualquier medio, sentencias, laudos, decretos u órdenes en contra de cualquiera de las Partes exoneradas, sus activos o bienes de estas, en relación a dichas Reclamaciones exoneradas;**

**(c) Establecer, perfeccionar o ejecutar prendas de toda índole contra cualquiera de las Partes exoneradas, sus activos o bienes, con respecto a dichas Reclamaciones exoneradas;**

**(d) Salvo que se estipule expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT, alegar, implementar o efectuar cualquier compensación, derecho de subrogación, indemnización, contribución o recobro de cualquier tipo contra cualquier obligación exigible a cualquiera de las Partes exoneradas, sus activos o bienes, vinculados con dichas Reclamaciones exoneradas; y**

**(e) Emprenden cualquier actuación, de la manera que fuera y en cualquier lugar, que no se ajuste al, o cumpla con las disposiciones del, Plan de la ACT o la Orden de confirmación de la ACT, en el bien entendido de que el hecho de que el Deudor cumpla los requisitos formales de la Regla de Quiebras 3016 no constituye una admisión de que el Plan de la ACT contempla cualquier interdicto en contra de una conducta que no esté de otro modo prohibida por el Código de Quiebras.**

Fecha: 23 de junio de 2022, San Juan, Puerto Rico

Presentado respetuosamente, /s/ Brian S. Rosen, Martin J. Bienenstock (admitido *pro hac vice*), Brian S. Rosen (admitido *pro hac vice*), **PROSKAUER ROSE LLP**, Eleven Times Square, Nueva York, NY 10036, *Abogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, Esq., USDC Núm. 215205, **O'NEILL & BORGES LLC,** 250 Avenida Muñoz Rivera, Suite 800, San Juan, P.R. 00918-1813, *Coabogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor*

[1] Los Deudores de estos Casos del Título III, conjuntamente con los números de casos del Título III de los respectivos Deudores y los cuatro (4) últimos dígitos del número de identificación tributaria federal de cada Deudor, según proceda, son (i) el Estado Libre Asociado de Puerto Rico (Caso de quiebra núm. 17-BK-3283-LTS) (cuatro últimos dígitos del número de identificación tributaria federal: 3481); (ii) Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra núm. 17-BK-3284-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 8474); (iii) Autoridad de Carreteras y Transportación de Puerto Rico ("ACT") (Caso de quiebra núm. 17-BK-3567-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico ("SRE") (Caso de quiebra núm. 17-BK-3566-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 9686); (v) Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") (Caso de quiebra núm. 17-BK-4780-LTS) (Caso de quiebra núm. 17-BK-4780-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3747); y (vi) Autoridad de Edificios Públicos de Puerto Rico ("AEP") (Caso de quiebra núm. 19-BK-5523-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3801) (los números de casos del Título III están enumerados como números de Casos de quiebra debido a las limitaciones del software).

[2] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

[3] Todos los términos en mayúsculas utilizados pero no definidos tendrán los significados atribuidos a los mismos en el Plan.

[4] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

971-111448-1

# Exhibit F

***El Nuevo Dia***

**<u>(June 30, 2022)</u>**

# TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

## AVISO PÚBLICO

NOTIFICACION DE (I) LA APROBACION DE LA DECLARACION DE DIVULGACION, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO (III) LA VISTA DE CONFIRMACION DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECION A LA CONFIRMACION DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LIMITE DE VOTACION SOBRE EL PLAN DE AJUSTE Y LA CELEBRACION DE DETERMINADAS ELECCIONES DENTRO SU MARCO

## AFIDAVIT

Yo, Miriam del Carmen Hernández Martí, habiendo prestado el debido juramento declaro:

Que soy Representante del periódico "EL NUEVO DIA" que se publica en Guaynabo, P.R.; que en las ediciones de este periódico correspondientes a los días:

**30 DE JUNIO DE 2022**

se dio publicidad al edicto expedido por

**KROLL RESTRUCTURING ADMINISTRATION LLC**

en el caso arriba mencionado y copia del cual se une al presente afidávit para que forme parte del mismo.

Guaynabo, P.R. JUN 3 0 2022 20__.

Afidávit No. 338 del Registro.

Jurado y reconocido ante mi por Miriam del Carmen Hernández Martí, vecina de San Juan, mayor de edad, casada, Representante del periódico "EL NUEVO DIA", a quien doy fe de conocer personalmente,

ISABEL C. RODRÍGUEZ DE LA LLANA ABOGADA-NOTARIA

Guaynabo, P.R. JUN 3 0 2022 20__.

NOTARIO

RECIBO
Sello
4U22-00352766
9397
06/29/2022
$5.00
Sello de Asistencia Legal
80004-2022-0629-27986331

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| En el asunto de: JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, como representante del ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros, Deudores.[1] | PROMESA Título III Núm. 17 BK 3283-LTS (Administrado de manera conjunta) |
| En el asunto de: JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, como representante de la AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO, Deudor. | PROMESA Título III Núm. 17 BK 5567-LTS |

**NOTIFICACIÓN DE (I) LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA VISTA DE CONFIRMACIÓN DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE AJUSTE Y (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE CELEBRACIÓN DE ELECCIONES DENTRO DE SU MARCO**

Si tiene usted derecho de voto o elegir una opción con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.

**FECHA LÍMITE DE VOTACIÓN Y ELECCIÓN: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**
**FECHA LÍMITE PARA OBJECIONES: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**
**VISTA DE CONFIRMACIÓN: 17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**
Consulte todos los detalles adicionales más adelante.

Para cualquier consulta relativa a esta notificación, debe ponerse en contacto con Kroll Restructuring Administration LLC ("el Tribunal") a través de telefóno al (844) 822-9231 (gratuito para EE.UU. y Puerto Rico, o bien al (646) 486-7944 (para llamadas internacionales). El horario de atención es desde las 10:00 a.m. hasta las 7:00 p.m., hora estándar del Atlántico (disponible en español), o bien al correo electrónico puertoricoinfo@primeclerk.com

**SÍRVASE TOMAR NOTA DE LO SIGUIENTE:**

1. **Aprobación de la Declaración de divulgación.** Mediante la orden de fecha 22 de junio de 2022 (la "Orden de Declaración de divulgación"), el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "Tribunal") aprobó cierta adecuada la información contenida en la Declaración de divulgación de la Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico, de fecha 17 de junio de 2022 (según pueda ser modificada o enmendada, incluyendo todos los anexos y documentación adjunta a la misma, la "Declaración de divulgación"), respecto de la Junta de Supervisión y Administración Financiera de Puerto Rico, que autoriza al Deudor a solicitar votos con respecto a la aprobación o rechazo de la Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico, de fecha 17 de junio de 2022 (según la misma pueda ser enmendada o modificada, incluyendo todos los anexos y complementos de la misma, el "Plan"), adjunta como Anexo A la Declaración de divulgación.

Podrá solicitar una copia impresa del Plan y de la Declaración de divulgación, incluyendo sus correspondientes traducciones al español, al agente de vinculación, Kroll Restructuring Administration LLC (anteriormente denominado Prime Clerk LLC):
**Teléfono** (a) 10:00 a.m. a 7:00 p.m. (AST) (disponible en español);
(844) 822-9231 (gratuito en EE.UU. y Puerto Rico)
(646) 486-7944 (para llamadas internacionales)
**Correo electrónico;** puertoricoinfo@primeclerk.com

Alternativamente, puede acceder a las copias electrónicas de la Declaración de divulgación y el Plan visitando el sitio https://cases.primeclerk.com/puertorico/.

2. De conformidad con la Orden de Declaración de divulgación, el Deudor enviará los materiales necesarios para votar por la aceptación o rechazo del Plan, a quien elegir opciones en materia de las distribuciones propuestas del "Paquete de convocatoria") a los Titulares de Reclamaciones de los siguientes Clases (denominadas colectivamente "Clases con derecho a voto");

| | Clase |
|---|---|
| Reclamaciones de Bonos 68 de la ACT | Clase 1 |
| Reclamaciones de Bonos 68 de la ACT (Ambac) | Clase 2 |
| Reclamaciones de Bonos 68 de la ACT (Assured) | Clase 3 |
| Reclamaciones de Bonos 68 de la ACT (National) | Clase 4 |
| Reclamaciones de Bonos Senior 98 de la ACT | Clase 5 |
| Reclamaciones de Bonos Senior 98 de la ACT (Ambac) | Clase 6 |
| Reclamaciones de Bonos Senior 98 de la ACT (Assured) | Clase 7 |
| Reclamaciones de Bonos Senior 98 de la ACT (FGIC) | Clase 8 |
| Reclamaciones de Bonos Senior 98 de la ACT (National) | Clase 9 |
| Reclamaciones de Bonos subordinados 98 de la ACT | Clase 10 |
| Reclamaciones de Bonos subordinados 98 de la ACT (Assured) | Clase 11 |
| Reclamaciones de Bonos subordinados 98 de la ACT (FGIC) | Clase 12 |
| Reclamaciones de Bonos subordinados 98 de la ACT (National) | Clase 13 |
| Reclamaciones de Bonos subordinados 98 de la ACT | Clase 14 |
| Reclamaciones generadas no garantizadas de la ACT | Clase 15 |
| Reclamaciones de la ACT/EEG | Clase 16 |
| Reclamaciones federales | Clase 20 |

3. **Vista de confirmación.** Una vista para considerar la confirmación del Plan (la "Vista de confirmación") se celebrará ante la Honorable Laura Taylor Swain, del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 o según se determine en virtud de una orden del Tribunal, el **17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico).**

4. La Vista de confirmación podrá ser continuada periódicamente mediante por la Junta de Supervisión, sin necesidad de notificaciones adicionales o mediante la adjudicación anunciada durante las sesiones o bien indicada en cualquier notificación de orden del día de reunión a tratar programado para la vista y presentada ante el Tribunal, y el Plan podrá ser modificado, si fuera necesario, antes, durante o como resultado de la Vista de confirmación, de conformidad con los cláusulas de modificación del Plan y de la Regla 3016-2, sin necesidad de notificación adicional a las partes interesadas.

5. **Depositario de Confirmación del Plan.** La información relativa a la confirmación del Plan está disponible en línea en el sitio del Depositario de Confirmación del Plan, https://emacdeborain.com.

6. **Fecha límite para objeciones a la confirmación.** El Tribunal ha establecido las **5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022** (la "Fecha límite de objeción a la confirmación"), como fecha límite para registrar objeciones o respuestas a la confirmación del Plan propuesto. Las partes que no presenten una objeción al Plan dentro de la Fecha límite de objeción a la confirmación tendrán prohibido presentaciones orales ante el Tribunal durante la Vista de confirmación.

7. **Objeciones y respuestas a la confirmación.** Las objeciones y respuestas a la confirmación del Plan deberán:

a. Presentarse por escrito, en inglés, y estar firmadas;

b. indicar el nombre, dirección y naturaleza de la Reclamación de la parte objetora o replicante;

c. indicar específicamente el fundamento y naturaleza de cualquier objeción o respuesta, e indicar, si procediera, el texto propuesto para enmentar en el Plan, en el objeto de resolver dicha objeción o respuesta;

d. Presentarse electrónicamente ante el Tribunal en los supuestos de (i) En el asunto de la Autoridad de Carreteras y Transportación de Puerto Rico, Caso núm. 17 BK 3567-LTS, y (ii) En el asunto del Estado Libre Asociado de Puerto Rico, Caso núm. 17 BK 3283-LTS, a través del sistema de presentación de casos del tribunal, en forma de documento (salvo en caso de buscada de bloqueo como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022, y

i. Si no se usted abogado o cualquiera con usuario en el sistema de presentación de casos del Tribunal, podrá enviar su objeción en correo postal a la oficina de la Secretaría del Tribunal, Secretaría, 150 Avenida Carlos Chardón, Suite 150, San Juan, PR 00918-1767

para que sea recibida como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022; y

e. Consulte a la Oficina del Fideicomisario de los Estados Unidos para el Distrito de Puerto Rico, Edificio Ochoa, Calle Tanca 500, Suite 301, San Juan, PR 00901 (ver 1.n el asunto de: Autoridad de Carreteras y Transportación de Puerto Rico, para que sea recibida como más tardar en la Fecha límite de objeción a la confirmación.

8. **Calendario y fechas límite de confirmación e indagatoria.** El Tribunal ha establecido las siguientes fechas y plazos límite para indagatoria, que serán aplicables al Deudor y a otras partes interesadas:

| Resumen de fechas límite | |
|---|---|
| 1 de julio de 2022 | Fecha límite para que los Partes registren la lista de testigos de hechos, desglosando los temas acerca de los cuales testificará cada uno de ellos (las "Listas de testigos de hecho"). Fecha límite para que las partes registren las declaraciones iniciales de peritos ("Declaraciones iniciales de peritos"). Fecha límite para que las Partes cursen solicitudes de presentación de documentos que no estén bajo custodia del Depositario (las "Solicitudes de presentación"). Las respuestas y objeciones a las citadas Solicitudes de presentación podrán cursarse dentro de un plazo de siete (7) días de que la respectiva tras cada uno de dichas Solicitudes. Las Partes podrán cursar hasta una ronda adicional de Solicitudes de presentación, siempre y cuando se haga en virtud del 11 de julio de 2022. |
| 8 de julio de 2022 | Fecha límite para que las Partes cursen hasta quince (15) interrogatorios ("Interrogatorios"), incluyendo las subpartes. Las respuestas y objeciones a los citados interrogatorios podrán cursarse dentro de un plazo de diez (10) días desde la recepción de dichos interrogatorios. |
| 12 de julio de 2022 | Fecha límite para que las partes registren las informes periciales iniciales, las cuales (las "declaraciones de peritos iniciales"), si las hubiera. Si se presenta algún Informe pericial inicial, tal refutaciones a las divulgaciones de expertos deberán presentarse en un plazo de tres (3) días desde dicha presentación, y las respuestas a dichas refutaciones se presentarán dentro (5) días después de las divulgaciones iniciales. |
| 18 de julio de 2022 | Fecha límite para que las partes cursen las notificaciones de deposiciones jurídicas, términos y horarios solicitados para las mismas ("Notificaciones de deposiciones jurídicas") (todas las partes estarán limitadas a un límite de siete (7) horas para declaraciones jurídicas). |
| 20 de julio de 2022 | Fecha límite para que las Partes cursen solicitudes de admisión, limitadas a la autenticación de documentos ("Solicitudes de Admisión"). Las respuestas y objeciones a las citadas Solicitudes de Admisión podrán cursarse dentro de un plazo de cinco (5) días laborables desde la recepción de dichas Solicitudes de Admisión. |
| 22 de julio de 2022 | Conclusión de la indagatoria de hechos (la "Fecha límite de indagatoria de hechos"). |
| 25 de julio de 2022 | Fecha límite para que el Deudor registre la propuesta de Orden de confirmación (la "Propuesta de Orden de confirmación"). |
| 27 de julio de 2022 | Conclusión de la indagatoria de peritos (la "Fecha límite de indagatoria de peritos"). Fecha límite para que las partes presenten mociones Daubert y mociones in límine. Fecha límite para: • Objeciones a la confirmación del Plan ("Objeciones"). • Objeciones a la Propuesta de Orden de confirmación. Fecha límite de votación. Fecha límite de elección. Fecha límite para que las partes registren las listas de testigos, las listas de pruebas y las designaciones de declaraciones juradas definitivas. |
| 29 de julio de 2022 | Fecha límite para que las partes presenten oposiciones a las mociones Daubert y mociones in límine. |
| 1 de agosto de 2022 | Fecha límite para: que las partes presenten un objeciones a las listas de pruebas y designaciones de declaraciones juradas y (b) designaciones opuestas. |
| 3 de agosto de 2022 | Fecha límite para que las partes presenten sus respuestas en apoyo de las mociones Daubert y las mociones in límine. |
| 4 de agosto de 2022 | Fecha límite para que las Partes presenten objeciones a las designaciones opuestas. |
| 7 de agosto de 2022 | Fecha límite para que el Deudor presente: • Memorándum de ley en apoyo de la confirmación. • Réplicas generales a las objeciones a la confirmación y a la propuesta de orden de confirmación. • Declaraciones de testigos y conclusiones de votos. • Antecedentes de hechos y conclusiones de derecho. Fecha límite para que las Partes no deudoras presenten declaraciones de testigos. |
| 8 de agosto de 2022 | Conferencia previa al juicio (fecha adicional). |
| 15 de agosto de 2022 | Fecha límite para que las Partes presenten objeciones a los Antecedentes de hecho y conclusiones de derecho. |
| 17-18 de agosto de 2022 | Vista de confirmación |

9. **Fecha de votación.** La fecha de registro de votación será el **17 de junio de 2022** (la "Fecha de registro de votación"), que será la fecha para determinar cuáles titulares de Reclamaciones de las Clases con derecho a voto tendrán tal derecho. Las Clases de bonos tienen derecho a votar a favor o en contra del Plan. Por consiguiente, solamente podrán votar a favor o en contra del Plan los Acreedores de una Clase con derecho a voto por el Plan que mantenga Reclamaciones contra el Deudor en las Clases con derecho a voto al 17 de junio de 2022 (la "Fecha de registro de votación").

10. **Fecha límite de votación.** La fecha límite para votar a favor o en contra del Plan es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicho plazo sea prorrogado (la "Fecha límite de votación"). Usted no estará obligado a votar a favor o en contra del Plan para permitir distribuciones de conformidad con las términos y condiciones del Plan, si esto es confirmado por el Tribunal, siempre y cuando sea titular de una Reclamación permitida.

11. Si recibió un Paquete de convocatoria, incluye una Papeleta o Papeletas, al igual que información relativa al procedimiento de votación. Si usted no recibe un Paquete de convocatoria, si tiene alguna pregunta con respecto a tales instrucciones, debe dirigirse a las instrucciones: (i) cumplimentar todos los datos recogidos en la Papeleta (según proceda), y (ii) o bien (a) devolver la Papeleta cumplimentada de conformidad con las instrucciones de votación incluidas en el Paquete de convocatoria, demodo que su Papeleta sea efectivamente recibida por el Agente de convocatoria del Deudor, Kroll Restructuring Administration LLC ("Kroll"), en el "Agente de votación") como más tardar en la Fecha límite de votación, o bien (b) devolver su Papeleta a un intermediario o persona designada cada uno de ellos, una "Persona designada") que tenga custodia cuando posea los bonos a través del Programa Automatizado de Oferta de Presentación ("ATOP") en The Depository Trust Company ("DTC") en función de acuerdo entre su acepteción y rechazo del Plan en el sistema de votación. El incumplimiento de estas instrucciones puede hacer que su voto sea descalificado.

12. **Fecha límite de elección.** La fecha límite para que sus beneficios tenedores de Reclamaciones de Bonos elegibles que tengan derecho a elegir una forma de distribución podrá ejercer su selección dentro de toda forma elección o (según el Plan realicen dicha elección es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo si dicho plazo es prorrogado (la "Fecha límite de elección"). Si hace una Reclamación de Bonos elegible que es un tenedor beneficiario de la clase correspondiente con derecho a elección, ud. podrá que sean efectivamente recibidas por su Persona designada con suficiente anticipación para que esta pueda ejecutar efectivamente su elección a través del sistema ATOP de DTC como más tardar en la Fecha límite de elección.

13. **Partes interesadas sin derecho al voto.** Se considera que los acreedores de la Clase 18 (Reclamaciones subordinadas de la Sección 510(b)) rechazan el Plan, por lo que no tienen derecho de voto.

14. Se considera que las siguientes Clases rechazan el Plan:
   • Clase 14 (Reclamaciones de Bonos Municipio de la ACT).
   • Clase 19 (Reclamaciones de convención).

15. Si una Reclamación está incluida en la Lista de acreedores del Deudor (registro en el expediente judicial núm. 2163 en el Caso núm. 17-3283) como contingente, no liquidada o impugnada, y (i) no se registró una evidencia de reclamación en la Fecha límite aplicable para la presentación de reclamaciones del establecimiento el Tribunal con la Fecha límite de registro de votación (según proceda) ni considerada debidamente registrada por ninguno tal Tribunal antes de la Fecha de votación, dicha Reclamación no tendrá derecho a votar por la aceptación o el rechazo del Plan. Tampoco las pruebas de reclamación presentadas por $0.00 o aquellas denominadas por orden del Tribunal tendrán derecho a voto.

16. Si usted ha presentado oportunamente una evidencia de reclamación, y no está de acuerdo con la litización del Deudor, la adjudicación o la solicitud de estimación de su Reclamación y crea que debiera tener derecho a votar sobre el Plan, debe notificar al Deudor y a las partes enumeradas en el apartado 16 de la Orden de Declaración de divulgación y registrar en el Tribunal una copia al Despacho de la juez) una moción (una "Moción conforme a la Regla 3018(a)") para obtener una orden a tenor de la Regla 3018 de las Reglas Federales de Procedimiento de Quiebra (las "Reglas de Quiebra") que permita dar forma provisional a su Reclamación por un monto diferente a una Clase diferente a los efectos de votar para aceptar o rechazar el Plan. Todas las Mociones de la Regla 3018(a) deben presentarse como más tardar dentro de los (TP) días después de una de las siguientes fechas: (i) la fecha de envío de la notificación del Plan, y (ii) si la evidencia de reclamación presentada está sujeta a objeción de estimación, si la hubiera, en cuanto a dicha Reclamación, lo que más tarde se produzca. De acuerdo con la Regla de Quiebra 3018(a), en lo que respecta a cualquier acreedor que presenta una Moción conforme a la Regla 3018(a), la Papeleta de dicho acreedor no se contabilizará, salvo que el Tribunal autorice lo contrario, en cuanto a dicha Reclamación, lo que haya sido provisionalmente permitida por orden del Tribunal en el marco de esta Moción conforme a la Regla 3018(a) presentada como más tardar en la fecha de votación (27 de julio a las 5:00 p.m. (hora estándar del Atlántico).

17. Si desea que su Reclamación sea admitida provisionalmente a efectos de votación de conformidad con la Regla de Quiebra 3018(a), encontrará un formulario de la Regla 3018(a) con instrucciones para completar y presentar la moción en https://cases.primeclerk.com/puertorico/.

18. **Partes que no serán tratadas como Acreedores.** Cualquier titular de una Reclamación que (i) esté incluido en la Lista de Acreedores a $0.00 y que no sea objeto de evidencia de Reclamación presentada o (ii) tenga una evidencia de Reclamación que se considere presentada a tenor, o bien cuya Reclamación quede definitivamente inadmitida o denegada con arreglo a la Orden, o cualquier Código de Quiebras o de cualquier orden del Tribunal, o que se considere presentada a tiempo según la ley aplicable, o bien (iv) no se extiende esto empresa y no se exige de ninguna reclamación presentada a tiempo a tenor de los antecedentes considerados como presentada a tiempo conforme a una ley aplicable, no será considerada una acreedor ante el Tribunal, a dar otra manera considerada como presentada a tiempo conforme a la Reclamación solo efectos del sistema de votación.

19. **Información adicional.** Cualquier parte interesada que desee obtener información sobre los procedimientos de convocatoria o copias de la Declaración de Divulgación o del Plan, incluyendo sus traducciones al español, debe ponerse en contacto con el agente de vinculación, Kroll Restructuring Administration LLC, por teléfono llamando al (844) 822-9231 (llamada gratuita para EE.UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricoinfo@primeclerk.com. Asimismo, podrá ver dichos documentos accediendo a https://cases.primeclerk.com/puertorico/ o el sitio web del Tribunal, https://www.prd.uscourts.gov/. Tenga en cuenta que se requiere una contraseña y credenciales de inicio de sesión para poder acceder a los documentos que figuran en el sitio web del Tribunal a través del sistema de Acceso Público a los Registros Electrónicos del Tribunal ("PACER, por sus siglas en inglés") (https://pacer.uscourts.gov).

20. **Reglas de Quiebra 2002(c)(3) y 3016(c).** De acuerdo con las Reglas de Quiebra 2002(c)(3) y 3016(c), a continuación se exponen las disposiciones de descargo, exculpación e interdicto contenidas en el Plan:

**Sección 41.2 — Exoneración y descargo de reclamaciones y causas de acción.**

(a) Salvo que se disponga expresamente en el Plan o la ACT y conforme a la ACT, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio de, y en completa satisfacción, liquidación, exoneración y descargo de, todas las Reclamaciones y Causas de acción contra el Deudor y la ACT Reorganizada que surgieron, en todo o en parte, antes de la Fecha de vigencia de la ACT, en relación con el Deudor, la ACT Reorganizada o cualquiera de sus respectivos Activos, bienes e intereses de toda índole, incluidos los intereses devengados por dichas Reclamaciones en o a partir de la Fecha de petición de la ACT, e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan a causa de dichas Reclamaciones o Causas de acción teniendo en cuenta, sin embargo, que, no obstante los derechos de exculpación establecidos en la Sección 41.7 del Plan de la ACT, nada de lo contenido en el Plan de la ACT de Confirmación de la ACT tiene la intención de ni deberá ser interpretado, como una exención de una exención no consensuada a terceros de los Acreedores del ACT y la Fecha de vigencia de la ACT, durante y ACT reorganizada se considerarán exoneradas y emitidas de todas y cada una de las Reclamaciones, Causas de acción y cualquier otra deuda generada, total o parcialmente, antes de la Fecha de vigencia de la ACT, y todas las Reclamaciones del tipo especificada en las secciones 502(g), 502(h) o 502(i) del Código de Quiebras, y la Sección 407 de la Ley PROMESA ya sea o no una evidencia de reclamación basada en la cual se presente o se considere presentada dicha Reclamación en virtud de la Sección 501 del Código de Quiebras, (b) que se autorice dicha Reclamación conforme a la sección 502 del Código de Quiebras y (c) el titular de dicha Reclamación haya votado o no a favor del Plan. En virtud de la confirmación de la ACT del Plan y de la Fecha de vigencia de la ACT, el disgar cualquier deuda, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT limitará, restará o afectará, salvaguardará ninguna reclamación o causa de acción contra o del ACT, relacionada con, los bonos emitidos por la ACT, teniendo en cuenta, los emitidos con los seguros monolíneas pertinentes, y la AEE no exime de ninguna reclamación ni causa de acción contra cualquier Entidad no deudora, las reclamaciones y causas de acción contra la AEE derivadas de, o relacionadas con, los bonos emitidos por la ACT, y como deudora y las causas contra la ACT la AEE y sus afiliadas, incluyendo, entre otros, los emitidos por los seguros monolíneas pertinentes, y la AEE no exime de ninguna reclamación ni causa de acción contra la AEE, incluyendo, entre otros, cualquier plan de ajuste pertinente.

(b) Salvo que se disponga expresamente en el Plan o la ACT o en la Orden de Confirmación de la ACT, todas las Entidades estarán impedidas de hacer valer contra el Deudor y la ACT Reorganizada y cada uno de sus respectivos Activos, bienes y derechos, recursos, Reclamaciones o Causas de Acción o responsabilidades de toda índole, relacionadas con los Casos del Título III, el Deudor y la ACT reorganizada o cualquiera de sus respectivos Activos y bienes, teniendo cualquier interés acumulado sobre dichas Reclamaciones desde y a partir de la Fecha de petición de la ACT e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan de la ACT con cargo a estas Reclamaciones o Causas de Acción, con arreglo a la Orden de confirmación de la ACT constituirá una determinación judicial, a la Fecha de vigencia, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción y demás deudas y la ACT, a tenor de la Ley PROMESA y otras provisiones aplicables y respectivos. Activos y bienes en todo momento, en la medida que dicha sentencia esté relacionada con una Reclamación, deuda o responsabilidad que sea objeto de dicha exoneración. A la Fecha de vigencia de la ACT, y como contrapartida por el valor aportado en virtud del Plan de la ACT, se considerará que cada titular de una Reclamación (con independencia de si se LEY PROMESA, y dicha exoneración anulará y extinguirá cualquier sentencia obtenida en cualquier momento, en la medida que dicha sentencia esté relacionada con una Reclamación, deuda o responsabilidad que sea objeto de dicha exoneración.

(c) No obstante lo anterior, las Reclamaciones exoneradas de cualquier otro dispuesto en el Plan de la ACT, de conformidad con las disposiciones del Acuerdo de Apoyo al Plan ACT/ADCC, se considerará que cada uno de los Acreedores del Acuerdo de Apoyo al Plan ACT/ADCC y sus respectivas Personas Vinculadas, exclusivamente en su calidad de Acreedores del Deudor, (i) han renunciado a, y confirman, renunciando de forma absoluta, incondicional, irrevocable y permanente, a perpetuidad, a cualquier otro tipo de reparación contra cualquiera de los Exonerados del Gobierno fundamentada en, que se derive de, o estén relacionadas con, las Reclamaciones exoneradas del Gobierno o cualquiera de las Reclamaciones o Causas de acción planteadas o que podrían haber planteado, incluyendo, entre otros, en las Acciones de recuperación (Clawback) y los Recursos de levantamiento de la paralización y (ii) han

(continúa en la página siguiente)

PRINTED AND DISTRIBUTED BY PRESSREADER
PressReader.com · +1 604 278 4604
COPYRIGHT AND PROTECTED BY APPLICABLE LAW

pressreader

EL NUEVO DÍA jueves, 30 de junio de 2022 · 48

*(continúa de la página anterior)*

ayudarán directa ni indirectamente a ninguna persona a realizar ninguna acción con respecto a las Reclamaciones exoneradas del Gobierno que esté prohibida por la Sección 41.2 del Plan de la ACT.

(d) Limitación de la SEC. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que la SEC haga valer sus potestades en materia de políticas o reglamentos; ni (ii) impedir, limitar, perjudicar ni retrasar que la SEC incoe o prosiga reclamaciones, pleitos, procedimientos o investigaciones contra personas físicas o jurídicas no deudoras en ningún foro.

(e) Limitación de Estados Unidos. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que Estados Unidos o cualquiera de sus organismos, departamentos o agentes eximan de algún modo al Deudor o a la ACT reorganizada, según proceda, de cumplir las leyes y requisitos federales o territoriales que implementen programas federalmente autorizados o delegados para la protección de la salud, la seguridad y el medio ambiente de personas de dicho territorio, (ii) amplíe el ámbito de cualquier exoneración, exención o recurso a los cuales el Deudor o la ACT reorganizada tengan derechos de conformidad con el Título III, ni (iii) eximan, liberen, impidan o prohíban de alguna manera (A) cualquier responsabilidad del Deudor o la ACT reorganizada ante Estados Unidos derivados de, y posteriores a, la Fecha de vigencia, (B) cualquier responsabilidad de cara a los Estados Unidos que no sea una Reclamación, (C) cualquier defensa afirmativa o cualquier derecho de compensación o recobro de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, reservándose expresamente dichos derechos de compensación y recobro de las citadas partes, (D) la continuidad de la validez de las obligaciones de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, en virtud de cualquier subsidio o acuerdo de asistencia cooperativa de Estados Unidos, (E) las obligaciones del Deudor o la ACT reorganizada derivadas de políticas, leyes o reglamentos federales, incluyendo, entre otros, leyes relativas al medio ambiente, la salud o la seguridad pública, o leyes territoriales que implementen dichas disposiciones legales federales, incluyendo, entre otros, obligaciones de cumplimiento normativo, requisitos de decretos de consentimiento o de órdenes judiciales, y obligaciones de pagar las correspondientes penalizaciones administrativas, civiles y de otra índole, (F) cualquier responsabilidad para con Estados Unidos de parte de cualquier no deudor. Sin que ello suponga una limitación a la generalidad de lo antedicho, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT podrá considerarse (i) una determinación de la obligación tributaria de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (ii) vinculante para el IRS con respecto a las obligaciones tributarias federales, estatus fiscal u obligaciones de declaración y retención de impuestos de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (iii) una exención, satisfacción, excepción ni prohibición de cualquier recaudación reclamada por el IRS contra cualquier entidad que no sean el Deudor y la ACT reorganizada, y (iv) otorgar ninguna exención a ninguna Entidad que el Tribunal tenga prohibido por la Ley de Sentencias Declaratorias, 28 U.S.C. § 2201(a) o la Ley contra Medidas Cautelares aplicables a impuestos, 26 U.S.C. § 7421(a).

(f) Actuaciones de las aseguradoras. No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT o en la Orden de confirmación de la ACT, incluyendo, entre otros, las Secciones 41.2, 41.3 y 41.11 del Plan de la ACT, salvo que pueda ser impedida a tenor de las cláusulas de la Ley PROMESA, nada de lo contenido en el Plan de la ACT, la Orden de confirmación de la ACT o cualquier otro documento relacionado con el Plan de la ACT o en el Suplemento de la ACT, tiene por objeto, ni podrá interpretarse con el objeto de impedir o perjudicar, alterar, modificar, disminuir, prohibir, impedir, restringir, limitar, eximir, reducir, eliminar o limitar los derechos de los demandantes y demandados, incluyendo, entre otros, las partes de las Acciones de las aseguradoras, de hacer valer sus respectivos derechos, reclamaciones, causas de acción y defensas en dichas Acciones, incluyendo, entre otros, las Reclamaciones, defensas, causas de acción y derechos de compensación o recobro (en la medida en que estuvieran disponibles), o cualesquiera otros derechos de determinación de responsabilidad u otros fundamentos para la reducción de (o acreditación contra) cualquier sentencia relacionada con las Acciones de las aseguradoras (en conjunto, los "Derechos de defensa"); aunque siempre en el bien entendido de que, a efectos de disipar cualquier duda, bajo ninguna circunstancia podrá utilizarse alguno de los Derechos de defensa para obtener o conseguir el pago afirmativo de dinero o el traspaso afirmativo de bienes a algún demandante, demandado o, en la medida en que proceda, demandado tercero, por parte del Deudor, de la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otra agencia u organismo del mismo, en relación con una Acción de aseguradora, y asimismo siempre y cuando a ninguna de las partes de estas Acciones, incluyendo, entre otros, demandantes, demandados y, si los hubiera, demandados terceros, se le permita incoar: (i) contra el Deudor o la ACT reorganizada, ninguna Reclamación o Causa de acción con el objeto de obtener un recobro monetario afirmativo que, de otro modo, esté excluida o desestimada como consecuencia de las Órdenes de Fecha límite, el Plan de la ACT y/o la Orden de confirmación de la ACT; y/o (ii) contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier organismo o agencia del mismo, cualesquiera Reclamaciones o contrarreclamaciones a efectos de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, planteadas con el objeto de obtener un recobro monetario afirmativo, Reclamaciones o contrarreclamaciones que serán consideradas desautorizadas, desestimadas, exoneradas o restringidas de conformidad con los términos y disposiciones del Plan de la ACT y la Orden de confirmación de la ACT; entendiéndose asimismo que nada de lo contenido en la Orden de confirmación de la ACT tiene por objeto, ni deberá interpretarse como un intento de, prohibir, excluir, vetar, modificar o limitar en modo alguno la capacidad de cualquier demandado de una Acción de aseguradora de plantear Derechos de defensa para reducir, eliminar o limitar la cuantía de cualquier responsabilidad o sentencias de la Acción de una aseguradora. Las partes de las Acciones de aseguradoras estarán permanentemente excluidas, restringidas, proscritas y limitadas para emprender, incoar o demandar contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otro organismo o agencia del mismo, Reclamaciones o contrarreclamaciones con el objeto de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, en la medida en que se planteen con el objetivo de conseguir un recobro monetario afirmativo basado en, derivado de o relacionado con, las Acciones de aseguradoras, tanto si dicha Reclamación o contrarreclamación pueda incoarse como si no ante un tribunal, un arbitraje, una agencia o foro administrativo, o de cualquier otra manera.

Sección 41.3 – Interdicto sobre las Reclamaciones:

Salvo que se disponga expresamente lo contrario en el Plan de la ACT, en la Orden de confirmación de la ACT o en cualquier otra Orden final del Tribunal del Título III que pudiera ser aplicable, todas las Entidades que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor con la Sección 41.2 del Plan de la ACT o que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor de la Sección 41.2 del Plan de la ACT tienen permanentemente prohibido, en o a partir de la Fecha de vigencia de la ACT, (a) incoar o continuar, directa o indirectamente, en cualquier modalidad, cualquier acción u otro procedimiento (incluyendo, entre otros, cualquier procedimiento judicial, arbitral, administrativo u otro) de toda índole sobre cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, (b) la ejecución, el embargo, el cobro o la recuperación por cualquier forma o medio de cualquier sentencia, laudo, decreto u orden contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT, (c) crear, perfeccionar o aplicar gravámenes de toda índole contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT; y (d) salvo en la medida en que se disponga, permita o preserve en las secciones 553, 555, 556, 559 o 560 del Código de Quiebras o conforme al derecho consuetudinario de recobro o de hacer valer cualesquiera derechos de compensación, subrogación o recuperación de toda índole con cargo cualquier obligación debida de cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, con respecto a cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT. Este interdicto se extenderá a todos los sucesores y cesionarios de las Partes exoneradas y sus respectivos activos y bienes.

Sección 41.5 – Exoneraciones del Deudor y de la ACT reorganizada:

Salvo que se disponga expresamente lo contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, en la Fecha de vigencia de la ACT, y a cambio de una contrapartida válida y valiosa, por la presente se considerará que tanto el Deudor como la ACT reorganizada, el Agente pagador y cada una de las Personas relacionadas del Deudor y la ACT reorganizada, han renunciado, exonerado, absuelto y relevado irrevocable, incondicional, plena y definitivamente y a perpetuidad, a las Partes exoneradas de todas y cada una de las Reclamaciones o Causas de acción que el Deudor, la ACT reorganizada y el Agente pagador, o cualquiera de ellos o que reclame a través de ellos, en su nombre o para su propio beneficio, tengan o pudieran tener o reclamar tener, ahora o en el futuro, contra cualquier Parte exonerada que sean Reclamaciones exoneradas.

Sección 41.6 – Interdictos relacionados con descargos:

A la Fecha de vigencia de la ACT, todas las Entidades que tengan, hayan tenido o puedan tener una Reclamación exonerada considerada como tal de conformidad con la Sección 41.2 del Plan de la ACT, quedan y quedarán, de manera permanente, completamente y para siempre, suspendidas, restringidas, prohibidas, vetadas y desestimadas para llevar a cabo cualquiera de las siguientes acciones, tanto directa como indirectamente, de forma derivada o de otra manera, por cuenta de, o fundamentándose en, el asunto de dichas Reclamaciones exoneradas: (i) incoar, emprender o continuar de cualquier modo, tanto directa como indirectamente, cualquier juicio, acción u otro procedimiento (lo que incluye, entre otros, cualquier procedimiento judicial, arbitral, administrativo o de otro tipo) en cualquier foro; (ii) ejecutar, incautar (lo que incluye, entre otros, cualquier embargo previo a la sentencia), cobrar o intentar de otro modo recobrar cualquier sentencia, laudo, decreto u otra orden; (iii) crear, perfeccionar o de cualquier otro modo aplicar en cualquier cuestión, directa o indirectamente, cualquier Gravamen; (iv) compensar, exigir reintegros, aportaciones o subrogaciones, o recuperar de cualquier otra manera, directa o indirecta, cualquier cuantía en concepto de cualquier pasivo u obligación adeudados a cualquier Entidad exonerada conforme a la Sección 41.2 del Plan de la ACT; e (v) iniciar y continuar de cualquier otro modo y lugar, un procedimiento judicial, de arbitraje o administrativo en cualquier foro, que no cumpla o no sea compatible con las disposiciones del Plan de la ACT o de la Orden de confirmación de la ACT. Para evitar dudas, las siguientes estipulaciones se extinguirán con el registro de la Orden de confirmación de la ACT: (i) la Cuarta Estipulación enmendada entre el Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Suspensión de la prescripción y Orden de consentimiento [Caso núm. 173283-LTS, ECF núm. 15854] y sus enmiendas, y (ii) y sus enmiendas; y la Cuarta Estipulación enmendada y Orden de consentimiento entre los Deudores del Título III (salvo COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, actuando en nombre de las entidades gubernamentales enumeradas en el Apéndice "B" en relación con la Suspensión de la prescripción [Caso núm. 17-3283-LTS, ECF núm. 17394] y sus enmiendas.

Sección 41.7 – Exculpación:

(a) Partes del Gobierno: La Junta de Supervisión, la AAFAF, el Deudor y cada una de las respectivas Personas Relacionadas, actuando exclusivamente en su calidad de tales en cualquier momento hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7 no afectarán las responsabilidades de cualquier Entidad que de otro modo hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa. Ninguna de las disposiciones anteriores de esta Sección 41.7 menoscabará el derecho de ninguna de las Partes del Gobierno, ni de los funcionarios y directivos de las Partes del Gobierno que cumplan funciones en cualquier momento hasta la Fecha de vigencia de la ACT inclusive, ni de cada uno de sus profesionales respectivos de recurrir al asesoramiento de un abogado como defensa respecto de sus deberes y responsabilidades en virtud del Plan de la ACT.

(b) Acreedores del AAP de ACT/ADCC: Cada uno de los Acreedores del AAP de ACT/ADCC, actuando exclusivamente en su calidad de tales como parte del Acuerdo de Apoyo al Plan de ACT/ADCC y un Acreedor y/o Aseguradora, según proceda, desde la Fecha de petición de la ACT y hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la mediación, negociación, formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, el Acuerdo de Apoyo al Plan de ACT/ADCC, los Documentos definitivos o cualquier contrato, instrumento, publicación o convenio o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7(b) no afectarán a las responsabilidades de cualquier Entidad que, de otro modo, hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa.

(c) Aseguradoras Monolínea: Ambac, Assured, FGIC, National y sus respectivas Personas relacionadas, no tendrán ni incurrirán en responsabilidad legal alguna ante ninguna Entidad por acciones u omisiones compatibles con el Plan de la ACT o en relación con la formulación, preparación, difusión, implementación, aceptación, confirmación o aprobación del Plan de la ACT, lo que incluye, entre otros, el tratamiento de las Reclamaciones de Bonos asegurados por Ambac, las Reclamaciones de Bonos asegurados por Assured, las Reclamaciones de Bonos asegurados por FGIC o las Reclamaciones de Bonos asegurados por National, los procedimientos de votación, los procedimientos de elección y cualquier descargo de obligaciones en virtud de las Pólizas de seguro de Ambac, las Pólizas de seguro de Assured, las Pólizas de seguro de FGIC o las Pólizas de seguro de National correspondientes, siempre en el bien entendido de que, no obstante cualquier otra disposición en sentido contrario aquí contenida, los términos y condiciones del Plan de la ACT no relevarán ni exculparán, ni se entenderá que relevan o exculpan, cualesquiera obligaciones de pago —a tenor de la Póliza de Seguro de Ambac, la Póliza de Seguro de Assured, la Póliza de Seguro de FGIC o la Póliza de Seguro de National— a cualquier titular usufructuario de Bonos asegurados por Ambac, Bonos asegurados por Assured, Bonos asegurados por FGIC o Bonos asegurados por National, según proceda, de conformidad exclusivamente con sus términos, en la medida en que dicho titular no reciba el Tratamiento de Ambac, el Tratamiento de Assured, el Tratamiento de FGIC o el Tratamiento de National, según corresponda (o cualesquiera reclamaciones que Ambac, Assured, FGIC o National pudiera plantear contra un titular usufructuario de sus bonos respectivamente asegurados en relación con las obligaciones asumidas por Ambac, Assured, FGIC o National en virtud de las Pólizas de Seguro de Ambac, las Pólizas de Seguro de Assured, las Pólizas de Seguro de FGIC o las Pólizas de Seguro de National, respectivamente).

(d) Comité de Acreedores: Cada uno de los miembros del Comité de Acreedores, exclusivamente en su calidad de miembro del Comité de Acreedores, desde la Fecha de petición de la ACT hasta la Fecha de vigencia de la ACT, inclusive, y cada una de las Personas relacionadas del Comité de Acreedores, no tendrán ni incurrirán en responsabilidad legal alguna ante cualquier Entidad por acciones u omisiones relacionadas con los Casos de Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT de cualquier compromiso o acuerdo contenido en este documento, la Declaración de divulgación de la ACT o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que, no obstante la exculpación precedente, en caso de que se emprenda contra un miembro del Comité de Acreedores un litigio vinculado con las acciones precedentes, cada miembro tendrá derecho a que se le reintegren honorarios y gastos legales razonables y a que se le indemnice por los daños adjudicados en cada caso, por la ACT como consecuencia de una Orden Final; y asimismo en el bien entendido de que las cláusulas precedentes de esta Sección 41.7(d) no afectarán a la responsabilidad de alguna Entidad que, de otro modo, conllevaría dicha acción u omisión, en la medida en que, en una Orden final, se determine que dicha acción u omisión constituyó fraude intencional o conducta dolosa.

(e) Las Partes de la ARD: Cada una de la ARD y las Partes de la ARD, desde la Fecha de Petición de la ACT hasta e incluyendo la Fecha de Entrada en Vigencia de la ACT y cada uno de los predecesores, sucesores y cesionarios respectivos de las Partes de la ARD (ya sea de oficio o de otra manera), y sus respectivos asesores financieros, abogados, contadores, consultores, agentes y profesionales, u otros representantes, cada uno actuando en tal capacidad, y cualquier Entidad que actúe para o en nombre de cada uno de ellos, en cada caso, únicamente en la medida de que actúen en tal capacidad, no tendrá ni incurrirá en ninguna responsabilidad ante ninguna Entidad por cualquier acto realizado u omitido en relación con el Caso de Título III, mediación, negociación, formación, preparación, diseminación, implementación, confirmación u aprobación del Plan de la ACT o cualquier transacción o conciliación contenido en estas, la Declaración de Divulgación, la Estipulación de la ARD, o cualquier contrato, instrumento, descargo u otro acuerdo o documento dispuesto o contemplado en relación con el perfeccionamiento de las transacciones estipuladas en el Plan de la ACT; siempre en el bien entendido de que las disposiciones anteriores de esta Sección 41.7 (e) no afectarán la responsabilidad de cualquier Entidad que resultaría de otra manera de dicho acto u omisión en la medida en que dicho acto u omisión estuviera determinado en una Orden Final como constituyente de fraude o conducta dolosa.

Sección 41.8 – Litigio relacionado con las designaciones:

No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT, en el caso de que se dictase una Orden final en relación con el Litigio relacionado con las designaciones o el Litigio de uniformidad con posterioridad a la emisión de la Orden de confirmación de la ACT, como contrapartida por las distribuciones efectuadas, que vayan a efectuarse o que se considerarán efectuadas de conformidad con los términos y disposiciones del Plan de la ACT y los documentos e instrumentos relacionados con el mismo, todos los Acreedores o las demás Entidades que reciban, o se considere que hayan recibido, distribuciones de conformidad con, o como resultado de, el Plan de la ATC, consienten y aceptan que dicha Orden final no revertirá, afectará ni modificará de ningún otro modo las transacciones contempladas en el Plan de la ACT y en la Orden de confirmación la ACT, lo cual incluye, entre otros, los descargos, exculpaciones e interdictos previstos en el Artículo XLI del Plan de la ACT; siempre en el bien entendido de que, en la medida en que una parte demandante del Litigio relacionado con las designaciones o del Litio de uniformidad sea parte del Acuerdo de Apoyo al Plan de GO/AEP, el Acuerdo de Apoyo al Plan de ACT/ADCC, el Acuerdo de Apoyo al Plan de la AFI o la Estipulación de SRE, en un plazo de cinco (5) días laborables desde la Fecha de vigencia del Plan de la ACT, dicho demandante adoptará todas y cada una de las medidas necesarias para que se desestimen, sin perjuicio —o, en el caso de que hubiera otros demandantes que fuesen partes de dichos litigios para, sin perjuicio, retirarse— de dichos Litigios relacionados con designaciones o Litigios de uniformidad, según proceda, incluyendo, entre otros, cursando notificaciones de desestimación o retirada a la Secretaría del Tribunal competente.

Sección 41.9 – Orden de prohibición:

Dentro de los límites que se estipulan en el Plan de la ACT, a todas y a cada una de las Entidades se les impide, prohíbe y restringe de manera permanente, instituir, emprender, tramitar o litigar de cualquier manera todas y cada una de las Reclamaciones, demandas, derechos, responsabilidades o causas de acción de cualquier índole, carácter o naturaleza, tanto en derecho como en equidad, conocidos o desconocidos, directos o indirectos y tanto alegados como si no, contra cualquiera de las Partes exoneradas, sobre la base de, relacionados con o derivados de o en relación con cualquiera de las Reclamaciones exoneradas, la confirmación y perfeccionamiento del Plan de la ACT, la negociación y perfeccionamiento del Acuerdo de Apoyo al Plan de ACT/ADCC o cualquier reclamación, actuación, hecho, transacción, incidencia, declaración u omisión en relación con, o alegada o que pudiera alegarse, en los Casos de Título III, lo cual incluye, entre otros, cualquier reclamación, demanda, derecho, responsabilidad o causa de acción a efectos de indemnización, contribución u otro fundamento de este tipo, en derecho o en equidad, por daños y perjuicios, costos u honorarios incurridos que derivados directa o indirectamente de los Casos de Título III o que estén relacionados con ellos de alguna otra manera, sea directa o indirectamente por cualquier Persona para beneficio directo o indirecto de cualquier Parte exonerada, derivado de, o relacionado con, las reclamaciones, actuaciones, hechos, transacciones, incidencias, declaraciones u omisiones que son, o podrían o pudieran ser alegados en las acciones relacionadas o cualquier otra acción iniciada, o que pudiera iniciarse por, a través de, en nombre de, o en beneficio de cualquiera de las Partes exoneradas (tanto de conformidad con leyes federales como estatales o extranjeras, e independientemente de dónde se aleguen).

Sección 41.11 – Interdicto complementario:

No obstante lo dispuesto en sentido contrario en el Plan de la ACT, y salvo dentro de los límites que se estipulan en el Plan de la ACT, todas las Entidades, incluidas las Entidades que actúan en su propio nombre, que actualmente mantengan o aleguen, o hayan mantenido o alegado, o pudieran mantener y alegar, cualquier Reclamación exonerada en contra de cualquiera de las Partes exoneradas basadas en, atribuibles a, derivadas de o relacionadas con, los Casos del Título III o cualquier Reclamación contra el Deudor, sea y dondequiera que se planteen o aleguen, tanto en EE. UU. como en cualquier otra parte del mundo, contractual o extracontractualmente, en virtud de alguna garantía, ley o cualquier otra teoría en derecho o equidad, o de cualquier otra índole, estará, y se considerará que está, permanentemente paralizada, restringida y prohibida de iniciar cualquier acción contra cualquiera de las Partes exoneradas a efectos de cobrar, recobrar o percibir, directa o indirectamente, cualquier pago o recobro con respecto a cualquier Reclamación exonerada que se planteara con anterioridad a la Fecha de vigencia de la ACT (incluso con anterioridad a la Fecha de petición de la ACT), incluyendo, entre otros:

(a) Iniciar o continuar de cualesquiera maneras, actuaciones u otros procedimientos de toda índole con respecto a dichas Reclamaciones exoneradas contra cualquiera de las Partes exoneradas o los activos o bienes de cualquiera de ellas;

(b) Ejecutar, incautar, cobrar o recobrar, de cualquier manera y por cualquier medio, sentencias, laudos, decretos u órdenes en contra de cualquiera de las Partes exoneradas, sus activos o bienes de estas, en relación a dichas Reclamaciones exoneradas;

(c) Establecer, perfeccionar o ejecutar prendas de toda índole contra cualquiera de las Partes exoneradas, sus activos o bienes, con respecto a dichas Reclamaciones exoneradas;

(d) Salvo que se estipule expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT, alegar, implementar o efectuar cualquier compensación, derecho de subrogación, indemnización, contribución o recobro de cualquier tipo contra cualquier obligación exigible a cualquiera de las Partes exoneradas, sus activos o bienes, vinculados con dichas Reclamaciones exoneradas; y

(e) Emprenden cualquier actuación, de la manera que fuera y en cualquier lugar, que no se ajuste al, o cumpla con las disposiciones del, Plan de la ACT o la Orden de confirmación de la ACT, en el bien entendido de que el hecho de que el Deudor cumpla los requisitos formales de la Regla de Quiebras 3016 no constituye una admisión de que el Plan de la ACT contempla cualquier interdicto en contra de una conducta que no esté de otro modo prohibida por el Código de Quiebras.

Fecha: 23 de junio de 2022, San Juan, Puerto Rico

Presentado respetuosamente, /s/ Brian S. Rosen, Martin J. Bienenstock (admitido *pro hac vice*), Brian S. Rosen (admitido *pro hac vice*), **PROSKAUER ROSE LLP**, Eleven Times Square, Nueva York, NY 10036, *Abogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, Esq., USDC Núm. 215205, **O'NEILL & BORGES LLC**, 250 Avenida Muñoz Rivera, Suite 800, San Juan, P.R. 00918-1813, *Coabogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor*

[1] Los Deudores de estos Casos del Título III, conjuntamente con los números de casos del Título III de los respectivos Deudores y los cuatro (4) últimos dígitos del número de identificación tributaria federal de cada Deudor, según proceda, son (i) el Estado Libre Asociado de Puerto Rico (Caso de quiebra núm. 17-BK-3283-LTS) (cuatro últimos dígitos del número de identificación tributaria federal: 3481); (ii) Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra núm. 17-BK-3284-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 8474); (iii) Autoridad de Carreteras y Transportación de Puerto Rico ("ACT") (Caso de quiebra núm. 17-BK-3567-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico ("SRE") (Caso de quiebra núm. 17-BK-3566-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 9686); (v) Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") (Caso de quiebra núm. 17-BK-4780-LTS) (Caso de quiebra núm. 17-BK-4780-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3747); y (vi) Autoridad de Edificios Públicos de Puerto Rico ("AEP") (Caso de quiebra núm. 19-BK-5523-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3801) (los números de casos del Título III están enumerados como números de Casos de quiebra debido a las limitaciones del software).

[2] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

[3] Todos los términos en mayúsculas utilizados pero no definidos tendrán los significados atribuidos a los mismos en el Plan.

[4] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

pressreader PRINTED AND DISTRIBUTED BY PRESSREADER PressReader.com +1 604 278 4604 COPYRIGHT AND PROTECTED BY APPLICABLE LAW

# Exhibit G

***El Vocero de Puerto Rico***

**<u>(June 30, 2022)</u>**





## AFIDAVIT
## AVISO PÚBLICO

**NOTIFICACIÓN DE (I) LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL
ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA VISTA DE CONFIRMACIÓN DEL
PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE
AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE VOTACIÓN SOBRE EL PLAN DE
AJUSTE Y LA CELEBRACIÓN DE DETERMINADAS ELECCIONES DENTRO DE SU MARCO**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| PROMESA | PROMESA |
|---|---|
| Título III | Título III |
| Núm. 17 BK 3283-LTS | Núm. 17 BK 3567-LTS |

Yo, Yadhira Vargas Pérez habiendo prestado el juramento debido, declaro lo siguiente:
Que soy Junior Accountant de Publi-Inversiones para el periódico El Vocero de Puerto Rico el
cual se publica en San Juan Puerto Rico y que en las ediciones de este mismo diario
correspondientes a los siguientes días:

**30 de junio de 2022**

Se dio publicidad al aviso expedido por el peticionario: **Estado Libre Asociado de Puerto
Rico.**

Sobre el asunto arriba mencionado, y copia del cual se une al presente affidavit para que forme
parte del mismo.

San Juan, Puerto Rico, a _____ AUG - 2 2022 _____

Affidavit Núm. 123943 del Registro

_____
Yadhira Vargas Pérez
Departamento de Finanzas

Jurado y reconocido ante mí por Yadhira Vargas Pérez, mayor de edad, soltera, vecina de
Carolina y Junior Accountant del Departamento de Finanzas de Publi-Inversiones para el
periódico El Vocero de Puerto Rico, de esta vecindad, a quien doy fe de conocer personalmente.

San Juan, Puerto Rico, a _____ AUG - 2 2022 _____

_____
NOTARIO PÚBLICO

**Aviso Público (página 1 de 2)**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante del
ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,
Deudores.[1]

| PROMESA Título III Núm. 17 BK 3283-LTS (Administrado de manera conjunta) |

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante de la
AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO,
Deudor.

| PROMESA Título III Núm. 17 BK 3567-LTS |

**NOTIFICACIÓN DE (I) LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA VISTA DE CONFIRMACIÓN DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE VOTACIÓN SOBRE EL PLAN DE AJUSTE Y LA CELEBRACIÓN DE DETERMINADAS ELECCIONES DENTRO DE SU MARCO**

Si tiene usted derecho de voto a o elegir una opción con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.
**FECHA LÍMITE DE VOTACIÓN Y ELECCIÓN: 5:00 p.m. (hora estándar del Atlántico) el 27 de julio de 2022**
**FECHA LÍMITE PARA OBJECIONES: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**
**VISTA DE CONFIRMACIÓN: 17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico**

Para cualquier consulta relativa a esta notificación, sírvase ponerse en contacto con Kroll Restructuring Administration LLC ("Kroll")[2] a través del teléfono (844) 822-9231 (gratuito para EE.UU. y Puerto Rico), o bien al (646) 486-7944 (para llamadas internacionales). El horario de atención es desde las 10:00 a.m. hasta las 7:00 p.m. (hora estándar del Atlántico (disponible en español), o bien al correo electrónico puertoricoinfo@primeclerk.com.

**SÍRVASE TOMAR NOTA DE LO SIGUIENTE:**

1. *Aprobación de la Declaración de divulgación.* Mediante la orden de fecha 22 de junio de 2022 (la "Orden de Declaración de divulgación"), el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "Tribunal") aprobó como adecuada la información contenida en la *Declaración de divulgación de la Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según pueda ser modificada o enmendada, incluyendo todos los anexos y documentación adjunta a la misma, la "Declaración de divulgación"), registrada por la Junta de Supervisión y Administración Financiera de Puerto Rico, que autoriza al Deudor a solicitar votos con respecto a la aprobación o rechazo de la *Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según la misma pueda ser enmendada o modificada, incluyendo todos los anexos y complementos de la misma, el "Plan"), adjunta como **Anexo A** a la Declaración de divulgación.

Podrá solicitar una copia impresa del Plan y de la Declaración de divulgación, incluyendo sus correspondientes traducciones al español, al Agente de votación, Kroll Restructuring Administration LLC (anteriormente denominado Prime Clerk LLC):
Teléfono (de 10:00 a.m. a 7:00 p.m. (AST)) (disponible en español):
(844) 822-9231 (gratuito en EE.UU. y Puerto Rico)
(646) 486-7944 (para llamadas internacionales)
Correo electrónico: puertoricoinfo@primeclerk.com
Alternativamente, puede acceder a las copias electrónicas de la Declaración de divulgación y del Plan visitando el sitio https://cases.primeclerk.com/puertorico/.

2. De conformidad con la Orden de la Declaración de divulgación, el Deudor enviará los materiales necesarios para votar por la aceptación o rechazo del Plan, o para elegir opciones en materia de las distribuciones propuestas del "Paquete de convocatoria") a los Titulares de Reclamaciones de las siguientes Clases (denominadas colectivamente "Clases con derecho a voto"):

| | Clase |
|---|---|
| Reclamaciones de Bonos 68 de la ACT | Clase 1 |
| Reclamaciones de Bonos 68 de la ACT (Ambac) | Clase 2 |
| Reclamaciones de Bonos 68 de la ACT (Assured) | Clase 3 |
| Reclamaciones de Bonos 68 de la ACT (National) | Clase 4 |
| Reclamaciones de Bonos Senior 98 de la ACT | Clase 5 |
| Reclamaciones de Bonos Senior 98 de la ACT (Ambac) | Clase 6 |
| Reclamaciones de Bonos Senior 98 de la ACT (Assured) | Clase 7 |
| Reclamaciones de Bonos Senior 98 de la ACT (FGIC) | Clase 8 |
| Reclamaciones de Bonos Senior 98 de la ACT (National) | Clase 9 |
| Reclamaciones de Bonos subordinados 98 de la ACT | Clase 10 |
| Reclamaciones de Bonos subordinados 98 de la ACT (Assured) | Clase 11 |
| Reclamaciones de Bonos subordinados 98 de la ACT (FGIC) | Clase 12 |
| Reclamaciones de Bonos subordinados 98 de la ACT (National) | Clase 13 |
| Reclamaciones de Domino eminente/Expropiación forzosa inversa | Clase 14 |
| Reclamaciones generales no garantizadas de la ACT | Clase 15 |
| Reclamaciones de la ACT/BGF | Clase 16 |
| Reclamaciones de la ACT/DGF | Clase 17 |
| Reclamaciones federales | Clase 20 |

3. *Vista de confirmación.* Una vista para considerar la confirmación del Plan (la "Vista de confirmación") se celebrará ante la Honorable Laura Taylor Swain, del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (o según se determine en virtud de una orden del Tribunal), el **17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**.

4. La Vista de confirmación podrá ser continuada periódicamente en el curso de la Supervisión, sin necesidad de notificaciones adicionales mediante los aplazamientos anunciados durante las sesiones, o bien objeción en cualquier notificación de orden del día de asuntos a tratar programados para la vista y presentada ante el Tribunal, y el Plan podrá ser modificado, si fuera necesario, antes, durante o como resultado de la Vista de confirmación, de conformidad con las cláusulas de modificación del Plan y de la Regla local 3016-2, sin necesidad de notificación adicional a las partes interesadas.

5. *Depositario de Confirmación del Plan.* La información relativa a la confirmación del Plan está disponible en línea en el sitio del Depositario de Confirmación del Plan, titleiiiplandataroom.com.

6. *Fecha límite para objeciones a la confirmación.* El Tribunal ha establecido las **5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022** (la "Fecha límite de objeción a la confirmación") como fecha límite para registrar objeciones o respuestas a la confirmación del Plan propuesto. Las partes que no presenten una objeción al Plan antes de la Fecha límite de objeción a la confirmación tendrán prohibido hacer presentaciones orales ante el Tribunal durante la Vista de confirmación.

7. *Objeciones y respuestas a la confirmación.* Las objeciones y respuestas a la confirmación del Plan deberán:
   a. Presentarse por escrito, en inglés, y estar firmadas;
   b. Indicar el nombre, domicilio y naturaleza de la Reclamación de la parte objetora y replicante;
   c. Indicar específicamente el fundamento y naturaleza de cualquier objeción o respuesta, e incluir, si procede, el texto propuesto para insertar en el Plan, con el objeto de resolver dicha objeción o respuesta;
   d. Presentarse electrónicamente ante el Tribunal en los expedientes de (i) *En el asunto de la Autoridad de Carreteras y Transportación de Puerto Rico*, Caso núm. 17 BK 3567-LTS, y (ii) *En el asunto del Estado Libre Asociado de Puerto Rico*, Caso núm. 17 BK 3283-LTS, a través del sistema de presentación de casos del tribunal, en formato electrónico portátil con función de búsqueda **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**;
      i. Si no es usted abogado registrado como usuario en el sistema de presentación de casos del Tribunal, podrá enviar su objeción por correo postal a la oficina de la Secretaría del Tribunal:
         Tribunal de Distrito de Estados Unidos, Secretaría
         150 Avenida Carlos Chardón, Suite 150,
         San Juan, P.R. 00918-1767
      para que sea recibida **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022** y
   e. Cursarla a la Oficina del Fideicomisario de los Estados Unidos para el Distrito de Puerto Rico,

---

Edificio Ochoa, Calle Tanca 500, Suite 301, San Juan, PR 00901 (ref. En el asunto de: Autoridad de Carreteras y Transportación de Puerto Rico), para que sea recibida como más tardar en la Fecha límite de objeción a la confirmación.

8. *Calendario y fechas límite de confirmación e indagatoria.* El Tribunal ha establecido las siguientes fechas y plazos límite para indagatorias, que serán aplicables al Deudor y a otras partes interesadas:

| Resumen de ciertas fechas límite |
|---|
| **1 de julio de 2022** — Fecha límite para que las Partes registren la lista de testigos de hechos, detallando los temas acerca de los cuales testificará cada uno de ellos (las "Listas de testigos de hecho"). Fecha límite para que las partes registren las declaraciones iniciales de peritos ("Declaraciones iniciales de peritos"), si las hubiere. Fecha límite para que las Partes cursen solicitudes de presentación de documentos que no estén bajo custodia del Depositario (las "Solicitudes de presentación"). Las respuestas y objeciones a las citadas Solicitudes de presentación podrán cursarse dentro de un plazo de siete (7) días desde la recepción de dichas Solicitudes. Las Partes podrán cursar hasta una ronda adicional de Solicitudes de presentación, siempre y cuando se haga en o antes del 11 de julio de 2022. |
| **8 de julio de 2022** — Fecha límite para que las Partes cursen hasta quince (15) interrogatorios ("Interrogatorios"), incluyendo las subpartes. Las respuestas y objeciones a los citados Interrogatorios podrán cursarse dentro de un plazo de diez (10) días desde la recepción de dichos Interrogatorios. |
| **12 de julio de 2022** — Fecha límite para que las partes registren los informes periciales iniciales (los "Informes periciales iniciales"), si las hubiere. Si se presenta algún Informe pericial inicial, las refutaciones a las divulgaciones de expertos deberán presentarse en un plazo de tres (3) días desde dicha presentación, y las respuestas a dichas refutaciones se presentarán cinco (5) días después de las divulgaciones. |
| **18 de julio de 2022** — Fecha límite para que las partes cursen las notificaciones de declaraciones juradas, temas y horarios solicitados para las mismas ("Notificaciones de declaraciones juradas") (todas las partes están limitadas a un límite de siete (7) horas para declaraciones juradas). |
| **20 de julio de 2022** — Fecha límite para que las Partes cursen solicitudes de admisión, limitadas a la autentificación de documentos ("Solicitudes de Admisión"). Las respuestas y objeciones a las citadas Solicitudes de Admisión podrán cursarse dentro de un plazo de cuatro (4) días laborables desde la recepción de las mismas. |
| **22 de julio de 2022** — Conclusión de la indagatoria de peritos (la "Fecha límite de indagatoria de peritos"). |
| **25 de julio de 2022** — Fecha límite para que las partes presenten Daubert y mociones in límine. |
| **27 de julio de 2022** — Fecha límite para: Objeciones a la confirmación del Plan ("Objeciones"). Objeciones a la Propuesta de Orden de confirmación. Fecha límite de votación / Fecha límite de elección. Fecha límite para que las partes registren las listas de testigos, las listas de pruebas y las designaciones de declaraciones juradas definitivas. |
| **29 de julio de 2022** — Fecha límite para que las partes presenten oposiciones a las mociones Daubert y designaciones de declaraciones juradas y (b) designaciones opuestas. |
| **1 de agosto de 2022** — Fecha límite para que las partes presenten (a) objeciones a las listas de pruebas y designaciones de declaraciones juradas y (b) designaciones opuestas. |
| **3 de agosto de 2022** — Fecha límite para que las partes presenten sus respuestas en apoyo de las mociones Daubert y las mociones in límine. |
| **7 de agosto de 2022** — Fecha límite para que el Deudor presente: Memorando de ley en apoyo de la confirmación. Réplicas generales a las objeciones a la confirmación y a la propuesta de orden de confirmación. Declaraciones de testigos y recuento de votos. Antecedentes de hecho y conclusiones de derecho. Fecha límite para los deudores presenten declaraciones de testigos. |
| **8 de agosto de 2022** — Conferencia virtual previa al juicio. |
| **15 de agosto de 2022** — Fecha límite para que las Partes presenten objeciones a los Antecedentes de hecho y conclusiones de derecho. |
| **17-18 de agosto de 2022** — Vista de confirmación. |

9. *Fecha de registro de votación.* La fecha de registro de votación será el **17 de junio de 2022** (la "Fecha de registro de votación"), que será la fecha para determinar cuáles titulares de Reclamaciones de las Clases con derecho a voto (excepto las Clases de Bonos) tienen derecho a favor o en contra del Plan. Por consiguiente, solamente podrán votar a favor o en contra del Plan los acreedores de una Clase con derecho a votar por el Plan que mantenga Reclamaciones contra el Deudor (salvo en las Clases de bonos) a la Fecha de registro de votación.

10. *Fecha límite de votación.* La fecha límite para votar a favor o en contra del Plan es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicho plazo sea prorrogado (la "Fecha límite de votación"). *Usted no está obligado a votar a favor o en contra del Plan para percibir distribuciones de conformidad con los términos y condiciones del Plan, si este es confirmado por el Tribunal, siempre y cuando sea titular de una Reclamación permitida.*

11. Si recibió un Paquete de convocatoria, incluyendo una Papeleta o Notificación, y tiene previsto ejercitar su voto sobre el Plan, *deberá* (a) atenerse estrictamente a las instrucciones; (b) completar *todos* los datos requeridos en la Papeleta (según proceda); y (c) bien (i) ejecutar y devolver la Papeleta de conformidad con el contenido en las instrucciones de votación incluidas en el Paquete de convocatoria, de modo que su Papeleta sea recibida por el Agente de votación del Plan, Kroll Restructuring Administration LLC ("Kroll"), del "Agente de votación") (*) como más tardar en la Fecha límite de votación, o bien (ii) ordenar a su intermediario de la persona designada (por ejemplo, corredor, vendedor, banco o institución financiera o bien a cualquier otro agente denominados (cada uno de ellos una "Entidad de la ATOP" en The Depository Trust Company ("DTC") en función de que toda entidad de la ATOP mantenga Reclamaciones de conformidad con su participación del Programa Automatizado de Oferta de Presentación ("ATOP") de The Depository Trust Company ("DTC") en función de que toda entidad de la ATOP mantenga Reclamaciones de conformidad con su participación del Programa Automatizado de Oferta de Presentación ("ATOP") de The Depository Trust Company ("DTC") en función de votar de modo que su Papeleta sea recibida por el Plan en o antes de la Fecha límite de votación. *El incumplimiento de estas instrucciones puede hacer que su voto sea descalificado.*

12. *Fecha límite de elección.* La fecha límite para que los tenedores de Reclamaciones de Bonos puedan elegir escoger, ejercer la forma de distribución según el Plan realicen dicha elección es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo si dicho plazo es prorrogado (la "Fecha límite de elección"). Si ha recibido una Notificación con su derecho a hacer una elección *deberá* (a) atenerse estrictamente a las instrucciones; y (b) cumplimentar *todos* los datos requeridos en las instrucciones de elección, de modo que usan efectivamente recibidas por su Persona designada con suficiente antelación para que ésta pueda *ejecutar efectivamente* su elección a través del sistema ATOP de DTC, como más tardar en la Fecha límite de elección.

13. *Partes interesadas sin derecho al voto.* Se considera que los acreedores de la Clase 18 (Reclamaciones subordinadas de la Sección 510(b)) rechazan el Plan, por lo cual no tienen derecho de voto.

14. Se considera que las siguientes Clases aceptan el Plan por lo cual:
   • Clase 14 (Reclamaciones de Bonos Moscoso de la ACT);
   • Clase 19 (Reclamaciones de convenio de la ACT);

15. Si una Reclamación está incluida en la Lista de acreedores del Deudor (Registro en el expediente judicial núm. 2163 en el Caso núm. 17-3283) como contingente, no liquidada o impugnada, y (i) no se registró una evidencia de reclamación en la Fecha de registro para presentación de pruebas de reclamación establecida por el Tribunal o en la Fecha de registro de votación (según proceda), o (ii) considerada debidamente registrada por orden del Tribunal antes de la Fecha límite de votación, dicha Reclamación no tendrá derecho a votar por la aceptación o rechazo del Plan. Tampoco las pruebas de reclamaciones presentadas por $0.00 o aquellas desestimadas por orden del Tribunal tendrán derecho de voto.

16. Si usted ha presentado oportunamente una evidencia de reclamación y no está de acuerdo con la

---

clasificación del Deudor, la objeción o la solicitud de estimación de su Reclamación y cree que debería tener derecho a votar sobre el Plan, debe notificarlo al Deudor y a las partes enumeradas en el apartado 16 de la Orden de Declaración de divulgación y registrar en el Tribunal (con copia al Despacho de la juez) una moción (una "Moción conforme a la Regla 3018(a)") para obtener una orden a tenor de la Regla 3018 de las Reglas Federales de Procedimiento de Quiebra (las "Reglas de Quiebra") que permita de forma provisional su Reclamación por un monto diferente o una Clase diferente a los efectos de votar para aceptar o rechazar el Plan. Todas las Mociones de la Regla 3018(a) deben presentarse como más tardar décimo (10) días después de la más tardía de las siguientes fechas: (i) la notificación de esta Vista de Confirmación y (ii) la notificación de una objeción o solicitud de estimación, si la hubiera, en cuanto a dicha Reclamación, lo que debe tardar en producirse. Se concede un plazo de respuesta que presente una Moción de la Regla 3018(a), y esta moción debe establecerse en la Regla 3018(a). Las Mociones de la Regla 3018(a) que no se hayan presentado a tiempo y en la forma establecida en el presente no serán tenidas en cuenta.

17. Sírdese que su Reclamación sea admitida provisionalmente a efectos de votación de conformidad con la Regla de Quiebras 3018(a), encontrará un formulario de la Regla 3018(a) con instrucciones para completar y presentar la moción en https://cases.primeclerk.com/puertorico/.

18. *Partes que no serán tratadas como Acreedores.* Cualquier titular de una Reclamación que (i) esté incluido en la Lista de Acreedores a $0.00 y que no sea objeto de una evidencia de Reclamación presentada a tiempo o una evidencia de Reclamación que se considere presentada a tiempo ante el Tribunal a tenor del Código de Quiebras o cualquier orden del Tribunal, o que se considere presentada a tiempo según la ley aplicable, o bien (ii) esté programado y no esté programado y no se incluye en la reclamación presentada a tiempo o una evidencia de reclamación considerada como presentada a tiempo ante el Tribunal a tenor del Código de Quiebras o cualquier orden del Tribunal, o de otra manera considerada como presentada a tiempo conforme a la ley aplicable, no será tratado como un acreedor con respecto a dicha Reclamación a los efectos de (a) recibir notificaciones sobre el Plan, y (b) votar sobre el Plan.

19. *Información adicional.* Cualquier parte interesada que desee obtener información sobre los procedimientos de convocatoria o copias de la Declaración de Divulgación o del Plan, incluyendo sus traducciones al español, debe ponerse en contacto con el Agente de votación, Kroll Restructuring Administration LLC, por teléfono llamando al (844) 822-9231 (llamada gratuita para EE.UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricoinfo@primeclerk.com, o bien visitando el sitio web oficial de los casos del Título III, https://www.prcourts.org/court, cuya version que se requiere una contrareña y credenciales de inicio de sesión para acceder a los documentos que figuran en el sitio web del Tribunal a través del sistema de Acceso Público a los Registros Electrónicos del Tribunal ("PACER, por sus siglas en inglés") (https://pacer.uscourts.gov).

20. *Reglas de Quiebra 2002(c)(3) y 3016(c).* De acuerdo con las Reglas de Quiebra 2002(c)(3) y 3016(c), a continuación se exponen las disposiciones de descargo, exculpación e interdicto contenidas en el Plan:

**Sección 41.2 – Exoneración y descargo de reclamaciones y causas de acción:**

(a) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio de, y en completa satisfacción, liquidación, exoneración y descargo de, todas las Reclamaciones y Causas de acción contra el Deudor y la ACT Reorganizada que surgieron, en todo o en parte, antes de la Fecha de vigencia de la ACT, en relación con los Casos del Título III, el Deudor, la ACT reorganizada o cualquiera de sus respectivos Activos, bienes o intereses de todo índole, incluidos los intereses devengados por dichas Reclamaciones en o a partir de la Fecha de petición de la ACT, e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan a cuenta de las dichas Reclamaciones o Causas de acción; teniendo en cuenta, sin embargo, que, no obstante los derechos de exculpación establecidos en la Sección 41.7 del Plan de la ACT, nada de lo contenido en el Plan de la ACT o la Orden de Confirmación de la ACT tiene la intención de ser, ni deberá ser interpretado, como un otorgamiento de una exención no consensuada a terceros de los Acreedores del AAP de la ACT/ADCC y sus respectivas Personas Vinculadas por parte de los No Acreedores del Deudor. En la Fecha de Vigencia de la ACT, el Deudor y ACT reorganizada se considerarán exonerados y eximidos de todas y cada una de las Reclamaciones, Causas de acción y cualquier otra deuda aunada, antes de la Fecha de vigencia de la ACT y todas las Reclamaciones que así especificando en las secciones 502(g), 502(h) o 502(i) del Código de Quiebras, en la Sección 407 de la Ley PROMESA, ya sea o no (a) una evidencia de reclamación basada en la cual se presente o se considere presentada dicha Reclamación en virtud de la Sección 501 del Código de Quiebras, (b) que se autorice dicha Reclamación conforme a la sección 502 del Código de Quiebras o la Sección 407 de la Ley PROMESA (o que se resuelva de otro modo), o (c) que el titular de una Reclamación basada en una deuda haya votado en apoyo o aceptar el Plan de la ACT. A efectos de disipar cualquier duda, nada de lo contenido en el Plan de la ACT o en la Orden de Confirmación de la ACT libera, exime o de otro modo afecta la obligación de pago de cualesquiera Reclamaciones caso de las Reclamaciones caso por especificado en las secciones señaladas en esta sección o de conformidad a la AEE como costas de Seguros nominativa pertinentes, y la AEE no exime de ninguna reclamación ni causa de acción contra cualquier Entidad no deudora. Las reclamaciones y causas de acción contra la AEE derivadas de, o relacionadas con, los bonos emitidos por la AEE, así como las exenciones contra la AEE y sus activos, se dirigirán al caso del Título III de la AEE, incluyendo cualquier plan de ajuste pertinente.

(b) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las Entidades estarán impedidas de hacer valer todas y cada una de las Reclamaciones contra el Deudor y la ACT reorganizada, y cada uno de sus respectivos Activos, bienes y derechos, recursos, Causas de acción o Causas de acción de responsabilidades de toda índole, relacionadas con los Casos del Título III, el Deudor y la ACT reorganizada o cualquiera de sus respectivos Activos y bienes, incluyendo cualquier interés acumulado sobre dichas Reclamaciones desde y después de la Fecha de petición de la ACT e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan de la ACT con cargo a dichas Reclamaciones o Causas de acción contra la ACT reorganizada conforme a la Sección 407 del Código de Quiebras, (b) que se hallaren en posesión de dicha Reclamación o Causa de acción, Reclamaciones u obligaciones, demandas, sentencias, daños y perjuicios, deudas, derechos, recursos, causas de acción o responsabilidades. De conformidad con lo anterior, salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, la Orden de confirmación de la ACT constituirá una determinación judicial, a la Fecha de vigencia, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción o deuda del Deudor y la ACT reorganizada y la ACT del Deudor el título III de la AEE, pendientes conforme al Plan de la ACT. Al confirmar la confirmación del Plan de la ACT, la Orden de confirmación de la ACT constituirá una determinación judicial, a la Fecha de vigencia, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción o deudas del Deudor y la ACT reorganizada, exonerados del Gobierno fundamentalmente que, que se deriven de, o estén relacionados con, las Reclamaciones de Causas de acción exonerados del Gobierno o cualquiera de las Reclamaciones y Causas de acción de acción aunadas o que podrán haberse planteado, incluyendo, entre otros, en las Acciones de recuperación de cualquier índole (Clawback) y las Mociones de levantamiento de la paralización, y (ii) ayudarán directa o

(continúa en la página siguiente)

*(continúa de la página anterior)*

**indirectamente a ninguna persona a realizar ninguna acción con respecto a las Reclamaciones exoneradas del Gobierno que esté prohibida por la Sección 41.2 del Plan de la ACT.**

**(d) Limitación de la SEC. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que la SEC haga valer sus potestades en materia de políticas o reglamentos; ni (ii) impedir, limitar, perjudicar ni retrasar que la SEC incoe o prosiga reclamaciones, pleitos, procedimientos o investigaciones contra personas físicas o jurídicas no deudoras en ningún foro.**

**(e) Limitación de Estados Unidos. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que Estados Unidos o cualquiera de sus organismos, departamentos o agentes eximan de algún modo al Deudor o a la ACT reorganizada, según proceda, de cumplir las leyes y requisitos federales o territoriales que implementen programas federalmente autorizados o delegados para la protección de la salud, la seguridad y el medio ambiente de personas de dicho territorio, (ii) amplíe el ámbito de cualquier exoneración, exención o recurso a los cuales el Deudor o la ACT reorganizada tengan derechos de conformidad con el Título III, ni (iii) eximan, libren, impidan o prohíban de alguna manera (A) cualquier responsabilidad del Deudor o la ACT reorganizada ante Estados Unidos derivados de, y posteriores a, la Fecha de vigencia, (B) cualquier responsabilidad de cara a los Estados Unidos que no sea una Reclamación, (C) cualquier defensa afirmativa o cualquier derecho de compensación o recobro de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, reservándose expresamente dichos derechos de compensación y recobro de las citadas partes, (D) la continuidad de la validez de las obligaciones de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, en virtud de cualquier subsidio o acuerdo de asistencia cooperativa de Estados Unidos, (E) las obligaciones del Deudor o la ACT reorganizada derivadas de políticas, leyes o reglamentos federales, incluyendo, entre otros, leyes relativas al medio ambiente, la salud o la seguridad pública, o leyes territoriales que implementen dichas disposiciones legales federales, incluyendo, entre otros, obligaciones de cumplimiento normativo, requisitos de decretos de consentimiento o de órdenes judiciales, y obligaciones de pagar las correspondientes penalizaciones administrativas, civiles y de otra índole, (F) cualquier responsabilidad para con Estados Unidos de parte de cualquier no deudor. Sin que ello suponga una limitación a la generalidad de lo antedicho, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT podrá considerarse (i) una determinación de la obligación tributaria de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (ii) vinculante para el IRS con respecto a las obligaciones tributarias federales, estatus fiscal u obligaciones de declaración y retención de impuestos de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (iii) una exención, satisfacción, excepción ni prohibición de cualquier recaudación reclamada por el IRS contra cualquier entidad que no sean el Deudor y la ACT reorganizada, y (iv) otorgar ninguna exención a ninguna Entidad que el Tribunal tenga prohibido por la Ley de Sentencias Declaratorias, 28 U.S.C. § 2201(a) o la Ley contra Medidas Cautelares aplicables a impuestos, 26 U.S.C. § 7421(a).**

**(f) Actuaciones de las aseguradoras. No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT o en la Orden de confirmación de la ACT, incluyendo, entre otros, las Secciones 41.2, 41.3 y 41.11 del Plan de la ACT, salvo que pueda ser impedida a tenor de las cláusulas de la Ley PROMESA, nada de lo contenido en el Plan de la ACT, la Orden de confirmación de la ACT o cualquier otro documento relacionado con el Plan de la ACT o en el Suplemento de la ACT, tiene por objeto, ni podrá interpretarse como dirigido a, perjudicar, alterar, modificar, disminuir, prohibir, impedir, restringir, limitar, eximir, reducir, eliminar o limitar los derechos de los demandantes y demandados, incluyendo, entre otros, las partes de las Acciones de las aseguradoras, de hacer valer sus respectivos derechos, reclamaciones, causas de acción y defensas en dichas Acciones, incluyendo, entre otros, las Reclamaciones, defensas, causas de acción y derechos de compensación o recobro (en la medida en que estuvieran disponibles), o cualesquiera otros derechos de determinación de responsabilidad u otros fundamentos para la reducción de (o acreditación contra) cualquier sentencia relacionada con las Acciones de las aseguradoras (en conjunto, los "Derechos de defensa"); aunque siempre en el bien entendido de que, a efectos de disipar cualquier duda, bajo ninguna circunstancia podrá utilizarse alguno de los Derechos de defensa para obtener o conseguir el pago afirmativo de dinero o el traspaso afirmativo de bienes a algún demandante, demandado o, en la medida en que proceda, demandado tercero, por parte del Deudor, de la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otra agencia u organismo del mismo, en relación con una Acción de aseguradora, y asimismo siempre y cuando a ninguna de las partes de estas Acciones, incluyendo, entre otros, demandantes, demandados y, si los hubiera, demandados terceros, se le permita incoar: (i) contra el Deudor o la ACT reorganizada, ninguna Reclamación o Causa de acción con el objeto de obtener un recobro monetario afirmativo que, de otro modo, esté excluida o desestimada como consecuencia de las Órdenes de Fecha límite, el Plan de la ACT y/o la Orden de confirmación de la ACT; y/o (ii) contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier organismo o agencia del mismo, cualesquiera Reclamaciones o contrarreclamaciones a efectos de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, planteadas con el objeto de obtener un recobro monetario afirmativo, Reclamaciones o contrarreclamaciones que serán consideradas desautorizadas, desestimadas, exoneradas o restringidas de conformidad con los términos y disposiciones del Plan de la ACT y la Orden de confirmación de la ACT; entendiéndose asimismo que nada de lo contenido en la Orden de confirmación de la ACT tiene por objeto, ni deberá interpretarse como un intento de, prohibir, excluir, vetar, modificar o limitar en modo alguno la capacidad de cualquier demandado de una Acción de aseguradora de plantear Derechos de defensa para reducir, eliminar o limitar la cuantía de cualquier responsabilidad o sentencias de la Acción de una aseguradora. Las partes de las Acciones de aseguradoras estarán permanentemente excluidas, restringidas, prescritas y limitadas para emprender, incoar o demandar contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otro organismo o agencia del mismo, Reclamaciones o contrarreclamaciones con el objeto de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, en la medida en que se planteen con el objetivo de conseguir un recobro monetario afirmativo basado en, derivado de o relacionado con, las Acciones de aseguradoras, tanto si dicha Reclamación o contrarreclamación pueda incoarse como si no ante un tribunal, un arbitraje, una agencia o foro administrativo, o de cualquier otra manera.**

**Sección 41.3 – Interdicto sobre las Reclamaciones:**

**Salvo que se disponga expresamente lo contrario en el Plan de la ACT, en la Orden de confirmación de la ACT o en cualquier otra Orden final del Tribunal del Título III que pudiera ser aplicable, todas las Entidades que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor con la Sección 41.2 del Plan de la ACT o que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor de la Sección 41.2 del Plan de la ACT tienen permanentemente prohibido, en o a partir de la Fecha de vigencia de la ACT, (a) incoar o continuar, directa o indirectamente, en cualquier modalidad, cualquier acción u otro procedimiento (incluyendo, entre otros, cualquier procedimiento judicial, arbitral, administrativo u otro) de toda índole sobre cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, (b) la ejecución, el embargo, el cobro o la recuperación por cualquier forma o medio de cualquier sentencia, laudo, decreto u orden contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT, (c) crear, perfeccionar o aplicar gravámenes de toda índole contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT; y (d) salvo en la medida en que se disponga, permita o preserve en las secciones 553, 555, 556, 559 o 560 del Código de Quiebras o conforme al derecho consuetudinario de recobro o de hacer valer cualesquiera derechos de compensación, subrogación o recuperación de toda índole con cargo cualquier obligación debida de cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, con respecto a cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT. Este interdicto se extenderá a todos los sucesores y cesionarios de las Partes exoneradas y sus respectivos activos y bienes.**

**Sección 41.5 – Exoneraciones del Deudor y de la ACT reorganizada:**

**Salvo que se disponga expresamente lo contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, en la Fecha de vigencia de la ACT, y a cambio de una contrapartida válida y valiosa, por la presente se considerará que tanto el Deudor como la ACT reorganizada, el Agente pagador y cada una de las Personas relacionadas del Deudor y la ACT reorganizada, han renunciado, exonerado, absuelto y relevado irrevocable, incondicional, plena y definitivamente y a perpetuidad, a las Partes exoneradas de todas y cada una de las Reclamaciones o Causas de acción que el Deudor, la ACT reorganizada y el Agente pagador, o cualquiera de ellos o que reclame a través de ellos, en su nombre o por su propio beneficio, tengan o pudieran tener o reclamar tener, ahora o en el futuro, contra cualquier Parte exonerada que sean Reclamaciones exoneradas.**

**Sección 41.6 – Interdictos relacionados con descargos:**

**A la Fecha de vigencia de la ACT, todas las Entidades que tengan, hayan tenido o puedan tener una Reclamación exonerada considerada como tal de conformidad con la Sección 41.2 del Plan de la ACT, quedan y quedarán, de manera permanente, completamente y para siempre, suspendidas, restringidas, prohibidas, vetadas y desestimadas para llevar a cabo cualquiera de las siguientes acciones, tanto directa como indirectamente, de forma derivada o de otra manera, por cuenta de, o fundamentándose en, el asunto de dichas Reclamaciones exoneradas: (i) incoar, emprender o continuar de cualquier modo, tanto directa como indirectamente, cualquier juicio, acción u otro procedimiento (lo que incluye, entre otros, cualquier procedimiento judicial, arbitral, administrativo o de otro tipo) en cualquier foro; (ii) ejecutar, incautar (lo que incluye, entre otros, cualquier embargo previo a la sentencia), cobrar o intentar de otro modo recobrar cualquier sentencia, laudo, decreto u otra orden; (iii) crear, perfeccionar o de cualquier otro modo aplicar en cualquier cuestión, directa o indirectamente, cualquier Gravamen; (iv) compensar, exigir reintegros, aportaciones o subrogaciones, o recuperar de cualquier otra manera, directa o indirecta, cualquier cuantía en concepto de cualquier pasivo u obligación adeudados a cualquier Entidad exonerada conforme a la Sección 41.2 del Plan de la ACT; y (v) iniciar y continuar de cualquier otro modo y lugar, un procedimiento judicial, de arbitraje o administrativo en cualquier foro, que no cumpla o no sea compatible con las disposiciones del Plan de la ACT o de la Orden de confirmación de la ACT. Para evitar dudas, las siguientes estipulaciones se extinguirán con el registro de la Orden de confirmación de la ACT: (i) la Cuarta Estipulación enmendada entre el Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Suspensión de la prescripción y Orden de consentimiento [Caso núm. 173283-LTS, ECF núm. 15854] y sus enmiendas, y (ii) y sus enmiendas; y la Cuarta Estipulación enmendada y Orden de consentimiento entre los Deudores del Título III (salvo COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, actuando en nombre de las entidades gubernamentales enumeradas en el Apéndice "B" en relación con la Suspensión de la prescripción [Caso núm. 17-3283-LTS, ECF núm. 17394] y sus enmiendas.**

**Sección 41.7 – Exculpación:**

**(a) Partes del Gobierno: La Junta de Supervisión, la AAFAF, el Deudor y cada una de las respectivas Personas Relacionadas, actuando exclusivamente en su calidad de tales en cualquier momento hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7 no afectarán las responsabilidades de cualquier Entidad que de otro modo hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa. Ninguna de las disposiciones anteriores de esta Sección 41.7 menoscabará el derecho de ninguna de las Partes del Gobierno, ni de los funcionarios y directivos de las Partes del Gobierno que cumplan funciones en cualquier momento hasta la Fecha de vigencia de la ACT inclusive, ni de cada uno de sus profesionales respectivos de recurrir al asesoramiento de un abogado como defensa respecto de sus deberes y responsabilidades en virtud del Plan de la ACT.**

**(b) Acreedores del AAP de ACT/ADCC: Cada uno de los Acreedores del AAP de ACT/ADCC, actuando exclusivamente en su calidad de tales como parte del Acuerdo de Apoyo al Plan de ACT/ADCC y un Acreedor y/o Aseguradora, según proceda, desde la Fecha de petición de la ACT y hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la mediación, negociación, formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, el Acuerdo de Apoyo al Plan de ACT/ADCC, los Documentos definitivos o cualquier contrato, instrumento, publicación o convenio o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7(b) no afectarán a las responsabilidades de cualquier Entidad que, de otro modo, hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa.**

**(c) Aseguradoras Monolínea: Ambac, Assured, FGIC, National y sus respectivas Personas relacionadas, no tendrán ni incurrirán en responsabilidad legal alguna ante ninguna Entidad por acciones u omisiones compatibles con el Plan de la ACT o en relación con la formulación, preparación, difusión, implementación, aceptación, confirmación o aprobación del Plan de la ACT, lo que incluye, entre otros, el tratamiento de las Reclamaciones de Bonos asegurados por Ambac, las Reclamaciones de Bonos asegurados por Assured, las Reclamaciones de Bonos asegurados por FGIC o las Reclamaciones de Bonos asegurados por National, los procedimientos de votación, los procedimientos de elección y cualquier descargo de obligaciones en virtud de las Pólizas de seguro de Ambac, las Pólizas de seguro de Assured, las Pólizas de seguro de FGIC o las Pólizas de seguro de National correspondientes, siempre en el bien entendido de que, no obstante cualquier otra disposición en sentido contrario aquí contenida, los términos y condiciones del Plan de la ACT no relevarán ni exculparán, ni se entenderá que relevan o exculpan, cualesquiera obligaciones de pago —a tenor de la Póliza de Seguro de Ambac, la Póliza de Seguro de Assured, la Póliza de Seguro de FGIC o la Póliza de Seguro de National— a cualquier titular usufructuario de Bonos asegurados por Ambac, Bonos asegurados por Assured, Bonos asegurados por FGIC o Bonos asegurados por National, según proceda, de conformidad exclusivamente con sus términos, en la medida en que dicho titular no reciba el Tratamiento de Ambac, el Tratamiento de Assured, el Tratamiento de FGIC o el Tratamiento de National, según corresponda (o cualesquiera reclamaciones que Ambac, Assured, FGIC o National pudiera plantear contra un titular usufructuario de sus bonos respectivamente asegurados en relación con las obligaciones asumidas por Ambac, Assured, FGIC o National en virtud de las Pólizas de Seguro de Ambac, las Pólizas de Seguro de Assured, las Pólizas de Seguro de FGIC o las Pólizas de Seguro de National, respectivamente).**

**(d) Comité de Acreedores: Cada uno de los miembros del Comité de Acreedores, exclusivamente en su calidad de miembro del Comité de Acreedores, desde la Fecha de petición de la ACT hasta la Fecha de vigencia de la ACT, inclusive, y cada una de las Personas relacionadas del Comité de Acreedores, no tendrán ni incurrirán en responsabilidad legal alguna ante cualquier Entidad por acciones u omisiones relacionadas con los Casos de Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT de cualquier compromiso o acuerdo contenido en este documento, la Declaración de divulgación de la ACT o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que, no obstante la exculpación precedente, en caso de que se emprenda contra un miembro del Comité de Acreedores un litigio vinculado con las acciones precedentes, cada miembro tendrá derecho a que se le reintegren honorarios y gastos legales razonables y a que se le indemnice por los daños adjudicados en cada caso, por la ACT como consecuencia de una Orden Final; y asimismo en el bien entendido de que las cláusulas precedentes de esta Sección 41.7(d) no afectarán a la responsabilidad de alguna Entidad que, de otro modo, conllevaría dicha acción u omisión, en la medida en que, en una Orden final, se determine que dicha acción u omisión constituyó fraude intencional o conducta dolosa.**

**(e) Las Partes de la ARD: Cada una de la ARD y las Partes de la ARD, desde la Fecha de Petición de la ACT hasta e incluyendo la Fecha de Entrada en Vigencia de la ACT y cada uno de los predecesores, sucesores y cesionarios respectivos de las Partes de la ARD (ya sea de oficio o de otra manera), y sus respectivos asesores financieros, abogados, contadores, consultores, agentes y profesionales, u otros representantes, cada uno actuando en tal capacidad, y cualquier Entidad que actúe para o en nombre de cada uno de ellos, en cada caso, únicamente en la medida de que actúen en tal capacidad, no tendrá ni incurrirá en ninguna responsabilidad ante ninguna Entidad por cualquier acto realizado u omitido en relación con el Caso de Título III, mediación, negociación, formación, preparación, diseminación, implementación, confirmación u aprobación del Plan de la ACT o cualquier transacción o conciliación contenido en estas, la Declaración de Divulgación, la Estipulación de la ARD, o cualquier contrato, instrumento, descargo u otro acuerdo o documento dispuesto o contemplado en relación con el perfeccionamiento de las transacciones estipuladas en el Plan de la ACT; siempre en el bien entendido de que las disposiciones anteriores de esta Sección 41.7 (e) no afectarán la responsabilidad de cualquier Entidad que resultaría de otra manera de dicho acto u omisión en la medida en que dicho acto u omisión estuviera determinado en una Orden Final como constituyente de fraude o conducta dolosa.**

**Sección 41.8 – Litigio relacionado con las designaciones:**

**No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT, en el caso de que se dictase una Orden final en relación con el Litigio relacionado con las designaciones o el Litigio de uniformidad con posterioridad a la emisión de la Orden de confirmación de la ACT, como contrapartida por las distribuciones efectuadas, que vayan a efectuarse o que se considerarán efectuadas de conformidad con los términos y disposiciones del Plan de la ACT y los documentos e instrumentos relacionados con el mismo, todos los Acreedores o las demás Entidades que reciban, o se considere que hayan recibido, distribuciones de conformidad con, o como resultado de, el Plan de la ATC, consienten y aceptan que dicha Orden final no revertirá, afectará ni modificará de ningún otro modo las transacciones contempladas en el Plan de la ACT y en la Orden de confirmación la ACT, lo cual incluye, entre otros, los descargos, exculpaciones e interdictos previstos en el Artículo XLI del Plan de la ACT; siempre en el bien entendido de que, en la medida en que una parte demandante del Litigio relacionado con las designaciones o del Litio de uniformidad sea parte del Acuerdo de Apoyo al Plan de GO/AEP, el Acuerdo de Apoyo al Plan de ACT/ADCC, el Acuerdo de Apoyo al Plan de la AFI o la Estipulación de SRE, en un plazo de cinco (5) días laborables desde la Fecha de vigencia del Plan de la ACT, dicho demandante adoptará todas y cada una de las medidas necesarias para que se desestimen, sin perjuicio —o, en el caso de que hubiera otros demandantes que fuesen partes de dichos litigios para, sin perjuicio, retirarse— de dichos Litigios relacionados con designaciones o Litigios de uniformidad, según proceda, incluyendo, entre otros, cursando notificaciones de desestimación o retirada a la Secretaría del Tribunal competente.**

**Sección 41.9 – Orden de prohibición:**

**Dentro de los límites que se estipulan en el Plan de la ACT, a todas y a cada una de las Entidades se les impide, prohíbe y restringe de manera permanente, instituir, emprender, tramitar o litigar de cualquier manera todas y cada una de las Reclamaciones, demandas, derechos, responsabilidades o causas de acción de cualquier índole, carácter o naturaleza, tanto en derecho como en equidad, conocidos o desconocidos, directos o indirectos y tanto alegados como si no, contra cualquiera de las Partes exoneradas, sobre la base de, relacionados con o derivados de o en relación con cualquiera de las Reclamaciones exoneradas, la confirmación y perfeccionamiento del Plan de la ACT, la negociación y perfeccionamiento del Acuerdo de Apoyo al Plan de ACT/ADCC o cualquier reclamación, actuación, hecho, transacción, incidencia, declaración u omisión en relación con, o alegada o que pudiera alegarse, en los Casos de Título III, lo cual incluye, entre otros, cualquier reclamación, demanda, derecho, responsabilidad o causa de acción a efectos de indemnización, contribución u otro fundamento de este tipo, en derecho o en equidad, por daños y perjuicios, costos u honorarios incurridos que derivados directa o indirectamente de los Casos de Título III o que estén relacionados con ellos de alguna otra manera, sea directa o indirectamente por cualquier Persona para beneficio directo o indirecto de cualquier Parte exonerada, derivado de, o relacionado con, las reclamaciones, actuaciones, hechos, transacciones, incidencias, declaraciones u omisiones que son, o podrían o pudieran ser alegados en las acciones relacionadas o cualquier otra acción iniciada, o que pudiera iniciarse por, a través de, en nombre de, o en beneficio de cualquiera de las Partes exoneradas (tanto de conformidad con leyes federales como estatales o extranjeras, e independientemente de dónde se aleguen).**

**Sección 41.11 – Interdicto complementario:**

**No obstante lo dispuesto en sentido contrario en el Plan de la ACT, y salvo dentro de los límites que se estipulan en el Plan de la ACT, todas las Entidades, incluidas las Entidades que actúan en su propio nombre, que actualmente mantengan o aleguen, o hayan mantenido o alegado, o pudieran mantener y alegar, cualquier Reclamación exonerada en contra de cualquiera de las Partes exoneradas basadas en, atribuibles a, derivadas de o relacionadas con, los Casos del Título III o cualquier Reclamación contra el Deudor, sea y dondequiera que se planteen o aleguen, tanto en EE. UU. como en cualquier otra parte del mundo, contractual o extracontractualmente, en virtud de alguna garantía, ley o cualquier otra teoría en derecho o equidad, o de cualquier otra índole, estará, y se considerará que está, permanentemente paralizada, restringida y prohibida de iniciar cualquier acción contra cualquiera de las Partes exoneradas a efectos de cobrar, recobrar o percibir, directa o indirectamente, cualquier pago o recobro con respecto a cualquier Reclamación exonerada que se planteara con anterioridad a la Fecha de vigencia de la ACT (incluso con anterioridad a la Fecha de petición de la ACT), incluyendo, entre otros:**

**(a) Iniciar o continuar de cualesquiera maneras, actuaciones u otros procedimientos de toda índole con respecto a dichas Reclamaciones exoneradas contra cualquiera de las Partes exoneradas o los activos o bienes de cualquiera de ellas;**

**(b) Ejecutar, incautar, cobrar o recobrar, de cualquier manera y por cualquier medio, sentencias, laudos, decretos u órdenes en contra de cualquiera de las Partes exoneradas, sus activos o bienes de estas, en relación a dichas Reclamaciones exoneradas;**

**(c) Establecer, perfeccionar o ejecutar prendas de toda índole contra cualquiera de las Partes exoneradas, sus activos o bienes, con respecto a dichas Reclamaciones exoneradas;**

**(d) Salvo que se estipule expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT, alegar, implementar o efectuar cualquier compensación, derecho de subrogación, indemnización, contribución o recobro de cualquier tipo contra cualquier obligación exigible a cualquiera de las Partes exoneradas, sus activos o bienes, vinculados con dichas Reclamaciones exoneradas; y**

**(e) Emprenden cualquier actuación, de la manera que fuera y en cualquier lugar, que no se ajuste al, o cumpla con las disposiciones del, Plan de la ACT o la Orden de confirmación de la ACT, en el bien entendido de que el hecho de que el Deudor cumpla los requisitos formales de la Regla de Quiebras 3016 no constituye una admisión de que el Plan de la ACT contempla cualquier interdicto en contra de una conducta que no esté de otro modo prohibida por el Código de Quiebras.**

Fecha: 23 de junio de 2022, San Juan, Puerto Rico

Presentado respetuosamente, */s/ Brian S. Rosen,* Martin J. Bienenstock (admitido *pro hac vice*), Brian S. Rosen (admitido *pro hac vice*), **PROSKAUER ROSE LLP**, Eleven Times Square, Nueva York, NY 10036, *Abogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor* -and- */s/ Hermann D. Bauer,* Hermann D. Bauer, Esq., USDC Núm. 215205, **O'NEILL & BORGES LLC,** 250 Avenida Muñoz Rivera, Suite 800, San Juan, P.R. 00918-1813, *Coabogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor*

[1] Los Deudores de estos Casos del Título III, conjuntamente con los números de casos del Título III de los respectivos Deudores y los cuatro (4) últimos dígitos del número de identificación tributaria federal de cada Deudor, según proceda, son (i) el Estado Libre Asociado de Puerto Rico (Caso de quiebra núm. 17-BK-3283-LTS) (cuatro últimos dígitos del número de identificación tributaria federal: 3481); (ii) Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra núm. 17-BK-3284-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 8474); (iii) Autoridad de Carreteras y Transportación de Puerto Rico ("ACT") (Caso de quiebra núm. 17-BK-3567-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico ("SRE") (Caso de quiebra núm. 17-BK-3566-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 9686); (v) Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") (Caso de quiebra núm. 17-BK-4780-LTS) (Caso de quiebra núm. 17-BK-4780-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3747); y (vi) Autoridad de Edificios Públicos de Puerto Rico ("AEP") (Caso de quiebra núm. 19-BK-5523-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3801) (los números de casos del Título III están enumerados como números de Casos de quiebra debido a las limitaciones del software).

[2] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

[3] Todos los términos en mayúsculas utilizados pero no definidos tendrán los significados atribuidos a los mismos en el Plan.

[4] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

# Exhibit H

***Primera Hora***

**(June 30, 2022)**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

## AVISO PÚBLICO

NOTIFICACION DE (I) LA APROBACION DE LA DECLARACION DE DIVULGACION, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO (III) LA VISTA DE CONFIRMACION DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECION A LA CONFIRMACION DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LIMITE DE VOTACION SOBRE EL PLAN DE AJUSTE Y LA CELEBRACION DE DETERMINADAS ELECCIONES DENTRO SU MARCO

# AFIDAVIT

Yo, Miriam del Carmen Hernández Martí, habiendo prestado el debido juramento declaro:

Que soy Representante del periódico "PRIMERA HORA" que se publica en Guaynabo, P.R.; que en las ediciones de este periódico correspondientes a los días:

**30 DE JUNIO DE 2022**

se dio publicidad al edicto expedido por

**KROLL RESTRUCTURING ADMINISTRATION LLC**

en el caso arriba mencionado y copia del cual se une al presente afidávit para que forme parte del mismo.

Guaynabo, P.R. JUN 30 2022 20__.

Afidávit No. 339 del Registro.

Jurado y reconocido ante mi por Miriam del Carmen Hernández Martí, vecina de San Juan, mayor de edad, casada, Representante del periódico "PRIMERA HORA", a quien doy fe de conocer personalmente,

Guaynabo, P.R. JUN 30 2022 20__.

ISABEL C. RODRÍGUEZ DE LA LLANA ABOGADA-NOTARIA

NOTARIO

RECIBO
Sello
4U22-00352767
9397
06/29/2022
$5.00
Sello de Asistencia Legal
80004-2022-0629-27986344

# Aviso Público (página 1 de 2)

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante del
ESTADO LIBRE ASOCIADO DE PUERTO RICO y otros,
Deudores.[1]

PROMESA
Título III
Núm. 17 BK 3283-LTS
(Administrado de manera conjunta)

En el asunto de:
JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,
como representante de la
AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO,
Deudor.

PROMESA
Título III
Núm. 17 BK 3567-LTS

**NOTIFICACIÓN DE (I) LA APROBACIÓN DE LA DECLARACIÓN DE DIVULGACIÓN, (II) EL ESTABLECIMIENTO DE FECHAS DE REGISTRO, (III) LA FECHA DE CONFIRMACIÓN DEL PLAN DE AJUSTE Y LOS PROCEDIMIENTOS DE OBJECIÓN A LA CONFIRMACIÓN DEL PLAN DE AJUSTE, (IV) LOS PROCEDIMIENTOS Y FECHAS LÍMITE DE VOTACIÓN SOBRE EL PLAN DE AJUSTE Y LA CELEBRACIÓN DE DETERMINADAS ELECCIONES DENTRO DE SU MARCO**

Si tiene usted derecho a votar por algún plan con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.

**FECHA LÍMITE DE VOTACIÓN Y ELECCIÓN: 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**
**FECHA LÍMITE PARA LAS OBJECIONES: 5:00 p.m. (hora estándar del Atlántico del 27 de julio de 2022**
**VISTA DE CONFIRMACIÓN: 17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**
Consulte fecha límites adicionales más adelante.

Para cualquier consulta relativa a esta opción con respecto a las distribuciones previstas por el Plan, recibirá un Paquete de convocatoria (como se define a continuación) por separado en una fecha futura.
**Teléfono (de 10:00 a.m. a 7:00 p.m. (AST)) (disponible en español):** (844) 822-9231 (gratuito en EE.UU. y Puerto Rico) (646) 486-7944 (para llamadas internacionales), a la atención de Kroll Restructuring Administration LLC ("Kroll" y a través del teléfono (844) 822-9231 (gratuito para EE.UU. y Puerto Rico), o bien al (646) 486-7944 (para llamadas internacionales), a la atención de dicha entidad de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien al correo electrónico puertoricoinfo@primeclerk.com.

**SÍRVASE TOMAR NOTA DE LO SIGUIENTE:**

1. *Aprobación de la Declaración de divulgación.* Mediante la orden de fecha 22 de junio de 2022 (la "Orden de Declaración de divulgación"), el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "Tribunal") rendió como aprobada la información contenida en la *Declaración de divulgación de la Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según pueda ser modificada o enmendada, incluyendo todos los anexos y documentación adjuntos a la misma, la "Declaración de divulgación"), respecto de la *Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según pueda ser modificada o enmendada, incluyendo todos los anexos y documentación adjuntos a la misma, la "Declaración de divulgación"), respecto de la *Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (el "Plan") por la Junta de Supervisión y Administración Financiera para Puerto Rico, que autoriza a solicitar votos con respecto a la aprobación o rechazo de la *Tercera Enmienda al Plan de Ajuste del Título III de la Autoridad de Carreteras y Transportación de Puerto Rico*, de fecha 17 de junio de 2022 (según la misma pueda ser enmendada o modificada, incluyendo todos los anexos y complementos de la misma, el "Plan"), adjunta como **Anexo A** a la Declaración de divulgación.

Podrá solicitar una copia impresa del Plan y de la Declaración de divulgación, incluyendo sus correspondientes traducciones al español, a la Agente de votación, Kroll Restructuring Administration LLC (anteriormente denominada Prime Clerk LLC):
**Teléfono (de 10:00 a.m. a 7:00 p.m. (AST)) (disponible en español):**
**(844) 822-9231 (gratuito en EE.UU. y Puerto Rico)**
**(646) 486-7944 (para llamadas internacionales)**
**Correo electrónico: puertoricoinfo@primeclerk.com**
Alternativamente, puede acceder a una copia de la Declaración de divulgación y del Plan visitando el sitio https://cases.primeclerk.com/puertorico/.

2. De conformidad con la Orden de la Declaración de divulgación, el Deudor enviará los materiales necesarios para votar por la aceptación o rechazo del Plan, para elegir opciones en materia de las distribuciones propuestas (el "Paquete de convocatoria") a los titulares de Reclamaciones de las siguiente Clases (denominadas colectivamente "Clases con derecho a voto"):

| Clase |
|-------|
| Reclamaciones de Bonos 68 de la ACT | Clase 1 |
| Reclamaciones de Bonos 68 de la ACT (Ambac) | Clase 2 |
| Reclamaciones de Bonos 68 de la ACT (Assured) | Clase 3 |
| Reclamaciones de Bonos 68 de la ACT (National) | Clase 4 |
| Reclamaciones de Bonos Senior 98 de la ACT | Clase 5 |
| Reclamaciones de Bonos Senior 98 de la ACT (Ambac) | Clase 6 |
| Reclamaciones de Bonos Senior 98 de la ACT (Assured) | Clase 7 |
| Reclamaciones de Bonos Senior 98 de la ACT (National) | Clase 8 |
| Reclamaciones de Bonos subordinados 98 de la ACT | Clase 9 |
| Reclamaciones de Bonos subordinados 98 de la ACT (Assured) | Clase 10 |
| Reclamaciones de Bonos subordinados 98 de la ACT (FGIC) | Clase 11 |
| Reclamaciones de Bonos subordinados 98 de la ACT (National) | Clase 12 |
| Reclamaciones de Dominio eminente/Expropiación forzosa inversa | Clase 13 |
| Reclamaciones generales no garantizadas de la ACT | Clase 14 |
| Reclamaciones de la ACT/PGIC | Clase 17 |
| Reclamaciones federales | Clase 20 |

3. *Vista de confirmación.* Una vista para considerar la confirmación del Plan (la "Vista de confirmación") se celebrará ante la Honorable Laura Taylor Swain, del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (o según se determine en virtud de una orden del Tribunal), el **17-18 de agosto de 2022 a las 9:30 a.m. (hora estándar del Atlántico)**.

a. La Vista de confirmación podrá ser continuada periódicamente sin la Junta de Supervisión, sin necesidad de notificaciones adicionales o mediante los aplazamientos anunciados durante las sesiones, o bien indicación en cualquier notificación de orden del día de asuntos a tratar programado para la vista y presentada ante el Tribunal, y el Plan podrá ser modificado, si fuera necesario, antes, durante o como resultado de la Vista de confirmación, de conformidad con las cláusulas de modificación del Plan y de la Regla local 3016-2, sin necesidad de notificación adicional a las partes interesadas.

5. *Depositario de confirmación del Plan.* La información relativa a la confirmación del Plan está disponible en línea en el sitio del Depositario de confirmación del Plan, títleiipdataroom.com.

6. *Fecha límite para objeciones a la confirmación.* El Tribunal ha establecido las **5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022** (la "Fecha límite de objeción a la confirmación"), como fecha límite para registrar objeciones o respuestas a la confirmación del Plan propuesto. Las partes que no presenten una objeción al Plan antes de la Fecha límite de objeción a la confirmación tendrán prohibido hacer presentaciones orales antes el Tribunal durante la Vista de confirmación.

7. *Objeciones y respuestas a la confirmación.* Las objeciones y respuestas a la confirmación del Plan deberán:

a. Presentarse por escrito, en inglés, y estar firmadas;

b. Indicar el nombre, domicilio y naturaleza de la Reclamación de la parte objetora o replicante;

c. Indicar específicamente el fundamento y la naturaleza de cualquier objeción o respuesta, e incluir, al procedente, el texto propuesto para insertar en el Plan, con el objeto de resolver dicha objeción o respuesta; y

d. Presentarse electrónicamente ante el Tribunal en los expedientes de (i) *En el asunto del Estado Libre Asociado de Puerto Rico*, Caso núm. 17 BK 3567-LTS, y (ii) *En el asunto de la Autoridad de Carreteras y Transportación de Puerto Rico*, Caso núm. 17 BK 3283-LTS, a través del sistema de presentación de casos del tribunal, en formato de documento portátil con función de búsqueda como más tardar a las **5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**.

i. Si no es usted abogado registrado como usuario en el sistema de presentación de casos del Tribunal, podrá enviar su objeción por correo postal a la oficina de la Secretaría del Tribunal:
Tribunal de Distrito de los Estados Unidos, Secretaría
150 Avenida Carlos Chardón, Suite 150,
San Juan, P.R. 00918-1767
para que sea recibida **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**, y

e. Cursarla a la Oficina del Fideicomisario de los Estados Unidos del Distrito de Puerto Rico, Edificio Ochoa, Calle Tanca 500, Suite 301, San Juan, PR 00901 (ref: En el asunto de: Autoridad de Carreteras y Transportación de Puerto Rico), para que sea recibida como más tardar en la Fecha límite de objeción a la confirmación.

8. *Calendario y fechas límite de confirmación e indagatoria.* El Tribunal ha establecido las siguientes fechas límite para indagatoria, que serán incluidas en el Deudor y a otras partes interesadas:

**Resumen de ciertas fechas límite**

| | |
|---|---|
| **1 de julio de 2022** | Fecha límite para que las Partes registren una lista de testigos de hechos, detallando los temas acerca de los cuales testificará cada uno de ellos ("Listas de testigos de hecho"). |
| | Fecha límite para que las partes registren las declaraciones iniciales de peritos ("Declaraciones iniciales de peritos"), si las hubiera. |
| **8 de julio de 2022** | Fecha límite para que las Partes cursen solicitudes de presentación de documentos que no estén bajo custodia del Depositario (las "Solicitudes de presentación"). Las respuestas y objeciones a las citadas Solicitudes de presentación podrán cursarse dentro de un plazo de veinte (20) días desde la recepción de dichas Solicitudes. Las Partes podrán cursar hasta una ronda adicional de Solicitudes de presentación, siempre y cuando se haga en o antes del 11 de julio de 2022. |
| **12 de julio de 2022** | Fecha límite para que las Partes cursen hasta quince (15) interrogatorios ("interrogatorios"), incluyendo las subpartes. Las respuestas y objeciones a los citados interrogatorios podrán cursarse dentro de un plazo de diez (10) días desde la recepción de dichos interrogatorios. |
| | Fecha límite para que las partes registren las informes periciales iniciales ("informes periciales iniciales"), si las hubiera. Si se presenta algún informe pericial inicial, las refutaciones a las divulgaciones de expertos deberán presentarse en un plazo de tres (3) días desde dicha presentación y las respuestas a dichas refutaciones se presentarán cinco (5) días después de las divulgaciones. |
| **18 de julio de 2022** | Fecha límite para que las partes cursen las notificaciones de declaraciones juradas, tomas o lecturas solicitadas para las mismas ("Notificaciones de declaraciones juradas") (todas las partes están limitadas a un límite de siete (7) horas para declaraciones juradas). |
| | Fecha límite para que las Partes cursen solicitudes de admisión, limitadas a la autenticación de documentos ("Solicitudes de Admisión"). Las respuestas y objeciones a las citadas Solicitudes de Admisión podrán cursarse dentro de un plazo de catorce (14) días laborales desde la recepción de dichas Solicitudes de Admisión. |
| **20 de julio de 2022** | Conclusión de la indagatoria de hechos (la "Fecha límite de indagatoria de hechos"). |
| **22 de julio de 2022** | Fecha límite para que el Deudor registre su propuesta de Orden de confirmación (la "Propuesta de Orden de confirmación"). |
| **25 de julio de 2022** | Conclusión de la indagatoria de peritos (la "Fecha límite de indagatoria de peritos"). |
| **27 de julio de 2022** | Fecha límite para que las partes presenten mociones Daubert y mociones *in limine*. |
| | Fecha límite para:<br>• Objeciones a la confirmación del Plan ("Objeciones").<br>• Objeciones a la Propuesta de Orden de confirmación.<br>Fecha límite de votación / Fecha límite de elección. |
| | Fecha límite para que las partes registren las listas de testigos, las listas de pruebas y las designaciones de declaraciones juradas definitivas. |
| **29 de julio de 2022** | Fecha límite para que las partes presenten oposiciones a las mociones Daubert y mociones *in limine*. |
| **1 de agosto de 2022** | Fecha límite para que las partes presenten (a) objeciones a las listas de pruebas y designaciones de declaraciones juradas y (b) designaciones opuestas. |
| **3 de agosto de 2022** | Fecha límite para que las partes presenten sus respuestas en apoyo de las mociones Daubert y las mociones *in limine*. |
| **4 de agosto de 2022** | Fecha límite para que las partes presenten objeciones a las designaciones opuestas. |
| **7 de agosto de 2022** | Fecha límite para que el Deudor presente:<br>• Memorando de ley en apoyo de la confirmación.<br>• Réplicas generales a las objeciones a la confirmación y a la propuesta de orden de confirmación.<br>• Declaraciones de testigos y recuento de votos.<br>• Antecedentes de hecho y conclusiones de derecho.<br>Fecha límite para que los Deudores presenten declaraciones de testigos. |
| **8 de agosto de 2022** | Conferencia virtual previa al juicio. |
| **15 de agosto de 2022** | Fecha límite para que las Partes presenten objeciones a los Antecedentes de hecho y conclusiones de derecho. |
| **17-18 de agosto de 2022** | Vista de confirmación |

9. *Fecha de registro de votación.* La fecha de registro de votación será el **17 de junio de 2022** (la "Fecha de registro de votación"). La fecha de registro de votación tendrá como único propósito establecer los titulares de Reclamaciones de las Clases con derecho a voto (excepto las Clases de bonos) tienen derecho a votar a favor o en contra del Plan. Por consiguiente, solamente podrán votar a favor o en contra del Plan los acreedores de una Clase con derecho a voto por el Plan que mantenga Reclamaciones contra el Deudor según en las Clases de bonos) a la Fecha de registro de votación.

10. *Fecha límite de votación.* La fecha límite para votar a favor o en contra del Plan es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicha plazo sea prorrogado (la "Fecha límite de votación"). Si *no* se obliga a votar a favor o en contra del Plan para perder el derecho de conformidad con los términos y condiciones del Plan, si este es confirmado por el Tribunal, *siempre y cuando ser titular de una Reclamación en una Clase con derecho a voto*.

11. Si recibió un Paquete de convocatoria, incluyendo una Papeleta o Notificación, y tiene previsto ejercitar su voto sobre el Plan, *deberá*: (a) atenerse estrictamente a las instrucciones, (b) cumplimentar *todos* los datos requeridos en la Papeleta (según proceda); y (c) si bien (i) ejecutar y devolver la Papeleta cumplimentada de conformidad con las instrucciones incluidas en el Paquete de convocatoria, demostrando su Papeleta *sea efectivamente recibida por el Agente de convocatoria del Deudor, Kroll Restructuring Administration LLC ("Kroll", o el "Agente de votación") como más tardar en la Fecha límite de votación, o bien (ii) ordenar a su intermediario o persona designada (cada uno de ellos, una "Persona designada") que envíe electrónicamente sus bonos a través del Programa Automatizado de Oferta de Presentación ("ATOP") en The Depository Trust Company ("DTC") en función de su deseo de votar para aceptar o rechazar el Plan en o antes de la fecha límite de votación. El incumplimiento de las instrucciones puede hacer que su voto sea descalificado.*

12. *Fecha límite de elección.* La fecha límite para que los tenedores de Reclamaciones elegibles que tengan derecho a elegir la forma de distribución según el Plan realicen dicha elección es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicho plazo sea prorrogado (la "Fecha límite de elección"). La notificación o notificación respondiente hacer una elección deberá (a) atenerse estrictamente a las instrucciones; y (b) cumplimentar *todos* los datos requeridos en las instrucciones de elección. Las instrucciones de elección podrán (sea con los que votos) y *deberán elegir efectivamente* se elección a través del sistema ATOP de DTC como más tardar en la Fecha límite de elección.

13. *Esta intersección sin derecho al voto.* Se considera que los acreedores de la Clase 18 (Reclamaciones subordinadas de la Sección 510(b)) rechazan el Plan, por lo cual no tienen derecho de votar.

14. Se considera que las siguientes Clases aceptan el Plan, por lo cual no tienen derecho de votar:
• Clase 15 (Reclamaciones de Bonos Moscoso de la ACT);
• Clase 16 (Reclamaciones de convenencia).

15. Si una Reclamación está incluida en la Lista de acreedores del Deudor (Registro en el expediente judicial núm. 2163 en el Caso núm. 17-3283) como contingente, no liquidada o impugnada, y (i) no se registró una evidencia de reclamación en la fecha límite aplicable para la presentación de pruebas de reclamación establecida por el Tribunal en la fecha límite de votación (según proceda); o (ii) considerada debidamente registrada por orden del Tribunal antes de la Fecha límite de votación, dicha Reclamación no tendrá derecho a votar por la aceptación o el rechazo del Plan. Tampoco las pruebas de reclamación presentadas por $0.00 ni aquellas desestimadas por orden del Tribunal tendrán derecho a voto.

16. Si usted ha presentado oportunamente una evidencia de reclamación y no está de acuerdo con la clasificación del Deudor, la objeción a la solicitud de estimación de su Reclamación, o bien usted debería tener derecho a votar sobre el Plan, debe notificarlo al Deudor y a las partes enumeradas en el apartado 16 de la Orden de Declaración de divulgación y registrar ante el Tribunal con copia al Despacho de la jueza) una moción (una "Moción conforme a la Regla 3018(a)") para obtener una orden a tenor de la Regla 3018 de las Regla Federales de Procedimiento de Quiebra (las "Reglas de Quiebra") que permita la forma provisional de Reclamación por un monto diferente a otra Clase diferente a los efectos de votar para aceptar o rechazar el Plan. Todas las Mociones de la Regla 3018(a) deben presentarse como más tardar dentro (10) días después de que se notifique la objeción, la notificación de esta Moción de Confirmación y (ii) la notificación de una objeción o solicitud de estimación, si la hubiera, en cuanto a dicha Reclamación, lo que ocurra tarde se produzca. De acuerdo con la Regla de Quiebra 3018(a), en lo que respecta a cualquier acreedor que presente una Moción conforme a la Regla 3018(a), la Papeleta de dicho acreedor no se contabilizará, salvo que el Tribunal ordene lo contrario antes de la Fecha límite de votación (27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)). Los acreedores podrán ponerse en contacto con el Agente de votación a tenor de la Regla 3018 de las Reglas Federales de Procedimiento de Quiebra, dirigiéndose al Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (anteriormente conocida como Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) por teléfono llamando al (844) 822-9231 (gratuito en EE.UU. y Puerto Rico) o al (646) 486-7944 (llamadas internacionales), que atiende de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien (iii) por correo electrónico escribiendo a puertoricoinfo@primeclerk.com. Papeleta adecuada para cualquier Reclamación para la que se haya presentado oportunamente una evidencia de reclamación y se haya aceptado una Moción conforme a la Regla 3018(a), la Regla 3018(a) que no se haya presentado a tiempo y en forma establecida en el presente no serán tenidas en cuenta.

17. Si desea que su Reclamación sea admitida provisionalmente a efectos de votación de conformidad con la Regla de Quiebra 3018(a), encontrará un formulario de la Regla 3018(a) con instrucciones para completar y presentar la Moción en https://cases.primeclerk.com/puertorico/.

18. *Partes que no sean tratadas como Acreedores.* Cualquier titular de una Reclamación que (i) esté incluido en la Lista de Acreedores a $0.00 y que no sujeto de una evidencia de Reclamación presentada a tiempo o una evidencia de Reclamación que se considere presentada a tiempo ante el Tribunal a tenor del Código de Quiebra o de cualquier orden del Tribunal, o que se considere presentada a tiempo según la ley aplicable, o bien (ii) no esté programado y no sea objeto de una evidencia de reclamación presentada a tiempo o una evidencia de reclamación considerada como presentada a tiempo ante el Tribunal a tenor del Código de Quiebra o cualquier orden del Tribunal, o de otra manera considerada como presentada a tiempo conforme a la ley aplicable, no será tratado como un acreedor con respecto a dicha Reclamación a los efectos de (a) recibir notificaciones sobre el Plan, y (b) votar sobre el Plan.

19. *Información adicional.* Cualquier parte interesada que desee obtener información sobre los procedimientos de convocatoria o copias de la Declaración de Divulgación o del Plan, incluyendo sus traducciones al español, debe ponerse en contacto con el Agente de votación, Kroll Restructuring Administration LLC, por teléfono llamando al (844) 822-9231 (llamada gratuita para EE.UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricoinfo@primeclerk.com. Asimismo, podrá ver dichos documentos accediendo a https://cases.primeclerk.com/puertorico/ a al sitio web del Tribunal, https://www.prd.uscourts.gov/. Tenga en cuenta que se requiere una contraseña y credenciales de inicio de sesión para para acceder a los documentos que figuran en el sitio web del Tribunal a través del sistema de Acceso Público a los Registros Electrónicos del Tribunal ("PACER, por sus siglas en inglés") (https://pacer.uscourts.gov).

20. *Reglas de Quiebra 2002(c)(3) y 3016(c).* De acuerdo con las Reglas de Quiebra 2002(c)(3) y 3016(c), a continuación se exponen las disposiciones de descargo, exculpación e inmisión contenidas en el Plan:

**Sección 41.2 – Exoneración y descargo de reclamaciones y causas de acción:**
(a) Salvo que se disponga expresamente en el Plan o la ACT o en la Orden de Confirmación de la ACT, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio de, y en completa satisfacción, liquidación, exoneración y descargo de, todas las Reclamaciones y Causas de acción contra el Deudor y la ACT Reorganizada que surgieron, en todo o en parte, antes de la Fecha de vigencia de la ACT, en relación con los Casos del Título III, el Deudor, la ACT reorganizada o cualquiera de sus respectivos Activos, bienes e intereses de toda índole, incluidos los intereses devengados por dichas Reclamaciones en o a partir de la Fecha de petición de la ACT, e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan a causa de dichas Reclamaciones y Causas de acción; teniendo en cuenta, sin embargo, que, no obstante los derechos de exculpación establecidos en la Sección 41.7 del Plan de la ACT, nada de lo contenido en el Plan de la ACT o la Orden de confirmación de la ACT libera la intención de, ni deberá ser interpretado, con un otorgamiento de una excepción no consensuada a terceros de los Acreedores del AAP de la ACT/ADCC y sus respectivas Personas Vinculadas por parte de los Acreedores del Deudor. En la Fecha de Vigencia de la ACT, el Deudor y ACT reorganizada se consideran acreedores exonerados y retenidos en todas y cada uno de las Reclamaciones, Causas de acción y cualquier otra deuda generada, total o parcialmente, antes de la Fecha de vigencia de la ACT, todas las Reclamaciones del tipo especificado en las secciones 502(g), 502(h) o 502(i) del Código de Quiebra, y la Sección 407 de la Ley PROMESA, ya sea o no (a) una evidencia de reclamación basada en una tal Reclamación se haya registrado o se considere registrada conforme a las secciones 501 o 502 del Código de Quiebra, o la Sección 301 de la Ley PROMESA, o (b) dicha reclamación se haya permitido conforme a la Sección 502 del Código de Quiebra, o la Sección 301 de la Ley PROMESA; o (c) que el titular de una Reclamación basada en una deuda tal haya votado por aceptar el Plan de la ACT. A efectos de disguar cualquier duda, nada de lo dispuesto en el Plan de la ACT ni en la Orden de confirmación de la ACT liberará, eximirá o impactará cualquier Reclamación o causa de acción contra la ACT ACT y relacionada con, los bonos emitidos por la ACT, incluyendo, entre otros, los emitidos con los seguros monolínea pertinentes, y la ACT recibe de ninguna reclamación la causa de acción contra cualquier Entidad de deudas en virtud de esta mociones pertinentes, y la ACT recibe de ninguna reclamación la causa de acción contra la ACT derivada de, o relacionada con, los bonos emitidos por la ACT, incluyendo, entre otros, los emitidos con los seguros monolínea pertinentes, y la ACT recibe de ninguna reclamación o causa de acción contra la AEE, así como los derechos dirigidos a la AEE y sus activos, se dirigirán al caso del Título III de la AEE, pendiente, entre otras, cualquier plan de ajuste pertinente.

(b) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las Entidades estarán impedidas de hacer valer todas y cada una de las Reclamaciones contra el Deudor y la ACT reorganizada, y cada una de sus respectivos Activos, bienes y derechos, incurriendo Reclamaciones o Causas de Acción correspondiente de toda índole, relacionadas con los Casos del Título III, el Deudor y la ACT reorganizada o cualquiera de sus respectivos Activos y bienes, incluyendo cualquier interés acumulado sobre la base de dicho reclamo y después de la Fecha de petición de la ACT (ya sea o no una evidencia de reclamación basada en dicho reclamo se haya registrado o retenido bienes a tenor del Plan de la ACT con cargo a dichas Reclamaciones u otras obligaciones, demandas, sentencias, daños y perjuicios, derechos, derechos, recursos, causas de acción o responsabilidades. De conformidad con lo antedicho, salvo que se disponga expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT, la Orden de confirmación de la ACT constituirá una determinación judicial, a la Fecha de vigencia, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción a deuda de, contra el Deudor y la ACT reorganizada y por las secciones 524 y 944 del Código de Quiebra, aplicable al Caso de Título III conforme a la Sección 301 de la Ley PROMESA, y dicha exoneración (i) opera como una medida cautelar permanente contra cualquier acción, demanda u otro procedimiento de cualquier tipo con respecto a las respectivas Activos y bienes en todo momento, en la medida de dicha sentencia está relacionada con una Reclamación descargada, exonerada o eximida; así como la disposición expresamente en el Plan o de dicha sentencia está relacionada con una Reclamación descargada o exonerada, y toda persona o entidad que posea un reclamo o una causa de acción u otra deuda o responsabilidad así exonerada no podrá hacerla valer contra el Deudor o la ACT reorganizada, sus respectivos Activos y bienes; (ii) como medida cautelar permanente contra cualquier Entidad de hacer valer cualquier reclamo contra el Deudor y la ACT con cargo a dichas Reclamaciones u otras obligaciones, demandas, sentencias, daños y perjuicios, derechos, recursos, causas de acción o responsabilidades. De conformidad con lo antedicho, salvo que se disponga expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT constituirá una determinación judicial, a la Fecha de vigencia, de la exoneración y descargo de todas esas Reclamaciones, Causas de acción a deuda de, contra el Deudor y la ACT reorganizada conforme a las secciones 524 y 944 del Código de Quiebra, aplicable al Caso de Título III conforme a la Sección 301 de la Ley PROMESA, y dicha exoneración (i) opera como una medida cautelar permanente contra cualquier acción, demanda u otro procedimiento de cualquier tipo con respecto a dichas Reclamaciones; la Fecha de vigencia de la ACT y la consideración que cada Entidad de la una Reclamación de cualquier Clase en virtud del Plan de la ACT, se considera que ha otorgado dicha exoneración y descargo. La Orden de confirmación de la ACT será una determinación judicial permanente, a la Fecha de vigencia de la ACT, de la conformidad con las disposiciones de la Sección 41.2 del Plan de la ACT, de conformidad con lo establecido por el Plan de la ACT/ADCC, se considerará que cada uno de los Acreedores del Acuerdo de Apoyo al Plan ACT/ADCC y sus respectivas Personas vinculadas, exclusivamente en su calidad de tenedores de un reclamo que (i) no podrá, de manera o de otro modo, intentar recuperar daños o perjuicios o buscar cualquier otro tipo de reparación contra cualquiera de los Exonerados del Gobierno fundamentalmente, que se derivan de, o estén relacionados con, las Reclamaciones exoneradas del Gobierno o cualquiera de las Reclamaciones o Causas de acción planteadas o que podrían haberse planteado, incluyendo, entre otros, en las Acciones de recuperación (Clawback) y las Mociones de levantamiento de la paralización, y (ii) no

(continúa en la página siguiente)

D pressreader
PRINTED AND DISTRIBUTED BY PRESSREADER
PressReader.com +1 604 278 4604
COPYRIGHT AND PROTECTED BY APPLICABLE LAW

*(continúa de la página anterior)*

ayudarán directa ni indirectamente a ninguna persona a realizar ninguna acción con respecto a las Reclamaciones exoneradas del Gobierno que esté prohibida por la Sección 41.2 del Plan de la ACT.

(d) Limitación de la SEC. No obstante nada de lo contenido en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que la SEC haga valer sus potestades en materia de políticas o reglamentos; ni (ii) impedir, limitar, perjudicar ni retrasar que la SEC incoe o prosiga reclamaciones, pleitos, procedimientos o investigaciones contra personas físicas o jurídicas no deudoras en ningún foro.

(e) Limitación de Estados Unidos. No obstante cualquier disposición en sentido contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, ninguna disposición tendrá como consecuencia (i) impedir que Estados Unidos o cualquiera de sus organismos, departamentos o agentes eximan de algún modo al Deudor o a la ACT reorganizada, según proceda, de cumplir las leyes y requisitos federales o territoriales que implementen programas federalmente autorizados o delegados para la protección de la salud, la seguridad y el medio ambiente de personas de dicho territorio, (ii) amplíe el ámbito de cualquier exoneración, exención o recurso a los cuales el Deudor o la ACT reorganizada tengan derechos de conformidad con el Título III, ni (iii) eximan, libren, impidan o prohíban de alguna manera (A) cualquier responsabilidad del Deudor o la ACT reorganizada ante Estados Unidos derivados de, y posteriores a, la Fecha de vigencia, (B) cualquier responsabilidad de cara a los Estados Unidos que no sea una Reclamación, (C) cualquier defensa afirmativa o cualquier derecho de compensación o recobro de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, reservándose expresamente dichos derechos de compensación y recobro de las citadas partes, (D) la continuidad de la validez de las obligaciones de Estados Unidos, del Deudor o la ACT reorganizada, según proceda, en virtud de cualquier subsidio o acuerdo de asistencia cooperativa de Estados Unidos, (E) las obligaciones del Deudor o la ACT reorganizada derivadas de políticas, leyes o reglamentos federales, incluyendo, entre otros, leyes relativas al medio ambiente, la salud o la seguridad pública, o leyes territoriales que implementen dichas disposiciones legales federales, incluyendo, entre otros, obligaciones de cumplimiento normativo, requisitos de decretos de consentimiento o de órdenes judiciales, y obligaciones de pagar las correspondientes penalizaciones administrativas, civiles y de otra índole, (F) cualquier responsabilidad para con Estados Unidos de parte de cualquier no deudor. Sin que ello suponga una limitación a la generalidad de lo antedicho, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT podrá considerarse (i) una determinación de la obligación tributaria de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (ii) vinculante para el IRS con respecto a las obligaciones tributarias federales, estatus fiscal u obligaciones de declaración y retención de impuestos de cualquier entidad, incluyendo, entre otros, el Deudor y la ACT reorganizada, (iii) una exención, satisfacción, excepción ni prohibición de cualquier recaudación reclamada por el IRS contra cualquier entidad que no sean el Deudor y la ACT reorganizada, y (iv) otorgar ninguna exención a ninguna Entidad que el Tribunal tenga prohibido por la Ley de Sentencias Declaratorias, 28 U.S.C. § 2201(a) o la Ley contra Medidas Cautelares aplicables a impuestos, 26 U.S.C. § 7421(a).

(f) Actuaciones de las aseguradoras. No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT o en la Orden de confirmación de la ACT, incluyendo, entre otros, las Secciones 41.2, 41.3 y 41.11 del Plan de la ACT, salvo que pueda ser impedida a tenor de las cláusulas de la Ley PROMESA, nada de lo contenido en el Plan de la ACT, la Orden de confirmación de la ACT o cualquier otro documento relacionado con el Plan de la ACT o en el Suplemento de la ACT, tiene por objeto, ni podrá interpretarse como dirigido a, perjudicar, alterar, modificar, disminuir, prohibir, impedir, restringir, limitar, eximir, reducir, eliminar o limitar los derechos de los demandantes y demandados, incluyendo, entre otros, las partes de las Acciones de las aseguradoras, de hacer valer sus respectivos derechos, reclamaciones, causas de acción y defensas en dichas Acciones, incluyendo, entre otros, las Reclamaciones, defensas, causas de acción y derechos de compensación o recobro (en la medida en que estuvieran disponibles), o cualesquiera otros derechos de determinación de responsabilidad u otros fundamentos para la reducción de (o acreditación contra) cualquier sentencia relacionada con las Acciones de las aseguradoras (en conjunto, los "Derechos de defensa"); aunque siempre en el bien entendido de que, a efectos de disipar cualquier duda, bajo ninguna circunstancia podrá utilizarse alguno de los Derechos de defensa para obtener o conseguir el pago afirmativo de dinero o el traspaso afirmativo de bienes a algún demandante, demandado o, en la medida en que proceda, demandado tercero, por parte del Deudor, de la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otra agencia u organismo del mismo, en relación con una Acción de aseguradora, y asimismo siempre y cuando a ninguna de las partes de estas Acciones, incluyendo, entre otros, demandantes, demandados y, si los hubiera, demandados terceros, se le permita incoar: (i) contra el Deudor o la ACT reorganizada, ninguna Reclamación o Causa de acción con el objeto de obtener un recobro monetario afirmativo que, de otro modo, esté excluida o desestimada como consecuencia de las Órdenes de Fecha límite, el Plan de la ACT y/o la Orden de confirmación de la ACT; y/o (ii) contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier organismo o agencia del mismo, cualesquiera Reclamaciones o contrarreclamaciones a efectos de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, planteadas con el objeto de obtener un recobro monetario afirmativo. Reclamaciones o contrarreclamaciones que serán consideradas desautorizadas, desestimadas, exoneradas o restringidas de conformidad con los términos y disposiciones del Plan de la ACT y la Orden de confirmación de la ACT; entendiéndose asimismo que nada de lo contenido en la Orden de confirmación de la ACT tiene por objeto, ni deberá interpretarse como un intento de, prohibir, excluir, vetar, modificar o limitar en modo alguno la capacidad de cualquier demandado de una Acción de aseguradora de plantear Derechos de defensa para reducir, eliminar o limitar la cuantía de cualquier responsabilidad o sentencias de la Acción de una aseguradora. Las partes de las Acciones de aseguradoras estarán permanentemente excluidas, restringidas, prescritas y limitadas para emprender, incoar o demandar contra el Deudor, la ACT reorganizada, la AEE, el Estado Libre Asociado o cualquier otro organismo o agencia del mismo, Reclamaciones o contrarreclamaciones con el objeto de obtener un recobro monetario afirmativo, incluyendo, entre otros, indemnizaciones, aportaciones, reintegros, compensaciones o teorías similares, en la medida en que se planteen con el objetivo de conseguir un recobro monetario afirmativo basado en, derivado de o relacionado con, las Acciones de aseguradoras, tanto si dicha Reclamación o contrarreclamación pueda incoarse como si no ante un tribunal, un arbitraje, una agencia o foro administrativo, o de cualquier otra manera.

Sección 41.3 – Interdicto sobre las Reclamaciones:

Salvo que se disponga expresamente lo contrario en el Plan de la ACT, en la Orden de confirmación de la ACT o en cualquier otra Orden final del Tribunal del Título III que pudiera ser aplicable, todas las Entidades que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor con la Sección 41.2 del Plan de la ACT o que hayan tenido, tengan o puedan tener Reclamaciones o cualquier otra deuda o responsabilidad que se exonere o renuncie a tenor de la Sección 41.2 del Plan de la ACT tienen permanentemente prohibido, en o a partir de la Fecha de vigencia de la ACT, (a) incoar o continuar, directa o indirectamente, en cualquier modalidad, cualquier acción u otro procedimiento (incluyendo, entre otros, cualquier procedimiento judicial, arbitral, administrativo u otro) de toda índole sobre cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, (b) la ejecución, el embargo, el cobro o la recuperación por cualquier forma o medio de cualquier sentencia, laudo, decreto u orden contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere a tenor con el Plan de la ACT, (c) crear, perfeccionar o aplicar gravámenes de toda índole contra cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes por cuenta de cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT; y (d) salvo en la medida en que se disponga, permita o preserve en las secciones 553, 555, 556, 559 o 560 del Código de Quiebras o conforme al derecho consuetudinario de recobro o de hacer valer cualesquiera derechos de compensación, subrogación o recuperación de toda índole con cargo cualquier obligación debida de cualquiera de las Partes exoneradas o cualquiera de sus respectivos activos o bienes, con respecto a cualquier Reclamación u otra deuda o responsabilidad que se exonere en conformidad con el Plan de la ACT. Este interdicto se extenderá a todos los sucesores y cesionarios de las Partes exoneradas y sus respectivos activos y bienes.

Sección 41.5 – Exoneraciones del Deudor y de la ACT reorganizada:

Salvo que se disponga expresamente lo contrario en el Plan de la ACT o en la Orden de confirmación de la ACT, en la Fecha de vigencia de la ACT, y a cambio de una contrapartida válida y valiosa, por la presente se considerará que tanto el Deudor como la ACT reorganizada, el Agente pagador y cada una de las Personas relacionadas del Deudor y la ACT reorganizada, han renunciado, exonerado, absuelto y relevado irrevocable, incondicional, plena y definitivamente y a perpetuidad, a las Partes exoneradas de todas y cada una de las Reclamaciones o Causas de acción que el Deudor, la ACT reorganizada y el Agente pagador, o cualquiera de ellos o que reclame a través de ellos, en su nombre o para su propio beneficio, tengan o pudieran tener o reclamar tener, ahora o en el futuro, contra cualquier Parte exonerada que sean Reclamaciones exoneradas.

Sección 41.6 – Interdictos relacionados con descargos:

A la Fecha de vigencia de la ACT, todas las Entidades que tengan, hayan tenido o puedan tener una Reclamación exonerada considerada como tal de conformidad con la Sección 41.2 del Plan de la ACT, quedan y quedarán, de manera permanente, completamente y para siempre, suspendidas, restringidas, prohibidas, vetadas y desestimadas para llevar a cabo cualquiera de las siguientes acciones, tanto directa como indirectamente, de forma derivada o de otra manera, por cuenta de, o fundamentándose en, el asunto de dichas Reclamaciones exoneradas: (i) incoar, emprender o continuar de cualquier modo, tanto directa como indirectamente, cualquier juicio, acción u otro procedimiento (lo que incluye, entre otros, cualquier procedimiento judicial, arbitral, administrativo o de otro tipo) en cualquier foro; (ii) ejecutar, incautar (lo que incluye, entre otros, cualquier embargo previo a la sentencia), cobrar o intentar de otro modo recobrar cualquier sentencia, laudo, decreto u otra orden; (iii) crear, perfeccionar o de cualquier otro modo aplicar en cualquier cuestión, directa o indirectamente, cualquier Gravamen; (iv) compensar, exigir reintegros, aportaciones o subrogaciones, o recuperar de cualquier otra manera, directa o indirecta, cualquier cuantía en concepto de cualquier pasivo u obligación adeudados a cualquier Entidad exonerada conforme a la Sección 41.2 del Plan de la ACT; e (v) iniciar y continuar de cualquier otro modo y lugar, un procedimiento judicial, de arbitraje o administrativo en cualquier foro, que no cumpla o no sea compatible con las disposiciones del Plan de la ACT o de la Orden de confirmación de la ACT. Para evitar dudas, las siguientes estipulaciones se extinguirán con el registro de la Orden de confirmación de la ACT: (i) la Cuarta Estipulación enmendada entre el Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico con respecto a la Suspensión de la prescripción y Orden de consentimiento [Caso núm. 173283-LTS, ECF núm. 15854] y sus enmiendas, y (ii) y sus enmiendas; y la Cuarta Estipulación enmendada y Orden de consentimiento entre los Deudores del Título III (salvo COFINA) y la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, actuando en nombre de las entidades gubernamentales enumeradas en el Apéndice "B" en relación con la Suspensión de la prescripción [Caso núm. 17-3283-LTS, ECF núm. 17394] y sus enmiendas.

Sección 41.7 – Exculpación:

(a) Partes del Gobierno: La Junta de Supervisión, la AAFAF, el Deudor y cada una de las respectivas Personas Relacionadas, actuando exclusivamente en su calidad de tales en cualquier momento hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7 no afectarán las responsabilidades de cualquier Entidad que de otro modo hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa. Ninguna de las disposiciones anteriores de esta Sección 41.7 menoscabará el derecho de ninguna de las Partes del Gobierno, ni de los funcionarios y directivos de las Partes del Gobierno que cumplan funciones en cualquier momento hasta la Fecha de vigencia de la ACT inclusive, ni de cada uno de sus profesionales respectivos de recurrir al asesoramiento de un abogado como defensa respecto de sus deberes y responsabilidades en virtud del Plan de la ACT.

(b) Acreedores del AAP de ACT/ADCC: Cada uno de los Acreedores del AAP de ACT/ADCC, actuando exclusivamente en su calidad de tales como parte del Acuerdo de Apoyo al Plan de ACT/ADCC y un Acreedor y/o Aseguradora, según proceda, desde la Fecha de petición de la ACT y hasta la Fecha de vigencia de la ACT, inclusive, no tendrán ni incurrirán en responsabilidad legal alguna de cara a cualquier Entidad por acciones u omisiones en relación con los Casos del Título III, la mediación, negociación, formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT o de cualesquiera transacciones o acuerdos allí contenidos, la Declaración de divulgación, el Acuerdo de Apoyo al Plan de ACT/ADCC, los Documentos definitivos o cualquier contrato, instrumento, publicación o convenio o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que las disposiciones precedentes de la presente Sección 41.7(b) no afectarán a las responsabilidades de cualquier Entidad que, de otro modo, hubieran resultado de dicha acción u omisión en la medida en que se determine en una Orden final que dicha acción u omisión constituyó fraude intencional o conducta dolosa.

(c) Aseguradoras Monolínea: Ambac, Assured, FGIC, National y sus respectivas Personas relacionadas, no tendrán ni incurrirán en responsabilidad legal alguna ante ninguna Entidad por acciones u omisiones compatibles con el Plan de la ACT o en relación con la formulación, preparación, difusión, implementación, aceptación, confirmación o aprobación del Plan de la ACT, lo que incluye, entre otros, el tratamiento de las Reclamaciones de Bonos asegurados por Ambac, las Reclamaciones de Bonos asegurados por Assured, las Reclamaciones de Bonos asegurados por FGIC o las Reclamaciones de Bonos asegurados por National, los procedimientos de votación, los procedimientos de elección y cualquier descargo de obligaciones en virtud de las Pólizas de seguro de Ambac, las Pólizas de seguro de Assured, las Pólizas de seguro de FGIC o las Pólizas de seguro de National correspondientes, siempre en el bien entendido de que, no obstante cualquier otra disposición en sentido contrario aquí contenida, los términos y condiciones del Plan de la ACT no relevarán ni exculparán, ni se entenderá que relevan o exculpan, cualesquiera obligaciones de pago —a tenor de la Póliza de Seguro de Ambac, la Póliza de Seguro de Assured, la Póliza de Seguro de FGIC o la Póliza de Seguro de National— a cualquier titular usufructuario de Bonos asegurados por Ambac, Bonos asegurados por Assured, Bonos asegurados por FGIC o Bonos asegurados por National, según proceda, de conformidad exclusivamente con sus términos, en la medida en que dicho titular no reciba el Tratamiento de Ambac, el Tratamiento de Assured, el Tratamiento de FGIC o el Tratamiento de National, según corresponda (o cualesquiera reclamaciones que Ambac, Assured, FGIC o National pudiera plantear contra un titular usufructuario de sus bonos respectivamente asegurados en relación con las obligaciones asumidas por Ambac, Assured, FGIC o National en virtud de las Pólizas de Seguro de Ambac, las Pólizas de Seguro de Assured, las Pólizas de Seguro de FGIC o las Pólizas de Seguro de National, respectivamente).

(d) Comité de Acreedores: Cada uno de los miembros del Comité de Acreedores, exclusivamente en su calidad de miembro del Comité de Acreedores, desde la Fecha de petición de la ACT hasta la Fecha de vigencia de la ACT, inclusive, y cada una de las Personas relacionadas del Comité de Acreedores, no tendrán ni incurrirán en responsabilidad legal alguna ante cualquier Entidad por acciones u omisiones relacionadas con los Casos de Título III, la formulación, preparación, difusión, implementación, confirmación o aprobación del Plan de la ACT de cualquier compromiso o acuerdo contenido en este documento, la Declaración de divulgación de la ACT o cualquier contrato, instrumento, publicación u otro acuerdo o documento previsto o contemplado en relación con el perfeccionamiento de las transacciones establecidas en el Plan de la ACT; aunque siempre en el bien entendido de que, no obstante la exculpación precedente, en caso de que se emprenda contra un miembro del Comité de Acreedores un litigio vinculado con las acciones precedentes, cada miembro tendrá derecho a que se le reintegren honorarios y gastos legales razonables y a que se le indemnice por los daños adjudicados en cada caso, por la ACT como consecuencia de una Orden Final; y asimismo en el bien entendido de que las cláusulas precedentes de esta Sección 41.7(d) no afectarán a la responsabilidad de alguna Entidad que, de otro modo, conllevaría dicha acción u omisión, en la medida en que, en una Orden final, se determine que dicha acción u omisión constituyó fraude intencional o conducta dolosa.

(e) Las Partes de la ARD: Cada una de la ARD y las Partes de la ARD, desde la Fecha de Petición de la ACT hasta e incluyendo la Fecha de Entrada en Vigencia de la ACT y cada uno de los predecesores, sucesores y cesionarios respectivos de las Partes de la ARD (ya sea de oficio o de otra manera), y sus respectivos asesores financieros, abogados, contadores, consultores, agentes y profesionales, u otros representantes, cada uno actuando en tal capacidad, y cualquier Entidad que actúe para o en nombre de cada uno de ellos, en cada caso, únicamente en la medida de que actúen en tal capacidad, no tendrá ni incurrirá en ninguna responsabilidad ante ninguna Entidad por cualquier acto realizado u omitido en relación con el Caso de Título III, mediación, negociación, formación, preparación, diseminación, implementación, confirmación u aprobación del Plan de la ACT o cualquier transacción o conciliación contenido en estas, la Declaración de Divulgación, la Estipulación de la ARD, o cualquier contrato, instrumento, descargo u otro acuerdo o documento dispuesto o contemplado en relación con el perfeccionamiento de las transacciones estipuladas en el Plan de la ACT; siempre en el bien entendido de que las disposiciones anteriores de esta Sección 41.7 (e) no afectarán la responsabilidad de cualquier Entidad que resultaría de otra manera de dicho acto u omisión en la medida en que dicho acto u omisión estuviera determinado en una Orden Final como constituyente de fraude o conducta dolosa.

Sección 41.8 – Litigio relacionado con las designaciones:

No obstante cualquier disposición en sentido contrario contenida en el Plan de la ACT, en el caso de que se dictase una Orden final en relación con el Litigio relacionado con las designaciones o el Litigio de uniformidad con posterioridad a la emisión de la Orden de confirmación de la ACT, como contrapartida por las distribuciones efectuadas, que vayan a efectuarse o que se considerarán efectuadas de conformidad con los términos y disposiciones del Plan de la ACT y los documentos e instrumentos relacionados con el mismo, todos los Acreedores o las demás Entidades que reciban, o se considere que hayan recibido, distribuciones de conformidad con, o como resultado de, el Plan de la ATC, consienten y aceptan que dicha Orden final no revertirá, afectará ni modificará de ningún otro modo las transacciones contempladas en el Plan de la ACT y en la Orden de confirmación la ACT, lo cual incluye, entre otros, los descargos, exculpaciones e interdictos previstos en el Artículo XLI del Plan de la ACT; siempre en el bien entendido de que, en la medida en que una parte demandante del Litigio relacionado con las designaciones o del Litio de uniformidad sea parte del Acuerdo de Apoyo al Plan de GO/AEP, el Acuerdo de Apoyo al Plan de ACT/ADCC, el Acuerdo de Apoyo al Plan de la AFI o la Estipulación de SRE, en un plazo de cinco (5) días laborables desde la Fecha de vigencia del Plan de la ACT, dicho demandante adoptará todas y cada una de las medidas necesarias para que se desestimen, sin perjuicio —o, en el caso de que hubiera otros demandantes que fuesen partes de dichos litigios para, sin perjuicio, retirarse— de dichos Litigios relacionados con designaciones o Litigios de uniformidad, según proceda, incluyendo, entre otros, cursando notificaciones de desestimación o retirada a la Secretaría del Tribunal competente.

Sección 41.9 – Orden de prohibición:

Dentro de los límites que se estipulan en el Plan de la ACT, a todas y a cada una de las Entidades se les impide, prohíbe y restringe de manera permanente, instituir, emprender, tramitar o litigar de cualquier manera todas y cada una de las Reclamaciones, demandas, derechos, responsabilidades o causas de acción de cualquier índole, carácter o naturaleza, tanto en derecho como en equidad, conocidos o desconocidos, directos o indirectos y tanto alegados como si no, contra cualquiera de las Partes exoneradas, sobre la base de, relacionados con o derivados de o en relación con cualquiera de las Reclamaciones exoneradas, la confirmación y perfeccionamiento del Plan de la ACT, la negociación y perfeccionamiento del Acuerdo de Apoyo al Plan de ACT/ADCC o cualquier reclamación, actuación, hecho, transacción, incidencia, declaración u omisión en relación con, o alegada o que pudiera alegarse, en los Casos de Título III, lo cual incluye, entre otros, cualquier reclamación, demanda, derecho, responsabilidad o causa de acción a efectos de indemnización, contribución u otro fundamento de este tipo, en derecho o en equidad, por daños y perjuicios, costos u honorarios incurridos que derivados directa o indirectamente de los Casos de Título III o que estén relacionados con ellos de alguna otra manera, sea directa o indirectamente por cualquier Persona para beneficio directo o indirecto de cualquier Parte exonerada, derivado de, o relacionado con, las reclamaciones, actuaciones, hechos, transacciones, incidencias, declaraciones u omisiones que son, o podrían o pudieran ser alegados en las acciones relacionadas o cualquier otra acción iniciada, o que pudiera iniciarse por, a través de, en nombre de, o en beneficio de cualquiera de las Partes exoneradas (tanto de conformidad con leyes federales como estatales o extranjeras, e independientemente de dónde se aleguen).

Sección 41.11 – Interdicto complementario:

No obstante lo dispuesto en sentido contrario en el Plan de la ACT, y salvo dentro de los límites que se estipulan en el Plan de la ACT, todas las Entidades, incluidas las Entidades que actúan en su propio nombre, que actualmente mantengan o aleguen, o hayan mantenido o alegado, o pudieran mantener y alegar, cualquier Reclamación exonerada en contra de cualquiera de las Partes exoneradas basadas en, atribuibles a, derivadas de o relacionadas con, los Casos del Título III o cualquier Reclamación contra el Deudor, sea y dondequiera que se planteen o aleguen, tanto en EE. UU. como en cualquier otra parte del mundo, contractual o extracontractualmente, en virtud de alguna garantía, ley o cualquier otra teoría en derecho o equidad, o de cualquier otra índole, estará, y se considerará que está, permanentemente paralizada, restringida y prohibida de iniciar cualquier acción contra cualquiera de las Partes exoneradas a efectos de cobrar, recobrar o percibir, directa o indirectamente, cualquier pago o recobro con respecto a cualquier Reclamación exonerada que se planteara con anterioridad a la Fecha de vigencia de la ACT (incluso con anterioridad a la Fecha de petición de la ACT), incluyendo, entre otros:

(a) Iniciar o continuar de cualesquiera maneras, actuaciones u otros procedimientos de toda índole con respecto a dichas Reclamaciones exoneradas contra cualquiera de las Partes exoneradas o los activos o bienes de cualquiera de ellas;

(b) Ejecutar, incautar, cobrar o recobrar, de cualquier manera y por cualquier medio, sentencias, laudos, decretos u órdenes en contra de cualquiera de las Partes exoneradas, sus activos o bienes de estas, en relación a dichas Reclamaciones exoneradas;

(c) Establecer, perfeccionar o ejecutar prendas de toda índole contra cualquiera de las Partes exoneradas, sus activos o bienes, con respecto a dichas Reclamaciones exoneradas;

(d) Salvo que se estipule expresamente en el Plan de la ACT o en la Orden de confirmación de la ACT, alegar, implementar o efectuar cualquier compensación, derecho de subrogación, indemnización, contribución o recobro de cualquier tipo contra cualquier obligación exigible a cualquiera de las Partes exoneradas, sus activos o bienes, vinculados con dichas Reclamaciones exoneradas; y

(e) Emprenden cualquier actuación, de la manera que fuera y en cualquier lugar, que no se ajuste al, o cumpla con las disposiciones del, Plan de la ACT o la Orden de confirmación de la ACT, en el bien entendido de que el hecho de que el Deudor cumpla los requisitos formales de la Regla de Quiebras 3016 no constituye una admisión de que el Plan de la ACT contempla cualquier interdicto en contra de una conducta que no esté de otro modo prohibida por el Código de Quiebras.

Fecha: 23 de junio de 2022, San Juan, Puerto Rico

Presentado respetuosamente, /s/ Brian S. Rosen, Martin J. Bienenstock (admitido *pro hac vice*), Brian S. Rosen (admitido *pro hac vice*), **PROSKAUER ROSE LLP**, Eleven Times Square, Nueva York, NY 10036, *Abogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, Esq., USDC Núm. 215205, **O'NEILL & BORGES LLC**, 250 Avenida Muñoz Rivera, Suite 800, San Juan, P.R. 00918-1813, *Coabogados de la Junta de Supervisión y Administración Financiera como representantes del Deudor*

[1] Los Deudores de estos Casos del Título III, conjuntamente con los números de casos del Título III de los respectivos Deudores y los cuatro (4) últimos dígitos del número de identificación tributaria federal de cada Deudor, según proceda, son (i) el Estado Libre Asociado de Puerto Rico (Caso de quiebra núm. 17-BK-3283-LTS) (cuatro últimos dígitos del número de identificación tributaria federal: 3481); (ii) Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra núm. 17-BK-3284-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 8474); (iii) Autoridad de Carreteras y Transportación de Puerto Rico ("ACT") (Caso de quiebra núm. 17-BK-3567-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Estado Libre Asociado de Puerto Rico ("SRE") (Caso de quiebra núm. 17-BK-3566-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 9686); (v) Autoridad de Energía Eléctrica de Puerto Rico ("AEEPR") (Caso de quiebra núm. 17-BK-4780-LTS) (Caso de quiebra núm. 17-BK-4780-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3747); y (vi) Autoridad de Edificios Públicos de Puerto Rico ("AEP") (Caso de quiebra núm. 19-BK-5523-LTS) (Caso de quiebra núm. 17 BK 3284-LTS) (últimos cuatro dígitos de la identificación tributaria federal: 3801) (los números de casos del Título III están enumerados como números de Casos de quiebra debido a las limitaciones del software).

[2] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

[3] Todos los términos en mayúsculas utilizados pero no definidos tendrán los significados atribuidos a los mismos en el Plan.

[4] El 29 de marzo de 2022, Prime Clerk LLC cambió su denominación social por Kroll Restructuring Administration LLC.

pressreader PRINTED AND DISTRIBUTED BY PRESSREADER PressReader.com +1 604 278 4604 COPYRIGHT AND PROTECTED BY APPLICABLE LAW

# Exhibit I

***The New York Times***

**(July 6, 2022)**



The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

# PROOF OF PUBLICATION

Jul-20, 2022

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

June 30, 2022, NYT & Natl, pg B3 - July 06, 2022, NYT & Natl, pg B3

July 20, 2022, NYT & Natl, pg B3

Sworn to me this 20th day
of July, 2022

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**TRADE**

# Export Controls Are at Heart of U.S. Strategy to Restrain China

FROM FIRST BUSINESS PAGE

cannot build capabilities that they will then use against us, or against their neighbors for that matter, in any kind of conflict."

American officials say the use of export controls on Russia is perhaps the greatest success so far in the sweeping campaign of economic punishment against President Vladimir V. Putin and his military. The United States and its partners have imposed broad restrictions on sending semiconductors, aircraft parts, equipment for the oil and gas industry and other goods to Russia, in an effort to cripple Russia's military and its strategic industries.

With China, efforts have been more targeted. The officials say their goal is not to weaken the broader Chinese economy, but rather to limit China's access to technologies that would contribute to its military and scientific advancement. That in itself could help prevent armed conflict, U.S. officials say.

"My goal is to stop China from being able to use that technology to advance their military, modernize their military," Mr. Estevez, also a former Pentagon official, told reporters last week at a Commerce Department policy conference in Washington, referring to advanced semiconductor chips, artificial intelligence and quantum computing.

But China is the world's second-largest economy, and any trade restrictions against it would carry much greater risks than those imposed on Russia. American executives say that broad export controls could be deeply disruptive to global commerce and also provoke China to issue its own restrictions on some of the crucial products it supplies to the United States and other countries, including certain minerals.

And widespread use of the controls could erode American technological leadership and market dominance over the long term by encouraging foreign customers to find other sources of supply.

But Gina Raimondo, the commerce secretary, declared at the policy conference that export controls "are at the red-hot center of how we best protect our democracies."

She underscored the impact of controls on Russia, saying that global semiconductor exports to the country had declined by 90 percent, and that its fleet of commercial aircraft could be decimated soon. "We also know that another autocratic regime — China — is watching our response closely," she added.

The Biden administration on Tuesday put five Chinese companies on an export blacklist for continuing to support Russia's military-industrial sector. It was the first time the U.S. government had taken action against Chinese companies for aiding Russia since the war in Ukraine began in February, though American officials say the Chinese government and most companies appear to be complying with the U.S.-led sanctions.

Even before those actions, the Biden administration had doubled down on a Trump administration policy of wielding export controls as a cudgel against Chinese companies.

In 2018, Congress passed a law requiring the Commerce Department to expand its controls on sensitive American technologies that flow abroad.

Though some lawmakers say the government has moved too slowly on this, the department under both the Trump administration and the Biden administration has aggressively wielded a more targeted tool, called the entity list, which cuts foreign companies and organizations off from U.S. technology unless their American suppliers obtain a license to sell goods to them.

The Trump administration put Huawei and SMIC, two prominent Chinese technology companies, on that list.

Before Russia invaded Ukraine, the Commerce Department under Mr. Biden was adding China-based companies and organizations to the list at a much faster rate than ones from any other country. Of 475 foreign entities added since January 2021, 107 are based in China, according to a new tally of data that the agency provided to The New York Times. By contrast, the administration put 23 Russia-based entities on the list before the war — then quickly added 252, in addition to imposing broader restrictions on entire categories of technology goods.

The administration has also blacklisted companies based in Pakistan, Belarus, Myanmar, the United Arab Emirates, Singapore and Britain, but those numbers are much smaller.

Most of the China-based entities listed during the Biden administration were judged by U.S. officials to have military roles or to be involved in systemic human rights abuses. Some have suspicious ties with Iran, North Korea and Pakistan, countries with nuclear programs that the United States is trying to constrain, U.S. officials say. A few are linked to aggressive actions in disputed territory in the South China Sea.

CARLOS GARCIA RAWLINS/REUTERS

**President Xi Jinping wants China to be the global leader in science and tech.**

The United States has also extended the reach of its export restrictions well beyond U.S. borders. It has forbidden companies anywhere in the world to export certain items if they are made with American technology to some listed entities, including Russian military groups and Huawei, the Chinese telecommunications company.

"One of the lessons from the use of that tool with Huawei is that it can be a pretty powerful mechanism," said Samm Sacks, a researcher on technology policy at Yale Law School and New America. "It captures a lot of third-country suppliers."

Some American lawmakers say further technology restrictions would be a potent tool to wield against Beijing, and that threats to broaden those controls might help deter potential hostilities by Chinese leaders toward Taiwan. But some analysts warn of possible retaliation from China.

"As the United States continues to exploit the extraterritorial reach of its regulations, the growing threat of a regulatory 'arms race,' particularly with China, adds to an already jittery business environment," Jeanette Chu, a senior associate at the Center for Strategic and International Studies, wrote in March.

"The 'tit for tat' nature of export controls and sanctions today risks undermining the effectiveness of export controls and leaving policymakers with limited options," she added.

Although the Chinese government denounces Washington's use of sanctions, it has increasingly used its own form of economic punishments to harm countries that take stands contravening Beijing's political views. Recent targets include Australia, Japan, South Korea and Norway. When Lithuania permitted Taiwan last year to open a representative office in its capital, China cut off its exports to Lithuania as well as imports.

In June 2021, Beijing enacted the "Anti-Foreign Sanctions Law," aimed at punishing companies and individuals that comply with foreign sanctions against China. And the Chinese government has an export control law that it could use broadly.

China remains behind the United States in many technological fields but is quickly catching up. In some areas — biotechnology, artificial intelligence and 5G communications, for instance — China is at or near the fore. And it is set to overtake the United States in national spending on research and development within the next several years.

"Scientific and technological innovation has become the main battlefield of the international strategy contest, and the competition around the commanding heights of science and technology is unprecedentedly fierce," President Xi Jinping of China said in a speech in May 2021.

Biden administration officials say the export controls imposed on Russia show that the strength of American actions comes from coordination with partner nations.

At Mr. Biden's democracy summit in December 2021, the United States, Australia, Denmark and Norway announced they would begin building a new export control policy program to limit technologies going to authoritarian governments engaged in human rights abuses.

The most prominent global export regime now, the Wassenaar Arrangement, is intended to control sales of technology that can be used for military as well as commercial purposes, but critics say it has drawbacks, including that Russia is a member.

Any new multilateral system for export controls must be done with partners so that many countries impose the same limits, Mr. Estevez said last month. "As anyone knows, if you dam half the river, the water is still flowing," he added.

But Martin Chorzempa, a senior fellow at the Peterson Institute for International Economics, warned that many nations that have deep trade ties with China could resist efforts to impose broad export controls on the country.

"I don't think you'd see the level of unanimity that the sanctions on Russia would have, so that would risk splitting the coalition," he said.

And the potential for further restrictions on China is already causing some concern among American business executives.

Myron Brilliant, executive vice president at the U.S. Chamber of Commerce, said the business community had been "steadfast in its support of the multilateral use of sanctions against Russia given that country's unprovoked and brutal invasion of Ukraine," but that views on China were "more complex and nuanced."

"The business community has deep concerns with China's predatory and market distortion policies, yet we must also recognize that the two largest economies are very integrated," he said. "So the impact of broad decoupling or extensive sanctioning of China would be much more destabilizing."

Julian E. Barnes contributed reporting.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| In re: | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO *et al.*, Debtors.[1] | PROMESA Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, Debtor. | PROMESA Title III<br>No. 17 BK 3567-LTS |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. ***Approval of Disclosure Statement.*** By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**

**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
**(844) 822-9231 (toll free for U.S. and Puerto Rico)**
**(646) 486-7944 (for international callers)**
**Email: puertoricoinfo@primeclerk.com**

Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2. Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository.*** Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

a. Be in writing, in English, and signed;
b. State the name, address, and nature of the Claim of the objecting or responding party;
c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;
d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**.
i. If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:
United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767
so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and
e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8. ***Confirmation and Discovery Timetable and Deadlines.*** The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

| Summary of Certain Deadlines | |
|---|---|
| July 1, 2022 | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "Fact Witness Lists"). |
| | Deadline for Parties to file opening expert disclosures ("Opening Expert Disclosures"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("Production Requests"). Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests. Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| July 8, 2022 | Deadline for Parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| July 12, 2022 | Deadline for Parties to file opening expert reports ("Opening Expert Reports"), if any. If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("Notices of Deposition") (all parties are limited to a seven (7)-hour time limit for depositions). |
| July 18, 2022 | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| July 20, 2022 | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| July 22, 2022 | Completion of expert discovery (the "Expert Discovery Deadline"). |
| July 25, 2022 | Deadline for Parties to file Daubert motions and motions *in limine*. |
| July 27, 2022 | Deadline for:<br>• Objections to confirmation of the Plan ("Objections").<br>• Objections to Proposed Confirmation Order. |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| July 29, 2022 | Deadline for Parties to file oppositions to Daubert motions and motions *in limine*. |
| August 1, 2022 | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| August 3, 2022 | Deadline for Parties to file replies in support of Daubert motions and motions *in limine*. |
| August 4, 2022 | Deadline for Parties to file objections to counter-designations |
| August 7, 2022 | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation.<br>• Omnibus reply to objections to confirmation and proposed confirmation order.<br>• Witness Declarations & Vote Tabulation.<br>• Findings of Fact and Conclusions of Law. |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| August 8, 2022 | Virtual Pretrial conference. |
| August 15, 2022 | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| August 17-18, 2022 | Confirmation Hearing |

9. ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond Classes) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10. ***Voting Deadline.*** The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11. If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

12. ***Election Deadline***. The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline"). If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to ***actually effectuate*** your election through DTC's ATOP on or before the Election Deadline.

13. ***Parties in Interest Not Entitled to Vote.*** Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14. Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);
- Class 19 (Convenience Claims).

15. If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan. Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16. If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18. ***Parties Who Will Not Be Treated as Creditors***. Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (https://pacer.uscourts.gov) password and login are needed to access documents on the Court's website.

20. ***Bankruptcy Rules 2002(c)(3) and 3016(c)).*** **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 41.2 – Discharge and Release of Claims and Causes of Action:**

**(a) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor. Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan. For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.**

**(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.**

**(c) Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the HTA Plan.**

**(d) SEC Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.**

**(e) United States Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor. Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).**

**(f) Underwriter Actions. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.**

**Section 41.3 – Injunction on Claims: Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.**

**Section 41.5 – Releases by the Debtor and Reorganized HTA: Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.**

**Section 41.6 – Injunction Related to Releases: As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order. For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.**

**Section 41.7 – Exculpation:**

**(a) Government Parties: The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.**

**(b) HTA/CCDA PSA Creditors: Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(c) Monoline Insurers: Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies; provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).**

**(d) Creditors' Committee: Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(e) The DRA Parties: Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise) and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, each solely in its capacity as such, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation: Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.**

**Section 41.9 – Bar Order: To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).**

**Section 41.11 – Supplemental Injunction: Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022, San Juan, Puerto Rico

Respectfully submitted, /s/ Brian S. Rosen, Martin J. Bienenstock (*pro hac vice*), Brian S. Rosen (*pro hac vice*), **PROSKAUER ROSE LLP**, Eleven Times Square, New York, NY 10036, *Attorneys for the Financial Oversight and Management Board as representative for the Debtor* -and- /s/ Hermann D. Bauer, Hermann D. Bauer, USDC No. 215205, **O'NEILL & BORGES LLC**, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3] All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

[4] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

# Exhibit J

***Bond Buyer***

**(July 6, 2022)**

# Copy Of Advertisement Of

# Certificate of Publication

Yohanna Beato, is the Billing Coordinator of the BOND BUYER, a daily newspaper printed and published at One State Street Plaza, in the City of New York, County of New York, State of New York; and the notice, of which the annexed is a printed copy, was regularly published in said BOND BUYER on July 6th 2022.

X Yohanna Beato

*Billing Coordinator*

*July 6th 2022*

**Legal Notice (Page 1 of 3)**

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br>Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br>Debtor. | PROMESA<br>Title III<br>No. 17 BK 3567-LTS |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

**If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**

**VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on July 27, 2022**

**CONFIRMATION HEARING: August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**

**See below for additional deadlines.**

If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. ***Approval of Disclosure Statement.*** By order, dated June 22, 2022 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated June 17, 2022 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

**You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**
**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
**(844) 822-9231 (toll free for U.S. and Puerto Rico)**
**(646) 486-7944 (for international callers)**
**Email: puertoricoinfo@primeclerk.com**
Alternatively, electronic copies of the Disclosure Statement and Plan are available by visiting https://cases.primeclerk.com/puertorico/.

2. Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan or making elections on distributions thereunder (the "Solicitation Package") to holders Claims in the following Classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| HTA 68 Bond Claims | Class 1 |
| HTA 68 Bond Claims (Ambac) | Class 2 |
| HTA 68 Bond Claims (Assured) | Class 3 |
| HTA 68 Bond Claims (National) | Class 4 |
| HTA 98 Senior Bond Claims | Class 5 |
| HTA 98 Senior Bond Claims (Ambac) | Class 6 |
| HTA 98 Senior Bond Claims (Assured) | Class 7 |
| HTA 98 Senior Bond Claims (FGIC) | Class 8 |
| HTA 98 Senior Bond Claims (National) | Class 9 |
| HTA 98 Sub Bond Claims | Class 10 |
| HTA 98 Sub Bond Claims (Assured) | Class 11 |
| HTA 98 Sub Bond Claims (FGIC) | Class 12 |
| HTA 98 Sub Bond Claims (National) | Class 13 |
| Eminent Domain/Inverse Condemnation Claims | Class 15 |
| HTA General Unsecured Claims | Class 16 |
| HTA/GDB Claims | Class 17 |
| Federal Claims | Class 20 |

3. ***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan, P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **August 17-18, 2022 at 9:30 a.m. (Atlantic Standard Time)**.

4. The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

5. ***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

6. ***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on July 27, 2022** (the "Confirmation Objection Deadline"), as the deadline to file objections or responses to confirmation of the proposed Plan. Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

7. ***Objections and Responses to Confirmation.*** Objections and responses to confirmation of the Plan must:

a. Be in writing, in English, and signed;

b. State the name, address, and nature of the Claim of the objecting or responding party;

c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan to resolve any such objection or response;

d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Highways and Transportation Authority*, Case No. 17 BK 3567-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time).**

i. If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150, San Juan, P.R. 00918-1767

so as to be received **on or before July 27, 2022 at 5:00 p.m. (Atlantic Standard Time)**, and

e. Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Highways and Transportation Authority) so as to be received on or before the Confirmation Objection Deadline.

8. ***Confirmation and Discovery Timetable and Deadlines***. The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest:

**Summary of Certain Deadlines**

| Date | Deadline |
|---|---|
| July 1, 2022 | Deadline for Parties to file a fact witness list and topics about which each witness is expected to testify (the "Fact Witness Lists"). |
| | Deadline for Parties to file opening expert disclosures ("Opening Expert Disclosures"), if any. |
| | Deadline for Parties to serve requests for production of non-depository documents ("Production Requests"). Responses and objections to such Production Requests shall be served within seven (7) days of service of such Requests. Parties may serve up to one additional round of Production Requests, provided that they are served on or before July 11, 2022. |
| July 8, 2022 | Deadline for Parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| July 12, 2022 | Deadline for Parties to file opening expert reports ("Opening Expert Reports"), if any. If any Opening Expert Reports are filed, rebuttal expert disclosures must be filed within three (3) days of such filing, and rebuttal expert reports must be filed five (5) days after the filing of rebuttal expert disclosures. |
| | Deadline for Parties to serve notices of deposition, topics and requested times for depositions ("Notices of Deposition") (all parties are limited to a seven (7)-hour time limit for depositions). |
| July 18, 2022 | Deadline for Parties to serve requests for admission limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of such Admission Requests. |
| | Completion of fact discovery (the "Fact Discovery Deadline"). |
| July 20, 2022 | Deadline for the Debtor to file proposed confirmation order (the "Proposed Confirmation Order"). |
| July 22, 2022 | Completion of expert discovery (the "Expert Discovery Deadline"). |
| July 25, 2022 | Deadline for Parties to file Daubert motions and motions *in limine*. |
| July 27, 2022 | Deadline for:<br>• Objections to confirmation of the Plan ("Objections").<br>• Objections to Proposed Confirmation Order. |
| | Voting Deadline / Election Deadline |
| | Deadline for Parties to file finalized witness lists, exhibit lists and deposition designations. |
| July 29, 2022 | Deadline for Parties to file oppositions to Daubert motions and motions *in limine*. |
| August 1, 2022 | Deadline for Parties to file (a) objections to exhibit lists and deposition designations and (b) counter-designations. |
| August 3, 2022 | Deadline for Parties to file replies in support of Daubert motions and motions *in limine*. |
| August 4, 2022 | Deadline for Parties to file objections to counter-designations |
| August 7, 2022 | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation.<br>• Omnibus reply to objections to confirmation and proposed confirmation order.<br>• Witness Declarations & Vote Tabulation.<br>• Findings of Fact and Conclusions of Law. |
| | Deadline for Non-Debtor Parties to file witness declarations. |
| August 8, 2022 | Virtual Pretrial conference. |
| August 15, 2022 | Deadline for Parties to file objections to Findings of Fact and Conclusions of Law. |
| August 17-18, 2022 | Confirmation Hearing |

9. ***Voting Record Date.*** The voting record date is **June 17, 2022** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Bond Classes) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the Bond Classes) as of the Voting Record Date are entitled to vote on the Plan.

10. ***Voting Deadline.*** The deadline for voting on the Plan is **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). ***You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim.***

11. If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[4] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

12. ***Election Deadline***. The deadline for holders of eligible Bond Claims that have the right to make an election of the form of distributions under the Plan to make such election is on **July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline"). If you received a Notice with an option to make an election, you ***must***: (a) follow the instructions carefully; and (b) deliver ***all*** of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to ***actually effectuate*** your election through DTC's ATOP on or before the Election Deadline.

13. ***Parties in Interest Not Entitled to Vote.*** Creditors in Class 18 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

14. Creditors in the following Classes are deemed to accept the Plan and not entitled to vote:

- Class 14 (HTA Moscoso Bond Claims);
- Class 19 (Convenience Claims).

15. If a Claim is listed on the Debtor's list of creditors (Docket Entry No. 2163 in Case No. 17-3283) as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan. Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

16. If you have timely filed a proof of claim and disagree with the Debtor's classification of, objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 16 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan. All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim. In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the Voting Deadline (**July 27, 2022, at 5:00 p.m. (Atlantic Standard Time)**). Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@primeclerk.com, to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

17. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.primeclerk.com/puertorico/.

18. ***Parties Who Will Not Be Treated as Creditors***. Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

19. ***Additional Information***. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (https://pacer.uscourts.gov) password and login are needed to access documents on the Court's website.

20. ***Bankruptcy Rules 2002(c)(3) and 3016(c).*** **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 41.2 – Discharge and Release of Claims and Causes of Action**:

(a) **Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distrib-**

*continue reading on the next page*►

Legal Notice (Page 2 of 3)

uted or retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan, nothing contained in the HTA Plan or the HTA Confirmation Order is intended, nor shall it be construed, to be a grant of a non-consensual third party release of the HTA/CCDA PSA Creditors and their respective Related Persons by Creditors of the Debtor. Upon the HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date, and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan. For the avoidance of doubt, nothing contained in the HTA Plan or in the HTA Confirmation Order shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity. Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b) Except as expressly provided in the HTA Plan or the HTA Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the HTA Plan or the HTA Confirmation Order, the HTA Confirmation Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided under the HTA Plan, each holder of a Claim in any Class under this HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c) Notwithstanding any other provisions of Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by Section 41.2 of the HTA Plan.

(d) SEC Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

(e) United States Limitation. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or Reorganized HTA to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or Reorganized HTA, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or Reorganized HTA, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or Reorganized HTA's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor. Without limiting the foregoing, nothing contained in the HTA Plan or in the HTA Confirmation Order shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and Reorganized HTA, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and Reorganized HTA, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and Reorganized HTA, and (iv) to grant any relief to any Entity that the Court is prohibited from granting the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

(f) Underwriter Actions. Notwithstanding anything contained in the HTA Plan or in the HTA Confirmation Order to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of set-off or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provision of the HTA Plan and the HTA Confirmation Order; and, provided, further, that nothing herein or in the HTA Confirmation Order is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting, against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

Section 41.3 – Injunction on Claims: Except as otherwise expressly provided in the HTA Plan, the HTA Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

Section 41.5 – Releases by the Debtor and Reorganized HTA: Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized HTA, the Disbursing Agent and each of the Debtor's and Reorganized HTA's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized HTA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.

Section 41.6 – Injunction Related to Releases: As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or the HTA Confirmation Order. For the avoidance of doubt, the following stipulations will terminate upon the entry of the HTA Confirmation Order: (i) the Fourth Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transpiration Authority Regarding the Tolling of Statute of Limitations and Consent Order [Case No. 173283-LTS, ECF No. 15854], as amended; and (ii) the Fourth Amended Stipulation and Consent Order Between Title III Debtors (Other Than COFINA) and the Puerto Rico Fiscal Agency and Financial Advisory Authority Acting on Behalf of the Governmental Entities Listed on Appendix "B" Regarding the Tolling of Statute of Limitations [Case No. 17-3283-LTS, ECF No. 17394], as amended.

Section 41.7 – Exculpation:

(a) Government Parties: The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7 shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in the foregoing provisions of this Section 41.7 shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.

(b) HTA/CCDA PSA Creditors: Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the HTA Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this Section 41.7(b) shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c) Monoline Insurers: Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies provided, however, that, notwithstanding anything contained herein to the contrary, the terms and provisions of the HTA Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with its terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National, may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies or National Insurance Policies, as applicable).

(d) Creditors' Committee: Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained herein, the HTA Disclosure Statement, or any contract, instrument, release or other agreement or document pro-

continue reading on the next page►

Legal Notice (Page 3 of 3)

**vided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and provided, further, that, the foregoing provisions of this Section 41.7(d) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**(e) The DRA Parties: Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this Section 41.7(e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.**

**Section 41.8 – Appointments Related Litigation: Notwithstanding anything contained in the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of the HTA Confirmation Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan, consent and agree that such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and the HTA Confirmation Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all action to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of court having jurisdiction thereof.**

**Section 41.9 – Bar Order: To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).**

**Section 41.11 – Supplemental Injunction: Notwithstanding anything contained in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the HTA Petition Date), including, but not limited to:**

(a) Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b) Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c) Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d) Except as otherwise expressly provided in the HTA Plan or the HTA Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e) Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or the HTA Confirmation Order, provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: June 23, 2022, San Juan, Puerto Rico

Respectfully submitted, */s/ Brian S. Rosen*, Martin J. Bienenstock (*pro hac vice*), Brian S. Rosen (*pro hac vice*), **PROSKAUER ROSE LLP,** Eleven Times Square, New York, NY 10036, *Attorneys for the Financial Oversight and Management Board as representative for the Debtor* -and- */s/ Hermann D. Bauer*, Hermann D. Bauer, USDC No. 215205, **O'NEILL & BORGES LLC,** 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3] All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

[4] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

For your next hire, leverage *The Bond Buyer*'s significant nationwide municipal bond market reach in print, online, and e-newsletter to:

**ANALYST**

**ASSOCIATE**

**BOND COUNSEL**

**MUNICIPAL ADVISOR**

**MANAGING DIRECTOR**

**MUNICIPAL TRADER**

**BROKER-DEALER**

**INVESTMENT BANKER**

**TRUSTEE**

**AMONG OTHERS....**

**To place a job posting, contact Wei-Ke (Victor) Kuo at**
1-212-803-8612 or wei-ke.kuo@arizent.com

# Exhibit K

***El Nuevo Herald***

**(July 6, 2022)**



State of Florida July 20, 2022
County of Monroe, Dade and Broward

I *Matthew Weisberg* Being Duly Sworn on oath say he is and during all times herein stated has been the publisher's designated agent of the publication known as ***EL Nuevo Herald*** has full knowledge of the facts herein stated as follows:

The run of paper advertisement (ROP) in the Main section A of EL nuevo Herald for:

Tribunal De Los Estados Unidos Para El Distrito De Puerto Rico

Promes Tituli 111 Num. 17 BK 3283-LTS
(Administrado de manera conjunta)

Promesa Titulo 111 Num. 17 BK 3567-LTS

was distributed to Publishers full circulations (EL Nuevo Herald)

- On the 30th day of June 2022.
- On the 6th day of July 2022.
- On the 20th day of July 2022.

By: *Matthew Weisberg*

Subscribed and sworn to before me this 20th day of July, 2022

3511 NW 91 Avenue, Miami, FL 33172 I *********@miamiherald.com I www.miamiherald.com I www.elnuevoherald.com

a. Presentarse por escrito, en inglés, y estar firmadas;

b. Indicar el nombre, domicilio y naturaleza de la Reclamación de la parte objetora o replicante;

c. Indicar específicamente el fundamento y naturaleza de cualquier objeción o respuesta, e incluir, si procediera, el texto propuesto para insertar en el Plan, con el objeto de resolver dicha objeción o respuesta;

d. Presentarse electrónicamente ante el Tribunal en los expedientes de (i) *En el asunto de la Autoridad de Carreteras y Transportación de Puerto Rico*, Caso núm. 17 BK 3567-LTS, y (ii) *En el asunto del Estado Libre Asociado de Puerto Rico*, Caso núm. 17 BK 3283-LTS, a través del sistema de presentación de casos del tribunal, en formato de documento portátil con función de búsqueda **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**.

i. Si no es usted abogado registrado como usuario en el sistema de presentación de casos del Tribunal, podrá enviar su objeción por correo postal a la oficina de la Secretaría del Tribunal:

Tribunal de Distrito de Estados Unidos, Secretaría
150 Avenida Carlos Chardón, Suite 150,
San Juan, P.R. 00918-1767

para que sea recibida **como más tardar a las 5:00 p.m. (hora estándar del Atlántico) del 27 de julio de 2022**, y

e. Cursarla a la Oficina del Fideicomisario de los Estados Unidos para el Distrito de Puerto Rico, Edificio Ochoa, Calle Tanca 500, Suite 301, San Juan, PR 00901 (ref: En el asunto de: Autoridad de Carreteras y Transportación de Puerto Rico), para que sea recibida como más tardar en la Fecha límite de objeción a la confirmación.

8. ***Calendario y fechas límite de confirmación e indagatoria***. El Tribunal ha establecido las siguientes fechas y plazos límite para indagatorias, que serán aplicables al Deudor y a otras partes interesadas:

| Resumen de ciertas fechas límite | |
|---|---|
| 1 de julio de 2022 | Fecha límite para que las Partes registren una lista de testigos de hechos, detallando los temas acerca de los cuales testificará cada uno de ellos (las "Listas de testigos de hecho"). |
| | Fecha límite para que las partes registren las declaraciones iniciales de peritos ("Declaraciones iniciales de peritos"), si las hubiera. |
| | Fecha límite para que las Partes cursen solicitudes de presentación de documentos que no estén bajo custodia del Depositario (las "Solicitudes de presentación"). Las respuestas y objeciones a las citadas Solicitudes de presentación podrán cursarse dentro de un plazo de siete (7) días desde la recepción de dichas Solicitudes. Las Partes podrán cursar hasta una ronda adicional de Solicitudes de presentación, siempre y cuando se haga en o antes del 11 de julio de 2022. |
| 8 de julio de 2022 | Fecha límite para que las Partes cursen hasta quince (15) interrogatorios ("Interrogatorios"), incluyendo las subpartes. Las respuestas y objeciones a los citados Interrogatorios podrán cursarse dentro de un plazo de diez (10) días desde la recepción de dichos Interrogatorios. |
| 12 de julio de 2022 | Fecha límite para que las partes registren los informes periciales iniciales ("Informes periciales iniciales"), si los hubiera. Si se presenta algún Informe pericial inicial, las refutaciones a las divulgaciones de expertos deberán presentarse en un plazo de tres (3) días desde dicha presentación, y las respuestas a dichas refutaciones se presentarán cinco (5) días después de las divulgaciones. |
| | Fecha límite para que las partes cursen las notificaciones de declaraciones juradas, temas y horarios solicitados para las mismas ("Notificaciones de declaraciones juradas") (todas las partes están limitadas a un límite de siete (7) horas para declaraciones juradas). |
| 18 de julio de 2022 | Fecha límite para que las Partes cursen solicitudes de admisión, limitadas a la autenticación de documentos ("Solicitudes de Admisión"). Las respuestas y objeciones a las citadas Solicitudes de Admisión podrán cursarse dentro de un plazo de cuatro (4) días laborables desde la recepción de dichas Solicitudes de Admisión. |
| | Conclusión de la indagatoria de hechos (la "Fecha límite de indagatoria de hechos"). |
| 20 de julio de 2022 | Fecha límite para que el Deudor registre la propuesta de Orden de confirmación (la "Propuesta de Orden de confirmación"). |
| 22 de julio de 2022 | Conclusión de la indagatoria de peritos (la "Fecha límite de indagatoria de peritos"). |
| 25 de julio de 2022 | Fecha límite para que las partes presenten mociones Daubert y mociones *in limine*. |
| 27 de julio de 2022 | Fecha límite para:<br>• Objeciones a la confirmación del Plan ("Objeciones").<br>• Objeciones a la Propuesta de Orden de confirmación. |
| | Fecha límite de votación / Fecha límite de elección |
| | Fecha límite para que las partes registren las listas de testigos, las listas de pruebas y las designaciones de declaraciones juradas definitivas. |
| 29 de julio de 2022 | Fecha límite para que las partes presenten oposiciones a las mociones Daubert y mociones *in limine*. |
| 1 de agosto de 2022 | Fecha límite para que las partes presenten (a) objeciones a las listas de pruebas y designaciones de declaraciones juradas y (b) designaciones opuestas. |
| 3 de agosto de 2022 | Fecha límite para que las partes presenten sus respuestas en apoyo de las mociones Daubert y las mociones *in limine*. |
| 4 de agosto de 2022 | Fecha límite para que las Partes presenten objeciones a las designaciones opuestas. |
| 7 de agosto de 2022 | Fecha límite para que el Deudor presente:<br>• Memorando de ley en apoyo de la confirmación.<br>• Réplicas generales a las objeciones a la confirmación y a la propuesta de orden de confirmación.<br>• Declaraciones de testigos y recuento de votos.<br>• Antecedentes de hecho y conclusiones de derecho. |
| | Fecha límite para que las Partes no deudoras presenten declaraciones de testigos. |
| 8 de agosto de 2022 | Conferencia virtual previa al juicio. |
| 15 de agosto de 2022 | Fecha límite para que las Partes presenten objeciones a los Antecedentes de hecho y conclusiones de derecho. |
| 17-18 de agosto de 2022 | Vista de confirmación |

9. ***Fecha de registro de votación.*** La fecha de registro de votación será el 17 de junio de 2022 (la "Fecha de registro de votación"), que será la fecha para determinar cuáles titulares de Reclamaciones de las Clases con derecho a voto (excepto las Clases de bonos) tienen derecho a votar a favor o en contra del Plan. Por consiguiente, solamente podrán votar a favor o en contra del Plan los acreedores de una Clase con derecho a votar por el Plan que mantenga Reclamaciones contra el Deudor (salvo en las Clases de bonos) a la Fecha de registro de votación.

10. ***Fecha límite de votación.*** La fecha límite para votar a favor o en contra del Plan es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo que dicho plazo sea prorrogado (la "Fecha límite de votación"). ***Usted no está obligado a votar a favor o en contra del Plan para percibir distribuciones de conformidad con los términos y condiciones del Plan, si este es confirmado por el Tribunal, siempre y cuando sea titular de una Reclamación permitida.***

11. Si recibió un Paquete de convocatoria, incluyendo una Papeleta o Notificación, y tiene previsto ejercitar su voto sobre el Plan, ***deberá***: (a) atenerse estrictamente a las instrucciones; (b) cumplimentar ***todos*** los datos requeridos en la Papeleta (según proceda); y (c) o bien (i) ejecutar y devolver la Papeleta cumplimentada de conformidad con las instrucciones de votación incluidas en el Paquete de convocatoria, de modo que su Papeleta sea ***efectivamente recibida*** por el Agente de convocatoria del Deudor, Kroll Restructuring Administration LLC ("Kroll", o el "Agente de votación")[4] como más tardar en la Fecha límite de votación, o bien (ii) ordenar a su intermediario o persona designada (cada uno de ellos, una "Persona designada") que envíe electrónicamente sus bonos a través del Programa Automatizado de Oferta de Presentación ("ATOP") en The Depository Trust Company ("DTC") en función de su deseo de votar para aceptar o rechazar el Plan en o antes de la Fecha límite de votación. ***El incumplimiento de estas instrucciones puede hacer que su voto sea descalificado.***

12. ***Fecha límite de elección.*** La fecha límite para que los tenedores de Reclamaciones de Bonos elegibles que tengan derecho a elegir la forma de distribución según el Plan realicen dicha elección es el **27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**, salvo si dicho plazo es prorrogado (la "Fecha límite de elección"). Si ha recibido una Notificación con la opción de hacer una elección ***deberá***: (a) atenerse estrictamente a las instrucciones; y (b) cumplimentar ***todos*** los datos requeridos en las instrucciones de elección, de modo que sean efectivamente recibidas por su Persona designada con suficiente antelación para que esta pueda ***ejecutar efectivamente*** su elección a través del sistema ATOP de DTC como más tardar en la Fecha límite de elección.

13. ***Partes interesadas sin derecho al voto.*** Se considera que los acreedores de la Clase 18 (Reclamaciones subordinadas de la Sección 510(b)) rechazan el Plan, por lo cual no tienen derecho de votar.

14. Se considera que las siguientes Clases aceptan el Plan, por lo cual no tienen derecho de votar:

- Clase 14 (Reclamaciones de Bonos Moscoso de la ACT);
- Clase 19 (Reclamaciones de conveniencia).

15. Si una Reclamación está incluida en la Lista de acreedores del Deudor (Registro en el expediente judicial núm. 2163 en el Caso núm. 17-3283) como contingente, no liquidada o impugnada, y (i) no se registró una evidencia de reclamación en la fecha límite aplicable para la presentación de pruebas de reclamación establecida por el Tribunal o en la Fecha de registro de votación (según proceda); o (ii) considerada debidamente registrada por orden del Tribunal antes de la Fecha límite de votación, dicha Reclamación no tendrá derecho a votar por la aceptación o el rechazo del Plan. Tampoco las pruebas de reclamación presentadas por $0.00 o aquellas desestimadas por orden del Tribunal tendrán derecho de voto.

16. Si usted ha presentado oportunamente una evidencia de reclamación y no está de acuerdo con la clasificación del Deudor, la objeción o la solicitud de estimación de su Reclamación y cree que debería tener derecho a votar sobre el Plan, debe notificarlo al Deudor y a las partes enumeradas en el apartado 16 de la Orden de Declaración de divulgación y registrar en el Tribunal (con copia al Despacho de la juez) una moción (una "Moción conforme a la Regla 3018(a)") para obtener una orden a tenor de la Regla 3018 de las Reglas Federales de Procedimiento de Quiebra (las "Reglas de Quiebra") que permita de forma provisional su Reclamación por un monto diferente o una Clase diferente a los efectos de votar para aceptar o rechazar el Plan. Todas las Mociones de la Regla 3018(a) deben presentarse como más tardar décimo (10°) día después de una de las siguientes fechas: (i) la notificación de esta Vista de Confirmación y (ii) la notificación de una objeción o solicitud de estimación, si la hubiera, en cuanto a dicha Reclamación, lo que más tarde se produzca. De acuerdo con la Regla de Quiebra 3018(a), en lo que respecta a cualquier acreedor que presente una Moción conforme a la Regla 3018(a), la Papeleta de dicho acreedor no se contabilizará, salvo que el Tribunal ordene lo contrario antes de la Fecha límite de votación (**27 de julio de 2022 a las 5:00 p.m. (hora estándar del Atlántico)**). Los acreedores podrán ponerse en contacto con el Agente de votación (i) a través de correo postal certificado o de un servicio de mensajería, dirigiéndose al Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (anteriormente conocida como Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) por teléfono llamando al (844) 822-9231 (gratuito en EE.UU. y Puerto Rico) o al (646) 486-7944 (llamadas internacionales), que atiende de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien (iii) por correo electrónico escribiendo a puertoricoinfo@primeclerk.com. Papeleta adecuada para cualquier Reclamación para la que se haya presentado oportunamente una evidencia de reclamación y se haya aceptado una Moción conforme a la Regla 3018(a). Las Mociones de la Regla 3018(a) que no se hayan presentado a tiempo y en la forma establecida en el presente no serán tenidas en cuenta.

17. Si desea que su Reclamación sea admitida provisionalmente a efectos de votación de conformidad con la Regla de Quiebras 3018(a), encontrará un formulario de la Regla 3018(a) con instrucciones para completar y presentar la moción en https://cases.primeclerk.com/puertorico/.

18. ***Partes que no serán tratadas como Acreedores.*** Cualquier titular de una Reclamación que (i) esté incluido en la Lista de Acreedores a $0.00 y que no sea objeto de una evidencia de Reclamación presentada a tiempo o de una evidencia de Reclamación que se considere presentada a tiempo ante el Tribunal a tenor del Código de Quiebras o de cualquier orden del Tribunal, o que se considere presentada a tiempo según la ley aplicable, o bien (ii) no esté programado y no sea objeto de una evidencia de reclamación presentada a tiempo o una evidencia de reclamación considerada como presentada a tiempo ante el Tribunal a tenor con el Código de Quiebras o cualquier orden del Tribunal, o de otra manera considerada como presentada a tiempo conforme a la ley aplicable, no será tratado como un acreedor con respecto a dicha Reclamación a los efectos de (a) recibir notificaciones sobre el Plan, y (b) votar sobre el Plan.

19. ***Información adicional.*** Cualquier parte interesada que desee obtener información sobre los procedimientos de convocatoria o copias de la Declaración de Divulgación o del Plan, incluyendo sus traducciones al español, debe ponerse en contacto con el Agente de votación, Kroll Restructuring Administration LLC, por teléfono llamando al (844) 822-9231 (llamada gratuita para EE.UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), de 10:00 a.m. a 7:00 p.m. (hora estándar del Atlántico) (disponible en español), o bien por correo electrónico escribiendo a puertoricointo@primeclerk.com. Asimismo, podrá ver dichos documentos accediendo a https://cases.primeclerk.com/puertorico/ o al sitio web del Tribunal, https://www.prd.uscourts.gov/. Tenga en cuenta que se requiere una contraseña y credenciales de inicio de sesión para para acceder a los documentos que figuran en el sitio web del Tribunal a través del sistema de Acceso Público a los Registros Electrónicos del Tribunal ("PACER, por sus siglas en inglés") (https://pacer.uscourts.gov).

20. ***Reglas de Quiebra 2002(c)(3) y 3016(c).*** **De acuerdo con las Reglas de Quiebra 2002(c)(3) y 3016(c), a continuación se exponen las disposiciones de descargo, exculpación e interdicto contenidas en el Plan:**

**Sección 41.2 – Exoneración y descargo de reclamaciones y causas de acción:**

**(a) Salvo que se disponga expresamente en el Plan de la ACT o en la Orden de Confirmación de la ACT, todas las distribuciones y derechos otorgados en virtud del Plan serán, y se considerarán, a cambio de, y en completa satisfacción, liquidación, exoneración y descargo de, todas las Reclamaciones o Causas de acción contra el Deudor y la ACT Reorganizada que surgieron, en todo o en parte, antes de la Fecha de vigencia de la ACT, en relación con los Casos del Título III, el Deudor, la ACT reorganizada o cualquiera de sus respectivos Activos, bienes o intereses de toda índole, incluidos los intereses devengados por dichas Reclamaciones en o a partir de la Fecha de petición de la ACT, e independientemente de que se hayan distribuido o retenido bienes a tenor del Plan a causa de dichas Reclamaciones o Causas de acción; teniendo en cuenta, sin embargo, que, no obstante los derechos de exculpación establecidos en la Sección 41.7 del Plan de la ACT, nada de lo contenido en el Plan de la ACT o la Orden de Confirmación de la ACT tiene la intención de ser, ni deberá ser interpretado, como un otorgamiento de una exención no consensuada a terceros de los Acreedores del AAP de la ACT/ADCC y sus respectivas Personas Vinculadas por parte de los Acreedores del Deudor. En la Fecha de Vigencia de la ACT, el Deudor y ACT reorganizada se considerarán exonerados y eximidos de todas y cada una de las Reclamaciones, Causas de acción y cualquier otra deuda generada, total o parcialmente, antes de la Fecha de vigencia de la ACT, y todas las Reclamaciones del tipo especificado en las secciones 502(g), 502(h) o 502(i) del Código de Quiebras, y en la Sección 407 de la Ley PROMESA, ya sea o no (a) una evidencia de reclamación basada en la cual se presente o se considere presentada dicha Reclamación en virtud de la sección 501 del Código de Quiebras, (b) que se autorice dicha Reclamación conforme a la sección 502 del Código de Quiebras y a la Sección 407 de la Ley PROMESA (o que se resuelva de otro modo), o (c) que el titular de una Reclamación basada en una deuda tal haya votado por aceptar el Plan de la ACT. A efectos de disipar cualquier duda, nada de lo contenido en el Plan de la ACT ni en la Orden de confirmación de la ACT librará, eximirá ni prescribirá ninguna reclamación o causa de acción contra la AEE derivada de, o relacionada con, los bonos emitidos por la AEE, incluyendo, entre otros, los emitidos con los seguros monolínea pertinentes, y la AEE no exime de ninguna reclamación ni causa de acción contra cualquier Entidad no deudora. Las reclamaciones y causas de acción contra la AEE derivadas de, o relacionadas con, los bonos emitidos por la AEE, así como las exenciones contra la AEE y sus activos, se dirigirán al caso del Título III de la AEE, incluyendo, entre otros, cualquier plan de ajuste pertinente.**