UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>　Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3567-LTS |

**DECLARATION OF JAY HERRIMAN IN RESPECT OF CONFIRMATION
OF FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE
<u>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, Jay Herriman, hereby declare and state as follows:

1. I am a Managing Director of Alvarez & Marsal North America, LLC ("A&M"). The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), retained A&M to assist with, *inter alia*, the claims reconciliation process for HTA's case filed pursuant to the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").

2. I submit this declaration (the "Declaration") in respect of confirmation of the *Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (together with all exhibits, and as amended, modified, and supplemented, the "HTA Plan") (Debtor's Exhibit 58) [Case No. 17-BK-3567-LTS, ECF No. [1354-6]. My statements set forth in this Declaration are based on my personal knowledge except where I reference specific documents or communications as the basis of my statements. In those instances where I reference a specific document or communication, I am not offering the documents to prove the truth of the content in those documents, or, I am informed, the document is otherwise admissible because, for instance, it is a self-authenticating public record or can be otherwise authenticated and shown to be admissible. Where my Declaration provides opinion testimony, in addition to the above, the opinions set forth herein are based on (i) my understanding of information shared with me by other members of the A&M team working directly with me or under my supervision and direction; (ii) information provided by the Oversight Board and its advisors, information provided by AAFAF, HTA, and their advisers, or information provided by other interested parties and their respective advisors concerning the restructuring, and/or (iii) my experience in the industry as described below.

2

3. I joined A&M in 2009 and have over twelve years of restructuring experience advising on dozens of chapter 11 proceedings regarding a range of issues, including: pre-bankruptcy preparation and case administration, mortgage lien analyses, schedules and statements preparation, claims reconciliation and objections, complex claims waterfall estimates, solicitation for plans of reorganization, management reporting, emergence processes, plan disbursements, post-confirmation trust activities and preference and fraudulent conveyance calculations. These engagements span multiple industries including energy, aviation, automotive, manufacturing and technology. Personally, I have participated in the claims reconciliation process for over 25 company side engagements. Prior to joining A&M, I worked in the manufacturing industry for 20 years in various capacities including finance, information technology, and purchasing. In my last role, I served as Vice-President of Business Systems and Purchasing at MPI International, Inc. I received my Bachelor's degree in Computer Information Systems from Baker University.

4. In my capacity as a Managing Director at A&M, I am one of the persons responsible for overseeing the claims reconciliation and objection process in HTA's Title III case. HTA's ongoing claims reconciliation process involves the collective effort of a team of A&M employees, as well as Proskauer Rose LLP and O'Neill & Borges LLC, counsel for the Oversight Board. I manage and lead a team that is responsible for, among other things, (i) reviewing, analyzing, and categorizing each of the proofs of claim filed against HTA, (ii) assisting the Oversight Board's legal counsel in identifying claims suitable for objection and preparing objections to claims, (iii) assisting the Oversight Board's legal counsel in identifying claims suitable for resolution utilizing the ACR Procedures and the ADR Procedures (each as defined below), (iv) providing ongoing claim estimates, including estimates of the anticipated total amount of allowed general unsecured claims and various categories of claims, including, without limitation, periodic reports to the

Official Committee of Unsecured Creditors, and (v) tracking and auditing all claims to ensure final resolution of each.

5. In this role, I and my team regularly communicate with the Oversight Board's counsel, as well as in-house counsel at the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the fiscal agent for HTA, outside counsel for HTA, personnel at HTA, and staff at Kroll Restructuring Associates ("Kroll") (formerly known as Prime Clerk, LLC), HTA's claims and noticing agent. I am familiar with all aspects of HTA's claims reconciliation process, including the Court's orders setting deadlines for the filing of proofs of claim,[2] the Court's orders authorizing HTA, to file objections on an omnibus basis,[3] the Court's order authorizing HTA, together with other Title III debtors, to resolve claims utilizing alternative dispute resolution procedures,[4] and the Court's order authorizing HTA to resolve claims utilizing their existing administrative processes.[5] I have participated in the preparation and filing of all omnibus objections filed by HTA, including, without limitation, submitting declarations in support thereof,

---

[2] *See Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders").

[3] *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"); *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

[4] *See Order* (*A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order") and the accompanying *Alternative Dispute Resolution Procedures* [ECF No. 12576-1] (the "ADR Procedures").

[5] *Order (A) Authorizing Administrative Reconciliation Of Claims, (B) Approving Additional Form Of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order") and the accompanying *Administrative Claims Reconciliation Procedures* [ECF No. 12274-1] (the "ACR Procedures").

the implementation of the ADR Procedures and the ACR Procedures (each as defined below), and the development of estimates of anticipated allowed general unsecured claims against HTA.

### The Bar Date Orders and the Filing of Proofs of Claim

6. Pursuant to the Bar Date Orders, the deadline for filing proofs of claim against HTA was June 29, 2018 at 4:00 pm (Atlantic Time) (the "Bar Date").

7. In total, approximately 2,285 proofs of claim have been asserted against, or reclassified to be asserted against, HTA. Such proofs of claim total approximately $83.1 billion in asserted claims against HTA, in addition to unliquidated amounts asserted.

8. Based on our review and analysis of the proofs of claim filed against HTA, many of the proofs of claim fell into categories that were exempted from filing pursuant to the Bar Date Order and, as a result of the Court's orders, were subsequently transferred into the ACR process, or warranted objections for the following reasons: (1) subsequent amendment, (2) not setting forth a claim for which HTA was liable, (3) duplicative of other filed proofs of claim, (4) asserting liabilities that had already been fully satisfied, or (5) failing to provide information necessary for HTA to determine whether the claim is valid. In addition, numerous of these claims were filed after the applicable Bar Date.

### Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures

9. The Initial Omnibus Objection Procedures and the Amended Omnibus Objection Procedures permitted HTA to streamline the process for creating exhibits to omnibus objections, expanded the number of proofs of claim that may be included on a single omnibus objection from 100 to 1000, and authorized HTA to file substantive omnibus objections to proofs of claim. For example, HTA is authorized to file omnibus objections to proofs of claim that are inconsistent with

HTA's books and records, that seek recovery of amounts for which HTA is not liable, that are incorrectly or improperly classified, or that are filed against entities that are not Title III debtors.

10. Since the inception of HTA's Title III Case, 1,151 claims asserted against HTA have been resolved via omnibus objection. This resulted in a reduction in the claims asserted against HTA to $80.1 billion.

### ADR Procedures

11. The ADR Procedures provide a multistep method for the resolution of general unsecured claims. The first step in the ADR Procedures is an Offer-Exchange Procedure (as defined in the ADR Order). Therein, HTA and the claimant engage in an exchange of settlement offers, together with supporting documentation necessary to substantiate their respective settlement offers. In advance of submitting an offer, HTA may make an Information Request (as defined in the ADR Order) for additional information from the creditor.

12. Because some claimants did not provide enough information to enable HTA to prepare settlement offers, HTA has sent Information Requests to claimants asserting liabilities against HTA. Unfortunately, certain claimants have not been responsive to either Information Requests or settlement offers submitted to the claimants. HTA has begun the process of removing claims filed by unresponsive claimants from the ADR process and filing objections to their claims.

13. If the claimant responds, but the parties fail to agree on the validity and amount of the claim during the Offer-Exchange Procedure, the proof of claim moves on to the Evaluative Mediation Procedures (as defined in the ADR Order). There, the proof of claim is evaluated by a mediator appointed by the Title III Court. Based upon the information exchanged by the parties during the Offer-Exchange Procedure, together with mediation statements submitted by the parties, if any, the mediator provides a neutral evaluation (the "Evaluation") of the monetary value of the

claim. After receipt of the Evaluation, HTA and the claimant must determine within twenty-one (21) days whether to accept or reject the Evaluation. If one or both parties rejects the Evaluation, the parties have an additional fourteen (14) days to negotiate a consensual resolution of the proof of claim.

14. If the claim is not resolved during the Evaluative Mediation Procedures, the claim may be resolved using one of three processes: (1) if both HTA and the claimant consent, the proof of claim may be resolved through binding arbitration, (2) if both HTA and the claimant consent, the proof of claim may be resolved via litigation in the Commonwealth courts, or (3) if both HTA and the claimant have not consented to either binding arbitration or resolution of the proof of claim via litigation in the Commonwealth court, the proof of claim will be resolved before the Title III court.

### ACR Procedures

15. The ACR Procedures authorize HTA to resolve certain ordinary course Pension/Retiree Claims, Tax Refund Claims, Public Employee Claims, and Grievance Claims (each as defined in the ACR Order) utilizing HTA's existing administrative reconciliation processes. It is my understanding that the ACR Procedures were developed, in part, to reconcile the large number of ordinary-course claims that, pursuant to the terms of the Bar Date Orders, did not need to be filed. Claims submitted to the ACR Procedures that are determined to be valid will be paid in full in the ordinary course, and will therefore be treated outside the HTA Plan. For that reason, the ACR Order provides that any proof of claim transferred into the ACR Procedures shall be designated as "Subject to ACR" on the Title III claims registry maintained by Kroll.

16. The HTA Plan provides HTA shall transfer ACR-eligible claims pursuant to the terms of the ACR Order, and, upon transfer, all such claims shall be reconciled and paid in full in

the ordinary course of business, as provided by the ACR Order. HTA Plan § 32.7. I understand that the Commonwealth has reserved $229 million for payment of claims resolved using the ACR Procedures, and, accordingly, HTA does not need to provide any funds with respect to paying such claims. *See Declaration of Gaurav Malhotra of Ernst & Young LLP in Respect of Confirmation of Seventh Amended Title III Joint Plan of Adjustment for the Commonwealth of Puerto Rico, et al.* [ECF No. 18738] ¶ 27.

17. Under the ACR Order, HTA has transferred proofs of claim into the ACR Procedures for resolution or for continued evaluation pursuant to its administrative processes. Where necessary, HTA has requested from the claimants information necessary to complete their administrative files and is awaiting the claimants' responses. Unfortunately, certain claimants have not been responsive to HTA's requests for additional information. HTA sent second mailings to claimants who failed to respond to HTA's initial letter, warning them that ongoing failure to respond may force HTA to object to their claims. Claimants who did not respond to either the first or second mailing were sent a third and final mailing, which warned claimants that failure to respond would force HTA to object to their claims. HTA has begun the process of removing claims filed by unresponsive claimants from the ACR process and filing objections to their claims.

### Anticipated Allowed General Unsecured Claims and Eminent Domain/Inverse Condemnation Claims against HTA

18. Based upon the Creditor Lists, as defined below, the omnibus objections filed to date, the resolution of proofs of claim using the ADR Procedures and the ACR Procedures, and HTA's ongoing review and analysis of the proofs of claim filed, I estimate the anticipated allowed amount of general unsecured claims against HTA will not exceed $254,886,894, the anticipated allowed amount of Eminent Domain/Inverse Condemnation (as defined in the HTA Plan) will not

exceed $41,875,695, and the anticipated amount of Federal Claims (as defined in the HTA Plan) will not exceed $20,788,696.

19. To develop that estimate, I started by identifying the total population of claims filed against HTA: 2,289 proofs of claim, asserting $83.1 billion. Second, I reviewed the *Notice of Filing of Creditor List for the Puerto Rico Highways and Transportation Authority* [ECF No. 2163] (the "HTA Creditor List"). Pursuant to the Bar Date Orders, creditors listed in the HTA Creditor List were not required to file a proof of claim *unless* the amount owed is listed as "disputed," "contingent," or "unliquidated." I reviewed the HTA Creditor List, and determined that, with the exception of certain bond claims, each liability was listed as "disputed," "contingent," or "unliquidated." I therefore determined that, since every creditor whose claims were listed on the HTA Creditor List was required to file a proof of claim, I did not need to include the amounts on those creditor lists in my estimates. Next, I made a series of adjustments.

20. I removed from my estimates any proofs of claim that had been withdrawn by the claimant, marked as docketed in error by Kroll, or expunged by entry of an order granting an omnibus objection. I also removed from my estimates any proofs of claim that were included on expungement objections, but for which the Court has not yet held a hearing. In particular, due to the ongoing COVID-19 pandemic, the Court has held telephonic omnibus hearings since April 2020. It is my understanding that *pro se* individuals are unable to participate in such telephonic hearings because telephonic lines are only available to attorneys who have entered an appearance in the Title III cases. In order to have such *pro se* responses heard, the Court must schedule special *pro se* hearings at which *pro se* individuals may appear and speak from the courthouse or another centralized location using a telephonic line. With respect to numerous omnibus objections, *pro se* claimants filed responses, but the Court has not yet had an opportunity to hold a hearing as to those

responses. I subtracted from my estimates of the total allowable claims against HTA any claims that were included in expungement objections, but for which the Court has not yet had an opportunity to schedule a *pro se* hearing to consider pending *pro se* responses. I also subtracted from my estimates any proofs of claim identified for inclusion on an upcoming omnibus objection.

21. In addition, certain proofs of claim were filed against one of the Debtors, but, upon review thereof, were properly asserted against another Debtor. To the extent any proofs of claim were incorrectly asserted against HTA, I transferred the asserted liability to the correct debtor where appropriate and subtracted the amount asserted in such claims for my estimate of HTA claims. In addition, certain proofs of claim should have been asserted against HTA, but were incorrectly asserted against one of the other debtors. I transferred the asserted liability to HTA, and the amounts asserted in those proofs of claim were included in my estimates.

22. I next removed all amounts associated with proofs of claim transferred to ACR, or flagged for future transfer, as they are not treated pursuant to the HTA Plan.

23. Based upon my review of the HTA Plan, I understand that certain unsecured claims are classified separately from general unsecured claims for HTA (Class 16). These include the following: (1) HTA/GDB claims, which are classified in Class 17; and (2) claims filed by the federal government, which are classified in Class 20. Because none of these claims will be classified as a general unsecured claim, I removed any claim fitting within these classes from my estimates. I also removed from my estimates any claims filed by the Puerto Rico government or by Puerto Rico municipalities, because I had been told to assume that those claims will also be treated outside the HTA Plan. I also removed from my estimates the master pension claims and claims related to HTA bonds.

10

24. I also reviewed proofs of claim asserting entitlement to administrative or priority status pursuant to 11 U.S.C. § 503(b)(9), or another type of priority, to determine whether, based on the information provided by the claimant, they were entitled to the asserted priority. For the proofs of claim where I determined the claimant did not provide information necessary to support their assertion of priority, I included those claims in my general unsecured claims estimates. Other proofs of claim that assert administrative priority, if such claims are determined to be valid and entitled to administrative priority status, will be paid in full under the HTA Plan. I removed from my estimates of unsecured claims, proofs of claim that clearly asserted claims entitled to administrative priority, such as proofs of claim asserting only post-petition amounts. Further, in order to ensure that my estimate reflected the possibility that proofs of claim asserting secured status may ultimately be determined to be unsecured, I included claims asserting secured status into my estimates of unsecured claims.

25. I identified one proof of claim that was filled out in a manner that caused Kroll to incorrectly docket it on the claims register. Box 8 of the proof of claim form requests claimants provide the total amount of the asserted claim. Other portions of the claim form allow claimants to indicate whether they believe all or a portion of their claims are entitled to secured status or priority.

26. For example, Box 7 of the proof of claim form allows claimants to indicate whether they supply goods and/or services to the government, and if so, whether any amounts were due to claimant for the period between HTA's petition date and June 30, 2017; Box 10 allows claimants to indicate whether they believe all or a part of their claim is secured, and if so, the amount of the claim that is secured and the amount that is unsecured; and Box 13 allows claimants to indicate whether all or part of the claim is entitled to administrative priority pursuant to 11 U.S.C.

11

§ 503(b)(9), and if so, the amount of the claim entitled to administrative priority treatment. In some instances, the claimant entered the total amount they believe is owed in Box 8, but also entered the total amount owed in Boxes 7, 10, and/or 13. When Kroll logged those claims on the claims register, it interpreted each amount entered in Boxes 7, 8, 10, and/or 13 as a separate assertion of liability. As a result, the claims register overstates the actual liabilities asserted in the proof of claim, as demonstrated by the total amount recorded by the applicable claimant in Box 8. For purposes of my estimate, I estimated this claim at the amount identified in Box 8.

27. In addition, I reviewed accounts payable proofs of claim—claims asserted by trade creditors who allegedly provided goods or services to HTA—as well as proofs of claim for which there are pending judgments or settlements to determine whether any of those claims had been paid, in whole or in part. Based on information provided by AAFAF or by HTA, I understand that a number of claims have been partially or fully paid. Accordingly, I reduced my estimates by the amount that each such claim had been paid.

28. I also removed from my estimates the proofs of claim filed by Autopistas de PR, LLC (Claim No. 52295) and Autopistas Metropolitanas de Puerto Rico, LLC (Claim No. 35566). Based upon my review of these claims, it is my understanding that these proofs of claim are protective in nature and do not constitute current outstanding liabilities of HTA.

29. I then reviewed litigation proofs of claim to determine whether any claims were overstated, other than Eminent Domain and Inverse Condemnation Claims. I identified numerous proofs of claim for which there are pending judgments or settlements, and requested information to determine whether any of those claims had been paid, in whole or in part. Based on information provided by AAFAF or by HTA, I understand that a number of those judgments or settlements have been partially or fully paid. Accordingly, I reduced my estimates by the amount that each

12

such claim had been paid. In addition, counsel for AAFAF and HTA provided data regarding the likely outcomes of the litigations underlying certain litigation claims. Based on that information, together with additional evaluations performed by the Oversight Board, I was told to assume that certain litigation claims should be estimated at lower amounts.

30. In addition, I noted that numerous litigation claims were filed as fully unliquidated. To account for the potential liabilities associated with these claims, I incorporated into my estimate a reserve in the amount of $10 million. I arrived at this reserve amount based on information provided by HTA regarding the nature and basis of the claims, as well as my experience in prior claims reconciliation matters.

31. I also understand that the HTA Plan includes a convenience class for general unsecured claims that are equal to or less than $20,000, which are classified in Class 19. Accordingly, I removed from my estimate any general unsecured claims that asserted amounts of $20,000 or less.

32. With respect to Eminent Domain and Inverse Condemnation claims, which are separately classified in Class 15, I was asked to assume that the following types of claims may relate to the Takings Clause: (1) claims arising from or relating to an Eminent Domain Proceeding, which is a condemnation action or proceeding commenced prepetition by HTA in the Puerto Rico Court of First Instance (*see* HTA Plan § 1.213); (2) claims asserting that the claimant's property has been inversely condemned, or taken by HTA without the initiation of a condemnation action or payment of just compensation; and (3) claims asserting regulatory prepetition takings, in which the claimant contends the government has imposed restrictions on the claimant's use of its property that so limit the property's use that the regulation amounts to a compensable taking. My team and I reviewed claims filed against HTA to determine whether any claim asserted liabilities arising out

13

of an Eminent Domain proceeding. I identified 126 remaining claims asserting such proceedings, in a total filed amount of $53,451,561. My team and I also reviewed claims filed against HTA to determine whether any claims asserted liabilities arising out of alleged inverse condemnation. I identified 9 claims asserting inverse condemnation, in a total filed amount of $23,501,597.

33. It is my understanding, based upon information provided to me by HTA and AAFAF, that certain of these Eminent Domain/Inverse Condemnation claims are subject to pending judgments or settlements, and I requested information to determine whether any of those claims had been paid, in whole or in part. Based on information provided by AAFAF or by HTA, I understand that a number of those judgments or settlements have been partially or fully paid. Accordingly, I reduced my estimate of the total allowed amount of Eminent Domain/Inverse Condemnation claims by the amount that each such claim had been paid. Absent settlement or payment, I included the full amount asserted by the claimants in my estimates. Based on the foregoing, the estimated maximum amount of Eminent Domain/Inverse Condemnation is $41,875,695.

34. I further determined, within the estimate of the total amount of Eminent Domain/Inverse Condemnation claims, which claims may require payment at the HTA Effective Date and which claims would not have their validity determined until after that date. Of that amount, approximately $35,061,216.01 represents claims that are the subject of ongoing litigation. Based on my review of the claims, experience in claims reconciliation matters, and discussions with HTA and Oversight Board counsel, claims involving ongoing takings litigation typically take several years to conclude to a final order and exhaust all appeals. The underlying litigation may also be settled at amounts lower than claimed in the proofs of claim. For example, approximately $20 million is asserted by numerous claims citing an ongoing case, KEF-1997-0196, as the basis

for HTA's liability. Based on my review of the claims and discussions with counsel, I understand that the case has been ongoing for nearly 25 years, yet has no judgment and remains in discovery, and could take several more years to conclude. Further, HTA has already made payments of $900,000, which it believes represents fair market value for the property at issue, and, in the event of a settlement, any further payments most likely would be substantially below the $20 million collectively claimed. My estimate of $41,875,695 includes $20 million for these claims.

35. Additionally, of the total amount of Eminent Domain/Inverse Condemnation claims, only approximately $3.5 million have a final or partial judgment for which payments may be due.

36. With respect to Federal Claims, which are separately classified in Class 20, such claims total approximately $21 million and, under the HTA Plan, each such claim will be paid in forty installments, beginning several years after the HTA Effective Date.

37. Because the review and reconciliation of claims asserted against HTA remains ongoing, my estimates remain subject to further review and revision.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 7, 2022
Marco Island, FL

_____
Jay Herriman
Managing Director,
Alvarez & Marsal North America, LLC