# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>**Re: ECF Nos. 1285; 1287; 1293; 1301; 1318** |

## DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO CONFIRMATION OF THE FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

| **PROSKAUER ROSE LLP** | **O'NEILL & BORGES LLC** |
|---|---|
| Eleven Times Square | 250 Muñoz Rivera Ave., Suite 800 |
| New York, New York 10036 | San Juan, PR 00918-1813 |
| Telephone: (212) 969-3000 | Telephone:  (787) 764-8181 |
| Facsimile: (212) 969-2900 | Facsimile:  (787) 753-8944 |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

*Attorneys for the Financial Oversight and Management Board
as Representative for the Puerto Rico Highways and Transportation Authority*

Dated: August 7, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

   A.  REPLY TO AAFAF OBJECTION.................................................................... 2

       1.  This Court Has Personal and Subject Matter Jurisdiction to Confirm Provisions
           Impacting PRITA and DTOP in Section 2.4 of the HTA Plan..................................... 2
       2.  Section 2.4 of the HTA Plan is Necessary for its Implementation. ........................... 13

   B.  OMNIBUS REPLY TO OBJECTIONS .......................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Autonomous Mun. of San Juan v. Fin. Oversight & Mgmt. Bd. for P.R.*,
    419 F. Supp. 3d 293 (D.P.R. 2019)......................................................................6, 7

*Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*,
    270 F.3d 280 (6th Cir. 2001) ...............................................................................14

*Gupta v. Quincy Med. Ctr.*,
    858 F.3d 657 (1st Cir. 2017)...................................................................................3

*In re Fin. Oversight & Mgmt. Bd.*,
    636 B.R. 1 (D.P.R. 2022),
    *aff'd*, 2022 U.S. App. Lexis 19736 (1st Cir. July 18, 2022).................................14

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    583 B.R. 626 (D.P.R. 2017).................................................................................11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    916 F.3d 98 (1st Cir. 2019)..............................................................................5, 10

*In re Suffolk Reg'l Off-Track Betting Corp.*,
    542 B.R. 72 (Bankr. E.D.N.Y. 2015)...................................................................14

*In re U.S. Brass Corp.*,
    301 F.3d 296 (5th Cir. 2002) ...............................................................................14

*Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*,
    496 B.R. 644 (B.A.P. 1st Cir. 2013) ...............................................................13, 14

*Rivera Schatz v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight &*
    *Mgmt. Bd. for P.R.*),
    327 F. Supp. 3d 364 (D.P.R. Aug. 7, 2018),
    *aff'd, Méndez-Núñez et al. v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin.*
    *Oversight & Mgmt. Bd. for P.R.*), 916 F.3d 98 (1st Cir. 2019) .................................5

*Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight &*
    *Mgmt. Bd. for P.R.*)
    330 F. Supp. 3d 685 (D.P.R. 2018),
    *aff'd*, 945 F.3d 3 (1st Cir. 2019), *cert. denied*, 141 S. Ct. (2020).............................5

*Vazquez-Garced v. Fin. Oversight & Mgmt. Bd. for P. R. (In re Fin. Oversight &
   Mgmt. Bd. for P.R.),*
   945 F.3d 3 (1st Cir. 2019) ........................................................................7, 11

*Vill. of Rosemont v. Jaffe,*
   482 F.3d 926 (7th Cir. 2007) ...........................................................................14

## STATUTES

11 U.S.C. § 1123(a) .......................................................................................8, 9, 13

11 U.S.C. § 1142 ..........................................................................................8, 9, 14

48 U.S.C. §§ 2101–2241 .....................................................................................1

PROMESA § 5 ....................................................................................................6

PROMESA § 101 ...........................................................................................7, 12

PROMESA § 106 .............................................................................................3, 4

PROMESA § 201 ....................................................................4, 6, 7, 8, 10, 11

PROMESA § 202 ...........................................................................................6, 10

PROMESA § 303 .........................................................................8, 9, 10, 11, 12

PROMESA § 305 ...........................................................................................8, 12

PROMESA § 306 .......................................................................................2, 3, 4

PROMESA § 314 ....................................................................4, 6, 7, 12, 13, 14

PROMESA § 405 ...........................................................................................3, 14

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as sole Title III representative of the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>" or the "<u>Debtor</u>"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[2] respectfully submits this omnibus reply ("<u>Reply</u>") to objections to the *Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1240][3] (subsequently amended by the *Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1350], and as it may be further amended, modified, or supplemented, the "<u>HTA Plan</u>").  This Reply is being submitted in conjunction with the *Memorandum of Law in Support of Confirmation of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (the "<u>Memorandum</u>") [ECF No. 1260].[4]

## PRELIMINARY STATEMENT

1.     The HTA Plan represents another milestone in Puerto Rico's restructuring.  It incorporates settlements with every major constituency in HTA's Title III case, and puts before the Court an almost completely consensual plan of adjustment.  In all, holders of more than 99% in dollar amount of claims voting on the HTA Plan voted to accept.

2.     Notwithstanding this broad support, five parties interposed objections to the HTA Plan.  Those objections are identified on **Exhibit A** hereto (the "<u>Objections</u>").  As described below, none of the Objections have merit, including the limited objection of AAFAF to section 2.4 of the HTA Plan, which, among other things, provides for an operational restructuring of

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.
[3] All ECF No. references are to Case No. 17 BK-3567-LTS, unless otherwise indicated.
[4] Capitalized terms used but not otherwise defined herein shall have those meanings ascribed to them in the HTA Plan or Memorandum, as appropriate.

HTA's assets to separate HTA's Highway Assets (i.e., the highways and roads managed, operated, and/or maintained by HTA) from its Transit Assets (i.e., Tren Urbano). The Oversight Board continues to engage constructively with AAFAF and hopes to resolve AAFAF's limited objection prior to the Confirmation Hearing.

3.      Additionally, certain parties filed reservations of rights or other statements with respect to the HTA Plan and/or the proposed form of confirmation order [ECF No. 1278] (as it will be amended by the *Findings of Fact and Conclusions of Law in Connection with Fourth Amended HTA Plan*, filed concurrently herewith, and as may be further amended, the "Confirmation Order"), which are set forth on **Exhibit B** hereto.

4.      The Debtor submits all of the Objections should be overruled, the HTA Plan should be confirmed, and the Confirmation Order entered. The response to the AAFAF Objection is set forth in the body of this Reply. The responses to the remaining Objections are set forth on the omnibus reply chart organized by objector, attached hereto as **Exhibit C**.

A. **REPLY TO AAFAF OBJECTION**

1. **This Court Has Personal and Subject Matter Jurisdiction to Confirm Provisions Impacting PRITA and DTOP in Section 2.4 of the HTA Plan.**

5.      AAFAF argues this Court lacks "jurisdiction" to compel the Commonwealth, the Puerto Rico Integrated Transit Authority ("PRITA"), and the Puerto Rico Department of Transportation and Public Works ("DTOP") to perform actions required by Section 2.4 of the HTA Plan. AAFAF Obj. ¶ 10. AAFAF is wrong both with respect to the Court's personal and subject matter jurisdiction.

6.      *Personal Jurisdiction*. The Court has personal jurisdiction over "any person or entity" pursuant to PROMESA Section 306(c), and, accordingly, has personal jurisdiction over

2

PRITA and DTOP, whether or not they have filed a Title III case.[5]   At its core, federal courts

have personal jurisdiction over any person or entity having minimum contacts with the United

States and its territories.  Nothing in PROMESA diminishes that personal jurisdiction.  Indeed, in

the context of PROMESA, the full scope of a federal court's personal jurisdiction is consistent

with Congress' finding in PROMESA Section 405(m)(4) that "[a] *comprehensive* approach to

fiscal, management, and structural problems and adjustments that *exempts no part of the

Government of Puerto Rico* is necessary, involving independent oversight and a Federal

statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly

process."  (emphasis added).  In so finding, Congress made clear the Oversight Board has the

authority to impose and enforce requirements on all "part[s] of the Government of Puerto

Rico"—debtors and non-debtors alike.

7.     _Subject Matter Jurisdiction_.  PROMESA Sections 106(a) and 306(a)(2) provide

this Court subject matter jurisdiction to compel PRITA and DTOP to perform the actions

required in Section 2.4 of the HTA Plan.  These sections provide the Court subject matter

jurisdiction over (i) "any action otherwise arising out of [PROMESA]," and (ii) all matters

arising under Title III, arising in cases under Title III, and related to cases under Title III.

---

[5] Additionally, the Court has continued personal and subject matter jurisdiction over the Commonwealth, and its
agency DTOP, because the Commonwealth's Title III case remains pending, notwithstanding that the
Commonwealth Plan has been consummated.  Section 91.1 of the Commonwealth Plan provides that this Court
retains jurisdiction "over any matter arising under PROMESA," or "related to" the Commonwealth's Title III case.
*See also* Commonwealth Plan § 91.1(d) (court retained jurisdiction "to adjudicate, decide, or resolve any . . . matters
. . . involving the Debtors or Reorganized Debtors" including those brought after the effective date).   The
Commonwealth Plan specifically contemplates HTA's impending plan of adjustment and its integral connection to
the Commonwealth's restructuring.  *See, e.g.*, Commonwealth Plan § 1.306 (defining HTA Plan and noting it must
be substantially as agreed in the HTA/CCDA PSA).
AAFAF itself concedes the Court retains jurisdiction over "related to" matters, including anything that may
"potentially have some effect on the bankruptcy estate, such as altering debtor's [*i.e.*, the Commonwealth's] rights,
liabilities, options or freedom of action . . . ."  AAFAF Obj. ¶ 11 (quoting *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657,
663 (1st Cir. 2017)).  The test is clearly satisfied here—the responsibility to maintain non-toll roads has a direct and
clear impact on the Commonwealth's rights and liabilities.  Through AAFAF's own logic, therefore, this Court
retains jurisdiction over the transactions contemplated in Section 2.4 of the HTA Plan.

PROMESA §§ 106(a), 306(a)(2).   Section 2.4 of the HTA Plan undoubtedly arises out of PROMESA Titles I, II, and III.   Additionally, this Court has exclusive jurisdiction over each Title III debtor's property, including HTA's property, pursuant to PROMESA Section 306(b).  Section 306(b), by its terms, applies to all pending Title III cases, and none of them have been closed.

8.   Many sections of PROMESA independently demonstrate the Court's powers to confirm section 2.4 of the HTA Plan.   First, PROMESA Section 201(b)(1)(M) provides Fiscal Plans shall ensure assets of an instrumentality are not transferred or "otherwise used for the benefit of a covered territory or another covered territorial instrumentality . . . unless permitted by . . . an approved plan of adjustment under title III . . ."   Here, the Oversight Board has certified Fiscal Plans for both HTA and the Commonwealth.   *See Fiscal Plan for the Puerto Rico Highways & Transportation Authority* at 12-23 (certified on Feb. 22, 2022) (Debtor's Exhibit 5) [ECF No. 1299-6] (the "2022 HTA Fiscal Plan"); *2022 Fiscal Plan for Puerto Rico* at 159-65 (certified on Jan. 27, 2022) (Debtor's Exhibit 9) [ECF No. 1299-10] (the "2022 CW Fiscal Plan");[6] PROMESA § 314(b)(7).   The 2022 HTA Fiscal Plan provides for the reorganization of the Island's transportation assets by mode-specific entities and integrates all HTA transit assets under PRITA "to empower PRITA to fulfill its original mission as a unified transit authority," (*id*. at 12), and have HTA adopt "additional maintenance responsibilities for non-toll roads from

---

[6] With respect to the separation of toll and non-toll assets, the 2022 HTA Fiscal Plan (Debtor's Exhibit 9) [ECF No. 1299-10], at 13, notes:

> The 2021 HTA Fiscal Plan presented an alternative asset separation, in which the future state would consist of three separated entities: toll assets under HTA, non-toll roads under DTOP and transit under PRITA. Based on a series of collaborative discussions with HTA, PRITA, and the Fiscal Agency, and Financial Advisory Authority ("AAFAF"), the 2022 HTA Fiscal Plan instead requires the establishment of an internal separation between toll and non-toll operations of HTA. This approach will still realize the benefits of asset

DTOP." *Id*. at 14.  The 2022 CW Fiscal Plan similarly mandates PRITA "fulfill its original intention, and act as a unitary transit authority by managing all transit on the Island."  2022 CW Fiscal Plan at 160 (Debtor's Exhibit 9) [ECF No. 1299-10].  Section 2.4 of the HTA Plan provides for the transfer and use of HTA's assets as mandated in the 2022 HTA Fiscal Plan and 2022 CW Fiscal Plan.  Stripping Section 2.4 from the HTA Plan could hinder the implementation of the HTA Plan by creating uncertainty as to whether the structural changes and adjustments in Section 2.4 will be made.[7]  AAFAF's argument that the Court lacks jurisdiction to do so has it backwards.  This Court has exclusive jurisdiction to administer HTA's property and to enforce PROMESA.

9.     Second, as this Court has found and the First Circuit has confirmed, the Oversight Board effectively controls the finances of the Commonwealth and its instrumentalities through the Fiscal Plan and budget process.  *See Rivera Schatz v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight & Mgmt. Bd. for P.R.*), 327 F. Supp. 3d 364, 372 (D.P.R. Aug. 7, 2018), *aff'd*, *Méndez-Núñez et al. v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight & Mgmt. Bd. for P.R.*), 916 F.3d 98, 115–16 (1st Cir. 2019); *Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight & Mgmt. Bd. for P.R.*) 330 F. Supp. 3d 685, 700-01 (D.P.R. 2018), *aff'd*, 945 F.3d 3 (1st Cir. 2019), *cert. denied*, 141 S. Ct. (2020).  The Fiscal Year 2023 budget for the Commonwealth, certified on June 30, 2022, includes more than $157 million in funds for DTOP and PRITA.  *FY23 Certified Budget for the Commonwealth of Puerto Rico* at 11 (certified on June 30, 2022) (Debtor's Exhibit 13) [ECF No. 1299-15] (the "FY2023 CW

---

separation while minimizing the operational and financial risks entailed by the transfer of non-toll roads to DTOP.

[7] Indeed, AAFAF admits that it is already undertaking to implement the transfer of the Transit Assets—albeit "voluntarily."  AAFAF Obj. ¶ 9.  Given the circumstances, AAFAF's true motivation for objecting to actions that are not only in the Fiscal Plans, but also that AAFAF is already implementing, can only be to limit this Court's power.

Budget"). These entities are part of—and financially maintained by—the government of the Commonwealth.

10.     Further, the Oversight Board has direct control over the finances of PRITA and DTOP. Section 5(11) of PROMESA defines the Government of Puerto Rico as "the Commonwealth of Puerto Rico, including *all its territorial instrumentalities*." PROMESA § 5(11) (emphasis added). Section 5(19) further explains a territorial instrumentality is "any political subdivision, public agency, instrumentality—including any instrumentality that is also a bank—or public corporation of a territory, and this term should be broadly construed to effectuate the purposes of [PROMESA]." "When read together, these provisions of PROMESA mandate a comprehensive and orderly restructuring process with independent oversight from which no part of the broadly-defined 'Government of Puerto Rico' is exempt." *Autonomous Mun. of San Juan v. Fin. Oversight & Mgmt. Bd. for P.R.*, 419 F. Supp. 3d 293, 300–01 (D.P.R. 2019). There can be no question that DTOP and PRITA are territorial instrumentalities. Further, PROMESA Section 5(7) authorizes the Oversight Board to "designate[]" pursuant to Section 101 "a territorial instrumentality . . . to be subject to the requirements of [PROMESA]" including Oversight Board authority to impose restrictions and requirements through Fiscal Plans, budgets, and plans of adjustment. *See* PROMESA §§ 201, 202, 314. The 2022 CW Fiscal Plan already lists DTOP and PRITA on its Exhibit 160 as entities covered by the Fiscal Plan. 2022 CW Fiscal Plan at 344 (Debtor's Exhibit 9) [ECF No. 1299-10]. The Oversight Board rendered PRITA a covered entity at its September 30, 2016 meeting.[8]    Additionally, its listing of the Commonwealth as a covered entity provides it includes all its "component units" and all "departments, offices, programs etc.," which includes DTOP because it is a department as its

name shows.   Indeed, the Oversight Board has authority to declare any territorial instrumentality—PRITA and DTOP included—a "covered territorial instrumentality" when tied to the purpose of PROMESA as dictated by Congress.  *See* PROMESA § 101(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets."); *see also Autonomous Mun. of San Juan.*, 419 F. Supp. 3d at 303 (upholding the Oversight Board's determination of San Juan as a covered territorial instrumentality).

11.   The FY2023 CW Budget incorporates the Transportation Sector Reform requirements in the 2022 CW Fiscal Plan and 2022 HTA Fiscal Plan discussed above.  For example, the Commonwealth certified budget funds DTOP with capital expenditures for "non-toll road maintenance to be assigned to [HTA] upon the transfer of the non-toll road operations pursuant to the Transportation Sector Reform." *See* FY2023 CW Budget at 68 (Debtor's Exhibit 13) [ECF No. 1299-15].  As such, the Commonwealth is required to undertake the structural changes and financial obligations set forth in Section 2.4 of the HTA Plan and the HTA Plan reflects those facts, as required by PROMESA Section 314(b)(7).  Certified Fiscal Plans are binding on the executive branch of Puerto Rico's government and must be enforced, especially in the context of confirmation.  As provided in PROMESA Section 201(e)(2), the Governor is deemed to approve certified Fiscal Plans the Oversight Board drafts, and obviously has already consented to certified Fiscal Plans the Governor drafted.

12.   Third, pursuant to the First Circuit's decision in *Vazquez-Garced v. Financial Oversight & Management Board for Puerto Rico (In re Financial Oversight & Management Board for Puerto Rico)*, 945 F.3d 3, 6–8 (1st Cir. 2019), the Oversight Board can adopt and

---

[8]   Financial Oversight and Management Board for Puerto Rico, Covered Entities *available at* https://drive.google.com/file/d/1D37UiofV0T5s1Q4J54vs3xX_ArGF9532/view?usp=drivesdk.  (Debtor's   Exhibit

impose rejected recommendations under Title II if it otherwise has the power to adopt the recommended action on its own.[9]  The 2022 HTA Fiscal Plan and 2022 CW Fiscal Plan note:

> For the avoidance of doubt, except as otherwise expressly provided, the Oversight Board does not consider and has not considered anything in the 2022 Fiscal Plan as a "recommendation" pursuant to Section 205(a). Nevertheless, to the extent that anything in the 2022 Fiscal Plan is ever deemed by the Governor or Legislature or determined by a court having subject matter jurisdiction to be a "recommendation" pursuant to Section 205(a), the Oversight Board hereby adopts it in the 2022 Fiscal Plan pursuant to PROMESA Section 201(b).

2022 HTA Fiscal Plan at 1 (Debtor's Exhibit 5) [ECF No. 1299-6]; 2022 CW Fiscal Plan at 2 (Debtor's Exhibit 9) [ECF No. 1299-10].

13.    More specifically, the Oversight Board has the power to adopt appropriate recommendations on its own—transferring assets and providing for operational changes—pursuant to PROMESA Sections 201(b)(1)(F, G, K, & M),[10] 303, and 305, and Bankruptcy Code sections 1123(a)(5)(B & D),[11] and 1123(b)(4 & 6).  In particular, Bankruptcy Code section 1123(a)(5)(B) allows for the sale or transfer of HTA property to non-debtor third parties "[n]otwithstanding any otherwise applicable non-bankruptcy law."  11 U.S.C. § 1123(a). Bankruptcy Code section 1142(b) relatedly provides "[t]he court may direct the debtor and *any other necessary party* to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to

---

61) [ECF No. 1354-61].

[9] Pursuant to PROMESA Section 201(b)(1)(K), the Fiscal Plan may adopt appropriate recommendations submitted by the Oversight Board under Section 205(a) of PROMESA.

[10] Providing for the Fiscal Plan to include measures to (i) improve fiscal governance, accountability, and internal controls, (ii) enable the achievement of fiscal targets, (iii) adopt appropriate recommendations submitted by the Oversight Board under Section 205(a), and (iv) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality unless permitted by an approved plan of adjustment under Title III.

[11] Providing for a plan of adjustment to provide adequate means for the plan's implementation, such as the transfer of all or any part of the property of the debtor, or the sale or all or any property of the debtor.

perform any other act . . . that is necessary for the consummation of the plan."  11 U.S.C. § 1142(b) (emphasis added).

14.     Section 2.4 of the HTA Plan, in major part, simply provides for the transfer of HTA's assets to a non-debtor entity—PRITA—pursuant to section 1123(a)(5)(B) and (D).  The Court may compel PRITA to execute any necessary instruments related to the transfer pursuant to section 1142(b).  Moreover, the Commonwealth's Fiscal Plan, which was certified in connection with its confirmation proceedings, requires the transfer of HTA assets to PRITA.  2022 CW Fiscal Plan at 16, 60, 156–64 (Debtor's Exhibit 9) [ECF No. 1299-10].  The restrictions on PRITA's use of revenues AAFAF complains of constitute nothing more than conditions to the transfer of HTA's property, and are also within the Court's jurisdiction over HTA's property.  Pursuant to Bankruptcy Code section 1123(b)(6), a plan of adjustment may "include any other appropriate provision not inconsistent with the applicable provisions of this title." *See also* 11 U.S.C. § 1142(b).

15.     *AAFAF Mischaracterizes PROMESA Section 303*.  AAFAF argues Section 2.4 of the HTA Plan runs afoul of Section 303 of PROMESA because Section 2.4 "seeks to control the operational functions of HTA, PRITA, and DTOP."  AAFAF Obj. ¶ 14.  That argument is premised on an incorrect reading of PROMESA Section 303.  AAFAF omits the key conditional phrase in PROMESA Section 303 that limits the Government's authority with respect to Title I and II of PROMESA, and subjects the Government to the Oversight Board's authority with respect to Title III.  Specifically, Section 303 provides that the Government's political or governmental powers in Title III are "[s]ubject to the limitations set forth in titles I and II of [PROMESA]."  PROMESA § 303.  Far from "expressly reserving" these powers for the Government, as AAFAF alleges in its objection, PROMESA Section 303 states the  powers

reserved for the Government are limited by the other provisions of PROMESA—and, in the instant case, empower the Oversight Board to incorporate Section 2.4 into the HTA Plan.

16.     Indeed, the First Circuit has confirmed PROMESA Section 303's "reservation of power is expressly '[s]ubject to the limitations set forth in [Titles] I and II of [PROMESA], where §§ 201 and 202 appear." *See In re Fin. Oversight & Mgmt. Bd. for P.R.,* 916 F.3d 98, 116 (1st Cir. 2019) (alterations in original) (noting PROMESA's preemptive provisions in Sections 201 and 202 supersede the reservation of Government powers in Section 303 because those powers are  subject to the limitations set forth in Titles I and II).  The First Circuit has repeatedly affirmed the Oversight Board's powers to restructure and reorganize the budgets of various government agencies despite the reservations of power set out in Section 303.  *See, e.g.*, *id.*

17.     The limitations set out in PROMESA Titles I and II mean the Government's authority in Title III remains subject to the Oversight Board's authority set out in those sections, including the Oversight Board's authority to certify Fiscal Plans and budgets.  Thus, far from prohibiting the Oversight Board from interfering with the Government's "political and governmental powers," as AAFAF suggests, Section 303 guarantees the Oversight Board's sole discretionary authority to certify Fiscal Plans and budgets and to ensure compliance to enable the Commonwealth and its instrumentalities to achieve fiscal responsibility and access to capital markets.

18.     As such, the 2022 HTA Fiscal Plan, when certified by the Oversight Board, represents a lawful exercise of Oversight Board power.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 916 F.3d at 116 ("When the Board certified the [] Fiscal Plan and Budget, then, it exercised authority granted to it under PROMESA").  The Oversight Board's power to do so is not an encroachment on the Government's powers guaranteed to it by Section 303; on the

contrary, it is a power explicitly reserved for the Oversight Board in Section 303 itself—through Titles I and II.

19.     Thus, provisions in Oversight Board-certified Fiscal Plans are binding on the Commonwealth.  *See* PROMESA § 201(e); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 945 F.3d at 6 (noting a previously rejected PROMESA Section 205 recommendation becomes a "binding policy" when included in the certified budget or Fiscal Plan).  As such, it would be contrary to both the certified 2022 HTA Fiscal Plan and the requirements of PROMESA for the Government to disregard the requirements of Section 2.4 of the HTA Plan.  Here, both the 2022 HTA Fiscal Plan and the 2022 CW Fiscal Plan require certain HTA obligations—including Transit Assets and Highway Assets—be redirected towards PRITA, regardless of whether those actions are the preferred strategy of the Government.

20.     Section 2.4 of the HTA Plan also does not run afoul of this Court's decision in *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 583 B.R. 626, 635 (D.P.R. 2017), where this Court held, in the context of Section 303 of PROMESA, "nothing in Titles I and II permits the FOMB to displace local government structures and authority by declaration."  There, the Oversight Board's request to appoint a Chief Transformation Officer for the Puerto Rico Electric Power Authority was made outside the context of a certified Fiscal Plan and outside a plan of adjustment.  Here, the transfer of HTA's property and operational changes consistent with the 2022 HTA Fiscal Plan are being sought in connection with the comprehensive restructuring of HTA pursuant to certified Fiscal Plans and a plan of adjustment for HTA, and are not inconsistent with Title III. Moreover, Section 2.4 of the HTA Plan does not insert a Chief Transformation Officer answerable only to the Oversight Board.

21.     Even if the Government's reading of Section 303 were correct—contrary to PROMESA and precedent in this Circuit—PROMESA Section 305 permits this Court to interfere with "any of the political . . . powers" of the Government and "any of the property or revenues of the debtor" so long as the Oversight Board consents.  PROMESA § 305.  The Oversight Board consents.

22.     Furthermore, PROMESA Section 314 mandates that a plan of adjustment be consistent with the active Fiscal Plan.  PROMESA § 314(a)(7).  Given that the current HTA Fiscal Plan requires these structural reforms and that Fiscal Plan was properly certified by the Oversight Board under PROMESA Title II, Section 314 requires the enactment of Section 2.4 of the HTA Plan.  Thus, AAFAF's attempt to avoid these requirements—and their misplaced reliance on Section 303—are unavailing.

23.     If AAFAF's reading of Section 303 were to prevail, the Government would be able to block structural reforms foundational to the Fiscal Plans and budgets, and also to achieving fiscal responsibility and access to the capital markets PROMESA requires.  The Government essentially contends it need only claim attempted reforms would impair its "political or governmental powers" to block the efforts of the Oversight Board, through the certified Fiscal Plans and budgets, to help the Commonwealth emerge from its restructuring in a financially responsible manner.  Far from effectuating the intentions of Congress in helping Puerto Rico "achieve fiscal responsibility" and ensure "access to . . . capital markets," PROMESA § 101, AAFAF would have this Court rule Section 303 gives the Government the ability to unilaterally block desperately-needed reforms.  That contention runs counter to PROMESA, previous rulings by this Court, and binding First Circuit precedent.

**2.   Section 2.4 of the HTA Plan is Necessary for its Implementation.**

24.      AAFAF also argues Section 2.4 of the HTA Plan is not necessary to effectuate the "debt restructuring transactions" pursuant to the HTA Plan because the New HTA Bonds Indenture "already includes several provisions specifically designed to ensure that HTA revenues are allocated appropriately."  AAFAF Obj. ¶¶ 19–20.  The premise of AAFAF's objection is the sole purpose of a plan of adjustment is to restructure a debtor's debts, and nothing more.  Such a limited view is expressly contradicted by PROMESA Section 314(b)(7) requiring the HTA Plan to be consistent with the certified Fiscal Plan.  AAFAF's position is not supported by the law, and undermines the goals of PROMESA.  Stripped to its essentials, AAFAF's argument boils down to the proposition that Congress enacted PROMESA to alleviate Puerto Rico's debt burden at creditors' expense while depriving the Court of any power to impose the fiscal responsibility PROMESA requires and the Oversight Board structured pursuant the powers PROMESA granted it.

25.      Bankruptcy Code section 1123(a)(5) requires that a plan of adjustment "provide adequate means for the ***plan's*** implementation" (emphasis added), and is not limited to the implementation of the restructuring of debts with creditor constituencies.  Indeed, in *Irving Tanning Co. v. Maine Superintendent of Insurance (In re Irving Tanning Co.)*, 496 B.R. 644, 663 (B.A.P. 1st Cir. 2013), which AAFAF cites, the First Circuit Bankruptcy Appellate Panel recognized that preemption pursuant to Bankruptcy Code section 1123(a)(5) is "broad" and extends to means "sufficient to implement the ***plan***." (emphasis added).  Of course, *Irving Tanning* was a chapter 11 case involving a debtor and creditors—not a municipality involving people needing to be assured their government will not repeat the conduct that bankrupted the territory.  Moreover, *Irving Tanning* supports a broad preemption of state law.  *Id.* at 662–63.  It simply ruled the Bankruptcy Code does not allow discharges of non-Title 11 debtors and does

not allow takings without just compensation under the Fifth Amendment. *Id.* at 661, 665. Indeed, as noted above, Congress expressly recognized in Section 405(m)(4) of PROMESA that achieving the goals of PROMESA and responding to Puerto Rico's crisis requires "[a] ***comprehensive*** approach to fiscal, ***management, and structural problems*** . . ." PROMESA § 405(m)(4) (emphasis added). Congress further emphasized that such holistic approach would equally apply in Title III by including as a requirement for confirmation of a plan of adjustment that it be consistent with the applicable Fiscal Plan certified by the Oversight Board. PROMESA § 314(b)(7).

26.    Bankruptcy Code section 1142(b) also supports the ability of a plan of adjustment to effectuate a comprehensive restructuring that imposes obligations on PRITA and DTOP. This section allows the Court to "direct the debtor or any other necessary party to perform any acts that are required for consummation of the plan." *In re Suffolk Reg'l Off-Track Betting Corp.*, 542 B.R. 72, 78 (Bankr. E.D.N.Y. 2015); *Vill. of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007) (section 142(b) "empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan." (quoting *In re U.S. Brass Corp.*, 301 F.3d 296, 305–06 (5th Cir. 2002))); *see also Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.)*, 270 F.3d 280, 289 (6th Cir. 2001) ("[S]everal courts have held that 11 U.S.C. § 1142 provides bankruptcy courts with broad power to enforce the terms of a confirmed plan."). Indeed, this Court has, in the context of confirming the plan of adjustment for the Commonwealth, enjoined the Government's ability to increase pension plan rates for the next ten years pursuant to its authority pursuant to section 1142(b). *In re Fin. Oversight & Mgmt. Bd.*, 636 B.R. 1, 46 (D.P.R. 2022), *aff'd*, 2022 U.S. App. Lexis 19736 (1st Cir. July 18, 2022).

27.     Section 2.4 of the HTA Plan is necessary for implementation of the transactions contemplated in the HTA Plan and consistent with what is already required in the 2022 HTA Fiscal Plan.  The HTA Plan is premised on the Transportation Sector Reform outlined in the 2022 HTA Fiscal Plan, and assumes HTA will not continue to have operational control or responsibility over the Transit Assets on or as soon as practicable following the HTA Effective Date.  *See* 2022 HTA Fiscal Plan at 11–12 (Debtor's Exhibit 5) [ECF No. 1299-6] ("The current transit system suffers from limited efficiency, route coordination, operational cohesiveness and accessibility. . . . To address these issues, a comprehensive reform of the transportation sector on the island is required.  . . .  The cornerstone of the reform should be rationalization of asset ownership, with the creation of mode-specific transport entities.  To achieve that, HTA would need to transfer all transit assets to PRITA, establish an internal separation ("ringfence") between its toll and non-toll operations and pursue a P3 for further structural independence of toll assets.").  Similarly, the HTA Plan assumes HTA will have operational control over toll assets, and effectuate operational changes to HTA and DTOP in connection with the non-toll assets. The implementation of such changes pursuant to Section 2.4 of the HTA Plan and consistent with the 2022 HTA Fiscal Plan is intended to solve "[t]he current state, where several different agencies have overlapping control and responsibilities of toll-roads, non-toll roads and transit assets [leading] to inefficiencies, lack of coordination and poor outcomes for citizens."  *See* 2022 HTA Fiscal Plan at 12 (Debtor's Exhibit 5) [ECF No. 1299-6].

**B.  <u>OMNIBUS REPLY TO OBJECTIONS</u>**

28.     With respect to the Objections to the HTA Plan other than the AAFAF Objection, the omnibus reply chart attached <u>Exhibit C</u> sets forth the reasons such Objections should be overruled.

**WHEREFORE** the Debtor respectfully requests the Court overrule the Objections, confirm the Plan, and grant the Debtor such other and further relief as is just and proper.

Dated: August 7, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock
Brian. S. Rosen
Jeffrey W. Levitan
Joshua A. Esses
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

**Exhibit A**

**Objections**

| **TITLE AND ECF NO.** | **FILING PARTY** |
|---|---|
| *Objection to Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* **[ECF No. 1285]** | Mapfre PRAICO Insurance Company and Endurance Reinsurance Corporation of America |
| *Objection of a Group of Plaintiffs′ Appellants in First Circuit Court Appeal Case to the Plan of Adjustment* **[ECF No. 1287]** | Plaintiffs-appellants of case *Vazquez Velazquez v. Puerto Rico Highways Authority*, Case Number 21-1739 |
| *Finca Matilde's Objection to Confirmation of Third Amended Title III Plan of Adjustment of The Puerto Rico Highways and Transportation Authority* **[ECF No. 1293]** | Finca Matilde, Inc. |
| *Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico highways and Transportation Authority* **[ECF No. 1301]** | Franklin Advisers, Inc. and Nuveen Asset Management |
| *The Puerto Rico Fiscal Agency and Financial Advisory Authority's Limited Objection to Section 2.4 of the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* **[ECF No. 1318]** | AAFAF |

**Exhibit B**

**Documents Filed in Response to the Plan (Excluding Objections)**

| TITLE AND ECF NO. | FILING PARTY |
|---|---|
| *Statement in Support and Reservation of Rights of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. With Respect to HTA Plan and Related Documents* **[ECF No. 1290]** | Assured Guaranty Corp. and Assured Guaranty Municipal Corp. |
| *Statement in Support and Reservation of Rights of National Public Finance Guarantee Corporations with Respect to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* **[ECF No. 1295]** | National Public Finance Guarantee Corporation |
| *Reservation of Rights of Official Committee of Unsecured Creditors Regarding Confirmation of Third Amended Title III Plan of Adjustment for Puerto Rico Highways and Transportation Authority* **[ECF No. 1296]** | The Official Committee of Unsecured Creditors |

**Exhibit C**

**Omnibus Reply Chart to Plan Objections**

| Party / ECF | Objection(s) | Response(s) |
|---|---|---|
| Mapfre PRAICO Insurance Company and Endurance Reinsurance Corporation of America (the "Surety") [ECF No. 1285] (the "Surety Objection") | The Surety objects to the HTA Plan because the Claim is for amounts retained by HTA from payments allegedly owed for work certified and approved by HTA in the bonded projects, which according to the objection became property of the Surety before the Oversight Board filed the Title III petition on behalf of HTA. The objection argues further that the Plan proposes to treat the Claim as a general unsecured claim, thus significantly impairing the same, completely disregarding the Surety's right to be paid the abovementioned amounts in their entirety without any kind of reduction or adjustment by the HTA Plan filed under PROMESA and the Bankruptcy Code provisions incorporated therein. Surety Obj. at 1. | Consistent with the resolution of the Surety's objection to the Commonwealth Plan, and the Court's approval thereof, the proposed Confirmation Order has been amended to include the following paragraph to resolve the Surety Objection: <br><br> Asserted Surety Claims.  Notwithstanding anything contained in the HTA Plan to the contrary, to the extent that the Claim of a surety against the Debtor is determined to be a secured claim and allowed in whole or in part, by Final Order, or by operation of section 502(a) of the Bankruptcy Code following the expiration of the period to object to any such Claim in accordance with the provisions of Section 32.1 of the HTA Plan, such Claim shall be paid in full, in Cash; provided, however, that, in the event some or all of any such Claim is determined to be an unsecured claim and allowed in whole or in part, by Final Order, such Claim shall be treated in accordance with the provisions of Section 20.1 of the HTA Plan. |
| Plaintiffs-Appellants in *Vazquez-Velazquez, et al. v. Puerto Rico Highways and Transportation Authority, et al.*, Case No. 21-1739 (1st Cir.) (the "Velazquez Action") | The plaintiffs-appellants in the First Circuit appeal captioned *Vazquez-Velazquez, et al. v. Puerto Rico Highways and Transportation Authority, et al.*, Case No. 21-1739 (the "Velazquez Group"), argue certain asserted wage claims allegedly relating to the implementation of federal | **The Velazquez Group Lacks a Valid Claim** <br> On August 9, 2021, the United States District Court issued an opinion and order (the "Dismissal Order") dismissing, with prejudice, the Velazquez Group's federal constitutional, Law 180, and Law 100 claims (Case No. 15-1727, ECF No. 211), and entered judgment against the Velazquez Group (Case No. 15-1727, ECF No. 212). |

| | | |
|---|---|---|
| [ECF No. 1287] (the "Velazquez Objection") | law cannot be discharged pursuant to the HTA Plan because, pursuant to PROMESA Sections 7, 204(d), and 304(h), the compensation claims are necessary for HTA to comply with federal regulations, including 23 CFR § 635.103, 23 CFR § 635.105, and 23 CFR § 635.108.<br><br>Velazquez Obj. ¶¶ 7–11. | In light of the dismissal of the federal constitutional claims, the United States District Court also declined to exercise supplemental jurisdiction over the Velazquez Group's Article 1802 claims and dismissed such claims without prejudice. *Id.* at 27.<br><br>On September 3, 2021, the Velazquez Group appealed the Dismissal Order to the First Circuit, which appeal remains pending. Case No. 15-1727, ECF No. 213.<br><br>In light of the Dismissal Order, the Velazquez Group lacks a valid claim at all, let alone a non-dischargeable claim. Accordingly, the Velazquez Objection should be overruled.[1] Indeed, even the Velazquez Objection concedes the Velazquez Group's objection is dependent on both a successful reversal on appeal *and* a subsequent victory at trial—neither of which has occurred. Velazquez Obj. ¶ 11.<br><br>**PROMESA Sections 7, 204(d), and 304(h) Do Not Provide An Independent Basis for an Exception to Discharge**<br><br>Even if the Velazquez Group could state a valid claim, their argument that their claim is non-dischargeable is without merit. PROMESA Section 7 provides that, "*[e]xcept as otherwise provided in this chapter*, nothing in this chapter shall be *construed* as impairing or in any manner relieving a |

---

[1] *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Case No. 17-3283, ECF No. 19812 at 104 n.36 ("Because the Court has concluded that the Credit Unions have not stated a claim upon which relief could be granted under the Takings Clause, the Court finds that their claims for payment concerning that alleged taking are not protected by the Fifth Amendment and may be impaired and discharged by the Plan.").

|  |  |  | territorial government, or a territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory." (emphasis added).

Critically, the Velazquez Group ignores the opening words of the provision ("[e]xcept as otherwise provided in this chapter"). As the First Circuit noted, this text provides that, where PROMESA expressly includes a provision that, by its plain terms, operates to impair compliance with federal laws or requirements, then PROMESA controls. *Mun. of San Juan v. Puerto Rico*, 919 F.3d 565, 580 (1st Cir. 2019). Bankruptcy Code section 944(b), made applicable to this Title III case pursuant to PROMESA Section 301(a), clearly provides for a discharge of debts, *except as provided in Bankruptcy Code section 944(c)*—limited only to debts excepted from discharged by the plan or confirmation order, or an entity that had no notice nor actual knowledge of the case. These specific exceptions do not apply to the Velazquez Group's claims. Furthermore, this Court has noted that PROMESA Section 7 merely provides interpretive direction and does not confer new rights or causes of action. *Asociacion de Salud Primaria de Puerto Rico v. Commonwealth (In re Fin. Oversight & Mgmt. Bd.)*, 330 F. Supp. 3d 667, 674 (D.P.R. 2018).[2]

Similarly, this Court has held that PROMESA Section 304(h), which uses the same "construed" language, does not |

---

[2] The legislative history of PROMESA Section 7 also makes clear that Section 7 is intended to ensure *continued* or *prospective* compliance with federal laws. H.R. Rep. No. 114-602, pt. 1, at 42 (2016) ("[t]his section requires territories to *continue* compliance with all other Federal laws or requirements protecting health, safety, and the environment, as well as those territorial laws implementing Federally-authorized and delegated programs." (emphasis added)).

| | | |
|---|---|---|
| | | provide an independent right to non-discharge.  *In re Fin. Oversight & Mgmt. Bd.*, 2021 U.S. Dist. LEXIS 254163, at *41–42 (D.P.R. Dec. 27, 2021).

The plain terms of PROMESA Section 204(d) also do not provide a basis for an exception to discharge.  This section provides that "[i]n taking actions under this Act, the Oversight Board shall not exercise applicable authority to *impede territorial actions* taken to . . . ." (emphasis added).  A discharge in bankruptcy permanently enjoins *creditor actions* to collect discharged debts, rather than territorial actions.  *Mun. of San Juan*, 919 F.3d at 578.

**<u>Payment of the Velazquez Group's Wage Claims Does Not Relate to Implementation of Any Federal Program</u>**

The Velazquez Group seeks to except their asserted wage claims from discharge, which does not relate to the implementation of any federal program.  The federal laws and regulations the Velazquez Group cites do not require the payment of such claims, but merely require HTA to take certain actions in connection with federal highway projects, such as including certain terms in contracts (*see* 23 C.F.R. § 635.108).  The wages are, if anything, a function or creations of HTA's regulations—not federal law.  Thus, Section 304(h) has no application to the instant claim. |
| Finca Matilde, Inc. [ECF No. 1293] (the "<u>Finca Matilde Objection</u>") | Finca Matilde, Inc., holder of an alleged $7.248 million inverse condemnation claim against HTA, asserts:

(1) the HTA Plan and/or Confirmation Order should be modified to reflect the First Circuit's affirmation of this Court's | (1) Claimants in Class 15 of the HTA Plan will be paid in full to the extent the amount of their claim is in excess of deposits submitted by HTA with the Clerk of the Court of First Instance in connection with condemnation proceedings underlying such Claims, subject to further review and reversal by the United States Supreme Court upon a writ of certiorari of the Court's determination that such claims may |

| | | |
|---|---|---|
| | determination Takings Claims cannot be discharged pursuant to a Title III plan of adjustment (<u>Finca Matilde Obj.</u> ¶ 3);<br><br>(2) further clarity is needed on whether holders of Claims in Class 15 are entitled to vote on the HTA Plan (<u>id.</u>); and<br><br>(3) the HTA Plan must provide for payment of post-petition interest on Takings Claims (<u>id.</u> ¶¶ 4–5). | not be impaired or discharged by PROMESA. Accordingly, the Commonwealth Confirmation Order and the Findings of Fact and Conclusions of Law with respect thereto may still be reversed upon appeal.<br><br>(2) Holders of Claims in Class 15 were entitled to vote, and rejected the HTA Plan. Nonetheless, such holders of Claims in Class 15 may be "crammed down" pursuant to Bankruptcy Code section 1129(b)(2). <u>Memorandum</u> ¶¶ 118–21, 124–27.<br><br>(3) The amount of just compensation attributable to an Eminent Domain/Inverse Condemnation Claim, including post-petition interest, if any, will be determined by the Commonwealth courts, and upon such determination becoming a Final Order, such holder will receive in Cash 100% of the unpaid balance. <u>HTA Plan</u> § 19.1. |
| HTA Insured Bondholder Group (the "<u>Bondholder Group</u>") [ECF No. 1301] (the "<u>Bondholder Group Objection</u>") | The Bondholder Group, alleged holders of more than $145 million of Assured Insured Bonds issued by HTA, asserts the HTA Plan cannot be confirmed as drafted because it impermissibly:<br><br>(1) releases certain of Assured's contractual obligations without satisfying the exacting standard for granting third-party releases in the First Circuit (<u>Bondholder Group Obj.</u> ¶¶ 10–18)<br><br>(2) accelerates the maturity of the Assured Insured Bonds as of the HTA Effective Date, in contravention of the plain | (1) The HTA Plan does not include non-consensual third-party releases.<br><br>(2) and (3) Section 5.3 of the HTA/CCDA Plan Support Agreement provides for the inclusion of a provision regarding the acceleration of the Assured Insured Bonds in the HTA Plan. Similar provisions have been included in the confirmed Title III plans of adjustment for COFINA, the Commonwealth, and PBA. |

| | | |
|---|---|---|
| | language of the applicable bond documents (id. ¶¶ 19–21); and<br><br>(3) modifies contractual obligations under the Assured Insurance Policies of Assured, a non-debtor, to the beneficial holders of the Assured Insured Bonds (or to the fiscal agent for the bonds, on such beneficial holders' behalf) (id. ¶¶ 22–23). | |