## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK-3567-LTS |

### NOTICE OF FILING OF REVISED PROPOSED ORDER AND JUDGMENT CONFIRMING FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF <u>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY</u>

**PLEASE TAKE NOTICE** that, on July 20, 2022, the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as sole Title III representative of the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>" or the "<u>Debtor</u>") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[2]

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

filed the proposed *Order and Judgment Confirming Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-3567, ECF No. 1278] [3] (the "Original Proposed Order").

> **PLEASE TAKE FURTHER NOTICE** that, attached hereto as **Exhibit A** is the proposed *Order and Judgment Confirming Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (the "Revised Proposed Order"), which reflects revisions in response to comments and objections from various parties.

> **PLEASE TAKE FURTHER NOTICE** that, attached hereto as **Exhibit B** is a redline comparison of the Original Proposed Order against the Revised Proposed Order.

> **PLEASE TAKE FURTHER NOTICE** that all documents filed in these Title III cases are available (a) free of charge by visiting https://cases.ra.kroll.com/puertorico/ or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

> *[Remainder of Page Left Intentionally Blank]*

---

[3]   Unless otherwise stated, all ECF Nos. shall refer to the docket in Case No. 17-3567.

Dated: August 7, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*

**<u>EXHIBIT A</u>**

Revised Proposed Order

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, et al., | |
| Debtors. | |
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3567-LTS |
| as representative of | |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Debtor. | |

## ORDER AND JUDGMENT CONFIRMING
## FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE
## PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

| | | |
|---|---|---|
| 1. | Confirmation of the HTA Plan | 3 |
| 2. | Objections | 4 |
| 3. | Findings/Conclusions | 4 |
| 4. | Litigation Resolution | 8 |
| 5. | HTA Plan Settlements Approved | 9 |
| 6. | Dismissal of GO/Clawback Litigation | 9 |
| 7. | Implementation of the HTA Plan | 10 |
| 8. | Enforceability of New Debt Instruments | 11 |
| 9. | HTA Avoidance Actions | 11 |
| 10. | Funding, Costs, and Expenses of the Avoidance Actions Trust. | 12 |
| 11. | Indemnification of Avoidance Actions Trustee and Board | 12 |
| 12. | No Action | 13 |
| 13. | Government Action | 13 |
| 14. | Oversight Board Consent Pursuant to PROMESA Section 305 | 14 |
| 15. | Binding Effect | 14 |
| 16. | Cancellation of Notes, Instruments, Certificates, and Other Documents | 15 |
| 17. | Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases | 17 |
| 18. | Insurance Policies | 18 |
| 19. | Rejection Damages Claims | 18 |
| 20. | Payment of Cure Amounts | 19 |
| 21. | Setoff | 19 |
| 22. | Delivery of Distributions | 20 |
| 23. | Disbursing Agent | 25 |
| 24. | Payment of Trustee Fees and Expenses | 25 |
| 25. | Securities Laws Exemption | 27 |
| 26. | Acceleration of Insured Bonds | 27 |
| 27. | Disputed Claims Reconciliation | 29 |
| 28. | Disputed Claims Holdback | 30 |
| 29. | No Amendments to Proofs of Claim | 31 |

30.  Conditions to Effective Date ................................................................ 32

31.  Administrative Claim Bar Date ........................................................... 32

32.  Professional Compensation and Reimbursement Claims ................... 33

33.  HTA Consummation Costs ................................................................. 33

34.  HTA Restriction Fee .......................................................................... 34

35.  HTA/CCDA Clawback Structuring Fees ............................................ 37

36.  DRA Restriction Fee .......................................................................... 37

37.  Discharge and Release of Claims and Causes of Action ................... 37

38.  Releases by the Debtor and Reorganized Debtor ............................. 43

39.  Release and Exculpation Provisions .................................................. 43

40.  **Injunction on Claims** ...................................................................... 44

41.  **Injunction Related to Releases** ...................................................... 45

42.  Exculpation ....................................................................................... 46

43.  GUC Reserve ..................................................................................... 49

44.  Appointments Related Litigation ...................................................... 49

45.  **Bar Order** ....................................................................................... 50

46.  **Supplemental Injunction** .............................................................. 51

47.  Term of Existing Injunctions or Stays .............................................. 52

48.  Prosecution of Claims ....................................................................... 53

49.  Indemnification and Reimbursement Obligations ............................ 53

50.  Compliance with Tax Requirements .................................................. 53

51.  Documents and Instruments ............................................................. 54

52.  Fiscal Plan ......................................................................................... 54

53.  Oversight Board Termination and Post-Confirmation Powers .......... 55

54.  Post-Confirmation Fiscal Plans and Budgets Remain Subject to Oversight Board's Sole Discretion ..................................................... 55

55.  Government Post-Confirmation Powers and Duties ........................... 55

56.  Asserted Surety Claims ..................................................................... 56

57.  Reversal/Stay/Modification/Vacatur of Order .................................. 56

58.  Retention of Jurisdiction ................................................................... 57

59.  Conflicts Among Documents ............................................................. 57

60.  Modifications ..................................................................................... 58

61.  Provisions of Plan and Order Nonseverable and Mutually Dependent ........................... 58

62.    Governing Law .................................................................................................. 58

63.    Applicable Nonbankruptcy Law ...................................................................... 58

64.    Waiver of Filings ............................................................................................. 59

65.    Notice of Order ................................................................................................ 59

66.    No Waiver ........................................................................................................ 60

Exhibit A HTA Plan.................................................................................................... A-1

Exhibit B Form of Notice ........................................................................................... B-1

Exhibit C Preempted Laws ........................................................................................ C-1

The Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Debtor under PROMESA Section 315(b), having proposed and filed with the United States District Court for the District of Puerto Rico (the "Court") the *Fourth Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated August 7, 2022 (Docket Entry No. 1350 in Case No. 17-3567)[1] (as amended, supplemented, or modified prior, at, or subsequent to the HTA Confirmation Hearing as set forth in this Order through the date hereof, including the Plan Supplement, and as may be amended, supplemented, or modified pursuant to Section 313 of PROMESA, the "HTA Plan" through the date hereof);[2] and the Court having entered, pursuant to, *inter alia*, section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and a hearing, an order, dated June 22, 2022 (Docket Entry No. 1248) (the "Disclosure Statement Order"), (i) approving the adequacy of the information set forth in the Disclosure Statement, (ii) establishing procedures for the solicitation, voting, and tabulation of votes on and elections with respect to the HTA Plan, (iii) approving the forms of ballots, master ballots, and election notices used in connection therewith, and (iv) approving the form of notice of the HTA Confirmation Hearing; and the Court having entered the *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith,* dated June 22, 2022 (Docket Entry No.

---

[1]   All docket entry references are to entries in Case No. 17-3567 unless otherwise indicated.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the HTA Plan, the Disclosure Statement Order, the Confirmation Brief (each as defined herein), the New HTA Bonds Indenture, or the *Findings of Fact and Conclusions of Law Regarding Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (the "Findings of Fact and Conclusions of Law"), (Docket Entry No. _____), as applicable.  A composite copy of the HTA Plan is annexed hereto as Exhibit A.

1

1249); and the following documents having been filed by the Debtor or the HTA/CCDA PSA

Creditors in support of or in connection with confirmation of the HTA Plan:

(a) Plan Supplement (Docket Entry No. 1351);

(b) *Affidavit of Service of Solicitation Materials* (Docket Entry No. 1324) (the "<u>Mailing Affidavit</u>");

(c) *Affidavit of Publication and Radio Advertisements* (Docket Entry No. 1342) (the "<u>Publication & Radio Affidavit</u>", and together with the Mailing Affidavit, the "<u>Service Affidavits</u>");

(d) *Omnibus Reply of the Puerto Rico Highways and Transportation Authority to Objections to Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1361) (the "<u>Omnibus Reply</u>");

(e) *Memorandum of Law in Support of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1360) (the "<u>Confirmation Brief</u>"); and

(f) *Declaration of David Skeel in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1357); and

(g) *Declaration of David M. Brownstein in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1358); and

(h) *Declaration of Ojas N. Shah in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1359); and

(i)  *Declaration of Jay Herriman in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1355); and

(j)  *Declaration of Christina Pullo of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1356);

and objections to confirmation of the HTA Plan having been interposed by certain parties, as reflected on the docket of the HTA Title III Case and/or on the record of the HTA Confirmation Hearing; and each of the objections having been resolved, overruled, or withdrawn at, prior to, or subsequent to the HTA Confirmation Hearing;[3] and the Court having held the HTA Confirmation Hearing commencing on August 17, 2022; and the appearances of all interested parties, including members of the public selected by the Court, having been noted in the record of the HTA Confirmation Hearing; and after full consideration of the record of the Commonwealth Title III Case and the HTA Title III Case, including, without limitation, motions, applications and orders in each of such cases, the foregoing documents, and the evidence admitted and arguments of counsel presented at the HTA Confirmation Hearing; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT**:

1.    <u>Confirmation of the HTA Plan</u>.  The HTA Plan and each of its provisions shall be, and hereby are, CONFIRMED pursuant to Section 314(b) of PROMESA.  The documents

---

[3]  All opposition submissions are also listed as part of the Court's Findings of Fact and Conclusions of Law.

contained in the Plan Supplement are authorized and approved.  The terms of the HTA Plan, as

amended, supplemented, or modified by the revisions made prior, at, or subsequent to the HTA

Confirmation Hearing, as set forth in this Order as well as in the revised composite copy attached

hereto as Exhibit A, include the Plan Supplement, as amended, supplemented, or modified on or

prior to the date hereof, and are incorporated by reference into and are an integral part of this

Order.

2.      Objections.  All objections, responses to, and statements and comments, if any, in

opposition to or inconsistent with the HTA Plan shall be and hereby are, OVERRULED and

DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

3.      Findings/Conclusions.  The findings of fact and conclusions of law set forth in the

Court's Findings of Fact and Conclusions of Law are incorporated herein as though set forth in

full.   Notwithstanding  such  incorporation,  the  following  summarizes  certain  of  the  Court's

determinations:

(A)     Pursuant to PROMESA, on May 21, 2017, HTA commenced a case before the
Court in accordance with the requirements of Title III of PROMESA.  The
commencement of this case vested the Court with exclusive jurisdiction over
the case and all property of HTA, wherever located.  As a result of the
consensual agreement among the Debtor and its creditor representatives, the
Debtor formulated, duly solicited, and now seek confirmation of a plan of
adjustment in accordance with federal law.

(B)     This Order is a final order intended to be binding on all parties in interest, and
shall not be subject to collateral attack or other challenge in any other court or
other forum, except as permitted under applicable law.  Confirmation of the
HTA Plan constitutes a judicial determination, pursuant to Section 4 of
PROMESA, that all laws, rules, and regulations giving rise to obligations of
the Debtor discharged by the HTA Plan and this Order pursuant to
PROMESA are preempted by PROMESA and such discharge shall prevail
over any general or specific provisions of territory laws, rules, and
regulations.  Pursuant to PROMESA Section 4, to the extent not previously
ruled preempted pursuant to an order of the Title III Court, all laws (or such
portions thereof) of the Commonwealth of Puerto Rico, other than budgets
certified by the Oversight Board, inconsistent with PROMESA and that affect
the Debtor or Reorganized HTA , have been preempted to the extent set forth

in Exhibit A to the Findings of Fact and Conclusions of Law.  Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that provide for transfers or appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose to the extent inconsistent with the HTA Plan's discharge of the Debtor's obligations. All laws enacted from and after the commencement of the HTA Title III Case, to the extent they are inconsistent with the transactions contemplated by the HTA Plan and that affect the Debtor or Reorganized HTA are unenforceable. Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, those listed on Exhibit C hereto and (b) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit C hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the HTA Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal.  For the avoidance of doubt, the non-inclusion of a payment obligation arising from a valid law in a certified fiscal plan or budget is not a basis for disallowance of such obligation to the extent the claim arising therefrom otherwise satisfies the requirements for allowance of a claim under the relevant provisions of the Bankruptcy Code.

(C)     The Court shall retain jurisdiction to enforce the terms hereof and of the HTA Plan and the Secured Obligations in accordance with their terms to ensure compliance with the HTA Plan and to adjudicate claims arising therefrom, including rights to specific performance.

(D)     At the time of issuance and delivery of the Secured Obligations, Reorganized HTA is hereby directed to cause to be stamped or written on each of the Secured Obligations a legend substantially as follows:

> DETERMINED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO PURSUANT TO 11 U.S.C. §§ 944(b) AND 1123 TO BE VALID, LEGALLY BINDING, AND ENFORCEABLE PURSUANT TO THE JUDGMENT AND CONFIRMATION ORDER, ENTERED ON THE [___] DAY OF [_____], 2022.

(E)     Pursuant to PROMESA, including Section 4 thereof, as well as sections 944[4] and 1123 of the Bankruptcy Code, and in accordance with this Order and the

---

[4]   Section 944(b)(3) requires the Court, as a condition to providing a discharge, to determine the validity of obligations imposed under a plan of the debtor and of any provision made to pay or secure payment of such obligations. 11 U.S.C. § 944(b)(3). *See generally In re City of Stockton, Cal.*, 526 B.R. 35, 49-50 (Bankr. E.D. Cal. 2015) ("The structure of the federal-state relationship . . . regarding restructuring of municipal debt is dictated by the U.S. Constitution. .

HTA Plan, the Court determines that the New HTA Bonds and the covenants by HTA, including, without limitation, the Toll Rate Covenant, for the benefit of the holders of the New HTA Bonds as provided in the New HTA Bonds Indenture, or the HTA Confirmation Order, as applicable, constitute valid, binding, legal and enforceable obligations of HTA, and Reorganized HTA under Puerto Rico, New York, and federal law.

---

. . [T]he Supremacy Clause operates to cause federal bankruptcy law to trump state laws, including state constitutional provisions, that are inconsistent with the exercise by Congress of its exclusive power to enact uniform bankruptcy laws" (*citing Ass'n of Retired Emps. of the City of Stockton v. City of Stockton, Cal. (In re City of Stockton, Cal.)*, 478 B.R. 8, 14-16 (Bankr. E.D. Cal. 2012); U.S. Const. art. VI, cl. 2; *Int'l Bhd. of Elec. Workers, Local 2376 v. City of Vallejo, Cal. (In re City of Vallejo, Cal.)*, 432 B.R. 262, 268-70 (E.D. Cal. 2010) (additional citations omitted)). As set forth in the leading bankruptcy treatise, "[t]he requirement of a court determination of validity is extra assurance for those who might be skittish about the nature of the bonds being issued . . . . It has the added feature of removing any doubt concerning the matter, because the determination of the court on that issue should be binding in the future." 6 Alan N. Resnick & Henry J. Sommer, Collier On Bankruptcy § 944.03[1][b] (16th ed. 2013). *See, e.g.*, Amended Order and Judgment Confirming Third Amended Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation, dated February 5, 2019, and *Amended Memorandum of Findings of Face and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation,* dated February 5, 2019, ¶174 ("Confirmation of the Plan constitutes a judicial determination and, pursuant to section 4 of PROMESA and sections 944, 1123, and 1125 of the Bankruptcy Code as incorporated by section 301 of PROMESA, the terms of these Findings of Fact and Conclusions of Law shall prevail over any general or specific provision of territory law, State law or regulation that is inconsistent therewith and be full, final, complete, conclusive, and binding and shall not be subject to collateral attack or other challenge in any court or other forum, except as permitted under applicable law"); Order Confirming Third Amended Plan for the Adjustment of Debts of the City of San Bernardino, California, as Modified by the Court, dated February 7, 2017, ¶ 22 ("In accordance with Section 944(a) and notwithstanding any otherwise applicable law, upon the occurrence of the HTA Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon . . . ."); Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit, dated November 12, 2014, ¶ 86 ("[I]n accordance with section 944(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the HTA Effective Date, the terms of the Plan and this Order shall be binding upon, and inure to the benefit of . . . ."); Findings of Fact, Conclusions of Law, Order Confirming the Chapter 9 Plan of Adjustment for Jefferson County, Alabama, dated November 6, 2013, ¶ 37, ("Pursuant to Bankruptcy Code sections 1123(a), 1123(b), and 944(a), as well as general principles of federal supremacy, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.").

(F) Reorganized HTA is an independent public corporation and instrumentality of the Commonwealth of Puerto Rico, separate from the Commonwealth and any other instrumentality thereof.

(G) The New HTA Bonds Indenture, upon the issuance of the Secured Obligations, including, without limitation, the Subordinated Indebtedness issued as a refinancing of the Commonwealth Loan, grants a first priority lien and first priority security interest on all of Reorganized HTA's legal and equitable right, title and interest in the Trust Estate, to the Secured Obligations, subject only to (1) the terms and provisions of the New HTA Bonds Indenture establishing the Authority Expense Fund and the Arbitrage Rebate Fund and (2) the senior lien and senior security interest granted in the Trust Estate for the benefit of holders of New HTA Bonds, which first-priority lien and first-priority security interest shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted in the Trust Estate for the benefit of holders of Subordinated Indebtedness, in each case, as permitted by the HTA Enabling Act, and such first priority lien shall be deemed automatically perfected as of the HTA Effective Date and shall in any event be valid, binding, perfected, and enforceable against all Entities having claims of any kind in tort, contract or otherwise against Reorganized HTA or its assets, irrespective of whether such Entities have notice of such lien or security interest, without any further act or agreement by any Entity, and will be "closed" and shall remain in full force and effect until the Secured Obligations have been paid or satisfied in full in accordance with their terms.

(H) The Pledged Revenues do not and will not constitute, nor will they be deemed to be "available resources" or "available revenues" of the Commonwealth, as such term is used in the Constitution of the Commonwealth of Puerto Rico (whether construed pursuant to the Spanish or English version of the Commonwealth Constitution).

(I) Reorganized HTA's sole and exclusive ownership of the Pledged Revenues will not be affected in any way by the manner of or control over collection; any person who collects or holds Pledged Revenues shall do so on behalf of Reorganized HTA, and no Entity that collects or holds the Pledged Revenues shall have any legal or equitable right, title, or interest to the Pledged Revenues other than Reorganized HTA, for the benefit of the holders of the Secured Obligations.

(J) Upon the HTA Effective Date, Reorganized HTA shall have all legal and equitable right, title, and interest in the Pledged Revenues and, except to the extent provided in the express provisions of the HTA Plan, HTA Confirmation Order and the New HTA Bonds Indenture, shall be free and clear of all liens, claims, encumbrances, and other interests of any party.

(K) The covenants and agreements of Reorganized HTA and the Commonwealth under the New HTA Bonds Indenture and the HTA Act, as the case may be

(including, but not limited to, that described in Section 7.17 of the New HTA Bonds Indenture) will constitute adequate protection for the property interests of Reorganized HTA and the holders of Secured Obligations in the Trust Estate.

(L)    HTA has waived, and shall be deemed to have waived, the automatic stay in any future insolvency proceeding commenced on behalf of Reorganized HTA (whether under Title III of PROMESA or otherwise) with respect to Net Receipts held in the funds and accounts established in accordance with the New HTA Bonds Indenture (other than the Net Receipts in the Arbitrage Rebate Fund, established pursuant to the New HTA Bonds Indenture).

(M)    Upon execution by all parties thereto, the New HTA Bonds Indenture shall (i) have been duly and lawfully authorized by HTA and Reorganized HTA, and (ii) be in full force and effect and valid and binding upon HTA and Reorganized HTA and enforceable in accordance with their terms, except that enforceability of rights and remedies may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or as to the availability of any particular remedy.

(N)    For purposes of Section 209 of PROMESA, the discharge of debt to occur as of the HTA Effective Date pursuant to the HTA Plan and the HTA Confirmation Order is necessary for the Oversight Board to certify that expenditures do not exceed revenues for HTA, as determined in accordance with modified accrual accounting standards.

(O)    The Court's *Opinion and Order Granting Defendants' Motion to Dismiss the Complaint*, Adv. Proc. No. 21-00068-LTS, Dkt. No 83 (October 29, 2021), including, without limitation, that the GDB HTA Loans are subject to subordination to the HTA 68 Bonds and the HTA 98 Bonds qualifies as the "GDB Loan Priority Determination" for purposes of the HTA Plan.

(P)    The HTA Plan is consistent with the applicable HTA Fiscal Plan and satisfies Section 314(b)(7) of PROMESA.

4.    <u>Litigation Resolution</u>.  For the reasons stated herein and in the Findings of Fact and Conclusions of Law, the provisions of the HTA Plan constitute a good faith, reasonable, fair, and equitable compromise and settlement of all Claims and controversies resolved pursuant to the HTA Plan, including, without limitation, the compromise and settlement of asserted and unasserted disputes concerning the rights of holders of HTA 68 Bond Claims, HTA 98 Senior Bond Claims, HTA 98 Sub Bond Claims, CW/HTA Claims, and GDB HTA Loans, including the disputes (a) set

forth in the Debt Related Objections, (b) set forth in the Invalidity Actions, (c) set forth in the Lien

Challenge Actions, (d) raised by certain holders of CW Bond Claims, CW Guarantee Bond Claims,

and GDB HTA Loans asserting rights to receive revenues historically conditionally appropriated

to HTA, as applicable, and "clawed back" by the Commonwealth pursuant to the provisions of the

Commonwealth Constitution, (e) relating to the validity, priority, secured status and related rights

attendant to the GDB HTA Loans, and (f) set forth in the Lift Stay Motions and the Clawback

Actions relating to the CW/HTA Claims, each as incorporated into the HTA Plan, and the entry of

this Order constitutes, if required, approval of all such compromises and settlements pursuant to

Bankruptcy Rule 9019 and sections 105(a) and 1123(b)(5) of the Bankruptcy Code.  Pursuant to

this Order, and to the extent provided in the HTA Plan, on the HTA Effective Date, such

compromises and settlements shall be binding upon the Debtor, all Creditors of the Debtor, and all

other Entities and, to the fullest extent permitted by applicable law, shall not be subject to collateral

attack or other challenge (other than appeals) in any other court or forum.

5.      <u>HTA Plan Settlements Approved</u>.  The Court hereby approves the compromises

and settlements embodied in the HTA Plan as fair and reasonable and, as of the HTA Effective

Date of the HTA Plan, authorizes and directs the consummation thereof.

6.      <u>Dismissal of GO/Clawback Litigation</u>.  On the later to occur of (a) the HTA

Effective Date, and (b) five (5) Business Days following this Order becoming a Final Order, (1)

to the extent extant, the Debt Related Objections, the Invalidity Actions, the Lien Challenge

Actions, the Lift Stay Motions, and the Clawback Actions shall be dismissed and/or denied, with

prejudice, and (2) the Oversight Board, by itself or through its committees, the Monolines, and the

HTA/CCDA PSA Creditors (on their own account or on behalf of affiliates or related funds or

accounts managed by them or by their respective affiliates) shall take any and all action reasonably

necessary, including, without limitation, filing such notices, stipulations or other pleadings in the Title III Court, the United States Court of Appeals for the First Circuit and the courts of the Commonwealth of Puerto Rico, as applicable, to effectuate the dismissal of the aforementioned litigations and motions, with prejudice.

7.     <u>Implementation of the HTA Plan</u>.  On and after the HTA Effective Date, the Debtor, Reorganized HTA, and each of its respective authorized agents and representatives are authorized and directed to (a) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including, without limitation, those contained in the Plan Supplement, (b) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the HTA Plan and the Plan Supplement, (c) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the HTA Plan, including, among other things, all such actions delineated in Article XXXVIII of the HTA Plan, and (d) direct or instruct The Depository Trust Company, or such other person or entity necessary to implement or effectuate the terms of (i) the Ambac Trust, (ii) the FGIC Trust, (iii) any custodial trust, escrow arrangement, or similar structure established pursuant to Section 26.2(b) of the HTA Plan (a "<u>National Trust</u>"), (iv) any custodial trust, escrow arrangement, or similar structure established pursuant to Section 26.1(b)(ii) of the HTA Plan (an "<u>Assured Trust</u>" and together with the foregoing, the "<u>Trusts</u>"), and (v) the related Trust documentation.  Without in any way limiting the foregoing, on the HTA Effective Date, the appropriate officers or representatives of the Debtor and Reorganized HTA, as the case may be, and members of the boards of directors of the same, as applicable, are authorized, empowered, and directed to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the HTA Plan, and make, or cause to be made, any and

10

all distributions and transfers contemplated pursuant to, and as provided for in, the HTA Plan and the Plan Supplement, in the name of and on behalf of the Debtor and Reorganized HTA, as applicable.

8.      Enforceability of New Debt Instruments.  Pursuant to Bankruptcy Code section 944(b)(3), all debt instruments to be issued pursuant to the HTA Plan, including, without limitation, the New HTA Bonds Indenture and the Secured Obligations issued thereunder, will constitute, upon distribution thereof, valid legal obligations of the Debtor or Reorganized HTA, as the case may be, that issues them, and any provision made to pay or secure payment of such obligation is valid.

9.      HTA Avoidance Actions.   The Avoidance Actions Trust shall include the Avoidance Actions, which shall be pursued solely for the benefit of holders of Allowed HTA General Unsecured Claims.   For the avoidance of doubt, holders of Allowed HTA General Unsecured Claims shall not be beneficiaries of any causes of action held by the Avoidance Action Trust other than the Avoidance Actions.   On the Effective Date, HTA shall transfer the Avoidance Actions to the Avoidance Actions Trust and, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Avoidance Actions Trust shall have the sole right, authority, and standing to prosecute, settle or otherwise dispose of the Avoidance Actions, including, without limitation, those set forth on Exhibit A to the HTA Plan, as of the Effective Date.   The Avoidance Actions may be transferred subject to certain liabilities, including, without limitation, all counterclaims and defenses to any such Avoidance Actions, as provided in the HTA Plan or the Avoidance Actions Trust Agreement.   Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use of other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of the Avoidance Actions to the Avoidance Actions Trust, HTA, Reorganized HTA,

11

and its predecessors, successors and assigns, and each other Entity released pursuant to Section 40.2 of the HTA Plan shall be discharged and released from all liability with respect to the delivery of such distributions.

10.     Funding, Costs, and Expenses of the Avoidance Actions Trust.  Notwithstanding anything contained in the HTA Plan to the contrary, no additional funding shall be provided to the Avoidance Actions Trust pursuant to the HTA Plan.  The reasonable costs and expenses of the Avoidance Actions Trust, including the fees and expenses of the Avoidance Actions Trustee and its retained professionals, shall be satisfied and discharged from the funding provided to the Avoidance Actions Trust pursuant to the Commonwealth Plan and/or the proceeds from the Avoidance Actions.  Fees and expenses incurred in connection with the prosecution and settlement of any Avoidance Actions shall be considered costs and expenses of the Avoidance Actions Trust.

11.     Indemnification of Avoidance Actions Trustee and Board.  The Avoidance Actions Trustee, the Trust Advisory Board (as defined in the Avoidance Actions Trust Agreement), and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such Person's successors and assigns (each, an "Indemnified Party"), shall not be liable to the Avoidance Actions Trust Beneficiaries (as defined in the Avoidance Actions Trust Agreement, and as amended to include holders of Allowed HTA General Unsecured Claims) for actions taken or omitted in their capacity as, or on behalf of, the Avoidance Actions Trustee or the Trust Advisory Board, as applicable, except those acts arising from their own fraud, willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Avoidance Actions Trust for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Avoidance Actions Trustee or the Trust Advisory Board,

as applicable, except for any actions or inactions involving fraud, willful misconduct or gross negligence.  Any indemnification claim of an Indemnified Party pursuant to Section 7.5 of the Avoidance Actions Trust Agreement shall be satisfied solely from the Avoidance Actions Trust Assets (as defined in the Commonwealth Plan) and/or the Avoidance Actions and shall be entitled to a priority distribution therefrom.  The Indemnified Parties shall be entitled to rely, in good faith, on the advice of their retained professionals.   The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.  For the avoidance of doubt, the Avoidance Actions Trust Agreement shall be amended to reflect the provisions in the HTA Plan and the HTA Confirmation Order relating to the Avoidance Actions.

12.     No Action.  Pursuant to section 1142(b) of the Bankruptcy Code, the Debtor, or Reorganized HTA, as the case may be, are directed to, and no further action of the directors or officers of the Debtor shall be required to authorize the Debtor or Reorganized HTA, as the case may be, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the HTA Plan, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the HTA Plan, including, without limitation, the Plan Supplement.

13.     Government Action.  From the HTA Effective Date up to and including the satisfaction of the New HTA Bonds in accordance with their terms, (a) pursuant to Bankruptcy Code section 1142(b), Reorganized HTA including, without limitation, any Entity or Person (including, without limitation, the Reorganized HTA Board of Directors) acting for or on behalf thereof, shall take any and all actions necessary to consummate the transactions contemplated by the HTA Plan, (b) Reorganized HTA is authorized and directed, and the Puerto Rico Department

of Treasury and AAFAF, as applicable, are authorized, notwithstanding any requirements of
Puerto Rico law, to execute any and all agreements necessary for the implementation of the HTA
Plan and to make any payments required thereunder, including, without limitation, the New HTA
Bonds Indenture and with respect to the Secured Obligations issued thereunder, and (c) pursuant
to PROMESA Section 108(a)(2), no party, individual, official, or  officer (elected or appointed),
agency, or Entity shall enact, adopt, or implement any law, rule, regulation, or policy that (i)
impedes, financially or otherwise, consummation and implementation of the transactions
contemplated by the HTA Plan, including, but not limited to, those contemplated pursuant to the
New HTA Bonds Indenture and the Secured Obligations issued thereunder, or (ii) creates any
inconsistency in any manner, amount or event between the terms and provisions of the HTA Plan
or a Fiscal Plan certified by the Oversight Board, each of which actions has been determined by
the Oversight Board to impair or defeat the purposes of PROMESA.  To the maximum extent
permitted by law, Reorganized HTA including, without limitation, any Entity or Person (including,
without limitation, the Reorganized HTA Board of Directors) acting for or on behalf thereof, is
directed to take any and all actions necessary to consummate the transactions contemplated by the
HTA Plan.

14.    Oversight Board Consent Pursuant to PROMESA Section 305.  Pursuant to
PROMESA Section 305, the Oversight Board consents to the entry of this Order, and, consistent
with the HTA Plan and in accordance with all applicable laws and authorities, directing HTA and
Reorganized HTA to take all acts necessary to carry out and satisfy all obligations and distributions
set forth in the HTA Plan.

15.    Binding Effect.  This is a full, final, and complete Order intended to be conclusive
and binding on all parties in interest, is not intended to be subject to collateral attack in any other

14

forum, and may only be challenged in accordance with applicable rules in this Court and appealed

as provided in PROMESA and other applicable federal laws, rules, and jurisprudence, by (i) the

Debtor, (ii) Reorganized HTA, (iii) each Entity asserting claims or other rights against HTA,

including each holder of a bond claim and each holder of a beneficial interest (directly or indirectly,

as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by the

Debtor or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent,

and any bank that receives or holds funds related to such bonds, whether or not such claim or other

rights of such Entity are impaired pursuant to the HTA Plan and, if impaired, whether or not such

Entity accepted the HTA Plan, (iv) any other Entity, and (v) each of the foregoing's respective

heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents,

representatives, attorneys, beneficiaries or guardians.

16.     <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>.  Pursuant

to Section 28.6 of the HTA Plan, and except (a) as provided in any contract, instrument or other

agreement or document entered into or delivered in connection with the HTA Plan, (b) for purposes

of evidencing a right to distribution under the HTA Plan, or (c) as specifically provided otherwise

in the HTA Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to

Section 27.1 of the HTA Plan), on the HTA Effective Date, the HTA Bonds and all instruments

and documents related thereto shall be deemed automatically cancelled, terminated and of no

further force or effect against the Debtor without any further act or action under any applicable

agreement, law, regulation, order or rule, with the Debtor and the applicable trustee, paying agent

or fiscal agent, as the case may be, having no continuing obligations or duties and responsibilities

thereunder and the obligations of the parties to the Debtor under the HTA Bonds and all

instruments and documents related thereto shall be discharged; <u>provided</u>, <u>however</u>, that,

notwithstanding anything contained in the HTA Plan or herein to the contrary, the HTA Bonds
and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing
Agent to make any distributions as set forth in the HTA Plan and to perform such other necessary
administrative or other functions with respect thereto, (ii) to allow holders of Allowed HTA Bond
Claims and Allowed Insured HTA Bond Claims to receive distributions in accordance with the
terms and provisions of the HTA Plan, (iii) for any trustee, fiscal agent, agent, contract
administrator or similar entity under all instruments and documents related thereto, to perform
necessary functions, including making distributions, in accordance with the HTA Plan, and to have
the benefit of all the rights and protections and other provisions of such instruments and
documents, as applicable, and all other related agreements, (iv) to set forth the terms and conditions
applicable to parties to such documents and instruments other than the Debtor, (v) to allow Assured
and National to exercise the redemption or call rights assigned to Assured and National pursuant
to the provisions of Sections 26.1 and 26.2 of the HTA Plan, respectively, or (vi) as may be
necessary to preserve any claims under the respective insurance policies and related documents
issued by a Monoline and the Oversight Board shall request that HTA and Reorganized HTA use
their reasonable efforts to (1) maintain the existing CUSIP numbers for the Monoline-insured HTA
Bonds, and (2) take such other reasonable steps as may be necessary to preserve and effectuate
such Claims; and, provided, further, that, notwithstanding the foregoing or anything else contained
in the HTA Plan or herein to the contrary, the HTA Fiscal Agent shall have no duties or
responsibilities with respect to any HTA Bonds that are deposited into any of the Ambac Trust,
the Assured Trust, the FGIC Trust, or the National Trust from and after the HTA Effective Date.
Notwithstanding the foregoing, and except as otherwise expressly provided in the HTA Plan, such

16

bonds or bond documents that remain outstanding shall not form the basis for the assertion of any

Claim against the Debtor or Reorganized HTA, as the case may be.

17.     <u>Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases</u>.

Pursuant to section 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to

Section 301 of PROMESA, and subject to the provisions of Sections 27.5 and 27.7 of the HTA

Plan, all Executory Contracts and Unexpired Leases that exist between the Debtor and any Entity,

and which have not expired by their own terms on or prior to the Confirmation Date, shall be

deemed rejected by the Debtor as of the HTA Effective Date, except for any Executory Contract

and Unexpired Lease (a) that has been assumed and assigned or rejected pursuant to an order of

the Title III Court entered prior to the HTA Effective Date, (b) that is specifically designated as a

contract or lease to be assumed or assumed and assigned; (c) that has been registered with the

Office of the Comptroller of Puerto Rico; (d) that has been exempt from registration with the

Office of the Comptroller of Puerto Rico pursuant to 2 L.P.R.A. §97 and regulations promulgated

pursuant thereto, (e) that has been approved by the Oversight Board or authorized by the Title III

Court, unless specifically designated a contract to be rejected in the Plan Supplement, (f) with the

United States, or any of its agencies, departments or agents or pursuant to any federal program or

(g) by or between any Commonwealth of Puerto Rico agencies, departments, municipalities, public

corporations, or instrumentalities; <u>provided</u>, <u>however</u>, that the Debtor reserves the right to amend,

on or prior to the HTA Effective Date, such schedules to delete any Executory Contract and

Unexpired Lease therefrom or add any Executory Contract and Unexpired Lease thereto, in which

event such Executory Contract(s) and Unexpired Lease(s) shall be deemed to be, as the case may

be, either rejected, assumed, or assumed and assigned as of the Effective Date.  The Debtor shall

serve (y) notice of any Executory Contract and Unexpired Lease to be assumed or assumed and

assigned through the operation of Section 27.1 of the HTA Plan, by including a schedule of such

contracts and leases in the Plan Supplement and (z) notice of any Executory Contract and

Unexpired Lease to be rejected through the operation of Section 27.1 of the HTA Plan, by serving

a separate notice to the relevant counterparties to such agreements.  To the extent there are any

amendments to such schedules, the Debtor shall provide notice of any such amendments to the

parties to the Executory Contract and Unexpired Lease affected thereby.  The listing of a document

on the schedules to the Plan Supplement or in any separate notice shall not constitute an admission

by the Debtor that such document is an Executory Contract and Unexpired Lease or that the Debtor

has any liability thereunder.   Except as provided in Articles XXVII of the HTA Plan, none of the

Debtor's collective bargaining agreements shall be treated as Executory Contracts and none shall

be assumed or rejected or otherwise treated pursuant to the HTA Plan, but shall remain in effect

subject, in all instances, to Puerto Rico law and Section 2.5 of the HTA Plan regarding the payment

and ongoing treatment of pension and related claims obligations.

      18.    <u>Insurance Policies</u>.  Subject to the terms and provisions of Section 27.5 of the HTA

Plan, each of the Debtor's insurance policies and any agreements, documents, or instruments

relating thereto, are treated as Executory Contracts under the HTA Plan; <u>provided</u>, <u>however</u>, that,

such treatment shall not, and shall not be construed to, discharge or relieve any Monoline with

respect to its respective obligations to holders of Claims under policies of insurance and applicable

law and governing documents with respect thereto.

      19.    <u>Rejection Damages Claims</u>.  If the rejection of an Executory Contract and

Unexpired Lease by the Debtor hereunder results in damages to the other party or parties to such

contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim,

shall be forever barred and shall not be enforceable against the Debtor, or its properties or agents,

successors, or assigns, including, without limitation, Reorganized HTA, unless a proof of Claim

is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized

HTA, as the case may be, on or before thirty (30) days after the later to occur of (i) the

Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection

of a particular Executory Contract and Unexpired Lease.

20.     <u>Payment of Cure Amounts</u>.  Any monetary amount required as a cure payment with

respect to each prepetition executory contract and unexpired lease to be assumed pursuant to the

HTA Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of

the cure amount in Cash on the later to occur of (a) the HTA Effective Date and (b) within ten (10)

Business Days of the occurrence of a Final Order setting forth the cure amount as to each executory

contract or unexpired lease to be assumed or assumed and assigned, or upon such other terms and

dates as the parties to such executory contracts or unexpired leases and the Debtor or Reorganized

HTA otherwise agree.

21.     <u>Setoffs</u>.  Except as otherwise provided in the HTA Plan or in this Order, the

Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against

any Allowed Claim and the distributions to be made pursuant to the HTA Plan on account thereof

(before any distribution is made on account of such Claim by the Disbursing Agent), the claims,

rights, and Causes of Action of any nature that the Debtor or Reorganized HTA may hold against

the holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that neither the failure to effect such a setoff

nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or

Reorganized HTA of any such claims, rights, and Causes of Action that the Debtor or Reorganized

HTA may possess against such holder; and, <u>provided</u>, <u>further</u>, that nothing contained herein is

intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved

or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this decretal paragraph or Section 28.11 of the HTA Plan shall affect the releases and injunctions provided in Article XLI of the HTA Plan or this Order.

       22.    <u>Delivery of Distributions</u>.

       (a)    <u>Delivery of Distributions Generally</u>.  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in the HTA Plan or herein, distributions and deliveries to holders of Allowed Claims shall be made through The Depository Trust Company or at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address; provided, however, that, except as otherwise provided herein, distributions by the Disbursing Agent for the benefit of holders of Allowed HTA Bond Claims shall be made to the trustee or fiscal agent, as applicable, for such obligation in accordance with the respective governing documents for such obligations; and, provided, further, that, except as otherwise provided herein, the Disbursing Agent may make distributions of HTA PSA Restriction Fees and Consummation Costs in Cash to a party entitled thereto in a manner mutually agreed upon between such party and the Disbursing Agent.  The trustee or fiscal agent for each such obligation (or such trustee's or fiscal agent's designee) shall, in turn, deliver the distribution to holders in the manner provided for in the applicable governing documents.  Each trustee or fiscal agent may conclusively rely upon the distribution instructions received from the Debtor, Reorganized HTA or their respective agents with respect to the delivery of distributions in accordance with the terms and provisions of the HTA Plan, including the contra-CUSIP positions and escrow positions

20

established by the Debtor or its agents with The Depository Trust Company, and each trustee or fiscal agent shall close and terminate the original CUSIPs after making distributions in accordance with the terms and provisions of the HTA Plan and shall have no further distribution obligations thereunder.  No Trustee or fiscal agent shall be required to post any bond or surety or other security for the performance of its duties, unless otherwise ordered or directed by the Title III Court. Subject to any agreements to the contrary, each trustee or fiscal agent shall only be required to make the distributions and deliveries described in this decretal paragraph and the HTA Plan and in accordance with the terms of this Order, the HTA Plan and such other governing document, and shall have no liability for actions reasonably taken in accordance with the terms of this Order, the HTA Plan and such other governing document, or in reasonable reliance upon information provided to such trustee or fiscal agent by the Debtor, Reorganized HTA or their respective agents in accordance with the terms of this Order, the HTA Plan or in connection with distributions to be made hereunder or thereunder, except for liabilities resulting from the gross negligence or willful misconduct of such trustee or fiscal agent.  The New HTA Bonds shall be transferable and recognized if made in accordance with the terms and conditions of the New HTA Bonds Indenture.

(b)      Delivery of Distributions with Respect to National Insured Bonds. Notwithstanding any other provision of the HTA Plan or of this Order, (i) subject to the rights of the HTA Fiscal Agent, on the HTA Effective Date, National shall receive, and the Disbursing Agent shall disburse to National, or such other Entity as National may direct in its sole and absolute discretion, the National Plan Consideration in accordance with the terms and provisions of Section 26.2 of the HTA Plan in a manner mutually agreed upon by the Disbursing Agent and National, and (ii) National shall have all right, title, and interest in the National HTA Consideration and shall

manage the National HTA Consideration in its sole and absolute discretion subject to and in accordance with its obligations under applicable insurance regulations.

(c)      <u>Delivery of Distributions with Respect to Ambac Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, on the HTA Effective Date, subject to the rights of the HTA Fiscal Agent, Ambac shall receive, and the Disbursing Agent shall disburse to Ambac, or such other Entity as Ambac may direct in its sole and absolute discretion, the Ambac Plan Consideration in accordance with the terms and provisions of Section 26.4 of the HTA Plan in a manner mutually agreed upon by the Disbursing Agent and Ambac.

(d)      <u>Delivery of Distributions with Respect to FGIC Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, on the HTA Effective Date, subject to the rights of the HTA Fiscal Agent, the Disbursing Agent shall distribute to FGIC its Pro Rata Share of the FGIC Plan Consideration in accordance with the terms and provisions of Section 26.3 of the HTA Plan in a manner mutually agreed upon between the Disbursing Agent and FGIC.

(e)      <u>Delivery of Distributions with Respect to Assured Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, (i) to the extent an Assured Insured Bondholder holding an Assured Insured Bond with CUSIP number [__] validly elects (or is deemed to elect) Assured Bondholder Election 2, the Disbursing Agent will deposit the Assured Plan Consideration allocable to such Assured Insured Bondholder in the applicable Assured Trust in accordance with the applicable trust agreement; (ii) to the extent an Assured Insured Bondholder holding the custody receipt with CUSIP number [__] evidencing a beneficial ownership interest in the Assured Insured Bond with CUSIP number [__] validly elects (or is deemed to elect) Assured Bondholder Election 2, such Assured Insured Bondholder will be deemed to have deposited such custody receipts into the applicable Assured Trust; the trustee (the "<u>Assured Trustee</u>") of the

22

Assured Trusts (as the holder of the applicable custody receipts) and Assured will be deemed to have collapsed the existing custodial arrangement, such that the Assured Trustee will be deemed to hold the Assured Insured Bonds underlying the applicable custody receipts and the related Assured Insurance Policies as provided in the applicable trust agreement, without any further action on the part of the existing custodian; provided, however, that the existing custodian is also hereby authorized and ordered to take any further actions that may be necessary to confirm the collapse of the existing custodial arrangement as provided herein and in the applicable trust agreement, to deliver the applicable trust units to or for the benefit of the Assured Insured Bondholders, as provided herein and in the applicable trust agreement, and/or to otherwise give effect to the HTA Plan, this Order, and the applicable trust agreement: and the Disbursing Agent will transfer the Assured Plan Consideration allocable to such Assured Insured Bondholder to the Assured Trustee for deposit in the applicable Assured Trust on account of such custody receipts and Assured Insured Bonds in accordance with the applicable trust agreement; (iii) to the extent an Assured Insured Bondholder holding the custody receipt with CUSIP number [__] evidencing a beneficial ownership interest in the Assured Insured Bond with CUSIP number [__] validly elects (or is deemed to elect) Assured Bondholder Election 2, such Assured Insured Bondholder will be deemed to have deposited such custody receipts into the applicable Assured Trust; the Assured Trustee (as the holder of the applicable custody receipts ) and Assured will be deemed to have collapsed the existing custodial arrangement, such that the Assured Trustee will be deemed to hold the Assured Insured Bonds underlying the applicable custody receipts and the related Assured Insurance Policies as provided in the applicable trust agreement, without any further action on the part of the existing custodian, provided, however, that the existing custodian is also hereby authorized and ordered to take any further actions that may be necessary to confirm the collapse

23

of the existing custodial arrangement as provided herein and in the applicable trust agreement, to

deliver the applicable trust units to or for the benefit of the applicable Assured Insured Bondholders

as provided herein and in the applicable trust agreement, and/or to otherwise give effect to the

HTA Plan, this Order, and the applicable trust agreement, and, without prejudice to the ability of

the Assured Trustee to draw on the applicable Assured Insurance Policy, the Assured Trustee shall

be deemed to have deposited such Dual-Insured Bonds, the related FGIC Insurance Policies, and

the related FGIC Plan Consideration into the applicable FGIC Trust pursuant to Section 26.1(f) of

the HTA Plan; and the trustee for the Assured Trust related to such Assured Insured Bonds shall

be deemed to have received its Pro Rata Share of the FGIC Plan Consideration, and shall receive

the FGIC Certificates allocable to such Assured Insured Bondholder on account of the custody

receipts referred to in this subsection (iii) above and Dual-Insured Bonds referred to in this

subsection (iii) above for deposit in the relevant Assured Trust in accordance with the applicable

trust agreement; (iv) pursuant to Section 26.1 of the HTA Plan, subject to the rights of the HTA

Fiscal Agent, the Disbursing Agent shall disburse the Assured Plan Consideration on account of

any Assured Insured Bonds with respect to which Assured has exercised the Assured Election or

with respect to which an Assured Insured Bondholder has validly elected Assured Bondholder

Election 1 directly to Assured or its designee in a manner mutually agreed upon between the

Disbursing Agent and Assured; and (v) on or prior to the HTA Effective Date, the Disbursing

Agent and the Debtors shall disclose to Assured the Assured Acceleration Price to be paid with

respect to any Assured Insured Bonds with respect to which Assured has exercised the Assured

Election or with respect to which an Assured Insured Bondholder has validly elected the Assured

Bondholder Election 1, and, on the HTA Effective Date, (1) with respect to such Assured Insured

Bonds insured in the primary market, the HTA Fiscal Agent shall draw down on the applicable

Assured Insurance Policies to pay the applicable Assured Acceleration Price to the beneficial holders of such Assured Insured Bonds insured in the primary market in accordance with Sections 26.1(a) and 26.1(b)(i) of the HTA Plan, as applicable, and (2) with respect to such Assured Insured Bonds insured in the secondary market, Assured shall, or shall cause the applicable custodian of custody receipts evidencing the beneficial ownership interest of the holders thereof in such Assured Insured Bonds and the related Assured Insurance Policies to draw on the applicable Assured Insurance Policies in order to pay the applicable Assured Acceleration Price to the beneficial holders of such Assured Insured Bonds insured in the secondary market in accordance with Sections 26.1(a) and 26.1(b)(i) of the HTA Plan, as applicable; provided, however, that, for the avoidance of doubt, Assured shall not in any circumstance be required to pay itself an Assured Acceleration Price with respect to any Assured Insured Bonds owned by Assured, by subrogation or otherwise.

23.     Disbursing Agent.  Pursuant to Section 1.105 of the HTA Plan, the Disbursing Agent shall be, as applicable, such Entity or Entities designated by the Oversight Board, upon consultation with AAFAF, on or prior to the HTA Effective Date to make or to facilitate distributions in accordance with the provisions of the HTA Plan and this Order.  Upon designation thereof, the Oversight Board shall file an informative motion with the Title III Court setting forth the name of the Disbursing Agent designated.

24.     Payment of Trustee Fees and Expenses.  The distributions to be made pursuant to the HTA Plan and the Commonwealth Confirmation Order to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims are intended to be inclusive of any and all of the HTA Fiscal Agent's fees and expenses due and owing by HTA pursuant to the applicable bond resolutions with respect to amounts discharged pursuant to the HTA Plan (the

"HTA Fiscal Agent's Fees and Expenses").   To the extent not deducted in connection with payments made in accordance with the Commonwealth Confirmation Order upon satisfaction of the Distribution Conditions, the HTA Fiscal Agent's Fees and Expenses shall be deducted on a pro rata basis from distributions to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims, such that the cost of such HTA Fiscal Agent's Fees and Expenses is shared equally by all holders of the HTA 68 Bond Claims and HTA 98 Senior Bond Claims based on the amount of their Claims; provided, however, that, notwithstanding anything in the HTA Plan, the HTA Confirmation Order, or the applicable bond resolutions to the contrary, the HTA Fiscal Agent's Fees and Expenses shall not exceed $2,360,681.02. In the event amounts reserved or deducted by the HTA Fiscal Agent from the distributions to be made to holders of HTA 68 Bonds Claims and HTA 98 Senior Bond Claims exceed the HTA Fiscal Agent's Fees and Expenses, such excess amounts shall be distributed by, or at the direction of, the HTA Fiscal Agent on a pro rata basis to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on the HTA Effective Date (the "Excess Distribution"). For purposes of Section 28.13 of the HTA Plan and this decretal paragraph 21, the applicable Monolines shall constitute the holders of the HTA 68 Bonds Claims and the HTA 98 Senior Bond Claims arising from the HTA Bonds which are insured by any such Monoline, if any, in accordance with Section 301(c)(3) of PROMESA, applicable law, and governing insurance and other documents applicable to such HTA Bonds; provided, however, that, notwithstanding the foregoing, (a) with respect to any HTA 98 Senior Bonds owned by FGIC, the HTA Fiscal Agent shall make the Excess Distribution attributable thereto, if any, to FGIC, and (b) with respect to any HTA 98 Senior Bonds insured by FGIC, but not owned by FGIC, the HTA Fiscal Agent shall make the Excess Distribution attributable thereto, if any, to the owners of such HTA 98 Senior Bonds. Except as otherwise provided in Section 28.13 of the HTA Plan or this

decretal paragraph 24, the HTA Plan does not, nor shall it be construed to, limit the rights of the

HTA Fiscal Agent to payment of such amounts from the distributions to be made hereunder,

including, without limitation, the imposition of any Charging Lien.

25.     <u>Securities Laws Exemption</u>.  Pursuant to section 1145 of the Bankruptcy Code

and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the New

HTA Bonds pursuant to the terms of the HTA Plan and this Order (and any subsequent offering of

such securities, including, without limitation, pursuant to a case under Title VI of PROMESA), or

the custodial trusts created in accordance with Article XXVI of the HTA Plan shall be exempt

from registration under the Securities Act and any state or local law requiring registration for the

offer, issuance or distribution of securities, including, but not limited to, the registration

requirements of Section 5 of the Securities Act and any other applicable state or federal law

requiring registration and/or prospectus delivery or qualification prior to the offering, issuance,

distribution, or sale of securities, and, pursuant to Section 2(b) of the Investment Company Act of

1940, as amended (the "<u>Investment Company Act</u>"), such custodial trusts, securities and interests

shall be exempt from the provisions of the Investment Company Act.

26.     <u>Acceleration of Insured Bonds</u>.  Notwithstanding any other provision of the HTA

Plan or this Order:

(a)     <u>Assured Insured Bonds</u>: Notwithstanding any other provision of the HTA Plan or
this Order, to the extent that there are no outstanding payment defaults by Assured
with respect to Assured Insured Bonds up to and including the HTA Effective Date,
the payment of the principal of the Assured Insured Bonds shall be accelerated from
and after the HTA Effective Date, and such Assured Insured Bonds shall be due
and payable from and after the HTA Effective Date at the Assured Acceleration
Price of one hundred percent (100%) of the principal amount thereof plus accrued
interest thereon (or, in the case of any capital appreciation bonds, the compounded
amount thereof) to the date of payment.

(b)     <u>National Insured Bonds</u>:  Notwithstanding any other provision of the HTA Plan or
this Order, to the extent that there are no outstanding payment defaults by National

with respect to National Insured Bonds up to and including the HTA Effective Date, the payment of the principal of the National Insured Bonds shall be accelerated as of the Effective Date, and such National Insured Bonds shall be due and payable from and after the HTA Effective Date at the National Acceleration Price of one hundred percent (100%) of the principal amount thereof plus interest accrued thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.  National shall have the right to pay the National Acceleration Price with respect to the National Insured Bonds at any time, and the holders of the National Insured Bonds and the trustee(s) or fiscal agent(s) (as applicable) shall be required to accept the same in satisfaction of National's obligations under the applicable National Insurance Policy with respect to such bonds, and, upon such payments, National's obligations under the applicable National Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the applicable National Insurance Policy or other documents related to the National Insured Bonds.  For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any National Insurance Policy unless National elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis.

(c)     FGIC Insured Bonds:  Notwithstanding any other provision of the HTA Plan, this Order, or the FGIC Insured Bonds, the payment of the principal of the FGIC Insured Bonds shall be accelerated as of the HTA Effective Date, and the FGIC Insured Bonds shall be due and payable from and after the HTA Effective Date at an "acceleration price" of one hundred percent (100%) of the principal amount thereof, plus interest accrued thereon (or, in the case of capital appreciation bonds, the compounded amount thereof) to the date of payment; provided, however, that for the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made by FGIC under a FGIC Insurance Policy, unless FGIC elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis and FGIC has the express right to accelerate any such payment under the applicable FGIC Insurance Policy or the related agreements relating to the applicable FGIC Insured Bonds.

(d)     Ambac Insured Bonds:  Notwithstanding any other provision of the HTA Plan or the HTA Confirmation Order, to the extent that there are no outstanding payment defaults by Ambac with respect to Ambac Insured Bonds up to and including the HTA Effective Date, the principal amount (or compounded amount in the case of capital appreciation bonds) of the Ambac Insured Bonds shall be deemed accelerated and immediately due and payable as of the HTA Effective Date. Ambac shall have the right to pay the Ambac Acceleration Price with respect to such bonds at any time, and the holder of the Ambac Insured Bonds and the trustee or fiscal agent (as applicable) shall be required to accept the same in satisfaction of Ambac's obligations under the applicable Ambac Insurance Policy with respect to such bonds, and, upon such payment, Ambac's obligations under the applicable Ambac Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the Ambac Insurance Policy or other documents related to the

Ambac Insured Bonds. For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any Ambac Insurance Policy unless Ambac elects, in its sole and absolute discretion to make such payment(s) on an accelerated basis.

27. <u>Disputed Claims Reconciliation</u>. In accordance with the terms and provisions of

Section 32.1(b) of the HTA Plan and the HTA Committee Agreement:

(a) The two (2) Creditors Committee appointees to the Avoidance Actions Trust Board (collectively, the "<u>Creditor Appointees</u>") shall (i) receive monthly updates to the claims reconciliation process, which process shall continue to be administered by the Oversight Board, with assistance of AAFAF, (ii) have the right to (A) review the claims objections and reconciliation process, including the ADR Procedures, as it relates to HTA General Unsecured Claims and Convenience Claims, regardless of the size of the asserted Claim amount, (b) ensure compliance with the exclusions from HTA General Unsecured Claims as provided in the HTA Plan, and (C) in the event that such appointees disagree with any settlement of an HTA General Unsecured Claim, for an allowed amount in excess of Five Hundred Thousand Dollars ($500,000.00), such appointees may seek relief from the Title III Court to cause (upon a showing that such settlement is not in the best interest of HTA and its creditors) the Oversight Board or AAFAF, as the case may be, to obtain approval of the Title III Court for any such settlement in accordance with the standard for approval under Bankruptcy Rule 9019.

(b) Notwithstanding anything contained in the HTA Plan to the contrary, neither the Creditor Appointees nor their advisors shall be entitled to compensation in excess of that provided pursuant to the Commonwealth Plan and the Commonwealth Confirmation Order.

(c) Without limiting the foregoing, (i) within sixty (60) days after the HTA Effective Date, the Oversight Board or AAFAF, as the case may be, through its advisors, shall provide the Creditor Appointees with a report (the "<u>Initial Claims Report</u>") containing (1) a register setting forth all HTA General Unsecured Claims and Convenience Claims that have not been reconciled and which are being evaluated for possible objection, (2) the status of any pending objections to HTA General Unsecured Claims and Convenience Claims, and (3) information illustrating which Claims are subject to the ACR Procedures and are to be excluded from HTA General Unsecured Claims pursuant to Section 32.7 of the HTA Plan, and (ii) within ten (10) days of the end of each month the Oversight Board or AAFAF, as the case may be, through its advisors, shall provide a report (the "<u>Monthly Claims Report</u>") containing material updates to information contained in the Initial Claims Report or a previous Monthly Claims Report, as applicable, as well as any material information omitted from such prior reports. In addition, the Oversight Board or AAFAF, as the case may be, through its advisors, shall, upon reasonable request, periodically supply the Creditor Appointees with any other information the Creditor Appointees may reasonably request related to the claims reconciliation process.

(d) In connection with the foregoing, the Creditor Appointees, together with their counsel and advisors in such capacity, shall not be liable to any Person for actions taken or omitted in connection with the exercise of their rights hereunder except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement from the GUC Reserve for fees and expenses in defending any and all actions or inaction in their capacity as Creditor Appointees under the HTA Plan, except for any actions or inactions involving willful misconduct or gross negligence. The foregoing indemnity in respect of any Creditor Appointee shall survive any termination of such Creditor Appointee from the capacity for which they are indemnified.

28.    <u>Disputed Claims Holdback</u>.  From and after the HTA Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized Debtor or the Disbursing Agent, as applicable, shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims have been estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized Debtor; <u>provided</u>, <u>however</u>, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above.  To the extent the Disbursing Agent or the Reorganized Debtor, as the case may be, retains any New HTA Bonds on behalf of Disputed Claims holders, until such New HTA Bonds are distributed, the Disbursing Agent or the Reorganized Debtor, as the case may be, shall exercise voting or consent rights with respect to such obligations.

29.    <u>No Amendments to Proofs of Claim/Objections to Claims</u>.    As of the commencement of the HTA Confirmation Hearing, a proof of Claim may not be amended without the approval of the Title III Court.  With the exception of proofs of Claim timely filed hereafter in respect of executory contracts and unexpired leases rejected pursuant to this Order, any proof of Claim filed on or after the commencement of the HTA Confirmation Hearing is hereby barred, and the Clerk of the Court and the Debtor's Claims Agent are authorized to remove such proofs of Claims from the claims registry in the Title III Case.  Notwithstanding the provisions of Section 32.1 of the HTA Plan, (a) in the event that a Claim that has been transferred pursuant to the terms and provisions of either the ACR Order or the ADR Order is subsequently transferred back to the claims registry for determination by the Title III Court, the period in which the Reorganized Debtor, by and through the Oversight Board, or AAFAF, as the case may be, shall be extended up to and including one hundred eighty (180) days from and after the date of such notice transferring any such Claim back to the claims registry, and (b) within thirty (30) days of the date hereof, in accordance with Section 204 of PROMESA, the Debtor or Reorganized HTA, as the case may be, shall deliver to the Oversight Board a copy of all files, documents, instruments and, to the extent applicable, pleadings requested by the Oversight Board in connection with the reconciliation of Claims, including, without limitation, Disputed Claims.  Without in any way limiting the foregoing or the terms and provisions of the HTA Plan or the ACR Order, to the extent a Claim subject to the terms and provisions of the ACR Order, including, without limitation, "grievance claims" subject to the provisions of collective bargaining agreements, remain subject to the ACR Order, upon resolution thereof, such Claims shall be satisfied by the Debtor in the ordinary course.

30.     Conditions to Effective Date.  The HTA Plan shall not become effective unless and until the conditions set forth in Section 35.1 of the HTA Plan have been satisfied or waived in accordance with the provisions set forth in Section 35.2 of the HTA Plan.

31.     Administrative Claim Bar Date.  The last day to file proof of Administrative Expense Claims shall be ninety (90) days after the HTA Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtor and Reorganized HTA shall have no obligation with respect thereto; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim (including a Claim for reimbursement by a member of the Creditors' Committee solely in its capacity as such member), (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by the Debtor during the period from and after the HTA Petition Date, (e) relates to transactions occurring in the ordinary course during the period from and after the HTA Petition Date up to and including the HTA Effective Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of an administrative expense pursuant to Bankruptcy Code section 503(b) as of the entry of this Order; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtor and Reorganized Debtor, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

32.   <u>Professional Compensation and Reimbursement Claims</u>.  All Entities awarded compensation or reimbursement of expenses, including, without limitation, to the fullest extent provided in respective letters of engagement or similar instruments or agreements, by the Title III Court shall be paid in full, in Cash, in the amounts allowed by the Title III Court, including, without limitation, all amounts previously awarded subject to holdbacks pursuant to orders of the Title III Court, (a) no later than the tenth (10th) calendar day (or the first Business Day to occur thereafter) after the later to occur of (i) the HTA Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order, or (b) upon such other terms no more favorable to the claimant as may be mutually agreed upon between such claimant and the Debtor or Reorganized HTA; <u>provided</u>, <u>however</u>, that, except as provided herein or the HTA Plan, each Professional (including any member of the Creditors' Committee, in its capacity as such member) must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the date that is one hundred twenty (120) days following the HTA Effective Date.   The Reorganized Debtor shall pay compensation for professional services extended and reimbursement of expenses incurred by its respective Professionals from and after the HTA Effective Date in the ordinary course and without the need for Title III Court approval.

33.   <u>HTA Consummation Costs</u>.  Notwithstanding anything contained in the HTA Plan or this Order to the contrary, to compensate certain parties for the cost of negotiation, confirmation and consummation of the HTA Plan, each Initial HTA/CCDA PSA Creditor shall be entitled to receive on the HTA Effective Date, or as soon thereafter as is practicable but in no event later than ten (10) Business Days following the HTA Effective Date, a pro rata share of Cash, in the form of an Allowed Administrative Expense Claim, in an amount equal to one percent (1.00%), truncated

to two decimal points, of the aggregate amount of such Initial HTA/CCDA PSA Creditor's HTA 68 Bond Claims, HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Assured), and HTA 98 Senior Bond Claims (National) (insured or otherwise and, with respect to each of Assured and National, including positions that it holds or has insured), without duplication, held and/or insured by such Initial HTA/CCDA PSA Creditor as of 5:00 p.m. (EST) on May 5, 2021, in an aggregate amount not greater than One Hundred Twenty-Five Million Dollars ($125,000,000.00).

34.    <u>HTA Restriction Fee</u>.  Notwithstanding anything contained in the HTA Plan or this Order to the contrary, in exchange for executing the HTA/CCDA Plan Support Agreement, and agreeing to all of its terms and conditions, including the agreement to "lock-up" its bonds in accordance with the terms thereof, each HTA/CCDA PSA Restriction Fee Creditor holding or insuring HTA 68 Bonds or HTA 98 Senior Bonds (including the applicable Monolines, to the extent such Monolines are authorized to vote the applicable Insured HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law) shall be entitled to receive the HTA PSA Restriction Fee in the form of an allowed administrative expense claim, payable in cash, at the time of consummation of the HTA Plan in an amount equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent an HTA/CCDA PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with Section 301(c)(3) of PROMESA, the definitive insurance documents

and applicable law) held or, in the case of the Monolines held or insured, by such HTA/CCDA

PSA Restriction Fee Creditor as of the expiration of the HTA/CCDA PSA Restriction Fee Period;

provided, however, that each HTA/CCDA PSA Restriction Fee Creditor who acquires any HTA

68 Bonds and/or HTA 98 Senior Bonds after the Joinder Deadline (including (i) a holder of a

Monoline-insured HTA Bond (other than a Monoline-insured HTA Bond insured by Assured or

National, as the case may be), to the extent such HTA/CCDA PSA Restriction Fee Creditor is

authorized to vote the claim with respect to such Monoline-insured HTA Bond in accordance with

Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law, and (ii)

Assured and National, to the extent Assured or National, as applicable, is authorized to vote such

Insured HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA, definitive

insurance documents and applicable law) shall be entitled to receive such HTA PSA Restriction

Fee equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68

Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond

Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98

Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond

Claims (National) (without duplication and, to the extent any such claims are Monoline-insured,

solely to the extent an HTA/CCDA PSA Creditor is authorized to vote any such claim in

accordance with Section 301(c)(3) of PROMESA the definitive insurance documents and

applicable law) held and/or insured by such HTA/CCDA PSA Restriction Fee Creditor as of the

earlier to occur of the PSA Threshold Attainment attributable to the HTA Bond Claims and the

entry of this Order; and, provided, further, that, if an HTA/CCDA PSA Restriction Fee Creditor

sells any HTA 68 Bonds or HTA 98 Senior Bonds for which it would have been entitled to receive

the HTA PSA Restriction Fee, the purchasing party shall not be entitled to receive the HTA PSA

Restriction Fee on account thereof and such entitlement shall remain with the selling party; and, provided, further, that, in all circumstances, the sum of the aggregate HTA PSA Restriction Fee plus the Consummation Costs attributable to holders of HTA 68 Bond Claims, HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Assured), or HTA 98 Senior Bond Claims (National), as the case may be, shall not exceed One Hundred Twenty-Five Million Dollars ($125,000,000.00); and, provided, further, that, in the event the HTA/CCDA Plan Support Agreement is terminated pursuant to the terms of Sections 7.1(b)(iii) or (c) thereof (subject to the extension provided for in Sections 7.1(b) or (c) thereof), or the Oversight Board terminates the HTA/CCDA Plan Support Agreement for any reason other than (i) a breach of the HTA/CCDA Plan Support Agreement by a non-Government Party, (ii) the denial of confirmation of the HTA Plan by the Title III Court (or the Title III Court renders a decision or states its position that it will deny confirmation absent modification of the Commonwealth Plan or the HTA Plan, and such modification would have a material adverse effect on the Parties ability to consummate the Commonwealth Plan or the HTA Plan on terms consistent with the HTA/CCDA Plan Support Agreement, including, but not limited to, the terms set forth in the Settlement Summary annexed thereto as Exhibit "J"), or (iii) the entry of an order with respect to one or more of the matters set forth in Section 7.1(b)(ii) of the HTA/CCDA Plan Support Agreement, the aggregate HTA PSA Restriction Fee and Consummation Costs, in the amount of Twenty Million Dollars ($20,000,000.00) shall be paid, ratably, in cash, as an administrative expense claim under the HTA Plan to the Initial HTA/CCDA PSA Creditors as of the date of termination; and, provided, further, that, in all other circumstances, upon termination of the HTA/CCDA Plan Support Agreement, including, without limitation, termination of the HTA/CCDA Plan Support Agreement in accordance with other provisions of Section 7.1 thereof,

no Consummation Costs or HTA PSA Restriction Fee shall be due and payable to the party to HTA/CCDA Plan Support Agreement terminating such agreement or against the party such agreement is terminated.

35.   <u>HTA/CCDA Clawback Structuring Fees</u>.   In consideration for the structuring of payments to be made to holders of CW/HTA Claims, CW/Convention Center Claims, CW/PRIFA Tax Claims and CW/MBA Claims, upon satisfaction of the HTA Distribution Conditions, and in accordance with the terms and provisions of Section 6.1(d) of the HTA/CCDA Plan Support Agreement and decretal paragraph 54 of the Commonwealth Confirmation Order, on the HTA Effective Date, or as soon as practicable thereafter in accordance with the terms of the HTA Plan, but in no event later than ten (10) Business Days following such date, the Commonwealth shall make payments to Assured and National in the amounts of Thirty-Nine Million Three Hundred Thousand Dollars ($39,300,000.00) and Nineteen Million Three Hundred Thousand Dollars ($19,300,000.00), respectively.

36.   <u>DRA Restriction Fee</u>.   Notwithstanding anything contained in the HTA Plan or this Order to the contrary, in exchange for executing the DRA Stipulation, and agreeing to all of its terms and conditions, including the agreement to "lock-up" its HTA 98 Senior Bonds and the HTA/GBB Claims in accordance with the terms thereof, on the HTA Effective Date, or as soon as practicable thereafter in accordance with the terms of the HTA Plan, but in no event later than ten (10) business Days following the HTA Effective Date, DRA shall receive the DRA Restriction Fee.

37.   <u>Discharge and Release of Claims and Causes of Action</u>.

(a)   Except as expressly provided in the HTA Plan or herein, all distributions and rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in complete

37

satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtor

and Reorganized HTA that arose, in whole or in part, prior to the HTA Effective Date, relating to

the Title III Case, the Debtor or Reorganized Debtor or any of their respective Assets, property, or

interests of any nature whatsoever, including any interest accrued on such Claims from and after

the HTA Petition Date, and regardless of whether any property will have been distributed or

retained pursuant to the HTA Plan on account of such Claims or Causes of Action; provided,

however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan

and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor

shall it be construed, to be a grant of a non-consensual third-party release of the HTA/CCDA PSA

Creditors, and each of their respective Related Persons by any Creditors of the Debtor.  Upon the

HTA Effective Date, the Debtor and Reorganized HTA shall be deemed discharged and released

from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior

to the HTA Effective Date (including prior to the HTA Petition Date), and Claims of the kind

specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section

407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under

section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the

Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a

Claim based upon such debt voted to accept the HTA Plan.  For the avoidance of doubt, nothing

contained in the HTA Plan or herein shall release, discharge or enjoin any claims or causes of

action against PREPA arising from or related to PREPA-issued bonds, including, without

limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims

or causes of action against any non-Debtor Entity.  Claims and causes of action against PREPA

arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall

be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b)      Except as expressly provided in the HTA Plan or herein, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property, and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the HTA Plan or herein, this Order shall constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the HTA Effective Date, and in consideration for the value provided pursuant to the HTA Plan, each holder of a Claim in any Class under the HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c)      Notwithstanding any other provisions of decretal paragraph 37 of this Order or Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support

Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely

in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released

and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other

type of relief against any of the Government Releasees based upon, arising from or relating to the

Government Released Claims or any of the Claims or Causes of Action asserted or which could

have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay

Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the

Government Released Claims that is prohibited by decretal paragraph 37 of this Order and Section

41.2 of the HTA Plan.

(d)      <u>SEC Limitation</u>.  Notwithstanding anything contained herein or in the HTA Plan to

the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers,

or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes

of action, proceedings or investigations against any non-debtor person or non-debtor entity in any

forum.

(e)      <u>United States Limitation</u>.  Notwithstanding anything contained herein or in the

HTA Plan to the contrary, no provision shall (i) impair the United States, its agencies, departments,

or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from

compliance with federal laws or territorial laws and requirements implementing a federally

authorized or federally delegated program protecting the health, safety, and environment of

persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which

the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or

otherwise bar (A) any liability of the Debtor or the Reorganized Debtor to the United States arising

from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim,

(C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor

or the Reorganized Debtor, as the case may be, and such rights of setoff and recoupment of such

parties are expressly preserved, (D) the continued validity of the obligations of the United States,

the Debtor or the Reorganized Debtor, as the case may be, under any United States grant or

cooperative assistance agreement, (E) the Debtor's or the Reorganized Debtor's obligations arising

under federal police or regulatory laws, including, but not limited to, laws relating to the

environment, public health or safety, or territorial laws implementing such federal legal provisions,

including, but not limited to, compliance obligations, requirements under consent decrees or

judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F)

any liability to the United States on the part of any non-debtor.  Without limiting the foregoing,

nothing contained herein or in the HTA Plan shall be deemed (i) to determine the tax liability of

any Entity, including, but not limited to, the Debtor and the Reorganized Debtor and any obligation

of the Debtor to pay postpetition interest on any such tax liability, (ii) to be binding on the IRS

with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any

entity, including, but not limited to, the Debtor and the Reorganized Debtor, (iii) to release, satisfy,

discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor

and the Reorganized Debtor, and (iv) to grant any relief to any Entity that the Court is prohibited

from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction

Act, 26 U.S.C. § 7421(a).

(f)    Underwriter Actions.  Notwithstanding anything contained herein or in the HTA

Plan to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan,

except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan,

the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement

is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain,

enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including,

without limitation, the parties to the Underwriter Actions, from asserting their respective rights,

claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any

Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or

any rights to allocate responsibility or liability or any other basis for the reduction of (or credit

against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive

Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive

Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery

of property to any plaintiff, defendant and, to the extent named, third party defendant by the

Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality

of the Commonwealth in connection with an Underwriter Action; and, provided, further, that, no

party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the

extent named, third-party defendants, shall be permitted to assert: (i) against the Debtor or

Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary

recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan,

and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA,

the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or

counterclaims for purposes of obtaining an affirmative monetary recovery, including, without

limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the

extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or

counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the

terms and provisions of the HTA Plan and the HTA Confirmation Order; and provided, further,

that, for the avoidance of doubt, nothing in this decretal paragraph 37(f) is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action.  The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions, whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

38.    Releases by the Debtor and Reorganized Debtor.  Except as otherwise expressly provided in the HTA Plan or this Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized Debtor, the Disbursing Agent and each of the Debtor's and Reorganized Debtor's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized Debtor, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.

39.    Release and Exculpation Provisions.  Except as otherwise provided in this Order, all release and exculpation provisions, including, but not limited to, those contained in Article XLI

43

of the HTA Plan, are approved and shall be effective and binding on all Entities, to the extent provided therein.

40.     **Injunction on Claims**.  **Except as otherwise expressly provided in Section 41.11 of the HTA Plan, this Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold, or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged**

pursuant to the HTA Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.  Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

41.    **Injunction Related to Releases**.  As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under decretal paragraph 37 of this Order and Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or this Order.

42.    <u>Exculpation</u>.

(a)    <u>Government Parties</u>:  The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; <u>provided</u>, <u>however</u>, that the foregoing provisions of this subparagraph (a) or Section 41.7 of the HTA Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.  Nothing in this subparagraph (a) or Section 41.7(a) of the HTA Plan shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.

(b)    <u>HTA/CCDA PSA Creditors</u>:  Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to the HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA

Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this subparagraph (b) and Section 41.7(b) of the HTA Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(c)    Monoline Insurers:  Ambac, Assured, FGIC, National, and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the HTA Plan or in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation, or approval of the HTA Plan, including, without limitation, in connection with the treatment of Ambac Insured Bond Claims, Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the voting procedures, the election procedures, and any release of obligations under the applicable Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies; provided, however, that, notwithstanding anything contained in this Order or the HTA Plan to the contrary, the terms and provisions of the HTA Plan and this Order shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds, FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with their respective terms solely to the extent of any failure of such holder to receive the Ambac Treatment, Assured Treatment, FGIC Treatment, or National

47

Treatment, as applicable (or any claims that Ambac, Assured, FGIC, or National may have against a beneficial holder of respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National Insurance Policies, as applicable).

(d)     Creditors' Committee:  Each of the members of the Creditors' Committee, solely in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the HTA Petition Date up to and including the HTA Effective Date and each of the Creditors' Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the HTS Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and, provided, further, the foregoing provision of this decretal paragraph 42(d) and Section 41.7(d) of the HTA Plan shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(e)     The DRA Parties:  Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including HTA Effective Date, and each of the DRA Parties' respective

predecessors, successors and assigns (whether by operation of law or otherwise), and their
respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or
other representatives, each acting in such capacity, and any Entity acting for or on behalf of any
of them, in each case, solely to the extent acting in such capacity, shall not have or incur any
liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case,
mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation
or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure
Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or
document provided for or contemplated in connection with the consummation of the transactions
set forth in the HTA Plan; provided, however, that, the foregoing provisions of this subparagraph
(e) shall not affect the liability of any Entity that would otherwise result from any such act or
omission to the extent such act or omission is determined in a Final Order to have constituted
intentional fraud or willful misconduct.

43.     GUC Reserve.  On and after the Effective Date, HTA's and Reorganized HTA's
obligation to holders of Allowed HTA General Unsecured Claims shall be limited to funding the
GUC Reserve in accordance with Section 20.3 of the HTA Plan as follows: subject to the
reductions provided therein, (a) Twenty-Four Million Dollars ($24,000,000.00) on the HTA
Effective Date and (b) Twenty-Four ($24,000,000.00) on the first (1st) anniversary of the HTA
Effective Date.  Upon the GUC Reserve being funded by HTA or Reorganized HTA, as the case
may be, in accordance with Section 20.3 of the Plan, HTA and Reorganized HTA shall have no
further liability on account of such Allowed HTA General Unsecured Claims.

44.     Appointments Related Litigation/Uniformity Litigation.  Notwithstanding anything
contained herein or the HTA Plan to the contrary, in the event that a Final Order is entered in

connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of this Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, and all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan or this Order having consented and agreed, such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and this Order, including, without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan and herein; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement, or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all actions to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of the court having jurisdiction thereof.

45.    **Bar Order**.  **To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and**

consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted); provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

46. **Supplemental Injunction**. Notwithstanding anything contained herein or in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently

stayed, restrained and enjoined from taking any action against any of the Released Parties

for the purpose of directly or indirectly collecting, recovering or receiving any payment or

recovery with respect to any Released Claims arising prior to the HTA Effective Date

(including prior to the Petition Date), including, but not limited to:

(a)     Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b)     Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c)     Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d)     Except as otherwise expressly provided in the HTA Plan or this Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim;

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or this Order; provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code;

provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

47.     Term of Existing Injunctions or Stays.  Unless otherwise provided in the HTA Plan

or this Order, all injunctions or stays in effect in the Title III Cases (pursuant to sections 105, 362,

or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation

Date (excluding any injunctions or stays contained in the HTA Plan or this Order) shall remain in

full force and effect through the HTA Effective Date, except that each injunction imposed by a

Court order shall remain in effect permanently unless the order specifies a termination date or event, in which case, the specification set forth in such order shall govern. All injunctions or stays contained in the HTA Plan or this Order shall remain in full force and effect in accordance with their terms.

48. <u>Prosecution of Claims</u>. Except as settled and released herein, from and after the HTA Effective Date, the Avoidance Actions Trustee shall have the exclusive right and power to (a) litigate any and all of the Avoidance Actions and (b) compromise and settle such Avoidance Actions, upon approval of the Title III Court. The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred to the Avoidance Actions Trust for distribution in accordance with the HTA Plan and the Avoidance Actions Trust Agreement.

49. <u>Indemnification and Reimbursement Obligations</u>. For purposes of the HTA Plan, (i) to the extent executory in nature, the obligations of the Debtor, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the HTA Petition Date, shall be deemed assumed as of the HTA Effective Date and (ii) indemnification obligations of the Debtor arising from conduct of officers and directors during the period from and after the HTA Petition Date shall be Administrative Expense Claims.

50. <u>Compliance with Tax Requirements</u>. Any party issuing any instrument or making any distribution under the HTA Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state, or local tax law or Tax Authority, and all distributions under the HTA Plan shall be subject to any such withholding or reporting requirements. Except as provided above, each holder of an Allowed Claim that is to receive a

distribution under the HTA Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the HTA Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any party issuing any instrument or making any distribution under the HTA Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party.  The Disbursing Agent or the trustee of the applicable Trust may require, as a condition to the receipt of a distribution (including the applicable trust certificates), that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder.  If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

51.    <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized and directed to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the HTA Plan and this Order.

52.    <u>Fiscal Plan</u>.  For so long as the Oversight Board is in existence, the Oversight Board shall cause the HTA Fiscal Plan in effect on the HTA Effective Date, and any post-HTA Effective Date HTA Fiscal Plan certified by the Oversight Board to include provisions requiring the certified budget to provide for the payment in each FY of principal and interest payable on the New HTA Bonds, including, without limitation, sinking fund payments due in such FY.

53. <u>Oversight Board Termination and Post-Confirmation Powers</u>.  Neither the HTA Plan nor this Order shall change the duration of the Oversight Board's existence set forth in PROMESA Section 209, and neither the HTA Plan nor this Order shall alter any of the Oversight Board's powers and duties under each title of PROMESA.  Until termination of the Oversight Board pursuant to PROMESA Section 209, the Oversight Board may enforce the HTA Plan.  At all times, each party in interest may enforce HTA Plan provisions directly affecting such party in interest.

54. <u>Post-Confirmation Fiscal Plans and Budgets Remain Subject to Oversight Board's Sole Discretion</u>.  Subject to the provisions of decretal paragraph 46 hereof, nothing in the HTA Plan and nothing in this Order (a) alters the powers of the Oversight Board granted by Titles I and II of PROMESA, including its rights in its sole discretion, to amend the certified HTA Fiscal Plan and budget in effect on the HTA Effective Date and to develop and certify new fiscal plans and budgets at any times, (b) grants the government of Puerto Rico any entitlement to any provisions in certified fiscal plans and budgets, and (c) grants the government of Puerto Rico any rights and powers barred by PROMESA section 108(a).

55. <u>Government Post-Confirmation Powers and Duties</u>.  Upon termination of the Oversight Board pursuant to PROMESA Section 209, Reorganized HTA or each Entity and Person acting on behalf thereof, including, without limitation, the Reorganized HTA Board of Directors, shall enforce the HTA Plan and the transactions and obligations contemplated therein and arising therefrom.  If Reorganized HTA or any Entity or Person acting on behalf thereof, including, without limitation, any member of the Reorganized HTA Board of Directors, fails to enforce an HTA Plan provision directly or indirectly impacting a party in interest after being requested to do so by a party in interest, each party in interest that would reasonably be prejudiced or injured by

lack of enforcement may enforce the HTA Plan provision.  At no time prior or subsequent to the termination of the Oversight Board shall the Commonwealth of Puerto Rico, including, without limitation, any Entity or Person acting on behalf thereof, enact, implement, or enforce any statute, resolution, policy, or rule reasonably likely, directly or indirectly, to impair the carrying out of the HTA Plan's payment provisions, covenants, and other obligations.  Pursuant to Bankruptcy Code section 1142(b), HTA and Reorganized HTA, including, without limitation, any Entity or Person (including without limitation, the HTA and Reorganized HTA Boards of Directors, respectively) acting for or on their behalf, take all acts necessary for the consummation of the HTA Plan.

56.    Asserted Surety Claims.  Notwithstanding anything contained in the HTA Plan to the contrary, to the extent that the Claim of a surety against the Debtor is determined to be a secured claim and allowed in whole or in part, by Final Order, or by operation of section 502(a) of the Bankruptcy Code following the expiration of the period to object to any such Claim in accordance with the provisions of Section 32.1 of the HTA Plan, such Claim shall be paid in full, in Cash; provided, however, that, in the event some or all of any such Claim is determined to be an unsecured claim and allowed in whole or in part, by Final Order, such Claim shall be treated in accordance with the provisions of Section 20.1 of the HTA Plan.

57.    Reversal/Stay/Modification/Vacatur of Order.  Except as otherwise provided in this Order or a subsequent order issued by this Court or a higher court having jurisdiction over an appeal of this Order or over a *certiorari* proceeding in respect of this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of

such reversal, stay, modification, or vacatur.   Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respect by the provisions of this Order and the HTA Plan.  To the extent not specifically reversed, modified, vacated, or stayed by an order of this Court or an appellate court, all existing orders entered in the Title III Cases remain in full force and effect.

58.   <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Order or the occurrence of the HTA Effective Date, subject to the terms and provisions of Article XL of the HTA Plan, and except as otherwise provided in the HTA Plan or herein, pursuant to sections 105, 945(a), and 1142(b) of the Bankruptcy Code, for the time necessary for the successful implementation of the HTA Plan, this Court shall retain exclusive jurisdiction to the extent it has exclusive subject matter jurisdiction, and concurrent jurisdiction to the extent it has concurrent subject matter jurisdiction, over all matters arising under PROMESA, arising out of, and related to, the HTA Title III Case to the fullest extent legally permissible, including, but not limited to, subject matter jurisdiction over the matters set forth in Article XL of the HTA Plan.

59.   <u>Conflicts Among Documents</u>.  The provisions of the HTA Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; <u>provided</u>, <u>however</u>, that, in the event of any irreconcilable inconsistency (a) between the HTA Plan and this Order, the terms and provisions of this Order shall govern and be deemed a modification of the HTA Plan, (b) this Order and any other order in the Commonwealth Title III Case or the HTA Title III Case (other than the Commonwealth Confirmation Order), the terms and provisions of this Order shall control, (c) the terms and provisions of the HTA Plan and the New HTA Bonds Indenture, the terms and provisions of the New HTA Bonds Indenture shall govern; <u>provided</u>,

however, that nothing contained herein is intended, nor shall be construed, to modify the economic terms of the HTA Plan absent consent of the Oversight Board.

60. <u>Modifications</u>. Before substantial consummation of the HTA Plan, the Oversight Board may modify the HTA Plan at any time after entry of this Order, subject to any limitations set forth in the HTA Plan (including consent rights) and any stipulation approved by this Court in connection with the HTA Plan; <u>provided</u>, <u>however</u>, that the circumstances warrant such modification and the Court, after notice and a hearing, confirms such modified plan under the applicable legal requirements. For the avoidance of doubt, the HTA Plan shall not be modified except in accordance with Bankruptcy Code section 942 and the terms of this Order.

61. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the HTA Plan and this Order, including the findings of fact and conclusions of law set forth in the Findings of Fact and Conclusions of Law, are nonseverable and mutually dependent.

62. <u>Governing Law</u>. Except to the extent that other federal law is applicable, or to the extent that an exhibit to the HTA Plan or any document to be entered into in connection with the HTA Plan provides otherwise, the rights, duties, and obligations arising under the HTA Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

63. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) of the Bankruptcy Code, as applicable to the HTA Title III Case pursuant to PROMESA Section 301(a), the provisions of this Order and the HTA Plan shall apply and be enforceable notwithstanding any

otherwise applicable nonbankruptcy law.  The documents contained in the Plan Supplement and

such other documents necessary or convenient to implement the provisions of this Order and the

HTA Plan (as such documents may be further, amended, supplemented, or modified and filed with

the Court on or prior to the HTA Effective Date), including, without limitation, the New HTA

Bonds, and the New HTA Bonds Indenture, provide adequate means for implementation of the

HTA Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, and, as of the occurrence of the

HTA Effective Date, shall constitute legal, valid, and binding obligations of Reorganized HTA,

and valid provisions to pay and to secure payment of the New HTA Bonds, pursuant to section

944(b)(3) of the Bankruptcy Code, and be enforceable in accordance with their terms.

64.     _Waiver of Filings_.  Any requirement pursuant to Bankruptcy Rule 1007 obligating

the Debtor to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee

is hereby waived as to any such list, schedule, or statement not filed as of the HTA Effective Date.

65.     _Notice of Order_.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon

as reasonably practicable after the HTA Effective Date, Reorganized HTA shall serve notice of

the entry of this Order and the occurrence of the HTA Effective Date, substantially in the form

attached as _Exhibit B_ hereto, (a) to all parties in interest, by publication thereof once in each of (i)

_El Nuevo Dia_ (in Spanish), (ii) _Caribbean Business_ (in English), (iii) _El Nuevo Herald_ (in

Spanish), (iv) _The New York Times_ (in English), (v) _The Bond Buyer_ (in English), (vi) _El Vocero_

(in Spanish), and (vii) _Primera Hora_ (in Spanish), and (b) to all parties who hold a Claim in the

HTA Title III Case, as well as the Creditors' Committee, the U.S. Trustee, any party filing a notice

pursuant to Bankruptcy Rule 2002 in connection with the HTA Title III Case, the Securities and

Exchange Commission, the Internal Revenue Service, and the United States Attorney for the

District of Puerto Rico. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

66. <u>No Waiver</u>. The failure to specifically include any particular provision of the HTA Plan in this Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the HTA Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: _____
      San Juan, Puerto Rico

                                                  _____
                                                  Laura Taylor Swain
                                                  United States District Court Judge

**Exhibit A**

**HTA Plan**

**<u>Exhibit B</u>**

**Form of Notice**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>(Jointly Administered) |

**NOTICE OF (A) ENTRY OF ORDER CONFIRMING
FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO
HIGHWAYS AND TRANSPORTATION AUTHORITY PURSUANT TO
TITLE III OF PROMESA AND (B) OCCURRENCE OF THE EFFECTIVE DATE**

**TO CREDITORS AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, pursuant to an order, dated _____, 2022 [ECF No. ____] (the "Confirmation Order"), the *Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority,* dated August 7, 2022 (as amended, supplemented, or modified, the "Plan"), was confirmed by the United States District Court for the District of Puerto Rico (the "Court"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the HTA Plan and the HTA Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the HTA Effective Date of the HTA Plan occurred on _____ and the HTA Plan was substantially consummated.

PLEASE TAKE FURTHER NOTICE that any party in interest wishing to obtain copies of the Confirmation Order, the HTA Plan, and related documents should contact Prime Clerk LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoballots@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that, pursuant to Section [___] and Article [___] of the HTA Plan and decretal paragraph [___] of the Confirmation Order, the deadline for filing proofs of or requests for payment of Administrative Expense Claims ("Administrative Expense Requests") is [____], 2022; provided, however, that no proof of Administrative Expense Claim

1

shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by the Debtor during the period from and after the HTA Petition Date, (e) relates to actions occurring from and after the HTA Petition Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of any administrative expense pursuant to Bankruptcy Code section 503(b) as of the entry of the Confirmation Order; and, _provided_, _further_, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtor and Reorganized Debtor, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

PLEASE TAKE FURTHER NOTICE that, all Administrative Expense Requests should be sent to the following:

[_____]

Administrative Expense Requests will be deemed timely filed only if **actually received** by Prime Clerk by **5:00 p.m. (prevailing Atlantic Time)** on [____], 2022 (the "Administrative Deadline"). The Administrative Expense Requests may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE that, if you are required to file an Administrative Expense Request pursuant to Section [____] and Article [____] of the HTA Plan and decretal paragraph [____] of the Confirmation Order and fail to do so by the Administrative Deadline, you will be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim (and from filing an Administrative Expense Request with respect to such Administrative Expense Claim) against the Debtor and their property, and the Debtor and Reorganized Debtor will be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim.**

PLEASE TAKE FURTHER NOTICE that, pursuant to Section [____] of the HTA Plan and decretal paragraph [____] of the Confirmation Order, if the rejection of an Executory Contract and Unexpired Lease by the Debtor results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or their properties or agents, successors, or assigns, including, without limitation, the Reorganized Debtor, unless a proof of Claim is filed with the Court on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

Dated: _____               _/s/_____
San Juan, Puerto Rico

2

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*

/s/

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtor*

**<u>Exhibit C</u>**

**Preempted Laws**

**List of Statutes Preempted by PROMESA[1]**

**I.      Puerto Rico Highway and Transportation Authority Act**

    1.      Act 74, approved on June 23, 1965:

        a.   9 L.P.R.A. §§ 2004(f), (h), (j), (l), (m), (n), (q)

        b.   9 L.P.R.A. § 2004a(3)

        c.   9 L.P.R.A. § 2006

        d.   9 L.P.R.A. § 2008

        e.   9 L.P.R.A. § 2010

        f.   9 L.P.R.A. §§ 2012(a), (b), (d), (e), (g) (h)

        g.   9 L.P.R.A. §§ 2013(a), (b)

        h.    9 L.P.R.A. § 2019

        i.   9 L.P.R.A. § 2020

    2.      Act 1, approved on January 15, 2015:

        a.   9 L.P.R.A. § 2024(a)

        b.   9 L.P.R.A. §§ 2026(b), (c), (d)(first paragraph), (d)(1), (d)(2), (d)(6), (d)(7), (d)(8), (d)(9), (d)(11), (d)(12), (d)(15)

        c.   9 L.P.R.A. § 2027

        d.   9 L.P.R.A. § 2030

        e.   9 L.P.R.A. § 2032

        f.   9 L.P.R.A. § 2035

**II.     Uniform Rate Revision and Modification Act**

    1.      Act 21, approved on May 31, 1985:

---

[1]   The statutes listed herein are preempted for the reasons and solely to the extent set forth in Exhibit "A" to the Proposed Findings of Fact and Conclusions of Law.

    The Debtor reserves the right to amend this list prior to the entry of the HTA Confirmation Order.

a. 27 L.P.R.A. § 261a

b. 27 L.P.R.A. § 261b

c. 27 L.P.R.A. § 261c

d. 27 L.P.R.A. § 261d

**<u>Exhibit B</u>**

Redline

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO,<br>et al., | |
| Debtors. | |
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3567-LTS |
| as representative of | |
| THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY, | |
| Debtor. | |

**ORDER AND JUDGMENT CONFIRMING**
**~~THIRD~~FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE**
**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

# TABLE OF CONTENTS

**Page**

1.   Confirmation of the HTA Plan .................................................................... 3

2.   Objections .......................................................................................... 34

3.   Findings/Conclusions ........................................................................... 4

4.   Litigation Resolution ............................................................................ 8

5.   HTA Plan Settlements Approved ............................................................. 9

6.   Dismissal of GO/Clawback Litigation ..................................................... 9

7.   Implementation of the HTA Plan ........................................................... 910

8.   Enforceability of New Debt Instruments ................................................ 1011

9.   HTA Avoidance Actions ...................................................................... 1011

10.  Funding, Costs, and Expenses of the Avoidance Actions Trust 11 ............. 12

11.  Indemnification of Avoidance Actions Trustee and Board ....................... 12

12.  No Action ....................................................................................... 13

13.  Government Action ........................................................................... 13

14.  Oversight Board Consent Pursuant to PROMESA Section 305 ................. 14

15.  Binding Effect ................................................................................. 14

16.  Cancellation of Notes, Instruments, Certificates, and Other Documents ..... 15

17.  Rejection or Assumption of Remaining Executory Contracts and Unexpired
     Leases .......................................................................................... 1617

18.  Insurance Policies ............................................................................ 18

19.  Rejection Damages Claims .................................................................. 18

20.  Payment of Cure Amounts ................................................................. 1819

21.  Setoff ............................................................................................ 19

22.  Delivery of Distributions .................................................................... 1920

23.  Disbursing Agent ............................................................................. 25

24.  Payment of Trustee Fees and Expenses ............................................... 25

25.  Securities Laws Exemption ................................................................ 2627

26.  Acceleration of Insured Bonds ............................................................ 27

27.  Disputed Claims Reconciliation ........................................................... 2829

28.  Disputed Claims Holdback ................................................................. 2930

29.  No Amendments to Proofs of Claim ..................................................... 3031

i

| 30. | Conditions to Effective Date | ~~31~~32 |
|---|---|---|
| 31. | Administrative Claim Bar Date | ~~31~~32 |
| 32. | Professional Compensation and Reimbursement Claims | ~~32~~33 |
| 33. | HTA Consummation Costs | 33 |
| 34. | HTA Restriction Fee | ~~33~~34 |
| 35. | HTA/CCDA Clawback Structuring Fees | ~~36~~37 |
| 36. | DRA Restriction Fee | 37 |
| 37. | Discharge and Release of Claims and Causes of Action | 37 |
| 38. | Releases by the Debtor and Reorganized Debtor | 43 |
| 39. | Release and Exculpation Provisions | 43 |
| 40. | **Injunction on Claims** | ~~43~~44 |
| 41. | **Injunction Related to Releases** | ~~44~~45 |
| 42. | Exculpation | ~~45~~46 |
| 43. | GUC Reserve | 49 |
| 44. | Appointments Related Litigation | 49 |
| 45. | **Bar Order** | 50 |
| 46. | **Supplemental Injunction** | 51 |
| 47. | Term of Existing Injunctions or Stays | 52 |
| 48. | Prosecution of Claims | ~~52~~53 |
| 49. | Indemnification and Reimbursement Obligations | 53 |
| 50. | Compliance with Tax Requirements | 53 |
| 51. | Documents and Instruments | 54 |
| 52. | Fiscal Plan | 54 |
| 53. | Oversight Board Termination and Post-Confirmation Powers | ~~54~~55 |
| 54. | Post-Confirmation Fiscal Plans and Budgets Remain Subject to Oversight Board's Sole Discretion | ~~54~~55 |
| 55. | Government Post-Confirmation Powers and Duties | 55 |
| 56. | Asserted Surety Claims | 56 |
| 57. | Reversal/Stay/Modification/Vacatur of Order | ~~55~~56 |
| ~~57.~~58. | Retention of Jurisdiction | ~~56~~57 |
| ~~58.~~59. | Conflicts Among Documents | ~~56~~57 |
| ~~59.~~60. | Modifications | ~~57~~58 |
| ~~60.~~61. | Provisions of Plan and Order Nonseverable and Mutually Dependent | ~~57~~58 |

61.62.  Governing Law ............................................................. 5758

62.63.  Applicable Nonbankruptcy Law ......................................... 58

63.64.  Waiver of Filings ......................................................... 5859

64.65.  Notice of Order ........................................................... 5859

65.66.  No Waiver ................................................................. 5960

Exhibit A HTA Plan ............................................................... A-1

Exhibit B Form of Notice ......................................................... B-1

Exhibit C Preempted Laws ........................................................ C-1

The Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Debtor under PROMESA Section 315(b), having proposed and filed with the United States District Court for the District of Puerto Rico (the "Court") the ~~Third~~Fourth *Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, dated ~~June 17,~~August 7, 2022 (Docket Entry No. ~~1240~~1350 in Case No. 17-3567)[1] (as amended, supplemented, or modified prior, at, or subsequent to the HTA Confirmation Hearing as set forth in this Order through the date hereof, including the Plan Supplement, and as may be amended, supplemented, or modified pursuant to Section 313 of PROMESA, the "HTA Plan" through the date hereof);[2] and the Court having entered, pursuant to, *inter alia*, section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and a hearing, an order, dated June 22, 2022 (Docket Entry No. 1248) (the "Disclosure Statement Order"), (i) approving the adequacy of the information set forth in the Disclosure Statement, (ii) establishing procedures for the solicitation, voting, and tabulation of votes on and elections with respect to the HTA Plan, (iii) approving the forms of ballots, master ballots, and election notices used in connection therewith, and (iv) approving the form of notice of the HTA Confirmation Hearing; and the Court having entered the *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith,* dated June 22, 2022 (Docket Entry No. 1249); and the following

---

[1]   All docket entry references are to entries in Case No. 17-3567 unless otherwise indicated.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the HTA Plan, the Disclosure Statement Order, the Confirmation Brief (each as defined herein), the New HTA Bonds Indenture, or the *Findings of Fact and Conclusions of Law Regarding Confirmation of ~~Third~~Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (the "Findings of Fact and Conclusions of Law"), (Docket Entry No. _____), as applicable.  A composite copy of the HTA Plan is annexed hereto as Exhibit A.

documents having been filed by the Debtor or the HTA/CCDA PSA Creditors in support of or in connection with confirmation of the HTA Plan:

(a) Plan Supplement (Docket Entry No. [_____]1351);

(b) *Certificate**Affidavit* *of Service of Solicitation Materials* (Docket Entry ~~Nos~~No. [_____]1324) (the "Mailing Affidavit");

(c) *Affidavit of Publication and Radio Advertisements* (Docket Entry ~~Nos~~No. [_____]1342) (the "Publication & Radio Affidavit", and together with the Mailing Affidavit, the "Service Affidavits");

(d) *Omnibus Reply of the Puerto Rico Highways and Transportation Authority to Objections to Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. [_____]1361) (the "Omnibus Reply");

(e) *Memorandum of Law in Support of the* ~~Third~~*Fourth* *Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. [_____]1360) (the "Confirmation Brief"); and

(f) *Declaration of* [_____]*David Skeel* *in Respect of Confirmation of* ~~Third~~*Fourth* *Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. [_____]1357); and

(g) *Declaration of* [_____]*David M. Brownstein in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority (Docket Entry No. 1358); and*

(h) *Declaration of Ojas N. Shah in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1359); and

(i) *Declaration of Jay Herriman in Respect of Confirmation of Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Docket Entry No. 1355); and

(j) *Declaration of Christina Pullo* of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority (Docket Entry No. [      ]1356);

and objections to confirmation of the HTA Plan having been interposed by certain parties, as reflected on the docket of the HTA Title III Case and/or on the record of the HTA Confirmation Hearing; and each of the objections having been resolved, overruled, or withdrawn at, prior to, or subsequent to the HTA Confirmation Hearing;[3] and the Court having held the HTA Confirmation Hearing commencing on August 17, 2022; and the appearances of all interested parties, including members of the public selected by the Court, having been noted in the record of the HTA Confirmation Hearing; and after full consideration of the record of the Commonwealth Title III Case and the HTA Title III Case, including, without limitation, motions, applications and orders in each of such cases, the foregoing documents, and the evidence admitted and arguments of counsel presented at the HTA Confirmation Hearing; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT**:

---

[3]   All opposition submissions are also listed as part of the Court's Findings of Fact and Conclusions of Law.

1.      <u>Confirmation of the HTA Plan</u>.  The HTA Plan and each of its provisions shall be, and hereby are, CONFIRMED pursuant to Section 314(b) of PROMESA.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the HTA Plan, as amended, supplemented, or modified by the revisions made prior, at, or subsequent to the HTA Confirmation Hearing, as set forth in this Order as well as in the revised composite copy attached hereto as <u>Exhibit A</u>, include the Plan Supplement, as amended, supplemented, or modified on or prior to the date hereof, and are incorporated by reference into and are an integral part of this Order.

2.      <u>Objections</u>.  All objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the HTA Plan shall be and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

3.      <u>Findings/Conclusions</u>.  The findings of fact and conclusions of law set forth in the Court's Findings of Fact and Conclusions of Law are incorporated herein as though set forth in full.   Notwithstanding such incorporation, the following summarizes certain of the Court's determinations:

(A)     Pursuant to PROMESA, on May 21, 2017, HTA commenced a case before the Court in accordance with the requirements of Title III of PROMESA.  The commencement of this case vested the Court with exclusive jurisdiction over the case and all property of HTA, wherever located.  As a result of the consensual agreement among the Debtor and its creditor representatives, the Debtor formulated, duly solicited, and now seek confirmation of a plan of adjustment in accordance with federal law.

(B)     This Order is a final order intended to be binding on all parties in interest, and shall not be subject to collateral attack or other challenge in any other court or other forum, except as permitted under applicable law.  Confirmation of the HTA Plan constitutes a judicial determination, pursuant to Section 4 of PROMESA, that all laws, rules, and regulations giving rise to obligations of the Debtor discharged by the HTA Plan and this Order pursuant to PROMESA are preempted by PROMESA and such discharge shall prevail over any general or specific provisions of territory laws, rules, and regulations. Pursuant to PROMESA Section 4, to the extent not previously ruled

preempted pursuant to an order of the Title III Court, all laws (or such portions thereof) of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board, inconsistent with PROMESA and that affect the Debtor or Reorganized HTA , have been preempted to the extent set forth in Exhibit A to the Findings of Fact and Conclusions of Law.  Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that provide for transfers or appropriations after the enactment of PROMESA, including transfers from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose to the extent inconsistent with the HTA Plan's discharge of the Debtor's obligations.  All laws enacted from and after the commencement of the HTA Title III Case, to the extent they are inconsistent with the transactions contemplated by the HTA Plan and that affect the Debtor or Reorganized HTA are unenforceable.  Without in any way limiting the foregoing, (a) the Commonwealth laws preempted by PROMESA include, without limitation, those listed on Exhibit C hereto and (b) all litigation in which any Government Party is a defendant, over whether Commonwealth law listed on Exhibit C hereto is preempted by PROMESA shall be dismissed, with prejudice, as of the HTA Effective Date and the parties thereto shall provide the Oversight Board prompt notice of such dismissal.  For the avoidance of doubt, the non-inclusion of a payment obligation arising from a valid law in a certified fiscal plan or budget is not a basis for disallowance of such obligation to the extent the claim arising therefrom otherwise satisfies the requirements for allowance of a claim under the relevant provisions of the Bankruptcy Code.

(C)     The Court shall retain jurisdiction to enforce the terms hereof and of the HTA Plan and the Secured Obligations in accordance with their terms to ensure compliance with the HTA Plan and to adjudicate claims arising therefrom, including rights to specific performance.

(D)     At the time of issuance and delivery of the Secured Obligations, Reorganized HTA is hereby directed to cause to be stamped or written on each of the Secured Obligations a legend substantially as follows:

> DETERMINED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO PURSUANT TO 11 U.S.C. §§ 944(b) AND 1123 TO BE VALID, LEGALLY BINDING, AND ENFORCEABLE PURSUANT TO THE JUDGMENT AND CONFIRMATION ORDER, ENTERED ON THE [___] DAY OF [_____], 2022.

5

(E)    Pursuant to PROMESA, including Section 4 thereof, as well as sections 944[4] and 1123 of the Bankruptcy Code, and in accordance with this Order and the HTA Plan, the Court determines that the New HTA Bonds and the covenants by HTA, including, without limitation, the Toll Rate Covenant, for the benefit of the holders of the New HTA Bonds as provided in the New HTA Bonds

---

[4]    Section 944(b)(3) requires the Court, as a condition to providing a discharge, to determine the validity of obligations imposed under a plan of the debtor and of any provision made to pay or secure payment of such obligations. 11 U.S.C. § 944(b)(3). *See generally In re City of Stockton, Cal.*, 526 B.R. 35, 49-50 (Bankr. E.D. Cal. 2015) ("The structure of the federal-state relationship . . . regarding restructuring of municipal debt is dictated by the U.S. Constitution. . . . [T]he Supremacy Clause operates to cause federal bankruptcy law to trump state laws, including state constitutional provisions, that are inconsistent with the exercise by Congress of its exclusive power to enact uniform bankruptcy laws" (*citing Ass'n of Retired Emps. of the City of Stockton v. City of Stockton, Cal. (In re City of Stockton, Cal.)*, 478 B.R. 8, 14-16 (Bankr. E.D. Cal. 2012); U.S. Const. art. VI, cl. 2; *Int'l Bhd. of Elec. Workers, Local 2376 v. City of Vallejo, Cal. (In re City of Vallejo, Cal.)*, 432 B.R. 262, 268-70 (E.D. Cal. 2010) (additional citations omitted)). As set forth in the leading bankruptcy treatise, "[t]he requirement of a court determination of validity is extra assurance for those who might be skittish about the nature of the bonds being issued . . . . It has the added feature of removing any doubt concerning the matter, because the determination of the court on that issue should be binding in the future." 6 Alan N. Resnick & Henry J. Sommer, Collier On Bankruptcy § 944.03[1][b] (16th ed. 2013). *See, e.g.*, Amended Order and Judgment Confirming Third Amended Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation, dated February 5, 2019, and *Amended Memorandum of Findings of Face and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation,* dated February 5, 2019, ¶174 ("Confirmation of the Plan constitutes a judicial determination and, pursuant to section 4 of PROMESA and sections 944, 1123, and 1125 of the Bankruptcy Code as incorporated by section 301 of PROMESA, the terms of these Findings of Fact and Conclusions of Law shall prevail over any general or specific provision of territory law, State law or regulation that is inconsistent therewith and be full, final, complete, conclusive, and binding and shall not be subject to collateral attack or other challenge in any court or other forum, except as permitted under applicable law"); Order Confirming Third Amended Plan for the Adjustment of Debts of the City of San Bernardino, California, as Modified by the Court, dated February 7, 2017, ¶ 22 ("In accordance with Section 944(a) and notwithstanding any otherwise applicable law, upon the occurrence of the HTA Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon . . . ."); Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit, dated November 12, 2014, ¶ 86 ("[I]n accordance with section 944(a) of the Bankruptcy Code and notwithstanding any otherwise applicable law, upon the occurrence of the HTA Effective Date, the terms of the Plan and this Order shall be binding upon, and inure to the benefit of . . . ."); Findings of Fact, Conclusions of Law, Order Confirming the Chapter 9 Plan of Adjustment for Jefferson County, Alabama, dated November 6, 2013, ¶ 37, ("Pursuant to Bankruptcy Code sections 1123(a), 1123(b), and 944(a), as well as general principles of federal supremacy, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.").

Indenture, or the HTA Confirmation Order, as applicable, constitute valid, binding, legal and enforceable obligations of HTA, and Reorganized HTA under Puerto Rico, New York, and federal law.

(F)     Reorganized HTA is an independent public corporation and instrumentality of the Commonwealth of Puerto Rico, separate from the Commonwealth and any other instrumentality thereof.

(G)     The New HTA Bonds Indenture, upon the issuance of the Secured Obligations, including, without limitation, the Subordinated Indebtedness issued as a refinancing of the Commonwealth Loan, grants a first priority lien and first priority security interest on all of Reorganized HTA's legal and equitable right, title and interest in the Trust Estate, to the Secured Obligations, subject only to (1) the terms and provisions of the New HTA Bonds Indenture establishing the Authority Expense Fund and the Arbitrage Rebate Fund and (2) the senior lien and senior security interest granted in the Trust Estate for the benefit of holders of New HTA Bonds, which first-priority lien and first-priority security interest shall in all respects be senior and superior to the subordinate lien and subordinate security interest granted in the Trust Estate for the benefit of holders of Subordinated Indebtedness, in each case, as permitted by the HTA Enabling Act, and such first priority lien shall be deemed automatically perfected as of the HTA Effective Date and shall in any event be valid, binding, perfected, and enforceable against all Entities having claims of any kind in tort, contract or otherwise against Reorganized HTA or its assets, irrespective of whether such Entities have notice of such lien or security interest, without any further act or agreement by any Entity, and will be "closed" and shall remain in full force and effect until the Secured Obligations have been paid or satisfied in full in accordance with their terms.

(H)     The Pledged Revenues do not and will not constitute, nor will they be deemed to be "available resources" or "available revenues" of the Commonwealth, as such term is used in the Constitution of the Commonwealth of Puerto Rico (whether construed pursuant to the Spanish or English version of the Commonwealth Constitution).

(I)     Reorganized HTA's sole and exclusive ownership of the Pledged Revenues will not be affected in any way by the manner of or control over collection; any person who collects or holds Pledged Revenues shall do so on behalf of Reorganized HTA, and no Entity that collects or holds the Pledged Revenues shall have any legal or equitable right, title, or interest to the Pledged Revenues other than Reorganized HTA, for the benefit of the holders of the Secured Obligations.

(J)     Upon the HTA Effective Date, Reorganized HTA shall have all legal and equitable right, title, and interest in the Pledged Revenues and, except to the extent provided in the express provisions of the HTA Plan, HTA Confirmation

Order and the New HTA Bonds Indenture, shall be free and clear of all liens, claims, encumbrances, and other interests of any party.

(K)    The covenants and agreements of Reorganized HTA and the Commonwealth under the New HTA Bonds Indenture and the HTA Act, as the case may be (including, but not limited to, that described in Section 7.17 of the New HTA Bonds Indenture) will constitute adequate protection for the property interests of Reorganized HTA and the holders of Secured Obligations in the Trust Estate.

(L)    HTA has waived, and shall be deemed to have waived, the automatic stay in any future insolvency proceeding commenced on behalf of Reorganized HTA (whether under Title III of PROMESA or otherwise) with respect to Net Receipts held in the funds and accounts established in accordance with the New HTA Bonds Indenture (other than the Net Receipts in the Arbitrage Rebate Fund, established pursuant to the New HTA Bonds Indenture).

(M)    Upon execution by all parties thereto, the New HTA Bonds Indenture shall (i) have been duly and lawfully authorized by HTA and Reorganized HTA, and (ii) be in full force and effect and valid and binding upon HTA and Reorganized HTA and enforceable in accordance with their terms, except that enforceability of rights and remedies may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or as to the availability of any particular remedy.

(N)    For purposes of Section 209 of PROMESA, the discharge of debt to occur as of the HTA Effective Date pursuant to the HTA Plan and the HTA Confirmation Order is necessary for the Oversight Board to certify that expenditures do not exceed revenues for HTA, as determined in accordance with modified accrual accounting standards.

(O)    The Court's *Opinion and Order Granting Defendants' Motion to Dismiss the Complaint*, Adv. Proc. No. 21-00068-LTS, Dkt. No 83 (October 29, 2021), including, without limitation, that the GDB HTA Loans are subject to subordination to the HTA 68 Bonds and the HTA 98 Bonds qualifies as the "GDB Loan Priority Determination" for purposes of the HTA Plan.

(P)    The HTA Plan is consistent with the applicable HTA Fiscal Plan and satisfies Section 314(b)(7) of PROMESA.

4.    <u>Litigation Resolution</u>.  For the reasons stated herein and in the Findings of Fact and Conclusions of Law, the provisions of the HTA Plan constitute a good faith, reasonable, fair, and equitable compromise and settlement of all Claims and controversies resolved pursuant to the HTA Plan, including, without limitation, the compromise and settlement of asserted and

unasserted disputes concerning the rights of holders of HTA 68 Bond Claims, HTA 98 Senior

Bond Claims, HTA 98 Sub Bond Claims, CW/HTA Claims, and GDB HTA Loans, including the

disputes (a) set forth in the Debt Related Objections, (b) set forth in the Invalidity Actions, (c) set

forth in the Lien Challenge Actions, (d) raised by certain holders of CW Bond Claims, CW

Guarantee Bond Claims, and GDB HTA Loans asserting rights to receive revenues historically

conditionally appropriated to HTA, as applicable, and "clawed back" by the Commonwealth

pursuant to the provisions of the Commonwealth Constitution, (e) relating to the validity,

priority, secured status and related rights attendant to the GDB HTA Loans, and (f) set forth in

the Lift Stay Motions and the Clawback Actions relating to the CW/HTA Claims, each as

incorporated into the HTA Plan, and the entry of this Order constitutes, if required, approval of

all such compromises and settlements pursuant to Bankruptcy Rule 9019 and sections 105(a) and

1123(b)(5) of the Bankruptcy Code.  Pursuant to this Order, and to the extent provided in the

HTA Plan, on the HTA Effective Date, such compromises and settlements shall be binding upon

the Debtor, all Creditors of the Debtor, and all other Entities and, to the fullest extent permitted

by applicable law, shall not be subject to collateral attack or other challenge (other than appeals)

in any other court or forum.

5.      HTA Plan Settlements Approved.  The Court hereby approves the compromises

and settlements embodied in the HTA Plan as fair and reasonable and, as of the HTA Effective

Date of the HTA Plan, authorizes and directs the consummation thereof.

6.      Dismissal of GO/Clawback Litigation.  On the later to occur of (a) the HTA

Effective Date, (aand (b) five (5) Business Days following this Order becoming a Final Order, (1)

to the extent extant, the Debt Related Objections, the Invalidity Actions, the Lien Challenge

Actions, the Lift Stay Motions, and the Clawback Actions shall be dismissed and/or denied, with

prejudice, and (b2) the Oversight Board, by itself or through its committees, the Monolines, and the HTA/CCDA PSA Creditors (on their own account or on behalf of affiliates or related funds or accounts managed by them or by their respective affiliates) shall take any and all action reasonably necessary, including, without limitation, filing such notices, stipulations or other pleadings in the Title III Court, the United States Court of Appeals for the First Circuit and the courts of the Commonwealth of Puerto Rico, as applicable, to effectuate the dismissal of the aforementioned litigations and motions, with prejudice.

7.    <u>Implementation of the HTA Plan</u>.   On and after the HTA Effective Date, the Debtor, Reorganized HTA, and each of its respective authorized agents and representatives are authorized and directed to (a) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including, without limitation, those contained in the Plan Supplement, (b) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the HTA Plan and the Plan Supplement, (c) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the HTA Plan, including, among other things, all such actions delineated in Article XXXVIII of the HTA Plan, and (d) direct or instruct The Depository Trust Company, or such other person or entity necessary to implement or effectuate the terms of (i) the Ambac Trust, (ii) the FGIC Trust, (iii) any custodial trust, escrow arrangement, or similar structure established pursuant to Section 26.2(b) of the HTA Plan (a "<u>National Trust</u>"), (iv) any custodial trust, escrow arrangement, or similar structure established pursuant to Section 26.1(b)(ii) of the HTA Plan (an "<u>Assured Trust</u>" and together with the foregoing, the "<u>Trusts</u>"), and (v) the related Trust documentation.  Without in any way limiting the foregoing, on the HTA Effective Date, the appropriate officers or representatives of the Debtor and Reorganized HTA, as the case may be, and members of the

boards of directors of the same, as applicable, are authorized, empowered, and directed to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the HTA Plan, and make, or cause to be made, any and all distributions and transfers contemplated pursuant to, and as provided for in, the HTA Plan and the Plan Supplement, in the name of and on behalf of the Debtor and Reorganized HTA, as applicable.

8.     <u>Enforceability of New Debt Instruments</u>.  Pursuant to Bankruptcy Code section 944(b)(3), all debt instruments to be issued pursuant to the HTA Plan, including, without limitation, the New HTA Bonds Indenture and the Secured Obligations issued thereunder, will constitute, upon distribution thereof, valid legal obligations of the Debtor or Reorganized HTA, as the case may be, that issues them, and any provision made to pay or secure payment of such obligation is valid.

9.     <u>HTA Avoidance Actions</u>.   The Avoidance Actions Trust shall include the Avoidance Actions, which shall be pursued solely for the benefit of holders of Allowed HTA General Unsecured Claims.   For the avoidance of doubt, holders of Allowed HTA General Unsecured Claims shall not be beneficiaries of any causes of action held by the Avoidance Action Trust other than the Avoidance Actions.   On the Effective Date, HTA shall transfer the Avoidance Actions to the Avoidance Actions Trust and, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Avoidance Actions Trust shall have the sole right, authority, and standing to prosecute, settle or otherwise dispose of the Avoidance Actions, including, without limitation, those set forth on Exhibit A to the HTA Plan, as of the Effective Date.   The Avoidance Actions may be transferred subject to certain liabilities, including, without limitation, all counterclaims and defenses to any such Avoidance Actions, as provided in the

11

HTA Plan or the Avoidance Actions Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use of other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code.  Upon delivery of the Avoidance Actions to the Avoidance Actions Trust, HTA, Reorganized HTA, and its predecessors, successors and assigns, and each other Entity released pursuant to Section 40.2 of the HTA Plan shall be discharged and released from all liability with respect to the delivery of such distributions.

10.     <u>Funding, Costs, and Expenses of the Avoidance Actions Trust</u>.  Notwithstanding anything contained in the HTA Plan to the contrary, no additional funding shall be provided to the Avoidance Actions Trust pursuant to the HTA Plan.  The reasonable costs and expenses of the Avoidance Actions Trust, including the fees and expenses of the Avoidance Actions Trustee and its retained professionals, shall be satisfied and discharged from the funding provided to the Avoidance Actions Trust pursuant to the Commonwealth Plan and/or the proceeds from the Avoidance Actions.  Fees and expenses incurred in connection with the prosecution and settlement of any Avoidance Actions shall be considered costs and expenses of the Avoidance Actions Trust.

11.     <u>Indemnification of Avoidance Actions Trustee and Board</u> .  The Avoidance Actions Trustee, the Trust Advisory Board (as defined in the Avoidance Actions Trust Agreement), and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such Person's successors and assigns (each, an "<u>Indemnified Party</u>"), shall not be liable to the Avoidance Actions Trust Beneficiaries (as defined in the Avoidance Actions Trust Agreement, and as amended to include holders of Allowed HTA General Unsecured Claims) for actions taken or omitted in their capacity as, or on behalf of, the

Avoidance Actions Trustee or the Trust Advisory Board, as applicable, except those acts arising from their own fraud, willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement by the Avoidance Actions Trust for fees and expenses in defending any and all actions or inactions in their capacity as, or on behalf of, the Avoidance Actions Trustee or the Trust Advisory Board, as applicable, except for any actions or inactions involving fraud, willful misconduct or gross negligence.  Any indemnification claim of an Indemnified Party pursuant to Section 7.5 of the Avoidance Actions Trust Agreement shall be satisfied solely from the Avoidance Actions Trust Assets (as defined in the Commonwealth Plan) and/or the Avoidance Actions and shall be entitled to a priority distribution therefrom.  The Indemnified Parties shall be entitled to rely, in good faith, on the advice of their retained professionals.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.  For the avoidance of doubt, the Avoidance Actions Trust Agreement shall be amended to reflect the provisions in the HTA Plan and the HTA Confirmation Order relating to the Avoidance Actions.

12.    No Action.  Pursuant to section 1142(b) of the Bankruptcy Code, the Debtor, or Reorganized HTA, as the case may be, are directed to, and no further action of the directors or officers of the Debtor shall be required to authorize the Debtor or Reorganized HTA, as the case may be, to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the HTA Plan, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the HTA Plan, including, without limitation, the Plan Supplement.

13.    Government Action.  From the HTA Effective Date up to and including the satisfaction of the New HTA Bonds in accordance with their terms, (a) pursuant to Bankruptcy

Code section 1142(b), Reorganized HTA including, without limitation, any Entity or Person (including, without limitation, the Reorganized HTA Board of Directors) acting for or on behalf thereof, shall take any and all actions necessary to consummate the transactions contemplated by the HTA Plan, (b) Reorganized HTA is authorized and directed, and the Puerto Rico Department of Treasury and AAFAF, as applicable, are authorized, notwithstanding any requirements of Puerto Rico law, to execute any and all agreements necessary for the implementation of the HTA Plan and to make any payments required thereunder, including, without limitation, the New HTA Bonds Indenture and with respect to the Secured Obligations issued thereunder, and (c) pursuant to PROMESA Section 108(a)(2), no party, individual, official, or officer (elected or appointed), agency, or Entity shall enact, adopt, or implement any law, rule, regulation, or policy that (i) impedes, financially or otherwise, consummation and implementation of the transactions contemplated by the HTA Plan, including, but not limited to, those contemplated pursuant to the New HTA Bonds Indenture and the Secured Obligations issued thereunder, or (ii) creates any inconsistency in any manner, amount or event between the terms and provisions of the HTA Plan or a Fiscal Plan certified by the Oversight Board, each of which actions has been determined by the Oversight Board to impair or defeat the purposes of PROMESA. To the maximum extent permitted by law, Reorganized HTA including, without limitation, any Entity or Person (including, without limitation, the Reorganized HTA Board of Directors) acting for or on behalf thereof, is directed to take any and all actions necessary to consummate the transactions contemplated by the HTA Plan.

14.    <u>Oversight Board Consent Pursuant to PROMESA Section 305</u>. Pursuant to PROMESA Section 305, the Oversight Board consents to the entry of this Order, and, consistent with the HTA Plan and in accordance with all applicable laws and authorities, directing HTA and

14

Reorganized HTA to take all acts necessary to carry out and satisfy all obligations and distributions set forth in the HTA Plan.

15.    <u>Binding Effect</u>.  This is a full, final, and complete Order intended to be conclusive and binding on all parties in interest, is not intended to be subject to collateral attack in any other forum, and may only be challenged in accordance with applicable rules in this Court and appealed as provided in PROMESA and other applicable federal laws, rules, and jurisprudence, by (i) the Debtor, (ii) Reorganized HTA, (iii) each Entity asserting claims or other rights against HTA, including each holder of a bond claim and each holder of a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by the Debtor or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such Entity are impaired pursuant to the HTA Plan and, if impaired, whether or not such Entity accepted the HTA Plan, (iv) any other Entity, and (v) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representatives, attorneys, beneficiaries or guardians.

16.    <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>.  Pursuant to Section 28.6 of the HTA Plan, and except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the HTA Plan, (b) for purposes of evidencing a right to distribution under the HTA Plan, or (c) as specifically provided otherwise in the HTA Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 27.1 of the HTA Plan), on the HTA Effective Date, the HTA Bonds and all instruments and documents related thereto shall be deemed automatically cancelled, terminated and of no further force or effect against the Debtor without any further act or action under any

applicable agreement, law, regulation, order or rule, with the Debtor and the applicable trustee, paying agent or fiscal agent, as the case may be, having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to the Debtor under the HTA Bonds and all instruments and documents related thereto shall be discharged; provided, however, that, notwithstanding anything contained in the HTA Plan or herein to the contrary, the HTA Bonds and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the HTA Plan and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of Allowed HTA Bond Claims and Allowed Insured HTA Bond Claims to receive distributions in accordance with the terms and provisions of the HTA Plan, (iii) for any trustee, fiscal agent, agent, contract administrator or similar entity under all instruments and documents related thereto, to perform necessary functions, including making distributions, in accordance with the HTA Plan, and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than the Debtor, (v) to allow Assured and National to exercise the redemption or call rights assigned to Assured and National pursuant to the provisions of Sections 26.1 and 26.2 of the HTA Plan, respectively, or (vi) as may be necessary to preserve any claims under the respective insurance policies and related documents issued by a Monoline and the Oversight Board shall request that HTA and Reorganized HTA use their reasonable efforts to (1) maintain the existing CUSIP numbers for the Monoline-insured HTA Bonds, and (2) take such other reasonable steps as may be necessary to preserve and effectuate such Claims; and, provided, further, that, notwithstanding the foregoing or anything else contained in the HTA Plan or herein to the contrary, the HTA

Fiscal Agent shall have no duties or responsibilities with respect to any HTA Bonds that are deposited into any of the Ambac Trust, the Assured Trust, the FGIC Trust, or the National Trust from and after the HTA Effective Date.  Notwithstanding the foregoing, and except as otherwise expressly provided in the HTA Plan, such bonds or bond documents that remain outstanding shall not form the basis for the assertion of any Claim against the Debtor or Reorganized HTA, as the case may be.

17.    <u>Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases</u>.  Pursuant to section 365(b)(2) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and subject to the provisions of Sections 27.5 and 27.7 of the HTA Plan, all Executory Contracts and Unexpired Leases that exist between the Debtor and any Entity, and which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed rejected by the Debtor as of the HTA Effective Date, except for any Executory Contract and Unexpired Lease (a) that has been assumed and assigned or rejected pursuant to an order of the Title III Court entered prior to the HTA Effective Date, (b) that is specifically designated as a contract or lease to be assumed or assumed and assigned; (c) that has been registered with the Office of the Comptroller of Puerto Rico; (d) that has been exempt from registration with the Office of the Comptroller of Puerto Rico pursuant to 2 L.P.R.A. §97 and regulations promulgated pursuant thereto, (e) that has been approved by the Oversight Board or authorized by the Title III Court, unless specifically designated a contract to be rejected in the Plan Supplement, (f) with the United States, or any of its agencies, departments or agents or pursuant to any federal program or (g) by or between any Commonwealth of Puerto Rico agencies, departments, municipalities, public corporations, or instrumentalities; <u>provided, however,</u> that the Debtor reserves the right to amend, on or prior to the HTA Effective Date, such

schedules to delete any Executory Contract and Unexpired Lease therefrom or add any Executory

Contract and Unexpired Lease thereto, in which event such Executory Contract(s) and Unexpired

Lease(s) shall be deemed to be, as the case may be, either rejected, assumed, or assumed and

assigned as of the Effective Date.  The Debtor shall serve (y) notice of any Executory Contract

and Unexpired Lease to be assumed or assumed and assigned through the operation of Section

27.1 of the HTA Plan, by including a schedule of such contracts and leases in the Plan

Supplement and (z) notice of any Executory Contract and Unexpired Lease to be rejected through

the operation of Section 27.1 of the HTA Plan, by serving a separate notice to the relevant

counterparties to such agreements.  To the extent there are any amendments to such schedules,

the Debtor shall provide notice of any such amendments to the parties to the Executory Contract

and Unexpired Lease affected thereby.  The listing of a document on the schedules to the Plan

Supplement or in any separate notice shall not constitute an admission by the Debtor that such

document is an Executory Contract and Unexpired Lease or that the Debtor has any liability

thereunder.   Except as provided in Articles XXVII of the HTA Plan, none of the Debtor's

collective bargaining agreements shall be treated as Executory Contracts and none shall be

assumed or rejected or otherwise treated pursuant to the HTA Plan, but shall remain in effect

subject, in all instances, to Puerto Rico law and Section 2.5 of the HTA Plan regarding the

payment and ongoing treatment of pension and related claims obligations.

     18.   _Insurance Policies_.  Subject to the terms and provisions of Section 27.5 of the

HTA Plan, each of the Debtor's insurance policies and any agreements, documents, or

instruments relating thereto, are treated as Executory Contracts under the HTA Plan; _provided_,

_however_, that, such treatment shall not, and shall not be construed to, discharge or relieve any

Monoline with respect to its respective obligations to holders of Claims under policies of insurance and applicable law and governing documents with respect thereto.

19.    <u>Rejection Damages Claims</u>.   If the rejection of an Executory Contract and Unexpired Lease by the Debtor hereunder results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or its properties or agents, successors, or assigns, including, without limitation, Reorganized HTA, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized HTA, as the case may be, on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Title III Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

20.    <u>Payment of Cure Amounts</u>.   Any monetary amount required as a cure payment with respect to each prepetition executory contract and unexpired lease to be assumed pursuant to the HTA Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the later to occur of (a) the HTA Effective Date and (b) within ten (10) Business Days of the occurrence of a Final Order setting forth the cure amount as to each executory contract or unexpired lease to be assumed or assumed and assigned, or upon such other terms and dates as the parties to such executory contracts or unexpired leases and the Debtor or Reorganized HTA otherwise agree.

21.    <u>Setoffs</u>.   Except as otherwise provided in the HTA Plan or in this Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the HTA Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the

claims, rights, and Causes of Action of any nature that the Debtor or Reorganized HTA may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or Reorganized HTA of any such claims, rights, and Causes of Action that the Debtor or Reorganized HTA may possess against such holder; and, provided, further, that nothing contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment; and, provided, further, that nothing in this decretal paragraph or Section 28.11 of the HTA Plan shall affect the releases and injunctions provided in Article XLI of the HTA Plan or this Order.

22.    Delivery of Distributions.

(a)    Delivery of Distributions Generally.  Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in the HTA Plan or herein, distributions and deliveries to holders of Allowed Claims shall be made through The Depository Trust Company or at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address; provided, however, that, except as otherwise provided herein, distributions by the Disbursing Agent for the benefit of holders of Allowed HTA Bond Claims shall be made to the trustee or fiscal agent, as applicable, for such obligation in accordance with the respective governing documents for such obligations; and, provided, further, that, except as otherwise provided herein, the Disbursing Agent may make distributions of HTA PSA Restriction Fees and Consummation Costs in Cash to a party entitled thereto in a manner

20

mutually agreed upon between such party and the Disbursing Agent.  The trustee or fiscal agent for each such obligation (or such trustee's or fiscal agent's designee) shall, in turn, deliver the distribution to holders in the manner provided for in the applicable governing documents.  Each trustee or fiscal agent may conclusively rely upon the distribution instructions received from the Debtor, Reorganized HTA or their respective agents with respect to the delivery of distributions in accordance with the terms and provisions of the HTA Plan, including the contra-CUSIP positions and escrow positions established by the Debtor or its agents with The Depository Trust Company, and each trustee or fiscal agent shall close and terminate the original CUSIPs after making distributions in accordance with the terms and provisions of the HTA Plan and shall have no further distribution obligations thereunder.  No Trustee or fiscal agent shall be required to post any bond or surety or other security for the performance of its duties, unless otherwise ordered or directed by the Title III Court.  Subject to any agreements to the contrary, each trustee or fiscal agent shall only be required to make the distributions and deliveries described in this decretal paragraph and the HTA Plan and in accordance with the terms of this Order, the HTA Plan and such other governing document, and shall have no liability for actions reasonably taken in accordance with the terms of this Order, the HTA Plan and such other governing document, or in reasonable reliance upon information provided to such trustee or fiscal agent by the Debtor, Reorganized HTA or their respective agents in accordance with the terms of this Order, the HTA Plan or in connection with distributions to be made hereunder or thereunder, except for liabilities resulting from the gross negligence or willful misconduct of such trustee or fiscal agent.  The New HTA Bonds shall be transferable and recognized if made in accordance with the terms and conditions of the New HTA Bonds Indenture.

(b)      <u>Delivery of Distributions with Respect to National Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, (i) subject to the rights of the HTA Fiscal Agent, on the HTA Effective Date, National shall receive, and the Disbursing Agent shall disburse to National, or such other Entity as National may direct in its sole and absolute discretion, the National Plan Consideration in accordance with the terms and provisions of Section 26.2 of the HTA Plan in a manner mutually agreed upon by the Disbursing Agent and National, and (ii) National shall have all right, title, and interest in the National HTA Consideration and shall manage the National HTA Consideration in its sole and absolute discretion subject to and in accordance with its obligations under applicable insurance regulations.

(c)      <u>Delivery of Distributions with Respect to Ambac Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, on the HTA Effective Date, subject to the rights of the HTA Fiscal Agent, Ambac shall receive, and the Disbursing Agent shall disburse to Ambac, or such other Entity as Ambac may direct in its sole and absolute discretion, the Ambac Plan Consideration in accordance with the terms and provisions of Section 26.4 of the HTA Plan in a manner mutually agreed upon by the Disbursing Agent and Ambac.

(d)      <u>Delivery of Distributions with Respect to FGIC Insured Bonds</u>.  Notwithstanding any other provision of the HTA Plan or of this Order, on the HTA Effective Date, subject to the rights of the HTA Fiscal Agent, the Disbursing Agent shall distribute to FGIC its Pro Rata Share of the FGIC Plan Consideration in accordance with the terms and provisions of Section 26.3 of the HTA Plan in a manner mutually agreed upon between the Disbursing Agent and FGIC.

(e)      <u>Delivery of Distributions with Respect to Assured Insured Bonds</u>. Notwithstanding any other provision of the HTA Plan or of this Order, (i) to the extent an

Assured Insured Bondholder holding an Assured Insured Bond with CUSIP number [___] validly elects (or is deemed to elect) Assured Bondholder Election 2, the Disbursing Agent will deposit the Assured Plan Consideration allocable to such Assured Insured Bondholder in the applicable Assured Trust in accordance with the applicable trust agreement; (ii) to the extent an Assured Insured Bondholder holding the custody receipt with CUSIP number [___] evidencing a beneficial ownership interest in the Assured Insured Bond with CUSIP number [___] validly elects (or is deemed to elect) Assured Bondholder Election 2, such Assured Insured Bondholder will be deemed to have deposited such custody receipts into the applicable Assured Trust; the trustee (the "Assured Trustee") of the Assured Trusts (as the holder of the applicable custody receipts) and Assured will be deemed to have collapsed the existing custodial arrangement, such that the Assured Trustee will be deemed to hold the Assured Insured Bonds underlying the applicable custody receipts and the related Assured Insurance Policies as provided in the applicable trust agreement, without any further action on the part of the existing custodian; provided, however, that the existing custodian is also hereby authorized and ordered to take any further actions that may be necessary to confirm the collapse of the existing custodial arrangement as provided herein and in the applicable trust agreement, to deliver the applicable trust units to or for the benefit of the Assured Insured Bondholders, as provided herein and in the applicable trust agreement, and/or to otherwise give effect to the HTA Plan, this Order, and the applicable trust agreement: and the Disbursing Agent will transfer the Assured Plan Consideration allocable to such Assured Insured Bondholder to the Assured Trustee for deposit in the applicable Assured Trust on account of such custody receipts and Assured Insured Bonds in accordance with the applicable trust agreement; (iii) to the extent an Assured Insured Bondholder holding the custody receipt with CUSIP number [___] evidencing a beneficial ownership interest in the Assured

Insured Bond with CUSIP number [___] validly elects (or is deemed to elect) Assured Bondholder

Election 2, such Assured Insured Bondholder will be deemed to have deposited such custody

receipts into the applicable Assured Trust; the Assured Trustee (as the holder of the applicable

custody receipts ) and Assured will be deemed to have collapsed the existing custodial

arrangement, such that the Assured Trustee will be deemed to hold the Assured Insured Bonds

underlying the applicable custody receipts and the related Assured Insurance Policies as provided

in the applicable trust agreement, without any further action on the part of the existing custodian,

provided, however, that the existing custodian is also hereby authorized and ordered to take any

further actions that may be necessary to confirm the collapse of the existing custodial

arrangement as provided herein and in the applicable trust agreement, to deliver the applicable

trust units to or for the benefit of the applicable Assured Insured Bondholders as provided herein

and in the applicable trust agreement, and/or to otherwise give effect to the HTA Plan, this Order,

and the applicable trust agreement, and, without prejudice to the ability of the Assured Trustee to

draw on the applicable Assured Insurance Policy, the Assured Trustee shall be deemed to have

deposited such Dual-Insured Bonds, the related FGIC Insurance Policies, and the related FGIC

Plan Consideration into the applicable FGIC Trust pursuant to Section 26.1(f) of the HTA Plan;

and the trustee for the Assured Trust related to such Assured Insured Bonds shall be deemed to

have received its Pro Rata Share of the FGIC Plan Consideration, and shall receive the FGIC

Certificates allocable to such Assured Insured Bondholder on account of the custody receipts

referred to in this subsection (iii) above and Dual-Insured Bonds referred to in this subsection

(iii) above for deposit in the relevant Assured Trust in accordance with the applicable trust

agreement; (iv) pursuant to Section 26.1 of the HTA Plan, subject to the rights of the HTA Fiscal

Agent, the Disbursing Agent shall disburse the Assured Plan Consideration on account of any

Assured Insured Bonds with respect to which Assured has exercised the Assured Election or with respect to which an Assured Insured Bondholder has validly elected Assured Bondholder Election 1 directly to Assured or its designee in a manner mutually agreed upon between the Disbursing Agent and Assured; and (v) on or prior to the HTA Effective Date, the Disbursing Agent and the Debtors shall disclose to Assured the Assured Acceleration Price to be paid with respect to any Assured Insured Bonds with respect to which Assured has exercised the Assured Election or with respect to which an Assured Insured Bondholder has validly elected the Assured Bondholder Election 1, and, on the HTA Effective Date, (1) with respect to such Assured Insured Bonds insured in the primary market, the HTA Fiscal Agent shall draw down on the applicable Assured Insurance Policies to pay the applicable Assured Acceleration Price to the beneficial holders of such Assured Insured Bonds insured in the primary market in accordance with Sections 26.1(a) and 26.1(b)(i) of the HTA Plan, as applicable, and (2) with respect to such Assured Insured Bonds insured in the secondary market, Assured shall, or shall cause the applicable custodian of custody receipts evidencing the beneficial ownership interest of the holders thereof in such Assured Insured Bonds and the related Assured Insurance Policies to draw on the applicable Assured Insurance Policies in order to pay the applicable Assured Acceleration Price to the beneficial holders of such Assured Insured Bonds insured in the secondary market in accordance with Sections 26.1(a) and 26.1(b)(i) of the HTA Plan, as applicable; provided, however, that, for the avoidance of doubt, Assured shall not in any circumstance be required to pay itself an Assured Acceleration Price with respect to any Assured Insured Bonds owned by Assured, by subrogation or otherwise.

23.     Disbursing Agent.  Pursuant to Section 1.105 of the HTA Plan, the Disbursing Agent shall be, as applicable, such Entity or Entities designated by the Oversight Board, upon

consultation with AAFAF, on or prior to the HTA Effective Date to make or to facilitate distributions in accordance with the provisions of the HTA Plan and this Order.  Upon designation thereof, the Oversight Board shall file an informative motion with the Title III Court setting forth the name of the Disbursing Agent designated.

24.     <u>Payment of Trustee Fees and Expenses</u>.  The distributions to be made pursuant to the HTA Plan and the Commonwealth Confirmation Order to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims are intended to be inclusive of any and all of the HTA Fiscal Agent's fees and expenses due and owing by HTA pursuant to the applicable bond resolutions with respect to amounts discharged pursuant to the HTA Plan (the "<u>HTA Fiscal Agent's Fees and Expenses</u>").  To the extent not deducted in connection with payments made in accordance with the Commonwealth Confirmation Order upon satisfaction of the Distribution Conditions, the HTA Fiscal Agent's Fees and Expenses shall be deducted on a pro rata basis from distributions to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on account of such Claims, such that the cost of such HTA Fiscal Agent's Fees and Expenses is shared equally by all holders of the HTA 68 Bond Claims and HTA 98 Senior Bond Claims based on the amount of their Claims; <u>provided</u>, <u>however</u>, that, notwithstanding anything in the HTA Plan, the HTA Confirmation Order, or the applicable bond resolutions to the contrary, the HTA Fiscal Agent's Fees and Expenses shall not exceed $2,360,681.02. In the event amounts reserved or deducted by the HTA Fiscal Agent from the distributions to be made to holders of HTA 68 Bonds Claims and HTA 98 Senior Bond Claims exceed the HTA Fiscal Agent's Fees and Expenses, such excess amounts shall be distributed by, or at the direction of, the HTA Fiscal Agent on a pro rata basis to holders of HTA 68 Bond Claims and HTA 98 Senior Bond Claims on the HTA Effective Date (the "<u>Excess Distribution</u>"). For purposes of Section

28.13 of the HTA Plan and this decretal paragraph 21, the applicable Monolines shall constitute

the holders of the HTA 68 Bonds Claims and the HTA 98 Senior Bond Claims arising from the

HTA Bonds which are insured by any such Monoline, if any, in accordance with Section

301(c)(3) of PROMESA, applicable law, and governing insurance and other documents

applicable to such HTA Bonds; provided, however, that, notwithstanding the foregoing, (a) with

respect to any HTA 98 Senior Bonds owned by FGIC, the HTA Fiscal Agent shall make the

Excess Distribution attributable thereto, if any, to FGIC, and (b) with respect to any HTA 98

Senior Bonds insured by FGIC, but not owned by FGIC, the HTA Fiscal Agent shall make the

Excess Distribution attributable thereto, if any, to the owners of such HTA 98 Senior Bonds.

Except as otherwise provided in Section 28.13 of the HTA Plan or this decretal paragraph 24, the

HTA Plan does not, nor shall it be construed to, limit the rights of the HTA Fiscal Agent to

payment of such amounts from the distributions to be made hereunder, including, without

limitation, the imposition of any Charging Lien.

     25.   Securities Laws Exemption.  Pursuant to section 1145 of the Bankruptcy Code

and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the New

HTA Bonds pursuant to the terms of the HTA Plan and this Order (and any subsequent offering

of such securities, including, without limitation, pursuant to a case under Title VI of

PROMESA), or the custodial trusts created in accordance with Article XXVI of the HTA Plan

shall be exempt from registration under the Securities Act and any state or local law requiring

registration for the offer, issuance or distribution of securities, including, but not limited to, the

registration requirements of Section 5 of the Securities Act and any other applicable state or

federal law requiring registration and/or prospectus delivery or qualification prior to the offering,

issuance, distribution, or sale of securities, and, pursuant to Section 2(b) of the Investment

Company Act of 1940, as amended (the "Investment Company Act"), such custodial trusts,

securities and interests shall be exempt from the provisions of the Investment Company Act.

26.   Acceleration of Insured Bonds.  Notwithstanding any other provision of the HTA

Plan or this Order:

(a)   Assured Insured Bonds: Notwithstanding any other provision of the HTA Plan or this Order, to the extent that there are no outstanding payment defaults by Assured with respect to Assured Insured Bonds up to and including the HTA Effective Date, the payment of the principal of the Assured Insured Bonds shall be accelerated from and after the HTA Effective Date, and such Assured Insured Bonds shall be due and payable from and after the HTA Effective Date at the Assured Acceleration Price of one hundred percent (100%) of the principal amount thereof plus accrued interest thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.

(b)   National Insured Bonds:  Notwithstanding any other provision of the HTA Plan or this Order, to the extent that there are no outstanding payment defaults by National with respect to National Insured Bonds up to and including the HTA Effective Date, the payment of the principal of the National Insured Bonds shall be accelerated as of the Effective Date, and such National Insured Bonds shall be due and payable from and after the HTA Effective Date at the National Acceleration Price of one hundred percent (100%) of the principal amount thereof plus interest accrued thereon (or, in the case of any capital appreciation bonds, the compounded amount thereof) to the date of payment.  National shall have the right to pay the National Acceleration Price with respect to the National Insured Bonds at any time, and the holders of the National Insured Bonds and the trustee(s) or fiscal agent(s) (as applicable) shall be required to accept the same in satisfaction of National's obligations under the applicable National Insurance Policy with respect to such bonds, and, upon such payments, National's obligations under the applicable National Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the applicable National Insurance Policy or other documents related to the National Insured Bonds.  For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any National Insurance Policy unless National elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis.

(c)   FGIC Insured Bonds:  Notwithstanding any other provision of the HTA Plan, this Order, or the FGIC Insured Bonds, the payment of the principal of the FGIC Insured Bonds shall be accelerated as of the HTA Effective Date, and the FGIC Insured Bonds shall be due and payable from and after the HTA Effective Date at an "acceleration price" of one hundred percent (100%) of the principal amount thereof, plus interest accrued thereon (or, in the case of capital appreciation bonds,

the compounded amount thereof) to the date of payment; provided, however, that for the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made by FGIC under a FGIC Insurance Policy, unless FGIC elects, in its sole and absolute discretion, to make such payment(s) on an accelerated basis and FGIC has the express right to accelerate any such payment under the applicable FGIC Insurance Policy or the related agreements relating to the applicable FGIC Insured Bonds.

(d)     Ambac Insured Bonds:  Notwithstanding any other provision of the HTA Plan or the HTA Confirmation Order, to the extent that there are no outstanding payment defaults by Ambac with respect to Ambac Insured Bonds up to and including the HTA Effective Date, the principal amount (or compounded amount in the case of capital appreciation bonds) of the Ambac Insured Bonds shall be deemed accelerated and immediately due and payable as of the HTA Effective Date. Ambac shall have the right to pay the Ambac Acceleration Price with respect to such bonds at any time, and the holder of the Ambac Insured Bonds and the trustee or fiscal agent (as applicable) shall be required to accept the same in satisfaction of Ambac's obligations under the applicable Ambac Insurance Policy with respect to such bonds, and, upon such payment, Ambac's obligations under the applicable Ambac Insurance Policy shall be fully satisfied and extinguished, notwithstanding any provision of the Ambac Insurance Policy or other documents related to the Ambac Insured Bonds.  For the avoidance of doubt, notwithstanding such acceleration, there shall be no acceleration of any payment required to be made under any Ambac Insurance Policy unless Ambac elects, in its sole and absolute discretion to make such payment(s) on an accelerated basis.

27.     Disputed Claims Reconciliation.  In accordance with the terms and provisions of Section 31.132.1(b) of the HTA Plan and the HTA Committee Agreement:

(a)  The two (2) Creditors Committee appointees to the Avoidance Actions Trust Board (collectively, the "Creditor Appointees") shall (i) receive monthly updates to the claims reconciliation process, which process shall continue to be administered by the Oversight Board, with assistance of AAFAF, (ii) have the right to (A) review the claims objections and reconciliation process, including the ADR Procedures, as it relates to HTA General Unsecured Claims and Convenience Claims, regardless of the size of the asserted Claim amount, (b) ensure compliance with the exclusions from HTA General Unsecured Claims as provided in the HTA Plan, and (C) in the event that such appointees disagree with any settlement of an HTA General Unsecured Claim, for an allowed amount in excess of Five Hundred Thousand Dollars ($500,000.00), such appointees may seek relief from the Title III Court to cause (upon a showing that such settlement is not in the best interest of HTA and its creditors) the Oversight Board or AAFAF, as the case may be, to obtain approval of the Title III Court for any such settlement in accordance with the standard for approval under Bankruptcy Rule 9019.

(b) Notwithstanding anything contained in the HTA Plan to the contrary, neither the Creditor Appointees nor their advisors shall be entitled to compensation in excess of that provided pursuant to the Commonwealth Plan and the Commonwealth Confirmation Order.

(c) Without limiting the foregoing, (i) within sixty (60) days after the HTA Effective Date, the Oversight Board or AAFAF, as the case may be, through its advisors, shall provide the Creditor Appointees with a report (the "Initial Claims Report") containing (1) a register setting forth all HTA General Unsecured Claims and Convenience Claims that have not been reconciled and which are being evaluated for possible objection, (2) the status of any pending objections to HTA General Unsecured Claims and Convenience Claims, and (3) information illustrating which Claims are subject to the ACR Procedures and are to be excluded from HTA General Unsecured Claims pursuant to Section 31.732.7 of the HTA Plan, and (ii) within ten (10) days of the end of each month the Oversight Board or AAFAF, as the case may be, through its advisors, shall provide a report (the "Monthly Claims Report") containing material updates to information contained in the Initial Claims Report or a previous Monthly Claims Report, as applicable, as well as any material information omitted from such prior reports.  In addition, the Oversight Board or AAFAF, as the case may be, through its advisors, shall, upon reasonable request, periodically supply the Creditor Appointees with any other information the Creditor Appointees may reasonably request related to the claims reconciliation process.

(d) In connection with the foregoing, the Creditor Appointees, together with their counsel and advisors in such capacity, shall not be liable to any Person for actions taken or omitted in connection with the exercise of their rights hereunder except those acts arising out of their own willful misconduct or gross negligence, and each shall be entitled to indemnification and reimbursement from the GUC Reserve for fees and expenses in defending any and all actions or inaction in their capacity as Creditor Appointees under the HTA Plan, except for any actions or inactions involving willful misconduct or gross negligence.   The foregoing indemnity in respect of any Creditor Appointee shall survive any termination of such Creditor Appointee from the capacity for which they are indemnified.

28.     Disputed Claims Holdback.  From and after the HTA Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Title III Court in an amount constituting the allowed amount, or Allowed or Disallowed by Final Order of the Title III Court, Reorganized Debtor or the Disbursing Agent, as applicable, shall retain, for the benefit of each holder of a Disputed Claim, the distributions that would have been made to such holder if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated

amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims have been estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and Reorganized Debtor; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above.  To the extent the Disbursing Agent or the Reorganized Debtor, as the case may be, retains any New HTA Bonds on behalf of Disputed Claims holders, until such New HTA Bonds are distributed, the Disbursing Agent or the Reorganized Debtor, as the case may be, shall exercise voting or consent rights with respect to such obligations.

29.   No Amendments to Proofs of Claim/Objections to Claims.   As of the commencement of the HTA Confirmation Hearing, a proof of Claim may not be amended without the approval of the Title III Court.  With the exception of proofs of Claim timely filed hereafter in respect of executory contracts and unexpired leases rejected pursuant to this Order, any proof of Claim filed on or after the commencement of the HTA Confirmation Hearing is hereby barred, and the Clerk of the Court and the Debtor's Claims Agent are authorized to remove such proofs of Claims from the claims registry in the Title III Case.  Notwithstanding the provisions of Section 32.1 of the HTA Plan, (a) in the event that a Claim that has been transferred pursuant to the terms and provisions of either the ACR Order or the ADR Order is subsequently transferred back to the claims registry for determination by the Title III Court, the period in which the Reorganized Debtor, by and through the Oversight Board, or AAFAF, as the case may be, shall be extended up to and including one hundred eighty (180) days from and after the date of such notice transferring any such Claim back to the claims registry, and (b) within

thirty (30) days of the date hereof, in accordance with Section 204 of PROMESA, the Debtor or Reorganized HTA, as the case may be, shall deliver to the Oversight Board a copy of all files, documents, instruments and, to the extent applicable, pleadings requested by the Oversight Board in connection with the reconciliation of Claims, including, without limitation, Disputed Claims. Without in any way limiting the foregoing or the terms and provisions of the HTA Plan or the ACR Order, to the extent a Claim subject to the terms and provisions of the ACR Order, including, without limitation, "grievance claims" subject to the provisions of collective bargaining agreements, remain subject to the ACR Order, upon resolution thereof, such Claims shall be satisfied by the Debtor in the ordinary course.

30.   <u>Conditions to Effective Date</u>.   The HTA Plan shall not become effective unless and until the conditions set forth in Section 35.1 of the HTA Plan have been satisfied or waived in accordance with the provisions set forth in Section 35.2 of the HTA Plan.

31.   <u>Administrative Claim Bar Date</u>.   The last day to file proof of Administrative Expense Claims shall be ninety (90) days after the HTA Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and the Debtor and Reorganized HTA shall have no obligation with respect thereto; <u>provided, however</u>, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim (including a Claim for reimbursement by a member of the Creditors' Committee solely in its capacity as such member), (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by the Debtor during the period from and after the HTA Petition Date,

(e) relates to ~~actions~~transactions occurring in the ordinary course during the period from and after the HTA Petition Date up to and including the HTA Effective Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of an administrative expense pursuant to Bankruptcy Code section 503(b) as of the entry of this Order; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtor and Reorganized Debtor, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

32.     <u>Professional Compensation and Reimbursement Claims</u>.   All Entities awarded compensation or reimbursement of expenses, including, without limitation, to the fullest extent provided in respective letters of engagement or similar instruments or agreements, by the Title III Court shall be paid in full, in Cash, in the amounts allowed by the Title III Court, including, without limitation, all amounts previously awarded subject to holdbacks pursuant to orders of the Title III Court, (a) no later than the tenth (10th) calendar day (or the first Business Day to occur thereafter) after the later to occur of (i) the HTA Effective Date and (ii) the date upon which the Title III Court order allowing such Claims is deemed to be a Final Order, or (b) upon such other terms no more favorable to the claimant as may be mutually agreed upon between such claimant and the Debtor or Reorganized HTA; provided, however, that, except as provided herein or the HTA Plan, each Professional (including any member of the Creditors' Committee, in its capacity as such member) must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to the date that is one hundred twenty (120) days following the HTA Effective Date.   The Reorganized Debtor shall pay

33

compensation for professional services extended and reimbursement of expenses incurred by its

respective Professionals from and after the HTA Effective Date in the ordinary course and

without the need for Title III Court approval.

33.   HTA Consummation Costs.  Notwithstanding anything contained in the HTA Plan

or this Order to the contrary, to compensate certain parties for the cost of negotiation,

confirmation and consummation of the HTA Plan, each Initial HTA/CCDA PSA Creditor shall

be entitled to receive on the HTA Effective Date, or as soon thereafter as is practicable but in no

event later than ten (10) Business Days following the HTA Effective Date, a pro rata share of

Cash, in the form of an Allowed Administrative Expense Claim, in an amount equal to one

percent (1.00%), truncated to two decimal points, of the aggregate amount of such Initial

HTA/CCDA PSA Creditor's HTA 68 Bond Claims, HTA 68 Bond Claims (Assured), HTA 68

Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Assured),

and HTA 98 Senior Bond Claims (National) (insured or otherwise and, with respect to each of

Assured and National, including positions that it holds or has insured), without duplication, held

and/or insured by such Initial HTA/CCDA PSA Creditor as of 5:00 p.m. (EST) on May 5, 2021,

in an aggregate amount not greater than One Hundred Twenty-Five Million Dollars

($125,000,000.00).

34.   HTA Restriction Fee.  Notwithstanding anything contained in the HTA Plan or

this Order to the contrary, in exchange for executing the HTA/CCDA Plan Support Agreement,

and agreeing to all of its terms and conditions, including the agreement to "lock-up" its bonds in

accordance with the terms thereof, each HTA/CCDA PSA Restriction Fee Creditor holding or

insuring HTA 68 Bonds or HTA 98 Senior Bonds (including the applicable Monolines, to the

extent such Monolines are authorized to vote the applicable Insured HTA Bond Claims in

accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law) shall be entitled to receive the HTA PSA Restriction Fee in the form of an allowed administrative expense claim, payable in cash, at the time of consummation of the HTA Plan in an amount equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims (Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured), HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (without duplication and, to the extent any such Claims are Monoline-insured, solely to the extent an HTA/CCDA PSA Restriction Fee Creditor is authorized to vote any such Claim in accordance with Section 301(c)(3) of PROMESA, the definitive insurance documents and applicable law) held or, in the case of the Monolines held or insured, by such HTA/CCDA PSA Restriction Fee Creditor as of the expiration of the HTA/CCDA PSA Restriction Fee Period; provided, however, that each HTA/CCDA PSA Restriction Fee Creditor who acquires any HTA 68 Bonds and/or HTA 98 Senior Bonds after the Joinder Deadline (including (i) a holder of a Monoline-insured HTA Bond (other than a Monoline-insured HTA Bond insured by Assured or National, as the case may be), to the extent such HTA/CCDA PSA Restriction Fee Creditor is authorized to vote the claim with respect to such Monoline-insured HTA Bond in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law, and (ii) Assured and National, to the extent Assured or National, as applicable, is authorized to vote such Insured HTA Bond Claims in accordance with Section 301(c)(3) of PROMESA, definitive insurance documents and applicable law) shall be entitled to receive such HTA PSA Restriction Fee equal to the HTA Restriction Fee Percentage multiplied by the aggregate amount of HTA 68 Bond Claims, HTA 68 Bond Claims

(Ambac), HTA 68 Bond Claims (Assured), HTA 68 Bond Claims (National), HTA 98 Senior

Bond Claims, HTA 98 Senior Bond Claims (Ambac), HTA 98 Senior Bond Claims (Assured),

HTA 98 Senior Bond Claims (FGIC), and HTA 98 Senior Bond Claims (National) (without

duplication and, to the extent any such claims are Monoline-insured, solely to the extent an

HTA/CCDA PSA Creditor is authorized to vote any such claim in accordance with Section

301(c)(3) of PROMESA the definitive insurance documents and applicable law) held and/or

insured by such HTA/CCDA PSA Restriction Fee Creditor as of the earlier to occur of the PSA

Threshold Attainment attributable to the HTA Bond Claims and the entry of this Order; and,

provided, further, that, if an HTA/CCDA PSA Restriction Fee Creditor sells any HTA 68 Bonds

or HTA 98 Senior Bonds for which it would have been entitled to receive the HTA PSA

Restriction Fee, the purchasing party shall not be entitled to receive the HTA PSA Restriction

Fee on account thereof and such entitlement shall remain with the selling party; and, provided,

further, that, in all circumstances, the sum of the aggregate HTA PSA Restriction Fee plus the

Consummation Costs attributable to holders of HTA 68 Bond Claims, HTA 68 Bond Claims

(Assured), HTA 68 Bond Claims (National), HTA 98 Senior Bond Claims, HTA 98 Senior Bond

Claims (Assured), or HTA 98 Senior Bond Claims (National), as the case may be, shall not

exceed One Hundred Twenty-Five Million Dollars ($125,000,000.00); and, provided, further,

that, in the event the HTA/CCDA Plan Support Agreement is terminated pursuant to the terms of

Sections 7.1(b)(iii) or (c) thereof (subject to the extension provided for in Sections 7.1(b) or (c)

thereof), or the Oversight Board terminates the HTA/CCDA Plan Support Agreement for any

reason other than (i) a breach of the HTA/CCDA Plan Support Agreement by a non-Government

Party, (ii) the denial of confirmation of the HTA Plan by the Title III Court (or the Title III Court

renders a decision or states its position that it will deny confirmation absent modification of the

Commonwealth Plan or the HTA Plan, and such modification would have a material adverse effect on the Parties ability to consummate the Commonwealth Plan or the HTA Plan on terms consistent with the HTA/CCDA Plan Support Agreement, including, but not limited to, the terms set forth in the Settlement Summary annexed thereto as Exhibit "J"), or (iii) the entry of an order with respect to one or more of the matters set forth in Section 7.1(b)(ii) of the HTA/CCDA Plan Support Agreement, the aggregate HTA PSA Restriction Fee and Consummation Costs, in the amount of Twenty Million Dollars ($20,000,000.00) shall be paid, ratably, in cash, as an administrative expense claim under the HTA Plan to the Initial HTA/CCDA PSA Creditors as of the date of termination; and, provided, further, that, in all other circumstances, upon termination of the HTA/CCDA Plan Support Agreement, including, without limitation, termination of the HTA/CCDA Plan Support Agreement in accordance with other provisions of Section 7.1 thereof, no Consummation Costs or HTA PSA Restriction Fee shall be due and payable to the party to HTA/CCDA Plan Support Agreement terminating such agreement or against the party such agreement is terminated.

35.    HTA/CCDA Clawback Structuring Fees.    In consideration for the structuring of payments to be made to holders of CW/HTA Claims, CW/Convention Center Claims, CW/PRIFA Tax Claims and CW/MBA Claims, upon satisfaction of the HTA Distribution Conditions, and in accordance with the terms and provisions of Section 6.1(d) of the HTA/CCDA Plan Support Agreement and decretal paragraph 54 of the Commonwealth Confirmation Order, on the HTA Effective Date, or as soon as practicable thereafter in accordance with the terms of the HTA Plan, but in no event later than ten (10) Business Days following such date, the Commonwealth shall make payments to Assured and National in the

amounts of Thirty-Nine Million Three Hundred Thousand Dollars ($39,300,000.00) and

Nineteen Million Three Hundred Thousand Dollars ($19,300,000.00), respectively.

36.    DRA Restriction Fee.    Notwithstanding anything contained in the HTA Plan or

this Order to the contrary, in exchange for executing the DRA Stipulation, and agreeing to all of

its terms and conditions, including the agreement to "lock-up" its HTA 98 Senior Bonds and the

HTA/GBB Claims in accordance with the terms thereof, on the HTA Effective Date, or as soon

as practicable thereafter in accordance with the terms of the HTA Plan, but in no event later than

ten (10) business Days following the HTA Effective Date, DRA shall be entitled to receive the

DRA Restriction Fee.

37.    Discharge and Release of Claims and Causes of Action.

(a)    Except as expressly provided in the HTA Plan or herein, all distributions and

rights afforded under the HTA Plan shall be, and shall be deemed to be, in exchange for, and in

complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action

against the Debtor and Reorganized HTA that arose, in whole or in part, prior to the HTA

Effective Date, relating to the Title III Case, the Debtor or Reorganized Debtor or any of their

respective Assets, property, or interests of any nature whatsoever, including any interest accrued

on such Claims from and after the HTA Petition Date, and regardless of whether any property

will have been distributed or retained pursuant to the HTA Plan on account of such Claims or

Causes of Action; provided, however, that, without prejudice to the exculpation rights set forth in

Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA

Plan or this Order is intended, nor shall it be construed, to be a grant of a non-consensual

third-party release of the HTA/CCDA PSA Creditors, and each of their respective Related

Persons by any Creditors of the Debtor.    Upon the HTA Effective Date, the Debtor and

Reorganized HTA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the HTA Effective Date (including prior to the HTA Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the HTA Plan.  For the avoidance of doubt, nothing contained in the HTA Plan or herein shall release, discharge or enjoin any claims or causes of action against PREPA arising from or related to PREPA-issued bonds, including, without limitation, Monoline-issued insurance pertaining thereto, and PREPA is not releasing any claims or causes of action against any non-Debtor Entity.  Claims and causes of action against PREPA arising from or related to PREPA-issued bonds, and releases against PREPA and its assets shall be addressed in PREPA's Title III case, including, without limitation, any plan of adjustment therein.

(b)      Except as expressly provided in the HTA Plan or herein, all Entities shall be precluded from asserting any and all Claims against the Debtor and Reorganized HTA, and each of their respective Assets, property, and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to the Title III Case, the Debtor or Reorganized HTA or any of their respective Assets and property, including any interest accrued on such Claims from and after the HTA Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the HTA Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the HTA Plan or herein, this Order shall

39

constitute a judicial determination, as of the HTA Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtor and Reorganized HTA pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized HTA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the HTA Effective Date, and in consideration for the value provided pursuant to the HTA Plan, each holder of a Claim in any Class under the HTA Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized HTA, and their respective Assets and property and all such Claims.

(c)    Notwithstanding any other provisions of decretal paragraph 37 of this Order or Section 41.2 of the HTA Plan, in accordance with the provisions of the HTA/CCDA Plan Support Agreement, each of the HTA/CCDA PSA Creditors and their respective Related Persons, solely in their capacity as HTA/CCDA PSA Creditors of the Debtor, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releasees based upon, arising from or relating to the Government Released Claims or any of the Claims or Causes of Action asserted or which could have been asserted, including, without limitation, in the Clawback Actions and the Lift Stay Motions, and (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by decretal paragraph 37 of this Order and Section 41.2 of the HTA Plan.

(d)    <u>SEC Limitation</u>. Notwithstanding anything contained herein or in the HTA Plan to the contrary, no provision shall (i) preclude the SEC from enforcing its police or regulatory

powers, or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceedings or investigations against any non-debtor person or non-debtor entity in any forum.

(e)   United States Limitation.  Notwithstanding anything contained herein or in the HTA Plan to the contrary, no provision shall (i) impair the United States, its agencies, departments, or agents, or in any manner relieve the Debtor or Reorganized HTA, as the case may be, from compliance with federal laws or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory, (ii) expand the scope of any discharge, release, or injunction to which the Debtor or Reorganized HTA are entitled under Title III, and (iii) discharge, release, enjoin, or otherwise bar (A) any liability of the Debtor or the Reorganized Debtor to the United States arising from and after the HTA Effective Date, (B) any liability to the United States that is not a Claim, (C) any affirmative defense or any right of setoff or recoupment of the United States, the Debtor or the Reorganized Debtor, as the case may be, and such rights of setoff and recoupment of such parties are expressly preserved, (D) the continued validity of the obligations of the United States, the Debtor or the Reorganized Debtor, as the case may be, under any United States grant or cooperative assistance agreement, (E) the Debtor's or the Reorganized Debtor's obligations arising under federal police or regulatory laws, including, but not limited to, laws relating to the environment, public health or safety, or territorial laws implementing such federal legal provisions, including, but not limited to, compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties, and (F) any liability to the United States on the part of any non-debtor.  Without limiting the foregoing, nothing contained herein or in the HTA Plan

shall be deemed (i) to determine the tax liability of any Entity, including, but not limited to, the Debtor and the Reorganized Debtor and any obligation of the Debtor to pay postpetition interest on any such tax liability, (ii) to be binding on the IRS with regard to the federal tax liabilities, tax status, or tax filing and withholding obligations of any entity, including, but not limited to, the Debtor and the Reorganized Debtor, (iii) to release, satisfy, discharge, or enjoin the collection of any claim of the IRS against any Entity other than the Debtor and the Reorganized Debtor, and (iv) to grant any relief to any Entity that the Court is prohibited from granting by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Tax Anti-Injunction Act, 26 U.S.C. § 7421(a).

(f)     Underwriter Actions.  Notwithstanding anything contained herein or in the HTA Plan to the contrary, including, without limitation, Sections 41.2, 41.3 and 41.11 of the HTA Plan, except as may be precluded pursuant to the provisions of PROMESA, nothing in the HTA Plan, the HTA Confirmation Order or any HTA Plan-related document set forth in the Plan Supplement is intended, nor shall it be construed, to impair, alter, modify, diminish, prohibit, bar, restrain, enjoin, release, reduce, eliminate or limit the rights of the plaintiffs and defendants, including, without limitation, the parties to the Underwriter Actions, from asserting their respective rights, claims, causes of action and defenses in the Underwriter Actions, including, but not limited to, any Claims, defenses, Causes of Action, and rights of setoff or recoupment (to the extent available), or any rights to allocate responsibility or liability or any other basis for the reduction of (or credit against) any judgment in connection with the Underwriter Actions (collectively, the "Defensive Rights"); provided, however, that, for the avoidance of doubt, in no event shall any Defensive Rights be used to obtain or result in the affirmative payment of money or the affirmative delivery of property to any plaintiff, defendant and, to the extent named, third party defendant by the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other

agency or instrumentality of the Commonwealth in connection with an Underwriter Action; and, provided, further, that, no party in the Underwriter Actions, including, without limitation, plaintiffs, defendants, and, to the extent named, third-party defendants, shall be permitted to assert: (i) against the Debtor or Reorganized HTA any Claim or Cause of Action for purposes of obtaining an affirmative monetary recovery that otherwise is barred or discharged pursuant to the Bar Date Orders, the HTA Plan, and/or the HTA Confirmation Order; and/or (ii) against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, for indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery, which Claims or counterclaims shall be deemed disallowed, barred, released and discharged in accordance with the terms and provisions of the HTA Plan and the HTA Confirmation Order; and provided, further, that, for the avoidance of doubt, nothing in this decretal paragraph 37(f) is intended, nor shall it be construed, to prohibit, preclude, bar, modify, or limit in any way the ability of any defendant in any Underwriter Action to assert Defensive Rights for the purpose of reducing, eliminating, or limiting the amount of any liability or judgment in any Underwriter Action. The parties in the Underwriter Actions shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting against the Debtor, Reorganized HTA, PREPA, the Commonwealth, or any other agency or instrumentality of the Commonwealth any Claims or counterclaims for purposes of obtaining an affirmative monetary recovery, including, without limitation, indemnification, contribution, reimbursement, set-off or similar theories, to the extent asserted for purposes of obtaining an affirmative monetary recovery based upon, arising from or related to the Underwriter Actions,

whether or not such Claim or counterclaim is or can be asserted in a court, an arbitration, an administrative agency or forum, or in any other manner.

38.     <u>Releases by the Debtor and Reorganized Debtor</u>.  Except as otherwise expressly provided in the HTA Plan or this Order, on the HTA Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized Debtor, the Disbursing Agent and each of the Debtor's and Reorganized Debtor's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized Debtor, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims.

39.     <u>Release and Exculpation Provisions</u>.  Except as otherwise provided in this Order, all release and exculpation provisions, including, but not limited to, those contained in Article XLI of the HTA Plan, are approved and shall be effective and binding on all Entities, to the extent provided therein.

40.     **<u>Injunction on Claims</u>.  Except as otherwise expressly provided in Section 41.11 of the HTA Plan, this Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan or who have held, hold, or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 41.2 of the HTA Plan are permanently enjoined, from and after the HTA Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial,**

arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the HTA Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the HTA Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the HTA Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property. Notwithstanding the foregoing, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

41.    **Injunction Related to Releases**.  As of the HTA Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 41.2 of the HTA Plan, are, and shall be, permanently, forever and completely stayed, restrained,

**prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under decretal paragraph 37 of this Order and Section 41.2 of the HTA Plan; and (v) commencing or continuing in any manner, in any place or any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the HTA Plan or this Order.**

42. <u>Exculpation</u>.

(a) <u>Government Parties</u>:  The Oversight Board, AAFAF, the Debtor, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the HTA Effective Date, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation

of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this subparagraph (a) or Section 41.7 of the HTA Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct. Nothing in this subparagraph (a) or Section 41.7(a) of the HTA Plan shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the HTA Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the HTA Plan.

(b)     HTA/CCDA PSA Creditors:  Each of the HTA/CCDA PSA Creditors solely in its capacity as a party to the HTA/CCDA Plan Support Agreement and a Creditor and/or insurer, as applicable, from the Petition Date up to and including the HTA Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, acceptance, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the Disclosure Statement, the HTA/CCDA Plan Support Agreement, the Definitive Documents, or any other contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that the foregoing provisions of this subparagraph (b) and Section 41.7(b) of the HTA Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

47

(c)    Monoline Insurers:   Ambac, Assured, FGIC, National, and their respective
Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to
be taken consistent with the HTA Plan or in connection with the formulation, preparation,
dissemination, implementation, acceptance, confirmation, or approval of the HTA Plan,
including, without limitation, in connection with the treatment of Ambac Insured Bond Claims,
Assured Insured Bond Claims, FGIC Insured Bond Claims, or National Insured Bond Claims, the
voting procedures, the election procedures, and any release of obligations under the applicable
Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance Policies, or National
Insurance Policies; provided, however, that, notwithstanding anything contained in this Order or
the HTA Plan to the contrary, the terms and provisions of the HTA Plan and this Order shall not,
and shall not be construed to, release or exculpate, any payment obligation under the applicable
Ambac Insurance Policy, Assured Insurance Policy, FGIC Insurance Policy, or National
Insurance Policy, to any beneficial holder of Ambac Insured Bonds, Assured Insured Bonds,
FGIC Insured Bonds or National Insured Bonds, as applicable, in accordance with their
respective terms solely to the extent of any failure of such holder to receive the Ambac
Treatment, Assured Treatment, FGIC Treatment, or National Treatment, as applicable (or any
claims that Ambac, Assured, FGIC, or National may have against a beneficial holder of
respective insured bonds with respect to Ambac's, Assured's, FGIC's, or National's applicable
obligations under the Ambac Insurance Policies, Assured Insurance Policies, FGIC Insurance
Policies, or National Insurance Policies, as applicable).

(d)    Creditors' Committee:  Each of the members of the Creditors' Committee, solely
in its capacity as a member of the Creditors' Committee, and the Creditors' Committee, from the
HTA Petition Date up to and including the HTA Effective Date and each of the Creditors'

Committee's Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein, the HTS Disclosure Statement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, notwithstanding the foregoing exculpation, in the event that litigation is commenced against a member of the Creditors' Committee with respect to the aforementioned actions, such member shall be entitled to be reimbursed for reasonable attorneys' fees and expenses incurred and indemnified for any damages awarded, in each case, by HTA pursuant to a Final Order; and, provided, further, the foregoing provision of this decretal paragraph 42(d) and Section 41.7(d) of the HTA Plan shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(e)     The DRA Parties:  Each of the DRA and the DRA Parties, from the HTA Petition Date up to and including the HTA Effective Date, and each of the DRA Parties' respective predecessors, successors and assigns (whether by operation of law or otherwise), and their respective financial advisors, attorneys, accountants, consultants, agents, and professionals, or other representatives, each acting in such capacity, and any Entity acting for or on behalf of any of them, in each case, solely to the extent acting in such capacity, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, mediation, the negotiation, formation, preparation, dissemination, implementation, confirmation or approval of the HTA Plan or any compromises or settlements contained therein,

49

the Disclosure Statement, the DRA Stipulation, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the HTA Plan; provided, however, that, the foregoing provisions of this subparagraph (e) shall not affect the liability of any Entity that would otherwise result from any such act or omission to the extent such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

43.    GUC Reserve.  On and after the Effective Date, HTA's and Reorganized HTA's obligation to holders of Allowed HTA General Unsecured Claims shall be limited to funding the GUC Reserve in accordance with Section 20.3 of the HTA Plan as follows: subject to the reductions provided therein, (a) Twenty-Four Million Dollars ($24,000,000.00) on the HTA Effective Date and (b) Twenty-Four ($24,000,000.00) on the first (1st) anniversary of the HTA Effective Date.  Upon the GUC Reserve being funded by HTA or Reorganized HTA, as the case may be, in accordance with Section 20.3 of the Plan, HTA and Reorganized HTA shall have no further liability on account of such Allowed HTA General Unsecured Claims.

44.    Appointments Related Litigation/Uniformity Litigation.    Notwithstanding anything contained herein or the HTA Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation or the Uniformity Litigation subsequent to entry of this Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the HTA Plan and documents and instruments related hereto, and all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the HTA Plan or this Order having consented and agreed, such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the HTA Plan and this Order, including,

without limitation, the releases, exculpations and injunctions provided pursuant to Article XLI of the HTA Plan and herein; provided, however, that, to the extent that a plaintiff in the Appointments Related Litigation or the Uniformity Litigation is a party to any of the GO/PBA Plan Support Agreement, the HTA/CCDA Plan Support Agreement, the PRIFA Plan Support Agreement, or the ERS Stipulation, within five (5) Business Days of the HTA Effective Date, such plaintiff shall take any and all actions to dismiss, with prejudice, or, in the event other plaintiffs are party to such litigations, withdraw from, with prejudice, such Appointments Related Litigation or Uniformity Litigation, as the case may be, including, without limitation, filing notices of dismissal or withdrawal with the clerk of the court having jurisdiction thereof.

45.     **Bar Order**.  **To the limited extent provided in the HTA Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all Claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the HTA Plan, the negotiation and consummation of the HTA/CCDA Plan Support Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Title III Case, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or otherwise relating to the Title III Case, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts,**

facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the related actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted); provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

46.   **Supplemental Injunction**.  Notwithstanding anything contained herein or in the HTA Plan to the contrary, except to the limited extent provided in the HTA Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the United States or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the HTA Effective Date (including prior to the Petition Date), including, but not limited to:

(a)   Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b)      Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(c)      Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d)      Except as otherwise expressly provided in the HTA Plan or this Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim;

(e)      Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the HTA Plan or this Order; provided, however, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the HTA Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code;

provided, however, that, without prejudice to the exculpation rights set forth in Section 41.7 of the HTA Plan and decretal paragraph 42 hereof, nothing contained in the HTA Plan or this Order is intended, nor shall it be construed, to be a non-consensual third-party release of the HTA/CCDA PSA Creditors and of their respective Related Persons by Creditors of the Debtor.

47.      Term of Existing Injunctions or Stays.  Unless otherwise provided in the HTA Plan or this Order, all injunctions or stays in effect in the Title III Cases (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the HTA Plan or this Order) shall remain in full force and effect through the HTA Effective Date, except that each injunction imposed by a Court order shall remain in effect permanently unless the order specifies a termination date or event, in which case, the specification set forth in such order shall govern. All injunctions or stays contained in the HTA Plan or this Order shall remain in full force and effect in accordance with their terms.

48.      Prosecution of Claims.  Except as settled and released herein, from and after the HTA Effective Date, the Avoidance Actions Trustee shall have the exclusive right and power to

(a) litigate any and all of the Avoidance Actions and (b) compromise and settle such Avoidance Actions, upon approval of the Title III Court.   The net proceeds of any such litigation or settlement (after satisfaction of all costs and expenses incurred in connection therewith) shall be transferred to the Avoidance Actions Trust for distribution in accordance with the HTA Plan and the Avoidance Actions Trust Agreement.

49.   <u>Indemnification and Reimbursement Obligations</u>.  For purposes of the HTA Plan, (i) to the extent executory in nature, the obligations of the Debtor, including, without limitation, directors and officers insurance policies, to indemnify and reimburse its directors or officers that were directors or officers, respectively, on or prior to the HTA Petition Date, shall be deemed assumed as of the HTA Effective Date and (ii) indemnification obligations of the Debtor arising from conduct of officers and directors during the period from and after the HTA Petition Date shall be Administrative Expense Claims.

50.   <u>Compliance with Tax Requirements</u>.  Any party issuing any instrument or making any distribution under the HTA Plan shall comply with all applicable withholding and reporting requirements imposed by any United States federal, state, or local tax law or Tax Authority, and all distributions under the HTA Plan shall be subject to any such withholding or reporting requirements.  Except as provided above, each holder of an Allowed Claim that is to receive a distribution under the HTA Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Taxes imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the HTA Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such withholding tax obligations and, if any

party issuing any instrument or making any distribution under the HTA Plan fails to withhold with respect to any such holder's distribution, and is later held liable for the amount of such withholding, the holder shall reimburse such party. The Disbursing Agent or the trustee of the applicable Trust may require, as a condition to the receipt of a distribution (including the applicable trust certificates), that the holder complete the appropriate Form W-8 or Form W-9, as applicable to each holder. If the holder fails to comply with such a request within one year, such distribution shall be deemed an Unclaimed Distribution.

51. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized and directed to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the HTA Plan and this Order.

52. <u>Fiscal Plan</u>. For so long as the Oversight Board is in existence, the Oversight Board shall cause the HTA Fiscal Plan in effect on the HTA Effective Date, and any post-HTA Effective Date HTA Fiscal Plan certified by the Oversight Board to include provisions requiring the certified budget to provide for the payment in each FY of principal and interest payable on the New HTA Bonds, including, without limitation, sinking fund payments due in such FY.

53. <u>Oversight Board Termination and Post-Confirmation Powers</u>. Neither the HTA Plan nor this Order shall change the duration of the Oversight Board's existence set forth in PROMESA Section 209, and neither the HTA Plan nor this Order shall alter any of the Oversight Board's powers and duties under each title of PROMESA. Until termination of the Oversight Board pursuant to PROMESA Section 209, the Oversight Board may enforce the HTA Plan. At all times, each party in interest may enforce HTA Plan provisions directly affecting such party in interest.

54.     <u>Post-Confirmation Fiscal Plans and Budgets Remain Subject to Oversight Board's
Sole Discretion</u>.  Subject to the provisions of decretal paragraph 46 hereof, nothing in the HTA

Plan and nothing in this Order (a) alters the powers of the Oversight Board granted by Titles I

and II of PROMESA, including its rights in its sole discretion, to amend the certified HTA Fiscal

Plan and budget in effect on the HTA Effective Date and to develop and certify new fiscal plans

and budgets at any times, (b) grants the government of Puerto Rico any entitlement to any

provisions in certified fiscal plans and budgets, and (c) grants the government of Puerto Rico any

rights and powers barred by PROMESA section 108(a).

55.     <u>Government Post-Confirmation Powers and Duties</u>.  Upon termination of the

Oversight Board pursuant to PROMESA Section 209, Reorganized HTA or each Entity and

Person acting on behalf thereof, including, without limitation, the Reorganized HTA Board of

Directors, shall enforce the HTA Plan and the transactions and obligations contemplated therein

and arising therefrom.  If Reorganized HTA or any Entity or Person acting on behalf thereof,

including, without limitation, any member of the Reorganized HTA Board of Directors, fails to

enforce an HTA Plan provision directly or indirectly impacting a party in interest after being

requested to do so by a party in interest, each party in interest that would reasonably be

prejudiced or injured by lack of enforcement may enforce the HTA Plan provision.  At no time

prior or subsequent to the termination of the Oversight Board shall the Commonwealth of Puerto

Rico, including, without limitation, any Entity or Person acting on behalf thereof, enact,

implement, or enforce any statute, resolution, policy, or rule reasonably likely, directly or

indirectly, to impair the carrying out of the HTA Plan's payment provisions, covenants, and other

obligations.   Pursuant to Bankruptcy Code section 1142(b), HTA and Reorganized HTA,

including, without limitation, any Entity or Person (including without limitation, the HTA and

Reorganized HTA Boards of Directors, respectively) acting for or on their behalf, take all acts necessary for the consummation of the HTA Plan.

56.     Asserted Surety Claims.  Notwithstanding anything contained in the HTA Plan to the contrary, to the extent that the Claim of a surety against the Debtor is determined to be a secured claim and allowed in whole or in part, by Final Order, or by operation of section 502(a) of the Bankruptcy Code following the expiration of the period to object to any such Claim in accordance with the provisions of Section 32.1 of the HTA Plan, such Claim shall be paid in full, in Cash; provided, however, that, in the event some or all of any such Claim is determined to be an unsecured claim and allowed in whole or in part, by Final Order, such Claim shall be treated in accordance with the provisions of Section 20.1 of the HTA Plan.

57.     56. Reversal/Stay/Modification/Vacatur of Order.  Except as otherwise provided in this Order or a subsequent order issued by this Court or a higher court having jurisdiction over an appeal of this Order or over a *certiorari* proceeding in respect of this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respect by the provisions of this Order and the HTA Plan.  To the extent not specifically reversed, modified, vacated, or stayed by an order of this Court or an appellate court, all existing orders entered in the Title III Cases remain in full force and effect.

58.   ~~57.~~ Retention of Jurisdiction.   Notwithstanding the entry of this Order or the occurrence of the HTA Effective Date, subject to the terms and provisions of Article XL of the HTA Plan, and except as otherwise provided in the HTA Plan or herein, pursuant to sections 105, 945(a), and 1142(b) of the Bankruptcy Code, for the time necessary for the successful implementation of the HTA Plan, this Court shall retain exclusive jurisdiction to the extent it has exclusive subject matter jurisdiction, and concurrent jurisdiction to the extent it has concurrent subject matter jurisdiction, over all matters arising under PROMESA, arising out of, and related to, the HTA Title III Case to the fullest extent legally permissible, including, but not limited to, subject matter jurisdiction over the matters set forth in Article XL of the HTA Plan.

59.   ~~58.~~ Conflicts Among Documents.   The provisions of the HTA Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that, in the event of any irreconcilable inconsistency (a) between the HTA Plan and this Order, the terms and provisions of this Order shall govern and be deemed a modification of the HTA Plan, (b) this Order and any other order in the Commonwealth Title III Case or the HTA Title III Case (other than the Commonwealth Confirmation Order), the terms and provisions of this Order shall control, (c) the terms and provisions of the HTA Plan and the New HTA Bonds Indenture, the terms and provisions of the New HTA Bonds Indenture shall govern; provided, however, that nothing contained herein is intended, nor shall be construed, to modify the economic terms of the HTA Plan absent consent of the Oversight Board.

60.   ~~59.~~ Modifications.   Before substantial consummation of the HTA Plan, the Oversight Board may modify the HTA Plan at any time after entry of this Order, subject to any limitations set forth in the HTA Plan (including consent rights) and any stipulation approved by this Court in connection with the HTA Plan; provided, however, that the circumstances warrant

such modification and the Court, after notice and a hearing, confirms such modified plan under the applicable legal requirements.  For the avoidance of doubt, the HTA Plan shall not be modified except in accordance with Bankruptcy Code section 942 and the terms of this Order.

61.    60.  Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the HTA Plan and this Order, including the findings of fact and conclusions of law set forth in the Findings of Fact and Conclusions of Law, are nonseverable and mutually dependent.

62.    61.  Governing Law.  Except to the extent that other federal law is applicable, or to the extent that an exhibit to the HTA Plan or any document to be entered into in connection with the HTA Plan provides otherwise, the rights, duties, and obligations arising under the HTA Plan shall be governed by, and construed and enforced in accordance with, PROMESA (including the provisions of the Bankruptcy Code made applicable under Section 301 of PROMESA) and, to the extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to principles of conflicts of laws.

63.    62.  Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) of the Bankruptcy Code, as applicable to the HTA Title III Case pursuant to PROMESA Section 301(a), the provisions of this Order and the HTA Plan shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.  The documents contained in the Plan Supplement and such other documents necessary or convenient to implement the provisions of this Order and the HTA Plan (as such documents may be further, amended, supplemented, or modified and filed with the Court on or prior to the HTA Effective Date), including, without limitation, the New HTA Bonds, and the New HTA Bonds Indenture, provide adequate means for implementation of the HTA Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, and,

as of the occurrence of the HTA Effective Date, shall constitute legal, valid, and binding obligations of Reorganized HTA, and valid provisions to pay and to secure payment of the New HTA Bonds, pursuant to section 944(b)(3) of the Bankruptcy Code, and be enforceable in accordance with their terms.

64. ~~63.~~ Waiver of Filings. Any requirement pursuant to Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is hereby waived as to any such list, schedule, or statement not filed as of the HTA Effective Date.

65. ~~64.~~ Notice of Order. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the HTA Effective Date, Reorganized HTA shall serve notice of the entry of this Order and the occurrence of the HTA Effective Date, substantially in the form attached as Exhibit B hereto, (a) to all parties in interest, by publication thereof once in each of (i) *El Nuevo Dia* (in Spanish), (ii) *Caribbean Business* (in English), (iii) *El Nuevo Herald* (in Spanish), (iv) *The New York Times* (in English), (v) *The Bond Buyer* (in English), (vi) *El Vocero* (in Spanish), and (vii) *Primera Hora* (in Spanish), and (b) to all parties who hold a Claim in the HTA Title III Case, as well as the Creditors' Committee, the U.S. Trustee, any party filing a notice pursuant to Bankruptcy Rule 2002 in connection with the HTA Title III Case, the Securities and Exchange Commission, the Internal Revenue Service, and the United States Attorney for the District of Puerto Rico. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

66.   65. No Waiver.  The failure to specifically include any particular provision of the

HTA Plan in this Order shall not diminish the effectiveness of such provision nor constitute a

waiver thereof, it being the intent of this Court that the HTA Plan is confirmed in its entirety and

incorporated herein by this reference.

Dated: _____
        San Juan, Puerto Rico

                                        _____
                                        Laura Taylor Swain
                                        United States District Court Judge

**<u>Exhibit A</u>**

**HTA Plan**

**Exhibit B**

**Form of Notice**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>　　　Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>(Jointly Administered) |

### NOTICE OF (A) ENTRY OF ORDER CONFIRMING ~~THIRD~~FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY PURSUANT TO TITLE III OF PROMESA AND (B) OCCURRENCE OF THE EFFECTIVE DATE

**TO CREDITORS AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, pursuant to an order, dated _____, 2022 [ECF No. ____] (the "Confirmation Order"), the *~~Third~~Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority,* dated ~~June 17,~~August 7, 2022 (as amended, supplemented, or modified, the "Plan"), was confirmed by the United States District Court for the District of Puerto Rico (the "Court"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the HTA Plan and the HTA Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the HTA Effective Date of the HTA Plan occurred on _____ and the HTA Plan was substantially consummated.

PLEASE TAKE FURTHER NOTICE that any party in interest wishing to obtain copies of the Confirmation Order, the HTA Plan, and related documents should contact Prime Clerk LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoballots@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that, pursuant to Section [____] and Article [____] of the HTA Plan and decretal paragraph [____] of the Confirmation Order, the deadline for filing proofs of or requests for payment of Administrative Expense Claims ("Administrative Expense

~~B-~~ 1

Requests") is [_____], 2022; <u>provided, however</u>, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim (a) shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of the applicable Government Parties expressly granting such Administrative Expense Claim, (b) is a Professional Claim, (c) is an intergovernmental Claim, (d) is an Administrative Expense Claim of the IRS for the payment of taxes incurred by the Debtor during the period from and after the HTA Petition Date, (e) relates to actions occurring from and after the HTA Petition Date, (f) relates to a Claim that is subject to the provisions of the ACR Order, including, without limitation, "grievance claims" relating to any of the Debtor's collective bargaining agreements, or (g) is the subject of a pending motion seeking allowance of any administrative expense pursuant to Bankruptcy Code section 503(b) as of the entry of the Confirmation Order; and, <u>provided, further</u>, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of the Debtor and Reorganized Debtor, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

PLEASE TAKE FURTHER NOTICE that, all Administrative Expense Requests should be sent to the following:

[_____]

Administrative Expense Requests will be deemed timely filed only if **actually received** by Prime Clerk by **5:00 p.m. (prevailing Atlantic Time)** on [_____], 2022 (the "<u>Administrative Deadline</u>"). The Administrative Expense Requests may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE that, if you are required to file an Administrative Expense Request pursuant to Section [_____] and Article [_____] of the HTA Plan and decretal paragraph [_____] of the Confirmation Order and fail to do so by the Administrative Deadline, you will be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim (and from filing an Administrative Expense Request with respect to such Administrative Expense Claim) against the Debtor and their property, and the Debtor and Reorganized Debtor will be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim.**

PLEASE TAKE FURTHER NOTICE that, pursuant to Section [_____] of the HTA Plan and decretal paragraph [_____] of the Confirmation Order, if the rejection of an Executory Contract and Unexpired Lease by the Debtor results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or their properties or agents, successors, or assigns, including, without limitation, the Reorganized Debtor, unless a proof of Claim is filed with the Court on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

Dated: _____          <u>/s/</u>_____
San Juan, Puerto Rico

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Debtor*

/s/                                        

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Debtor*

**Exhibit C**

**Preempted Laws**

I. **Puerto Rico Highway and Transportation Authority Act**

    1.    Act 74, approved on June 23, 1965:

        a.  9 L.P.R.A. §§ 2004(f), (h), (j), (l), (m), (n), (q)

        b.  9 L.P.R.A. § 2004a(3)

        c.  9 L.P.R.A. § 2006

        d.  9 L.P.R.A. § 2008

        e.  9 L.P.R.A. § 2010

        f.  9 L.P.R.A. §§ 2012(a), (b), (d), (e), (g) (h)

        g.  9 L.P.R.A. §§ 2013(a), (b)

        h.   9 L.P.R.A. § 2019

        i.  9 L.P.R.A. § 2020

    2.    Act 1, approved on January 15, 2015:

        a.  9 L.P.R.A. § 2024(a)

        b.  9 L.P.R.A. §§ 2026(b), (c), (d)(first paragraph), (d)(1), (d)(2), (d)(6), (d)(7), (d)(8), (d)(9), (d)(11), (d)(12), (d)(15)

        c.  9 L.P.R.A. § 2027

        d.  9 L.P.R.A. § 2030

        e.  9 L.P.R.A. § 2032

        f.  9 L.P.R.A. § 2035

II. **Uniform Rate Revision and Modification Act**

    1.    Act 21, approved on May 31, 1985:

        a.  27 L.P.R.A. § 261a

        b.  27 L.P.R.A. § 261b

        c.  27 L.P.R.A. § 261c

d.   27 L.P.R.A. § 261d

Document comparison by Workshare 9.5 on Sunday, August 7, 2022 4:18:35 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\na.proskauer.com\firm\Home\CH1\10109\Desktop\HTA Confirmation\Confirmatin Order 7.20.22\Proposed HTA Confirmation Order (As Filed 7.20.22).DOCX |
| Description | Proposed HTA Confirmation Order (As Filed 7.20.22) |
| Document 2 ID | \\na.proskauer.com\firm\Home\CH1\10109\Desktop\8.7.22\Proposed HTA Confirmation Order (As Filed 8.7.22).DOCX |
| Description | \\na.proskauer.com\firm\Home\CH1\10109\Desktop\8.7.22\Proposed HTA Confirmation Order (As Filed 8.7.22).DOCX |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 95 |
| Deletions | 83 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |

| Total changes | 178 |
|---|---|