```
 1                    UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
      In Re:                     )        Docket No. 3:17-BK-3283(LTS)
 4                               )
                                 )        PROMESA Title III
 5    The Financial Oversight and )
      Management Board for        )
 6    Puerto Rico,               )        (Jointly Administered)
                                 )
 7    as representative of        )
                                 )
 8    The Commonwealth of         )
      Puerto Rico, et al.        )        August 8, 2022
 9                               )
                  Debtors,      )
10

11    _____

12    In Re:                     )        Docket No. 3:17-BK-3567(LTS)
                                 )
13                               )        PROMESA Title III
      The Financial Oversight and )
14    Management Board for        )
      Puerto Rico,               )        (Jointly Administered)
15                               )
      as representative of        )
16                               )
      The Puerto Rico Highways    )
17    and Transportation          )
      Authority,                 )
18                               )
                  Debtors,      )
19
      _____
20

21

22

23

24

25
```

```
 1   _____

 2

 3                          PRETRIAL CONFERENCE

 4       BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

 5                   UNITED STATES DISTRICT COURT JUDGE

 6         AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

 7                   UNITED STATES DISTRICT COURT JUDGE

 8   _____

 9
     APPEARANCES:
10
     ALL PARTIES APPEARING VIA ZOOM
11
     For The Commonwealth
12   of Puerto Rico, et al.:  Mr. Brian S. Rosen, PHV
                              Mr. Michael Firestein, PHV
13
     For Puerto Rico Fiscal
14   Agency and Financial
     Advisory Authority:      Mr. Peter Friedman, PHV
15
     For Assured Guaranty
16   Corp. and Assured
     Guaranty Municipal Corp: Mr. William J. Natbony, PHV
17
     For HTA Insured
18   Bondholder Group:        Mr. Matthew Madden, PHV

19   For The Vazquez
     Velazquez Group:         Mr. John E. Mudd, Esq.
20

21

22

23

24
     Proceedings recorded by stenography.  Transcript produced by
25   CAT.
```

```
 1                          I N D E X

 2    WITNESSES:                                    PAGE

 3          None.

 4

 5    EXHIBITS:

 6          None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          San Juan, Puerto Rico

2          August 8, 2022

3          At or about 9:00 AM

4                    *     *     *

5          THE COURT:  Buenos dias.  Would the courtroom deputy

6    please announce the case?

7          COURTROOM DEPUTY:  Good morning, Your Honor.

8          The United States District Court for the District of

9    Puerto Rico is now in session.  The Honorable Laura Taylor

10   Swain presiding.  Also sitting, the Honorable Magistrate Judge

11   Judith Dein.  God save the United States of America and this

12   Honorable Court.

13          *In re: The Financial Oversight and Management Board*

14   *for Puerto Rico, as representative of the Commonwealth of*

15   *Puerto Rico, et al.*, PROMESA, Title III, case no. 17-BK-3283;

16   *In re: The Financial Oversight and Management Board for Puerto*

17   *Rico, as representative of the Puerto Rico Highways and*

18   *Transportation Authority*, PROMESA, Title III, case no.

19   2017-3567, for pretrial conference.

20          THE COURT:  Thank you.

21          Would those who are participating by Zoom on video

22   please turn your cameras on for these introductory remarks and

23   instructions and keep your microphones muted.

24          Welcome counsel, parties in interest, and members of

25   the public and press.  To ensure the orderly operation of

1  today's virtual hearing once we turn to our agenda items, all

2  parties appearing by Zoom must mute their microphones when

3  they're not speaking and turn off their video cameras if

4  they're not directly involved in the presentation or argument.

5  When you need to speak, you must turn your camera on and

6  unmute your microphone on the Zoom screen.

7         I remind everyone that consistent with court and

8  judicial conference policies, and the orders that have been

9  issued, no recording or retransmission of the hearing is

10  permitted by anyone, including but not limited to the parties,

11  members of the public, and the press.  Violations of this rule

12  may be punished with sanctions.

13         I will be calling on each speaker during the

14  proceedings.  When I do, please turn your camera on, unmute

15  yourself, and identify yourself by name for clarity of the

16  record.  After the speakers listed on the agenda for each of

17  today's matters have spoken, I may permit other parties in

18  interest to address briefly any issues raised during the

19  presentations that require further remarks.  If you wish to be

20  heard under these circumstances, please use the "raise hand"

21  feature at the appropriate time.  That feature can be accessed

22  through the reactions icon in the tool bar located at the

23  bottom of your Zoom screen, and after I've called on the

24  speakers one by one and you are done speaking, the "lower

25  hand" feature is available in that same reactions icon.

1          Please don't interrupt each other or me during the

2     hearing.  If we interrupt each other, it's difficult to create

3     an accurate transcript of the proceedings.  Now, I apologize

4     in advance for breaking this rule as I may interrupt if I have

5     questions or if you go beyond your allotted time, and if

6     anyone has difficulty hearing me or another participant,

7     please use the "raise hand" feature immediately.

8          The agenda for today's conference, which was filed as

9     docket entry no. 21726 in case no. 17-3283 and docket entry

10    no. 1345 in case no. 17-3567, is available to the public at no

11    cost on Kroll Restructuring Administration, formerly known as

12    Prime Clerk, for those interested.  I encourage each speaker

13    to keep track of his or her own time.  The Court will also be

14    keeping track of the time and will alert each speaker when

15    there are two minutes remaining with one buzz, and when time

16    is up, with two buzzes.  If you are speaking for three minutes

17    or less, you will only hear the final two buzzes.  Here's an

18    example of the buzz sound.

19          (Sound played.)

20          THE COURT:  If we need to take a break, telephone

21    listen-only participants are asked to remain on the AT&T line

22    during the break.  This morning we will proceed until 11:50 AM

23    and resume, if necessary, from 2:10 in the afternoon to 5:00.

24    Please turn your cameras off now, and turn your camera back on

25    when we reach your agenda item or if I call on you.  Thank

1    you.

2         I'll address motions in limine, the order

3    establishing procedures and deadlines concerning objections to

4    confirmation and discovery, which was docket entry no. 21301

5    in case no. 17-3283 and docket entry no. 1249 in case no.

6    17-3567.  That deadline for motions in limine was July 25th,

7    2022.  No motions in limine were filed.

8         Do any counsel have questions or comments that they

9    wish to make at this time regarding motions in limine?  If so,

10   use the "raise hand" function now and then wait for me to call

11   on you.

12        Very well.  I don't see any hands raised.

13        So we will proceed to the contested matter, which is

14   the Motion of the HTA Insured Bondholder Group Submitting

15   Exhibit List in Connection with the Confirmation of the HTA

16   Plan of Adjustment, Docket Entry No. 21619 in Case No.

17   17-3283, and Docket Entry No. 1303 in Case No. 17-3567, to

18   which Assured Guaranty Corporation and Assured Guaranty

19   Municipal Corporation have objected, and that objection is at

20   Docket Entry No. 21688 in Case No. 17-3283 and Docket Entry

21   No. 1330 in Case No. 17-3567.

22        I have a time allocation of five minutes for the

23   movants.  Would the counsel who will be arguing this matter

24   please turn your cameras on?

25        I see that Mr. Natbony's camera is on, who will be

1    speaking for the objectors, and for the movants, I understand

2    that Mr. Madden will be speaking.

3           Mr. Madden, do you wish to reserve time for rebuttal?

4           MR. MADDEN:  I'll reserve one minute, Your Honor.

5           THE COURT:  Very good.  Good morning.  We'll put you

6    down for four minutes and one minute then.

7           So, Mr. Madden, you may proceed.

8           MR. MADDEN:  Thank you, Your Honor.  It's Matthew

9    Madden with Kramer Levin for the HTA Insured Bondholder Group.

10   Our group holds bonds insured by Assured.  We filed a limited

11   objection to plan provisions that purport to accelerate our

12   bonds to allow Assured to prepay those bonds and to release

13   Assured from liability under the insurance policies that it

14   issued.

15          Before the Court today is our exhibit list which we

16   filed in support of that objection.  It contains one item, the

17   official statement concerning the bonds.  Assured challenges

18   our exhibit list on the grounds that the Court shouldn't even

19   hear our objection because our group filed it on the docket

20   about 90 minutes late.

21          Your Honor, we regret that we missed the deadline to

22   file the objection by 90 minutes, but this Court has the

23   discretion to consider such a late-filed objection.  We cite

24   cases for that in our brief, and we ask the Court to do so

25   here.  Our delayed filing occurred because our clients and

1  Assured had spent nearly a week discussing and trying to

2  resolve our concerns.  Those discussions didn't end until just

3  a few hours before the 5:00 PM objection deadline on July 27.

4       Our clients couldn't authorize the filing of the

5  objection until those discussions had ended unsuccessfully,

6  and those clients in turn had to obtain a number of internal

7  consents in the same short period of time.  What's more, one

8  prospective member of the class did not get those internal

9  consents, which caused us to have to, in the same short period

10  of time, recanvas the remaining members of the group to get

11  their authorization to file under the changed circumstances.

12  We filed our objection at 6:30 PM, as soon as we possibly

13  could, as that process was complete.

14       There is no prejudice to any party from the delayed

15  filing.  As I said, Assured already knew the substance of our

16  concerns from having discussed it with our clients for the

17  better part of a week.  Assured has already filed its

18  substantive response to our objection on the docket.  To my

19  knowledge, no other party has asked for strict enforcement of

20  the filing deadline with respect to our objection, including

21  the Oversight Board.

22       (Sound played.)

23       MR. MADDEN:  And our short delay caused no real harm

24  to any party.  And so, in sum, recognizing that this Court has

25  discretion to entertain our tardy-filed objection, and because

1    there was only a short filing delay based on late running

2    discussions between the parties, and no prejudice to anyone

3    before the Court, we respectfully ask the Court to consider

4    the merits of our objection at next week's confirmation

5    hearing and deny Assured's challenge to our exhibit list.

6    Thank you.

7              THE COURT:  Thank you, Mr. Madden.

8              Mr. Natbony.

9              MR. NATBONY:  Thank you, Your Honor.  Good morning.

10   William Natbony --

11             THE COURT:  Good morning.  Mr. Natbony, we seem to be

12   having irregular transmission of you, so will you start again,

13   and let's see if we can have a smooth feed.

14             MR. NATBONY:  Thank you for the advice, Your Honor.

15   I said, good morning.  William Natbony of Cadwalader

16   Wickersham & Taft.  Can you hear me now?

17             THE COURT:  You are still glitching in and out.

18   Would you speak a little more slowly than usual, and we'll see

19   if the court reporter can hear you adequately.  If not, I'll

20   ask her to speak up, and I may ask you to go out and come back

21   in again.

22             MR. NATBONY:  Thank you, Your Honor.

23             So at the outset, Assured recognizes the Court has

24   discretion to extend the objection deadline and thus allow the

25   exhibit list to be considered.  However, there are several

1    strong reasons here why the Court should decline to exercise
2    its discretion.
3            First, there is no dispute the deadline was missed,
4    and no allegation that the deadline was unknown to the
5    bondholder group.  Second, the Court's procedures order set
6    forth and placed all parties on specific notice of the
7    unambiguous consequences if the deadline was missed.  The
8    order stated that untimely objections would not be considered
9    and would be deemed overruled.  Third, despite being on notice
10   of that and the expected consequences of missing the deadline,
11   it is undisputed that the bondholder group filed no request
12   for an extension of the deadline, and they did not do so
13   before, simultaneously with, or even after filing the
14   objection.  Essentially, the group assumed that the Court
15   would bail them out.  There's no reason, proffered or
16   otherwise, why the group could not have filed a motion for an
17   extension, for instance, as AAFAF recently did before this
18   Court, but instead acted cavalierly.
19           Fourth, the bondholder group's recent purported
20   explanation actually hurts them more than helps them.  The
21   group claims it was busy talking with -- the objection --
22           THE COURT:  You really just cut out now, so --
23           MR. NATBONY:  I will state that paragraph again.
24           THE COURT:  Okay.  Thank you.
25           MR. NATBONY:  I was saying that, fourth, the

1   bondholder group's recent purported explanation actually hurts

2   them more than helps them.  The group claims it was busy

3   talking with Assured about resolving the objection, and,

4   ultimately, it didn't have sufficient time to finish the

5   objection and obtain necessary client authorizations.  But,

6   significantly, the group does not allege and cannot allege

7   that Assured gave any assurances of resolution or of any

8   ability to extend the objection deadline, and of course

9   Assured did not have that ability anyway.

10          The timing and nature of any discussions were within

11   the group's control, and it admits in its response that

12   discussions began nine days before the deadline and that they

13   already had a written document outlining their objection days

14   before the objection was due, so whether or not discussions

15   continued --

16          (Sound played.)

17          MR. NATBONY:  -- up until the objection was due, the

18   group knew of the deadline, understood the consequences, and

19   simply neglected to timely finalize the objection, seek an

20   extension, and failed to timely seek appropriate authority for

21   its filing.  Each of these actions and the timing were within

22   their reasonable control and their counsel.

23          With all due respect to counsel on the other side,

24   these actions do not constitute excusable neglect, but

25   constitute simple neglect which, under the law, does not

1   support extending the deadline.  And I would refer Your Honor

2   to the *Negron* case, 316 F.3d 60, from the First Circuit.

3        Allowing the group to move forward with its objection

4   and putting forth its exhibit does result in prejudice both to

5   the debtor and Assured.  Absent the group's objection, the

6   plan would be largely uncontested.  Allowing the objection to

7   move forward is also causing the increased expenditure of

8   resources, both by Assured and by the debtor in confirmation,

9   and, depending on the substantive outcome of the objection, if

10  heard, could create impediments to confirmation.

11       Your Honor, deadlines need to have meaning, and Your

12  Honor's orders need to have meaning, and especially in the

13  context of these proceedings, where the hearing was only

14  several weeks away from the objection deadline, the stated

15  consequences had a significant purpose, to make clear the

16  Court was not going to open the door to late confirmation

17  objections.

18       In sum, the Court should not open that door, and

19  should rule that the bondholder group's exhibit list be

20  stricken as moot.  Thank you, Your Honor.

21       THE COURT:  Thank you, Mr. Natbony.

22       Mr. Madden.

23       MR. MADDEN:  Thank you.  I'll be brief, Your Honor.

24       Mr. Natbony doesn't dispute nor could he that the

25  parties' good faith discussions lasted into the afternoon of

1   July 27th.  Certainly, if our group hadn't engaged in good

2   faith discussions with Assured over the course of many days,

3   we would have had no problem meeting the Court's deadline,

4   which I agree we knew based on the Court's Order.  That's the

5   cause of the delay, was trying to avoid having to file an

6   objection at all.  We were unsuccessful, but, under those

7   circumstances, we think our late filing is excusable.

8         Mr. Natbony says that Assured made no assurances to

9   us during the parties' back and forth.  I don't think that's

10  quite accurate, but I don't want to get into the confidential

11  communications back and forth by the parties.  And

12  Mr. Natbony, before this hearing, actually instructed me not

13  to do so.

14        We did not file an extension request.  Perhaps we

15  would have in hindsight knowing that Assured would object, but

16  we were trying to get our objection on file as quickly as we

17  can -- as we could that evening and get it filed with the

18  Court by 6:30 PM.  We did not spend additional time trying to

19  attach to it a late filing extension request.

20        And, finally, Mr. Natbony claims that his client is

21  prejudiced today by costs it will incur based on the

22  late-filed objection.  That has nothing to do with the late

23  filing itself of course.  There's no claim in this matter that

24  Assured has experienced any substantive prejudice by the fact

25  that our objection was filed just 90 minutes after the

1   deadline.  And so for all of those reasons, under these

2   circumstances of good faith negotiations, and a very short

3   filing deadline, we ask the Court to consider our objection on

4   the merits at next week's hearing and deny Assured's objection

5   to our exhibit list.

6           THE COURT:  Thank you.

7           I will now rule on the objection to the tender of an

8   exhibit in support of the Insured Bondholder Group's

9   late-filed objection to the proposed HTA Plan of Adjustment.

10  In essence, as the arguments show, Assured is objecting to

11  consideration of the Insured Bondholder Group's objection to

12  confirmation of the proposed HTA Plan of Adjustment, and, in

13  that connection, seeking to strike the related exhibit.

14          The Court will not address the merits of the Insured

15  Bondholder Group's confirmation objection at this time.  The

16  Court reserves the right to make non-substantive corrections

17  in any transcript of these remarks.

18          Pending before the Court is the Motion of the HTA

19  Insured Bondholder Group, which I will refer to as the IBG,

20  Submitting Exhibit List in Connection with Confirmation of the

21  HTA Plan of Adjustment.  That Motion is Docket Entry No. 21688

22  in Case No. 17-3283, and Docket Entry No. 1330 in Case No.

23  17-3567.  Assured Guaranty entities have interposed the

24  objection of Assured Guaranty Corporation and Assured Guaranty

25  Municipal Corporation.  I'll refer to the Assured entities

1   collectively as "Assured", and I'll refer to the objection as

2   the "Assured Objection."

3        Assured argues that the exhibit list is moot and

4   should be stricken, because the confirmation objection to

5   which it relates was filed some 90 minutes after the objection

6   deadline that was set by the Court in its order approving

7   HTA's Disclosure Statement.  The exhibit list was filed in

8   connection with the IBG's Limited Objection of the HTA Insured

9   Bondholder Group to the Third Amended Title III Plan of

10  Adjustment of the Puerto Rico Highways and Transportation

11  Authority.  That is at Docket Entry No. 21617 in the 3283

12  case, and Docket Entry No. 1301 in the 3567 case.  I'll refer

13  to IBG's objection to plan confirmation as the "IBG

14  Objection."

15       Assured argues that the proffer of the exhibit list

16  is moot, because the IBG Objection was filed after the Court

17  ordered deadline to file objections to the HTA's Third Amended

18  Title III Plan of Adjustment.  HTA has since filed its fourth

19  amended plan, and so I will be referring to that most recent

20  plan as the HTA Plan.  The HTA Plan objection deadline was set

21  in the Court's order approving the HTA Disclosure Statement,

22  which order, at paragraph 24, provided that "Confirmation

23  Objections that are not timely filed, served, and actually

24  received in the manner set forth above shall not be considered

25  and shall be deemed overruled."

1   Assured argues that because the IBG objection was

2   filed 90 minutes after the objection deadline, it must be

3   deemed overruled, so that the Assured objection must be

4   sustained and the exhibit list stricken.  Assured recognizes

5   that the Court has discretion, but asserts that the IBG

6   deserves no leniency, because it is only now objecting to plan

7   provisions of which it had been aware for quite some time.

8   The IBG argues that the Court has discretion to

9   excuse the late objection, and explains that the filing was

10   late because of difficulty in obtaining all necessary consents

11   to file the objection after good faith efforts to resolve the

12   objection with Assured fell through, and its principal

13   argument is that the delay did not hamper any party's

14   opportunity to respond to its objection.

15   The Court has considered carefully the Assured

16   objection, the IBG response, and Assured's reply.  Subdivision

17   9006(b)(1) of the Federal Rules of Bankruptcy Procedure, which

18   is made applicable to these Title III proceedings by § 310 of

19   PROMESA, provides in pertinent part that, "[W]hen an act is

20   required or allowed to be done at or within a specified period

21   by these rules, or by a notice given thereunder, or by order

22   of Court, the Court, for cause shown, may at any time in its

23   discretion on motion made after the expiration of the

24   specified period permit the act to be done where the failure

25   to act was the result of excusable neglect."  The Court treats

the IBG's assertion that the late filing should be excused as non-prejudicial and its proffer of logistical reasons for the late filing as a motion to permit consideration of the late filing.

The Court notes that IBG's very experienced counsel could and should have filed an extension request prior to the deadline, and the Court expects that such omissions will not recur.  The evaluation of excusable neglect involves an equitable balancing of several factors.  These include the "danger of prejudice, the length of delay, and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  See *Graphic Communications International Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001), which quoted *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395, a 1993 Supreme Court case.

The Court must also consider intent, whether the dilatory filing was made in bad faith with the intent to disadvantage HTA or other parties in interest, and whether the circumstances were within the reasonable control of the late filer but neglect or indifference lead to the delay, or if the late filer acted in good faith but was hindered by reasonably unforeseen obstacles.  Another factor for consideration is

whether the failure to comply with the deadline "resulted from

negligence, indifference, or culpable conduct on the part of a

late filer or its counsel."  See *Pioneer Investment Services*,

507 U.S. 385, 395 to 396.

Here, IBG's counsel attributes the late filing to

difficulty in obtaining client consents after negotiations

broke down at a relatively late hour.  Although client

consents to file pleadings may well be difficult to obtain in

a timely fashion, the Court again notes that applications for

extensions of deadlines would not appear to require such

consent, and, indeed, AAFAF requested an extension.  So here

clients and counsel are perhaps equally responsible for the

violation of the filing deadline.

IBG's proffers, however, demonstrate that it engaged

in good faith efforts to resolve its objection prior to

filing.  Accordingly, bad faith, or intent to prejudice, or

even to surprise the debtor and Assured is not evident.

Furthermore, it is clear that the delay of 90 minutes did not

prejudice the debtors or any party's ability to respond to the

IBG objection.

Finally, the Court notes that several plan documents

due yesterday evening from the debtor were late-filed, with

delays ranging from a few minutes to just over an hour with no

request for extension received by the Court.  If I were to

take the hard line urged by Assured, the process of

1   adjudicating confirmation of the HTA Plan would assume an

2   entirely new level of complication.  Although I have no wish

3   to encourage dilatory filings in the future, under these

4   circumstances, to deem the IBG confirmation objection

5   overruled without consideration of its merits would be an

6   unduly harsh result.

7          Accordingly, in this instance, the IBG's neglect is

8   excused.  IBG's motion submitting the exhibit list is granted,

9   and the Assured objection is overruled in its entirety.  The

10  Court will consider the merits of the late-filed IBG objection

11  in connection with HTA's motion for confirmation of the

12  proposed plan.

13         Thank you.

14         MR. MADDEN:  Thank you, Your Honor.

15         MR. NATBONY:  Thank you, Your Honor.

16         THE COURT:  So now we will turn to the matters

17  concerning the conduct of the confirmation hearing, which is

18  Section III of the Agenda, and, first, the schedule for the

19  confirmation hearing and presentation of testimony in support

20  and in opposition to confirmation of the HTA Plan of

21  Adjustment.  I have the debtor scheduled to speak for five

22  minutes in this connection.

23         Mr. Rosen.

24         MR. ROSEN:  Good morning, Your Honor.

25         THE COURT:  Mr. Rosen, your audio just dropped out.

1  ‖ Would you try again?

2  ‖       MR. ROSEN:  Can you hear me, Your Honor?

3  ‖       THE COURT:  Now I can hear you, so start again with

4  ‖ good morning, please.

5  ‖       MR. ROSEN:  Good morning, Your Honor.  Brian Rosen,

6  ‖ Proskauer Rose.  Your Honor, the --

7  ‖       THE COURT:  You're cutting in and out as well.  I'm

8  ‖ not sure what's happening.  Let's hope the third time is

9  ‖ lucky, so please try again.

10 ‖       MR. ROSEN:  I will speak slowly, and hopefully the

11 ‖ court reporter will be able to hear everything.  Is that okay,

12 ‖ Your Honor?

13 ‖       THE COURT:  That's much better.  Thank you.

14 ‖       MR. ROSEN:  Your Honor, the first three items on the

15 ‖ agenda are actually, I would say, combined, and I could

16 ‖ probably treat all of them at one time.  And I believe I'm the

17 ‖ only speaker in connection with those, so I'll try to be

18 ‖ complete, Your Honor.

19 ‖       Your Honor, first, I want to apologize.  I did not

20 ‖ know that we had any filings that were beyond the five o'clock

21 ‖ deadline.  We had started the process of filing everything at

22 ‖ three o'clock yesterday afternoon and, as you can see by the

23 ‖ sheer volume of pleadings that were filed, it took some time

24 ‖ for them all to come in.  So I apologize, Your Honor, for any

25 ‖ that did make it as late as an hour beyond the five o'clock

1    deadline.

2          Your Honor, we started yesterday's filings with the

3    plan and the other related items, and the goal of that was to

4    deal with not only the objections that had been interposed but

5    also some clean-up items that various parties in interest had

6    requested in connection with the plan.  I'll take note of like

7    one specific -- we had the surety objection, Your Honor, that

8    was handled the same way we handled the same surety objection

9    in connection with the Commonwealth Confirmation Order, and we

10   included a paragraph within the Confirmation Order to deal

11   with that.  Similarly, the eminent domain one, Your Honor, we

12   showed in the reply that we included the same provisions that

13   the Court order authorized in connection with the Commonwealth

14   Plan of Adjustment.

15         So, Your Honor, there are a few objections to

16   confirmation that have been interposed.  One was by the

17   surety, one by the eminent domain -- a party, Finca Matilde,

18   one by Mr. Mudd on behalf of certain plaintiff appellants, the

19   limited objection by AAFAF, and then the Franklin Nuveen

20   objection, which is limited and really directed towards

21   Assured, and the election provided by Assured in connection

22   with the Plan of Adjustment.

23         Your Honor, as referenced in the Reorg Research piece

24   that was put online today, Mr. Marrero, on behalf of AAFAF,

25   had noted that he fully expects the AAFAF limited objection to

1  be resolved prior to the commencement of the confirmation

2  hearing, and we, on behalf of the Oversight Board, believe the

3  same thing.  We were very, very close to resolution of that

4  limited objection yesterday, Your Honor.  We also were

5  prepared to file a reply, which we were -- and not seek an

6  extension of the time period, so we did that, Your Honor.  We

7  filed the limited response to their objection in our reply,

8  but we do feel very comfortable that we will be able to

9  resolve that objection hopefully prior to the commencement of

10  the confirmation hearing.  And, if necessary, Your Honor, that

11  might necessitate the filing of a very, very minor

12  modification to one of the sections of the Plan of Adjustment.

13          (Sound played.)

14          THE COURT:  Mr. Rosen, that was on the five-minute

15  timing.  I understand you're speaking to multiple items, but

16  Mr. Friedman has raised his hand and so I suspect he wants to

17  say something on behalf of AAFAF.  So if you've concluded your

18  section talking about the status of the AAFAF objection, I

19  will call on Mr. Friedman.

20          Mr. Rosen, is this an appropriate time for me to call

21  on Mr. Friedman?

22          MR. ROSEN:  That's fine, Your Honor.

23          THE COURT:  Thank you.

24          Mr. Friedman.

25          MR. FRIEDMAN:  Your Honor, it's Peter Friedman of

1   O'Melveny & Myers on behalf of AAFAF.  I just wanted to

2   confirm what Mr. Rosen said is that our client has publicly

3   said, the executive director of AAFAF, that we are confident

4   we will be able to resolve this issue together.  We are

5   continuing to work with the Oversight Board on this matter.

6         You know, we don't -- we are reviewing what was filed

7   yesterday to see if we need to, you know, examine any

8   witnesses in light of what was said, but, again, we really do

9   not believe that will be necessary.  And we look forward to

10  continuing to work with the Board together to review this

11  matter.  We're also reviewing the findings of fact and

12  conclusions of law, and if we have any concerns or questions,

13  we will obviously discuss those directly with the Board this

14  week.

15        THE COURT:  Thank you, Mr. Friedman.

16        MR. FRIEDMAN:  Thank you, Your Honor.

17        THE COURT:  So, Mr. Rosen, you may resume.

18        MR. ROSEN:  Thank you, Your Honor.

19        Yes, Mr. Friedman is correct, we've been working very

20  closely with the AAFAF team not only on the resolution of the

21  limited objection, but also to try and make sure that we are

22  in place for the consummation of the Plan of Adjustment in the

23  event that the Court were to confirm or approve the Plan of

24  Adjustment.  And we will work with them with respect to the

25  findings and conclusions of law, as well as the Confirmation

1   Order which has previously been filed with the Court.

2         Your Honor, with that objection hopefully taken care

3   of, we did file the witness list previously, and we did not

4   receive any request for cross-examination of any of the

5   witnesses that we intend to submit.  And yesterday we

6   submitted five declarations in support of confirmation of the

7   Plan of Adjustment:  Ms. Pullo from Kroll, with respect to the

8   voting tabulation; Chairman David Skeel of the Oversight Board

9   in support, and going through many of the requisite provisions

10  of PROMESA and the Bankruptcy Code; Mr. Brownstein, discussing

11  feasibility, among other issues; Mr. Shah, discussing the best

12  interest test; and Mr. Jay Herriman of Alvarez & Marsal

13  briefly discussing the claims that have been asserted against

14  HTA.  Again, Your Honor, nobody -- and that would be the order

15  in which we would present the witnesses in support of

16  confirmation.

17        Again, Your Honor, no party has requested to

18  cross-examine any of the witnesses, and we -- and, as I said,

19  we have filed these declarations, and it would be our intent

20  on the 17th to submit all of these declarations into evidence

21  as the Oversight Board and debtor's case in support of

22  confirmation.

23        THE COURT:  Do we have -- I apologize for having to

24  ask you this question.  Do we have a further deadline for any

25  request to cross-examine in light of particular content of the

1 | declarations?

2 | MR. ROSEN:  Your Honor, a few of the parties had

3 | reserved their rights to do so, but I don't believe that there

4 | is a further deadline in order to do that, Your Honor.

5 | THE COURT:  Well, so that the process will be

6 | orderly, I am going to consider filing a supplemental order

7 | providing a deadline of I'll say for now Friday for the filing

8 | of any statement of intent to cross-examine.

9 | MR. ROSEN:  Well, Your Honor, obviously that's within

10 | your discretion.  Based upon the objection to the

11 | confirmation, I would be very surprised if anybody did file

12 | that statement.  Likewise, Your Honor, we did not file any

13 | statement to cross-examine the lone witness that had been

14 | proffered in opposition to the Plan of Adjustment, which was

15 | Mr. Mudd's witness.  I believe it's Mr. Cespedes, Carlos

16 | Cespedes.

17 | So, Your Honor, with that, we would expect the

18 | confirmation hearing to move rather rapidly with statements in

19 | support of confirmation and dealing with what I would believe

20 | to be the few objections which should remain to confirmation,

21 | which would be Mr. Mudd's and the Insured Bondholder Group's,

22 | and to the extent that we cannot conclude the issue with

23 | respect to AAFAF.  As I said, I believe the surety objection

24 | is taken care of by provisions within the Confirmation Order.

25 | I think -- objection to the --

 1              COURT REPORTER:  Counsel, you're breaking up.  Your

 2      Honor, this is the court reporter.

 3              MR. ROSEN:  -- of the Court's ruling with respect to

 4      the Commonwealth Plan of Adjustment is incorporated into the

 5      HTA --

 6              THE COURT:  I'm sorry.  Would you slow down again,

 7      because you're starting to cut out again.

 8              MR. ROSEN:  I apologize, Your Honor.  What I was

 9      saying, Your Honor, is we would believe that the confirmation

10      hearing should be handled rather expeditiously with the

11      submission of the declarations, because we believe, Your

12      Honor, that the surety and eminent domain objections are

13      resolved by way of Confirmation Order and the Plan of

14      Adjustment, respectively.  That would leave only Mr. Mudd's

15      objection, which he has agreed that his time to oppose would

16      be limited to ten minutes, and then the Franklin Nuveen or

17      Insured Bondholder objection, which similarly is rather short

18      in duration, and the Assured response to that objection, Your

19      Honor.  And of course there would be the AAFAF limited

20      objection to the extent that we do not resolve it, which as

21      both Mr. Friedman and I indicated, we expect will be --

22              THE COURT:  Very well.  Based on the status of the

23      objections, I would also be surprised if there were any

24      indication of intent to cross-examine the declarants, but, as

25      I say, I'll consider whether I ought to do that as a matter of

1    housekeeping.

2         MR. ROSEN:  Yes, Your Honor.  Thank you.

3         Your Honor, with that, unless you have any further

4    questions about the process that we see being undertaken for

5    confirmation, I believe that would leave just the matter of

6    the exhibits, which Mr. Firestein will handle.

7         THE COURT:  Yes.  I do not have any questions.  I

8    have reviewed the agenda that you filed for the confirmation

9    hearing, which I note has time allocations for arguments and

10   statements in support that are relatively generous in light of

11   the status of the objections, but should certainly be

12   sufficient to cover the issues and also permit us to move

13   fairly expeditiously, as you said.  And so thank you,

14   Mr. Rosen, and we'll turn now to Mr. Firestein.

15        MR. ROSEN:  Thank you, Your Honor.

16        MR. FIRESTEIN:  Good morning, Your Honor.  Michael

17   Firestein of Proskauer on behalf of the Board.  Given the

18   technical issues, can you hear me?

19        THE COURT:  Yes.  So far, perfectly.

20        MR. FIRESTEIN:  All right.  Well, we'll see.

21        Your Honor, I realize that there's only two minutes

22   that have been set for this.  I hope to do it inside of that.

23   I don't know that there's going to be a need for the other

24   speakers, but of course we offered them the opportunity to do

25   so.

1          The debtors filed the exhibit list last week

2    sometime -- I can't remember.  There have been a number of

3    deadlines.  We did have a meet and confer with respect to the

4    exhibit list that we filed, as well as that by others to

5    address admissibility.  With two exceptions, all of the

6    exhibits had no objections to their admission or as otherwise

7    identified, such as admitted but except for the truth, or for

8    identification purposes on our list.

9          The two exceptions were the HTA Insured Bondholder

10   Group issue, which the Court has now resolved, and, secondly,

11   the Board's objection to Mr. Mudd's exhibits, the limited

12   objection, which late last week we withdrew, so there should

13   be no issue there.  Last evening, as I suspect the Court or

14   the parties saw, we did file a few new exhibits to update

15   several things.  Much like the original exhibits, we do not

16   anticipate issues there, but if so, we would expect those to

17   be resolved or otherwise submitted to the Court pursuant to

18   the Court's directive.  I think tomorrow is the time that we

19   need to have the book submitted to the Court where we identify

20   what is either not subject to objection or subject to

21   objection.  And I think that would only apply to the most

22   recent exhibits that we submitted last night.

23         If I might, Your Honor, as a general cry to the

24   public, if there is anyone who has any objection to the

25   additional exhibits that we filed last evening, I would

1  encourage them to reach out to me ASAP so that we can, you

2  know, resolve any issue that might be there.  If I might, Your

3  Honor, suggest that to the extent that no one reaches out, to

4  avoid having to set up unnecessary 50 person meet and confers,

5  that we'll just assume that those who don't reach out to me

6  don't have any objection to those additional exhibits if

7  that's all right with the Court.

8          Otherwise, I don't --

9          THE COURT:  It seems to me all of -- it's all right

10  with the Court given that all of the entities that have raised

11  any issues have registered for this Zoom conference.  There

12  are many people on the conference, and so I am going to assume

13  that everyone has heard your cry to the public as it were.

14          MR. FIRESTEIN:  Thank you, Your Honor.  And, again, I

15  don't anticipate that there will be any issues with respect to

16  that, but to the extent that there are, we will endeavor to

17  have them separated out for submission to the Court pursuant

18  to tomorrow's deadline.  And other than that, Your Honor, I

19  think that that would resolve or address all the issues on

20  this particular item.

21          THE COURT:  Thank you.

22          Is there anyone else who wishes to be heard on the

23  subject of exhibits?  If so, raise your hand.

24          I don't see any hands raised, and so I think we have

25  dealt with the issue of exhibits.  I will look forward to

1   receiving the consolidated PDF book with the final word as

2   of -- yes, that time, which -- as to whether any exhibits have

3   been -- I'm sorry, any objections have been raised.

4          Are there any other matters that we need to address

5   at this final pretrial conference?  Mr. Mudd has raised his

6   hand.

7          Mr. Mudd.

8          MR. MUDD:  Excuse me.  Can you hear me, Your Honor?

9          THE COURT:  Yes, I can.  Just speak a little bit

10  slowly.  Thank you.

11         MR. MUDD:  Okay.  Just in an abundance of caution,

12  there has been no party that has requested cross-examination

13  of Mr. Cespedes, but I was wondering if the Court would like

14  him to be there present on the 17th if the Court would have

15  any questions.

16         THE COURT:  I do not anticipate myself having any

17  questions for your declarant, and so if there continues to be

18  no request for cross-examination of him, you are not required

19  to bring him.

20         MR. MUDD:  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         Is there anyone else?

23         I don't see any other hands raised, and so this

24  concludes the agenda for this conference.  The next scheduled

25  hearing is the plan confirmation hearing scheduled to begin on

1    August 17th, 2022, at 9:30 AM Atlantic Standard Time and

2    resume, if necessary, on August 18th.  The Omnibus Hearing

3    will commence immediately after the conclusion of the

4    confirmation hearing, and the hearing will occur over a

5    combination of in-person appearances in San Juan, Puerto Rico,

6    and a live Court Solutions telephone line.

7            As always, I'd like to thank the court staff in

8    Puerto Rico, Boston, and New York for all of their work in

9    support of these hearings and the ongoing administration of

10   these cases.  Stay safe and keep well, everyone.  We are

11   adjourned.

12           MR. ROSEN:  Thank you, Your Honor.

13           MR. FIRESTEIN:  Thank you, Your Honor.

14           (At 9:49 AM, proceedings concluded.)

15                        *     *     *

16

17

18

19

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT    )

 2  DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 33 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, and the

 8  Honorable United States Magistrate Judge Judith Gail Dein on

 9  August 8, 2022.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```