UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, ERS, and PBA.** |

**DEBTORS' REPLY TO RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER EXTENDING DEADLINE TO FILE OBJECTION TO PROOFS OF CLAIM**

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth and ERS, the "Debtors"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply (the "Reply") to the *Response of Official Committee of Unsecured Creditors to Debtors' Motion for Order Extending Deadline to File Objection to Proofs of Claim* [ECF No. 21705][3] (the "Response" or "Resp.") and in support of the *Debtors' Motion for Order Extending Deadline to File Objection to Proofs of Claim* [ECF No. 21601] (the "Motion"). In support of this Reply, the Oversight Board represents as follows:

## PRELIMINARY STATEMENT

1. The Official Committee of Unsecured Creditors (the "Committee") does not oppose the extension requested in the Motion, and acknowledges "that extensions like the one requested in the Extension Motion are common in chapter 11 cases, and frequently (and routinely) granted." Resp. ¶ 6. Curiously, however, the Committee requests that the extension "be conditioned on the Oversight Board providing a timeline or summary report detailing how it intends to bring the reconciliation of the Remaining Claims to an expeditious conclusion." *Id.* The purported basis for this request is that "holders of valid general unsecured claims have an obvious and understandable interest in ensuring that the claims reconciliation process is brought to an expeditious conclusion, so that distributions can be made on account of their claims." *Id.* ¶ 3.

2. While the Oversight Board and the Debtors wholeheartedly share the desire to make distributions as soon as possible, the Oversight Board is surprised by the Response for three basic reasons. First, prior to confirmation and consummation of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 19813-1] (the "Plan"),[4] the Oversight Board and its advisors, including Alvarez and Marsal, the advisor primarily

---

[2] PROMESA is codified at 48 U.S.C §§ 2101–2241.

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

[4] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed thereto in the Plan.

2

responsible for the identification and reconciliation of proofs of claim, periodically met with the advisors to the Committee, provided claims updates and responded to numerous inquiries of the Committee's financial and legal advisors. Second, as requested by the Court in connection with every Omnibus Hearing, the Oversight Board has provided an update on the claims reconciliation process, the status of the Administrative Claims Reconciliation ("ACR") and Alternative Dispute Resolution ("ADR") processes, and the anticipated number of claims to be subject to objection. At such time, the Oversight Board has referenced the inherent difficulty in the claims reconciliation process due to the multitude of proofs of claim filed in a "fully unliquidated" amount. Third, the Committee has ceded all responsibility for the ongoing reconciliation of proofs of claim to its two (2) appointees to the Avoidance Actions Trust Board who are fully apprised of the status of claims reconciliation. Plan § 82.1. In fact, but for the ongoing pendency of an appeal of the Confirmation Order, as the Plan provides, the Committee would have been dissolved other than to safeguard the fees and expenses incurred by its members and professionals. As such, the Committee is in no position to file a response at all, let alone one requesting that conditions be attached to the Debtors' extension.

3. Although the Debtors maintain that the Committee's request should be denied, the Debtors, in the interest of good faith, hereby inform the Court, the Committee, and parties in interest as to the status of certain of the Remaining Claims which are preventing current distributions—namely, "fully unliquidated" claims associated with litigations. These claims are considered "fully unliquidated" because they assert an unknown amount (*i.e.*, the claimants associated with these claims failed to provide an asserted amount in their proofs of claim forms). Rather, they merely provide the bare minimum and require significant investigative work to be done.

4. To date, the Debtors have resolved nearly seventy percent (70%) of fully unliquidated claims associated with litigations, but, there are over 1,500 of these claims that are unresolved. These unresolved claims are preventing distributions because there is insufficient information and/or documentation regarding the underlying litigations for the Debtors to make a reasonable estimation of the amount that should be reserved. If the Debtors were to make a good faith estimation now, the reserve would need to include all claims that are pending objection, but have not yet been finally resolved by Court order, including those which have been subject to prior omnibus objections and remain subject to pending Notices of Presentment. The lack of information at this time makes a good faith estimation impractical, and such a reserve might have to be so large that distributions to creditors could not reasonably occur or provide a meaningful recovery.

5. For the same reason that the Debtors cannot reasonably estimate the reserve for these claims, the Debtors cannot make reasonable determinations as to whether the claims are appropriate for ADR or objection. This is true even though the Debtors have undertaken extensive outreach campaigns (including to over 38 different Commonwealth agencies) to obtain records relating to the litigations underlying the claims. Thus far, the Debtors' outreach efforts have largely been to no avail because, in many instances, the government's records relating to the litigations have been destroyed as a result of Hurricanes Irma and Maria or are not available as a result of condemnation of the properties where the records were stored.

6. The extension sought is necessary because it will avoid the needless filing of objections and afford the Debtors an opportunity to, among other things, perform additional outreach, including to opposing counsel representing plaintiffs in the underlying litigations, so that the Debtors make more fully informed decisions concerning the most efficient manner of resolving

these and other Remaining Claims in the interests of ensuring ratable distributions among, and maximizing value for, legitimate creditors.

## REPLY

**A. The Debtors Provide Regular Reports Regarding the Claims Reconciliation Process**

7. The Committee asserts that the Debtors should be required to provide a "timeline or summary report detailing how [they] intend[] to bring the reconciliation of the Remaining Claims to an expeditious conclusion." Resp. ¶ 6. The Committee, however, conveniently ignores that the Debtors already provide regular reports on the status and timeline of the claims reconciliation process.

8. Pursuant to Section 82.1 (b) of the Plan,[5] since March 15, 2022, the Effective Date of the Plan, and the establishment of the Avoidance Actions Trust Board, the Committee's appointees thereto, together with the financial advisor to the Avoidance Actions Trust Board (which just happens to be the same advisor to the Committee (Alix Partners)) have received monthly updates on the claims reconciliation process. In addition to such monthly updates, the Debtors have filed with the Court status reports regarding the claims reconciliation process in connection with every omnibus objection hearing that has occurred since June 2020. *See, e.g.*, *Status Report of Financial Oversight and Management Board in Connection with June 3, 2020 Omnibus Hearing* [ECF No. 13337].

9. These reports have addressed, among other things, the anticipated timing and volume of objections to claims, as well as the status of the ADR process. As an example, the *Status Report of Financial Oversight and Management Board in Connection with June 29-30,*

---

[5] *See* Plan § 82.1(b) ("The two (2) Creditors' Committee appointees to the Avoidance Actions Trust Board shall (i) receive monthly updates to the claims reconciliation process, which process shall continue to be administered by the Oversight Board, with the assistance of AAFAF, (ii) have the right to (A) review the claims objections and reconciliation process . . . .").

*2022 Omnibus Hearing* [ECF No. 21377], submitted in connection with the June 2022 omnibus objection hearing, advised the Court that the Debtors had "transferred approximately 960 claims into the ADR Procedures," and that "well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order)." *Id.*

**B. The Debtors Have Been Working Diligently and Expeditiously on Claims Reconciliation But There Are Over 1,500 Fully Unliquidated Proofs of Claim Which Are Prohibiting Distributions**

10. Although the Committee's appointees to the Avoidance Actions Trust Board receive a monthly report providing the status of the claims reconciliation process (as described above), the following is an overview of the status of certain of the Remaining Claims which are preventing distributions. Those claims are "fully unliquidated" claims, or claims asserting unknown amounts because the claimants associated with these claims failed to provide an asserted amount or even basis for recovery in their proof of claim forms.

11. By way of background, over 5,057 fully unliquidated proofs of claim asserting liabilities related to litigations have been filed against the Debtors. To date, 3,455 of these claims have been resolved through: (*i*) objections that have been ordered by the Court; (*ii*) objections that have been granted but are awaiting orders from the Court; (*iii*) withdrawals by creditors; and (*iv*) determinations that Kroll Restructuring Administration LLC made a filing error.

12. Of the claims that have been resolved through objections, 376 (the "<u>ADR Designated Claims</u>") were initially transferred into ADR pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "<u>ADR Order</u>"). While in ADR, the ADR Designated Claims were the subject of outreach attempts by the Debtors. More specifically, the Debtors mailed Information Requests (as defined in the ADR Order) to the

claimants associated with the ADR Designated Claims, as authorized by the ADR Order, because the claimants associated with the ADR Designated Claims provided only limited information in their claims forms and/or limited supporting documentation. *See* ADR Order ¶ 2f ("The Commonwealth or such other Debtor, as the case may be, may also request additional information or documentation (the 'Information Request') from the Designated Claimant."). In addition to requesting information and/or documents necessary to reconcile the claims, the Information Requests required that each Claimant "provide additional documentation or information … within twenty-one (21) days following receipt of such Request." *Id*. Because the claimants either failed to respond to the Information Requests, or responded, but still failed to provide sufficient information, the Debtors removed the ADR Designated Claims from ADR and objected to them as deficient.

13. It is against this background that the Debtors' ongoing reconciliation of the unresolved fully unliquidated claims—of which there are 1,602—must be viewed. To begin, the Debtors cannot reasonably determine whether these 1,602 claims are suitable for objection or ADR because there is insufficient information and/or documentation regarding the underlying litigations. For this same reason, the unresolved fully unliquidated claims are preventing distributions: without sufficient information and/or documentation, the Debtors are unable to make a reasonable estimation of the amount that should be reserved. If the Debtors were to make a good faith estimation now, the reserve would need to include all claims that are pending objection, but have not yet been finally resolved by Court order, including those pending Notices of Presentment.[6] The lack of information at this time makes a good faith estimation impractical, and

---

[6] There are approximately 9,000 claims subject to approximately seventy pending Notices of Presentment.

7

such a reserve might have to be so large that distributions to creditors could not reasonably occur or provide a meaningful recovery.

14. As just one example, there is a class action litigation captioned *Rosa Lydia Vélez et al. v. Puerto Rico Department of Education*, No. KPE-1980-1738, that underlies *hundreds* of fully unliquidated claims pertaining to thousands of plaintiffs. This case was filed against the Department of Education three decades ago related to services which were allegedly not provided to certain special needs children. Although a partial judgment was entered in that case (*see Motion for Relief from Stay* [ECF No. 730]), the damages owed to each plaintiff were never determined. Before the case was stayed, counsel for the plaintiffs were supposed to provide copies of records to the Department of Education naming each of the plaintiffs and showing which services were allegedly not provided to which plaintiffs. Those records were and are necessary so that the alleged damages purportedly owed to each plaintiff (and each claimant) can be ascertained. Absent this information, the Debtors cannot reasonably estimate a reserve in order to account for the hundreds of underlying unliquidated claims.

15. The Debtors have attempted to obtain those records (and others related to the underlying litigations) through the aforementioned outreach efforts, including: (*i*) coordinating with the Puerto Rico Department of Justice to attempt to obtain relevant pleadings and supporting documentation; (*ii*) contacting claimants or claimants' counsel via telephone and/or email, using the phone number and/or email address provided by the claimants in their proofs of claim; and (*iii*) sending letters on behalf of the Board to over 38 different Commonwealth agencies that were named as defendants in the litigations underlying the claims. By and large, however, the Debtors' outreach has been to no avail because, for example, the government's records relating to the

8

litigations have been destroyed as a result of Hurricanes Irma and Maria or are not available as a result of condemnation of the properties where the records were stored.

16. The extension is, accordingly, critical because it will avoid the needless filing of objections and afford the Debtors an opportunity to, among other things, perform additional outreach, including to opposing counsel representing plaintiffs in the underlying litigations, so that the Debtors can make more fully informed decisions concerning the most efficient manner of resolving these and other Remaining Claims in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

**C. The Committee No Longer Has Oversight Duties Over the Claims Reconciliation Process**

17. The entire premise for the Committee's request is that "holders of valid general unsecured claims have an obvious and understandable interest in ensuring that the claims reconciliation process is brought to an expeditious conclusion, so that distributions can be made on account of their claims." Resp. ¶ 3. The Debtors are mindful of the importance of expeditiously conducting reconciliation so that holders of valid claims receive appropriate distributions. At the same time, the Debtors are cognizant that, without engaging in hearings to estimate thousands of "fully unliquidated" claims, a time-consuming and extremely costly exercise, no distributions can be made. But, as mentioned above, while the Committee seeks to inject itself, it no longer has oversight responsibility of the claims reconciliation process.

18. The Plan provides that, upon the Confirmation Order being a Final Order[7] and except for the limited involvement associated with the recovery of fees and expenses of the Committee's professionals and members, as of the Effective Date, the Committee is considered

---

[7] The Debtors acknowledge that an appeal of the Confirmation Order remains pending, but the benefits of the Plan and the Confirmation Order (*i.e.*, the appointment of the Committee members) have been realized and implemented for almost five months.

"dissolved and ... deemed to have satisfied all of its respective duties and obligations, and ... released and discharged from any action or activity taken, or required to be taken, in connection with the Title III Cases[.]" Plan § 90.1. With the consummation of the Plan, the Committee, arguably, does not have any duties with respect to the claims reconciliation process. Indeed, those duties now belong to the Committee's two (2) appointees to the Avoidance Actions Trust Board. *Id.* § 82.1(b). Pursuant to the Plan and the Confirmation Order, such appointees receive monthly reports regarding the claims reconciliation process and have "the right to ... review the claims objections and reconciliation process, including the ADR Procedures, as it relates to CW General Unsecured Claims, ERS General Unsecured Claims, [and] Convenience Claims[.]" *Id.*

19. The Committee does not dispute that such appointees have been receiving such progress reports from the Debtors and analyses from the Committee's financial advisor, and that it is fully aware of the claims reconciliation process and the need to address the "fully unliquidated" claims. Likewise, there is no dispute that, prior to the Effective Date, the Committee was keenly aware of the need to review all claims and the difficulty in obtaining the information needed to do so. Accordingly, while the Debtors appreciate the concern associated with making distributions to holders of valid claims, it can only do so in a pragmatic manner designed to provide such holders with their rightful recoveries.

**WHEREFORE** the Debtors request that the Court grant the relief requested in the Motion and such other and further relief as is just.

Dated: August 10, 2022  
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*  
Martin J. Bienenstock (*pro hac vice*)  
Brian S. Rosen (*pro hac vice*)

10

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for Debtors*


*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com


*Co-Attorney for the Financial Oversight and
Management Board as representative for the
Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer