IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, ET AL.<br>Debtor.<br><br>―――――――――――――<br><br>Maria Judith Diaz Castro<br>PLAINTIFF<br><br>V.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, COMMONWEALTH OF PUERTO RICO; JUAN J. COLON BAEZ; MARIO RIVERA GIEGEL; LUIS RIOS DIAZ; LUIS NAVAS DE LEON; LEILANY CARRION DEL TORO<br><br>DEFENDANTS | PROMESA Title III<br><br>Case No.: 3:17-BK-3283 (LTS)<br><br>Adversary No. _____<br><br><br><br>**COMPLAINT TO LIQUIDATE CLAIM AND/OR TO DETERMINE DISCHARGEABILITY OF DISPUTED UNLIQUIDATED CLAIM**<br>**And/Or Lifting the Automatic Stay** |

## COMPLAINT

Plaintiff, Maria Judith Diaz Castro, brings this adversary proceeding seeking liquidation of her disputed claim, an order determining that the claim(s) by the Plaintiffs against Defendants in Action 3:16-cv-02873-SCC are excepted from discharge, **Exhibit A** (3:16-cv-02873-SCC, Oct. 25, 2016 Complaint)**,** and/or an order lifting the automatic stay.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. § 523.  This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. Venue in the District of Puerto Rico is proper under 28 U.S.C. § 1409(a).

3. This AdversaryProceeding relates to *In re Commonwealth of Puerto Rico*, No. 3:17-BK-3283 (LTS) (Bankr. Puerto Rico) now pending in this Court (the "Bankruptcy Case"). Plaintiffs hold a general unsecured, unliquidated, and disputed claim against the Debtor pursuant to a case styled *Maria Judith Diaz Castro v. Commonwealth*, et al, Docket No. 3:16-cv-02873-SCC  (the "Civil Rights Lawsuit").  A copy of the Civil Rights Lawsuit is attached and incorporated as **Exhibit A**.

4. A Proof of Claim in this matter was filed on May 24, 2018 in the amount of $**30,000,000.00 dollars**.  **Exhibit B**.

5. A motion to lift the automatic stay was filed in August of 2017, and denied on August 29, 2017.  **Exhibit C**.

## THE PARTIES TO THE CIVIL RIGHTS LAWSUIT

6. Plaintiff,  **Maria Judith Diaz Castro**, is a resident of Puerto Rico, and a plaintiff in the civil rights lawsuit regarding her wrongful conviction, which was overturned by the Puerto Rico appellate tribunals.

7. The **Commonwealth of Puerto Rico** was at all times material to the facts alleged in the civil rights complaint, the employer of the Puerto Rico police agents and prosecutors who negligently and maliciously instigated a criminal action against plaintiff Maria J. Diaz Castro for a double murder she did not commit, resulting in her decade-long incarceration.

8. Detective **Juan J. Colon Baez**, a **defendant** in the civil rights lawsuit, is a former homicide detective who in 1999 investigated a double murder and prosecuted plaintiff hererin, Maria Judith Diaz Castro, despite compelling proofs depicting her innocence.

9. **Lcdo. Mario Rivera Giegel**, a **defendant** in the civil rights lawsuit, is a State Prosecutor for the Commonwealth of Puerto Rico, who investigated and prosecuted plaintiff Maria J. Diaz Castro acting under color of law.

10. **Lcdo. Luis Rios Diaz**, a **defendant** in the civil rights lawsuit, is a State Prosecutor for the Commonwealth of Puerto Rico, who investigated and prosecuted plaintiff Maria J. Diaz Castro acting under color of law is a State Prosecutor for the Commonwealth of Puerto Rico, who investigated and prosecuted plaintiff Maria J. Diaz Castro acting under color of law.

11. **Lcdo. Luis Navas De Leon**, a **defendant** in the civil rights lawsuit, is a State Prosecutor for the Commonwealth of Puerto Rico, who investigated and prosecuted plaintiff Maria J. Diaz Castro acting under color of law.

12. **Lcda. Leilany Carrion Del Toro**, a defendant in the civil rights lawsuit, is a State Prosecutor for the Commonwealth of Puerto Rico, who investigated and prosecuted plaintiff Maria J. Diaz Castro acting under color of law.

## BACKGROUND/FACTS
### The DOUBLE HOMICIDE  Of 1999 AND PLAINTIFF'S WRONGFUL CONVICTION

13. On April 7, 1999, Efrain Pena Dieppa and Julio Luyando were murdered in a rooster fighting establishment in Naguabo, Puerto Rico.

14. As a result of this incident the Puerto Rico Police Department and the Humacao District Attorney's Office launched an investigation.

15. Lead homicide detective agent **Hector Figueroa-Torres - who would later file an affidavit on plaintiff's behalf -**  initially  investigated the double-murder for months, and based on credible first-hand eyewitness accounts, identified  one "Pijuan" as the prime suspect, and one "Falo" as a potential suspect.

16.  At least one of the witnesses to the murder of one of the victims, sat right next to the victim during the attack and identified one "Pijuan" - a person known in the community - as the assailant, as per a sworn affidavit by agent Hector Figueroa-Torres dated October 19, 2016.

17.  Agent Hector Figueroa-Torres also interviewed other witnesses, all of whom stated unequivocally that "Pijuan" - a known person in the community - had committed the double murderers.

18.  However, the witnesses were all fearful of retaliation by "Pijuan", and initially refused to give statements under oath.

19. In addition to the foregoing, the progenitor of one of the murder victims claimed, and **signed a sworn statement** thereto, that one "Falo" - and <u>not plaintiff</u> - had committed the double-homicide.

20.  Months thereafter, Detective **Juan Colon-Baez** was abruptly assigned the case, replacing  **Hector Figueroa-Torres** as  lead homicide detective.

21.  Immediately after the case was reassigned to defendant Colon-Baez,   detective Hector Figueroa met with newly-assigned detective Colon-Baez, as well as a number of state prosecutors, defendants herein, and informed them that at least one of the known eyewitnesses was wiling to cooperate and inculpate primary suspect "Pijuan" as the assailant.

22. However,   the prospects of prosecuting "Pijuan" soon faded, as Mr. Hector Figueroa's  comment  regarding  credible  eyewitnesses  was  quickly  and unexpectedly brushed aside by the new  lead detective Colon-Baez, defendant herein, as well as  the state prosecutors.

23.  Instead,    months  after  the  investigation  had  begun,  the  new  detective Colon-Baez  purportedly "identified" or "found"  two new  <u>previously unknown</u> witnesses, *to wit*, one Sharon Placeres and Yahaira Soto, who were  not eyewitness to the murders themselves, and at least one of whom had been under indictment for another murder, and was seeking a plea deal.

24. These two new previously unknown witnesses  **claimed that   plaintiff and her two  brothers,  as  well  as  a  hitman  named  "Cas",  conspired  to  commit  the double homicide**.

25. One of the new witnesses likely had a vendetta against plaintiff's siblings, based on prior incidents, and wrongfully, intentionally, with malice and without proofs inculpated plaintiff and her siblings in the double-murder.

26.    Further, **none of these previously unidentified witnesses produced by newly-assigned detective Colon-Baez were eyewitnesses to the actual murder**, and none identified "Pijuan" - who had been identified by various eyewitnesses to the double homicide itself - as the suspect or the triggerman.

27. Instead, these two new purported "surprise" witnesses - at least one of whom was being prosecuted criminally and sought a plea deal  -identified the triggerman or the hitman  as one "Cas", who was not the same person identified by various credible eyewitnesses interviewed by lead detective Hector Figueroa, and who had also witnessed the actual crime, as Mr. Hector Figueroa testified in an affidavit and during plaintiff's initial trial.

28. **Eventually, state prosecutors decided to proceed against plaintiff and her siblings, despite compelling evidence identifying another prime suspect, and in 2003 plaintiff was then tried and convicted of the double-murder,  based on the two <u>new</u> previously unidentified witnesses which agent Colon-Baez had purportedly "uncovered" as part of a <u>new</u> investigation, ignoring the proofs uncovered during the initial investigation, which had credibly identified one "Pijuan", or "Falo" as the culprit.**

29.  Agent Figueroa testified at the trial, and signed an affidavit thereto, stating unequivocally that another suspect had been identified, and that plaintiff was not initially a suspect in the matter.

30. Nonetheless, at the time of the 2003  trial, state prosecutors had withheld exculpatory evidence, e.g. detective Hector Figueroa's report, as well as a sworn statement by the progenitor of one of the victims who had exculpated plaintiff, thereby resulting in the conviction of plaintiff based *solely* on the testimony of these two new witnesses who alleged a conspiracy, although they were not eyewitnesses to the double-murder itself.

31. After a series of exhaustive appeals and collateral attacks on her sentence, and **<u>over 10 years of incarceration</u>**,  plaintiff was eventually granted a new trial in 2016.

32.   One of the Commonwealth's primary witnesses, who had been identified by detective Colon-Baez, to wit, one Yahaira Soto, at the 2016 trial <u>recanted</u> her prior testimony from the 2003 trial,  and claimed that she had been threatened by witness Sharon Placeres - who had been indicted in a separate murder investigation- into testifying against the plaintiff herein in 2003.

33.  As such, she was now (in 2016) unable to testify that plaintiff had conspired with anyone to commit the double-murder.

34.  As a result, all charges against plaintiff were dropped in early 2016.

35. On October 25, 2016, plaintiff commenced the underlying 42 USC §1983 civil
rights  action action, **Docket 3:16-cv-02873-SCC**,  which has been stayed since
2017 by virtue of the PROMESA automatic stay.

36. At the time the automatic stay was imposed, no depositions or discovery had
taken place, as the pleading/dispositive motion stage had only recently
concluded.

37. This Court on August 29, 2017 denied the lifting of the automatic stay, and as
such this claim remains **disputed and unliquidated**.  **Exhibit C**.


## COUNT I
## Liquidation of Disputed Claim

1. Plaintiff incorporates all preceding paragraphs  in this complaint as if fully set
forth herein.

2. In its August 29, 2017 order, this Court court stated that "***Movant's unsecured
claims for monetary relief can be liquidated and addressed through the  claims
process in this district court proceeding***."  **Exhibit C**

3. Accordingly, plaintiff requests that her disputed claim be liquidated in this
forum, and/or that the stay be lifted so that she may liquidate the disputed claim
in action 3:16-cv-02873-SCC.

**WHEREFORE, the Plaintiff requests and prays that this Honorable Court commence proceedings to resolve the disputed and unliquidated nature of this debt or claim, or that the automatic stay be lifted such that this claim may be resolved in the Civil Rights Action  with Docket 3:16-cv-02873-SCC.**

# COUNT II
## Dischargeability

1.   Plaintiff incorporates all preceding paragraphs  in this complaint as if fully set forth herein.

2.  Plaintiff's civil rights complaint alleged, *inter alia*, the following intentional non-dischargeable torts: malicious prosecution, intentional infliction of emotional distress, abuse of process, and wrongful conviction.  **Exhibit A.**

3.  These debts are not dischargeable under **11 U.S.C. § 523(a)(6)**.

4.   Although the foregoing statute may not be applicable in PROMESA proceedings, this Court retains discretion to declare these claims **non-dischargeable** as a matter of common law, equitable principles, and/or as per applicable Bankruptcy, Supreme Court, or First Circuit jurisprudence.

**WHEREFORE, the Plaintiff requests and prays that this Honorable Court declare this claim non-dischargeable, having been the result of a "willful and malicious injury by the debtor" and/or Fraud.**

RESPECTFULLY SUBMITTED

**<u>Dated</u>: August 12, 2022**

I HEREBY CERTIFY that on August 11, 2022 I electronically filed the foregoing
Motion with the clerk of the court using the CM/ECF electronic filing system,
which will send notification of such filing to the attorneys of record.

<u>Santos A. Perez /s/____</u>
Lcdo. Santos A. Perez-Mercado
USDC-PR 308105
Bufete PerezMPR
150 Speedwell,
Morristown, NJ, 07960
(787)773-1477
(973)910-1647
www.PerezMPR.Com
www.NJLawCounsel.Com
sperez@njlawcounsel.com