## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of,<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>     Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3567-LTS<br><br>**This Court Filing Relates Only to HTA's Title III Case (Case No. 17-BK-3567-LTS)** |

### SUPPLEMENTAL BRIEF OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. IN FURTHER SUPPORT OF THE FOURTH AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................4

I.      ASSURED COULD HAVE SATISFIED ITS OBLIGATIONS BY PAYING
        PRINCIPAL PLUS ACCRUED INTEREST ON THE HTA PETITION DATE,
        AND ASSURED RETAINS THE RIGHT TO DO SO AT ANY TIME ON OR
        PRIOR TO THE ORIGINAL MATURITY DATE (QUESTION 2(A)). ...........................4

        A.      Assured Could Have Satisfied its Obligations by Paying Principal Plus
                Accrued Interest on the HTA Petition Date. ...........................................................4

        B.      Assured Retains the Right to Satisfy its Obligations by Paying Principal
                Plus Accrued Interest at any Time on or Prior to the Original Maturity
                Date. .........................................................................................................................5

II.     BANKRUPTCY-RELATED ACCELERATION APPLIES TO THE
        OBLIGATIONS OF FINANCIAL GUARANTY INSURERS UNDER
        POLICIES GOVERNED BY THE NEW YORK INSURANCE LAW, AND
        CAN ALSO APPLY TO THE OBLIGATIONS OF OTHER NON-DEBTORS
        (QUESTION 2(B)) ..........................................................................................................8

III.    A PLAN OF ADJUSTMENT OR CONFIRMATION ORDER COULD ALSO
        RESULT IN ACCELERATION BY OPERATION OF LAW (QUESTION 2(C)). ........11

IV.     OPPENHEIMER RECOGNIZED THAT N.Y. INS. LAW § 6905 ALSO
        PROVIDES A "STATUTORY RIGHT" FOR AN INSURER TO ACCELERATE
        PAYMENTS UNDER A POLICY (QUESTION 2(D)) ...................................................13

V.      SECTION 26.1(D) OF THE PLAN MERELY ASSIGNS PREPETITION
        CONTRACTUAL REDEMPTION RIGHTS TO ASSURED, AND DOES NOT
        HAVE ANY APPLICATION TO THE PRESENT DISPUTE (QUESTION 2(E)). ........15

CONCLUSION ...................................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Claybrook v. Autozone Texas, L.P. (In re Am. Remanufacturers, Inc.),*
451 B.R. 349 (Bankr. D. Del. 2011) ......................................................................10

*HSBC Bank USA, Nat. Ass'n v. Calpine Corp.,*
07 CIV 3088 GBD, 2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010) ......................11

*In re Connector 2000 Assoc., Inc.,*
Case No. 10-04467-dd (Bankr. D.S.C.) ...................................................................5

*In re Manville Forest Prods. Corp.,*
43 B.R. 293 (Bankr. S.D.N.Y. 1984) ..................................................................7, 11

*In re Oakwood Homes Corp.,*
449 F.3d 588 (3d Cir. 2006).................................................................................10

*In re Premier Entertainment Biloxi LLC,*
445 B.R. 582 (Bankr. S.D. Miss. 2010)...............................................................10

*In re Princess Baking Corp.,*
5 B.R. 587 (Bankr. S.D. Cal. 1980) .......................................................................7

*In re Ridgewood Apartments of DeKalb Cnty., Ltd.,*
174 B.R. 712  (Bankr. S.D. Ohio 1994) ...............................................................10

*Oppenheimer AMT-Free Municipals v. ACA Fin. Guar. Corp.,*
110 A.D. 3d 280 (N.Y. App. Div. 2013) ...................................................... *passim*

*Petroleum & Franchise Funding, LLC v. Dhaliwal,*
688 F. Supp. 2d 844 (E.D. Wis. 2010)....................................................................9

**Statutes and Other Authorities:**

11 U.S.C.

§ 944(a)(3) ................................................................................................12
§ 1123(a)(5)(F).........................................................................................12
§ 1123(a)(5)(H).........................................................................................12

PROMESA § 301(a) (incorporating 11 U.S.C. § 944) .................................................12

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") respectfully submit this supplemental brief (the "Supplemental Brief") in response to the *Order to Supplement Briefing of Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (ECF No. 21802, the "Supplemental Briefing Order" or "Order"), in further support of the *Reply of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (ECF No. 21768, the "Reply") and the *Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (ECF No. 21769, and including as further amended, the "HTA Plan" or "Plan"), and in further opposition to the *Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (ECF No. 21617, the "Objection" or "Obj."),[2] and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Objectors, unhappy with the prospect of being paid par, plus all accrued interest, contend that the acceleration of the HTA Bonds should not apply to them, because they hold bonds that, *at issuance*, were allegedly sold at a premium to face value.  However, Objectors' own 2019 statements reveal that they acquired virtually all of their bonds long after the original 2005 and 2007 issuance dates, long after the acceleration of HTA's debt by operation of HTA's

---

[2] Unless otherwise indicated, all references to ECF numbers in this Supplemental Brief refer to the docket in Case No. 17-BK-3283-LTS.

2017 Title III filing, and after the 2019 confirmation of the COFINA plan, which recognized the acceleration of the COFINA bonds.[3]

2.      In its Reply to the Objection, Assured established that (i) the acceleration-related provisions in the HTA Plan are consistent with Assured's right under the Assured Insurance Policies to accelerate its own payment obligations where the underlying HTA Bonds have been accelerated, including by operation of law (*see* Reply §§ I.A-C); (ii) the fact that Objectors' bonds may originally have been issued at a premium does not give Objectors any special rights under the Assured Insurance Policies, which expressly disclaim any obligation to pay any prepayment or "make-whole" premium (*see* Reply § I.D); and (iii) the exculpation and related provisions in the HTA Plan are appropriate, as they do not deprive Objectors of any rights under the policies (*see* Reply § II).

3.      On August 10, 2022, the Court entered the Supplemental Briefing Order, directing the Objectors, Assured, and the Oversight Board to submit supplemental briefing on specific issues. As set forth below, many of the issues raised by the Court can be resolved by reference to *Oppenheimer AMT-Free Municipals v. ACA Fin. Guar. Corp*., 110 A.D. 3d 280, 283 (N.Y. App. Div. 2013), discussed at Reply ¶¶ 19-20. In *Oppenheimer*, the First Department, interpreting substantially the same policy language as is contained in Assured's policies, ruled that, even though the insured bonds did not provide for acceleration as a matter of contract, the chapter 9 filing accelerated the bonds by operation of law. Further, this acceleration triggered the insurer's

---

[3] A 2019 statement filed by Franklin Advisers Inc. ("Franklin") on March 3, 2020, over a year after confirmation of the COFINA plan, shows that Franklin held *$0* HTA Bonds. (ECF No. 12006). By contrast, Franklin's most recent 2019 statement, filed in July 2022 (ECF No. 21673), shows that Franklin held over $188 million in HTA bonds, meaning that Franklin acquired all of its HTA Bonds long after they were sold in 2005 or 2007 and long after confirmation of the COFINA plan in February 2019. Similarly, in March 2020, the other Objector, Nuveen Asset Management, held only around $29 million of HTA Bonds, whereas in July 2022 it held over $161 million.

contractual right to make payment on an accelerated basis, either on the date of the bankruptcy filing or at a time of the insurer's choosing thereafter, as long as payment was not made after the original maturity date of the bonds. *Oppenheimer* is the leading case addressing the operation of New-York-law-governed financial guaranty insurance in the event of a chapter 9 bankruptcy filing. The acceleration-related provisions in the COFINA, Commonwealth, PBA, CCDA, PRIFA, and now HTA plans were all drafted based on *Oppenheimer*, as well as based on the plain language in the policies broadly permitting accelerated payment by the insurer in the event of *any* acceleration of the underlying bonds.

4.    The acceleration-related provisions in the HTA Plan are essential building blocks of that Plan, just as they were essential building blocks of each of the relevant prior restructurings. The provisions relate not only to Assured Insured Bonds, but also to bonds insured by each of the other monoline insurers supporting the Plan.[4]  Indeed, Section 5.3 of the HTA/CCDA Plan Support Agreement expressly requires the inclusion of these types of acceleration-related provisions in the Plan (*see* ECF No. 21269-2 § 5.3).  As a result, the monolines currently supporting the plan would likely have the ability to terminate their support if these provisions were removed, with any such termination rendering their votes in favor of the Plan "automatically null and void *ab initio*."  *See* HTA/CCDA Plan Support Agreement § 7.2 (ECF No. 21269-2).[5]

5.    Assured's responses to the Court's specific questions are set forth below:

---

[4] *See, e.g.*, HTA Plan §§ 26.2(c) (recognizing acceleration of National Insured Bonds); 26.3(d) (recognizing acceleration of FGIC Insured Bonds); 26.4(c) (recognizing acceleration of Ambac Insured Bonds).

[5] Assured also notes that, although Objectors failed to file a timely objection, Assured *did* file a timely reservation of rights, meaning that Assured's ability to object to any Plan not compliant with the HTA/CCDA Plan Support Agreement is preserved.  *See* ECF No. 21606.

**ARGUMENT**

I.     **Assured Could Have Satisfied its Obligations by Paying Principal Plus Accrued Interest on the HTA Petition Date, and Assured Retains the Right to Do So at Any Time on or Prior to the Original Maturity Date (Question 2(a)).**

6.     In question 2(a), the Court asks "If . . . Assured could have made the election of a full payment on the date of the bankruptcy . . . , could Assured also make the election several years later, on the effective date of a plan of adjustment?" *Oppenheimer* clearly answers both questions "yes," provided that Assured pays off the insured HTA Bonds by "no later than the maturity date on the original bonds." *Oppenheimer*, 110 A.D. at 286.

A.     **Assured Could Have Satisfied its Obligations by Paying Principal Plus Accrued Interest on the HTA Petition Date.**

7.     With respect to acceleration-related issues, *Oppenheimer* has many relevant similarities to this case. Like this case, *Oppenheimer* dealt with the bankruptcy filing of a highway authority, namely a South Carolina highway entity called "Connector 2000." As in this case, the indenture for the underlying insured toll road bonds did not provide for acceleration as a contractual remedy, and the relevant issue was whether the automatic acceleration caused by the bankruptcy filing was nonetheless sufficient to trigger language, materially identical to the language in the Assured Insurance Policies, that permits the insurer to accelerate payments under its policy upon an "acceleration or other advancement of maturity" of the underlying bonds.[6]

8.     The *Oppenheimer* court expressly recognized that the insurer could have satisfied its obligations by paying an accelerated amount on the date of Connector 2000's chapter 9 filing.

---

[6] Similar to the Assured Insurance Policies, the insurance policy at issue in *Oppenheimer* provided that "Due Date of Payment," when "referring to the principal of an Obligation," means "the stated maturity date thereof," but "does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity *unless the Insurer shall elect, in its sole discretion*, to pay such principal due upon such acceleration together with accrued interest to the date of acceleration." *See Oppenheimer AMT-Free Municipals v. ACA Fin. Guar. Corp.* (N.Y. App. Div.), *Brief of Plaintiffs-Respondents* at 18 (emphasis in original).

Describing the legal situation at the moment of Connector 2000's chapter 9 filing, the court stated, "The bankruptcy filing had the effect of accelerating the claims on the original bonds. The [certificates of bond insurance], however, have no parallel acceleration requirement, *except at the sole option of defendant, which it did not exercise.*" *Oppenheimer*, 110 A.D. 3d at 282. The court was therefore clear that the insurer *did* have the option to satisfy its obligations by paying an accelerated amount as of the moment of the bankruptcy filing, although the insurer did not exercise that option.

**B.      Assured Retains the Right to Satisfy its Obligations by Paying Principal Plus Accrued Interest at any Time on or Prior to the Original Maturity Date.**

9.      The *Oppenheimer* court was equally clear that, even though the insurer had not *yet* exercised its right to accelerate payment as of the time of the court's opinion, the insurer retained the right to accelerate payment even years after the issuer's bankruptcy filing date. In its decision dated September 3, 2013, more than *three years* after Connector 2000's June 24, 2010 petition date,[7] the court held in the present tense that the insurer "**has the sole right to accelerate payment** for the losses to plaintiffs occurring as a result of issuer nonpayment under the original bonds." *Oppenheimer* 110 A.D. 3d at 286 (emphasis added). Even more clearly, the court held in the present tense that "defendant [*i.e.* the insurer] **has control over when it makes payments** and it **can do so** at a time when it believes the value of the new bonds is favorable to it, provided payment is no later than the maturity date on the original bonds." *Id*. (emphasis added).[8]

---

[7] *See* Amended Chapter 9 Voluntary Petition*, In re Connector 2000 Association, Inc.*, Case No. 10-04467-dd (Bankr. D.S.C. June 24, 2010), ECF No. 8.

[8] The *Oppenheimer* court made these holdings based on policy language that authorized the insurer "to pay [the] principal due upon such acceleration together with accrued interest to the date of acceleration." *See supra* note 6. The court did not read that policy language as limiting the insurer to paying the principal only immediately "upon [the] acceleration" (*i.e.* only on the petition date), nor did the court read that language as limiting the insurer to paying the principal only on the actual "date of acceleration" (again, the petition date). Instead, the court recognized that once the debt had been accelerated, the insurer retained the right to

10.     For context, these present tense holdings by the *Oppenheimer* court related to the insurer's ability to deduct the value of the new bonds the insured bondholders had received under Connector 2000's chapter 9 plan from the payments the insurer was required to make under its policy.  The court expressly recognized that the insurer might want to *wait* to exercise its right to make an accelerated payment until such time as the new bonds distributed under the plan were particularly valuable, such that the insurer could achieve the maximum possible offset against the amounts it was required to pay under its policy.  *See id.* ("The new bonds are meaningful in terms of . . . offsets to payment").   Conceptually, this is not very different from the "Assured Advancement Option" under the Standard Terms of the Assured HTA custodial trust, which permits Assured to pay off the legacy insured HTA Bonds at the Assured Acceleration Price of principal plus accrued interest at a time of Assured's choosing with 30 days' notice to insured bondholders, after which Assured may in turn sell the New HTA Bonds or other plan consideration formerly held by the trust to mitigate the cost of its policy payments.  *See* Standard Terms § 3.03, ECF No. 21770, Exhibit E.  This ability of Assured under the custodial trust documentation to wait to exercise its right to make an accelerated payment until such time as it can maximize the value of the plan consideration (here, the New HTA Bonds) for the benefit of itself and the insured bondholders is fully consistent with the *Oppenheimer* court's recognition of an insurer's ongoing right to make an accelerated payment at any time "favorable" to it, "provided payment is no later than the maturity date on the original bonds."  *Id.*[9]

---

pay the debt at any time prior to the original maturity date. As discussed below, the language in the Assured Sample Insurance Policy relied on by Objectors is even more favorable to the conclusion that the insurer retains the right to pay an accelerated amount after the petition date and prior to the original maturity date, because the Sample Insurance Policy authorizes Assured to make payment on "*any* earlier date" on which payment is due by reason of acceleration, rather than referring, like the *Oppenheimer* language, to the "date of acceleration."

[9] For the avoidance of doubt, under the custodial trust documentation Assured is required to satisfy any outstanding principal and/or accrued interest amount on the insured legacy HTA Bonds no later than the original maturity date of the bonds, such that the custodial trust structure satisfies *Oppenheimer*'s

11.    This holding in *Oppenheimer* is also consistent with the definition of "Due for Payment" in the Sample Insurance Policy relied on by Objectors.  That definition provides:

> **"Due for Payment"** means, when referring to the principal of a Bond, the stated maturity date thereof, or the date on which such Bond shall have been duly called for mandatory sinking fund redemption, and **does not refer to <u>any</u> earlier date on which payment <u>is</u> due by reason of** a call for redemption (other than by mandatory sinking fund redemption), **acceleration or other advancement of maturity (<u>unless Assured Guaranty in its sole discretion elects to make any principal payment, in whole or in part, on such earlier date</u>)** and means, when referring to interest on a Bond, the stated date for payment of such interest.

12.    This definition permits Assured, "in its sole discretion," to treat the insured HTA Bonds as "Due for Payment" on "*any* earlier date on which payment *is* due by reason of . . . acceleration or other advancement of maturity."  Assured can therefore treat the bonds as "Due for Payment" not only on the singular date on which they were first accelerated (*i.e.*, the HTA Petition Date), but also on "*any*" other date on which the bonds remain accelerated.  Similarly, Assured can treat the bonds as "Due for Payment" on any date on which payment "*is*" due, not just on the date that payment first *became* due.  Once debt has been accelerated by operation of a bankruptcy or Title III filing, it remains accelerated unless its original maturity date is reinstated, for example by operation of Section 1124(2) of the Bankruptcy Code, which permits a plan to "reinstate[] the maturity of [a] claim or interest."  11 U.S.C. § 1124(2)(B); *see also Manville Forest Prods. Corp.*, 43 B.R. 293, 298 (S.D.N.Y. 1984) (noting that a debtor may "deaccelerate a contract and **reinstate its original maturity date** pursuant to Section 1124(2) of the Code") (emphasis added).[10]  Absent

---

requirement that the insurer make payment "no later than the maturity date on the original bonds." *See, e.g.*, Standard Terms § 3.08 ("Payments at Maturity Date"), ECF No. 21770, Exhibit E. "Maturity Date" is defined in the related custodial Trust Agreement as "the original maturity date of the relevant Assured Legacy Bonds (prior to acceleration)." *See* ECF No. 21770, Exhibit E.

[10] *See also, e.g.*, *In re Princess Baking Corp.*, 5 B.R. 587, 590-91 (Bankr. S.D. Cal. 1980) (concluding that although only one monthly installment on a promissory note had been "due" prior to the petition date, the "entire amount" was "due" after the petition date as a result of acceleration by operation of the Bankruptcy

such a de-acceleration of the debt and reinstatement of the original maturity date, every day after
the HTA Petition Date and prior to the original maturity date is an "earlier date on which payment
is due by reason of . . . acceleration or other advancement of maturity," and Assured is entitled "to
make any principal payment, in whole or in part," on any such date, including on the HTA
Effective Date or thereafter.

II.   **Bankruptcy-Related Acceleration Applies to the Obligations of Financial Guaranty
Insurers under Policies Governed by the New York Insurance Law, And Can Also
Apply to the Obligations of Other Non-Debtors (Question 2(b)).**

13.   In question 2(b), the Court asks Assured to "[p]lease provide support for the
argument, if intended, that bankruptcy-related acceleration applies to debt owed by non-debtors to
non-debtors."

14.   For clarification, Assured does *not* intend to advance any general argument about
whether bankruptcy-related acceleration applies to debt owed by non-debtors to non-debtors.
Instead, Assured's argument is specific to the acceleration-related language in the Assured
Insurance Policies themselves.  That language inherently links the timing of Assured's payment
obligations under the policy to the timing of the Debtors' payment obligations under the HTA
Bonds through the defined term "Due for Payment."  As set forth in the Reply and discussed above,
the Assured Insurance Policies require Assured to make payments on the HTA Bonds when those
bonds *themselves* are "Due for Payment."

15.   As with the prior question, the most relevant authority here is *Oppenheimer*.
Specifically, the *Oppenheimer* court recognizes the insurer's right to accelerate payment under this
type of policy provision as running "parallel" to the acceleration of the underlying bonds, with the
only difference being that the acceleration of the underlying bonds upon a bankruptcy filing is

Code, and remained "due" for purposes of effecting a setoff as of August 8, 1980, several months after the
April 24, 1980 petition date).

automatic whereas the parallel acceleration of payments under the insurance policy is "at the sole option" of the insurer. *Oppenheimer*, 110 A.D. 3d at 282. *Oppenheimer* also makes clear that acceleration by operation of the Bankruptcy Code is sufficient to trigger this particular policy language, which is consistent with New York Insurance Law § 6905(a) and is substantially similar to the policy language at issue in *Oppenheimer*. *See supra* n.6.

16.     Even though Assured's argument is focused on the specific policy language at issue and not based on a broader argument that bankruptcy-related acceleration applies to debt owed by non-debtors to non-debtors, acceleration of a debtor's debts by operation of a bankruptcy filing certainly can more generally accelerate the payment obligations of guarantors or other non-debtors, such as occurred in *Petroleum & Franchise Funding, LLC v. Dhaliwal*, 688 F. Supp. 2d 844, 848–49 (E.D. Wis. 2010). In that case, a central issue was whether a lender's claims against certain guarantors of a bankrupt entity had been accelerated. The relevant indenture contained a process for contractually accelerating the debt by providing a notice, but all parties conceded that no such notice had been sent, and that the debt had not been contractually accelerated. The court nonetheless concluded that the debt, including the lender's claims against the guarantors, had been accelerated by operation of the debtor's bankruptcy filing, and that as a result, the debt had become "**due and payable in full**," including with respect to the guarantors. *Id.* at 49 (emphasis added). The court stated that "[b]ecause the debt was accelerated and thus became due and payable in full, on . . . the date on which the borrowers filed petitions for bankruptcy . . . defendants [*i.e.*, the guarantors] are liable for the full amount of the unpaid principal on the notes." *Id. Petroleum* supports the proposition that in certain circumstances "bankruptcy-related acceleration applies to debt owed by non-debtors to non-debtors." *See* Supplemental Briefing Order ¶ 2(b).

17.     *Petroleum* is also consistent with *Oppenheimer*, as well as with the other cases already cited in the Reply holding that acceleration by operation of the Bankruptcy Code is not

dependent on contractual acceleration.  *In re Ridgewood Apartments of DeKalb Cnty., Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) ("Even without specific contractual language, a bankruptcy filing acts as an acceleration of all of a debtor's obligations."); *Claybrook v. Autozone Texas, L.P. (In re Am. Remanufacturers, Inc.)*, 451 B.R. 349, 367 (Bankr. D. Del. 2011) ("Even absent the CDA's acceleration clause . . . [u]pon a debtor's bankruptcy filing, the principal amount of all claims against the debtor is accelerated."); *see also In re Oakwood Homes Corp.*, 449 F.3d 588, 602 n.19 (3d Cir. 2006) ("Simply stated, the filing of a petition accelerates the principal amount of all unmatured claims against the debtor, whether or not a clause in a prepetition agreement provides that a bankruptcy filing accelerates the maturity date.").

18.    Against this dominant body of caselaw, Objectors cite a single case from the Bankruptcy Court for the Southern District of Mississippi that distinguishes between "acceleration of a debt under the Bankruptcy Code" and "contractual acceleration."  *See* Obj. ¶ 19 n.15 (citing *In re Premier Entertainment Biloxi LLC*, 445 B.R. 582, 630-31 (Bankr. S.D. Miss. 2010).  *Premier*, however, has no application here.  First, *Premier* neither involves interpretation of a bond insurance contract, nor applies New York insurance law, which governs here.  Second, the discussion of acceleration by operation of the Bankruptcy Code in *Premier* is *dictum*, because the indenture there contained a *contractual* provision providing for automatic acceleration upon a bankruptcy filing, and the court's holding was that the contractual provision advanced the maturity of the debt and deprived bondholders of an asserted right to a prepayment premium.  Unlike in *Petroleum*, where acceleration by operation of the Bankruptcy Code was central to the court's holding, the court in *Premier* did not need to consider acceleration by operation of law in order to reach its contractually-driven holding.  *See Premier*, 445 B.R. at 631 ("[B]y investing under the Indenture, **which included an automatic acceleration provision**, the Claimants . . . chose to forego

-10-

any prepayment premium in favor of an immediate right to collect their entire debt after a bankruptcy event of default.") (emphasis added).

19.     Moreover, the *Premier* court apparently misinterpreted two of the main authorities it cited in its *dictum* regarding Bankruptcy Code acceleration, *Calpine* and *Manville*, because both of those cases indicate that acceleration by operation of the Bankruptcy Code *does* advance the maturity of the debt.  For example, *HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*, 07 CIV 3088 GBD, 2010 WL 3835200, at \*3 (S.D.N.Y. Sept. 15, 2010), states that "the filing of a bankruptcy petition renders all of a petitioner's outstanding debts **mature and payable**" (emphasis added). Similarly, *In re Manville Forest Prods. Corp.,* 43 B.R. 293, 298 (S.D.N.Y. 1984), confirms that a bankruptcy filing changes the maturity date of the debt, noting that following an acceleration by operation of a bankruptcy filing a debtor has the ability to "**reinstate its original maturity date**" (emphasis added).

20.     Therefore, acceleration by operation of a bankruptcy or Title III filing clearly triggers a financial guaranty insurer's right to satisfy its obligations on an accelerated basis, and such an acceleration has also been recognized to accelerate the payment obligations of other non-debtors, such as guarantors.

## III.     A Plan of Adjustment or Confirmation Order Could Also Result in Acceleration by Operation of Law (Question 2(c)).

21.     In Question 2(c), the Court asks "If it is Assured's argument that bankruptcy is one of several possible grounds for acceleration by force of law and regardless of contrary contract terms, please provide examples of another bankruptcy or other event triggering an acceleration election otherwise expressly excluded from the terms of the underlying contract."

22.     To be clear, Assured's position, as set forth above, is that acceleration by operation of a Title III filing is the only event needed to trigger the acceleration-related language in the

Assured Insurance Policies, and that such acceleration is in fact the event that triggered the relevant policy language here, as recognized in *Oppenheimer*.

23.     However, as an alternative ground for confirming the HTA Plan, a plan of adjustment could also independently provide for acceleration of a debtors' debts, regardless of whether the underlying debt documents provided for acceleration.   *See*, *e.g.*, 11 U.S.C. § 1123(a)(5)(F) (authorizing a plan to provide for the " . . . modification of any indenture or similar instrument"); 11 U.S.C. § 1123(a)(5)(H) (authorizing a plan to provide for a "change in . . . [a] term of outstanding securities").

24.     Such a plan, once confirmed, would then become effective by operation of law. Specifically, by operation of Section 944(a) of the Bankruptcy Code, "[t]he provisions of a confirmed plan bind the debtor and any creditor, whether or not . . . such creditor has accepted the plan." 11 U.S.C. § 944(a)(3); *see also* PROMESA § 301(a) (incorporating 11 U.S.C. § 944).

25.     As noted in the Reply, any acceleration by operation of a confirmed plan of adjustment and the related provisions of the Bankruptcy Code would not effectuate any modification to the Assured Insurance Policies or vitiate any rights under those policies, because those policies have always contemplated that the HTA Bonds might be accelerated by operation of law, and have always expressly specified the effect of such an acceleration.  *See* Reply ¶ 29. Therefore, even absent the acceleration by operation of HTA's Title III filing that occurred here, provisions like Sections 26.1(c), 26.2(c), 26.3(d), and 26.4(c) of the HTA Plan, that recognize acceleration of the HTA Bonds, could result in an acceleration by operation of law.

26.     A third, alternative example of an acceleration by operation of law could also be an acceleration by operation of a confirmation order.  Specifically, as noted in the Reply, paragraph 52 of the Court's Commonwealth Confirmation Order ordered that certain payments be made on the HTA Bonds, and also ordered specifically that such payments "reduce the principal amount"

of such bonds, regardless of whether the bonds had otherwise matured by their original terms.  *See* Reply ¶ 23; Commonwealth Confirmation Order ¶ 52 (ECF No. 19813).  As set forth in the Reply, Assured's understanding of that paragraph of the Commonwealth Confirmation Order is that it reflects, and is consistent with, the acceleration of the HTA Bonds by operation of HTA's Title III filing.  *See* Reply ¶ 23.  If that interpretation were not accepted, however, then the Commonwealth Confirmation Order would alternatively need to be understood to have independently accelerated or otherwise advanced the maturity of the HTA Bonds, and such an acceleration or other advancement of maturity by operation of the Commonwealth Confirmation Order would in turn have triggered Assured's right under the Assured Insurance Policies to elect to accelerate its own payment obligations in the event of any "acceleration or other advancement of maturity."

27.    Like an acceleration by operation of a plan of adjustment, an acceleration or other advancement of maturity by operation of the Commonwealth Confirmation Order would not constitute a modification of the Assured Insurance Policies, and instead would merely trigger Assured's already-existing right under the policies to accelerate payment in the event of an "acceleration or other advancement of maturity" with respect to the HTA Bonds.

**IV.    *Oppenheimer* Recognized that N.Y. Ins. Law § 6905 Also Provides a "Statutory Right" for an Insurer to Accelerate Payments under a Policy (Question 2(d)).**

28.    In Question 2(d), the Court asks Assured to "[p]lease provide support for the apparent argument, if intended, in paragraph 19 of the Assured Reply that N.Y. Ins. Law § 6905 (or the above bolded language in the definition of 'Due for Payment') provides an independent basis to accelerate a debt rather than only providing insurers a defense to acceleration."

29.    This question appears to relate to language from the *Oppenheimer* decision quoted in paragraph 19 of the Reply stating that "This policy provision is consistent with Insurance Law § 6905(a), which, as a protection for the insurer, provides that where payments on the insured

bonds are *accelerated **for any reason***, the guaranteed payments shall still be made when the payments were originally scheduled to come due, ***unless the insurer accelerates payment***." *Oppenheimer*, 110 A.D. 3d at 283 (emphasis added).

30.     Assured does not read the quoted language from *Oppenheimer* to indicate that a financial guaranty insurer has the right to independently accelerate an underlying insured debt based solely on either New York Insurance Law § 6905(a) or the relevant acceleration-related policy language.  Rather, Assured understands the *Oppenheimer* court to be saying that where the underlying insured debt has already been accelerated, whether by operation of contract or by operation of law, the insurer then has the right to accelerate *its own* payment obligations under the related policy at its election.  Indeed, the *Oppenheimer* court expressly states that the insurer has the option to "accelerate[] payment," meaning payment under its own insurance policy.  *Id.*

31.     The insurer's acceleration-related rights therefore have both a defensive and a potentially active component.  On the one hand, the acceleration of the underlying debt does not in itself permit insured bondholders to treat the underlying insured debt as "Due for Payment" under the policy without the insurer's consent.  The insurer therefore has a defense against any demand by the insured bondholders for accelerated payment, which, as *Oppenheimer* says, is a "protection for the insurer."  *Oppenheimer*, 110 A.D. 3d at 283.  But the acceleration-related language not only provides a defense; it also gives the insurer the active ability to elect, in its sole discretion, to pay the accelerated amount.  Therefore, the policy language not only allows the insurer to protect itself against demands for accelerated payment, but also gives the insurer active "control over when it makes payments."  *Oppenheimer* 110 A.D. 3d at 286.

32.     As to whether this right of the insurer to accelerate its own payment obligations in the event of an acceleration of the underlying insured debt is primarily contractual or primarily statutory, Assured in its Reply relied primarily on the contractual policy language as the basis for

this right.  However, the *Oppenheimer* court did also refer to it as "the insurer's unique *statutory* right to accelerate payment*,*" indicating that New York Insurance Law § 6905(a) would also give an insurer this right even if it were not expressly set forth in the policy.  *Oppenheimer*, 110 A.D. 3d at 285 (emphasis added).[11]

**V.    Section 26.1(d) of the Plan Merely Assigns Prepetition Contractual Redemption Rights to Assured, and Does not have any Application to the Present Dispute (Question 2(e)).**

33.    In question 2(e), the Court asks Assured to "[p]lease address the basis upon which any right to redeem, call, or accelerate debts held by a debtor by virtue of its bankruptcy filing could then be assigned to a non-debtor third party."

34.    This question relates to Section 26.1(d) of the HTA Plan, which provides "Notwithstanding any other provision of the HTA Plan, on the HTA Effective Date, HTA shall be deemed to have assigned to Assured any rights to redeem and call the Assured Insured Bonds and

---

[11] The sentence in which this reference to the insurer's "unique statutory right" occurs is somewhat opaque and may require some explanation. In *Oppenheimer*, the insurer argued, among other things, that it was excused from performance under its policy based on "the principle of law that a surety/guarantor is relieved of liability where, without its consent, there is any alteration of the underlying insured obligation," arguing that the issuer's bankruptcy plan had constituted such a nonconsensual alteration of the underlying obligation. *See Oppenheimer*, 110 A.D. 3d at 285. The insured bondholders argued that the insurer should not be permitted to invoke this "nonconsensual alteration" defense because the insurer's sole right to accelerate payment deprived the insured bondholders of a means to enforce the debt upon the issuer's bankruptcy filing, meaning that the insured bondholders were not able to take effective action until after the chapter 9 plan was already confirmed. *See, e.g.*, *Oppenheimer AMT-Free Municipals v. ACA Fin. Guar. Corp.* (N.Y. App. Div.), *Brief of Plaintiffs-Respondents* at 39-40. The *Oppenheimer* court rejected this particular argument by the insured bondholders, stating that "[w]e do not go so far as to adopt plaintiffs' position that a monoline insurer can never assert such a [nonconsensual alteration] defense on account of the insurer's unique statutory right to accelerate payment." This sentence in *Oppenheimer* referring to a "defense" is therefore not referring to the insurer's right to accelerate payment itself as a "defense;" it is addressing the question of whether the insurer's right to control the timing of payment due to an acceleration should deprive the insurer of a *different* defense, namely the nonconsensual alteration defense. Here, Assured is not asserting any "nonconsensual alteration" defense, nor is Assured seeking to be excused from performance under its policy. To the contrary, Assured has fully performed its contractual obligations to date, and will continue to do so in the future. Therefore, this sentence in *Oppenheimer* has no relevance to the current case, except insofar as it indicates that the insurer's right to accelerate payment is "statutory" as well as contractual.

any related rights such that such rights may be exercised directly and exclusively by Assured as if it were HTA for such purpose, and any amounts due in connection with such redemption shall be equal to the lesser of the applicable redemption price and the Assured Acceleration Price."

35.     To clarify, Section 26.1(d) does *not* purport to assign to Assured any rights "held by a debtor *by virtue of its bankruptcy filing*."  Instead, Section 26.1(d) is just an assignment by HTA to Assured of any pre-Title-III contractual rights to redeem or call Assured Insured Bonds that HTA may have under the prepetition bond documents, including the HTA Bond Resolutions.

36.     Objectors note that Section 26.1(d) does not apply to their bonds because their bonds are not subject to a redemption or call provision.  *See* Obj. ¶ 19.  But Objectors' bonds are not the only HTA Bonds, and some of the HTA Bonds insured by Assured are in fact subject to redemption or call pursuant to their prepetition terms.[12]  Section 26.1(d) relates to such callable bonds, and not to Objectors' bonds.

37.     Given that Objectors concede that Section 26.1(d) does not apply to their bonds, Section 26.1(d) has no relevance to the Objection.  Assured's position is not that Objectors' bonds can be called, but rather that they have been accelerated by operation of law.

## **CONCLUSION**

For the reasons set forth above and in the Reply, the Court should overrule the Objection and confirm the HTA Plan.

---

[12] *See*, *e.g.*, Official Statement for Puerto Rico Highways and Transportation Authority Highway Revenue Refunding Bonds, at p. 8 (describing "Redemption Provisions" related to Series AA bonds), *available at* https://emma.msrb.org/MS205757-MS181065-MD351019.pdf;  Official Statement for Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds and Transportation Revenue Refunding Bonds at p. 9 (describing "Redemption Provisions" related to Series D, E, and F bonds), *available at* https://emma.msrb.org/MS27967-MS163970-MS607078.pdf.

Dated:    New York, New York
           August 13, 2022

CASELLAS ALCOVER & BURGOS P.S.C.    CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Heriberto Burgos Pérez*         By: */s/ Howard R. Hawkins*
    Heriberto Burgos Pérez            Howard R. Hawkins, Jr.*
    USDC-PR 204809               Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez        Casey J. Servais*
    USDC-PR 203114               William J. Natbony*
    Diana Pérez-Seda              Thomas J. Curtin*
    USDC-PR 232014               200 Liberty Street
    P.O. Box 364924              New York, NY 10281
    San Juan, PR 00936-4924       Telephone:  (212) 504-6000
    Telephone:(787) 756-1400      Facsimile:   (212) 504-6666
    Facsimile: (787) 756-1401       Email:  howard.hawkins@cwt.com
    Email:  hburgos@cabprlaw.com           mark.ellenberg@cwt.com
           rcasellas@cabprlaw.com         casey.servais@cwt.com
           dperez@cabprlaw.com            bill.natbony@cwt.com
                                  thomas.curtin@cwt.com

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

    * Admitted *pro hac vice*

    *Attorneys for Assured Guaranty Corp. and
    Assured Guaranty Municipal Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notify cation of such filing to all parties of record in the captioned case.

At New York, New York, the 13th day of August, 2022.

By:   <u>/s/ *Howard R. Hawkins, Jr.*   </u>
Howard R. Hawkins, Jr.*
*admitted pro hac vice