**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**SUPPLEMENTAL BRIEF OF HTA INSURED BONDHOLDER GROUP REGARDING ITS LIMITED OBJECTION TO CONFIRMATION OF THE THIRD AMENDED TITLE III PLAN OF ADJUSTMENT OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY AT THE DIRECTION OF THE COURT**

Franklin Advisers, Inc. and Nuveen Asset Management (collectively, the "**HTA Insured Bondholder Group**"), submit this supplemental brief as directed by the Court in its *Order to*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("**COFINA**") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("**HTA**") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("**ERS**") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("**PREPA**") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("**PBA**") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Supplement Briefing of Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1368] (the "**Supplemental Briefing Order**"),[2] and respectfully state as follows:

1. The Supplemental Briefing Order (at 2-3) directs the HTA Insured Bondholder Group to address the following issues:

    a. Please review the following bolded language from the definition of "Due for Payment" from Appendix XII to the Puerto Rico Highways and Transportation Authority Official Statement, dated February 15, 2007 (filed as Exhibit 1 to Docket No. 21619 in Case No. 17-3283 and Docket No. 1303 in Case No. 17-3567), as quoted at paragraphs 4 and 20 in the IBG Objection, and in paragraphs 1, 15, and 16 of the Assured Reply:

    'Due for Payment' means, when referring to the principal of a Bond, the stated maturity date [of the bond], or the date on which such Bond shall have been duly called for mandatory sinking fund redemption, and does not refer to any earlier date on which payment is due by reason of a call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity (**unless Assured Guaranty in its sole discretion elects to make any principal payment, in whole or in part, on such earlier date**) and means, when referring to interest on a Bond, the stated date for payment of such interest.

        i. Does the bolded language enable Assured to pay off all or part of the principal at will, and under what circumstances? If Assured could and did pay off all of the principal, what, if any, further liability would Assured have under the insurance policies? Please provide examples.
        ii. Would the bolded language permit Assured to accelerate the payoff of principal in connection with a bond issuer's bankruptcy filing?
        iii. If so, and if Assured could have made the election of a full payment on the date of the bankruptcy ("such earlier date"), could Assured also make the election several years later, on the effective date of a plan of adjustment?

    b. Assured argues, at paragraph 30 and footnote 19 of the Assured Reply, that "in purchasing their Assured Insured Bonds and receiving the benefits of the Assured Insurance Policies, [the HTA Bondholder Group] agreed to give Assured the right to control consent and voting rights with respect to those bonds" specifically in the event of a reorganization or liquidation. Why is the quoted insurance agreement provision not dispositive of Assured's right to agree to the HTA Plan (including the principal payment provision) on behalf of Assured bondholders?

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1301] (the "**HTA Bondholder Objection**").

- 2 -

2. The Court's first set of questions to the HTA Insured Bondholder Group relate to the definition of "Due for Payment" in Assured's policy. There is no dispute that, generally speaking, the policy states that principal is Due for Payment only on the bonds' "stated maturity date" (or, not relevant here, on the date of a mandatory sinking fund redemption). The definition goes on to state that principal shall *not* be Due for Payment on any "earlier date on which [principal] payment is due by reason of a call for redemption . . . , acceleration or other advancement of maturity." The Court's questions focus on the parenthetical exception to that general rule (the "**Election Parenthetical**"), which provides that if principal becomes due from the issuer on an earlier date than the maturity date, by reason of a redemption, acceleration, or other advancement, then Assured may elect to treat such principal as Due for Payment "on such earlier date."

3. These "earlier date" provisions of the policy's Due for Payment definition are designed to protect Assured from having to pay principal to insured bondholders before the maturity date of the insured bonds. As Assured acknowledges in its Reply Brief [ECF No. 1349], this language "is not unique to Assured insurance policies, and instead is required by New York Insurance Law § 6905(a) to be included in all financial guaranty insurance policies governed by New York Law." *Id.* ¶ 16. That is, this policy language about earlier principal payment upon acceleration must be included in *all* New York bond insurance policies, regardless of whether the insured bond's governing documents actually provide for redemption, acceleration, or other advancement of maturity. With that context, we turn to each of the specific questions posed to us:

**_Question (a)(i):_** *Does the bolded language enable Assured to pay off all or part of the principal at will, and under what circumstances? If Assured could and did pay off all of the principal, what, if any, further liability would Assured have under the insurance policies? Please provide examples.*

4. The Court's bolded language—the Election Parenthetical—does not allow Assured to pay off all or part of the bond principal at will. Rather, the only circumstance in which Assured

- 3 -

is permitted to pay principal to insured bondholders, other than on the bonds' "stated maturity date," is on the occurrence of an "earlier date," if any, on which HTA's payment of principal to bondholders becomes due by reason of a call for redemption, acceleration, or other advancement of maturity. Only then—"on such earlier date"—does Assured have the discretion to elect to pay some or all of the bonds' principal early. Neither the Election Parenthetical nor its preceding language *create* any rights of redemption, acceleration, or advancement that do not already exist under the terms of the underlying bonds. Rather, the Election Parenthetical simply takes those rights—if any—as they exist in the underlying bond resolutions.[3]

5. The second part of the Court's question posits a hypothetical scenario: If Assured is legally entitled to pay some or all of the insured bonds' principal to the insured bondholders earlier than the bonds' maturity date, and it does so, then would Assured have any remaining liability to the insured bondholders? For the sake of clarity, we first note that premise of that hypothetical question is not satisfied here. There is no dispute that HTA's bond resolutions did not provide for any acceleration of HTA's obligation to pay principal upon HTA's filing of its Title III petition. So Assured was not then entitled to pay principal, nor is it entitled to elect to do so now. And for the reasons addressed below, the bankruptcy laws also did not accelerate HTA's obligation to pay principal upon HTA's Title III petition. But to answer the hypothetical question on its terms, if the policy entitled Assured to make an early payment to insured bondholders of the full amount of principal they are due, and Assured did so along with interest accrued as of the date

---

[3] If the Court were to find the Assured Insurance Policies ambiguous on this point—although they are not—then New York law governing the Policies requires that such ambiguity be construed against the insurer and in favor of the insured. *White v. Cont'l Cas. Co.*, 9 NY3d 264, 267-68 (2007) ("If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer.") (internal citations omitted). Puerto Rico law counsels the same result. *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 141, P.R. Dec. 139; 41 P.R. Offic. Trans. 14 (1996) (stating that under Puerto Rico law insurance contracts "are liberally construed in favor of the insured").

of the early payment, then in that counterfactual scenario Assured presumably would not have any remaining liability to the insured bondholders.

***Question (a)(ii):*** *Would the bolded language permit Assured to accelerate the payoff of principal in connection with a bond issuer's bankruptcy filing?*

6. No. The Assured Insured Bonds did not automatically accelerate, by operation of law, when HTA filed its Title III petition. Unlike many (and perhaps even most) other bond indentures, the 1968 and 1998 HTA Bond Resolutions *do not* make HTA's filing of a bankruptcy petition an event of default and *do not* provide that principal shall be accelerated and immediately payable upon such a filing. As Assured tells it, however, these undisputed facts do not matter because, by operation of the bankruptcy laws, *every* bankruptcy petition *immediately and automatically* accelerates the principal due on *every* bond, for *any and all* purposes, regardless of whether a bond's governing documents actually provide for that result. That is not the law—as Assured has itself explained to this Court in the COFINA Title III case.

7. Assured misapplies the cases that it cites for the mistaken proposition that all bond principal automatically accelerates and becomes due for payment upon any issuer's bankruptcy. Assured principally relies on *Oppenheimer AMT-Free Municipals v. ACA Financial Guarantee Corp.*, 110 A.D.3d 280 (N.Y. App. Div. 1st Dept. 2013), as suggesting that New York law recognizes such an automatic acceleration by operation of law. But the issue in *Oppenheimer* was whether the cancellation of certain insured bonds in a bankruptcy proceeding had negated the insurer's obligation to pay claims based on the issuer's nonpayment of those bonds (which, the court held, it did not). *Id.* at 286-87. The court noted, in dicta, that the bonds at issue in that case, unlike the bonds here, had provided that the issuer's bankruptcy filing was an event of default,[4]

---

[4] *Id.* at 281 ("Under the trust agreement if the issuer files a voluntary petition in bankruptcy, it is an event of default which entitles a bondholder to pursue all its legal remedies."); *id.* at 284 ("The filing of the bankruptcy petition by the

and that the issuer's "bankruptcy filing had the effect of accelerating the claims on the original bonds." *Id.* at 283. But in that case, the insurer had *not* elected to prepay any principal, and so the parties agreed that "no payment [was] due until such time as payments would have been made by the issuer under the original bonds had no bankruptcy proceeding been filed." *Id.* at 283. Whether or not an acceleration of the issuer's obligation to pay principal had occurred was not at issue. In fact, *Oppenheimer*'s actual holding supports the HTA Insured Bondholder Group, in that the court held that "when a municipal bond issuer files for bankruptcy, such reorganization should not in itself vitiate obligations under contracts with third parties." *Id.* at 285.

8. None of Assured's other cited cases address the question presented here. Some of them involve bonds that (unlike here) expressly provided for the acceleration of principal upon bankruptcy.[5] Others addressed only statutory acceleration for the limited purposes of allowing bondholders to file a proof of claim in the full amount of the debt owed, or determining whether a prepayment premium was due and owing.[6] Indeed, courts have held that a bankruptcy filing does not accelerate and require immediate payment of the full amount of bond principal unless the underlying bond documents require as much. *See In re Premier Entertainment Biloxi LLC*, 445

---

issuer is an event of default under the trust agreement and it also served to accelerate plaintiffs' claims against the issuer . . . .")

[5] *See Petroleum & Franchise Funding, LLC v. Dhaliwal*, 688 F.Supp. 2d 844, 848-49 (E.D. Wis. 2010) (discussing acceleration where bond documents provided for acceleration upon a bankruptcy filing); *HSBC Bank USA, Nat. Ass'n v. Calpine Corp.*, No. 07 CIV 3088 GBD, 2010 WL 3835200 at *3 (S.D.N.Y. Sept. 15, 2010) (same); *Claybrook v. AutoZone Texas, L.P. (In re Am. Remanufacturers, Inc.)* 451 B.R. 349, 367 (Bankr. D. Del. 2011) (same).

[6] *See In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987) (discussing acceleration only in context of determining whether a prepayment premium was permissible); *In re Manville Forest Prods. Corp.*, 43 B.R. 293, 297-98 (Bankr. S.D.N.Y. 1984), *aff'd in part, rev'd in part*, 60 B.R. 403 (S.D.N.Y. 1986) (acknowledging the distinction between statutory and contractual acceleration, and discussing acceleration only in the context of determining whether interest was owed because of a bankruptcy filing); *In re Granite Broad. Corp.*, 369 B.R. 120, 144 (Bankr. S.D.N.Y. 2007) (acknowledging the distinction between statutory and contractual acceleration, and discussing acceleration only in the context of whether a prepayment premium was due); *In re Princess Baking Corp.*, 5 B.R. 587, 590 (Bankr. S.D. Cal. 1980) (discussing acceleration only to determine whether setoff could be exercised); *In re Ridgewood Apartments of DeKalb Cty., Ltd.*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994) (discussing acceleration only in the context of determining whether a prepayment premium was due); *In re Oakwood Homes Corp.*, 449 F.3d 588, 602 n.19 (3d Cir. 2006) (acknowledging distinction between contractual and statutory acceleration).

B.R. 582, 630 (Bankr. S.D. Miss. 2010) ("The automatic acceleration of a debt under the Bankruptcy Code allows a lender to file a proof of claim for the unmatured principal amount of the debt under § 502 without violating the automatic stay, but such acceleration is relatively limited *and does not change the maturity date of the debt*," unlike a contractual acceleration provision that "actually advances the maturity date of the debt.") (emphasis added); *see also In re PCH Assocs.*, 122 B.R. 181, 198 (Bankr. S.D.N.Y. 1990) (similar).

9. Indeed, Assured argued against its current position in at least one other Title III proceeding before this Court. At issue in an adversary proceeding in COFINA's Title III case was the application of a payment waterfall vis-à-vis senior and subordinate bonds. In a summary judgment motion, Assured argued that the COFINA bonds had "not been accelerated" because the relevant bond resolution did not "contain an automatic acceleration clause." Assured Mot. for S.J. at 13-14, ECF No. 439, Adv. Proc. No. 17-133 (Case No. 17-3824). In support of the same motion, Assured expressly recognized the "distinction between 'acceleration' under Section 502 for purposes of filing a proof of claim and the type of acceleration that would be relevant to the interpretation of the [Bond] Resolution." Assured Reply in Further Support of its Mot. For S.J. at 5-6, ECF No. 499, Adv. Proc. No. 17133 (Case No. 17-3824).

10. Assured nevertheless contends here (at Assured Reply ¶ 18) that the Election Parenthetical in the Assured Insurance Policies necessarily contemplates an acceleration of principal by operation of law, upon HTA's Title III petition, because that policy language would otherwise be surplusage given that HTA's bond resolutions do not provide for such acceleration. But once again, as Assured recognizes, New York law requires this language be in all bond

- 7 -

insurance policies whether or not a given bond actually provides for acceleration. In short, with respect to the Assured Insured Bonds, the provision is legally required surplusage.[7]

Finally, as further evidence that HTA's Title III petition did not accelerate the principal on all of HTA's bonds is that the HTA Plan does not purport to accelerate any HTA bonds other than the Assured Insured Bonds and other insured bonds. *See* HTA Plan Art. XXVI (purporting to accelerate only the insured bonds). Under the Plan, that is, an HTA bond is accelerated if it has been insured, but not if it is uninsured. If Assured were right that bankruptcy filings provide for the automatic acceleration of *all* bonds, then these plan provisions would make no sense. But the Plan's disparate treatment of insured versus uninsured bonds makes clear that HTA's obligation to pay principal to its bondholders has not *actually* been accelerated in any meaningful respect. Rather, the supposed "acceleration" is designed solely to manufacture a basis on which Assured and other bond insurers can assert the unilateral right to prepay the insured bondholders.

**<u>Question (a)(iii):</u>** *If so, and if Assured could have made the election of a full payment on the date of the bankruptcy ("such earlier date"), could Assured also make the election several years later, on the effective date of a plan of adjustment?*

11. We note, once again, the HTA Insured Bondholder Group's objection to the question's premise, as described above. The answer to the Court's hypothetical question, however, is no. Assured's policy allows it to elect to prepay principal that is due from the issuer on an earlier date than the maturity date, by reason of redemption, acceleration, or other advancement, only "on such earlier date." Even if the Court were to adopt Assured's misguided contention that HTA's

---

[7] As Assured argues, the prospect of a bankruptcy filing by HTA was known at the time that the Assured Insurance Policies were issued, and indeed, the Assured Insurance Policies specifically address a bankruptcy filing in the context of discussing avoiding payments (see definition of "Avoided Payment"). If the intention in drafting the Assured Insurance Policies was to allow Assured to prepay the Assured Insured Bonds at any time following the issuer's bankruptcy filing, irrespective of what the governing bond documents say, then the Assured Insurance Policies could have explicitly said so, rather than using oblique phrases like "acceleration" and "other advancement of maturity" which, at the very least, are not synonyms for "bankruptcy."

filing of its Title III petition automatically accelerated the bonds' principal by operation of law, that would have given Assured the discretion to elect to prepay principal only on the petition date (*i.e.*, "on such earlier date" that the principal became due by acceleration). Accordingly, even if this Court were to hold that bankruptcy petitions accelerate bond principal, no matter what the underlying bond documents say, then it nevertheless should hold that Assured did not obtain a free option to make early principal payments at any time it chooses after—indeed, years after—the petition date.

***Question (b)****: Assured argues, at paragraph 30 and footnote 19 of the Assured Reply, that "in purchasing their Assured Insured Bonds and receiving the benefits of the Assured Insurance Policies, [the HTA Bondholder Group] agreed to give Assured the right to control consent and voting rights with respect to those bonds" specifically in the event of a reorganization or liquidation. Why is the quoted insurance agreement provision not dispositive of Assured's right to agree to the HTA Plan (including the principal payment provision) on behalf of Assured bondholders?*

12. The HTA Insured Bondholder Group does not dispute Assured's contractual right to control certain consent and voting rights on the HTA Plan—rights that Assured has exercised in support of the Plan. Nor is the Group challenging HTA's treatment of the Assured Insured Bond Claims under the proposed Plan—that is, what holders (including Assured) will receive from HTA on account of their claims against the estate. Rather, the Group is challenging only certain plan provisions purporting to limit non-debtor Assured's separate obligations to the insured bondholders, and to release Assured from any further liability to them.

13. Assured's right to vote on and consent to HTA's Plan do not entitle it to conclusively, and without challenge, affect, adjust, and be released from its contractual obligations, as a non-debtor, to other parties. HTA's bond resolutions do not provide for the acceleration of principal upon bankruptcy, and so the proposed Plan provisions at issue in the HTA Bondholder Objection are seeking to have this Court confirmation order deem that the Assured Insured Bonds shall nevertheless be treated as accelerated for purposes of Assured's insurance policies. What is

more, the proposed Plan purports to release non-debtor Assured from any further liability to its insured bondholders. It is blackletter law that, when a proposed plan of reorganization or adjustment would adversely affect the legal rights of entities against non-debtors, or release non-debtors from their liability to other parties, those provisions are subject to legal challenge by parties with an economic interest regardless of whether those parties have the right to vote on the plan. Section 1128(b) of the Bankruptcy Code, incorporated into PROMESA under 48 U.S. § 2161(a), provides that a "party in interest may object to confirmation of a plan," 11 U.S.C. § 1128(b), and section 1109(b) of the Bankruptcy Code defines "party in interest" to include "a creditor," who "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). *See also In re ACEMLA de Puerto Rico Inc.*, 2019 WL 311008 at *13 (Bankr. D.P.R. Jan. 22, 2019) (concluding that "all persons whose pecuniary interests are directly affected by the bankruptcy proceedings" have standing to object to a chapter 11 plan).

14. Any contrary rule would be untenable. Assured's theory that its voting rights preclude insured bondholders from challenging anything in the proposed Plan would mean, for example, that Assured could vote for a Plan purporting to extend the "stated maturity date" of the Assured Insured Bonds by two hundred years, and then argue that the Assured Insured Bonds now become "Due for Payment" under the insurance policy no earlier than 2222. Insured bondholders undoubtedly would have standing to challenge such an impermissible modification of their rights under Assured's policy. So, too, here. Insured bondholders granted Assured certain voting rights because, once HTA stopped paying debt service, Assured became the entity that bears the primary economic risks of HTA's restructuring. But those voting rights do not confer on non-debtor Assured *carte blanche* to modify its own rights and obligations, or to release itself from liability to insured bondholders, via HTA's Plan.

We hereby certify that, on this same date, we electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

**RESPECTFULLY SUBMITTED,**

In San Juan, Puerto Rico, today August 13, 2022.

| | |
|---|---|
| **TORO COLÓN MULLET P.S.C.**<br>P.O. Box 195383<br>San Juan, PR 00919-5383<br>Tel.: (787) 751-8999<br>Fax: (787) 763-7760<br><br>*/s/ Manuel Fernández-Bared*<br>MANUEL FERNÁNDEZ-BARED<br>USDC-PR No. 204,204<br>E-mail: mfb@tcm.law<br><br>*/s/ Linette Figueroa-Torres*<br>LINETTE FIGUEROA-TORRES<br>USDC-PR No. 227,104<br>E-mail: lft@tcm.law<br><br>*/s/ Nayda Perez-Roman*<br>NAYDA PEREZ-ROMAN<br>USDC–PR No. 300,208<br>E-mail : nperez@tcm.law<br><br>*Counsel for the HTA Insured Bondholder Group* | **KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>2000 K Street NW, 4th Floor<br>Washington, D.C. 20006<br>Tel.: (202) 775-4500<br>Fax: (202) 775-4510<br><br>*/s/ Matthew M. Madden*<br>MATTHEW M. MADDEN*<br>Email: mmadden@kramerlevin.com<br><br>*\* Admitted Pro Hac Vice*<br><br>**KRAMER LEVIN NAFTALIS & FRANKEL LLP**<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Tel.: (212) 715-9100<br>Fax: (212) 715-8000<br><br>*/s/ Douglas Buckley*<br>DOUGLAS BUCKLEY*<br>Email: dbuckley@kramerlevin.com<br><br>*\*Admitted Pro Hac Vice*<br><br>*Counsel for the HTA Insured Bondholder Group* |