UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 21617, 21768, 21779, & 21802** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>**Re: ECF Nos. 1301, 1349, 1361, & 1368** |
| FRANKLIN ADVISORS, INC., AND NUVEEN ASSET MANAGEMENT,<br><br>Objectors,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Respondent. | |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

**DEBTOR'S SUPPLEMENTAL REPLY TO
LIMITED OBJECTION OF THE HTA INSURED BONDHOLDER
GROUP TO THE THIRD AMENDED TITLE III PLAN OF ADJUSTMENT
OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

**To the Honorable United States District Court Judge Laura Taylor Swain:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this supplemental reply (the "Supplemental Reply") to the *Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 21617 in Case No. 17-3283 and ECF No. 1301 in Case No. 17-3567] (the "IBG Objection"), in support of the *Debtor's Omnibus Reply to Objections to Confirmation of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 21779 in Case No. 17-3283 and ECF No. 1361 in Case No. 17-3567] (the "Omnibus Reply"),[3] and in compliance with the *Order to Supplement Briefing of Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 21802 in Case No. 17-3283 and ECF No. 1368 in Case No. 17-3567] (the "Supplemental Briefing Order").

## BACKGROUND

1. On June 22, 2022, the Court entered the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] Capitalized terms used herein that are not otherwise defined shall have the meanings given to them in the Omnibus Reply.

2

*Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 1248 in Case No. 17-3567] (the "DS Order"), which, among other things, provided that Assured shall have the sole right to cast the votes to accept or reject the HTA Plan with respect to Classes 3, 7, and 11. DS Order ¶ 7. Franklin Advisors, Inc. and Nuveen Asset Management (collectively, the "Bondholder Group") did not object to entry of the DS Order.

2. On July 27, 2022, the Bondholder Group filed the IBG Objection.

3. On August 7, 2022, the Oversight Board filed its Omnibus Reply addressing, among other objections, the IBG Objection, and Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured") filed its *Reply of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority (ECF NO. 21617)* [ECF No. 21768 in Case No. 17-3283 and ECF No. 1349 in Case No. 17-3567] (the "Assured Reply").

4. On August 10, 2022, the Court entered the Supplemental Briefing Order directing the Bondholder Group, Assured, and the Oversight Board to file supplemental briefing to address certain issues in connection with the IBG Objection. The Oversight Board was directed to address the following:

   a. The Bondholder Group's argument that the HTA Plan is not confirmable unless modified.

   b. The Oversight Board's position on the third-party releases Assured has conditionally suggested for addition to the HTA Plan—to be addressed in the

3

context of the IBG Objection, as opposed to provisions of prior plans that were not the subject of objections.

### SUPPLEMENTAL REPLY

**A. The HTA Plan is Confirmable as Proposed.**

5. The Bondholder Group asserts the HTA Plan cannot be confirmed because it impermissibly (i) accelerates the maturity of the Assured Insured Bonds as of the HTA Effective Date, in contravention of the applicable bond documents (IBG Obj. ¶¶ 19-21), (ii) modifies contractual obligations under the Assured Insurance Policies of Assured, a non-debtor, to the beneficial holders of the Assured Insured Bonds (or to the fiscal agent for the bonds, on such beneficial holders' behalf) (IBG Obj. ¶¶ 8 at n.10, 22-23), and (iii) releases certain of Assured's contractual obligations without satisfying the exacting standard for granting third-party releases in the First Circuit (IBG Obj. ¶¶ 10-18).[4] Stripped of hyperbole, the Bondholder Group is not opposed to the HTA Plan's treatment of the Assured Insured Bonds (*i.e.*, the distribution of New HTA Bonds and Cash, as applicable), but rather, subsequent actions Assured may take in connection with Assured's obligations to holders of Assured Insured Bonds. See IBG Obj. ¶¶ 2, 18 ("[T]he Plan is intentionally structured to deprive the bondholders *of the full extent of their claims* by allowing Assured to prepay the Assured Insured Bonds before their maturity and without any compensation for the unamortized premium associated with the Premium Bonds . . . .") (emphasis added).

6. The Bondholder Group waived its objection to confirmation of the HTA Plan based on the proposed treatment of its claim, and Assured's rights in connection therewith, because (i) Assured was granted the right to vote to accept or reject the HTA Plan, and (ii) the Bondholder

---

[4] The Bondholder Group's argument relating to third-party releases is addressed in Section B below.

4

Group did not object to the DS Order, which explicitly provided Assured the right to vote for the Assured Insured Bonds for Classes 3, 7, and 11. Decretal paragraph 7 of the DS Order provides, "For the purposes of voting on the Plan, Ambac, Assured, National, or FGIC shall have the **sole right** to cast the votes to accept or reject the Plan on account of Claims in Classes 2, 3, 4, 6, 7, 8, 9, 11, 12, and 13, as applicable." (emphasis added); *see also* DS Order ¶ E at 4 ("Ballots to vote to accept or reject the Plan need only be provided to Ambac, Assured, National, or FGIC on account of Claims in Classes 2, 3, 4, 6, 7, 8, 9, 12, and 13, as applicable."). Classes 3, 7, and 11 voted to accept the HTA Plan, as noted in Exhibit A to the *Declaration of Christina Pullo of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 21774 in Case No. 17-3283, ECF No. 1356 in Case No. 17-3567].

7. A party that has voted to accept a plan cannot later object to confirmation based on the treatment of its claim. *See In re Mount Carbon Metro Dist.*, 1999 Bankr. LEXIS 1643, at *18 (Bankr. D. Colo. July 20, 1999) ("Most courts conclude that parties may not object to confirmation of a plan based upon interests of parties who have accepted it, and that parties who have voted to accept a plan may not object to confirmation based upon unfair treatment."). Because the Bondholder Group never objected to Assured's right to vote the Assured Insured Bond claims, they are bound by Assured's acceptance of the HTA Plan and the Assured Bondholder Election treatment provided therein.[5] To hold otherwise would allow the Bondholder Group to collaterally

---

[5] Indeed, the Assured Bondholder Elections were disclosed at the time the Debtor sought approval of the adequacy of the information contained in the Disclosure Statement and request for entry of the DS Order. *See Disclosure Statement for the Title III Plan of Adjustment for the Puerto Rico Highways and Transportation Authority* at 25-26, 207, 209-12, 234-37, 296-301 (filed May 2, 2022) [ECF No. 20562 in Case No. 17-3283]. By failing to object to Assured's right to vote the Assured Insured Bond claims, the Bondholder Group accepted the Assured Bondholder Election treatment contained in the HTA Plan.

5

attack this Court's determination of Assured's right to vote the Assured Insured Bond claims pursuant to the DS Order—over a month after it was entered. *See Poinsett Lumber & Mfg. Co. v. Drainage Dist.*, 119 F.2d 270, 274 (8th Cir. 1941) ("Thus every opportunity was given appellant to appear in the proceeding and assert its rights and claims. . . . Appellant could not remain silent until the proceedings had advanced to the stage of a final decree and then, in a collateral attack, make the claim successfully that its cause of action is not included in the plan of composition, nor affected by it, nor dealt with therein."); *Hendrick v. Avent*, 891 F.2d 583, 587 (5th Cir. 1990) ("As we have found that appellant's later claims were inconsistent with the crux of the initial decision and he had the opportunity to effectively litigate his claim in the bankruptcy court, the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order. The collateral attacks brought later are barred by res judicata.").

8.  The IBG Objection asserts the Assured Bondholder Election treatment provided under the HTA Plan precludes confirmation, but does not specify any provision of PROMESA that is violated, because there is none. Even assuming the Assured Bondholder Elections pursuant to the HTA Plan are inconsistent with the underlying documents governing the Assured Insured Bonds, the Assured Bondholder Election treatment provided pursuant to the HTA Plan does not provide an impediment to confirmation. The Assured Bondholder Elections is not prohibited by law, as opposed to prohibited pursuant to the underlying documents, and therefore does not violate PROMESA Section 314(b)(3) ("the debtor is not prohibited *by law* from taking any action necessary to carry out the plan") (emphasis added). In any event, whether the Assured Bondholder Election treatment would result in a breach of the underlying bond or insurance documents is not relevant to the confirmation requirements of Bankruptcy Code section 1129, as applicable pursuant to PROMESA Section 301(a), and PROMESA Section 314. Impairing unsecured claims under a

6

plan of adjustment might constitute a breach of contract, but such impairment is no violation of applicable law. *See In re Sanitary & Improv. Dist. #7*, 98 B.R. 970, 973 (Bankr. D. Neb. 1989) ("The Court further concludes that the Bankruptcy Code adopted pursuant to the United States Constitution Article 1, Section 8 permits the federal courts through confirmation of a Chapter 9 plan to impair contract rights of bondholders and that such impairment is not a violation by the state or the municipality of Article 1, Section 10 of the United States Constitution which prohibits a state from impairing such contract rights."); 6 Collier on Bankruptcy ¶ 943.03[4] (in discussing PROMESA Section 314(b)(3)'s analogue, Bankruptcy Code section 943(b)(4): "[T]he confirmation of a chapter 9 plan does not exempt a municipality from future compliance with ***state law***.") (emphasis added).[6] Indeed, PROMESA and the Bankruptcy Code affords a debtor flexibility in treating claims when proposing a plan of adjustment.[7] *See In re Chateaugay Corp.*, 89 F.3d 942, 949–50 (2d Cir. 1996) ("Congress gave reorganizing debtors considerable flexibility in their treatment of general unsecured creditors to position themselves for future economic viability."); *In re Mallinckrodt PLC*, 639 B.R. 837, 862 (Bankr. D. Del. 2022) ("The Code provides a debtor with flexibility to include provisions in a plan of reorganization that are not required by the Code but are deemed necessary to effectuate a fair and reasonable

---

[6] *But see Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* ¶¶ 151-156 [ECF No. 19812 in Case No. 17-3283] (providing for preemption of certain Puerto Rico laws as inconsistent with PROMESA).

[7] The Bondholder Group cites to *Oppenheimer AMT-Free Muns. v. ACA Fin. Guar. Corp.*, 1150 A.D.3d 280 (Sup. Ct. N.Y. 2013), for the proposition that obligations under monoline insurance policies cannot be modified through confirmation of a chapter 11 plan. IBG Obj. ¶ 23. *Oppenheimer* is distinguishable because, there, the Court noted the plan itself did not provide for any modification of the insurance contracts. *Oppenheimer*, 1150 A.D.3d at 285 ("Although releases were made in favor of the issuer and others, the ***terms of the releases do not include***, and consequently do not extend to, defendant . . . .") (emphasis added). Here, the HTA Plan expressly provides for the Assured Bondholder Election treatment and associated acceleration, which this Court has the power to approve as part of the HTA Plan. *See id.* ("Additionally, ***while the Bankruptcy Court had jurisdiction and power to permanently enjoin claims and actions against nondebtors***, it did not issue such an order in favor of defendant.") (emphasis added).

reorganization."); 11 Collier on Bankruptcy ¶ TX1.08 (16th ed. 2021) ("Plans of reorganization are creatively written and contain many variations of treatment for claims and interests.").[8] Accordingly, the Assured Bondholder Election treatment does not render the HTA Plan unconfirmable.

### B. The HTA Plan Does Not Provide for Third-Party Releases

9. Assured argues in the Assured Reply that, even if the HTA Plan contains no third-party release, such a release would be justified under First Circuit precedent. Assured Reply ¶ 42-49. To be clear, the HTA Plan does not contain any third-party releases, and the Oversight Board does not support adding any such third-party releases to the HTA Plan.[9] To the extent the Court determines that the HTA Plan contains any third-party releases, the Debtor intends to submit to the Court an amended HTA Plan removing such releases.

### C. Issues to Be Addressed by Assured and the Bondholder Group

10. Pursuant to the Supplemental Briefing Order, the Court invited the Oversight Board to address any or all of the issues to be addressed by Assured and the Bondholder Group in their respective supplemental briefs. The Oversight Board believes that such issues relate solely to an intercreditor dispute between Assured and the Bondholder Group, which do not affect the confirmability of the HTA Plan. As noted above, whether the Assured Bondholder Elections are inconsistent with the underlying bond documents is irrelevant to the confirmation requirements

---

[8] *See also* July 14, 2021 Hr'g Trans. 80:13-19 ("[F]lexibility to separately classify and treat claims from different unsecured creditors potentially strengthens Title III debtors' ability to propose plans of adjustment that protect the viability of the government and its instrumentalities, and the ability of the government to continue to provide services to its people, and to ensure the economic viability of the territory.").

[9] The Oversight Board's reference in its Omnibus Reply to the Title III plans of adjustment for COFINA, the Commonwealth, and PBA was meant only to address the Bondholder Group's argument relating to acceleration of the Assured Insured Bonds, and not the Bondholder Group's argument relating to asserted third-party releases. *See* Omnibus Reply Exh. C at 5.

pursuant to Bankruptcy Code section 1129, as applicable pursuant to PROMESA Section 301(a), and PROMESA Section 314. As noted in the Omnibus Reply, Section 5.3 of the HTA/CCDA Plan Support Agreement provides for the inclusion of a provision regarding acceleration of the Assured Insured Bonds in the HTA Plan.

**WHEREFORE** the Debtor respectfully requests the Court overrule the IBG Objection, confirm the Plan, and grant the Debtor such other and further relief as is just and proper.

| | |
|---|---|
| Dated: August 13, 2022<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Brian S. Rosen*<br>Martin J. Bienenstock<br>Brian. S. Rosen<br>Jeffrey W. Levitan<br>(Admission *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*<br><br>*/s/ Hermann D. Bauer*<br><br>Hermann D. Bauer<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Telephone: (787) 764-8181<br>Facsimile: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor* |

9