UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

-----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH AUGUST 17–18, 2022 OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the August 17–18, 2022 omnibus hearing and in response to this Court's order, dated July 13, 2022 [Case No. 17-BK-03283, ECF No. 21494].

I.  **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1. The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus and to utilize effectively federal funding related to the COVID-19 pandemic.

*Proposed Plan of Adjustment for HTA*

2. On August 7, 2022, the Oversight Board filed its proposed *Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1350] (as amended, supplemented, or modified, the "HTA Plan of Adjustment"), containing certain technical modifications, and the *Amended Plan Supplement and Plan Related Documents of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1351]. Additionally, pursuant to the *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Case No. 17-BK-03567, ECF No. 1248], the Oversight Board filed a number of additional documents on August 7, 2022, including (i) declarations in support of confirmation of the HTA Plan of Adjustment, including from Jay Herriman, David A. Skeel, Jr., David M. Brownstein and Ojas N. Shah, (ii) the *Memorandum of Law in Support of Confirmation of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1350], (iii) the *Debtor's Omnibus*

*Reply to Objection to Confirmation of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1361], (iv) the *Revised Proposed Order and Judgment Confirming Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1362], and (v) the *Proposed Findings of Fact and Conclusions of Law in Connection with Confirmation of the Fourth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1363].

3. On August 8, 2022, the Court held a conference in connection with the Oversight Board's request for approval of the HTA Plan of Adjustment (the "Pretrial Conference"). At the Pretrial Conference, the Court addressed a number of housekeeping matters concerning the conduct of the HTA Confirmation Hearing, scheduled to commence August 17, 2022, including the schedule, the number of witnesses to be produced, and the pre-admission of exhibits.

4. On August 13, 2022, the Oversight Board filed its proposed the *Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1377], which reflects certain comments received from various parties in interest and certain technical modifications to resolve *The Puerto Rico Fiscal Agency and Financial Advisory Authority's Limited Objection to Section 2.4 of the Third Amended Plan of Adjustment of Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1318].

**Fiscal Plans and Budgets**

5. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board, in consultation with the Governor and

3

the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), (a) certified a revised fiscal plan for the Puerto Rico Electric Power Authority ("PREPA") on June 28, 2022, representing a roadmap to more reliable, more affordable, and cleaner electricity in Puerto Rico; (b) announced the certification of the fiscal year 2023 budgets for the Commonwealth, and a number of instrumentalities, including PREPA, HTA, the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Industrial Development Company, the Municipal Revenues Collection Center, and the University of Puerto Rico.

***Recent First Circuit Decisions***

6. On May 17, 2022, the United States Court of Appeals for the First Circuit (the "First Circuit"), in *Centro De Periodismo Investigativo, Inc. v. Financial Oversight And Management Board For Puerto Rico* [Case No. 21-1301, Doc. 00117876976], held (two to one) that Congress, through PROMESA section 106, abrogated the Oversight Board's sovereign immunity from being sued in federal court on a Commonwealth claim. The Oversight Board filed a petition for rehearing en banc [Case No. 21-1301, Doc. 00117882073], which was denied two to one on June 7, 2022 [Case No. 21-1301, Doc. 00117884913]. The two judges in regular service who were not on the panel that decided the case turned out to be recused from voting on the rehearing. On June 14, 2022, the Oversight Board filed a motion requesting that the First Circuit stay the mandate, as the Oversight Board planned to file a petition for a writ *certiorari* to the United States Supreme Court seeking review of the First Circuit's decision. On June 21, 2022, the First Circuit granted a stay of the mandate pending U.S. Supreme Court review if the Oversight Board files its petition for a writ of *certiorari* on or before July 20, 2022. On July 20, 2022, pursuant to the First Circuit's order, the Oversight Board submitted a petition for a writ *certiorari* to the United States Supreme Court, seeking review of the First Circuit's decision.

7. On February 17, 2022, the Oversight Board filed an appeal from the portion of the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-BK-03283, ECF No. 19813] (the "Commonwealth Confirmation Order") and the corresponding findings of fact and conclusions of law, holding that claims arising under the Takings Clause of the United States Constitution may not be impaired or discharged. On July 18, 2022, the First Circuit, in *Financial Oversight & Management Board for Puerto Rico v. Cooperative de Ahorro y Credito Abraham Rosa* [Case No. 22-1119, Doc. 00117899244], affirmed the Commonwealth Confirmation Order and the corresponding findings of fact and conclusions of law. The Oversight Board plans to file a petition for writ of *certiorari* to the United States Supreme Court from the First Circuit's opinion as the opinion determines a constitutional issue which the opinion acknowledges was decided differently by the United States Court of Appeals for the Ninth Circuit.

***PREPA***

8. The PREPA mediation has continued and included communications among the mediators, the Oversight Board, AAFAF, and all major constituencies. Confidentiality requirements preclude further elaboration.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

9. The Oversight Board's relationship with the Government continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the

Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues.

10. The Oversight Board is committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation. On June 20, 2022, the Government enacted Act 41-2022 ("Act 41"), formerly known as House Bill 1244, which is inconsistent with the Commonwealth's certified fiscal plan. In short, Act 41 reestablishes many of the burdensome labor restrictions that existed before the enactment of Act 4-2017 and will hinder Puerto Rico's economic growth and job creation by, among other things, reintroducing the presumption that employee dismissals are unjustified, increasing sick and vacation day accrual rates, and reducing eligibility requirements for Christmas bonuses. The Oversight Board had previously advised the Government the enactment, implementation, and enforcement of House Bill 1244 was barred by PROMESA § 108(a)(2). Nevertheless, the Governor proceeded to sign the law notwithstanding PROMESA § 108(a)(2) knowing its implementation could not be stopped, as its provisions can be enforced by private parties. This was done notwithstanding the terms of PROMESA § 108(a)(2) barring the Governor from enacting statutes the Oversight Board has determined impair or defeat PROMESA's purposes. Thereafter, on June 29, 2022, the Government made a submission regarding Act 41 pursuant to PROMESA § 204(a). As the Oversight Board informed the Government on July 19, 2022, the submission was deficient in numerous respects, in that it failed to provide a formal estimate of the law's impact on Commonwealth expenditures and did not include a certification that the law is or is not significantly inconsistent with the certified fiscal plan. After the Government indicated in a letter dated July 22, 2022 that it would not correct these deficiencies, the Oversight Board, on July 30, 2022, transmitted a letter to AAFAF explaining that even though the Governor was otherwise powerless to stop the statute's implementation and

enforcement, the Governor could still agree to a consent order suspending Act 41, and absent such a consent order the Oversight Board would be forced to commence legal action to nullify the statute and to seek other appropriate relief to deter future violations. On August 1, 2022, Governor Pierluisi stated he would not agree to a consent order suspending Act 41. He contended the Government had supplied all the information requested regarding Act 41 and disagreed with the Oversight Board's view that the law will harm the island economy. On August 4, 2022, AAFAF sent a letter to the Oversight Board admitting it had not performed an economic analysis of the impact of Act 41 on the Commonwealth and specifically its revenues. AAFAF claimed such an economic analysis was too "complex and difficult." Instead, AAFAF proposed to measure the effects of implementing the statute, and then either amend the law or adjust the Fiscal Plan to reflect any reduced employment, labor participation, and growth. The Oversight Board will undertake appropriate action.

11. On July 21, 2022, the Oversight Board and AAFAF reached an agreement on a path for the partial implementation of Act 80-2020, which would limit the early retirement program contemplated under the law to certain non-essential employees. The Oversight Board and the Government continue to work together to reach an agreement on the partial implementation of Act 80-2020 that includes achieving the necessary savings from early retirements of non-essential employees.

12. The Oversight Board continues to work with AAFAF to prepare the qualifying modification (the "PFC QM") to restructure bonds issued by the Puerto Rico Public Finance Corporation pursuant to Title VI of PROMESA and the corresponding solicitation materials. On August 1, 2022, the Oversight Board filed the *Status Report of the Financial Oversight and Management Board Regarding Proposed Qualifying Modification for the Puerto Rico Public*

7

*Finance Corporation* [Case No. 17-BK-03283, ECF No. 21679] (the "PFC QM Status Report").

As noted in the PFC QM Status Report, the Oversight Board, AAFAF and the PFC Bond Trustee (on behalf of parties holding a majority in outstanding principal amount of PFC Bonds) are discussing certain amendments to the PFC Restructuring Support Agreement that will allow the transaction to move forward in the near-term. It is the Oversight Board's goal to complete such discussions and move forward with solicitation of the PFC QM by no later than September 15, 2022.

**III. General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

13. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-five notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 44,866 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices. Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of approximately 27,162 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on September 23, 2022, and the Debtors anticipate reporting the successful resolution of additional ACR Designated Claims.

14. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send further follow up mailings to such claimants to ensure they have a complete administrative file. The Debtors continue to await responses from numerous additional claimants. In many instances, the Debtors have re-sent initial mailings to claimants who failed to respond, reiterating the Debtors' request for information sufficient to complete the claimants' administrative file, and warning them that ongoing failure to respond may force the Debtors to object to their claims. Claimants who failed to respond to the initial mailings have received a final mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims. The Debtors continue to await responses from such claimants, and to the extent no responses are received, the Debtors intend to object to their claims. To date, the Debtors have filed several objections to claimants who did not respond to the final mailings.

15. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

16. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' reconciliation of outstanding claims remains ongoing, however. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be

9

transferred into the ACR Procedures. Accordingly, on July 29, 2022, the Debtors transferred additional claims into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on August 23, 2022. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

17. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-four notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred approximately 1,000 claims into the ADR Procedures.

18. Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the ADR Order), seventeen (17) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

19. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants

10

have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed several objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due September 15, 2022, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

20. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 2,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

**IV. Anticipated Timing and Volume of Objections to Claims**

21. The Debtors' claims reconciliation process remains ongoing and the Debtors project they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings. However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

22. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or

individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases. Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes. In that regard, pursuant to the Plan, unless otherwise extended, the period in which objections to claims must be filed is one hundred eighty (180) days from the Plan's effective date, March 15, 2022. In addition, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

23. On July 26, 2022, the Oversight Board filed the *Debtors' Motion for an Order Extending the Deadline to File Objections to Proofs of Claim* [Case No. 17-BK-03283, ECF No. 21601] (the "Motion to Extend"), requesting a Court order granting a one hundred eighty (180) day extension of the deadline for Debtors to file objections to proofs of claim that remain asserted against the Debtors, from September 9, 2022 up to and including March 9, 2023. On August 2, 2022, the Official Committee of Unsecured Creditors filed the *Response of the Official Committee of Unsecured Creditors to Debtors' Motion for an Order Extending the Deadline to File Objections to Proofs of Claim* [Case No. 17-BK-03283, ECF No. 21705] (the "Response" or "Resp."). Therein, the Official Committee of Unsecured Creditors (the "Committee") did not oppose the extension requested in the Motion to Extend, and acknowledged "that extensions like the one requested in the Extension Motion are common in chapter 11 cases, and frequently (and routinely) granted." Resp. ¶ 6. The Committee, however, requested that the extension "be

conditioned on the Oversight Board providing a timeline or summary report detailing how it intends to bring the reconciliation of the Remaining Claims to an expeditious conclusion." *Id.*

24. On August 10, 2022, the Oversight Board filed the *Debtors' Reply to Response of Official Committee of Unsecured Creditors to Debtors' Motion for Order Extending Deadline to File Objection to Proofs of Claim* [Case No. 17-BK-03283, ECF No. 21805] (the "Reply"). The Reply observed that the Debtors were surprised by the Response because, among other reasons, the Committee ceded all responsibility for the ongoing reconciliation of proofs of claim to its two (2) appointees to the Avoidance Actions Trust Board who are fully apprised of the status of claims reconciliation. *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al. [ECF No. 19813-1], § 82.1, Reply ¶¶ 7–9. Although the Debtors maintained that the Committee's request should be denied, the Debtors, in the interest of good faith, informed the Court, the Committee, and parties in interest as to the status of certain of the Remaining Claims (as defined in the Motion to Extend) which are preventing current distributions. *Id.* ¶¶ 10–16. As discussed in the Reply, these claims are "fully unliquidated" (*i.e.*, the claimants associated with these claims failed to provide an asserted amount in their proofs of claim forms) claims associated with litigations. *Id.* ¶¶ 13–16. Because there is insufficient information and/or documentation regarding the underlying litigations, the Debtors cannot make a reasonable estimation of the amount that should be reserved. *Id.* Nor can they make reasonable determinations as to whether the claims are appropriate for ADR or objection. *Id.*

25. The Debtors, accordingly, reiterated the necessity of the sought extension, and requested that the Court grant the Motion to Extend without imposing any of the conditions demanded by the Committee. *Id.* at 10.

13

26. The Motion to Extend will be heard at on **August 17, 2022 at 9:30 AM (AST),** or as soon thereafter as counsel may be heard, before the Honorable Laura Taylor Swain, United States District Judge, United States District Court for the District of Puerto Rico, 150 Carlos Chardón Avenue, Federal Building, San Juan, Puerto Rico, for an order granting the relief requested in the Motion.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: August 16, 2022<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br>Martin J. Bienenstock<br>Brian S. Rosen<br>Paul V. Possinger<br>Ehud Barak<br>(Admission *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>    brosen@proskauer.com<br>    ppossinger@proskauer.com<br>    ebarak@proskauer.com<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*<br><br>-and-<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors* |

15