# **EXHIBIT C**

Assured / HTA Insured Bondholder Group Draft 8/23/22

[HTA SERIES NAME] ASSURED CUSTODIAL TRUST

_____

TRUST AGREEMENT

among

Autoridad de Carreteras y Transportación de Puerto Rico, whose name in English is PUERTO
RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, as Depositor,

[ASSURED GUARANTY CORP.] [ASSURED GUARANTY MUNICIPAL CORP.],

U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION,
as Trustee

and

U.S. BANK TRUST NATIONAL ASSOCIATION,
as Delaware Trustee

DATED AS OF

[   ]

_____

TABLE OF CONTENTS

Page

SECTION 1.     STANDARD TERMS ........................................................................ 1

SECTION 2.     DEFINED TERMS .......................................................................... 1

SECTION 3.     ORGANIZATION OF TRUST ........................................................ 2

SECTION 4.     NOTIONAL AMOUNT ................................................................... 3

SECTION 5.     FORMS OF TRUST UNITS ............................................................ 3

SECTION 6.     SCHEDULES .................................................................................. 3

SECTION 7.     PATRIOT ACT ............................................................................... 3

SECTION 8.     GOVERNING LAW; VENUE; JURY WAIVER ............................. 3

SECTION 9.     FORCE MAJEURE ........................................................................ 4

SECTION 10.    INTENT OF PARTIES ................................................................... 4

SECTION 11.    NON-PETITION ............................................................................ 7

SECTION 12.    CERTAIN TERMS REGARDING THE DEPOSITOR ..................... 7

TRUST AGREEMENT

THIS TRUST AGREEMENT, dated as of [  ] (this "Agreement"), is hereby executed by and among Autoridad de Carreteras y Transportación de Puerto Rico, whose name in English is PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA" or the "Depositor"), and [ASSURED GUARANTY CORP.] [ASSURED GUARANTY MUNICIPAL CORP.] ("Assured"), U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, a national banking association, as trustee (the "Trustee") and U.S. BANK TRUST NATIONAL ASSOCIATION, a national banking association, as Delaware trustee (the "Delaware Trustee", and together with the Trustee, the "Trustees") under this Agreement and the Standard Terms to Trust Agreement, dated as of [  ] (the "Standard Terms"), all the provisions of which are incorporated herein and shall be a part of this Agreement as if set forth herein in full (this Agreement with the Standard Terms so incorporated, the "Trust Agreement").

PRELIMINARY STATEMENT

The parties are entering into the Trust Agreement for purposes of forming the [] Assured Custodial Trust, a Delaware statutory trust (the "Trust"). In furtherance of the structure approved in the HTA Plan and in order to facilitate the implementation thereof, the Trust is being established by the Depositor and the Trustees solely for the benefit of and on behalf of the applicable Assured Legacy Bondholders holding Assured Legacy Bonds CUSIP [] that elected, or are deemed to have elected, Assured Bondholder Election 2 pursuant to the terms and provisions of the HTA Plan. Except for the establishment of the Trust and the deposit therein pursuant to the HTA Plan at the election (or deemed election) of the applicable Assured Legacy Bondholders, the Depositor shall have no other rights or obligations with respect to the Trust or with respect to any securities payable from the assets thereof. The Trustees shall file a Certificate of Trust of the Trust with the Office of the Secretary of State of the State of Delaware on the date hereof. The Trust shall issue beneficial ownership interests consisting of trust units to be known as the "Trust Units" and each holder of a Trust Unit, a "Trust Unit Holder" or "Holder". The issue of Trust Units authorized under this Trust Agreement shall have a unique CUSIP, and the Book-Entry Trust Units authorized hereunder shall be issued in global form and be transferable through the Depository.

**Section 1.** __Standard Terms__.

The Trustees acknowledge that the Standard Terms prescribe certain obligations of the Trustees with respect to the Trust and the Trust Units. The Trustees agree to observe and perform such prescribed duties, responsibilities and obligations, and acknowledge that the Standard Terms (including without limitation, the rights, protections, indemnities and immunities afforded to the Trustees thereunder) are and shall be a part of this Agreement to the same extent as if set forth herein in full.

**Section 2.** __Defined Terms__.

With respect to the Trust Units and in addition to the definitions set forth in the Standard Terms, the following provisions shall govern the defined terms set forth below. To the extent the meanings assigned to the defined terms set forth below are inconsistent with the meanings

assigned to such terms in the Standard Terms, the meanings assigned herein shall control. Capitalized terms used herein but not defined herein or in the Standard Terms shall have the meanings ascribed to them in the HTA Plan.

"**Bankruptcy Code**": The Bankruptcy Reform Act of 1978, as amended from time to time, and as codified as 11 U.S.C. Section 101 et seq.

"**Delaware Trust Statute**": Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code § 3801 *et seq.,* as the same may be amended from time to time.

"**Delaware Trustee**":  U.S. Bank Trust National Association, not in its individual capacity but solely in its capacity as Delaware Trustee hereunder, its successor in interest or any successor Delaware Trustee appointed as herein provided.

"**Maturity Date**": [], the original maturity date of the relevant Assured Legacy Bonds (prior to acceleration).

"**Trustee**":  U.S. Bank Trust Company, National Association, in its capacity as Trustee hereunder, its successor in interest or any successor trustee appointed as herein provided.

"**Trustees**":  The Delaware Trustee and the Trustee.

"**U.S.A. PATRIOT Act**": The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Title III of Pub. L. 107 56 (signed into law October 26, 2001) and its implementing regulations.

**Section 3.**     **Organization of Trust**.

The Trust is being created on the date hereof pursuant to the execution of this Agreement and the filing by the Trustees of a Certificate of Trust of the Trust (the "Certificate of Trust") with the Office of the Secretary of State of the State of Delaware (the "Secretary of State"), under the name "[] Assured Custodial Trust" in which name the Trust shall have power and authority and is hereby authorized and empowered, without the need for further action on the part of the Trust, and the Trustee shall have power and authority, and is hereby authorized and empowered, to conduct the activities of the Trust.  It is the intention of the parties hereto that the Trust hereby created constitutes a statutory trust under the Delaware Trust Statute and that the Trust Agreement (including the Standard Terms) constitutes the governing instrument of the Trust.  Notwithstanding any other provision of this Agreement to the contrary, the Trustees are hereby authorized and directed to, and shall, on the date hereof, execute and file the Certificate of Trust with the Secretary of State in substantially the form attached as Exhibit B hereto.  The Trustee shall have power and authority, and is hereby authorized and empowered to take all actions on behalf of the Trust as set forth in the Trust Agreement and each of the Trustees is authorized and empowered to execute and file with the Secretary of State any other certificate required or permitted under the Delaware Trust Statute to be filed with the Secretary of State. The office of the Trust shall be in the care of the Trustee at the Corporate Trust Office or at such other address as the Trustee may designate by written notice to the Trust Unit Holders and Assured.

**Section 4.**      <u>**Notional Amount**</u>.

The aggregate Notional Amount of the Trust Units that may be executed and delivered under this Agreement is limited to the outstanding principal amount (or, in the case of Capital Appreciation Bonds, the Compounded Amount) as of the Effective Date of the Assured Legacy Bonds deposited into the Trust as set forth on <u>Schedule I</u> hereto.

**Section 5.**      <u>**Forms of Trust Units**</u>.

The Trust Units shall be substantially in the form attached as <u>Exhibit A</u> hereto.  The Book-Entry Trust Units shall be issued in global form and transferable through the Depository.

**Section 6.**      <u>**Schedules**</u>.

<u>Schedule I</u> and <u>Schedule II</u> are attached hereto and incorporated herein by reference as contemplated herein or by the Standard Terms.

**Section 7.**      <u>**Patriot Act**</u>.

The parties hereto acknowledge that in accordance with Section 326 of the U.S.A. PATRIOT Act, the Trustees, like all financial institutions and in order to help fight the funding of terrorism and money laundering, are required to obtain, verify, and record information that identifies each person or legal entity that establishes a relationship or opens an account with the Trustees.  The parties to this Trust Agreement agree that they will provide the Trustees with such information as they may request in order for the Trustees to satisfy the requirements of the U.S.A. PATRIOT Act.

**Section 8.**      <u>**Governing Law; Venue; Jury Waiver**</u>.

THIS AGREEMENT, THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT, AND ANY CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY BASED UPON, ARISING OUT OF, OR LEADING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR ANY OTHER THEORY), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY OR PERFORMANCE, SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. EACH PARTY HERETO HEREBY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, OR (B) IN ANY WAY IN CONNECTION WITH OR PERTAINING TO OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR IN CONNECTION WITH THIS AGREEMENT OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS AGREEMENT OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE

FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT, TORT OR OTHERWISE.  EACH OF THE PARTIES IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY FEDERAL OR STATE COURTS SITTING IN THE STATE OF DELAWARE IN RESPECT OF ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. EACH PARTY TO THIS AGREEMENT IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH PROCEEDINGS IN ANY SUCH COURT AND ANY CLAIM THAT ANY PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

**Section 9.**      **Force Majeure**.

In no event shall the Trustees be responsible or liable for any failure or delay in the performance of its obligations hereunder arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, epidemics, pandemics and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services; it being understood that the Trustee shall use reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as practicable under the circumstances.

**Section 10.**      **Intent of Parties**.

(a) The parties hereto intend that, for all purposes, the transfer to the Trust of the Trust Estate shall be, and shall be construed as, a transfer of such Trust Estate on behalf of the applicable Assured Legacy Bondholders in lieu of a transfer of such assets to the Trust directly by the applicable Assured Legacy Bondholders and shall constitute, in all respects, an absolute, irrevocable transfer, conveyance, and assignment, without recourse, of the Trust Estate to the Trust, and immediately after giving effect to the transfer contemplated hereby on the Effective Date, the Depositor will have no further interest (legal or equitable) in the Trust Estate and the Trust Estate will not be property of the Depositor or of the Depositor's estate in the event of a liquidation, reorganization, or similar proceeding of the Depositor and the Trust shall have the absolute right to take whatever action it may deem appropriate with respect to the Trust Estate. The parties agree to treat the transfer contemplated hereby for all purposes (including financial accounting purposes) as an absolute transfer on all relevant books, records, financial statements and other documents.

(b) The Trust Estate will be held by the Trust free and clear of any lien or encumbrance of any Person claiming through or under the Depositor.

(c) Notwithstanding anything to the contrary in the Trust Agreement or in any other document governing the formation, management, or operation of the Trust, if and for so long as any Trust Unit remains outstanding, none of the Trust Unit Holders, Assured, the Trustees, nor any other Person shall authorize, cause or permit the Trust to (and the Trust shall not and neither

Trustee shall directly take any action that to its actual knowledge would constitute any of the following):

   (i)  engage in any business or engage in any activity other than those activities expressly permitted under <u>Section 2.03</u> of the Standard Terms and will not have, incur, guarantee or become liable for any indebtedness or obligations except as expressly contemplated in the Trust Agreement;

   (ii)  acquire or own any assets other than the Trust Estate or lease (as lessor) any assets;

   (iii)  fail to preserve its existence as an entity duly formed, validly existing and in good standing (if applicable) under the laws of the State of Delaware, or fail to remain qualified to do business in each state in which such qualification is required, for any reason, including, but not limited to, in order to perform its obligations under the Trust Agreement;

   (iv)  fail to observe at any time any necessary, appropriate and customary corporate, organizational, company and/or other legal formalities to maintain its separate existence;

   (v)  fail to act solely in its own name or in the name of the Trustee on behalf of the Trust through duly authorized agents in the conduct of its activities;

   (vi)  provide for the payment of its expenses, indebtedness or other obligations other than from its own separate assets;

   (vii)  have its debts or other obligations guaranteed by any other person or hold itself out as responsible for the debts or other obligations of any other Person;

   (viii)  commingle its assets or liabilities with those of any other Person;

   (ix)  fail to maintain its own records, books of account, bank accounts, accounting records and other entity documents separate and apart from those of any other Person;

   (x)  divert funds for any purpose other than as set forth in the Trust Agreement;

   (xi)  enter into any contract, agreement or transaction with any Trust Unit Holders, the Depositor, Assured, principal or other affiliate of the Trust, or any shareholder, general partner, member, principal or affiliate thereof, except as expressly authorized in the Trust Agreement;

   (xii)  maintain its assets in such a manner that it will be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(xiii)    incur, create or assume any indebtedness of or buy or hold evidence of indebtedness issued by any other Person (other than as contemplated by the Trust Agreement); guarantee or hold itself out to be responsible for the debts of another Person or otherwise pledge its assets to secure the obligations of any other Person, or hold out its credit or assets as being available to satisfy the obligations of any other Person or seek to incur, create or assume any indebtedness based upon the assets of any other Person;

(xiv)    perform any duties or obligations of the Depositor or any other Person;

(xv)    make any loans or advances to any third party, including, without limitation, any Trust Unit Holder, Depositor or Affiliate of the Trust, or any principal or Affiliate thereof;

(xvi)    fail to file its own tax returns as and if required to do so by applicable law (subject to any permitted extensions and except to the extent the Trust is treated as a grantor trust for tax purposes) and to pay any taxes required to be paid by it under applicable law;

(xvii)    fail to hold itself out to the public as a legal entity separate and distinct from any other Person, fail to conduct its activities solely in its own name or in the name of the Trustee and as a separate and distinct entity, or fail to correct any known misunderstanding regarding its separate identity;

(xviii)    identify itself as a department or division of any other Person;

(xix)    fail to observe all formalities required of a Delaware statutory trust;

(xx)    fail to pay its expenses and liabilities only out of its own funds to the extent such funds are available and fail to hold its assets only in its own name; provided, however, the foregoing shall not require the Depositor to sell any assets, or make any capital contribution, to the Trust;

(xxi)    conduct any oral or written communication, including, without limitation, letters, invoices, purchase orders, contracts, statements and applications, other than in its own name or in the name of the Trustee on behalf of the Trust;

(xxii)    (a) institute proceedings to have the Trust declared or adjudicated a bankrupt or insolvent, (b) consent to the institution of bankruptcy or insolvency proceedings against the Trust, (c) file a petition or consent to a petition seeking reorganization or relief on behalf of the Trust under any applicable federal or state law relating to bankruptcy, (d) consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or any similar official) of the Trust or a substantial portion of the property of the Trust, (e) make any assignment for the benefit of the Trust's creditors, (f) cause the Trust to admit in writing its inability to pay its debts generally as they become due or (g) take any action, or cause the Trust to take any action, in furtherance of any of the foregoing;

(xxiii)   supplement, modify, amend, restate, replace, waive or repeal this Section 10 or Sections 2.03, 2.04, 9.01 or 9.03 of the Standard Terms, or the definitions used in such Sections, in each case except for any supplement, modification, amendment or restatement of any such provision that (x) corrects any error and (y) would not (individually or together with other changes) be reasonably likely to cause the Trust to no longer be a "special purpose entity" in accordance with applicable law and standards; or

(xxiv)   supplement, modify, amend, restate, replace, waive or repeal any portion of this Trust Agreement or the Standard Terms except as expressly permitted by Section 9.01 of the Standard Terms.

(d) Failure of the Trust, the Depositor, Assured, any Trust Unit Holder, any Trustee or any other Person on behalf of the Trust, to comply with any of the foregoing covenants set forth in this Section 10 shall not affect the status of the Trust as a separate legal entity (unless in violation of the Delaware Trust Statute) nor cause the Trust to dissolve or terminate.

(e) To the extent that any provision of this Section 10 conflicts with, violates or otherwise is in contravention with any other provision of the Trust Agreement or the Standard Terms, the parties hereto and each Trust Unit Holder agree that the terms set forth in this Section 10 shall be controlling as expressly set forth herein.

**Section 11.   Non-Petition**. The Depositor, Assured, the Trustee and the Delaware Trustee, by entering into this Agreement, and the Trust Unit Holders, by electing (or being deemed to elect) Assured Bondholder Election 2, hereby covenant and agree that they will not at any time institute against the Trust, or join in instituting against the Trust, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any federal or state bankruptcy or similar law; provided, however, that in the event a bankruptcy or similar proceeding is instituted against the Trust by another person, the Trustee may file appropriate proofs of claim.  For the avoidance of doubt, no adequate remedy at law exists with respect to any breach of this Section 11, and specific performance shall in all circumstances be available as a remedy for the enforcement of this Section 11.

**Section 12.   Certain Terms Regarding the Depositor**.  For the avoidance of doubt and notwithstanding any terms appearing herein or elsewhere to the contrary:

(i)   The obligations of the Trust under the Trust Units and this Trust Agreement are non-recourse obligations of the Trust payable solely from the Trust Estate, and following realization of the Trust Estate, and its reduction to zero, any claims of the Holders of the Trust Units shall be extinguished.  The Trust Units are not obligations of, and are not guaranteed by, the Depositor, and no recourse shall be had against any Officer, director, manager, employee, security holder or incorporator of the Depositor, or its successors or assigns, for the payment of any amounts payable under the Trust Units or the payment or performance of any obligation of the Trust under or pursuant to this Trust Agreement.

(ii)   The recitals contained in this Trust Agreement and in the Trust Units, shall be taken as the statements of the Trust, and the Depositor assumes no responsibility

for their correctness.  The Depositor makes no representation as to the validity or sufficiency of this Trust Agreement, of the Trust, or of the Trust Units.

(iii)    In purchasing or acquiring any Trust Units in certificated form, the purchaser or acquirer shall be deemed to acknowledge, represent ~~to~~ and agree, and in purchasing or acquiring any book-entry beneficial interests in the Trust Units, the purchaser or acquirer shall be deemed to acknowledge, represent and agree, that none of the Depositor nor any of its affiliates, is acting as a fiduciary or a financial or investment advisor for such purchaser or acquirer, and such purchaser or acquirer is not relying (for purposes of making any investment decision or otherwise) upon any advice, representations or recommendations (in each case whether written or oral) of the Depositor or any of its affiliates.

(iv)    The Depositor shall not be accountable for the use or application by the Trust of the Trust Units or the proceeds thereof or any amounts paid to the Trust pursuant to the provisions of this Trust Agreement.

**Section 13.    Franklin Nuveen Trust Reservation of Rights.**  In accordance with Section 3.03(c)-(d) of the Standard Terms and notwithstanding anything to the contrary herein, the Plan or Confirmation Order, upon (i) issuance of a notice of Assured's exercise of, or intent to exercise, any Assured Advancement Option, or (ii) issuance of, or issuance of notice of an intent to cause the issuance of, a Sale Notice that could cause a cash Distribution or distribution of Subject Bonds that would, by operation of this Agreement, otherwise reduce the outstanding principal of the applicable Assured Insured Bond prior to its Original Scheduled Principal Payment Date, then, in each case, a Franklin Nuveen Trust Unit Holder shall be permitted to challenge whether payment of the applicable Acceleration Price or cash Distribution with respect to such Assured Insured Bond satisfies and discharges all (or any) of Assured's obligations to such Franklin Nuveen Trust Unit Holder under the applicable Assured Insurance Policy with respect to such Assured Insured Bond and all of the Franklin Funds' and/or Nuveen Funds' respective rights, arguments and defenses (and those of the Franklin Nuveen Trust Unit Holders) with respect to any such argument made by such Franklin Nuveen Trust Unit Holders (including, without limitation, whether any such payment or distribution would reduce the principal amount outstanding of the Assured Insured Bonds) are reserved and preserved, including any arguments as to whether  Section 26.1(c) of the HTA Plan and Section 26(a) of the HTA Confirmation Order validly accelerated the Assured Insured Bonds in the Franklin Nuveen Trusts for purposes of the Assured Insurance Policy.  All of Assured's rights, arguments and defenses with respect to any such argument made by a Franklin Fund and/or Nuveen Fund and/or other Franklin Nuveen Trust Unit Holder pursuant to this Section 13, Section 3.03(c) of the Standard Terms and the HTA Plan are reserved and preserved, including any arguments as to whether 26.1(c) of the HTA Plan and Section 26(a) of the HTA Confirmation Order validly accelerated the Assured Insured Bonds in the Franklin Nuveen Trusts for purposes of the Assured Insurance Policy.  Any determination made as a result of arguments made by a Franklin Fund and/or Nuveen Fund and/or other Franklin Nuveen Trust Unit Holder pursuant to this Section 13 shall have no impact on any other Trust or Assured Insurance Policy.

**IN WITNESS WHEREOF**, the Depositor, Assured, the Trustee and the Delaware Trustee have caused this Agreement to be duly executed by their respective officers thereunto duly authorized and all as of the date first set forth above.

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,**
As Depositor

By: _____

Name: _____

Its: _____

**[ASSURED GUARANTY CORP.] [ASSURED GUARANTY MUNICIPAL CORP.]**

By: _____

Name: _____

Its: _____

**U.S. BANK TRUST NATIONAL
ASSOCIATION**,
As Delaware Trustee


By: _____
Name: _____
Its: _____


**U.S. BANK TRUST COMPANY, NATIONAL
ASSOCIATION,**
As Trustee


By: _____
Name: _____
Its: _____

## SCHEDULE I

### Assured Legacy Bonds Schedule

| Insured CUSIP | Original CUSIP | Assured Bondholder Election 2 contraCUSIP contra-CUSIP | Insurance Policy Number(s) | Tax-Exempt/Taxable | Coupon | Outstanding Principal Amount (or Compounded Amount) as of the Effective Date |
|---|---|---|---|---|---|---|
| [   ] | [   ] | [   ] | [   ] | [   ] | [   ] | [   ] |

## SCHEDULE II

### Relevant Trust Information

**I.  Trust Accounts[1]**

| Account | Account Number | Initial Deposits |
|---|---|---|
| Tax-Exempt Bond Account | [   ] | [   ] |
| Taxable Bond Account | [   ] | [   ] |
| Cash Account | [   ] | [   ] |
| Insurance Policy Account | [   ] | [   ] |
| FGIC Certificates Account | [   ] | [   ] |
| FGIC Insured Bonds Insurance Policy Payments Account | [   ] | [   ] |
| Non-Book-Entry Double-Insured AGC Trust Units Account | [   ] | [   ] |
| AGM Double-Insured Insurance Policy Payments Account | [   ] | [   ] |
| AGC Insurance Policy SM-2007-267 Payments Account | [   ] | [   ] |

**II.  Trust Unit CUSIP**

The CUSIP of the Trust Units initially issued pursuant to this Trust Agreement is: [   ]

**III.  References in Standard Terms**

In the Standard Terms, Assured Legacy Bonds CUSIP [   ] is referred to as a:

(i) [   ]; and

(ii) [   ].

See Section 2.01[   ] of the Standard Terms for more information regarding the Trust Assets deposited in this Trust.

See Section 3.01[   ] of the Standard Terms for more information regarding the accounts for this Trust.

---

[1] [NTD: Schedule to include only those accounts held by the applicable Trust].

See Section 3.02[   ] of the Standard Terms for more information regarding distributions to be made in connection with this Trust.

## **EXHIBIT A**

FORM OF TRUST UNIT CERTIFICATE

[UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE TRUST, AS DEFINED HEREIN OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]

THIS CERTIFICATE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE DEPOSITOR, THE TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES, EXCEPT IN RESPECT OF AN INDIRECT INTEREST IN THE NEW SECURITIES UNDERLYING THE UNITS.

# [] ASSURED CUSTODIAL TRUST

Trust Unit Certificate No. __

Original Notional Amount: _____

CUSIP:  [  ]

Each Trust Unit represented by this Trust Unit certificate is one of a duly authorized issue of certificates designated as the Trust Units (herein collectively called the "Units"), and representing a beneficial ownership interest in the Trust Estate created by the Trust Agreement referred to below.

This certifies that [CEDE & CO.] is the registered owner of the Notional Amount of Trust Units evidenced by this certificate.  Capitalized terms used but not defined herein have the meanings assigned to such terms in the Trust Agreement and Standard Terms referred to below and the Trust Agreement contains rules as to construction that shall be applicable herein.

The Trust was created pursuant to a Trust Agreement (the "Trust Agreement") dated as of [  ], by and among the Puerto Rico Highways and Transportation Authority (the "Depositor"), [Assured Guaranty Corp.] [Assured Guaranty Municipal Corp.] ("Assured"), U.S. Bank Trust Company, National Association, (the "Trustee") and U.S. Bank Trust National Association (the "Delaware Trustee", which term includes any successor under the Trust Agreement, and together with the Trustee, the "Trustees"), and the Standard Terms to Trust Agreement, dated as of [  ] (the "Standard Terms"), a summary of certain of the pertinent provisions of which is set forth hereinafter.  This certificate is issued under and is subject to the terms, provisions and conditions of the Trust Agreement, to which Trust Agreement the Holder of this certificate by virtue of its acceptance hereof assents and by which such Holder is bound. Distributions on this certificate shall be made by the Trust Unit Paying Agent under the Trust Agreement.

This certificate is issued under the Trust Agreement to which reference is hereby made for a statement of the respective rights thereunder of the Depositor, the Trustees, Assured and the Holder of the certificate and the terms upon which the certificate is executed and delivered.

This certificate does not bear interest.  Distributions on this certificate represent a combination of certain payments made on the New Securities and certain other payments which derive from the Trust Estate and may vary from period to period. Each such Distribution made pursuant to the Trust Agreement shall result in a deemed simultaneous dollar-for-dollar reduction (i) in the case of any relevant Current Interest Bonds, first, of any accrued and unpaid interest on, and second, of the outstanding principal amount of, such Current Interest Bonds or, (ii) in the case of any relevant Capital Appreciation Bonds, the Compounded Amount of such Capital Appreciation Bonds, in either case, as of the date of such Distribution and in an amount equal to such Distribution, as set forth in the Standard Terms; provided, for the avoidance of doubt, with respect to any Franklin Nuveen Trust, the foregoing shall be subject to the

A-2

reservation of rights in Section 13 of the of the Trust Agreement and Sections 3.03(c)-(d) of the Standard Terms.

In certain circumstances, Assured may instruct the Trustee in writing to sell the New Securities (the "Subject Bonds") underlying the Units for cash (a "Bond Sale"). The Holder of this certificate shall have the option to elect to receive in-kind delivery of a pro rata share of the Subject Bonds, subject to payment by such Trust Unit Holder of the allocable portion of any outstanding Trustee Costs and Tax Costs, in lieu of receiving a pro rata share of the actual net cash proceeds from the Bond Sale, as set forth in the Standard Terms.

This certificate is not subject to repurchase by the Trust at the option of the Holder of this certificate.

The Holder, by its acceptance of this certificate, agrees that it will look solely to the funds allocated pursuant to the Trust Agreement for distribution hereunder and that none of the Trustee or the Trust Unit Paying Agent in their individual capacities nor the Depositor is personally liable to such Holder for any amount payable under this certificate or the Trust Agreement, subject in the case of the Trustee to any liability under the Trust Agreement, provided that the foregoing shall not prevent the Holder from appearing or litigating any such proceeding after it has been instituted.

The Holder, by its acceptance of this certificate hereby agrees that (i) the Trust Agreement is executed and delivered by U.S. Bank Trust Company, National Association and U.S. Bank Trust National Association, not individually or personally, but solely as Trustee and Delaware Trustee, respectively, in the exercise of the powers and authority conferred upon and vested in it, and pursuant to instructions set forth therein, (ii) each of the representations, undertakings and agreements herein made on the part of the Trustee, the Delaware Trustee or the Trust is made and intended not as personal representations, undertakings or agreements of U.S. Bank Trust Company, National Association or U.S. Bank Trust National Association, (iii) nothing herein contained shall be construed as creating or imposing any liability upon U.S. Bank Trust Company, National Association or U.S. Bank Trust National Association, individually or personally, or the Depositor to perform any covenant, either express or implied, contained herein, all such liability, if any, is hereby expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and such waiver shall bind any third party making a claim by or through one of the parties hereto, and (iv) under no circumstances shall U.S. Bank Trust Company, National Association, U.S. Bank Trust National Association or the Depositor be personally liable for the payment of any indebtedness or expenses of the Trust, or be personally liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Trust under the Trust Agreement.

The Holder, by its acceptance of this certificate, covenants and agrees that it will not at any time institute against the Depositor, Assured or the Trust, or join in any institution against the Depositor, Assured or the Trust of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to this certificate or the Trust Agreement, that no adequate remedy at law exists with respect to any breach of such

covenant and agreement, and that specific performance shall in all circumstances be available as a remedy for any breach of such covenant and agreement.

Distributions on this certificate will be made as provided in the Trust Agreement by the Trust Unit Paying Agent without the presentation or surrender of this certificate or the making of any notation hereon.

Reference is hereby made to the further provisions of this certificate set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless this certificate has been executed by the manual or electronic signature of an authorized officer of the Trustee and the certificate of authentication hereon shall have been executed by an authorized officer of the Unit Registrar, or an authenticating agent by manual or electronic signature, this certificate shall not entitle the Holder hereof to any benefit under the Trust Agreement or be valid for any purpose.

THIS CERTIFICATE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAWS PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

IN WITNESS WHEREOF, the Trustee, on behalf of the Trust and not in its individual capacity, has caused this certificate to be duly executed.

[] ASSURED CUSTODIAL TRUST

By:  U.S. BANK TRUST COMPANY,
NATIONAL ASSOCIATION,
not in its individual capacity, but solely as Trustee

By:_____
          Authorized Signatory

Dated:  _____

CERTIFICATE OF AUTHENTICATION

This is the Trust Unit certificate referred to in the within-mentioned Trust Agreement.

U.S. BANK TRUST COMPANY, NATIONAL
ASSOCIATION,
not in its individual capacity, but solely as Unit
Registrar

By:_____
          Authorized Signatory

Dated:  _____

## [] ASSURED CUSTODIAL TRUST

## REVERSE OF TRUST UNIT CERTIFICATE

This certificate does not represent an obligation of, or an interest in, Assured, the Trustees, or any Affiliates of each of them and no recourse may be had against any such parties or their assets, except as expressly set forth or contemplated herein or in the Trust Agreement.  In addition, this certificate is not guaranteed by any governmental agency or instrumentality and is limited in right of payment to certain collections and recoveries with respect to the Trust Estate, all as more specifically set forth herein and under the Trust Agreement.  A copy of the Trust Agreement may be examined by any Holder upon written request during normal business hours at the principal office of the Trustee and at such other places, if any, designated by the Trustee.

The Trust Agreement (including the Standard Terms) may not be amended, waived or supplemented without the prior written consent of Assured.  The Trust Agreement (including the Standard Terms) may be amended, waived or supplemented from time to time by Assured and the Trustee without the consent of the Trust Unit Holders; provided, however, that no such amendment shall:

a) except as otherwise provided in the Trust Agreement (including the Standard Terms) reduce in any manner the amount of, or delay or accelerate the timing of, required distributions to any Trust Unit Holder without the written consent of such Trust Unit Holder;

b) compromise, waive, sell, forfeit, or otherwise diminish the rights of the Trust, the Trustee, or the Trust Unit Holders under any Assured Insurance Policy without the written consent of each Trust Unit Holder affected;

c) alter in any manner the calculation or treatment of the Compounded Amount without the written consent of each Trust Unit Holder affected;

d) amend Section 9.01 of the Standard Terms without the written consent of each Trust Unit Holder;

e) adversely affect in any other material respect the interests of the Trust Unit Holders in any manner other than as described in a), b), or c) without the written consent of the Trust Unit Holders evidencing at least a majority of the Trust Units (measured, in the case of Current Interest Bonds, by the outstanding principal amount, or, in the case of Capital Appreciation Bonds, the Compounded Amount, as the case may be, of the underlying Assured Legacy Bonds), excluding, from both the numerator and the denominator, any Trust Units held by Assured; *provided*, that only Trust Units that an Officer of the Trustee knows are so held shall be so disregarded; or

f) reduce the aforesaid percentage of Trust Units the Holders of which are required to consent to any such amendment, without the unanimous written consent of such Holders of all Trust Units then outstanding.

A-6

As provided in the Trust Agreement and subject to certain limitations therein set forth, including the limitations set forth in Article V of the Standard Terms, the transfer of this certificate is registrable in the Unit Register upon the surrendering of this certificate for registration of transfer at the offices or agencies of the Unit Registrar, accompanied by a written instrument of transfer in form satisfactory to the Unit Registrar duly executed by the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon a new certificate will be issued to the designated transferee.  The initial Unit Registrar appointed under the Trust Agreement is the Trustee.

No service charge will be made for any such registration of transfer or exchange, but the Trustee or the Unit Registrar may require payment of a sum sufficient to cover any tax or governmental charge payable in connection therewith or any expense incurred thereby.

Prior to due presentation of a Trust Unit for registration or transfer, the Trustee, the Unit Registrar and any agent of any of them may treat the person in whose name any Trust Unit is registered as the owner of such Trust Unit for the purpose of receiving distributions, and neither the Trustee, the Unit Registrar nor any agent of any of them shall be affected by notice to the contrary.

The obligations and responsibilities created by the Trust Agreement and the Trust shall terminate upon the payment to the Holders of the Trust Units of all amounts required to be paid to them pursuant to the Trust Agreement, the disposition of all property held as part of the Trust Estate and payment of any costs, expenses and indemnities due and owing to the Trustees under the Trust Agreement or of any other costs or expenses as provided in the Trust Agreement.

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s) and assign(s) and transfer(s) unto

_____

_____

     (Please print or type name and address, including postal zip code, of assignee and social security number or employer identification number)

_____

the within certificate stating in the names of the undersigned in the Unit Register and does hereby irrevocably constitute and appoint

_____

to transfer such Certificate in such Unit Register of the Trust.

     I [we] further direct the Unit Registrar to issue a new certificate of like principal to the above-named assignee and deliver such certificate to the following address:

_____

_____

Dated:_____          _____
                                     Signature by or on behalf of Assignor

_____
     Authorized Officer                _____
                                     Signature Guaranteed

_____          _____
  Name of Institution                NOTICE: The signature(s) of this assignment must
                                     correspond with the name(s) on the face of this
                                     certificate without alteration or any change
                                     whatsoever.  The signature must be guaranteed by a
                                     participant in the Securities Transfer Agents
                                     Medallion Program, the New York Stock Exchange
                                     Medallion Signature Program or the Stock
                                     Exchanges Medallion Program.  Notarized or
                                     witnessed signatures are not acceptable as
                                     guaranteed signatures.

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for the information of the Unit Registrar.

Distributions shall be made by wire transfer in immediately available funds to

_____

for the account  of

_____

account number _____ or, if mailed by check, to

_____

_____.

Applicable reports and statements should be mailed to

_____.

This information is provided by _____the

assignee named above, or _____ as its agent.

A-9

**EXHIBIT B**

FORM OF CERTIFICATE OF TRUST OF
[] ASSURED CUSTODIAL TRUST

THIS Certificate of Trust of [] Assured Custodial Trust (the "<u>Trust</u>"), is being duly executed and filed by the undersigned, as trustees, to form a statutory trust under the Delaware Statutory Trust Act (12 DEL. CODE, <u>Sections 3801</u> *et seq*.) (the "<u>Act</u>").

1.      NAME.   The name of the statutory trust formed hereby is "[] Assured Custodial Trust."

2.      DELAWARE TRUSTEE.  The name and business address of a trustee of the Trust having its principal place of business in the State of Delaware are U.S. Bank Trust National Association, 1011 Centre Road, Suite 203, Wilmington, Delaware 19805.

3.      EFFECTIVE DATE.  This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned, being the trustees of the Trust, have executed this Certificate of Trust in accordance with <u>Section 3811(a)</u> of the Act.

U.S. BANK TRUST NATIONAL
ASSOCIATION,
as Delaware Trustee


By:_____
Name:
Title:


U.S. BANK TRUST COMPANY, NATIONAL
ASSOCIATION,
as Trustee


By:_____
Name:
Title:

B-1

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 08/23/2022 4:19:52 PM | |
|---|---|
| **Style name:** KL_Default | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://KL2/3301164/1 | |
| **Modified DMS:** dm://KL2/3301164/7 | |
| **Changes:** | |
| Add | 29 |
| Delete | 5 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 34 |