**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | |
| The Financial Oversight and Management Board for Puerto Rico, | PROMESA Title III |
| As Representative of | No. 17 BK 3283-LTS |
| | (Jointly Administered) |
| The Commonwealth of Puerto Rico, et al. | |
| Debtors | |

**REQUEST FOR COMFORT ORDER PURSUANT 11 USC §362(j)**
**(Related to Docket Entry No. 21427)**

**COME** Creditors Aníbal Arroyo Bolerín, Rosa Idalia Orengo Rohena, Ada Norely López Santiago, Arinda Colón Colón and Jennifer Blest Quiroz (*Claimants*), jointly represented by the undersigned counsel, to state and request as follows:

**Preliminary statement**

Claimants respectfully request from this Honorable United States District Court (the *USDC*) to enter a *Comfort Order* in their favor, as allowed by The Puerto Rico Oversight, Management, and Economic Stability Act (*PROMESA*) and §362(j) of the Bankruptcy Code (the *Code*). The Comfort Order would allow Claimants to continue their collection efforts and/or defense of the judgment entered in their favor, and against the Puerto Rico Public Broadcasting Corporation (*WIPR*)[1], awarding damages and costs (among other remedies). Claimants' revindication of their rights was incorrectly stayed by the Court of Appeals of the Commonwealth of Puerto Rico (the *PRCA*) until an order lifting the Automatic Stay is issued by the USDC. Despite Claimants' interpretation of

---

[1] The official name in Spanish of the public corporation is *Corporación de Puerto Rico para la Difusión Pública.*

the law to the effect that there were never legal grounds in support of the stay of the litigation in the PRCA, they respectfully request the issuance of a *Comfort Order* to those effects, as allowed by PROMESA and the Code, declaring the Stay terminated as to WIPR.

**Relevant Facts**

1. The USDC has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA §306; venue is granted by §307. §362(j) of the Code provides the USDC the authority to grant the remedies requested in this motion.

2. After several procedures and hearings, the State Court entered a judgment dated March 18th, 2016, ruling in favor of the Claimants and against WIPR. The remedies awarded are a) the reinstatement of their employments; b) the payment of unpaid wages and salaries and

c) damages.

3. WIPR filed a writ of appeal seeking the reversal of part of the judgment awarding damages and litigation expenses.

4. On June 28th, 2017, WIPR filed a motion requesting the stay of the proceedings pursuant Title III of PROMESA. On September 15th, 2017, the Claimants filed a motion opposing to the request. They pleaded to the PRCA to declare invalid the notice of stay of proceedings and take the measures within its reach to compel WIPR to satisfy the remedies granted by the Judgment of the State Court.

5. The PRCA entered judgment on November 3rd, 2017, granting the stay of the proceedings; it ruled against the Claimants by relying on a list of public corporations that are subject to PROMESA[2].

6. The Claimants were instructed to file their proof of claims under TITLE III of PROMESA.[3] The claims were objected by the Oversight Board alleging that *the case files show, however, that the*

---

[2] This list was issued by the Fiscal Control Board. See page 6, part D of the Court of Appeals Judgment enclosed as **Exhibit I.**
[3] The proof of claims are a) Aníbal Arroyo Bolerín, Claim No. 51788 for $576,148.69; b) Ada Norely López Santiago, Claim no. 39308 for

*claimant's suit was not brought against the Commonwealth or any other Title III Debtor*.[4] The Claimants filed a *Reservation of Rights* and withdrew their proof of claims.[5]

7. The Claimants respectfully conclude that the PRCA incurred in a factual error when granting the stay of the appellate proceedings. The PRCA was led to believe that, since WIPR was listed as a corporation subject to PROMESA, it meant that it was protected by the consolidated petition under Title III filed jointly by the Commonwealth of Puerto Rico (the *Commonwealth*), the Puerto Rico Sales Tax Financing Corporation, Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electrical Power Authority.

8. With the intent to solve this matter efficiently, on August 4th, 2022, the undersigned sent to the attorneys for the Financial Oversight and Management Board for PR (Herman D Bauer, Esq., Martin J Beinenstock, Esq.) with a copy to Alberto J Marini Delgado, Esq. (counsel of record of the WIPR in the case before the PRCA), specific proposals to solve these issues without requesting the intervention of this Court. We found no response in our records, despite our follow up phone calls.[6]

9. WIPR filed a Writ of Appeal to the PRCA on June 15, 2015. On June 28th, 2017, WIPR filed in that court a *Notice to Stay the Legal Proceedings.* The notice alleges that the proceedings in appeal should stay pursuant §362 of the Code because WIPR *was governed by PROMESA*. The Claimants filed a reply where they argued that it was not apparent that WIPR was under the protection of Title III.[7] WIPR then filed the *Motion in Compliance with Order* attaching a document titled *Covered Entities*

---

$358,248.82; c) Arinda Colón Colón, Claim No. 49385 for $269,845.78; d) Jennifer Blest Quiroz, Claim No. 49126 for $561,725.79 and e) Rosa Idalia Orengo Rohena, Claim No. 179444 for $310,685.09.
[4] See docket number 21,427.
[5] See docket number 21,869.
[6] The Claimants, thus, complied with the requirements of the standing order dated March 3, 2021, which demands the *counsel to consult to the greatest extent feasible with all other affected parties in an effort to obtain their consent to the request.*
[7] It is common knowledge that the WIPR was not one of the petitioners requesting the protection of Title III of PROMESA and that, as of today, has not.

*Under PROMESA*. WIPR was included among those entities. The Claimants reacted to it by filing an *Emergency Motion Regarding the Ruling and Summary in Compliance with the Order*. This motion argued, in part, the following:

(a) *the fact that the WIPR was a "covered entity" of PROMESA did not make the public corporation a debtor in the bankruptcy*, and

(b) *the finding as to whether the petition for bankruptcy by the Commonwealth of Puerto Rico covered it (WIPR) should be determined by the Federal Court.*

10. Notwithstanding these solid arguments against the merits of WIPR's request to obtain the protection of the Automatic Stay, and even though WIPR was none of the five entities that requested the protection of Title III on May 3rd, 2017, the PRCA concluded in its *Judgment (Administrative Dismissal)* that WIPR was protected by the Stay.[8] Accordingly, it ordered the stay of the proceedings on appeal until an order lifting the stay is issued by the USDC. The PRCA summarized its holding as follows: *In light of the certification by the Oversight Board that includes the Appellants as one of the instrumentalities covered under PROMESA Act, …there is no doubt that the course of action raised by the Appellee against the Appellant in this case is covered by the PROMESA act, as far as the staying of cases in litigation[9].*

11. In sum, Claimants are facing a cross jurisdictional gridlock which they tried to solve without the intervention of the USDC. On one hand, the PRCA held that Claimants need to obtain a release of the automatic stay from the USDC prior to continuing the litigation in the PRCA; on the other, the Commonwealth objects the payment of the claims, presumably because the Debtor is not a party involved in the litigation in the Trial Court nor in the PRCA. Hence, the Claimants respectfully request

---

[8] See Exhibit I (Certified translation of the judgment entered by the PRCA).
[9] See Exhibit I

from this Honorable Court to enter an order holding that WIPR is no longer protected by Article III of PROMESA nor by the Automatic Stay. In addition, they request an order stating that they may reinitiate their collection efforts against WIPR in State Court without it being considered a violation of the stay.

**Applicable Law**

12. The United States Court of Appeals for the First Circuit (the *CAFC*) evaluated the enabling act of WIPR when facing the controversy whether the latter was entitled to Eleventh Amendment immunity. In *Pastrana Torres vs. Corporación de PR para la Difusión Pública*, 4060 Fed. 124, 127 (2006) the CAFC held:

> ***WIPR operates with a significant degree of autonomy from the Puerto Rico government. WIPR's enabling act describes it as a "public corporation" with "a juridical personality that is independent and separate from any other entity, agency, department or instrumentality of the Government of Puerto Rico."*** *Public Broadcasting Corporation for Puerto Rico Act of 1996 ("1996 Act"), Act No. 216, § 1, codified at P.R. Laws Ann. tit. 27, § 501; see Fresenius, 322 F.3d at 68 (relying on similar language to support a conclusion that an entity was not an arm of the state). Its Board of Directors may "approve, amend, and repeal" regulations as it deems necessary to fulfill its mission and may determine the "use of its . . . operating budget." P.R. Laws Ann. tit. 27, § 503; see Royal Caribbean Corp. v. Puerto Rico Ports Auth., 973 F.2d 8, 11 (1st Cir. 1992)* ***(stating that an entity's authority over its expenditures is an indicator of autonomy from the state). There is no provision for a veto by the Commonwealth over decisions by the Board of Directors.*** *See Fresenius, 322 F.3d at 71-72 (noting that the Commonwealth's veto power over the decisions of a board is a "key element of control"). Moreover, the Board of Directors is permitted to select WIPR's president without interference from other Commonwealth officials. P.R. Laws Ann. tit. 27, § 503; cf. Wojcik, 300 F.3d at 100 (stating that the fact that the governor could reject choice for director of the Lottery Commission indicated that the Commission was an arm of the state).*

*Additionally, the enabling act empowers WIPR to sue and be sued, to enter into contracts, and to acquire and maintain property. P.R. Laws Ann. tit. 27, § 504(a)(5), (7), (8); see Metcalf Eddy, 991 F.2d at 942 (stating that the power to sue and be sued and enter into contracts suggests that an entity is autonomous from the state). WIPR also is permitted to raise revenue for its operations by charging user fees "for the use of its broadcasting facilities," and by soliciting donations. P.R. Laws Ann. tit. 27, § 504(a)(10), (13); Royal Caribbean, 973 F.2d at 10* **(stating that the ability of an entity to generate revenue indicates autonomy).** *Pastrana-Torres v. Corporacion de Puerto Rico Para La Difusion Publica*, 460 F.3d 124, 126-27 (1st Cir. 2006)(Emphasis given by the undersigned.)

13. This Honorable Court may consider whether the issuance of the Comfort Order will affect the finances of the Commonwealth. Claimants are convinced that it will not. The extrapolation of the conclusions of the CAFC regarding a very close issue can by adopted when making the analysis. The CAFC held:

> **Accordingly, we turn to consider whether the Commonwealth is obligated to pay WIPR's debts.** *Id. In conducting this inquiry, we examine "what is said by state law on the topic and what in fact has happened." Id. WIPR's enabling act does not explicitly obligate the Commonwealth to pay WIPR's debts. But even without such an explicit promise, the Commonwealth may have assumed this obligation by binding itself to provide virtually all of the funds that WIPR needs to operate. See id. We therefore examine WIPR's statutory scheme, with particular emphasis on the provisions for raising revenue and funding. See id. As mentioned above, WIPR is empowered to raise revenues through soliciting donations and charging user fees. See supra at 127. The enabling act requires WIPR to submit an annual work plan to the Governor and Legislature identifying specific activities and anticipated expenditures for the upcoming year. P.R. Laws Ann. tit. 27, § 505. In the session laws, the Legislature promised to authorize "all additional fiscal resources that are needed to carry out the annual" work plan. 1996 Act P.R. Laws § 14, codified at P.R. Laws Ann. tit. 27, § 501 (emphasis supplied). Thus, the Legislature has undertaken only a limited funding obligation for WIPR. It will pay*

*the difference between WIPR's revenues and the resources needed to implement WIPR's work plan.* **It has not, however, committed itself to provide all of WIPR's budget, and has not promised to cover unforeseen expenses that WIPR may incur.** *We turn finally to the practical reality of WIPR's funding situation. "If the [Commonwealth] substantially funds [WIPR], those funds would be the probable source to satisfy any judgment against [WIPR]," and therefore the public fisc would be jeopardized by an adverse judgment. Fresenius, 322 F.3d at 73. WIPR asserts that its "entire budget comes from the Commonwealth of Puerto Rico General Fund." If true, this could be a significant (although not necessarily dispositive) fact. See Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (concluding that a public school district was not an arm of the state even though it received "a significant amount of money from the State"). In any event, WIPR has offered no materials substantiating its assertion and, as mentioned above, it has the burden of proof. See Fresenius, 322 F.3d at 70.* **In sum, WIPR's enabling act does not unequivocally indicate that the Commonwealth structured WIPR to share its sovereignty, and there is no indication that the Commonwealth has bound itself to pay WIPR's debts.** (Emphasis given by the undersigned.)

14. There is a legitimate concern about how, if so, the fiscal budget of the Commonwealth can be undermined if the Comfort Order is entered in favor of the Claimants (it will not). Let's examine the definition and nature of said order. The term *comfort order* was explained by the Bankruptcy Appellate Panel for the First Circuit (the *BAP*) in *Banco Cooperativo de P.R. v. Herrera (In re Herrera), 589 B.R. 444 (B.A.P. 1st Cir. 2018)*. There, the BAP held:

*[A]n order issued pursuant to § 362(j) is often called a "comfort order," as it is typically requested by a creditor seeking to satisfy a state court that it may proceed with a pending action, such as a foreclosure, despite the pendency of a bankruptcy case. Thomas v. Fed. Nat'l Mortg. Ass'n (In re Thomas), 469 B.R. 915, 921 (10th Cir. BAP 2012); In re Hill, 364 B.R. 826, 828 (Bankr.*

*M.D. Fla. 2007). Termination of the automatic stay under § 362(c)(3) does not require, or depend on, the entry of a comfort order under § 362(j). See In re Hill, 364 B.R. at 828 (stating that **"comfort orders [under § 362(j)] merely identify and reiterate what has already occurred by operation of law ")** (emphasis added).*

**Conclusion**

15. The application of the law to the facts relevant to this motion can lead to no other reasonable conclusion: WIPR cannot be protected by the Automatic Stay granted to the Commonwealth by §362 and PROMESA. The fact that the Commonwealth has not *bound itself to pay WIPR's debts* unequivocally means that claimants collection efforts against WIPR will not affect the finances of the Commonwealth. Accordingly, there appears no reason why the Claimants should be stayed from revendicating their rights as granted by State Court.

**WHEREFORE**, Claimants requests from this Honorable Court to take notice of the preceding facts and issue a Comfort Order stating that WIPR is not protected by the Automatic Stay of §362(a) and that the Claimants may reinitiate the collection and defense of the judgment in their favor without it being considered a violation of the automatic stay.

**RESPECTFULLY SUBMITTED.**

In Caguas, Puerto Rico, on this 29th day of August 2022.

**NOTICE:** Within **thirty (30) days** after service as evidenced by the certifications, and an additional **three (3) days** under Fed. R. Bank. P. 9006(f) if you were served by mail, party against whom this paper has been served, or any other party to the action who objects to the relief sought, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed, the objection will be deemed unopposed and may be granted; unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interest of justice requires otherwise. If you file a timely response, the Court may-in its discretion-schedule a hearing.

CERTIFICATE OF SERVICE: I CERTIFY that on this same date the foregoing document has been electronically filed WITH THE CLERK of the Court using the CM/ECF system which sends notification of such filing to all system's participants, including the U.S. Trustee's Office. I further certify that this notice has been served through electronic mailing address to the attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Commonwealth and ERS:

Herman D. Bauer, Esq. herman@oneillborges.com and Martin J Beinenstock mbienenstock@proskauer.com and to the attorney for the damages claim in the Puerto Rico Court of Appeals Alberto J Marini Delgado amarini@lawaffairspr.com.

**/s/ CARLOS ALBERTO RUIZ, ESQ.**
USDC-PR 210009
Attorney for Creditor(s)
**LCDO. CARLOS ABLERTO RUIZ CSP**
P.O. Box 1298
Caguas, PR 00726-1298
Phone: (787) 286-9775/ Fax: (787) 747-2174
carlosalbertoruizquiebras@gmail.com

[Certified Translation]

8/1/22

Daniel Tomlinson
DANIEL TOMLINSON
CERTIFIED TRANSLATOR
ADMINISTRATIVE OFFICE OF
THE UNITED STATES COURTS

Commonwealth of Puerto Rico
COURT OF APPEALS
JUDICIAL REGION OF SAN JUAN-CAGUAS
PANEL IV

| JENNIFER BLEST QUIROZ, *ET AL.* | | Appeal coming from the Trial Court, San Juan Superior Court |
|---|---|---|
| Appellee | KLAN201600554 | |
| Vs. | | Case No.: K DP 2010-1453 |
| THE PUERTO RICO PUBLIC BROADCASTING CORPORATION, *ET AL.* | | In Re: Damages |
| Appellant | | |

Panel composed of its presiding Judge Vizcarrondo Irizarry, Madame Judge Cortes Gonzalez and Judge Cancio Bigas[1]

Cancio Bigas, reporting Judge

**JUDGMENT**
(ADMINISTRATIVE DISMISSAL)

In San Juan, Puerto Rico on November 3, 2017.

Comes now the appellant, the Puerto Rico Public Broadcasting Corporation ("appellant" or "Corporation"), through a "Notice to Stay Legal Proceedings" filed on June 28, 2017, and requests us to stay the proceedings in accordance with the motion filed by the Government of Puerto Rico, under Title III of the *Puerto Rico*

---

[1] In substitution of Madame Judge Colom Garcia. (*See* Administrative Order TA 2017-015).

*Oversight, Management and Economic Stability Act*, 48 USC sect. 2101 *et seq* ("*PROMESA*"). The appellant alleges that said legislation is applicable because it is an entity or instrumentality of the government of Puerto Rico, even though it was created as an independent public corporation. See 27 LPRA Sect. 501, 502. Whether or not the request to stay is proper would be related, in the final instance, to the degree to which there is financial dependence on the central government for the payment of its obligations. Therefore, we must make a decision on the request that they have made before us, that is, whether we can continue hearing this case or whether we should proceed to stay the legal action.

It is generally known that the Financial Oversight Board, in representation of the Commonwealth of Puerto Rico ("ELA"), has filed a petition for restructuring (or bankruptcy) in the United States District Court for the District of Puerto Rico, case number BR 17-1578, under Title III of *PROMESA, supra*. Said motion was filed on May 3, 2017.

Our conclusion that the effect of the filing of that case is to obstruct us from continuing to address said appeal is based on the effect that a stay of the above-captioned case has, even insofar as the public instrumentality being sued, by operation of what is provided in Section 301 of *PROMESA*, 48 &SC Sect. 2161, and in Sections 362(a) and 922(a) of the United States Bankruptcy Code, (Bankruptcy Code), 11 USC Sects. 362(a) and 922 (a).

B

By means of this case, the appellant is requesting us to review a "*Judgment*" issued by the Trial Court, the San Juan Superior Court, on March 18, 2016, notice of

which was given on March 28, 2016. In short, the trial court found that the Public Broadcasting Corporation was negligent in the manner in which it conducted the severance of the appellees and that said negligence was the proximate cause of the damages claimed by the latter. Thus, it ordered the appellant to pay several sums of money that are listed in the judgment being appealed.

As discussed above, after the appellant filed the remedy for appeal – on November 4, 2016 – and after other procedural events, on June 28, 2017 the same appellant filed a "Notice to Stay the Legal Proceedings," requesting the previously-mentioned remedy. The appellee, in turn, filed a "Motion Regarding the 'Notice to Stay the Legal Proceedings,'" in which it alleged, in short, that from the contents of the petition by the Commonwealth it was not apparent that the appellee was covered by the petition for bankruptcy by the Commonwealth.[2]

After addressing the positions of the parties, this Court ordered the appellant to provide evidence that the Puerto Rico Public Broadcasting Corporation was a "covered entity" [in English in original] for the purposes of PROMESA *supra*.[3] That being the case, on July 20, 2017, the appellant filed a "Motion in Compliance with Order" to which it attached a document titled "*Covered Entities Under PROMESA,*" filed as part of the request for protection under Title III of PROMESA, *supra*, brought by the Commonwealth. That same document shows that the Puerto

---

[2] *See* the "*Motion Regarding the Notice to Stay the Legal Proceedings*," filed by the appellee on June 30, 2017.
[3] *See*, the Ruling of July 7, 2017.

Rico Public Broadcasting Corporation was an entity covered under the petition for protection under Title III of PROMESA, *supra*.[4]

On July 25, 2017, the appellee filed an "*Emergency Motion Regarding the Ruling and Summary in Compliance with Order*," alleging that the fact that the Puerto Rico Public Broadcasting Corporation was a "covered entity" did not make it a "debtor" in bankruptcy. It points out that appellant is a public corporation independent from the Commonwealth of Puerto Rico ("ELA"), to the extent that the latter's bankruptcy does not include or cover the appellant. It added that said entity had not filed for any bankruptcy and that the finding as to whether or not the petition for bankruptcy by the Commonwealth of Puerto Rico covered it, should be determined by the Federal Court. That being the case, Appellant filed a rejoinder to this motion reiterating its position and requesting that the legal proceedings be stayed.[5]

Based on the foregoing, we find.

C

On June 30, 2016, said act, PROMESA, *supra*, went into force. In its relevant part, said legislation provides the Commonwealth with the possibility of restructuring its debts by means of access to legal bankruptcy proceedings. PROMESA *supra,* Sect. 2161. As we narrated above, while this case was pending resolution, we became aware of the petition for restructuring that the

---

[4] *See*, *Motion in Compliance with Order*, Attachment II, page. 3.
[5] *See*: "*Emergency Motion Regarding the Ruling and Summary in Compliance with Order*," filed by the appellee on July 25, 2017; and the "*Rejoinder to the Emergency Motion Regarding the Ruling and Summary in Compliance with Order*," filed by the appellant on August 7, 2017, reiterating its position.

Commonwealth had filed on May 3, 2017 in the United States District Court for the District of Puerto Rico, under the provisions of Title III of the PROMESA Act, *supra*.

Pursuant to what is provided in PROMESA, *supra*, Sections 301 (making several of the Bankruptcy Code's provisions applicable) and 304 (on the filing of a voluntary petition for restructuring),[6] and once the applicable requirements of the statute have been complied with, the mere filing of a voluntary petition with the United States District Court activates the protection of the automatic stay under Section 362 (a) and 922 (a) of the Bankruptcy Code, *supra*, as far as all of the legal and administrative cases and other claims that may be pending against the Commonwealth on the date when the petition is filed, or any that have been filed prior to that date. PROMESA, *supra,* Section 2161; 11 USC Sects. 362 (a) and 922 (a).

The structure created under Title III of PROMESA, *supra*, allows for a petition for its protection to constitute an "order for relief" [in English in original], PROMESA, *supra*, Sect. 304 (c), applying the above-mentioned sections of the Bankruptcy Code, *supra*, that makes the automatic stay viable. PROMESA, *supra*, Sects. 2161 and 2164. As a result, the petition with its automatic stay or order for relief have the effect of an injunctive order to prevent "*the initiation or continuation of any legal, administrative or any other type of proceedings that was or could have been brought*

---

[6] Sections 301 and 304 of Promesa, *supra*, provide in part:
SECT. 301. APPLICABILITY OF OTHER LAWS; DEFINITIONS. (a) SECTIONS APPLICABLE TO CASES UNDER THIS TITLE.
Section … of Title II, United States Code, apply in a case under this title.
SECT. 304. PETITION AND PROCEEDINGS RELATING TO PETITION.
    (a) COMMENCEMENT OF CASE. – A voluntary case under this title is commenced by the filing with the district court of a petition by the Oversight Board pursuant to the determination under Section 206 of this Act.
    […]
    (c) ORDER FOR RELIEF. – The commencement of a case under this title constitutes an order for relief.

*against the debtor, or to assert any action based on a right born before the bankruptcy was begun.*" Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010) (our emphasis). "It can also prevent the execution of a prior judgment or stop the creation, fulfillment of requirements or execution of a lien prior to the bringing of the bankruptcy." *Id.* The effects of the stay *"become clear from the time when the petition for bankruptcy is filed"* and do not *"require a formal notice to go into effect."* Marrero Rosado v. Marrero Rosado, *supra*, pg. 491. "*It causes […] the state courts to be deprived of jurisdiction automatically and furthermore is so comprehensive as to stay litigation that has little or nothing to do with the debtor's financial situation.*" *Id.* (Our emphasis.)

D.

After evaluating the positions of the parties, we believe that, in light of the certification by the Financial Oversight Board that includes the appellee as one of the public instrumentalities covered under the PROMESA Act, and the definitions contained in said Act as to what a public instrumentality consists of under the Act, 48 USC 2104 (7) and 48 USC 2121 (d), as well as a "debtor," 48 USC 2161 (b) and (c) (2), for the purposes of the bankruptcy that is authorized therein, there is no doubt that the cause of action raised by the appellee against the appellant in this case is covered by the PROMESA Act, *supra*, as far as the staying of cases in litigation.[7]

---

[7] See the following sections of PROMESA: 48 USC 2104 Sect. (7); (8), (18) and (19); Sect. 2121 (d) (1) (A); and 2161 (b) and (c) (2). There is no dispute as far as the fact that the appellant is among the "covered instrumentalities" to which PROMESA applies, pursuant to what has been established by the Financial Oversight Board, pursuant to what is apparent on the copy of the certification that is in the case file. In addition, *see*: F&M Production, Inc. v. Corporación de Puerto Rico para Difusión Pública y Otros, Appeals Court, KLAN 201200629, 2012 WL 6680343 (TA, November 30, 2012) (to the effect that "although the

In view of this picture, as we set forth above, we have no alternative but to conclude that we are prevented from continuing to address this case, because the action by the Commonwealth through the Financial Oversight Board had the effect of staying it. Until the bankruptcy so decreed has been concluded, is dismissed, or one of the above-captioned litigants certifies having requested and obtained from the United States District Court for the District of Puerto Rico, a release from the automatic stay order under Sections 362 (a) and 922 (a) of the United States Bankruptcy Code, 11 USC 362, this case remains stayed.

Therefore, it is ordered to be closed and administratively dismissed until otherwise provided, or is reopened. This Court reserves jurisdiction to order the reopening and continuation of the legal proceedings at the behest of the interested party, in the event that the stay order under the PROMESA Act, *supra*, is not in effect or is set aside or modified to allow for the continuation.

So agreed and mandated by the Court, and certified by the Clerk of the Appeals Court.

[Sgd.]

ATTY. LILIA M. OQUENDO SOLIS
Clerk of the Appeals Court

---

appellee a public corporation, its main income comes from the General Fund of the Commonwealth of Puerto Rico." *Id*., pg. 3).