UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**MOTION TO INTERVENE AND INFORM THE EXISTENCE AND CONTINUANCE OF UNRESOLVABLE CONFLICTS OF INTEREST IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 ET SEQ., AND PETITION FOR: (A) THE PERMANENT DISQUALIFICATION OF MCKINSEY & COMPANY, INC. AND ITS AFFILIATES AS ADVISORS TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AND (B) THE <u>DISALLOWMENT AND DISGORGEMENT OF LEGAL FEES</u>**

**To the Honorable United States District Judge Laura Taylor Swain:**

Citizen Carlos Lamoutte (the "Relator"), appearing *pro se*, hereby respectfully moves for an Order from this Honorable Court (the "Title III Court") to permanently disqualify the consulting firm McKinsey & Company, Inc. and its affiliates (collectively, "McKinsey") as advisors to the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

1

Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as well as to disallow and disgorge fees paid and/or otherwise payable to McKinsey for conflicts of interest and other violations incurred by McKinsey pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., resultant from McKinsey's concurrent representation of the Oversight Board and of several private clients of McKinsey that possess private interests that are materially adverse to the public interests of the Oversight Board and of the Commonwealth of Puerto Rico, who is the debtor here. The Relator respectfully states and prays as follows:

1. The Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq. (hereinafter, "PRRADA"), is a special federal statute that restricts compensation to professionals retained by the Oversight Board under the Puerto Rico Oversight, Management, and Economic Stability Act, Public Law 114-18, 48 U.S.C. § 2101 et seq. (hereinafter, "PROMESA") who incur in conflicts of interest and/or otherwise fail to properly disclose to the Title III Court, to the U.S. Trustee, and to other parties in interest, their association with Material Interested Parties (as such term is defined in Section 2(c) of PRRADA).

2. This motion serves to report to the Title III Court that McKinsey, restructuring advisor to the Oversight Board since the inception of this Title III Case, intentionally incurred in unresolvable conflicts of interest to financially benefit several private clients of that firm, to the corresponding economic detriment of the bankruptcy estate of the debtor in this Title III Case, the Commonwealth of Puerto Rico, acts which merit a ruling providing for the denial of compensation, full disgorgement of legal fees, and the permanent disqualification of McKinsey as advisors to the Oversight Board.

3. The Title III Court and the U.S. Trustee must intervene in this public matter that significantly impacts the bankruptcy estate of the Commonwealth of Puerto Rico in PROMESA

2

Title III Case No. 3:17-BK-3282 (the "Title III Case") and collaterally injures innocent third parties.

4. PRRADA sets forth that: (a) no attorney or other professional person may be compensated under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) unless prior to making a request for compensation, the professional person has filed with the court a verified statement conforming to the disclosure requirements of Rule 2014(a) of the Federal Rules of Bankruptcy Procedure setting forth the connection of such professional person with any entity or person on the list of Material Interested Parties; and (b) in a case commenced under section 304 of PROMESA (48 U.S.C. 2164), in connection with the review and approval of professional compensation under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) filed after the date of enactment of PRRADA, the court may deny allowance of compensation or reimbursement of expenses if: (i) the professional person has failed to file the verified disclosure statements or has filed inadequate disclosure statements under that subsection; or (ii) during the professional person's employment in connection with the case, the professional person: (A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the list of Material Interested Parties; or (B) represents or holds an adverse interest in connection with the case.

5. In the Commonwealth of Puerto Rico's Title III Case, the Oversight Board serves as the sole representative of the debtor.

6. Since the commencement of the Title III Case, the Oversight Board employed McKinsey to serve as the Oversight Board's restructuring advisor, an appointment which continues to date, as evidenced by the Title III Case's voluminous docket and recent filings. To date, McKinsey has collected millions of dollars in legal fees paid by the Commonwealth of Puerto Rico for services rendered to the Oversight Board.

7. On March 30, 2022, the Title III Court issued an order in the Title III Case (Doc.

3

20,476) approving the amended list of Material Interested Parties submitted by the Oversight Board pursuant to PRRADA on March 29, 2022 (Doc. 20,458).

8. The amended list of Material Interested Parties approved by the Title III Court identifies McKinsey as a professional service provider retained by the Oversight Board in the Title III Case.

9. McKinsey and its affiliates jointly owe a fiduciary duty to the Oversight Board and to the Commonwealth of Puerto Rico that they conjointly failed to discharge in the Title III Case, by preferring to enable and to conceal from the Title III Court and the U.S. Trustee, respectively, multiple connections to several private clients of McKinsey that maintain large-scale contracts with the Commonwealth of Puerto Rico and its instrumentalities.

10. Public records and the verified disclosures filed to date by McKinsey and the law firm O'Neill & Borges ("O&B"), local legal counsel to the Oversight Board, in [simulated] compliance with PRRADA, reveal that McKinsey and O&B have served the same private sector clients holding a stake in this Title III Case during the same period in which McKinsey and O&B have also simultaneously served the Oversight Board, to wit:

> (a) AES Puerto Rico, L.P.,
> (b) EcoEléctrica, L.P.,
> (c) Molina Healthcare of Puerto Rico, Inc.,
> (d) New Fortress Energy LLC d/b/a NFEnergía LLC,
> (e) Puma Energy Caribe, LLC,
> (f) UBS Trust Company and UBS Financial Services, Inc.,
> (g) the UBS family of Puerto Rico funds, and
> (h) undisclosed others.

11. It's the case of the "*goat watching over the lettuce*." The private sector clients that McKinsey and O&B share hold interests which by their nature are adverse to the Oversight Board and to the Commonwealth of Puerto Rico and its instrumentalities, yet McKinsey and O&B have offered no tangible explanations under PRRADA so far.

4

12. Contrary to the generic "verified statements" set forth in McKinsey's and O&B's PRRADA disclosures motions, McKinsey and O&B are in reality not disinterested professional persons under PROMESA and PRRADA because the private sector clients that McKinsey and O&B conjointly represent in fact hold interests that are materially adverse to the Oversight Board and to the Commonwealth of Puerto Rico that the Oversight Board represents in this Title III case.

13. In their respective disclosure filings, McKinsey and O&B loosely and self-servingly state to be disinterested persons, but McKinsey's and O&B's past and present actions demonstrate that they are truly not disinterested. Disqualification and disgorgement of legal fees is merited in both cases.

14. McKinsey and O&B have so far failed to "explain away" their connections to several private sector clients who are major contractors of the Government of Puerto Rico, as required under PRRADA and supplemental bankruptcy case law. McKinsey and O&B *"cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away."* See *In re Midway Industry Contractors, Inc.*, 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing In re Granite Partners, L.P., 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

15. Section 2(e) of PRRADA expressly sets forth that *"[i]n a case commenced under section 304 of PROMESA (48 U.S.C. 2164), in connection with the review and approval of professional compensation under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) filed after the date of enactment of this Act, <u>the court may deny allowance of compensation or reimbursement of expenses if</u>-- (1) the professional person has failed to file the verified disclosure statements required under subsection (b)(1) or has filed inadequate disclosure statements under that subsection; or (2) <u>during the professional person's employment in</u>*

5

*<u>connection with the case, the professional person</u>-- (A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the List of Material Interested Parties; or (B) <u>represents or holds an adverse interest in connection with the case.</u>*" (Emphasis added.)

16. Private contractors who are awarded large-scale contracts by the Government of Puerto Rico and its instrumentalities do in fact hold adverse interests in relation to the debtor here. Thus, McKinsey and O&B are legally precluded from representing those private clients that contract with Puerto Rico government agencies, much less assist them in procuring or maintaining those same multimillion-dollar government contracts that are subject to the review and approval of the Oversight Board, which McKinsey and O&B also simultaneously represent.

17. McKinsey's and O&B's joint representation of private sector clients that contract with the Commonwealth of Puerto Rico and its instrumentalities during the Oversight Board's existence places the Commonwealth of Puerto Rico, its instrumentalities, and competing bidders at an obvious disadvantage.

18. The U.S. Trustee Program should sternly object to any request for compensation filed by McKinsey in this Title III Case and demand full disgorgement of legal fees. The U.S. Department of Justice should not risk sending the incorrect message to insolvency stakeholders and to the general public that the best way for a private contractor to do government procurement in Puerto Rico during the pendency of these insolvency proceedings is by secretly hiring the same, exact set of advisers that the Oversight Board employs.

19. In resolving pending motions, the Court should not pay much credibility to what the Oversight Board and McKinsey state (or omit to state) in their respective writings, but

6

rather to what the Oversight Board and McKinsey have actually done (or failed to do) in relation to the process of awarding or maintaining large-scale Puerto Rico government contracts to private clients during the pendency of these Title III proceedings. The same applies to O&B.

20. A thin line divides ethical transgressions from racketeering, collusion, and abuse of the bankruptcy process. Pay-to-play schemes cannot be tolerated by the Court in the largest municipal bankruptcy in U.S. history.

21. Advisers to the Oversight Board cannot simultaneously serve without bias the Oversight Board, which is tasked to rule on the appropriateness of large-scale contracts with the Commonwealth of Puerto Rico and to serve as the sole representative of the Commonwealth of Puerto Rico and its instrumentalities in this Title III Case, and those private sector clients who are eventually awarded those same government contracts under the [simulated] supervision of the Oversight Board.

22. Resolving conflicts of interest controversies in favor of unscrupulous advisers like McKinsey and O&B would not be consistent with PROMESA, PRRADA, and supplemental bankruptcy case law, and would also create the terrible precedent that the most advantageous way for a private contractor to land or maintain a large-scale contract with an instrumentality of the Government of Puerto Rico during the pendency of the largest municipal bankruptcy in U.S. history is by hiring – *and paying monies to* – the same, exact set of advisers that the Oversight Board uses.

23. An unresolvable and undisclosed conflict of interest involving McKinsey exists and is continuing, due to the fact that McKinsey simultaneously represented: (a) the Oversight Board, who is the sole representative of the Commonwealth of Puerto Rico (who is the debtor in the Title III Case) since the inception of the Title III Case; and (b) those private clients identified

7

in paragraph 10 above (collectively, the "Conflict Parties").

24. Denial of compensation, disgorgement of legal fees, and the permanent disqualification of McKinsey is merited in this case.

25. The Title III Case docket presently reflects that McKinsey has failed to disclose to the U.S. Trustee, to the Title III Court, and to the other parties having an interest in the Title III Case: (a) all of McKinsey timekeepers' past and present association with: (i) the Conflict Parties; (ii) their principal members, and (iii) any natural person holding a direct or ultimate beneficial interest in each of the Conflict Parties; and (b) of the pervasive conflicts of interest that result from McKinsey's dual, concurrent representation of the Oversight Board and the Conflict Parties.

26. In accordance with PRRADA, McKinsey may not be compensated under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) unless prior to making a request for compensation McKinsey files with the Title III Court a verified statement conforming to the disclosure requirements of Rule 2014(a) of the Federal Rules of Bankruptcy Procedure setting forth the connection of McKinsey with the Conflict Parties. McKinsey has not done that.

27. In the Commonwealth of Puerto Rico's Title III Case, the Title III Court must deny McKinsey allowance of compensation and reimbursement of expenses if McKinsey's timekeepers fail to file the verified disclosure statements or file inadequate disclosure statements or if during McKinsey's employment in connection with the Title III Case the Title III Court determines that any of McKinsey's timekeepers is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the list of Material Interested Parties or represents or holds an interest adverse to the Commonwealth of Puerto Rico, such as the Conflict Parties that McKinsey represented during the pendency of the Title III Case and that McKinsey continues to represent as of the date of this motion.

28. PRRADA entirely applies to McKinsey's secretive and preferential treatment of the Conflict Parties, its private clients.

8

29. The prompt intervention of the Title III Court and the U.S. Trustee is merited in this public matter that significantly impacts the bankruptcy estate of the Commonwealth of Puerto Rico in the Title III Case in amounts that exceed $5 billion.

30. Professionals employed by the Oversight Board cannot be allowed to take advantage of their privileged association with the Oversight Board in order to financially benefit private clients, injure the Commonwealth of Puerto Rico, and deprive the creditors of the Commonwealth of Puerto Rico of attainable remedies in the Title III Case.

31. In accordance with PRRADA, professionals representing the Oversight Board, such as McKinsey, are obligated to adequately disclose their connections to all parties in the Title III Case and to satisfy the other conflict of interest standards supplementally imposed by the U.S. Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

32. The purpose of PRRADA and Rule 2014(a) is to provide the Title III Court and the U.S. Trustee with sufficient information to determine whether any professional person's continued employment in the Title III Case is in the best interest of the estate.[2]

33. The duty of disclosure by professionals that serve the debtor is not merely critical, it is "*sacrosanct.*"[3]

34. The conflicts' disclosure required of professionals that represent the debtor "*goes to the heart of the integrity of the bankruptcy system.*"[4]

35. The Title III Court and the U.S. Trustee must require broad and complete disclosure of all connections of professionals with debtors, creditors, and any other party-in-interest.[5]

36. The Title III Court and the U.S. Trustee cannot allow professionals like McKinsey

---

[2] See In Re Enron, No. 02-5638, 2003 WL 223455 (Bankr. S.D.N.Y. Feb. 3, 2003).
[3] See In Re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).
[4] See In Re Universal Building Products, 486 B.R. 650, 663 (Bankr. D. Del. 2010)
[5] See In Re Leslie Fay Cos. Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994).

9

to pick and choose the connections to disclose and those to ignore as unimportant or trivial.[6]

37. McKinsey must be compelled to specifically disclose its association with each and every one of the Conflict Parties during the same time periods in which McKinsey concurrently represented the Oversight Board in the Title III Case. McKinsey has not done that.

38. The obligation to disclose connections is an independent obligation of the professional person serving the debtor, and any failure of a professional person to disclose a connection can warrant sanctions, including disqualification and disgorgement of legal fees, even absent a conflict of interest.[7] The court need not find intent.[8]

39. The Commonwealth of Puerto Rico's Title III Case is no different from any other bankruptcy case as it relates to conflicts of interest.

40. As the *"watchdog"* of the U.S. bankruptcy system[9], the U.S. Trustee is obligated to raise conflict and disclosure issues in the Title III Case, so that the Title III Court may adjudicate professional employment applications under PRRADA.

41. McKinsey's concurrent representation of the Oversight Board and of the Conflict Parties has created conflicts which are materially adverse to the bankruptcy estate [in amounts exceeding $5 billion] and is in violation of PROMESA, PRRADA, the U.S. Bankruptcy Code, and rules of conduct.

42. McKinsey's failure to provide clear and candid disclosures as to its connections with the Conflict Parties warrants McKinsey's disqualification as advisors to the Oversight Board,

---

[6] See In Re Jore Corp., 298 B.R. 703, 726 (Bankr. D. Mont. 2003). See also In Re Fibermark Inc., No. 04-10463, 2006 WL 723495 (Bankr. D. Vt. March 11, 2006), In Re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991), In Re BH&P Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991), and In Re Granite Partners LP, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998).
[7] See In Re Universal Building Products, 486 B.R. 663.
[8] See In Re Indep. Eng. Co. Inc., 232 B.R. 529, 532 (B.A.P. 1st Cir. 1999).
[9] Congress recently encouraged the U.S. Trustee Program *"to continue its efforts to ensure a fair and transparent bankruptcy process for stakeholders and for the public"* and required the U.S. Trustee Program to report its efforts in FY 2020 and FY 2021 to enforce professionals' compliance with the disclosure requirements of Bankruptcy Rule 2014(a). See Explanatory Statement for Commerce, Justice, Science and Related Agencies Appropriations Act of 2021, accompanying the Consolidated Appropriations Act of 2021 (Publ. L. No. 116-260).

10

as well as the disallowment and disgorgement of all fees.

43. PRRADA and the Federal Rules of Bankruptcy Procedure require that an application for employment must be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest. Fed. R.Bankr. P. 2014(a).

44. McKinsey is and remains required to provide clear and candid disclosures regarding all connections to the debtor, creditors, and parties in interest, such as the Conflict Parties. See In re Park-Helena Corp., 63 F.3d 877, 881 (9th Cir. 1995); In re Wood, 408 B.R. 841, 853 (Bankr. D. Kan. 2009); In re Laferriere, 286 B.R. 520, 526 (Bankr. D. Vt. 2002). McKinsey has not done that.

45. McKinsey's duty to disclose under Rule 2014(a) is a continuous one. In re Sandpoint Cattle Company, LLC, 556 B.R. 408, 421 (Bankr. D.Neb. 2016).

46. Courts, creditors, and the U.S. Trustee rely upon a professional's voluntary disclosures to evaluate whether their retention is appropriate or not.

47. The duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under section 327(a) and to make an informed decision on whether the engagement is in the best interest of the estate. In re eToys, Inc., 331 B.R. 176, 189 (Bankr. D.Del. 2005).

48. Accordingly, *"[i]t is not ... the obligation of the bankruptcy court to search the record for possible conflicts of interest. That obligation belongs to the party who seeks employment by the estate."* In re BH & P, Inc., 949 F.2d 1300, 1317 (3d Cir. 1991).

49. An applicant's failure to provide clear and candid disclosures inhibits the ability to conduct a meaningful evaluation of disqualifying connections. See In re LSS Supply Inc., 247 B.R. 280, 282 (Bankr. D.Ariz. 2000) (*"The burden is on the person to be employed to come forward and*

11

*make full, candid, and complete disclosure.*"); see also In re Champagne Services, LLC, 560 B.R. 196, 201 (Bankr. E.D.Va. 2016) ("*It is not the United States Trustee's burden to show that [the Applicant] is not disinterested.*").

50. Here, McKinsey has so far failed to specifically disclose that it concurrently represented the Oversight Board and the Conflict Parties and the extent of its connections.

51. McKinsey's incomplete disclosures fall short of its mandatory obligation to provide "*full, candid, and complete disclosures*" to the Title III Court. In re Kings River Resorts, Inc., 342 B.R. 76, 85 (Bankr. E.D.Cal. 2006).

52. McKinsey cannot unilaterally decide what disclosures it desires to make in the Title III Case or when to make them.

53. McKinsey's manipulative actions as to the Conflict Parties inappropriately shift McKinsey's statutory burden to the Title III Court, to the U.S. Trustee, and to other parties in interest in the Title III Case, to pry the information necessary to evaluate the ongoing conflicts of interest.

54. Simply put, McKinsey "*cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away.*" In re Midway Industry Contractors, Inc., 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing In re Granite Partners, L.P., 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

55. McKinsey's lack of full disclosure in relation to the Conflict Parties is a sufficient basis, by itself, to warrant denial of its employment in the Title III Case. See In re Lewis Road, LLC, Case No. 09–37672, 2011 WL 6140747, at *9 (Bankr. E.D.Va. December 9, 2011); see also In re Biddle, Case No. 12- 05171, 2012 WL 6093926, at *4 (Bankr. D.S.C. December 6, 2012).

56. Professionals for a bankruptcy estate must be committed to protecting the estate's interests and be free of the "*interests of any other person*" so that their "*basic judgment and*

12

*responsibility to the estate*" is not affected. See In re Philadelphia Athletic Club, Inc., 20 B.R. 328, 337 (E.D. Pa. 1982).

57. A professional "*should not place himself in a position where he may be required to choose between conflicting interests or duties.*" See In re 765 Assocs., 14 B.R.449, 451 (Bankr. D. Hawaii 1981).

58. Under the clear language of 11 U.S.C. § 327(a), any professional employed by a debtor-in-possession must be "*disinterested*" and neither hold nor represent an interest adverse to the estate. One court has described Section 327(a) as "*a prophylactic provision designed to insure that the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded.*" In re Prudent Holding Corp., 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993).

59. Section 101(14), in turn, defines "*disinterested person*" as a person who does not have an "*interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.*"

60. Section 101(14)(C), referred to as the "*catch-all clause*", has been characterized as "*broad enough to include anyone who in the slightest degree might have some interest or relationship that would distract from the independent and impartial attitude which is required by the [Bankruptcy] Code.*" See In re Glenn Elec. Sales Corp., 89 B.R. 410, 413 (Bankr. D.N.J.), aff'd, 99 B.R. 596 (D.N.J. 1988); see also In re Black Hills Greyhound Racing Ass'n, 154 B.R. 285, 292 (Bankr. D.S.D. 1993).

61. Although not defined in the Bankruptcy Code, "*adverse interest*" has been interpreted to mean: (a) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (b) to possess a predisposition under circumstances that render such a

13

bias against the estate. In re Glenn Elec. Sales Corp., 89 B.R. 410, 413 (Bankr. D.N.J.), aff'd, 99 B.R. 596 (D.N.J. 1988) (quoting In re Star Broadcasting, Inc., 81 B.R. 835, 838 (Bankr. D.N.J. 1988)). In applying this definition, the court in In re Glenn Elec. Sales Corp. relied upon a trilogy of cases published from the District of Hawaii dealing with conflict of interests between debtors and counsel in bankruptcy proceedings.

62. The Third Circuit in In re Marvel Entertainment Group, Inc., 140 F.3d 463 (3rdCir. 1998), determined that the District Court applied the wrong legal standard in disqualifying trustee's counsel under Sections 327(a) and 101(14)(E). The Third Circuit held that Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion — pursuant to § 327(a) and consistent with § 327(c) — disqualify an attorney who has a potential conflict of interest; and (3) the district court may not disqualify an attorney on the appearance of conflict alone. Id. at 476. Any professional person that does not meet both the *"no adverse interest"* and *"disinterested person"* tests is disqualified from employment under Section 327(a). See In re BH&P Inc., 949 F.2d 1300, 1314 (3d Cir. 1991) (Section 327(a) *"creates a two-part requirement for retention of counsel"*).

63. Thus, a professional that holds or represents an adverse interest is per se disqualified, and a professional that does not hold or represent an adverse interest is nevertheless disqualified unless it falls within the definition of *"disinterested person"* set forth in 11 U.S.C. § 101(14). See, e.g., United States Trustee v. Price Waterhouse, 19 F.3d at 141 (disqualified because not disinterested); Michel v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 999 F.2d 969, 972 (6th Cir. 1993) (can lack disinterestedness without having adverse interest).

64. Potential conflicts of interest are disfavored, and courts should *"generally disapprove employment of a professional with a potential conflict, with certain possible exceptions"* which include when the potential for a conflict to become actual is remote, and if the

14

reasons for employing the professional are particularly compelling. In re Marvel Entertainment Group, Inc., 140 F.3d at 476.

65. Here, as set forth above, McKinsey concurrently represented the Oversight Board and the same Conflict Parties that hold multimillion dollar contracts with the Commonwealth of Puerto Rico and its instrumentalities, including post-petition contract awards.

66. Multiple representations that may be allowed in commercial settings, especially with the informed consent of the clients, may not be acceptable in a bankruptcy setting, especially in the Title III Case, which is the largest municipal bankruptcy in U.S. history. The Bankruptcy Code provisions dealing with conflicts of interest are generally much stricter that the comparable rules of professional conduct.

67. *"In addition to the standards established by professional ethics, attorneys retained in bankruptcy proceedings are also required to meet the restrictions imposed by section 327 of the Bankruptcy Code."* See, In re Congoleum Corp., 426 F.3d 675, 688 (3rd Cir. 2005).

68. PRRADA and bankruptcy case law clearly establish that McKinsey's undisclosed representation of the Conflict Parties creates an actual conflict of interest which prohibits the retention of McKinsey as advisors to the Oversight Board.

69. By concurrently representing the Oversight Board and the Conflict Parties, McKinsey has a conflicting decision whether to side with the public interests of the Oversight Board and the Commonwealth of Puerto Rico in the Title III Case, or to side with the private interests of the Conflict Parties.

70. McKinsey has placed itself in the position of choosing between competing public and private interests that are quite evident and obvious.

71. The Relator leaves the Title III Court and the U.S. Trustee to their respective legal burdens, and reserves any and all rights, remedies and obligations to, inter alia, complement, supplement, augment, alter and/or modify this motion, file any appropriate additional pleadings

and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further certifications submitted by the knowledge parties in the Title III Case or facts learned through factual discovery.

72. The Relator also specifically reserves the right to convert this disqualification claim into a class action tort claim against McKinsey on behalf of the citizens of Puerto Rico.

73. Given the *sui generis* nature of PROMESA, the Title III Court is the sole venue where PRRADA violations may be submitted for adjudication in cases where professionals retained by the Oversight Board incur in conflicts of interests and fail to properly disclose them.

74. Under PRRADA and applicable bankruptcy law standards, McKinsey is required to either "*explain away*"[10] its long-standing connections to each of the Conflict Parties that have dealings with the Commonwealth of Puerto Rico and its instrumentalities or be immediately disqualified as advisors to the Oversight Board in the Title III Case.

For the reasons set forth above, the Relator requests that the Title III Court grants this motion as presented and issues an Order that:

(a) Permanently disqualifies McKinsey & Company, Inc. and its affiliates from serving as an advisor to the Financial Oversight and Management Board for Puerto Rico;

(b) Provides for the disallowment and full disgorgement of fees; and

(c) Grants such other relief that the Title III Court deems just, fair and equitable in light of the conflicts of interest that exist and that are continuing.

---

[10] See In re Midway Industry Contractors, Inc., 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing In re Granite Partners, L.P., 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

Dated: September 1, 2022
       San Juan, Puerto Rico

Respectfully submitted,

*[signature]*

Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com

## Certificate of Service

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this matter.

In San Juan, Puerto Rico, this 1st day of September 2022.

*[signature]*

Carlos Lamoutte, *pro se*
87 De Diego
Villas de San Francisco Plaza II
Suite 215
San Juan, Puerto Rico 00927
787-688-6036
cl@carloslamoutte.com