# Exhibit 12

COMMONWEALTH OF PUERTO RICO          **ORIGINAL**

19th Legislative                                         2nd  Ordinary
Assembly                                                 Session

# PUERTO RICO SENATE

November <u>16</u>, 2021

[Signature]
FILINGS AND RECORD
PR SENATE
RECEIVED NOV/16/21 PM 6:37

## REPORT
## (CONFERENCE COMMITTEE)

# H. B. 3

### TO THE PUERTO RICO SENATE AND THE HOUSE OF REPRESENTATIVES:

The Conference Committee appointed to intervene in the discrepancies that arose in relation to H. B. 3, titled:

[Initials]

[Initials]

To amend Articles 1.1, 2.3, 2.12, 2.18, and 2.21, repeal Articles 1.2, 2.1, 2.2, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11, 2.13, 2.14, 2.15, 2.16, 2.17, 2.19, 2.20, 6.1, 6.2, and 7.1, of Act 4-2017, better known as the "Labor Transformation and Flexibility Act"; amend Articles 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, and 16 of Act No. 379 of May 15, 1948, as amended; amend Sections 1, 4, and 5 of Act No. 289 of April 9, 1946, as amended; amend subsection (b) of Article 5, subsections (a), (d), and (k) of Article 6, as well as subsection (c) of Article 8 and subsection (a) of Article 12 of Act 180-1998, as amended; amend Articles 1, 2, and 7 of Act No. 148 of June 30, 1969, as amended; amend Articles 1, 2, 3, 5, 7, 8, 9, 11, and 12, and repeal Articles 3-A and 14 of Act No. 80 of May 30, 1976, as amended; and amend Article 3 of Act No. 100 of June 30, 1959, as amended; amend Article 5-A of Act No. 45 of April 18, 1935, as amended; amend subsection (q) of Section 3 of Act No. 139 of June 26, 1968, as amended, in order to reinstate and broaden labor rights applicable to private companies; decrease the probationary period, to reestablish presumption and severance pay for wrongful termination, and the formula to calculate the accrual of vacation and sick leave, extending said benefit to part-time employees; reestablish the statute of limitations to claim benefits deriving from an employment contract; and for other related purposes.

Has the honor to propose its enactment based on the text and amendments in the attached digital draft.

Respectfully submitted,

2

**FOR THE SENATE OF PUERTO RICO:**                **FOR THE HOUSE OF REPRESENTATIVES:**

| | |
|---|---|
| [Signature] | [Signature] |
| HON. JOSÉ L. DALMAU SANTIAGO | HON DOMINGO J. TORRES GARCÍA |
| [Signature] | [Signature] |
| HON. MARIALLY GONZÁLEZ HUERTAS | HON. JOSÉ H. RIVERA MADERA |
| [Signature] | [Signature] |
| HON. JAVIER A. APONTE DALMAU | HON. DEBORAH SOTO ARROYO |
| [Signature] | [Signature] |
| HON. GRETCHEN M. HAU | HON. RAFAEL HERNÁNDEZ MONTANEZ |
| [Signature] | [Signature] |
| HON. RAMÓN RUIZ NIEVES | HON. ÁNGEL N. MATOS GARCÍA |
| [Signature] | [Signature] |
| HON. JUAN ZARAGOZA GÓMEZ | HON. JOSÉ VARELA FERNÁNDEZ |
| | [Signature] |
| HON. ANA IRMA RIVERA LASSÉN | HON. ROBERTO RIVERA RUIZ DE PORRAS |
| HON. GREGORIO MATÍAS ROSARIO | HON. CARLOS MÉNDEZ NÚÑEZ |
| [Signature] | |
| HON. JOANNE RODRÍGUEZ VEVE | HON. MARIANA NOGALES MOLINELLI |
| | [Signature] |
| HON. MARÍA DE L. SANTIAGO NEGRÓN | HON. LISIE J. BURGOS MUÑIZ |
| HON. JOSÉ ANTONIO VARGAS VIDOT | HON. DENIS MÁRQUEZ LEBRÓN |

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

**(DIGITAL DRAFT)**
**(CONFERENCE COMMITTEE)**

(H. B. 3)

# ACT

To amend Articles ~~1.1,~~ 2.3, 2.12, 2.18, 2.19 and 2.21, *eliminate Article* ~~repeal Articles 1.2, 2.1, 2.2, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11,~~ 2.13, ~~2.14, 2.15, 2.16, 2.17, 2.19, 2.20, 6.1, 6.2, and 7.1,~~ of Act 4-2017, better known as the "Labor Transformation and Flexibility Act"; amend Articles 4, ~~5, 6, 7,~~ 8, ~~9,~~ 10, 11, ~~13,~~ 14, and 16 of Act No. 379 of May 15, 1948, as amended; amend Sections 1, 4, and 5 of Act No. 289 of April 9, 1946, as amended; amend subsection (b) of Article 5~~3~~, subsections (a), (d), ~~and~~ (k), *and (q)* of Article 6~~4~~, as well as subsection ~~(e)~~*(a)* of Article 8~~10~~ ~~and subsection (a) of Article 12~~ of Act 180-1998, as amended; amend Articles 1, ~~2,~~ and 7 of Act No. 148 of June 30, 1969, as amended; amend Articles 1, 2, 3, 5, 7, 8, ~~9,~~ 11, and 12, and ~~repeal Articles~~ *eliminate Article* 3-A ~~and 14~~ of Act No. 80 of May 30, 1976, as amended; and amend Article 3 of Act No. 100 of June 30, 1959, as amended, ~~amend Article 5-A of Act No. 45 of April 18, 1935, as amended; amend subsection (q) of Article 3 of Act No. 139 of June 26, 1968, as amended,~~ in order to reinstate and broaden labor rights applicable to private companies; decrease the probationary period, to reestablish presumption and severance pay for wrongful dismissal, and the formula to calculate the accrual of vacation and sick leave, extending said benefit to part-time employees; reestablish the statute of limitations to claim benefits deriving from an employment contract; and for other related purposes.

## STATEMENT OF REASONS

Historically, as paid employment became the way to organize production, workers were subjected to inhumane conditions in and outside of the workplace, with shifts of ten, twelve and more hours, impeding them from regaining their strength, while undermining their health and leading to accidents. Child labor and meager wages were not enough to cover even the most basic needs. Unsafe working conditions and lack of protection and compensation for workplace accidents; precariousness in hiring and firing; the absence of the right to vacation or sick leave, among many other things, have been widely documented and described by a long list of historians and chroniclers.

[Initials]

[Initials]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

2

Such conditions, which still persist in many countries, are not the result of individual biases or malice of certain employers or companies. They are, rather, the result of objective causes: market competition forces each employer and company, under the threat of extinction, to reduce costs to prevail over their competitors. In the absence of limits established by society, this relentless necessity results in constant pressure to cut wages and pay, extend shifts, and eliminate any imposed worker protection, with the aim of reducing costs.

For this reason, from very early on, the struggle of workers and other sectors began in order to put a limit on this inhumane and destructive trend through the adoption of work protection legislation to set limits on the long work shift and minimum wages, prohibiting child labor, protecting and compensating workers in case of accidents, recognizing the right to vacation and sick leave, guaranteeing rest periods, reducing precariousness in the employment contract, and providing a minimum job security, among other measures. Against these impersonal competition trends, this social action insisted that the worker is not a mere cost, a piece of furniture, a machine or a tool that can be bought, used, transferred, and discarded without other consequences, but rather, that the worker is a human being with the right to enjoy life and the wealth he or she produces. This dehumanization is incompatible with any notion of social justice and democratic life. The reduction and limitation of the work shift is an indispensable condition to guarantee workers' rights to family life, to participate in other activities apart from paid work (education, culture, sports, recreation) and civic participation.

[Initials]

[Initials]

Suffice it to remember the heroic struggles of workers in the United States for the eight-hour limit to the work shift in the 19th century and the struggles during the Great Depression of the 1930s, which lead to the adoption of measures such as the federal minimum wage act of 1938, among other achievements.

Article II, Section 16 of the Constitution of the Commonwealth of Puerto Rico sets forth the protections recognized for our working class, the most vulnerable sector within the employer-employee relationship. Specifically, this mandate provides that: "[t]*he right is recognized of all workers to freely choose their occupation and to resign therefrom, to receive equal pay for equal work, a reasonable minimum wage, protection against risks to their health and personal well-being in their work or job, and to a regular shift not exceeding eight hours' work. They may only work in excess of this daily limit by means of overtime pay, which shall never be less than that provided for by law.*" Likewise, our Magna Carta validates the right of private and public employees ascribed to the agencies and instrumentalities that operate as private companies or businesses, to organize themselves and to carry out collective bargaining, exercise their right to strike and to use other concerted legal activities to attain better work conditions. In this context, the Constitution recognizes the power of this Legislative Assembly to broaden these

3

guarantees based on its authority to "*pass laws for the protection of the life, health, and well-being of the People,*" given that the rights stipulated in our Constitution shall not be interpreted restrictively, nor shall they suppose the exclusion of other protections.

The struggles of workers worldwide have achieved the recognition of important rights in the Universal Declaration of Human Rights, adopted by practically all governments of the world in 1948. Said declaration provides that everyone has the "right to work, to free choice of employment, to just and favorable work conditions and to protection against unemployment" (Article 23); to "equal pay for equal work" and to "just and favorable compensation, ensuring for the worker and his or her family an existence worthy of human dignity, and supplemented, if necessary, by other means of social protection" (Article 23); to a "standard of living adequate for the health and well-being of the worker and his or her family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond the worker's control" (Article 25); "to rest and leisure, including reasonable limitation of working hours and periodic holidays with pay" (Article 24); "to freely participate in the cultural life of the community, to enjoy the arts and to share in scientific advancement and its benefits (Article 27). It also recognizes that everyone has the "right to form and to join trade unions to protect their interests" (Article 23).

However, the previous Legislative Assembly adopted a punitive public policy, focused on undermining the rights of the working class and the principal government strategy to foster the creation of jobs. This means that, in light of the State's inability to foster an adequate climate of investment, reduce operating costs to do business, and simplify the existing strategy for granting permits, the response was to penalize the most vulnerable sector within the work structure, i.e., the workers.

The most significant example was Act 4-2017, called the "Labor Transformation and Flexibility Act," a statute which led to worsened work conditions in the private sector. According to its Statement of Reasons, the new legal structure established by means of this mandate, intended to "*create a clear and consistent public policy geared toward becoming an attractive jurisdiction for establishing businesses and creating job opportunities, promoting growth in the level of employment in the private sector, and providing new job opportunities for unemployed persons.*" However, the formula to make Puerto Rico "a more attractive jurisdiction" exclusively focused on persuading employers to create more jobs within a structure with fewer rights, protections, and fringe benefits.

[Initials]

[Initials]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

4

Specifically, this Act was passed using the World Economic Forum's Global Competitiveness Index as a justification, a study which was structured according to the perception of the consulted businesspersons. This publication states that *"restrictive labor regulations"* form part of the main impediments to making Puerto Rico more attractive for investment. In addition, they highlighted *"inefficient government bureaucracy," "fiscal regulations (taxes)," "tax rates,"* and *"access to financing."* However, the Legislative Assembly circumvented these four (4) factors and focused on promoting an unfortunate public policy that left us with an impoverished working class, subject to onerous and uncompetitive employment conditions, within a bureaucratic and inefficient government system.

[Initials]

[Initials]

"In times of economic crisis, the labor reforms have proven to be regressive in nature. Austerity measures make for precarious job terms and conditions for the working class. Said practices constitute forms of institutional aggression and generate greater inequality, disparity, and injustice. A regressive legal framework tends to adversely affect: the quality of life and well-being, retention of the workforce, discouragement and creating difficulties related to work and organizational performance... in Puerto Rico not everyone has access to work and much less to a decent job. The free choice of employment occurs in a context of limited job offers and high emigration rates due to poor pay." Dr. Morales Cortés, *Comentario a la Reforma Laboral 2017, Políticas Laborales Regresivas: Un atentado a la Calidad de Vida y al Bienestar de los Trabajadores* [Remarks on the 2017 Labor Reform; Regressive Labor Policies: An Attack on the Quality of Life and Well-being of Workers], page 115.

For example, one of the principal protections recognized in favor of the working class, is the existence of a probationary period, where the employer determines the employee's suitability to carry out certain functions. In this way, employees assume their new responsibilities and begin an evaluation period, in preparation for obtaining certainty regarding their permanence at the company.

"The current labor law in Puerto Rico permits an employer to recruit a person as a regular employee but subject to compliance with a probationary period allowing the employer to evaluate said person's work. Thus, if, during the probationary period, the recruited person does not perform satisfactorily, at the end of said period, the employer may forego the employee's services without having to indemnify said employee. Moreover, during the course of the probationary period, the employer may terminate the labor relationship in the event of poor work performance... If, at the end of the term established in the probationary contract, or the valid extension thereof, the employee continues to perform work for the employer, said employee shall acquire all employment

5

rights as though having been hired without a fixed term." <u>Whittenburg v. Col.</u> <u>Ntra. Mrs. del Carmen,</u> 182 D.P.R. 937, p. 30 (2011).

Prior to this review, the maximum applicable term for a probationary period could be extended for a maximum of three (3) months. However, this statute permitted an extension for a period of six (6) months in exceptional cases provided there is written authorization by the Secretary of the Department of Labor and Human Resources. The implemented reform increased this period to nine (9) months, without any scrutiny or consideration, based on an insensitive public policy that submerged the working class into an excessive waiting period, tinged with uncertainty and instability.

[Initials]

The next change made focused on the concept of severance pay for wrongful dismissal, where a new formula was established in order to calculate compensation.

[Initials]

"Our labor rules on wrongful dismissal only apply to employees of the private sector... employees of an enterprise, industry or any other business or workplace, who: (1) have contracts without a fixed-term; (2) receive compensation; and (3) are wrongfully dismissed from their positions. This law, as with its previous statutes, does not absolutely prohibit the dismissal of employees... the statute prevents employers from dismissing employees without just cause; it imposes economic liability on employers for the wrongful dismissal of employees and it provides workers with severance pay, enabling them to survive until finding another job... This is the penalty for wrongful dismissal of workers. The purpose of this type of compensation can be analyzed from two standpoints. On the one hand, the purpose of severance pay is to compensate the worker for damages upon being deprived of the means to make a living. In this sense, severance pay substitutes the loss of the job. On the other hand, progressive severance pay, which is also received in substitution of the job, has the double objective of recognizing the time the employee has spent with the company and of providing this assistance until the individual finds another job... this type of severance pay seeks to redress the injuries caused to the employee by being out of work due to wrongful dismissal, in such a way that it can provide the employee with a corrective remedy." <u>Orsini García v.</u> <u>Secretario de Hacienda</u>, 2009 SCPR 190, pp. 18-19.

The change that was made limited the compensation to a maximum of nine (9) months' salary. The reformulation is in contrast with the compensation structure in force before the reform. It was as follows:

6

1. two (2) months' salary if the dismissal occurs within the first five (5) years of service;
2. three (3) months' salary if the dismissal occurs between five (5) and fifteen (15) years of service;
3. six (6) months' salary if the dismissal occurs after completing (15) years of service.

In addition, it recognized a progressive severance pay scale equal to:

1. one (1) week's salary for each year of service, if the dismissal occurs within the first five (5) years of service;
2. two (2) weeks' [salary] for each year of service, if the dismissal occurs between five (5) and fifteen (15) years of service;
3. three (3) weeks [salary] for each year of service, having completed fifteen (15) years or more of service.

[Initials]

[Initials]

This reformulation represents a double penalty. On the one hand, the employer exercises its authority to deprive workers of their source of income, without cause justified in law. In addition, the State limits workers' possibilities of subsistence, restricting their opportunities to receive adequate compensation for the harm suffered.

This determination is in contrast with the legislative background of Act No. 80, *supra*, which had until then only been revised to extend the safeguards in order to compensate for this type of dismissal. For example, Act No. 234, of September 17, 1996, increased the applicable severance pay to indemnify for the sudden termination of an employee. Likewise, in 2005, the payment of severance was doubled, and a scaled payment scheme was established, according to years of service, in the form of progressive severance pay. However, this protective development culminated in the 2017 labor reform.

The next change that was made corresponds to the applicable regulations for the accrual of vacation and sick leave. The previous legal structure, codified in Article 6 of Act No. 180 of 1988, as amended, established that workers would accrue vacation leave at the rate of one and one quarter (1 and ¼) days per month; and sick leave at the rate of one (1) day per month. The employee would only to work a minimum of one hundred fifteen (115) hours over the course of the month.

The new structure increased the minimum required hours to one hundred thirty (130) in the month. In addition, a new structure was imposed in order to be able to accrue vacation leave, according to the following sequence:

1. half a day per month during the first year of service.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

2. three quarters of a day per month after completing between one and five years of service.

3. one day per month after completing between five and fifteen years of service.

4. one and a quarter days after completing more than 15 years of service.

Therefore, employees covered by this labor reform must remain in their positions for fifteen (15) years in order to be able to accrue the same number of days per month, applicable to the repealed legal structure.

Likewise, Act No. 4, *supra*, reduced the time limits for workers to be able to claim any breach related to the employment contract and it eliminated the text in the Act to be able to categorize a dismissal as wrongful. In short, the net result of this statute has been extremely harmful for the stability and protection of our workers.

[Initials] This Legislative Assembly endorses a public policy that recognizes:

(1) The fundamental need of the people of Puerto Rico to attain the maximum development of its production in order to establish the highest standards of living for its people. It is the duty of the Commonwealth of Puerto Rico to adopt those measures, which lead to the maximum development of this production and which eliminate the threat that may ensue when, due to the continued growth of the population and the impossibility of maintaining an equivalent increase in production, the people have to face an irremediable catastrophe; and it is the goal of the Government to develop and maintain this production by means of the comprehension and education of all the elements comprising the populace with regard to the fundamental need to increase production to its maximum level, to distribute this production as equitably as possible, and, likewise it is the goal of the Government to develop, in practice, the principle of collective bargaining, in such a way that the basic problem of the need for maximum production can be resolved.

[Initials]

(2) Industrial peace, adequate and secure wages for employees, as well as the uninterrupted production of goods and services through collective bargaining, are essential factors for the economic development of Puerto Rico. Achieving these goals depends on employer-employee relations being just, amicable, and mutually satisfactory, and the availability of adequate means to peacefully resolve worker-employer disputes.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

8

(3)     Job terms and conditions must be established by means of collective bargaining. For the purposes of such bargaining, employers and employees shall have the right to join the organizations of their choice.

(4)     The elimination of the causes of certain worker disputes, fostering collective bargaining practices and procedures and establishing an adequate, efficient, and impartial forum to implement this policy.

(5)     All collective bargaining agreements in force, and those executed in future, are instruments to promote the public policy of the Commonwealth of Puerto Rico in its effort to develop maximum production, and they are of public interest. This exercise of rights and the performance of obligations of the parties to said collective bargaining agreements are, therefore, subject to any reasonable legislation that is necessary to achieve the public norms of this Act.

[Initials]

Therefore, the proposal before our consideration reverses the harm caused by this unfortunate labor reform of 2017, in accordance with a work plan based on two key areas: (1) to reinstate and broaden the labor rights applicable to employees belonging to the private sector, and (2) to urge this Legislative Assembly to exercise its power to investigate the prevailing employment conditions in Puerto Rico and propose new protections to the benefit of the working class.

[Initials]

*BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

~~Section 1. Article 1.1 of Act 4-2017, as amended, is hereby amended to read as follows:~~

~~"Article 1.1. This Act shall be called "Protection and Broadening of the Rights of Workers in Puerto Rico Act."~~

~~Section 2. Article 2.3 of Act 4-2017, is hereby amended to read as follows:~~

~~"Article 2.3. Independent Contractor. Independent contractor shall only mean a person that:~~

~~(a)     Possesses or has requested an employer identification number or employer social security number;~~

~~(b)     has filed income tax returns claiming sole proprietorship;~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

9

(c) ~~has established the relationship through a written contract;~~

(d) ~~has been contractually obligated to hold licenses or permits required by the government to operate his or her business, as well as any license or authorization required by law to render the agreed-upon services; and~~

(e) ~~meets three (3) or more of the following criteria:~~

    (1) ~~Has control and discretion as to the manner in which the agreed-upon work shall be performed, except for the principal's exercise of necessary control to ensure compliance with any legal or contractual obligation.~~

    (2) ~~Has control over the moment in which the stipulated work shall be performed, unless there is an agreement with the principal on the completion times of the stipulated work, the parameters for the schedule to perform the works, and, in the case of training, the moment in which the training shall be provided.~~

    (3) ~~Is not required to work exclusively for the principal, unless there is a law that prohibits such individual from rendering services to more than one principal, or the exclusivity agreement is for a limited time.~~

    (4) ~~Is free to hire employees to assist in rendering the agreed-upon services.~~

    (5) ~~Has made an investment in his or her business to render the agreed-upon services, including, among others:~~

        (i) ~~Purchasing or leasing tools, equipment, or materials;~~

        (ii) ~~Obtaining a license or permit from the principal to gain access to the principal's workplace to perform the agreed-upon work; and~~

        (iii) ~~Leasing a work space or equipment from the principal in order to perform the agreed-upon work. The terms included in this Article shall not preclude any other term related to agricultural, industrial, or commercial activities."~~

~~Section 3. Article 2.12 of Act 4-2017, is hereby amended to read as follows:~~

[Initials]

[Initials]

10

~~"Article 2.12. Interpretation: Ambiguous provisions.~~

~~In case of ambiguity in any provision of an employment contract, said provision shall be freely interpreted in favor of the employee."~~

~~Section 4. Article 2.18 of Act 4-2017, is hereby amended to read as follows:~~

~~"Article 2.18. Statute of limitations. The statute of limitations on actions derived from an employment contract or the benefits thereunder shall be of five (5) years from the moment the action is brought, except as otherwise expressly provided in a special law or in the employment contract."~~

~~Section 5. Article 2.21 of Act 4-2017, is hereby amended to read as follows:~~

[Initials]

~~"Article 2.21. Periodic Reports to the Legislative Assembly. The Secretary of the Department of Labor and Human Resources shall be required to submit reports, every twelve (12) months, to the Secretary's Office of both houses of the Legislative Assembly in relation to the application of this Act."~~

~~Section 6.  Articles 1.2, 2.1, 2.2, 2.4, 2.5, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11, 2.13, 2.14, 2.15, 2.16, 2.17, 2.19, 2.20, 6.1, 6.2, and 7.1 of Act 4-2017, as amended, are repealed.~~

[Initials]

~~Section 7. Article 4 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:~~

~~"Article 4. Overtime is:~~

~~Overtime is:~~

~~(a)~~   ~~The hours that employees work for the employer in excess of eight (8) hours during any period of twenty-four (24) hours.~~

~~(b)~~   ~~The hours that employees work for the employer in excess of forty (40) in any week, unless the daily hours worked in excess of eight (8) are paid at double time.~~

~~(c)~~   ~~The hours that employees work for the employer on the following days: Sundays, January 1, January 6, Election Day, December 25, and any other day or time when the establishment must remain closed to the public by legal provision.~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

11

(d) ~~The hours that employees work for the employer on the weekly day of rest, as established by law and those they work in excess of the working hours on the day any competent body has established for the occupation, business, or industry in question.~~

(e) ~~...."~~

~~Section 8. Article 5 of Act No. 379 of May 15, 2948 [sic], as amended, is hereby amended to read as follows:~~

[Initials]

~~"Article 5. For the purpose of calculating hours worked in excess of forty (40) hours, the workweek shall constitute a period of one hundred and sixty-eight (168) consecutive hours. The workweek shall commence at 12:01 a.m. on Monday of each week, except when the employer and employee agree otherwise."~~

[Initials]

~~Section 9. Article 6 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:~~

~~"Article 6. Rules and requirements for overtime pay shall be the following:~~

(a) ~~Any employer that uses or allows an employee to work overtime shall be required to pay each hour of overtime at no less than double the pay rate agreed for regular hours.~~

(b) ~~Only by agreement of the employee and employer, an alternate or optional system of flexible work schedules may be established, which permits an earlier or later start of the daily work shift and meal breaks. Employers shall give priority to requests from those who are heads of households, who have legal custody or sole custody of their minor children. This work schedule must be completed consecutively, without fractioning. It may only be interrupted for the time period provided and stipulated for meal breaks, pursuant to law. Any agreement shall provide, in addition, for a rest period of no less than twelve (12) consecutive hours between daily work shifts. When these requirements are met, hours as a result of having to move the work shift or meal break forward or backward shall not be deemed to be overtime. However,~~

12

hours worked during the rest or meal break and those hours worked in excess of the daily shift of eight (8) hours or in excess of forty (40) hours during the workweek, shall be deemed to be and shall be paid as overtime, pursuant to this Act.

(c)     Voluntary or approved alternate weekly work schedule agreements may be revoked by mutual agreement of the parties, at any moment. Notwithstanding, any of the parties may unilaterally terminate the agreement.

(d)     The alternate weekly work schedules adopted pursuant to this Section may be continued by a third party that acquires the business without the need to enter into a new contract.

(e)     The employer may grant an employee's request to make up hours not worked in the week, due to personal reasons of the employee."

Section 10. Article 7 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:

[Initials]

"Article 7. In every employment contract which stipulates a daily wage, it shall be understood that the workday is eight (8) hours, save in cases where, by custom, the nature of the work, legal provision, decree, or collective bargaining agreement, the maximum hours of work is less than eight (8) hours per day.

[Initials]

Any decree, agreement, clause, or stipulation establishing a work shift duration of more than eight (8) hours shall be null.

As to employees with a weekly wage, the stipulated wage shall only cover the payment of regular hours of work during each week. If an employee works for a monthly wage, the stipulated wage shall only cover the payment of regular hours of work during each month. If the contract is based on piecework or any other unit of work, employees shall be entitled to receive double pay for the pieces or units made during overtime. In property construction, reconstruction, repair, or improvement works, for fixed price or lump sum, and in any work in which contractors, subcontractors, fitters, master builders, or any agent or representative of the employer participate, employees shall also be entitled to additional pay at double the rate established by this Act for overtime. In such cases, the owner or person who carries out the project or performs the work with the contractor, subcontractor, fitter, master builder, or any agent or representative of the

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

13

~~employer, shall be jointly responsible for the payment of wages earned in regular working hours and overtime.~~

~~No action or claim may be filed against the owner or assignee of a project one (1) year after the completion of the work whose payment is claimed, except when the project is carried out by administration, in which case the provision on statutory limitation shall govern the cases of salary claims, pursuant to Law.~~

~~To determine compensation for overtime pay when no regular pay rate has been stipulated, the daily, weekly, monthly, or otherwise agreed pay shall be divided by the total number of hours worked during that same period."~~

Section 11. Article 8 of Act No. 379 of May 15, 1948, as amended, is hereby
[Initials]   ~~amended to read as follows:~~

~~"Article 8. Working Hours – Change of Schedule Request.~~

~~Employees may request, in writing, a change of schedule, number of hours, or workplace. The written request shall specify the change requested, the reason~~
[Initials]   ~~for the request, the effective date, and the duration of said change.~~

~~The employer shall be required to answer, in writing, within a term of five (5) calendar days counted as of the receipt of said request.~~

~~In the answer, the employer may approve or deny the employee's request. Approval may be subject to conditions or requirements agreed upon by the employee and the employer. Any denial must state the reasons for the decision and any alternative to the request submitted. Employers shall give priority to requests from those who are heads of households, who have legal custody or sole custody of minor children.~~

~~Section 12. Article 9 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:~~

~~"Article 9. It is hereby stated that the additional compensation at double-time established in this Act for overtime, may not be waived."~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

14

Section 13. Article 10 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:

"Article 10. Working Hours — Claims by employees, damages; settlement; intervention of mediators.

No employer may retaliate against, dismiss, suspend, or otherwise affect the employment or work conditions of any employee for the sole reason of having refused to accept a flexible work schedule as authorized in Article 6 of this Act or for having submitted a request for a change of schedule, working hours, or workplace, as established in Article 8 of this Act. Any employer that incurs in such conduct shall also be liable for civil damages, for a penalty of twice the amount of the damages that such actions may have caused to the employee. In addition, the employer may be required to reinstate the worker in his or her position and to cease and abstain from the act in question. Nothing in this Act shall impede an employee, who initially did not accept a flexible schedule agreement, from accepting it subsequently."

[Initials] Section 14. Article 11 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:

"Article 11. Working Hours — Affixing of notices on working hours; printed templates.

[Initials] Every employer shall affix, in a visible place within the establishment, workshop, factory, plant, office, or work site, as the case may be, a printed notice, on the first day of the week, showing the number of working hours required daily of employees, the times when work begins and finishes, time when the meal break during the regular shift begins and finishes.

The established meal breaks, within or outside of the employee's regular work shift shall be for one (1) hour. The established meal breaks, within or outside of the employee's regular work shift may, by way of exception, be for less than one (1) hour. If, due to the employee and employer's mutual convenience, and stipulated by both parties in writing, a meal break of lesser duration is established, it shall never be less than thirty (30) minutes.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

15

The Secretary of Labor and Human Resources shall prescribe by regulation all matters pertaining to compliance with the provisions of this Article, within ten (10) days after the effective date of this Act.

Having been approved by the Secretary of Labor and Human Resources, stipulations to this end shall be valid if they are agreed to by the employee and employer.

When employees are unionized, the stipulation to reduce the period specified for meal breaks may only be made by collective bargaining agreement or written agreement between the union and the employer, without the need, in such case, for the individual consent of employees represented by the union or the approval of the Secretary of Labor and Human Resources, in which case the reduction stipulated in the collective bargaining agreement or other written agreement shall take effect.

[Initials]   The meal break shall begin between the third and sixth hour of consecutive work, in such a way that employees shall not be required to work for more than five (5) consecutive hours without taking a meal break. By way of exception and pursuant to the regulations created for such purpose, the Secretary of Labor and Human Resources may authorize meal breaks between the second and third hour of consecutive work.

[Initials]   Any employer who uses or allows an employee to work during the period set aside for meal breaks shall be required to pay said period, or fraction thereof, at double the pay rate agreed on for regular hours. In those cases where, in accordance with the provisions of this Article, the period for meal breaks is reduced to a period of less than one hour, the employer shall be required to pay said pay rate at double the rate agreed on for regular hours, only if the employer uses or allows an employee to work during the period set aside for meal breaks.

In commercial, industrial, agricultural, and other for-profit and not-for-profit businesses, where individuals are employed with alternating hours during every day of the week, a special notice shall be provided, containing the name of all employees and the hours they work on each day of the week.

16

The corresponding notices shall constitute *prima facie* evidence that such working hours in each establishment constitute the division of the work shift.

All employers are required to request the printed templates of these notices from the Department of Labor and Human Resources, which shall provide them free of charge."

Section 15. Article 13 of Act No. 379 of May, 1948, as amended, is hereby amended to read as follows:

[Initials]

"Article 13. The provisions of this Act shall be in force at all commercial, industrial, and agricultural establishments; at all workshops, factories, plants, and mills; at all haciendas, farms, farmsteads, ranches, and plantations; at all public service companies; at all for profit and not for profit businesses, including printing houses, publishers, media companies, clinics, hospitals, drug stores, educational institutions, boarding houses, hotels, domestic services, inns, restaurants, stores, grocery stores, warehouses, deposits, markets, garages, bakeries, theaters, race tracks, casinos, and other similar establishments, and at all sites where any kind of service is provided, including not for profit associations and organizations, and charity institutions.

[Initials]

The provisions of this Act shall also apply to all individuals employed as chauffeurs and drivers of public and private motor vehicles.

The provisions of this Act shall not apply to salespersons of automobiles, trucks, self propelled heavy machinery, or any motor vehicle and/or trailers, when they are employed in such jobs by an establishment mainly dedicated to the sale of motor vehicles and/or trailers, and provided they are dedicated to sales and are paid based on commissions or salary or a combination of both. They shall be entitled to one (1) day of rest for every six (6) days of work.

In addition, the exemption granted by this Act shall only be valid when the employer guarantees in favor of the person employed as a salesperson, the applicable minimum wage in force in Puerto Rico for all the hours worked each week, even when the salesperson has earned no commissions. The payment by the employer for hours worked when the employee has not earned commissions shall be deemed to be an advance payment on commissions to be adjusted at the end of the month. It is stipulated that, for employees who earn more than half their income from commissions, their hourly pay, including

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

17

commissions, shall be equal to at least one and a half times the federal minimum wage or state minimum wage, whichever is greater.

The provisions of this Act shall not apply to employees of the state government, municipal governments, or government of the capital, or to agencies or instrumentalities of said governments, with the exception of those agencies or instrumentalities dedicated to agro-industrial, commercial, or public service companies."

Section 16. Article 14 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:

[Initials]

"Article 14. Working Hours – Regulation by the Secretary of Labor and Human Resources. The Secretary of Labor shall prepare the necessary rules and regulations for the best compliance with this Act. Having been approved by the Governor and duly enacted, such rules and regulations shall have the force of law."

Section 17. Article 16 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:

[Initials]

"Article 16. The following terms and phrases shall have the meaning stated below, unless the context indicates otherwise.

(1)     "Travelling representatives" means those employees who perform functions of travelling salespersons and whose work consists of carrying out sales transactions of products, services and any other tangible and intangible assets on behalf of an employer, whether or not the salespeople participate in the distribution or delivery of the product, service or goods, including any incidental work or service, or which is related to the principal activity of sales. Normally, these individuals provide services outside of a central establishment; they do not return thereto on a daily basis; nobody supervises their activities on a daily basis when they go out to sell; they use their discretion as to the time and effort they spend on their work, and the very nature of their work impedes the determination of actual hours effectively worked each day.

(2)     "Service Charge" means any sum of money added to a bill, and required by an establishment, which is distributed among all or some of the employees. It shall also include the charges negotiated between an establishment and a customer.

18

(3)     "Employment contract" means any verbal or written agreement whereby the employee undertakes to perform a certain job or task or to provide a service for the employer in exchange for a wage or any other pecuniary payment. In the absence of any express stipulation regarding wages, the employer shall be obligated to pay the minimum wage in force for the occupation, industry, or business in question, and in the absence of such determination, the wage normally paid to similar workers.

(4)     "Employee" includes any employed person, laborer, hired hand, artisan, worker, office clerk, shop assistant, and any person employed for a salary, wage, daily pay, or other form of payment in any occupation, establishment, business, or industry, with the exception of traveling representatives and outside salespersons. The word "employees" does not include executives, directors, or professionals; nor does it include persons working as officials or organizers of labor unions when they act as such.

[Initials]   (5)     "Employ" means to suffer or permit to work.

(6)     "Establishment" includes any building, dwelling, workshop, farm, farmstead, store, warehouse, office, public service company, premises, and site, where a job or task is carried out or a service is provided in exchange for payment.

[Initials]   (7)     "Occupation" includes any service, task, labor, or work, which employees perform for an employer.

(8)     "Employer" includes any individual or legal entity of any kind, that operates for profit or not for profit, and any person that represents said individual or legal entity or exercises authority on said individual or entity's behalf.

(9)     "Tip" means any gift or gratuity that an employee receives directly or indirectly from a person other than the employer in recognition for services received.

(10)     "Wage" includes salary, daily wage, payment, and any other form of monetary compensation.

(11)     "Outside salespersons" are individuals dedicated to selling, offering for sale, ordering, collecting, or distribution of any good, product, merchandise or advertising material, in the street, in any public place,

19

or from home, without an employer exercising control over their working hours, given that such activities are performed outside of the employer's establishment.

The terms included in this Section shall not preclude any other term related to agricultural, industrial, or commercial activities."

Section 18. Article 1 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:

"Section 1. Any employed person, laborer, hired hand, artisan, worker, office clerk, shop assistant, and any person employed for a salary, wage, daily pay, or other form of payment in any occupation, establishment, business, or industry, with the exception of traveling representatives and outside salespersons, shall be entitled to one day of rest for each six (6) days of work. For the purposes of this Act, day of rest shall be understood to mean twenty-four (24) consecutive hours."

[Initials]

Section 19. Article 4 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:

"Section 4. Any employer who uses or allows an employee to work on the day of rest established in this Act, shall be required to pay the hours worked on said day of rest at double the rate agreed on for regular hours."

[Initials]

Section 20. Article 5 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:

"Section 5. For the purposes of this Act, employee shall be understood to mean any employed person, laborer, assistant, worker, hired hand, or person who provides service for an employer in exchange for a salary, wage, or any other form of compensation. However, employer shall not be understood to mean professionals, executives, and directors."

Section 21. Subsection (b) of Article 5 of Act No. 180-1998, as amended, is hereby amended to read as follows:

"Article 5. Industries that Provide Greater or Lesser Benefits.
(a)          ...

(b)      Any employee who worked for an employer before the entry into force of

20

the "Protection and Broadening of the Rights of Workers in Puerto Rico Act," and who was entitled by Law to monthly vacation and sick leave accrual rates above those provided for in the "Protection and Broadening of the Rights of Workers in Puerto Rico Act," shall continue to enjoy such monthly leave accrual rates that previously applied to such employee.

It shall constitute an unlawful employment practice for an employer to dismiss, terminate, or indefinitely suspend an employee for the purpose of rehiring or replacing said employee with a new employee in order to provide less rights than those the employee enjoyed before a subsequent law was passed. Any employer who violates the provisions of this Article shall incur in a misdemeanor and be punished by a fine of not less than five hundred dollars ($500.00) nor more than five thousand dollars ($5,000.00) or by imprisonment for a term of not less than one hundred twenty (120) days nor more than one year, or both penalties at the discretion of the Court. Such employer shall also incur in civil liability, for a penalty of twice the amount of the damages that these actions may have caused to the employee. If the adjudicator settling the dispute is unable to determine the amount of the damages caused to the employee, such person shall have discretion to impose a penalty of no less than one thousand dollars ($1,000), not to exceed than five thousand dollars ($5,000)."

[Initials]

[Initials]

(c)     ...

(d)     ...

Section 22. Subsections (a), (d), and (k) of Article 6 of Act No. 180-1998, as amended, are hereby amended to read as follows:

"Article 6. Provisions on Vacation and Sick Leave.

(a)     All workers in Puerto Rico, with the exception of those listed in Articles 3 and 8 of this Act, who work no less than twenty (20) hours per week, but less than one hundred fifteen (115) hours per month, shall accrue vacation leave at the rate of half (½) a day per month; and sick leave at the rate of half (½) a day per month. All workers in Puerto Rico, with the exception of those listed in Articles 3 and 8 of this Act, who work no less than one hundred fifteen (115) hours per month, shall accrue vacation and sick leave at the rate of one and a quarter (1 ¼) days per month.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

21

~~However, for employers residing in Puerto Rico with less than fifteen (15) employees, the minimum monthly vacation leave accrual rate shall be half (½) a day per month. This exception shall be available for employers having less than fifteen (15) employees, and shall cease in the calendar year following that in which the number of employees of such employer's payroll exceeds fifteen (15) employees over the course of twenty six (26) weeks in each of the two (2) consecutive calendar years. The minimum monthly sick leave accrual rate for the employees of said employers shall be one (1) day for each month.~~

~~The use of vacation and sick leave shall be considered time worked for purposes of the accrual of these benefits.~~

[Initials]          …

~~(b)~~          …

~~(c)~~          …

[Initials]          ~~(d)          Vacation and sick leave shall be paid on the basis of an amount no less than the regular hourly wage earned by the employee in the month the leave was accrued. For employees who receive commissions or other incentives that are not at the full discretion of the employer, the total commissions or incentives earned for the year, can be divided by fifty two (52) weeks for calculating the regular hourly wage.~~

~~In cases where employees receive tips for their services or if the employer shares, in whole or in part, service charges with his employees, the payment of vacation and sick leave shall be made based on the combination of tips, service charges, and the legal minimum wage or the regular hourly wage agreed on, whichever is greater. This payment shall be calculated by dividing the total amount received in tips and service charges by the number of hours worked over the course of the year and adding the legal minimum wage or the regular hourly wage, whichever is greater. The payment of leave shall be based on the resulting amount.~~

~~(e)~~          …

~~(f)~~          …

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

22

(g)      ...

(h)      ...

(i)      ...

(j)      ...

(k)      At the employee's written request, the employer may permit the partial or total payout of accrued vacation leave."

(l)      ...

[Initials]

(m)      ...

(n)      ...

(o)      ...

[Initials]

(p)      ...

(q)      ...

Section 23. Subsection (c) of Article 8 of Act No. 180-1998, as amended, is hereby amended to read as follows:

"Article 8. Persons Excluded from the Act.

(a)      ...

(b)      ...

The provisions of this Act shall apply to employers covered by a collective bargaining agreement entered into by a labor organization and an employer, unless the agreement expressly rejects its application.

Section 24. Subsection (a) of Article 12 of Act No. 180-1998, as amended, is hereby amended to read as follows:

"Article 12.

(a)      The statute of limitations for employee claims against employers for wages under this Act, enacted or to be enacted pursuant to the provisions of this

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

23

~~Act or under any contract or Law, shall expire within a term of five (5) years. The statute of limitation of such actions shall be counted from the time that the employee ceased to work for the employer. The above statute of limitations shall be interrupted and shall begin anew through the judicial or extrajudicial notice of a claim for the wage debt filed by the employee or worker, a representative or an official of the Department empowered to do so, and by any act by the employer acknowledging the debt. Dismissal claims shall have a statute of limitations of five (5) years.~~

~~(b)       ..."~~

~~Section 25.  Article 1 of Act No. 148 of June 30, 1969, as amended, is hereby amended to read as follows:~~

[Initials]     ~~"Article 1.~~

~~Any employer who employs one or more workers or employees within the period of twelve (12) months from October 1 of any calendar year until September 30 of the following calendar year shall be required to pay to each of said employees, who has worked seven hundred (700) hours or more, or one hundred (100) hours or more in the case of dock workers, within the~~

[Initials]     ~~aforementioned period, a bonus equal to 6% of the salary earned, up to a maximum of ten thousand dollars ($10,000), by the employee or worker within said timeframe. Any employer who employs fifteen (15) employees or less for more than twenty-six (26) weeks within the period of twelve (12) months from October 1 until September 30 of the following calendar year, shall grant a bonus equal to 3% of the total salary earned, up to a maximum of ten thousand dollars ($10,000).~~

~~The total of the amounts paid on account of said bonus shall not exceed fifteen percent (15%) of the net annual profit of the employer, within the period from September 30 of the preceding year until September 30 of the year to which the bonus corresponds. In calculating the total hours worked by an employee to receive benefits under this Act, hours worked for the same employer, even if services have been rendered in different businesses, industries, and other activities of this employer, shall be counted.~~

~~This bonus shall constitute a compensation in addition to any other wages or benefits of any other kind to which the employee is entitled."~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

24

~~Section 26. Article 2 of Act No. 148 of June 30, 1969, as amended, is hereby amended to read as follows:~~

~~"Article 2. The bonus under this Act shall be paid out between November 15 and December 15 of each year, save in those cases where the employer and workers or employees mutually agree to another date.~~

~~If the bonus herein established is not paid out within the period stated above, the employer shall be required to pay, in addition to said bonus, a sum equal to one half of the sum of the bonus by reason of additional compensation when the payment has been made within the first six (6) months of its noncompliance. If the payment is delayed more than six (6) months, the employer shall be required to pay another sum equal to said bonus, as additional compensation."~~

[Initials]  ~~Section 27. Article 7 of Act No. 148 of June 30, 1969 [sic], as amended, is hereby amended to read as follows:~~

~~"Article 7.~~

[Initials]  ~~The Secretary of Labor and Human Resources is hereby authorized to adopt any rules and regulations as he or she may deem necessary for the best and proper administration of this Act.~~

~~The Secretary is likewise authorized to request and require employers to furnish under oath, any available information with regard to the balance sheets, profit and loss statements, accounting books, payment schedules, wages, hours of work, statement of changes in the financial position, and the corresponding notations, and any other information deemed necessary, etc., for the best administration of this Act, and to such end, the Secretary of Labor and Human Resources may prepare forms, in the form of spreadsheets, which may be obtained by the employers through the Department of Labor and Human Resources and be filled out and filed with the offices of the Department of Labor and Human Resources within the term prescribed by the Secretary.~~

~~The Secretary is also empowered to audit and examine the books, accounts, files and other documents of employers, either personally or through subordinates, to determine their responsibility towards their employees under this Act.~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

25

~~In order for an employer to take advantage of the provisions of Article 1 of this Act, the exemption from paying all or part of the bonus established therein when the employer has not obtained profits from the business, industry, trade, or company or when the profits are not sufficient to cover the total amount of the bonus without exceeding the fifteen percent (15%) limit of the net annual profits, the employer shall submit to the Secretary of Labor and Human Resources, no later than on November 30 of each year, a balance sheet and profit and loss statement for the twelve (12) month period from October 1 of the previous year to September 30 of the current year, duly certified by a certified public accountant, as evidence of said financial situation.~~

[Initials]

~~Employers that are cooperative organized under the laws of Puerto Rico shall not be required to have the balance sheet and the profit and loss statement certified by a certified public accountant. In this case, the Secretary of Labor and Human Resources shall accept the profit and loss statement that has been audited by the Public Corporation for the Supervision and Insurance of Cooperatives (COSSEC) with its internal auditors, and that covers the period of time required in this Act.~~

[Initials]

~~When an employer, who has met the requirements with regard to the term and manner indicated in the above paragraphs, fails to pay the bonus established in this Act, in whole or in part, asserting that it has not made profits from the business, industry, trade, or company, or that such profits are not sufficient to cover the total amount of the bonus without exceeding the fifteen percent (15%) limit established in Article 1 of this Act, the Department of Labor and Human Resources shall conduct an audit to verify the employer's accounts if, in the judgment of the Secretary of the Department of Labor and Human Resources, the balance sheet does not fully demonstrate the financial situation of the business, industry, trade, or company, or when a complaint is filed by a worker.~~

~~A copy of the audit report, rendered as a result of said review, shall be delivered to the workers or employees of the respondent employer. Also, a copy of the report shall be sent to the Secretary of the Treasury. Except as provided above, the information obtained by the Secretary of the Department of Labor or the Secretary's duly authorized agents, by virtue of the powers conferred upon them by this Act, shall be of a confidential and privileged nature and shall only be disclosed upon authorization of the Secretary of the Department of Labor and Human Resources.~~

~~The Secretary of the Department of Labor and Human Resources shall also~~

26

have authorities and general investigative powers conferred in connection with the administration of this Act in order to best perform his or her functions pursuant to the labor legislation administered thereby."

Section 27. Article 1 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

"Article 1.

Any employee of an enterprise, industry or any other business or workplace, hereinafter referred to as the establishment, where employee works in exchange for compensation of any kind, hired for a fixed term, who is wrongfully dismissed from his post, shall be entitled to receive the following from the employer, in addition to the salary earned:

[Initials]

(a)     Three (3) months' salary as severance pay, if the dismissal occurs within the first five (5) years of service; five (5) months' salary if the dismissal occurs between five (5) and fifteen (15) years of service; eight (8) months' salary if the dismissal occurs after fifteen (15) years of service;

[Initials]

(b)     An additional progressive severance pay equal to two (2) weeks for each year of service, if the dismissal occurs within the first five (5) years of service; three (3) weeks' salary for each year of service if the dismissal occurs between five (5) and fifteen (15) years of service; four (4) weeks' salary for each year of service if the dismissal occurs after having completed fifteen (15) years or more of service;

The years of service shall be determined based on all the previous accumulated periods of work the employee has worked for the employer before termination, but excluding those, for which, due to prior dismissal or separation, the employee was compensated, or which were subject to a judicial award.

Notwithstanding the provisions of the first paragraph of this Article, the mere fact that an employee provides services under a fixed-term contract shall not, in itself, have the automatic effect of depriving the employee of the protection of this Act if the practice and circumstances involved, or other evidence in the contract, are of a nature tending to indicate the creation of an expectation of continuity of employment or seeming to be a *bona fide* indefinite-term employment contract. In such cases, the affected employees shall be deemed to have been

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

27

contracted without a fixed term. Except in cases where employees hired for a *bona fide* fixed term or for a certain *bona fide* project or work, any separation, termination, or dismissal of employees hired for a certain term or a certain project or job, or the non-renewal of their contract shall be presumed to constitute a dismissal without just cause pursuant to this Act.

The severance pay provided in this Act, as well as any equivalent voluntary payment made by the employer to an employee by reason of said employee's dismissal shall be exempt from income taxes, regardless of whether such payment is made at the time of dismissal or subsequently, or whether it is made by reason of a settlement agreement or pursuant to a judgment or administrative order."

[Initials]

Section 27. Article 2 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

"Article 2. Just cause for dismissal of an employee from an establishment, shall be understood to mean:

[Initials]

(a) That the employee engages in a pattern of improper or disorderly conduct.

(b) The employee's attitude in not performing work efficiently or working slowly and negligently or in violation of the quality standards of the product produced or handled by the establishment.

(c) The employee's repeated violation of the reasonable rules and regulations established for the operation of the establishment, provided that a written copy thereof has been furnished to the employee in a timely manner.

(d) Full, temporary, or partial closing of the operations of the establishment. In cases in which the employer has more than one office, factory, branch, or plant, the full, temporary, or partial closing of operations of any of these establishments where the dismissed employee works shall constitute just cause for dismissal pursuant to this Article.

(e) Technological or restructuring changes, or changes to the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

28

(f)    ~~Downsizing made necessary due to a reduction in the foreseen or prevailing volume of production, sales, or profits at the moment of dismissal.~~

~~A dismissal at the mere whim of the employer and without reason related to the good and normal operation of the establishment shall not be deemed a dismissal with just cause. Nor shall an employee's collaboration or statements related to the employer's business in an investigation before any administrative, judicial, or legislative forum in Puerto Rico be considered just cause for dismissal, if said expressions are not of a defamatory nature and do not constitute disclosure of privileged information pursuant to law. In this latter case, the employee thus dismissed shall have the right to immediate reinstatement of employment, in addition to any other award to which he or she may be entitled, and to receive a compensation in an amount equal to the lost wages and benefits from the date of dismissal until a court orders the reinstatement of employment."~~

[Initials]

~~Section 28. Article 3 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:~~

~~"Article 3.~~

[Initials]

~~In any case where employees are dismissed for the reasons indicated in subsections (d), (e), and (f) of Article 2 of this Act, it shall be the duty of the employer to preferentially retain those employees of greater seniority, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them, with the understanding that preference shall be given to the employees dismissed in the event that, within the six (6) months following their layoff, the employer needs to employ a person for the same or similar work to that which said employees were doing at the time of their dismissal, within their occupational classification, also following the order of seniority in their reinstatement. It is hereby provided that:~~

(a)    ~~In case of dismissals or downsizing due to the reasons set forth in subsections (d), (e), and (f) of this Act, at companies with various offices, factories, divisions, or plants, and where it is not common practice for employees of an office, factory, division, or plant to be transferred to another one, and where said units substantially operate independently in relation to their personnel, the seniority of employees within the~~

29

occupational classification of the downsizing, shall be calculated taking into account only the employees at the office, factory, division, or plant where said downsizing is to be carried out.

(b)      In companies with various offices, factories, divisions, or plants, where the transfer of employees from one unit to another is common practice, and where the units substantially operate as a whole with regard to personnel, seniority shall be calculated based on all the employees of the company; that is, taking into account all their offices, factories, divisions, or plants, which are in the occupational classification subject to downsizing."

[Initials]   Section 29. Article 3-A of Act No. 80 of May 30, 1976, as amended, is hereby repealed.

Section 30. Article 5 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

[Initials]   "Article 5.

For purposes of this Act, termination shall be understood to be, besides the employee's dismissal, indefinite suspension or for a term of over three (3) months, except in the case of employees of seasonal trades or businesses or resignation caused by the actions of the employer directed to induce or compel the employee to resign, such as imposing or trying to impose more onerous work conditions, reducing the employee's salary, demoting or submitting the employee to derogatory criticisms or humiliations by deed or word."

Section 31. Article 7 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:
"Article 7.

The allowance for compensation and progressive severance pay for wrongful dismissal provided in Article 1 of this Act, shall be calculated on the basis of the employee's highest number of regular working hours during any period of thirty (30) consecutive calendar days within the year immediately preceding the dismissal. In cases of dismissals based on reasons (d), (e), and (f) of Article 2 of Act No. 80 of May 30, 1976, as amended, all amounts received by workers as a result of the dissolution or closure of businesses or business programs to share profits with their employees, shall be deemed to be special

~~compensation. Such amounts shall in no way affect the calculation of, or the right to claim compensation and progressive severance pay, set forth in Article 1 of Act No. 80 of May 30, 1976, as amended."~~

~~Section 32. Article 8 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:~~

~~"Article 8.~~

~~In order for all probationary labor contracts to be valid for purposes of exempting the employer from complying with the provisions of this Act, such contracts must be made in writing, containing the date on which the probationary period begins and ends. Employees classified as executives, directors, and professionals under the Federal Labor Standards Act and the regulations of the Department of Labor and Human Resources shall have an automatic probationary period of three (3) months. All other workers who are employees shall have an automatic probationary period of three (3) months. However, the employer and the employee may agree on a probationary period, should the probationary period be shorter than the automatic period set forth in this Act. If the employee is represented by a labor union, the employer and the labor union shall agree on the applicable probationary period.~~

~~If, at the end of the term established in the probationary contract, or the valid extension thereof, the employee continues to perform work for the employer, said employee shall acquire all employment rights as though having been hired without a fixed term.~~

~~The probationary period set forth in this Section shall not have the effect of limiting the accrual of vacation leave of the employees who are entitled thereto by law.~~

~~The probationary period of an employee who takes leave as authorized by law, shall be interrupted automatically and shall continue for the remainder of the probationary period once the employee returns to work.~~

~~Any employer who retains the services of an employee through a temporary employment agency or hired directly through a temporary or fixed-term contract or for a specific project, shall credit the time worked by a temporary employee up to a maximum of six (6) months, provided that the work to be performed involves~~

[Initials]

[Initials]

31

~~the same functions or duties the employee had as a temporary employee.~~

~~For purposes of the provisions of this Section, "month" shall be construed as a period of thirty (30) consecutive calendar days."~~

~~Section 33. Article 9 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:~~

~~"Article 9. It is hereby stated that an employee's right to receive the severance pay provided in Article 1 of this Act upon being dismissed from his or her position without just cause, may not be waived.~~

~~Any contract or part thereof in which the employee waives the severance pay to which he or she is entitled, pursuant to this Act, shall be null and void.~~

[Initials]

~~Section 34. Article 11 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:~~

~~"Article 11.~~

[Initials]

~~(a)     In any action filed by an employee, claiming benefits under this Act, the employer shall be required to state in its answer to the complaint, the facts that led to the dismissal and to prove that it was justified in order to be exempt from compliance with Article 1 of this Act. Likewise, in all actions filed by an employee, claiming the benefits set forth in this Act, where the employee was hired for a certain term or for a certain project or job, the employer shall be required to allege such facts in its answer to the complaint and to demonstrate the existence of a *bona fide* contract in order to therefore be exempt from compliance with the remedy set forth in this Act, unless the employer demonstrates that the dismissal was justified.~~

~~An employment contract for a certain term or for a certain project or job shall be deemed to be *bona fide* if it is made in writing, during the employee's first work shift or, in the case of employees recruited by client companies through temporary employment agencies, during the first ten (10) days of the start of the employee's contract and which has the purpose, and it is thus placed on record, of replacing an employee during his or her absence in legally established leave or leave established by the employer, or to carry~~

32

~~out extraordinary tasks or tasks of a certain duration, such as, but not limited to, annual inventories, repairs to equipment, machinery or company facilities, occasional loading and unloading of cargo, work in certain times of the year, such as Christmas, temporary production increase orders, and any other project or particular activity of short or fixed duration.~~

~~"Temporary employment agency" is any person or organization dedicated to recruiting employees in order to provide temporary services to a client company. "Client company" is any person or organization that requests or recruits temporary employees through temporary employment agencies.~~

[Initials]

~~(b)   In any dispute based on this Act, the court shall hold a pre-trial hearing within no more than twenty (20) days after the complaint is answered. If, once said hearing is held, the court considers that there are sufficient reasons, beyond the existence of conflicting allegations, to believe that the dismissal was without just cause, it shall issue an order for the respondent employer, within a non-extendable period of ten (10) days, to deposit with the court clerk's office a sum equal to the total compensation to which the employee would be entitled, as well as an amount for attorneys' fees, which shall never be less than thirty-three (33) percent of the total compensation. The respondent employer may furnish adequate bond to cover these amounts. Said amounts or said bond shall be returned to the employer if a final and conclusive judgment is issued in favor of the employer. At any stage of the proceedings, in which, at the request of a party, the court determines the existence of serious risk that the employer lacks sufficient assets to comply with the judgment that may be issued in the case in due course, the court may order the aforementioned deposit or the corresponding bond."~~

[Initials]

~~Section 35. Article 12 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:~~

~~"Article 12.~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

33

~~The rights granted in this Act shall expire after five (5) years have elapsed from the effective date of the dismissal."~~

~~Section 36.   Articles 14 of Act No. 80 of May 30, 1976, as amended, is hereby repealed.~~

~~Section 37. Article 3 of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:~~

~~"Article 3. Any of the acts mentioned in the above sections shall be presumed to have been committed in violation of this Act when carried out without just cause. This presumption shall be refutable in nature. The statute of limitations for actions for discrimination and reprisals shall be of five (5) years.~~

[Initials]

~~The employer shall not be presumed to have had knowledge of any employee's personal situation in cases of discrimination against victims or presumed victims of domestic violence, sexual assault or stalking, unless the employer was actually in a position to have such knowledge.~~

[Initials]

~~The employer shall make reasonable adjustments or accommodations in the workplace as are necessary to protect employees from a potential aggressor, once the employer receives notice of the potential occurrence of a dangerous situation. Failure to do so shall be presumed to be discriminatory conduct."~~

~~Section 38. Article 5-A of Act No. 45 of April 18, 1935, as amended, is hereby amended to read as follows:~~

~~"Article 5-A.   In cases of disability for work pursuant to the provisions of this Act, the employer shall be required to reserve the position held by the worker or employee at the time of the accident and to reinstate the employee in the same position, subject to the following conditions:~~

~~(1)   That the worker or employee request reinstatement to his or her position with the employer within a term of fifteen (15) days, to be counted from the date on which the worker or employee was terminated from the hospital or was authorized to work while undergoing treatment, provided that said request is not made after one (1) year has elapsed since the date of the accident;~~

~~(2)   ..."~~

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

34

Section 39. Subsection (q) of Section 3 of Act No. 139 of June 26, 1968, as amended, is hereby amended, to read as follows:

"Section 3.

(a)     …

(q)   Reinstatement after disability. In cases of being disabled from work pursuant to the provisions of this Act, the employer shall be required to reserve the position held by the worker at the onset of the disability and to reinstate the worker in the same position, subject to the following conditions:

[Initials]

(1)     That the worker shall request reinstatement to his or her position with the employer within a term of fifteen (15) days, to be counted from the date on which the worker was terminated from hospital, provided that said request is not made after one (1) year has elapsed since the onset of the disability;

[Initials]

(2)     …"

Section 40. Prevalence

The provisions of this Act shall prevail over any other provision of law, regulation, or rule which is inconsistent herewith.

Section 41. This Act shall enter into force immediately upon its enactment and shall apply to all employees hired as from January 26, 2017. In addition, employees who, once this Act is passed, enjoy greater benefits than those set forth herein, shall continue to enjoy their respective benefits.

*Section 1. Article 2.3 of Act 4-2017, is hereby amended to read as follows:*

*"Article 2.3. Independent Contractor. Independent contractor shall only mean a person that:*

*(a)     Possesses or has requested an employer identification number or employer social security number;*

*(b)     has filed income tax returns claiming sole proprietorship;*

(c)     has established the relationship through a written contract;

(d)     has been contractually obligated to hold licenses or permits required by the government to operate his or her business, as well as any license or authorization required by law to render the agreed-upon services; and

(e)     meets three (3) or more of the following criteria:

(1)     Has control and discretion as to the manner in which the agreed-upon work shall be performed, except for the principal's exercise of necessary control to ensure compliance with any legal or contractual obligation.

[Initials]

(2)     Has control over the time when the stipulated work shall be performed, unless there is an agreement with the principal on the completion times of the stipulated work, the parameters for the schedule to perform the work, and, in the case of training, the time when the training shall be provided.

[Initials]

(3)     Is not required to work exclusively for the principal, unless there is a law that prohibits the individual from rendering services to more than one principal, or the exclusivity agreement is for a limited time.

(4)     Is free to hire employees to assist in rendering the agreed-upon services.

(5)     Has made an investment in the business to render the agreed-upon services including, among others:

(i)     Purchasing or leasing tools, equipment, or materials;

(ii)    Obtaining a license or permit from the principal to gain access to the principal's workplace to perform the agreed-upon work; and

(iii)   Leasing a workspace or equipment from the principal in order to perform the agreed-upon work.

The terms included in this Article shall not preclude any other term related to agricultural, industrial, or commercial activities."

Section 2. Article 2.12 of Act 4-2017, is hereby amended to read as follows:

"Article 2.12. Interpretation: Ambiguous provisions.

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

*In case of ambiguity in any provision of an employment contract, said provision shall be freely interpreted in favor of the employee."*

*Section 3. Article 2.13 of Act 4-2017 is hereby eliminated.*

*Section 4. Article 2.18 of Act 4-2017 is hereby amended to read as follows:*

*"Article 2.18. Statute of Limitations. The statute of limitations on actions arising from an employment contract or the benefits thereunder shall be of three (3) years from the date when an action may be filed, except as otherwise expressly provided in a special law or in the employment contract."*

*Section 5. Article 2.21 of Act 4-2017 is hereby amended to read as follows:*

[Initials]

*"Article 2.21. Periodic Reports to the Legislative Assembly. The Secretary of the Department of Labor and Human Resources shall be required to submit reports to the Legislative Assembly in relation to the application of this Act every three (3) months."*

*Section 6. Article 4 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

[Initials]

*"Article 4. Overtime is:*

*(a) Hours worked by the employee for the employer in excess of eight (8) hours during any period of twenty-four (24) hours.*

*(b) Hours worked by the employee for the employer in excess of forty (40) hours during any week.*

*(c) Hours worked by the employee for the employer on the days or times when the establishment must remain closed to the public by legal provision. However, the hours worked on Sundays when, by provision of law, the establishment must remain closed to the public, shall not bee deemed to be overtime by the mere fact that work is performed during this period.*

*(d) Hours worked by the employee in excess of the maximum working hours per day, which any competent body has established or establishes for the occupation, business, or industry in question.*

*(e) Hours worked by the employee for the employer in excess of the maximum working hours per day established in a collective bargaining agreement.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

*Section 7. Article 6 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

*"Article 6. Rules and requirements for overtime pay shall be the following:*

*(a)      ...*

*(b)      An alternate weekly work schedule may be established by written agreement between the employee and the employer, which will permit the employee to complete a workweek of no more than forty (40) hours with daily shifts of no more than ten (10) hours per workday. However, if the employee works in excess of ten (10) hours per workday, he or she shall be paid at double the ratee agreed upon for regular hours.*

[Initials]

*(c)      ...*

*(d)      ...*

[Initials]   *(e)      ...".*

*Section 8.- Article 8 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

*"Article 8. Working Hours -- Change of Schedule Request.*

*An employee may request, in writing, a change of schedule, number of hours, or workplace. The employee's written request shall specify the change requested, the reason for the request, the effective date, and the duration of said change.*

*The employer shall be required to answer, in writing, within a term of twenty (20) calendar days counted as of the receipt of said request. In cases where an employer has more than fifteen (15) employees, the answer shall be required in writing. If the employer meets with the employee within the term of twenty (20) calendar days of having received the change request, the employer's answer may be provided within the term of fourteen (14) days after said meeting.*

*In the answer, the employer may approve or deny the employee's request. An approval may be subject to the conditions or requirements stipulated by the employee and the employer. A denial shall state the reasons for the decision and any alternative to the request submitted. Employers*

38

*shall give priority to requests from those who are heads of households, who have legal custody or sole custody of their minor children.*

*The provisions of this section shall only apply to employees who regularly work thirty (30) hours or more per week and have worked for the employer for at least one (1) year. Furthermore, they shall not apply to another request submitted within the term of six (6) months of receipt of the employer's written decision or the granting of the change, whichever is longer. If the employee receives a weekly wage, the stipulated wage shall only cover the payment of regular hours of work during each week."*

*Section 9. Article 10 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

[Initials]

*"Article 10. Working Hours - Claims by employees, damages; settlement; intervention of mediators.*

[Initials]

*No employer may retaliate against, dismiss, suspend, or otherwise affect the employment or work conditions of any employee for having refused to accept an alternate weekly work schedule as authorized in Article 6 of this Act or for having submitted a request for a change of schedule, working hours, or workplace, as established in Article 8 of this Act. Any employer that incurs in said conduct may be civilly liable for a sum equal to the amount of damages the act has caused to the employee and, if it is proven that the employer incurred in said conduct with malice or reckless disregard for the employee's rights, additional punitive damages may be imposed at a maximum amount equal to the actual damages caused. In order to determine the amount of punitive damages to be imposed, the employer's financial situation, the degree of reprehensibility of the conduct, the duration and frequency of such conduct, the amount of damages caused, and the size of the company shall be taken into account, among other factors. In addition, the employer may be required to reinstate the worker to the position and to cease and abstain from the act in question."*

*Section 10. Article 11 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

*"Article 11. Working Hours - Affixing notices on working hours.*

*All employers shall inform their employees in writing of the number of hours they are required to work per day on each day of the week, the times when work begins and finishes, and the time when the meal break during the regular shift begins and finishes. Such notice of the schedule shall constitute prima facie evidence that such working hours in each establishment constitute the division of the work shift.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.*

*Any employer requiring or permitting employees to work for a period of more than five (5) consecutive hours, without providing a meal break, must pay overtime for the time worked, in accordance with this Article. As to meal breaks that fall outside of an employee's regular shift, they may be precluded by means of written agreement between the employee and employer, and without the involvement of the Secretary of Labor and Human Resources.*

*The period set aside for meal breaks shall begin to be taken not before the end of the third hour nor after the beginning of the sixth hour of consecutive work. Furthermore, the meal break may be taken between the second and third consecutive hour of work by written agreement between the employee and employer.*

[Initials]

*An employer may not use an employee for a work period that exceeds ten (10) hours per day without providing the employee a second meal break. In cases where the total hours worked do not exceed twelve (12) hours, the second meal break may be precluded, provided that the employee took a first meal break and there is a written agreement between the employee and the employer.*

[Initials]

*The established meal breaks, within or outside of the employee's regular work shift shall be for one (1) hour. By way of exception, a meal break may be reduced to no less than thirty (30) minutes, provided there is a written stipulation between the employer and employee. In the case of croupiers, nurses and security guards, and others authorized by the Secretary of Labor and Human Resources, the meal break may be reduced up to twenty (20) minutes when there is a written stipulation between the employer and employee, without requiring approval of the Secretary of Labor and Human Resources. However, the other provisions of this section shall apply.*

*Stipulations to reduce a meal break shall be valid provided they are agreed upon by the employee and his employer. Said stipulations shall remain in force when a third party acquires the employer's business.*

*Any employer who uses or allows an employee to work during the period set aside for meal breaks shall be required to pay said period, or fraction thereof, at one and a half times the pay rate agreed on for regular hours. However, employees who were entitled to a pay rate above time and a half, before the entry into force of the "Labor Transformation and Flexibility Act, shall retain such rate.*

*When employees are unionized, the stipulation to reduce the period specified for meal breaks may only be made by collective bargaining agreement or written agreement between the union and the employer, without the need, in such case, for the individual consent of employees represented by the union or the approval of the Secretary of Labor and Human Resources, in which case the reduction stipulated in the collective bargaining agreement or other written agreement shall take effect."*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

40

*Section 11. Article 14 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

*"Article 14. Working Hours — Regulation by the Secretary of Labor and Human Resources.*

*The Secretary of Labor shall prepare the necessary rules and regulations for the best compliance with this Act. Such rules and regulations must be enacted within ninety (90) days of the approval of this Act, at the latest.*

*Section 12. Article 16 of Act No. 379 of May 15, 1948, as amended, is hereby amended to read as follows:*

[Initials]

*"Article 16. The following terms and phrases shall have the meaning stated below, unless the context indicates otherwise.*

[Initials]

*(1)   "Employee" includes any employed person, laborer, hired hand, artisan, worker, office clerk, shop assistant, and any person employed for a salary, wage, daily pay, or other form of payment in any occupation, establishment, business, or industry, with the exception of travelling representatives and outside salespersons. The word "employees" shall not include executives, directors, or professionals, as per the definition of these terms by any competent body; nor does it include labor union officials or organizers when acting as such.*

*(2)   "Employer" includes any individual or legal entity of any kind, that operates for profit or not for profit, and any person that represents said individual or legal entity or exercises authority on said person's behalf.*

*(3)   "Employ" means to suffer or permit to work.*

*(4)   "Wage" includes salary, daily wage, payment, and any other form of monetary compensation.*

*(5)   "Occupation" includes any service, task, labor, or work, which an employee performs for an employer.*

*(6)   "Establishment" includes any building, dwelling, workshop, farm, farmstead, store, warehouse, office, public service company, premises, and site, where a job or task is carried out or a service is provided in exchange for payment.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(7) *"Employment contract" means any verbal or written agreement whereby the employee undertakes to perform a certain job or task or to provide a service for the employer in exchange for a wage or any other pecuniary payment. In the absence of any express stipulation regarding wages, the employer shall be obligated to pay the minimum wage in force for the occupation, industry, or business in question, and in the absence of such determination, the wage normally paid to similar workers.*

(8) *"Travelling representatives" means those employees who perform functions of travelling salespersons and whose work consists of carrying out sales transactions of products, services and any other tangible and intangible assets on behalf of an employer, whether or not the salespeople participats in the distribution or delivery of the product, service or goods, including any incidental work or service, which is related to the principal activity of sales. Normally, these persons provide services outside of a central establishment; they do not return thereto on a daily basis; nobody supervises their activities on a daily basis when they go out to sell; they use their discretion as to the time and effort they spend on their work, and the very nature of their work impedes the determination of actual hours effectively worked each day.*

[Initials]

[Initials]

(9) *"Outside salespersons" are individuals dedicated to selling, offering for sale, ordering, collecting, or distributing any good, product, merchandise, or advertising material, in the street, in any public place, or from home, without an employer exercising control over their working hours, given that such activities are performed outside of the employer's establishment.*

*The terms included in this Section shall not preclude any other term related to agricultural, industrial, or commercial activities.*

(10) *"Tip" means any gift or gratuity that an employee receives directly or indirectly from a person other than the employer in recognition for services received.*

(11) *"Service Charge" means any sum of money added to a bill, and required by an establishment, which is distributed among all or some of the employees. It shall also include the charges negotiated between an establishment and a customer."*

*Section 13. Section 1 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:*

*"Section 1. All employees of any commercial or industrial establishment, company or business, whether for-profit and not-for-profit, including those operated by not-for-profit associations or organizations and charity institutions, shall be entitled to one day of rest for every*

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

42

*six (6) days of work. For the purposes of this Act, day of rest shall be understood to mean twenty-four (24) consecutive hours."*

*Section 14. Section 4 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:*

*"Section 4. Any employer who uses or allows an employee to work on the day of rest established in this Act, shall be required to pay the hours worked on said day of rest at one and a half times the rate agreed on for regular hours." Notwithstanding, if the employee who works on the day of rest is a student, the employer must pay him or her at a pay rate equal to double the rate agreed on for regular hours. For purposes of this section, a student shall be construed as any person enrolled in higher education, university education, and any post-graduate education. Employees entitled to greater benefits prior to the entry into force of the "Labor Transformation and Flexibility Act" shall retain such benefits."*

[Initials]

*Section 15. Section 5 of Act No. 289 of April 9, 1946, as amended, is hereby amended to read as follows:*

*"Section 5. For the purposes of this Act, employee shall be understood to mean any employed person, laborer, assistant, worker, hired hand, or person who provides service for an employer in exchange for a salary, wage, or any other form of compensation. However, employee shall not be understood to mean professionals, executives, and directors."*

[Initials]

*Section 16. Subsection (b) of Article 3 of Act No. 180-1998, as amended, is hereby amended to read as follows:*

*"Article 3.- Industries that Provide Greater or Lesser Benefits.*

*(a)      ...*

*(b)      Any employee who worked for an employer before the entry into force of the "Labor Transformation and Flexibility Act," and who was entitled by Law to monthly vacation and sick leave accrual rates above those provided for in the "Labor Transformation and Flexibility Act," shall continue to enjoy such monthly leave accrual rates that previously applied to such employee. These provisions shall apply while the employee works for the same employer.*

*It shall constitute an unlawful employment practice for an employer to dismiss, terminate, or indefinitely suspend an employee for the purpose of rehiring or replacing said employee with a new employee in order to provide less rights than those the employee enjoyed before the approval of a subsequent law. Any employer who violates the provisions of this Article shall incur in a misdemeanor and be*

43

*punishable by a fine of not less than five hundred dollars ($500.00), not to exceed five thousand dollars ($5,000.00), or by imprisonment for a term of no less than one hundred twenty (120) days nor more than one year, or both penalties at the discretion of the Court. Such employer shall also incur in civil liability, for a penalty of twice the amount of the damages that the employer's actions may have caused to the employee. If the adjudicator settling the dispute is unable to determine the amount of the damages caused to the employee, such person shall have the discretion to impose a penalty of not less than one thousand dollars ($1,000), not to exceed five thousand dollars ($5,000)."*

(c)      ..."

Section 17. Subsections (a), (d), (k), and (q) of Article 4 of Act No. 180-1998, as amended, are hereby amended to read as follows:

[Initials]

*"Article 4. Provisions on Vacation and Sick Leave.*

(a)     *All workers in Puerto Rico, with the exception of those listed in Article 6 of this Act, who work no less than twenty (20) hours per week, but less than one hundred fifteen (115) hours per month, shall accrue vacation leave at the rate of half (½) a day per month; and sick leave at the rate of half (½) a day per month. All workers in Puerto Rico, with the exception of those listed in Articles 3 and 6 of this Act, who work no less than one hundred fifteen (115) hours per month, shall accrue vacation and sick leave at the rate of one and a quarter (1 ¼) days per month.*

[Initials]

*However, in the case of employers residing in Puerto Rico with less than fifteen (15) employees, the minimum monthly vacation leave accrual rate shall be half (½) a day per month. This exception shall be available for employers who have less than fifteen (15) employees and shall cease in the calendar year following that in which the number of employees of such employer's payroll exceeds fifteen (15) employees over the course of twenty-six (26) weeks in each of the two (2) consecutive calendar years. The minimum monthly sick leave accrual rate for the employees of said employers shall be one (1) day for each month.*

*The use of vacation and sick leave shall be considered time worked for purposes of the accrual of these benefits.*

(b)     ...

(c)     ...

*Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.*

44

(d)   *Vacation and sick leave shall be paid on the basis of an amount which is not less than the regular hourly wage earned by the employee in the month the leave was accrued. For employees who receive commissions or other incentives that are not at the full discretion of the employer, the total commissions or incentives earned for the year can be divided by fifty-two (52) weeks to calculate the regular hourly wage.*

*In cases where employees receive tips for their services or if the employer shares, in whole or in part, service charges with employees, vacation and sick leave shall be paid based on the combination of tips, service charges, and the legal minimum wage or the regular hourly wage agreed on, whichever is greater. This payment shall be calculated by dividing the total amount received in tips and service charges by the number of hours worked over the course of the year and adding the legal minimum wage or the regular hourly wage, whichever is greater. Leave shall be paid out based on the resulting amount.*

(e)   *...*

[Initials]

(f)   *...*

(g)   *...*

(h)   *...*

[Initials]

(i)   *...*

(j)   *...*

(k)   *At the employee's written request, the employer may permit the partial or total payout of accrued vacation leave.*

(l)   ...

(m)   ...

(n)   ...

(o)   ...

(p)   ...

(q)   *No employer, supervisor, or their representative, may use, as part of the company's administrative procedure or as company policy, justified absences*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.*

45

*due to sickness, as an employee efficiency criterion in the evaluation process, if such employee is considered for raises or promotions within the employer company. Nor shall absences due to sickness or special emergency leave, set forth in this Article, which are correctly charged to sick leave, with or without pay, be taken into account to justify disciplinary actions such as suspensions or dismissals. This provision shall not prevent employers from being able to establish attendance incentive programs for their employees, as per their operational needs."*

*Section 18. Subsection (a) of Article 10 of Act No. 180-1998, as amended, is hereby amended to read as follows:*

[Initials]

*"Article 10. Statute of Limitations*

*(a)*     *Any wage claims that employees may have against employers under this Act, enacted or to be enacted pursuant to the provisions of this Act or under any contract or Law, shall expire within a term of three (3) years. The statute of limitations of this action shall be counted from the time that the employee ceased to work for the employer. The above statute of limitation shall be interrupted and shall begin anew through a notice of judicial or extrajudicial claim for the wage debt filed by the employee or worker, their representative, or an official of the Department empowered to do so, and by any act by the employer acknowledging the debt. Claims for termination shall have a statute of limitations of three (3) years.*

[Initials]

*(b)*     *…"*

*Section 19. Article 1 of Act No. 148 of June 30, 1969, as amended, is hereby amended to read as follows:*

*"Article 1.*

*Any employer that may not be classified as a microbusiness or as a small- or medium-sized business, as per the definition of such terms in subsections (4), (5), and (6) of Article 2 of Act 62-2014, as amended, known as the "Micro, Small-, and Medium-sized Business Promotion Act," employing one or more employees over the course of the period of twelve (12) months from October 1 of any year until September 30 of the following calendar year shall be required to pay to each employee who has worked seven hundred (700) hours or more, or one hundred (100) hours or more in the case of dock workers, within the aforementioned period, a bonus equal to 6% of the salary earned by the employee or worker within said timeframe, up to a maximum of ten thousand dollars ($10,000). Any employer who employs fifteen (15)*

*employees or less for more than twenty-six (26) weeks within the period of twelve (12) months from October 1 until September 30 of the following calendar year, shall grant a bonus equal to 3% of the total salary earned, up to a maximum of ten thousand dollars ($10,000).*

*Employers that can be deemed to be microbusinesses or small- and medium-sized businesses, as per the definition of such terms in subsections (4), (5), and (6) of Article 2 of Act 62-2014, as amended, known as the "Micro, Small-, and Medium-sized Business Promotion Act," shall be required to grant the benefit established in the above paragraph to each employee who has worked nine hundred (900) hours or more within said timeframe.*

[Initials]

*The total of the amounts paid on account of said bonus shall not exceed fifteen percent (15%) of the employer's net annual profit, within the period comprised from September 30 of the preceding year until September 30 of the year to which the bonus corresponds. In calculating the total hours worked by an employee in order to benefit from this Act, all hours worked for the same employer shall be counted, even if services have been rendered in different businesses, industries, and other activities of this employer. In order to determine the net income, the amount of the carryforward of the net loss of previous fiscal years and accounts receivable that have remained unpaid at the end of the period covered by the balance sheet and profit and loss statement, shall be excluded.*

[Initials]

*This bonus shall constitute a compensation in addition to any other wages or benefits of any other kind to which the employee is entitled. The employer must credit against said obligation, any other bonus previously paid to the employee during the calendar year, under any category, provided that the employer has informed the employee in writing of the intention to credit said other bonus to the payment of the bonus required under this Act.*

*Section 20. Article 7 of Act No. 148 of June 30, 1969, as amended, is hereby amended to read as follows:*

*"Article 7.*

*The Secretary of Labor and Human Resources is hereby authorized to adopt rules and regulations as he or she may deem necessary for the best and proper administration of this Act.*

*The Secretary is likewise authorized to request and require employers to furnish under oath, any available information with regard to the balance sheets, profit and loss statements, accounting books, payment schedules, wages, hours of work, statement of changes in the financial position, and the corresponding notations, and any other information deemed necessary, etc., to best administer this Act, and to such end, the Secretary of Labor and Human*

47

*Resources may prepare forms, in the form of spreadsheets, which may be obtained by the employers through the Department of Labor and Human Resources and be filled out and filed with the offices of the Department of Labor and Human Resources within the term prescribed by the Secretary.*

*The Secretary is also authorized to audit and examine the books, accounts, files, and other documents of employers, either personally or through subordinates, to determine their responsibility towards their employees under this Act.*

*In order for an employer to take advantage of the provisions of Article 1 of this Act, the exemption from paying all or part of the bonus established therein when the employer has not obtained profits from the business, industry, trade, or company or when the profits are not sufficient to cover the total amount of the bonus without exceeding the fifteen percent (15%) limit of the net annual profits, said employer shall submit to the Secretary of Labor and Human Resources, no later than November 30 of each year, a balance sheet and profit and loss statement for the twelve (12)-month period from October 1 of the previous year to September 30 of the current year, duly certified by a certified public accountant, as evidence of said financial situation. In cases in which the financial year of the employer who requests the exemption provided for in this section, does not end on September 30 of each year, the balance sheet and profit and loss statement may be that corresponding to the financial year of the business. The required balance sheet and profit and loss statement may be compiled or revised by an authorized public accountant, and it must be signed and stamped with the seal of the corresponding Association of Public Accountants. The above shall not be deemed to be a limitation of the powers of the Secretary of Labor and Human Resources as an overseer, to carry out an intervention in the form of an audit, on any employer that requests and exemption and corroborates the correction of the information provided.*

[Initials]

[Initials]

*Employers that are cooperatives organized under the laws of Puerto Rico are not required to have the balance sheet and the profit and loss certified by a certified public accountant. In this case, the Secretary of Labor and Human Resources shall accept the profit and loss statement that has been audited by the Public Corporation for the Supervision and Insurance of Cooperatives (COSSEC) with its internal auditors, and that covers the period of time required in this Act.*

*If the employer fails to submit said balance sheet and profit and loss statement within the term and in the manner mentioned above, the employer shall be required to pay the bonus in full, at the rate of 3%, 4.5%, or 6%, as the case may be, of the total salaries, calculated up to a maximum of ten thousand dollars ($10,000), or 2.5%, 2.75% or 3%, as the case may be, of the total salary, calculated up to a maximum of ten thousand dollars ($10,000) when the employer employs fifteen (15) employees or less, even when the employer has not obtained profit in the business or when they are insufficient to cover the entire bonus, based on the 15% limit.*

*When an employer that has met the requirements with regard to the term and manner indicated in the above paragraphs fails to pay the bonus established in this Act, in whole or in part, asserting insufficient profits from the business, industry, trade, or company, or that such profits*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

48

*are not sufficient to cover the total amount of the bonus without exceeding the fifteen percent (15%) limit established in Article 1 of this Act, the Department of Labor and Human Resources shall conduct an audit to verify the employer's accounts if, in the judgment of the Secretary of the Department of Labor and Human Resources, the balance sheet does not fully demonstrate the financial situation of the business, industry, trade, or company, or when a complaint is filed by a worker.*

*A copy of the audit report, rendered as a result of said examination, shall be delivered to the workers or employees of the respondent employer. A copy of the report shall also be sent to the Secretary of the Treasury. Except as provided above, the information obtained by the Secretary of the Department of Labor or the Secretary's duly authorized agents, by virtue of the powers conferred under this Act, shall be of a confidential and privileged nature and shall only be disclosed upon authorization of the Secretary of the Department of Labor and Human Resources.*

[Initials]

*The Secretary of the Department of Labor and Human Resources shall also have all authorities and general investigative powers conferred upon him or her in connection with the administration of this Act for the best performance of the Secretary's functions pursuant to the labor legislation administered thereby."*

*Section 21. Article 1 of Act No. 80 of May 30, 1976, as amended, is hereby amended to*

[Initials]

*read as follows:*

*"Article 1.*

*Any employee of an enterprise, industry or any other business or workplace, hereinafter referred to as the establishment, where he works in exchange for compensation of any kind, hired for a fixed term, who is wrongfully dismissed from his post, shall be entitled to receive the following from the employer, in addition to the salary earned:*

*(a)   Two (2) months' salary as severance pay, if the dismissal occurs within the first five (5) years of service; three (3) months' salary if the dismissal occurs between five (5) and fifteen (15) years of service; six (6) months' salary if the dismissal occurs after fifteen (15) years of service;*

*(b)   An additional progressive severance pay equal to one (1) week for each year of service, if the dismissal occurs within the first five (5) years of service; two (2) weeks' salary for each year of service if the dismissal occurs between five (5) and fifteen (15) years of service; three (3) weeks' salary for each year of service if the dismissal occurs after having completed fifteen (15) years of service;*

*The years of service shall be determined based on all the previous accumulated*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.*

*periods of work the employee has worked for the employer before being dismissed but excluding those for which the employee was compensated due to prior dismissal or separation, or that were subject to a judicial award.*

*Notwithstanding the first paragraph of this Article, the mere fact that an employee provides services under a fixed-term contract shall not, in itself, have the automatic effect of depriving the employee of the protection of this Act if the practice and circumstances involved, or other evidence in the contract, are of a nature tending to indicate the creation of an expectation of continuity of employment or seeming to be a bona fide indefinite-term employment contract. In such cases, the affected employees shall be deemed to have been contracted without a fixed term. Except in cases where employees hired for a bona fide fixed term or for a certain bona fide project or work, any separation, termination, or dismissal of employees hired for a certain term or a certain project or job, or the non-renewal of their contract, shall be presumed to constitute a dismissal without just cause pursuant to this Act.*

[Initials]

*The severance pay provided in this Act, as well as any equivalent voluntary payment made by the employer to an employee by reason of said employee's dismissal shall be exempt from income taxes, regardless of whether such payment is made at the time of dismissal or subsequently, or whether it is made by reason of a settlement agreement or pursuant to a judgment or administrative order."*

[Initials]

*Section 22. Article 2 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:*

*"Article 2. Just cause, for the dismissal of an employee from an establishment, shall be understood to mean:*

*(a)    That the employee engages in a pattern of improper or disorderly conduct.*

*(b)    The employee's attitude in not performing work efficiently or working slowly and negligently or in violation of the quality standards of the product produced or handled by the establishment.*

*(c)    The employee's repeated violation of the reasonable rules and regulations established for the operation of the establishment, provided that a written copy thereof has been furnished to the employee in a timely manner.*

*(d)    Full, temporary, or partial closing of the operations of the establishment.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(e)     Technological or restructuring changes or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f)     Downsizing made necessary due to a reduction in the foreseen or prevailing volume of production, sales, or profits at the moment of dismissal.

[Initials]

A dismissal at the mere whim of the employer and without reason related to the good and normal operation of the establishment shall not be deemed a dismissal with just cause. Nor shall an employee's collaboration or expressions relating to his employer's business in an investigation before any administrative, judicial, or legislative forum in Puerto Rico be considered just cause for dismissal, if said statements are not of a defamatory nature and do not constitute disclosure of privileged information pursuant to law. In this latter case, the employee thus dismissed shall have the right, in addition to any other award to which to which he or she may be entitled, to immediate reinstatement of employment and to compensation in an amount equal to the lost wages and benefits from the date of dismissal until a court orders the reinstatement of employment."

[Initials]

Section 23. Article 3 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

"Article 3.

In any case where employees are dismissed for the reasons indicated in subsections (d), (e), and (f) of Article 2 of this Act, it shall be the duty of the employer to preferentially retain those employees of greater seniority, provided there are positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them, it being understood that preference shall be given to the employees dismissed in the event that, within the six (6) months following their layoff, the employer needs to employ a person for the same or similar work to that which said employees were doing at the time of their dismissal, within their occupational classification, also following the order of seniority in their reinstatement, except, and in both situations, in those cases where there is a clear and irrefutable difference in favor of the efficiency and aptitude of compared workers, in which case the aptitude shall prevail. It is hereby provided that:

(a)     In case of dismissals or downsizing due to the reasons set forth in subsections (d), (e), and (f) of this Act, at companies with various offices, factories, divisions, or plants, and where it is not common practice for employees of an office, factory, division, or plant to be transferred to another one, and where said units substantially operate independently in relation to their personnel, the seniority of employees within the occupational classification of the

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

> downsizing, shall be calculated taking into account only the employees at the office, factory, division, or plant where said downsizing is to be carried out.
>
> (b) In the case of companies with various offices, factories, divisions, or plants, where the transfer of their employees from one unit to another is common practice, and where the units substantially operate as a whole with regard to personnel, seniority shall be calculated based on all the employees of the company; that is, taking into account all their offices, factories, divisions, or plants, which are in the occupational classification subject to downsizing."

Section 24. Article 3-A of Act No. 80 of May 30, 1976, as amended, is hereby repealed.

Section 25. Article 5 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

[Initials]

> "Article 5.
>
> For purposes of this Act, termination shall be understood to be, besides dismissal of an employee, indefinite suspension or for a term of over three (3) months, except in the case of employees of seasonal trades or businesses or the resignation of the employee caused by the actions of the employer directed to induce or compel said employee to resign, such as imposing or trying to impose more onerous work conditions, reducing the employee's salary, demoting or submitting the employee to derogatory criticisms or humiliations by deed or word."

[Initials]

Section 26. Article 7 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

> "Article 7.
>
> The allowance for compensation and progressive severance pay for wrongful dismissal provided in Article 1 of this Act, shall be calculated on the basis of the highest number of regular working hours of the employee during any period of thirty (30) consecutive calendar days within the year immediately preceding the dismissal. In the cases of dismissals based on reasons (d), (e), and (f) of Article 2 of Act No. 80 of May 30, 1976, as amended, all sums of money received by workers as a result of the dissolution or closure of businesses or business programs to share profits with their employees, shall be deemed to be special compensation. Such sums shall in no way affect the calculation of, or the right to claim, compensation and progressive severance pay, set forth in Article 1 of Act No. 80 of May 30, 1976, as amended."

Section 27. Article 8 of Act No. 80 of May 30, 1976, as amended, is hereby amended to

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

52

*read as follows:*

*"Article 8.*

*In order for all probationary labor contracts to be valid for purposes of exempting the employer from complying with the provisions of this Act, such contracts must be made in writing, containing the date on which the probationary period begins and ends. which may never exceed three (3) months unless a written notice was sent by the employer to the Secretary of Labor and Human Resources. The notice shall outline the reasons why, in the employer's opinion, the nature of the work thus requires. Once said notice has been submitted, the probationary period shall be deemed extended up to an additional maximum of three (3) months, giving a total of six (6) months. Any probationary period contract entered into after service commencement shall be null and void. When employees are unionized, the probationary period may be extended by stipulation up to a maximum of six (6) months, which may be done by means of a collective bargaining agreement or written agreement between the union and the employer, without the need for any notice to the Secretary of Labor and Human Resources. The basic probationary period contract must be entered into before the employee begins service with the employer. Non-compliance with the aforementioned conditions, in relation to the probationary labor contract, shall render it null and void.*

[Initials]

[Initials]

*If, at the end of the term established in the probationary contract, or the valid extension thereof, the employee continues to perform work for the employer, said employee shall acquire all employment rights as though having been hired without a fixed term.*

*The probationary period set forth in this Article shall not have the effect of limiting the accrual of vacation leave of the employees who are entitled thereto by law.*

*The probationary period of an employee who takes leave as authorized by law shall be interrupted automatically and shall continue for the remainder of the probationary period once the employee returns to work.*

*Any employer who retains the services of an employee hired through a temporary employment agency or hired directly through a temporary or fixed-term contract or for a specific project, shall credit the time worked by a temporary employee up to a maximum of six (6) months, provided that the work to be performed involves the same functions or duties that the employee had when he or she was a temporary employee.*

*For purposes of the provisions of this Article, "month" shall be construed as a period of thirty (30) consecutive calendar days."*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

53

Section 28. Article 11 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

"Article 11.

(a)  In its Answer to any action filed by an employee claiming benefits under this Act, the employer shall be required to state the facts that led to the dismissal and to prove that it was justified in order to be exempt from compliance with Article 1 of this Act. Likewise, any action filed by an employee claiming benefits under this Act, where the employee was hired for a certain term or for a certain project or job, the employer shall be required to state such facts in its answer to the complaint and to demonstrate the existence of a bona fide contract in order to therefore be exempt from compliance with the remedy set forth in this Act, unless the employer demonstrates that the dismissal was justified.

[Initials]

An employment contract for a certain term or for a certain project or job shall be deemed to be bona fide if it is made in writing, during the employee's first work shift or, in the case of employees recruited by client companies through temporary employment agencies, during the first ten (10) days of the start of the contract and which has the purpose, and it is thus placed on record, of replacing an employee during his absence in legally established leave or leave established by the employer, or to carry out extraordinary tasks or tasks of a certain duration, such as, but not limited to, annual inventories, the repair of equipment, machinery or the facilities of the company, the occasional loading and unloading of cargo, work in certain times of the year, such as Christmas, temporary production increase orders, and any other project or particular activity of short or fixed duration.

[Initials]

"Temporary employment agency" is any person or organization dedicated to recruiting employees in order to provide temporary services to a client company. "Client company" is any person or organization that requests or recruits temporary employees through temporary employment agencies.

(b)  In any dispute based on this Act, the court shall hold a pre-trial hearing within no more than thirty (30) days after answer to the complaint is filed. If, once the hearing is held, the court finds that there are sufficient reasons, beyond the circumstances of the existence of conflicting allegations, to believe that the dismissal was without just cause, it shall issue an order for the respondent employer, within a non-extendable period of fifteen (15) days, to deposit with the court clerk's office a sum equal to the total compensation to which the employee would be entitled, as well as an amount for attorney fees, which shall never be less than fifteen (15) percent of the total compensation. The respondent employer may furnish adequate bond to cover these amounts. Said amounts or said bond shall be returned to the employer if a final and conclusive judgment is issued in the employer's

Certified to be a correct and true translation from the source text in Spanish to the target language English.
29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

54

*favor. At any stage of the proceedings, in which, at the request of a party, the court determines the existence of serious risk that the employer lacks sufficient assets to comply with the judgment that may be issued in the case in due course, the court may order the aforementioned deposit or the corresponding bond."*

*Section 29. Article 12 of Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:*

*"Article 12.*
*The rights granted in this Act shall expire after three (3) years have elapsed from the effective date of the dismissal."*

*Section 30. Article 3 of Act No. 100 of June 30, 1959, as amended, is hereby amended to read as follows:*

[Initials]

*"Article 3. It shall be presumed that any of the acts mentioned in the above sections were committed in violation of this Act when committed without just cause. This presumption shall be refutable in nature.*

[Initials]

*It shall not be presumed that the employer had knowledge of any employee's personal situation in cases of discrimination against victims or presumed victims of domestic violence, sexual assault or stalking, unless the employer was actually in a position to have such knowledge.*

*The employer shall make reasonable adjustments or accommodations in the workplace as are necessary to protect employees from a potential aggressor, once the employer receives notice of a potential dangerous situation. Failure to do so shall be presumed to be discriminatory conduct."*

*Section 31. Severability*

*This Act shall be interpreted in accordance with the Constitution of Puerto Rico and the Constitution of the United States. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said ruling shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the decision, ruling, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied.*

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

55

*Section 32. Prevalence*

*The provisions of this Act shall prevail over any other provision of law, regulation, or rule which is inconsistent therewith.*

*Section 33. Applicability and Entry into Force*

[Initials]

*This Act shall enter into force immediately upon being passed. However, employers that can be deemed to be microbusinesses or small- and medium-sized businesses, as per the definition of such terms in subsections (4), (5), and (6) of Article 2 of Act 62-2014, as amended, known as the "Micro, Small-, and Medium-sized Business Promotion Act," shall have a period of three (3) months to implement the provisions of this Act.*

[Initials]

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*29/NOVEMBER/2021 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



T 718.384.8040
W TargemTranslations.com
E projects@targemtranslations.com
A 185 Clymer St. Brooklyn, NY 11211

## TRANSLATOR'S CERTIFICATE OF TRANSLATION

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: **pc0003-inf(Inf. Conferencia)**

Signed this 29th day of November, 2021

_____

Andreea I. Boscor

American Translators Association
ata
Andreea Boscor
Spanish into English
Certification #525556
Certified Translator

Verify at www.atanet.org/verify

