# Exhibit 18

GOVERNOR OF PUERTO RICO
Pedro R. Pierluisi

June 20, 2022

David A. Skeel
Chairman
The Financial Oversight and Management
Board of Puerto Rico
PO Box 192018
San Juan, PR 00919

Dear Chairman Skeel,

I write in response to your letter dated June 13, 2022, regarding House Bill 1244 ("HB 1244" or the "Bill").

After all the progress the Government and the Board together have made to serve the people of Puerto Rico, I found the letter sent by the FOMB's General Counsel offensive. The letter's posture towards the people of Puerto Rico and their elected officials bordered on disrespect. According to your letter, the Board's position is that it has the power under the PROMESA section 108(a)(2) to prevent me from signing any bill into law that it opposes and that my doing so would be an "action in violation of a federal statute."[1] This interpretation of PROMESA would strip the Government of its law-making powers and is inconsistent with the procedure PROMESA establishes to review laws after they are enacted.

Our constitutional democracy is built on the core principle that the American citizens residing in Puerto Rico can make their voices heard at the ballot box to generate meaningful change in their lives and livelihoods. As elected officials, the Legislature of Puerto Rico and I owe the people of Puerto Rico the solemn obligation to dutifully serve their interests and aspirations.

HB 1244 is one of those rare instances that captures the essence of the people's aspirations. It sets forth private sector employment protections that the people of Puerto Rico desire. As your letter correctly notes, earlier this year the Legislature passed a labor law reform bill that I vetoed because I believed we could do better. Over the last four months, I have worked closely with legislators to develop a bill carefully calibrated to increase labor force participation on terms that would not be

---

[1] June 13, 2022 Letter at 3.

significantly inconsistent with the 2022 Fiscal Plan for Puerto Rico, as certified on January 27, 2022 (the "Certified Fiscal Plan"). Contrary to the assertions in your letter, the Bill does not repeal Act 4-2017, but makes modifications to it that my administration believes will improve Puerto Rico's economy. And the Legislature agrees. In our modern climate of diametrically competing public policy visions and great political divides, the Bill was overwhelmingly approved by the most diverse legislature in the history of Puerto Rico.  It is not only an unequivocal expression of my administration's public policy; it also reflects the will of the people of Puerto Rico as expressed through the votes of their elected representatives.

In the last eighteen months my administration has implemented many initiatives aimed at lifting people out of poverty and expanding our tax base, including raising the Puerto Rico minimum wage, which also impacted the labor market and which the Board did not object. These initiatives have helped spur Puerto Rico's recent economic growth and has allowed us to reduce the unemployment rate to its lowest level in our history, all while increasing the Island's labor-participation rate to a historic high.  HB 1244 is another opportunity to further incentivize private sector labor force participation through a greater commitment to protecting employees. Such labor-friendly initiatives are compatible with expanding our tax base and spurring economic development, which is consistent with the goals of the Certified Fiscal Plan.

As Governor of Puerto Rico, I understand and respect the Board's mandate as expressed by Congress in PROMESA.  However, at the same time, I completely reject the Board's habitual encroachment on our elected officials' constitutional duty to set and determine Puerto Rico's public policy.

PROMESA clearly provides the Board with certain fiscal and budgetary powers over the Government's revenues and expenses, but it certainly does not deprive the people of Puerto Rico and their elected officials of their constitutionally-protected political rights over issues that do not implicate the Government's finances. As the Title III Court has rightly observed on several occasions, "Congress created a PROMESA Oversight Board with significant leverage in the form of guidance, gatekeeping, and enabling powers that would in essence provide guardrails for the territorial government on its journey to fiscal credibility and responsibility," but it "did not grant the [Board] the power to supplant, bypass, or replace the Commonwealth's elected leaders and their appointees . . . ."[2] With respect to public policy measures requiring new legislation, "the Oversight Board has only budgetary tools and negotiations to use to elicit any necessary buy-in from the elected officials and legislators."[3]   As we all know, the result is "an awkward power-sharing arrangement" that is "fraught with potential for mutual sabotage," and the "negative possibilities should motivate the parties to work together, quickly, for

---

[2] *In re The Fin. Oversight & Mgmt. Bd. for P.R.*, 583 B.R. 626, 634 (D.P.R. 2017).

[3] *Roselló Nevares v. The Fin. Oversight & Mgmt. Bd. for P.R. (In re The Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F.Supp.3d 685, 701 (D.P.R. 2018).

positive change within the statutory structure in which neither of them holds all of the cards."[4]

I am cognizant of the Board's fiscal plan powers under Section 201 of PROMESA and the provisions in Certified Fiscal Plan regarding Act 4-2017. But I do not accept the proposition that the Board can wield the fiscal plan to prevent the Government from enacting any new legislation that may potentially affect the Commonwealth's revenues and expenses in a negative fashion. Unlike prior instances where Judge Swain invalidated new laws, a potential judicial review of HB 1244 would involve a much more complex analysis as to its ultimate impact on Commonwealth revenues and expenses. In fact, the Bill deals with complex qualitative and quantitative issues involving private sector employment rights.

According to your letter, the Bill will "negatively impact Puerto Rico's dismal labor force participation rate" and "reduce economic growth and market competition," which would ultimately "deprive the Commonwealth of the revenues associated with such revenue growth."[5] I totally disagree. The Board has no data to support its assertion; it is mere speculation and arbitrary at this point based on the Board's own view of what the law accomplishes. If the Board's claim is correct, then the economic impact of the Bill may indirectly affect Government revenues, but those potential impacts are several degrees removed from the direct mandates of the law. Determining any indirect consequences of the Bill would require a comprehensive economic study to assess whether it would negatively impact revenues in a manner that would render it significantly inconsistent with the Certified Fiscal Plan.

Actually, I believe that the additional fringe benefits and protections afforded by HB 1244 to Puerto Rico's private sector workers would have the opposite effect that the Board claims. Given the low unemployment rate and labor shortage on the Island at this moment, it is reasonable to expect that the Bill will promote more labor participation and make jobs in Puerto Rico more attractive to all those looking for work, particularly in important areas such as tourism and construction.

PROMESA section 204(a) only requires a formal estimate of "the impact, if any, that the law will have on expenditures and revenues." However, your letter incorrectly asserts that the estimate must "address the **full economic impact** of the issues raised in this letter, including how the Bill's impact on labor force participation will affect revenues."[6] As an initial matter, the ambiguity of the Board's request requires more dialogue between us to determine what a "full economic impact" analysis entails. But even assuming we arrive at a mutual understanding of the Board's request, the Bill's provisions do not directly impact expenditures and revenues. HB 1244 only affects private sector employers, not government employees. Any private sector reaction to the Bill, which may or may not affect the Puerto Rico economy as a whole,

---

[4] *Id.* (internal citations and quotations omitted).
[5] June 13, 2022 Letter at 2.
[6] June 13, 2022 Letter at 3 (emphasis added).

is a purely speculative and arbitrary exercise at this time and would take far longer than seven days to properly evaluate, if at all possible. Because the scope of the estimate demanded from the Government in your letter far exceeds the scope required by the language of Section 204(a), it is not required by PROMESA and cannot be a valid justification to preempt otherwise appropriate Government action to enact a new private sector labor law.

In addition, your letter improperly claims that I cannot sign the Bill into law without violating PROMESA. That assertion is completely incorrect. PROMESA provides a specific process for the Board to invalidate laws that are "significantly inconsistent" with a fiscal plan or "impair or defeat" the purposes of PROMESA, and that process requires the Board to first declare that a law should be invalidated and then seek judicial intervention if the Government disagrees. As Judge Swain has held, "Section 108(a) does not itself authorize the Oversight Board to nullify legislation," but rather "it must seek relief from this Court in the event that the Government disregards its section 108(a)(2) determinations."[7] Enacting new legislation is a basic function of our democracy with which the Board cannot interfere. If the Board can justify that HB 1244 is either "significantly inconsistent" with the Certified Fiscal Plan or otherwise "impair or defeat" the purposes of PROMESA, its recourse is to seek a judicial injunction; it does not have the power to unilaterally prevent the Government from enacting the Bill into law.

As Governor of Puerto Rico, I will always defend my administration's public policies and carry on my political function regardless of the Certified Fiscal Plan's impermissible expressions of public policy, which are beyond the scope of the Board's statutory powers. Notwithstanding our fundamental disagreements regarding HB 1244, I am willing to work with the Board to achieve implementation of the Bill in a way that accomplishes our mutual goals of protecting the people of Puerto Rico and establishing an employment environment that is conducive to the Island's future economic growth.

Sincerely,

---

[7] *Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for P.R. (In re The Fin. Oversight & Mgmt. Bd. for P.R.)*, 511 F.Supp.3d 90, 133 (D.P.R. 2020).