# Exhibit 19

ACT *41 - 2022*

I, JAVIER GÓMEZ CRUZ, Secretary of the House of Representatives of the Commonwealth of Puerto Rico,

CERTIFY:

That House Bill 1244, entitled

*"Act*

*To amend Articles 2.12, 2.18, and 2.21 of Act 4-2017, better known as the "Labor Transformation and Flexibility Act"; to amend Articles 4, 8, 10, 11, and 14 of Act No. 379 from May 15, 1948, as amended; to amend Sections 1 and 4 of Act No. 289 from April 9, 1946, as amended; to amend paragraphs (a), (k), and (q) of Article 4, paragraph (b) of Article* 3, *as well as paragraph (a) of Article 10 of Act 180-1998, as amended; to amend Articles 1 and* 7 *of Act No. 148 from June 30, 1969, as amended. 148 of June 30, 1969, as amended; to amend paragraphs (a) and (b) of Article 1, paragraphs (b), (d), (e), and (f) of Article* 2, *Articles* 3, 5, 7, *and 8, paragraphs (a) and (b) of Article 11 and Article 12, as well as to remove Article 3-A from Act No. 80 from May 30, 1976, as amended; to amend Article* 3 *of Act No. 100 from June 30, 1959, as amended; and to amend paragraph (c) of Article* 2 *of Act 28-2018, as amended; to restore and expand the labor rights applicable to private enterprise; reduce the probationary period, restore protections against unjustified termination, and* [set] *the formula for calculating the accrual of vacation and sick leave, extending said benefit to all part-time employees; restore the prescriptive period for claiming benefits derived from an employment contract; and for other related purposes."*

has been approved by the House of Representatives and the Senate of the Commonwealth of Puerto Rico in the form set forth in the accompanying document.

*House Bill 1244*
*June 7, 2022*
*Page 2*

FOR THE RECORD, and for the purpose of notifying the Governor of the Commonwealth of Puerto Rico, I hereby issue this document at my office in the Capitol, San Juan, Puerto Rico on the seventh (7th) of June of two thousand and twenty-two, and I affix hereunto the seal of the House of Representatives of the Commonwealth of Puerto Rico.

[signed]

Javier Gómez Cruz

Secretary

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

**(House Bill 1244)**

## ACT

To amend Articles 2.12, 2.18, and 2.21 of Act 4-2017, better known as the "Labor Transformation and Flexibility Act"; to amend Articles 4, 8, 10, 11, and 14 of Act No. 379 from May 15, 1948, as amended; to amend Sections 1 and 4 of Act No. 289 from April 9, 1946, as amended; to amend paragraphs (a), (k), and (q) of Article 4, paragraph (b) of Article 3, as well as paragraph (a) of Article 10 of Act 180-1998, as amended; to amend Articles 1 and 7 of Act No. 148 from June 30, 1969, as amended; to amend paragraphs (a) and (b) of Article 1, paragraphs (b), (d), (e), and (f) of Article 2, Articles 3, 5, 7, and 8, paragraphs (a) and (b) of Article 11 and Article 12, as well as to remove Article 3-A from Act No. 80 from May 30, 1976, as amended; to amend Article 3 of Act No. 100 from June 30, 1959, as amended; and to amend paragraph (c) of Article 2 of Act 28-2018, as amended; to restore and expand the labor rights applicable to private enterprise; reduce the probationary period, restore protections against unjustified termination, and [set] the formula for calculating the accrual of vacation and sick leave, extending said benefit to all part-time employees; restore the prescriptive period for claiming benefits derived from an employment contract; and for other related purposes.

### STATEMENT OF REASONS

Article II, Section 16 of the Constitution of the Commonwealth of Puerto Rico establishes the protections recognized to the working class, the most vulnerable sector within the employer-employee relationship. Specifically, this mandate sets forth that: *"[t]he right of every worker to freely choose their occupation and to resign from it, to receive equal pay for equal work, to receive a reasonable minimum wage, to have protection against risks to their health or personal integrity in their place of work or employment, and to have an ordinary working day that does not exceed eight hours of work. Workers may only work in excess of this daily limit by means of extraordinary compensation, which shall never be less than what is established by law."* Likewise, the Magna Carta validates the right of private employees and public employees assigned to agencies and instrumentalities that operate as private companies or businesses, to organize and negotiate collectively, exercise their right to strike and use other legal concerted activities to attain better employment conditions. In this context, the Constitution itself recognizes the power of this Legislative Assembly to extend these guarantees based on its authority to *"pass laws for the protection of the life, health and welfare of the People,"* given that the rights listed in the Constitution are not to be

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

interpreted restrictively, nor imply the exclusion of other protections.

Globally, the struggles of working men and women achieved recognition as important rights in the Universal Declaration of Human Rights, adopted by virtually all the world's governments in 1948. The Declaration states that everyone has "the right to work, to the free choice of employment, to just and favorable work conditions, and to protection against unemployment" (Article 23); to "equal pay for equal work" and to "just and favorable pay that ensures an existence worthy of human dignity for both the worker and their family, and supplemented, if necessary, by other means of social protection" (Article 23); to "a standard of living adequate for the health and well-being of both the worker and their family, including food, clothing, housing and medical care and necessary social services; they are also entitled to security in the event of unemployment, sickness, disability, widowhood, old age or other losses that come from circumstances beyond their control" (Article 25); "to rest and enjoy their leisure time, to a reasonable limitation on working hours and to periodic, paid vacations" (Article 24); to participate freely in the cultural life of the community, to enjoy the arts and to take part in scientific advancement and its benefits (Article 27). It also recognizes that everyone has "the right to form and to join trade unions for the protection of their interests" (Article 23).

However, the last Legislative Assembly adopted a new public policy after Act 4-2017, known as the "Labor Transformation and Flexibility Act" was passed. The Statement of Reasons for this Act set forth that the new legal structure was intended to *"create a clear and consistent policy aimed at making Puerto Rico an attractive jurisdiction to establish businesses and create employment opportunities; foster growth in private sector employment; and offer new job opportunities to unemployed persons."* The formula for making Puerto Rico "a more attractive jurisdiction" focused exclusively on persuading employers to create more jobs within a reduced structure of rights, protections and fringe benefits.

Specifically, the Global Competitiveness Report published by the *World Economic Forum* was used to justify passing this Act. Said study is structured according to the perception of the businesspersons consulted. This publication states that *"restrictive labor regulations"* are among the main impediments to making Puerto Rico a more attractive jurisdiction for investment. Furthermore, they pointed out *"inefficient government bureaucracy", "fiscal (tax) regulations", "tax rates", and "access to financing."* Dr. Morales Cortés explains that:

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

*"In times of economic crisis, labor reforms have proven to be regressive in nature. Austerity measures make the conditions and terms of employment of the working class more precarious. Such practices constitute forms of institutional violence and generate greater inequality, inequity, and injustice. A regressive legal framework tends to adversely affect: quality of life and well-being, labor force retention, lack of motivation, and the creation of difficulties associated with work and organizational performance... in Puerto Rico, not all people have access to work, much less to decent work. The free selection of work occurs in a context of limited job supply and high rates of emigration in the face of low compensation."*[1]

For example, one of the main protections recognized for the working class corresponds to the existence of a probationary period, where the employer determines the suitability of the employee to perform certain functions. Thus, the employee takes on new responsibilities and begins an evaluation period in preparation for obtaining certainty about their permanency at the company. In the words of the Supreme Court of Puerto Rico:

*"The labor legislation in force in Puerto Rico allows an employer to hire a person as a regular employee but subject to completing a probationary period that allows the employer to evaluate the individual's work. Thus, if during the probationary period the person hired does not perform satisfactorily, at the end of the probationary period, the employer may terminate their services without having to compensate them. Even during the probationary period, the employer may end the employment relationship if the employee fails to perform their duties.... If, at the end of the term established in the probationary contract, or the valid extension thereof, the employee continues to perform work for the employer, said employee shall acquire all the rights of an employee as if they had been hired for an indefinite period of time."*[2]

Prior to this revision, the maximum term applicable for a probationary period could be extended for a maximum of three (3) months. However, this statute allowed for an extension of a period of six (6) months for exceptional cases, when authorized in writing by the Secretary of Labor and Human Resources. The amendment increased this period to nine (9) months.

Another one of the most significant changes involved the applicable regulations for accumulating vacation time and sick leave. The previous legal structure,

---

[1] Dr. Morales Cortés, Commentary on Labor Reform 2017, *Políticas Laborales Regresivas: Un atentado a la Calidad de Vida y al Bienestar de los Trabajadores,* [Regressive Labor Politics: An Attack on the Quality of Life and Well-being of Workers] p. 115.
[2] Whittenburg v. Col. Ntra. Sra. del Carmen, 182 D.P.R. 937, p. 30 (2011).

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

codified in Article 6 of Act 180-1988, as amended, established that these workers would accrue vacation time at the rate of one and one-fourth (1¼) days per month; and sick leave at the rate of one (1) day per month. The employee was only required to work a minimum of one hundred fifteen (115) hours per month.

The new structure raised the minimum number of hours required to work to one hundred and thirty (130) per month. Furthermore, it implemented a new structure for accruing vacation time based on the following sequence:

1. Half a day per month during the first year of work.
2. Three quarters of a day per month after completing one year of work, until reaching five years.
3. One day per month after completing five years of work, until reaching fifteen years.
4. A day and a quarter after completing more than 15 years of work.

Therefore, an employee covered by this labor reform must currently remain in their employment for fifteen (15) years in order to accumulate the same number of days per month as under the repealed legal structure.

In the same way, Act 4 *supra* reduced the prescriptive terms for workers to claim any breach related to an employment contract and removed the possibility of classifying a termination as wrongful from the text of the Act.

This Legislative Assembly reaffirms in a public policy that it recognizes:

(1)    The fundamental need of the people of Puerto Rico to achieve maximum production development in order to establish the highest possible standards of living for their population. It is the obligation of the Commonwealth of Puerto Rico to adopt such measures that will lead to maximum production development and eliminate the threat that the day may come when, because of the continued growth of the population and the impossibility of maintaining an equal increase in production, the people may have to face an irremediable catastrophe; and it is the purpose of the Government to develop and maintain such production through the understanding and education of all the elements of the people as to the fundamental necessity of increasing production to its maximum, and of distributing such production as fairly as possible.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(2)     Industrial peace, adequate, stable, and secure wages for employees, as well as an uninterrupted supply of goods and services are essential factors for Puerto Rico's economic development. Achieving these purposes depends on fair, friendly, and mutually satisfactory relations between employers and employees, as well as on having adequate means available to peacefully settle labor-management disputes.

(3)     Eliminate the causes of certain labor disputes by promoting and establishing an adequate, effective and impartial judicial process that honors and implements this policy.

Therefore, the proposal of this Legislative Assembly reverses part of the changes in the 2017 labor reform, pursuant to a work plan based on two priority areas: (1) to restore and expand the labor rights applicable to all employees belonging to private enterprise; and (2) to demand that this Legislative Assembly exercise its investigative power, to inquire into the prevailing employment conditions in Puerto Rico and propose new protections for the benefit of the working class.

*BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*

Section 1 - Article 2.12 of Act 4-2017, as amended, is hereby amended to read as follows:

"Article 2.12 - Interpretation: Ambiguous Provisions

If there is ambiguity in any provision of an employment agreement, such provision shall be interpreted liberally in favor of the employee.

The foregoing shall also apply when interpreting policies or rules established by the employer. However, in cases where the employer reserves discretion in the interpretation of their policies or rules, such reservation must be recognized, provided that the interpretation is reasonable, and not arbitrary or capricious, or otherwise stipulated in a specific law."

Section 2 - Article 2.18 of Act 4-2017, as amended, is hereby amended to read as follows:

"Article 2.18 - Statute of Limitations

Actions arising from an employment contract or benefits arising under an employment contract shall be barred after three (3) years,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

counting from the time when the action can be filed, unless expressly stipulated otherwise in a special law or in the employment contract."

Section 3 - Article 2.21 of Act 4-2017, as amended, is hereby amended to read as follows:

"Article 2.21 - Periodic Reports to the Legislative Assembly

The Secretary of the Department of Labor and Human Resources shall be required to submit reports every three (3) months to the Secretary of both bodies that make up the Legislature regarding the implementation of this Act."

Section 4 - Article 4 of Act No. 379 from May 15, 1948, as amended, is hereby amended to read as follows:

"Article 4 - The following are defined as overtime hours:

(a) Hours that an employee works for their employer in excess of eight (8) hours during a calendar day.

(b) Hours that an employee works for their employer in excess of forty (40) hours during any workweek.

(c) Hours that an employee works for their employer on the days or during the hours in which an establishment shall remain closed to the public by law. However, the hours worked on Sundays, when by law the establishment shall remain closed to the public, shall not be considered overtime for the mere reason of being worked on that day.

(d) The hours that an employee works for their employer on the weekly rest day, as established by law.

(e) The hours that an employee works for their employer in excess of the maximum hours of work per day established in a collective bargaining agreement."

Section 5 - Article 8 of Act No. 379 from May 15, 1948, as amended, is hereby amended to read as follows:

"Article 8 - Employees may request a change in schedule in writing for the number of hours or the place where they are to carry out their work.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

The employee's written request shall specify the change requested, the reason for the request, the effective date, and the duration of the change. In no case shall an employee be required to use or include specific terms or concepts in preparing or submitting any request under this Article. Each employer shall establish the applicable internal procedure to document these requests.

The employer shall be required to provide a written response, which shall be part of the employee's personnel file, within a period of twenty (20) calendar days upon receiving said request. In cases where an employer has more than fifteen (15) employees, the mandatory response shall be in writing. If the employer meets with the employee within twenty (20) calendar days of receiving the request for change, their response may be given within fourteen (14) calendar days following said meeting.

In the response, the employer may grant or deny the employee's request. Approval may be subject to conditions or requirements agreed upon by the employee and the employer. A rejection must contain the specific reasons for the decision and any specified alternative to the request must be submitted. In cases where the denial is based on the fact that the employer does not have an alternative available for the requested change, it shall state so in the response. The employer will give priority to requests from heads of households who have sole custody of their minor children.

The provisions of this Article shall only be applicable to employees who regularly work thirty (30) hours or more per week and who have worked for the employer for at least one (1) year. However, the provisions of this Article shall not be applicable to another request submitted within six (6) months of receiving the employer's written decision or after receiving approval for the requested change, whichever is less."

Section 6 - Article 10 of Act No. 379 from May 15, 1948, as amended, is hereby amended to read as follows:

"Article 10 -

(... )

No employer shall retaliate against, dismiss, suspend, or in any way affect the employment tenure or working conditions of any employee for refusing to accept an alternative weekly work schedule as authorized in Article 6 of this Act or for having submitted a request to modify the schedule, the number of hours, or the place of

work, as authorized in Article 8 of this Act. Any employer who displays such conduct may be held civilly liable for an amount equal to the amount of damages caused to the employee by such act, and, if it is proven that the employer took part in such conduct with malice or reckless disregard of the employee's rights, an additional maximum amount equivalent to the actual damages caused may be imposed as punitive damages. To determine the amount to be imposed as punitive damages, consideration shall be given to, among other factors, the financial situation of the employer, the reprehensibility of the employer's conduct, the duration and frequency of the conduct, the amount of damage caused, and the size of the business. In addition, the employer may be required to reinstate the employee and cease and desist from the act in question.

(... )."

Section 7 - Article 11 of Act No. 379 from May 15, 1948, as amended, is hereby amended to read as follows:

"Article 11 - Working Hours - Posting Notice on Working Hours

(... )

Any employer who requires or allows an employee to work for a period of more than five (5) consecutive hours without providing a meal break, shall pay the employee overtime pay for the time worked, as authorized in this Article. When meal breaks occur outside the employee's regular workday, they may be waived by a written agreement between the employee and the employer, and without the intervention of the Secretary of Labor and Human Resources.

The meal break shall not begin before the end of the third working hour or after the beginning of the sixth consecutive working hour. However, meal breaks may be taken between the second and third consecutive hour of work with a written agreement between the employee and the employer.

An employer may not employ an employee for a work period exceeding ten (10) hours per day, without providing the employee with a second rest period to eat. In cases where the total hours worked do not exceed twelve (12) hours, the second meal break

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

may be waived, provided that the first meal break period was taken by the employee and there is a written agreement between the employee and the employer.

The designated break periods occurring within or outside the employee's regular workday shall last one (1) hour. As an exception, they may be reduced to a period of no less than thirty (30) minutes, provided there is a written stipulation between the employer and the employee. For *croupiers,* nurses, and security guards and those others authorized by the Secretary of Labor and Human Resources, the meal break period may be reduced to twenty (20) minutes when there is a written stipulation between the employer and the employee, without requiring the approval of the Secretary of Labor and Human Resources. Notwithstanding, the other provisions of this Section shall apply.

Stipulations to reduce a meal break period shall be valid as long as they have the consent of the employee and their employer. Said stipulations shall continue in force when a third party acquires the employer's business.

Any employer who employs or allows an employee to work during the designated meal break period shall be required to pay a wage equal to time and a half of the agreed-upon regular hourly rate for said period or fraction thereof. Additionally, employees that were entitled to a wage higher than time and a half prior to the enactment of the "Labor Transformation and Flexibility Act" shall maintain that wage.

When employees are unionized, the stipulation to reduce the period designated for meals may only be made by a collective bargaining agreement or a written agreement between the union and the employer, without the individual consent of the employees represented by the union nor the approval of the Secretary of Labor and Human Resources being necessary. In these cases, the reduction in the agreement or as authorized in the agreement is effective."

Section 8 - Article 14 of Act No. 379 from May 15, 1948, as amended, is hereby amended to read as follows:

"Article 14 - Working Hours - Regulation by the Secretary of Labor and Human Resources.

The Secretary of Labor shall prepare the necessary rules and regulations for best compliance with this Act. Such rules and regulations must be enacted within a term not exceeding ninety (90) days from the approval of this Act."

Section 9 - Section 1 of Act No. 289 from April 9, 1946, as amended, is hereby amended to read as follows:

"Section 1 - Every employee of any commercial or industrial establishment, for-profit or non-profit company or business, including those operated by non-profit associations or organizations and charitable institutions shall be entitled to one day of rest for every six (6) days of work. For the purposes of this Act, a rest day shall be understood as a period of twenty-four (24) consecutive hours."

Section 10 - Section 4 of Act No. 289 from April 9, 1946, as amended, is hereby amended to read as follows:

"Section 4 - Any employer who employs or allows an employee to work during the day of rest established in this Act shall be required to pay a wage equal to time and a half of the agreed-upon regular hourly rate for the hours worked during said rest day. However, if the employee who works during the day of rest is a student, the employer shall pay double the agreed-upon regular hourly rate. For the purposes of this Section, any person enrolled in a system of higher education, university education, or in any postgraduate education shall be considered a student. Notwithstanding, employers who are considered micro-enterprises or small and medium-sized businesses, as these terms are defined in paragraphs (4), (5), and (6) of Article 2 of Act 62-2014, as amended, may pay them a wage equal to time and a half of the agreed-upon regular hourly rate. Additionally, those employees entitled to superior benefits prior to the enactment of the "Labor Transformation and Flexibility Act" shall maintain that wage."

Section 11 - Paragraphs (a), (k), and (q) of Article 4 of Act 180-1998, as amended, are hereby amended to read as follows:

"Article 4 - Vacation and Sick Leave Provisions.

(a) All workers in Puerto Rico, with the exception of those listed in Article 6 of this Act, who work no fewer than twenty (20) hours per week, but fewer than one hundred fifteen (115) hours per month,

shall accrue vacation time at the rate of half (1/2) a day per month; and sick leave at the rate of half (1/2) a day per month. All workers in Puerto Rico except those listed in Articles 3 and 6 of this Act who work no fewer than one hundred fifteen (115) hours per month shall be entitled to a minimum vacation leave accrual at the rate of one and one-quarter (1¼) days per month, and a minimum sick leave accrual of one (1) day per month.

However, for Puerto Rican resident employers whose number of employees does not exceed twelve (12), the minimum monthly accrual for employees who work no fewer than twenty (20) hours per week, but fewer than one hundred fifteen (115) hours per month, shall be at the rate of one-quarter (1/4) of a day per month for vacation leave and half (1/2) a day per month for sick leave. Employees who work for these employers for no fewer than one hundred fifteen (115) hours per month shall be entitled to a minimum accrual of vacation leave at the rate of half (1/2) a day per month, and a minimum accrual of sick leave at the rate of one (1) day per month. This exception shall be available to the employer as long as the number of employees does not exceed twelve (12) and will expire the following calendar year after the employer's payroll exceeds (15) employees for more than twenty-six (26) weeks in each of the two (2) consecutive calendar years.

The use of vacation time and sick leave will be considered time worked for the accrual of these benefits.

(b)  …

(c)  …

(d)  …

(e)  …

(f)  …

(g)  …

(h)  …

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

(i) …

(j) …

(k) Upon written request from the employee, the employer may allow partial or total liquidation of accrued vacation time.

(l) …

(m) …

(n) …

(o) …

(p) …

(q) No employer, supervisor, or representative thereof, may use, as part of the administrative procedure of their company or as company policy, excused absences due to illness as a criterion for determining employee efficiency in the employee's evaluation or whether they are considered for raises or promotions within the company. Nor shall paid or unpaid sick leave or special emergency leave under this Article and correctly charged to sick leave, be used to justify disciplinary actions, such as suspensions or terminations. This provision shall not limit an employer from establishing attendance incentive programs for its employees according to operational needs."

Section 12 - Paragraph (b) of Article 3 of Act 180-1998, as amended, is hereby amended to read as follows:

"Article 3 - Industries Granting Superior or Inferior Benefits -

(a) ...

(b) Any employee who worked for an employer prior to the "Labor Transformation and Flexibility Act" going into effect, who by law was entitled to monthly accrual rates for vacation time and sick leave that were higher than those provided by the "Labor Transformation and Flexibility Act", shall continue receiving the monthly accrual rates of such benefits previously applied to them. These provisions shall apply as long as the individual works for the same employer.

It shall be an unlawful employment practice for an employer to remove, dismiss, or indefinitely suspend an employee, with the purpose of hiring them again or replacing them with a new employee so that they have fewer labor rights than those prior to a subsequent law being passed. Any employer violating this Article shall incur in a misdemeanor and shall be punished with a fine of no less than five hundred dollars ($500.00) and no more than five thousand dollars ($5,000.00), face imprisonment for a term of no fewer than one hundred twenty (120) days nor more than one (1) year, or both penalties at the Court's discretion. The employer shall also incur civil liability for an amount equal to twice the amount of the damages caused to the employee by the act. In those cases where the adjudicator cannot determine the amount of the damage caused to the employee, the adjudicator may, at their discretion, impose a compensation penalty of no less than one thousand dollars ($1,000) and no more than five thousand dollars ($5,000)."

Section 13 - Paragraph (a) of Article 10 of Act 180-1998, as amended, is hereby amended to read as follows:

"Article 10 - Statute of Limitations.

(a)  The statute of limitations for wage claims that an employee may have against their employer under the provisions of this Act or a mandatory decree, already passed or to be passed, in accordance with the provisions of this Act or under any contract or law, shall expire after three (3) years. For the term of this action, the time shall be counted from the time the employee ceased their employment with the employer. The aforementioned statute of limitations shall be interrupted and shall begin again once the employer is notified of the unpaid wage, judicially or extrajudicially, by the employee or worker, their representative, or an officer of the Department empowered to do so, and by any act of acknowledgment of the debt by the employer.

Claims arising under this Act shall have a statute of limitations of three (3) years, counted from the date of the action prohibited by the provisions of this statute.

(b)  ...

(c)  ...

(d)  ...

(e)  ..."

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Section 14 - Article 1 of Act No. 148 from June 30, 1969, as amended, is hereby amended to read as follows:

Article 1 - Any employer who has one or more workers or employees within the twelve (12) month period, from October 1 of any year to September 30 of the following calendar year, shall be required to grant each employee who has worked seven hundred (700) hours or more or one hundred (100) hours or more in the case of dock workers, within the aforementioned period, a bonus equivalent to 6% of the total maximum salary of ten thousand dollars ($10,000) earned by the employee or worker within said period of time. Every employer having twelve (12) or fewer employees for more than twenty-six (26) weeks within the twelve (12) month period from October 1 of any year to September 30 of the following calendar year shall grant a bonus equivalent to 3% of the total maximum salary of ten thousand dollars ($10,000).

For employees hired as of the effective date of the "Labor Transformation and Flexibility Act", every employer having more than twenty (20) employees for more than twenty-six (26) weeks within the twelve (12) month period from October 1 of any year to September 30 of the following calendar year, shall be required to grant each employee who has worked at least seven hundred (700) hours or more within said period, a bonus equivalent to three percent (3%) of the total salary earned up to the amount of six hundred dollars ($600.00). Employers having twenty (20) or fewer employees for more than twenty-six (26) weeks within the twelve (12) month period from October 1 of any year to September 30 of the following calendar year shall be required to grant each employee who has worked at least seven hundred (700) hours or more within said period, a bonus equivalent to three percent (3%) of the total salary earned up to a maximum of three hundred dollars ($300.00).

Notwithstanding, employers that are considered micro-enterprises or small and medium-sized businesses, as these terms are defined in paragraphs (4), (5), and (6) of Article 2 of Act 62-2014, as amended, shall be required to grant the bonus established in the preceding paragraph to each employee who has worked nine hundred (900) hours or more within the period indicated above.

The total of the amounts paid for such bonus shall not exceed fifteen percent (15%) of the employer's annual net earnings within the period of October 1 of the preceding year to September 30 of the year to which the bonus corresponds.

In calculating the total hours worked by an employee to receive benefits under this Act, hours worked for the same employer shall be counted, even if services have been rendered in different businesses, industries, and other activities of said employer. In order to determine the net profits, the amount of the net loss from previous years and accounts receivable that have not been paid at the end of the period covered by the balance sheet and income statement shall be excluded.

This bonus shall constitute an additional compensation to any other wages or other benefits to which the employee is entitled. The employer may deduct any other bonus previously paid to the employee during the year for any concept from said obligatory bonus, provided that they have notified the employee in writing of their intention to deduct said other bonus from the payment of the bonus required under this Act.

In case of ambiguity in any provision of this Article, said provision shall be liberally interpreted in favor of the employee."

Section 15 - Article 7 of Act No. 148 from June 30, 1969, as amended, is hereby amended to read as follows:

"Article 7 - The Secretary of Labor and Human Resources is hereby authorized to adopt such rules and regulations as they deem necessary for the best and proper administration of this Act.

The Secretary is also authorized to request and require employers to furnish, under oath, all information within their power with respect to balance sheets, profit and loss statements, accounting books, pay lists, wages, working hours, statement of changes in financial position and corresponding annotations, and any other information they deem necessary for the better administration of this Act. For such purposes, the Secretary of Labor and Human Resources may prepare forms as spreadsheets, which may be obtained by the employers through the Department of Labor and Human Resources, and must be completed and filed in the offices of the Department of Labor and Human Resources by the date set by the Secretary.

The Secretary is also authorized to investigate and examine, personally or through subordinates, employers' books, accounts, files, and other documents, in order to determine their liability to their employees under this Act.

In order for an employer to invoke the provision contained in Article 1 of this Act, exempting them from paying all or part of the bonus established therein, when they have not obtained profits at their business, industry, trade, or enterprise or when such profits are insufficient to cover the total bonus, without exceeding the limit of fifteen percent (15%) of the annual net profits, such employer must submit a balance sheet and a profit and loss statement for the twelve (12)-month period from October 1 of the previous year to September 30 of the current year, duly certified by an authorized public accountant, demonstrating said financial situation, to the Secretary of Labor and Human Resources, no later than November 30 of each year. In those cases in which the fiscal year of the employer requesting the exemption provided in this Article does not end on September 30 of each year, the required profit and loss statement may be the one corresponding to the fiscal year of the business. The profit and loss statement required herein may be compiled or reviewed by a certified public accountant and shall be signed and stamped with the seal of the Association of Certified Public Accountants. The foregoing shall not be construed as a limitation to the powers of the Secretary of Labor and Human Resources to perform an audit intervention on any employer requesting the exemption and to confirm the accuracy of the information provided.

...”

Section 16 - Paragraphs (a) and (b) of Article 1 of Act No. 80 from May 30, 1976, as amended, are hereby amended to read as follows:

“Every employee of commerce, industry or any other business or place of employment, hereinafter designated as the establishment where they work for compensation of any kind contracted for an unspecified period of time, who is terminated from their position without just cause, shall be entitled to receive from their employer, in addition to the salary earned:

(a) Three (3) months’ severance pay if the termination occurs within fifteen (15) years of service; six (6) months’ severance pay if the termination occurs after fifteen (15) years of service.

(b) An additional progressive severance payment equivalent to two (2) weeks for each year of service if the termination occurs within

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

17

fifteen (15) years of service; three (3) weeks for each year of service after completing fifteen (15) or more years of service.

The years of service shall be determined on the basis of all previous accumulated periods that the employee has worked for the employer prior to their layoff but excluding those that have been compensated or have been the subject of a legal award by reason of previous termination or separation.

Notwithstanding the provisions of the first paragraph of this Article, the mere fact that an employee renders services under a fixed-term contract alone shall not automatically deprive them of protection under this Act, if the practice and circumstances involved or other evidence in the hiring are of such nature as to tend to indicate the creation of an expectation of continuity of employment or appearing to be a *bona fide* employment contract for an indefinite period of time. In such cases, the employees affected shall be deemed to have been hired for an indefinite period of time. Except in the case of employees hired for a *bona fide* fixed term or for a *bona fide* project or job, any separation, termination, or layoff of employees hired for a fixed term or for a *bona fide* project or job, or the failure to renew their contract, shall be considered to constitute termination without just cause under this Act.

The severance payment provided by this Act, as well as any equivalent voluntary payment paid by the employer to the employee by reason of the employee's termination shall be exempt from income taxes, regardless of whether such payment is made at the time of termination or subsequently, or is made by reason of a settlement agreement or by virtue of a judgment or administrative order."

Section 17 - Paragraphs (b), (d), (e), and (f) of Article 2 of Act No. 80 from May 30, 1976, as amended, are hereby amended to read as follows:

"Article 2 - Just cause for termination of an employee from an establishment shall be understood as follows:

(a)     The employee has a continued pattern of improper or disorderly conduct.

(b)     The employee's attitude of not doing their work efficiently or getting it done late, negligently or in violation of the quality standards of the product being

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

produced or handled by the establishment.

(c)     Repeated violation by the employee of the reasonable rules and regulations established for the operation of the establishment, so long as a written copy of these rules has been provided to the employee in a timely manner.

(d)     Total, temporary, or partial closure of the establishment's operations.

(e)     Technological or restructuring changes, or changes in the nature of the product being produced or handled by the establishment or in the services rendered to the public.

(f)     Reductions in employment made necessary by a decrease in the volume of production, sales or profits, anticipated or prevailing at the time of the layoff.

Termination shall not be deemed to be for just cause when made at the mere whim of the employer or for no reason related to the good and normal operation of the establishment. The collaboration or statements made by an employee related to their employer's business shall not be considered just cause for termination in an investigation before any administrative, judicial, or legislative forum in Puerto Rico, when such statements are not of a defamatory nature and do not constitute the disclosure of privileged legal information under the law. In the latter case, an employee who has been terminated shall be entitled to immediate reinstatement to their position and compensation in an amount equal to lost wages and benefits from the termination date until the court orders reinstatement to their position, in addition to any other award that may apply."

Section 18 - Article 3 of Act No. 80 from May 30, 1976, as amended, is hereby amended to read as follows:

"Article 3 -

Whenever employees are terminated for the reasons indicated in paragraphs (d), (e), and (f) of Article 2 of this Act, the employer shall be required to apply preference in retaining employees with more seniority, provided that there are vacant positions or positions held by employees with less seniority within their occupational classification that may be filled by them.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Preference shall be given to laid-off employees in the event that there is a need to employ a person for a position equal or similar to that of said employees at the time of their layoff and within their occupational classification, within six (6) months following their layoff. The order of seniority shall also be followed with replacement, in both situations, except in cases in which there is a reasonably clear or evident difference in the abilities, competence, productivity, performance, efficiency, or the employees' record when compared, in which case the employer may choose on the basis of said criteria. It is stipulated that:

(a)     For layoffs or downsizing for the reasons considered in paragraphs (d), (e), and (f) of this Act for businesses that have several offices, factories, branches, or plants, and where usually the employees of one office, factory, branch, or plant do not transfer to another, and said units operate essentially independently with respect to personnel aspects, the seniority of the employees within the occupational classification subject to be downsized shall be determined by taking into account only the employees in the office, factory, branch, or plant in which the downsizing is to be carried out.

(b)     As to companies with several offices, factories, branches, or plants in which there is the usual and regular practice that their employees transfer from one unit to another and that the different units operate in a substantially integrated manner with respect to personnel aspects, seniority will be determined on the basis of all employees of the company. That means taking into consideration all its offices, factories, branches, or plants that are in the occupational classification subject to be downsized."

Section 19 - Article 3-A of Act No. 80 from May 30, 1976, as amended, is hereby repealed.

Section 20 - Article 5 from Act No. 80 of May 30, 1976, as amended, is hereby amended to read as follows:

"Article 5 - For the purposes of this Act, termination shall be understood to mean, in addition to an employee's termination, their indefinite suspension, or suspension for a term exceeding three (3) months, except as to employees in seasonal industries and businesses, or resignation from employment motivated by actions of the employer aimed at inducing or forcing them to resign, such as imposing or attempting to impose

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

more onerous working conditions, reductions in salary, demoting them, or subjecting them to taunting or humiliation with words or by actions."

Section 21 - Article 7 of Act No. 80 from May 30, 1976, as amended, is hereby amended to read as follows:

"Article 7 - Compensation and progressive severance pay for termination without just cause, provided in Article 1 of this Act, shall be calculated on the basis of the greater number of regular working hours of the employee, during any period of thirty (30) consecutive calendar days, within the year immediately preceding the termination. In cases of terminations based on reasons (d), (e), (f) of Article 2 of Act No. 80 from May 30, 1976, as amended, any amount of money received by the workers as a result of the liquidation or closing of businesses or business programs to share profits with their employees shall be considered special compensation. These amounts shall in no way affect the calculation or right to claim the compensation and progressive severance pay provided in Article 1 of Act No. 80 from May 30, 1976, as amended."

Section 22 - Article 8 of Act No. 80 from May 30, 1976, as amended, is hereby amended to read as follows:

"Article 8 -

The probationary period shall be automatic and shall not exceed three (3) months, unless the employer notifies the Secretary of Labor and Human Resources in writing. The notice shall outline the reasons why, from their point of view, the nature of the job requires said extension. Upon submission of such notice, the probationary period shall be deemed extended up to an additional maximum of three (3) months, for a total of six (6) months. When the employees are unionized, the probationary period extension may be stipulated so that said period may be extended up to a maximum of six (6) months and may be made by a collective bargaining agreement or with a written agreement between the union and the employer, without the need to notify the Secretary of Labor and Human Resources.

Once the term established in the probationary contract, or the valid extension thereof, has expired, or upon expiration of the automatic probationary term established by this Act without a probationary contract having been completed, the employee continues to work for the employer, said employee shall acquire all the rights of an employee as if having been hired for an indefinite period of time.

The probationary period established in this Article shall not have the effect of limiting the accrual of vacation time for employees entitled to it by law.

For any employee who takes a leave of absence authorized by law, the probationary period shall be automatically interrupted and the employee shall resume the remaining term of the probationary period once they return to their job.

Any employer who retains the services of an employee through a temporary employment company or directly through a temporary contract, for a defined term or for a particular project, shall credit the temporary employee for up to a maximum of six (6) months of time worked, provided that the work to be performed involves the same functions or duties as the work they performed as a temporary employee.

For the purposes of the provisions of this Article, "month" shall mean a period of thirty (30) consecutive calendar days."

Section 23 - Paragraphs (a) and (b) of Article 11 of Act No. 80 from May 30, 1976, as amended, are hereby amended to read as follows:

"Article 11 -

(a) In the answer to the complaint in any action filed by an employee claiming benefits under this Act, the employer shall be required to state the facts that led to the termination and prove that the termination was justified in order to be exempted from complying with the provisions of Article 1 of this Act. Likewise, in answering a complaint in any action filed by an employee claiming benefits under this Act, when the employee was hired for a certain term or for a certain project or job, the employer shall be required to state said facts and to prove the existence of a *"bona fide"* contract in order to be exempted from the remedies provided by this Act, unless the employer proves that the termination was justified.

An employment contract for a certain term or for a certain project or job shall be considered *bona fide* if made in writing during the employee's first working day. With respect to employees hired by client companies through temporary employment services companies, it shall be completed during the first ten (10) days of the beginning of their contract and stating the purpose, so documented,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

to substitute the absence of an employee on legally established leave or leave established by the employer. They may also carry out extraordinary tasks or tasks of certain duration such as, but not limited to, annual inventories, repairing equipment, machinery or company facilities, casual loading and unloading of cargo, work at certain times of the year such as Christmas, temporary orders for production increases, and any other particular project or activity of a short or fixed duration.

"Temporary employment services company" means any person or organization engaged in the business of hiring employees to provide temporary services to a client company through a temporary employment services company. "Client company" means any person or organization that solicits or hires temporary employees through the intermediary of temporary employment services companies.

(b) In any lawsuit based on this Act, the court shall hold a pre-trial conference no later than thirty (30) days after the complaint is answered. After said conference, if the court considers that there are sufficient reasons, beyond the circumstances of conflicting allegations to believe that the termination was without just cause, it shall issue an order so that within a non-extendable term of fifteen (15) days, the defendant-employer deposits with the court clerk a sum equivalent to the total compensation to which the employee would be entitled, and in addition, an amount for attorney's fees, which shall never be less than fifteen percent (15%) of the total compensation. The defendant-employer may provide an adequate bond to cover these amounts. Said amounts or said bond shall be returned to the employer if a final and firm judgment is entered in their favor. At any stage of the proceedings, in which, upon request of a party, the court finds that there is a serious risk that the employer lacks sufficient assets to satisfy the judgment that may eventually be entered in the case, the court may require the aforementioned deposit or the corresponding bond."

Section 24 - Article 12 of Act No. 80 from May 30, 1976, as amended, is hereby amended to read as follows:

"Article 12 - The rights granted by this Law shall expire after three (3) years from the effective date of the termination itself."

Section 25 - Article 3 of Act No. 100 from June 30, 1959, as amended, is hereby amended to read as follows:

"Article 3 -Discrimination based on age, race, color, sex, social or national origin, social status, political affiliation, political or religious ideology, or status as a victim or perceived victim of domestic violence, sexual assault, or stalking- Presumptions.

It shall be presumed that any of the acts mentioned in the preceding Articles was committed in violation of this Act when the act(s) was/were committed without just cause. This presumption shall be rebuttable.

The employer is not presumed to have been aware of any employee's personal situation in cases of discrimination against victims or alleged victims of domestic violence, sexual assault, or stalking, unless in fact the employer would have been in a position to know.

The employer must make reasonable and necessary adjustments or accommodations in the workplace to protect its employees from a potential aggressor once the employer has been advised of the potential for a dangerous situation to occur. Failure to do so shall be presumed as discriminatory conduct."

Section 26 - Paragraph (c) of Article 2 of Act 28-2018, as amended, known as the "Special Leave for Employees with Serious Catastrophic Illnesses Act," is hereby amended to read as follows:

"Article 2 - Definitions

…

(c)   Serious Catastrophic Illness: It is defined as the illnesses listed in the Special Coverage by the Health Insurance Administration, as amended from time to time, which currently includes the following serious illnesses: (1) Acquired Immune Deficiency Syndrome (AIDS); (2) Tuberculosis; (3) Leprosy; (4) Lupus; (5) Cystic Fibrosis; (6) Cancer; (7) Hemophilia; (8) Aplastic Anemia; (9) Rheumatoid Arthritis; (10) Autism; (11) Post Organ Transplant; (12) Scleroderma; (13) Multiple Sclerosis; (14) Amyotrophic Lateral Sclerosis (ALS); and (15) Chronic Kidney Disease at levels 3, 4, and 5. In addition, it shall include bleeding conditions similar to Hemophilia."

Section 27 - Severability

This Act shall be interpreted in accordance with the Constitution of Puerto Rico and the Constitution of the United States of America. If any clause, paragraph,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

24

subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading, or part of this Act is annulled or declared unconstitutional, the order to such effect issued shall not affect, impair or invalidate the remainder of this Act. The effect of said order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading, or part thereof that has been annulled or declared unconstitutional. If the application to a person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, subheading, or part of this Act should be invalidated or declared unconstitutional, the resolution, ruling, or judgment to such effect issued shall not affect or invalidate the application of the remainder of this Act to those persons or circumstances to which it may be validly applied.

Section 28 - Precedence

The provisions of this Act shall prevail over any other provision of law, regulation, or rule that is not aligned with them.

Section 29 - Applicability and Validity

This Act shall become effective thirty (30) days after being passed. However, employers who are considered micro-enterprises or small and medium-sized businesses, as these terms are defined in subsections (4), (5), and (6) of Article 2 of Act 62-2014, as amended, shall have a period of ninety (90) days to implement the provisions of this Act.

[signed]                                                    [signed]
*President of the Senate*                          *Speaker of the House*

Approved on June 20, 2022

[signed]

Governor

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*6/JULY/2022 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



T 718.384.8040
W TargemTranslations.com
E projects@targemtranslations.com
A 185 Clymer St. Brooklyn, NY 11211

## TRANSLATOR'S CERTIFICATE OF TRANSLATION

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: **Ley 41-2022**

Signed this 6th of July 2022

_____

Andreea I. Boscor

