# Exhibit 30



**FINANCIAL OVERSIGHT & MANAGEMENT BOARD**
**FOR PUERTO RICO**

David A. Skeel, Jr.
Chair

Members
Andrew G. Biggs
Arthur J. González
Antonio L. Medina
John E. Nixon
Justin M. Peterson
Betty A. Rosa

**BY ELECTRONIC MAIL**

July 30, 2022

Hon. Omar J. Marrero Díaz
Executive Director
Puerto Rico Fiscal Agency and Financial Advisory Authority

Dear Mr. Marrero Díaz,

We write in response to your letter dated July 22, 2022 regarding Act 41-2022 ("Act 41" or the "Act"), formerly known as House Bill 1244 ("HB 1244" or the "Bill"). Act 41, among other things, repeals portions of the Puerto Rico Labor Transformation and Flexibility Act (the "LTFA" or "Act 4-2017") and other labor laws, thus on its face imposing increased expenses for employment and termination of employment. Act 41 will likely reduce (i) GNP growth, (ii) revenues forecasted in the Fiscal Plan, and (iii) revenue savings set forth in the Plan of Adjustment, as the Oversight Board's economist has determined.

By letter dated June 13, 2022, the Oversight Board advised the Governor it had determined the Bill would impair or defeat PROMESA's purposes for many reasons explained in the letter and prior correspondence. Accordingly, it notified the Governor that PROMESA Section 108(a)(2) barred the Governor from signing it into law. Contrary to the statutory prohibition in Section 108(a)(2),[1] and contrary to the First Circuit's expressed hope the Commonwealth and the Oversight Board would work together to avoid litigation,[2] the Governor signed Act 41 into law knowing he would be powerless to prevent its implementation and enforcement because it regulates private employer relations with private employees.

---

[1] As you know, United States District Judge Laura Taylor Swain, in accordance with the plain language of Section 108(a)(2), has consistently ruled that when the Oversight Board makes a proper negative Section 108(a) declaration, "Section 108(a) serves as a restraint on territorial officials," *In re Financial Oversight and Management Board*, 583 B.R. 626, 634 (D.P.R. 2017), and "triggers a statutory prohibition on the Government to go forward with the targeted statute, resolution, policy, or rule…" *Vazquez Garced v. Financial Oversight and Management Board*, 511 F. Supp. 3d 90, 134 (D.P.R. 2020).

[2] *Pierluisi v. Financial Oversight and Management Board for Puerto Rico*, 37 F.4th 746 n. 23 (1rst Cir. 2022).

PO Box 192018 San Juan, PR 00919-2018; www.oversightboard.pr.gov; comments@promesa.gov

Mr. Marrero Díaz
July 30, 2022
Page 2 of 5

Your letter provides Act 41 can only be stopped by a court order or new legislation. If the Governor is willing to comply with Section 108(a)(2) and to be collaborative, please advise the Oversight Board whether the Governor will promptly consent to a simple order suspending Act 41 while the parties further discuss the issues. At the end of those discussions, if the Governor and the Oversight Board do not agree on a resolution, then the Governor can make his case to the Title III Court that the Oversight Board's determinations violated PROMESA. That is the correct procedure under PROMESA whereby the Oversight Board's negative determination triggers the statutory bar of Section 108(a)(2) and the Governor can challenge in court the Oversight Board's determination without violating PROMESA (by enacting and implementing the legislation).

Instead, the Governor violated PROMESA by enacting and implementing Act 41 in disregard of the statutory prohibition. Absent a consent order suspending Act 41 while the parties discuss the issues, the Oversight Board will have no choice, as you point out, other than to commence an action to nullify the statute and to seek other appropriate relief to deter future violations.

The Oversight Board hopes the Governor will immediately agree to consent to the order described above. If the Governor does not do so, he will be creating an extremely difficult situation for employers and employees acting under a law subject to nullification, while impairing the Commonwealth's ability to achieve the growth and revenue requirements in the certified Fiscal Plan and Plan of Adjustment.

In addition to violating PROMESA Section 108(a)(2), the Governor has failed to comply with PROMESA Section 204. Before getting into the specifics, however, we cannot accept your premise that assessing Act 41 is a complex and potentially undoable project. Facially, Act 41 imposes on businesses additional expenses for employment and termination which obviously deters new hiring and investment. Moreover, the Oversight Board's economist has determined not only that estimating the economic impact of Act 41 is feasible, but also that Act 41 will have a significant negative impact on the Fiscal Plan, including a reduction in GNP growth and tax revenues.

On June 29, 2022, the Oversight Board received the Government's initial PROMESA Section 204(a) submission for Act 41 (the "Initial Submission"). Following its review of the Initial Submission, the Oversight Board sent a letter on July 19, 2022, notifying you (as well as the Governor and legislative leadership) pursuant to PROMESA Section 204(a)(3) that the Governor had failed to submit the required certification and formal estimate for Act 41. The Oversight Board's letter identified specific deficiencies in the Initial Submission, including that the Initial Submission failed to provide (*i*) a complete estimate of the Act's impact on revenues, (*ii*) a formal estimate by "an appropriate entity of the territorial government with expertise in budgets and financial management," and (*iii*) the required certification finding the Act is or is not "significantly inconsistent with the Fiscal Plan."

On July 22, 2022, the Oversight Board received additional information from AAFAF (the "Supplemental Submission" and, together with the "Initial Submission," the "Submissions"), accompanied by a letter responding to the Oversight Board's July 19 notification. After reviewing your letter and the Supplemental Submission, the Oversight Board finds the Government has not remedied the deficiencies in the Initial Submission.

Mr. Marrero Díaz
July 30, 2022
Page 3 of 5

Specifically, the Supplemental Submission does not provide a formal estimate of the impact Act 41 "will have on expenditures *and revenues*." As you have been previously informed, the Initial Submission only included a cost estimate for the Puerto Rico Department of Labor and Human Resources ("Department of Labor") to evaluate certain related regulations but made no mention of the impact of the Act on revenues. The Supplemental Submission similarly fails to mention, much less analyze, the Act's impact on Commonwealth revenues. Instead, the Supplemental Submission merely indicates the Department of Labor's estimated costs should be revised slightly downward.[3] As described more fully in the Oversight Board's July 19, 2022 letter, the complete and formal estimate required by PROMESA must include an analysis of the Act's impact on Commonwealth revenues.[4] Moreover, as previously explained, the Governor's certification must declare a conclusion – that the Act is, or is not, significantly inconsistent with the Fiscal Plan. The Governor's Submissions fail to do so.

These requirements should come as no surprise to the Government. The Oversight Board has repeatedly guided the Government that the analysis required by PROMESA should be conducted prior to a law's enactment. Additionally, in the Oversight Board's letters to the Government prior to the enactment of then-HB 1244, the Oversight Board reminded the Government of PROMESA's requirement that the Government analyze the impact of the proposed law on Commonwealth revenues. Not only is this consistent with best practices for the Legislature, but it is necessary to ensure that the Government can meet the seven business-day deadline set by PROMESA. Waiting until after laws are enacted to prepare and share the Government's analysis of the laws has led to deficient Section 204(a)(1) estimates and erroneous certifications. The Government's failure to provide this formal estimate, and statements in your letter about the challenges of developing such an estimate, make it apparent that the Government has conducted no such analysis and therefore has no understanding of the impact Act 41 will have on Commonwealth revenues supported by anything other than speculation and "hope."

As such, the Government has still failed to comply with the requirements of Section 204(a).

To be clear, the Oversight Board's objections to the Submissions are not "policy disagreements." The Oversight Board has outlined specific concerns that Act 41 will negatively impact the revenues of the Commonwealth based on an *economic* analysis. This economic analysis does not reflect any ideological view regarding a government's involvement in the labor market. In contrast, the Government's expectations of the impact that Act 41 will have on revenues and the

---

[3] In addition to failing to address revenues, the Supplemental Submission ignores the Oversight Board's stated concerns about the agency making certifications with respect to Act 41. As we noted in our July 19, 2022 letter, the Department of Labor does not appear to be "an appropriate entity of the territorial government with expertise in budgets and financial management." PROMESA Section 204(a). Even if the Department of Labor were such an entity, the estimate focuses only on the costs to the Department of Labor and does not purport to evaluate the costs to the Commonwealth as a whole or the impact on revenues.

[4] As noted in the Oversight Board's letter, while the Initial Submission included a purported PROMESA Section 204(a) certification, AAFAF did not certify whether Act 41 is or is not significantly inconsistent with the Fiscal Plan. The Supplemental Submission similarly did not contain a certification as required by PROMESA, but like in the Initial Submission, presents a Department of Labor certification stating that, based only on its assessment of the impact of the Act on *that agency*, it is not significantly inconsistent with the Fiscal Plan. For reasons set forth in our July 19, 2022 letter, the Government has not met the certification requirements of Section 204(a).

Mr. Marrero Díaz
July 30, 2022
Page 4 of 5

labor market lack the necessary economic analysis required by PROMESA. Moreover, the absence of any economic analysis of the impact of Act 41 effectively prevents the Oversight Board from evaluating the merits of the Government's position. Moreover, it confirms to the Oversight Board that the impacts apparent from the face of the Act and summarized above are likely correct.

While the Oversight Board recognizes it is difficult to fully model all economic impacts of the Puerto Rico labor market, the Oversight Board is not demanding the Government do anything other than what PROMESA demands—which is to prepare a formal estimate "of the impact, if any, that the law will have on expenditures and revenues." PROMESA Section 204(a)(2)(A). And while you contend there are challenges in conducting such an analysis, that does not justify the passage of a law impacting the entire private sector workforce without any firm understanding of the law's impact on the Commonwealth's revenues. Rather, the absence of an informed understanding of the Act's impact on the Commonwealth's revenues should have caused the Government to pause and take the time to assess the Act to assure its passage would not have negative fiscal consequences. This practice of passing laws without regard to, or understanding of, the economic consequences is part of what caused the Island's current fiscal crisis.

In your letter, you request to see the Oversight Board's analysis of the Act. We declined to provide this analysis initially as it is the Government's burden under PROMESA to provide a formal estimate and the Government is obligated to do the work necessary to understand the impact of the Act. However, as it is now clear the Government is unable and/or unwilling to do that work, we have attached a power point presentation from Dr. Robert Triest that he presented to the Oversight Board earlier today. This presentation addresses the economic impact of Act 41 on, among other things, the Fiscal Plan and the Commonwealth's revenues. Dr. Triest's presentation takes into consideration the materials that the Governor and AAFAF have provided to the Oversight Board, including the materials attached to your letter dated July 22, 2022.

The Oversight Board is mindful of the urgency of this matter and the need for stability in the private labor market. Accordingly, if the Government has an informed differing view from the Oversight Board's economist or the Government possesses any economic report regarding Act 41, please provide such a report to the Oversight Board no later than Thursday, August 4, 2022.[5]

The Oversight Board remains deeply concerned the Governor signed Act 41 in violation of PROMESA Section 108(a)(2) while knowing he could not stop its implementation. We provide a solution at the outset of this letter and hope the Governor will agree to it. Kindly advise us of the Governor's response to the proposal to a consent order suspending Act 41 no later than August 4, 2022. If the Governor does not cooperate, he leaves the Oversight Board with a single option you identified, namely an action to nullify Act 41. The Oversight Board reserves the right to take all actions it deems necessary, consistent with PROMESA Sections 104(k), 108(a), and 204 . We hope such actions will be unnecessary.

---

[5] Please note that in the interest of expediency, we have not responded to all of the points made in your letter. The Oversight Board's silence on those matters—such as the import of the Legislature's stated purpose of Act 41—should not be viewed as agreement with the Government's positions.

Mr. Marrero Díaz
July 30, 2022
Page 5 of 5

We look forward to continuing to work together for the benefit of the people of Puerto Rico.

Sincerely,

*David Skeel*

David A. Skeel, Jr.

CC: Hon. Pedro Pierluisi Urrutia
      Hon. José Luis Dalmau Santiago
      Hon. Rafael Hernández Montañez