# Exhibit 35



# FINANCIAL OVERSIGHT & MANAGEMENT BOARD
## FOR PUERTO RICO

Members
Andrew G. Biggs
Arthur J. González
Antonio L. Medina
John E. Nixon
Justin M. Peterson
Betty A. Rosa

David A. Skeel, Jr.
Chair

**BY ELECTRONIC MAIL**

August 23, 2022

Hon. Omar J. Marrero Díaz
Executive Director
Puerto Rico Fiscal Agency and Financial Advisory Authority

Dear Mr. Marrero Díaz,

We write in response to your letter dated August 4, 2022 regarding Act 41-2022 ("Act 41" or the "Act"), formerly known as House Bill 1244.  Act 41, among other things, repeals portions of the Puerto Rico Labor Transformation and Flexibility Act of 2017 and other labor laws.

As described in our prior correspondence, the Oversight Board received the Government's initial PROMESA § 204(a) submission for Act 41 on June 29, 2022, and on July 22, 2022, the Oversight Board received from AAFAF additional information concerning the Act.  In the Oversight Board's letters to you, the Governor, and the Legislature, the Oversight Board identified specific deficiencies in the Government's § 204(a) submissions.[1]  Those deficiencies have not been remedied by your August 4, 2022 letter.

The Oversight Board has repeatedly reminded the Government that PROMESA § 204(a) requires the Government to analyze new laws and formally estimate the impact, if any, the legislation will have on Commonwealth revenues and expenditures.[2]  Even prior to the enactment of Act 41, the

---

[1] *See* July 19, 2022 Letter from the Oversight Board to AAFAF; July 30, 2022 Letter from the Oversight Board to AAFAF at 2-3.

[2] *See* July 30, 2022 Letter from the Oversight Board to AAFAF at 3; June 26, 2022 Letter from the Oversight Board to AAFAF at 1; June 13, 2022 Letter from the Oversight Board to AAFAF at 3; *see also Pierluisi v. Fin. Oversight & Mgmt. Bd. For P.R. (In re Fin. Oversight & Mgmt. Bd. For P.R.)*, 37 F.4th 746, 752 (1st Cir. 2022) (the formal estimate requirement in PROMESA entails "a complete and accurate estimate covering revenue and expenditure effects of new legislation over the entire period of the fiscal plan"); *Vázquez Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 511 F. Supp. 3d 90, 126–27 (D.P.R. 2020), aff'd, 37 F.4th 746 (1st Cir. 2022) (holding that the Government must present an estimate "that is sufficiently informative and complete" to satisfy § 204(a)'s formal

Mr. Marrero Díaz
August 23, 2022
Page 2 of 5

Oversight Board advised the Government of the Oversight Board's concerns about the Act's negative impact on Commonwealth revenues and the Fiscal Plan, and made extensive proactive efforts to engage with the Government on Act 41 to avoid the precise situation we face today.

Unfortunately, instead of engaging in substantive analysis and discussions about the Act prior to its enactment, the Government enacted a law that impacts every private employer in Puerto Rico without understanding its fiscal impact, in violation of PROMESA. Indeed, even months after the Oversight Board shared its concerns about the Act, the Government has still failed to prepare and provide a formal—or even informal—estimate of the Act's impact on revenues, as required by PROMESA. Absent such an analysis, which the Oversight Board has repeatedly requested, and the Government has failed to provide, the Government has no basis to draw any conclusions about the Act's impact on Commonwealth revenues and expenditures. As such, the Government cannot certify under PROMESA that Act 41 is not significantly inconsistent with the certified Commonwealth Fiscal Plan (the "Fiscal Plan").

In contrast, while the Government failed to satisfy its obligations, the Oversight Board conducted its own analysis of Act 41 and shared that analysis with the Government in an effort to spark a constructive dialogue with the Government.

On July 30, 2022, the Oversight Board provided (another) detailed explanation of its concerns and a summary of the findings of Dr. Robert Triest, the economic expert it engaged to assess the fiscal impact of the Act.[3] Hoping for a constructive dialogue, the Oversight Board asked for information from the Government, including data or analysis supporting the Government's positions or challenging the conclusions of Dr. Triest. The Oversight Board requested this information so it could fully understand the Government's views and the basis for those views. Regrettably, aside from a few comments regarding Dr. Triest's analysis, to which we respond below, your letter dated August 4, 2022 did not provide the requested information.

For example, your letter provides no support for the Government's assertion that Act 41's provisions will "translate into potential greater consumer spending and increased revenue for the Government." Your letter provided no data, statistics, economic studies, logic, or other information to support your statement. Your letter made no mention of an economist or other validation of your view. Moreover, your letter admits the Government has not conducted an economic analysis of Act 41's impact on revenues, contending such an analysis is too "complex

---

estimate requirement). Such estimates must be prepared within seven business days of a new law's enactment, but for reasons we have repeatedly shared, such analyses should be conducted prior to a law's enactment to avoid disputes such as the one we now have related to Act 41.

[3] To be clear, Dr. Triest's presentation shared on July 30, 2022 accurately reflects the results of his analysis and is consistent with the information he has presented to the Oversight Board throughout the Oversight Board's deliberations regarding the Government's proposed and enacted labor reform legislation, including HB 3-2022. The suggestion in your letter that Dr. Triest only recently provided the Oversight Board insights and analyses regarding the Government's labor reform efforts is simply erroneous. The presentation provided on July 30, 2022 incorporated his prior assessments, as well as his analysis of the Government's § 204(a) submission.

Mr. Marrero Díaz
August 23, 2022
Page 3 of 5

and difficult."[4]  Instead, your letter proposes a "wait and see approach," and proposes to conduct a post-implementation analysis at some undisclosed time and with an undefined methodology.

Your letter goes on to propose that when negative effects are detected, the Oversight Board could adjust the Fiscal Plan to account for the Act's negative effects on the labor market and the Commonwealth's revenues.[5]  This approach turns PROMESA on its head and is contrary to PROMESA's purpose of achieving fiscal responsibility.  New laws must fit within the Fiscal Plan, not vice versa.  Revising the Fiscal Plan's estimates whenever the Government passes fiscally irresponsible laws—or laws directly conflicting with the Fiscal Plan reforms—will not set Puerto Rico on a path to fiscal responsibility, but rather will set it on a course to repeat the mistakes of the past.

Then, instead of providing an analysis, your letter criticizes Dr. Triest's report, focusing on his reliance on a World Bank research paper and supposedly inapposite reports posted on the Oversight Board's website.[6]  As evidenced by the appendix to the analysis, Dr. Triest references a number of studies.  He does not rely on any one study, and his analysis does not rely solely on those studies.

Moreover, the Government's concern about Dr. Triest's reliance on the World Bank research paper is misplaced.  Your letter provides no basis for the Government's statement that this research paper is "inapposite" in the context of Act 41.  In fact, it is common practice in academia, and among economic policy analysts, to draw broader lessons based on studies in other jurisdictions.  The World Bank research paper involves policies closely related to Act 41 and Dr. Triest's use of this prior empirical evidence to draw an informed opinion about the effects of Act 41 is a well-accepted practice in the field of economics.  Indeed, the Government acknowledges the dearth of Puerto Rico specific data, which further supports Dr. Triest's use of studies based on other countries and time periods.  Moreover, the Government has pointed to no contrary studies finding policies such as those in Act 41 had a different impact in other countries.

---

[4] The Government's characterization of the fiscal impact of Act 41 as "Indirect Effects" is misleading at best.  Act 41 will have an immediate effect on employment, economic growth, and Commonwealth revenues.  Dr. Triest's analysis, and common sense, show that by increasing employers' costs and restrictions, Act 41 will negatively impact job creation and employment across public and private sectors alike.  And that is because workers move freely between the public- and private-sector labor markets, and changes to the baseline expectations in one segment of the labor market impact expectations in the other segment.  In the case of Puerto Rico, even broader impacts to employment prospects and outmigration are likely because workers can also move between the Island and the mainland United States.

[5] August 4, 2022 Letter from AAFAF to the Oversight Board at 1-2.

[6] The Oversight Board strongly disagrees with the Government's characterization of Dr. Triest's presentation as a "polemic piece" and maintains that the presentation and Dr. Triest's analysis are reasoned, economic assessments of Act 41.  The Government declined to "engage in a point-by-point analysis and refutation of [Dr. Triest's analysis]" and has not offered a substantive basis to support its allegation.

Mr. Marrero Díaz
August 23, 2022
Page 4 of 5

Further, contrary to the Government's suggestion, Dr. Triest's analysis is consistent with the documents posted on the Oversight Board's website.[7] For instance, the "Stakeholders' Plan for Achieving the Puerto Rico 2025 Vision" recommends reducing "excessive regulations" and costs on small and medium sized firms to stimulate growth and generate new employment.[8] Similarly, the "Report on the Competitiveness of Puerto Rico's Economy" prepared by the Federal Reserve Bank of New York recommends "reducing barriers to job creation and labor force participation."[9]

The Oversight Board has provided the Government, or the Government already possesses,[10] the information and data that support the Oversight Board's analysis. In contrast, the Government has not provided an alternative analysis and has failed to support its assertions about the impact of Act 41. The Oversight Board has made its position clear: (*i*) Act 41 contradicts the clear requirements of the Fiscal Plan; (*ii*) the Government has not provided the formal estimate required by PROMESA § 204; (*iii*) the Government has not certified, and cannot certify, that Act 41 is not "significantly inconsistent" with the Fiscal Plan; (*iv*) Act 41 facially increases employment costs which diminishes new investment and employment in Puerto Rico, and (*v*) the Oversight Board has determined Act 41 impairs or defeats the purposes of PROMESA.

The Oversight Board reexamined those conclusions in light of the positions put forth in your August 4, 2022 letter, even though your letter provided no meaningful substantive information to support the Government's positions. To ensure it fully considered the Government's positions, the Oversight Board engaged Dr. Triest to examine your letter and evaluate whether your letter caused him to alter his assessments of Act 41 as set forth in his presentation dated July 29. Dr. Triest presented his findings and conclusions concerning the statements in your August 4 letter to the Oversight Board on August 12, 2022, assessing the Government's contentions and critiques in your August 4 letter.

In summary, Dr. Triest concluded: (*i*) the Government's August 4 letter did not offer any new evidence to change his economic analysis, and (*ii*) the Government's assertions in the letter did not change his economic analysis. First, Dr. Triest concluded that while estimating the economic impact of Act 41 is challenging, it is both important and feasible. Second, Dr. Triest reiterated his initial analysis of the Act's economic impact—decreased Commonwealth revenues and declining gross national product ("GNP")—and concluded the Government has the prior economic studies, data, and time necessary to conduct a similar analysis of Act 41. With respect to the Government's proposal to implement the Act and then assess its economic effects, Dr. Triest found such an approach would be economically imprudent because economic best practices require pre-implementation analysis so the negative effects on employment opportunities, economic growth, and Government revenues will not be realized. Dr. Triest also concluded the Government's

---

[7] The Government criticizes Dr. Triest for not relying on such materials, but does not identify what information in such materials is contrary to his findings.

[8] Puerto Rico 2025, *Stakeholders' Plan for Achieving the Puerto Rico 2025 Vision* at 29, 41.

[9] Federal Reserve Bank of New York, *Report on the Competitiveness of Puerto Rico's Economy* at 19.

[10] In fact, the Government has excellent access to relevant data and studies that would provide the basis for the economic analysis required by PROMESA. It has chosen not to engage in such an analysis.

Mr. Marrero Díaz
August 23, 2022
Page 5 of 5

contention that Act 41 "should not have a direct or immediate effect on the Government's revenues and expenses" because it "regulates private employer relations with private employees," is unfounded. He referred to his prior analysis describing the Act's negative impacts and the key role the 2017 labor reforms play in the Fiscal Plan's economic projections. Dr. Triest concluded his analysis was relevant and reliable because it was based on, among other things, historical empirical studies and the Fiscal Plan model. He also concluded that his analysis was consistent with the consensus of studies previously provided by the Oversight Board. As a practical matter, increasing employment expense has to diminish net income and revenue from corporate income taxes.

Following Dr. Triest's presentation, the Oversight Board passed a resolution confirming its prior determinations regarding Act 41, and authorizing legal action to nullify the Act.[11] In our July 30, 2022 letter, we offered an approach to avoid litigation; namely, to consent to a simple order suspending Act 41 while the parties further discuss the issues raised by Act 41. Although the Government has rejected this approach, we ask you reconsider and let us know immediately if the Government has changed its position.

Sincerely,

*David Skeel*

David A. Skeel, Jr.

CC: Hon. Pedro Pierluisi Urrutia
      Hon. José Luis Dalmau Santiago
      Hon. Rafael Hernández Montañez

---

[11] The Oversight Board reserves the right to take such actions as it deems necessary, consistent with §§ 104(k), 108(a), and 204 of PROMESA, including seeking remedies to prevent implementation and enforcement of Act 41 as well as to have the law nullified.