IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br> Debtors. | PROMESA Title III <br><br> No. 17 BK 3283-LTS <br> (Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> HON. PEDRO PIERLUISI URRUTIA, in his official capacity as Governor of Puerto Rico, <br><br> Defendant. | Adv. Proc. No. 22-00063-LTS <br> in 17 BK 3283-LTS |

**MOTION FOR LEAVE TO FILE AMICI CURIAE BRIEF
BY THE PUERTO RICO RETAILERS ASSOCIATION, ET AL**

**To the Honorable United States District Judge Laura Taylor Swain:**

COMES NOW The Puerto Rico Retailers Association ("ACDET", for its acronym in Spanish) and nine (9) other *amici*, and respectfully request leave to file an *amici curiae* brief in support of the captioned complaint (Doc#:22031), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), to (1) nullify Act 41-2022 (hereinafter, "Act 41"); (2) permanently enjoin Defendant from taking any acts to help private parties implement Act 41; and (3) obtain further relief as the Court finds just and proper.

The *amici* filing this appearance are:[1]

---

[1] Attached, as Exhibit 1, is a brief disclosure and description of each of the appearing *amici*.

1. The Puerto Rico Retailers Association ("ACDET", for its acronym in Spanish)
2. Restaurants Association of Puerto Rico ("ASORE", for its acronym in Spanish)
3. Puerto Rico Marketing, Industry and Food Distribution Chamber ("MIDA", for its acronym in Spanish)
4. Puerto Rico Hotel & Tourism Association ("PRHTA")
5. Puerto Rico Hospital Association ("AHPR")
6. The Puerto Rico Association of Automobile Distributors and Dealers ("PRADA" for its acronym in Spanish)
7. Asociación Hecho en Puerto Rico, Inc. ("AHPR")
8. The Puerto Rico Chamber of Commerce ("CCPR")
9. The Puerto Rico Manufacturers Association ("PRMA")
10. Puerto Rico Builders Association ("PRBA")

All of *amici* are nonprofit, nonpartisan organizations that maintain among their primary functions the representation of the interests of their business members in matters before Puerto Rico's Executive Branch, the local Legislature and, when appropriate, the courts. Their missions include the promotion and protection of the rights of their members to own, operate, and grow their businesses. Collectively, their membership includes employers in the retail trade; accommodations, food services; health care, professional, scientific and technical services; wholesale trade; manufacturing; finance and insurance, real estate and rental leasing; transportation and warehousing; educational services; information; arts, entertainment and recreation and management of companies and enterprises. As such, their membership is comprised by employers operating in essentially all private sector businesses in Puerto Rico.[2]

*Amici* and their members have a strong interest in this case, as they are concerned that Act 41 imposes a host of new costs, requirements, operational burdens, and monetary exposures on its employer member that:

1. *discourage* hiring new employees;

---

[2] See, U.S. Small Business Administration, Office of Advocacy, 2022 Small Business Profile- Puerto Rico.

2. *increases* total labor costs (by granting vacation and sick leave benefits to *part time* employees, who prior to Act 41 were not entitled to such compensation while being absent from work);

3. *potentially increases unscheduled absenteeism* of part time employees who under the Act 41 will now have available sick leave day accruals from the first month of employment;

4. *increases* labor costs by *eliminating* the phased-in periods established under Act 4-2017 (known as the *Labor Transformation and Flexibility Act* or the "LTFA") for increases in monthly paid vacation leave accruals for all employees hired after January 26, 2017;[3]

5. *increases* labor costs for hiring new employees by granting them vacation leave entitlements from the *first month* of employment (and not, as previously required, after six months of employment);

6. *reduces* the permissible probationary period utilized to evaluate a new employee's performance, before exposing the employer to the significant monetary penalties required by Puerto Rico's wrongful discharge statute (hence making terminations more difficult and costly); [4]

7. *virtually eliminates* the possibility of creating new job opportunities under extended or subsequent temporary or term employment contract agreements without being exposed to Puerto Rico's wrongful discharge statute if the temporary

---

[3] Act 4 became effective on January 26, 2017.

[4] Act 80 of May 30, 1976, as amended ("Act 80" or "Law 80"). While prior law established an automatic probationary period of nine (9) months for hourly employees and twelve (12) months for exempt (non-hourly) employees, Act 41 *reduces* the probationary period to three (3) months, which can only be extended for an additional three (3) months, provided the employer makes an appropriate filing with the Puerto Rico Secretary of Labor and Human Resources, pursuant to the Secretary's requirements.

3

or term contract is not renewed (or, at a minimum, Act 41 creates legal uncertainty as to the availability of such form of hiring new employees without being subjected to Act 80's monetary exposure);

8. *lowers* the yearly hours-worked threshold required to trigger the obligation to pay a yearly Christmas bonus for employees who were not previously entitled to same;[5]

9. *increases* the Christmas bonus amount for employees hired after January 26, 2017, who earn *less* than $30,000 a year;[6]

10. *increases* the monetary penalties under Puerto Rico's wrongful discharge statute (Act 80) if an employer terminates an employee, and therefore, Act 41 has a *chilling effect* of management's ability to supervise and evaluate its employees;[7]

11. establishes a *presumption* that all job terminations[8] are unjustified and in violation of Puerto Rico's wrongful discharge law and, therefore, restricts management's ability to evaluate its employees, due to the exposure to draconian termination payments;

12. *eliminates* the nine (9) month cap on the wrongful discharge monetary penalty, thus increasing monetary exposure in all job terminations;

---

[5] Pre-Act 41, employees hired after January 26, 2017 were required to work at least 1,350 hours in the year in order to be entitled to the mandatory yearly bonus. Act 41 lowers the threshold to 700 hours. This, in effect, increases the real hourly labor cost of such part time employees.

[6] Act 41 accomplishes this by modifying the formula to be used in computing the legally required annual bonus.

[7] Apart from increasing the incremental monetary penalty based on years of service, Act 41 *eliminates* the nine months of salary cap that was established under the LTFA (Act 4).

[8] This adverse *presumption* applies to all job terminations, including those due to poor performance, lack of competence, economic workforce reductions, reorganizations and closing of an establishment.

13. *creates an enhanced risk* in employment decisions, by establishing that any "unjustified" act of the employer, including job terminations, will also be deemed discriminatory under Puerto Rico's employment discrimination laws;[9]

14. *increases* monetary exposure when market conditions require employers to reduce workforce levels, because it repeals many provisions in Puerto Rico's wrongful discharge law that provided specific guidance and flexibility for job retention rules in the employment termination process;[10]

15. *fosters a negative incentive for job creation*, since each hiring entails the potential future risk of a job termination;

16. *discriminates* against employers in alleged wrongful discharge cases, by establishing a mandate that courts require the defendant employer to deposit with the court the entire amount of the Act 80 claim, without any pretrial adjudication of the probability of success of the action or as to the accuracy of the penalty amounts alleged in the complaint;

17. *exposes employers to greater monetary risks* by extending the time period for the filing of all local wage and employment law claims from one (1) year to three (3) years.

By increasing the costs, uncertainties, and risks associated with creating new jobs and hiring new employees, it is self-evident Act 41 can only discourage employers from hiring new employees and expanding their businesses. Moreover, the increases in mandatory marginal benefits (vacation leave; Christmas bonus) for employees hired after January 26, 2017, imposes

---

[9] Puerto Rico employment discrimination laws impose a penalty equal to double the total damages suffered.

[10] Such increased inflexibility places Puerto Rico in a regulatory disadvantage and tends to reduce the incentive for new hires.

additional labor costs on employers and can reasonably be expected to negatively impact levels of employment.

*Amici* recognizes the Oversight Board's complaint has identified several provisions of Act 41 that discourage new job creation; will reasonably reduce employment and labor force participation; negatively impacts investment; reduces overall economic growth, and, ultimately, reduces Commonwealth revenues. However, to a significant extent the Oversight Board's complaint emphasizes the procedural infirmities of Act 41 which require the invalidation of the statute.

In turn, *Amici* believe that the analysis to be presented in their brief will provide important context for the invalidation of Act 41 and justify an expedited injunction against the enforcement of same. Moreover, the brief will shed light on the practical adverse effects of Act 41 on businesses operating in Puerto Rico. Such an analysis will provide unique information or perspective that can help the court *beyond* the Oversight Board's discussion on (i) how Act 41 was enacted in violation of the 2022 certified Commonwealth Fiscal Plan (the "2022 Fiscal Plan"); (ii) impairs and/or defeats the purposes of the Puerto Rico Oversight, Management, and Economic Stability Act,[11] and (iii) failed to comply the requirements of PROMESA.

This Honorable Court, as well as the Court of Appeals for the First Circuit, regularly have granted leave to file *amicus* briefs by persons, groups or associations whose members are affected by the Government of Puerto Rico's legislation or actions in proceedings challenged by the Oversight Board. See, e.g., *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico* (October 13, 2021, D.P.R. 2021), 634 B.R. 187 n. 5, 2021 WL 4768715, 17-BK-3283-LTS, AP 21-00072-LTS; *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 511 F. Supp. 3d 90, 98 n4 (D.P.R. 2020), *aff'd*, 37 F.4th 746 (1st Cir. 2022); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 403 F. Supp. 3d 1,

---

[11] 48 U.S.C. §§ 2101-2241 ("PROMESA").

5 n. 3 (D.P.R. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 361 F. Supp. 3d 203, 216 n. 8 (D.P.R.), *judgment entered*, 366 F. Supp. 3d 256 (D.P.R. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 330 F. Supp. 3d 685, 688 n.4 (D.P.R. 2018), *aff'd and remanded*, 945 F.3d 3 (1st Cir. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 330 F. Supp. 3d 685, 688 n.3 (D.P.R. 2018), *aff'd and remanded*, 945 F.3d 3 (1st Cir. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 37 F.4th 746, 749–50 (1st Cir. 2022); *Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 35 F.4th 1, 4–5 (1st Cir. 2022); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 989 F.3d 170, 172 (1st Cir. 2021); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 927 F.3d 597, 599 (1st Cir. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 641 (1st Cir. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121, 123, 132 (1st Cir. 2019); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 914 F.3d 694, 701,703 n.2 (1st Cir. 2019).

A district court exercises wide discretion in deciding whether to grant or deny leave to file an amicus brief. *United States v. Keleher*, 475 F. Supp. 3d 80, 83 (D.P.R. 2020) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

The *Amici* have a special interest that justifies having a say in this case. *Strasser v. Doorley*, 432 F.2d at 569 (1st Cir. 1970); *Vernet v. Serrano-Torres* (D.P.R. May 29, 2012), 2012 WL 13170257, at 3. The *amici* brief is desirable, and its assertions are relevant to this dispute. First, the *amici* brief will provide the Court with additional information, not supplied by the parties, regarding the practical impact of Act 41. Second, since the parties may be focused on the procedural deficiencies of Act 41, the arguments pertaining to the negative consequences of Act 41 on the ability to do business and create jobs in Puerto Rico, may receive diminished consideration by the parties.

Because the implications of Act 41's mandates for businesses operating in Puerto Rico are severe, *amici* seek to represent the interests of their members in this proceeding. Accordingly, the Court is respectfully requested to grant the appearing *amici* leave to file an *amici* brief in this dispute.

In San Juan, Puerto Rico, this 8th day of September, 2022.

IT IS HEREBY CERTIFIED that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to plaintiff's counsel.

Respectfully submitted,

*Counsel for Amici Curiae* The Puerto Rico Retailers Association; Restaurants Association of Puerto Rico; Puerto Rico Marketing, Industry and Food Distribution Chamber; Puerto Rico Hotel & Tourism Association; Puerto Rico Hospital Association; The Puerto Rico Association of Automobile Distributors and Dealers; Asociación Hecho en Puerto Rico, Inc.; The Puerto Rico Chamber of Commerce; The Puerto Rico Manufacturers Association; Puerto Rico Builders Association.

**JORGE L. CAPÓ MATOS, ESQ.**
Metro Office Park
Metro Park 7
Street #1, Suite 204
Guaynabo, Puerto Rico 00968
Office Phone: 787-200-2729
Cel. Phone: 787-447-3706
Email: jorge@capolawoffice.com

S/Jorge L. Capó Matos
DC-PR 127706


**RAYMOND E. MORALES, ESQ.**
P.O. Box 191816
San, Juan, P. R. 00919-1816
Tel. (787) 753-5000
Fax (939) 697-6261
Cel. (787) 646-6366
E mail: remorales@remlawoffices.com

S/Raymond E. Morales
USDC PR 129408