UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,
Debtors[1]

PROMESA
TITLE III
Case No. 17-BK-3283
(LTS)

Re: ECF No.21195
ECF No.21641 and
ECF No. 22041

**REPLY TO DEBTOR'S OBJECTION TO APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE PRIORITY CLAIMS AND REQUESTING AN ORDER FOR IMMEDIATE PAYMENT FILED BY JUDGMENT CLAIMANTS IN THE LITIGATION CAPTION CARMEN SOCORO CRUZ HERNANDEZ**

To the Honorable United States District Court Judge Laura Taylor Swain:

NOW COMES the group creditors in the litigation captioned Carmen Socorro Cruz Hernandez et als v Family Department, ARV and AIJ, Case No. K AC 1991-0665, (the "Movant's"), by and through the undersigned attorney, in further support of their Motion, respectfully state, respectfully represents as follows:

### I. PRELIMINARY STATEMENT

1. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105 (a), 503 (b) (1) (A) (ii) and 507. The Motion seeks an order allowing an administrative claim in favor of the Movants who are full-time or former career employees at the Family Department, ARV and AIJ (Commonwealth agencies). As demonstrated in

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

its Motion, Movants prior to the petition date had a final judgment in their favor, entered by the CFI San Juan, in case No. K AC 1991- 0665 (the judgment"), and that is hereby adopted and incorporated to this motion by reference. [2]

2. As can be ascertained, in the CFI judgment was determined that the Family Department, ARV and AIJ violated, among others, clauses 1 and 2, of Art. 2 of Law No. 89, of June 12, 1979, as amended, 3 LP.R.A. § 760 et als. and section 4.6, clauses (2), (3), (5) (6) a d (8) of the Uniform Retribution Regulation, when made illegal wage adjustments to implement the federal minimum wage using the General Memorandum 5-86, and made the "pay scale system" inoperable.

3. To the extreme, that was determined that by 1996, the Family Department employees and of its administrations, ARV and AIJ, that where assigned to the first 19 pay scales were receiving the same salaries as janitors and workers, finding defendants jointly and severally liable, for this violations and granted all plaintiffs back pay for the unpaid portion of their monthly regular salaries, illegally withheld. Also and for calculating

4. To this date, and although the Debtor has made substantial payments of the back pay judgement, certain payments have not been cured or made to Movants as identified in Exhibit 3 of the Motion[3]. Had Movants have not provided services under their employment contract, the services rendered by the Family Department, ARV and AIJ would had been substantially impaired and affected. Accordingly, Movants should be compensated by the Commonwealth for the back pay judgement entered in their favor,

---

[2] See judgement certified translation at Docket entry No. 21487.
[3] See ECF No. 21195, where as previously noted, because the amounts owed to a significant number of claimants included in Exhibit No. 3, are $20,000.00 or less, and their claims were officially classified as "Convenience" (class 68), those claims were kept separate and were not included for the purpose of the present Administrative expense Motion, since mentioned claims under approved plan of adjustment, will be paid in full.

2

as an administrative expense claim under sub section 503(b)(1)(A) (ii), which was added by Congress as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), to respond to the public outcry for the "glaring abuses by bankrupt employers of the bankruptcy system.[4]

5. In its Objection, the Commonwealth does not dispute that Movants provided pre - petition services to the Commonwealth and that received a benefit from these services. Most notably, the Commonwealth does not contest the CFI conclusion, that Debtors obtained unjust enrichment from the services performed by Movants as regular employees, nor challenge the amount seek of unpaid regular wages that were illegally withheld. Neither challenge Debtor's cash deposits in banks and thus, failed to demonstrate as to how the payment of prepetition back pay judgement, in the amount of $384,663.76 (The "Administrative Expense Pre-petition Claim"), by reason of the operation of subsection 503(b)(1) (A)( ii), will not substantially increase the probability of layoff or termination of current employees.[5] This are relevant factual foundations, which this Court must consider in evaluating and approving Movant's Administrative expense application.

6. Instead, the Commonwealth argues without any substantive support, that Movants are not entitled to administrative expense priority for claims arising prepetition.

7. As will be shown below, the Commonwealth's contention is mistaken at several levels.

---

[4] According to Omer Kimhi, Getting More Than Justice on Paper: Bankruptcy Priorities and the crisis of unpaid wages".; Hofstra Law Review, Vol. 44 Iss. 1 (2015) at pag 113, "the problem of wage theft, the practice of denying employees the monetary compensation they rightfully deserve, has become an epidemic. It is a grave and widespread phenomenon, and some even call it the "defining tend" of the 21st century labor market. According to the author, even when employees receive a judgment in their favor, the judgment remains no more than a piece of paper, since employers avoids, or is unable to pay, the awarded back pay.
[5] See Cash Flow report dated September 3, 2021, attached to the Motion as Exhibit 5, and is made a part hereof.

8. First, because the reason stated for objecting Movants Administrative expense application is contradictory and inconsistent with the policy adopted by the Commonwealth, when filed the Title III petition, since is of public record that government agencies has continued paying pre-petition wages and benefits, to current and former employees, under the regular course of business.

9. Second, because the arguments included in the opposition are highly rhetorical and without regards to the facts, and constitutes inaccurate generalizations to mislead the Court on the correct interpretation of the subsection (A) (ii), which was added to the Bankruptcy Code in 2005, as part of the BAPCPA Amendments.

10. Also because under "[a] basic principle of statutory construction, courts should strive to interpret statutes as a whole, in order to give effect to every word and phrase and avoid a statutory interpretation that leads to "absurd results. See Maine People's All. and Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 290 (1st Cir. 2006).

11. In consequence, for the reasons set forth herein, the Commonwealth arguments are without merit. Movant's Motion for allowance of administrative expense claim should be granted.

## II. ARGUMENT

### A. STATUTORY FRAMEWORK OF BANKRUPTCY CODE'S WAGES PRIORITY SCHEME AND THE ISSUES RAISED IN THE OPPOSITION

12. As established in the Motion, Section 503 (b) (1) (A)(ii) of the Bankruptcy Code" grants administrative expense priority to wages and benefits awarded pursuant to a judicial proceeding…as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is

4

based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees.

13. According to the Oversight Board, at 6 Mot. only post-petition claims qualify for administrative expense status. This argument is mistaken for several reasons, since the Oversight Board in its Objection, puches a series of irrelevant theories to reject Movants priority expense application under case precedents that does not exist.

14. For example, the Oversight Board misleadingly argues at 2 – 3 of the Preliminary Statement and at 11 of Mot. , that this Court denied a substantially similar request for priority status, referring to the *Court* Order [ECf 20569), issued in relation of the opposition to the reconsideration Motion of the *August 4, 2021, omnibus* hearing

15. Movants objects the Oversight Board contention, since the fact on the matter is that said Order, at its most simplistic, was of limited in scope since related exclusively the "Three Hundred Forty-Fifth Omnibus Objection, which concerned to the classifications of certain claims and because that procedure was not related to an application of payment of an administrative expense.

16. Therefore, the Oversight Board's interpretation of this Court's order is not consistent with Ritzen Group Inc. v. Jackson Masonry LLC, 18-938, 2020 BL 11881 (Sup. Ct. Jan. 14, 2020), where the Supreme Court held, citing *Bullard v. Blue Hills Bank*, 575 U.S. 496 at 501 (2015) in reference to bankruptcy court orders, that it "does not matter whether the court rested its decision on a determination potentially pertinent to other disputes in the bankruptcy case." Court Orders are final only when they "definitively dispose of discrete disputes within the overarching bankruptcy case." To be final under Bullard, an order must alter the status quo and fix the rights and obligations of the parties.

5

17. Also, because the Oversight Board is mistaken, in view that nothing in the record before us suggests that the order of reference, limit or prohibit Movants to-seek administrative expense status relief, based on future developments in the case. The Oversight Board interpretation would lead to an absurd result and should be rejected.

18. Likewise, the Oversight Board at 5 Mot. when argues that neither the statutory text nor case law supports Movants request for administrative expense status, is equally mistaken. Movants submits that the Oversight assertion is wrong for several reasons.

19. First, because is in contradiction with **the** Commonwealth of Puerto Rico, policy concerning the payment of wages to employees and that adopted, when filed the Title III petition and by said policy, the Commonwealth assured a more favorable treatment to government employees during the bankruptcy process. Particularly, because was going to honor and continue paying to the employee's pre and post-petition wages, salaries and other benefits, including severance compensation under the regular course of business.[6]

20. Consequently, the Oversight Board cannot sustain its discretion or offer legal support for unilaterally exclude Movants wage claims from said payment procedure, and by the other hand, continue paying under ordinary course, pre-petition wages to other

---

[6] See Exhibit A – at schedule E of the Global Notes and Statements of limitations Methods and Disclaimers (Docket entry No. 1215-1 at page 7),
**Schedule E – Employee Obligations states**:
"34. The Commonwealth has sought to identify all employees who are or were employed by the Commonwealth or one of the Commonwealth's component units as of the Petition Date, as set forth on Schedule E. The respective employee status includes and is not limited to (a) active, (b) terminated, (c) retired, or (d) on leave.
35. Since the Petition Date, the Commonwealth has paid, and intends to continue to honor and pay, all accrued obligations for wages and salaries, including earned vacation, severance and sick-leave pay, and contributions to employee benefit plans. Accordingly, except as specifically identified elsewhere in Creditor List, the Commonwealth believes that it has satisfied or will satisfy all prepetition claims of active employees for current liabilities. The Commonwealth also continues to file and pay severance in the ordinary course.
36. Schedule E is not intended to represent claims related to retirement plans or Other Postemployment Benefits-related liabilities".

employees and ex-employees, who have not jet initiated a judicial proceeding for collection of wages, since the unfairness is obvious. In addition, because said practice creates a discriminatory treatment, that violates 11 U.S.C. sec. 1129, See In re Price, 361 B.R.68 at 79 (Banks D.N.J. 2007).

21. This arbitrary practice or conduct, by itself is sufficient reason to dismiss Debtors' opposition to Movants Administrative expense claim, since the court should apply quasi-estoppel doctrine to prevent unjust or unconscionable results." *KCI Rest. Mgmt. LLC v. Omaha Seldins (In re SVP Fin. Servs. Partners LLLP)*, No. CV-20-01502-PHX-SPL; No. CV-20-01503-PHX-SPL, 2021 U.S. Dist. LEXIS 25183, at *18-19 (D. Ariz. Feb. 9, 2021) (quoting *Birtciel v. XL Specialty Ins.*, No. 2:13-CV-02511 "precludes JWS, 2015 U.S. Dist. LEXIS 15219, at *5-6 (D. Ariz. Feb. 9, 2015). Quasi-estoppel a party from asserting, to another's prejudice, a position that is inconsistent with a previously-held position." *In re Price*, 361 B.R. at 79, "Quasi-estoppel is essentially the same [as equitable estoppel] but it does not require a showing of reliance.

22. Second, the Oversight Board theory …..that only post-petition wages qualify for administrative expense, lacks substantive support, since relies on language plucket out of cases without context and are highly misleading or the cases cited address issues regarding priority status of discharged employees seeking damages for violation of the Worker Adjustment and Retraining Notification Act (the WARN Act), and there is a fundamental distinction between WARN Act and severance payments, and the salary or wages that a workman has constructively earned by reason of services rendered as an employee, and is entitled to receive under their employment contract. Particularly,

7

because severance pay is to compensate employees, for the dislocation resulting from termination of employment, not for work performed.

23. In fact, there are only a handful of cases interpreting subsection (ii) and they are generally addressing controversies concerning "severance programs". We have found no case specifically dealing or addressing administrative expense claims of regular employees with back pay judgements against their employers.

24. As a result, the case law in which the Oversight Board rely, not only lacks precedential guidance in the matter under consideration, but also are contrary to the true spirit of subsection 503 (b) (1) (A) (ii), due to the limited perspective of the analysis, as ahead will be discussed in more detail.

25. For example, the Oversight Board rely at 8 Mot. *In re Powermate Holding Corp.*, 394 B.R. 765, 774-75 (Bankr. D. Del. 2008), to represent that the court held that back pay is "attributable" to a post-petition period. However, the Oversight Board intentionally omits that other courts have rightly rejected that reading, in subsequent cases and have convincingly demonstrated that, on the contrary, subsection (ii) provides an *additional* category of administrative claims, separate from subsection (i). *See, e.g.,* Matthews v. Truland Group., Inc. (In re Truland Group., Inc.), 520 B.R. 197 at 202-03 (2014). Also omits that the Truland court interpreting subsection 503 (b) of the Bankruptcy Code, determined that the "vesting date" is immaterial *See also Philadelphia Newspapers*, 433 B.R. at 173-74 where the bankruptcy court determined that, a back pay claim can constitute an administrative expense, even if it is awarded for services rendered before the commencement of a bankruptcy case. The Court also determined that the word "and," ties together all *nine* different categories of administrative claims,

including such diverse items as taxes, professional fees and the cost of closing a health care business. No one would suggest that Congress intended that an administrative claim satisfy all nine. See also, In re Fin. Oversight & Mgmt. Bd. for P.R. 621 B.R. 289 (D.P.R. 2020), (same).

26. Equally meritless is the Oversight Board assertion at 9 of the Mot. that *Calumet Photographic*, 2016 WL 3035468, No. 14-08893, , at *3 (Bankr. N.D. Ill. May 19, 2016) support its theory regarding how other courts has interpreted the phase "attributable" to wages and benefits that accrue in post-petition. The fact is that other courts have rejected this argument, by criticizing the Calumet court's reading of section (ii), since effectively erases the more specific language in subsection (ii) stating that it does not matter "whether any services were rendered." *See In* re Word Marketing Chicago, 564 B.R. 587 (Bankr. N.D. Ill. 2017). Also, see *Philadelphia Newspapers*, 433 B.R. at 174-75.

27. The reality and bottom line is that the Courts are split, and when have addressed whether severance pay claims are entitled to priority, often distinguish between severance pay based on length of service and severance pay in lieu of notice of termination, (pre or post-petition periods) for determining the damages calculation of severance payments. For an excellent analysis of the different treatment of damages, for violations of WARN Act and severance pay under section 503 (b) (1) (A) (ii) and 507 (a) (4) (A) see In re Ellipsat, Inc., 480 B.R.1 (Bankr. D.D.C. 2012. *See, also, In re Uly–Pak, Inc.,* 128 B.R. 763, 767 (Bankr.S.D.Ill.1991) ("The distinction between the two categories of severance pay ... has become ossified into a rule of law.").

28. Consequently, Movants submits, contrary to the Oversight Board theory, under subsection A (ii) a party may be able to hold a claim for pre-petition back pay. Particularly, because it is plain that Subsection A (ii) does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed.

29. Also because under subsection (A) (ii), administrative expenses "must be the actual and necessary costs of preserving the estate for the benefit of its creditors." *Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988). As the BAP correctly noted, because the dismiss employee (WARN Act claimants) did not work during the post-petition period, there is no post-petition benefit to the estate and no post-petition conduct to justify the allowance of back pay as an administrative expense. Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental, not beneficial to the estate. The fact of the matter is that this decision is in line with the majority of courts in the country.

30. In addition, because under the fundamental principle of statutory construction the standard applicable is that a statute must be analyze as a whole and not to limit to read a phase…"attributable    in isolation and without considering the whole statute, as the Oversight Board arbitrarily suggest. [7] See Maine People's All. In addition, Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 290 (1st Cir. 2006) ("[C]ourts should strive

---

[7] See Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee), 530 F.3d 458, 470 (6th Cir. 2008) ("The common theme in the Supreme Court's bankruptcy jurisprudence over the past two decades is that courts must apply the plain meaning of the Code unless its literal application would produce a result demonstrably at odds with the intent of Congress." (citing Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000); Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992); U.S. v. Ron Pair Enters., 489 U.S. 235, 241 (1989))). See generally Thomas F. Waldron & Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 AM. BANKR. L.J. 195 (2007) See also, David Dyzenhaus & Michael Taggart, Reasoned Decisions and Legal Theory, in Common Law Theory ; 134 (Douglas E. Edlin ed., 2007).

to interpret statutes as a whole and to give effect to every word and phrase." (citations omitted))

31. For the same reasons, and applying mentioned standards, Movants objects the argument included **at 10 of the Mot**. were the Oversight Board interpretation of the cases of Mason v Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.), 291 F.3d 111, 126 (1st Cir. 2002), as being dispositive is misplaced, since notably these cases were decided prior to the 2005 BAPCPA Amendment and are clearly inapplicable.[8]

32. Neither, In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), also cited by the Oversight Board, supports the theory regarding that pre-petition claims are not entitled to administrative priority, even if the right to payment arises post-petition.

33. Specifically, because the Carco case is clearly distinct from the present, since the court did not considered the application of subsection (A) (ii) of the Bankruptcy Code, because the facts under consideration were not for wages owed, but for alleged damages sustained by an automobile dealer, as a result of the voluntary termination by the dealer of its sales and service agreements with the automobile manufacturer. The decision is thus wholly distinguishable.

---

[8] Equally misleading is the Commonwealth argument, at footnote No. 6, were cite the Opinion and Order Denying DRA Parties Motion for allowance of an Administrative Expense Claim (ECF No. 18892). Particularly, because the claims asserted by the DRA Parties are clearly distinct from Movants, since were not based under sub section 503 (b) (1) (A) (ii) of the Bankruptcy Code, for wages and benefits awarded pursuant to a judicial proceeding as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation, of Federal or State law by the debtor, but for delinquent post-petition loan payments, to be allowed as one for "the actual, necessary costs and expenses of preserving the estate. Also, because the Court, in denying DRA motion found that said party lack colorable claims to security or other property interests in the relevant revenue streams, while in the present case, Movants have presented convincing evidence of the Commonwealth cash deposit in banks, which permits this court to determine, that payment of wages and benefits seek, by reason of the operation of subsection (A)(ii), will not substantially increase the probability of layoff or termination of current employees."

11

34. To the contrary, when is considered that Congress added subsection (ii) in 2005 as part of the BAPCPA _amendments, as a new category of administrative claim, separate from subsection (i), "regardless of the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees", this makes good policy sense.

35. Here, most be highlighted that the public policy and interest of Congress, when added subsection (ii) to section 503 (b)(1)(A), was to stop debtors abuses….and eradicating wage theft practices, in those rare cases where as here, the Chapter 11 debtors are administratively solvent.

36. The expressions made half a century ago in *Nathanson v. NLRB*, 344 U.S. 25, 28(1952) provides useful guidance. Particularly, in view that the Supreme Court acknowledged that a back pay judgment is a reparation designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. Therefore, properly understood *Nathanson* at 28, recognize …the " interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment." *See also; Phelps Dodge Corp. v. Labor Bd.,* 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Republic Steel Corp. v. Labor Bd.,* 311 U.S. 7, 11, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940) ("a worker's loss in wages and in general working conditions must be made whole").

37. If solvent employers were permitted a "safe harbor" that allowed them to pay the employees less of what they are legally entitled, there would be no deterrent effect of monetary penalties that can be essential to ensure wage law compliance.

**38.** The rationale behind the 2005 Amendment is simple. Employees who undertake efforts to allow a business to continue operating or preserve its value, and have a back pay judgment in their favor, for debtors violation of state or federal wage laws, are considered to be a necessary cost on obligation, since were harmed by the employer's acts, and should not be penalized on the recovery of the wages owed, in those rare Chapter 11 cases, where the bankrupt debtor is administratively solvent. This will provide a deterrent effect of monetary penalties that can be essential protect Congress public policy, and eradicate employer's abuses of the bankruptcy process.

39. Also, because here the Oversight Board's position, as to that only post-petition services judgments can qualify for administrative expense, simply put, would lead to absurd results, since Movant's would be left with no meaningful protection, and making subsection (ii) ineffective, would be absurd. In re Kaiser Aluminum Corp., 456 F.3d 328, 330 (3d Cir. 2006).

**B. Affording Movants Claims Administrative Priority Will Not Substantially Increase the Probability of Layoff or Termination of Current Employees**

40. Although in the present case there is no controversy as to that Movants claims were awarded pursuant to a judicial procedure, nor is in dispute the amounts of the back pay seek or the Commonwealth cash Bank deposits, the Oversight Board attempts to avoid judicial scrutiny on the Commonwealth operational solvency, when at footnote No. 4 rhetorically argues that since "Movants have not met the first requirement that the wages be "attributable to" the post-petition period, it was unnecessary to address

the requirement provided under subsection (A) (ii), as to whether the payment of the asserted claims would not cause the Debtor to become insolvent".

41. This argument must not stand to prevent the analysis the bankruptcy court is required to conduct under subsection (ii), and should be rejected. See *In re Philip Services Corp.*, 310 B.R. 802, 808 (Bankr.S.D.Tex. 2004); See also, In re Kaiser Aluminum Corp., 456 F.3d 328, 330 (3d Cir. 2006) and *Demarest v. Manspeaker*, 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (applying statute's terms where the result was not "so bizarre that Congress could not have intended it" (internal quotation omitted));

42. In inviting this Court to turn its back on determining whether because of the application of subsection (A) (ii), will not substantially increase the probability of layoff or termination of current employees, the Oversight Board invites the Court to turn its back on Congress and the public policy against Bankruptcy abuses from administrative solvent debtors under Chapter 11 reorganizations.

43. Furthermore, because properly analyzed Subsection (ii) was enacted to prevent companies from using bankruptcy as a strategic tool in its dealings with labor. A principal purpose of the statute is to protect employees from bearing a disproportionate burden of their employer's bankruptcy. Therefore, said subsection advance the cause of fairness, since is clearly directed to protect the workers with back pay judgments, and in those rare cases were the Chapter 11 debtor is administratively solvent.

44. Precisely, considering the need and reasonableness in granting priority status to employee's with back pay judgements and by the other hand, secure that the Bankrupt business continue to have cash availability during restructuring, that is why, Congress

14

requires the creditors to submit the court, clear convincing evidence, that the payments of the wages seek, will not increase probability of layoff or termination of current employees.

45. Having complied with subsection (ii) test, and there is no demonstration from the Oversight Board, that layoff or termination of employees would occur if Movant's back wages are paid, the determination of an Administrative Expense priority must follow, as a matter of law and predicated on undisputed facts.

### C. Payment of Movants back pay judgment as Administrative Expense is Warranted under Fundamental Fairness and Public Policy

46. The Supreme Court has long recognized that "bankruptcy courts are courts of equity that apply equitable principles in the administration of bankruptcy proceedings." See *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)

47. Consequently, courts have authorized payment of prepetition claims in appropriate circunstances pursuant to Bankruptcy Code Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, and empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." 11 U.S.C.A. sec. 105 (Westlaw through P.L. 116-164).

48. Even assuming arguendo that this Court considers that the requirements of Subsection (A)(ii) are not met, which is denied, in the present case there are compelling justifications to grant Movant's request for administrative expense treatment under the doctrine of "fundamental fairness" adopted by the Supreme Court in Reading Co. v. Brown, 391 U.S. 471 (1968), as recently recognized by this Court (citing the Bankruptcy Appellate Panel for the First Circuit in the case of In re Healthco International Inc., 272 B.R. 510 (BAP 1st Cir. 2002), aff'd., 310 F3d 9 (1st Cir. 2002)).

15

49. Particularly, when is considered that the nature of the harm (underpayment of regular wages, salaries and benefits in violation of state law) suffered by the claimants are predicated on intentional misconduct due to the debtor as employer, and that the Oversight Board has raised nothing suggesting that the payment of the amounts seek will make the approved plan inoperable and thus, increase the probability of layoff and dismissal of employees.

50. To this end, and contrary to Oversight Boards arguments, the First Circuit in Bessette *v AVCO Financial Services, Inc*, 230 F.3d 439. at 444-45 (1rt. Cir. 2000), recognized "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers — where `necessary' or `appropriate' — to facilitate the implementation of other Bankruptcy Code provisions." See also, *Noonan v. Secretary of Health Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991).

51. In pre- Bankruptcy Code Chapter 11 cases, where the Debtor possessed adequate cash deposits in banks, and real estate to pay all administrative expense claims in full, as here, principles of equity dictates that Movants back pay award must be paid as an administrative expense priority.

52. Accordingly, a handful of recent rulings from federal circuit courts have suggested that the solvent debtor exception in chapter 11 case, survived the Bankruptcy Code in 1978. See Gencarelli *v. UPS Capital Bus. Credit*, 501 F.3d 1, 7 (1st Cir. 2007) (holding that, in a solvent debtor case, the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under

applicable non-bankruptcy law");. See also, In re Ultra Petroleum Corp, 624 B.R.178 (Bankr. S.D. Tex. 2020) ("UPC"), leave *to appeal granted*, No. 21-20008 (5th Cir. Jan. 5, 2020), where although facts are different since referred to the payment of post-petition interest, the bankruptcy court ruled that, based on the legislative history, "Congress gave no indication that it intended to erode the solvent debtor exception" when it enacted the Bankruptcy Code. *Id.* at 198. Moreover, it noted, "equitable considerations" continue to support it, including the policy against allowing a windfall at the expense of creditors to any debtor that can afford to pay all of its debts. *Id.* See also In re Dow Corning Corp., 456 F3d 668, 678 (6th Cir. 2006).

53. Furthermore, and to the same effect, numerous courts have use their equitable powers, pursuant to § 105(a) of the Bankruptcy Code, to authorize payment of a debtor's prepetition obligations, where such payments are necessary to effectuate the purpose of a Chapter 11 reorganization. See e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with chapter 11's paramount rehabilitative goals. Ionosphere Clubs, 98 B.R. at 176. See also In re Jeans.com, 491 B.R$. 16, 23 (Bankr. DPR 2013); Comdisco, Inc., Case No. 01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001).

54. Here, when is considered that the Commonwealth agencies conduct, by underpayment of Movant's wages, violated Commonwealth of Puerto Rico and federal minimum wage laws, , Courts have reasoned that the "fresh start" of the Bankruptcy

Case:17-03283-LTS Doc#:22156 Filed:09/12/22 Entered:09/12/22 16:53:09 Desc: Main
Document Page 18 of 20

Code had its limits. Specifically, because the fresh start is for the unfortunate debtors. See Stellwagen n Clun , 245 U.S. 605, 617 (1918)See Also Loc. Loan Co. v Hunt, 292 U.S. 234, 244 (1934) (describing the purpose of the bankruptcy law as giving the "honest but unfortunate debtor.... A new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt").

55. Due to the undisputed facts, and evidence provided, Debtors should be aware that although providing a debtor with a "fresh start" is a key objective of the Bankruptcy Code, courts will not necessarily turn a blind eye to illegal prepetition conduct, and where debtors illegally-obtained an unjust enrichment form employees work

56. Under mentioned circumstances, there can be no question that "bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006); see also 11 U.S.C. § 105(a)

57. Also because, considering that upon the evidence submitted by Movants concerning the Commonwealth cash bank deposits, this is a solvent debtor's case, where is undisputed that the Commonwealth have sufficient funds to continue operations, apply the Supreme Court ruling in Reading, since gives administrative expense priority to the claim of a party who is injured by the operation of a business in chapter 11. To allow the Commonwealth to now escape paying the back pay judgment, once established the Debtors administrative solvency and current bank cash accounts would violate "fundamental fairness" and result in an injustice.

58. This, also makes good policy sense pursuant subsection A (ii), under the rare cases exception, because if solvent employers were permitted a "safe harbor" that

allowed them to paid the employee less had they known he or she legally is entitled, there would be no incentive to ensure employer wage law compliance, since affected employees would be left with no meaningful protection from <u>employers wage laws violations</u>

59. For all of the foregoing reasons, a sound public policy exist to pay Movant's pre- petition back pay judgment obligation as administrative expense and as a result, the Motion should be granted.

60. Finally, and out of an abundance of caution , Movants objects the Oversight Board argument, included in footnote 3, where identify as "irrelevant "certain claims hold by some claimants accumulated in the case of Carmen Socorro Cruz Hernandez, and whose claims are $20,000.00 or less, and that were classified as "convenience Claims" (Class 68), and by implication of the assertion, that none of the claims are attributable to the post-petition period, and does not qualify for , Movants need comfort and request this Court to issue an order for clarification concerning the treatment of administrative convenience classes (class 68). Particularly because the corresponding claimants rely in the classification of their claim (Convenience Claim) and thus, be paid in full.

61. In addition, because, when is considered that a...proof of claim filed against the bankruptcy estate constitutes property within the meaning of the Fifth Amendment clause, the Oversight Board cannot alter the terms of the official classification of convenience claims (class 68), by an unilateral post, and through proceedings lacking in due process, to deny mentioned claimants payment in full. See <u>In re Drexel Burnham Lambert Group Inc.</u>, <u>151 B.R. 674, 679</u> (Bankr. S.D.N.Y. 1993) and compare with Siegal v Federal Home Loan Mortgage Corp, 143 F. 3d 525 (9th Cir. 1998) (were in the debtor's

post-bankruptcy action against the creditor, the deemed allowance of the claim was held res judicata, on grounds that the debtor could have objected to the allowance of the claim in the bankruptcy case).

**WHEREFORE**, for the reasons stated above, Movants respectfully requests the Court (i) overrule the Objection, (ii) enter an order granting the Motion, for the payment of back pay owed to identified claimants included in Exhibit 3 -B for the amount of $384,663.76 collectively (The "Administrative Expense pre-petition Claim"), pursuant to subsection 503 (b)(1) (A) (ii) and 507 (a), (iii), enter an order dismissing the challenge made by the Commonwealth at footnote No. 3, for release of the "convenience claims," (class 68), concerning Movants that are identified in Exhibit 3 of the Motion, and (iv) enter any other relief as is just and proper.

Respectfully submitted.

In San Juan, Puerto Rico, on September 12, 2022

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By: */s/ IVONNE GONZALEZ-MORALES*
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
P.O. BOX 9021828
SAN JUAN, PR 00902-1828
Telephone: (787) 410-0119
E-mail: ivonnegm@prw.net

*Attorney for the Group Creditors*