UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br>As representative of<br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br>Debtors[1] | PROMESA<br>TITLE III<br>Case No. 17-BK-3283<br>(LTS)<br>Re: ECF No.21224; 21642<br>and  ECF No. 22041 |

REPLY TO DEBTOR'S OBJECTION TO APPLICATION FOR ALLOWANCE OF
PAYMENT POST PETITION ADMINISTRATIVE CLAIMS PURSUANT TO SECTION
503(b)(1)(A) (i) OF THE BANKRUPTCY CODE FILED BY GROUP WAGE
CREDITORS IN THE LITIGATION CAPTION FRANCISCO BELTRAN CINTRON ET
ALS V. THE FAMILY DEPARTMENT, ARV AND AIJ OF THE COMMONWEALTH OF
PUERTO RICO

To the Honorable United States District Court Judge Laura Taylor Swain:

NOW COMES the group creditors in the litigation captioned Francisco Beltran-Cintron et als. v Family Department, ARV and AIJ, Case No. 2021-05-0345 (the "Movant's"), by and through the undersigned attorney, to respectfully state, allege and pray:

## I. PRELIMINARY STATEMENT

1. The Movants are a group of 4,593 active or former full-time career employees at the Family Department (ADSEF, ADFAN, ASUME, ACUDEN, AND SECRETARIADO); the Vocational Rehabilitation Administration (ARV) or (AIJ), today "Negociado Instituciones Juveniles" of the Department of Corrections and Rehabilitation, that are

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

instrumentalities of the Commonwealth of Puerto Rico, included in the Title III petition and that have a proceeding pending before the Commission for Appeals for Public Service ("CASP"), seek an order for administrative expense priority for back pay attributable to prepetition and post petition services provided as regular employees in benefit of the above identified Commonwealth departments.

2. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105 (a), 503 (b) (1) (A) (i) (ii) and 507.

3. The Motion seeks an order allowing an administrative claim in favor of the group of 4,593 active or former full-time career employees accumulated in the litigation of reference in an estimated amount of $14,136,032.00 millions for unpaid services rendered after the filling of the Title III petition (the "Post petition Portion"), id. at 11, and in an estimated amount of $ 105 million, for unpaid services provided in the pre-petition period and by reference to the Proof of Claim No. 179140. In regards the Prepetition Portion, Movants request the Commonwealth set aside funds for this entire amount and reserve their rights to amend the Motion in the event they are successful in the underlying CASP litigation. Id. at 9-10. Also, request as further relief this court institute some method to ensure claimants affected by the Debtor's illegal labor practices, can recover from the bankruptcy estate. For example, by transferrin the applicable Title III pre-petition claims to the "ADR" mediation process. See Stay Relief Motion at 12 ECF No. 20670.

4. As demonstrated in Movant's Motion, the facts that support the Administrative Expense application is undisputed since stems from two final judgments entered by the

2

Commonwealth of Puerto Rico, the court of the first Instance (CFI).[2]  In reference, judgments were determined that the Family Department, ARV, and AIJ violated, among others, clauses 1 and  2 of Art. 2 of Law No. 89 of June 12, 1979, as amended, 3 LP.R.A. § 760 et al. s.  and section 4.6, clauses (2), (3), (5) (6) a d (8) of the Uniform Retribution Regulation,  when made illegal wage adjustments to implement the federal minimum wage using the General Memorandum 5-86, and made the "pay scale system" inoperable.

5.    To the extreme, the CFI determined that by 1996 the Family Department employees and of its administrations, ARV and AIJ, that were assigned to the first 19 pay scales were receiving the same salaries as janitors and workers, finding defendants jointly and severally liable for this violations and granted all plaintiffs back pay for the unpaid portion of their monthly regular salaries illegally withheld.

6    Consequently, Movants submits, based on the above judgments and the Stipulation entered with defendants in the previous action (K AC 2009-0809), that they are similarly situated as those employees that obtained a favorable judgment and therefore, are entitled to receive equal pay for equal work, and their salaries be corrected, as provided under Art II sec 16 of the Puerto Rico Constitution and Supreme Court precedent, in *Santiago Declet v Family Department*, 153 D.P.R. 208 (2001).

7. In its Objection, the Oversight Board does not dispute that Movants provided pre and post-petition services to the Commonwealth and that received a benefit from these services. Most notably, the Oversight Board does not contest debtor's practice of underpayment of wages in violation of Puerto Rico law 89 as amended and regulations.

---

[2]   See certified translation judgments in cases Carmen Socorro Cruz Hernandez et als v Family Department et als, case no. K AC1991-0665, at ECF No 21487  and Nilda Agosto Maldonado et als v Family Dept. et als, case No. K PE 2005-0608, included in Mot. as Exhibit 2

Neither dispute the amount sought of unpaid regular wages that were illegally withheld or the Debtor's cash deposits in banks and thus, failed to demonstrate as to how the payment of prepetition back pay wages sought in the amount of $105 million (The "Administrative Expense Pre-petition Claim"), by reason of the operation of subsection 503(b)(1) (A)( ii), will not substantially increase the probability of layoff or termination of current employees.[3] These are relevant factual foundations that this Court must consider in evaluating and approving Movant's Administrative expense application.

8. However, here is important to bring to the Courts consideration, as following will be explained in more detail, that the present case was subject to a second stay order, and Movants requested this Court to Modify the Stay, in order to the case continue at the CASP and said determination is still pending. See ECF No. 20670

In consequence, for the reasons set forth, the Oversight Board's objections all fail for the following reasons.

## II. ARGUMENT

**A.    Movants' Prepetition Claims are Entitled to Administrative Expense Status since satisfies the criteria established under subsection 503 (b)(1)(A)(ii) of the Bankruptcy Code**

9. To start is important to bring to the Court considers that the Oversight Board presents several theories and misleading arguments in opposition of the Movants Administrative Expense application.

10. For example, the Oversight Board argues at 3 - 4 of the Preliminary Statement and at 16 of Mot. that this Court denied a substantially similar request for priority status, referring to the *Court* Order [ECf 20569)*, issued in relation to the opposition to the*

---
3

*reconsideration Motion of the August 4, 2021, omnibus* hearing. According to the Oversight Board, the Court's interpretation of subsection (ii) as "extending only to "events that occur after the commencement of a bankruptcy case" Mot. At 16.

11.     Movants object the Oversight Board's contention. The fact on the matter is that said Order, at its most simplistic, was of limited in scope since related exclusively to the "Three Hundred Forty-Fifth Omnibus Objection, which concerned to the classifications of certain claims as unsecured and because that procedure was not related to an application of payment of an administrative expense.

12.     The Oversight Board's interpretation of the court order of reference is not consistent with Ritzen **Group Inc. v. Jackson Masonry LLC, 18-938, 2020 BL 11881** (Sup. Ct. Jan. 14, 2020), where the U.S. Supreme Court held, in reference to bankruptcy court orders, citing *Bullard v. Blue Hills Bank*, 575 U.S. 496 at 501 (2015), that it "does not matter whether the court rested its decision on a determination potentially pertinent to other disputes in the bankruptcy case… Court Orders are final only when they "definitively dispose of discrete disputes within the overarching bankruptcy case. To be final under Bullard, an order must alter the status quo and fix the rights and obligations of the parties".

13.     In view of the limited scope of this Court's ruling, the Oversight Board is also mistaken in its interpretation of the reconsideration Motion filed in opposition to the Three Hundred Forty-Fifth Omnibus Objection Mot at 4. and concluding that arguments are duplicate, sustain its theory regarding that subsection 503 (b)(1)(A) (ii) limits administrative priority to claims "attributable to any period occurring *after the* commencement of the case". Nothing in the record before us suggests that the order of

reference made such a determination concerning to Movants Administrative Priority Application or prohibits Movants to-seek administrative expense priority relief, based on future developments in the case. The Oversight Board's interpretation would lead to an absurd result and should be rejected.

14.     Equally without merit is the argument presented by the Oversight Board  Mot. at 5, 9, 21 and 22   including its interpretation of the pending Appeal in the case Acevedo Arocho, Prudencio,  and where alleges that the defenses raised before the Puerto Rico Supreme Court,  concerning similarly situated claimants,  that their claims are time-barred pursuant to statutes of limitations and laches, and could be dispositive in the Underlying Action.

15.     To the extent Debtor previously litigated the mentioned issues in the instance case, at the CFI trial and appeal level and lost, Movants incorporates by reference all allegations and legal arguments set forth in Movants Reply to Objection of the Commonwealth of Puerto Rico to Urgent Motion Requesting Modification of Lift of Stay, as if fully transcribed herein.  (ECF 21674)

16.     Consequently and for being relevant, and because the Beltran Cintron group litigation case was originally filed in the Court of First Instance, San Juan, under Case No. K AC 2009-0809, Movants objects to the allegation made Mot. at **8**. for misleading, and where the Oversight Board represents that the present case is in its initial stage and no discovery has been made. The reality is that pursuant to the original litigation, discovery was performed, and resulted in the parties subscribing extensive Stipulations of all the undisputed material facts. See Exhibit 4 -B Motion.

17.    Because the Oversight Board's observes the same rhetorical approach with respect its objection of the Pre-petition portion of the Administrative Expense liability Mot. at  19 – 11- 12 – 13 and 14, Movants submits that the arguments presented are without regard to the facts and constitute inaccurate generalizations to mislead the Court on the correct interpretation of subsection (A) (ii), which was added to the Bankruptcy Code in  2005, as part of the BAPCPA Amendments.

18.   Here is relevant to note that in its Objection the Oversight Board does not dispute that Movants as regular employees, provided services in the pre and post-petition periods in benefit of the Commonwealth. Most notably, neither objects the estimate of the amounts claim by Movants, for pre- and post-petition period, nor the bank cash deposits the Commonwealth has.[4]

19.   Instead, the Oversight Board argues at Mot. 10, without any substantive support, that the back pay asserted for the prepetition period should be denied, based on the theory that neither the statutory text and case law supports the request.  Movants submit that these arguments fail for the following reasons.

20.    First, the Oversight Board argument relies on language plucket out of cases without context and are highly misleading. Particularly because most of the cases cited address issues regarding the priority status of discharged employees seeking damages for violation of the Worker Adjustment and Retraining Notification Act (the WARN Act), or severance pay, and there are fundamental distinctions between WARN Act and severance payments, and the salary or wages that a workman has constructively earned by reason of services rendered as an employee and is entitled to receive under an

---

[4] See Exhibit 6 Motion

employment contract. Also, severance pay is to compensate employees for the dislocation resulting from termination of employment, not for work performed.

21.     Second, the case law in which the Oversight Board rely upon, lacks not only precedential guidance in the matter under consideration but also are contrary to the true spirit of subsection 503 (b) (1) (A) (ii), due to the limited perspective of the analysis.    In fact, there are only a handful of cases interpreting subsection (ii) and they are generally addressing controversies concerning "severance programs". We have found no case specifically dealing or addressing administrative expense claims of regular employees with back pay judgments against their employers.

22.     As a result, the Oversight Board at Mot. at 13, citing for example, the case of 710 Long Ridge Rd. 505 B.R. at 176 to try to establish that although some courts have awarded back pay for prepetition periods, to qualify for administrative expense priority the award must be attributable to the post-petition period" argues, that the administrative expense priority was granted to a portion of claims regarding lost wages for several post petition days thus "attributable to" post-petition period.

23.     The problem with this argument is that the reality and bottom line is, that the Courts when have interpreted subsection 503 (b) (1) (A)  (ii) of the Bankruptcy Code, are addressing claims under WARN Act or severance pay claims and courts, often distinguish between severance pay based on length of service and severance pay in lieu of notice of termination, (pre or post-petition periods) for determining the damages calculation of severance payments and this cases does not support the Oversight Board theory.   For an excellent analysis of the different treatment of damages for violations of WARN Act and severance pay under sections 503 (b) (1) (A) (ii) and 507 (a) (4) (A) see In re Ellipsat,

Inc., 480 B.R.1   (Bankr.   D.D.C.   2012. *See, also, In re Uly–Pak, Inc.,* 128 B.R. 763, 767 (Bankr.S.D.Ill.1991) ("The distinction between the two categories of severance pay ... has become ossified into a rule of law.").

24.   Equally misleading is the argument included Mot. at 13 n 7. Where the Oversigth Board rely in *In re Powermate Holding Corp.*, 394 B.R. 765, 774-75 (Bankr. D. Del. 2008), to represent that courts have adopted an even stricter approach, concluding that only employees claim that vest after the petition date are entitled to administrative expense treatment.   However, the Oversight Board intentionally omits that other courts, in subsequent **better-reasoned cases that have examined this subsection,** have rightly rejected that reading and have convincingly demonstrated that, on the contrary, subsection (ii) provides an *additional* category of administrative claims, separate from subsection (i).   *See, e.g.,* Matthews v. Truland Group., Inc. (In re Truland Group., Inc.), 520 B.R. 197 at 202-03 (2014). Also omits that the Truland court interpreting subsection 503 (b) of the Bankruptcy Code, determined that the "vesting date" is immaterial. *See also Philadelphia Newspapers*, 433 B.R. at 173-74  where the bankruptcy court determined that a back pay claim can constitute an administrative expense, even if it is awarded for services rendered before the commencement of a bankruptcy case. in addition, because here, the Court also determined that the word "and," ties together all *nine* different categories of administrative claims, including such diverse items as taxes, professional fees and the cost of closing a health care business.  No one would suggest that Congress intended that an administrative claim satisfy all nine. See also, In re Fin. Oversight & Mgmt. Bd. for P.R., 621 B.R. 289 (D.P.R. 2020), (same).

25. With regards to the Oversight Board assertion at 13 of the Mot. that *Calumet Photographic*, 2016 WL 3035468, No. 14-08893, , at *3 (Bankr. N.D. Ill. May 19, 2016) supports its theory regarding how other courts have interpreted the phrase "attributable" to wages and benefits that accrue in post-petition, is equally without merit.

26. The fact is that other courts have rejected this argument by criticizing the Calumet court's reading of subsection (ii), since effectively erases the more specific language included in referenced disposition, stating that it does not matter "whether any services were rendered." *See In* re Word Marketing Chicago, 564 B.R. 587 (Bankr. N.D. Ill. 2017). Also, see *Philadelphia Newspapers*, 433 B.R. at 174-75.

27. For being equally misleading, Movants objects the argument included **at 15 of the Mot**. concerning the Oversight Board interpretation of the cases of Mason v Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.), 291 F.3d 111, 126 (1st Cir. 2002), as being dispositive is misplaced since notably these cases were decided prior to the 2005 BAPCPA Amendment and are clearly inapplicable.[5]

---

[5] For being equally misleading Movants objects to the Oversight Boards argument, at footnote No. 7, were cited the Opinion and Order Denying DRA Parties Motion for allowance of an Administrative Expense Claim (ECF No. 18892). Particularly because the claims asserted by the DRA Parties are clearly distinct from Movants, since were not based under sub-section 503 (b) (1) (A) (ii) of the Bankruptcy Code, but for delinquent post-petition loan payments, to be allowed as one for "the actual, necessary costs and expenses of preserving the estate. Also, because the Court, in denying DRA motion found that said party lacks colorable claims to security or other property interests in the relevant revenue streams, while in the present case, Movants comply with the test of required under subsection (ii) having presented convincing evidence of the Family Department continuing violations of Commonwealth of Puerto Rico wage laws and of Debtor's cash deposit in banks, which permits this court to determine, that payment of wages and benefits seek, by reason of the operation of subsection (A)(ii), will not substantially increase the probability of layoff or termination of current employees."

28.    Neither, In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), also cited by the Oversight Board, supports the theory regarding that pre-petition claims are not entitled to administrative priority, even if the right to payment arises post-petition.

29.   Again, the Carco case is clearly distinct from the present. Particularly because the court did not consider the application of subsection (A) (ii) of the Bankruptcy Code, since the facts under consideration were not for wages owed but for alleged damages sustained by an automobile dealer as a result of the voluntary termination by the dealer of its sales and service agreements with the automobile manufacturer. The decision is thus wholly distinguishable.

30.    Also, because the Oversight Board theory, is in conflict with the courts' findings in In re *Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 706 (9th Cir.1988), where the BAP correctly noted, that because the dismissed employee (WARN Act claimants) did not work during the post-petition period, there is no post-petition benefit to the estate and no post-petition conduct to justify the allowance of back pay as an administrative expense. Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental and not beneficial to the estate. The fact of the matter is that this decision is in line with the majority of courts in the country.

31.    Consequently, Movants submits that under the fundamental principle of statutory construction the standard applicable is **that a statute must be analyzed as a whole and not to limit to read a phase..." attributable" in isolation and without**

**considering the whole statute, the Oversight Board theory, d**oes not stands.[6] See

Maine People's All. In addition, Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277,

290 (1st Cir. 2006) ("[C]ourts should strive to interpret statutes as a whole and to give

effect to every word and phrase." (citations omitted)

32.     Therefore, when is considered that subsection (A) (ii), not only imposes the

requirement for determining if a wage claim qualifies for administrative expense priority,

(a) that services for which payment is sought "must be the actual and necessary costs of

preserving the estate, but also requires  (b) claimants submit the court evidence that by

virtue of the application of (ii), will not substantially increase the probability of layoff or

termination of current employees, is clear Movants have complied the statutory

standards.

33.     Also, because under subsection A (ii) a party may be able to hold a claim

for pre-petition back pay since it is plain that said Subsection does not differentiate

between judgments entered before and one entered after a bankruptcy petition is filed.

34.     In addition, when is considered that Congress added subsection (ii) in 2005

as part of the BAPCPA amendments, as a new category of an administrative claim,

separate from subsection (i), "regardless of the date when the wages were earned and

whether there was any concrete benefit to the estate or whether the claimant performed

any work at all if the court determines that payment of wages and benefits by reason of

---

[6]     See generally Thomas F. Waldron & Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 AM. BANKR. L.J. 195 (2007) See also, David Dyzenhaus & Michael Taggart, Reasoned Decisions and Legal Theory, in Common Law Theory, 134 (Douglas E. Edlin ed., 2007).

the operation of this clause will not substantially increase the probability of layoff or termination of current employees", this makes good policy sense.

35. Here, must be highlighted that when Congress added subsection (ii) to section 503 (b)(1)(A), the public interest was to stop employers' abuses....and eradicate wage theft practices in those rare cases where Chapter 11 debtors are administratively solvent.

36. The expressions made half a century ago in *Nathanson v. NLRB,* 344 U.S. 25, 28(1952) provides useful guidance. Particularly because the Supreme Court acknowledged that a back pay judgment is a reparation designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. Therefore, properly understanding *Nathanson* at 28, recognize ...the " interest of the United States in eradicating unfair labor practices is so great that the back pay order should be given the additional sanction of priority in payment." *See also; Phelps Dodge Corp. v. Labor Bd.,* 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *Republic Steel Corp. v. Labor Bd.,* 311 U.S. 7, 11, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940) ("a worker's loss in wages and in general working conditions must be made whole").

37. If solvent employers were permitted a "safe harbor" that allowed them to pay the employees less of what they are legally entitled to, there would be no deterrent effect of monetary penalties that can be essential to ensure wage law compliance.

38. Therefore, and having Movants submitted this Court convincing evidence regarding the Commonwealth Cash Flow report dated September 3, 2021 which is attached hereto as Exhibit 4, and is made a part hereof. and that establishes that the

payment of Movants wage claims as administrative priority will not substantially increase the probability of layoff or termination of current employees[7]. Movants objects to the Oversight Board argument, Mot. at 11, footnote No. 6, where rhetorically argues that since "Movants have not met the first requirement that the wages be "attributable to" the post-petition period, it was unnecessary to address the requirement provided under subsection (A) (ii), as to whether the payment of the asserted claims would not cause the Debtor to become insolvent".

39.     This argument must not stand to prevent the analysis the bankruptcy court is required to conduct under subsection (ii), and should be rejected. See *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006), *In re Philip Services Corp.,* 310 B.R. 802, 808 (Bankr.S.D.Tex. 2004); See also, and *Demarest v. Manspeaker,* 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (applying statute's terms where the result was not "so bizarre that Congress could not have intended it" (internal quotation omitted).

40.     In inviting this Court to turn its back on determining whether because of the application of subsection (A) (ii), will not substantially increase the probability of layoff or termination of current employees, the Oversight Board invites the Court to turn its back on Congress and the public policy against Bankruptcy abuses from administrative solvent debtors under Chapter 11, reorganizations.

41.     Because properly analyzed Subsection (ii) advances the cause of fairness since is clearly directed to protect the workers, in those rare cases where the Chapter 11 debtor is administratively solvent and on the other hand, secure that the Bankrupt

---

[7] See page 4 and 5 of the report that shows that the Commonwealth has currently in banks deposits, a cash account balance of \$11.4 billion of unrestricted cash that under Puerto Rico's Constitution can and should, at least a substantial part, be used for debt adjustment purpose. These amount is just part of the over \$25.335 billion in cash Commonwealth currently holds

business continues to have cash availability during restructuring. That is why Congress requires the creditors to submit to the court clear, convincing evidence that the payments of the wages seek will not increase the probability of layoff or termination of current employees.

42.   Consequently, Movants must insist, contrary to the Oversight Board theory, that because the public interest subsection A (ii) holds, and having Movants demonstrated that this is a solvent debtors case, they are entitled for pre-petition back pay. Particularly because it is plain that Subsection A (ii) does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed.

**B.   The Motion Establish Entitlement to Allowance for the Post petition Portion Under 503 (b) (1)(A), Subsection (i).**

43.   In regards the Post Petition Portion, Movants submits that the Oversight Board's Argument Mot. at 19, were rely on the theory that   since Movants concede that the Prepetition Portion is contingent on the resolution of the Underlying Action, the same contingency applies to the Post-petition Portion because it is based on the same theory of liability, is also without merit.   The Oversight Boards argument is mistaken at several levels.

44.   First, It is well settled that regular employees services is a recognized means of protecting and preserving the estate, thus providing a benefit to the estate. Under subsection (i), for a claim to qualify for administrative expense priority the threshold or consideration is that the services supplied to the debtor, are of benefit in the operation of its business.   In re Hostess Brand, Inc 499 B.R. 406, 411 (SDNY 2013). See also In re Grabb & Ellis Co. 478 BR 622, 624 (BANKR. S.D.N.Y. 2012). See also, In re AM Intern,

Inc., 203 B.R. 898, 904 (Bankr. D. Del. 1996) (citing Lebron v. Mecham Financial, Inc., 27 F.3d 944 (3d Cir. 1994).

45.  The fact that  Movants …have not jet a judgement, by itself is not dispositive, since Debtors omits in its argument, that Movants had continued working post – petition without being fully paid, as required under Commonwealth of Puerto Rico laws.

46.  Second, by the evidence presented, Movants have established a prima facie case of entitlement of payment of wages seek, not only under applicable Commonwealth of Puerto Rico wage laws, but also under § 503(b)(1) requirements, since the claim for unpaid post petition services (1) arises from a transaction with the debtor-in-possession; and (2) the  services supplied enhanced the ability of the Family Department, ARV and AIJ to function and continue providing the residents of Puerto Rico the essential services they need. *Matter of TransAmerican Nat. Gas Corp.* , 978 F.2d 1409, 1416 (5th Cir. 1992). After the movant has established a prima facie case, the burden of producing evidence shifts to the objector; *TransAmerican,* 978 F.2d at 1416. See also Rule 3001 (f) and Lundell v Anchor Constr. Specialist, Inc. 223 F 3rd 1035, 1039 (9th Cir. 2000) citing Wright v Holm (In re Holm), 931 f2d 620 (9th Cir. 1991)) The burden of providing evidence of a proof of claim validity rest with the objector.

47.  Third, this Court have approved substantially similar request for post petition administrative expense priority payments under subsection (i),  at request of the Oversight Board. See In re Financial Oversight and Management Board for Puerto Rico, 621 B.R. 289, 301 (D.P.R. 2020), aff'd, 7 F.4th 31 (1st Cir. 2021), concerning Luma Energy payment of administrative expense priority for services rendered, pursuant the T & D contract.

48.    Since the Movants identified in Exhibit 5 B, C, and D, as regular employees

have continued providing important services to the Family Department, ARV and AIJ,

post-petition and benefitted the estate, which fact the Oversight Board does not appear

to dispute. Under the applicable, well recognized standards of 11 USC section 503 (b) (1)

(A) (i) Movants are entitled to receive payment of all outstanding obligations and back

wages for services rendered and the Motion should be granted.

## III. Payment of back wages illegally retained as Administrative
## Expense is warranted under Fundamental Fairness and Public Interest.

49.    The Supreme Court has long recognized that "bankruptcy courts are courts

of equity that apply equitable principles in the administration of bankruptcy proceedings."

See Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

50.    Consequently, courts have authorized payment of prepetition claims in

appropriate circumstances pursuant to Bankruptcy Code Section 105(a), which codifies

the inherent equitable powers of the bankruptcy court, and empowers the bankruptcy

court to "issue any order, process, or judgment that is necessary or appropriate to carry

out the provisions of this Title." 11 U.S.C.A. sec. 105 (Westlaw through P.L. 116-164).

51.    Even assuming arguendo that this Court considers that the requirements of

Subsections (A) (i) (ii) are not met, which is denied, in the present case there are

compelling justifications to grant Movant's request for administrative expense treatment

under the doctrine of "fundamental fairness" adopted by the Supreme Court in Reading

Co. v. Brown, 391 U.S. 471 (1968), as recently recognized by this Court (citing the

Bankruptcy Appellate Panel for the First Circuit in the case of In re Healthco International

Inc., 272 B.R. 510 (BAP 1st Cir. 2002), aff'd., 310 F3d 9 (1st Cir. 2002)), See also Spunt

v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st

Cir. 1985)) ( decided prior the 2005 BAPCPA amendment) where the Bankruptcy Appellate Panel for the First Circuit explained, that "the 'fundamental fairness' exception is recognized when the debtor's post-petition operations occasion tortious injuries to third parties (Reading[]), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (Charlesbank[])." Id. (citing ReadingCo., 391 U.S. 471);

52.    Particularly, when is considered that the harm (underpayment of regular wages, in violation of state law) suffered by the claimants are predicated on intentional misconduct due to the debtor as employer, and that the Oversight Board has raised nothing suggesting that the payment of the amounts seek pre-petition, will make the approved plan inoperable and thus, increase the probability of layoff and dismissal of employees.

53.    Also, because this Court must consider that, in realistic terms, the success of the Commonwealth reorganization relates directly to the commitment, ability and efforts of its employees to continue providing the residents of PR essential services.

54.    Consequently, put in context the illegal wage practice and pattern of abusive behavior to which Movants have been subjected, this Court must consider that as regular employees; depend on timely payments from their employers (Commonwealth) for their livelihood and subsistence. In this respect, Movants submits that they will suffer irreparable harm if the Motion is not granted, since they are being exposed to significant financial hardships, in view that the Commonwealth is not honoring the Employee Obligations.

55. Also, because in the absence of such payments, is clear that many Movants may seek alternative employment opportunities, at a time when Employee support is critical.

56. The First Circuit in Bessette *v AVCO Financial Services, Inc*, 230 F.3d 439. at 444-45 (1rt. Cir. 2000), recognized "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers — where `necessary' or `appropriate' — to facilitate the implementation of other Bankruptcy Code provisions." See also, *Noonan v. Secretary of Health Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991).

57. Accordingly, numerous courts have use their equitable powers, pursuant to § 105(a) of the Bankruptcy Code, to authorize payment of a debtor's prepetition obligations, where such payments are necessary to make the purpose of a Chapter 11 reorganization. See e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with chapter 11's paramount rehabilitative goals. Ionosphere Clubs, 98 B.R. at 176. See also In re Jeans.com, 491 B.R$. 16, 23 (Bankr. DPR 2013); Comdisco, Inc., Case No. 01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001).

58. In addition, a handful of recent rulings from federal circuit courts have suggested that the solvent debtor exception in chapter 11 case, survived the Bankruptcy Code in 1978. See Gencarelli *v. UPS Capital Bus. Credit*, 501 F.3d 1, 7 (1st Cir. 2007) (holding

19

that, in a solvent debtor case, the equities strongly favor holding the debtor to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law");. See also, In re Ultra Petroleum Corp, 624 B.R.178 (Bankr. S.D. Tex. 2020) ("UPC"), leave *to appeal granted*, No. 21-20008 (5th Cir. Jan. 5, 2020), where although facts are different since referred to the payment of post-petition interest, the bankruptcy court ruled that, based on the legislative history, "Congress gave no indication that it intended to erode the solvent debtor exception" when it enacted the Bankruptcy Code. *Id.* at 198. Moreover, it noted, "equitable considerations" continue to support it, including the policy against allowing a windfall at the expense of creditors to any debtor that can afford to pay all of its debts. *Id.* See also In re Dow Corning Corp., 456 F3d 668, 678 (6th Cir. 2006).

59. Consequently, and is considered the Commonwealth agencies conduct, and reiterated violation of the Commonwealth of Puerto Rico and federal minimum wage laws, Courts have reasoned that the "fresh start" of the Bankruptcy Code had its limits. Specifically, because the fresh start is for the unfortunate debtors. See Stellwagen n Clun, 245 U.S. 605, 617 (1918) See Also Loc. Loan Co. v Hunt, 292 U.S. 234, 244 (1934) (describing the purpose of the bankruptcy law as giving the "honest but unfortunate debtor…. A new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt").

60. Due to the undisputed facts, and evidence provided, Debtors should be aware that although providing a debtor with a "fresh start" is a key objective of the Bankruptcy Code, courts will not necessarily turn a blind eye to illegal pre and post-petition conduct, and where debtors illegally-obtained an unjust enrichment form employee's work, there

can be no question that "bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006); see also 11 U.S.C. § 105(a)

61.    More so here, when is considered that this is a solvent debtor's case, where despite the fact the Commonwealth have suffered finantial distress, has sufficient cash in bank deposit to continue operations, and thus, apply the Supreme Court ruling in Reading, since gives administrative expense priority to the claim of a party who is injured by the operation of a business in chapter 11.

62.  To allow the Commonwealth to now escape paying the back pay judgment, once established the Debtors administrative solvency and current bank cash accounts would violate "fundamental fairness" and result in an injustice. See Republic Steel Corp. v. Labor Bd., 311 U.S. 7, 11, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940) ("a worker's loss in wages and in    '
general working conditions must be made whole").

63.    This, also makes good policy sense, under the rare cases exception, because if solvent employers were permitted a "safe harbor" that allowed them to paid the employee less had they known he or she legally is entitled, there would be no incentive to ensure employer wage law compliance, since affected employees would be left with no meaningful protection from employers wage laws violations

64.    For all of the foregoing reasons, a sound public interest exist to grand the expense priority to the back pay owed to Movants, for the pre and post-petition periods, as a result of Debtors agencies violation of federal minimum wage and Commonwealth of Puerto Rico Law No. 89 as amended an regulations.

## IV. An Alternative Approach

65. To facilitate the implementation of the Administrative expense priority relief herein requested, Movants submits that cause Exists to Order the creation of a trust fund to receive, process, honor, and pay any and all the Prepetition priority expenses obligations.

66. Particularly, because having the Oversight Board arbitrarily failed to comply with good faith principle and take timely action to transfer Movants Claims to the ACR procedure, and having Debtor indicated in its opposition to the Lift of stay Motion (ECF No. 21507) at Mot 5, that the claim reconciliation process remains ongoing, and      that claims documents were still being reviewed and continue to transfer claims into the ACR Procedure and the ADR Procedure, when Debtors have determined that such procedure are appropriate for any particular claim or set of claim and are prepared to address such claims  and by the other hand, remains pending before this court  the disposition of the lift of Stay Relief Motion  (see ECF No. 20670). This have caused that the determination as to the individual amounts claimants might be entitled and regarding how adequate protection payments could be worked out, remains pending.

67. Consequently, Movants relied on subsection 503 (b)(1)(A)(ii) and upon this courts  equitable authority, to bifurcate the Administrative expense application,  and provide the Bankruptcy Court with the opportunity to creatively fashion a solution to rid the reorganized debtor from potentially crippling long-lived, illegal wage related violations.

68. To said effect, Movants submits that other Courts have approved relief similar to the relief requested in this Motion. In addition, this court must institute some method to ensure claimants affected by the Debtor's pre-petition conduct can recover from the

bankruptcy estate. For example, refer the pre-petition claims to a mediation Committee to determine the individual computations of wages owed .... In addition, guarantee creditors adequate protection payments. See In re Johns-Manville Corp., 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984) ("Any plan not dealing with [future claimants'] interests precludes a meaningful and effective reorganization and thus inures to the detriment of the reorganization, See also, Alison J. Brehm et al., To Be, or Not to Be: The Undiscovered Country of Claims Estimation in Bankruptcy, 8 J. BANKR. L. & PRAC. 197, 261 (1999) ("This sort of action was never contemplated by the Code's drafters and thus the court and the parties were left to their own devices to estimate the claims for purposes of working through the reorganization." (internal citation omitted)).

69. Such appointment is also grounded on the Court's pervasive equitable powers emanating from Section 1481 of Title 28, U.S.Code and Section 105(a) of the Bankruptcy Code. These equitable powers are vested in this Court specifically to enable it to respond to extraordinary problems in estate administration consistent with the statutory goals of complex Chapter 11 cases.

70. For example, Bankruptcy courts have approved channeling injunctions in mass-tort cases not involving asbestos under their equitable powers in § 105(a). In exercising that power, however, courts have discretion to require compliance with § 524(g)'s standards.

71. Finally, must be brought to the consideration of the court, that since section 503(b)(1)(A) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants, if the debtor has the ability to pay and there is a need to do so. See In re Global

Home Prods., LLC, , 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("[T]he timing of the payment of that administrative expense claim is left to the discretion of the Court.").

## V. CONCLUSION

72.     Having Movants complied with subsections (i) (ii) tests, and there is no demonstration from the Oversight Board, that layoff or termination of employees would occur if Movant's pre-petition back wages are paid, the determination of an Administrative Expense priority must follow, as a matter of law and predicated on undisputed facts.

**WHEREFORE**, for the reasons stated above, Movants respectfully requests the Court (i) overrule the Objection, (ii) enter an order granting the  "Administrative Expense Motion for pre and post-petition periods (iii), alternatively order the creation of a trust fund to receive, process, honor, and pay any and all the Pre-petition Employee Obligations, on ordinary course of business and on a post-petition basis and transfer Movants claims to a Mediation Committee for the determination of the individual obligations and  (iv) enter any other relief as is just and proper.

Respectfully submitted. In San Juan, Puerto Rico, on September 12, 2022

**IT IS HEREBY CERTIFIED**, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By: */s/ IVONNE GONZALEZ-MORALES*
IVONNE GONZALEZ-MORALES
USDC NUM: 202701
P.O. BOX 9021828
SAN JUAN, PR 00902-1828
Telephone: (787) 410-0119
E-mail: ivonnegm@prw.net

**Attorney for the Group Creditors**