## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**In re:**

| | |
|---|---|
| **THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of** | **PROMESA TITLE III Case No. 17-BK-3283** |
| **(LTS)** | |
| **THE COMMONWEALTH OF PUERTO RICO, et al.,** | **RE: ECF No. 21227; ECF N0. 21643** |
| **Debtors[1]** | |

### Reply to Debtor's Objection to Application for the allowance  and payment of administrative expense claims, filed by group claimants in the litigation Caption ABRAHAM GIMENEZ V DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS OF THE COMMONWEALTH OF PUERTO RICO

**To the Honorable United States District Court Judge Laura Taylor Swain**:

The group creditors in the litigation captioned Abraham Giménez et als v. Department of Transportation and Public Works, CASP case No.2021-05-0346 (the "Movant's"), by and through the undersigned attorney, in support of this Reply, respectfully state, represents and alleges as follows:

### I. PRELIMINARY STATEMENT

1.    The statutory predicates for the relief requested herein are Bankruptcy Code

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Sections 105 (a), 503 (b) (1) (A) (i) (ii) and 507. The Motion seeks an order allowing an administrative claim in favor of 1,046 full-time or former career employees accumulated in the litigation captioned Abraham Giménez et al v Department of Transportation and Public Works CASP No. 2021-05-0346, in an estimated amount of \$3,618,955.00 for unpaid services rendered after the filling of the Title III petition (the "Post petition Portion"), and in an estimated amount of \$ 35 million, for unpaid services provided in the pre-petition period and by reference to the Proof of Claim No. 179141. In regards the Prepetition Portion, Movants request the Commonwealth set aside funds for this entire amount and reserve their rights to amend the Motion in the event they are successful in the underlying CASP litigation. Id. at 10. Also, request as further relief this court institute some method to ensure claimants affected by the Debtor's illegal labor practices, can recover from the bankruptcy estate. For example, by transferrin the applicable Title III pre-petition claims to the "ADR" mediation process. See Stay Relief Motion at 12 (ECF No. 20670)

2. As demonstrated in Movant's Motion, the facts that support the Administrative expense application are undisputed, since stems from a final judgment entered against the Department of Transportation under the same cause of action and same operational facts[2] In reference judgment was determined that the Department of Transportation and Public Works, among others, violated clauses 1 and 2, of Art. 2 of Law No. 89 of June 12, 1979, as amended, 3 LP.R.A. § 760 et als. and section 4.6, clauses (2), (3), (5) (6) a d (8) of the Uniform Retribution Regulation, when made illegal wage adjustments to implement the federal minimum wage using the General Memorandum 5-86, and made the "pay scale system" inoperable.

---

[2] See judgment case Juan Perez Colon et als. v DTOP, case No. K AC 1990- 0487, included as Exhibit 1 Motion

2

3. To the extreme, that the CFI determined that by 1996 the Department employees and that where assigned to the first 19 pay scales were receiving the same salaries as janitors and workers, finding the defendant liable for this violations and granted all plaintiffs back pay for the unpaid portion of their monthly regular salaries illegally withheld.

4. Consequently, Movants submits, based on above judgement, that they are similarly situated as those employees that obtained a favorable judgment and therefore, are entitled to receive equal pay for equal work, and their salaries be corrected, as provided under Art II sec 16 of the Puerto Rico Constitution and Supreme Court precedent, in *Santiago Declet v Family Department*, 153 D.P.R. 208 (2001).

5. In its Objection, the Oversight Board does not dispute that Movants provided pre and post- petition services to the Commonwealth and that received a benefit from these services. Most notably, the Commonwealth does not contest debtor's practice of underpayment of wages is in violation of Puerto Rico law 89 as amended and regulations. Neither dispute the amount seek of unpaid regular wages that were illegally withheld or the Debtor's cash deposits in banks and thus, failed to demonstrate as to how the payment of prepetition back pay wages seek in the amount of $ 35 millions (The "Administrative Expense Pre-petition Claim"), by reason of the operation of subsection 503(b)(1) (A)(ii), will not substantially increase the probability of layoff or termination of current employees.[3] This are relevant factual foundations, which this Court must consider in evaluating and approving Movant's Administrative expense application.

---

[3] See Cash Flow report dated September 3, 2021, attached to the Motion as Exhibit 5, and is made a part hereof.

3

6.   In consequence, for the reasons set forth, the Oversight Board's objections all
fails for the following reasons.

## II. ARGUMENT

### A. Movants' Prepetition Claims are Entitled to Administrative Expense Status since satisfies the criteria established under subsection 503 (b)(1)(A)(ii) of the Bankruptcy Code

7.   To start, is important to bring to the Court consideration that the Oversight Board
presents several theories and misleading arguments in opposition of Movants
Administrative Expense application.

8.   For example, the Oversight Board argues at 3 - 4 of the Preliminary Statement
and at 16 of Mot., that this Court denied a substantially similar request for priority status,
referring to the *Court* Order [ECf 20569), *issued in relation of the opposition to the
reconsideration Motion of the August 4, 2021, omnibus* hearing

9.   Movants objects the Oversight Board contention. The fact on the matter is that
said Order, at its most simplistic, was of limited in scope, since related exclusively the
"Three Hundred Forty-Fifth Omnibus Objection, which concerned to the classifications of
certain claims as unsecured and because that procedure was not related to an application
of payment of an administrative expense.

10.   Therefore, the Oversight Board's interpretation of this Court's order is not
consistent with **Ritzen Group Inc. v. Jackson Masonry LLC, 18-938, 2020 BL 11881**
(Sup. Ct. Jan. 14, 2020), where the U.S. Supreme Court held, in reference to bankruptcy
court orders, citing *Bullard v. Blue Hills Bank*, 575 U.S. 496 at 501 (2015), that it "does
not matter whether the court rested its decision on a determination potentially pertinent
to other disputes in the bankruptcy case... Court Orders are final only when they

4

"definitively dispose of discrete disputes within the overarching bankruptcy case. To be final under Bullard, an order must alter the status quo and fix the rights and obligations of the parties".

11.    In view of the limited scope of this Court's ruling, the Oversight Board is mistaken in its interpretation. Nothing in the record before us suggests that the order of reference, prohibit Movants to-seek administrative expense priority relief, based on future developments in the case. The Oversight Board interpretation would lead to an absurd result and should be rejected.

12.    Equally without merit is the argument presented by the Oversight Board Mot. at 5, 9, 21 and 22, including its interpretation of the pending Appeal in the case Acevedo Arocho, Prudencio, and where alleges that the defenses raise before the Puerto Rico Supreme Court, concerning similarly situated claimants, that their claims are time barred pursuant to statutes of limitations and laches, and could be dispositive in the underlying Action.

13.    To the extent Debtor's previously litigated the mentioned issues in the instance case, at the CFI trial and appeal level and lost, Movants incorporates by reference all allegations and legal arguments set forth in Movants Reply to Objection of the Commonwealth of Puerto Rico to Urgent Motion Requesting Modification of Lift of Stay, as if fully transcribed herein. (ECF 21674)

14.    Similarly, for being equally distorted and observes the same rhetorical approach, with respect the interpretation of case law that alleges support its objection regarding the Pre-petition Administrative Expense liability, Mot. at 11, 12, 13, 14, and 15 Movants submits that the arguments presented are without regards to the facts and constitutes

inaccurate generalizations, to mislead the Court on the correct interpretation of the
subsection (A) (ii), which was added to the Bankruptcy Code in 2005, as part of the
BAPCPA Amendments.

15. In regards the Oversight Board argument that neither the statutory text nor case
law supports the administrative expense request. at Mot. 10, Movants submits that lacks
substantive support, for the fallowing reasons.

16. First, because when the case law cited is analyzed, can be determined that the
Oversight Board relies on language plucket out of cases without context and are highly
misleading. In addition, because most of the cases cited address issues regarding priority
status of discharged employees seeking damages for violation of the Worker Adjustment
and Retraining Notification Act (the WARN Act), or severance pay, and there are
fundamental distinction between WARN Act and severance payments, and the salary or
wages that a workman has constructively earned by reason of services rendered as an
employee and is entitled to receive under their employment contract. Also, because
severance pay is to compensate employees, for the dislocation resulting from termination
of employment, not for work performed.

17. Second, In view of the above, the case law in which the Oversight Board rely,
not only lacks precedential guidance in the matter under consideration, but also are
contrary to the true spirit of subsection 503 (b) (1) (A) (ii), due to the limited perspective
of the analysis. In fact, there are only a handful of cases interpreting subsection (ii) and
they are generally addressing controversies concerning "severance programs". We have
found no case specifically dealing or addressing administrative expense claims of
regular employees with back pay judgements against their employers.

18. For example, the Oversight Board at Mot. at 13, cite the case of 710 Long Ridge Rd. 505 B.R. at 176 to try to support of their position, regarding that although some courts have awarded back pay for prepetition periods, to qualify for administrative expense priority the award must be attributable to the post-petition period" agues, that the administrative expense priority was granted to portion of claims regarding lost wages for several post petition days thus "attributable to" post petition period.

19. The problem with the argument, is that in Long Ridge Rd the priority seek was for Debtors' failure to reinstate striking employees and the Claimants seek to have the Back Pay Claims classified as priority wage and benefit claims for the full 180–day period prior to the chapter 11 filing pursuant to 11 U.S.C. § 507(a)(4) and 11 U.S.C. § 507(a)(5).

20. Another misleading case in which the Oversight Board rely on, at 13 Mot. is *Philadelphia Newspapers,* since provides no support for Debtors arguments. Particularly because although the court interpreted the phrase "attributable to any period of time occurring after commencement of the case under this title" to require the claim accrue post-petition to be compensable as an administrative expense, the Oversight Board omits that claimants in Philadelphia Newspapers was a discharged employee whose claim was partially based on his post-petition payments of healthcare premiums for post petition healthcare. Therefore, the controversy was also distinct.

21. Equally misleading is the reference the Oversight Board at 13, where cites In re Calumet Photographic, Inc., No. 14-08893, 2016 WL 3035468, at *3 (Bankr. N.D. Ill. May 19, 2016) to argue that, the plain meaning of [section 503(b)(1)(A)(ii)] requires a court to determine if a claim relates to a post-petition time period despite the fact that the violation timing is of no regard."

22. The fact is that other courts have criticized the Calumet court's reading of subsection (ii), since effectively erases the more specific language included in referenced disposition, stating that it does not matter "whether any services were rendered." *See In re Word Marketing Chicago*, 564 B.R. 587 (Bankr. N.D. III. 2017). Also, see *Philadelphia Newspapers*, 433 B.R. at 174-75.

23. To the same effect, Movants objects the argument included **at 15 of the Mot.** concerning the Oversight Board interpretation of the cases of Mason v Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.), 291 F.3d 111, 126 (1st Cir. 2002), as being dispositive is misplaced, since notably these cases were decided prior to the 2005 BAPCPA Amendment and are clearly inapplicable.

24. Neither, In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), also cited by the Oversight Board, supports the theory regarding that pre-petition claims are not entitled to administrative priority, even if the right to payment arises post-petition.

25. Again, the Carco case is clearly distinct from the present, since the court did not considered the application of subsection (A) (ii) of the Bankruptcy Code, because the facts under consideration were not for wages owed, but for alleged damages sustained by an automobile dealer, as a result of the voluntary termination by the dealer of its sales and service agreements with the automobile manufacturer. The decision is thus wholly distinguishable.

26. Therefore, and to place in context the Oversight Board arguments, must be considered that the Courts when have interpreted subsection (ii), are addressing claims

8

under WARN Act or severance pay claims and courts, often distinguish between severance pay based on length of service and severance pay in lieu of notice of termination, (pre or post-petition periods) for determining the damages calculation of severance payments and this cases does not support the Oversight Board theory. For an excellent analysis of the different treatment of damages, for violations of WARN Act and severance pay under section 503 (b) (1) (A) (ii) and 507 (a) (4) (A) see In re Ellipsat, Inc., 480 B.R.1 (Bankr. D.D.C. 2012. *See, also, In re Uly–Pak, Inc.,* 128 B.R. 763, 767 (Bankr.S.D.Ill.1991) ("The distinction between the two categories of severance pay ... has become ossified into a rule of law.").

27.    For being equally misleading, Movants objects the Oversight Board reliance **at 15 of the Mot**. in the cases of Mason v Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.), 291 F.3d 111, 126 (1st Cir. 2002), as being dispositive, since notably these cases were decided prior to the 2005, BAPCPA Amendment and are clearly inapplicable.

28.    Neither, In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), also cited by the Oversight Board, supports the theory regarding that pre-petition claims are not entitled to administrative priority, even if the right to payment arises post-petition.

29.    Again, the Carco case is clearly distinct from the present, since the court did not considered the application of subsection (A) (ii) of the Bankruptcy Code, because the facts under consideration were not for wages owed, but for alleged damages sustained by an automobile dealer, as a result of the voluntary termination by the dealer of its sales

and service agreements with the automobile manufacturer. The decision is thus wholly
distinguishable.

30. To illustrate, that the Oversight Board theory misrepresents the case law and
theory of liability regarding the payment as administrative expense of pre-petition wage
claims, to try to evade its payment responsibility for wages illegally held from Movants
as regular employees, the case of *In re Burlington N.R.R. Co. v. Dant & Russell, Inc. (In
re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988), is convincenly telling.
Specifically, because the BAP noted, that because the dismiss employee (WARN Act
claimants) did not work during the post-petition period, there is no post-petition benefit to
the estate and no post-petition conduct to justify the allowance of back pay as an
administrative expense. Simply stated, taking money from the estate to pay back wages
to an individual who did not work is detrimental, not beneficial to the estate. The fact of
the matter is that this decision is in line with the majority of courts in the country.

31. Therefore, Movants submits that under the fundamental principle of statutory
construction the standard applicable is that a statute must be analyze as a whole and not
to limit to read a phase..."attributable in isolation and without considering the whole
statute, the Oversight Board theory, does not stands. [4] See Maine People's All. In addition,
Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 290 (1st Cir. 2006) ("[C]ourts
should strive to interpret statutes as a whole and to give effect to every word and phrase."
(citations omitted))

---

[4] See generally Thomas F. Waldron & Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial
Perspective after Two Years of BAPCPA, 81 AM. BANKR. L.J. 195 (2007) See also, David Dyzenhaus & Michael
Taggart, Reasoned Decisions and Legal Theory, in Common Law Theory ┬ 134 (Douglas E. Edlin ed., 2007).

10

**32. Also because**, subsection (A) (ii), not only imposes the requirement, for determining if a wage claim qualifies for administrative expense priority, (a) that services for which payment is seek "must be the actual and necessary costs of preserving the estate, but also requires (b) claimants submit the court evidence that by virtue of the application of (ii), will not substantially increase the probability of layoff or termination of current employees, is clear Movants have complied the statutory standards.

33. In addition, must be considered that when Congress added subsection (ii) in 2005 as part of the BAPCPA amendments, as a new category of administrative claim, separate from subsection (i), specifically states that wages and benefits are to be treated as administrative expenses and regardless of the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees". The inclusion of this language in subsection (ii) is in stark contrast to the language in subsection (i) referring to wages, salaries, and commissions for services rendered after the commencement of the case.

34. Because here it is plain that subsection (ii) does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed, Movants submits that if solvent employers were permitted a "safe harbor" that allowed them to pay the employees less of what they are legally entitled, there would be no deterrent effect of monetary penalties that can be essential to ensure wage law compliance.

35. Therefore, having Movants submitted this Court convincing evidence regarding the Commonwealth cash deposit in banks, and that establish that the payment of Movants

wage claims as administrative priority will not substantially increase the probability of layoff or termination of current employees, clearly this supports Movants priority expens application, since there is no legal obstacle for granting the relief seek, under fundamental fairness doctrine, as ahead will be discissed in more detail.

36.    Consequently, Movants objects the Oversight Board argument, Mot. at 11, footnote No. 6, where rhetorically argues that since "Movants have not met the first requirement that the wages be "attributable to" the post-petition period, it was unnecessary to address the requirement provided under subsection (A) (ii), as to whether the payment of the asserted claims would not cause the Debtor to become insolvent".

37.    This argument must not stand to prevent the analysis the bankruptcy court is required to conduct under subsection (ii), and should be rejected. See *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006), *In re Philip Services Corp.,* 310 B.R. 802, 808 (Bankr.S.D.Tex. 2004); See also, and Demarest v. Manspeaker, 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (applying statute's terms where the result was not "so bizarre that Congress could not have intended it" (internal quotation omitted));

38.    In inviting this Court to turn its back on determining whether because of the application of subsection (A) (ii), will not substantially increase the probability of layoff or termination of current employees, the Oversight Board invites the Court to turn its back on Congress and the public policy against Bankruptcy abuses from administrative solvent debtors under Chapter 11 reorganizations.

39.    In view of the above, Movants must insist, that under the public interest subsection A (ii) holds, and having Movants demonstrated that this is a solvent debtors case, as ahead will be discussed in more detail, they are entitled for pre-petition back

pay. Particularly, because it is plain that Subsection A (ii) does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed, Movants Motion should be granted as a matter of law.

## B. The Motion Establish Entitlement to Allowance for the Post-petition Portion Under 503 (b) (1)(A),subsection (i)

40. In regards the Post Petition Portion, Movants submits that the Oversight Board's argument Mot. at 19, were express the theory that since Movants concede that the Prepetition Portion is contingent on the resolution of the Underlying Action, the same contingency applies to the Post-petition Portion because it is based on the same theory of liability, is also without merit. The Oversight Boards argument, is mistaken at several levels.

41. First, It is well-settled that regular employees services is a recognized means of protecting and preserving the estate, thus providing a benefit to the estate. Consequently, is undisputed that under subsection (i), for a claim to qualify for administrative expense priority the threshold or consideration is that the services supplied to the debtor, are of benefit in the operation of its business. In re Hostess Brand, Inc. 499 B.R. 406, 411 (SDNY 2013). See also In re Grabb & Ellis Co. 478 BR 622, 624 (BANKR. S.D.N.Y. 2012). See also, In re AM Intern, Inc., 203 B.R. 898, 904 (Bankr. D. Del. 1996) (citing Lebron v. Mecham Financial, Inc., 27 F.3d 944 (3d Cir. 1994)).

42. The fact that Movants …have not jet a judgement, by itself is not dispositive, since Debtors omits in its argument, that Movants had continued working post – petition without being fully paid, as required under Commonwealth of Puerto Rico laws.

43. Second, In view of the above rule and the evidence presented, Movants have established a prima facie case of entitlement of payment of wages seek, not only under

applicable Commonwealth of Puerto Rico wage laws, but also under § 503(b)(1) requirements, since the claim for unpaid post petition services (1) arises from a transaction with the debtor-in-possession; and (2) the services supplied enhanced the ability of the Family Department, ARV and AIJ to function and continue providing the residents of Puerto Rico the essential services they need. *Matter of TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). After the movant has established a prima facie case, the burden of producing evidence shifts to the objector; *TransAmerican,* 978 F.2d at 1416. See also Rule 3001 (f) and Lundell v Anchor Constr. Specialist, Inc. 223 F 3rd 1035, 1039 ( 9th Cir. 2000) citing Wright v Holm (In re Holm), 931 f2d 620 (9th Cir. 1991)) The burden of providing evidence of a proof of claim validity rest with the objector.

44.   Third. This Court have approved substantially similar request for post petition administrative expense priority payments under subsection (i), at the Oversight Board request. See In re Financial Oversight and Management Board for Puerto Rico, 621 B.R. 289, 301 (D.P.R. 2020), aff'd, 7 F.4th 31 (1st Cir. 2021), concerning Luma Energy payment of administrative expense priority for services rendered, pursuant the T & D contract.

45.   Since the Movants identified in Exhibit 3 of the Motion, have continued providing important services to the  Department of Transportation, post-petition and benefitted the estate, which fact the Oversight Board does not appear to dispute. Under the applicable, well recognized standards of 11 USC section 503 (b) (1) (A) (i) Movants are entitled to receive payment of all outstanding obligations and back wages for services rendered and the Motion should be granted.

**III. Payment as Administrative Expense of back wages illegally withheld by an employer is Warranted under Fundamental Fairness and Public Interest**

14

46. The Supreme Court has long recognized that "bankruptcy courts are courts of equity that apply equitable principles in the administration of bankruptcy proceedings." See *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)

47. Consequently, courts have authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, and empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title." 11 U.S.C.A. sec. 105 (Westlaw through P.L. 116-164).

48. Even assuming arguendo that this Court considers that the requirements of Subsections (A) (i) (ii) are not met, which is denied, in the present case there are compelling justifications to grant Movant's request for administrative expense treatment under the doctrine of "fundamental fairness" adopted by the Supreme Court in Reading Co. v. Brown, 391 U.S. 471 (1968), as recently recognized by this Court (citing the Bankruptcy Appellate Panel for the First Circuit in the case of In re Healthco International Inc., 272 B.R. 510 (BAP 1st Cir. 2002), aff'd., 310 F3d 9 (1st Cir. 2002)), See also Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st Cir. 1985)) ( decided prior the 2005 BAPCPA amendment) where the Bankruptcy Appellate Panel for the First Circuit explained, that "the 'fundamental fairness' exception is recognized when the debtor's post-petition operations occasion tortious injuries to third parties (Reading[]), or when the claim arises from postpetition actions that deliberately violate applicable law and damage others (Charlesbank[])." Id. (citing ReadingCo., 391 U.S. 471).

15

49.    Particularly, when is considered that the harm (underpayment of regular wages, in violation of state law) suffered by the claimants are predicated on intentional misconduct due to the debtor as employer, and that the Oversight Board has raised nothing suggesting that the payment of the amounts seek pre-petition, will make the approved plan inoperable and thus, increase the probability of layoff and dismissal of employees.

50.    Also, because this Court must consider that, in realistic terms, the success of the Commonwealth reorganization relates directly to the commitment, ability and efforts of its employees to continue providing the residents of PR essential services.

51.    Consequently, put in context the illegal wage practice and pattern of abusive behavior to which Movants have been subjected, this Court must consider that as regular employees; depend on timely payments from their employers (Commonwealth) for their livelihood and subsistence. In this respect, Movants submits that they will suffer irreparable harm if the Motion is not granted, since they are being exposed to significant financial hardships, in view that the Commonwealth is not paying Movants the correct salary for work performed under a pay scale system that comply with the minimum wage laws and Commonwealth regulations.

52.    Also, because in the absence of such payments, is clear that many Movants may seek alternative employment opportunities, at a time when Employee support is critical.

53.    The First Circuit in Bessette v AVCO Financial Services, Inc, 230 F.3d 439. at 444-45 (1rt. Cir. 2000), recognized "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers — where 'necessary' or 'appropriate' — to facilitate the implementation of other Bankruptcy Code provisions." See also, Noonan v. Secretary of

16

*Health Human Servs. (In re Ludlow Hosp. Soc'y. Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991).

54.    Accordingly, numerous courts have use their equitable powers, pursuant to § 105(a) of the Bankruptcy Code, to authorize payment of a debtor's prepetition obligations, where such payments are necessary to make the purpose of a Chapter 11 reorganization. See e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with chapter 11's paramount rehabilitative goals. Ionosphere Clubs, 98 B.R. at 176. See also In re Jeans.com, 491 B.R$. 16, 23 (Bankr. DPR 2013); Comdisco, Inc., Case No. 01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001).

55.    In addition, because a handful of recent rulings from federal circuit courts have suggested that the solvent debtor exception in chapter 11 case, survived the Bankruptcy Code in 1978. See Gencarelli *v. UPS Capital Bus. Credit*, 501 F.3d 1, 7 (1st Cir. 2007) (holding that, in a solvent debtor case, the equities strongly favor holding the debtor, to his contractual obligations as long as those obligations are legally enforceable under applicable non-bankruptcy law"). See also, In re Ultra Petroleum Corp, 624 B.R.178 (Bankr. S.D. Tex. 2020) ("UPC"), leave *to appeal granted*, No. 21-20008 (5th Cir. Jan. 5, 2020), where although facts are different since referred to the payment of post-petition interest, the bankruptcy court ruled that, based on the legislative history, "Congress gave

17

no indication that it intended to erode the solvent debtor exception" when it enacted the Bankruptcy Code. *Id.* at 198. Moreover, it noted, "equitable considerations" continue to support it, including the policy against allowing a windfall at the expense of creditors to any debtor that can afford to pay all of its debts. *Id.* See also In re Dow Corning Corp., 456 F3d 668, 678 (6th Cir. 2006).

56. Consequently, and is considered the Commonwealth agencies conduct, and reiterated violation of the Commonwealth of Puerto Rico and federal minimum wage laws, Courts have reasoned that the "fresh start" of the Bankruptcy Code had its limits. Specifically, because the fresh start is for the unfortunate debtors. See Stellwagen Clun, 245 U.S. 605, 617 (1918) See Also Loc. Loan Co. v Hunt, 292 U.S. 234, 244 (1934) (describing the purpose of the bankruptcy law as giving the "honest but unfortunate debtor.... A new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt").

57. Due to the undisputed facts, and evidence provided, Debtors should be aware that although providing a debtor with a "fresh start" is a key objective of the Bankruptcy Code, courts will not necessarily turn a blind eye to illegal pre and post-petition conduct, and where debtors illegally-obtained an unjust enrichment form employee's work, there can be no question that "bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006); see also 11 U.S.C. § 105(a)

58. More so here, when is considered that this is a solvent debtor's case, where despite the fact the Commonwealth have suffered financial distress, has sufficient cash in bank deposit to continue operations, and thus, apply the Supreme Court ruling in

Reading, since gives administrative expense priority to the claim of a party who is injured by the operation of a business in chapter 11.

59. To allow the Commonwealth to now escape paying the back pay judgment, once established the Debtors administrative solvency and current bank cash accounts would violate "fundamental fairness" and result in an injustice. See *Republic Steel Corp. v. Labor Bd.,* 311 U.S. 7, 11, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940) ("a worker's loss in wages and in general working conditions must be made whole").

60. This, also makes good policy sense, under the rare cases exception, because if solvent employers were permitted a "safe harbor" that allowed them to paid the employee less had they known he or she legally is entitled, there would be no incentive to ensure employer wage law compliance, since affected employees would be left with no meaningful protection from employers wage laws violations.

61. For all of the foregoing reasons, a sound public interest exist to grand the expense priority to the back pay owed to Movants, for the pre and post-petition periods, as a result of Debtors agencies violation of federal minimum wage and Commonwealth of Puerto Rico Law No. 89 as amended an regulations.

## IV. An Alternative Approach

62. To facilitate the implementation of the Administrative expense priority relief herein requested, Movants submits that cause Exists to Order the creation of a trust fund to receive, process, honor, and pay any and all the Prepetition priority expenses obligations.

63. Particularly, because having the Oversight Board arbitrarily failed to comply with good faith principle and take timely action to transfer Movants Claims to the claim

reconciliation process (ACR) procedure, and although the Debtor indicated in its opposition to the Lift of stay Motion (ECF No. 21507) at Mot 5, that said process remains ongoing, the reality is that the Oversight Board, thought the Justice Department and in bad faith, Opposed the Modification of the Stay in the present case. Therefore, remains pending before this court the disposition of the lift of Stay Relief Motion. (see Movants Reply at ECF No. 21674).

64. Consequently, Movants relied on subsection 503 (b)(1)(A)(ii) and upon this courts equitable powers, pursuant to § 105(a), to bifurcate the Administrative expense application, and provide the Bankruptcy Court with the opportunity to creatively fashion a solution to rid the reorganized debtor from potentially crippling long-lived, illegal wage related violations. Particularly because by maintaining the stay, have caused that the determination as to the individual amounts claimants might be entitled and regarding how adequate protection payments could be worked out, remains pending.

65. Therefore, Movants submits that other Courts, under similar circumstances have approved similar relieves to the one requested in this Motion. In addition, this court must institute some method to ensure claimants affected by the Debtor's pre-petition conduct can recover from the bankruptcy estate. For example, refer the pre-petition claims to a mediation Committee to determine the individual computations of wages owed …. In addition, guarantee creditors adequate protection payments. See In re Johns-Manville Corp., 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984) ("Any plan not dealing with [future claimants'] interests precludes a meaningful and effective reorganization and thus inures to the detriment of the reorganization, See also, Alison J. Brehm et al., To Be, or Not to Be: The Undiscovered Country of Claims Estimation in Bankruptcy, 8 J. BANKR.

L. & PRAC. 197, 261 (1999) ("This sort of action was never contemplated by the Code's drafters and thus the court and the parties were left to their own devices to estimate the claims for purposes of working through the reorganization." (Internal citation omitted)).

66. Such appointment is also grounded on the Court's pervasive equitable powers emanating from Section 1481 of Title 28, U.S.Code and Section 105(a) of the Bankruptcy Code. These equitable powers are vested in this Court specifically to enable it to respond to extraordinary problems in estate administration consistent with the statutory goals of complex Chapter 11 cases.

67. For example, Bankruptcy courts have approved channeling injunctions in mass-tort cases not involving asbestos under their equitable powers in § 105(a). In exercising that power, however, courts have discretion to require compliance with § 524(g)'s standards.

68. Finally, must be brought to the consideration of the court, that since section 503(b)(1)(A) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants, if the debtor has the ability to pay and there is a need to do so. See In re Global Home Prods., LLC, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("[T]he timing of the payment of that administrative expense claim is left to the discretion of the Court.").

## V. CONCLUSION

69. Having Movants complied with subsections (i) (ii) tests, and there is no demonstration from the Oversight Board, that layoff or termination of employees would

occur if Movant's pre-petition back wages are paid, the determination of an Administrative

Expense priority must follow, as a matter of law and predicated on undisputed facts.

**WHEREFORE**, for the reasons stated above, Movants respectfully requests the

Court (i) overrule the Objection, (ii) enter an order granting the "Administrative Expense

Motion for pre and post-petition periods (iii), alternatively order the creation of a trust fund

to receive, process, honor, and pay any and all the Pre-petition Employee Obligations, on

ordinary course of business and on a post-petition basis and transfer Movants claims to

a Mediation Committee for the determination of the individual obligations and (iv) enter

any other relief as is just and proper.

### RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, on September 12, 2022.

IT IS HEREBY CERTIFIED, that on this same date we have electronically filed the

foregoing motion with the Clerk of the Court using the CM/ECF System, which will send

notification of such filing to all counsels of record.

By /s/ *Ivonne González Morales*
Ivonne González - Morales
USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonnegm@prw.net

Attorney for the Group Creditors

22