UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of

THE COMMONWEALTH OF PUERTO RICO, et al.,

    Debtors[1]

PROMESA
TITLE III
Case No. 17-BK-3283

(LTS)

RE: ECF No. 21230
ECF No. 21644

---

REPLY TO DEBTOR"S OBJECTION TO APPLICATION FOR ALLOWANCE OF
PAYMENT OF POST PETITION ADMINISTRATIVE EXPENSE PRIORITY CLAIMS,
FILED BY THE GROUP IN LITIGATION CAPTION ACEVEDO AROCHO ET. ALS. V
THE DEPARTAMENTO HACIENDA

To the Honorable United States District Court Judge Laura Taylor Swain:

    NOW COMES the group of 58 Auditors and Tax Specialist accumulated in the

litigation captioned Acevedo Arocho, Prudencio et als v Departamento de Hacienda Case

No. K AC 2003-5022 (the "Movant's"), by and through the undersigned attorney, to

respectfully state, allege and pray:

### I. **PRELIMINARY STATEMENT**

    1. The Movants are a group of 58 active or former Auditors and Tax Specialist

that worked or continue working at the Puerto Rico Treasury Department and have an

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and
the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i)
Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal
Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17
BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and
Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of
Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth
of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID:
9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-
LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case
numbers due to software limitations).

additional and separate cause of action, apart from the larger group of 1,600 active or former full-time career employees of the Puerto Rico Department of Treasury.

2. Movants seek an order for administrative expense status, pursuant to § 503(b) (1) (A) Subsections (i) and (ii) which gives them priority in a bankruptcy distribution and immediate payment pursuant to a confirmed plan provisions. 11 U.S.C. § 507(a) (2).

3. Specifically, Movants that the administrative expense claim stems from diverse settlement agreements entered by the treasury Department with a group of Auditors and Tax specialist that were accumulated in the Raul Hernandez Bujosa, CASP case No.CL-RET-99-05-1306 and pursuant to Stipulation entered , The Department of the Tresury agreed to reclassify the positions of the respective claimants or grant pay increases, due to evolution of functions created from the Division reorganization and were funds were assigned by the P.R. legislature, pursuant the Joint Resolution No. 499 of august 15, 1999 and Joint Resolution No, 49 of January, 4, 2003

4. Since Movants are similarly situated as the employees that were granted reclassifications or pay increases, and have worked or continue working at the Treasury Department, without the proper compensation, and pursuant to Supreme court doctrine in Santiago Declet v Family Department, 153 DPR 208 (2001) and Rivera Padilla v OAT, 189 DPR 315, which recognize the constitutional principle of equal pay for equal work, prior to the Title III petition filed a declaratory action, at the CFI, case No. K AC 2005-5022

5. Specifically, the Motion seek an order allowing an administrative claim in favor of the group of Auditors and Tax Specialist accumulated in the Acevedo Arocho case, in an estimated amount of $1,292,001.00 for unpaid services rendered after the filling of the

2

Title III petition (the "Post petition Portion"), and in an estimated amount of $ 3,134,265 million, for unpaid services provided in the pre-petition period. In regards the Prepetition Portion, Movants request the Commonwealth set aside funds for this entire amount and reserve their rights to amend the Motion in the event they are successful in the underlying litigation. In addition, request as further relief this court institute some method to ensure claimants affected by the Debtor's conduct, can recover from the bankruptcy estate. For example, by transferrin the applicable Title III pre-petition claims to the "ADR" mediation process. See Stay Relief Motion at 12 (ECF No. 20670)

6. In its Objection, the Oversight Board does not dispute that Movants provided pre and post-petition services to the Commonwealth and that received a benefit from these services. Most notably, the Oversight Board does not contest the facts included in the unsworn statement included in Exhibit 1 of the motion regarding the Resolutions entered by the CASP in the Case No. CL 99-05-1306 and that supports Movants application for payment of the required wage increases. Neither dispute the amount sought of unpaid regular wages seek by the Auditors and Tax Specialist, for  or the Debtor's cash flow report and thus, failed to demonstrate as to how the payment of prepetition back pay wages sought in the amount of $_3,134,265.00 million (The "Administrative Expense Pre-petition Claim"), by reason of the operation of subsection 503(b) (1) (A) (ii), will not substantially increase the probability of layoff or termination of current employees.[2] This

---

[2] Due to the fact that the CFI entered in 2020 a Partial judgment dismissing the principal cause of action included in the case of Acevedo Arocho, by plying statute of limitations, which at present is at the consideration of the PR Supreme Court, in abundance of care, in order to preserve the right of all claimants , was requested in the Motion to set aside 28 million pursuant to the proof of claim No. 51013 dollars filed in the case, to guarantee the ability to priority payment in favor of all claimants, if in the future obtained a judgment in their favor.

3

Court must consider these relevant factual foundations in evaluating and approving Movant's Administrative expense application.

7. In consequence, for the reasons set forth, the Oversight Board's objections all fail for the following reasons.

## I. ARGUMENT

### A. Movants' Prepetition Claims are Entitled to Administrative Expense Status since satisfies the criteria established under subsection 503 (b)(1)(A)(ii) of the Bankruptcy Code

8. To start is important the Court considers that the Oversight Board presents several theories and misleading arguments in opposition of Movants Administrative Expense application.

9. For example, at 3 - 4 of the Preliminary Statement and at 18 of Mot. the Oversight Board argues *that* this Court denied a substantially similar request for priority status, referring to the *Court* Order [ECf 20569)*, issued in relation to the opposition to the reconsideration Motion of the August 4, 2021, omnibus* hearing. According to the Oversight Board, the Court's interpretation of subsection (ii) as "extending only to "events that occur after the commencement of a bankruptcy case" Mot. At 16.

10. Movants object the Oversight Board's contention. The fact on the matter is that said Order, at its most simplistic, was of limited in scope since related exclusively to the "Three Hundred Forty-Fifth Omnibus Objection, which concerned to the classifications of certain claims as unsecured and because that procedure was not related to an application of payment of an administrative expense.

11. The Oversight Board's interpretation of the court order is contrary to U.S. Supreme Court decision in Ritzen Group Inc. v. Jackson Masonry LLC, 18-938, 2020

4

BL 11881 (Sup. Ct. Jan. 14, 2020), where held, in reference to bankruptcy court orders, citing *Bullard v. Blue Hills Bank*, 575 U.S. 496 at 501 (2015), that it "does not matter whether the court rested its decision on a determination potentially pertinent to other disputes in the bankruptcy case... Court Orders are final only when they "definitively dispose of discrete disputes within the overarching bankruptcy case. To be final under Bullard, an order must alter the status quo and fix the rights and obligations of the parties".

12.     In view of the limited scope of this Court's ruling, Movants submits that nothing in the record before us suggests that the order of reference prohibits Movants to seek administrative expense priority relief, based on future developments in the case. The Oversight Board's interpretation would lead to an absurd result and should be rejected.

13.     Equally without merit is the argument presented by the Oversight Board Mot. at 5, 9, 21 and 22  including its interpretation of the pending Appeal in the case Acevedo Arocho, Prudencio, and where alleges that the defenses raised before the Puerto Rico Supreme Court, concerning similarly situated claimants, that their claims are time-barred pursuant to statutes of limitations and laches, and could be dispositive in the Underlying Action.

14.     To the extent the Partial judgement entered in 2001 by the CFI, did not find Movants cause of action had prescribed, nor was applied to Movants claims the defense of laches, and to the contrary, the court set the Auditors case for a hearing, Movants incorporates by reference all allegations and legal arguments set forth in the Reply to Objection of the Commonwealth of Puerto Rico to Urgent Motion Requesting Modification of Lift of Stay, as if fully transcribed herein[3]. (ECF 21674)

---

[3] The Motion for Modification of the Stay under section 362, filed by Movants  (Docket entry 20670) is still pending resolution by this Court.

15. In addition. and because the Oversight Board cannot justify its objections to Movants Administrative pre-petition claims ,in case law , as following will be discussed in more detail, relies on language plucked out of cases without regard to the facts and inaccurate generalizations when cites Mot. at 19 – 11- 12 – 13 and 14 to mislead the Court on the correct interpretation of subsection (A) (ii), which was added to the Bankruptcy Code in 2005, as part of the BAPCPA Amendments.

16. Particularly because most of the cases cited by the Oversight Board address issues regarding the priority status of discharged employees seeking damages for violation of the Worker Adjustment and Retraining Notification Act (the WARN Act), or severance pay, and there are fundamental distinctions between WARN Act and severance payments, and the salary or wages that a workman has constructively earned by reason of services rendered as an employee and is entitled to receive under an employment contract. In addition, severance pay is to compensate employees for the dislocation resulting from termination of employment, not for work performed.

17. Therefore, the case law in which the Oversight Board rely upon lacks not only precedential guidance in the matter under consideration but also are contrary to the true spirit of subsection 503 (b) (1) (A) (ii), due to the limited perspective of the analysis. In fact, there are only a handful of cases interpreting subsection (ii) and they are generally addressing controversies concerning "severance programs". We have found no case specifically dealing or addressing administrative expense claims of regular employees with back pay judgments against their employers.

18.   Here is relevant to note that in its Objection the Oversight Board does not dispute that Movants as regular employees, provided services in the pre and post-petition periods in benefit of the Commonwealth. Nor dispute the Reorganization of the Auditors and Tax specialist division and evolution of functions of the employees assigned to mention division.   Most notably, neither objects the estimate of the amounts claim by Movants, for pre- and post-petition period, nor the bank cash deposits the Commonwealth has.

19.   Instead, the Oversight Board argues at Mot. 10, without any substantive support, that the back pay asserted for the prepetition period should be denied, based on the theory that neither the statutory text nor case law supports the request.  Movants submit that these arguments fails.

20.   As an example, the Oversight Board at Mot. at 13, cites the case of 710 Long Ridge Rd. 505 B.R. at 176, to try to support its theory regarding that although some courts have awarded back pay for prepetition periods, to qualify for administrative expense priority the award must be attributable to the post-petition period" and argues, that the administrative expense priority was granted to a portion of claims regarding lost wages for several post-petition days thus "attributable to" post-petition period.

21.   The problem with this argument is that the reality and bottom line is, that the Courts when have interpreted subsection 503 (b) (1) (A)  (ii) of the Bankruptcy Code, are addressing claims under WARN Act or severance pay claims and courts, often distinguish between severance pay based on length of service and severance pay in lieu of notice of termination, (pre or post-petition periods) for determining the damages calculation of severance payments and this cases does not support the Oversight Board theory. The Long Ridge Rd. case is no exception, since claims were awarded following the stated

principle.  For an excellent analysis of the different treatment of damages for violations of WARN Act and severance pay under sections 503 (b) (1) (A) (ii) and 507 (a) (4) (A) see In re Ellipsat, Inc., 480 B.R.1  (Bankr. D.D.C. 2012. *See, also, In re Uly–Pak, Inc.,* 128 B.R. 763, 767 (Bankr.S.D.Ill.1991) ("The distinction between the two categories of severance pay ... has become ossified into a rule of law.").

22.  Equally misleading is the argument included Mot. at 13 n 7. where the Oversight Board rely in *In re Powermate Holding Corp.*, 394 B.R. 765, 774-75 (Bankr. D. Del. 2008), to represent that courts have adopted an even stricter approach, concluding that only employees claim that vest after the petition date are entitled to administrative expense treatment.  However, the Oversight Board intentionally omits that other courts, in subsequent **better-reasoned cases that have examined this subsection,** have rightly rejected that reading and have convincingly demonstrated that, on the contrary, subsection (ii) provides an *additional* category of administrative claims, separate from subsection (i). *See, e.g.,* Matthews v. Truland Group., Inc. (In re Truland Group., Inc.), 520 B.R. 197 at 202-03 (2014). Also omits that the Truland court interpreting subsection 503 (b) of the Bankruptcy Code, determined that the "vesting date" is immaterial. *See also Philadelphia Newspapers*, 433 B.R. at 173-74  where the bankruptcy court determined that a back pay claim can constitute an administrative expense, even if it is awarded for services rendered before the commencement of a bankruptcy case. in addition, because here, the Court also determined that the word "and," ties together all *nine* different categories of administrative claims, including such diverse items as taxes, professional fees and the cost of closing a health care business.  No one would suggest

that Congress intended that an administrative claim satisfy all nine. See also, In re Fin. Oversight & Mgmt. Bd. for P.R., 621 B.R. 289 (D.P.R. 2020), (same).

23.     Concerning the Oversight Board assertion at 13 of the Mot. that Calumet *Photographic*, 2016 WL 3035468, No. 14-08893, , at \*3 (Bankr. N.D. Ill. May 19, 2016) supports its theory regarding how other courts have interpreted the phrase "attributable" to wages and benefits that accrue in post-petition, is equally misleading.

24.     The fact is that other courts have rejected this argument by criticizing the Calumet court's reading of subsection (ii), since effectively erases the more specific language included in referenced disposition, stating that it does not matter "whether any services were rendered." *See In* re Word Marketing Chicago, 564 B.R. 587 (Bankr. N.D. Ill. 2017). Also, see *Philadelphia Newspapers*, 433 B.R. at 174-75.

26.     For being equally misleading, Movants objects the argument included **at 15 of the Mot**. concerning the Oversight Board interpretation of the cases of Mason v Mason v. Off. Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 48 (1st Cir. 2003) and Mass. Div. of Emp: & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.), 291 F.3d 111, 126 (1st Cir. 2002), as being dispositive is misplaced since notably these cases were decided prior to the 2005 BAPCPA Amendment and are clearly inapplicable.

26.     Neither, In re Old Carco LLC, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), also cited by the Oversight Board, supports the theory regarding that pre-petition claims are not entitled to administrative priority, even if the right to payment arises post-petition.

27.     Again, the Carco case is clearly distinct from the present. Particularly because the court did not consider the application of subsection (A) (ii) of the Bankruptcy Code,

9

since the facts under consideration were not for wages owed but for alleged damages sustained by an automobile dealer because of the voluntary termination by the dealer of its sales and service agreements with the automobile manufacturer. The decision is thus wholly distinguishable.

28.    Also, because, as indicated,  the Oversight Board theory, is in conflict with the majority of courts' findings . To said effect Movants submits that in In re *Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 706 (9th Cir.1988),  the BAP correctly noted, that because the dismissed employee (WARN Act claimants) did not work during the post-petition period, there is no post-petition benefit to the estate and no post-petition conduct to justify the allowance of back pay as an administrative expense. Simply stated, taking money from the estate to pay back wages to an individual who did not work is detrimental and not beneficial to the estate. The fact of the matter is that this decision is in line with the majority of courts in the country.

29.    Consequently, Movants submits that under the fundamental principle of statutory construction the standard applicable is that a statute must be analyzed as a whole and not to limit to read a phase..." attributable" in isolation and without considering the whole statute, the Oversight Board theory, does not stands.[4] See Maine People's All. In addition, Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 290 (1st Cir. 2006) ("[C]ourts should strive to interpret statutes as a whole and to give effect to every word and phrase." (citations omitted)

---

[4]    See generally Thomas F. Waldron & Neil M. Berman, Principled Principles of Statutory Interpretation: A Judicial Perspective after Two Years of BAPCPA, 81 AM. BANKR. L.J. 195 (2007) See also, David Dyzenhaus & Michael Taggart, Reasoned Decisions and Legal Theory, in Common Law Theory, 134 (Douglas E. Edlin ed., 2007).

30.    Therefore, when is considered that subsection (A) (ii), not only imposes the requirement for determining if a wage claim qualifies for administrative expense priority, (a) that services for which payment is sought "must be the actual and necessary costs of preserving the estate, but also requires  (b) claimants submit the court evidence that by virtue of the application of (ii), will not substantially increase the probability of layoff or termination of current employees, is clear Movants have complied the statutory standards.

31..    Therefore, and contrary the Oversight Board's theory,  under subsection A (ii) a party may be able to hold a claim for pre-petition back pay since it is plain that said Subsection does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed.

32.    In addition, when is considered that Congress added subsection (ii) in 2005 as part of the BAPCPA amendments, as a new category of an administrative claim, separate from subsection (i), "regardless of the date when the wages were earned and whether there was any concrete benefit to the estate or whether the claimant performed any work at all if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees", this makes good policy sense.

33.    Here, must be highlighted that when Congress added subsection (ii) to section 503 (b) (1) (A), the public interest was to stop employers' abuses....and eradicate unfair labor practices in those rare cases where Chapter 11 debtors are administratively solvent.

11

34.     Therefore, and having Movants submitted this Court convincing evidence regarding the Commonwealth Cash Flow report dated September 3, 2021 which is attached hereto as Exhibit 3, and is made a part hereof. and which reasonably establishes that the payment of Movants wage claims, as administrative priority will not substantially increase the probability of layoff or termination of current employees, Movants objects to the Oversight Board argument, Mot. at 11, footnote No. 6, where rhetorically argues that since "Movants have not met the first requirement that the wages be "attributable to" the post-petition period, it was unnecessary to address the requirement provided under subsection (A) (ii), as to whether the payment of the asserted claims would not cause the Debtor to become insolvent". [5]

35.     This argument must not stand to prevent the analysis the bankruptcy court is required to conduct under subsection (ii), and should be rejected. See *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006),  *In re Philip Services Corp.,* 310 B.R. 802, 808 (Bankr.S.D.Tex. 2004); See also, and *Demarest v. Manspeaker,* 498 U.S. 184, 191, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (applying statute's terms where the result was not "so bizarre that Congress could not have intended it" (internal quotation omitted).

36.     In inviting this Court to turn its back on determining whether because of the application of subsection (A) (ii), will not substantially increase the probability of layoff or termination of current employees, the Oversight Board invites the Court to turn its back on Congress and the public policy against Bankruptcy abuses from administrative solvent debtors under Chapter 11, reorganizations.

---

[5] See  page 4 and 5 of the report that shows that the Commonwealth has currently in banks deposits,  a cash account balance of $11.4 billion of unrestricted cash that under Puerto Rico's Constitution can and should, at least a substantial part, be used for debt adjustment  purpose. These amount is just part of the over $25.335 billion in cash Commonwealth currently holds

37.  Also, because properly analyzed Subsection (ii) advances the cause of fairness since is clearly directed to protect the workers, in those rare cases where the Chapter 11 debtor is administratively solvent and on the other hand, secure that the Bankrupt business continues to have cash availability during restructuring. That is why Congress requires the creditors to submit to the court clear, convincing evidence that the payments of the wages seek will not increase the probability of layoff or termination of current employees.

38.  In view of the above, Movants must insist,  that because the public interest subsection A (ii) holds, and having Movants demonstrated that this is a solvent debtors case, they are entitled for pre-petition back pay, in view of the Reorganization of Movants Division and Legislative Resolutions in support of granting affected employees a wage increase Oversight Board arguments are without merit . Particularly because it is plain that Subsection A (ii) does not differentiate between judgments entered before and one entered after a bankruptcy petition is filed.

**B.   The Motion Establish Entitlement to Allowance for the Post petition Portion Under 503 (b) (1)(A), Subsection (i).**

39.  In regards the Post Petition Portion, Movants submits that the Oversight Board's Argument Mot. at 19, were rely on the theory that   since Movants concede that the Prepetition Portion is contingent on the resolution of the Underlying Action, the same contingency applies to the Post-petition Portion because it is based on the same theory of liability, is also without merit.  The Oversight Boards argument is mistaken at several levels.

40.  First, It is well settled that regular employees services is a recognized means of protecting and preserving the estate, thus providing a benefit to the estate. Under

subsection (i), for a claim to qualify for administrative expense priority the threshold or consideration is that the services supplied to the debtor, are of benefit in the operation of its business. In re Hostess Brand, Inc 499 B.R. 406, 411 (SDNY 2013). See also In re Grabb & Ellis Co. 478 BR 622, 624 (BANKR. S.D.N.Y. 2012). See also, In re AM Intern, Inc., 203 B.R. 898, 904 (Bankr. D. Del. 1996) (citing Lebron v. Mecham Financial, Inc., 27 F.3d 944 (3d Cir. 1994).

41. The fact that Movants …have not jet a judgement, by itself is not dispositive, since Debtors omits in its argument, that Movants had continued working post – petition without being fully paid, as required under Commonwealth of Puerto Rico laws.

42. Second, by the evidence presented, Movants have established a prima facie case of entitlement of payment of wages seek, not only under applicable Commonwealth of Puerto Rico wage laws, but also under § 503(b)(1) requirements, since the claim for unpaid post petition services (1) arises from a transaction with the debtor-in-possession; and (2) the services supplied enhanced the ability of the Family Department, ARV and AIJ to function and continue providing the residents of Puerto Rico the essential services they need. *Matter of TransAmerican Nat. Gas Corp.* , 978 F.2d 1409, 1416 (5th Cir. 1992). After the movant has established a prima facie case, the burden of producing evidence shifts to the objector; *TransAmerican,* 978 F.2d at 1416. See also Rule 3001 (f) and Lundell v Anchor Constr. Specialist, Inc. 223 F 3rd 1035, 1039 (9th Cir. 2000) citing Wright v Holm (In re Holm), 931 f2d 620 (9th Cir. 1991)) The burden of providing evidence of a proof of claim validity rest with the objector.

43. Third, this Court have approved substantially similar request for post petition administrative expense priority payments under subsection (i), at the request of the

Oversight Board. See In re Financial Oversight and Management Board for Puerto Rico,
621 B.R. 289, 301 (D.P.R. 2020), aff'd, 7 F.4th 31 (1st Cir. 2021), concerning Luma
Energy payment of administrative expense priority for services rendered, pursuant the T
& D contract.

44.    Since the Movants identified in Exhibit 2, have continued providing important
services to the Treasury Department, post-petition and benefitted the estate, which fact
the Oversight Board does not appear to dispute. Under the applicable, well recognized
standards of 11 USC section 503 (b) (1) (A) (i) Movants are entitled to receive payment
of all outstanding obligations and back wages for services rendered and the Motion
should be granted.

### III. Payment of back wages illegally retained as Administrative Expense is warranted under Fundamental Fairness and Public Interest.

45.    The Supreme Court has long recognized that "bankruptcy courts are courts of
equity that apply equitable principles in the administration of bankruptcy proceedings."
See Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

46.    Consequently, courts have authorized payment of prepetition claims in
appropriate circunstances pursuant to Bankruptcy Code Section 105(a), which codifies
the inherent equitable powers of the bankruptcy court, and empowers the bankruptcy
court to "issue any order, process, or judgment that is necessary or appropriate to carry
out the provisions of this Title." 11 U.S.C.A. sec. 105 (Westlaw through P.L. 116-164).

47.    Even assuming arguendo that this Court considers that the requirements of
Subsections (A) (i) (ii) are not met, which is denied, in the present case there are
compelling justifications to grant Movant's request for administrative expense treatment
under the doctrine of "fundamental fairness" adopted by the Supreme Court in Reading

15

Co. v. Brown, 391 U.S. 471 (1968), as recently recognized by this Court (citing the

Bankruptcy Appellate Panel for the First Circuit in the case of In re Healthco International

Inc., 272 B.R. 510 (BAP 1st Cir. 2002), aff'd., 310 F3d 9 (1st Cir. 2002)), See also Spunt

v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st

Cir. 1985)) ( decided prior the  2005 BAPCPA amendment) where  the Bankruptcy

Appellate Panel for the First Circuit explained, that "the 'fundamental fairness' exception

is recognized when the debtor's post-petition operations occasion tortious injuries to third

parties (Reading[]), or when the claim arises from postpetition actions that deliberately

violate applicable law and damage others (Charlesbank[])." Id. (citing ReadingCo., 391

U.S. 471);

48.     Particularly, when is considered that the harm (underpayment of regular

wages, in violation of state law) suffered by the claimants are predicated on intentional

misconduct due to the debtor as employer, and that the Oversight Board has raised

nothing suggesting that the payment of the amounts seek pre-petition, will make the

approved plan inoperable and thus, increase the probability of layoff and dismissal of

employees.

49.  Also, because this Court must consider that, in realistic terms, the success of

the Commonwealth reorganization relates directly to the commitment, ability and efforts

of its employees to continue providing the residents of PR essential services.

50.  Consequently, put in context the illegal wage practice and pattern of abusive

behavior to which Movants have been subjected, this Court must consider that as regular

employees; depend on timely payments from their employers (Commonwealth) for their

livelihood and subsistence. In this respect, Movants submits that they will suffer

irreparable harm if the Motion is not granted, since they are being exposed to significant financial hardships, in view that the Commonwealth is not honoring the Employee Obligations.

51. Also, because in the absence of such payments, is clear that many Movants may seek alternative employment opportunities, at a time when Employee support is critical.

52. The First Circuit in Bessette *v AVCO Financial Services, Inc*, 230 F.3d 439. at 444-45 (1rt. Cir. 2000), recognized "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers — where `necessary' or `appropriate' — to facilitate the implementation of other Bankruptcy Code provisions." See also, *Noonan v. Secretary of Health Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991).

53. Accordingly, numerous courts have use their equitable powers, pursuant to § 105(a) of the Bankruptcy Code, to authorize payment of a debtor's prepetition obligations, where such payments are necessary to make the purpose of a Chapter 11 reorganization. See e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the "ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"). The rationale for making payments to prepetition creditors under the doctrine of necessity is consistent with chapter 11's paramount rehabilitative goals. Ionosphere Clubs, 98 B.R. at 176. See

also In re Jeans.com, 491 B.R$. 16, 23 (Bankr. DPR 2013); Comdisco, Inc., Case No.
01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001).

54. In addition, a handful of recent rulings from federal circuit courts have suggested
that the solvent debtor exception in chapter 11 case, survived the Bankruptcy Code in
1978. See Gencarelli *v. UPS Capital Bus. Credit*, 501 F.3d 1, 7 (1st Cir. 2007) (holding
that, in a solvent debtor case, the equities strongly favor holding the debtor to his
contractual obligations as long as those obligations are legally enforceable under
applicable non-bankruptcy law");. See also, In re Ultra Petroleum Corp, 624 B.R.178
(Bankr. S.D. Tex. 2020) ("UPC"), leave *to appeal granted*, No. 21-20008 (5th Cir. Jan. 5,
2020), where although facts are different since referred to the payment of post-petition
interest, the bankruptcy court ruled that, based on the legislative history, "Congress gave
no indication that it intended to erode the solvent debtor exception" when it enacted the
Bankruptcy Code. *Id.* at 198. Moreover, it noted, "equitable considerations" continue to
support it, including the policy against allowing a windfall at the expense of creditors to
any debtor that can afford to pay all of its debts. *Id.* See also In re Dow Corning Corp.,
456 F3d 668, 678 (6th Cir. 2006).

55. Consequently, and is considered the Commonwealth agencies conduct, and
reiterated violation of the Commonwealth of Puerto Rico and federal minimum wage laws,
Courts have reasoned that the "fresh start" of the Bankruptcy Code had its limits.
Specifically, because the fresh start is for the unfortunate debtors. See Stellwagen n
Clun, 245 U.S. 605, 617 (1918) See Also Loc. Loan Co. v Hunt, 292 U.S. 234, 244 (1934)
(describing the purpose of the bankruptcy law as giving the "honest but unfortunate

debtor.... A new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt").

56.    Due to the undisputed facts, and evidence provided, Debtors should be aware that although providing a debtor with a "fresh start" is a key objective of the Bankruptcy Code, courts will not necessarily turn a blind eye to illegal pre and post-petition conduct, and where debtors illegally-obtained an unjust enrichment form employee's work, there can be no question that "bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006); see also 11 U.S.C. § 105(a)

57.    More so here, when is considered that this is a solvent debtor's case, where despite the fact the Commonwealth have suffered finantial distress, has sufficient cash in bank deposit to continue operations, and thus, apply the Supreme Court ruling in Reading, since gives administrative expense priority to the claim of a party who is injured by the operation of a business in chapter 11.

58.    To allow the Commonwealth to now escape paying the back pay judgment, once established the Debtors administrative solvency and current bank cash accounts would violate "fundamental fairness" and result in an injustice. See *Republic Steel Corp. v. Labor Bd.,* 311 U.S. 7, 11, 12, 61 S.Ct. 77, 85 L.Ed. 6 (1940) ("a worker's loss in wages and in general working conditions must be made whole").

59.    This, also makes good policy sense, under the rare cases exception, because if solvent employers were permitted a "safe harbor" that allowed them to paid the employee less had they known he or she legally is entitled, there would be no incentive

to ensure employer wage law compliance, since affected employees would be left with no meaningful protection from employers wage laws violations

60.   For all of the foregoing reasons, a sound public interest exist to grand the expense priority to the back pay owed to Movants, for the pre and post-petition periods, as a result of Debtors agencies violation of federal minimum wage and Commonwealth of Puerto Rico Law No. 89 as amended an regulations.

## IV. An Alternative Approach

61.   To facilitate the implementation of the Administrative expense priority relief herein requested, Movants submits that cause Exists to Order the creation of a trust fund to receive, process, honor, and pay any and all the Prepetition priority expenses obligations.

62.   Particularly, because having the Oversight Board arbitrarily failed to comply with good faith principle and take timely action to transfer Movants Claims to the ACR procedure, and having Debtor indicated in its opposition to the Lift of stay Motion (ECF No. 21507) at Mot 5, that the claim reconciliation process remains ongoing, and  that claims documents were still being reviewed and continue to transfer claims into the ACR Procedure and the ADR Procedure, and when Debtors have determined that such procedure are appropriate for any particular claim or set of claim and are prepared to address such claims  and  at the same time, opposes the lift of stay Motion, which, remains pending before this court, this position is contrary to  Bankruptcy best procedural interest. and must be sanctioned.

63. Consequently, Movants relied on subsection 503 (b)(1)(A)(ii) and upon this courts   equitable authority, to bifurcate the Administrative expense application,  and

20

provide the Bankruptcy Court with the opportunity to creatively fashion a solution to rid the reorganized debtor from potentially crippling long-lived, illegal wage related violations.

64.    To said effect, Movants submits that other Courts have approved relief similar to the relief requested in this Motion. In addition, this court must institute some method to ensure claimants affected by the Debtor's pre-petition conduct can recover from the bankruptcy estate, to guarantee creditors adequate protection payments. See In re Johns-Manville Corp., 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984) ("Any plan not dealing with [future claimants'] interests precludes a meaningful and effective reorganization and thus inures to the detriment of the reorganization, See also, Alison J. Brehm et al., To Be, or Not to Be: The Undiscovered Country of Claims Estimation in Bankruptcy, 8 J. BANKR. L. & PRAC. 197, 261 (1999) ("This sort of action was never contemplated by the Code's drafters and thus the court and the parties were left to their own devices to estimate the claims for purposes of working through the reorganization." (internal citation omitted)).

65.    Such action is also grounded on the Court's pervasive equitable powers emanating from Section 1481 of Title 28, U.S.Code and Section 105(a) of the Bankruptcy Code. These equitable powers are vested in this Court specifically to enable it to respond to extraordinary problems in estate administration consistent with the statutory goals of complex Chapter 11 cases.

66.    For example, Bankruptcy courts have approved channeling injunctions in mass-tort cases not involving asbestos under their equitable powers in § 105(a).  In exercising that power, however, courts have discretion to require compliance with § 524(g)'s standards.

67. Finally, must be brought to the consideration of the court, that since section 503(b)(1)(A) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants, if the debtor has the ability to pay and there is a need to do so. See In re Global Home Prods., LLC, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) ("[T]he timing of the payment of that administrative expense claim is left to the discretion of the Court.").

## V. CONCLUSION

68. Having Movants complied with subsections (i) (ii) tests, and there is no demonstration from the Oversight Board, that layoff or termination of employees would occur if Movant's pre-petition back wages are paid, the determination of an Administrative Expense priority must follow, as a matter of law and predicated on undisputed facts.

**WHEREFORE**, for the reasons stated above, Movants respectfully requests the Court (i) overrule the Objection, (ii) enter an order granting the "Administrative Expense Motion for pre and post-petition periods (iii), alternatively order the creation of a trust fund to receive, process, honor, and pay any and all the Pre-petition Employee Obligations, on ordinary course of business and on a post-petition basis and (iv) enter any other relief as is just and proper.

### RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, on September 12, 2022.

IT IS HEREBY CERTIFIED, that on this same date we have electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsels of record.

By /s/ *Ivonne González Morales*
Ivonne González - Morales
USDC-PR 202701
P.O. BOX 9021828
San Juan, P.R. 00902-1828
Telephone: 787-410-0119
Email- ivonnegm@prw.net

Attorney for the Group Creditors