IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF DAVID BROWNSTEIN IDENTIFYING CITIGROUP GLOBAL MARKETS INC.'S CONNECTIONS TO MATERIAL INTERESTED PARTIES UNDER THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT

I, David Brownstein, have personal knowledge of the facts set forth herein, and hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a Managing Director with Citigroup Global Markets Inc. ("CGMI"). CGMI is an investment banker and financial advisor to the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") in connection with its statutory duties under the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("PROMESA").

2. I provide this Supplemental Declaration on behalf of CGMI pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, Pub. L. No. 117-82 ("PRRADA"); the *Order*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

ACTIVE/118616048.5

*Concerning Compliance With The Puerto Rico Recovery Accuracy In Disclosures Act* [Dkt. 19980]; and the *Order Approving List Of Material Interested Parties Pursuant To The Puerto Rico Recovery Accuracy In Disclosures Act* [Dkt. 20467]. Except as otherwise noted, I have personal knowledge of the matters set forth herein, provided, however, that certain of the disclosures herein relate to matters within the personal knowledge of other professionals at CGMI and its affiliates (together, "Citi") and are based on information provided by them.

## BACKGROUND

3. On June 15, 2022, I submitted the *Declaration of David Brownstein Identifying Citigroup Global Markets Inc.'s Connections To Material Interested Parties Under The Puerto Rico Recovery Accuracy In Disclosures Act* (the "Initial Declaration") (Dkt. No. 21252), setting forth CGMI's connections to the parties on the Amended MIP List.[2]  Capitalized terms used herein but not otherwise defined have the meanings ascribed to them in the Initial Declaration.

4. Following the filing of the Initial Declaration, the Office of the United States Trustee (the "U.S. Trustee") requested certain additional information from CGMI related to the disclosures set forth therein. After CGMI provided the U.S. Trustee with the requested information, the U.S. Trustee requested that CGMI file a supplemental declaration setting forth the additional information it requested.

## SUPPLEMENTAL DECLARATION

5. Citi has in place policies and procedures which are designed to identify, analyze and manage conflicts of interest which may arise as a result of its multiple relationships with clients around the world who may have competing interests in respect of a particular transaction. Citi

---

[2] *Notice of Filing Amended List of Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosures Act* (Dkt. No. 20458).

maintains an internal Conflicts Office that reviews, on a global, centralized basis, among other things, activities within CGMI's Institutional Clients Group ("ICG") that could give rise to conflicts of interest.

6. Citigroup Inc. ("Citigroup"), CGMI's parent holding company, is managed pursuant to three operating segments: ICG; Personal Banking and Wealth Management; and Legacy Franchises.

7. Non-ICG clients of Citi are real persons (retail consumers) and are not included in ICG. Retail banking services are provided by Citibank, N.A. ("Citibank"), a commercial bank and indirect wholly owned subsidiary of Citigroup, and its subsidiaries. Citibank's principal offerings include investment banking, commercial banking, cash management, trade finance and e-commerce; private banking products and services; consumer finance; credit cards; mortgage lending; and retail banking products and services.

8. Personal Banking and Wealth Management (PBWM) consists of U.S. Personal Banking and Global Wealth Management (Global Wealth). U.S. Personal Banking includes Retail Banking and Retail Services, which provides traditional banking services to retail and small business customers, and Branded Cards. Global Wealth includes Private Bank, Wealth at Work and Citigold and provides financial services to the entire continuum of wealth clients—from affluent to ultra-high-net-worth—through banking, lending, mortgages, investment, custody and trust product offerings in approximately 20 countries, including the U.S., Mexico and the four wealth management centers: Singapore, Hong Kong, the UAE and London.

9. ICG includes all institutional clients of CGMI's affiliates. ICG provides corporate, institutional and public sector clients around the world with a full range of wholesale banking products and services, including fixed income and equity sales and trading, foreign exchange,

3

prime brokerage, derivative services, equity and fixed income research, corporate lending, investment banking and advisory services, cash management, trade finance and securities services.

10. Legacy Franchises includes Asia Consumer Banking (Asia Consumer), representing the operations of the 13 Asia and EMEA exit countries; Mexico Consumer Banking (Mexico Consumer) and Mexico Small Business and Middle-Market Banking (Mexico SBMM), collectively, Mexico Consumer/SBMM; and Legacy Holdings Assets (certain North America consumer mortgage loans and other legacy assets).

11. On May 1, 2019, Adversary Proceeding No. 19-00265 was filed against Citibank, N.A. (the "Citibank Adversary"). On May 23, 2022, the court entered its *Order Allowing Omnibus Motion By the Avoidance Actions Trustee To Establish Litigation Case Management Procedures* (Dkt. No. 30), pursuant to which the Citibank Adversary is stayed until at least September 20, 2022. During the stay period, the Trustee shall endeavor to initiate and invite each defendant to engage in informal settlement discussions. *Id*. Appendix II § II.i. The stay period shall be deemed to have expired as to the Citibank Adversary only upon the entry of an order by the Court lifting the stay. *Id.*

12. On May 2, 2019, Adversary Proceeding No. 19-00280 was filed against Citigroup Inc. and certain other defendants (the "Underwriter Adversary" and together with the Citibank Adversary, the "Adversary Proceedings"). On June 10, 2022, the Court entered an *Order* providing that the Underwriter Adversary is stayed through and including September 15, 2022. (Dkt. No. 42). The Avoidance Actions Trustee shall file any amended complaint on or before the date of expiration of the stay. The trustee and defendants shall meet and confer regarding a schedule for defendants to answer, move to dismiss or otherwise response to any complaint. If the parties cannot reach an agreed schedule, and absent further relief from the Court, the defendants

ACTIVE/118616048.5

shall answer, move to dismiss, or otherwise respond to any complaint no later than 150 days after expiration of the stay.

13. Upon the filing of the Adversary Proceedings, the Oversight Board and CGMI began discussing strategies for managing potential conflicts that may arise in connection with the Adversary Proceedings. The parties reached an agreement in principle on the parameters to govern the relationship by May 8, 2019.

14. As used herein, "CGMI FOMB Team" shall mean those current CGMI employees working on the FOMB Engagement. CGMI's FOMB Team is comprised entirely of investment bankers in CGMI's (i) Municipal Finance business[3] and (ii) BCMA (together with the Municipal Finance business, the "CGMI Businesses"). The CGMI FOMB Team is comprised of a core group of nine current CGMI employees. One former CGMI employee was a core member of the CGMI FOMB Team prior to his retirement on or around October 2020.

15. Prior to and after the filing of the Adversary Proceedings, CGMI did not have any access to confidential information that the Special Claims Committee had regarding the suits.

16. The CGMI FOMB Team is not aware of whether or not the Oversight Board established any ethical wall to prevent CGMI's access to confidential information that the Special Claims Committee had regarding the Adversary Proceedings.

17. ICG has established policies and procedures, known as the Information Barrier, reasonably designed to prevent the misuse of Material, Nonpublic Information and Inside Information ("MNPI"). ICG's Information Barrier separates employees who receive MNPI in the

---

[3] While unrelated to CGMI's performance of the services pursuant to the FOMB Engagement, the underwriting of municipal securities role is primarily performed by Private-Side Employees within the Municipal Finance business; provided, that, Sales (Public Side) is involved in the sale of such municipal securities to its customers based on public information (e.g., the Official Statement).

5

ACTIVE/118616048.5

normal course of business and generally require MNPI to perform their business function ("Private-Side Employees" or "Private Side") from employees who may not use MNPI to perform their day-to-day business function ("Public-Side Employees" or "Public Side"). In addition to the ICG Material, Nonpublic Information Barrier Policy, the Information Barrier includes other policies and controls including reporting lines, physical location, and physical access controls for floors where certain business functions are located. The CGMI Businesses both reside on the Private Side. Only the Global Independent Compliance Risk Management Control Group (and local ICRM in the countries in consultation with the regional Control Group, as necessary) can make the determination as to whether an employee or business is Public Side or Private Side. Product Legal and Product ICRM may provide guidance on other information barriers that exist within specific Public-Side and Private-Side business lines. Such information barriers exist to protect client confidentiality and mitigate potential conflicts of interest and are separate from the Information Barrier designed to prevent the misuse of MNPI.

18. The ICG Material, Nonpublic Information Barrier Policy (the "Policy") comprises the Firm's Information Barrier policy and procedures. Throughout the CGMI's FOMB Engagement, the Policy has been applied globally to ICG. Under the Policy, Firm employees possessing MNPI are prohibited from being involved in buying, selling, making recommendations, talking to customers, or publishing research regarding the securities to which the information relates. Further, Private-Side Employees (and Public-Side Employees who have been Wall Crossed) may not trade the relevant issuer's securities or tradable loans, or provide potential MNPI or advice to others regarding their trading in such securities and loans.

ACTIVE/118616048.5

19. During CGMI's FOMB Engagement, Citi held (i) COFINA Bonds insured by Berkshire Hathaway Assurance and (ii) Puerto Rico Electric Power Authority Bonds, in each case, in an available-for-sale portfolio.

20. The COFINA bonds were issued to Citibank as a result of the February 2019 COFINA Title III Court Confirmation Order in connection with cancellation of prior COFINA bonds purchased by Citibank in the initial underwriting of a bond issue in 2007.

21. Prior to February 2019, Citibank purchased $150,000,000 face amount of COFINA bonds due 2047 and $750,000,000 face amount of COFINA bonds due 2054 (the "CBNA-Held COFINA Bonds"). As of the commencement of the Title III proceedings, Citibank held the face amount of the CBNA-Held COFINA Bonds. As part of the restructuring options, Citibank elected to retain its original claim against the AMBAC insurance trust, and worked with the insurer to split the CBNA-Held COFINA Bonds into multiple CUSIPS. Citibank has not sold the CBNA-Held COFINA Bonds. However, approximately 30% of Citibank's position in the CBNA-Held COFINA Bonds has been redeemed by the AMBAC insurance trust. As a result, Citibank's positions in the CBNA-Held COFINA Bonds as of the date of this Supplemental Declaration is $95,494,203 face amount of COFINA bonds due 2047, and $477,471,045 face amount of COFINA bonds due 2054.

22. With respect to the PREPA Bonds, Citibank purchased $15,000,000 face value of PREPA bonds on April 20, 2007 in the initial underwriting of that 2007 bond issue. Those bonds were insured by Berkshire Hathaway. As such, during the Title III case, the bonds owned by Citibank were rated Aa1 and AA+ from Moody's and Standard and Poor's, respectively. Citi sold the PREPA Bonds on December 12, 2018 through CGMI as riskless principal at 101.9, and CGMI was compensated 0.100 for its services in connection with the sale. CGMI's customers bought the

7

PREPA Bonds at 102. The desk does not recall the circumstances surrounding the 2018 sale of the bonds. Citibank did not use any confidential information CGMI may have obtained in connection with its representation of the Oversight Board when Citibank sold the PREPA bonds in December 12, 2018.

23. In addition, Citi notes that it held a non-controlling position in Mental Health Infrastructure Revenue Bonds, 2007 Series A (the "MEPSI Bonds") issued under that certain Trust Agreement, dated October 1, 2007, between Puerto Rico Infrastructure Financing Authority (which is supported by the Puerto Rico Fiscal Agency & Financial Advisory Authority) and the Trustee. The MEPSI Bonds were restructured and replaced with COFINA Bonds. Although CGMI's position in the MEPSI Bonds was held by a "public side" trading desk in non-investment account, Citi and the Board mutually agreed that CGMI would not act as an advisor to the Board in connection with any restructuring of the MEPSI Bonds, and the Board acknowledged that it agreed to seek advice from PJT in connection with any such restructuring of the MEPSI Bonds.

24. Citi is engaged in a wide range of financial services and businesses (including investment management, financing, securities trading, corporate and investment banking and research). Groups within Citi and businesses within Citi generally act independently of each other, both for their own respective accounts and for the accounts of clients. Accordingly, there may be situations where parts of Citi and/or their clients either now have or may in the future have interests or take actions that may conflict with the interests of the Debtors. For example, Citi's Public Side desks may, in the ordinary course of business, engage in trading in financial products or undertake other investment businesses for its own account or on behalf of other clients, including, but not limited to, trading in or holding long, short or derivative positions in securities, loans or other financial products of the Debtors and any other entities involved in the restructuring of the Debtors'

8

debt. Further, CGMI's Public Side sales and trading desks make markets in outstanding bonds issued by the Debtors. Citi's Public Side desks may, in the ordinary course of business, engage in trading in financial products or undertake other investment businesses for its own account or on behalf of other clients, including, but not limited to, trading in or holding long, short or derivative positions in securities, loans or other financial products of the Debtors and any other entities involved in the restructuring of the Debtors' debt. Further CGMI's Public Side sales and trading desks make markets in outstanding bonds issued by the Debtors.

25. Generally, a Private-Side Employee must not share Confidential Information or MNPI related to an issuer of securities or tradable loans with a Public-Side Employee. However, a Private-Side Employee may require Public-Side involvement for appropriate business reasons. The Private-Side Employee must contact the applicable regional Independent Compliance Risk Management Control Group to request that a Public-Side Employee be brought "Over the Wall" (OTW) before sharing potential MNPI with that Public-Side Employee. In general, a wall crossing subjects a Public-Side Employee to all restrictions imposed on Private-Side Employees, but only in relation to the specific issuer for which the Public-Side Employee has been brought OTW. Further, Public-Side Employees who have been brought OTW may not trade the relevant issuer's securities or tradable loans, or provide potential MNPI or advice to others regarding their trading in such securities and loans. An OTW employee remains OTW until the Control Group, in consultation with the Private Side if needed, determines that the information necessitating the Wall Crossing has been made public, is stale, or is no longer material, and confirms that the OTW Employee is not in possession of any potential MNPI. On two separate occasions, in accordance with the Policy, a Public-Side Employee was brought OTW, and subsequently uncrossed.

26. CGMI checked for conflicts using CGMI's customer identification database, as CGMI is the Citi entity identified on Schedule 4 of the Amended MIP List. As noted above, CGMI limited its conflicts search to those MIPs that are legal entities, rather than natural persons, given that CGMI and Citibank have millions of customer accounts held by individuals for solely personal use. The Personal Banking and Wealth Management and Legacy Franchises segments of Citigroup Inc. service natural persons. While it is possible that natural persons identified on the MIP List hold a personal account at a CGMI or an affiliate, CGMI believes that each of these business relationships would be *de minimis* relative to CGMI and its affiliates overall business and unrelated to the FOMB Engagement, and therefore could not constitute an interest adverse to the Debtors in connection with the Title III cases.

27. Before the Oversight Board Engagement period, CGMI performed underwriting services with respect to issuances of municipal securities of the Debtors. These underwriting services were disclosed to the Oversight Board when the Oversight Board retained CGMI. In CGMI's Request for Proposal response dated December 9, 2016, CGMI disclosed its prior role as underwriter of Puerto Rico bond issues for a wide variety of Commonwealth entities. Since 1995, CGMI was an underwriter on bond issuances by the Debtors of over $100 billion in par amount. A bond issuance by PREPA on August 5, 2013 was the last Debtor issuance underwritten by CGMI.

28. Citi's connections to McKinsey & Co. Inc. are ordinary course banking and vendor relationships. Citi is not aware of any connections to McKinsey Investment Office. To the best of my knowledge, none of Citi's connections to McKinsey entities have any nexus to the Title III Debtors or to the PROMESA cases.

29. I am unaware of any claims that CGMI has against the Title III Debtors or the Oversight Board as of the petition date.

30. To the best of my knowledge, CGMI has been a disinterested person, as defined in 11 U.S.C. § 101(14) at all times during the FOMB Engagement.

31. CGMI reserves all rights to amend and/or supplement its disclosures contained herein. If additional MIPs are provided to CGMI and any new material relevant facts or relationships are discovered or identified, CGMI will promptly file a supplemental declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: September 12, 2022
New York, New York

_____
David Brownstein
Managing Director
Citigroup Global Markets Inc.

ACTIVE/118616048.4