# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 03283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 03566-LTS |
| THE EMPLOYMENT RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO ("ERS"), | |
| Debtor. | |

**CONSOLIDATED: (1) REPLY TO OPPOSITION TO MOTION TO STAY
AND (2) OPPOSITION TO MOTION TO ENFORCE THE PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

*TO THE HONORABLE COURT:*

Individual Plaintiffs, Pedro José Nazario Serrano; Joel Rivera Morales; María de Lourdes Gómez Pérez; Héctor Cruz Villanueva; Lourdes Rodríguez and Luis M. Jordán Rivera, all of them Retirees/Beneficiaries of the ERS and Plaintiffs in a claim for damages described below that is currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part (the "Commonwealth Court"), without submitting to the jurisdiction of this Court, very respectfully submit this objection to the "*UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief*" (Docket No. 21651). Said Individual Plaintiffs STATE and PRAY as follows:

### I. REPLY TO OPPOSITION TO STAY CONSIDERATION OF UBS' MOTION TO ENFORCE PLAN OF ADJUSTMENT

1. Pursuant to the *Order Scheduling Briefing of Motion to Stay Consideration of: 'UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief'*, entered August 11, 2022 (Docket No. 21814), the ERS Individual Plaintiffs hereby submit their Reply to UBS' Opposition to the Motion to Stay (Docket No. 22070).

2. Essentially, UBS and the Official Committee incorrectly contend that in the Underwriter Adversary Action, Plaintiff is pursuing "the same" claims that the ERS Individual Plaintiffs are pursuing in the Commonwealth Action. See, Docket No. 22070, ¶1. As such, the UBS and the Official Committee's position is based on the false premise that the actions are the same, but they are not. **See, Part II(B) and II(C) of this motion, which are hereby incorporated by reference**.

-2-

3. Moreover, the Official Committee wrongfully avers that the ERS Plaintiffs are requesting an "indeterminate stay". See, Docket No. 22068, ¶1. This is another erroneous position. The ERS Individual Plaintiffs requested the stay only until it is determined *that the Trustee will prosecute the Underwriter Adversary Action and after the court decides if the case will go forward after UBS files its responsive pleading.* See, Docket No. 21808, ¶7. As a matter of fact, the Underwriter Adversary Action is stayed until **September 15, 2022**. See, Exhibit 1 of Docket No. 21808.

4. On the other hand, UBS and the Official Committee assert that the ERS Individual Plaintiff's argument that the Motion to Enforce is premature is not grounds to stay consideration of the motion, but instead it is an argument that can be presented in an opposition. In the event that the ERS Individual Plaintiff's Motion to Stay Consideration of UBS' Motion to Enforce the Plain of Adjustment is denied, we hereby submit our Opposition to the UBS' Motion to Enforce on the merits.

5. We submit this opposition but at the same time we respectfully submit that it is patently unfair to require from the ERS Individual Plaintiffs to state their position with regards to a case that has been stayed since it was filed and will remain stayed until, at least, **September 15, 2022**. See, Exhibit 1 of Docket No. 21808. In order to comply with this Court's rulings, however, we will address the complaint in the Underwriter Adversary Action as it appears as of this date. But, in the event that said complaint is amended, dismissed or withdrawn then our position may vary.

## II. OPPOSITION TO UBS' MOTION TO ENFORCE THE PLAN OF ADJUSTMENT

### A. Introduction

6. On July 28, 2022 UBS Financial Services Incorporated of Puerto Rico (hereinafter "*UBS*") filed the motion titled "*UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief*", at Docket No. 21651 (hereinafter, "the Motion"). Essentially, UBS moves this Court to issue an Order, allegedly pursuant to Section 91.1 of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et al. (the "Plan of Adjustment" or the "Plan") to enjoin the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS") and seven other individual plaintiffs who are beneficiaries of the ERS from litigating the case *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Financial Services Inc. of Puerto Rico*, Civ. No. KAC-2011-1067 (hereinafter, "Commonwealth Action"), which is pending before the Court of First Instance, Superior Court of San Juan (hereinafter, "local court").[2]

7. Basically, UBS contends that the ERS no longer owns the claims asserted in the complaint pending before the local court, because the claims in the local court supposedly are the same claims brought in the case captioned *Drivetrain, LLC v. Barclays, et al.*, Adv. Proc. No. 19-000280-LTS (the "Underwriter Adversary Action"), which were transferred to the Avoidance Actions Trusts. In the alternative, UBS contends that even if the claims have not

---

[2] In relation to the "UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief" (Docket No. 21651), on August 10, 2022, ERS Individual Plaintiffs filed their "Motion to Stay Consideration of: 'UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief'" (Docket No. 21808), which to this date is still pending.

-4-

been transferred to the Avoidance Actions Trust, they would still not belong to the ERS because the ERS transferred all of its remaining assets to the Commonwealth of Puerto Rico. At the same time, UBS argues that the Individual Plaintiffs, as former ERS beneficiaries, have no remaining interest in the Commonwealth Action because: (i) derivative standing has been lost, (ii) the ERS beneficiaries do not have any direct, personal claims against UBS, and (iii) Act No. 3-2013 does not provide a basis to recognize individual claims separate from the ERS's claims. Lastly, UBS contends that the balance of the equities supports enjoining further prosecution of the Commonwealth Action. All of these arguments can and should be raised before the Commonwealth Court. UBS has not done so because UBS knows that those arguments have no merit.

8. For the reasons set forth below, the UBS motion should be denied. As explained with more particularity in Part C, ¶21-26, *infra*, the claims brought in the Commonwealth Action are not the same as the claims asserted in the Underwriter Adversary Action. The Underwriter Adversary Action Complaint essentially seeks rescission of the Purchase Contract and the disgorgement of the profits, fees and commissions generated by UBS, whereas the Commonwealth Action seeks to recover the damages inflicted upon the ERS Individual Plaintiffs including benefits, as result of UBS' tortious conduct <u>prior to the issuance</u> of the POB's.

**B. <u>UBS has tried to raise the false "overlapping" issue at least three times before and has failed. This time the result should be the same.</u>**

9. This is not the first time that UBS requests a ruling from this Honorable Court to try to circumvent its exposure in the Commonwealth Action. Since the fall of 2019, UBS has been attempting to take advantage of the PROMESA litigation in a desperate attempt to

-5-

stay the local court proceedings, pretextually utilizing a proposed counterclaim and falsely arguing that it involves "duplicative" or "overlapping" claims.

10. The first time was in October 8, 2019, when UBS filed a "*Motion of UBS… for Relief Under the Automatic Stay*" (Docket No. 8823 in Case No. 17-3283), which resulted in the "*Order Granting Limited Relief from the automatic Stay to File Counterclaims*" (Docket No. 9592 in Case No. 17-3283), entered on December 16, 2019. In other words, this Court correctly refused to assume jurisdiction over the Commonwealth Action or to extend the Automatic Stay. Its Order was simply limited to allowing UBS Financial to file its proposed counterclaim in the Commonwealth Action and subject to its sole discretion. This Court did not assume jurisdiction over the individual retirees' claims against UBS Financial. Even though the Counterclaim was eventually presented by UBS in the Commonwealth Action, **the Commonwealth Court denied UBS' leave to file the counterclaim because the validity of the bonds was not an issue in the Commonwealth Action**.[3]

11. In fact, during a hearing held on November 26, 2019, the Commonwealth Court made it pellucidly clear to UBS' attorneys that the issue of the validity or invalidity of the Bonds was not a matter under consideration in the Commonwealth Action. The Court stated:

> ***HON. JUDGE: …Now, another thing that attorney Hernández Denton said. This case***, *the controversy I have to resolve is not the same as the one in the Federal Court. And what they do there, well, fine and dandy. Whatever they do there. I don't have ------ my jurisdiction doesn't extend that far. So in this case the evidence that is going to be sought is the evidence pertaining to the allegations about the nature of the transaction between UBS and the Retirement System.*
>
> ***Look,*** *what's at issue here is which representations, if any, did UBS make to the Retirement System when it sold, marketed, devised or did not devise the sale of these*

---

[3] On October 1, 2020, UBS filed a Certiorari Petition (KLCE2020-0941) before the Court of Appeals seeking review of the local court decision denying its authorization to file the proposed counterclaim. Said Certiorari Petition was denied on December 15, 2020 by the Court of Appeals. UBS did not file a Certiorari to the Supreme Court.

*bonds.* ***That's a controversy in this case. So that's evidence that I need.*** *(Emphasis added.)*

*See*, Transcript of Hearing held on November 26, 2019 --- page 35, lines 10---24 to page 36. (Docket No. 12577 in Case No. 17-3283). During that same hearing, in spite of UBS' insistence that the validity of the Bonds had been placed in controversy, the Commonwealth Court stated:

> ***HON. JUDGE: Again. Here it's being alleged that UBS gave an advice deviated from the fiduciary duty that, according to the plaintiffs, it had to the Retirement System. Because it wanted to profit from that sale. Because as a result of that sale, it collected $35 million in commissions.***
>
> ***And, then, the Retirement System followed UBS' recommendations and by following the UBS' recommendations, well, it was negatively impacted because the recommendations given by UBS did not generate the expected results.***
>
> ***There's no mention here that those bonds are wrongly issued, are illegal, whatever. I'm not going to resolve that, the validity of the bonds. They've already been issued.*** *(Emphasis added.)*

*See*, Transcript of Hearing held on November 26, 2019 --- pages 61-62. (Docket No. 12577 in Case No. 17-3283.) So, for the judge presiding the Commonwealth Action it is very clear that the case before the Commonwealth Court does not and has never constituted a "duplicative" or "repetitive" litigation.

12. The second attempt was on March 30, 2020, when UBS filed a "*Renewed Motion of UBS… for Relief from the Automatic Stay*" (Docket No. 12561 in Case No. 17-3283), seeking authorization from this Court to file the Certiorari Petition KLCE2020-0941 before the local Court of Appeals, related to the denial of the filing of the proposed counterclaim (see footnote no. 3). In response, the undersigned attorneys explained that the Commonwealth Action **has nothing to do with** the declaratory relief commenced by the ERS in the adversary proceedings under PROMESA that are pending before this Court, seeking a declaration that the Bonds are null and void, as they were allegedly issued "*ultra vires*".

-7-

13. More specifically, the undersigned attorneys submitted that the Commonwealth Action is one seeking damages to the beneficiaries and to the ERS, resulting from gross negligence and UBS' failure to comply with its duty under the Puerto Rico Uniform Securities Act, pursuant to which, prior to the issuance of the bonds, UBS had the obligation to provide advice pursuant to highest standards of fiduciary duty ("*Uberrima Fides*"). These are two separate issues. As such, there is no duplicity and there is no overlapping. See, "*Opposition…*" at Docket No. 12577 in Case No. 17-3283.

14. On April 22, 2022, this Honorable Court entered an "*Order Denying Renewed Motion of UBS… for Relief from the Automatic Stay and Clarifying the Scope of the Automatic Stay*" at Docket No. 12946 in Case No. 17-3283, in which UBS' motion was denied "without prejudice to renewal if UBS Financial' counterclaims survive the pending motion practice in Commonwealth Court". **It should be noted that UBS' motions did not survive the motion practice at the Court of First Instance of the Commonwealth Court, nor before the appellate proceedings at the Court of Appeals**. UBS' Certiorari Petition was denied on December 15, 2020 by the Commonwealth Court of Appeals, and UBS did not move for Certiorari to the Supreme Court on that matter.

15. The third attempt is related to the Eight Amended Title III Joint Plan of Adjustment (hereinafter, "the Plan of Adjustment"). As it was thoroughly discussed in the "*Urgent Objection Of The Individual Plaintiffs Retirees And Beneficiaries Of The ERS Trust To The Modified Eighth Amended Title III Joint Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al.*", at Docket No. 19766, Case No. 17-3283, filed on January 14, 2022, surprisingly and for no valid reason, the Plan of Adjustment, in its Article 1.224, included the

Commonwealth Action in the definition of <u>ERS Litigation</u>, and therefore, proposed the dismissal with prejudice of the Commonwealth Action in Article 69.3. **The author of that unauthorized language is still unidentified, but the only beneficiary of said language would have been UBS.**

16. Essentially, the unauthorized language was seeking to obtain release from UBS' obligation to the Individual Plaintiffs without being authorized by this Court or by the Commonwealth Court. This language was surprisingly included in the Plan of Adjustment, even though on April 2, 2021 [ECF Document No.18791-9] a stipulation had been reached disposing of the ERS bondholder claims. That stipulation provided that **"…nothing herein shall stay or prevent the commencing, continuing, filing, or otherwise pursuing any claims or actions in connection with that certain action captioned as** *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico, et al. v. UBS Financial Services. Inc. of Puerto Rico, et al.*, **Civil No. KAC-2011-1067 (803), currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part."**

17. Thus, the undersigned attorneys requested that the reference to the Commonwealth Action, in Civil No. KAC-02011-1067 (806), be stricken and removed from the *Plan of Adjustment*, before its approval by this Court. During that stage, once again, the undersigned attorneys had to explain that the Commonwealth Action is a tort action under Act 3-2013 against UBS for professional malpractice and violation of its fiduciary duties; that a tort action against a private entity is not under the scope of PROMESA or under the consideration of this Title III Court; and that the Commonwealth Action was filed for the

benefit of the ERS and of the individual retirees since it seeks redress and indemnity from UBS Financial for its misconduct prior to the issuance of the POB's.

18. As result, the Financial Oversight and Management Board filed a motion saying that the inclusion of the Commonwealth Action in the Plan of Adjustment was an "**error**", and that accordingly the Oversight Board had deleted the UBS Action from the definition of ERS litigation in Section 1.224 of the Plan of Adjustment filed on January 14, 2022. See, Docket No. 19791 at Case No. 17-3283.

19. Now, in what clearly constitutes the fourth attempt to avoid its liability in light of the Commonwealth Action, UBS contends once again in its Motion (Docket No. 21651, Case No. 17-3283) that the same claims and remedies are being pursued in the "Commonwealth Action" and in the "Underwriter Adversary Action", exposing it to duplicative actions. It is once again respectfully submitted that they are not.

20. They are not duplicative actions today, and they have not been duplicative actions for the last four (4) years that UBS has been trying to pursue this erroneous theory. UBS has tried to raise this same "overlapping" issue three times before and has failed. This Honorable Court should not exempt UBS of its responsibility for a case that is not even before this Court. UBS is essentially misleading the Court in this fourth attempt to evade its fiduciary responsibilities.

C. **The "Commonwealth Action" and the "Underwriter Adversary Action" present different and/or distinguishable causes of action and seek different remedies.**

21. The claims brought in the Commonwealth Action are not the same as the claims asserted in the Underwriter Adversary Action. The Underwriter Adversary Action Complaint essentially seeks rescission of the Purchase Contract and the disgorgement of the profits, fees and commissions generated by UBS, whereas the Commonwealth Action seeks

to recover the damages inflicted upon the ERS Individual Plaintiffs as result of UBS' tortious conduct <u>prior to the issuance</u> of the POB's.

22. UBS' central argument is that the Commonwealth Action is identical to the Underwriter Adversary Action. But this argument is flawed and erroneous. Contrary to what UBS alleges, any liability that UBS may have under the underwriting or Subscription Contracts is independent and totally unrelated to the liability incurred as an advisor to the ERS and the Retirees, resulting from the tort that UBS committed **prior** to entering into the Subscription Agreements, and irrespective of the validity of the bonds. The Commonwealth Action is essentially a malpractice claim against UBS based on its misrepresentations and the breach of its fiduciary duties to the ERS and to its beneficiaries in recommending to the ERS a transaction that was clearly not in their best interest.

23. None of the Agreements or Stipulations resulting from the *Eight Amended Title III Joint Plan of Adjustment (hereinafter, "the Plan of Adjustment")*, releases UBS from the tortuous acts described in the Complaint filed in the Commonwealth Action. Indeed, the Commonwealth Action Complaint clearly describes events that were committed by UBS, **prior** to the execution of the Subscription or Underwriting Agreements. In other words, whereas the Underwriter Adversary Action as filed is purely a contractual matter; the Commonwealth Action is a tort action under Article 1802 of Puerto Rico Civil Code resulting from UBS's negligent or wrongful conduct in breach of its fiduciary duties.

24. A cursory review of the Underwriter Adversary Action, describes and make reference to contractual claims resulting the issuance of the bonds, whereas the Commonwealth Court action, commenced by the Retirees six (6) years prior to these Title III Proceedings, clearly describes the tort committed by UBS as financial advisor,

recommending the **issuance** of the pension obligation bonds in violation of its fiduciary duty. **There is absolutely no duplicative liability. UBS is misleading this Honorable Court in this fourth attempt to evade its responsibilities.**

25. As to UBS, the causes of action and remedies sought in the Underwriter Adversary Action are as follows.

**Underwriter Adversary Action - Complaint:**

| Counts | Remedies |
| --- | --- |
| 53. **Rescission** of Transfer Pursuant to 31 LPRA §§ 3491-3500, 11 USC §544(B), and 26 USC § 6502(A). See, Underwriter Adversary Complaint, page 81. (Emphasis added). | 492. Pursuant to 11 USC § 544, 31 LPRA §§ 3491-3500, and 26 USC §6502(a), Debtors are empowered to avoid the fees paid to the ERS Series A Bond Underwriters. As result, to the extent necessary, Debtors may **recover the fees paid** to the ERS Series A bond Underwriters pursuant to 11 USC § 550. See, Underwriter Adversary Complaint, page 81, ¶492. (Emphasis added). |
| 55. **Unjust Enrichment**. (Underwriters – ERS Series A Bond Issuance). See, Underwriter Adversary Complaint, page 84. (Emphasis added). | 506. Equity and good conscience require that the ERS Series A Bond Underwriters **return any fees they received** for their services and any assets associated with the transactions that ultimately only increased the depth of the Commonwealth's financial crisis. See, Underwriter Adversary Complaint, page 84, ¶506. (Emphasis added). |
| 57. **Breach of Contract**. (Underwriters-ERS Series A Bond Issuance). See, Underwriter Adversary Complaint, page 84. (Emphasis added). | 514. As result of the ERS Series A Bond Underwriters' **breach of** the ERS Series A Purchase **Contract**, the Commonwealth has suffered damages in an amount to be determined at trial. See, Underwriter Adversary Complaint, page 85, ¶514. (Emphasis added). |
| 58. **Rescission** of Transfer Pursuant to 31 LPRA §§3491-3500, 1 USC §544(B), and 26 USC § 6502(A). See, Underwriter Adversary Complaint, page 85. (Emphasis added). | 525. Pursuant to 11 USC § 544, 31 LPRA §§ 3491-3500, and 26 USC §6502(a), Debtors are empowered to avoid the fees paid to the ERS Series B and C Bond Underwriters. As result, to the extent necessary, Debtors may |

| | **recover the fees paid** to the ERS Series B and C Bond Underwriters pursuant to 11 USC § 550. See, Underwriter Adversary Complaint, page 87, ¶525. (Emphasis added). |
|---|---|
| 60. **Unjust Enrichment**. (Underwriters – ERS Series B and C Bond Issuance). See, Underwriter Adversary Complaint, page 88. (Emphasis added). | 539. Equity and good conscience require that the ERS Series B and C Bond Underwriters **return any fees they received** for their services and any assets associated with the transactions that ultimately only increased the depth of the Commonwealth's financial crisis. See, Underwriter Adversary Complaint, page 88, ¶539. (Emphasis added). |
| 62. **Breach of Contract**. (Underwriters – ERS Series B and C Bond Issuance). See, Underwriter Adversary Complaint, page 89. (Emphasis added). | 547. As result of the ERS Series B and C Bond Underwriters' **breach of** the ERS Series B and C Purchase **Contract**, the Commonwealth has suffered damages in an amount to be determined at trial. See, Underwriter Adversary Complaint, page 85, ¶514. (Emphasis added). |

See, Underwriter Adversary Complaint, Docket No. 1, Case No. 17-BK-3283 (LTS).

26. It follows from the above, that all counts in the Underwriter Adversary Complaint against UBS are related to rescission and breach of the Purchase Contract, and that all remedies sought against UBS seek to recover disgorgement of the profits, fees and commissions generated by UBS. Because the Commonwealth Actions seeks to recover the damages inflicted upon the ERS Individual Plaintiffs as result of UBS' **tortious** conduct prior to the issuance of the POB's, UBS cannot assert that the causes of actions and the remedies sought are the same.

### D. **UBS' request is in clear violation of Article 517 of Act No. 53-2021**

27. On the other hand, the Motion filed by UBS should also be denied because it is in clear and direct violation of Article 517 of Act 53-2021 of Puerto Rico. As this Honorable Court is well aware, Article 517 of the Act No. 53-2021 unequivocally provides that the **"Adjustment Plan transactions cannot be used to mitigate causes of action under Act No. 3-2013, as amended."** (Emphasis added.) Said clause was included by the Puerto Rico Legislature to safeguard and exclude from the Plan of Adjustment cases such as the ERS Commonwealth Court Action.

28. Surprisingly, UBS cited Act. No. 3-2013 in its Motion, but made absolutely no reference to Article 517 of Act. No. 53-2021. Thus, it should be noted that asking this Honorable Court to enjoin the ERS and the Individual Plaintiffs from prosecuting their claims before the local court because of the pending Underwriters Adversary Action and/or the possible transfer of ERS' assets to the Avoidance Actions Trusts is manifestly contrary to Article 517 of Act No. 53-2021 of Puerto Rico, and in so doing UBS is misleading this Honorable Court.

29. UBS is expressly precluded by Article 517 of Act No. 53-2021 to use the PROMESA litigation to avoid its liability for the Commonwealth Action.

### E. **Pursuant to Section 40 of the Act No. 3-2013, the ERS Plaintiffs have a direct action against UBS.**

30. On the other hand, UBS incorrectly contends that ERS Plaintiffs have lost standing to pursue their cause of action in damages.

31. UBS fails to consider that a **direct** cause of action was created through Section 40 of Act No. 3-2013.

-14-

> ***Section 40**.- Cause for action is hereby recognized to the **participants and pensioners** of the Employees Retirement System of the Government of Puerto Rico and the Judiciary **to sue, pro se**, nongovernment **investment advisers and underwriters** in any transaction in which pension obligation bonds have been issued by the Employees Retirement System of the Government of Puerto Rico and the Judiciary, for damages caused to the System or its beneficiaries.*

See, **Exhibit 1**, Translated Version of Act No. 3-2013. (Emphasis added.)

32. As such, even if the ERS loses its standing in the local court, which has not occurred, the ERS Individual Plaintiffs would still have the right to pursue a direct cause of action against UBS. Therefore, besides being highly speculative, UBS' motion is completely without merit, and is misleading.

### III. CONCLUSION

33. In sum, the balance of equity should move this Honorable Court to: (I) **STAY** the consideration of UBS' petition until it is determined whether the Trustee will prosecute the Underwriter Adversary Action, if the case will go forward with the complaint as it is, or if it will be amended, or whether it will be dismissed or withdrawn. This is crucial because, in the event that the Trustee decided that it will not continue to prosecute the Underwriter Adversary Action, UBS' position regarding the motion to enforce will be mooted.

34. In the alternative, UBS' petition should be (II) **DENIED** in favor of the ERS Plaintiff's right to have their Commonwealth Action heard on the merits. As discussed above, (a) UBS has tried to misleadingly raise the false "overlapping" issue at least three times before and has failed each attempt. The result this time should be the same; (b) the Commonwealth Action and the Underwriter Adversary Action present totally different and/or distinguishable causes of action and seek different remedies; (c) UBS' request is in clear violation of Article 517 of Act No. 53-2021; and (d) pursuant to Section 40 of Act No. 3-2013 the ERS Plaintiffs have standing to pursue "*pro se*" a direct action against UBS.

**THEREFORE**, the ERS Individual Plaintiffs respectfully request this Honorable Court to STAY the consideration of the "*UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief*" (Docket No. 21651); or, in the alternative, said motion should be **DENIED**.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY:** That on this same date a true and exact copy of this motion was filed with the Clerk of Court using CM/ECF system, which will notify a copy to counsel of record.

In San Juan, Puerto Rico, this 13th day of September 2022.

**VICENTE & CUEBAS**
P.O. Box 11609
San Juan, PR 00910-1609
Phone No. (787) 751-8000
Fax No. (787) 756-5250

/s/Harold D. Vicente
**Harold D. Vicente, Esq.**
USDC-PR Bar No. 117711
hvicente@vclawpr.com

/s/Harold D. Vicente-Colón
**Harold D. Vicente-Colón, Esq.**
USDC-PR Bar No. 211805
hdvc@vclawpr.com

**PUJOL LAW OFFICES, PSC**
P.O. Box 363042
San Juan, PR 00936-3042
Phone No. (787) 724-0900
Fax No. (787) 724-1196

/s/Francisco Pujol Meneses
**Francisco Pujol Meneses, Esq**.
USDC-PR Bar No. 212706
fpujol@pujollawpr.com

**BUFETE ANDRÉU & SAGARDÍA**
261 Avenida Domenech
San Juan, Puerto Rico 009718
Phone No. (787) 754-1777/763-8044
Fax No. (787) 763-8045

/s/José A. Andréu Fuentes
**José A. Andréu Fuentes, Esq.**
USDC-PR Bar No. 204409
jaf@andreu-sagardia.com

*Counsel for Individual Plaintiffs, Beneficiaries of the Retirement System
of the Commonwealth of Puerto Rico*