# EXHIBIT 1

(H. B. 888)

## (No. 3-2013)

### (Approved April 4, 2013)

# AN ACT

To amend Sections 1-101, 1-102, 1-104, 2-101, 2-103; repeal Sections 2-104, 2-115, and 2-116; renumber Section 2-104-A as Section 2-104; renumber Sections 2-117 to 2-120 as Sections 2-115 to 2-118; repeal Sections 3-104 and 3-105 and renumber Sections 3-106 to 3-112 as Sections 3-104 to 3-110; add new Sections 4-108 and 4-109 and renumber Sections 4-108 to 4-114 as Sections 4-110 to 4-116; create Chapter 5 entitled the "Defined Contribution Hybrid Program"; and add Sections 5-101, 5-102, 5-103, 5-104, 5-105, 5-106, 5-107, 5-108, 5-109, 5-110, 5-111, 5-112, 5-113, and 5-114 to Act No. 447 of May 15, 1951, as amended, in order to provide that the benefits of Chapter 5 of this Act shall not be coordinated with those of Title II of the Social Security Act, except as applicable under the provisions of Chapter 5, establish the definition of the Defined Contribution Hybrid Program, amend the definition of the normal retirement date, raise the minimum pension to $500, establish provisions that regulate pensioners who reenter public service, raise retirement age, establish the treatment for the accumulated benefits of pensioners and participants, establish the procedure for filing applications before June 30, 2013, create the Defined Contribution Hybrid Program, and for other purposes; amend Act No. 105 of June 28, 1969, as amended, to set forth that the benefits provided therein shall not apply to pensioners who retire under Chapter 5 of Act No. 447 of May 15, 1951, as amended; amend Section 1 of Act No. 37-2001, to eliminate the Summer Bonus for the participants of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico; amend Section 1 of Act No. 155-2003, to eliminate the Medications Bonus for the participants of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico; amend Section 8 of Act No. 95 of June 29, 1963, as amended, to eliminate the Government's contribution to the health plan of the participants of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico; amend Section 1 of Act No. 98 of June 4, 1980, as amended, to eliminate the Christmas Bonus for the participants of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico; establish the Additional Benefit Program for the participants of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico; and add a new Section 5-115 to Chapter 5, in order to establish the transitory provisions and recognize cause for action to the System's participants and pensioners.

# STATEMENT OF MOTIVES

## INTRODUCTION

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Public Employees System" or the "System") faces a resource deficiency that threatens to catastrophically worsen the economic crisis that the Island is already undergoing. For decades, the Government of the Commonwealth of Puerto Rico and government employees have not contributed the sums needed to defray the cost of pensions to be paid to public employees who retired and will retire in the future. Consequently, the Public Employees System has the lowest debt to asset ratio of all government employees' retirement systems in the United States and, in the near future, it shall not have the resources needed to pay their obligations to retired employees. It has been estimated that, as soon as fiscal year 2013-2014, the net assets of the System shall be negative, since the debt of the System as evidenced by pension obligation bonds shall exceed the assets of the System and, by fiscal year 2018-2019, the System shall not have sufficient funds to cover the payment of its obligations, among which is the payment of pensions to its own pensioners, because its total assets would have been depleted. Moreover, if changes are not made now, it is highly probable that the assets of the System will be depleted before that time.

At present, and according to reports provided by actuaries, as of June 30, 2011, the Public Employees System, along with the Teachers Retirement System (the "Teachers System" and the Public Employees System, the "Retirement Systems" or the "Systems"), are burdened with a combined actuarial deficit of $35.260 billion. The deficit of the Public Employees System alone is of approximately $25.491 billion. It is foreseen that this actuarial deficit will substantially increase by June 30, 2013. The magnitude of the actuarial deficit of both Retirement Systems is such that it is equivalent to more than four times the annual income of the General Fund and to more than half of the Gross National

Product of Puerto Rico, both for fiscal year 2011.[1] Projections show that in order to meet its obligations to pensioners for the next 26 years, the Government of the Commonwealth of Puerto Rico (central government, public corporations and municipalities) must make an annual injection of approximately $2.850[2] billion to the Systems, which would be equal to approximately one third of the revenues of the General Fund for fiscal year 2012.

It has been estimated that government pensions in the different United States jurisdictions carry over an aggregate deficit of $1.38 trillion.[3] States such as Rhode Island, California, and Illinois have made difficult yet necessary decisions in recent years to stabilize the finances of their retirement systems.[4] By June 30, 2011, the actuarial coverage (debt to net assets ratio) of the Public Employees System was scarcely 6%. In other words, as of that date, the Public Employees System had only 6 cents for each dollar needed to pay the pension of public employees. As a comparison, the actuarial coverage of Rhode Island, which was the lowest in the United States jurisdictions, was at 49%. There is no doubt that the challenge for Puerto Rico is greater than that of any other United States jurisdiction due to the wide gap between the Retirement Systems resources and obligations. Therefore, the measures to be taken must be attuned to the extent of the existing problem.

The crisis of the Retirement Systems is nothing new. In spite of this, past Administrations have failed to take the necessary actions to address the extent of the crisis, which is even worse today. The Island can no longer continue to wait or

---

[1]  The revenues of the General Fund for FY-2011 were $8.158 billion. The Gross National Product at the close of FY-2011 was $64.106 billion (at current prices).

[2]  Actuarial Recommended Contribution (ARC). According to actuarial reports as of June 30, 2011, the ARC for the Public Employees System is $2.153 billion and the ARC for the Teachers System is $700 million. The ARC calculation takes into consideration a stable annual return on investment rate of 6.4% for both Systems.

[3]  Source: "The Widening Gap Update," June 2012; The Pew Center on the States.

[4]  Rhode Island raised the minimum retirement age, eliminated cost of living allowances, and cancelled the defined benefit plan. The cities of San José and San Diego, CA eliminated bonuses for retired persons and discontinued automatic increases in pensions. Illinois raised the retirement age and established a cap in the salary to be used to calculate pensions.

entertain superficial or experimental solutions. At this juncture, Puerto Rico has no other option but to face the problem once and for all and carry out an encompassing system reform that is fair for all those persons affected.

This Legislative Assembly, aware of its historic duty towards pensioners, public employees, taxpayers, and future generations of Puerto Ricans, assumes said responsibility and decrees reasonable and necessary solutions to prevent the total erosion of the assets of the Public Employees System and thereby an unprecedented economic catastrophe for the Island, and to protect the retirement benefits of thousands of active and retired public employees to provide them with a fair and decent retirement in their old age.

**FISCAL CRISIS IN PUERTO RICO**

The Retirement Systems crisis arises at the same time as the most precarious fiscal situation ever in the Central Government, public corporations, and the municipalities. In spite of the approval by the past administration of Act No. 7-2009, known as the "Special Act to Declare a State of Fiscal Emergency and to Establish a Comprehensive Fiscal Stabilization Plan to Salvage the Credit of Puerto Rico" ("Act No. 7"), whereby certain taxes increases and cuts in public spending were implemented –including the dismissal of thousands of public employees– said effort did not eliminate the annual deficit of the General Fund and it has been estimated that the deficit of the General Fund shall exceed $2 billion by fiscal year 2012-2013. The situation of public corporations is not different, since it is estimated that the combined deficit of the three main public corporations shall be of approximately $800 million by fiscal year 2012-3013. The public debt of the government of the Commonwealth of Puerto Rico as of December 31, 2012, including the debt pertaining to the General Fund, the municipalities, public corporations, and agencies, amounted to $70.669 billion, having escalated from $56.455 billion to $70.669 billion in the last 5 years.

The Island's credit is also at an extremely difficult situation due to the downgrading of the public debt of the Central Government to one grade above "junk" by a credit rating agency on December 13, 2012. Along with said downgrading, the bonds of several instrumentalities of the Commonwealth and public corporations, including the bonds of the Public Employees System, the University of Puerto Rico, the Convention District, the Government Development Bank, the Municipal Financing Authority, and the Electric Power Authority were also downgraded. The bonds of the Aqueducts and Sewer Authority, the appropriation bonds of the Public Finance Corporation, and the subordinated bonds of the Highways Authority were downgraded by said credit rating agency to "junk" status. There is no doubt that, in view of the serious fiscal strait situation of the government apparatus, it does not have sufficient funds to inject the money needed to cover the actuarial deficit of the Systems.

**DESCRIPTION OF THE PUBLIC EMPLOYEES SYSTEM**

The Public Employees System administers two types of pension plans: a defined benefit plan and a defined contribution plan. The defined benefit plan is, in turn, divided into two benefits structures through Act No. 447 of May 15, 1951, as amended ("Act No. 447"), for participants who enrolled before April 1, 1990, and Act No. 1 of February 16, 1990, as amended ("Act No. 1"), for participants who enrolled after April 1, 1990 and before December 31, 1999. The defined contribution plan, better known as the "Reform 2000," is governed by Act No. 305-1999 ("Act No. 305"), and covers public employees who enrolled after January 1, 2000. In order to understand the causes of the present crisis, it is necessary to understand how those plans operate.

Public employees whose retirement plan is governed by the provisions of Act No. 447 are entitled to receive an annuity equal to 1.5% of their average compensation during the first twenty (20) years of service, and 2.0% of their average compensation during subsequent years. Said average compensation is

calculated on the basis of the highest compensation earned during any 3 years of creditable service. Under this plan, the minimum retirement age is 58 years (55 years if the person completed 25 years of service) with at least 10 years of service, and the minimum pension to be received by each participant amounts to $400 a month. Participants under Act No. 447 are entitled to receive the so-called "merit pension," which consists of an annuity equal to 75% of their average compensation, if they completed 30 or more years of service and are, at least, 55 years old, or an annuity equal to 65% of the average compensation with 30 years of service and no age requirement. The requirements that apply to police officers and firefighters are slightly different.

On the other hand, public employees whose retirement plan is governed by the provisions of Act No. 1 are entitled to receive an annuity equal to 1.5% of their average compensation during the last five (5) years of service. Under this system, the minimum retirement age is 65 years and the minimum pension to be received by every participant amounts to $400 monthly.

Lastly, in contrast with those public employees subject to Act No. 447 or to Act No. 1, public employees who are participants of the Reform 2000 (employees who entered public service on or before January 1, 2000) do not receive a defined benefit. They are only entitled to receive the money they have contributed throughout their years in public service, plus the return thereon. The minimum retirement age under Reform 2000 is 60 years.

**THE CAUSES OF THE CRISIS**

The serious problem faced by the System is due to several causes, including the original design of the System and the alterations that have been made thereto through amendments and special laws that have increased the benefits of retired persons who have availed themselves of Act No. 447 and Act No. 1, without the government having contributed the resources to defray the cost of said increases, thus bleeding dry the assets of the System.

The main causes of the crisis are the following:

**1)     Inadequate contributions:**

Since its beginning, the System did not receive adequate contributions to maintain a healthy solvency level. The System was designed as a defined benefits system whose pensions was fixed by law and did not depend on the amount of contributions made by the employer or the employees. The law that created the System established a contribution level that was not bound to the benefits to be paid by the System nor did it adjust to the economic or actuarial changes that affected the level of benefits. Although the law contemplated the fact that employers would have to make supplementary contributions as the benefits increased, these were never made. To worsen the deficiency of the original design of the System, a series of laws passed between 1960 and the present weakened the System's finances by increasing the benefits without receiving additional contributions. The government never paid the employer contribution recommended by actuaries to cover retirement benefits. To begin addressing the asset insufficiency, approximately $5 billion would have had to be contributed to the System during the last seven years. Neither the General Fund (nor many of the municipalities and public corporations) had –nor do they have at present– the resources needed to cover said amount.

**2)     Impact of special laws:**

The so-called "Special Laws" consist of a series of laws that grant additional benefits to those originally provided by Act No. 447 and Act No. 1. These Special Laws include:

- Summer bonus;
- Medication bonus;
- Christmas bonus;
- Contributions to health insurance plans;
- Other minimum pension benefits;

- Other minimum death benefits;

- Cost of Living Allowances (COLA); and

- Additional death and disabilities benefits for specific reasons (for example, employees in high-risk positions that fall in the line of duty).

The annual cost of the benefits granted by the Special Laws is of approximately $212[5] million. The payment source of the benefits granted by the Special Laws comes almost in its entirety from the General Fund or the budget of other government entities. Therefore, the costs of these benefits should not be defrayed from the System's assets. However, at times, the General Fund, public corporations, and municipalities that have the responsibility to pay the benefits granted by these Special Laws simply do not pay them; causing the System to incur those expenses, thus worsening the deficit. The benefits established by Special Laws play an important role in the delicate fiscal situation faced by the General Fund and the System.

### 3) Early retirement programs:

The government began promoting early retirement programs in 1994 in order to reduce the size of its workforce. Although these measures reduced payroll expenses, an item which represents a substantial portion of the General Fund expenditure, early retirement reduced the System's income because it caused a proportional reduction in employer contributions. As soon as an employee ceases working, the government stops making the employer contributions for said person. However, the person receives a benefit that is usually equal to or greater than what he/she would have received had he/she remained employed until the original retirement date. If the government does not make the corresponding contributions to the System to cover the contribution deficit caused by early retirement, a debt

---

[5]   According to actuarial reports for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico as of June 30, 2011. Does not include benefits granted under some Special Laws such as the cost of living allowance (COLA).

equal to or greater than that originally foreseen is produced with respect to the person who retired early, with less income to cover the same.

Since 1994, more than 20 early retirement windows have been implemented, being the most recent the one created by Act No. 70 of July 2, 2010.  In some of these windows, the pensions offered equaled 75% of the average compensation of an employee with only 24 years of service, regardless of the age of the participant. The basic problem of these early retirement windows was that they failed to achieve their objective to reduce the total deficit of the government because: (i) the positions left by these employees were taken by new employees; (ii) persons retired with a pension of 65% or 75% of their fixed average compensation, for which the government had contributed much less than what was recommended by actuaries; and (iii) payment plans were offered to government employers and some of these entities have not fully complied therewith.

### 4)      Changes in the life expectancy of participants:

The average life expectancy in Puerto Rico and the United States has increased to 78 years in the last 60 years. As a result, pensioners will receive benefits for a number of years that exceed what was originally foreseen. According to the last study of the Department of Health, in 1950, a year before the creation of the Public Employees System, the life expectancy of Puerto Ricans was 59.5 years for men, 62.4 for women, and 60.9 for both sexes. The most recent data of the Department of Health shows that by 2004, men had a life expectancy of 73.7 years, women of 80.9 years, and both sexes of 77.2 years, an increase of approximately 16 years in average life expectancy. The increase in life expectancy forces the System to defray pensions for longer periods than what was foreseen at the time of fixing retirement ages in the law, which has had a negative impact on the coffers of the System.

### 5)      Personal loan programs:

The Public Employees System offers and administers a personal, mortgage, and cultural trips loans program for the participants of the retirement plan. Participants may obtain up to a maximum of $5,000 in personal loans for any use. In 2007, the System raised that amount to $15,000, which resulted in a decrease in the System's cash flow of approximately $600 million between 2007 and 2010. This insufficiency has been covered with funds from the System itself and has required the liquidation of assets that would have otherwise been available for the payment of pensions.

Due to the number of personal loans originated in recent years, the investments portfolio of the System now holds a significant item pertaining to these loans that are liquid assets. In an effort to improve the situation, the Board of Trustees of the Public Employees System passed a resolution in 2011 to reduce the loan margin to $5,000, and in 2012, it approved the sale of some $313 million in loans. With a balance of $804 million in December 2012, personal loans represent about half of the net assets of the Public Employees System and are an obstacle for its solvency.

### 6)   Pension Obligation Bonds Issue:

In 2008, the Public Employees System issued nearly $3 billion in pension obligations bonds (POBs). The objective of the issue was to inject the proceeds thereof to the Public Employees System and increment its capitalization rate. This strategy has been undertaken by some jurisdictions in the United States, including California, Oregon, and Illinois. On issuing this type of debt, these jurisdictions assigned an external source to pay debt service. However, unlike these jurisdictions, the POBs were structured as a debt of the System itself, where the government employer's contributions are the bonds' repayment source. Although the bond issue enabled an injection of funds which extended 5 to 6 years the life of the System's assets, the Public Employees System is under the obligation to repay these bonds from the employer contributions it receives. This debt has a repayment

term of almost 50 years, during which the Public Employees System shall pay approximately $6 billion in interest, in addition to repaying its principal, which amount is equal to approximately 4 years of benefit payments to retired persons.

**THE MEASURES IMPLEMENTED TO DATE HAVE BEEN INSUFFICIENT; THE GENERAL FUND AND OTHER EMPLOYERS CANNOT CONTRIBUTE MORE TO THE PUBLIC EMPLOYEES SYSTEM**

Through the years, the different Administrations have made experimental and fragmented efforts to resolve the crisis in the Public Employees System. Among others, Act No. 1 raised employers and employees contribution to 9.275% and to 8.275%, respectively. Subsequently, the Retirement Savings Account Program, known as the Reform 2000, was created under Act No. 305. It eliminated the defined benefits system for all employees who entered public service as of January 1, 2000, and substituted it for a defined benefit contribution plan, under which the benefit to be received by the public employee at the time of retirement is limited to the contributions made by the employee to the System (a personal savings account), throughout the years of service, plus the return on investment thereon. Lastly, and most recently, through Act No. 116-2011 the government of the Commonwealth of Puerto Rico raised employer contribution in a staggered manner beginning on July 1, 2011 to 10.275% and increased said percent annually to achieve a 21% employer contribution by 2021. However, and according to the System actuaries, the staggered increase in employer contributions is not enough to cover the System's cash flow needs or to eliminate or at least significantly reduce actuarial deficit thereof.

In fact, the difficulty in attempting to resolve the financial crisis of the Retirement System on the basis of solely increasing recurrent appropriations from

the General Fund and other government employers has been embossed by several credit rating agencies. The insufficiency of the increase of employer contribution to resolve the crisis faced by the Retirement System was one of the main reasons for one credit rating agency to downgrade the credit of Puerto Rico to one grade above "junk" during the past month of December 2012.

Moreover, recognizing the delicate fiscal situation of the General Fund and other employers, the increase in employer contribution to the Public Employees System imposes an enormous burden on the central government, public corporations, and the municipalities. Pursuant to the laws in effect at present, the employer contribution shall increase on an annual basis until it reaches 21% of the salaries of public employees by 2020. As for the General Fund, in order to pay these already approved employer contributions by 2020, approximately $1.747 billion would have to be set aside, that is, 20% of its income for fiscal year 2013[6] (proceeding from taxes paid by all Puerto Ricans). This commitment to increase employer contributions by itself entails an immense redistribution of the resources of the Commonwealth of Puerto Rico for the next decades, which shall affect the capacity of the government to invest in the education of our children, safety in our streets, and the construction of infrastructure. But it is even more alarming that, even when honoring the increase in employer contributions approved in Act No. 116, according to projections made by the actuaries of the System, if additional and drastic changes are not made, employer contributions, including the General Fund, to the Systems would have to be increased even more during the following 20 years in order to be able to pay the pensions. This would mean that by 2030, for each dollar of income that the government receives, 41 cents would be directed to the payment of pensions of public employees.

Definitely, the government lacks the resources to continue making more contributions to the System; therefore, it is necessary to consider new alternatives

---

[6]  Budgeted income for fiscal year 2013: $8.750 billion.

that would allow for the total restructuring thereof. In order to achieve the financial stability of the System and guarantee the payment of benefits to every pensioner and public employee that will retire in the future, it is indispensable to reevaluate the benefits structure of the System.

## FAILURE TO ACT IS NOT AN OPTION

The Public Employees System is undergoing the greatest and most severe crisis in its history. In the first place, and as stated above, the magnitude of the System's actuarial deficit exceeds $25.491 billion. To correct this deficit, the contribution of the government to the Public Employees System for fiscal year 2011-2012 should have been of approximately $2.153 billion. However, the government only contributed $706 million (including employer contributions and payments under the Special Laws), or 33% of this amount. For the government to make a $2.153 billion contribution to the Employees System ($2.850 billion if the Teachers Retirement System is included), it would have to make drastic cuts in government safety, health, and education services, including additional reductions of personnel. Thus, the easy solution of the past, that is, of patching the System with an injection of non-recurrent cash sources or the appropriation of additional resources originating from the General Fund and other employers is no longer available to cover this wide gap due to the crisis the General Fund is undergoing and the weaknesses in the general finances of the Commonwealth of Puerto Rico, public corporations, and the municipalities. As it has been pointed out, if the government lacks sufficient resources in the General Fund to manage its own operations, much less does it have resources to address the deficiencies in the Public Employees System.

The welfare of all those of us who live in Puerto Rico would be seriously affected if more resources from the General Fund are encumbered for the payment of pensions to retired persons. The more money is appropriated from the General

Fund to cover contributions to the Retirement Systems, the less money would be available to address the needs of the rest of our society. More funds for the Retirement Systems would result in lesser funds to educate our children, protect our homes, healthcare, and to improve the infrastructure that we use on a daily basis.

Even more alarming are the estimates that suggest that as soon as fiscal year 2013-2014, the net assets of the System shall be negative, since the debt evidenced by pension obligation funds shall exceed the assets of the System, and that by fiscal year 2018-2019, the System shall not have sufficient funds to cover the payment of its obligation, among these, the payment to pensioners themselves, since its gross assets shall have been depleted. The crisis the System is undergoing is self-liquidating it rapidly; therefore, if prompt action is not taken, by fiscal year 2018-2019, the System would rely, almost exclusively, on employer and individual contributions for the payment of its obligations, which represents only about 59% of what is required to pay the obligations for said year. This means that the actuarial coverage of the Public Employees System will be 0% by June 30, 2014, and consequently the government would have to appropriate more money from the General Fund, in addition to those approved under Act No. 116, to inject them into the Public Employees System, funds that as we have indicated, are not available.

There is no doubt that the problem has reached a critical level. The Retirement Systems crisis is no longer the exclusive problem of a public employee that hopes to be able to enjoy his/her retirement; it is a systemic risk that threatens the Puerto Rican society and the daily lives of the people of the Island. The System deficit has the following implications:

**1)    The annual cost of the Systems is unsustainable for Puerto Ricans:**

According to projections provided by the actuaries of the System, if drastic changes are not made, the present contributions of the General Fund to the Systems

would have to be increased significantly during the next 20 years in order to be able to pay the pensions. This means that by 2030, for each dollar of income that the government receives, 41 cents would have to be directed to the payment of pensions for public employees, which would make it impossible to perform government work in countless aspects. The government simply does not have the resources to continue making more contributions to the Systems.

### 2) The burden falls on the participants of the Reform 2000:

Participants who enrolled in the System after January 1, 2000 under the Reform 2000 are contributing the same or more than other active members, but shall receive at the time of their retirement, less benefits than participants under the previous laws. Moreover, if the necessary changes are not implemented, the assets of the Public Employees System could be depleted by the time the participants of the Reform 2000 are entitled to recover their contributions.

On the other hand, there are less active members at present in the System to support the increase for retired persons and beneficiaries. This reduction is due, in part, to the early retirement windows and to a substantial reduction in the number of government employees. At this rate, in the near future there will be more pensioners than participants, which shall intensify even more the financial pressure on the System.

### 3) Essential public services shall be at risk:

As it has been explained, the burden posed by the contributions made by the Commonwealth to the pension fund is extremely onerous and shall continue to grow. This jeopardizes the viability of basic services that the government should provide to the people, such as public safety, health services, and education. For example, by 2022, the government shall have to set aside more than $2.7 billion to contribute to the Public Employees System and to the Teachers Retirement System. It is estimated that said sum will continue to grow throughout the years

and has already exceeded the annual budget of the Department of Education for fiscal year 2013.

**4)      The moneys of the Retirement System will be depleted:**

With $1.724 billion in net assets as of June 30, 2011, it is estimated that the Public Employees System shall be left without net assets as soon as in 2014. As stated above, this means that when there are no net assets left, the Public Employees System shall have an actuarial coverage of 0%. Although the Public Employees System does, in fact, have the proceeds of a pension bonds issue, which is estimated to extend its life to 2019 or 2020, those funds are  payable from the employer contributions that the Public Employees System receives and, once exhausted, there shall not be enough money to pay the pensions of retired persons.

**5)      If the Retirement Systems are not reformed, the credit of Puerto Rico shall be downgraded to "junk" unleashing countless disastrous consequences for the Island:**

As it has been reported by credit rating agencies, the credit of Puerto Rico shall be downgraded to "junk" if the Retirement Systems are not reformed. In fact, the fragility and actuarial deficit of the Public Employees System has been a recurrent finding of all credit rating agencies regarding the condition of the public finances and the rating of the obligations of the Commonwealth of Puerto Rico. So, if the problem of the Retirement Systems is not addressed now, there is a real and imminent risk that the credit of the Commonwealth of Puerto Rico shall be downgraded to "junk". As we all know, this downgrading would have an immediate effect on the people's wallets since it would unleash an unprecedented financial crisis in the Island. This would cause, among other things, the closing of financial markets to the government of Puerto Rico; a drastic devaluation ranging from 30% to 50% in the value of all government and public corporations obligations; a reduction in the short-term lines of credit granted by banks that the government uses to finance its operations; a significant increase in interest rates;

and the loss of millions of dollars invested in Individual Retirement Accounts (IRA), and in public and private retirement plans that have investments in government bonds.

The impact of such downgrading on government finances would be monumental. There would be an abrupt reduction in revenues and the impossibility of resorting to effective financing to cover budgetary insufficiencies and to manage government operations as usual. This would have disastrous consequences because the basic government services would be seriously affected. Given the government's need to be able to finance its operations and capital works through the financing obtained in financial markets and the fragility of our credit and its present rating, it is indispensable to promptly resolve this crisis. The longer we wait to solve this issue, the more the insolvency of the System will worsen, thus increasing the adverse social impact of any solution implemented. There is no doubt that the interest of this Legislative Assembly is to promptly resolve the crisis we face through the implementation of well-pondered, reasonable, fair, and permanent solutions.

**IN VIEW OF THE PRESENT CRISIS, IT IS NECESSARY TO ACT NOW**

It is of utmost importance to implement a comprehensive reform plan to address the System's crisis. If the present structure does not undergo significant changes, all Puerto Ricans, including public employees, pensioners, and all other productive sectors of our society, will have to make great sacrifices in order to pay the obligations accumulated by the System.

The actuarial reality of the Public Employees System, as well as the experience of other jurisdictions, show that in the face of this type of crisis, it is necessary that all participants, beneficiaries, and contributors of the System help to restore its fiscal health, so that it can meet its present obligations to the more than 116,000 current pensioners and future obligations to the more than 130,000 active public employees. There are various alternatives; however, the extent of the crisis

prevents us from finding the solution that would make up once and for all the existing deficit. The increase of employer contribution, as provided in Act No. 116-2011, and the use of non-recurrent sources of income, as the POBs issue, or the sale of the System's assets, as it has been done in the past years, are not feasible and, in any case, could not solve the present actuarial crisis alone. To repeat the errors of the past would only perpetuate a problem that we have been dragging for the past 60 years and that today threatens to push us to an economic abyss that could ensue an unprecedented social crisis. On the contrary, comprehensive and encompassing solutions are required whereby all the constituents of the System and all of its contributors can work together on its recovery.

Therefore, in addition to honoring the previously approved increase in employer contribution (that is paid from taxes paid by taxpayers) the road to the fiscal reconstruction of the System requires reducing the actuarial deficit and the insufficiency of funds for the payment of benefits by means of a balance of measures that contemplate, among others: (1) freezing benefits accrued by active public employees under the defined benefits plan pursuant to Act No. 447 and Act No. 1, by eliminating the granting of new benefits under the present System, yet honoring all those accrued by said public employees to the present; (2) raising the retirement age, which shall be implemented in a staggered manner for those public employees that at present are close to attaining the retirement age required under the laws in effect; (3) increasing the contribution of employees to the System;       (4) transferring active public employees under Act No. 447 and Act No. 1 to a defined contribution plan similar to the Reform 2000; (5) modifying the benefits granted by the Special Laws, using all the savings in employer contribution thus generated to set aside more funds to the Public Employees System and ensure the payment of the benefits of pensioners and of those active public employees with benefits accrued under Act No. 447 and Act No. 1; and

(6) converting the lump sum payment made to public employees who retire under Reform 2000 into an annuity. Even after taking all these measures, the actuaries of the System estimate that the General Fund would also have to make additional contributions of approximately $100 million each year in up-coming decades. It is necessary to stress that this annual contribution to the System shall be in addition to the increase in employer contribution provided in Act No. 116, and that additional funds must be allocated to the General Fund to close this gap. The Commonwealth of Puerto Rico is evaluating the implementation of a recurring income source in order to be able to defray this additional contribution to the Retirement Systems.

## EXPLANATION OF THE AMENDMENTS

Each one of the amendments included in this legislative piece is necessary so that all together, the actuarial deficit of the System, as well as the cash flow deficit that the same suffers and threatens to deplete the System's assets in the near future, is significantly reduced.

### 1)    Freezing of benefits

In the first place, salvaging the System requires freezing the accrual of benefits of active public employees that participate in the defined benefits plans under Act No. 447 and Act No. 1. The contributions that would have to be made by public employees and the government as employer to keep this benefit structure in the future are absolutely incongruent with the financial capacity of the public employee who currently works in the government and with the fiscal reality of the General Fund and of the other employers that have the obligation to make additional contributions to the Public Employees System as legislated under Act No. 116 (and which shall, in spite of all the changes contemplated herein, make additional appropriations of approximately $100 million annually to cover the System's cash flow deficit. However, it must be clear that the benefits accrued by active public employees under the laws that covered them up to the effective

day of this Act, shall subsist and shall be paid in accordance with the provisions of said laws. Therefore, at the time of their retirement, public employees participating in the programs established under Act No. 447 and Act No. 1 shall receive an annuity which shall combine: (i) the annuity resulting from the benefits they have accrued under the program in which they participated, as of the effective date of this Act, plus (ii) the annuity that they may acquire with what is accrued under the new defined contribution hybrid plan from the present to the time of their retirement. This Legislative Assembly deems that this measure is reasonable since it honors the benefits accrued by active public employees, while it significantly reduces the future annual deficit of the System. In view of the accelerated pace at which the System is exhausting its assets, if the reform of the System promulgated herein is not carried out, the accrued benefits of the active participants of the System could not be honored.

**2)    Raise in Retirement Age**

This Act raises the retirement age, implementing the same in a staggered manner so that those persons who, on this day, are close to attaining the required age under the laws in effect, may do so at a lesser age and will not be disproportionately affected by said modification.

**3)    Increase in employee contribution**

The current 8.275% employee contribution rate is hereby increased to a minimum of 10% of his/her compensation.

**4)    Special Laws**

The various special laws are hereby amended to eliminate the benefits granted under the same to future pensioners. As to current pensioners, said laws are amended in order to reduce some of the benefits provided by the same. However, every dollar of savings attained through the modifications of the special laws shall be paid to the System so that these funds are available to improve the retirement

benefits of those that receive less and to defray the System's actuarial deficit and thus contribute to the payment of the pensions to which retired persons are entitled.

### 5)      Annuity of Reform 2000

The conversion of the sum of the contributions made by every public employee participating in the Reform 2000 program to a life annuity offers all persons who retire under the Reform 2000, a continuous and accurate payment during their retirement years. Moreover, converting the payment of the contributions accumulated in the savings account contemplated by the Reform 2000 into an annuity guarantees that the System shall not have to disburse all at once a sum that, depending on the contributions made by the participant, could amount to tens of thousands of dollars, thus negatively affecting the flow of funds of the System.

These amendments go hand-in-hand with other changes implemented by this legislative piece, such as the elimination of recognition of uncredited services; the elimination of the power to reimburse and transfer contributions; the modification of death benefits; and the elimination of the occupational and non-occupational disability pension, which shall be substituted for the purchase of disability insurance and the acquisition of a disability annuity with the accumulated contributions.

This group of measures shall have the net effect of allowing the System to significantly reduce both, its annual cash flow deficit as well as its actuarial deficit, which, in turn, guarantee the extension of the life of the System in order to pay pensions to our pensioners and to thus eliminate the short- and long-term pressure on the General Fund, so that the ability of the government to provide basic services to the citizenry is not affected and our already delicate credit rating does not worsen. They are designed to impact on a fair and equal manner all the components of the System: the Commonwealth (through the increase in employer contributions already legislated by Act No. 116 and future appropriations from the

General Fund that these measures have not eliminated), pensioners (through the reduction or elimination of some of the benefits granted by the Special Laws), active public employees (through the modification of the benefits structure, the raise in the retirement age, and the increase in employee contribution), and taxpayers in general (through the injection of funds to the System by the General Fund from taxes paid by the people). Each one of these measures is an essential link to prevent the System's insolvency and thus guarantee a respectable retirement to public employees.

Even more importantly, this Reform honors and validates the accrued benefits of pensioners, whose accrued benefits shall not be affected, and those of active public employees that continue contributing to the System. In both cases it involves people who, making great financial sacrifices, have devoted the best years of their productive and professional lives to the common good of the Island. Although the easiest solution to this crisis would be to reduce said accrued benefits to temper them with the economic and fiscal reality we are undergoing, this Reform seeks to find the manner in which these benefits may be honored in view of the imminent insolvency of the System and the economic crisis prevailing in the Island.

It is also important to stress that even though the present legislative piece reforms the benefit structure and modifies the present retirement requirements, the Reform seeks to mitigate the impact of the measures on both, pensioners whose financial reality makes them more vulnerable to changes in the System and public employees who are close to their retirement age. Thus, the changes herein established increase the minimum pension benefit from $400 to $500 and grant more generous benefits under the Special Laws to those pensioners who receive less on a monthly basis from the System. On the other hand, by establishing a raise in the retirement age in a staggered manner, the impact of the Reform in effect on those that are close to the retirement age is mitigated. Lastly, the conversion of the

sum of the contributions made by the employees subject to the Reform 2000 to an annuity, assures them, in contrast with the Reform 2000, an accurate and lifetime income. In this manner, the Legislative Assembly seeks to strike a reasonable balance between the fiscal crisis of the System and the economic and social reality of our pensioners and our more disadvantaged public employees.

On the other hand, we must not lose from perspective that the measures herein adopted with respect to the Public Employees System, where all the components contribute to its solution, are part of a broader effort being made to correct the fiscal situation of the Island. The fiscal and economic challenges we are forced to endure are many, and require that all –individuals, domestic and foreign corporations and the government itself– contribute so that the Island may overcome the same.

This Legislative Assembly believes that these measures are necessary and reasonable to attack head-on the situation of the Public Employees System, within our legal and constitutional framework. They are the least onerous alternatives available to achieve the compelling public purpose to: (1) prevent that the Public Employees System is left without any money to pay the pensions of our retired persons; (2) honor the benefits accrued by retired public employees and by those that continue to work day to day for our well-being; (3) significantly reduce the projected impact of the actuarial deficit of the System on the General Fund through the appropriations of funds to the Public Employees System, which would otherwise affect the provision of essential public services to the citizenry; and (4) prevent the economic and fiscal catastrophe caused by the downgrading of the credit of Puerto Rico to "junk" status. We are aware that these measures, albeit significant, are reasonable and necessary for the attainment of the aforementioned purposes. After all, as it was very well stated by our Supreme Court in *Bayron Toro v. Serra*, 119 D.P.R. 605, 622-623 (1987):

We must bear in mind that at the basis of any public retirement system similar to the one under our consideration, lies the primal interest, both of the Government and of participating employees, to establish and preserve a monetary fund sound enough to guarantee the solvency of the system. For purposes of pension payments, this element is essential to the relationship between the Government as employer and the participating employee. Within the context of this relationship, the Government should have the capacity and flexibility to make such reasonable changes and amendments as may be necessary to further the interests of the Retirement System and to strengthen its foundations and structure. Changing conditions and requirements, such as years of service, contributions to the fund, and retirement age, are essential to preserve the solvency of the fund. This flexibility is vital to allow the Retirement System to face unforeseen situations and to keep abreast of developments in the field of actuarial sciences. Recognizing the Government's power to modify retirement systems within the parameters mentioned here is essential for the successful operation of these plans.

That is precisely the intention of the present measure, to reasonably modify the conditions and requirements of the Public Employees System in order to guarantee its subsistence and, therefore, the fiscal, economic, and social wellbeing of the Island.

**BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:**

Section 1.-  Section 1-101 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 1-101.- Employees Retirement System - Creation; Effective and Operative Dates; Coordination with Federal Social Security.-

A retirement and benefit system to be designated as the 'Retirement System for Employees of the Government of the Commonwealth of Puerto Rico,' which shall be considered a trust, is hereby created. The funds of the System herein created shall be used and applied, as provided in this Act, for the benefit of the participating members of its membership, their dependents and beneficiaries, for the payment of retirement and disability annuities, death benefits and annuities, and other benefits, upon meeting the requirements set forth hereinafter, in order to achieve economy and efficiency in the administration of the Government of the Commonwealth of Puerto Rico.

The system shall be established as of the effective date of this Act, and become operational on January 1, 1952, date on which the contributions and benefits shall become effective, as provided in this Act. The period from the effective date of this Act to January 1, 1952, shall constitute the period of organization of the System. January 1, 1952, shall be known as the 'operative date of the system.' In the case of public enterprises and municipalities, the operative date shall be the date on which their participation in the system begins. As of the effective date fixed in the modification of the Agreement entered into between the Agency in Charge, the Secretary of Health, and the Secretary of Education, pursuant to the provisions of Act No. 396 of May 12, 1952, as amended; the benefits of Chapter 2 of this Act shall be coordinated with the benefits of Title II of the United States Social Security Act. In no case shall the combined payments of annuities of the Social Security and the Retirement System to participants under Chapter 2 of this Act shall be less than the annuity that would have corresponded to the System participant under Chapter 2, in accordance with the provisions of this Act. Retirement benefits provided under Chapters 3 and 5 of this Act shall not be

coordinated with the benefits of Title II of the United States Social Security Act, except as it may apply under the provisions of Chapter 5."

Section 2.- Section 1-102 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 1-102.- Benefits for the Employees of the System.-

This Act shall consist of five chapters. Chapter 1 shall contain the provisions related to the creation of the System. Chapter 2 shall contain the provisions related to the retirement benefits program defined for the employees who enrolled in the System before January 1, 2000. Those employees who enrolled in the system before January 2000, shall only enjoy the benefits provided in Chapters 2, 4, and 5 and shall not be entitled to any other benefit provided by this Act, unless, pursuant to the provisions of Section 3-102, they choose to enroll in the Retirement Savings Account Program. Chapter 3 shall contain the provisions related to the Retirement Savings Account Program. Participants of the Retirement Savings Account Program shall only enjoy the benefits provided in Chapters 3, 4, and 5 of this Act, and shall not be entitled to any other benefit provided under this Act. Chapter 4 shall contain the provisions related to the administration of the System and the investment of the System's funds. Chapter 5 of this Act shall contain the provisions related to the Defined Contribution Hybrid Program which shall apply to all employees participating in the System as of July 1, 2013. The provisions of Chapters 4 and 5 shall only apply to employees participating in the Defined Contribution Hybrid Program, except as otherwise provided in this Act. The provisions of Chapters 1, 2, and 3 shall remain in effect to preserve the code of laws applicable to all transactions carried out or to be carried out on or before June 30, 2013, to preserve those sections whose provisions, along with Chapter 5, shall apply, as specifically provided herein, and to preserve the definitions of terms applicable to Chapter 5 of this Act."

Section 3.- Section 1-104 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 1-104.- Definitions.-

The following terms and phrases as used in this Act, unless a different meaning is plainly required by the context, shall have the following meanings:

(1)     Board.- Shall mean the Board of Trustees of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico.

        …

(25)   Hybrid Program.- shall mean the Defined Contribution Hybrid Program established in Chapter 5 of this Act, under which participants make contributions that will later be used to pay a life annuity.

(26)   …

(27)   …

(28)   …

(29)   …

(30)   …

(31)   Normal Retirement Date.- Shall mean under Chapter 3 of this Act:

        (a)     General Rule.- The first day of the month that falls on the same date or a subsequent date on which the Program participant reaches the age of sixty (60), except as otherwise provided in paragraph (b) of this subsection.

        (b)     Public Employees in High-Risk Positions.- In the case of Public Employees in High-Risk Positions, it shall mean the first day of the month that falls on the same date or a subsequent date on which the Program participant reaches the age of fifty-five (55).

        (c)     Effectiveness of these Provisions.- The normal retirement date established in paragraphs (a) and (b) of this definition shall be in effect until June 30, 2013.

(32)   New Retirement Age.- Shall mean the retirement age of participants as provided in Chapter 5 of this Act.

(33)   Transfer Option.-  …

(34)   Program Participant.- Shall mean, until June 30, 2013, any person for whom the Administrator maintains an account under the Retirement Savings Account Program pursuant to the provisions of Chapter 3 of this Act. Beginning on July 1, 2013, this term shall mean any person for whom the Administrator maintains an account under the Defined Contribution Hybrid Program in accordance with the provisions of Chapter 5 of this Act.

(35)   …

(36)   …

(37)   …

(38)   …

(39)   Code.- Shall mean the Internal Revenue Code for a New Puerto Rico, Act No. 1-2011, as amended.

(40)   Public Employees in High-Risk positions.- Shall mean the Puerto Rico Police Department, the Municipal Police Corps, the Puerto Rico Firefighters Corps, the Municipal Firefighters Corps, and the Custody Officers Corps.

(41)   Retirement Age for Participants who Enter Public Service after June 30, 2013.- Retirement age shall be sixty-seven (67) years, except for Public Employees in High-Risk positions, whose retirement age shall be fifty-eight (58) years.

The masculine gender of the pronoun, wherever it is used, shall encompass both genders."

Section 4.- Section 2-101 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 2-101.- Retirement Annuity.-

(a)    Upon separation from service, on or after reaching the age, and after completing the period of service indicated below, all participants who have not been reimbursed their accumulated contributions shall be entitled to receive a retirement annuity. Said annuity shall commence on the date on which the participant files his/her application for retirement, but in no case before his/her separation from the service.

…

However, a minimum pension of five hundred dollars ($500) per month is hereby fixed for those participants who retired in accordance with the provisions of this Chapter 2. Every pensioner receiving a pension of less than five hundred dollars ($500) per month shall receive, on July 1, 2013, the corresponding raise so that his/her pension amounts to five hundred dollars ($500).

The provisions on minimum pensions set forth in this Section shall not apply to persons who, having been participants of this System, retire under the jurisdiction of any other of the systems sponsored by the Government of the Commonwealth of Puerto Rico, in accordance with the provisions of this Act.

…

(c)    Notwithstanding that the annuity is payable for life upon reaching the retirement age, if any annuitant returns to the service, the payment of such annuity shall be suspended. After separation from service, the payment of said annuity shall be resumed and, in addition, the annuitant shall have the option to withdraw any contributions made from the date on which the pensioner returned to service to the date he/she separated from service if, upon returning to service, he/she worked less than five (5) years or accumulated contributions amounting to less than ten thousand dollars ($10,000). In the event that, upon returning to service, the pensioner worked five (5) years or more and accumulated ten thousand dollars ($10,000) or more, such pensioner, after he/she separates from service and reaches

the age established in Section 5-110 of this Act, shall be entitled to a supplemental annuity computed in accordance with Section 5-110 of this Act, over the basis of the contributions made from the date on which such pensioner returned to service to the date he/she separated from service.

…"

Section 5.- Section 2-103 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 2-103.- Retirement Benefits for System Employees - Annuities for New Participants.-

(a)     Annuity for Years of Service.- Retirement shall be optional for new participants who have enrolled for the first time in the System after April 1, 1990, as of the date on which they reach the age of sixty-five (65), have completed a minimum of ten (10) years of credited service and have not requested or received the reimbursement from the accumulated contributions. The amount of the annuity shall be one point five percent (1.5%) of the average compensation multiplied by the years of credited services. However, a minimum pension of five hundred dollars ($500) per month, effective on July 1, 2013, is hereby fixed for those participants who retired in accordance with the provisions of Chapter 2. Every pensioner who receives a pension of less than five hundred dollars ($500) per month shall receive effective on July 1, 2013, the corresponding raise so that his/her pension amounts to five hundred dollars ($500).

…"

Section 6.- Section 2-104 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 7.- Section 2-104a of Act No. 447 of May 15, 1951, as amended, is hereby renumbered as 2-104, to read as follows:

"Section 2-104.- Mandatory Retirement for Public Employees in High-Risk Positions.-

Public Employees in High-Risk positions may voluntarily choose to retire after reaching the age of fifty-five (55) and thirty (30) years of service. Retirement shall be mandatory on the date the participant reaches both thirty (30) years of service and the age of fifty-eight (58). Provided, that the Superintendent of the Puerto Rico Police and the Chief of the Firefighter Corps or the pertinent appointing authority may grant dispensations to authorize the members of their respective agencies to work for an additional maximum period of two (2) years performing the functions assigned to them; provided that the health and safety of Public Employees in High-Risk positions are not compromised. Such a request for dispensation shall be made by the official, not later than ninety (90) days before his/her retirement date.

It is hereby provided that the Superintendent of the Puerto Rico Police and the Chief of the Firefighter Corps or the pertinent appointing authority shall adopt regulations as necessary to comply with this Act."

Section 8.- Section 2-115 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 9.- Section 2-116 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 10.- Sections 2-117 to 2-120 of Act No. 447 of May 15, 1951, as amended, are hereby renumbered as Sections 2-115 to 2-118 in Act No. 447 of May 15, 1951, as amended.

Section 11.- Section 3-104 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 12.- Section 3-105 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 13.- Sections 3-106 to 3-112 of Act No. 447 of May 15, 1951, as amended, are hereby renumbered as Sections 3-104 to 3-110 in Act No. 447 of May 15, 1951, as amended.

Section 14.-   Chapter 5 of Act No. 447 of May 15, 1951, as amended, entitled 'Defined Contribution Hybrid Program,' is hereby created."

Section 15.- A new Section 5-101 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-101.- Defined Contribution Hybrid Program - Creation.-

(a)     Creation of the Program.- The Defined Contribution Hybrid Program is hereby created. This Program shall establish an individual contribution account for each person who enrolls in the System under the provisions of this Chapter. The individual contributions made by each participant to the Hybrid Program, as well as the return on investment thereon, shall be credited to such accounts, in accordance with Section 5-108 of this Chapter. The benefit to be provided to each participant upon separation from service, due to retirement or otherwise, shall depend on the total amount of contributions accumulated in his/her Hybrid Program account (including, in the case of those employees who entered the System for the first time on or after January 2000, the contributions accumulated in his/her savings account under the Retirement Savings Account Program which are transferred to the Hybrid Program in accordance with Section 5-103 of this Act), the return on investment of these contributions, and the life annuity granted on the basis thereof, in accordance with Section 5-110 of this Act.

(b)     Program Participants.- The following persons shall participate in the Hybrid Program:

(1)     Any employee participating in the System as of July 1, 2013.

(2)     Any new employee who enrolls for the first time in the System after July 1, 2013."

Section 16.- Section 5-102 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-102.- Transfer to the Program.-

(a)      As of July 1, 2013, any employee who is a System participant, including mayors, regardless of the date on which they were first appointed to the Government of the Commonwealth of Puerto Rico, its instrumentalities, municipalities, or employers participating in this System, shall become participants of the Defined Contribution Hybrid Program. The benefits to be received by these employees are those set forth in this Chapter.

Except as otherwise provided in this Chapter, the provisions of Chapters 1, 2, and 3, shall not apply to these employees."

Section 17.- Section 5-103 of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"Section 5-103.- Accumulated Benefits.-

(a)      On the effective date of this Act, employees participating in the System who entered public service before January 1, 2000 and who, as of June 30, 2013, are not participants of the Retirement Savings Account Program established under Chapter 3 of this Act shall keep their accumulated benefits as to credited years of service and the computation of the average compensation. Participants who, as of June 30, 2013, were entitled to retire and receive some sort of pension under this Act for having met the years of service and age requirements provided herein, shall retire on a subsequent date and shall be entitled to receive the corresponding annuity under Chapter 2 of this Act based on the compensation and years of service accrued as of June 30, 2013, as well as the annuity established in Section 5-110. In addition, the provisions of subsection (a) 7, 8, 9, 10, and 11 of this Section shall apply to these participants.

The following provisions shall apply to System participants who (i) entered service before January 1, 2000, (ii) as of June 20, 2013, are not participants of the Retirement Savings Account Program established under Chapter 3 of this Act, and (iii) as of June 30, 2013, do not meet the years of service and age requirements for retirement provided in Chapter 2 of this Act:

(1)    New retirement age for participants who enrolled for the first time in the System before April 1, 1990. In the case of participants who, as of June 20, 2013, have not reached the age of 58 and completed at least 10 years of service, or have not reached the age of 55 and completed 25 years of service, retirement shall be optional when they meet the following age and years of service requirements:

(i)    If, as of June 30, 2013, the participant is 57 years old, retirement shall be optional when he/she has reached the age of 59 and has completed at least 10 years of service.

(ii)    If, as of June 30, 2013, the participant is 56 years old, retirement shall be optional when he/she has reached the age of 60 and has completed at least 10 years of service.

(iii)    If, as of June 30, 2013, the participant is 55 years old or younger, retirement shall be optional when he/she has reached the age of 61 and has completed at least 10 years of service.

(2)    Retirement age for participants who have enrolled for the first time in the System between April 1, 1990 and December 31, 1999.- In the case of participants who, as of June 30, 2013, have not reached the age of 65 and completed at least 10 years of service, retirement shall be optional when such participants reach the age of 65 and have completed 10 years of service.

(3)    In the case of Public Employees in High-Risk positions who entered public service before April 1, 1990, and who, as of June 30, 2013, have not reached the age of 50 and completed at least 25 years of service, or have not

completed 30 years of service, regardless of their age, retirement shall be optional when they reach the age of 55 and have completed 30 years of service.

(4)     In the case of Public Employees in High-Risk positions who entered public service between April 1, 1990 and December 31, 1999, and who, as of June 30, 2013, have not reached the age of 55 and have completed 25 years of service, or have not completed 30 years of service, regardless of their age, retirement shall be optional when they reach the age of 55 and have completed 30 years of service.

(5)     Public Employees in High-Risk positions who separate from active duty before meeting the age and years of service requirements under subsection (a)(3) and (a)(4) of this Section shall only receive their pension when they meet the following age and service requirements:

(i)     If the participant enrolled for the first time in the System before April 1, 1990, once he/she meets the age and service requirements set forth in subsection (a)1 of this Section.

(ii)     If the participant enrolled for the first time in the System between April 1, 1990 and December 31, 1999, once he/she meets the age and service requirements set forth in subsection (a)2 of this Section.

(6)     Computation of Pension.- When the participant meets the aforementioned age and service requirements, he/she shall be entitled to receive an annuity which shall be computed based on the years of service accumulated as of June 30, 2013, and pursuant to the following rules:

(i)     The average compensation for employees who entered public service before April 1, 1990, shall be that established in definition 15 of Section 1-104 of this Act.

(ii)     The average compensation for employees who entered public service between April 1, 1990 and December 31, 1999, shall be that established in Section 1-108 of this Act.

(iii)   The pension for employees who entered public service before April 1, 1990, shall be computed on the basis of one point five percent (1.5%) of the average compensation multiplied by the number of years of credited services up to twenty (20) years, plus two percent (2%) of the average compensation, multiplied by the number of years of credited services in excess of twenty (20) years, in each case, until June 30, 2013.

(iv)   The pension for employees who entered public service between April 1, 1990 and December 31, 1999, shall be computed on the basis of one point five percent (1.5%) of the average compensation, multiplied by the number of years of credited services up to June 30, 2013.

(v)   System participants who, as of June 30, 2013, have availed themselves of the plan coordinated with Social Security Benefits shall receive an annuity adjusted in accordance with the provisions of subsection (e) of Section 2-102 of this Act. Provided, that the participant shall receive an annuity in accordance with the provisions of Section 5-103 of this Act until he/she is eligible to receive Social Security benefits.

(vi)   A participant shall receive this pension together with the annuity accrued by him/her in accordance with Section 5-110 of this Act.

(7)   As of July 1, 2013, participants shall not accumulate additional years of service to determine the average compensation when computing a pension under Section 5-103(a)(4). Moreover, uncredited services, as well as transfers or contributions paid for periods worked prior to June 30, 2013, shall not be recognized, save for the exceptions expressly provided by this Act.

(8)   The provisions of Section 2-119 of this Act shall apply to the participant's contributions.

(9)   Reimbursement of Contributions.- As of July 1, 2013, upon permanent separation from service, participants shall be entitled to the annuity provided under this Section, but not to the reimbursement of contributions for

separation of service, whether voluntarily, involuntarily, or due to disability. The contributions made by System participants who entered public service before December 31, 1999, and who have not completed ten (10) years of service as of June 30, 2013, shall be transferred to the participant's account under the Hybrid Program.

(10)   Death of a Participant in Active Service.- Upon the death of any person who was rendering services and had accumulated contributions in the Hybrid Program, such contributions shall be reimbursed to the person or persons designated by the participant under a written order duly recognized and filed with the Administrator, or to his/her heirs, if such designation had not been made. The reimbursement shall be equal to the amount of the contributions made and the interests accrued thereon up to six (6) months after the date of death or the date on which such contributions were paid, whichever is earlier. The Administrator shall collect from such contributions any outstanding debt that the participant may have with the System.

(11)   Death of a Pensioner.- Unless, as provided in this Act, an annuity by transfer were payable upon the death of a participant who had been receiving a retirement annuity, a lump-sum cash payment in the form of death benefits shall be made to the person or persons designated by the participant under a written order duly recognized and filed with the Administrator, or to his/her heirs, if such designation had not been made. Such benefit shall consist of the excess, if any, of the contributions accumulated up to June 30, 2013, in favor of the participant until his/her retirement date, over the total amount of all retirement annuity payments that the participant received before his/her death. If a participant who is a pensioner dies within thirty (30) days after his/her retirement date, it shall be understood that, for purposes of any of the provisions of this Act, he/she died while in active service, notwithstanding any provision of this Act to the contrary.

(b)      Employees who entered public service on or after January 1, 2000, or those who were participating in the Retirement Savings Account Program and who, as of June 30, 2013, could separate from service for being sixty (60) years old, may retire on any subsequent date and be entitled to receive an annuity as the balance of the contributions made to the Retirement Savings Account Program may allow, as well as those accumulated under the Defined Contribution Hybrid Plan.

(1)      The account under the Retirement Savings Account Program of any employee who enrolled for the first time in the System on or after January 1, 2000, shall be transferred to the Defined Contribution Hybrid Plan. Provided, that if as of June 30 2013, such employee has not reached the age of sixty (60), he/she shall be entitled to the annuity established in Section 5-110 of this Act when the following age requirements are met:

(i)      If, as of June 30, 2013, the participant is 59 years old, retirement shall be optional when he/she reaches the age of 61.

(ii)      If, as of June 30, 2013, the participant is 58 years old, retirement shall be optional when he/she reaches the age of 62.

(iii)      If, as of June 30, 2013, the participant is 57 years old, retirement shall be optional when he/she reaches the age of 63.

(iv)      If, as of June 30, 2013, the participant is 56 years old, retirement shall be optional when he/she reaches the age of 64.

(v)      If, as of June 30, 2013, the participant is 55 years old, retirement shall be optional when he/she reaches the age of 65.

(2)      In the case of Public Employees in High-Risk positions who entered public service after December 31, 1999 and, as of June 30, 2013, have not reached the age of 55, retirement shall be optional when they reach the age of 55."

Section 18.- Section 5-104 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-104.- Establishment of Contributions Accounts for the Defined Contribution Hybrid Program.-

The Administrator shall establish and maintain in the System an account with the contributions of each participant of the Hybrid Program, which shall be credited and debited in accordance with Sections 5-108 and 5-109 of this Chapter.

(a)    In the case of employees participating in the System who entered public service before January 1, 2000, and, as of June 30, 2013, are not participating in the Retirement Savings Account Program, the amounts contributed by such employees after July 1, 2013, shall be allocated to such account. Individual contributions made before June 30, 2013 shall be used for the payment of the annuity provided in Section 5-103 of this Act.

(b)    In the case of employees participating in the System who entered public service on or after January 1, 2000, the balance as of June 30, 2013, in their savings account under the Retirement Savings Account Program and the amounts contributed by such employees after July 1, 2013, shall be allocated to their account, except as provided in Section 5-103(b).

The provisions of Section 2-119 of this Act shall apply to such contributions."

Section 19.- Section 5-105 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5.105.- Contributions of Hybrid Program Participants.-

(a)    Account Contributions.- Every Hybrid Program Participant shall contribute mandatorily ten percent (10%) of his/her compensation while he/she is an active employee.

(b)     Contributions under the Plan Coordinated with Social Security Benefits.- System participants who, as of June 30, 2013, are availing themselves of the Plan Coordinated with Social Security Benefits shall contribute to the Hybrid Program:

(1)     Effective on July 1, 2013, they shall contribute seven percent (7%) of their monthly compensation up to five hundred fifty dollars ($550) and ten percent (10%) of the monthly compensation in excess of said amount.

(2)     Effective on July 1, 2014, they shall contribute eight point five percent (8.5%) of their monthly compensation up to five hundred fifty dollars ($550) and ten percent (10%) of the monthly compensation in excess of said amount.

(3)     Effective on July 1, 2015, they shall contribute ten percent (10%) of the total monthly compensation.

Program participants under subsections (a) and (b) of this Section may voluntarily contribute to their accounts a sum in addition to that herein established. Said contributions shall be allocated to the contributions account of every Hybrid Program participant. The Administrator shall establish the manner in which participants may make additional contributions.

(c)     Mandatory Contribution to Obtain Disability Insurance.- Every Hybrid Program participant shall mandatorily contribute to the disability insurance provided in Section 5-112 of this Chapter, to which the participant shall contribute such sums, fixed in dollars or compensation percentage, that the Administrator, with the approval of the Board, may deem necessary to provide disability insurance, insofar as the contribution required by the Administrator is equal to or lower than point twenty-five percent (0.25%) of the participant's compensation. Contributions made in accordance with this subsection may be credited against and reduce the contributions that the Program participant is required to make to the Commonwealth of Puerto Rico Employee Association, as provided in Section 8 of

Act No. 133 of June 28, 1966, as amended. Contributions under this subsection shall not be allocated to the participant's account."

Section 20.- Section 5-106 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-106.- Employer Contributions.-

Beginning on July 1, 2013, every employer shall mandatorily contribute to the System a sum equal to twelve point two hundred and seventy-five percent (12.275%) of the contribution of every Program participant while the participant is an employee. These contributions shall be deposited in the System in order to increase its level of assets, reduce its actuarial deficit, and improve its capacity to meet future obligations. From July 1, 2014 to June 30, 2016, the minimum employer contribution rate of twelve point two hundred and seventy-five percent (12.275%) shall increase annually on every subsequent July 1 by one percent (1%) of the compensation regularly earned by participants. From July 1, 2016 to June 30, 2021, the minimum employer contribution rate as of June 30 of each year shall increase annually on every subsequent July 1 by one point twenty-five percent (1.25%) of the compensation regularly earned by participants. Provided, that the established increases applicable to municipalities for fiscal years 2012-2013 and 2013-2014 shall be included in the budget request submitted by the Office of Management and Budget to the Legislative Assembly for approval."

Section 21.- Section 5-107 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-107.- Obligation of the Employer, Penalties.-

Any employer that is required to deduct and withhold the contributions of Program Participants and make contributions to the System as provided in this Chapter shall have the following obligations:

(a)      Requirement to Deduct and Withhold the Contributions of Program Participants and to Remit the Contributions of the Program Participants and Employer to the System.- Every employer of a Program participant shall deduct and withhold the contributions provided in Section 5-505 from the participant's compensation. The Secretary of the Treasury or any paymaster of the employer is hereby authorized to make deductions, even if the compensation to be paid in cash to the participant as a result of such deductions is less than any minimum prescribed by law. Contributions of Program participants shall be remitted by the Employer along with the contributions such employer is required to make under Section 5-106 to the System on or before the fifteenth (15th) day of the month following the date on which the withholding was made. The Administrator shall establish the form and manner in which contributions shall be remitted.

(b)      Responsibility for Contributions.- Every employer required to deduct and withhold the contributions of Program participants and to remit the contributions of Program participants as well as those of  the employer as provided in this Chapter, shall be responsible to the System for the total payment of such contributions. If the employer fails to withhold or remit such contributions, the sums that such employer failed to withhold and the unpaid contributions shall be collected from the employer by the Administrator according to the procedure established in Section 4-111 of this Act.

(c)      Interests on Contributions Owed.- Every employer that fails to remit its contributions and those of the Program participants within the term provided therefor shall be responsible to the System for the payment of interests at a rate to be determined by the Board on the contribution owed, from the day the contribution should have been remitted to the System to the day on which the contribution is remitted. Interests owed by an employer shall be collected by the Administrator according to the procedure established in Section 4-111 of this Act.

(d)     Return on Investment - Credit.- If an employer fails to remit the contributions of Program participants within the term provided therefor, the Administrator shall credit the return on investment to the account of the affected Program participant, as provided in Section 5-108 of this Chapter, as of the Employer's deadline to remit such contributions."

Section 22.- Section 5-108 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-108.- Credits to the Contributions Account, Return on Investment, and Rights on the Contributions Account.-

(a)     Credit.- The Administrator shall credit to the account of every Hybrid Program participant the following items:

(1)     Initial Balance Transfer.- In the case of participants of the Retirement Savings Account Program, the balance of the savings account and income transferred to the Hybrid Program shall be credited.

(2)     Contributions of Hybrid Program Participants.- Contributions made by the Hybrid Program Participant as required under this Act shall be credited once they are remitted by the employer to the System.

(3)     Return on Investment.- The return on investment shall be credited at the close of each semester of each fiscal year. The return on investment shall be computed the last business day of each semester of the fiscal year on the average monthly balance of the contributions account of the Hybrid Program participant, during the semester in question.  The return on investment shall be determined by the Board and shall never be less than eighty percent (80%) of the System's portfolio net rate of return during each semester of each fiscal year, of the management fees such as, but not limited to, fees payable to portfolio managers, custody, and investment advice.

(b)     Rights on the Contributions Account.- Hybrid Program participants shall always have one hundred percent (100%) right over the initial balance transfer provided in paragraph (1) of subsection (a) of this Section and their contributions to the Hybrid Program accounts."

Section 23.- Section 5-109 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-109.- Contributions Account Debits.-

The Administrator shall debit from the Contributions account established for each Hybrid Program participant those amounts used to issue an annuity for the payment of benefits or pay a lump sum distribution in accordance with Sections 5-110 and 5-111 of this Chapter.  Once the annuity is issued or the total balance of the contributions account is paid in a lump sum distribution, the account shall cease to exist. Furthermore, the Administrator may debit the amount of the disability insurance premium from the account of the participant."

Section 24.- Section 5-110 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-110.- Benefits Upon Separation from Service.-

(a)     Retirement Benefit.- Upon permanent separation from service, when the separation is not due to death or total and permanent disability, the balance of the contributions account of the Hybrid Program participant shall be distributed to the participant by the Administrator, if such participant meets any of the following requirements: (i) has less than five (5) years of credited service or, (ii) has accumulated in the System an amount equal to or less than ten thousand dollars ($10,000).

(b)     Date of Issue of Annuity Contract and Commencement of Distributions.- In the case that the participant (i) permanently separates from service after completing five (5) years or more of credited service, and (ii) has accumulated in the System an amount equal to or higher than ten thousand dollars

($10,000), shall be entitled to a life annuity to be computed based on the balance of his/her contributions in accordance with subsection (c) of Section 5-110 of this Act. The age in which the participant may begin to receive such annuity, provided that he/she has permanently separated from service, shall be the following:

(1)     Participants who enrolled for the first time in the System before April 1, 1990, and are not participants of the Savings Account Program: at the age in which they would have been entitled to receive a pension in accordance with subsection (a)(1) of Section 5-103 of this Act.

(2)     Participants who enrolled for the first time in the System between April 1, 1990 and December 31, 1999, and are not participants of the Savings Account Program: at the age in which they would have been entitled to receive a pension in accordance with subsection (a)(2) of Section 5-103 of this Act.

(3)     In the case of Public Employees in High-Rick positions who entered public service on or before December 31, 1999: at the age in which they would have been entitled to receive a pension in accordance with subsection (a)(3), (a)(4), and (a)(5) of Section 5-103 of this Act.

(4)     Participants who enrolled for the first time in the System between January 1, 2000 and June 30, 2013: at the age in which they would have been entitled to receive a pension in accordance with subsection (b) of Section 5-103 of this Act.

(5)     Participants who entered public service after July 1, 2013: at the age of 67.

(6)     In the case of Public Employees in High-Risk positions who entered public service after July 1, 2013: at the age of 58.

(c)     The life annuity of each participant shall be computed upon retirement as follows: (i) the accumulated balance of his/her contributions to the account of the Hybrid Program participant on the date of retirement, divided by (ii) a factor,

established by the Board in consultation with its actuaries and to be determined on the basis of the actuarial life expectancy of the participant and a specific tax rate.

(d) Annuity by Transfer: Hybrid Program participants may transfer a pension to a dependent as provided in Section 2-105 regarding annuities by transfer.

(e) Annuities issued under this Chapter 5 shall be paid for life on a monthly basis and may not be increased, reduced, revoked, or repealed, unless it is issued by error, or as otherwise explicitly provided. The first annuity payment shall cover the fraction of the current month up to the end of the month; and the last payment shall cover up to the end of the month in which the participant dies.

Employers shall be bound to file with the Administration all documents required within sixty (60) days after the application for retirement benefits or lump sum distribution is filed. The Administration shall act on the application for retirement benefits or lump sum distribution within sixty (60) days after the filing date of such application and the documents required by the Retirement System.

If an employer fails to meet the obligation set forth in this Section, such employer shall be responsible to the participant for the payment of an amount equal to a month of his/her salary at the time the application for retirement benefits or lump sum distribution is filed."

Section 25.- Section 5-111 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-111.- Death, Disability, or Terminal Illness Benefits.-

(a) Death of Participant on Active Duty.- If a person who was rendering services and had been making contributions to the Hybrid Program dies, such contributions shall be reimbursed to the person or persons designated by the participant by a written order duly recognized and filed with the Administrator, or to his/her heirs, if such designation had not been made. The reimbursement shall consist of the amount of the contributions made and the rate of return until the date

of the participant's death. The Administrator shall collect from such contributions any outstanding debt that the participant may have with the System.

(b)     Death of a Pensioner.- In a pensioner dies without receiving all the pension payments, his/her beneficiaries designated in the System or, in default thereof, his/her heirs, shall continue receiving the monthly pension payments until the contributions made by the participant are depleted.

(c)     Separation from Service Due to Disability or Terminal Illness.- The balance in the contributions account of every Hybrid Program participant who permanently separates from service due to total and permanent disability, or a disability in accordance with Act No. 127 of June 27, 1958, as amended, or due to terminal illness, as determined by the Administrator, shall be distributed by the Administrator, at the option of the participant, in a lump sum payment, or through an annuity contract, or any other optional form of payment pursuant to Section 5-110 of this Act.

After June 30, 2013 no disability pensions shall be issued as provided in Sections 2-107 to 2-111 of this Act."

Section 26.- Section 5-112 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-112.- Disability Insurance.-

The Administrator, with the approval of the Board, shall establish a disability benefit program, which shall provide a temporary annuity in the event of total and permanent disability. Disability benefits may be provided through one or more disability insurance contracts with one or more insurance companies authorized to do business in Puerto Rico by the Insurance Commissioner of Puerto Rico. The determination as to whether a person is totally and permanently disabled may be made by the insurance company that issues the insurance policy covering the person. All Program participants who are employees shall avail themselves of

the disability benefits program in the manner and form established by the Administrator."

Section 27.- Section 5-113 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-113.- Applicability of the Uniform Securities Act.-

The interest of any Program participant shall not constitute a security for the purposes of Act No. 60 of June 18, 1963, as amended, known as the 'Uniform Securities Act.'

Section 28.- Section 5-114 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-114.- Reciprocity between Retirement Systems; Uncredited Veteran Services; Voluntary Contribution to the Hybrid Program.-

(a)     After July 1, 2013, there shall be no reciprocity under Act No. 59 of June 10, 1953, as amended, between the Government Employees Retirement System and other retirement systems with respect to employees participating in other systems and are transferred to the Government Employees Retirement System.

(b)     The provisions of subsection E of Section 4 of Act No. 203-2007, as amended, known as the 'Bill of Rights of the Puerto Rican Veteran for the 21st Century,' shall continue to apply to System participants who are veterans, solely with regard to services rendered until June 30, 2013. However, there is no deadline for veterans to apply for service credit, for services rendered on or before June 30, 2013.

(c)     Any Hybrid Program participant who, on or after July 1, 2013, is on military leave for being on active duty in the United States Armed Forces and is not required to make mandatory contributions under Section 5-105(a) of this Act, may make voluntary contributions to his/her account in the Hybrid Program during the time he/she is on military leave. There is no deadline for veterans to make such

voluntary contributions. These contributions shall be credited to the contributions account of such Hybrid Program participant. The Administrator shall establish the manner in which these participants shall make such voluntary contributions to their accounts under the Hybrid Program."

Section 29.- A new Section 4-108 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 4-108.- Preservation of Benefits.-

(a)      Benefits of System Participants, under this Act, who retire on or before June 30, 2013 shall not be modified, including benefits received or to be received by their beneficiaries in the event of the participant's death.

(b)      The right of every participant who, as of June 30, 2013 was eligible to receive a deferred pension for meeting all the requirements thereof, to receive such pension regardless of whether he/she has applied therefor, is hereby preserved.

(c)      The right of every employee who has applied for a disability pension prior to the effective date of this Act and is pending evaluation by the System is hereby preserved.

(d)      In the case of a pensioner who had reentered public service before June 30, 2013, his/her contributions up to such date shall be preserved, in accordance with the option made under subsection (c) of Section 2-101 of Act No. 447 of May 15, 1951, as amended. Once he/she permanently separates from service, the benefit under the aforementioned subsection (c) of Section 2-101 shall be granted on the basis of the salaries earned and contributions made until June 30, 2013; provided, that after July 1, 2013, he/she shall be transferred to the Defined Contribution Hybrid Program established in Chapter 5 of Act No. 447 of May 15, 1951, as amended.

(e)      The provisions of subsection (c) of Section 2-101 of Act No. 447 of May 15, 1951, as amended, shall apply to every pensioner who reenters public service after July 1, 2013."

Section 30.- A new Section 4-109 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 1-109.- Filing of Applications before June 30, 2013.-

Every System participant interested in applying for a retirement transaction before the benefits preservation date, that is, June 30, 2013, shall file such application with the Administration of the Employees Retirement System of the Government and the Judiciary. The Administrator shall establish the procedure to process such applications."

Section 31.- Former Sections 4-108 through 4-114 of Act No. 447 of May 15, 1951, as amended, are hereby renumbered as Sections 4-110 through 4-116 of Act No. 447 of May 15, 1951, as amended.

Section 32.- Subsection (j) is hereby added to Act No. 105 of June 28, 1969, as amended, to read as follows:

"(j) The benefits provided under this Act shall not apply to pensioners who retire pursuant to Chapter 5 of Act No. 447 of May 15, 1951, as amended."

Section 33.- Section 1 of Act No. 37 of June 13, 2001, is hereby amended to read as follows:

"Section 1.- Every person who is receiving a pension or benefit under Act No. 12 of October 19, 1954, as amended, shall be entitled to receive a Summer Bonus equal to one hundred dollars ($100), which shall be paid not later than July 15 of each year.

If there were more than one beneficiary entitled to a pension upon the death of the active or retired participant, the Bonus shall be distributed, pro rata, among all the beneficiaries."

Section 34.- Section 1 of Act No. 155 of June 27, 2003, is hereby amended to read as follows:

"Section 1.- Any person who is receiving a pension under Act No. 12 of October 19, 1954, as amended, shall be entitled to receive each year a Medications Bonus equal to one hundred dollars ($100), starting in 2003, which shall be paid not later than July 15 of each year."

Section 35.- Section 8 of Act No. 95 of June 29, 1963, as amended, is hereby amended to read as follows:

"(a)   The Government employer contribution for health benefits for employees covered by health benefit plans under this Act shall be fixed in the General Budget of Expenses and shall not be less than five dollars ($5) monthly in the case of the municipalities; or one hundred dollars ($100) monthly in the case of the employees of all other Government instrumentalities; and one hundred dollars ($100) in the case of the pensioners of the Teachers of Puerto Rico Retirement System; but it shall not exceed the total amount of the corresponding fee to be paid to any employee. Provided, that said employer contribution to the health plans of public employees not covered under Act No. 45 of February 25, 1998, as amended, and for those who are covered, but as of February 29, 2004, had not signed agreements with related financial clauses, the same shall take effect as of October 1, 2004. On the other hand, employees covered by the provisions of Act No. 45, *supra*, who have agreements signed up to February 29, 2004, that include clauses on employer contributions shall receive one hundred dollars ($100) as of July 1, 2004. Likewise, in the event that the agreement provides a lesser amount than the amount proposed through this legislation, employees shall receive the amount that is necessary to complete the proposed employer contribution of one hundred dollars ($100) monthly as of July 1, 2004. Provided, further, that those employees covered under clauses with an employer contribution greater than one hundred dollars ($100) monthly may receive the difference, if the agency contributes the additional costs thus entailed.

(b)     …

(c)     …

(d)     Government employer contributions with respect to employees in active service shall be included in the General Budget of Expenses of the Commonwealth of Puerto Rico.

The employer contribution corresponding to pensioners of the Retirement System of the Judiciary and the Annuity and Pension System for the Teachers of Puerto Rico shall be consigned in the General Budget of Expenses of the Commonwealth of Puerto Rico as an additional contribution to said systems.

Provided, that the Office of Management and Budget shall be empowered to reimburse the cost of the increase in employer contributions, to be charged against the appropriations included for such purposes in the Joint Resolution for the General Government Budget. However, said reimbursement shall only cover the wages that are defrayed from the resources available in the General Fund. Provided, that those employees who, according to the dates established herein, are eligible to receive this increase, but whose salary is paid from other funds, shall receive the same raises chargeable to the special federal and state funds from which they receive their income. In order to obtain this reimbursement, each agency that defrays such increase from the General Fund shall file with the Office of Management and Budget a certified itemized list of the employees that are eligible for the increase, as provided by such Office. Said certification shall be received at the Office of Management and Budget not later than October 31, 2004."

Section 36.- Section 1 of Act No. 98 of June 4, 1980, as amended, is hereby amended to read as follows:

"Section 1.- All persons who are receiving a pension or benefit under Act No. 12 of October 19, 1954, as amended, shall be entitled to receive a Christmas Bonus equal to five hundred dollars ($500) beginning on December 2005; of five hundred fifty dollars ($550) beginning on December 2006;

and of six hundred dollars ($600) beginning on December 2007, which shall be paid not later than December 20 of each year. Pensioners covered under Act No. 305 of September 24, 1999, known as the 'Retirement Savings Account Program,' and those persons who retire under Chapter 5 of Act No. 447 of May 15, 1951, as amended, are excluded from the benefits granted under this Act."

Section 37.- The creation of a Special Standing Committee is hereby directed. The purpose of such Committee shall be to guarantee the continuous solvency of the Retirement Systems. The composition of said Committee shall be established by means of special legislation.

Section 38.- The Additional Benefits Program for the Pensioners of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico is hereby established. Such benefits shall be separate from and shall not be part of any pension or annuity.

"Section 1.- Except for those persons who retire under Chapter 5 of Act No. 447 of May 15, 1951, as amended, any person who has been receiving a pension or benefit under of Act No. 447 of May 15, 1951, as amended, or under the retirement plans superseded by this Act or any other Act administered by the Administrator of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico, excluding any person receiving a pension or benefit under Act No. 12 of October 19, 1954, as amended, shall be entitled to the following benefits:

(a)      A Medication Bonus equal to one hundred dollars ($100) to be paid not later than July 15 of each year.

(b)      A Christmas Bonus equal to two hundred dollars ($200) to be paid not later than December 20 of each year; and

(c)      A Government's contribution for health benefits for pensioners covered by the health benefit plans under Act No. 95 of June 29, 1963, as amended, of one hundred dollars ($100) every month for the pensioners of the

Retirement System for Employees of the Government of the Commonwealth of Puerto Rico, but shall not exceed the total rate corresponding to any pensioner.

Section 2.- In order to cover the Additional Benefit Program and the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico, beginning on fiscal year 2013-2014, and every subsequent fiscal year, the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico shall receive a contribution equal to two thousand dollars ($2,000) as of July 1 of each year for every pensioner of the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico who entered Public Service on or before December 31, 1999.

Section 3.- The Administration of the Employees Retirement System of the Government and the Judiciary shall determine the total amount of the special additional contribution provided in Section 2 and send a certification to the Director of the Office of Management and Budget and to each public corporation and municipality whose employees retired under the Retirement System for Employees of the Government of the Commonwealth of Puerto Rico, stating the corresponding amount of the applicable special additional contribution.

Section 4.- The resources to cover the contribution described in Section 2 with respect to the pensioners of the Central Government shall be earmarked in the General Budget of the Commonwealth of Puerto Rico. Public corporations and municipalities whose employees are covered under this Act shall provide the funds to cover the contribution described in Section 2 with respect to pensioners of such corporation or municipality.

Section 5.- Persons who retired under the Act No. 305 of September 24, 1999, known as the 'Retirement Savings Account Program,' and under Chapter 5 of Act No. 447 of May 15, 1951, as amended, are excluded from the benefits granted under this Act."

Section 39.- Section 5-115 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 5-115.- Transitory Provisions.-

(a)    Uncredited Creditable Service.-

(1)    Any participant who, on or before June 30, 2013, requests a payment plan to the Administrator, pursuant to subsection (b) of Section 1-107, to defray the cost of creditable service may choose to make such payments at a compound special interest rate of nine point five percent (9.5%).

(2)    Any participant who, on or before June 30, 2013, applies for a special personal loan to the Administrator to pay in full any uncredited creditable services, pursuant to subsection (c) of Section 1-107, may chose to make such payment at a compound special interest rate of nine point five percent (9.5%).

(3)    Any participant who avails him/herself of the special rate set forth in paragraphs (1) and (2) above and have entered public service on or before April 1, 1990, may only accumulate up to a maximum of sixty percent (60%) of the average compensation if he/she completes thirty (30) years of service.

(4)    For purposes of this paragraph (a), uncredited creditable services must have been rendered on or before June 30, 2013.

(b)    Any participant who entered public service on or before April 1, 1990, and would have been entitled to retire on or before December 31, 2013, after thirty (30) years of service pursuant to the provisions of Chapter 2, may do so under the following terms:

(1)    For those who have completed thirty (30) years or more of creditable service and have not reached the age of fifty-five (55) or more, fifty-five percent (55%) of their average compensation.

(2)    For those who have completed thirty (30) years or more of creditable service and have reached the age of fifty-five (55) or more, sixty percent (60%) of their average compensation.

(3)     Participants who avail themselves of the provisions of this subsection (b) shall make the mandatory contribution provided in Section 5-105 for benefit of the System, and such amount shall not be included in the contributions account of each Hybrid Program participant. Any excess mandatory contribution shall be credited to the Contributions Account of each participant.

Section 40.- Cause for action is hereby recognized to the participants and pensioners of the Employees Retirement System of the Government of Puerto Rico and the Judiciary to sue, *pro se*, nongovernment investment advisers and underwriters in any transaction in which pension obligation bonds have been issued by the Employees Retirement System of the Government of Puerto Rico and the Judiciary, for damages caused to the System or its beneficiaries.

Section 41.- Separability Clause.-

If any clause, paragraph, subparagraph, article, provision, section, subsection or part of this Act were held to be unconstitutional by a competent court, such holding shall not affect, impair, or invalidate the remaining provisions of this Act. The effect of such holding shall be limited to the clause, paragraph, subparagraph, article, provision, section, subsection, or part thereof thus held to be unconstitutional.

Section 42.- Effectiveness.-

This Act shall take effect on July 1, 2013. However, the provisions of subsection (c) of Section 4-108 and of the new Section 4-109 shall take effect immediately after its approval.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 3-2013 (H. B. 888)**

of the **1st Session of the 17th Legislature** of Puerto Rico:

**AN ACT**     to amend Sections 1-101, 1-102, 1-104, 2-101, 2-103; repeal Sections 2-104,
2-115, and 2-116; renumber Section 2-104-A as Section 2-104; renumber
Sections 2-117 to 2-120 as Sections 2-115 to 2-118; repeal Sections 3-104 and
3-105 and renumber Sections 3-106 to 3-112 as Sections 3-104 to 3-110;
add new Sections 4-108 and 4-109 and renumber Sections 4-108 to 4-114
as Sections 4-110 to 4-116; create Chapter 5 entitled the "Defined
Contribution Hybrid Program"; etc.

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 28th day of February, 2014.


Juan Luis Martínez Martínez
Acting Director