**Hearing Date: November 2, 2022 at 9:30AM (Atlantic Standard Time)**
**Response Deadline: October 17, 2022 at 4:00PM (Atlantic Standard Time)**

<div style="border:1px solid black">

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

</div>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

## FIVE HUNDRED TWENTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight,*

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Management, and Economic Stability Act* ("PROMESA"),[2] files this Five Hundred Twenty-Ninth omnibus objection (the "Five Hundred Twenty-Ninth Omnibus Objection") to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto, each of which is based on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds, (*b*) bond claims based on bonds issued by Puerto Rico Highways and Transportation Authority ("HTA") or the Puerto Rico Infrastructure Financing Corporation ("PRIFA") which have been discharged pursuant to the Confirmation Order (defined below), (*c*) an ownership interest in bonds issued by the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), which is not a Title III Debtor, for amounts for which the Commonwealth has not guaranteed repayment, (*d*) an ownership interest in bonds issued by the Government Development Bank ("GDB"), for amounts for which the Commonwealth has not guaranteed repayment, and/or (*e*) investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.  In support of the Five Hundred Twenty-Ninth Omnibus Objection, the Commonwealth respectfully represents as follows:

### JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section 306(a).

2.      Venue is proper in this district pursuant to PROMESA Section 307(a).

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

**A.    The Bar Date Orders**

3.    On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Title III Case").[3]

4.    On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.    Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment**

5.    On November 3, 2021, on behalf of the Commonwealth, ERS, and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

and modified, the "Plan") [ECF No. 19053].  The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.      Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders.  *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No. 19784].

7.      On January 18, 2022, the Court confirmed the Plan.  *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order").

8.      On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved, (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.      The Plan became effective on March 15, 2022, when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth*

*Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

### C.     Bond Debt Master Proofs of Claim – Commonwealth Title III Case

11.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by HTA, Puerto Rico Electric Power Authority ("PREPA"), Puerto Rico Industrial Development Company ("PRIDCO"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Public Financing Corporation ("PRPFC"), and the Puerto Rico Children's Trust (the "Children's Trust").

12.     ***PRIFA***—PRIFA is an affiliate of the GDB and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A.  First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on

behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRIFA Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRIFA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRIFA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

13.     Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Kroll (defined below), as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting:

> claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . .

Rider to Proof of Claim No. 13386, ¶ 26.

14.     *HTA*—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA

Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding. BNYM serves as fiscal agent with respect to the HTA Bonds.

15.   On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[4]

16.   On August 13, 2022, the Oversight Board filed the *Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1377] (the "Fifth Amended HTA Plan"). The Court considered confirmation of the Fifth Amended HTA Plan, and objections thereto, at a hearing on August 17, 2022, after which it took the proposed order to confirm the Fifth Amended HTA Plan under submission. On September 6,

---

[4]  While BNYM initially filed three proofs of claim logged by Kroll as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

2022, in response to the Court's prior order requesting certain revisions to the Fifth Amended HTA Plan, the Oversight Board filed the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1404] (the "HTA Plan"). Confirmation of the HTA Plan remains under consideration by the Court as of the date hereof.

17.   ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Kroll as Proof of Claim No. 13445 (the "PRIDCO Master Claim").   The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks:

> recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims.

Rider to PRIDCO Master Claim, ¶¶ 12-13.

18.     ***PRPFC***—PRPFC is a subsidiary corporation of GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  It provides government agencies, instrumentalities, municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth (the "PRPFC Master Claim"), which was logged by Kroll as Proof of Claim No. 13374.

19.     ***PREPA***—PREPA is a government-owned corporation founded in 1941.  *See* Act No. 83-1941, as amended (the "Authority Act") § 3.   PREPA generates and distributes substantially all the electric power used in the Commonwealth.  [Case No. 17 BK 4780, ECF No. 1 at 7].  PREPA is one of the largest public power utilities in the U.S., serving approximately 1.5 million customers, and has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank National Association serves as trustee for certain bonds issued by PREPA pursuant to that certain Trust Agreement dated January 1, 1974 (the "PREPA Bonds").  On behalf of the holders of the PREPA Bonds, U.S. Bank National Association filed a proof of claim against the Commonwealth (the "PREPA Master Claim"), which was logged by Kroll as Proof of Claim No. 50049, asserting an unliquidated claim for the alleged value of statutory rights granted by the Commonwealth to PREPA.

20.     ***Children's Trust***—The Children's Trust was established by the Children's Trust Act (Act No. 173 of 1999), 24 L.P.R.A. § 3121, *et seq.*, in connection with a settlement agreement

that was entered into by participating cigarette manufacturers and Puerto Rico, 46 states, and five other U.S. jurisdictions in November 1998 in the settlement of certain smoking-related litigation, including the Commonwealth's right to receive certain annual and strategic contribution fund payments to be made by such participating manufacturers under the MSA.  Art. 4 Act 173-1999, 24 L.P.R.A. § 3122.  U.S. Bank serves as trustee for certain Children's Trust Tobacco Settlement Asset-Backed Bonds Series 2002, 2005, 2008A, and 2008B (the "Children's Trust Bonds").  On behalf of the holders of the Children's Trust Bonds, US Bank filed a master proof of claim, which was logged by Kroll as Proof of Claim No. 13354 ("Children's Trust Master Claim," and together with the CW-HTA Master Claims, the PRIDCO Master Claim, the PRPFC Master Claim, the PRIFA Master Claims, and the PREPA Master Claim, the "Master Claims"), asserting:

> contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Indenture and the Act, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future.

Rider to Children's Trust Master Claim, ¶ 9.

**D.   Bond Debt Issued by the Puerto Rico Aqueduct and Sewer Authority**

21.   PRASA was established pursuant to Act Number 40 of May 1, 1945.  PRASA is a "public corporation and an autonomous government instrumentality" created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 142, 144.

22.   The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds (the "2008 Senior Series A Bonds") and $22,445,000 in principal amount of Series B revenue

10

bonds (the "2008 Senior Series B Bonds" and, together with the 2008 Senior Series A Bonds, the "2008 Senior Bonds"). In 2008, PRASA also issued $159,055,000 in principal amount of Series A revenue refunding bonds and $125,700,000 in principal amount of Series B revenue refunding bonds (collectively, the "PRASA Refunding Bonds"). In 2012, PRASA issued $1,800,450,000 in principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds") and $295,245,000 in principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds" and, together, with the 2012 Senior Series A Bonds, the "2012 Senior Bonds" and, together with the 2008 Senior Bonds, the "PRASA Senior Lien Bonds").

23.     Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Senior Lien Bonds in full as they become due and owing. Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[5]   In addition, the Commonwealth has not guaranteed repayment of the PRASA Senior Lien Bonds. Accordingly, the offering statements for the PRASA Senior Lien Bonds state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[6]

24.     Holders of PRASA Refunding Bonds have received and continue to receive all payments owed to holders of PRASA Refunding Bonds in full as they become due and owing. Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the

---

[5] *See, e.g.*, https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[6] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series A (Senior Lien), February 15, 2012, available at https://emma.msrb.org/ER584464-ER454075-ER856856.pdf.

PRASA Refunding Bonds.[7]  Further, while, the offering statements for the PRASA Refunding Bonds identify the Commonwealth as having guaranteed repayment thereon, that guaranteed was eliminated in connection the refinancing of the PRASA Refunding Bonds and certain of the PRASA Senior Lien Bonds, as set forth in the offering statement dated December 9, 2020, in accordance with which PRASA issued a series of 2020A senior lien revenue refunding bonds and 2020B senior lien federally taxable revenue refunding bonds (the "PRASA 2020 Refinancing Transaction").[8]

25.     On July 20, 2021, the Oversight Board approved a proposed refunding transaction wherein PRASA would issue a series of 2021ABC and 2022A senior lien bonds to refinance $1.8 billion of PRASA's outstanding 2012 Senior Bonds (the "PRASA 2021 Refinancing Transaction").[9]  The PRASA 2021 Refinancing Transaction was consummated in accordance with the terms of the offering statement dated August 17, 2021, issued in connection therewith.[10]

**E.     The GDB Title VI Proceedings and Qualifying Modification**

26.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by the Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively

---

[7] *See, e.g.*,
https://emma.msrb.org/Security/Details/A5686687B583CA99BFDDA7BAE76F581A9.

[8] *See* Offering Statement for PRASA Revenue Refunding Bonds, Series 2020A (Senior Lien) and Federally Taxable Revenue Refunding Bonds, Series 2020B (Senior Lien), December 9, 2020, available at https://emma.msrb.org/P31403866-P31091563-P31500360.pdf.

[9] *See* Letter from Financial Oversight & Management Board to AAFAF approving the PRASA Refinancing Transaction, July 20, 2021, available at
https://drive.google.com/file/d/1YvDZHPXCQ4vWOARyVGrY_XFb_-HhZZdc/view.

[10] *See* Offering Statement for PRASA Revenue Refunding Bonds, Series 2021ABC and 2022A (Senior Lien), August 17, 2021, available at https://emma.msrb.org/P11521655-P11177130-P11593393.pdf.

carrying out its responsibility to develop the economy of the Commonwealth.  On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

27.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA.  On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA Section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

28.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA Section 601(m)(1)(D).  *See* ECF No. 270 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provides for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. *Solicitation Statement*, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

29.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018), *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**F.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

30.     To date, approximately 179,034 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

31.     Of the proofs of claim filed, approximately 118,239 have been filed in relation to, or reclassified to be asserted against, Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

32.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF

No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").   On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

33.      In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

34.      Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 27 hearings related to over 500 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, PREPA, PBA, and/or the Employees Retirement System for the Government of the Commonwealth of Puerto Rico ("ERS").  Based upon rulings and orders of the Court to date, as well as the expungement of certain claims pursuant to the Plan, approximately 102,630 claims asserting $43.6 trillion in liability against the Commonwealth, COFINA, HTA, PREPA,

ERS, and PBA have been disallowed and expunged from the claims registry in the Title III proceedings.   In addition, approximately 45,193 claims have been transferred into the Administrative Claims Reconciliation process for resolution using the Debtor's ordinary-course administrative processes.

35.     This Five Hundred Twenty-Ninth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

36.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA Section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

37.     The Amended Omnibus Objection Procedures allow Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

38.     The Five Hundred Twenty-Ninth Omnibus Objection seeks to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which purports to be based, in part, on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of

certain bonds, (*b*) bond claims based on bonds issued by HTA or PRIFA which have been discharged pursuant to the Confirmation Order (defined below), (*c*) an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts for which the Commonwealth has not guaranteed repayment, (*d*) an ownership interest in bonds issued by GDB, for amounts for which the Commonwealth has not guaranteed repayment, and/or (*e*) investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth.  **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in part.

### A.  No Liability for Duplicate Bond Claims

39.     As set forth in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability, in part, on the basis of bonds by HTA, PREPA, PRIDCO, PRPFC, PRIFA, and the Children's Trust (collectively, the "Partial Duplicate Bond Claims").  *See, e.g.*, Claim No. 31483.

40.     Each of the Partial Duplicate Bond Claims purport to assert, in whole or in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by HTA, PREPA, PRIDCO, PRPFC, PRIFA, and the Children's Trust.  For example, the PREPA Master Claim asserts it is "filed on behalf of *all holders of each series of power revenue bonds and power revenue refunding bonds* issued and outstanding under the Trust Agreement.  PREPA Master Claim, Rider at 1 (emphasis added).  Accordingly, any claim filed against the Commonwealth by an individual holder asserting a claim with respect to such holder's PREPA bonds is duplicative of the PREPA Master Claim.  Accordingly, any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Debtors' Title III Cases.  The holders of the Partial Duplicate Bond Claims will

not be prejudiced by the disallowance of their claims because the liabilities associated with the

Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

### B.  No Liability for Bondholder Claims Discharged by the Confirmation Order

41.     As set forth in **Exhibit A** hereto, certain of the Claims to Be Disallowed purport to

assert liability, in part, based on the alleged ownership of bonds issued by HTA (the "HTA

Bondholder Claims"), and certain of the Claims to Be Disallowed purport to assert liability, in

part, based on the alleged ownership of bonds issued by PRIFA (the "PRIFA Bondholder Claims").

*See, e.g.*, Claim No. 91722.

42.     Both HTA Bondholder Claims and PRIFA Bondholder Claims assert liabilities

against the Commonwealth associated with various HTA and/or PRIFA Bonds issued by HTA

and/or PRIFA.  Claims asserted against the Commonwealth based on any bonds issued or

guaranteed by or loans made to or guaranteed by HTA and PRIFA have been fully discharged

pursuant to the Plan and the Commonwealth has no further liability on account of such Claims.  *See*

Confirmation Order ¶ 72 ("The Claims asserted against the Debtors or the Reorganized Debtors

based on any bonds issued or guaranteed by or loans made to or guaranteed by HTA, CCDA,

PRIFA, or MBA shall, to the extent allowed, be allowed as a Claim arising prior to the Petition

Date and classified in Classes 59 through 62 (except Allowed ERS Bond Claims to the extent

secured) and are hereby discharged and the Debtors and the Reorganized Debtors have no further

liability on account of such Claims.").

43.     Any failure to disallow the HTA Bondholder Claims and PRIFA Bondholder

Claims will result in the applicable claimants potentially receiving an unwarranted recovery

against the Commonwealth, to the detriment of other stakeholders in the Debtors' Title III Cases.

### C.  No Liability for GDB Bondholder Claims

44.     As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by GDB (collectively, the "Partial GDB Bondholder Claims").  *See, e.g.*, Claim No. 53173.

45.     Each of the Partial GDB Bondholder Claims purports to be based, in part, on the ownership of GDB Bonds that were subject to the Qualifying Modification, which provided for the issuance of new securities in exchange for the cancellation of the GDB Bonds and the extinguishment of the Commonwealth's guarantee of certain GDB Bonds, and thus the Commonwealth is no longer liable for these claims.  Accordingly, each of the Partial GDB Bondholder Claims has been released pursuant to the approval and consummation of the Qualifying Modification.  As noted above, the Qualifying Modification provides, among other things, that holders of GDB Bonds shall release GDB and its affiliates from claims relating to the GDB Bonds and any action or omission of GDB and its affiliates with respect to any indebtedness of or loan to GDB.  GDB is a public corporation and instrumentality of the Commonwealth.  The Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification.  Accordingly, the Partial GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018.

46.     Because the Partial GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed, because they seek recovery of amounts for which the Commonwealth is not liable.

### D.  No Liability for PRASA Bond Claims

47.     As set forth in **Exhibit A** hereto, certain of the Claims to Be Disallowed purport to assert liability, in part, based on the alleged ownership of PRASA Senior Lien Bonds issued by

PRASA (the "<u>Partial PRASA Senior Lien Bond Claims</u>") and PRASA Refunding Bonds issued by PRASA (the "<u>Partial PRASA Refunding Bond Claims</u>").

48.    The Partial PRASA Senior Lien Bond Claims and Partial PRASA Refunding Bond Claims assert liabilities against the Commonwealth associated with bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Debtors.  The Commonwealth has not guaranteed repayment for the PRASA Senior Lien Bonds.  Additionally, the Partial PRASA Senior Lien Bond Claims do not assert a legally sufficient basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth.

49.    Further, the PRASA Refunding Bonds, which at one point were guaranteed by the Commonwealth, had that guarantee extinguished in connection with the PRASA 2020 Refinancing Transaction.

50.    Because the Partial PRASA Senior Lien Bond Claims and the Partial PRASA Refunding Bond Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed, because they seek recovery of amounts for which the Commonwealth is not liable.

**E.  No Liability for Claims Based on Investments in Mutual Funds**

51.    As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability based in part on investment(s) in one or more mutual funds that, in turn, may have invested in bonds issued by the Commonwealth (collectively, the "<u>Partial Mutual Funds Claims</u>").  *See, e.g.*, Claim No. 115873-1.

52.    A claimant bears the burden of establishing standing to file a proof of claim.  *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor

or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11

U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*,

392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of

claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's

estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with

"relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no

standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803

F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re*

*Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest

are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*,

446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving

party must be asserting its own rights and not those belonging to or derivative of a third party");

*In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that

'party in interest standing does not arise if a party seeks to assert some right that is purely derivative

of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n.

10)).

   53. "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor*

or the estate," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin*

*Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Partial Mutual Funds Claims

were filed based on the claimant's status as an alleged creditor of an alleged creditor of the

Commonwealth, the Partial Mutual Funds Claims were not filed by an actual creditor of the

Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver

lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Partial Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.  Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities."  *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121].  Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims.  Because the Commonwealth cannot be held liable for the Partial Mutual Funds Claims, these claims should be disallowed in their entirety.

54.     In addition, certain of the Partial Mutual Funds Claims are deficient because they fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim.

55.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Five Hundred Twenty-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto to Duplicate and No Liability Bond Claims*, dated September 16, 2022, attached hereto as **Exhibit B**.

## NOTICE

56.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth is providing notice of this Five Hundred Twenty-Ninth Omnibus Objection to (a) the individual creditors subject to this Five Hundred Twenty-Ninth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico.  The notice for this Five Hundred Twenty-Ninth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Five Hundred Twenty-Ninth Omnibus Objection and all of the exhibits attached hereto are being filed and served with this objection.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

57.     This Five Hundred Twenty-Ninth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to the Remaining Amended Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy

Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

58.     No prior request for the relief sought in this Five Hundred Twenty-Ninth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: September 16, 2022
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Ricardo Burgos Vargas*
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.:  (787) 751-6764
Fax:  (787) 763-8260

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico*

**Fecha de la vista: 2 de noviembre de 2022, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 17 de octubre de 2022, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Número 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

---

**QUINGENTÉSIMA VIGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS EN LAS QUE NO EXISTE RESPONSABILIDAD**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor

Swain:

---

[1]    Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Número 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Número 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Número 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Número 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Número 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Número 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente Quingentésima vigésima novena objeción global (la "Quingentésima vigésima novena objeción global") en la que se solicita que se rechacen en su totalidad las evidencias de reclamaciones mencionadas en el **Anexo A** de presente documento, cada una de las cuales se basa en *a)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos, *b)* reclamaciones por bonos basadas en bonos emitidos por la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") o la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), que han sido liberadas en virtud de la Orden de Confirmación (definida abajo), *c)* participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es Deudor de Título III, por unos montos por los que el ELA no ha garantizado el reembolso, *d)* participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento (el "BGF"), por unos montos por los que el ELA no ha garantizado el reembolso, y/o *e)* inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA. En apoyo de la Quingentésima vigésima novena objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2]      PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

### JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

### ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III"). [3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF Número 2255]  (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF. Número 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de*

---

[3]  Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Número 17 BK 3283-LTS.

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF Número 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme al Título III**

5.      El 3 de noviembre de 2021, la Junta de Supervisión radicó, en nombre del ELA, del SRE y de la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"), el *Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* (en su versión enmendada y modificada posteriormente, denominado el "Plan") [ECF Número 19053]. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de 2021.

6.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico* [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7.      El 18 de enero de 2022, el Tribunal confirmó el Plan. Véase la *Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de*

*Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813] (la "Orden de Confirmación").

8. El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9. El Plan entró en vigor el 15 de marzo de 2022, una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF Número 20349].

10. Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

**C.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

11. Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las

reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica abajo, se han radicado evidencias de reclamaciones principales en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por la ACT, la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la Compañía de Fomento Industrial de Puerto Rico (la "PRIDCO"), la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), la Corporación para el Financiamiento Público de Puerto Rico (la "CFP") y el Fideicomiso de los Niños de Puerto Rico (el "Fideicomiso de los Niños").

12.   **_AFI_**: la AFI es una filial del BGF y constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley Número 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, los "Bonos de la AFI"), se radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI") por parte de BNYM, US Bank y UMB Bank, N.A. En primer lugar, BNYM alegó tres evidencias de reclamaciones principales: la Evidencia de reclamación Número 16759 alegando, en nombre de los tenedores de los Pagarés de anticipación de bonos relativos a rentas de fondo de impuestos dedicado, serie 15 (los "Pagarés de la AFI"), una "reclamación contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad, sobre la base del Acuerdo de fideicomiso (o en relación con este), el Acuerdo de tenedores

de pagarés, los Pagarés o las Rentas pignoradas". . . "; la Evidencia de reclamación Número 19814 alegando, en nombre de los tenedores de los Pagarés de la AFI, reclamaciones por el principal y los intereses impagados, además de las tarifas y los gastos del fiduciario; y la Evidencia de reclamación Número 103718 alegando, en nombre de los tenedores de los bonos de renta emitidos por la AFI, incluidos Bonos de Renta (Proyecto de la Autoridad Portuaria), serie 2011A, "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Fiduciario o los tenedores de los Bonos tengan o puedan tener contra el ELA, en virtud de la ley o equidad". . . ."

13.      Además, US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Kroll (que se define abajo), como Evidencia de reclamación Número 13386 en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando:

> reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de Bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las Obligaciones de Bonos pendientes, monto mínimo de $249,099,446.17, cuyo curso de conducta continúa. . . .

Cláusula Adicional de la Evidencia de reclamación Número 13386, ¶ 26.

14.      ***ACT***: la ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley Número 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de

transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i)* la Resolución Número 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii)* la Resolución Número 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT.

15.     En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (las "Reclamaciones Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad. . . ." *Véase* Adenda de la Evidencia de reclamación Número 121053, ¶ 15; Adenda de la Evidencia de reclamación Número 120982, ¶ 15; Adenda de la Evidencia de reclamación Número 115380, ¶ 15.[4]

16.     El 13 de agosto de 2022, la Junta de Supervisión radicó el *Quinto Plan de Ajuste Enmendado de la Autoridad de Carreteras y Transportación de Puerto Rico elaborado conforme al Título III* [Caso núm. 17-bk-3567, ECF núm. 1377] (el "Quinto Plan Enmendado de la ACT").

---

[4]  Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Kroll como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

El Tribunal consideró la confirmación del Quinto Plan Enmendado de la ACT, así como sus correspondientes objeciones, en una vista celebrada el 17 de agosto de 2022, tras la cual permitió la orden propuesta por la que confirmó el Quinto Plan Enmendado de la ACT en cuestión. El 6 de septiembre de 2022, en respuesta a la orden anterior del Tribunal en la que se solicitaban determinadas revisiones del Quinto Plan Enmendado de la ACT, la Junta de Supervisión radicó la *Versión Modificada del Quinto Plan de Ajuste Enmendado de la Autoridad de Carreteras y Transportación de Puerto Rico elaborado conforme al Título III* [ECF núm. 1404] (el "Plan de la ACT").

17.   ***PRIDCO***: PRIDCO fue creada por la Ley Número 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq.*, para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas privadas fabricantes. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A series 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamaciones principal contra el ELA, que fue registrada por Kroll como Evidencia de reclamaciones Número 13445 (la "Reclamación Principal de PRIDCO"). La Reclamación Principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA, y busca:

> recuperación de la totalidad de los montos adeudados en razón de todas las reclamaciones que el Fiduciario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales derivadas del presente documento, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en

virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento de deberes y obligaciones contractuales y fiduciarias, vulneración de pactos implícitos justos y de buena fe, u otras reclamaciones en ley o equidad.

Cláusula de la Reclamación Principal de PRIDCO, ¶¶ 12-13.

18.    *CFP*: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución Número 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución Número 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley Número 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a las agencias públicas, instrumentalidades, municipios y a otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). En nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Kroll como Evidencia de reclamación Número 13374.

19.    *AEE*: la AEE es una corporación del Gobierno creada en 1941. *Véase* la Ley Número 83-1941, en su versión enmendada (la "Ley sobre la Autoridad") § 3. La  AEE genera y distribuye esencialmente la totalidad de la energía eléctrica consumida en el ELA. [Caso Número 17 BK 4780, ECF Número 1 en 7]. La AEE es una de las empresas más importantes de suministro público en los Estados Unidos, suministra servicios a aproximadamente 1.5 millones de clientes y tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank National Association actúa como fiduciario en relación con determinados bonos

emitidos por la AEE conforme al Acuerdo de Fideicomiso, de fecha 1 de enero de 1974 (los "Bonos de la AEE"). En nombre de los tenedores de los Bonos de la AEE, U.S. Bank National Association radicó una evidencia de reclamación contra el ELA (la "Reclamación Principal de la AEE"), que fue registrada por Kroll como Evidencia de reclamación Número 50049, alegando una reclamación no liquidada en relación con el supuesto valor de derechos legales que el ELA otorgó a la AEE.

20.  ***Fideicomiso de los Niños***: el Fideicomiso de los Niños fue creado por la Ley del Fideicomiso de los Niños (Ley Número 173 de 1999), 24 L.P.R.A. § 3121, *et seq.*, en relación con el acuerdo de conciliación, suscrito en noviembre de 1998 entre los fabricantes participantes del sector tabacalero y Puerto Rico, 46 estados y otros 5 territorios estadounidenses, para conciliar determinados litigios relacionados con el tabaco, incluido el derecho del ELA a recibir los pagos de un fondo de aportaciones estratégicas anuales que tenían que efectuar los referidos fabricantes participantes conforme al Acuerdo Marco de Servicios ("MSA", por sus siglas en inglés). Art. 4 Act 173-1999, 24 L.P.R.A. § 3122. U.S. Bank actúa como fiduciario en relación con determinados Bonos del Fideicomiso de los Niños avalados por los Activos relativos al Acuerdo del Tabaco, Series 2002, 2005, 2008A y 2008B (los "Bonos del Fideicomiso de los Niños"). En nombre de los tenedores de los Bonos del Fideicomiso de los Niños, US Bank radicó una evidencia de reclamación principal, que fue registrada por Kroll, como Evidencia de reclamación Número 13354 (la "Reclamación Principal del Fideicomiso de los Niños", y junto con las Reclamaciones Principales ELA-ACT", la Reclamación Principal de la PRIDCO, la Reclamación Principal de la CFP, la Reclamación Principal de la AFI y la Reclamación Principal de la AEE, las "Reclamaciones Principales"), alegando:

> reclamaciones contingentes y no liquidadas contra el ELA por todos los derechos y titularidades que U.S. Bank como Fiduciario tenga o pueda tener, de la naturaleza o tipo que fueran, en relación con la Escritura de Emisión y la Ley, o de conformidad con otros

documentos o leyes aplicables, lo que incluye incumplimiento de pactos o desviación potencial de rentas empeñadas para el pago de los Bonos, en la actualidad o en el futuro.

Cláusula de la Reclamación Principal del Fideicomiso de los Niños, ¶ 9.

**D.   Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

21.     La AAA fue creada de conformidad con la Ley Número 40, de 1 de mayo de 1945. La AAA es una "corporación pública e instrumentalidad gubernamental autónoma", creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 142, 144.

22.     La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA emitir bonos, lo que incluye la Resolución Número 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución Número 1583"). En 2008, la AAA emitió unos bonos de renta, Serie A, por un monto del principal de $1,316,204,456 (los "Bonos Prioritarios Serie A 2008"), y unos bonos de renta, Serie B, por un monto del principal de $22,445,000 (los "Bonos Prioritarios Serie B 2008", y junto con los Bonos Prioritarios Serie A 2008, los "Bonos Prioritarios 2008"). En 2008, la AAA también emitió unos bonos de renta de refinanciamiento, Serie A, por un monto del principal de $159,055,000, y unos bonos de renta de refinanciamiento, Serie B, por un monto del principal de $125,700,000 (conjuntamente, los "Bonos de Refinanciamiento"). En 2012, la AAA emitió unos bonos de renta, Serie 2012 A, por un monto del principal de $1.800.450.000 (los "Bonos Prioritarios Serie A 2012"), y unos bonos de renta, Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B 2012", y junto con los

Bonos Prioritarios Serie A 2012, los "Bonos Prioritarios 2012", y junto con los Bonos Prioritarios 2008, los "Bonos de Gravamen Prioritario de la AAA").

23.     Los tenedores de los Bonos de Gravamen Prioritario de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de Gravamen Prioritario de la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja que la AAA no ha publicado ninguna notificación de incumplimiento en relación con los Bonos de Gravamen Prioritario de la AAA.[5]  Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritario de la AAA. En consecuencia, las declaraciones de oferta relativas a los Bonos de Gravamen Prioritario de la AAA indican que "no constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos Bonos".[6]

24.     Los tenedores de los Bonos de Refinanciamiento de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de Refinanciamiento de la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, el EMMA refleja que la AAA no ha publicado ninguna notificación de incumplimiento en relación

---

[5] *Véase, por ejemplo,*
https://emma.msrb.org/Security/Details/A6634BCA31A0801CF45190F8C461039A9.

[6] *Véase, por ejemplo*, Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie A (Gravamen Prioritario), 15 de febrero de 2012, disponible en https://emma.msrb.org/ER584464-ER454075-ER856856.pdf.

con los Bonos de Refinanciamiento de la AAA.[7]   Además, aunque las declaraciones de oferta relativas a los Bonos de Refinanciamiento de la AAA identifican al ELA como la entidad que ha garantizado el reembolso de dichos bonos, tal garantía ha sido eliminada en relación con el refinanciamiento de los Bonos de Refinanciamiento de la AAA y algunos de los Bonos de Gravamen Prioritario de la AAA, según se establece en la declaración de oferta de fecha 9 de diciembre de 2020, conforme a la cual la AAA emitió los bonos de renta de refinanciamiento de gravamen prioritario, serie 2020A, y los bonos de renta de refinanciamiento de gravamen prioritario sujetos a impuestos federales, serie 2020B (la "Transacción de Refinanciamiento de la AAA 2020").[8]

25.     El 20 de julio de 2021, la Junta de Supervisión aprobó una transacción de reembolso propuesta, conforme a la cual la AAA emitiría las series 2021ABC y 2022A de Bonos de Gravamen Prioritario para refinanciar unos Bonos Prioritarios de la AAA pendientes de 2012 por un valor de $1800 millones (la "Transacción de Refinanciamiento de la AAA 2021").[9]   La Transacción de Refinanciamiento de la AAA 2021 fue consumada conforme a los términos de la declaración de oferta, de fecha 17 de agosto de 2021, emitida en relación con dicha Transacción.[10]

---

[7] *Véase, por ejemplo*,
https://emma.msrb.org/Security/Details/A5686687B583CA99BFDDA7BAE76F581A9.

[8] *Véase* la Declaración de Oferta relativa a los Bonos de Renta de Refinanciamiento de la AAA, Serie 2020A (Gravamen Prioritario), y a los Bonos de Renta de Refinanciamiento Sujetos a Impuestos Federales, Serie 2020B (Gravamen Prioritario), de fecha 9 de diciembre de 2020, disponible en https://emma.msrb.org/P31403866-P31091563-P31500360.pdf.

[9] *Véase* Carta de la Junta de Supervisión y Administración Financiera dirigida a AAFAF en la que se aprueba la Transacción de Refinanciamiento de la AAA, de fecha 20 de julio de 2021, disponible en https://drive.google.com/file/d/1YvDZHPXCQ4vWOARyVGrY_XFb_-HhZZdc/view.

[10] *Véase* Declaración de Oferta relativa a los Bonos de Renta de Refinanciamiento de la AAA, Series 2021ABC y 2022A (Gravamen Prioritario), de fecha 17 de agosto de 2021, disponible en https://emma.msrb.org/P11521655-P11177130-P11593393.pdf.

**E.      Procedimientos conforme al Título VI del BGF y modificación calificada**

26.      El BGF es una corporación pública e instrumentalidad gubernamental del ELA, creada por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan Fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

27.      El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

28.      El 7 de noviembre de 2018, el Tribunal aprobó la Modificación Calificada conforme a la sección 601(m)(1)(D) de PROMESA. *Véase* ECF Número 270 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada dispone, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad de Recuperación de Deuda del BGF (GDB Debt Recovery Authority) a cambio de la cancelación (entre otras cosas) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o la compra, venta o transferencia de cualquier título valor o participación del BGF, y cualquier acción u omisión con respecto a un endeudamiento

o préstamo al BGF (incluidos cualesquiera pagarés emitidos o mantenidos por el BGF) o del BGF. *Declaración de Solicitación*, en 57-60, ECF Número 1-15 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso Número 18-1561 (D.P.R. 10 de ago. de 2018).

29.      El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada del BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación de la Modificación Calificada del BGF*, Gobernador de Puerto Rico (29 de nov. de 2018), *disponible en* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

## F.      Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones

30.      Hasta la fecha, se han radicado aproximadamente 179,034 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

31.      De las evidencias de reclamaciones radicadas, aproximadamente 118,239 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

32.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF Número 4230]; *Procedimientos relativos a Objeciones Globales* [ECF Número 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF Número 4381] (la "<u>Orden de Notificación</u>").

33.     En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*

17

*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF Número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)
exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas
de notificación adicionales y D) concede el remedio relacionado* [ECF Número 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

34.    Conforme a los Procedimientos originales relativos a objeciones globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la
fecha 27 vistas vinculadas con más de 500 objeciones globales radicadas por el ELA, la
Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la AEE, la
AEP y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto
Rico (el "SRE"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha,
y de la retirada de determinadas reclamaciones conforme al Plan, aproximadamente 102,630
reclamaciones que reivindicaban $43.6 billones en responsabilidad contra el ELA, COFINA, la
ACT, la AEE, el SRE y la AEP fueron rechazadas y retiradas del registro de reclamaciones en el
marco de los procedimientos radicados conforme al Título III. Además, aproximadamente 45,193
reclamaciones han sido transferidas al proceso de Reconciliación de Reclamaciones
Administrativas para su resolución utilizando procesos administrativos habituales del Deudor.

35.    Esta Quingentésima vigésima novena objeción global se radica de conformidad con
los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

**OBJECIONES A EVIDENCIAS DE RECLAMACIONES**

36.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en
virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §
502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye

una prueba *prima facie* de la validez de la reclamación, *véase* R. del Proc. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia prima facie con pruebas que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

37.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

38.     La Quingentésima vigésima novena objeción global busca que se rechacen en su totalidad las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"), cada una de las cuales pretender estar basada parcialmente en *a)* reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos, *b)* reclamaciones por bonos basadas en bonos emitidos por la ACT o la AFI que han sido liberadas en virtud de la Orden de Confirmación (definida abajo), *c)* participación patrimonial en bonos emitidos por la AAA, que no es Deudor de Título III, por unos montos por los que el ELA no ha garantizado el reembolso, *d)* participación patrimonial en bonos emitidos por el BGF, por unos montos por los que el ELA no ha garantizado el reembolso, y/o *e)* inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por el ELA.

El **Anexo A** del presente documento especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en parte.

### A. Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos

39.     Según se expone en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por la ACT, la AEE, PRIDCO, la CFP, la AFI y el Fideicomiso de los Niños (conjuntamente, las "Reclamaciones Parcialmente Duplicadas por Bonos"). *Véase, por ejemplo,* Reclamación Número 31483.

40.     Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende alegar, total o parcialmente, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por el la ACT, la AEE, PRIDCO, la CFP, la AFI y el Fideicomiso de los Niños. Por ejemplo, la Reclamación Principal de la AEE alega que "ha sido radicada en nombre de *todos los tenedores de cada una de las series de los bonos de renta eléctrica y los bonos de renta de refinanciamiento eléctrica*, emitidos y pendientes en virtud del Acuerdo de Fideicomiso". Reclamación Principal de la AEE, Cláusula adicional en 1 (el resaltado es nuestro). En consecuencia, cualquier reclamación radicada contra el ELA por un tenedor individual, que alegue una reclamación con respecto a los bonos de la AEE de dicho tenedor, estará duplicada en relación con la Reclamación Principal de la AEE. En consecuencia, si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA en detrimento de otras partes interesadas en los Casos de Título III de los Deudores. Los titulares de

las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

### B.  Ausencia de responsabilidad por las Reclamaciones de los Bonistas, liberadas por la Orden de Confirmación

41.     Conforme a lo expuesto en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los bonos emitidos por la ACT (las "<u>Reclamaciones de los Bonistas de la ACT</u>"), y determinadas Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los bonos emitidos por la AFI (las "<u>Reclamaciones de los Bonistas de la AFI</u>"). *Véase, por ejemplo,* Reclamación Número 91722.

42.     Tanto las Reclamaciones de los Bonistas de la ACT como las Reclamaciones de los Bonistas de la AFI alegan responsabilidades contra el ELA, vinculadas con varios Bonos de la ACT y/o la AFI emitidos por la ACT y/o la AFI. Las Reclamaciones alegadas contra el ELA basadas en cualquiera de los bonos emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT y la AFI, han sido liberadas en su totalidad en virtud del Plan, por lo que el ELA ya no es responsable por dichas reclamaciones. *Véase* Orden de Confirmación, ¶ 72 ("Las Reclamaciones alegadas contra los Deudores o los Deudores Reorganizados, emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT, la ADCC, la AFI o la MBA se concederán (en la medida en que se concedan) como Reclamación que surgió antes de la Fecha de Petición, y se clasificarán en las Clases 59 a 62 (salvo las Reclamaciones por Bonos Concedidas

21

del SRE, en la medida en que sean garantizadas) y, por medio de la presente, quedan liberadas, por lo que los Deudores y los Deudores Reorganizados ya no son responsables por dichas Reclamaciones").

43.     Si las Reclamaciones de los Bonistas de la ACT y las Reclamaciones de los Bonistas de la AFI no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación no justificada contra el ELA en detrimento de otras partes interesadas en los Casos de Título III de los Deudores.

**C.  Ausencia de responsabilidad por las Reclamaciones de los Bonistas del BGF**

44.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en supuesta participación patrimonial en bonos emitidos por el BGF (conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas del BGF</u>"). *Véase, por ejemplo,* Reclamación Número 53173.

45.     La totalidad de las Reclamaciones Parciales de los Bonistas del BGF pretenden basarse, en parte, en la participación patrimonial en los Bonos del BGF objeto de la Modificación Calificada, que dispuso la emisión de nuevos títulos de valores a cambio de la cancelación de los Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por lo que el ELA ya no es responsable por dichas reclamaciones. En consecuencia, cada una de las Reclamaciones Parciales de los Bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF.

El BGF es una corporación e instrumentalidad pública del ELA. En consecuencia, el ELA es un afiliado del BGF dentro del ámbito de la liberación conforme a la Modificación Calificada. Por tanto, las Reclamaciones Parciales de los Bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018.

46.     Puesto que las Reclamaciones Parciales de los Bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

**D.  Ausencia de responsabilidad por Reclamaciones por Bonos de la AAA**

47.     Conforme a lo expuesto en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los Bonos de Gravamen Prioritario de la AAA emitidos por la AAA (las "<u>Reclamaciones Parciales de Gravamen Prioritario de la AAA</u>") y los Bonos de Refinanciamiento de la AAA emitidos por AAA (las "<u>Reclamaciones Parciales por Bonos de Refinanciamiento de la AAA</u>").

48.     Las Reclamaciones Parciales de Gravamen Prioritario de la AAA y las Reclamaciones Parciales por Bonos de Refinanciamiento de la AAA alegan responsabilidades contra el ELA vinculadas con los bonos emitidos por la AAA, que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente de los Deudores. El ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritario de la AAA. Además, las Reclamaciones Parciales de Gravamen Prioritario de la AAA no proporcionan ningún fundamento que sea suficiente desde el punto de vista legal para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA.

49.      Es más, los Bonos de Refinanciamiento de la AAA, que en algún momento estaban garantizados por el ELA, vieron dicha garantía extinguirse en relación con la Transacción de Refinanciamiento de la AAA 2020.

50.      Puesto que las Reclamaciones Parciales de Gravamen Prioritario de la AAA y las Reclamaciones Parciales por Bonos de Refinanciamiento de la AAA son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

**E.  Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos**

51.      Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad basada parcialmente en inversión(es) en uno o más fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por el ELA (conjuntamente, las "<u>Reclamaciones Parciales de los Fondos Mutuos</u>"). *Véase, por ejemplo,* Reclamación Número 115873-1.

52.      Los reclamantes tienen la carga de la prueba para demostrar legitimación a efectos de radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor.  *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una

parte con "una relación con el Deudor [que] no es directa, sino más bien derivada "era" persona ajena en relación con el procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d en 115 n. 10)).

53.     "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamación contra el deudor o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las Reclamaciones Parciales de Fondos Mutuos fueron radicados en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones Parciales de Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones Parciales de Fondos Mutuos se derivan de las

reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue reteniendo la propiedad de los bonos controvertidos.

En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en los fondos mutuos que, a su vez, invirtieron presuntamente en los bonos de COFINA, por "carecer de interés individual en los títulos de valores de COFINA". *Tr. del 13 de marzo de 2019 de la vist. ante su señoría, Laura Taylor Swain* [ECF Número 5969], en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF Número 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283* [ECF Número 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones Parciales de Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

54. Además, algunas de las Reclamaciones Parciales de Fondos Mutuos son deficiente porque no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones.

55. En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Quingentésima vigésima novena objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por bonos duplicadas en las que no existe responsabilidad*, de fecha 16 de septiembre de 2022, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

56. De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Quingentésima vigésima novena objeción global a) a los acreedores individuales objeto de esta Quingentésima vigésima novena objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados Número 16* [ECF Número 20190-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.ra.kroll.com/puertorico. La notificación de esta Quingentésima vigésima novena objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Quingentésima vigésima novena objeción global y de la totalidad de los anexos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

57. Esta Quingentésima vigésima novena objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones Enmendadas Restantes o a cualesquiera otras reclamaciones sobre la base de los motivos que fueren. Los Deudores se reservan expresamente el

derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a impugnar cualquier reclamación sobre la base de los motivos que fueren; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

58.      No se ha radicado ninguna solicitud de remedio previa a la presente Quingentésima vigésima novena objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

28

Fecha:  16 de septiembre de 2022
San Juan (Puerto Rico)

Respetuosamente sometida,


*[Firma en la versión en inglés]*
Ricardo Burgos Vargas
USDC núm. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.:  (787) 751-6764
Fax:  (787) 763-8260


*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico como representante del
Estado Libre Asociado de Puerto
Rico.*