## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br>     And | PROMESA<br>Title III<br><br>Adv. Pro. No. 19-391 (LTS) |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE PUERTO TICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY,

As Section 926 co-trustee of

PUERTO RICO ELECTRIC POWER
AUTHORITY,

Plaintiffs,

v.

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

Defendant

| | |
|---|---|
| CORTLAND CAPITAL MARKET SERVICES LLC, *et al.,* | PROMESA Title III |
| Plaintiffs | Adv. Proc. No. 19-396 (LTS) |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, | |
| Defendants | |
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA, | PROMESA Title III |
| Plaintiff, | Adv. Pro. No. 19-405 (LTS) |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, | |
| Defendants | |
| In re: | PROMESA |

|  |  |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br>     as representative of <br><br> PUERTO RICO ELECTRIC POWER AUTHORITY, <br><br>     Movant. | Title III <br><br> No. 17 BK 4780-LTS |

**URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR ORDER (I) ESTABLISHING SCHEDULE TO CONTINUE NEGOTIATIONS DURING LITIGATION OF GATING ISSUES PURSUANT TO LITIGATION SCHEDULE AND (II) GRANTING RELATED RELIEF**

## <u>TABLE OF CONTENTS</u>

**Pages**

PRELIMINARY STATEMENT ................................................................................ 5

RELIEF REQUESTED.......................................................................................... 9

RELEVANT BACKGROUND ............................................................................... 9

I.     PREPA's Fiscal Crisis and the Filing of PREPA's Title III Petition ................................. 9

II.    Mediation ................................................................................................. 11

III.   Stayed Litigation ........................................................................................ 13

      A.    Initial Receiver Motion and Renewed Receiver Motion ....................................... 13

      B.    Lien Challenge and Claim Objection................................................................ 14

      C.    Current Expense Complaints ......................................................................... 16

THE PROPOSED LITIGATION .................................................**Error! Bookmark not defined.**

      A.    Litigating the Lien Challenge Complaint First Will Provide the Optimal
          Path for PREPA's Title III Exit and Negotiations With PREPA's
          Stakeholders ............................................................................................ 18

      B.    The Current Expense Complaints Should be Decided on the Papers .................. 23

      C.    Renewed Receiver Motion and UCC Objection .................................................. 24

COMPLIANCE WITH CASE MANAGEMENT PROCEDURES ............................. 24

NOTICE............................................................................................................. 25

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") in this Title III case pursuant to section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),[2] and in accordance with this Court's "Path Forward Order,"[3] respectfully submits this urgent motion (this "Urgent Motion") confirming its intent to continue negotiations and proposing the schedule attached to the Proposed Order (as defined below) as Schedule 1 (the "Proposed Litigation Schedule") for litigation of certain significant disputed issues in this Title III case.  In support of this Urgent Motion, the Oversight Board respectfully represents as follows:

## PRELIMINARY STATEMENT[4]

1.      The Oversight Board needs to restructure PREPA's debt through a Title III plan of adjustment to enable PREPA to reacquire access to the debt markets at reasonable rates. PROMESA requires that outcome, as does the practicality and undisputable need to provide the Commonwealth with a power utility capable of providing it reliable power to enable a growing economy and to protect its residents.  The Oversight Board is equally committed to completing the transformation of PREPA's operations, which requires a restructuring of its debts.  In pursuit of these goals, the Oversight Board favors, and has actively sought, and continues to seek a consensual resolution with PREPA's major stakeholders that will provide for a sustainable level

---

[2]   PROMESA is codified at 48 U.S.C §§ 2101–2241.

[3]   *See Order Granting the Urgent Motion of Financial Oversight and Management Board and the Notice and Request of the Mediation Team* [ECF No, 2874], extending through August 1, 2022, the deadlines initially established in the *Order Denying Urgent Motion of the Ad Hoc Group of PREPA Bondholders to Appoint a Mediator and Impose Deadlines for a PREPA Plan of Adjustment and Directing Additional Consultation and Filings* [ECF No. 2748] (the "Path Forward Order").

[4]   Capitalized terms not otherwise defined in this section have the meanings ascribed to them below.

of debt service, ensure PREPA's ability to comply with its fiscal plan and regulatory, environmental, and statutory requirements, and ensure the goals of PROMESA are met with respect to PREPA and the Commonwealth. Although the Court-appointed Mediation Team has worked tirelessly to bring the various parties together, it is not extending mediation past today, which triggers the requirement that the Oversight Board file either a plan, a plan term sheet, a proposed litigation schedule, or an explanation why the PREPA Title III case should not be dismissed.

2.    Primarily, the parties have sharp differences over what a reasonable settlement is. They also differ on some key legal issues. Because a plan proposal would lead to significant litigation of the parties' divergent views, and dismissal of the case would be chaotic for PREPA and jeopardize its ability to provide power to the Commonwealth, the only practical option is to propose a litigation schedule to narrow or resolve the issues between the parties.

3.    The Oversight Board hopes the Court will retain the mediation team's availability to help the parties accomplish a settlement as the process unfolds. The mediation team did a great job working to narrow the gap between the parties, but ultimately a settlement was not yet attainable and obstacles remain. In any event, the Oversight Board is open to negotiations at any time so a consensual deal or largely consensual deal can eliminate some or all of the litigation.

4.    In accordance with the Court's Path Forward Order, the Oversight Board's Proposed Litigation Schedule[5] should encompass (i) the bondholders' motion for stay relief to seek appointment of a receiver, (ii) the adversary proceeding challenging the bondholders' alleged security interests, (iii) objections to the allowability of the bondholders' claims in respect of

---

[5]    Specifically, the Court directed the Oversight Board to file "[a] proposed schedule for the litigation of significant disputed issues in PREPA's Title III case, including, without limitation, the motion for stay relief to seek appointment of a receiver, the UCC's claim objection (including, if appropriate, litigation of antecedent questions of standing), and the issues raised in Adv. Proc. Nos. 19-396 and 19-405."

Bankruptcy Code section 927, and (iv) the alleged seniority of the fuel line claims.  The Oversight Board believes that negotiations with all parties can and should take place in parallel with litigation, and it commits to pursuing such negotiations, either in the context of mediation or outside mediation.

5.      A Path to Settlement and Plan Confirmation.  As seen in the Title III cases for the Commonwealth, ERS, and HTA, clarification from the Court of the legal rights of major claimholders can be vital to driving settlement negotiations and formulating largely consensual plans of adjustment.  While the parties, with the guidance of the Mediation Team, have been able to make progress on certain issues, they have not reached agreements on economics due to differences over what is reasonable and differences on certain legal issues [6] The Oversight Board believes its proposed schedule tackles the gating issues whose resolutions can best facilitate confirmation.

6.      One gating issue is whether the Bonds are fully secured by PREPA's gross revenues and thus entitled to payment in full on their claims as well as postpetition interest, or are secured solely by (and have recourse and allowable claims solely to) the amount deposited in a "Sinking Fund" comprised of certain specified accounts of PREPA with the Bond Trustee.  Another gating issue is whether the Fuel Line Lenders' claims and SREAEE's (PREPA's pension plan) claims have priority over the Bond claims under the Trust Agreement and must also be paid in full with postpetition interest (as applicable).

7.      The issues as to seniority in the Current Expense Adversary Proceedings (as defined below) have already been fully briefed by the parties and are ready to be adjudicated on the submissions or after argument in accordance with the Court's preference.  Because the Trust

---

[6]  Due to the confidential nature of the Mediation the Oversight Board will not elaborate on this issue any further.

Agreement is substantially similar to trust agreements and resolutions already interpreted by this Court for bonds issued by HTA and PRIFA, and determining the scope and effect of relevant UCC-1 financing statements is a legal exercise, the Court's prior rulings with respect to those bonds may inform and expedite resolution of the Bondholders' secured claims against PREPA. Whether, to the extent not secured, the Bonds give rise to allowable claims is a function of the documents and the Bankruptcy Code (principally section 927). The Bondholders have consistently asserted the Bonds are limited recourse special revenue bonds, and the Oversight Board agrees with their limited recourse conclusion. *See, e.g.*, Initial Receiver Motion (as defined below) at 1 ("The purpose of [PREPA's promise to set rates at specific levels] is to compensate PREPA's bondholders for the limited recourse nature of the Bonds and the inability of PREPA to grant a mortgage or other lien on its physical assets.").

8.     The Proposed Schedule is Streamlined to Facilitate Prompt Resolution of Disputes Controlled by Documents. Through this Urgent Motion, the Oversight Board proposes to pursue necessary litigation as efficiently as possible. Within two weeks of entry of the Court's approval of a litigation schedule, the Oversight Board proposes to file an amended Lien Challenge Complaint, which will restart litigation in Adv. Pro. No. 19-391 that, upon its conclusion as early as January 2023, will provide the parties with answers regarding the validity, allowability, priority, extent, and enforceability of the Bondholders' secured and unsecured claims. The amended complaint will raise the issue of whether the Bondholders' non-recourse claim, payable solely from special revenues, yields any allowable unsecured deficiency claim pursuant to Bankruptcy Code section 927. This litigation will conclusively determine whether the Bondholders are oversecured and entitled to payment in full, including postpetition interest, or are limited to payment of the monies deposited in the "Sinking Fund," or something in between. To recommence litigation in

Adv. Pro. No. 391, the Oversight Board requests the Court to terminate the stay imposed in that case pursuant to the Lien Challenge Stay Order.

9.      Additionally, the Oversight Board requests the Court rule on the fully-briefed motions to dismiss in each of the Current Expense Adversary Proceedings filed by the Fuel Line Lenders and SREAEE.  Together, these proceedings will provide the parties with critical understandings of their respective asserted seniorities, so PREPA can move forward with the formation of a plan of adjustment and the conclusion of this case.

## RELIEF REQUESTED

10.      Through this Urgent Motion, the Oversight Board respectfully requests the Court issue an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the Proposed Litigation Schedule attached to the Proposed Order as **Schedule 1** for the continuation of certain unresolved adversary proceedings and disputed matters.

## RELEVANT BACKGROUND

## I.      PREPA's Fiscal Crisis and the Filing of PREPA's Title III Petition

11.      PREPA is the main electricity provider for Puerto Rico and the largest public electricity provider in the country, serving approximately 1.5 million customers.[7]  PREPA's services are critical to the well-being of the Island's residents, its commercial sector, and the stability of its economy.  PREPA Fiscal Plan at 16-17.

12.      PREPA's primary source of revenue to pay for all its expenses, including debt service, comes from the rates it charges its customers—measured in cents per kilowatt hour (c/kWh)—for electricity consumption.  Subject to potential confirmation rulings on preemption

---

[7]   Of PREPA's customers, 91% are residential, 8% are commercial, and less than 1% are industrial.  However, commercial and industrial customers make up 57% of power consumption, and thus reliability and affordability of power provided by PREPA are key components of the Island's economic health and are critical to growth.

and reverse preemption, PREPA is limited in its ability to raise rates both by the requirement of approval by the Puerto Rico Energy Bureau ("PREB") and relevant provisions of its certified Fiscal Plan, although PREB is required by Commonwealth statutes to approve rate hikes necessary to pay debt and this Court can enforce those statutes, which enforcement will be integral to any restructuring.  In addition, PREPA's capacity to raise rates is limited by economic reality; the quality, reliability, and cost of power is a key driver of economic growth, new investment, and retention of demand for power provided by PREPA.

13.     The economic reality PREPA faces includes the following.  As energy prices have climbed, a growing number of PREPA's customers have left the Island or transitioned to alternative energy sources (including rooftop solar equipment).  With a lower revenue base, remaining customers pay increasingly higher rates to cover PREPA's fixed costs, which in turn encourages higher-income residents and larger businesses to transition to alternative energy, such as solar, cutting further into PREPA's consumer base.  Higher rates, and availability of increasingly affordable solar power, will lead to further decreases in demand for PREPA-produced power, which will lead to further load defection from the grid, threatening PREPA's future viability.  In LUMA's first 9 months alone, *prior to* the recent rate increases, approximately 18,000 customers installed solar panels and are no longer dependent on PREPA for their daily electricity usage.[8]  Moreover, customers who switch to solar equipment sell excess power they produce back to PREPA at the full retail rate, and PREPA is required to buy it.

14.     Prior to the Petition Date, PREPA issued approximately $8.3 billion in bonds (the "Bonds") under a Trust Agreement dated January 1, 1974, as amended and supplemented (the

---

[8]  *LUMA Details Historic Renewable Energy Advances in Report to PREB*, April 1, 2022.  *Available at* www.lumapr.com/news/luma-details-historic-renewable-energy-advances-in-report-to-preb/?lang=en.

"Trust Agreement").  The Monolines[9] and the Ad Hoc Group of PREPA Bondholders[10] (the "Ad Hoc Group" and together with the Monolines, the "Bondholders") assert the Bonds are secured by PREPA's gross revenues, as well as a "collateral package" consisting of PREPA's covenants to, among other things, raise rates sufficiently to pay debt service on the Bonds, and a statutory remedy to install a receiver.  The Oversight Board and other parties in this case have previously disputed this assertion.

15.     On July 2, 2017 (the "Petition Date"), as a result of PREPA's inability to service its bond debt, among many other issues, the Oversight Board filed a petition for PREPA under PROMESA Title III, thereby commencing PREPA's Title III Case.  *See* Case No. 17-BK-4780-LTS ("PREPA's Title III Case").[11]

## II.     Mediation

16.     Pursuant to the Court's Path Forward Order,[12] the Oversight Board conferred with the major constituencies in this Title III Case—including the Ad Hoc Group, Monolines, PREPA's main union La Union de Trabajadores de La Industria Electrica y Riego ("UTIER"), and the Official Committee of Unsecured Creditors (the "UCC")—to submit a proposal for a mediation process to resolve key plan-related issues and construct a viable basis for a plan of adjustment.  On April 8, 2022, the Court entered an order [ECF No. 2772] (the "Appointment Order") appointing

---

[9]   Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), National Public Finance Guarantee Corp. ("National") and Syncora Guarantee Corp. ("Syncora") are collectively referred to herein as the "Monolines".

[10]  As of April 20, 2022, the Ad Hoc Group comprised (i) BlackRock Financial Management, Inc., (ii) Franklin Advisers, Inc., (iii) GoldenTree Asset Management, L.P., (iv) Invesco Advisers, Inc., (v) Nuveen Asset Management, LLC, (vi) Taconic Capital Advisors, L.P., and (vii) Whitebox Advisors, LLC.  *See* ECF No. 2782.

[11]  Unless otherwise stated, references to the docket herein shall refer to the docket in PREPA's Title III Case.

[12]  Among other things, the Path Forward Order set an initial deadline of May 2, 2022 for the Oversight Board to set forth a path forward for progressing PREPA's Title III Case, including by filing (i) a proposed plan of adjustment, or term sheet therefor, or (ii) a proposed Litigation Schedule of significant disputed issues in PREPA's Title III Case.  The path forward deadline was extended several times and is currently September 9, 2022 (the "Path Forward Deadline").  *See* ECF Nos. 2785, 2827, 2874, 2911 and 2923.

a team of judicial mediators led by the Honorable Shelley C. Chapman and including the Honorable Robert D. Drain and the Honorable Brendan L. Shannon (collectively, the "Mediation Team"). The Appointment Order designated the Oversight Board, AAFAF, the Ad Hoc Group, the Monolines, UTIER, PREPA's retirement system ("SREAEE"), the UCC, and the Fuel Line Lenders (as defined below) as mediation parties (collectively, the "Mediation Parties"). Concurrently with the Appointment Order, the Court entered an order establishing certain terms and conditions to govern mediation, including an initial mediation termination date of June 1, 2022. ECF No. 2773 (the "Terms and Conditions Order").

17. The Mediation Parties immediately commenced substantive discussions, meeting individually with the Mediation Team within the first week of the commencement of mediation. Over the course of mediation, the Mediation Team and Mediation Parties have engaged in numerous mediation sessions to determine whether a consensual plan of adjustment was currently attainable. As the mediation proceeded, the Mediation Team determined to extend the termination date for mediation through September 16, 2022, in accordance with the Terms and Conditions Order. ECF Nos. 2823, 2874, 2911, 2923, and 2949.

18. Unfortunately, substantial disagreements between the Mediation Parties regarding reasonableness and differences on some gating legal issues described above prevented the Mediation Parties from achieving a deal. Because the Bondholders assert the largest claims by a wide margin, their entitlements to payment have a large impact on all other creditors' entitlements.[13] Other Mediation Parties, such as the UCC, have filed pleadings contending the

---

[13] While the central focus of mediation has been placed on the Bondholders' claims, the Oversight Board kept other constituencies' representatives up to date with the process. The treatment of the Bonds heavily impacts the treatment of other constituencies. The Oversight Board submitted restructuring proposals governing the terms of treatment for the claims held by each of PREPA's unions and its retirement system. The Oversight Board eagerly awaits a response from the unions and from SREAEE, and is willing to continue to engage such parties on a potential consensual resolution of their claims, whether in or out of mediation.

Bondholders' claims are not secured and are nonrecourse thereby providing them no allowable unsecured claims.  Compromising these issues has been difficult.  The Oversight Board has learned the Mediation Team will not extend mediation past September 16, 2022, which would have also extended the Path Forward Deadline.  As aforesaid, however, the Oversight Board believes constructive negotiations with parties can occur concurrently with litigation, and will seek to continue negotiations with any and all willing parties and welcomes the Mediation Team's guidance.

## III.   Stayed Litigation

### A.   Initial Receiver Motion and Renewed Receiver Motion

19.   Shortly after the commencement of PREPA's Title III Case, on July 18, 2017, the Ad Hoc Group[14] and certain Monolines filed a motion seeking to lift the stay to pursue the appointment of a receiver at PREPA with the power to request rate hikes sufficient to cover operating expenses and debt service on the Bonds.  ECF No. 74 ("Initial Receiver Motion"). Movants alleged their collateral consisted of a security interest in PREPA's revenues as well as the Trust Agreement's rate covenant and right to appoint a receiver.  On September 14, 2017, the Court denied the Initial Receiver Motion because, among other things, PROMESA § 305 barred the relief requested.  *See* ECF No. 299 ("District Court Receiver Opinion").

20.   On August 8, 2018, the First Circuit ruled PROMESA § 305 did not prohibit the Court from modifying the automatic stay and concluded that due to a new set of facts arising from the aftermath of two crushing hurricanes, the bondholders could file a new request for stay termination.  *In re Fin. Oversight & Mgmt. Bd.*, 899 F.3d 13 (1st Cir. 2018) (the "First Circuit

---

[14]  Notably, of the current members of the Ad Hoc Group, only Franklin Advisers, Inc. was also a holder of Bonds on July 18, 2017.

Receiver Opinion").  The First Circuit, however, also held bondholders would only be entitled to adequate protection to the extent—if any—they have collateral that is not adequately protected. To that end, the First Circuit specified litigation to enforce any purported rights to such collateral is premature without first determining, among other things, "whether the bondholders face a threat of uncompensated diminution in such value, whether the bondholders are seeking the protection of existing collateral or, instead, the creation of new collateral, and what, if any, adequate protection PREPA can offer short of a receiver being appointed to manage it if protection is warranted." *Id*. at 23.

21.    On October 3, 2018, the Monolines filed a renewed receiver motion.  ECF No. 975 ("Renewed Receiver Motion").  Pursuant to several orders of the Title III Court, the briefing schedule for the Renewed Receiver Motion was extended by several months.  *See* ECF Nos. 1176, 1183, and 1204.  On May 10, 2019, the Oversight Board and AAFAF filed a motion to dismiss the Renewed Receiver Motion [ECF No. 1233].

22.    On September 12, 2019, following the joinder of National and Syncora to the 2019 RSA, PREPA, AAFAF, and the Monolines jointly filed an urgent motion to stay all briefing and other applicable deadlines on the Motion to Dismiss until after the Title III Court's ruling on the 9019 Motion.  ECF No. 1637.  The next day, on September 13, 2019, the Title III Court entered an order granting the requested stay.  *See* ECF No. 1638.

B.    **Lien Challenge and Claim Objection**

23.    On July 1, 2019, on the eve of the expiration of the statute of limitations for avoidance actions under section 546(a) of the Bankruptcy Code, PREPA, by the Oversight Board as its Title III representative, and AAFAF as co-plaintiff, filed a complaint [ECF No. 1421; Adv. Pro. No. 19-391, ECF No. 1] (the "Lien Challenge Complaint") against U.S. Bank National

Association (the "Trustee") asking the Title III Court to (a)(i) declare the Trustee's security interest in PREPA's property is limited to funds deposited to the credit of the "Sinking Fund" and "Subordinate Funds" (each, as defined in the Lien Challenge Complaint); (ii) declare the Trustee has not perfected any security interest in any of PREPA's property other than cash deposited to the credit of the Sinking Fund; (iii) avoid any security interest granted to the Trustee in any of PREPA's property other than cash deposited to the credit of the Sinking Fund, preserving all avoided liens for the benefit of Debtor; (b)(i) declare contractual covenants and remedies set forth in the Trust Agreement are obligations of PREPA, not its property, and do not and cannot constitute collateral in which PREPA has granted a security interest to secure its bond debt; (ii) declare the Trustee has not perfected any security interest in any such covenants and remedies and that PREPA's interest in such is entitled to priority over any interest of the Trustee under Puerto Rico law; (iii) avoid any security interest in such covenants and remedies, preserving all avoided liens for the benefit of PREPA; and (c) disallow all claims asserting security interests either not granted under the Trust Agreement or that are unperfected.

24.    Concurrently with the filing of the Lien Challenge Complaint, the Oversight Board and AAFAF filed a joint motion [Adv. Pro. No. 19-391, ECF No. 2], granted by the Court [Adv. Pro. No. 19-391, ECF No. 10] (the "Lien Challenge Stay Order"), to stay the administration of the Lien Challenge Complaint until the earlier of (i) 60 days after the Court denies the 9019 Motion, (ii) consummation of a plan of adjustment for PREPA, (iii) 60 days after the filing by PREPA and AAFAF of a notice to resume litigation, or (iv) further order of the Court.

25.    On October 30, 2019, the UCC filed an objection [ECF No. 1691] (the "UCC Claim Objection") to Proof of Claim Number 18449 (the "Proof of Claim"), which was filed by U.S. Bank NA, in its capacity as trustee under the Trust Agreement (the "Bond Trustee"). Similar to

the Lien Challenge Complaint, the UCC asserted in the UCC Claim Objection that, under the terms of the Trust Agreement, the Bonds are payable solely from amounts actually deposited in the "Sinking Fund" and "Subordinate Funds," and the Bond Trustee and holders of PREPA Bonds are non-recourse (other than the limited recourse to the Sinking Fund), and therefore have no right to recovery against PREPA or its assets beyond such amounts on deposit.  The UCC therefore requested the Title III Court to disallow the Proof of Claim to the extent it exceeds the amounts on deposit in the "Sinking Fund" and "Subordinate Funds" held by the Bond Trustee.

26.     On January 3, 2020, the Title III Court issued an order terminating the Claim Objection without prejudice to renewal after resolution of the 9019 Motion [ECF No. 1855].

27.     The Oversight Board has made clear the validity of the Bondholders' security interest in light of the language in the Trust Agreement and any unsecured deficiency claims in light of Bankruptcy Code section 927 (overriding any recourse claim that would otherwise arise under section 1111(b)) are issues the Oversight Board must factor into any settlement with Bondholders.  *See Reply in Support of Motion to Extend June 1, 2022 Deadline,* Case No. 17-BK-4780-LTS ECF No. 2826 at 3.

28.     The Oversight Board also contended the UCC lacked standing to prosecute a claim objection unless the Oversight Board unjustifiably declines to do so.

**C.     Current Expense Complaints**

29.     On July 9, 2019, the administrative agent and certain lenders (the "Fuel Line Lenders") under credit agreements pursuant to which PREPA was a borrower filed a complaint [Adv. Pro. No. 19-396, ECF No. 1] (as amended, the "FLL Complaint") and commenced an adversary proceeding against PREPA, the Oversight Board, AAFAF, and US Bank National Association.  The Complaint alleges amounts owed to the Fuel Line Lenders pursuant to the credit

agreements constituted "Current Expenses" under the Trust Agreement and, accordingly, are entitled to payment in full in advance of any recovery to PREPA's bondholders.  The Fuel Line Lenders also opposed the 9019 Motion for failing to preserve their alleged priority over the Bondholders.  PREPA, the Oversight Board, and AAFAF filed a motion to dismiss the Complaint (and its amended counterpart) on September 9, 2019 and November 11, 2019 [Adv. Pro. No. 19-00396, ECF Nos. 24 and 51], to which the Fuel Line Lenders responded on December 6, 2019 [Adv. Pro. No. 19-00396, ECF No. 63].  PREPA, AAFAF, and the Oversight filed their reply brief on February 2, 2020 [Adv. Pro. No. 19-00396, ECF No. 80].

30.     On August 6, 2019, SREAEE filed a complaint against PREPA and other parties [Adv. Pro. No. 19-405, ECF No. 1] (as amended, the "SREAEE Complaint," and together with the FLL Complaint, the "Current Expense Complaints").[15]  SREAEE requested the Title III Court determine that all amounts owed to SREAEE are "Current Expenses" under the Trust Agreement because contributions made to pensions and the retirement system allegedly qualify as "Current Expenses" under the 1974 Trust Agreement.  SREAEE asserts these "Current Expenses" must be paid before any further payments are made to the Bond Trustee or PREPA's bondholders.

31.     On November 13, 2019, PREPA, the Oversight Board, and AAFAF jointly filed a motion to dismiss the amended complaint [Adv. Pro. No. 19-405, ECF No. 35], which SREAEE opposed [Adv. Pro. No. 19-405, ECF No. 42].  PREPA, AAFAF, and the Oversight filed their reply brief on February 3, 2020 [Adv. Pro. No. 19-405, ECF Nos. 53 and 54].

32.     The motions to dismiss the FLL Complaint and the SREAEE Complaint were scheduled for a hearing on March 4, 2020.  In advance of the scheduled hearing date, PREPA,

---

[15] Adv. Pro. No. 19-396 and Adv. Pro. No. 19-405 are collectively referred to herein as the "Current Expense Adversary Proceedings".

AAFAF, and the Oversight Board sought an adjournment, which was granted by the Title III Court on February 19, 2020 [Adv. Pro. No. 19-00396, ECF No. 89].  Thereafter, in response to the COVID-19 pandemic, an indefinite adjournment was sought for all matters related to the 9019 Motion, including the FLL Complaint and SREAEE Complaint, and was granted by the Title III Court.  [Adv. Pro. No. 19-00396, ECF No. 92]

## THE PROPOSED LITIGATION

33.     The Oversight Board remains committed to undertaking to achieve a consensual deal with PREPA's creditors.  Although the Court-ordered mediation process has been constructive in bringing the parties to the table, sharpening the key issues, and forming some consensus around certain structural issues, the parties' respective positions on what is reasonable in the context of PREPA's rates and needs, and on their legal rights have resulted in a currently unbridgeable gap on the economic terms of a restructuring.  In light of this impasse and the termination of mediation, the Oversight Board believes the most expedient path to a confirmable plan of adjustment is to resume litigation on the most significant disputed issues to identify the parties' respective rights.  Indeed, if the issues are not litigated now, they would have to be litigated in the context of a confirmation hearing because they have not been settled.  The Oversight Board proposes litigation should proceed as follows:

**A.    Litigating the Lien Challenge Complaint First Will Provide the Optimal Path for PREPA's Title III Exit and Negotiations With PREPA's Stakeholders**

34.     The Lien Challenge Complaint would conclusively resolve key issues regarding, among others, (i) whether Bondholders have a security interest in PREPA's Revenues other than its monies deposited in the Sinking Fund; (ii) whether Bondholders' collateral includes a "rate covenant" or such covenants are liabilities of PREPA that cannot be pledged; (iii) whether Bondholders' asserted security interest is perfected; and (iv) whether Bondholders' have any

allowable unsecured claim and recourse and allowable claims to PREPA's assets beyond the Sinking Fund.[16]  The Oversight Board plans to amend the Lien Challenge Complaint to include a count under Bankruptcy Code section 927 to determine the allowability of any unsecured deficiency claim under the Bonds.

35.     The Oversight Board believes rulings from the Court on these gating issues, or possibly the imminence of rulings, will help push the parties to a resolution.  The rulings or resolution will establish the rights of the Bondholders, who assert approximately $8.5 billion in fully-secured claims, plus post-petition interest of approximately $2.5 billion to date.  Resolving the allowability of the Bondholders' secured and unsecured claims is essential to informing the parties and the Court as to virtually every potential remaining dispute in the case, including whether the Bondholders are entitled to dismissal of PREPA's Title III case, whether they are entitled to stay relief, what PREPA should pay other creditors (including those who assert a "Current Expense" priority), and the validity of potential confirmation objections.  Therefore, the Oversight Board proposes the Lien Challenge Complaint should be in the first group of disputes to be resolved.  The Oversight Board believes this litigation can be completed quickly and efficiently in accordance with the Proposed Litigation Schedule because the Oversight Board's objections to the claims are all based on documents.[17]

36.     The legal arguments regarding Bondholders' rights have been known to the parties for several years.  The Oversight Board suggests moving expeditiously to resolve these predicate issues by dispositive motion practice.  The Proposed Order provides for the Oversight Board to

---

[16]  These are all the legal arguments asserted in the UCC Claim Objection.  Because the Oversight Board intends to pursue these matters through the Lien Challenge Complaint, there is no need for the Court to decide whether to allow the UCC Claim Objection to proceed, or whether the UCC has standing to bring it while the debtor is bringing it.

[17]  The Oversight Board remains open to all avenues to accomplish PREPA's emergence from Title III, and will negotiate with its creditors to develop such a path, whether in or out of mediation, while litigation proceeds.

file an amended Lien Challenge Complaint within two weeks of the date hereof, and immediately

proceed with briefing pursuant to the following timetable:[18]

| Event | Proposed Date |
|---|---|
| Oversight Board to file amended adversary complaint | **9/30/2022** |
| Deadline for Parties to file Motions for Summary Judgment covering secured and unsecured claim allowability | **10/24/2022** |
| Deadline for Parties to file:<br>• Responses to Motions for Summary Judgment; and<br>• Applications for Rule 56(d) Discovery, if necessary | **11/11/2022** |
| Deadline for Parties to file:<br>• Replies in Support of Motions for Summary Judgment; and<br>• Responses to Applications for Rule 56(d) Discovery, if any | **11/29/2022** |
| Deadline for Parties to file Replies in Support of Applications for Rule 56(d) Discovery, if any | **12/9/2022** |
| If Court denies Rule 56(d) Applications, or none are filed: | |
| Hearing on Motions for Summary Judgment | **1/11/2023, or another date convenient for the court** |
| If Court grants one or more Rule 56(d) Applications: | |
| Defendant(s) to serve initial document requests on Plaintiffs | **1/6/2023** |
| Plaintiffs' document production is due | **1/20/2023** |
| Plaintiffs' Responses and Objections to Defendant(s)' initial document requests | **1/20/2023** |
| Parties shall file a joint status report raising any then-expected discovery disputes | **1/27/2023** |
| Defendant(s) to serve 30(b)(6) notices & notices of deposition for fact witnesses upon the Board/Government | **1/27/2023** |

---

[18] The Oversight Board believes the issues asserted in the Lien Challenge Complaint and any motions for summary judgment with respect thereto involve only questions of law and interpretation of a contract already in the record. However, out of an abundance of caution and knowing that the Bondholders disagree with this position, the Oversight Board has included a Proposed Litigation Schedule that also incorporates discovery deadlines if the Court grants it.

| Event | Proposed Date |
|---|---|
| Plaintiffs' Responses and Objections to Defendant(s)' 30(b)(6) notices | **2/3/2023** |
| Deposition and fact discovery deadline | **2/10/2023** |
| Defendants' deadline to supplement motions for summary judgment, if any, and/or supplement oppositions to motions for summary judgment | **2/24/2023** |
| Deadline to file oppositions to supplemental motions for summary judgment, if any, and/or replies to supplemental oppositions to motions for summary judgment | **3/10/2023** |
| Deadline to file replies in support of supplemental motions for summary judgment, if any | **3/17/2023** |
| Hearing on motions for summary judgment and supplemental motions | **4/5/2023, or another date convenient for the court** |

37.     The Bondholders have asserted an intent to seek dismissal of this Title III Case before litigation of the Lien Challenge Complaint.[19]  Coincidentally, that would avoid rulings on their claims.  In any event, we submit the Court has already determined the chronology.  The Path Forward Order grants the Oversight Board the option of proposing a litigation schedule or showing cause why the case should not be dismissed.  The Oversight Board is exercising the option to narrow the issues through litigation rather than show cause why the case should not be dismissed, although the reasons are obvious and mentioned in paragraph 2 above.

38.     The Bondholders have also argued litigation "over their liens is a sideshow and a waste of time and resources unless and until the Oversight Board can show that PREPA is unable to pay all of the claims against it in full."  Bondholder Response, ¶ 6.  That might be correct if the

---

[19] *See The PREPA Bondholders' Response to Limited Omnibus Objection of Official Committee of Unsecured Creditors to (A) Urgent Motion of Financial Oversight and Management Board for Order Extending Mediation Termination Date and Related Path Forward and (B) Mediation Team's Notice and Request for Approval of Second Extension of Termination Date of Mediation* [ECF No. 2870] (the "Bondholder Response") at ¶ 3.

only issue were whether the Bondholders' claims are secured or unsecured.  But, that is incorrect when the gating issue is whether the Bondholders have allowable claims in the first place beyond claims to the Sinking Fund.  Even if PREPA could afford to pay all claims asserted against it—a contention the Oversight Board vigorously disputes, as would everyone who ever relied on PREPA for electricity—it is only required to pay *allowed* claims, not all asserted claims.  Regardless of any argument over what is affordable, the validity of the Bondholders' special revenue, nonrecourse claims remains a threshold issue.

39.    The Lien Challenge Complaint concerns both the scope *and* allowability of the Bondholders' claims.  The parties need to know the extent of PREPA's legacy debts—a legal question—before spending significant resources, retaining experts, and holding an evidentiary hearing to analyze the maximum amount that can be extracted from PREPA and its ratepayers to pay it after assuring PREPA can be sustained as a going concern supplying power to all persons and entities who need it in Puerto Rico.  The parties differ as to whether the maximum amount PREPA can pay under a plan is a metric determinative of PREPA's restructuring.[20]  As a practical matter, PREPA's dire need for modern equipment and systems could exhaust all cash flow.  Thus, even if affordability is material, it is really an issue of what amount of repair and conversion PREPA should defer which turns on human, economic, and political concerns.

40.    Some key issues are undisputed.  The Bondholders have repeatedly agreed "PREPA's Bonds are limited recourse bonds" and that "[u]nlike financings for privately-owned utilities, holders of revenue bonds in public utility financings generally have no recourse to general funds of the sponsoring state, territory or municipality, have no recourse to or mortgage or other

---

[20] "The goal of these PROMESA cases ... is not merely to maximize creditors' recoveries"; instead, they "require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30 (D.P.R.), aff'd, 954 F.3d 1 (1st Cir. 2020).

lien on physical assets, and are secured solely by a pledge of revenues of the utility after payment of current operating expenses."  Initial Receiver Motion at 4, Renewed Receiver Motion ¶ 13.[21]

41.     A Court determination on the scope of collateral and non-recourse nature of the Bonds can be determined as a matter of law on the governing documents in the context of the Lien Challenge Complaint.  Issues relating to PREPA's proposed treatment of the bond claims, including its ability to pay, should be litigated, if at all material and relevant, in the context of confirmation.  Litigation of how much PREPA can afford to pay creditors before the rights of the largest asserted claims are established, let alone before any plan is even proposed, would be, at best, premature and not ripe for adjudication.  *See, e.g.*, Case No. 17-3283, ECF No. 17379 at 17 (declining to decide arguments asserted, including that more money is available for distribution to creditors, until the plan confirmation hearing as such arguments "did not frame fundamental and patent unconfirmability of a plan").

### B.     The Current Expense Complaints Should be Decided on the Papers

42.     The Current Expense Complaints have been fully briefed and were scheduled for a hearing shortly prior to the onset of the COVID-19 pandemic, and have been stayed for over two years since.  Given the comprehensive briefing, the Oversight Board does not believe a hearing is necessary on these issues.  The Oversight Board believes the Court's ruling on these motions will be dispositive on the question of the asserted priorities.  The Oversight Board therefore requests the Court remove the stay of the Current Expense Adversary Proceedings and rule on the respective motions to dismiss.  Should any further briefing or hearing be necessary—either following such

---

[21] *See also* Initial Receiver Motion at 1 ("The purpose of [the rate covenant] is to compensate PREPA's bondholders for the limited recourse nature of the Bonds and the inability of PREPA to grant a mortgage or other lien on its physical assets"); Renewed Receiver Motion, ¶ 14 ("PREPA Bonds are limited recourse bonds that are secured solely by the revenues pledged to secure the Bonds"); Renewed Receiver Motion, ¶ 97 ("No remedies at law are available to protect PREPA bondholders' property interests, as the PREPA bondholders do not have recourse to or mortgage or other lien on physical assets of PREPA.").

rulings, or in advance of such rulings should the Court deem it necessary—then the scheduling of any further litigation on these issues can be ordered by the Court or proposed at such time.

### C.   Renewed Receiver Motion and UCC Objection

43.   Finally, the Oversight Board submits the Renewed Receiver Motion, and any amended stay relief motion to pursue Trust Agreement remedies, should remain stayed pending the resolution of the Lien Challenge Complaint because resolution of the Lien Challenge Complaint provides the Bondholders the initial determinations they would need to establish a right to a receiver (i.e., whether they have valid, allowable secured claims and to what collateral). The Renewed Receiver Motion turns on what liens need protection. Additionally, since the filing of the Renewed Receiver Motion almost four years ago, the factual underpinnings of that request have significantly changed. They were concerned about PREPA's management. But now, full control of PREPA's transmission and distribution system has been transferred to LUMA Energy, putting an independent, industry-leading operator in place as manager. Likewise, the process is well underway to similarly privatize the management of PREPA's generation system.

44.   The UCC has repeatedly attempted to object to the Bondholders' secured and unsecured claims. The issues it has raised are included in the Oversight Board's pleadings. Rather than fight about standing, the Oversight Board and the UCC are endeavoring to agree on terms for the UCC's intervention and should be able to do so.

### COMPLIANCE WITH CASE MANAGEMENT PROCEDURES

45.   Pursuant to Paragraph I.H of the *Sixteenth Amended Notice, Case Management and Administrative Procedures* [ECF No. 20190-1 in Case No. 17-3283] (the "Case Management Procedures"), the Debtor hereby certifies that it has carefully examined the matter and concluded that there is a true need for an urgent motion; it has not created the urgency through any lack of

due diligence.  Because the Oversight Board did not know it would have to file this motion until late yesterday afternoon because mediation was continuing, it could not negotiate the Proposed Litigation Schedule.  As explained above, the Oversight Board is aware the Bondholders desire to litigate a motion to dismiss the case first, and therefore, the prospects of any agreement on a litigation schedule are extremely unlikely.

46.     <u>Request for Continued Availability of Mediation Team</u>.   As aforesaid, the Oversight Board hopes the Court can arrange for the Mediation Team to be available as all parties recognize the team wants a consensual settlement and there will certainly be more opportunities to attain it.

<u>**NOTICE**</u>

47.     Contemporaneously with filing this Motion, the Oversight Board is providing notice of this Motion in accordance with the Case Management Procedures to the following parties:  (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for PREPA's bonds; (c) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as July 20, 2012; (d) the statutory unsecured claimholders' committee appointed in this Title III Case; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to AAFAF; (g) the Puerto Rico Department of Justice; (h) all parties filing a notice of appearance in this Title III case; and (i) all other Mediation Parties.  A copy of the Motion is also available on the Debtor's case website at https://cases.ra.kroll.com/puertorico/.

48.     The Oversight Board submits that, in light of the nature of the relief requested herein, no other or further notice need be given.

WHEREFORE the Oversight Board requests the Court enter the Proposed Order and

grant it such other relief as it deems just and proper.

Dated: September 16, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
     ppossinger@proskauer.com
     ebarak@proskauer.com
     ddesatnik@proskauer.com

*Attorneys for the Financial*
*Oversight and Management Board*
*as representative for PREPA*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Co-Attorney for the Financial Oversight and*
*Management Board as representative for*
*PREPA*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/   Hermann D. Bauer*
Hermann D. Bauer

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br>     And | PROMESA<br>Title III<br><br>Adv. Pro. No. 19-391 (LTS) |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE PUERTO TICO FISCAL AGENCY AND
FINANCIAL ADVISORY AUTHORITY,

    As Section 926 co-trustee of

PUERTO RICO ELECTRIC POWER
AUTHORITY,

    Plaintiffs,

    v.

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

    Defendant

| | |
|---|---|
| CORTLAND CAPITAL MARKET SERVICES LLC, *et al.,* | PROMESA Title III |
|     Plaintiffs | Adv. Proc. No. 19-396 (LTS) |
|     v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, | |
|     Defendants | |
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGIA ELECTRICA, | PROMESA Title III |
| | Adv. Pro. No. 19-405 (LTS) |
|     Plaintiff, | |
|     v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, | |
|     Defendants | |

2

**[PROPOSED] ORDER GRANTING URGENT MOTION OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR ORDER (I) ESTABLISHING SCHEDULE TO
CONTINUE NEGOTIATIONS DURING LITIGATION OF GATING ISSUES
<u>PURSUANT TO LITIGATION SCHEDULE AND (II) GRANTING RELATED RELIEF</u>**

Upon the *Urgent Motion of Financial Oversight and Management Board for Order (I) Establishing Schedule to Continue Negotiations During Litigation of Gating Issues Pursuant to Litigation Schedule and (II) Granting Related Relief* (Docket Entry No. _____ in Case No. 17-3283; Docket Entry No. ____ in Case No. 17-4780; Docket Entry No. _____ in Adv. Pro. No. 19-391; Docket Entry No. _____ in Adv. Pro. No. 19-396; and Docket Entry No. _____ in Adv. Pro. No. 19-405, the "<u>Urgent Motion</u>")[2] and the Court having found the Oversight Board provided adequate and appropriate notice of the Urgent Motion under the circumstances and that no other or further notice is required; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief set forth herein:

1.      The Urgent Motion is **GRANTED** as set forth herein.

2.      Litigation before this Court with respect to Adversary Proceeding No. 19-391 (LTS) shall proceed in accordance with the schedule attached hereto as **<u>Schedule 1</u>**.

3.      The Court shall rule on the motions to dismiss filed and pending in Adversary Proceeding Nos. 19-396 (LTS) and 19-405 (LTS) on the pleadings.

4.      This Order shall take immediate effect and be enforceable upon its entry.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Urgent Motion.

5.      The Court shall retain jurisdiction to hear and determine all matters arising from

implementation of this Order.

Dated: _____, 2022

                                                    SO ORDERED:

                                                    _____
                                                    HONORABLE LAURA TAYLOR SWAIN
                                                    United States District Judge

## **SCHEDULE 1**

### **[Proposed] Litigation Schedule**

| Event | Proposed Date |
|---|---|
| Oversight Board to file amended adversary complaint | **9/30/2022** |
| Deadline for Parties to file Motions for Summary Judgment covering secured and unsecured claim allowability | **10/24/2022** |
| Deadline for Parties to file: <ul><li>Responses to Motions for Summary Judgment; and</li><li>Applications for Rule 56(d) Discovery, if necessary</li></ul> | **11/11/2022** |
| Deadline for Parties to file: <ul><li>Replies in Support of Motions for Summary Judgment; and</li><li>Responses to Applications for Rule 56(d) Discovery, if any</li></ul> | **11/29/2022** |
| Deadline for Parties to file Replies in Support of Applications for Rule 56(d) Discovery, if any | **12/9/2022** |
| If Court denies Rule 56(d) Applications, or none are filed: | |
| Hearing on Motions for Summary Judgment | **1/11/2023, or another date convenient for the court** |
| If Court grants one or more Rule 56(d) Applications: | |
| Defendant(s) to serve initial document requests on Plaintiffs | **1/6/2023** |
| Plaintiffs' document production is due | **1/20/2023** |
| Plaintiffs' Responses and Objections to Defendant(s)' initial document requests | **1/20/2023** |
| Parties shall file a joint status report raising any then-expected discovery disputes | **1/27/2023** |
| Defendant(s) to serve 30(b)(6) notices & notices of deposition for fact witnesses upon the Board/Government | **1/27/2023** |
| Plaintiffs' Responses and Objections to Defendant(s)' 30(b)(6) notices | **2/3/2023** |
| Deposition and fact discovery deadline | **2/10/2023** |

| Event | Proposed Date |
|---|---|
| Defendants' deadline to supplement motions for summary judgment, if any, and/or supplement oppositions to motions for summary judgment | **2/24/2023** |
| Deadline to file oppositions to supplemental motions for summary judgment, if any, and/or replies to supplemental oppositions to motions for summary judgment | **3/10/2023** |
| Deadline to file replies in support of supplemental motions for summary judgment, if any | **3/17/2023** |
| Hearing on motions for summary judgment and supplemental motions | **4/5/2023, or another date convenient for the court** |