**Hearing Date:  September 21, 2022 at 9:30 a.m. (AST)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO (the "ERS"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03566-LTS |

## <u>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE THE PLAN OF ADJUSTMENT AND FOR RELATED INJUNCTIVE RELIEF</u>

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

UBS Financial Services Incorporated of Puerto Rico,[2] by and through the undersigned counsel, hereby submits this reply in further support of its Motion to Enforce the Plan of Adjustment and For Related Injunctive Relief, filed on July 28, 2022 (the "Motion to Enforce" or "Motion").  (Dkt. 21651)[3]  In further support of the Motion, UBS states as follows:

1.      On July 28, 2022, UBS filed a motion asking the Court to enjoin the ERS and seven of its former beneficiaries from pursuing an action filed in the Puerto Rico Commonwealth Court seeking recovery of damages that the ERS purportedly suffered as a result of the 2008 issuance of pension obligation bonds.  As UBS explained, the Plan transfers the claims asserted in the Commonwealth Action to the Avoidance Actions Trust (the "Trust").  (Dkt. 21651)  Since UBS filed its motion, both the Avoidance Actions Trustee (the "Trustee") and the Official Committee of Unsecured Creditors (the "UCC"), which represents the constituency of creditors that received the claims against UBS, have joined to support UBS's Motion.  (Dkt. 22186, 22187)  Thus, UBS and its ultimate adversaries in the pending Underwriter Adversary Action now join forces to ask the Court to enforce the Plan and to enjoin the Commonwealth Action because the existence of that action places UBS at risk of a double recovery and effectively destroys the Trustee's ability to settle the claims against UBS.

---

[2]    On July 14, 2021, UBS Financial Services Inc. ("UBS") and UBS Financial Services Incorporated of Puerto Rico entered into a Merger Agreement (the "Merger") pursuant to Section 253 of the Delaware General Corporation Law and Section 3733 of the General Corporations Act (2009) of Puerto Rico. As a result of the Merger, UBS Financial Services Incorporated of Puerto Rico merged into UBS and ceased to exist, with UBS being the surviving corporation.  UBS recently filed a Motion to Substitute Party.  (Dkt. 22222)

[3]    All undefined capitalized terms have the same meanings set forth in UBS's Motion to Enforce.

2.       Six individual former ERS Beneficiaries – all plaintiffs in the Commonwealth

Action – oppose UBS's motion.[4]  (Dkt. 22175, hereinafter "Opp.")  These ERS Beneficiaries do

not dispute UBS's interpretation of the provisions of the Plan that transferred the ERS's claims

to the Trust.  Rather, they mischaracterize their own pleading in an attempt to convince the Court

that the claims they have asserted in the Commonwealth Action are not the same claims that

were transferred to the Trust.  Tellingly, the ERS Beneficiaries studiously avoid quoting from

their complaint because their own pleading refutes their argument.  In any case, parsing the exact

claims in the Trustee's action and the Commonwealth Action misses the point – both cases seek

relief against UBS arising out of its role in the issuance of the ERS bonds.  The Trustee's

counsel's strategy in choosing legal theories that they believe put the Trustee in the best position

to recover funds for the creditors has no bearing on the Trustee's ownership of this group of

claims.  Indeed, both litigants seek recoupment of the fees paid to UBS.  UBS should not be

expected to make such payments to two separate creditor groups.  Rather, it should be

uncontroversial that UBS should only be required to resolve its claims against the party given

those claims under the Plan.

3.       If the seven individual ERS Beneficiaries are allowed to wrest control away from

the Trustee and obtain a windfall for themselves, it would undercut the enormous effort

---

[4]     UBS seeks relief against all seven of the ERS Beneficiaries who are plaintiffs in the
Commonwealth Action even though one of those seven plaintiffs did not join the opposition
to the Motion to Enforce.  UBS further notes that the six ERS Beneficiaries have filed a
motion for affirmative relief and a merits opposition to UBS's Motion, while asserting that
their filings were made "without submitting to the jurisdiction of this Court." (Opp. at 1)
They cannot have their cake and eat it too in this fashion.  This type of vague reservation of a
jurisdiction defense is invalid and constitutes a waiver.  *See, e.g., Blockowicz v. Williams*,
630 F.3d 563, 566 (7th Cir. 1993) (holding party waived personal jurisdiction by merely
asserting in a footnote that the party "contests that the [district court] has personal
jurisdiction over it and does not waive any arguments it has pursuant to
Fed.R.Civ.P.12(b)(2).")

undertaken to negotiate a compromise that serves the interests of all constituencies to the
PROMESA proceedings.  The government retirees were treated well under the Plan and should
not be coming back now to double dip on their payout.  If they wanted to recast the Plan so that
they not only got direct payments, but also retained the ERS's litigation rights, they should have
come forward before the Plan was approved, not afterwards.  For these reasons and other reasons
explained below, the Court should reject the ERS Beneficiaries' arguments and issue the
requested injunction to enforce the Plan.

## I.     THE COURT SHOULD ENFORCE THE PLAN AND ENJOIN FURTHER PROSECUTION OF THE COMMONWEALTH ACTION.

4.     As UBS previously explained, its interests are not the only interests at stake in
considering whether to enjoin the ERS Beneficiaries from continuing to litigate the
Commonwealth Action.  (Motion ¶¶ 2, 15-16, 22)  Two other parties, the Trustee and the UCC,
have now filed joinders to UBS's Motion.  (Dkt. 22186, 22187)  Both of those parties represent
the interests of the creditors who are the beneficiaries of the Trust that now owns the claims
asserted in the Commonwealth Action.  The joinders emphasize what UBS has itself argued in its
Motion:  that continued prosecution of the Commonwealth Action cannot be reconciled with the
distribution of rights to different classes of creditors under the Plan.  (Motion ¶ 2)

5.     The Plan expressly granted the Trustee the exclusive "rights, powers and duties"
"to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the
Avoidance Actions Trust."  (*Id.* § 78.6)  Allowing other parties to pursue overlapping claims that
seek similar relief in another court will destroy the Trustee's ability to settle or recover on claims
given to the Trust under the Plan.  As a result, ***UBS, the Trustee, and the UCC, together***, are
asking the Court to declare that the Trustee controls the claims against UBS arising out of the
2008 ERS bond issuances.  If the Court allows control over these claims to be shared among the

Trustee representing the unsecured creditors and seven rogue ERS Beneficiaries, then UBS will

not be in a position to settle with either group because UBS will be unable to obtain the releases

needed for any meaningful settlement.  Further, if both cases were to go to judgment, then UBS

would face a grossly unfair double recovery.  The Plan did not contemplate such dubious

outcomes.

6.      It bears emphasis that the transfer of these claims to the Trustee took place as part

of an overall bargain in which the government employee retirees were treated with the utmost

fairness and due process.  On these motions, the ERS Beneficiaries have not explained how

enforcing the rights of other creditors under the terms of the Plan will prejudice their interests

when their interests were already generously provided for by the Plan.

7.      The ERS Beneficiaries also have not explained why this Court should not enforce

its own orders.  Their argument that UBS's request should be presented instead to the

Commonwealth Court (Opp. ¶ 7) makes no sense.  The issue of who owns the claims turns on an

interpretation of this Court's orders, and this Court indisputably has the authority to enforce its

own orders.  (Motion ¶ 7)  The ERS Beneficiaries cite no authority suggesting otherwise.  All of

the interested parties are present before this Court.  And they can present, and have presented,

their arguments to this Court.  There is no reason to force the Trustee and UCC to intervene in

the Commonwealth Action.  Nor is it appropriate to ask the Commonwealth Court to interpret

this Court's orders.

8.      In short, the Court can and should enjoin the Commonwealth Action to enforce

the plain terms and clear purpose of the Plan and to protect the interests of the creditors that were

intended to benefit from it.

## II.    THE FORMER ERS BENEFICIARIES ARE PURSUING THE SAME CLAIMS THAT BELONG TO THE AVOIDANCE ACTIONS TRUST.

9.      The ERS Beneficiaries' main argument against an injunction is that the claims transferred to the Trust are not the same as the claims they have asserted in the Commonwealth Action.  (Opp. ¶¶ 21-26)  But they can only make that argument by ignoring the allegations in their own pleading.  Indeed, the ERS Beneficiaries falsely contend that their claims arise out of "UBS' tortious conduct prior to issuance of the POB's" – *without quoting or citing their own pleading* to support that characterization.  (Opp. ¶¶ 8)  The official translation of the Commonwealth Complaint demonstrates that the claims for relief in the Commonwealth Action arise out of the 2008 transactions in which UBS underwrote the ERS Bonds.

10.     Specifically, the Commonwealth Complaint alleges that "UBS violated its contractual, non-contractual and fiduciary obligations towards the System" "[b]y not only endorsing, but also *participating as the lead underwriter in the illicit and grossly negligent issuance of the Bonds*" (4th AC ¶ 6.11) and that UBS violated its "underwriting contracts with the System *for the issue and sale of the Bonds.*" (4th AC ¶ 6.18) (emphasis added)

11.     The Amended Complaint in the Underwriter Adversary Action challenged the same bond transactions (19-00280, Dkt. 28 ¶¶ 48-49), asserted claims for breach of contract arising out of UBS's purchase contracts with the ERS (*id.* ¶¶ 511, 513, 544, 546), and sought "*all of the damages* that [the ERS] incurred as a result of Defendants' breaches of contracts" (*id.* Prayer for Relief ¶ 6) (emphasis added).

12.     The Commonwealth Court itself has described the claims in a manner that refutes the ERS Beneficiaries' new characterization of their case.  That court said the action before it pertains to "*the transaction between UBS and the Retirement System*" and UBS's actions "*when it sold, marketed, devised or did not devise the sale of these bonds*." (Ex. A, Certified

Translation of Transcript of Hearing held in the Commonwealth Action on November 26, 2019, at 35-36) (emphasis added)

13.     The Plan defines the transferred claims by referring to the Amended Complaint in the Underwriter Adversary Action because that was the operative complaint at the time. (Plan § 1.108 & Exhibit B) Since UBS filed its Motion, the Trustee filed a Second Amended Complaint in the Underwriter Adversary Action. (19-00280-LTS, Dkt. 49) Given that the approved Plan has canceled the ERS bonds (and also makes provision for full payments to the government retirees), the Trustee has understandably restyled its Complaint to pursue slightly different claims and forms of relief.[5] This is consistent with the Plan's express grant to the Trustee of the exclusive "rights, powers and duties" "to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust." (*Id.* § 78.6) That new approach merely reflects the litigation strategy of the Trustee's counsel. The Trustee could have chosen to borrow from the ERS Beneficiaries complaint if the Trustee thought it served its purposes. In any event, the relief sought by the Trustee still overlaps with the relief sought by the ERS Beneficiaries. The Trustee seeks the return of "the funds paid to the Underwriting Defendants [including UBS] . . ." (SAC ¶ 223; *see also id.* ¶ 16 & Ex. 16) The Commonwealth Action similarly involves a request for rescission of the underwriting fees. (4th AC ¶ 6.22 ("UBS and UBS Consulting, illegally charged substantial commissions and fees and discounts related to the reckless, illicit and grossly negligent issuance and sale of the Bonds and must return them to the System."))

---

[5]   UBS and the other underwriter defendants intend to move to dismiss the claims in the Second Amended Complaint.

14.     Moreover, even if the Trustee had chosen to abandon all of its claims against UBS in its Amended Complaint, that would not give the ERS Beneficiaries the right to pursue those claims.  A decision by the Trustee to abandon certain claims – which it has the authority to do – would not cancel the transfer of property or return it to the ERS.  The ERS Beneficiaries do not cite any provision of the Plan or any other authority creating a reversionary interest in the claims that were transferred to the Trust.  In short, regardless of what changes the Trustee made in the Underwriter Adversary Action Complaint, the claims arising out of the 2008 ERS bond transactions still belong to the Trust, and not the ERS Beneficiaries.

15.     The ERS Beneficiaries next argue that their claims are distinct because they are pursuing relief based on tort law.  (Opp. ¶¶ 21-23)  Here, they have told the Court a half-truth.  While their pleading has a tort claim, it also contains a cause of action for breach of UBS's underwriting contracts.  (4th AC ¶¶ 6.1-6.23)  But even if the Commonwealth Action was based solely on violations of tort law, it would not matter.  What matters is that the ERS Beneficiaries are pursuing the same relief as the Underwriter Adversary Action.  As UBS explained in its motion, asserting an alternate legal theory of recovery cannot justify double recovery for the same injury.  *See Garcia-Rivera v. Allison*, No. 04-1757(PG), 2006 WL 2261065, at *4 (D.P.R. Aug. 7, 2006) (dismissing claim under Article 1802 because plaintiff's damages arose from breach of contract; therefore, plaintiff "d[id] not have a separate cause of action for negligence") (internal quotations omitted); Restatement (Second) of Judgments § 25 (1982) ("Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions…."). (*See also* Motion ¶ 25)

16.     Tellingly, the ERS Beneficiaries have cited no authority that would require UBS

to pay the same damages to both the Trust and the ERS.  Because the ERS Beneficiaries in the

Commonwealth Action and the Trustee in the Underwriter Adversary Action both purport to (i)

assert rights formerly held by the ERS, (ii) challenge the same transactions, and (iii) seek

overlapping relief, they are asserting the same claims.  *Cf.* Restatement (Second) of Judgments §

24 (1982) (claims are same for purposes of *res judicata* where they arise out of "all or any part of

the transaction, or series of connected transactions").

17.     Finally, the ERS Beneficiaries are wrong to the extent they assert that the question

of overlap of the contract and fiduciary duty claims has already been decided by this Court or the

Commonwealth Court.  (Opp. ¶¶ 9-20)  Neither this Court nor the Commonwealth Court has

ever addressed the issue.  Indeed, UBS's motions to lift the automatic stay to allow for the filing

of a counterclaim in the Commonwealth Action had nothing to do with ownership of these

claims under the Plan, which did not even exist at that time.[6]  (Dkt. 8823, 12561)

18.     Nor did the Commonwealth Court decide whether the contract and tort claims in

that court overlap with the claims in the Underwriter Adversary Action.  Rather, for purposes of

addressing discovery, the Commonwealth Court discussed whether the ERS Beneficiaries had

alleged that the bonds were invalid under the Puerto Rico Constitution.  (Ex. A at 19-28)  No

party presented any motion either before or at that hearing asking the Commonwealth Court to

decide whether there was overlap with the Underwriter Adversary Action.  (*See generally id.*)

---

[6]   When this Court granted, in part, UBS's motion to lift the automatic stay so that UBS could
request permission to file counterclaims in the Commonwealth Action, it expressly refused to
issue any ruling addressing the substance or nature of the claims in the Commonwealth
Action.  (Dkt. 12986, 12989)

19.     In the Motion, UBS does not argue that the ERS Beneficiaries have pleaded a claim for invalidity of the ERS bonds.  That point is irrelevant to resolving the Motion.  Rather, UBS's position here is that the ERS Beneficiaries' claims for breach of an underwriting contract and breach of fiduciary duties purportedly owed as an underwriter and advisor to the ERS overlap with the claims in the Underwriter Adversary Action and were therefore transferred to the Trustee.

## III.   ARTICLE 517 OF LAW 53-2021 DOES NOT PRECLUDE THE COURT FROM ISSUING AN INJUNCTION.

20.     In their attempt to avoid an injunction, the ERS Beneficiaries also point to Act 53-2021, which was enacted by the Puerto Rico legislature in furtherance of the Plan.  (Opp. ¶¶ 27-29)  Specifically, they cite one sentence of that act – Article 517 – which states (in translation) that the "Adjustment Plan transactions cannot be used to mitigate causes of action under Article No. 3-2013, as amended."  (*Id.* ¶ 27)  Notably, UBS, the Trustee and the UCC do not seek to eliminate any causes of action with this Motion.  Rather, the Motion merely concerns who gets control of those litigation rights.  Nothing in Article 517 precluded the ERS or the ERS Beneficiaries from trading litigation rights in the bargaining over the Plan in order to secure payments for the retirees – which is what they did.   In short, the *transfer* of claims to the Trust does not conflict with the language of Article 517.

21.     Moreover, to the extent that the ERS Beneficiaries believe provisions of the Plan conflict with Article 517, they should have raised those arguments before the Plan was confirmed.  They had an opportunity to be heard on this point and failed to present such argument.   They should not be allowed to challenge the Plan after the fact based on an argument they had the opportunity to raise and never did.

9

22.     Finally, to the extent that there is an inconsistency between the Plan and Act 53-2021, then the Plan preempts the local statute under the Supremacy Clause and the express provisions of the Plan itself.  Specifically, the Plan would preempt that one sentence –  Article 517 – without any impact to the remainder of Act 53-2021.  This Court's confirmation order is crystal clear on the point – "[a]ll laws enacted from and after the commencement of the Title III Cases to the extent they are inconsistent with the transactions contemplated by the Plan are also unenforceable."  (Dkt. 19813 ¶ 3(B); *see also* Plan § 89.3 (preemption of laws generally); 48 U.S.C. § 2103 ("[T]he provisions of this [PROMESA] chapter shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Chapter"); 48 U.S.C. § 2165 (upon Plan provision the court may adjust the political powers and property of the PROMESA debtors))  In sum, any inconsistency between the Plan and Section 517 of Act 53-2021 is preempted to the extent necessary to properly assign the claims at issue to the Trustee.

## IV.   THE ERS BENEFICIARIES DO NOT HAVE ANY DIRECT, PERSONAL CLAIMS AGAINST UBS.

23.     In a last-ditch effort to avoid an injunction, the ERS Beneficiaries argue that they possess a direct cause of action against UBS.  (Opp. ¶¶ 30-32)  UBS anticipated that argument in its Motion and thoroughly explained why it fails.  (Motion ¶¶ 35-65)  Presumably, because they have no response, the ERS Beneficiaries do not address any of UBS's arguments.  They do not explain how UBS could owe duties to them directly when it never formed any contractual or any other type of relationship with them as individuals.  (Motion ¶¶ 36-42)  Nor do they explain how the Court can accept their interpretation of Act No. 3-2013 without violating UBS's constitutional rights.  Indeed, as UBS explained, a legislature cannot create new substantive rights or impose duplicative liability on a party based on past transactions or conduct.  Such

overreaching is precluded by multiple provisions of the Constitutions of Puerto Rico and the United States.  (Motion ¶¶ 52-65)  Again, the ERS Beneficiaries had almost two months to prepare their opposition and they failed to address these Constitutional points.

24.      UBS respectfully submits that the Court need not address the Constitutional issues because the Court should construe laws in a manner that renders them constitutional.  *P.R. Renewal Party v. Commonwealth of Puerto Rico*, 115 D.P.R. 631, 642 (1984), 15 P.R. Offic. Trans. 828, 840 (1984) ("[T]he Judicial Power—in deference to the Legislative Power—should strive to attain congruent interpretations that are compatible with maintaining the constitutionality of a statute."); *Teachers' Ass'n v. Dep't of Educ.*, 200 D.P.R. 974, 988 (2018), __ P.R. Offic. Trans., __ (2018) (Rivera García, J., concurring) (noting "obligation to strive to achieve an interpretation consistent with the upholding of the constitutionality of a statute").  The fairest reading of Act No. 3-2013 as applied to derivative claims pending at the time of that law's adoption is that the statute granted the beneficiaries of the ERS derivative standing to pursue the claims owned by the ERS.  That reading is consistent with the Puerto Rico and U.S. Constitutions.

25.      The ERS Beneficiaries' conduct to date is also consistent with the view that they were merely derivative plaintiffs and not asserting their own direct rights.  They pleaded each of their *five* complaints as derivative suits brought on behalf of the ERS and never sought to pursue a class action on behalf of individual beneficiaries.  (Motion ¶¶ 8-10, 35)

26.      For all of the foregoing reasons, and those set forth more fully in UBS's Motion and the Trustee's and UCC's Joinders, the Court should enjoin the ERS and the seven ERS Beneficiaries from continuing to litigate the Commonwealth Action.

Respectfully Submitted:

In San Juan, Puerto Rico, this 17th day of September, 2022.


OF COUNSEL:

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Paul J. Lockwood (*admitted pro hac vice*)
One Rodney Square
P.O. Box 636
Wilmington, Delaware  19899
Tel.:  (302) 651-3000
Fax:  (302) 651-3001

McCONNELL VALDÉS LLC
270 Muñoz Rivera Ave.
Hato Rey, Puerto Rico  00918
Tel.:  (787) 250-2631
Fax:  (787) 759-9225

By: */s/ Roberto C. Quiñones-Rivera*
    Roberto C. Quiñones-Rivera, Esq.
    USDC-PR Bar No. 211512
    rcq@mcvpr.com

*Counsel for UBS Financial Services Inc.*

# EXHIBIT A

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                              Page **1** of **69**

COMMONWEALTH OF PUERTO RICO

COURT OF FIRST INSTANCE

SAN JUAN SUPERIOR PART

| | |
|---|---|
| EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, ETC.<br><br>Plaintiffs<br><br>v.<br><br>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO AND UBS CONSULTING SERVICES OF PUERTO RICO; ETC<br><br>Defendants | CIVIL NO.: KAC 2011-1067 (901)<br><br>RE: BREACH OF CONTRACT DAMAGES |

      Hearing held on Tuesday, November 26, 2019 at the San Juan Court of First Instance, Room 901 of the San Juan Judicial Center before the Honorable Rebecca de León Ríos, beginning at 10:09 a.m.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                  Page **2** of **69**

APPEARANCES:

FOR THE PLAINTIFFS:

FEDERICO HERNÁNDEZ DENTON, ESQ.
P O Box 9021279
San Juan, PR 00902-1279
Tel: 787-758-3542
Email:   f.hernandezdenton@gmail.com

VICENTE & CUEBAS
P O Box 11609
San Juan, PR 00910-1609
Tel: 787-751-8000
BY:     HAROLD D. VICENTE COLÓN, ESQ.
Email:   hdvc@vclawpr.com
-AND-
BY:     IVELISSE M. ORTIZ MOREAU, ESQ.
iortiz@vclawpr.com

ANDRÉU & SAGARDÍA
261 Ave. Domenech
San Juan, PR 00918-3518
Tel: 787-754-1777
BY:     JOSÉ A ANDRÉU FUENTES, ESQ.
Email:   jaf@andreu-sagardia.com

WALTER P. LEBRÓN RAMÍREZ, ESQ.
River Walk 145 Encantada
Trujillo Alto, Puerto Rico 00976
Tel: 787-724-0900
Email:   lebronwalter06@gmail.com

FRANCISCO PUJOLS MENESES, ESQ.
PO Box 363042
San Juan, PR 00936-3042
Tel: 787-724-0900
Email:   fpujols@pujollawp.rcom

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019

CONT. APPEARANCES:

FOR THE PLAINTIFFS:

WOLF POPPER, PSC
654 Plaza, Ste. 1001
654 Ave. Ponce de León
San Juan, Puerto Rico 00918
Tel.: 787-522-0200
BY:      RODOLFO CARRIÓN VARGAS, ESQ.
Email:   rcarrion@wolfpopperpr.com

FOR THE DEFENDANTS:

McCONNELL VALDÉS, LLC
PO Box 364225
San Juan, PR 00936-4225
Tel.: 787-759-9292

BY:      ROBERTO C. QUIÑONES RIVERA, ESQ.
Email:   rcq@mcvpr.com
-AND-
BY:      MYRGIA M. PALACIOS CABRERA, ESQ.
Email:   mpc@mcvpr.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP & AFFILIATES
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel. : (302) 651-3000

BY:      PAUL LOCKWOOD, ESQ.
-AND-
BY:      NICOLE A. DISALVO, ESQ.

INTERPRETER: JUAN SEGARRA

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **4** of **69**

1.                              IN SAN JUAN, PUERTO RICO

2.                              TUESDAY, NOVEMBER 26, 2019

3.                              P-R-O-C-E-E-D-I-N-G-S

4.

5.                         ATTY. HERNÁNDEZ: Good morning, Your Honor. Attorney

6.          Federico Hernández Denton, for…for the plaintiffs. I'm accompanied by

7.          attorney Ivelisse Ortiz, attorney José Andréu Fuentes, attorney

8.          Harold Vicente Colón, attorney Walter Lebrón, attorney

9.          Francisco Pujols, and attorney Rodolfo Carrión.

10.                        ATTY. QUIÑONES: Good morning, Your Honor. Appears attorney

11.         Roberto Quiñones, representing the defendants.

12.                        ATTY. PALACIOS: Good morning, Your Honor. Myrgia Palacios

13.         Cabrera, representing the defendants.

14.                        ATTY. LOCKWOOD: Paul Lockwood, for UBS.

15.                        ATTY. DISALVO: Good morning, Your Honor. Nicole DiSalvo for

16.         the defendants.

17.                        HON. JUDGE: Good morning, we are here this morning to

18.         discuss some pending issues in this case. There's a Motion for

19.         Summary Judgment filed. Yesterday I received a courtesy copy of

20.         a motion whereby the plaintiffs submitted to the defendants a

21.         CD with 31,671 documents.

22.                        Did the defendants receive that documentary evidence?

23.         Because there was an issue on the production of documentary evidence as

24.              for the plaintiffs. That the court was being asked to impose

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                      Page **5** of **69**

1.                   sanctions as the evidence had not been produced.

2.                   ATTY. QUIÑONES: Yes, Your Honor. Roberto Quiñones, for

3.                   the record. And I would like to—mention that attorneys

4.                   Lockwood and DiSalvo are using the services of translator

5.                   Juan Segarra, translating the proceedings.

6.                   HON. JUDGE: Is there any objection from plaintiff's

7.                   counsel?

8.                   MALE VOICES: No objection.

9.                   HON. JUDGE: No objection.

10.                 ATTY. QUIÑONES: And in the event that they wish

11.                 to make any statement to the court, we ask the Court's permission

12.                 to do it in English and have it translated.

13.                 HON. JUDGE: The proceedings are in Spanish, counsel. They

14.                 must be translated.

15.                 ATTY. QUIÑONES: Yes, translated by Mr. Segarra.

16.                 HON. JUDGE: Any objection?

17.                 MALE VOICES: None.

18.                 HON. JUDGE: None, OK.

19.                 ATTY. QUIÑONES: Regarding the production, yes, Your

20.                 Honor, we received it. And that CD— we believe that it—

21.                 contains the, the documents that were inside 20 boxes of documents.

22.                 HON. JUDGE: That were digitized.

23.                 ATTY. QUIÑONES: They were digitized.

24.                 HON. JUDGE: That a commitment had been made, according to

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **6** of **69**

1.          the motions, to be digitized.

2.                    ATTY. QUIÑONES: We believe that these are boxes

3.          of documents that had been announced in April 2017.

4.          Which had been collected before we notified

5.          a Request for Production of Documents.

6.                    So those documents, we understand, are not responsive

7.          to the request for production, since they are documents that

8.          apparently the Retirement System provided its counsel

9.          at that time, without having had a request for

10.         production of documents. Since those boxes had been

11.         collected by April 2017, which is when the

12.         Request for Production had been notified.

13.                   As for the CD, consists, that CD, actually, it has

14.         approximately more than 30 thousand pages. And are all merged

15.         in two PDF files. Basically, a scan was made of the

16.         entire production, without dividing it document by document. We

17.         don't know where the documents come from, from files of

18.         which custodians the documents come from. Many of the

19.         documents are illegible.

20.                   It's—it's a production that's simply useless,

21.         Your Honor, for the purpose of taking depositions of

22.         witnesses. We don't know where a document begins, where the

23.         document ends. It's simply an effort that

24.         we believe that it wasn't done in a dutiful manner. Because those

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

Translation Page **6** of **69**

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                        Page **7** of **69**

1.          documents are useless, as they were produced.

2.               HON. JUDGE: Plaintiffs.

3.               ATTY. HERNÁNDEZ: Your Honor, to clarify our

4.          position. The documents submitted are documents,

5.          some were, they had been— that the Retirement System

6.          had, and others that were recently obtained.

7.               Part of the problem we've had in this process is that the

8.          Retirement System, due to Hurricane María, had to

9.          vacate the building. Its system— digital, some of them

10.         were substantially damaged. And they, in turn, have been—

11.         we've been in this process asking them to try,

12.         to make all the necessary searches.

13.              So some of the documents we submitted

14.         last week, are documents that we had

15.         beforehand. Other documents are new documents that we

16.         were able to obtain.

17.              It's really our intention to produce all the necessary

18.         documents. And in fact, we are surprised by the position of, of, of UBS.

19.         Because the, the, the, the, the answer to our Request for

20.         Documents, they also submitted documents that

21.         were repetitive, documents that we uh found difficult

22.         as well, to organize during, during this process.

23.         And what we've tried is, in light of the, the position that

24.         they have been taking, that they don't have eno— the

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **8** of **69**

1. |  necessary documents, we've tried to with—

2. |  submit the information that the Retirement System has.

3. |      Cleary, from the retirees, whom

4. |  we also represent, the retirees, because they are not the

5. |  ones who have the documents, but the Retirement System. And the

6. |  Retirement System had to vacate even its building. The Retirement System

7. |  is no longer in the building. It had to move twice from different

8. |  locations. First from the Minillas building and now to—the, from

9. |  the Retirement System building.

10. |      And we've been producing all the documents

11. |  possible that the Retirement System has been able to, has provided us.

12. |  But we recognize, and that's why we did it once we finished what

13. |  we had found and had found up to that point,

14. |  we produced all the information that we had in our

15. |  possession. And that's what we submitted last week.

16. |      ATTY. QUIÑONES: If I may, Your Honor—

17. |      ATTY. VICENTE: Harold Vicente, for the record. I believe that

18. |  what should be made clear is that no document has been withheld.

19. |  I mean, everything the Retirement System has found

20. |  related to this lawsuit, has been given to us. There are still some

21. |  documents that are still being digitized and will be produced in

22. |  the next few days. But everything, I mean, we haven't-—

23. |      HON. JUDGE: But look, here's what I think.

24. |      ATTY. VICENTE: We haven't taken anything out of the boxes.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

1.                          HON. JUDGE: I haven't seen them, because I shouldn't,

2.          at this stage, shouldn't be looking at evidence, except for

3.          that which is accompanied in the motions for summary judgment

4.          and the opposition. Because that's the discovery of evidence

5.          that you are conducting.

6.                          But part of what we're going to do today is,

7.          well, try to give a structure to the case.

8.          Because, otherwise, we're going to have to appoint a

9.          special master to sit with you every week. Every

10.         week, because you know that, that it's, almost

11.         impractical, right? It's impractical to go over that volume of documents

12.         here one by one.

13.                         I figure that it must be purged. And for starters,

14.         it is necessary to exactly define which are the disputes that

15.         must be resolved. Because I think that within

16.         that bundle of 30-something thousand documents there must be

17.         some evidence that is not relevant to this case.

18.                         And, then, well, the idea is that we can, in fact, work

19.         the case. And, and the documents are to prove, to prove the

20.         parties' allegations. Because here, it will not win the one bringing the most

21.         papers . That's not how a case is won. It's, well, whatever

22.         is relevant and essential.

23.                         And, in fact, the court file already has extensive

24.         documentary evidence and which has been repeated. And that I

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

1.                      even had to order its withdrawal from the court file. Because, look,

2.       I have McKenzie's report I don't know how many times.

3.       Unless it's been changed or modified each time. But, you

4.       know it's a block of paper. So I have

5.       many copies.

6.                I think that you have to do that exercise

7.       to be able, to be able to put the court in a position to decide.

8.       Because if we don't, we're never going to finish.

9.                ATTY. VICENTE: Yes, Your Honor. What I meant was

10.      that we have produced everything. And before we are

11.      the judges of what's relevant or not, we have given everything.

12.      That's, that's what I meant.

13.                There's no doubt that when in this case we'll, we'll present

14.      the evidence that we understand that will be,

15.      well, but included there, because we haven't

16.      withheld absolutely nothing.

17.                There may be documents that do not respond to

18.      any of the requirements that they have requested or have

19.      sent. There's no doubt—

20.                ATTY. QUIÑONES: I would like—

21.                ATTY. VICENTE: Excuse me. There's no doubt that it can happen,

22.      that more documents have been produced than

23.      requested, because we handed over everything. Everything that had

24.      something to do with this action was handed over.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **11** of **69**

1.        One second, and excuse me. It's just that I have had this

2.        toothache since Saturday and frankly it's, it's, it's ,it's

3.        driving me crazy.

4.        But, but the important thing is that all this, all this

5.        documentation is in their possession, and, and, and we have no

6.        problem with giving them time to examine and,

7.        and evaluate it. I mean, we didn't, didn't want to keep

8.        any document.

9.        ATTY. QUIÑONES: Yes, Your Honor, I think we have

10.       to take a step back and look at what has happened in the

11.       discovery of evidence.

12.       HON. JUDGE: Say your last name, the lady is asking

13.       me.

14.       ATTY. QUIÑONES: Attorney Roberto Quiñones Rivera.

15.       HON. JUDGE: For defendant UBS.

16.       ATTY. QUIÑONES: I think we have to take a step back,

17.       because there are some key issues here that the

18.       plaintiffs haven't addressed.

19.       Attorney Vicente makes the representation that they have

20.       produced the documents that, that his client gave him. But those

21.       are documents that his client, for the most part, gave to

22.       him even before, even before being notified with a

23.       Request for Production of Documents.

24.       So they may very well be the documents that your

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                        Page **12** of **69**

1.          client at some point understood are favorable to

2.          the case and those are the documents given to him. And they

3.          believe that with that they have complied with

4.          the discovery of evidence in this case.

5.                  No written responses have been notified here to the

6.          discovery of evidence, to the Request for Production

7.          of Documents. It's been two and a half years, and there's still no

8.          answer to those Request for Production. For the first time

9.          produce documents that they had two and a half years ago,

10.         last Thursday, in a completely useless format.

11.                 So I ask the court to consider the

12.         motion to order the complete production of documents.

13.         Order the responses to the discovery of evidence that is

14.         notified; any objections which they may have had at one time

15.         have been waived, of any kind. Two and a half years I

16.         think that is enough time for the parties to have responded

17.         and chose not to. They didn't even do it before

18.         today's hearing.

19.                 I think that's a defiance of the court's orders to,

20.         to conduct the discovery of evidence, that the court made

21.         a statement to that effect in 2007, when the issue of the

22.         motion to dismiss under the statute of limitations.

23.                 And at one point there was a request to bifurcate the

24.         proceedings to address the discovery about statute of limitations

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                         Page **13** of **69**

1.          only. That was a request from the, the, the then

2.          defendant Santander. The court ordered that the discovery

3.          would not, would not be bifurcated. That the parties proceed

4.          with all discovery of evidence in this case. That was

5.          more than two years. It's the law of the case, in this case. And the defendants,

6.          the plaintiffs have simply crossed their arms.

7.                   And they understand that by having scanned the documents that they

8.          had two and a half years ago and deliver them which, again, are not

9.          responsive documents to the Request for Production, they have already

10.         complied with the discovery of evidence.

11.                  So, Your Honor, we request that you consider

12.         our motion to compel the production of documents. The

13.         objections that they may have had have been waived, and that

14.         today the discovery of evidence be structured.

15.                  Regarding the production, I would like to mention,

16.         mention the following. Most of the documents that

17.         were produced have a marking that reads "FOIA", Freedom

18.         of Information Act. Those documents apparently

19.         were produced in response to a requirement that perhaps

20.         had been made by a Federal Agency at some point. And that's

21.         what is being produced. Eighty percent or more of the

22.         documents have that marking. What we find extremely curious.

23.                  At this point we don't know how those documents

24.         were gathered, who did it, exactly when was it done.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **14** of **69**

1.      We don't know when a document begins and ends and...

2.      the other begins, ends a document and begins another..

3.      It is a completely useless production. So coming here

4.      to say, "we have produced everything", we don't know what

5.      they are referring to, because there is not even a written answer.

6.          ATTY. ANDRÉU: May I, Judge?

7.          HON. JUDGE: Go ahead.

8.          ATTY. ANDRÉU: I am attorney Andréu; In this case

9.      I represent the retirees plaintiffs, in their individual

10.      capacity.

11.          As you know, Judge, I only recently joined the case.

12.      But I've been examining the file for some time and

13.      examining the procedural status of this case. And, perhaps,

14.      with my fresh approach to the case, I may suggest

15.      the following.

16.          And so, Your Honor, I was able to see the

17.      documents that have been produced in this case. I was able to

18.      see them quite in detail. And the first thing that caught my

19.      attention, Your Honor, is the same as now brother counsel

20.      is saying, the plaintiffs have been saying for quite

21.      some time. In fact, it's part of what the

22.      plaintiffs have included in the Joint Case Management

23.      Report. And what to the previous legal representation for

24.      the defendants, O'Neill & Borges, the plaintiffs were

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                    Page **15** of **69**

1.          requiring to them.

2.                    Now I see that brother counsel is complaining that he's been given

3.          a pile of documents, when actually the plaintiffs,

4.          as the report shows, I'm not making anything up, and from the letter,

5.          have been telling them the same thing. They have been saying,

6.          "They gave me a pile of documents; you haven't classified them; you

7.          haven't, and you haven't. You threw them at me".

8.                    The thing is, Your Honor, this case certainly

9.          is very complex in terms of the number of

10.         documents it has, right? And, and it' s difficult to

11.         understand what is wanted by both sides. Certainly, the

12.         plaintiffs, understand that the relevant documents are those

13.         included in their, in their Motion for Summary Judgment. But,

14.         and as for the retirees, those are the most important

15.         documents, right?

16.                   But certainly, Your Honor, what I propose is

17.         the following. I think what the parties should do, which is the exercise

18.         that I've been trying to do, but I haven't had time,

19.         I suggest granting a term to brother counsel, to the plaintiffs,

20.         so they can have the time to look at the documents,

21.         and determine what additional documents. Because,

22.         after all, the defendants are no strangers to what

23.         has happened here. The defendant has been in these

24.         transactions from the beginning. And must have the documents.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **16** of **69**

1.                          But just like the plaintiffs, they have the

2.           documents, those 30-someting thousand. Some are from

3.           the old boxes. But the majority are documents that were

4.           provided a few days ago for the reason stated by

5.           attorney Hernández Denton. And it's after Hurricane

6.           María, the Ass— the Ret— the Retirement Association has had even to

7.           clo— the Retirement System hasn't even been able to use its headquarters.

8.                          And, and, and had those problems. And, therefore, well, and

9.           as a government entity, there have been those

10.          problems in getting. There are other additional documents

11.          that by noon today will be ready.

12.                          ATTY. VICENTE: One thousand five hundred and forty-five pages.

13.                          ATTY. ANDRÉU: One thousand five hundred and forty-five

14.          additional pages, which for the day, which for noon today

15.          or today during the day, will be digitized.

16.                          The reality is, Your Honor, that the, as attorney

17.          Vicente said, we have handed over everything here. The plaintiffs

18.          have not kept anything. It has been given as an act of

19.          good faith, here's everything the Retirement System has.

20.          Obviously, the retirees have no documents.

21.                          But here's everything the Retirement System has,

22.          so there' s no problem and they can be seen. Our position,

23.          Your Honor, we have no problem with giving a

24.          reasonable term for them to go over the documents

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **17** of **69**

1.              calmly, can determine what additional documents

2.              they believe may exist.

3.                    We understand that with the production that we'll

4.              provide today, the, they are being given everything

5.              that the System has about this. But again, without keeping, at

6.              least the attorneys haven't, haven't kept anything. No,

7.              there's nothing, not even— we haven't even made a confidentiality log.

8.              We haven't even determined anything. Simply everything that

9.              has to do with these transactions has been handed over. And it's

10.             going to be completed this afternoon.

11.                   My point is, to give them that term, a reasonable

12.             term; what brothers counsel believe to be prudent. We,

13.             in turn, we need to finish going over, because really we are,

14.             we're in the same position. We were given a

15.             pile of documents. We've been trying to, to, to purge

16.             them. But it hasn't been done either. To the point that it is in

17.             the, it's the objection that we raised in the Joint Report.

18.                   And that once brothers counsel examine it and we

19.             are able to finish with ours, we— we'll hold a meeting

20.             to finish, de— determine what other thing, if any,

21.             well, they have and we have. Because there are documents

22.             UBS, we understand that UBS must produce.

23.                   And from there, Your Honor, grant them a term. Because

24.             as you very well said, there's a Motion for Summary Judgment

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **18** of **69**

1.  |  submitted. Brothers counsel presented, the

2.  |  defendants filed an opposition, included a series of

3.  |  documents and some sworn statements. And regarding one

4.  |  or two or three, no more than two or three findings of

5.  |  fact, said that it had to discover additional

6.  |  evidence. That was the objection. And I can tell you, in only two

7.  |  or three findings of fact.

8.  |           Well, then, after they get a chance to

9.  |  go over the documents, be given another reasonable term

10. |  also to finish the opposition to the Motion for

11. |  Summary Judgment and we reply. So this matter be

12. |  submitted to the Court. That would be my, my position in trying to

13. |  find a halfway point, right, and newly arrived.

14. |           It seems to me that, that more than just appointing a person,

15. |  I think we have the ability to sit down and, and determine.

16. |  Again, they are not new to the case. They can't say that

17. |  now they don't have the documents. They have been—UBS is

18. |  part of these transactions from the beginning. And have,

19. |  after all, have the evidence or at least have access,

20. |  because it's in their possession to — the evidence needed to

21. |  be able to oppose to the Motion for Summary Judgment. And for the three,

22. |  for the three findings of fact that they say that they have to

23. |  make discovery and that they haven't been allowed to do

24. |  the discovery.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **19** of **69**

1.          Grant them a term. That I think may be 90,

2.      120 days. Have them do that analysis of those documents that we

3.      have handed over. And, and another term for them to oppose. And from there,

4.      well, hold that intermediate meeting, and we can come to, an understanding.

5.          But certainly the Retirement System today, which is what

6.      brothers counsel have informed me and what we have, in the meetings I

7.      have attended to, they are being given everything. That's why there are so

8.      many, because it's all the Retirement has.

9.          ATTY. QUIÑONES: Your Honor, I would like, a clarification

10.     from counsel. If he represents the Retirement System or the

11.     individual plaintiffs. Because he's making a representation on

12.     behalf, representations on behalf of the Retirement System. But I

13.     believed that his appearance was on behalf of the individual

14.     plaintiffs.

15.         Because if he is, if those are his clients, well then, he's

16.     repeating what the other brothers counsel said. He's not

17.     bringing anything that hasn't been raised before. And he has no

18.     personal knowledge of what he's arguing.

19.         As for the, production of, documents that there

20.     was and the allegation that there were documents that, that, that

21.     have not been found because of the destruction of, hurri—

22.     destruction of servers by Hurricane María, Your Honor,

23.     in federal court proceedings, where the Oversight

24.         Board is representing the interests of the

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                        Page **20** of **69**

1. | Retirement System, documents are being produced and

2. | searches are being made.

3. | And we haven't found a single communication where

4. | we have been copied, where it is mentioned that the servers

5. | were destroyed due to Hurricane Maria. Even,

6. | in one of our writings, we submitted an electronic

7. | communication from counsel for AAFAF, in which they report that

8. | they have been recently searching for documents,

9. | including electronic documents from servers prior to

10. | Hurricane María. And, and there's no mention that, that there's

11. | any obstacle or impediment due to destruction

12. | of servers to, to—due to, to Hurricane María.

13. | And I'd like to take this, this, point to mention

14. | that we have been in communication with counsel for the

15. | Oversight Board, informed us that, in turn,

16. | have been in communication with counsel for the

17. | Plaintiffs in this case regarding the proceedings in this case.

18. | And that the intention of the Board's lawyers is to lift the

19. | stay of the proceedings regarding the Retirement

20. | System in the Federal court, to allow the filing of

21. | UBS' counterclaim in this case. And then reinstall the

22. | stay of the proceedings, and request the stay of the

23. | proceedings in this case. We bring it to you only

24. | for the Court's information.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **21** of **69**

1.          HON. JUDGE: That' s not before this Court's consideration.

2.          ATTY. QUIÑONES: Understood, Your Honor.

3.     Only—

4.          HON. JUDGE: That's not what's happening here.

5.          ATTY. QUIÑONES: We want to be transparent about

6.     what, what's happening.

7.          HON. JUDGE: I can't solve what I don't have

8.     before this Court's consideration. Therefore—

9.          ATTY. QUIÑONES: It's informative, Your Honor. But

10.    I do, do mention it because we have inspected the

11.    files of the proceedings in the Federal Court and we

12.    know that documents are being produced.

13.          So to say that everything that exists,

14.    there's no— no—

15.          HON. JUDGE: In other words, what you're telling me is that

16.    what was produced yesterday is just what was produced— that, that

17.    Retirement produced in the Federal Court?

18.          ATTY. QUIÑONES: No. That other documents are

19.    being produced that here we are being told that are not

20.    available.

21.          MALE VOICES: (Unintelligible).

22.          ATTY. QUIÑONES: That other documents are

23.    being produced, that here—

24.          HON. JUDGE: Counsel—

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **22** of **69**

1.                          ATTY. ANDRÉU: Which are the other documents,

2.              brother counsel?

3.                          ATTY. QUIÑONES: The documents we've been told—

4.                          MALE VOICES: (Unintelligible).

5.                          HON. JUDGE: Counsel, no. Not this way.

6.                          ATTY. QUIÑONES: There's a representation here that

7.              the doc— there was representation at a meeting in April

8.              of this year that the servers of the Retirement System had

9.              been totally destroyed.

10.                         HON. JUDGE: Yes. And you're telling me that this hasn't

11.             been brought to the Federal Court.

12.                         ATTY. QUIÑONES: They haven't brought and—

13.                         HON. JUDGE: This statement. And they have taken

14.             documents. And I ask, and counsel for Retirement here today

15.             have stated here this morning that they have handed over all

16.             documents they received from, from the Retirement System.

17.                         ATTY. QUIÑONES: More than two and a half years ago.

18.                         HON. JUDGE: And I make a question— and I ask you

19.             if they're the same ones from the Federal Court. If you had the

20.             chance yesterday to check the 30-something thousand documents

21.             vis a vis what's in the Federal Court. Because it's not

22.             incompatible. So they didn't raise it there? Well, there may be

23.             30 thousand documents.

24.                         ATTY. QUIÑONES: It's just that electronic documents

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                              Page **23** of **69**

1.                        are being produced there that haven't, haven't been produced here.

2.            No electronic documents have been produced here. In other

3.            words, documents, emails, from computer servers.

4.            We haven't seen that in the production. What we have seen —

5.                    HON. JUDGE: That is, there are no emails in the disc.

6.                    ATTY. QUIÑONES: There are some, there are, there are some copies.

7.                    HON. JUDGE: In the disc they gave you yesterday with the

8.            30-something documents there are no emails?

9.                    ATTY. QUIÑONES: There are emails, but printed copies

10.           of the emails. Not as a result of an electronic

11.           search, the electronic file that comes directly

12.           from the computer. Which is the format in which nowadays

13.           electronic documents are produced. They're emails that may have

14.           been printed, stored in a physical file.

15.                   HON. JUDGE: That didn't come out of the computer.

16.                   ATTY. QUIÑONES: Didn't come out of the computer. And in the

17.           PROMESA proceedings, there are some communications that

18.           indicate that that searches are being made in electronic

19.           servers for dates prior to Hurricane María. And here they're

20.           telling us that the servers were destroyed. They told us

21.           that in April of this year. They represented to us that there would

22.           be an affidavit certifying that.

23.                   Then they told us, "Well, not all were destroyed.

24.                   Some were destroyed. But we'll give you an affidavit."

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019

1.    We don't have the affidavit yet. It's been seven months,

2.    been seven months, it shouldn't take so long to prepare

3.    an affidavit explaining it. I'm sure it's been

4.    more, more than two years since the hurricane.

5.        HON. JUDGE: Okay, well, look. Let's do something.

6.    The Retirement System has 20 days to produce a sworn

7.    statement saying that that is what they have, like they

8.    have stated here, well, of the Retirement System. Certifying

9.    that the evidence provided to the defendants is

10.   all the evidence that they have. And we save the situation

11.   like that.

12.       ATTY. QUIÑONES: We request, Your

13.   Honor, and we have one here, a Notice of Deposition to take

14.   the deposition of the person who gathered the documents that

15.   were produced last Thursday. In order to exactly understand

16.   what was done, because it is —

17.       HON. JUDGE: Ah well, then there's no need

18.   for the sworn statement.

19.       ATTY. QUIÑONES: Well, is that they are—

20.       HON. JUDGE: Because you'll take the—

21.       ATTY. QUIÑONES: There are two, two issues. Excuse me,

22.   Your Honor.

23.       HON. JUDGE: You will take a deposition under oath.

24.       ATTY. QUIÑONES: Yes, but this is regarding the

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **25** of **69**

1.     documents that were produced Thursday.

2.        HON. JUDGE: Exactly.

3.        ATTY. QUIÑONES: There's a separate subject, which is the, the

4.     destruction of the servers. And that subject we can also take

5.     a deposition of the person with knowledge of that subject, if identified

6.     by brothers counsel. I figure they can tell us who is

7.     the person with whom they have been talking about

8.     the destruction and evacuation.

9.        ATTY. HERNÁNDEZ: Your Honor, let me try to clarify. The

10.     PROMESA proceeding, of the Retirement System, is a proceeding

11.     much more extensive than the one at hand. There's discussion there —

12.     there the Retirement System, the Board, the Oversight Board submits it

13.     to bankruptcy proceedings. And the information that may be

14.     produced over there is not necessarily the same as ours

15.     here— the same as the one in this case.

16.        This case is a case of negligence that our —

17.     the plaintiffs are alleging that UBS has committed.

18.        Initially, excuse me, Federico Hernández Denton.

19.        We're claiming that the defendants

20.     incurred in negligence and a breach of contract in the

21.     process of advising and in the triple role — that ocup—- by UBS.

22.     And the documents relating to this case are about that. Whatever the

23.     Retirement or AAFAF may be submitting in the System's bankruptcy ,

24.     of the Retirement, should encompass much more than this.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **26** of **69**

1.                              We reiterate that we have submitted what

2.              Retirement has, has given us and we have handed over

3.              everything we have. And our intention in handing it over, last,

4.              last week, precisely— we have— we have not

5.              seated. And I believe that what brother counsel Andréu is

6.              recommending is very reasonable. We are in the best

7.              disposition to seat and dialogue with the other party

8.              in regard to— to what they have, they first have to assess

9.              what they have.

10.                             Making allegations here that we have submitted

11.             one thing and submitting another over there, without the

12.             defendants herein be able to specify which documents were submitted

13.             there and which— and what are the differences between those

14.             submitted here, it really seems to me—

15.                             HON. JUDGE: I think we can solve this.

16.             Take the set of re—the request for evidence and

17.             answer it. Answer it, "Look, in this disc, number one,

18.             you asked for this, well I handed over this. Number two,

19.             this does not exist. I don't have it. It was lost". But it must be answered.

20.             I think that's what they're asking for.

21.                             ATTY. QUIÑONES: Yes, correct.

22.                             ATTY. HERNÁNDEZ: That, that was what—

23.                             HON. JUDGE: That can't be, that can't be that

24.             you hand over a disc, "Here's everything".

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **27** of **69**

1.          ATTY. HERNÁNDEZ: Yes, Your Honor, we are

2.     doing the same thing they did to us. They, at a

3.     meeting we had—

4.          MALE VOICES: (Unintelligible).

5.          ATTY. QUIÑONES: No, that's not true. Not true.

6.          HON. JUDGE: Fine, but—

7.          ATTY. HERNÁNDEZ: Counsel, you just came into

8.     the case.

9.          ATTY. QUIÑONES: And I read the entire file before

10.    this hearing.

11.         HON. JUDGE: Counsel, counsel, listen. The fact that one

12.    party did it wrong, doesn't mean it's right. Both have

13.    to do it in the same way. Both parties must answer, "Well

14.    look, here's the request. Number one, well that it's— I don't know how

15.    you will identify it— it's in the disc, in the, paragraph so-and-so of the disc.

16.    Number two is in paragraph so, so, so, so, so". That

17.    answer, the same thing. The same goes for everybody else.

18.    Because otherwise, we're never going to be able to finish this.

19.         Now, another thing that attorney Hernández Denton

20.    said. This case, well, the controversy in this— that I have

21.    to resolve is not the same as the one in the Federal Court. And what

22.    they do there, well, fine and dandy. Whatever they do there, that is,

23.    right— I don't have— my jurisdiction doesn't extend that far. So in

24.    this case, the evidence that is going to be sought is the evidence

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                              Page **28** of **69**

1.  |  pertaining to the allegations about the nature of the transaction

2.  |  between UBS and the Retirement System.

3.  |      Look, what's at issue here is which

4.  |  representations, if any, did UBS make to the Retirement System

5.  |  when it sold, marketed, devise or did not devise the sale of these bonds.

6.  |  That's a controversy in this case. So that's the evidence that

7.  |  I need.

8.  |      ATTY. ANDRÉU: Your Honor, about that, if I may. Perhaps

9.  |  we could simplify this issue now, right now,

10. |  about the controversy, about that controversy. Because you see that

11. |  is precisely what is submitted in a Motion for Summary

12. |  Judgment in which the plaintiffs, as counsel Hernández

13. |  Denton said, allege that there's been a breach of the

14. |  fiduciary duty by— in the advice provided by UBS, which

15. |  they deny. No— We're not going to get into that now. Those are

16. |  allegations.

17. |      And, therefore, what is currently submitted in

18. |  Summary Judgment and what is imminent that brothers counsel

19. |  answer so as to comply, because they are the ones who

20. |  have said that they still don't have enough evidence to

21. |  oppose to some of the findings of fact proposed

22. |  as undisputed, then remove, limit, sorry

23. |  the discovery of evidence at this stage

24. |  just the part that has to do with that particular issue.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **29** of **69**

1.      With the issue that has to do with liability, so to

2.      speak. Because if there was no liability and you

3.      determine that there wasn't, well, there' s no need to address

4.      the other parts.

5.           And because, what happens. Many of the documents that I

6.      have seen that were sought in the Request for Documents

7.      address the issue of the damages caused to the

8.      Retirement System. And the part of the damages caused to the Retirement

9.      System, at least at this time, is not imminent conducting

10.     discovery in a case so complex

11.     in terms of documents, not the legal disputes, but

12.     in terms of documents.

13.          And I also propose, to facilitate this, to then

14.     limit this part of the documents to— and of request,

15.     to the part that has to do with what is pending to be

16.     resolved in our Motion for Summary Judgment. So it can be

17.     a bit easier. They have the chance, we— that request

18.     can be answered faster by both parties and we

19.     can move ahead with the proceedings.

20.          That's my proposal. And so both parties are granted a term

21.     to delimit those for that, to meet. And, then,

22.     a term for them to answer and continue from there.

23.          ATTY. HERNÁNDEZ: I want to add, Your Honor, if I

24.     may, Federico Hernández Denton. We are

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                     Page **30** of 69

1.          willing, if we are granted a term of 20 or 30

2.          days, to answer the same. We answer the request that

3.          they sent us and, and then we specify what has to

4.          do with us. Eh, in the— we answer the request

5.          that they, they sent us.

6.                    ATTY. ANDRÉU: And the part of liability gets easier.

7.                    ATTY. QUIÑONES: Your Honor, the requests that

8.          we have made addressed the subject of liability, not the subject of

9.          damages. Because the plaintiff's theory is closely — regarding

10.         liability, is closely intertwined with the

11.         subject of the alleged damages of the Retirement System

12.                   Because the argument of liability is that the

13.         revenues of the bond issuances didn't generate— didn't

14.         have the financial result over the next years,

15.         obviously to the issuances that were supposedly

16.         represented. That no such representation was ever made.

17.                   But, therefore, we need discovery not only

18.         as for the communications that took place before, during, and

19.         after about the issuances themselves, but how did the

20.         Retirement System invested the revenues of those issuances to

21.         see if it's really true, as a matter of liability,

22.         not damages, of liability, that those issuances didn't have

23.         the results that were supposedly represented.

24.                   Because if we cut the story by the end of the third issuance

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **31** of **69**

1.                    of bonds, no, that's not, that's not the plaintiffs' story.

2.                    The plaintiffs' story regarding liability goes on

3.                    through the following years, when supposedly

4.                    what was earned, the billions earned from those

5.                    issuances did not have the financial results that were

6.                    represented. And that' s where the claim of responsibility arises.

7.                         So they cannot pretend to segregate the issue from what

8.                    occurred in the, during the issuances of 2008, from what took place

9.                    afterwards. That's why we need the Discovery of

10.                   evidence. It's not a question of damages. Is in order to respond to

11.                   the arguments made in the Motion for Summary Judgment that

12.                   supposedly there was a, there was a performance, not

13.                   consistent with the performance that was represented.

14.                        So we need that discovery to be made

15.                   completely. And as I said before, there are some, some

16.                   statements made by the Court that the discovery in this

17.                   case wouldn't be bifurcated.

18.                        HON. JUDGE: Basically what— let's see if I understand it all. What

19.                   counsel is indicating is that in order to determine if there were

20.                   inadequate representations that breached the fiduciary

21.                   duty, which led to, UBS, which led to the debacle of the

22.                   Retirement System, well, they have to see the numbers.

23.                        ATTY. QUIÑONES: Sure. And that information—

24.                        HON. JUDGE: It can't just be a

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **32** of **69**

1.          discovery of what was represented to me, what was

2.          not represented to me, because it needs to be

3.          seen the results of those representations. It seems to me that

4.          is what brother counsel for, for UBS is saying. That there's

5.          no way— well I represented to them that if they did this, that

6.          would be the result. Well, they have to see which were the results.

7.                ATTY. QUIÑONES: They allege that UBS Trust made some

8.          recommendations as to how that money should be invested. Well,

9.          we want to see how it was actually invested. How has it been

10.         invested.

11.               MALE VOICES: (Unintelligible).

12.               ATTY. HERNÁNDEZ: We're talking (unintelligible).

13.               ATTY. QUIÑONES: To this day, how has this money

14.         been invested. We have to see those financial

15.         statements that have not been produced.

16.               HON. JUDGE: No. What is being alleged is that, in

17.         light of UBS' advice and representations made to the

18.         Retirement System, the Retirement System took on the

19.         sale of some bonds that were to generate a return that didn't,

20.         didn't generate at all what was expected, which was a positive

21.         arbitrage. Those are the allegations.

22.               But I also understand what the defendants are

23.         saying. It is saying, "Well, let me see what

24.         were the results. Whether or not there was that positive arbitrage".

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **33** of **69**

1.   ATTY. QUIÑONES: And, indeed, there are financial state—

2.   HON. JUDGE: And that's what he's doing, I mean,

3.   requesting the discovery.

4.   ATTY. ANDRÉU: Up to here—

5.   ATTY. QUIÑONES: Excuse me, brother counsel. As for the

6.   topic of how investments have behaved and what is the

7.   financial condition of the Retirement System, we believe that the

8.   PROMESA proceedings— and we bring it in as a matter of

9.   comparison, Your Honor— counsel for, for the Retirement

10.  System, through the Oversight Board in those

11.  proceedings are— we believe that they have produced or are

12.  in the process of producing that information that has not been

13.  produced here. That's why we bring up the difference.

14.  HON. JUDGE: But, look, look. I can't, I can't give brothers

15.  counsel for the plaintiffs the guidelines on how to handle

16.  their case.

17.  ATTY. QUIÑONES: Well, they have to comply with the—

18.  HON. JUDGE: If they haven't brought it, they haven't brought it. Well

19.  I have to resolve with what they bring, you see? With what they

20.  bring. But I have to set it within the boundaries of

21.  a controversy. And I think that's the controversy.

22.  But I also understand what the defendants are telling

23.  me, "Well, you have to prove to me that no such positive arbitrage

24.  took place". And that evidence, well, are the numbers.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                  Page **34** of **69**

1.              ATTY. QUIÑONES: And we want to see if, want to see

2.      if the Retirement System followed UBS Trust's recommendations.

3.              HON. JUDGE: Exactly. If it followed the recommendations because

4.      if it followed the recommendations, then, according to UBS, then it should

5.      have had a positive arbitrage.

6.              ATTY. QUIÑONES: Correct. If the market has generated— there's

7.      been an extraordinary bull market since— those issuances were

8.      made. So we don't understand the allegation made by the party,

9.      plaintiffs. But we must see if, in fact, it invested

10.     the revenues in the way that it was, it was recommended.

11.             And that information is not about damages. They are refusing to

12.     produce that documentation alleging that is about damages. And is

13.     part of their own theory of liability.

14.             ATTY. PUJOLS: Your Honor, excuse me. Francisco

15.     Pujols, for the plaintiffs.

16.             Your Honor, indeed, the controversy has

17.     two parts. The first is to prove civil liability for damages

18.     due to negligence. And the other is to determine the

19.     amount of the damages. I respectfully submit that the

20.     first part don't necessarily have to quantify how much

21.     the damages were to establish that there were damages.

22.             HON. JUDGE: We are clear.

23.             ATTY. PUJOLS: The representations made by UBS, and

24.     are crystal clear, despite what brother counsel

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                      Page **35** of 69

1.          Quiñones alleges, UBS told to the System, "We'll issue 3 billion

2.          dollars in bonds. In fact, we'll issue more,

3.          if possible. And those bonds will generate a positive arbitrage

4.          and improve the System's funded ratio". And Judge—

5.                  HON. JUDGE: Ok, stop right there, stop right there.

6.                  ATTY. PUJOLS: That—

7.                  HON. JUDGE: The evidence.

8.                  ATTY. PUJOLS: The evidence that we have is enough

9.          for that.

10.                 HON. JUDGE: What is the evidence to show whether or not

11.         there was a positive arbitrage?

12.                 ATTY. PUJOLS: The evidence to show if there was

13.         a positive arbitrage are the System's own financial

14.         statements, showing the interest income and the

15.         interest expenses.

16.                 HON. JUDGE: And has it been handed over?

17.                 ATTY. PUJOLS: Is included in the System's financial

18.         statements, which is public information.

19.                 HON. JUDGE: Has this documentation been hand over to them?

20.                 ATTY. PUJOLS: I understand, I understand that it was.

21.                 HON. JUDGE: The financial statements?

22.                 ATTY. QUIÑONES: We haven't seen them in the documents

23.         produced by the plaintiffs

24.                 HON. JUDGE: They haven't seen them in the documents produced.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **36** of **69**

1.          ATTY. PUJOLS: Perhaps they are not—

2.          HON. JUDGE: because those aren't, well, those aren't

3.     the damages.

4.          ATTY. PUJOS: Precisely, those aren't the damages, and

5.     we have no problem with producing that to the extent

6.     they exist.

7.          HON. JUDGE: Therefore, were they produced

8.     or not?

9.          ATTY. PUJOLS: Your Honor, I honestly haven't

10.    reviewed the 30-something thousand pages.

11.         HON. JUDGE: Well, that has to be produced.

12.         ATTY. PUJOLS: All right. In some —

13.         HON. JUDGE: Excuse me?

14.         ATTY. ANDRÉU: I'm guessing there are some in there.

15.         ATTY. PUJOLS: That's precisely why we've

16.    asked for some time.

17.         ATTY. ANDRÉU: (Unintelligible).

18.         ATTY. PUJOLS: If something is missing, they can say so in the

19.    time left. Look at what we've produced. If something is missing, they can

20.    tell us and we'll gladly produce it. In fact, this afternoon

21.    we'll produce 1,545 more pages.

22.         HON. JUDGE: Counsel, the thing is that it doesn't, doesn't work

23.    like that. The rules don't work like that. They sent a

24.         Production of Documents and told you, "I want this, this,

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                    Page **37** of **69**

1.          this", right? —

2.                    ATTY. PUJOLS: Yes.

3.                    HON. JUDGE: You have to answer it.

4.                    ATTY. PUJOLS: Of course.

5.                    HON. JUDGE: "I'm sending you this, this, this".

6.                    ATTY. PUJOLS: As— Yes, Your Honor, as we submitted

7.          a prod—

8.                    HON. JUDGE: As well.

9.                    ATTY. PUJOLS: They have to do the same.

10.                   HON. JUDGE: I said it earlier. The defendants have to do

11.         the same. The same exercise.

12.                   ATTY. PUJOLS: We have no, have no objection

13.         that this exercise be carried out. We are clear that this exercise should be

14.         carried out. All brother counsel Andreu said was that maybe we

15.         could carry out that exercise first in the part corresponding to,

16.         liability, whether or not there was negligence—

17.                   HON. JUDGE: Exactly—

18.                   ATTY. PUJOLS: —before addressing the amount of damages.

19.                   HON. JUDGE: But look, you told me, you have told

20.         me, "The determination of whether or not there was a positive

21.         arbitrage can be seen from the financial statements".

22.                   ATTY. PUJOLS: Yes.

23.                   HON. JUDGE: I asked, "Are the financial statements there,

24.         were they handed over?"

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **38** of **69**

1.                    ATTY. PUJOLS: I personally don't know the answer.

2.                    HON. JUDGE: And brother counsel for the defendants

3.         have said, "No, there are no financial statements". Well that

4.         evidence is certainly essential.

5.                    ATTY. PUJOLS: Your Honor, agreed. I personally don't know

6.         if the financial statements are included in the 30-something thousand

7.         documents. I have no personal knowledge.

8.                    HON. JUDGE: Exactly.

9.                    ATTY. PUJOJLS: But if—

10.                   HON. JUDGE: But then, that exercise of the

11.        30-something thousand documents must be carried out.

12.                   ATTY. PUJOLS: Must be, must be carried out. But aside from that,

13.        it's clearly established in the Conway MacKenzie report,

14.        that indeed it didn't happen—

15.                   ATTY. ANDRÉU: That's part

16.                   ATTY. PUJOLS: —the positive arbitrage. And that's part of the

17.        production that, as you have well alleged, you even have

18.        about eight copies of that already.

19.                   HON. JUDGE: Fine.

20.                   ATTY. PUJOLS: It is said and—

21.                   HON. JUDGE: But they want to see the statements.

22.                   ATTY. PUJOLS: Agreed. No problem.

23.                   ATTY. ANDRÉU: In fact, in the binders that the, that UBS

24.        sent to the plaintiffs, I personally saw those

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **39** of **69**

1.              financial statements. And were part of the analysis made by

2.              MacKenzie.

3.                    HON. JUDGE: Are they there?

4.                    ATTY. QUIÑONES: No, but the analysis— we're talking about

5.              the financial statements from 2008 onward. That hasn't been produced.

6.              We want to see how were the revenues from the bonds invested. That hasn't

7.              been produced and we want to take the deposition of the persons in charge

8.              of making those investments. To determine why did they make the

9.              decisions that they made. That hasn't happened. Not that discovery.

10.                   ATTY. ANDRÉU: There are 2006, 2007 y 2008.

11.                   ATTY. QUIÑONES: And all that, and all that, Your Honor—

12.                   HON. JUDGE: Two thousand six, 2007, and 2008. The last bond

13.             issuance was in June 2006.

14.                   ATTY. QUIÑONES: Two thousand eight.

15.                   ATTY. ANDRÉU: Two thousand eight.

16.                   ATTY. QUIÑONES: Two thousand eight. Those three. Precise—

17.                   HON. JUDGE: Ah, sorry, June 26, 2008.

18.                   ATTY. QUIÑONES: But precisely what we need is

19.             the subsequent. To see how they were invested. What were the results

20.             of those, of those investments. That's the information that

21.             we need.

22.                   HON. JUDGE: The results of the investments.

23.                   ATTY. PUJOLS: The results of the investments, down to the last cent,

24.             of every investment made as of today, that hasn't been

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **40** of 69

1.          submitted and I haven't seen it.

2.                We are clear that there were some investments that aren't

3.          producing what they should have produced and that's shown in

4.          the System's financial statements, that clearly the interest expenses

5.          exceed the interest income.

6.                HON. JUDGE: But does the defendants have that,

7.          counsel?

8.                ATTY. PUJOLS: They have financial statements up to,

9.          which are included in the Conway MacKenzie report.

10.               ATTY. QUIÑONES: Two thousand eight is prior to the

11.         production.

12.               HON. JUDGE: OK.

13.               ATTY. PUJOLS: If they want additional ones, I don't, again, I don't

14.         have personal knowledge that they'd be in the 30-something documents.

15.         I am sure that they can be produced because the System does

16.         have them—

17.               HON. JUDGE: OK.

18.               ATTY. PUJOLS: And if some are missing, after carrying out the

19.         exercise, we'll gladly produce it.

20.               HON. JUDGE: Let's delimit the date, date of the

21.         financial statements.

22.               ATTY. QUIÑONES: Up to now.

23.               HON. JUDGE: Because there are up to 2008.

24.               ATTY. QUIÑONES: Up to now, counsel for, for the—

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019

1.  ATTY. ANDRÉU: Up to now?

2.  HON. JUDGE: Well—

3.  ATTY. QUIÑONES: Up to now.

4.  HON. JUDGE: —I'm saying what he's requesting.

5.  That is, what he is requesting. He is requesting they'd be up

6.  to now.

7.  ATTY. PUJOLS: If they'd be not audited, the last internal,

8.  statements that the Retirement System has can be

9.  produced. But audited statements up to now, there aren't any.

10. ATTY. QUIÑONES: Well, then not audited, then

11. up to now. Audited—

12. HON. JUDGE: Not audited up to now.

13. ATTY. QUIÑONES: No, excuse me, Your, Your Honor. Audited

14. for the years that are audited. And those that aren't

15. audited yet, then not audited.

16. HON. JUDGE: After 2008, all audited statements,

17. because they have the previous ones.

18. ATTY. PUJOLS: Whatever there is.

19. HON. JUDGE: OK, after 2008, every audited [financial]

20. statement. Every statement. And after 2008, every statement,

21. even if not audited.

22. ATTY. PUJOLS: If I may.

23. HON. JUDGE: In other words, they are requesting

24. every audited there is from 2008 plus each up to now.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **42** of **69**

1.              ATTY. PUJOLS: Without implying—

2.              ATTY. QUIÑONES: And with enough details. Excuse

3.      me, counsel—

4.              HON. JUDGE: Well—

5.              ATTY. QUIÑONES: —to, to clarify. And with enough details

6.      to see which investments were made. Because if they are

7.      statements that are flying at 35,000 feet and don't have

8.      that detail, well then, we won't have the information that

9.      we need to explore the argument that —

10.             HON. JUDGE: Well, it has to be the ones that there are.

11.             ATTY. QUIÑONES: Well, but we need the

12.     information showing which were the investments.

13.             HON. JUDGE: Exactly, the ones that there are.

14.             ATTY. PUJOLS: Your Honor, —

15.             HON. JUDGE: I am saying everything that there is.

16.             ATTY. PUJOLS: —brother counsel is requesting a—

17.             HON. JUDGE: That they're not going to produce them now.

18.     They're not going make them.

19.             ATTY. PUJOLS: —a logbook. He is requesting a logbook of

20.     investments, not a financial statement.

21.             ATTY. QUIÑONES: But that's the plaintiffs'

22.     argument.

23.             ATTY. PUJOLS: Excuse me.

24.             HON. JUDGE: But—

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **43** of **69**

1.                    ATTY. PUJOLS: Excuse me. It can be established—

2.                    HON. JUDGE: —listen, please. Listen. You must

3.          listen to each other. Go on.

4.                    ATTY. PUJOLS: Yes. It can be established whether or not there was

5.          positive arbitrage with the financial statements, even though they

6.          contain general information. If we were to go then

7.          to specific details, already in the section of the, of the part—

8.          computation of damages, well, a more accurate calculation

9.           will have to be made.

10.                   But in order to having, to determine whether there was

11.         liability, the financial statements are enough to

12.         determine that, indeed, the System had revenues for

13.         and dividends or interests in its investments lower that the expense

14.         it had by interest in the bonds.

15.                   And that's what the general financial statements are for.

16.         And I understand that they should be the ones that are audited,

17.         to the extent that there are, from 2008 onward. And to the

18.         extent that the not audited, for those

19.         periods not covered by the audited, will be

20.         not audited.

21.                   ATTY. QUIÑONES: May I, Your Honor? Maybe

22.         the plaintiffs had the idea that they could file a

23.         case alleging more than 800 million dollars in losses.

24.                   And then simply produce financial statements and the

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **44** of **69**

1.         case is over. It's not like that.

2.              They have outlined a specific theory as to

3.         liability in terms of the performance of the revenues from

4.         bonds issued in 2008, OK? They are alleging that

5.         such revenues later didn't generate the return that purportedly

6.         had been represented to them. So, we have to see, then,

7.         how were those revenues invested. We need enough

8.         information to determine how were those revenues invested.

9.         Financial statements that may perhaps have a page of assets

10.        and the—

11.             HON. JUDGE: But you haven't seen them.

12.             ATTY. QUIÑONES: That doesn't, that doesn't answer our question.

13.             HON. JUDGE: You have to wait. You haven't seen them.

14.             ATTY. QUIÑONES: Well—

15.             HON. JUDGE: You have to wait.

16.             ATTY. QUIÑONES: My point is—

17.             HON. JUDGE: Or have you seen them? You haven't seen them.

18.             ATTY. QUIÑONES: My point is, Your Honor, if I may. My point

19.        is that eventually what we need to see is exactly

20.        how the revenues from the issuances were invested.

21.             HON. JUDGE: OK, OK.

22.             ATTY. QUIÑONES: And we need that—

23.             HON. JUDGE: I understand. What I believe he's saying—

24.             ATTY. PUJOLS: I agree—

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **45** of 69

1.      HON. JUDGE: —right, is that UBS, if UBS gave some

2.      recommendations on how to invest the revenues in order

3.      to have a positive arbitrage, well, I want to know, I, UBS,

4.      want to know if they followed my recommendation on putting the money

5.      where they had, where I had suggested, I recommended to them.

6.      ATTY. PUJOLS: Look, Your Honor, sorry to

7.      interrupt. UBS—

8.      HON. JUDGE: Is it or isn't it?

9.      ATTY. PUJOLS: —UBS recommended—

10.      ATTY. QUIÑONES: Yes, exactly. That's one of the matters,

11.      Your Honor. Because we'll also go to—

12.      HON. JUDGE: OK.

13.      ATTY. QUIÑONES: —that arises from the premise that, indeed,

14.      the recommendations that brothers counsel allege were

15.      given by UBS, not by Merrill Lynch. Because counsel

16.      made a statement about some alleged representations

17.      of a, of a positive arbitrage. That wasn't made by

18.      UBS. That was made by Merrill Lynch in 2006-2007.

19.      HON. JUDGE: That's for me to decide —

20.      ATTY. QUIÑONES: But we need—

21.      HON. JUDGE: —with the evidence I receive.

22.      ATTY. QUIÑONES: But, my point is, Your Honor, there

23.      are other issues. There are other issues in this case for which we want to

24.      carry out discovery as well. Because we neither have, right,

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **46** of **69**

1.          to simply accept the theory of the plaintiffs.

2.          We want to make a discovery about the minutes as well,

3.          the electronic communications and the entire system.

4.               HON. JUDGE: Exactly.

5.               ATTY. PUJOLS: We're not opposed to that.

6.               HON. JUDGE: But I think everyone agrees

7.          with that. And counsel Andréu said that he had no objection

8.          in conducting discovery about, well, this, those

9.          documents that were handed over to them. Specifically, that it is asserted in the

10.         opposition. The minutes, which are minutes that, that, well, couldn't

11.         be authenticated, that they want, well, they want to know.

12.              ATTY. QUIÑONES: Drafts of the minutes, Your Honor.

13.              HON. JUDGE: From when did the minutes, well, the minutes

14.         come from, who made them.

15.              ATTY. QUIÑONES: We understand—sorry to

16.         interrupt, Your Honor.

17.              HON. JUDGE: Go ahead.

18.              ATTY. QUIÑONES: But we understand— we favor the,

19.         the proposal of a special master in this case to supervise

20.         the discovery of evidence. And not having to burden the court with

21.         day-to-day issues of discovery of evidence. And so we

22.         agree with that, that position.

23.              HON. JUDGE: Exactly. But look, let me tell you. In this courtroom,

24.         well, I, I know and you all know that there's a lot of work.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **47** of **69**

1.          But I don't like appointing masters. That's not a, a

2.          matter taken lightly. Certainly here I'm

3.          trying— almost always when I've appointed a

4.          master, I give the, the discovery finalized

5.          so that it can then continue, with, with, with the process of

6.          assisting us.

7.              But, I hope that after today you can

8.          reach an understanding on the documentary evidence and can

9.          purge what is truly relevant. That's why

10.         we have this discussion, right? That's why I listen to you,

11.         try to— I'm trying to really define what is that we'll

12.         resolve, so that in order not to embark on

13.         a discovery of evidence out of proportion and

14.         that, and that won't really add anything to the controversy

15.         that I have before me.

16.             Because, again, using the example of the US

17.         District Court, there's another matter over there.

18.             ATTY. QUIÑONES: Well, if I may, Your Honor,

19.         there's a matter that they are—

20.             HON. JUDGE: There's another matter over there.

21.             ATTY. QUIÑONES: They are related.

22.             HON. JUDGE: Which has tangency with this one, yes.

23.             ATTY. PUJOLS: Your Honor—

24.             ATTY. QUIÑONES: The bond issuances are being challenged

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **48** of 69

1.     in those proceedings, just as they are being challenged here,

2.     Your Honor.

3.          MALE VOICES: (Unintelligible).

4.          ATTY. PUJOLS: Your Honor, that's totally false,

5.     what he's saying.

6.          ATTY. QUIÑONES: They are being challenged in an adversary

7.     proceeding , the bonds issued by the Retirement System.

8.          ATTY. PUJOLS: But that's not being challenged here. And

9.     you're saying that we're challenging that.

10.         HON. JUDGE: Counsel—

11.         ATTY. QUIÑONES: The, the validity of

12.    those issuances is being contested.

13.         HON. JUDGE: No—

14.         MALE VOICES: No—

15.         ATTY. PUJOLS: No, sir.

16.         ATTY. ANDRÉU: No one has contested them.

17.         ATTY. HERNÁNDEZ: No one has contested them.

18.         HON. JUDGE: Again. Here it's being alleged that UBS gave

19.    an advice that deviated from the fiduciary duty that,

20.    according to the plaintiffs, it had to the Retirement System. Because it

21.    wanted to profit from that sale. Because as a result of that sale, it

22.    collected $35 million in commissions.

23.         And then, the Retirement System followed

24.    UBS' recommendations and by following UBS' recommendations,

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                         Page **49** of 69

1.          well, it was negatively impacted because the

2.          recommendations given by UBS did not generate the

3.          expected results.

4.                  There's no mention here that those bonds are wrongly

5.          issued, are illegal, whatever. I'm not going to resolve that—

6.                  ATTY. PUJOLS: It's not presented.

7.                  HON. JUDGE: —the validity of the bonds. They've already been issued.

8.                  ATTY. PUJOLS: Your Honor, you're right.

9.                  HON. JUDGE: There are some results.

10.                 ATTY. PUJOLS: You're right. And the damages, the damages,

11.         what can happen—

12.                 HON. JUDGE: There is a difference between what's alleged over

13.         there and what's alleged over here.

14.                 ATTY. QUIÑONES: Your Honor, we also did a—

15.                 HON. JUDGE: At least from the allegations of the Fourth

16.         Amended Complaint, which simplified a lot the process since

17.         well, if you were, were telling me of 2011 when we began,

18.         when we had a bunch of defendants, well— but what we have

19.         now is the action filed by the Retirement against UBS because it violated,

20.         breached— because it basically breached its fiduciary duty in advising it

21.         to get into this process. But you're not telling me that the sale

22.         was illegal or anything of the sort.

23.                 ATTY. QUIÑONES: Well, we notified some

24.         interrogatories, Your Honor, almost a month ago or more, that will

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **50** of **69**

1.        precisely clarify the plaintiffs' position and sought

2.        information about other subject matters as well. Those answers

3.        were due this past week. What we received was a Request for, for

4.        a Protective Order.

5.              In addition to the answer to the Request for Documents

6.        that was notified two and a half years ago, we'd also like that

7.        the plaintiffs be required to answer those

8.        interrogatories. After that, Your Honor, we reserve the

9.        right to take the depositions of the individuals who

10.       gathered the documents that were produced last

11.       Thursday. And also the deposition regarding the alleged

12.       destruction of servers of the Retirement System by

13.       Hurricane María.

14.             I believe, believe that those are main aspects that

15.       must be clarified in order to fully comprehend the

16.       scope of, of the production that has been carried out in this case.

17.       And see whether or not it's complete.

18.             So we request that they answer the request for

19.       documents, answer the interrogatories. And then we'll

20.       take the depositions of the individuals that have more

21.       knowledge of that production of documents and about the

22.       matter of the, of the destruction, the alleged destruction of

23.       the Retirement System's servers.

24.             So we're clear on what we have. If we

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                    Page **51** of **69**

1.          really have everything that, that is

2.          physical or electronic documentation of the Retirement System

3.          relevant to this case .

4.                    ATTY. PUJOLS: Your Honor, attorney Pujols for the,

5.          representing the plaintiffs. The plaintiffs have no

6.          objection to producing every document they

7.          find, that indeed exist. Neither to answering the

8.          interrogatories. Obviously, provided that the defendants

9.          also comply with their obligation to answer the

10.         Request for Production of Documents as they were presented

11.         and not in the general manner in which they handed them over, as

12.         we did as well. That must, must be done like that.

13.                   As for the controversy asserted in this case,

14.         it definitely has nothing to do with whether or not

15.         the bonds are null. A damage has resulted here. If the

16.         bonds, if the bonds are eventually declared null, the amount of

17.         the damages may perhaps vary vis a vis if declared that they are valid.

18.         But that controversy is not submitted here nor is part of this

19.         case, as you very well say. And it seems that counsel Quiñones

20.         hasn't, hasn't understood.

21.                   We are not asking, in this case, that the bonds

22.         be declared null. But rather to simply compensate—

23.         UBS— for the damages caused by the wrong advise given by

24.         UBS in violation to its fiduciary duties. That's all.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **52** of **69**

1.                              As for the production and the requirements, I understand

2.              that maybe we should carry out the production in two stages. And

3.              that would ease, as counsel Andréu said, maybe we should

4.              concentrate first on whatever necessary to be able to

5.              elucidate or adjudicate the Motion for Summary Judgment that has

6.              been filed and continue with the production, but maybe divided

7.              in two stages to make it easier. I submit this as a

8.              possibility.

9.                              ATTY. QUIÑONES: Your Honor, we need—

10.                             HON. JUDGE: Tell me.

11.                             ATTY. ANDRÉU: Briefly—

12.                             —so, so you can see why is it that I say that we have to meet

13.             and why is it important, really, in the best of good faith, what I want

14.             is to see how can we solve this and speed up the process. Because

15.             look, and I'm not blaming anything to anyone.

16.                             The index of documents produced by UBS on May 26, 2017,

17.             that I have here, and I can show it to you, shows that they

18.             themselves produced the financial statements of, of the Retirement s

19.             System as of 2008, 2009, 2010, 2011, and 2012, and 2013 the last one, of

20.             June 30.

21.                             HON. JUDGE: Of the Retirement System?

22.                             ATTY. ANDRÉU: Of the Retirement System. So, that's why earlier I

23.             said from there that they themselves had sent them to us. And the thing

24.             is, look, I don't want to get here in, into fights that are not

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **53** of **69**

1.     necessary. Brother counsel just got here. I just got here as well.

2.     That's why maybe I understand this a little bit more because

3.     I have been able to see this more thoroughly in trying to

4.     catch up, right?

5.         And the problem I'm seeing here is that I, once again,

6.     if brothers counsel sit with the 30-something thousand documents

7.     plus the ones we'll give them today. That, again, I'm saying this in the best

8.     of good faith, to give everything. Then give them 120 days, judge. And we'll

9.     meet with them, we answer the, the request. They answer ours

10.     because we have objected to it. It's even in the initial

11.     report. And then, we sit down to see what

12.     we have.

13.         Now, the thing is that we cannot lose track of

14.     what is pending in this court. And the Rules of Civil Procedure

15.     must be complied with. We filed a Motion for

16.     Summary Judgment. They had to oppose and they did. And

17.     regarding several facts proposed as uncontroverted, and

18.     have requested discovery for that. And what I'm seeing

19.     here is that it's turning into, to

20.     "give me everything and I want to see everything".

21.         And we have given them everything, fine. But, but, but let's put this

22.     case back on track. If there's a Motion for Summary Judgment, have them

23.     answer the, the motion pursuant to Rule 36.6. And they have stated the

24.     facts for which they want the discovery, which are three. I can read them

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                           Page **54** of **69**

1.          to you. Three of them really meaningless. But, but we've given everything.

2.                    And then, answer. Yes— the court will then have to

3.          resolve the motion, because unfortunately that's the process. And

4.          then, we'll see. We'll see because, cause the court may

5.          do several things. One is deny it. But by denying it, the

6.          jurisprudence provides that findings of facts must be

7.          made, that aren't— uncontroverted. And then, when the court makes

8.          the uncontroverted statement of facts and

9.          which ones are controverted, the discovery is limited

10.         to those uncontroverted. Or the court may decide to

11.         grant the Motion for Summary Judgment. And then,

12.         the discovery will also be limited to the second stage of the case,

13.         as for the damages, right? So the Motion for Summary Judgment

14.         mechanism is there and will limit the matter.

15.                   We certainly acknowledge that we had to hand over

16.         some documents. We are handing them over, so they can

17.         finish their opposition. It isn't that—here, to be clear.

18.         They already opposed. They filed documents, filed

19.         sworn statements. And what's left, again, two or three findings of

20.         fact that they have said that are not in position to yet

21.         because they didn't have the documents.

22.                   Well, as for that, they can oppose to it. They can oppose to it

23.         in 120 days. And then, continue from there, Your Honor. But we cannot

24.         continue undermining the process with a Motion for Summary

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **55** of 69

1.          Judgment still pending. Then, him asking and goes on asking and asking,

2.          asking things that they themselves produced. And that's the process.

3.               ATTY. QUIÑONES: Your, I don't know— I don't know what opposition

4.          did brother counsel read. But the Opposition to the Motion for Summary

5.          Judgment filed by the defendants in this case has over 90 pages,

6.          in which we repeatedly stated, "This motion cannot be resolved without

7.          having completed the discovery of evidence".

8.               The defendants, the court can recall, in 2000— 2007 raised

9.          the defense of, of statute of limitations or Motion to Dismiss.

10.         And the court stated that that a discovery had to be carried out.

11.              HON. JUDGE: Look counsel. The Court of Appeals already

12.         resolved that.

13.              ATTY. QUIÑONES: And the Court said—

14.              HON. JUDGE: And revoked. Revoked what I did.

15.              ATTY. QUIÑONES: —and the Court of—

16.              HON. JUDGE: So we began with the Fourth Amended

17.         Complaint.

18.              ATTY. QUIÑONES: And we'll raise—

19.              HON. JUDGE: Just so we' re clear on this. I'm clear about it.

20.         That is revoked. Wasn't even modified, it was revoked. So that, for the

21.         purposes of this case, this began with the Fourth Amended Complaint. And

            that's where we are.

22.              ATTY. QUIÑONES: And regarding the subject of statute of limitations,

23.         the Court of Appeals said that it had to be resolved as a matter of

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **56** of 69

1.          Motion for Summary Judgment. Not as, as a matter of Motion

2.          to Dismiss.

3.              HON. JUDGE: What the Court of Appeals said was that I had

4.          to make findings of fact, which I didn't do, which I

5.          should have done. And to make them, well then, to that end we're

6.          discussing who we'll be conducting the discovery

7.          of evidence.

8.              Regarding the Opposition to the Motion for Summary

9.          Judgment, since I am clear that the defendants admitted a series of

10.         facts, about 20 facts. And objected 18, and

11.         from 21 to 76.

12.             ATTY. ANDRÉU: For several reasons.

13.             ATTY. QUIÑONES: Yes.

14.             HON. JUDGE: For several reasons.

15.             ATTY. ANDRÉU: Not because they hadn't

16.         necessarily conducted discovery.

17.             ATTY. QUIÑONES: And we need it to be completed —

18.             ATTY. ANDRÉU: Many of the reasons because they believe that

19.         the evidence is not admissible. We'll reply to that.

20.             HON. JUDGE: And another about the evidence, which I have here,

21.         the Kobre report.

22.             ATTY. QUIÑONES: Kobre & Kim.

23.             HON. JUDGE: Kobre & Kim. Which was attached—

24.             ATTY. QUIÑONES: Correct

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                         Page **57** of **69**

1.                    HON. JUDGE: —for the defendants of the case to,

2.          to, according to their motion, dispute.

3.                    ATTY. QUIÑONES: Well, it's hearsay evidence, that report,

4.          as the Conway MacKenzie report is hearsay evidence, Your Honor.

5.          But that report shows, that report refutes the main conclusions

6.          made by Conway MacKenzie. But it's also hearsay evidence

7.          as well. We brought it here to show that is missing—

8.                    ATTY. ANDRÉU: We're not going to get into that now.

9.                    ATTY. QUIÑONES: Excuse me, brother counsel. We brought it

10.         up, Your Honor, only to establish that the court must have the benefit

11.         of having the evidence in order to make its own

12.         findings and not rely on hearsay evidence, neither on Conway

13.         MacKenzie nor Kobre & Kim. But rather to have a full discovery of evidence

14.         so that the parties, then, can litigate this case based on the

15.         evidence, not on counsel's arguments and theories, but rather

16.         based on the evidence.

17.                   That hasn't happened here. There are no answers to the

18.         requests for production, there are no answers to

19.         interrogatories. And what the plaintiffs pretend that we tell

20.         them the documents that are missing. I don't know

21.         what's inside the files of the Retirement System. They are the ones

22.         who must act dul— with due diligence to produce.

23.                   HON. JUDGE: Exactly. But the plaintiffs do need you to

24.         tell them what documents do you want.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **58** of 69

1.  |  ATTY. QUIÑONES: Well, there's a Request for

2.  |  Production.

3.  |  HON. JUDGE: What documents will they use.

4.  |  ATTY. QUIÑONES: There's a Request for Production

5.  |  from two and a half years ago.

6.  |  HON. JUDGE: Exactly. And we'll start from there, that yesterday

7.  |  you were handed a disc full of papers, of documents.

8.  |  Let's do the following.

9.  |  ATTY. HERNÁNDEZ: If I may, your Honor. The

10. |  Request for Production is of the Third Amended Complaint.

11. |  Already the four— we are in the Fourth Amended Complaint.

12. |  ATTY. ANDRÉU: (Unintelligible).

13. |  ATTY. QUIÑONES: There is no material difference, Your Honor.

14. |  No material difference. There are 6 or 7 paragraphs that make reference

15. |  to the Third Amended Complaint.

16. |  HON. JUDGE: (Unintelligible).

17. |  ATTY. QUIÑONES: But either way, the fact that there

18. |  are some, some allegations that changed, which are minimal,

19. |  for example, in regard to, to counsel Mayol, who at the time

20. |  was a defendant and there were allegations as to his

21. |  conduct as administrator of the Retirement System, now

22. |  submits a statement for the plaintiffs. Well, they don't want

23. |  to answer those interrogatories.

24. |  They made that allegation with respect to the counsel

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **59** of **69**

1.        Mayol and we ne— we are entitled to conduct discovery of

2.        evidence. Regardless of had been alleged or not in the

3.        Fourth Amended Complaint. So, those

4.        allegations are judicial admissions from the plaintiffs and we

5.        are entitled to conduct discovery. But they are, they are a few

6.        differences.

7.               ATTY. ANDRÉU: The allegations are not an issue of anything.

8.               ATTY. QUIÑONES: The gross, gross, the gross of the

9.        requirement does not depend on, whether it is Third or Fourth

10.       Amended Complaint. That was frankly a pretext

11.       not to respond the request.

12.              HON. JUDGE: OK. Let's do the following. Get your

13.       agendas, because you have to meet. Again. The plaintiffs,

14.       the plaintiffs tell me how much time do you

15.       need to answer, answer the Set of

16.       Request of Information notified by the defendants.

17.       Answer it. Not a motion "Here you have".

18.              ATTY. HERNÁNDEZ: But is it the Request of the Third

19.       Amended Complaint?

20.              HON. JUDGE: Whichever is still pending.

21.              ATTY. HERNÁNDEZ: Because there's no—

22.              HON. JUDGE: Aren't there... haven't they sent another one?

23.              ATTY. HERNÁNDEZ: They haven't sent another request.

24.              ATTY. QUIÑONES: Your Honor, again, there are only a few

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **60** of **69**

1.          paragraphs that mention the Third Amended Complaint.

2.          They should answer it.

3.              HON. JUDGE: So let's do this. I'll do it

4.          another way. I'll do it this way. The plaintiffs are

5.          going to review every document they have.

6.              FEMALE VOICE: Defendants.

7.              ATTY. QUIÑONES: Defendants.

8.              HON. JUDGE: Sorry, defendants. Every document what were

9.          required— sent. From that review, if

10.         there's something that's not clear, if there's anything to supplement,

11.         will send that requirement of what's missing. All right? Of what's,

12.         what's missing.

13.             ATTY. QUIÑONES: It's that, it's that no—

14.             HON. JUDGE: Look, if the financial statements are in that

15.         set of documents, well don't request them, because there they are.

16.             ATTY. QUIÑONES: But shouldn't the process, under the

17.         Rules of Procedure that the plaintiffs answer the

18.         request that we notified two and a half years ago?

19.             HON. JUDGE: What happens is that since you are saying that is

20.         from the Third Amended Complaint, then I want, I want that any

21.         reference to the Third Amended Complaint be elimi—

22.         eliminated and overcome. I'll give the same opportunity to

23.         both parties.

24.             ATTY. QUIÑONES: Your Honor, if I may. Of 73

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **61** of **69**

1. | requests in the paragraph of requests, 54 make no

2. | reference to the Third Amended Complaint.

3. |     HON. JUDGE: Even better. Eliminate them and put those

4. | making reference. Easier.

5. |     ATTY. QUIÑONES: But they—

6. |     HON. JUDGE: If you have it, if you have it, the, the

7. | requests, then eliminate everything that has to do with the

8. | previous complaint. Do you understand me?

9. |     ATTY. QUIÑONES: But they are, they are facts that

10. | anyway we want to make discovery about them. For example,

11. | the, the subject of the role of, of counsel Mayol. Regardless of

12. | having been a defendant at some point and that now—

13. |     HON. JUDGE: Counsel Mayor is notified in the Joint

14. | Report as a witness. So you'll be able to question him as he

15. | is notified as a witness. So you'll be able to question him.

16. | Are we clear?

17. |     There's a sworn statement that is attached to the Motion for

18. | Summary Judgment. Well then you can question him, because is

19. | attached. That evidence is used by the plaintiffs. You can make

20. | questions about that. There are minutes attached to the Motion

21. | for Summary Judgment. You can make questions about that.

22. | Are we clear?

23. |     ATTY. QUIÑONES: We can also, for Monday

24. | notify, then, a request adjusted to—

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                          Page **62** of **69**

1.         |     HON. JUDGE: Yes.

2.         |     ATTY. QUIÑONES: We'll do that; for Monday.

3.         |     HON. JUDGE: Tell me when can you notify it.

4.         |     ATTY. QUIÑONES: Monday, for next Monday

5.         | we can notify the requirement.

6.         |     HON. JUDGE: For Monday, for Monday. Period chosen

7.         | by the defendants.

8.         |     Plaintiffs, tell me how long will it take to answer it.

9.         | And I want it answered pursuant to the rules.

10.        |     ATTY. HERNÁNDEZ: Thir— ah? Forty-five.

11.        |     MALE VOICE: Forty-five.

12.        |     HON. JUDGE: Forty-five days. The plaintiffs asked for

13.        | 45 days. Put it in the minutes.

14.        |     ATTY. PUJOLS: From Monday.

15.        |     HON. JUDGE: From Monday, from the receipt, of course.

16.        | From the receipt of the Set of Interrogatories.

17.        |     Will the plaintiffs notify an— an interrogatory or a

18.        | Request for Information to the defendants?

19.        |     ATTY. ANDRÉU: Well, it's been, it's been done—

20.        |     HON. JUDGE: No, because we're starting.

21.        |     ATTY. ANDRÉU: We'll do it. We'll do it again—

22.        | We'll send it Monday again.

23.        |     HON. JUDGE: Will be sent Monday. Look, make an analysis

24.        | of what you have. Don't ask for what you have, in order to move forward.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **63** of **69**

1. |        FEMALE VOICE: In order to move forward

2. |        HON. JUDGE: OK. Well, defendants have the same

3. |   45 days that I gave the plaintiffs to answer.

4. |        ATTY. QUIÑONES: Your Honor, Your Honor, we request

5. |   until Wednesday to notify the request. One week

6. |   after tomorrow.

7. |        HON. JUDGE: They asked until Wednesday.

8. |        ATTY. ANDRÉU: We also—

9. |        HON. JUDGE: Any objection?

10. |        ATTY. ANDRÉU: None. Until Wednesday the plaintiffs,

11. |   then also to (unintelligible).

12. |        ATTY. QUIÑONES: And Your Honor, the pending answers

13. |   to the interrogatories notified a month ago?

14. |   We would then wish that they'd be answered.

15. |        HON. JUDGE: Within the 45 days they'll answer the Set of

16. |   Interrogatories that are still pending. OK. What else on the

17. |   discovery of evidence? Anything else?

18. |        ATTY. QUIÑONES: Well, after that, well, there will

19. |   be another discovery, for sure, but—

20. |        HON. JUDGE: After that, after that, will the defendants

21. |   be in position to be able to answer the, the allegations

22. |   relevant to the Motion for Summary Judgment 18 and 21 to 76, which

23. |   were the ones objected to because you didn't have the minutes,

24. |   didn't have the evidence, etc.?

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **64** of **69**

1.                          ATTY. QUIÑONES: Well, we also need to take

2.          depositions, Your Honor. We first have to assure that we

3.          have a complete production. And afterwards, then, take the

4.          depositions of witnesses. That's the discovery of evidence that,

5.          at some point the court stated that have to be conducted

6.          before, before addressing the motions filed by the defendants.

7.          So we have to—

8.                          HON. JUDGE: OK.

9.                          ATTY. QUIÑONES: —conduct a complete discovery.

10.                         HON. JUDGE: Well, then let's do this.

11.                         ATTY. ANDRÉU: I, I propose, judge—

12.                         HON. JUDGE: Go ahead.

13.                         ATTY. ANDRÉU: It's just that Rule 36.6 provides, no—

14.         rejects, to put it that way, that the other party of a Motion for

15.         Summary Judgment make what brother counsel is doing and say, "I

16.         need to make all the discovery and take all the

17.         depositions". He has to, as per that rule, establish specifically

18.         why and based on what each discovery or deposition

19.         that he wants to take on what's going to help him specifically to oppose.

20.                         And that's the jurisprudence of the Supreme Court. It's not coming

21.         to say, "I now want to make discovery. We take seven

22.         years and then, answer the Motion for Summary Judgment".

23.         Because that is not what this mechanism is for.

24.                         HON. JUDGE: OK.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **65** of **69**

1.  |  ATTY. QUIÑONES: In the 90 pages of the opposition we

2.  |  explained why we needed that discovery with

3.  |  regard to each of the paragraphs of the motion.

4.  |  HON. JUDGE: OK. Let's do the following. I'll

5.  |  resolve the Motion for Summary Judgment with the motions, with the

6.  |  motion in opposition. And we go on.

7.  |  After the 45 days, look for a date to meet and

8.  |  establish a plan for the taking of depositions. After having answered

9.  |  the interrogatories or the evidence, the sets of request of

10. |  information that will be notified. Look for a date to meet

11. |  and establish a plan for the depositions.

12. |  ATTY. ANDRÉU: Your Honor, we'd like—

13. |  We haven't replied to the opposition filed by brothers counsel

14. |  for the defendants to our Motion for Summary Judgment as

15. |  we though that they were conducting a discovery to

16. |  supplement it.

17. |  If, if you won't allow, then, them to supplement it

18. |  and won't grant them a term, we do want, we would like a

19. |  term to reply to their argument that the minutes are

20. |  hearsay evidence or that they should not be admitted—

21. |  HON. JUDGE: The Court will resolve. Denied,

22. |  counsel, to the reply. Look for dates.

23. |  ATTY. ANDRÉU: Date to meet?

24. |  HON. JUDGE: To meet and make a work plan

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                      Page **66** of **69**

1.          to take the depositions.

2.                    ATTY. QUIÑONES: Would it be, obviously, after the

3.          45 days?

4.                    HON. JUDGE: After having reviewed all those

5.          documents and can, be in position to take

6.          depositions.

7.                    (Counsel talk among themselves.)

8.                    ATTY. QUIÑONES: February 20 is good.

9.                    HON. JUDGE: Time and place?

10.                   ATTY. ANDRÉU: At the offices of counsel Vicente.

11.                   (Counsel talk among themselves.)

12.                   HON. JUDGE: February 19?

13.                   ATTY. QUIÑONES: Yes.

14.                   HON. JUDGE: You'll meet on February 19 at the offices of

15.         Vicente & Cuebas—

16.                   MALE VOICE: At 10:00 a.m.

17.                   HON. JUDGE: —at 10:00 a.m. You'll establish, in

18.         light of— by that date you must have gathered all the

19.         documentary evidence and answered those requirements of

20.         of evidence— a schedule for the depositions.

21.                   And on or before February 28, you'll submit a joint

22.         motion notifying your plan to the court. I receive it and in light of

23.         the dates therein, I'll set a status conference of the

24.                   proceedings for later, for a date in after the depositions

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                    Page **67** of **69**

1.          have been taken. All right?

2.                    ATTY. ANDRÉU: In that plan—

3.                    HON. JUDGE: By February 28 I should have a joint motion

4.          with your work plan. And I'll look at the dates that

5.          you'll put there of the depositions to be taken. And I will

6.          set a hearing after the depositions are taken.

7.                    I can't give you that date right now because I have

8.          to wait for you to, to meet and establish the schedule of

9.          depositions. Because I want to hold the, the, the status conference

10.         after the depositions have been taken. All right? Or at least

11.         that the deposition process is moving along. Agreed? Anything else?

12.                   MALE VOICE: Nothing further for us.

13.                   HON. JUDGE: Well, thank you all very much. Have a nice day.

14.                   ATTY. HERNÁNDEZ: Thank you very much, Your Honor.

15.                   HON. JUDGE: Thanks for your appearance. You're

16.         excused.

17.                   ATTY. QUIÑONES: Thank you.

18.                   MALE VOICE: (Unintelligible.)

19.                   HON. JUDGE: Thank you.

20.         (Today's proceedings conclude at t 11:31 a.m.)

21.

22.

23.

24.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by
the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019                                                    Page **68** of 69

| | |
|---|---|
| 1. | LIST OF ERRATA |
| 2. | (Specify page and approximate line) |
| 3. | 1. It reads: _____ |
| 4. | It should read: _____ |
| 5. | 2. It reads: _____ |
| 6. | It should read: _____ |
| 7. | 3. It reads: _____ |
| 8. | It should read: _____ |
| 9. | 4. It reads: _____ |
| 10. | It should read: _____ |
| 11. | 5. It reads: _____ |
| 12. | It should read: _____ |
| 13. | 6. It reads: _____ |
| 14. | It should read: _____ |
| 15. | 7. It reads: _____ |
| 16. | It should read: _____ |
| 17. | 8. It reads: _____ |
| 18. | It should read: _____ |
| 19. | 9. It reads: _____ |
| 20. | It should read: _____ |
| 21. | 10. It reads: _____ |
| 22. | It should read: _____ |
| 23. | 11. It reads: _____ |
| 24. | It should read: _____ |

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS

CERTIFIED TRANSLATION:
TRANSCRIPT OF HEARING
HELD TUESDAY, NOVEMBER 26, 2019

1.

2.                    **CERTIFICATION OF THE TRANSCRIPT**

3.              I, GLADYS RODRÍGUEZ FORNARIS, MA Translation (UPR 1995),

4.        hereby certify that to the best of my knowledge and abilities, the foregoing

5.        document is a true and correct transcript of the official recording in the

6.        digital audio records under the custody of the Court for the hearing

7.        held Tuesday, November 26, 2019 in the above-captioned case.

8.              I further CERTIFICATE that I have no pecuniary interest in the

9.        outcome of this case.

10.       S/GLADYS RODRÍGUEZ FORNARIS

11.

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

I, Gladys Rodríguez-Fornaris, MA in Translation (UPR 1995), DO CERTIFY that I have translated into English the foregoing document, as submitted in Spanish by the interested party; and that said translation is true and correct to the best of my knowledge and abilities.

S/ GLADYS RODRÍGUEZ-FORNARIS