UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH SEPTEMBER OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the September omnibus hearing and in response to this Court's order, dated September 2, 2022 [Case No. 17-BK-03283, ECF No. 22038].

I. **General Status and Activities of the Oversight Board**

*Hurricane Fiona*

1. Puerto Rico residents are currently under a state of emergency as Hurricane Fiona made landfall and left a significant wake of destruction throughout the Commonwealth. The Oversight Board and the Government are closely monitoring the rapidly evolving situation and are working together to ensure the safety of the people of Puerto Rico.

*Proposed Plan of Adjustment for HTA*

2. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board presented the Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority [Case No. 17-BK-03567, ECF No. 1377] (as amended, supplemented, or modified, the "HTA Plan of Adjustment") for confirmation pursuant to Title III of PROMESA. The Court considered confirmation of the HTA Plan of Adjustment, and objections thereto, at a hearing on August 17, 2022 (the "Confirmation Hearing").

3. On August 18, 2022, the Court entered the *Order to Meet and Confer* [Case No. 17-BK-03567, ECF No. 1389] (the "Meet & Confer Order"), directing Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") and Franklin Advisors, Inc. and Nuveen Asset Management (together, the "HTA Insured Bondholder Group") to meet and confer to reach an agreement and propose language reflecting the agreement for inclusion in the HTA Plan of Adjustment to resolve the *Limited Objection of the HTA Insured Bondholder Group to the*

2

*Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1301] (the "IBG Objection").

4. On August 23, 2022, in accordance with the Meet & Confer Order, Assured and the HTA Insured Bondholder Group filed the *Joint Response of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and HTA Insured Bondholder Group to Order to Meet and Confer (ECF No. 21863)* [Case No. 17-BK-03567, ECF No. 1394] (the "Joint Response"), which provided certain proposed revisions to the HTA Plan of Adjustment, among other documents, to consensually resolve the IBG Objection to confirmation of the HTA Plan of Adjustment.

5. On August 24, 2022, the Court entered the *Order to Submit Revised Proposed Plan and Related Materials* [Case No. 17-BK-03567, ECF No. 1399] (the "Order") directing the Oversight Board to make appropriate revisions to the HTA Plan of Adjustment, proposed Findings of Fact and Conclusions of Law, and the proposed HTA Confirmation Order, as well as all other relevant plan materials, that address the Joint Response and representations made during the Confirmation Hearing that resolved other outstanding objections to the HTA Plan of Adjustment.

6. Pursuant to the Order, on September 6, 2022, the Oversight Board filed its proposed *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1404] which contained revisions that resolve the IBG Objection and, as represented on the record of the Confirmation Hearing, the objection filed by Finca Matilde, Inc. [Case No. 17-BK-03567, ECF No. 1293]. Additionally, pursuant to the Order, the Oversight Board filed a number of additional documents reflecting revisions in response to the Order and comments from certain parties, including (i) a revised proposed *Findings of Fact and Conclusions of Law in Connection with Confirmation of Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation*

3

*Authority* [Case No. 17-BK-03567, ECF No. 1405-5], (ii) a revised proposed *Order and Judgment Confirming Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1405-3], and (iii) the *Second Amended Plan Supplement and Plan Related Documents of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1405-7]. The matter is currently *sub judice*.

***PREPA***

7. The PREPA mediation has consumed the bulk of the FOMB members' time in recent months. FOMB and all parties (we believe) were hoping for a mediation outcome leading to a consensual Title III plan of adjustment. That might and hopefully will occur, but not without the parties first articulating their legal positions and presenting them for decision. As the Court knows, the Mediation Team did not extend mediation past September 16, 2022 and FOMB, as required by this Court's Path Forward Order, had to file a proposed plan, a plan term sheet, a proposed litigation schedule, or cause for not dismissing the PREPA Title III case. FOMB filed an urgent motion for a litigation schedule, currently scheduled to be heard at the omnibus hearing, and responses, in both support and opposition, have been filed.

***Recent First Circuit Decisions***

8. On May 17, 2022, the United States Court of Appeals for the First Circuit (the "First Circuit"), in *Centro De Periodismo Investigativo, Inc. v. Financial Oversight And Management Board For Puerto Rico* [Case No. 21-1301, Doc. 00117876976], held (two to one) that Congress, through PROMESA section 106, abrogated the Oversight Board's sovereign immunity from being sued in federal court on a Commonwealth claim. The Oversight Board filed a petition for rehearing *en banc* [Case No. 21-1301, Doc. 00117882073], which was denied two to one on June 7, 2022

4

[Case No. 21-1301, Doc. 00117884913]. The two judges in regular service who were not on the panel that decided the case turned out to be recused from voting on the rehearing. On June 14, 2022, the Oversight Board filed a motion requesting that the First Circuit stay the mandate, as the Oversight Board planned to file a petition for a writ *certiorari* to the United States Supreme Court seeking review of the First Circuit's decision. On June 21, 2022, the First Circuit granted a stay of the mandate pending U.S. Supreme Court review if the Oversight Board files its petition for a writ of *certiorari* on or before July 20, 2022. On July 20, 2022, pursuant to the First Circuit's order, the Oversight Board submitted a petition for a writ *certiorari* to the United States Supreme Court, seeking review of the First Circuit's decision.

9. On February 17, 2022, the Oversight Board filed an appeal from the portion of the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-BK-03283, ECF No. 19813] (the "Commonwealth Confirmation Order") and the corresponding findings of fact and conclusions of law, holding that claims arising under the Takings Clause of the United States Constitution may not be impaired or discharged. On July 18, 2022, the First Circuit, in *Financial Oversight & Management Board for Puerto Rico v. Cooperative de Ahorro y Credito Abraham Rosa* [Case No. 22-1119, Doc. 00117899244], affirmed the Commonwealth Confirmation Order and the corresponding findings of fact and conclusions of law. The Oversight Board plans to file a petition for writ of *certiorari* to the United States Supreme Court from the First Circuit's opinion as the opinion determines a constitutional issue which the opinion acknowledges it decides differently than the United States Court of Appeals for the Ninth Circuit.

5

## II. General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

10. The Oversight Board's relationship with the Government of Puerto Rico (the "Government") continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues. Currently, the Oversight Board and Governor are preparing to deal with Hurricane Fiona. As has been the case, however, the Governor and Oversight Board disagree on various pieces of significant legislation.

*Act 41*

11. The Oversight Board is committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation. On June 20, 2022, the Government enacted Act 41-2022 ("Act 41"), formerly known as House Bill 1244, which is inconsistent with the Commonwealth's certified fiscal plan and impairs or defeats PROMESA's purposes. In short, Act 41 reestablishes many of the burdensome labor restrictions existing before enactment of Act 4-2017 and will hinder Puerto Rico's economic growth and job creation by, among other things, reintroducing the presumption that employee dismissals are unjustified, increasing sick and vacation day accrual rates, and easing eligibility requirements for Christmas bonuses. The Oversight Board had previously advised the Government the enactment, implementation, and enforcement of House Bill 1244 was barred by PROMESA § 108(a)(2). Nevertheless, the Governor proceeded to sign the law notwithstanding PROMESA § 108(a)(2) knowing its implementation could not be stopped, as its provisions are enforced by private parties, not the

6

Government. This was done notwithstanding the terms of PROMESA § 108(a)(2) barring the Governor from enacting statutes the Oversight Board has determined impair or defeat PROMESA's purposes. Thereafter, on June 29, 2022, the Government made a submission regarding Act 41 pursuant to PROMESA § 204(a). As the Oversight Board informed the Government on July 19, 2022, the submission was deficient in numerous respects, in that it failed to provide a formal estimate of the law's impact on Commonwealth expenditures for the correct fiscal years (it provided an estimate (defective) for the prior fiscal plan year) and did not include a certification that the law is or is not significantly inconsistent with the certified fiscal plan. Despite extensive correspondence, on August 1, 2022, Governor Pierluisi rejected the Oversight Board's proposed consent order suspending Act 41 to enable the parties to avoid litigation. On September 1, 2022, the Oversight Board filed an adversary proceeding seeking declarative and injunctive relief pursuant to PROMESA to nullify and enjoin Act 41. *See* Adv. Proc. No. 22-00063 [ECF No. 1]. Pursuant to the parties' agreement and the Court's September 9, 2022 order, the Governor filed an answer to the Complaint on September 15, 2022. On September 14, 2022, following briefing on the Oversight Board's motion to set an expedited schedule, the Court issued an order granting the Oversight Board's motion and setting an expedited summary judgment briefing schedule—any motion for summary judgment is due on September 29, 2022. Concurrently, the Court ordered briefing on the motion to intervene filed by the Speaker of the Puerto Rico House of Representatives, which is due to conclude on September 29, 2022.

### *Act 80*

12. On July 21, 2022, the Oversight Board and AAFAF reached an agreement on a path for the partial implementation of Act 80-2020, which would limit the early retirement program

7

contemplated under the law to certain non-essential employees.  The Oversight Board and the Government continue to work together to implement the agreement reached in July 2022

### *PFC QM*

13.  The Oversight Board continues to work with AAFAF to commence a PROMESA Title VI case for the Puerto Rico Public Finance Corporation.  The Oversight Board, AAFAF, and PFC Bond Trustee (on behalf of parties holding a majority in outstanding principal amount of PFC Bonds) have reached an agreement regarding amendments to the PFC Restructuring Support Agreement.  This agreement has allowed the parties to finalize the qualifying modification (the "PFC QM") to restructure the PFC Bonds, and the corresponding solicitation materials. Subject to final documentation, the Oversight Board anticipates moving forward with the solicitation of the PFC QM no later than September 23, 2022.

**III.  General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

14.  Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-five notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 44,866 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation.  The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.  Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of approximately 27,370 ACR Designated Claims.

The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on September 23, 2022, and the Debtors anticipate reporting the successful resolution of additional ACR Designated Claims.

15. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send further follow up mailings to such claimants to ensure they have a complete administrative file. The Debtors continue to await responses from numerous additional claimants. In many instances, the Debtors have re-sent initial mailings to claimants who failed to respond, reiterating the Debtors' request for information sufficient to complete the claimants' administrative file, and warning them that ongoing failure to respond may force the Debtors to object to their claims. Claimants who failed to respond to the initial mailings have received a final mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims. The Debtors continue to await responses from such claimants, and to the extent no responses are received, the Debtors intend to object to their claims. To date, the Debtors have filed several objections to claimants who did not respond to the final mailings.

16. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

17. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' reconciliation of outstanding claims remains ongoing, however. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. Accordingly, on July 29, 2022, the Debtors transferred additional claims into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on September 27, 2022. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

18. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-six notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred approximately 1,200 claims into the ADR Procedures.

19. Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the ADR Order), seventeen (17) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

20. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of

the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed several objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due October 21, 2022, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

21. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 2,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

## IV. Anticipated Timing and Volume of Objections to Claims

### *The Debtors' Claims Reconciliation Process*

22. The Debtors' claims reconciliation process remains ongoing, and the Debtors project they will continue to schedule omnibus and/or individual claim objections for the next

11

several omnibus hearings.[2] Most recently, on September 16, 2022, the Debtors filed over twenty omnibus objections covering over 660 claims. However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

23. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases. Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes.

24. In addition, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

[*Remainder of page intentionally left blank*]

---

[2] Currently, approximately 95 Notices of Presentment, relating to omnibus objections previously granted, are pending before the Court.

Dated: September 20, 2022
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       brosen@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

13