Certified Translation MC-2022-318

Page 1 of 12



**GOVERNMENT OF PUERTO RICO**
**DEPARTMENT OF EDUCATION**

*2011-000148*
*081-2021-0148*
**Exhibit A**

<u>**LEASE AGREEMENT**</u>

**WITNESSETH**

**OF THE FIRST PARTY**: The Department of Education of Puerto Rico, represented in this act by the Secretary, Elba L. Aponte Santos, of legal age, single, and resident of Cidra, Puerto Rico, hereinafter referred to as "Lessee," the "Department" or "DE."

**OF THE SECOND PARTY: Luis A. Rivera Siaca**, owner in fee simple of the building that is the object of this Lease, of legal age, married, businessman, and neighbor of Guaynabo, Puerto Rico, hereinafter referred to as the "Lessor."

**STATE**

That the Department, by virtue of the authority conferred upon it by Act 85 of March 29, 2018, as amended, known as the "Puerto Rico Education Reform Act," by the Constitution of the Commonwealth of Puerto Rico, and by the laws that the Department administers has the power to enter into such contracts as may be necessary to comply with its obligations at law.

Having set forth the foregoing, the parties hereto enter into this lease agreement (the "Agreement") subject to the following:

**TERMS AND CONDITIONS**

1. **Leased Property**:

   a. **Description of the Leased Property**: The Lessor hereby leases the property located at 34 Calaf Street, San Juan, Puerto Rico, with parking spaces for DE employees, where the Department's offices are currently located (the "Leased Property"). The Leased Property is one hundred and twenty-three thousand one hundred and six point fifty-five (123,106.55) square feet.

   [Initials]

   b. **Structure**: The structure containing the Leased Property consists of fourteen (14) stories plus a basement and a three (3) level multi-story garage, and the Leased Property occupies from floor one (1) to floor five (5) thereof.

   [Initials]

   c. **Use of the Leased Property**: The Leased Property will be used as the headquarters of the offices of the Department and currently houses the Human Resources Administrative Offices, the Payroll Office, the DE's Teaching and Non-Teaching Archives Office, the Administrative Offices of the San Juan Region, and the Information Systems Offices (OSIAT, [Spanish Acronym]), among others. The Leased Property shall also be used for any other lawful use or purpose related to the operations of the Lessee.

   d. **Access**: The Lessee shall have access during business hours and business days, during the Term of the Lease, to the Leased Property, the parking area, the corridors, accesses, and other common areas of the building and the land.

   [Initials]

   e. **Parking Lots**: The Lessor shall provide one hundred fifty (150) parking spaces for Department employees at the Leased Property and additional spaces free of charge at the lot on Federico Costas Street.

   f. **Elevators**: Six (6) passenger elevators and one (1) service and freight elevator.

2. **Required Approvals.** The parties certify that they have obtained all approvals required by law prior to the execution of this Agreement, including the approval of the Office of Management and Budget, the Office of the Governor, and the Real Estate Property Review Board pursuant to Act 235 of 2014 and the regulations and circular letters promulgated thereunder.

3. **Term of the Agreement:** This Agreement shall be effective **from the date of signature by both parties until December 31, 2025**.

Luis A. Rivera Siaca
Page 2 of 11

4. **Total Rent:** The Lessee shall pay to the Lessor, without prior demand and without any deduction, discount, or compensation of any kind, the sums indicated in this Article. Payments shall be sent to the mailing address provided by the Lessor for such purposes or shall be made by direct deposit to the account indicated by the Lessor, as may be agreed upon by the Lessee.

  a. **Rent**: The Rent to be paid the first year per square foot is Nineteen Dollars and Seventy-One Cents ($19.71) per one hundred twenty-three thousand one hundred six point fifty-five (123,106.55) square feet, for an annual rent payment of Two Million Four Hundred Twenty-Six Thousand Four Hundred Thirty ($2,426,430) and a monthly rent of Two Hundred Two Thousand Two Hundred Two and Fifty Cents ($202,202.50) (the "Rent"). After the conclusion of the first year of payment of Rent by Lessee, the Rent shall bear an annual increase of three percent (3%) until the expiration of the Lease.

| PERIOD | FROM-UNTIL | TOTAL | MONTHLY |
|---|---|---|---|
| 1 | 01/01/2021 to 12/31/2021 | $2,426,430.10 | $202,202.51 |
| 2 | 01/01/2022 to 12/31/2022 | $2,499,062.97 | $208,255.25 |
| 3 | 01/01/2023 to 12/31/2023 | $2,574,157.96 | $214,513.16 |
| 4 | 01/01/2024 to 12/31/2024 | $2,651,715.09 | $220,976.26 |
| 5 | 01/01/2025 to 12/31/2025 | $2,731,734.34 | $227,644.53 |

**The Rent payment is composed of the following:**

| PERIOD | LEASABLE SPACE (SQ FT) | SUB-TOTAL | MONTHLY | COMMON AREAS (SQ FT) | SUB-TOTAL | MONTHLY | TOTAL MONTHLY |
|---|---|---|---|---|---|---|---|
| 1 | 105,899.08 | $2,087,270.87 | $173,939.24 | 17,207.47 | $339,159.23 | $28,263.27 | $202,202.51 |
| 2 | 105,899.08 | $2,149,751.32 | $179,145.94 | 17,207.47 | $349,311.64 | $29,109.30 | $208,255.25 |
| 3 | 105,899.08 | $2,214,349.76 | $184,529.15 | 17,207.47 | $359,808.20 | $29,984.02 | $214,513.16 |
| 4 | 105,899.08 | $2,281,066.18 | $190,088.85 | 17,207.47 | $370,648.90 | $30,887.41 | $220,976.26 |
| 5 | 105,899.08 | $2,349,900.59 | $195,825.05 | 17,207.47 | $381,833.76 | $31,819.48 | $227,644.53 |

  Operating expenses include property taxes (CRIM); municipal patents; other existing Leased Property taxes that may be enacted, insurance premiums; maintenance, and repairs, including labor and supervision of: (i) the exterior areas and gardens, (ii) trees; (iii) parking lots, (iv) gates, (v) extermination service in common areas; (vi) replacement and installation of interior lighting fixtures (vii) exterior painting of the building; (viii) air conditioning system (ix) and of the water pumps necessary for its operation.

5. **Termination of the Lease**: The Lessee shall have the right to terminate the Lease, for any reason and at any time during the Term, upon written notice to the Lessor at least thirty (30) days before the date of termination and provided that the Lessee is current in the payment of the Rent and any other obligations under the Lease.

6. **Withholding of Possession after the Term**: Upon the expiration of the Term of the Lease, Lessee may retain possession of the Leased Property for two months, provided that Lessee notifies Lessor in writing of its intention to extend the Term of the Lease at least sixty (60) days in advance, subject to the execution of an agreement to that effect and the approval of funds.

7. **Electricity and Water Services**: Electricity and water shall be paid for by Lessee.

8. **Maintenance and Repairs**:

  A. **Lessor's Maintenance Obligations**: Lessor shall maintain in good condition:

Luis A. Rivera Siaca
Page 3 of 11

(a) All structural parts of the Leased Property, including, without limitation, foundations, bearing walls, exterior walls, and all common areas, including floor and roof.

(b) Electrical, plumbing, parts, and sewer systems.

(c) Storm Drains of the Leased Property.

(d) Parking lots and all common areas of the Leased Property, including the land.

(e) Exterior painting and common areas of the Leased Property.

(f) All emergency services and any other services related to the best operation of the Leased Property.

(g) Six (6) passenger elevators and one (1) service and freight elevator.

(h) Air conditioning and its components, including maintenance and repair.

(i) Electrical systems, including repair and maintenance of substations and electrical rooms.

(j) Lighting: including lamps and lightbulbs.

(k) Maintenance and Handyman for a minimum of six (6) experienced employees.

(l) Extermination in common areas.

B. Repairs by Lessor: Lessor shall be responsible, at its expense, for repairs to the Leased Property in the following circumstances:

(a) Damage to the Leased Property caused by conditions beyond Lessee's control, including, without limitation, damage caused by fire, tornadoes, hurricanes, earthquakes, and acts of God.

(b) Damages resulting from any act, neglect, or omission of the Lessor, its agents, representatives, contractors, subcontractors, and employees.

(c) Any necessary repairs to the foundations, load-bearing walls, exterior walls, and roof of the Leased Property to keep the roof and walls properly waterproofed and in good condition.

(d) Lessor agrees to make, at its expense, any changes or improvements to the Leased Property required to comply with the specifications and safety requirements established or to be established during the Term by the Fire Department, Department of Labor and Human Resources (OSHA), Department of Health, Environmental Quality or any other concerned agency as well as all repair or maintenance work that is structural in nature, roof waterproofing and/or related to the electrical substations installed on the Property.

C. **No Default**: There shall be no default by Lessor, nor shall Lessor be liable for any direct or indirect damages caused by the installation, use, or interruption of use of any equipment or services and/or for any delay in providing or failure to provide any such services when the reason is directly related to any accident, act of God, natural disaster or any situation beyond Lessor's control; or for making necessary improvements or repairs to the water, electrical or any other form of power systems providing service to the Leased Property. The Lessor shall diligently remedy any interruption of such services. Lessor shall not be entitled to have Rent abated for the foregoing reasons, provided that the Leased Property may reasonably be used during the interruption of service for Lessee's usual activities and the interruption of service is not for a period of time longer than forty-eight (48) business hours.

Luis A. Rivera Siaca
Page 4 of 11

D. **Maintenance by the Lessee**: Except as provided in the Lease, the Lessee, at its own cost, shall maintain the entire interior of the Leased Property and make repairs necessary to keep the same in good condition.

9. **Alterations and Equipment**:

A. **Alterations or Improvements**: The Lessee, at its expense, during the Term of the Lease, may make such alterations, improvements, or additions to the Leased Property as it deems necessary (hereinafter referred to as the "Improvements"), provided that it obtains the prior written consent of the Lessor, which consent shall not be unreasonably delayed or withheld. The Lessee is obligated to remove the Improvements upon termination of the Lease.

B. **Equipment/Movable Property**: The Lessee may install on the Leased Property all such equipment peculiar to its business, furniture, and chattels as it deems necessary and/or advisable for the better conduct of its business. All equipment or movable property installed in the Leased Property shall be and remain the property of the Lessee.

Upon termination of the Lease, the Lessee shall be obligated to remove all equipment and movable property installed in the Leased Property and to repair any damage caused by such removal at its cost.

10. **Damage and/or Destruction**:

A. **Reconstruction by Lessor**. If any part of the Leased Property shall be damaged or destroyed in whole or in part because of fire, the elements, or any other cause such as a hurricane, earthquake, or other natural disaster (hereinafter referred to as "Event"), then the Lessor shall be obligated at its sole cost and expense to rebuild and restore the Leased Property as soon as possible to the condition existing immediately prior to the casualty Event. The reconstruction work shall be carried out within a reasonable period of time, considering the nature and extent of the damage.

B. **Termination of Lease**: If for any reason the Leased Property is not in good condition for use in the everyday operations of the Lessee or cannot be rebuilt as required within a reasonable period of time, not to exceed 120 days after the occurrence of the event, then the Lessee shall have the right to terminate this Lease without payment of the cancellation or termination provisions of this Lease. Likewise, the Lessee may exercise the provisions of Clause 5 of this Lease.

11. **Redress of the Parties**: The Lessor and/or the Lessee, as the case may be, prior notice shall indemnify and hold harmless the other party from any complaint, claim, loss, or damage that may arise from accidents occurring in or damage caused to the Leased Property and/or the land of the Leased Property, or the land where it is located, due to the negligence, or act or omission of either party and/or its agents, employees, contractors or subcontractors, except when they have occurred as a direct consequence of the negligence or misconduct of the Lessor or the Lessee, as the case may be.

In the event that the Lessor and/or the Lessee are notified of a claim, cause of action, or any proceeding that may result in an indemnity to be paid by the other party, as provided in the preceding paragraph, then the Lessor or the Lessee, as the case may be, shall give prompt written notice to the other party informing it in detail of the situation in question.

The Lessor and/or the Lessee shall immediately forward to the other any complaint, notice, or summons received by it or its representatives.

As the case may be, the Lessor and/or the Lessee shall have the obligation and the right to defend themselves against allegations, actions, or proceedings where they may be entitled to be indemnified under sections of this Article. In this case, the Lessor and/or Lessee shall have the right to settle the claim, cause of action, or proceeding upon the other party's written consent, which consent shall not be unreasonably withheld.

Luis A. Rivera Siaca
Page 5 of 11

12. **Insurance**: The Lessor shall maintain throughout the Term of the Lease, as follows:

| Limits of Insurance | |
| --- | --- |
| General Aggregate | $1,000,000 |
| Products Completed Operations Aggregate | $1,000,000 |
| Personal Injury & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Damage | $100,000 |
| Medical Expense | $5,000 |

13. **Signs**: All signs that may be installed by Lessor and Lessee, as the case may be, shall comply with all legal requirements and shall be installed adequately.

    Lessee shall obtain Lessor's prior written consent which shall not be unreasonably withheld, delayed, or issued under certain conditions.

    Lessee shall not install, place or permit the installation or placement of signs or graphics that would affect the character of the Leased Property as a commercial building peculiar to the area. No rental signs or banners may be located within the Leased Property without Lessor's prior consent.

14. **Default**:

    A. **Lessee's Default**: Lessee shall be in default under the terms of this Lease if it fails to comply with any term or condition of the Lease and if such default is not cured within 60 days from the date of written notice from Lessor. If the default cannot reasonably be cured within the foregoing period, but the Lessee has commenced to cure within such period and continues to work to cure the default diligently, then the Lessee shall not be deemed to be in default.

       If the Lessee fails to cure its default, the Lessor, in addition to any other remedy provided at law and equity, may cure it at Lessee's expense. If the Lessor pays any sum attributable to Lessee's default, such sum shall be reimbursed to the Lessor. Further, the Lessor may terminate this Lease.

    B. **Lessor's Default**: Lessor shall be in default under the terms of this Lease if it fails to comply with any term or condition of the Lease and if such default is not cured within 60 days from the date of written notice from Lessee. If the default cannot reasonably be cured within the foregoing period, but the Lessor has commenced curing within that period and is continuing to work to diligently cure the default, then the Lessor shall not be deemed to be in default.

       If the Lessor fails to cure its default, the Lessee, in addition to any other remedy provided at law and equity, may cure the same at the Lessor's expense. If the Lessee pays any sum attributable to the Lessor's default, such sum shall be reimbursed to the Lessee.

    C. **Notice**: Any notice of default under this Article shall specify the nature of the default and the applicable sections of the Lease.

15. **Subordination**: This Agreement and all rights of the Lessee hereunder may be subordinated at any time to any mortgage which presently exists or which may hereafter exist on the Leased Property.

    This clause shall be operative automatically and without needing to execute any other subordination document.

Luis A. Rivera Siaca
Page 6 of 11

It is understood and agreed that the possession of the Leased Property and the use to which the Lessee is putting it shall not be affected in any way by the Lessor and/or its mortgagee so long as the Lessee is not in default under this Lease.

16. **Return of Leased Property**: Upon termination of the Lease, the Lessee shall deliver to the Lessor the Leased Property in good condition of use and conversation except for deterioration caused by the passage of time or normal wear and tear or damage caused by an Event (as set forth in the Damage and/or Destruction clause of this Lease).

17. **Lessor's Representations and Warranties**: Lessor represents and warrants to Lessee that it is the owner in fee simple of the Leased Property (land and building) and that he is fully entitled to enter into this Lease.

    Subject to the terms and definitions set forth in this Lease, the Lessee shall be entitled to possess the Leased Property for its full and exclusive use.

    The Lessor shall be obliged to protect the Lessee from any disturbance or interference by third parties acting by virtue of law.

    As long as Lessee fully complies with the terms of this Lease, Lessee shall have the right to occupy the Leased Property peaceably, continuously, and without interference from any party on behalf of Lessor and any personnel claiming through the Lessor.

    The Lessor shall comply with all the terms and conditions contained in this Lease.

18. **Representations and Warranties of the Lessee**: That the Lessee has the capacity and authority at law to execute this Lease and to be bound by the terms and conditions of this Lease. The Lessee has executed and obtained, prior to the execution of this Lease, all required governmental permits.

    The Lessee shall comply with all the terms and conditions contained in this Lease.

19. **Notices**: Any notice, request for consent, or other communication that either party wishes to give to the other under this Lease shall be:

    (a)   Hand-delivered, sent by certified mail with return receipt requested, by e-mail, via facsimile, or by private mail (DHL, FedEx, etc.) with return receipt requested and shall be addressed to the party and address set forth below. Any change of address shall be notified in writing to the other party.

    (b)   Notices shall be deemed given 48 hours after being sent by registered or private mail; or immediately if delivered by hand, facsimile, or e-mail.

    (c)   All notices, if given to the Lessor, shall be addressed to:

        Luis A. Rivera Siaca
        P.O. Box 190681
        San Juan, Puerto Rico 00919-0681
        Tel. (787) 620-1736 / Fax (787) 620-1739
        Email: pinsy@erspr.com
        milagros@erspr.com

    (c) [sic] All notices, if given to the Lessee, shall be addressed to:

        Department of Education
        Special Education Service Center
        P. O. Box 190759
        San Juan, Puerto Rico 00919-0759
        Tel. 787-723-9090 ext. 6123;
        E-mail: malaveic@de.pr.gov

Luis A. Rivera Siaca
Page 7 of 11

20. **Document Retention and Audits**: Lessor shall retain copies of all documents relating to his obligations under this Lease.

   The documents described above shall be available for inspection and audit by officials of the Lessee, the Comptroller's Office, or any official entity of the Government of Puerto Rico or the Government of the United States. The Department may request in writing any information required for audit purposes and related to this Lease and the performance of the Lessor's obligations under this Lease.

   The Lessor shall retain the documents generated in connection with this Lease for a period of six (6) years after the expiration of this Lease. In the event an audit has been initiated and a finding remains unresolved at the end of such period, the documents shall be retained until the resolution of such finding.

   If prior to six (6) years, the Comptroller's Office conducts an audit or investigation of this Lease and issues a report, the Lessor shall retain such reports and other documents for a minimum of five (5) additional years.

21. **BILLING**: The Contractor shall invoice upon completion of the services rendered. The invoice shall be sent in original and three (3) duly certified copies, in accordance with the Accounting Law and following the standards established by the auditing agencies of the Government of Puerto Rico.

   Billing shall be made under the terms expressly agreed upon in this Agreement and shall be specific and itemized. The Contractor is responsible for ensuring the accuracy and reasonableness of each invoice submitted. The Department shall review each invoice submitted and shall consider such invoice as a certification by the Contractor that the services provided and expenses incurred are reasonable for the type of matter contracted. The Department reserves the right to adjust or object to any invoice or work performed reported thereon due to non-compliance with these guidelines or based on contracting or for any other valid reason.

   As required by EO-2001-73, the Contractor shall include in each invoice submitted to the Department the following certification:

   *"Under penalty of absolute nullity, the Contractor certifies that no public servant of the Department of Education is a party to or has any interest in the proceeds or benefits resulting from the contract which is the subject of this invoice and if being a party to or having an interest in the proceeds or benefits resulting from the contract has been previously waived. The sole consideration for furnishing the goods or services subject to the contract has been the payment agreed upon with the Secretary or his authorized representative. The amount of this invoice is fair and correct, and the services have been rendered and have not been paid."*

   Prior to payment, invoices shall be duly certified by the Secretary of Education or his authorized representative. The Department will not make any payment in excess of the amount provided for in this Agreement, regardless of the reasons it may have for such excess.

   The invoice shall be sent to the office of the Assistant Secretary for Auxiliary Services for evaluation, and it shall be attached with any supporting documentation or evidence. The Contractor shall comply with the requirements of the Department of the Treasury, the Office of Management and Budget, and the Financial Oversight Board and shall invoice for services using the Department's E-settlement Online Billing System ("E-settlement"). The Department shall provide the Contractor with a Manual for the use of E-settlement, and the Contractor shall coordinate with the Department's Office of Finance for initial guidance in obtaining access to E-settlement.

22. **Account Number**: Payment of Rent earned under this Agreement shall be made from account number **E2632-111-02000000-3002-003-2021** or such other account numbers as may be identified in the future for such purposes. Disbursements for Services rendered and billed under this Agreement shall at all times be subject to the availability of appropriated and duly certified funds.

23. **Certificate from ASUME**: The Lessor, as legal entity, certifies that, as an employer, he is in compliance with his employees' child support withholding orders.

Luis A. Rivera Siaca
Page 8 of 11

24. **State Insurance Fund**: Throughout the Term of this Lease, the Lessor shall be responsible for maintaining a policy with the State Insurance Fund covering its employees and all personnel performing services under this Lease.

25. **Certifications under EO-1991-24 and EO 1992-52 (Filing of Tax Returns and Unemployment and Other Debts)**: The Lessor certifies and warrants that at the time of executing this Agreement, it has filed its income tax return during the five (5) years prior to this Agreement and does not owe taxes to the Government of Puerto Rico, or is under a payment plan, with which terms and conditions he is in compliance. The Lessor certifies and warrants that at the time this Agreement is executed, he has paid the unemployment insurance, short-term disability, and social security contributions for drivers (whichever is applicable) or is under a payment plan with whose terms and conditions it is in compliance.

    The Lessor certifies that he has no debts with the Government of Puerto Rico or its municipalities, including, without limitation, debts for municipal taxes, property taxes, licenses, payroll taxes, interest, dividends, or for any other origin or matter, or that he is under a payment plan, with which terms and conditions he is in compliance.

    It is expressly acknowledged that this is an essential condition of this Lease, and if the foregoing certification is not correct in whole or in part, this shall be sufficient cause for the Department to terminate this Lease, and the Lessor shall be required to reimburse the Department any monies received under this Lease.

26. **Certification of No Criminal Conviction**: Pursuant to the provisions of Act 2 of January 4, 2018 creating the Anti-Corruption Code of the Government of Puerto Rico and Circular Letter Number 2009-01 of March 9, 2009 of the Department of Justice, the Lessor certifies and warrants that at the time of execution of this Agreement neither he/she, nor, in the case of corporations or other legal entities, the officers, principal employees, shareholders, members, or members of the Board of Directors of the corporation or entity, nor its affiliates or subsidiaries or parent entity has been convicted, has been found probable cause for arrest, or has plead guilty of any offense included in Section 6. 8 of Act Number 8 of 2017 (Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico) or in the Anti-Corruption Code, that attempt against the treasury, public faith or function, against governmental exercise or involving public funds or property at the federal or state level or other foreign jurisdiction or with any other provision of the Act.

    Lessor acknowledges his duty to report continuingly, during the Term of the Lease, any facts relating to the conduct of any investigation into the commission of a crime against the treasury, faith, or public function; against governmental exercise, involving public funds or property at the federal or state level. This obligation shall continue during all stages of the procurement and execution of the Agreement.

    The Department shall terminate this Agreement in the event probable cause for arrest is found against the Lessor for the commission of any offense against the public treasury, faith, or trust; against governmental performance; or involving federal or state public funds or property.

27. **TAX AND ASUME CERTIFICATIONS**: The Contractor has submitted or has authorized the Department to arrange for or when registering with the General Services Administration's Single Registry of Bidders, submitted (and so evidenced) the applicable of the following certifications, which shall become part of this Agreement:

    a- Copy of the Merchant Registration Certificate (Model SC 2918).

    b- Certification of compliance with the filing of reports to the Department of State ("Good Standing").

    c- Certification of Filing of Sales and Use Tax Returns (Model SC 2942).

Certified Translation MC-2022-318

Page 9 of 12

Luis A. Rivera Siaca
Page 9 of 11

d-   Certification of Sales and Use Tax Debt (Form SC 2927). If there are debts for which the Contractor indicates that it is under a payment plan, it must submit a manual certification issued by the Department of the Treasury indicating that it is in compliance with the terms thereof.

e-   Certification of existence or authorization to do business in Puerto Rico from the Department of State.

f-   Debt Certification from the Department of the Treasury (Form SC 6096). If there are debts for which the Contractor indicates that it is under a payment plan, it must submit a manual certification from the Department of the Treasury indicating that it is in compliance with its terms.

g-   Certification of filing income tax returns for the past five (5) years from the Department of the Treasury (Form SC 6088).

e- [sic] Debt Certification for all concepts from the Municipal Revenue Collection Center (CRIM).

f-   Certification of having filed movable property tax returns for the past five (5) years from the Municipal Collection Center (CRIM). If the Contractor offers professional or consulting services and does not own movable property and is not listed filing a tax return with the CRIM, it must submit an affidavit in accordance with the terms of Treasury Circular Letter Number CC 1300-16-16 (or its substitute).

g-   Affidavit in cases where the taxpayer is not filing a movable property tax return at the Municipal Collection Center (CRIM) or does not own movable property.

h-   Certification of Registration as Employer and of Debt for Social Security of the Department of Labor and Human Resources.

i-   Certification of Registration as an Employer and of Debt for Unemployment Insurance and Disability Insurance from the Department of Labor and Human Resources.

j-   Certification of Debt from the State Insurance Fund.

k-   Certification from ASUME. If the Contractor is an individual, he must present a certificate that he is not obligated to pay child support or, if he is, that he is complying with the payments. In the case of a corporate entity, it must present certification that, as an employer, it is complying with the child support withholding orders of its employees.

l-   Certification of reasons why the taxpayer is not required by law to file the individual income tax return of the Department of the Treasury (Form SC 2781) or the Certificate of Incorporation or Organization, which evidences the absence of legal personality during the period in which the tax return was not filed.

m-   Manual Correction to the Certification of Filing of Income Tax Returns of the Department of the Treasury (Form SC 2781) or Department of the Treasury (Form SC 2888).

n-   In the event that the Contractor is an entity organized outside of Puerto Rico and is not doing business in Puerto Rico and does not have local offices, it shall submit its articles of incorporation or organization, certificate of existence of the place where it was organized and a duly authenticated affidavit stating its employer's social security number (if any), that it has no tax liability with the government of Puerto Rico and that compliance with the terms of the Agreement does not result in it becoming an entity doing business in Puerto Rico. In addition, it must submit the ASUME certification.

28.   **Conflict of Interest:** The Lessor warrants that, to the best of its knowledge and belief, no officer, employee, advisor, or consultant of the Department, nor any member of its family unit, has a direct or indirect economic interest in this Agreement and that no officer, employee, advisor or consultant of the Executive Branch of the Government of Puerto Rico, nor any member of its family unit has an interest and/or share in the economic benefits or income related to this Agreement.

Certified Translation MC-2022-318

Page 10 of 12

Luis A. Rivera Siaca
Page 10 of 11

The Lessor certifies that no public servant of the Department requested, nor accepted, directly or indirectly, for him or herself or any other person, gifts, gratuities, favors, Services, donations, loans, or any other thing of monetary value. He or she further certifies that no public servant of the Department requested or accepted any property of economic value related to this transaction from any person of the Lessor as payment for performing the duties and responsibilities of his or her employment. Nor did the Lessor request, directly or indirectly, for any public servant, for any member of his or her household, or any other person, business, or entity, any property of economic value, including any loans or Services in exchange for such public servant's performance being influenced in favor of the Lessor.

Lessor acknowledges and certifies that, in the performance of its obligations under this Lease, he owes complete loyalty to the Department, which includes, among other things, having no adverse or conflicting interests with the Department. These conflicting interests include, but are not limited to, litigation or other claims against the Department. This obligation also includes a continuing duty to inform the Department of all circumstances relating to the Lessor's relationship with customers and third parties or of any interests that may influence the Department in the performance of this Lease or during the Term of this Lease.

In contracts with partnerships or corporate entities, it shall be a violation of this prohibition for any of their shareholders, partners, officers, principals, employees, subsidiaries, or parent companies to engage in the conduct described herein. The Lessor shall avoid even the appearance of the existence of conflicting interests.

29. **Anti-Corruption Code:** The Lessor agrees to comply with the provisions of the Puerto Rico Anti-Corruption Code, approved by Act Number 2 of January 4, 2018. Any violation of the provisions of this Act may be prosecuted civilly and administratively, as the case may be.

30. **Non-Discrimination**: The Lessor agrees not to discriminate in the rendering of these services for reasons of political, religious, race, social status, age, sex, nationality, condition, physical or mental disability, or for being a victim or being perceived as a victim of domestic violence, sexual assault or stalking, for being military, ex-military, serving or having served in the Armed Forces of the United States or for holding veteran status, for sexual orientation, gender identity or for any other discriminatory cause. He also agrees to ensure equal employment opportunity for persons with disabilities in accordance with applicable laws.

31. **No Litigation Against the Government of Puerto Rico**: The Lessor certifies that he has no pending litigation against any governmental entity or instrumentality at the time of the execution of this Lease.

32. **Headings and Sub-Headings**: The Headings and Sub-Headings of the various clauses of the Agreement are included to facilitate the handling of the document and shall not affect the interpretation thereof.

33. **Modifications**: This Agreement contains the entire agreement that the parties have reached and may only be modified or amended in writing and must be signed by the parties hereto.

34. **No-Waiver**: The mere failure of a party to exercise or enforce any right or privilege under this Agreement or to require strict compliance with any provision of this Agreement shall not be construed as a waiver of its rights or privileges or strict compliance with any provision of this Agreement on any future occasion.

35. **No Real Estate Brokers**: No real estate broker has been involved in the transaction culminating in the execution of this Agreement.

36. **Applicable Law and Forum**: This Agreement and all related matters shall be interpreted in accordance with the Laws of Puerto Rico. Any legal action brought in connection with this Lease shall be filed solely and exclusively in the Court of First Instance, San Juan Part, to which the Lessor irrevocably submits.

37. **Severability**: It is stipulated that the clauses and conditions of this Lease are independent and separate from each other and that the nullity declared by a competent court of law of one or more clauses does not affect the validity of the remaining clauses, which shall continue in force.

Luis A. Rivera Siaca
Page 11 of 11

38. **Entire Agreement**: This Agreement constitutes the entire agreement between the parties with respect to the services to be rendered hereunder. Any amendment to this Agreement shall be made by a document signed by both parties during the Term of the Agreement, in accordance with the needs of the Department and subject to the availability of funds for the execution of the amendment.

**IN WITNESS WHEREOF**, the parties hereto execute this Agreement in San Juan, Puerto Rico, today, *January 15*, 2021.

[Signature]                                    [Signature]
Elba L. Aponte Santos                          Luis A. Rivera Siaca
Department of Education                         PO Box 190681
ESS: 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                               San Juan, PR 00919-0681
                                               ESS: 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


                    **OR**

**BY EXPRESS DELEGATION:**


Amarillys Silver Rodriguez
Undersecretary of Administration


**REVIEWED IN LEGAL DIVISION BY:**


[Signature]
Mr. Eric Huot Calderón
Advisor
Contracts Office

No. <u>2022-318</u>  TRANSLATOR'S CERTIFICATE OF ACCURACY

   I, Mayra Cardona Durán, of legal age, single, resident of Guaynabo, Puerto Rico, Certified Interpreter of the United States Courts (Certification No. 98-020) and certified by the National Association of Judiciary Interpreters and Translators (10671), holding a Master's Degree in Translation and admitted to the Puerto Rico Bar Association (Bar No. 12390, RUA No. 11038) hereby CERTIFY: that according to the best of my knowledge and abilities, the foregoing is a true and correct rendition into English of the original Spanish text, which I have translated and it is stamped and sealed as described therein. This document is comprised of Twelve (12) Pages, including this certification page, and does not contain changes or erasures.

   In Guaynabo, Puerto Rico, today, Saturday, September 17, 2022.

Lcda. Mayra Cardona
BA Lit/Fr, MA Trans, JD
United States Courts Certified Interpreter
NAJIT Certified Interpreter and Translator
3071 Alejandrino Ave. PMB 306 Guaynabo, Puerto Rico 00969-7035
Tel. (787) 530-1414
e-mail: mayra@cardona.com