UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND | |
| MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO et al., | (Jointly Administered) |
| Debtors.[1] | |

---------------------------------------------------------------x

<u>Memorandum Order Concerning Inquiry Motion of Juan Manuel Cruzado-Laureano</u>

Before the Court is the motion titled *Inquire About the Commonwealth of PR Agencies Covered by the PROMESA "Stay"* (Docket Entry No. 19525 in Case No. 17-3283)[2] (the "Inquiry Motion") filed pro se by Juan Manuel Cruzado-Laureano (the "Movant"). Movant is the plaintiff in the lawsuit against the Office of the Comptroller of Puerto Rico (the "OCPR,"

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Unless otherwise noted, all references herein to Docket Entry Nos. are references to Case No. 17-2383. PROMESA is codified at 48 U.S.C. § 2101 <u>et seq.</u> References to "PROMESA" section numbers herein are to the uncodified version of the legislation.

and variously referred to in underlying proceedings as the office of the "Comptroller" or "Controller") captioned <u>Juan Manuel Cruzado-Laureano v. Office of the Controller of Puerto Rico</u>, Civ. No. 20-01360 (FAB) (the "Action"), which was dismissed with prejudice by the United States District Court for the District of Puerto Rico (the "District Court"), and appellant in the appeal captioned <u>Cruzado-Laureano v. Office of the Comptroller of Puerto Rico</u>, No. 21-1472 (the "Appeal"), pending before the United States Court of Appeals for the First Circuit (the "First Circuit"). The Inquiry Motion, which the Court accords the liberal construction to which pro se filings are generally entitled, seeks a determination that the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code[3] are not applicable to the Appeal or to any subsequent litigation in the event the First Circuit reverses and remands the case to the District Court, principally based on the contention that the OCPR has no connection with the Commonwealth's PROMESA Title III debt restructuring proceedings.

The Court has considered carefully the parties' submissions.[4] For the following reasons, the Court holds that the OCPR is part of the Commonwealth and thus subject to the Commonwealth Title III proceedings, and that the automatic stay imposed by the Bankruptcy

---

[3] All references herein to the provisions of Title 11 of the United States Code (the "Bankruptcy Code") are to sections made applicable in these cases by section 301 of PROMESA (48 U.S.C. § 2161).

[4] On January 31, 2022, the Puerto Rico Fiscal Agency and Financial Advisory Authority filed the *Response of the Commonwealth of Puerto Rico to Motion Titled "Inquire About the Commonwealth of PR Agencies Covered by The PROMESA 'Stay'" Filed by Juan Manuel Cruzado-Laureano*. (Docket Entry No. 19963 (the "Response").) On February 7, 2022, Movant filed the *Reply to the Response of the Financial Oversight and Management Board for Puerto Rico to Motion Filed by Juan Manuel Cruzado-Laureano*. (Docket Entry No. 20063 (the "Reply").) On July 13, 2022, Movant filed the *Motion Requesting Expedited Attention to the Legal Resource Filed on February 7, 2022 by Juan Manuel Cruzado-Laureano in the Case of Title III-Promesa: #17 BK 3283 Against the Financial Oversight and Management Board for Puerto Rico*. (Docket Entry No. 21492.)

Code in connection with those proceedings has expired, but that Movant's claim, as a pre-petition claim against the Commonwealth for which no proof of claim was filed, was discharged through the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (Docket Entry No. 19784) (the "Plan"), and is now subject to a permanent injunction barring further prosecution of the Appeal and the pursuit of any further litigation related to the claim asserted in the Action.

BACKGROUND

A. Background of the Action

The background facts recited here are drawn from Judge Besosa's District Court *Opinion and Order* dismissing the Action with prejudice, which was entered on May 26, 2021, and is reported at Cruzado-Laureano v. Office of the Controller of Puerto Rico, 541 F. Supp. 3d 225 (D.P.R. 2021).

Movant is the former mayor of Vega Alta, Puerto Rico. He was sentenced principally to sixty-three months of imprisonment and ordered to pay restitution of $14,251.82 as the result of his conviction for, inter alia, embezzlement and witness-tampering. Id. at 1227. Movant commenced seven—now eight—post-conviction civil actions, related to the events surrounding his conviction or the consequences thereof, all of which were ultimately dismissed by the District Court. Id. at 227-28.

B. The Action and the Appeal

On July 24, 2020, Movant initiated the Action against the OCPR in the District Court, seeking to recover $12,000,000—first citing 18 U.S.C. section 241, and then, upon amending the complaint, citing 42 U.S.C. section 1983. Id. at 228, 230. The Action is predicated upon Movant's allegations that a former Comptroller lied about Movant's

inappropriate use of a municipal credit card and also delayed publication of an audit report covering the year Movant was in office in order to intentionally conceal exculpatory evidence in the criminal proceedings. Id. at 228.

On May 26, 2021, the District Court dismissed the Action with prejudice, holding that (a) the complaint failed "to tether" the alleged harm "to a constitutionally protected right" as required by 42 U.S.C. section 1983, and (b) the complaint was time barred because it was commenced "fourteen years after the statute of limitations expired." Id. at 229-30. Additionally, Judge Besosa found that Movant is a "vexatious litigant, bent on pursuing meritless claims against past and present state officials," and issued an order to show cause under 28 U.S.C. section 1651(a) why Movant should not be enjoined from commencing any further actions in the District Court related to his 2002 conviction for corruption without prior leave of the court. Id. at 230. On that same date, the District Court entered a judgment dismissing the Action. Judgment, Civ. No. 20-01360 (D.P.R. May 26, 2021), ECF No. 17.

On June 2, 2021, Movant filed the Appeal. On June 23, 2021, the First Circuit ordered the parties to show cause whether the automatic stay provisions of sections 362 and 922 of the Bankruptcy Code applied to the Appeal. *Order of Court*, No. 21-1472 (1st Cir. June 23, 2021). On September 20, 2021, after briefing, the First Circuit issued an order staying the Appeal. *Order of Court*, No. 21-1472 (1st Cir. Sept. 20, 2021) (the "Stay Order"). Subsequently, in the course of denying Movant's motion to reconsider the Stay Order, the First Circuit noted that Movant could seek relief from the automatic stay in this Court. *Order of Court*, No. 21-1472 (1st Cir. Nov. 15, 2021).

C. The Inquiry Motion

On December 15, 2021, Movant filed the Inquiry Motion, requesting that this

Court "give its Opinion on whether the automatic stay of PROMESA applies to any economic responsibility of the Office of the Comptroller of Puerto Rico." (Inquiry Mot. at 8.) Movant asks for "CONFIRMATION BY THE COURT OF TITLE III OF PROMESA, ON THE NON-APPLICATION OF THE AUTOMATIC STAY OF PROMESA" to the Appeal, as well as to any subsequent litigation in the event the First Circuit reverses or remands the case on appeal. (Inquiry Mot. at 8.) Construed liberally, the Inquiry Motion seeks legal clearance to pursue the Appeal and any further litigation if Movant prevails on the Appeal.

On January 18, 2022, the Court confirmed the Commonwealth's Title III Plan. (See *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Docket Entry No. 19813 (the "Confirmation Order").)

On January 31, 2022, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") filed the Commonwealth's Response to the Inquiry Motion. In the Response, AAFAF defends the First Circuit's determination on the applicability of the automatic stay and—despite Movant's failure to request relief from the automatic stay—applies the factors from Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"), to argue that Movant has not shown "cause" under section 362(d) of the Bankruptcy Code why stay relief should be granted for the Appeal to proceed. (See, e.g., Resp. ¶¶ 14-16, 22.) Importantly, in the course of applying the Sonnax factors and arguing that none of them supported relief from the automatic stay, AAFAF asserted seven times that Movant's claim against the Commonwealth would be discharged and permanently enjoined as of the effective date of the Plan because Movant did not file a proof of

claim in the Commonwealth's Title III proceedings before the applicable bar date. (Resp. ¶¶ 2 n.2, 25, 27, 29, 34-37.)

On February 7, 2022, Movant filed the Reply. Nowhere in the Reply does Movant recognize or address the effect of the First Circuit's determination on the applicability of the automatic stay, request relief from the automatic stay, respond to AAFAF's application of the Sonnax factors to any implied request for stay relief, or respond to AAFAF's repeated assertion that Movant's claim would be discharged and enjoined upon the effective date of the Plan.

The Plan became effective on March 15, 2022 (the "Effective Date"). (See *Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date*, Docket Entry No. 20349.)

## Discussion

Movant, disregarding the First Circuit's determination that the automatic stay does (or did) apply to his Action and Appeal, argues that it is inapplicable principally on the grounds that: (1) the Oversight Board did not include the OCPR in its Title III filing (Inquiry Mot. at 8); and (2) the OCPR is part of the legislative branch of the Puerto Rico government, and "[t]he Executive Branch of the Government of the Commonwealth of PR, is the only one who is covered by the automatic stay of PROMESA" (Inquiry Mot. at 3, 8). Neither of these arguments has any proper legal or factual foundation, as explained below.

The Court will not purport to review the First Circuit's determination that, as of the entry of the Stay Order, the automatic stay applied to the Appeal. Because, however, Movant implicitly seeks relief from the automatic stay or some other confirmation that he has license to proceed with his litigation concerning his criminal conviction, the Court will analyze the current

status of the stay with respect to his claim and explain the effect of the confirmation of the Commonwealth's plan of adjustment on that claim.

A. <u>Movant's Claim is Against the Commonwealth</u>

The Bankruptcy Code defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C.A. § 101(5) (Westlaw through P.L. 117-168).

Movant's claim against the OCPR is a claim against the Commonwealth for several reasons. Indeed, the OCPR is inseparable from the Commonwealth. Movant makes reference to a list of sixty-three entities that were designated by the Oversight Board as "initial covered entities," asserting that these were the entities included in the Commonwealth's Title III proceedings for the "Primary Government," and therefore were the only entities to enjoy the benefits of the automatic stay, and that the OCPR was not among them. (Inquiry Mot. at 8.) In fact, the cited list bore no immediate relation to the Title III proceedings (and actually pre-dated the Commonwealth's Title III case by seven months) but was instead an initial list of which entities are "covered" in the sense that they were designated as subject to Board oversight under PROMESA. <u>See</u> Fin. Oversight & Mgmt. Bd., Covered Entities (2016), https://drive.google.com/file/d/1D37UiofV0T5s1Q4J54vs3xX_ArGF9532/view [hereinafter Covered Entities List]; <u>see</u> <u>also</u> 48 U.S.C. § 2104(7) & (8).

Despite the lack of an immediate connection to the Commonwealth's Title III case, the Covered Entities List supports the notion that the OCPR and the Commonwealth are united in identity, clearly indicating in an end note that the "Commonwealth of Puerto Rico (Primary Government)": "Includes, all departments, **offices**, programs, etc. and all funds related

to Governmental and Business Activities of the Primary Government such as the General Fund Operating Budget and Non-Budgetary Funds." Covered Entities List at 1 & n.1 (emphasis added). The OCPR is an office related to governmental and business activities of the Commonwealth's "primary government" in light of the Comptroller's constitutionally-appointed duty to "audit all the revenues, accounts and expenditures of the Commonwealth, of its agencies and instrumentalities and of its municipalities, in order to determine whether they have been made in accordance with law[,]" as well as to prepare special reports at the behest of the Legislative Assembly or Governor, as detailed in Article III, section 22 of the Commonwealth Constitution. See P.R. Const. art. III, § 22. Accordingly, through the Covered Entities List, the Oversight Board indicated, and the Court finds, that the OCPR is part of the "Primary Government" of the Commonwealth as the term is used in the Covered Entities List.

Additionally, the OCPR—as the "Controller's Office" and "Oficina del Contralor (OCPR)"—was included on the list of governmental entities identified as comprising the Central Government of Puerto Rico (the "Central Government"), attached to a later filing of direct import in the Title III proceedings: AAFAF's *Informative Motion Regarding Entities Constituting the Central Government of the Commonwealth* (Docket Entry No. 2828, Ex. B at 1) (the "Informative Motion"). The Informative Motion named entities from all three branches of government as part of the Central Government, based on an evaluation of each entity's close nexus to the Central Government, and whether such entity receives general fund appropriations. (Informative Mot. ¶¶ 7-8.) By the Informative Motion, AAFAF indicated that the entities are conceptually inseparable from the Commonwealth; the Court concurs in this assessment. Movant's argument that, as a "legislative" entity, the OCPR is excluded from the Title III proceedings has no foundation in the language of PROMESA or in Commonwealth filings

concerning the debtors.

In sum, the OCPR is a component part of the Commonwealth, and there is no basis for a distinction between executive or legislative branches of the Commonwealth with respect to the OCPR under PROMESA or in the Commonwealth's Title III proceedings. Movant's contention that any stay or injunction imposed on claims against the Commonwealth in connection with the Commonwealth's Title III proceedings is inapplicable to claims against the OCPR is meritless.

Moreover, the Bankruptcy Code defines the term "claim" broadly. See, e.g., Colonial Sur. Co. v. Weizman, 564 F.3d 526, 529 (1st Cir. 2009). The First Circuit has stated: "[A] 'claim' extends to asserted rights of payments, even if contingent." Salgado & Assocs., Inc. v. Cestero-Lopategui, 34 F.4th 49, 54 n.9 (1st Cir. 2022). Here, Movant has a claim against the OCPR, and by extension the Commonwealth, in the form of an "unsecured" "disputed" "contingent" "right to payment." See 11 U.S.C. § 101(5). Significantly, Movant seeks to impose liability in the amount of $12,000,000 upon the OCPR to be paid solely by the Commonwealth. Cruzado-Laureano, 541 F. Supp. 3d at 228.

Accordingly, Movant's claim is against the Commonwealth and subject to treatment under the Commonwealth's confirmed Plan.

B. <u>The Automatic Stay Has Terminated with Respect to the Commonwealth</u>

Under section 362(c)(2)(C) of Bankruptcy Code, the automatic stay expires at the time a discharge is granted. 11 U.S.C. § 362(c)(2)(C).[5] In the time elapsed since the filing and

---

[5] The plain language of 11 U.S.C. § 362(c)(2)(C) refers only to cases "under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13" of the Bankruptcy Code. 11 U.S.C.A. § 362(c)(2)(C) (Westlaw through P.L. 117-168). Section 301(d) of PROMESA, however, states that "a reference to 'this title', 'this chapter', **or words of similar import** in a section of title 11, United States Code . . .

subsequent briefing of the Inquiry Motion, the Commonwealth's Plan was confirmed, the Confirmation Order was entered, and the Effective Date occurred, finalizing the Commonwealth's discharge under the Plan. Accordingly, the automatic stay is no longer in effect with respect to Movant's claim. However, that does not end the inquiry.

    C.    <u>Movant's Claim Has Been Discharged and is Permanently Enjoined</u>

        1.    <u>Movant's Claim is Subject to the Discharge Provision of the Plan and Confirmation Order</u>

            a.    <u>Discharge Provision of the Confirmation Order and Plan</u>

Paragraph 56 of the Confirmation Order and section 92.2 of the Plan provide:

> (a) Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against the Debtors and Reorganized Debtors that arose, in whole or in part, prior to the Effective Date, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets, property, or interests of any nature whatsoever . . . . Upon the Effective Date, the Debtors and Reorganized Debtors shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code and PROMESA Section 407, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and PROMESA Section 407 (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.
>
> (b) Except as expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to

---

made applicable in a case under this title shall be deemed to be a reference to this title." 48 U.S.C.A. § 2161(d) (Westlaw through P.L. 117-168) (emphasis added).

> the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against the Debtors and the Reorganized Debtors pursuant to sections 524 and 944 of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against the Debtors or Reorganized Debtors and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors and Reorganized Debtors, and their respective Assets and property, all such Claims.

(Confirmation Order ¶ 56(b); see also Plan § 92.2(b).)

        b.        <u>Movant's Claim Has Been Discharged</u>

Movant commenced the Action on July 24, 2020, based upon underlying causes of action which accrued more than ten years before the beginning of the Commonwealth's Title III proceedings, and more than fourteen years before the Effective Date. See <u>Cruzado-Laureano</u>, 541 F. Supp. 3d at 229.

Under the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (Docket Entry No. 2521) (the "Initial Bar Date Order") and the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (Docket Entry No. 3160) (the "Bar Date Extension Order" and together, the "Bar Date Orders"), Movant was required to file a proof of claim on or before June 29, 2018 (the "Bar Date"), to have any and all prepetition claims

addressed within the Commonwealth's Title III proceedings.

The only potentially relevant exception to discharge of Movant's claim would be if the claim was a debt "owed to an entity that, before confirmation of the plan, had neither notice nor actual knowledge of the case." 11 U.S.C.A. § 944(c)(2) (Westlaw through P.L. 117-168). Here, the Debtors undertook broad publication of notice of the Commonwealth's Bar Date pursuant to the Bar Date Orders, including publishing notice of the Bar Date in English and Spanish language publications circulating in Puerto Rico and the mainland United States, as well as running radio advertisements throughout Puerto Rico. (Initial Bar Date Order ¶¶ 17-22; Bar Date Extension Order ¶¶ 3-4.) Further, the Informative Motion—identifying the OCPR by name as part of the Central Government—was specifically prepared and disseminated by AAFAF for the purpose of alerting creditors with claims against the Central Government to prepare and file proofs of claim in advance of the Bar Date. (Informative Mot. ¶ 3; see also Informative Mot. ¶ 8 ("The Central Government Entities List has been carefully prepared and reasonably calculated to provide creditors with all necessary information to assist them in identifying which entities to file proofs of claim against.").) The list from the Informative Motion was broadly published along with a reminder notice of the Bar Date in the spring of 2018. (Informative Mot. ¶ 3.) This effectively constituted notice that claims against the OCPR would be addressed within the Commonwealth's Title III case and that Movant must file a proof of claim to have any and all claims addressed within the Commonwealth's claims resolution process.

Movant received notice, but did not file a proof of claim with respect to his disputed contingent unsecured claim against the OCPR in the Title III proceedings. The result of Plan confirmation and the occurrence of the Effective Date is that all "claims" against the Commonwealth arising prior to the Effective Date and not expressly provided for under the Plan

have been discharged.  See 11 U.S.C. § 944(b).  (See also Plan § 92.2(b); Confirmation Order ¶ 56(b).)  Movant's claim, which was not filed, was not expressly provided for under the Plan.

Accordingly, Movant's claim against the OCPR, and so the Commonwealth, has been discharged.

### 2. Movant's Claim is Subject to the Plan Injunction

The answer to Movant's question as to whether the automatic stay applies to his lawsuit is that the automatic stay is not in effect with respect to Movant's claim, but only because a discharge has been granted to the Commonwealth.  See 11 U.S.C. § 362(c)(2)(C).  Movant's claim, as a claim against the Commonwealth, has been discharged and, with respect to such discharged claims, the automatic stay has been superseded by a permanent injunction (the "Plan Injunction") that has an effect similar to that of to the automatic stay and does not expire, even upon dismissal of the Commonwealth's Title III case.  See 11 U.S.C. §§ 524(a)(2), 944(b).  (See also Plan § 92.3; Confirmation Order ¶ 59.)

#### a. The Plan Injunction

Section 92.3 of the Plan and paragraph 59 of the Confirmation Order provide:

> [A]ll Entities who . . . hold . . . Claims . . . discharged or released . . . pursuant to Section 92.2 of the Plan [Discharge and Release of Claims and Causes of Action] are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties [including the Commonwealth]

or any of their respective assets or property . . . .[6]

(Plan § 92.3; Confirmation Order ¶ 59.)

          b.      Movant's Claim Has Been Permanently Enjoined

In brief, because Movant did not file a proof of claim in the Commonwealth's Title III proceedings and his claim did not receive treatment under the Plan, his claim against the OCPR—which was a claim against the Commonwealth—has been discharged, and, under the terms of the Plan Injunction, Movant is permanently enjoined from commencing or continuing any action based upon the discharged claim. (Plan § 92.3; see also Plan § 92.11 [Supplemental Injunction]; Confirmation Order ¶ 59; see also ¶ 65 [Supplemental Injunction].) See also 11 U.S.C.A. § 524(a)(2) (Westlaw through P.L. 117-168) (a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .").

Moreover, because section 1.423 of the Plan defines "Releasing Party" to include "all holders of Claims against the Debtors or their Assets[,]"Movant's claim, and any future claim he may assert in connection with his 2002 criminal proceedings, is a "Released Claim," which is defined by section 1.421 of the Plan to include "(b) Claims and Causes of Action that arise in, are related to or have been or could have been asserted against the Debtors or their Assets in the Title III Cases." (Plan §§ 1.421, 1.423.) Released Claims are similarly subject to a plan injunction. (See Plan §§ 92.6; Confirmation Order ¶ 60.) Accord In re Residential Capital, LLC, 508 B.R. 838, 846-47, 850-51 (Bankr. S.D.N.Y. 2014) (holding movant's claim subject to discharge, release, and injunction provisions of confirmed and effective plan where movant did

---

[6]     "Released Parties" is defined by section 1.422 of the Plan to include the "Government Parties," which term is defined in section 1.276 of the Plan to include "the Debtors, including, without limitation, any of its agencies[.]" Plan §§ 1.276, 1.422.

not file a proof of claim).

Finally, the Plan provides that "All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms"—which is to say permanently, unless modified by this Court. (Plan § 92.25; see also Confirmation Order ¶ 66 ("each injunction imposed by a Court order shall remain in effect permanently").)[7]

Accordingly, Movant cannot proceed with his litigation because he is permanently enjoined by the terms of the Plan from maintaining the Appeal or subsequent actions based upon the same claim against the Commonwealth, including the OCPR.

## CONCLUSION

In conclusion, the OCPR is part of the Commonwealth, and Movant's claim against the OCPR was therefore subject to resolution in the Commonwealth's PROMESA Title III proceedings as well as to the automatic stay. Now that the Plan of adjustment for the Commonwealth has been confirmed and has become effective, under the terms of the confirmed Plan, Confirmation Order, and PROMESA, Movant's Action and Appeal cannot be prosecuted

---

[7] It was not necessary that Movant file a proof of claim in the Commonwealth's Title III proceedings to be bound by the terms of the discharge and Plan Injunction. Under section 944 of the Bankruptcy Code: "(a) The provisions of a confirmed plan bind the debtor and any creditor, whether or not—(1) a proof of such creditor's claim is filed or deemed filed . . . ." 11 U.S.C.A. § 944 (Westlaw through P.L. 117-168). (See also Plan § 92.2(a); Confirmation Order ¶ 56(a).)

because his claim has been discharged and is permanently subject to the Plan Injunction.

This Memorandum Order resolves Docket Entry Nos. 19525 and 21492.

SO ORDERED.

Dated: September 21, 2022

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge