# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of | PROMESA<br>Title III<br><br>Adv. Pro. No. 19-391 (LTS) |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| PUERTO RICO ELECTRIC POWER AUTHORITY,<br>And<br><br>THE PUERTO TICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>As Section 926 co-trustee of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. BANK NATIONAL ASSOCIATION, as Trustee<br><br>    Defendant | |
| CORTLAND CAPITAL MARKET SERVICES LLC, *et al.,*<br><br>    Plaintiffs<br><br>    v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*,<br><br>    Defendants | PROMESA<br>Title III<br><br>Adv. Proc. No. 19-396 (LTS) |
| SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA<br>AUTORIDAD DE ENERGIA ELECTRICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, *et al.*, | PROMESA<br>Title III<br><br>Adv. Pro. No. 19-405 (LTS) |

Defendants

# RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD TO MEDIATION TEAM'S PROPOSED AMENDED ORDER ESTABLISHING TERMS AND CONDITIONS OF MEDIATION

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") in this Title III case pursuant to section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),[2] respectfully submits this response to (i) *[Proposed] Amended Order Establishing the Terms and Conditions of Mediation* [ECF No. 2966][3] (the "Proposed Amended Order") and (ii) *Notice of Mediation Team's Proposed Amended Order Establishing Terms and Conditions of Mediation* [ECF No. 2967] (the "Notice") filed by the Mediation Team[4] and respectfully states:

## RESPONSE TO PROPOSED AMENDED ORDER

1. The Oversight Board reiterates its gratitude to the Mediation Team for its willingness to continue to oversee Mediation, and is grateful for the Court's September 20, 2022 order[5] continuing to designate the Mediation Team to facilitate negotiations among stakeholders in PREPA's Title III Case. The Mediation Team's determination not to have extended the prior

---

[2] PROMESA is codified at 48 U.S.C §§ 2101–2241.

[3] Unless otherwise stated, all ECF references shall refer to Case No. 17-4780.

[4] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the *Urgent Motion of Financial Oversight and Management Board for Order (I) Establishing Schedule to Continue Negotiations During Litigation of Gating Issues Pursuant to Litigation Schedule and (II) Granting Related Relief* (ECF No. 2269 in Case No. 17-3283; ECF No. 2956 in Case No. 17-4780; ECF No. 11 in Adv. Pro. No. 19-391; ECF No. 98 in Adv. Pro. No. 19-396; and ECF No. 70 in Adv. Pro. No. 19-405, the "Urgent Motion").

[5] *Order Concerning Continuation of PREPA Mediation* [ECF No. 2987].

iii

mediation coincided with the Bondholders' and Oversight Board's last proposals made after months of negotiations whose mandatory disclosure demonstrated a large gap. The Oversight Board believes the gap is unbridgeable without litigation of the security and allowability of the Bondholders' claims, but also believes parallel negotiations best preserve the possibility of settlement while putting a confirmable plan in reach regardless of success in the negotiations. To that end, the Oversight Board supports many provisions of the Proposed Amended Order.[6] Certain terms of the Proposed Amended Order and certain suggestions in the Notice, are problematic, however, and the Oversight Board respectfully submits a revised, proposed order, as **Exhibit A** (the "<u>Board's Proposed Order</u>"), adopting many provisions and varying other provisions for the following reasons:

      2.    <u>"Pause" of Litigation</u>. The Oversight Board agrees the Mediation Team should have authority to file reports "at any time during the Mediation recommending whether any pending litigation scheduled by the Court should be paused to enable negotiations to proceed with a materially enhanced prospect of success." Proposed Amended Order at 4. Although implicit in the Mediation Team's proposed order, the Oversight Board's version makes express that parties in interest may object to pauses. As a practical matter, the Oversight Board believes that until the critical aspects of the Bondholders' claims are fully briefed and ready for decision, a pause would be counter-productive because the litigants' knowledge that the matter may be determined at or about a fixed time is what is best calculated to lead to settlement. In any event, the Board's Proposed Order, adds that "all parties to the subject litigation shall have the right to respond to any request to pause pending litigation."

---

[6] Case No. 17-3283, ECF. No. 20527; Case No. 17-4780, ECF. No. 2773.

3. <u>Attendance of Oversight Board Members at Mediation Sessions</u>. As a practical matter, Oversight Board members have attended negotiation sessions for the last five years, notwithstanding that they each have demanding day jobs and they are uncompensated for their time on Oversight Board business. Not all members attend every session, but each member has participated when practicable and beneficial.[7] They have each been super dedicated and remain so. That, however, is voluntary. The Oversight Board has the discretion, and submits it must be allowed to retain the discretion, to have its employees and advisors negotiate on its behalf. Notably, the board of directors or the equivalent of each creditor party does not attend negotiations to the best of our knowledge. They never have. We understand the Mediation Team might desire to have the Oversight Board attend negotiations so it can respond more quickly to counterproposals. That is understandable, but the circumstances must be considered. The Oversight Board acts in a deliberative manner with access to its advisors and other experts to consider new points and data raised by creditors, AAFAF, the Legislature, and the unions. The Oversight Board's members consider and debate opposing positions. Thus, the Oversight Board sometimes requires more time to act in the best interest of Puerto Rico and all its people and stakeholders. Rapid changes in positions pose risks to attaining the best possible results for Puerto Rico. The Proposed Amended Order (at 5) would "direct the members of the Oversight Board to attend and participate in Mediation sessions without undue delay of the scheduling of such sessions." The Oversight Board has in the past participated and believes it can continue to participate productively in mediation without the added requirements proposed by the Mediation Team. The Oversight Board also endeavors to be available quickly, but cannot always be quick

---

[7] Notably, in the only 'in person' mediation session that was conducted by the Mediation Team, a majority of the Board was present in person, and the remainder of the Board dialed-in for parts of the session.

3

when the presence of individual members is requested. The Oversight Board therefore opposes any order directing it as to who must attend and negotiate for it.

4. <u>Designation of Lead Negotiator</u>. The Proposed Amended Order requires the Oversight Board to "designate a lead negotiator." Proposed Amended Order at 5. A footnote provides "The Court strongly suggests . . . that the Oversight Board retain a financial advisor with extensive experience in financial restructurings to fill this role." *Id.* n.12. As explained above, it is important the Oversight Board retain the discretion PROMESA allows to negotiate as it believes will enable it to carry out its statutory missions to restore fiscal responsibility and market access. The Oversight Board's financial advisors have unparalleled experience and track record in municipal restructurings inside and outside Chapter 9. If circumstances change and another advisor is required, the Oversight Board will act promptly. The Oversight Board's advisors, one of whose principals has been designated to function and has consistently functioned as the "lead negotiator," work under the close control of the Oversight Board, whereby the Oversight Board determines what proposals can be made, what messages can be communicated, and what objectives can be pursued, not the other way around. An additional advisor could also inject substantial delay and expense, and coordination and messaging complications. PROMESA provides the Oversight Board with discretion over its functions (*see, e.g.*, PROMESA § 101(h)), including who it selects as its employees (PROMESA § 103(a), (b)) and advisors (PROMESA § 104(g) (Oversight Board empowered to enter into contracts as it sees fit), § 108(a) (Oversight Board "shall be represented by such counsel as it may hire or retain"), § 316(a) (Oversight Board may hire professionals in Title III case "in the Oversight Board's sole discretion")). The Board's Proposed Order, therefore, removes this language.

4

5. <u>Dataroom Requirement</u>. The Proposed Amended Order (at 4–5) provides that the Oversight Board shall assemble data in a dataroom containing its economic analyses and financial projections, among other things. This request is unnecessary, as the Oversight Board has already provided its nonprivileged data, economic analyses, and projections to creditors. To the extent the request is for the Oversight Board to shares its professionals' analyses of creditor proposals, the Oversight Board is open to sharing this information on an ad hoc basis to the extent it is not privileged or work product. The Bondholders' advisors, however, have not provided certain analyses requested by the Oversight Board.

**RESPONSE TO NOTICE**

6. The Notice by the Mediation Team makes certain recommendations for how PREPA's Title III case should proceed that intersect with the relief the Oversight Board seeks in its Urgent Motion filed in response to the Court's Path Forward Order. The Oversight Board appreciates the suggestions and concurs in part. Based on its years of involvement in Title III cases for the Commonwealth, PREPA, and others, however, the Oversight Board, believes some of the suggestions would be counterproductive to advancing PREPA's case to resolution. The Oversight Board respectfully submits that, under PROMESA, its proposed path be afforded deference. *AmeriNational Cmty. Servs., LLC v. Ambac. Assur. (In re Fin. Oversight & Mgmt. Bd.)*, 635 B.R. 216, 231 (D.P.R. 2021) ("PROMESA provides substantial deference to the strategy and tactics of the Oversight Board."); *In re Fin. Oversight & Mgmt. Bd.*, 478 F.Supp.3d 190, 197 (D.P.R. 2020) ("The Oversight Board, as the sole representative of [the debtors], is entitled to deference as it makes important decisions on behalf of those debtors."); *see* Notice at 2 ("recognizing that the litigation schedule is of direct importance to the conduct of the Mediation, although also subject to other considerations that are beyond the Mediation Team's remit.").

5

7. <u>Deadline to File a Plan and Disclosure Statement</u>. The Mediation Teams shares the Oversight Board's view that the "the prospects of a successful Mediation will be greatly enhanced" if a litigation schedule is adopted by the Court. Notice at 2. The Mediation Team, however, asks the Court to order that, while the Oversight Board is concurrently litigating with creditors and participating in Mediation sessions, the Oversight Board file a "Toggle Plan" and disclosure statement in 60 days, with litigation to proceed in the context of confirmation, and a hearing to be held no later than June 2023. The deadline is possible and the Oversight Board wants to accomplish it, but the suggestion is otherwise problematic for a number of reasons.

8. In the big picture, the Bondholders' allowable claim, whether secured or unsecured, has profound implications for what can be paid to all other constituencies. The Bondholders propound a claim in excess of $8 billion without postpetition interest and more than $10.5 billion with postpetition interest included. If any material portion of the $8 billion claim is not allowable, it has a dramatic impact on what PREPA will pay all other allowed claims. There are too many potential outcomes of the Bondholders' ultimately allowable secured and unsecured claims for there to be a 'toggle plan.' We would need multiple toggles! So, the concept is impracticable as a factual matter.

9. While the Oversight Board recognizes the Court may establish a deadline for filing a plan, PROMESA does not provide for the Court to predetermine the contents or structure of the plan, including that it be a "Toggle Plan." *See e.g.* PROMESA §§ 312, 313, and 315. The purpose of litigating the Threshold Issues is to determine Bondholders' and Current Expense Claimants' rights, which will pave the way to strike deals with those creditors or other groups. It remains the Oversight Board's strong preference to file a consensual plan, at least in part, and as it currently stands, the Oversight Board does not have a deal with any major creditor constituency to serve as

an impaired accepting class for a plan. Because mediation has taken a "staged" approach focusing solely on the Bondholders' claims, (*see* ECF No. 2908 ¶ 1), the Oversight Board has not had the opportunity to complete its negotiations with PREPA's unions or retiree system, or to meaningfully engage with other creditor constituencies. The Oversight Board should be given the opportunity to reach consensus with other parties before it files a nonconsensual plan.

10. Because the Oversight Board understands and shares the desire of the Mediation Team and the Mediation Parties to begin the confirmation process as swiftly as possible, the Oversight Board can commit to filing a proposed plan of adjustment within 45 days of the earlier of (i) a restructuring support agreement with a major creditor constituency, or (ii) the Title III Court's adjudication of the Amended Lien Challenge.

11. <u>Litigation on Non-Recourse and Motion to Dismiss</u>. The Mediation Team states that "if litigation is to proceed, the Mediation Team believes that scheduling only two litigation issues—the 'non-recourse' and dismissal/lift stay/receiver disputes—for consideration before a hearing on confirmation of a Toggle Plan might further such negotiations, while all other issues should be heard in the context of confirmation or thereafter." Notice at 3 n.4.

12. The Oversight Board appreciates the Mediation Team's recognition of the significance of the non-recourse issue (*i.e.*, that creditors having limited recourse to certain collateral have no allowable unsecured claims against the debtor). The Mediation Team expressly recognizes the need to litigate the non-recourse issue. That issue, however, cannot be adjudicated in isolation from the issues of lien scope and perfection in the Amended Lien Challenge. The Bondholders have already acknowledged they have limited recourse to certain collateral, which renders their claims non-recourse against PREPA. *See, e.g.*, Initial Receiver Motion (as defined below) at 1 ("The purpose of [PREPA's promise to set rates at specific levels] is to compensate

7

PREPA's bondholders for the limited recourse nature of the Bonds and the inability of PREPA to grant a mortgage or other lien on its physical assets."). The question then is what security are the bondholders limited to? The Bondholders assert they are secured by all PREPA's Revenues. The Oversight Board, Committee, and others, argue that based on the language of the Trust Agreement and the Court's precedent in HTA and PRIFA, the Bondholders are limited to monies deposited in the Sinking Fund.[8] This is a gating issue critical to determining what can and should be paid to the Bondholders.

13. As explained in its Reply in support of its Urgent Motion (ECF No. 2990, ¶¶ 1, 3, 13), the Court's Path Forward Order directed the Oversight Board to choose between showing cause why the case should not be dismissed and filing a litigation schedule, a plan or a plan term sheet. The Oversight Board chose the litigation schedule as no plan was practicable for the reasons explained above, and dismissal undermines PROMESA by preventing PREPA from discharging its debts and creating chaos that could easily cause all restructurings already completed to-date to fail. Most importantly, the Oversight Board's litigation proposal only included issues critical to a successful restructuring and confirmation. Dismissal has nothing to do with restructuring and confirmation. It is the antithesis of both. Additionally, litigating dismissal should be held in abeyance because the Threshold Issues must be determined in connection with any dismissal, lift stay,[9] or plan confirmation process. No purpose is served by diverting the parties' attentions and

---

[8] Indeed, the Bondholders effectively concede the HTA and PRIFA decisions are controlling on the limited scope of their security interest by no longer moving for lack of adequate protection as cause to lift the stay (ECF No. 2937 ¶ 71), despite doing so on two prior occasions.

[9] While the Bondholders seek to lift the stay solely on "balance of harms" issues, the First Circuit has made clear that the "balance of harms" analysis requires an examination of their purported security interest. *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 899 F.3d 13, 23 (1st Cir. 2018) ("to say that the potential harm to the debtor and the Title III process 'far outweighs the temporary impediments imposed on the bondholders' would also seem to require some assessment of the pre-petition value of the bondholders' collateral (if any exists), whether the bondholders face a threat of uncompensated diminution in such value, whether the bondholders are seeking the protection of existing collateral or, instead, the creation of

8

resources away from those Threshold Issues, the adjudication of which will provide extraordinary clarity on creditors' rights and make deals and a plan imminently achievable.

14. Finally, the Court should stay any litigation of the "dismissal/lift stay/receiver disputes," especially if it sets a deadline to propose a plan or plan term sheet. If the Oversight Board proposes a confirmable plan, there can be no cause to dismiss the case. Indeed, even the Bondholders recognized that setting a plan deadline is an alternative path to litigating the dismissal motion. Bondholder Obj. [ECF No. 2966] at 23 ("In the alternative, if the Court chooses to hear the Motion to Dismiss/Lift-Stay at a later date, then the Court should require the Oversight Board, no later than November 1, 2022, to propose a plan of adjustment and timetable for obtaining confirmation of that plan at a hearing scheduled no later than May 1, 2023."). Stay relief would require the Bondholders' claim to be determined first, which is exactly what the Oversight Board has proposed to do.

WHEREFORE the Oversight Board requests the Court enter the Board's Proposed Order and grant it such other relief as it deems just and proper.

Dated: September 23, 2022  
       San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*  
Martin J. Bienenstock  
Paul V. Possinger  
Ehud Barak  
Margaret A. Dale  
Michael T. Mervis

---

new collateral, and what, if any, adequate protection PREPA can offer short of a receiver being appointed to manage it if protection is warranted.") (citing *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370 (1988)).

9

      Daniel S. Desatnik
      (Admitted *Pro Hac Vice*)
      **PROSKAUER ROSE LLP**
      Eleven Times Square
      New York, NY 10036
      Tel: (212) 969-3000
      Fax: (212) 969-2900
      Email: mbienenstock@proskauer.com
             ppossinger@proskauer.com
             ebarak@proskauer.com
             ddesatnik@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for PREPA*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Co-Attorney for the Financial Oversight and Management Board as representative for PREPA*

10