# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                   :
In re:                                             :
                                                   :
                                                   :
THE FINANCIAL OVERSIGHT AND                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                  :   Title III
                                                   :
    as representative of                           :   Case No. 17-BK-3283 (LTS)
                                                   :
THE COMMONWEALTH OF PUERTO RICO, et al.,           :   (Jointly Administered)
                                                   :
    Debtors.¹                                      :
------------------------------------------------------------------------ x
                                                   :
In re:                                             :
                                                   :
THE FINANCIAL OVERSIGHT AND                        :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                  :   Title III
                                                   :
    as representative of                           :   Case No. 17-BK-4780 (LTS)
                                                   :
PUERTO RICO ELECTRIC POWER AUTHOIRTY,              :
                                                   :
    Debtor.                                        :
------------------------------------------------------------------------ x
```

### OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (A) NOTICE OF MEDIATION TEAM'S PROPOSED AMENDED ORDER ESTABLISHING TERMS AND CONDITIONS OF MEDIATION AND (B) PROPOSED AMENDED ORDER ESTABLISHING TERMS AND CONDITIONS OF MEDIATION

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully submits this objection (the "Objection") to (a) the *Notice of Mediation Team's Proposed Amended Order Establishing Terms and Conditions of Mediation* [Docket No. 2997 in Case No. 17-4780 (LTS)] (the "Notice") and (b) the *[Proposed] Amended Order Establishing the Terms and Conditions of Mediation* [Docket No. 2996 in Case No. 17-4780 (LTS)] (the "Proposed Amended Order").[2] In support of this Objection, the Committee respectfully states as follows:

## OBJECTION

1. The Committee has a number of concerns with the Mediation Team's proposals regarding the parameters for further mediation. As an initial matter, however, the Committee respectfully requests that the Court defer ruling on the Mediation Team's Proposed Amended Order and the Mediation Team's proposed litigation sequencing until after the Court has had the opportunity to hear from the Committee and other parties at the September 28, 2022 hearing on the Oversight Board's motion requesting approval of a litigation schedule [Docket No. 2956 in Case No. 17-4780 (LTS)] (the "Scheduling Motion"),[3] so that all scheduling and process issues can be considered and decided in a holistic fashion. Indeed, whether and to what extent the mediation process should be amended should depend, in large part, on the litigation schedule ultimately approved by the Court, including the issues to be litigated, the sequencing of such

---

[1] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Notice and the Proposed Amended Order, as applicable.

[3] The Court's scheduling order on the Notice and the Proposed Amended Order [Docket No. 2998 in Case No. 17-4780 (LTS)] notes that, after the September 23 objection deadline, the Court will take the matter on submission.

litigation, and whether such litigation should occur prior to, or within the context of, confirmation of a plan of adjustment.

2. In this regard, the Committee reiterates its position, which is also reflected in the Oversight Board's litigation scheduling proposal, that the following two threshold issues (the "Threshold Issues") should be litigated first: (1) whether the PREPA bondholders' security interest is limited to funds actually deposited into specified accounts held by the PREPA bond trustee (in the amount of approximately $8.8 million as of PREPA's petition date); and (2) whether the PREPA bonds are non-recourse obligations such that, in accordance with section 927 of the Bankruptcy Code, the PREPA bondholders have no claim against, and are not entitled to distributions from, PREPA for any difference between the face amount of the bonds and the funds on deposit in the specified accounts. All other issues that other parties or the Mediation Team suggest should be litigated are entirely dependent on the resolution of the Threshold Issues.

3. As it relates to the Mediation Team's substantive proposals (in the Amended Proposed Order and the Notice), the Committee has a number of concerns. First, the Committee is concerned about the proposed expansion of the Mediation Team's powers under the Proposed Amended Order that would appear to allow the Mediation Team to (a) determine whether the parties themselves have reached a resolution in the Mediation prior to the Termination Date, even if the parties do not agree that a resolution has been reached,[4] and (b) determine to what extent Mediation Parties other than the Oversight Board would be given access to the new digital data room.[5] Whether a settlement has been reached should be determined by the affected Mediation Parties, not the Mediation Team. Indeed, the Mediation Team very recently stated

---

[4] Proposed Amended Order at 4.
[5] *Id.* at 5-6.

2

that it believed that a settlement was at hand, while the Oversight Board has clearly rejected that notion. And access to any digital data room should be open to all Mediation Parties without restrictions.[6]

4. The Committee is also concerned about (a) the Mediation Team's recommendation that the Oversight Board should proceed with filing a Toggle Plan within the next 60 days, with the Threshold Issues (and other issues) to be litigated within the context of a confirmation hearing to be held no later than June 2023[7] and (b) the Mediation Team's suggestion that the Oversight Board should hire another financial advisor with "extensive experience in financial restructurings."[8]

5. The essence of every mediation is to have a ***neutral party*** explore whether it is possible to bring parties together to a settlement, and, at the end of that process, the mediator(s) announces whether the mediation has been successful or not. In this case, however, the mediation process seems to have migrated from a traditional mediation process to the Mediation Team taking on the role of a quasi-party and perhaps more. The suggestion that the Oversight Board should hire another financial advisor encroaches upon the Oversight Board's choice of its advisors. The Committee does not believe the Mediation Team should be attempting to second-guess the choices of professionals made by board members who, as the Court is well aware, include, among others, a renowned bankruptcy law professor, an economics scholar, and a

---

[6] The Proposed Amended Order would also give the Mediation Team the ability to recommend that pending litigation "be paused to enable negotiations to proceed with a materially enhanced prospect of success." Proposed Amended Order at 5. The Committee has no objection to the Mediation Team being able to make such a recommendation, provided that it is made clear that parties in interest have the right to object to any such recommendation, with such issue to be decided by the Court.

[7] Proposed Amended Order at 5, n.12.

[8] *See* Notice at 2-3.

3

former bankruptcy judge that presided over some of the biggest and most complex corporate bankruptcies in history.[9]

6. The Committee also has serious concerns about the construct of a Toggle Plan without the Threshold Issues being determined first. The multitude of alternative scenarios that would have to be considered is endless. The treatment of the PREPA bond claims alone would have to take into account at least the following eight (8) different potential litigation outcomes (and potentially many additional outcomes):[10]

    (i) The PREPA bondholders hold (a) an allowed secured claim secured only by the funds in the specified accounts but (b) no unsecured deficiency claim;

    (ii) The PREPA bondholders hold (a) a claim secured only by the funds in the specified accounts, but such security interest is avoidable (*i.e.*, the PREPA bondholders hold an unsecured claim with recourse only to the funds in such accounts), and (b) no unsecured deficiency claim;

    (iii) The PREPA bondholders hold (a) an allowed secured claims secured only by the funds in the specified accounts and (b) an unsecured deficiency claim;

    (iv) The PREPA bondholders hold (a) a claim secured only by funds in the specified accounts, but such security interest is avoidable (*i.e.*, the PREPA bondholders hold an unsecured claim with recourse only to the funds in such accounts), and (b) an unsecured deficiency claim;

    (v) The PREPA bondholders hold an allowed secured claim secured by all of PREPA's gross revenues;

    (vi) The PREPA bondholders hold a claim secured by all of PREPA's gross revenues but such security interest is avoidable or otherwise limited, in whole or in part;

---

[9] To be clear, the Committee raises this issues not as the Oversight Board's proxy, but rather as an important process issue. Indeed, the Committee has had its share of disagreements with the Oversight Board (and likely will continue to have some disagreements in the future).

[10] For example, even if the bond documentation granted the security interests asserted by the PREPA bondholders, how are those security interests impacted by sections 552 and 928 of the Bankruptcy Code? Moreover, the PREPA bondholders have asserted that they have been granted security interests in various types of collateral (such as gross revenues, future revenues, covenants and remedies). If they prevail in litigation, some or all of such collateral would have to be valued, which would create countless additional scenarios. And all of this ignores that additional toggles would be needed to account for the possibility that the claims (or some portion of the claims) of the fuel line lenders and/or the unions qualify as current expenses entitled to priority vis-à-vis the PREPA bondholders, but, of course, not over unsecured creditors.

4

  (vii) The PREPA bondholders hold an allowed secured claim secured by all of PREPA's net revenues; and

  (viii) The PREPA bondholders hold a claim secured by all of PREPA's net revenues, but such security interest is avoidable or otherwise limited, in whole or in part.

7. Each scenario would also have repercussions on what PREPA may be able to pay other creditors. In other words, the plan treatment for every other creditor class would similarly have to take into account the alternative plan treatment for the PREPA bondholders. To make matters even more complex, each of these scenarios would raise its own confirmation issues, including as to feasibility, classification, unfair discrimination, disparate treatment, and the best interests of creditors. Instead of streamlining the plan confirmation process and paving PREPA's way to emergence from Title III, moving forward with a Toggle Plan (without resolution of the Threshold Issues) would mire the Oversight Board, PREPA, and PREPA's creditors in years of litigation and, in the end, would be far more costly than litigating the Threshold Issues in advance of formulating a plan of adjustment.

8. Finally, the Committee is concerned, based on its experience to date, that it will not be meaningfully involved—or involved at all—in the next phase of the mediation process the Mediation Team has proposed.[11] The Committee became aware this week that, during the Mediation to date, every major creditor constituency in the Mediation *other than the Committee* has received or been included in negotiations regarding proposals for the treatment of their respective claims. This is not a mere sequencing issue. During the mediation process, creditors with inferior or equal rights to the Committee's constituents[12] have, practically, been negotiating

---

[11] For example, the Proposed Amended Order would allow the Mediation Team to establish separate Mediation schedules for the various Mediation Parties. *See* Proposed Amended Order at 4.

[12] The aggregate asserted amount of pending general unsecured claims (after excluding a number of unsecured claims that fall outside the Committee's constituency) is greater than $3 billion. Of course, the Committee recognizes that the asserted claim amount is often far in excess of the amount that is ultimately allowed. However, proofs of claims are *prima facie* valid, and parties involved in the Mediation cannot simply wave a magic wand and assume that these claims do not exist.

over how to split up the proverbial pie. Unless the Committee is allowed to actively participate in these negotiations, the Committee will be faced, once again, with the argument that there are no funds left for its constituents. The Committee is hopeful that the Court will not tolerate this "everyone but the Committee" approach.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court deny the relief requested by the Mediation Team and grant the Committee relief consistent with the foregoing.

Dated: September 23, 2022

By: /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

7