# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY TO RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD TO URGENT MOTION FOR EXTENSION OF ADMINISTRATIVE EXPENSE CLAIM BAR DATE AND PROPER SERVICE OF PROCESS REQUEST TO BE HEARD**

**TO THE HONORABLE DISTRICT COURT:**

**COME NOW**, Ivelisse Calderón-Alibrán and Carlos Torres Viada (collectively, "Movants") as parties in interest, by and through the undersigned counsel, and respectfully state as follows:

### I. INTRODUCTION AND RELEVANT BACKGROUND

1. On January 18, 2022, this Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* **[Docket No. 19784]** ("Plan") **[Docket No. 19813]** ("Confirmation Order"). The Plan was effective on March 15, 2022, when the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") released a *Notice Of (A) Entry Of Order Confirming Modified Eighth Amended Title III Plan Of Adjustment Of The Commonwealth Of Puerto Rico, Et Al. Pursuant To Title III Of PROMESA And (B) Occurrence Of The Effective Date* ("Notice of Effective Date"). **[Docket No. 20349]**

2. On or around April 2022, the Puerto Rico Department of Justice ("DOJ") began filing motions to stay or dismiss litigation in the state and federal courts, pursuant to the *Notice of Effective Date.* This prompted the current contested matter. Specifically, the Movants received such notices in a civil rights case and an employee discrimination claim against the Commonwealth of Puerto Rico ("Commonwealth"). Both Movants were told that their claims should be channeled through the Administrative Expense Claim procedure before the June 13 Administrative Claim Bar Date.

3. On June 13, 2022, the Movants retained the services of the undersigned counsel and submitted their *Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of Process and Request to be Heard.* **[Docket No. 21217]** ("Urgent Motion"). The crux of the *Urgent Motion* was that the *Notice of Effective Date* was improper, inopportune, and inadequate.

4. Firstly, to the extent that the Movants were unable to decipher whether their claims were included in the Administrative Expense Claim category from the text of the *Notice of Effective Date*, it was inadequate. Additionally, the *Plan* did not provide notice that Movants' claims were included. Secondly, because Movants did not receive notice of the *Notice of Effective*

2

*Date* from Prime Clerk LLC, now Kroll Restructuring Administration, it was inopportune. Lastly, as the Movants only received notice from the DOJ in the context of a motion for the administrative dismissal of their cases, the notice was highly improper.

5. After various extensions, on September 9th, 2022, the Oversight Board filed its *Response of The Financial Oversight and Management Board to Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of Process Request to be Heard* ("Response"). **[Docket Entry 22130]**

6. In the *Response,* the Oversight Board incorrectly questioned the Movants' standing, alleging that they were not among the parties that did not receive proper notice of the *Notice of Effective Date.* Nonetheless, the Oversight Board appears to concede that the notice was improper and inadequate overall, and, thus, provided a *Proposed Order* and the *Proposed Form of Publication Notice* ("Proposed Notice"). **[Docket Entry 22130, Exhibit A and B]**

7. The Movants file this *Reply* to clarify their standing for the present contested matter and, also, to request modifications to the *Proposed Order* and *Proposed Notice* that would better serve the purposes of their *Urgent Motion.*

## II. MOVANTS' REPLY

### A. Movants do not lack standing to initiate the present contested matter.

8. The Oversight Board questions whether the Movants have standing in this case. While it does not request for the dismissal of the matter and, in fact, concedes to provide a remedy, the Movants feel the need to address this issue.

9. "[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)(citation and quotation marks omitted). The

Oversight Board's argument is that Movants lack standing because they received proper notice of the *Notice of Effective Date* and, therefore, are improperly advocating for absent third-parties.

10. As an initial matter, the Oversight Board's allegation that Movants received proper notice of the *Notice of Effective Date* is meritless. The evidence provided by the Oversight Board to sustain that "[c]ritically, the Effective Date Notice was served on Movants' counsel of record in the underlying litigations" is lacking. **[Docket No. 22130 ¶ 7]** The docket entries cited by the Oversight Board, attached as **Exhibits C and D**, include the names of the Movants (though in some cases misspelled) with no address or contact information; no reference to any litigation; and no reference to counsel of record.[2] In fact, the only information that accompanies the names is: "Address on file." **Exhibit C, pg. 4, 7; Exhibit D, pg. 15, 38.** Thus, the Oversight Board's allegation is unavailing. Moreover, neither Movants nor their counsel in the underlying litigations are on the Master Service list, attached as **Exhibit E.**[3] Additionally, even if there had been notice to Movants' counsel in the context of another proceeding, which the Movants deny, this does not equate to notice to the Movants.

11. Nonetheless, as shown by the Oversight Board's *Proposed Order,* had the Movants received the *Notice of Effective Date,* it still would have been inadequate. The Oversight Board contends that "Movants lack standing to seek the relief requested in the Motion when they, in fact, received notice of the Administrative Claim Bar Date (and filed the Motion on such date) and understood the requirement to file a proof of Administrative Expense Claim with respect to their asserted postpetition claims." **[Docket No. 22130 ¶ 7]**

---

[2] It should be noted that Movant Torres Viada's underlying litigation is not even a federal case.
[3] This counsel is attorney Judith Berkan and Donald Milán, who are not counsel in this contested matter.

12. To begin with, the first time that the Movants became aware that their claim **might** be subject to the Administrative Claim Bar Date was when the DOJ presented their notice that their claims were subject to the injunction and the Court lacked energy. As declared in the *Urgent Motion*, the text of the Plan and the *Notice of Effective Date* do not expressly include this kind of claim as an administrative expense. It is only when the DOJ raises this possibility, in an effort to dismiss the underlying litigations, that it becomes public. It was only upon the threat of the Administrative Claim Bar Date that Movants came to the undersigned counsel for advice and managed to file the *Urgent Motion* just before the Administrative Claim Bar Date expired.

13. The underlying litigations are a civil rights case under local law and Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983") and a Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") employee discrimination case against the Commonwealth. Neither of these types of claims were included in the Bankruptcy Code, PROMESA, the Plan or the *Notice of Effective Date* as administrative expense claims. Not even the case law which extends the definition of an administrative expense claim to some torts cases was referenced in any of these documents. Thus, the notice was fundamentally inadequate.[4]

### B. The Oversight Board's blanket inclusion of post-petition cases as administrative claims is improper and the alternative injunction is unconstitutional.

14. The present contested matter presents a problematic position of the Oversight Board that post-petition cases are somehow automatically administrative expense claims and, therefore,

---

[4] Adequate notice must be clear, open, and explicit. *See United States v. Monahan (In re Monahan),* 497 B.R. 642, 651-52 (B.A.P. 1st Cir. 2013). In a bankruptcy proceeding, "a bar date in a bankruptcy case should be **prominently announced and accompanied by an explanation of its significance**." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 398 (1993)(emphasis added)(citation omitted).

specific cases require an exemption. However, this is contrary to the prevailing doctrine in bankruptcy law.

15. PROMESA itself does not provide a definition of administrative expense claims. However, Section 301 of the Act incorporates Section 503 and 507(a)(2) of the Bankruptcy Code. Section 503 of the Bankruptcy Code does not define administrative expenses either, but it provides a list of claims that are allowed as administrative expenses:

> **After notice and a hearing**, there shall be allowed administrative expenses, . . . including—(1) (A) **the actual, necessary costs and expenses of preserving the estate** including [wages for services rendered postpetition] and [wages and benefits awarded pursuant to a judicial or NLRB proceeding as backpay postpetition, when it is attributable to a violation of state or federal law regardless of the date of the unlawful conduct]; (B) [taxes]; (C) [fines or penalties related to taxes]; . . . (4) **reasonable compensation for professional services rendered [in the pendency of the case].** 11 U.S.C. § 503(b)(emphasis added).

16. Through case law, certain post-petition claims have been allowed as administrative expense claims through an equitable doctrine. Specifically, in *In re Fin. Oversight & Mgmt. Bd.,* 481 F. Supp. 3d 60 (D.P.R. 2020), this Court summarized the doctrine:

> The "fundamental fairness" doctrine, which has its origins in Reading Co. v. Brown, 391 U.S. 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968), has been **interpreted within the First Circuit to support administrative expense claim priority for two categories of claims that do not otherwise come within the plain language of section 503(b) of the Bankruptcy Code.** See In re Healthco Int'l, Inc., 272 B.R. 510, 513 (B.A.P. 1st Cir. 2002), aff'd, 310 F.3d 9 (1st Cir. 2002). As the Bankruptcy Appellate Panel for the First Circuit has explained, "the 'fundamental fairness' exception is recognized **when the debtor's post petition operations occasion tortious injuries to third parties** (*Reading*[]), **or when the claim arises from post petition actions that deliberately violate applicable law and damage others** (*Charlesbank*[])." Id. (emphasis in original) (citing Reading, 391 U.S. 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751; Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st Cir. 1985)). Id. at 65(emphasis added). *See, also, In re Fin. Oversight & Mgmt. Bd.,* 635 B.R. 201 (D.P.R. 2021).

17. Pursuant to the cited doctrine, a cause of action that arises post-petition and prior to the effective date of the Plan **may** be considered an administrative expense claim. Nonetheless,

6

this doctrine is meant to benefit the claimant, which is why the burden of proving entitlement of administrative expense priority is on the movant. It is moreover a case-by-case decision, which depends on the facts and the fundamental fairness of the result. A blanket declaration of administrative claim status for post-petition litigation is impossible to reconcile with the doctrine.

18. The underlying doctrine is based on issues of **fairness and equity**. It is an exceptional doctrine grounded in principles of "fundamental fairness". Thus, it would be absurd to use the doctrine to deprive a party of their rights. Yet, it is being used to bar claims forever when these claims would be betterf served by their continuation in their original forums. For instance, Movant Calderón Alibrán would continue her case before the United States District Court, where she has a right to jury trial, specifically provided by Congress in the Civil Rights Restoration Act of 1991.

19. Movant Calderón Title VII case is not served by the administrative expense process. By forcing this Movant to file a proof of claim to preserve her cause of action rather than continue her case, this Court would be depriving her of the progress made in her case thus far, including most critically her right to a jury trial in her racial discrimination case, **which she does not waive.**

20. On the other hand, if by removing such actions from the administrative claim category, the provisions of the permanent injunction become relevant, constitutional due process considerations need to be addressed.

21. Movants are aware that, pursuant to its own terms, the permanent injunction does not apply to causes of action for gross negligence, willful misconduct, or intentional fraud, which should

7

include Movants' claims. However, these terms did not stop the DOJ from arguing that the Movants' cases are affected by the injunction. Movants do not waive these arguments either.

22. Pursuant to the text of the Plan and the Confirmation Order, the permanent injunction applies to all post-petition claims or causes of action that arose post-petition and prior to the Effective Date. This means that any cause of action that arose between May 3, 2017, and March 15, 2022, is permanently enjoined, regardless of whether the cause of action is known or has been claimed in court or otherwise.

23. PROMESA adopts Section 924 of the Bankruptcy Code which states:

> (a) **The provisions of a confirmed plan bind the debtor and any <u>creditor</u>**, whether or not— (1) a proof of such creditor's claim is filed or deemed filed under section 501 of the title; (2) such claim is allowed under section 502 of this title; or (3) such creditor has accepted the plan.
> (b) Except as provided in subsection (c) of this section, **the debtor is discharged from all <u>debts</u> as of the time when—(1) <u>the plan is confirmed</u>;** (2) the debtor deposits any consideration to be distributed under the plan with a disbursing agent appointed by the court; and (3) the court has determined— (A) that any security so deposited will constitute, after distribution, a valid legal obligation of the debtor; and (B) that any provision made to pay or secure payment of such obligation is valid.
> **(c) The debtor is not discharged under subsection (b) of this section from any debt—**(1) excepted from discharge by the plan or order confirming the plan; **or (2) <u>owed to an entity that,</u> before <u>confirmation of the plan, had neither notice nor actual knowledge of the case</u>.** 11 U.S.C. § 944 (emphasis added).

24. Plainly, "proceedings in bankruptcy cases are subject to the requirements of due process under the Fifth Amendment to the United States Constitution." <u>Vicenty v. San Miguel Sandoval (San Miguel Sandoval),</u> 327 B.R. 493, 506 (B.A.P. 1st Cir. 2005)(citation omitted). "Thus, general principles limiting a creditor's rights in bankruptcy **give way when the creditor has not received sufficient notice of the bankruptcy case.**" *Id.* at 506-07 (emphasis added)(citations omitted).

25. In the context of confirmation of a plan of adjustment by a bankruptcy court, and in alignment with the <u>Espinosa</u> decision, courts have adopted the norm that the binding effect of a confirmed

8

plan requires that "the due process requirements of reasonable and actual notice were satisfied." *In re Galindez,* 514 B.R. 79, 97 (Bankr. D.P.R. 2014). The First Circuit BAP has expressly stated that that "a creditor's **actual but generalized knowledge of the pendency of a bankruptcy case** does not impose on the creditor the burden of constantly inquiring of the court about possible bar dates." *Vicenty,* 327 B.R. at 508(*citing Matter of Intaco Puerto Rico., Inc.,* 494 F.2d 94, 99 (1st Cir. 1974))(emphasis added).

26. That said, under the principles of constitutional due process, the Plan cannot constitutionally discharge claims of non-creditors that did not receive adequate notice **before** the confirmation of the Plan. Which means to say that, even though all of Puerto Rico has some sense of the fact that there is a Commonwealth Title III case pending, this does not impose on anyone the duty to check and make sure that they are not affected by it. The duty to provide **formal notice** lies, in this case, with the Oversight Board. *Vicenty,* 327 B.R. at 508 (*citing Intaco,* 494 F.2d at 99)(emphasis added). This requires a "clear, open, and explicit statement". *In re Monahan,* 497 B.R. at 652.

27. Without such notice, a party's claim cannot be constitutionally discharged. Consequently, the permanent injunction cannot apply to them. The injunction has no basis outside of the discharge and release provisions of the Plan, and it suffers from the same lack of adequate notice as the Plan and the discharge. Therefore, it cannot constitutionally bar a party from exercising their rights forever.

### C. The Oversight Board's Proposed Order and Proposed Notice should be amended because they are insufficient and arbitrary.

28. In the alternative, the *Proposed Order* and *Proposed Notice* are insufficient in many respects. To begin with, to provide the adequate notice pursuant to due process standards, the *Proposed Order* and *Proposed Notice* must include **clear cut instructions** for the parties that would have

9

to channel their claims through the administrative claim process. Because some of these are pending litigations and causes of action yet to be asserted, the parties need to know how their claims would proceed under the administrative expense claim process. This information is essential for them to properly channel their claims with proper representation and accurate expectations. Additionally, the *Proposed Notice* should be published at least two times for the notice to be effective, rather than once as the Oversight Board proposes.

29. On the other hand, the Oversight Board includes this proposal:

> 5. The requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order **shall not apply to any of the following claims or causes of action arising from and after the applicable petition date with respect to the Commonwealth**, ERS, and PBA and prior to the Effective Date: (i) Eminent Domain/Inverse Condemnation Claims, (ii) claims for property seized by the Debtors pursuant to the Uniform Forfeiture Act of 2021, 34 L.P.R.A. 1724 *et seq.*, (iii) claims for attorneys' fees and costs pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. 1400 et seq., (iv) tax refund claims, and **(v) claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a), to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable.**
> 6. The injunctions contained in Section 92.3 of the Plan and decretal paragraph 59 of the Confirmation Order **are modified solely to the limited extent to allow litigation with respect to claims authorized to be asserted pursuant to 32 L.P.R.A. § 3077(a),** to the extent the amount of such claim asserted is within such statutory limitation of $75,000 or $150,000, as applicable, to proceed to final judgment and execution, including any appeals. **[Docket No. 22130 Exhibit A]** (emphasis added).

30. While the exception to the Administrative Claims Bar Date and the Injunction for cases under P.R. Laws ann. tit. 32 § 3077(a) ("Section 3077a") is certainly a welcome development, it arbitrarily excludes other cases that are too similar to warrant different treatment, such as P.R. Laws ann. tit. 32 § 3085 ("Section 3085").

31. Section 3077a allows torts actions against the Commonwealth for negligence by public employees acting in their official capacity. *Id.* § 3077(a). On the other hand, Section 3085 allows torts actions against Commonwealth employees, in their personal capacity, for civil

10

rights violations by the employee in the course of their duties. *Id.* § 3085. This section also provides that the Commonwealth may have to provide legal representation and assume the costs of the judgment against the employee. *Id.* Moreover, the *Proposed Order* does not include Section 1983 civil rights actions, the federal equivalent of Section 3085. There is no way to justify allowing negligence actions under state law while excluding civil rights actions under both state and federal law. The distinction would be arbitrary and directly affect Movant Torres Viada.

32. On the other hand, the *Proposed Order* also excludes actions based on wrongful conduct of the Commonwealth and its employees in the context of labor. For example, employee discrimination claims under Act 100 of June 30, 1959, P.R. Laws ann. tit. 29 §§ 146 *et seq.* and Title VII, where the Commonwealth or its employees have incurred in intentional wrongful conduct. This distinction would also be arbitrary and directly affect Movant Calderón-Alibrán.

33. A federal claim such as that of Calderón-Alibrán brought pursuant to Title VII, as applied to state entities, pursues the longstanding important mechanisms to eradicate racial discrimination, among others, in employment against the Commonwealth. Under this law, the Commonwealth waived sovereign immunity and may be sued in state or federal court.

34. Similarly, a federal claim brought under Section 1983 reflects a recognition of the importance of assuring that the Commonwealth comply with its federal and statutory Constitutional obligations, unshielded by immunity or impunity.

35. Thus, applying the Administrative Claim Bar Date and the Injunction to these claims and not to negligence claims under Section 3077a is arbitrary. All of these actions penetrate the sovereign immunity of Puerto Rico a serve important state and federal interests and should be equally exempt.

36. Moreover, the *Proposed Order* and *Proposed Notice* should be clearer on the fact that when "[t]he requirement to file a proof of Administrative Expense Claim pursuant to decretal paragraph 44 of the Confirmation Order shall not apply . . . ," the effect is that the claim may continue in its respective forum. For example, if a Section 3077a claim were pending in the Puerto Rico state court, the *Proposed Order* would allow this case to continue in the state court. **[Docket No. 22130 Exhibit A at ¶ 5]**

37. Additionally, while the language of the *Proposed Order* allows pending litigation **and** claims that have yet to be asserted against the Commonwealth, the *Proposed Notice* **only** includes pending litigation. Thus, the *Proposed Notice* should be amended so that it may be consistent with the *Proposed Order* and allow claims that arose within the post-petition, pre-effective date period even if they have not yet been presented before the courts.

38. In view of the foregoing, Movants attached as **Exhibit A** an amended proposed order and as **Exhibit B** proposed notice in English. Thus, the Movants formally request that this Court adopt **Exhibits A and B**, instead of the *Proposed Order* and *Proposed Notice,* and order the Oversight Board to submit the Spanish translation to this Court for the notice **before** publication.

39. Finally, the Movants request that this Court **not approve any form of notice until the Spanish version is submitted** by the Oversight Board for consideration.

### III. Conclusion

WHEREFORE, the Movants respectfully request that this Honorable Court take notice of the above and order the Oversight Board to provide a new proposed order and notice. Moreover, Movants request that their claims be explicitly excluded from the administrative expense claim process and allowed to continue in their respective forums. In the alternative, Movants request that this Court adopt the proposed order and notice in **Exhibits A and B** and order the Oversight Board

12

to submit the Spanish Translations. Upon that submission, the Movants request that this Court issue the extended bar date notice.

RESPECTFULLY SUBMITTED.

In Ponce, Puerto Rico, this 30th day of September 2022.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and attorneys of record.

*/s/Jessica E. Méndez-Colberg*
Jessica E. Méndez-Colberg, Esq.
USDC: 302108

*/s/ Zoé C. Negrón-Comas*
Zoé C. Negrón-Comas, Esq.
USDC: 308702

*/s/Rolando Emmanuelli-Jiménez*
Rolando Emmanuelli-Jiménez, Esq.
USDC: 214105

BUFETE EMMANUELLI, C.S.P.
P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 1-787-841-1435
E-mail: jessica@emmanuelli.law
zoe@emmanuelli.law
rolando@emmanuelli.law
*Counsel to Movants*