Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **KEILA GARCÍA COLÓN**, | CIVIL NO. 21-cv-01211 (RAM) |
| Plaintiff, | |
| v | Preliminary and Permanent Injunction; Sexual Harassment, Sex Discrimination and Retaliation |
| **CORPORATION OF THE STATE INSURANCE FUND, ET AL,** | |
| Defendants. | **TRIAL BY JURY** |

**JOINT CASE MANAGEMENT MEMORANDUM**

**TO THE HON. RAÚL M. ARIAS-MARXUACH:**

COME NOW Plaintiff, Keila García Colón ("García") and the Corporation of the State Insurance Fund ("SIFC"), through their respective undersigned attorneys, very respectfully submit the instant Joint Case Management Memorandum as ordered in Docket Nos. 71 and 75.

**I.      Factual Versions and Legal Contentions**

**A.      Plaintiff**

García alleges sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*., as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a, and under their Puerto Rico counterparts.

García complained of sexual harassment to her superiors at the Arecibo Region of the Corporation of the State Insurance Fund ("CSIF") and, after her employer's failure to address her claim, she filed an administrative charge of sex discrimination and retaliation before the Equal Employment Opportunity Commission ("EEOC"). Her opposition to the sexual harassment she experienced in her workplace constitutes protected conduct under Title VII and the Puerto Rico

1

legislation under which she seeks relief and constitutes the trigger for defendant's subsequent campaign of retaliation.

At the time of García's filing of the Verified Complaint, she was no longer the subject of unwanted sexual advances in her workplace. Prof. Wanda Toledo ("Toledo") from National University College ("NUC") was granted access to the CSIF by virtue of a collaborative agreement between NUC and the CSIF. Pursuant to the accord, Toledo was to coordinate the extramural training of NUC's nursing students by pairing them with nursing personnel at the CSIF.

Since Toledo was asked to leave and not visit the CSIF on two separate occasions as a result of García's complaints against her, the sexual harassment of García at work, as of this filing, has ceased. But the retaliation against her began after she denounced Toledo's unlawful conduct and has turned hostile, physically threatening and psychologically disturbing.

**García's underlying Claim of Sexual Harassment**

A plaintiff claiming retaliation under Title VII must have claimed discrimination and have a reasonable belief that her allegations were meritorious, though she need not prevail in her underlying claim to continue with her cause of action for retaliation.  *See e.g., Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 175 (1ˢᵗ Cir. 2003) (citations omitted). García satisfies this requirement because the sexual harassment to which she was subjected by Toledo is a form of sex discrimination. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67 (1986).

When García began to feel uncomfortable about Toledo's constant visits to her work area, she complained to her immediate supervisor, Marilyn Gerena. Among the things she told Gerena was that she had heard statements from the nursing students and, at least, from one fellow worker that Toledo was making comments about her attraction to García and fondness for

her temper ("me gustan así, bravitas"). García's denunciation of Toledo's unlawful conduct to Gerena had no positive effect on Toledo, as she continued as if nothing had happened. At the time of García's first sexual harassment complaint, Gerena was her supervisor at the CSIF, as well as a fellow professor of Toledo at the NUC. Toledo's advances continued despite García's clear rejections, were more frequent and escalated the tension. García tried to be more categorical and direct in her opposition of Toledo's approaches. It reached a point where the harassment on García began to take its toll. García decided to face Toledo and make it very clear that she had to stop her unwanted behavior towards her and that she did not want Toledo close to her at any time. After García's clear message, and anticipating that she might report Toledo, she prepared a memorandum and gave it to Gerena and Nora Rosario, another of García's supervisors, alleging that García had been disrespectful to her. According to Toledo, García told her to refrain from giving her any orders because she was not her supervisor.

Gerena and Rosario met with García to determine whether to refer the matter to the Labor Relations Office at the CSIF for an investigation, as required by the CSIF's sexual harassment protocol. When Gerena and Rosario met with García and told her of Toledo's accusations, García spared no details and narrated everything that had been happening since Toledo's arrival, including what she told Gerena the first time, and how the situation was deteriorating. García described the disrupting effect it was causing on her emotional stability and in the performance of her duties and that she was about to report Toledo's unlawful conduct to NUC. Gerena and Rosario decided not to refer Toledo's claim against García to the Labor Relations. Instead of reporting Toledo to the Labor Relations Office, Gerena pleaded with García for an opportunity to solve the situation directly with the Director at NUC.

García satisfies all elements of her underlying claim of sexual harassment by Toledo: (1) García is a female; (2) was subjected by Toledo to unwelcome sexual advances; (3) Toledo's continued disregard for García's rejections turned her work environment hostile; (4) the frequency of the advances and Toledo's unrestricted expressions to employees and nursing students, establish that the harassment was intentional, severe and pervasive; and (5) although Toledo was not a CSIF employee, she was authorized by the CSIF to be present as part of the collaborative agreement and the CSIF had the obligation to see that she complied with employment discrimination laws and regulations when dealing with CSIF employees. The CSIF's failure to act since the first time that García complained to her supervisor constitutes a violation of Title VII and makes the CSIF liable to García.

**The Merits of the Retaliation Claim**

García became the victim of retaliation for having complained of sexual harassment. She has been the object of threats to her physical safety and submitted to emotional harassment at work by Migdalia Baerga, one of Soto's right-hands at the CSIF and a childhood friend of Toledo in Utuado. García satisfies the elements of her retaliation claims under Title VII because the evidence available to her demonstrates that: (1) she engaged in protected activity under the statute when she complained tother supervisors of sexual harssment by Toledo, (2) she has been the victim of retaliation, and (3) the retaliation is causally connected to García's exercise of protected conduct. *Oliveras v. Univisión Puerto Rico, Inc.,* 2011 WL 4625951, p. 17 (D.P.R. 2011) (BJM), *citing Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 46 (1st Cir.2010); *Bennett v. Saint–Gobain Corp.,* 507 F.3d 23, 32 (1st Cir.2007). *Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 38 (1st Cir. 2003).

      **1)**      **García's Opposition Constitutes Protected Conduct**

García's verbal complaints of sexual harassment by Toledo before her supervisor and the filing of her administrative charge before the EEOC constitute protected conduct under Title VII's opposition clause. 42 U.S.C. § 2000e-3(a).

      **2)**      **Retaliation against García is an Adverse Employment Action**

García became the victim of retaliation because as soon as Soto found out about her complaint to Gerena, rather than activating the CSIF's sexual harassment protocol provided in Administrative Order No. 19-06 and she began to closely monitor García, frequently visit her work area, unlike before. DE 1, ¶ 61. Moreover, Gerena did not channel García's first complaint about Toledo's unlawful conduct as contemplated in the sexual harassment protocol. Thus, García was left exposed to Toledo and under the magnifying glass of Soto, Toledo's friend and Regional Director of the CSIF. Furthermore, though Toledo's sexual harassment of García ceased when she was removed from the CSIF, the harassment against her did not and the evidence that she will present establishes an unlawful pattern of retaliation against García. There was a pattern of retaliation after the first departure by Toledo in late 2019. After Toledo returned in early 2020 and was sent back to the NUC because García challenged her presence at the CSIF, the retaliatory campaign by Soto, Baerga and others intensified. García's work environment at the Arecibo Regional Office of the CSIF evince a harrowing, traumatic and unacceptable state of affairs in clear violation of Title VII and the Puerto Rico anti-discrimination and anti-retaliation legislation meant to guarantee García a safe and productive work environment. There can be no justification for the lack of effective action to deal with a situation that everyone knows about at the Arecibo CSIF and at Headquarters.

It is inexplicable that the result of the investigation conducted by the Director of the
Labor Relations Office, Gladys Meléndez, was resolved with a mere "corrective measures have
been taken" and that when García decided to exercise her federal rights by filing a charge before
the EEOC, all Meléndez could do was to question Garcías's decision to seek redress before the
EEOC.

### 3) The Causal Connection

The evidence available to García suffices to establish the causal relationship between the
exercise of protected conduct and the retaliation against her because: (1) of the temporal
proximity and (2) by the pattern of antagonism that has been displayed against her. These are
two of the quintessential means to establish the causal nexus in a retaliation claim in the First
Circuit. *See e.g., Che v. Massachusetts Bay Transp. Authority,* 342 F.3d 31, 38 (2003).
Moreover, the two (2) investigations conducted by the Labor Relations Office will also will shed
light on defendant's retaliatory *animus* regarding her sexual harassment allegations and the lack
of evidence to support the accusations lodged against García in an effort to discredit and label
her as "homophobic."

As subsequently explained, defendant's past and present retaliation against García for
having engaged in protected conduct, when she complained of sexual harassment, and the latent
threat of bodily harm to which she has been exposed by Baerga and García's supervisors
constitute retaliation for having engaged in protected conduct.

As a result of defendant's unlawful discriminatory and retaliatory actions and omissions
García has suffered and continues to suffer emotional harm and the deterioration of her physical
well-being. García's physical condition has deteriorated to the point that she is currently
undergoing treatment and testing for the proximate effects of defendant's conduct and has also

had to seek psychological treatment to abate and deal with the pressure that she has encountered and continues to suffer at work, notwithstanding the preliminary injunction currently in effect at the Arecibo Regional Office of the CSIF. Defendant is liable to García for all damages suffered by her as a proximate result of defendant's unlawful conduct. Additionally, defendant is liable to García under 42 U.S.C. §1988 for all costs, litigation expenses and reasonable attorneys' fees related to the prosecution of this action.

### B.    Defendant

Plaintiff Keila García Colón ("**Ms. García**" or "**Plaintiff**") filed the Verified Complaint and Request for Injunctive Relief on May 6, 2021 ("**Complaint**"). In essence, the Complaint alleges that García has been the victim of sexual harassment due to allegedly repeated unwanted advances from Wanda Toledo ("**Toledo**"), a National University College ("**NUC**") professor in charge of NUC's Nursing Program who oversaw the students exposed to training in SIFC facilities. According to the Complaint, Ms. García allegedly reported these acts to Marilyn Gerena Cáceres ("**Gerena**"), García's supervisor, and Magalis Soto Pagán ("**Soto**"), then Arecibo Regional Director. Gerena and Soto allegedly failed to put in place the SIFC's sexual harassment policy or escalate Plaintiff's claim in any way. According to the Complaint, Soto recruited fellow employees, among these Migdalia Baerga ("**Baerga**"), and responded with a retaliation campaign.

On the same day as the filing of the Complaint, Plaintiff filed her Request for Preliminary Injunctive Relief ("**Motion for Preliminary Injunction**"). In its Motion for Preliminary Injunction, Plaintiff argues that it is entitled to a preliminary injunction, alleging that the retaliation campaign against García is wholly ongoing and is putting her life at risk.

Plaintiff's Complaint vaguely and generally alleges that Toledo and Baerga's behavior created a hostile work environment. We will proceed to discuss the merits of Plaintiff's baseless claims individually.

First, even if plaintiff had alleged sufficient facts to show that Toledo's behavior created a hostile work environment, the SIFC would not be liable for his behavior under Title VII. The standard under which an employer can be held liable for an employee's sexual harassment under Title VII depends on whether the harassment was perpetrated by the victim's supervisor or co-worker. *See Figueroa García,* 490 F.Supp.2d at 206. **When the alleged harasser is a co-worker, the employer is liable if it knew or should have known about the misconduct and failed to take appropriate corrective action.** *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir.2002). In Toledo's case, she is not a SIFC employee, rather a National University College Professor ("**NUC**") who served as coordinator for the NUC's Nursing Program at the Arecibo region of the corporation. See **Complaint ¶¶ 19-22.** Plaintiff then proceeds to enumerate a series of uncorroborated isolated incidents without providing the specific dates of said alleged occurrences. See **Complaint ¶¶ 25-32** Plaintiff's vague allegations state that "at some point" she approached her supervisors Gerena and Rosario on separate occasions and explained her version of Toledo's so-called inappropriate interactions. See **Complaint ¶¶ 34 and 48.** The fact is, that shortly thereafter, Toledo was removed from Managing the NUC's nursing program at the SIFC. See **Complaint ¶¶ 58-59.** Therefore, the SIFC took swift corrective action and removed Toledo.

On February 2020, Toledo returned to the SIFC. See **Complaint ¶ 68.** On that occasion, Plaintiff went and reported the situation to Rosario, since Gerena had retired from the SIFC. See **Complaint ¶¶ 68-70.** Once again, Plaintiff alleges that Toledo incurred in inappropriate behavior, however, once again fails to provide the specific dates of said alleged occurrences. A

meeting was held by Soto, Rosario, and Dr. Luis Padro (SIFC's Arecibo Medical Director) with Plaintiff to discuss her allegations. See **Complaint ¶¶ 86-88.** During said meeting, Soto reassured her that she would be protected as required by the SIFC's harassment protocol. See **Complaint ¶ 95.** Soto also stated that the matter would be referred to the Labor Relations Office, as required by the sexual harassment protocol. See **Complaint ¶ 95.** After the meeting, Soto drafted the formal referral required by the SIFC's sexual harassment protocol and sent it to the Office of Labor Relations at the SIFC's headquarters. See **Complaint ¶ 99.** In early March 2020, García was informed by Gladys Gisela Melendez ("**Ms. Melendez**"), Director of Labor Relations, that she would meet with her to discuss the sexual harassment allegations. *See* **Complaint ¶ 107.** Present at the meeting were Garcia and the union steward, María Lebrón. See **Complaint ¶ 108.** Ms. Melendez interviewed Plaintiff and obtained a sworn statement from her and proceeded to conduct a full investigation on the matter. See **Complaint ¶¶ 109-110.** However, due to the COVID-19 pandemic, the SIFC closed its facilities on March 16, 2020. See, **Complaint ¶ 112.** On June 29, 2020, Plaintiff returned to work at the SIFC. See **Complaint ¶ 112.** On October 9, 2020, Ms. Melendez issued her report and recommendation on the matter, and concluded that Toledo was not to return to provide services at the SIFC's Arecibo Region in order to guarantee that Plaintiff could work in an environment free of sexual harassment. Said determination was notified to Plaintiff on that same date. As Plaintiff admitted in her Motion for Preliminary Injunction, Toledo no longer works at the SIFC's Arecibo Region and she is no longer the subject of alleged unwanted sexual advances in the workplace. See **Motion for Preliminary Injunction ¶ 6.** Consequently, the SIFC once again took quick corrective action to tend to Plaintiff's claims.

As to her co-worker Baerga, Plaintiff professes that she constantly engages in harassment against her for having complained about alleged acts of sexual harassment by Toledo. See **Complaint ¶ 112.** Plaintiff proceeds to provide allegations that mention a series of random and uncorroborated events without providing evidence of dates and witnesses to said occurrences. See **Complaint ¶¶ 67, 128-130, 155- 162.** Plaintiff claims that her supervisors were aware of the situation but fails to provide evidence of dates and or/written communications to corroborate said statements. See **Complaint ¶¶ 159, 163, 165.** Plaintiff's most disturbing allegation is that Baerga's harassment is of such nature that it included references to death. **Complaint ¶ 175.** She alleges that on more than one occasion, Baerga ushered comments about having to buy "coronas" (funeral floral arrangements). **Complaint ¶ 176**. Plaintiff goes as far as stating that Baerga allegedly threatened ger with the infliction of bodily harm when she whispered, "would love to have you alone and stab you". **Complaint ¶ 177.** For such a serious allegation, Plaintiff is curiously vague with respect to the date in which the alleged threat occurred.

Plaintiff further alleges that she contacted her supervisor Rosario and Dr. Padró, however, states that the SIFC has not produced any solution and Baerga is allegedly allowed to continue her harassing behavior. See **Complaint ¶¶ 178-180.** Once again, Plaintiff fails to provide evidence to corroborate that her supervisors were indeed notified, the dates they were allegedly notified, and proof that the SIFC has done anything to resolve this matter.

It is important to point out that the allegations in the Complaint against Baerga happened as far back as 2019. This means that "at one point" between 2019 and May 6, 2021, Ms. Baerga issued the alleged threat. The timeframe given is so vague that it is unreasonable to assume that the allegation occurred with any type of temporal proximity to the filing of the Complaint and the Motion for Preliminary Injunction. On the contrary, "at one point" communicates to anyone

with basic reading comprehension skills that the event in question happened so far back in time and was treated with so little importance that the person issuing the statement is unsure of the exact moment it happened, if it even happened.

Plaintiff's blatant refusal to provide specificity for the harassment and retaliation-based allegations in her Complaint demonstrates the little regard she has for this Honorable Court's time and resources. Even if we assume that the alleged threats did happen and Plaintiff is merely omitting the timeframe for the sake of dramatic tension, what was Ms. García's reaction upon hearing her coworker threaten her life? Did Ms. García file a complaint with her union representative? That is not alleged. Did Ms. García request that the matter be referred to the Office of Labor Relations. That is not alleged. Most importantly, there is nary an allegation mentioning how Ms. Garcia filed a complaint with the police, No.  That is not alleged.  Nor did she request a restraining order from the Court in order to be protected from Baerga's alleged threat. Furthermore, at no point in the Complaint does Plaintiff explain her inertia on the matter. Let us reiterate that the allegations before this Honorable Court involve an allegation of a threat of bodily harm.  That is as serious an allegation as can be made, yet Plaintiff apparently did ***nothing about it***, except, months afterward, file this suit.  In the meantime, she kept going to work.

It is widely known in the context of Title VII that "[t]he Supreme Court has rejected the idea that an employer is strictly liable for a hostile environment created by a supervisor when the employer neither knew nor reasonably could have known of the alleged misconduct." <u>See</u> *Chaloult v. Interstate Brands Corporation*, 540 F.3d 64, 73 (1st Cir. 2008) (citing: Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 70-72 (1986)). Pursuant to this principle, the Court has crafted a doctrine, derived from *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) and

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and denominated it the "Faragher-Ellerth" defense. **This defense forecloses a Title VII claim against an employer, as Plaintiff's claim against the SIFC clearly is, when (1) the employer's "own actions to prevent and correct harassment were reasonable" and (2) "the employee's actions in seeking to avoid harm were not reasonable."** Chaloult, 540 F.3d at 66 (citing: *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765). This test, at the pleading stage, must be looked through the lens of the new pleading standard adopted by the Supreme Court in *Iqbal*. See *Iqbal*, 129 S.Ct. at 1953 (Holding that the *Twombly's* pleading standard applies "in all civil actions" under the Federal Rules of Civil Procedure.).

The *Faragher-Ellerth* defense is applicable to the SIFC in the instant case. The SIFC, in accordance with its harassment protocol, has removed Baerga from the Arecibo Region, effective June 1st, 2021. The SIFC's actions ***do not*** constitute an acceptance that Plaintiff's allegations are true. Rather, the SIFC's internal harassment protocols mandate that when an allegation such as this one is made, the alleged offender be removed from the work site to another office, while the SIFC's internal investigation begins. Thus, the SIFC was proactive and took corrective action to remove Baerga from the Arecibo region. However, Plaintiff's actions in seeking to avoid harm simply do not comport with her behavior after receiving the alleged threat. To the contrary, her actions indicate that she continued with her daily work routine---which is great for her, the SIFC. and the citizens of this territory, but which are fatal for her allegations of fear for her safety. By acting in this manner, Plaintiff failed to act with reasonable care to take advantage of the employer's safeguards and otherwise prevent harm that could have been avoided. See *Faragher* 524 US at. 805. This is grounded on the notion that "…it requires the employee in normal circumstances to make [the effort to put the company on notice] if the employee wants to impose

vicarious liability on the employer and collect damages under Title VII." Id. At 74 (citing: *Reed v. MBNA Marketing Systems, Inc.* 333 F.3d 27, 35 (1st Cir. 2003). As the First Circuit has noted, this requires that a plaintiff takes reasonable steps in reporting the harassment. *See*: Id. It also makes clear that "ordinary fear or embarrassment" is not a justification for lack of diligence in not reporting any such incident. *Id.*

Plaintiff's inaction at such a serious offense begs the question: Why did she abstain from filing a formal complaint and taking the reasonable steps in reporting the harassment when Baerga allegedly issued her threat? The answer is simple: Because the threat does not exist. Again. to this day, Plaintiff continues to go to work to the SIFC offices in the Arecibo Region as per her regular work schedule. At absolutely no point has García suffered, nor has been a victim of, an attempt on her life or physical harm. García's continued and uninterrupted physical integrity is, by itself, proof of that.

As discussed above, in *Iqbal*, the Supreme Court made clear that a plaintiff that intends to survive a motion to dismiss must furnish sufficient factual information, which, if ultimately proven would establish a violation of federal law. See *Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.... Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Id. (Citations omitted)). This is where plaintiff's Complaint runs short given that the pleadings fail to provide well-pleaded factual information which, if proven, would make out a violation of Title VII. Thus, absent specific factual information to support Plaintiff's claims for relief, the Complaint must fail under *Iqbal's* pleading standard.

Title VII makes it unlawful for an employer to retaliate against an employee who complains about discrimination in the workplace. *See,* 42 U.S.C. § 2000e–3(a). To prevail in a Title VII retaliation claim, Plaintiff bears the burden of establishing that: "(1) he or she engaged in protected activity under Title VII, (2) he or she suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected activity". *Id.* at 176 (D.P.R. 2011). This standard provides the requirements to establish a *prima facie* case for Title VII retaliation.

Under this standard, an adverse employment action is one that affects employment or alters the conditions of the workplace. *Vega-Colon v. Wyeth Pharm.,* 625 F.3d 22, 23 (1st Cir. 2010). The changes must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Morales-Vallellanes v. Potter*, 605 F.3d 27, 30 23 (1st Cir. 2010). To determine if an employment action is in fact adverse, the court looks for whether an action **has materially changed the conditions** of a plaintiff's employment. *Cherkaoui v. City of Quincy,* 877 F.3d 14 (1st Cir. 2017). Under this provision, Title VII also states that the individual is not protected against all retaliations, they will be protected only from retaliation that produces an injury or harm. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Similarly, Law No. 115 protects employees from termination, discrimination, or other adverse employment actions affecting the terms and conditions of their employment "should the employee offer or attempt to offer ... any testimony, expression, or information before a legislative, administrative or judicial forum...." 29 LPRA § 194a(a).

Law No. 115 establishes a two-prong test to determine a *prima facie* retaliation case. Under Law No. 115, the employee must demonstrate, through direct or circumstantial evidence, that (1) she participated in a protected activity; and (2) was subsequently fired, threatened, or

discriminated against regarding her employment. 29 LPRA § 194a (c); *Rivera Figueroa v. A.A.A.*, 177 D.P.R. 345, 362 (2009). Because Law 115 requires the same adverse employment action showing as a Title VII retaliation claim, courts have treated the two claims the same. *See Rivera Rodríguez v. Sears Roebuck De Puerto Rico, Inc.,* 367 F.Supp.2d 216, 230 (D.P.R.2005).

Even though plaintiff cannot establish that she was subject to unlawful discrimination under Title VII, she can still maintain a retaliation claim if she can establish the three required elements of the *prima face case*. *See Wyatt v. City of Boston,* 35 F.3d 13 (1st Cir.1994). "The success of a retaliation claim does not require that the alleged wrongful conduct itself be illegal." *Alvarez v. Plom–Electric Corp./Imaginacion, et al.,* Cv. No. 04–1334(SEC), 2006 WL 6561405 at 3 (D.P.R. Jun. 19, 2006) (citing cases).

As to the second prong, an adverse employment action is defined as one that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Godoy v. Maplehurst Bakeries, Inc.,* 747 F.Supp.2d 298, 314 (D.P.R.2010). This typically involves actions such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Morales Vallellanes v. Potter,* 605 F.3d 27, 35 (1st Cir.2010).

For a retaliation suit to prosper under both federal and local law, it is essential for Plaintiff to have suffered some type of adverse employment action that affects her the terms, conditions, compensation, location, benefits, or privileges of the employment in any way. Neither the Complaint nor the Motion for Preliminary Injunction provides direct or circumstantial evidence that shows that Plaintiffs' employment terms were affected in any way as a result of partaking in protected activity. There is not a single allegation that Plaintiff was

fired, suspended, nor has she had her compensation, benefits or privileges unilaterally minimized by SIFC. In fact, to this day Plaintiff continues to work at the SIFC offices in the Arecibo Region, her compensation has remained unaffected, her benefits remain the same, she has not been relocated in any way.

Furthermore, without an adverse employment action, it is impossible for there to be a causal connection with any protected activity. As such, even with the existence of any protected activity, Plaintiff fails to demonstrate how she has suffered any adverse employment actions, as defined by the First Circuit. For this reason, Plaintiff patently fails to fulfill the applicable standards to prevail in a retaliation suit under both Title VII and Law No. 115.

Finally, Rico Law No. 17 provides that sexual harassment in employment is "an illegal and undesirable practice," 29 LPRA § 155. On the other hand, Law No. 69 bars discrimination in employment on the basis of sex. *See* 29 LPRA § 1321. "Law 17 and 69 serve virtually the same purposes and outlaw essentially identical behavior, and Law 69's specific prohibition on gender discrimination overlaps with Law 17's bar on sexual harassment." *Gerald v. Univ. of P.R.,* 707 F.3d 7, 28 (1st Cir.2013) (*citing García v. Sprint PCS Caribe,* 841 F.Supp.2d 538, 564 (D.P.R.2012). Moreover, "[t]he First Circuit has determined that Title VII's, Law 17's ,... prohibitions against gender discrimination and sexual harassment 'serve virtually the same purposes and outlaw essentially identical behavior.'" (*citing Gerald,* 707 F.3d at 28). That is, "the substantive law of Puerto Rico on sexual harassment appears to be aligned with Title VII law; the latter's precedents being used freely to construe the former." *Gerald,* 707 F.3d at 28. We respectfully submit that Plaintiff's Complaint runs short given that the pleadings fail to provide well-pleaded factual information which, if proven, would make out a violation of Law 17 and Law 69.

II.    **Witnesses**

   A.    **Factual**

      1.    **Plaintiff**

a.    **Keila García Colón** - about all aspects of her claim.

b.    **Angel R. Martínez Santiago** - Regional Director - Arecibo Region – about his knowledge of the retaliation claims of García and the response from the CSIF;

c.    **Dr. Luis H. Padró** - Regional Medical Director - about his knowledge of the retaliation claims of García and the responses to curb the retaliation and protect García;

d.    **Dr. Ramón Carrillo Torres** - Emergency Room Inspector MD - about his knowledge of the retaliation claims of García;

e.    **José Colón** - Epidemiology Nurse - about his knowledge of the retaliation against García and his efforts to protect García;

f.    **Nora Rosario Medina** – Supervisor - about her knowledge of the sexual harassment and retaliation; García's complaints of sexual hrassament by Toledo and retaliation against García; she also has knowledge of the responses to curb the retaliation and protect García;

g.    **Erika Sierra** – Nurse - about her knowledge of psychological harassment by Baerga against García;

h.    **Gladys G. Meléndez** - Deputy Director Office of Labor Relations – about her knowledge of García's allegations of sexual harassment and retaliation; her investigation of García's allegations;

i.    **Magalis Soto** – former Regional Director – about her knowledge of García's allegations of sexual harassment and retaliation; her failure to correct the situation and her

participation in the retaliation; and the referral to the Labor Relations Office;

j.  **Jessica Mason Rodríguez** – Director Office of Labor Relations - about her knowledge of García's allegations of sexual harassment and retaliation as well as the investigative process; the decision to remove Migdalia Baerga from the Arecibo Regional Office; and her investigation of Gracía's allegations.

k.  **Migdalia Baerga** - about her knowledge of García's allegations of sexual harassment; about her retaliation against García and her allegations that García was homophobic;

l.  **Roberto Rosado** – about the incident between him and García regarding his failure to use a protective mask and García's instructions to wear one; about Migdalia Baerga's baseless allegations that García had referred to him as a "dirty fagot" ("pato sucio") on the day of the incident with García.

m.  **Marilyn Gerena** – former Nursing Director – about her knowledge of Prof. Wanda Toledo's harassment of García; about her efforts with the Dean of National University College to remove Toledo from her role as supervisor of the NUC's nursing students who received practical training at the Arecibo Regional Office of the CSIF.

       **2.**      **Defendant**

a.  **Gladys G. Meléndez** - Deputy Director Office of Labor Relations – about her knowledge of the allegations raised by Mrs. Garcia in her complaint, the investigation performed by the Office of Labor Relations, and related matters.

b.  **Jessica Mason Rodríguez** – Director Office of Labor Relations - about her knowledge of the allegations raised by Mrs. Garcia in her complaint, the investigation performed by the Office of Labor Relations, and related matters.

c. **Keila García Colón** – She will be brought in as a hostile witness to testify about the allegations raised in her complaint.

Defendant reserves the right to supplement or otherwise amend this list, including the right to add or withdraw any witness.

### B.    Expert

#### 1.    Plaintiff

At this time, García potentially anticipates presenting the testimony of her treating psychologist and cardiologist. A decision as to the retention of an expert witness in any of these fields has not been made because additional medical information is required.

#### 2.    Defendant

At this time, the SIFC does not foresee presenting an expert witness at this time. However, Defendant reserves the right to supplement or otherwise amend this list.

## III.   Discovery

*See,* Appendix.

## IV.   Summary of Documentary Evidence in Support of Contentions.

### A.  Plaintiff

1.    Administrative Charge before the Equal Employment Opportunity Commission;

2.    Notice of Dismissal and Right to Sue;

3.    Administrative Order 19-06 (Sexual Harassment Protocol);

4.    Letter of October 5, 2020 by Gladys G. Meléndez (R. Rosado grievance);

5.    Letter of October 9, 2020 by Gladys G. Meléndez (K. García grievance);

6.    Photograph by Keila García Colón taken on 04/06/2021 at 10:22 a.m.;

7.    Photograph by Keila García Colón taken on 04/06/2021 at 10:23 a.m.;

8.    Photograph by Keila García Colón taken on 04/22/2021 at 10:22 a.m.;

9.    Photograph by Keila García Colón taken on 04/26/2021 at 12:56 p.m.;

10.    Photograph by Keila García Colón taken on 04/26/2021 at 12:58 p.m.;

11.    Photograph by Keila García Colón taken on 04/26/2021 at 12:59 p.m.;

12.    Photograph by Keila García Colón taken on 04/30/2021 at   7:55 a.m.;

13.    Photograph by Keila García Colón taken on 05/10/2021 at 12:45 p.m.;

14.    Photograph by Keila García Colón taken on 05/10/2021 at   9:14 a.m.;

15.    Photograph by Keila García Colón taken on 05/10/2021 at   9:16 a.m.;

16.    Photograph by Keila García Colón taken on 05/10/2021 at 11:59 a.m.;

17.    Video by Keila García Colón taken on 03/29/2021 at 8:02 a.m.;

18.    Investigation File at Office of Labor Relations (R. Rosado grievance);

19.    Investigation File at Office of Labor Relations (Keyla García grievance).

**B.  Defendant**

At this time, the SIFC has not determined what documentary evidence it will use at trial. However, the SIFC has produced to Plaintiff, the following documents during the November 10, 2021 Rule 26 meeting held between the parties.

1.    Administrative Order Adopting a Protocol for the Filing of Discrimination and Sexual Harassment in Employment Complaints before the State Insurance Fund dated December 11, 2018 [Administrative Order 19-06]

2.    Norms and Procedure for filing Complaints regarding Discrimination and Sexual Harassment at the State Insurance Fund dated Jun 28, 2000.

3.    October 9, 2020 letter from Gladys Melendez to Keila Garcia.

4.    October 9, 2020 report from the Labor Relations Office.

5. October 9, 2020 letter from Gladys Melendez to Maria C. Jurado.

**V.    Consent to Proceed before a United States Magistrate**

After consulting with their clients the parties hereby inform the court that they do not consent to proceed with the action before a United States Magistrate Judge as provided in 28 U.S.C. §626.

**VI.    ESTIMATED LENGTH OF TRIAL.**

  **A.  Plaintiff.**

Five (5) to seven (7) working days for both parties.

  **B.  Defendant.**

Three (3) days.

**VII.    Other Matters**

  **1.    Plaintiff**

Plaintiff requests that, notwithstanding the resolution of the pending Motion to Dismiss (Docket No. 31) filed by defendant, it be ordered to answer the Verified Complaint. Once defendant's response is received plaintiff will be in a better position to determine if she can reduce the scope of the full extent of the discovery which she currently intends to conduct to prove her allegations and support her claim for relief.

  **2.    Defendant**

The SIFC respectfully requests that this Honorable Court issue a ruling on the SIFC's pending Motion to Dismiss [Docket No. 31] to determine the scope of the discovery and to save the Court's judicial resources.

**WHEREFORE**, the parties very respectfully pray from this Honorable Court that it deem fulfilled by the parties its Orders at Docket Nos. 71 and 75 and that it approve the

deadlines suggested by the parties for pretrial discovery and the subsequent prosecution of this action.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 22nd day of November, 2021.

| Corporation of the State Insurance Fund | Keila García Colón |
|---|---|
| WEINSTEIN-BACAL, MILLER & VEGA, P.S.C. | GONZÁLEZ MUÑOZ LAW OFFICES, P.S.C. |
| González Padín Building - Penthouse<br>154 Rafael Cordero Street, Plaza de Armas<br>Old San Juan, Puerto Rico 00901<br>Telephone: (787) 977-2550<br>Telecopier: (787) 977-2559<br>Email: pwm@wbmvlaw.com<br>       moa@wbmvlaw.com<br><br>By:  *s/ Peter W. Miller*<br>     U.S.D.C. No. 213609<br><br>By:  *s/ Myriam C. Ocasio-Arana*<br>     U.S.D.C. No. 228111 | P.O. Box 9024055<br>San Juan, PR 00902-4055<br>Tel: 787-766-5052<br>jgonzalez@gonzalezmunozlaw.com<br>info@gonzalezmunozlaw.com<br><br>*s/Juan Rafael González Muñoz*<br>JUAN RAFAEL GONZÁLEZ MUÑOZ<br>USDC-PR No. 202312 |

*García Colón v. Corporation if the State Insurance Fund*
**Joint Case Management Memorandum**
**Civil No. 21-1211 RAM)**

**APPENDIX**

| EVENT | DATE |
|---|---|
| Amendment to Pleadings or to Add Parties<br>✓ Plaintiff<br>✓ Defendant | <br>January 15, 2022<br>January 15, 2022 |
| Initial Disclosures<br>(Fed. R. Civ. P. 26(a)(1)(A)(i)) | November 22, 2020 |
| Service of Written Discovery<br>✓ First Set of Interrogatories<br>✓ First Request for Production<br>✓ First Request for Admissions | <br>December 1, 2021<br>December 1, 2021<br>December 1, 2021 |
| Responses to Written Discovery | January 11, 2022[1] |
| Supplemental Written Discovery (Optional)<br>✓ Second Request for Production<br>✓ Second Request for Admissions | <br>January 31, 2022<br>January 31, 2022 |
| Responses to Supplemental<br>Written Discovery | March 15, 2022 |
| Plaintiff's deposition | March 15, 2022 |
| Deposition of Plaintiff's Witnesses | April 11-22, 2022 |
| Announcement of Experts<br>• Plaintiff<br>• Defendant | <br>January 31, 2022<br>February 28, 2022 |
| Production of Expert Reports<br>• Plaintiff<br>• Defendant | <br>March 15, 2022<br>April 15, 2022 |
| Expert Witness' Depositions | May 1-31, 2022[2] |

---

[1] No extensions will be requested. If objections are to be raised to any written discovery these are to be raised by December 22, 2022 or they will be waived.

|  |  |
|---|---|
| Conclusion of Discovery | June 15, 2022 |
| Dispositive Motions | June 30, 2022 |
| Oppositions to Dispositive Motions | July 29, 2022 |
| Replies to Oppositions to Dispositive Motions | August 15, 2022 |
| Joint Proposed Pretrial Order | October 7, 2022 |
| Pretrial/Settlement Conference | October 12, 2022 |
| Jury Trial | October 24, 2022 |

---

[2] The specific dates will be determined by both parties subject to the experts' availability.