# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re: | PROMESA Title III |
| THE FINANICAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
|  | (Jointly Administered) |
| As representative of |  |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, |  |
| Debtors.[1] |  |

## SUPPLEMENTAL DECLARATION OF ERNST & YOUNG LLP UNDER THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021

I, Adam Chepenik hereby declare as follows:

1. I am a Principal of Ernst & Young LLP ("EY LLP"). I provide this Declaration on behalf of EY LLP pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, Pub. L. No. 117-82 ("PRRADA"). This Supplemental Declaration is filed to address certain inquiries of the Office of the United States Trustee and to disclose certain additional facts identified by EY LLP since my original declaration that was filed with this Court on May 16, 2022 (the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

"Initial Declaration"), and in response to informal inquiries raised by the Office of the United States Trustee following my Initial Declaration.

2. The facts set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or professionals of EY LLP and EY US LLP or employees of other member firms of EYGL under my supervision and direction.[2]

3. In Paragraph 18 of the Initial Declaration, I stated that if EY LLP becomes aware that an EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their bankruptcy estates, EY LLP will not permit anyone from such non-US EYGL member firm's engagement team who provides services to such Party in Interest to be involved in the Services that EY LLP provides for the Debtors during these Title III cases. As a supplement to the aforementioned disclosure, based upon its connections check described in the Initial Declaration, EY LLP is not currently aware of any such adverse representation. To the extent that EY LLP becomes aware of any such adverse representation in the future, EY LLP will file a related supplemental disclosure with this Court.

4. In Paragraph 26 of the Initial Declaration, I disclosed that on April 30, 2019, EY LLP entered into a tolling agreement with the Board (acting through its Special Claims Committee) and the Official Committee of Unsecured Creditors for the Debtors (other than COFINA) tolling the statutes of limitations for potential claims relating to services provided by EY LLP to the Debtors or any other Puerto Rico government entity relating to, arising out of, and/or based upon the issuance of bonds by the Debtors or any other Puerto Rico government entity. This tolling

---

[2] Capitalized terms used but otherwise undefined herein shall have the meanings ascribed to such terms in the Initial Declaration.

2

agreement was entered into more than two years after the Board engaged EY to perform Services in connection with the Debtors' restructuring efforts, and currently remains in effect. The Oversight Board's public website (https://drive.google.com/open?id=19-1auVo3w9MPS03xYVe0SWhQin-Q6FEf) contains the independent investigator's final investigative report prepared for the Special Claims Committee that details potential claims the Board may consider investigating further. The report does not purport to evaluate the legal sufficiency of any claim by or against any entity, and EY LLP has not estimated its potential exposure with respect to the tolled potential claims. EY's scope of work does not include advising on the Board's consideration of potential claims, and EY has not provided any advice to the Board with respect to such potential claims, including which claims to pursue or not to pursue. On March 15, 2022, the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (the "Plan") became effective, and on that date a Trustee was appointed and, pursuant to the Plan, all Avoidance Actions (as that term is defined in the Plan) – including the tolled potential claims referenced herein – were transferred to the Avoidance Actions Trust. The Avoidance Actions Trust has the "sole right, authority, and standing to prosecute, settle or otherwise dispose of all Avoidance Actions." [See Confirmation Order, Docket No. 19813, at ¶19.]

5.  As part of the connections check described in my Initial Declaration, EY LLP polled the EY professionals who are providing Services to the Debtors and have access to confidential information of the Debtors, and no such individuals have reported that they have directly held, or are currently holding, any debt or equity securities of the Debtors. EY LLP will similarly poll any EY professionals who are added to the engagement team in the future.

6.  To the best of EY LLP's knowledge, information and belief based upon information reviewed pursuant to the procedures described in the Initial Declaration and this Supplemental

Declaration: (i) EY LLP does not hold debt or equity securities of the Debtors, and is not aware of any other EYGL member firms holding debt or equity securities of the Debtors (as such EYGL member firms are separate legal entities from EY LLP, and EY LLP does not have access to that information); and (ii) EY LLP has not advised any clients as to buying or selling debt or equity securities of the Debtors, and is not aware of any EYGL member firms having advised any clients as to buying or selling debt or equity securities of the Debtors.

7. EY LLP is in the process of being retained to provide grant related services to a large electric utility company (the "Utility Company," that was not listed in the Debtors' Material Interested Parties List) in connection with the Utility Company's recovery of costs from the Federal Emergency Management Agency for services provided to the Puerto Rico Electric Power Authority. These services would be unrelated to the Debtors' Title III cases.

8. In 2020, EY LLP was engaged by a bank (that was not listed in the Debtors' Material Interested Parties List) to serve as its eDiscovery vendor with respect to litigation involving the LIBOR interest rate, where the Government Development Bank for Puerto Rico is a claimant/plaintiff and EY LLP's client is a defendant. Until now, EY's work has mainly involved migrating data from a predecessor eDiscovery vendor as well as the following services: processing, hosting, searching, support within the document review platform and document production. EY expects these services to continue in the future. EY takes direction from counsel to this bank, and EY does not itself set the parameters for what does and does not get produced. These services are unrelated to the Debtors' Title III cases.

9. In Paragraph 16 of the Initial Declaration, I disclosed (among other things) that EY provides certain services to the Board and/or its counsel unrelated to the Debtors' Title III proceedings, including project management advice at the Puerto Rico Department of Education

4

("PRDE"). In addition to the aforementioned services, EY Puerto Rico also has provided and continues to provide certain services directly to the PRDE unrelated to the Debtors' Title III proceedings.

10. As of the Petition Dates for each of the Debtors set forth below, EY had outstanding invoices for services provided to such Debtors or the Financial Oversight and Management Board (the "Board"), as follows: as of May 21, 2017, EY had the following outstanding invoice with HTA: April 28, 2017 invoice for $10,076.00 paid on August 15, 2017. As of July 2, 2017, EY had the following outstanding invoice with the Puerto Rico Electric Power Authority ("PREPA"): May 15, 2017 invoice for $23,000.00 paid on December 29, 2017. In addition to the above, as of May 3, 2017, EY had the following outstanding invoice with the Board: April 4, 2017 invoice for $385,000.00 paid on June 1, 2017.

11. None of the parties on the Material Interested Parties List constituted more than 2% of EY LLP's gross revenues in any year that the Debtors' Title III cases have been pending.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October 10, 2022

*/s/ Adam Chepenik*
Adam Chepenik
Ernst & Young LLP

5