## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et
al.*,[1]

               Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

## MOTION OF BONISTAS DEL PATIO FOR PAYMENT OF CERTAIN PROFESSIONAL FEES AND EXPENSES BY THE COMMONWEALTH

---

[1] The debtors in these Title III cases, along with each debtor's respective Title III case number and the last four digits of each debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-05523) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>P</u><u>AGE</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 4

ARGUMENT ................................................................................................................ 15

    I.   The Bonistas Expenses are payable by the Commonwealth under Section 15.2 of
the COFINA Plan.................................................................................................. 15

    II.  The Bonistas Expenses are allowable administrative expenses in the Title III case
of the Commonwealth under 11 U.S.C. § 503(b) ................................................ 18

        A.  Bonistas del Patio made a substantial contribution to the Commonwealth's
Title III proceedings............................................................................. 19

        B.  The Bonistas Expenses are reasonable .................................................. 22

CONCLUSION ............................................................................................................. 23

CERTIFICATE OF SERVICE ..................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*In re Celotex Corp.*,
227 F.3d 1336 (11th Cir. 2000) ..................................................................... 21, 22

*In re DP Partners, Ltd. P'shp.*,
106 F.3d 667 (5th Cir. 1997) ......................................................................... 19, 20

*In re Healthco Intern., Inc.*,
310 F.3d 9 (1st Cir. 2002)..................................................................................19

*In re Lister*,
846 F.2d 55 (10th Cir. 1988) .............................................................................. 19

*In re Mark Anthony Const., Inc.*,
886 F.2d 1101 (9th Cir. 1989) ............................................................................ 18

*Mediofactoring v. McDermott  (In re Connolly N. Am., L.L.C.)*,
802 F.3d 810 (6th Cir. 2015) ............................................................................. 18

*Mendez & Co., Inc. v. Citrus World, Inc.*,
No. CIV. 09-2251 (JAF), 2011 WL 1362468 (D.P.R. Mar. 24, 2011) ................................ 17

*In re Mirant Corp.*,
354 B.R. 113 (Bankr. N.D. Tex. 2006) ................................................................ 21

*In re Ocean Blue Leasehold Prop. L.L.C.*,
414 B.R. 798 (Bankr. S.D. Fla. 2009) ................................................................ 21

*In re Pow Wow River Campground, Inc.*,
296 B.R. 81 (Bankr. D.N.H. 2003) ................................................................ 19, 20

*In re Richton Int'l Corp.*,
15 B.R. 854 (Bankr. S.D.N.Y. 1981) .......................................................... 20, 21, 22

*In re R.L. Adkins Corp.*,
505 B.R. 770 (Bankr. N.D. Tex. 2014) ................................................................ 21

*In re U.S. Lines, Inc.*,
103 B.R. 427 (Bankr. S.D.N.Y. 1989) *aff'd*, No. 90 CIV. 3823 (MGC), 1991 WL 67464
(S.D.N.Y. Apr. 22, 1991).................................................................................20

*In re Worldwide Direct, Inc.*,
334 B.R. 112 (Bankr. D. Del. 2005) .............................................................. 21, 22

<u>STATUTES & RULES</u>

11 U.S.C. § 102(3) ...................................................................................... 19

11 U.S.C. § 503 ............................................................................................ 1

11 U.S.C. § 503(b) ................................................................................. 18, 23

11 U.S.C. § 503(b)(3) .................................................................................. 8

11 U.S.C. § 503(b)(3)(D) ........................................................................... 19

11 U.S.C. § 503(b)(4) ........................................................................... 18, 22

11 U.S.C. § 1129(a)(3) ............................................................................... 11

48 U.S.C. § 2161(a) ............................................................................. 15, 18

48 U.S.C. § 2174 ........................................................................................ 15

<u>OTHER AUTHORITIES</u>

4 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* (16th ed.) ...................................... 19

To the Honorable United States District Judge Laura Taylor Swain:

Bonistas del Patio, Inc. respectfully submits this motion for payment of fees and expenses by the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to Section 15.2 of the *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (the "COFINA Plan") and as administrative expenses allowable in the Title III case of the Commonwealth pursuant to 11 U.S.C. § 503, made applicable to these Title III cases by 48 U.S.C. § 2161(a), and states as follows:

## PRELIMINARY STATEMENT

1.      Bonistas del Patio, Inc. ("Bonistas del Patio" or the "Bonistas") is a Puerto Rico not-for-profit corporation established in 2016 to protect the interests of on-Island investors in bonds issued by the Commonwealth and its instrumentalities.  Throughout Puerto Rico's fiscal crisis, Bonistas del Patio has served as a unified voice for the interests of this otherwise unrepresented but crucial constituency, who would, absent the efforts of Bonistas del Patio, risk being sidelined by larger, more organized institutional investors in Puerto Rico's bonds.  As an advocate in the mediation process for Puerto Rican holders generally, Bonistas del Patio played a critical role in the achievement of the compromises and settlements necessary to resolve the Title III cases of the Commonwealth and the Puerto Rico Sales Tax Financing Corporation ("COFINA"), including in connection with the negotiation, development, confirmation, and consummation of the COFINA Plan.  Bonistas del Patio was an active participant in all stages of negotiations of the COFINA Plan and the settlements reflected therein, and made direct, concrete contributions to the plan, including in connection with structuring the COFINA Plan's taxable bond election, and helping to obtain necessary support for the COFINA Plan from local bondholders.  Bonistas del Patio also participated in the mediation of the Commonwealth plan of

adjustment and contributed to the development of possible contingent payment mechanisms that ultimately formed the basis for the contingent value instruments provided for under the Commonwealth's plan of adjustment.  Bonistas del Patio's unique contribution to the successful restructuring of COFINA was memorialized in the Plan Support Agreement for the COFINA Plan (the "COFINA PSA") and recognized by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), by other creditor parties in the COFINA Plan negotiations, and in the Court's Findings of Fact and Conclusions of Law Confirming the COFINA Plan.

2. None of the contributions of Bonistas del Patio would have been possible had it not been represented in the mediation and plan process by experienced and well respected attorneys and financial advisors.  It was understood by AAFAF and the other COFINA PSA parties that the expenses of parties to the mediation process in connection with the COFINA Plan, such as the Bonistas Expenses (as defined herein), would be paid by the Commonwealth or its instrumentalities.  In this regard, the Bonistas were hardly unique:  the COFINA Plan provided for the payment in hundreds of millions of dollars in "Consummation Costs" to COFINA creditors. COFINA Plan § 3.3.  But Bonistas del Patio was unique in that, because it is a representative not-for-profit organization rather than a bondholder itself, it was the only party to negotiate and sign onto the COFINA PSA, and thereby agree to support and promote the COFINA Plan, to be excluded from the COFINA Plan's provisions for the payment of Consummation Costs, which were calculated based on bond holdings and therefore applied only to entities that directly held bonds.  Rather, having been invited to participate in the mediation process to act as a voice for local bondholders and having committed to be a party to the COFINA PSA and to promote the COFINA Plan among local bondholders, the Bonistas Expenses were payable under a different

COFINA Plan provision, Section 15.2.  That section provides that the <u>Commonwealth</u> will pay "all expenses . . . incurred by the Commonwealth or COFINA . . . in connection with the development, negotiation, confirmation and consummation of the COFINA Plan and the compromise and settlement of the Commonwealth-COFINA Dispute" as well as payment of Allowed Administrative Claims.  The provisions of the COFINA PSA and communications with various parties from the initial commencement of mediation and throughout the plan solicitation and confirmation process confirm that the Bonistas Expenses were intended to be covered by this provision.

3.      Bonistas del Patio is therefore entitled to payment of the Bonistas Expenses by the Commonwealth, whether the Bonistas Expenses are considered a cost incurred in connection with the "development, negotiation, confirmation and consummation of the [COFINA] Plan" under Section 15.2 of the COFINA Plan, or as an administrative expense claim allowable under Section 503(b) of the Bankruptcy Code, made applicable to these Title III cases by 48 U.S.C. § 2161(a), on account of the substantial contribution that the Bonistas made to the successful reorganizations of COFINA and the Commonwealth.  The COFINA Plan, PROMESA, the Bankruptcy Code, and basic principles of equity all dictate that the Bonistas Expenses should be paid.  When compared to the $332 million of Consummation Costs paid under the COFINA Plan and the $411 million of similar fees and expenses paid under the Commonwealth plan of adjustment,[2] the $7 million of Bonistas Expenses are truly reasonable in light of the contribution Bonistas del Patio made to the successful outcome of the Commonwealth and COFINA Title III cases.  Failure to pay the Bonistas Expenses would not only ignore the contribution of Bonistas

---

[2] *See Declaration of Steven Zelin of PJT Partners LP on behalf of the Financial Oversight and Management Board for Puerto Rico in Respect of Confirmation of Seventh Amended Title III Join Plan of Adjustment of the Commonwealth of Puerto Rico et al.*, Dkt. No. 18734 ¶ 86 (showing $411 million in Consummation Costs and Restriction Fees in connection with allowed GO and PBA claims).

del Patio and their professionals to the plans of adjustment and the understanding of the parties, it would also ignore that the parties knowingly and deliberately used Bonistas del Patio's support to influence local bondholders in connection with the solicitation of votes for the COFINA Plan.

## **BACKGROUND**

4.      Bonistas del Patio is a Puerto Rico not-for-profit corporation whose mission is to safeguard the interests of individual residents of Puerto Rico ("Local Bondholders") who invested their savings in bonds issued by the Commonwealth and its instrumentalities and to preserve local capital on-island.  (Ex. 1[3] ¶ 3.)  Bonistas del Patio was formed in 2016 and is operated by local residents who invested savings of their own into Puerto Rico bonds.  (*Id.*)  Through its participation in the restructuring of the Commonwealth and its instrumentalities, and its regular consultation with Local Bondholders, Bonistas del Patio has given a voice to Local Bondholders who would not otherwise have the means or negotiating power to protect their interests.[4]  (*Id.*)  That voice has been indispensable:  while non-resident bondholders only bear the burden of the Commonwealth's debt reductions through bond write-downs, Local Bondholders also bear the burdens of increased taxes, reduced public services, and other reform measures.  Moreover, Local Bondholders' participation in the taxable bond elections provided under the plans of adjustment have created value for non-resident bondholders who would otherwise be required to proportionally bear the burden of non-tax exempt bonds.  No official committee represents Local Bondholders, meaning that Bonistas del Patio has been the only group advocating entirely on behalf of Local Bondholders.

---

[3] "Ex. 1" shall refer to Exhibit 1 to the Declaration of Marc J. Tobak, attached hereto as Exhibit B.

[4] In addition to reaching out to Local Bondholders directly through mailings, emails, and conversations (*see, e.g.* Bonistas del Patio, *Noticias*, http://www.bonistasdelpatio.com/noticias (last visited on June 6, 2022); Bonistas del Patio, *Documentos*, http://www.bonistasdelpatio.com/documentos (last visited on June 6, 2022)), Bonistas del Patio holds educational forums in which Local Bondholders provide testimonials.  *See Bonistas del Patio Creditors Hold Forum at Puerto Rico Convention Center*, Caribbean Business, March 9, 2017, available at https://caribbeanbusiness.com/bonistas-del-patio-creditors-hold-forum-at-puerto-rico-convention-center.

### A.   Bonistas del Patio and its professionals dedicated thousands of hours of work to the Mediation and development of plans of adjustment

5.      In furtherance of its goals, Bonistas del Patio served as an active participant in negotiations and the Court-sanctioned mediation (the "Mediation") concerning the restructuring of the Commonwealth and its instrumentalities.  (Ex. 1 ¶ 6.)  To assist it in negotiations, Bonistas del Patio retained Davis Polk & Wardwell LLP ("Davis Polk") and Ducera Partners LLC ("Ducera" and, together with Davis Polk, the "Professionals").  (*Id*. ¶ 4.)  Through discussions with representatives and advisors of AAFAF and the Oversight Board over the course of the negotiations, as described below, Bonistas del Patio and the Professionals understood that the Commonwealth would ultimately pay the professional fees for Bonistas del Patio because the government parties and the other Mediation participants desired Bonistas del Patio's participation in the Mediation and the efforts to confirm the plans that emerged from those negotiations.  (*Id*. ¶ 10.)  Had the parties not been willing to include Bonistas del Patio as one of the parties whose expenses would be covered under any plan of adjustment, Bonistas del Patio could not have participated in the Mediation and efforts to achieve successful outcomes in the COFINA and Commonwealth Title III cases.  (*Id*.)

6.      In the years since the Mediation began, both Bonistas del Patio and the Professionals have engaged with AAFAF, the Oversight Board's advisors, other constituencies, and the mediators to help reach compromises and settlements necessary to achieve successful plans of adjustment.  (Ex. 1 ¶ 11.)  Because, according to local broker-dealers, Local Bondholders' holdings were distributed relatively evenly among the COFINA and Commonwealth bond classes, Bonistas del Patio geared its efforts toward a consensual compromise that maximized benefits for all classes of bondholders.  (*Id.*)

7.     Bonistas del Patio and the Professionals participated in (and, at times, led) hundreds of hours of intense and complex negotiation sessions, meetings and conference calls (including hosting several meetings at Davis Polk's office) with the Oversight Board, AAFAF, various creditor constituencies and their respective professionals, and with the mediation team. (*Id.* ¶¶ 8–9.)[5] Among other things, and in many cases at the request of AAFAF, the Oversight Board, various creditor groups or the mediators, Bonistas del Patio and its Professionals actively participated in formal mediation sessions and prepared a number of mediation statements, served on a 10-person creditor working group designated to interface with the Oversight Board regarding the Commonwealth fiscal plan, formulated and proposed to the Oversight Board a global restructuring framework for the Commonwealth and its instrumentalities, and formulated and proposed a tax credit framework to stimulate the local economy by offsetting new on-Island investment operating income against local capital losses resulting from the restructuring process. (*Id.*)

8.     From 2017 through 2019, the Professionals, on behalf of Bonistas del Patio, also dedicated thousands of hours and expended substantial resources in the development, negotiation, and implementation of the settlement of the Commonwealth-COFINA Dispute and the COFINA Plan in an effort to aid the Oversight Board and AAFAF in achieving successful outcomes for the Commonwealth and COFINA Title III cases. (*Id.* ¶ 11.)  Bonistas del Patio was a signatory to (or agreed to be a supporting party of) each milestone document and agreement signed by the parties directly involved in the negotiations, which ultimately paved the way to the successful resolution

---

[5] The Professionals attended at least twenty-six meetings and mediation sessions relating to the Commonwealth-COFINA Dispute and the COFINA Plan, including three hosted by Davis Polk, in addition to many conference calls. The Professionals participated in at least nine meetings and conference calls with the Oversight Board's representatives regarding a global restructuring framework developed by Bonistas del Patio for the Commonwealth and its instrumentalities.

of the Commonwealth-COFINA Dispute and the COFINA Plan.[6]  The Court and the Oversight Board have each recognized that resolution of the Commonwealth-COFINA Dispute was a condition precedent to the development and formulation of plans of adjustment for both COFINA and the Commonwealth.  (*See Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, Dkt. No. 5047 ¶ 14; *Declaration of Natalie A. Jaresko In Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*, Dkt. No. 4758 ¶ 24; *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*, Dkt. No. 5045 ¶¶ 5, 35.)  Furthermore, support by both COFINA senior bondholders and COFINA junior bondholders of the intercreditor settlement embodied in the COFINA Plan was a necessary precondition to confirmation of the COFINA Plan and, therefore, the success of the Commonwealth-COFINA Dispute settlement. (*See Declaration of Natalie A. Jaresko In Support of Confirmation of Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, Case No. 17-03284-LTS, Dkt. No. 483 ¶¶ 57, 69).

9.      Bonistas del Patio served as a counterparty to the Oversight Board and AAFAF, as well as to other creditor groups with interests focused on more homogenous bond holdings, in the negotiation and finalization of the COFINA PSA, the COFINA Plan and the related solicitation

---

[6] *See, e.g.*, Notice of Filing of Revised Stipulation and Agreed Order Approving Procedure to Resolve Commonwealth-COFINA Dispute, Case No. 17-03283-LTS (Dkt. No. 857); Commonwealth-COFINA Joint Settlement Outline, available at https://app.reorg.com/documents/20180514/5af975544108f.pdf; Proposed COFINA Bondholders Agreement, Additional/Voluntary Event-Based Disclosure, Electronic Municipal Market Access System (August 8, 2018), available at https://emma.msrb.org/ES1188621-ES928946-ES1329908.pdf; COFINA PSA.

and definitive documents,[7] and helped to ensure significant Local Bondholder awareness of and support for the COFINA Plan.  (Ex. 1 ¶ 9.)   The Professionals developed and extensively negotiated terms that advanced the interests of Local Bondholders in a manner that assured an equitable allocation of value between COFINA and the Commonwealth, between COFINA senior and junior bondholders, and between on- and off-island bondholders, for the benefit of all bondholders and case constituents.  As one example, Bonistas del Patio was heavily involved in ensuring an acceptable allocation of value among the senior and junior COFINA bondholders under the COFINA Plan to resolve consensually the intercreditor disputes among COFINA bondholders, an unquestionably critical element of the COFINA Plan's confirmability and success. As another example, the terms and mechanics of the taxable bond election produced a better outcome for all holders by providing appropriate incentives for Local Bondholders with certain investment goals to elect taxable bond distributions in order to reduce the amount of taxable bonds distributable to U.S. holders subject to U.S. federal income tax.  That, in turn, ensured that both local and mainland investors received reasonably equivalent treatment in respect of their claims. Local Bondholders holding approximately $1.4 billion in claims elected a taxable bond distribution as a result.  The taxable bond election was a critical element to ensuring non-resident support for the COFINA Plan, as demonstrated by the COFINA PSA provisions obligating the parties to ensure that the taxable bond election succeeded.[8]  (*Id.* ¶ 11.)

---

[7] The Professionals provided over twenty markups proposing comments to the COFINA PSA, the COFINA Plan and related documents, in addition to participating in live drafting sessions with the other COFINA PSA parties.  The documents were required to be in form and substance reasonably satisfactory to Bonistas del Patio under the terms of the COFINA PSA.

[8] Bonistas del Patio is refraining from providing certain additional examples of its involvement in the mediation process due to the confidential mediation privilege in accordance with the Mediation Agreement, signed by Bonistas del Patio on July 25, 2017. If the Court should require such additional evidence, Bonistas del Patio would be prepared to provide it under seal.

10.     Bonistas del Patio memorialized its support for the COFINA Plan by entering into the COFINA PSA with the Oversight Board, AAFAF, and various creditors.  In the COFINA PSA, Bonistas del Patio covenanted to (i) support the COFINA Restructuring (as defined in the COFINA PSA), (ii) actively encourage support by Local Bondholders for the COFINA Restructuring, including through posting to the Bonistas del Patio website and responding to Local Bondholders' questions, (iii) support new Puerto Rico legislation to implement the COFINA Restructuring, (iv) not take any action, nor encourage others to take any action, inconsistent with the COFINA Restructuring and (v) not support or encourage Local Bondholders to vote for any plan of adjustment (or modification thereto) not proposed or supported by the Oversight Board, AAFAF or COFINA.  (COFINA PSA § 4.9.)

11.     Bonistas del Patio and its Professionals facilitated consensual and value-maximizing restructurings through their ongoing efforts to support confirmation of the COFINA Plan.  (Ex. 1 ¶ 9.)  In furtherance of its commitments under the COFINA PSA and at the request of the Oversight Board's professionals, Bonistas del Patio communicated with Local Bondholders to raise awareness of the COFINA Restructuring, and served as a resource for Local Bondholders, including through phone calls, emails, at least eight public statements published throughout local and national media outlets and on Bonistas del Patio's website, in-person meetings in Puerto Rico with the Professionals and Local Bondholders, and a remote video conference with the Professionals and Local Bondholders.  (*Id.*)  At the request of the Oversight Board and the other mediation parties, Bonistas del Patio encouraged support for the COFINA Plan through preparing and disseminating to Local Bondholders "Questions and Answers" regarding the COFINA Plan and distributing announcements notifying and reminding Local Bondholders of the voting and election deadlines for the COFINA Plan, and by engaging with broker-dealers to encourage

communication with Local Bondholders with respect to the COFINA Plan, and, at the request of the Oversight Board's counsel, assisting in the formulation of radio advertisements and other documents publicizing the solicitation. (*Id.*) In addition, in preparing for the COFINA confirmation hearing, Bonistas del Patio and its Professionals also helped seek out and prepare Local Bondholders to testify in support of the COFINA Plan.

12. During and after the COFINA Plan confirmation process, the Court, the Oversight Board, and other COFINA creditors recognized Bonistas del Patio's important contributions to the COFINA Plan. The Oversight Board argued that the COFINA Plan was fair and equitable and did not discriminate unfairly because, among other things, "all major classes were represented in plan negotiations," including through Bonistas del Patio's advocacy "for the interests of Puerto Rico resident bondholders." (Dkt. No. 4757 at ¶¶ 18–20.) At the confirmation hearing, the Oversight Board reiterated that "all parties were adequately represented," in plan negotiations, including "the Bonistas as representatives of the island bondholders." (Transcript of January 17, 2019 Confirmation Hearing at 121:20-122:7 (Rosen).) Similarly, the COFINA Senior Bondholders' Coalition submitted a Statement in Support of Informative Motion Regarding Stipulation of Section 15.2 Expenses, confirming that Bonistas del Patio contributed to "facilitating a consensual deal, garnering on-Island support for the [COFINA] Plan, and, ultimately, consummating the transaction" and, in particular, that "the Bonistas' views on what would constitute a fair and reasonable compromise of the senior-subordinate dispute were given great weight by the other parties to the negotiations." (Dkt. No. 5118 at 3.) The COFINA Senior Bondholders' Coalition further noted that Bonistas del Patio (i) was instrumental in garnering votes from local bond-holders for the COFINA Plan; (ii) benefitted the Commonwealth and COFINA by helping them achieve a consensual COFINA Plan, and (iii) provided a benefit to both on-island and mainland

bondholders through the taxable bond election provision they helped develop.  (*Id.* at 3–4.)[9]

Finally, in finding that the COFINA Plan was proposed in good faith, pursuant to 11 U.S.C.

§ 1129(a)(3), the Court relied, in part, on the fact that "[a]ll major Classes and Claims were

represented in . . . mediation" and specifically found, as requested by the Oversight Board, that

"Bonistas, advocating for the interests of Puerto Rico resident bondholders, actively participated"

in the COFINA Plan mediation.  (*See Amended Memorandum of Findings of Fact and Conclusions

of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of

Puerto Rico Sales Tax Financing Corporation*, Dkt. No. 5053, ¶ 101.)

### B.   AAFAF, the Oversight Board, and COFINA creditors supported payment of the Bonistas Expenses to ensure adequate representation of the interests of Local Bondholders

13.    In recognition of Bonistas del Patio and the Professionals' significant contributions

to the ongoing negotiations, in a letter dated July 19, 2018 (the "July 2018 Letter"), AAFAF wrote

that it believed that the Bonistas "have been playing and continue to play a constructive role on

behalf of" the Local Bondholders, and "that, because of the complexity and importance of the

mediation and the need for the interests of Local Bondholders to be adequately represented by

parties committed to negotiating with all constituents to achieve a constructive and consensual

solution to the Puerto Rico debt crisis, the engagement by [Bonistas del Patio] of experienced

external lawyers and financial advisors provides significant benefits to the local constituents and

the Commonwealth alike."  (Ex. 2 to Exhibit B, at 1.)  AAFAF furthermore stated that it would

not oppose a component of the COFINA Plan allowing the payment of the Professionals' fees and

expenses.  (*Id.*)

---

14.     In August of 2018, the parties agreed that COFINA would pay a fee to the holders
and insurers of COFINA bonds that were parties to the COFINA PSA, in recognition of the fees
and expenses they incurred in connection with the development and negotiation of the terms of the
COFINA Plan.  (*See Response of the Puerto Rico Fiscal Agency and Financial Advisory Authority
to the Official Committee of Unsecured Creditors' Urgent Response to Informative Motion*, Dkt.
No. 5117 ¶ 7.)  The parties also agreed that, pursuant to Section II(N) of the Term Sheet for the
COFINA PSA—the same agreement by which Bonistas del Patio, along with AAFAF and the
Oversight Board, agreed to support the COFINA Plan—the Commonwealth would pay fees and
expenses incurred by the Commonwealth or COFINA in connection with the COFINA
restructuring.  (Ex. 2.)  AAFAF also agreed in principle that the Commonwealth would pay a
portion of the fees and expenses incurred by the Professionals in their representation of Bonistas
del Patio in connection with the COFINA restructuring, in an aggregate amount not to exceed $7
million (the "Bonistas Expenses"), which would be paid upon the consummation of the COFINA
Plan.  (*See Informative Motion Regarding Stipulation Section 15.2 Expenses*, Dkt. No. 5097.)  It
was anticipated that such payment was to be made pursuant to Section II(N) of the COFINA PSA,
which later became Section 15.2 of the COFINA Plan.[10]

### C.     The Bonistas Expenses remain unpaid to date

15.     On January 22, 2019 and February 7, 2019, Ducera and Davis Polk invoiced
AAFAF for the Bonistas Expenses in the amounts of $5 million and $2 million, respectively.  To
memorialize the agreement in principle AAFAF reached with Bonistas del Patio in August, 2018,

---

[10] *See Statement of the COFINA Senior Bondholders' Coalition in Support of Informative Motion Regarding
Stipulation of Section 15.2 Expenses*, Dkt. No. 5118, at 3 ("[T]he Plan specifically provides for the Commonwealth to
make payments such as payments to the Bonistas' professionals out of the 'funds distributable to the Commonwealth
in accordance with the [Plan].'").

AAFAF, Bonistas del Patio and the Professionals began to negotiate a stipulation on February 7, 2019, which was agreed to and filed on February 11, 2019.  (Dkt. No. 5097.)

16.     On February 12, 2019, the Official Committee of Unsecured Creditors of the Title III Debtors Other than COFINA (the "UCC") filed its *Urgent Response to AAFAF's Informative Motion Disclosing Proposed Payment of $7 Million to Bonistas del Patio, Inc.* (Dkt. No. 5100), in which it requested that the Bonistas Expenses not be paid until AAFAF made additional disclosures.  The next day, February 13, 2019, AAFAF filed a response as directed by the Court. (Dkt. No. 5117.)  AAFAF's response set forth the legal and factual bases for the Commonwealth's decision to pay the Bonistas Expenses, and attached the *Declaration of Brian M. Resnick Regarding Payment of the Bonistas Expenses* detailing Bonistas del Patio's involvement in the Mediation and confirmation of the COFINA Plan.  (Dkt. No. 5117-1.)  The UCC filed its *Amended Further Response to AAFAF's Informative Motion*.  (Dkt. No. 5135), in which the UCC raised further objections to payment of the Bonistas Expenses and sought discovery and a hearing on the payment of the Bonistas Expenses.

17.     Rather than impose the burdens and distraction of costly discovery and litigation on the Commonwealth, AAFAF, and the Court during a crucial phase of the Title III case of the Commonwealth, the parties agreed to suspend litigation over the Bonistas Expenses.  Pursuant to a stipulated order that the Court entered on August 22, 2019, Bonistas del Patio, AAFAF, and the Oversight Board agreed to preserve the right of Bonistas del Patio to seek payment of the Bonistas Expenses from the Commonwealth, and the right of any party to object thereto.  (Dkt. No. 8522.) On September 5, 2019, the Court entered an Order (the "September 5 Order"), submitted by AAFAF, that recognized AAFAF's withdrawal of the February 11, 2019 stipulation, and provided that the Bonistas Expenses would not be paid without notice to parties in interest and a further

13

order of the Court.   (Dkt. No. 8617.)   Following confirmation and consummation of the

Commonwealth plan of adjustment, Bonistas del Patio filed an administrative expense proof of

claim for the Bonistas Expenses on June 13, 2022,[11] in advance of the administrative expense

claims bar date.  The present motion seeks allowance and payment of that administrative claim.

18.      Bonistas del Patio has not paid, and does not have any resources to pay, the

Bonistas Expenses.  Although the principals of Bonistas del Patio have invested material time and

effort in directing Bonistas del Patio and its participation in the Puerto Rico restructurings, they

have not received and do not seek any compensation for their work from the Commonwealth's

estates.  Accordingly, no portion of the Bonistas Expenses are to be paid to Bonistas del Patio; the

entire amount is to be paid directly to the Professionals.  As noted above, Davis Polk and Ducera

agreed to limit the fees for which payment was sought in connection with the COFINA

restructuring to $2 million and $5 million, respectively.  However, as described above, the work

of the Professionals on behalf of Bonistas del Patio in connection with the Puerto Rico

restructurings extends well beyond the COFINA Plan.  To date, Davis Polk has incurred more than

$4 million in fees and expenses representing Bonistas del Patio in connection with the Puerto Rico

restructurings.  Ducera's agreed fee of $5 million is significantly less than its customary fees for

equivalent services in restructurings of comparable size and complexity.  Nevertheless, in an effort

to resolve the matter, the Professionals have agreed to limit the requested fees to the previously

agreed amounts of $2 million in fees owed to Davis Polk and $5 million in fees owed to Ducera

and to waive collection of any amounts incurred by Bonistas del Patio to date in excess of the

Bonistas Expenses.  Davis Polk has further agreed to submit a fee statement for review by the fee

---

[11] Claim No. 180130 (Title III Case No. 17 BK 3283-LTS).  Bonistas del Patio previously (and prophylactically)
filed a substantively identical proof of claim in the COFINA Title III case (Claim No. 170232 (Title III Case No. 17
BK 03284-LTS)).

examiner, subject to the payment of 80% of the agreed $2 million of Davis Polk's fees promptly after entry of the Court's order, and payment of the remaining 20% of Davis Polk's agreed fees following the fee examiner's review.

## ARGUMENT

### I.   The Bonistas Expenses are payable by the Commonwealth under Section 15.2 of the COFINA Plan

19.     The terms of the COFINA Plan provide for the payment of the Bonistas Expenses by the Commonwealth.  Section 15.2 of the COFINA Plan provides as follows:

> "all expenses . . . incurred by the Commonwealth or COFINA, as the case may be, in connection with the development, negotiation, confirmation and consummation of the [COFINA] Plan and the comprise and settlement of the Commonwealth-COFINA Dispute shall be paid to the extent available from funds distributable to the Commonwealth in accordance with the provisions of Sections 2.1 and 1.51 hereof and otherwise by the Commonwealth."

Thus, to be payable under Section 15.2 of the COFINA Plan, an expense must be an expense that is (i) incurred "in connection with the development, negotiation, confirmation and consummation of the [COFINA] Plan and the comprise and settlement of the Commonwealth-COFINA Dispute"; and (ii) incurred "by the Commonwealth or COFINA."[12]   The Bonistas Expenses meet both criteria.

20.     First, the Bonistas Expenses were incurred "in connection with the development, negotiation, confirmation and consummation of the [COFINA] Plan."   Bonistas del Patio

---

[12] Payment of the agreed Bonistas Expenses under Section 15.2 of the COFINA Plan is entirely consonant with PROMESA.  PROMESA does not impose any disclosure or review requirements on fees paid in connection with a plan of adjustment.  The Bankruptcy Code prohibits payment of expenses in connection with a chapter 11 plan without court review for reasonableness and approval," 11 U.S.C. § 1129(a)(4), and requires that fees to be paid under a chapter 9 plan be disclosed and be "reasonable," 11 U.S.C. § 943(b)(3).  Congress expressly declined to incorporate either Section 943(b)(3) or 1129(a)(4) of the Bankruptcy Code into PROMESA, and did not provide any analogous requirement among PROMESA's requirements for confirmation of a plan of adjustment.  48 U.S.C. § 2161(a) (Title 11 provisions incorporated in PROMESA Title III do not include 11 U.S.C. §§ 943(b)(3) and 1129(a)(4)); 48 U.S.C. § 2174 (setting for Title III plan confirmation standards).

(i) actively participated in the negotiation of successful resolutions to the Commonwealth-COFINA Dispute and the COFINA intercreditor disputes, (ii) developed parts of the COFINA Plan, including the terms and mechanics of the taxable bond election, (ii) actively participated in plan negotiations from the outset, (iii) sought out Local Bondholders to testify in favor of the COFINA Plan at the confirmation hearing, and (iv) helped promote support for the COFINA Plan among Local Bondholders. (¶ 10 *supra*.) This Court specifically found that "Bonistas, advocating for the interests of Puerto Rico resident bondholders, actively participated" in plan mediation in its Findings of Fact supporting the Court's decision to confirm the COFINA Plan. *See* Dkt. No. 5053 ¶ 101 (D. P.R. February 13, 2019). Likewise, AAFAF, the COFINA Senior Bondholders' Coalition, and the Oversight Board have all publicly and expressly recognized Bonistas del Patio's contributions to the COFINA Plan. (¶ 8 *supra.*) Both Bonistas del Patio and the Professionals engaged in widespread efforts to support the COFINA Plan, and the Bonistas Expenses represent a portion of the fees owed to the Professionals in connection with the plan. (¶ 14 *supra*.)

21.     Second, the Bonistas Expenses are also expenses "incurred" by the Commonwealth or COFINA within the meaning of Section 15.2. As discussed above, AAFAF and the Oversight Board knowingly caused the incurrence of the Bonistas Expenses by soliciting the assistance and support of Bonistas del Patio, including among other things, by repeatedly requesting that Bonistas del Patio and its professionals undertake efforts in furtherance of the COFINA Plan with the express understanding that the COFINA Plan would provide for the payment of the Bonistas Expenses. (¶ 5 *supra*.) The tasks that the Oversight Board and AAFAF set for Bonistas del Patio include participation in mediation sessions, negotiating and agreeing to the economic settlements embodied in the COFINA Plan, reviewing and providing comments on the COFINA PSA, the

COFINA Plan and the solicitation and other definitive documents effectuating the restructuring and publicly and actively supporting the COFINA Plan and the vote solicitation process.  (¶ 5 *supra*.)

22.     Throughout that period, AAFAF made clear to Bonistas del Patio that the Commonwealth would cover Bonistas del Patio's professional expenses, and Bonistas del Patio had understood based on conversations with representatives of the Oversight Board that the Oversight Board was fully aware of this.  (¶ 13 *supra*.)  Had Bonistas del Patio not therefore understood  that the Commonwealth would cover Bonistas del Patios' expenses such as the Professionals' fees, neither Bonistas del Patio nor the Professionals would have been able to follow the Oversight Board's directions or to dedicate thousands of hours working to achieve a confirmable plan.  (¶ 5 *supra*.)  Furthermore, the Commonwealth realized the benefits of Bonistas del Patio's investments through the efforts of Bonistas del Patio in developing, negotiating and achieving consensual resolutions of the Commonwealth-COFINA Dispute and the COFINA intercreditor dispute, supporting and assisting in the drafting of the confirmed COFINA Plan and obtaining on-island support and the votes necessary for confirmation of the COFINA Plan.[13]  And parties to the COFINA PSA—other than the Bonistas del Patio—were compensated through the COFINA Plan's provision for Consummation Costs.  By requesting assistance from Bonistas del Patio and substantially benefitting from such assistance, the Commonwealth knowingly caused Bonistas del Patio to incur the cost of participation in the Mediation and the COFINA Plan process, and Bonistas del Patio and its Professionals participated in that process in justifiable reliance on

---

[13] To the extent that the Court finds that the contract is ambiguous, these communications leave no doubt that Section 15.2 was intended to cover the Expenses.  *See Mendez & Co., Inc. v. Citrus World, Inc.*, No. CIV. 09-2251(JAF), 2011 WL 1362468, at *2 (D. P.R. March 24, 2011).

the expectation that such expenses would be paid.  The Commonwealth thus incurred the expenses

within the meaning of Section 15.2.[14]

## II. The Bonistas Expenses are allowable administrative expenses in the Title III case of the Commonwealth under 11 U.S.C. § 503(b)

23.     The Bonistas Expenses are administrative expenses allowable and payable under

11 U.S.C. § 503(b), made applicable to these Title III cases by 48 U.S.C. § 2161(a).  Section 503(b)

of the Bankruptcy Code sets forth a non-exhaustive list of administrative expenses that the Court

may allow.    Among other things, Section 503(b) allows payment of "the actual, necessary

expenses . . . incurred by . . . a creditor, an indenture trustee, an equity security holder, or a

committee representing creditors or equity security holders other than a committee appointed

under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or

11 of this title" and for "reasonable compensation for professional services rendered by an attorney

or an accountant" in connection with the same.  11 U.S.C. § 503(b)(3), (4).[15]

24.     Because Section 503(b)'s list of expenses is expressly illustrative, not exhaustive,

courts have allowed parties other than those explicitly enumerated in Section 503(b)(3) to seek

allowance of substantial contribution claims.  *See, e.g., In re Mark Anthony Const., Inc.*, 886 F.2d

1101, 1106 (9th Cir. 1989) (awarding taxes and accrued interest on those taxes administrative

expense priority under Section 503(b) despite interest on taxes not being explicitly listed in the

---

[14] For the avoidance of doubt, Bonistas del Patio does not contend that the Oversight Board or AAFAF entered into an express written agreement to pay the Bonistas Expenses other than the COFINA PSA.  Rather, the Commonwealth's representatives knowingly caused Bonistas del Patio to incur expenses at their request with the intention that they be paid under the COFINA Plan, and the plan proponents knew and intended that such expenses be considered "incurred by the Commonwealth or COFINA" within the meaning of Section 15.2.  Otherwise there would be no basis for the representations made to Bonistas del Patio throughout the plan process.

[15] Courts may also allow compensation for fees from other professionals, such as financial advisors.  *See In re ITC Deltacom, Inc.*, No. 02-111848 (MFW), C.A. 03-111 (GMS), 2006 WL 839395 (D. Del. March 29, 2006) (holding that, while Section 503(b)(4) is limited to attorneys and accountants, "nowhere does it purport to limit other expenses").

statute); *Mediofactoring v. McDermott (in re Connolly N. Am. LLC)*, 802 F.3d 810 (6th Cir. 2015)

(allowing a substantial contribution claim for three creditors in a chapter 7 case under

Section 503(b)(3)(D) even though the statute only applies to chapter 9 and chapter 11 cases by its

terms); 4 Collier on Bankruptcy ¶ 503.05[1] (16th 2019) (noting that the administrative expense

claims listed in Section 503(b) are not exhaustive and cases holding otherwise "do not represent

the better view"); *see also In re Healthco Intern., Inc.*, 310 F.3d 9, 12 (1st Cir. 2002)

("Section 503(b) does not . . . provide a complete enumeration of allowable costs and fees.  Those

items listed in Section 503(b) are prefaced by the word "including," which the Bankruptcy Code

explains is not meant to have limiting effect.").  Indeed, the Bankruptcy Code specifies that where,

as here, the Bankruptcy Code lists payable expenses "including" certain examples, the term

"including" is not meant to be limiting.  11 U.S.C. § 102(3).

### A. Bonistas del Patio made a substantial contribution to the Commonwealth's Title III proceedings

25.     Bonistas del Patio and the Professionals undeniably made substantial contributions

to the Title III proceedings, including through contributions to the development, negotiation, and

confirmation of the COFINA Plan, and in particular to the negotiation of the equitable allocation

of value between COFINA and the Commonwealth, between senior and junior COFINA

bondholders and between on- and off-island bondholders.  For that the Bonistas Expenses would

be payable as administrative expenses in the Commonwealth's Title III case.  The hallmark for

whether an entity has made a substantial contribution is whether it has provided a benefit to the

estate and its creditors.  *See, e.g.*, *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988) ("the applicable

test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the

debtor's estate and the creditors"); *In re DP Partners Ltd. Partnership*, 106 F.3d 667, 672 (5th Cir.

1997) (services which foster and enhance the progress of reorganization make a substantial

contribution); *In re Pow Wow River Campground, Inc.*, 296 B.R. 81, 86 (D.N.H. 2003) (a substantial contribution is provided by services that "resulted in a direct, significant and demonstrable benefit to the estate"); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989), *aff'd*, No. 90 CIV. 3823 (MGC), 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991) ("The 'substantial contribution' test is thus satisfied where the services rendered have substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders.").  A substantial contribution claim should also be awarded when an entity provides a benefit to all case parties and undertakes efforts not duplicated by the debtor or by statutory committees. *See, e.g.*, *In re DP Partners Ltd. Partnership*, 106 F.3d at 673; *In re Richton Intern. Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) (awarding compensation for fees incurred when contributing to the process of reorganization as a whole).

26.     Bonistas del Patio made substantial and unique contributions to the negotiation, confirmation, and consummation of the COFINA Plan, and the realization of value by the Commonwealth under the COFINA Plan.  As detailed above, Bonistas del Patio provided the sole voice exclusively for Local Bondholders, whose holdings included billions of dollars of both COFINA (senior and junior) and Commonwealth bonds,[16] and actively participated in Mediation negotiations.  Bonistas del Patio brought a uniquely balanced perspective to the negotiations over allocation of value among all relevant constituencies, and also played a pivotal role in the structuring of key elements of the COFINA Plan to effectuate the consensual economic terms the Bonistas helped to negotiate, including in respect of the taxable bond election.  The Bonistas were

---

[16] *See* Puerto Rico Office of the Commissioner of Financial Institutions, *Broker Dealers – Monthly Puerto Rico Bonds Report* (September 30, 2018), available at https://ocif.pr.gov/Avisos%20Publicos/Broker-Dealers%20Special%20Report-Puerto%20Rico%20Bonds-Septiembre%202018.pdf; Puerto Rico Office of the Commissioner of Financial Institutions, *Mutual Funds – Puerto Rico Bonds Report* (September 30, 2018), available at https://ocif.pr.gov/Avisos%20Publicos/Investment%20Companies%20Special%20Report-Puerto%20Rico%20Bonds-September%202018.pdf.

also active, at the request of the Commonwealth and the Oversight Board, in supporting their efforts to solicit votes in favor of the COFINA Plan, and thus helped lay the foundation for the Commonwealth's Title III plan through confirmation of the COFINA Plan. (¶¶ 10–11 *supra*.) These are precisely the kinds of contributions that support awarding an administrative expense claim. For one, courts routinely award a substantial contribution claim where parties—like Bonistas del Patio here—play a "significant" or "central" role in the successful negotiation of a consensual plan. *E.g.*, *In re Celotex Corp.*, 227 F.3d 1336, 1340 (11th Cir. 2000); *In re Mirant Corp.*, 354 B.R. 113, 138 (Bankr. N.D. Tex. 2006). Case constituencies who provide a concrete benefit to all creditors—as Bonistas del Patio did by, among other things, helping to resolve disputes over the allocation of value among competing case constituents and to garner support for the COFINA Plan and the settlements embodied therein among Local Bondholders whose votes were necessary to approve the COFINA Plan—are routinely allowed substantial contribution claims. *In re R.L. Adkins Corp.*, 505 B.R. 770, 784 (Bakr. N.D. Tex. 2014) ("It is reasonable that [a party's counsel] should be paid *some amount* for," among other things, "soliciting votes . . .") (emphasis in the original). Substantial contribution claims are also allowed where parties "performed services at the request of [parties to the bankruptcy]" or helped reconcile various parties to the plan. *See*, *e.g.*, *In re Worldwide Direct, Inc.*, 334 B.R. 112, 123-24 (Bankr. D. Del. 2005); *In re Ocean Blue Leasehold Prop. LLC*, 414 B.R. 798, 810 (Bankr. S.D. Fla. 2009) ("Drafting a confirmed plan at the request of and with the consent of an estate professional evidences a contribution to the estate, particularly where the plan is confirmed"); *In re Richton Intern. Corp.*, at 855.

27.    Furthermore, Bonistas del Patio's contributions to the successful restructuring of COFINA—an integral prerequisite to the Commonwealth's own plan of adjustment—have been

recognized by a number of case constituencies and the Court.  As noted above, the Oversight Board, AAFAF, and the COFINA Senior Bondholders' Coalition have highlighted the importance of Bonistas' contribution, and the Oversight Board specifically relied on the involvement of Bonistas del Patio in arguing in support of confirmation of the COFINA Plan.  (*See* ¶ 12 *supra*.) Such support weighs heavily in favor of allowing the Bonistas Expenses as an administrative claim in the Title III case.  *See, e.g., In re Celotex Corp.*, 227 F.3d at 1339 (noting that several parties in the bankruptcy had attested to the claimant's efforts in achieving a successful reorganization plan in reversing denial of a Section 503(b) claim); *In re Worldwide Direct, Inc.*, 334 B.R. at 123 (awarding expenses under Section 503(b) in part because the largest unsecured creditor in the case acknowledged indenture trustee substantially contributed with work that benefitted the estate generally); *In re Richton Intern. Corp.*, 15 B.R. at 856 (noting that the debtors and the creditors' committee recommended the requested expenses be allowed in approving a Section 503(b) claim). Because Bonistas del Patio does not hold any bonds of its own, none of these actions were for its own benefit—rather, all were undertaken in service of its mission to advocate for Puerto Rico resident bondholders, and to serve as their *sole* exclusive representative among the negotiating parties.

### B.    The Bonistas Expenses are reasonable

28.    The Bonistas Expenses are reasonable in light of the size of the interests advanced by Bonistas del Patio, the size of the COFINA and Commonwealth cases, the amount of fees and expenses paid to all parties in connection with these cases, and the significantly larger amount of fees that Davis Polk actually incurred or that Ducera would charge for equivalent work in connection with comparable restructurings.  Under Section 503(b)(4) of the Bankruptcy Code, courts weigh the reasonableness of the requested expenses against "the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this

title." 11 U.S.C. § 503(b)(4).  As has been detailed above, the Professionals dedicated [thousands] of hours to working towards consensual and confirmable plans of adjustment.  (*See* ¶ 8 *supra*.) The $7 million in Bonistas Expenses represent a steep discount against the fees that the Professionals would typically charge for these services.  (*See* ¶ 18 *supra*.)  At the request of AAFAF, Davis Polk is willing to submit time records to the Fee Examiner for a review of the reasonableness of the amounts requested by Davis Polk.  Measured against the $7 million in Bonistas Expenses, only a tiny fraction of the approximately $332 million paid to other bondholder constituents under the COFINA Plan, are the $3.4 billion in COFINA bonds estimated to be held by the Local Bondholders for whom the Bonistas del Patio advocated[17] of the total approximately $17.6 billion of bond claims restructured under the COFINA Plans.  (Dkt. No. 4756 at ¶ 44.)  The $7 million in Bonistas Expenses is likewise dwarfed by the approximately $411 million in similar fees paid under the Commonwealth's plan of adjustment.  (Dkt. No. 18734 ¶ 86.)  By any measure, the $7 million of Bonistas Expenses are reasonable and equitable, and should be allowed as an administrative expense due to Bonistas del Patio's substantial and essential contribution to this case.

## CONCLUSION

29.     For the foregoing reasons, Bonistas del Patio respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A for the payment of the Bonistas Expenses by the Commonwealth pursuant to Section 15.2 of the COFINA Plan and as administrative expenses allowable in the Commonwealth's Title III case under 11 U.S.C. § 503(b),

---

[17] As of September 30, 2018, based on the Monthly Puerto Rico Bonds Report published by the Office of the Commissioner of Financial Institutions. See n.16 *supra*.

and that the Court direct prompt payment of the Bonistas Expenses, subject to payment of 20% of

the agreed $2 million of Davis Polk's fees following the fee examiner's review of a fee statement.

Dated: October 11, 2022

Respectfully submitted,

/s/ *José L. Ramírez-Coll*

José L. Ramírez-Coll

USDC-PR Bar No. 221702

ANTONETTI, MONTALVO & RAMÍREZ-COLL

P.O. Box 13128

San Juan, PR 00908

Telephone:  (787) 977-0303

Facsimile:  (787) 977-0323

Email: jramirez@amrclaw.com

/s/ *Donald S. Bernstein*

Donald S. Bernstein (*Pro Hac Vice*)

Benjamin S. Kaminetzky

    (pending admission *Pro Hac Vice*)

Brian M. Resnick (*Pro Hac Vice*)

Marc J. Tobak (*Pro Hac Vice*)

Stephanie Massman

    (pending admission *Pro Hac Vice*)

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue

New York, NY 10017

Telephone:  (212) 450-4000

Email:  donald.bernstein@davispolk.com

    ben.kaminetzky@daivspolk.com

    brian.resnick@davispolk.com

    marc.tobak@davispolk.com

    stephanie.massman@davispolk.com

*Counsel to Bonistas del Patio, Inc.*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

<u>*/s/ José L. Ramírez-Coll*    </u>
José L. Ramirez-Coll