UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK-3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK-3567-LTS |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | **Re: ECF No. 1411** |
| Debtor. | |
| CARLOS E. ITURREGUI MARGARIDA, *et al.*, | |
| Movants, | |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Respondent. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

    A.    HTA's Title III Case ............................................................................................ 2

    B.    The Motion, The Commonwealth Action, and Current Status of the Litigation ................................................................................................................ 3

OBJECTION ..................................................................................................................................... 5

    A.    Movants Fail to Show Cause for Relief under the Sonnax Factors ....................... 5

CONCLUSION ................................................................................................................................ 12

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508 (D.P.R. 2016)..............................................................................6, 7, 9, 10

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin.
    Oversight & Mgmt. Bd.)*,
    899 F.3d 13 (1st Cir. 2018).................................................................................................6

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ..............................9

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997).....................................................................................5

*In re BFW Liquidation, LLC*,
    No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) .......................8

*In re Breitburn Energy Partners LP*,
    571 B.R. 59 (Bankr. S.D.N.Y. 2017)..................................................................................5, 7

*In re City of Stockton*,
    484 B.R. 372 (Bankr. E.D. Cal. 2012)..................................................................................11

*In re Cummings*,
    221 B.R. 814 (Bankr. N.D. Ala. 1998) ...................................................................................7

*In re Motors Liquidation Co.*,
    No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. 2010)..............................................................10

*In re Murrin*,
    477 B.R. 99 (D. Minn. 2012) ...................................................................................................7

*In re Residential Cap., LLC*,
    No. 12-12020 MG, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ........................7, 8, 9

*In re Taub*,
    413 B.R. 55 (Bankr. E.D.N.Y. 2009).......................................................................................7

*In re Unanue-Casal*,
    159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994)..............................................5, 6

*Peaje Invs. LLC v. Garcia-Padilla*,
    No. 16-2365 (FAB), 2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ...........................6

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990)............................................................................................5, 6

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*,
    311 B.R. 551 (Bankr. C.D. Cal. 2004).................................................................................10

**STATUTES**

48 U.S.C. §§ 2101-2241 .......................................................................................................1

Bankruptcy Code § 362(d)(1) ................................................................................................2

## OBJECTION OF THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO MOTION FOR RELIEF FROM STAY

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Highways and Transportation Authority ("HTA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [Case No. 17-03567, ECF No. 1411] (the "Motion") filed by Carlos E. Iturregui Margarida, Pedro J. Iturregui Margarida, Ana I. Iturregui Margarida, José A. Iturregui Margarida, Isabelita A. Iturregui, Ana Isabel Iturregui Álvarez, and Dayren R. Iturregui Álvarez (collectively, "Movants"), plaintiffs in the case captioned *Iturregui-Margarida et al. v. Puerto Rico Highway and Transportation Authority et al.*, Case No. 22-01227 (the "Litigation"), pending before the United States District Court for District of Puerto Rico (the "District Court"). The Debtor respectfully requests that the Court deny the Motion for the reasons set forth below.

### PRELIMINARY STATEMENT

1. Pursuant to the Motion, Movants seek an order modifying the automatic stay pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") to allow the Litigation to proceed in the District Court and to execute any judgment, including any judgment in connection with Movants' asserted "personal damages" claim against HTA in the amount of $500,000.00. *See* Motion at 20; Complaint, Case No. 22-1227, ECF No. 1. Notably, the Litigation is duplicative of an eminent domain action commenced by the Debtor in the Puerto Rico Court of First Instance, San Juan, for which the automatic stay was modified to allow the action to proceed

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

1

to a determination on the issue of fair valuation of the subject real property. In attempting to do so, the Movants would not only be unnecessarily wasting HTA's resources, but also, seeking to enforce an asserted "personal damages" claim against HTA, which asserted claim should be addressed in the Title III claims reconciliation process to the extent timely and properly asserted pursuant to the Bar Date Order. Moreover, granting the requested relief would prejudice other creditors of HTA by permitting Movants to circumvent the treatment provided in the confirmed HTA plan of adjustment.

2. As set forth fully below, the Motion should be denied because Movants fail to demonstrate "cause" for relief pursuant to Bankruptcy Code section 362(d)(1).

## BACKGROUND

### A. *HTA's Title III Case*

3. On May 21, 2017, (the "HTA Petition Date"), the Oversight Board filed a voluntary petition for relief for HTA pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico (the "Title III Court"), commencing a case under Title III thereof (the "HTA Title III Case").

4. On February 15, 2018, the Title III Court entered the *Order (A) Establishing Deadlines And Procedures For Filing Proofs Of Claim And (B) Approving Form And Manner Of Notice Thereof* (the "Bar Date Order") [Case No. 17-03283, ECF No. 2521], establishing May 29, 2018 as the deadline for filing proofs of claim. On May 23, 2018, the Title III Court entered an order [Case No. 17-03283, ECF No. 3131] extending the bar date to June 29, 2018.

5. On May 21, 2018, the Original Owners (as defined below) filed Proof of Claim No. 17256 in the HTA Title III Case, asserting a claim in connection with the Commonwealth Action (as defined below) in the amount of $3,938,407.37.

2

6. On October 12, 2022, the Title III Court entered the *Order and Judgment Confirming Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-3567, ECF No. 1415] (the "HTA Confirmation Order"), confirming the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [ECF No. 1404] (the "HTA Plan").

### B. The Motion, The Commonwealth Action, and Current Status of the Litigation

7. On February 18, 2003, HTA commenced an eminent domain proceeding against, among other parties, Carlos E. Iturregui Margardia, and the estate of Ana E. Margardia Llenza comprised of Nicolas Iturregui Margardia, Jose A. Iturregui Margarida, Pedro J. Iturregui Margardia, Ana I. Iturregui Margardia, and Carlos E. Iturregui Margardia (the "Original Owners"), defendants in the case captioned, *Autoridad de Carreteras y Transportación de Puerto Rico v. Carlos E. Iturregui Margarida, et al.*, Civil Case No. KEF 2003-0095 (the "Commonwealth Action"), in the Puerto Rico Court of First Instance of San Juan (the "Commonwealth Court"), to acquire certain real property in Trujillo Alto, Puerto Rico and consigning $263,925.00 as compensation in connection therewith.[2]

8. Following the commencement of the HTA Title III Case, the Original Owners and HTA entered into a stipulation (the "Stipulation"), dated September 5, 2017, modifying the automatic stay to allow the Commonwealth Action to continue in the Commonwealth Court:

> to the limited extent necessary to permit the State Court Action to proceed in order for the [Commonwealth] Court to make a determination on the issue of fair evaluation, provided, however, that the Title III Stay shall remain in place with respect to the execution and enforcement of any judgment and any provisional remedies.

---

[2] Over the course of the Commonwealth Action, HTA consigned an aggregate amount of approximately $1.1 million.

3

[Case No. 17-03567, ECF No. 259]. The Title III Court so ordered the Stipulation on September 15, 2017. [Case No. 17-03567, ECF No. 283].

9. On October 29, 2021, HTA filed a motion in the Commonwealth Action for the return of $263,925.00 disbursed to Movants as compensation for the acquisition of the subject property because of issues relating to the ownership of the subject property. Specifically, HTA asserts in the motion that, among other things, (i) the apparent holder of title to the subject property, Levitt Home Puerto Rico, Inc.,[3] should be included as a party to the Commonwealth Action, and (ii) to the extent the Movants wished to remain parties to the Commonwealth Action, Movants should be required to provide evidence as to why they qualify as a party in interest.

10. On May 18, 2022, Movants, as the alleged successors in interest to the Original Owners, commenced the Litigation against HTA in the District Court, seeking (i) compensation for the taking of the same real property at issue in the Commonwealth Action, and (ii) "personal damages" in connection with HTA's asserted delays in resolving the Commonwealth Action. *See* Complaint, Case No. 22-1227, ECF No. 1.

11. On June 15, 2022, the District Court entered an order staying the Litigation, noting that the Stipulation does not provide relief from the automatic stay with respect to the Litigation. *See* Litigation, [Case No. 22-01227, ECF No. 5]. Thus, HTA has not been served process in connection with the Litigation, and the time to file dispositive motions had not commenced at the time the Litigation was stayed.

12. On September 24, 2022, Movants filed the Motion in the HTA Title III Case, seeking relief from the automatic stay in its entirety with respect to the Litigation. *See* <u>Motion</u> at 20.

---

[3] HTA asserted that it discovered discrepancies in the titleholder information during a reappraisal of the subject property.

4

**OBJECTION**

### A. *Movants Fail to Show Cause for Relief under the Sonnax Factors*

13. Movants have not established that cause exists for the "extraordinary remedy" of stay relief. *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Movants bear the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

14. In the absence of an assertion of lack of adequate protection, this Court examines the factors set forth in *Sonnax* to determine whether "cause" exists. "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant stay relief, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.,* 907 F.2d at 1286.

15. Courts in the First Circuit have adopted the "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, No. 16-2365 (FAB), 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

16. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 518. The *Sonnax* factors clearly weigh against lifting the automatic stay. Denying the Motion would further the goal of avoiding duplicative litigation that would deplete the Debtor's limited resources. *See In re Residential Cap., LLC*, No. 12-12020 MG, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize

6

time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). The *Sonnax* factors point squarely toward maintaining the stay and against the relief Movants seek:

17. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against lifting the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

18. Here, Movants have not satisfied their high burden of establishing cause. *See In re Breitburn Energy Partners LP*, 571 B.R. at 65. Movants fail to identify any bankruptcy issue related to the HTA Title III Case that would be resolved by allowing Movants to proceed with the Litigation, especially so when this exact issue is already being resolved in an ongoing proceeding in the Commonwealth Court (*i.e.*, the Commonwealth Action). Therefore, the first Sonnax factor supports denying the Motion.

19. ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting the stay. Lifting the stay and allowing the Litigation to proceed to final judgment and execution would be a waste of HTA's resources and would significantly interfere with the administration of the HTA Title III Case. First,

7

the takings claim with respect to the same real property is being litigated in the Commonwealth Action, for which the automatic stay was modified to allow to proceed pursuant to the Stipulation. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) (lifting the stay for all claimants and requiring debtors to defend lawsuits in diverse forums would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims). Second, Movants seek relief from the automatic stay to execute any judgment entered in the Litigation, including Movants' "personal damages" claim in the amount of $500,000.00—which would circumvent the treatment of allowed general unsecured claims provided for in the confirmed HTA Plan. Further, the treatment of Eminent Domain/Inverse Condemnation Claims (as defined in the HTA Plan) pursuant to Section 19.1 of the HTA Plan is subject to the outcome of the Oversight Board's appeal of the Commonwealth Confirmation Order (as defined in the HTA Plan). Allowing Movants to execute on any judgment would circumvent the treatment terms in Section 19.1 of the HTA Plan, and prejudice the Oversight Board's, and HTA's, appeal rights with respect to the determination of non-dischargeability of Eminent Domain/Inverse Condemnation Claims.

20. Thus, Sonnax factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

21. ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. The

8

Litigation was filed before the District Court. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

22. **_Sonnax_ Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of HTA has assumed any financial responsibility in connection with the Litigation. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

23. **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 WL 3860586 at *7.("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

24. Here, the Litigation does not involve *primarily* third parties. Instead, Movants filed suit against HTA and fail to show how any non-debtor parties in the Litigation are the *primary parties* to the action. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause). Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

25. **_Sonnax_ Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The relief sought prejudices other creditors through the depletion of HTA's resources and attention by allowing the same litigation involving the same issues to proceed in two separate forums, and by potentially

9

allowing Movants to avoid the treatment of their asserted claims pursuant to the confirmed HTA Plan. *See, e.g.*, *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate").

26. Indeed, Courts have also denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

27. Here, litigating issues that are already being resolved in the ongoing proceeding in the Commonwealth Court would unnecessarily waste HTA's resources. Indeed, HTA had not even been served process in the Litigation before it was stayed. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

28. **<u>Sonnax</u> Factors 10 and 11**: The interest of judicial economy and the status of the Litigation also weigh against stay relief. The interests of judicial economy are not served by granting stay relief because it would allow Movants to litigate the same issue already proceeding

10

in the Commonwealth Action since 2003, merely because Movants are dissatisfied with the results in the Commonwealth Action. *See, e.g.*, Complaint, Case No. 22-1227, ECF No. 1 at ¶ 25(d) & (e):

> [HTA] submitted a new valuation report, assessing the condemned property in $1,133,400.00, which represents $869,475 over the amount originally assessed and consigned by the Authority, and $2,336,600 less that [sic] the amount determined as fair compensation in 2006, by the original owners' experts. Notwithstanding the above, on August 12, 2021, the court ordered [HTA] to consign the amount of $869,475 in favor of plaintiffs.

Furthermore, the Litigation is still in a preliminary stage and the Litigation was stayed shortly after the complaint was filed. A myriad of proceedings necessary for the Litigation to even be trial ready remain pending, such as finalizing discovery, attending the pretrial hearing, and the preparation and filing of the pretrial report, all of which will require HTA to expend considerable time and expense. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion.

29. **_Sonnax_ Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on HTA if the Motion were to be granted would outweigh any harm that Movants would suffer if the stay remains in place. Movants will not suffer hardship from the stay—indeed, the automatic stay was lifted to allow the Commonwealth Action to proceed to liquidate Movants' asserted taking claim with respect to the same real property at issue in the Litigation. Any asserted hardship relating to the alleged delay in the pace of the Commonwealth Action is not the result of automatic stay.

30. The impact on HTA and its creditors, however, if the Motion were to be granted would outweigh any harm that Movants would suffer if the stay remains in place. The diversion of HTA's resources to defend against Movants' duplicative claims in the Litigation, and the prejudice to the interests of other creditors, including allowing Movants to execute on any

11

judgment and circumvent treatment of any allowed claim pursuant to the HTA Plan, weigh in favor of denying the Motion. Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[4]

## CONCLUSION

Movants fail to establish cause to justify the relief sought in the Motion and accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: October 19, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock
Brian S. Rosen
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

---

[4] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.