## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | PROMESA |
| JUNTA DE SUPERVISION Y ADMINISTRACION FINANCIERA PARA PUERTO RICO AS as representative of The Commonwealth of Puerto Rico<br>Debtor | Case No.: 17 BK 3283-LTS<br><br>Yamielle Marquez Canales/<br>Claim 122090 |



### REPLY TO THE NOTIFICATION OF THE FIFTY TWENTY-EIGHTH GLOBAL OBJECTION OF THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEE'S RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO ADR DEFICIENT CLAIMS

To the Honorable Court:

    **COMES NOW** Attorney César Enrique Molina Aponte, pro se, and very respectfully **SETS FORTH** and **PRAYS**:

1. The contact information of the undersigned attorney and through which you can contact Yamielle Marquez Canales, claim 122090, appears at the end of this motion.

2. We begin by stating that from the beginning, we have delivered the documentation that evidences a reliable claim. Even on September 6, 2022, as ordered, evidence was presented on these claims

3. As a matter of fact, the lawsuit in question was bifurcated and initially it was evaluated whether the plaintiffs were right in their claims and in the second part of the lawsuit, it remains to be determined how much damage the Government of Puerto Rico caused them.

4. So far, the damage hearing has not been held since the case is paralyzed by PROMESA.

5. Thus, this Illustrious Court should not rule out this claim.

6. Attached to this document are the documents that evidence the decision of the Court of First Instance, which was also confirmed by the Court of Appeals; also, the evidence of documents sent on September 6, 2022.

**WHEREFORE** it is respectfully requested from this Honorable Court to grant this motion and dismiss the motion filed by the creditor.

In San Juan, Puerto Rico, on the 20th day of October 2022.

*Certificate of notification to the following address*:

Secretaría (*Clerk's Office*)
Tribunal de Distrito de los Estados Unidos (*United States District Co*
Sala 150 Edificio Federal (*Federal Building*)
San Juan (Puerto Rico) 00918-1767

Abogados de la Junta de Supervisión (*Counsel for the Oversight Boa*
Proskauer Rose LLP
Eleven Times Square
Nueva York, Nueva York 10036-8299
Attn: Martin J. Bienenstock
Brian S. Rosen

Abogados del Comité de Acreedores (*Counsel for the Creditors'
Committee*)
Paul Hastings LLP
200 Park Avenue
Nueva York, Nueva York 10166
Attn: Luc A. Despins
James Bliss
James Worthington
G. Alexander Bongartz

*f/ César Enrique Molina*

*CÉSAR ENRIQUE MOLINA APONTE*
USDC-PR-300906
Attorney for creditor

**PEDRO ORTIZ ÁLVAREZ, LLC**
P.O. Box 9009
Ponce, Puerto Rico 00732
Tel.: (787) 758-9356 / (787) 841-7575
Fax: (787) 758-9243 / (787) 841-0000
E-mail: pedro@poalaw.com

1756·4  APA

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>As representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br>Debtors | PROMESA<br>Title III<br><br>No. 17 BK3283-LTS |
|---|---|

### ANSWER TO ALTERNATIVE DISPUTE RESOLUTION INFORMATION REQUEST

Claim number: 122090
Claimant: Yaminelle Marquez Canales

1. Attached hereto is the complaint filed in the Court of First Instant with all the facts. Also is attached the judgment from the Court of Appeals validating the facts and confirming the Court of First Instant partial judgment.

2. The documents requested are included.

3. In the complaint each plaintiff claimed $100,000.00. However, the Court of First Instant dismissed one cause of action.

4. Because of PROMESA the automatic stay was applied to the case.

5. Yes, the plaintiff's attorney is Alexis G. Rivera Medina from Pedro Ortiz Álvarez, LLC.

**PEDRO ORTIZ ÁLVAREZ, LLC**
P.O. Box 9009
Ponce, PR 00732
Tel.: (787) 758-9356 / (787) 841-7575
Fax: (787) 758-9243 / (787) 841-0000

**s/ Alexis G. Rivera-Medina**
Alexis G. Rivera-Medina
USDC-PR 305414
E-mail: alexis@poalaw.com



**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

SEP 09 2022

PLAZA LAS AMERICAS SAN JUAN PR

7021 0950 0001 8258 1265

---

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Postmark Here

TO:
Aduzilz and Hassal c/o Nikki
Vanden Vran
c/o Nikki Vanden Vran
540 West Hadison Street
18th Floor
Chicago, IL 60661

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7021 0950 0001 8258 1265

---

Complete items 1, 2, and 3.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
Aduzilz and Hassal
c/o Nikki Vanden Vran
540 West Hadison Street
18th Floor
Chicago, IL 60661

9590 9402 7467 2055 1707 50

2. Article Number (Transfer from service label)
7021 2055 0000 0560 1265

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

**905**

| | |
|---|---|
| ARMANDO RODRÍGUEZ RIVAS; EDWIN NIEVES RIVERA; JOSÉ JOEL RODRÍGUEZ FORTY; MARITZA RIVERA HERNÁNDEZ; NORMA I. ALSINA MARTÍNEZ; YAMIELLE MARQUEZ CANALES | CIVIL NÚM.: **KAC. 2011 - 1338** |
| Partes demandantes | |
| v. | SOBRE: |
| ZULMA R. ROSARIO VEGA, en su carácter personal y en su carácter oficial como Directora Ejecutiva de la Oficina de Ética Gubernamental; OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO | SENTENCIA DECLARATORIA Y DAÑOS Y PERJUICIOS |
| Partes demandadas | |

2011 DEC -1 PM 2:16 RECIBIDO CENTRO JUDICIAL DE...

DEMANDA[1]

AL HONORABLE TRIBUNAL:

**COMPARECEN** los demandantes, representados por el abogado que suscribe, y muy respetuosamente, **EXPONEN, ALEGAN Y SOLICITAN:**

### I. JURISDICCIÓN Y COMPETENCIA

1. Este Honorable Tribunal tiene jurisdicción para entender en la presente acción a tenor con el Artículo 5.001 de la Ley de la Judicatura de 2003, según enmendada, 4 LPRA §25(a) y la Regla 59 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 59.

2. La Sala Superior de San Juan constituye la unidad del Tribunal de Primera Instancia con competencia para entender en el presente recurso, a tenor con lo dispuesto por la Regla 3.4 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 3.4, por ubicar allí las oficinas principales de la parte demandada y haber ocurrido los hechos que dan lugar a la demanda dentro de su demarcación.

### II. LAS PARTES

3. El demandante Armando Rodríguez Rivas es mayor de edad, soltero, empleado de la Oficina de Ética Gubernamental y vecino de San Lorenzo, Puerto Rico. Su

---

[1] La parte demandante se reserva para la Corte de los Estados Unidos su reclamación bajo la Constitución y las leyes federales.

dirección postal es HC-70 Box 49128 San Lorenzo, PR 00754; siendo su dirección física Bo. Quemados Sector Salvo Tierras calle Amatista San Lorenzo, PR 00754.

4. El demandante Edwin Nieves Rivera es mayor de edad, casado, empleado de la Oficina de Ética Gubernamental y vecino de Río Grande, Puerto Rico. Su dirección postal es Vista de Río Grande I calle Almedro #321 Río Grande, PR 00745; siendo su dirección física Vista de Río Grande I calle Almedro B-9 Río Grande, PR 00745.

5. El demandante José J. Rodríguez Forty es mayor de edad, soltero, empleado de la Oficina de Ética Gubernamental y vecino de Canóvanas, Puerto Rico. Su dirección postal es P.O. Box 193 Canóvanas, PR 00729; siendo su dirección física carretera 185 kilómetro 10.9 Bo. Los Coles, Canóvanas PR 00729.

6. La demandante Norma I. Alsina Martínez es mayor de edad, casada, empleada de la Oficina de Ética Gubernalmental y vecina de Caguas, Puerto Rico. Su dirección postal es P.O. Box 6622 Caguas, PR 00727-6622; siendo su dirección física Los Prados Serenna A-102 Caguas, PR.

7. La demandante Maritza Rivera Hernández es mayor de edad, casada, empleada de la Oficina de Ética Gubernamental y vecina de Manatí, Puerto Rico. Su dirección física y postal es calle Grimaldi #306 Urb. Jardines de Mónaco III Manatí, PR 00674.

8. La demandante Yaminelle Martínez Canales es mayor de edad, soltera, empleada de la Oficina de Ética Gubernamental y vecina de Trujillo Alto, Puerto Rico. Su dirección física y postal es calle Bernandette #682 Urb. Lourdes Trujillo Alto, PR 00976.

9. La parte co-demandada, Zulma R. Rosario Vega, es mayor de edad y directora ejecutiva de la Oficina de Ética Gubernamental. El director ejecutivo de la OEG es la máxima autoridad dentro de la oficina y tiene los poderes y facultades que le brinda la Ley de Ética Gubernamental.

10. La Oficina de Ética Gubernamental de Puerto Rico (en adelante "OEG") es una instrumentalidad del Estado Libre Asociado de Puerto Rico y una entidad pública con capacidad de demandar y ser demandada creada por la Ley núm. 12 del 24 de julio de 1985, según enmendada 3 LPRA §1802ss.   La Oficina de Ética

2

Gubernamental es una instrumentalidad del Estado Libre Asociado de Puerto Rico.

### III. HECHOS

11. La OEG proveyó a los demandantes de facilidades de estacionamiento en el Edificio Marvel (en adelante "Marvel") por algún tiempo.

12. En una reunión celebrada el 1 de diciembre de 2010, la parte demandada informó a los demandantes que no podían utilizar más el Edificio Marvel para estacionarse ya que no habían podido llegar a un acuerdo con el propietario.

13. Los aquí demandantes hicieron gestiones directamente con el propietario o agentes de Marvel y estos les permitieron estacionarse en el edificio. El acuerdo fue entre los demandantes y el propietario, sin utilizar los recursos o la autoridad de OEG.

14. La Directora Ejecutiva de OEG, aquí demandada, cursó una carta a los demandantes el 3 de diciembre de 2010, para que éstos dejaran de estacionarse en Marvel.

15. Dicha carta constituyó una amonestación a los demandantes, ya que se les notificó que habían desobedecido las órdenes que la Directora Ejecutiva emitió en la reunión del 1 de diciembre. Dicha carta se archivó en el expediente de personal de cada demandante.

16. Los demandantes han cursado cartas a la Directora Ejecutiva, aquí co-demandada, para que elimine de sus expedientes de personal la reprimenda del 3 de diciembre de 2010. Dichos intentos han sido infructuosos, por lo que las actuaciones de la Directora Ejecutiva han persistido.

17. No existe ninguna disposición en ley, ni reglamentación interna, que le otorgue la facultad a la Directora Ejecutiva de controlar el lugar en el que sus empleados se estacionan, de qué manera los empleados llegan a su empleo, y cómo regresan a sus hogares.

18. Esta amonestación constituye una mancha en el expediente de los empleados, que afecta sus evaluaciones, su status y sus posibilidades de ascenso y para obtener otros empleos.

19. La indagación sobre el lugar de estacionamiento viola el derecho de intimidad de los demandantes. Solamente era posible conseguir la información a base de un operativo de vigilancia sobre la llegada y salida de los demandantes.

## IV. CAUSAS DE ACCIÓN

### A. Sentencia Declaratoria

20. La Regla 59.1 de Procedimiento Civil establece lo siguiente:

> "El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario." Reglas Proc. Civil, 2009, 32 LPRA Ap. V, R. 59.1

21. El Tribunal Supremo ha expresado que "[l]a sentencia declaratoria es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente." *Romero Barceló v. E.L.A., 169 DPR 460, 475 (2006).*

22. En *Hernández Pérez v. Halvorsen, 176 DPR 344 (2009)* se estableció que el recurso establecido en la Regla 59 de Procedimiento Civil, *supra,* "permite la dilucidación de los méritos de una controversia, sin lesión previa de los intereses legales implicados, siempre y cuando la parte promovente esté expuesta a un peligro potencial."

23. Además el Tribunal Supremo aclaró que el "mecanismo de sentencia declaratoria tiene el propósito de dilucidar una controversia sustancial entre las partes y disipar la incertidumbre jurídica." *Id.*

24. El recurso de sentencia declaratoria es el mecanismo propio para adjudicar controversias de carácter constitucional y se debe utilizar cuando exista incertidumbre o inseguridad en cuanto a derechos. *Suárez v. C.E.E. I, 163 DPR 347, 354 (2004).*

### B. Derecho a la intimidad y daños y perjuicios

25. El derecho a la intimidad está garantizado por la Constitución del Estado Libre Asociado de Puerto Rico en el Artículo II secciones 1 y 8. El Tribunal Supremo se ha expresado sobre el particular en reiteradas ocasiones y menciona que el

4

derecho a la intimidad es parte del derecho a la personalidad y "goza de la más alta protección bajo nuestra Constitución y constituye un ámbito exento capaz de impedir o limitar la intervención de terceros sean particulares o poderes públicos contra la voluntad del titular." *López Tristani v. Maldonado, 168 DPR 838, 849 (2006).*

26. En *Arroyo v. Rattan Specialties, Inc., 117 DPR 35, 59 (1986)* el Tribunal Supremo establece que "la intromisión en la vida privada sólo ha de tolerarse cuando así lo requieran factores superantes de salud y seguridad públicas o el derecho a la vida y a la felicidad del ser humano afectado."

27. Una violación al derecho a la intimidad puede ser reivindicada mediante una acción por daños. Además impone a toda persona la obligación de no inmiscuirse en la vida privada o familiar de los demás seres humanos. *López supra.* a la página 850.

28. Como resultado de esta situación, los demandantes han sufrido daños emocionales, al igual que angustias mentales.

29. La causa de los daños que sufrieron los demandante fue la acción ultra vires y en violación a la intimidad de los demandantes provocada por la aquí demandada, al haber vigilado sus movimientos personales y tomar represalias contra los demandantes por haber estacionado sus vehiculos en el edificio Marvel.

30. La parte demandada está obligada a la reparación de los daños sufridos como consecuencia de la acción ultra vires y en violación al derecho a la intimidad de OEG y su Directora Ejecutiva que razonablemente se estiman en $100,000.00 por cada demandante.

31. La OEG es una instrumentalidad del Estado Libre Asociado de Puerto Rico, por lo que el Estado Libre Asociado responde por los actos de culpa o negligencia, así como por las violaciones constitucionales e ilegales, que realicen sus funcionarios y oficiales.

**EN MÉRITO DE LO ANTES EXPUESTO,** se solicita a este Honorable Tribunal que declare CON LUGAR la presente petición de sentencia declaratoria, declare que la amonestación del 3 de diciembre de 2010 es nula y conceda los daños y perjuicios solicitados, así como cualquier otro remedio que en derecho proceda.

RESPETUOSAMENTE SOMETIDO.

En San Juan, Puerto Rico, a 1 de diciembre de 2011.

PEDRO E. ORTIZ ALVAREZ, PSC.
Apartado 9009
Ponce, PR 00732-9009
Tel. 841-7575/Fax 841-0000
pedro@poalaw.com

PEDRO E. ORTIZ ALVAREZ
RÚA. Núm: 4,680



6

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

| | |
|---|---|
| ARMANDO RODRÍGUEZ RIVAS; EDWIN NIEVES RIVERA; JOSÉ JOEL RODRÍGUEZ FORTY; MARITZA RIVERA HERNÁNDEZ; NORMA I. ALSINA MARTÍNEZ; YAMINELLE MARQUEZ CANALES<br>Demandantes<br><br>Vs.<br><br>ZULMA R. ROSARIO VEGA; OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>Demandados | CIVIL NÚM.: K AC2011-1338<br><br>SALA: 508<br><br>SOBRE: SENTENCIA DECLARATORIA; DAÑOS Y PERJUICIOS |

## SENTENCIA PARCIAL

Tenemos ante nuestra consideración una *Moción de sentencia sumaria* y una *Oposición a solicitud de que se dicte sentencia sumaria a favor de las partes demandadas* presentada por la parte demandante, el Sr. Armando Rodríguez Rivas, el Sr. Edwin Nieves Rivera, el Sr. José Rodríguez Forty, la Sra. Norma Alsina Martínez, la Sra. Maritza Rivera Hernandez y la Sra. Yaminelle Martínez Canales. Asimismo, corresponde evaluar una *Moción en oposición a moción de sentencia sumaria y en solicitud de que se dicte sentencia sumaria a favor de las partes demandadas* presentada por la Oficina de Ética Gubernamental y la Sra. Zulma R. Rosario Vega.

### RELACIÓN DE HECHOS PROCESALES

El 1 de diciembre de 2011, los demandantes[1] instaron una acción de sentencia declaratoria y daños y perjuicios. La demanda se presentó en contra de la Sra. Zulma Rosario Vega (Sra. Rosario), en su carácter personal y oficial, la Oficina de Ética Gubernamental (OEG) y el Estado Libre Asociado.[2] En específico, los demandantes manifestaron que eran empleados de la OEG y que su patrono les proveyó facilidades de estacionamiento en el Edificio Marvel (Marvel). No obstante, el 1 de diciembre de

---

[1] La parte demandante se compone por: el Sr. Armando Rodríguez Rivas, el Sr. Edwin Nieves Rivera, el Sr. José Rodríguez Forty, la Sra. Norma Alsina Martínez, la Sra. Maritza Rivera Hernández y la Sra. Yaminelle Martínez Canales.

[2] A pesar de que el Estado Libre Asociado no figuró como codemandado en la demanda, el 22 de febrero de 2012 se recibió un *Aviso de desistimiento parcial*. En este, los demandantes informaron que desistieron la causa de acción en contra del ELA. Así pues, el 27 de febrero de 2012 se emitió Sentencia Parcial declarando "Ha lugar" la solicitud que se realizó.

2010, la OEG les notificó que no podían continuar estacionándose en dicho lugar. Ello tras el vencimiento del contrato de subarrendamiento y la imposibilidad de llegar a nuevos acuerdos.

Los demandantes adujeron que debido a esta circunstancia realizaron gestiones, en su carácter personal, con la gerencia de Marvel para continuar estacionando sus vehículos en el mencionado lugar. Además, afirmaron que recibieron autorización de Marvel. Sin embargo, el 3 de diciembre de 2010, la Sra. Rosario les entregó una reprimenda escrita en la cual les imputó haber incurrido en falta de respeto, insubordinación e incumplir con instrucciones de sus supervisores. Dicha amonestación fue archivada en el expediente de personal de cada demandante.

Los demandantes adujeron que no existía disposición legal o reglamento interno el cual le otorgara facultad a la Sra. Rosario para controlar el lugar donde los empleados debían estacionarse. En específico, adujeron que la única forma de obtener dicha información era estableciendo un operativo de vigilancia sobre la llegada y salida de los empleados. Sostuvieron también, que la amonestación afectaba su desarrollo profesional. Además, afirmaron que las actuaciones de la Sra. Rosario eran ultra vires y en violación a su derecho a la intimidad, lo cual le causó daños emocionales y angustias mentales. Por lo antes expuesto, los demandantes solicitaron que este foro declarara que la amonestación del 3 de diciembre de 2010 era nula y concediera una cantidad no menor de $100,000.00 a cada empleado en daños.

El 28 de junio de 2012, la OEG y la Sra. Rosario, -en su carácter oficial- , presentaron la *Contestación a la demanda*. En esta, expresaron que la presente acción se circunscribía a la reprimenda por actos de insubordinación de los demandantes. Como defensas los demandados plantearon: que la demanda no aducía la concesión de un remedio y que la reprimenda se realizó en el curso ordinario de la administración de la OEG. También afirmaron que no vigilaron a sus empleados, ya que el lugar de estacionamiento es contiguo al edificio de la OEG, al aire libre y sin obstrucciones, las cuales impidieran la identificación de los vehículos. Por último, afirmaron que los funcionarios del Estado Libre Asociado gozaban de inmunidad en el ejercicio de sus

141

funciones y que la sobrevaloración de los alegados daños constituía temeridad en contra del Estado.

Por su parte, el 22 de junio de 2012 la Sra. Rosario, en su carácter personal, presentó una *Contestación a Demanda*. Luego, el 17 de julio de 2012 sometió una *Contestación enmendada a demanda*. En esta, sostuvo iguales planteamientos que los demás codemandados. Empero, la Sra. Rosario recalcó que sus actos fueron en el ejercicio de sus funciones como Directora Ejecutiva de la Autoridad Nominadora y no en su carácter personal.

El 27 de enero de 2014 los demandantes presentaron una *Moción de sentencia sumaria*. En síntesis, éstos alegaron que no existía disposición en la Ley Núm. 1-2012, 3 LPRA sec. 1854 *et seq.*, según enmendada (Ley de Ética Gubernamental), ni en reglamentos de la agencia en los cuales se permitiera a la Sra. Rosario regular la forma en que los empleados llegaban a cumplir con su jornada laboral. Para los demandantes, la regulación de cómo llegar a su trabajo fue una intromisión en su vida privada, y por tanto, violó su derecho a la intimidad. Además, entendían que la amonestación creó un ambiente hostil en el lugar de trabajo.

También expresaron que la reprimenda escrita fue arbitraria y caprichosa, ya que la Sra. Rosario no amonestó a todos los empleados que continuaron estacionándose en Marvel posterior al 1 de diciembre de 2010. Además, manifestaron que las actuaciones de la Directora Ejecutiva no fueron en bienestar de la OEG, puesto a que el contrato de subarrendamiento venció el 31 de agosto de 2010. Por tanto, los empleados estuvieron estacionándose más de tres meses sin existir un contrato vigente.

Por otra parte, alegaron que la reprimenda escrita fue una desproporcional a la alegada falta que cometieron los demandantes y la Directora emitió la misma, en violación con el procedimiento dispuesto en las Guías Internas para la administración de los Recursos Humanos de la OEG aprobadas el 1 de julio de 2010. Los demandantes a su vez, afirmaron que la doctrina de inmunidad condicionada no era aplicable a la Sra. Rosario, debido a que ésta abuso del poder conferido con su

puesto. Además, sostuvieron que la defensa de inmunidad condicionada no aplicaba cuando se transgredían garantías constitucionales.

El 26 de febrero de 2014 la OEG y la Sra. Rosario, en su carácter oficial, presentaron una *Moción en oposición a moción de sentencia sumaria y en solicitud de que se dicte sentencia sumaria a favor de las partes demandadas*. En resumen, manifestaron que el Sr. Efraín Sánchez y el Sr. Orlando Álvarez, no ostentaban un puesto en la OEG a la fecha de los hechos, por lo que carecían de autoridad alguna para emitir directrices a los empleados de la OEG o autorizar actos expresamente prohibidos por la Directora Ejecutiva o que tuviesen impacto sobre la responsabilidad de la agencia.

Las codemandadas adujeron que la Sra. Rosario fue enfática en que los empleados no estaban autorizados a utilizar el estacionamiento del edificio Marvel y como alternativa, recomendó solo el uso de transportación compartida o del Tren Urbano. La Sra. Rosario sostuvo que en el Requerimiento de Admisiones el cual contestó, dejó claro que solicitó al Lcdo. Avilés (asesor legal de OEG) que fuera al edificio Marvel e investigara si había alguien con capacidad para autorizar a los empleados. La Sra. Rosario manifestó, según le informó el Lcdo. Avilés, quienes se encontraban presentes eran trabajadores subcontratados por Marvel.

En cuanto a la alegación de violación al derecho a la intimidad, sostuvieron que ciertas instrucciones respecto a un estacionamiento al aire libre, durante horas laborables y en propiedad ajena, no se podía implicar que violaba áreas de la vida íntima y/o familiar de un individuo. Las codemandadas recalcaron que las actuaciones de la OEG y la Sra. Rosario constituían la implementación de consecuencias por desacatar órdenes administrativas. En específico, las demandadas adujeron que las actuaciones de la Sra. Rosario fueron en pleno ejercicio de sus funciones y de las prerrogativas gerenciales que le confería el artículo 2.4(t) Ley de Ética Gubernamental, Ley Núm. 12 de 24 de julio de 1985, 3 LPRA 1814.[3]

---

[3] El artículo 2.4(t) confería al Director Ejecutivo el poder de: "[o]rganizar la oficina y nombrar o contratar el personal que sea necesario para llevar a cabo las funciones y deberes que se establecen en esta ley de acuerdo a los criterios que aseguren la prestación de servicios de la mejor calidad, sin estar sujeto a las leyes de personal".

Las demandadas agregaron que, como patrono tenía la potestad para implantar medidas correctivas cuando sus empleados no acatan instrucciones y que una reprimenda escrita estaba íntimamente relacionada con la función oficial de la Directora Ejecutiva, por lo que sus actuaciones se realizaron en el marco de su capacidad oficial. Por ello, estaba protegida por la doctrina de inmunidad condicionada.

En la alternativa, adujeron que de determinarse que las actuaciones de la Sra. Rosario fueron negligentes, aplicaría la doctrina de inmunidad condicionada del funcionario público. Ello debido a que sus actos fueron en el ejercicio de su capacidad oficial y dentro del marco de sus funciones.

Por último, las codemandadas afirmaron además, que se oponían a toda alegación sobre que la Directora transgredió el proceso establecido para amonestar a un empleado. Según, las codemandadas ello no era parte de las alegaciones en la demanda y el tribunal no era el foro para impugnar las mismas.

Por su parte, el 6 de junio de 2014 los demandantes presentaron una *Oposición a solicitud de que se dicte sentencia sumaria a favor de las partes demandadas*. En resumen, alegaron que conforme a la Regla 602 de Evidencia, 32A LPRA Ap. VI, no era admisible los planteamientos de las demandadas, en cuanto a que empleados pudieron observar con facilidad que varios compañeros de trabajo se habían estacionado en Marvel. Lo anterior debido a que dichos hechos no le constaba de personal conocimiento.

Afirmaron también, que según las demandadas varios hechos en la moción de sentencia sumaria eran impertinentes o se encontraban en controversia. Sin embargo, las demandadas no demostraron porque dichos hechos era impertinente o existía controversia al respecto. Por ello, exhortaron a este foro a que conforme a *Zapata v. J.F. Montalvo Cash & Carry*, 189 DPR 414 (2013), se declararan como incontrovertidos. Además, aseveraron que en la demanda sus alegaciones se circunscribieron a que la reprimenda escrita era contraria a las facultades que poseía la Sra. Rosario, por lo tanto, eran contrarias a derecho. Por último, los demandantes

adujeron que la reprimenda escrita no establecía el proceso para apelar las mismas y tampoco en la moción en oposición lo mencionaron.

## HECHOS INCONTROVERTIDOS[4]

1. La OEG subcontrató, con un contratista del Edificio contiguo (Marvel), el arrendamiento del estacionamiento del 1 de junio hasta el 31 de agosto de 2010.

2. Luego de varios intentos por parte de la OEG para renovar el contrato, no se renovó el mismo.

3. El 1 de diciembre de 2010, la Directora Ejecutiva celebró una reunión con todos los empleados de la EOG para discutir el asunto del estacionamiento.

4. En dicha reunión estuvieron presentes todos los codemandantes con excepción del Sr. José Rodríguez Forty.

5. En la reunión, la OEG informó a los empleados la terminación del contrato de estacionamiento con el edificio Marvel y los múltiples esfuerzos infructuosos para asegurar la continuación del mismo.

6. La OEG ofreció a los empleados la alternativa de utilizar el Tren Urbano, subsidiado enteramente por la OEG y con la transportación en vehículo oficial desde y hacia la estación más cercana a la OEG, o de hacer uso de transportación compartida lo que les permitiría utilizar alguno de los escasos espacios disponibles en los predios de la OEG.

7. El 3 de diciembre de 2010 todos los demandantes y otros empleados estacionaron sus vehículos privados en el edificio Marvel.

8. El 3 de diciembre de 2010, los demandantes y otros empleados recibieron una reprimenda escrita por la Directora Ejecutiva por violación a los incisos 5 y 7 de la Sección 3 de las Guías Internas para la Administración de Recursos Humanos de 1 de julio de 2010.

9. La reprimenda escrita forma parte del expediente de personal de cada demandante. (*Contestación a la demanda*, de 28 de junio de 2012, inciso 9).

10. Yaminelle Márquez Canals ocupa el puesto de Auditora Senior en la OEG.

---

[4] Los hechos 1-8 y 10-25 fueron adoptados de las estipulaciones presentadas por las partes en la *Moción Conjunta en Cumplimiento de Orden* presentada el 1 de octubre de 2014.

11. El 10 de diciembre de 2010 la codemandante Márquez envió una carta a la Directora Ejecutiva para objetar la amonestación, entre otros asuntos.

12. El 13 de diciembre de 2010 la Directora Ejecutiva y la codemandante Márquez se reunieron para discutir la amonestación escrita.

13. La Sra. Norma Alsina Martínez ocupa el puesto de Auditora en la OEG.

14. El 8 de diciembre de 2010 la Sra. Alsina solicitó una reconsideración a la amonestación y ese mismo día se reunió con la Directora Ejecutiva alrededor de las 3:00pm.

15. El Sr. Edwin Nieves Rivera ocupa el puesto de Educador Senior en la OEG.

16. El Sr. Armando Rodríguez Rivas ocupa el puesto de Gerente de Auditoría de informes financieros en la OEG.

17. El 3 de diciembre de 2010 el Sr. Rodríguez recibió por parte de la Directora Ejecutiva una amonestación escrita.

18. El 14 de diciembre de 2010 envió una carta a la Directora Ejecutiva para objetar la amonestación, entre otros asuntos.

19. La Sra. Maritza Rivera Hernandez trabajó en la OEG hasta el 31 de diciembre de 2010. En el momento de cesar de trabajar ocupaba el puesto de Auditora Senior.

20. El 9 de diciembre de 2010 la Sra. Rivera envió una carta a la Directora Ejecutiva para objetar la amonestación.

21. El 9 de diciembre de 2010 la Sra. Rivera y la Sra. Rosario se reunieron para discutir la amonestación.

22. El Sr. José Rodriguez Forty ocupa el puesto de Educador Senior en la OEG.

23. El 10 de diciembre de 2010 el Sr. Rodríguez Forty sometió una carta solicitando reunión con la Directora Ejecutiva y poco tiempo después se reunió con ella para discutir la amonestación.

24. Acerca de los documentos, no hay controversia respecto a las Cartas de amonestación de 3 de diciembre de 2010 entregadas a todos los codemandantes.

25. Luego de las cartas enviadas y las reuniones individuales que sostuvo con varios codemandantes, la Sra. Rosario no revocó la amonestación escrita. (*Moción conjunta en cumplimiento de orden*, de 1 de octubre de 2014, pág. 8).

26. El estacionamiento del Edificio Marvel es uno al aire libre y sin obstrucciones visuales las cuales impidan ver los vehículos estacionados. (*Moción conjunta en cumplimiento de orden*, de 1 de octubre de 2014, pág. 10).

## EXPOSICIÓN DE DERECHO

### A. Sentencia Sumaria

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, dispone lo relativo a la sentencia sumaria. El Tribunal Supremo de Puerto Rico ha señalado que el propósito principal es facilitar la solución justa, rápida y económica de los casos civiles que no presentan controversias genuinas o reales sobre hechos materiales, razón por la cual resultaría innecesaria la celebración de una vista o del juicio en su fondo. *Mejías v. Carrasquillo*, 185 DPR 288, 299 (2012); *Quest Diagnostics v. Mun. San Juan*, 175 DPR 994 (2009). La sentencia sumaria es un mecanismo procesal discrecional extraordinario que solo debe declararse ha lugar la moción cuando de la prueba presentada surja claramente la existencia de un derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, 5ta ed., Lexis Nexis de Puerto Rico, 2010, pág. 277.

Nuestro ordenamiento legal permite que la sentencia sumaria sea dictada respecto a cualquier parte o sobre la totalidad de la reclamación solicitada. Regla 36.1 de Procedimiento Civil, 2009, 32 LPRA Ap. V, R.36.1; *Ramos Pérez v. Univisión*, 178 DPR 200 (2010). Así pues, la Regla 36.1 de Procedimiento Civil, *supra*, le permite al reclamante de una acción hacer la solicitud de sentencia sumaria, mientras que la Regla 36.2 de Procedimiento Civil, Regla 36.2, 2009, 32 LPRA Ap. V, R. 36.2, le permite a la parte contra la que se presentó la acción solicitar el remedio sumario. *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, 184 DPR 133 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. *Mejías v. Carrasquillo, supra*; *PFZ Properties, Inc. v. General Accident Insurance Co.*,

147

supra. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714 (1986).[5] Por ello, la parte que promueve la sentencia sumaria, debe demostrar con claridad que no existe una controversia sustancial sobre los hechos materiales de la controversia y que procede dictar sentencia a su favor. *Zapata v. J.F. Montalvo Cash & Carry*, supra. En fin, la moción sólo debe dictarse en casos claros. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte que la solicita y en consecuencia, a favor de la que se opone a la concesión de la misma. *Córdova Ramos v. Larín Herrera*, 151 DPR 192 (2000). En ese sentido, se considera un hecho material esencial, "aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, supra.

Cabe señalar que, el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que deberá tomar en consideración todos los documentos que obren en el expediente del Tribunal. *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272 (1990). No obstante, un tribunal:

> [...] no dictará sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) hayan alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho no procede. *S.L.G. Szendrey-Ramos v. Consejo de Titulares*, supra.

## B. Sentencia Declaratoria

La Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1, le confiere autoridad al Tribunal de Primera Instancia para, "[d]eclarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio". A esto se le conoce como sentencia declaratoria, y es aquella que se dicta en un proceso "cuando existe una controversia sustancial entre partes con intereses legales adversos, con el

---

[5] En particular, la Regla 36.3 de Procedimiento Civil, supra, dispone que procede dictar sentencia sumaria cuando de:

> las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia [se demuestra] que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

propósito de disipar la incertidumbre jurídica". *Municipio de Fajardo v. Srio. de Justicia*, 187 DPR 245 (2012). La solicitud de sentencia declaratoria tiene como resultado una decisión judicial sobre cualquier divergencia en la interpretación de una ley. *Municipio de Fajardo v. Srio. de Justicia,* supra.

La sentencia declaratoria es un mecanismo procesal de carácter remedial, cuyo objetivo es proveerle al ciudadano la oportunidad de dilucidar ante los tribunales los méritos de cualquier reclamación que en forma latente entrañe un peligro potencial en su contra. *Charana v. Pueblo*, 109 DPR 641 (1980). La Regla 59.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.2, establece que toda persona cuyos derechos fuesen afectados por un estatuto podrá solicitar una decisión sobre cualquier divergencia en la interpretación o validez y que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquéllos se deriven.

Para que se conceda una sentencia declaratoria se debe evaluar: (1) la naturaleza de los daños que puede ocasionarse a las partes; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que el promovente prevalezca en el juicio; (4) la probabilidad de que la causa se torne académica de no concederse el remedio; y (5) el posible impacto sobre el interés público. *Municipio de Fajardo v. Srio. de Justicia,* supra.

Nuestro más Alto Foro indicó en *Sánchez v. Srio. de Justicia*, 157 DPR 360 (2002), que la sentencia declaratoria "es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente". En esa línea, se utiliza en los procedimientos en que los hechos alegados demuestran la existencia de una controversia sustancial y real entre las partes, sin que medie una lesión previa. *Suárez v. CEE*, 163 DPR 347 (2004). A esos efectos, para que un tribunal pueda correctamente dictar una sentencia declaratoria, la controversia que se le presenta no debe ser remota, abstracta o especulativa. *Sánchez v. Srio. de Justicia,* supra.

## C. Derecho a la intimidad

El derecho a la intimidad está consagrado en la Sección 1 del Artículo II de nuestra Constitución, el cual dispone la inviolabilidad de la dignidad del ser humano, y en la Sección 8 del Artículo II donde se establece que: "[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, vida privada o familiar." Art. II, Sec. 1, Const ELA, LPRA, Tomo 1; Art. II, Sec. 8, Const ELA, LPRA, Tomo 1.

El derecho a la intimidad es una garantía de la más alta jerarquía en nuestro ordenamiento jurídico. Sin embargo, no es un derecho absoluto, ni "vence a todo valor en conflicto bajo todo supuesto posible." *López Tristani v. Maldonado*, 168 DPR 838 (2006); *ELA v. PR Tel. Co.,* 114 DPR 398 (1983). Por la importancia del mencionado derecho, opera *ex propio vigore*, sin necesidad de que se configure el elemento de acción estatal para invocar la garantía en contra de personas privadas. El mecanismo para ejercer este derecho, es una acción en daños al amparo del artículo 1802 del Código Civil. 31 LPRA sec. 5128; Colón v. Romero Barceló, 112 DPR 573 (1982).

Así pues, al realizar una alegación de violación a la garantía constitucional, el Tribunal Supremo estableció que: "la cuestión central es si la persona tiene derecho a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete." *ELA v. PR Tel. Co.*, supra; *Katz v. United States,* 389 US 347 (1967). Este análisis se logra evaluando: (1) si el reclamante, dentro de las circunstancias de su caso, posee una expectativa real de que su intimidad se respete (criterio subjetivo) y (2) si la sociedad está dispuesta a reconocer esa expectativa como legítima o razonable (criterio objetivo). *Pueblo v. Santiago Feliciano*, 139 DPR 360 (1995). Por ello, se expresó que el mandato constitucional de que se proteja la intimidad de la persona tiene que examinarse teniendo presente consideraciones de tiempo y lugar. *López Tristani v. Maldonado*, supra; *Pueblo v. Falú Martínez*, supra

Cabe mencionar que, aunque los criterios previamente reseñados se han aplicado como regla general en casos de naturaleza criminal, ello no es óbice para el uso de este análisis en otros contextos sobre el derecho a la intimidad. Por ejemplo, la garantía se ha reconocido en el ámbito de las investigaciones de carácter

administrativo, en el área de las relaciones de familia, y también en el hogar. *Vega y otros v. Telefónico de Puerto Rico*, 156 DPR 584 (2002).

Asimismo, el Tribunal Supremo sostuvo la existencia del derecho a la intimidad en el espacio laboral. Al respecto, la Curia manifestó que:

> Por tratarse de un derecho invocable frente a personas privadas, el patrono está obligado a no infringir la zona de autonomía individual de sus empleados, que protege el derecho a la intimidad. Así pues, en Puerto Rico, un patrono privado viene obligado a respetar el derecho a la intimidad de sus empleados, de la misma manera en que un patrono público tiene que hacerlo. *Vega y otros v. Telefónica de Puerto Rico*, supra.

No obstante, para probar una causa de acción en daños por violación al derecho a la intimidad, el obrero debe presentar prueba de actuaciones concretas del patrono que incidan sobre áreas de su vida íntima. *Sociedad de Gananciales v. Royal Bank of Puerto Rico*, 145 DPR 178 (1998). Dichas acciones deben constituir una conducta que limiten su facultad de tomar decisiones sobre su vida íntima o familiar. Id. El Tribunal Supremo en *Sociedad de Gananciales v. Royal Bank of Puerto Rico*, supra, realizó un recuento de varias instancias en las cuales se ha reconocido la violación al derecho a la intimidad:

> cuando se limita la facultad de un individuo de tomar decisiones, personales, familiares o íntimas, *Pueblo v. Duarte Mendoza*, 109 DPR 596 (1980), *Roe v. Wade*, 410 US 113 (1973); cuando se requiere exponer públicamente la vida íntima de una pareja para poder divorciarse, *Figueroa Ferrer v. ELA*, 107 DPR 250 (1978); o cuando se limita la facultad de decidir utilizar anticonceptivos, *Griswold v. Connecticut* 381 US 479 (1965); *Eisenstadt v. Baird*, 405 US 438 (1972). Asimismo, se lesionan los derechos a la intimidad y a la protección contra ataques abusivos a la honra y reputación personal cuando se violenta la tranquilidad del hogar, *Sucn. de Victoria v. Iglesia Pentecostal*, 102 DPR 20 (1974); *E.L.A. v. Hermandad de Empleados*, 104 DPR 436 (1975); cuando se hostiga a una persona mediante el uso del sistema telefónico, *P.R. Tel. Co. v. Martínez*, 114 DPR 328 (1983); o cuando la constante presencia de una foto en los medios de comunicación representa una indebida intromisión en la vida familiar, *Colón v. Romero Barceló*, supra.

Además, el Alto Foro manifestó que un patrón de traslados y comunicaciones internas en el escenario de trabajo, en circunstancias particulares, podría constituir un clima de hostigamiento y persecución el cual pudiera configurar una acción en daños por violación al derecho a la intimidad. *Sociedad de Gananciales v. Royal Bank of Puerto Rico*, supra. Ahora bien, el reclamante tiene que demostrar que los actos de su

patrono, son ajenos al desempeño normal en el escenario de trabajo y representan ataques nocivos a su dignidad e integridad personal o familiar. Id.

Por ello, es necesario demostrar que las actuaciones del patrono son de tal naturaleza que generan una atmósfera hostil, el cual impida la sana estadía del empleado en el trabajo y que sean originadas por un motivo ajeno al de salvaguardar el efectivo desempeño en el empleo o que contengan expresiones claramente difamatorias o lesivas. *Lebrón Bonilla v. ELA,* 155 DPR 475 (2001); *Sociedad de Gananciales v. Royal Bank of Puerto Rico,* supra. Ahora bien, "un mero sentimiento de incomodidad en el empleo por alguna situación laboral no configura una violación del derecho a la intimidad imputable al patrono". *Sociedad de Gananciales v. Royal Bank of Puerto Rico,* supra.

## D. Guías Internas para la Administración de los Recursos Humanos

Las *Guías Internas para la Administración de los Recursos Humanos* (Guías Internas) es un manual de la Oficina de Ética Gubernamental aprobado el 10 de julio de 2010. En este, se establecieron los procedimientos para imponer medidas disciplinarias a los empleados, en virtud de la facultad conferida al Director Ejecutivo en el artículo 2.4 de la *Ley de Ética Gubernamental de Puerto Rico*, Ley Núm.12 de 24 de julio de 1985, 3 LPRA 1814.

En la Sección 3 inciso A de las Guías Internas se establecen los Tipos de falta los cuales serán motivo de acción correctiva o disciplinara. La conducta que menciona dicha sección consiste en: ausentarse sin la debida autorización, llegar tarde al trabajo sin la debida autorización, no cumplir con la jornada de trabajo establecida, falta de respeto o insubordinación hacia sus supervisores, incurrir en agresión física en el lugar de trabajo o fuera de la agencia mientras se encuentra en funciones oficiales, incumplir con órdenes e instrucciones de supervisores, entre otros. *Guías internas,* pág. 23.

De un funcionario incurrir en cualquiera de las conductas que censura las Guías Internas, la Dirección Ejecutiva podrá amonestarlo verbalmente, emitir una reprimenda escrita, suspenderlo de empleo y/o sueldo, o destituirlo. *Guías internas,* pág. 25. Se específica que de un empleado incurrir en cualquiera de las faltas

enumeradas, el supervisor inmediato o cualquier supervisor de mayor rango podrá amonestarlo verbalmente. Id.

Ahora bien, si fuera necesaria una sanción mayor, el supervisor de mayor rango redactará un informe a la Dirección del Área de Recursos Humanos y Desarrollo Profesional. *Guías internas*, pág. 25. En el informe, se establecerán los hechos relacionados con la falta cometida y una vez sea evaluado, la Dirección del Área de Recursos Humanos y Desarrollo Profesional someterá una recomendación escrita a la Dirección Ejecutiva. *Guías internas*, pág. 25-26. Por último, concluye que nada de lo antes mencionado limitará la facultad de la Dirección Ejecutiva para ordenar una investigación, la cual pueda resultar en medidas disciplinarias. *Guías internas*, pág. 27. Lo anterior, por violaciones a la Ley de Ética Gubernamental, *supra*, sus reglamentos, o haber infringido las normas de productividad, eficiencia, orden y disciplina de la OEG. Id.

### E. La inmunidad condicionada a los empleados públicos

El artículo 2(a) de la Ley de Pleitos contra el Estado, 32 LPRA sec. 3077, dispone que se autoriza demandar al ELA por actos: "causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia". En Puerto Rico, el Tribunal Supremo ha reconocido que la inmunidad condicionada de los funcionarios públicos emerge de la política pública que busca protegerlos de demandas en su contra por el hecho de ejercer razonablemente y de buena fe funciones que contienen elementos de discreción. *De Paz Lisk v. Aponte Roque*, 124 DPR 472 (1989). La inmunidad que puede cobijar a un funcionario público es condicionada y no absoluta. *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256 (1982).

Cabe mencionar, que ésta no se deriva de la inmunidad soberana del Estado, ambas inmunidades son separadas y distintas. *Romero Arroyo v. ELA*, 127 DPR 724 (1991). El efecto práctico de la separación de ambas inmunidades es que, cuando se le concede inmunidad condicionada al funcionario público, el Estado, como regla

general, aún podría ser responsabilizado por los actos del funcionario bajo la Ley de Pleitos contra el Estado, *supra. Romero Arroyo v. ELA*, supra.

## ANÁLISIS DEL DERECHO

En la presente acción los demandantes solicitaron se declarara que la reprimenda escrita emitida el 3 de diciembre de 2010 por la Directora Ejecutiva era nula. Además, requirieron se decretara que los demandados estaban obligados a reparar los daños sufridos, por las actuaciones ultra vires y en violación al derecho a la intimidad.

Al analizar la primera interrogante respecto a si la reprimenda escrita es nula, vemos que le asiste razón a los demandantes. Éstos al presentar la acción adujeron que las actuaciones de la Sra. Rosario fue ultra vires. Además, en la moción de sentencia sumaria detallaron que la Directora Ejecutiva no cumplió con el procedimiento administrativo. No existe controversia en cuanto a que, al la Sra. Rosario conocer que los empleados se estacionaron en el edificio Marvel posterior a la reunión del 1 de diciembre, emitió una carta la cual constituía una reprimenda escrita. También es un hecho incontrovertido que la carta establecía que los demandantes violaron los incisos 5 y 7 de la Sección 3 de las Guías Internas para la Administración de Recursos Humanos de 1 de julio de 2010. El mencionado manual disponía un procedimiento, el cual no fue seguido en este proceso. Es decir, correspondía que la Sra. Rosario enviara un informe a la Dirección del Área de Recursos Humanos y Desarrollo Profesional, luego, dicha unidad emitiría una recomendación a la Directora Ejecutiva. En consecuencia, al no haber realizado el proceso administrativo establecido por la agencia, corresponde decretar que la reprimenda escrita es nula.

En cuanto a la segunda alegación, debemos evaluar si las circunstancias en este caso configuraron una causa de acción en daños, por violación al derecho a la intimidad. Entendemos que ello no ocurrió. Ciertamente, la Directora Ejecutiva no siguió el proceso administrativo establecido en las Guías Internas, no obstante, esto no constituyó, en conjunto a todos los hechos en este caso, un clima de hostigamiento. Además, la prueba presentada no nos permite concluir que las actuaciones de la Sra. Rosario y la OEG, eran actos de persecución. Muy bien

154

aceptaron ambas partes que el estacionamiento del Edificio Marvel es uno al aire libre y sin obstrucciones visuales las cuales impidan ver los vehículos estacionados.

Por otro lado, puede que la entrega de una reprimenda escrita cause malestar en el empleado, no obstante, en el caso de autos, no se probó que la misma creará un ambiente hostil en el lugar de empleo. No obra en el expediente prueba que sustente la existencia de una atmósfera la cual impidiera la sana estadía de los funcionarios en el trabajo. Además, es meritorio recordar que un sentimiento de incomodidad por alguna situación laboral no configura una violación al derecho a la intimidad.

Por último, se debe evaluar si la Sra. Rosario responde en su capacidad personal. Analizados los hechos al amparo del estatuto aplicable, la Sra. Rosario no responde en su capacidad personal. Ello debido a que las acciones que promovieron esta demanda fue en el ejercicio de sus funciones como Directora Ejecutiva de la OEG.

### SENTENCIA PARCIAL

Por los fundamentos antes expuestos se declara parcialmente **Ha Lugar** la *Moción de sentencia sumaria* y se ordena la continuación de los procedimientos para determinar los alegados daños causados por la reprimenda escrita.

Por no existir razón para posponer dictar sentencia parcial y final sobre lo aquí descrito hasta la resolución final de la acción incoada, se ordena que se registre y notifique la presente Sentencia Parcial conforme a la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.3. La presente Sentencia Parcial es final para todos los fines en cuanto a las controversias aquí adjudicadas.

**REGÍSTRESE Y NOTIFÍQUESE.**

En San Juan, Puerto Rico, a 16 de marzo de 2015.

CERTIFICO:
GRISELDA RODRÍGUEZ COLLADO.
Secretaria Regional

Por: _____
Secretaria Auxiliar

CARLOS E. CARRASQUILLO SOTO
JUEZ SUPERIOR

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
REGION JUDICIAL DE SAN JUAN

CASO NUM. KLAN201500572

SOBRE: APELACION CIVIL

RODRIGUEZ RIVAS, ARMANDO

VS

ROSARIO VEGA, ZULMA R
* * * * * * * * * * * * * *

LIC. ALEXIS GABRIEL RIVERA MEDINA
PO BOX 9009

PONCE PR 00732-9009

N O T I F I C A C I O N   D E   S E N T E N C I A

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL
HA DICTADO SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA DE
22 DE DICIEMBRE DE 2015 , QUE HA SIDO DEBIDAMENTE REGISTRADA Y
ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE PODRA USTED ENTERARSE
DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA
SENTENCIA, DE LA CUAL PUEDE ESTABLECERSE RECURSO DE APELACION,
DIRIJO A USTED ESTA NOTIFICACION, HABIENDO ARCHIVADO EN LOS AUTOS
DE ESTE CASO COPIA DE ELLA CON FECHA 20 DE ENERO DE 2016 .

LIC. PEDRO E. ORTIZ ALVAREZ - PO BOX 9009
PONCE PR 00732-9009
LIC. JOSEFINA CRUZ MELENDEZ - PO BOX 360971
SAN JUAN PR 00936-0971
LIC. MYRIAM E MATOS BERMUDEZ - PO BOX 364612
SAN JUAN PR 00936-4612
LIC. MARICELY APONTE RIVERA - DEPARTAMENTO DE JUSTICIA
PO BOX 9020192 SAN JUAN PR 00902-0192
SECRETARIO GENERAL SAN JUAN (SUP) -
PO BOX 190887 SAN JUAN PR 00919

SAN JUAN, PUERTO RICO, A 20 DE ENERO DE 2016 .

DIMARIE ALICEA LOZADA
_____
SECRETARIO

POR: VERONICA ROSADO LORA
_____
SECRETARIA SERV SALA
CONT. CASO NUM. KLAN201500572

-1-

En el año 2010, la OEG subarrendó en calidad de
arrendatario varios espacios de estacionamiento del edificio
contiguo, propiedad de Marvel International. Inc (en adelante,
Marvel), debido a que el predio en donde ubica la OEG no cuenta

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL III

| | | |
|---|---|---|
| ARMANDO RODRÍGUEZ RIVAS Y OTROS<br><br>*Apelados*<br><br>v.<br><br>ZULMA R. ROSARIO VEGA; EN SU CAPACIDAD OFICIAL COMO DIRECTORA EJECUTIVA DE LA OFICINA DE ÉTICA GUBERNAMENTAL; OFICINA DE ÉTICA GUBERNAMENTAL DE PUERTO RICO; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>*Apelantes* | KLAN201500572 | *Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan*<br><br>*Civil núm.:* K AC2011-1338<br><br>*Sobre:* Sentencia declaratoria; Daños y perjuicios |

Panel integrado por su presidente, el Juez Vizcarrondo Irizarry, la Jueza Colom García y el Juez Steidel Figueroa.

Steidel Figueroa, Juez Ponente

SENTENCIA

En San Juan, Puerto Rico, a 22 de diciembre de 2015.

La Oficina de Ética Gubernamental (por sus siglas, OEG) nos solicita que revoquemos una Sentencia Parcial del Tribunal de Primera Instancia, Sala Superior de San Juan [en adelante, TPI]. Mediante dicho dictamen el foro apelado declaró Ha Lugar parcialmente la solicitud de sentencia sumaria presentada por la parte apelada en cuanto a la nulidad de la medida disciplinaria impuesta por la Directora Ejecutiva de la OEG y ordenó la continuación de los procedimientos para determinar si debía conceder la indemnización por los daños alegados en la demanda. Evaluados los argumentos de las partes, CONFIRMAMOS.

-1-

En el año 2010, la OEG subarrendó en calidad de arrendatario varios espacios de estacionamiento del edificio contiguo, propiedad de Marvel International, Inc. [en adelante, Marvel], debido a que el predio en donde ubica la OEG no cuenta

KLAN201500572

con suficientes estacionamientos para los vehículos privados de sus empleados. El 1 de diciembre de 2010, la Lcda. Zulma R. Rosario Vega, Directora Ejecutiva de la OEG [en adelante, Directora Ejecutiva], convocó una reunión para informar a los empleados de la agencia que no logró renovar el contrato de arrendamiento con Marvel, razón por la cual no podían estacionar sus vehículos en el edificio del cual este era propietario.

Luego de hacer gestiones directamente con el propietario y agentes de Marvel, el 3 de diciembre de 2010 los empleados apelados [1] y otros que no forman parte del presente pleito estacionaron sus vehículos privados en el edificio. Ese mismo día, la Directora Ejecutiva cursó una reprimenda escrita a cada uno de los apelados por usar el estacionamiento de Marvel. Imputó a los empleados, aquí apelados, incurrir en una falta de respeto e insubordinación e incumplir las órdenes e instrucciones de sus supervisores.[2]

A consecuencia de lo anterior, la parte apelada presentó una solicitud de sentencia declaratoria y una reclamación por daños y perjuicios ante el TPI en contra de la OEG y su Directora Ejecutiva, tanto en su carácter oficial como personal. La parte apelante, por su parte, negó las alegaciones de la demanda y presentó varias defensas afirmativas.

Luego de varios trámites procesales, entre estos, la presentación de mociones de sentencia sumaria por ambas partes, el TPI ordenó a las partes a que presentaran una moción conjunta para que expresaran sus respectivas posturas para disponer del pleito.

---

[1] Los demandantes apelados son: Armando Rodríguez Rivas, Edwin Nieves Rivera, José J. Rodríguez Forty, Norma I. Alamo Martínez, Maritza Rivera Hernández y Yaminelle Martínez Canales.

[2] La reprimenda escrita se emitió por violación a los incisos 5 y 7 de la Sección III de las Guías Internas para la Administración de Recursos Humanos de la OEG de 1 de julio de 2010.

500572                                                    3

El 16 de marzo de 2015, el TPI emitió la Sentencia Parcial
aquí apelada. Concluyó que la actuación de la Directora Ejecutiva
no cumplió con el procedimiento administrativo dispuesto por la
agencia y, por ende, fue *ultra vires*. Manifestó que:

> correspondía que la [Directora Ejecutiva] enviara un
> informe a la Dirección del Área de Recursos Humanos y
> Desarrollo Profesional, luego, dicha unidad emitiría una
> recomendación a la Directora Ejecutiva. En consecuencia,
> al no haber realizado el proceso administrativo establecido
> por la agencia, corresponde decretar que la reprimenda
> escrita es nula.

El TPI, además, concluyó que no se configuró una violación
al derecho de intimidad de los demandantes, según estos alegaron.
Por último, determinó que conforme el derecho aplicable, la
Directora Ejecutiva no era responsable en su capacidad personal,
ya que las acciones que dieron lugar a la demanda fueron
realizadas en el ejercicio de sus funciones. En su sentencia parcial,
el TPI ordenó la continuación de los procedimientos "para
determinar los alegados daños causados por la reprimenda
escrita"[3].



Inconforme con tal proceder, la OEG acudió a este foro
mediante recurso de apelación en el que alegó que el TPI incurrió
en los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL DETERMINAR QUE LA OFICINA
> DE ÉTICA GUBERNAMENTAL NO HABÍA SEGUIDO EL
> PROCEDIMIENTO INTERNO CONTEMPLADO EN SUS "GUÍAS
> INTERNAS PARA LA ADMINISTRACIÓN DE LOS RECURSOS
> HUMANOS" A PESAR DE QUE CITÓ EXPRESAMENTE LA DISPOSICIÓN
> MISMA QUE DIO AUTORIDAD A LA DIRECTORA EJECUTIVA PARA
> ACTUAR COMO LO HIZO.

> SEGUNDO ERROR: ERRÓ EL TPI AL ORDENAR UNA ACCIÓN EN
> DAÑOS POR PRESUNTA NULIDAD DE UNA REPRIMENDA CUANDO DE
> LOS HECHOS SURGE QUE LOS RECURRIDOS, EN EFECTO, HABÍAN
> INCURRIDO EN INSUBORDINACIÓN CONTRA UNA INSTRUCCIÓN
> EXPRESA NO DE [ ] SUPERVISOR DIRECTO, SINO DE LA PROPIA
> AUTORIDAD NOMINADORA.



El 18 de junio de 2015, dictamos una Resolución en la que
declaramos No Ha Lugar la solicitud de desestimación de la parte
apelada, quien alegó que la omisión de la OEG de no incluir ciertos



---

[ ] Sentencia parcial apelada, a la pág. 5

KLAN201500572

documentos en el apéndice era causa para desestimar el recurso

Con el beneficio de la comparecencia de las partes, resolvemos.

-II-

La Oficina de Ética Gubernamental aprobó las Guías Internas para la Administración de los Recursos Humanos [en adelante, Guías Internas] el 1 de julio de 2010, en virtud de los poderes delegados a la Dirección Ejecutiva[4] de tal agencia de conformidad con el entonces vigente Artículo 2.4 de la Ley de Ética Gubernamental de 1985, Ley Núm. 12 de 24 de julio de 1985, 3 LPRA 1801 et seq. Dicha reglamentación informal provee las directrices internas para uniformar los procesos relacionados a la administración de los recursos humanos de la OEG.

En lo que nos concierne, la Sección III de las Guías Internas establece las normas de conducta de la agencia. El inciso (A) de tal sección dispone que:

[s]erá motivo de acción correctiva o disciplinaria, entre otras, las siguientes faltas

5. falta de respeto o insubordinación hacia sus supervisores

7. incumplir con órdenes e instrucciones de sus supervisores.

Cuando la conducta del empleado constituya una de las faltas enumeradas, la Dirección Ejecutiva podrá tomar una de las siguientes medidas correctivas y disciplinarias: amonestación verbal, reprimenda escrita, suspensión de empleo y sueldo, o destitución.

Sección III, inciso (A) (5) y (7) de las Guías Internas, supra.

Las Guías Internas catalogan la falta número 5 como una falta grave, que puede acarrear como sanción en primera instancia la suspensión de empleo y sueldo o la destitución del empleado. Sección III, inciso (A) de las Guías Internas, supra. En cambio, la conducta dispuesta en la falta número 7 se considera como una menos grave. Id.

---

[4] La "Dirección Ejecutiva" se refiere a la Directora o el Director Ejecutivo de la OEG. Sección IV, inciso (h) de las Guías Internas, supra.

500572                                                                    5

En el inciso (B) de la Sección III de las Guías Internas, *supra*, se establece el procedimiento que rige la imposición de medidas disciplinarias. Dispone que:

> [c]uando cualquier empleado incurra en alguna falta de las enumeradas en la sección 3 o en cualquier otra que se considere perjudicial a los mejores intereses de la Oficina, el supervisor inmediato o cualquier supervisor de mayor rango podrá amonestarlo verbalmente. De ser necesaria una sanción mayor, se procederá de la siguiente manera:
>
> a) El supervisor de mayor rango del empleado preparará y someterá a la Dirección del Área de Recursos y Desarrollo Profesional, un informe que contenga los hechos relacionados con la falta cometida.
>
> b) La Dirección del Área de Recursos Humanos y Desarrollo Profesional evaluará los hechos, según presentados por el supervisor y someterá un informe a la Dirección Ejecutiva con sus recomendaciones.

Por "amonestación verbal" se entiende todo "señalamiento oral efectuado por un supervisor o la Dirección Ejecutiva al empleado que ha cometido una falta". Sección IV, inciso (a) de las Guías Internas, *supra*. Por su parte, la "reprimenda escrita" se refiere a una "medida disciplinaria que formará parte del expediente de personal del empleado". *Id.*, inciso (o).



Las Guías Internas, *supra*, también conceden facultad a la Dirección Ejecutiva de la OEG para investigar y tomar medidas disciplinarias de estimarlo apropiado. Al respecto establece que:



> [n]ada de lo dispuesto anteriormente limita la facultad de la Dirección Ejecutiva para ordenar una investigación, que pueda resultar en la imposición de medidas disciplinarias, de entender que algún empleado ha violado la Ley de Ética Gubernamental y sus Reglamentos o ha infringido las normas de productividad, eficiencia, orden y disciplina vigentes en la Oficina.

Sección III, inciso (B) (e, de las Guías Internas, *supra*.

A la luz de las normas expuestas, evaluamos los señalamientos de error planteados.

-III-

En el primer error señalado, la OEG plantea que el TPI incidió al determinar que la Directora Ejecutiva no siguió el

KLAN201500572

procedimiento dispuesto en las Guías Internas, *supra*, a pesar de que esta tenía facultad para actuar, según lo hizo. En particular, señaló que la medida disciplinaria fue impuesta por la Directora Ejecutiva dentro del marco legal de sus funciones y que la autoridad ejercida por esta no estaba supeditada a recomendación alguna.

Los empleados apelados, por su parte, arguyeron que la Directora Ejecutiva de la OEG estaba obligada a observar las reglas promulgadas por dicha agencia. Con relación a la medida disciplinaria impuesta, manifestaron que fue arbitraria y caprichosa, ya que la Directora Ejecutiva se desvió de los procedimientos dispuestos en las Guías Internas. Examinemos los planteamientos.

La Directora Ejecutiva de la OEG cursó a los empleados apelados una reprimenda escrita por violación a los incisos (5) y (7) de la Sección III de las Guías Internas, *supra*, (falta de respeto e insubordinación e incumplimiento con las órdenes e instrucciones de sus supervisores), debido a que llegaron a un acuerdo, en su carácter personal, con el dueño y los agentes del edificio contiguo para utilizar varios espacios de estacionamiento allí disponibles.

Nos llama la atención de manera significativa el hecho de que la sanción impuesta a los apelados estuvo basada en una gestión privada que ellos realizaron. Sin duda la Directora Ejecutiva de la OEG les comunicó que no podían usar el estacionamiento del edificio propiedad de Marvel, por razón de que el contrato de arrendamiento no pudo renovarse. Sin embargo, nada impedía, y consideramos que la Directora Ejecutiva tampoco podía impedir, que, como una gestión personal o grupal privada, los empleados gestionaran un lugar en donde estacionarse, incluso con los propietarios del edificio con quienes la OEG no

91500572

7

pudo contratar. Al fin y al cabo, los empleados utilizaban vehículos privados que podían estacionar en cualquier lugar apropiado para ello si su patrono no podía proveerles un estacionamiento. Estas consideraciones, sin embargo, no fundamentaron la sentencia apelada. El TPI apoyó su dictamen en lo que consideró desviaciones del proceso regular de imposición de una medida disciplinaria.

Como se dijo, el inciso (B) de la Sección III de las Guías internas, *supra*, establece el procedimiento para imponer una medida disciplinaria. Dispone que de ser necesaria una sanción mayor a una amonestación, "[e]l supervisor de mayor rango del empleado preparará y someterá a la Dirección del Área de Recursos y Desarrollo Profesional, un informe que contenga los hechos relacionados con la falta cometida". Añade que "[l]a Dirección del Área de Recursos Humanos y Desarrollo Profesional evaluará los hechos, según presentados por el supervisor y someterá un informe a la Dirección Ejecutiva con sus recomendaciones". Con este mecanismo el reglamento incorpora al proceso disciplinario a la Dirección del Área de Recursos y Desarrollo Profesional, dependencia que evaluará los hechos alegados por un supervisor y someterá recomendaciones al Director Ejecutivo.

Se aduce que como la sanción cuestionada fue impuesta precisamente por la Directora Ejecutiva, quien conocía de primera mano los hechos implicados, no era necesario cumplir con el proceso descrito. En primer lugar, el reglamento no establece excepción alguna a este proceso. En segundo lugar, aun cuando la Directora Ejecutiva es la autoridad máxima con facultades disciplinarias al interior de la agencia, lo cierto es que la incorporación de la Dirección del Área de Recursos y Desarrollo Profesional al proceso disciplinario y requerir a esta dependencia

KLAN201500572

una evaluación de los hechos y que provea recomendaciones confiere garantías procesales adicionales al proceso, que contribuyen a minimizar el potencial de arbitrariedad en la imposición de una sanción. Lo dicho nos mueve a rechazar la interpretación propuesta por la OEG.

Consecuentemente, la medida disciplinaria impuesta, por ser una sanción mayor, requería que se remitiera un informe con los hechos relacionados a las faltas cometidas a la Dirección del Área de Recursos Humanos y Desarrollo Profesional, para que esta esta última preparara y sometiera un informe con sus recomendaciones.



De los hechos incontrovertidos de la Sentencia Parcial emitida por el TPI y del expediente no surge que la Directora Ejecutiva haya ordenado una investigación antes de la imposición de la reprimenda escrita a los empleados apelados. Tampoco surge que esta haya remitido el asunto a la Dirección del Área de Recursos Humanos y Desarrollo Profesional de la OEG para la preparación de un informe con recomendación sobre las violaciones imputadas a la parte apelante. Así pues, la Directora Ejecutiva de la OEG no cumplió con el procedimiento administrativo dispuesto en las Guías Internas. En consecuencia, las medidas disciplinarias impugnadas son nulas, tal y como lo resolvió el TPI.

En el segundo señalamiento de error, la OEG alegó que el foro de primera instancia erró al ordenar la continuación de los procedimientos en cuanto a la causa de acción por daños y perjuicios. Al respecto, expresó que los empleados apelados habían incurrido en actos de insubordinación contra las instrucciones expresas de la Directora Ejecutiva de la OEG y que no existía un fundamento jurídico que justificara la concesión de tal remedio.

1500572                                                                    9

En la demanda presentada se incluyó una reclamación por alegados daños y perjuicios al amparo del Artículo 1802 del Código Civil de Puerto Rico, *supra*. Los demandantes alegaron que sufrieron daños por "la acción *ultra vires* y en violación al derecho a la intimidad".[5] El TPI se expresó sobre la causa de acción basada en una violación al derecho de intimidad de los empleados al concluir que la prueba no avalaba tal reclamo. Aun cuando en la parte dispositiva de la sentencia no hizo una expresión específica al respecto, sin duda quedaba pendiente la reclamación por los daños generales causados por la conducta *ultra vires*, que concluyó el TPI que se configuró, determinación que este Tribunal ha avalado. Resta, por lo tanto, resolver la reclamación por los daños alegados causados por dicha conducta.

-IV-

Por los fundamentos antes expuestos, se CONFIRMA la Sentencia Parcial apelada.

Lo acordó y manda el Tribunal y lo certifica.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

---

[5] Demanda, en la pág. 6

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| En el caso:<br><br>LA JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y otros*,<br><br>                    Deudores.[2] | PROMESA<br>Título III<br><br>No. 17 BK 3283-LTS<br><br>(Administrados en forma conjunta) |

**SOLICITUD DE INFORMACIÓN DE RESOLUCIÓN ALTERNATIVA DE CONFLICTOS**

Fecha de Servicio: viernes, 12 de agosto de 2022

Reclamante(s) designado(s): **MARQUEZ CANALES, YAMIELLE**

Dirección: **PEDRO ORTIZ ALVAREZ, LLC P.O. BOX 9009
PONCE PR 00732**

Número(s) de reclamo(s) designado(s): **122090**

Cantidad(es) indicada(s) en la(s) prueba(s) de reclamo: **$0.00**

**FECHA LÍMITE DE RESPUESTA: martes, 6 de septiembre de 2022**

---

[2] Los Deudores en estos casos iniciados al amparo del Título III, junto con el número de caso respectivo de cada Deudor y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, según corresponda, son (i) El Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado")(Caso de Quiebras Núm. 17 BK 3283-LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 3481); (ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebras Núm. 17 BK 3284- LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 8474); (iii) la Autoridad de Carreteras y Transportación de Puerto Rico ("HTA") (Caso de Quiebra Núm. 17 BK 3567-LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 3808); (iv) Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ERS") (Caso de Quiebra Núm. 17 BK 3566-LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 9686); (v) Autoridad de Energía Eléctrica de Puerto Rico ("PREPA") (Caso de Quiebra Núm. 17 BK 4780-LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 3747); y (vi) la Autoridad de Edificios Públicos de Puerto Rico ("PBA", y junto con el Estado Libre Asociado, COFINA, HTA, ERS, y PREPA, los "Deudores") (Caso de Quiebras Núm. 19 BK 5532-LTS) (últimos cuatro dígitos del número de identificación contributiva federal: 3801) (los casos al amparo del Título III figuran como números de Caso de Quiebra debido a limitaciones de programación).

> **Esta solicitud de información <u>sólo</u> se aplica a los números de reclamaciones designadas mencionados anteriormente. Lea el aviso detenidamente y discútalo con su abogado. Si no tiene un abogado, puede consultar con uno.**
>
> **Si tiene alguna pregunta, comuníquese con <u>Prime Clerk LLC al (844) 822-9231 (llamada gratis para EE. UU. y Puerto Rico) o (646) 486-7944 (para llamadas internacionales)</u>, disponible de 10:00 a.m. a 7:00 p.m. (Hora estándar del Atlántico) (español disponible).**

**¿Por qué estoy recibiendo esta Solicitud de Información?** Usted ha presentado su(s) reclamo(s) como se menciona arriba (el/los "<u>Reclamo(s) Designado(s)</u>") en el caso del Título III del Estado Libre Asociado de Puerto Rico.  El Estado Libre Asociado de Puerto Rico (el "<u>Deudor</u>") sometió el Reclamo Designado en el caso del Título III a resolución alternativa de conflictos en el *Vigésimo Cuarto Aviso de Transferencia de Reclamos a Resolución Alternativa de Conflictos* el 1 de agosto de 2022 [ECF Núm. 21685], de conformidad con los procedimientos (los "<u>Procedimientos de RAC</u>") establecidos por la ***Orden para (A) Autorizar Procedimientos Alternativos de Resolución de Conflictos, (B) Aprobar Forma Adicional de Aviso, y (C) Otorgar Remedio Relacionado***, emitida por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (el "<u>Tribunal del Título III</u>") el día 1 de abril de 2020 [ECF No. 12576-1]. **Por favor, revise los Procedimientos de RAC cuidadosamente. Los Procedimientos de RAC están disponibles en línea en https://cases.primeclerk.com/puertorico.**

Se incluye una **Solicitud de Información** más adelante. De conformidad con los Procedimientos de RAC, el Deudor solicita documentación e información adicionales relacionadas con el Reclamo Designado. Usted debe responder a la Solicitud de Información proporcionando la documentación y la información solicitadas a más tardar en la fecha identificada como Fecha Límite de Respuesta. *Vea* la Sección 2(f) de los Procedimientos de RAC.

**Debe responder a esta Solicitud de** Información. Debe devolver esta Solicitud de Información a Proskauer Rose LLP conjuntamente con **la documentación y la información solicitadas a más tardar en la Fecha Límite de Respuesta mencionada más arriba.**

**Solicitud de Información.** El Deudor le solicita que proporcione la siguiente información relacionada con la Reclamación Designada núm. **122090**   : cualquier documento en respuesta a las solicitudes de documentos, respuestas por escrito a las solicitudes de información y cualquier documento que tenga y que respalde sus respuestas por escrito a las solicitudes de información.

La información sobre las Solicitudes de Información está disponible en la sección 2(f) de los Procedimientos de resolución alternativa de litigios.

---

**Adjunte a este formulario sus respuestas por escrito a las solicitudes de información y la documentación solicitada.**

DEBE RESPONDER A LA SOLICITUD DE INFORMACIÓN Y A CUALQUIER OTRA PREGUNTA APLICABLE EN EL RESTO DEL FORMULARIO

### SOLICITUDES DE INFORMACIÓN Y DOCUMENTOS

1. Por favor proporcione información sobre la base del caso. ¿Qué hechos cree que dieron lugar al caso?

2. Por favor proporcione toda documentación que tenga relacionado con el caso.

3. ¿Cuál es la cantidad que reclamas? Por favor proporcione la base de la cantidad estimada adeuda por sus reclamaciones adicionales.

4. Cuál es el estado actual del caso?

5. ¿Estás representado en cualquiera del caso? Si es así, quien está tu abogado o abogada?

---

*Proporcione todos los documentos que respaldan sus respuestas a estas solicitudes de información en relación con su Reclamo Designado. Usted **DEBE** enviar la totalidad de dicha información y documentación a Proskauer Rose.*

**DEVUELVA SU AVISO COMPLETADO Y CUALQUIER INFORMACIÓN SUPLEMENTARIA EN UNA CONTRAOFERTA PARA EL MARTES, 6 DE SEPTIEMBRE DE 2022 A LA SIGUIENTE DIRECCIÓN:**

**Alvarez and Marsal**
C/O Nikki Vander Veen
540 West Madison Street, 18th Floor
Chicago, IL 60661

[Firma del Representate Autorizado
del Reclamante Designado]

Por:_____
        [Nombre en letra de molde]


[Firma del Representate Autorizado
del Reclamante Designado]

Por:_____
        [Nombre en letra de molde]

***STAT PR 1845 SRF 63380 PackID: 63 ADRID: 4015024 Claim No. 122090 SVC: CW Info
MARQUEZ CANALES, YAMIELLE
PEDRO ORTIZ ALVAREZ, LLC
P.O. BOX 9009
PONCE PR 00732





FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 00918
02 7H
0006055688

$ 010.61⁰

OCT 20 2022

7019 1120 0001 2973 9321

**PEDRO ORTIZ ÁLVAREZ  LLC**
ATTORNEYS AND COUNSELORS AT LAW
P. O. BOX 9009
Ponce, Puerto Rico  00732-9009

TO:

**Secretaria (Clerk's Office)**
Tribunal de Distrito de los E.U.
Sala 150 Edificio Federal
San Juan, PR  00918-1767