# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 22384** |
| JOSE MIGUEL MALVET SANTIAGO,<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Respondent. | |

### OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO JOSE MIGUEL MALVET SANTIAGO'S MOTION FOR RELIEF FROM STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Last Four Digits of Federal Tax ID: 3801) (Last Four Digits of Federal Tax ID: 3801) (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND ............................................................................................................................ 2
    A.    The Commonwealth's Title III Case ...................................................................... 2
    B.    The Motion and Current Status of the Litigation ................................................... 3
OBJECTION ................................................................................................................................... 5
    A.    Movant Fails to Show Cause for Relief under the Sonnax Factors ........................ 5
CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508 (D.P.R. 2016)..................................................................................7, 9, 10

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
   369 B.R. 87 (D.P.R. 2007).............................................................................................................7

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*,
   899 F.3d 13 (1st Cir. 2018)...........................................................................................................7

*Goya Foods v. Unanue-Casal (In re Unanue-Casal)*,
   159 B.R. 90 (D.P.R. 1993),
   *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Unanue-Casal)*, 23 F.3d 395 (1st Cir. 1994) ....................................................................................6, 7

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
   2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ............................................................10

*In re 234-6 West 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997)..........................................................................................5

*In re BFW Liquidation, LLC*,
   2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) .................................................................9

*In re Breitburn Energy Partners LP*,
   2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)...................................................................8

*In re Breitburn Energy Partners LP*,
   571 B.R. 59 (Bankr. S.D.N.Y. 2017)............................................................................................5

*In re City of Stockton*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012).......................................................................................11

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) ........................................................................................8

*In re Fucilo*,
   2002 WL 1008935 (Bankr. S.D.N.Y. Jan. 24, 2002)...................................................................1

*In re Motors Liquidation Co.*,
   2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010).............................................................................11

*In re Murrin*,
477 B.R. 99 (D. Minn. 2012) ........ 8

*In re Residential Capital, LLC*,
2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ........ 8, 10

*In re SquareTwo Fin. Servs. Corp.*,
2017 WL 4012818 (Bankr. S.D.N.Y. Sept. 11, 2017) ........ 1

*In re Taub*,
413 B.R. 55 (Bankr. E.D.N.Y. 2009) ........ 8

*In re WorldCom, Inc.*,
2007 WL 841948 (Bankr. S.D.N.Y. Mar. 12, 2007) ........ 1

*José Miguel Malvet v. Administración de Corrección*,
Case No. 2007-07-0025 ........ 1

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016),
*aff'd*, 845 F.3d 505 (1st Cir. 2017) ........ 7

*Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*),
980 F.2d 110 (2d Cir. 1992) ........ 9

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990) ........ 6, 7

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*,
311 B.R. 551 (Bankr. C.D. Cal. 2004) ........ 10

**STATUTES**

11 U.S.C. § 362 ........ 1, 2, 4

11 U.S.C. § 922 ........ 4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 22384] (the "Motion"), filed by José Miguel Malvet Santiago (the "Movant"), plaintiff in the case captioned *Miguel Malvet v. Administración de Corrección*, Case No. 2007-07-0025 (the "Litigation"), pending before the Commission for Appeals of Public Service ("CASP"). In support of this Objection, the Debtor respectfully states as follows:[2]

## PRELIMINARY STATEMENT

1. Pursuant to the Motion, Movant seeks an order modifying the automatic stay[3] pursuant to section 362 of title 11 of the United States Code (the "Bankruptcy Code") to allow the Litigation to proceed to final judgment and execution of any monetary relief. Motion ¶ 2. Pursuant to the Litigation, Movant seeks monetary relief, including loss of wages, against the Department of Corrections and Rehabilitation of Puerto Rico, arising from the asserted wrongful termination

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[2] The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] Pursuant to section 362(c)(2)(C) of the Bankruptcy Code, Section 92.25 of the Commonwealth Plan, and decretal paragraph 66 of the Confirmation Order, the automatic stay was replaced by the discharge injunction upon the occurrence of the effective date of the Commonwealth Plan. *See Memorandum Order Concerning Inquiry Motion of Juan Manuel Cruzado-Laureano* at 9-15 [ECF No. 22349].

To the extent the Court interprets the Motion to seek relief from the discharge injunction, some courts have considered such relief under the *Sonnax* factors discussed below. *See In re SquareTwo Fin. Servs. Corp.*, 2017 WL 4012818, at *4 (Bankr. S.D.N.Y. Sept. 11, 2017); *In re Fucilo*, 2002 WL 1008935, at *8 (Bankr. S.D.N.Y. Jan. 24, 2002); *In re WorldCom, Inc.*, 2007 WL 841948, at *5 (Bankr. S.D.N.Y. Mar. 12, 2007).

of Movant from his employment with the Department of Corrections and Rehabilitation of Puerto Rico that occurred prior to the commencement of the Commonwealth's Title III case.

2. The Motion's minimal justification, composed of bare assertions, falls well below Movant's burden of proof. As such, the Motion should be denied because Movant has failed to demonstrate "cause" for relief pursuant to Bankruptcy Code section 362(d)(1). Like other prepetition claims that do not justify stay relief, Movant's claim is properly addressed through the Debtors' claims reconciliation process.

## BACKGROUND

### A. *The Commonwealth's Title III Case*

3. On May 3, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico (the "Title III Court"), commencing a case under Title III thereof.

4. On August 17, 2017, the Court entered an order amending the existing notice, case management, and administrative procedures for these Title III cases to, among other things, implement a protocol (the "Lift Stay Protocol") for filing motions for relief from Title III Stay [ECF No. 1065]. In accordance with the Lift Stay Protocol, a movant is required to (a) send notice to counsel to the Oversight Board and AAFAF to advise them of the movant's intent to seek relief from the Title III Stay at least fifteen (15) business days prior to filing a motion seeking such relief (the "Lift Stay Notice Period") and (b) meet and confer with the Debtors during the Lift Stay Notice Period.

5. On February 15, 2018, the Court entered the *Order (A) Establishing Deadlines And Procedures For Filing Proofs Of Claim And (B) Approving Form And Manner Of Notice Thereof* [ECF No. 2521] (the "Bar Date Order"), establishing May 29, 2018 as the deadline for filing proofs

2

of claim. On May 23, 2018, the Court entered an order [ECF No. 3131] extending the bar date to June 29, 2018.

6. On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order"), confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19784] (the "Commonwealth Plan").

7. On March 15, 2022, the Plan became effective (the "Effective Date"). Pursuant to the Confirmation Order and the Commonwealth Plan, unless otherwise extended, the Debtor has until September 11, 2022 to assess and object to the allowance of claims, which the deadline was extended to March 8, 2023 pursuant to the *Order Granting Debtors' Motion for an Order Extending the Deadline to File Objections to Proofs of Claim* [ECF No. 21894].[4]

### B. The Motion and Current Status of the Litigation

8. On September 10, 2007, Movant commenced the Litigation against the Department of Corrections and Rehabilitation of Puerto Rico, seeking damages for an asserted wrongful termination and loss of wages in connection with his dismissal from employment as an agent for the Department of Corrections and Rehabilitation of Puerto Rico on June 18, 2007.

9. On May 24, 2018, Movant filed Proof of Claim No. 33559 in the Commonwealth Title III Case asserting a claim in connection with the Litigation.

---

[4] *Commonwealth Plan* § 82.1(a); *Confirmation Order* ¶ 42.

3

10. On July 25, 2018, Movant sent to counsel for the Oversight Board and AAFAF a notice pursuant to Lift Stay Protocol seeking relief from the automatic stay[5] to proceed with the Litigation pending before CASP.

11. Pursuant to the Lift Stay Protocol, the Commonwealth and Movant met and conferred and reached an agreement in principle to modify the Title III stay solely to allow the Litigation to proceed to final judgment and/or resolution before CASP. On or around December 19, 2018, the Commonwealth circulated to Movant a draft of a stipulation (the "Draft Stipulation") memorializing the terms and conditions of such agreement in principle for Movant's review and comment, which was subject to further review and revision, and final signoff, by the Commonwealth and the Oversight Board, as the Commonwealth's representative in its Title III case.[6]

12. ***After approximately five months***, on May 17, 2019, Movant's counsel sent an undated, executed copy of the Draft Stipulation to the Commonwealth, which was never executed by the Commonwealth.

13. ***Two years later***, on May 17, 2021, Movant communicated with the Commonwealth to inquire about the status of the Draft Stipulation.

14. On October 28, 2021, Movant filed the *Motion to Compel Compliance with Proposed Stipulation* [ECF No. 18880], alleging that "[a]s of the date of this motion, the Commonwealth has failed to act upon the terms of its own proposed agreement and Movant's case before the administrative forum continues to be stayed." *Id.* ¶ 8.

---

[5] The automatic stay provisions of Bankruptcy Code sections 362(a) and 922(a) are made applicable to the Title III Case by PROMESA Section 301(a) (the "Title III Stay").

[6] The Lift Stay Protocol also requires the Debtor file an omnibus motion every sixty (60) days, seeking approval of any modifications to the Title III Stay.

15. On November 12, 2021, the Oversight Board filed the *Objection of the Commonwealth of Puerto Rico to Motion to Compel Compliance with Proposed Stipulation* [ECF No. 19174], pointing out that, although counsel for the Commonwealth had circulated the Draft Stipulation memorializing an agreement in principle "solely to allow the Prepetition Action to proceed to final judgment and/or resolution before CASP", that Draft Stipulation was "subject to further review and revision, and final signoff."

16. On May 9, 2022, the Court entered the *Order Denying Motion to Compel Compliance with Proposed Stipulation* [ECF No. 20714] because the Court found the parties had not reached an executed agreement to lift the stay and the agreement was otherwise not enforceable.

17. On September 24, 2022, Movant filed the Motion in the Commonwealth Title III case, seeking an order relieving him from the automatic stay so he can continue the Litigation before CASP, alleging that "the purpose of Movant's request is to reach a judgment that will validate his claim in the instant case," and "[m]ovant's case was nearing judgment when it was stayed and it needs continuance in the appropriate administrative forum." [ECF No. 22383] Motion ¶ 8.

## OBJECTION

### A. Movant Fails to Show Cause for Relief under the Sonnax Factors

18. Movant has not established that cause exists for the "extraordinary remedy" of stay relief. *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Movant bears the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017). Here, Movant bears the extraordinary burden of establishing cause exists to lift the stay, yet in the Motion, Movant merely offers a three-

5

sentence conclusory justification. *See* Motion at 2-3. Movant falls well short of his high burden of establishing cause.

19. In the absence of an assertion of lack of adequate protection, this Court examines the factors set forth in *Sonnax* to determine whether "cause" exists. "Cause" is not defined in the Bankruptcy Code. *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Unanue-Casal)*, 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant stay relief, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of harms."

*In re Sonnax Indus.,* 907 F.2d at 1286.

6

20. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, 907 F.2d at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-95 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir. 2017); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

21. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 518. The Sonnax factors clearly weigh against lifting the automatic stay. Denying the Motion would further the goal of the Commonwealth to resolve all claims in a single, expeditious forum in the timeframe provided by this Court. The *Sonnax* factors point squarely toward maintaining the stay and against the relief Movant seeks:

22. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against lifting the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Rather, the first *Sonnax* factor primarily focuses on whether the separate

7

litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g.*, *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012) (citation omitted); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

23. Here, Movant has not established his high burden of establishing cause. *See In re Breitburn Energy Partners LP*, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Movant fails to identify any bankruptcy issue related to the Commonwealth's Title III case that would be resolved by allowing Movant to proceed with the Litigation for the alleged wrongful termination. Therefore, the first Sonnax factor supports denying the Motion.

24. **<u>Sonnax Factor 2</u>**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting the stay. Lifting the stay and allowing Movant's claim to proceed to final judgment would be a waste of the Commonwealth's resources, would significantly interfere with the administration of the Title III case and circumvent the requirements in the Confirmation Order. Pursuant to the Confirmation Order and the Commonwealth Plan, unless otherwise extended, the Debtor had until September 11, 2022 to assess and object to the allowance of claims, which deadline was extended to March 8, 2023. Allowing Movant's claim to proceed to final judgment would force the Commonwealth to rush its assessment of Movant's claim well in advance of the March 8, 2023 Court ordered deadline. *See, e.g.*, *In re Residential Capital, LLC*, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would

8

hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, Sonnax factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

25. Moreover, Movant provides no reason for expediting consideration of its claim now rather than through the claims reconciliation process. Indeed, Movant waited *over four years* after his initial stay relief request before seeking relief before this Court. Such relief would upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

26. **_Sonnax_ Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. The Litigation was filed before CASP. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

27. **_Sonnax_ Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with the Litigation. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

9

28. ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 WL 3860586, at *7 ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties.").

29. Here, the Litigation does not involve *primarily* third parties. Instead, Movant filed suit against the Department of Corrections and Rehabilitation of Puerto Rico, an agency of the Commonwealth, and fails to show how any non-debtor parties in the Litigation are the *primary parties* to the action. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause). Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

30. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The relief sought prejudices other creditors through the depletion of the Commonwealth's resources and attention, and by potentially allowing Movant to "skip the line" in the claims reconciliation process. *See, e.g.*, *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate").

10

31. Indeed, Courts have also denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g.*, *In re Plumberex Specialty Prod., Inc.*, 311 B.R. at 563-64 (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

32. Here, litigating issues that could and should be resolved through claims reconciliation would unnecessarily waste the Commonwealth's resources. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

33. **_Sonnax_ Factors 10 and 11**: The interest of judicial economy and the status of the Litigation also weigh against stay relief. The interests of judicial economy are not served by stay relief. As discussed above, the Litigation is in a very preliminary stage. Alternatively, the Commonwealth's Title III case provides a single, expeditious forum for the resolution of claims. Accordingly, Movant's asserted claim should be accomplished through the claims resolution process in these Title III cases to preserve judicial economy. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion.

34. **_Sonnax_ Factor 12**: Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the stay remains in place. Movant will not suffer hardship from the stay.

11

Movant fails to articulate how Movant would face any harm from waiting in line for the resolution of its alleged claim like all other claimants.

35. The impact on the Commonwealth and its creditors, however, if the Motion were to be granted would outweigh any harm that Movant would suffer if the stay remains in place. The diversion of the Commonwealth's resources to defend against Movant's claims in the Litigation, and the prejudice to the interests of other creditors, including rushing the Commonwealth to make an assessment of the Movant's claim in contravention of the extension allowing the Commonwealth additional time to assess and object to claims, all weigh in favor of denying the Motion. Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[7]

## CONCLUSION

Movant fails to establish cause to justify the relief sought in the Motion and accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: October 28, 2022
      San Juan, Puerto Rico

    Respectfully submitted,

    */s/ Brian S. Rosen*

    Martin J. Bienenstock
    Brian S. Rosen
    (Admitted *Pro Hac Vice*)
    **PROSKAUER ROSE LLP**
    Eleven Times Square
    New York, NY 10036
    Tel: (212) 969-3000
    Fax: (212) 969-2900

    *Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

---

[7] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

/s/ *Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative of the Debtor*

13