Vicar Builders v. E.L.A., 192 D.P.R. 256 (2015)
2014 TSPR 13

KeyCite Yellow Flag - Negative Treatment
Distinguished by Quinones Diez Silva Asociados CSP v. Department of Health, TCA, November 30, 2016
192 D.P.R. 256, 2015 WL 793030 (P.R.), 2015 TSPR 13

VICAR BUILDERS DEVELOPMENT, INC.,
petitioner,
v.
COMMONWEALTH OF PUERTO RICO,
DEPARTMENT OF JUSTICE and
DEPARTMENT OF THE TREASURY, appellees

At the Supreme Court of Puerto Rio.
Number: CC-2013-0776
Resolved: February 11, 2015
Feb. 11, 2015

I. LEASE–-CONTRACT-–REQUIREMENTS AND VALIDITY–TERM OF THE LEASE.
When a lease agreement is entered into for a specific period of time, it concludes on the date pre-established without it being necessary to require this. This type of contract can be extended, in which case there subsists the same contract, or one of renewal now based on a new lease agreement executed expressly or tacitly.

2. ID.-–TERMS–-EXTENSIONS, RENEWALS AND OPTION TO PURCHASE-–TACIT RENEWAL.
Art. 1456 of the Civil Code, 31 LPRA Sec. 4063, provides that when a lease agreement ends and the lessee remains enjoying the thing leased for fifteen days with the acquiescence of the lessor, there is a tacit renewal.

3. ID.-–ID.-–ID.-–ID.
The tacit renewal does not presume an extension of the original lease agreement, but constitutes a new contract. This is so because, pursuant to the express provision of the law, the lease ceases when its term expires, thus extinguishing the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

original contract. Nevertheless when there concur the requirements of the tacit renewal that contract is renewed. It involves an alleged renewal that arises by the presumed will of the parties provided the passivity of the same reveals their new contractual will. There arises from the tacit agreement a new contract, the term of which is not the same as the one stipulated in the primitive contract, but the one that is provided by Arts. 1467 and 1471 of the Civil Code, 31 LPRA Secs. 4083 and 4092.

4. ID.-—ID.-—ID.–ID.

For the tacit renewal to operate, none of the parties must have stated their intention to deem the lease agreement terminated. The spirit of renewal of the lessee must be clear, which is demonstrated when he remains enjoying what is leased after the contract expires. Similarly, it is understood that the lessor tacitly consented to the renewal if he makes no requirement or manifestation whatsoever that the lessee cease to enjoy the thing.

5. PUERTO RICO-—COMMONWEALTH OF PUERTO RICO–-FISCAL ADMINISTRATION, PUBLIC DEBT AND GUARANTEES–-IN GENERAL.
Art. VI, Sec. 9 of the Constitution of the Commonwealth of Puerto Rico, LPRA, Volume I, provides that properties and public funds will only be disposed of for public purposes for the sustenance and operation of the institutions of the State and, in any case, by legal authority. **\*257.**

6. ID.–-ID.–-ID.–-ID.
Art. 2 of the Accounting Act of the Government of Puerto Rico, 3 LPRA Sec. 283a, establishes as a public policy to maintain a prior control of all of the operations of the government, that the accounting of the Government of Puerto Rico constitutes an effective control over the income, disbursements, funds, property and other assets of the government, and that the expenses of the government be made within a framework of usefulness and austerity. Similarly, it provides that the funds authorized for an economic year will be applied solely to the payment of the expenses that have been legitimately incurred during that year or for obligations legally entered into and duly established in the books during said year.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

3

7. ID.-–ID.-–ASSETS, CONTRACTS AND RESPONSIBILITIES-– AUTHORITY OR POWER OF THE CWPR TO CONTRACT-–REQUIREMENTS OF THE CONTRACTS.

The State has a great interest in promoting a sound and correct public administration and in preventing waste, corruption and cronyism in governmental contracting. In this spirit, the Supreme Court favors the application of a restrictive standard with regard to contracts between a private entity and the government. Thus, the rigor is reiterated of the provisions of the law that govern governmental contracting, a matter that is invested with the highest public interest. The validity of this type of contract is determined based on special statutes that regulate the same and not based on the general theories of contracts.

8. ID.–ID.-–ID.-–ID.-–ID.

Art I of Law No. 18 of October 30, 1975 (2 LPRA Sec. 97) provides that the governmental entities and the municipal entities of the Commonwealth of Puerto Rico, without exception, will maintain a record of all of the contracts that they execute, including their amendments, and they must send a copy of the same to the Office of the Comptroller, within fifteen days following the date of execution of the contract or of the amendment. When deeds are executed regarding the acquisition or disposition of real properties, there will also be sent to the Comptroller a copy of every writ and document related to the negotiation. The period of fifteen days may be extended only for fifteen more days if just cause is demonstrated. The failure to comply with this provision in and of itself will be no reason for a competent court to declare the nullification of any contract or legally valid juridical business.

9. ID.-–ID.-–ID.–-ID.-–ID.

The formal requirements that must be observed when contracting with a governmental entity are: (1) reducing the contract to writing; (2) maintaining a record to establish its existence; (3) sending a copy to the Office of the Comptroller of Puerto Rico; and (4) accrediting the certainty of time, to wit, that it was entered into and executed fifteen days before. The rigorous compliance with each one of these requirements is required, since they serve as a mechanism of verification to perpetuate these contracts circumstantially and chronologically **\*258** and, therefore, avoid fraudulent payments and claims.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

Case:17-03283-LTS Doc#:22723-1 Filed:10/28/22 Entered:10/28/22 12:43:28 Desc:
Exhibit Vicar Builders v. ELA Page 4 of 15
Case:18-00030-LTS Doc#:27-4 Filed:05/23/18 Entered:05/23/18 12:06:35 Desc:
Exhibit 1 Page 4 of 15

4

10. LEASES—TERMS–-EXTENSIONS, RENEWALS AND OPTION TO PURCHASE–-TACIT RENEWAL.

The nature of the figure of tacit renewal is not compatible with the laws nor the jurisprudence that regulate governmental contracting. When the tacit renewal operates there arises a new contract through a tacit agreement between the parties that arises from the behavior of both the lessor and the lessee. The implicit agreement is what characterizes this obligation. Nevertheless, so that a contract executed with the State can bind the parties, it has to be in writing. This requirement of form is unavoidable in this type of contract. Therefore, a contract in which the State is a party cannot arise from a tacit agreement nor from the actions of the parties. From this there arises the incompatibility of both juridical figures. If a governmental contract exists in writing, it is not pertinent to talk about tacit renewal. Similarly, if the requirements of tacit renewal are present there does not exist a written contract that complies with the requirements required to bind the State.

11. PUERTO RICO-–COMMONWEALTH OF PUERTO RICO—ASSETS, CONTRACTS AND RESPONSIBILITIES—AUTHORITY OR POWER OF THE CWPR TO CONTRACT-–REQUIREMENTS OF THE CONTRACTS.

The private parties that contract with the municipalities and the government agencies have to contract according to what the law requires. To prevent irregular situations in which the State unjustly ends up deriving a benefit, the parties must be meticulous in executing their contracts. The manner in which the parties pact the contractual clauses will be determinant in deciding what is applicable when a lease agreement executed with the government expires. Only then can there be corrected any situation that can put a private party at a disadvantage before the State.

**Synopsis**

CERTIORARI of a JUDGMENT by Migdalia Fraticelli Torres, Laura I. Ortiz Flores and Misael Ramos Torres, Js. of the Court of Appeals, that confirmed the one issued by the Court of First Instance that had, in turn, dismissed the complaint with prejudice and had denied the application of the doctrine of tacit renewal to the contract in

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

Case:17-03283-LTS Doc#:22723-1 Filed:10/28/22 Entered:10/28/22 12:43:28 Desc:
Case:18-00030-LTS Doc#:27-1 Filed:05/23/18 Entered:05/23/18 12:06:35 Desc:
Exhibit 1 Page 1 of 15
Exhibit Vicar Builders v. ELA Page 5 of 15

5

question. We confirm the Court of Appeals. Since there does not exist a valid contract that complies with the requirements of the law in effect, it is not up to the State to pay the rents owed between the months of January 2012 to April 2012.

Alberto Aresti Franceschini, attorney for the petitioner; María C. Umpierre Marchand, general assistant prosecutor, attorney for the appellee.

ASSOCIATE JUSTICE MISTER MARTÍNEZ TORRES issued the opinion of the Court
**\*259**
On this occasion we have to determine if the figure of tacit renewal applies to a lease contract executed with the State and if, based on this, the claim of some lease payments owed by the State is pertinent. We resolve that the tacit renewal is not compatible with the statutes that regulate governmental contracts, wherefore it cannot apply to a contract in which the State is a party.

**I**

On May 22, 2008, Vicar Builders Development, Inc. (Vicar Builders) executed a lease agreement with an option to purchase in which it appeared as the lessor. In this contract, it leased to the Department of Justice of Puerto Rico (the Department) a real property of three floors situated in Bayamón, with installations for offices and parking. The parties agreed on a monthly rental fee that amounted to $32,812.30. The contract had an effective term of one year.

Later, on May 20, 2009, the same parties executed a second contract to extend the term of the lease for one year. Once the term of the second contract expired, the Department remained occupying the real property without making the corresponding monthly payments. Vicar Builders claimed the payment of the rent owed and the Department only paid up to the month of December 2011. After that date, it made no payment whatsoever for the rent of the real property that it continued to enjoy.

On April 26, 2012 Vicar Builders filed a complaint for collection of money against the State, the Department of Justice and the Department of the Treasury with regard to the lease payments owed from January to April 2012. at that time, the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

6

debt amounted to $131,249.20. It alleged that the debt was due, liquid and ***260** payable, and that the doctrine of tacit renewal applied. On its part, the State alleged that , since there was no written contract signed by the parties, it did not owe any amount whatsoever to the plaintiffs. It argued against the applicability of the doctrine of tacit renewal to the governmental contracts, since this would violate the special statutes that impose strict requirements for contracts with the government.

The Court of First Instance dismissed the complaint with prejudice and refused to apply the doctrine of tacit renewal to the contract in question. It based itself on the fact that Vicar Builders was unable to demonstrate that the requirements of governmental contracting had been fulfilled such as, for example, that there existed a written contract that bound the partied and that is registered with the Office of the Controller. Appendix, page 25. Not in agreement, Vicar Builders resorted to the Court of Appeals through a request for appeal. The intermediate appellate forum confirmed the judgment appealed.[1] In view of this, Vicar Builders filed a request for certiorari before this Court requesting that we revoke the determination of the lower forums and apply the doctrine of tacit renewal. It argued that it complied with the requirements of a governmental contract since there existed a written and valid lease contract. It also stated as an error the determination that the validity of the obligation had not been evidenced and that, therefore, the disbursement of public funds was not pertinent. With the benefit of the appearance of the parties, we resolve.

## II

**[1]** A. When a lease agreement is agreed for a determined period of time, it concludes on the date per-established without it being necessary to require it. Art. 1455 of the Civil ***261** Code of Puerto Rico, 31 LPRA Sec. 4062. This type of contract can be extended, in which case the same contract, or one of renewal, subsists, now based on a new lease agreement expressly or tacitly executed. M. Albaladejo García, Derecho Civil, 7th ed., Barcelona, Bosch Library, 1982, T. II, Vol II, page 190.

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

Case:17-03283-LTS Doc#:22723-1 Filed:10/28/22 Entered:10/28/22 12:48:28 Desc:
Exhibit Vicar Builders v. ELA Page 7 of 15
Case:18-00030-LTS Doc#:272-1 Filed:05/23/18 Entered:05/23/18 12:06:35 Desc:
Exhibit 1 Page 7 of 15

7

**[2]** Art. 1456 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 4063, provides that when a lease contract ends and the lessee remains enjoying the thing leased for fifteen days with the acceptance of the lessor, there is a tacit renewal.

**[3]** The tacit renewal does not presume an extension of the original contract, since it constitutes a new contract. Dalmau v. Hernández Saldaña, 103 D.P.R. 487, 490 (1975). This is so because, by express provision of the law, the lease ceases when its term expires, thereby extinguishing the original contract. Cesaní Vargas v. Superior Court, 92 DPR 239 (1965). Nevertheless, when there concur the requirements of the tacit renewal this contract is renewed. Id. It involves an assumption of renewal that arises by the presumed will of the parties provided the passivity of these reveals their new contractual will. Albaladejo García, op. cit., page 194.

From the tacit agreement there arises a new contract, the term of which is not the same as the one stipulated in the primitive contract, but the one that is provided by Arts. 1467 and 1471 of the Civil Code, 31 LPRA secs. 4083 and 4092. From those articles it appears that, if a term has not been established for the lease of an urban parcel, it will be understood made for years when the rent is annual, for months when the rent is monthly or for days when it is daily. Dalmau v. Hernández Saldaña, supra, page 489. As to the rest, it is understood that there are reproduced the same terms of the tacit agreement. León Parra v. Gerardino, 58 DPR 489, 496, (1941). **\*262**

**[4]** For the tacit renewal to operate, none of the parties must have stated their intention to terminate the lease agreement. León Parra v. Gerardino, id. The spirit of renewal of the lessee must be clear, which is demonstrated when it stays enjoying what was leased after the contract expires. Similarly, it is understood that the lessor tacitly consented to the renewal if it makes no requirement or manifestation whatsoever for the lessee to cease enjoying the thing. Id.

**[5]** B. Art. VI, Sec. 9 of the Constitution of Puerto Rico, LPRA, Volume I, ed. 2008, page 429, provides that "[t]he properties and the public funds will only be disposed of for public purposes and for the sustenance and operation of the

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

8

institutions of the State, and in any case by legal authority." In order to achieve the sound administration of the public funds legislation has been approved to establish a control over the disbursement of said funds and over the governmental contracts. Rodríguez Ramos et al v. ELA et al, 190 DPR 448 (2014). The procedures established in the laws as well as the precepts of sound public administration stated in our jurisprudence impose a limit on the faculty of the State to disburse public funds. Jaap Corp. v. Depto. Estado et al, 187 DPR 730, 741 (2013).

**[6]** Art. 2 of Law No. 230 of July 1974, as amended, known as the Accounting Act of the Government of Puerto Rico, 3 LPRA Sec. 283a, establishes as a public policy to maintain a "prior control of all of the operations of the government', that the accounting of the Government of Puerto Rico 'constitute an effective control over the income, disbursements, funds, property and other assets of the government" and that "the expenses of the government be made within a framework of utility and austerity". Similarly, it provides that the funds authorized for an economic year will be applied only to the payment of the expenses which have **\*263** been legally incurred during that year or for "obligations legally contracted and duly established in the books during said year." (Emphasis ours). Art. 8 of Law No. 230, supra, 3 LPRA Sec. 283g(a). It should be emphasized that this law defines the term obligation as "[a] commitment entered into that is represented by a purchase order, contract or similar document, pending payment, signed by a competent authority to encumber the assignments and that can become a requireable debt in the future." Art. 3 of Law No. 230, supra, 3 LPRA Sec. 283b(k).

**[7]** The State has a great interest in promoting a sound and correct public administration and in preventing the waste, the corruption and cronyism in governmental contracts. CMI Hospital v. Dept. Salud, 171 DPR 313, 320 (2007). In this spirit, we have favored the application of a restrictive regulation with regard to the contracts between a private entity and the government. See: Cordero Vélez v. Mun. de Guánica, 170 DPR 237, 248 (2007); Lugo v. Municipio de Guayama, 163 DPR 208, 215 (2004). That is why we have reiterated the rigor of the provisions of the law that govern governmental contracting, a matter that is invested with the highest public interest. ALCO Corp. v. Mun. de Toa Alta, 183 DPR 530, 533 (2013);

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

9

Cordero Vélez v. Mun. de Guánica, supra; Fernández & Gutiérrez v. Mun. San Juan, 147 DPR 874, 824, 829 (1999). The validity of this type of contract is determined based on special statutes that regulate it, and not based on the general theories of contracts. ALCO Corp. v. Mun. de Toa Alta, supra, page 537, citing Quest Diagnostics v. Mun. San Juan, 175 DPR 994, 1000 (2009).

**[8]** Art. 1 of Law NO. 18 of October 30, 1975, as amended, 2 LPRA Sec. 97, provides that

> [t]he governmental entities and the municipal entities of the Commonwealth of Puerto Rico, without any exception whatsoever, will maintain a record of all the contracts that they execute, including amendments to the same, and they must send **\*264** a copy of the same to the Office of the Comptroller within fifteen (15) days following the date of the execution of the contract or the amendment. [\u…\u] When deeds are executed regarding the acquisition or disposal of real property there will also be sent to the Comptroller a copy of every writ and document related to the negotiation.

The period of fifteen days may be extended only for fifteen more days if just cause is demonstrated. Id. The non-compliance of this provision "in and of itself will not be cause for a competent court to declare the nullification of any legally valid contract or juridical business. Nevertheless, no provision or counterprovision object of a contract may be required until compliance has been given to what is provided in this section." Art. 1(d), 2 LPRA Sec. 97(d).

**[9]** In repetitive occasions we have stated the formal requirements that must be observed when contracting with a governmental entity: (1) reducing the contract to writing; (2) maintaining a record to establish its existence; (3) sending a copy

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

10

to the Office of the Comptroller of Puerto Rico, and (4) accrediting the certainty of time, that is, that the contract was entered into and executed fifteen days before. Rodríguez Ramos et al v. ELA et al, supra; ALCO Corp v. Mun. de Toa Alta, supra, page 537; Jaap Corp. v. Depto. Estado et al., supra. See, also, Ocasio v. Alcalde Mun. de Maunabo, 121 DPR 37 (1988). The rigorous compliance with each of these requirements is required, since they serve as a mechanism of verification to perpetuate these contracts circumstantially and chronologically and, in this manner, avoid fraudulent payments and claims. ALCO Corp. v. Mun, de Toa Alta, supra, page 537-538, citing Ocasio v. Alcaide Mun. de Maunabo, supra, pages 53-54.

With regard to the first requirement --- that the contract be in writing--- we have established that its compliance is indispensable so that the contract will have a binding effect between the parties. Rodríguez Ramos et al v. ELA et al, supra; JAAP Corp. v. Depto. Estado et al, supra, page 741. "The **\*265** written contract is [\u...\u] the best evidence of the reciprocal obligations that the parties contract to'". ALCO Corp. v. Mun. de Toa Alta, supra, page 538, citing Colón Colón v. Mun. de Arecibo, 170 DPR 718, 726 (2007). The terms of the contract are contained, in an objective manner, in the document, avoiding that there arise controversies with regard to the same. Colón Colón v. Mun. de Arecibo, supra page 723. This requirement

> "...has an unavoidable dimension of sound public administration, in the measure that it allows to protect the interests of the contracting parties with regard to a non-compliance, allows the orderly utilization of the municipal funds, avoids the uncertainty in the confection of the municipal budget and makes possible the adequate identification of the item against which the public disbursements will be made in compliance with the law." Jaap Corp. v. Depto. Estado et al, supra, page 742, citing Colón Colón v. Mun. de Arecibo, supra, page 730.

The substantive nature of the requirement of the written contract supposes that its non-compliance adversely affects the efficacy of the obligation contracted in the same. Colón Colón v. Mun. de Arecibo, supra, page 730. In Fernández & Gutiérrez v. Mun. San Juan, supra, pages 832-833, we stated that the commitment
> [\u...\] could not generate a juridical obligation of any

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

Case:17-03283-LTS Doc#:22723-1 Filed:10/28/22 Entered:10/28/22 12:43:28 Desc:
Exhibit Vicar Builders v. ELA Page 11 of 15

Case:18-00030-LTS Doc#:272-1 Filed:05/23/18 Entered:05/23/18 12:06:35 Desc:
Exhibit 1 Page 11 of 15

11

> nature whatsoever for the Municipality, since it was not made pursuant to the applicable standards previously stated. The alleged "commitment" did not appear in a written contract [nor] was it included in the amendment to the contract. Therefore, it was also not registered or presented in the Office of the Comptroller. The absence of these elements which as we have previously stated are of rigorous observance, deprive the alleged agreement of the lessor of efficacy and validity with the Executive Director to extend the duration of the lease in question. The requirement of formulating what was agreed through a written contract, was indispensable and, as we resolved in Hatton v. Mun. de Ponce, supra, it has to be complied with "without any exception whatsoever", so that what was agreed be binding. (Emphasis in the original).

Similarly, in Cordero Vélez v. Mun. de Guánica, 170 DPR 217 (2007), the parties never executed a contract **266** in writing nor did they comply with the formalities applicable to the municipal contracts. There we concluded that a contract was not perfected between the parties and that, therefore, the claim against the municipality was not pertinent. Id.

On its part, in ALCO Corp. v. Mun. de Toa Alta, supra, the retroactive municipal contract was rejected and it was determined that the existence of a written contract was necessary before rendering the services agreed. In this case, ALCO stared to pave an area of the municipality of Toa Alta without first signing the written contract. The parties executed the contract in writing and complied with the other requirements of the law after ALCO completed the performance of the work. On that occasion, we provided that validating a retroactive contract with a municipality "would ignore the public interest of regulating the inspections of the work and restricting the parameters of subcontracting [\u ...\u]". (Emphasis suppressed). Id., page 551.

On the other hand, requiring that the contract remain in a faithful registry that

Certified to be a true and correct translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

12

establishes its existence and that a copy of this contract be sent to the Office of the Controller responds to offering publicity to every contract that involves a municipal entity. Colón Colón v. Mun. de Arecibo, supra, page 730. In this manner, it makes it easy for a third party to oversee the businesses of the State. Id.

Therefore, there will arise an obligation by the State "only when there is a contract pursuant to a legally valid commitment". (Emphasis suppressed). ALCO Corp. v. Mun. de Toa Alta, supra, page 539. Once the requirements mentioned are satisfied, the contracts will be valid, requireable and will enjoy the publicity that our laws require for the sound administration of the public policy insofar as governmental contracting is concerned. Id., page 538, citing Johnson & Johnson v. Mun. of San Juan, 172 DPR 840, 853 (2007). **\*267**

### III

In this case the parties executed a valid lease agreement that satisfied all of the requirements applicable to governmental contracts. The contract was in writing, it was registered and its copy was sent to the Office of the Comptroller. This contract had an expiration term of one year. Once the date agreed to terminate the lease arrived, the contract was extinguished.

Nevertheless, the Department remained occupying the real property for more than fifteen days, with the knowledge of Vicar Builders and without both manifesting any desire to terminate the lease. This situation supposes that the figure of tacit renewal could operate, since there are present all of the requirements. If so, there would be a new agreement with an effective term of one month, since the original contract established a monthly payment of lease. In this manner, the agreement would continue to be tacitly renewed every month while the Department continued to enjoy the thing for more than fifteen days under the same circumstances. Nevertheless, the law and powerful reasons of public policy prevent that the figure of tacit renewal operate in governmental contracts.

**[10]** The nature of the figure of tacit renewal is not compatible with the laws nor with the jurisprudence that regulate governmental contracts. When the tacit renewal operates there arises a new contract through a tacit agreement between the parties that arises from the behavior of both, the lessor and the lessee. See,

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

13

Dalmau v. Hernández Saldaña, supra. The implicit agreement is what characterizes this obligation. Nevertheless, so that a contract executed with the State can bind the parties, it has to be stated in writing. See Jaap Corp. v. Depto. Estado et al, supra, page 741. This requirement of form is unavoidable in this type of contract. Therefore, **\*268** a contract in which the State is a party cannot arise from a tacit agreement nor from the actions of the parties.

Thus there arises the incompatibility of both juridical figures. If a governmental contract exists writing, it is not pertinent to talk about tacit renewal. Similarly, if there are present the requirements of tacit renewal there does not exist a written contract that complies with the requirements required to bind the State, That is, there would arise a new contract that is not in writing, that is not recorded and that was not sent to the Office of the Comptroller.

The statutory requirements that exclude the application of the figure of tacit renewal cannot be corrected. It could be argued that the new contract that tacitly arises can be subsequently reduced to writing and sent to the Office of the Comptroller, in compliance with its requirements. However, in this case we would be allowing a practice that this Court has previously invalidated —-the retroactive contract with the government—-. See ALCO Corp. v Mun. de Toa Alta, supra. That is, a party would be enjoying something leased for a time without the existence of a valid and requireable contractual relationship. If the parties decided to reduce to writing the agreement that is born with the tacit renewal, the binding effect would arise after one party has obtained a benefit or enjoyed the thing leased. If we allow this assumption, we would be validating a contract that comprises a prior obligation under which the parties have already had considerations. This is precisely what this Court has previously prohibited.

The application of the figure of tacit renewal would grant the State a way to evade the compliance with the requirements imposed in the statutes cited and which this Court has recognized as necessary for a governmental contract to have a juridical efficacy. We would be opening the door for the State to renew contracts tacitly which, due to lack of publicity, could not be supervised **\*269** by third parties and would distort the reality contained in the records of contracts. We cannot sup9ort the application of this figure when its effect would be to reduce the transparency

Certified to be a true and correct translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

14

of the businesses that involve the government and give way to the government granting contracts for a term longer than the one stated in the written contract. This is precisely what the laws in question pretend to eradicate.

**[11]** If we have invalidated the extension of the effective term of a contract with a municipality, made through an express agreement of the contracting parties, it is logical to conclude that the tacit extension of the effective term of a lease agreement with the State is also invalid. See Fernández & Gutiérrez v. Mun. de San Juan, supra. The private parties that contract with the municipalities and the government agencies have to contract according to what the law requires. It is required that "the private parties exercise a more active role when contracting [\u...\u]". CMI Hospital v. Depto. Salud, supra, page 321. That is why, to prevent irregular situations where the State ends up deriving an unjust benefit, the parties must be meticulous in executing their contracts. The manner in which the parties pact the contractual clauses will be determinant when deciding what is pertinent when a lease contract executed with the government expires. Only then can any situation that may place a private party at a disadvantage with the State be corrected.

We understand that, by not applying the tacit renewal, there is a situation where the government could remain in a real property without paying rent until it is evicted after the expiration of the lease agreement. This situation could be foreseen in the lease agreement, by agreeing beforehand under what conditions the lease would be extended, for how much additional time, and what would be the rent to be paid. In fact, and without pretending to be exhaustive, the parties have the alternative of including penal clauses in their contracts to prevent that **\*270** a party be affected by the non-compliance of the other.

Even though there is no doubt that in this case there are present all of the requirements and even though there was a valid contract executed between Vicar Builders and the Department, we cannot apply the figure of tacit renewal because it is incompatible with the requirements imposed by our special laws for governmental contracts. In view of this, there is no valid contractual relationship between the parties that allows the State to disburse the funds for the payment of the rent owed and the collection of the amount claimed by Vicar Builders is not

Certified to be a true and correct
translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488

15

pertinent. The contract between the parties ceased on the date agreed in the written contract.

**IV**

In view of all of the above, we confirm the Court of Appeals. Since there is no valid contract that complies with the requirements of the laws in effect, the state is not obligated to pay the rent owed between the months of January 2012 to April 2012.

Judgment will be issued accordingly.

The President, Justice Mrs. Fiol Matt and Associate Justice Mrs. Rodríguez Rodríguez concurred with the result without a written opinion. Associate Justices Mister Kolthoff Caraballo and Mister Rivera García dissented without a written opinion.

Footnotes

1       Justice Fraticelli Torres issued a dissident vote. Appendix, page 32.

End of document         © 2018 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Certified to be a true and correct translation from its original.
Aída Torres, USCCI
Tel. 787.225.8218/787.723.4644
Fax: 787.723.9488