# EXHIBIT 1

Case 19-30088 Doc#2523-2 Filed 11/09/22 Entered 11/09/22 14:43:28 Desc:
Exhibit 2   Page 2 of 22

183 D.P.R. 530, 2011 WL
6310212 (P.R.), 2011 TSPR 180

ALCO CORPORATION, petitioner,

v.

MUNICIPIO DE TOA ALTA, respondent.

In the Supreme Court of Puerto Rico
*Number:* CC-2010-11

**Synopsis**

*CERTIORARI* seeking the review of a JUDGMENT of *Emmalind García, Aleida Varona Méndez* and *Gretchen I. Coll Martí*, Js. of the Court of Appeals, which upheld the Trial Court's decision holding that ALCO Corporation was not entitled to demand payment for work carried out, since the claim for payment made against the municipality of Toa Alta arose from services rendered prior to the effective date of the contract presented in evidence. *The judgment rendered by the Court of Appeal is upheld.*

*José A. Sánchez Álvarez* and *Christian O. Cintrón Pérez*, de *Nevares & Sánchez-Álvarez*, counsel for the Petitioner; *Ricardo Robles Caraballo*, counsel for the Respondent.

ASSOCIATE JUSTICE MR. MARTÍNEZ TORRES rendered the Court's opinion.

This appeal enables us to analyze if it is feasible, in light of the 1991 Autonomous Municipalities Act of the Commonwealth of Puerto Rico (Autonomous Municipalities Act), Act No. 81-1991 (21 L.P.R.A. sec. 4001 *et seq.*), for a contractor to perform work prior to the conclusion of a contract in writing and still demand payment for its services if the contract is later entered into.

In view of the recognized pressing interest of protecting public funds, it is necessary for a **\*533** contract to be entered into in writing before the contractor begins work. Thus, we reaffirm the "rigorousness of the legal precepts that govern the commercial relations between private entities and the municipalities, which aim to promote sound and honest public administration, which is a matter of the highest public interest" *Fernández & Gutiérrez v. Mun. San Juan*, 147 D.P.R. 824, 829 (1999). See also *Cordero Vélez v. Mun. de Guánica*, 170 D.P.R. 237, 248 (2007).

**I**

The petitioner ALCO Corporation (ALCO) is engaged in the business of the supply, sale, watering and delivery of asphalt concrete. In 2002, ALCO participated in a bid for the execution of a resurfacing project in the Lajas neighborhood, Los Rivera Marrero sector, in the municipality of Toa Alta. On June 4 of the same year, the municipality's bid board notified Mr. Alfonso Rodríguez García, president of ALCO, by way of letter, that it had been awarded bid ## 02-030. Appendix to *Certiorari* petition, p. 45. As a result, ALCO began paving the corresponding area between June 25 and 28, 2002, without the contract having been entered into. It was not until July 16, 2002 that this contract was entered into. On the same date, it was recorded in the municipal books and a copy was sent to the Office of the Comptroller. Clause eighteen of the contract stipulated that the term for carrying out the work was an essential element of the contract and that ALCO was supposed to start the project within or before five days after it was awarded. Appendix to *Certiorari* petition, p. 49. Furthermore, clause fourteen stated that the contract would be in force for 30 days from July 16, 2002 to August 14, 2002. Appendix to *Certiorari* petition, p.48. In other words, the contract had a term of thirty days for completion of the work. It is worth noting that this was not the **\*534** first time that ALCO was contracting with the municipality of Toa Alta. From the pleadings, it results that it had also won a contract for another resurfacing task in 2000.

Following the completion of the work, ALCO requested the payment of $29,500. To this end, it presented supporting documents showing that the work had been carried out between June 25 and 28, 2002. After several unsuccessful attempts with the municipality, ALCO brought a debt collection action. Thereafter, it filed a summary judgment motion and several motions for reconsideration which were denied.

The municipality then filed a summary judgment motion. ALCO opposed this motion. In its motion, the municipality contended that "the [ALCO's] claim was inadmissible since it is based on an alleged

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

.                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.                    1

contractual obligation unrelated to the claim for the work done". Appendix to *Certiorari* petition, p. 28. In turn, ALCO pointed out that "the fact that the work has been performed early does not in any way amount to fraudulent machinations, or embezzlement of funds, or favoritism, or any other matter being dealt with by the Supreme Court". Appendix to *Certiorari* petition, p. 38. It added that, as opposed to wanting to charge for work unrelated to the claim of the work done, "the information in the contract, as well as that of the tender, is completely related to the invoices presented by ALCO for the work done in Barrio Lajas". Appendix to *Certiorari* petition, p. 39.

The Trial Court dismissed granting summary judgment in the municipality's favor. It held that the work carried out and the dates of the works were not related to the claims brought. It reasoned that, given the stringent requirements for contracting with municipalities,

> ... no contract concluded by a municipality may have a validity date later than the date of completion of the work. **\*535** In other words, ALCO cannot attempt to seek payment from the Municipality for work carried out prior to the date of entering into the contract in dispute. It is clear from the evidence presented by Claimant itself that the works for which Alco is attempting to collect payment from the Municipality were carried out on dates prior to the date of entry into the contract. Such action has no place in our legal system. Appendix to *Certiorari* petition, p. 84.

At the same time, it reasoned that, given the statutory form requirements mandated under the law for contracting with municipalities, contracts cannot cover events that occurred previously. Appendix to *Certiorari* petition, p. 85.

Dissatisfied, ALCO appealed to the Court of Appeals. This court upheld the Trial Court's decision. It held that ALCO was not entitled to seek payment for the work carried out, since the claim for payment asserted against the municipality arose from services rendered before the contract was in effect. Appendix to *Certiorari* petition, p. 169. It held that

> [t]o do otherwise would disrupt the established system of controls on the disbursement of public funds,

since it would lend itself to the validation of agreements reached between contractors and municipalities without complying with the process established by our law. ...

... In view of the interest represented by public funds, we are not prepared to impose on the Municipality the responsibility of complying with the payment of a debt allegedly incurred for services received on a date when no contract was in force. Id., p. 170.

Dissatisfied once again, ALCO appealed this decision before us. It asserted that the intermediate appellate court erred in holding that the doctrine of unjust enrichment did not apply in this case. It explained that several courts in other U.S. jurisdictions have imposed liability on municipalities that unfairly benefit from their own *ultra vires* acts. It also noted that, to hold that payment was not chargeable because the work was done prior to the conclusion of the contract discourages contracting **\*536** with the Government, as it hurts its credibility as a contracting entity. It added that the amendments made to Art. 8.016 of the Autonomous Municipalities Act, 21 L.P.R.A. sec. 4366, and to Art. 1 of Act No. 18 of October 30, 1975, by Act No. 127-2004 (2 L.P.R.A. sec. 97) relaxed the requirements for contracting with municipalities and "seek to establish fair and valid rules that prevent the government, including its municipalities, from losing credibility when it comes to procurement." *Certiorari*, p. 6.

Likewise, ALCO argues that in *Cordero Vélez v. Mun. de Guánica*, supra, we held that if a bid is awarded and formal notice is issued, and the contractor begins work without having signed a contract, payment for the work is contingent on a contract being signed, even if done subsequently. Finally, ALCO is of the opinion that, since the contract was awarded after the completion of the work, was recorded in the municipality's books and transmitted to the Office of the Comptroller, this situation is different from the case that we have resolved related to government contracting.

In its opposition, the municipality repeated that it does not have to pay for work carried out prior to the conclusion of the contract. It added that

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
*.*

the determination of the Trial Court in dismissing the suit was due to the evidence submitted by ALCO, which showed that the works were carried out prior to the conclusion of the contract. We decided to issue the writ of *certiorari*. The case was formally filed on November 12, 2010.

## II

**[1]** From our first pronouncements on contracting with municipalities, we have made it clear that unlike contracting between private parties, **\*537** "the legal precepts governing economic relations between private entities and municipalities are of great public interest and aim to promote sound and honest public administration." *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005 (1994). For this reason, in *Quest Diagnostics v. Mun. San Juan*, 175 D.P.R. 994, 1000 (2009), we noted that "the law has imposed requirements and conditions on contracting with municipalities by special statutes. Contracts with government entities are examined for validity according to special statutes, rather than general contract theories". See also: *Johnson & Johnson v. Mun. de San Juan*, 172 D.P.R. 840, 854–855 (2007); *Cordero Vélez v. Mun. de Guánica*, supra, p. 252. Therefore, it is of great importance that municipalities have acted "in accordance with the procedures established by law and our interpretative jurisprudence" when disbursing public funds for the settlement of incurred obligations. *Colón Colón v. Mun. de Arecibo*, 170 D.P.R. 718, 725 (2007).

**[2]** In *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 54 (1988), we list for the first time the form requirements to be complied with when entering into agreements with municipalities. These are: (1) that the agreement be set out in writing; (2) that a true record be maintained with a view to establishing the existence of the contract; (3) that a copy of the contract be transmitted to the Office of the Comptroller; and (4) that evidence be provided regarding the certainty of time, i.e., that the contract was entered into fifteen days prior. See also: *Mun. Quebradillas v. Corp. Salud Lares*, 180 D.P.R. 1003 (2011); *Colón Colón v. Mun. de Arecibo*, supra, pp. 726–727; *Cordero Vélez v. Mun. de Guánica*, supra, pp. 248-249. We point out that each of these requirements must be rigorously satisfied,

as it "reflects the legislative interest in preventing fraudulent or illegal payments and claims by creating a comparison **\*538** mechanism to circumstantially and chronologically perpetuate such contracts." *Ocasio v. Alcalde Mun. de Maunabo*, supra, pp. 53– 54.

**[3]** The need for municipal contracts to be in writing is based on a requirement of a formal or substantive nature. The written contract is

> t... he best evidence of the parties' reciprocal obligations. It frees the parties from future spurious disputes [sic] over the originally agreed upon terms, as these are objectively reflected in the written agreement. Therefore, this requirement protects the rights of both the municipality and the contractor, in the event of breach. *Colón Colón v. Mun. de Arecibo*, supra, p. 726.

**[4]** Therefore, "the courts look cautiously at well-founded and contractually agreed claims in which the enforcement authorities have failed to comply with this instruction. Only thus may legislative spirit and adjudicative judicial awareness of the disbursement of public funds be fully satisfied". *Ocasio v. Alcalde de Maunabo*, supra, p. 54. Thus, "once the above requirements are met, contracts are valid, enforceable and enjoy the public nature required by our legal system for the sound administration of public policy, as far as municipal procurement is concerned". *Johnson & Johnson v. Mun. de San Juan*, supra, p. 853. Therefore, "*municipalities should not demand the execution of services without having certified to the private party that the agreement was reduced to a written contract*, that it was registered and that a copy of it was transmitted to the Office of the Comptroller as required by law". (Emphasis added) *Lugo v. Municipio Guayama*, 163 D.P.R. 208, 217 (2004), citing *Las Marías v. Municipio San Juan*, 159 D.P.R. 868, 879–880 (2003). It is clear that

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

... with the passage of Act No. 127 of May 31, 2004 (2 L.P.R.A. sec. 97), failure to comply with the requirement that **539** all contracts must be registered and transmitted to the Office of the Comptroller as required by Article 1 of Act No. 18, *supra*, and Article 8.016 of the Autonomous Municipalities Law of 1991, *supra*, does not have the effect of nullifying the contract in dispute, although it does preclude benefits from being claimed until the agreement is registered and transmitted to the Office of the Comptroller. *Mun. Quebradillas v. Corp. Salud Lares*, supra, p. 1013.

[5–6] Art. 1.003(v) of the Autonomous Municipalities Act, 21 L.P.R.A. sec. 4001(v), defines *obligation* as "any legally incurred valid undertaking represented by an outstanding purchase order, contract or similar document, duly signed and authorized by the officials authorized to disburse public funds and which is or may become a collectable debt." Art. 8.004 of the same Act, 21 L.P.R.A. sec. 4354, mandates that obligations and disbursements of funds be made only to assume obligations or pay for services authorized by law, ordinance or resolution passed for that purpose, and by the regulations adopted pursuant thereto. 21 L.P.R.A. sec. 4354. Likewise, Article 8.004, id., stipulates that when loans are authorized to deal with the affairs of a specific fiscal year, *these are to be applied exclusively to the payment of legally contracted obligations that are duly recorded in the books of the municipality during said year.* Id. This means that funds allocated for a fiscal year can only be used for obligations legally incurred during that year, not for obligations incurred in previous or subsequent years. That is, "a municipality generally cannot agree to future payment of amounts in excess of the budgeted allocation for a particular contract. *Johnson & Johnson v. Mun. de San Juan*, supra, p. 854.

As we can see, there will be an obligation on the part of the municipality *only when there is a contract by virtue of a legally valid commitment*. That is why

all municipalities are required to keep "a record of all contracts, deeds and related documents executed, **540** as well as any amendments thereto, determination, record or action terminating it, or rendering it void." See: Art. 8.016 of the Autonomous Municipalities Act, *supra*; Art. 1 of Act No. 18 of October 30, 1975, as amended, *supra*. See, further, Article 4 of Regulation No. 33 on the Registration of Contracts, Deeds and Related Documents and Transmission of Copies with the Office of the Comptroller, Regulation No. 5743, Department of State, January 28, 1998, p. 3.

The contents of that record should include the following information:

> (1) Governmental entity. (2) Number of the contract, deed or related document. ...
> *(3) Date of execution.*
> (4) Contractor. (5) Federal social security number or company tax identification number (6) Total or monthly value or amount involved [sic]. Can be estimated. (7) Register page and volume. (8) Object of the contract, deed or related document (9) *Term. Commencement and end dates must be indicated.* (10) Exempt. It shall be indicated whether or not the contract is exempt from filing [sic], as provided in Article 9-a of these Regulations. If it is exempt, the reason for not filing [sic] it shall be indicated, using the number of the exemption, as indicated in Article 9-a. (11) Approval or waiver. It shall be indicated whether or not it is a contract that requires prior approval or waiver from any agency prior to being entered into. (Emphasis

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

added). Art. 5 of Regulation No. 5743, pp. 3-4.

The obligation to register the contract in the municipal books and the requirement that the contract be in writing serve different purposes. This is how we explained it in *Colón Colón v. Mun. de Arecibo*, supra, p. 730:

> There is a marked difference between some requirements and others. The requirement that a signed contract be recorded in the municipal journal and a copy transmitted to the Office of the Comptroller of Puerto Rico is intended to provide publicity, with respect to third parties, for municipal procurement. In this way, third parties can oversee it. However, requiring that signed contracts be memorialized in writing has an unescapable dimension of sound public administration, insofar as it allows **\*541** for safeguarding the interests of the contracting parties in the event of a breach, permitting the orderly use of municipal funds, avoiding uncertainty in the preparation of the municipal budget, and making it possible to properly identify the budget item against which public disbursements will be made in compliance with the law. That is, the former are more related to procedure and smooth processing, but the latter [that the contract be in writing] is substantive due to its direct relationship with sound public administration. In view of this, we must conclude that failure to comply with

the requirement to memorialize the municipal contract in writing perforce adversely affects the effectiveness of the obligations assumed.

**[7]** Briefly put: "the purpose of the statutes that regulate the execution of works and the procurement of goods and services for the State, its agencies and dependencies, and the municipalities, is the protection of the people's interests and financial resources. In this way, favoritism, waste, prevarication and the risks of breach are avoided." *Johnson & Johnson v. Mun. de San Juan*, supra, p. 852. See also: *Mun. Quebradillas v. Corp. Salud Lares*, supra; *Colón Colón v. Mun de Arecibo*, supra, p. 725; *Lugo v. Municipio Guayama*, supra, p. 214; *Hatton v. Mun. de Ponce*, supra, p. 1005. "To this end, we have stated that [the rules outlined by the law and the jurisprudence] must be rigorously observed even in emergency circumstances." (Emphasis in the original) *Ríos v. Municipio Isabela*, 159 D.P.R. 839, 846 (2003). See also: *Fernández & Gutiérrez v. Mun. de San Juan*, supra, p. 833; *Hatton v. Mun. de Ponce*, supra, pp. 1005-1009.

**[8]** Finally, we reiterate that it is not permissible for "private persons to invoke equitable remedies against the municipalities with which they contract, because 'it is settled doctrine that such remedies will not be applied when it is contrary to a clear public policy embodied in a statute or in the Constitution'." *Mun. Quebradillas v.* **\*542** *Corp. Salud Lares*, supra, p. 1020, citing *Las Marías v. Municipio San Juan*, supra, pp. 875-876.

### III

**[9]** As can be seen from the above facts, the work was completed two weeks before the written contract was entered into. ALCO asserts that the municipality asked it to start the work before the date of entry into the written contract. However, ALCO could not prove that fact. Moreover, even if we were to assume that this was the case, this does not validate the legal transaction carried out. Let us remember what we once again must reiterate: "'private parties should play a more active role when contracting with municipalities.'" *Lugo v. Municipio*

Certified to be a correct and true translation from the source text in Spanish to the target language English.
28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

*Guayama*, supra, p. 217. The prudent thing to do is for contractors to require municipalities to set out the agreement in writing and to certify that it has been registered and transmitted to the Office of the Comptroller. Id.

Therefore, ALCO carried out the work at the end of June 2002 without having a written contract authorizing it to do so. The only thing it had was the letter certifying it had won the bid to carry out the project. That was not enough, because

> ... for more than three decades we have established that in our system "an agency has the right to revoke a bid award before the corresponding contract is formalized" ... The social objective of the power to reject bids or to cancel the tender once it has been awarded is to grant a certain degree of discretion and flexibility that allows the administrative body to protect its interests adequately (Quotes omitted). *Cordero Vélez v. Mun. de Guánica*, supra, p. 248.

According to the foregoing, although ALCO won in the bidding process, this did not provide it with any assurance that the municipality would eventually award it the contract. In that sense, endorsing ALCO's performance of the work without having **\*543** a written contract would void the power that municipalities have to revoke a bid award before the entry into a contract.

On the other hand, we must take into account the fact that "the municipality's power to commit public funds for the payment of an obligation, is subject to following the procedures established by law." *Cordero Vélez v. Mun. de Guánica*, supra, p. 248. We have therefore leaned towards a restrictive rule in municipal procurement. Id. In this case, the work was performed in fiscal year 2001-2002, but the contract was entered into in the subsequent fiscal year. This action committed the funds from one fiscal year for the payment of an obligation contracted illegally in a previous fiscal year. All this was done in clear violation of Art. 8.004 of the Municipalities Act, supra. However, the foregoing does not mean that there are no legal obligations that can be paid in a subsequent fiscal year. Whenever an obligation has been legally incurred during a fiscal year, its payment is justified even if it is effected during another fiscal year.

The justification is that these funds were set aside for this purpose. Similarly, the action is not validated because both events were processed in the same fiscal year. A prior written contract is required.

Although the reality is richer than the imagination, if we validated the procurement conducted in this case, in the future there could be a situation where a contractor deliberately carries out the work beforehand, as a means of pressure to guarantee the future entry into a contract. Similarly, it could happen that a contractor who had carried out the work prior to entering into a contract would wait for a change in the municipality's administration to try to validate its act, by signing the agreement. Consequently, a contractor would be allowed to assume government powers by undertaking construction work at critical times without a formal contract, such as at the end of a fiscal year or **\*544** during a transition phase of a new municipal administration. In other words, validating the theory proposed by ALCO, would reward those who conspire with a corrupt official of the municipality for not following the rules of a sound public administration, aware that once the work is completed they will have the right to claim compensation regardless of the fact that the law was not followed during the procurement process. Ultimately, there are multiple possibilities of corruption that could arise if we allowed the disbursement of the public funds for a work carried out before entry into a written contract.

On the other hand, endorsing the parties' actions would, in this particular case, entail giving retroactive life to an act that did not occur as actually set out in the contract. We should recall that clause eighteen of the contract in question provides that "the time-limit for carrying out the work is an essential element of the contract and that [ALCO] was supposed to start the project within or before five days after the contract's conclusion". In other words, ALCO could begin to carry out the project five days after entering into the contract or before, *but in any event after it had been entered into*. Furthermore, clause fourteen of the same contract states that it is *in foce* for thirty days *from July 16, 2002* to August 14, 2002. ALCO is claiming payment for a project undertaken before the formal contract was in force.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
.

Alco Corp. v. Mun. de Toa Alta, 183 D.P.R. 530 (2011)
2011 TSPR 180

In its argument, ALCO refers to Article 1(d) of Act No. 18, *supra*, and Article 8.016 of the Autonomous Municipalities Act, *supra*, to state that with the amendments made to these laws the requirements for referral of contracts to the Comptroller were relaxed and it was established that failure to comply with these requirements is not cause for a competent court to declare the nullity of any legally valid contract or legal transaction. ALCO therefore contends that it is not appropriate in this case to declare the legal transaction carried out by the parties null and void, even if the contract was entered into after the work was carried out. **545**

ALCO argues that these amendments were made to promote the government's credibility as a contracting entity by establishing fair and valid rules that prevent municipalities from losing their credibility when contracting. However, from a reading of the transcribed sections, we see that what Article 1(d) of Act No. 18, *supra* refers to is the register that municipalities must keep of all contracts they award - including their amendments - and the transmission of copies of these to the Office of the Comptroller. The law states that a court shall not declare a contract or its amendments void because they are not recorded in the municipal registers or because they have not been transmitted to the Office of the Comptroller. These excerpts cannot serve as a basis for an interpretation that the legislature intended to retroactively authorize contracts concluded after the work has been carried out.

A study of the Positive Report on the measure (P. of C. 4243) submitted by the Governance Committee of the House of Representatives confirms this conclusion. It was explained there that the amendment arose from the need to overturn *Las Marías v. Municipio San Juan*, supra. In that case, the Court ruled that contracts not registered in the Registry of Contracts of the Office of the Comptroller were void and unenforceable. The Government Committee explained that:

> Among the unfair consequences of the rule established in the *Las Marías* case, it should be noted that the entity in control of the procedure in the Comptroller's Register and that if the agency or municipality fails to comply

with this requirement, whether through carelessness, negligence or intentionally, the contract is void and the private entity cannot charge for the services or goods. Positive Report of the P. of the C. 4243 of 11 November 2003, 6th Ordinary Session, 14th Legislative Assembly, p. 2.

Finally, the House Governance Committee noted that the amendment, "without violating the rigorous requirements of public procurement, protects contractors who rely upon legal and proper processing by **546** government agencies and entities in line with the requirements of the law." (Emphasis added) Id., p. 3.

As can be seen, the main reason for the Legislative Assembly's amendment of Article 1(d) of the Act was to establish that contractors are not responsible for transmitting contracts to the Office of the Comptroller. That is an act that does not depend on the diligence of the contractor, but rather on the municipality or the procurement agency. Therefore, the law deemed it unfair to penalize the contractor for something that did not depend on its will. However, the Governance Committee emphasized that the amendment had merit because it did not violate the strict requirements that prevailed in government procurement. One of these requirements is precisely the existence of a written contract.

Requiring contractors to ensure that there is a written contract before carrying out the work is not up to another party. Nor does it put them at a disadvantage as contracting parties. On the contrary, it guarantees them that they will be able to receive payment for the work, since they have the surest guarantee of the existence and scope of the contracted obligation: the written contract. We should recall that we have previously said that "a private party that crosses its arms and provides services without demanding reliable proof that the government has fulfilled its duty, risks assuming responsibility for its losses". *Lugo v. Municipio Guayama*, supra, p. 218. See also, *Colón Colón v. Mun. de Arecibo*, supra, p. 729.

On the other hand, ALCO asserts that in *Cordero Vélez v. Mun. de Guánica*, supra, we held that, if a tender is awarded and notice formally issued, and the contractor begins work without having signed a contract, receipt of payment for the work is conditional upon the signature of a contract even at a later date. *Certiorari* petition, p. 7. It is wrong.

The dispute we dealt with there turned on whether the action for breach of contract and damages against **\*547** the municipality was admissible by virtue of a tender that had not been formally awarded and did not result in a written contract. We held that it was not.

In *Cordero Vélez*, the Municipality of Guánica conducted a first *bidding process* in April 2001 for the purchase of fuel up to June 30 of the same year. Mr. Cordero Vélez participated in this bidding process, and he was later notified by letter that he had been awarded the bid for the supply of fuel. However, no contract was ever entered into. Notwithstanding the above, the municipality was acquiring fuel from Mr. Cordero Vélez's garage. Another bidding process was subsequently conducted for the period from July 2001 to June 30, 2002. Mr. Cordero Vélez was the only participant. According to him, the Municipal Secretary told him that he would be awarded the bid since he had been the only bidder. However, he never received written notification informing him of the award. After several procedures, Mr. Cordero Vélez found out that the municipality was also buying fuel from another retailer. He therefore asked the municipality the reason for the non-exclusivity in the purchase of fuel. The municipality informed him that he had not been awarded the bid, and it had therefore discontinued payment for and purchase of fuel at his station.

Dissatisfied, Mr. Cordero Vélez filed an action for debt collection and breach of contract. He claimed that with the second bid, a contractual relationship had been established between him and the municipality of Guánica. The Trial Court held that the municipality of Guánica had awarded Mr. Cordero Vélez the second bid (2001-2002). It found that the municipality, through its Municipal Secretary, had informed Mr. Cordero Vélez that it had awarded him the bid It, therefore, held that a contractual relationship between the two parties had arisen out of the bid.

The Court of Appeals partially upheld the trial court's decision. The intermediate court held **\*548** that it lacked evidence to intervene into the trial court's finding. However, it recognized that the payment of a municipal obligation with public funds is conditioned on following the procedures established by law. It, therefore, ordered that a written contract be entered, registered in the municipal register of contracts and that the Office of the Comptroller be notified along with a copy of the judgement.

After an analysis of the dispute before us, we pointed out in relation to the first bid that

> ... [w]hile it was appropriate to enter into a written contract and to comply with legal formalities so that the municipality could disburse public funds in accordance with applicable law, there was no dispute regarding compliance with the terms of this bid.

> The dispute in this case revolved around another bid, conducted in May 2001 for the 2001-2002 fiscal year. Applying the above provisions to the procedure for conducting and awarding municipal bids, it is indisputable that - contrary to the previous one - the bid in question had not been awarded. *Cordero Vélez v. Mun. de Guánica*, supra, p. 250.

From the transcript, it can be seen that in *Cordero Vélez v. Mun. de Guánica*, supra, we did not say that the performance of a work prior to the conclusion of the contract validates it. We did not go into the merits of the first bid. We only pointed out that, in effect, Mr. Cordero Vélez was awarded the bid, as the Bid Board sent him a letter informing him that he had won the award and that the parties should have contracted in writing. We cannot, therefore, conclude that in *Cordero Vélez* this Court validated an assertion that works can be carried out prior to the award of contracts, since we did not even analyze that aspect. We only held that the second bid was not awarded to Mr. Cordero Vélez, given that the fact that the Municipal Secretary had verbally informed him that the bid was going to be awarded to him was not enough to obligate the municipality to **\*549** formally award that bid and perfect a written contract.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Contrary to ALCO's interpretation, in *Cordero Vélez v. Mun. de Guánica*, supra, we stated that the fact that the municipality was making purchases at Mr. Cordero Vélez's station did not constitute a ratification of the award of the bid. We emphasize that

> [i]n this case, no written contract was ever granted. Nor was there a fulfilment of any of the formalities applicable to municipal contracts, which are strictly required in order to protect the public interest. The exception established by the aforementioned Act No. 127 in that a valid contract that has not been registered or submitted to the Office of the Comptroller will not have the effect of altering the public policy that permeates the regulations on municipal procurement, nor does it exempt compliance with the requirements described above that render enforceable agreements that are not legally valid. Moreover, that provision is based on the premise that a contract was made and that it is valid. Given that, in the present case, the relationship between Mr. Cordero Vélez and the municipality never became a binding bilateral agreement, we hold that, since there was no contract, it was inappropriate to order compliance with any formality, contrary to decision of the Court of Appeals. (Emphasis in the original) Id., p. 252.

Finally, we declare that "in light of the interest represented by public funds, we are not prepared to impose on the municipality the responsibility of complying with a contract that was never perfected". Id., p. 253.

ALCO argues that from our language it can be indirectly concluded that payment would have been required if the contract had been entered into for the second bid. This analysis overstretches the pronouncements in *Cordero Vélez v. Mun. de Guánica*, supra, which is a case about the validity of a bid award, and not about whether a task can be carried out prior to the written conclusion of the contract. Contrary to what ALCO alleges, in the same case we rejected the solution suggested by the intermediate appellate court, which ordered that a contract be entered into in writing, **\*550** be recorded in the municipal registry of contracts and that the Office of the Comptroller be notified along with a copy of the judgment in order to then validate the legal transaction. Had it been held that what had been done could be validated, we would have affirmed the remedy of having the contract be entered into retroactively, but we did not do so.

We are not endorsing a municipality benefiting from a work or a service without paying. Nor are we dealing with a legal claim against the municipal official who urged ALCO to carry out the work without a prior written contract. Therefore, as far as the municipality is concerned, we are following the applicable law and we reiterate that the contractor should have required a written contract before committing its resources and carrying out the work. Like any commercial enterprise, ALCO should have been aware of the legal requirements for contracting with a municipality and should have actively demanded compliance therewith. See *Lugo v. Municipio Guayama*, supra, p. 217. Ignorance of these legal requirements does not excuse non-compliance. Deciding otherwise would inadvertently lead to "favoritism, corruption, waste, prevarication, extravagance, carelessness and risks of breaches in public administration". *Lugo v. Municipio Guayama*, supra, p. 220.

"Corruption and the improper or illegal disbursement of public funds - in their many forms, sometimes crude and sometimes sophisticated - are acts incompatible with the system of democratic government enshrined in our Constitution and underpinned by respect for human dignity and the funds of the people as the sole sovereign." *E.L.A. v. Soto Santiago*, 131 D.P.R. 304, 322 (1992), citing *A.E.E. y A.A.A. v. P.N.P.*, 128 D.P.R. 294, 294–295 (1991),

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

Associate Justice Negrón García's concurring opinion, joined by Associate Justices Rebollo López and Andréu García.

Sec. 6 of Chapter IX of the Municipal Administration Regulations of the Office of the Commissioner of Municipal Affairs (O.C.A.M.), applicable to all municipal governments, currently stipulates: **\*551**

Article 6: *Construction, Works and Public Improvements Contracts*

All contracts for the construction of works and improvements shall be entered into after a public bid process, when the total cost of the work exceeds one hundred thousand dollars ($100,000). If this amount is not exceeded, the work may be contracted by requesting at least three (3) estimates.

The *contract* should stipulate the maximum amount of the cost of the work and the method of payment, and identify how the work will be monitored or inspected. It must also provide for the retention of ten percent (10%) of each partial payment, until the work is completed or substantially completed, as required by law, and is duly inspected and accepted by the municipality.

Municipalities shall include in their contracts termination clauses in cases of breach and penalty clauses or liquidated damages for late compliance. They must also stipulate clauses regulating the sub-contracting of work for the project and release from liability, among others. They must comply with the permit regime required by the relevant agencies and with the requirements set out in these Regulations.

Contracts for the construction of works and improvements funded with "Community Development Block Grant" (CDBG) federal funds must meet the requirements of applicable federal regulations and the Office's guidelines. (Emphasis added). Municipal Administration Regulations, Office of the Commissioner for Municipal Affairs, Regulation No. 7539, Department of State, July 18, 2008, p. 159.

From a reading of this Article, it must be concluded that the written contract must be signed before the execution of the work. *Otherwise, the public interest of regulating works inspections and restricting the parameters of subcontracting, among other precautionary measures referred to in that Article, would be disregarded.*

That rule is not new. Upon resorting to the previous Regulations on Basic Rules of the Office of the Commissioner for Municipal Affairs, we find an express prohibition on the retroactivity of contracts. Section 5(17) of Chapter I specified that the obligation is "a commitment that is represented by an outstanding purchase order, *contract*, or similar document, **\*552** which must be signed by the official authorized to disburse municipal funds and *which may in the future be converted into an enforceable debt.*" (Emphasis ours) Revised Regulations on Basic Rules for the Municipalities of Puerto Rico, Regulation No. 3052 of the Office of the Commissioner for Municipal Affairs, June 30, 1995, p. 4. The result at which we have arrived today is in line with that regulation.

Given this situation, it is clear that any municipal works or public improvement must be preceded by a written contract prior to its execution. We should not excuse compliance with regulations that require the municipal government to establish contractual guarantees and public interest protections. Carrying out work before the signature of such clauses would deprive the municipal government and constituents of protection from illegal sub-contracting or from performance of work without inspection and supervision, among other shortcomings.

Nor does the doctrine of unjust enrichment apply in this case. The exception that allows a government agency to invoke equitable relief to avoid a result contrary to a public policy set out in a law or the Constitution does not operate here. See *Mun. Quebradillas v. Corp. Salud Lares*, supra. On the contrary, "allowing an equity action against a municipality to demand a benefit from a void contract would violate public policy established in the Municipal Act". Id., p. 1018.

For that reason, we reject the possibility of importing the approach of other jurisdictions, under which

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
.

Alco Corp. v. Mun. de Toa Alta, 183 D.P.R. 530 (2011)
2011 TSPR 180

public obligations are validated without a written contract, through the application of concepts in equity, including the doctrine of unjust enrichment. See, for a proposal in this regard, L. Muñiz Argüelles and J. Alvarado Vázquez, *Obligations and Contracts*, 77 (No. 2) Rev. Jur. U.P.R. 645 (2008). *553

Notwithstanding the foregoing, it is our understanding that it may seem fair to compensate the contractor in this case. In this connection, a renowned author, a distinguished professor in the field, has proposed an alternative: "Should not the official be liable for the financial damages suffered by the contractor who in good faith provides a service due to their misleading representation that it has been awarded a contract? These obligations of officials would be more effective tools for tackling government corruption, but they must certainly come about through action by the Legislature." Muñiz Argüelles, id., pp. 650-651.

### IV

On the above grounds, the judgment of the Appellate Court is affirmed. That court acted in accordance with the law by validating the summary judgment entered in favor of the municipality of Toa Alta. The intermediate appellate court correctly identified the danger of validating actions such as the one at issue here, no matter the good intentions of the person proposing it. "Deciding otherwise would disrupt the established system of controls on the disbursement of public funds, since it would lend itself to the validation of agreements reached between contractors and municipalities without complying with the process established by our law." *Certiorari* petition, p. 170. Our non-delegable task of overseeing the legality of the disbursement of our People's money compels us not to admit this type of retroactive contracting. Deciding otherwise would undermine the strict regulations that the Legislative Assembly has imposed on municipal procurement.

*Judgment to be entered accordingly.*

Associate Justice Ms. Rodríguez Rodríguez concurred with the finding without rendering a written opinion. Associate Justice *554 Ms. Fiol Matta dissented in a written opinion, which was joined by Chief Justice Mr. Hernández Denton.

Dissenting opinion rendered by Associate Justice Ms. Fiol Matta, which is joined by Chief Justice Mr. Hernández Denton.

The Court's Opinion in this case is based on the erroneous premise that the petitioner's entire performance took place before the written contract was awarded. In doing so, it does not discuss or specify the characteristics and constituent elements of the type of contract agreed to in this case. In the case of a contract for performance of work, in which the main performance takes place when the agreed work is *delivered*, our task was to determine whether the requirements for the completion of the obligation laid down in the regulations on municipal contracts had been satisfied prior to that delivery. The majority opinion unnecessarily adds a formal constitutive requirement to municipal contracts that is not contemplated by the Commonwealth of Puerto Rico Autonomous Municipalities Act of 1991 (Autonomous Municipalities Act), Act No. 81-1991 (21 L.P.R.A. sec. 4001 *et seq.*), which is to be understood as the requirement that the contract must be set out in writing before the requested work is carried out. As I do not agree with the majority analysis, I am forced to dissent.

### I

On June 4, 2002, the municipality of Toa Alta notified the petitioner ALCO Corporation (ALCO) that it had been awarded tender 02-030 for a resurfacing project in the Lajas neighborhood of that municipality. The contract for the execution of the work was perfected on July 16, *555 2002, when *it was put in writing, registered in the municipal books and a copy was transmitted to the Office of the Comptroller.* The project cost was $29,500. The contract was to have a term of approximately one month.[1] There is no dispute that this contract satisfied the Autonomous Municipalities Act's four form requirements for municipal contracts.

According to the petitioner, the municipality of Toa Alta requested it to *commence* the resurfacing work *before* the date on which the contract would be formally concluded.[2] What is not in dispute is that at the end of June 2002, ALCO carried out the resurfacing work as described in Tender 02-030 and,

--O--

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

eventually, in the July 16 work contract.[3] That is to say, it carried out its work before the perfection of the contract.[4] However, the final certification of the project, with a view to its acceptance by the municipality of Toa Alta, occurred on July 31, 2002, i.e. during the term of the contract.[5] However, the municipality refused to certify the work and did not make any payment to ALCO.

After some unsuccessful collection efforts, ALCO filed a debt collection lawsuit against the municipality of Toa Alta, claiming $29,500 for the work done as an overdue, liquidated and enforceable debt. Both parties requested summary judgment. The municipality contended **556** that the claim against it was "unfounded because it was based on an alleged contractual obligation that had no relationship whatsoever to the claim for the work done",[6] It argued, in particular, that it was not obliged to comply with the contract since the resurfacing work had been carried out before the contract was put in writing as required by the rules on municipal procurement.[7]

The Court of First Instance declared the summary judgment motion filed by the municipality to be "admissible" and dismissed the application. In summary, it determined that ALCO could not charge for work carried out before the contract for the execution of the work had been concluded. Dissatisfied, ALCO appealed to the Court of Appeals. The intermediate court, in the relevant Article, confirmed the decision of the court of first instance. The Court of Appeals held that ALCO could not claim any payment for the work done before the perfection since the contract concluded on July 16 made no mention of the fact that the work had commenced before the effective date of the contract and provided that any changes to the contract had to be made in writing.

Dissatisfied, ALCO appealed to this Court. In the relevant Article, it argued that the Court of Appeal had erred in holding that ALCO could not claim payment for the work performed because the work on the project had been carried out before the contract was concluded. In particular, ALCO questions whether "a claim for payment for work duly tendered, budgeted and performed

under a signed **557** and written contract, filed in the books of the Municipality and transmitted to the Office of the Comptroller can be dismissed [because] the contractor responded to the Municipality's request to bring forward the works by some days".[8] This, the petitioner argues, would damage the government's credibility as a contracting entity. For its part, the municipality focuses on the fact that "the works in question were carried out prior to the conclusion [sic] of the [contract]".[9] In addition, it claimed that the municipality's alleged request that the work be brought forward had not been proven. Finally, it argues that contracts "cannot be concluded to cover events that occurred prior to the conclusion [of the contracts]".[10]

## II

The power of municipalities to enter into contracts, and the consequent right of contractors to demand compliance with the provisions is conditional upon the agreed contract satisfying certain formal requirements.[11] These are: (1) that the agreement be made in writing, (2) that a true record be kept to establish the contract's existence, (3) that a copy of the contract be sent to the Office of the Comptroller, and (4) that there be evidence of a specific duration, i.e., that the contract had been concluded no more than a fortnight earlier.[12] These requirements must be strictly observed "given that their absence deprives the agreement with the municipality of its *effectiveness* and *validity*". (Emphasis **558** added.)[13] In other words, "no municipality may settle any debt that does not arise from a written contract that has been registered and transmitted to the Office of the Comptroller". (Emphasis omitted.)[14] For contracts concluded by a municipality to be valid and thus have binding effect between the parties, they must comply with these form requirements.[15] Agreements in contravention of these rules are invalid.[16]

As the majority opinion states, the purpose of these requirements, and their rigorous observance is sound and honest public administration.[17] We have stated that this objective is "in the highest public interest".[18] The aim of this policy is not to favor the municipality, but to protect public funds.[19] We have consistently stated that a government's good administration is a virtue of democracy,

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
.

and part of good administration involves carrying out its functions as a purchaser efficiently, honestly, and correctly to protect the interests and money of the people whom that government represents. [20] Thus, "favoritism, corruption, waste, prevarication, extravagance and neglect in the awarding of contracts are avoided, and the risks of breach **559** are minimized". [21] It is therefore the duty of the courts to prevent the circumvention of legal provisions protecting public funds and integrity in government management. [22]

Compliance with the above formal requirements is of a "*constitutive* nature with respect to the *effectiveness* of the obligations contracted". (Emphasis added). [23] A contractor who contracts with a municipality without these requirements being met assumes the risk of not being able to require the municipal entity's fulfilment of the obligation. While there has been a breach, the contractor has no cause of action. [24] In particular, we have insisted on the need for municipal contracts to be set out *in writing*, an element that we have described as "indispensable ... for what has been agreed upon to have binding effect". (Emphasis deleted.) [25]

However, once the formal contracting requirements are met, contracts between the municipal entity and the contractor are valid and enforceable. [26] In these cases, what remains is to analyze the legal transaction agreed and the obligations assumed, as is the case with any other contractual relationship. [27] In *De Jesús González v. A.C.*, we declared **560** that "[w]hen the State contracts, the interpretation of the contract must be made as if it were a contract between two private persons. This means that once the State enters into a contract with a private individual, both are bound by the general rules on contracts and their corresponding interpretations in light of our applicable pronouncements". (Citations omitted.) [28] Naturally, it will be beginning from the fulfilment of the form requirements that the municipality will be under an obligation to the contractor and the latter will be able to demand the payment of the agreed-upon price.

The Court's opinion accepts that in this case, the four requirements of Act No. 81 were met[29] but adds a fifth form requirement that is not set out in the Autonomous Municipalities Act: that the contract be set out in writing before the contractor's work begins.

According to the majority, this is to prevent a contractor from carrying out work without a contract and then demanding payment from the municipality. However, the majority forgets that, since the signature of the contract is a *sine qua non* requirement, if the contractor carries out the work and a contract is not signed, *it cannot demand anything from the municipality*. Moreover, in a situation of execution of work, like the present one, nothing obliges the municipality to sign the contract and pay for the work. However, if the municipality itself *voluntarily decides* to assume the obligation after the work has been carried out, observing the requirements of the Autonomous Municipalities Act, there is nothing in this law that prohibits it from doing so. [30] **561**

### III

Even if we agree with the majority that the contract must be in writing before the requested work is performed, this does not resolve the dispute in this case. We cannot lose sight of the fact that we are dealing with a *work contract*. Therefore, in order to determine when the contract should have been perfected in this case, it is necessary to examine this contractual concept before determining when the form requirements of the Autonomous Municipalities Act should have been fulfilled, including the new requirement of non-retroactivity established by the Court. I do not propose disregarding the special statutes and resorting exclusively to general contract theory. Rather, I would like to remind the court that, as a court, it is up to us to examine the interaction between the special law and the different concepts in our contract law, as not all contracts are the same.

By means of the work contract, also known as *a work contract, company contract or construction execution contract*, [31] one party undertakes to execute a project in exchange for a previously established price. [32] In particular, as Puig Brutau explains to us, this "is the contract by which one of the parties ... undertakes with respect to the other ... to produce *a specific result* with its independent activity, in exchange **562** for a fixed price". (Emphasis added). [33] The correlation between the work contract and the production of a result is a characteristic universally accepted by the doctrine.[34]

Certified to be a correct and true translation from the source text in Spanish to the target language English.
28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

. © 2020 Thomson Reuters. No claim to original U.S. Government Works. 13

The Supreme Court of Spain has consistently reached the same conclusion. [35] As can be seen from the term itself, the emphasis on the result necessarily points to a temporal element: it is the culmination of a productive process. [36]

A. The contractor's main obligations in a work contract are to: (1) execute the project and (2) deliver it. [37] For its part, the client has two essential obligations: (1) *acceptance* of the project [38] and (2) payment of the *563 price in the agreed form and amount and at the agreed time. [39] We now have to analyze these features separately and then discuss how they interact with each other.

While the fundamental characteristic of the work contract is the production of a result, the process that leads to that product is composed, in turn, of an initial work and a final delivery. However, given the importance of the result, the initial work is only a first step in the fulfilment of the performance incumbent upon the contractor. In other words, it is not a question of two independent services - initial work and final delivery - but a single obligation to produce a result which, although it begins with the work, ends with its delivery.[40] On the other hand, *delivery constitutes the definitive moment when the contractor fulfils its obligation*. If a contractor carries out the work but does not deliver it, it will not have provided its service. Therefore, undertaking the work alone is insufficient.[41] *Delivery of the completed work constitutes the definitive provision of the service by the contractor.* For that reason, the doctrine has placed considerable emphasis on the element of delivery when discussing the concept of the work contract as a central element of the contractor's *564 obligation.[42] The same occurs in the Spanish Supreme Court's case law. [43]

As a consequence of the importance of the result in this contract, some writers have emphasized that, more than executing the work, the contractor's *main* duty is, precisely, *to deliver* the executed work. Castán Tobeñas explains that "the provision of the thing (duly made), that is, its *alienation*, appears as the *main performance*, and the realization of the thing is just the *means* to make it possible". (Emphasis added). [44]

That is to say, work on the project is the means, but its delivery is the object. For Martínez Mas, the delivery of the work is an inherent part of its completion and, therefore, of the fulfilment of the obligation by the contractor. [45] The writer tells us that "[t]he *last obligation of the contractor in the final phase of the fulfillment of the contract*, *is the delivery of the work to the promoter*". (Emphasis added). [46] It should be noted that the client's obligation to pay *does not arise when the contractor completes the work, but rather, indeed, when it is delivered* and accepted by the client. *565

The work contract is "a bilateral contract. That is to say, that the persons who enter into it impose mutual obligations on one another". [47] By their very nature, the considerations in the work contract are of a temporary nature. First, the contractor must execute and deliver the work. Only then does an obligation to accept and pay for it arise on the client's part. As Lete del Río and Lete Achirica explain, acceptance of the work is "another of the client's obligations, *relating* to that of the contractor to *deliver* the work". (Emphasis added). [48] The Spanish Supreme Court reached the same conclusion:

> [T]he work contract ... is a bilateral contract that creates reciprocal obligations, in which the contractor's claim is not broadly limited to the client's payment of the price, but rather to a consideration, i.e. to the performance of the payment of the price *in exchange for its performance of the delivery of the executed project*. (Emphasis added). [49]

As we have said, the main contractor's main duty under the work contract is the creation and delivery of a specific *result*. [50] This is precisely what differentiates it from the contract for services. In this connection, Vélez Torres demonstrates to us that in a contract for services "what is promised by the contractor is the *energy of labor*, while what is promised in [work contract] is the project or the *final result of the work*". (Emphasis added). [51] Puig Peña is of the same opinion: "[T]he contractor promises not only its labor, but rather the result *566 thereof."[52]

Certified to be a correct and true translation from the source text in Spanish to the target language English.
28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.
. © 2020 Thomson Reuters. No claim to original U.S. Government Works. 14

This corresponds to the consideration that the client must provide, given that, in addition to paying the agreed price, it must *accept* the project. In other words, rather than paying a certain price for an effort made, in the work contract, the client makes a payment to the contractor for a result delivered and accepted. Scientific doctrine unanimously distinguishes the work contract from the contract for services, establishing clearly the difference between the result to be delivered and the effort made.[53] The same is true in Spanish case law.[54]

As Puig Brutau explains, the foregoing stems from the fact that, in the work contract, the contractor carries out its work "independently".[55] Therefore, what it owes the client is not an effort made but an end result. This is compatible with what **\*567** Castán Tobeñas states concerning the fact that the execution of the project is merely the means to the end of its delivery.[56]

In the same vein, Puig Brutau explains that work contracts and sales contracts differ because in the former the result delivered is a "new thing" or "*recently made*" item. (Emphasis added).[57] In other words, in the work contract, the result delivered cannot be a generically prefabricated work, but must be the product of a specific commission.[58] *But neither does it necessarily have to be carried out after the contract has been concluded*; it is sufficient for it to be a work of recent production. The essential thing is that the main performance of the delivery of the result is made after the contract has been perfected. The respective obligations will be extinguished with the delivery of the ordered result, the acceptance of the work and the payment of the agreed price, provided that what is delivered is in conformity with the commission assigned in the contract.[59]

This is in keeping with the independent nature of the contractor's work. Therefore, the Civil Code provides that if the work is destroyed before delivery, the loss will be at the expense of the contractor and not of the client, unless the latter has defaulted on the acceptance **\*568** of the project or the client supplied defective materials.[60]

Prior to delivery and acceptance, the *work* done by the contractor belongs to it and it can only claim payment from the client in very specific cases.[61] As González Poveda explains: "[I]t is understood that, *as long as the delivery has not taken place, the thing is the property of the contractor*, and therefore the contractor shall bear the risks thereof the delivery in accordance with the general principle of law that *owners* bear the costs of destroyed items." (Emphasis added).[62] According to Martínez Mas, the discussion of risk is tied to the very nature of the construction lease, which, as we have seen, is based more on the result delivered than on the labor employed. The writer says:

> The reason why the builder assumes the risks for [the] destruction of the work before its delivery, is that, in the work contract, the builder's remuneration is not for the labor used and the materials incorporated in the work, but for the conclusion of the work, so it seems logical that it bears the risk of its failure or the loss of the work almost finished *or even completed*, but not yet *delivered.* (Emphasis added).[63]

If any of the parties fails to fulfil their respective obligations, they may exercise the powers conferred on them by contract law, such as requesting termination or **\*569** specific performance of the obligation, among others.[64] As we stated in *Master Concrete Corp. v. Fraya, S.E.*, "[o]nce a work contract has been perfected - just like in any type of contract - the parties are bound by what has been expressly agreed."[65] If, for example, the work is not in conformity with the contract, it is up to the court to determine the appropriate remedy, depending on the seriousness of the breach.[66] The same applies if a specific condition of the contract, such as the period for carrying out the work, is of an essential nature.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

## IV

In the instant case, the work contract was concluded on July 16, 2002 in accordance with the rules applicable to municipal contracts. There is no doubt that it satisfied all the form requirements laid down in the Autonomous Municipalities Act and the case law. The contractor had from July 16 until August 14, 2002 to fulfil its contractual obligation. That is, the contractor had to provide the performance of the *delivery of the work* within that period of time. In fact, the contractor tried to deliver its work on July 31 **\*570**

The independent work carried out by the contractor before handing over the work to the Municipality was undertaken between June 25 and 28, 2002, approximately two weeks before the contract was perfected. As asserted in the claim, the work carried out on those days corresponds to the work indicated in tender 02-30, after notice of its award was issued on June 4, and in the contract perfected on July 16. [67] It was also argued that the work corresponds to what the doctrine classifies as "recently made" work, given the temporal proximity between the work done and the perfection of the contract, as well as the fact that the work done was the one specifically commissioned in the tender and in the contract, and not a generic work as in a sale.

The performance to which the contractor committed itself on July 16, as part of a work contract, was *the delivery of the completed work.*

It was not necessary, as a constituent element of the cause of action, that the work that produced that project be done after the perfection of the contract. It was enough for the work to be "*recently made*". [68] In this case, the work was done shortly before the contract was perfected. On July 31, during the term of the contract, the contractor fulfilled its obligation: it delivered the assigned project. It was then incumbent upon the **\*571** client to fulfill theirs: acceptance of the project and payment of the agreed price.

The claim in the instant case was summarily dismissed, on the grounds that granting relief was not justified. The Trial Court saw no evidence of the intention of the parties or of the essential nature of the term laid down in the contract. The majority erred by going into the merits of the dispute and holding that, as a matter of fact, the contractor failed to perform an essential element of the contract, when no evidence to that effect was introduced.

In view of the fact that the requirement of non-retroactivity is not established in the Autonomous Municipalities Act, that the obligation was fulfilled after the contract was concluded in writing and that no evidence was presented concerning the intention of the parties that would allow for the finding that an essential condition of the contract had been breached, I would reverse the summary judgment and remand the case back to the Trial Court to hold a trial on its merits.

### Footnotes

1     The contract provides that it would be in force from July 16, 2002 to August 14, 2002.

2     The lower courts made no factual determination on this claim, as the Trial Court dismissed the suit granting summary judgment.

3     The works were carried out on June 25, 26, 27 and 28, 2002.

4     The contract signed on July 16 provided for the delivery of partial certifications that had to be approved by a representative of the Municipality. However, since in this case there was no presentation of evidence, and no trial on its merits, it is not known whether this contractual obligation was of an essential nature.

5     It also presented an additional certification claiming the 10% of the agreed price retained by the municipality to cover possible imperfections and defects of the work.

6     Order of the Court of Appeals, p. 2; Appendix to *Certiorari* petition, p. 160.

7     Nor was there any dispute concerning the fact that the work done two weeks in advance was *the same* as agreed in the July 16 contract. Similarly, ALCO acknowledges that if the contract had not been executed on July 16, in compliance with the requirements of form of the municipal procurement law, it would not be able to demand payment for the work performed. Its argument focuses on the fact that, once the contract had been perfected in writing and the other form requirements had been satisfied, they could demand the corresponding consideration from the municipality, to pay it for the work done in advance.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

8   *Certiorari* petition, p. 5.

9   Opposition to the *Certiorari* petition p. 4.

10  Id., p. 5.

11  21 L.P.R.A. sec. 4051; *Johnson & Johnson v. Mun. de San Juan*, 172 D.P.R. 840, 852 (2007); *Cordero Vélez v. Mun. de Guánica*, 170 D.P.R. 237, 248 (2007); *Colón Colón v. Mun. de Arecibo*, 170 D.P.R. 718, 725 (2007).

12  *Mun. Quebradillas v. Corp. Salud Lares*, 180 D.P.R. 1003 (2011); *Fernández & Gutiérrez v. Mun. San Juan*, 147 D.P.R. 824, 830 (1999); *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1006 (1994).

13  *Mun. de Quebradillas v. Corp. Salud Lares*, supra, p. 1013. The requirement to transmit a copy of the contract to the Comptroller does not invalidate the legal transaction, but it does prevent performance from being demanded until it has been complied with. Id. See also, *Lugo v. Municipio Guayama*, 163 D.P.R. 208, 215 (2004).

14  *Mun. de Quebradillas v. Corp. Salud Lares*, supra, p. 1014.

15  *Colón Colón v. Mun. de Arecibo*, supra, pp. 725-726.

16  *Fernández & Gutiérrez v. San Juan*, supra, p. 833.

17  Majority opinion, p. 538; *Colón Colón v. Mun de Arecibo*, supra, p. 724.

18  *Mun. de Quebradillas v. Corp. Salud Lares*, supra, p. 1015; *Johnson & Johnson v. Mun. de San Juan*, supra, p. 852. See also *Hatton v. Mun. de Ponce*, supra, p. 1005. "[T]he legal precepts governing economic relations between private entities and municipalities are of great public interest and aim to promote sound and honest public administration".

19  *Mun. de Quebradillas v. Corp. Salud Lares*, supra, p. 1017.

20  *Cordero Vélez v. Mun. de Guánica*, supra, p. 245; *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864, 871 (1990).

21  *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, supra, p. 871.

22  *Mun. de Quebradillas v. Corp. Salud Lares*, supra, p. 10; *Hatton v. Mun. de Ponce*, supra, p. 1006.

23  *Colón Colón v. Mun de Arecibo*, supra, p. 727.

24  See id., p. 731.

25  Id., p. 726, citing *Cordero Vélez v. Mun. Guánica*, supra, p. 248; *Quest Diagnostics v. Mun. San Juan*, 175 D.P.R. 994 (2009). Disputes related to *verbal* contracts with municipal entities have been the main generator of our case law in this area and we have consistently refused to give effect to these agreements. See, for example: *Mun. de Quebradillas v. Corp. Salud Lares*, supra; *Colón Cólon v. Mun. de Arecibo*, supra; *Fernández & Gutiérrez v. Mun. San Juan*, supra; *Morales v. Municipio de Toa Baja*, supra. On the other hand, in those cases where the contract is in writing and the other requirements of form were met, we have upheld the agreed obligations. See, for example, *Johnson & Johnson v. Mun. de San Juan*, supra.

26  *Johnson & Johnson v. Mun. de San Juan*, supra, p. 853. See also *Fernández & Gutiérrez v. Mun. San Juan*, supra, p. 833.

27  *Johnson & Johnson v. Mun. de San Juan*, supra, p. 855.

28  *De Jesús González v. A.C.*, 148 D.P.R. 255, 267 (1999).

29  Majority opinion, p. 533.

30  There is nothing to prevent the addition of formal elements to municipal procurement by way of regulation. However, that is not the case before us. The dispute in the case was limited to the interpretation of Act No. 81 and the constitutive requirements set out in that statute.

    The majority opinion proposes that the principle of non-retroactivity can be inferred from Article 6 of Chapter IX of the Municipal Administration Regulations of the Office of the Commissioner for Municipal Affairs (O.C.A.M.). Majority opinion, pp. 550-551. However, the majority itself recognizes that it was the *previous* Regulations, the O.C.A.M. Regulations on Basic Rules, which contained this express prohibition. In other words, the current regulations removed the absolute prohibition on retroactive contracting that the repealed one established. I do not think that this history allows us to say that the current regulation contains a similar prohibition.

31  J.M. Lete del Río and J. Lete Achirica, *Law of Obligations: Contracts*, Navarra, Ed. Thomson/Aranzadi, 2006, Vol. II, p. 515; F. Martínez Mas, *The work contract analyzed for builders and promoters*, Valencia, Ed.

Certified to be a correct and true translation from the source text in Spanish to the target language English.
28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556
By Targem Translations Inc.

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Cisspraxis, 2000, p. 15.

32  *Master Concrete Corp. v. Fraya, S.E.*, 152 D.P.R. 616, 623 (2000). The work contract is covered in Articles 1480 to 1492 of the Civil Code, 31 L.P.R.A. secs. 4121–4133.

33  J. Puig Brutau, *Principles of Civil Law*, Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, p. 438. See also J.R. Vélez Torres, *Civil Law Course: Contract Law*, San Juan, Ed. Rev. Jur. U.I.P.R., 1990, T. IV, Vol. 2, p. 326.

34  See: M. Albaladejo, *Civil Law*, 8th ed., Barcelona, T. II, Vol. 2, p. 309 ("[A] result is promised in the [work contract]" (emphasis in the original)); J.M. Manresa Navarro, *Commentary on the Spanish Civil Code*, 5th ed., Madrid, Ed. Reus, 1950, T. X, p. 894; J. Santamaría Ansa, *Commentary on the Civil Code*, Madrid, Ed. Journal of Private Law, 1958, T. II, p. 637; P. González Poveda in I. Sierra Gil de la Cuesta, *Commentary on the Civil Code*, Barcelona, Ed. Bosch, 2000, T. IV, p. 620; M. Medina De Lemus, *Civil law: obligations and contracts*, Madrid, Ed. Dilex, 2005, T. II, Vol. 2, p. 145 (who emphasizes that such an act result entails something "complete and finished, regardless of the work or time it took to obtain it"); Lete del Río and Lete Achirica, *op. cit.*, p. 515; R. Hernández Bobadilla, *Work contracts and their regulation in Guatemalan legislation*, Guatemala, Ed. U. San Carlos, 1966, p. 17; Martínez Mas, *op. cit.*, p. 18 (who emphasizes that this is a "specific result").

35  See: Judgement of May 10, 1997; Judgement of January 30, 1997, No. 845/1997 Repertorio de Jurisprudencia Aranzadi 1320; Judgement of November 4, 1989; Judgement of May 30, 1987; Judgement of November 6, 1982; Judgement of December 19, 1964, No. 5900/1964 Repertorio de Jurisprudencia Aranzadi 3600; Judgement of November 23, 1964, No. 5453/1964 Repertorio de Jurisprudencia Aranzadi 3294, where the concept of result is connected with that of purpose.

36  According to the Spanish Royal Academy, the word *result* means "[e]ffect and consequence of an event, operation or deliberation". Spanish Royal Academy, *Dictionary of the Spanish Language*, 22nd ed., Madrid, Ed. Espasa Calpe, 2001, T. II, p. 1962.

37  *Master Concrete Corp. v. Fraya, S.E.*, supra, p. 624. See also, Albaladejo, *op. cit.*, p. 317.

38  Puig Brutau, *op. cit.*, p. 468; F. Puig Peña, *Treatise on Spanish Civil Law*, Madrid, Ed. Journal of Private Law, 1951, T. IV, Vol. 2, p. 302.

39  *Master Concrete Corp. v. Fraya, S.E.*, supra, p. 624, citing Albaladejo, *Civil Law, op. cit.*, p. 49. Article 1491 of the Civil Code provides: "In the absence of any contrary agreement or custom, the price of the work shall be paid on delivery." (Emphasis added). 31 L.P.R.A. sec. 4132. As can be seen, in the construction lease the crucial moment of performance is the delivery and acceptance of the work, not the moment when the work was performed.

40  Martínez Mas, *op. cit.*, p. 45: "The builder's two fundamental obligations are: to carry out the work as agreed and to deliver it." See also Hernández Bobadillo, *op. cit.*, p. 17.

41  As Medina de Lemus explains: "The contractor's *first obligation* is to carry out the work under the agreed conditions." (Emphasis added). Medina de Lemus, *op. cit.*, p. 146. See also: Albaladejo, *op. cit.*, p. 317; Hernández Bobadillo, *op. cit.*, p. 17 ("[The promise of the result] consists, *firstly*, in an act of production or creation in the proper sense, that is to say ... in the realization of a work" (emphasis added).

42  González Poveda, *op. cit.*, p. 666: "Once the work has been completed, the contractor is obliged to deliver it in the agreed manner and within the agreed time"; Medina de Lemus, *op. cit.,* p. 149: "Obviously the work must be delivered once it has completed"; Albaladejo, *op. cit.*, p. 317; Manresa y Navarro, *op. cit.,* p. 918, emphasizing the importance of delivery; Santamaría, *op. cit.*, p. 636-637.

43  Judgment of April 18, 1979, No. 1406/1979 Repertorio de Jurisprudencia Aranzadi 1156, explaining that the client's obligation to pay for the work is "in exchange for [the contractor's] *delivery* of the work performed". (Emphasis added). Judgment of October 26, 1978, No. 3286/1978 Repertorio de Jurisprudencia Aranzadi, in which the Spanish Supreme Court held that there is no obligation of acceptance if the contractor did not comply with "the obligation to deliver [work] in the agreed time and form". Judgment of February 5, 1975, No. 330/1975 Repertorio de Jurisprudencia Aranzadi 252: "[The contractor] did not comply with its obligation to deliver the work within the agreed time." (Emphasis added). See also: Judgment of January 30, 1997, No. 845/1997 Aranzadi Court Reports; Judgment of June 1, 1982, No. 3401/1982 Repertorio de Jurisprudencia Aranzadi.

44  J. Castán Tobeñas, *Spanish Civil Law, common and statute*, 9th ed., Madrid, Ed. Reus, 1961, T. IV, p. 455.

45  Martínez Mas, *op. cit.*, p. 50.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
© 2020 Thomson Reuters. No claim to original U.S. Government Works.     18

46  Id.

47  Id.

48  Lete del Río and Lete Achirica, *op. cit.*, p. 521.

49  Judgment of April 18, 1979, No. 1406/1979 Repertorio de Jurisprudencia Aranzadi 1156.

50  Puig Brutau, *op. cit.*, p. 299.

51  See Vélez Torres, *op. cit.*, p. 325.

52  Puig Peña, *op. cit.*, p. 299.

53  Santamaria, *op. cit.*, p. 637: "The main difference between a work contract (*locatio operis*) and a contract for services (*locatio operarum*) is in its economic aspect, since it is the *time* that is remunerated in an employment contract while it is the *result* that is remunerated in a work contract." (Emphasis added). Lete del Río y Lete Achirica, *op. cit.*, p. 515: "What characterizes this contract is that *the businessperson or contractor undertakes to provide not the labor as such, but the result thereof (the work)*, without regard to the effort required to obtain it." (Emphasis added). The author even points out that, except in particular cases where the personal characteristics of the contractor were the main factor in its selection, it is not necessary for the work to have been done by the contractor; Castán Tobeñas, *op. cit.*, p. 454: "The real distinguishing mark of the business contract is, as we have already seen, that what is promised and what constitutes its object is not the energy of the labor or the labor as such (as is the case in the contracts for services), but the work or *result* of the labor." (Emphasis in the original.) See also: Albaladejo, *op. cit.*, p. 309; Manresa y Navarro, *op. cit.*, p. 923.

54  Order of the Spanish Supreme Court of June 10, 1975, No. 3265/1975 Repertorio de Jurisprudencia Aranzadi 2407. According to the Spanish Supreme Court, the difference between the contract for services and the work contract:
"... lies in the immediate object of the contractors' obligation, so that if it undertakes to provide services or work or an activity in itself, not the result, which that service produces, the contract is for services and, on the other hand, if it undertakes to provide a result, regardless of the work that creates it, the contract is for work." See also, Judgment of February 10 1987, Repertorio de Jurisprudencia Aranzadi 703.

55  Puig Brutau, *op. cit.*, p. 439.

56  Castán Tobeñas, *op. cit.*, p. 455.

57  Puig Brutau, *op. cit.*, p. 439 Doctrine has deepened the differences, but above all the similarities, between the sales contract and the work contract. Many writers emphasize the fact that while more importance is given to the material used in the work and less importance is given to the work done, the rules of the sales contract will apply, particularly when the material used *is the contractor's own*. See M. Medina de Lemus, *op. cit.*, p. 145. In these cases, many speak of a mixed works and sales contract. See: Manresa y Navarro, *op. cit.*, p. 914; Castán Tobeñas, *op. cit.*, pp. 454–455; J. Santamaria, *op. cit.*, p. 637. In particular, Castán Tobeñas explains that a certain sector of the doctrine is of the opinion "that the contract by which the worker provides the material is, in general, a sale of a future thing, but it will be a contract for labor if the materials are only incidental". (Emphasis added). Castán Tobeñas, *op. cit.*, p. 455. Vélez Torres points out that the line between work contracts and sales contracts is "very blurred". Vélez Torres, *op. cit.*, p. 326.

58  Vélez Torres, *op. cit.*, p. 327.

59  Id., p. 332.

60  Articles 1481–1482 of the Civil Code, 31 L.P.R.A. secs. 4122–4123.

61  One such scenario is when the clients terminates the project while it is in progress. In these cases, the client will have to pay all the expenses, works and utility that could be obtained from the project. Article 1486 of the Civil Code, 31 L.P.R.A. sec. 4127.

62  González Poveda, *op. cit.*, p. 625. This idea comes from the maxim *res perit domino.* C. Gómez Estrada, *Principal Civil Contracts*, 3rd ed., Bogotá, Ed. Temis, 1999, p. 322. It should be clarified that, for work on immovable property owned by the client, the contractor's title is limited to the work itself and not to the property on which it is carried out. On the other hand, in the case of movable property created in its entirety by the contractor, regardless of the ownership of the materials used, the ownership of the entire property is vested in the contractor.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*
.                           © 2020 Thomson Reuters. No claim to original U.S. Government Works.                           19

Case: 17-03283-LTS Doc#: 2523-2 Filed: 11/09/22 Entered: 11/09/22 18:44:28 Desc:
Exhibit 2   Page 21 of 22

63  Martínez Mas, *op. cit.*, p. 27 See also, Santamaría, *op. cit.*, pp. 636–637, Castán Tobeñas, *op. cit.*, p. 459; Hernández Bobadilla, *op. cit.*, p. 20.

64  Id.  The defenses of *exceptio non adimpleti contractus* and *exceptio non rite adimpleti contractus* will also be available. See Puig Peña, *op. cit.*, p. 308. The client's acceptance of the work requires that it be "well finished". Id., p. 303. See also González Poveda, *op. cit.*, p. 687; Judgment of the Spanish Supreme Court of April 18, 1979, Repertorio de Jurisprudencia Aranzadi 1406.

65  *Master Concrete Corp. v. Fraya, S.E.*, supra, pp. 624-625.

66  In the present case, it would be for the Court of First Instance, after interpreting the contract and assessing the intention of the parties, to determine whether the failure to deliver partial certifications constitutes a substantial breach of contract and whether the work is in fact in conformity with the contract. To these ends, see Martínez Mas, *op. cit.*, p. 63, and its discussion on partial certifications. See also Judgment of the Spanish Supreme Court of July 22, 1997, No. 5806/1997 Repertorio de Jurisprudencia Aranzadi. It would also be up to the court to determine whether the work is actually in line with the contract's stipulations.

67  This does not take away any claims the municipality may have as to whether the contractor's performance is defective, incomplete or deviated from what was agreed. At this time we are limiting ourselves to analyzing whether there is a cause of action. It is up to the primary forum to elucidate the merits of this case in particular.

68  We are aware of the problems that can arise in cases where a contractor carries out its work before its contract is put in writing. Municipalities undoubtedly have an important interest in being able to regularly inspect the work while it is being carried out, to ensure that the contract specifications are being met and to prevent the work from being illegally subcontracted, among other things. However, the protection of this interest does not require the conclusion, at the outset and in an absolute manner, that *there is no cause of action in the contractor's favor*. It is appropriate to examine the merits of the case in a plenary trial to determine what, how and when the work was carried out, what the intentions of the parties were, and what the relationship is between what was contracted and what was executed. None of the above assumes that the contractor should prevail on the merits, but merely that it is entitled to its day in court to prove that it delivered what was ordered.

---

**End of Document**                                              © 2020 Thomson Reuters. No claim to original U.S. Government Works.

*Certified to be a correct and true translation from the source text in Spanish to the target language English.*
*28/SEPTEMBER/2020 - Andreea I. Boscor ATA-certified Spanish-English #525556*
*By Targem Translations Inc.*



718.384.8040
TargemTranslations.com
projects@targemtranslations.com
185 Clymer St. Brooklyn, NY 11211

**TRANSLATOR'S CERTIFICATE OF TRANSLATION**

Translation from: Spanish (Puerto Rico) into English (US)
TARGEM Translations Inc.

I, Andreea I. Boscor, ATA-certified Spanish-English #525556, acting as translator at TARGEM Translations Inc., a NEW YORK City corporation, with its principal office at 185 Clymer Street, Brooklyn, NY, 11211, USA, certify that:

> the English translated document is a true and accurate translation of the original Spanish and has been translated to the best of my knowledge.

Original Document Name: Alco Corp v Mun de Toa Alta

Signed this 28th day of September 2020



_____
Andreea I. Boscor

