# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY,<br><br>                  Debtor. | PROMESA<br><br>Title III<br><br>No. 17 BK 3567-LTS<br><br>**RE: Dkt. No. 1424[2]** |

## OPPOSITION OF HTA/CCDA PSA CREDITORS TO VAZQUEZ VELAZQUEZ GROUP'S MOTION FOR STAY PENDING APPEAL

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Unless otherwise noted herein, all docket references refer to the docket for HTA.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND ................................................................................................................... 2

      A.    HTA Commenced a Title III Proceeding.................................................... 2

      B.    The HTA Plan Support Agreement........................................................... 3

ARGUMENT ........................................................................................................................ 4

    I.    The Vazquez Velazquez Group Do Not Satisfy the Criteria for a Stay
Pending Appeal ........................................................................................ 4

      A.    The Vazquez Velazquez Group Fail to Show a Likelihood of
Success on the Merits................................................................ 5

      B.    The Vazquez Velazquez Group Fail to Establish Irreparable Harm
Absent a Stay ........................................................................... 7

      C.    Granting a Stay Will Inflict Substantial Harm on Other Interested
Parties ...................................................................................... 8

      D.    The Public Interest Disfavors a Stay......................................... 10

    II.    ANY STAY SHOULD BE CONDITIONED ON A SIGNIFICANT
BOND ..................................................................................................... 11

CONCLUSION.................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Acevedo-Garcia v. Vera-Monroig*,
  296 F.3d 13 (1st Cir. 2002) ................................................................. 6

*Betteroads Asphalt, LLC v. FirstBank P.R. (In re Betteroads Asphalt, LLC)*,
  2020 WL 3125274 (D.P.R. Jun. 12, 2020) ........................................ 7

*Common Cause Rhode Island v. Gorbea*,
  970 F.3d 11 (1st Cir. 2020) ............................................................... 10

*Doe #1 v. Trump*,
  957 F.3d 1050 (9th Cir. 2020) ........................................................... 7

*In re Abengoa Bioenergy Biomass of Kan., LLC*,
  2018 WL 1613667 (Bankr. D. Kan. Mar. 29, 2018) ......................... 9

*In re Adelphia Commc'ns Corp.*,
  361 B.R. 337 (S.D.N.Y. 2007) .......................................................... 9, 12

*In re Calpine Corp.*,
  2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ......................... 7

*In re DJK Residential, LLC*,
  2008 WL 650389 (S.D.N.Y. Mar. 7, 2008) ....................................... 12

*In re Fin. Oversight and Mgt. Bd. for Puerto Rico*,
  588 F. Supp. 3d 191 (D.P.R. 2022) ................................................... 9, 10

*In re Fraterfood Serv., Inc.*,
  2015 WL 5317601 (Bankr. D.P.R. Sept. 11, 2015) .......................... 9

*In re Gen. Motors Corp.*,
  409 B.R. 24 (Bankr. S.D.N.Y. 2009) ................................................ 12

*In re MEDSCI Diagnostics, Inc.*,
  2011 WL 280866 (Bankr. D.P.R. Jan. 25, 2011) .............................. 4

*In re N.Y. Skyline, Inc.*,
  520 B.R. 1 (S.D.N.Y. 2014) ............................................................... 11

*In re Retail Grp., Inc.*,
  2021 WL 2188929 (Bankr. E.D. Va. May 28, 2021) ......................... 8

*In re Sabine Oil & Gas Corp.*,
  548 B.R. 674 (Bankr. S.D.N.Y. 2016) ............................................... 7, 9

ii

*In re Tribune Co.*,
    477 B.R. 465 (Bankr. D. Del. 2012) .................................................................. 8, 12

*In re Tribune Media Co.*,
    799 F.3d 272 (3d Cir. 2015) .................................................................................. 11

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012) ................................................................................ 7, 11

*In re Yellowstone Mt. Club, LLC*,
    2009 WL 2163528 (Bankr. D. Mont. July 16, 2009) ............................................. 10

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................................ 4

*Rio Grande Cmty. Health Ctr., Inc. v. Armendariz*,
    792 F.3d 229 (1st Cir. 2015) ................................................................................ 5, 7

*Sindicato Puertorriqueno de Trabajadores v. Fortuno*,
    699 F.3d 1 (1st Cir. 2012) ........................................................................................ 5

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ...................................................................................................... 8

## Rule and Statutes

Fed. R. Bankr. P. 8007(a) ....................................................................................... 11

Fed. R. Civ. Proc. 62 ................................................................................................ 11

PROMESA § 209 ...................................................................................................... 10

66157944.v6

To the Honorable United States District Court Judge Laura Taylor Swain:

Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. ("AGM", and together with AGC, "Assured"), Ambac Assurance Corporation ("Ambac"), and National Public Finance Guarantee Corporation ("National") (collectively the "HTA/CCDA PSA Creditors")[3] respectfully submit this joint opposition (the "Opposition") to the *Vazquez-Velazquez Group Request for Stay Pending Appeal of the Order and Judgment Approving the Plan of Adjustment of the Puerto Rico Highway and Transportation Authority* (Dkt. No. 1424) (the "Motion") filed by certain current and former employees (collectively, the "Vazquez Velazquez Group") of the Puerto Rico Highway and Transportation Authority ("HTA").  The Vazquez Velazquez Group ask the Court to stay the Order and Judgment (Dkt. No. 1415) (the "Confirmation Order") confirming the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highway and Transportation Authority* (Dkt. No. 1404) (the "Plan"). In support of the Opposition, the HTA/CCDA PSA Creditors rely on and incorporate by reference a declaration of Christine Song (the "Song Declaration"), attached as **Exhibit A**, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Vazquez Velazquez Group's extraordinary request to delay the implementation of the Plan should be denied.  After more than five years of litigation and mediation, hundreds of millions of dollars of corresponding expenses, and hard-fought settlement negotiations that resulted in a plan support agreement that settled the outstanding disputes between HTA, the Commonwealth, and the HTA/CCDA PSA Creditors, HTA is finally in a position to emerge from

---

[3] The HTA/CCDA PSA Creditors do not assume any fiduciary or other duties to each other or to any other entity or individual.

Title III proceedings with a significantly reduced and sustainable debt load and a plan to restructure its transportation assets for the benefit of the people of Puerto Rico.

2.     The Motion's request to delay that emergence requires an extraordinary showing of the necessity of the stay.  But the Vazquez Velazquez Group have not even begun to make any such showing.  They cannot show any likelihood of success on the merits.  And they cannot show that any harm they might suffer would outweigh the irreparable injuries that delay would inflict on HTA, its non-moving creditors, and the people of Puerto Rico.  Even if only quantifiable damages are considered, and then only those of bondholders, the requested stay will inflict millions of dollars in losses.  As a result, even if the Vazquez Velazquez Group could show that a stay is warranted, they would necessarily need to post a bond in at least that amount to protect affected parties in the probable event that their appeal is unsuccessful.  But their Motion does not even mention that fundamental requirement, let alone explain, as they must, how they can satisfy it.

3.     The Motion should be denied so that the Plan can become effective without delay.

**BACKGROUND**

**A.  HTA Commenced a Title III Proceeding**

4.     On May 3, 2017, the Commonwealth of Puerto Rico, through the Financial Management and Oversight Board for Puerto Rico (the "FOMB"), filed a petition to adjust its debts under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").  *Findings of Fact and Conclusions of Law in Connection with the Confirmation of the Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority*, Dkt. No 1416 ("FFCL") ¶ 9.  Shortly thereafter, on May 17, 2017, HTA, through the FOMB, filed a petition to adjust its debts under Title III of PROMESA.  FFCL ¶ 10. At the time, HTA was in dire financial straits and without a solid plan for a recovery absent court

2

intervention. *See Disclosure Statement for the Third Amended Title III Plan of Adjustment for the Puerto Rico Highways and Transportation Authority* (the "Disclosure Statement") at 68.  Since July 2017, it had ceased making debt-service payments on its outstanding bonds,[4] which amounted to approximately $4.3 billion in aggregate principal amount of bonds outstanding as of the HTA petition date. *See id.* at 46-47.

### B. The HTA Plan Support Agreement

5.      The commencement of Title III proceedings for the Commonwealth and its instrumentalities kicked off litigation from various creditor constituencies, several rounds of mediation, and multiple false starts at reaching a creditor consensus through plan support agreements.  Ultimately, in Spring 2021, HTA, the Commonwealth, Assured, and National entered into a plan support agreement (the "HTA/CCDA PSA") regarding the outstanding claims and disputes against the Commonwealth and HTA related to the HTA Bonds.  FFCL ¶¶ 14-15. Following additional negotiations with the FOMB, on July 15, 2021, FGIC and Ambac executed joinders to the HTA/CCDA PSA.  *Id*. at 16.  The HTA/CCDA PSA contemplated, among other things, the settlement of the HTA/CCDA PSA Creditors' claims related to the HTA Bonds through two separate plans for HTA and the Commonwealth.

6.      On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (Dkt. No. 19813 in Case No. 17-3283).

---

[4] Collectively, the bonds issued by HTA pursuant to Resolution No. 68-18, adopted June 13, 1968, and the senior and the subordinated bonds issued by HTA pursuant to Resolution No. 98-06, adopted February 26, 1998 (the "HTA Bonds").

7.     On May 2, 2022, the FOMB filed an initial *Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* (Dkt. No. 1164).  FFCL ¶ 20.  Following additional negotiations by FOMB and settlements with HTA's other major creditor constituencies, on October 12, 2022, the Court entered an order (Dkt. No. 1415) confirming the *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highway and Transportation Authority* (the "Plan").  The Plan substantially reduces HTA's funded indebtedness.  FFCL ¶ 135.

8.     On October 24, 2022, the Vazquez Velazquez Group filed a notice of appeal and moved to stay the implementation of the Plan pending appeal.  Dkt. Nos. 1423, 1424.

## **ARGUMENT**

9.     The Vazquez Velazquez Group's Motion to stay implementation of the Plan pending their appeal should be denied.  The Vazquez Velazquez Group have failed to make a *prima facie* case justifying a stay, and the implementation of a stay would inflict significant harm on other parties, including the HTA/CCDA PSA Creditors, and disserve the public's interest by delaying HTA's emergence from Title III proceedings.  Even were this Court to enter a stay, it should condition any such stay on a substantial bond to protect from the harm flowing from a stay.

I.    **The Vazquez Velazquez Group Do Not Satisfy the Criteria for a Stay Pending Appeal**

10.     A stay pending appeal is an "extraordinary" remedy that "requires a substantial showing." *In re MEDSCI Diagnostics, Inc.*, 2011 WL 280866, at *3 (Bankr. D.P.R. Jan. 25, 2011). It "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted).

11.     To show that a stay pending appeal is warranted, the Vazquez Velazquez Group must carry a heavy burden.  They must demonstrate: (i) a "strong showing" of a likelihood of success on the merits; (ii) irreparable injury absent a stay; (iii) a lack of substantial harm to other

66157944.v6

interested parties; and (iv) the implementation of a stay is in the public interest.  *Rio Grande Cmty. Health Ctr., Inc. v. Armendariz*, 792 F.3d 229, 231 (1st Cir. 2015) (internal marks omitted).  The Vazquez Velazquez Group have not met their burden on any of such factors and thus have not proven that a stay is warranted.

### A.    The Vazquez Velazquez Group Fail to Show a Likelihood of Success on the Merits

12.    The Vazquez Velazquez Group have failed to show a likelihood of success on appeal or even identify a single plausible error for review.  *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 10 (1st Cir. 2012) ("To demonstrate likelihood of success on the merits, [a movant] must show 'more than mere possibility' of success —rather, they must establish a 'strong likelihood' that they will ultimately prevail.") (citations omitted).  Instead of attempting to show how they could possibly succeed on appeal in arguing that their claims are non-dischargeable, the Vazquez Velazquez Group merely repeat the same arguments that this Court has already rejected.  FFCL ¶¶ 47 n.12, 114 n.14.

13.    The Vazquez Velazquez Group assert that their claims against HTA fall into the narrow exception to discharge provided by PROMESA Section 7 because the HTA compensation at issue is mandated by certain federal health and safety regulations.  Motion ¶¶ 3, 8-12.  These arguments are mistaken.  As this Court ruled in connection with confirming the Plan, the Vazquez Velazquez Group's claim does not fall into any of the exceptions to discharge provided by sections 7, 204, or 305 of PROMESA, nor is the claim sufficiently connected to an HTA obligation that is protected from discharge.  FFCL ¶ 114 n.14.  Nothing in the Motion shows that the Court's reasoning was in error.  Rather, the Vazquez Velazquez Group simply aver that the "District Court misconstrued Movants' argument[]" that HTA complied with federal regulation requirements by paying its employees via Regulation 2-017 and, thus, must be exempted from discharge and

separately classified in the Plan.  Motion ¶ 12.  Again, the Movants are mistaken because this Court directly addressed this issue, finding that while HTA's compliance with federal laws and regulations is necessarily implemented by employees, the exceptions to discharge cannot be construed so broadly as to exempt all compensation related to such work from discharge because "[s]uch construction would severely undermine the ability of Puerto Rico to restructure and discharge its debts and achieve fiscal responsibility."  FFCL ¶ 114 n.14.  The Vazquez Velazquez Group cannot establish a substantial likelihood of success on appeal by simply stating, without support, that the Court misunderstood their argument and therefore they will have better luck on appeal.

14.     Moreover, the Vazquez Velazquez Group's likelihood of success is also extraordinarily remote under the circumstances of this appeal because they are not the holders of allowable claims, let alone non-dischargeable claims.  They filed claims in the United States District Court for the District of Puerto Rico (Case No. 15-1727) (the "District Court"), but such claims were dismissed by a final judgment of the District Court.  Motion ¶ 2.  While the Vazquez Velazquez Group have appealed such final judgment, its finality remains binding until vacated. Thus, the Vazquez Velazquez Group's purported claims have already been found to lack merit by two courts: the District Court entering final judgment and this Court in the Confirmation Order.

15.     The Vazquez Velazquez Group are unlikely to succeed on the merits of their appeal, and their stay request may be denied on that ground alone.  *See Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 (1st Cir. 2002) ("The sine qua non of the stay pending appeal standard is whether the movants are likely to succeed on the merits." (brackets omitted)).

**B.    The Vazquez Velazquez Group Fail to Establish Irreparable Harm Absent a Stay**

16.    A movant seeking a stay pending appeal bears the burden of establishing that they are likely to suffer irreparable injury during the pendency of the appeal.  *See, e.g., Rio Grande Cmty. Health Ctr.*, 792 F.3d at 231; *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (a movant bears the burden of establishing "irreparable injury is likely to occur during the period before the appeal is decided").  To support this factor, the Vazquez Velazquez Group state that if a stay is not granted, the First Circuit Court of Appeals will "likely dismiss their [pending] appeal due to equitable mootness."  *See* Motion ¶¶ 13-14.  Even if the Court chooses to accept such bald statements as fact, the argument fails as a matter of law.

17.    The majority of courts considering the issue have long held that the possibility that a matter of appeal may be mooted does not constitute irreparable harm.  *See, e.g.*, *Betterroads Asphalt, LLC v. FirstBank P.R. (In re Betterroads Asphalt, LLC)*, 2020 WL 3125274, at *10 (D.P.R. Jun. 12, 2020) ("[T]he potential mootness of matters on appeal is not sufficient to demonstrate 'irreparable harm.'"); *In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 682 (Bankr. S.D.N.Y. 2016) (noting that "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm.").  This is so because the risk of equitable mootness is present in every appeal of a confirmed plan.  *In re W.R. Grace & Co.*, 475 B.R. 34, 207 (D. Del. 2012); *In re Calpine Corp.*, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008).

18.    Further, the Vazquez Velazquez Group aver in their Motion that, if they are successful, the amount they will recover will not "derail" the Plan and that HTA will be able to pay the claim.  Motion ¶¶ 15-16.  This is tantamount to an admission that consummation of the Plan will not result in irreparable harm to the Vasquez Velazquez Group.  Indeed, the *only* irreparable harm alleged by the Vazquez Velazquez Group is the risk of mootness, which as shown

7

above does not constitute irreparable harm.  For this additional reason alone, the Motion should be denied.

19.     Furthermore, the Vazquez Velazquez Group do not have a present interest that may be injured.  The claims through which they object were dismissed by final judgment.  Motion ¶ 2. Only upon the unlikely and speculative success of a separate appeal will the Vazquez Velazquez Group have a ripened interest that may be harmed during the pendency of this appeal.  Such speculative, contingent and future harm is not the class of injury that merits the extraordinary relief of a stay pending appeal, especially where other parties in interest will suffer concrete, noncontingent and present harms from the stay.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (an injunction "will not be issued simply to prevent the possibility of some remote future injury" (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974))).

### C.     Granting a Stay Will Inflict Substantial Harm on Other Interested Parties

20.     To warrant a stay, the Vazquez Velazquez Group bear the burden of proving that a stay will not harm other parties.  *See In re Retail Grp., Inc.*, 2021 WL 2188929, at *10 (Bankr. E.D. Va. May 28, 2021) ("[N]on-moving parties do not bear the burden of proving the potential harm.  Rather, the movant has the burden of showing the absence of substantial harm." (internal quotation marks and brackets omitted)).  The Vazquez Velazquez Group fail to do so.  They argue that because the creditors of HTA have not been paid for over five years, a short postponement of the time when they would receive payment would not harm the creditors.  Motion ¶ 15.  This argument is inapposite.  *In re Tribune Co.*, 477 B.R. 465, 478 (Bankr. D. Del. 2012) (rejecting argument that "a stay maintaining the status quo would not harm the non-moving parties because this bankruptcy case has already been pending for four years").  Indeed, courts have found that a delay in distributions to creditors *is* a significant harm weighing against the imposition of stay

pending appeal. *See In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 588 F. Supp. 3d 191, 208 (D.P.R. 2022) (denying stay of Commonwealth plan and noting that "any further delay [of the distribution to creditors] is sufficient to outweigh the benefit gained by Movants from a stay"); *In re Fraterfood Serv., Inc.*, 2015 WL 5317601, at *2 (Bankr. D.P.R. Sept. 11, 2015) ("Delay caused to creditors receiving their payment is also a significant harm warranting denial of a stay."); *In re Abengoa Bioenergy Biomass of Kan., LLC*, 2018 WL 1613667, at *9 (Bankr. D. Kan. Mar. 29, 2018) ("Significant delay in the distribution to creditors under a plan constitutes substantial harm to other parties."); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007) (noting the "weighty interest[]" of "the right of the majority of creditors to receive their distributions").

21.     Here, a stay of the Plan's implementation will inflict substantial harm on other interested parties, including the HTA/CCDA PSA Creditors.  "Courts have recognized numerous harms resulting from the postponement of reorganization proceedings," including "lost strategic opportunities," "incurrence of administrative and professional expenses," "placing plan settlements in jeopardy," and "exposing the equity to be granted to non-moving creditors to market volatility and other risks." *In re Sabine Oil & Gas Corp.*, 548 B.R. at 683.  Unsurprisingly, a stay delaying HTA's emergence from Title III will cause all of these harms, and more.

22.     The most obvious and quantifiable harms that the HTA/CCDA PSA Creditors (along with other creditors) will suffer are (i) the cost arising from creditors' delayed opportunity to invest consideration that would otherwise be distributed to them under the Plan and (ii) the accrual of additional professional fees.  As detailed in the Song Declaration, each of these separate harms is substantial, and in combination they amount to several million dollars depending on the length of the stay.  *See* Song Declaration, Ex. A to the Opposition.

9

23. A stay pending appeal may also jeopardize the viability of the Plan itself.  *See In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 588 F. Supp. 3d at 207 (finding that delay in the effective date "could, at the very worst, undermine the Plan and cause it to unravel, undoing five years of extensive negotiations"); *In re Yellowstone Mt. Club, LLC*, 2009 WL 2163528, *4 (Bankr. D. Mont. July 16, 2009) ("[T]he possible failure of any plan of reorganization as a consequence of a stay constitutes a significant injury to creditors.").  Delaying the Plan for several months while an appeal is litigated creates a significant risk of undermining the Plan and HTA's reorganization efforts.  The Plan implements several settlements with HTA's creditors and contemplates the reorganizations of HTA's assets.  Delaying the implementation of the Plan for an unknown period of time may chill the interest of potential private partners and will delay new investment in HTA's highway assets.  Delayed investment means delays in repairs and in the creation of new value, for the benefit of the people of Puerto Rico.

**D.  The Public Interest Disfavors a Stay**

24. The Vazquez Velazquez Group do not even attempt to address whether the public interest weighs in favor of a stay.  *See Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020) (directing courts to consider "where the public interest lies" in stay analysis).  Indeed, they cannot do so because of the substantial public interests at play with a public entity like HTA and the public roads and highways it oversees.  Absent a stay, HTA will emerge from Title III proceedings with increased financial stability and a solid plan to restructure its assets.  It will be well-positioned to complete privatization efforts and maximize the return from any private concessions.  It will cut its funded indebtedness from $6.4 billion to $1.6 billion, reducing its overall debt by 75%.  FFCL ¶ 135.  HTA's emergence from Title III proceedings will bring the Commonwealth closer to ending the FOMB's oversight.  PROMESA § 209.  A stay pending appeal will jeopardize all of that—putting at risk the success of the Plan.

II.     **ANY STAY SHOULD BE CONDITIONED ON A SIGNIFICANT BOND**

25.     "Courts may condition stays of plan confirmation orders pending appeal on the posting of a supersedeas bond." *In re Tribune Media Co.*, 799 F.3d 272, 281 (3d Cir. 2015); *see* Fed. R. Bankr. P. 8007(a); Fed. R. Civ. Proc. 62. "The purpose of requiring such a bond in a bankruptcy court is to indemnify the party prevailing in the original action against loss caused by an unsuccessful attempt to reverse the holding of the bankruptcy court." *In re Tribune Media Co.*, 799 F.3d at 281 (internal marks and citations omitted). "If the movant seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *In re W.R. Grace & Co.*, 475 B.R. at 209 (internal marks and citations omitted).

26.     The Vazquez Velazquez Group do not address the need to pose a satisfactory bond or attempt to explain why the full security bond requirement should not apply here. Tellingly, they ignore the issue completely. The stay request should be denied for this additional reason alone. *See In re N.Y. Skyline, Inc.*, 520 B.R. 1, 14 (S.D.N.Y. 2014) ("[T]he failure of a party to address its burden with respect to a bond may weigh against granting a stay.").

27.     But even were this Court to enter a stay, it should condition the stay on a bond of at least $55 million to address the harm to the HTA/CCDA PSA Creditors. *See* Song Declaration ¶ 6. That figure represents the additional professional fees and the cost arising from creditors' delayed opportunity to invest Plan consideration that the HTA/CCDA PSA Creditors will incur if a stay pending appeal delays HTA's emergence from Title III proceedings by 13 months (the First Circuit's average time to decide an appeal). *See* Song Declaration ¶ 7; *see In re Tribune Media Co.*, 799 F.3d at 282 (approving bond valuation based on "additional professional fees, opportunity costs to creditors who would receive delayed distributions . . . or delayed interest and principal payments . . . , and a loss in market value to equity investors caused by the delayed emergence" as

11

"well-considered"). Although there is no guarantee the First Circuit would expedite the Vazquez Velazquez Group's appeal, the Court should, at a minimum, require a bond of $26 million if it assumes expedition and final resolution of the appeal in six months. *See* Song Declaration ¶ 7.

28. These proposed bond amounts cover anticipated harm to the HTA/CCDA PSA Creditors alone and are significantly lower than bonds that are routinely set in complex chapter 11 bankruptcies. *See, e.g.*, *In re Tribune Co.*, 477 B.R. at 478 ($1.5 billion); *In re Adelphia Commc'ns. Corp.*, 361 B.R. at 350 ($1.3 billion); *In re Gen. Motors Corp.*, 409 B.R. 24, 34 (Bankr. S.D.N.Y. 2009) ("I find that a bond would have to be posted in an amount no less than $ 7.4 billion, even if any and all other concerns could be addressed.").

29. Nonetheless, the Vazquez Velazquez Group may object that the proposed bond amounts are too high. In fact, the amounts proposed are based on extremely conservative estimates of the harm a stay would inflict on just a subset of affected parties. If even that conservative figure is high, that only proves the enormity of the harm that would follow from granting the Vazquez Velazquez Group's request. *See In re DJK Residential, LLC*, 2008 WL 650389, at *5 (S.D.N.Y. Mar. 7, 2008) (movant's argument that bond would be prohibitively expensive "only serves to highlight the substantial risk of dramatic injury to Debtors and other creditors if the Bankruptcy Court's orders were erroneously stayed").

30. Staying HTA's emergence from Title III proceedings will cause millions of dollars in harm. These costs will have to be borne by someone. Without a sizeable bond, they will be borne by HTA, its non-moving creditors, and the people of Puerto Rico. That should not be. As the parties asking the Court to grant them extraordinary relief, the Vazquez Velazquez Group should shoulder the costs that relief entails in the event their appeal is unsuccessful.

12

31.     Finally, in the event this Court denies the requested stay pending appeal, it should consider specifying the size of a bond it would impose if it were to grant a stay.  If this Court denies a stay, the Vazquez Velazquez Group will presumably make a stay request to the First Circuit.  The appellate court would benefit from this Court's views on the appropriate size of a bond, given this Court's intimate familiarity with these proceedings.

[*Remainder of page intentionally left blank*]

13

## **CONCLUSION**

The Vazquez Velazquez Group's Motion to stay implementation of the Plan pending their

appeal should be denied.  In the alternative, this Court should condition any stay on the Vazquez

Velazquez Group posting a bond of at least $55 million.


Dated: October 28, 2022                              Respectfully submitted,
        San Juan, Puerto Rico

**REXACH & PICÓ, CSP**                               **BUTLER SNOW LLP**

By: /s/ *María E. Picó*                              By: /s/ *Martin A. Sosland*
María E. Picó                                        Martin A. Sosland
                                                     Candice M. Carson
USDC-PR 123214                                       2911 Turtle Creek Blvd., Suite 1400
802 Ave. Fernández Juncos                            Dallas, TX 75219
San Juan PR 00907-4315                               Telephone: (469) 680-5502
Telephone: (787) 723-8520                            Facsimile: (469) 680-5501
Facsimile: (787) 724-7844                            Email: martin.sosland@butlersnow.com
E-mail: mpico@rexachpico.com
Attorneys for Financial Guaranty                     James E. Bailey III
Insurance Company                                    Adam M. Langley
                                                     6075 Poplar Ave., Suite 500
                                                     Memphis, TN 38119
                                                     Telephone: (901) 680-7200
                                                     Facsimile: (901) 680-7201
                                                     Email: jeb.bailey@butlersnow.com
                                                     adam.langley@butlersnow.com

    *Counsel for Financial Guaranty Insurance Company*

66157944.v6

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
      Heriberto Burgos Pérez
      USDC-PR No. 204,809
      Ricardo F. Casellas-Sánchez
      USDC-PR No. 203,114
      Diana Pérez-Seda
      USDC–PR No. 232,014
      P.O. Box 364924
      San Juan, PR 00936-4924
      Tel.: (787) 756-1400
      Fax: (787) 756-1401
      E-mail:  hburgos@cabprlaw.com
              rcasellas@cabprlaw.com
              dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
      Howard R. Hawkins, Jr.*
      Mark C. Ellenberg*
      Casey J. Servais*
      William J. Natbony*
      Thomas J. Curtin*
      200 Liberty Street
      New York, New York 10281
      Tel.: (212) 504-6000
      Fax: (212) 406-6666
      Email:  howard.hawkins@cwt.com
             mark.ellenberg@cwt.com
             casey.servais@cwt.com
             bill.natbony@cwt.com
             thomas.curtin@cwt.com

* Admitted pro hac vice

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

66157944.v6

**Ferraiuoli LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**Milbank LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
          amiller@milbank.com
          gmainland@milbank.com
          jhughes2@milbank.com

***Counsel for Ambac Assurance Corporation***

66157944.v6

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

By: /s/ *Alexandra Casellas-Cabrera*
    Alexandra Casellas-Cabrera
    (USDC-PR No. 301010)
    Email: acasellas@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

*Attorneys for National Public Finance*
*Guarantee Corp.*

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile:  (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com

    Gabriel A. Morgan (admitted *pro hac vice*)
    700 Louisiana Street, Suite 1700
    Houston, TX 77002
    Telephone: (713) 546-5000
    Facsimile:  (713) 224-9511
    Email: gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee*
*Corp.*

66157944.v6