Hearing Date: December 14, 2022 at 9:30AM (Atlantic Standard Time)
Response Deadline: November 28, 2022 at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

## FIVE HUNDRED THIRTY-SEVENTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE AND NO LIABILITY BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways

and Transportation Authority ("HTA," and together with the Commonwealth, the "Objecting

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Objecting Debtors pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this five hundred thirty-seventh omnibus objection (the "Five Hundred Thirty-Seventh Omnibus Objection") to disallow, in their entirety, the proofs of claim listed on **Exhibit A** hereto, each of which is based on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Objecting Debtors on behalf of the holders of certain bonds, (*b*) bond claims based on bonds issued by HTA which have been discharged pursuant to the Confirmation Order (defined below), (*c*) an ownership interest in bonds issued by the Puerto Rico Housing Finance Authority ("PRHFA") or the Puerto Rico Public Finance Authority ("PRPFC") for amounts for which the Objecting Debtors are not liable because: (*i*) the issuing entities are not Title III Debtors and have not guaranteed repayment for the bonds; (*ii*) the bonds at issue have matured; and/or (*iii*) the claimants do not sufficiently allege the Objecting Debtors were obligated with respect to such bonds; and/or (*d*) investments in mutual funds, which in turn may have invested in bonds issued by the Objecting Debtors.  In support of the Five Hundred Thirty-Seventh Omnibus Objection, the Objecting Debtors respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA Section 306(a).

2.      Venue is proper in this district pursuant to PROMESA Section 307(a).

## BACKGROUND

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

A.     **The Bar Date Orders**

3.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA Sections 104(j) and 206 and filed a voluntary petition for relief for HTA, pursuant to PROMESA Section 304(a), commencing a case under Title III thereof (the "HTA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with

---

[3]     Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Confirmation of the Commonwealth, ERS, and PBA Title III Plan of Adjustment**

5.      On November 3, 2021, on behalf of the Commonwealth, Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), the Oversight Board filed that certain *Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as subsequently amended and modified, the "Plan") [ECF No. 19053]. The Court considered confirmation of the Plan, and any objections thereto, at a hearing for confirmation of the Plan on November 8-22, 2021.

6.      Pursuant to the Court's (1) *Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 19517] and (2) *Order Regarding Plan Modifications Necessary to the Entry of an Order Confirming Plan of Adjustment for the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19721], on January 14, 2022, the Oversight Board filed a further revised Plan in compliance with the Court's orders. *See Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico,* et al., [ECF No. 19784].

7.      On January 18, 2022, the Court confirmed the Plan. *See Order and Judgment Confirming the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "Confirmation Order").

8.      On January 20, 2022, pursuant to Title VI of PROMESA, the Court approved, (a) the *Qualifying Modification for the Puerto Rico Convention Center District Authority* [Case No. 21-01493, ECF No. 72-1] (the "CCDA QM") and (b) the *Qualifying Modification for the Puerto Rico Infrastructure Financing Authority* [Case No. 21-01492, ECF No. 82-1] (the "PRIFA QM"), which complement the transactions contained in the Plan.

9.      The Plan became effective on March 15, 2022, when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349].

10.     The CCDA QM and PRIFA QM also became effective on March 15, 2022.  *See* Case No. 21-01493, ECF No. 74; Case No. 21-01492, ECF No. 84.

**C.    Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

11.     Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by HTA and the Puerto Rico Industrial Development Company ("PRIDCO").

12.     **_HTA_**—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA

Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"); and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding. BNYM serves as fiscal agent with respect to the HTA Bonds.

13.     On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[4]

14.     On August 13, 2022, the Oversight Board filed the *Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-bk-3567, ECF No. 1377] (the "Fifth Amended HTA Plan"). The Court considered confirmation of the Fifth Amended HTA Plan, and objections thereto, at a hearing on August 17, 2022, after which it took the proposed order to confirm the Fifth Amended HTA Plan under submission. On September 6,

---

[4]     While BNYM initially filed three proofs of claim logged by Kroll as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

2022, in response to the Court's prior order requesting certain revisions to the Fifth Amended HTA

Plan, the Oversight Board filed the *Modified Fifth Amended Title III Plan of Adjustment of the*

*Puerto Rico Highways and Transportation Authority* [ECF No. 1404] (the "HTA Plan").   On

October 12, 2022, the Court confirmed the HTA Plan.  [ECF No. 1415].  The Oversight Board

anticipates that the HTA Plan shall become effective shortly.

15.     ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A.

§§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities

for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General

Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO

Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the

Commonwealth, which was logged by Kroll as Proof of Claim No. 13445 (the "PRIDCO Master

Claim").    The PRIDCO Master Claim asserts contingent, unliquidated claims against the

Commonwealth, and seeks:

> recovery of any and all other amounts owed on account of any and
> all claims the Trustee has or may have relating to the outstanding
> Bond obligations, whether known or unknown, against the
> Commonwealth and all those purporting to act on the
> Commonwealth's behalf, whether presently asserted or to be
> asserted, including without limitation claims for or based upon the
> breach or violation of the Bond Documents, lease agreements or
> other contractual obligations relating to the underlying collateral,
> any other covenants or other contractual obligations contained
> therein, or claims arising from the improper diversion of PRIDCO's
> revenues or any other property securing the payment of the Bonds
> under the Bond Documents, as a matter of relevant Commonwealth,
> state or federal law, including without limitation constructive trust,
> fraudulent conveyance or fraudulent transfer, failure to fulfill
> contractual and fiduciary obligations and duties, breach of implied
> covenants of good faith and fair dealing, or other legal or equitable
> claims.

Rider to PRIDCO Master Claim, ¶¶ 12–13.

C.       **Bond Debt Master Proofs of Claim – HTA Title III Case**

16.      On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "<u>HTA Title III Master Claims,</u>" and together with the HTA-CW Master Claims and the PRIDCO Master Claim, the "<u>Master Claims</u>"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

D.       **Bond Debt Issued by the Puerto Rico Public Finance Authority**

17.      PRPFC is a subsidiary corporation of Government Development Bank ("<u>GDB</u>") created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("<u>Resolution No. 5044</u>"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  PRPFC provides government agencies, instrumentalities, municipalities, and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.

18.      PRPFC is not a Title III debtor, and is a separate, legally distinct entity from the Objecting Debtors, and its liabilities are not guaranteed by the Objecting Debtors or any other of the Debtors.  *See, e.g.*, 3 L.P.R.A. § 9081(c) (referring to PRPFC as an "independent juridical entity" separate from the Commonwealth).

19.      In 2007, PRPFC issued certain Series C bonds (the "2007 Series C Bonds"), in the aggregate amount of $106,665,000, which have already matured.  For example, certain 2007 Series C Bonds issued by PRPFC bearing CUSIP No. 745291UM4 matured on August 1, 2017.[5]

20.      U.S. Bank National Association ("U.S. Bank") and U.S. Bank Trust National Association ("U.S. Bank Trust") serve as trustee for certain Series 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC (together with the 2007 Series C Bonds, the "PRPFC Bonds").  On behalf of the holders of the Series 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC , U.S. Bank and U.S. Bank Trust filed a proof of claim against the Commonwealth (the "PRPFC Master Claim"), which was logged by Kroll as Proof of Claim No. 13374.

21.      U.S. Bank and U.S. Bank Trust filed an objection to confirmation of the Plan [Case No. 17-3283, ECF No. 18631] relating to the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC (the "PFC Bond Trustee Objection").  At the hearing to consider confirmation of the Plan, the Oversight Board announced that an agreement, subject to certain approvals and definitive documentation, had been reached (*i*) to resolve the PFC Bond Trustee Objection and (*ii*) for the terms for the restructuring of the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC pursuant to Title VI of PROMESA.  Pursuant to such agreement, and in exchange for the compromises and settlements provided therein, the PFC Bond Trustee Objection was resolved.  On October 25, 2022, in accordance with the agreement and definitive documentation, solicitation was commenced seeking acceptance of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the " PRPFC QM").  The PRPFC QM proposes

---

[5]      https://emma.msrb.org/Security/Details/A279440ADA2B20FBAB193DDCC069F12AB.

to discharge the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims. The Oversight Board anticipates commencing a Title VI proceeding regarding the PRPFC QM no later than October 28, 2022.

**E.      Bond Debt Issued by the Puerto Rico Housing Finance Authority**

22.      PRHFA is a subsidiary of GDB and is an independent governmental instrumentality of the Commonwealth.  PRHFA promotes the development of low-income housing and provides financing, subsidies, and incentives to home owners.

23.      PRHFA is not a Title III debtor, and is a separate, legally distinct entity from the Objecting Debtors, and its liabilities are not guaranteed by the Objecting Debtors or any other of the Debtors.  *See, e.g.*,   7 L.P.R.A. § 924(c) (referring to PRHFA as a "public corporation subsidiary of [GDB] created by Resolution No. 4023 of November 16, 1977, as amended, of the Board of Directors of the Government Development Bank for Puerto Rico, redenominated following the merger as the Puerto Rico Housing Financing Authority.").

24.      To facilitate its operations, PRHFA issued various bonds (collectively, the "PRHFA Bonds").  For example, in 1986, PRHFA issued Commonwealth Appropriation-Subsidy Pre-Payment Bonds, which matured on December 1, 1994. *See, e.g.*, CUSIP No. 745269AT7.[6]  In addition, in 1990, PRHFA issued Collateral Mortgage Obligation Bonds Series A Bonds, which matured on July 1, 2004. *See, e.g.*, CUSIP No. 74527PAP8[7]; 74527PBY8[8].

**F.      Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

25.      To date, approximately 179,313 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total

---

[6]      https://emma.msrb.org/Security/Details/A7A23F36300C19856E0B556118560FE2C.

[7]      https://emma.msrb.org/Security/Details/A6909239127D4E14FA67F50A185B7431E.

[8]      https://emma.msrb.org/Security/Details/A5C241618C65E6FC1776B9D63D88F9DBF.

approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

26.     Of the proofs of claim filed, approximately 118,703 have been filed in relation to, or reclassified to be asserted against, Commonwealth.  Approximately 2,303 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

27.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

28.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking,

among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

29.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 27 hearings related to over 500 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, PREPA, PBA, and/or ERS.  Based upon rulings and orders of the Court to date, as well as the expungement of certain claims pursuant to the Plan, approximately 102,630 claims asserting $43.6 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, ERS, and PBA have been disallowed and expunged from the claims registry in the Title III proceedings.   In addition, approximately 45,193 claims have been transferred into the Administrative Claims Reconciliation process for resolution using the Debtors' ordinary-course administrative processes.

30.     This Five Hundred Thirty-Seventh Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

31.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly

executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA Section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

32.     The Amended Omnibus Objection Procedures allow the Objecting Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

33.     This Five Hundred Thirty-Seventh Omnibus Objection seeks to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed"), each of which is based on (*a*) bond claims that are duplicative of one or more master proofs of claim filed against the Objecting Debtors on behalf of the holders of certain bonds, (*b*) bond claims based on bonds issued by HTA which have been discharged pursuant to the Confirmation Order, (*c*) an ownership interest in bonds issued by PRHFA or PRPFC for amounts for which the Objecting Debtors are not liable because (*i*) the issuing entities are not Title III Debtors and have not have not guaranteed repayment for the bonds; and (*ii*) the bonds at issue have matured; and/or (*d*) investments in mutual funds, which in turn may have invested in bonds issued by the Objecting Debtors. **Exhibit A** hereto further specifies why each of the Claims to Be Disallowed should be disallowed in their entirety.

**A.  No Liability for Duplicate Bond Claims**

34.     As set forth in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability, in part, on the basis of bonds issued by HTA and PRIDCO (collectively, the "Partial Duplicate Bond Claims").  *See, e.g.*, Claim No. 7743.

35.     Each of the Partial Duplicate Bond Claims purports to assert, in whole or in part, liability against the Objecting Debtors associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Title III Cases on behalf of the holders of certain bonds issued by HTA and PRIDCO.

36.     Accordingly, any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Objecting Debtors, to the detriment of other stakeholders in the Objecting Debtors' Title III Cases. The holders of the Partial Duplicate Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

**B.  No Liability for Bondholder Claims Discharged by the Confirmation Order**

37.     As set forth in **Exhibit A** hereto, certain of the Claims to Be Disallowed purport to assert liability, in part, based on the alleged ownership of bonds issued by HTA (the "HTA Bondholder Claims").  *See, e.g.*, Claim No. 2925.

38.     The HTA Bondholder Claims assert liabilities against the Commonwealth associated with various HTA Bonds issued by HTA.  Claims asserted against the Commonwealth based on any bonds issued or guaranteed by or loans made to or guaranteed by HTA have been fully discharged pursuant to the Plan and the Commonwealth has no further liability on account of such Claims.  *See* Confirmation Order ¶ 72 ("The Claims asserted against the Debtors or the

Reorganized Debtors based on any bonds issued or guaranteed by or loans made to or guaranteed by HTA, CCDA, PRIFA, or MBA shall, to the extent allowed, be allowed as a Claim arising prior to the Petition Date and classified in Classes 59 through 62 (except Allowed ERS Bond Claims to the extent secured) and are hereby discharged and the Debtors and the Reorganized Debtors have no further liability on account of such Claims.").  As noted above, the CCDA QM and the PRIFA QM were approved by the Court and have been consummated, with all CCDA Bonds and PRIFA Bonds and related claims having been discharged.

39.    Any failure to disallow the HTA Bondholder Claims will result in the applicable claimants potentially receiving an unwarranted recovery against the Commonwealth, to the detriment of other stakeholders in the Debtors' Title III Cases.

### C.  No Liability for Claims Based on Investments in Mutual Funds

40.    As identified in **Exhibit A** hereto, certain Claims to Be Disallowed purport to assert liability based in part on investment(s) in one or more mutual funds that, in turn, may have invested in bonds issued by the Objecting Debtors (collectively, the "Partial Mutual Funds Claims").  *See, e.g.*, Claim No. 7743.

41.    A claimant bears the burden of establishing standing to file a proof of claim.  *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established that only a creditor or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11 U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with "relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's

bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no

standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803

F.3d 450, 462-63 (9th Cir. 2015) (holding a trust beneficiary was not a party in interest); *In re*

*Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest

are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*,

446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving

party must be asserting its own rights and not those belonging to or derivative of a third party");

*In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that

'party in interest standing does not arise if a party seeks to assert some right that is purely derivative

of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n.

10)).

      42.      "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor*

or the estate," rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin*

*Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Because, at most, the Partial Mutual Funds Claims

were filed based on the claimant's status as an alleged creditor of an alleged creditor of the

Commonwealth, the Partial Mutual Funds Claims were not filed by an actual creditor of the

Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver

lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a

creditor). Instead, the Partial Mutual Funds Claims are derivative of claims that must be asserted

by the mutual funds directly for any claimed recovery to be considered by the Court. *See Matter*

*of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the

estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").

Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor. To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121]. Accordingly, the claimants are not creditors of the Objecting Debtors and lack standing to assert derivative claims. Because the Objecting Debtors cannot be held liable for the Partial Mutual Funds Claims, these claims should be disallowed in their entirety.

### D. No Liability for Claims Based on PRPFC and PRHFA Bonds

43.     As identified in **<u>Exhibit A</u>** hereto, certain portions of the Claims to Be Disallowed purport to assert claims based on an alleged ownership interest in (1) PRPFC Bonds issued by PRPFC (collectively the "<u>Partial PRPFC Bondholder Claims</u>") and/or (2) PRHFA Bonds issued by PRHFA (collectively the "<u>Partial PRHFA Bondholder Claims</u>," and together with Partial PRPFC Bondholder Claims, the "<u>Partial No Liability Bondholder Claims</u>"). *See, e.g.*, Claim Nos. 175974, 40534, and 7743. Neither PRPFC nor PRHFA are Title III Debtors, nor are their liabilities guaranteed by the Commonwealth, HTA, or any other of the Debtors.

44.     Each of the Partial PRPFC Bondholder Claims purports to assert, in part, liabilities against the Objecting Debtors associated with PRPFC Bonds not guaranteed by the Commonwealth, HTA, or any of the other Debtors.  PRPFC is not a Title III debtor, and is a separate, legally distinct entity from the Debtors.  *See, e.g.*, 3 L.P.R.A. § 9081(c) (referring to PRPFC as an "independent juridical entity" separate from the Commonwealth. On October 25, 2022, in accordance with the agreement and definitive documentation, solicitation was commenced seeking acceptance of the PRPFC QM.  The PRPFC QM proposes to discharge the 2011A, Series 2011B, and Series 2012A Commonwealth Appropriation Bonds issued by the PRPFC and the related claims. The Oversight Board anticipates commencing a Title VI proceeding regarding the PRPFC QM no later than October 28, 2022.

45.     Likewise, each of the Partial PRHFA Bondholder Claims purports to assert, in part, liabilities against the Objecting Debtors associated with PRHFA Bonds not guaranteed by the Commonwealth, HTA, or any of the other Debtors.  PRHFC is not a Title III debtor, and is a separate, legally distinct entity from the Debtors.

46.     In addition, each of the PRPFC Bonds and the PRHFA Bonds have matured.  *See, e.g.*, CUSIP Nos. 74527PAP8, 745269AT7, 74527PBY8, and 745291UM4.  Accordingly, because the PRPFC Bonds and the PRHFA Bonds have already matured, and claimants associated with the Partial PRHFA Bondholder Claims have not alleged that they have not received their payments in full, or that the Objecting Debtors are liable for any alleged non-payment, holders of these bonds no longer have a valid claim, and the Partial No Liability Bondholder Claims should be disallowed in their entirety.

47.     In support of the foregoing, the Objecting Debtors rely on the *Declaration of Jay Herriman in Support of the Five Hundred Thirty-Seventh Omnibus Objection (Substantive) of the*

*Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to
Duplicate and No Liability Bond Claims*, dated October 28, 2022, attached hereto as **Exhibit B**.

### NOTICE

48.     In accordance with the Amended Omnibus Objection Procedures and the Court's
Notice Order, the Objecting Debtors are providing notice of this Five Hundred Thirty-Seventh
Omnibus Objection to (a) the individual creditors subject to this Five Hundred Thirty-Seventh
Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the
*Sixteenth Amended Case Management Procedures* [ECF No. 20190-1]), which is available on the
Debtors' case website at https://cases.ra.kroll.com/puertorico.  The notice for this Five Hundred
Thirty-Seventh Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the
Five Hundred Thirty-Seventh Omnibus Objection and all of the exhibits attached hereto are being
filed and served with this objection.  The Objecting Debtors submit that, in light of the nature of
the relief requested, no other or further notice need be given.

WHEREFORE the Objecting Debtors respectfully request entry of an order, substantially
in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested
herein, and (2) granting the Objecting Debtors such other and further relief as is just.

Dated: October 28, 2022                                   Respectfully submitted,
       San Juan, Puerto Rico


                                                          /s/ *Hermann D. Bauer*
                                                          Hermann D. Bauer
                                                          USDC No. 215205
                                                          Carla García-Benítez
                                                          USDC No. 203708
                                                          Gabriel A. Miranda
                                                          USDC No. 306704
                                                          **O'NEILL & BORGES LLC**
                                                          250 Muñoz Rivera Ave., Suite 800
                                                          San Juan, PR 00918-1813
                                                          Tel:  (787) 764-8181
                                                          Fax:  (787) 753-8944

                                                          /s/ *Martin J. Bienenstock*
                                                          Martin J. Bienenstock (*pro hac vice*)
                                                          Brian S. Rosen (*pro hac vice*)
                                                          **PROSKAUER ROSE LLP**
                                                          Eleven Times Square
                                                          New York, NY 10036
                                                          Tel:  (212) 969-3000
                                                          Fax:  (212) 969-2900

                                                          *Attorneys for the Financial
                                                          Oversight and Management Board
                                                          for Puerto Rico, as representative for
                                                          the Commonwealth of Puerto Rico
                                                          and the Puerto Rico Highways and
                                                          Transportation Authority*

**Fecha de la vista: 14 de diciembre de 2022, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 28 de noviembre de 2022, a las 4:00 p.m. (AST)**

---

> **REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> Número 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA y la ACT.** |

## QUINGENTÉSIMA TRIGÉSIMA SÉPTIMA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES POR BONOS DUPLICADAS Y EN LAS QUE NO EXISTE RESPONSABILIDAD

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor

Swain:

---

[1]     Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA, los "Deudores Objetantes"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores Objetantes conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta quingentésima trigésima séptima objeción global (la "Quingentésima trigésima séptima objeción global") en la que se solicita que se rechacen en su totalidad las evidencias de reclamaciones que figuran en el **Anexo A** del presente documento, cada una de las cuales se basa en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores Objetantes en nombre de determinados bonistas, *b*) reclamaciones por bonos basadas en unos bonos emitidos por la ACT que han sido liberados conforme a la Orden de Confirmación (que se define abajo), *c*) participación patrimonial en bonos emitidos por la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (la "AFV") o la Corporación para el Financiamiento Público (la "CFP") por unos montos por los que los Deudores Objetantes no son responsables porque: *i*) las entidades emisoras no son Deudores de Título III ni han garantizado el reembolso de los bonos; *ii*) los bonos en cuestión han vencido; y/o *iii*) los reclamantes no alegan de manera suficiente que los Deudores Objetantes estuvieran obligados en relación con dichos bonos; y/o *d*) inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores Objetantes. En apoyo de la Quingentésima trigésima séptima objeción global, los Deudores Objetantes manifiestan respetuosamente lo siguiente:

---

[2]     PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

## JURISDICCIÓN

1.     El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.     La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.     Órdenes de Fecha Límite**

3.     El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la ACT", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. [ECF Número 537.[3]

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

---

[3]     Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

*la manera de su notificación* [ECF Número 2255] (la "Moción de Fecha Límite"). Conforme a la
*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)*
*aprueba la forma y la manera de su notificación* [ECF Número 2521] (la "Orden Inicial de Fecha
Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas
límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título
III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el
Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*
*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF Número 3160]
(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo
dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Confirmación del Plan de Ajuste del ELA, del SRE y de la AEP elaborado conforme**
**al Título III**

5.      El 3 de noviembre de 2021, en nombre del ELA, el Sistema de Retiro de los
Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de
Edificios Públicos de Puerto Rico (la "AEP"), la Junta de Supervisión radicó el *Octavo Plan de*
*Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado*
*conforme al Título III* (en su versión enmendada y modificada posteriormente, denominado el
"Plan") [ECF Número 19053]. El Tribunal examinó la confirmación del Plan y las objeciones
formuladas a este en una vista de confirmación del Plan celebrada los días 8 a 22 de noviembre de
2021.

6.      Conforme a la 1) *Orden del Tribunal relativa a determinados aspectos de la moción*
*para la confirmación del Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado*
*de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19517] y 2) *Orden sobre*

las modificaciones del Plan necesarias para dictar una orden que confirme el Plan de Ajuste para el Estado Libre Asociado de Puerto Rico, el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y la Autoridad de Edificios Públicos de Puerto Rico [ECF Número 19721], el 14 de enero de 2022, la Junta de Supervisión, en cumplimiento de las órdenes del Tribunal, radicó un Plan revisado posteriormente. *Véase el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III* [ECF Número 19784].

7.      El 18 de enero de 2022, el Tribunal confirmó el Plan. *Véase la Orden y la Sentencia que confirman el Octavo Plan de Ajuste Conjunto Enmendado del Estado Libre Asociado de Puerto Rico, del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico y de la Autoridad de Edificios Públicos de Puerto Rico, elaborado conforme al Título III* [ECF Número 19813] (la "Orden de Confirmación").

8.      El 20 de enero de 2022, conforme al Título VI de PROMESA, el Tribunal aprobó a) la *Modificación Calificada de la Autoridad del Distrito del Centro de Convenciones de Puerto Rico* [Caso Número 21-01493, ECF Número 72-1] (la "MC de la ADCC") y b) la *Modificación Calificada de la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico* [Caso Número 21-01492, ECF Número 82-1] (la "MC de la AFI"), que complementan las transacciones contenidas en el Plan.

9.      El Plan entró en vigor el 15 de marzo de 2022, una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma la versión modificada del Octavo plan modificado y enmendado de ajuste del Estado Libre Asociado de Puerto Rico y otros elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [ECF Número 20349].

10.     Tanto la CM de la ADCC como la CM de la AFI también entran en vigor el 15 de marzo de 2022. *Véase* Caso Número 21-01493, ECF Número 74; Caso Número 21-01492, ECF Número 84.

**C.     Evidencias de reclamaciones principal relativas a la deuda de los bonos: Caso de Título III del ELA**

11.     Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, las evidencias de reclamaciones principales han sido radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés emitidos por la ACT y la Compañía de Fomento Industrial de Puerto Rico (la "PRIDCO");

12.     *ACT*: la ACT es una corporación pública e instrumentalidad del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley Número 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, operación y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i)* la Resolución Número 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"); y *ii)*

la Resolución Número 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde
el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto
principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y
aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la
Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con
respecto a los Bonos de la ACT.

13.   En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias
de reclamaciones principales en el marco del Caso de Título III del ELA (las "Reclamaciones
Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente
y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas,
derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, en
virtud de la ley o equidad. . . ." *Véase* Adenda de la Evidencia de reclamación Número 121053,
¶ 15; Adenda de la Evidencia de reclamación Número 120982, ¶ 15; Adenda de la Evidencia de
reclamación Número 115380, ¶ 15.[4]

14.   El 13 de agosto de 2022, la Junta de Supervisión radicó el *Quinto plan enmendado
de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico elaborado conforme al
Título III* [Caso Número 17-BK-3567, ECF Número 1377] (el "Quinto Plan Enmendado de la
ACT"). El Tribunal tuvo en consideración la confirmación del Quinto Plan Enmendado de la ACT,
así como las objeciones al mismo, en una vista celebrada el 17 de agosto de 2022, tras lo cual la
orden propuesta para confirmar el Quinto Plan Enmendado de la ACT quedó pendiente de
resolución. El 6 de septiembre de 2022, en respuesta a la orden anterior del Tribunal en la que se

---

[4]   Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Kroll como
Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las
Evidencias de reclamaciones núms. 121053, 120982 y 115380.

solicitaban determinadas revisiones del Quinto Plan Enmendado de la ACT, la Junta de Supervisión radicó el *Quinto plan enmendado de ajuste de la Autoridad de Carreteras y Transportación de Puerto Rico modificado elaborado conforme al Título III* [ECF Número 1404] (el "Plan de la ACT"). El 12 de octubre de 2022, el Tribunal confirmó el Plan de la ACT. [ECF Número 1415]. La Junta de Supervisión prevé que el Plan de la ACT entrará en vigor próximamente.

15.     ***PRIDCO***: PRIDCO fue creada por la Ley Número 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq.*, para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas privadas fabricantes. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A series 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamaciones principal contra el ELA, que fue registrada por Kroll como Evidencia de reclamaciones Número 13445 (la "Reclamación Principal de PRIDCO"). La Reclamación Principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA, y busca:

> recuperación de la totalidad de los montos adeudados en razón de todas las reclamaciones que el Fiduciario tenga o pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones contractuales derivadas del presente documento, o reclamaciones surgidas por el desvío indebido de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o transferencia fraudulenta, incumplimiento de deberes y obligaciones

contractuales y fiduciarias, vulneración de pactos implícitos justos
y de buena fe, u otras reclamaciones en ley o equidad.

Cláusula de la Reclamación Principal de PRIDCO, ¶¶ 12-13.

**C.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de
Título III de la ACT**

16.    En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias
de reclamaciones principales en el marco del Caso de Título III de la ACT (conjuntamente, las
"Reclamaciones Principales de Título III de la ACT", y junto con las Reclamaciones Principales
ACT-ELA y la Reclamación Principal de PRIDCO, las "Reclamaciones Principales"): la
Evidencia de reclamación Número 37245, por la que se reclama, en nombre de los tenedores de
los bonos emitidos conforme a la Resolución de 1968, aproximadamente $847 millones en
concepto de responsabilidad más montos no liquidados; la Evidencia de reclamación Número
38574, por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la
Resolución de 1998, aproximadamente $3200 millones en concepto de responsabilidad más
montos no liquidados; y la Evidencia de reclamación Número 32622, por la que se reclama, en
nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución de 1998,
aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

**D.    Deuda de los bonos emitidos por la Corporación para el Financiamiento Público de
Puerto Rico**

17.    La CFP es una corporación subsidiaria del Banco Gubernamental de Fomento (el
"BGF") creada conforme a la Resolución Número 5044 de la Junta Directiva del BGF, en su
versión enmendada (la "Resolución Número 5044"), adoptada de conformidad con la autoridad
concedida en virtud de la Ley Número 17 de la Asamblea Legislativa de Puerto Rico, aprobada el
23 de septiembre de 1948, en su versión enmendada. La CFP proporciona a las agencias públicas,

instrumentalidades, municipios y a otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones.

18.     La CFP no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores Objetantes, por lo que sus responsabilidades no están garantizadas por los Deudores Objetantes ni por ninguno de los demás Deudores. *Véase, por ejemplo,* 3 L.P.R.A. § 9081(c) (que se refiere a la CFP como una "entidad jurídica independiente", separada del ELA).

19.      En 2007, la CFP emitió unos bonos de la Serie C (los "Bonos de la Serie C de 2007"), por el monto total de $106,665,000, que ya han vencido. Por ejemplo, determinados Bonos de la Serie C de 2007 emitidos por la CFP, con el Número CUSIP 745291UM4, vencieron el 1 de agosto de 2017.[5]

20.     U.S. Bank National Association ("U.S. Bank") y U.S. Bank Trust National Association ("U.S. Trust") el "Fiduciario de los Bonos de la CFP") actúan como fiduciarios en relación con determinados Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por CFP (junto con los Bonos de la Serie C de 2007, los "Bonos de la CFP"). En nombre de los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFP, U.S. Bank y U.S. Bank Trust radicaron una evidencia de reclamación contra el ELA (la "Reclamación Principal de la CFP"), que fue registrada por Kroll como Evidencia de reclamación Número 13374.

21.     U.S. Bank y U.S. Bank Trust radicaron una objeción a la confirmación del Plan [Caso Número 17-3283, ECF Número 18631] en relación con los Bonos de Asignación del ELA,

---

[5]        https://emma.msrb.org/Security/Details/A279440ADA2B20FBAB193DDCC069F12AB.

Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFP (la "Objeción del "Fiduciario de los Bonos de la CFP"). En la vista para estudiar la confirmación del Plan, la Junta de Supervisión anunció que, con sujeción a determinadas aprobaciones y documentación definitiva, se había alcanzado un acuerdo *i*) para resolver la objeción del Fiduciario de los Bonos de la CFP y *ii*) en cuanto a las condiciones de la reestructuración de los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFP, conforme al Título VI de PROMESA. Conforme a dicho acuerdo, y en virtud de los compromisos y conciliaciones en él contenidos, la Objeción del Fiduciario de los Bonos de la CFP fue resuelta. El 25 de octubre de 2022, de conformidad con el acuerdo y documentación definitiva, se inició una solicitación que buscaba la aceptación de la *Modificación Cualificada conforme al Título VI de PROMESA en relación con la Corporación para el Financiamiento Público de Puerto Rico* (la "CM de la CFP"). La CFP propone liberar los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFP, así como las reclamaciones relacionadas. La Junta de Supervisión prevé que el procedimiento de Título VI sobre la CM de la CFP comience el 28 de octubre de 2022 a más tardar.

**E.   Deuda de los bonos emitidos por la Autoridad para el Financiamiento de la Vivienda de Puerto Rico**

22.   La AFV es una subsidiaria del BGF y constituye una instrumentalidad gubernamental independiente del ELA. La AFV promueve la construcción de viviendas para personas con bajo nivel de ingresos y ofrece financiamiento, subsidios e incentivos a los propietarios de las viviendas.

23.   La AFV no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores Objetantes, por lo que sus responsabilidades no están garantizadas por los Deudores Objetantes ni por ninguno de los demás Deudores. *Véase, por ejemplo*, 7 L.P.R.A. § 924(c) (que se refiere a la AFV como una "corporación pública, subsidiaria del [BGF],

creada por la Resolución Número 4023, de 16 de noviembre de 1977, en su versión enmendada, de la Junta Directiva del Banco Gubernamental de Fomento para Puerto Rico, cuyo nuevo nombre, tras la fusión, es la 'Autoridad para el Financiamiento de la Vivienda de Puerto Rico'").

24.     Para facilitar sus operaciones, la AFV emitió varios bonos (conjuntamente, los "Bonos de la AFV"). Por ejemplo, en 1986 la AFV emitió unos Bonos de Asignación del ELA de Prepago de Subsidios que vencieron el 1 de diciembre de 1994. *Véase, por ejemplo*, el Número CUSIP 745269AT7.[6]   Además, en 1990 la AFV emitió Bonos de Obligación de Garantía de Hipoteca de la Serie A que vencieron el 1 de julio de 2004. *Véase, por ejemplo*, el Número CUSIP 74527PAP8[7]; 74527PBY8[8].

**F.      Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

25.     Hasta la fecha, se han radicado aproximadamente 179,313 evidencias de reclamaciones contra los Deudores, que han sido registradas por Kroll Restructuring Administration, LLC ("Kroll"). Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

26.     De las evidencias de reclamaciones radicadas, aproximadamente 118,703 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 2,303 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no deberían haber sido radicadas en

---

[6]      https://emma.msrb.org/Security/Details/A7A23F36300C19856E0B556118560FE2C.

[7]      https://emma.msrb.org/Security/Details/A6909239127D4E14FA67F50A185B7431E.

[8]      https://emma.msrb.org/Security/Details/A5C241618C65E6FC1776B9D63D88F9DBF.

absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

27.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF Número 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF Número 4230]; *Procedimientos relativos a Objeciones Globales* [ECF Número 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF Número 4381] (la "Orden de Notificación").

28.    En aras del interés constante por resolver eficazmente cualquier evidencia de reclamación innecesaria, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar

13

objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF Número 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF Número 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

29.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha 27 vistas vinculadas con más de 500 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT, la AEE, la AEP y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, y de la retirada de determinadas reclamaciones conforme al Plan, aproximadamente 105,359 reclamaciones que reivindicaban $43.6 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE, el SRE y la AEP fueron rechazadas y retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III. Además, aproximadamente 45,193 reclamaciones han sido transferidas al proceso de Reconciliación de Reclamaciones Administrativas para su resolución utilizando procesos administrativos habituales de los Deudores.

30.    Esta Quingentésima trigésima séptima objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

31.      Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de la validez de la reclamación, véase R. del Proc. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia *prima facie* con pruebas que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso prima facie del reclamante". (se omite cita)).

32.      Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores Objetantes radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

33.      Esta Quingentésima trigésima séptima objeción global busca que se rechacen en su totalidad las evidencias de reclamaciones que figuran en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas"), cada una de las cuales se basa en *a*) reclamaciones por bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra los Deudores Objetantes en nombre de determinados bonistas, *b*) reclamaciones por bonos basadas en unos bonos emitidos por la ACT que han sido liberadas conforme a la Orden de Confirmación, *c*) participación patrimonial en bonos emitidos por la AFV o la CFP por unos montos por los que los Deudores Objetantes no son responsables

porque *i*) las entidades emisoras no son Deudores de Título III ni han garantizado el reembolso de los bonos; y *ii*) los bonos en cuestión han vencido; y/o *d*) inversiones en fondos mutuos que a su vez pudieron haber invertido en bonos emitidos por los Deudores Objetantes. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas debe ser rechazada en su totalidad.

### A. Ausencia de responsabilidad por Reclamaciones Duplicadas por Bonos

34.     Según se expone en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad, en parte, sobre la base de bonos emitidos por la ACT y PRIDCO (conjuntamente, las "Reclamaciones Parcialmente Duplicadas por Bonos"). *Véase, por ejemplo,* Reclamación Número 7743.

35.     Cada una de las Reclamaciones Parcialmente Duplicadas por Bonos pretende alegar, total o parcialmente, responsabilidad contra los Deudores Objetantes vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la ACT y PRIDCO.

36.     En consecuencia, si las Reclamaciones Parcialmente Duplicadas por Bonos no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación duplicada no justificada contra los Deudores Objetantes en detrimento de otras partes interesadas en los Casos de Título III de los Deudores. Los titulares de las Reclamaciones Parcialmente Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones Parcialmente Duplicadas por Bonos figuran en una o más Reclamaciones Principales.

**B. Ausencia de responsabilidad por las Reclamaciones de los Bonistas, liberadas por la Orden de Confirmación**

37.      Conforme a lo expuesto en el **<u>Anexo A</u>** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar, en parte, responsabilidad basada en supuesta participación patrimonial en los bonos emitidos por la ACT (las "<u>Reclamaciones de los Bonistas de la ACT</u>"). *Véase, por ejemplo,* Reclamación Número 2925.

38.      Las Reclamaciones de los Bonistas de la ACT alegan responsabilidades contra el ELA vinculadas con varias Bonos de la ACT emitidos por la ACT. Las Reclamaciones alegadas contra el ELA basadas en cualquiera de los bonos emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT, han sido liberadas en su totalidad en virtud del Plan, por lo que el ELA ya no es responsable por dichas reclamaciones. *Véase* Orden de Confirmación, ¶ 72 ("Las Reclamaciones alegadas contra los Deudores o los Deudores Reorganizados, emitidos o garantizados, o préstamos concedidos a o garantizados por la ACT, la ADCC, la AFI o la MBA se concederán (en la medida en que se concedan) como Reclamación que surgió antes de la Fecha de Petición, y se clasificarán en las Clases 59 a 62 (salvo las Reclamaciones por Bonos Concedidas del SRE, en la medida en que sean garantizadas) y, por medio de la presente, quedan liberadas, por lo que los Deudores y los Deudores Reorganizados ya no son responsables por dichas Reclamaciones"). Como se explicó anteriormente, el Tribunal aprobó la MC de la ADCC y la MC de la AFI, que han sido consumadas, y la totalidad de los Bonos de la ADCC y los Bonos de la AFI, así como las reclamaciones relacionadas, han sido liberados.

39.      Si las Reclamaciones de los Bonistas de la ACT no son rechazadas, ello resultaría en que los reclamantes en cuestión obtuvieran potencialmente una recuperación no justificada contra el ELA en detrimento de otras partes interesadas en los Casos de Título III de los Deudores.

C.  **Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos**

40.      Conforme a lo identificado en el **Anexo A** del presente documento, determinadas Reclamaciones que han de ser rechazadas pretenden alegar responsabilidad basada parcialmente en inversión(es) en uno o más fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por los Deudores Objetantes (conjuntamente, las "Reclamaciones Parciales de los Fondos Mutuos"). *Véase, por ejemplo,* Reclamación Número 7743.

41.      Los reclamantes tienen la carga de la prueba para demostrar legitimación a efectos de radicar una evidencia de reclamación. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada "era" persona ajena en relación con el procedimiento de quiebra del Deudor", sin "ninguna posibilidad de reclamar contra los activos" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.*, 505 B.R. 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha

18

parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita In re Refco, 505 F.3d en 115 n. 10)).

42.    "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamación contra el deudor o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las Reclamaciones Parciales de Fondos Mutuos fueron radicados en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones Parciales de Fondos Mutuos no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones Parciales de Fondos Mutuos se derivan de las reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. Véase el *caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue reteniendo la propiedad de los bonos controvertidos.

En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en los fondos mutuos que, a su vez, invirtieron presuntamente

en los bonos de COFINA, por "carecer de interés individual en los títulos de valores de COFINA".

*Tr. del 13 de marzo de 2019 de la vist. ante su señoría, Laura Taylor Swain* [ECF Número 5969],

en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su documentación muestra

que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea

realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no

proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA.

STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se

rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *véase*

*también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del*

*estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos*

*mutuos* [ECF Número 9099]; *Orden de memorando por la que se rechaza la moción para alterar*

*o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y*

*152283* [ECF Número 9121]. En consecuencia, los reclamantes no son acreedores de los Deudores

Objetantes y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que a los

Deudores Objetantes no se les puede atribuir la responsabilidad por las Reclamaciones Parciales

de Fondos Mutuos, dichas reclamaciones deben rechazarse en su totalidad.

**D.   Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos de la
    CFP y de la AFV**

43.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas

partes de las Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas

en una presunta participación patrimonial en 1) Bonos de la CFP emitidos por la CFP

(conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas de la CFP</u>") y/o 2) Bonos de la

AFV emitidos por la AFV (conjuntamente, las "<u>Reclamaciones Parciales de los Bonistas de la</u>

AFV", y junto con las Reclamaciones Parciales de los Bonistas de la CFP, las "Reclamaciones parciales de los bonistas en las que no existe responsabilidad"). *Véanse, por ejemplo*, Reclamaciones núms. 175974, 40534 y  7743. Ni la CFP ni la AFV son Deudores de Título III, ni sus responsabilidades están garantizadas por el ELA, por la ACT ni por ninguno de los demás Deudores.

44.      Cada una de las Reclamaciones Parciales de los Bonistas de la CFP pretende alegar, en parte, responsabilidades contra los Deudores Objetantes vinculadas con los Bonos de la CFP que no están garantizados por el ELA, por la ACT ni por ninguno de los demás Deudores. La CFP no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores. *Véase, por ejemplo*, 3 L.P.R.A. § 9081(c) (que se refiere a la CFP como una "entidad jurídica independiente", separada del ELA). El 25 de octubre de 2022, de conformidad con el acuerdo y documentación definitiva, se inició una solicitación que buscaba la aceptación de la MC de la CFP. La CFP propone liberar los Bonos de Asignación del ELA, Serie 2011A, Serie 2011B y Serie 2012A, emitidos por la CFP, así como las reclamaciones relacionadas. La Junta de Supervisión prevé que el procedimiento de Título VI sobre la CM de la CFP comience el 28 de octubre de 2022 a más tardar.

45.      Del mismo modo, cada una de las Reclamaciones Parciales de los Bonistas de la AFV pretende alegar, en parte, responsabilidades contra los Deudores Objetantes vinculadas con los Bonos de la AFV que no están garantizados por el ELA, por la ACT ni por ninguno de los demás Deudores. La AFV no es deudor de Título III y es una entidad aparte y jurídicamente independiente de los Deudores.

46.      Además, cada uno de los Bonos de la CFP y de los Bonos de la AFV ha vencido. *Véanse, por ejemplo*, los núms. CUSIP 74527PAP8, 745269AT7, 74527PBY8 y 745291UM4. En

consecuencia, puesto que los Bonos de la CFP y los Bonos de la AFV ya han vencido, y los
reclamantes vinculados con las Reclamaciones Parciales de los Bonistas de la AFV no han alegado
que no hayan recibido la totalidad de sus pagos o que los Deudores Objetantes sean responsables
de un supuesto impago, los tenedores de dichos bonos ya no tienen una reclamación válida, por lo
que las Reclamaciones parciales de los bonistas en las que no existe responsabilidad deben
rechazarse en su totalidad.

47.     En apoyo de lo anterior, los Deudores Objetantes invocan la *Declaración de Jay
Herriman en apoyo de la Quingentésima trigésima séptima objeción global (sustantiva) del Estado
Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico
a Reclamaciones por Bonos Duplicadas en las que no existe Responsabilidad*, de fecha 28 de
octubre de 2022, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

48.     De conformidad con los Procedimientos Enmendados relativos a Objeciones
Globales y la Orden de Notificación del Tribunal, los Deudores Objetantes notifican esta
Quingentésima trigésima séptima objeción global a) a los acreedores individuales objeto de esta
Quingentésima Trigésima séptima objeción global, b) al U.S. Trustee, y c) a la Lista Maestra de
Notificaciones (según se define en los *Procedimientos de administración de casos enmendados
Número 16* [ECF Número 20190-1]), disponibles en el sitio web de casos de los Deudores, en
https://cases.ra.kroll.com/puertorico. La notificación de esta Quingentésima trigésima séptima
objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la
Quingentésima trigésima séptima objeción global y de la totalidad de los anexos que se adjuntan
al presente se radican y envían con la presente objeción. Los Deudores Objetantes sostienen que,
dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

POR LO QUE los Deudores Objetantes solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores Objetantes cualesquiera otros remedios que se consideren justos.

Fecha: 28 de octubre de 2022
      San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en inglés]*
Hermann D. Bauer
USDC Número 215205
Carla García-Benítez
USDC Número 203708
Gabriel A. Miranda
USDC Número 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en inglés]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico.*