# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF No. 22684** |
| LILIA MOLINA RUIZ,<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Respondent. | |

### JOINT REPORT CONCERNING MOTION OF LILIA MOLINA RUIZ FOR RELIEF FROM AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Last Four Digits of Federal Tax ID: 3801) (Last Four Digits of Federal Tax ID: 3801) (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and Lilia Molina Ruiz (the "Movant" and, together with the Oversight Board, the "Parties") respectfully submit this joint report (this "Report") in response to the *Order to Supplement Briefing Concerning Motion for Relief from Automatic Stay* [ECF No. 22684] (the "Briefing Order"). The parties respectfully represent as follows:

## BACKGROUND

### A. Background on Litigation

1. On February 1, 2016, Movant commenced an action captioned *Molina-Ruiz v. Commonwealth of Puerto Rico.*, Civil Case No. D AC2016-1155 (the "Litigation"), against the Commonwealth in the Court of First Instance, Bayamón Judicial Center, Superior Part ("Commonwealth Court").

2. On August 18, 2016, the Commonwealth Court granted summary judgment (the "Judgment") against the Commonwealth under Puerto Rico's Uniform Forfeiture Act of 2011 (the "Uniform Forfeiture Act") in favor of Movant for apprehension of property from Movant. The Judgment expressly ordered the return of the property to Movant.

3. On September, 7, 2016, the Commonwealth filed a Motion for Reconsideration under the heading: "Motion from Relief of Judgment under Rule 49.2". On February 6, 2017, the Commonwealth Court denied the motion presented by the Commonwealth because it was not

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

2

presented as a Motion for Reconsideration. The Commonwealth Court indicated that a Motion for Relief from Judgment was an improper mechanism for review of the Judgment issued by the Commonwealth Court.

4. On March 16, 2017, the Commonwealth Court ordered the Commonwealth to strictly comply with the Judgment issued on August 18, 2016 within twenty (20) days. The Commonwealth presented another Motion of Reconsideration of that order on March 31, 2017. The Motion for Reconsideration was denied on April 4, 2017 and the Commonwealth Court so notified to the Commonwealth and Movant on April 28, 2017.

5. The Commonwealth filed an appeal of such determination on May 30, 2017.

6. On May 3, 2017, the Oversight Board filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA Section 304(a) in the United States District Court for the District of Puerto Rico (the "Title III Court"), commencing a case under Title III thereof.

7. On June 8, 2017, the Puerto Rico Court of Appeals ("PRCA") issued a judgment vacating the Commonwealth Court's initial determination denying the first motion for reconsideration filed by the Commonwealth titled "Motion from Relief of Judgment under Rule 49.2" and remanded the case to the Commonwealth Court. The PRCA held that the title of a motion did not affect the validity of the motion. The Commonwealth Court could not deny the motion outright and had to evaluate said motion as a Motion for Reconsideration.

8. On November 17, 2017, the Commonwealth Court denied the Motion for Reconsideration.

9. In light of the commencement of the Commonwealths' Title III Case, the Litigation was stayed by the Commonwealth Court on August 28, 2018 and has remained stayed up to this day.

**B.     Background on Title III Proceedings**

10.     On September 15, 2022, Movant filed the *Motion for Relief from Automatic Stay* [ECF No. 22229] (the "Motion") seeking an order lifting the stay currently in place with respect to the Litigation pending before the Commonwealth Court.

11.     On October 18, 2022, the Debtor filed the *Objection of the Commonwealth of Puerto Rico to Lilia Molina Ruiz's Motion for Relief from Stay* [ECF No. 22636] (the "Objection").[3]

12.     On October 25, 2022, Movant filed the *Reply to Objection of the Commonwealth of Puerto Rico to Lilia Molina Ruiz's Motion for Relief from Stay* [ECF No. 22686] (the "Reply").

13.     On October 25, 2022, the Court entered the Briefing Order requesting the parties to meet and confer and file a joint report addressing the issues enumerated therein.

14.     The Parties have met and conferred and hereby submit this supplemental briefing.

# REPORT

**A.     Scope of Title III Stay**

(a) Following the occurrence of the Effective Date of the Plan, does the Oversight Board contend that there currently exists a stay of the Litigation arising out of PROMESA, the Bankruptcy Code, and/or any orders of this Court? What is the legal basis for that stay? Does that stay apply if the relief sought in the Litigation is limited to the return of Movant's property?

          i.     Movant's Position

15.     These inquiries are directed exclusively at the Oversight Board, thus Movant does not provide a response.

          ii.    Oversight Board Position

16.     The Oversight Board submits a stay of the Litigation currently exists pursuant to the terms and provisions of the Plan and the Confirmation Order. On March 15, 2022, the Effective

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Objection.

Date (as defined in the Plan) of the Plan occurred. Specifically, both the Plan and the Confirmation Order provide, as of the Effective Date, for an injunction against, among other things, the commencement or continuation of any action or proceeding of any kind in connection with a claim discharged or released pursuant to the Plan (the "Plan Injunction"). See Plan § 92.3; Confirmation Order ¶ 59.[4] Such discharged or released claims include, among other things, claims and causes of action that arose, in whole or in part, prior to the Effective Date, whether the causes of action are acts against property or otherwise. See Plan § 92.2(a); Confirmation Order ¶ 56(a).[5]

17. As previously identified, see Objection at 2, Movant's rights pursuant to the Litigation are a "claim" under the Bankruptcy Code that can be discharged under a Title III case because they can be reduced to or substituted by money damages. A "claim" is broadly defined to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

---

[4] ". . . all Entities who have held, hold, or in the future hold Claims or any other debt or liability that is discharged or released pursuant to section 92.2 of the Plan or who have held, hold, or in the future hold Claims or any other debt or liability discharged or released pursuant to section 92.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other debt or liability discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability discharged pursuant to the Plan . . . ." Confirmation Order ¶ 59.

[5] ". . . Upon the Effective Date and independent of the distributions provided for under the Plan, the Debtors and Reorganized Debtors shall be discharged and released from any and all Claims, Causes of Action, and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and Claims of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code and section 407 of PROMESA, whether or not (a) a proof of claim based upon such Claim is filed or deemed filed under section 501 of the Bankruptcy Code, (b) such Claim is allowed under section 502 of the Bankruptcy Code and section 407 of PROMESA (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan." Confirmation Order ¶ 56(a).

11 U.S.C. § 101(5). The Litigation is a prepetition cause of action against the Commonwealth asserting the apprehension of Movant's property as illegal and requesting return of such property. Reply at 8.

18. Prior to the filing of the Commonwealth's Title III petition, the Commonwealth Court entered the Judgment, in which the Commonwealth Court found that the Uniform Forfeiture Act applied in determining whether the apprehension of the Property was lawful. Motion, Ex. 2 at 8 ("the [Commonwealth] carried out the seizure without the required notice, which results in the nullity of the Commonwealth's action. Consequently, it was determined that the Commonwealth did not comply with what is established in Article 13 of Act No. 119 of the 12th of July of 2011, as amended, known as the Uniform Forfeitures Act of 2011, *supra*, which requires for notice to be made within a period of thirty (30) days following the seizure of the property."); id., Ex. 2, at 9 ("every seizure which is carried out pursuant to Act No. 154 of the 4th of August of 2008, better known as the Act for Protection of Animals, *supra*, shall be governed by what is established in the Uniform Forfeitures Act of 2011, as amended, *supra*.").

19. The Judgment also determined that the apprehension of the Property was illegal because the Commonwealth did not satisfy the requirements of the Uniform Forfeiture Act, which thus called for the return of Property. Id., Ex. 2 at 8-9 (determining the required notice was not given and the Commonwealth did not provide sufficient evidence linking the commission of a crime to the apprehended Property); Id., Ex. 2 at 9 ("'[i]n those cases in which the Court decrees the illegality of a seizure, the Board shall return the seized property to the plaintiff (...).' Art. 19 of the Uniform Forfeitures Act of 2011, *supra*."). Consequently, the Judgment ordered "the Commonwealth of Puerto Rico, within an unextendable period of twenty (20) days, counting from this notification, [to] return the seized animals to [Movant]." Id. Ex. 2, at 10. As such, the

6

Judgment is an equitable remedy, without explicitly providing for a monetary alternative, solely against the Commonwealth.

20. Although the prepetition remedy afforded in the Judgment is an equitable one, the Supreme Court has made clear that even equitable remedies arising from a statute may be reduced to a claim under the Bankruptcy Code. Ohio v. Kovacs, 469 U.S. 274, 279 (1985) (debtor's obligation to perform clean-up pursuant to an injunction regarding a hazardous property no longer in debtor's possession was a claim in bankruptcy, notwithstanding that the debtor's obligation arose from an order issued to enforce a statute).

21. Courts adjudicate whether an equitable remedy is dischargeable by determining whether money damages are an alternative remedy—a dischargeable claim[6]—or whether they are an additional or cumulative remedy, and thus non-dischargeable. See Rederford v. U.S. Airways, Inc., 589 F.3d 30, 36 (1st Cir. 2009) ("Under § 101(5)(B), a right to an equitable remedy, whether or not fixed, disputed, or reduced to judgment, is a 'claim' within the meaning of the Bankruptcy Code, and subject to bankruptcy proceedings, if 'a monetary payment is an alternative for the equitable remedy.'" (quoting Air Line Pilots Ass'n v. Cont'l Airlines (In re Cont'l Airlines), 125 F.3d 120, 133 (3d Cir.1997) and citing Kovacs)).[7] A judgment for an equitable remedy such as

---

[6] Legislative history confirms this conclusion in providing that when "a judgment for specific performance *may be* satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' . . . ." 124 Cong. Rec. 32, 393 (1978) (emphasis added).

[7] See also In re Udell, 18 F.3d 403, 408 (7th Cir. 1994) ("right to an equitable remedy for breach of performance is a 'claim' if the same breach also gives rise to a right to payment 'with respect to' the equitable remedy. . . . If the right to payment is an 'alternative' to the right to an equitable remedy, the necessary relationship clearly exists, for the two remedies would be substitutes for one another"); Air Line Pilots Ass'n, 125 F.3d at 135 & n.11, 136 (3d Cir. 1997) (an equitable remedy is a dischargeable claim: if money damages are only "cumulative" or independently will "suffice to remedy the alleged violation"); Toste v. Smedberg (In re Toste), No. ADV 12-02333, 2014 WL 3908139, at *4 n.7 (B.A.P. 9th Cir. Aug. 12, 2014) ("Determining whether the injunction is a claim pursuant to § 101(5)(B) turns on whether it gives rise to an alternative or corollary right to payment." (citing Udell, 18 F.3d at 407)).

7

specific performance—as is the case here with the Judgment ordering the transfer of physical property—is thus dischargeable if it can be reduced to or substituted with money damages.[8]

22. Here, pursuant to applicable Puerto Rico law, money damages may be granted as an alternative to the physical return of improperly apprehended property. Puerto Rico's Uniform Forfeiture Act, under which the Judgment was decided, makes two remedies available to plaintiffs: 1) return of the property or, if the property is not able to be returned, 2) monetary payment of the value of the property. 34 L.P.R.A. § 1724p.[9] Accordingly, the Litigation is a dischargeable claim pursuant to Bankruptcy Code section 101(5).

23. In addition, the Commonwealth is not in possession of any property subject to the Litigation (the "Property"). Rather, to the Debtor's knowledge, the existing Property is in the possession of the Municipality of Bayamón and other private parties. None of such parties are parties to the Litigation and are not Title III debtors. Although not final and firm, as discussed below, the Judgment, however, orders the return of Property exclusively by the Commonwealth, rather than other parties. Since the existing Property is being held by one or more third parties, the Commonwealth does not control whether that party would or could return the Property to Movant. Further complicating matters, some of the Property may already be deceased and some of the animals may have given birth to offspring.[10] Although Movant states that the Litigation has only

---

[8] In addition, because the nature of the apprehension was wrongful rather than lawful, the Litigation represents "a claim sounding in tort." Hawkins v. Coleman Hall, CCF., 453 F. App'x 208, 211 (3d Cir. 2011) (citation omitted); see also Mac'Avoy v. Smithsonian Inst., 757 F. Supp. 60, 70 (D.D.C. 1991) (allegation that museum wrongfully took plaintiffs' paintings not a taking because it is wrongful). Tort claims are dischargeable.

[9] "In the event the court holds a forfeiture to be illegal, the Board shall return the forfeited property to the complainant. If the Board has already disposed of said property, the Government of Puerto Rico shall pay an amount equal to the appraisal value at the time of the seizure, or the amount for which it was sold, whichever is higher, plus the prevailing legal interest pursuant to the Rules of Civil Procedure, as amended, based on the appraisal value at the time of the seizure." 34 L.P.R.A. § 1724p.

[10] As to the well-being of the existing animals, upon information and belief, they are in good health. It is furthermore the Commonwealth's understanding that the animals had arrived in a deplorable condition when they were removed from Movant's house and brought to them. Two of the animals that were transferred to one of the private entities

8

one way to proceed (execution of the Judgment and the return of the Property), the Judgment does not appear to be executable.

24. Movant has represented that the Commonwealth cannot be responsible for any monetary judgment under Puerto Rico Rules for Civil Procedure. Reply at 8. The Commonwealth disagrees with such representation. As noted above, based upon applicable law, the Puerto Rico Uniform Forfeiture Act provides for either the return of the property or, if the property is not able to be returned, monetary payment of the value of the property. 34 L.P.R.A. § 1724p. While the Judgment, in its current and non-final form, does not expressly provide for a monetary remedy alternative, Movant can request a *nunc pro tunc* amendment of the Judgment allowing for the monetary payment of the value of the unreturned Property. Rule 49.1 of the Rules of Civil Procedure, 32 P.R. Laws Ann. Ap. V, R. 49.1 (providing that the errors in judgments arising "from oversight or omission may be corrected by the court at any time, of its own initiative or on the motion of any party"). Such amendment is not time barred and would be permitted under Puerto Rico's Rules of Civil Procedure. *Id.*

25. Movant has filed a Proof of Claim (claim number 77585) that asserts liability in connection with the Litigation as the basis for the Proof of Claim. Thus, to the extent that any remedy is available to Movant pursuant to the Litigation (including any monetary remedy if the Judgment were not executable in its current form), Movant's entitlement to recovery should be limited to the scope of Movant's Proof of Claim. Although Movant states there is no monetary recovery possible from the Judgment, Movant has not waived, and refuses to waive, monetary remedies against the Commonwealth in connection with the Litigation. Accordingly, the

---

arrived blind with cataracts. The Municipality of Bayamón alleges they have invested approximately $60,000 since the animals arrived, in food, caring for these animals, and other expenses.

Commonwealth respectfully maintains its concern that monetary damages against the Commonwealth might be possible if the Litigation is permitted to proceed without any limitations.

26. In sum, the remedies available to Movant on account of the Litigation, including execution of the Judgment, are a "claim" within the meaning of Bankruptcy Code section 101(5), and the Plan. Such claim has been discharged pursuant to the Plan and Confirmation Order. As a discharged claim, pursuant to the Plan Injunction, the Litigation is permanently enjoined, even though the relief requested in the Litigation is limited to return of Property. Movant is entitled to a recovery pursuant to the Plan for the liquidated value of the Litigation via her Proof of Claim.

### B. Status of the Litigation and Determination of Ownership

(b) The Objection states that "the property actually remains in dispute as the current status of the Litigation indicates that the Judgment has been remanded by the PRCA to the Commonwealth Court for reconsideration" (Obj. ¶ 40), which appears to be a reference to the June 8, 2017, remand of the Judgment to the Commonwealth Court. (See Obj. ¶ 14.) However, the Motion alleges that "on November 17, 2017, the Puerto Rico Court once again ordered the return of the livestock to Ms. Molina." (Mot. at 3.) Please address the status of the Litigation and whether the Commonwealth Court has determined ownership of the property.

    i. Movant's Position

        a. Status of Litigation

27. The judgment entered on 8/18/2016 is at this point, final, firm, and unappealable. This is so, because, on November 17, 2017, after the case was remanded by the Puerto Rico Court of Appeals so that the state court could entertain the merits of a motion to reconsider the judgment filed by the Commonwealth on 9/7/2016, the state court denied said motion to reconsider. The denial of the Commonwealth's motion to reconsider was entered on the docket on December 1st, 2017, and the Commonwealth did not seek further review from the Puerto Rico Court of Appeals. The judgment became final and firm on December 31st, 2017 as Rule 52.2 of the Puerto Rico Rules of Civil Procedure allows a party affected by a final judgment a 30 day jurisdictional period to

10

pursue a direct appeal from the date of issuance of the judgment or final order in question. The Commonwealth did not pursue additional review of the judgment from the Puerto Rico Court of Appeals.

28.    Though on 12/6/2017 the Commonwealth sought from the state court that the case be stayed as a result of the proceedings under Title III PROMESA, the Court did not accede to stay proceedings and on 7/26/2018, long after the judgment had become final and firm, entered an order for the Commonwealth to show cause why it had not complied with the judgment, and to inform the whereabouts of movant's horses.

29.    It was not until 8/28/2018 that the state court acceded to stay proceedings as a result of Title III PROMESA, but not before stating that a Title III PROMESA stay applies to "post judgment proceedings, **such as in the case at bar**" ("Titulo III de PROMESA. 48 USC § 2161. Igualmente, aplica al proceso post sentencia, como en el presente caso"), thus the state court acknowledged the finality of the 8/8/2016 judgment.

30.    Under the Puerto Rico Rules of Civil Procedure, at the stage the Bayamon proceedings now are (final and firm judgment) movant has absolutely no right to payment, only a right to the return of her property. By way of execution of judgment remedies, movant can only seek to compel the Commonwealth and any third-party receiver to return the property to her. This would include the Municipality of Bayamon, who has acted as an agent receiver of the Commonwealth. At any rate, how many animals are ready to be returned; how many offspring there are; and how many are deceased, is a factual matter that the Commonwealth must precise at the Bayamon state court, as, until the present moment, it has refused to account for the animals and their present state[11].

---

[11] Counsel for the Commonwealth (Brian Rosen, Esq.) indicated during our meeting held on 10/27/2022 that four of the animals had been "donated" to third parties. Under Puerto Rico law, donation is a contract, that requires as a

      b.  Whether the Commonwealth Court has determined ownership of the property

31. No issue exists that the property belongs to Movant. At any rate, throughout the Commonwealth's court judgment it is recognized that the horses belong to the Movant ("The animals taken into custody belong to the plaintiff party, Lilia Molina-Ruiz", factual determination 3, page 3 of the judgment; "Consequently, it is ordered that the Commonwealth of Puerto Rico, within an unextendable period of twenty (20) days, counting from this notification, return the seized animals to the plaintiff party", judgment, page 10).

     ii.  Oversight Board Position

      a.  Status of Litigation

32. The Commonwealth disputes Movant's interpretation of the current status and that the Judgment is firm and final. The Commonwealth, through its Solicitor General, is able file an appeal of the Judgment renewing its contention that the reconsideration was wrongly decided.

33. In accordance with Rule 52.2.(c) of the Rules of Civil Procedure, the Commonwealth has sixty (60) days to file an appeal. The Commonwealth Court notified the Commonwealth of the denial of the first reconsideration on March 21, 2017. Accordingly, the last day to file an appeal was Monday, May 22, 2017, as the 60th day fell on a Saturday. The filing of the Commonwealth's PROMESA petition on May 3, 2017 automatically stayed the Litigation and the deadline for filing an appeal.

34. The automatic stay, made applicable to PROMESA, is "self-executing, effective upon the filing of the [Title III] petition." Gruntz v. Cnty. of Los Angeles (In re Gruntz), 202 F.3d 1074, 1081 (9th Cir. 2000); see Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348, 354–

---

threshold element that the donor have title to the property being donated, an element not present here. The state court is well suited to deal with these contingencies, which do not belong under Title III PROMESA.

55 (5th Cir. 2008) ("When a bankruptcy petition is filed, an automatic stay operates as a self-executing injunction"). The Title III Court has the "ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. § 362(a) [and . . . ] if [a state court] proceeds without obtaining bankruptcy court permission, a state court risks having its final judgment declared void." Gruntz, 202 F.3d at 1087; but see In re Siskin, 258 B.R. 554, 562 (Bankr. E.D.N.Y. 2001) (acknowledging some courts hold that state courts can decide whether the automatic stay applies to proceedings before them). PROMESA's automatic stay was in full force and effect on May 3, 2017 upon the filing of the Commonwealth's petition. The fact that the Commonwealth Court recognized the stay on August 28, 2018 does not have any bearing on the effectiveness of the automatic stay as of May 3, 2017.

35. The initial appeal was decided solely on procedural grounds and not on the merits of the case. The PRCA concluded that the Commonwealth Court erred in denying the Motion for Reconsideration outright based solely on the title of the motion. The PRCA concluded that the Commonwealth Court had to rule on the Motion for Reconsideration before the PRCA could evaluate the case on its merits. If the PRCA evaluated this case on its merits, there is a possibility for a reversal of the Judgment.

36. If the Solicitor General proceeds to file an appeal based on the merits of the case, the Commonwealth holds valid arguments against the Judgment, including: 1) there was no forfeiture in this case; 2) the Commonwealth has never held the occupied property; and 3) the Commonwealth is not the proper party to include in the suit as it never had any interest in the occupied property. However, as previously discussed, these arguments on the merits of the case could not be originally considered by the PRCA on the first appeal due to the procedural defect.

        b.     <u>Whether the Commonwealth Court has determined ownership of the property</u>

37. The Oversight Board does not dispute that the Commonwealth Court has determined ownership of the Property but, for the reasons stated above, does not agree that determination is non-appealable.

**C.    Preliminary Determination of Property Interests**

(c) The Objection appears to take the position that the Court should not determine the parties' respective interests in the property and should assess only the Sonnax factors. (See Obj. ¶ 23 ("[T]his Court examines the factors set forth in Sonnax to determine whether 'cause' exists."); ¶ 42 n.7 ("[A] request for determination of the Commonwealth's interest or equity in property is properly brought by adversary proceeding.").) Please address the significance of the First Circuit's holding in Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 340, 350 (1st Cir. 2019) that "in order to properly weigh the In re Sonnax factors, the Title III court first needed to make at least a preliminary determination of the parties' respective property interests in the disputed" property.

      i.    Movant's Position

38. Gracia-Gracia, is significant precedent to the issue now before the Court, because as in Gracia-Gracia, in the instant case, the Commonwealth of Puerto Rico has no equity or right to Movant's property. According to the 1st Circuit Court of Appeals in Gracia-Gracia, the threshold inquiry is whether debtor has equity in the disputed property, and whether the property is necessary to an effective reorganization as provided under U.S.C. § 362(d)(2) which provision was incorporated into PROMESA (48 U.S.C. § 2161(a)). Movant's position is that the Commonwealth neither has any equity or interest in Movant's property, nor is same necessary to an effective reorganization.

39. Furthermore, it is the Movant's position that, as a secondary or subsidiary inquiry, the In re Sonnax factors, viewed in light of the fact that the Commonwealth does not have any equity in Movant's property, nor is same necessary for an effective reorganization, weigh in favor of lifting the automatic stay

      ii.    Oversight Board Position

14

40. The Oversight Board acknowledges that, in light of the First Circuit's <u>Gracia-Gracia</u> decision, a preliminary determination of the Parties' respective property interests is appropriate in applying <u>Sonnax</u> factors. The fact that the Commonwealth does not have possession of the Property is relevant to such determination. <u>Gracia-Gracia</u>, 939 F.3d at 347 (observing the lack of determining "whether the Commonwealth in fact holds assets of the plaintiffs in which the Commonwealth has no equitable interest").

41. Movant acknowledges that the Commonwealth does not hold the Property and further asserts that the Property is not property of the Debtor. <u>See</u> Reply at 5 ("Ms. Molina's property is in possession of a third party receiver, to wit, the Municipality of Bayamon, entity that was not a party in the case."). Nevertheless, Movant has not instituted suits against the entities that actually have the Property, but rather, has insisted on executing the Judgment that is solely against the Commonwealth. Movant has failed to explain how pursuing execution of the Judgment against the Commonwealth, rather than the appropriate parties, would actually provide effective relief.

42. Viewed in light of this, the <u>Sonnax</u> factors weigh even more heavily in favor of the Commonwealth. Pursuing a Judgment that appears unlikely to actually bring about the relief requested (return of property) would be a sure burden for the Commonwealth, and provide but a semblance of a chance of accomplishing Movant's stated goals. The benefit to Movant is apparent, however, if Movant pursues monetary relief in lieu of or in addition to the Judgment in its current form.

### D. Equity in Property and Necessity to Reorganization

(d) Does the Oversight Board contend that the Commonwealth has equity in the property that is the subject of the Litigation? Does the Oversight Board contend that such property is necessary for the Commonwealth's reorganization? If not, then on what basis does the Oversight Board contend that section 362(d)(2) of the Bankruptcy Code does not compel stay relief? <u>See</u> <u>Gracia-Gracia</u>, 939 F.3d at 349 ("That Congress thought that stay relief

15

should be granted under PROMESA upon a showing that the debtor lacks equity in disputed property is confirmed by Congress's express decision to incorporate subsection 362(d)(2) of the bankruptcy code into PROMESA.").

      i.      Movant's Position

43. These inquiries are directed exclusively at the Oversight Board, thus Movant does not provide a response.

      ii.      Oversight Board Position

44. The Oversight Board does not contend that the Commonwealth has equity in the property that is subject of the Litigation. As noted above, the existing Property is in the possession of non-debtor third parties: the Municipality of Bayamón and private parties. The Oversight Board furthermore does not contend such Property is necessary for the Commonwealth's reorganization.

45. As a threshold matter, however, the Oversight Board submits Bankruptcy Code section 362(d)(2) is not applicable here because the Litigation does not represent an executable "act against property" of the Commonwealth. Acts against property in this context apply only to property *of the Debtor*. See 11 U.S.C. § 362(a)(2) ("the enforcement, against the debtor or against property *of the estate*, of a judgment obtained before the commencement of the case under this title")(emphasis added)); id. § 362(a)(3) ("any act to obtain possession of property of the estate or of property *from the estate* or to exercise control over property *of the estate*" (emphasis added)); id. § 362(a)(4) ("any act to create, perfect, or enforce any lien against property *of the estate*" (emphasis added)); id. § 362(a)(5) ("any act to create, perfect, or enforce against property *of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title" (emphasis added)); accord id. § 362(c)(1) ("the stay of an act against property *of the estate* under subsection (a) of this section continues until such property is no longer property of the estate" (emphasis added)). Accordingly, application of Bankruptcy Code section

16

362(d)(2) assumes that the Debtor actually has some interest in the Property. As stated above, this is not the case here.

46. Gracia-Gracia comports with this view. In that case, the funds at issue were either in an account in the possession of the Commonwealth, or had been comingled with the Commonwealth's general operating finances. See Gracia-Gracia, 939 F.3d at 345 (observing "[segregated] funds . . . transferred to the Secretary of Treasury after July 2008, [that] remain in a segregated account . . . [and a]ll other funds, the 'non-segregated funds,' had previously escheated to the Commonwealth and had already been intermixed with the general Commonwealth coffers."). Here, the Property at issue is not held by the Commonwealth nor commingled into Commonwealth property. Rather, any existing Property is identifiable and in the possession of non-debtor third parties.

47. To the extent that equity in property and necessity to reorganization are applicable to this proceeding, it would not be pursuant to Bankruptcy Code section 362(d)(2). Accordingly, the Oversight Board respectfully submits that section 362(d)(2) of the Bankruptcy Code does not compel stay relief.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 31, 2022
San Juan, Puerto Rico

Respectfully submitted,

| **PROSKAUER ROSE LLP** | **JOSE LUIS NOVAS DEBIÉN** |
|---|---|
| */s/ Brian S. Rosen* | */s/ Jose Luis Novas Debién* |
| Martin J. Bienenstock (pro hac vice) | Jose Luis Novas Debién |
| Brian S. Rosen (pro hac vice) | USDC-PR #213905 |
| | |
| Eleven Times Square | PMB 382 |
| New York, NY 10036 | Calaf 400 |
| Tel: (212) 969-3000 | San Juan, Puerto Rico 00918 |
| Fax: (212) 969-2900 | Tel.: 787-754-8300 |
| | E-mail:jnovas1@gmail.com |
| **O'NEILL & BORGES LLC** | *Attorney for Movant* |
| */s/ Hermann D. Bauer* | |
| Hermann D. Bauer | |
| USDC No. 215205 | |
| Carla García-Benítez | |
| USDC No. 203708 | |
| Gabriel A. Miranda | |
| USDC No. 306704 | |
| | |
| 250 Muñoz Rivera Ave., Suite 800 | |
| San Juan, PR 00918-1813 | |
| Tel: (787) 764-8181 | |
| Fax: (787) 753-8944 | |

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth*