# United States Court of Appeals
## For the First Circuit

---

No. 22-1120

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO SALES TAX FINANCING
CORPORATION, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE
EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO; THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER
AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO, AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC
BUILDINGS AUTHORITY,

Debtors,

---

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors, Appellees, Cross-Appellants,

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,

Debtor, Appellee,

v.

COOPERATIVA DE AHORRO Y CREDITO ABRAHAM ROSA; COOPERATIVA DE
AHORRO Y CREDITO DE CIALES; COOPERATIVA DE AHORRO Y CREDITO DE
JUANA DIAZ; COOPERATIVA DE AHORRO Y CREDITO DE RINCON;
COOPERATIVA DE AHORRO Y CREDITO DE VEGA ALTA; COOPERATIVA DE

AHORRO Y CREDITO DR. MANUEL ZENO GANDIA,

Objectors, Appellants, Cross-Appellees,

SUIZA DAIRY CORP.,

Objector, Claimant, Appellant, Cross-Appellee,

LUIS F. PABON BOSQUES; RAUL MARTINEZ PEREZ; ELVIN A. ROSADO
MORALES; CARLOS A. ROJAS ROSARIO; RAFAEL TORRES RAMOS,

Creditors, Appellants, Cross-Appellees,

DESARROLLADORA ORAMA, S.E.; C.O.D. TIRE DISTRIBUTORS IMPORTS
ASIA, INC.; CORREA TIRE DISTRIBUTOR INC.; WORLD WIDE TIRE, INC.;
SEQUERIA TRADING CORPORATION; SABATIER TIRE CENTER, INC.; VICTOR
LOPEZ CORTES, INC.; MULTI GOMAS, INC.; JOSE COLLAZO PEREZ;
IVELISSE TAVARES MARRERO; MANUEL PEREZ ORTIZ; CORAL COVE, INC.;
SUCESION ANGEL ALVAREZ PEREZ; ANTONIO COLON SANTIAGO;
COOPERATIVA DE AHORRO Y CREDITO DE AGUADA; VILMA TERESA TORRES
LOPEZ; VIVIANA ORTIZ MERCADO; ORLANDO TORRES BERRIOS; GERMAN
TORRES BERRIOS; JUAN ALBERTO TORRES BERRIOS; VHERMANOS TORRES
TORRES, INC.; CORPORACION PLAYA INDIA, S.E.; MARIANO RAMOS
GONZALEZ; RAMON MORAN LOUBRIEL; RAFAEL MORAN LOUBRIEL; ANA MORAN
LOUBRIEL; SAN GERONIMO CARIBE PROJECT, INC.; CARIBBEAN AIRPORT
FACILITIES INC.; ESTATE OF RAUL DE PEDRO & DIANA MARTINEZ;
ALFONSO FERNANDEZ CRUZ; SUN AND SAND INVESTMENTS, CORP.;
FDR1500, CORP.; MARGARETA BLONDET; SUCESION COMPUESTO POR MARIA
I. RUBERT BLONDET; SONIA RUBERT BLONDET; MARGARITA RUBERT
BLONDET; SONIA RUBERT, Administradora; MANUEL A. RIVERA-SANTOS;
JORGE RIVERA-SANTOS; CARLOS MANUEL RIVERA-SANTOS; PABLO MELENDEZ
BRULLA; SUCESION AGUSTIN RODRIGUEZ COLON; GLORIA M. ESTEVA
MARQUES; SUCESION MANUEL MARTINEZ RODRIGUEZ; LUIS REYES FEIKERT;
JORGE RAMON POZAS; MIRIAM SANCHEZ LEBRON; JUAN A. TAPIA ORTIZ;
ANTONIO PEREZ COLON;

Claimants, Appellees,

PFZ PROPERTIES, INC.; OSCAR ADOLFO MANDRY APARICIO; MARIA DEL
CARMEN AMALIA MANDRY LLOMBART; SELMA VERONICA MANDRY LLOMBART;
MARIA DEL CARMEN LLOMBART BAS; OSCAR ADOLFO MANDRY BONILLA;
GUSTAVO ALEJANDRO MANDRY BONILLA; YVELISE HELENA FINGERHUT
MANDRY; MARGARET ANN FINGERHUT MANDRY; VICTOR ROBERT FINGERHUT
MANDRY; JUAN CARLOS ESTEVA FINGERHUT; PEDRO MIGUEL ESTEVA
FINGERHUT; MARIANO JAVIER MCCONNIE FINGERHUT; JANICE MARIE
MCCONNIE FINGERHUT; VICTOR MICHAEL FINGERHUT COCHRAN; MICHELLE
ELAINE FINGERHUT COCHRAN; ROSA ESTELA MERCADO GUZMAN; EDUARDO

JOSE MANDRY MERCADO; SALVADOR RAFAEL MANDRY MERCADO; MARGARITA
ROSA MANDRY MERCADO; ADRIAN ROBERTO MANDRY MERCADO; VICENTE
PEREZ ACEVEDO; CORPORACION MARCARIBE INVESTMENT; DEMETRIO AMADOR
INC.; DEMETRIO AMADOR ROBERTS; MARUZ REAL ESTATE CORP.; LORTU-TA
LTD., INC.; LA CUARTEROLA, INC.; JUAZA, INC.; CONJUGAL
PARTNERSHIP ZALDUONDO-MACHICOTE; FRANK E. TORRES RODRIGUEZ; EVA
TORRES RODRIGUEZ; FINCA MATILDE, INC.; JORGE RAFAEL EDUARDO
COLLAZO QUINONES,

Objectors, Claimants, Appellees,

ANTONIO MARTIN CERVERA; MARIA TERESITA MARTIN; WANDA ORTIZ
SANTIAGO; NANCY I. NEGRON-LOPEZ; GROUP WAGE CREDITORS; YASHEI
ROSARIO; ANA A. NUNEZ VELAZQUEZ; EDGARDO MARQUEZ LIZARDI; MARIA
M. ORTIZ MORALES; ARTHUR SAMODOVITZ; MIGUEL LUNA DE JESUS;
ISMAEL L. PURCELL SOLER; ALYS COLLAZO BOUGEOIS; MILDRED BATISTA
DE LEON; JAVIER ALEJANDRINO OSORIO; SERVICE EMPLOYEES
INTERNATIONAL UNION (SEIU); INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA; MAPFRE PRAICO INSURANCE COMPANY; CERTAIN CREDITORS WHO
FILED ACTIONS IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO; MED CENTRO, INC., f/k/a Consejo de
Salud de la Comunidad de la Playa de Ponce, Inc.; ASOCIACION DE
JUBILADOS DE LA JUDICATURA DE PUERTO RICO; HON. HECTOR URGELL
CUEBAS; COOPERATIVA DE AHORRO Y CREDITO VEGABAJENA; UNIVERSITY
OF PUERTO RICO RETIREMENT SYSTEM TRUST; PETER C. HEIN; MIRIAM E.
LIMA COLON; BETZAIDA FELICIANO CONCEPCION; ANGEL L. MENDEZ
GONZALEZ; ASOCIACION DE MAESTROS PUERTO RICO; ASOCIACION DE
MAESTROS DE PUERTO RICO-LOCAL SINDICAL; MORGAN STANLEY & CO.
LLC; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC;
SANTANDER SECURITIES LLC; SIDLEY AUSTIN LLP; BMO CAPITAL MARKETS
GKST, INC.; CITIGROUP GLOBAL MARKETS INC.; SAMUEL A. RAMIREZ &
CO., INC.; MESIROW FINANCIAL, INC.; MERRILL LYNCH, PIERCE,
FENNER & SMITH INC.; MERRILL LYNCH CAPITAL SERVICES, INC.;
BARCLAYS CAPITAL INC.; RBC CAPITAL MARKETS, LLC; RAYMOND JAMES &
ASSOCIATES, INC.; COMMUNITY HEALTH FOUNDATION OF P.R. INC.;
QUEST DIAGNOSTICS OF PUERTO RICO, INC.; U.S. BANK TRUST NATIONAL
ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds and
PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; U.S. BANK
NATIONAL ASSOCIATION, as Trustee for the PRPFC Outstanding Bonds
and PRIFA Bonds, and Fiscal Agent for PRPBA Bonds; NILSA
CANDELARIO; EL OJO DE AGUA DEVELOPMENT, INC.; PEDRO JOSE NAZARIO
SERRANO; JOEL RIVERA MORALES; MARIA DE LOURDES GOMEZ PEREZ;
HECTOR CRUZ VILLANUEVA; LOURDES RODRIGUEZ; LUIS M. JORDAN
RIVERA; TACONIC CAPITAL ADVISORS LP; AURELIUS CAPITAL
MANAGEMENT, LP; CANYON CAPITAL ADVISORS LLC; FIRST BALLANTYNE
LLC; MOORE CAPITAL MANAGEMENT, LP; PUERTO RICO FISCAL AGENCY AND

FINANCIAL ADVISORY AUTHORITY; HON. PEDRO R. PIERLUISI URRUTIA;
UNITED STATES, on behalf of the Internal Revenue Service;
ASOCIACION PUERTORRIQUENA DE LA JUDICATURA, INC.; FEDERACION DE
MAESTROS DE PUERTO RICO, INC.; GRUPO MAGISTERIAL EDUCADORES(AS)
POR LA DEMOCRACIA, UNIDAD, CAMBIO, MILITANCIA Y ORGANIZACION
SINDICAL, INC.; UNION NACIONAL DE EDUCADORES Y TRABAJADORES DE
LA EDUCACION, INC.; MARIA A. CLEMENTE ROSA; JOSE N. TIRADO
GARCIA, as President of the United Firefighters Union of Puerto
Rico,

Objectors, Appellees,

VAQUERIA TRES MONJITAS, INC.; BLACKROCK FINANCIAL MANAGEMENT,
INC.; EMSO ASSET MANAGEMENT LIMITED; MASON CAPITAL MANAGEMENT,
LLC; SILVER POINT CAPITAL, L.P.; VR ADVISORY SERVICES, LTD;
AURELIUS CAPITAL MANAGEMENT, LP, on behalf of its managed
entities; GOLDENTREE ASSET MANAGEMENT LP, on behalf of funds
under management; WHITEBOX ADVISORS LLC, on behalf of funds
under management; MONARCH ALTERNATIVE CAPITAL LP, on behalf of
funds under management; TACONIC CAPITAL ADVISORS L.P., on behalf
of funds under management; ARISTEIA CAPITAL, LLC, on behalf of
funds under management; FARMSTEAD CAPITAL MANAGEMENT, LLC, on
behalf of funds under management; FOUNDATION CREDIT, on behalf
of funds under management; CANYON CAPITAL ADVISORS LLC, in its
capacity as a member of the QTCB Noteholder Group; DAVIDSON
KEMPNER CAPITAL MANAGEMENT LP, in its capacity as a member of
the QTCB Noteholder Group; SCULPTOR CAPITAL LP, in its capacity
as a member of the QTCB Noteholder Group; SCULPTOR CAPITAL II
LP, in its capacity as a member of the QTCB Noteholder Group;
AMBAC ASSURANCE CORPORATION; ANDALUSIAN GLOBAL DESIGNATED
ACTIVITY COMPANY; CROWN MANAGED ACCOUNTS, for and on behalf of
Crown/PW SP; LMA SPC, for and on behalf of Map 98 Segregated
Portfolio; MASON CAPITAL MASTER FUND LP; OAKTREE-FORREST MULTI-
STRATEGY, LLC (SERIES B); OAKTREE OPPORTUNITIES FUND IX, L.P.;
OAKTREE OPPORTUNITIES FUND IX (PARALLEL), L.P.; OAKTREE
OPPORTUNITIES FUND IX (PARALLEL 2), L.P.; OAKTREE HUNTINGTON
INVESTMENT FUND II, L.P.; OAKTREE OPPORTUNITIES FUND X, L.P.;
OAKTREE OPPORTUNITIES FUND X (PARALLEL), L.P.; OAKTREE
OPPORTUNITIES FUND X (PARALLEL 2), L.P.; OAKTREE VALUE
OPPORTUNITIES FUND HOLDINGS, L.P.; OCEANA MASTER FUND LTD.;
OCHER ROSE, L.L.C.; PENTWATER MERGER ARBITRAGE MASTER FUND LTD.;
PWCM MASTER FUND LTD.; REDWOOD MASTER FUND, LTD.; BANK OF NEW
YORK MELLON; OFFICIAL COMMITTEE OF UNSECURED CREDITORS; ASSURED
GUARANTY CORP.; ASSURED GUARANTY MUNICIPAL CORP.; OFFICIAL
COMMITTEE OF RETIRED EMPLOYEES; NATIONAL PUBLIC FINANCE
GUARANTEE CORP.; FINANCIAL GUARANTY INSURANCE COMPANY;
AMERINATIONAL COMMUNITY SERVICES, LLC, as servicer for the GDB

Debt Recovery Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as
Collateral Monitor for the GDB Debt Recovery Authority.;
ATLANTIC MEDICAL CENTER, INC.; CAMUY HEALTH SERVICES, INC.;
CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC.; CIALES
PRIMARY HEALTH CARE SERVICES, INC.; CORP. DE SERV. MEDICOS
PRIMARIOS Y PREVENCION DE HATILLO, INC.; COSTA SALUD, INC.;
CENTRO DE SALUD DE LARES, INC.; CENTRO DE SERVICIOS PRIMARIOS DE
SALUD DE PATILLAS, INC.; HOSPITAL GENERAL CASTANER, INC.; GNMA &
US GOVERNMENT TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS,
INC., f/k/a Puerto Rico GNMA & U.S. Government Target Maturity
Fund, Inc.; MORTGAGE-BACKED & US GOVERNMENT SECURITIES FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Mortgage-Backed &
U.S. Government Securities Fund, Inc.; PUERTO RICO RESIDENTS
BOND FUND I, f/k/a Puerto Rico Investors Bond Fund I; PUERTO
RICO RESIDENTS TAX-FREE FUND, INC., f/k/a Puerto Rico Investors
Tax-Free Fund, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND II,
INC., f/k/a Puerto Rico Investors Tax-Free Fund II, Inc.; PUERTO
RICO RESIDENTS TAX-FREE FUND III, INC., f/k/a Puerto Rico
Investors Tax-Free Fund III, Inc.; PUERTO RICO RESIDENTS TAX-
FREE FUND IV, INC., f/k/a Puerto Rico Investors Tax-Free Fund
IV, Inc.; PUERTO RICO RESIDENTS TAX-FREE FUND V, INC., f/k/a
Puerto Rico Investors Tax-Free Fund V, Inc.; PUERTO RICO
RESIDENTS TAX-FREE FUND VI, INC., f/k/a Puerto Rico Investors
Tax-Free Fund VI, Inc.; TAX-FREE FIXED INCOME FUND FOR PUERTO
RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund, Inc.;
TAX-FREE FIXED INCOME FUND II FOR PUERTO RICO RESIDENTS, INC.,
f/k/a Puerto Rico Fixed Income Fund II, Inc.; TAX-FREE FIXED
INCOME FUND III FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto
Rico Fixed Income Fund III, Inc.; TAX-FREE FIXED INCOME FUND IV
FOR PUERTO RICO RESIDENTS, INC., f/k/a Puerto Rico Fixed Income
Fund IV, Inc.; TAX-FREE FIXED INCOME FUND V FOR PUERTO RICO
RESIDENTS, INC., f/k/a Puerto Rico Fixed Income Fund V, Inc.;
TAX-FREE FIXED INCOME FUND VI FOR PUERTO RICO RESIDENTS, INC.,
f/k/a Puerto Rico Fixed Income Fund VI, Inc.; TAX FREE FUND FOR
PUERTO RICO RESIDENTS, INC., f/k/a Tax-Free Puerto Rico Fund,
Inc.; TAX FREE FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a
Tax-Free Puerto Rico Fund II, Inc.; TAX-FREE HIGH GRADE
PORTFOLIO BOND FUND FOR PUERTO RICO RESIDENTS, INC., f/k/a
Puerto Rico AAA Portfolio Bond Fund, Inc.; TAX-FREE HIGH GRADE
PORTFOLIO BOND FUND II FOR PUERTO RICO RESIDENTS, INC., f/k/a
Puerto Rico AAA Portfolio Bond Fund II, Inc.; TAX-FREE HIGH
GRADE PORTFOLIO TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS,
INC., f/k/a Puerto Rico AAA Portfolio Target Maturity Fund,
Inc.; TAX FREE TARGET MATURITY FUND FOR PUERTO RICO RESIDENTS,
INC., f/k/a Tax-Free Puerto Rico Target Maturity Fund, Inc.; UBS
IRA SELECT GROWTH & INCOME PUERTO RICO FUND; SERVICIOS

INTEGRALES EN LA MONTANA (SIM),

Creditors, Appellees,

UNITED STATES,

Respondent, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,* U.S. District Judge]

———————————

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

———————————

Victor M. Rivera-Rios for appellants, cross-appellees Luis F.
Pabón Bosques, Raul Martinez Perez, Elvin A. Rosado Morales, Carlos
A. Rojas Rosario, and Rafael Torres Ramos.

Guillermo Ramos-Luiña for appellants, cross-appellees
Cooperativa de Ahorro y Crédito Abraham Rosa, Cooperativa de Ahorro
y Crédito de Ciales, Cooperativa de Ahorro y Crédito de Rincón,
Cooperativa de Cooperativa de Ahorro de Vega Alta, Crédito Dr.
Manuel Zeno Gandía, and Cooperativa de Ahorro y Crédito de Juana
Díaz.

Rafael A. Gonzalez-Valiente, with whom Godreau & Gonzalez
Law, LLC was on brief, for appellant, cross-appellee Suiza Dairy
Corporation.

Martin J. Bienenstock, with whom Jeffrey W. Levitan, Mark D.
Harris, Brian S. Rosen, Ehud Barak, Lucas Kowalczyk, Timothy W.
Mungovan, John E. Roberts, Adam L. Deming, Joseph S. Hartunian,
and Proskauer Rose LLP were on brief, for appellee, cross-appellant
Financial Oversight and Management Board for Puerto Rico.

Peter M. Friedman, with whom John J. Rapisardi, Maria J.
DiConza, and O'Melveny & Meyers LLP were on brief, for appellees
Governor Pedro R. Pierluisi and the Puerto Rico Fiscal Agency and
Financial Advisory Authority.

Ana A. Nunez Velazquez, Aguadilla, PR, Pro Se.

———————————

  * Of the Southern District of New York, sitting by
designation.

Charles A. Cuprill-Hernández, with whom Charles A. Cuprill, P.S.C. was on brief, for appellees Oscar Adolfo Mandry Aparicio, María del Carmen Amalia Mandry Llombart, Selma Verónica Mandry Llombart, María del Carmen Llombart Bas, Oscar Adolfo Mandry Bonilla, Gustavo Alejandro Mandry Bonilla, Yvelise Helena Fingerhut Mandry, Margaret Ann Fingerhut Mandry, Victor Robert Fingerhut Mandry, Juan Carlos Esteva Fingerhut, Pedro Miguel Esteva Fingerhut, Mariano Javier McConnie Fingerhut, Janice Marie McConnie Fingerhut, Victor Michael Fingerhut Cochran, Michelle Elaine Fingerhut Cochran, Rosa Estela Mercado Guzmán, Eduardo José Mandry Mercado, Salvador Rafael Mandry Mercado, Margarita Rosa Mandry Mercado, and Adrián Roberto Mandry Mercado.

Daniel Winik, Attorney, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, W. Stephen Muldrow, United States Attorney, Michael S. Raab, Attorney, Civil Division, and Michael Shih, Attorney, Civil Division, were on brief, for intervenor, appellee the United States.

Russell A. Del Toro Sosa, with whom David Carrion Baralt was on brief, for appellee PFZ Properties, Inc.

Maria Mercedes Figueroa Morgade on brief for appellees Demetrio Amador Inc. and Demetrio Amador Roberts.

Alexis Fuentes-Hernández on brief for appellees Maruz Real Estate Corp., Lortu-Ta LTD., Inc., La Cuarterola, Inc., Juaza, Inc., Frank E. Torres Rodriguez, and Eva Torres Rodriguez.

Eduardo J. Capdevila-Díaz, with whom Isabel M. Fullana-Fraticelli and Isabel Fullana-Fraticelli & Assocs., PSC were on brief, for appellee Finca Mitilde, Inc.

Carlos Fernandez-Nadal on brief for appellee Jorge Rafael Eduardo Collazo Quinones.

Maximiliano Trujillo-González on brief for appellees Manuel A. Rivera-Santos, Jorge Rivera-Santos, and Carlos Manuel Rivera-Santos.

Juan A. Tapia Ortiz, Brooklyn, NY, Pro Se.

---

October 27, 2022

---

THOMPSON, **Circuit Judge**.  In the years since Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, to address Puerto Rico's financial crisis by restructuring its debts, we've fielded many appeals arising out of all things PROMESA.  It is no surprise that, after the court overseeing the Title III proceedings confirmed a plan of adjustment for the Commonwealth's debts, numerous individuals and organizations lodged various complaints as to sundry aspects of that plan and the order confirming it.

In this particular installment of the series of PROMESA cases before us,[1] Luis F. Pabón Bosques, Raúl Martinez Perez, Elvin A. Rosado Morales, Carlos A. Rojas Rosario, and Rafael Torres Ramos ("Appellants") appeal from the Title III court's Findings of Fact and Conclusions of Law and Confirmation Order, offering arguments aimed at obtaining certain retirement benefits to which Appellants believe they are entitled.  Appellants' contentions have been rejected by the Financial Oversight and Management Board ("the Board"), Governor Pedro R. Pierluisi ("the Governor"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority (referred to in the Commonwealth (and here) as "AAFAF"),[2] who offer

---

[1]  This was one of several PROMESA matters argued to us on April 28, 2022.  The cases were consolidated for briefing and oral argument pursuant to Rule 3(b)(2) of the Federal Rules of Appellate Procedure.  This opinion resolves Appeal No. 22-1120 only.

[2]  We'll sometimes refer to this group -- the Board, the Governor, and AAFAF -- collectively as "Appellees."  And, for

us arguments of the jurisdiction, standing, and mootness variety.
As we'll explain, we dismiss Appellants' appeal for lack of
appellate jurisdiction.

**BACKGROUND**

A hallmark of PROMESA cases is a complicated procedural
history underpinning the case before us on appeal.  So, too, is it
here.  But before we turn to that, it will be helpful to begin
with a recent-history lesson on the universe of PROMESA and the
years-long debt-restructuring proceedings that gave rise to this
dispute.

In June 2016, Congress enacted PROMESA "to address an
ongoing financial crisis in the Commonwealth of Puerto Rico."  In
re Fin. Oversight & Mgmt. Bd. for P.R., 872 F.3d 57, 59 (1st Cir.
2017) (citing Peaje Invs. LLC v. García-Padilla, 845 F.3d 505, 509
(1st Cir. 2017)).[3]  In doing so, Congress explained that "[a]
comprehensive approach to fiscal, management, and structural
problems and adjustments . . . is necessary, involving independent

---

simplicity and because they filed a joint red brief, we often refer
to the Governor and AAFAF, in their capacities as joint appellees,
collectively as "AAFAF."

[3] The interested reader can find more detail about the
Commonwealth's debt spiral in PROMESA itself and in our precedent.
See, e.g., 48 U.S.C. § 2194(m); In re Fin. Oversight & Mgmt. Bd.
for P.R., 32 F.4th 67, 74 (1st Cir. 2022); Aurelius Inv., LLC v.
Puerto Rico, 915 F.3d 838, 843-46 (1st Cir. 2019) (overruled on
other grounds by Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius
Inv., LLC, 140 S. Ct. 1649 (2020)).

oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." 48 U.S.C. § 2194(m)(4).  To that end, Congress, through PROMESA, created the Board, see id. § 2121(b)(1), for the purpose of helping the Commonwealth "achieve fiscal responsibility and access to the capital markets," id. § 2121(a), and "to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring," id. § 2194(n)(3).

"Among the numerous responsibilities assigned to the Board was the development of fiscal plans for the Commonwealth and its instrumentalities to 'provide a method to achieve fiscal responsibility and access to the capital markets.'"  In re Fin. Oversight & Mgmt. Bd. for P.R., 32 F.4th 67, 74 (1st Cir. 2022) (quoting 48 U.S.C. § 2141(b)(1)).  So PROMESA empowered the Board to develop, review, approve, and certify plans of fiscal adjustment.  See 48 U.S.C. §§ 2141(c)-(e), 2142(c)(1).  And, as relevant here, PROMESA authorizes the Board to commence quasi-bankruptcy proceedings to restructure the Commonwealth's debts under a part of the statute we refer to as "Title III."  See id. § 2164(a); In re Fin. Oversight & Mgmt. Bd. for P.R., 872 F.3d at 59.  "Title III authorized the Board to place the Commonwealth and its instrumentalities into bankruptcy proceedings and to develop a plan of adjustment for restructuring the Commonwealth's debts to wind down the bankruptcy in a manner that would 'reform[ ] . . .

fiscal governance.'"  _In re Fin. Oversight & Mgmt. Bd. for P.R._,
32 F.4th at 75 (deletion and ellipsis in original) (quoting 48
U.S.C. § 2194(n)(3)); _see also_ 48 U.S.C. § 2175.  On May 3, 2017,
the Board commenced Title III proceedings on behalf of the
Commonwealth and some of its instrumentalities.  _See In re Fin.
Oversight & Mgmt. Bd. for P.R._, 872 F.3d at 60.

Fast forward a few years.  On January 18, 2022, after a
great deal of effort on the part of many people and entities, the
Board presented the Plan of Adjustment (well, the Modified Eighth
Amended version of the plan, which we'll refer to here as "the
Plan") for the Commonwealth and two of its instrumentalities.

But let's break here for a moment before we dive into
the Plan's negotiation and eventual confirmation because, in the
lead-up to these headliner events, there were many other
proceedings afoot.  Indeed, amidst the Board's years-long efforts
towards fashioning a workable plan of adjustment, the Board
prudently kept a watchful eye on the Commonwealth's retirement-
benefits scene.  _See generally_ 48 U.S.C. §§ 2128, 2141-2147.  The
Board's scrutiny of those matters, the course it charted to deal
with them, and Appellants' interests converge here, forming the
foundation for today's dispute.

Bear with us as we lay out the pertinent interlocking
events, weaving together several different procedural storylines.

Back in August 2020, the Commonwealth's government enacted a series of retirement benefit laws: Puerto Rico Acts 80-2020 ("Act 80"), 81-2020 ("Act 81"), and 82-2020 ("Act 82").[4] Appellants retired sometime after August 3, 2020,[5] and thereafter sought payment of the retirement pensions to which they believed they were entitled under Act 81. But, as Appellants tell it, the Commonwealth's Employees Retirement System continued to dole out retirement benefits pursuant to Act 3, the previous (and less advantageous to retirees) law.[6]

_____

[4] Acts 80-82 permitted certain government employees to retire early and provided enhanced retirement benefits. Specifically, Act 80 was meant to equip the Commonwealth's government with a tool to manage the size of its workforce by providing early retirement benefits, while Act 82 would permit crediting sick leave and vacation time towards calculating retirement ages for teachers. Act 81, the focus of Appellants' arguments before us, "contemplate[d] the establishment of defined benefit pension rights for the benefit of certain Commonwealth emergency, law enforcement, and corrections personnel who enrolled in the Commonwealth public pension system before January 1, 2000." Act 81 "partially reverse[d] Act No. 3-2013, which froze pension accruals under the ERS defined benefit plan for participants who enrolled in the ERS pension system prior to January 1, 2000."

[5] The appellate record does not bear out what employment positions the individual appellants held, but given their focus on Act 81 benefits, see supra note 4, it seems likely they fall into one or more of those categories. We need not dwell on this, though, as it has no bearing on our outcome today.

[6] Appellants were displeased, of course, and pursued redress by suing the Governor and others in February 2021 in Puerto Rico's Court of First Instance. Then in April 2021, that court stayed the case pursuant to PROMESA's automatic stay provisions, see 48 U.S.C. § 2161; 11 U.S.C. §§ 362(a)(1), 922(a)(1), and Appellants' November 2021 lift-stay motion was denied by the Title III court.

- 12 -

Now, given its efforts to keep a lid on the Commonwealth's fisc during the debt-restructuring process, the Board took issue with these new laws. In November 2020, the Commonwealth and the Board struck an accord not to implement the Acts until an agreement was reached relative to the Acts' financial viability in light of the ongoing debt-negotiation proceedings. On this record, it appears that a financial-viability agreement did not come to pass; nevertheless, the Commonwealth's legislature in November 2021 required the partial implementation of Act 80 (the early retirement package), which was followed by the Governor signing into law Joint Resolution 33 ("JR 33") on December 16, 2021. JR 33 required partial implementation of Act 80.

All the while, work on the plan of adjustment was ongoing. The various iterations of the plan shared some common features. Among them was a list of Commonwealth laws that would be preempted. As recently as November 2021, the Board endeavored to include Acts 80-82 on that preemption list. But AAFAF insisted that inclusion of these Acts among the preempted statutes was improper. The Title III court, on December 14, 2021, expressed doubt that there was a legally permissible basis upon which the plan could preempt Acts 80-82. See Order Regarding Certain Aspects of Motion for Confirmation of Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of P.R., et al., at

- 13 -

5, In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17-BK-3283
(D.P.R. Dec. 14, 2021), ECF 19517.

These assorted goings-on were on a collision course.
Here's what happened next.

Given its failure to otherwise have the benefits Acts
declared invalid through other PROMESA mechanisms, the Board
commenced an adversary proceeding[7] on December 20, 2021, against
the Governor and AAFAF seeking to nullify and enjoin enforcement
of the three Acts and JR 33, asserting, inter alia, that the Acts
were significantly inconsistent with the Commonwealth's certified
fiscal plan.  See Fin. Oversight and Mgmt. Bd. for P.R. v. Hon.
Pedro Pierluisi Urrutia, et al., Adv. Proc. No. 21-00119 in 17-
BK-3283-LTS (D.P.R. Dec. 20, 2021).  The Board explains that it
was the Governor signing JR 33 (thereby requiring partial
implementation of Act 80) that prompted it to file this adversary
proceeding.  The adversary proceeding's inception also came right
on the heels of the Title III court's order expressing skepticism
about including Acts 80-82 "in any list of preempted statutes."

Once the adversary proceeding was initiated, the Board,
the Commonwealth government, and the Office of Management and

---

[7] "[A]n adversary proceeding is a subsidiary lawsuit within
the larger framework of a bankruptcy case."  In re Fin. Oversight
& Mgmt. Bd. for P.R., 872 F.3d at 63 (quoting Kowal v. Malkemus (In
re Thompson), 965 F.2d 1136, 1140 (1st Cir. 1992)); see also Fed.
R. Bankr. P. 7001 (which 48 U.S.C. § 2170 says shall apply to
PROMESA cases).

Budget engaged in negotiations, and one week after the suit was filed, they executed a settlement stipulation ("the Stipulation") to resolve the benefits controversy -- subject to court approval. In the Stipulation, the parties agreed that Acts 80-82, as well as JR 33, were "invalidate[d] . . . pursuant to PROMESA, including as significantly inconsistent with the [relevant] certified fiscal plan," except as otherwise provided in the Stipulation.[8]  A day later, on December 28, 2021, the Title III court approved and so-ordered the Stipulation and entered final judgment ("the Approval Order"), i.e., the Title III judge signed her name to the "SO ORDERED" line in the bottom corner of the Stipulation, thereby creating the Approval Order.

In the course of the one week the adversary proceeding was pending, and once the Stipulation was entered and judicially

---

[8]  On the topic of Act 81 (the one that would apply to Appellants, remember, though Appellants do tend to discuss the Acts as a group, too), the Stipulation said:

The parties shall endeavor to reach an agreement, within 60 days of the date of this agreement on a means to provide enhanced retirement benefits to police officers consistent with the Commonwealth's certified fiscal plan and currently proposed plan of adjustment.  If the parties reach an agreement, the Oversight Board shall provide the necessary fiscal plan and budgetary approvals or certifications required by PROMESA.

The Stipulation also stated that "[t]he Court's approval or 'SO ORDERING' of this agreement shall invalidate JR 33 and Acts 80, 81, and 82 pursuant to PROMESA, including as significantly inconsistent with the certified fiscal plan, as of the enactment date," except as otherwise provided in the Stipulation.

sanctioned, Appellants never sought to intervene, object to, or otherwise participate in the proceeding, nor did they immediately appeal the adversary proceeding's outcome.

That takes us back to the Plan and its confirmation. On January 18, 2022, an "Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority" (for short, "the Confirmation Order") was (at long last) entered by the Title III court. Contemporaneously, the Title III court issued its "Findings of Fact and Conclusions of Law in Connection with" the Confirmation Order (we'll call this "the FF/CL"). Appellants did not file an objection to the Plan or the Confirmation Order in the Title III court.

Jumping backwards for a moment and as relevant to this appeal, recall that, before the adversary proceeding took place, the Board had requested a ruling during the protracted plan of adjustment proceedings that PROMESA preempts Acts 80-82. Ultimately, in its FF/CL, the Title III court did not offer such a ruling. That is so because, as the court said in the FF/CL, any question concerning the preemption of Acts 80-82 "ha[d] been mooted by the Court's approval of the [Stipulation]" -- the Stipulation, the court wrote, "resolved litigation concerning the validity of [the] Acts" and invalidated the Acts on the ground they were

"significantly inconsistent with the relevant certified fiscal plan."[9]

That brings us to the present day and the instant appeal, which protests both the FF/CL and Confirmation Order as they relate to the denial of the more favorable retirement benefits.

## DISCUSSION

Here, Appellants offer a gallimaufry of arguments regarding the FF/CL and Confirmation Order and the adversary proceeding's Stipulation and eventual Approval Order and why the Title III judge got it all wrong. But amidst the many complex issues this appeal raises, from our perch, this comes down to, as Appellees point out, appellate jurisdiction.

In tackling the appellate jurisdiction inquiry, we balance our own obligation to inquire into our jurisdiction, see Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013) (observing that this court "must appraise [its] own authority to hear and determine particular cases" (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998))); id. at 10 n.3 (noting that this court "would have an obligation to pursue the jurisdictional inquiry even if

---

[9] The FF/CL and Confirmation Order are actually separate orders, though issued in tandem. We note that Appellants primarily lump them together, indicating that the FF/CL is what mentions Acts 80-82 while the Confirmation Order does not. For purposes of today's appeal, we follow Appellants' lead.

[one side] acquiesced in the [other side's] claim of jurisdiction"); Whitfield v. Mun. of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009) ("[F]ederal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary."), with the fact that it is Appellants' burden to show this court has appellate jurisdiction, see U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 (1st Cir. 2009) (stating that the party invoking appellate jurisdiction bears the burden of establishing that it exists). And when appellate jurisdiction has been called into question, as it has by the Board and AAFAF here, this court will generally consider only the rationales offered by the party invoking the court's jurisdiction. See, e.g., Micro Signal Research, Inc. v. Otus, 417 F.3d 28, 34 (1st Cir. 2005) ("It is up to defendants to show that we have jurisdiction over their appeal of the attachments; whether or not a stronger case for jurisdiction could have been made, it has not been provided here."); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005) (declining to assert appellate jurisdiction over an order when a party "ha[d] failed to identify a valid jurisdictional hook on which [the court] might hang immediate review of" it).[10]

---

[10] Both the Board and AAFAF squarely focused their responsive arguments in this matter on the various reasons why Appellants could not pull off what they were trying to do on appeal, but lack of appellate jurisdiction was chief among those reasons. After

Appellants' notice of appeal is relevant to our jurisdictional inquiry. The Federal Rules of Appellate Procedure instruct that a notice of appeal must "designate the judgment -- or the appealable order -- from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). For our part, "[w]e can exercise jurisdiction over those orders 'fairly raised within th[e] notices.'" <u>Gonpo</u> v. <u>Sonam's Stonewalls & Art, LLC</u>, 41 F.4th 1, 9 (1st Cir. 2022) (second alteration in original) (quoting <u>Constructora Andrade Gutiérrez, S.A.</u> v. <u>Am. Int'l Ins. Co.</u>, 467 F.3d 38, 44-45 (1st Cir. 2006)).

In their notice of appeal, Appellants cite to the entry of the FF/CL and Confirmation Order as the final decisions from which they are appealing. And before us, in the jurisdictional section of their brief, Appellants anchor jurisdiction, without elaboration, on 28 U.S.C. § 1291, which generally gives the courts of appeals jurisdiction over final decisions of the district courts. Considering both proffers, and after a careful review of

---

our jurisdiction was questioned, Appellants chose not to file a reply brief addressing these concerns. While Appellants are not required to file a reply brief, <u>see</u> Fed. R. App. P. 28(c) ("The appellant may file a brief in reply to the appellee's brief."), we reiterate what we've made clear before. When appellate jurisdiction has been called into question, we generally consider only the rationales offered by the party invoking the court's jurisdiction. <u>See, e.g.</u>, <u>Otus</u>, 417 F.3d at 34.

Incidentally, the same goes for the other dispositive, threshold hurdles (standing and mootness) argued by AAFAF and the Board in their red briefs -- Appellants made no response to those arguments either.

the arguments presented here, we best frame the crux of the
jurisdictional quandary like this:  Did Appellants in fact appeal,
and appeal in a timely fashion, the court order which is the basis
of their grievance, to wit, the Approval Order that would allow us
to exercise jurisdiction over those particular claims?

From what we can tell, Appellants suggest they have done
so and seem to be making two primary arguments relevant to our
jurisdictional determination.  First, Appellants allude to the
idea that the FF/CL and Confirmation Order specifically "[held]
that [Acts 80-82] are preempted by PROMESA," in that the adversary
proceeding's Approval Order (which, upon its entry, invalidated
the Acts "pursuant to PROMESA, including as significantly
inconsistent with the certified fiscal plan") got incorporated
into the FF/CL and Confirmation Order.  Appellants imply this
incorporation occurred when the Title III court's FF/CL made
mention of the Approval Order.[11]  Second, they assert a preemption

---

[11] A quick aside.  We say "Appellants allude to the idea" and
"Appellants imply" because we're mindful that Appellants never
affirmatively contend any such incorporation by reference actually
happened, instead simply intimating the idea in their opening brief
and then promoting a theory of incorporation by reference at oral
argument and in a post-argument submission.  In their Federal Rule
of Appellate Procedure 28(j) letter, Appellants point to a
nonbinding case about the collateral order doctrine and appeals of
interlocutory decisions before concluding "the Findings of Fact
and Conclusions of Law and Confirmation Order directly incorporate
the Court Order of the Adversary Proceeding."  This "incorporation"
mention is worth flagging here as the only on-paper, explicit
"incorporation" notation we spy in Appellants' submissions.  (But

order entered because, as they tell it, the Approval Order by
operation of law got merged into the appealed-from FF/CL and
Confirmation Order for purposes of appeal.  Seemingly operating
from the supposition that the Approval Order's substance is part
and parcel of the FF/CL and Confirmation Order which were timely
appealed, Appellants expend the bulk of their appellate energy on
their endgame argument as to why the foundational Stipulation and
resulting Approval Order were fatally flawed as a matter of Puerto
Rico contract law, meaning the Title III court erred in approving
it, the adversary proceeding should be reopened, and the dispute
about the validity of Acts 80-82 should be resurrected.[12]

The Board and AAFAF urge us to reject all of this,
contending that we should dismiss the appeal because Appellants'
case is plagued by various insurmountable jurisdictional,
standing, and mootness problems.[13]  Crucially, Appellees maintain

---

it goes more to merger doctrine, not incorporation by reference.
And we'll get into that shortly.)

Accordingly, although this incorporation argument is quite
thinly presented, we close the loop on this notion as part of our
jurisdictional examination.

[12] Specifically, Appellants' legal arguments about the merits
of Acts 80-82 boil down to this:  The Stipulation was conditioned
on a specific obligation (the parties "shall endeavor" to find a
way to provide enhanced retirement benefits to police officers,
consistent with the fiscal plan), and this as yet unmet condition
"is a promised act that is conditional on the occurrence of a
future event within the control of [the Board]," meaning "this
conditional obligation is illusory."

[13] As is relevant to the instant matter, AmeriNational
Community Services, LLC, as servicer for the GDB Debt Recovery

that neither the Title III court's FF/CL nor its Confirmation Order
in any way held Acts 80-82 were preempted by PROMESA because the
adversary proceeding's Stipulation and ensuing Approval Order had
already mooted the issue.[14]  And because the adversary proceeding,
though related, was completely separate from the main Title III
case, and because no timely appeal of that proceeding's Approval
Order followed, no appellate jurisdiction lies with us from that
order.[15]

      We consider the theories advanced in support of
jurisdiction in turn.

### Incorporation

      First up is incorporation, which we dispatch with the
same brevity as it was handed to us by Appellants.  We start with

---

Authority and Cantor-Katz Collateral Monitor LLC join the Board's
brief as to the arguments it advances to rebut Appellants'
appellate contentions.  Similarly, AAFAF adopts the Board's Pabón-
related arguments.

[14] The Board and AAFAF also say this means Appellants lack
standing because no injury in fact exists that is fairly traceable
to the FF/CL and Confirmation Order, and there is no injury that
could be redressed by a favorable decision from this court.
Because we dispose of this matter on appellate-jurisdiction
grounds, not standing, we need say no more on standing or mootness.
See, e.g., Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021)
("Ultimately, we need not resolve the standing question, for 'a
federal court has leeway to choose among threshold grounds for
denying audience to a case on the merits.'" (quoting Sinochem Int'l
Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007))).

[15] Appellees do not invoke equitable mootness as a reason to
dismiss this appeal.  See United Sur. & Indem. Co. v. López-Muñoz
(In re López-Muñoz), 983 F.3d 69, 72 (1st Cir. 2020) (examining
the policy underlying and test for finding equitable mootness).

the language of the FF/CL and Confirmation Order themselves.  The FF/CL explained that,

> [t]hrough modifications to the proposed Plan and related documents, the Oversight Board previously requested judicial acknowledgement that [Acts 80-82] are preempted by PROMESA.  That request has been mooted by the Court's approval of the Stipulation and [Approval Order], pursuant to which the Puerto Rico Fiscal Agency and Financial Advisory Authority, the Office of Management and Budget, and the Honorable Pedro Pierluisi Urrutia, the Governor of the Commonwealth of Puerto Rico, resolved litigation concerning the validity of [Acts 80-82] . . . and agreed that they are significantly inconsistent with the relevant certified fiscal plan.

As Appellees contend, it is nose to face plain from this language that the FF/CL did not directly hold that Acts 80-82 are preempted by PROMESA, nor did it directly effect an invalidation of the Acts; rather, as the Title III court recognized, it is the Approval Order which did that deed (instructing that Acts 80-82 (and JR 33) were "invalidate[d] . . . pursuant to PROMESA, including as significantly inconsistent with the [relevant] certified fiscal plan").  All the FF/CL observes is an acknowledgment that the Board's prior request to include Acts 80-82 on the schedule of preempted laws had already been resolved and thus mooted.

But, as we interpret Appellants' argument to be, did the FF/CL's mere reference to the Stipulation and Approval Order constitute an incorporation by reference of the invalidation? Before answering, let's talk about the legal concept of incorporation.

- 23 -

Generally speaking, incorporation by reference is "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one." Incorporation by reference, Black's Law Dictionary (11th ed. 2019).   In a situation loosely analogous to this one relative to this particular incorporation idea, a panel of this court explained that a "passing reference to [a] settlement agreement" -- "the judgment dismissing the case said both that '[d]efendants shall pay plaintiff the sum of $50,000' and that payment shall be made 'as per the terms of the settlement agreement'" -- "is not enough to incorporate its terms into [a] judgment." Colón-Torres v. Negrón-Fernández, 997 F.3d 63, 70 (1st Cir. 2021); see also F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 449 F.3d 185, 190 (1st Cir. 2006) (explaining that a judgment's "bare reference" to a settlement agreement (that "the parties ha[d] come to a settlement agreement") was not enough to incorporate the settlement's terms into that judgment, but a later judgment that set forth (inter alia) the court's understanding of the settlement's main terms did constitute an incorporation of the settlement's terms).

With this in mind, we consider again the language the Title III court deployed.   True, the FF/CL makes mention of the Approval Order, just as the Colón-Torres judgment made mention of

the settlement agreement.  But the Approval Order gets a shout-out in the FF/CL simply for its existence, not because the FF/CL is adopting a preemption take on Acts 80-82.  The FF/CL solely stated that the Board's please-include-Acts-80-82-on-the-preemption-list request was moot.  This passing reference to the Approval Order -- offered to explain why the Title III court in its FF/CL wouldn't be touching on the validity of Acts 80-82 -- does not amount to an FF/CL incorporation of the Approval Order's invalidation of the Acts.

And, importantly for us, Appellants offer us no legal authority or persuasive argument that would compel us, as a matter of law, to conclude otherwise.  Thus, this argument is a no-go as a jurisdictional hook.[16]

### Merger

That leaves merger, which appears to be the major thrust of Appellants' jurisdictional asseveration.  As far as words and

---

[16] To be clear -- because this case is a procedural hot mess -- no one disputes that Appellants' appeal from the entry of the FF/CL and Confirmation Order was timely, and no one disputes that we have jurisdiction to review those orders.  But, as we've endeavored to explicate as best we can based on the arguments as they were presented to us, that's not the issue here.  Appellants latch onto the FF/CL's mention of Acts 80-82 to seek to use these orders as a vehicle to assail what the Approval Order actually did, and their brief reflects as much.
Even if we were to disregard the complete picture and thrust of Appellants' arguments, limiting our framing of Appellants' arguments to an attack on the FF/CL and Confirmation Order based on Appellants' belief that they wrongly concluded the Acts were preempted by PROMESA, that construction suffers the same fatal

principles go, merger and incorporation sound deceptively similar.
Here, though, they mean different things.  We've just rejected the
idea that the FF/CL and Confirmation Order incorporated the
adversary proceeding's Approval Order's invalidation of the Acts.
Merger, for appellate jurisdiction purposes, operates a little
differently.  Merger here is about whether the Approval Order
itself is before us on appeal.  We explain.

Rule 3 of the Federal Rules of Appellate Procedure
explicates that "[t]he notice of appeal encompasses all orders
that, for purposes of appeal, merge into the designated judgment
or appealable order," and instructs that "[i]t is not necessary to
designate those orders in the notice of appeal."  Fed. R. App. P.
3(c)(4); but see Fed. R. App. P. 3, advisory committee's notes to
the 2021 amendment (cautioning that the amendment "does not attempt
to codify the merger principle but instead leaves its details to
case law").

Appellants, in accordance with Rule 3's guidance,
probably banked on the Approval Order being merged into the FF/CL
and Confirmation Order, thinking they were timely appealing the
Approval Order by appealing the FF/CL and Confirmation Order.  This
comes across in the (unsupported, largely undeveloped) assumptions

---

flaw laid out in our above jurisdictional analysis:  The orders
did not offer any such preemption "holding" as Appellants insist
it did, instead stating only that the Board's request to include
Acts 80-82 on the preemption schedule was moot.

they make in their opening brief and also in that Appellants'
counsel represented at oral argument that the Confirmation Order
is a final order pursuant to 28 U.S.C. § 1291, and that Appellants
didn't try to intervene in or appeal from the adversary proceeding
because they were "just waiting for the Confirmation Order."  This
merger-based assumption is most obviously showcased in Appellants'
post-argument submission, wherein they rely on In re Peachtree
Lane Assocs., Ltd., 188 B.R. 815, 822 (N.D. Ill. 1995), to support
the notion that the Approval Order is before us on appeal because
"[i]t is well established . . . that 'when the appellant appeals
the final judgment, that judgment necessarily incorporates all
earlier interlocutory decisions' and '[b]y referring to the final
order the [appellants] present the whole case to us on appeal.'"
Id. (the first two alterations are our own) (quoting Glass v.
Dachel, 2 F.3d 733, 738 (7th Cir. 1993)).

    Here's the thing about Appellants' merger theory,
though:  If the adversary proceeding's Approval Order did not merge
into the FF/CL and/or Confirmation Order (the final orders
designated in the notice of appeal), then the Approval Order, which
had become final and immediately appealable pursuant to 28 U.S.C.
§ 158(d)[17] after its entry, is not properly before us on appeal.

---

[17] As pertinent here, the statutory text explains that "[t]he
district courts of the United States shall have jurisdiction to
hear appeals from final judgments, orders, and decrees," 28 U.S.C.
§ 158(a)(1), and "[t]he courts of appeals shall have jurisdiction

We now turn to explaining why all of this is so (based on the separateness of the adversary proceeding and main bankruptcy case as well as principles of finality), and why the end result is that Appellants' merger concept does not pan out as a jurisdiction-conferring mechanism for this appeal.

Remember that, as a matter of procedure here, the Approval Order was the result of the adversary proceeding, whereas the FF/CL and Confirmation Order arose out of the main bankruptcy case.  For appellate-procedure purposes, this separation is significant.  Because if today's matter had been a typical civil case involving an earlier order being swept up into an appeal by virtue of a general notice of appeal from the same case's final order, Appellants might've been onto something with their merger idea.  See Fed. R. App. P. 3(c)(4); see also In re Saco Loc. Dev. Corp. (In re Saco), 711 F.2d 441, 443-44 (1st Cir. 1983) (contrasting traditional civil actions with bankruptcy cases with respect to their structure and how finality can arise).  But the structure of bankruptcy matters, as we'll untangle, is a horse of a different color, and this case and its posture are

_____

of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section," id. § 158(d)(1).

- 28 -

distinguishable from the normal civil litigation case in a handful
of important ways.[18]

    "Traditionally, every civil action in a federal court
has been viewed as a 'single judicial unit,' from which only one
appeal would lie." In re Saco, 711 F.2d at 443 (quoting 6 J.
Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 54.19
(1982)). "Ordinarily, putting aside the effect of Fed. R. Civ. P.
54(b), an action remains a 'single judicial unit' even when it
contains multiple claims and multiple parties." Id. (citations
omitted).

    This is not what we have in the case before us.

    Unlike a typical civil case, bankruptcy cases can
involve a vast number of litigants and interested parties
interspersed throughout the bankruptcy case and its various

---

    [18] The analysis that follows leans heavily on bankruptcy
cases, which is commonplace in bankruptcy infused PROMESA matters,
particularly those involving questions of first impression or
questions unique to the one-of-a-kind PROMESA statute. See, e.g.,
In re Fin. Oversight & Mgmt. Bd. for P.R., 954 F.3d 1, 7–8 (1st
Cir. 2020) (observing that the appropriate analogy to a PROMESA
Title III proceeding is a Chapter 9 municipal reorganization);
Mun. of San Juan v. Puerto Rico, 919 F.3d 565, 575 (1st Cir. 2019)
("In the ordinary bankruptcy context, a district court has
concurrent jurisdiction with a bankruptcy court to decide whether
the automatic stay provision of Section 362 applies to its own
proceedings," and "we see no basis for concluding that the rule is
otherwise with respect to the District Court, the Title III Court,
and the PROMESA automatic stay."); Peaje Invs. LLC, 845 F.3d at
511–12 & n.3 (holding a "lack of adequate protection for creditors
constitutes cause to lift the PROMESA stay," looking to and
tracking as consistent with bankruptcy precedent).

subsidiary, independent proceedings.  Indeed, in the world of
bankruptcy, even "the word 'case' has a specialized meaning."  In
re Fin. Oversight & Mgmt. Bd. for P.R., 872 F.3d 57, 60 n.2 (1st
Cir. 2017).  Specifically, "[a] bankruptcy case is what is
commenced by the filing of a petition for bankruptcy relief" --
"the whole ball of wax."  Id. (quoting 7 Collier on Bankruptcy
¶ 1109.04[1][a][i] (Alan N. Resnick & Henry J. Sommer eds., 16th
ed. 2016) [hereinafter Collier]).  A "'proceeding,' by contrast,
refers to 'any one of the myriad discrete judicial proceedings
within a case,'" so a "'case' encompasses all of the discrete
proceedings that follow the filing of a petition for bankruptcy
relief, including adversary proceedings."  Id. (quoting 7 Collier
¶ 1109.04[1][a][i]).

An adversary proceeding generally constitutes "a
discrete procedural unit within the embracive bankruptcy case."
Ritzen Grp., Inc. v. Jackson Masonry, LLC (Ritzen), 140 S. Ct.
582, 586 (2020) ("A bankruptcy case encompasses numerous
'individual controversies, many of which would exist as stand-
alone lawsuits but for the bankrupt status of the debtor.'"
(quoting Bullard v. Blue Hills Bank, 575 U.S. 496, 501 (2015)));
id. at 589 (explaining that "a discrete dispute" within the
bankruptcy is "an independent 'proceeding' within the meaning of
28 U.S.C. § 158(a)" (quoting Bullard, 575 U.S. at 502-05)); see
also In re Saco, 711 F.2d at 445-46.

- 30 -

And the meaningfulness of the difference between adversary proceedings and main bankruptcy cases for purposes of appeal has been strung together nicely by a sister circuit: "[A] 'notice of appeal in a main bankruptcy proceeding' cannot 'serve as a notice of appeal in a related adversary proceeding.'" In re Cleveland Imaging & Surgical Hosp., L.L.C. (In re Cleveland Imaging), 26 F.4th 285, 293 (5th Cir. 2022) (quoting Dorsey v. U.S. Dep't of Educ. (In re Dorsey), 870 F.3d 359, 362 (5th Cir. 2017) (cleaned up)). "Instead, the 'main bankruptcy case and adversary proceeding must be treated as distinct for the purpose of appeal.'" Id. (quoting In re Dorsey, 870 F.3d at 363); see also Dietrich v. Tiernan (In re Dietrich), 490 Fed. App'x 802, 804 (6th Cir. 2012) (unpublished) (elaborating that the main bankruptcy case and adversary proceeding "have separate docket numbers, separate issues, and separate parties")). "After all, 'adversary proceedings are discrete judicial units,'" In re Cleveland Imaging, 26 F.4th at 293 (quoting In re Dorsey, 870 F.3d at 362) -- "[r]efusing to treat a notice of appeal in the main case as a notice of appeal in the adversary case makes sense [since] adversary proceedings are discrete judicial units," In re Dorsey, 870 F.3d at 363. And because the In re Cleveland Imaging appellants hadn't "file[d] a notice of appeal on the adversary docket, their notice didn't embrace the dismissal of their

adversary proceeding," and the court lacked jurisdiction.  26 F.4th at 293.

This is where the separateness of the adversary proceeding from the main bankruptcy case dovetails with important finality principles, all of which combine to guide our analysis. Indeed, just because an adversary proceeding falls under the umbrella of the bankruptcy does not mean a case-closing order that finally resolves an adversary proceeding is, for purposes of appeal, automatically merged with an order that issues in "the whole ball of wax" bankruptcy case such that a timely appeal of a larger-bankruptcy-case final order (the FF/CL and Confirmation Order) would allow an appellant to contest the adversary proceeding's final order (the Approval Order).

Recall that § 158(d) gives litigants a right of appeal to the courts of appeals from all "<u>final</u> decisions, judgments, orders [or] decrees entered" by district courts in bankruptcy cases.  28 U.S.C. § 158(d) (emphasis added).  In other words, we don't have jurisdiction unless the appealed-from decision is, in fact, final, but when it is final, our jurisdiction does attach if an appeal to us is properly noticed.  And while "[i]t is often difficult to determine what constitutes a 'final' judgment or order under section 158(d)[, t]here is somewhat less difficulty in doing so in an adversary proceeding" because "the finality determination in such proceedings 'closely resembles [that] in an ordinary case

- 32 -

[between the parties] in a district court.'" <u>Quiros Lopez</u> v.
<u>Unanue Casal</u> (<u>In re Unanue Casal</u>), 998 F.2d 28, 31 (1st Cir. 1993)
(quoting <u>Estancias La Ponderosa Dev. Corp.</u> v. <u>Harrington</u> (<u>In re</u>
<u>Harrington</u>), 992 F.2d 3, 6 n.3 (1st Cir. 1993)). "Accordingly, a
district court order in an adversary proceeding is not appealable
as of right under section 158(d) unless it ends the entire
adversary proceeding on the merits and leaves nothing for the court
to do but enter the judgment." <u>Id.</u> (internal quotation marks and
citation omitted); <u>see also</u> <u>In re González</u>, 795 F.3d 288, 291 (1st
Cir. 2015) (instructing that, "within each discrete adversary
proceeding in a bankruptcy, 'ordinary concepts of finality apply,'
meaning that 'orders in which the merits are not determined' are
generally not final" (quoting 1 Collier ¶ 5.08[1][b], [5])).

Indeed, important to our work today, "Congress has long
provided that orders in bankruptcy cases may be immediately
appealed if they finally dispose of *discrete disputes within the*
*larger case* -- and in particular, it has long provided that orders
finally settling creditors' claims are separately appealable." <u>In</u>
<u>re Saco</u>, 711 F.2d at 444 (emphasis in original); <u>id.</u> at 445-46
(explaining that, "given a longstanding Congressional policy of
appealability, an uninterrupted tradition of judicial
interpretation in which courts have viewed a 'proceeding' within
a bankruptcy case as the relevant 'judicial unit' for purposes of
finality, and a legislative history that is consistent with this

tradition, we conclude that a 'final judgment, order, or decree'
under 28 U.S.C. § 1293(b) includes an order that conclusively
determines a separable dispute over a creditor's claim or
priority").[19] See also Perry v. First Citizens Fed. Credit Union
(In re Perry), 391 F.3d 282, 285 (1st Cir. 2004) ("To be final, a
bankruptcy order need not resolve all of the issues in the
proceeding, but it must finally dispose of all the issues
pertaining to a discrete dispute within the larger proceeding.");
In re Am. Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985)
(reasoning that "[a] bankruptcy order need not dispose of all
aspects of a case in order to be final; an order which disposes of
a 'discrete dispute within the larger case' will be considered
final and appealable" as long as it "'conclusively determine[s]'
the dispute" (quoting In re Saco, 711 F.2d at 444, 445-46)).

Our takeaway is this: Putting it all together means
that we ask ourselves, on a case-by-case basis, whether an
adversary proceeding, upon its conclusion, has the sufficient
indicia of distinction (from the primary bankruptcy proceeding)
and finality to be immediately appealable. See, e.g., Ritzen, 140

---

[19]    We are aware that In re Saco dealt with 28 U.S.C.
§ 158(d)'s predecessor, § 1293(b), but that is a distinction
without meaning -- the leading bankruptcy treatise and our own
precedent have indicated that the statutes have been accorded the
same meaning. See, e.g., Perry v. First Citizens Fed. Credit Union
(In re Perry), 391 F.3d 282, 285 (1st Cir. 2004) (citing Giles
World Mktg., Inc. v. Boekamp Mfg., Inc., 787 F.2d 746, 748 n.2
(1st Cir. 1986)); 1 Collier ¶ 5.07.

S. Ct. at 586-87, 589-90 (assessing a proceeding within the larger
bankruptcy case and its finality based on the type of proceeding
and the circumstances present); In re Perry, 391 F.3d at 285
(same); In re Am. Colonial Broad. Corp., 758 F.2d at 801 (same);
In re Saco, 711 F.2d at 444-46 (same); see also In re Cleveland
Imaging, 26 F.4th at 293; In re Dorsey, 870 F.3d at 362.

That every resolved adversary proceeding does not merge
into an appeal from a final plan makes sense as a policy matter,
too.  Pandemonium would result if litigants could get automatic
merger-principle appellate review of any number of earlier, final
adversary proceeding orders and judgments simply by appealing a
final order in the main bankruptcy case.  As noted earlier, these
bankruptcy cases involve multitudes of claimants, creditors,
interested parties, claims, interests, and proceedings, sometimes
taking years to untangle and ultimately resolve.[20]  Case in point:

---

[20] In general, and as is clear from our work to this point,
bankruptcy cases have an impressive knack for complicating
appellate review.  Indeed, "bankruptcy litigation in many
instances is unlike ordinary civil litigation" -- as is certainly
the case here and in PROMESA generally, "bankruptcy litigation
frequently involves and affects the interest of entities that are
frequently not formally parties to a particular adversary
proceeding or contested matter."  1 Collier ¶ 5.07.  "It might be
said that all of the creditors and the debtor or trustee are
parties to every order entered in a bankruptcy case, but that does
not help to determine what parties have standing to take an appeal.
Procedural chaos would result from a rule that all parties who are
involved directly, indirectly, or tangentially in the case have
the power to appeal any order entered by a bankruptcy judge."  Id.
But once again, we repeat, our analysis allows us to avoid any
standing problem.

the Commonwealth's bankruptcy case.  So it tracks that it should
not work this way.  See, e.g., Ritzen, 140 S. Ct. at 586-87 ("It
is thus common for bankruptcy courts to resolve discrete
controversies definitively while the umbrella bankruptcy case
remains pending.").  This applies with full force in today's case.

Here, it is clear that the adversary proceeding was
separate from the bankruptcy case and upon entry of the Approval
Order became final and immediately appealable under § 158(d).  The
Approval Order conclusively resolved the entire benefits dispute,
including issues as to what relief would be granted, closed the
adversary proceeding, and even dismissed the Board's complaint
with prejudice.  See In re González, 795 F.3d at 291; In re Perry,
391 F.3d at 285; In re Unanue Casal, 998 F.2d at 31; In re Am.
Colonial Broad. Corp., 758 F.2d at 801; In re Saco, 711 F.2d at
444.  And importantly, once it became clear that no party sought
to appeal the adversary proceeding's final determinations, it
brought certainty and predictability to the Title III proceedings
that there would be additional monies in the Commonwealth's coffers
available for distribution down the road.  Truth be told,
Appellants simply have not attempted to confront the important
distinction between the adversary proceeding and the main

bankruptcy case or explain why the Approval Order did not finally resolve the adversary proceeding, thus making it appealable.[21]

Given the finality doctrine as understood within the context of a bankruptcy proceeding, and in light of our own precedent and the persuasive reasoning out of our sibling circuits, we conclude here that on the facts of this case, and contrary to Appellants' apparent, assumed, or aspirational take on the interplay of these legal considerations, the adversary proceeding's Approval Order, based on the merger doctrine, cannot be construed as part of the main bankruptcy case's FF/CL and/or Confirmation Order. See generally Ritzen, 140 S. Ct. at 587 (urging that immediate appeal of "discrete, controversy-resolving decisions" in adversary proceedings makes good sense because delaying such appeals "would long postpone appellate review of fully adjudicated disputes" and could lead to an inefficient need to "unravel later adjudications rendered in reliance on an earlier decision"); In re Perry, 391 F.3d at 285 (finding a "bankruptcy court's order finally dispose[d] of all the material issues pertaining to this discrete dispute and [was], therefore, final and appealable"); In re Saco, 711 F.2d at 444 (explaining that

---

[21] Moreover, the final nail in the coffin is another crucial issue Appellants make no effort to develop here: Appellants do not suggest that their decision to wait for the Confirmation Order to issue before challenging the adversary proceeding's outcome stemmed from any notion that the Approval Order could or was likely to be altered by the final plan.

"orders in bankruptcy cases may be immediately appealed if they finally dispose of *discrete disputes within the larger case*" (emphasis in original)); see also In re Dorsey, 870 F.3d at 362-63 ("An adversary proceeding is thus part of the bankruptcy but it is not the bankruptcy case itself, as illustrated by the fact that the dismissal of an adversary proceeding is an appealable final order even though the bankruptcy case continues.") (quoting United States v. Peel, 595 F.3d 763, 768-69 (7th Cir. 2010)); Prof'l. Ins. Mgmt. v. Ohio Sec. Ins. Co. (In re Pro. Ins. Mgmt.), 285 F.3d 268, 281 (3d Cir. 2002) (explaining that "a bankruptcy court order ending a separate adversary proceeding is appealable as a final order even though that order does not conclude the entire bankruptcy case" (quoting Smith v. Revie (In re Moody), 817 F.2d 365, 367-68 (5th Cir. 1987))).[22]

---

[22] The important policy consideration underlying the merger doctrine in the notice-of-appeal arena is that a case's interlocutory orders might otherwise get excluded from review. See Rule 3 advisory committee's notes to 2021 amendments ("Designation of the final judgment confers appellate jurisdiction over prior interlocutory orders that merge into the final judgment. The merger principle is a corollary of the final judgment rule: a party cannot appeal from most interlocutory orders, but must await final judgment, and only then obtain review of interlocutory orders on appeal from the final judgment."). As we've explained, here, this policy consideration is inapplicable -- this discrete adversary proceeding is sufficiently distinct from the bankruptcy proceeding, and it did not result in an interlocutory order but rather a final, appealable order that fully resolved the adversary controversy. See generally In re Unanue Casal, 998 F.2d at 31; see also In re Saco, 711 F.2d at 444.

All this in turn means the appeal clock started ticking when the Approval Order was entered.  See 28 U.S.C. § 158(d); Fed. R. App. P. 4(a)(1)(A) (requiring that a Rule 3 notice of appeal be filed "within 30 days after entry of the judgment or order appealed from"); Fed. R. App. P. 6.  Of import to us, Appellants have not suggested anything that would indicate they could not have appealed the Approval Order in the normal course.[23]  Bottom line, due to Appellants' failure to timely appeal the Order arising out of the adversary proceeding, we lack jurisdiction.  See In re Cleveland Imaging, 26 F.4th at 293; In re Dorsey, 870 F.3d at 362.

A coda before departing.  We are mindful that today's analysis is, of course, cast against the unique backdrop of PROMESA.  While bankruptcy law generally places a premium on the need for prompt, orderly action and the efficiency of proceedings, PROMESA builds on that:  PROMESA forthrightly acknowledges the Commonwealth's dire fiscal emergency and draws on it to lay out specific tools and various expediting procedures in an effort to keep all PROMESA goings-on in harmony with the ultimate goal of helping the Commonwealth achieve financial stability by efficiently restructuring its debts.  See, e.g., Mun. of San Juan v. Puerto Rico, 919 F.3d 565, 577 (1st Cir. 2019) (discussing the

---

[23] Appellants do not argue they lacked notice of the adversary proceeding's inception, pendency, or conclusion, nor do they assert they were not aware of the entry of the Approval Order.

policy goal of reorganization proceeding efficiently and applying to PROMESA the purposes of the Bankruptcy Code); see also, e.g., 48 U.S.C. § 2194(m)(4) (underscoring, in the stay context, the need for "orderly process" to restructure debts as a reason to take "[a] comprehensive approach to [the Commonwealth's] fiscal, management, and structural problems"); id. § 2194(n)(1) (discussing the "immediate existing and imminent crisis" of the Commonwealth's debt and the need to focus on achieving financial stability and returning to economic growth in the Commonwealth). The PROMESA backdrop makes it all the more apparent that Appellants -- who had taken other steps to lodge and pursue their grievances (in the Court of First Instance, remember), and who were well aware of both the adversary proceeding and the years-long effort to arrive at a final plan that was chugging right along -- should have taken the most expeditious route by immediately appealing the adversary proceeding's final, dispute-resolving Approval Order rather than waiting for the Confirmation Order to enter and appealing in the main bankruptcy case.

### CONCLUSION

The upshot -- we dismiss Appellants' appeal for lack of appellate jurisdiction. Each party shall bear their own costs.