UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

## STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH NOVEMBER 2–3, 2022 OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the November 2–3, 2022 omnibus hearing and in response to this Court's orders, dated October 21, 2022 and October 26, 2022 [Case No. 17-BK-03283, ECF Nos. 22668, 22691].

I.    **General Status and Activities of the Oversight Board**

*HTA Plan of Adjustment*

1. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board proposed the Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority [Case No. 17-BK-03567, ECF No. 1377] (as amended, supplemented, or modified, the "HTA Plan of Adjustment") for confirmation pursuant to Title III of PROMESA. The Court considered confirmation of the HTA Plan of Adjustment, and objections thereto, at a hearing on August 17, 2022 (the "Confirmation Hearing").

2. On August 18, 2022, the Court entered the *Order to Meet and Confer* [Case No. 17-BK-03567, ECF No. 1389] (the "Meet & Confer Order"), directing Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") and Franklin Advisors, Inc. and Nuveen Asset Management (together, the "HTA Insured Bondholder Group") to meet and confer to reach an agreement and propose language reflecting the agreement for inclusion in the HTA Plan of Adjustment to resolve the *Limited Objection of the HTA Insured Bondholder Group to the Third Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1301] (the "IBG Objection").

3. On August 23, 2022, in accordance with the Meet & Confer Order, Assured and the HTA Insured Bondholder Group filed the *Joint Response of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and HTA Insured Bondholder Group to Order to Meet and Confer (ECF No. 21863)* [Case No. 17-BK-03567, ECF No. 1394] (the "Joint Response"), which provided

2

certain proposed revisions to the HTA Plan of Adjustment, among other documents, to consensually resolve the IBG Objection to confirmation of the HTA Plan of Adjustment.

4. On August 24, 2022, the Court entered the *Order to Submit Revised Proposed Plan and Related Materials* [Case No. 17-BK-03567, ECF No. 1399] (the "Order") directing the Oversight Board to make appropriate revisions to the HTA Plan of Adjustment, proposed Findings of Fact and Conclusions of Law, and the proposed HTA Confirmation Order, as well as all other relevant plan materials, that address the Joint Response and representations made during the Confirmation Hearing that resolved other outstanding objections to the HTA Plan of Adjustment.

5. Pursuant to the Order, on September 6, 2022, the Oversight Board filed its proposed *Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1404] (the "Modified Fifth Amended HTA Plan") which contained revisions that resolve the IBG Objection and, as represented on the record of the Confirmation Hearing, the objection filed by Finca Matilde, Inc. [Case No. 17-BK-03567, ECF No. 1293]. Additionally, pursuant to the Order, the Oversight Board filed a number of additional documents reflecting revisions in response to the Order and comments from certain parties, including (i) a revised proposed *Findings of Fact and Conclusions of Law in Connection with Confirmation of Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1405-5], (ii) a revised proposed *Order and Judgment Confirming Modified Fifth Amended Title III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1405-3], and (iii) the *Second Amended Plan Supplement and Plan Related Documents of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1405-7].

3

6. On October 12, 2022, the Court confirmed the Modified Fifth Amended HTA Plan. The Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), among other parties, are working collaboratively to prepare for the consummation of the Modified Fifth Amended HTA Plan.

*Appeals from the HTA Confirmation Order*

7. On October 24, 2022, the plaintiffs in *Vazquez Velazquez v. P.R. Highways & Transp. Auth.* [Case No. 21-1739, Docket Entry No. 1287] (the "Vazquez Velazquez Objection," and the objectors, the "Vazquez Velazquez Group") filed a notice of appeal to the United States Court of Appeals for the First Circuit (the "First Circuit") [Case No. 17-BK-03567, ECF No. 1423]. The Vazquez Velazquez Group argues that their asserted claims were improperly classified in Class 16 (HTA General Unsecured Claims) and that the HTA Plan should be amended to have their asserted claims placed into a separate class of nondischargeable claims. In confirming the HTA Plan, Judge Swain overruled the Vazquez Velazquez Objection, holding the Vazquez Velazquez Group's claims, which arise from litigation concerning a discontinued HTA compensation program, are not exempt from discharge, and thus are not "substantially dissimilar" to the other general unsecured claims in the class. *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Fifth Amended File III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1416], ¶ 114 n.14. The Vazquez Velazquez Group also concurrently filed a motion to stay confirmation of the HTA Plan pending appeal [Case No. 17-BK-03567, ECF No. 1424].

8. In accordance with the Court's briefing order [Case No. 17-BK-03567, ECF No. 1425] (the "Scheduling Order"), on October 28, 2022, the Oversight Board and certain monoline insurers filed their oppositions to the Vazquez Velazquez Group's motion to stay the effectiveness

4

of the HTA Confirmation Order and the consummation of the Modified Fifth Amended HTA Plan [Case No. 17-BK-03567, ECF Nos. 1432, 1434]. Similarly, on October 31, 2022, the Vazquez Velazquez Group filed a reply in support of its motion [Case No. 17-BK-03567, ECF No. 1435]. Pursuant to the Scheduling Order, the Court has taken the matter under advisement.

*Recent First Circuit Decisions*

9. On May 17, 2022, the First Circuit, in *Centro De Periodismo Investigativo, Inc. v. Financial Oversight And Management Board For Puerto Rico* [Case No. 21-1301, Doc. 00117876976], held (two to one) that Congress, through PROMESA section 106, abrogated the Oversight Board's sovereign immunity from being sued in federal court on a Commonwealth claim. The Oversight Board filed a petition for rehearing *en banc* [Case No. 21-1301, Doc. 00117882073], which was denied two to one on June 7, 2022 [Case No. 21-1301, Doc. 00117884913]. The two judges in regular service who were not on the panel that decided the case turned out to be recused from voting on the rehearing. On June 14, 2022, the Oversight Board filed a motion requesting that the First Circuit stay the mandate, as the Oversight Board planned to file a petition for a writ *certiorari* to the United States Supreme Court seeking review of the First Circuit's decision. On June 21, 2022, the First Circuit granted a stay of the mandate pending U.S. Supreme Court review if the Oversight Board filed its petition for a writ of *certiorari* on or before July 20, 2022. On July 20, 2022, pursuant to the First Circuit's order, the Oversight Board petitioned the Supreme Court for a writ of *certiorari* to review the First Circuit's decision. On October 4, 2022, the Supreme Court granted the Oversight Board's petition for a writ of *certiorari*. Accordingly, the action in the District Court remains stayed pending the Supreme Court's review.

10. On February 17, 2022, the Oversight Board appealed the portion of the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the*

5

*Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-BK-03283, ECF No. 19813] (the "Commonwealth Confirmation Order"), and the corresponding findings of fact and conclusions of law, holding that the Takings Clause of the Fifth Amendment prohibits the impairment or discharge in bankruptcy of prepetition unsecured claims for just compensation for takings. On July 18, 2022, the First Circuit, in *Financial Oversight & Management Board for Puerto Rico v. Cooperative de Ahorro y Credito Abraham Rosa* [Case No. 22-1119, Doc. 00117899244], affirmed the Commonwealth Confirmation Order and the corresponding findings of fact and conclusions of law.

11. On October 17, 2022, the Oversight Board petitioned the Supreme Court for a writ of *certiorari* to review the First Circuit's decision. The petition highlights three primary reasons for granting review. First, it argues that the First Circuit's decision creates a circuit split on the dischargeability of unsecured just-compensation claims under the Fifth Amendment, which is an issue of "exceptional importance." Second, it argues that the First Circuit's decision is inconsistent with two lines of constitutional precedent involving the Takings Clause and the bankruptcy power. The petition explains the First Circuit erroneously held the Fifth Amendment conflicts with the bankruptcy power, as opposed to the Fifth Amendment creating a claim before bankruptcy and the bankruptcy power restructuring and discharging it. Third, it argues the dischargeability of unsecured claims for just compensation has "enormous" financial implications for municipalities seeking to restructure debt.

### *HTA Budget*

12. The Oversight Board remains focused on developing and certifying budgets for the fiscal year 2023. On October 22, 2022, the Oversight Board certified an amended fiscal 2023

6

budget for HTA. The amended HTA budget includes a new section establishing that the funds allocated under the "Reserve Deposits for POA" are to be kept in an interest-bearing account, separate from all other accounts currently in use by HTA, with said account funded in compliance with the requirements set forth in the HTA Plan and new HTA bonds indenture and is to be used for the sole purpose of meeting the obligations specified in the HTA Plan and bonds indenture.

## II. General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

13. The Oversight Board's relationship with the Government of Puerto Rico (the "Government") continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues. As has been the case, however, the Governor and Oversight Board disagree on various pieces of significant legislation.

### *Act 41*

14. The Oversight Board is committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation because the Oversight Board's statutory mission cannot be carried out when legislation impedes PROMESA's purposes. On June 20, 2022, the Government enacted Act 41-2022 ("Act 41"), formerly known as House Bill 1244, which is inconsistent with the Commonwealth's certified fiscal plan and impairs or defeats PROMESA's purposes. In short, Act 41 reestablishes many of the burdensome labor restrictions existing before enactment of Act 4-2017, and will hinder Puerto Rico's economic growth and job creation by, among other things, reintroducing the presumption that employee dismissals are unjustified,

7

increasing sick and vacation day accrual rates, and easing eligibility requirements for Christmas bonuses. The Oversight Board had previously advised the Government the enactment, implementation, and enforcement of House Bill 1244 was barred by PROMESA § 108(a)(2). Nevertheless, the Governor proceeded to sign the law notwithstanding PROMESA § 108(a)(2), knowing its implementation could not be stopped as its provisions are enforced by private parties, not the Government. This was done notwithstanding the terms of PROMESA § 108(a)(2) barring the Governor from enacting statutes the Oversight Board has determined impair or defeat PROMESA's purposes. Thereafter, on June 29, 2022, the Government made a submission regarding Act 41 pursuant to PROMESA § 204(a). As the Oversight Board informed the Government on July 19, 2022, the submission was deficient in numerous respects, in that it failed to provide a formal estimate of the law's impact on Commonwealth expenditures for the correct fiscal years (it provided an estimate (defective) for the prior fiscal plan year) and did not include a certification that the law is or is not significantly inconsistent with the certified fiscal plan. Despite extensive correspondence, on August 1, 2022, Governor Pierluisi rejected the Oversight Board's proposed consent order suspending Act 41 to enable the parties to avoid litigation. On September 1, 2022, the Oversight Board filed an adversary proceeding seeking declarative and injunctive relief pursuant to PROMESA to nullify and enjoin Act 41. *See* Adv. Proc. No. 22-00063 [ECF No. 1]. Pursuant to the parties' agreement and the Court's September 9, 2022 order, the Governor filed an answer to the Oversight Board's complaint on September 15, 2022. On September 14, 2022, the Court issued an order setting an expedited summary judgment briefing schedule. Pursuant to that order, the Oversight Board filed a motion for summary judgment and the Governor filed a motion for judgment on the pleadings on September 29, 2022. The Governor and the

8

Speaker of the Puerto Rico House of Representatives (the "Speaker")[2] filed oppositions to the Oversight Board's motion for summary judgment, and the Oversight Board filed an opposition to the Governor's motion for judgment on the pleadings. On October 21, 2022, the parties filed replies in support of their respective motions.[3] Both motions remain pending before the Court.

*Act 80*

15. On July 21, 2022, the Oversight Board and AAFAF reached an agreement on a path for the partial implementation of Act 80-2020, which agreement would allow implementation of the early retirement program contemplated under the law for certain non-essential employees. The Oversight Board and the Government continue to work together to implement the agreement reached in July 2022.

*PFC QM*

16. The Oversight Board continues to work with AAFAF to commence a PROMESA Title VI case for the Puerto Rico Public Finance Corporation. The Oversight Board, AAFAF, and PFC Bond Trustee (on behalf of parties holding a majority in outstanding principal amount of PFC Bonds) have reached an agreement regarding amendments to the PFC Restructuring Support Agreement. On October 25, 2022, in accordance with the agreement and definitive documentation, solicitation was commenced seeking acceptance of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the "PFC QM"). On October 28, 2022, the Oversight Board commenced a Title VI case, seeking approval of the PFC QM. The PFC QM represents a further step towards Puerto Rico's fiscal responsibility and access to capital

---

[2] On October 5, 2022, the Court issued an order granting the Speaker's motion to intervene in the adversary proceeding.

[3] The Speaker filed a motion to join in the Governor's motion for judgment on the pleadings, and filed a reply in support of that motion on October 20, 2022.

markets. A hearing to consider approval of the PFC QM is scheduled for the December 14, 2022 Omnibus Hearing.

### III. PREPA

*Appointment of a Lead Negotiator in the PREPA Title III Mediation Sessions*

17. On September 29, 2022, the Court entered the *Amendments to Order Establishing the Terms and Conditions of Mediation* [Case No. 17-BK-03283, ECF No. 22409] (the "Amendments to the Terms and Conditions Order") directing the Board to designate a lead negotiator to facilitate the mediation team and other parties' interaction with the Board. On October 13, 2022, after due deliberations and consultations with its advisors and counsel, the Board appointed Citigroup Global Markets Inc. as lead negotiator.

*The Oversight Board's Engagement in the Mediation Following Entry of the Amendments to the Terms and Conditions Order*

18. Following the Court's issuance of the Amendments to the Terms and Conditions Order, the Oversight Board and its advisors held discussions with the mediation team regarding how best to move mediation forward in parallel to litigation, including with other constituencies. Professionals for the Oversight Board have also had discussions with counsel for the UCC, the Fuel Line claimholders, and AAFAF. The Oversight Board's and AAFAF's professionals have also been working on answering information requests from certain bondholder parties and the mediation team. The Oversight Board has also provided additional information to counsel for the PREPA pension system and intends to move forward with negotiations regarding pension reform and collective bargaining agreement amendments with the pension system and PREPA's two remaining unions in mediation.

19. These discussions have occurred in tandem with the parties briefing their respective summary judgment motions, which were filed on October 24, 2022.

***Development of a Confirmable Proposed Plan of Adjustment in the PREPA Title III Case***

20. Professionals for the Oversight Board have worked continuously on an outline a confirmable proposed plan and have held, and continue to hold, discussions about the plan formulation with the mediation team, as well as with professionals for the UCC and AAFAF.

21. The Oversight Board is working to prepare and propose a confirmable plan, disclosure statement, and related motions in connection with PREPA's Title III case to comply with the Court's *Order (A) Granting In Part and Denying In Part Urgent Motion of Financial Oversight and Management Board for Order (I) Establishing Schedule to Continue Negotiations During Litigation of Gating Issues Pursuant to Litigation Schedule and (II) Granting Related Relief and (B) Staying Certain Motions Filed by PREPA Bondholders* [Case No. 17-BK-03283, ECF No. 22410]. This undertaking is complex because any proposed plan must provide for different litigation outcomes on the lien and recourse issues currently being litigated in dueling summary judgment motions, and must also take into account different outcomes on the issue raised by the Fuel Line claimholders as to whether their claim is senior to the bondholders' claims, whether the bondholders are secured or unsecured. Additionally, other creditors have asserted the same seniority rights, primarily on their contention that their claims qualify as Current Expenses under the Trust Agreement. The Oversight Board is also exploring the possibility and plausibility of proposing a plan allowing bondholders to opt into a settlement class prior to voting on the plan, while other bondholders retain the right to litigate their collateral security, claim allowability, and priority.

***Pending legislation regarding PREPA and the Oversight Board's ongoing correspondence with the legislature***

22. The Oversight Board has become aware of several bills pending in the legislature that relate to PREPA and is carefully monitoring their progress through the legislature. The

11

Oversight Board has expressed concerns regarding several bills and continues to share its concerns with the legislature to ensure that the bills are not significantly inconsistent with the certified fiscal plans or PROMESA.

23. The bills of most concern to the Oversight Board include House Joint Resolution 315 ("HJR 315"),[4] which, among other things, (i) purports to require the termination of the Operation and Management Agreement ("OMA") between PREPA and LUMA Energy within sixty days of the HJR 315's enactment for supposed breaches of contract by LUMA and its subsidiaries, and (ii) purports to order PREPA to administer the OMA during the sixty day transitional period and subsequently take control of transmission and distribution ("T&D") operations. As clearly stated in the current certified fiscal plan, LUMA's continued operation of PREPA's T&D system is required and is critical to the success of the fiscal plans and Puerto Rico's energy future. Second, House Bill 1397 ("HB 1397"),[5] among other things, purports to (i) exempt from the P3 Authority's ("P3A") supervision all P3 contracts in which PREPA is the Participating Government Entity. HB 1397 appears to conflict with the efforts by the Government and the Oversight Board to reform the PREPA energy system over the past five years. Third, House Joint Resolution 235 ("HJR 235")[6] purports to, among other things, mandate the P3 Authority refrain from awarding an operation and maintenance or similar contract for the private operation of PREPA's generation assets until July 1, 2023. HJR 235 appears to intentionally delay implementation of the certified 2022 PREPA Fiscal Plan requirements that PREPA assets transition to private operation. The legislature is considering several other bills directly related to

---

[4] The Oversight Board understands HJR 315 has passed the House of Representatives and is currently pending before the Senate.
[5] The Oversight Board understands HB 1397 has passed the House of Representatives and is currently pending before the Senate.
[6] The Oversight Board understands HJR 235 has passed the House of Representatives and is currently pending before the Senate.

the P3A, implementation of the certified 2022 PREPA Fiscal Plan, PREPA's restructuring, and PREPA debts. The Oversight Board continues to monitor this legislation and correspond with the Government regarding its concerns. The Oversight Board will undertake appropriate action.

### IV. General Status of Claims Reconciliation

24. To date, approximately 179,313 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll"). Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

25. As of the filing of this Status Report, approximately (i) 8,084 proofs of claim remain asserted against the Commonwealth; (ii) 58 proofs of claim remain asserted against ERS; (iii) 207 proofs of claim remain asserted against PBA; and (iv) 755 proofs of claim remain asserted against HTA (collectively, the "Remaining Claims").

26. Of the Remaining Claims, 2,494 are associated with three separate multi-plaintiff litigations. The Debtors are in the process of determining the amounts owed to each plaintiff in those litigations. In addition, there are over 1,500 Remaining Claims that are fully unliquidated and associated with other litigations (the "Fully Unliquidated Remaining Claims"). Through the Debtors' ongoing claims reconciliation processes, approximately 39 Fully Unliquidated Remaining Claims have been subject to additional outreach efforts to agencies and opposing counsel; approximately 456 Fully Unliquidated Remaining Claims have been transferred into ADR or ACR; and, approximately 594 Fully Unliquidated Remaining Claims have been the subject of omnibus objections.

27. The Remaining Claims continue to be the focus of the Debtors' ongoing review and reconciliation processes, described in more detail in the subsections below.

*ADR and ACR Processes*

28. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-seven notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 45,193 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices. Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of approximately 36,533 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on November 22, 2022, and the Debtors anticipate reporting the successful resolution of additional ACR Designated Claims.

29. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send further follow up mailings to such claimants to ensure they have a complete administrative file. The Debtors continue to await responses from numerous additional claimants. In many instances, the Debtors have re-sent initial mailings to claimants who failed to respond, reiterating the Debtors' request for information sufficient to complete the claimants' administrative file, and

14

warning them that ongoing failure to respond may force the Debtors to object to their claims. Claimants who failed to respond to the initial mailings have received a final mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims. The Debtors continue to await responses from such claimants, and to the extent no responses are received, the Debtors intend to object to their claims. To date, the Debtors have filed several objections to claimants who did not respond to the final mailings.

30. With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

31. As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer. The Debtors' reconciliation of outstanding claims remains ongoing, however. To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures. Accordingly, on October 21, 2022, the Debtors transferred additional claims into the ACR Procedures. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on December 20, 2022. The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

32. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-seven notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred approximately 1,200 claims into the ADR Procedures.

15

33. Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the ADR Order), twenty-two (22) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

34. The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed several objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due December 12, 2022, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

35. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 2,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

*Objections to Claims*

36. The Debtors' claims reconciliation process remains ongoing, and the Debtors project they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings.[7] Most recently, on October 28, 2022, the Debtors filed fourteen omnibus objections covering over 220 claims. However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

37. While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection. For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other

---

[7] Currently, approximately 14 Notices of Presentment, relating to omnibus objections previously granted, are pending before the Court.

possible bases. Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes.

38. In addition, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: November 1, 2022<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br>Martin J. Bienenstock<br>Brian S. Rosen<br>Paul V. Possinger<br>Ehud Barak<br>(Admission *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>brosen@proskauer.com<br>ppossinger@proskauer.com<br>ebarak@proskauer.com<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*<br><br>-and-<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors* |