UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ------------------------------------------------------------ x<br>*In re*<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtor.<br>------------------------------------------------------------ x | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PROMESA<br><br>Title III<br><br>Case No. 17-3283-LTS<br><br>**Court Filing Relates Only to PREPA** |
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY (PREPA),[*]<br><br>    Debtor.<br>------------------------------------------------------------ x | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PROMESA<br>Title III<br><br>Case No. 17-4780-LTS<br><br>(Jointly Administered) |

**URGENT MOTION OF FUEL LINE LENDERS FOR EXAMINATION OF
OVERSIGHT BOARD UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE
2004 CONCERNING VITOL SETTLEMENT AGREEMENT**

---

[*] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

The Fuel Line Lenders submit this Urgent Motion under Federal Rule of Bankruptcy Procedure 2004 to conduct an examination of the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") concerning a settlement reached between the Oversight Board and Vitol S.A or its affiliates ("Vitol"). In support of their motion, the Fuel Line Lenders respectfully state as follows:

## PRELIMINARY STATEMENT

1. This Court has set a firm deadline of December 1 for the Oversight Board to file a confirmable plan. In the Court's words, the December 1 plan proposal cannot be a placeholder – it must be a realistic effort to satisfy PROMESA's confirmation requirements. One of the baseline requirements for any confirmable plan is that at least one impaired class of creditors votes to accept it. *See* 11 U.S.C. § 1129(a)(10).[1]

2. At Wednesday's omnibus hearing, the Oversight Board revealed that it believes it has an impaired accepting "class": a single, small (by the standards of this case) general unsecured creditor, Vitol. Counsel for the Oversight Board stated that Vitol has agreed to accept 50% of the ultimate recovery percentage for the general unsecured claims class, Vitol will be placed in its own class which will receive such separate treatment, and Vitol will vote in favor of the plan, creating an impaired accepting class. The Board's proposed path to achieving a fundamental requirement for confirmation raises concerns for the Fuel Line Lenders.

3. Given the importance of the Board's responsibility to file a plan on December 1 with a realistic prospect of confirmation, the Fuel Line Lenders believe that information about the actual terms of the agreement between the Board and Vitol, including the circumstances

---

[1] All provisions of the Bankruptcy Code referenced herein are made applicable to this proceeding by PROMESA § 301 unless otherwise stated.

under which Vitol's commitment to vote in favor of the plan arose, must be made available promptly. If such disclosure were to await confirmation litigation, PREPA's emergence from bankruptcy could be set back by months. Accordingly, the Fuel Line Lenders have made this urgent request to compel the Oversight Board to make such disclosure promptly pursuant to Bankruptcy Rule 2004.

### JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this matter pursuant to PROMESA § 306(a). 48 U.S.C. § 2166(a). Venue is proper pursuant to PROMESA § 307(a). 48 U.S.C. § 2167(a).

### RELIEF REQUESTED

5. The Fuel Line Lenders seek entry of an order, a proposed form of which is annexed hereto as Exhibit A, ordering the examination of the Oversight Board pursuant to Federal Rule of Bankruptcy Procedure 2004 (made applicable to this proceeding by PROMESA § 310) concerning the settlement with Vitol reached on or around August 31, 2022.

### BACKGROUND

**A.  The Vitol Claim**

6. The Oversight Board has described the claim which it seeks to use as an impaired accepting class as follows. (Each of the following statements regarding the Vitol litigation are drawn from the Oversight Board's brief on appeal to the First Circuit. *See* Brief for Plaintiff-Appellant, *Fin. Oversight & Mgmt. Bd. for P.R.* v. *Vitol S.A. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, No. 21-1987 (1st Cir. Doc. 00117871052, filed May 2, 2022) ("FOMB App. Br.")).

7. Vitol was a fuel oil supplier to PREPA during the 2000s. After allegations of a "corrupt scheme to obtain oil from Iraq by paying millions of dollars in illegal kickbacks to Iraqi officials," FOMB App. Br. at 1, a Vitol entity pled guilty to first-degree larceny in New York

-3-

State Court. *Id.* at 15. In 2009 and 2012, PREPA invoked a Commonwealth statute, Law 458, which imposed a "comprehensive ban on the award of government contracts to persons or entities convicted of corruption-related crimes anywhere in the world," *id.* at 6, as the basis for two actions in Commonwealth Court of First Instance seeking to rescind its ongoing contracts with Vitol, and to recover payments made under completed contracts. *Id.* at 17. Vitol counterclaimed on account of PREPA's failure to pay for fuel oil delivered under the contracts. After more than a decade of litigation, this Court granted in part and denied in part Vitol's and PREPA's respective motions for summary judgment, and ordered PREPA to pay $28,459,560.16, plus interest to Vitol. *Id.*[2] The Court entered judgment for Vitol on November 3, 2021, and the Oversight Board appealed.

8. The Oversight Board filed its opening brief on May 2, 2022, but the First Circuit never reached the merits of the Oversight Board's appeal. Instead, on July 20, 2022, the Oversight Board and Vitol filed a joint motion to hold the appeal in abeyance, reporting that they had "reached an agreement in principle to settle their dispute (which would resolve this appeal), subject to the execution of a definitive agreement." Doc. 00177900347 in No. 21-1987 (1st Cir. July 20, 2022) at 2. Ultimately, on August 31, 2022, the Board and Vitol stipulated that the appeal be "voluntarily dismissed in its entirety with prejudice," with each party to bear its own costs. Doc. 00117915927 in No. 21-1987 (1st Cir. Aug. 31, 2022) at 2. The First Circuit entered judgment dismissing the appeal on September 13, 2022.

---

[2] With interest, the judgment became approximately $41.5 million. Dkt. 82 in Adv. Pro. 19-453-LTS (Nov. 2, 2021).

### B. The Path-Forward Process

9. These events culminating in the dismissal of the Vitol appeal were occurring simultaneously with major developments in the PREPA Title III case. On March 8, 2022, AAFAF terminated the 2019 RSA with the support of the Oversight Board. That day, the Court entered an order noting that the "timely proposal and subsequent confirmation of a PREPA Title III plan of adjustment is paramount to the Commonwealth's economic recovery and expeditious exit from these Title III bankruptcy proceedings." Doc. 2748 in Case No. 17-4780. While it denied a request to impose deadlines on the Board to propose a plan, the Court ordered the Oversight Board to "engage in good faith, in a focused manner, in efforts to negotiate and/or determine the parameters of an appropriate plan of adjustment for PREPA." *Id.* And the Court set a deadline of May 2, 2022 for the Oversight Board to file (i) a proposed plan, disclosure statement and litigation deadlines; (ii) a detailed term sheet for a plan of adjustment; (iii) a proposed litigation schedule; or (iv) a brief showing cause why the Title III case should not be dismissed. *Id*.

10. On April 8, 2022, the Court appointed the Mediation Team, and set terms and conditions for the Mediation. Docs. 2772 & 2773 in Case No. 17-4780. The stated purpose of the mediation was to "facilitate confidential negotiations regarding the formulation of a plan of adjustment for PREPA, including the consensual resolution of disputes ancillary thereto." Doc. 2767 in Case No. 17-4780. The mediation was originally set to terminate on June 1, 2022. Doc. 2773 in Case No. 17-4780.

11. The path-forward and mediation termination deadlines were then extended multiple times at the request of the Mediation Team. Ultimately, however, the Mediation Team reported that "the Mediation was not successful." Doc. 2975 in Case No. 17-4780 (Sep. 19, 2022). The Oversight Board then chose to engage in litigation against the bondholders.

12. The Court set a litigation schedule, but also set a deadline of December 1, 2022 for the Oversight Board to propose a confirmable plan. Doc. 3013 in Case No. 17-4780 (Sep. 29, 2022). The Court's order made clear that the proposed plan had to be one that the Oversight Board "believes could be confirmable." *Id.* And at Wednesday's omnibus hearing, the Court reiterated that instruction further, instructing the Oversight Board that the proposed plan could not be a "placeholder" but rather must be "realistically confirmable."

13. In response to the Court's questions, the Oversight Board indicated that it was well-aware that in order to have a realistically confirmable plan, it needed an impaired accepting class. The Oversight Board then announced that its impaired accepting class would be a single, small (by the standards of this case) general unsecured creditor: Vitol. According to counsel's description, Vitol has agreed to accept 50% of the recovery percentage that unsecured creditors will receive on its face-amount claim of $41.5 million, and will vote in favor of the plan.

## ARGUMENT

14. As the Court has repeatedly emphasized, this Title III case has already gone on for far too long. Under PROMESA's statutory scheme, the Oversight Board has permanent exclusivity to propose a plan. The statutory counterbalance granted to the Court is the power to impose deadlines, or to dismiss the case. The Court has endeavored to force the Oversight Board to propose a realistic, confirmable plan.

15. PROMESA requires the Oversight Board to have the acceptance of at least one impaired class of creditors in order to confirm a plan. *See* 11 U.S.C. § 1129(a)(10). This is not a mere procedural obstacle to be overcome – it is a core substantive creditor protection meant to ensure the fairness of the resulting plan of adjustment. The statutory design ensures that the plan

is a legitimate compromise, rather than an unfair repudiation of valid debts, by requiring that at least one group of creditors whose "ox is being gored" agrees that the plan is a fair compromise.

16. The requirement of an impaired accepting class is not intended to be treated as a meaningless checking of the box by manufacturing such classes. Indeed, the use of undisclosed side arrangements to create the acceptances needed to confirm debt restructurings in PROMESA's predecessor statutes has long been a concern, including to the United States Supreme Court. *See Am. United Mut. Life Ins. Co.* v. *City of Avon Park*, 311 U.S. 138, 144-145 (1940) (reversing confirmation of Chapter IX Plan in part due to undisclosed side-deal with creditor). It thus should come as no surprise that counsel's announcement generated concerns about a myriad of potential problems with the Board's proposed plan, including improper classification, gerrymandering of an impaired accepting class, the good faith of the forthcoming plan, and whether a "class" of one small creditor that the Oversight Board (until recently) was arguing is owed nothing is a legitimate impaired accepting class under these circumstances.

17. That the Board's solution to the requirement of an impaired accepting class should come from so unlikely a source is particularly surprising and concerning. The restructuring of PREPA's debts required in this Title III case has revolved principally around the bonds, whose claims exceed $8 billion, as well as the Fuel Line Lenders, with claims of approximately $700,000,000 in principal amount, and the unions, which are seeking to defend their members' retirement plans and collective bargaining agreements. All of these are claims of considerable weight whose treatment have always been understood to be prerequisites to PREPA's emergence from bankruptcy. It is troubling that instead of achieving an agreement with at least one of its major groups of creditors, the Board would instead enter into a "settlement" whereby it withdrew an appeal to the First Circuit after filing its opening brief,

thereby allowing Vitol's claim in full after more than a decade of contesting it, all in connection with an apparent separate classification, separate treatment and promise to vote for the plan. This settlement was accomplished without the notice and a hearing procedure contemplated by Bankruptcy Rule 9019.[3] Whether or not court approval for a settlement was technically required, the circumstances warrant full and prompt disclosure surrounding the Vitol settlement to ensure that the Oversight Board is on a path to compliance with this Court's December 1 deadline to propose a realistically confirmable plan.

18. Bankruptcy Rule 2004 presents the appropriate procedural mechanism to require the Oversight Board to disclose further information on this topic. Bankruptcy Rule 2004 examination orders can be issued upon a demonstration that the topics are within the scope of the rule and that good cause exists to order the examination. *See* Fed. R. Bankr. P. 2004.

19. The requested examination is plainly within the scope of Rule 2004. "The scope of Rule 2004 discovery is broad and at the discretion of the Court." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 72 (D.P.R. 2018) (Dein, M.J.), *remanded on other grounds*, 2018 WL 9708897 (D.P.R. Apr. 24, 2018). Among other topics, "Rule 2004 allows for the discovery of information regarding "the liabilities and financial condition of the debtor." *Id.* In a reorganization case, "the examination may also relate to . . . any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b). Information concerning a claim

---

[3] The Fuel Line Lenders recognize that it has been the Board's position that it is not required to comply with Bankruptcy Rule 9019 as a consequence of PROMESA § 303 and § 305. To the knowledge of the Fuel Line Lenders, this Court has not squarely resolved that question. Unlike 11 U.S.C. § 363, which is statutorily inapplicable in a case under PROMESA (*see* PROMESA § 301), Bankruptcy Rule 9019 is part of the procedural ruleset Congress made applicable to this case (*see* PROMESA § 310). The question here is even more complex because upon the filing of a plan, the Oversight Board may have consented (within the meaning of PROMESA § 305) to the adjudication of issues necessary to its confirmation, such as the classification and appropriate treatment of claims. Given the apparent centrality of the settlement to the ultimate resolution of this Title III case, the notion that the Board was free to finally settle the matter without input from parties in interest or the Court raises significant issues.

against PREPA that is evidently crucial to the formulation of the plan is necessarily within the scope of Rule 2004.

20. The "good cause" standard for ordering an examination is also more than met. "Good cause is established if one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." *Id.* at 72 (quoting *In re Hammond*, 140 B.R. 197, 201 (Bankr. S.D. Ohio 1992)). All parties have a paramount interest in ensuring that there is a viable path to conclude these cases. If the Vitol classification is problematic, the Oversight Board may have failed to comply with the spirit of the Court's December 1 deadline.

21. The information that will help parties-in-interest evaluate the Vitol settlement consists of the settlement agreement itself (and any related agreements such as those involving voting on the plan), as well as the negotiation history of the settlement between Vitol and the Board leading up to the appellate dismissal. Those documents should be simple for the Board to collect, and there is no plausible claim of privilege. They should be produced forthwith. To the extent valid questions remain after reviewing those documents, the Fuel Line Lenders reserve the right to seek additional discovery as appropriate.

22. For the foregoing reasons, the Oversight Board should be ordered to produce the settlement agreement, any related agreements, and its negotiations with Vitol or its representatives concerning the settlement forthwith.

## CERTIFICATION

Pursuant to Local Rule 9013-1 and paragraph I.H of the Case Management Procedures, the Fuel Line Lenders hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent motion; (b) not created the urgency through a lack of due diligence; (c) made a bona fide effort to resolve the matter without a

hearing; (d) made reasonable, good faith communications in an effort to resolve or narrow the issues being brought to the court; and (e) conferred with counsel for the Oversight Board, who have indicated that they oppose the requested relief.

Dated: November 4, 2022

<u>/s/ Jose L. Ramirez-Coll</u>
Jose L. Ramirez-Coll
USDC-PR No. 221702
ANTONETTI MONTALVO & RAMIREZ COLL
P.O. Box 13128
San Juan, Puerto Rico 00908
Telephone: (787) 977-0303
Facsimile: (787) 977-0323
Email: jramirez@amrclaw.com

<u>/s/ Richard G. Mason</u>
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
   arwolf@wlrk.com
   eakleinhaus@wlrk.com
   akherring@wlrk.com
   mhcassel@wlrk.com

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record. I also hereby certify that the foregoing was served pursuant to the Sixteenth Amended Notice, Case Management and Administrative Procedures Order (Docket No. 20190).

s/José L. Ramírez-Coll
José L Ramírez-Coll
U.S.D.C. No. 221702
ANTONETTI MONTALVO & RAMIREZ-COLL
P.O. Box 13128
San Juan, Puerto Rico 00908
(787) 977-0312
email: jramirez@amrclaw.com
