UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

        as representative of,

THE COMMONWEALTH OF PUERTO
RICO, *et al.*

        Debtors.[1]

---------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**NOTICE OF FILING OF SUPPLEMENTAL DECLARATION OF KIRK BLAIR
DISCLOSING CONNECTIONS OF DELOITTE CONSULTING LLP AND DELOITTE
FINANCIAL ADVISORY SERVICES LLP TO MATERIAL INTERESTED PARTIES
PURSUANT TO PUERTO RICO RECOVERY ACCURACY IN DISCLOSURE ACT**

**PLEASE TAKE NOTICE** that on March 30, 2022, the Court entered an Order directing all professionals to file the disclosures required under the Puerto Rico Recovery Accuracy in Disclosures Act, Pub. L. No. 117-82 ("PRRADA") by May 16, 2022 (the "Disclosure Deadline").

**PLEASE TAKE FURTHER NOTICE** that the Disclosure Deadline was extended to June 15, 2022 for Deloitte Consulting LLP and Deloitte Financial Advisory Services LLP

---

[1] The Debtors in the jointly-administered Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

(together, the "Deloitte US Entities") by Order of this Court dated May 16, 2022 [Docket No. 20807]

**PLEASE TAKE FURTHER NOTICE** that On June 15, 2022, the Deloitte US Entities timely filed the *Declaration of Kirk Blair Disclosing Connections of Deloitte Consulting LLP and Deloitte Financial Advisory Services LLP to Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosure Act* (the "Initial PRRADA Declaration").

**PLEASE TAKE FURTHER NOTICE** that the United States Trustee provided informal comments to the Initial PRRADA Declaration, which the Deloitte US Entities worked to address in good faith.

**PLEASE TAKE FURTHER NOTICE** that the Deloitte US Entities have resolved the United States Trustee's comments to the Initial PRRADA Declaration by agreeing to provide certain additional disclosures.

**PLEASE TAKE FURTHER NOTICE** that attached as Exhibit A is a *Supplemental Declaration of Kirk Blair Disclosing Connections of Deloitte Consulting LLP and Deloitte Financial Advisory Services LLP to Material Interested Parties Pursuant to Puerto Rico Recovery Accuracy in Disclosure Act*, which incorporates the disclosures that address the United States Trustee's comments.

Dated: November 9, 2022  
       San Juan, Puerto Rico

Respectfully submitted,

*/s/ Alexandra Casellas-Cabrera*  
Alexandra Casellas-Cabrera  
USDC-PR No. 301010  
**ADSUAR MUÑIZ GOYCO SEDA & PÉREZ-OCHOA, P.S.C.**  
P.O. Box 70294  
San Juan, PR 00936-8294  
Tel: 787-756-9000  
Fax: 787-756-9010  
Email: acasellas@amgprlaw.com

2

and

**LOEB & LOEB LLP**
Daniel B. Besikof
345 Park Avenue
New York, New York 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: dbesikof@loeb.com

*Attorneys for Deloitte Consulting LLP and Deloitte Financial Advisory Services LLP*

3

**Exhibit A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO
RICO,

as representative of,

THE COMMONWEALTH OF PUERTO
RICO, *et al.*

Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF KIRK BLAIR DISCLOSING CONNECTIONS OF DELOITTE CONSULTING LLP AND DELOITTE FINANCIAL ADVISORY SERVICES LLP TO MATERIAL INTERESTED PARTIES PURSUANT TO <u>PUERTO RICO RECOVERY ACCURACY IN DISCLOSURE ACT</u>**

I, Kirk Blair, declare as follows:

1. I am a partner of the firm of Deloitte Financial Advisory Services LLP ("<u>Deloitte FAS</u>"), which has an office at 110 Morris Street, Morristown, New Jersey. I am duly authorized to make and submit this supplemental declaration (the "<u>Declaration</u>") to supplement the disclosures contained in my initial declaration (the "<u>Initial Declaration</u>") regarding the connections of Deloitte FAS and Deloitte Consulting LLP ("<u>Deloitte Consulting</u>"). As a partner

---

[1] The debtors in the jointly-administered Title III cases, along with each debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

of Deloitte FAS, by the Initial Declaration and this Declaration, I am providing factual statements regarding the connections checking process and results thereof, which are applicable to all Deloitte U.S. Entities (as defined below).

2. I previously submitted the Initial Declaration pursuant to the *Order Approving List of Material Interested Parties Pursuant to The Puerto Rico Recovery Accuracy in Disclosures Act* [ECF No. 20467] ("Disclosure Order") and the *Puerto Rico Recovery Accuracy in Disclosures Act*, Pub. L. No. 117-82 ("PRRADA"). Capitalized terms used but not defined herein shall have the meanings as set forth in the Initial Declaration. By this Declaration, I am further supplementing the statements set forth in the Initial Declaration, including those related to certain disclosures made in the Initial Declaration and the conflict check process performed on behalf of Deloitte FAS and Deloitte Consulting relating to the connections of the Deloitte U.S. Entities.

**I.      Additional Background Information Related to the Deloitte U.S. Entities**

3. Deloitte Touche Tohmatsu Limited ("DTTL") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each a "DTTL Member Firm") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries or branch offices of each other or of a global parent. These independent firms have come together to practice under a common brand, methodologies, client service standards, and other professional standards and guidelines, as described below.

2

4. In the United States, Deloitte LLP is a DTTL Member Firm. Like DTTL, Deloitte LLP does not provide services to clients. Rather, Deloitte LLP has operating subsidiaries that perform services for clients, including Deloitte FAS, Deloitte Consulting, Deloitte Tax LLP ("Deloitte Tax"), Deloitte & Touche LLP ("Deloitte & Touche") and Deloitte Transactions and Business Analytics LLP ("DTBA") (Deloitte LLP and each of the foregoing, and together with their respective subsidiaries, which include their U.S. subsidiaries located in India which may assist with services, U.S. subsidiary products companies which license certain Deloitte U.S. intellectual property, and their U.S. affiliates including Deloitte U.S. entities that maintain certain firmwide contractor or vendor relationships, the "Deloitte U.S. Entities"). Deloitte LLP's operating subsidiaries are not DTTL Member Firms themselves. The partners and/or principals of each operating subsidiary of Deloitte LLP are owners of their respective entity along with, directly or indirectly, Deloitte LLP. Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

5. DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms. There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm in another region or country. Profits are not shared between or among the DTTL Member Firms. In the event one DTTL Member Firm or its affiliate retains the services of another DTTL Member Firm or its respective affiliate, for example, to assist as a subcontractor pursuant to a services agreement for a client, such services are performed and paid for pursuant to a services agreement between the two DTTL Member Firms or their respective affiliates, as applicable.

6. DTTL has adopted standards regarding specific leadership and governance structures. Each DTTL Member Firm has a managing partner, senior partner, or equivalent. These

3

partners are responsible for local implementation of global policies and strategies and for aligning national policies and strategies with those put forward by DTTL. Each DTTL Member Firm is required to have a governing body, such as a board of directors or board of partners, to facilitate the sound governance of such member firm' practices, the implementation of local rules and regulations, and the implementation of DTTL global policies and procedures.

7. One such DTTL global policy is the potential conflicts policy, which provides policies and guidance related to the identification and management of potential conflicts of interest for engagements and business relationships. In accordance with the policy, prior to accepting a prospective engagement or entering into a business or financial relationship with another entity, the engagement or business or financial relationship partner or principal (or his or her designee) of the applicable DTTL Member Firm or its affiliate should take reasonable steps to identify circumstances that may give rise to a conflict.

8. Additionally, as part of the applicable conflict check procedures that each DTTL Member Firm and its affiliates perform, DTTL policy requires that, prior to accepting an engagement with a potential client domiciled in the jurisdiction of another DTTL Member Firm, the DTTL Member Firm or its affiliate submit a cross-border conflict check request for that potential client to the DTTL Member Firm in such potential client's jurisdiction to determine whether a potential conflict of interest may exist. For those potential U.S.-domiciled clients, Deloitte LLP would receive an inbound cross-border check, which is recorded in the U.S. Conflict Checking Database (described below in paragraph 12), and the Conflicts Team (defined below) would provide a response to such DTTL Member Firm or its affiliate, as applicable. This record related to this U.S. client relationship would then be available to assess for future conflicts of interest. Additionally, in the event a DTTL Member Firm desires to engage a potential client

4

where the proposed engagement involves a U.S.-domiciled entity as an actual or potential adverse party, such DTTL Member Firm would submit a cross-border check request for that U.S.-domiciled entity. This record would also be available to assess for future conflicts of interest with respect to debtor entities and their affiliates.

9. Furthermore, because certain DTTL Member Firm affiliates perform audit and attest services which are subject to certain professional rules and standards, DTTL Member Firms are required to input their respective audit and attest clients into the Independence Database (defined below), to which each DTTL Member Firm and its affiliates have access.[2]

10. To review the DTTL Member Firms' and their affiliates' compliance with these policies, DTTL arranges for periodic reviews of the DTTL Member Firm's and its respective affiliates' compliance therewith. In certain instances, partners, principals or their designees of a DTTL Member Firm perform certain of these reviews on behalf of DTTL. Additionally, there are quarterly calls and annual trainings among conflict check professionals of the various DTTL Member Firms regarding these policies, as well as other conflict-related matters, to help maintain consistency in approach.

## II. Conflict Check Process and Disinterestedness of Deloitte FAS and Deloitte Consulting

11. The Initial Declaration described the results of a series of searches in numerous databases, described in more detail below, conducted to identify both prior and current relationships of all Deloitte U.S Entities, including Deloitte FAS and Deloitte Consulting, with the

---

[2] There are very limited exceptions to this. In the event a DTTL Member Firm is engaged to perform attest or audit services by a small, local firm outside of the Deloitte network with no cross-border presence, the member firm is not required to input the relationship into the Independence Database, though it is required to perform its internal conflict check processes to ensure independence is maintained. In the highly unlikely event another DTTL Member Firm outside of that small, local firm's jurisdiction ever contemplated providing a service to that firm, it would need to perform a conflict check and would also need to be granted permission from the local DTTL Member Firm to provide such services within that local firm's jurisdiction.

5

Material Interested Parties (which the Initial Declaration defined as "Potential Parties in Interest"). Given the separateness of the various DTTL Member Firms as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates; however, as discussed below, notwithstanding the separateness of these firms, the Deloitte U.S. Entities' conflict check process provides certain information regarding the DTTL Member Firm's prior and current relationships.

12. When any of Deloitte LLP's operating affiliates, such as Deloitte FAS or Deloitte Consulting, is to be the subject of an application to be retained in a bankruptcy case, a process commences regarding checking relationships to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors). With the assistance of the Deloitte U.S. Entities' conflicts team (the "Conflicts Team"), which runs the conflict searches on behalf of the Deloitte U.S. Entities, a series of relationship checking procedures are undertaken, including checking the various databases described in the chart below, for their prior and current relationships. The databases searched by the Conflicts Team in connection with these cases are the same as those searched when conflict checks are required for other bankruptcy-related engagements by Deloitte U.S. Entities, and include the following:

| Database | Content of Database |
|---|---|
| U.S. Conflict Checking Database | This U.S. database is used to record conflict check requests received from Deloitte U.S. Entity engagement teams and DTTL Member Firms, as well as internal U.S. third party compliance processes. It also maintains, among other things, records on sensitive matters, and parties and law firms involved in lawsuits (and threatened lawsuits) against the Deloitte U.S. Entities. |
| Independence Database | The Independence Database is a global database used to facilitate the search for entity information to help maintain personal and DTTL Member Firm compliance with applicable auditor independence requirements. All DTTL Member Firms and their respective affiliates have access to this database. It is used as part of the conflict check process to identify five types of parties: (1) Restricted – parties subject to auditor independence requirements due to a direct or indirect attest relationship; (2) Watchlist – entities that are expected to become Restricted in the near future; (3) Monitored – certain parties related to an |

6

| | attest client, but not currently Restricted; (4) Reverse Restricted – parties with which Deloitte has a borrowing or business relationship;[3] and (5) Relationship – significant non-attest clients of a particular DTTL Member Firm or its affiliate(s). |
|---|---|
| Deloitte U.S. Entities Billing System | The Deloitte U.S. Entities' billing system identifies clients thereof. |
| Client Relationship Management Database | The Deloitte U.S. Entities' client relationship management system used to identify and track client opportunities. |
| Lender Database | This database provides all entities with which DTTL Member Firms have a lending relationship. |

13. The conflict check process that was undertaken in these cases for Deloitte FAS and Deloitte Consulting was consistent with the process the Deloitte U.S. Entities undertake for other engagements requiring disclosures in bankruptcy cases. With respect to the conflict checks conducted in these cases, if a database query identified a prior or current relationship between a Material Interested Party and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Material Interested Party to confirm whether or not the connection with such Material Interested Party related or currently relates to the Title III cases. Responses to these emails were consolidated and subsequently reviewed by the Conflicts Team, Deloitte U.S. Entity risk management personnel, and certain members of Deloitte LLP's Office of General Counsel. As stated in the Initial Declaration, these processes result in the disclosures that were set forth therein, including the disclosure of prior and current relationships with the Material Interested Parties that are unrelated to the Title III cases. These searches included all Material Interested Parties and the names of such Material Interested Parties with which prior or current relationships

---

[3] Business relationships referenced here include entities with which one or more DTTL Member Firms has a business alliance, or receives financing or asset management services.

7

were identified were then listed on **Schedule 1** appended to the Initial Declaration.[4] The form and content of the disclosures included in the Initial Declaration and connections listed in **Schedule 1** are consistent with the content included in the Deloitte U.S. Entities' respective declarations of disinterestedness filed in support of bankruptcy engagements.

14. Based upon the foregoing, it is my understanding that the overall design and implementation of Deloitte U.S. Entities' current procedures were utilized to identify the relationships and potential conflicts related to the Debtors and Material Interested Parties in compliance with PRRADA and the applicable Bankruptcy Rules. Despite the efforts described above to identify and disclose the connections of Deloitte FAS, Deloitte Consulting and the other Deloitte U.S. Entities with the Material Interested Parties, it is not possible to state with certainty that every client or other connection has been disclosed, because, among other things, those entities are nationwide firms with thousands of personnel. In this regard, if additional information is discovered that is required to be disclosed under the Order, Deloitte FAS and Deloitte Consulting or any other Deloitte entity, as applicable, will file a supplemental disclosure promptly with the Court and contemporaneously serve the U.S. Trustee, the FOMB, the UCC and all other parties in interest.

### III. Additional Disclosures

15. By this Declaration, below are supplements to certain disclosures included in the Initial Declaration, as follows:

  a. None of the Material Interested Parties referred to in the Initial Declaration or as Potential Parties-in Interest in **Schedule 1** thereto represents in excess of 1%

---

[4] The names of the parties on **Schedule 1** appear as such names were provided by the Debtors and were not modified or updated to reflect changes Material Interested Parties may have made to their respective party's name.

8

of the aggregate net service revenues[5] of the Deloitte U.S. Entities for the fiscal year that ended at the end of May of 2017.

b. DTBA, an affiliate of Deloitte FAS and Deloitte Consulting, provided a client with certain electronic discovery services in connection with an arbitration matter that is unrelated to the Title III cases, where Godfrey & Kahn was opposing counsel. Additionally, Godfrey & Kahn has represented fee examiners appointed in chapter 11 cases in which certain Deloitte U.S. Entities have been retained by the debtors in those cases. It is my understanding that no Deloitte U.S. Entity has provided professional services to Godfrey & Kahn or received professional services from Godfrey & Kahn.

c. Paragraph 10(e) is amended and restated as follows:

**I.** Certain Material Interested Parties may be adverse to and/or involved in (e.g., where a Material Interested Party was identified as a co-defendant along with a Deloitte U.S. Entity, or where a Material Interested Party or another party in a case related to such Material Interested Party issued a subpoena to one or more of the Deloitte U.S. Entities) in litigation matters with Deloitte FAS, Deloitte Consulting or other Deloitte U.S. Entities in connection with matters unrelated to the Title III cases.

d. Paragraph 10(g) is amended and restated as follows:

**II.** Deloitte FAS and/or other Deloitte U.S. Entities have provided and continue to provide professional services to Blackrock Advisors, LLC and certain of its affiliates, subsidiaries, and/or funds managed thereby (collectively, "Blackrock"), which are parties to the Commonwealth of Puerto Rico's plan support agreement, and/or certain of Blackrock's other subsidiaries and/or affiliates, in matters unrelated to the Title III cases. In particular, Deloitte Tax and/or certain of its affiliates provide ordinary course accounting or tax services for Blackrock and/or its subsidiaries and/or affiliates, certain of which services may have a relationship to certain of Blackrock's investments respecting the Debtors. Also, among other services, Deloitte & Touche acts as the independent auditor for certain Blackrock entities, funds managed by Blackrock, and a number of entities either currently or formerly owned by funds managed by Blackrock or its principals. Additionally, certain Deloitte U.S. Entities provide Blackrock and/or its subsidiaries and/or affiliates with certain consulting and advisory services, in each case, in matters unrelated to the Title III cases. The services performed by Deloitte FAS and Deloitte Consulting were not adverse to Blackrock.

e. Paragraph 10(i) of the Initial Declaration is amended by inclusion of the following sentence: Subsequent to the date of the Initial Declaration, the

---

[5] "Net service revenue" means revenue generated through the performance of client services, less certain adjustments.

9

>Trustee of the Commonwealth Avoidance Actions Trust requested to set a date for a mediation regarding potential claims, if any, against Deloitte FAS arising from pre-Title III services. The mediation is currently scheduled January of 2023.

16. As stated in the Initial Declaration and other filings with the Court, Deloitte FAS and Deloitte Consulting performed services for the Debtors during the Title III cases. Each of Deloitte FAS and Deloitte Consulting utilized certain of their U.S. affiliates (e.g., Deloitte Tax) as subcontractors to perform a portion of services during the course of their respective engagements, as needed; however, neither Deloitte FAS nor Deloitte Consulting used any DTTL Member Firm or its respective affiliates, or any independent third party who is not a subsidiary of, or otherwise affiliated with, Deloitte FAS or Deloitte Consulting, as subcontractors for these engagements.

17. Also as noted in the Initial Declaration, Deloitte FAS's and Deloitte Consulting's respective services related to the Title III cases concluded by late 2019. Non-Title III Services (defined below) that Deloitte FAS, Deloitte Consulting and/or other Deloitte U.S. Entities perform for the Government of Puerto Rico continue. In each of Deloitte FAS's and Deloitte Consulting's interim fee applications, it was disclosed that certain Deloitte U.S. Entities were separately engaged by the Government of Puerto Rico to provide services related to assisting the Government of Puerto Rico with activities that are not related to the Title III cases, including services related to recovery from the storms of the summer of 2017 (collectively, the "Non-Title III Services"). The Non-Title III Services included the following: (i) providing support to the Government of Puerto Rico related to the formulation of the needed organization, governance, and budget structure to sustain the overall recovery efforts; (ii) assisting the Government of Puerto Rico with the development of processes, controls and technologies to support the execution of the following FEMA-administered programs: Public Assistance, Hazard Mitigation, and Individual

10

Assistance; HUD-administered Community Development Block Grant program; and other U.S. government and Puerto Rico grant assistance programs in compliance with guidance from the U.S. government and Puerto Rico; (iii) assisting the Government of Puerto Rico with its recovery and resilience plan for certain aspects of its information technology infrastructure; (iv) assisting the Government of Puerto Rico's Department of Treasury ("Hacienda") with the upgrade of its enterprise resource planning software and project management assistance with respect to the foregoing; and (v) assisting the Fiscal Agency and Financial Advisory Authority with procurement reform for the Government of Puerto Rico. The fees and expenses associated with the Non-Title III Services were (and continue to be, as applicable) paid by Hacienda in the ordinary course in accordance with Hacienda and/or other relevant guidelines and procedures.

18. As a general matter, the work performed in the Title III cases by the Deloitte U.S. Entities that were retained did not involve taking positions that are adverse to any particular party. Rather, these Deloitte U.S. Entities provided advice and recommendations, and their services assisted the Government of Puerto Rico's efforts in making its various agencies budgeting and procurement processes more efficient, among other things. In particular, Deloitte Consulting's scope of services included assisting the Government of Puerto Rico with its effort to improve its procurement processes. Deloitte FAS's scope of services included: (i) assisting with the preparation and periodic updating of a budget and staffing plans for Government of Puerto Rico to support, among other things, the implementation and monitoring of certain revenue enhancement initiatives; (ii) assisting with migrating the Government of Puerto Rico's central accounting and financial reporting methodology; and (iii) assisting the Government of Puerto Rico with the creation and implementation of a centralized Office of Chief Financial Officer ("OCFO") for the key functional areas of government defined within the FOMB's approved fiscal plan

11

(Treasury, Central Accounting, Tax, Budgeting, Human Resources, Finance IT, Procurement, and General Services Administration) to assist with, among other things, the development and implementation of a communications plan for required organizational changes required to implement the OCFO, the identification and implementation of initiatives to enhance agency reporting, forecasting and cash management, the implementation of a contract control approval process, and the evaluation of proposed changes to internal (Hacienda) rules and business processes in advance of the finance IT system upgrade. Other services included providing advice regarding the impact of the Internal Revenue Unified System and potential Puerto Rico tax reform initiatives. None of these services were related to the restructuring of any particular debt incurred by Government of Puerto Rico or any debtor in these Title III cases.

19. To the best of my knowledge, information, and belief, Deloitte FAS and Deloitte Consulting were, during the course of the engagement for the Government of Puerto Rico during these Title III cases, "disinterested persons" pursuant to PRRADA section 2(e)(2)(A) relative to each entity on the list of Material Interested Parties and, during such time, did not represent or hold an adverse interest to the Debtors or their estates in connection with the Title III cases pursuant to PRRADA section 2(e)(2)(B).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 7, 2022

By:   */s/ Kirk Blair*
      Kirk Blair
      Partner