# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DÍAZ-CASTRO,** *et al.*, <br> **Plaintiffs,** <br><br> **v.** <br><br> **COMMONWEALTH OF PUERTO RICO,** *et al.*, <br> **Defendants.** | **CIVIL NO. 16-2873 (CCC)** |

## MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

TO THE HONORABLE COURT:

COME NOW Co-Defendants Commonwealth of Puerto Rico and Mario Rivera-Geigel, in personal capacity only, <u>without submitting to this Court's jurisdiction and/or waiving any affirmative defense</u>, and through the undersigned attorney respectfully ALLEGE and PRAY as follows:

## I. INTRODUCTION

On October 25, 2016, Plaintiffs María Díaz-Castro ("Díaz") and her underage son W.C.D. filed the instant Complaint under 42 U.S.C. § 1983 alleging civil rights violations under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and claims of Conspiracy and under local law tort statutes 1802 and 1803, and Sections 7, 8 and 10 of Article II of the Constitution of the Commonwealth of Puerto Rico against Co-Defendants the Commonwealth of Puerto Rico, Mr. Juan J. Colón-Báez ("Colón"), Mr. Mario Rivera-Giegel ("Rivera"), Luis Ríos-Díaz ("Ríos"), Luis Navas-De Leon ("Navas"), Leilany Carrión-Del Toro ("Carrión") and John Does 1 through 100, (**Docket No. 1**).

Appearing Defendants sustain that, as a matter of law, the instant Complaint filed against them must be dismissed on the following grounds:

1. Plaintiff has failed to state a claim under Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution;

2. Plaintiff has failed to state a claim civil conspiracy under 42 U.S.C. § 1983;

3. Defendant Rivera's actions are protected by Absolute Immunity;

4. Eleventh Amendment Immunity applies to the Commonwealth of Puerto Rico;

5. Local law claim under Article 1803 should be dismissed with prejudice

6. Other local law claims should be dismissed without prejudice.

Therefore, appearing Defendants respectfully request this Honorable Court to **DISMISS** the instant Complaint **WITH PREJUDICE**.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to assert the defense of failure to state a claim upon which relief can be granted, before pleading, if a responsive pleading is allowed. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See* Brown v. Hot, Sexy and Safer Products, Inc., 68 F.3d 252, 530 (1st Cir. 1995). The Court accepts all well pleaded-factual allegations as true, and indulges all reasonable inferences in Plaintiff's favor.  *See* Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *See* Aulson v. Blanchard, 83 F3d 1, 3 (1st Cir. 1996).

To survive a motion to dismiss for failure to state a claim, a complaint must contain

factual allegations sufficient to "raise a right to relief above the speculative level." *See* <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>, at 1964-65. The Supreme Court further explained that the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true". <u>Id.</u> at 1965.

Under <u>Twombly</u>, the factual allegations which are assumed to be true must do more than create speculation or suspicion of a legally cognizable cause of action; they must demonstrate the plausibility of entitlement to relief. <u>Twombly</u>, 550 U.S. at 555, 557. *Accord*, <u>Sanchéz v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009); and <u>MVM Inc. v. Rodríguez</u>, 568 F. Supp. 2d 158, 167 (D.P.R. 2008). The Supreme Court further observed in <u>Twombly</u> that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that a plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." 550 U.S. at 556, n. 3.

To make this plausability determination, the court employs a two-pronged approach. *See* <u>Ocasio–Hernández v. Fortuño–Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." <u>Id</u>. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. <u>Id</u>. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. <u>Id</u>. The plausibility

requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda– Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); *see* Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

## II. THE FACTS ACCORDING TO THE COMPLAINT

According to the Complaint, on April 7, 1999, Efrain Pena-Dieppa ("Pena") and Julio Luyando ("Luyando") were murdered in a rooster fighting establishment in Naguabo, Puerto Rico (**Docket No. 1, p. 4, ¶ 12**). The Puerto Rico Police Department ("PRPD") and the Humacao District Attorney's Office ("DA" launched an investigation (**Id.**). Since the very beginning, the officer in charge of the investigation, Officer Colón Baez, received specific information from various sources and on various occasions that the murder had been committed by individuals known as "Pijuan" and "Falo." (**Docket No. 1, p. 4, ¶ 13**) Colón and John Does 1-100 had also received information that Plaintiff Díaz and her brothers, David Díaz-Castro ("David Díaz") and Edwin Díaz-Castro ("Edwin Díaz"), were not involved in the murder (**Docket No. 1, p. 4, ¶ 14**). PRPD Officer Héctor Figueroa-Torres ("Figueroa"), who was also assigned to investigate the murder, interviewed an eyewitness who at the time was a minor (**Docket No. 1, p. 4, ¶ 15**). The eye witness was with one of the victims, Mr. Pena, in the rooster fighting establishment when the murders occurred (**Id.**). The eyewitness stated that he observed "Pijuan" shoot and kill Pena and Luyando (**Id.**). Figueroa prepared a report regarding the interview with the eyewitness –but it vanished from his file (**Docket No. 1, p. 4, ¶ 16**). Notwithstanding the alleged existence of

4

information leading to "Pijuan" as the prime suspect, defendants arrested Plaintiff Diaz and her brothers on August 26, 2002 and charged them with the murder (**Docket No. 1, p. 4 – 5, ¶ 17**).

Prosecutors Rivera, Ríos, Navas and Carrión were in charge of the investigation and gave legal advice to the PRPD officers (**Docket No. 1, p. 5, ¶ 18**). Co-Defendant Rivera filed the murder and weapons law charges Plaintiff Díaz and requested that W.C.D. (who at the time was three (3) years old) be removed from the custody of his mother (**Docket No. 1, p. 5, ¶ 19**). As part of the investigation process, Puerto Rico prosecutor at the time, Ríos, interviewed Nilsa Dieppa-Santa ("Mrs. Dieppa"), Pena's mother (**Docket No. 1, p. 5, ¶ 20**). Mrs. Dieppa gave a sworn statement to Ríos on February 6, 2003 wherein she stated "Falo" was the killer and gave details (**Docket No. 1, p. 5, ¶ 21**). Mrs. Dieppa did not mention Plaintiff Díaz (**Id.**). With all of the above mentioned information, the prosecutors directed the Puerto Rico Police officers to proceed with the criminal case against the plaintiff and her brothers (**Docket No. 1, p. 5, ¶ 22**).

During Plaintiff Díaz' criminal case, her attorney filed discovery motions, one of which was made pursuant to Rule 95 of the Puerto Rico Rules of Criminal Procedure, requiring the production all existing material evidence, general and exculpatory that would assist the defense in the preparation of their case and in the hands or under the control of the DA's Office (**Docket No. 1, p. 5 – 6, ¶ 23**).

Defendants never produced the report prepared by Figueroa, nor Mrs. Dieppa's sworn statement (**Docket No. 1, p. 6, ¶ 24**). Without this evidence, Plaintiff Díaz and her brothers' Jury Trial was held in Humacao Superior Court (**Docket No. 1, p. 6, ¶ 26**). The prosecutors that tried the case against plaintiff Diaz were defendants Ríos, Navas and Carrion (**Docket No. 1, p. 6, ¶ 28**). These prosecutors stipulated the testimony of Mrs. Dieppa during trial, but only to the extent of her identification of her son (**Docket No. 1, p. 6, ¶ 29**). These same prosecutors did not

inform Plaintiff Díaz' lawyer of Mrs. Dieppa's sworn statement (**Id.**).

On June 11, 2003, Plaintiff Díaz was convicted of two counts of murder in the first degree under the Puerto Rico Penal Code and one count of conspiracy (**Docket No. 1, p. 6 – 7, ¶ 30**). On June 26, 2003, Judgment was entered against Plaintiff Diaz and was sentenced to 99 years imprisonment for one count of murder in the first degree in violation of the Puerto Rico Penal Code; 99 years imprisonment for another count of murder in the first degree in violation of the Puerto Rico Penal Code; and 3 years imprisonment for the violation of Article 262 (conspiracy) of the Puerto Rico Penal Code; all sentences to be served concurrently (**Docket No. 1, p. 7, ¶ 31**). Plaintiff Díaz was remanded to the custody of the Puerto Rico Corrections Department to serve her imprisonment (**Docket No. 1, p. 7, ¶ 32**).

On May 29, 2015, the Humacao Superior Court granted Plaintiff Díaz a new trial (**Docket No. 1, p. 7, ¶ 34**). And on January 8, 2016, a second trial commenced against Plaintiff Díaz (**Docket No. 1, p. 7, ¶ 35**). The prosecutor in charge of the second trial was co-defendant Luis Navas De Leon (**Id.**). During the second trial, Mrs. Yahaira Soto recanted her testimony (**Docket No. 1, p. 7, ¶ 36**). Thereafter, on January 15, 2016, Prosecutor Navas De Leon requested the dismissal of the charges against Plaintiff Díaz (**Docket No. 1, p. 7, ¶ 37**). Plaintiff Díaz was released on January 15, 2016 (**Docket No. 1, p. 7, ¶ 38**).

With this factual backdrop in mind, appearing Defendants respectfully posit that Plaintiffs' claims against them must be dismissed with prejudice.

### III. APPLICABLE LAW AND ANALYSIS

Section 1983 in itself does not create substantive rights, but merely provides a venue for vindicating federal rights elsewhere conferred.  <u>Graham *v.* M.S. Connor</u>, 490 U.S. 386 (1989).  It creates a private right of action for redressing abridgments or deprivations of federally assured

rights. <u>Cox v. Hainey</u>, 391 F.3d 25, 29 (1ˢᵗ Cir.2004); <u>McIntosh v. Antonino</u>, 71 F.3d 29, 33 (1ˢᵗ Cir.1995); <u>Evans v. Avery</u>, 100 F.3d 1033, 1036 (1ˢᵗ Cir.1996).

In order to state a valid claim under 42 U.S.C. § 1983, three elements must be alleged before it becomes cognizable. **First**, that the conduct complained of was committed by a person acting "under color of state law." *See*, <u>Gómez v. Toledo</u>, 446 U.S. 635, 640 (1980), also, <u>Gutiérrez Rodríguez v. Cartagena</u>, 882 F.2d 553 (1ˢᵗ Cir. 1989).

**Secondly**, a plaintiff must allege **facts** sufficient to conclude that the alleged conduct worked a denial of rights secured by the Constitution or laws of the United States. *See,* <u>Cepero-Rivera v. Fagundo</u>, 474 F.3d 124 (1ˢᵗ Cir. 2005). A section 1983 violation occurs when an official acting under color of state law, **acts to deprive** an individual of a federally protected right. <u>Maymi v. Puerto Rico Ports Authority,</u> 515 F.3d 20, 25 (1ˢᵗ Cir.2008).

As a **third** element, plaintiff must prove that the defendant was **personally and directly involved** in causing the violation of the plaintiff[s'] federally protected rights. This third element requires a showing of a causal connection between the specific defendant and plaintiff[s'] federal rights deprivation. *See* <u>Wilson v. City of North Little Rock</u>, 801 F.2d 316, 322 (8ᵗʰ Cir. 1986); <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1161 (5ᵗʰ Cir. 1986). This personal involvement may consist of direct acts by the defendant, certain acts performed at defendant[s'] direction or knowledge and consent. Therefore, each defendant individually responds for his own acts and omissions in light of his own duties. *See* <u>Rizzo v. Goode,</u> 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed. 2d 561 (1976); <u>Monell v. New York Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiffs must show that defendant's actions were in fact the cause of the alleged constitutional deprivation. <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1ˢᵗ Cir.2008) (*citing*

Rodriguez-Cirilo *v. Garcia*, 115 F.3d 50, 52 (1st Cir.1997)). A plaintiff is required to allege personal action or inaction by each defendant within the scope of their responsibility that would make each of them personally answerable in damages pursuant to section 1983. *See* Pinto v. Nettleship, 737 F. 2d 130, 133 (1st Cir. 1984).

Causation is an essential element of a section 1983 cause of action. Causal connection requires that the plaintiff establishes: 1) that the defendants were personally involved in the violation. *See* Monell v. Department of Social Services, 436 U.S. 658, 694 n. 58 (1978); Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1989); Medina Pérez v. Fajardo, 257 F.Supp. 2d 467 (D.P.R. 2003); and 2) that the defendants conduct was intentional, Simmons v. Dickhaut, 804 F. 2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See* Clark v. Taylor, 710 F.2d 4, 36 Fed.R.Serv.2d 1202 (1983).

A plaintiff cannot succeed in a civil rights action if he or she fails to demonstrate a causal connection between the state official's alleged wrongful action and the alleged deprivation. *See* Reimer v. Smith, 663 F. 2d1316, 1322, n. 4 (5th Cir. 1981).

## A. Eleventh Amendment Immunity bars suits claiming monetary relief against the Commonwealth of Puerto Rico.

Plaintiffs seek to remove the Eleventh Amendment's protective mantle from the Commonwealth. Indeed, they allege that "[p]ursuant to *Commonwealth of Puerto Rico v. Luis Sanchez Valle*, 579 U.S. __ (2016), the Commonwealth of Puerto Rico is not a sovereign; thereby the sovereign immunity clause of the Eleventh Amendment of the United States Constitution is inapplicable." (**Docket No. 1, p. 3, ¶ 8**) (Italics in the original) However, as shall be seen below, Plaintiffs' naked conclusion is simply incorrect. Consequently, all of Plaintiffs'

claims against the Commonwealth must be DISMISSED WITH PREJUDICE on account of the Eleventh Amendment. Let us see why.

The Eleventh Amendment to the Constitution of the United States bars the commencement of certain suits in federal courts claiming compensatory relief against any state, including Puerto Rico, without its consent. *See* Rodríguez-Díaz v. Sierra-Martínez, 717 F. Supp. 27, 29 (D.P.R. 1989); Brandon v. Holt, 469 US 464, 471-72 (1985), Kentucky v. Graham, 473 US 159, 165-67 (1985). "[T]he government enjoys broad protection through the operation of the sovereign immunity doctrine." Muirhead v. Mecham, 427 F .3d 14, 18 (1st Cir. 2005). The immunity provided by the Eleventh Amendment, however, is not limited to cases in which a state is a party to the same as is the case here. The immunity has been held to apply "in cases involving diverse governmental entities, including schools, cities, counties, state agencies, multi-state agencies, governors and officers." *See* Trans Am. Recovery Serv. V. P.R. Maritime Shipping, 820 F. Supp. 38, 41 (D.P.R. 1993); Arroyo-Otero v. Hernández-Purcell, 804 F. Supp. 418, 422 (D.P.R. 1992). "When an action is brought against such an entity or individual, a court must consider whether the defendant is an 'arm or alter ego of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.'" *Id.* (citations omitted).

The Commonwealth of Puerto Rico "enjoys the full benefits of the Eleventh Amendment." *See* Fernández v. Chardón, 681 F.2d 42, 59, n. 13 (1st Cir. 1982). *See also* Ezratty v. Commonwealth of Puerto Rico, 648 F.2d. 770, n. 7 (1st 1981); Culebras Enterprises Corp. v. Rivera-Ríos, 813 F.2d 506, 516 (1st Cir. 1987). The First Circuit Court of Appeals has consistently held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and

9

therefore, Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. *See* Negrón-Gaztambide v. Hernández-Torres, 145 F.3d 410, 416 (1st Cir. 1998).

The United States Supreme Court has made it clear that "Congress may abrogate the states' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). It has been clearly established that Section 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States. Quern v. Jordan, 440 US 332, 345 (1979). The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). When an action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual officials are nominal defendants. Edelman v. Jordan, 415 US 651, 663 (1974).

Notwithstanding the foregoing, a state can waive its Eleventh Amendment immunity to suit in three ways: (1) by clear declaration that it intends to submit itself to the jurisdiction of the federal courts; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation. New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004) (internal quotations omitted). Courts will only find waiver when it is "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for another reasonable construction." Edelman v. Jordan, 415 U.S. at

10

673. "[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in *federal court*." Acevedo López v. Police Department of the Commonwealth of Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001).

Plaintiffs are suing the Commonwealth for monetary relief and allege, in essence, that the Commonwealth is liable to them for the negligent and unlawful behavior of its officials and employees and/or for a policy or custom to abridge citizens of their constitutional rights (**Docket No. 1, p. 11 – 17, ¶ 44 – 72**). However, the *status quo* regarding Eleventh Amendment Immunity is unchanged and First Circuit precedent still remains standing regardless of the US Supreme Court's Sánchez-Valle opinion.

Indeed, there is "an unbroken string of cases over the last two decades, [where] the First Circuit consistently has held that Puerto Rico is considered a 'State' for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico." Vega Castro v. Puerto Rico, 43 F. Supp. 2d 186, 189 (D.P.R. 1999) aff'd sub nom. Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34 (1st Cir. 2000). *See also* Perez v. Caballero, No. CIV. 14-1276 CVR, 2014 WL 4215547, at *4 (D.P.R. Aug. 25, 2014) ("[…] it has long been held that for Eleventh Amendment purposes, the Commonwealth of Puerto Rico is considered a state, *see,* Negrón Gaztambide v. Hernández Torres*,* 145 F.3d 410 (1st Cir.1998), and furthermore, that it enjoys the full benefits of the Eleventh Amendment. Ezratty v. Commonwealth of Puerto Rico*,* 648 F.2d 770, 776 n. 7 (1st Cir.1981).)

Yet, Plaintiff would have us believe that Sanchez-Valle has swept away the Commonwealth's Eleventh Amendment Immunity; however, that is not the case. In Morales v. Puerto Rico, No. 15-1096 (GAG), 2015 U.S. Dist. LEXIS 106619 (D.P.R. Aug. 11, 2015),

11

Plaintiff sought to amend his complaint to include the Commonwealth as a Defendant. Morales claimed that in light of <u>Sanchez-Valle</u> (which at the time was still at the Puerto Rico Supreme Court level)[1] Puerto Rico was "no longer a dual sovereign with respect to the United States and its powers are not those reserved to the States, but those specifically granted to it by Congress." (**Id.**, **at p. 5**) Thus, because "Puerto Rico is no longer recognized as a sovereign entity, but rather is a mere territory of the United States, it cannot enjoy the rights specifically reserved to the States under the Eleventh Amendment." (**Id.**) However, in a thoughtful and well-reasoned Opinion and Order, the <u>Morales</u> Court denied a request to amend the complaint.

Indeed, acknowledging that the Puerto Rico Supreme Court ("PRSC") decision in <u>Sánchez-Valle</u> did not serve as precedent at that time (nor at the present time for that matter), that Court reasoned that "[e]ven if the court were to agree with that court's conclusion, it is the First Circuit that must revisit the issue and overrule itself, not the Puerto Rico Supreme Court." (**Id.**, at p. 26) The Court went on to elaborated that "the First Circuit, fully recognizing that the Commonwealth is not a State, but rather a territory, and thus still governed by the Territorial Clause, nevertheless noted that it 'consistently [has] held that Puerto Rico's sovereign immunity in federal courts parallels the states' Eleventh Amendment immunity' because of the <u>substantial measure of autonomy that it exercises over its own affairs</u>." (**Id.**, **at p. 28**) (*Citing* <u>Jusino Mercado v. Commonwealth of Puerto Rico</u>, 214 F.3d 34, 38-9, 44 (1st Cir. 2000) (our emphasis).

<u>Sáchez-Valle</u> has not changed anything related to the Commonwealth's Eleventh Amendment Immunity. The issue in <u>Sanchez-Valle</u> was very specific: in the US Supreme Court's own words, it had to "decide if, under [the dual-sovereignty doctrine], Puerto Rico and the United States may successively prosecute a single defendant for the same criminal conduct."

---

[1] The <u>Sánchez-Valle</u> Puerto Rico Supreme Court decision (2015 TSPR 25) was issued on May 20, 2015.

Sánchez Valle, 136 S. Ct., at 1868. That test "hinge[d] on a single criterion: the 'ultimate source' of the power undergirding the respective prosecutions. (**Id., at p. 1871**) (Citations omitted) "The inquiry is <u>thus historical, not functional</u> — looking at the deepest wellsprings, not the current exercise, of prosecutorial authority." (**Id.**) (our emphasis) The United States Supreme Court held that the Commonwealth is not a distinct sovereign <u>for purposes of the Double Jeopardy Clause</u> and affirmed the PRSC decision (*see* **Id., at p. 1876 – 1877**).

In the Commonwealth's view, this is a rather narrow and tightly constrained holding that does not alter previous Eleventh Amendment precedent as applied to the Commonwealth.

As the <u>Morales</u> Court noted in its Opinion and Order, "the Supreme Court and First Circuit have consistently considered Puerto Rico a State for purposes of constitutional and statutory interpretation in many cases, yet nevertheless do not consider it a State for other purposes." <u>Morales</u>, *supra*, at p. 29. And "[u]nless the First Circuit overrules its precedent […] the cases holding that the Eleventh Amendment applies to Puerto Rico remain binding on this court." (**Id.**) And the First Circuit has not done so.

The Commonwealth respectfully submits that Eleventh Amendment Immunity is still in place. Therefore, Plaintiffs' claims against the Commonwealth of Puerto Rico must be **DISMISSED WITH PREJUDICE** due to Eleventh Amendment Immunity.

**B. Plaintiffs' individual claims under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution must be dismissed for failure to state a claim.**

According to Plaintiff Díaz, "[t]he acts and omissions performed by defendants deprived [her] of her federal Constitutional rights, by perverting the legal process to deprive her of liberty interests. These acts constitute an illegal detention and arrest, invasion of privacy, violation of due process and cruel and unusual punishment, all in violation of the Fourth, Fifth, Eighth and

Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983." (**Docket No. 1, p. 20, ¶ 88**) Appearing Defendants[2] will address each of these claims and will demonstrate why each should be dismissed with prejudice for failure to state a claim.

> **1. The Plaintiff Díaz has failed to plead a Fourteenth Amendment Claim against the appearing Defendants.**

The Supreme Court has held that "not all actions of state officials that result in a loss of life, liberty or property are 'deprivations' within the meaning of the Fourteenth Amendment." Germany v. Vance, 868 F.2d 9, 17 (1st Cir. 1989). But more importantly, "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically-intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. 386, 395 (1989).

The Court of Appeals for the First Circuit has also instructed that substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision. S. County Sand & Gravel Co. v. Town of S. Kingstown, 160 F.3d 834, 835 (1st Cir. 1998) (Stressing that "[w]hen a specific provision of the Constitution protects individuals against a particular kind of [misconduct] by government actors, individuals seeking redress . . . must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process."). *See also* McLeod-Lopez v. Algarin, 603 F. Supp. 2d 330, 340 (D.P.R. 2009) (dismissing plaintiffs' Due Process invasion of privacy and illegal seizure claims since alternative constitutional claims were available under the Fourth Amendment).

---

[2] The Commonwealth sustains that all claims against it must be dismissed on Eleventh Amendment Immunity. It nevertheless joins Co-Defendant Rivera's arguments as alternative grounds for dismissal.

Plaintiff Díaz' alleged facts make up potential claims of illegal search and malicious prosecution which should be analyzed under the Fourth Amendment's prohibition against illegal searches and seizures and not under the Due Process Clause of the Fourteenth Amendment.

Therefore, all of Plaintiff Díaz' claims brought under the Due Process Clause of the Fourteenth Amendment should be **DISMISSED WITH PREJUDICE** in its entirety.

> **2. Plaintiff Díaz' claims brought under the Fourth Amendment must be dismissed for failure to state a claim.**

Plaintiff Díaz has two claims that fall under the Fourth Amendment's rubric: 1) her illegal search claim (**Docket No. 1, p. 1, ¶ 1**) and 2) her malicious prosecution claim. Let us first discuss why Plaintiff Díaz' illegal search claim must be dismissed.

The Fourth Amendment protects people from unreasonable searches and seizures by the government. However, the reasonableness of a search depends entirely on the context in which it takes place; different Fourth Amendment doctrines as to reasonableness have evolved to fit different contexts.

The instant Complaint **is utterly devoid** of any well pleaded facts that state a claim of an illegal search against the appearing Defendants. In light of this, this claim brought under the Fourth Amendment against the appearing Defendants must be **DISMISSED WITH PREJUDICE** for failure to state a claim.

Plaintiff Díaz' Complaint essentially bring a malicious prosecution claim which shall be discussed below under Absolute Immunity.

> **3. Plaintiff Díaz has failed to properly plead a Fifth Amendment Claim against Defendants.**

The appearing Defendants submit that there is no causal connection between Rivera's conduct, or any other Defendant, and any allegation concerning a Fifth Amendment claim.

It has long been established that the Fifth Amendment applies to actions of the federal government, not those of private individuals, or of state governments. Pub. Utilities Comm'n v. Pollak, 343 U.S. 451 (1952); Gerena v. P.R. Legal Services, Inc., 697 F.2d 447, 449 (1st Cir. 1983). There are no federal actors present as parties in this case, nor have Plaintiffs alleged any federal actions or omissions. In fact, Plaintiffs allege that Defendant Rivera was a state prosecutor –not a Federal employee (**Docket No. 1, p. 3, ¶ 10**).

Because the Plaintiffs do not allege that any Defendant is a Federal employee, any Fifth Amendment claim against them must be properly dismissed. *See* Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8-9 (1st Cir. 2007). As a result, it is clear that the Fifth Amendment claims made by the Plaintiffs must be **DISMISSED WITH PREJUDICE** for failure to state a claim.

### 4. Plaintiff Díaz have failed to state a claim under 42 U.S.C. § 1983 and under the Eighth Amendment to the United States Constitution.

The Eighth Amendment, which prohibits cruel and unusual punishment, was designed especially for the protection of those convicted of crimes. Ayala Serrano v. González, 909 F.2d 8, 14 (1st Cir.1990). As such, it is well-established that the Eighth Amendment applies only after a prisoner is convicted. *See* United States v. Myers, 972 F.2d 1566, 1571 (11th Cir.1992). The treatment a prisoner receives while incarcerated and the conditions under which he is confined are subject to Eighth Amendment scrutiny. Giroux v. Somerset County, 178 F.3d 28, 31 (1st Cir.1999) (internal citations omitted).

The Defendants aver that the Plaintiffs have not offered any facts to substantiate any kind Eighth Amendment claim. None of the facts alleged by the Plaintiff Díaz in her complaint is related to the Eighth Amendment. As such, Plaintiffs' claims under Eighth Amendment against all of the Defendants should be **DISMISSED WITH PREJUDICE** for failure to state a claim

16

upon which relief can be granted.

> **5.  The Plaintiff has failed to properly plead a Conspiracy claim against the appearing Defendant.**

In order to state a claim for conspiracy pursuant to Section 1983, the complaint must allege "(1) the existence of a conspiracy involving state action; and (2) a [deprivation] of civil rights in furtherance of the conspiracy by a party to the conspiracy." Machese v. Umstead, 110 F.Supp. 2d 361,371 (E.D. Pa.2000) (citations omitted). A conspiracy is " 'a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." ' Id. (*quoting* Panayotides v. Rabenold, 35 F.Supp.2d 411, 419 (E.D.Pa.1999), aff'd, 210 F.3d 358 (3d Cir.2000)).

Consequently, a claim for conspiracy pursuant to Section 1983 must specifically allege the "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Id. (citations omitted). Moreover, " '[o]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." ' Id. (*quoting* Outterbridge v. Pennsylvania Dep't of Corrections, No.Civ.A. 00-1541, 2000 WL 795874, at *3 (E.D. Pa. June 7, 2000)).

In general terms, Plaintiff Díaz alleges that the "[…] evidence was provided to the Commonwealth of Puerto Rico prosecutors: Rivera, Rios, De Leon and Carrion, which contrary to their constitutional responsibility knowingly and/or with deliberate indifference, willfully, conspired to conceal and through deception failed to provide [her] defense attorney with the same as required by law and in deprivation of her federal and local constitutional rights;

subjecting her to the deprivation of her right to a fair trial and liberty." (**Docket No. 1, p. 18 – 19, ¶ 78**) However, these are mere threadbare recitals of the elements of a claim for conspiracy under Section 1983. *See* <u>Ashcroft</u>, 129 S.Ct., at 1949 (*citing* Twombly, 550 U.S. at 555).

After the Court screens the Complaint for statements that merely offer legal conclusions couched as fact we are left with very little, if anything, regarding a conspiracy claim. There are no non-conclusory factual allegations that the Court can credit in order to draw reasonable inferences to determine if the claims against the appearing Defendants are plausible.

Given that the Complaint is utterly devoid of any well pleaded fact that shows Defendant Rivera's involvement in any conspiracy claim, Plaintiff Díaz' conspiracy claim against him must be **DISMISSED WITH PREJUDICE** for failure to state a claim.

## C. Plaintiff's Fourth Amendment claim against the Defendant Rivera is barred by Absolute Immunity.

Let us now turn to Plaintiff Díaz main claim of malicious prosecution as alleged against Defendant Rivera, a Puerto Rico Prosecutor. As the Court shall see, Defendant Rivera is protected by Absolute Prosecutorial Immunity, and therefore, the malicious prosecution filed against him must be DISMISSED WITH PREJUDICE. Let us see.

In <u>Hernandez–Cuevas v. Taylor</u>, 723 F.3d 91 (1st Cir.2013), the First Circuit recognized Fourth Amendment malicious prosecution claims under Section 1983. It had long been implicit in the First Circuit's caselaw that "it is 'self-evident' that 'those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.' " *Id*. at 100 (*citing* <u>Limone v. Condon</u>, 372 F.3d 39, 44–45 (1st Cir.2004) (concluding that "the right not to be framed by law enforcement agents was clearly established in 1967")). But in <u>Hernandez-Cuevas</u>, the Court finally stated that it was "convinced that an

18

individual does not lose his Fourth Amendment right to be free from unreasonable seizure when he becomes detained pursuant to judicial process." *Id*. at 100.

Certainly, in most cases, the neutral magistrate's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure. … But, if a plaintiff can overcome this causation problem and demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action. Id. (internal citations omitted).

In order to bring a Section 1983 malicious prosecution claim under the Fourth Amendment, a plaintiff must establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez–Cuevas, 723 F.3d at 101 (citation and quotation marks omitted). In Hernandez-Cuevas, the First Circuit adopted a "purely constitutional approach" rather than the "blended constitutional/common law approach" adopted by other Courts of Appeals to the analysis of malicious prosecution claims, thereby eliminating malice as an element of such a claim. *See id*. at 100. Thus, the instant action hinges over the existence of probable cause.

"Probable cause requires only a probability that the defendant committed the crime." Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009). Proof of probable cause is not to be confused with the more onerous standard of proof of guilt beyond a reasonable doubt. *See* United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999). Rather, probable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its

commission. *See* Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009); United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007); United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987).

There can be no doubt that Plaintiff Díaz puts forth a malicious prosecution claim under the Fourth Amendment to the US Constitution. Yet, it is clear that the malicious prosecution claim alleged against Defendant Rivera falls squarely within the framework protected by the absolute immunity doctrine. Plaintiff Díaz' Complaint is very specific as to his claims and allegations against Rivera. Co-Defendant Rivera's alleged participation can be summed up in three actions: 1) he gave legal advice to the PRPD officers (**Docket No. 1, p. 5, ¶ 18**); 2) he authorized PRPD officer to file murder and weapons law charges Plaintiff Díaz (**Docket No. 1, p. 5, ¶ 19**); and 3) Defendants never produced the report prepared by Figueroa, nor Mrs. Dieppa's sworn statement (**Docket No. 1, p. 6, ¶ 24**) after Díaz' attorney requested it via motions during the criminal procedure (**Docket No. 1, p. 5 – 6, ¶ 23**).

It is beyond peradventure that Defendant Rivera did not investigate the facts as an investigative police officer, or as a detective. If anything, appearing Defendant evaluated the evidence presented to him and authorized the filing of criminal charges. After conducting the evaluation, and crediting the evidence before him, Defendant Rivera proceeded to authorize the filing criminal charges against Plaintiff Díaz. And that is all he did prior to the filing of charges as per the Complaint.

It is clear that Defendant Rivera was not personally involved in the investigation conducted by the Police, specifically by Figueroa or Colón, or any other. Rivera did not go into the field to uncover evidence against Plaintiff Díaz, **he just gave legal advice**. At all times Rivera acted as an attorney, not a detective. His only actions were to evaluate the evidence

gathered by the police, and to authorize the filing of criminal charges against Plaintiff Díaz. Defendant Rivera is protected by Absolute Immunity.

Absolute immunity is a defense encompassing the "special functions" of certain officials that resemble functions that would have been immune at common law when § 1983 was enacted. Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir.1995) (*quoting* Buckley v. Fitzsimmons, 509 U.S. 259, 268-69, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). In determining whether a particular act fits within the common-law tradition of absolute immunity, the Supreme Court takes a "functional approach." *Id.* (*quoting* Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)). That approach entails an examination "the nature of the function performed, not the identity of the actor who performed it." *Id.* (*quoting* Buckley, 509 U.S. at 269, 113 S.Ct. 2606).

A prosecutor is entitled to absolute immunity for conduct associated with the initiation of a prosecution. Harrington v. Almy, 977 F.2d 37, 40 (1st Cir. 1992) (*citing* Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). The decision whether or not to charge is at the core of the prosecutorial functions the courts have sought to insulate from second guessing through civil litigation. Harrington, 977 F.2d at 40.

"A prosecutor is duty bound to exercise his best judgment both *in deciding which suits to bring* and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Id., *quoting* Imbler, 424 U.S. at 424–25, 96 S.Ct. at 992 (emphasis supplied).

The reasoning behind the doctrine is clear. Absolute prosecutorial immunity is intended to protect the prosecutor's independence as he makes difficult determinations regarding matters

within her discretion. When a prosecutor is enshrouded in absolute immunity, the protection is not eroded no matter how erroneous the act may have been, how injurious its consequences, or how malicious the motive. Suboh v. City of Revere, Mass., 141 F. Supp. 2d 124, 137 (D. Mass. 2001) *aff'd in part, rev'd in part sub nom*, Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81 (1st Cir. 2002) (*citing* Cleavinger v. Saxner, 474 U.S. 193, 199–200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir.1989) (per curiam). *See also,* Reid v. New Hampshire, 56 F.3d 332, 337 (1st Cir. 1995) (noting that even an allegation that "prosecutors repeatedly misled the trial court in order to conceal their alleged misconduct does not defeat absolute immunity") (*citing* Burns v. Reed, 500 U.S. 478, 489-90, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)). William P. Youngworth, III v. Mark A. Gentile, 2007 U.S. Dist. LEXIS 45709.

It is crystal clear that Rivera acted as an advocate of the state in choosing to authorize charges against Plaintiff Díaz. Rivera's decision to charge Plaintiff Díaz is precisely at the core of the prosecutorial functions that the courts have sought to insulate from second guessing through civil litigation. Furthermore, even if the Court determined that the Complaint has well pleaded facts concerning concealment of exculpatory evidence, actions to mislead the trial court in order to conceal their alleged misconduct **does not** defeat absolute immunity.

Defendant Rivera contends that any claim that arises from the initiation of a judicial proceeding in the context of a malicious prosecution claim, and his actions while acting as an attorney for the government, are barred by Absolute Immunity. As such, Plaintiff Díaz' claim of malicious prosecution against him must be **DISMISSED WITH PREJUDICE** on account of absolute prosecutorial immunity.

**D.  Plaintiff W.C.D. claim against the appearing Codefendants must also be dismissed.**

As a general rule, "a litigant may only assert his own constitutional rights or immunities." U.S. v. Raines, 362 U.S. 17, 22 (1960); McGowan v. State of Md., 366 U.S. 420, 429 (1961). Thus, only persons who have suffered the deprivation of federally-protected rights by state officials may bring an action under 42 U.S.C. § 1983. *See* Torres v. U.S., 24 F. Supp. 2d 181, 183 (D.P.R. 1998).

Family members have no independent cause of action under § 1983 "unless the constitutionally defective conduct or omission was directed at the family relationship." Torres v. U.S., 24 F. Supp. 2d 181, 183 (D.P.R. 1998). These cases fall within two categories. The first, substantive due process, prohibits states from interfering "in certain particularly private family decisions" such as "decisions whether to procreate; whether to school one's children in religious as well as secular matters; and defining the 'family' with whom one chooses to live." Valdivieso Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986) (citations omitted). The second category, procedural due process, *see* Santosky v. Kramer, 455 U.S. 745, 755 (1982), requires states to "adhere to rigorous procedural safeguards" when it "seeks to change or affect the relationship of parent and child in furtherance of a legitimate state interest, such as termination of parental rights." Valdivieso, 807 F.3d at 8 (citations omitted).

W.C.D., Plaintiff Díaz' minor aged son, also bring § 1983 claims arising from Rivera's authorizing of charges against Díaz, and his request to remove him from the custody of his mother (**Docket No. 1, p. 5, ¶ 19**).

However, this claim fails for two reasons. First, Plaintiffs are not challenging procedural deficiencies in the Commonwealth's handling of the petition for removal of custody. Even if they were, the responsibility of ensuring procedural safeguards would not fall upon Rivera. Second, Rivera was also acting as an Attorney for the state in Court. Therefore, this claim should

23

also be dismissed due to absolute prosecutorial immunity. As such, Plaintiffs claim under this theory against Rivera must be **DISMISSED WITH PREJUDICE** on account of absolute prosecutorial immunity.

### E. Plaintiffs' pendent claims under Article 1802 and 1803 of the Civil Code of Puerto Rico against the appearing Codefendants must also be dismissed.

Plaintiffs filed claims under Article 1803 of the Civil Code of Puerto Rico against all defendants. As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others. Only when clearly specified in the law can liability for the acts or omissions of others be enforced against a third party. Vélez v. Llavina, 18 P.R.R. 634 (1912). The cases in which vicarious responsibility is applicable are enumerated in the aforementioned Article 1803 of the Puerto Rico Civil Code. Said enumeration has been held to be taxative and not of an exemplary nature. Torres Perez v. Medina Torres, 113 D.P.R. 72 (1982). The exceptions to the established general rule, as enumerated in Article 1803, are the liability of the father or mother for the damage caused by minor children; of guardians for the damage caused by the persons under their authority who live with them; of employers for the damage caused by an employee acting in the course of his employment; of masters or directors of arts and trades for the damage caused by their pupils or apprentices, and of the government of the Commonwealth of Puerto Rico under certain pre-established circumstances. Thus the owners or directors of an establishment or enterprise are liable for damages caused by their employees in the course of their employment or on account of their duties. Puerto Rico Civil Code (1930) Art. 1803, 31 L.P.R.A. § 5142. Burgos-Oquendo v. Caribbean Gulf Refining Corp., 741 F.Supp. 330, 333-34 (DPR 1990).

24

In the instant case, the Plaintiffs have not alleged any well pleaded facts that support an entitlement to relief under Article 1803 of the Commonwealth Civil Code. The only mentions of the § 1803 claim occurs at the beginning and at the end of the Complaint (**Docket No. 1, p. 16 – 17, ¶ 69 and at p. 21, ¶ 92**). There are no other instances where it is addressed (*see* generally **Docket No. 1**). In the case of the Commonwealth, it is immune from suit pursuant to Eleventh Amendment Immunity. In the case of Co-Defendant Rivera, there are no alleged facts that state vicarious responsibility on his part pursuant to section 1803. As such, Plaintiffs' Article 1803 claims must be **DISMISSED WITH PREJUDICE** for failure to state a claim.

As to Plaintiffs' other local law claims (Article II, Sections 1, 4 and 10 of the Constitution of the Commonwealth of Puerto Rico, and Article 1802 of the Puerto Rico Civil Code) appearing Defendant Rivera asks the Court to abstain from exercising supplemental jurisdiction over him.

Pretrial termination of federal-law claims forces dismissal of pendent state-law claims in the absence of any other cognizable basis for federal jurisdiction. Rodríguez v. Doral Mortgage Corp., 57 F. 3d 1168, 1175-117 (1st. Cir. 1995).  In deciding whether or not to retain jurisdiction on state-law claims after a dismissal of all claims over which the trial court has original jurisdiction, the trial court must take into consideration concerns of comity, judicial economy, convenience and fairness. *See* Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995).

In the instant case, there are no valid federal claims against appearing Defendants, thus any pendent state-law claims should all be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. sec. 1367(c)(3).

### III. CONCLUSION AND PRAYER

WHEREFORE, without submitting to the jurisdiction of the Court and/or waiving any affirmative defenses, appearing Defendants respectfully pray that this Honorable Court DISMISS WITH PREJUDICE the case due to Plaintiffs' failure to state a claim upon which relief can be granted against them.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico on this 11th day of January, 2017.

IT IS HEREBY CERTIFIED that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties.

WANDA VÁZQUEZ GARCED
Secretary of Justice (Designated)

WANDYMAR BURGOS VARGAS
Acting Deputy Secretary in Charge of Litigation and
Acting Director of Federal Litigation Division

S/*Jaime J. Zampierollo-Vilá*
JAIME J. ZAMPIEROLLO-VILÁ
USDC-PR No. 228710
Federal Litigation Division
Department of Justice
P.O. Box 9020192
San Juan, PR  00902-0192
Office (787) 721-2900 2650
Fax. (787) 723-9188
Email: jzampierollo@justicia.pr.gov

26