# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br><br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: Case No. 4780, ECF No. 3066**<br><br>**This Court Filing Relates only to PREPA and Shall be Filed in the lead Case No. 17-BK-3283-LTS and PREPA's Title III Case (Case No. 17-BK-4780-LTS).** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| FUEL LINE LENDERS,<br><br>    Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Respondent. | PROMESA<br><br>Title III<br><br>No. 17 BK 4780-LTS |

**OBJECTION TO FUEL LINE LENDERS' URGENT MOTION FOR EXAMINATION
OF THE OVERSIGHT BOARD UNDER FEDERAL RULE
OF BANKRUPTCY PROCEDURE 2004 CONCERNING
<u>VITOL SETTLEMENT AGREEMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND ........................................................................................................................ 4
ARGUMENT .............................................................................................................................. 5
    A.    Legal Standard. ..................................................................................................... 5
    B.    Analysis................................................................................................................. 6
CONCLUSION......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Cali Express, Inc. v. Bermingham*,
    No. 1:14-cv-1683-SEB-DKL, 2015 WL 13631361 (S.D. Ind. Jul. 20, 2015) ......................... 10

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
    332 F.3d 976 (6th Cir. 2003) ............................................................................................... 10

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................................... 6

*In re Eagle-Picher Indus., Inc.*,
    169 B.R. 130 (Bankr. S.D. Ohio 1994) .................................................................................. 6

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002) ................................................................................... 5

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    295 F. Supp. 3d 66 (D.P.R. 2018) ..................................................................................... 6, 9

*In re Good Hope Refineries, Inc.*,
    9 B.R. 421 (Bankr. D. Mass. 1981) ....................................................................................... 6

*In re Imerys Talc Am., Inc.*,
    Case No. 19-10289 (LSS) (Bankr. D. Del.) ........................................................................... 8

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ................................................................................... 6

*In re SunEdison, Inc.*,
    562 B.R. 243 (Bankr. S.D.N.Y. 2017) ................................................................................... 8

*In re Texaco Inc.*,
    79 B.R. 551 (Bankr. S.D.N.Y. 1987) ..................................................................................... 8

*MiMedx Grp., Inc. v. Fox*,
    No. 16 C 11715, 2018 WL 11223425 (N.D. Ill. June 22, 2018) .......................................... 10

**STATUTES & RULES**

11 U.S.C. § 1129(a)(10) .............................................................................................................. 2, 6

48 U.S.C §§ 2101-2241 ................................................................................................................... 1

PROMESA § 314(c) ................................................................................................................... 2, 7

Fed. R. Civ. P. 26 ................................................................................................................3, 8

Fed. R. Bankr. P. 2004 ............................................................................................3, 5, 6, 7, 8

Fed. R. Bankr. P. 2004(b) .........................................................................................................5

Fed. R. Bankr. P. 9014 .............................................................................................................8

To the Honorable United States Magistrate Judge Judith Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor") in this Title III case pursuant to section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Urgent Motion of Fuel Line Lenders for Examination of Oversight Board Under Federal Rule of Bankruptcy Procedure 2004 Concerning Vitol Settlement Agreement* [ECF No. 3066][3] (the "Urgent Motion").

## PRELIMINARY STATEMENT

1. After this Court denied PREPA's summary judgment motion against Vitol and granted Vitol a judgment in the approximate amount of $41 million on Vitol's unsecured, prepetition claim, PREPA appealed.[4] Then, PREPA and Vitol settled the appeal. The settlement, a copy of which is attached hereto as **Exhibit A**, provides PREPA shall dismiss its appeal in exchange for Vitol's agreement that its treatment under PREPA's Title III plan of adjustment shall provide Vitol half the consideration provided to other non-bond general unsecured claims and a release from PREPA. Because that treatment is unique to Vitol in that Vitol will receive half what other unsecured claims receive and will obtain a release from PREPA (which PREPA is not providing other creditors), Vitol will be in a separate class under any PREPA Title III plan of adjustment.

---

[2] PROMESA is codified at 48 U.S.C §§ 2101-2241.

[3] Unless otherwise stated, all docket references shall refer to docket entries in 17-bk-4780.

[4] Capitalized terms used but not defined in this Objection have the meaning given to them in the Urgent Motion.

1

2. The foregoing is disturbing to the holders of fuel line claims because Vitol's acceptance of the foregoing treatment satisfies the Bankruptcy Code requirement in section 1129(a)(10) that a plan have at least one impaired accepting class. (PROMESA section 314(c) allows for a single class plan to be confirmed without any impaired accepting class). That means a plan containing more than one impaired class with one class accepting, or no impaired accepting class in a single-class plan, can be confirmed under section 1129(b) without acceptance of other classes. To deprive PREPA of the rights it has after procuring one impaired accepting class, the holders of the fuel line claims urgently demand discovery to find facts that somehow convince the court to disregard PREPA's satisfaction of section 1129(a)(10) based on the Vitol settlement. Presumably, if the Fuel Line Lenders settle with PREPA, they would be fine with their impaired accepting class satisfying section 1129(a)(10).

3. The Urgent Motion is premature because it seeks discovery regarding the confirmability of a non-existent hypothetical proposed plan. No plan has yet been filed and it is far from a foregone conclusion that Vitol will be the only impaired accepting class under a PREPA plan. Indeed, securing additional (if not fully consensual) support for a plan is a paramount goal of the ongoing mediation. And, even if the plan lacks additional impaired accepting classes when filed, such classes may arise before the disclosure statement hearing and/or confirmation hearing or be revealed through voting on the plan. It is also premature because, shortly after proposing a plan of adjustment, the Court will likely issue an order governing efficient discovery by all parties in interest. The Court may also issue a ruling about whether parties are entitled to documents showing negotiations.

4. Moreover, while styled as an "urgent" motion, there is no urgency. The Urgent Motion comes just weeks before the Oversight Board is due to file a proposed plan of adjustment

2

and disclosure statement for PREPA, is litigating with PREPA's bondholders on a truncated schedule, and is in the midst of ongoing plan mediation. Discovery at this juncture, rather than in connection with confirmation, only serves to divert the Oversight Board's attentions at a critical juncture in PREPA's Title III case.

5. Accordingly, the Fuel Line Lenders have failed to show good cause—a requirement applicable to any motion brought under Rule 2004. The alleged "good cause" is merely that the discovery sought may relate to a potential issue with a hypothetical plan of adjustment that has not yet been filed. That does not amount to "good cause." Nor have the Fuel Line Lenders established that denial of the Urgent Motion will prejudice them.

6. Further, if discovery into negotiations could be sought, it would chill parties from entering into negotiations and is directly contrary to the strong bankruptcy policy favoring settlements.

7. Additionally, confirmation discovery is taken under Fed. R. Civ. P. 26 *et seq.*, which govern discovery in a contested matter. Rule 2004 discovery is detached from any contested matter, allows for a different scope of discovery without the procedural safeguards of Rule 26, and serves different purposes, namely to discover assets or causes of action of a debtor, none of which are at issue here.

8. For all these reasons, and as discussed further below, the Urgent Motion should be denied.[5]

---

[5] Just moments before the Oversight Board filed this Objection, U.S. Bank National Association as Trustee (the "Trustee") and certain PREPA bondholders filed *Joinder of Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Ad Hoc Group of PREPA Bondholders, National Public Finance Guarantee Corporation, Syncora Guarantee Inc., and the PREPA Bond Trustee to Urgent Motion of Fuel Line Lenders for Examination of Oversight Board Under Federal Rule of Bankruptcy Procedure 2004 Concerning Vitol Settlement Agreement (ECF No. 22810)* (the "Trustee and PREPA Bondholders' Joinder") [ECF No. 22843]. The Trustee and PREPA Bondholders' Joinder adds no substantive argument as to why the relief

## BACKGROUND

9. On September 29, 2022, the Court entered an *Order (A) Granting in Part and Denying in Part Urgent Motion of Financial Oversight and Management Board for Order (I) Establishing Schedule to Continue Negotiation During Litigation of Gating Issues Pursuant to Litigation Schedule and (II) Granting Related Relief and (B) Staying Certain Motion file by PREPA Bondholders* (the "September 29 Order"). [ECF No. 3013]. The September 29 Order focusses on three main topics and does not address confirmation discovery.

10. *First*, a litigation schedule was established with respect to Adversary Proceeding No. 19-391 (the "Lien Challenge Proceeding") concerning the scope of the security interest held by the Trustee for the PREPA bonds and whether the bonds are non-recourse. [ECF No. 3013-1]. The litigation of the Lien Challenge Proceeding is well underway; the Oversight Board's Amended Complaint has been filed, intervention issues have been resolved, and the parties (including intervenors) have filed summary judgment motions as to the lien scope and recourse issues. [Case No. 19-ap-391, ECF Nos. 26, 34-36, 39-40, 46, 63,67]. Responses to the summary judgment motions are due to be filed by November 18, 2022, and the motions will be fully briefed by December 20, 2022. [ECF No. 3013-1].

11. *Second*, the Oversight Board must file by December 1, 2022 a proposed plan of adjustment it believes could be confirmed, taking into account the litigation risk and economic issues in dispute. [ECF No. 3013 ¶ 4]. The filing of the plan is to be accompanied by a disclosure statement, including a corresponding motion for approval of the disclosure statement, and a proposed confirmation schedule contemplating a June 2023 confirmation hearing. [*Id.*].

---

requested by way of the Urgent Motion is warranted and should therefore be denied for the reasons stated herein.

12.     ***Third***, the Court directed that mediation continue, finding "the prompt resolution of the Mediation Topics continues to be of critical importance to this case" and continued mediation is "in the best interests of the parties in interest and PREPA." [ECF No. 3011 at 1-2].

13.     Notwithstanding the ongoing Lien Challenge Proceeding and mediation and the requirement for the Oversight Board to file a confirmable plan in only a few weeks, the Fuel Line Lenders have filed the Urgent Motion seeking discovery, under Fed. R. Bankr. P. 2004, of the settlement agreement between Vitol and the Oversight Board and documents concerning the negotiation of this settlement.[6] [ECF No. 3066; *see also* ECF No. 3066-2]. The Fuel Line Lenders make this request based on a statement made by counsel for the Oversight Board during the November 2 omnibus hearing that Vitol's claim awarded by this Court could serve as an impaired accepting class under a plan, but that there could also be other "additional impaired accepting classes." November 2 Hr'g Tr. at 19:8-20:4.

## ARGUMENT

### A.     *Legal Standard.*

14.     Rule 2004 allows, upon order of the court, the "examination" of certain parties. That examination may relate "only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate[.]" Fed. R. Bankr. P. 2004(b) . While permissible discovery under Rule 2004 is broad, it "is not unlimited." *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). Further, requests should align with Rule 2004's purpose: to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing

---

[6] The request for a copy of the settlement agreement is moot, as it is attached to this Objection.

5

whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981) (primary purpose of a Rule 2004 examination is to permit party in interest to quickly ascertain extent and location of estate's assets).

15. The party "seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). To show good cause, "movant must show some reasonable basis to examine the material sought to be discovered and that . . . denial of production would cause undue hardship or injustice." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 72 (D.P.R. 2018) (citation omitted). The movant's burden of establishing good cause is "an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (citation omitted).

**B.** *Analysis.*

16. The Fuel Line Lenders ask for leave to propound three document requests seeking the production of the settlement agreement between the Oversight Board and Vitol (which is attached hereto), other agreements or understandings between the Oversight Board and Vitol, and all communications between the Oversight Board and Vitol as to the preceding two topics. [*See* ECF No. 3066-2].

17. According to the Fuel Line Lenders, this discovery is needed because the Oversight Board has stated that Vitol could be an impaired accepting class for a confirmable plan of adjustment. [*See* Urgent Motion ¶¶ 15-16]. Given that in a multi-class plan Bankruptcy Code section 1129(a)(10) requires that there be an impaired accepting class, the Fuel Line Lenders' request for urgent discovery exposes their desire to show the Vitol claim does not satisfy section

6

1129(a)(10).[7] That would preserve their leverage to require PREPA to satisfy their demands to procure an impaired accepting class. That is not "good cause" for a Rule 2004 examination. That is just tactics.

18. Additionally, the Fuel Line Lenders' own arguments demonstrate their Urgent Motion is premature. They concede the discovery they seek is intended to explore **confirmation issues** such as whether the Oversight Board's plan of adjustment will have an "appropriate" impaired accepting class of creditors. [*Id.* ¶ 15]; *see also Urgent Motion for Expedited Consideration of Urgent Motion of Fuel Line Lenders for Examination of Oversight Board Under Federal Rule of Bankruptcy Procedure 2004 Concerning Vitol Settlement Agreement*, ECF No. 3067 ¶ 7 (stating the Urgent Motion is submitted "in an effort to quickly obtain targeted discovery from the Oversight Board to shed light on the nature of the settlement that *now appears to form a central component of the Oversight Board's forthcoming plan.*") (emphasis added). They contend the information is necessary to investigate confirmation issues such as gerrymandering and good faith. [*Id.* ¶ 16]. If the Fuel Line Lenders are correct, then every party in interest will be entitled to take discovery of every step forward PREPA takes in the formulation of its plan, so the litigant can try to erase the progress and make PREPA deal with them from a disadvantaged position.[8]

19. All this also ignores that **no proposed plan has yet been filed** and we are several months away from a disclosure statement hearing, let alone a confirmation hearing. Manifestly,

---

[7] The Fuel Line Lenders suggest an impaired accepting class is required under PROMESA to confirm a plan of adjustment. This is inaccurate, as PROMESA allows for a plan of adjustment to be confirmed without an impaired accepting class in a single class cramdown. *See* PROMESA § 314(c).

[8] Indeed, the Trustee and PREPA Bondholders' Joinder [ECF No. 22843] corroborate the Fuel Line Lenders are seeking confirmation-related discovery. Granting the Urgent Motion and the joinder will only encourage parties in interest to seek discovery on many other confirmation-related issues before a proposed plan is filed and before a disclosure statement is approved.

7

the Fuel Line Lenders are simply enlisting the Court in their effort to improve their negotiating position. We do not begrudge any creditor the right to posture and negotiate as best it can. But, Rule 2004 discovery does not exist for that purpose for all the reasons provided above. Where, as here, a creditor seeks plan-related discovery under Rule 2004 rather than under Fed. R. Civ. P. 26 as provided for in Bankruptcy Rule 9014[9], prior to the filing of a plan, courts have rejected it, finding the request to be premature. *See In re SunEdison, Inc.*, 562 B.R. 243, 252 (Bankr. S.D.N.Y. 2017) ("[T]he request for plan funding documents is premature; there is no plan . . . ."); *In re Texaco Inc.*, 79 B.R. 551, 555 (Bankr. S.D.N.Y. 1987) (refusing, as premature, Rule 2004 requests relating to a proposed plan when no plan had been proposed); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS), ECF No. 883, Hr'g Tr. at 89:21-90:1 (Bankr. D. Del. July 24, 2019) (denying request for Rule 2004 discovery on the basis that the discovery really was "classic plan discovery" that "should be done in the context of a plan").

20. Similarly, this Court has consistently held that issues related to the adequacy of the plan must be addressed in connection with confirmation, and not before. *See, e.g.*, July 14, 2021 Hr'g Tr. 74:21-75:11 ("The adequacy and legality of the proposed Plan of Adjustment, however, are issues that principally will be addressed in connection with the Oversight Board's request for confirmation of the Plan of Adjustment" and are not appropriate in connection with the disclosure statement approval.); *see also id.* at 81:15-23 ("To the extent that several objectors complained that certain claims are not dischargeable . . . the Court has thoroughly considered the objections, and overrules them in connection with this Disclosure Statement motion practice, because such

---

[9] Even under Rule 26 the Fuel Line Lenders' discovery request is still premature, as it seeks confirmation-related discovery prior to the filing of a plan of adjustment.

8

objections challenge the confirmability of the Plan, and none of them poses a pure question of law that would render a confirmation futile or unfeasible at this stage").

21. Moreover, the Urgent Motion was filed before the Oversight Board has even filed its disclosure statement and motion establishing procedures and deadlines concerning discovery for, and the confirmation of, PREPA's forthcoming proposed plan of adjustment. The motion seeking to establish procedures and deadlines concerning discovery and plan confirmation will include a proposed schedule for plan discovery.

22. The Fuel Line Lenders also have not explained how the "denial of production would cause undue hardship or injustice." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 72. Nor could they, since no one can say now whether Vitol will be the sole impaired accepting class when the plan is filed or the disclosure statement is approved, or that if it is, whether other classes would vote in favor of the plan.

23. To the contrary, granting the Fuel Line Lenders' Urgent Motion will cause prejudice to the Oversight Board. Instead of dedicating its full attention to plan formulation, mediation, and the Lien Challenge Proceeding, the Oversight Board will have to respond to and potentially further litigate[10] premature and inappropriate discovery.

24. Moreover, providing the Fuel Line Lenders with the opportunity to engage in discovery as to settlement communications involving the Oversight Board and a third-party (here, Vitol) would generally chill settlement negotiations, and could ultimately obstruct settlements.

---

[10] While the requested discovery is currently limited to three document requests, the Fuel Line Lenders "reserve the right to seek additional discovery as appropriate." [Urgent Motion ¶ 21]. Additionally, through their request for joinder, the Trustee and certain PREPA bondholders discuss potential third-party subpoenas and depositions (among other things). *See* Trustee and PREPA Bondholders' Joinder [ECF No. 22843 ¶ 5]. To the extent these parties pursue additional discovery, it would further distract the Oversight Board from the ongoing mediation, Lien Challenge Proceeding and plan formulation.

*See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications."); *MiMedx Grp., Inc. v. Fox*, No. 16 C 11715, 2018 WL 11223425, at *3 (N.D. Ill. June 22, 2018) ("Exposing the give and take of settlement negotiations to an after-the-fact search for damning statements runs the substantial risk of chilling settlement discussions, and thus undermining the important policy of promoting settlement"); *Cali Express, Inc. v. Bermingham*, No. 1:14-cv-1683-SEB-DKL, 2015 WL 13631361, at *3 (S.D. Ind. Jul. 20, 2015) (motion to compel denied because movant did not show that the relevance of settlement documents outweighed "the strong federal policy favoring settlements and encouraging them through maintaining the confidentiality of negotiations and agreements"). Thus, even if the Court were to find the Urgent Motion is not premature, the discovery the Fuel Line Lenders seek about settlement negotiations should still be denied.[11]

## **CONCLUSION**

25. For the foregoing reasons, the Court should deny the Urgent Motion.

[*Remainder of page intentionally left blank*]

---

[11] In the event the Urgent Motion is granted, the Oversight Board reserves its right to object to the Requests for Production the Fuel Line Lenders intend to propound, as attached to their Urgent Motion. [*See* ECF No. 3066-2].

10

| | |
|---|---|
| Dated: November 10, 2022<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Margaret A. Dale*<br><br>Martin J. Bienenstock<br>Ehud Barak<br>Margaret A. Dale<br>Jeff W. Levitan<br>Michael T. Mervis<br>Daniel S. Desatnik<br>Elliot R. Stevens<br>(Admitted *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>Paul V. Possinger<br>(Admitted *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>70 West Madison, Suite 3800<br>Chicago, IL 60602<br>Tel: (312) 962-3550<br>Fax: (312) 962-3551<br><br>Jared M. DuBosar<br>(*Pro Hac Vice forthcoming*)<br>**PROSKAUER ROSE LLP**<br>2255 Glades Road, Suite 421 Atrium<br>Boca Raton, FL 33431<br>Tel: (561) 241-7400<br>Fax: (561) 241-7145<br><br>*Attorneys for the Financial Oversight and Management Board as sole Title III representative for PREPA*<br><br>*/s/ Luis F. del Valle-Emmanuelli*<br><br>Luis F. del Valle-Emmanuelli<br>USDC-PR No. 209514<br>P.O. Box 79897<br>Carolina, Puerto Rico 00984-9897<br>Tel. 787.647.3503<br>Fax. N/A |

11

dvelawoffices@gmail.com

Of Counsel for A&S Legal Studio, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel (787) 751-6764/763-0565
Fax (787) 763-8260

*Co-Attorney for the Financial
Oversight and Management Board
as Representative for PREPA*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli
