**Hearing Date**: February 1, 2023 at 9:30am (AST)
**Objection Deadline**: December 5, 2022 at 4:00pm (AST)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------ x
In re:                                          :
                                                :
THE FINANCIAL OVERSIGHT AND                     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               : Title III
                                                :
As representative of                            : Case No. 17-BK-3283 (LTS)
                                                :
THE COMMONWEALTH OF PUERTO RICO, et al.,        : (Jointly Administered)
                                                :
Debtors.¹                                       :
------------------------------------------------------------------ x
```

### SIXTEENTH INTERIM FEE APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JUNE 1, 2022 THROUGH SEPTEMBER 30, 2022

### SUMMARY COVER SHEET

Name of Applicant: Casillas, Santiago & Torres, LLC

Authorized to Provide Professional Services to: Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")

Date of retention: July 20, 2017

Period for which compensation and reimbursement is sought: June 1, 2022 through and including September 30, 2022 (the "Application Period")

Amount of interim compensation sought as actual, reasonable, and necessary: $190,412.50

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: $976.30

---

¹ The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $258.59/hour

Blended rate in this application for all timekeepers: $255.52/hour

This is an ***interim*** application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 17.90 hours, and the corresponding compensation requested is approximately $3,938.00.

### MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
|---|---|---|---|---|---|---|---|
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Total** | | $294,120.50 | $264,708.45 | $12,052.09 | $294,120.50 | $12,052.09 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | $250,762.00 | $225,685.80 | $12,468.62 | $250,647.00 | $12,468.62 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | $237,277.00 | $213,549.30 | $6,690.07 | $236,172.00 | $6,690.07 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $189,873.76 | $6,048.82 | $0.00 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $137,481.97 | $4,921.19 | $0.00 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $108,157.02 | $269.24 | $0.00 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $123,205.91 | $1,760.40 | $0.00 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$558,718.66** | **$12,999.65** | **$0.00** |
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $133,245.59 | $715.53 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $114,751.68 | $4,599.42 | $0.00 |
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $70,487.58 | $773.90 | $0.00 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $76,797.12 | $74.90 | $0.00 |
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$395,281.97** | **$6,163.75** | **$0.00** |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | | |
| 8/13/2020 | 06/01/2020 - 06/30/2020 | $74,223.50 | $66,801.15 | $42.20 | $73,110.14 | $42.20 | $0.00 |
| 9/11/2020 | 07/01/2020 - 07/31/2020 | $85,800.00 | $77,220.00 | $1,903.49 | $84,513.00 | $1,903.49 | $0.00 |
| 10/8/2020 | 08/01/2020 - 08/31/2020 | $62,341.50 | $56,107.35 | $402.92 | $61,406.38 | $402.92 | $0.00 |
| 10/29/2020 | 09/01/2020 - 09/30/2020 | $58,767.50 | $52,890.75 | $3,387.56 | $57,885.99 | $3,387.56 | $0.00 |
| **Total** | | **$281,132.50** | **$253,019.25** | **$5,736.17** | **$276,915.51** | **$5,736.17** | **$0.00** |
| **Eleventh Interim Fee Period (October 1, 2020 through January 31, 2021)** | | | | | | | |
| 12/10/2020 | 10/01/2020 - 10/31/2020 | $69,875.00 | $62,887.50 | $1,444.97 | $68,826.88 | $1,444.97 | $0.00 |
| 1/8/2021 | 11/01/2020 - 11/30/2020 | $56,839.00 | $51,155.10 | $3,798.94 | $55,986.41 | $3,798.94 | $0.00 |
| 2/11/2021 | 12/01/2020 - 12/31/2020 | $42,692.50 | $38,423.25 | $1,640.93 | $42,052.11 | $1,640.93 | $0.00 |
| 3/11/2021 | 01/01/2021 - 01/31/2021 | $46,599.00 | $41,939.10 | $335.33 | $45,900.01 | $335.33 | $0.00 |
| **Total** | | **$216,005.50** | **$194,404.95** | **$7,220.17** | **$212,765.41** | **$7,220.17** | **$0.00** |

| | Twelfth Interim Fee Period (February 1, 2021 through May 31, 2021) | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/12/2021 | 02/01/2021 - 02/28/2021 | $55,837.00 | $50,253.30 | $110.00 | $55,083.20 | $110.00 | $0.00 |
| 5/20/2021 | 03/01/2021 - 03/31/2021 | $45,348.00 | $40,813.20 | $3,951.70 | $44,735.80 | $3,951.70 | $0.00 |
| 6/24/2021 | 04/01/2021 - 04/30/2021 | $63,872.00 | $57,484.80 | $403.46 | $63,009.73 | $403.46 | $0.00 |
| 7/8/2021 | 05/01/2021 - 05/31/2021 | $68,141.00 | $61,326.90 | $181.40 | $67,221.10 | $181.40 | $0.00 |
| **Total** | | **$233,198.00** | **$209,878.20** | **$4,646.56** | **$230,049.83** | **$4,646.56** | **$0.00** |
| | Thirteenth Interim Fee Period (June 1, 2021 through September 30, 2021) | | | | | | |
| 8/19/2021 | 06/01/2021 - 06/30/2021 | $77,713.00 | $69,941.70 | $186.57 | $76,663.87 | $186.57 | $0.00 |
| 9/16/2021 | 07/01/2021 - 07/31/2021 | $68,345.00 | $61,510.50 | $3,667.74 | $68,345.00 | $3,667.74 | $0.00 |
| 10/20/2021 | 08/01/2021 - 08/31/2021 | $47,313.00 | $42,581.70 | $173.77 | $47,313.00 | $173.77 | $0.00 |
| 11/4/2021 | 09/01/2021 - 09/30/2021 | $52,966.00 | $47,669.40 | $91.43 | $52,966.00 | $91.43 | $0.00 |
| **Total** | | **$246,337.00** | **$221,703.30** | **$4,119.51** | **$245,287.87** | **$4,119.51** | **$0.00** |
| | Fourteenth Interim Fee Period (October 1, 2021 through January 31, 2022) | | | | | | |
| 12/16/2021 | 10/01/2021 - 10/31/2021 | $67,733.00 | $60,959.70 | $493.00 | $67,733.00 | $493.00 | $0.00 |
| 1/26/2022 | 11/01/2021 - 11/30/2021 | $64,692.00 | $58,222.80 | $3,898.11 | $64,652.00 | $3,898.11 | $0.00 |
| 2/17/2022 | 12/01/2021 - 12/31/2021 | $54,285.00 | $48,856.50 | $39.60 | $54,285.00 | $39.60 | $0.00 |

| 3/9/2022 | 01/01/2022 - 01/31/2022 | $55,554.00 | $49,998.60 | $89.30 | $55,554.00 | $89.30 | $0.00 |
|---|---|---|---|---|---|---|---|
| **Total** | | **$242,264.00** | **$218,037.60** | **$4,520.01** | **$242,224.00** | **$4,520.01** | **$0.00** |
| **Fifteenth Interim Fee Period (February 1, 2022 through May 31, 2022)** | | | | | | | |
| 4/6/2022 | 2/01/2022 - 2/28/2022 | $53,991.00 | $48,591.90 | $1,739.83 | $48,591.90 | $1,739.83 | $5,399.10 |
| 5/4/2022 | 3/01/2022 - 3/31/2022 | $72,337.00 | $65,103.30 | $5,575.68 | $65,103.30 | $5,575.68 | $7,233.70 |
| 6/2/2022 | 4/01/2022 - 4/30/2022 | $72,349.50 | $65,114.55 | $2.53 | $65,114.55 | $2.53 | $7,234.95 |
| 7/5/2022 | 5/01/2022 - 5/31/2022 | $82,049.50 | $73,844.55 | $36.70 | $73,844.55 | $36.70 | $8,204.95 |
| **Total** | | **$280,727.00** | **$252,654.30** | **$7,354.74** | **$252,654.30** | **$7,354.74** | **$28,072.70** |
| **Sixteenth Interim Fee Period (June 1, 2022 through September 30, 2022)** | | | | | | | |
| 8/11/2022 | 6/01/2022 - 6/30/2022 | $58,866.50 | $52,979.85 | $642.40 | $52,979.85 | $642.40 | $5,886.65 |
| 8/24/2022 | 7/01/2022 - 7/31/2022 | $50,624.50 | $45,562.05 | $17.50 | $45,562.05 | $17.50 | $5,062.45 |
| 10/13/2022 | 8/01/2022 - 8/31/2022 | $48,175.50 | $43,357.95 | $285.60 | $43,357.95 | $285.60 | $4,817.55 |
| 10/27/2022 | 9/01/2022 - 9/30/2022 | $32,746.00 | $29,471.40 | $30.80 | $29,471.40 | $30.80 | $3,274.60 |
| **Total** | | **$190,412.50** | **$171,371.25** | **$976.30** | **$171,371.25** | **$976.30** | **$19,041.25** |

| PRIOR INTERIM FEE APPLICATIONS | | | | | |
| Period | | Requested | | Approved | |
| Date [Docket No.] | Interim Fee Period ("IFP") Covered | Fees | Expenses | Fees | Expenses |
|---|---|---|---|---|---|
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | $559,558.00 | $12,999.65 |
| 07/15/2020 [Docket No. 13684] | 02/01/2020 - 05/31/2020 | $401,341.50 | $6,163.75 | $401,301.50 | $6,163.75 |
| 11/16/2020 [Docket No. 15155] | 06/01/2020 - 09/30/2020 | $281,132.50 | $5,736.17 | $281,132.50 | $5,736.17 |
| 3/15/2021 [Docket No. 16064] | 10/01/2020 - 01/31/2021 | $216,005.50 | $7,220.17 | $216,005.50 | $7,220.17 |

| | | | | | |
|---|---|---|---|---|---|
| 7/15/2021 [Docket No. 17381] | 02/01/2021 - 05/31/2021 | $233,198.00 | $4,646.56 | $233,198.00 | $4,646.56 |
| 11/15/2021 [Docket No. 19229] | 06/01/2021 - 09/30/2021 | $246,337.00 | $4,119.51 | $246,337.00 | $4,119.51 |
| 05/27/2022 [Docket No. 21056] | 10/01/2021 - 01/31/2022 | $242,264.00 | $4,520.01 | $242,224.00 | $4,520.01 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$4,743,138.50** | **$133,346.26** |

Number of professionals with time included in this application: <u>7</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>2</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
----------------------------------------------------------------------- x
In re:                                            :
                                                  :
THE FINANCIAL OVERSIGHT AND                       : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                 : Title III
                                                  :
as representative of                              : Case No. 17-BK-3283 (LTS)
                                                  :
THE COMMONWEALTH OF PUERTO RICO, et al.,          : (Jointly Administered)
                                                  :
Debtors.¹                                         :
----------------------------------------------------------------------- x
```

## SIXTEENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2022 THROUGH SEPTEMBER 30, 2022

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................4

Background ...............................................................................................................9

Compensation and Reimbursement Request ...........................................................15

Summary of Services ..............................................................................................18

      General (Matter ID: 396-00002)....................................................19
      PREPA (Matter ID: 396-00006).....................................................21
      HTA (Matter ID: 396-00007) ........................................................23
      Fee Application (Matter ID: 396-00015).........................................25
      Claims Review (Matter ID: 396-00017)..........................................25

Attendance at Hearings ...........................................................................................26

---

¹ The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Report on Matters Jointly Pursued by Oversight Board and Committee.......................................27

Actual and Necessary Disbursements ...........................................................................................28

Requested Compensation Should be Allowed ...............................................................................29

Notice .............................................................................................................................................30

Conclusion ......................................................................................................................................31

## <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

      C-1.    Budgets

      C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

      D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

                 Further Breakdown of Compensation Requested by Project Category and by Matter

      D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its sixteenth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from June 1, 2022 through and including September 30, 2022 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

**PRELIMINARY STATEMENT**

1.      During the Application Period, CST continued to assist and collaborate with Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, particularly with respect to the Committee's efforts to allow litigation to proceed on two threshold questions concerning the PREPA bondholders' legal entitlements: (i) the scope of the bondholders' security interest and (ii) the non-recourse nature of the PREPA bonds. During the Application Period, the Oversight Board and the Court ultimately agreed that litigation on these threshold questions should go forward, concurrently with continued mediation.

2.      During the Application Period, CST collaborated with Paul Hastings and assisted in its efforts to participate in the PREPA mediation, while analyzing and conducting research

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

concerning matters of local contracts law and available remedies in connection with Power Purchase Agreements, that arose in connection with said PREPA mediation, the Committee's stance on the PREPA mediation contentions and pertinent to the claims and security interests asserted by the holders and insurers of PREPA bonds. CST also spent considerable time preparing a memorandum for Paul Hastings and the Committee based on its research and findings on issues of Puerto Rico law related to breach of contract and available remedies analysis.

3.      During the Application Period, CST continued collaborating with Paul Hastings and assisting / advising the Committee with respect to the HTA Plan of Adjustment (the "HTA Plan"), which was eventually confirmed by the Court on October 12, 2022, shortly after the Application Period. Prior to the Application Period, on May 9, 2022, the Committee reached a global settlement with the Oversight Board regarding the terms of the HTA Plan. Among other things, pursuant to the settlement, the HTA Plan provides aggregate consideration to holders of allowed HTA general unsecured claims and allowed HTA convenience claims consisting of (a) cash in the amount of $48 million and (b) the net recoveries from certain avoidance actions to be pursued by the Avoidance Action Trust (established under the Commonwealth plan of adjustment). The cash consideration represents a 92% increase over the $25 million that the Oversight Board had proposed under the prior version of the HTA Plan.

4.      During the Application Period, CST Law continued providing first-level review and in-depth analysis of certain claims against the Debtors. To efficiently track and manage work streams and minimize duplication of services, CST maintained spreadsheets with our Paul Hastings colleagues to track the progress, review, and analysis of the claims in scope. The evaluation of select claim pools entailed the review of the Proofs of Claims and their supporting documents. The Committee relied heavily on CST's analysis of the claims to assess the scope of

the potential exposure to the recoveries for unsecured creditors, as Paul Hastings engaged the Oversight Board as part of negotiations.

5.      Similarly, during the Application Period CST collaborated with special litigation counsel to the Committee, Continental PLLC, in connection with the review and analysis of contracts and legal research related to the highly contested Fuel Oil Litigation, including registration requirements and preparing a memorandum discussing the applicable legal framework, as well as revising and editing responses to defendants' omnibus and individual motions to dismiss filed in the Fuel Oli Litigation. CST was specifically tasked with coordination of local logistics, procurement of government research material, contracts, research, analysis of local caselaw and legislation, and preparation of related communications and memoranda for the Committee. CST's local insight was instrumental for the formulation of the Committee's arguments in the Fuel Oil Litigation.

6.      During the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

    a.  reviewing the FOMB's reports concerning the designation and status of claims in connection with the alternative dispute resolution ("ADR") process and administrative claims reconciliation ("ACR") process;

    b.  attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

    c.  monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings.

7.      CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular

task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by taking the lead, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

8.      Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, CST professionals do not travel for Court appearances outside of PR and participate only through the remote video-conference service in San Juan.

9.      In addition, CST has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee.

10.      CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

11.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[3]

12.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- Exhibit E contains a breakdown of compensation and expenses requested by Debtor.

- Exhibit F contains a list of the professionals providing services during the application period by matter.

- Exhibit G includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

---

[3] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

13.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[4] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

14.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "<u>U.S. Trustee</u>") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

15.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "<u>Retention Application</u>"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "<u>Retention Order</u>"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

---

[4] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

16.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the <u>Interim Compensation Order</u>").[5]

17.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

18.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order  shall be  an administrative  expense." In addition, as provided in the Retention  Order,  the  Oversight Board  has  consented  to  the  Debtors'  payment  of  CST allowed fees and expenses.

19.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "<u>Fee Examiner Order</u>") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

20.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "<u>First Interim Fee</u>

---

[5] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

21. On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On June 8, 2018, the court approved the Second Interim Fee Application.

22. On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

23. On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

24. On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to

certain minimal adjustments in its requested fees and expenses.[6] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

25.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

26.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

27.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to

---

[6] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.
[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.
[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.

certain minimal adjustments in its requested fees and expenses.[9] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

28.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On July 24, 2020, the Court approved the Eighth Interim Fee Application.

29.     On July 15, 2020, CST filed its ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020 [Docket No. 13684]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[10] On October 26, 2020, the Court approved the Ninth Interim Fee Application, with the agreed-upon adjustments.

30.     On November 16, 2020, CST filed its tenth interim fee application, covering the period from June 1, 2020 through September 30, 2020 [Docket No. 15155]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Tenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On March 8, 2021, the Court approved the Tenth Interim Fee Application.

---

[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.
[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

31.     On March 15, 2021, CST filed its eleventh interim fee application, covering the period from October 1, 2020 through January 31, 2021 [Docket No. 16064]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eleventh Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On August 3, 2021, the Court approved the Eleventh Interim Fee Application.

32.     On July 15, 2021, CST filed its twelfth interim fee application, covering the period from February 1, 2021 through May 31, 2021 [Docket No. 17381]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Twelfth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On October 4, 2021, the Court approved the Twelfth Interim Fee Application.

33.     On November 15, 2021, CST filed its thirteenth interim fee application, covering the period from June 1, 2021 through September 30, 2021 [Docket No. 19229]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Thirteenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period. On January 28, 2022, the Court approved the Thirteenth Interim Fee Application.

34.     On May 27, 2022, CST filed its fourteenth interim fee application, covering the period from October 1, 2021 through January 31, 2022 [Docket No. 21056]. All services for which

compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourteenth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[11] On September 26, 2022, the Court approved the Fourteenth Interim Fee Application, with the agreed-upon adjustments.

35.     On July 15, 2022, CST filed its fifteenth interim fee application, covering the period from February 1, 2022 through May 31, 2022 [Docket No. 21514]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifteenth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

36.     This is CST's sixteenth interim fee application, covering the period from June 1, 2022 through September 30, 2022. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

37.     By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $190,412.50; and (b) expense reimbursements in the aggregate amount of $976.30. These amounts are allocated among the Commonwealth Title III Case, the PREPA Title III Case, the HTA Title III Case and the ERS Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $78,704.50 | $728.40 | $79,432.90 |

---

[11] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

| | | | |
|---|---|---|---|
| PREPA Title III Case | $80,447.50 | $28.40 | $80,475.90 |
| HTA Title III Case | $30,396.50 | $219.50 | $30,616.00 |
| ERS Title III Case | $864.00 | $0.00 | $864.00 |
| **Total** | **$190,412.50** | **$976.30** | **$191,388.80** |

38.    The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were below the aggregated amount of the monthly budgets.

39.    As of today, CST has received payments totaling $172,347.55 for services rendered during the Application Period, which amount consists of $171,371.25 (representing 90% of the fees for services invoiced during the period of June 1, 2022 through September 30, 2022) and $976.30 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $47,113.95 remains unpaid.

40.    Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

41.    By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

16

42.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

43.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

44.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

45.     CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market

17

adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

46.     CST's professional services during the Application Period required an aggregate expenditure of 745.20 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (398.70 hours), Members (5.90 hours), Counsels (76.20 hours), Junior Partners (250.40 hours), and Paraprofessionals (14.00 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

47.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

### SUMMARY OF SERVICES

48.     During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional

services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[12] For ease of reference and transparency purposes, CST created several matter numbers for its representation of the Committee. The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00015 | Fee Application |
| 396-00017 | Claims Review |

**I.     General (Matter ID: 396-00002)**

(a)     <u>Pleading Reviews (Task Code: B113)</u>

Hours:     168.30     Fees:   $43,002.00

49.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services, advise and counseling to the Committee in addition to supporting Paul Hastings. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial litigated fronts such as the enforcement of the Commonwealth's confirmed Plan of Adjustment; pending administrative expense claims; mediation and its termination deadlines; the objection litigation related to certain Proofs of Claim; and stay relief motions.

50.     CST also kept abreast on the issues on appeal before the First Circuit Court of Appeals and the Supreme Court of the United States.

(b)     <u>Meeting of and Communications with Creditors (Task Code: B150)</u>

---

[12] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of service during the Application Period.

Hours:      8.30          Fees:   $2,241.00

51.     During the Application Period, CST kept the Committee apprised of relevant developments in the Title III Cases, such as legislative actions and other out-of-court events that may affect the Committee's strategy in these Title III proceedings. CST participated in various telephone and virtual conferences and assisted Paul Hastings in the preparation of documents and communiques for the Committee and other unsecured creditors as it implemented the Committee's strategy.

(c)     Other Contested Matters (Task Code: B190)

Hours:      11.20          Fees:   $2,813.00

52.     During the Application Period, CST conducted research on various first-impression issues of Puerto Rico legislation and caselaw as it aided Paul Hastings and Special Litigation Counsel in the analysis and development of the Committee's position in matters related to, for example, claim subordinance and classification.

(d)     General Litigation (Task Code: B191)

Hours:      17.20          Fees:   $4,644.00

53.     During the Application Period, CST aided Paul Hastings and Special Litigation Counsel with research and analysis of legal issues in connection with the Committee's stance on the PREPA mediation contentions, dispositive motions, recent legislation, and enforcement of the Commonwealth's confirmed Plan of Adjustment.

(e)     Claims Administration and Objections (Task Code: B3010)

Hours:      32.30          Fees:   $7,866.00

54.     CST Law tracked, reviewed, and analyzed claims against the Debtor to assess the scope of the potential exposure to the recoveries for the creditors. Certain administrative expense

claims were also part of the review. The analysis CST generated as to the potential liability and exposure, proved to be paramount in the Committee's strategy. To efficiently manage work streams and minimize duplication of services, CST maintained spreadsheets with our Paul Hastings colleagues.

## II.   PREPA (Matter ID 396-00006)

55.     During the Application Period CST collaborated with Paul Hastings and represented the Committee with respect to PREPA's Title III case. Among others, CST assisted and collaborated with Paul Hastings and Continental PLLC, the Committee's Special Litigation Counsel, in connection with drafting and editing the multiple responses to defendants' omnibus and individual Motions to Dismiss the Second Amended Complaint in the Fuel Oil Litigation, as well as extensive research of multiple matters pertaining to issues of local law, such as contract registration requirements involving PREPA vendors. CST also participated in the ongoing PREPA mediation and spent considerable time researching and preparing memoranda for Paul Hastings, Continental and the Committee concerning contract registration requirements, breach of contracts and available remedies in connection with Power Purchase Agreements. CST's local insight was instrumental for the formulation of the Committee's arguments in the Fuel Oil Litigation and during mediation.

(a)     Case Administration (Task Code: B110)

        Hours:     6.60          Fees:   $1,747.00

56.     During the Application Period, CST continued assisting Paul Hastings and Special Litigation Counsel with the review and analysis of contracts and legal research in connection with the highly contested Fuel Oil Litigations. Furthermore, CST executed a variety of tasks related to

case administration including, among other things, handling of filing logistics, and procurement of translations in compliance with Local Rules.

(b)    <u>Pleadings Review (Task Code: B113)</u>

      Hours:    31.20     Fees:  $8,299.00

57.    During the Application Period, CST reviewed and analyzed various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST considered crucial and highly contested issues, such as the mediation deadline and the litigation schedule for the eventual filing of Debtor's Plan of Adjustment, the attempt to dismiss the Title III proceeding, administrative expense claims, motions for stay relief, and PREPA's ongoing motions to assume and reject certain power purchase agreements.

58.    CST also kept abreast of various appellate procedures stemming from PREPA's Title III case.

(c)    <u>Other Contested Matters (Task Code: B190)</u>

      Hours:    97.00     Fees:  $25,588.00

59.    During the Application Period, CST aided Paul Hastings and Special Litigation Counsel researching and analyzing various legal issues in the highly contested Fuel Oil Litigations. CST was specifically tasked with coordination of local logistics, procurement of government research material, research, analysis of local caselaw and legislation, and preparation of communiques and memoranda for the Committee. CST's particular expertise in local law and government groundwork was paramount in the establishment of the Committee's stance and its execution.

(d)　　　General Litigation (Task Code: B191)

　　　　　Hours:　　144.20　　　　Fees:　$35,815.50

60.　　　CST continued assisting Paul Hastings and Special Litigation Counsel with the implementation of the Committee's strategy in response to the Fuel Oil Litigations, power purchase agreements, and the PREPA mediation. CST aided in the preparation of communiques and memoranda for the Committee, providing research into local government material and analysis of caselaw and legislation, in addition to coordinating local outreach efforts for our constituents.

(e)　　　Claims Administration and Objections (Task Code: B310)

　　　　　Hours:　　5.80　　　　Fees:　$1,508.00

61.　　　During the Application Period, CST aided Paul Hastings and Special Litigation Counsel with the procurement of government material and its analysis, for the formulation of the Committee's counterarguments for the Fuel Oil Litigation.

(f)　　　Restructurings (Task Code: B420)

　　　　　Hours:　　19.80　　　　Fees:　$5,222.00

62.　　　As mediation and negotiations efforts were undertaken during the Application Period in connection with the Debtor's attempts to restructure its debt and the eventual filing of a proposed plan, CST Law team members researched and analyzed the material and legal challenges to the net recoveries for general unsecured creditors. In relation thereto, CST also assisted in the preparation of communiques and memoranda for the Committee and its constituents.

**III.　　HTA (Matter ID: 396-00007)**

(a)　　　Pleadings Review (Task Code: B113)

　　　　　Hours:　　53.80　　　　Fees:　$14,313.00

63.     During the Application Period, to provide a more rounded and comprehensive assistance to Paul Hastings in our co-representation of the Committee's interests, CST monitored the Debtor's Plan of Adjustment and supplemental filings, including its Disclosure Statement; the confirmation and discovery procedures for the Plan; the HTA-related adversary proceedings litigating disputed funds in certain HTA accounts; and stay relief motions. This, of course, in compliance with the applicable Rules of Professional Conduct.

(b)     <u>Court Hearings (Task Code: B155)</u>

     Hours:     7.50       Fees:   $1,920.00

64.     During the Application Period, CST attended as local counsel to all court hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared via telephone or virtual conferencing platform at each event. CST also handled the procurement of hearing transcripts.

(c)     <u>Other Contested Matters (Task Code: B190)</u>

     Hours:     19.50      Fees:   $4,701.00

65.     During the Application Period CST was tasked with first-level review and analysis of case material related to an adversary proceeding. The assessment generated aided Paul Hastings and Special Litigation Counsel in delineating the Committee's strategy.

(d)     <u>Plan and Disclosure Statement (Task Code: B320)</u>

     Hours:     14.80      Fees:   $3,996.00

66.     During the Application Period, CST aided Paul Hastings in various tasks in connection with the Board's proposed Plan of Adjustment, its Disclosure Statement, and plan confirmation and discovery procedures. Particularly, CST assisted in outreach efforts with unsecured creditors especially in what pertains to voting procedures.

(e)    <u>Restructurings (Task Code: B420)</u>

Hours:    18.60      Fees:  $4,292.00

67.    Upon the Oversight Board's filing of a proposed Plan of Adjustment for the Debtor, CST assisted Paul Hastings with the analysis of plan documents and the ensuing trust. CST's legwork was also instrumental in outreach efforts with constituents and voting procedures.

## IV.    Fee Application (Matter ID: 396-00015)

(a)    <u>Fee / Employment Applications (Task Code: B160)</u>

Hours:    20.90      Fees:  $4,575.50

68.    CST established a matter to keep track of the time incurred per the Fee Examiner's requests and pursuant to the Presumptive Standard Orders. For this matter, the time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests, including communications with the examiner, and the time it took to prepare and submit the fifteenth Interim Application.

## V.    Claims Review (Matter ID: 396-00017)

69.    During the Application Period, CST, per Paul Hastings' request, continued reviewing a substantial portion from a pool of claims filed against the Commonwealth asserting liquidating amounts of less than $100,000 (part of convenience class pool) in order to evaluate strategy given potential dilution of recoveries for general unsecured creditors should all small claims be paid in full and to contest the Oversight Board's approach of liquidating all claims, regardless of merits. As a result of this exercise the Oversight Board agreed to lower the claim threshold for its proposed expedited review process from $100,000 to $75,000 and clarified to extent of the diligence with respect to such claims.

(a)    <u>Claims Administration and Objections (Task Code: B310)</u>

Hours:        38.20        Fees:  $9,985.00

70.    During the Application Period, CST Law continued providing first-level review and in-depth analysis of certain claims against the Debtors. To efficiently track and manage work streams and minimize duplication of services, CST maintained spreadsheets with our Paul Hastings colleagues to track the progress, review, and analysis of the claims in scope. The evaluation of the claim pools mandated the review of the Proofs of Claims and their supporting documents. The Committee relied heavily on CST's analysis of the claims to assess the scope of the potential exposure to the recoveries for unsecured creditors, as Paul Hastings engaged the Oversight Board as part of negotiations.

## ATTENDANCE AT HEARINGS

71.    In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following summary regarding the attendance of CST professionals at Court hearings, as local counsel to the Official Committee of Unsecured Creditors:

- June 17, 2022:          HTA Disclosure Statement Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- June 29, 2022:          Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- August 8, 2022:         Pre-trial conference for HTA confirmation hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- August 17, 2022:        Confirmation Hearing of the HTA plan of adjustment and Omnibus Hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- September 28, 2022: Omnibus Hearing on HTA disclosure statement. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

72.    As requested by the Fee Examiner, we set forth below the status of the various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for the joint prosecution of causes of action or claims objections.

- Adversary Proceedings Challenging Liens Asserted by Holders of GO Bonds ("GO Lien Challenges"): As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the GO Lien Challenges are resolved.

- Omnibus Objection of Oversight Board and Committee to 2012-2014 GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the Omnibus GO Claims Objections are resolved.

- Adversary Proceeding against Underwriters, etc.: Under the Commonwealth plan of adjustment, the Avoidance Action Trustee is taking over the prosecution of the underwriter litigation.

- Garden-Variety Avoidance Actions: Under the Commonwealth plan of adjustment, the Avoidance Action Trustee has taken over the prosecution of the garden variety avoidance actions..

- Other Co-Plaintiff Adversary Proceedings: As the effective date of the Commonwealth plan of adjustment (March 15, 2022), the following adversary proceedings are resolved:

  - Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and
  - Two adversary proceedings regarding lien scope issues with respect to ERS bonds [Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367] and six adversary proceedings regarding ultra vires issues with respect to ERS Bonds [Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361].

Per Judge Swain's April 10, 2020 stay order, the following adversary proceedings (in which the Committee has been appointed as co-plaintiff/co-trustee with the Oversight Board) remain stayed pending confirmation of an HTA plan of adjustment or further order of the court.

- o Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

73. The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

74. As described in Exhibit D hereto, CST disbursed $976.30 as expenses incurred in providing professional services during the Application Period.

75. Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

76. The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

77. CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in

accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's

Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other

charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

78.    Section 316 provides for the compensation of professionals. Specifically, section

316 provides that a Court may award a professional employed by a committee under Section 1103

of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and

reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA

also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded
> to a professional person, the court shall consider the nature, the extent,
> and the value of such services, taking into account all relevant factors,
> including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount
> of time commensurate with the complexity, importance, and nature
> of the problem, issue, or task addressed;
>
> (v) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> restructuring field; and
>
> (vi) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases
> other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

79.     In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

80.     The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

**NOTICE**

81.     In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as <u>Schedule 1</u>, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $190,412.50 and expense reimbursements in the amount of $976.30; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: November 15, 2022          */s/Juan J. Casillas-Ayala*
                                 CASILLAS, SANTIAGO & TORRES LLC
                                 Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                 Luis F. Llach Zúñiga, Esq. (USDC - PR 223112)
                                 PO Box 195075
                                 San Juan, PR 00919-5075
                                 Tel.: (787) 523-3434
                                 Fax: (787) 523-3433

jcasillas@cstlawpr.com
lllach@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*