**Hearing Date: February 1, 2023, at 9:30 a.m. (AST)**
**Objection Deadline: December 5, 2022, at 4:00 p.m. (AST)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

_____/

## NOTICE OF HEARING OF SECOND INTERIM FEE APPLICATION OF CONTINENTAL PLLC AS SPECIAL LITIGATION COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF <u>JUNE 1, 2022 THROUGH SEPTEMBER 30, 2022</u>

     **PLEASE TAKE NOTICE** that a hearing on the annexed *Second Interim Fee Application of Continental PLLC, as Special Litigation Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period of June 1, 2022 through September 30, 2022* (the "Application"), filed by Continental PLLC ("Continental"), as special litigation counsel to the Official Committee of Unsecured Creditors (the "Committee")[2],

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

pursuant to section 1103(a)(1) of the Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 or "PROMESA," will be held before the Honorable Laura Taylor Swain, United States District Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **February 1, 2023, at 9:30 a.m. (AST)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that any response or objection ("Objections") to the Application by any party other than the Fee Examiner shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted pro hac vice, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the Third Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Dkt. No. 20546] (the "Interim Compensation Order"), so as to be so filed and received by the Notice Parties (as defined in the Interim Compensation Order) no later than on or before **December 5, 2022, at 4:00 p.m. (AST)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if (a) no objection is timely filed and served in accordance with the Interim Compensation Order and Case Management Procedures, and (b) all issues raised by the Fee Examiner are consensually resolved, the relief requested may be granted

2

without a hearing.

Copies of all documents filed in these Title III cases are available (a) free of charge by visiting https://cases.primeclerk.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at https://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

Dated: **November 15, 2022**

*/s/ John Arrastia*
John Arrastia, Esq. (*Pro Hac Vice*)
**CONTINENTAL PLLC**
255 Alhambra Cir, Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
JArrastia@ContinentalPLLC.com

*Special Claims Counsel to the Official Committee of Unsecured Creditors*

*/s/ Juan J. Casillas Ayala*
**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

**Hearing Date: February 1, 2023, at 9:30 a.m. (AST)**
**Objection Deadline: December 5, 2022, at 4:00 p.m. (AST)**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[3] | |

_____/

# SECOND INTERIM FEE APPLICATION OF CONTINENTAL PLLC, AS SPECIAL LITIGATION COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JUNE 1, 2022 THROUGH SEPEMBER 30, 2022

## SUMMARY COVER SHEET

| | |
|---|---|
| Name of applicant: | Continental PLLC ("Continental") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")[4] |
| Date of retention: | March 18, 2022, effective as of February 14, 2022<br>[Dkt. No. 20407] |

---

[3] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[4] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

| | |
|---|---|
| Period for which compensation and reimbursement are sought: | June 1, 2022 through and including September 30, 2022 (the "Application Period") |
| Amount of interim compensation sought as actual, reasonable, and necessary: [5] | $273,196.00 |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $1,813.58 |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Blended rate in this Application for all attorneys: | $458.23/hour[6] |
| Blended rate in this Application for all timekeepers: | $467.66/hour |
| Total time expended for fee application preparation during the Application Period: | 13.3 |
| Total compensation requested for fee application preparation during the Application Period: | $3,467.500 |
| Number of professionals included in this Application: | 6 |
| Number of professionals billing fewer than 15 hours to the case during Application Period: | 0 |
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | N/A |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | ($354,554.00): less than the budgeted fees |

---

[5] The full amount of fees incurred by Continental during the Application Period total $273,196.00. Continental agreed taking a voluntary fee reduction equal to 20% in the amount of $54,639.20 and, thereby, seeks allowance and payment of fees in the amount of $218,556.80. By the time of the hearing on this Application, a portion of this amount should have been paid by the Debtors pursuant to the Interim Compensation Order, and Continental reserves its rights to seek relief from the Court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[6] The calculation of the blended hourly rates reflected in this Application Period does not take into account Continental's agreement to reduce its fees by an amount equal to 20% of its hourly rates.

| | |
|---|---|
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention? | None. |
| Total compensation approved by interim order to date: | $0 |
| Total expenses approved by interim order to date: | $0 |
| Total allowed compensation paid to date: | $0 |
| Total allowed expenses paid to date: | $0 |
| Total compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $273,196 |
| Total expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed. | $1,813.58 |

**SUMMARY OF PRIOR MONTHLY FEE STATEMENTS FOR THE COMPENSATION
PERIOD FROM JUNE 1, 2022 THROUGH SEPTEMBER 30, 2022**

| Date | Period Covered | Total Fees | 20% Discount | Fees Requested (90%) | Holdback (10%) | Expenses Requested | Fees Paid | Expenses Paid |
|------|----------------|-----------|--------------|----------------------|----------------|--------------------|-----------|---------------|
| 07/15/22 | June 2022 | $121,455.50 | $24,291.00 | $87,447.96 | $9,716.44 | $1,231.71 | $87,447.96 | $1,231.71 |
| 08/12/22 | July 2022 | $50,130.00 | $10,026.00 | $36,093.60 | $4,010.40 | $581.87 | $36,093.60 | $581.87 |
| 9/14/22 | Aug. 2022 | $51,559.50 | $10,311.90 | $37,122.84 | $4,124.76 | $0.00 | $37,122.84 | $N/A |
| 10/28/22 | Sept. 2022 | $50,051.00 | $10,010.20 | $36,036.72 | $4,004.08 | $0.00 | $36,036.72 | $N/A |

**PRIOR INTERIM FEE APPLICATIONS**

| Date Filed | Dkt. No. | Period Covered | Total Fees | 20% Discount | Fees Requested (90%) | Holdback (10%) | Expenses Requested |
|---|---|---|---|---|---|---|---|
| 10/27/22 | 22713 | 2/15/202– 5/31/2022 | $249,241.50 | $49,848.30 | $199,393.20 | $19,939.32 | $63.96 |

## Summary of Amounts Requested to be Paid

Total Unpaid Fees: **$21,855.68**[7]

Total Unpaid Expenses: **$0**

Total 10% Holdback on Fees: **$21,855.68**

Reimbursement for 29% Tax Withholding: **N/A**

Reimbursement for 1.5% Government Contribution: **N/A**

Less expenses voluntarily reduced: **N/A**

**Total Amount Requested to be Paid in Fees and Expenses for this period: $21,855.68**

---

[7] The total unpaid fees sought are net fees after application of the voluntary 20% discount provided by Continental.

## <u>SUPPORTING CERTIFICATION, EXHIBITS, AND SCHEDULES</u>

In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

| | |
|---|---|
| EXHIBIT A | CERTIFICATION OF JOHN ARRASTIA IN SUPPORT OF APPLICATION |
| EXHIBIT B | CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES |
| EXHIBIT C | SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION |
| EXHIBIT D | BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD |
| EXHIBIT D-1 | BUDGETS |
| EXHIBIT D-2 | STAFFING PLANS |
| EXHIBIT E | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY |
| EXHIBIT E-1 | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY AS COMPARED TO BUDGET |
| EXHIBIT E-2 | SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY |
| EXHIBIT F | BREAKDOWN OF COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED AND BY WHETHER SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE PUERTO RICO |
| SCHEDULE 1 | LIST OF PROFESSIONALS BY MATTER |
| SCHEDULE 2 | MONTHLY STATEMENTS COVERED IN APPLICATION |
| SCHEDULE 3 | PROPOSED ORDER |

**Hearing Date: February 1, 2023, at 9:30 a.m. (AST)**
**Objection Deadline: December 5, 2022, at 4:00 p.m. (AST)**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[8] | |

_____/

## SECOND INTERIM APPLICATION OF CONTINENTAL PLLC, SPECIAL LITIGATION COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD <u>FROM JUNE 1, 2022 THROUGH SEPTEMBER 30, 2022</u>

To The Honorable United States District Judge Laura Taylor Swain:

Continental PLLC ("Continental"), special litigation counsel to the Official Committee of

Unsecured Creditors (the "Committee"),[9] for its second interim application (the "Second Interim

Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and

Economic Stability Act of 2016 ("PROMESA"), 2 section 503(b) of Title 11, United States Code

(the "Bankruptcy Code") as made applicable to these cases by section 301(a) of PROMESA, Rule

---

[8] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[9] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), requests for the interim allowance of compensation for professional services performed by Continental for the period from June 1, 2022 through and including September 30, 2022 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period. In support of the Application, Continental submits the Certification of John Arrastia (the "Arrastia Certification"), attached as **Exhibit A**, and respectfully represents as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The Court has subject matter jurisdiction to consider and determine this Second Interim Application pursuant to PROMESA section 306(a). Venue is proper before this Court pursuant to PROMESA section 307(a). The statutory predicates for the relief requested are PROMESA sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

2.      This Second Interim Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, Continental requests a waiver for cause shown of any requirements not met by this Second Interim Application.[10]

3.      This Second Interim Application has been prepared in accordance with the Guidelines and the Interim Compensation Order. Attached as **Exhibit A** is a certification regarding

---

[10] The Committee and Continental reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

compliance with the Local Guidelines.

## BACKGROUND

A.    **Case Background**

4.    On May 3, 2017, the Financial Oversight and Management Board ("Oversight Board") commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced a Title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "ERS Title III Case"), the Puerto Rico Highways and Transportation Authority (the "HTA Title III Case"), and the Puerto Rico Electric Power Authority (the "PREPA Title III Case") (and together with the Commonwealth Title III Case, the "Title III Cases").[11] By orders dated June 29, 2017 [Dkt. No. 537] and October 6, 2017 [Dkt. No. 1417], the Court approved the joint administration of the Title III Cases.

5.    On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Dkt. No. 338] appointing the Committee as the official committee of unsecured creditors.

6.    On July 10, 2017, the Committee filed an *Application for Order Pursuant to Bankruptcy Code Section 1103(a) and Local Bankruptcy Rule 2014-1(e) Authorizing Employment and Retention of Paul Hastings LLP as Counsel to Official Committee of Unsecured Creditors, Effective as of June 26, 2017 Requesting the Entry of an Order Authorizing the Retention and Employment of Paul Hastings LLP* ("Paul Hastings") as Counsel for the Committee [Dkt. No. 610]. By order of this Court entered August 10, 2017 [Dkt. No. 999] (the "Paul Hastings Retention Order"), Paul Hastings' retention as counsel to the Committee was approved effective as of June

---

[11] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

26, 2017.

7.      On August 25, 2017, the U.S. Trustee filed an Amended Notice of Appointment of Official Committee of Unsecured Creditors [Dkt. No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. Continental's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

8.      On January 18, 2022, the Court entered the Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority [Dkt. No. 19813] ("Confirmation Order"), which confirmed the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Dkt. No. 19784] (the "Plan"). The Effective Date of the Plan occurred on March 15, 2022. Pursuant to §90.1 of the Plan, and as a result of the appeals of the confirmation order, the Committee will remain in existence in the Commonwealth and ERS cases until the confirmation order becomes a Final Order. The Plan did not affect the continued existence of the Committee in the PREPA and HTA cases.

> **B.      Interim Compensation and Fee Examiner Orders**

9.      On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1150].

10.     On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Dkt. No. 1416]

14

(the "Fee Examiner Order").

11.     On October 31, 2017, the Fee Examiner filed the *Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the Due Date and Hearing Date for Interim Compensation* [Dkt. No. 1594].

12.     On November 8, 2017, the Court entered the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715].

13.     On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

14.     On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Dkt. No. 3032] (the "Motion to Amend the Fee Examiner Order").

15.     On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Dkt. No. 3133].

16.     On June 6, 2018, the Court entered the Interim Compensation Order [Doc. No. 3269], and in accordance therewith, Continental, and other professionals retained in these Title III Cases were authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

17.     Pursuant to the Interim Compensation Order, the Notice Parties have ten (10) days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no

objection is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

18.     On June 20, 2018, the Court entered the *First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Dkt. No. 3324] (the "Amended Fee Examiner Order").

19.     On June 26, 2019, the Court entered the *Order Imposing Additional Standards: Rate Increases and the Retention of Expert Witnesses or Other Sub-Retained Professionals* [Dkt. No. 7678].

### C.     Retention of Continental

20.     On April 30, 2019, the Committee filed an application to retain and employ the law firm of Genovese Joblove & Battista, P.A. ("GJB") as special litigation and conflicts counsel. On May 31, 2019, the Court entered the *Order Authorizing Employment and Retention of Genovese, Joblove & Battista, P.A. as Special Litigation Counsel to Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 1103(A) and Local Rule 2014-1(e), Effective as of April 16, 2019* [Dkt. No. 7181].

21.     Effective as of February 14, 2022, John Arrastia, Jesus Suarez, and Angelo Castaldi (collectively, the "Attorneys")—three of the GJB attorneys who had been primarily responsible for the representation of the Committee as special litigation counsel and conflicts counsel—formed and joined Continental. To ensure continuity of representation and to minimize expenses the Committee would have to incur in connection with having unfamiliar attorneys represent the Committee, the Committee approved Continental's substitution the Title III Cases, effective as of February 14, 2022.

22.     On February 28, 2022, Continental filed the *Application for Order Pursuant to Bankruptcy Code Section 1103(A) and Local Bankruptcy Rule 2014-1(E) Authorizing Employment and Retention of Continental PLLC as Substitute Special Litigation Counsel to Official Committee of Unsecured Creditors, Effective as of February 14, 2022* (the "Continental Application") [Dkt. No. 20222].

23.     By order of this Court entered March 18, 2022 [Dkt. No. 20407] (the "Retention Order"), the Continental Application was approved effective as of February 14, 2022. The terms of the retention of Continental are identical in all material respects to the retention of GJB and are no less favorable to the Committee.

24.     The retention of Continental (and the Attorneys) as special litigation counsel and conflicts counsel remains necessary and appropriate because the Committee desired to retain a firm with expertise in asserting claims against existing defendants and potential adverse parties that present a conflict to the Committee's primary counsel, Paul Hastings.

25.     Continental's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. In particular, the Retention Order provided that "[t]he retention of Continental, as counsel to the Committee, shall be deemed to apply to the representation of the Committee if ever enlarged to include unsecured creditors of other debtors, without the need to obtain a modification of this Order."

26.     The Retention Order authorized Continental to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "[p]ursuant to Bankruptcy Code section 503(b)(1), made

applicable by PROMESA section 301(a), the fees and expenses of Continental shall be an administrative expense." In addition, as provided in the Retention Order, the Committee has consented to the Debtors' payment of Continental's allowed fees and expenses.

27.     On May 13, 2022, Continental filed its First Supplemental Declaration Regarding the Retention of Continental as Special Litigation and Conflicts Counsel to the Official Committee of Unsecured Creditors in accordance with the *Order Approving List of Material Interested Parties Pursuant to The Puerto Rico Recovery Accuracy In Disclosures Act* [Dkt. No. 204671] (the "PRRADA Order") and the Puerto Rico Recovery Accuracy in Disclosures Act, Pub. L. No. 117-82 ("PRRADA"), and the disclosure requirements of rule 2014(a) of the Federal Rules of Bankruptcy Procedure. [Dkt. No. 20776].

28.     On June 22, 2022, Continental filed its Second Supplemental Declaration Regarding the Retention of Continental as Special Litigation and Conflicts Counsel to the Official Committee of Unsecured Creditors in accordance with the PRRADA Order, PRRADA, and the disclosure requirements of rule 2014(a) of the Federal Rules of Bankruptcy Procedure. [Dkt. No. 21306].

### D.     Applications for Interim Compensation

29.     In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the 10% held back from Monthly Fee Statements) and expense reimbursement at 120-day intervals (each an "Interim Fee Period") by filing with the Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period (*see* Interim Compensation Order at ¶2(f)).

30.     On October 27, 2022, Continental Filed its First Interim Fee Application for the period from February 15, 2022 to May 31, 2022. [Dkt. No. 22713] (the "First Interim Fee Application"). The hearing on the First Interim Fee Application is scheduled for December 14, 2022 at 9:30 a.m.

31.     As of the filing of this Second Interim Application, the Court has not entered an order awarding the compensation sought in the First Interim Fee Application.

## COMPENSATION AND REIMBURSEMENT REQUEST

### Second Interim Application for Interim Compensation

32.     This is the Second Interim Application for interim compensation for Continental and covers the Application Period from June 1, 2022 to September 30, 2022.

33.     By this Second Interim Application, Continental seeks an order authorizing (a) allowance of interim compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $273,196.00 and (b) allowance of reimbursement of actual and necessary expenses incurred by Continental in the aggregate amount of $1,813.58. These amounts were for legal services provided to the Committee in connection with the Commonwealth Title III case.

34.     During the Application Period, Continental attorneys and paraprofessionals expended a total of 596.20 hours for which compensation is requested. All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Committee.

35.     The Committee has approved the amounts requested by Continental for services performed and expenses incurred in each of the monthly statements submitted to the Notice Parties as outlined in the Interim Compensation Order.

36.     During the Application Period, Continental submitted four (4) Monthly Fee Statements. The first Monthly Fee Statement for the period from June 1, 2022 to June 30, 2022 was submitted and served on the Notice Parties on July 15, 2022 (the "<u>First Monthly Fee Statement</u>") a copy of which is attached as Schedule 2. The objection deadline for the First Monthly Fee Statement was July 25, 2022.

37.     A second Monthly Fee Statement for the period from July 1, 2022 to July 31, 2021 was submitted and served on the Notice Parties on August 12, 2022 (the "<u>Second Monthly Fee Statement</u>") a copy of which is attached as Schedule 2. The objection deadline for the Second Monthly Fee Statement was August 22, 2022.

38.     A third Monthly Fee Statement for the period from August 1, 2022 to August 31, 2022 was submitted and served on the Notice Parties on September 14, 2022 (the "<u>Third Monthly Fee Statement</u>"), a copy of which is attached as Schedule 2. The objection deadline for the Third Monthly Fee Statement was September 26, 2022.

39.     A fourth Monthly Fee Statement for the period from September 1, 2022 to September 30, 2022 (the "<u>Fourth Monthly Fee Statement</u>"), was submitted to the Committee on October 28, 2022, a copy of which is attached as Schedule 2. The objection deadline for the Fourth Monthly Fee Statement was November 7, 2022.

40.     As of the date of the filing of this Second Interim Application, Continental has received only 90% of the payments for services rendered during the Application Period for the First, Second, Third Monthly Fee Statements, and Fourth Monthly Fee Statements. There remains a 10% holdback in the amount of $21,855.68.

41.     As a courtesy to the Committee and based on circumstances unique to the Title III Case, during the Application Period Continental voluntarily applied a 20% discount of its hourly

rates totaling $54,639.20. For details regarding the discounted fees, please see the Certification of John Arrastia filed concurrently.

42.     By this Second Interim Application, Continental requests allowance of all fees and expenses incurred for services rendered during the Application Period. At this time, Continental seeks payment of (a) 100% of its fees for services invoiced during the Application Period and (b) 100% of expenses invoiced during the Application Period. The time billed by these timekeepers was reasonable, and Continental reserves the right to seek allowance and payment of these fees based on the facts and circumstances of these cases, including, without limitation, if objections are interposed to the allowance or payment of Continental's fees and expenses.

43.     There is no agreement or understanding between Continental and any other person other than the attorneys, employees, and staff of Continental, for the sharing of compensation to be received for services rendered in these cases.

44.     Continental maintains computerized records, in the form of monthly statements, of the time spent by all Continental's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by Continental to bill its clients for services rendered and include the date that the services were rendered, a detailed, and contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

45.     The fees charged by Continental in the Title III Case are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates Continental charges for the services rendered by its professionals and paraprofessionals in the Title

21

III Case are comparable to the rates Continental charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters.

46.    Continental's rates are set at a level designed to fairly compensate Continental for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses. Continental operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, Continental set its rates for attorneys and paraprofessionals both in the restructuring group and related litigation groups within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and reviews of contemporaneous time records and fee applications filed in other cases, Continental's endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to or below those of its principal competitor firms.

47.    As is customary, and as permitted pursuant to paragraph 2 of the Retention Order, every year Continental reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.

48.    Continental's professional services during the Application Period required an aggregate expenditure of 596.2 recorded hours by Continental's attorneys and paraprofessionals, broken down as follows: partners (348 hours), associates (231.3 hours), and paraprofessionals (16.90 hours). During the Application Period, Continental's billing rates for attorneys rendering services in this matter ranged from $315.00 to $575.00 per hour.

49.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period but were not processed before the preparation of this Second Interim Application, or Continental has for any other reason not sought compensation or reimbursement with respect to such services or expenses, Continental reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

50.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated by reference:

- Exhibit A contains the Certification of John Arrastia.
- Exhibit B contains disclosures regarding customary and comparable compensation.
- Exhibit C contains a summary of Continental's timekeepers included in this Second Interim Application.
- Exhibit D contains the (a) budgets and (b) staffing plans for Continental's services during the Application Period.
- Exhibit D-1 contains the budgets for the Application Period.
- Exhibit D-2 contains the staffing plans for the Application Period.
- Exhibit E contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.
- Exhibit E-1 contains a summary of compensation requested by project category as compared to budget.
- Exhibit E-2 contains a summary of the expense reimbursements requested by category. An itemized schedule of all such expenses is included in Continental's monthly statements.
- Exhibit F contains a breakdown of compensation and expense reimbursement requested by Continental and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

23

- Schedule 1 contains a list of the professionals providing Services during the Application Period by matter.
- Schedule 2 includes the monthly fee statements covered in this Second Interim Application.
- Schedule 3 includes the proposed order approving this Second Interim Application.

## SUMMARY OF SERVICES PERFORMED BY CONTINENTAL DURING THE APPLICATION PERIOD

51.     This Second Interim Application is Continental's second interim application for compensation in the Debtors' Title III Cases. Set forth below is a description of the professional services rendered by Continental during the Application Period broken down by project category.[12] The following services described are not intended to be a comprehensive summary of the work performed by Continental. Detailed descriptions of all services rendered by Continental can be found in the detailed time records reflecting the services performed by Continental's professionals, the time expended by each professional, and the hourly rate of each professional, annexed to the Monthly Fee Statements attached as Schedule 2 and such descriptions are incorporated by reference.

52.     During this Application Period, Continental closely with Paul Hastings as counsel for the Committee and Brown Rudnick LLP ("Brown Rudnick" or "Special Claims Committee Counsel") as counsel for the Financial Oversight and Management Board, acting through its counsel Proskauer Rose or the Special Claims Committee (the "Oversight Board"), and with Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, particularly with respect to the Committee's efforts to

---

[12] The description of services in this Application is limited to those matters in which Continental provided five (5) or more hours of service during the Application Period.

protect the benefits secured for general unsecured creditors of the Commonwealth. Continental worked with these firms to eliminate unnecessary duplication and allocate tasks in an efficient manner. In order to minimize duplication, Continental continues to meet with and confer with counsel for the Oversight Board to discuss pending and potential claims and discuss a division of labor and tasks to limit duplication. Continental has continued to track deadlines, organize documents, and review the Title III Case dockets to maintain its litigation tracking spreadsheets current. In addition, Continental has reviewed various motions, applications, scheduling orders and other pleadings submitted to the Court in connection with the pending action and related adversary proceedings.

53.     Specifically, Continental has continued to monitor the progress of the proceedings and advise the Committee as appropriate, and represent the Committee in those actions, including without limitation, claims of PREPA against fuel oil suppliers and laboratories to avoid certain fraudulent transfers and contractual claims. During the Application Period, Continental collaborated with CST related to the Fuel Oil Litigation (Adv. P. No. 19-388). This included a review of pleadings and undertaking substantial effort to respond to a number of exhaustive dispositive motions filed in Fuel Oil Litigation and analysis of local law issues that arose in the Fuel Oil Litigation during the Application Period. This also included participating in litigation and oral argument concerning an effort to enforce confirmed Plan (*e.g.*, Dkt. No. 21651) by UBS Financial Services and related contentions raised by certain ERS beneficiaries.

54.     During the Application Period, Continental collaborated with and assisted co-counsel on various matters related to claims filed against PREPA, while continuing to analyze the general unsecured claims pool.

55.     During the Application Period, Continental continued to assist counsel for the

Committee and advise the Committee on all issues bearing on the rights of unsecured creditors in the Title III cases and taken proactive steps to protect the rights of unsecured creditors, including by: (i) reviewing the Oversight Board's reports concerning the designation and status of claims in connection with the alternative dispute resolution process and administrative claims reconciliation process; (ii) collaborating with other Committee advisors and counsel to the Special Claims Committee of the Oversight Board to dismiss adversary proceedings that were resolved as part of the Commonwealth Plan; (iii) attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases; and (iv) monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings.

56.    As special litigation and conflicts counsel to the Committee, Continental has jointly worked on various matters with counsel for the Oversight Board or its Special Claims Committee and has made a concerted effort to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved while being mindful to avoid any unnecessary or unreasonable duplication of effort with respect to any incurrence of fees in connection with the adversary proceedings commenced under the Joint Prosecution Stipulation.

57.    As such, Continental has carefully reviewed its staffing needs on a monthly basis and taken affirmative steps to avoid charges for duplicative services. For example, the work performed by Continental was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, Continental sought to minimize the costs of Continental's services to the Committee by utilizing junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. In addition, a small group of the same Continental attorneys was utilized for

the vast majority of the work in these Title III cases to minimize the costs of intra-Continental communication and education about the cases. Notably, as a general matter, no more than two Continental attorneys attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings.

58.     In sum, Continental respectfully submits that the services for which it seeks compensation in this Second Interim Application were necessary for and beneficial to the Committee, and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. Accordingly, in light of the nature and complexity of these Title III cases, Continental's charges for professional services performed and expenses incurred are reasonable under applicable standards.

59.     For all these reasons, Continental respectfully requests that the Court grant this Second Interim Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

60.     For ease of reference and transparency purposes, Continental created several matter numbers for its representation of the Committee. The matter numbers are divided as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 101 | Commonwealth of Puerto Rico |
| 102 | PREPA Adversary Litigation |
| 103 | ERS Adversary Litigation |
| 104 | HTA Adversary Litigation |

I.     **Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 101)**

(a)     ***Case Administration (Task Code B110)***
        Fees: $360.00                    Total Hours: 2.4

61.     During the Application Period, Continental reviewed and developed general case strategy and planning of litigation matters, attended to case management, and participated in

meetings with Paul Hastings, Proskauer Rose, Brown Rudnick, and CST. In order to efficiently track deadlines, organize documents, and manage work streams, Continental created a task list and tracking chart for all adversary proceedings filed which it routinely updates to keep track of deadlines. In addition, during the Application Period, Continental held routine internal team conference calls and occasional meetings to discuss interim and long-term strategies regarding current status of the Title III cases and to manage work assignments and deadlines, while ensuring efficiencies and avoiding duplication and unnecessary overlap. In addition, Continental continued implementing interim and long-term strategies to maximize recoveries for general unsecured creditors. During the Application Period, Continental attended telephone conferences, and weekly meetings, and other communications with the Committee, including preparation for such calls and meetings in order to maintain the Committee informed of the various developments in the proceedings being handled by Continental.

(b)   ***Pleadings Review (Task Code B113)***
Fees: $11,718.00                     Total Hours: 37.2

62.     During the Application Period, Continental monitored the case docket for the Title III cases and applicable adversary proceedings. All Court filings are reviewed and analyzed. Upon the completion of the Court filing review, an internal memorandum is prepared summarizing each Court filing, upcoming hearings, and noting relevant filings which may impact a proceeding where Continental is serving as special litigation counsel to the Committee.

(c)   ***Fee/Employment Applications/Budgeting (Continental) (Task Code B160)***
Fees: $14,728.00                     Total Hours: 43.5

63.     During the Application Period, Continental prepared four (4) monthly fee statements for services rendered during the months of June, July, August, and September 2022. Continental

also reviewed reports and correspondence from the Fee Examiner and engaged in discussions with the Fee Examiner and his counsel to address questions regarding Continental's compensation.

64.     During the Application Period, Continental prepared monthly budgets and staffing issues and procedures in connection with the preparation, submission, and approval of same. Continental prepared monthly budgets for June, July, August, and September 2022, as required by the Fee Examiner and Interim Fee Orders. On June 22, 2022, Continental filed its Second Supplemental Declaration Regarding the Retention of Continental as Special Litigation and Conflicts Counsel to the Official Committee of Unsecured Creditors in accordance pursuant to the PRRADA Order, PRRADA, and the disclosure requirements of rule 2014(a) of the Federal Rules of Bankruptcy Procedure. [Dkt. No. 21306].

65.     During the Application Period, Continental began preparation of, among other things, its First Interim Fee Application and related Motions, Exhibits, and Orders. Continental also conferred with the Fee Examiner and engaged in discussions with the Fee Examiner and his counsel concerning the filing of Continental's First Interim Fee Application.

**(d)**     ***General Litigation (Task Code B191)***
Fees: $8,423.00                    Total Hours: 18.2

66.     During the Application Period, Continental's professionals reviewed and analyzed obligations of professionals under PRRADA and the Court's related orders, and in conjunction with that analysis prepared and supplemented its disclosures.

67.     During the Application Period, Continental monitored filings and appellate proceedings concerning the Court's Confirmation Order and the confirmed Plan. Continental also researched, drafted, filed submissions, and presented argument in conjunction with UBS Financials' effort to enforce the confirmed plan of adjustment on certain creditors.

68.     During this Application Period, Continental aided Paul Hastings and CST in

various tasks, such as outreach efforts, preparation of communiques for the Committee, and research and analysis of legal issues in connection with claims assessment, contracts law, and the litigation trust; all this in association with the implementation of the Commonwealth's Plan and the execution of the Committee's strategy as these Title III litigations continue. Continental has also provided, from time-to-time, additional assistance to Committee counsel with respect to litigation matters within Continental's subject matter expertise, but in no way duplicative of the work performed by other counsel on these matters

69.     During the Application Period, Continental reviewed pleadings and documents and calendared omnibus hearings and deadlines associated with proposed litigation for which it was retained. Continental reviewed and analyzed procedures orders regarding hearings, objections and pleadings filed. Continental reviewed agendas for omnibus hearings scheduled during the Application Period and attended hearings whenever necessary.

## II.     PREPA (Matter ID 102)

70.     During the Application Period, Continental continued to monitor the case and review pleadings, orders, hearings, briefing schedules, and objections filed in the main PREPA case and adversary proceedings. Additionally, Continental reviewed pending tolling agreement deadlines.

**(a)     *General Litigation (Task Code B191)***
    Fees: $211,040.00                    Total Hours: 439.9

71.     During the Application Period, Continental reviewed and analyzed various pleadings filed in the PREPA matter in addition to monitoring pending tolling agreement deadlines and tracking expiration deadlines of same. Continental paralegals prepared, reviewed, and analyzed services and notices.

72.     During the Application Period, the Committee — and Continental as its special

litigation counsel — engaged in substantial and highly complicated litigation with certain fuel oil suppliers and fuel laboratories in the Fuel Oil Litigation. Specifically, Continental expended substantial effort researching, drafting, and filing numerous submissions and extensive briefings in response to several separate motions to dismiss, in addition to an omnibus dismiss filed by most of the above-referenced defendants to the Fuel Oil Litigation. In connection with the foregoing proceedings, Continental attorneys drafted arguments, prepared briefs, reviewed and analyzed complex issues of bankruptcy and Puerto Rico law, and developed issues of Puerto Rico law. This category also includes time spent by Continental in connection with finalizing and filing the responses in the above-referenced Fuel Oil Litigation concerning other dispositive and affirmative defenses-specific motions filed by or against a certain laboratory defendant; undertaking substantial efforts to coordinate and communicate with co-plaintiff's counsel regarding litigation strategy and collaboration; reviewing and considering replies filed in conjunction with the above-referenced motions to dismiss; and reviewing and considering documents produced, and positions shared, by opposing parties. Finally, this category includes time spent by Continental during the Application Period: (a) reviewing and analyzing documents — and developing legal strategy — in connection with potentially valuable claims and litigation concerning contract registration requirements under Puerto Rico law; (b) analyzing aspects of PREPA's restructuring support agreement, potential Plan, and Plan settlements and analyze litigation implications thereof; and (c) monitoring Plan negotiations as relating to pending litigation and potential conflict parties.

## III.    ERS (Matter ID 103)

### (a)    *General Litigation (Task Code B191)*
Fees: $20,509.00                Total Hours: 42.60

73.    During the Application Period, Continental continued to monitor the case and review pleadings, orders, hearings, briefing schedules, and objections filed in the main ERS case

and omnibus adversary proceedings. Additionally, Continental has reviewed and analyzed motions

regarding briefing and litigation schedules; pending discovery and pleadings related to the bonds

issued by ERS. Continental has also spent time reviewing and calendaring deadlines and hearings

related to the ERS litigation. In addition, Continental continued its work representing the

Committee in connection with the ERS Bond adversaries [Adv. Proc. Nos. 19-356, 19-357, 19-

359, 19-361 and 19-367]. Continental represents the Committee with respect to Stipulation of

Dismissal of ERS actions and prepared the papers concerning same. Continental reviewed and

analyzed Fourth Amended Plan Supplement as it relates to litigation claims.

74.     During the Application Period, Continental expended efforts to prepare for and

argue before the Court on behalf of the Committee[13] relating to its limited support of UBS

Financial Services Incorporated of Puerto Rico's *Motion to Enforce Modified Eighth Amended

Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et al.* [*See generally* Case

No. 17-bk-03566-LTS, Dkt. Nos. 21651, 21808, 22175, 22199, 22186, 22187, 22294, and 22500].

The crux of UBS's filings was to enforce the Plan and enjoin the Employees' Retirement System

of the Government of the Commonwealth of Puerto Rico (the "ERS") and seven former

beneficiaries of the ERS from litigating claims that were transferred to other creditors under the

Plan and no longer belong to the ERS or its former beneficiaries. Continental asserted arguments

on behalf of the Commonwealth and Avoidance Actions Trusts arguing that on the Trustee has

standing to assert claims against UBS because the claims were transferred to the Avoidance Action

Trust pursuant to Section 78.86 of the Plan and such claims are currently being pursued by the

---

[13] The Debtors' Title III Plan of Adjustment, as amended and modified, (Case No. 17-bk-3283, Dkt. No. 19784)
("Plan") has been confirmed and consummated and, as of the March 15, 2022, effective date of the Plan, which then
Drivetrain, LLC ("Trustee"), as Trustee of the Commonwealth Avoidance Actions Trust (the "Avoidance Actions
Trust"), with, among other things, the prosecution of certain causes of action of the Debtors for the benefit of holders
of allowed general unsecured claims.

Trustee in the adversary captioned *Drivetrain, LLC v. Barclays, et al.*, Adv. Proc. No. 19-000280-LTS. The ERS Plaintiffs filed a Motion to Stay, which requested the Court to defer consideration of UBS's Motion to Enforce until (i) it is determined if the Avoidance Actions Trust will pursue claims against UBS; or, in the alternative; (ii) thirty days after UBS files a responsive pleading. Continental addressed these filings at oral argument when the Court heard argument in connection with the motion to enforce the Plan at the September Omnibus Hearing held September 28, 2022. The Court took the motion to enforce the Plan on submission. [*See* Dkt. No. 22567].

## IV.    HTA (Matter ID 104)

75.      During the Application period, Continental has been involved and continued to monitor adversary proceeding challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-364]. Continental also spent time reviewing and calendaring deadlines and hearings related to the HTA litigation. In addition, Continental aided Paul Hastings and CST in various tasks, such as preparation of memoranda for the Committee, and research and analysis of local law in connection with special revenues and preclusions. All this in association with the upcoming proposed Plan of Adjustment and related proceedings.

## <u>ATTENDANCE AT HEARINGS</u>

76.      In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932] (the "<u>Presumptive Standards Order</u>"), Continental provides the following summary regarding the attendance of Continental's professionals at Court hearings:

- John Arrastia virtually attended and addressed the Court at the September 28-29, 2022 omnibus hearings.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

77.     As requested by the Fee Examiner, Continental sets forth below the status of various proceedings and motions jointly commenced by the Oversight Board or its Special Claims Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulation for joint prosecution of causes of action or claims objections.

- Adversary Proceedings Against Fuel Oil Defendants and Other Proceedings: Continental represents the Committee with respect to the claims against numerous fuel oil suppliers and laboratories of PREPA to avoid certain fraudulent transfers [Adv. Pro. No. 19-388-LTS].

78.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit D-1 and Exhibit D-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

79.     As set forth in Exhibit E-2, Continental disbursed $1,813.58 as expenses incurred in providing professional services during the Application Period.

80.     Continental believes the rates for charges incurred are at or below market rates that the majority of law firms charge clients for such services. In addition, Continental believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

81.     Section 316 of PROMESA provides for the compensation of professionals. Specifically, section 316 provides that a court may award a professional employed by a committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered and reimbursement for actual, necessary expenses." PROMESA § 316(a).

Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

a.  In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:

   i.  the time spent on such services;

   ii.  the rates charged for such services;

   iii.  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

   iv.  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

   v.  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

   vi.  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code. PROMESA § 316(c). Further, section 317 of PROMESA provides that "a committee may apply to the court not more than once every 120 days for such compensation for services rendered.

82.     In the instant case, Continental respectfully submits that the services for which it seeks compensation in this Second Interim Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors, their stakeholders, and other interested parties.  Accordingly, the compensation requested is reasonable in light of the nature, extent, and value of such services to the Committee, the Debtors,

and all parties in interest.

83.     The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, Continental sought to minimize the costs of Continental's services to the Committee by utilizing junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same Continental attorneys was utilized for the vast majority of the work in order to minimize the costs of intra-Continental communication and education about the Title III Cases. As demonstrated by this Second Interim Application, Continental spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought is warranted.

## NOTICE

84.     In accordance with the Interim Compensation Order, Continental will provide notice of this Second Interim Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Second Interim Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

**WHEREFORE**, Continental respectfully requests entry of an order, substantially in the

form attached hereto as <u>Schedule 3,</u> (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $273,196.00, representing 100% of the fees billed during the Application Period (not including Continental's voluntary fee reduction equal to 20% in the amount of $54,639.20) and reimbursement of $1,813.58, representing 100% of the actual and necessary expenses incurred during the Application Period (ii) authorizing and directing the Debtors' payment of the fees allowed (net of credits for fee reductions) plus 100% of the expenses allowed and any amounts paid by the Debtors pursuant to the Interim Compensation Order, (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Continental's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting Continental such other and further relief as is just.

Dated: November 15, 2022.

/s/ John Arrastia
John Arrastia, Esq. (*Pro Hac Vice*)
**CONTINENTAL PLLC**
255 Alhambra Cir, Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
<u>JArrastia@ContinentalPLLC.com</u>