**Hearing Date: December 14, 2022 at 9:30AM (Atlantic Standard Time)**
**Objection Deadline: November 29, 2022 at 4:00PM (Atlantic Standard Time)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III No. 17-BK-3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

## NOTICE OF MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO AMEND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE** that, upon the accompanying *Motion of the Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures* (the "Motion"), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] will move this Court on December 14, 2022 at 9:30 AM (AST), or as soon thereafter as counsel may be heard, before the Honorable Laura Taylor Swain, United States District Judge, for an order granting the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that any objection to the Motion shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (*a*) by attorneys practicing before the Court in the Debtors' Title III cases, including attorneys admitted *pro hac vice*, electronically in accordance with Rule 5 of the Local Rules for the District of Puerto Rico, and (*b*) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, 150 Carlos Chardón Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served on the Debtors through their undersigned counsel in accordance with the *Sixteenth Amended Case*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

1

*Management Procedures* (the "<u>Case Management Procedures</u>") [ECF No. 20190-1], so as to be filed and received no later than **November 29, 2022 at 4:00 PM (AST)**. The relief requested may be granted without hearing if no objection is timely filed and served in accordance with the Case Management Procedures.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Court's standing orders and the Case Management Procedures, the Debtors have provided notice of this Motion, in the form of paper copies thereof sent by first class mail or digital copies sent by email, to (*a*) all creditors who filed proofs of claim which have yet to be reconciled, (*b*) the U.S. Trustee, (*c*) all creditors who filed notices of correspondence, and (*d*) the Master Service List (as defined in the Case Management Procedures), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

Dated: November 22, 2022
   San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock
Brian S. Rosen
(Admission *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III No. 17-BK-3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

**MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO TO AMEND ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), amending Exhibit 1 (the "ADR Procedures")[3] to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"). In support of the Motion, the Debtors respectfully state as follows:

**BACKGROUND**

**A.     The Debtors' Initial and Amended Motions for Entry of the ADR Order**

1.     On June 5, 2019, the Debtors submitted the *Motion for Entry of an Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 7224] (the

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] Section 7 of the ADR Procedures was amended by the Court's *Order Amending Alternative Dispute Resolution Procedures* [ECF No. 15505], dated December 29, 2020 (the "Order Amending ADR Procedures"). As used herein, the term "ADR Procedures" shall refer to and incorporate the amendments set forth in the Order Amending ADR Procedures.

1

"Initial ADR Motion"), wherein the Debtors sought entry of an order authorizing alternative dispute resolution procedures to "promote the efficient, timely, and cost-effective resolution of" certain general unsecured claims. *Id.* at 5. The proposed procedures: (a) truncated the discovery process with respect to disputed claims, (b) provided a mechanism and timetable for the exchange of offers to compromise and settle claims, and (c) in the absence of a settlement, set forth a litigation structure which would lead to the expeditious submission and determination of disputed claims. *Id.*

2.     The Initial ADR Motion was considered by the Court at an omnibus hearing on July 24, 2019. At the hearing, the Court requested certain modifications to the Initial ADR Motion, and, by order, dated August 13, 2019, the Court adjourned consideration of the Initial ADR Motion pending the submission of revised proposed procedures and forms of notice consistent with the Court's guidance. *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453].

3.     On January 7, 2020, the Debtors filed the *Amended Motion for Entry of an Order (a) Authorizing Alternative Dispute Resolution Procedures, (b) Approving Additional Forms of Notice, and (c) Granting Related Relief* [ECF No. 9718] (the "Amended ADR Motion"), which incorporated the Court's rulings and the statements made on the record at the July 24, 2019 omnibus hearing, as well as included the input and suggestions of numerous parties in interest. *See generally id.* The Amended ADR Motion proposed revised procedures which: (a) provided a mechanism and timetable for the exchange of offers to compromise and settle claims, (b) provided

2

robust mediation procedures designed to promote out-of-court resolution of claims, and (c) in the absence of a settlement or successful resolution through alternative dispute mechanisms, permitted the parties to, upon consent, submit the claims either to litigation in the Commonwealth courts or to binding arbitration. *Id.* at 6-7.

**B.     The ADR Order and Subsequent Resolution of Claims Pursuant to The ADR Procedures**

4.     On April 1, 2020, the Court entered the ADR Order granting the Amended ADR Motion, authorizing the Debtors to "take any and all actions reasonably necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the [Amended ADR] Motion," and retaining exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Order.  ADR Order at 2-3.

5.     Since the Court's entry of the ADR Order, the Debtors have filed twenty-seven notices transferring proofs of claim into the ADR Procedures and have transferred approximately 1,200 proofs of claim into the ADR Procedures. The Debtors also have filed status notices indicating that: five (5) proofs of claim were settled in Evaluative Mediation (as defined in the ADR Order); twenty-two (22) proofs of claim have been fully resolved; and approximately twelve (12) have accepted the Debtors' offers.  The status notices also have advised the Court that over five hundred proofs of claim are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures, and the claimants associated with these claims have received either an Offer or an Information Request (as defined in the ADR Order).

6.     To date, the Debtors have filed several omnibus objections to address claims associated with claimants who either did not respond to Information Requests or provided incomplete responses to Information Requests.  *See, e.g.*, *Five Hundred Twenty-Eighth Omnibus*

3

*Objection (Substantive) of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to Deficient ADR Claims* [ECF No. 22260]. Each omnibus objection has been accompanied by a corresponding notice of removal to remove claims subject to the objection from ADR. *See, e.g.*, *Notice of Removal of Certain Claims form Alternative Dispute Resolution and Administrative Claims Reconciliation* [ECF No. 22238].

      **C.**    **Administrative Expense Claims**

      7.    On January 18, 2022, the Court entered the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19813] (the "<u>Confirmation Order</u>"), confirming the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, [ECF No. 19784] (as amended, supplemented, or modified, the "<u>Plan</u>"), and, among other things, approving in all respects the Effective Date Notice (as defined below), establishing the method for service of such notice pursuant to decretal paragraph 94 of the Confirmation Order, and determining that such service "shall be deemed good and sufficient notice of entry of [the Confirmation Order]." Confirmation Order ¶ 94.

      8.    On March 15, 2022, the Plan was substantially consummated. *See Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [ECF No. 20349] (the "<u>Effective Date Notice</u>"). Pursuant to Section 1.51 and Article III of the Plan and decretal paragraph 44 of the Confirmation Order, the deadline for filing

4

proofs of Administrative Expense Claims (as defined in the Plan) was ninety (90) days after the

Effective Date or June 13, 2022 (the "Administrative Claim Bar Date").  *Id.* at 2.

9.     In accordance with the service requirements set forth in decretal paragraph 94 of

the Confirmation Order, the Debtors served the Effective Date Notice on all relevant parties.

10.    The Effective Date Notice, among other things, informed parties of the

Administrative Claim Bar Date, and noted:

> [T]he deadline for filing proofs of or requests for payment of
> Administrative Expense Claims ("Administrative Expense
> Requests") is **June 13, 2022**;
>
> . . .
>
> Administrative Expense Requests will be deemed timely filed only
> if **actually received** by Prime Clerk by **5:00 p.m. (prevailing
> Atlantic Time) on June 13, 2022** (the "Administrative Deadline").

*Id.* (emphasis in original).

11.    On June 13, 2022, Ivelisse Calderón-Alibrán and Carlos Torres Viada filed the

*Urgent Motion for Extension of Administrative Expense Claim Bar Date and Proper Service of*

*Process and Request to be Heard* [ECF No. 21217] (the "Extension Motion"), requesting, among

other things, entry of an order extending the Administrative Claim Bar Date by 120 days and

directing the publication notice of such extension.  The Debtors filed a response to the Extension

Motion on September 9, 2022.  *Response of the Financial Oversight and Management Board for*

*Puerto Rico to Urgent Motion for Extension of Administrative Expense Claim Bar Date and*

*Proper Service of Process Request to Be Heard* [ECF No. 22130].  Briefing on the Extension

Motion was completed on September 30, 2022.  *See Reply to Response of the Financial Oversight*

*and Management Board for Puerto Rico to Urgent Motion for Extension of Administrative Expense*

*Claim Bar Date and Proper Service of Process Request to Be Heard* [ECF No. 22412].

12.     On October 10, 2022, the Court granted the Extension Motion in part and denied it

in part.  *Order Extending Administrative Claim Bar Date for Certain Parties and Modifying*

*Discharge Injunction* [ECF No. 22650].  In the order, the Court extended the Administrative Claim

Bar Date until 4:00 p.m. (Atlantic Standard Time) on January 18, 2023 (the "Extended

Administrative Claim Bar Date") solely with respect to any claim or cause of action:

> (A)(1) asserted in a litigation or action against the Commonwealth,
> PBA, or ERS commenced from and after the respective petition date
> and prior to the Effective Date and relating to an action or event
> occurring from and after the respective petition date and prior to the
> Effective Date, or (2) not subject to a pending litigation or action,
> but arising from actions or events occurring from or after the
> respective petition date and prior to the Effective Date, and
>
> (B) the holder of such claim did <u>not</u> receive service of the Effective
> Date Notice as documented in a Certificate of Service referred to in
> paragraph 3 below.

*Id.* at 3 (emphasis in original).

13.     To date, over 1,000 Administrative Expense Claims have been filed since the Plan's

Effective Date, bringing the total number of Administrative Expense Claims filed to over 14,000.

Through the reconciliation efforts of the Oversight Board and the Debtors, and the entry of

numerous orders by the Court, over ninety percent (90%) of such requests have been disallowed

and expunged, leaving approximately 1,400 outstanding asserted Administrative Expense Claims.

With the Extended Administrative Claim Bar Date two months away, it is expected that additional

claims will be filed.

## **RELIEF REQUESTED**

14.     By this Motion, the Debtors seek entry of the Proposed Order, amending the ADR

Procedures to allow the Debtors (a) to object to proofs of claim associated with claimants who

6

have not responded to offers or counteroffers served pursuant to the ADR Procedures; and (b) in

their discretion, to transfer Administrative Expense Claims into the ADR Procedures.

## **BASIS FOR RELIEF**

15.      Federal Rule of Civil Procedure 60(b)(6)—incorporated by reference in Federal

Rule of Bankruptcy Procedure 9024, made applicable in the Title III context pursuant to 48 U.S.C.

§ 2701—permits a party to seek to alter an order or judgment any time "for any other reason that

justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Because Rule 60(b)(6) is a catch-all provision, its

contours are peculiarly malleable.  Thus, hard-and-fast rules generally are not compatible with

Rule 60(b)(6) determinations."  *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 84 (1st Cir. 2010)

(citation omitted).

16.      While "[t]he decision to grant or deny such relief is inherently equitable in nature"

(*id.* at 83), courts within the First Circuit applying this rule typically assess: (1) the existence of

exceptional circumstances justifying extraordinary relief; (2) the absence of unfair prejudice to

opposing parties; and (3) timeliness.  *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784

F.3d 37, 43 (1st Cir. 2015).  However, "'[t]his compendium is neither exclusive nor rigidly applied.

Rather, the listed factors are incorporated into a holistic appraisal of the circumstances' … [and]

'[s]ometimes one factor predominates to such an extent that it inexorably dictates the result.'"  *Id.*

(quoting *Ungar*, 599 F.3d at 83-84, 86)..

17.      Here, application of the factors compels allowance of the Debtors' Motion.

### A.      Amendment of the ADR Procedures Meets the First Factor

18.      The  first  factor—the  existence  of  exceptional  circumstances  justifying

extraordinary relief—cuts in favor of amendment.  This and other courts have recognized that, in

applying the first factor, there is "broad discretion" to determine whether such circumstances exist. *See, e.g.*, *Feliciano-Muñoz v. Rebarber-Ocasio*, No. 16-2719, 2021 WL 3887680, at *2 (D.P.R. Mar. 23, 2021) (citation omitted); *see also Brown v. Webber*, No. 18-09618, 2022 WL 1124901, at *2 (S.D.N.Y. Apr. 14, 2022) ("The rule has been deemed a 'grand reservoir of equitable power to do justice in a particular case' and 'confers broad discretion on the trial court to grant relief when appropriate.'" (citation omitted)).

19.    In *In re Lehman Brothers Holdings, Inc.*, the United States Bankruptcy Court for the Southern District of New York exercised its broad discretion to find that amendment of ADR procedures was appropriate under Federal Rule of Civil Procedure 60(b)(6) due to the accrual of certain types of claims that had not accrued when the bankruptcy court originally entered the order approving said procedures.  No. 08-13555 (Bankr. S.D.N.Y. Nov. 7, 2018) (ECF Nos. 59065, 59066, 59067) (orders permitting amendment of ADR procedures to add certain indemnification claims within scope); *see also id.* (Bankr. S.D.N.Y. Oct. 1, 2018) (ECF No. 58858) (motion arguing for amendment of ADR procedures under Federal Rule of Civil Procedure 60(b)(6) to "add … Indemnification Claims … which had not accrued when the Court originally entered the ADR Order.").

20.    As in *Lehman Brothers*, amendment of the ADR Procedures is justified here because of the accrual of certain claims that had not accrued when the ADR Order was first entered. More specifically, two categories of claims have accrued: (1) claims transferred into ADR associated with claimants who have not responded to offers or counteroffers, and (2) claims asserting a possibly valid entitlement to administrative expense priority.  Currently, there are dozens of claims in each of these categories.

21.     At the time the ADR Order was entered, the Debtors did not anticipate that a large number of claimants would fail to respond to an offer or counteroffer.  As such, the current ADR Procedures provide that claims associated with non-responsive claimants are deemed "rejections" requiring Evaluative Mediation.  ADR Order, Ex. 1 §§ 2(f), 3(a).  The Procedures further provide that, after a claim enters Evaluative Mediation, both the Debtors and the claimant must file mediation statements before the assigned mediator.  *Id.* § 3(c).  In addition to a mediation statement, the Debtors are required under the Procedures to provide all history of back-and-forth with the claimant.  *Id.*

22.     If claims associated with non-responsive claimants were to enter Evaluative Mediation, there would be at least two issues.  First, a claimant who has not responded to an offer or counteroffer is not likely to submit a mediation statement.  Further, there is no substantive history of back-and-forth for a mediator to consider.  With only one party's mediation statement and no substantive history of back-and-forth, a mediator's function as a neutral arbiter would be defeated.  Second, even if a mediator were to reach a decision on such a claim, the claimant would have to agree to the mediator's recommendation in order for the claim to be settled.  *Id.* § 3(d). Pursuant to the ADR Procedures, a claim that is not resolved via Evaluative Mediation enters either Commonwealth court litigation or arbitration.  *Id.* § 3(f).  Litigation or arbitration with a non-responsive claimant would serve to only further detract the Debtors from other claims reconciliation tasks, including those involving responsive claimants.  Third, permitting a non-responsive claimant to proceed through Evaluative Mediation and subsequent litigation or arbitration will take at least several months, which will further delay timely resolution of corresponding claims.

9

23.     In view of these issues, amendment of the ADR Procedures to permit objection to claims associated with non-responsive claimants is necessary.  These objections would facilitate the expeditious and economical determination of said claims.  It is for this same reason that courts have implemented similar ADR procedures in other complex bankruptcy cases.  *See, e.g.*, *In re PG&E Corp.*, No. 19-30088 (Bankr. N.D. Cal. Sept. 25, 2020) (ECF No. 9148, Ex. A-2 at 4) (order approving ADR procedures allowing objections to claims transferred into but not resolved via ADR); *Lehman Bros.*, (Bankr. S.D.N.Y. Apr. 19, 2010) (ECF No. 8474, Ex. A at 4) (same).

24.     Turning to the second category of claims, those seeking administrative expense treatment, these were not included within the scope of the ADR Procedures because, when the ADR Order was entered, the Debtors were still in the process of assessing the many thousands of claims asserting administrative priority then filed, even before seeing the multitude of claims filed in accordance with the provisions of the Confirmation Order.  While the Debtors' review of these claims is nearing completion, such analysis has revealed that a number of claims possibly assert a valid entitlement to administrative expense priority.  The Debtors currently are limited, however, in the available avenues to resolve such claims.  Because the administrative claims are large in number and diverse in complexity, the Debtors seek to be afforded the same flexibility they have with respect to general unsecured claims—namely, to be able to resolve each claim in the most appropriate and efficient manner based on the characteristics of each claim and claimant.  For this reason, amendment of the ADR Procedures to add administrative claims is both necessary and appropriate.  *See In re San Bernardin*o, No. 6:12-28006 (Bankr. C.D. Cal. Feb. 7, 2017) (ECF No. 2164 at 43) (approving the use of ADR procedures to resolve "[a]ll … claims … against the City or Indemnified Parties . . . ."); *id.* (Bankr. C.D. Cal. July 29, 2016) (ECF No. 1882-4 at 1) (setting

10

forth ADR procedures applicable to "all Disputed Claims that the City has determined could be resolved through the ADR Procedures.").

### B.    Amendment of the ADR Procedures Satisfies the Second Factor

25.    The second factor—the absence of unfair prejudice to opposing parties—also weighs in favor of amendment.  In assessing unfair prejudice, the United States Court of Appeals for the First Circuit has observed that prejudice must be supported by specific evidence, and that it cannot be inferred from the mere passage of time or "usual inconveniences" any party faces when litigating.  *Bouret-Echevarria*, 784 F.3d at 46 (citing *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) (refusing to infer prejudice simply from the passage of time, and requiring the party alleging prejudice to instead show evidence of specific prejudice, such as death of witnesses, dimmed memories that are beyond refreshment, loss of evidence, or that some discovery scheme "has been thwarted")).

26.    Here, there is no unfair prejudice because the amendments are discrete and do not materially alter the current procedures in place.  Further, claimants affected by the amendments will receive adequate notice and multiple opportunities to engage with the Debtors throughout the ADR process.  To begin, the current ADR Procedures require the Debtors to serve an initial ADR transfer notice (*i.e.*, the notice listing claims that are being transferred into ADR) on each claimant whose claim is subject to said transfer, and service of that notice is accompanied by a copy of the ADR Procedures.  ADR Order, Ex. 1 § 1(c).

27.    The Procedures also require the Debtors to serve either an Offer or an Information Request on each claimant within 60 days of the filing of the initial transfer notice.  *Id.* § 2(b).  Both Offers and Information Requests set forth a response deadline and include the Debtors' contact

11

information.  On top of this, the Debtors are required to file a status notice with the Court every sixty days.  *Id.* § 7(d).  This status notice is served on every claimant associated with a claim that has been transferred into ADR, and it lists the status of every claim with reference to the applicable section(s) of the ADR Procedures.

28.     By way of example, the *Fourteenth Alternative Dispute Resolution Status Notice* [ECF No. 22661] (the "Fourteenth Status Notice"), dated October 21, 2022, lists proof of claim number 28144 as "Offer and Exchange."  Fourteenth Status Notice, Ex. A at 2.  The corresponding footnote explains that "'Offer and Exchange' refers to Section 2 of the ADR Procedures [and] [c]laimants currently marked as 'Offer and Exchange' have received either an Offer or an Information Request."  *Id.* at 46 n.6.  As another example, the Fourteenth Status Notice lists proof of claim number 27959 as "Initial Transfer."  *Id.* at 24.  The corresponding footnote explains that "[c]laims designated as 'Initial Transfer' were transferred into the ADR Procedures, pursuant to Section 1 thereof, by the Twenty-Sixth Notice of Transfer of Claims to ADR."  *Id.* at 46 n.7.

29.     To the extent that an affected claim were to be subject to an omnibus objection, a claimant associated with such a claim would receive notice and have an opportunity to respond to the omnibus objection and be heard at an omnibus objection hearing.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1]; *Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381].

30.     Accordingly, amendment of the ADR Procedures does not prejudice claimants.

C.    **Amendment of the ADR Procedures Satisfies the Third Factor**

31.    The third and final factor—timeliness—weighs in favor of granting the Motion.
"Motions brought pursuant to Rule 60(b)(6) are subject to a 'reasonable' time limit, and the
determination of what is 'reasonable' depends upon the circumstances of each case." *Bouret-Echevarria*, 784 F.3d at 43 (citing *United States v. Baus*, 834 F.2d 1114, 1121 (1st Cir. 1987)).  In
evaluating what constitutes a "reasonable" period of time for purposes of Rule 60(b)(6), courts
within the First Circuit compare the time at which a movant could have filed his or her motion
against when he or she did in fact file the motion.  *Id.* (citation omitted).  Notably, this inquiry
focuses on whether the movant acted promptly when he or she first became aware of the need to
file a Rule 60(b)(6) motion.  *Id.* at 43-44.  It does not focus on the lapse of time between entry of
the order at issue and the filing of the motion.  *Id.*

32.    Applying this inquiry, the First Circuit has found that anywhere from eighteen
months to five years is "reasonable."  *Id.* at 44 (concluding that an 18-month lapse was reasonable
because, during the period of time between when movants first became aware of alleged
misconduct and the filing of movants' motion, movants "made diligent efforts to strengthen the
basis for their motion"); *Baus*, 834 F.2d at 1123 (finding a five-year gap timely because the moving
party had no reason to file a Rule 60(b)(6) motion until the opposing party changed its mind about
executing on a judgment).  Here, the Motion could not have been filed any earlier because: (a)
claims transferred into ADR associated with claimants who have not responded to offers or
counteroffers could not have accrued until after the ADR Procedures were in effect; and (b) the
Debtors needed sufficient time to review the claims asserting administrative expense priority that

13

have been filed against the Debtors since the commencement of the Title III cases and, more importantly, following the entry of the Confirmation Order. The Motion is, therefore, timely.

## **NOTICE**

33.     In accordance with the Court's standing orders and the *Sixteenth Amended Case Management Procedures* (the "Case Management Procedures") [ECF No. 20190-1], the Debtors have provided notice of this motion, in the form of paper copies thereof sent by first class mail or digital copies sent by email, to (a) all creditors who filed proofs of claim which have yet to be reconciled, (b) the U.S. Trustee, (c) all creditors who filed notices of correspondence, and (d) the Master Service List (as defined in the Case Management Procedures), which is available on the Debtors' case website at https://cases.ra.kroll.com/puertorico. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE** the Debtors respectfully request the Court enter an order, substantially in the form attached hereto as **Exhibit A**, amending the ADR Procedures as set forth therein, and granting the Debtors such other relief as is just and proper.

Dated: November 22, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock
Brian S. Rosen
Laura Stafford
(Admission *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

15

**<u>EXHIBIT A</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br><br>Title III<br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |

**ORDER GRANTING MOTION OF THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO TO AMEND
<u>ALTERNATIVE DISPUTE RESOLUTION PROCEDURES</u>**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon the *Motion of the Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures*, dated November 22, 2022 (the "Motion"),[2] of the Debtors for entry of an order (this "Order") authorizing amendment of the alternative dispute resolution procedures, and granting related relief as more fully described in the Motion; and this Court having jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Debtors' Motion is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that, based upon the relief requested by the Debtors' Motion, no other or further notice is required; and the Court having determined that the legal and factual bases set forth in the Debtors' Motion establish just cause for the relief granted herein; and any objections to the relief requested herein having been resolved as set forth herein, or withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is granted to the extent set forth herein.

2.  Sections 2(c), 2(f), 3(a), 6(c), 7(b), and 7(c) of the ADR Procedures are hereby amended as follows:

> 2. Offer Exchange Procedures

> c) Within twenty-five (25) days of service of an Offer via either an Offer Letter or an ADR Notice, the Designated Claimant must respond to such Offer by (1) accepting the Offer, by execution and delivery of a stipulation provided by the Commonwealth or such other Debtor in connection with the Offer or (2) submitting a counteroffer (the "Counteroffer"); provided,

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

however, that any Counteroffer may only propose an amount that, if agreed upon, will fix the amount of the creditor's claim; and, provided, further, that if the creditor fails to timely respond to the Offer Letter, the Offer shall be deemed rejected.  If the Designated Claimant rejects~~, or is deemed to have rejected,~~ the Offer, the Designated Claim will advance to the next step of the ADR Procedures, as set forth below.  **If the Designated Claimant deemed to have rejected the Offer by failing to timely respond to the Offer Letter, it shall constitute non-compliance with the procedures set forth herein, and the Debtors are authorized to object to the Claim, which may result in disallowance and expungement of the associated claim in whole or in part.**

…

f) Within thirty (30) days of receipt of any Counteroffer, the Commonwealth or such other Debtor, as the case may be, may (1) accept such Counteroffer, by delivery of a stipulation evidencing agreement to the proposed amount, or (2) reject such Counteroffer, by delivery of notice to such Designated Claimant that such Counteroffer is unacceptable.  The Commonwealth or such other Debtor, as the case may be, may also submit its own counteroffer to the creditor, and the parties may exchange as many offers and counteroffers (each, a "Further Offer") as they deem appropriate prior to a determination that an impasse has been reached.  The Debtors or the Designated Claimant shall have thirty (30) days from receipt of each such Further Offer (1) to accept such Further Offer, by delivery of a stipulation evidencing agreement to the proposed amount, or (2) to reject such Further Offer, by delivery of notice that such Further Offer is unacceptable.  Failure to respond to a Further Offer within thirty (30) days of receipt shall **constitute non-compliance with the procedures set forth herein, and the Debtors are authorized to object to the Claim, which may result in disallowance and expungement of the associated claim in whole or in part** ~~be deemed rejection of such Further Offer~~.   The Commonwealth or such other Debtor, as the case may be, may also request additional information or documentation (the "Information Request") from the Designated Claimant.  The Designated Claimant shall provide additional documentation or information in response to such Information Request within twenty-one (21) days following receipt of such Request.  Within ten (10) days of either the Designated Claimant's or the Debtor's rejection of an Offer, Counteroffer, or Further Offer, the Debtor(s) shall file a notice of impasse (the "Offer Exchange Impasse Notice") with the Title III Court.

2

…

    3. Evaluative Mediation

a) In the event that a Claim is not resolved through the Offer Exchange process, the Claim will proceed to the next step of the ADR Procedures. **If the Designated Claimant is deemed to have rejected the Offer or a Further Offer by failing to timely respond to the Offer Letter, it shall constitute non-compliance with the procedures set forth herein, and the Debtors are authorized to object the Claim, which may result in disallowance and expungement of the associated claim in whole or in part. If the Designated Claimant timely responds but rejects an Offer or a Further Offer, the Claim will proceed to** an evaluation ("Evaluative Mediation") of the Designated Claimant's claim by a mediator ("Mediator") identified by the Title III Court in its sole and absolute discretion, including a federal judge. The Purpose of the Evaluative Mediation phase of the ADR Procedures is to obtain a non-binding, confidential, monetary valuation of each Designated Claim that may assist in achieving settlement by serving as a focal point for further discussions between the parties.

…

    6. Commonwealth Court Litigation of Unresolved Claims

 …

c) **For purposes of the ADR Procedures, the** ~~The~~ Commonwealth's courts will only resolve the **amount** of a creditor's general unsecured claim **or administrative expense priority claim**. Without limiting the foregoing, any other issue, including, without limitation, the priority or classification of a claim, distributions with respect thereto, and issues related to subordination thereof, shall not be subject to the Commonwealth court's determination and shall be determined in connection with the provisions of an applicable plan of adjustment or as otherwise determined by the Title III Court.

 …

    7. General Provisions Regarding ADR Procedures

…

b) The ADR Procedures will only resolve the amount of a creditor's general unsecured claim **or administrative expense priority claim**. Without

limiting the foregoing, any other issue, including, without limitation, the priority or classification of a claim, distributions with respect thereto, and issues related to subordination thereof, shall not be subject to the ADR Procedures and shall be determined in connection with the provisions of an applicable plan of adjustment or as otherwise determined by the Title III Court.

c) To the extent a holder of a general unsecured claim **or administrative expense priority claim** has filed, sought or seeks any relief related to a Claim that is subject to the ADR Procedure, including, without limitation, relief sought in any adversary proceeding or any other applicable court of law (collectively, the "Actions"), and such Designated Claimant has not elected to liquidate their Claim through the process outlined in Section 6 above, such Actions shall be stayed (including with respect to pending discovery) until the ADR Procedure with respect to such Claim has been completed. Within five (5) business days of entry of a final order with respect to the validity and amount of such Claim in the ADR Procedure, a motion shall be filed in the applicable forum to dismiss any corresponding portion of such Action, with prejudice, and to transfer any remaining portion of such Action, to the extent not pending or subject to the Debtors' Title III cases, to the Title III Court presiding over the Debtors' Title III cases. To the extent required, the automatic stay, extant pursuant to section 362 of the Bankruptcy Code, applicable herein in accordance with section 301 of PROMESA, shall be deemed modified solely for the purpose of determining the validity and amount of a claim pursuant to the ADR Procedure.

3.      The Debtors are authorized to take any and all actions reasonably necessary or appropriate to effectuate the relief granted pursuant to this Order in accordance with the Motion, including but not limited to the implementation of necessary conforming edits to the ADR Notice (as defined in the ADR Procedures) to reflect the changes immediately above.

4.      The Debtors' right to seek further amendment of the ADR Procedures is preserved;

5.      This Order resolves docket entry No. _____

6.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

4

SO ORDERED.

Dated: _____, 2022

_____
LAURA TAYLOR SWAIN
United States District Judge