UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

MEMORANDUM ORDER DENYING THE MOTION TO INTERVENE AND TO INFORM THE EXISTENCE
AND CONTINUANCE OF AN UNRESOLVABLE CONFLICT OF INTEREST IN VIOLATION OF THE PUERTO
RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 ET SEQ., AND
PETITION FOR: (A) THE PERMANENT DISQUALIFICATION OF O'NEILL & BORGES, LLC AS LEGAL
COUNSEL TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AND
(B) THE DISALLOWMENT AND DISGORGEMENT OF LEGAL FEES FILED BY CARLOS LAMOUTTE

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., and Petition for: (A) the Permanent Disqualification of O'Neill & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowment and Disgorgement of Legal Fees* (Docket Entry No. 20873 in Case No. 17-3283)[2] (the "Motion"), filed by Carlos Lamoutte. The Motion posits that O'Neill & Borges LLC ("O&B"), which represents the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting as the statutory representative of the debtors (the "Title III Debtors")[3] in the above-captioned cases (the "Title III Cases") under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), is subject to and has failed to disclose a material conflict of interest arising from its alleged representation of "certain long-standing private clients of O&B." (Mot. ¶ 12.) Attorney Lamoutte—purporting to file the Motion as a citizen of Puerto Rico and self-described relator—alleges that O&B's alleged conflict resulted in an unlawful and ill-advised sale of a loan portfolio owned by the Economic Development Bank of Puerto Rico (the "EDB") to O&B's clients to the Commonwealth's detriment, and that O&B and others have sought to conceal and circumvent Oversight Board review of the loan sale transaction. (See, e.g., Mot. ¶¶ 11-13, 16, 21-22, 23, 25.) Attorney Lamoutte requests entry of an order permanently disqualifying O&B

---

[2] All docket entry references herein are to entries in Case No. 17-3283, unless otherwise specified.

[3] The Title III Debtors are comprised of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power Authority, and the Puerto Rico Public Buildings Authority.

from serving as local counsel to the Oversight Board and ordering the disallowance and disgorgement of O&B's fees. (Mot. at 18.)

The Court has carefully reviewed the papers submitted in connection with the Motion[4] and, for the following reasons, the Motion is denied.

BACKGROUND

*Overview of Title I, Title II, and Title III of PROMESA*

PROMESA was enacted on June 30, 2016, with the stated purpose of addressing the Commonwealth's fiscal crisis through "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico . . . , involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process." 48 U.S.C. § 2194(m)(4).

PROMESA comprises seven titles; three of them are relevant to resolving the instant dispute. First, Title I of PROMESA establishes the Oversight Board within Puerto Rico's territorial government and provides a framework for the Oversight Board's formation and operation. Section 101(d)(1) of PROMESA permits the Oversight Board to "designate any territorial instrumentality" (defined in PROMESA to include all political subdivisions, public agencies, and instrumentalities of Puerto Rico) as subject to the requirements of PROMESA. 48 U.S.C. § 2121(d)(1)(A). The Oversight Board's powers under Title I include, among others, authority to retain attorneys, 48 U.S.C. § 2128(b), to issue and enforce subpoenas, 48 U.S.C. § 2124(f), to seek judicial enforcement of its responsibilities, 48 U.S.C. § 2124(k), and to

---

[4] Objections to the Motion were filed by the Oversight Board (Docket Entry No. 21094) (the "FOMB Objection") and O&B (Docket Entry No. 21096) (the "O&B Objection"). Attorney Lamoutte filed a reply in support of the Motion (Docket Entry No. 21124) (the "Reply").

investigate disclosure and selling practices with respect to issuances of public debt. 48 U.S.C. § 2124(o). Title I also vests the United States district court for the relevant covered territory with jurisdiction of actions arising out of PROMESA (except for certain actions relating to enforcement of subpoenas or Title III of PROMESA, which concerns the adjustment of debts). 48 U.S.C. § 2126(a).

Title II of PROMESA contains several provisions that govern the relationship between the Oversight Board and the "covered territory" (i.e., the Commonwealth) and instrumentalities that are designated by the Oversight Board pursuant to section 101 of PROMESA. These provisions, which afford the Oversight Board a substantial role in the fiscal governance of the Commonwealth and its instrumentalities, provide the Oversight Board with the power to "develop, review, approve, and certify fiscal plans that . . . in turn dictate the bounds of any annual budgets adopted by" the Commonwealth and its instrumentalities. Fin. Oversight & Mgmt. Bd. for P.R. v. Federación de Maestros de P.R., Inc. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 32 F.4th 67, 75 (1st Cir. 2022) ("Federación de Maestros"); see also Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 330 F. Supp. 3d 685, 701 (D.P.R. 2018) (describing the "awkward power-sharing arrangement" created by the substantial but not unconstrained powers provided to the Oversight Board in Title II of PROMESA), aff'd and remanded, 945 F.3d 3 (1st Cir. 2019). Of particular relevance to the Motion, the oversight powers granted to the Oversight Board in Title II include authority to "establish policies to require prior Oversight Board approval of certain contracts . . . to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan." 48 U.S.C. § 2144(b)(2).

In addition to the governance and fiscal oversight provisions in Title II of

PROMESA, the Act "also create[s] in Title III a modified version of the municipal bankruptcy code for territories and their instrumentalities." Federación de Maestros, 32 F.4th at 75. Title III therefore "authorize[s] the [Oversight] Board to place the Commonwealth and its instrumentalities into bankruptcy proceedings and to develop a plan of adjustment for restructuring" their debts. Id. To that end, the undersigned was designated as the presiding judge to conduct the Title III Cases of Puerto Rico and its instrumentalities, 48 U.S.C. § 2168, and the Oversight Board is designated by PROMESA as the representative of the Title III Debtors in their respective Title III Cases. 48 U.S.C. § 2175. In that capacity, the Oversight Board is able to retain, and seek court approval of compensation for, the services of attorneys and other professionals. See 48 U.S.C. §§ 2176, 2177.

*Formation of the Oversight Board and the Contract Review Policy*

The Oversight Board was formed in 2016 following the enactment of PROMESA. Soon after its formation, the Oversight Board designated numerous instrumentalities, including the EDB, as "covered instrumentalities" subject to fiscal oversight under PROMESA. In 2017, the Oversight Board filed petitions to commence Title III Cases for the Commonwealth and four instrumentalities: the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electric Power Authority. It filed one additional petition in 2019 for the Puerto Rico Public Buildings Authority. The Oversight Board has never filed a Title III petition for the EDB.

According to the Oversight Board's website, the Board established a policy governing the review of governmental contracts on November 6, 2017 (the "Contract Review

Policy"), pursuant to section 204(b)(2) of PROMESA, 48 U.S.C. § 2144(b)(2). See *FOMB Policy: Review Of Contracts*, Fin. Oversight & Mgmt. Bd. for P.R., https://drive.google.com/file/d/1xJY178FnVFrQTXXSv5Txn2JZYmcmJkB5/view (last visited Nov. 21, 2022); see also *Contract Review*, Fin. Oversight & Mgmt. Bd. for P.R., https://oversightboard.pr.gov/contract-review (last visited Nov. 21, 2022).

*EDB and the Loan Sale Transaction*

The EDB is an entity that was established by statute as a "corporate and political body" with the purpose of "promot[ing] the development of the private sector of the economy of Puerto Rico." 7 L.P.R.A. § 611a(a). Pursuant to statute, the EDB "ha[s] its own legal personality and existence apart from the Commonwealth of Puerto Rico and any of its agencies, instrumentalities or public corporations," 7 L.P.R.A. § 611a(b), and its "debts, obligations, contracts, notes, receipts, expenses, accounts, funds, enterprises and properties" are "its sole responsibility and not the responsibility of the Commonwealth of Puerto Rico, its agencies, instrumentalities and public corporations." 7 L.P.R.A. § 611a(c).

On or about September 7, 2018, the EDB entered into a Loan Sale Agreement (Docket Entry No. 20873-1) (the "Sale Agreement") with PR Recovery and Development JV, LLC and PR Recovery and Development REO, LLC (together, the "Purchasers") pursuant to which EDB sold a commercial loan portfolio for $384,269,047 (the "Loan Sale Transaction"). (Mot. ¶ 12; FOMB Obj. ¶ 10; O&B Obj. at 10.) Attorney Lamoutte alleges that O&B represented one of the Purchasers, PR Recovery and Development JV, LLC, with respect to the Loan Sale Transaction. (See Reply ¶ 44 (noting that contact information for an O&B attorney is listed in the Notices section of the Loan Sale Agreement).) He further asserts that other entities

allegedly involved in the Loan Sale Transaction were represented by O&B. (See Mot. ¶ 12 (asserting that "O&B . . . represented . . . Parliament Capital Management, LLC . . . , Parliament High Yield Fund, LLC . . . , and Island Portfolio Services, LLC" in the Loan Sale Transaction); Reply ¶¶ 45-46.) O&B denies that it represented the Purchasers and also denies that it has ever represented the Oversight Board in any matters concerning the Loan Sale Agreement. (O&B Obj. at 3, 11.)

It appears undisputed among the parties that the Contract Review Policy applied to the Sale Agreement, but that the EDB did not submit the Loan Sale Agreement to the Oversight Board for approval under the Contract Review Policy prior to its execution nor at any point thereafter. (See Mot. ¶ 23(d); FOMB Obj. ¶ 10.) However, in 2019, EDB commenced suit in Commonwealth court seeking to invalidate the Loan Sale Agreement (Mot. ¶ 17; FOMB Obj. ¶ 12), and the Oversight Board represents that it decided to not take action with respect to the Loan Sale Agreement due to the pendency of that litigation. (See FOMB Obj. ¶ 12.)

*The Motion and the Objections to the Motion*

On May 18, 2022, Attorney Lamoutte filed the Motion. The Motion alleges that O&B has "intentionally incurred . . . an unresolvable conflict of interest to financially benefit" the Purchasers "to the corresponding economic detriment of the bankruptcy estate of the debtor in this case, the Commonwealth of Puerto Rico." (Mot. ¶ 2; see also Mot. ¶ 11 (alleging that the transaction "directly injured" the Commonwealth).) Specifically, Attorney Lamoutte appears to contend that the consideration paid by the Purchasers under the Loan Sale Agreement represented a substantial discount from the true value of the loan portfolio and that the unwarranted discount created a windfall for the Purchasers (Mot. ¶ 23), although he has not

explained why any such windfall would have harmed the Commonwealth. The Motion asserts that the "several executives of the Oversight Board have assisted" in concealing that alleged conflict of interest. (Mot. ¶ 3.)

On June 2, 2022, O&B and the Oversight Board each filed an objection to the Motion. Each of the objections alleges that Attorney Lamoutte represents certain entities with interests in the loan portfolio that was sold in the Loan Sale Transaction—specifically, certain borrowers who have tried to challenge the legality of the Loan Sale Agreement. (O&B Obj. at 4-6 & n.11; FOMB Obj. ¶ 3.) Both objections argue that Attorney Lamoutte lacks standing to bring the Motion because he has not alleged a concrete injury that he has suffered as a result of the alleged concealment of the connections between O&B and the Purchasers. (O&B Obj. at 11-14; FOMB Obj. ¶¶ 24-25.) They also contend that the premise of the Motion is incorrect because O&B has neither acted as counsel to the Oversight Board in connection with the Sale Agreement nor to the Purchasers (O&B Obj. at 10-11; FOMB Obj. ¶¶ 26-27), and that the conduct of the Oversight Board and its employees and advisors with respect to EDB has no connection to the Title III Cases. (O&B Obj. at 15-17 (arguing, inter alia, that disclosure requirements in the Title III Cases do not apply to professionals' connections to EDB); FOMB Obj. ¶¶ 21-23 (arguing that the Court lacks subject matter jurisdiction of the Motion because the retention of professionals outside of Title III does not arise in or relate to the Title III Cases).) Finally, O&B argues that sanctions should be imposed against Attorney Lamoutte for, among other things, his repeated filings and his failure to disclose to the Court the fact that he represents certain borrowers whose loans were the subject of the Loan Sale Transaction. (See O&B Obj. at 17-18.)

DISCUSSION

*Attorney Lamoutte's Standing to Prosecute the Motion*

"To have standing in bankruptcy court, a party must meet three requirements: (1) Article III's constitutional requirements, (2) federal court prudential standing requirements, and (3) the 'party in interest' requirements under Bankruptcy Code 1109(b)."[5] In re Old Carco LLC, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013); see Sentinel Trust Co. v. Newcare Health Corp. (In re Newcare Health Corp.), 244 B.R. 167, 171 (B.A.P. 1st Cir. 2000) (noting that litigants must satisfy both section 1109(b) and other standing doctrines); see also Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 872 F.3d 57, 64 n.7 (1st Cir. 2017); In re Glob. Indus. Techs., Inc., 645 F.3d 201, 210 (3d Cir. 2011). To demonstrate constitutional standing, a litigant must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Prudential standing requires a claimant to demonstrate, among other things, that "his claim is premised on his own legal rights (as opposed to those of a third party) [and] that his claim is not merely a generalized grievance." Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (quoting Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006)). For its part, section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C.A. § 1109(b) (West 2016).

---

[5] Section 1109(b) is made applicable to the Title III Cases by section 301(a) of PROMESA, 48 U.S.C. § 2161(a).

At the core of each of these standing doctrines is a requirement that a litigant demonstrate a "personal stake" in the outcome of a particular proceeding. See In re Weinstein Co. Holdings, LLC, 595 B.R. 455, 465 (Bankr. D. Del. 2018); cf. In re Fin. Oversight & Mgmt. Bd. for P.R., 872 F.3d at 64 n.7 (noting that "Article III standing is 'almost always satisfied with respect to any party in interest in a chapter 11 case'") (quoting Alan N. Resnick & Henry J. Sommer, 7 COLLIER ON BANKRUPTCY ¶ 1109.04[4] (16th ed. 2022)); In re Glob. Indus. Techs., Inc., 645 F.3d at 211. Thus, each party must have a "legally protected interest that could be affected by a bankruptcy proceeding." In re Glob. Indus. Techs., Inc., 645 F.3d at 210 (quoting In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992)); see Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018) ("A constitutionally sufficient injury arises from an 'invasion of a legally protected interest' that is both 'concrete and particularized' as well as 'actual or imminent,' rather than 'conjectural or hypothetical.'") (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). A generalized interest in having the government or others act in a lawful manner is not sufficient to confer standing. Indeed, "[i]t is apodictic that a mere interest in seeing the government turn square corners is not the kind of particularized interest that can satisfy the most basic constitutional prerequisite for standing." Osediacz v. City of Cranston, 414 F.3d 136, 142 (1st Cir. 2005); Daggett v. Comm'n on Governmental Ethics & Election Pracs., 172 F.3d 104, 110 (1st Cir. 1999) ("[A] party to claim standing must have an interest distinct from that of every other citizen or taxpayer. This rubric rests on multiple concerns, including displeasure with claims by individuals whose interest is infinitely diluted, rests solely on ideological grounds, or could be replicated by an unlimited number of parties or would-be intervenors.") (citations omitted).

Attorney Lamoutte has failed to demonstrate that he has standing to be heard with respect to the issues raised in his Motion. His pleadings do not assert that he is a creditor of any of the Title III Debtors or that he otherwise has any personal stake in the outcome of the Title III Cases generally, or in the relief sought in the Motion specifically. Cf. Costa v. Marotta, Gund, Budd & Dzera, LLC, 281 F. App'x 5, 6 (1st Cir. 2008) ("Appellant Pat Costa, a former director and officer of the debtors, objected [to fee applications filed by various chapter 11 professionals], accusing the professionals of malpractice and related misconduct. As a creditor, Costa had standing to advance such objections as a basis for seeking denial (or disgorgement) of the requested fees."); Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir. 1997) (holding that creditors had standing to challenge sale order where they "declare[d] that Guccio Gucci's conduct diminished the value of the estate's assets, thereby limiting their recovery as creditors").

Although Attorney Lamoutte asserts that he is a citizen who is "acting as a qui tam relator here" (Reply ¶ 35), he points to no law vesting private citizens with the right to challenge the Oversight Board's choice of counsel in these Title III Cases, and he therefore has no basis for asserting whatever rights others may have to challenge O&B's retention in the Title III Cases. See United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23-24 (1st Cir. 2007) ("There presently is no common-law right to bring a qui tam action, which is strictly a creature of statute. . . . Although the government remains the 'real party in interest' in a qui tam prosecution . . . , qui tam statutes . . . authorize[] private individuals to sue on behalf of the federal government . . . . [Q]ui tam relators, even those who were not personally injured by the defendant's actions, normally possess Article III standing because they sue as partial assignees of

the United States' claims against the defendant.") (quotation marks and citations omitted). Rather, section 1109(b) expressly limits participation in the Title III Cases to parties in interest.[6]

Attorney Lamoutte's brief reference to the First Circuit's decision in Kevlik v. Goldstein, 724 F.2d 844 (1st Cir. 1984) does not provide a basis for his standing to appear in these proceedings and prosecute the Motion. (See Reply ¶ 42 (asserting that Attorney Lamoutte has standing as an attorney who has knowledge of "facts justifying a disqualification of counsel" to bring to the Court's attention "ethical violations committed in a case.").) In Kevlik, the First Circuit held that the plaintiffs in a section 1983 false arrest action were permitted to seek disqualification of the defendant's counsel where the basis for the conflict was the defendant's counsel's prior representation of an individual who was arrested and charged alongside the plaintiffs. 724 F.2d at 846-47. Addressing the question of whether "the plaintiffs lack standing

---

[6] To the extent the Motion may be construed as a request for permissive intervention under Rule 2018(a) of the Federal Rules of Bankruptcy Procedure, it fails for substantially the same reasons. Rule 2018(a) provides that, "after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." Fed. R. Bankr. P. 2018(a). Mr. Lamoutte has not demonstrated that he is "interested" in any legally cognizable way in the subject matter or outcome of the Motion, nor that any such interest would not be adequately represented by the parties who already have the right to appear and be heard in the Title III Cases. See In re Thompson, 965 F.2d 1136, 1142 n.9 (1st Cir. 1992) ("The 'person aggrieved' [appellate standing] standard substantially replicates the procedural requisites for intervention under Bankruptcy Rules 2018 and 7024, with a view to determining whether a nonparty appellant, whose interests were likely not represented by existing parties, and who may not have been afforded prior notice, could have demonstrated so significant an unrepresented interest as to require intervention."); Alan N. Resnick & Henry J. Sommer, 9 COLLIER ON BANKRUPTCY ¶ 2018.02[4] (16th ed. 2022) ("The cause [required for intervention under Rule 2018(a)] may be an economic or similar interest in the case or one of its aspects. Intervention might also be permitted to an entity based on that entity's concern with precedential ramifications of an aspect of a case such as interpretation of a new statute, or a state concerned with possible conflicts between chapter 11 and state regulatory policies. Permissive intervention is warranted if the entity demonstrates that no other entity exists to adequately protect its position and that intervention would not result in undue delay or prejudice.").

to pursue a disqualification order because only the former client . . . may raise a disqualification motion," the court held that an attorney may seek disqualification of opposing counsel even though the attorney is not representing the former client whose attorney-client privilege was threatened by the current client relationship. The court grounded its holding in section 1-103(A) of the Model Code of Professional Responsibility and persuasive authority permitting or even requiring attorneys to report knowledge of actual or potential violations of disciplinary rules to "a tribunal or other authority empowered to investigate or act upon such violation." Id. at 847-48 (quoting Model Code of Prof'l Responsibility DR 1-103(A)) (emphasis added).

The narrow standing issue addressed in Kevlik was whether standing to raise former client conflict issues in a proceeding is strictly limited to the former clients themselves, or whether other parties (through their counsel) may raise such issues. Clearly the plaintiffs and their attorneys in Kevlik were not strangers to the litigation in which they raised the ethical issues arising from opposing counsel's prior representation. Moreover, as recognized by the persuasive authority relied upon by the First Circuit, the issues raised concerned an "apparent conflict[] of interest which might [have] undermine[d] the validity of proceedings in [the] case." Kevlik, 724 F.2d at 848 (quoting Black v. State of Mo., 492 F. Supp. 848, 861 (W.D. Mo. 1980)), thereby obligating "*attorneys representing other parties to the litigation* . . . to report the relevant facts to the Court for its determination." Ests. Theatres, Inc. v. Columbia Pictures Indus., Inc., 345 F. Supp. 93, 98 (S.D.N.Y. 1972) (emphasis added).

Here, in contrast, Attorney Lamoutte does not allege that he represents any parties in interest, nor has he otherwise demonstrated any legally significant nexus to the debtors in these Title III Cases. Instead, he relies on a bare assertion that, as an attorney, he is "obligated" to appear and "call the matter to the attention of the Court." (Reply ¶ 42.) The Court does not

understand Kevlik to extend so far as to permit individuals with no demonstrated connection to a proceeding to appear and seek to disqualify a party's counsel and compel the disgorgement of counsel's fees. Were that the law, there would seem to be a substantial risk of mischief to the detriment of parties in interest who are already capable of protecting their own interests and who have chosen their own counsel in these proceedings. Cf. Combustion Eng'g Caribe, Inc. v. George P. Reintjes Co., 298 F. Supp. 2d 215, 219 (D.P.R. 2003) ("[T]he notion of someone extraneous to an attorney-client relationship raising the specter of a conflict of interest . . . which may result in the removal of counsel of choice raises valid and competing concerns."); Kane v. Johns-Manville Corp., 843 F.2d 636, 644 (2d Cir. 1988) ("The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself.").

Moreover, Attorney Lamoutte has not established any basis for his belief that the EDB's affairs and finances are subsumed in the Commonwealth's Title III Case such that his allegations about the EDB's conduct with respect to the Loan Sale Transaction has any connection to the Title III Cases. In fact, pursuant to the law creating the EDB, the EDB has "its own legal personality and existence apart from the Commonwealth of Puerto Rico and any of its agencies, instrumentalities or public corporations," 7 L.P.R.A. § 611a(b), and its debts and obligations are "its sole responsibility and not the responsibility of the Commonwealth of Puerto Rico, its agencies, instrumentalities and public corporations." 7 L.P.R.A. § 611a(c). Nor is there any litigation concerning EDB and the Loan Sale Transaction pending in the Title III Court.

(See Reply ¶ 13 (noting that litigation concerning the Sale Agreement is pending in the Puerto Rico Court of First Instance).)

Accordingly, in light of Attorney Lamoutte's lack of a preexisting relationship to the instant proceedings or any supported argument that the Loan Sale Transaction involved or affects the Commonwealth or O&B's role as counsel to the statutory representative of the Commonwealth, the Court does not view Kevlik as providing a basis to disregard constitutional, prudential, and statutory standing requirements.

*O&B's Request for Sanctions Against Attorney Lamoutte*

Through its response to the Motion, O&B requests that the Court impose sanctions on Attorney Lamoutte for his alleged bad faith litigation conduct. (O&B Obj. at 17.) Specifically, O&B asks the Court to determine that Attorney Lamoutte's prosecution of the Motion represents bad faith litigation conduct because he has made "frivolous arguments," "fail[ed] to make significant disclosures concerning his active role as counsel for parties seeking to challenge the [Loan Sale] Transaction," included "unqualified and unverified allegations of purported fact for which he has absolutely no basis," and engaged in a "pattern of harassment through multiple legal proceedings." (O&B Obj. at 17.)

O&B's Objection fails to specify any specific rule or statute undergirding its request for sanctions. (See O&B Obj. at 17 (seeking sanctions under "the Court's inherent powers, or under one of the various rules or statutory provisions authorizing the imposition of sanctions").) As such, the Court is left to infer[7] that O&B's request is pursuant to Rule 9011 of

---

[7] The Local Bankruptcy Rules require each party to provide "specific reference to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy

the Federal Rules of Bankruptcy Procedure, section 1927 of title 28 of the U.S. Code, and the Court's inherent sanctioning powers.

Although Rule 9011 of the Federal Rules of Bankruptcy Procedure authorize a court to impose "an appropriate sanction" against an "attorney or unrepresented party" who files a motion for an improper purpose, presents a frivolous claim or legal contention, or proffers factual allegations that lack evidentiary support, Fed. R. Bankr. P. 9011(c), O&B's request for sanctions is plainly noncompliant with the mandatory requirements of the "safe harbor" provision of Rule 9011. First, O&B has not made a "motion for sanctions . . . separately from other motions or requests." Fed. R. Bankr. P. 9011(c)(1)(A); see also Fed. R. Civ. P. 11 advisory committee's note ("[R]equests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion."). Second, O&B does not represent that it has served any such motion in the manner prescribed by Rule 7004. See Fed. R. Bankr. P. 9011(c)(1)(A). Third, O&B was required to wait twenty-one days after service of such motion prior to filing it. Id. Having failed to comply with these requirements, O&B's request for sanctions is denied to the extent that it rests on Rule 9011. See Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 244 (1st Cir. 2010) ("Among other factors disqualifying Rule 11 as a basis for the sanctions here, the . . . defendant . . . failed to satisfy the Rule's procedural requirements. Rule 11 motions are governed by carefully wrought procedures designed to 'stress the seriousness of a motion for sanctions.'") (quoting Fed. R. Civ. P. 11 advisory committee's note).

---

Procedure, these LBRs, and/or other controlling authorities" in a memorandum of law supporting any request for relief. P.R. LBR 9013-2(a).

"Section 1927 authorizes the imposition of sanctions against an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously.'" Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 245 (1st Cir. 2010) (quoting 28 U.S.C. § 1927). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927." Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990). Sanctions under section 1927 are not appropriate in response to "[g]arden-variety carelessness or even incompetence, without more." Jensen v. Phillips Screw Co., Jensen v. Phillips Screw Co., 546 F.3d 59, 64 (1st Cir. 2008). "Rather, an attorney's actions must evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." Id. (citation omitted). Additionally, "Article III courts [are] imbued with an array of 'inherent powers' in performing their case-management function." United States v. Kouri-Perez, 187 F.3d 1, 7 (1st Cir. 1999). "These implicit powers include the judicial authority to sanction counsel for litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings." Id.

Here, although Attorney Lamoutte has made several filings that feature substantial amounts of innuendo and invective, the Court is not prepared on the current record to conclude that Attorney Lamoutte is acting in bad faith or that his filings with respect to the instant dispute, while lacking merit, are unreasonable and harassing or annoying. Jensen v. Phillips Screw Co., 546 F.3d at 64 ("Bad faith is not an essential element [for the imposition of sanctions], but a finding of bad faith is usually a telltale indicium of sanctionable conduct."). As the First Circuit has noted, "time-wasting motion[s], filed in good faith but objectively hopeless[,]" are filed "every day," and the routine application of sanctions to such motions

"would tie courts and counsel in knots." Obert v. Republic W. Ins. Co., 398 F.3d 138, 146 (1st Cir. 2005), as revised (Mar. 24, 2005); see Jensen v. Phillips Screw Co., 546 F.3d at 67 ("Given the trial judge's special coign of vantage, common sense suggests that she must be accorded wide latitude in drawing inferences as to when multiplication of the proceedings crosses the line between what is acceptable if tedious and what is unreasonable and vexatious.").

Moreover, although the Court has rejected the legal theories that Attorney Lamoutte has proffered in support of his standing to prosecute the Motion, Attorney Lamoutte's view of his own standing—which rests partially on his interpretation of the First Circuit's decision in Kevlik—was not so unreasonable as to merit sanctions. Notably, although O&B obliquely referred to Kevlik in its response to the Motion, O&B failed to offer any reasoned basis for distinguishing it that would have put Attorney Lamoutte on notice as to the tenability of his view of his own standing. (See O&B Obj. at 13 (stating, with no further explanation, that "even though the First Circuit has ruled that nonclients' attorneys may in limited circumstances have standing to request disqualification of opposing counsel, those circumstances are not present here").) See Model Rules of Prof'l Conduct r. 3.3(a)(2) (stating that counsel is obligated to "disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel").

Accordingly, O&B's request for sanctions is denied in all respects.

CONCLUSION

For the foregoing reasons, the Motion is denied, and O&B's request for sanctions is also denied. This Memorandum Order resolves Docket Entry No. 20873 in Case No. 17-3283.

SO ORDERED.

Dated: November 23, 2022

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge