UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-3283 (LTS) |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO et al., | |
| Debtors.[1] | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA<br>Title III |
| as representative of | Case No. 17-BK-3566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, | |
| Debtor. | |

<u>MEMORANDUM OPINION AND ORDER GRANTING THE MOTION TO ENFORCE THE PLAN</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is *UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief* (Docket Entry No. 21651 in Case No. 17-3283 and Docket Entry No. 1364 in Case No. 17-3566, the "Motion to Enforce the Plan")[2][3] filed by UBS Financial Services Incorporated of Puerto Rico ("UBS"). The Motion to Enforce the Plan seeks to enforce the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico et al.* (Docket Entry No. 19784) (the "Plan") and enjoin Pedro José Nazario Serrano, Joel Rivera Morales, María de Lourdes Gómez Pérez, Héctor Cruz Villanueva, Lourdes Rodríguez, and Luis M. Jordán Rivera, and Juanita Sosa Pérez (collectively, the "ERS Beneficiaries"), and the Employees' Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), from prosecuting certain claims in the pending action captioned *Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura de Puerto Rico v. UBS Financial Services Inc. of Puerto Rico*, Civ. No. KAC-2011-1067 (the "Commonwealth Action"). (Mot. ¶¶ 1, 47.) The Court, which has subject matter jurisdiction of this action pursuant to section 306(a) of PROMESA, 48 U.S.C. § 2166(a), has considered carefully all the parties' submissions,[4] and arguments made in connection with

---

[2] Unless otherwise noted, all references herein to Docket Entry Nos. are references to Case No. 17-2383. PROMESA is codified at 48 U.S.C. § 2101 et seq. References to "PROMESA" section numbers herein are to the uncodified version of the legislation.

[3] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion to Enforce the Plan.

[4] The written submissions comprise the *Consolidated: (1) Reply to Opposition to Motion to Stay and (2) Opposition to Motion to Enforce the Plan of Adjustment* (Docket Entry No. 22175) (the "ERS Ben. Opposition"), filed by the ERS Beneficiaries; *Brief Reply To: Official Committee of Unsecured Creditors Limited Response in Support of UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment [Docket No. 22186] and to Joinder of the Avoidance Actions Trustee to Official Committee of Unsecured Creditors Limited Response in Support of UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment [Docket No. 22187]* (Docket Entry No. 22199) (the "ERS Ben. Joinder Opp."), filed by the ERS Beneficiaries; *Official Committee of Unsecured Creditors*

the Motion to Enforce the Plan. For the following reasons the Motion to Enforce the Plan is granted.

I.

BACKGROUND

A. The Commonwealth Action

On September 29, 2011, the ERS Beneficiaries filed a complaint initiating the Commonwealth Action, which seeks to recover damages from UBS based on its role as financial advisor to ERS in connection with the ERS' issuance of certain pension obligations bonds in 2008. (Mot. ¶ 8.) The ERS Beneficiaries filed three superseding amended complaints. Id. On April 17, 2019, the ERS Beneficiaries and ERS jointly filed a Fourth Amended Complaint. (Mot. Ex. A.) (the "FAC"). The FAC asserts five causes of action: (i) "violation of contractual duties by UBS and UBS Consulting" (FAC ¶¶ 6.1-6.23); (ii) violations of "section 1802 of the Puerto Rico Civil Code /UBS and UBS Consulting" (FAC ¶¶ 7.1-7.2); (iii) "liability of insurer ABC Insurance Company Inc." (FAC ¶¶ 8.1-8.3); (iv) liability of defendant XYZ Insurance Company Inc. (FAC ¶¶ 9.1-9.2); and (v) "costs and expenses of attorney's fees" (FAC ¶¶ 10.1-10.2).

---

*Limited Response in Support of UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment* (Docket Entry No. 22186) (the "UCC Response"), filed by the Official Committee of Unsecured Creditors; *Joinder of the Avoidance Actions Trustee to Official Committee of Unsecured Creditors Limited Response in Support of UBS Financial Services Incorporated of Puerto Rico's Motion to Enforce the Plan of Adjustment* (Docket Entry No. 22187) (the "AA Joinder"), filed by Drivetrain, LLC ("Avoidance Actions Trustee"), in its capacity as the trustee of the Commonwealth Avoidance Actions Trust; *UBS Financial Services Incorporated of Puerto Rico's Reply in Further Support of its Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief* (Docket Entry No. 22274) (the "UBS Reply"); and *Brief Sur-Reply to: UBS Financial Services Incorporated of Puerto Rico's Reply in Further Support of its Motion to Enforce the Plan of Adjustment and for Related Injunctive Relief* (Docket Entry No. 22294) (the "ERS Ben. Sur-Reply").

On September 23, 2022, the ERS Beneficiaries filed a motion to amend the FAC in Commonwealth Court and annexed their proposed amended complaint. (See *UBS Financial Services Incorporated of Puerto Rico's Response to Informative Motion with Respect to the ERS Individual Plaintiff's Opposition at Docket No. 22175* (Docket Entry No. 22399, Ex. A) (the "Proposed New Complaint").)

B. Confirmation of the Plan and the Underwriter Avoidance Action

On January 18, 2022, the Court confirmed the Plan. (See *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, Docket Entry No. 19813 (the "Confirmation Order").)

The Plan became effective on March 15, 2022 (the "Effective Date"). (See *Notice of (A) Entry of Order Confirming Modified Eighth Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et al. Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date*, Docket Entry No. 20349.)

Pursuant to the Plan, upon the Effective Date, Avoidance Actions Trust Assets (as defined in the Plan § 1.108) were transferred to the Avoidance Actions Trust. (Plan § 78.3.) The Avoidance Actions Trust is administered by the Avoidance Actions Trustee. (Plan § 78.4.) The Avoidance Actions Trustee is authorized "to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust" on behalf of the Trust. (Plan § 78.6.) Furthermore, ERS was to be dissolved "on or as soon as practicable subsequent to the Effective Date." (Plan § 88.2.) Upon dissolution of ERS, all remaining assets of ERS were to be transferred to the Commonwealth of Puerto Rico. Id.

On September 15, 2022, the Avoidance Actions Trustee filed the Second Amended Complaint in the Avoidance Action Drivetrain, LLC v. Barclays, et al., Adv. Proc. No. 19-000280-LTS (the "Underwriter Action"). (Docket Entry No. 29 in Adv. Proc. No. 19-280) (the "Underwriter Action Complaint"). UBS is a defendant in the Underwriter Action. (Id. ¶ 4.)

II.

DISCUSSION

A. Jurisdiction

Section 306(a)(2) of PROMESA confers on the district court "original but not exclusive jurisdiction of all civil proceedings arising under this subchapter, or arising in or related to cases this subchapter." 48 U.S.C.A. § 2166(a)(2) (Westlaw through P.L. 117-24). The jurisdictional language of section 306(a)(2) is analogous to that of the bankruptcy jurisdiction statute, 28 U.S.C.A. § 1334(b).

The First Circuit has recognized that "related to" jurisdiction exists when the outcome of a proceeding "potentially ha[s] some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 663 (1st Cir. 2017) (quoting Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)). Additionally, "[m]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the plan' remain in the bankruptcy court's jurisdiction post-confirmation." In re Brown, No. 21-11284-GAO, 2022 WL 1200783 *3 (Bankr. D. Mass. Apr. 22, 2022) (quoting In re Resorts Int'l, Inc., 372 F.3d 154, 167 (3d Cir. 2004)).

Here, UBS seeks to enforce the Plan and enjoin ERS and the ERS Beneficiaries from prosecuting certain claims against UBS in the Commonwealth Action. (Mot. ¶¶ 1, 47.) Pursuant to section 91.1(g) of the Plan, the Court retains jurisdiction to resolve certain disputes arising under the Plan. Section 91.1(g) provides:

> (g) To resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, Definitive Documents or any other contract, instrument, security, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents. (Plan § 91.1(g).)

The dispute underlying the Motion to Enforce the Plan is whether the ERS Beneficiaries, as individual plaintiffs, are entitled to recover additional monies—beyond the bargained-for treatment of their ERS pension benefit rights that is incorporated in the Plan—through the Commonwealth Action, either for themselves directly or for the benefit of the now-defunct ERS. These issues are related to the administration and execution of the Plan. Thus, this Court retains jurisdiction to resolve this dispute concerning the interpretation and enforcement of the Plan and the confirmation order.

With respect to the merits of UBS' request for an order enjoining further prosecution of Commonwealth Action pursuant to sections 78 and 91.1 of the Plan, the Court will first consider the nature of the claims asserted by the ERS Beneficiaries in the Commonwealth Action. Next, the court will assess the relevant provisions of the Plan. Finally, the Court will weigh whether the continued prosecution of the Commonwealth Action frustrates the purpose of the Plan, infringes on the authority of the Avoidance Actions Trustee, and otherwise disrupts certain settlements and agreements incorporated in the Plan.

B. Derivative Claims Asserted in the Commonwealth Action

In analyzing whether the Court should exercise jurisdiction to enjoin the prosecution of the Commonwealth Action, the Court must first address whether the claims asserted in the Commonwealth Action are direct claims based on an injury sustained by the individual ERS Beneficiaries or derivative claims based on an injury sustained by ERS. Courts have found that consideration of "whether a suit seeks to impose derivative liability a helpful way to assess whether it has the potential to affect the bankruptcy *res* . . . [. T]he touchstone for bankruptcy jurisdiction remains 'whether its outcome might have any 'conceivable effect' on the bankruptcy estate.[5]'" Quigley Co. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.), 676 F.3d 45, 57 (2d Cir.2012) (citing In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir.1992). Here, the Court considers whether the claims asserted by the ERS Beneficiaries would alter the rights of the Commonwealth, the Avoidance Actions Trustee, or other creditors; redirect Avoidance Actions Trust Assets, or otherwise limit the distribution of assets from the estate.

"In assessing whether a claim is derivative, we inquire into the factual origins of the injury and, more importantly, into the nature of the legal claims asserted." Marshall v. Picard (In re Bernard L. Madoff Inv. Sec. LLC), 740 F.3d 81, 89 (2d Cir. 2014) ("Madoff II").

---

[5] Section 301(c)(5) of PROMESA provides that the term "property of the estate," when used in incorporated provisions of the Bankruptcy Code, means property of a Title III debtor. 48 U.S.C. § 2161(c)(5); see Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 340, 349 (1st Cir. 2019) ("PROMESA and the municipal bankruptcy code instruct that we replace all instances of 'property of the estate' that appear in the incorporated provisions of the bankruptcy code with 'property of the debtor.'" (citation omitted)). In Madoff II, the Court considered whether the prosecution of plaintiffs' derivative claims caused harm to the "property of estate" in the context of section 541 of the Bankruptcy Code. Section 541 of the Bankruptcy Code was not incorporated in PROMESA. See 48 U.S.C. § 2161(a). The Court's analysis here focuses on harm to the debtor.

Derivative claims in the bankruptcy context are those "that arise from harm done to the estate" and that "seek . . . relief against third parties that pushed the debtor into bankruptcy." Id. An alleged derivative injury is "a secondary effect from harm done to [the debtor]." St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 704 (2d Cir. 1989).

The ERS Beneficiaries' asserted injury is diminution of the pension benefits they expected to be able to receive from ERS. (ERS Ben. Joinder ¶ 6.) ERS promised to pay certain pension benefits to individual employees who elected to participate in the pension system administered by ERS. The causes of action asserted by the ERS Beneficiaries in the FAC and the Proposed New Complaint are general negligence and other breach of duty claims against UBS arising from its role as an underwriter and/or investment advisor to ERS. The ERS Beneficiaries allege that UBS' wrongdoing caused "multi-million dollar damage" to ERS and "damages" of an unspecified nature to the Beneficiaries. (See generally Mot. Ex. A.)

The FAC is devoid of any allegations of direct contact between UBS and the ERS Beneficiaries, individually, or of any specific effect of UBS' allegedly wrongful conduct toward ERS on the ERS Beneficiaries' pension benefits. Rather, the FAC asserts four causes of action arising from contractual relations between UBS and ERS. (Mot. Ex. A, FAC ¶¶ 6.1, 7.1, 8.3, and 9.2.) Thus, the ERS Beneficiaries' asserted claims to recover for—or "on the basis of"—an injury incurred by ERS are derivative of ERS' right to recover on its own behalf.

If a claim is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." St. Paul, 884 F.2d at 701. As in St. Paul, the ERS Beneficiaries only articulate a generalized injury—anticipated diminution of retirement benefits as a result of ERS' financial condition. (ERS Ben.

Opp. ¶ 23; ERS Ben. Joinder ¶ 5.)  During oral argument, counsel for the ERS Beneficiaries noted "[The ERS Beneficiaries] are [. . .] not going to have the pensions they use[d] to have. Those pensions have been reduced benefits." (See September 28, 2022, Hr'g Tr. 93:6-8; Docket Entry No. 22417.)  Such an injury is common to all ERS retirees receiving pensions.

The ERS Beneficiaries argue that the FAC asserts non-derivative general tort claims against UBS based on UBS' alleged breach of contractual obligations and fiduciary duties owed to ERS.  (ERS Ben. Opp. ¶ 23.)  The ERS Beneficiaries ground this argument in three Puerto Rico statutes: Article 1802 (31 L.P.R.A. § 5141), Act No. 3-2013 (3 L.P.R.A. § 786-1), and Article 517 of Act No. 53-2021.

Article 1802, Puerto Rico's general tort statute, provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  31 L.P.R.A. § 5141.  The second cause of action in the FAC asserts claims for violations of "section 1802 of the Puerto Rico Civil Code /UBS and UBS Consulting." (FAC ¶¶ 7.1-7.2)  Specifically, the FAC alleges "gross[] negligen[ce] and illicit conduct of UBS and UBS Consulting . . . while providing the services they were required to render to [ERS] and the breach by such defendants of their contractual, non-contractual and fiduciary duties to the [ERS] caus[ing] the [ERS] multi-million dollar damages." (FAC ¶ 7.2.)  Thus, the tort claim asserted in the FAC is, on its face, derived from contractual relations between UBS and ERS that allegedly resulted in harm to ERS.  Any purported injury sustained by the ERS Beneficiaries was a secondary harm.  See St. Paul, 884 F.2d at 704.

The ERS Beneficiaries cite Act No. 3-2013 as an independent foundation for direct claims against UBS.  The parties agree that Act No. 3-2013 allows ERS, ERS participants, and ERS pensioners to sue underwriters in connection with ERS' issuance of pension obligation

bonds. (Mot. ¶ 5.) (ERS Ben. Opp. ¶¶ 7, 17.) Act No. 3-2013, which was enacted several years before the 2017 filing of the Title III Petition and consummation of the Plan in 2022, provides:

> Cause for action is hereby recognized to the participants and pensioners of the Employees Retirement System of the Government of Puerto Rico and the Judiciary to sue, pro se, nongovernment investment advisers and underwriters in any transaction in which pension obligation bonds have been issued by the Employees Retirement System of the Government of Puerto Rico and the Judiciary, for damages caused to the System or its beneficiaries. (3 L.P.R.A. §§ 786-1, et seq.)

While the FAC alleges that ERS was damaged by the actions of UBS, it alleges no facts identifying any damage to the ERS Beneficiaries apart from the alleged weakening of ERS' financial condition, which diminished ERS' ability to fulfil its benefit payment obligations. The ERS Beneficiaries' claim for benefits was a claim against ERS, and has been restructured through the consummated Plan by the substitution of a new obligor (the Commonwealth of Puerto Rico) and a new dedicated funding source (the Pension Reserve Trust) for ERS and the assets of ERS. To the extent Act No. 3-2013 granted a cause of action to recoup damages suffered by ERS or by ERS plan participants or pension beneficiaries by reason of an underwriter's business dealings with UBS, the cause of action was derivative of ERS' claims. As a result of the confirmation and consummation of the Plan, which protects the ERS Beneficiaries' accrued pension benefits and, as part of the series of settlements and compromises inherent in such a plan, transfers ERS' assets, including its claims against UBS, the ERS Beneficiaries are no longer in a position to assert claims on ERS' behalf under Act 3-2013. Indeed, the Plan redeploys any potential proceeds of litigation against UBS to support recoveries for other creditors. The Commonwealth Action thus seeks to recover assets that, under the confirmed Plan, neither belong to ERS nor are resources designated to cover ERS' former obligations to the ERS Beneficiaries.

Article 517 of Act No. 53-2021 provides that "[a]djustment Plan transactions cannot be used to mitigate causes of action under Act No. 3-2013, as amended." The ERS Beneficiaries argue Article 517 of Act No. 53-2021 protects the ERS Beneficiaries' right to prosecute any action and recover damages against UBS, notwithstanding the reorganization of ERS under the terms of the Plan. (ERS Ben. Opp. ¶¶ 7, 17.) The Court rejects the argument that Article 517 of Act No. 53-2021 precludes the Plan from nullifying the ERS Beneficiaries' right to prosecute the Commonwealth Action under Act No. 3-2013. This Court has held that "[o]bligations arising from Commonwealth statutes, including statutes providing employees the right to accrue pension or other retirement benefits, give rise to claims which can be impaired and discharged pursuant to the Plan." (FFCL ¶ 153 (citing 11 U.S.C. § 101(5)(A); Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35-36 (1st Cir. 2009); In re Fin. Oversight & Mgmt. Bd. for P.R., 635 B.R. 201, 212–14 (D.P.R. 2021)).) As explained above, the Plan resolves the ERS Beneficiaries' claims for pension benefits and thus precludes the claims they seek to pursue through the Commonwealth Action.

The ERS Beneficiaries' claims in the Commonwealth Action are predicated solely upon secondary harms flowing from UBS' contractual relationship with ERS. Even if the financial distress that led to the Plan's reduction of future benefits was a causal factor in ERS' demise, the causal chain to the injuries claimed by the ERS Beneficiaries is quite indirect and, by definition, starts with injuries inflicted on ERS, not its beneficiaries. The primary injury (if any) was sustained by ERS. The Puerto Rico statutes cited by the ERS Beneficiaries do not in and of themselves elevate a derivative claim to a direct claim.

  C.  <u>Enforcement of the Plan</u>

    In confirming the Plan, the Court noted that "[t]he Plan eliminates any reduction in accrued pensions and certain other retiree benefits for retired and active [ERS] employees and provides for the creation of the Pension Reserve Trust . . . ." (FFCL ¶ 131.) (<u>See</u> also Plan §§ 1.389, 83.2.) The Pension Reserve Trust has clearly defined contribution terms and is managed by an independent entity. (<u>See</u> FFCL ¶ 198; <u>see</u> also Plan §§ 83.1-83.4.) The ERS Beneficiaries do not dispute that their accrued benefits are protected by the Plan or that they are beneficiaries of the Pension Reserve Trust. Rather, the ERS Beneficiaries seek to recover additional monies through the Commonwealth Action based on UBS' business dealings with ERS.

    The Plan calls for the dissolution of ERS "on or as soon as practicable subsequent to the Effective Date." (Plan § 88.2.) The Avoidance Actions Trust Assets were to be transferred to the Avoidance Action Trust (or the Commonwealth) on or soon after the Effective Date. (Plan § 78.3). Pursuant to the Plan, the Avoidance Actions Trust is administered by the Avoidance Actions Trustee. (Plan § 78.4.)

    The Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "SCC"), and the Official Committee of Unsecured Creditors of the Debtors (except the Puerto Rico Public Buildings Authority and the Puerto Rico Sales Tax Financing Corporation) (the "UCC"), commenced the Underwriter Action on behalf of ERS in 2019, prior to the confirmation of ERS' Plan of Adjustment. (<u>See</u> Docket Entry No. 1 in Adv. Proc. No. 19-280.)

    Upon joint application by the Avoidance Actions Trustee, the SCC, and the UCC following confirmation of the Plans of ERS and the Commonwealth, the Court discharged the SCC and the UCC of further responsibility in the Underwriter Action and substituted the

Avoidance Actions Trustee as Plaintiff. (See Docket Entry Nos. 34 and 39 in Adv. Proc. No. 19-280.)

The Second Amended Complaint in the Underwriter Action asserts various causes of action against UBS arising from UBS' role as an underwriter and investment advisor to ERS in connection with the 2008 bond issuance. (See generally Underwriter Action Complaint.)

The Avoidance Actions Trustee is authorized "to investigate, prosecute, settle and/or abandon rights, Causes of Action, or litigation of the Avoidance Actions Trust" on behalf of the Trust. (Plan § 78.6.) The trust accumulates assets for the benefit of general creditors, not for the benefit of ERS pensioners. (See generally Plan §§ 78.1-78.15.)

In sum, the ERS Beneficiaries have rights under the Plan and their claims against ERS have been discharged. The ERS Beneficiaries are bound by their treatment under the Plan. The Plan also provides a future payment structure for the ERS Beneficiaries through the Pension Reserve Trust. Separately, the Plan provides the Avoidance Actions Trustee with exclusive authority to prosecute claims and recover monetary awards for the benefit of the Avoidance Actions Trust beneficiaries. The Avoidance Action Trustee is now pursuing ERS' claims against UBS and other Underwriters on behalf of the Avoidance Actions Trust.

Section 105(a) of the Bankruptcy Code, as incorporated by section 301(a) of PROMESA, recognizes the Court's authority to issue any order that is necessary or appropriate to carry out the provisions of PROMESA. 11 U.S.C. § 105(a); 48 U.S.C. § 2161(a). UBS, the UCC, and the Avoidance Actions Trustee urge the Court to enjoin the prosecution of the Commonwealth Action because the action infringes on the authority of the Avoidance Actions Trustee and disrupts certain settlements and agreements incorporated in the Plan.

Continued parallel litigation of derivative claims by the ERS Beneficiaries will infringe on the Avoidance Actions Trustee's ability to exercise litigation control and resolve the Underwriter Action, for the benefit of creditors other than the pension beneficiaries. These considerations, collectively, weigh in favor of the Court exercising its authority under section 105(a) of the Bankruptcy Code to enforce the Plan and enjoin the prosecution of the Commonwealth Action insofar as the ERS Beneficiaries seek to prosecute claims against UBS based on its business dealings with ERS.

### III.

### CONCLUSION

For the foregoing reasons, the Motion to Enforce the Plan is granted. The ERS Beneficiaries are hereby enjoined from prosecuting the Commonwealth Action insofar as the ERS Beneficiaries assert claims against UBS that are based in any way on its business dealings with ERS. This Memorandum Opinion resolves Docket Entry No. 21651 in Case No. 17-3283 and Docket Entry No. 1364 in Case No. 17-3566.

SO ORDERED.

Dated: November 29, 2022

        /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge