**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
             Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT**
**BOARD IN CONNECTION WITH DECEMBER 14–15, 2022 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

      The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways

and Transportation Authority ("HTA"), the Employees Retirement System of the Government of

the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority

("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the

Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight

and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative

of the Debtors pursuant to Section 315(b) of the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the December 14–15, 2022 omnibus hearing and in response to this Court's order, dated November

23, 2022 [Case No. 17-BK-03283, ECF No. 22907].

I.      **General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1.      The Oversight Board and the Government of Puerto Rico (the "Government")

continue to collaborate to protect the health and welfare of the people of Puerto Rico from the

COVID-19 virus and to utilize effectively federal funding related to the COVID-19 pandemic.

*HTA Plan of Adjustment*

2.      The Oversight Board remains focused on achieving its mandates under PROMESA

so that fiscal responsibility, access to capital markets, and economic prosperity and growth can

return to Puerto Rico.  To those ends, the Oversight Board proposed the Fifth Amended Title III

Plan of Adjustment of the Puerto Rico Highways and Transportation Authority [Case No. 17-BK-

03567, ECF No. 1377] (as amended, supplemented, or modified, the "HTA Plan of Adjustment")

for confirmation pursuant to Title III of PROMESA.  On October 12, 2022, the Court confirmed

the HTA Plan of Adjustment (the "HTA Confirmation Order").

*Appeals from the HTA Confirmation Order*

3.      On October 24, 2022, the plaintiffs in *Vazquez Velazquez v. P.R. Highways &*

*Transp. Auth.* [Case No. 21-1739, Docket Entry No. 1287] (the "Vazquez Velazquez Objection,"

and an objector to the HTA Plan of Adjustment, the "Vazquez Velazquez Group") filed a notice

of appeal to the United States Court of Appeals for the First Circuit (the "First Circuit") [Case No.

17-BK-03567, ECF No. 1423].  The Vazquez Velazquez Group argues that their asserted claims

were improperly classified in Class 16 (HTA General Unsecured Claims) and that the HTA Plan

of Adjustment should be amended to have their asserted claims placed into a separate class of

nondischargeable claims.  In confirming the HTA Plan of Adjustment, the Court overruled the

Vazquez Velazquez Objection, holding the Vazquez Velazquez Group's claims, which arise from litigation concerning a discontinued HTA compensation program, are not exempt from discharge, and thus are not "substantially dissimilar" to the other general unsecured claims in the class.  *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Fifth Amended File III Plan of Adjustment of the Puerto Rico Highways and Transportation Authority* [Case No. 17-BK-03567, ECF No. 1416], ¶ 114 n.14.  The Vazquez Velazquez Group also concurrently filed a motion to stay confirmation of the HTA Plan of Adjustment pending appeal [Case No. 17-BK-03567, ECF No. 1424].

4.      In accordance with the Court's briefing order [Case No. 17-BK-03567, ECF No. 1425], on October 28, 2022, the Oversight Board and certain monoline insurers filed their oppositions to the Vazquez Velazquez Group's motion to stay the effectiveness of the HTA Confirmation Order and the consummation of the HTA Plan of Adjustment [Case No. 17-BK-03567, ECF Nos. 1432, 1434].  Similarly, on October 31, 2022, the Vazquez Velazquez Group filed a reply in support of its motion [Case No. 17-BK-03567, ECF No. 1435].

5.      On November 15, 2022, the Court denied the Vazquez Velazquez Group's motion to stay confirmation of the HTA Plan pending appeal.  [Case No. 17-BK-03567, ECF No. 22867]. On November 21, 2022, after failing to obtain a stay pending appeal from this Court, the Vazquez Velazquez Group filed a motion to stay confirmation of the HTA Plan of Adjustment pending appeal with the First Circuit [Case No. 22-1829, Doc. 00117945812].  Following briefing on the issue, the Vazquez Velazquez Group filed a withdrawal of its request for a stay pending appeal. On November 30, 2022, the First Circuit granted the Vazquez Velazquez Group's request to withdraw their motion for a stay pending appeal [Case No. 22-1829, Doc. 00117949042].  Briefing with respect to the merits of the Vazquez Velazquez appeal continues.

### *HTA Budget*

6.　　The Oversight Board remains focused on developing and certifying budgets for the fiscal year 2023.  On October 22, 2022, the Oversight Board certified an amended fiscal 2023 budget for HTA.  The amended HTA budget includes a new section establishing that the funds allocated under the "Reserve Deposits for POA" are to be kept in an interest-bearing account, separate from all other accounts currently in use by HTA, with that account funded in compliance with the requirements set forth in the HTA Plan of Adjustment and new HTA bonds indenture and is to be used for the sole purpose of meeting the obligations specified in the HTA Plan of Adjustment and bonds indenture.  On December 2, 2022, in anticipation of the HTA Effective Date, the Oversight Board certified a further amended fiscal 2023 budget for HTA with limited revisions reflecting incremental reserve and escrow account funding in accordance with the HTA Plan of Adjustment.

7.　　On December 6, 2022, the HTA Plan of Adjustment became effective.  The transactions therein significantly lessen HTA's debt burden by reducing HTA's funded debt by seventy-five percent (75%), from approximately $6.4 billion to $1.245 billion senior and $359 million subordinate HTA toll road-supported debt.  The consummation of the HTA Plan of Adjustment represents a significant achievement in advancing Puerto Rico's public policy objective to attain fiscal responsibility and to access the capital markets, and will promote better and safer roads across Puerto Rico and more efficient commerce.

### *PREPA*

8.　　On December 1 and 9, 2022, the Court extended the deadline for PREPA to propose a Title III plan of adjustment, based on requests indicating the extensions might facilitate more progress in mediation without a proposed plan on file.  As publicly reported, during the mediation, the holders of the fuel line claims in a class aggregating over $800 million came to terms with

PREPA to be a second impaired accepting class.  The Oversight Board hopes progress will continue to be made in mediation regardless of whether it must file a proposed plan before all issues are consensually resolved.  Significantly, the extension of plan deadlines has not impacted the pending litigation.  Pursuant to the Court's scheduling order of September 29, 2022 [Case No. 17-BK-03283, ECF No. 22410], reply briefs are due December 13, 2022 (today) and intervenors' supplemental briefs are due December 20, 2022.  That concludes all scheduled briefing before the Court determines whether and when to schedule oral argument or further briefing or discovery. The Oversight Board hopes settlements will eliminate the need for the Court to rule, but believes the current litigation schedule helps assure the confirmation hearing can be held and concluded in July 2023 and PREPA will be successfully reorganized.

### Recent First Circuit Decisions

9.       On May 17, 2022, the First Circuit, in *Centro De Periodismo Investigativo, Inc. v. Financial Oversight And Management Board For Puerto Rico* [Case No. 21-1301, Doc. 00117876976], held (two to one) that Congress, through PROMESA section 106, abrogated the Oversight Board's sovereign immunity from being sued in federal court on a Commonwealth claim.  The Oversight Board filed a petition for rehearing *en banc* [Case No. 21-1301, Doc. 00117882073], which was denied two to one on June 7, 2022 [Case No. 21-1301, Doc. 00117884913].  The only two judges in regular service who were not on the panel that decided the case turned out to be recused from voting on the rehearing.  On June 14, 2022, the Oversight Board filed a motion requesting that the First Circuit stay the mandate, as the Oversight Board planned to file a petition for a writ *certiorari* to the United States Supreme Court seeking review of the First Circuit's decision.  On June 21, 2022, the First Circuit granted a stay of the mandate pending U.S. Supreme Court review if the Oversight Board filed its petition for a writ of *certiorari* on or before July 20, 2022.  On July 20, 2022, pursuant to the First Circuit's order, the Oversight Board

petitioned the Supreme Court for a writ of *certiorari* to review the First Circuit's decision. On October 3, 2022, the Supreme Court granted the Oversight Board's petition for a writ of *certiorari*. Accordingly, the action in the District Court remains stayed pending the Supreme Court's review. The oral argument is scheduled for January 11, 2023.

10.     On February 17, 2022, the Oversight Board appealed the portion of the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [Case No. 17-BK-03283, ECF No. 19813] (the "Commonwealth Confirmation Order"), and the corresponding findings of fact and conclusions of law, holding that the Takings Clause of the Fifth Amendment prohibits the impairment or discharge in bankruptcy of prepetition unsecured claims for just compensation for takings. On July 18, 2022, the First Circuit, in *Financial Oversight & Management Board for Puerto Rico v. Cooperative de Ahorro y Credito Abraham Rosa* [Case No. 22-1119, Doc. 00117899244], affirmed the Commonwealth Confirmation Order and the corresponding findings of fact and conclusions of law.

11.     On October 17, 2022, the Oversight Board petitioned the Supreme Court for a writ of *certiorari* to review the First Circuit's decision. The petition highlights three primary reasons for granting review. First, it argues the First Circuit's decision creates a circuit split on the dischargeability of unsecured just-compensation claims under the Fifth Amendment, which is an issue of "exceptional importance." Second, it argues the First Circuit's decision is inconsistent with two lines of constitutional precedent involving the Takings Clause and the bankruptcy power. The petition explains the First Circuit erroneously held the Fifth Amendment conflicts with the bankruptcy power, as opposed to the Fifth Amendment creating a claim before bankruptcy and the

bankruptcy power restructuring and discharging it.   Third, it argues the dischargeability of unsecured claims for just compensation has "enormous" financial implications for municipalities seeking to restructure debt.  The Supreme Court granted an extension to December 13, 2022 for respondents to respond to the Oversight Board's petition.  Subsequently, the Solicitor General of the United States requested the Oversight Board to consent to a further extension and the parties orally agreed to a short extension.

## II.   General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

### *PFC QM*

12.    The Oversight Board, AAFAF, and PFC Bond Trustee have been working collaboratively on the Puerto Rico Public Finance Corporation's Title VI case.  Solicitation of the *Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* (the "PFC QM") concluded on November 21, 2022, and eligible voters holding (i) over seventy-three percent (73%) of the outstanding principal of all PFC Bonds (*i.e.*, $798,726,000 of $1,090,740,000 in principal amount) voted to approve the PFC QM, and (ii) over ninety-three percent (93%) of the outstanding principal amount of PFC Bonds that voted to approve or reject the PFC QM voted to approve the PFC QM.  *See Declaration of Christina Pullo of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Votes Cast on Qualifying Modification Pursuant to PROMESA Title VI for the Puerto Rico Public Finance Corporation* [Case No. 22-01517, ECF No. 33].  A hearing to consider approval of the PFC QM is scheduled to begin immediately upon the conclusion of the December 14, 2022 Omnibus Hearing.  Pursuant to a joint stipulation approved on December 1, 2022 [Case No. 22-01517, ECF No. 32], the Oversight Board, with the assent of AAFAF, and Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for the holders of bonds issued by the GDB Debt Recovery Authority,

have agreed to proceed with the determination of whether DRA Bonds may be issued as contemplated by the PFC QM on a different schedule. Pursuant to Section 9.2 of the PFC QM, this alternative schedule will not delay the Court's approval of the PFC QM or, in the event of such approval, the effective date of the PFC QM.

### *Legislation*

13.     The Oversight Board's relationship with the Government continues to be collaborative and the Oversight Board is working closely with Puerto Rico Governor Pedro R. Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board, which affords more opportunity for direct interactions, and sharing of viewpoints and insights on important issues. The Governor and Oversight Board, however, continue to disagree on various pieces of significant legislation.

#### Act 41

14.     The Oversight Board is committed to ensuring the Government's compliance with PROMESA in proposing and enacting legislation because the Oversight Board's statutory mission cannot be carried out when legislation impedes PROMESA's purposes. On June 20, 2022, the Government enacted Act 41-2022 ("Act 41"), formerly known as House Bill 1244, which is inconsistent with the Commonwealth's certified fiscal plan ("Commonwealth Fiscal Plan") and impairs or defeats PROMESA's purposes. In short, Act 41 reestablishes many of the burdensome labor restrictions existing before enactment of Act 4-2017, and will hinder Puerto Rico's economic growth and job creation by, among other things, reintroducing the presumption that employee dismissals are unjustified, increasing sick and vacation day accrual rates, and easing eligibility requirements for Christmas bonuses. The Oversight Board had previously advised the

8

Government the enactment, implementation, and enforcement of House Bill 1244 was barred by PROMESA § 108(a)(2). Nevertheless, the Governor proceeded to sign the law notwithstanding PROMESA § 108(a)(2), knowing its implementation could not be stopped as its provisions are enforced by private parties, not the Government. This was done notwithstanding the terms of PROMESA § 108(a)(2) barring the Governor from enacting statutes the Oversight Board has determined impair or defeat PROMESA's purposes. Thereafter, on June 29, 2022, the Government made a submission regarding Act 41 pursuant to PROMESA § 204(a). As the Oversight Board informed the Government on July 19, 2022, the submission was deficient in numerous respects, in that it failed to provide a formal estimate of the law's impact on Commonwealth expenditures for the correct fiscal years (it provided an estimate (defective) for the prior fiscal plan year) and did not include a certification that the law is or is not significantly inconsistent with the certified fiscal plan. Despite extensive correspondence, on August 1, 2022, Governor Pierluisi rejected the Oversight Board's proposed consent order suspending Act 41 to enable the parties to avoid litigation. On September 1, 2022, the Oversight Board filed an adversary proceeding seeking declarative and injunctive relief pursuant to PROMESA to nullify and enjoin Act 41. *See* Adv. Proc. No. 22-00063 [ECF No. 1]. Pursuant to the parties' agreement and the Court's September 9, 2022 order, the Governor filed an answer to the Oversight Board's complaint on September 15, 2022. On September 14, 2022, the Court issued an order setting an expedited summary judgment briefing schedule. Pursuant to that order, the Oversight Board filed a motion for summary judgment and the Governor filed a motion for judgment on the pleadings on September 29, 2022. The Governor and the Speaker of the Puerto Rico House of Representatives (the "Speaker")[2] filed oppositions to the Oversight Board's motion for summary

---

[2] On October 5, 2022, the Court issued an order granting the Speaker's motion to intervene in the adversary proceeding.

judgment, and the Oversight Board filed an opposition to the Governor's motion for judgment on

the pleadings.  On October 21, 2022, the parties filed replies in support of their respective motions.[3]

Senate Bill 552

15.    On November 15, 2022, the Puerto Rico Senate and the Puerto Rico House of

Representatives voted to enact Senate Bill 552 ("SB 552"), which is inconsistent with the

Commonwealth Fiscal Plan.  SB 552, among other things, amends Act 60-2019, known as the

"Puerto Rico Incentives Code," to increase the current cap on certain film industry tax incentives

from $38 million to $100 million per year.  The Commonwealth Fiscal Plan requires that "any tax

reform or tax law initiative that the Government undertakes or pursues during a year within the

2022 Fiscal Plan period must be revenue neutral, that is, all tax reductions must be accompanied

by specific, offsetting revenue measures of the same amount identified in the enabling legislation."

*See* Certified Commonwealth Fiscal Plan at 299.  The Oversight Board has found no evidence

indicating the incremental tax incentives would attract additional film-making sufficient to create

revenues and taxes to offset the cost of SB 552.  Indeed, the current tax incentives for film

production in Puerto Rico—capped at $38 million—are not revenue neutral, costing the

Commonwealth approximately $23 million annually.  SB 552 would reduce Commonwealth

revenues and does not identify offsets from spending reductions and/or revenue increases to

address the current $23 million shortfall or the increased shortfall created by SB 552 in violation

of the Commonwealth Fiscal Plan.  On April 1, 2022, the Oversight Board sent a letter to Senator

Zaragoza Gómez informing the Legislature that the then-current version of SB 552 was

inconsistent with the Commonwealth Fiscal Plan because it failed to include sufficient offsetting

---

[3] The Speaker filed a motion to join in the Governor's motion for judgment on the pleadings, and filed a reply in
support of that motion on October 20, 2022.

revenues or expenditure reductions.  Notwithstanding the Oversight Board's letter, the Legislature amended SB 552 to remove the few offsets previously included.  On December 8, 2022, the Oversight Board sent a letter to the Governor reiterating its concerns about SB 552 and its conclusion that the bill is inconsistent with the Commonwealth Fiscal Plan and violates PROMESA.  The Legislature is arranging to send SB 552 to the Governor of Puerto Rico for consideration.  The Oversight Board will take appropriate action.

Act 80

16.    On July 21, 2022, the Oversight Board and AAFAF reached an agreement on a path for the partial implementation of Act 80-2020, which agreement would allow implementation of the early retirement program contemplated under the law for certain non-essential employees.  The Oversight Board and the Government continue to work together to implement the agreement reached in July 2022.

Senate Bill 465

17.    Senate Bill 465 ("SB 465")[4], among other things, establishes the Puerto Rico Guards Reserve to be comprised of former PREPA line guards currently working in other Commonwealth functions, and makes them available to be called up to act as guards by PREPA for any reason or no reason.  When called up, the Commonwealth would continue to pay them unless they become PREPA employees, but would not have them available for their current functions.  SB 465 conflicts with the certified Commonwealth and PREPA fiscal plans by expanding PREPA's role in day-to-day operations, interfering with the transition of PREPA's grid assets to private operators, and driving up labor costs for Commonwealth agencies.  The Oversight Board will take appropriate action.

---

[4] The Oversight Board understands SB 465 has passed the legislature and is to be sent to the Governor.

Five Laws Litigation

18.    On June 12, 2020, the Governor and AAFAF filed adversary complaints seeking declaratory judgments that Acts 82, 138, 176, and 181 of 2019 and Act 47 of 2020 satisfied PROMESA's requirements.  *See* Adv. Proc. Nos. 20-00080 [ECF No. 1], 20-00081 [ECF No. 1], 20-00082 [ECF No. 1], 20-00083 [ECF No. 1], 20-00084 [ECF No. 1], 20-00085 [ECF No. 1].  In short, Act 47 expanded the group of health professionals eligible for tax benefits under the Puerto Rico Incentives Code, reducing revenues without any offsetting cost savings.  Act 82 prevented Pharmacy Benefit Managers from controlling the cost of prescription medications.  Act 138 forced public health insurance companies such as MCOs to accept into their networks all medical providers regardless of price.  Act 176 increased the accrual rate for vacation days and sick days for public employees.  Act 181 provided for a salary increase to firefighters amounting to almost $3 million per year.

19.    On July 17, 2020, the Oversight Board filed answers and counterclaims seeking to nullify and enjoin the five Acts including on the grounds that the Acts impaired and defeated the purposes of PROMESA because they were not revenue neutral and undermined the Government's ability to control certain costs.  The Oversight Board moved for summary judgment and the Title III Court granted the motion, entering an order enjoining future implementation of the Acts.  With respect to Act 181, which increased the salaries of firefighters, the parties agreed that to the extent revenues from tax on insurance premiums and certain safety inspections covered the cost, the Oversight Board would have no further objection to the Act.  The Government appealed the Court's ruling on the remaining four laws.

20.    On June 22, 2022, the First Circuit affirmed the Title III Court's ruling enjoining Acts 47, 82, 138 and 176.  On November 18, 2022, the Government filed a petition for a writ of

*certiorari* with the Supreme Court of the United States. The laws remain enjoined pending resolution of any further appeals before the Supreme Court.

House Joint Resolution 249

21.     House Joint Resolution 249 ("HJR 249"),[5] among other things: (i) requires the Puerto Rico Aqueduct and Sewer Authority ("PRASA"), LUMA Energy LLC ("LUMA"), and PREPA to establish a "voluntary" twelve-month moratorium on payments and rate increases for water and electricity services; (ii) forbids PRASA, LUMA, and PREPA from collecting surcharges and penalties or suspending services for failure to pay electricity and water bills due to the COVID-19 health emergency; and (iii) prohibits HTA from increasing tolls on the Island for twelve months from the enactment of HJR 249. HJR 249 violates PROMESA and the certified fiscal plans of PRASA, HTA, and PREPA by, among other things: (i) depriving PREPA and PRASA of the ability to increase rates and collect revenues; (ii) interfering with PREB's authority as an independent regulator; and (iii) depriving HTA of revenue and interfering with the authority of HTA to set rates. On November 15, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 249 violates the certified fiscal plans for HTA, PRASA, and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 249 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HJR 249.

Senate Joint Resolution 327

22.     Senate Joint Resolution 327 ("SJR 327"),[6] among other things, would require the Puerto Rico Energy Bureau of the Puerto Rico Public Service Regulatory Board to submit to the legislature, within 20 days of SJR 327's enactment, "a detailed report of the compliance metrics

---

[5] The Oversight Board understands HJR 249 has passed the legislature and is under consideration by the Governor.
[6] The Oversight Board understands SJR 327 has passed the legislature and is being arranged to be sent to the Governor.

adopted to measure the proper execution of the contract awarded to LUMA" and sets out parameters and metrics of "additional compliance that should be required from a new operator in the face of the possible cancellation of the contract" with LUMA.  SJR 327 undermines efforts to transform PREPA and interferes with the LUMA contract—an essential part of the certified PREPA Fiscal Plan ("PREPA Fiscal Plan") requirements regarding the transition of PREPA's transmission and distribution ("T&D") and generation assets to private operators.  On November 12, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that SJR 327 violates the PREPA Fiscal Plan; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that SJR 327 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing SJR 327.

House Joint Resolution 315

23.     House Joint Resolution 315 ("HJR 315"),[7] among other things, (i) purports to require the termination of the Operation and Management Agreement ("OMA") between PREPA and LUMA within sixty days of the HJR 315's enactment for supposed breaches of contract by LUMA and its subsidiaries, and (ii) purports to order PREPA to administer the OMA during the sixty day transitionary period and subsequently take control of PREPA's T&D operations.  As clearly stated in the PREPA Fiscal Plan, LUMA's continued operation of PREPA's T&D system is required and is critical to the success of the fiscal plans and Puerto Rico's energy future.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 315 violates the certified fiscal plans for the Commonwealth and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 315 impairs

---

[7] The Oversight Board understands HJR 315 has passed the legislature and is under consideration by the Governor.

or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HJR 315.

<u>House Bill 1397</u>

24.     House Bill 1397 ("<u>HB 1397</u>")[8],  among other things, purports to exempt from the P3 Authority's ("<u>P3A</u>") supervision of all P3 contracts in which PREPA is the Participating Government Entity.  HB 1397 appears to conflict with the efforts by the Government and the Oversight Board to reform the PREPA energy system over the past five years.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HB 1397 violates the PREPA Fiscal Plan; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HB 1397 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HB 1397.

<u>House Joint Resolution 235</u>

25.     House Joint Resolution 235 ("<u>HJR 235</u>")[9] purports to, among other things, mandate the P3 Authority refrain from awarding an operation and maintenance or similar contract for the private operation of PREPA's generation assets until July 1, 2023.  HJR 235 appears to intentionally delay implementation of the PREPA Fiscal Plan requirements that PREPA assets be transitioned to private operation.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HJR 235 violates the certified fiscal plans for the Commonwealth and PREPA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HJR 235 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HJR 235.

<u>House Bill 1429</u>

---

[8] The Oversight Board understands HB 1397 has passed the legislature and is under consideration by the Governor.
[9] The Oversight Board understands HJR 235 has passed the legislature and is under consideration by the Governor.

26.     House Bill 1429 ("HB 1429")[10], among other things, purports to require conditions for the restructuring of PREPA debt and the issuance of new PREPA bonds for that purpose.  HB 1429 appears to violate PROMESA Title III and the PREPA Fiscal Plan.  On November 11, 2022, the Oversight Board sent a letter to the Governor: (i) explaining that HB 1429 violates the PREPA Fiscal Plan and multiple provisions of PROMESA; (ii) informing the Governor the Oversight Board had determined, pursuant to PROMESA § 108(a)(2), that HB 1429 impairs or defeats PROMESA's purposes; and (iii) informing the Governor that PROMESA § 108(a)(2) bars him from signing HB 1429.

27.     The legislature passed several other bills directly related to the P3A, implementation of the PREPA Fiscal Plan, PREPA's restructuring, and PREPA debts.  The Oversight Board continues to monitor this legislation and correspond with the Government regarding its concerns.  The Oversight Board will undertake appropriate action.

### III.    General Status of Claims Reconciliation

28.     To date, approximately 179,333 proofs of claim have been filed against the Debtors and logged by Kroll Restructuring Administration LLC ("Kroll").  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

29.     As of the filing of this Status Report, approximately (i) 7,709 proofs of claim remain asserted against the Commonwealth; (ii) 36 proofs of claim remain asserted against ERS; (iii) 204 proofs of claim remain asserted against PBA; and (iv) 755 proofs of claim remain asserted against HTA, all remaining to be reconciled (collectively, the "Remaining Claims").

---

[10] The Oversight Board understands HB 1429 has passed the legislature and is to be sent to the Governor.

30.     Of the Remaining Claims, 2,467 are associated with three separate multi-plaintiff litigations.  The Debtors are in the process of determining the amounts owed to each plaintiff in those litigations.  In addition, there are over 1,500 Remaining Claims that are fully unliquidated and associated with other litigations (the "Fully Unliquidated Remaining Claims").  Through the Debtors' ongoing claims reconciliation processes, approximately 76 Fully Unliquidated Remaining Claims have been subject to additional outreach efforts to agencies and opposing counsel; approximately 414 Fully Unliquidated Remaining Claims have been transferred into ADR or ACR; and, approximately 635 Fully Unliquidated Remaining Claims have been the subject of omnibus objections.

31.     The Remaining Claims continue to be the focus of the Debtors' ongoing review and reconciliation processes, described in more detail in the subsections below.

### ADR and ACR Processes

32.     Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12274] (the "ACR Order"), the Debtors have filed twenty-seven notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), (collectively, the "ACR Transfer Notices"), and have transferred approximately 44,866 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation.  The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.  Subsequent thereto, the Debtors have filed notices, wherein the Debtors reported the successful resolution of approximately 36,545 ACR Designated Claims.  The Debtors' next ACR Status Notice (as defined in the ACR Order) is

scheduled to be filed on January 20, 2023, and the Debtors anticipate reporting the successful resolution of additional ACR Designated Claims.

33.    With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their claims.  Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received and determining whether the information received is sufficient to complete the claimants' administrative file; where necessary, the Debtors will send further follow up mailings to such claimants to ensure they have a complete administrative file. The Debtors continue to await responses from numerous additional claimants.  In many instances, the Debtors have re-sent initial mailings to claimants who failed to respond, reiterating the Debtors' request for information sufficient to complete the claimants' administrative file, and warning them that ongoing failure to respond may force the Debtors to object to their claims. Claimants who failed to respond to the initial mailings have received a final mailing, reiterating the Debtors' request for information, and informing parties that failure to respond will force the Debtors to object to their claims.  The Debtors continue to await responses from such claimants, and to the extent no responses are received, the Debtors intend to object to their claims.  To date, the Debtors have filed several objections to claimants who did not respond to the final mailings.

34.    With respect to additional ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims.

35.    As of July 13, 2021, the Commonwealth, ERS, and PBA had transferred into ACR all outstanding claims which they understood, as of that date, were eligible for such transfer.  The

Debtors' reconciliation of outstanding claims remains ongoing, however.  To the extent the Commonwealth, ERS, and PBA identify additional claims eligible for ACR, they will be transferred into the ACR Procedures.  Accordingly, on October 21, 2022, the Debtors transferred additional claims into the ACR Procedures.  The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on December 20, 2022.  The Debtors may transfer additional claims into Administrative Claims Reconciliation on or before that date.

36.     Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), the Debtors have filed twenty-eight notices transferring claims into the ADR Procedures (as defined in the ADR Order), (collectively, the "ADR Notices"), and have transferred around 1,200 claims into the ADR Procedures.

37.     Subsequent thereto, the Debtors have filed notices, (collectively, the "ADR Status Notices") indicating five (5) claims that were settled in Evaluative Mediation (as defined in the ADR Order), twenty-two (22) claims have been fully resolved, well over one hundred claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures and have received either an Offer or an Information Request (as defined in the ADR Order), and approximately twelve (12) claimants have accepted the Debtors' offers.  The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted or agreements in principle have been reached.

38.     The Debtors are also evaluating all responses received to Information Requests and Offers, and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures.  Certain claimants have not responded to Information Requests or Offers, and the Debtors have already or are in the process

of re-sending mailings to claimants who did not respond, or attempting to contact them directly using phone numbers or email addresses provided by the claimants. In addition, other claimants have responded to Information Requests, but their responses have not provided information sufficient to enable the Debtors to understand the nature or basis of the claim and to develop an appropriate Offer. To date, the Debtors have filed several objections to claimants who either did not respond to Information Requests or provided incomplete responses. The Debtors continue to await responses from additional claimants, and anticipate that they will ultimately be forced to object to their claims to the extent the claimants do not respond to Debtors' outreach.

39.    On November 22, 2023, the Debtors filed the *Motion of the Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures* [Case No. 17-BK-03283, ECF No. 22899] (the "Motion to Amend"). On December 7, 2022, the Debtors filed the *Notice of Filing of (A) Revised Proposed Order Granting Motion of the Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures and (B) Supplemental Documentation* [Case No. 17-BK-03283, ECF No. 23009] (the "Revised Proposed Order") and, in accordance with the Court's direction, on December 11, 2022, the Debtors filed the *Notice of Filing of (A) Further Documentation and (B) Supplemental Briefing in Connection with the Financial Oversight and Management Board for Puerto Rico's Motion to Amend Alternative Dispute Resolution Procedures* [Case No. 17-BK-03283, ECF No. 23040] (the "Supplemental Brief"). The Revised Proposed Order seeks to modify the ADR Procedures to (*i*) authorize the Debtors to object to claims associated with claimants who have failed to respond to an Offer or Further Offer, and who have not timely participated in Evaluative Mediation, and (*ii*) allow the Debtors to transfer certain administrative expense claims into ADR for resolution. *Id.* at 6-7. As the Supplemental Brief explains, proceeding to Evaluative Mediation with respect to

such claims will afford claimants who deemed the Debtors' Offer or Further Offer unworthy of a response a final opportunity to participate in the ADR Procedures.  No objections to the Motion to Amend were filed by the objection deadline, and the Motion to Amend currently is scheduled to be heard as an uncontested matter at the Omnibus Objection Hearing on December 14, 2022.  The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due January 26, 2023, and the Debtors anticipate transferring additional claims into the ADR Procedures on or before that date.

40.      The Debtors' review and analysis of the claims filed to date remains ongoing.  At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 6,000, while the actual number transferred might be as low as 2,000 claims.  At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

### Objections to Claims

41.      The Debtors' claims reconciliation process remains ongoing, and the Debtors project they will continue to schedule omnibus and/or individual claim objections for the next several omnibus hearings.[11]  Most recently, on October 28, 2022, the Debtors filed fourteen omnibus objections covering over 220 claims.  However, the Debtors continue to anticipate that, going forward, the number of claim objections scheduled for each omnibus hearing will be fewer in number, with fewer claims being included on each omnibus objection.

---

[11] Currently, approximately 14 Notices of Presentment, relating to omnibus objections previously granted, are pending before the Court.

42.     While the Commonwealth, ERS, PBA, and HTA have resolved a substantial number of their claims, the Debtors continue to identify claims filed at each entity that are best resolved via objection.  For example, the Debtors anticipate continuing to file omnibus and/or individual objections to claims that have been subsequently amended, that assert liabilities for which the Debtors are not liable, that are duplicative of master claims, that have been satisfied and released, or that assert liabilities owed by entities that are not Title III debtors, among other possible bases.  Further, as noted above, the Debtors expect that they will be forced to object to claims held by claimants who have not responded to mailings sent in the ADR and ACR processes.

43.     In addition, the Debtors continue to anticipate that, while the total number of omnibus objections may decrease, the number of omnibus and individual claim objections filed by PREPA may increase.

*[Remainder of page intentionally left blank]*

Dated: December 13, 2022
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Brian S. Rosen
Paul V. Possinger
Ehud Barak
(Admission *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
         brosen@proskauer.com
         ppossinger@proskauer.com
         ebarak@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*