**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY, et al.,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 19-BK-5523 (LTS)<br><br>(Jointly Administered) |

**FINAL FEE APPLICATION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS CONSULTANTS TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM APRIL 30, 2021 THROUGH AND INCLUDING MARCH 15, 2022**

| | |
|---|---|
| Name of Applicant: | Alvarez & Marsal North America, LLC (A&M) |
| Authorized to Provide Professional Services to: | Financial Oversight and Management Board of Puerto Rico |
| Date of Retention: | August 2, 2018 |
| Period for which compensation and reimbursement is sought: | April 30, 2021 through March 15, 2022 |
| Amount of final compensation sought as actual, reasonable, and necessary: | $195,172.92 |
| Amount of final expense reimbursement sought as actual, reasonable, and necessary: | $0.00 |
| Blended Hourly Rate for all timekeepers: | $498.78 |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) ); (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| SUMMARY OF PRIOR INTERIM FEE APPLICATIONS: | | | | | |
|---|---|---|---|---|---|
| | | Fees and Expenses Approved | | Date and Docket No. of Fee Order | |
| Date [Docket No.] | Interim Fee Period ("IFP") Covered[3] | Fees | Expenses | Date | Docket No. |
| | *First IFP* 5/3/17 to 9/30/17 | | | | |
| | *Second IFP* 10/1/17 to 1/31/18 | | | | |
| | *Third IFP* 2/1/18 to 5/31/18 | | | | |
| | *Fourth IFP* 6/1/18 to 9/30/18 | | | | |
| | *Fifth IFP* 10/1/18 to 1/31/19 | | | | |
| | *Sixth IFP* 2/1/19 to 5/31/19 | | | | |
| | *Seventh IFP* 6/1/19 to 9/30/19 | | | | |
| | *Eighth IFP* 10/1/19 to 1/31/20 | | | | |
| | *Ninth IFP* 2/1/20 to 5/31/20 | | | | |
| | *Tenth IFP* 6/1/20 to 9/30/20 | | | | |
| | *Eleventh IFP* 10/1/20 to 1/31/21 | | | | |
| 7/15/2021; 153 | *Twelfth IFP* 2/1/21 to 5/31/21 | $64,945,98 | $0.00 | 10/04/2021 | 17646 |
| 11/15/2021; 229 | *Thirteenth IFP* 6/1/21 to 9/30/21 | $52,055.64 | $0.00 | 3/18/2022 | 20412 |
| 5/26/2022; 311 | *Fourteenth IFP* 10/1/21 to 1/31/2022 | $59,302,80 | $0.00 | 10/28/2022 | 22727 |
| 5/26/2022; 313 | *Fifteenth IFP* 2/1/2022 to Plan Effective Date | $18,868.50 | $0.00 | 10/28/2022 | 22727 |
| | | | | | |

| Total fees and expenses approved by interim orders to date:[2] | $195,172.92 | $0.00 |
|---|---|---|

[2] The amounts requested in this Final Fee Application reflect certain reductions agreed to by A&M following review of the interim fee applications by the fee examiner appointed in these cases.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY, et al.,<br><br>Debtors.[3] | PROMESA<br>TITLE III<br><br>No. 19-BK-5523 (LTS)<br><br>(Jointly Administered) |

## FINAL FEE APPLICATION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS CONSULTANTS TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM APRIL 30, 2021 THROUGH AND INCLUDING MARCH 15, 2022

Alvarez & Marsal North America, LLC ("A&M"), Advisor to the Financial Oversight and Management Board (the "Oversight Board") as representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power Authority, and the Puerto Rico Public Buildings Authority (collectively, the "Debtors") in the above- captioned title III cases (the "Title III Cases") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

---

[3] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth")  (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) ); (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

("PROMESA"),[4] hereby submits this final application (the "Final Application" or "Application"), pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[5] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"), Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Third Amended Order Setting Procedures for Interim and Final Compensation and Reimbursement of Expenses of Professionals* entered by this Court on April 12, 2022 [Docket No. 20546] (the "Interim and Final Compensation Order"), seeking entry of a an order allowing and ratifying all prior fee and expense requests during the period commencing April 30, 2021 through and including March 15, 2022 (the "Final Fee Application Period"). In support of this Application, A&M respectfully states the following:

## REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

1.      By this Final Fee Application, Alvarez and Marsal North America, LLC seeks compensation in the amount of $195,172.92 and reimbursement of actual and necessary expenses incurred in the amount of $0.00 for the Final Fee Application Period.[6]

2.      This Application has been prepared in accordance with the Guidelines and the Interim and Final Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance with the Local Guidelines.

3.      The terms of the Third Amended Interim and Final Compensation Order incorporate the United States Trustee Guidelines for Reviewing Applications for Compensation and

---

[4] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.
[5] The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.
[6] The amounts requested in this Final Fee Application reflect certain reductions agreed to by A&M following review of the interim fee applications by the fee examiner appointed in these cases.

Reimbursement of Expenses Filed under 11 U.S.C. 330 by Attorneys in Larger Chapter 11 Cases (the "Attorney Guidelines"). The terms of the Attorney Guidelines, as the title notes, are designed to "apply only when United States Trustees review applications for compensation filed by attorneys employed under sections 327 or 1103" of the Bankruptcy Code," rather than other professionals engaged by a debtor or official committee. Attorney Guidelines, ¶ A.2. Among other requirements, the Attorney Guidelines require inclusion of information regarding the law firms' customary and comparable compensation by means of providing an average rate charged.  A&M respectively requests that, in alignment with information provided as part of the interim fee applications, that the requirement in the Attorney Guidelines regarding information about customary and comparable compensation be waived.

4.      Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated herein by reference:

a.  **Exhibit A** declaration of Jay Herriman regarding A&M's compliance with the Local Guidelines.

b.  **Exhibit B** contains a summary of fees and hours billed by professional during the Final Fee Application Period.

c.  **Exhibit C** contains a summary of fees and hours billed by matter during the Final Fee Application Period.

d.  **Exhibit D** contains a summary of expenses incurred by category during the Final Fee Application Period.

e.  **Exhibit E** contains a summary of professionals by matter during the Final Fee Application Period.

f.  **Exhibit F** contains a budget plan with a comparative analysis of budgeted and actual fees during the Final Fee Application Period.

### Relief Requested

5.      By this Application, A&M seeks a final order authorizing approval and allowance of interim compensation for the professional services rendered and for expenses incurred during the four interim periods which comprise A&M's retention.

6.     All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Oversight Board.  The time detail for Final Fee Application Period was attached to A&M's previously filed interim fee applications (the "Interim Fee Applications") which, for the sake of brevity, is incorporated herein by reference. The previously filed Interim Fee Applications contain time entries describing the time spent by each professional and paraprofessional during the Final Fee Application Period.

7.     Other than with respect to those Monthly Fee Statements, and any relationships previously disclosed in our retention papers and/or related supplemental disclosures, no payments have been made to A&M, and A&M has received no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the Title III matters covered during the Compensation Period and addressed by this Application.  There is no agreement or understanding between A&M and any other person, other than the members of A&M, for the sharing of compensation to be received for services rendered in these cases.

### Summary of Services Performed

8.     All of the services rendered by A&M during the Final Fee Application Period were necessary for the execution of A&M's duties and responsibilities as set forth in the Engagement Letter dated August 2, 2018, and further amended to include PBA on April 30, 2021. Moreover, at all times, A&M rendered its services in an effective and efficient manner without any unnecessary duplication of efforts. Therefore, the compensation requested through this Final Application is reasonable in all respects, particularly in light of the nature, extent, and complexity of the matters involved and the benefits conferred by A&M.

9.     As described in the Engagement Letter, A&M provided services related to Claims reconciliation at the direction of the Oversight Board's responsible member(s) and its representatives and/or professionals identified to A&M, including employees of the Title III entities approved by the Oversight Board to work with and assist A&M in connection with the Engagement Letter.  The

reconciliation actions performed generally fall into three categories: (1) Claims review/objection; (2) Claims estimation; and (3) Plan of Adjustment and Solicitation.   Through these processes, and in collaboration with other retained professionals, A&M identified and reduced the asserted Claims pool by billions of dollars.

**A.  <u>Claims Review/Objection</u>**

10.     Approximately 177,804 proofs of claim ("Claim" or "Claims") were filed against the Debtors and logged by Kroll Restructuring Administration, LLC ("<u>Kroll</u>").   Such Claims total approximately $43.6 trillion asserted against the Debtors, in addition to unliquidated amounts.

11.     Approximately 405 Claims were filed in relation to, or reclassified to be asserted against PBA.  In accordance with the terms of the Bar Date Orders, many of these Claims need not have been filed at all, or suffered from some other flaw, such as: (1) being subsequently amended; (2) not putting forth a Claim for which the Debtors were liable: (3) being duplicative of other Claims or (4) failing to provide information necessary for the Debtors to determine whether the Claim was valid.

12.     To facilitate an efficient Claims reconciliation process, A&M analyzed each Claim to identify unnecessary or flawed Claims.  The result of this analysis is further summarized below:

   i.     Reviewed and compared Claims filed by the same claimant asserting duplicative liabilities and filed 4 omnibus objections against approximately 20 Claims as duplicative, expunging approximately $10 million from the Claims register once final orders are entered.

   ii.    Reviewed and compared Claims to identify subsequently filed amending Claims and filed 1 corresponding omnibus objection against approximately 5 Claims, expunging approximately $2.3 million from the Claims register once final orders are entered.

   iii.   Reviewed Claims and filed 1 omnibus objections against approximately 35

Claims for failing to provide sufficient information necessary for the Debtors to determine whether the Claim was valid, expunging approximately $25 thousand from the Claims register once final orders are entered.

iv.   Worked with Debtors counsel, AAFAF and various government agencies to identify Claims for which the Debtors were not liable.  Once identified, 2 omnibus objections were filed against approximately 10 Claims for which the Debtors were not liable, expunging approximately $20 thousand from the Claims register once final orders are entered.

v.   Reviewed Claims and filed 3 omnibus objections against approximately 30 Claims which were filed after the Bar Date.

vi.   Consolidated information asserted in thousands of Claims related to various Puerto Rico bonds.  The individual CUSIP liabilities asserted were compared to a database of CUSIP's in master Claims filed by various Bond Administrators.  Once analyzed, 3 omnibus objections were filed against approximately 10 Claims, expunging approximately $1.5 million from the Claims register once final orders are entered.

vii.   Identified approximately 40 Claims to be expunged per the plan of adjustment, expunging $6.2 billion from the Claims register.

13.   As of the effective date, A&M has filed approximately 15 objections to approximately 145 Claims, expunging approximately $6.2 billion from the Claims register once final orders are entered.

14.   A&M prepared claim reconciliation worksheets for approximately 45 accounts payable Claims.   This process consolidated invoice level details provided in the Claims into a searchable / sortable worksheet.  This information was then compared to historical payment data to identify invoices which had been paid.  These worksheets were then used by the Debtors to complete

the reconciliation of the Claims and ultimately create objections or allow Claims, as appropriate.

15.    A&M worked with Proskauer and AAFAF to develop the Alternate Dispute Resolution ("ADR") procedures as ordered at Docket 12576.  As of the effective date, approximately 5 Claims have been transferred into the ADR process, with an additional approximately 100 Claims identified for transfer into ADR after additional review is completed.

16.    A&M worked with Proskauer and AAFAF to develop the Administrative Claims Resolution ("ACR") process as ordered at Docket 12274.  A review of the Claims was performed to identify and categorize Claims to be transferred into ACR.  Depending on the Claim category, A&M worked with various agencies to determine the information necessary to reconcile the Claims. Worksheets were created to capture any relevant information provided in the Claims which was then transferred to the agency for further evaluation.  A&M facilitated the mailing of letters to individual claimants requesting additional information required by the agency to complete the review of the Claim.  Once additional information was received, it was captured in a worksheet and sent back to the agency for further review.   If the claimant did not respond to the mailings or if the information provided was not sufficient to complete the review of the Claim, it was transferred out of ACR and placed on objections as described above.  As of the effective date, approximately 50 Claims were transferred into ACR.   Approximately 5 Claims have been fully resolved by the government.

### B.  Claims Estimation

44.    As the Plan of Adjustment for each Debtor was being developed, A&M prepared estimated Claim values for several different plan classes.  This process required A&M to: (1) remove Claims which had been expunged, withdrawn or docketed in error; (2) remove Claims which have been filed or are set to be filed on omnibus objections which will expunge the Claims; (3) remove Claims transferred into the ACR process; (4) designate the appropriate Debtor per Claim; (5) review Claims asserting priority status and adjust to general unsecured, as appropriate; (6) assign a Claim class from the plan of adjustment to each Claim; (7) review fully unliquidated Claims and consult

with Proskauer to determine estimated liability, if appropriate; and (8) review Claims to determine if amounts asserted were overstated and, if so, reduce the estimated value for the Claim.

## C. Plan of Adjustment and Solicitation

45.     A&M worked with Proskauer and Kroll to develop a solicitation process as defined in the Plan of Adjustment.  This entailed: (1) validating Claim classes by Debtor; (2) validating the status of the Claim; and (3) ensuring Claims did not vote if they were pending on objection.

### The Application Should be Granted

46.     A&M respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement were necessary and beneficial to the Oversight Board. In light of the nature, extent and value of such services, A&M submits that the compensation requested herein is reasonable.

47.     The compensation for A&M's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed with expedition and in an efficient manner.

48.     In sum, the services rendered by A&M were necessary and beneficial to the Oversight Board, were reasonable in light of the value of such services to the Oversight Board and were performed with skill and expertise.  Accordingly, A&M submits that approval of the compensation for professional services and reimbursement of expenses requested in this Final Application is warranted.

### Statements Pursuant to Appendix B of the U.S. Trustee Guidelines

49.     The following statements address information pursuant to Section C.5 of the U.S. Trustee Guidelines:

a.     **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

**Answer**:   Yes, in accordance with the Engagement Letter, A&M agreed

to the following:  1 ) a discount equal to 10% of total fees incurred in each
billing period; and, 2) a 5% cap on rate increases unless a team member was
promoted. A&M further reduced fees based on discussions with the fee
examiner over the course of the Final Fee Application Period.

b.     **Question**: If the fees sought in this fee application as compared to the fees
budgeted for the time period covered by this fee application are higher by 10%
or more, did you discuss the reasons for the variation with the client?

**Answer**: A&M fees and fee budgets are summarized on Exhibit F.  However,
A&M did not create a separate budget for each Debtor and as such budgeted
fees relate to all Debtors.  Please note, A&M's first budget estimates were
provided in February 2020.

c.     **Question**: Have any of the professionals included in this fee application varied
their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.     **Question**: Does the fee application include time or fees related to reviewing
or revising time records or preparing, reviewing, or revising invoices?  (This
is limited to work involved in preparing and editing billing records that would
not be compensable outside of bankruptcy and does not include reasonable
fees for preparing a fee application.).  If so, please quantify by hours and fees.

**Answer**: No.

e.     **Question**: Does this fee application include time or fees for reviewing time
records to redact any privileged or other confidential information?  If so,
please quantify by hours and fees.

**Answer**: No.

f.     **Question**: If the fee application includes any rate increases in retention: (i) did
your client review and approve those rate increases in advance?  and (ii) Did
your client agree when retaining A&M to accept all future rate increases?  If
not, did you inform your client that they need not agree to modified rates or
terms in order to have you continue the representation, consistent with ABA
Formal Ethics Opinion 11-458?

**Answer**: i) Rate increases were approved in advance. ii) In accordance with the
Engagement Letter, rate increases were subject to a cap of 5% each year
unless a team member was being promoted.  While A&M generally increases
rates in January of each year, A&M increased rates annually in August to
coincide with the signing of the Engagement Letter unless a professional was
being promoted.   In those instances, new rates were applied annually in
January.

**Conclusion**

WHEREFORE, A&M respectfully requests that the Court enter an order; (a) approving the final allowance of $195,172.92 for professional services rendered and reimbursement of actual and necessary expenses incurred in the amount of $0.00 for the Final Fee Application Period, (b) ratifying all prior payments made, and (c) granting such other and further relief as the Court deems just and proper.

Dated: December 21, 2022

Marco Island, FL

Respectfully Submitted,

/s/ Jay Herriman

Alvarez & Marsal North America, LLC
Jay Herriman

# Exhibit A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY, et al.,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 19-BK-5523 (LTS)<br><br>(Jointly Administered) |

## DECLARATION OF JAY HERRIMAN IN SUPPORT OF THE FINAL FEE APPLICATON OF ALVAREZ & MARSAL NORTH AMERICA, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSMENT OF EXPENSES INCURRED AS CONSULTANT TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO AS REPRESENTATIVE OF THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY FROM APRIL 30, 2021 THROUGH AND INCLUDING <u>MARCH 15, 2022</u>

Jay Herriman deposes and says:

1. I am a Managing Director in the applicant firm, Alvarez & Marsal North America, LLC ("A&M")

2. I was aware of or involved in the provision of the services, as an engagement Managing Director, the professional services rendered by A&M, as consultant to the Financial Oversight and Management Board of Puerto Rico as representative of the Puerto Rico Public Buildings Authority and am familiar with the work for the Debtors referenced in the attached fee application.

3. I have reviewed the foregoing Final Fee Application of Alvarez & Marsal North America, LLC for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred as Consultant (the "Final Fee Application"), and the facts set forth therein are true and correct to the best of my knowledge, information, and belief. To my knowledge and subject to the statements made in the Interim Fee Applications, the Final Fee Application substantially

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) ); (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

complies with applicable provisions of PROMESA,5 the Bankruptcy Rules, the Local Rules, and this Court's Third Amended Order Setting Procedures for Interim and Final Compensation and Reimbursement of Expenses of Professionals, dated April 12, 2022 [Docket No. 20546].

Dated: December 21, 2022

/s/ Jay Herriman
Jay Herriman

# Exhibit B

| EXHIBIT B  - LIST OF PROFESSIONALS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Professional | Title | Actual Fees Billed | Total Fees Without Rate Increase | Total Hours | Current Rate | Beginning Rate | Number of rate increases since case inception | Variance |
| Carter, Rich | Senior Consultant | $ 6,330.80 | $ 6,116.20 | 10.6 | $ 606 | $ 577 | 1 | 5% |
| Corbett, Natalie | Para Professional | $ 2,175.00 | $ 2,175.00 | 8.7 | $ 250 | $ 250 | 0 | 0% |
| DiNatale, Trevor | Senior Associate | $ 56,007.50 | $ 53,295.00 | 96.9 | $ 650 | $ 550 | 2 | 18% |
| Fiore, Nick | Consultant | $ 385.00 | $ 385.00 | 0.7 | $ 550 | $ 550 | 0 | 0% |
| Harmon, Kara | Director | $ 8,280.00 | $ 8,167.50 | 12.1 | $ 700 | $ 675 | 1 | 4% |
| Herriman, Jay | Managing Director | $ 34,601.00 | $ 34,294.20 | 36.6 | $ 950 | $ 937 | 1 | 1% |
| Hertzberg, Julie | Managing Director | $ 1,012.00 | $ 1,012.00 | 1.0 | $ 1,012 | $ 1,012 | 0 | 0% |
| McNulty, Emmett | Analyst | $ 50,186.00 | $ 49,960.00 | 124.9 | $ 420 | $ 400 | 1 | 5% |
| Nash, Joseph | Analyst | $ 1,240.00 | $ 1,240.00 | 3.1 | $ 400 | $ 400 | 0 | 0% |
| Wirtz, Paul | Consultant | $ 36,190.00 | $ 36,190.00 | 65.8 | $ 550 | $ 550 | 0 | 0% |
| Zeiss, Mark | Director | $ 20,451.50 | $ 20,424.90 | 30.9 | $ 675 | $ 661 | 1 | 2% |
| | | | | | | | | |
| Subtotal | | $ 216,858.80 | $ 213,259.80 | 391.30 | | | | |
| Less : Fee Discount | | $ (21,685.88) | | | | | | |
| Less : Fee Reductions | | $ - | | | | | | |
| **Total** | | **$ 195,172.92** | | | | | | |
| **Blended Hourly Rate** | | **$ 498.78** | | | | | | |

# Exhibit C

| EXHIBIT C - COMPENSATION BY CATEGORY | | |
|---|---|---|
| **Category** | **Hours** | **Billable Amount** |
| PBA Claim Management | 368.6 | 204,265.50 |
| PBA Fee Applications | 13.9 | 7,115.00 |
| PBA Meetings | 8.8 | 5,478.30 |
| **SUBTOTAL** | **391.3** | **216,858.80** |
| Less : Fee Discount | | (21,685.88) |
| Less : Fee Reductions | | - |
| **Total Amount Requested** | | **$       195,172.92** |

| | | |
|---|---|---|
| Blended Hourly Rate | | 498.78 |

# Exhibit D

| EXHIBIT D - EXPENSE SUMMARY | |
|---|---|
| **Category** | **Amount** |
| Airfare | $                    - |
| Hotel | $                    - |
| Lodging | $                    - |
| Meals | $                    - |
| Technology/Data Storage Fees | $                    - |
| Transportation | $                    - |
| **Subtotal** | **$                    -** |
| Less: Expense Reduction | $                    - |
| **Total Expenses** | **$                    -** |

*-NO EXPENSES INCURRED -*

# Exhibit E

| EXHIBIT E - LIST OF PROFESSIONALS BY MATTER | | |
|---|---|---|
| **Claim Management** | | |

Advise and assist the Debtors in questions and processes regarding the claims reconciliation process: notably, claims planning process, potential claim analysis, review of claims filed against the Debtors and other claim related items.

| Professional | Sum of Hours | Sum of Fees |
|---|---|---|
| Carter, Rich | 10.2 | $ 6,100.00 |
| DiNatale, Trevor | 95.8 | $ 55,375.00 |
| Fiore, Nick | 0.7 | $ 385.00 |
| Harmon, Kara | 8.2 | $ 5,605.00 |
| Herriman, Jay | 30.4 | $ 28,711.00 |
| Hertzberg, Julie | 1 | $ 1,012.00 |
| McNulty, Emmett | 122.7 | $ 49,306.00 |
| Nash, Joseph | 3.1 | $ 1,240.00 |
| Wirtz, Paul | 65.6 | $ 36,080.00 |
| Zeiss, Mark | 30.9 | $ 20,451.50 |
| **Claim Management Subtotal** | **368.6** | **$ 204,265.50** |
| Less : Fee Discount | | $ (20,426.55) |
| Less : Fee Reductions | | $ - |
| **Fee Applications Total** | | **$ 183,838.95** |

| **Fee Applications** | | |
|---|---|---|

Prepare monthly and interim fee applications in accordance with court guidelines.

| | | |
|---|---|---|
| Corbett, Natalie | 8.7 | $ 2,175.00 |
| Jay Herriman, Jay | 5.2 | $ 4,940.00 |
| **Fee Applications Subtotal** | **13.9** | **$ 7,115.00** |
| Less : Fee Discount | | $ (711.50) |
| Less : Fee Reductions | | $ - |
| **Fee Applications Total** | | **$ 6,403.50** |

| **Meetings** | | |
|---|---|---|

Participate in meetings with Debtors' management, Board of Directors and/or advisors to present findings or discuss various matters related to the filing, reporting and/ or operating the business; excludes meetings with UCC and/or other Creditor constituents and their advisors.

| | | |
|---|---|---|
| Emmett McNulty | 2.2 | $ 880.00 |
| Jay Herriman | 1 | $ 950.00 |
| Kara Harmon | 3.9 | $ 2,675.00 |
| Paul Wirtz | 0.2 | $ 110.00 |
| Rich Carter | 0.4 | $ 230.80 |
| Trevor DiNatale | 1.1 | $ 632.50 |
| **Fee Applications Subtotal** | **8.8** | **$ 5,478.30** |
| Less : Fee Discount | | $ (547.83) |
| Less : Fee Reductions | | $ - |
| **Fee Applications Total** | | **$ 4,930.47** |

# Exhibit F

| EXHIBIT F - BUDGET & STAFFING PLAN[1,2] | | | | | |
|---|---|---|---|---|---|
| Interim No. | Compensation Period | Interim Fees Requested | Budgeted Fees | Variance | Variance Percentage |
| *4th interim* | 8/9/18 - 9/30/18 | $      972,555 | | | |
| 5th interim | 10/1/18 - 1/31/19 | $   2,279,615 | | | |
| 6th interim | 2/1/19 - 5/31/19 | $   2,260,382 | | | |
| 7th interim | *6/1/19 - 9/30/19* | $   1,822,001 | | | |
| 8th interim | 10/1/19 - 1/31/20 | $   2,306,860 | | | |
| 9th interim | 2/1/20 - 5/31/20 | $   3,430,675 | $   3,750,000 | $   (319,325) | -8.52% |
| 10th interim | 6/1/20 - 9/30/20 | $   2,462,580 | $   2,914,500 | $   (451,920) | -15.51% |
| 11th interim | 10/1/20 - 1/31/21 | $   2,168,669 | $   2,278,000 | $   (109,331) | -4.80% |
| 12th interim | 2/1/21 - 5/31/21 | $   3,923,411 | $   4,154,329 | $   (230,918) | -5.56% |
| 13th Interim | 6/1/21 - 9/30/21 | $   4,225,276 | $   4,164,417 | $      60,859 | 1.46% |
| 14th Interim | 10/1/2021 - 1/31/2022 | $   4,419,893 | $   4,157,092 | $     262,801 | 6.32% |
| 15th Interim | 2/1/2022 - 3/15/2022 | $   2,131,437 | $   2,173,305 | $      (41,868) | -1.93% |

1 A&M did not budget on a Debtor basis.  The budget and staffing plan provides a summary for fees requested for the 3 Debtors related to this Final Fee Application, however, budgeted fees includes amounts for all Debtors

2 A&M's first budget estimates were provided in February 2020