# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors.[1] | PROMESA Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                        Debtor. | PROMESA Title III<br><br>No. 17-BK-4780-LTS |

**LIMITED OBJECTION OF THE AD HOC GROUP OF PREPA BONDHOLDERS TO THE URGENT MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY FOR ORDER (I) SCHEDULING A HEARING TO CONSIDER THE ADEQUACY OF INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) ESTABLISHING THE DEADLINE FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT AND REPLIES THERETO, (III) APPROVING FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING DOCUMENT DEPOSITORY PROCEDURES IN CONNECTION THEREWITH, AND <u>(V) GRANTING RELATED RELIEF [ECF NO. 3112]</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Ad Hoc Group of PREPA Bondholders (collectively, the "Ad Hoc Group") respectfully submits this limited objection to the *Motion of Puerto Rico Electric Power Authority for Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form and Manner of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief*, ECF No. 3112 (the "Urgent Motion").[2]

1. The Oversight Board has submitted a patently unconfirmable placeholder plan. It is accompanied by a disclosure statement that fails to provide information that is either accurate or sufficient to allow creditors to make informed decisions on whether to vote for that plan (if this placeholder plan even advances that far). Among other defects:

    a. The plan arbitrarily proposes to pay PREPA's bondholders and other creditors *billions of dollars less* than the Oversight Board has publicly conceded PREPA can afford to pay. According to the Oversight Board's public disclosures, it concluded as recently as November 8—just six weeks ago—that PREPA can afford to pay creditor recoveries totaling approximately $7.8 billion.[3] As described in post-mediation public disclosures, bondholders repeatedly demonstrated to the Board that this analysis was predicated on outdated and inaccurate data, and thus grossly understated PREPA's true ability to pay restructured debts over the coming decades.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Urgent Motion.

[3] PREPA FOMB Proposal to Bondholder Group at 6-7 (Nov. 8, 2022); PREPA Bondholder Mediation Presentation at 12, both available at https://emma.msrb.org/P11641653-P11264323-P11690562.pdf. Under the 2019 Restructuring Support Agreement, and the original RSA before that, PREPA and the Oversight Board previously agreed that PREPA can afford to pay bondholders even more than that.

1

Not only does the Oversight Board's Proposed Disclosure Statement [ECF No. 3111] ignore these errors, but it misleadingly states that PREPA can afford to pay creditors no more than $5.4 billion (*i.e.*, $2.4 billion *less* than what the Oversight Board just told creditors that PREPA can actually afford to pay). *Id.* at 4. The Oversight Board doesn't explain how $2.4 billion dollars of available revenues to pay creditors simply vanished in only a few weeks' time. Nor does it explain why PREPA was able to offer creditors more revenue-earning capacity in a negotiation, only then to claim in a litigation that those revenues do not exist. And the Proposed Disclosure Statement provides no information—literally none—about the basis on which the Oversight Board has arrived at its new (and even more pessimistic) view of what PREPA can afford to pay its creditors. For example, it provides insufficient information about the $2.4 billion in accounts receivables owed by other Commonwealth entities to PREPA, and whether improved efforts to collect those revenues could increase what PREPA can afford. *See id.* at 61.

  b. PREPA's proposed placeholder plan and disclosure statement are also defective because they make no serious effort to account for the resolution of key legal and factual disputes:

*First*, the Court instructed the Oversight Board to propose a plan it believed to be confirmable after taking into account the possible outcomes on matters still to be litigated. The Oversight Board instead constructed a plan that provides for different possible outcomes only on the subset of issues on which it prefers to focus attention, in particular bondholders' right to payment and security. And even on that issue, the Oversight Board has not met the Court's requirement to propose a confirmable plan accounting for all possible outcomes of the litigation because it concedes that its

2

placeholder plan may not be confirmable if the Trustee's Claim is secured by PREPA's revenues and the value of the security interest exceeds the total amount in Series B bonds the plan proposes. The Oversight Board also implicitly agrees that its plan is not confirmable if it is wrong about what PREPA can afford. Further, the plan fails to include a scenario in which the Court rules that PREPA can afford to pay more than this plan proposes, regardless of the outcome of the dispute regarding the scope of the security interest. And, as a result, the Oversight Board ignored this Court's express direction to file a plan that *would* be confirmable in all reasonably possible litigation scenarios, *see Amendments to Order Establishing the Terms and Conditions of Mediation*, at 4 [ECF No. 3013], choosing instead to roll the dice on the most consequential issue in this case, while providing no explanation for the basis of its position. *See also* November 2, 2022 Hr'g Tr. 18:4-14 [Case No. 17-03283, ECF No. 22836] ("I don't expect to see a place holder filed on December 1. . . . [I]f the requirement to file a confirmable plan . . . isn't met every possible way of reacting to that will be on the table.").

*Second*, the Trustee and bondholders expect to establish, in the now-stayed "Current Expense" adversary proceeding, that the Trustee's Claim is not subordinated to the Fuel Line Lenders' claims—a position with which the Oversight Board *agrees*, and that in any event presents an intercreditor dispute in which PREPA has no stake (and thus cannot "settle" with other creditors' money). In that likely event, the plan's proposal to award first-priority bonds and a premium recovery to Fuel Line Lenders, ahead of bondholders with existing priority, is patently unconfirmable.

*Third*, the proposed plan and disclosure statement reflect no information about, and do not account for, whatever settlement in principle the Oversight Board has

3

reached with monoline insurer National Public Finance Guarantee Corporation, a development that rendered the current plan and disclosure statement insufficient just hours after they were filed, and the to-be-disclosed terms of which may raise yet additional concerns about whether the plan has been filed in good faith and is confirmable.

c. Notwithstanding these and numerous other patent deficiencies in the placeholder plan and disclosure statement, the Oversight Board proposes to solicit bondholder votes for PREPA's plan by offering a so-called "settlement" to coerce long-unpaid bondholders into agreeing to vote for the plan before they receive an approved disclosure statement (and before the pending lien and recourse issues have been resolved). But that "settlement" payment would come out of other bondholders' pockets; the plan proposes to fund early agreements to vote for the plan out of recoveries that otherwise would go to bondholders who have the temerity to make plan-related decisions only *after* receiving an approved disclosure statement and other plan-related information.

2. The Ad Hoc Group expects to present these and other substantial objections to the confirmability of the plan and sufficiency of its disclosure statement. It will to do so under the Court's proposed schedule, assuming it is ordered, under which objections will be due February 3, the Oversight Board's reply will be due February 10, and a hearing will be held February 28. *See* ECF No. 3119. Indeed, the Ad Hoc Group submits that the sooner the Oversight Board is required to file a plausibly confirmable plan, with meaningful and sufficient disclosures about the basis for its key terms, the better off PREPA and its stakeholders will be.

3. In all events, however—and whether the Oversight Board is allowed to proceed with this placeholder plan or some revised plan—the fact remains that the Oversight Board has elected to proceed in this Title III case by trying to cram down a contested plan over fundamental,

4

fact-intensive objections from PREPA's largest stakeholders. The bondholders' objections will focus on, among other things, what PREPA can actually afford to pay, whether the plan has been proposed in good faith, and whether PREPA's aggressive plan provisions meet the confirmation requirements and dissenting-creditor safeguards imposed by PROMESA and the Bankruptcy Code. Bondholders and other creditors will be defending their rights to billions of unpaid dollars, and due process necessitates robust discovery and an adversarial process on their challenges to the Oversight Board's unsupported assertions of unaffordability, good faith, and confirmability. There is simply no escaping that litigating a contested cramdown plan will demand substantial document discovery, numerous depositions, multiple expert disclosures, pre-hearing motion practice, and renewed litigation of various plan-related disputes (including the Fuel Line Lenders' subordination claim against bondholders' Trustee in the Current Expense adversary proceeding, Adv Proc. No. 19-00396).

4. The only way for all of that necessary litigation to take place, and still get to a confirmation hearing by July on some plan of adjustment for PREPA, is to start discovery now. The Ad Hoc Group thus expects, in early January, to file a preliminary plan objection and to serve initial discovery requests in support of that objection.[4] As the Mediation Team's reports and statements have made clear these past few months, the Ad Hoc Group has every reason to doubt that the Oversight Board will voluntarily make sufficient and reliable information available to

---

[4] *See* Fed. R. Bankr. P. 9014 (incorporating Fed. R. Civ. P. 34 for contested matters). The Oversight Board has indicated that it is capable of responding to document requests within 7 days, *see* ECF No. 3114 ¶ 34 (chart), and so the Ad Hoc Group expects the Oversight Board to meet that timeline even before its proposed confirmation-procedures order has been entered (at least if it truly wishes to reach a confirmation hearing by July).

5

creditors on its own.[5]  Rather, discovery will be needed to identify and obtain other material information that creditors will need to evaluate the proposed plan and state their confirmation objections.  The Ad Hoc Group expects that any discovery materials it obtains could be made available to other interested parties via the proposed Depositary (before and after the disclosure statement hearing), such that all creditors would benefit from the prompt disclosure of additional relevant information.

5.  Nothing in the Oversight Board's Urgent Motion precludes such plan-related discovery from commencing now.  And the Oversight Board's separate motion to establish certain confirmation-related procedures [ECF No. 3114]—which the Oversight Board asks the Court to consider and grant two months from now, at the late-February disclosure statement hearing— merely sets *deadlines* for parties to notice their intent to participate in discovery and to serve discovery requests.  That motion, too, does not ask the Court to set any "start date" before which plan-related discovery would be prohibited.

6.  But to the extent that the Oversight Board intends by its pending Urgent Motion to prohibit all plan-related discovery until March 2023, and until then to restrict creditors to receiving only whatever information the Oversight Board self-selects for its proposed Depositary, then the Ad Hoc Group objects to the Urgent Motion in that limited (but important) respect.  Under the Oversight Board's separate confirmation-procedures motion [ECF No. 3114], by the time the disclosure statement hearing takes place, only six weeks will remain for all fact and expert discovery to take place.  If interested parties cannot even serve and negotiate document requests

---

[5] *E.g.,* ECF No. 3091 (Dec. 1, 2022) ("Despite reasonable requests by the Ad Hoc Group and the Monolines, the Oversight Board is still in the process of providing basic data and analyses relevant to the ongoing plan negotiations.").

6

until February 28 (at the earliest), then it will be nearly impossible to complete discovery on the proposed schedule.

7. For example, the Oversight Board contemplates that opening expert reports on plan confirmation will be due on April 14, 2023—just 45 days after the disclosure statement hearing. But experts in this case will need to review and analyze documents produced by PREPA, the Oversight Board, and others, as well as the testimony of those entities' relevant decision-makers and consultants. It is implausible to expect experts to be able to do that work if interested parties cannot even begin the process of seeking relevant documents and testimony until February 28, 2023. And although the Oversight Board compares its proposed procedures to those ordered in the Commonwealth and HTA cases (Urgent Mot. ¶¶ 5, 37), those cases involved largely *consensual* plans that were premised on settlements with major creditors. The truncated discovery procedures in those cases are inappropriate for what the Oversight Board has set up to be a hotly contested confirmation battle with PREPA's largest creditors.

8. In short, there is no conceivable benefit to interested parties or the Court from forcing all parties to sit on their hands for more than two months before plan-related discovery begins, only then to have to sprint to try to pack everything into only a few short weeks. Not only would that process be unfair and unwarranted, but it also all but begs for even one discovery dispute, production issue, or scheduling kerfuffle to materially delay the confirmation hearing. Now that the Oversight Board has launched a contested, non-consensual plan-confirmation process, there is a lot that has to happen and get done. To the extent the Urgent Motion would require the parties to wait until February 28 to get started, it should be denied in that limited respect.

## CONCLUSION

The Urgent Motion should be denied to the limited extent that it would prohibit all plan-related discovery, other than the Oversight Board's voluntary disclosures under the proposed Depositary Procedures, until after the disclosure statement hearing, and this Court should otherwise grant the Urgent Motion as modified by the schedule proposed in the Court's December 19, 2022 Order [ECF No. 3119].

We hereby certify that, on this same date, we electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

Dated: San Juan, Puerto Rico
December 21, 2022

| **TORO COLÓN MULLET P.S.C.** | **KRAMER LEVIN NAFTALIS & FRANKEL LLP** |
|---|---|
| */s/ Manuel Fernández-Bared* <br> Manuel Fernández-Bared <br> USDC-PR No. 204,204 <br> P.O. Box 195383 <br> San Juan, PR 00919-5383 <br> Tel.: (787) 751-8999 <br> Fax: (787) 763-7760 <br> E-mail: mfb@tcm.law <br><br> */s/ Linette Figueroa-Torres* <br> Linette Figueroa-Torres <br> USDC-PR No. 227,104 <br> E-mail: lft@tcm.law <br><br> */s/ Nayda Perez-Roman* <br> Nayda Perez-Roman <br> USDC–PR No. 300,208 <br> E-mail: nperez@tcm.law <br><br> *Counsel for the Ad Hoc Group of PREPA Bondholders* | */s/ Amy Caton* <br> Amy Caton* <br> Thomas Moers Mayer* <br> Alice J. Byowitz* <br> 1177 Avenue of the Americas <br> New York, New York 10036 <br> Tel.: (212) 715-9100 <br> Fax: (212) 715-8000 <br> Email: acaton@kramerlevin.com <br> tmayer@kramerlevin.com <br> abyowitz@kramerlevin.com <br><br> Gary A. Orseck* <br> Matthew M. Madden* <br> 2000 K Street NW, 4th Floor <br> Washington, DC 20006 <br> Tel: (202) 775-4500 <br> Fax: (202) 775-4510 <br> Email: gorseck@kramerlevin.com <br> mmadden@kramerlevin.com <br><br> *Admitted Pro Hac Vice <br><br> *Counsel for the Ad Hoc Group of PREPA Bondholders* |

9