**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                              Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 3112, 3119, 3125, 3126, 3127, 3128, 3129** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY, | |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| |
|---|
| Movant. |
| v. |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AD HOC GROUP OF PREPA BONDHOLDERS, SYNCORA GUARNATEE INC, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., U.S. BANK NATIONAL ASSOCIATION |
| Respondents. |

**OMNIBUS REPLY OF THE OVERSIGHT BOARD
IN SUPPORT OF THE URGENT MOTION OF PUERTO
RICO ELECTRIC POWER AUTHORITY FOR ORDER (I)
SCHEDULING A HEARING TO CONSIDER ADEQUACY OF
INFORMATION CONTAINED IN DISCLOSURE STATEMENT,
(II) ESTABLISHING DEADLINE FOR FILING OBJECTIONS TO
DISCLOSURE STATEMENT AND REPLIES THERETO,
(III) APPROVING FORM AND MANNER OF NOTICE THEREOF,
(IV) ESTABLISHING DOCUMENT DEPOSITORY PROCEDURES
IN CONNECTION THEREWITH, AND (V) GRANTING RELATED RELIEF**

## TABLE OF CONTENTS

**Page**

Omnibus Reply ...............................................................................................................................1

I.     Reply to AHG Objection and Syncora Objection................................................................3

II.    Reply to UCC Response .......................................................................................................9

III.   Reply to Bond Trustee Precautionary Objection ...............................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
　432 F. Supp. 3d 25 (D.P.R. 2020),
　*aff'd*, 954 F.3d 1 (1st Cir. 2020) ...................................................................................................5

*In re Heritage Org., L.L.C.*,
　376 B.R. 783 (Bankr. N.D. Tex. 2007)..........................................................................................7

**STATUTES**

11 U.S.C. § 1125....................................................................................................................................3

48 U.S.C. §§ 2101-2241 ........................................................................................................................1

PROMESA § 314...................................................................................................................................5

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this omnibus reply (the "Omnibus Reply") in support of the Urgent Motion[3] and in response to (i) the Bond Trustee's precautionary objection [ECF No. 3125] (the "Bond Trustee Objection"), (ii) the UCC's response [ECF No. 3126] (the "UCC Response"); (iii) the Ad Hoc Group of PREPA Bondholders' (the "AHG") limited objection [ECF No. 3127] (the "AHG Objection"); (iv) Assured Guaranty Corp. and Assured Guaranty Municipal Corp.'s partial joinder [ECF No. 3128] (the "Assured Joinder"); and (v) Syncora Guarantee Inc.'s ("Syncora") limited objection [ECF No. 3129] (the "Syncora Objection," and together with the Bond Trustee Objection, UCC Response, AHG Objection, the Assured Joinder, the "Objections"); and respectfully states as follows:

## Omnibus Reply

1. The Urgent Motion is purely administrative in nature and seeks relief that largely mirrors relief already granted by the Court with respect to the Commonwealth, ERS, PBA, and HTA's disclosure statement approval processes,[4] namely (i) the scheduling of a Disclosure

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] The "Urgent Motion" shall refer to *Urgent Motion of Puerto Rico Electric Power Authority for Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form and Manner of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* [Case No. 17-4780, ECF No. 3112]. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Urgent Motion or the proposed *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [ECF No. 3110] (as may be amended, modified, or supplemented from time to time, the "Plan"), as relevant.

[4] *See Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection*

Statement Hearing, (ii) establishing deadlines for briefing on the Disclosure Statement, the Disclosure Statement Motion, and the Confirmation Discovery Procedures Motion, and (iii) establishing document depository procedures in connection therewith.

2. The Court instructed the Oversight Board to propose a confirmation schedule that ensures a confirmation hearing in July 2023 and a disclosure statement hearing on February 28, 2023. The Oversight Board's proposed confirmation schedule is tailored to meet these deadlines while accommodating parties-in-interest within these confines. The Oversight Board will continue to follow the Court's direction regarding its preferred scheduling for matters related to confirmation. As such, it supports the Court's proposed deadlines for objections and replies regarding the Disclosure Statement in the December 19, 2022 order [ECF No. 3119] (the "Disclosure Statement Deadlines").

3. No party objects to the Court's proposed Disclosure Statement Deadlines. AHG and Syncora, however, inappropriately seek to assert confirmation objections before the disclosure statement schedule has even been established.[5] *See e.g.*, AHG Obj. ¶ 1; Syncora Obj. ¶ 6. Other parties seek relief on issues not before the Court in the Urgent Motion. All the Objections should be overruled for the reasons stated below, and the Urgent Motion should be granted as modified below.

---

*Therewith, and (V) Granting Related Relief* [Case No. 17-3283, ECF No. 16681]; *Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, and (III) Approving Form of Notice Thereof* [Case No. 17-3567, ECF No. 1171]; *Order (I) Establishing Document Depository Procedures in Connection Therewith, and (II) Granting Related Relief* [Case No. 17-3567, ECF No. 1176].

[5] The Court has previously held that it would not entertain confirmation objections at the disclosure statement stage. *See, e.g.*, July 14, 2021 Hr'g Tr. 74:21-75:11 (Explaining "[t]he adequacy and legality of the proposed Plan of Adjustment, however, are issues that principally will be addressed in connection with the Oversight Board's request for confirmation of the Plan of Adjustment" and are not appropriate in connection with the consideration of the adequacy of information contained in the disclosure statement.).

2

I. **Reply to AHG Objection and Syncora Objection**

4. The AHG Objection and Syncora Objection make one thing clear: the Amended Lien & Recourse Challenge, which has now been fully briefed, should be resolved at the earliest possible time as it may resolve the primary gating issues the parties disagree on. The vast majority of their objections are dedicated to confirmation issues not relevant to the narrow administrative relief sought here, and which may be rendered moot following the decision on the Amended Lien & Recourse Challenge. The Oversight Board responds merely to address their misstatements and incorrect premises, and reserves its right to respond to the substance at the appropriate time.

5. *Confirmation Discovery Prior to Approval of the Disclosure Statement is Inappropriate*. The AHG objects to the Urgent Motion only "to the limited extent that it would prohibit all plan-related discovery…until after the disclosure statement hearing." AHG Obj. at 8. Likewise Syncora only objects "[t]o the extent that the Oversight Board seeks to limit discovery that is otherwise available under the Federal Rules". Syncora Obj. ¶ 8. Thus, despite asserting the Plan is patently unconfirmable, the AHG and Syncora propose to have free-for-all discovery on confirmation issues for two months before the Court even has the opportunity to consider the Confirmation Discovery Procedures Motion.

6. The Confirmation Discovery Procedures Motion proposes certain procedures in connection with confirmation discovery, such as limitations on production requests and depositions, to avoid repetitive and inefficient use of party and judicial resources and allow all parties access to relevant information. There are no confirmation issues before the Court at this stage, and discovery requests related to confirmation would be inappropriate at this time. The only proper inquiry is whether the Disclosure Statement contains adequate information.[6] The AHG's

---

[6] *See* 11 U.S.C. § 1125; *supra* n.5.

3

argument that their expert requires more than 45 days to review information [AHG Obj. ¶ 7] is belied by the fact that the AHG has had access in mediation to over 329,000 pages of documents, and the AHG had sufficient information to prepare numerous detailed rebuttals, including their most recent analysis that they publicly disclosed.[7] The AHG Objection attempts to sidetrack this orderly discovery process and disrupt the Court's timetable that balances disparate interests.

7. *Mediation was Not Terminated by the Oversight Board*. The AHG has previously stated, in connection with their objection to the expedited briefing schedule on the Urgent Motion, the Oversight Board "suddenly terminated mediation . . . ." [ECF No. 3116] ¶ 3. **That is untrue, Mediation has not been terminated**. Pursuant to this Court's order [ECF No. 3011], Mediation shall terminate on December 31, 2022, at 11:59 p.m. (Atlantic Standard Time). *Id.* ¶ 3. Moreover, the Oversight Board has made public that it desires to continue negotiations inside and outside mediation. The Oversight Board filed its proposed Plan by a court-ordered deadline. The reason the deadline was not extended five more days was the condition imposed for extension was the Oversight Board had to declare it was prepared to move its position materially, and the Oversight Board determined not to do so. The Oversight Board's statement made clear that although it did not find a reason to make a material move in its proposal, it remains ready and willing to continue mediation, reiterates its strong preference for a globally consensual plan of adjustment for PREPA, and will continue negotiation in the hopes of further settlements.[8] Indeed, the recently announced deals with the Fuel Line Lenders and National show the Oversight Board continues to strive for and reach consensual deals with major claimholders.

---

[7] *See* https://drive.google.com/file/d/1hiHgX7T3TnY8jOW9JRpiJfn71bbThUI3/view; https://drive.google.com/file/d/1UQDlp-_0UKNx9ySfTmc6WMENN7bEAsM3/view.

[8] The Oversight Board hopes that the AHG's misstatement regarding the termination of mediation does not mean it has abandoned mediation, and welcomes further discussion and participation in the mediation process.

8. ***PROMESA Does Not Contain an "Affordability" Test.*** Syncora argues that "the single-most-important issue in this Title III case [is] how much revenue PREPA can fairly and equitably generate." Syncora Obj. ¶ 2. The AHG likewise announces it will object to confirmation of the Plan at the disclosure statement objection deadline "based on what PREPA can afford to pay". AHG Obj. at 5. If the maximum PREPA could pay creditors were a requirement under PROMESA (indeed, purportedly the single most important requirement), one would expect the objections to cite to the relevant section of PROMESA. But there is no citation because there is no such requirement. This Court and the First Circuit have repeatedly observed that a purpose of PROMESA is to ensure provision of effective services.[9] Only subject to achieving that goal must creditors be provided "proper recompense." *Id.* Paying creditors the maximum possible on account of claims that may not be allowable in the first instance, based on assertions of security interests they do not have, and to the detriment of other creditors that have allowable claims and PREPA's ratepayers, is not proper recompense.[10] The Oversight Board considers affordability along with multiple factors impacting PREPA and Puerto Rico. For instance, raising rates encourages more businesses and consumers to convert to solar power and to get off the grid. Raising rates renders Puerto Rico less competitive on power costs and therefore less able to attract new investment. Rates may have to rise to raise money for capital expenditures. In short, the Oversight Board has to consider many factors and make judgments. The Court already determined

---

[9] *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 432 F. Supp. 3d 25, 30 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020) ("The goal of these PROMESA cases … is **not merely to maximize creditors' recoveries**. Rather, these restructuring cases require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well **as provide proper recompense of creditors**.") (emphasis added);

[10] Moreover, the Court has held that the best interests test under section PROMESA § 314(b)(7) does not set a floor for creditor recoveries, let alone require a Title III debtor to show it is paying the maximum it can afford. *See* ECF No. 19812; Case No. 17-bk-03283 ("the PROMESA best interests test does not impose a litmus test or establish a floor for creditor recoveries.").

5

that issues concerning the collateral security for and allowability of bondholders' claims should be heard prior to other disputes,[11] and Syncora and the AHG's desired path implicitly improperly seeks reconsideration of the Court's earlier order.

9. ***The Plan is Not a Placeholder.*** Bondholders moved the Court to compel the Oversight Board to file a plan prior to resolution of litigation because it could accommodate potential litigation outcomes through a "toggle plan." *See* ECF No. 2966, ¶ 15. As directed by the Court, the Oversight Board filed a confirmable plan that does exactly that for the most likely litigation outcomes, even though the Court allowed, but did not require, it to do so. The Plan is supported by multiple settlements with major creditors and accounts for myriad litigation outcomes. The AHG, which along with other bondholders has had a draft of the plan since December 8, 2022, first responded to the plan by saying it was "absurdly complex,"[12] but now argues the plan is a "placeholder" because it purportedly does not account for a single scenario where bondholders win all counts of the Amended Lien & Recourse Challenge (both the security interest challenge and the recourse challenge) and demonstrate the value of their collateral exceeds the value of gross revenues currently not in existence and that would require substantial (and likely unsustainable) rate increases. The AHG thereby argues the plan is unconfirmable because it believes it will prevail on a purported confirmation issue. But, no proposed plan is confirmable if the plan proponent loses on a confirmation issue. Notably the AHG and Syncora do not argue the plan is unconfirmable in the numerous scenarios where the Oversight Board prevails on the Lien Counts and/or Recourse Counts. The plan is confirmable in all reasonable and legally relevant

---

[11] *See* ECF No. 3013.

[12] ECF No. 3116, ¶ 4.

6

outcomes, and is also confirmable if the bondholders prevail in the Amended Lien & Recourse Challenge.

10. ***The Settlement Classification Offered to Bondholders is Appropriate.*** The Plan allows bondholders to choose between being placed in a settlement class or litigation class. That election empowers bondholders rather than prejudices them. Not all bondholders may want to be forced to take the risk they have no allowable unsecured claim simply because the AHG and certain monolines rejected the Oversight Board's offers in mediation. The AHG's contention that this structure is coercive is the opposite of the truth. The Plan simply offers bondholders a choice between being placed in a class that receives distributions even if the Bond Trustee loses the pending litigation, or in a class that only receives distributions if the Bond Trustee prevails on the recourse issue or the security interest issue. Depriving bondholders of this choice would only have the effect of forcing retail bondholders to take the litigated outcome even if they prefer to settle at the amount offered in the Plan.

11. ***The Settlement Classification Choice is Not a Solicitation of Votes on the Plan.*** The AHG's allegation that PREPA is soliciting bondholders without an approved disclosure statement is wrong. PREPA is not asking bondholders to accept the Plan before the disclosure statement is approved. It is giving bondholders the opportunity to choose which class to join. Any vote on a plan remains subject to their receipt of a Court-approved disclosure statement. This is similar to the procedure the Court approved in connection with the Commonwealth's Title III plan,[13] and similar to the process used for the 2019 RSA that the AHG and Syncora supported.

---

[13] *See* ECF No. 19812; Case No. 17-bk-03283 ¶¶ 141, 143 ("An agreement to accept the Debtor's plan, made post-petition but before approval of the disclosure statement, remained executory until [the creditor] actually filed its accepting ballot . . . Neither the recitation in the disclosure statement, nor the parties' execution of the written memorandum, constituted an acceptance of the plan as such.") (citing *In re Heritage Org., L.L.C.*, 376 B.R. 783, 793 (Bankr. N.D. Tex. 2007)).

7

12. ***Offers in Mediation are Irrelevant to Plan Confirmation.*** The AHG improperly points to offers made in mediation to support its position. *See, e.g.*, AHG Obj. at 1, FN 3. That some offers made during mediation have been made public makes their use on the merits no more appropriate, as AHG well knows. Moreover, the offers made by the Oversight Board in mediation were an effort to achieve settlement of litigation and achieve global peace. The publicly blown out materials and Risk Factors in the Disclosure Statement shows the risks PREPA will face in the next few decades, some of which were not sufficiently discovered when the proposal was made, or include risks that outside "global settlement" the Oversight Board is not willing to assume. The AHG and Syncora rejected those offers in favor of continued litigation. Those offers do not set a new floor for what bondholders must receive after choosing to litigate.

13. ***Settlement with the Fuel Line Lenders is Reasonable***. The AHG argues that PREPA's settlement with the Fuel Line Lenders renders the Plan patently unconfirmable because it is "an intercreditor dispute in which PREPA has no stake (and thus cannot 'settle' with other creditors' moneys)." AHG Obj. at 3. The Fuel Line Lenders' claim is against PREPA regardless of their rights against bondholders, and PREPA can therefore settle it within reasonable parameters. Indeed, the Fuel Line Lenders have sued PREPA over this very issue. Unlike the Bond claims, the Fuel Line claims have no risk whatsoever of being disallowed. Thus, the AHG's contention that the Fuel Line Lender's settlement and distribution is funded with AHG's money is simply wrong.

14. ***Inappropriate Ad Hominem Attacks on the Oversight Board***. The Oversight Board has brokered landmark deals with numerous creditor constituencies through these Title III Cases. Here, the Oversight Board has negotiated deals with the Fuel Line Lenders, National, and Vitol. Not agreeing to a deal the Oversight Board believes is too expensive for PREPA's ratepayers and would jeopardize Puerto Rico's economy and other restructurings, is not bad faith.

8

PREPA's antiquated and dilapidated system requires substantial capital investment, and PREPA lacks the ability to make these investments if it pays AHG and Syncora what they want. The bondholders' solution to sharply raise rates for 50 years to create more revenues raises all the concerns described above. The Oversight Board respects that the AHG desires to maximize its recovery. The Oversight Board has a statutory mission it must strive to fulfill and has always attempted to maximize creditor recoveries subject to carrying out its statutory mission.

## II. Reply to UCC Response

15. The UCC Response requests that all exhibits and schedules, "including the fully executed settlement agreement with National Public Finance Guarantee Corp., the load forecast and illustrative cash flow for new bonds, and the liquidation analysis" be filed by December 30, 2022. UCC Response ¶ 1. With respect to the request to set a deadline for the Oversight Board to file a settlement agreement with National, negotiations regarding definitive documentation of the Oversight Board's agreement in principal are ongoing. There is no authority to compel the Debtor to enter into a definitive settlement by a date-certain, and it would be prejudicial to both parties to set a deadline and force them to expedite their drafting, review, and consideration of their agreement.

16. With respect to the load forecast, illustrative cash flow, and the best interest test analysis, the Oversight Board is working as diligently and expeditiously as it can to complete such exhibits and anticipates filing such remaining exhibits no less than seven (7) days before the proposed February 3, 2023 objection deadline. This is consistent with the timing of supplemental disclosure statement material in the other Title III Cases. It is simply not feasible for the Oversight Board to complete drafting these materials and have them finalized and approved through the appropriate channels in the time period requested by the UCC. Notably, parties will have an opportunity to review the best interest test analysis and load forecast before the Disclosure

9

Statement Objection Deadline, and if the Disclosure Statement is approved, parties will have an opportunity to argue that the proposed Plan fails to meet the best interests test or feasibility at confirmation.[14] To the extent the UCC timeline is granted, the Oversight Board would have to request a delay of the Disclosure Statement hearing.

17. The UCC's next "concern" is that the Proposed Order should make clear that the approval of the proposed Depository Procedures does not excuse the Oversight Board from responding to discovery requests. UCC Response ¶ 2. For the reasons set forth above, the Depository Procedures provide for an orderly and streamlined discovery process, and confirmation discovery should be sought within those parameters–as was done in the Commonwealth and HTA's Title III cases. The Oversight Board will respond to discovery requests in accordance with the applicable rules and in a manner that ensures the Court's targeted deadlines are met.

### III. Reply to Bond Trustee Precautionary Objection

18. U.S. Bank National Association, as PREPA Bond Trustee, requests language be added to the Proposed Order providing the Proposed Order is not to be construed to authorize or deny authorization of the Debtor's proposed settlement offer to bondholders. Bond Trustee Obj. ¶ 5. As the Oversight Board communicated to counsel to the Bond Trustee, the proposed language is unnecessary. The Oversight Board is providing bondholders a choice as to their classification. The Urgent Motion nowhere requests relief providing the treatment offered in the settlement and litigation classes is fair or confirmable and the proposed order nowhere provides such relief. The only issue at this point is whether bondholders can be granted the option of electing to have their claims be in a class providing a settlement or in a class whose distribution is totally subject to the outcomes of litigation. In either case, they are free, after a disclosure statement is approved, to

---

[14] *See Order Denying Urgent Motion for Extension of Time to Object to Best Interest Analysis of Disclosure Statement* [Case No. 17-3283, ECF No. 16960].

10

vote to accept or to reject their chosen class' treatment. Before making their classification elections, the bondholders will receive materials advising them that if they choose the settlement class, their distributions will be subject to a floor of approximately fifty percent (50%) and up to payment in full depending on the outcome of the Amended Line & Recourse Challenge whether that class accepts or rejects the plan. Conversely, if they choose the litigation class, their distributions could go from near zero up to payment in full depending on the outcome of the litigation and the number of bondholders that elected to join the settlement class. Bondholders who elect to have their claims in the settlement class will relinquish their rights to oppose confirmation.

19. We submit the Court can clearly allow the Oversight Board to provide this classification choice to bondholders. Whether the final classification is confirmable will be determined at confirmation. Because the litigation is in process, it is important that the classification elections be made before the Court issues rulings. Otherwise, there will be nothing to settle (other than potential appeals) and if PREPA prevails in the litigation, bondholders will receive *de minimis* distributions even if they would have settled. Accordingly, the Bond Trustee Objection should be overruled.

[*Remainder of page intentionally left blank*]

**WHEREFORE** the Oversight Board respectfully requests that the Court overrule the Objections and grant the Debtor such other and further relief as is just.

Dated: December 22, 2022
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com
      ddesatnik@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative for PREPA*

*/s/ Luis F. Del Valle-Emmanuelli*
LUIS F. DEL VALLE-EMMANUELLI
USDC-PR No. 209514
P.O. Box 79897
Carolina, PR 00984-9897
Tel.: (787) 647-3503
Email: dvelawoffices@gmail.com

OF COUNSEL FOR A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR
Tel.: (787) 751-6764/763-0565
Fax: (787) 763-8260

*Co-Attorney for the Financial Oversight and Management Board as representative for PREPA*