# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>                           Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## SUPPLEMENTAL BRIEF OF BONISTAS DEL PATIO
## IN FURTHER SUPPORT OF ITS MOTION FOR PAYMENT OF
## CERTAIN PROFESSIONAL FEES AND EXPENSES BY THE COMMONWEALTH

---

[1] The debtors in these Title III cases, along with each debtor's respective Title III case number and the last four digits of each debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-05523) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ....................................................................................................... 2

   I.  Bonistas Substantially Contributed to the Successful Mediation and Confirmation of the COFINA and Commonwealth Plans ................................................... 2

      A.  Bonistas Was the Only Non-Government, Non-Creditor, Non-Fiduciary Party to Undertake Obligations Under the Plan Support Agreement and to Receive Consent Rights ............................................................. 3

      B.  The Parties to the COFINA PSA Publicly Highlighted the Involvement of Bonistas in Their Public Statements ............................................... 5

      C.  Bonistas' Work to Secure Support for the COFINA Plan ........................... 8

      D.  Bonistas' Professional Fees and Expenses Exceed the Requested $7 Million and Remain Unpaid .................................................................. 10

   II.  The Bonistas Expenses are Payable by the Commonwealth Under 11 U.S.C. § 503(b) and Section 15.2 of the COFINA Plan ............................................. 11

      A.  11 U.S.C. § 503(b) Confers Discretion to Allow Administrative Expenses, Guided by the Examples Congress Specifically Enumerated .............................. 12

      B.  Awarding the Bonistas Expenses in Full is Consistent with Sections 503(b)(3)(D) and 503(b)(4) .................................................................. 14

CONCLUSION .................................................................................................... 18

i

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Brandt v. Lazard Freres & Co. (In re Healthco Int'l, Inc.)*,
    310 F.3d 9 (1st Cir. 2002) ......................................................................... 13

*In re Celotex Corp.*,
    227 F.3d 1336 (11th Cir. 2000) ................................................................. 18

*Chevron U.S.A. v. Echazabal*,
    536 U.S. 73 (2002) ..................................................................................... 15

*In re DP Partners, Ltd. Pshp.*,
    106 F.3d 667 (5th Cir. 1997) ..................................................................... 12

*In re Lister*,
    846 F.2d 55 (10th Cir. 1988) ..................................................................... 12

*In re M & G USA Corp.*,
    No. 17-12307 (BLS), 2019 WL 2005915 (Bankr. D. Del. May 6, 2019) ............ 14

*Marcus Montgomery Wolfson & Burten, P.C. v. AM Int'l  (In re AM Int'l )*,
    203 B.R. 898 (D. Del. 1996) ...................................................................... 14

*In re Mark Anthony Constr., Inc.*,
    886 F.2d 1009 (11th Cir. 2018) ................................................................. 15

*In re Maust Transp., Inc.*,
    589 B.R. 887 (Bankr. W.D. Wash. 2018) .................................................. 15

*Mediofactoring v. McDermott  (In re Connolly N. Am. LLC)*,
    802 F.3d 810 (6th Cir. 2015) .......................................................... 13, 14, 15

*In re Mirant Corp.*,
    354 B.R. 113 (Bankr. N.D. Tex. 2006) ...................................................... 18

*In re Ocean Blue Leasehold Prop. LLC*,
    414 B.R. 798 (Bankr. S.D. Fla. 2009) ....................................................... 18

*In re Pow Wow River Campground, Inc.*,
    296 B.R. 81 (Bankr. D.N.H. 2003) ............................................................ 12

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990) ........................................................................................... 13

*In re Richton Int'l Corp.*,
   15 B.R. 854 (Bankr. S.D.N.Y. 1981) ............................................................... 12

*In re R.L. Adkins Corp.*,
   505 B.R. 770 (Bakr. N.D. Tex. 2014) .............................................................. 18

*In re S & Y Enters. LLC*,
   480 B.R. 452 (Bankr. E.D.N.Y. 2012) ............................................................. 14

*In re U.S. Lines, Inc.*,
   103 B.R. 427 (Bankr. S.D.N.Y. 1989),
   *aff'd*, No. 90 CIV. 3823 (MGC), 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991) ...................... 12

*In re Worldwide Direct, Inc.*,
   334 B.R. 112 (Bankr. D. Del. 2005) ................................................................. 18

*Yates v. United States*,
   574 U.S. 528 (2015) ......................................................................................... 13

STATUTES & RULES

PAGE(S)

11 U.S.C. § 503(b) .......................................................................................... *passim*

11 U.S.C. § 503(b)(1)-(9) .......................................................................... 13, 15

11 U.S.C. § 503(b)(3)(D) ............................................................................ *passim*

11 U.S.C. § 503(b)(4) ......................................................... 12, 13, 14, 16, 18

11 U.S.C. § 503(c) ......................................................................................... 15

11 U.S.C. § 1102 ............................................................................................ 12

48 U.S.C. § 2161(a) ....................................................................................... 11

To the Honorable United States District Judge Laura Taylor Swain:

Pursuant to the Order of the Court dated December 14, 2022 (Dkt. No. 23070), Bonistas del Patio, Inc. ("Bonistas del Patio" or "Bonistas") hereby submits its supplemental brief in further support of its *Motion of Bonistas del Patio for Payment of Certain Professional Fees and Expenses by the Commonwealth* (Dkt. No. 22578) (the "Motion"), and states as follows:

## PRELIMINARY STATEMENT

1.      As requested by the Court, Bonistas del Patio respectfully submits this brief to supplement the Motion, the Resnick Declaration,[2] and Bonistas' statements to the Court on December 14, 2022 regarding why the professional expenses of Bonistas (the "Bonistas Expenses") in connection with the negotiation and implementation of the COFINA Plan of Adjustment (the "COFINA Plan") and the Commonwealth/COFINA Settlement, and as well as in connection with the Title III mediation, should be paid by the Commonwealth.

2.      At the December 14, 2022 hearing on the Motion, the Court noted that the Motion and Resnick Declaration spoke about Bonistas' contributions to the mediation and COFINA Plan negotiations only in general terms—which was necessary as a consequence of mediation confidentiality.  The Court also asked whether claim for Bonistas Expenses should be allowed even though (1) Bonistas does not itself hold any bonds; (2) Ducera is not an attorney or accountant; and (3) Bonistas has not itself paid the Bonistas Expenses.

3.      Part I of the argument below provides additional detail, relying on publicly available information and its implications to preserve mediation confidentiality, regarding the substantial contributions of Bonistas.  Part II explains why the Court has ample authority to allow

---

[2] "Resnick Declaration" refers to the Declaration of Brian M. Resnick dated February 13, 2019 (Dkt. No. 22578-2, Case No. 17-02383-LTS (Commonwealth)).

the Bonistas Expenses as an administrative claim payable by the Commonwealth and responds to
the other questions posed by the Court.

## ARGUMENT

### I. Bonistas Substantially Contributed to the Successful Mediation and Confirmation of the COFINA and Commonwealth Plans

4.      As stated in the Motion, Bonistas strongly believes that the Commonwealth
knowingly incurred an obligation to pay the Bonistas Expenses, leading to the Commonwealth's
stipulation to pay the Bonistas Expenses in 2019 that was subsequently withdrawn.[3]   The Motion
also states that, even if the Commonwealth did not incur such an obligation through its own
conduct, the claim for the Bonistas Expenses should be allowed as an administrative expense claim
because Bonistas and its professionals made a substantial contribution to the Title III cases of
COFINA and the Commonwealth. In either case, the Commonwealth must pay the Bonistas
Expenses pursuant to Section 15.2 of COFINA's plan of adjustment (the "COFINA Plan").[4]

5.      The record before the Court and the facts below show not only that Bonistas made
a substantial contribution to the Title III cases justifying the payment of the Bonistas Expenses,
but also that Bonistas' contributions were unique due to the nature of its role and its constituency,
and that, consequently, payment of the Bonistas Expenses would not be a precedent for payment
of the expenses of any other parties.

6.      On December 14, the Court noted that some of the descriptions of the contributions
of Bonistas in the Motion and in the Resnick Declaration were at a high level of generality.  This
is unavoidable because of mediation confidentiality.  However, as set forth below, Bonistas

---

[3] *Informative Motion Regarding Stipulation Allowing Administrative Expense Claim of Bonistas del Patio, Inc.* (Dkt. No. 580, Case No. 17-03284-LTS (COFINA)); *Notice of Withdrawal by AAFAF of Previously Filed Stipulation Regarding Bonistas Expenses and Motion to Vacate Scheduling Orders With Respect to the Stipulation* (Dkt. No. 669, Case No. 17-03284-LTS (COFINA)).

[4] (Motion ¶¶ 19-22.)

believes that its substantial, and uniquely important, contributions in the Title III cases of COFINA and the Commonwealth can be gleaned from publicly available information.  Should the Court wish to consider information that is subject to mediation confidentiality, Bonistas stands ready to provide such information *in camera* upon the Court's direction to do so.

> **A.**  **Bonistas Was the Only Non-Government, Non-Creditor, Non-Fiduciary Party to Undertake Obligations Under the Plan Support Agreement and to Receive Consent Rights**

7.     The Motion and Resnick Declaration explain that Bonistas served as an active participant in negotiations and the mediation.  (Motion ¶¶ 5-12; Resnick Decl. ¶¶ 6-9.)  The importance of Bonistas' role as an advocate for on-island bondholders is evident from the fact that it was the only entity that is not itself a creditor, nor a statutory fiduciary for creditors, nor a government party, that is included among the initial signatories to the COFINA Plan Support Agreement (the "PSA").  It is also the only such entity with express consent rights under the PSA and COFINA Plan documents, and the only such entity with obligations to take specific actions in support and furtherance of confirmation of the COFINA Plan.

8.     Because of Bonistas' recognized role as the advocate for thousands of local Puerto Rico bondholders with billions of dollars of diverse holdings in the Commonwealth GO, COFINA senior and COFINA subordinated bond classes, Bonistas was a signatory to the PSA, with the rights and obligations of a PSA party.  In fact, when the PSA was signed, the Oversight Board made a point of expressly noting, in its public announcement of the PSA, Bonistas' support for the proposed COFINA Plan and the Commonwealth/COFINA Settlement.[5]

---

[5] Press Release, Financial Oversight and Management Board for Puerto Rico, Oversight Board Achieves Further Milestone with COFINA Bondholders (Aug. 29, 2019).

9.     The COFINA Plan provided Bonistas with consent rights over the "Definitive Documents,"[6] and Bonistas was expressly included alongside the Government Parties and the PSA Creditors in the COFINA Plan provisions governing exculpation,[7] conditions precedent to confirmation,[8] waivers of conditions precedent to confirmation,[9] conditions precedent to the Effective Date,[10] and waiver of conditions precedent to the Effective Date.[11]  All of these rights were granted to, and obligations imposed upon, Bonistas—despite not itself being a bondholder— because of its unique role as the advocate in the plan negotiations for the diverse interests of local Puerto Rico bondholders, and as the party charged with garnering support from local Puerto Rico bondholders in order to assure confirmation of the COFINA Plan.[12]

10.     Under the PSA, Bonistas was singled out as having specific plan support obligations, requiring Bonistas to:

> (i) actively encourage support by "on island" bondholders for the agreement set forth in the Term Sheet, (ii) post a statement of support for the Term Sheet and the Plan on the Bonistas' website, (iii) make Bonistas available to "on island" bondholders to answer questions regarding the Term Sheet, the Plan, Disclosure Statement, Confirmation Order and other Definitive Documents, and (iv) support legislation

---

[6] *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Dkt. No. 439, Case No. 17-3284-LTS (COFINA) § 1.83.

[7] COFINA Plan §§ 1.93, 30.7(c).

[8] COFINA Plan § 24.1(c).

[9] COFINA Plan § 24.2.

[10] COFINA Plan § 25.1(c) and (f).

[11] COFINA Plan § 25.2.

[12] At the December 14, 2022 hearing, counsel for AAFAF stated "many issues remain[ed] to be resolved around the treatment of local bondholders we did recognize Bonistas -- the real work they did . . . .  They played an important role in the Commonwealth-COFINA settlement, was extremely important . . . we acknowledge their impact in bringing local bondholders and representing local bondholders was really important."  (Transcript of December 14, 2022 Hearing at 53:22-54:6.)

that may be necessary or appropriate to implement the transactions contemplated by the Term Sheet.[13]

11.     The PSA imposed additional obligations on Bonistas, including the obligation to "publicly support the terms herein and in the Term Sheet and publicly encourage the support and timely votes for the Plan from 'on island' bondholders that hold Senior COFINA Bond Claims or Junior COFINA Bond Claims."[14]  Bonistas' efforts to support the COFINA Plan are described in greater detail in Part I.C, below.

12.     In sum, among all of the parties in the Title III cases, only a small number, integrally involved in the mediation, were involved in the negotiation of and were initial signatories to the PSA, were specifically granted consent rights in the PSA and the COFINA Plan, and were expressly required to undertake specific duties to support the COFINA Plan.  That Bonistas, as an advocate for a large and important group of creditors, was expressly recognized by the other PSA parties, including the Oversight Board, in this regard is tangible proof in publicly available information that it made a substantial contribution to the negotiations and that its role was critical to the success of the COFINA mediation and the COFINA Plan.

### B.     The Parties to the COFINA PSA Publicly Highlighted the Involvement of Bonistas in Their Public Statements

13.     The mediators and the other mediation parties relied heavily on the active participation of Bonistas, with the diverse holdings of its constituents, to make progress in the negotiation of the COFINA Plan.  As Susheel Kirpilani, lead counsel for the COFINA Senior Bondholders' Coalition, noted, because Bonistas acted for the interests of "on-Island holders, who were almost evenly weighted between senior and subordinate COFINA bonds, the Bonistas' views

---

[13] PSA (Exhibit B to Disclosure Statement (Dkt No. 310, Case No. 17-03284-LTS (COFINA)) § 4.9(b).

[14] PSA § 5.1.

on what would constitute a fair and reasonable compromise of the senior-subordinate dispute were given great weight by the other parties to the negotiations."[15]

14.     This critical role of Bonistas was not only reflected in the specific terms of the PSA and the COFINA Plan; it was also among the key facts that the Commonwealth and Oversight Board advanced to demonstrate the fairness of the COFINA Plan to retail holders.  For example, in response to an objection to approval of the Disclosure Statement for the COFINA Plan,[16] the Oversight Board argued that the interests of retail bondholders were protected through the involvement of Bonistas:

> The Disclosure Statement does not deny any retail bondholders due process.   Importantly, retail bondholders were represented throughout the process by Bonistas, a signatory to the Amended PSA.  In doing so, Bonistas looked after the interests of bondholders and was successful, negotiating for increased distributions for all "on island" bondholders.[17]

15.     Counsel for the Oversight Board reiterated this point on the record at the Disclosure Statement Hearing:

> In the mediation process that Judges Houser, Ambro, and Atlas conducted, there were not just members of the senior coalition involved.  Rather, there were bondholders who were also junior bondholders and, <u>most importantly, the Bonistas del Patio, which is the group that has been organized to represent the interests of retail on-island bondholders.  They were an active participant in all of the mediation sessions.  And, in fact, they are a party, as also the junior bondholders are a party, to the Amended and Restated Plan Support</u>

---

[15] *Statement of the COFINA Senior Bondholders' Coalition in Support of Informative Motion Regarding Stipulation of Section 15.2 Expenses* (Dkt. No. 589, Case No. 17-03284-LTS (COFINA)).

[16] *Objections to the Plan of Adjustment and the Adequacy of the COFINA Disclosure Statement and the Relief Requested in the Disclosure Statement with Reservation of Rights* (Dkt. No. 4215, Case No. 17-03283-LTS (Commonwealth)), at 2-3.

[17] O*mnibus Reply of Puerto Rico Sales Tax Financing Corporation to Objections to Motion for Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Election Notices, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Election Deadlines, and (VIII) Approving Vote Tabulation Procedures* (Dkt. No. 4301, Case No. 17-03283-LTS (Commonwealth)), Exhibit A, at 3.

<u>Agreement.</u>  So this is not something that was put together just by senior holders and certainly not to take advantage of any junior holders.  Rather, <u>this was a compromise and settlement on the foundational point between the two agents and the agreement in principle and then furthered by the Oversight Board itself when it conducted negotiations with the mediation team, with the respective holders of senior, junior, and the Bonistas itself</u>.[18]

16.   Once the Disclosure Statement was approved and solicitation began, local Puerto Rico bondholders were urged to vote in favor of the COFINA Plan through the Disclosure Statement's representations about the involvement of Bonistas, and an express representation that Bonistas supported the COFINA Plan and urged creditors to vote to accept the plan.[19]

17.   At the confirmation stage, the Oversight Board again represented that the involvement of Bonistas ensured that the COFINA Plan reflected the input of local holders.  In its brief in support of confirmation, the Oversight Board described Bonistas as one of the "key parties involved in negotiating the Plan and preserving assets for the estate" and one who "played a key role in the development of the Plan and the negotiations which paved the way for a successful reorganization."[20]  At the Confirmation Hearing, counsel to the Oversight Board explained:

> <u>We know that the Plan of Adjustment negotiations ensued that were led by the mediation team, and that the participants included Bonistas (ph) as representatives of the island bondholders</u>; some senior only bondholders; some junior only bondholders; some bondholders who held both junior and senior bonds, some weighted more heavily to the senior and some weighted more heavily to the junior.[21]

---

[18] Disclosure Statement Hearing Tr. 47:10-48:2 (Dkt. No. 374, Case No. 17-03284-LTS (COFINA)) (emphases added).

[19] *Disclosure Statement for the Second Amended Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* ("Disclosure Statement") (Dkt No. 4364, Case No. 17-03283-LTS), at 4, 6, 79-80.

[20] *Memorandum of Law in Support of Puerto Rico Sales Tax Financing Corporation's Third Amended Title III Plan of Adjustment* ("Confirmation Brief") (Dkt. No. 444, Case No. 17-03284-LTS (COFINA), at 70.

[21] Confirmation Hearing Tr. at 121:16-122:1 (Dkt. No. 4850, Case No. 17-03283-LTS (Commonwealth)) (emphasis added).

18.     The Court credited these representations, and in the Court's Findings of Fact and Conclusions of Law approving the COFINA Plan, found that "All major Classes of Claims were represented in [the] Mediation . . . .  Bonistas, advocating for the interests of Puerto Rico resident bondholders, actively participated."[22]

### C.     Bonistas' Work to Secure Support for the COFINA Plan

19.     In fulfilling its obligations under the PSA and at the express request of the PSA Parties, including the Oversight Board, Bonistas engaged in a number of initiatives aimed at building support for the COFINA Plan among Puerto Rico bondholders.  As outlined in the Motion and the Resnick Declaration, these efforts included a media campaign, direct outreach to bondholders and broker-dealers, and assisting in communications with Puerto Rico COFINA Bondholders.  (Motion ¶ 11; Resnick Decl. ¶ 9.)

20.     To further elaborate, Bonistas' media campaign sought to raise awareness of the COFINA Plan, to address the specific concerns of Puerto Rico resident bondholders, and to explain why Bonistas encouraged support for the COFINA Plan.  This campaign included at least eight public statements in Puerto Rico and national media that Bonistas prepared and published, ranging from letters and op-eds published in the Financial Times[23] and El Nuevo Dia,[24] "earned" media in

---

[22] *Amended Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* ("COFINA Confirmation Order") (Dkt. No. 5053, Case No. 17-03283-LTS (Commonwealth)) at ¶ 101.

[23] Rafael E. Rojo, *Cofina structure reflects a genuine compromise in Puerto Rico*, Financial Times, Dec. 4, 2018.

[24] Rafael E. Rojo, *La reestructuración de la deuda de COFINA ayuda a miles de Bonistas del Patio*, El Nuevo Dia, Sept. 25, 2018.

El Nuevo Dia,[25] Sin Comillas,[26] Metro,[27] and Caribbean Business[28] reporting on the work of Bonistas and its support for the COFINA Plan, to a statement of support issued jointly with the Senior Bondholder Coalition.[29]  In parallel, Bonistas maintained a public website (in Spanish and English) addressing the concerns of local bondholders,[30] and published a "Questions and Answers" for local bondholders regarding the COFINA Plan to specifically address questions that it had received from local holders.[31]

21.    Bonistas complemented its public media campaign with direct communications with concerned local bondholders.  This direct engagement included numerous calls and emails with local bondholders.  To ensure a wide reach, Bonistas organized several large in-person meetings with local bondholders at meeting venues in Puerto Rico.[32]  The Bonistas professionals attended some of these meetings in person or by remote video conference.[33]

22.    Bonistas coupled these media and direct communications with communications to broker-dealers for local bondholders, encouraging them to communicate with local bondholders regarding the COFINA Plan.  Bonistas also distributed announcements notifying and, later, reminding local bondholders of the voting and election deadlines for the COFINA Plan.

---

[25] Joanisabel González, *Bonistas del Patio endosan el plan de ajuste en Cofina*, El Nuevo Dia, Dec. 17, 2018.

[26] *Defienden el acuerdo de COFINA*, Sin Comillas, Nov. 6, 2018.

[27] *Bonistas del Patio reitera apoyo al plan de ajuste de Cofna*, Metro, Dec. 17, 2018.

[28] Eva Lloréns Vélez, *Cofina bondholder groups stress benefits of restructuring deal*, Caribbean Business, Nov. 5, 2018.

[29] Joint Statement from Bonistas del Patio and the COFINA Senior Bondholder Coalition, Nov. 5, 2018.

[30] www.bonistasdelpatio.com

[31] Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan of Adjustment Questions & Answers, Dec. 18, 2018, http://www.bonistasdelpatio.com/portfolio_page/cofina-qa/.

[32] (Resnick Decl. ¶ 9.)

[33] (*Id.*)

9

23.     Finally, Bonistas supported the Oversight Board's efforts to obtain confirmation of the COFINA Plan by working to identify the needs and concerns of local bondholders and by assisting the Oversight Board's counsel in formulating radio announcements and other communications publicizing the solicitation of the COFINA Plan.

### D.     Bonistas' Professional Fees and Expenses Exceed the Requested $7 Million and Remain Unpaid

24.     As will be no surprise, all of the work described above required a very significant investment of time and effort from the Bonistas Professionals.[34]  Among other things:

- Between June 26, 2017 and February 11, 2019, Davis Polk attorneys dedicated at least 2,584.7 hours to representing Bonistas in connection with the Mediation and the development of the COFINA and Commonwealth plans.  That time corresponds to at least $3.036 million in fees at Davis Polk's customary rates applicable at the relevant time.

- The Bonistas Professionals attended at least forty-six mediation sessions, many of which included discussion of the Commonwealth-COFINA dispute over allocation of the SUT, which was integral to the inter-creditor negotiations.

- Ducera professionals attended no less than 351 calls and meetings in connection with their work for Bonistas.

- Davis Polk hosted a number of meetings at its offices, most of which included representatives of bondholders only, and accordingly Bonistas' role at those negotiating sessions would not have been visible to the other parties.

25.     The requested amount of Bonistas Expenses is significantly lower than the amount that the Professionals would have charged in other engagements of similar complexity, size, and scope.  As noted above, Davis Polk's request of $2 million in fees is more than $1 million less than the value of its time at its then-standard rates for similar work.  Ducera provided materials to the Fee Examiner showing that Ducera's fees for comparable engagements can exceed $10 million.

---

[34] Detailed information underlying the facts set forth in this section I.D was provided, on a confidential basis, to the Fee Examiner.  Bonistas del Patio is prepared to submit this material for *in camera* review should the Court so request.

26.     The Bonistas Expenses pale in comparison to fees and expenses paid to other creditors involved in the negotiation of the COFINA and Commonwealth plans.  As the Oversight Board explained to the Court, Consummation Costs were to be paid to the negotiating parties "as consideration for their efforts in assisting in the formulation of the Plan of Adjustment that has garnered significant creditor support, continuing to assist in the finalization of definitive agreements and ancillary documents, and the costs incurred in those and other efforts (including the expenses of defending COFINA's property interests for which the PSA Creditors asserted a right to seek substantial contribution claims)."[35]  While, as described above, Bonistas played a uniquely important role in these negotiations—advocating for thousands of constituents who were unable to pay their own expenses—Bonistas' professionals remain unpaid while other major parties to the mediation negotiations have been reimbursed 100 times as much as Bonistas now seeks.[36]

## II.  The Bonistas Expenses are Payable by the Commonwealth Under 11 U.S.C. § 503(b) and Section 15.2 of the COFINA Plan

27.     As explained in the Motion, the Bonistas Expenses are allowable as administrative expenses and payable under 11 U.S.C. § 503(b), made applicable to these Title III cases by 48 U.S.C. § 2161(a).  This follows from the plain text of Section 503(b), as well as from First Circuit

---

[35] *Omnibus Reply of Puerto Rico Sales Tax Financing Corporation to Objections to Motion for Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Election Notices, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Election Deadlines, and (VIII) Approving Vote Tabulation Procedures* (Dkt. No. 430, Case No. 17-03283-LTS (Commonwealth)), Exhibit A, at 3.

[36] $332 million in costs were paid to creditors under the COFINA Plan (Declaration of Natalie A. Jaresko (Dkt. No. 4756, Case No. 17-03283-LTS (Commonwealth)) at ¶ 44), while approximately $411 million in similar fees and costs were paid to creditors under the Commonwealth Plan (Declaration of Steven Zelin (Dkt. No. 18734, Case No. 17-03283-LTS (Commonwealth)) at ¶ 86).

law making it clear that Section 503(b) sets forth a non-exhaustive list of administrative expenses that the Court may allow.  (Motion ¶ 23.)

### A.  11 U.S.C. § 503(b) Confers Discretion to Allow Administrative Expenses, Guided by the Examples Congress Specifically Enumerated

28.    At the December 14, 2022 hearing on the Motion, the Court asked whether it may allow the Bonistas Expenses even though (1) Bonistas does not itself hold any bonds; (2) Ducera is not an attorney or accountant; and (3) Bonistas did not itself pay the Bonistas Expenses.  The language and structure of section 503(b), and cases analyzing the statute, demonstrate that section 503(b) authorizes the Court to allow the Bonistas Expenses, and the plain text of paragraphs 503(b)(3)(D) and 503(b)(4) of the Code support such allowance.

29.    Section 503(b)(3)(D) authorizes allowance of administrative claims for "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4), incurred by a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title."  11 U.S.C. § 503(b)(3)(D) (emphasis added).   Section 503(b)(4) authorizes allowance of "reasonable compensation for professional services rendered by an attorney or an accountant of [such] an entity . . . based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant."  11 U.S.C. § 503(b)(4) (emphasis added).

30.    As explained in the Motion—and as has not been disputed—a substantial contribution claim under these sections should be allowed when the applicant has provided actual

and demonstrable benefits to the estate and creditors.  See <u>Motion</u>, at ¶¶ 25-26.[37]  In determining

whether to allow an administrative expense claim under section 503(b), as applied in the First

Circuit, the Court must exercise its sound judgment in two important ways.  <u>First</u>, the Court must

consider the scope of the non-exclusive enumerated categories of expenses set forth in the statute.

11 U.S.C. § 503(b)(1)-(9).  <u>Second</u>, the Court must consider the putative administrative expense

claim guided by comparison to the specifically enumerated categories.  *Brandt v. Lazard Freres

& Co. (In re Healthco Int'l, Inc.*), 310 F.3d 9, 12 (1st Cir. 2002) ("Section 503(b) does not . . .

provide a complete enumeration of allowable costs and fees.  Those items listed in Section 503(b)

are prefaced by the word 'including,' which the Bankruptcy Code explains is not meant to have

limiting effect."); *Mediofactoring v. McDermott (In re Connolly N. Am. LLC)*, 802 F.3d 810 (6th

Cir. 2015) (explaining that "the examples in the subsections of § 503(b) . . . provide a contextual

framework" for section 503(b)).  The closer an expense is to the examples in the enumerated list,

the more likely it should qualify as an administrative expense under ordinary principles of statutory

construction.  *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 543 (2015) (giving content to the

broad statutory term "tangible object," by using the *noscitur a sociis* canon and reference to

accompanying statutory terms "document" and "record"); *Reves v. Ernst and Young*, 494 U.S. 56,

60 (1990) (looking to adjacent definitions of "security" in section 3(a)(10) of the Securities

---

[37] *See, e.g.*, *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988) ("the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors"); *In re DP Partners Ltd. Partnership*, 106 F.3d 667, 672 (5th Cir. 1997) (services which foster and enhance the progress of reorganization make a substantial contribution); *In re Pow Wow River Campground, Inc.*, 296 B.R. 81, 86 (D.N.H. 2003) (a substantial contribution is provided by services that "resulted in a direct, significant and demonstrable benefit to the estate"); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989), *aff'd*, No. 90 CIV. 3823 (MGC), 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991) ("The 'substantial contribution' test is thus satisfied where the services rendered have substantially contributed to an actual and demonstrable benefit to the debtor's estate, its creditors, and to the extent relevant, the debtor's shareholders."); *In re DP Partners Ltd. Partnership*, 106 F.3d at 673; *In re Richton Intern. Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) (awarding compensation for fees incurred when contributing to the process of reorganization as a whole).

Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), and directing courts to conclude "any note" is a security if it "bears a strong resemblance . . .to one of the enumerated categories of instrument.").

31.     The Court therefore may, in its sound discretion, allow the Bonistas Expenses under section 503(b) if the Court determines that Bonistas made "substantial contributions" in the cases, guided by the categories of expenses allowable under sections 503(b)(3)(D) and 503(b)(4).

### B.     Awarding the Bonistas Expenses in Full is Consistent with Sections 503(b)(3)(D) and 503(b)(4)

32.     The Bonistas Expenses satisfy the "substantial contribution" standard under Section 503(b)(3)(D), and, as the Fee Examiner has already determined, the Bonistas Expenses meet the reasonableness standard of section 503(b)(4).[38]  Allowing the Bonistas Expenses is in no way novel.  A number of courts concluded that it is within the discretion of the Court to allow substantial contribution claims to non-creditors and to financial advisors.  *E.g.*, *In re S & Y Enters., LLC*, 480 B.R. 452 (Bankr. E.D.N.Y. 2012) (concluding that the expenses of a bidder, as a non-creditor, could be allowed an administrative claim had it made a substantial contribution); *In re M & G USA Corp.*, Chapter 11 Case No. 17-12307, 2019 WL 2005915 (Bankr. D. Del. May 6, 2019) (allowing administrative claim including fees of financial advisor on account of ad hoc committee's substantial contribution); *Marcus Montgomery Wolfson & Burten P.C. v. AM Int'l Inc. (In re AM In'l, Inc.)*, 203 B.R. 898, 905 (D. Del. 1996) (allowing administrative claim for financial expert retained by shareholders making a substantial contribution).

33.     The scope of the Court's discretion with respect to substantial contribution claims is illustrated by the Sixth Circuit's decision in *In re Connolly North America*.  There, the Sixth

---

[38] *Fee Examiner's Statement Regarding Bonistas del Patio Motion for Section 503(b) and Plan-Based Payments* (Dkt. No. 22933, Case No. 17-03283-LTS), ¶ 17 (concluding that if the Bonistas Expenses are payable, "the Fee Examiner has concluded that the fees requested by Ducera and Davis Polk qualify as reasonable, actual, and necessary pursuant to the standards of PROMESA §316 and 317).

Circuit concluded that claims with respect to a party that made a substantial contribution to a case under chapter 7 of the Bankruptcy Code could be allowed under Section 503(b), despite the fact that only chapters 9 and 11 are expressly referred to in section 503(b)(3)(D).  802 F.3d at 818. While the *Connolly* court recognized that some have interpreted paragraphs 503(b)(3) and (b)(4) to preclude substantial contribution claims not specifically enumerated, such as claims by a creditor in a chapter 7 case, the Sixth Circuit explained that section 503(b)'s structure, using, as it does, the word "including," makes it clear that such a reading is mistaken, and that exclusionary canons of construction such as "the specific controls over the general," or "*expressio unius est exclusio alterius*" have no application to section 503(b).  *In re Connolly N. Am.*, 802 F.3d at 817-18 (noting that those canons have been applied where statutes lack the word "include"); *accord In re Mark Anthony Constr., Inc.*, 886 F.2d 1011, 1106 (9th Cir. 1989) ("we conclude that the administrative expense statute's use of 'including' renders the *expressio unius* rule inapplicable to section 503"); *see also Chevron U.S.A. Inc v. Echazabal*, 536 U.S. 73, 80 (explaining that a statute's use of "the expansive phrasing of 'may include'" weighs against application of *expressio unius*).  In addition, as the Supreme Court has explained, the *expressio unius* canon applies only when a statutory list permits an inference that exclusion of an item similar to others in the list means that the exclusion was intentional.  *Id.*, 536 U.S. at 81 (explaining that "[t]he canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded.")[39]  Moreover, allowing the Bonistas Expenses as administrative

---

[39] When Congress intends to bar allowance of an expense that might otherwise be allowed under subsection 503(b), it does so explicitly in subsection 503(c), and not by negative implication from the expenses enumerated in section 503(b).  *See In re Connolly N. Am.*, 802 F. 3d at 818 ("We refuse, therefore, to find a limitation where Congress did not expressly create one") (internal citations and quotations omitted); *see also In re Maust Transp., Inc.*, 589 B.R. 887, 893 (Bankr. W.D. Wa. 2018).  A proper reading of the statute allows courts to use the

expense claims is entirely consistent with the text of sections 503(b)(3)(D) and 503(b)(4). Section 503(b)(3)(D), for example, expressly provides for substantial contribution claims by creditors as well as committees representing creditors. Accordingly, an entity—like Bonistas, that, while not itself a creditor, is acting on behalf of the interests of creditors, can be allowed an administrative expense claim under that paragraph if it makes a substantial contribution in the case.

34. Similarly, the Court can allow claims for compensation of non-accountant financial advisors on the same basis as claims for compensation of attorneys and accountants that are allowable under section 503(b)(4). Section 503(b)(4) by its terms subjects expenses of attorneys and accountants to the "reasonable compensation" standards set forth in section 503(b)(4). However, consistent with the principles set forth above, the categories of professionals identified in section 503(b)(4) should not be viewed as exclusive. Their specific enumeration does not preclude the Court, in the sound exercise of its discretion, from allowing as administrative expenses under section 503(b) reasonable compensation of non-accountant financial advisors. This is especially true where, as here, the role of the financial advisor was not focused on the parochial interests of a single party (like a bidder in a section 363 sale), but instead on working together with and under the supervision of Bonistas' attorneys to advocate for a diverse constituency of creditors in the structuring and negotiation of a plan of adjustment and related settlements that benefitted all parties in interest in the Commonwealth and COFINA cases.

35. Notably, an unduly rigid reading of section 503(b) (which we do not endorse) would <u>permit</u> allowance of claims for compensation of non-accountant financial advisors, like

---

enumerated categories to guide their discretionary allowance of other expenses similar to those Congress expressly provided. If the exclusionary canons discussed above were applicable, courts could not look to the enumerated categories as guideposts for their discretion, but instead, courts would have to determine in each case whether a non-enumerated expense is somehow "close enough" to the expenses enumerated in section 503(b)(1)-(9) to warrant the inference that Congress had the not-enumerated expense in mind and meant to <u>prohibit</u> it.

those of Ducera, under section 503(b)(3)(D), without regard to the standards for allowance of professional compensation set forth in section 503(b)(4).   This is because section 503(b)(3)(D) permits the allowance of the actual, necessary expenses of a party making a substantial contribution, other than compensation and reimbursement specified in paragraph (4).   If section 503(b)(4) were read as being rigidly applicable only to attorneys and accountants, the carve-out from section 503(b)(3)(D) for paragraph (4) would not apply to non-accountant financial advisors. Rather than precluding allowance of compensation for financial advisors, such a reading would <u>authorize</u> allowance of such compensation without subjecting it to the standards of paragraph (4). We of course do not suggest that the standards of paragraph (4) should not apply to Ducera.   We simply note this as further evidence that the Court must exercise sound discretion with respect to the express enumeration of illustrative categories in the subsections of section 503(b).

36.     Finally, the fact that Bonistas itself has no resources to pay the Bonistas Expenses should not be an obstacle to allowance and payment of the Bonistas Expenses.   The fact that a party cannot pay its professionals does not preclude that party, and, for that matter, its professionals in their own right, from making a substantial contribution in the cases, as is evident here.   It would be wrong, and unsound as a matter of bankruptcy policy, for professional compensation from the estate to be allowable only to parties who can afford to pay their professionals, and nothing in the statute requires this.   A contrary reading of section 503(b) would deprive creditors like the Bonistas constituency of thousands of Puerto Rico bondholders of adequate representation in connection with plan negotiations, and more generally deprive debtors' estates and their creditors of the involvement of essential parties who can help to expedite and reduce the costs of bankruptcy cases. In cases like this one, where there is no official creditors committee to negotiate on behalf of a

17

large constituency of creditors, it is essential for there to be other vehicles for their participation in

plan negotiations with the support of competent professional advice.

37.     In sum, just as the PSA parties and the Court itself have heretofore recognized

Bonistas' contribution to the success of the COFINA Plan and the mediation as an advocate for a

critically important constituency of creditors—even though Bonistas is not itself a creditor—the

Court should allow and authorize the Commonwealth to pay the Bonistas Expenses as

administrative expense claims on account of Bonistas' substantial contributions in the Title III

cases.  It should authorize payment of both Davis Polk's and Ducera's requested compensation as

reasonable within the meaning of section 503(b)(4), as was found by the Fee Examiner.[40]

## CONCLUSION

38.     The facts and law set forth in the Motion, the Resnick Declaration and in this

Supplemental Brief show that Bonistas and its professionals made substantial contributions in

these Title III cases.  Indeed, as argued in the Motion and more fully articulated in this submission,

the contributions to the Title III cases of the Bonistas and its professionals are paradigm examples

of substantial contributions within the meaning of section 503(b)(3)(D) of the Bankruptcy Code,

that should be allowed as administrative expenses by the Court.  Bonistas and its professionals

played a unique and significant role in negotiation of a consensual plan and in the mediation.[41]

They provided material assistance in garnering creditor support for the plan.[42]  In sum, they played

a critical role at every stage in the negotiation, drafting and confirmation of the COFINA Plan and

---

[40] *Fee Examiner's Statement Regarding Bonistas del Patio Motion for Section 503(b) and Plan-Based Payments* (Dkt. No. 22933, Case No. 17-03283-LTS), ¶ 17.

[41] (Motion ¶ 26 (courts routinely award a substantial contribution claim where parties—like Bonistas del Patio here—play a "significant" or "central" role in the successful negotiation of a consensual plan. *E.g., In re Celotex Corp.*, 227 F.3d 1336, 1340 (11th Cir. 2000); *In re Mirant Corp.*, 354 B.R. 113, 138 (Bankr. N.D. Tex. 2006).)

[42] (*Id.* (citing *In re R.L. Adkins Corp.*, 505 B.R. 770, 784 (Bakr. N.D. Tex. 2014) ("It is reasonable that [a party's counsel] should be paid some amount for," among other things, "soliciting votes . . .")).

related settlements, as has been publicly recognized by the mediation parties, including the Oversight Board.[43]

39.     For the foregoing reasons, and for the reasons set forth in the Motion, the Bonistas Expenses should be allowed on account of the significant and substantial contribution Bonistas del Patio made in these Title III cases.  Bonistas del Patio respectfully requests that the Court enter an order substantially in the form of the proposed order that Bonistas del Patio filed on December 13, 2022, at Docket No. 23057.


Dated: December 28, 2022

*s/José L. Ramírez-Coll*
José L. Ramírez-Coll
USDC-PR Bar No. 221702
ANTONETTI, MONTALVO & RAMÍREZ-COLL
P.O. Box 13128
San Juan, PR 00908
Telephone:  (787) 977-0303
Facsimile:  (787) 977-0323
Email:  jramirez@amrclaw.com

Respectfully submitted,

*/s/ Donald S. Bernstein*
Donald S. Bernstein (*Pro Hac Vice*)
Benjamin S. Kaminetzky (*Pro Hac Vice*)
Brian M. Resnick (*Pro Hac Vice*)
Marc J. Tobak (*Pro Hac Vice*)
Stephanie Massman (*Pro Hac Vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Telephone:  (212) 450-4000
Email:  donald.bernstein@davispolk.com
         ben.kaminetzky@daivspolk.com
         brian.resnick@davispolk.com
         marc.tobak@davispolk.com
         stephanie.massman@davispolk.com

*Counsel to Bonistas del Patio, Inc*

---

[43] (*Id.* (*citing In re Worldwide Direct, Inc.*, 334 B.R. 112, 123-24 (Bankr. D. Del. 2005); *In re Ocean Blue Leasehold Prop. LLC*, 414 B.R. 798, 810 (Bankr. S.D. Fla. 2009) ("Drafting a confirmed plan at the request of and with the consent of an estate professional evidences a contribution to the estate, particularly where the plan is confirmed")).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.  I also hereby certify that the foregoing was served pursuant to the Sixteenth Amended Notice, Case Management and Administrative Procedures Order (Docket No. 20190).

*s/José L. Ramírez-Coll*
José L. Ramirez-Coll