IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>as representative of<br><br>**THE COMMONWEALTH OF PUERTO RICO, et al.,**<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>**(Jointly Administered)** |
| In re:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>as representative of<br><br>**THE EMPLOYMENT RETIREMENT SYSTEM OF THE COMMONWEALTH OF PUERTO RICO ("ERS"),**<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 03566-LTS |

**CONSOLIDATED REPLY**
**TO DOCKET NUMBERS 23165, 23166 AND 23175**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

**TO THE HONORABLE COURT:**

Individual Plaintiffs, the Estate of Pedro José Nazario Serrano; the Estate of Juanita Sosa Pérez[2]; Joel Rivera Morales; María de Lourdes Gómez Pérez; Héctor Cruz Villanueva; Lourdes Rodríguez and Luis M. Jordán Rivera, all of them Retirees/Beneficiaries of the ERS and Plaintiffs in a State Court claim for damages (the "Commonwealth Action") that is currently pending in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part with number K AC2011-1067 (the "Commonwealth Court"), without submitting to the jurisdiction of this Court, very respectfully hereby Reply to (i) Drivetrain, LLC's ("Trustee") (Docket 23165); (ii) the Unsecured Creditors Joinder (Docket 23166); and (iii) to USB Financial's Opposition to Motion for Reconsideration Under Bankruptcy Rule 9023 (Docket 23175).

## I. INTRODUCTION

Essentially the three filings mentioned above, restate the same arguments. **First**: that the Motion for Reconsideration does not comply with the necessary procedural requirements and **Second**: that appearants' argument concerning Judicial Taking has been waived. All filings fail to contest in substance the fact that this Court's ruling enjoining the appearants from prosecuting their personal claims before the Commonwealth Court constitutes a judicial taking of private property belonging to the Individual Plaintiffs Beneficiaries, who are Plaintiffs in the State Court action. In other words, the central issue is whether the Court's ruling of November 29, 2022 (Docket 22927), has the effect of eliminating the state Plaintiffs' property interest under State Law for the benefit of UBS, a Defendant who is a private party and who is not in bankruptcy in the case before the US District Court. In particular the issue is whether the Takings Clause of the Fifth Amendment of the US Constitution precludes such course of action by a US District Court.

---

[2]Pedro José Nazario and Juanita Sosa Pérez are deceased. Once their respective declaration of heirs is available, we will make the substitution.

Notwithstanding how UBS wishes to characterize the issues, the undisputed facts are:

1) **the Plaintiffs Retirees have a personal and independent cause of action against UBS, which is based on Article 1802 of the Puerto Rico Civil Code for the torts committed by UBS and which is being litigated in the Court of First Instance in Puerto Rico;**

2) **their right to claim on the basis of an independent and personal cause of action has been recognized by Statute of the Legislature of Puerto Rico, as well as by judicial precedent that is binding between the parties and is firm, final and unappealable;**

3) **UBS previously made the argument before the local Courts that the Plaintiffs Retirees lacked standing because their claims were derivative and lost. The issue of *Res Judicata* applies and UBS is precluded from relitigating the issue before this Court;[3]**

4) **this Court does not have personal jurisdiction over the Plaintiffs Retirees;**

5) **UBS has not filed for bankruptcy; nor is it a party protected by this Title III Bankruptcy Proceeding;**

6) **the Plaintiffs Retirees are suing for the loss of their own particular and personal benefits and damages; not for the benefit and damages that the ERS may have lost and may have been compensated for, under the Plan of Adjustment, even if those damages resulted from the dealings that UBS had the ERS;**

7) **a judgment in the State Court action against UBS does not affect or, otherwise, impact the ERS, its creditors, or the Commonwealth; and,**

8) **there is no Statute that prevents both claims; those of the Avoidance Action Trustee and those of the Plaintiffs Retirees from proceeding in parallel tracks in different Courts and before different jurisdictions.**

## II. ARGUMENT

### A. The Takings Clause

On November 29, 2022, in its *MEMORANDUM OPINION AND ORDER*, this Honorable Court concluded that: "[T]he ERS Beneficiaries are hereby enjoined from prosecuting the Commonwealth Action insofar as the ERS Beneficiaries assert claims against UBS that are based in any way on its business dealings with the ERS." (Docket 22927).

---

[3] This was categorically decided on August 30, 2013 by the Court of Appeals of Puerto Rico, at *Pedro José Nazario Serrano y otros v. UBS Financial Services*, KLAN201300738.

-3-

There are various reasons why this Honorable Court should reconsider its Order, including the following, without limitation: (1) as will be explained hereinafter, under Article 1802 of the Puerto Rico Civil Code, the ERS Beneficiaries have a clear cause of action against UBS for the damages they individually suffered as a result of UBS' conduct, even if <u>there was no contractual relationship or other dealings between UBS and the ERS Beneficiaries or if the damages suffered by</u> the ERS Beneficiaries derive from damages caused by UBS to the ERS; (2) The claims against UBS are presently being litigated in the Commonwealth Courts and the Plaintiffs are being deprived by the US District Court decision of their day in Court; (2) <u>the debtors in the Title III case in question do not include UBS, and any resolution of the Commonwealth Action in favor of the ERS Beneficiaries would in no way alter debtors' rights, liabilities, options or freedom of action, or otherwise have an impact under the handling and administration of the Bankruptcy estate</u>; (3) under Article 1802 of the Puerto Rico Civil Code, the ERS Beneficiaries, as individual plaintiffs, are clearly entitled to recover <u>from UBS</u> (who is not a debtor in the Title III cases) all damages caused to them by the conduct of UBS, including the difference between their original ERS pension benefits and the reduced pension benefits provided by the Plan. The amount of said difference should be determined by the Commonwealth Court in the Commonwealth Action, and the ERS Beneficiaries have a clear right to claim it under Article 1802 of the Puerto Rico Civil Code; (4) <u>under Article 1802 of the Puerto Rico Civil Code, no direct contract or business dealings between UBS and the ERS Beneficiaries, individually, is required for the ERS Beneficiaries to have a valid and independent cause of action against UBS</u> if, as alleged in the Commonwealth Action, the UBS conduct caused damages, directly or indirectly, to the ERS Beneficiaries; (5) the confirmation and consummation of the POA may protect some (but not all) of the ERS Beneficiaries' original pension benefits, but said

possible protection does not preclude the ERS Beneficiaries from claiming their net individual losses pursuant to the Commonwealth Action; (6) <u>in the Commonwealth Action, the ERS Beneficiaries do not seek to recover assets that, under the confirmed POA, neither belong to ERS nor are resources designated to cover ERS's former obligations to the ERS Beneficiaries</u>, and <u>the claims by the Avoidance Active Trustees against UBS in the Second Amended Complaint of September 15, 2022, are only to recover fees charged by UBS and include no claims for other damages inflicted by UBS to the ERS Beneficiaries caused by UBS, directly or indirectly</u>.

UBS, in its capacity as financial consultant and investment adviser, had the obligation and fiduciary duty to alert the members of the System's Board of Trustees about the risks inherent in the issuance and proposed use of the proceeds of the 2008 POB's. By failing to do so, UBS breached that duty. Said conduct not only harmed the ERS itself, **but inflicted foreseeable damages upon the ERS beneficiaries for which they have not been compensated**.

If this Court does not reconsider its Order, it would be depriving the ERS Beneficiaries of a proper adjudication of their individual claims against UBS in the Commonwealth Courts, which constitutes a "judicial taking" without just compensation, which is prohibited by the United States Constitution, as stated by the plurality Opinion in the United States Supreme Court's decision in <u>Stop the Beach Renourishment v. Florida Department of Environmental Protecion</u>, 560 U.S. 702 (2010), and deprives the ERS Beneficiaries of property without due process of law, which is also prohibited by the United States Constitution.

The Fifth Amendment of the U.S. Constitution commands that "[n]or shall private property be taken for public use without just compensation." The federal Takings Clause prohibits, among other actions, that the government takes "the property of *A* for the sole purpose of transferring it to another private party *B*, even if *A* is paid just compensation." <u>Kelo v. City of New London</u>, 545 U.S. 469, 477 (2005). While normally this type of taking is carried out by the

legislative or executive branches, the Constitution prohibits such confiscation by the government, "no less through its courts than through its legislature." Hughes v. State of Washington, 389 U.S. 290, 298 (1967)(Stewart, concurring).

The concept of a "judicial taking" subject to the commands of the Fifth Amendment was first proposed by Justice Stewart in this concurrence in Hughes, *supra*. Given the facts of that case –and the ordinary phenomenon of eminent domain in the United States-, the language of the concurrence focuses on **state court decisions** that, through their interpretation of state law, "achieved the same result by effecting a retroactive transformation of private into public property, without paying for the privilege of doing so." Id, at 298. This principle is entirely applicable to federal courts.

The subject of judicial takings in violation of the Fifth Amendment as a result of a court's actions returned to the U.S. Supreme Court in Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection, *supra*. Writing for a four-Justice plurality, Justice Scalia emphasized the fact that the Fifth Amendment is not confined to executive or legislative action: "Moreover, though a classic taking is a transfer of property to the State **or to another private party** by eminent domain, **the Takings Clause applies to other state actions** that achieve the same thing." (Emphasis added) Id, at 713 (plurality opinion). In other words, "[t]he Takings Clause…is not addressed to the action of a specific branch or branches", and can include the actions of the judiciary. Id.

Although these statements focus on **state** judicial decisions that are contrary to the Takings Clause of the federal Constitution, the legal principles and analysis found in these cases are equally applicable –if not more- to **federal** judicial actions that have the practical effect of transferring a property interest from one private party to another, particularly when none of those parties have availed themselves of a bankruptcy proceeding. Such is the effect of an injunction that precludes a proper adjudication of a state court action by a private party in order

to reclaim their property from another private party; the net result would be to take "the property of *A* for the sole purpose of transferring it to another private party *B*." Kelo, *supra*, which is precisely what the Takings Clause forbids. It is up to the Puerto Rican Courts to decide which party has a better claim to the contested property interest at play under Puerto Rican law. By inserting itself before the claim can be adjudicated on the merits, the Court has risked running afoul of the Takings Clause, since it directly destroyed the property interests that the plaintiffs in the state action we are trying to vindicate. In other words, the direct effect of the injunction is to deprive plaintiffs of their property to the benefit of another private party that has not availed itself of the protections of a bankruptcy proceeding. It is not, as UBS contends, merely the adjudication of disputed and competing claims. The merits of those claims are left, precisely, for Puerto Rican courts to adjudicate under Puerto Rican law and that is precisely what is being intensely litigated in the case that UBS is seeking to enjoin and that this Court has effectively done.

It should be noted that one of the objections that have been raised against using the "judicial takings" doctrine is that it can harm important federalism interests by second-guessing or interfering with state court interpretation of state law. This is due to the fact that most "judicial takings" claims are brought to challenge the constitutionality of state court judgments interpreting state law. **But such concerns are not present when the offending court is a federal court**. With regard to a federal court, there are no federalism concerns, no need to analyze the situation under 14th Amendment Due Process, and no problem regarding interpretation of substantive state property law. It is simply a matter of determining whether the federal court has risked acting contrary to the requirements of the Takings Clause and the prohibition of using its judicial power to effectuate a taking of the rights of citizens to properly

litigate their claims against a party that is not in bankruptcy, but is pretending to use the Bankruptcy Court to stop a litigation that is before the Commonwealth Courts. To shield UBS from the claim properly being adjudicated in the Commonwealth Courts is an abuse of the power of the Federal Courts under the most basic principles of Federalism.

In summary, existing legal principles, including the plurality Opinion in Stop the Beach Renourishment, *supra*, bar a judicial body, whether state or federal, from violating the Takings Clause of the Fifth Amendment. **This includes the issuing of an injunction permanently barring a state proceeding between private parties that has the practical effect of eliminating the plaintiff's property interests and transfers them to another private party. A court cannot do what the legislature or executive are barred from doing**. Alexis Sly, *The Debate on Judicial Takings: I Scream, You Scream, We all Scream for Property Rights*, 33 No. 7 ZONING AND PLANNING LAW REPORT 1 (2010).

In this case, it should also be noted that the Court lacks jurisdiction over the private litigation **where neither of the parties (UBS or the appearants) are subject to a bankruptcy proceeding**. The **merits** as to the claim brought by the plaintiffs in the Commonwealth action – including whether there is an independent cause of action under Puerto Rican statutes- is a matter left to the courts of the Commonwealth. By enjoining the proceedings in the first place, the court has overreached and directly impeded the adjudication of a state law claim by a non-bankrupt private party against another non-bankrupt private party, thus resulting in a judicial taking in contravention of the commands of the Fifth Amendment.

UBS' contentions that no property rights were taken from the appearants it thus misguided. The appearants have filed a valid claim under Puerto Rican law against a non-bankrupt private party. That claim alleges that UBS's action caused direct economic harm to appearants, thus generating a property interest for the latter. By enjoining the Commonwealth

action without adjudicating the claims after a trial on the merits, the Court has preemptively deprived the appearants of their property interests to the benefit of the other private party in the litigation, thus effectuating a taking.

### B. Waiver

The waiver argument raised by the objectors is equally apterous. Raising the judicial takings clause argument prior to this Court's Order enjoining the Plaintiffs from prosecuting their personal State Court action would have been premature. The proper time to raise this constitutional doctrine before this Court is once it issued its order. "...*Raising the judicial takings claim might be procedurally awkward in the earlier stages of litigation, particularly where the judicial decision giving rise to the taking strikes like a bolt from the blue.* ***But motions for rehearing and, more obviously, the appellate process provide procedural means for raising the judicial takings argument...***". See, Eduardo Peñalver & Lior Strahilevitz, "Judicial Takings or Due Process?" (John M. Olin Program in Law and Economics Working Paper No. 549, 2011, p. 45) available at http://papers.ssrn.com/sol3/ papers.cfm?abstract_id=1791849.

### III. CONCLUSION

Because the November 29, 2022 Order of this Court (Docket 22927), has the effect of depriving the Plaintiffs Retirees of their individual personal claims for the benefit of a private party namely UBS and, since those claims are personal and do not derive in any way from the relationship that existed between UBS and the ERS, the Court should reconsider its Order and allow Plaintiffs' claims against UBS to go forward. Otherwise, depriving the Plaintiffs of their individual claims would result in a judicial taking that is precluded under the Fifth Amendment of the US Constitution. Finally, UBS' argument that the claims are derivative is barred by the doctrine of *Res Judicata* and collateral estoppel.

**THEREFORE**, the ERS Individual Plaintiffs respectfully request this Honorable Court to reconsider its *MEMORANDUM OPINION AND ORDER* [Docket No. 22927]; and, instead, enter an order denying UBS' Motion to Enforce the Plan of Adjustment.

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY:** That on this same date a true and exact copy of this motion was filed with the Clerk of Court using CM/ECF system, which will notify a copy to counsel of record.

In San Juan, Puerto Rico, this 3rd day of January 2023.

| | |
|---|---|
| **VICENTE & CUEBAS**<br>P.O. Box 11609<br>San Juan, PR 00910-1609<br>Phone No. (787) 751-8000<br>Fax No. (787) 756-5250 | **PUJOL LAW OFFICES, PSC**<br>P.O. Box 363042<br>San Juan, PR 00936-3042<br>Phone No. (787) 724-0900<br>Fax No. (787) 724-1196 |
| */s/Harold D. Vicente*<br>**Harold D. Vicente**<br>USDC-PR Bar No. 117711<br>hvicente@vclawpr.com | */s/Francisco Pujol-Meneses*<br>**Francisco Pujol-.Meneses**<br>USDC-PR Bar No. 212706<br>fpujol@pujollawpr.com |
| */s/Harold D. Vicente-Colón*<br>**Harold D. Vicente-Colón**<br>USDC-PR Bar No. 211805<br>hdvc@vclawpr.com | **BUFETE ANDRÉU & SAGARDÍA**<br>261 Avenida Domenech<br>San Juan, Puerto Rico 009718<br>Phone No. (787) 754-1777/763-8044<br>Fax No. (787) 763-8045 |
| | */s/José A. Andréu-Fuentes*<br>**José A. Andréu-Fuentes**<br>USDC-PR Bar No. 204409<br>jaf@andreu-sagardia.com |

*Counsel for Individual Plaintiffs, Beneficiaries of the Retirement System
of the Commonwealth of Puerto Rico*