# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>                              Debtors. | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## REPLY BRIEF OF BONISTAS DEL PATIO
## IN FURTHER SUPPORT OF ITS MOTION FOR PAYMENT OF
## CERTAIN PROFESSIONAL FEES AND EXPENSES BY THE COMMONWEALTH

---

[1] The debtors in these Title III cases, along with each debtor's respective Title III case number and the last four digits of each debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-05523) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

Bonistas del Patio, Inc. ("Bonistas del Patio" or "Bonistas") hereby submits its reply brief (the "Reply") in further support of its *Motion of Bonistas del Patio for Payment of Certain Professional Fees and Expenses by the Commonwealth* (Dkt. No. 22578) (the "Motion") and in response to the *Statement of the Fiscal Oversight and Management Board for Puerto Rico* regarding the Motion (Dkt. No. 23176) (the "Statement"), and states as follows:

## REPLY

1. Bonistas has repeatedly stated—in the Motion, at the hearing on the Motion, and in our Supplemental Brief—that, regardless of whether the Commonwealth by its conduct has previously bound itself to pay the professional expenses of Bonistas (the "Bonistas Expenses"), the Bonistas Expenses should be allowed by the Court under section 503(b) of the Bankruptcy Code on account of the substantial contributions made by Bonistas to the Title III cases, and accordingly the Commonwealth should be required to pay such expenses. Despite having not objected to the Motion before the December 14, 2022 hearing, the Oversight Board, invited by the Court to take a position, filed the Statement, disagreeing with Bonistas on both factual and legal grounds.

2. The Oversight Board's mission is to minimize expenditures by the Commonwealth and its instrumentalities. It is not, accordingly, surprising that the Oversight Board would oppose the allowance of administrative expense claims where it believes it could plausibly do so. Indeed, it would be understandable that the Oversight Board might take the position that substantial contribution claims, even those of real merit, should not be allowed by the Court, despite whatever authority or discretion the Court may have to do so. What cannot be explained is how the Oversight Board could fail to acknowledge forthrightly the actual and substantial contributions

1

made by a particular party—Bonistas—to the Title III cases, especially after repeatedly touting—and relying on—those contributions to obtain confirmation of the COFINA Plan of Adjustment (the "COFINA Plan") and approval of the Commonwealth/COFINA Settlement. It is one thing to say the Bonistas Expenses should be disallowed even if Bonistas made substantial contributions to the cases; it is another to deny that Bonistas made such contributions, flying in the face of the Oversight Board's own clear and repeated statements to the contrary at the time those contributions were made.

3. As noted in our Motion and in our Supplemental Brief, counsel for the Oversight Board vigorously argued at the time of confirmation of the COFINA Plan that Bonistas' participation in the plan negotiations was sufficient reason to overrule objections that key constituencies (retail bondholders and subordinated COFINA bondholders) were not adequately represented in the plan negotiations and that the plan did not adequately protect the interests of such constituencies.[2] So compelling was Bonistas' role in this regard that the order confirming the COFINA Plan cited the involvement of Bonistas "advocating for the interests of Puerto Rico resident bondholders" as a reason that "[a]ll major Classes of Claims were represented in [the] Mediation."[3] In addition, the Oversight Board pressed Bonistas to publicly support the COFINA Plan, called upon Bonistas to take actions to encourage local bondholders to support the plan, and asked Bonistas to assist the Oversight Board in locating local bondholders to articulate their support for the plan at the COFINA confirmation hearing.[4]

4. In light of the Oversight Board's statements about the significance of Bonistas'

---

[2] Motion ¶ 12; Supplemental Brief ¶¶ 13-18.

[3] *Amended Memorandum of Findings of Fact and Conclusions of Law in Connection with Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Dkt. No. 5053, Case No. 17-03283-LTS (Commonwealth)) at ¶ 101.

[4] Supplemental Brief ¶¶ 19-23.

2

contributions and support, and the Oversight Board's repeated requests for assistance from Bonistas, it is notable that the bond investors who were PSA parties—many of whom had far lesser roles in the negotiation and confirmation of the COFINA Plan than Bonistas—collected handsome fees for their "contributions" as PSA parties, while Bonistas did not.[5] These fees dwarfed by multiple orders of magnitude the requested Bonistas Expenses, even though the well-heeled bondholders receiving such fees acted solely for their own interests and not for a large class of Puerto Rico residents whose representation was eschewed by the Official Creditors Committee, and who, unlike these large financial investors, did not have the wherewithal to participate in the mediation on their own.

5. The Oversight Board derived the benefits of the contributions it wanted and demanded from Bonistas. It obtained Bonistas' support in efforts to arrive at a compromise among the warring factions in the COFINA plan negotiations; it got Bonistas to publicly declare its support for the COFINA Plan; it got Bonistas to sign the PSA and undertake significant obligations to actively promote confirmation of the COFINA Plan with retail on-island bondholders, which Bonistas did. And it used all of the foregoing to argue that retail and subordinated bondholders were adequately represented in the mediation because of Bonistas' participation in order to convince the Court to confirm the COFINA Plan and approve the Commonwealth/COFINA settlement—the gating issues for a future Commonwealth Plan.

6. Now the Oversight Board finds it expedient to assert that Bonistas "injected itself into the restructuring process"[6] and has "not established that it made a 'substantial contribution.'"[7] In light of the public record that the Oversight Board knowingly and deliberately made about the

---

[5] Motion ¶ 28.

[6] Statement ¶ 3.

[7] Statement ¶ 8.

3

significance of Bonistas' role, how could the Oversight Board assert this? The Oversight Board does not attempt to reconcile the inconsistency of its current position with its former statements. It merely asks the Court to accept its current characterization, seeking to minimize Bonistas' role. Bonistas submits that, despite this, the Oversight Board is bound by its prior admissions regarding the genuine significance of Bonistas' contributions.

7. As for the legal basis for allowing a substantial contribution claim for the Bonistas Expenses, the Oversight Board asserts that Bonistas is not a "creditor," and therefore does not qualify for allowance of its expenses under section 503(b)(3)(D), and that Ducera is not an "attorney or accountant" and does not qualify for allowance of its fees under section 503(b)(4) even if Bonistas does qualify under section 503(b)(3)(D).[8] These arguments entirely ignore that Bonistas' claims are under section 503(b)—not, as the Oversight Board would have it, solely under the "attorney and accountant" provisions of section 503(b)(4), as narrowly interpreted by the Oversight Board.[9] As more fully discussed in the Motion and our Supplemental Brief, under the First Circuit's interpretation of section 503(b), this Court has ample authority to allow the Bonistas Expenses because the enumeration of expenses allowable under section 503(b) is not exhaustive.[10]

8. The Oversight Board does not cite a <u>single</u> in-circuit authority supporting its exclusionary interpretation of section 503(b). It also ignores that the non-exclusive character of section 503(b) adopted in the First Circuit has been applied in another Circuit in the specific context of substantial contribution claims to give the court authority to allow expenses of a party

---

[8] Statement ¶ 6.

[9] Statement ¶ 1 ("Bonistas . . . request[ed] payment of fees and expenses . . . as administrative expenses allowable in the Title III case of the Commonwealth . . . pursuant to 11 U.S.C. § 503(b)(4).").

[10] *Brandt v. Lazard Freres & Co. (In re Healthco Int'l, Inc.)*, 310 F.3d 9, 12 (1st Cir. 2002) ("Section 503(b) does not . . . provide a complete enumeration of allowable costs and fees."). *See also* Motion ¶¶ 23-24 ("The Bonistas Expenses are administrative expenses allowable and payable under 11 U.S.C. § 503(b) . . . . Section 503(b) sets forth a non-exhaustive list").

4

that made a substantial contribution to a case even though outside the literal language of section 503(b)(3)(D).[11] Simply put, the Oversight Board asks the Court to read section 503(b) as exclusionary when, based on the plain language of the section and controlling authority, it is not. As explained in detail in the Motion and Supplemental Brief, even if the Court were to conclude that the Bonistas Expenses do not fall squarely within the literal language of section 503(b)(3)(D) or section 503(b)(4), the Court can be guided by those sections and, under a correct reading of section 503(b), can allow the expenses.[12] Cases that adopt a contrary, exclusive reading of the subsections of 503(b)—like certain of the out-of-circuit cases the Oversight Board cites—are inapplicable as they rely on interpretations that the First Circuit has explicitly or implicitly refused to apply to section 503(b).[13]

9. The argument that allowance of the Bonistas Expenses should be denied because Bonistas is not literally a creditor is specious. Bonistas advocated <u>on behalf of creditors</u> and indeed was implored to do so by all of the PSA parties, including the other creditors, the Puerto Rico government, and, most importantly, as established by its own contemporaneous statements, the Oversight Board. The idea that Ducera's fees should be disqualified from allowance because it was a financial advisor, and not an "attorney or accountant," is also specious. As explained in our Supplemental Brief, the fact non-accountant financial advisors are omitted from section 503(b)(4) supports the proposition that expenses for such advisors are allowable under section 503(b)(3)(D)

---

[11] *Mediofactoring v. McDermott (In re Connolly N. Am. LLC)*, 802 F.3d 810 (6th Cir. 2015).

[12] Motion ¶¶ 23-24; Supplemental Brief ¶¶ 27-37.

[13] *In re Healthco*, 310 F.3d at 11-12. The decisions from the Eastern District of Pennsylvania upon which the Oversight Board relies give section 503(b) an exclusive reading, contrary to the law of this Circuit, and thus have no application here. For example, the Statement relies upon *In re Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. 291, 295 n.3 (Bankr. E.D. Pa. 1996), which itself cites *In re St. Mary Hospital*, 97 B.R. 199 (Bankr E.D. Pa. 1989). *See* Statement, at ¶ 6 n.5. *In re St. Mary Hospital* holds that "requests for compensation on the basis of these Code provisions which do not fit strictly within its confines must be denied," while the decision *In re St. Mary Hospital* relies upon, *In re Beck-Rumbaugh Associates, Inc.*, 68 B.R. 882, 885 (Bankr. E.D. Pa. 1987), holds that "we will decline any requests for compensation not specifically authorized by the Code."

5

without regard to the standards set forth in section 503(b)(4).[14] Our brief takes the position that, even if the reasonableness standard in section 503(b)(4) were not applicable to Ducera based on the type of overly literal reading of the statute urged by the Oversight Board, Ducera meets those standards, as was found by the Fee Examiner.[15]

10. The Oversight Board's additional assertion that section 503(b)(4) is designed solely to <u>reimburse</u> a "creditor" for its expenses is at odds with the kind of literalist reading of the words of the statute urged on the Court by the Oversight Board.[16] Nothing in the statute supports the Oversight Board's asserted "reimbursement" requirement, and it cites no authority for its assertion. To the contrary, the statute does not use the word "reimbursement" other than in reference to "reimbursement for actual, necessary expenses incurred by such attorney or accountant." 11 U.S.C. § 503(b)(4). The Court should reject the Oversight Board's invitation to impose an additional requirement that would preclude the payment of professionals for parties who have made a substantial contribution to a case, but cannot themselves afford to pay such professionals.[17]

11. In light of the foregoing, it is difficult to understand how the Oversight Board could assert, in an entirely conclusory fashion, that the record "does not contain sufficient information" to establish the efforts of Bonistas that benefited the Title III cases or establish that the Bonistas Expenses are tied to such efforts.[18] The Oversight Board is aware of the contrary facts and of its own contrary statements. It is aware of the Fee Examiner's conclusion that the Bonistas Expenses

---

[14] Supplemental Brief ¶ 35.

[15] *Fee Examiner's Statement Regarding Bonistas del Patio Motion for Section 503(b) and Plan-Based Payments* (Dkt. No. 22933, Case No. 17-03283-LTS), ¶ 17 (concluding that if the Bonistas Expenses are payable, "the Fee Examiner has concluded that the fees requested by Ducera and Davis Polk qualify as reasonable, actual, and necessary pursuant to the standards of PROMESA §316 and 317.").

[16] Statement ¶ 8.

[17] Supplemental Brief ¶ 36.

[18] Statement ¶ 8.

are reasonable. And it is aware of the finding of this Court regarding the significance of Bonistas' efforts, which the Oversight Board asked for and obtained.[19] Moreover, Bonistas has in fact supplied the Oversight Board with additional, non-public information demonstrating Bonistas' contributions on a number of occasions. Months before filing the Motion, Bonistas provided such information to the Board, in April and July 2022, and again in August 2022. Most recently, on December 23, 2022, Bonistas sent the Oversight Board a seven-page single-spaced letter detailing its contributions, and containing material protected by mediation confidentiality. The Oversight Board did not question any of the information supplied to it, nor did it request additional information, and it should not be permitted to use mediation confidentiality simultaneously as a sword and shield by counterfactually asserting that Bonistas has not supplied sufficient information while knowing Bonistas cannot supply such information to the Court unless relieved of its confidentiality obligations.

12. For the same reasons, the Oversight Board does not need discovery, as it belatedly suggests in a footnote in the Statement.[20] During the years that these issues have been pending, Bonistas has given the Oversight Board any information it requested (and more). The Oversight Board did not seek discovery in 2019, when these issues were first raised in this Court; it did not seek discovery after the filing of the Motion in October 2022; and now it does not do more than drop a threatening footnote in its Statement based on an assertion that it does not have sufficient information at this late date.[21] The Oversight Board cannot fairly be allowed to take an even more

---

[19] Judicial estoppel prevents a party from taking a position clearly inconsistent from its prior position when that position was accepted by a court and the change of position would impose an unfair detriment on the opposing party. *E.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

[20] *See* Statement ¶ 8 n.8.

[21] In light of the wealth of information Bonistas has provided to the Oversight Board, the Oversight Board's independent knowledge of relevant facts, as demonstrated by its own contemporaneous statements, and the fact that Bonistas has timely responded to any requests for additional information made by the Oversight Board during the

belated third bite at the apple by seeking discovery it has never before requested and does not need.

13. The Motion has demonstrated that the Bonistas Expenses are payable by the Commonwealth both because Bonistas made a substantial contribution to the Commonwealth Title III case and because Section 15.2 of the COFINA Plan makes the Commonwealth liable to pay all expenses incurred in connection with the COFINA Plan and Commonwealth/COFINA settlement.[22] As explained in the Motion, the Court, the Oversight Board, and all other parties recognized that the Commonwealth/COFINA settlement and confirmation of the COFINA Plan were a necessary foundation for the Commonwealth's plan, meaning that Bonistas' contributions in connection with the COFINA Plan also benefited the Commonwealth.[23] This is why the COFINA Plan provides that the Commonwealth will pay administrative expenses of COFINA incurred in connection with the "development, negotiation, confirmation, and consummation of the [COFINA] plan and the compromise and settlement of the Commonwealth-COFINA Dispute."[24] The Bonistas Expenses would thus be payable by the Commonwealth even if Bonistas' contributions were solely to the COFINA Title III case (which they were not).

14. Finally, the Oversight Board suggests—in hindsight—that Bonistas "could have" taken other routes to secure compensation for its professionals, such as having the mediation team apply to retain the Bonistas' professionals, having the Board or the government retain the Bonistas' professionals, or seeking recognition as an official committee.[25] These arguments are simply misdirection. Section 503(b) contains no "exhaustion" requirement mandating that a party making

---

nearly four years that these issues have been percolating, as well as the Fee Examiner's findings on the issue of reasonableness, the Oversight Board's tardy assertion that perhaps it should be allowed to take discovery if the Court rules in Bonistas' favor on the legal issues is entirely inappropriate.

[22] Motion ¶¶ 20-21.

[23] Motion ¶¶ 10-11.

[24] Motion ¶ 19.

[25] Statement ¶¶ 3, 4 n.4, 9, 10.

8

a substantial contribution first pursue alternative avenues that could have allowed for the payment of its professional expenses before seeking recognition of its administrative claim. The fact that alternative arrangements might also have allowed for the payment of professional expenses has no bearing on whether, under the existing facts, Bonistas has made substantial contributions warranting allowance of the Bonistas Expenses as an administrative expense claim.

## CONCLUSION

15. For the foregoing reasons, and for the reasons set forth in the Motion and the Supplemental Brief, the Oversight Board's position should be rejected, and the Bonistas Expenses should be allowed on account of the significant and substantial contributions Bonistas del Patio made in these Title III cases. Bonistas del Patio respectfully requests that the Court enter an order substantially in the form of the proposed order filed on December 13, 2022, at Docket No. 23057.

Dated: January 4, 2023                               Respectfully submitted,

*s/José L. Ramírez-Coll*                              */s/ Donald S. Bernstein*
José L. Ramírez-Coll                                  Donald S. Bernstein (*Pro Hac Vice*)
USDC-PR Bar No. 221702                                Benjamin S. Kaminetzky (*Pro Hac Vice*)
ANTONETTI, MONTALVO & RAMÍREZ-COLL                    Brian M. Resnick (*Pro Hac Vice*)
P.O. Box 13128                                        Marc J. Tobak (*Pro Hac Vice*)
San Juan, PR 00908                                    Stephanie Massman (*Pro Hac Vice*)
Telephone: (787) 977-0303                             DAVIS POLK & WARDWELL LLP
Facsimile: (787) 977-0323                             450 Lexington Avenue
Email: jramirez@amrclaw.com                           New York, NY 10017
                                                      Telephone: (212) 450-4000
                                                      Email: donald.bernstein@davispolk.com
                                                             ben.kaminetzky@davispolk.com
                                                             brian.resnick@davispolk.com
                                                             marc.tobak@davispolk.com
                                                             stephanie.massman@davispolk.com

*Counsel to Bonistas del Patio, Inc.*

9

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record. I also hereby certify that the foregoing was served pursuant to the Sixteenth Amended Notice, Case Management and Administrative Procedures Order (Docket No. 20190).

*s/José L. Ramírez-Coll*
José L. Ramirez-Coll