**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| LUIS A. RIVERA SIACA<br><br>Movant,<br><br>    v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | Re: ECF No. 23145 |

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION FOR
THE PAYMENT OF ADMINISTRATIVE RENT**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 4

ARGUMENT .................................................................................................................................. 8

    A.    The Oversight Board Utilizes a Congressionally-Authorized Policy Requiring Prior Oversight Board Review of Certain Contracts ............................. 8

    B.    The Contract is Subject to Ongoing Review Pursuant to the Contract Review Policy ........................................................................................................ 10

    C.    The Contract Fails to Comply with Puerto Rico Certification and Registration Requirements ................................................................................... 12

    D.    The Motion is Barred as Untimely .......................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Grogan v. Garner*,
   498 U.S. 279 (1991) .................................................................................................................9

*In re Bos. Reg'l Med. Ctr.*,
   256 B.R. 212 (Bankr. D. Mass. 2000), *aff'd sub nom. Mass. Div. of Emp. &
   Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 265
   B.R. 838 (B.A.P. 1st Cir. 2001), *aff'd on other grounds*, 291 F.3d 111 (1st
   Cir. 2002) .................................................................................................................................9

*In re Drexel Burnham Lambert Grp.*,
   134 B.R. 482 (Bankr. S.D.N.Y. 1991) ...................................................................................15

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   618 B.R. 349 (D.P.R. 2020), *aff'd sub nom. Campamento Contra Las Cenizas
   En Peñuelas, Inc. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin.
   Oversight & Mgmt. Bd. for P.R.)*, 9 F.4th 1 (1st Cir. 2021) ....................................................8

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   631 B.R. 596 (D.P.R. 2021) ...................................................................................................15

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   No. 17-bk-4780, 2022 WL 1401506 (D.P.R. May 4, 2022) ....................................................9

*In re Jeans.com*,
   491 B.R. 16 (Bankr. D.P.R. 2013) .........................................................................................15

**STATUTES**

2 L.P.R.A. § 97(a) .........................................................................................................................12

2 L.P.R.A. § 98 .............................................................................................................................12

3 L.P.R.A. § 9128 .........................................................................................................................13

3 L.P.R.A. § 9128(a) .....................................................................................................................13

3 L.P.R.A. § 9128(d) .....................................................................................................................13

3 L.P.R.A. §§ 9161 *et seq.* ............................................................................................................13

3 L.P.R.A. § 9166 .........................................................................................................................13

11 U.S.C. § 365(d)(3) .....................................................................................................................8

ii

11 U.S.C. § 503(b) ..................................................................................................................8

11 U.S.C. § 503(b)(1)(A) ...................................................................................................3, 8, 9

48 U.S.C. §§ 2101–2241 .........................................................................................................1

PROMESA § 101(a) ...............................................................................................................14

PROMESA § 204(b) ..............................................................................................3, 9, 11, 14

PROMESA § 204(b)(2) .......................................................................................................2, 8

PROMESA § 204(b)(3) ...........................................................................................................8

**OTHER AUTHORITIES**

PRDE's *Regulation for the Acquisition, Sales and Auctions of Goods, Works and Non-Personal Services* ("Regulation 7040") .............................................................2, 3, 6, 7, 10

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as its Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion for the Payment of Administrative Rent* [ECF No. 23145] (the "Motion"), filed by Luis A. Rivera Siaca (the "Movant" or "LARS"). In support of the Objection, the Debtor respectfully represents:

## PRELIMINARY STATEMENT

1. This is the second administrative expense motion that Movant has filed seeking to enforce a lease agreement that was not entered into in compliance with applicable law. On July 1, 2022, Movant filed a motion [ECF No. 21408] (the "First Admin Expense Motion") to enforce a non-residential lease agreement (contract no. 2021-000148) (the "First Contract"). This First Admin Expense Motion remains pending.[3]

2. In this new Motion, Movant asserts a claim for administrative expense priority in the amount of $373,849.18 for rent allegedly arising from a non-residential lease agreement (contract no. 081-2021-0180), dated as of May 21, 2021 (the " Second Contract" and, together with the First Contract, the "Contracts"), with the Puerto Rico Department of Education ("PRDE"). The Second Contract was executed without prior review and approval by the Oversight Board in

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

[3] The facts, circumstances, and arguments in its objection to the First Admin Motion are substantially similar to the facts, circumstances, and arguments in connection with this Motion. Accordingly, the Oversight Board incorporates herein by reference all facts and arguments relating to the *Debtor's Objection to Motion to Comply with Payment of Administrative Rent* [ECF No. 21509].

violation of the Oversight Board's contract review policy established pursuant to PROMESA Section 204(b)(2) (the "Policy").

3. Much like the First Contract, there is no dispute the Second Contract was executed without the Oversight Board's prior review. There is also no dispute that the Second Contract was not submitted to the Oversight Board until May 18, 2022, nearly a year after its execution. Following its submission, the Oversight Board immediately began to evaluate the Second Contract and sent a request for information to the PRDE on June 3, 2022. Since that time, the Oversight Board has been engaged in analysis and correspondence, including several requests for additional information from PRDE, all in an effort to determine the Second Contract's market competitiveness and compliance with Puerto Rico contracting law and the 2022 Commonwealth Fiscal Plan (the "Fiscal Plan"). During such review, the Oversight Board identified irregularities with respect to PRDE's procurement process with the Movant and the overall lack of a competitive procurement process involving the Second Contract.

4. Specifically, after reviewing PRDE's response to the Oversight Board's request for information ("RFI") regarding the Second Contract, the Oversight Board has found that: (a) the approval of the Second Contract by (i) the Real Estate Property Review Board ("REPRB"), as required by Act 235-2014, did not assess or approve the agreement's full term, (ii) the Office of Management and Budget (by its Spanish acronym, "OGP"), as required by Act 66-2014, failed to assess or approve the agreement's full term, and (b) PRDE has not adequately explained why it did not follow a competitive procurement process for the Second Contract, as required by PRDE's Regulation 7040 (as defined below) for real estate lease agreements with terms exceeding 5 years.[4]

---

[4] The Second Contract has a term lasting from its date of execution, on May 21, 2021, until June 20, 2026. Motion, Ex. A. Accordingly its term is five years or greater. As such, the Lease

2

5. Congress's stated goals in PROMESA Section 204(b)—competitive bidding, increased public faith in contracting, compliance with the Fiscal Plan, and efficient use of the Commonwealth's resources—aim to preserve the financial stability of the Commonwealth and develop fiscal responsibility. *Accord* 11 U.S.C. § 503(b)(1)(A). Here, however, these goals have been impeded as the Oversight Board has been unable to review the Second Contract for compliance with the Fiscal Plan or market competitiveness prior to execution and payment. The Second Contract remains under the Oversight Board's review and, despite the Oversight Board's requests for information, satisfactory justification for not engaging in a competitive bid process as well as compliance with Puerto Rico certification and registration requirements remain outstanding. For these reasons, the alleged services provided pursuant to the Second Contract do not constitute "actual, necessary costs and expenses of preserving" the Commonwealth and should not be allowed administrative expense priority. 11 U.S.C. § 503(b)(1)(A).

6. In addition, the costs asserted in the Motion are ineligible for administrative expense priority. The Motion was filed on December 22, 2022, well past the June 13, 2022, bar date established by the Court for filing administrative expense claims, without leave from this Court to file a late administrative expense claim.

7. Accordingly, for the reasons set forth herein, the Motion should be denied.

---

Agreement is not exempt from following the procedures established by Regulation 7040, as amended, as discussed in more detail below. *See infra* ¶ 27.

3

## **BACKGROUND**[5]

8. Movant is currently seeking administrative expenses in relation to both the First Contract (contract no. 2021-000148), pursuant to the First Admin Expense Motion, and the Second Contract (contract no. 2021-0180), pursuant to the present Motion.

9. Pursuant to a non-residential lease agreement (contract no. 2015-000130) (the "2015 Contract"), PRDE leased five floors in LARS' building property located at 34 Calaf Street, San Juan, Puerto Rico (the "Leased Premises") for four and one-half years through May 30, 2019.[6] The Leased Premises at 34 Calaf Street is the same building property that is the subject of the First Contract.

10. Upon information and belief, PRDE thereafter directly negotiated the First Contract, a separate non-residential lease agreement concerning the same Leased Premises, with LARS rather than through a competitive procurement process. On January 15, 2021, PRDE executed the First Contract, without submitting the First Contract to the Oversight Board for its review and approval, for a term from January 15, 2021 until December 31, 2025 and an annual rent of $2,426,430.10 for the first year, representing a monthly rent payment of $202,202.51. *See* First Admin Expense Motion, Ex. A. Upon conclusion of the first year of the First Contract, rent is scheduled to increase annually by three percent (3%) and, as such, the total rent to be paid under the Contract is calculated at $12,883,100.46. *Id*.

11. On May 21, 2021, PRDE executed, without prior submission to the Oversight Board for review and approval, the Second Contract, another non-residential lease agreement with

---

[5] Each of the facts in the background section is based on a document or documents and the Oversight Board will submit the documents if ordered by the Court.

[6] The 2015 Contract is available at the Office of Comptroller's website at: https://consultacontratos.ocpr.gov.pr/contract/details?contractid=4078346.

4

LARS for a property adjacent to the Leased Premises in the First Contract. *See* Mot. ¶ 3; *id.* Ex. A at 12. The Second Contract contemplates at least $2,904,510.96 in total rental payments. *Id.* Ex. A at 5. The Second Contract was executed on May 21, 2022, however was not submitted as required by the Oversight Board's Policy.[7]

12. On April 6, 2022, the Oversight Board requested PRDE submit the Second Contract's lease agreement with LARS (contract no. 2021-000180) and its amendments for review pursuant to the Policy.

13. On May 18, 2022, PRDE responded to the April 6, 2022 letter and included in its response the submission of the Second Contract (contract no. 2021-000180) and a letter describing the PRDE divisions that occupy each of the premises under PRDE's non-residential lease agreements with LARS.

14. On June 3, 2022, the Oversight Board requested information from PRDE regarding the Second Contract (contract no. 2021-000180) (the "Second RFI"). That same day, the Oversight Board sent letters to PRDE, the Puerto Rico Office of the Comptroller, and the Puerto Rico Department of Justice identifying contracting abnormalities and PRDE's failure to submit the Second Contract pursuant to the Oversight Board's Policy.

15. In its June 9, 2022 response letter, PRDE acknowledged that the Second Contract had not been submitted for Oversight Board prior approval, as required by the Policy, but alleged that PRDE followed all applicable requirements under Commonwealth law, including Act 235-2014 and PRDE Regulation 7545.

---

[7] In addition to being attached as Exhibit A to the Motion, the Second Contract is also available at the Office of the Comptroller's website at: https://consultacontratos.ocpr.gov.pr/contract/details?contractid=5165718. The amendment to the Second Contract is available on the Office of the Comptroller's website at: https://consultacontratos.ocpr.gov.pr/contract/details?contractid=5239316.

5

16. On July 12, 2022, the Oversight Board sent an additional letter to the PRDE once again seeking to collect additional information regarding the certification process of the First Contract and urging the PRDE to institute safeguards to ensure efficient, effective and competitive bidding practices.

17. On July 14, 2022, the PRDE provided a partial response to the Oversight Board's letter, confirming that it submitted a Request for Reconsideration to the REPRB and it was aware of Movant's administrative expense motions with respect to the First Contract. It provided supplemental information to the Oversight Board on July 22, 2022.

18. On October 3, 2022, the PRDE responded to the Oversight Board's request for information with respect to the Second Contract and submitted procurement documentation along with it.

19. On December 22, 2022, the Movant filed the present Motion seeking to enforce the lease agreement related to the Second Contract.

20. On December 28, 2022, the Oversight Board sent a follow up letter to the PRDE, finding that, with respect to the Second Contract, (i) the REPRB approval of the Second Contract as required by Act 235-2014, did not assess or approve the agreement's full term; (ii) the OGP approval of the Second Contract, as required by Act 66-2014, also did not assess or approve the agreement's full term; and (iii) the PRDE has not adequately explained why it did not follow a competitive procurement process for the Second Contract, as is required by the PRDE's Regulation 7040 for real estate lease agreements with terms exceeding five years. The Oversight Board additionally noted that the PRDE had not adequately responded to the request for information with respect to the Second Contract and once again asked the PRDE to remedy the contracting deficiencies regarding the Second Contract's lease agreement.

6

21. On December 29, 2022, the PRDE responded to the Oversight Board's letter claiming in its initial response to the request for information dated October 3, 2022, the PRDE mistakenly did not include a copy of the resolution by the REPRB authorizing the Second Contract. It also attached an approval it claimed was issued by OGP authorizing payments related to the Second Contract for the duration of the lease agreement, until its termination date of June 30, 2026. The documents offered by the PRDE relate to the property detailed in the Second Contract (33 Calaf), however both documents provide authorization related to a different contract number (contract no. 2023-00500), rather than the number that identifies the Second Contract (contract no. 2021-0180) and PRDE has not given an explanation of the discrepancy. Accordingly, the Oversight Board is continuing to review whether the REPRB and the OGP were presented with the complete, unaltered terms of the Contracts by the PRDE prior to authorizing them.

22. Both Contracts remain under the Oversight Board's review. Specifically, the Oversight Board has requested PRDE to adequately (i) demonstrate that both Contracts have received all the required government approvals for their execution, including obtaining the necessary certifications from the REPRB and OGP that certify both Contracts approval for the full term of the lease, (ii) explain the factors it considered in determining procurement of the Contracts through direct negotiation rather than competitive procurement, in light of the requirements of Regulation 7040 (as defined below), and (iii) establish how it demonstrated to the REPRB that there are no less expensive options than the Contracts or why less expensive options are not feasible. Such requests are pending. As mentioned above, PRDE informed the Oversight Board it submitted a request for revised certification from REPRB but, to the Board's knowledge, revised certifications for the entire Contract terms from REPRB and OGP have not been obtained.

## ARGUMENT

### A. The Oversight Board Utilizes a Congressionally-Authorized Policy Requiring Prior Oversight Board Review of Certain Contracts

23. Section 204(b)(2) of PROMESA authorizes the Oversight Board to:

> establish policies to require ***prior*** Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government . . . .

PROMESA § 204(b)(2) (emphasis added). Pursuant to this provision, the Oversight Board established the Policy to require prior Oversight Board approval of contracts or series of related contracts, inclusive of any amendments, modifications, or extensions, with an aggregate expected value of $10 million or more, proposed to be entered into by the Commonwealth or any covered instrumentality.

24. Congress also identified certain benefits to the Commonwealth that the Policy was intended to promote, such as competitive procurement and fiscal responsibility, increased public faith in contracting, and preservation of Commonwealth resources. *See id.* ("to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan"); *id.* § 204(b)(3) ("to increase the public's faith in [the Commonwealth's contracting] process" and "to make appropriate use of the Oversight Board's time and resources"). Similarly, pursuant to Bankruptcy Code section 503(b), Congress required that contract costs must be "actual" and "necessary" for "preserving" the Commonwealth for such costs to obtain administrative expense priority. 11 U.S.C. § 503(b)(1)(A).[8]

---

[8] Movant also asserts Bankruptcy Code section 365(d)(3) as a basis for payment. However, Bankruptcy Code section 365(d)(3) applies to leases that can be "assumed or rejected[.]" 11 U.S.C. § 365(d)(3). A postpetition lease, like the one asserted here, is not subject to assumption or rejection. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. 349, 356 (D.P.R. 2020), *aff'd sub nom. Campamento Contra Las Cenizas En Peñuelas, Inc. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 9 F.4th 1 (1st Cir. 2021) ("There are cases

8

25. Here, the Second Contract was not submitted to the Oversight Board in compliance with the Policy, contrary to PROMESA Section 204(b). Accordingly, the Oversight Board was not able to review the Second Contract for compliance with the Fiscal Plan or market competitiveness prior to execution and payment. Furthermore, the Oversight Board has been unable to conclude the Second Contract complies with Puerto Rico's certification and registration requirements. At a minimum, the Second Contract costs must be payable under applicable law. *See Grogan v. Garner*, 498 U.S. 279, 283 (1991) ("The validity of a creditor's claim is determined by rules of state law"); *In re Bos. Reg'l Med. Ctr.*, 256 B.R. 212, 220 (Bankr. D. Mass. 2000), *aff'd sub nom. Mass. Div. of Emp. & Training v. Bos. Reg'l Med. Ctr., Inc. (In re Bos. Reg'l Med. Ctr., Inc.)*, 265 B.R. 838 (B.A.P. 1st Cir. 2001), *aff'd on other grounds*, 291 F.3d 111 (1st Cir. 2002) ("In determining whether an obligation arising under state law is a tax under the Bankruptcy Code, courts must look to state law to understand the characteristics and incidents of the obligation"); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-bk-4780, 2022 WL 1401506, at *4 (D.P.R. May 4, 2022) ("Motion for administrative expense treatment fails because [movant] has not demonstrated that it has a contractual right to reimbursement of the Expenses . . . ."). To the extent the expenses are not payable under applicable law, the Second Contract costs do not constitute "actual, necessary costs and expenses of preserving" the Commonwealth. 11 U.S.C. § 503(b)(1)(A).

---

which have addressed the question of whether section 365 applies to postpetition agreements; the learning from these cases is that contracts ... entered into postpetition are not subject to rejection under section 365.") (quoting *In re Leslie Fay Cos., Inc.*, 168 B.R. 294, 300 (Bankr. S.D.N.Y. 1994)).

9

**B.    The Contract is Subject to Ongoing Review Pursuant to the Contract Review Policy**

26.    The Second Contract, together with the First Contract, obligated the PRDE to pay at least $15,787,611.42 in rent to lease both premises, well in excess of the $10,000,000.00 threshold of the Policy. Each agreement was entered into with the Movant for the same apparent purposes: to provide office space and related parking for use by the PRDE. The Second Contract consists of an office space directly adjacent to the First Contract property at 33 Calaf Street, San Juan, Puerto Rico. Mot. Ex. A.

27.    In an attempt to discern the competitiveness of the Second Contract's contracting process in accordance with the Policy, the Oversight Board has analyzed Puerto Rico law and requested applicable justification for the Second Contract's procurement from PRDE. PRDE's *Regulation for the Acquisition, Sales and Auctions of Goods, Works and Non-Personal Services* ("Regulation 7040") requires competitive procurement processes for the award of certain acquisition contracts. Notably, Regulation 7040 lists real estate lease agreements as acquisition contracts that, as such, must be the subject of a competitive procurement process if they exceed a certain value. Nonetheless, Regulation 7040 expressly exempts from its requirements PRDE's real estate lease agreements that have a term of less than five years. The Second Contract runs from May 28, 2021 to June 30, 2026, lasting a period of over five years, making it non-exempt from Regulation 7040's competitive procurement process. *See* Mot. Ex. A.[9]

---

[9] LARS has filed a Spanish language version of the Second Contract and has until January 23, 2023 to file an English translation. *See Order Concerning Motion for Leave to File Documents in the Spanish Language and for Thirty Days to File Certified Translation Thereof to the English Language* [ECF No. 23151]. The Oversight Board reserves its rights to supplement this Objection for any reason, including based on the translated Second Contract (or lack of timely, complete filing thereof).

10

28. In its Second RFI, the Oversight Board requested an explanation from PRDE for the failure to conduct a competitive procurement process. However, PRDE's response failed to explain the factors it took into account to avoid conducting a competitive procurement process, including the factors it considered in determining that a contract with a term of five years and one month and two days was better procured through direct negotiation than through competitive procurement. Because it was not given an opportunity to review the Contract prior to execution, the Oversight Board could not assist in obtaining competitive procurement, as identified in PROMESA Section 204(b).

29. In addition, the Oversight Board has been analyzing the Second Contract's procurement for consistency with the certified 2022 Fiscal Plan. The Fiscal Plan observed "PRDE has not made notable progress in implementing structural initiatives to drive sustainable procurement savings, and instead has waited for the procurement centralization within the General Services Administration (GSA) to realize procurement savings." Fiscal Plan at 232 (emphasis removed). Accordingly, the Fiscal Plan called on PRDE to "define and implement a plan to address all findings identified in state and federal audits [concerning procurement], [and take steps to] digitize the procuring process, establish clear segregation of duties, and enforce comprehensive internal controls."[10] *Id.* at 237. As such, the Oversight Board urged PRDE to evaluate achieving operational efficiencies through the implementation of competitive procurement processes for its real estate

---

[10] The Fiscal Plan notes PRDE's "time for procuring services can take over 6 months, while at the same time PRDE has ineffective manual processes and paper trails, poor segregation of duties between responsible personnel, and lack of internal controls," *see* Fiscal Plan at 237, all problems which were highlighted in the Federal Government's Audit Reports (2019 Puerto Rico Department of Education's Internal Controls over the Immediate Aid to Restart Schools Operations Program; 2013 Review of Final Expenditures Under ARRA).

11

property lease agreements.[11] In this context, the Oversight Board's review of the Second Contract's procurement is relevant to determining consistency with the Fiscal Plan.

### C. The Contract Fails to Comply with Puerto Rico Certification and Registration Requirements

30. Puerto Rico law requires contracts to be registered with the Office of the Comptroller ("OCPR"), and with respect to real property leasing agreements, they must also be submitted to, and receive certifications from, OGP and REPRB prior to their execution. Section 1 of Act No. 18 of October 30, 1975 ("Act 18"), requires all government entities, with no exception whatsoever, to keep a registry of all contracts executed, including amendments thereto, and send a copy thereof to the OCPR within 15 days following the date of the execution or amendment of the contract (this period can be extended to 30 days when the contract is executed outside of Puerto Rico). 2 L.P.R.A. § 97(a). Furthermore, Act 18 prohibits government entities from executing contracts retroactively. *Id.* Based on the authority granted by Section 3 of Act 18, 2 L.P.R.A. § 98, to regulate the registration of government contracts, the OCPR created a centralized electronic registry. Government entities are required to register their contracts in the OCPR electronic registry in addition to sending a copy of each contract, following the requirements established in Regulation 33 of the OCPR ("Regulation 33"), which regulates all matters related to the registry of Contracts. Although not registering a contract is not in itself a cause to declare a valid contract null, no provision or consideration of services that are the object of a contract may be demanded until the provisions of Section 1 of Act 18 have been complied with. 2 L.P.R.A. § 98.

---

[11] As required by the Fiscal Plan, PRDE "must work towards minimizing the spend on retained buildings and therefore achiev[e] the required 2022 Fiscal Plan savings." Fiscal Plan at 229. According to the Fiscal Plan, PRDE "has identified 56 school buildings to repurpose for administrative uses, including 41 to be used as inactive archives, regional offices, and for other administrative uses, and 15 to be used by a non-profit alternative education program (Proyecto Centros de Apoyo Sustentable al Alumno (CASA)." *Id.*

31. In addition, real property leasing agreements must comply with Section 22 of Act 66-2014, as amended, known as the "Government of the Commonwealth of Puerto Rico Special Fiscal and Operational Sustainability Act", 3 L.P.R.A. § 9128, and with Act 235-2014, as amended, which created the REPRB. 3 L.P.R.A. §§ 9161 *et seq*. Section 22(a) of Act 66-2014, 3 L.P.R.A. § 9128(a), prohibits government entities of the Executive Branch from renewing or executing new agreements without the previous approval of the OGP, among other requirements established therein. Accordingly, every lease agreement entered into in contravention with Section 22 of Act 66-2014 shall be null. 3 L.P.R.A. § 9128(d). On the other hand, Article 6 of Act 235-2014, 3 L.P.R.A. § 9166, provides that no government entity may lease private real property if it is not duly authorized by the REPRB. Government entities must demonstrate to the REPRB that there is no public building available, either from the central government or any municipal government, to establish their offices. *Id.*

32. Here, while the Second Contract appears to have been submitted and registered with the OCPR, the contract value that the registry identifies is inaccurate because it only reflects the Second Contract's annual rent payment for the first year of each of the lease agreements and not its total amount.[12] Article 8.1(f) of Regulation 33 requires government entities, when registering a contract with the OCPR, to submit the total amount to be paid by the agency. The failure to register the correct amount of the Second Contract with the OCPR thus violates Regulation 33.

33. Moreover, although the Second Contract was submitted to the OGP and REPRB, the certifications from these government entities approved the lease agreement only until June 30,

---

[12] *See* Office of the Comptroller's website *supra* n. 7. Specifically, the "Amount to Pay," listed on the OCPR's website is $548,433.99 with respect to the Second Contract which does not reflect the total amount due under the Second Contract.

13

2021. Contract No. 2021-000180, however, lasts until June 30, 2026. Accordingly, the Second Contract was not duly authorized by REPRB. In light of the foregoing, execution of the Second Contract did not comply with applicable Commonwealth law.

34. Even if the Second Contract were not null and void, the costs asserted in the Motion are for invoices dated December 31, 2021 through November 30, 2022. *See* Mot. Ex. B. Such costs are not within the period that is covered by the existing certifications from REPRB and OGP and registration with the OCPR. Because of the failure to comply with the Puerto Rico certification and registration requirements, the asserted costs are not entitled to administrative expense priority. *See supra* ¶ 30. Furthermore, as discussed below, invoices for any alleged benefit provided after March 15, 2022 are not eligible for administrative expense status because they occurred after the Effective Date of the Commonwealth Plan (each, as defined below).

35. Congress's stated goals with respect to the Policy established pursuant to PROMESA section 204(b)—including competitive bidding, increased public faith in contracting, compliance with the Fiscal Plan, appropriate use of the Oversight Board's resources—are important to achieving the overall goals of PROMESA. *Accord* PROMESA § 101(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets."). An uncompetitive process in the procurement of a multi-million dollar contract, however, saps the public's faith in contracting and deprives the public of a process designed to achieve better value for their taxes. Here, the Second Contract was executed in violation of the Policy by failing to obtain the Oversight Board's approval prior to execution. In addition, compliance with Puerto Rico's registration and certification requirements

remains outstanding. In light of these issues, Movant has not met the burden of proving entitlement to priority.[13]

### D. The Motion is Barred as Untimely

36. Pursuant to Section 1.51 and Article III of the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico* (the "Commonwealth Plan") [ECF No. 19813-1] and decretal paragraph 44 of the *Order and Judgement Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* (the "Confirmation Order") [ECF No. 19813] the deadline for filing proofs of or requests for payment of Administrative Expense Claims was June 13, 2022 (the "Administrative Claim Bar Date"). *See* [ECF No. 20349] (the "Notice of Effective Date") at 2. Pursuant to the certificate of service dated March 24, 2022, Movant received the Notice of Effective Date via service on March 15, 2022. *See* [ECF No. 20443], Ex. A at 4. Movant filed this Motion on December 22, 2022, well past the June 13, 2022 Administrative Claim Bar Date without leave from this Court to file a late administrative expense claim. Therefore, Movant's Motion is barred as untimely.

37. For the reasons identified herein, the asserted costs attendant to the Second Contract should not be allowed administrative expense priority.

---

[13] "The burden of proving entitlement to priority payment as an administrative expense rests with the party requesting it, and the Court has broad discretion in determining whether to grant a request for such priority treatment." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 631 B.R. 596, 604 (D.P.R. 2021) (citing *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992)); *see also In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013). A party seeking administrative expense treatment must show a "clear relationship between the expenditures made and the benefit conferred on the estate . . . ." *In re Drexel Burnham Lambert Grp.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) (citations omitted).

15

WHEREFORE the Commonwealth respectfully requests the Court deny the Motion and grant such other and further relief as is just.

Dated: January 6, 2023
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*

16