# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: 17-BK-04780-LTS, ECF No. 3130** |

## JOINT STATUS REPORT PURSUANT TO JUNE 29, 2022 RULING
## DENYING COBRA ACQUISITIONS LLC'S MOTION TO LIFT STAY ORDER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura T. Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with PREPA and the Oversight Board, the "Government Parties") and Cobra Acquisitions LLC ("Cobra" and, together with the Government Parties, the "Parties"), respectfully submit this joint Status Report pursuant to the Court's oral ruling denying *Cobra Acquisitions LLC's Motion to Lift Stay Order*, made on June 29, 2022,[2] which directed the Parties to file a status report. The Parties respectfully state as follows:

I.   **Background**

1. On June 7, 2022, Cobra filed a motion to lift the stay [ECF No. 2841] (the "June 2022 Lift Stay Motion") applicable to its *Motion for Allowance and Payment of Administrative Expense Claims*, dated September 30, 2019 [Case No. 17-3283, ECF No. 8789] (the "Administrative Expense Motion"). The Government Parties opposed the 2022 Lift Stay Motion [ECF No. 2848].

2. On June 29, 2022, after oral argument at the omnibus hearing held that day, the Court denied Cobra's June 2022 Lift Stay Motion and directed the Parties to file this Status Report. *See* June 29, 2022 Hr'g Tr. at 41:15-19.

II.  **Status Regarding FEMA Review**

3. As of June 2022, the last time the parties briefed the Court, FEMA had completed its eligibility analysis of costs claimed under the first contract executed between PREPA and Cobra

---

[2] Docket numbers refer to Case No. 17-4780 unless otherwise noted.

(the "First Contract") and was completing its eligibility analysis of costs claimed under the second contract executed between PREPA and Cobra (the "Second Contract"). At that time, on May 31, 2022, FEMA had issued a First Appeal Decision on PREPA's administrative appeal, which PREPA had prepared with Cobra's cooperation, of FEMA's de-obligation of approximately $46 million in costs under the First Contract pursuant to a determination memorandum ("DM") issued in May 2021. In the First Appeal Decision, FEMA partially granted the appeal, approving $24.4 million in previously denied reimbursement, but maintaining denial of the approximately $21.5 million remaining. PREPA subsequently submitted a request for arbitration to the U.S. Civilian Board of Contract Appeals ("CBCA") challenging FEMA's denial of this remaining $21.5 million. Below is an update on progress with the FEMA review process for both contracts since the last hearing on this matter.

    A. First Contract

    4. With respect to the First Contract, on June 29, 2022, PREPA sought arbitration before the CBCA. After briefing by both PREPA and FEMA, on November 16, 2022, the CBCA determined $21.5 million in costs claimed were ineligible for FEMA reimbursement, because they were not payable under the First Contract. Cobra had charged PREPA for most of the costs at issue, approximately $21.4 million, as a "daily minimum amount" during the period October 25, 2017 to November 11, 2017, before Cobra's lineworkers had arrived in Puerto Rico. The CBCA determined that this amount is ineligible because the First Contract had other payment mechanisms in place to compensate Cobra during this time (*i.e.*, mobilization costs and a deposit). *In the Matter of Puerto Rico Electric Power Authority*, CBCA 7467-FEMA (Nov. 25, 2022) at 4.[3] The CBCA

---

[3] The CBCA Decision is available at https://www.cbca.gov/files/decisions/2022/SHERIDAN_11-25-22_7467-FEMA__PUERTO_RICO_ELECTRIC_POWER_AUTHORITY.pdf.

2

also determined that $133,800 Cobra charged for apartments was not payable under the First Contract, because PREPA paid for berthing barges to lodge Cobra's personnel and the costs for apartments "were not authorized" under "the plain language of the contract." (*id.* at 4). The CBCA's decision is final. Also, because this $21.5 million amount represents costs FEMA had already obligated and paid to the grant recipient, Central Office of Response, Recovery, and Resilience (COR3), which in turn disbursed the funding to PREPA, which in turn paid Cobra, the result of the CBCA's decision is that FEMA will automatically claw back the funding from COR3's federal bank account and PREPA now owes this amount back to COR3, which COR3 will likely recoup through setoff against other Public Assistance obligations for PREPA.

5. There are two other cost items that remain at issue under the First Contract: taxes and interest. The First Contract contained a "tax gross up" or "TGU" provision, which provides that PREPA will pay taxes exceeding 8.5% that the Puerto Rico government imposes on Cobra and Cobra pays related to the work performed under the First Contract. FEMA has determined that TGU reimbursement eligibility requires the TGU to be related to otherwise FEMA-eligible costs. PREPA and Cobra disagree as to the correct amount of TGU and have been exchanging information in an attempt to reconcile the discrepancy. Cobra has invoiced PREPA more than $77 million in TGU of which PREPA has paid nearly $16 million.

6. As to interest, as of October 2022, Cobra has invoiced PREPA for approximately $61.5 million in interest under the First Contract. PREPA disputes Cobra's interest demand and calculations. Among other issues, PREPA disputes (a) Cobra charging interest on amounts FEMA found were not properly billable under the First Contract and (b) Cobra compounding interest. FEMA will not reimburse interest on late payments.

B. Second Contract

7. With respect to the Second Contract, FEMA has recently issued two DMs for the project worksheets formulated to capture costs of the Second Contract. Project Worksheet (PW) 466 (also referred to as Grants Manager Project (GMP) 49848) captures cost under the Second Contract reimbursed at 100% federal share while GMP 49831 captures costs under the Second Contract reimbursed at 90% federal share.[4]

8. FEMA issued a DM on November 21, 2022 for PW 466 / GMP 49848, stating a separate DM would follow for GMP 49831. In the November 2022 DM, FEMA determined $5,599,775.33 in costs are ineligible for reimbursement, because the costs "are not supported by the terms of [the Second Contract] and/or cannot be tied to the performance of eligible work." (DM at 8 of 11). More specifically, FEMA determined:

(1) $779,638.16 for environmental remediation activities Cobra performed were ineligible because Cobra was required to perform the work under the First Contract and was not authorized to perform the work under the Second Contract; (DM at 4-5 of 11)

(2) $753,954.44 in labor costs were ineligible, because Cobra's personnel were engaged in training activities, which are indirect costs or general/administrative expenses included in daily rates and the activities were not required as a direct result of the disaster; (DM at 4-5 of 11)

(3) $2,364,148.05 in labor costs were ineligible, because Cobra's personnel were performing various maintenance activities included in the contract equipment rates, so FEMA determined the costs to be duplicative; further, FEMA determined the contract required Cobra to supply the necessary equipment and thus the costs of doing so are rightly borne by Cobra (DM at 7-8 of 11); and

---

[4] A summary of all FEMA projects for Cobra-related costs is provided in the chart below:

| PW No. | GMP No. | Contract | Date Range of Costs Incurred | Cost Share |
|---|---|---|---|---|
| 251 | 49797 | First Contract | October 19, 2017 to July 20, 2018 | 100% |
| 466 | 49848 | Second Contract | July 21, 2018 to August 16, 2018 | 100% |
| N/A | 49831 | Second Contract | Aug. 17, 2018 to May 26, 2019 | 90% |

4

(4)     $2,454,001.19 in costs were ineligible for days when Cobra did not perform work on the grid. FEMA determined the Second Contract "does not support the billing or payment of costs for labor and equipment not actively engaged in work necessary to carry out any SOW sub-projects." (DM at 8 of 11).

9.     For PW 466 / GMP 49848, FEMA determined $49,278,986.07 in costs to be eligible and determined that $5,599,775.33 is ineligible and not properly payable under the Second Contract. PREPA will review the DM and to the extent there is a plausible case for an appeal intends to file a first-level administrative appeal of FEMA's $5.6 million denial by January 20, 2023.

10.     PREPA has already paid Cobra $52,018,933.94 for work associated with PW 466 / GMP 49848, which is more than the amount FEMA determined eligible under the project. Thus, FEMA's decision in the November 2022 DM will not result in additional funds to PREPA for Cobra-related costs.

11.     FEMA issued another DM relating to GMP 49831, on December 21, 2022. For GMP 49831, FEMA determined $233,683,116.76 in costs to be eligible and determined that $68,061,726.22 is ineligible for reimbursement because the costs "are not supported by the terms of [the Second Contract] and/or cannot be tied to the performance of eligible work." (DM at 8 of 11). More specifically, FEMA determined:

(1)     $2,379,837.65 in costs for access mapping activities and $2,967,605.62 in environmental remediation activities were ineligible because the work was outside the scope of the Second Contract and should have been performed under the First Contract. (DM 4-5 of 11). FEMA also determined that PREPA only authorized 25% of the access mapping work by contract release under the Second Contract; (DM 4-5 of 11)

(2)     $12,201,594.89 in costs for work related to distribution feeder line number L2702-01 were ineligible as duplicative of work performed and reimbursed under PW 251 and required as a result of deficiencies or omissions in the prior work; (DM at 5-6 of 11)

(3)     $10,947,042.43 in labor costs were ineligible, because Cobra's personnel were engaged in training activities, which are indirect costs or general/administrative expenses

5

included in daily rates and the activities were not required as a direct result of the disaster; (DM at 6-7 of 11)

(4) $10,182,641.44 in labor costs were ineligible, because Cobra's personnel were performing various maintenance activities included in the contract equipment rates, so FEMA determined the costs to be duplicative; further, FEMA determined the contract required Cobra to supply the necessary equipment and thus the costs of doing so are rightly borne by Cobra; (DM at 7 of 11)

(5) $4,073,469.84 in costs were ineligible for days when Cobra did not perform work on the grid. FEMA determined the Second Contract "do[es] not support the billing or payment of costs for labor and equipment that were not actively engaged in work necessary to carry out any SOW sub-projects"; (DM at 7-8 of 11) and

(6) $25,309,534.35 in demobilization costs billed to PREPA based on the blended daily labor rates were ineligible, because the Second Contract requires demobilization to be reimbursed at cost, not based on blended rates. Accordingly, FEMA determined "[i]n the absence of documentation to support the actual costs of demobilization payable under [the Second Contract], FEMA is, at this time, disallowing all demobilization costs that were billed to PREPA based on the daily blended T&D linemen rate formula." (DM at 8 of 11).

12. PREPA will review the DM and, to the extent there is a plausible case for an appeal, intends to file a first-level administrative appeal of FEMA's decision by February 19, 2023.

13. FEMA has determined eligible $233,683,116.76 in costs under GMP 49831, which PREPA expects will be soon obligated at a 90% federal cost share—$210,314,805.09. PREPA has already paid Cobra $150,019,861.82 invoiced under this project,[5] of which FEMA determined eligible $123,492,481.52 (90% cost share = $111,143,233.37) and $26,527,380.30 FEMA determined ineligible. Thus, $111,143,233.37 of FEMA's obligation resulting from this DM will be available to PREPA as reimbursement for payments it already made to Cobra. The remaining $99,171,571.72 (less $21.5 million owed to COR3 on the First Contract as a result of the CBCA ruling) will be available to for Cobra's outstanding invoices. PREPA asserts it may offset the

---

[5] This number is according to FEMA's "Summary of Invoice Payment Status" provided with the DM.

6

amounts FEMA denied under PW 251 and the CBCA confirmed are not allowed under the First Contract against valid amounts due to Cobra under the First or Second Contract.

14. Unlike the First Contract, the Second Contract does not include a TGU provision, so there are no open issues between the Parties as to PREPA's liability for Cobra's taxes under the Second Contract.

15. Like the First Contract, PREPA's liability for and the amount of interest Cobra claims is disputed. As of October 2022, Cobra has invoiced PREPA nearly $83.4 million in interest under the Second Contract. As noted above, PREPA disputes Cobra's interest demand and calculations. The Second Contract is silent as to the method of calculating interest.

16. FEMA has now issued DMs on all three of PREPA's Cobra-related projects. The outcomes thus far are summarized below:

| Project | Amount Cobra Invoiced | Amount Paid by PREPA | Unpaid Amounts | Amount FEMA Determined Eligible | Amount FEMA Denied as Ineligible | Status |
|---|---|---|---|---|---|---|
| 251 | $869,475,849.56[6] | $877,074,630.48[7] | TGU & Interest Only | $846,424,762.01[8] | $21,585,072.51 | CBCA concurred with FEMA's denial. |
| 466 / 49848 | $57,672,357.72[9] | $52,018,933.94 | $5,653,423.78 + Interest | $49,278,986.07 | $5,599,775.33 | First Appeal Due Jan. 20, 2023 |
| 49831 | $307,272,412.65[11] | $151,024,803.57[10] | $156,702,609.08 + Interest | $233,683,116.76 | $68,061,726.22 | First Appeal Due Feb. 19, 2023 |

17. With the exception of interest invoices under the First and Second Contracts (which is not reimbursable), PREPA has submitted all Cobra's invoices to FEMA for reimbursement.

---

[6] Excludes $77,460,241.80 in TGU and $61,486,867.47 in interest (as of October 2022).
[7] Excludes $15,966,377.24 in TGU PREPA has paid to Cobra.
[8] Excludes $76,717,644.43 in TGU included by FEMA in its determination of eligible costs, but which will be further validated by FEMA at closeout and remain obligated only if PREPA can demonstrate to FEMA through documentation the actual amount of taxes Cobra paid to the Government of Puerto Rico in excess of 8.5%.
[9] Excludes interest. Cobra has invoiced $83,368,231.96 in interest under the Second Contract as of October 2022.
[10] See n.9, *supra*.

PREPA has now received a final, nonappealable determination regarding these costs under the First Contract, and FEMA's initial DMs regarding these costs under the Second Contract.

### III. Status of the Criminal Proceedings

18. With respect to the proceedings in the Criminal Case,[11] at the time of the last update to the Court, a sentencing hearing for the two remaining defendants who had pled guilty, Ahsha Tribble and Keith Ellison, had been scheduled for August, 2022. That hearing was rescheduled and held on December 13, 2022 (the "Sentencing Hearing"). *See* Criminal Case [ECF Nos. 301, 303]. At the Sentencing Hearing, statements in support of mitigation of punishment were presented on behalf of the Defendants. *Id.* Defendants' allocutions and the U.S. Government's statements were heard. *Id.* Defendants Tribble and Ellison each received a sentence including six (6) months plus one (1) day imprisonment each, and a fine of $15,000 and $20,000, respectively. *Id.* The Parties are attempting to obtain a transcript of the Sentencing Hearing to confirm statements made on the record and whether they may have contained facts relevant to adjudicating the Administrative Expense Motion.

### IV. Parties' Positions

#### a. Government Parties' Position

19. The Government Parties respectfully submit the stay in this matter should remain in effect through at least July 31, 2022, to provide time for the parties to work collaboratively to appeal the November and December DMs regarding the Second Contract and to pursue a potential settlement of the remaining disputes. The continued stay will also allow the Oversight Board and PREPA to focus their efforts on prosecuting confirmation of PREPA's plan of adjustment, which

---

[11] *United States v. Tribble et al.*, Case No. 19-CR-541-FAB (D.P.R.).

8

will be an all-consuming task through the conclusion of the confirmation hearing currently proposed to be scheduled for July 17-21 and July 24-28, 2023. *See* [ECF No. 3114] at ¶ 25.

20. Allowance of Cobra's claim is not a gating item for PREPA's plan confirmation process; therefore, the continued stay will not obstruct confirmation. Any allowance determination is not necessary to inform the feasibility of the PREPA plan, as the Government Parties continue to expect a substantial amount of any allowed claim would be covered by FEMA reimbursements. Moreover, the Oversight Board has filed a plan that would provide sufficient funds to cover the full unpaid amount of Cobra's claim, if allowed. On December 16, 2022, the Oversight Board filed a plan of adjustment [ECF No. 3110] (the "PREPA Plan") that proposes to provide $400 million for the payment of administrative expense claims, which in addition to any FEMA funding (a substantial amount of which we now know PREPA should receive), will be available to pay any of Cobra's allowed claim. PREPA Plan Arts. I.A.8, XVI.H. This is well in excess of Cobra's asserted $368 million claim,[12] even if the full amount were allowable, which PREPA disputes on various grounds. Because Cobra's claim need not be paid or reserved for until the effective date of a PREPA Plan, the claim need not yet be liquidated. Regardless, feasibility is properly addressed at confirmation. *See* August 2021 Stay Order [ECF No. 2590] at 5 ("PREPA's ability to fund a reserve or resolve the claim, and issues regarding the appropriate magnitude of the claim, can be addressed in the context of confirmation . . . .").

21. With respect to the Second Contract, PREPA is carefully reviewing the DMs and, to the extent there is a plausible case for an appeal, intends to file a first-level administrative appeal. Based on statutory and regulatory deadlines for the appeal process, FEMA's decision on PREPA's

---

[12] *See Cobra Acquisitions LLC's Statement Regarding the Order (A) Granting in Part and Denying in Part Urgent Motion of Financial Oversight and Management Board for Order (I) Establishing Schedule to Continue Negotiations During Litigation of Gating Issues Pursuant to Litigation Schedule and (II) Granting Related Relief and (B) Staying Certain Motions Filed by PREPA Bondholders* [ECF No. 3103] at 2.

9

First Appeals would be due in June and July 2023. Upon receipt of each decision, if FEMA continues to deny eligibility, PREPA would have 60 days to file a second-level administrative appeal to FEMA or a Request for Arbitration with the CBCA. During this time PREPA will review the outcome of the appeals, confer with Cobra and the Oversight Board, and determine, among other things, the most prudent next steps. If FEMA adheres to its statutory deadline for deciding the First Appeals and PREPA pursues arbitration in lieu of Second Appeals (from FEMA denial of all or part of the First Appeals), the CBCA would likely issue a final decision in December 2023 and January 2024 for each of the projects under the Second Contract.

22. The Government Parties respectfully submit that preservation of PREPA's public resources—and the Court's resources—continue to weigh in favor of a reasonable continued stay through July 31, 2023. Rather than litigating facts and legal matters that the appeals process or subsequent negotiation between the parties may resolve, PREPA's resources are better used in analyzing the final conclusions on the Second Contract and exploring consensual resolution, without the costs and burdens of litigation. *See* June 29, 2022 Hr'g Tr. at 41:3-8 ("the public interest in this particular setting of a Title III bankruptcy is one that the public entity defendant has presumably also weighed in determination as to the risks and benefits of expending public resources on potentially unnecessary and potentially duplicative litigation of this particular claim.").

23. Permitting such processes' completion has proven to be a prudent course of action. As detailed above, with respect to the First Contract, FEMA had originally de-obligated approximately $46 million. PREPA, in collaboration with Cobra, appealed that decision, resulting in the re-obligation of approximately $24.4 million and substantially narrowing the remaining disputes under the First Contract that would otherwise have had to be litigated. As Cobra itself

calculates, nearly 50% of the amounts Cobra asserts have been de-obligated and are disputed. The Government Parties respectfully submit PREPA's appeal rights will help further narrow the remaining disputes under the Second Contract, and thus likewise merit further time without resorting to litigation in this Court at this time. Importantly, the Oversight Board submits PREPA's resources should not be distracted litigating Cobra's claims in light of the status of the dispute as described above.

24. The Government Parties respectfully submit that final determination by this Court of all amounts allegedly due pursuant to Cobra's claims should not be made until after all appeals of FEMA's DMs are resolved. Many of the amounts FEMA de-obligated are based on FEMA's conclusion that the costs were not validly owed under the relevant contract. If those conclusions are correct, they equally apply to PREPA's obligation to pay Cobra, not just FEMA's obligation to reimburse PREPA. While those determinations may not be binding on this Court, the Government Parties believe they are relevant to the Court's consideration of Cobra's claims and, at a minimum, PREPA should be allowed the opportunity to consider the final rulings on the DMs in formulating its objections to Cobra's claims.

25. Moreover, if PREPA were required to litigate objections to Cobra's administrative claim at this time, while it is analyzing and possibly proceeding with an appeal of the two DMs on the Second Contract, it could be compelled to take opposite positions regarding some or all of the approximately $73 million de-obligated by FEMA in those DMs in two different venues simultaneously. PREPA's rights would be severely compromised in both venues. Any objection to this aspect of the administrative claim should not proceed while any appeal of these DMs is pending.

26. Cobra's proposed approach to adjudicate issues piecemeal, during an appeal of the DMs, and while the parties and the Court are engaged in attempting to achieve confirmation of PREPA's plan of adjustment would be inefficient, wasteful and unnecessary.

27. PREPA has until January 20, 2023 to file an appeal of the November 21, 2022 DM if it determines an appeal is warranted. It has until February 19, 2023 to appeal the December 21, 2022 DM. If the Court is not inclined to continue the stay through July 31, 2023, the Government Parties submit that, at a minimum, the existing stay should be continued to allow PREPA time to determine whether appeals are warranted on some or all of the bases for FEMA's DMs and to allow the parties to take those decisions into account in filing a further status report to the Court regarding path forward.

28. The updates described in this report warrant a moderate continuation of the stay in this matter through July 31, 2023.

   b. **Cobra's Position**

29. The stay should be lifted. This Court stayed the litigation of Cobra's Administrative Expense Motion because two specific processes potentially could weigh on PREPA's liability to Cobra under the Contracts: a criminal indictment against Cobra's former president (but not Cobra) and FEMA's analysis of the Contracts and the performance of hurricane restoration work thereunder.[13]

30. The Criminal Case is resolved. The statement of facts supporting the plea agreement (for a single gratuity charge) of Cobra's former president had nothing to do with the Contracts or the work performed thereunder. Further, contrary to the previous conjectures of the

---

[13] The Government Parties' professed need to focus all their resources on PREPA's plan of adjustment process was never grounds for a stay, in any event, falls far short of the required "hardship" standard.

Government Parties, the U.S. Government introduced no additional evidence at the Sentencing Hearing. The criminal charges against Cobra's former president have now been dismissed. The Criminal Case cannot serve as the basis for a continued stay.

31. Similarly, FEMA's analysis is effectively complete and any concern regarding duplicative efforts or the need to preserve public resources can be easily avoided. While PREPA may determine to pursue appeals of the amounts de-obligated, the outcome of those appeals will either uphold FEMA's original conclusions or result in re-obligations of amounts de-obligated. Cobra has maintained consistently that the parties are capable of crafting a sensible and cost-efficient litigation and discovery plan—if discovery is even necessary at this juncture, given the extensive information Cobra has supplied PREPA—that takes account of the current circumstances.

32. Indeed, given the limited nature of the remaining FEMA process, one possibility is that the parties agree to a litigation schedule that focuses first on PREPA's disputes that are independent of the issues that may be appealed before FEMA. The Government Parties identified certain such issues PREPA disputes above, such as the TGU, the calculation of the interest charges and the alleged setoff rights. In addition, the Government Parties have repeatedly raised contractual defenses to PREPA's liabilities based on the Criminal Case. These are not items that FEMA will (or can) adjudicate, but rather are the province of this Court. The Government Parties do not explain why waiting for the FEMA appeals to reach a final conclusion (which, by reference, took approximately 18 months from the issuance of DM for the First Contract to do so) has any bearing on these disputes.

33. Finally, a sensible litigation schedule could also seek to resolve PREPA's liability for costs that FEMA *has* de-obligated on a final basis. As Cobra has maintained throughout,

13

FEMA's analysis is not determinative of PREPA's liability to Cobra and cannot substitute for this Court's independent judgment as to whether such costs were "actual [and] necessary" for PREPA. Simply because FEMA has determined not to provide public assistance to PREPA for certain costs does not mean that PREPA's liability to Cobra for those costs is extinguished or that they were not reasonable.[14] Many of the costs that FEMA has determined not to reimburse PREPA for nonetheless clearly provided actual benefits to PREPA or were completed at PREPA's direction and, as FEMA stated in it DM for the Second Contract, the reasonableness of Cobra's rates has not been challenged.[15]

34. The pattern of three years is unmistakable. The Government Parties have used every opportunity at their disposal to delay a resolution of Cobra's claims, even the consensual resolution they invoke. A continued stay will only encourage continued intransigence not negotiations and result in the continued accrual of a substantial amount of interest (approximately $3.5 million per month) and attorneys' fees for both the Government Parties and Cobra. The substantial prejudice to Cobra, which has not been paid a cent by PREPA since 2019, is stark and indisputable. By Cobra's calculations, over 50% of the amount that is owed to Cobra (approximately $124 million) was not de-obligated by FEMA and is not disputed—yet still PREPA has not paid Cobra these amounts and FEMA has appeared to say it will not provide any further public assistance funding to PREPA until PREPA does so. Lifting the stay and setting a reasonable litigation schedule in light of the current circumstances will have the dual benefit of both moving

---

[14] To Cobra's knowledge, the Government Parties have not identified how the $400 million for payment of administrative expenses was sized and thus it is difficult to evaluate the Government Parties' claims that this amount is sufficient. In any event, given that PREPA may be liable to Cobra for amounts for which no public assistance is granted, it would appear prudent to understand the quantum of such amount prior to pursuing confirmation of its plan of adjustment.

[15] *See* DM, 2 of 11 ("For purposes of this Eligibility Determination Memorandum (DM), neither PREPA's compliance with federal procurement and contracting requirements nor the reasonableness of the rates Cobra charged to PREPA are at issue.").

14

these disputes toward conclusion and creating significant incentives for the parties to reach a consensual resolution that would not otherwise exist if the stay were to continue.

35. Accordingly, Cobra requests that the Court order the parties to meet and confer on a sensible litigation schedule that takes account of the current circumstances and remaining open issues and present such schedule (or competing schedules, if the parties cannot agree) for the Court's approval by no later than the omnibus hearing scheduled for February 2, 2023.

[*Remainder of page intentionally left blank*]

New York, New York
January 6, 2022

Respectfully submitted,

| | |
|---|---|
| **O'NEILL & BORGES LLC** | **REICHARD & ESCALERA, LLC** |

By: /s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

By: /s/ *Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

By: /s/ *Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714

**PROSKAUER ROSE LLP**

By: /s/ *Paul V. Possinger*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com
* admitted *pro hac vice*

By: /s/ *Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: /s/ *Scott M. Heimberg*
Scott M. Heimberg (pro hac vice)
sheimberg@akingump.com
Allison S. Thornton (pro hac vice)
athornton@akingump.com
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

*Attorneys for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.**

By: /s/ *Katiuska Bolaños*
Katiuska Bolaños
kbolanos@diazvaz.com
USDC-PR 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 803
San Juan, PR 00918
Tel. (787) 395-7133
Fax. (787) 497-9664

and

Ira S. Dizengoff (pro hac vice)
Philip C. Dublin (pro hac vice)
Abid Qureshi (pro hac vice)
idizengoff@akingump.com
pdublin@akingump.com

16

*Co-Attorneys for Puerto Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**O'MELVENY & MYERS LLP**

By: /s/ *Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
mdiconza@omm.com
-and-
Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
pfriedman@omm.com
-and-
Elizabeth L. McKeen*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
emckeen@omm.com

* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal*

aqureshi@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Attorneys for Cobra Acquisitions LLC*

17

*Agency and Financial Advisory
Authority and Puerto Rico Electric Power
Authority*