

**GOBIERNO DE PUERTO RICO**
**DEPARTAMENTO DE EDUCACIÓN**

<u>**CONTRATO DE ARRENDAMIENTO**</u>

COMPARECEN

**DE LA PRIMERA PARTE**: El **Departamento de Educación de Puerto Rico**, representado en este acto por su secretario, Lcdo. Eliezer Ramos Parés, mayor de edad, casado y vecino de San Juan, Puerto Rico, en adelante denominado "Arrendataria", el "Departamento" o "DE".

**DE LA SEGUNDA PARTE**: **Luis A. Rivera Siaca**, titular en pleno dominio del edificio objeto de este contrato de arrendamiento, mayor de edad, casado, comerciante y vecino de Guaynabo, Puerto Rico, en adelante denominado el "Arrendador".

EXPONEN

Que el Departamento, en virtud de la autoridad que le ha sido conferida por la Ley 85 del 29 de marzo de 2018, según enmendada, conocida como "Ley de Reforma Educativa de Puerto Rico", por la Constitución del Estado Libre Asociado de Puerto Rico y por las leyes que el Departamento administra tiene la facultad de suscribir aquellos contratos que sean necesarios para cumplir con sus obligaciones en ley.



Expuesto lo anterior, las partes llevan a cabo este contrato de arrendamiento (el "Contrato") sujeto a los siguientes:

CLÁUSULAS Y CONDICIONES

1. **Propiedad Arrendada:**

   a. **Descripción de la Propiedad Arrendada**: La Arrendadora por la presente le arrienda la propiedad localizada en la Calle Calaf número 33, San Juan, Puerto Rico, con espacios de estacionamiento para los empleados del DE, donde actualmente están localizadas las oficinas del Departamento (la "Propiedad Arrendada"). La Propiedad Arrendada tiene cabida de veintiocho mil cuatrocientos treinta y uno (28,431) pies cuadrados.

   b. **Estructura**: La estructura que contiene la Propiedad Arrendada consiste de lo siguiente:

| Construcción | Edificio consiste de una estructura de un solo nivel con un área de estacionamiento | |
|---|---|---|
| Área | Del Solar | La página web de la Junta de Planificación de Puerto Rico establece que el edificio está construido en un solar de cinco mil quince punto treinta y ocho (5,015.38) metros cuadrados. |
| | Del Local | El edificio posee una área total rentable de veintiocho mil cuatrocientos treinta y un (28,431) pies cuadrados. |
| | Del Estacionamiento | El edificio cuenta con una área de estacionamiento con capacidad para unos 135 estacionamientos incluyendo, espacios uno detrás de otro. |
| Localización y Certificación Registral del Inmueble | Esquina Ave. Teniente César González y Calle Juan Calaf Núm. 33 Urbanización Industrial Tres Monjitas, Hato Rey San Juan, Puerto Rico | |

   c. **Uso de la Propiedad Arrendada**: La Propiedad Arrendada será utilizada como sede de las oficinas del Departamento y actualmente se encuentran ubicadas las Oficinas Administrativas de Servicios Auxiliares, Transportación, Sistema Tal,

Oficina de Retiro, Autoridad de Alimentos y No Docente del DE, las Oficinas administrativas de la Región de San Juan, y las Oficinas de Sistemas de Información (OSIAT), entre otras. La Propiedad Arrendada también será utilizada para cualquier otro uso o propósito legal relacionado a las operaciones de la Arrendataria.

d. **Acceso:** La Arrendataria tendrá acceso durante horas laborables, y días laborales, durante el término del Contrato, a la Propiedad Arrendada, al área de estacionamiento, los pasillos, accesos y otras áreas comunes de la edificación y del terreno.

e. **Estacionamientos:** La Arrendadora proveerá ciento treinta y cinco (135) espacios de estacionamiento para empleados del Departamento en la Propiedad Arrendada y espacios adicionales libre de costo en el lote en la Calle Federico Costas.

2. **Aprobaciones Requeridas.** Las partes certifican que obtuvieron todas las aprobaciones requeridas en ley previo a la formalización de este Contrato, incluyendo la aprobación de la Oficina de Gerencia y Presupuesto, la Oficina del Gobernador y de la Junta Revisora de Propiedad Inmueble de conformidad con la Ley 235 de 2014 y la reglamentación y cartas circulares promulgadas en virtud de la misma.

3. **Término del Contrato:** Este Contrato tendrá vigencia desde la firma de las partes en el presente contrato hasta la fecha del treinta (30) de junio de 2026 y el mismo estará sujeto estrictamente a la petición y aprobación del presupuesto anual y a la salud y políticas fiscales del Gobierno Federal y del Gobierno de Puerto Rico.

4. **Renta Total:** La Arrendataria pagará por meses vencidos a la Arrendadora, sin que medie previo requerimiento y sin deducción, descuento o compensación de clase alguna las sumas que se indican en este artículo. Los pagos se enviarán a la dirección postal que a tales efectos provea la Arrendadora o se harán por depósito directo a la cuenta indicada por la Arrendadora, según puedan acordar las partes de tiempo en tiempo:



a. **Renta:** La renta total a ser pagada el primer año por pie cuadrado es de Diecinueve Dólares y Veintinueve centavos ($19.29) por veintiocho mil cuatrocientos treinta y un pies cuadrados (28,431), para un pago anual de renta de Quinientos Cuarenta y Ocho Mil Cuatrocientos Treinta y Tres Dólares con Noventa y Nueve Centavos ($548,433.99) y una renta mensual de Cuarenta y Cinco Mil Setecientos Dos Dólares y Ochenta y Tres Centavos (la "Renta"). Luego de la conclusión del año primero del pago de Renta por la Arrendataria, la Renta conllevará un aumento anual de tres por ciento (3%) hasta la expiración del Contrato, según expuesto en la tabla a continuación:

| PERIODO | TOTAL (12 MESES) | MENSUAL |
|---|---|---|
| 1 | $ 548,433.99 | $ 45,702.83 |
| 2 | $ 564,071.04 | $ 47,005.92 |
| 3 | $ 580,561.02 | $ 48,380.09 |
| 4 | $ 597,051.00 | $ 49,754.25 |
| 5 | $ 614,393.91 | $ 51,199.49 |

Los gastos operacionales incluyen las contribuciones sobre la propiedad (CRIM); patentes municipales; otras contribuciones sobre la Propiedad Arrendada existentes que puedan legislarse, primas de seguro; mantenimiento y reparación incluyendo empleomanía y supervisión de: (i) las áreas exteriores y jardines, (ii)

Luis A. Rivera Siaca
Página 3 de 13

árboles; (iii) estacionamientos, (iv) verjas, (v)servicio de exterminación en áreas comunes; (vi) reposición e instalación de luminarias interiores (vii) pintura exterior del edificio; (viii) sistema de aire acondicionado (ix) y de las bombas de agua necesarias para su operación.

5. **Cancelación del Contrato:** La Arrendataria tendrá el derecho a dar por terminado el Contrato, por cualquier razón y en cualquier momento durante el Término, previa notificación por escrito a la Arrendadora con por lo menos de treinta (30) días de antelación a la fecha de cancelación y siempre y cuando, esté al día en el pago de los cánones de Renta y de cualquier otra obligación bajo el Contrato.

6. **Retención de la Posesión después del Término:** Concluido el término del Contrato, la Arrendataria podrá retener la posesión de la Propiedad Arrendada por dos meses, siempre y cuando notifique por escrito a la Arrendadora de su intención de extender el término del Contrato con por lo menos sesenta (60) días de antelación, sujeto a la firma de un acuerdo a tales efectos y a la aprobación de fondos.

7. **Servicios de Electricidad y Agua:** La electricidad y el agua serán costeados por el Arrendatario.

8. **Mantenimiento y Reparaciones:**

   A. **Obligaciones de Mantenimiento la Arrendadora:** La Arrendadora mantendrá en buenas condiciones:



   (a) Todas las partes estructurales de la Propiedad Arrendada, incluyendo, sin limitación, las fundaciones, paredes de carga, paredes exteriores, y todas las áreas comunes incluyendo piso y techo

   (b) Sistemas eléctricos, de plomería, piezas y alcantarillado.

   (c) Drenajes Pluviales de la Propiedad Arrendada.

   (d) Estacionamientos y todas las áreas comunes de la Propiedad Arrendada, incluyendo el Terreno.

   (e) Pintura exterior y áreas comunes de la Propiedad Arrendada.

   (f) Todos los servicios de emergencia y cualquiera otro relacionados con el mejor funcionamiento de la Propiedad Arrendada.

   (g) Aire acondicionado y sus componentes, incluye mantenimiento y reparación.

   (h) Sistemas eléctricos, incluye reparación y mantenimiento de subestaciones y cuartos eléctricos.

   (i) Iluminación: incluye lámparas y bombillas.

   (j) Mantenimiento y "Handyman" por un mínimo de seis (6) empleados con experiencia.

   (k) Fumigación en áreas comunes.

   B. **Reparaciones por la Arrendadora:** La Arrendadora será responsable, a su costo de las reparaciones de la Propiedad Arrendada en las siguientes circunstancias:

   (a) Daños a la Propiedad Arrendada causados por condiciones fuera del control de la Arrendataria, incluyendo, sin limitación, daños causados por fuegos, tornados, huracanes, terremotos, actos de fuerza mayor.

(b) Daños que sean consecuencia de la acción, negligencia u omisión de las obligaciones de la Arrendadora, sus agentes, representantes, contratistas, subcontratistas y empleados.

(c) Cualquier reparación que sea necesaria a las fundaciones paredes de carga, paredes exteriores y techo de la Propiedad Arrendada, de forma que se mantenga el techo y paredes de la Propiedad Arrendada debidamente impermeabilizadas y en buenas condiciones.

(d) La Arrendadora se compromete a efectuar, por su cuenta y cargo cualquier cambio o mejora a la Propiedad Arrendada requerida para cumplir con las especificaciones y requisitos de seguridad establecidos o que se establezcan durante el Término por el Departamento de Bomberos, Departamento del Trabajo y Recursos Humanos (OSHA), Departamento de Salud, Calidad Ambiental o cualquier otra agencia concernida así como todos los trabajos de reparación o mantenimiento que sean de naturaleza estructural, impermeabilización del techo y/o relacionados con las subestaciones eléctricas instaladas en la Propiedad.

C. **No Incumplimiento:** No existirá incumplimiento por parte de la Arrendadora ni será responsable por los daños directos o indirectos causados por la instalación, uso o interrupción de uso de cualquier equipo o servicio y/o por cualquier demora en proveer o por no proveer cualesquiera de dichos servicios cuando la razón esté directamente relacionada a cualquier accidente, caso fortuito, desastres naturales o cualquier situación fuera del control de la Arrendadora; o por efectuar mejoras o reparaciones necesarias a los sistemas de agua, electricidad o cualquier otra forma de energía que provea servicio a la Propiedad Arrendada. La Arrendadora en forma diligente tendrá que remediar cualquier interrupción de dichos servicios. La Arrendadora no tendrá derecho a que se disminuya la Renta por las razones antes detalladas, siempre y cuando la Propiedad Arrendada pueda ser razonablemente utilizada durante la interrupción del servicio para las actividades normales de la Arrendataria y la interrupción del servicio no sea por un período de tiempo mayor de cuarenta y ocho (48) horas laborables.

D. **Mantenimiento por la Arrendataria**: Excepto como queda provisto en el Contrato, la Arrendataria, a su costo, mantendrá la totalidad del interior de la Propiedad Arrendada y hará las reparaciones necesarias para mantener la misma en buenas condiciones.

9. **Alteraciones y Equipos:**

A. **Alteraciones o mejoras:** La Arrendataria a su costo, durante el Término del Contrato, podrá efectuar aquellas alteraciones, mejoras, o adiciones a la Propiedad Arrendada que estime necesarias (denominadas de aquí en adelante las "Mejoras"), siempre y cuando obtenga el consentimiento previo por escrito de la Arrendadora, el cual no será demorado o denegado irrazonablemente. La Arrendataria queda obligado, a la terminación del Contrato, a remover las Mejoras.

B. **Equipo /Propiedad Mueble:** La Arrendataria podrá instalar en la Propiedad Arrendada todos aquellos equipos propios de su negocio, mobiliario y bienes muebles que considere necesarios y/o aconsejables para el mejor desempeño de su negocio. Todo el equipo o propiedad mueble instalada en la Propiedad Arrendada serán y permanecerán propiedad de la Arrendataria.

A la terminación del Contrato la Arrendataria vendrá obligada a remover todo el equipo y propiedad mueble instalados en la Propiedad Arrendada y a reparar a su costo el daño que tal remoción cause.

10. **Daños y/o Destrucción:**

A. **Reconstrucción por el Arrendador.** Si cualquier parte de la Propiedad Arrendada, fueran dañadas o destruidas total o parcialmente, por razón de fuego,

los elementos, o cualquier otra causa tales como un huracán, terremoto o algún tipo de desastre natural, (en adelante denominados "Evento") entonces la Arrendadora vendrá obligada por su propia cuenta y costo a reconstruir y restaurar lo antes posible la Propiedad Arrendada a la condición existente inmediatamente antes del siniestro Evento. El trabajo de reconstrucción será llevado a cabo dentro de un término de tiempo razonable tomando en consideración la naturaleza y la magnitud del daño ocurrido.

B. **Terminación del Contrato:** Si por cualquier razón la Propiedad Arrendada no se encuentra en buen estado para ser utilizada en operaciones normales de la Arrendataria o no pueden ser reconstruidos según requerido dentro de un término razonable de tiempo, que no excederá de 120 días luego de ocurrido el Evento, entonces la Arrendataria tendrá derecho a dar por terminado este Contrato sin sujeción al pago de lo estipulado en este Contrato sobre la cancelación o terminación del mismo. De igual manera la Arrendataria podrá ejercer lo estipulado en la Cláusula 5 de este Contrato.

11. **Indemnización de las Partes:** La Arrendadora y/o la Arrendataria, según fuera el caso, previo notificación indemnizará y salvará de responsabilidad a la otro parte, de cualquier demanda, reclamación, pérdida o daños que puedan surgir por accidentes ocurridos en o daños causados en la Propiedad Arrendada y/o el terreno de la Propiedad Arrendada, o la tierra donde se encuentra las mismas, por negligencia, o por acción u omisión de una de las partes y/o de sus agentes, empleados, contratistas o subcontratistas, excepto cuando los mismos hayan ocurrido como consecuencia directa de la negligencia o conducta impropia de la Arrendadora o de la Arrendataria, según fuera el caso.

En la eventualidad de que la Arrendadora y/o la Arrendataria fueran notificados de una reclamación, causa de acción o cualquier procedimiento que pueda resultar en una indemnización a ser pagada por la otra parte, según se provee en el párrafo anterior, entonces la Arrendadora o Arrendataria, según fuera el caso, darán pronta notificación por escrito a la otra parte informándole detalladamente de la situación de marras.

La Arrendadora y/o la Arrendataria, procederán inmediatamente a enviar al otro cualquier demanda, notificación o emplazamiento recibido por él o sus representantes.

La Arrendadora y/o la Arrendataria, según fuera el caso, tendrán la obligación y el derecho a defenderse de las alegaciones, acciones o procedimientos donde puedan tener derecho a ser indemnizados bajo las secciones de este Artículo. En cuyo caso, la Arrendadora y/o Arrendataria tendrán derecho a transigir la reclamación, causa de acción o procedimiento, previo el consentimiento escrito de la otra parte, el cual no será irrazonablemente denegado.

12. **Seguros:** La Arrendadora mantendrá durante todo el término del Contrato, que se detalla a continuación:

| Limits of Insurance | |
| --- | --- |
| General Aggregate | $1,000,000 |
| Products Completed Operations Aggregate | $1,000,000 |
| Personal Injury & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Damage | $100,000 |
| Medical Expense | $5,000 |
| **Compañía Aseguradora** | **Número de Póliza** |
| Liberty Mutual | MPRO020190050-1 |

13. **Rótulos:** Todos los rótulos que puedan ser instalados por la Arrendadora y la Arrendataria, según sea el caso, tendrán que cumplir con todos los requisitos de ley y tendrán que ser instalados en una forma adecuada.

La Arrendataria tendrá que obtener de la Arrendadora el previo consentimiento por escrito el cual no será negado, demorado o emitido bajo ciertas condiciones en una forma irrazonable.

La Arrendataria no podrá instalar, colocar o permitir la instalación o colocación de rótulos o gráficas que afecten el carácter de la Propiedad Arrendada como una edificación comercial propia del área.  Ningún rótulo de alquiler o banderines podrán ser localizados dentro de la Propiedad Arrendada sin que se obtenga el previo consentimiento del Arrendador.

14. **Incumplimiento:**

A. **Incumplimiento de la Arrendataria:** La Arrendataria se encontrará en incumplimiento con los términos de este Contrato si no cumple con cualquier término o condición del Contrato y si dicho incumplimiento no es subsanado dentro del término de 60 días contados a partir de la fecha de la notificación por escrito por parte de la Arrendadora.  Si el incumplimiento no puede ser razonablemente subsanado dentro del término antes estipulado, pero la Arrendataria ha comenzado a subsanar dentro de dicho término y continúa con los trabajos para subsanar el incumplimiento de una forma diligente, entonces la Arrendataria no se considerará que ha incumplido.

Si la Arrendataria no subsana su incumplimiento, la Arrendadora, en adición a cualquier otro remedio provisto en ley y equidad, podrá subsanar el mismo por cuenta y cargo de la Arrendataria.  Si la Arrendadora paga cualquier suma atribuible al incumplimiento de la Arrendataria esta suma tendrá que ser reembolsada a la Arrendadora. Adicionalmente, la Arrendadora podrá dar por terminado este Contrato.

B. **Incumplimiento de la Arrendadora:** La Arrendadora se encontrará en incumplimiento con los términos de este Contrato si no cumple con cualquier término o condición del Contrato y si dicho incumplimiento no es subsanado dentro del término de 60 días contados a partir de la fecha de la notificación por escrito por parte de la Arrendataria.  Si el incumplimiento no puede ser razonablemente subsanado dentro del término antes estipulado, pero la Arrendadora ha comenzado a subsanar dentro de dicho término y continúa con los trabajos para subsanar el incumplimiento de una forma diligente, entonces la Arrendadora no se considerará que ha incumplido.

Si la Arrendadora no subsana su incumplimiento, la Arrendataria, en adición a cualquier otro remedio provisto en ley y equidad, podrá subsanar el mismo por cuenta y cargo de la Arrendadora.  Si la Arrendataria paga cualquier suma atribuible al incumplimiento de la Arrendadora esta suma tendrá que ser reembolsada a la Arrendataria.

C. **Notificación:** Toda notificación de incumplimiento bajo este artículo especificará la naturaleza del incumplimiento y las secciones del Contrato aplicables.

15. **Subordinación:** Este Contrato y todos los derechos que la Arrendataria tiene bajo el mismo podrán ser subordinados en cualquier momento a cualquier hipoteca que al presente exista o que en el futuro pueda existir sobre la Propiedad Arrendada.

Esta cláusula será operativa automáticamente y sin necesidad de otorgar ningún otro documento de subordinación.

Queda entendido y acordado que la posesión de la Propiedad Arrendada y el uso a que la Arrendataria la destina, no serán afectadas en forma alguna por la Arrendadora

y/o su acreedor hipotecario en tanto y en cuanto la Arrendataria no se encuentre en estado de incumplimiento de este Contrato.

16. **Devolución de Propiedad Arrendada:** A la terminación del Contrato la Arrendataria entregará a la Arrendadora la Propiedad Arrendada en buen estado de uso y conservación excepto por el deterioro causado por el transcurso del tiempo o por su uso normal o por daños causados por un Evento (según establecido en la cláusula sobre Daños y/o Destrucción de este Contrato).

17. **Representaciones y Garantías de la Arrendadora:** La Arrendadora representa y garantiza a la Arrendataria que es dueña en pleno dominio de la Propiedad Arrendada (tierra y edificio) y que tiene pleno derecho a entrar en este Contrato.

Sujeto a los términos y definiciones detallados en este Contrato la Arrendataria tendrá derecho a la posesión de la Propiedad Arrendada para su uso total y exclusivo.

La Arrendadora tiene la obligación de proteger a la Arrendataria de cualquier perturbación o interferencia de terceros que actúen en virtud de un derecho.

En tanto y en cuanto la Arrendataria cumpla a cabalidad con los términos de este Contrato, tendrá derecho a ocupar la Propiedad Arrendada en forma pacífica e interrumpida y sin interferencia de parte alguna por parte de la Arrendadora y de cualquier personal que reclame a través de la Arrendadora.

La Arrendadora habrá de cumplir con todos los términos y condiciones contenidos en este Contrato.

18. **Representaciones y Garantías de la Arrendataria:** Que la Arrendataria tiene la capacidad y la autorización necesaria en derecho para otorgar este Contrato de Arrendamiento y obligarse a los términos y condiciones pactados en dicho documento. La Arrendataria gestionó y obtuvo previo al otorgamiento de este Contrato todos los permisos gubernamentales requeridos.

La Arrendataria habrá de cumplir con todos los términos y condiciones contenidos en este Contrato.

19. **Notificaciones:** Cualquier notificación, solicitud de consentimiento o cualquier otra misiva que una parte desee cursar a la otra bajo este Contrato deberá ser:

(a) Entregada a mano, enviada por correo certificado con acuse de recibo, por correo electrónico, vía facsímil o por correo privado (DHL, Fedex, etc.) con acuse de recibo y será dirigida a la parte y a la dirección abajo estipuladas. Cualquier cambio de dirección será notificado por escrito a la otra parte.

(b) Las notificaciones se considerarán entregadas 48 horas después de haber sido enviadas por correo certificado o correo privado; o inmediatamente si entregadas a mano, vía facsímil, o por correo electrónico.

(c) Toda notificación, si cursada a la Arrendadora será dirigida a:

Luis A. Rivera Siaca
P.O. Box 190681
San Juan, Puerto Rico 00919-0681
Tel. (787) 620-1736 / Fax (787) 620-1739
Email: pinsy@erspr.com
milagros@erspr.com

(c) Toda notificación, si cursada a la Arrendataria será dirigida a:

Departamento de Educación
Centro de Servicios de Educación Especial

P. O. Box 190759
San Juan, Puerto Rico 00919-0759
Tel. 787-723-9090 ext. 6123;
Email: malaveic@de.pr.gov

20. **Retención de Documentos y Auditorías:** El Arrendador conservará copias de todos los documentos que relacionados a sus obligaciones bajo este Contrato.

Los documentos antes descritos estarán disponibles para inspección y auditoría por parte de los oficiales de la Arrendataria, la Oficina del Contralor, o cualquier entidad oficial del Gobierno de Puerto Rico o del Gobierno de los Estados Unidos. El Departamento podrá solicitar por escrito toda información requerida para propósitos de auditoría y relacionada con este Contrato y con el desempeño de las obligaciones del Arrendador bajo el mismo.

El Arrendador retendrá los documentos generados en conexión con el presente Contrato por un período de seis (6) años, luego de expirado el mismo. En caso de que se hubiese iniciado una auditoría y un hallazgo permaneciera sin resolver al final de dicho período; los documentos se retendrán hasta la resolución de dicho hallazgo.

Si antes de los seis (6) años la Oficina del Contralor efectúa una auditoría o investigación sobre este Contrato emite el informe correspondiente, el Arrendador deberá retener los referidos informes y otros documentos por un mínimo de cinco (5) años adicionales.

21. **Facturación:** El Contratista facturará al finalizar los servicios rendidos. La factura será enviada en original y tres (3) copias debidamente certificadas, a tenor con la Ley de Contabilidad y siguiendo las normas establecidas por las agencias fiscalizadoras del Gobierno de Puerto Rico

La facturación se efectuará en los términos expresamente acordados en este Contrato y deberá ser específica y desglosada Es responsabilidad del Contratista garantizar la certeza y razonabilidad de cada factura presentada. El Departamento revisará cada factura presentada y considerará dicha factura como una certificación del Contratista de que los servicios ofrecidos y gastos incurridos son razonables para el tipo de asunto que esté contratado. El Departamento se reserva el derecho de ajustar u objetar cualquier factura o trabajo realizado notificado en la misma debido al incumplimiento con estas guías o basada en la contratación o por cualquier otra razón válida.

Según lo establece la OE-2001-73, el Contratista incluirá en cada factura que presente al Departamento la siguiente certificación:

*"Bajo pena de nulidad absoluta el Contratista certifica que ningún servidor público del Departamento de Educación es parte o tiene algún interés en las ganancias o beneficios producto del contrato objeto de esta factura y de ser parte o tener interés en las ganancias o beneficios producto del contrato ha mediado una dispensa previa. La única consideración para suministrar los bienes o servicios objeto del contrato ha sido el pago acordado con el Secretario o su representante autorizado. El importe de esta factura es justo y correcto, y los servicios han sido prestados y no han sido pagados."*

Previo a su pago, las facturas deberán ser debidamente certificadas por el Secretario de Educación o su representante autorizado. El Departamento no realizará ningún pago en exceso de la cantidad dispuesta en este Contrato, independientemente de las razones que pueda tener para dicho exceso.

La factura será enviada a la oficina del Secretario Auxiliar de Servicios Auxiliares para su evaluación. La misma deberá estar acompañada de cualquier documentación o evidencia que la sustente.   El Contratista cumplirá con los requisitos del Departamento de Hacienda, la Oficina de Gerencia y Presupuesto y la Junta de Supervisión Fiscal, deberá facturar los servicios utilizando el Sistema de Facturación

En Línea ("E-settlement") del Departamento. El Departamento le proveerá al Contratista un Manual para el uso de E-settlement y el Contratista deberá coordinar con la Oficina de Finanzas del Departamento la orientación inicial para obtener el acceso a E-settlement.

22. **Cifra de Cuenta:** El pago de la Renta devengada bajo este Contrato se efectuará con cargo a la cifra de cuenta <u>E2632-111-02000000-3140-003-2021</u> o de cualesquiera otras cifras de cuentas que puedan ser identificadas en el futuro para dichos propósitos. Los desembolsos por Servicios prestados y facturados bajo este Contrato estarán sujetos en todo momento a la disponibilidad de los fondos asignados y debidamente certificados.

23. **Certificado de ASUME:** El Arrendador, como entidad jurídica certifica que, como patrono, está cumpliendo con las órdenes de retención de pensión alimentaria de sus empleados.

24. **Fondo del Seguro del Estado:** Durante todo el Término de este Contrato el Arrendador será responsable de mantener una póliza con el Fondo del Seguro del Estado que cubra a sus empleados y a todo el personal que preste servicios bajo este Contrato.

25. **Certificaciones bajo OE-1991-24 y OE 1992-52 (Radicación de planillas contributivas y Deudas por Desempleo y Otros):** El Arrendador certifica y garantiza que al momento de suscribir este Contrato ha rendido su planilla de contribuciones sobre ingresos durante los cinco (5) años previo a este Contrato y no adeuda contribuciones al Gobierno de Puerto Rico, o se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo. El Arrendador certifica y garantiza que al momento de suscribirse este Contrato ha pagado las contribuciones de seguro por desempleo, de incapacidad temporal y de seguro social para choferes (la que aplique) o se encuentra acogido a un plan de pago con cuyos términos y condiciones está cumpliendo.

El Arrendador certifica que no tiene deudas con el Gobierno de Puerto Rico o sus municipios, incluyendo sin limitación, deudas por concepto de impuestos municipales, contribuciones sobre la propiedad, licencias, impuestos sobre nómina, intereses, dividendos o por cualquier otro origen o materia, o que se encuentra acogido a un plan de pago, con cuyos términos y condiciones está cumpliendo.

Expresamente se reconoce que ésta es una condición esencial del presente Contrato, y de no ser correcta del todo o en parte la anterior certificación, esto será causa suficiente para que el Departamento pueda dejar sin efecto el mismo y el Arrendador tendrá que reintegrar al Departamento toda suma de dinero recibida bajo este Contrato.

26. **Certificación de no Convicción por Delito:** De conformidad con las disposiciones de la Ley 2 del 4 de enero de 2018 que crea el Código Anticorrupción del Gobierno de Puerto Rico y la Carta Circular Número 2009-01 del 9 de marzo de 2009 del Departamento de Justicia, el Arrendador certifica y garantiza que al momento de suscribirse este Contrato ni él/ella, ni, en el caso de corporaciones u otras entidades jurídicas, los oficiales, principales empleados, accionistas, miembros, o integrantes de la Junta de Directores de la corporación o entidad, ni sus afiliadas o subsidiarias o entidad matriz ha sido convicto, se ha encontrado causa probable para arresto, o se ha declarado culpable de cualquier delito incluido en la Sección 6.8 de la Ley Número 8 de 2017 (Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico) o en el Código Anticorrupción, que atenten contra el erario, la fe o la función pública, contra el ejercicio gubernamental o que involucre fondos o propiedad pública en el ámbito federal o estatal u otra jurisdicción extranjera o con ninguna otra disposición de la Ley .

El Arrendador reconoce su deber de informar de manera continua, durante la vigencia del Contrato, cualquier hecho que se relacione con la conducción de cualquier investigación por la comisión de un delito contra el erario, la fe o la función pública;

contra el ejercicio gubernamental, que involucre fondos o propiedad pública en el ámbito federal o estatal. Esta obligación deberá ser de naturaleza continua durante todas las etapas de la contratación y ejecución del Contrato.

Este Contrato será cancelado por el Departamento en caso de que contra el Arrendador se determine causa probable para el arresto por la comisión de algún delito contra el erario, la fe o la función pública; contra el ejercicio gubernamental; o que involucre fondos o propiedad pública, en el ámbito federal o estatal.

27. **Certificaciones Contributivas y ASUME:** La Contratista ha presentado o ha autorizado al Departamento a gestionar o, al inscribirse en el Registro Único de Licitadores de la Administración de Servicios Generales presentó (y así lo evidencia) las que apliquen de las siguientes certificaciones, las cuales formarán parte de este Contrato:

a- Copia del Certificado de Registro de Comerciantes (Modelo SC 2918)

b- Certificación de cumplimiento de radicación de informes al Departamento de Estado ("Good Standing").

c- Certificación de Radicación de Planillas de Impuesto sobre Ventas y Uso-IVU (Modelo SC 2942)

d- Certificación de Deuda del Impuesto sobre Ventas y Uso-IVU (Modelo SC 2927). De existir deudas para las que la Contratista indique estar acogido a un plan de pago deberá presentar una certificación manual emitida por el Departamento de Hacienda que indique que está cumpliendo con sus términos.

e- Certificación de existencia o autorización para hacer negocios en Puerto Rico del Departamento de Estado.

f- Certificación de Deuda del Departamento de Hacienda (Modelo SC 6096). Si existen deudas para las que la Contratista indique estar acogido a un plan de pago, deberá presentar una certificación manual del Departamento de Hacienda que indique que está cumpliendo con sus términos.

g- Certificación de haber rendido planillas de contribución sobre ingresos por los pasados cinco (5) años del Departamento de Hacienda. (Modelo SC 6088)

e- Certificación de Deuda por todos los conceptos del Centro de Recaudaciones Municipales (CRIM).

Certificación de haber rendido planillas de propiedad mueble por los pasados cinco (5) años del Centro de Recaudaciones Municipales (CRIM). Si la Contratista ofrece servicios profesionales o consultivos y no posee propiedad mueble y no figura radicando planilla en el CRIM deberá presentar declaración jurada de conformidad con los términos de la Carta Circular de Hacienda Número CC 1300-16-16 (o su sustituta).

g- Declaración jurada en los casos que no figure radicando planillas de propiedad mueble en el Centro de Recaudaciones Municipales (CRIM) o que no posea propiedad mueble.

h- Certificación de Registro como Patrono y de Deuda por Concepto de Seguro Social Choferil del Departamento del Trabajo y Recursos Humanos.

i- Certificación de Registro como Patrono y de Deuda por Concepto de Seguro por Desempleo y Seguro por Incapacidad del Departamento del Trabajo y Recursos Humanos

j- Certificación de Deuda del Fondo del Seguro del Estado.

k- Certificación de ASUME. Si la Contratista es un individuo deberá presentar certificación de que no está obligada/o a pagar pensión alimentaria o, si lo estuviera, que está cumpliendo con los pagos. En el caso de una entidad corporativa deberá presentar certificación de que, como patrono, está cumpliendo con las órdenes de retención de pensión alimentaria de sus empleados.

l- Certificación de razones por las cuales el contribuyente no está obligado en ley a rendir la planilla de contribución sobre ingresos de individuos del Departamento de Hacienda (Modelo SC 2781) o, el Certificado de Incorporación o de Organización, que evidencie ausencia de personalidad jurídica durante el período en el que no se rindió planilla.

m- Corrección Manual a la Certificación de Radicación de Planillas de Contribución sobre Ingresos del Departamento de Hacienda (Modelo SC 2888)

n- En el caso que la Contratista sea una entidad organizada fuera de Puerto Rico y no estuviera haciendo negocios en Puerto Rico ni tuviera oficinas locales, presentará su sus artículos de incorporación u organización, certificado de existencia del lugar donde se organizó y una declaración jurada debidamente autenticada en la que conste su número de seguro social patronal (de tenerlo), que no tiene responsabilidad contributiva con el gobierno de Puerto Rico y que el cumplimiento con los términos del Contrato no resultan en que se convierta en una entidad que hace negocios en Puerto Rico. Además, deberá presentar la certificación de ASUME.

28. **Conflicto de Intereses:** El Arrendador garantiza que, a su mejor saber y entender, ningún oficial, empleado, asesor o consultor del Departamento, ni ningún miembro de su unidad familiar, tiene interés económico directo o indirecto en este Contrato y que ningún oficial, empleado, asesor o consultor de la Rama Ejecutiva del Gobierno de Puerto Rico, ni ningún miembro de su unidad familiar tiene un interés y/o participación en los beneficios económicos o ingresos relacionados con este Contrato.

El Arrendador certifica que ningún servidor público del Departamento le solicitó, ni aceptó, directa o indirectamente para él o ella o para otra persona, regalos, gratificaciones, favores, Servicios, donativos, préstamos o cualquier otra cosa de valor monetario. Certifica también que ningún servidor público del Departamento solicitó o aceptó bien alguno de valor económico, vinculados a esta transacción, de persona alguna del Arrendador como pago por realizar los deberes y responsabilidades de su empleo. Tampoco solicitó, directa o indirectamente, para ningún servidor público, para algún miembro de su unidad familiar, ni para cualquier otra persona, negocio o entidad, bien alguno de valor económico, incluyendo cualquier préstamo o Servicios a cambio de que la actuación de dicho servidor públicos esté influenciada a favor del Arrendador.

El Arrendador reconoce y certifica que, en el cumplimiento de sus obligaciones bajo este Contrato, le debe completa lealtad al Departamento, lo que incluye, entre otras cosas, no tener intereses adversos o en conflicto con el Departamento. Estos intereses en conflicto incluyen, pero no están limitados a litigios u otras reclamaciones en contra del Departamento. Esta obligación también incluye el deber continuo de informar al Departamento de todas las circunstancias relacionadas con la relación del Arrendador con clientes y terceras personas o de cualquier interés que pueda influenciar al Departamento en la ejecución de este Contrato o durante el término de duración del mismo.

En contratos con sociedades o entidades corporativas, constituirá una violación de esta prohibición el que alguno de sus accionistas, socios, oficiales, principales, empleados, subsidiarias o compañías matrices incurra en la conducta aquí descrita. El Arrendador evitará aun la apariencia de la existencia de intereses encontrados.

29. **Código Anticorrupción:** El Arrendador se compromete a cumplir con las disposiciones del **Código Anticorrupción de Puerto Rico,** aprobado mediante la Ley Número 2 de 4 de enero de 2018. Cualquier infracción a las disposiciones de esta Ley podrá ser procesada civil y administrativamente, según sea el caso.

30. **No Discrimen:** El Arrendador se compromete a no discriminar en la prestación de estos servicios por razones de índole política, religiosa, de raza, condición social, edad, sexo, nacionalidad, condición, impedimento físico o mental o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, por ser militar, exmilitar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano, por orientación sexual, identidad de género o por cualquier otra causa discriminatoria. Igualmente se compromete a asegurar igual oportunidad en el empleo para personas con impedimentos de conformidad con las leyes aplicables.

31. **No Litigios Contra el Gobierno de Puerto Rico:** La Arrendadora certifica que no tiene litigios en proceso contra ninguna entidad o instrumentalidad gubernamental al momento del otorgamiento de este Contrato.

32. **Títulos y Sub-Títulos:** Los Títulos y Sub-Títulos de las distintas cláusulas del Contrato se incluyen para facilitar el manejo del documento y no afectaran la interpretación del mismo.

33. **Modificaciones:** Este Contrato contiene la totalidad de los acuerdos a que las partes han llegado y solo podrá ser modificado o enmendado por escrito y tendrá que ser suscrito por las partes aquí comparecientes.

34. **No Renuncia (Non-Waiver):** El mero hecho de que una de las partes no ejerza o exija algún derecho o prerrogativa bajo este Contrato o no exija el cumplimiento estricto con una de sus disposiciones no se entenderá como una renuncia a reclamar o exigir sus derechos o prerrogativas o el cumplimiento estricto de alguna disposición de este Contrato en ocasión futura.

35. **No Corredores de Bienes Raíces:** En la transacción que culmina con el otorgamiento de este Contrato no ha intervenido corredor de bienes raíces alguno.

36. **Ley Aplicable y Foro:** Este Contrato y todas las materias relacionadas con el mismo serán interpretadas de conformidad con las Leyes de Puerto Rico. Cualquier acción legal que se inicie en relación con este Contrato será radicada única y exclusivamente en el Tribunal de Primera Instancia, Sala de San Juan, a la cual el Arrendador se somete irrevocablemente.

37. **Separabilidad:** Se estipula que las cláusulas y condiciones de este Contrato son independientes y separadas entre sí, y que la nulidad declarada por un tribunal competente de una o más cláusulas no afecta la validez de las restantes, las cuales continuarán vigentes.

38. **Totalidad del Contrato:** Este Contrato constituye la totalidad del acuerdo entre las partes con relación a los servicios a ser prestados a tenor de éste. Cualquier enmienda a este Contrato tendrá que ser hecha mediante un escrito firmado por ambas partes durante la vigencia del Contrato, a tenor con las necesidades del Departamento y sujeto a la disponibilidad de fondos para la ejecución de la enmienda.

**EN VIRTUD DE LO CUAL,** las partes suscriben este Contrato en San Juan, Puerto Rico hoy día ___21___ de mayo de 2021.

_____
Lcdo. Eliezer Ramos Parés
Departamento de Educación de P.R.
SSP: 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

_____
Luis A. Rivera Siaca
SS: 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

Luis A. Rivera Siaca
Página 13 de 13

SOMETIDO POR:

_____
Carlos M. Malavé Irizarry
Secretario Auxiliar
Servicios Auxiliares

REVISADO POR:

_____
Lcdo. Irving E. Otero Narváez
DEPR

Certified Translation MC-2023-003
Page 1 of 14



*121-000100*
*0872071-0180*

**GOVERNMENT OF PUERTO RICO**
**DEPARTMENT OF EDUCATION**

<u>**LEASE AGREEMENT**</u>

**OF THE FIRST PARTY:** The **Department of Education of Puerto Rico**, represented herein by its Secretary, Mr. Eliezer Ramos Parés, of legal age, married and a resident of San Juan, Puerto Rico, hereinafter referred to as "Lessee", the "Department" or "DE".

**OF THE SECOND PARTY: Luis A. Rivera Siaca**, owner in fee simple of the building that is the object of this lease, of legal age, married, businessman and neighbor of Guaynabo, Puerto Rico, hereinafter referred to as the "Lessor".

**STATE**

That the Department, by virtue of the authority conferred upon it by Act 85 of March 29, 2018, as amended, known as the "Puerto Rico Education Reform Act," by the Constitution of the Commonwealth of Puerto Rico, and by the laws administered by the Department has the power to enter into such contracts as may be necessary to comply with its obligations at law.

Having stated the foregoing, the parties hereto enter into this lease agreement (the "Agreement") subject to the following:

**TERMS AND CONDITIONS**

1.   **Leased Property:**

   a.   **Description of the Leased Property**: The Lessor hereby leases to the property located at 33 Calaf Street, San Juan, Puerto Rico, with parking spaces for DE employees, where the Department's offices are currently located (the "Leased Property"). The Leased Property is twenty-eight thousand four hundred and thirty-one (28,431) square feet.

   b.   **Structure**: The structure containing the Leased Property consists of the following:

| Construction | The Building consists of a single level structure with a parking area. | |
|---|---|---|
| Area | Of the Lot | The website of the Planning Board of Puerto Rico establishes that the building is constructed on a lot of five thousand fifteen point thirty-eight (5,015.38) square meters. |
| | Of the Premises | The building has a total rentable area of twenty-eight thousand four hundred thirty-one (28,431) square feet. |
| | Of the Parking Lot | The building has a parking area with a capacity of 135 parking spaces, including back-to-back spaces. |
| Location and Property Registration Certificate | Corner of Teniente César González Ave. and Juan Calaf Street No. 33. Tres Monjitas Industrial Development, Hato Rey San Juan, Puerto Rico | |

   c.   **Use of the Leased Property**: The Leased Property will be used as the headquarters of the Department's offices and currently houses the Administrative Offices of Auxiliary Services,                     Transportation,                     Tal                     System,

Retirement Office, Food and Non-Teaching Authority of the DE, the Administrative Offices of the San Juan Region, and the Information Systems Offices (OSIAT), among others. The Leased Property shall also be used for any other lawful use or purpose related to the operations of the Lessee.

   d.   **Access**: The Lessee shall have access during business hours and business days, during the term of the Agreement, to the Leased Property, the parking area, the corridors, accesses and other common areas of the building and the land.

   e.   Parking Lots: The Lessor shall provide one hundred thirty-five (135) parking spaces for Department employees at the Leased Property and additional spaces free of charge at the lot on Federico Costas Street.

2.   **Required Approvals.** The parties certify that they have obtained all approvals required by law prior to the execution of this Agreement, including the approval of the Office of Management and Budget, the Office of the Governor and the Real Estate Property Review Board pursuant to Act 235 of 2014 and the regulations and circular letters enacted thereunder.

3.   **Term of the Agreement**: This Agreement shall be effective from the signature of the parties hereto until the date of June thirty (30), 2026, and it shall be strictly subject to the request and approval of the annual budget and the health and fiscal policies of the Federal Government and the Government of Puerto Rico.

4.   **Total Rent**: The Lessee shall pay to the Lessor, without prior demand and without any deduction, discount or compensation of any kind, the amounts indicated in this Article. Payments shall be sent to the mailing address provided by the Lessor for such purposes or shall be made by direct deposit to the account indicated by the Lessor, as the parties may agree from time to time:

   a.   **Rent**: The total rent to be paid the first year per square foot is Nineteen Dollars and Twenty-Nine Cents ($19.29) per twenty-eight thousand four hundred thirty-one square feet (28,431), for an annual rental payment of Five Hundred Forty-Eight Thousand Four Hundred Thirty-Three Dollars and Ninety-Nine Cents ($548,433.99) and a monthly rent of Forty-Five Thousand Seven Hundred Two Dollars and Eighty-Three Cents (the "Rent"). After the conclusion of the first year of payment of Rent by Lessee, the Rent shall bear an annual increase of three percent (3%) until the expiration of the Agreement, as set forth in the table below:

| PERIOD | TOTAL (12 MONTHS) | MONTHLY |
|--------|-------------------|---------|
| 1 | $           548,433.99 | $           45,702.83 |
| 2 | $           564,071.04 | $           47,005.92 |
| 3 | $           580,561.02 | $           48,380.09 |
| 4 | $           597,051.00 | $           49,754.25 |
| 5 | $           614,393.91 | $           51,199.49 |

Operating expenses include property taxes (CRIM); municipal patents; other existing Leased Property taxes that may be legislated, insurance premiums; maintenance and repairs including labor and supervision of: (i) the exterior areas and gardens, (ii)

trees; (iii) parking lots, (iv) fences, (v) extermination service in common areas; (vi) replacement and installation of interior lighting fixtures (vii) exterior painting of the building; (viii) air conditioning system (ix) and of the water pumps necessary for its operation.

5. **Termination of the Agreement**: The Lessee shall have the right to terminate the Agreement, for any reason and at any time during the Term, upon written notice to the Lessor at least thirty (30) days prior to the date of termination and provided that the Lessee is current in the payment of the Rent and any other obligations under the Agreement.

6. **Retention of Possession after the Term**: Upon the expiration of the term of the Agreement, Lessee may retain possession of the Leased Property for two months, provided that Lessee notifies Lessor in writing of its intention to extend the Agreement term at least sixty (60) days in advance, subject to execution of an agreement to such effect and approval of funds.

7. **Electricity and Water Services**: Electricity and water will be paid for by the Lessee.

8. **Maintenance and Repairs**:

   A. **Lessor's Maintenance Obligations:** Lessor shall maintain in good condition:

      (a) All structural parts of the Leased Property, including, without limitation, foundations, bearing walls, exterior walls, and all common areas including floor and roof.

      (b) Electrical, plumbing, parts and sewer systems.

      (c) Storm Drains from the Leased Property.

      (d) Parking lots and all common areas of the Leased Property, including the Land.

      (e) Exterior painting and common areas of the Leased Property.

      (f) All emergency services and any other services related to the best operation of the Leased Property.

      (g) Air conditioning and its components, including maintenance and repair.

      (h) Electrical systems, including repair and maintenance of substations and electrical rooms.

      (i) Lighting: including lamps and bulbs.

      (j) Maintenance and "Handyman" by a minimum of six (6) experienced employees.

      (k) Extermination in common areas.

   B. **Repairs by Lessor**: Lessor shall be responsible, at its expense, for repairs to the Leased Property in the following circumstances:

      (a) Damage to the Leased Property caused by conditions beyond Lessee's control, including, without limitation, damage caused by fires, tornadoes, hurricanes, earthquakes, acts of God.

Case:17-03283-LTS   Doc#:23212-1   Filed:01/09/23   Entered:01/09/23 12:04:12   Desc:
Exhibit A   Page 17 of 27

Certified Translation MC-2023-003
Page 4 of 14

Luis A. Rivera Siaca
Page **4** of **13**

(b)  Damages resulting from the act, neglect or omission of the Lessor, its agents, representatives, contractors, subcontractors and employees.

(c)  Any necessary repairs to the foundations, bearing walls, exterior walls and roof of the Leased Property so as to keep the roof and walls of the Leased Property properly waterproofed and in good condition.

(d)  Lessor agrees to make, at its expense, any changes or improvements to the Leased Property required to meet the specifications and safety requirements established or to be established during the Term by the Fire Department, Department of Labor and Human Resources (OSHA), Department of Health, Environmental Quality or any other concerned agency as well as all repair or maintenance work that is structural in nature, roof waterproofing and/or related to the electrical substations installed on the Property.

C.  **No Default**: There shall be no default by the Lessor nor shall the Lessor be liable for any direct or indirect damages caused by the installation, use or interruption of use of any equipment or services and/or for any delay in providing or failure to provide any such services when the reason is directly related to any accident, act of God, natural disaster or any situation beyond the control of the Lessor; or for making necessary improvements or repairs to the water, electrical or any other form of power systems providing service to the Leased Property. The Lessor shall diligently remedy any interruption of such services. Lessor shall not be entitled to have Rent abated for the foregoing reasons, provided that the Leased Property can reasonably be used during the service interruption for Lessee's normal activities and the service interruption is not for a period of time longer than forty-eight (48) business hours.

D.  **Maintenance by Lessee**: Except as provided in the Agreement, Lessee, at its expense, shall maintain and care for the entire interior of the Leased Property and make such repairs as are necessary to keep the same in good condition.

9.  **Alterations and Equipment:**

A.  **Alterations or Improvements**: The Lessee, at its expense, during the Term of the Agreement, may make such alterations, improvements, or additions to the Leased Property as it deems necessary (hereinafter referred to as the "Improvements"), provided that it obtains the prior written consent of the Lessor, which consent shall not be unreasonably delayed or withheld. The Lessee is obligated, upon termination of the Agreement, to remove the Improvements.

B.  **Equipment/Furnishings**: The Lessee may install on the Leased Property all such business equipment, furniture and chattels as it deems necessary and/or advisable for the better performance of its business. All equipment or personal property installed on the Leased Property shall be and remain property of the Lessee.

Upon termination of the Agreement, the Lessee shall be obligated to remove all equipment and personal property installed in the Leased Property and to repair at its own expense any damage caused by such removal.

10.  **Damage and/or Destruction:**

A.  **Reconstruction by Lessor**. If any part of the Leased Property is damaged or destroyed in whole             or             in       part,             by             reason             of             fire,

the elements, or any other cause such as a hurricane, earthquake or other natural disaster, (hereinafter referred to as an "Event") then the Lessor shall be obligated at its sole cost and expense to rebuild and restore the Leased Property as soon as possible to the condition existing immediately prior to the Event. The reconstruction work shall be carried out within a reasonable period of time taking into consideration the nature and extent of the damage occurred.

B.   **Termination of Agreement**: If for any reason the Leased Property is not in good condition for use in the normal operations of the Lessee or cannot be rebuilt as required within a reasonable period of time, not to exceed 120 days after the occurrence of the Event, then the Lessee shall have the right to terminate this Agreement without payment of the cancellation or termination provisions of this Agreement. Likewise, the Lessee may exercise the provisions of Clause 5 of this Agreement.

11.   **Indemnification of the Parties:** The Lessor and/or the Lessee, as the case may be, upon prior notice shall indemnify and hold harmless the other party, from any complaint, claim, loss or damage that may arise from accidents occurring in or damage caused to the Leased Property and/or the land of the Leased Property, or the land where it is located, due to the negligence, or act or omission of either party and/or its agents, employees, contractors or subcontractors, except when they have occurred as a direct consequence of the negligence or misconduct of the Lessor or the Lessee, as the case may be.

In the event that the Lessor and/or the Lessee are notified of a claim, cause of action or any proceeding that may result in an indemnity to be paid by the other party, as provided in the preceding paragraph, then the Lessor or the Lessee, as the case may be, shall give prompt written notice to the other party informing it in detail of the situation in question.

The Lessor and/or the Lessee shall immediately forward to the other any complaint, notice or summons received by it or its representatives.

The Lessor and/or the Lessee, as the case may be, shall have the obligation and the right to defend against allegations, actions or proceedings where they may be entitled to be indemnified under the sections of this Article. In which event, the Lessor and/or Lessee shall have the right to settle the claim, cause of action or proceeding, subject to the written consent of the other party, which consent shall not be unreasonably withheld.

12.   **Insurance:** The Lessor shall maintain throughout the term of the Agreement, as follows:

| Limits of Insurance | |
|---|---|
| General Aggregate | $1,000,000 |
| Products Completed Operations Aggregate | $1,000,000 |
| Personal Injury & Advertising Injury | $1,000,000 |
| Each Occurrence | $1,000,000 |
| Fire Damage | $100,000 |
| Medical Expense | $5,000 |
| **Insurance Company** | **Policy Number** |
| Liberty Mutual | MPRO020190050-1 |

13. **Signs**: All signs that may be installed by Lessor and Lessee, as the case may be, shall meet all requirements of law and shall be properly installed.

    Lessee shall obtain the Lessor's prior written consent which shall not be unreasonably withheld, delayed or issued under certain conditions.

    Lessee shall not install, place or permit the installation or placement of signs or graphics that would affect the nature of the Leased Property as a commercial building peculiar to the area. No rental signs or banners may be located within the Leased Property without the prior consent of Lessor.

14. **Default:**

    A. **Default by Lessee:** Lessee shall be in default under the terms of this Agreement if it fails to comply with any term or condition of the Agreement and if such default is not cured within 60 days from the date of written notice from Lessor. If the default cannot reasonably be cured within the foregoing period, but the Lessee has commenced to cure within such period, the Lessee shall be entitled to a cure within such period. If the default cannot reasonably be cured within the foregoing period, but the Lessee has commenced to cure within such period and is continuing the work to cure the default in a diligent manner, then the Lessee shall not be deemed to be in default.

       If the Lessee fails to cure its default, the Lessor, in addition to any other remedy provided at law and equity, may cure the same at the Lessee's expense. If the Lessor pays any sum attributable to the Lessee's default, such sum shall be reimbursed to the Lessor, and the Lessor may terminate this Agreement.

    B. **Default by Lessor**: Lessor shall be in default under the terms of this Agreement if it fails to comply with any term or condition of the Agreement and if such default is not cured within 60 days from the date of written notice from Lessee. If the default cannot reasonably be cured within the foregoing period, but the Lessor has commenced to cure within such period and is continuing to work to cure the default in a diligent manner, then the Lessor shall not be deemed to be in default.

       If the Lessor fails to cure its default, the Lessee, in addition to any other remedy provided at law and equity, may cure the same at the Lessor's expense. If the Lessee pays any sum attributable to the Lessor's default, such sum shall be reimbursed to the Lessee.

    C. **Notice**: Any notice of default under this Article shall specify the nature of the default and the applicable sections of the Agreement.

15. **Subordination**: This Agreement and all rights of the Lessee hereunder may be subordinated at any time to any mortgage which presently exists or which may hereafter exist on the Leased Property.

    This clause shall be operative automatically and without the need to execute of any other subordination document.

    It is understood and agreed that the possession of the Leased Property and the use to which the Lessee is putting it shall not be affected in any way by the Lessor

and/or its mortgagee so long as the Lessee is not in default under this Agreement.

16. **Return of Leased Property**: Upon termination of the Agreement, the Lessee shall deliver to the Lessor the Leased Property in good condition of use and conservation except for deterioration caused by the passage of time or by normal use or by damage caused by an Event (as set forth in the Damage and/or Destruction clause of this Agreement).

17. **Representations and Warranties of the Lessor**: Lessor represents and warrants to Lessee that it is the owner in fee simple of the Leased Property (land and building) and that it is fully entitled to enter into this Agreement.

    Subject to the terms and definitions set forth in this Agreement, the Lessee shall be entitled to possession of the Leased Property for its full and exclusive use. The Lessor shall have the obligation to protect the Lessee from any disturbance or interference by third parties acting under a right. As long as Lessee fully complies with the terms of this Agreement, Lessee shall be entitled to occupy the Leased Property peaceably and continuously and without interference from any party by Lessor and any personnel claiming through Lessor.

    The Lessor shall comply with all the terms and conditions contained in this Agreement.

18. **Representations and Warranties of the Lessee**: That the Lessee has the capacity and authority at law to execute this Agreement and to be bound by the terms and conditions of this Agreement. The Lessee has arranged for and obtained all required governmental permits prior to the execution of this Agreement.

    The Lessee shall comply with all the terms and conditions contained in this Agreement.

19. **Notices**: Any notice, request for consent or any other communication that a party wishes to give to the other party under this Agreement shall be:

    (a) Hand-delivered, sent by certified mail with return receipt requested, by e-mail, via facsimile or by private courier (DHL, Fedex, etc.) with return receipt requested and shall be addressed to the party and address set forth below. Any change of address shall be notified in writing to the other party.

    (b) Notices shall be deemed given 48 hours after being sent by registered or private mail; or immediately if delivered by hand, facsimile, or e-mail.

    (c) All notices, if given to the Lessor, shall be addressed to:

        Luis A. Rivera Siaca
        P.O. Box 190681
        San Juan, Puerto Rico 00919-0681
        Tel. (787) 620-1736 / Fax (787) 620-1739
        Email: pinsy@erspr.com
                milagros@erspr.com

    (c) All notices, if given to the Lessee, shall be addressed to:

        Department of Education
        Special Education Service Center

P. O. Box 190759
San Juan, Puerto Rico 00919-0759
Tel. 787-723-9090 ext. 6123;
Email: malaveic@de.pr.gov

20. **Document Retention and Audits**: Lessor shall retain copies of all documents relating to its obligations under this Agreement.

The documents described above shall be available for inspection and audit by officials of the Lessee, the Comptroller's Office, or any official entity of the Government of Puerto Rico or the Government of the United States. The Department may request in writing any information required for audit purposes and related to this Agreement and the performance of the Lessor's obligations under this Agreement.

The Lessor shall retain the documents generated in connection with this Agreement for a period of six (6) years after the expiration of this Agreement. In the event an audit has been initiated and a finding remains unresolved at the end of such period; the documents shall be retained until resolution of such finding.

If prior to six (6) years the Comptroller's Office conducts an audit or investigation of this Agreement and issues a report, the Lessor shall retain such reports and other documents for a minimum of five (5) additional years.

21. **Billing**: Contractor shall invoice upon completion of services rendered. The invoice shall be sent in original and three (3) duly certified copies, in accordance with the Accounting Act and following the rules established by the supervisory agencies of the Government of Puerto Rico.

Billing shall be made under the terms expressly agreed upon in this Agreement and shall be specific and itemized. It is the Contractor's responsibility to ensure the accuracy and reasonableness of each invoice submitted. The Department shall review each invoice submitted and shall consider such invoice as a certification by the Contractor that the services offered and expenses incurred are reasonable for the type of matter being contracted. The Department reserves the right to adjust or object to any invoice or work performed reported thereon due to noncompliance with these guidelines or based on contracting or for any other valid reason.

As required by EO-2001-73, the Contractor shall include in each invoice submitted to the Department the following certification:

*"Under penalty of absolute nullity, the Contractor certifies that no public servant of the Department of Education is a party to or has any interest in the proceeds or benefits resulting from the contract that is the subject of this invoice and if being a party to or having an interest in the proceeds or benefits resulting from the contract has been previously waived. The sole consideration for furnishing the goods or services that are the subject of the contract has been the payment agreed upon with the Secretary or his authorized representative. The amount of this invoice is fair and correct, and the services have been rendered and have not been paid."*

Prior to payment, invoices shall be duly certified by the Secretary of Education or his authorized representative. The Department will not make any payment in excess of the amount provided for in this Agreement, regardless of the reasons it may have for such excess.

The invoice shall be sent to the office of the Assistant Secretary for Auxiliary Services for evaluation. It shall be attached by any supporting documentation or evidence. The Contractor shall comply with the requirements of the Department of the Treasury, the Office of Management and Budget and the Financial Oversight Board, shall invoice for services using the Department's                                                                                      E-settlement

Online Billing System ("E-settlement"). The Department shall provide the Contractor with a Manual for the use of E-settlement and the Contractor shall coordinate with the Department's Finance Office for initial guidance in obtaining access to E-settlement.

22. **Account Number**: Payment of Rent earned under this Agreement shall be made from account number **E2632-111-02000000-3140-003-2021** or such other account numbers as may be identified in the future for such purposes. Disbursements for Services rendered and billed under this Agreement shall at all times be subject to the availability of appropriated and duly certified funds.

23. **ASUME Certificate**: The Lessor, as a legal entity, certifies that, as an employer, it is in compliance with its employees' child support withholding orders.

24. **State Insurance Fund**: Throughout the Term of this Agreement, the Lessor shall be responsible for maintaining a policy with the State Insurance Fund covering its employees and all personnel performing services under this Agreement.

25. **Certifications under EO-1991-24 and EO 1992-52 (Filing of Tax Returns and Unemployment and Other Debts)**: The Lessor certifies and warrants that at the time of executing this Agreement it has filed its income tax return during the five (5) years prior to this Agreement and does not owe taxes to the Government of Puerto Rico, or is under a payment plan, with whose terms and conditions it is in compliance. The Lessor certifies and warrants that at the time this Agreement is executed, it has paid the unemployment insurance, temporary disability and chauffeurs' social security taxes (whichever is applicable) or is under a payment plan with whose terms and conditions it is in compliance.

The Lessor certifies that it has no debts with the Government of Puerto Rico or its municipalities, including without limitation, debts for municipal taxes, property taxes, licenses, payroll taxes, interest, dividends or for any other origin or matter, or that it is under a payment plan, with whose terms and conditions it is complying.

It is expressly acknowledged that this is an essential condition of this Agreement, and if the foregoing certification is not correct in whole or in part, this shall be sufficient cause for the Department to terminate this Agreement and the Lessor shall be required to reimburse the Department for all monies received under this Agreement.

26. **Certification of No Criminal Conviction**: Pursuant to the provisions of Act 2 of January 4, 2018 creating the Anti-Corruption Code of the Government of Puerto Rico and Circular Letter Number 2009-01 of March 9, 2009 of the Department of Justice, the Lessor certifies and warrants that at the time of execution of this Agreement neither he/she, nor, in the case of corporations or other legal entities, the officers, principal employees, shareholders, members, or members of the Board of Directors of the corporation or entity, nor its affiliates or subsidiaries or parent entity has been convicted, has been found probable cause for arrest, or has pleaded guilty of any offense included in Section 6. 8 of Act Number 8 of 2017 (Act for the Administration and Transformation of Human Resources in the Government of Puerto Rico) or in the Anti-Corruption Code, that attempt against the treasury, public faith or function, against governmental exercise or involving public funds or property at the federal or state level or other foreign jurisdiction or with any other provision of the Act.

Lessor acknowledges its duty to report on a continuing basis, during the term of the Agreement, any facts relating to the conduct of any investigation into the commission of a crime

Case:17-03283-LTS   Doc#:23212-1   Filed:01/09/23   Entered:01/09/23 12:04:12   Desc:
Exhibit A   Page 23 of 27

Certified Translation MC-2023-003
Page 10 of 14

Luis A. Rivera Siaca
Page **10** of **13**

against the public treasury, faith or function; against governmental performance, involving public funds or property at the federal or state level. This obligation shall be of a continuing nature during all stages of the procurement and execution of the Agreement.

This Agreement shall be terminated by the Department in the event probable cause for arrest is found against the Lessor for the commission of any offense against the public treasury, faith or trust; against governmental performance; or involving federal or state public funds or property.

27. **ASUME Contribution and Certifications**: The Contractor has submitted or has authorized the Department to arrange for or, upon registration with the General Services Administration's Single Registry of Bidders, has submitted (and so evidenced) the applicable of the following certifications, which shall be made a part of this Agreement:

a-   Copy of the Merchant Registration Certificate (Model SC 2918).

b-   Certification of good standing with the filing of reports to the Department of State ("Good Standing").

c-   Certification of Filing of Sales and Use Tax Returns-IVU (Model SC 2942).

d-   Certification of Sales and Use Tax Debt (Form SC 2927). If there are debts for which the Contractor indicates that it is under a payment plan, it must submit a manual certification issued by the Treasury Department indicating that it is complying with its terms.

e-   Certification of existence or authorization to do business in Puerto Rico from the Department of State.

f-   Certification of Debt from the Department of the Treasury (Form SC 6096). If there are debts for which the Contractor indicates that it is under a payment plan, it must submit a manual certification from the Treasury Department indicating that it is in compliance with its terms.

g-   Certification of having filed income tax returns for the past five (5) years from the Department of the Treasury (Form SC 6088).

e-   [sic] Certification of Debt for all the concepts of the Municipal Collection Center (CRIM).

f-   Certification of having filed personal property tax returns for the past five (5) years from the Municipal Collection Center (CRIM). If the Contractor offers professional or consulting services and does not own movable property and is not listed filing a tax return with the CRIM, it must submit an affidavit in accordance with the terms of Treasury Circular Letter Number CC 1300-16-16 (or its substitute).

g-   Affidavit in those cases in which the taxpayer is not filing a personal property tax return at the Municipal Collection Center (CRIM) or does not own personal property.

h-   Certification of Registration as an Employer and of Debt for Social Security of the Department of Labor and Human Resources.

i-   Certification of Registration as Employer and of Debt for Unemployment Insurance and Disability Insurance from the Department of Labor and Human Resources.

j-   Certification of Debt of the State Insurance Fund.

k- **ASUME Certification**. If the Contractor is an individual, he/she must present certification that he/she is not obligated to pay child support or, if he/she is, that he/she is complying with the payments. In the case of a corporate entity, it must present certification that, as an employer, it is complying with its employees' child support withholding orders.

l- Certification of reasons why the taxpayer is not required by law to file the individual income tax return of the Department of the Treasury (Form SC 2781) or, the Certificate of Incorporation or Organization, which evidences the absence of legal personality during the period in which the tax return was not filed.

m- Manual Correction to the Certification of Filing of Income Tax Returns of the Department of the Treasury (Form SC 2888).

n- In the event that the Contractor is an entity organized outside of Puerto Rico and is not doing business in Puerto Rico and does not have local offices, it shall submit its articles of incorporation or organization, certificate of existence of the place where it was organized and a duly authenticated affidavit stating its employer's social security number (if any), that it has no tax liability with the government of Puerto Rico and that compliance with the terms of the Agreement does not result in it becoming an entity doing business in Puerto Rico. In addition, it must submit the ASUME certification.

28. **Conflict of Interest:** The Lessor warrants that, to the best of its knowledge and belief, no officer, employee, advisor or consultant of the Department, nor any member of his or her family unit, has a direct or indirect economic interest in this Agreement and that no officer, employee, advisor or consultant of the Executive Branch of the Government of Puerto Rico, nor any member of his or her family unit has an interest and/or participation in the economic benefits or income related to this Agreement.

Lessor certifies that no public servant of the Department requested, nor accepted, directly or indirectly for him or herself or for any other person, gifts, gratuities, favors, Services, donations, loans or any other thing of monetary value. He or she also certifies that no public servant of the Department solicited or accepted any property of monetary value, related to this transaction, from any person of the Lessor as payment for performing the duties and responsibilities of his or her employment. Nor did the Lessor solicit, directly or indirectly, for any public servant, for any member of his or her household, or for any other person, business or entity, any property of economic value, including any loans or Services in exchange for such public servant's performance being influenced in favor of the Lessor.

Lessor acknowledges and certifies that, in the performance of his obligations under this Agreement, he owes complete loyalty to the Department, including, but not limited to, not having adverse or conflicting interests with the Department. These conflicting interests include, but are not limited to, litigation or other claims against the Department. This obligation also includes a continuing duty to inform the Department of all circumstances relating to the Lessor's relationship with customers and third parties or of any interests that may influence the Department in the performance of this Agreement or during the term of this Agreement.

In contracts with partnerships or corporate entities, it shall be a violation of this prohibition for any of their shareholders, partners, officers, principals, employees, subsidiaries or parent companies to engage in the conduct described herein. The Lessor shall avoid even the appearance of the existence of conflicting interests.

29. **Anti-Corruption Code:** The Lessor agrees to comply with the provisions of the Puerto **Rico Anti-Corruption Code**, approved by Act Number 2 of January 4, 2018. Any violation of the provisions of this Act may be prosecuted civilly and administratively, as the case may be.

30. **Non-Discrimination:** The Lessor agrees not to discriminate in the rendering of these services for reasons of political, religious, race, social status, age, sex, nationality, condition, physical or mental disability or for being a victim or being perceived as a victim of domestic violence, sexual assault or stalking, for being military, ex-military, serving or having served in the Armed Forces of the United States or for holding veteran status, for sexual orientation, gender identity or for any other discriminatory cause.  He also agrees to ensure equal employment opportunity for persons with disabilities in accordance with applicable laws.

31. **No Litigation Against the Government of Puerto Rico:** The Lessor certifies that he has no litigation in process against any governmental entity or instrumentality at the time of the execution of this Agreement.

32. **Headings and Sub-Headings:** The Headings and Sub-Headings of the various clauses of the Agreement are included to facilitate the handling of the document and shall not affect the interpretation thereof.

33. **Modifications**: This Agreement contains the entire agreement that the parties have reached and may only be modified or amended in writing and shall be signed by the parties hereto.

34. **Non-Waiver:** The mere failure of either party to exercise or enforce any right or privilege under this Agreement or to require strict compliance with any provision of this Agreement shall not be construed as a waiver of its rights or privileges or of strict compliance with any provision of this Agreement on any future occasion.

35. **No Real Estate Brokers**: No real estate broker has been involved in the transaction culminating in the execution of this Agreement.

36. **Applicable Law and Venue**: This Agreement and all matters related to it shall be interpreted in accordance with the Laws of Puerto Rico. Any legal action brought in connection with this Agreement shall be filed solely and exclusively in the Court of First Instance, San Juan Part, to which the Lessor irrevocably submits.

37. **Severability**: It is stipulated that the clauses and conditions of this Agreement are independent and separate from each other, and that the nullity declared by a competent court of one or more clauses does not affect the validity of the remaining clauses, which shall continue in force.

38. **Entire Agreement**: This Agreement constitutes the entire agreement between the parties with respect to the services to be rendered hereunder. Any amendment to this Agreement shall be made by a writing signed by both parties during the term of the Agreement, in accordance with the needs of the Department and subject to the availability of funds for the execution of the amendment.

**IN WITNESS WHEREOF**, the parties hereto execute this Agreement in San Juan, Puerto Rico today May _21_, 2021.


[Signature]                                                 [Signature]
Eliezer Ramos Parés, Esq.                                  Luis A. Rivera Siaca
Department of Education of P.R.                             SS: 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
SSP: 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

Luis A. Rivera Siaca
Page **13** of **13**

**SUBMITTED BY**

|Signature|
Carlos M. Malavé Irizarry
Assistant Secretary
Auxiliary Services

**REVISED BY:**
|Signature|
Irving E. Otero Narváez, Esq.
DEPR

**No. 2023-003  TRANSLATOR'S CERTIFICATE OF ACCURACY**

I, Mayra Cardona Durán, of legal age, single, resident of Guaynabo, Puerto Rico, Certified Interpreter of the United States Courts (Certification No. 98-020) and certified by the National Association of Judiciary Interpreters and Translators (10671), holding a Master's Degree in Translation and admitted to the Puerto Rico Bar Association (Bar No. 12390, RUA No. 11038) hereby CERTIFY: that according to the best of my knowledge and abilities, the foregoing is a true and correct rendition into English of the original Spanish text, which I have translated and it is stamped and sealed as described therein.  This document is comprised of Fourteen (14) Pages, including this certification page, and does not contain changes or erasures.

In Guaynabo, Puerto Rico today, Saturday, January 7, 2023.

Lcda. Mayra Cardona
BA Lit/Fr, MA Trans, JD
United States Courts Certified Interpreter
NAJIT Certified Interpreter and Translator
3071 Alejandrino Ave. PMB 306 Guaynabo, Puerto Rico 00969-7035
Tel. (787) 530-1414
e-mail: mayra@cardona.com