# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## MOTION TO DISQUALIFY THE LAW FIRM O'NEILL & BORGES, LLC FOR UNRESOLVABLE CONFLICTS OF INTEREST INCURRED IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 ET SEQ.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

i

## Contents

INTRODUCTION ................................................................................................ 1-3

BACKGROUND ................................................................................................ 4-12

LEGAL STANDARD ......................................................................................... 12-17

DISCUSSION ...................................................................................................... 17-25

CERTIFICATE OF SERVICE ........................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

In Re 765 Assocs.,
14 B.R.449, 451 (Bankr. D. Hawaii 1981)..........................................................15

In Re BH&P Inc.,
949 F.2d 1300, 1317-18 (3d Cir. 1991)...............................................13, 14, 16, 21

In Re Biddle,
Case No. 12- 05171, 2012 WL 6093926, at *4 (Bankr. D.S.C. December
6, 2012)................................................................................................................23

In Re Black Hills Greyhound Racing Ass'n,
154 B.R. 285, 292 (Bankr. D.S.D. 1993) ...........................................................15

In Re Champagne Services, LLC,
560 B.R. 196, 201 (Bankr. E.D.Va. 2016) ..........................................................14

In Re Congoleum Corp.,
426 F.3d 675, 688 (3rd Cir. 2005)......................................................................17

In Re Eagle-Picher Indus., Inc.),
999 F.2d 969, 972 (6th Cir. 1993) .......................................................................16

In Re Enron, No. 02-5638, 2003
WL 223455 (Bankr. S.D.N.Y. Feb. 3, 2003  .....................................................5

In Re eToys, Inc.,
331 B.R. 176, 189 (Bankr. D. Del. 2005)........................................................13, 14

In Re Fibermark Inc.,
No. 04-10463, 2006 WL 723495 (Bankr. D. Vt. March 11, 2006)....................13, 21

In Re Glenn Elec. Sales Corp.,
89 B.R. 410, 413 (Bankr. D.N.J.), aff'd, 99 B.R. 596 (D.N.J. 1988....................15, 16

In Re Granite Partners, L.P.,
219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998.................................................12, 13, 21, 23, 24

In Re Indep. Eng. Co. Inc., 2
32 B.R. 529, 532 (B.A.P. 1st Cir. 1999)............................................................13, 21

In Re Jore Corp.,
298 B.R. 703, 726 (Bankr. D. Mont. 2003)........................................................13, 21

In Re Kings River Resorts, Inc.,
       342 B.R. 76, 85 (Bankr. E.D.Cal. 2006)........................................................22

In Re Laferriere,
       286 B.R. 520, 526 (Bankr. D. Vt. 2002).......................................................22

In Re Leslie Fay Cos. Inc.,
       175 B.R. 525 (Bankr. S.D.N.Y. 1994)....................................................13, 21

In Re Lewis Road, LLC,
       Case No. 09–37672, 2011 WL 6140747, at *9 (Bankr. E.D.Va. December 9,
       2011)...............................................................................................................23

In Re LSS Supply Inc.,
       247 B.R. 280, 282 (Bankr. D.Ariz. 2000) ....................................................14

In Re Marvel Entertainment Group, Inc.,
       140 F.3d 463 (3rdCir. 1998)....................................................................16, 17

In Re Midway Industry Contractors, Inc.,
       272 B.R. 651 (Bankr. N.D.Ill. 2001) ..............................................12, 23, 24

In Re Park-Helena Corp.,
       63 F.3d 877, 881 (9th Cir. 1995) ...................................................................22

In Re Philadelphia Athletic Club, Inc.,
       20 B.R. 328, 337 (E.D. Pa. 1982)............................................................14, 15

In Re Prudent Holding Corp.,
       153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993) .................................................15

In Re Sandpoint Cattle Company, LLC,
       556 B.R. 408, 421 (Bankr. D.Neb. 2016).....................................................22

In Re Saturley,
       131 B.R. 509, 517 (Bankr. D. Me. 1991) ...............................................13, 21

In re Star Broadcasting, Inc.,
       81 B.R. 835, 838 (Bankr. D.N.J. 1988) .........................................................16

In Re Universal Building Products,
       486 B.R. 650, 663 (Bankr. D. Del. 2010)................................................13, 21

In Re Wood,
       408 B.R. 841, 853 (Bankr. D. Kan. 2009).....................................................22

Michel v. Eagle-Picher Indus., Inc.
   999 F. 2d. 969 (6th Cir. 1993) ................................................................................ 16

United States Trustee v. Price Waterhouse,
   19 F.3d at 141 ........................................................................................................ 16

**STATUTES**

11 U.S.C. § 101(14) ...................................................................................................... 16

11 U.S.C. § 327(a) ........................................................................................................ 15

48 U.S.C. 2101 ET SEQ. ......................................................................................... 1, 2, 4

Section 101 of title 11, United States Code ............................................................. 5, 12

Section 101(14) ............................................................................................................. 15

Section 101(14)(C) ....................................................................................................... 15

Section 2(e) of PRRADA .............................................................................................. 12

Section 304 of PROMESA (48 U.S.C. 2164) .......................................................... 4, 12

Section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) ................................ 4, 12, 19

Section 327 of the Bankruptcy Code ............................................................................ 17

Section 327(a) ............................................................................................................... 16

Section 327(a), as well as § 327(c) .............................................................................. 16

Section 327(a) and consistent with § 327(c) ................................................................ 16

Sections 327(a) and 101(14)(E) .................................................................................... 16

**OTHER AUTHORITIES**

Bankruptcy Rule 2014 ................................................................................................... 14

Canon 21 of the Rules of Professional Ethics applicable to Puerto Rico attorneys. ............. 21

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure ............................ 4, 5, 14, 19

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>        as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>        Debtors.[2] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**MOTION TO DISQUALIFY THE LAW FIRM O'NEILL & BORGES, LLC
FOR UNRESOLVABLE CONFLICTS OF INTEREST INCURRED IN
VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN
<u>DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 ET SEQ.</u>**

**To the Honorable United States District Judge Laura Taylor Swain:**

Comes now Creditor, R&D Master Enterprises, Inc., by and through the undersigned

attorney, who respectfully requests and prays as follows:

INTRODUCTION

1. Creditor R&D Master Enterprises, Inc., is a corporation organized under the laws of the

---

[2] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

Commonwealth of Puerto Rico (the "Movant").

2. The Movant is a creditor of the Commonwealth of Puerto Rico with standing to file this motion in these Title III proceedings.

3. The Movant submits before this Honorable Court's consideration a motion to disqualify the law firm O'Neill & Borges LLC ("O&B"), who serves as advisors to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the sole representative of the Commonwealth of Puerto Rico, the Puerto Rico Electric Power Authority, and other covered instrumentalities in these Title III proceedings.

4. Carlos Lamoutte an attorney authorized to practice law in Puerto Rico filed before this Honorable Court's consideration a "Motion to Intervene and to Inform the Existence and Continuance of an Unresolvable Conflict of Interest in Violation of the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 USC 2101 et seq. and Petition for: (A) the Permanent Disqualification of O'Neil & Borges, LLC as Legal Counsel to the Financial Oversight and Management Board for Puerto Rico, and (B) the Disallowment and Disgorgement of Legal Fees (Docket 20873 in Case No. 17-3283).

5. The Oversight Board filed a motion in response as so did OB (Dockets 21094 and 21124 respectively).

6. One of the main arguments filed by OB in their responses was that of lack of standing to prosecute the motion.

7. Considering the matter to be or crucial importance and being a possibility that the central issues raised (conflicts of interest) not be addressed due to the possibility of lack of standing, the appearing party filed a motion for joinder and incorporated all arguments raised by Mr. Lamoutte.  (Docket 22835)

2

8. This Honorable Court denied without prejudice the appearing party's request for joinder to not complicate the matters pending before it as the original motions has already been duly briefed.  (Docket 22838)

9. On November 23, 2022 this Honorable Court entered Order denying Mr. Lamoutte's motion to intervene and disqualify OB.  The basis for the Court's reasoning are that Mr. Lamoutte has no standing to prosecute any conflict of interest.

10. Since the underlying matter of a conflict of interest remains unresolved, the appearing party submits before this Honorable Court a new motion to disqualify OB, as so allowed in Docket 22838.

11. This motion serves to report to the Title III Court that O&B, local legal counsel to the Oversight Board since the inception of this Title III Case, intentionally incurred in unresolvable conflicts of interest to financially benefit themselves and several private clients of that firm, to the corresponding economic detriment of the bankruptcy estate of the debtors in this Title III Case, the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority, acts which merit a ruling providing for denial of compensation, full disgorgement of legal fees, and the permanent disqualification of O&B as advisors to the Oversight Board.

12. The Title III Court and the U.S. Trustee must intervene in this public matter that significantly impacts the bankruptcy estate of the Commonwealth of Puerto Rico and of the Puerto Rico Electric Power Authority in these jointly administered PROMESA Title III proceedings (hereinafter, the "Title III Case") and collaterally injures innocent third parties.

BACKGROUND

13. The Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq. (hereinafter, "PRRADA"), is a special federal statute that restricts compensation to professionals retained by the Oversight Board under the Puerto Rico Oversight, Management, and Economic Stability Act, Public Law 114-18, 48 U.S.C. § 2101 et seq. (hereinafter, "PROMESA") who incur in conflicts of interest and/or otherwise fail to properly disclose to the Title III Court, to the U.S. Trustee, and to other parties in interest, their association with Material Interested Parties (as such term is defined in Section 2(c) of PRRADA).

14. PRRADA sets forth that: (a) no attorney or other professional person may be compensated under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) unless prior to making a request for compensation, the professional person has filed with the court a verified statement conforming to the disclosure requirements of Rule 2014(a) of the Federal Rules of Bankruptcy Procedure setting forth the connection of such professional person with any entity or person on the list of Material Interested Parties; and (b) in a case commenced under section 304 of PROMESA (48 U.S.C. 2164), in connection with the review and approval of professional compensation under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) filed after the date of enactment of PRRADA, the court may deny allowance of compensation or reimbursement of expenses if: (i) the professional person has failed to file the verified disclosure statements or has filed inadequate disclosure statements under that subsection; or (ii) during the professional person's employment in connection with the case, the professional person: (A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on the list of Material

Interested Parties; or (B) represents or holds an adverse interest in connection with the case.

15. The purpose of PRRADA and Rule 2014(a) is to provide the Title III Court and the U.S. Trustee with sufficient information to determine whether any professional person's continued employment in the Title III Case is in the best interest of the estate.[3]

16. In the Title III Case, the Oversight Board serves as the sole representative of the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority.

17. Since the commencement of the Title III Case, the Oversight Board employed O&B to serve as the Oversight Board's local legal counsel, an appointment which continues to date, as evidenced by the Title III Case's voluminous docket and recent filings.  To date, O&B has collected millions of dollars in legal fees paid by the debtors for services rendered to the Oversight Board.

18. On March 30, 2022, the Title III Court issued an order in the Title III Case (Doc. 20,476) approving the amended list of Material Interested Parties submitted by the Oversight Board pursuant to PRRADA on March 29, 2022 (Doc. 20,458).

19. The amended list of Material Interested Parties approved by the Title III Court identifies O&B as a professional service provider retained by the Oversight Board in the Title III Case.

20. O&B and its attorneys jointly owe a fiduciary duty to the Oversight Board and to the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority that they conjointly failed to discharge in the Title III Case, by preferring to enable and to conceal from the Title III Court and the U.S. Trustee, respectively, multiple connections to several private clients of O&B that maintain large-scale contracts with the Commonwealth of

---

[3] See In Re Enron, No. 02-5638, 2003 WL 223455 (Bankr. S.D.N.Y. Feb. 3, 2003).

Puerto Rico and its instrumentalities, including the Puerto Rico Electric Power Authority.

21. Public records and the verified disclosures filed to date by O&B in simulated compliance with PRRADA, reveal that O&B has served multiple private sector clients holding a stake in this Title III Case during the same period in which O&B has also simultaneously served the Oversight Board, to wit (collectively, the "Conflict Parties"): (a) PR Recovery and Development JV, LLC, PR Recovery and Development REO, LLC, Parliament Capital Management, LLC, Parliament High Yield Fund, LLC, and Island Portfolio Services, LLC. (b) EcoEléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A. d/b/a Naturgy, (c) New Fortress Energy LLC d/b/a NFEnergía LLC, (d) Puma Energy Caribe, LLC, and (e) AES Ilumina, LLC and AES Puerto Rico, L.P.,

22. It is the case of the "*goat watching over the lettuce*."  The private sector clients that O&B represents hold interests which by their nature are adverse to the Oversight Board and to the Commonwealth of Puerto Rico and its instrumentalities, including the Puerto Rico Electric Power Authority, yet O&B has offered no tangible explanations under PRRADA so far in this Title III Case.

23. Contrary to the generic verified statements set forth in O&B's PRRADA disclosures motions, O&B is in reality not a disinterested professional person under PROMESA and PRRADA because the private sector clients that O&B represents in fact hold interests that are materially adverse to the Oversight Board and to the debtors that the Oversight Board represents in this Title III case.

24. In its disclosure filings, O&B loosely and self-servingly states to be a disinterested person, but O&B's past and present actions demonstrate that it is truly not disinterested. Disqualification and disgorgement of legal fees is merited.

6

(a) PR Recovery and Development JV, LLC, PR Recovery and Development REO, LLC, Parliament Capital Management, LLC, Parliament High Yield Fund, LLC, and Island Portfolio Services, LLC.

25. O&B concurrently represented the Oversight Board during the same time period that O&B also represented the following private clients that contracted with the Economic Development Bank for Puerto Rico (by its Spanish acronym, the "BDE"): (a) PR Recovery and Development JV, LLC ("PR Recovery"); (b) Parliament Capital Management, LLC ("PCM"); (c) Parliament High Yield Fund, LLC ("PHYF"); and (d) Island Portfolio Services, LLC ("IPS").

26. In this Title III Case, O&B has also knowingly and in bad faith concealed its timekeepers' connections to that certain $384,269,047 Loan Sale Agreement entered into as of September 7, 2018 by and between the Economic Development Bank of Puerto Rico (EBD), as seller, and PR Recovery, as purchaser, with the assistance of PCM, PHYF and IPS.  The aforesaid Loan Sale Agreement caused the BDE's insolvency and its ongoing mismanagement by the Oversight Board is causing economic injury to the BDE, to the Relator, and to hundreds of small business owners throughout Puerto Rico. The sale loan sale was for amount of thirty-three million eight hundred forty three thousand, six hundred twenty nine dollars with fifty six cents (33,843,629.56), a 91% discount[4].

27. The Loan Sale Agreement is a post-petition contract under PROMESA that was never reviewed nor approved by the Oversight Board, as required by the Oversight Board's own contract review policy, and which clearly identifies O&B as legal counsel to PR Recovery in that transaction.  See pages 29-30 of the Loan Sale Agreement, a true and exact copy of

---

[4] The Loan Sale Agreement was for $41,500,000.00 but the amount received by EBD was $33,843,629.56).

which is attached hereto as <u>Exhibit A</u>.

28. This Title III Court need not find any intent of wrongdoing on O&B's part.

29. To issue a ruling in this matter, this Title III Court only needs to validate that O&B in fact incurred in the dual, concurrent representation of the Oversight Board and of any the Conflict Parties named above, specifically in relation to the $384,269,047 Loan Sale Agreement that injured the BDE, the Relator, and hundreds of other small Puerto Rican business owners that contracted with the BDE at inception.

30. It is important to note that the BDE is actively challenging the legality of the aforesaid Loan Sale Agreement under allegations of fraud and, without any type of assistance or intervention by the Oversight Board, much less O&B.  The matter remains *sub judice* before the Puerto Rico Court of First Instance, San Juan Part, in Civil Case Number SJ2019CV11697, captioned *Banco de Desarrollo Económico Para Puerto Rico v. Garnet Capital Advisors LLC, PR Recovery and Development REO, LLC, PR Recovery and Development JV, LLC, and Parliament Capital Management LLC.*[5]

31. Moreover, the Puerto Rico Senate has issued a Resolution[6] ordering various government agencies and the Oversight Board to review the loan sale agreement.

32. The case record reflects that O&B has not been honest and sincere in its disclosure obligations to the Title III Court, to the U.S. Trustee, and to the other parties-in-interest in this case, presumably because O&B in fact sided to protect the private interests of O&B's private clients rather than to protect the public interests of the Oversight Board and of the debtors in these insolvency proceedings, respectively.

---

[5] R&D Master is a defendant in a collection of monies complaint initiated by PR Recovery and Development JV, LLC, civil number BY2020CV01413.
[6] Senate Resolution 593, issued the 4th of May, 2022.

33. O&B's manipulative actions as to the Loan Sale Agreement have caused significant injury to the BDE, to the Movant, and to hundreds of other small Puerto Rican business owners that contracted with the BDE at inception.

(b) EcoEléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A. d/b/a Naturgy,

34. EcoEléctrica, L.P. maintains an Amended and Restated Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority worth at least ONE BILLION EIGHT HUNDRED THOUSAND DOLLARS ($1,800,000,000.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2021-P00098. Said contract was reviewed and approved by the Oversight Board on December 26, 2019. See Exhibit B attached hereto.

35. Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy), who is EcoEléctrica, L.P.'s holding company, maintains a Natural Gas Sale and Purchase Agreement with the Puerto Rico Electric Power Authority worth at least NINE BILLION ONE MILLION DOLLARS ($9,001,000,000.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2012-P00107. Said contract was reviewed and approved by the Oversight Board on December 26, 2019. See Exhibit B attached hereto.

36. Public records and the verified disclosures filed to date by O&B in simulated compliance with PRRADA reveal that EcoEléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy) are clients of O&B. See Docket Entry No. 21,485, at page 21 of 37.

(c) New Fortress Energy LLC d/b/a NFEnergía LLC,

37. NFEnergía, LLC (d/b/a New Fortress Energy) maintains a Fuel Sale and Purchase Agreement with the Puerto Rico Electric Power Authority worth at least ONE BILLION FIVE HUNDRED MILLION DOLLARS ($1,500,000,000.00) that is registered at the

Office of the Comptroller of Puerto Rico under registry number 2019-P00079.  Said contract was reviewed and approved by the Oversight Board on March 24, 2019.  See <u>Exhibit C</u> attached hereto.

38. NFEnergía, LLC (d/b/a New Fortress Energy) also maintains a terminal facilities contract with the Puerto Rico Ports Authority worth at least EIGHT MILLION TWO HUNDRED TWENTY-SIX THOUSAND SIX HUNDRED SEVENTY-EIGHT DOLLARS ($8,226,678.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2018-P00089.

39. Public records and the verified disclosures filed to date by O&B in simulated compliance with PRRADA reveal that NFEnergía, LLC (d/b/a New Fortress Energy) is a client of O&B.

40. O&B also served as counsel to NFEnergía, LLC (d/b/a New Fortress Energy) in Civil Case No. SJ2020CV06070 before the Puerto Rico Court of First Instance, San Juan Part, styled *Sierra Club and El Puente de Williamsburgh, Inc. v. NFEnergía, LLC and others*, relating to certain terminal facilities in San Juan harbor and non-compliance with FERC regulations.

(d) Puma Energy Caribe, LLC

41. Puma Energy Caribe, L.P. maintains a Fuel Oil Purchase Contract with the Puerto Rico Electric Power Authority worth at least ONE BILLION FIVE HUNDRED SIXTY-FIVE MILLION THREE HUNDRED THIRTY-ONE THOUSAND FOUR HUNDRED FORTY-SEVEN DOLLARS ($1,565,331,447.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2022-P00020.  Said contract was reviewed and approved by the Oversight Board on June 7, 2022.  See <u>Exhibit D</u> attached

hereto.

42. Public records and the verified disclosures filed to date by O&B in simulated compliance with PRRADA reveal that Puma Energy Caribe, L.P. is a client of O&B.  See Docket Entry No. 21,485, at page 27 of 37.

(e) AES Ilumina, LLC and AES Puerto Rico, L.P.,

43. AES Ilumina, LLC maintains a Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority worth at least NINETY MILLION DOLLARS ($90,000,000.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2010-000050.  Said contract was reviewed and approved by the Oversight Board on September 30, 2020.  See Exhibit E attached hereto.

44. AES Puerto Rico, L.P. maintains a Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority that is registered at the Office of the Comptroller of Puerto Rico under registry number 1995-AI0077.  AES Puerto Rico, L.P. also maintains an Additional Energy Sales Contract with the Puerto Rico Electric Power Authority worth at least SIXTY-EIGHT MILLION DOLLARS ($68,000,000.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2012-P00036.

45. Public records and the verified disclosures filed to date by O&B in simulated compliance with PRRADA reveal that AES Puerto Rico, L.P. and AES Ilumina, LLC are clients of O&B.  See Docket Entry No. 21,485, at page 19 of 37. As of the date hereof, O&B appears publicly listed in the Puerto Rico Department of Justice's Registry of Lobbyists as a registered lobbyist acting for AES Puerto Rico, L.P., NFEnergía, LLC (d/b/a New Fortress Energy), and Puma Energy Caribe, L.P.  See Exhibit F attached hereto.

46. O&B also served as counsel to NFEnergía, LLC (d/b/a New Fortress Energy) in Civil Case No. SJ2020CV06070 before the Puerto Rico Court of First Instance, San Juan Part, styled *Sierra Club and El Puente de Williamsburgh, Inc. v. NFEnergía, LLC and others*, relating to certain terminal facilities in San Juan harbor and non-compliance with FERC regulations.

47. O&B has so far failed to "explain away" its attorney-client connections to several private sector clients who are major contractors of the Government of Puerto Rico, as required under PRRADA and supplemental bankruptcy case law. O&B and O&B "*cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable conflict must be disclosed if only to be explained away.*" See *In re Midway Industry Contractors, Inc.*, 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing *In re Granite Partners, L.P.*, 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

## LEGAL STANDARD

48. Section 2(e) of PRRADA expressly sets forth that "*[i]n a case commenced under section 304 of PROMESA (48 U.S.C. 2164), in connection with the review and approval of professional compensation under section 316 or 317 of PROMESA (48 U.S.C. 2176, 2177) filed after the date of enactment of this Act, **the court may deny allowance of compensation or reimbursement of expenses if**-- (1) the professional person has failed to file the verified disclosure statements required under subsection (b)(1) or has filed inadequate disclosure statements under that subsection; or (2) **during the professional person's employment in connection with the case, the professional person**-- (A) is not a disinterested person (as defined in section 101 of title 11, United States Code) relative to any entity or person on*

*the List of Material Interested Parties; or (B)* **represents or holds an adverse interest in connection with the case.**"  (Emphasis added.)

49. The duty of disclosure by professionals that serve the debtor is not merely critical, it is "*sacrosanct.*"[7]

50. The conflicts' disclosure required of professionals that represent the debtor "*goes to the heart of the integrity of the bankruptcy system.*"[8]

51. The Title III Court and the U.S. Trustee must require broad and complete disclosure of all connections of professionals with debtors, creditors, and any other party-in-interest.[9]

52. The Title III Court and the U.S. Trustee cannot allow professionals to pick and choose the connections to disclose and those to ignore as unimportant or trivial.[10]

53. The obligation to disclose connections is an independent obligation of the professional person serving the debtor, and any failure of a professional person to disclose a connection can warrant sanctions, including disqualification and disgorgement of legal fees, even absent a conflict of interest.[11]  The court need not find intent.[12]

54. The Commonwealth of Puerto Rico's Title III Case is no different from any other bankruptcy case as it relates to conflicts of interest.

---

[7] See In Re eToys, Inc., 331 B.R. 176, 189 (Bankr. D. Del. 2005).
[8] See In Re Universal Building Products, 486 B.R. 650, 663 (Bankr. D. Del. 2010)
[9] See In Re Leslie Fay Cos. Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994).
[10] See In Re Jore Corp., 298 B.R. 703, 726 (Bankr. D. Mont. 2003).  See also In Re Fibermark Inc., No. 04-10463, 2006 WL 723495 (Bankr. D. Vt. March 11, 2006), In Re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991), In Re BH&P Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991), and In Re Granite Partners LP, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998).
[11] See In Re Universal Building Products, 486 B.R. 663.
[12] See In Re Indep. Eng. Co. Inc., 232 B.R. 529, 532 (B.A.P. 1st Cir. 1999).

55. As the "*watchdog*" of the U.S. bankruptcy system[13], the U.S. Trustee is obligated to raise

conflict and disclosure issues in the Title III Case, so that the Title III Court may adjudicate

professional employment applications under PRRADA.

56. The duty to disclose under Bankruptcy Rule 2014 is considered sacrosanct because the

complete and candid disclosure by an attorney seeking employment is indispensable to the

court's discharge of its duty to assure the attorney's eligibility for employment under section

327(a) and to make an informed decision on whether the engagement is in the best interest

of the estate.  *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D.Del. 2005).

57. Accordingly, *"[i]t is not ... the obligation of the bankruptcy court to search the record for

possible conflicts of interest. That obligation belongs to the party who seeks employment

by the estate."  In re BH & P, Inc.*, 949 F.2d 1300, 1317 (3d Cir. 1991).

58. An applicant's failure to provide clear and candid disclosures inhibits the ability to conduct

a meaningful evaluation of disqualifying connections. See *In re LSS Supply Inc.*, 247 B.R.

280, 282 (Bankr. D.Ariz. 2000) ("*The burden is on the person to be employed to come

forward and make full, candid, and complete disclosure.*"); see also *In re Champagne

Services, LLC*, 560 B.R. 196, 201 (Bankr. E.D.Va. 2016) ("*It is not the United States

Trustee's burden to show that [the Applicant] is not disinterested.*").

59. Professionals for a bankruptcy estate must be committed to protecting the estate'sinterests

and be free of the "*interests of any other person*" so that their "*basic judgment and

responsibility to the estate*" is not affected.  See *In re Philadelphia Athletic Club, Inc.*, 20

---

[13] Congress recently encouraged the U.S. Trustee Program "*to continue its efforts to ensure a fair and transparent
bankruptcy process for stakeholders and for the public*" and required the U.S. Trustee Program to report its efforts in
FY 2020 and FY 2021 to enforce professionals' compliance with the disclosure requirements of Bankruptcy Rule
2014(a).  See Explanatory Statement for Commerce, Justice, Science and Related Agencies Appropriations Act of
2021, accompanying the Consolidated Appropriations Act of 2021 (Publ. L. No. 116-260).

B.R. 328, 337 (E.D. Pa. 1982).

60. A professional "*should not place himself in a position where he may be required to choose between conflicting interests or duties.*" See *In re 765 Assocs.*, 14 B.R.449, 451 (Bankr. D. Hawaii 1981).

61. Under the plain language of 11 U.S.C. § 327(a), any professional employed by a debtor-in-possession must be "*disinterested*" and neither hold nor represent an interest adverse to the estate.  One court has described Section 327(a) as "*a prophylactic provision designed to insure that the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded.*" *In re Prudent Holding Corp.*, 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993).

62. Section 101(14), in turn, defines "*disinterested person*" as a person who does not have an "*interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.*"

63. Section 101(14)(C), referred to as the "*catch-all clause*", has been characterized as "*broad enough to include anyone who in the slightest degree might have some interest or relationship that would distract from the independent and impartial attitude which is required by the [Bankruptcy] Code.*" See *In re Glenn Elec. Sales Corp.*, 89 B.R. 410, 413 (Bankr. D.N.J.), aff'd, 99 B.R. 596 (D.N.J. 1988); see also *In re Black Hills Greyhound Racing Ass'n*, 154 B.R. 285, 292 (Bankr. D.S.D. 1993).

64. Although not defined in the Bankruptcy Code, "*adverse interest*" has been interpreted to mean: (a) to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would create either an actual or potential dispute in which the

estate is a rival claimant; or (b) to possess a predisposition under circumstances that render such a bias against the estate. *In re Glenn Elec. Sales Corp.*, 89 B.R. 410, 413 (Bankr. D.N.J.), aff'd, 99 B.R. 596 (D.N.J. 1988) (quoting *In re Star Broadcasting, Inc.*, 81 B.R. 835, 838 (Bankr. D.N.J. 1988)). In applying this definition, the court in *In re Glenn Elec. Sales Corp.* relied upon a trilogy of cases published from the District of Hawaii dealing with conflict of interests between debtors and counsel in bankruptcy proceedings.

65. The Third Circuit in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463 (3rdCir. 1998), determined that the District Court applied the wrong legal standard in disqualifying trustee's counsel under Sections 327(a) and 101(14)(E). The Third Circuit held that Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an actual conflict of interest; (2) the district court may within its discretion — pursuant to § 327(a) and consistent with § 327(c) — disqualify an attorney who has a potential conflict of interest; and (3) the district court may not disqualify an attorney on the appearance of conflict alone. Id. at 476. Any professional person that does not meet both the "*no adverse interest*" and "*disinterested person*" tests is disqualified from employment under Section 327(a). See *In re BH&P Inc.*, 949 F.2d 1300, 1314 (3d Cir. 1991) (Section 327(a) "*creates a two-part requirement for retention of counsel*").

66. Thus, a professional that holds or represents an adverse interest is per se disqualified, and a professional that does not hold or represent an adverse interest is nevertheless disqualified unless it falls within the definition of "*disinterested person*" set forth in 11 U.S.C. § 101(14). See, e.g., *United States Trustee v. Price Waterhouse*, 19 F.3d at 141 (disqualified because not disinterested); *Michel v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 999 F.2d 969, 972 (6th Cir. 1993) (can lack disinterestedness without having adverse

16

interest).

67. Potential conflicts of interest are disfavored, and courts should "*generally disapprove employment of a professional with a potential conflict, with certain possible exceptions*" which include when the potential for a conflict to become actual is remote, and if the reasons for employing the professional are particularly compelling. *In re Marvel Entertainment Group, Inc.*, 140 F.3d at 476.

68. "*In addition to the standards established by professional ethics, attorneys retained in bankruptcy proceedings are also required to meet the restrictions imposed by section 327 of the Bankruptcy Code.*"  See, *In re Congoleum Corp.*, 426 F.3d 675, 688 (3rd Cir. 2005).

DISCUSSION

69. Private contractors who are awarded large-scale contracts by the Government of Puerto Rico and its instrumentalities do in fact hold adverse interests in relation to the debtors here.  Thus, O&B is legally precluded from representing those private clients that contract with Puerto Rico government agencies, much less assist them in procuring or maintaining those same multimillion-dollar government contracts that are subject to the review and approval of the Oversight Board that O&B also simultaneously represents.

70. O&B's representation of private sector clients that contract with the Government of Puerto Rico and its instrumentalities during the Oversight Board's existence places the Government of Puerto Rico, its instrumentalities, and competing bidders at an obvious disadvantage.

71. The U.S. Trustee Program should sternly object to any request for compensation filed by O&B in this Title III Case and demand full disgorgement of legal fees.  The U.S. Department of Justice should not risk sending the incorrect message to insolvency

stakeholders and to the general public that the best way for a private contractor to do government procurement in Puerto Rico during the pendency of these insolvency proceedings is by secretly hiring the same adviser that the Oversight Board employs.

72. In resolving pending motions, the Title III Court should not pay much credibility to what the Oversight Board and O&B state (or omit to state) in their respective writings, but rather to what the Oversight Board and O&B have actually done (or failed to do) in relation to the process of awarding or maintaining large-scale Puerto Rico government contracts to private clients of O&B during the pendency of these Title III proceedings.

73. A thin line divides ethical transgressions from racketeering, collusion, and abuse of the bankruptcy process.  Pay-to-play schemes cannot be tolerated by the Title III Court in the largest municipal bankruptcy in U.S. history.

74. Advisers to the Oversight Board cannot simultaneously serve without bias the Oversight Board, which is tasked to rule on the appropriateness of large-scale contracts with the Commonwealth of Puerto Rico and to serve as the sole representative of the Commonwealth of Puerto Rico and its instrumentalities in this Title III Case, including the Puerto Rico Electric Power Authority, and those private sector clients who are eventually awarded those same government contracts under the supervision of the Oversight Board.

75. Resolving conflicts of interest controversies in favor of unscrupulous advisers would not be consistent with PROMESA, PRRADA, and supplemental bankruptcy case law, and would also create the terrible precedent that the most advantageous way for a private contractor to land or maintain a large-scale contract with an instrumentality of the Government of Puerto Rico during the pendency of the largest municipal bankruptcy in U.S. history is by hiring – *and paying monies to* – the same advisers that the Oversight

Board uses.

76. An unresolvable and undisclosed conflict of interest involving O&B exists and is

continuing, because O&B simultaneously represented: (a) the Oversight Board, who is the

sole representative of the Commonwealth of Puerto Rico (who is the debtor in the Title III

Case) since the inception of the Title III Case; and (b) those private clients identified as the

Conflict Parties in paragraph 21 above.

77. Denial of compensation, disgorgement of legal fees, and the permanent disqualification of

O&B is merited in this case.

78. The Title III Case docket presently reflects that O&B has failed to disclose to the U.S.

Trustee, to the Title III Court, and to the other parties having an interest in the Title III

Case: (a) all of O&B timekeepers' past and present association with: (i) the Conflict Parties,

(ii) their principal members, and (iii) any natural person holding a direct or ultimate

beneficial interest in each of the Conflict Parties; and (b) of the pervasive conflicts of

interest that result from O&B's dual, concurrent representation of the Oversight Board and

the Conflict Parties.

79. In accordance with PRRADA, O&B may not be compensated under section 316 or 317 of

PROMESA (48 U.S.C. 2176, 2177) unless prior to making a request for compensation

O&B files with the Title III Court a verified statement conforming to the disclosure

requirements of Rule 2014(a) of the Federal Rules of Bankruptcy Procedure setting forth

the connection of O&B with the Conflict Parties.  O&B has not done that in this Title III

Case.

80. In the Commonwealth of Puerto Rico's Title III Case, the Title III Court must deny O&B

allowance of compensation and reimbursement of expenses if O&B's timekeepers fail to

file the verified disclosure statements or file inadequate disclosure statements or if during

O&B's employment in connection with the Title III Case the Title III Court determines

that any of O&B's timekeepers is not a disinterested person (as defined in section 101 of

title 11, United States Code) relative to any entity or person on the list of Material Interested

Parties or represents or holds an interest adverse to the Commonwealth of Puerto Rico,

such as the Conflict Parties that O&B represented during the pendency of the Title III Case

and that O&B continues to represent as of the date of this motion.

81. PRRADA entirely applies to O&B's secretive and preferential treatment of the Conflict

Parties, its private clients.

82. The prompt intervention of the Title III Court and the U.S. Trustee is merited in this public

matter that significantly impacts the bankruptcy estate of the Commonwealth of Puerto

Rico and the Puerto Rico Electric Power Authority in the Title III Case in amounts that

exceed $5 billion.

83. Professionals employed by the Oversight Board cannot be allowed to take advantage of

their privileged association with the Oversight Board in order to financially benefit private

clients, injure the Commonwealth of Puerto Rico, and deprive the creditors of the

Commonwealth of Puerto Rico and of the Puerto Rico Electric Power Authority of

attainable remedies in the Title III Case.

84. In accordance with PRRADA, professionals representing the Oversight Board, such as

O&B, are obligated to adequately disclose their connections to all parties in the Title III

Case and to satisfy the other conflict of interest standards supplementally imposed by the

U.S. Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

85. The Title III Court and the U.S. Trustee must require broad and complete disclosure of all

connections of professionals with debtors, creditors, and any other party-in-interest.[14]

86. The Title III Court and the U.S. Trustee cannot allow professionals like O&B to pick and choose the connections to disclose and those to ignore as unimportant or trivial.[15]

87. O&B must be compelled to specifically disclose its association with each and every one of the Conflict Parties during the same time periods in which O&B concurrently represented the Oversight Board in the Title III Case.  O&B has not done that.

88. The obligation to disclose connections is an independent obligation of the professional person serving the debtor, and any failure of a professional person to disclose a connection can warrant sanctions, including disqualification and disgorgement of legal fees, even absent a conflict of interest.[16]  The court need not find intent.[17]

89. The Commonwealth of Puerto Rico's Title III Case is no different from any other bankruptcy case as it relates to conflicts of interest.

90. O&B's concurrent representation of the Oversight Board and of the Conflict Parties has created conflicts which are materially adverse [in amounts exceeding $5 billion] and in violation of PROMESA, PRRADA, the U.S. Bankruptcy Code, and Canon 21 of the Rules of Professional Ethics applicable to Puerto Rico attorneys.

91. O&B's failure to provide clear and candid disclosures as to its connections with the Conflict Parties warrants O&B's disqualification as advisors to the Oversight Board, as well as the disallowment and disgorgement of all fees.

92. PRRADA and the Federal Rules of Bankruptcy Procedure require that an application for

---

[14] See In Re Leslie Fay Cos. Inc., 175 B.R. 525 (Bankr. S.D.N.Y. 1994).
[15] See In Re Jore Corp., 298 B.R. 703, 726 (Bankr. D. Mont. 2003).  See also In Re Fibermark Inc., No. 04-10463, 2006 WL 723495 (Bankr. D. Vt. March 11, 2006), In Re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991), In Re BH&P Inc., 949 F.2d 1300, 1317-18 (3d Cir. 1991), and In Re Granite Partners LP, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998).
[16] See In Re Universal Building Products, 486 B.R. 663.
[17] See In Re Indep. Eng. Co. Inc., 232 B.R. 529, 532 (B.A.P. 1st Cir. 1999).

employment must be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest. Fed. R.Bankr. P. 2014(a).

93. O&B is and remains required to provide clear and candid disclosures regarding all connections to the debtor, creditors, and parties in interest, such as the Conflict Parties. See *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995); *In re Wood*, 408 B.R. 841, 853 (Bankr. D. Kan. 2009); *In re Laferriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002).

94. O&B's duty to disclose under Rule 2014(a) is a continuous one. *In re Sandpoint Cattle Company*, LLC, 556 B.R. 408, 421 (Bankr. D.Neb. 2016).

95. Courts, creditors, and the U.S. Trustee rely upon a professional's voluntary disclosures to evaluate whether their retention is appropriate or not.

96. Here, O&B has so far failed to specifically disclose that it concurrently represented the Oversight Board and the Conflict Parties and the extent of its connections.

97. O&B's incomplete disclosures fall short of its mandatory obligation to provide "*full, candid, and complete disclosures*" to the Title III Court. *In re Kings River Resorts, Inc.*, 342 B.R. 76, 85 (Bankr. E.D.Cal. 2006).

98. O&B cannot unilaterally decide what disclosures it desires to make in the Title III Case or when to make them.

99. O&B's manipulative actions as to the Conflict Parties inappropriately shift O&B's statutory burden to the Title III Court, to the U.S. Trustee, and to other parties in interest in the Title III Case, to pry the information necessary to evaluate the ongoing conflicts of interest.

100. Simply put, O&B "*cannot usurp the court's function by choosing, ipse dixit, which connections impact disinterestedness and which do not. The existence of an arguable*

*conflict must be disclosed if only to be explained away.*" *In re Midway Industry Contractors, Inc.*, 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing *In re Granite Partners, L.P.*, 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

101.     O&B's lack of full disclosure in relation to the Conflict Parties is a sufficient basis, by itself, to warrant denial of its employment in the Title III Case. See *In re Lewis Road, LLC*, Case No. 09–37672, 2011 WL 6140747, at *9 (Bankr. E.D.Va. December 9, 2011); see also *In re Biddle*, Case No. 12- 05171, 2012 WL 6093926, at *4 (Bankr. D.S.C. December 6, 2012).

102.     Here, as set forth above, O&B concurrently represented the Oversight Board and the Conflict Parties that hold multimillion dollar contracts with the Puerto Rico Electric Power Authority and the Commonwealth of Puerto Rico and its instrumentalities, including post-petition contract awards.

103.     Multiple representations that may be allowed in commercial settings, especially with the informed consent of the clients, may not be acceptable in a bankruptcy setting, especially in the Title III Case, which is the largest municipal bankruptcy in U.S. history. The Bankruptcy Code provisions dealing with conflicts of interest are generally much stricter that the comparable rules of professional conduct.

104.     PRRADA and bankruptcy case law clearly establish that O&B's undisclosed representation of the Conflict Parties creates an actual conflict of interest which prohibits the retention of O&B as advisors to the Oversight Board.

105.     By concurrently representing the Oversight Board and the Conflict Parties, O&B has a conflicting decision whether to side with the public interests of the Oversight Board and the Commonwealth of Puerto Rico in the Title III Case, or to side with the private

interests of the Conflict Parties.

106.       O&B has placed itself in the position of choosing between competing public and
private interests.

107.       The Movant leaves the Title III Court and the U.S. Trustee to their respective legal
burdens, and reserves any and all rights, remedies and obligations to, *inter alia*,
complement, supplement, augment, alter and/or modify this motion, file any appropriate
additional pleadings and/or conduct any and all discovery as may be deemed necessary or
as may be required and to assert such other grounds as may become apparent upon further
certifications submitted by the knowledge parties in the Title III Case or facts learned
through factual discovery.

108.       Given the *sui generis* nature of PROMESA, the Title III Court is the sole venue
where PRRADA violations may be submitted for adjudication in cases where professionals
retained by the Oversight Board incur in conflicts of interests and fail to properly disclose
them.

109.       Under PRRADA and applicable bankruptcy law standards, O&B is required to
either "*explain away*"[18] its long-standing connections to each of the Conflict Parties that
have dealings with the Commonwealth of Puerto Rico and its instrumentalities or be
immediately disqualified as advisors to the Oversight Board in the Title III Case.

110.       Because of the multiple conflicts of interest that exist, O&B is unfit to serve as legal
counsel to the Oversight Board in this case, the largest municipal bankruptcy in U.S.
history.  Certain officers and other service providers of the Oversight Board are similarly
unfit to continue in their positions as well, because of their mishandling of the BDE's Loan

---

[18] See In re Midway Industry Contractors, Inc., 272 B.R. 651 (Bankr. N.D.Ill. 2001) (citing In re Granite Partners,
L.P., 219 B.R. 22, 34 (Bankr. S.D.N.Y. 1998).

Sale Agreement.  Their continued presence in these Title III proceedings do not "*make the government contracting process more effective*," do not "*increase the public's faith in this process*," and do not "*promote market competition*".

111.    For the reasons set forth above, the Movant requests that the Title III Court grants this motion as presented and issue a Judgment that:

(a) Permanently disqualifies O&B and its members from serving as advisors to the Financial Oversight and Management Board for Puerto Rico;

(b) Provides for the disallowment and full disgorgement of fees;

(c) Declares null and void *ab initio* the $384,269,047 Loan Sale Agreement described above for lack of due process and the Oversight Board's willful failure to comply with the legal formalities imposed by the Oversight Board's own contract review policy, which requires the revision and approval of all Puerto Rico government contracts having a transactional value of $10 million or more; and

(d) Grants such other relief that the Title III Court deems just, fair, and equitable considering the conflicts of interest that exist and that are continuing.

## Certificate of Service

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this matter.

In San Juan, Puerto Rico, this 19th day of January 2023.

S/Javier A. Rivera Vaquer
USDC-PR No. 225809

Javier A. Rivera Vaquer
PO Box 192376
San Juan, Puerto Rico 00919-2376
Tel. 787-759-3634
jariva@rimerico.com

25