# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**<br><br>As a representative of the **COMMONWEALTH OF PUERTO RICO**<br><br>Debtor[1] | **CASE NO. 17-BK-3283 (LTS)**<br><br><br>PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMIC STABILITY ACT |
| IN RE:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**<br><br>as representative of the **PUERTO RICO ELECTRIC POWER AUTHORITY** | **CASE NO. 17-BK-4780 (LTS)**<br><br><br>PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMIC STABILITY ACT |

# OBJECTION TO THE ADEQUACY OF THE DISCLOSURE STATEMENT

**TO THE HONORABLE COURT:**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**COME NOW** the **Hon. Rafael Hernández-Montañez**, in his official capacity as Speaker of the Puerto Rico House of Representatives and the **Hon. José L. Dalmau-Santiago**, in his official capacity as President of the Puerto Rico Senate, through the undersigned counsels and very respectfully **SET FORTH** and **PRAY:**

## I. INTRODUCTION

More than five years after the Puerto Rico Electric Authority (hereinafter referred to as "PREPA") filed a petition for relief under Title III of the Puerto Rico Oversight, Management and Financial Stability Act, 48 U.S.C. § 2101, et seq. (hereinafter referred to as "PROMESA"), on December 16, 2022, the Financial Oversight and Management Board for Puerto Rico (hereinafter referred to as "FOMB" or "the Board") filed a proposed Plan of Adjustment (docket number 3110)[2] and an accompanying Disclosure Statement (docket number 23097)[3], both of which had multiple addenda attached. A deadline for objecting the accuracy of the Disclosure Statement has been set for February 3, 2023 (docket number 23159).

One of the central tenets of the FOMB's vision for the future of Puerto Rico's publicly held electrical service monopoly is said company's transmission and distribution operations being handled by current operator LUMA Energy, LLC (hereinafter referred to as "LUMA") for at least 15 years after a reorganization plan

---

[2] This docket number corresponds to the case engendered by the PREPA petition (Civil No. 17-4780 (LTS)).
[3] This docket number corresponds to the case engendered by the Commonwealth's petition and under which all other Title III proceedings have been consolidated for joint administration (Civil No. 17-3283 (LTS)).

2

is confirmed, becomes final and is acceptable to said contractor[4]. Contrary to what has been the lived experience of PREPA customers ever since LUMA took over on June 1, 2021, the Board posits that said entity will, in the long run, "transform" Puerto Rico's electric system into a more modern, resilient, and efficient one. While both of the appearing parties strongly disagree with the FOMB in that policy position, the instant motion is not about subjective policy decisions but rather, about the objective failure to abide by applicable law in extending the partnership with LUMA.

While it is beyond dispute that PREPA and LUMA reached an initial agreement to have the latter run the transmission and distribution operations for a 15-year period, **said contract is not yet in effect**, as it is contingent upon what Puerto Rico law refers to as a "conditional obligation", on account that **it depends on uncertain future events materializing**. 31 P.R. Laws Ann. § 6241[5]. Thus, the June 22, 2020 agreement will not be effective until such time as the conditions are met for the "effective date", which Section 2.2 thereof sets forth in detail. Section 4.5(q) provides that one of the conditions that must be met before the "commencement date" comes about is that "**[a] final plan for the reorganization of PREPA into GenCo and GridCo shall have been approved by the applicable Governmental Bodies, and the GridCo-GenCo PPOA shall have become effective**" (emphasis added). This Honorable Court has thus

---

[4] The Board's is also counting on placing the electrical generation component of PREPA in private hands, a process that is in its final stages at the time that this motion is being drafted. Said process, however, has no bearing in the instant proceedings.

[5] This is precisely what distinguishes conditional obligations from those that are merely subject to a term. 31 P.R. Laws Ann. § 6246.

3

acknowledged that "a condition to commencement of the O&M Services that any confirmation order for a PREPA plan of adjustment must be 'reasonably acceptable' to LUMA Energy". In re Fin. Oversight & Mgmt. Bd. for P.R., 621 B.R. 289, 295 (D.P.R. 2020).

As acknowledged by the FOMB in the disclosure statement, **at said entity's behest**, also on June 22, 2020, the parties to the LUMA agreement contemporaneously executed a "Supplemental Agreement", which allowed the contractor to enter into an "interim" administration period beginning on June 1, 2021. In other words, while LUMA and the relevant Executive Branch agencies seemed to disregard the salient fact that PREPA is in the middle of a reorganization bankruptcy, the Board provided a much-needed reality check by forcing the contracting parties to accept that, at that time, the only possible arrangement was an interim one, wherein LUMA's fees could be paid as an "administrative expense" of the estate. This remains the case today, as PREPA's asset still belong to a bankruptcy estate.

Accordingly, Section 6.1 of this Supplemental Agreement reiterated the conditions upon which the original contract is contingent. Also, pursuant to Section 7.1(a) of the Supplemental Agreement, that period "**shall automatically terminate** without further action by Operator, and without need for a court decision or arbitral award confirming such termination, in the event that the Service Commencement Date does not occur on or prior to the date that is eighteen **(18) months after the Supplemental Agreement Effective Date (such date,**

4

the "**Interim Period Termination Date**"), **which Interim Period Termination Date may, if requested by Administrator, be extended by the mutual agreement of the Parties prior to the then-current Interim Period Termination Date**" (emphasis added).

November 30, 2022 marked the point in which the 18-month period upon which the interim period **would have automatically ended in the absence of an extension**. LUMA is still in charge, notwithstanding the fact that the conditions precedent to the "commencement date" have not materialized. At page 114 of the disclosure statement, the FOMB posits that:

> The Supplemental Agreement provides for the commencement of the O&M Services if conditions for full service commencement are satisfied or waived other than PREPA's exit from Title III and delivery of a certain tax opinion and reliance letter (the "<u>Interim Service Commencement Date</u>"). The Interim Service Commencement Date occurred on June 1, 2021, and began a period (the "Interim Period") during which the Supplemental Agreement is in effect, and LUMA Energy assumed full control of the T&D System, until the earlier of the Service Commencement Date (which will occur when a PREPA plan of adjustment is confirmed) or the "Interim Period Termination Date," which was set to occur on December 1, 2022. November 29, 2022, the Oversight Board and the P3 Authority approved an **extension** of the Supplemental Agreement. On November 30, 2022, the PREPA Board and Government of Puerto Rico also approved the **extension** of the Supplemental Agreement. Pursuant to the **extension** of the Supplemental Agreement, the Interim Period Termination Date has been **extended** until PREPA's exit from Title III.

Docket Number 23097, at 114 (emphasis added)

The above factual representation is incorrect on various accounts, most significantly with regards to the "extension" agreed to by LUMA, the Board and components of the Puerto Rico Executive Branch constituting a valid continuation

5

of the existing public-private partnership[6]. Because such an extension required the enactment of legislation, it is null and void under Puerto Rico law.

## II. DISCUSSION

In the year 2009, the Puerto Rico Legislative Assembly approved Act 29-2009, 27 P.R. Laws Ann. § 2601, et seq. (hereinafter referred to as "Act 29"), which was meant to implement the core policy of the then Governor Hon. Luis Furtuño-Burset's policy of promoting public-private partnerships. Act 29 established a public policy "to favor and promote the establishment of public-private partnerships for the creation of priority projects and, among other things, to further the development and maintenance of infrastructure facilities, to apportion between the Commonwealth and the contractor the risk entailed by the development, operation, or maintenance of such projects, to improve the services rendered and the functions of the Government, to foster the creation of jobs, and to promote the socio-economic development and the competitiveness of Puerto Rico". 27 P.R. Laws Ann. § 2602.

Given the evident importance of electric utilities to Puerto Rico's economic and general wellbeing, within the general pro-privatization policy agreements pertaining to PREPA were given special treatment among the many other government instrumentalities in which privatization was being considered. Concretely, Puerto Rico Act 120-2018, 22 P.R. Laws Ann. § 1111, known as the

---

[6] While the board represents that the new termination date for the interim period is "until PREPA's exit from Title III", the fact is that the agreement pertains not just any exit from Title III proceedings but exiting through a confirmed plan that is acceptable to LUMA. In this sense, the original agreement did not vary.

6

"Puerto Rico Electric Power System Transformation Act" (hereinafter referred to as "Act 120"). The act is meant to "expedite a fair and transparent process for the establishment of public- private partnerships in connection with any functions, services, or facilities of the public corporation, and to sell the power generation assets thereof, thus placing such assets in the private hands of those who show a fair balance between the commercial interests and the sense of social responsibility; and who have the operational, technological, and financial capacity to transform the electric power system into one that is modern, offers reasonable rates, provides universal access, and has efficient and environmentally-friendly energy sources, as well as an infrastructure that is as resistant or resilient as possible to weather and natural events; with financial and legal conditions that are reasonable for the People of Puerto Rico; and promotes broad access and swiftness in the rendering of direct services to its customers". 22 P.R. Laws Ann. § 1113. Hence, "the results of these negotiations shall align the corporate and business interests of the proponents with the Fundamental Interests of the People of Puerto Rico in order to achieve the transformation of the electric power service, as we have described, and to strengthen the socioeconomic, community, entrepreneurial, and industrial development, and improve the quality of life". Id.

In order to carry out its purposes, Act 120 provides that any PREPA transactions involving the sale of assets will require approval by both legislative chambers. 22 P.R. Laws Ann. § 1120(c). With regards to other transactions, Act 120 provides that:

7

> Notwithstanding the provisions of § 2604(c) of Title 27, the Board of Directors of the Authority, in accordance with § 2608(g)(3) of Title 27, **shall be approved by the affirmative vote of both representatives of the public interest in the event that a PREPA transaction does not involve the sale of PREPA assets. If the affirmative vote of one (1) or both of the representatives of the public interest cannot be obtained, a PREPA transaction not involving the sale of PREPA assets shall be deemed to be denied. The decision of one (1) or both of the representatives of the public interest to abstain shall be construed as a vote against the processes established in subsection (a) of this section**.

22 P.R. Laws Ann. § 1120(b) (emphasis added)

It should be noted that two of the five members of the Public-Private Partnership Authority's Board are meant to represent the public interest and are designated by the Governor from names proposed by legislative leadership, while the other three members hail from the Executive Branch. 27 P.R. Laws Ann. § 2604(b). The public interest representatives were ambushed by the other three members, just in the eve of the November 30, 2022 deadline, whom had already made a decision to extend LUMA's interim period, not for a fixed term as required by law, but for however long it took for the conditions precedent to the commencement date to materialize (assuming that they ever do). This matter is however one for those officers to raise, if so inclined. What does concerns the appearing parties is that, not only have pertinent Puerto Rico agencies and the FOMB disregarded public policy regarding the representation of the public interest but they have also refused to honor statutory prerogatives of the Legislative Asembly.

8

Article 10(e) of Act 29, 27 P.R. Laws Ann. § 2609(e), provides how long a public-private partnership may initially be agreed upon, for how long such a relationship may be renewed and what is the process for renewal. Concretely, the statute provides that:

> The term of a partnership contract executed under this chapter shall be that which the Authority deems shall serve the best interests of the People of Puerto Rico, but in no case shall such term exceed fifty (50) years; however, **upon evaluation of its merits and efficiency and effectiveness results**, such partnership contracts **may be extended** for successive terms which collectively do not exceed twenty-five (25) additional years, as the Authority, the partnering government entity, and the Governor or the executive official on whom he/she delegates, may determine. **Said extension must be approved by legislation**. (emphasis added)

Any extension of a partnership contract requires a **mandatory** assessment of efficiency and effectiveness, something that the Authority simply did not do, or at least, something that is not reflected in the documents generated during the process. Most importantly, once the term for a partnership expires, any renewal **requires legislative action**.

Debtor cannot rely on the 15-year agreement as the basis for LUMA's authority to, since June 1, 2021, handle PREPA's transmission and distribution operations. This is so because, as previously explained, that agreement is contingent upon the confirmation of a plan agreeable to the operator. Unless and until a plan is confirmed by a final order and is acceptable to LUMA, the **sole basis** for a P3 arrangement is the Supplemental Agreement and its interim period scheme. It is within the objective realm of possibilities that the 15-year agreement

9

never becomes effective as the Title III proceeding may very well be dismissed or a plan may be confirmed that is not to LUMA's liking. Again, the **only** concrete source that allowed for LUMA's operation of the transmission and distribution system was the supplemental agreement and the interim period established by that document. As per its express terms, if the supplemental agreement was not extended by November 30, 2022, LUMA's tenure would have **automatically ended**, triggering the back-end transition period. In other words, the only agreement allowing for the partnership with LUMA was set to expire on November 30, 2022, unless extended. Such an extension would necessarily trigger the provisions of Article 10(e) of Act 29. Since no effort was made to seek legislative approval of any extension, the actions carried out at the end of November 2022 are null and void.

This Honorable Court has observed that "PROMESA is an awkward power-sharing arrangement". Rosselló-Neváres v. Fin. Oversight & Mgmt. (In re Fin. Oversight & Mgmt. Board of P.R.), 330 F. Supp.3d 685, 701 (D.P.R. 2018). The sharing of power implicates that both the FOMB and the elected government of Puerto Rico be mindful, respectful and deferential of each other's prerogatives. As this Honorable Court has warned, when the power sharing agreement goes out of balance, the likelihood of "mutual sabotage" arises. In re Fin. Oversight & Mgmt. Bd., 583 B.R. 626, 637 (D.P.R. 2017).

The Legislative Assembly is as interested as anyone else in the confirmation of a viable debt restructuring plan for PREPA. This obviously does not mean that the House and the Senate are willing to relinquish their statutory authority and duty to consider extending public-private partnerships. Article 10(e) of Act 29 clearly establishes a check on the Executive Branch's ability to maintain a privatization arrangement beyond the date in which it would have otherwise expired. But for the agreements reached by LUMA, the FOMB, the Authority and PREPA on November 29-30, 2022, we would now be in the back-end transition period of an **expired** partnership. Puerto Rico law clearly allowed the Legislative Assembly to weigh in the decision to extend the partnership and on the terms under which an extension was acceptable.

To the extent that Act 29 was not followed, the disclosure statement should be corrected to reflect that the LUMA agreement was not validly extended.

**WHEREFORE**, it is respectfully requested from this Honorable Court that the disclosure statement be amended to reflect the lack of a valid contract between PREPA and LUMA.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record, to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 22ⁿᵈ day of January, 2023.

|  | RESPECTFULLY SUBMITTED, |
|---|---|
| **QUIÑONES, ARBONA & CANDELARIO** <br> Chubb Plaza, Suite 701-A <br> San Juan, P.R. 00920 <br> (787) 620-6776 | **M.L. & R.E. LAW FIRM** <br> Cobian's Plaza, Suite 404 <br> 1607 Ponce De León Ave. <br> San Juan, Puerto Rico 00909 <br> Tel (787) 999-2979 |
| *S/Edwin Quiñones* <br> **EDWIN QUIÑONES** <br> USDC-PR Number 124305 <br> e-mail: equinones@qaclaw.com | *S/Jorge Martínez Luciano* <br> **JORGE MARTINEZ LUCIANO** <br> USDC-PR Number 216312 <br> e-mail: jorge@mlrelaw.com |
| Attorney for the President of the Senate of Puerto Rico, Senator José Luis Dalmau | *S/Emil Rodríguez Escudero* <br> **EMIL RODRÍGUEZ ESCUDERO** <br> USDC-PR Number 224312 <br> e-mail: emil@mlrelaw.com <br><br> Attorneys for Speaker Hernández-Montañez |