# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth, ERS, and PBA.** |

## DEBTORS' REPLY TO RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ORDER FURTHER EXTENDING DEADLINE TO FILE OBJECTIONS TO PROOFS OF CLAIM

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth and ERS, the "Debtors"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"),[2] respectfully submits this reply (the "Reply") to the *Response of Official Committee of Unsecured Creditors to Debtors' Motion for Order Further Extending Deadline to File Objection to Proofs of Claim* [ECF No. 23263][3] (the "Response" or "Resp.") and in support of the *Debtors' Motion for Order Further Extending Deadline to File Objection to Proofs of Claim* [ECF No. 23234] (the "Second Extension Motion"). In support of this Reply, the Oversight Board represents as follows:

## PRELIMINARY STATEMENT

1. Similar to its response to the Debtors' first request for an extension of the deadline to file objections to claims, the Official Committee of Unsecured Creditors (the "Committee") again does not oppose the extension requested in the Second Extension Motion, and acknowledges "the challenges the Oversight Board is facing in reconciling more than 170,000 claims filed against the Title III Debtors, including as it relates to gathering information from the Commonwealth and its agencies necessary for the Oversight Board to evaluate the more than 7,700 Remaining Claims." Resp. ¶ 1. Nevertheless, the Committee repeats its request that the extension "be conditioned on the Oversight Board providing a timeline as to how it expects to bring the reconciliation of the

---

[2] PROMESA is codified at 48 U.S.C §§ 2101–2241.

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17-BK-3283-LTS.

Remaining Claims to an expeditious conclusion." *Id.* ¶ 5. The purported basis for this request is that "the Committee is concerned about the pace at which the Remaining Claims are being resolved and the timing of distributions to general unsecured creditors." *Id.* ¶ 2.

2. As before, the Oversight Board and the Debtors wholeheartedly share the desire to make distributions as soon as possible, but again, believe the Response is inappropriate for two basic reasons. First, as requested by the Court in connection with every Omnibus Hearing, the Oversight Board has provided an update on the claims reconciliation process, the status of the Administrative Claims Reconciliation ("ACR") and Alternative Dispute Resolution ("ADR") processes, and the anticipated number of claims to be subject to objection. At such time, the Oversight Board has advised the Court and parties in interest of the inherent difficulties in the claims reconciliation process arising from the multitude of proofs of claim filed in a "fully unliquidated" amount, as well as the difficulty accessing information necessary to evaluate proofs of claim. Second, the Committee has ceded all responsibility for the ongoing reconciliation of proofs of claim to its two (2) appointees to the Avoidance Actions Trust Board, and the Oversight Board, consistent with its obligations pursuant to the Plan[4], regularly informs those appointees of the status of claims reconciliation. Plan § 82.1. In fact, but for the ongoing pendency of an appeal of the Confirmation Order, as the Plan provides, the Committee would have been dissolved other than to safeguard the fees and expenses incurred by its members and professionals. As such, the Committee is in no position to file a response at all, let alone, one requesting that conditions be attached to the Debtors' extension.

---

[4] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Second Extension Motion.

3. Although the Debtors maintain that the Committee's request should be denied, the Debtors, in the interest of good faith, hereby provide the Court, the Committee, and parties in interest with an update on the status of the "fully unliquidated" Remaining Claims which are preventing current distributions. These claims are considered "fully unliquidated" because they assert an unknown amount (*i.e.*, the claimants associated with these claims failed to provide an asserted amount in their proofs of claim forms). Rather, they merely provide the bare minimum and require significant investigative work to be done.

4. To date, the Debtors have resolved nearly seventy-eight percent (78%) of fully unliquidated claims associated with litigations, but, there are over 1,100 of these claims for which reconciliation efforts are still ongoing. These claims are preventing distributions because there is still insufficient information and/or documentation regarding the underlying litigations for the Debtors to make a reasonable estimation of the amount that should be reserved. If the Debtors were to make a good faith estimation now, any reserve would need to include all claims that are pending objection, but have not yet been finally resolved by Court order, including those which have been subject to prior omnibus objections and remain subject to pending Notices of Presentment. The lack of information at this time makes a good faith estimation impractical, and such a reserve might have to be so large that distributions to creditors could not reasonably occur or provide a meaningful recovery.

5. For the same reason that the Debtors cannot reasonably estimate the reserve for these claims, the Debtors cannot reasonably determine whether to object to many of these claims. To be clear, the Debtors have made significant progress in reviewing and reaching initial determinations for resolving a large number of these claims. But, others of these claims involve

3

substantive and complex issues that require more time to review and to collect and analyze relevant information.

6. The extension sought is necessary because it will avoid the needless filing of objections and afford the Debtors an opportunity to, among other things, perform additional analysis concerning the most efficient manner of resolving these and other Remaining Claims in the interests of ensuring ratable distributions among, and maximizing value for, legitimate creditors.

**REPLY**

**A. The Debtors Have Been Working Diligently and Expeditiously on Claims Reconciliation But There Are Over 1,100 Fully Unliquidated Proofs of Claim Subject to Ongoing Reconciliation Efforts Which Are Prohibiting Distributions**

7. Although the Committee's appointees to the Avoidance Actions Trust Board already receive a monthly report providing the status of the claims reconciliation process, the following is an overview of the status of certain of the Remaining Claims which are preventing distributions. Those claims are "fully unliquidated" claims, or claims asserting unknown amounts because the claimants associated with these claims failed to provide an asserted amount or even basis for recovery in their proof of claim forms.

8. By way of background, over 5,050 fully unliquidated proofs of claim asserting liabilities related to litigations have been filed against the Debtors. To date, approximately 3,900 of these claims have been resolved through: (*i*) objections that have been ordered by the Court; (*ii*) objections that have been granted but are awaiting orders from the Court; (*iii*) withdrawals by creditors; and (*iv*) determinations that Kroll Restructuring Administration LLC made a filing error.

9. In November 2022, the Debtors moved to amend the ADR Procedures to streamline the offer-exchange process and facilitate the expeditious and economical determination of claims associated with claimants who fail to respond to offers or counter-offers. *See Motion of the*

4

*Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures* [ECF No. 22936]. The Court granted the Debtors' motion to amend on December 20, 2022. *See Order Granting Motion of the Financial Oversight and Management Board for Puerto Rico to Amend Alternative Dispute Resolution Procedures* [ECF No. 23113].

10. Of the claims that have been resolved through objections to date, over 400 were initially transferred into ADR pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [Case No. 17-BK-03283, ECF No. 12576] (the "ADR Order"), as amended, and were subsequently subject to omnibus objections for having failed to respond to Information Requests (as defined in the ADR Order) or having failed to provide sufficient information in response to Information Requests.

11. Further, in the months since the Court's previous Extension Order, the Debtors, together with local counsel, have been reviewing and analyzing responses received to Information Requests in order to develop settlement valuations for unliquidated claims that have been transferred into ADR. The Debtors also have received approximately one hundred mailings from claimants related to the motion to amend the ADR Procedures, and the Debtors have been reviewing the mailings to determine the most effective and efficient way to leverage claimant interest to perform additional outreach, obtain necessary information, and move for speedy (but fair) resolution.

12. Since the Extension Order was entered by the Court in August 2022, the Debtors have also filed thirty-nine omnibus objections covering approximately 400 fully unliquidated claims. Among those objections were new objection types, including objections for the purpose of liquidating proofs of claim according to procedures agreed-upon by the Committee.

13. It is against this background that the Debtors' ongoing reconciliation of 1,100 remaining fully unliquidated claims must be viewed. To date, the Debtors have made significant progress in obtaining additional information regarding these fully unliquidated claims, and reviewing and reaching initial determinations for resolving a large number of these claims. But, there are other of these claims involving substantive and complex issues that require more time to review, collect relevant information, and analyze. Accordingly, the Debtors cannot reasonably determine whether these 1,100 claims are suitable for objection or ADR because there still is insufficient information and/or documentation regarding the underlying litigations. For this same reason, these claims are preventing distributions: without sufficient information and/or documentation, the Debtors are unable to make a reasonable estimation of the amount that should be reserved. If the Debtors were to make a good faith estimation now, the reserve would need to include all claims that are pending objection, but have not yet been finally resolved by Court order, including those pending Notices of Presentment.[5] The lack of information at this time makes a good faith estimation impractical, and such a reserve might have to be so large that distributions to creditors could not reasonably occur or provide a meaningful recovery.

14. Indeed, as the Debtors have previously explained, the class action litigation captioned *Rosa Lydia Vélez et al. v. Puerto Rico Department of Education*, No. KPE-1980-1738 is just one example of a litigation that is currently preventing distributions. This litigation, which underlies *hundreds* of fully unliquidated claims pertaining to thousands of plaintiffs, was filed against the Department of Education three decades ago related to services which were allegedly not provided to certain special needs children. Although a partial judgment was entered in that

---

[5] At this time, there are approximately 2,500 claims subject to approximately 12 pending Notices of Presentment. The Debtors anticipate filing 55 Notices of Presentment covering approximately 11,500 claims this week.

case (*see Motion for Relief from Stay* [ECF No. 730]), the damages owed to each plaintiff were never determined. Before the case was stayed, counsel for the plaintiffs were supposed to provide copies of records to the Department of Education naming each of the plaintiffs and showing which services were allegedly not provided to which plaintiffs. The Debtors maintain that those records are necessary so that the alleged damages purportedly owed to each plaintiff (and each claimant) can be ascertained. Absent this information, the Debtors cannot, at this time, reasonably estimate a reserve in order to account for the hundreds of underlying unliquidated claims.

15. The Debtors have continued their attempts to obtain those records (and others related to the underlying litigations) through the aforementioned outreach efforts, including: (*i*) coordinating with the Puerto Rico Department of Justice to attempt to obtain relevant pleadings and supporting documentation; (*ii*) re-contacting claimants or claimants' counsel via mailing, telephone and/or email, using the contact information provided by the claimants in their proofs of claim, and reviewing and analyzing information submitted; and (*iii*) sending follow-up letters on behalf of the Oversight Board to numerous different Commonwealth agencies that were named parties in the litigations underlying the claims. While the Debtors have received some helpful information, in many instances, the Debtors require additional follow-up information in order to fully evaluate the asserted litigations.

16. The extension is, accordingly, critical because it will avoid the needless filing of objections and afford the Debtors an opportunity to, among other things, perform additional analysis concerning the most efficient and appropriate manner of resolving these and other Remaining Claims in the interests of ensuring ratable distributions among and maximizing value for legitimate creditors.

### B. The Committee No Longer Has Oversight Duties Over the Claims Reconciliation Process

17. The entire premise for the Committee's request is that "the Committee is concerned about the pace at which the Remaining Claims are being resolved and the timing of distributions to general unsecured creditors." Resp. ¶ 2. The Debtors, of course, agree that expeditious resolution of the claims reconciliation process is critical so that holders of valid claims receive appropriate distributions. At the same time, the Debtors are cognizant that, without engaging in hearings to estimate thousands of "fully unliquidated" claims, a time-consuming and extremely costly exercise, no distributions can be made. But, as mentioned above, while the Committee seeks to inject itself, it no longer has oversight responsibility of the claims reconciliation process.

18. The Plan provides that, upon the Confirmation Order being a Final Order[6] and except for the limited involvement associated with the recovery of fees and expenses of the Committee's professionals and members, as of the Effective Date, the Committee is considered "dissolved and … deemed to have satisfied all of its respective duties and obligations, and … released and discharged from any action or activity taken, or required to be taken, in connection with the Title III Cases[.]" Plan § 90.1. With the consummation of the Plan, the Committee, arguably, does not have any duties with respect to the claims reconciliation process. Indeed, those duties now belong to the Committee's two (2) appointees to the Avoidance Actions Trust Board. *Id.* § 82.1(b). Pursuant to the Plan and the Confirmation Order, such appointees receive monthly reports regarding the claims reconciliation process and have "the right to … review the claims objections and reconciliation process, including the ADR Procedures, as it relates to CW General Unsecured Claims, ERS General Unsecured Claims, [and] Convenience Claims[.]" *Id.*

---

[6] The Debtors acknowledge that an appeal of the Confirmation Order remains pending, but the benefits of the Plan and the Confirmation Order (*i.e.*, the appointment of the Committee members) have been realized and implemented for nearly one year.

8

19. The Committee does not dispute that such appointees have been receiving such progress reports from the Debtors and analyses from the Committee's financial advisor, and that it is fully aware of the claims reconciliation process and the need to address the "fully unliquidated" claims. Likewise, there is no dispute that, prior to the Effective Date, the Committee was keenly aware of the need to review all claims and the difficulty in obtaining the information needed to do so. Accordingly, while the Debtors appreciate the concern associated with making distributions to holders of valid claims, they reiterate that they can only do so in a pragmatic manner designed to provide such holders with their rightful recoveries.

WHEREFORE the Debtors request that the Court grant the relief requested in the Second Extension Motion and such other and further relief as is just.

Dated: January 25, 2023
San Juan, Puerto Rico

Respectfully submitted,

/s/ Brian S. Rosen
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for Debtors*

9

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Co-Attorney for the Financial Oversight and Management Board as representative for the Debtors*

10

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer