**Seleccione su Respuesta Permitida en el encasillado a continuación.**

DEBE RESPONDER A LA OFERTA DE TRANSACCIÓN Y A LOS OTROS INCISOS
APLICABLES EN EL RESTO DEL FORMULARIO

## RESPUESTA A LA OFERTA DE TRANSACCIÓN

_____ Yo/nosotros aceptamos y estamos de acuerdo con los términos de la Oferta de Transacción.

(Si usted indica que usted acepta la Oferta de Transacción salte la Sección II, firme el formulario al final, y devuélvalo a Proskauer Rose LLP con copia a Álvarez y Marsal. Si usted no está aceptando la Oferta de Transacción, lea cada una de los siguientes incisos cuidadosamente y responda según corresponda.)

**O**

_____ Yo/nosotros rechazamos la Oferta de Transacción.

**O** _____ Yo/nosotros rechazamos la Oferta de Transacción.  Sin embargo, yo/nosotros aceptaré/aceptaremos una reclamación [general no garantizada permitida/gasto administrativo] contra [Deudor] por la cantidad de $__ para satisfacer la totalidad del (de los) Reclamo(s) Designado(s), que se hará de acuerdo con cualquier plan de ajuste de deudas confirmado e implementado en el Caso bajo el Título III del [Deudor].

_La Sección [ ] de los Procedimientos de RAC establecen las restricciones a las contraofertas. Su contraoferta no puede incluir cantidades desconocidas, sin liquidar o cantidades similares y no pueden exceder la cantidad, o mejorar la prioridad establecida en su evidencia de reclamo presentada o enmendada más recientemente de manera oportuna. Usted no puede enmendar su evidencia de reclamo con el solo propósito de proponer una contraoferta por una cantidad mayor o para obtener una mayor prioridad. Si usted devuelve este formulario con una contraoferta que no cumpla con los términos de los Procedimientos de RAC, se entenderá que ha rechazado la Oferta de Transacción, y la liquidación de su(s) Reclamo(s) Designado(s) pasará a la mediación evaluativa conforme se establece en las Secciones [      ] de los Procedimientos de RAC._

_Además, si usted está rechazando la Oferta de Transacción o haciendo una contraoferta, en la medida en que su(s) prueba(s) de reclamo(s) más reciente(s) no (b) indiquen la cantidad correcta de su(s) Reclamo(s) Designado(s); (b) expresamente identifiquen todas y cada una de las causas de acción o teorías legales en la cuales usted basa su(s) Reclamo(s) Designado(s); (c) incluyan información de contacto corriente, correcta y completa de su abogado u otro representante; o (d) provea todos los documentos en los que usted apoya su(s) Reclamo(s) Designado(s), usted **TIENE** que enviar toda esta información y_

arbitraje vinculante, el árbitro (en lugar del Tribunal) decidirá la cantidad de su reclamo a ser liquidada. Por **favor sepa que si usted elige participar en un arbitraje vinculante, tendrá que pagar [$  ], que es el 50% del costo de los servicios del árbitro, además de los honorarios de su propio abogado (si tiene alguno) y cualquier costo incidental que ustedpueda incurrir.**

Usted tiene que indicar en la Sección II a continuación si usted acepta el arbitraje vinculante. Una vez usted de su consentimiento para participar en el arbitraje vinculante, no podrá retirar su **consentimiento para el arbitraje vinculante.** Además, si había dado su consentimiento por escrito previamente, ya fuese antes o después de que se radicara el caso bajo el Título III del [Deudor], para el arbitraje vinculante como un medio para resolver su(s) reclamo(s) contra [Deudor], resultará inefectivo cualquier intento de optar por no participar en el arbitraje vinculante en respuesta a este aviso.

Si no elige participar en un arbitraje vinculante, puede elegir entonces que los Tribunales del Estado Libre Asociado determinen la cantidad de su reclamo que habrá de liquidarse.

**Litigio en los Tribunales del Estado Libre Asociado**

Los Deudores [han/no han] dado su consentimiento para que la los Tribunales del Estado Libre Asociado sean los que determinen la cantidad de su Reclamo a liquidarse, sujeto a las restricciones establecidas en los Procedimientos de RAC.  Usted tiene que indicar en la Sección II a continuación si acepta que los Tribunales del Estado Libre Asociado sean los que determinen la cantidad de sus reclamos a liquidarse.

**Sección I: Oferta de Transacción.** [Deudor] le ofrece [una reclamión general no prioritaria no garantizada permitida/gasto administrativo] por la cantidad de [$_] contra [Deudor] para satisfacer totalmente su(s) Reclamo(s) Designado(s), lo cual se hará conforme a cualquier plan de ajuste de deudas confirmado e implementado en el Caso bajo el Título III de [Deudor].

Las únicas respuestas permitidas ("Respuestas Permitidas") a la Oferta de Transacción son:

(a)  la aceptación de la Oferta de Transacción,

(b)  el rechazo de la Oferta de Transacción, o

(c)  El rechazo a la Oferta de Transacción junto con una contraoferta (una "Contraoferta").

La información sobre las Contraofertas está disponible en la Sección [_] de los Procedimientos de RAC.

*documentación con su Respuesta Permitida a Proskauer Rose, con copia a Alvarez & Marsal.*

**Sección II: Arbitraje Vinculante o Litigios en Tribunales del Estado Libre Asociado.**

### A. CONSENTIMIENTO A UN ARBITRAJE VINCULANTE

Indique a continuación si acepta un arbitraje vinculante con respecto a su(s) Reclamo(s) Designado(s):

_____ Yo/nosotros **CONSIENTO/CONSENTIMOS** a un Arbitraje Vinculante.
**Yo/Nosotros reconozco/reconocemos que mi/nuestro consentimiento, una vez dado, no se puede retirar.**

*Si usted elige participar en arbitraje vinculante, tendrá que pagar [$      ], que es el 50% del costo de los servicios del árbitro, además de los honorarios de su abogado (si tiene alguno) y cualquier costo incidental en el que pueda usted incurrir.*

**O**

_____ Yo/nosotros **NO CONSIENTO/CONSENTIMOS** a un Arbitraje Vinculante.

*El arbitraje vinculante sólo se llevará a cabo si todas las partes, incluyendo a [Deudor], aceptan someterse la disputa a arbitraje.*

**O**

> ## B. CONSENTIMIENTO PARA LA LIQUIDACIÓN EN EL TRIBUNAL DEL ESTADO LIBRE ASOCIADO
>
> Indique a continuación si acepta resolver la cantidad de su(s) Reclamo(s) Designado(s) ante los Tribunales del Estado Libre Asociado con respecto al (los) Reclamo(s) Designado(s):
>
> __X__     Yo/nosotros **CONSIENTO/<u>CONSENTIMOS</u>** a que se resuelva la cantidad de mi/nuestros Reclamo(s) Designado(s) ante los tribunales del Estado Libre Asociado.
>
> <u>O</u>
>
> _____     Yo/nosotros **<u>NO CONSIENTO/CONSENTIMOS</u>** a que se resuelva la cantidad de mi/nuestros Reclamo(s) Designados(s) ante los tribunales del Estado Libre Asociado.
>
> *El litigio sólo se llevará a cabo en los Tribunales del Estado Libre Asociado si todas las partes, incluyendo a [Deudor], dan su consentimiento para litigar la cantidad de su(s) Reclamo(s) Designado(s) ante los tribunales del Estado Libre Asociado.*

**Usted no puede seleccionar el arbitraje vinculante y el litigio en los Tribunales del Estado Libre Asociado a la misma vez.**

**Si usted no selecciona entre el arbitraje vinculante o el litigio en los Tribunales del Estado Libre Asociado, la cantidad de su reclamo será resuelta en este Tribunal del Título III.**

**DEVUELVA SU AVISO COMPLETADO Y CUALQUIER INFORMACIÓN SUPLEMENTARIA EN UNA CONTRAOFERTA A [DIRECCIÓN] PARA [FECHA LÍMITE].**

[Firma del Representante Autorizado
del Reclamante Designado]

Por: _Sandra E. Rivera_
[Nombre en letra de molde]

[Firma del Representante Autorizado
del Reclamante Designado]

7

Por: _Sandra E. Rivera_

[Nombre en letra de molde]

9

PAG. 01

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA DE SAN JUAN

RIVERA PONCE DE LEON, SANDRA                          CASO:K DP2006-0386
          DEMANDANTE                                 SALON:0808
             VS.
A. CARRETERAS Y TRANSPORTACION (P/C)       DA\OS Y PERJUICIOS
          DEMANDADO                         HOSTIGAMIENTO SEXUAL
                                            CAUSAL/DELITO


SANDRA RIVERA PONCE DE LEON
HC-03 BOX 12465
CAROLINA PR 00987


                 NOTIFICACION DE SENTENCIA


     EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA  EN EL CASO DE EPIGRAFE CON FECHA 07 DE FEBRERO DE 2014   , QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

     Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE  ESTABLECERSE  RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA
CON FECHA  DE  19 DE FEBRERO DE 2014    .

MÁRQUEZ ESCOBAR EVELYN T
PO BOX 810386
CAROLINA,PR 00981-0386

ROVIRA RODRIGUEZ SALVADOR F
PO BOX 800970
COTO LAUREL,PR 00780-0970

CASTRO MOYA LEILA S
P.O. BOX 800970
COTO LAUREL,PR 00780-0970

LÓPEZ RODRÍGUEZ EDIBERTO
URB SAN IGNACIO
1795 SAN RODOLFO
SAN JUAN,PR 00927

PAG. 02

CASO NUM:K DP2006-0386
SALON:0808

AUT DE CARRETERAS Y TRANSPORTACION
PO BOX 42007
SAN JUAN PR 00940-2007

PR LEGAL ADVOCATES, P.S.C.
MUSEUM TOWER  STE 606
312 AVE DE DIEGO
SAN JUAN PR 00909

SAN JUAN, PUERTO RICO, A 19 DE FEBRERO DE 2014

LCDA. REBECCA RIVERA TORRES
------------------------------------------
SECRETARIO
POR: SONIA ORTIZ
------------------------------------------
SECRETARIO AUXILIAR

O.A.T.704-NOTIFICACION DE SENTENCIA
WWW.RAMAJUDICIAL.PR/TELETRIBUNALES(787)759-1888/ISLA 1-877-759-1888 LIBRE DE COSTO

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE SAN JUAN

SANDRA RIVERA PONCE DE LEÓN
DEMANDANTE

Vs.

AUTORIDAD DE CARRETERAS Y
TRANSPORTACION, ET ALS
DEMANDADOS

CIVIL NUM: K DP2006- 0386(808)

SOBRE: HOSTIGAMIENTO SEXUAL,
LABORAL Y REPRESALIAS

## RELACIÓN DEL CASO, DETERMINACIONES DE HECHOS, CONCLUSIONES DE DERECHO Y SENTENCIA

### RELACIÓN DEL CASO

La demandante, Sandra Rivera Ponce De Leon, presentó reclamación de daños y perjuicios por Hostigamiento Sexual Laboral y Represalias contra la Autoridad de Carreteras, el Ingeniero Juan Carlos Arroyo, el Ingeniero Jose Figueroa y el Sr. Edwin Rivera Agosto .

Luego de los trámites de rigor, se celebró la Vista en su Fondo el día 17 de enero de 2014. A la misma comparecieron las partes y sus respectivas representaciones legales

Las partes presentaron prueba testifical y documental, que estaba incluída en el Informe de Conferencia con Antelación a Juicio. Además, en dicho Informe se incluyerón varias estipulaciones de hechos. A tenor con la prueba presentada llegamos a las siguientes:

### DETERMINACIONES DE HECHOS

1.      La demandante, Sandra Rivera Ponce De León, es mayor de edad, soltera , y trabaja como Auxiliar de Ingenieria Civil en la Autoridad de Carreteras.

2.      La demandante comenzó a trabajar para la Autoridad de Carreteras y Transportación (ACT) el 1 de noviembre de 1996 como empleada irregular por contrato como Auxiliar de Ingeniería III, por contrato, en la Región Metropolitana.

3.      En septiembre del 2000 fue nombrada empleada regular y se le otorgó una plaza de Auxiliar de Ingeniería I.

4.      La demandante nunca fue amonestada por su desempeño.

5.      Para febrero del 2003, la demandante estaba asignada al Proyecto de Península de Cantera. Además para esa fecha se encontraba en estado de embarazo.

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #2

6.      Para realizar sus labores la demandante siempre vistió  pantalón largo,
sueter de manga larga y zapatos tipo "tennis".

7      En el  Proyecto de Península de Cantera además de la demandante
trabajaba el co demandado Edwin Rivera, Sara Berrios y otros empleados varones.  El
supervisor del proyecto era el ingeniero Juan Carlos Arroyo.

8.      El Sr. Edwin Rivera se desempeñaba como chofer del proyecto.

9.      La demandante testificó que entre julio y agosto de 2003 el Sr. Edwin Rivera,
comenzó hacerle en el área de trabajo comentarios que le desagradaban y la hacían sentir
molesta, nerviosa, avergonzada e incómoda.  Entre los comentarios que hacia el Sr. Edwin
Rivera señalo: "te reconocí por las nalgas", "debes tener unas piernas bonitas", "hoy tiene
bikini" hoy tiene panti regular".

10.      Indicó además, la demandante que  habló con su supervisor Juan Carlos
Arroyo para querellarse de los cometarios que le realizaba el Sr. Edwin Rivera, en el área
de trabajo  y le indicó que los comentarios  no le gustaban.  El ingeniero Juan Carlos
Arroyo le indicó que hablaría con el Sr. Edwin Rivera.

11.      Con posterioridad el Sr. Edwin Rivera  cambió su patrón y ya no se dirigía
directamente a ella al hacer los comentarios sino a otras mujeres que pasaban por el lugar
del proyecto.  El Sr. Edwin Rivera de manera similar se refería a la ropa interior de las
mujeres y los comentarios los compartía con otros empleados  en alta voz por lo que la
demandante los escuchaba y se sentía molesta, incómoda, ofendida y avergonzada.

12.      El 12 de febrero de 2004, la demandante envió una carta al ingeniero Juan
Carlos Arroyo, la cual fue marcada como Exhibit 1 conjunto en la cual le informa que el Sr.
Edwin Rivera continuaba haciendo comentarios  desagradables en el área de trabajo.  En
esa comunicación la demandante  le informa que los  comentarios los que hizo sobre unas
muchachas, diciendo que "estaban buenas", "que tenían un  "nalgaje", "unas caderotas".
Además expresó la demandante que comentó frente a ella que una muchacha que paso,
"tenía un G Tring y que tenía el Gtring metido por el Joyo".  La carta motivó que el
ingeniero Arroyo se reuniera con la demandante para discutir y objetar el contenido de la
comunicación.

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #3

13.  El 27 de febrero el ingeniero Juan Carlos Arroyo llamó  a la demandante

para entregarle una hoja de trámite y una carta ambas con fecha de 26 de febrero de

2004.  En la comunicación se le informaba a la demandante que a partir del 1 de marzo

de 2004 seria trasladada del Proyecto de Peninsula de Cantera al Proyecto de Mejoras al

Expreso Las Americas PR-18 interseccion con PR-22.  Exhibit 2 a-b.  La demandante no

estuvo de acuerdo con el traslado ya que no lo había solicitado y entendía que era

injustificado.

14.  Terminada la reunión con el ingeniero Arroyo la demandante le  solicitó

permiso para ir a Oficina de Derechos Civiles de la Autoridad de Carreteras. El ingeniero

Arroyo le denegó el permiso. La demandante, se vio forzada a llamar directamente a la

oficina de Derechos Civiles para que la autorizaran a visitarlos.

15.  En la Oficina de Derechos Civiles de la Autoridad de Carreteras la

demandante  fue entrevistada por la Sra. Brenda Gomila y  presentó una querella de

hostigamiento sexual en el empleo. La querella presentada fue marcada como Exhibit 2 de

la parte demandante.

16.  Una vez presentada la querella y habiendo informado la demandante la

notifocación de traslado se celebró una reunión para discutir el mismo.  En la reunión

participó personal de la Oficina de Ayuda al Empleado de Autoridad de Carreteras y

Transportación y personal de la Oficina de Personal de dicha Autoridad. Luego de la

reunión se  dejó sin efecto el traslado.

17.  Testificó además la demandante que  durante la reunión el  ingeniero

Figueroa le indicó que el señor Rivera Agosto se había querellado en su contra y que él

investigaría la querella. Nunca se le informó las causas o fundamentos de la querella en

su contra.

18.  La demandante, debido al ambiente en el lugar de empleo  se reportó por

enfermedad el 10 de marzo de 2004 hasta el 2 de abril de 2004, por recomendación de su

siquiatra.

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #4

19.   Cuando la demandante regreso a sus labores en abril del 2004, no le entregaron las llaves de la oficina del proyecto, lo que ocasionaba que tuviera que esperar a que otras personas llegaran para abrirle la puerta y conseguir el equipo.  Esto, a su vez ocasionaba que llegara tarde a los proyectos. Otro personal hasta transitorios tenían llaves del proyecto.  A la demandante además a diferencia de otros empleados  no se le preparaba sus nóminas,  no se le informaban de los cambios en las obras de construcción, tenía que recoger su  cheque en las oficinas centrales a diferencia de los otros empleados a los cuales se los llevaban directamente al proyecto.

20.   El 16 de agosto de 2004, la demandante envió una comunicación a la Lcda. Sonia Ramírez Sanoguet, Asesora Legal de la Autoridad de Carreteras, requiriendole  el rersultado de la querella por hostigamiento sexual que había presentado.  Dicha comunicación fue marcada como Exhibit 3 de la parte demandante.

21. Ante este patrón de hostigamiento y represalia la demandante presentó una querella en la Unidad Anti Discrimen del Departamento del Trabajo Federal (EEOC) el 17 de diciembre de 2004.  La Unidad Anti Discrimen le otorgó el Notice of Suit Rights, derecho a demandar, el 12 de septiembre de 2005.

22.   El 17 de diciembre de 2004, la demandante presentó una querella ante la Unidad Anti discrimen del Departamento del Trabajo.  La querella fue marcada como Exhibit 4 de la parte demandante.

23.   Al no encontrar una respuesta a la querella presentada  y de iniciarse un patrón de  acoso y represalia por parte de su supervisor el ingeniero Figueroa, luego de querellarse,  la demandante solicitó un traslado de proyecto.  El ingeniero Figueroa le solicitó a la demandante una carta explicativa de las razones para solicitar el traslado, este luego de leer  las razones expresadas por la demandante  para solicitar el traslado, se negó aceptar la misma. Exhibit 5 de la parte demandante Carta de 3 de enero de 2005.

24.   Así las cosas,  el 10 de febrero de 2005, la demandante le envió una nueva comunicación a su supervisor reafirmándose en su solicitud de traslado para evitar su deterioro emocional por las represalias en el lugar de trabajo. La demandante indicó en la comunicación que deseaba mitigar el ambiente hostil en el cual se encontraba. Exhibit 6

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #5

de la parte demandante.  Surge de dicha comunicación que la misma fue recibida  por el

ingeniero Figueroa su supervisor inmediato,  la Oficina de Asistencia legal y  la Lcda. Ana

Olivencia de la Oficina de Derechos Civiles de la Autoridad de Carreteras.

25.    Testificó ademas, la demandante que todas las situaciones en el area de

trabajo, le ocasionaron angustia por lo que  tuvo que recibir tratamiento siquiatrico con el

Dr. Carlos Caban.  Este le ordenó medicamentos y descanso.   No podia dormir, estaba

angustiada, lloraba constantemente, estaba desesperada,  comenzó a tener  problemas

en su matrimonio, los cuales terminaron en divorcio luego de dos años de separación.

Toda su vida  se vio afectada, sus hijas pequeñas, no las atendía como era requerido por

el estado emocional en el cual se encontraba.

26.    A preguntas de la parte demandada la demandante testificó que si bien es

cierto que no se le redujo su salario durante el proseso, no se le reclasificó ni se le otorgó

un aumento hasta el año 2012.

27.    La parte demandada presentó en evidencia una carta del 8 de junio de 2005,

dirigida a la demandante firmada por el Dr. Gabriel Alcaraz Emanuelli, entonces Secretario

de la Autoridad de Carreteras en la que le informa la acción tomada con el Sr. Edwin

Rivera Agosto.  Dicha carta fue marcada como el Exhibit 1 de la parte demandada.

28.    La prueba testifical de la parte demandada consistió en el testimonio de la

Lcda. Ana A. Olivencia, Directora de la Oficina de Derechos Civiles de la Autoridad de

Carreteras.  Esta testificó sobre el procedimiento para trabajar las querellas cuando acude

un empleado a querellarse.  Indicó que en el caso de la demandante ella citó a las partes

entrevistó a la demandante Sandra Rivera, al querellado Sr. Edwin Rivera y al Ing.

Figueroa. Se marcaron como Exhibit 6, de la parte demandante la carta de 27 de febrero

de 2004, citando a Edwin Rivera.  Exhibit 7,  la carta de 4 de marzo de 2004 de el Sr.

Edwin Rivera, solicitando el resultado de la investigación. La Lcda. Ana A. Olivencia,

corroboró el testimonió vertido por la demandante a los efectos de que una vez presentó la

querella en la Oficina de Derechos Civiles el ing. Jose Figueroa entregó a la demandante

una orden de traslado y que ella se vio forzada a intervenir y orientar al ingeniero que no

podía trasladar a la demandante.

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #6

29.    Testificó además la Lcda. Olivencia, que luego de concluida su investigación informal recomendó que se realizara una investigacion formal y se refirió el caso.  Exhibit 9 Carta de 4 de marzo de 2004 de la Lcda. Ana Olivencia al Ing. Jack T. Allison, Informe de investigacion de querella presentada por Sandra Rivera Ponce De León.  Además, se marco como exhibit 10 una comunicación del 28 de febrero de 2005, del Ingeniero José A. Figueroa dirigida a la Lcda. Olivencia en la que se le informa el resultado de la investigación realizada por el Ingeniero Juan Carlos Arroyo.

30.    La Lcda. Olivencia declaró además que recuerda que la demandante Sandra Rivera regresó a la Oficina de Derechos Civiles en otra ocasión a querellarse, por otra situación y admitió que el proceso de investigación fue uno tardío.

31.    La parte demandada realizó un ofrecimiento de prueba de varios documentos los cuales se marcaron como exhibits estos son:

Exhibit 1 Carta de 25 de febrero de 2004 del Ingeniero Juan Carlos Arroyo al Sr. Edwin rivera.

Exhibit 2 carta de 1 de marzo de 2004 del Sr. Edwin Rivera al Ing. Jose Jose Figueroa.

Exhibit 3, Memo de 25 de febrero de 2004.

Exhibit 4, Memo de 22 de febrero de 2005

Exhibit 5, Memo de 24 de febrero de 2005.

En virtud de las anteriores determinaciones de hechos formulamos las siguientes:

## CONCLUSIONES DE DERECHO

Es función ineludible de este Tribunal hacerle justicia a una ciudadana común y corriente ante el atropello que ha sido víctima por parte de su patrono.  Lo hacemos en nuestro ánimo justiciero y humanitario para  impartir vigencia a las garantías constitucionales establecidas en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, para la protección de los derechos individuales.

La Sección 1 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, prescribe en forma clara que no podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen, condición social, ideas políticas o religiosas. El hostigamiento sexual es contrario a los principios constitucionales antes esbozados.

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #7

Suárez Ruiz v. Figueroa Colón, 145 D.P.R. 142 (1998); Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643 (1994; Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117 (1990).

El Estado, en sus funciones ministeriales tiene que respetar las garantías que encarnan nuestros postulados constitucionales.

La Ley Núm. 17 de 22 de abril de 1988 (Ley 17), 29 L.P.R.A., §155 *et seq.*, conocida como la Ley de Hostigamiento Sexual en el Empleo,  declara y reitera que es "política pública del Estado Libre Asociado de Puerto Rico que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable".  Art. 1, 29 L.P.R.A., §155.

El Artículo 3 de la Ley 17, 29 L.P.R.A. §155b., define el hostigamiento sexual en el empleo como cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando ocurre una o más de las siguientes circunstancias:

    (a)    Someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

    (b)    Someterse o rechazar dicha conducta por una persona se convierte en fundamento para la toma de decisiones que afectan a esa persona.

    (c)    Esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.

Esta disposición contiene dos vertientes de hostigamiento sexual en el empleo. En su primera acepción, el patrono condiciona los beneficios y oportunidades del empleado a través del requerimiento de favores sexuales.  Es decir, el hostigamiento sexual equivalente o *quid pro quo* se produce cuando "el sometimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo." Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R., a la pág. 132.  El Hostigamiento sexual *quid pro quo* requiere que el demandante pruebe que efectivamente el sometimiento o rechazo de los avances sexuales de la solicitud de

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #8

favores sexuales haya sido la causa de una decisión adversa en torno a la condición o término del empleo.

En cambio, en su segunda modalidad, el hostigamiento sexual por ambiente hostil se produce cuando la conducta hostigante tiene el propósito de interferir irrazonablemente con el desempeño del trabajo de la parte hostigada y cuando la conducta crea un ambiente de trabajo intimidante, hostil u ofensivo.   No se requiere que la conducta exhibida sea explícitamente sexual o que se produzca un daño económico; basta con que el trato desigual u hostigamiento se destine al individuo únicamente por razón de su sexo. a la pág. 132; Degado Zayas v. Hosp.. Int. Med. Avanzada, 137 D.P.R., a la pág. 653.

Los Artículos 5 y 6 de la Ley 17, 29 L.P.R.A., §155d., 155e., responsabilizan al patrono de sus actos de hostigamiento sexual y los de sus empleados o agentes, si el patrono, sus agentes o supervisores sabían o debían saber de los actos de hostigamiento sexual.

En el presente caso opera el hostigamiento sexual en  modalidad de ambiente hostil.  La demandante presentó una querella ante su supervisor por  los comentarios indeseables de índole sexual de parte de un empleado quien a pesar de la querella no modificó su conducta.   Tampoco el patrono tomo medidas conducentes a corregir esa conducta.  De la prueba desfilada a la que el tribunal dio entera credibilidad surge que la funcionaria de la Oficina de Derechos Civiles, la Lcda. Ana Olivencia admitió que el informe de la investigación formal de  la querella fue uno tardío.  Surge de la prueba desfilada, a la que este tribunal dio entera credibilidad  que a raíz de la querella presentada el supervisor de la demandante el Ing. José Figueroa, comenzó un patrón de trato desigual y hostil hacía la demandante.  Este patrón consistió en no permitirle acceso a la oficina, que no se preparara su nómina, tuviera que recoger los cheques en las oficinas centrales a diferencia de otros empleados entre otras cosas. Este trato diferente y hostil ocasionó que la demandante tuviera que comenzar a recibir tratamiento y ayuda de un psiquiatra.

Sandra Rivera Ponce De León
vs.  Autoridad de Carreteras y Otros
Página #9

Ley Núm. 115 del 20 de diciembre de 1991, efectiva el 20 de diciembre de 1991.

Art. 2 Prohibición; violación; responsabilidad civil. (29 L.P.R.A. Sec. 194a) dispone que

(a) Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.

La Ley Núm. 115 es un estatuto de carácter reparador que prohíbe el discrimen contra un empleado por ofrecer o intentar ofrecer información o testimonio ante un foro legislativo, administrativo o judicial en Puerto Rico.  La ley provee para que todo empleado que fuere despedido, amenazado o que fuere objeto de discrimen en el empleo por motivo de represalia, pueda instar una acción civil en contra del patrono dentro de los 3 años próximos a la fecha en que ocurrió dicha violación. Cintrón Díaz v. Ritz Carlton,  2004 T.S.P.R. 82; Marín Kuilan v. Díaz Fastening System, 142 D.P.R. 499 (1997).

La Exposición de Motivos de la Ley Núm. 115 indica claramente que con esta ley se procura ratificar "la protección de los empleos de los trabajadores, tanto de las instrumentalidades del Estado Libre Asociado como del sector privado, cuando comparecen ante la Legislatura o alguna de sus comisiones y ante foros administrativos o judiciales para colaborar con dichos foros."

La Ley Núm. 115, supra define patrono como: "cualquier persona que tenga uno o más empleados." Art. 1, Ley Núm. 115, 29 L.P.R.A. 194.  Empleado, aparece definido de la siguiente manera: "cualquier persona que preste servicios a cambio de salarios, o cualquier tipo de remuneración, mediante un contrato oral, escrito, explícito o implícito."

Al examinar los remedios que concede la Ley Núm. 115-1991, 29 L.P.R.A. sec. 194 et. seq., a los empleados que demuestren que han sufrido represalias en su empleo. Encontramos que dicha ley, dispone que el empleado puede solicitar que "se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado".

En Carlos O. Cordero Jiménez v. Universidad de Puerto Rico, 2013 T.S.P.R. 25, el Tribunal Supremo examinó las disposiciones de la Ley Núm. 115, supra, y su aplicabilidad a los empleados gubernamentales. Además, en cuanto a los remedios que provee

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #10

dicha Ley, expresó lo siguiente: La ley provee un remedio de indemnización para el
empleado cuando su patrono incurre en alguna de las prácticas vedadas por ella. El
empleado podrá solicitar que se le compense por los daños reales sufridos, las angustias
mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y el
cobro de honorarios de abogado. [Citas omitidas].

El Código Civil de Puerto Rico, Artículos 1802 y 1803 así como su jurisprudencia
interpretativa disponen lo relativo a la culpa y negligencia.  A esos efectos:

El Artículo 1802 [31 LPRA, Sec. 5141], dispone que:

El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está
obligado a reparar el daño causado.  La imprudencia concurrente del perjudicado no
exime de responsabilidad, pero conlleva la reducción de la indemnización.

Así mismo, dispone el Artículo 1803 [31 LPRA, Sec. 5142, lo siguiente:

La obligación que impone la sección anterior es exigible, no sólo por los actos u omisiones
propios, sino por los de aquellas personas de quienes se debe responder.

Todo hecho ilícito del hombre que cause daño a otro, realizado intencional o
negligente, es fuente de obligación que justifica la concesión de todos los daños y
perjuicios realmente sufridos, bien en forma inmediata o directa, o bien en forma mediata
o indirecta o que posiblemente se deriven del hecho lesivo. Concepción v A.F.F., 92
D.P.R. 488.

Daño es todo aquel menoscabo material o moral que sufre una persona ya en sus
bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención
a una norma jurídica y por el cual ha de responder otra. Santini Rivera et al. V. Serv. Air.
Inc., RE 93-232 (09/12/94).

La necesidad de una convivencia social ordenada impone un deber general de
corrección y prudencia en relación con los demás ciudadanos, y el acto es ilícito en
sentido extracontractual cuando viola los deberes generales de corrección o conducta
correcta; deberes que no están escritos en los códigos pero que representan el
presupuesto mínimo sobreentendido del orden de la vida social. Nancy Toro Aponte v.
E.L.A., 97 JTS 18.

La culpa requiere un acto positivo que causa un daño a otra persona; la negligencia
supone una omisión que produce el daño.  Ninguna requiere intención nociva. El concepto

Sandra Rivera Ponce De Léon
vs. Autoridad de Carreteras y Otros
Página #11

de culpa es tan amplio y abarcador como suele ser la conducta humana. La culpa o negligencia es la falta del debido cuidado, que a su vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Nancy Toro Aponte v. E.L.A., supra.

El que exista un nexo causal entre el daño y la acción u omisión de otra persona, puede configurarse de dos maneras. Esto es, a través de un acto voluntario e intencional de la persona contra quien se reclama, o por una omisión negligente de esta persona al dejar de prever lo que un hombre prudente y razonable hubiere previsto en las mismas circunstancias. Sociedad v. González Padín, 117 DPR 94 (1986).

Si en alguna forma, por acción u omisión, los demandados actuaron con culpa o negligencia, bien directamente o bien a través de sus dependientes o empleados, ellos responderían del daño causado. Viuda de Maldonado v Méndez, 88 DPR. 263 (1963).

En el presente caso a la luz de la prueba desfilada el patrono fue negligente  y como consecuencia de sus actos la demandante sufrió daños, sufrimientos y angustias mentales. En ese sentido la prueba también fue clara y convincente  La demandante según el testimonio vertido al que el Tribunal le dio entera credibilidad, fue objeto de hostigamiento sexual y represalias en su empleo por lo que se deprimió, no podía dormir, fue necesario que recibiera ayuda profesional y medicamentos. Su vida se vio afectada, no solamente en el nivel laboral, sino también en el nivel matrimonial y familiar.

La prueba de la parte demandante demostró sin lugar a dudas que ésta quedó afectada en su salud, bienestar y felicidad. García vs. Shiley Caribbean, 122 DPR 193 (1988); Moa vs. ELA, 100 DPR 173 (1972).

Sandra Rivera Ponce De Léon
vs.  Autoridad de Carreteras y Otros
Página #12

## SENTENCIA

Examinadas las determinaciones de hechos y las conclusiones de derecho, el Tribunal declara **CON LUGAR** la demanda.  En su consecuencia condena a la Autoridad de Carreteras  a pagar a la parte demandante, Sandra Rivera Ponce de León, la suma de $70.000.00 en concepto de sufrimientos y angustias mentales, más $5,000.00 por costas, gastos y honorarios de abogado.

REGÍSTRESE Y NOTIFÍQUESE.

En San Juan, Puerto Rico, a 7 de febrero de 2014.

KATHERYNE D. SILVESTRY
JUEZA SUPERIOR

CERTIFICO:
Lic. Rebecca Rivera Torres
Secretaria Regional

Por  SONIA N. ORTIZ RODRIGUEZ
Secretaria Auxiliar

Gobierno de Puerto Rico
DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS (DTOP)
Y SUS AGENCIAS ADSCRITAS

Política Administrativa
CONTRA EL HOSTIGAMIENTO SEXUAL

La Ley Núm. 17 del 22 de abril de 1988 prohíbe el hostigamiento sexual en el empleo.

El DTOP y sus agencias adscritas prohíben, terminantemente, el hostigamiento sexual, como parte de su política administrativa sobre igualdad de oportunidad en el empleo.

Por hostigamiento sexual en el empleo se entiende cualquier tipo de acercamiento sexual no deseado, requerimiento no deseado de favores sexuales y cualquier conducta no deseada de naturaleza sexual, ya sea verbal o física, o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:

- el someterse a dicha conducta se convierte en forma implícita o explícita en un término o condición de empleo de una persona;

- el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo que afecta a esa persona;

- esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona, o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.

Como Secretario de Transportación y Obras Públicas, exigiré el cumplimiento estricto de esta política. Actuaré enérgicamente con la aplicación de las medidas correctivas que correspondan a cualquier miembro de la gerencia, supervisor, empleado o terceras personas, incluyendo visitantes, que en su proceder o conducta incurran en violación a esta política administrativa.

El hostigamiento sexual es incompatible con un ambiente de trabajo adecuado, toda vez que crea unas condiciones de trabajo intolerables, lo que afecta adversamente la moral y productividad de los empleados. Es obvio que este tipo de conducta puede afectar, significativamente, la capacidad de esta Agencia para llevar a cabo su función.

Estamos comprometidos firmemente en mantener un lugar de trabajo libre de hostigamiento sexual. Esperamos pues, con la participación de todos, darle fiel cumplimiento a esta política y erradicar así el hostigamiento sexual en el DTOP y sus agencias adscritas.

Para cualquier comunicación sobre este asunto puede dirigirse a la Oficina de Derechos Civiles, ubicada en el Centro Gubernamental Roberto Sánchez Vilella, Edificio Sur, Piso 16, Santurce, Puerto Rico; con dirección postal PO Box 42007, San Juan, Puerto Rico 00940-2007 / teléfonos (787) 729-1562 o 721-8787, ext. 1740 o 1742, fax (787)721-2621.

Ing. Carlos M. Contreras Aponte
Secretario

(Rev. 1/17)

RECEIVED

2023 JAN 19  PM 2 16

Sandra Rivera
HC 3 Box 12465
Carolina PR 00987

RDC 99

00918

UNITED STATES
POSTAL SERVICE®

U.S. POSTAGE PAID
FCM LETTER
CAROLINA, PR
00983
JAN 17, 23
AMOUNT
$1.32
R2305K141505-17

Clerk's Office
United States District court
Room 150 Federal Building
San Juan, Puerto Rico  00918-1767