# **Volume I**

## **PREPA Demonstrative No. 1 – Form of Bonds**

**issue revenue bonds.**

for the issuance from time to time of revenue bonds on a parity with the bonds issued initially under the provisions of this Agreement for the purpose of paying all or any part of the cost of any Improvements (as defined herein) ; and

WHEREAS, the Authority has determined that the coupon bonds to be issued hereunder and the interest coupons to be attached thereto, the registered bonds without coupons to be issued hereunder and the certificate of authentication by the Trustee to be endorsed on all such bonds shall be, respectively, substantially in the following forms, with such variations, omissions and insertions as are required or permitted by this Agreement :

**Form of coupon bonds.**

[FORM OF COUPON BONDS]

No _____                                              $_____

UNITED STATES OF AMERICA

PUERTO RICO ELECTRIC POWER AUTHORITY

POWER REVENUE BOND, SERIES…….

Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the bearer on the 1st day of _____, ___ (or earlier as herein-after referred to), upon the presentation and surrender hereof, the principal sum of_____ THOUSAND DOLLARS and to pay, solely from said special fund, interest thereon from the date hereof at the rate of _____ per centum (____%) per annum until payment of said principal sum, such interest to the maturity hereof being payable semi-annually on the 1st days of January and July in each year upon the presentation and surrender of the coupons representing such interest as the same respectively become due. Both the principal of and the interest on this bond are payable in any coin or currency of the United States of America which on the respective dates of payment thereof is legal tender for the payment of public and private debts.

The principal of this bond and the interest hereon are payable at the principal office of_____, in the _____, or at the principal office of _____, in the Borough of Manhattan, City and State of New York, at the option of the holder, or at such other office or agency of the Authority maintained for that purpose as the Authority shall

4

determine.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of revenue bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series............................", dated as of the 1st day of...........,_____.....................", consisting of bonds maturing in annual installments on the 1st day of in          the          years _____ to ................................... , inclusive (herein called the "serial bonds"), and of bonds maturing on the 1st day of and          the 1st day of ................................... , _____ (herein collectively called the "term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed under the provisions of the 1947 Indenture (hereinafter mentioned) and the Agreement (hereinafter mentioned), being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and First National City Bank, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder

5

hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the conservation, repair, maintenance and operation of the System and for the payment of the principal of and the interest on the 1947 Indenture Bonds and the bonds as the same become due and payable, including reserves for such purposes. The 1947 Indenture provides for the deposit to the credit of a special fund designated "Water Resources Authority Renewal and Replacement Fund" (herein called the "Renewal and Replacement Fund") of the revenues of the System, to the extent required, over and above such expenses of conservation, repair, maintenance and operation and the amounts required to be deposited to the credit of the Puerto Rico Water Resources Authority Electric Revenue Bonds Sinking Fund and the Puerto Rico Water Resources Authority General Reserve Fund under the 1947 Indenture, and the Agreement provides for the deposit to the credit of the Renewal and Replacement Fund of sufficient funds to provide for the payments from said Fund to the special fund created under the Agreement designated "Puerto Rico Water Resources Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund"). The Agreement also provides for the payment into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Renewal and Replacement Fund to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The Authority has heretofore issued under the provisions of the trust indenture, dated as of the first day of January, 1947 (such indenture as amended being herein called the "1947 Indenture"),

Puerto Rico Water Resources Authority Electric Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1947 Indenture, called the "1947 Indenture Bonds"). Until all of the 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the release of the 1947 Indenture, the revenues of the System, over and above the expenses of conservation, repair, maintenance and operation thereof, are pledged to the extent required to the payment of the principal of and the interest on the outstanding 1947 Indenture Bonds.

The bonds are issuable as coupon bonds and as registered bonds without coupons, in such denominations as the Authority may by resolution determine. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, registered bonds without coupons may be exchanged for an equal aggregate principal amount of coupon bonds of the same series and maturity, bearing interest at the same rate and having attached thereto coupons representing all unpaid interest due or to become due thereon, or of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate, and coupon bonds with all coupons appertaining thereto representing all unpaid interest due or to become due thereon may in like manner be exchanged for an equal aggregate principal amount of registered bonds without coupons of the same series and maturity, of authorized denominations and bearing interest at the same rate.

[Here insert in the bonds of each Series the terms of redemption applicable to the bonds of such Series.]

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by publication and otherwise as provided in the Agreement, and shall be made in the

manner and under the terms and conditions provided in the Agreement. On the date designated for redemption, notice having been published as provided in the Agreement, the bonds or portions of registered bonds without coupons so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee or by the paying agents, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, the coupons for any such interest payable subsequent to the redemption date shall be void, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the holders or registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee or by the paying agents.

The holder of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

As declared by the Authority Act, this bond shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the

8

issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to [be signed by] [bear the facsimile signature of] the Executive Director of the Authority and to [be signed by] [bear the facsimile signature of] the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, and the attached interest coupons to bear the facsimile signature of said Executive Director, all as of the 1st day of ............................................... , _____ .

[Facsimile of corporate seal]

PUERTO RICO ELECTRIC
POWER AUTHORITY

By .............................................
Executive Director

Secretary

**Form of coupons.**                               [FORM OF COUPONS]

*No*_____

*$*_____

On ............................ 1, 19 ........... , Puerto Rico Electric Power Authority will pay to bearer (unless the bond mentioned below shall previously have become payable as provided in the Agreement referred to in said bond and provision for payment thereof shall have been duly made) at the principal office of, in the                       , ...............................................,or at the principal office of    , ...............................................in the Borough of Manhattan, City and State of New York, at the option of the bearer, or at such other office or agency of the Authority maintained for that purpose as the Authority shall determine upon the presentation and surrender hereof, the sum of............................Dollars in any coin or currency of the United States of America which at the time of payment is legal tender for the payment of public and private debts, solely from the special fund referred to in, and for the semiannual interest then due upon, its

# PREPA Demonstrative No. 2 – Words of Agreement Clause

**by Trustee.**

Agreement and in evidence thereof has joined in the execution hereof;

**Pledge of revenues of the System**

Now, THEREFORE, THIS AGREEMENT WITNESSETH, that in consideration of the premises, of the acceptance by the Trustee of the trusts hereby created, and of the purchase and acceptance of the bonds by the holders thereof, and also for and in consideration of the sum of One Dollar to the Authority in hand paid by the Trustee at or before the execution and delivery of this Agreement, the receipt of which is hereby acknowledged, and for the purpose of fixing and declaring the terms and conditions upon which the bonds are to be issued, executed, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport and effect, and in order to secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority has executed and delivered this Agreement and has pledged and does hereby pledge to the Trustee the revenues of the System, subject to the pledge of such revenues to the payment of the principal of and the interest on the 1947 Indenture Bonds (hereinafter mentioned), and other moneys to the extent provided in this Agreement as security for the payment of the bonds and the interest and the redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in

**Agreement of parties.**

connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders of the bonds issued and to be issued under this Agreement, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issue, sale or negotiation thereof or otherwise, as follows:

ARTICLE I.
DEFINITIONS.

SECTION 101. In addition to words and terms elsewhere defined in this Agreement, the following words and terms shall have the following meanings, unless some other meaning is plainly intended:

**Accreted Value.**

The term "Accreted Value" shall mean with respect to any Capital Appreciation Bonds (i) as of any Valuation Date, the amount set forth for such date in the resolution authorizing such Capital Appreciation Bonds and (ii) as of any date other than a Valuation Date, the sum of (a) the Accreted Value on the preceding Valuation

13

# **PREPA Demonstrative No. 3 – Section 507 Pledge Language**

the requirement therefor shall nevertheless be cumulative and the amount of any such deficiency in any such fiscal year shall be added to the amount otherwise required to be deposited in each fiscal year thereafter until such time as such deficiency shall have been made up, unless such requirement shall have been modified by the Consulting Engineers in writing, a signed copy of such modification to be filed with the Authority.

Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a), (b) and (c) above shall be transferred to the Renewal and Replacement Fund. After the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, any balance remaining after making the deposits under clauses (a) through (h) above may be used for any lawful purpose of the Authority.

The moneys in the Sinking Fund shall be held by the Trustee in trust, and the moneys in the Reserve Maintenance Fund, the Self-insurance Fund and the Capital Improvement Fund shall be held by the Authority in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Funds and, pending such application, shall be subject to a lien and charge in favor of the holders of the bonds issued and outstanding under this Agreement and for the further security of such holders until paid out or transferred as herein provided. The moneys in each account in the Subordinate Obligations Fund shall be held by the Authority (or a Depositary) in trust, separate and apart from all other funds of the Authority, and shall be applied as hereinafter provided with respect to such Fund and, pending such application, shall be subject to a lien and charge in favor of the holders of the Subordinate Obligations incurred in the manner provided under this Agreement and for the further security of such holders until paid out or transferred as herein provided. The Authority (or such Depositary) may establish one or more accounts within the Subordinate Obligations Fund corresponding to the source of moneys or particular Subordinate Obligations for each deposit made into said Fund so that the Authority (and such Depositary) may ascertain the source and date of deposit of the moneys in each such account.

**Disposition of balances in *1947* Indenture funds and accounts.**

SECTION 508. At such time as the outstanding 1947 Indenture Bonds shall be paid or provision shall be made for their payment and the Trustee under the 1947 Indenture shall have released the 1947 Indenture, all moneys (other than moneys held for the redemption or payment of bonds and coupons), including any obligations purchased as an investment of such moneys, then held for the credit of the special funds and accounts created under the provisions of the 1947 Indenture shall be withdrawn and deposited to the credit of the special

## PREPA Demonstrative No. 4 – Article V Payment Language

charges the Authority shall cause certified copies thereof to be filed with the Trustee.

In the event that the Authority shall fail to adjust the schedule of rates and charges in accordance with the provisions of this Section, the Trustee, without regard to whether an event of default, as defined in Article VIII of this Agreement, shall have occurred, shall, upon the request of the holders of not less than ten per centum (10%) in principal amount of all bonds then outstanding and upon being indemnified to its satisfaction, institute and prosecute in a court of competent jurisdiction an appropriate suit, action or proceeding to compel the Authority to adjust such schedule in accordance with the requirements of this Section, and the Authority covenants that it will adopt and charge rates and charges in compliance with any judgment, order or decree entered in any such suit, action or proceeding.

**General Fund.**     SECTION 503. A special fund is hereby created and designated the "Puerto Rico Electric Power Authority General Fund" (herein sometimes called the "General Fund"). The Authority covenants that, after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, all Revenues, other than income from investments made under the provisions of this Agreement, will be deposited as received in the name of the Authority with a qualified depositary or depositaries to the credit of the General Fund and applied in accordance with the provisions of this Article.

**Annual Budget.**     SECTION 504. The Authority covenants that on or before the 15th day of May in each year the Board will cause to be prepared and will adopt and file with the Secretary, with the Trustee and with the Consulting Engineers a proposed budget of Current Expenses and of Capital Expenditures for the ensuing fiscal year.

The Authority further covenants that such proposed budget of Current Expenses will be prepared in such manner as to segregate, in so far as advisable, the accounts in respect of the different classes of operations, projects, undertakings and activities of the Authority and will be prepared on the basis of monthly requirements so that it will be possible to determine from the budget the Current Expenses for each month during the fiscal year, that it will comply with any reasonable request of the Consulting Engineers as to the classifications in which such budget shall be prepared, and that such proposed budget of Capital Expenditures will show separately (a) so long as any 1947 Indenture Bonds are outstanding, the amount to be expended during such fiscal year from moneys deposited or transferred to the credit of the Renewal and Replacement Fund, including a separate statement as to the amount to be withdrawn from said Fund under the provisions of Section 507 of this Agreement, (b) the amount to be expended during such fiscal year from moneys

**Application of moneys in General Fund.** [Note: Bracketed sentence beginning with "On each Construction Fund Replenishment Date" only survives, if at all, pursuant to the conditional and limited survival provisions of Section 2(a) of the Sixteenth Supplemental Agreement.]

SECTION 505. The Authority covenants that moneys in the General Fund will be used first for the payment of the Current Expenses of the System, that such expenses will not exceed an amount which is reasonable and necessary for maintaining, repairing and operating the System in an efficient and economical manner, and that the total amount of Current Expenses in any fiscal year will not exceed the amount provided therefor in the Annual Budget for such fiscal year or any amendment thereof or supplement thereto unless such expenses shall be required by conditions beyond the control of the Authority happening during such fiscal year and which could not reasonably have been contemplated at the time of the adoption of the Annual Budget. If at any time the total amount theretofore expended during any fiscal year for Current Expenses shall exceed the total amount provided in the Annual Budget for Current Expenses for such fiscal year, the Authority covenants that it will report in writing the amount of such excess and the reason or reasons therefor to the Consulting Engineers and to the Trustee as soon as practicable but not later than the last day of the sixth month following the month in which such excess shall have occurred.

[Note: Bracketed sentence beginning with "On each Construction Fund Replenishment Date" only survives, if at all, pursuant to the conditional and limited survival provisions of Section 2(a) of the Sixteenth Supplemental Agreement.]

[On each Construction Fund Replenishment Date, the Authority shall apply moneys credited to the General Fund to satisfy its replenishment obligation under Section 406 prior to using such moneys for the payment of Current Expenses. Notwithstanding anything in this Agreement to the contrary, after the Amendment Period, the obligation to replenish the Construction Fund in accordance with Section 406 shall be junior and subject to the obligation to pay Current Expenses in accordance with this Section 505 and to transfer moneys from the General Fund to the Revenue Fund in accordance with Section 506 of this Agreement until the bonds are paid or deemed paid in full under the provisions of this Agreement.]

shall transfer, on or before the 15th day of each month, from the General Fund to the credit of the Revenue Fund an amount equal to the amount of all moneys held for the credit of the General Fund on the last day of the preceding month less such amount to be held as a reserve for Current Expenses as the Treasurer may determine, but not more than one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for the current fiscal year, such transfer to be made on the books of the Authority as of the close of the preceding month. The Authority covenants that all moneys to the credit of the Revenue Fund will be applied to the purposes and in the order set forth in this Article.

**Sinking Fund.**

SECTION 507. A special fund is hereby created and designated the "Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund" (herein sometimes called the "Sinking Fund"). There are hereby created three separate accounts in the Sinking Fund designated "Bond Service Account", "Reserve Account" and "Redemption Account", respectively. Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Reserve Maintenance Fund" (herein sometimes called the "Reserve Maintenance Fund"). Two other special funds are hereby created and designated "Puerto Rico Electric Power Authority Self-insurance Fund" (herein some times called the "Self-insurance Fund") and "Puerto Rico Electric Power Authority Capital Improvement Fund" (herein sometimes called the "Capital Improvement Fund"). Another special fund is hereby created and designated "Puerto Rico Electric Power Authority Subordinate Obligations Fund" (herein some times called the "Subordinate Obligations Fund"). On or before the last day of the month during which the first Series of bonds shall be issued under the provisions of Section 208 of this Agreement and on or before the 25th day of each month thereafter, (i) until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, it shall be the duty of the Executive Director or any officer or employee of the Authority designated by him for such purpose to withdraw from the Renewal and Replacement Fund, and (ii) after the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture it shall be the duty of the Treasurer to withdraw from the Revenue Fund, all of the moneys then held to the credit of such Fund (less any amount equal to the amount of Federal Subsidy Payments that have not been received as of the 25th of the month preceding the Interest Payment Date to which such Federal Subsidy Payments relate, which amount will be held in the Revenue Fund and (x) if the Federal Subsidy Payment has not been received by the Authority by such Interest Payment Date, transferred to the Bond Service Account on the Interest Payment Date and applied to the payment of interest on Bonds or (y) if the Federal Subsidy Payment has been received by the Authority on or before such Interest

**Bond Service Account, Reserve Account and Redemption Account.**

**Reserve Maintenance Fund.**

funds and accounts created under the provisions of this Agreement, as follows :

| 1947 Indenture | Agreement |
|---|---|
| Construction Fund | Construction Fund |
| General Fund | General Fund |
| Revenue Fund | Revenue Fund |
| Sinking Fund, including | Reserve Account in |
| Reserve Account | Sinking Fund |
| General Reserve Fund | General Fund |
| Renewal and Replacement Fund | General Fund |

At the same time the Authority shall withdraw all moneys then held to the credit of the Construction Fund revolving fund under the provisions of the 1947 Indenture and deposit such moneys to the credit of the Construction Fund under the provisions of this Agreement.

**Application of moneys in Bond Service Account.**

SECTION 509. The Trustee shall, on the business day immediately preceding each interest payment date, withdraw from the Bond Service Account and (a) remit by mail to each owner of registered bonds without coupons the amounts required for paying the interest on such bonds as such interest becomes due and payable and (b) set aside or deposit in trust with the Paying Agents the amounts required for paying the interest on the coupon bonds as such interest becomes due and payable and the principal of all serial bonds as such principal becomes due and payable.

Notwithstanding the foregoing, if principal and interest payments, or a portion thereof (other than any payments of the purchase price of bonds pursuant to a "put"), for particular bonds have been made on behalf of the Authority by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payments, amounts deposited in the Bond Service Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment.

**Application of moneys in Reserve Account.**

SECTION 510. Moneys held for the credit of the Reserve Account or amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall first be used for the purpose of paying interest on the bonds and maturing principal of the serial bonds whenever and to the extent that the moneys held for the credit of the Bond Service Account shall be insufficient for such purpose and thereafter for the purpose of making the deposits to the credit of the Redemption Account pursuant to the requirements of

Policy on deposit in the Reserve Account with moneys or a Reserve Account Letter of Credit, or a combination of such alternatives, or (iii) all or a portion of any Reserve Account Letter of Credit on deposit in the Reserve Account with moneys or a Reserve Account Insurance Policy, or a combination of such alternatives. Any moneys on deposit in the Reserve Account in substitution of which a Reserve Account Insurance Policy or Reserve Account Letter of Credit is deposited into the Reserve Account shall, to the extent not required to fund any deficiences in the amount then required to be on deposit in the Reserve Account, be released and immediately paid over to the Authority to be used by the Authority for any lawful purpose of the Authority. Prior to the expiration date of any Reserve Account Insurance Policy or Reserve Account Letter of Credit then on deposit to the credit of the Reserve Account, the Authority shall (x) cause the term of such Reserve Account Insurance Policy or Reserve Account Letter of Credit to be extended, (y) replace any such Reserve Account Insurance Policy with moneys (which may include, without limitation, moneys available under the Reserve Account Insurance Policy or from any other source available for such purpose) or a Reserve Account Letter of Credit, or a combination of such alternatives, or (z) replace any such Reserve Account Letter of Credit with moneys (which may include, without limitation, moneys available under the Reserve Account Letter of Credit or from any other source available for such purpose) or a Reserve Account Insurance Policy, or a combination of such alternatives; provided that, in the event the Authority has not extended or replaced the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit by the fifth (5th) business day prior to the date of expiration, the expiring Reserve Account Insurance Policy or Reserve Account Letter of Credit shall, on such date, be drawn upon to fund the Reserve Account. For purposes of this Agreement, other than Article VI hereof, moneys for deposit to, or held for the credit of, the Reserve Account shall include amounts available under any Reserve Account Insurance Policy or Reserve Account Letter of Credit on deposit in the Reserve Account.

**Application of moneys in Redemption Account.**         SECTION 511. Moneys held for the credit of the Redemption Account shall be applied to the retirement of bonds issued under the provisions of this Agreement as follows:

**Purchase of bonds.**         (a) Subject to the provisions of paragraph (c) of this Section, the Trustee shall endeavor to purchase bonds or portions of bonds secured hereby and then outstanding, whether or not such bonds or portions shall then be subject to redemption, at the most advantageous price obtainable with reasonable diligence, such price not to exceed the principal of such bonds plus the amount of the premium, if any, which would be payable on the next redemption date to the holders

*fourth,* after the retirement of all term bonds, any balance still remaining shall be applied to the retirement of the serial bonds of each Series in proportion to the aggregate principal amount of the serial bonds of each such Series originally issued under the provisions of this Agreement.

Until the outstanding 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, the Authority shall pay from the Renewal and Replacement Fund all expenses in connection with any such purchase or such redemption ; thereafter all such expenses shall be paid from the Revenue Fund.

Notwithstanding the foregoing, if amounts applied to the retirement of bonds that would have been applied from the Redemption Account are paid instead by a credit or liquidity facility issuer or other entity insuring, guaranteeing or providing for said payment, amounts deposited in the Redemption Account and allocable to said payments for said bonds shall be paid, to the extent required under any agreement, to the credit or liquidity facility issuer or entity having theretofore made said corresponding payment.

**Use of moneys in Reserve Maintenance Fund.**

SECTION 512. Except as hereinafter provided in this Section and in Section 707 of this Agreement, moneys held for the credit of the Reserve Maintenance Fund shall be disbursed only for the purpose of paying the cost of unusual or extraordinary maintenance or repairs, maintenance or repairs not recurring annually and renewals and replacements, including major items of equipment. Such disbursements shall be made in accordance with the provisions of Section 402 of this Agreement for payments from the Construction Fund.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account shall be insufficient for the purpose of paying the interest on all bonds and the principal of the serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund to the credit of the Bond Service Account an amount sufficient to make up any such deficiency. If at any time the moneys held for the credit of the Redemption Account and the Reserve Account shall be insufficient for the purpose of providing funds for the retirement of term bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Reserve Maintenance Fund an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement. Any moneys so transferred from the Reserve Maintenance Fund shall be restored by

the Authority from available moneys in the Revenue Fund, subject to the same conditions as are prescribed for deposits to the credit of the Reserve Maintenance Fund under the provisions of Section 507 of this Agreement.

SECTION 512A. Except as hereinafter provided in the following two paragraphs and in Section 707 of this Agreement, moneys held for the credit of the Self-insurance Fund (1) shall be disbursed in the manner provided by Section 402 of this Agreement for disbursements from the Construction Fund only for the purpose of paying the cost of repairing, replacing or reconstructing any property damaged or destroyed from or extraordinary expenses incurred as a result of a cause which is not covered by insurance under the provisions of said Section 707 or (2) shall be transferred to the Revenue Fund in an amount, approved by the Consulting Engineers, equal to the loss of income from the System as a result of a cause which is not covered by insurance under the provisions of said Section 707.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Section 512 of this Agreement) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Self-insurance Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

If the Authority shall have determined that all or any portion of the moneys held to the credit of the Self-insurance Fund is no longer needed for the purposes specified in the second preceding paragraph, the Authority may withdraw an amount equal to such portion from the Self-insurance Fund and transfer such amount to the credit of the Bond Service Account; provided, however, that no such

transfer shall be made prior to the time that the Consulting Engineers shall have approved such transfer in writing.

SECTION 512B. Moneys held for the credit of the Capital Improvement Fund shall be disbursed in the manner provided by Section 402 of this Agreement only for paying the cost of anticipated extensions and Improvements of the System the cost of which has not otherwise been provided for from the proceeds of bonds issued under the provisions of this Agreement.

If at any time moneys held for the credit of the Bond Service Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Bond Service Account pursuant to the provisions of the first sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of paying the interest on all bonds and the principal of all serial bonds as such interest and principal become due and payable, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Bond Service Account an amount sufficient to make up such deficiency. If at any time moneys held for the credit of the Redemption Account and the Reserve Account (including moneys transferred from the Reserve Maintenance Fund or the Self-insurance Fund to the credit of the Redemption Account pursuant to the provisions of the second sentence of the second paragraph of Sections 512 and 512A of this Agreement, respectively) shall be insufficient for the purpose of providing funds for the retirement of bonds to the extent of the Amortization Requirements therefor at the end of any fiscal year, then the Authority shall transfer from any moneys held for the credit of the Capital Improvement Fund to the credit of the Redemption Account an amount sufficient to make up any such deficiency; provided, however, that no such transfer shall be made unless the moneys then held for the credit of the Bond Service Account are at least equal to the maximum requirement therefor under clause (a) of Section 507 of this Agreement.

**Application and pledge of moneys in Sinking Fund.**

SECTION 513. Subject to the terms and conditions set forth in this Agreement, moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be held in trust and disbursed by the Trustee for (a) the payment of interest on the bonds issued hereunder as such interest becomes due and payable, or (b) the payment of the principal of such bonds at their respective maturities, or (c) the payment of the purchase or redemption price of such bonds before their respective maturities, and such moneys are hereby pledged to and charged with the payments mentioned in this Section.

Whenever the total of the moneys held for the credit of the Bond Service Account, the Reserve Account and the Redemption Account shall be sufficient for paying the principal of and the

# PREPA Demonstrative No. 5 – Section 701

investments other than Investment Obligations that are authorized by said investment policy.

The Board shall receive at each regular meeting a detailed report from its Treasurer of the current portfolio of Investment Obligations, other securities and other moneys held to the credit of the Self-insurance Fund.

**Investments deemed to be part of Fund or Account for which purchased.**

Obligations and Time Deposits so purchased as an investment of moneys in any such Fund or Account shall be deemed at all times to be part of such Fund or Account. The interest accruing thereon and any profit realized from such investment shall be credited to such Fund or Account and any loss resulting from such investment shall be charged to such Fund or Account. The Trustee shall sell or present for payment or redemption any obligations so acquired whenever it shall be necessary so to do in order to provide moneys to meet any payment from such Fund or Account. Neither the Trustee nor the Authority nor any officer or agent of either thereof shall be liable or responsible for any loss resulting from any such investment.

ARTICLE VII.
PARTICULAR COVENANTS.

**Payment of principal, interest and premium.**

SECTION 701. The Authority covenants that it will promptly pay the principal of and the interest on each and every bond issued under the provisions of this Agreement at the places, on the dates and in the manner specified herein and in said bonds and in the coupons, if any, appertaining thereto, and any premium required for the retirement of said bonds by purchase or redemption, according to the true intent and meaning thereof. Until the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium are payable solely from moneys in the Renewal and Replacement Fund and said moneys are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. After the 1947 Indenture Bonds have been paid or provision has been made for their payment and the release of the 1947 Indenture, such principal, interest and premium will be payable solely from the Revenues and said Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified. Nothing in the bonds or in this Agreement shall be deemed to constitute the bonds a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions shall be liable for the payment of the principal of or the interest on the bonds.

**Pledge of revenues.**

**Bonds not general obligations of Commonwealth of Puerto Rico.**

**<u>PREPA Demonstrative No. 6 – Sections 804 and 805</u>**

outstanding (if not then due and payable) to be due and payable immediately, and upon such declaration the same shall become and be immediately due and payable, anything contained in the bonds or in this Agreement to the contrary notwithstanding; provided, however, that if at any time after the principal of the bonds shall have been so declared to be due and payable, and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, or before the completion of the enforcement of any other remedy under this Agreement, moneys shall have accumulated in the Sinking Fund sufficient to pay the principal of all matured bonds and all arrears of interest, if any, upon all the bonds then outstanding (except the principal of any bonds not then due and payable by their terms and the interest accrued on such bonds since the last interest payment date), and the charges, compensation, expenses, disbursements, advances and liabilities of the Trustee and all other amounts then payable by the Authority hereunder shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee, and every other default known to the Trustee in the observance or performance of any covenant, condition, agreement or provision contained in the bonds or in this Agreement (other than a default in the payment of the principal of such bonds then due and payable only because of a declaration under this Section) shall have been remedied to the satisfaction of the Trustee, then and in every such case the Trustee may, and upon the written request of the holders of not less than twenty per centum (20%) in aggregate principal amount of the bonds not then due and payable by their terms and then outstanding shall, by written notice to the Authority, rescind and annul such declaration and its consequences, but no such rescission or annulment shall extend to or affect any subsequent default or impair any right consequent thereon.

**Enforcement of remedies.**

SECTION 804. Upon the happening and continuance of any event of default specified in Section 802 of this Article, then and in every such case the Trustee may proceed, and upon the written request of the holders of not less than ten per centum (10%) in aggregate principal amount of the bonds then outstanding hereunder shall proceed, subject to the provisions of Section 902 of this Agreement, to protect and enforce its rights and the rights of the bondholders under applicable laws or under this Agreement by such suits, actions or special proceedings in equity or at law, or by proceedings in the office of any board or officer having jurisdiction, either for the appointment of a receiver as authorized by the Authority Act or for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights; provided, however, that the Trustee

shall not be required to proceed for the appointment of a receiver of the System unless it shall receive the written request of the holders of not less than twenty-five centum (25%) in principal amount of the bonds then outstanding under the provisions of this Agreement.

In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, due from the Authority for principal, interest or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, with interest on overdue payments of principal at the rate or rates of interest specified in such bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under such bonds, without prejudice to any other right or remedy of the Trustee or of the bondholders, and to recover and enforce any judgment or decree against the Authority, but solely as provided herein and in such bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect (but solely from moneys in the Sinking Fund and any other moneys available for such purpose) in any manner provided by law, the moneys adjudged or decreed to be payable.

**Pro rata application of funds.**

SECTION 805. Anything in this Agreement to the contrary notwithstanding, if at any time the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the bonds as the same shall become due and payable (either by their terms or by acceleration of maturities under the provisions of Section 803 of this Article), such moneys, together with any moneys then available or thereafter becoming available for such purpose, whether through the exercise of the remedies provided for in this Article or otherwise, shall be applied as follows :

(a) If the principal of all the bonds shall not have become or shall not have been declared due and payable, all such moneys shall be applied

*first:* to the payment to the persons entitled thereto of all installments of interest then due and payable in the order in which such installments became due and payable and, if the amount available shall not be sufficient to pay in full any particular installment, then to the payment, ratably, according to the amounts due on such installment, to the persons entitled thereto, without any discrimination or preference except as to any difference in the respective rates of interest specified in the bonds;

*second:* to the payment to the persons entitled thereto of the unpaid principal of any of the bonds which shall have become due

# **PREPA Demonstrative No. 7 – Opinion of Counsel**

# SIDLEY AUSTIN LLP

## SIDLEY

| | |
|---|---|
| SIDLEY AUSTIN LLP | |
| 787 SEVENTH AVENUE | |
| NEW YORK, NY 10019 | |
| (212) 839 5300 | |
| (212) 839 5599 FAX | |

| | | |
|---|---|---|
| BEIJING | HONG KONG | SHANGHAI |
| BOSTON | HOUSTON | SINGAPORE |
| BRUSSELS | LONDON | SYDNEY |
| CHICAGO | LOS ANGELES | TOKYO |
| DALLAS | NEW YORK | WASHINGTON, D.C. |
| FRANKFURT | PALO ALTO | |
| GENEVA | SAN FRANCISCO | |

FOUNDED 1866

August __, 2013

Puerto Rico Electric Power Authority
San Juan, Puerto Rico

Ladies and Gentlemen:

As bond counsel to the Authority (hereinafter mentioned), we have examined the Puerto Rico Electric Power Authority Act (Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended and re-enacted by Act No. 19, approved April 8, 1942, as amended) creating Puerto Rico Electric Power Authority (formerly called Puerto Rico Water Resources Authority and herein called the "Authority"), a governmental instrumentality of the Commonwealth of Puerto Rico, and also Act No. 111, approved May 6, 1941, as amended by Act No. 153, approved May 14, 1943 (said Acts No. 83, No. 19, No. 111 and No. 153, as amended, being herein collectively called the "Authority Act").

We have also examined certified copies of the proceedings of the Governing Board of the Authority in authorizing the execution and delivery of the Agreement hereinafter referred to and certified copies of the proceedings and other proofs submitted relative to the authorization, issuance and sale of

**$673,145,000**
**PUERTO RICO ELECTRIC POWER AUTHORITY**
**POWER REVENUE BONDS, SERIES 2013A**
**Dated the date hereof.**

Issued in such denominations, transferable and exchangeable, bearing interest at such rates and payable on such dates, maturing on July 1 in the years and in such principal amounts, and subject to redemption prior to maturity, all as set forth in the resolution of the Authority authorizing the issuance of said Series 2013A Bonds (the "Bonds").

We have also examined one of the Bonds as executed and authenticated.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.



August __, 2013
Page 2

From such examination, we are of the opinion that:

1.  The Authority Act is valid.

2.  Said proceedings have been validly and legally taken.

3.  The Bonds have been duly authorized and issued to provide funds for paying the cost of capital improvements to the electric power properties of the Authority (such properties, together with all improvements, renewals and replacements thereof and extensions and additions thereto, being herein called the "System"), making a deposit to the Reserve Account in the Puerto Rico Electric Power Authority Power Revenue Bonds Interest and Sinking Fund established under the Agreement (the "Sinking Fund"), and paying costs incident to the issuance of the Bonds.

4.  As authorized by the Authority Act and by said proceedings, a trust agreement, dated as of January 1, 1974, as amended (herein called the "Agreement"), has been duly executed by and between the Authority and U.S. Bank National Association, successor Trustee, which contains reasonable and sufficient covenants and provisions in accordance with law with respect to the custody and application of the proceeds of bonds issued thereunder, the collection and disposition of revenues, the maintenance, repair and operation of the System, the conservation and application of all funds, the safeguarding of moneys on hand or on deposit and the rights and remedies of the Trustee and the holders of all bonds issued thereunder.

5.  The Agreement provides for the issuance of additional Puerto Rico Electric Power Authority Power Revenue Bonds under the conditions and limitations therein set forth.

6.  The Bonds are valid and binding special obligations of the Authority payable solely from the Sinking Fund, to the credit of which Fund the Authority has covenanted to deposit a sufficient amount of revenues of the System, over and above the expenses of repair, maintenance and operation, to pay the principal of and interest on all bonds issued under the provisions of the Agreement (including the Bonds) as the same become due and payable and to create a reserve for such purpose, which Fund is pledged to and charged with the payment of the principal of and interest on such bonds (including the Bonds).

7.  The Agreement provides for the fixing and collecting by the Authority of rates and charges for the use of the services and facilities of the System sufficient for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on all bonds issued under the provisions of the Agreement (including the Bonds) as the same become due and payable, including a reserve for such purpose.



August __, 2013
Page 3

8.   The bonds issued under the provisions of the Agreement (including the Bonds) do not constitute a debt of the Commonwealth of Puerto Rico or of any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipality or other political subdivision is liable thereon, and such bonds (including the Bonds) are payable only out of the revenues of the System, to the extent provided in the Agreement.

9.   The Internal Revenue Code of 1986, as amended (the "Code"), includes requirements regarding the use, expenditure and investment of Bond proceeds and the timely payment of certain investment earnings to the Treasury of the United States, which must continue to be satisfied after the issuance of the Bonds in order that interest on the Bonds not be included in gross income for federal income tax purposes.  The Authority has covenanted to comply with the requirements of the Code in order to maintain the exclusion from gross income of interest on the Bonds for federal income tax purposes.  Under the provisions of the Acts of Congress now in force and under existing regulations, rulings and court decisions, and subject to continuing compliance with the covenant referred to above and requirements of the Code regarding the use, expenditure and investment of bond proceeds and the timely payment of certain investment earnings to the Treasury of the United States, interest on the Bonds is not includable in gross income for federal income tax purposes.  The failure to comply with such covenant and requirements may cause interest on the Bonds to be included in gross income for federal income tax purposes retroactive to their date of issuance.

10. Interest on the Bonds is not an item of tax preference for purposes of the federal individual or corporate alternative minimum tax.  Interest on the Bonds owned by a corporation will, however, be included in the calculation of such corporation's federal alternative minimum tax liability.  The Code contains other provisions that could result in tax consequences, upon which we express no opinion, as a result of ownership of the Bonds or the inclusion in certain computations (including, without limitation, those related to the corporate alternative minimum tax) of interest that is excluded from gross income.

11. Under the provisions of the Acts of Congress now in force, the Bonds and the interest thereon are exempt from state, Commonwealth of Puerto Rico and local income taxation.

We express no opinion as to the effect of any change to any document pertaining to the Bonds or of any action taken or not taken where such change is made or action is taken or not taken without our approval or in reliance upon the advice of counsel other than ourselves with respect to the exclusion from gross income of the interest on the Bonds for federal income tax purposes.  Other than as described herein, we have not addressed and we are not opining on the tax consequences to any investor of the investment in, the ownership or disposition of, or receipt of any interest on, the Bonds.



August __, 2013
Page 4


      The opinions expressed herein are based on an analysis of existing laws, regulations, rulings and court decisions.  Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law, regulation or ruling) after the date hereof.  We have not undertaken to determine, or to inform any person, whether such actions are taken or such events occur, and we have no obligation to update this opinion light of such actions or events.

                Respectfully submitted,


                [To be signed, "Sidley Austin LLP"]

## **PREPA Demonstrative No. 8 – Specimen Bond**

# EXHIBIT W

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R13A-1                                                                 $35,000,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 7 ¼% | 7/1/2030 | 74526Q A9 3 |

REGISTERED OWNER:     Cede & Co.

PRINCIPAL AMOUNT:     Thirty-Five Million and 00/100 Dollars

    Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing January 1, 2014, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R13A-2                                                                     $150,000,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 7% | 7/1/2033 | 74526Q A7 7 |

REGISTERED OWNER:    Cede & Co.

PRINCIPAL AMOUNT:    One Hundred Fifty Million and 00/100 Dollars

    Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing January 1, 2014, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R13A-3                                                                    $307,500,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 6 ¾% | 7/1/2036 | 74526Q A6 9 |

REGISTERED OWNER:      Cede & Co.

PRINCIPAL AMOUNT:      Three Hundred Seven Million Five Hundred Thousand and 00/100 Dollars

    Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing January 1, 2014, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R13A-4                                                                                        $50,000,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 7% | 7/1/2040 | 74526Q A8 5 |

REGISTERED OWNER:     Cede & Co.

PRINCIPAL AMOUNT:     Fifty Million and 00/100 Dollars

     Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing January 1, 2014, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

**UNLESS THIS BOND IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY BOND ISSUED IN CONNECTION THEREWITH IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.**

No. R13A-5                                                                $130,645,000

UNITED STATES OF AMERICA
COMMONWEALTH OF PUERTO RICO

PUERTO RICO ELECTRIC POWER AUTHORITY
Power Revenue Bond, Series 2013A

| Interest Rate | Maturity Date | CUSIP No. |
|---|---|---|
| 7% | 7/1/2043 | 74526Q A5 1 |

REGISTERED OWNER:      Cede & Co.

PRINCIPAL AMOUNT:      One Hundred Thirty Million Six Hundred Forty-five Thousand and 00/100 Dollars

    Puerto Rico Electric Power Authority, a body corporate and politic constituting a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (herein sometimes called the "Authority"), for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner mentioned above or registered assigns or legal representative, on the Maturity Date set forth above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Trustee (hereinafter mentioned), the Principal Amount set forth above in any coin or currency of the United States of America which on the date of payment thereof is legal tender for the payment of public and private debts, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor bonds, as defined in the Agreement hereinafter mentioned) is registered at the close of business on the June 15 or December 15 next preceding an interest payment date, by check mailed to the Registered Owner at his address as it appears on the bond registration books of the Authority, interest on said Principal Amount from the date hereof or from the January 1 or July 1 next preceding the date of authentication to which interest shall have been paid, unless such date of authentication is a January 1 or July 1, in which case, from such date, semi-annually on January 1 and July 1 in each year, commencing January 1, 2014, in like coin or currency, at the Interest Rate shown above until payment of said Principal Amount.

This bond shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions are liable for the payment of this bond or the interest hereon, but this bond shall be payable as to both principal and interest solely from the special fund provided therefor as hereinafter set forth.

This bond is one of a duly authorized series of bonds known as "Puerto Rico Electric Power Authority Power Revenue Bonds, Series 2013A", dated the date hereof, consisting of bonds maturing in annual installments on the 1st day of July in the years 2030 and 2043 and of bonds maturing on the 1st day of July, 2033, 2036 and 2040 (herein collectively called the "term bonds"), and issued for the purpose of paying the cost of acquiring or constructing capital improvements to the electric power properties of the Authority (the electric power properties owned and operated by the Authority as a single integrated system, together with all improvements, renewals and replacements thereof and extensions and additions thereto financed or refinanced under the provisions of the Agreement, being herein called the "System").

All of the bonds are issued under and pursuant to a trust agreement, as amended (said agreement, together with all agreements supplemental thereto as therein permitted, being herein called the "Agreement"), dated as of the 1st day of January, 1974, by and between the Authority and U.S. Bank National Association, in the Borough of Manhattan, City and State of New York (said banking association and any bank or trust company becoming successor trustee under the Agreement being herein called the "Trustee"), an executed counterpart of which Agreement is on file at the corporate trust office of the Trustee. Reference is hereby made to the Agreement for the provisions, among others, with respect to the custody and application of the proceeds of bonds issued under the Agreement, the collection and disposition of revenues, the fund charged with and pledged to the payment of the interest on and the principal of the bonds, the nature and extent of the security, the terms and conditions on which the bonds of each series are or may be issued, the rights, duties and obligations of the Authority and of the Trustee and the rights of the holders of the bonds, and, by the acceptance of this bond, the holder hereof assents to all of the provisions of the Agreement.

The Agreement provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional series of bonds (such bonds and the bonds of the series of which this is one being herein collectively called the "bonds").

This bond is issued and the Agreement was made and entered into under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including Act No. 83 of the Legislature of Puerto Rico, approved May 2, 1941, as amended, reenacted and supplemented (the "Authority Act"), and under and pursuant to resolutions duly adopted by the Authority.

The Agreement provides for the fixing, charging and collecting by the Authority of reasonable rates and charges for the use of the services and facilities furnished by the System sufficient to provide for the payment of the expenses of the Authority incurred in the repair, maintenance and operation of the System and for the payment of the principal of and the interest on the bonds as the same become due and payable, including reserves for such purposes. The Agreement provides for the creation of a special fund designated "Puerto Rico Electric Power

Authority Power Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit to the credit of the Sinking Fund of a sufficient amount of the revenues of the System over and above such expenses of repair, maintenance and operation, to pay the principal of and the interest on all bonds issued under the Agreement as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the interest on the bonds.

The bonds of this series are issuable as registered bonds without coupons in denominations of $5,000 or any multiple thereof. At the corporate trust office of the Trustee, in the manner and subject to the limitations and conditions provided in the Agreement and without cost except for any tax or other governmental charge, definitive bonds may be exchanged for an equal aggregate principal amount of bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The bonds of this series at the time outstanding may be redeemed prior to their respective maturities, at the option of the Authority, from any moneys which may be provided for that purpose and deposited with the Trustee on or before the date fixed for redemption, other than moneys deposited in the Sinking Fund in respect of an amortization requirement, either in whole, on any date not earlier than July 1, 2023, or in part, in such order of maturity as the Authority may direct, on any date not earlier than July 1, 2023, at the principal amount of the bonds to be redeemed, together with the interest accrued thereon to the date fixed for redemption; provided, however, that the term bonds maturing July 1, 2033, 2036 and 2040 may be redeemed in part, in order of maturity, from moneys in the Sinking Fund, at par and accrued interest without premium, beginning July 1, 2032, 2034 and 2039, respectively, and on each July 1 thereafter in the principal amount of the respective amortization requirements therefor set out in the resolution of the Authority authorizing the issuance of said bonds.

The moneys in the Sinking Fund available for the purchase or redemption of bonds shall be allocated to all series of bonds outstanding under the Agreement in the manner provided in the Agreement.

If less than all of the bonds of any one maturity of a series shall be called for redemption, the particular bonds or portions of registered bonds without coupons to be redeemed from such series and maturity shall be selected by the Trustee as provided in the Agreement.

Any such redemption, either in whole or in part, shall be made upon at least thirty (30) days' prior notice by mail and shall be made in the manner and under the terms and conditions provided in the Agreement. With respect to any notice of redemption of bonds of the series of which this is one at the option of the Authority, such notice may state that such redemption shall be conditional upon the receipt by the Trustee, on or prior to the date fixed for such redemption, of moneys sufficient to pay the principal of and interest on such bonds to be redeemed, and that if such moneys shall not have been so received, said notice shall be of no force and effect and the Authority shall not be required to redeem such bonds. In the event that such notice of redemption contains such a condition and such moneys are not so received, the redemption shall not be made and the Trustee shall within a reasonable time thereafter give notice, in the manner in which the notice of redemption was given, that such moneys were not so received.

On the date designated for redemption, notice having been given as provided in the Agreement, the bonds or portions thereof so called for redemption shall become and be due and payable at the redemption price provided for redemption of such bonds or such portions thereof on such date, and, if moneys for payment of the redemption price and the accrued interest are held by the Trustee, as provided in the Agreement, interest on such bonds or such portions thereof so called for redemption shall cease to accrue, such bonds or such portions thereof so called for redemption shall cease to be entitled to any benefit or security under the Agreement, and the registered owners thereof shall have no rights in respect of such bonds or such portions thereof so called for redemption except to receive payment of the redemption price thereof and the accrued interest so held by the Trustee. If a portion of this bond shall be called for redemption, a new bond or bonds of the same series and maturity in principal amount equal to the unredeemed portion of this bond will be issued to the registered owner upon the surrender thereof.

The owner of this bond shall have no right to enforce the provisions of the Agreement or to institute action to enforce the covenants therein, or to take any action with respect to any event of default under the Agreement, or to institute, appear in or defend any suit or other proceeding with respect thereto, except as provided in the Agreement.

In certain events, on the conditions, in the manner and with the effect set forth in the Agreement, the principal of all the bonds then outstanding under the Agreement may become or may be declared due and payable before the stated maturities thereof, together with the interest accrued thereon.

Modifications or alterations of the Agreement or of any agreement supplemental thereto may be made by the Authority and the Trustee only to the extent and in the circumstances permitted by the Agreement.

The transfer of this bond is registrable by the registered owner thereof in person or by his attorney or legal representative at the principal office of the Trustee but only in the manner and subject to the limitations and conditions provided in the Agreement and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Trustee shall authenticate and deliver in exchange for this bond a new definitive bond or bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.

As declared by the Authority Act, this bond, notwithstanding the provisions for registration of transfer stated herein and contained in the Agreement, shall at all times be, and shall be understood to be, a negotiable instrument for all purposes.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico and the rules and regulations of

4

the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the execution of the Agreement have happened, exist and have been performed as so required.

This bond shall not be valid or become obligatory for any purpose or be entitled to any benefit or security under the Agreement until it shall have been authenticated by the execution by the Trustee of the certificate of authentication endorsed hereon.



5

IN WITNESS WHEREOF, Puerto Rico Electric Power Authority has caused this bond to bear the facsimile signatures of the Executive Director and the Secretary of the Authority, and a facsimile of its corporate seal to be imprinted hereon, all as of the 21st day of August 2013.

PUERTO RICO ELECTRIC POWER
AUTHORITY

By: _____

Executive Director

By: _____

Secretary

6

## CERTIFICATE OF AUTHENTICATION

This is one of the bonds of the series designated therein and issued under the provisions of the within mentioned Agreement.

U.S. BANK NATIONAL ASSOCIATION, Trustee

By: _____
Authorized Officer

Date of authentication: 08/21/13

7

FORM OF ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto _____ [Please Print or Typewrite Name and Address of Transferee] the within bond, and all rights thereunder, and hereby irrevocably constitutes and appoints _____ attorney to register the transfer of the within bond on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____ Signature _____

NOTICE: The signature to this assignment must correspond with the name as it appears upon the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Signature Guaranteed by*:_____, New York, New York

*Such signature must be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in STAMP or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.