UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.,*

    Debtors.[1]

PROMESA
TITLE III

Case No. 17-BK-3283-LTS
(Jointly Administered)

---------------------------------------------------------------------x

DRIVETRAIN, LLC, in its capacity as the trustee of the
Commonwealth Avoidance Actions Trust,

    Plaintiff

v.

TRINITY SERVICES I, LLC, and TRINITY
SERVICES GROUP, INC.

    Defendants.

Adv. Proc. No.

---------------------------------------------------------------------x

### ADVERSARY COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. §§ 544, 547, 548, AND 550 AND PUERTO RICO LAW

Pursuant to Federal Rule of Bankruptcy Procedure 7001(1) made applicable to these Title

III cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act

---

[1]. The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK- 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK- 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

(48 U.S.C. § 2170) ("PROMESA"), and the *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, The Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [D.E. 19813 in Case No. 17-03283-LTS] (the "Confirmation Order"), Drivetrain, LLC ("Trustee" or "Plaintiff"), in its capacity as the trustee of the Commonwealth Avoidance Actions Trust (the "Avoidance Actions Trust") sues Trinity Services I, LLC and Trinity Services Group, Inc. (collectively, "Defendants"), and alleges as follows:

## NATURE OF PROCEEDING[2]

1. Plaintiff brings this action to avoid and recover transfers the Commonwealth made to the Defendants during a specified period prior to the Petition Date on the grounds that, among other things, such transfers were constructively fraudulent under the Bankruptcy Code and Puerto Rico law and preferential under the Bankruptcy Code.

2. For at least the last decade leading up to the Petition Date, the Commonwealth had been on the path to a financial crisis.

3. The Commonwealth sustained itself on credit for years prior to the Petition Date, on increasingly onerous terms, finally conceding its inability to pay its debts in June 2015.

4. For the same period, the value of the Commonwealth's mounting liabilities far exceeded its assets.

5. The Trustee seeks to avoid and recover transfers the Commonwealth made during this historically dire economic period in accordance with the provisions provided by PROMESA and the Bankruptcy Code.

---

[2] Capitalized terms in this section have the meaning ascribed to them below.

2

**CASE BACKGROUND**

6. On June 30, 2016, the President of the United States signed PROMESA into law. Titles III and VI of PROMESA provide for debt restructurings for Puerto Rico and its instrumentalities.

7. PROMESA established the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") to help Puerto Rico achieve fiscal responsibility and access to the capital markets.

8. PROMESA granted extensive authority to the Oversight Board, including the powers of a trustee under the Bankruptcy Code and the authority to pursue avoidance actions under sections 544, 545, 547, 548, and 553 of the Bankruptcy Code.

9. On May 3, 2017 (the "Petition Date"), the Oversight Board initiated a Title III debt adjustment proceeding on behalf of the Commonwealth of Puerto Rico.

10. On July 30, 2021, the Oversight Board filed its *Seventh Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 17628] and corresponding disclosure statement.

11. On January 14, 2022, after an amendment and a series of modifications, the Oversight Board filed the *Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (including all exhibits, the "Plan").

12. On January 18, 2022, the Court entered the Confirmation Order, which confirmed the Plan.

13. The Plan and Confirmation Order provided for the creation of the Avoidance Actions Trust to hold, manage, and administer the "Avoidance Actions Trust Assets" and distribute

any proceeds to the Avoidance Actions Trust Beneficiaries in accordance with the terms of this Trust Agreement, the Plan, and the Confirmation Order.

14. The Avoidance Actions Trust Assets included, without limitation, the claims against the Defendants.

15. On March 15, 2022 (the "Effective Date"), the Plan became effective and, in accordance with the effectiveness of the Plan, the transactions contemplated by the Plan were consummated, including the appointment of the Trustee to the Avoidance Actions Trust.

16. Pursuant to the Plan, the Avoidance Actions Trust Assets, including the claims against the Defendants, were transferred to the Avoidance Actions Trust.

17. The Trustee has conducted reasonable due diligence under the circumstances of the Debtors' Title III cases and based upon its analysis of the Debtors' records relating to transfers made to the Defendants during the Fraudulent Transfer Period.

## PARTIES

18. Pursuant to the Plan and Confirmation Order, the Trustee is authorized and empowered to investigate, pursue, file, and prosecute the claims against Defendants.

19. Upon information and belief, Defendant Trinity Services I, LLC is an entity that maintains its principal place of business at Agustin Stahl, Carr. 174 A-10, Bayamon, Puerto Rico, 00956.

20. Upon information and belief, Defendant Trinity Services Group, Inc. is an entity that maintains its principal place of business at Agustin Stahl, Carr. 174 A-10, Bayamon, Puerto Rico, 00956.

21. The Defendants have both conducted business with the Debtors and, on information and belief, have used their respective, separate names despite operating interchangeably with respect to the transfers and transactions at issue in this Complaint.

**JURISDICTION AND VENUE**

22. This is an adversary proceeding brought pursuant to Federal Rule of Bankruptcy Procedure 7001 and sections 105(a), 502, 544, 547, 548 and 550 of the Bankruptcy Code and Puerto Rico law to avoid transfers and recover funds for the Commonwealth.

23. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to section 306(a) of PROMESA. 48 U.S.C. § 2166(a).

24. Venue is proper in this district pursuant to section 307(a) of PROMESA. 48 U.S.C. § 2167(a).

**FACTUAL BACKGROUND**

25. On the Petition Date, the Oversight Board initiated a Title III debt adjustment proceeding on behalf of the Commonwealth. Shortly thereafter, the Oversight Board filed several other Title III cases on behalf of several Commonwealth government instrumentalities.

26. During the 90 days before the Petition Date (the "Preference Period"), the Commonwealth made certain transfers of interests in the Commonwealth's property to or for the benefit of the Defendants ("90-Day Transfers") in the aggregate amount of $5,453,229. A detailed listing of the 90-Day Transfers is attached as Exhibit A.

27. To the extent that the Commonwealth may have purported to enter into an agreement with Defendants to conduct business, and regardless of whether such agreement is properly reflected in the Commonwealth's books and records as related below, the Commonwealth made the 90-Day Transfers to Defendants following accrual of payment obligations under such purported agreement.

28. The Commonwealth's 90-Day Transfers to Defendants deviate from the Commonwealth's historical payment patterns to Defendants in the period preceding the 90-Day Transfers.

29. During the four years prior to the Petition Date (the "Paulian Fraudulent Transfer Period"), the Commonwealth made payments to Defendants in the aggregate amount of $84,192,212 ("4-Year Transfer(s)"). Certain of these payments (if any, the "2-Year Transfer(s)" and, together with the 4-Year Transfer(s), the "Transfers") may have occurred during the two years prior to the Petition Date (the "Code Fraudulent Transfer Period"). A detailed listing of the Transfers is attached to this Complaint as Exhibit B.

30. No registered contracts corresponding to the Transfers between the Commonwealth and Defendant Trinity Services Group, Inc. could be identified from the database maintained by the Office of the Comptroller. Accordingly, the Commonwealth's books and records maintained by its Office of the Comptroller do not contain any contracts evidencing that the Commonwealth received value in exchange for the Transfers, which is necessary to evidence the propriety of the Transfers.

31. With respect to Defendant Trinity Services I, LLC, upon information and belief, the value of the Transfers exceeded the value of the goods and/or services that it provided to the Commonwealth during the Paulian Fraudulent Transfer Period and under any registered contract.

32. The Commonwealth's books and records beginning at least as early as 2012 and continuing to the present, demonstrate that its liabilities have exceeded the value of assets in each fiscal year, and thus also at the time of the Transfers.

33. Likewise, the Commonwealth's books and records from at least as early as fiscal year 2012 to fiscal year 2017 demonstrate a consistent trend of mounting liabilities and dwindling assets, such that at no point during that period has the value of its assets exceeded its liabilities.

34. Additionally, the Commonwealth was not paying its debts as they came due during the Preference Period.

6

35. The Commonwealth defaulted on certain general obligations due July 1, 2016.

36. At all times since at least 2012, the Commonwealth has failed to appropriate sufficient funds for the operations of several of its instrumentalities and failed to make required deposits on certain pension obligations and pay guaranteed debt.

37. From and after 2012, the Commonwealth has issued General Obligation Bond debt, thereby incurring obligations that were beyond its ability to repay as they became due.

38. Likewise, the Commonwealth was unable to pay its debts as they came due at the time of the Transfers.

39. Beginning not later than 2012, commentators observed that Puerto Rico's debt service requirements were not sustainable, and not later than June of 2015 the Governor of Puerto Rico admitted this was the case.

40. The Commonwealth defaulted on certain general obligation debt in 2016 as it was unable to pay debts while delivering services at the level and quality required for the health, safety, and welfare of Puerto Rico.

41. During the course of this proceeding, Trustee may learn (through discovery or otherwise) of additional avoidable transfers made to the Defendants during the Constructive Fraudulent Transfer Period or the Preference Period. It is the Trustee's intention to avoid and recover all transfers made by the Commonwealth of an interest in the Commonwealth's property and to or for the benefit of the Defendants or any other transferee. Trustee reserves its right to amend this original Complaint to include, without limitation: (i) further information regarding the Transfers, (ii) additional transfers, (iii) modifications of and/or revisions to the Defendants' names, (iv) additional defendants, and/or (v) additional causes of action (including but not limited to causes of action under 11 U.S.C. §§ 542, 544, 545, 547, 548, and/or 549) (collectively, the

"Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Return of Unlawful Disbursements Pursuant to
### 2 L.P.R.A. § 97, 3 L.P.R.A. § 283h)

42. Trustee repeats and re-alleges Paragraphs 1 through and including 41 each as if fully set forth in this Count.

43. The Office of the Controller has insufficient copies of contracts between the Commonwealth and Defendants as necessary to evidence the propriety of the Transfers. *See* 2 L.P.R.A. § 297.

44. The Commonwealth and Defendants did not have contracts that were reduced to writing and/or properly registered with the Office of the Comptroller sufficient to evidence the propriety of the Transfers. *See Ocasio v. Alcalde Mun. de Maunabo*, R-84-356, 1988 WL 580831 (P.R. Apr. 19, 1988).

45. The Transfers were disbursements of public funds not authorized by law. 2 L.P.R.A. § 97; 3 L.P.R.A. § 283h(a); *see also*, *e.g.,* 3 L.P.R.A. §§ 2301-05, 8613 (requiring documentation of contracts with Commonwealth).

46. The Transfers, being public monies disbursed unlawfully, may be recovered. *See Mun. de Quebradillas v. Corp. de Salud de Lares*, 180 D.P.R. 1003, 1015-16 (2011) (citing similar restrictions on municipal disbursements and noting that holding otherwise "would be leaving public funds in private hands that do not correspond to them" and citing "public policy of protecting the interests and money of the people against waste, prevarication, favoritism and the risks of non-compliance") (citing *Cancel v. Mun. de San Juan*, 101 D.P.R. 296, 300 (1973))..

8

47. Trustee entitled to recover from the Defendants an amount of cash equal to the aggregate amount of the Transfers.

## COUNT II
**(Avoidance of Constructive Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B))**

48. Trustee repeats and re-alleges Paragraphs 1 through and including 41 each as if fully set forth in this Count.

49. The Commonwealth received less than a reasonably equivalent value in exchange for the 2-Year Transfers.

50. The Commonwealth was insolvent on the date that such 2-Year Transfers were made.

51. The Commonwealth intended to incur, or the Commonwealth believed that it would incur, debts that would be beyond the Commonwealth's ability to pay as such debts matured at all relevant times (including, without limitation, at the time of the 2-Year Transfers).

52. The Transfers were fraudulent transfers that Trustee may avoid pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
**(Rescission of Transfer Pursuant to 31 L.P.R.A. §§ 3491-3500 and 11 U.S.C. § 544(b))**

53. Trustee repeats and re-alleges Paragraphs 1 through and including 41 each as if fully set forth in this Count.

54. At the time of the Transfers, the Commonwealth was in a state of insolvency.

55. Defendants knew or should have known that the Commonwealth was insolvent, in the vicinity of insolvency, or unable to satisfy its obligations as they became due.

56. The Commonwealth's insolvency pre-supposes that its patrimony is insufficient to satisfy all the debts weighing upon it.

9

57. Defendants knew or should have known that the Commonwealth's patrimony was insufficient to satisfy all the debts weighing upon it at the time of the Transfers.

58. There was insufficient consideration for the Transfers because the Transfers to Defendants exceeded the total amount permitted under any contract with the Commonwealth and/or the value of the Transfers exceed the value of the goods and/or services that Defendants provided to the Commonwealth, if any.

59. There was insufficient consideration for the Transfers.

60. Consequently, the Plaintiff requests that any alleged contracts be deemed null and void and that the Transfers made to Defendants be returned to Plaintiff.

61. Other than such remedy as may be afforded pursuant to Counts I and II hereof, the Plaintiff has no remedy other than that provided under 31 L.P.R.A. §§ 3491-3500.

## COUNT IV
**(Avoidance of Preference Period Transfers Pursuant to 11 U.S.C. § 547)**

62. Trustee repeats and re-alleges Paragraphs 1 through and including 41 each as if fully set forth in this Count.

63. The 90-Day Transfers were transfers of property, or an interest in property, of the Commonwealth.

64. At all relevant times, the Defendants were creditors of the Commonwealth, as defined by 11 U.S.C. § 101.

65. The 90-Day Transfers were made by the Commonwealth to or for the benefit of the Defendants.

66. The 90-Day Transfers were made on or within 90 days before the Petition Date.

67. The 90-Day Transfers were made for, or on account of, an antecedent debt or debts owed by the Commonwealth before the Transfers were made.

10

68. The 90-Day Transfers were made while the Commonwealth was insolvent. The Commonwealth is presumed to be insolvent during the 90 days preceding the Petition Date.

69. To the extent that the Commonwealth's general unsecured creditors receive less than the full value of their allowed claims under a Title III plan of adjustment, as a result of the 90-Day Transfers, the Defendants received more than they would receive under a plan of adjustment.

70. Moreover, as a result of the 90-Day Transfers, the Defendants received more than the Defendants would have received if: (i) the Commonwealth's Title III case provided for the liquidation of the Commonwealth; (ii) the Transfers had not been made; and (iii) the Defendants received payments of their debts to the extent provided by the provisions of the Bankruptcy Code.

71. In accordance with the foregoing, the 90-Day Transfers are avoidable pursuant to 11 U.S.C. § 547

## COUNT V
### (Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550)

72. Trustee repeats and re-alleges Paragraphs 1 through and including 41 each as if fully set forth in this Count.

73. Based on the foregoing facts, the Trustee is entitled to avoid the 90-Day Transfers pursuant to § 547(b) of the Bankruptcy Code, and the Transfers under §§ 544 and 548 of the Bankruptcy Code.

74. Defendants were the initial transferees of the Transfers and the 90-Day Transfers, and the entity for whose benefit the transfers were made, or was the immediate or mediate transferee of the initial transferee receiving the Transfers and the 90-Day Transfers.

11

75. Pursuant to 11 U.S.C. § 550(a), the Plaintiff is entitled to recover from the Defendants an amount of cash equal to the aggregate amount of the Transfers and the 90-Day Transfers.

## PRAYER FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests that the Court enter judgment against the Defendants providing, to the extent not inconsistent:

A. Any purported contract between the Commonwealth and the Defendants relating to the Transfers is null and void pursuant to 2 L.P.R.A. § 97; and any funds disbursed in relation thereto were unlawfully transferred pursuant to, *inter alia*, 3 L.P.R.A. § 283h; and the Commonwealth is entitled to recover from the Defendants an amount of cash equal to the aggregate amount of the Transfers.

B. The 2-Year Transfers are avoidable under 11 U.S.C. § 548;

C. The Transfers are avoidable under 11 U.S.C. § 544 and 31 L.P.R.A. §§ 3492 and 3493;

D. That each of the 90-Day Transfers is avoidable as a preferential transfer under § 547 of the Bankruptcy Code, and that Plaintiff is entitled to recover the 90-Day Transfers under Section 550 of the Bankruptcy Code, thereby avoiding the 90-DayTransfers

E. The Transfers, including the 90-Day Transfers, to the extent avoided pursuant to 11 U.S.C. § 544, 547, and 548, may be recovered by the Trustee pursuant to 11 U.S.C. § 550;

F. Awarding pre-judgment interest at the maximum legal rate running from the date of the Complaint to the date of judgment herein;

G. Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

H. Requiring the Defendants to pay forthwith the judgment amount awarded in favor of the Trustee; and

I. Granting to the Trustee such other and further relief as the Court deems just and proper.

Date: January 30, 2023.

Respectfully submitted by:

*/s/ John Arrastia*
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Angelo M. Castaldi, Esq. (*Pro Hac Vice*)
**CONTINENTAL PLLC**
255 Alhambra Cir. Suite 640
Coral Gables, FL 33134
Tel: 305-677-2707
JArrastia@continentalpllc.com
JSuarez@continentalpllc.com
ACastaldi@continentalpllc.com
*Counsel to the Trustee*

/s/ *Juan J. Casillas Ayala*
Juan J. Casillas Ayala, Esq. (USDC-PR 218312)
Luis F. Llach Zúñiga, Esq. (USDC-PR 223112)
Juan C. Nieves González, Esq. (USDC-PR 231707)
**CASILLAS, SANTIAGO & TORRES LLC**
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
lllach@cstlawpr.com
jnieves@cstlawpr.com