## Exhibit C

RELEASE AND SETTLEMENT AGREEMENT, DATED AS OF FEBRUARY 11, 2022, BY AND AMONG (I) WHITEFISH ENERGY HOLDINGS, LLC, (II) PREPA, AND (II) THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS TITLE III REPRESENTATIVE OF PREPA

## RELEASE AND SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is between Whitefish Energy Holdings,

LLC ("**WEH**"), on one hand, and the Puerto Rico Electric Power Authority ("**PREPA**") and

the Financial Oversight and Management Board for Puerto Rico, in its capacity as Title III

representative for PREPA ("**FOMB**"), on the other hand. WEH, PREPA, and FOMB will be

referred to collectively as the "Parties" and each individually as a "Party."

### RECITALS

**WHEREAS**, on May 3, 2017, the FOMB filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "**Commonwealth**") pursuant to PROMESA section

304(a). Following this, the Oversight Board filed Title III cases for various instrumentalities

of the Commonwealth, including PREPA on July 2, 2017 (the "**PREPA Title III Case**");

**WHEREAS**, on September 26, 2017, after Puerto Rico was struck by two hurricanes,

which severely damaged its electric grid, PREPA entered into a contract with WEH, as



amended, for the repair of the electrical system main structures (the backbone of the system)

composed of approximately 200 miles of transmission lines and towers, many of which were

located in the mountainous region of Puerto Rico's rugged interior (the "**WEH Contract**");

**WHEREAS**, on October 31, 2017, PREPA terminated the WEH Contract in accordance

with its terms, effective November 30, 2017, which termination was unrelated to WEH's

performance under the WEH Contract;

**WHEREAS**, prior to the November 30, 2017 termination date, WEH completed all of

the work that had been requested by PREPA including, *inter alia*, the repair of the five (5)

transmission line segments assigned by PREPA to WEH, which constitute part of the

backbone of the transmission system in the area;

**WHEREAS**, WEH submitted invoices to PREPA for: (i) work performed ("**Work Performed Invoices**"); and (ii) mobilization and demobilization activities ("**Mob/Demob Invoices**"), together totaling $144,249,543.00 (the Work Performed Invoices and Mob/Demob Invoices are collectively referred to herein as the "**WEH Invoices**");

**WHEREAS**, in addition to the WEH Invoices, WEH invoiced PREPA for advance payments for mobilization and demobilization, which PREPA paid in the amount of $17,722,267.00 ("**Advance Payments**"), which Advance Payments shall be applied to the Mob/Demob Invoices as provided herein;

**WHEREAS**, as of the date of this Agreement, in addition to the Advance Payments, PREPA has made payments on account of the WEH Invoices, consisting of $6,275,699.00 for Mob/Demob Invoices and $13,058,139.00 for Work Performed Invoices;

**WHEREAS**, as of the date of this Settlement Agreement, PREPA has not paid WEH for the remaining amounts of the WEH Invoices ("**Remaining Invoice Amounts**");

**WHEREAS**, under the WEH Contract, finance charges have accrued and continue to accrue at a rate of 1% per month for all overdue WEH Invoices (the "**Finance Charges**") as to which WEH has submitted a series of invoices; on January 14, 2022, WEH submitted to PREPA an updated invoice for all Finance Charges accrued through that date in the amount of $51,887,962.60;

**WHEREAS**, on August 19, 2021, the Federal Emergency Management Agency ("**FEMA**") issued a Determination Memorandum Number FEMA-4339-DR-PR, in which FEMA determined that of the $144,249,543.53 submitted by PREPA for reimbursement for the WEH Invoices, $111,352,417.00 was eligible for reimbursement ("**FEMA Approved**

2

**Amounts**"), but that PREPA had not sufficiently demonstrated that the remaining $32,897,126.53 was eligible for reimbursement ("**FEMA Denied Amounts**");

**WHEREAS**, on October 18, 2021, PREPA filed a first appeal in which PREPA appealed FEMA's determination that the FEMA Denied Amounts were not eligible for reimbursement;

**WHEREAS**, on December 17, 2021, Puerto Rico's Government Authorized Representative, the Central Office for Recovery, Reconstruction, and Resiliency ("**COR3**"), submitted the first appeal to FEMA;

**WHEREAS**, on October 30, 2020, WEH filed its Motion of Allowance of Administrative Claim (the "**Administrative Claim Motion**") [Dkt. No. 2281], seeking an allowed administrative expense priority claim pursuant to section 503 of title 11 of the United States Code, as incorporated into Title III of PROMESA and applicable in the PREPA Title III Case, for the Remaining Invoice Amounts and the Finance Charges incurred through the date of payment of the claim;

**WHEREAS**, since WEH filed its Administrative Claim Motion, PREPA and WEH have stipulated to extensions of time for PREPA to respond to the Administrative Claim Motion; and

**WHEREAS**, the Parties have determined that it is in their best interests to settle all matters in dispute under the WEH Contract and Administrative Claim Motion.

**NOW, THEREFORE**, in consideration of the promises set forth herein and for good and valuable consideration, the receipt and adequacy of which the Parties hereto affirm and acknowledge, the Parties mutually agree as follows:

## TERMS

1. **Settlement Terms.**

   a. PREPA shall pay WEH $90,289,283.00 for payment of Work Performed Invoices that have been approved for reimbursement by FEMA but not yet paid (the **"Cash Payment"**). The Cash Payment shall be made in two (2) installments, with (i) the first installment in the amount of $63,800,717.17 (the **"First Payment"**) on account of specific unpaid Work Performed Invoices to be paid on or before the fifteenth (15th) business day following the execution of this Agreement, and (ii) the second installment in the amount of $26,488,565.83 (the **"Second Payment"**) to be paid on or before the fifteenth (15th) business day following court approval of this Agreement. For each installment of the Cash Payment, at the same time of remittance of payment, PREPA shall provide WEH with written documentation identifying the invoice number and amount of invoice for each Work Performed Invoice paid in connection with each Cash Payment.



   b. PREPA and FOMB hereby agree and stipulate that WEH has and shall have an allowed administrative expense claim for an initial total amount of $133,369,078.00 (the **"Initial Admin Claim"**) consisting of: (i) Work Performed Invoices for which FEMA has obligated funds in the amount of $103,347,417.00; (ii) mobilization and demobilization payments for which FEMA has agreed to reimburse PREPA in the amount of $8,005,000.00, which consists of Mob/Demob Invoices in the amount of

4

$6,275,699.00 and Advance Payments in the amount of $1,729,301.00; (iii) the Advance Payments made to WEH for mobilization and demobilization services for which FEMA has not yet agreed to reimburse PREPA in the amount of $15,992,966.00; and (iv) $6,023,695.00, which amount represents 50% of the remaining amounts due to WEH for unpaid Mob/Demob Invoices (after full application of the Advance Payments) for which FEMA has not yet agreed to reimburse PREPA. The Parties acknowledge and agree that $37,056,105.00 of the Initial Admin Claim has already been paid to WEH (consisting of payments for Mob/Demob Invoices in the amount of $6,275,699.00, Advance Payments in the amount of $17,722,267.00, and Work Performed Invoices in the amount of $13,058,139.00). The Parties acknowledge and agree that $90,289,283.00 of the Initial Admin Claim will be paid to WEH through PREPA's payment of the Cash Payment to WEH in accordance with Paragraph 1(a) of this Agreement. The Parties further acknowledge and agree that the remaining, unpaid balance of the Initial Admin Claim ($6,023,690.00) shall be allowed and paid in full as an administrative expense claim, payable on the effective date of PREPA's plan of adjustment in the PREPA Title III Case, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date, unless paid earlier in accordance with Paragraph 1(e) of this Agreement.



5

c. The Parties agree to cooperate with one another to pursue, through the FEMA administrative appeal process, including, if necessary, arbitration before the Civilian Board of Contract Appeals, reimbursement of the FEMA Denied Amounts (the "**FEMA Appeal**"). WEH agrees not to publish (through public posts on the internet or otherwise), or provide to third parties for political or media purposes, any documents filed by PREPA in the FEMA Appeal without the prior written consent of PREPA and FOMB. PREPA must provide WEH with written updates on the status of the FEMA Appeal, no less frequently than bi-weekly, starting within two (2) weeks after the execution of this Agreement. PREPA must receive WEH's prior written consent before settling any part of the FEMA Appeal; provided, however, after WEH is paid in full for the Denied Work Performed Invoices and the remaining $12,047,390.00 of the Denied Mob/Demob Invoices, PREPA is no longer obligated to seek WEH's consent before settling the FEMA Appeal. If PREPA withdraws or abandons the FEMA Appeal prior to WEH being paid in full for the Denied Work Performed Invoices and the remaining $12,047,390.00 of the Denied Mob/Demob Invoices, WEH's allowed administrative expense claim will be increased by $10,880,460.00 over the amount of the Initial Admin Claim and such increased allowed administrative expense claim amount shall be payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date. For the



avoidance of doubt, such increase shall not occur if the FEMA Appeal is
denied after due prosecution.

d. If FEMA agrees to obligate funds for any portion of the $4,856,765.00 in
Work Performed Invoices that FEMA has initially denied as part of the
Denied Invoice Amounts ("**Denied Work Performed Invoices**"),
WEH's allowed administrative expense claim will increase dollar for
dollar over the amount of the Initial Admin Claim by the amount of such
obligated funds. PREPA shall remit payment to WEH for the amounts
of the Denied Work Performed Invoices for which FEMA agrees to
obligate funds within thirty (30) calendar days of FEMA's obligation of
funds.



e. If FEMA agrees to obligate funds for any portion of the $28,040,356.00
in Mob/Demob Invoices that FEMA has initially denied as part of the
Denied Invoice Amounts ("**Denied Mob/Demob Invoices**"), the first
$6,023,695.00 in additional Denied Mob/Demob Invoices for which
FEMA agrees to obligate funds shall increase WEH's allowed
administrative expense claim dollar for dollar, over the amount of the
Initial Admin Claim, regardless of which Mob/Demob Invoices are
identified as reimbursable by FEMA or included in the obligation of
funds. The second $6,023,695.00 in additional Denied Mob/Demob
Invoices for which FEMA agrees to obligate funds shall be applied to
satisfy $6,023,695.00 of the Initial Admin Claim. PREPA shall pay
WEH for the Denied Mob/Demob Invoices reimbursable by FEMA

7

within thirty (30) calendar days of FEMA's obligation of funds, up to $12,047,390.00. Any amounts of the Denied Mob/Demob Invoices obligated by FEMA over $12,047,390.00 shall be retained by PREPA and applied to the Mob/Demob Invoices that were paid to WEH through the Advance Payments.

f.  The Parties agree that the Parties will not apply the Advance Payments to specific Mob/Demob Invoices until after the FEMA administrative appeal process has been fully and finally resolved, including the exhaustion of all available appeals. After PREPA has exhausted the administrative appeal process with FEMA, if the Denied Mob/Demob Amounts have not been approved for reimbursement by FEMA in full, PREPA and WEH shall work together to allocate the Advance Payments to the unpaid Mob/Demob Invoices.



g.  Other than as set forth in this Agreement, WEH waives the right to assert further administrative expense claims against PREPA for WEH Invoices not ultimately obligated for reimbursement to PREPA by FEMA. No amounts payable or paid to WEH from PREPA under this Agreement or ratified hereby shall be subject to any withholding or set-off or any disgorgement, and the amounts of the Cash Payment (both the aggregate and the respective payments thereof) shall not be reduced for any reason, even if later invoice reconciliations identify errors or discrepancies in either Party's favor.

8

h.  WEH hereby agrees to reduce the accrued Finance Charges that shall have accrued as of the date this Agreement is executed, by $19,004,808.50.  PREPA and FOMB agree and stipulate that the resulting $33,884,282.57 of such accrued finance charges (the "**Interest Admin Claim**") shall be allowed and paid in full as an administrative expense claim, in addition to the Initial Admin Claim and any increases thereto as provided in sections 1.c., 1.d., and 1.e. of this Agreement, payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date.

i.  Subject to approval of this Agreement by the Title III Court, if payments due under this Agreement are timely and fully made as specified in this Agreement, no additional finance charges shall accrue or be claimed by WEH after the execution of this Agreement; provided, however, that if Court approval is not obtained on or prior to May 1, 2022, then finance charges shall thereafter accrue at the rate provided under the WEH Contract on all amounts of the Initial Admin Claim that have not been paid as of such date, and such finance charge shall accrue as an allowed administrative expense claim (the "**Contingent Interest Admin Claim**").  Furthermore, if payments are not timely or fully made as required by this Agreement, there will be a finance charge of 1% accruing on such unpaid amounts, which finance charge shall accrue as an allowed administrative expense claim, and in addition, the $19,004,808.50



reduction in the Finance Charges accrued as of the date of this Agreement shall be re-instated, also as an allowed administrative expense claim ("**Re-Instated Interest Admin Claim**"), which Interest Admin Claim, Contingent Interest Admin Claim, and Re-Instated Interest Admin Claim shall be payable on the effective date of PREPA's plan of adjustment, but in no event later than December 31, 2023, even if a plan of adjustment has not become effective by such date.

j.  PREPA shall, with reasonable diligence, seek reimbursement from FEMA for any municipal taxes for which WEH is liable for its work for PREPA under the WEH Contract. PREPA shall remit to WEH any and all payments PREPA receives from FEMA for such municipal taxes within thirty (30) calendar days of PREPA's receipt of payment from COR3 or FEMA, as the case may be.

k.  WEH hereby waives its right under the WEH Contract to submit a termination settlement proposal, which would otherwise include legal, consultant, and other costs WEH has incurred to pursue payment from PREPA and FEMA reimbursement.

l.  PREPA shall file a motion (the "**Approval Motion**") with the Title III Court on or before March 1, 2022, seeking approval of this Agreement, and shall seek to have such Approval Motion heard at the next regularly scheduled omnibus hearing. PREPA further agrees that, if the Approval Motion is denied by the Title III Court, it shall nonetheless make the Second Payment upon receipt of such funds from COR3 on account of

10

the Work Performed Invoices, and PREPA shall not seek to recoup any portion of the Cash Payment from WEH or exact any set-off or withholding of future payments based on payment of the Cash Payment to WEH.

m. Upon Title III Court approval of the Approval Motion, the Administrative Claim Motion shall be deemed satisfied. Should the Title III Court instead deny the Approval Motion, WEH shall be entitled to prosecute the Admin Claim Motion; provided, however, that the amount of any Cash Payment to WEH shall be credited against any administrative claim granted to WEH on account of any order approving the Admin Claim Motion.

2. **Authority and No Inconsistencies in Plan**. FOMB and PREPA have obtained and provided the requisite approvals for such Parties to enter into this Agreement. FOMB and PREPA acknowledge and agree that any plan of adjustment filed and/or confirmed in the PREPA Title III Case shall not contain any provisions contrary to or reducing, limiting, or delaying PREPA's fulfillment of its obligations under this Agreement or contrary to or inconsistent with the other terms and conditions of this Agreement.

3. **PREPA and FOMB Release of WEH.** Effective upon the complete execution and Title III Court approval of this Agreement, this Agreement shall constitute a full release and accord and satisfaction of WEH, its affiliates, successors, and predecessors, and their respective officers, agents, and employees of and from any and all civil liabilities, obligations, claims, appeals, demands, and causes of action, which PREPA or FOMB had, now has or

11

hereafter may have, whether known or unknown, administrative, judicial, legal or equitable, arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, the Administrative Claim Motion, and otherwise with regard to any activities, acts or omissions of WEH.

4. **WEH Release of PREPA and FOMB.** Effective upon the complete execution and Title III Court approval of this Agreement, this Agreement shall constitute a full release and accord and satisfaction of PREPA and FOMB, and their affiliates, successors and predecessors, and their respective officers, agents, and employees of and from any and all civil liabilities, obligations, claims, appeals, demands, and causes of action, which WEH had, now has or hereafter may have, whether known or unknown, administrative, judicial, legal or equitable, arising under or in any way related to the WEH Contract, the WEH Invoices, the Finance Charges, the Administrative Claim Motion, and otherwise with regard to any activities, acts or omissions of PREPA or FOMB.

5. **No Admission.** This Agreement is not and does not imply an admission of liability or fault by WEH, PREPA, or FOMB. Rather, this Agreement is a negotiated settlement between the Parties.

6. **Attorneys' Fees and Costs**. The Parties shall bear their respective attorneys' fees, expenses, and costs.

7. **Further Action.** Each Party agrees to take any and all further action reasonably necessary or appropriate to fully effectuate and enforce the provisions of this Agreement, including but not limited to executing any additional documents necessary to effectuate the provisions of this Agreement.

8.    **Enforceability.** If any provision of this Agreement or the application thereof is held invalid or unenforceable, that invalidity shall not affect other provisions of this Agreement that can be given effect without the invalid provisions or application, and to this end, the provisions of this Agreement are declared to be severable. This Agreement may be executed in separate counterparts all of which, when taken together, shall constitute the entire agreement.

9.    **Binding Nature.** This Agreement, upon complete execution, is binding upon, and shall inure to the benefit of, the Parties hereto and their respective agents, employees, representatives, officers, directors, subsidiaries, assigns, heirs, predecessors and successors in interest.

10.    **Copies and Counterparts.** This Agreement may be signed in counterparts by any and all Parties and each said counterpart shall be deemed an original. The Parties agree that electronic facsimile or PDF signatures shall have full force and effect of original signatures.

11.    **Representations and Warranties.** Each Party represents and warrants as follows:

a.    It does not rely and has not relied on any statement, representation, omission, or promise of the other Party (or any officer, agent, employee, representative, or attorney for the other Party) in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement; it has, however, relied on this Agreement and all of its terms and provisions;

13

b. It has investigated the facts pertaining to this settlement and this Agreement, and all matters pertaining thereto, to the full extent it deems necessary;

c. It has carefully read and knows and understands the full contents of this Agreement and is voluntarily entering into this Agreement; and

d. It expressly understands that this Agreement represents the final agreement between the Parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements or understandings between the Parties.

12. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes and replaces all prior negotiations, proposed agreements and agreements, written and oral, relating thereto and the obligations set forth hereunder may not be altered, amended or modified in any respect unless in writing, and duly executed by the Parties. There are no collateral agreements, reservations, or understandings between the Parties, express or implied, oral or written, except as specifically set forth herein. No modification to this Agreement shall be binding unless it is reduced to writing and signed by the Parties to this Agreement.

13. **Co-Authorship.** The terms of this Agreement are contractual and not a mere recital. This Agreement exists independently of the WEH Contract and survives it. This Agreement is the joint product of the Parties, and it shall not be construed against either Party to the Agreement on the ground of sole authorship.

14. **Jurisdiction.** The Parties agree that the executed Agreement may be enforced by either Party before a Court of competent jurisdiction. The Parties hereby consent to the

jurisdiction of such tribunal for the purposes of enforcing and interpreting the executed Agreement.

    15.    **Authorization**. The Parties do hereby declare that this Agreement has been duly authorized by each of the Parties after consultation with counsel and that the undersigned do fully understand the terms of this Agreement and have the express authority to enter into this Agreement.

-------------------------------------------------------- The rest of the page is intentionally left blank--------------------------------------------------------

15

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of the latest date set forth below.

**FOR WHITEFISH ENERGY HOLDINGS, LLC:**

Name: ▮▮▮▮▮▮▮▮▮▮▮
**Title:  Chief Executive Officer**

**DATED:** _____

**FOR PUERTO RICO ELECTRIC POWER AUTHORITY:**

Name:  **Josué A. Colón Ortiz**
**Title:   Executive Director**

**DATED:** ___February 11, 2022___

**FOR FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO:**

_____
**Name:**
**Title:**

**DATED:** _____

16

*Execution Copy*

      **IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of

the latest date set forth below.

**FOR WHITEFISH ENERGY HOLDINGS, LLC:**


**Name:** ████████████
**Title:  Chief Executive Officer**

**DATED: _____**


**FOR PUERTO RICO ELECTRIC POWER AUTHORITY:**


**Name:**
**Title:**

**DATED: _____**


**FOR FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO:**


**Name:  Natalie A. Jaresko**
**Title:  Executive Director**

**DATED:    2/11/22 _____**

16