# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| *In re* | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | PROMESA Title III |
| as representative of | : | Case No. 17-BK-3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : | (Jointly Administered) |
| Debtors.* | : | **Court Filing Relates Only to PREPA** |
| | | |
| *In re* | : | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | PROMESA Title III |
| as representative of | : | Case No. 17-BK-4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), | : | |
| Debtor. | : | |

**REPLY AND STATEMENT OF FUEL LINE LENDERS IN
SUPPORT OF APPROVAL OF PREPA DISCLOSURE STATEMENT**

---

* The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481) ("Commonwealth"); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

## TABLE OF CONTENTS

                                                                         **Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................3

    A. The Fuel Lines and Prepetition History ............................................................................3

    B. Case History ......................................................................................................................4

ARGUMENT ...................................................................................................................................5

    A. Response to Bondholder Objections ..................................................................................6

    B. Response to Committee Objections .................................................................................10

CONCLUSION ..............................................................................................................................13

Cortland Capital Market Services LLC, as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and certain lenders, and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC, as lenders under a Trade Finance Facility Agreement, dated July 20, 2012, between PREPA and Citibank, N.A. (collectively, the "<u>Fuel Line Lenders</u>," and the loans made by the Fuel Line Lenders, the "<u>Fuel Lines</u>"), respectfully submit this reply and statement in support of *Motion of Puerto Rico Electric Power Authority for Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* (Dkt. No. 3113) (the "<u>Disclosure Statement Motion</u>").[1]

## PRELIMINARY STATEMENT

1. The Fuel Line Lenders are holders of approximately $700 million in principal amount of claims for amounts that were advanced to PREPA to fund purchases of fuel necessary to operate PREPA's system. As detailed in the Disclosure Statement, the Fuel Line Lenders recently entered into a Plan Support Agreement (the "<u>Fuel Line PSA</u>") with the Oversight Board, which provides for an agreed treatment of the Fuel Lines under the proposed Title III Plan of Adjustment filed at Docket No. 3110 (as may be amended and/or supplemented from time to time, the "<u>Plan</u>").[2]

---

[1] Unless otherwise noted, references to "Dkt. No. __" refer to docket entries in Case No. 17-BK-4780. Capitalized terms used but not defined herein have the meanings assigned to them in the Disclosure Statement Motion or in the Plan, as applicable.

[2] On February 9, 2023, the Oversight Board filed an amended Plan and Disclosure Statement at Dkt. Nos. 3200 and 3201, respectively. The Fuel Line Lenders reserve the right to respond to any supplemental objections filed in connection with those amendments.

2. Certain of the objecting parties — the Ad Hoc Group, Syncora and the Committee — have taken the opportunity to preview their confirmation objections rather than object to the adequacy of the information in the disclosure statement. Those objections are premature and should be taken up at confirmation, on a complete factual record, if the parties are unable to resolve their differences in the intervening months.

3. As objections to a disclosure statement, the objections have no force. In large measure, the bondholders' objections are predicated on their position that they have sweeping collateral rights and recourse to PREPA. Those issues, however, have been squarely presented in the Oversight Board's pending adversary proceeding. Legal uncertainty from pending litigation does not make a plan patently unconfirmable (the standard for rejection of a disclosure statement). If, in light of the Court's forthcoming ruling on summary judgment, the bondholders have a basis to challenge their treatment as secured creditors or unfairly discriminates between their unsecured claims and those of the Fuel Lines, they can make that argument at confirmation. There is no basis to put a halt to solicitation.

4. Like the bondholders' objection, the Committee's objection largely depends on facts not-in-evidence, such as supposedly unfair discrimination against unidentified PREPA creditors with unspecified claims arising out of unspecified agreements. The rights of those creditors, if any, are not being cut off at this stage. Unfair discrimination is a confirmation objection, not a disclosure objection. And if there are "Current Expense" claimants that have not surfaced in Court over the last five years, they will need to come forward and substantiate their particular claims. The Committee's remaining objections to payments under the Fuel Line PSA are reruns of objections made in the Commonwealth and HTA cases, and can be rejected for the same reasons.

5. The objections should be overruled and the Oversight Board permitted to solicit votes on its plan.

## BACKGROUND[3]

**A. The Fuel Lines and Prepetition History**

6. Beginning in 2012, the Fuel Line Lenders advanced approximately $700 million in principal amount in short-term revolving financing to enable PREPA to purchase fuel. At the time the Fuel Lines were incurred, PREPA already had approximately $8 billion in bond debt outstanding, which was governed by the Trust Agreement. Without the Fuel Lines, PREPA would have had to use revenues to pay those fuel bills — amounts that would have been paid ahead of the bonds. Instead, the Fuel Lines paid those expenses, predicated on PREPA's representations and agreement that the Fuel Lines were entitled to the same "Current Expense" status that the fuel suppliers would have had — including a promise of payment from the General Fund, before any monies would flow down the waterfall to bondholders. The Fuel Line advances were expressly intended, and were used exclusively, for payment of specific invoices for the fuel needed to operate PREPA's system.

7. In 2014, facing a crisis, PREPA requested, and the Fuel Line Lenders agreed, that the Fuel Lines would forbear from collecting rather than insist on the immediate repayment to which they were entitled. In the forbearance agreements, PREPA reaffirmed the Current Expense status of the Fuel Lines and agreed not to challenge that status. Bondholders likewise entered into forbearance agreements, in which both PREPA and the forbearing bondholders agreed not to use the forbearances or the passage of time as a basis to challenge the Fuel Lines'

---

[3] In light of the long history of this Title III case and the parties' and the Court's familiarity with the background, the Fuel Line Lenders provide only a summary history and respectfully refer the Court to the *Objection of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to PREPA Bondholder Settlement* (Dkt. No. 1700), together with its exhibits (Dkt. No. 1702) (collectively, the "9019 Objection"), for additional detail.

Current Expense Status.[4] Negotiations for a restructuring of all of PREPA's financial debt followed. In 2015, 2016 and again in 2017, the parties agreed to RSAs under which the Fuel Lines would receive a 100% recovery, consistent with their Current Expense treatment, while the bonds received less favorable treatment. Although PROMESA, which was enacted in 2016, expressly allowed for the existing RSA to be implemented, the Oversight Board did not go forward with PREPA's agreement and instead caused PREPA to file under Title III of PROMESA. Due only to the combination of the forbearance agreements and the automatic stay, the Fuel Line Lenders' Current Expense claims are now over eight years old.

**B.      Case History**

8.      In April 2022, the Court appointed the mediation team. On December 1, 2022, with the mediation team's assistance, the Fuel Line Lenders and the Oversight Board entered into the Fuel Line PSA, which resolved the Fuel Lines' treatment under a plan of adjustment. Under the Fuel Line PSA, the Fuel Lines will be exchanged for new revenue bonds at a ratio of 84% of the prepetition Fuel Line claims. In addition, upon consummation of the Plan, the Fuel Line Lenders will receive certain fees and expense reimbursements as consideration for assistance in formulating the Plan and to compensate for costs incurred therewith, to be paid in cash or in bonds at the Oversight Board's discretion.

9.      The Plan, which was filed by the Oversight Board on December 16, 2022, embodies the resolution reflected in the Fuel Line PSA, and is supported by the Fuel Line Lenders.

---

[4] *See* 9019 Obj. Exs. 22, 23, 24.

## ARGUMENT

10. The appropriateness of the Oversight Board's compromise with the Fuel Line Lenders, and the classification and treatment of the various claims against PREPA, are issues that the Court will consider at confirmation. For purposes of the Disclosure Statement Motion, however, there can be no dispute that the terms of the Fuel Line PSA have been publicly disclosed. No objector has identified a legitimate need for further disclosure to provide creditors with "adequate information" to vote on the Plan. To the contrary, the objections show that the relevant creditors know all about the Fuel Line PSA. Their objection is to the substance of that compromise — or to the fact that the Fuel Lines have now settled separately from the bonds — and not to the adequacy of any disclosure.

11. This Court has held repeatedly that these sorts of objections are properly heard at confirmation, not at the disclosure statement stage. *See In re Commonwealth*,[5] Dkt. No. 17379 in Case No. 17-3283, July 14, 2021 Hr'g Tr. at 80-81 (approving disclosure statement and reserving for confirmation factual and legal questions concerning classification and treatment of claims that did not "pose[] a pure question of law that would render a confirmation futile or unfeasible at this stage"), *id.* at 81 (overruling objections that classification "is structurally impossible as a matter of law" but reserving factual and legal challenges to classification and treatment for confirmation); *In re HTA*, Dkt. No. 21274 in No. 17-3283, June 17, 2022 Hr'g Tr. at 27 (overruling employee group's disclosure statement objection and noting that group "may litigate in connection with confirmation, if necessary, whether the proposed classification and treatment of the claims may differ from those of other general unsecured claims").

---

[5] For convenience, filings and rulings principally related to the Title III case of the Commonwealth of Puerto Rico will be cited as *In re Commonwealth*. Filings and rulings principally related to the Title III case of the Puerto Rico Highway and Tolls Authority will be cited as *In re HTA*.

A. **Response to Bondholder Objections**

12. The Ad Hoc Group and Syncora's objections to approval of the disclosure statement rest in part on the claim that the Plan would pay the Fuel Line Lenders with the bondholders' collateral. Relying on that flawed premise, the objecting bondholders assert further that the treatment of the Fuel Line Lenders under the proposed plan is a purely intercreditor issue in which PREPA has no economic stake, and that the Court should reactivate the dormant 2019 adversary proceeding in which the Fuel Line Lenders challenged the now-terminated 2019 RSA (the "2019 RSA Adversary Proceeding").

13. As an initial matter, the objections to the treatment of the bondholders' purportedly secured claims are undeniably confirmation, and not disclosure, objections. The objectors have identified nothing that the bondholders need to know that the disclosure statement does not tell them. Instead, their main point is that they, rather than the Oversight Board, will prevail in the pending lien challenge proceeding — which has nothing to do with disclosure, and which instead is properly addressed after the Court has decided the pending summary judgment motions.

14. In any case, the Ad Hoc Group is wrong to the extent they assert that their position in the lien challenge proceeding is at odds with the Fuel Lines' treatment. At the summary judgment hearing on February 1, 2023, counsel for the Ad Hoc Group stated — clearly and correctly — that if the Fuel Lines are Current Expenses, the bondholders have consented to the Fuel Lines being paid first.[6] That is true even if the bondholders were to prevail on the scope

---

[6] "[Bondholder Counsel]: If your Honor were to rule we had a gross revenue pledge and that they had -- that they constituted 'current expenses,' **the document provides a consent to the release of the gross revenue pledge to pay current expenses**. That's why the distinction between gross and net revenue pledge in the context of this document, in this hearing, with respect to Mr. Kleinhaus is really irrelevant. We are not picking a fight with him today. No remedy that we are seeking will foreclose his ability to prove that he is a current expense, in which case **if we have a gross revenue pledge, he will be paid out ahead of us**." Feb. 1, 2023 Hr'g Tr. at 136-137 (emphasis added).

of their lien. The Trust Agreement not only permits, but also requires, the payment of Current Expenses before revenues could be subject to any lien, stating that "*moneys in the General Fund will be used first for the payment of the Current Expenses of the System*." Trust Agreement § 505 (emphasis added).

15. The Oversight Board, as representative of PREPA, is charged with filing a plan based on the parties' legal rights and entitlements. The Oversight Board has now reached an agreement with the Fuel Line Lenders that acknowledges that the Fuel Line Lenders funded PREPA's purchase of $700 million in fuel, which was a necessary operating expense for PREPA. There is no question that PREPA's fuel expenses *always* would have been paid ahead of the bonds, as the Trust Agreement so provided and the bondholders concede. Properly understood, the bondholders' objection to Current Expense treatment of the Fuel Lines is fundamentally a demand for a windfall. Instead of paying for the fuel needed to operate the system with Revenues out of the General Fund, as it had every right to do, PREPA used the Fuel Lines to finance the fuel purchases on a short-term basis. The bondholders insist that this operational expense no longer qualifies for Current Expense treatment, thus seeking to elevate their claims over claims for fuel-purchase amounts they explicitly agreed would come first.

16. Contrary to the bondholders' position, it is for the Oversight Board — not the bondholders — to settle any dispute over the Fuel Lines' status as a Current Expense. Under the Trust Agreement, the determination of what constitutes a Current Expense was accorded to PREPA, not the bondholders.[7] PREPA long ago determined that the Fuel Lines are Current Expenses. When PREPA borrowed from the Fuel Line Lenders to pay for its fuel, PREPA

---

[7] *See* Trust Agreement at 1 (recognizing PREPA's "power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid . . .").

-7-

repeatedly certified and represented that the Fuel Lines were Current Expenses.[8] PREPA also informed bondholders of that determination.[9] PREPA's determination and its compliance with its prior commitments is an issue to be resolved between PREPA and the Fuel Line Lenders. It is thus properly resolved as part of a proposed plan. In any case, to the extent this issue needs to be examined further, it can be taken up at confirmation.

17. The Ad Hoc Group's contention that the Court must reactivate the 2019 RSA Adversary Proceeding, and rule on the bondholders' motion to dismiss, fares no better. The Ad Hoc Group ignores the procedural and legal context of the 2019 RSA Adversary Proceeding, and it misunderstands the claims asserted in that proceeding. The 2019 RSA Adversary Proceeding was filed by the Fuel Line Lenders *in response* to PREPA's entry into the 2019 RSA, which (the Fuel Line Lenders contended) would have violated the Fuel Line Lenders' rights as Current Expense creditors. Even while the 2019 RSA was in effect, the bondholders' *lead argument* for dismissal was that the claims (save one related to the prepetition forbearance agreements) were *unripe* and should be dismissed for *want of jurisdiction*.[10] As the Oversight Board has withdrawn from the 2019 RSA and settled with the Fuel Line Lenders, the adversary proceeding is plainly unripe and/or moot.

18. Moreover, the only count in the adversary proceeding that the Ad Hoc Group apparently wishes to litigate, the claim brought under Section 510(a), does not need to be

---

[8] *See* 9019 Obj. ¶¶ 74-79.

[9] *See* 9019 Obj. Ex. 5 at 22, 53 (offering memorandum for bonds says that Fuel Lines are "Current Expenses payable prior to" and "entitled to be paid before" the bonds).

[10] *See* Dkt. No. 55 in Adv. Pro. 19-396 at 17 ("I. COUNTS I, II, III, IV, V AND VII ARE NOT RIPE – THE COURT SHOULD DISMISS THEM FOR WANT OF SUBJECT MATTER JURISDICTION UNDER FEDERAL RULE 12(B)(1)." (capitalization in original)).

litigated for a plan to be confirmed. As explained above and in prior briefing,[11] the bondholders expressly authorized PREPA to pay all Current Expenses, including the Fuel Lines, before the bondholders would recover or assert a lien. Regardless of whether the Trust Agreement is a "subordination agreement" under Section 510(a), which is contested, the bondholders have no basis to prevent PREPA from paying the Fuel Lines on a priority basis, as would have occurred outside bankruptcy. In any event, Section 510(a) is overridden in the context of a proposed plan. *See* 11 U.S.C. § 1129(b)(1) ("*Notwithstanding section 510(a) of this title* … the court shall confirm the plan … if the plan does not discriminate unfairly, and is fair and equitable"); *In re Tribune*, 972 F.3d 228, 238 (3d Cir. 2020) (Ambro, J.) (explaining that "§ 1129(b)(1) overrides § 510(a) because that is the plain meaning of '[n]otwithstanding'" and is meant to "provide[] the flexibility to negotiate a confirmable plan even when decades of accumulated debt and private ordering of payment priority have led to a complex web of intercreditor rights."). Accordingly, to the extent the bondholders wish to argue that the Fuel Lines are being treated unfairly as compared to the bonds, that argument will needs to be pursued not as a Section 510(a) theory but as an objection to the proposed plan on the basis of unfair discrimination. It is not properly considered in a separate, dormant and moot adversary proceeding challenging a terminated RSA.

19. Syncora alone makes the additional argument that the separate classification of the Fuel Lines is an unlawful gerrymander. But the notion that the Fuel Lines, which have a distinct contract, with a distinct bundle of contractual rights not shared with other creditors, would not be separately classified, is a nonstarter. Indeed, Syncora itself (and the other bondholders) agreed in three separate RSAs in 2015, 2016 and 2017 that the Fuel Lines would be separately classified and given superior treatment. And then in 2019, Syncora again agreed that

---

[11] *See* 9019 Obj. ¶¶ 84-94.

the Fuel Lines would be separately classified when it signed on to an RSA that accorded no rights to the Fuel Line Lenders. The Fuel Line Lenders have always been a distinct class, and so the separate classification of the Fuel Lines certainly does not render the Plan patently unconfirmable. The evidence at confirmation will show that both the classification and treatment of the Fuel Lines are proper.

B. **Response to Committee Objections**

1. **The Committee's objections concerning disparate treatment of the Fuel Lines compared with other unsecured creditors are premature confirmation objections that should not be heard now.**

20. The Committee asserts that unsecured claims other than the Fuel Lines should not be classified separately from the Fuel Lines, and that the Fuel Lines' superior treatment is "unfairly discriminatory." Committee Obj. ¶ 97. But the Committee never attempts to explain why this is anything other than a confirmation objection. The Disclosure Statement includes a description of the Fuel Line litigation and the treatment of the Fuel Lines, and it attaches the Fuel Line PSA; it is not clear what additional factual information unsecured creditors need concerning the Fuel Lines to decide how they should vote on the Plan. As discussed above, and as this Court has made clear, the questions raised by the Committee are best reserved for confirmation — particularly the mixed issues of fact and law concerning separate classification and treatment of claims.[12]

21. Here, moreover, there are unresolved factual questions about the unsecured creditor body and the entitlement of such creditors to Current Expense status. The Committee asserts that various general unsecured claims are entitled to Current Expense status. Who are

---

[12] This Court has also indicated that the Oversight Board has significant discretion in classifying claims. *In re Commonwealth*, Dkt. No. 17379 in No. 17-3283, July 14, 2021 Hr'g Tr. at 80:13-82:02, (explaining Board's "flexibility" to separately classify and treat claims).

they? To date, the Committee has made only vague statements about the unsecured creditor pool and how much they are owed. To the extent claimants are only general unsecured creditors, they do not have the same rights vis-à-vis PREPA as the Fuel Line Lenders, which PREPA determined to be Current Expense creditors, and for whose benefit the bondholders consented to prior payment before revenues became available to the bonds.

### 2. The Committee's complaints about allegedly unlawful payments to the Fuel Line Lenders are misplaced and in any event are premature confirmation objections.

22. The Committee's claim that certain payments to the Fuel Line Lenders under the Fuel Line PSA are impermissible — accrual of interest on the new bonds, consummation costs, and reimbursement of certain professional expenses — are likewise not proper disclosure objections. The factual and legal case supporting the Plan, and the payments to be made in connection therewith, will be addressed at confirmation. Any disclosure issue can be resolved with a statement in the Disclosure Statement that the Committee objects to the payments.

23. *So-called "Post-Petition Interest."* The Committee's claim that the Fuel Line Lenders are receiving post-petition interest on account of their claims is factually wrong. The Fuel Line Lenders are not receiving post-petition interest on account of their prepetition claims. Instead, the PSA contemplates accrual of interest on new bonds to be issued under the plan, beginning as of December 1, 2022, to account for the long delay between the Fuel Line Lenders reaching a deal with the Oversight Board and that deal being consummated. However, such interest is only payable if and when the Plan is consummated. This Court has approved similar structures in other Title III cases.[13]

---

[13] *See* Disclosure Statement for the Third Amended Title III Plan of Adjustment for the Puerto Rico Highways and Transportation Authority at 223, *In re HTA*, Dkt. No. 1241 in No. 17-3567 (D.P.R. June 17, 2022) ("HTA Disclosure Statement") (interest accrual from deemed issuance date of July 1, 2022); Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Fifth Amended Title III Plan of Adjustment

-11-

24. ***Consummation Fees and Professional Expenses.*** The Fuel Line PSA contemplates that the Fuel Line Lenders will receive certain consummation fees and fee reimbursements upon consummation of the Plan of Adjustment. This Court has approved similar compensation in other Title III cases.

25. In *HTA*, the bonds were clearly undersecured in light of this Court's ruling limiting their lien to funds deposited with the bond trustee, which amounted to a mere fraction of the total bond debt outstanding. *See In re HTA*, 618 B.R. 619 (D.P.R. 2020). Consenting bondholders who signed up to the HTA plan support agreement received $125 million "consumption costs" and a $15 million "restriction fee." *See* HTA Disclosure Statement at 26, 52.

26. In its findings of fact and conclusions of law approving the HTA plan, the Court found that these costs were "reasonable" and were not being paid on account of such creditors' claims, but instead as compensation for assistance in formulating the Plan, supporting the Plan and locking up bonds, and for expenses incurred in connection therewith. HTA Findings ¶¶ 60-65; *see also* Commonwealth Findings ¶¶ 83-86 (overruling objections to similar payments "because these costs are not awarded on account of the creditors' Claims but, rather, as consideration for the creditors' actions in facilitating the settlements embodied in the Plan").

27. In any case, the Oversight Board has discretion to use its revenues without interference from the Title III court. *See* 48 U.S.C. § 2165. These fees and reimbursements are

---

of the Puerto Rico Highways and Transportation Authority ¶ 129, *In re HTA*, Dkt. No. 1416 in No. 17-3657 (D.P.R. Oct. 12, 2022) ("HTA Findings") (approving interest dating back to deemed issuance date of July 1, 2022); Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico at 43, *In re Commonwealth*, Dkt. No. 15988 in No. 17-3283 (D.P.R. March 9, 2021) (interest accrual from deemed issuance date of July 1, 2021); Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority ¶ 196, *In re Commonwealth*, Dkt. No. 19812 in No. 17-3283 (D.P.R. Jan. 18, 2022) ("Commonwealth Findings") (approving interest dating back to deemed issuance date of July 1, 2021).

-12-

well within the Oversight Board's discretion given the Fuel Line Lenders' support for and facilitation of a plan.

## CONCLUSION

For the foregoing reasons, the Fuel Line Lenders respectfully request that the Court overrule the objections and grant the Disclosure Statement Motion.

Dated:  February 10, 2023

Respectfully submitted,

 /s/ Nayuan Zouairabani
Nayuan Zouairabani
USDC-PR No. 226411
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico  00918
P.O. Box 364225
San Juan, Puerto Rico  00936-4225
Telephone:  (787) 250-5604
Facsimile:  (787) 759-9225
Email:  nzt@mcvpr.com

 /s/ Emil A. Kleinhaus
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
            arwolf@wlrk.com
            eakleinhaus@wlrk.com
            akherring@wlrk.com
            mhcassel@wlrk.com

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*

 /s/ Nicholas Baker
Bryce L. Friedman (admitted *pro hac vice*)
Nicholas Baker (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502
Email:  bfriedman@stblaw.com
            nbaker@stblaw.com
*Attorneys for SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC*