## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17-BK-4780-LTS |

**INFORMATIVE MOTION OF THE AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND SYNCORA GUARANTEE, INC. CONCERNING THE GOVERNMENT PARTIES' REFUSAL TO COMMENCE PLAN DISCOVERY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Ad Hoc Group of PREPA Bondholders ("Ad Hoc Group"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured"), and Syncora Guarantee Inc. ("Syncora," and together with the Ad Hoc Group and Assured, "Movants") respectfully submit this informative motion to inform the Court of the refusal by the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together the "Government Parties") to (i) timely respond to document requests served on January 23, 2023, or (ii) schedule depositions to start in early March. In support of this informative motion, the Movants state as follows:

1.      The Oversight Board has proposed a deeply flawed plan for PREPA that would arbitrarily slash recoveries to bondholders and other creditors far below even the steeply discounted levels that the Oversight Board has previously acknowledged, over and over again, that PREPA could afford and sustain. For the reasons set forth in Movants' respective objections (ECF Nos. 3188, 3189, 3190), and their forthcoming supplemental objections to the disclosure statement, the Court should not approve the Oversight Board's proposed disclosure statement for this patently unconfirmable plan.[2]

2.      But irrespective of whether the Court approves the Oversight Board's proposed disclosure statement, or requires the Oversight Board to amend that proposed plan before permitting the Oversight Board to solicit votes on it, the Oversight Board has proposed a deadline of July for a confirmation hearing. If the Oversight Board continues on its current course, the

---

[2] Movants intend to file supplemental objections to the Oversight Board's First Amended Disclosure Statement and First Amended Plan addressing the new settlement with National. This informative motion is not addressed to those amendments. Instead, it is intended only to provide the Court with information about the Oversight Board's discovery conduct, and would have been submitted even if the Oversight Board had not amended its plan.

parties will be engaged in intense litigation over fact-intensive, fundamental questions about PREPA's true financial condition, including whether the plan satisfies PROMESA's and the Bankruptcy Code's confirmation requirements. For example: What can PREPA actually afford to pay its prepetition creditors over the coming decades? Why is it fair and reasonable for PREPA to subsidize the Commonwealth and its political subdivisions while imposing the cost of those subsidies on PREPA's bondholders? If the Commonwealth and Oversight Board have made the public policy decision to subsidize new categories of ratepayers, isn't it more appropriate for the cash-flush Commonwealth central government to fund those public policy initiatives rather than demanding that electric utility bondholders foot the bill? Has the Oversight Board credibly projected that increasing rates for those who can afford to pay more will cause mass defection from PREPA's system? Likewise, has the Oversight Board credibly developed projections for future fuel costs, operating expenses, population decline, income levels, and overall macroeconomic conditions—or are those projections skewed to support a preferred result? These and a host of other fact issues surrounding the affordability of electricity rates and PREPA's debt-load are complex and are exclusively within the control of the Government Parties. As such, due process requires the Commonwealth and the Oversight Board to produce information that Movants have been seeking.

3.      Quite frankly, Movants do not believe there should be any dispute as to the production of this information. Regardless of the form of any particular plan, it is incumbent on the Oversight Board to produce credible and reliable data as a matter of good governance and fundamental legitimacy. All stakeholders in this process—including the Government Parties, employees, creditors, the federal government (which provides billions of dollars of support to PREPA and the Commonwealth), and, most importantly, the Commonwealth's residents—should

2

be aligned in wanting a fully transparent and data-oriented process so that the outcome of these proceedings are considered legitimate by everyone affected.  And yet that has not been the Oversight Board's approach to date.  *See, e.g.*, 12/14/2022 Tr. 16 (Lead Mediator: "[W]e think that what's been lacking here, in addition to . . . the data itself, is an overall atmosphere of candor and cooperation.").

4.      Moreover, there will need to be discovery about the "good-faith" decision-making process that led to those settlements with potential impaired accepting classes.  The reasoning behind those settlements will need to be explored through discovery.  For instance, what led the Oversight Board to flip-flop on the Fuel Line Lenders' claim of priority, jumping from moving to dismiss the Fuel Line Lenders' adversary proceeding to now seeking to settle it for a greater recovery percentage (84% of prepetition claims, not including fees and continued accrual of interest) than any other creditor would receive under the plan?  Was there even a risk analysis behind the Oversight Board's change of heart on the merits and likely outcome of that litigation, or was there an ulterior motive?  Similarly, what justification does the Oversight Board have, if any, for its decision to settle with National for a far greater percentage recovery (71.65% of prepetition claims plus fees and other recoveries totaling an 83.36% recovery) than the plan proposes to pay identically situated Settling Bondholders (50% in most scenarios) and Non-Settling Bondholders (up to 56%)?

5.      To try to ensure that a confirmation hearing can happen in July, the Ad Hoc Group has explained to the Oversight Board why the limited information that the Oversight Board elected to make available in its existing data room is insufficient.  *See* AHG Discl. Stmt. Obj. ¶ 95.  The Ad Hoc Group, with the consent and knowledge of Assured and Syncora, sent the Government Parties a letter on January 23, 2023, which enclosed plan-specific document requests and proposed

3

to schedule certain key depositions in March.  *See id.* ¶ 96; *see also* Ex. A (1/23/23 AHG Ltr. to

Gov't Parties, and enclosure).  As the Ad Hoc Group has explained, fact and expert discovery in

this complex case cannot plausibly be completed by mid-April if it doesn't even start until

sometime in March.  AHG Discl. Stmt. Obj. ¶ 96.  The Oversight Board's schedule is unrealistic

if document and deposition discovery does not get started now.  *See id.* ¶ 96.

6.        The Government Parties flatly blew off the Ad Hoc Group's outreach.  On

February 8, they advised that they refuse to provide *any* plan-related discovery—even so much as

providing written responses to document requests or coordinating on a future deposition

schedule—until some unspecified time after a disclosure statement is approved.  *See* Ex. B (2/8/23

Gov't Parties Ltr. to AHG).  Having ignored the Ad Hoc Group's letter and document requests for

more than two weeks, the Government Parties dismissed our suggestion to get discovery started

as "premature," and designed only to undermine an "orderly" process, and has said that the parties

must wait until February 28 to raise discovery issues with the Court.[3]

7.        Neither of those objections has merit.  The Oversight Board filed a non-consensual

plan on December 16, 2022, and by doing so launched a contested matter in which parties are

indisputably entitled to discovery.  ECF No. 3110.  The Oversight Board's pending confirmation

procedures motion does not propose to establish discovery *start dates*, before which discovery is

prohibited, but rather only *deadlines* for participating in and completing discovery.  And the

Oversight Board's proposed procedures contemplate that all parties would ultimately benefit from

---

[3] The Oversight Board's confirmation-procedures proposal does not purport to establish a date before which there can be no plan-related discovery.  In any case, its proposal would have the parties' opening expert reports due on April 14, just over six weeks after the Disclosure Statement hearing, and *all* fact discovery, on *all* questions, would end very shortly after that, on April 21.  It appears the Oversight Board contemplates all of discovery occurring within less than a two-month time period (and perhaps even only during part of that short period).  By contrast, discovery surrounding the 9019 Motion seeking approval of the 2019 RSA took more than seven months, and the issues posed in that litigation were relatively simple compared with the confirmation discovery necessary here.

4

any documents Movants obtain or depositions they schedule. The Oversight Board cannot justify unilaterally delaying discovery by virtue of the fact that it filed a scheduling motion in December that would not be heard until the last day of February.

8.      The only real threat to an "orderly" discovery process in this case is the Oversight Board's now-evident intention to limit all discovery activity to a frantic few weeks, after having let nearly three months pass between plan filing and getting started. There is, unfortunately, every reason to believe that the Oversight Board will leverage an exceedingly truncated discovery schedule to run out the clock—not producing documents in time for depositions, not completing depositions in time for expert reports, and otherwise depriving the parties of timely and reasonable access to the information they would use to demonstrate the many reasons why the plan cannot legally be confirmed.

9.      If the Oversight Board insists on proceeding on its current path, whether through this plan or an amended plan, then Movants intend to do everything in their power to be ready to present evidence and testimony at a July hearing about the plan's abject failure to satisfy the confirmation requirements. Ordinarily, Movants would move to compel responses to its document requests on the date that such responses are now due by rule (February 22). But in light of the scheduled hearing on February 28, Movants have instead elected to inform the Court of these troubling recent developments for its consideration in the context of the Oversight Board's pending Confirmation Procedures Motion and related hearing on February 28.

We hereby certify that, on this same date, we electronically filed the foregoing with the

clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

Dated: San Juan, Puerto Rico
February 16, 2023

**TORO COLÓN MULLET P.S.C.**

/s/ Manuel Fernández-Bared
Manuel Fernández-Bared
USDC-PR No. 204,204
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760
E-mail: mfb@tcm.law

/s/ Linette Figueroa-Torres
Linette Figueroa-Torres
USDC-PR No. 227,104
E-mail: lft@tcm.law

/s/ Nayda Perez-Roman
Nayda Perez-Roman
USDC–PR No. 300,208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

**KRAMER LEVIN NAFTALIS &
FRANKEL LLP**

/s/ Matthew M. Madden
Amy Caton*
Thomas Moers Mayer*
Alice J. Byowitz*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000

Gary A. Orseck*
Matthew M. Madden*
2000 K Street NW, 4th Floor
Washington D.C., 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
Email: gorseck@kramerlevin.com
            mmadden@kramerlevin.com

*Admitted Pro Hac Vice*

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

6

<div style="display:flex; justify-content:space-between;">

<div>

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
 Heriberto Burgos Pérez
 USDC-PR No. 204,809
 Ricardo F. Casellas-Sánchez
 USDC-PR No. 203,114
 Diana Pérez-Seda
 USDC–PR No. 232,014
 P.O. Box 364924
 San Juan, PR 00936-4924
 Tel.: (787) 756-1400
 Fax: (787) 756-1401
 E-mail: hburgos@cabprlaw.com
    rcasellas@cabprlaw.com
    dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

</div>

<div>

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ William J. Natbony*
 Howard R. Hawkins, Jr.*
 Mark C. Ellenberg*
 Casey J. Servais*
 William J. Natbony*
 Thomas J. Curtin*
 200 Liberty Street
 New York, New York 10281
 Tel.: (212) 504-6000
 Fax: (212) 406-6666
 Email: howard.hawkins@cwt.com
    mark.ellenberg@cwt.com
    casey.servais@cwt.com
    bill.natbony@cwt.com
    thomas.curtin@cwt.com

**Admitted Pro Hac Vice*

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

</div>

</div>

7

**REICHARD & ESCALERA, LLC**

By: */s/ Rafael Escalara*
    Rafael Escalara
    USDC-PR No. 122,609

    */s/ Sylvia M. Arizmendi*
    Sylvia M. Arizmendi
    USDC-PR No. 210,714

    */s/ Carlos R. Rivera-Ortiz*
    Carlos R. Rivera-Ortiz
    USDC–PR No. 303,409
    255 Ponce de León Avenue
    MCS Plaza, 10th Floor
    San Juan, PR 00917-1913
    Tel.: (787) 777-8888
    Fax: (787) 765-4225
    E-mail:  escalara@reichardescalera.com
            arizmendis@reichardescalera.com
            riverac@reichardescalera.com


*Counsel for Syncora Guarantee, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Susheel Kirpalani*
    Susheel Kirpalani*
    Daniel Salinas
    USDC-PR No. 224,006
    Eric Kay*
    51 Madison Avenue, 22nd Floor
    New York, New York 10010-1603
    Tel.: (212) 849-7000
    Fax: (212) 849-7100
    Email:  susheelkirpalani@quinnemanuel.com
            danielsalias@quinnemanuel.com
            erickay@quinnemanuel.com

*\* Admitted Pro Hac Vice*

*Counsel for Syncora Guarantee, Inc.*

8