# EXHIBIT A

# Kramer Levin



**Matthew M. Madden**
Partner
**T** 202.775.4529
**F** 212.715.4510
mmadden@kramerlevin.com

2000 K St. NW, 4th Floor
Washington, D.C. 20006
**T** 202.775.4500
**F** 202.775.4510

**January 23, 2023**

Martin J. Bienenstock, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, NY  10036

John J. Rapisardi, Esq.
O'Melveny & Myers LLP
Times Square Tower
New York, NY 10036

Re:     *In re: The Financial Oversight And Management Board For Puerto Rico, as*
         *Representative of Puerto Rico Electric Power Authority*, No. 17-04780-LTS

Dear Counsel:

I write on behalf of the Ad Hoc Group of PREPA Bondholders (the "Ad Hoc Group") with
the knowledge and support of Assured Guaranty Corp. and Assured Guaranty Municipal
Corp. (together, "Assured"), Syncora Guarantee Inc. ("Syncora"), and U.S. Bank National
Association as PREPA Bond Trustee ("Trustee"), regarding discovery that will be
necessary in confirmation litigation surrounding the Board's proposed plan of adjustment
for PREPA in the above-referenced matter [Dkt. No. 3110 *et seq.*].

Attached to this correspondence, and pursuant to Rule 34 of the Federal Rules of Civil
Procedure, made applicable to this proceeding by Rules 9014 and 7034 of the Federal Rules
of Bankruptcy Procedure and Section 310 of PROMESA, is the Joint Request of the Ad
Hoc Group, Assured, Syncora, and the Trustee for the Production of Documents to the
Board, PREPA, and AAFAF.  These document requests are directed to questions of fact
that bear directly on whether the Title III Plan of Adjustment (the "Plan") meets the
relevant requirements for confirmation.  Please provide all documents responsive to these
requests within 30 days.  *See* Fed. R. Civ. P. 34(b)(2)(A).

In addition, the Ad Hoc Group, Assured, Syncora, and the Trustee intend to take
depositions of a number of individuals who have knowledge that is relevant to the
confirmability of the Plan.  The most efficient way to proceed is to begin these depositions
after the documents have been produced.  Particularly in light of the schedule ordered by
the Court, and the interest of all parties and stakeholders in a prompt resolution of the case,
we propose to begin now the process of scheduling these depositions.

**Martin J. Bienenstock, Esq.**
**John J. Rapisardi, Esq.**
January 23, 2023



We provide below an initial list of deponents who we want to schedule first. We've provided target dates for the depositions, which reflect the order in which the deponents should be produced. If any of the listed witnesses is unavailable on the requested date, please advise us promptly so that we can make alternative arrangements. We propose to host each of these depositions at our offices in New York or Washington D.C., but are prepared to do them elsewhere if that poses an inconvenience to any of these witnesses.

We aim to complete each of these depositions in a single, 7-hour session, although there may be instances in which the number of parties wishing to examine the witness may make that impracticable. We intend to remain flexible in this regard, and hope you will do the same.

Here is our first set of requested depositions and proposed dates:

| Oversight Board | |
|---|---|
| March 6, 2023 | David Brownstein, financial advisor |
| March 15, 2023 | Antonio L. Medina, member |
| March 17, 2023 | Hon. Arthur J. Gonzalez, member |
| March 20, 2023 | Betty A. Rosa, member |
| March 22, 2023 | Andrew G. Biggs, member |
| March 24, 2023 | John E. Nixon, member |
| March 27, 2023 | David A. Skeel Jr., member |
| March 29, 2023 | Justin M. Peterson, member |
| PREPA, Commonwealth, LUMA | |
| March 8, 2023 | Fernando Batlle, financial advisor |
| March 10, 2023 | Omar Marrero, AAFAF executive director |
| March 13, 2023 | Josué Ortiz, PREPA executive director |
| March 14, 2023 | José Marrero, Office of Management & Budget executive director |

The Ad Hoc Group, Assured, Syncora, and the Trustee expect to notice additional depositions as necessary, and will also seek depositions from other parties and non-parties. Please let me know promptly whether there are any proposed deponents on the above list for whom you cannot accept service of a deposition notice.

2

**Martin J. Bienenstock, Esq.**
**John J. Rapisardi, Esq.**
January 23, 2023



Please get back to us at your earliest convenience.  We are available to discuss as needed.

Very truly yours,


Matthew M. Madden


cc:    William Natbony, Esq.
       Susheel Kirpalani, Esq.
       Michael McCarthy, Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | Case No. 17-BK-4780-LTS |

**JOINT REQUEST OF THE AD HOC GROUP OF PREPA BONDHOLDERS, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., SYNCORA GUARANTEE, INC., AND U.S. BANK NATIONAL ASSOCIATION FOR THE PRODUCTION OF DOCUMENTS TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, THE PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL AUTHORITY RELATED TO PREPA'S TITLE III PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (*iii*) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (*iv*) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (*v*) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), applicable to this proceeding under Rules 9014, 7026 and 7034 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Ad Hoc Group of PREPA Bondholders, Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. ("AGM," and together with AGC, "Assured"), and Syncora Guarantee Inc. (collectively, the "Bondholders") hereby serve this Joint Request for the Production of Documents (the "Requests," and each a "Request") to the Financial Oversight and Management Board for Puerto Rico (the "FOMB"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") related to PREPA's Title III Plan of Adjustment and Disclosure Statement (ECF Nos. 3110-3111),[2] and Bondholders' objections thereto, and hereby request that PREPA, the FOMB, and AAFAF (i) provide responses and objections to the attention of the undersigned counsel by February 22, 2023, and (ii) produce to the undersigned counsel all Documents and Communications requested below, in accordance with the definitions and instructions set forth below (the "Definitions" and the "Instructions," respectively) by February 22, 2023.

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below and, if not set forth below, in the Disclosure Statement and Plan as defined below, and should be given their most expansive and inclusive interpretation unless otherwise expressly limited. This includes, without limitation, the following:

1.      "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and

---

[2] "ECF No." refers to documents filed in Case No. 17-BK-4780-LTS, unless otherwise noted.

2

any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

2.       "CILT" means Contributions in Lieu of Taxes and refers to the subsidy that PREPA gives to Municipalities.

3.       "Commercial and Industrial Customers" means any customer of PREPA that is neither a Governmental Customer nor a Residential Customer of PREPA.

4.       "Committee" means the Official Committee of Unsecured Creditors for all Title III Debtors other than the Public Buildings Authority ("PBA") and COFINA.

5.       "Commonwealth" means the Commonwealth of Puerto Rico and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates (other than PREPA), and any of its current and former elected officials, employees, executives, directors, officers, partners, agents, members board members, consultants, attorneys, representatives and other professionals.

6.       "Communication" or "Communications" mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communications, includes any Document evidencing the date, participants, subject matter, and content of any such oral communication, including, but not limited to mail, e-mail, text message, instant message, messages sent through any other messaging platform such as iMessage, WhatsApp, Telegram, Facebook Messenger, Microsoft Teams, Slack, or Signal, facsimile, transcripts, minutes, notes, audio, video, electronic recordings, telephone records, and calendar entries.

7.       "Disclosure Statement" means the Disclosure Statement for Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, dated December 16, 2022, including any subsequent amendment, revision, or replacement.

8.      "Document" or "Documents" are intended to have the broadest possible meaning under Federal Rule 34 and mean any and all writings and recorded materials, of any kind, that are or have been in Your possession, custody or control, whether originals or copies.  Such writings include, but are not limited to electronically stored information in any medium, Communications, contracts, agreements, notes, drafts, interoffice memoranda, memoranda for files, letters, research materials, correspondence, logs, diaries, forms, bank statements, tax returns, card files, books of accounts, journals, ledgers, invoices, drawings, computer files, records, data, print-outs or tapes, reports, statistical components, studies, graphs, charts, minutes, manuals, pamphlets, or books of all nature and kind whether handwritten, typed, printed, mimeographed, photocopies or otherwise reproduced, and tape recordings (whether for computer, audio or visual display) or other tangible things on which words, phrases, symbols or information are stored.

9.      "FEMA" means the Federal Emergency Management Agency and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its current and former elected officials, employees, executives, directors, officers, partners, agents, members board members, consultants, attorneys, representatives and other professionals.

10.     The "FOMB" means the Financial Oversight and Management Board for Puerto Rico and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

11.     "Governmental Customers" means the Commonwealth of Puerto Rico and its Municipalities, agencies, corporations, instrumentalities and other governmental entities, including but not limited to the Puerto Rico Aqueduct and Sewer Authority, the Puerto Rico Highways and Transportation Authority, the Puerto Rico Convention Center District Authority,

4

the Government Development Bank for Puerto Rico and the Puerto Rico Infrastructure Financing Authority.

12.     "HUD" means the United States Department of Housing and Urban Development and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its current and former elected officials, employees, executives, directors, officers, partners, agents, members board members, consultants, attorneys, representatives and other professionals.

13.     "LUMA" means LUMA Energy, LLC and LUMA Energy ServCo, LLC and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

14.     "Municipalities" means the 78 incorporated towns and cities in the Commonwealth of Puerto Rico.

15.     "National" means National Public Finance Guarantee Corporation and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

16.     "November 8, 2022 Proposal" means the PREPA FOMB Proposal to Bondholder Group included in Exhibit A to PREPA's Disclosure of Materials Exchanged in Mediation, dated December 16, 2022 (the "Disclosure Materials").

17.     "November 2022 Materials" means the PREPA Mediation November 2022 slides included in Exhibit A to the Disclosure Materials.

18.     "December 13, 2022 SOW Comparison" means the SOW Comparison included in Exhibit A to the Disclosure Materials.

5

19.     "Plan" means the Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, dated December 16, 2022, including any amendment, revision, supplement, or replacement.

20.     "PREB" means the Puerto Rico Energy Bureau and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

21.     "PREPA" means the Puerto Rico Electric Power Authority and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals.

22.     "PREPA Board" means any current or former member of the board of directors of PREPA and any of their respective employees, executives, directors, officers, partners, agents, consultants, attorneys, representatives and other professionals serving them in their capacity as directors.

23.     "SOW" means share of wallet.

24.     "Customer" or "Customers" means all customers of PREPA, including Residential Customers, Commercial and Industrial Customers, and Governmental Customers.

25.     The term "concerning" means concerning, relating to, referring to, reflecting, discussing, describing, analyzing, supporting, evidencing, constituting, comprising, containing, setting forth, showing, disclosing, explaining, summarizing, or mentioning.

6

26.     "Residential Customers" means any customer of PREPA obtaining electricity for use in their residence, including houses, apartments, and other structures primarily intended for residential purposes.

27.     "You" or "Your" means PREPA, AAFAF and the FOMB, and any of their respective predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of their respective commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals, and any person or entity acting or purporting to act on their behalves.

## INSTRUCTIONS

1.     You are required to answer these Requests drawing upon all materials in Your possession, custody, or control, as well as materials that are not in Your custody but are owned in whole or in part by You and those that You have an understanding, express or implied, that You may use, inspect, examine, or copy.  You must provide all information in response to a Request which is known to You, Your employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys, representatives and other professionals, or which appears in Your records.

2.     If any Request herein cannot be complied with in full, then it shall be complied with to the fullest extent possible with an explanation as to why full compliance is not possible.

3.     The following rules of construction shall apply to these Requests:

(a) The terms "all" and "any," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material;

(b) The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope;

7

(c) The term "including" shall always be construed to mean "including, but not limited to," or "including, without limitation" to encompass more than the specifically identified materials;

(d) The present tense shall also include the past tense and vice versa;

(e) The use of the singular form of any word includes the plural and vice versa; and

(f) The use of any capitalized word shall include the same word uncapitalized, and the use of any uncapitalized word shall include the same word capitalized.

4.      Documents shall be produced either as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these Requests.

5.      You are required to produce all non-identical copies and drafts of each Document. The originals of all Documents produced in copy form shall be made available for inspection upon request.

6.      Documents attached to each other in their original form should not be separated. Documents shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested.

7.      If no information or Documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

8.      The fact that a Document has or will be produced by another party or third party does not relieve You of the obligation to produce Your copy of the same Document.

9.      If any Document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Federal Rule 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, You are to provide a list of such Documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

(a) the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

8

(b) all facts relied upon in support of the claim of privilege or immunity;

(c) all persons on whose behalf the privilege or immunity is claimed;

(d) the type of Document (e.g., letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

(e) the subject matter (without revealing the information as to which privilege is claimed);

(f) its date, author(s), sender(s), addressee(s), and recipient(s); and

(g) the paragraph(s) of these Requests to which production of the document is responsive.

10.     You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all Documents or portions thereof not subject to Your objection.

11.     If You object to any Request (or portion thereof), state the reason for the objection in detail and respond to that Request as narrowed by Your objection.

12.     Electronically Stored Information ("ESI"), as that term is used in Federal Rule 34, should be produced as follows:

(a) TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, i.e., Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

(b) Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

(c) Text Files.  Extracted full text in the format of document level txt files shall be provided in a separate folder, on text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  Text from redacted pages will be produced in OCR format rather than extracted text.

(d) Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

9

(e) Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

   1. The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

   2. The data file (.dat) should contain all the fielded information that will be loaded into the database.

   3. The first line of the .dat file must be a header row identifying the field names.

   4. The .dat file must use the following Concordance default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254).

   5. Date Fields should be provided in the format mm/dd/yyyy.

   6. Date and time fields must be two separate fields.

   7. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

   8. An OCRPATH field must be included to provide the file path name of the extracted text file(s).

   9. Each text file must be named after the Beginning Bates Number.

   10. For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

   11. Beginning Bates Number and Ending Bates Number should be two separate fields.

   12. A complete list of metadata fields is included in paragraph 11(f).

(f) Metadata.  For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

(g) Spreadsheets.  For spreadsheets that were originally created using common, off-the-shelf software (e.g., Microsoft Excel), produce the spreadsheets in native

10

format and, in addition, in TIFF Format.  Native file Documents must be named per the Beginning Bates Number.  The full path of the native file must be provided in the .dat file.

13.    Hard-copy Documents shall be produced as follows:

(a) TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, i.e., Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

(b) Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

(c) OCR.  High-quality document level OCR text files should be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  For redacted Documents, provide the re-OCR'ed version.

(d) Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards:

1.    The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

2.    The data file (.dat) should contain all the fielded information that will be loaded into the database.

3.    The first line of the .dat file must be a header row identifying the field names.

4.    The .dat file must use the following Concordance default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254).

5.    Date Fields should be provided in the format mm/dd/yyyy.

6.    Date and time fields must be two separate fields.

7.    If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship be-tween an email and its attachments.

8.    An OCRPATH field must be included to provide the file path name of the extracted text file(s).

9.    Each text file must be named after the Beginning Bates Number.

10. For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

11. Beginning Bates Number and Ending Bates Number should be two separate fields.

(e) Unitizing of Records.  In scanning hard copy records, distinct records should not be merged into a single record, and single records should not be split into multiple records (i.e., hard copy records should be logically unitized).

(f) Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

(g) Objective Coding Fields.  The following objective coding fields should be provided: Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

14.    These Requests are continuing in nature.  If any information or Document responsive to a Request herein is not presently in Your possession, custody or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Federal Rule 26(e) and are hereby requested to supplement Your responses to these Requests within a reasonable period of time after such information or Document comes into Your possession, custody, or control.

15.    Unless otherwise specified in a particular Request, each Request herein seeks any and all Documents and Communications that were dated, generated, prepared, modified, sent, or received in the period from January 1, 2013 through the present inclusive, and any Documents and Communications related to that period whenever generated.

## DOCUMENT REQUESTS

1.    All Documents concerning any analysis, forecast, projection, or estimate of (a) PREPA's ability to pay its legacy debt and other expenses, including the affordability or SOW of any rates or charges necessary for PREPA to do so; (b) PREPA's base and other rates for

12

electricity; (c) PREPA's revenue requirements; (d) PREPA's electricity load; (e) PREPA's revenues, expenses, capital expenditures, cash flows, accounts receivables, or collections; (f) PREPA's debt sustainability or capacity; (g) PREPA's transition to renewable energy sources; (h) the theft of electricity from PREPA and its causes—and that were performed by or on behalf of, considered by, or provided or presented to, the FOMB, PREPA, or AAFAF, including in connection with the Plan, any settlement proposals considered, made, or received, the 2019 RSA or any other actual or proposed restructuring or plan-support agreement, the 2021, 2022, or 2023 Fiscal Plans, or at any other time—and with respect to all such analyses, forecasts, projections, or estimates:

    a. All Documents concerning any underlying models, data inputs, and assumptions used to develop such analysis, forecast, projection, or estimate;

    b. All programs and models (showing any data adjustments and intermediate and final calculations, including code developed for analyses performed using statistical software packages), all input files used by these programs and models, and all output files generated by these programs and models, provided in a format and organization where all programs can be executed with minimal effort and with instructions for doing so;

    c. Documents sufficient to show the sources and citations for all the datasets and data inputs used to construct any such analysis, forecast, projection, or estimate.

2.    All Documents concerning the FOMB's, PREPA's, or AAFAF's ability or plans to obtain the confirmation, effectiveness, or consummation of the Plan, including to secure any necessary approvals of the Legacy Charge, New Bonds, or other Plan components by PREB or by any other entity.

3.    All Documents concerning any proposed, contemplated, or rejected change in PREPA's electricity rates to Customers (including base customer charge, volumetric energy charge, demand charge, or any other rate component) or rate structure.

4.      All Documents concerning the actual or potential termination of the 2019 RSA, including all Communications concerning whether, when, or under what circumstances to terminate the 2019 RSA, and all Documents concerning the reasons to terminate (or not to terminate) the 2019 RSA.

5.      All Documents concerning any actual, proposed, or contemplated negotiations, restructuring support agreement, plan support agreement, or other agreement between (a) the FOMB, PREPA, or AAFAF, and (b) the Settling Bondholders, Fuel Line Lenders, Vitol, National or any other monoline, the Committee, and any Unions or pension (including UTIER, SREAEE, and PREPA ERS), including without limitation assessments of the risks involved in litigating disputes with those parties and of the impact of settlements on other creditors or classes of creditors, and all analyses or discussions of the reasons to negotiate with and to settle with (or to not negotiate or settle with) those parties.[3]

6.      All Communications concerning the Plan or Disclosure Statement.

7.      All Documents related to the proposed interest rates, or the expected or forecasted market value, of any bonds to be issued under the Plan, including without limitation any financial models or analyses and any data or assumptions they relied on in determining such proposed interest rates or expected or forecasted market value.

8.      With respect to the Plan or Disclosure Statement:

   a.   All Documents concerning the assertion that the PREPA's Legacy Charge is expected to generate approximately $5.4 billion in revenue over the next thirty-five years (see Disclosure Statement p.4)

   b.   Documents sufficient to quantify the estimated claim amounts and approximate recovery percentages of Class 1, Class 2, Class 3, Class 5, Class 7, Class 11 and Class 12.

---

[3]  Assured does not join in Document Request No. 5.

    c.   All Documents concerning the current or future determination of the Legacy Charge, including its Flat Fee and the Volumetric Charge.

    d.   All Documents concerning the proposed establishment of 500 kWh as the level of consumption below which a customer will not be assessed the Volumetric Charge, including the proposal not to use the existing subsidization level of 425 kWh as described on page 33 of the Disclosure Statement

    e.   All Documents concerning the assessment, quantification or potential impact of each of the "Risks Related to Transformation" described at pages 341-362 of the Disclosure Statement.

    f.   All Documents concerning the Plan's Best Interest Test, including as disclosed in any future version of Exhibit K to the Plan.

9.    All Documents related to the proposed tender offer, including but not limited to all Communications with DTC, Globic Advisors, or any other broker-dealer or investment communications firm.

10.    All Documents concerning the amounts paid by or affordable to PREPA's Commercial and Industrial Customers for electricity, both in dollars and as a percentage of their revenues.

11.    All Documents concerning the November 8, 2022 Proposal, including but not limited to:

    a.   each of the unresolved challenges and implementation risks described on page 2 of the Proposal.

    b.   the hybrid approach described on page 3 of the Proposal.

    c.   the fixed charge component of the hybrid approach.

    d.   the volumetric charges component of the hybrid approach.

    e.   the preliminary figures in the Table of fixed and volumetric charges by account type and class on page 4 of the Proposal, and whether and why the figures in that table are subject to change.

    f.   the Load Projections on page 5 of the Proposal.

    g.   the cash flow illustrations on page 6 of the Proposal.

12.     All Documents concerning the November 2022 Materials, including but not limited to:

   a. the comparison of the FOMB proposal to the Bondholder proposal on page 2 of the November 2022 Materials.

   b. each of the Core Assumptions on page 3 of the November 2022 Materials.

   c. each of the "additional risks" described on pages 4-5 of the November 2022 Materials.

13.     All Documents concerning the December 13, 2022 SOW Comparison, including but not limited to:

   a. each criticism or observation of the Bond Parties' SOW analysis on page 2 of the SOW Comparison.

   b. the bottom-up analysis of energy demands on page 3 of the SOW Comparison.

   c. the analysis of the UK approach on page 4 of the SOW Comparison.

   d. each of the "risks to the system" identified on pages 5-6 of the SOW Analysis, including but not limited to Documents concerning the "quantified impact" of each identified risk.

   e. the rate impact of, and the key assumptions underlying, each of the four risk factors discussed on page 7 of the SOW Comparison.

14.     Documents sufficient to show PREPA's, AAFAF's, or FOMB's analyses, forecasts, projections, and estimates, since January 1, 2014, of Puerto Rico's (a) economic performance, including but not limited to actual and projected unemployment rates, labor-force participation rates, income and earnings levels (individually and by household), Commonwealth GNP and GDP, consumption metrics, tourism performance, tax collections, committed federal funding, population metrics, the size of the informal economy, and electricity demand and consumption, since entry into the 2019 RSA, (b) population levels and population growth, contraction, and out-migration, (c) electricity demand or elasticity of electricity demand, (d) power sector and infrastructure reforms—including Documents sufficient to show any changes

16

made to such analyses, forecasts, projections, and estimates and the reasons for such changes—and for each of these analyses, forecasts, projections, and estimates:

a. All Documents concerning any underlying models, data inputs, and assumptions used to develop such analysis, forecast, projection, or estimate;

b. All programs and models (showing any data adjustments and intermediate and final calculations, including code developed for analyses performed using statistical software packages), all input files used by these programs and models, and all output files generated by these programs and models, provided in a format and organization where all programs can be executed with minimal effort and with instructions for doing so;

c. Documents sufficient to show the sources and citations for all the datasets and data inputs used to construct any such analysis, forecast, projection, or estimate;

15.  Documents sufficient to identify all of PREPA's assets, including information about the age or depreciation of the assets, and liabilities, and the value thereof, as well as PREPA's revenues and expenses, as of the petition date, and today.

16.  PREPA's financial statements from FY2014 to the present and all supporting workpapers.

17.  All presentations given to the FOMB or AAFAF concerning PREPA.

18.  Documents sufficient to show distributed generation interconnection requests made to and/or fulfilled by LUMA or PREPA over the last 5 years, including the amount of interconnection charges received by PREPA, and projections for future distributed generation interconnection requests made to LUMA or PREPA.

19.  Documents sufficient to show (a) all data on the extent of distributed generation installations among actual or potential PREPA customers, including but not limited to such customers' adoption of distributed generation, and (b) all data on the expected or average costs for distributed generation (including solar panels, batteries, and labor), considered or relied on in connection with PREPA's Fiscal Plan projections.

20.     Documents sufficient to show the number of Customers (or former Customers), if any, that have permanently disconnected from PREPA's grid following or in connection with an installation of distributed generation.

21.     Documents sufficient to show the number of claims filed, and size/amount of the claims pool, against PREPA, which of those claims are settled, and which claims remain unsettled, including, without limitation, the amount claimed, amount believed by PREPA, AAFAF and/or the FOMB to be due on account of any allowed claims, and the amount disputed by PREPA, AAFAF and/or the FOMB on account of such claims.

22.     Documents concerning PREPA's employee pension funds sufficient to show (a) the amount or estimated amount of PREPA's pension underfunding; (b) how the amount or estimated amount of PREPA's pension underfunding was calculated; (c) any analyses since 2017 comparing PREPA's assets earmarked for payment of pension claims against PREPA's estimated pension-related liabilities; and (d) negotiations with PREPA's pension funds and/or unions concerning PREPA's pension underfunding and/or the restructuring of PREPA's debts.

23.     Documents sufficient to show all subsidies provided to PREPA's Customers, the magnitude and/or value of such subsidies, the reasons for those subsidies, the cost of those subsidies, analyses of alternatives to those subsidies, revenue foregone as a result of those subsidies, and data about how these subsidies are allocated among any and all Customer classes, including but not limited to subsidies to any Residential Customers, Governmental Customers, Municipalities, subsidies for tourism and hotels, subsidies to the agricultural industry, subsidies to health care and emergency services facilities, CILT payments, and subsidies provided under federal programs.

24.     Documents sufficient to show all reasons for the net metering program, the cost of the net metering program, and any analyses of any alternatives to the net metering program and why those alternatives were not adopted.  To the extent not called for by the foregoing sentence, Documents sufficient to show how much revenue PREPA did not earn as a consequence of the net metering program.

25.     Documents sufficient to show, from January 1, 2017 to the present, all funds PREPA has received from or that have been pledged, committed, obligated, or disbursed by the federal government (including but not limited to FEMA and HUD) and the Commonwealth to PREPA (or to Puerto Rico for PREPA's needs), whether such funding was used or may be used in the future for PREPA's capital expenditures, any limitations on the use of such funds, PREPA's current plans and projections concerning such funds it expects to receive in the future, and how PREPA has used and plans to use such funds in the future.

26.     All Documents concerning LUMA's request(s) or proposal for higher rates.

27.     All Documents, from January 1, 2020 to the present, concerning LUMA's revenue, subsidy, customer, or load forecasts.

28.     All Documents, from January 1, 2020 to the present, concerning LUMA's customers' electrical consumption and payments, including but not limited to customer-specific data on electrical consumption and payments, by rate class and accounting period, for all residential, commercial, industrial, and governmental/municipal rate classes, and the method by which data regarding electrical consumption is measured and collected.

29.     Documents sufficient to show all planned, in progress, or completed projects to repair, build, improve, or install new capacity for the transmission and distribution system and power generation since January 1, 2017.

30.     All Documents concerning work performed to date on PREPA's 2023 Fiscal Plan.

31.     Documents sufficient to show the "objective and subjective judgments" that are incorporated into the Debt Sustainability Analysis of PREPA's 2022 Fiscal Plan (at 170), and whether any of those judgments changed between 2021 and 2022.

32.     All Documents produced to any other party or creditor in connection with PREPA's Title III case or restructuring, including but not limited to Documents produced in response to formal discovery requests and Documents provided voluntarily outside of a formal discovery process at any time.

33.     All Documents concerning privatization of PREPA's generating assets or proposed, contemplated, or actual public-private partnership ("P3") agreements related to PREPA.

34.     To the extent not otherwise covered by these Requests, any Documents provided to Bondholders pursuant to any mediation relating to PREPA's Title III case, including in response to diligence requests.  This request can be satisfied without re-production by an agreement that these mediation materials shall be treated as having been produced in response to this Request.

Dated:  San Juan, Puerto Rico
        January 23, 2023

**TORO COLÓN MULLET P.S.C.**

*/s/ Manuel Fernández-Bared*
Manuel Fernández-Bared
USDC-PR No. 204,204
P.O. Box 195383
San Juan, PR 00919-5383
Tel.: (787) 751-8999
Fax: (787) 763-7760
E-mail: mfb@tcm.law

*/s/ Linette Figueroa-Torres*
Linette Figueroa-Torres
USDC-PR No. 227,104
E-mail: lft@tcm.law

*/s/ Nayda Perez-Roman*
Nayda Perez-Roman
USDC–PR No. 300,208
E-mail: nperez@tcm.law

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

**KRAMER LEVIN
NAFTALIS & FRANKEL LLP**

*/s/ Amy Caton*
Amy Caton*
Thomas Moers Mayer*
Alice J. Byowitz*
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100
Fax: (212) 715-8000
Email:  acaton@kramerlevin.com
        tmayer@kramerlevin.com
        abyowitz@kramerlevin.com

Gary A. Orseck*
Matthew M. Madden*
2000 K Street NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
Email:  gorseck@kramerlevin.com
        mmadden@kramerlevin.com

*Admitted Pro Hac Vice*

*Counsel for the Ad Hoc Group of PREPA
Bondholders*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR No. 204,809
    Ricardo F. Casellas-Sánchez
    USDC-PR No. 203,114
    Diana Pérez-Seda
    USDC–PR No. 232,014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Tel.: (787) 756-1400
    Fax: (787) 756-1401
    E-mail:  hburgos@cabprlaw.com
            rcasellas@cabprlaw.com
            dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ William J. Natbony*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    Casey J. Servais*
    William J. Natbony*
    Thomas J. Curtin*
    200 Liberty Street
    New York, New York 10281
    Tel.: (212) 504-6000
    Fax: (212) 406-6666
    Email:  howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           casey.servais@cwt.com
           bill.natbony@cwt.com
           thomas.curtin@cwt.com

*Admitted Pro Hac Vice*

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REICHARD & ESCALERA, LLC**

By: */s/ Rafael Escalara*
    Rafael Escalara
    USDC-PR No. 122,609

    */s/ Sylvia M. Arizmendi*
    Sylvia M. Arizmendi
    USDC-PR No. 210,714

    */s/ Carlos R. Rivera-Ortiz*
    Carlos R. Rivera-Ortiz
    USDC–PR No. 303,409
    255 Ponce de León Avenue
    MCS Plaza, 10th Floor
    San Juan, PR 00917-1913
    Tel.: (787) 777-8888
    Fax: (787) 765-4225
    E-mail:  escalara@reichardescalera.com
           arizmendis@reichardescalera.com
           riverac@reichardescalera.com

*Counsel for Syncora Guarantee, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Susheel Kirpalani*
    Susheel Kirpalani*
    Daniel Salinas
    USDC-PR No. 224,006
    Eric Kay*
    51 Madison Avenue, 22nd Floor
    New York, New York 10010-1603
    Tel.: (212) 849-7000
    Fax: (212) 849-7100
    Email:  susheelkirpalani@quinnemanuel.com
          danielsalias@quinnemanuel.com
          erickay@quinnemanuel.com

*\* Admitted Pro Hac Vice*

*Counsel for Syncora Guarantee, Inc.*

23

**RIVERA, TULLA & FERRER LLC**

*/s/ Eric A. Tulla*
Eric A. Tulla
USDC-DPR No. 118313
Email: etulla@riveratulla.com

Rivera Tulla & Ferrer Building
50 Quisqueya Street
San Juan, PR 00917-1212
Tel: (787)753-0438
Fax: (787)767-5784

*Counsel for U.S. Bank National
Association, in its Capacity as Trustee*

**MASLON LLP**

*/s/ Clark T. Whitmore*
Clark T. Whitmore*
Michael C. McCarthy*
John Duffey*
Jason M. Reed*
90 South Seventh Street, Suite 330
Minneapolis, MN 55402
Tel.: (612) 672-8200
Fax: (612) 672-8397
Email: clark.whitmore@maslon.com
        mike.mccarthy@maslon.com
        john.duffey@maslon.com
        jason.reed@maslon.com

*\* Admitted Pro Hac Vice*

*Counsel for U.S. Bank National
Association, in its Capacity as Trustee*

24