# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| [In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                                    Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                                    Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

**SREAEE'S SUPPLEMENTAL DISCLOSURE STATEMENT OBJECTION**

*[SPACE INTENTIONALLY LEFT BLANK]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**TO THE HONORABLE DISTRICT COURT:**

  **COMES NOW** Sistema de Retiro de Empleados de la Autoridad de Energía Eléctrica ("SREAEE") duly represented by the undersigned counsel and respectfully states as follows:

1. On December 16, 2022, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA"), filed its *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, **[Case No. 17-0480-LTS, Docket No. 3110]**, and its *Disclosure Statement for Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Disclosure Statement"). **[Docket No. 3111]** The deadline to object the Disclosure Statement was February 3, 2023. **[Docket No. 3119]** SREAEE filed its *Objection* within the deadline but reserved the right to supplement it once the Oversight Board had filed an amended version of the Disclosure Statement, as the Oversight Board had represented it would consent to. **[Docket No. 3179]**

2. On February 9, 2023, the Oversight Board filed the *First Amended Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Plan") **[Docket No. 3200]** and subsequently a *Disclosure Statement for First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Amended Disclosure Statement"). **[Docket No. 3201]** On February 10, 2023, the Oversight Board filed its *Omnibus Reply of the Puerto Rico Electric Power Authority to Objections to The (I) Adequacy Of The Disclosure Statement, (II) Relief Requested In The Disclosure Statement Motion, And (III) Relief Requested In The Confirmation Discovery Procedures Motion.* **[Docket No. 3206]** As it stands, SREAEE reiterates its objection to the approval of the Disclosure Statement on the grounds that it does not contain adequate information for SREAEE and other parties to properly consider the Plan.

3. Pursuant to the applicable Bankruptcy Code provisions:

2

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court **as containing adequate information**. 11 U.S.C. § 1125(b)(incorporated in PROMESA by 48 U.S.C. § 2161(a))(emphasis added).

4. "Adequate information" is defined as

   > **information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records**, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class **to make an informed judgment about the plan**, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, **the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information** . . . . 11 U.S.C. § 1125(a)(1)(emphasis added).

5. The Amended Disclosure Statement added information regarding SREAEE, nonetheless, these additions do not fully address SREAEE's previous objections, and they raise new lines of inquiry. These will be addressed separately.

### A. Legacy Pension Payment Funding

6. In its prior *Objection,* SREAEE summarized that the Disclosure Statement describes the proposed governance of the PREPA PayGo Trust ("Trust"), which requires an initial deposit of one million dollars ($1,000,000) to fund administrative fees, costs, and expenses, in addition to ongoing funding. However, the Disclosure Statement failed to specify the source or sustainability of funding for that proposal. In the Amended Disclosure Statement, the Oversight Board stated:

   > The significantly underfunded status of PREPA ERS raises concerns on the solvency of the trust and ability for PREPA ERS to continue to make payments to Retired Participants. To ensure Participants receive their accrued monthly benefits, the Plan provides for funding of retiree benefits under a pay-as-you-go ("PayGo")

3

system, **which will be paid as ordinary operating expenses from PREPA's revenues** as described in the Certified Fiscal Plan. Subject to PREB approval, LUMA believes **the legacy pension costs and the Legacy Charge should be separately and transparently itemized on all customer bills. [Docket No. 3201 at 87]** (emphasis added).

7. The preceding paragraph does not state that a separate charge will be added to customer bills for the payment of pension obligations. Yet, it implies that the cost of paying those pension obligations would be reflected on the customer bills as though it were a separate legacy charge. This is incompatible with the statement that the pension obligations will be paid as an ordinary operating expense, as these are paid indistinctly from PREPA's revenues.

8. Additionally, the Oversight Board added the following emphasized language to the Amended Disclosure Statement:

> PREPA will deposit monies **derived from its electricity rates** in a "PREPA PayGo Trust" in amounts sufficient to pay retirees all pension benefits they will have earned as of the Effective Date, on account of accrued pensions, in the ordinary course rather than funding a trust corpus for investment. Moreover, if the Oversight Board prevails on the lien and recourse counts in the Amended Lien & Recourse Challenge, the PREPA PayGo Trust will receive twenty percent (20.00%) of the Series B Bonds that remain, if any, after accounting for initial distributions to the Settling Bondholders, Non-Settling Bondholders, and Holders of General Unsecured Claims. If Series B Bonds remain after Settling Bondholders, Fuel Line Lenders, and general unsecured claimholders are paid in full, then such excess bonds will either be deemed as not issued by PREPA or will go to the PREPA PayGo Trust or PREPA, or cancelled, **in the Oversight Board's discretion**. **[Docket No. 3201 at 16]** (emphasis added).

9. The foregoing language adds to the ambiguity of the proposed funding source for pension obligations. The phrase "derived from its electricity rates" in conjunction with the suggestion that "the legacy pension costs and the Legacy Charge should be separately and transparently itemized on all customer bills[,]" suggests that PREPA will be implementing a separate, identifiable rate increase for the payment of pension obligations. Nonetheless, this is inconsistent with the characterization that the pension obligations will be paid as regular

4

operating expenses. Moreover, it does little to assuage SREAEE's prior concerns regarding the sustainability of the Oversight Board's proposal, particularly when considering the impact of the Legacy Charge in the economy of Puerto Rico. While other creditors, such as the Fuel Line Lenders,[2] receive detailed information of the source of payment for their claim, SREAEE remains in a general category of spending within the operational expenses of PREPA. This discriminatory treatment is not justified or explained in the Amended Disclosure Statement, particularly when SREAEE has asserted the Current Expense status in this case.

10. Moreover, the Oversight Board added an analysis of the savings it expects to achieve based on the pension reform, partially addressing SREAEE's concerns expressed in its prior *Objection*. According to the Oversight Board, the proposed reform would reduce the pension debt by only $200 million over the next decades, this amounts to less than one percent and is insignificant in the scope of these proceedings. However, the Oversight Board refers to these savings in terms of the impact to ratepayers:

> Because the ADC payment stream ends in twenty years, the cost in cents per kWh to fund it starts at 2.04 cents in calendar year 2024, increasing thereafter to 2.4 cents in calendar 2025 and as high as 3.07 cents in 2037 so that the plan is fully funded in 2042. By contrast, the projected cost to ratepayers to fund the Plan's pension treatment starts at 2.4 cents in 2024, dropping to 1.8 cents in 2031 and gradually declining to below 1 cent by 2050. **[Docket No. 3201 at 88]**

11. This language also contributes to the lack of clarity on the funding of the pension obligations. The Oversight Board's calculations based on impact to ratepayers suggests that there may be a rate increase for the sole purpose of funding pensions, yet this is not included in the treatment of the Plan nor elsewhere mentioned. This is repeated further on:

> [T]he Oversight Board believes there is a substantial risk PREPA ERS will not realize the funding levels that would be generated under the foregoing assumptions, and instead will remain materially underfunded indefinitely, **requiring even higher rate increases** or a bailout from another source to ensure payments to

---

[2] As defined in **Docket No. 3201 at 14 f.n. 7**.

retirees. **[Docket No. 3201 at 88]** (emphasis added).

12. If the Oversight Board intends to impose a legacy pension charge, it should expressly include this proposal in the Amended Disclosure Statement and the Plan. Additionally, it should establish the date for this charge, the proposed amount and the consequences of this charge to the economy and the People of Puerto Rico, under the terms of the Plan. Otherwise, the Amended Disclosure Statement is wholly inadequate and generates confusion regarding the funding of legacy pension debt.

13. Moreover, the Oversight Board did not address SREAEE's concern that the proposed start up amount of $1 million was arbitrarily selected, as there is no indication of what costs and expenses the Oversight Board considered.

## B. Savings Projections

14. In its prior *Objection*, SREAEE pointed out that the Disclosure Statement was devoid of any financial analysis of the savings the Oversight Board projected would be achieved because of the pension freeze. Particularly, SREAEE remarked on the lack of information to show that the Oversight Board's proposed pension reform was necessary nor that the pension system would remain adequately funded as the Oversight Board's mandate dictates under PROMESA. While the Oversight Board provided additional information in the Amended Disclosure Statement, it does not fully address SREAEE's concerns.

15. According to the Oversight Board, the cost of maintaining the current pension system as is approximates $3.622 billion. **[Docket No. 3201 at 88]** In contrast, the proposed pension reform would cost $3.412 billion. **[Docket No. 3201 at 88]** The Oversight Board ventures to project the difference in cost to PREPA's ratepayers—as discussed above to state the ambiguity of the proposed funding—but not in the context of PREPA's restructuring. The savings achieved by the pension reform are projected at around $200 million, which the Oversight Board

6

characterize as "essential to the success of PREPA's restructuring" without further explanation. **[Docket No. 3201 at 88]** However, given the amounts that the Oversight Board is projecting to pay to other creditors, particularly the Fuel Line Lenders and the bondholders, these savings are insignificant in the broader context. This is especially concerning given PROMESA's mandate of adequate funding to public pension systems and that SREAEE is a Current Expense creditor with priority over legacy debt. The Amended Disclosure Statement should include the analysis for favoring these creditors over SREAEE.

16. On the other hand, the Oversight Board makes the following statements about the estimated cost of keeping the pension system "as is":

    > This present value estimate of the ADC payments, however, assumes (a) the amount of unpaid ADC payments by PREPA to date, which could be as high as approximately $1.2 billion by Plan Effective Date, is amortized over the funding period as opposed to paid in a lump sum, (b) the assumed rate of investment return of 5.75% set forth in the PREPA ERS Regulations is achieved, and (c) the ADC funding period lasts approximately twenty years, after which PREPA ERS would be solvent. If PREPA ERS failed to achieve this rate of investment return, or PREPA continues to underfund the ADC payments, the ADC payment obligation and duration would increase. **[Docket No. 3201 at 88]**

17. However, the Oversight Board's analysis includes assumptions that are not grounded in reality—such as the rate of return for SREAEE, which has been historically much higher—and does not present any alternative analysis. It is a "my way or the highway" form of thinking. Moreover, the Oversight Board presents PREPA's failure to fund the pension system as an issue for keeping the defined benefit plan. However, it does not explain this reason. This puts into question the feasibility of the Oversight Board's proposals and how responsible their representations are, given their doubts about PREPA's compliance.

18. Moreover, SREAEE objects to the inclusion of the following statements in the Amended Disclosure Statement:

> Moreover**, given the history of defined benefit plans in Puerto Rico**, including those of the Employees Retirement System, the Teachers Retirement System, the Judicial Retirement System, and PREPA ERS itself, **the Oversight Board believes there is a substantial risk PREPA ERS will not realize the funding levels that would be generated under the foregoing assumptions**, and instead will remain materially underfunded indefinitely, requiring even higher rate increases or a bailout from another source to ensure payments to retirees. **[Docket No. 3201 at 88]** (emphasis added).

19. The Oversight Board's distaste for defined benefit plans has been noted for the record in every Title III proceeding so far. However, this statement incorrectly places the blame for the underfunded status of those plans in their respective systems rather than on the lack of payment by the employer entity. Just as in other cases, SREAEE's underfunded status is a direct result of PREPA's reluctance to comply with its obligations, prioritizing other areas in its stead. If the Oversight Board is suggesting and anticipating that PREPA will continue this pattern, then the issue here is not the nature of the pension system but the willingness or ability of PREPA to comply with its obligations under the Oversight Board's guidance. The Amended Disclosure Statement should discuss the Oversight Board's reasoning here and why it is anticipating poor performance on behalf of PREPA to meet its obligations.

### C. Impact of Genera PR LLC Operating Agreement

20. Lastly, the Amended Disclosure Statement includes, for the first time, information regarding the transaction with Genera PR LLC ("Genera"). However, the discussion of the Genera contract does not include any information regarding the effect of the transaction and the inevitable mobilization of most of PREPA's remaining workforce on the projected savings of the proposed pension reform. It stands to reason that a reduced workforce decreases the burden of PREPA's contributions to SREAEE. Therefore, the pension reform may not produce any savings for PREPA and could be a capricious action. However, there is no analysis on this topic in the Amended Disclosure Statement within the topic of Genera.

8

21. For the foregoing reasons, the Amended Disclosure Statement does not allow creditors and parties in interest to determine if the proposed pension reform is necessary or sustainable, which would affect the viability of the Plan and PREPA's ongoing operations. As such, SREAEE requests that the Oversight Board be ordered to include such additional information in the Amended Disclosure Statement.

WHEREFORE, in view of the foregoing, SREAEE objects to the *Amended Disclosure Statement*, requests relief consistent with this motion.

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *First Amended Standing Order*.

In Ponce, Puerto Rico, this 17 day of February, 2023.





| | |
|---|---|
| ORTIZ MENDOZA & FARINACCI FERNÓS, LLC<br>Edificio Banco Cooperativo Plaza<br>623 Ponce de León Ave., Suite 701-B<br>San Juan, PR 00917-4820<br>Tel: 787-963-0404 | BUFETE EMMANUELLI, C.S.P.<br>P.O. Box 10779<br>Ponce, Puerto Rico 00732<br>Tel.: 787-848-0666<br>Fax: 1-787-841-1435 |
| */s/Rafael A. Ortiz-Mendoza*<br>Rafael A. Ortiz-Mendoza, Esq.<br>USDC-PR: 229103<br>rafael.ortiz.mendoza@gmail.com | */s/Rolando Emmanuelli-Jiménez*<br>Rolando Emmanuelli-Jiménez, Esq.<br>USDC: 214105<br>rolando@emmanuelli.law |
| *Co-counsel to SREAEE* | */s/Jessica E. Méndez-Colberg*<br>Jessica E. Méndez-Colberg, Esq.<br>USDC: 302108<br>jessica@emmanuelli.law |

*/s/ Zoé C. Negrón-Comas*
Zoé C. Negrón-Comas, Esq.
USDC: 308702
zoe@emmanuelli.law

*Co-counsel to SREAEE*

10