IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                                Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                                 Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17 BK 4780-LTS |

UTIER'S SUPPLEMENTAL DISCLOSURE STATEMENT OBJECTION AND
JOINDER TO SREAEE'S SUPPLEMENTAL DISCLOSURE STATEMENT
OBJECTION

*[SPACE INTENTIONALLY LEFT BLANK]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**TO THE HONORABLE DISTRICT COURT:**

  **COMES NOW** Unión de Trabajadores de la Industria Eléctrica y Riego, Inc. ("UTIER") duly represented by the undersigned counsel and respectfully states as follows:

1. On December 16, 2022, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA"), filed its *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, **[Case No. 17-0480-LTS, Docket No. 3110]**, and its *Disclosure Statement for Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Disclosure Statement"). **[Docket No. 3111]** The deadline to object the Disclosure Statement was February 3, 2023. **[Docket No. 3119]** UTIER filed its *Objection* within the deadline but reserved the right to supplement it once the Oversight Board had filed an amended version of the Disclosure Statement, as the Oversight Board had represented it would consent to. **[Docket No. 3178]**

2. On February 9, 2023, the Oversight Board filed the *First Amended Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Plan") **[Docket No. 3200]** and subsequently a *Disclosure Statement for First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* ("Amended Disclosure Statement"). **[Docket No. 3201]** On February 10, 2023, the Oversight Board filed its *Omnibus Reply of the Puerto Rico Electric Power Authority to Objections to the (I) Adequacy of the Disclosure Statement, (II) Relief Requested in the Disclosure Statement Motion, and (III) Relief Requested in the Confirmation Discovery Procedures Motion* ("Omnibus Reply"). **[Docket No. 3206]** As it stands, UTIER reiterates its objection to the approval of the Disclosure Statement on the grounds that it does not contain adequate information for UTIER and other parties to properly consider the Plan.

3. Pursuant to the applicable Bankruptcy Code provisions:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court **as containing adequate information**. 11 U.S.C. § 1125(b)(incorporated in PROMESA by 48 U.S.C. § 2161(a))(emphasis added).

4. "Adequate information" is defined as

   > **information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records**, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class **to make an informed judgment about the plan**, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, **the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information** . . . . 11 U.S.C. § 1125(a)(1)(emphasis added).

5. The Amended Disclosure Statement added information regarding UTIER, nonetheless, these additions do not fully address UTIER's previous objections, and they raise new lines of inquiry. These will be addressed separately. Additionally, because its members are affected by the same issues, UTIER joins SREAEE's filing at **[Docket No 3220]**.

   A. **REJECTION OF UTIER'S COLLECTIVE BARGAINING AGREEMENT**

6. Pursuant to the Disclosure Statement and the Amended Disclosure Statement, the Oversight Board intends to reject the Collective Bargaining Agreement ("CBA") with UTIER. Since the prior *Objection*, UTIER stated that the Disclosure Statement did not provide information regarding the financial reasons for rejecting the CBA and that the focus appeared to be doing away with the pension system.

7. In the Amended Disclosure Statement, the Oversight Board stated more bluntly that it "is continuing to engage in negotiations regarding the unsustainable obligations described above.

3

If an agreement cannot be reached with respect to these obligations, PREPA may need to seek rejections of the CBAs." **[Docket No. 3201 at 82]** Additionally, it included an Exhibit Q with the "ANALYSIS OF SAVINGS OF CBA MODIFICATIONS". **[Docket No. 3201-17]** Pursuant to the provided document, the potential savings amount to $54,675,000 in the span of five years. **[Docket No. 3201-17 at 4]** Moreover, other provisions of the CBA are not rejected for monetary purposes, but for ideological purposes disguised as "flexibility". **[Docket No. 3201-17 at 7]** Nonetheless, the summary provided can hardly be called an analysis. Exhibit Q does not provide any information regarding the amount of employees covered by the CBAs nor the actual cost of the CBAs benefits per union or employee. **[Docket No. 3201-17]**

8. Moreover, while the Amended Disclosure Statement responds to UTIER's prior *Objection* and mentions the Operation and Management Agreement ("O&M") with the private company Genera PR LLC ("GENERA"), it does not include any information regarding the effect of the transaction and the inevitable mobilization of most of PREPA's remaining workforce on the projected savings for the rejection of the CBA. It stands to reason that a reduced workforce decreases the cost of maintaining the CBA. Additionally, the Oversight Board itself admits that other than the pension reform, the rejection of the CBA provides minimal savings, particularly in light of the GENERA contract. **[Docket No. 3206 at 6]** Therefore, the rejection of the CBA may not produce any significant savings for PREPA and would be a capricious action.

9. Without updated and detailed information in the savings analysis, the Amended Disclosure Statement does not adequately represent the needed data for a vote on the confirmation of the Plan.

### B.  IMPACT OF THE GENERA PR CONTRACT

10. In its prior *Objection*, UTIER argued that the Disclosure Statement included no mention of GENERA O&M. This information was necessary because the O&M has an impact on PREPA's finances, as PREPA's budget is split to pay the operation fees of GENERA and LUMA, as well as the pass-through expenditures they incur in.

11. In the Amended Disclosure Statement, the Oversight Board broadly describes the O&M and GENERA. Regarding the financial impact of the transaction, it states: "Genera estimates the Legacy Generation Asset O&M Agreement will result in (i) operation and management savings of $19 million per year and (ii) fuel savings of approximately $85 million per year. The Oversight Board has not independently verified these estimates." **[Docket No. 3201 at 131]** Given the multimillion-dollar compensation fee and additional incentives that PREPA will be paying GENERA, on top of LUMA's, it stands to reason that the Oversight Board provide its own analysis of the savings expected from GENERA's operations in contrasts with the costs. It is unclear from the Amended Disclosure Statement whether the O&Ms are a burden or a relief for PREPA. This distinction is essential to the Amended Disclosure Statements adequacy.

12. For the foregoing reasons and those included in the prior *Objection*, the Amended Disclosure Statement does not allow creditors and parties in interest to judge the viability of the proposal. As such, UTIER requests that the Oversight Board be ordered to include such additional information in the Amended Disclosure Statement.

    **WHEREFORE**, in view of the foregoing, UTIER objects to the *Amended Disclosure Statement*, requests relief consistent with this motion.

    **WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *First Amended Standing Order.*

In Ponce, Puerto Rico, this 17 day of February, 2023.



BUFETE EMMANUELLI, C.S.P.
P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 1-787-841-1435

*/s/Rolando Emmanuelli-Jiménez*
Rolando Emmanuelli-Jiménez, Esq.
USDC: 214105
rolando@emmanuelli.law

*/s/Jessica E. Méndez-Colberg*
Jessica E. Méndez-Colberg, Esq.
USDC: 302108
jessica@emmanuelli.law

*/s/ Zoé C. Negrón-Comas*
Zoé C. Negrón-Comas, Esq.
USDC: 308702
zoe@emmanuelli.law

*Counsel to UTIER*

6