# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, et al., Debtors | PROMESA Title III **Case No. 17 BK 3283-LTS** |
| In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, Debtor | PROMESA Title III Case No. 17 BK 4780-LTS |

## PV PROPERTIES, INC.'S SUPPLEMENTAL OBJECTION TO DISCLOSURE STATEMENT

**TO THE HONORABLE COURT:**

COMES NOW PV Properties, Inc. ("PV Properties"), through its undersigned counsel, and respectfully states and requests:

1. On December 16, 2022, the Financial Oversight and Management Board (the "Oversight Board"), as representative of Puerto Rico Power Authority ("PREPA"), filed its plan of adjustment (the "Plan") and its Disclosure Statement (the "Disclosure Statement") in the captioned case [**ECF No. 23097**].

2. The Court granted creditors and parties in interest until February 3, 2023 at 5:00 p.m. (AST) to file objections to the approval of the adequacy of the Disclosure Statement [**ECF No. 23159**].

3. The deadline to object to the Disclosure Statement was February 3, 2023 [**ECF No. 23159**].

4. On January 26, 2023, PV Properties timely filed its objection to the Disclosure Statement [**ECF No. 23391**].

5. However, on February 9, 2023, the Oversight Board filed a first amendment to the Plan (the "Amended Plan") [**ECF No. 23506**] and an amended Disclosure Statement to the Amended Plan (the "Amended Disclosure Statement").

6. On February 10, 2023, the Ad Hoc Group of PREPA Bondholders filed an *Urgent Motion to File Supplemental Objection to Disclosure Statement for First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* (the "Motion") [**ECF No. 23515**]. As such, PV Properties respectfully submits this Joinder to the relief sought in the Motion.

7. As the Amended Disclosure Statement introduces significant changes to its prior version, but does not address PV Properties' objection, PV Properties joins the relief sought in the Motion and also requested leave to file a supplemental objection by February 17, 2023, at 3:00 p.m. (AST).

8. What follows are PV Properties' supplemental objections to the adequacy of the Amended Disclosure Statement.

9. PV Properties submits that the Amended Disclosure Statement is defective as it attempts to by-pass the rate setting functions of the Puerto Rico Energy Board ("PREB"), as established by the following legislation:

Act 57-2014 "The Puerto Rico Energy Transformation and Relief Act"

Act 17-2019 "Puerto Rico Energy Public Policy Act"

10. Specifically when the Amended Disclosure Statement refers to the additional charges, (both volumetric and non volumetric) and specifies their application to customers classes, it by-passes and overrides PREB's powers.

2

11. The aforesaid has to be gauged within the context of the Puerto Rico Oversight Management and Economic Stability Act ("PROMESA"), 48 U.S.C. § § 2211-2717, which recognizes the powers vested on PREB.

12. The Puerto Rico Energy Commission ("PREC"), now PREB, is an integral part of PROMESA.

13. Trough Section 503 (48 U.S.C. § 2213), Congress recognized PREC as an integral part of PROMESA's energy revitalization sector, establishing an unambiguous legal duty of the Oversight Board to "support" PREC, now PREB, by stating as one of its goals to:

> "[…] (iii) expedite the diversification and conversion of fuel sources for electric generation from oil to natural gas and renewables in Puerto Rico as defined under applicable Puerto Rico laws; (iv) promote the development and utilization of energy sources found on Puerto Rico; (v) contribute to transitioning to privatized generation capacities in Puerto Rico; (vi) support the Energy Commission of Puerto Rico in achievement of its goal of reducing energy costs and ensuring affordable energy rates for consumers and business […]." § 2213(a)1.

14. The Oversight Board not only has usurped PREB's powers, but has done so without the due process provided by PREB in establishing rates.

15. The funds needed by PREPA to comply with its legal obligations, new and legacy, is a cost to be analyzed and provided for in a rate case scenario by PREB. Equally, any additional cost to consumer classes, is also PREB's prerogative in a rate case.

16. To maintain the lowest possible cost per kilowatt/hour is also PREB's responsibility in the implementation of the specific mandates of Acts 57-2019 and 17-2019.

17. If the Oversight Board, acting for PREPA, determines PREPA's new rates, as it does in the Amended Disclosure Statement, it would be moving the clock back to before 2014 when PREPA regulated itself and established its own rates. That is no longer the legal model, but the Oversight Board's actions are tantamount to a return to the pre-2014 legal scheme.

18. Moreover, it is obvious that the Oversight Board's proposed solution imposes on

3

electric power consumers the full cost of a legacy debt that occurred, not for their benefit, but for the benefit of Puerto Rico's economy as whole. Not raising electric rates as was needed was a political-economic decision. Now the Oversight Board pretends to impose a payment on the consumers of electricity, not responsible and who did not benefit from PREPA's political mismanagement.

19. The increase in costs to the consumers is in fact an increase in rate and charges, as such PREB's responsibility. The additional charge- at least the non volumetric- is a tax on electricity consumers for them to pay for PREPA's political mismanagement. It is a tax that, as any tax, should be legislated in conformity with the Constitution of the Commonwealth of Puerto Rico (the "Commonwealth").

20. It must be underscored that PROMESA Section 303 specifically states that subject to the limitations set forth in Titles I and II thereof, inapposite here, does not limit or impairs the Commonwealth in the exercise of its political or governmental powers, to control by legislation the rates to be paid by the consumer classes.

21. When addressing PREB's creation and Act 17. (page 428 of 832) – as to the role of PREB, the Amended Disclosure Statement unequivocally states: *("PREB"), is an independent governing body responsible for regulating, supervising, and ensuring compliance with Puerto Rico's public policy on energy. Lastly, PREB was also responsible for reviewing and approving energy rates.*

22. What follows are additional reasons for PV Properties objecting to the Amended Disclosure Statement, setting forth particular modifications thereto.

23. The Amended Disclosure Statement (page 403 of 832) adds the following:

A. Exhibit P – Legacy Charge Derivation (page 416 of 832)

B. The following sentences in I. Preface, B. Revenue Support for Plan and the Legacy Charge (page 421 of 832). However, because PREPA's continued operations are

4

necessary to generate any revenue, the New Bonds are structured so that all revenue, including those from the Legacy Charge be destined to the payment of PREPA's necessary and reasonable operating expenses. While there is currently no requirement under the New Bonds that rates, other than the Legacy Charge, generate sufficient revenues to pay for operating expenses, a task that PREPA's regulator, PREB, is in charge of and required to exercise its power over rates to ensure that PREPA recovers all reasonable operational and maintenance costs (Act 57-2014 § 6.25(b)) and meets its obligations to bondholders (Act 17-2019 § 6.3(p)). If PREB does not set rates sufficient to cover PREPA's operating expenses, the holders of New Bonds may seek enforcement of the Interest Rate Covenant.

C. A new sentence to Overview of Legacy Charges- Application of the Legacy Charges (page 455 of 832) is added at the end and a detailed description of the derivation of the Legacy Charge structure is attached as Exhibit P, as well as a Legacy Charge Allocation.

**PV Properties' Proposed Modifications to the Disclosure Statement:**

24. PV Properties requests that Exhibit P and Schedule B to the Amended Disclosure Statement, Legacy Charge and Annex 1 (to Schedule B) Article XVIII. F. Legacy Charge (page 41) be substituted with the following statement:

### Assignment of the Legacy Charge Among Customers

Having developed what the projected annual value of the Legacy Charge needs to be, the Oversight Board should request PREB to develop the specific Legacy Charge rate designated for each customer class in order to assure the needed revenue, keeping in mind that the Legacy Charge is not a liability built in good faith but for political gain, incurred with the consent of the self-regulated monopoly (PREPA) and its bondholders. This liability was incurred for the Commonwealth's economy to grow, when, as recognized by the Oversight Board, increases in energy process have a detrimental effect on the Commonwealth's economy.

5

The Legacy Charge was generated by the Commonwealth's self-regulated monopoly (PREPA), with no timely action by the bondholders, who now pretend for it to be paid from rates to be borne by current and future generations of the residents of Puerto Rico with no responsibility for what is tantamount to a self-inflicted injury. The specific composition of rates to be charged across the various PREPA rate classes in connection with the Legacy Charge, should be fixed by PREB.

PREPA, the Commonwealth's self-regulated monopoly didn't charge fair and reasonable rates to guarantee compliance with its bond obligations and the bondholders, who had the power to demand that such rates were sufficient to meet the obligations, failed do so in order to meet the required payments.

25. PV Properties also requests that Article XVIII. F. Legacy Charge (page 41) which currently reads:

> "On or prior to the Effective Date, the Legacy Charge shall be implemented by the Reorganized Debtor or any qualified operator of the transmission and distribution system (including LUMA Energy), and approved by PREB, as detailed in Schedule B hereto and required by the New Master Indenture; provided, however, that, Reorganized PREPA and/or PREB, with the approval of the Oversight Board while in existence, can modify the fixed fee and volumetric charge that comprise the Legacy Charge in an economically neutral manner as set forth in the New Master Indenture, in structure and amounts that do not delay or extend the respective expected repayment date and expected weighted average life of the Series A Bonds and the Series B Bonds, and otherwise that are reasonably acceptable to the Required Fuel Line Lenders, and which shall not decrease the projected Revenues attributable to the Legacy Charge as of the date of the amendment to the Legacy Charge (the "Amendment Test"). The Oversight Board as representative of the Debtor and/or Reorganized Debtor is authorized to take all actions necessary to enter into, implement, and enforce the Legacy Charge, and amendments thereto in accordance with this Article XVIII.F.
>
> As required by the Plan, consistent with PREPA Fiscal Plan, mandated by 11 U.S.C. § 1142(b) and the Confirmation Order, PREB shall approve and implement the Legacy Charge as required by §§ 6.3(p) and (q) of Act 17-2019 and the New Master Indenture (subject to its right, in accordance with the Amendment Test, to modify the fixed fee and volumetric charge that comprise the Legacy Charge in a neutral economic manner), until the New Bonds, Refunding Bonds (if any), and CVI are defeased in full or have

expired in accordance with their terms and shall refrain from taking any actions that will frustrate, diminish, or otherwise impair the value of the Legacy Charge or PREPA's ability to collect the Legacy Charge."

be amended to simply state:

On or prior to the Effective Date, the Legacy Charge shall be implemented by the Reorganized Debtor or any qualified operator for the transmission and distribution system (including LUMA Energy), as approved by PREB.

26. In support of the above PV Properties submits: "give to Caesar what is Caesar's and to God what is of God". With this in mind we must ask ourselves:

(a) Does PROMESA allow PREPA to set electric tariff rates?

No Public Utility Regulatory Commission (PUC) in the USA will accept Exhibit P- LEGACY CHARGE DERIVATION- to determine rates. Exhibit P is a conundrum of simplistic and unsupported statements.

(b) Are economic and societal considerations the exclusive purview of the Oversight Board?

Is the Oversight Board the only one capable of determining how to achieve the goals of sustainability and affordability?

Shouldn't this be PREB's task, a Puerto Rican Regulatory Agency established for regulating the rates of electricity in the public interest, the one to define and design the general design of the Legacy Charge rates, or should it be the Oversight Board, whose purpose is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets. Consequently, PREB's powers and functions are not inconsistent with PROMESA nor with the purpose for the creation of the Oversight Board to provide a method for the Commonwealth to achieve financial responsibility and access to the capital markets, as set forth in PROMESA Section 101.

(c) In regulating electricity rates in Puerto Rico, PREB is not interfering with any of the

7

provisions of PROMESA, unless it "refrains from taking any actions that will frustrate, diminish, or otherwise impair the value of the Legacy Charge or PREPA's ability to collect the Legacy Charge." There is no reason to believe it has or that it will.

(d) A Public Utility Company makes a new tariff rate determination only after public hearings where stakeholders, the general public and the commissioners question the petitioner's statements and evidence.

(e) The Oversight Board proposes a debt adjustment to the Legacy Debt that in its best judgement will allow PREPA to emerge from bankruptcy as a viable enterprise. The annual revenues needed to pay for the new debt depend on the negotiated new debt amount, its amortization rate and interest payment. The needed annual revenue can come either from the Puerto Rican taxpayers and/ or from PREPA's customers.

(f) What is difficult to understand is why the Oversight Board seeks to by-pass PREB and have the Court adjudicate its unsupported simplistic determination of what each tariff class client should contribute to the needed annual revenue amount. Allowing the Oversight Board's Guiding Principles to become the foundation for PREB's "independent" approval of rates, is a slippery slope.

(g) The Oversight Board's role is to determine the annual revenue needed to pay for the adjusted debt. PREB's role is to carry out a regulatory proceeding to determine what are the fair and equitable rates that each rate payers will have to contribute to pay for the annual cost of the Legacy Debt.

(h) The Oversight Board is only Puerto Rico's debt Caesar it should not vest itself with additional robes.

**WHEREFORE**, it is respectfully requested that the Amended Disclosure Statement be further amended to provide as indicated above.

8

**CERTIFICATE OF SERVICE**: We hereby certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

San Juan, Puerto Rico this 17th day of February 2023

| *s*/**Fernando E. Agrait** <br> USDC-PR 127212 <br> 701 Avenida Ponce de León <br> Edificio Centro de Seguros <br> Oficina 414 <br> San Juan, Puerto Rico 00907 <br> Tel. 787-725-3390/3391 <br> Fax: 787-724-0353 <br> E-mail: agraitfe@agraitlawpr.com | *s*/**Charles A. Cuprill-Hernandez** <br> USDC-PR 114312 <br> Charles A. Cuprill, P.S.C., Law Offices <br> 356 Fortaleza Street - Second Floor <br> San Juan, PR 00901 <br> Tel.: 787-977-0515 <br> Fax: 787-977-0518 <br> E-mail: cacuprill@cuprill.com |
|---|---|