UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of | Title III |
| | No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors, | |
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as a representative of | PROMESA |
| | Title III |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | No. 17-BK-4780 (LTS) |
| Debtor. | |

**OBJECTION BY AHIMSA FOUNDATION TO DISCLOSURE STATEMENT
FOR FIRST AMENDED TITLE III PLAN OF ADJUSTMENT OF THE
PUERTO RICO ELECTRIC POWER AUTHORITY**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT .................................................**Error! Bookmark not defined.**

OBJECTIONS............................................................................................................................2

CONCLUSION..........................................................................................................................7

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Am. Capital Equip., LLC*,
    688 F.3d 145 (3d Cir. 2012)................................................................................................3

*In re Ferretti*,
    128 B.R. 16 (Bankr. D.N.H. 1991) .....................................................................................2

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
    637 B.R. 223 (D.P.R. 2022)................................................................................................4

*In re Unichem Corp.*,
    72 B.R. 95 (Bankr. N.D. Ill. 1987) .....................................................................................2

**Statutes**

11 U.S.C. §§ 1125(a)(1) & (b)........................................................................................................2

11 U.S.C. § 1125(b) .................................................................................................................2, 3, 4

Ahimsa Foundation ("Ahisma"), a non-profit foundation and creditor and party-in-interest herein, respectfully submits this objection to the *Motion of Puerto Rico Electric Power Authority for Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 3111] (the "Motion") and the related *Disclosure Statement for First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on February 9, 2023 [ECF No. 3201] (the "Disclosure Statement" or "DS"), and states as follows.[1]

## PRELIMINARY STATEMENT

1. Ahimsa is a non-profit foundation dedicated to the principle of nonviolence toward all living beings. Ahimsa's mission is to promote a sustainable and ethical shift in our food system away from animal proteins to healthier and more sustainable vegan options, and it invests in projects that further this mission. Ahisma is the beneficial owner of approximately $12 million of Uninsured PREPA Revenue Bonds.

2. Ahisma objects to the Disclosure Statement proposed by the Oversight Board – and the Settlement Agreement Notice[2] incorporated by reference therein – because they lack critical information necessary for Ahimsa and other Holders of Uninsured PREPA Revenue Bonds to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Amended Disclosure Statement.

[2] *See Notice of Distribution of Settlement Offer Notice to Uninsured Bondholders* [ECF No. 3171] (the "Settlement Agreement Notice" or "Notice").

make an informed judgment about the proposed Plan. Most critically, the Disclosure Statement and Settlement Agreement Notice fail to adequately detail or explain key material aspects of the settlement and the legal and financial characteristics of the Series B-1 Bonds and CVI that are to be distributed to Settling and Non-Settling Bondholders under the proposed Plan. Not only does the Disclosure Statement fail to provide adequate information with respect to the treatment and recoveries of Uninsured PREPA Revenue Bonds under the Plan, but the Settlement Agreement Notice previously disseminated to Holders is materially misleading and constitutes an improper solicitation under Bankruptcy Code section 1125. 11 U.S.C. § 1125(b).

3. For these reasons, the Motion should be denied and the Court should direct the Oversight Board to provide proper and meaningful information to the Holders of Uninsured PREPA Revenue Bonds regarding the proposed Plan settlement and the treatment and recoveries of their Claims before undertaking an approved solicitation.

## OBJECTIONS

4. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement contain "adequate information," which the Code defines as "information of a kind, and in sufficient detail ... that would enable ... a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. §§ 1125(a)(1) & (b). To satisfy the requirements of section 1125(b), a disclosure statement must provide each creditor with all material information, including "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). *See also In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan."). The

Oversight Board bears the burden of establishing that the Disclosure Statement contains "adequate information" in accordance with section 1125. *See, e.g.*, *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012). The Oversight Board has not met its burden.

5. Here, the Disclosure Statement fails to provide even the most basic information needed to evaluate the Plan, including (i) the material aspects of the Uninsured Bond Settlement Agreement (such as termination rights, the inclusion and scope of releases, *etc.*), (ii) the legal and financial characteristics of the Series B-1 Bonds and CVI that are to be distributed to both Settling and Non-Settling Bondholders under the proposed Plan, and (iii) how the cap on the total distributable value under the Plan was computed and why it continues to be a moving target.

6. The Settlement Agreement Notice and related documents were disseminated to the Holders on January 27, 2023, prior to any approval of the Oversight Board's Disclosure Statement (which has since been substantially modified). The Settlement Agreement Notice purports to require Holders to elect their treatment under the proposed Plan on or before February 24, 2023 – *i.e.*, four (4) days *before* the scheduled Disclosure Statement hearing. This disjointed timeline is a transparent attempt by the Oversight Board to force Holders of Uninsured PREPA Revenue Bonds to make a hasty decision about their classification, treatment and recoveries under the proposed Plan, without the benefit of an approved disclosure statement. This forces Holders, most of whom have not been involved in the underlying Amended Lien & Recourse Challenge and may not have even a rudimentary understanding about the litigation, to make a premature and uninformed determination regarding, *inter alia*, (i) the Holders' rights and claims against PREPA, (ii) the likely outcomes in the Amended Lien & Recourse Challenge, and (iii) the effect those likely outcomes may have on the treatment of their Claims and hypothetical recoveries under the proposed Plan. These details are material, and they fall squarely within the ambit of "adequate

3

information" which must be provided to Holders pursuant to an approved Disclosure Statement pursuant to Bankruptcy Code Section 1125.

7. The dissemination of the Settlement Agreement Notice and related documents, including the abridged and inadequate description of the Plan terms and classification schemes therein, constitutes an improper solicitation under Bankruptcy Code section 1125(b). The Oversight Board has asserted that the dissemination of the Notice was not a solicitation because Holders who opt to join the settlement are still entitled to vote *for* or *against* the proposed Plan.[3] However, this purported voting right is purely ephemeral because the electing holders are bound by their classification and treatment under the Plan even if they vote against it.[4] In this respect, the Holder's election to settle does not "remain[] executory until the creditor file[s] its accepting ballot." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 637 B.R. 223, 284-85 (D.P.R. 2022) (quoting *In re Heritage Org., L.L.C.*, 376 B.R. 783, 793 (Bankr. N.D. Tex. 2007)). Instead, the Settling Bondholders are immediately and irreparably locked-in to the Plan settlement regardless of how or whether they vote.

8. Even if the Court determines that the dissemination of the Settlement Agreement Notice does not constitute an improper solicitation, the issue of whether the Disclosure Statement satisfies the requirements under Section 1125(b) must nonetheless be evaluated in conjunction with the Settlement Agreement Notice transmitted to Holders. This is because both the Disclosure Statement and the proposed Plan directly reference and incorporate the Settlement Agreement

---

[3] *See Omnibus Reply of the Puerto Rico Electric Power Authority to Objections to the (I) Adequacy of the Disclosure Statement, (II) Relief Requested in the Disclosure Statement Motion, and (III) Relief Requested in the Confirmation Discovery Procedures Motion* [ECF No. 3206] at 46-47.

[4] Notice, Exhibit B at § 5.03 (Settling Bondholders covenant to "support, and not otherwise object to … confirmation of the Plan").

4

Notice (sometimes referred to in those documents as the "Settlement Offer Memorandum").[5] For example, the proposed Plan describes the "settlement offer memorandum and settlement agreement" as being "made to all Holders of Uninsured PREPA Revenue Bond Claims, describing the terms of the settlement offer being made to such Holders pursuant thereto, including the proposed treatment of PREPA Revenue Bond Claims pursuant to Article IV of the Plan … pursuant to which a Holder of Uninsured PREPA Revenue Bonds may accept the proposed classification and settlement for such Claim." Plan 26. In short, the Settlement Agreement Notice and the Uninsured Bond Settlement Agreement is integrated with the Disclosure Statement and the Plan; it is an integral component of the Plan which dictates the classification and treatment of the Holders' Claims thereunder. Because the Disclosure Statement and accompanying Plan both reference and incorporate the Settlement Agreement Notice and Uninsured Bond Settlement Agreement, these documents are part of the Disclosure Statement solicitation regime and must be evaluated as providing adequate – and not misleading – information.

9. Although incorporated by reference in the Disclosure Statement and the Plan, the Settlement Agreement Notice contains inadequate and, in some cases, materially misleading information. For example, the Notice states on the first page that, although Insured Bonds are not eligible to participate in the Uninsured Bond Settlement Agreement, the monoline insurers "will be provided with a *similar* proposal separately." Notice 1 (emphasis added). This suggestion of *similar* treatment for Insured Bonds as an inducement for the Holders of Uninsured Bonds to settle is clearly misleading; as we now know, National was not offered a "similar" treatment. National was offered a settlement that is materially higher and substantively superior to the settlement offered to the Holders of Uninsured PREPA Revenue Bonds.

---

[5] *See, e.g.*, DS 4, 47, 51 & 259.

5

10. In addition, material information is lacking with respect to the legal and financial characteristics of the Series B-1 Bonds and CVI that are to be issued to Holders of Uninsured PREPA Revenue Bonds under the proposed Plan, such as (i) when the Series B-1 Bonds and CVI will be issued, (ii) what the fair market value of the securities will be, and (iii) whether that market value equates to the 50% recovery represented in the Plan and the Uninsured Bond Settlement Agreement. At a minimum, draft copies of the operative documents governing the terms, conditions and covenants of the Series B-1 Bonds and CVI should be included with the Disclosure Statement and solicitation package in order to ensure that Holders have adequate information about the fundamental characteristics of the securities.

11. The Term Sheet attached to the Settlement Agreement Notice suggests that Settling Bondholders are required to provide third party releases. Notice, Appendix A at 6 ("the Settling Bondholder shall release any other party in interest that may be liable on account of the Uninsured Bonds"). However, the scope, nature and rationale for such third party releases is not addressed, adequately or at all, in the Notice or the Disclosure Statement, nor are the beneficiaries of such third party releases clearly identified. Given the extraordinary nature of the third party releases in bankruptcy jurisprudence, the omission of adequate information about the purported releases is material.

12. Even though the Uninsured Bond Settlement Agreement is a key component of the proposed Plan, the Disclosure Statement does not apprise Holders that the Oversight Board may unilaterally terminate the settlement, at will, even after Holders of Uninsured PREPA Revenue Bond Claims have accepted it and elected to receive the treatment provided under Class 1 of the Plan. *See* Notice, Appendix B at 8-9 (sections 10.02(a)(ii), (iii) & (xi)). This makes the settlement completely illusory and non-binding on the part of the Oversight Board. The Disclosure Statement

6

merely notes that "Settling Bondholders may only terminate the Settlement Agreement in limited circumstances" and that, if "agreements with Settling Bondholders or Settling Monolines are terminated, the ability of the Debtor to confirm the Plan may be materially and adversely affected." DS, 343. But the Disclosure Statement does not advise Holders that the Uninsured Bond Settlement Agreement is essentially an option contract for the benefit of the Oversight Board, which it may unilaterally terminate, thereby cancelling the treatment promised to Settling Bondholders.

13. The Disclosure Statement also fails to provide adequate information to Holders with respect to the quantum of creditor recoveries. The initial iteration of the Plan was premised upon a $5.4 billion cap on total distributable value to creditors, but no meaningful explanation for that figure was provided in the Disclosure Statement. Under the recently amended iteration of the Plan, the cap has apparently been raised to accommodate the settlement with National, but once again with no detail or explanation of its formulation. The Disclosure Statement does not describe how the cap on the total distributable value under the Plan was computed and why it continues to be a moving target. At a minimum, the Disclosure Statement should explain to Holders why PREPA cannot at least pay the amount of the Oversight Board's final mediation offer which contemplated approximately $7.8 billion of total distributable value.

## CONCLUSION

14. Both the Disclosure Statement and the Settlement Agreement Notice incorporated therein (and in the Plan, itself) fail to provide adequate information to Holders of Uninsured PREPA Revenue Bonds on a variety of issues that are of critical importance to their proposed treatment and recoveries. In fact, certain of the disclosures provided to Holders are materially misleading. Accordingly, the Motion should be denied and the Court should direct the Oversight

Board to provide proper and meaningful information to the Holders of Uninsured PREPA Revenue Bonds regarding the proposed Plan settlement and the securities to be provided before authorizing the Oversight Board to undertake a proper solicitation.

Dated: February 17, 2023

Respectfully submitted,

| SEPULVADO, MALDONADO & COURET | MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. |
|---|---|
| By: /s/ Elaine M. Maldonado-Matías <br><br>Elaine M. Maldonado-Matías <br>USDC-PR No. 217309 <br>Telephone: (787) 765-5656 <br>Email: emaldonado@smclawpr.com <br><br>By: /s/ Walter Lebrón Ramírez <br><br>Walter Lebrón-Ramírez <br>USDC-PR No. 305901 <br>Telephone: (787) 765-5656 <br>Email: wlebron@smclawpr.com <br><br><br>By: /s/ *Lee R. Sepulvado Ramos* <br><br>Lee Sepulvado Ramos <br>USDC-PR No. 211912 <br>Telephone: (787) 765-5656 <br>Email: lsepulvado@smclawpr.com <br><br>304 Ponce de León <br>Suite 990 <br>San Juan, PR 00918 | William W. Kannel (subject to *pro hac vice*) <br>One Financial Center <br>Boston, Massachusetts 02111 <br>Facsimile: (617) 542-2241 <br>Email: WKannel@mintz.com <br><br>Nathan F. Coco (subject to *pro hac vice*) <br>919 Third Avenue <br>New York, New York 10022 <br>Office No.: (713) 234-6477 <br>E-mail: NFCoco@mintz.com |

9