**Objections Due:** February 28, 2023 at 4:00 p.m. (AST)
**Hearing Date:** March 15, 2023 at 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## PREPA'S MOTION FOR ENTRY OF ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR MOBILIZATION SERVICES UNDER THE PUERTO RICO THERMAL GENERATION FACILITIES OPERATION AND MANAGEMENT AGREEMENT

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION AND VENUE ............................................................................................... 4

BACKGROUND ....................................................................................................................... 5

    A.   PREPA Operations and Management ................................................................ 5

    B.   Overview of the PREPA Transformation Process ............................................ 7

    C.   The Generation Contract Selection Process ..................................................... 8

    D.   The Contract Approval Process ........................................................................ 9

    E.   Genera's Services under the Generation Contract ........................................... 9

    F.   Mobilization Period ....................................................................................... 11

RELIEF REQUESTED ........................................................................................................... 13

BASIS FOR RELIEF ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 1701 Commerce, LLC*,
No. 12-41748-DML-11, 2014 WL 4657314 (Bankr. N.D. Tex. Sept. 17, 2014) ..........................16

*In re Craig Cnty. Hosp. Auth.*,
572 B.R. 340 (Bankr. N.D. Okla. 2017) ......................................................................................15

*Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*,
954 F.2d 1 (1st Cir. 1992)...........................................................................................................15

STATUTES

11 U.S.C. § 503(b)(1)(A) ...............................................................................................................14

48 U.S.C. § 2161(c)(5).....................................................................................................................14

48 U.S.C. §§ 2101–2241 ...................................................................................................................1

OTHER AUTHORITIES

*2022 Certified Fiscal Plan for the Puerto Rico Electric Power Authority*
(June 28, 2022),
https://drive.google.com/file/d/1f6VCpY8sWmshvshWLNlJn52LFAvLABgk/view. ..............2, 17

*Cent. Off. for Recovery, Reconstruction & Resiliency*,
https://recovery.pr.gov/es ..............................................................................................................6

Contract Review, *Fin. Oversight & Mgmt. Bd. for P.R.*,
https://oversightboard.pr.gov/contract-review/ (last visited Mar. 5, 2021) .....................................9

Financial Oversight and Management Board for Puerto Rico, *Statement* (Jan. 25, 2023),
https://drive.google.com/file/d/1KRT24fMrkPW5z-c7mtEjKtPE5Ic9xoT_/view...........................9

*Puerto Rico One Year after Hurricanes Irma and María*,
Federal Emergency Management Agency (Sept. 6, 2018), https://www.fema.gov/zh-hans/news-
release/20200220/puerto-rico-un-ano-de-los-huracanes-irma-y-maria .............................................6

Suzanne Gamboa, *Puerto Rico to Privatize its Hobbled Electric Power Company*,
NBC News (Jan. 22, 2018), https://www.nbcnews.com/news/latino/puerto-rico-privatize-its-
public-electric-power-company-n840051.......................................................................................6

*Transformation and Innovation in the Wake of Devastation, an Economic and Disaster Recovery
Plan for Puerto Rico*
(Aug. 8, 2018), https://reliefweb.int/sites/reliefweb.int/files/resources/pr-transformation-
innovation-plan-congressional-submission-080818_0.pdf...............................................................6

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico, as PREPA's Title III representative (the "Oversight Board") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and, collectively, with PREPA and the Oversight Board, the "Government Parties"), respectfully submit this joint motion (the "Motion"), pursuant to sections 105(a), 503, and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this case pursuant to PROMESA section 301(a), for an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**: (a) allowing an administrative expense claim in favor of Genera PR LLC ("Genera") for any accrued and unpaid amounts required to be paid by PREPA during the Mobilization Period (defined below) under the *Puerto Rico Thermal Generation Facilities Operation and Maintenance Agreement*, dated January 24, 2023, entered into by and among PREPA, the Puerto Rico Public-Private Partnerships Authority (the "P3 Authority"), and Genera (the "Generation Contract"), a copy of which is attached as Exhibit B to the *Declaration of Omar J. Marrero in Support of PREPA's Motion for Entry of Order Allowing Administrative Expense Claim for Compensation for Services under Puerto Rico Thermal Generation Facilities Operation and Management Agreement* (the "Marrero Declaration" or "Marrero Decl.") filed contemporaneously herewith; and (b) providing additional relief required to effectuate the foregoing. In support of this Motion, the Government Parties respectfully state as follows:

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101–2241.

## PRELIMINARY STATEMENT

1.      The complete transformation of Puerto Rico's energy system is necessary to deliver
the safe, reliable, and affordable energy service the people and businesses of Puerto Rico deserve.[2]
Transitioning operation of PREPA's aging and outdated base-load generation plants and gas
turbine peaking plants (collectively, the "Legacy Generation Assets") to a private operator is a key
pillar of that transformation. To that end, through a competitive bidding process, the Government
of Puerto Rico has awarded a contract for the management, operation, maintenance, management
of fuel supply, and decommissioning, where applicable, of the Legacy Generation Assets to
Genera—an entity formed by its experienced and highly qualified ultimate parent company, New
Fortress Energy Inc. ("NFE"). Genera is equipped to stabilize and optimize the operations of
Puerto Rico's Legacy Generation Assets until replacement renewable and distributed energy
generation is installed and the Legacy Generation Assets are decommissioned—ushering in both
a clean and resilient energy future for the people of Puerto Rico.

2.      Under the Generation Contract, Genera will ultimately assume responsibility for
the Legacy Generation Assets, including operating the Legacy Generation Assets efficiently,
reliably, and safely until decommissioning such assets—paving the path for the integration of
renewable generation sources.

3.      While PREPA intends to satisfy its obligations under the Generation Contract on a
timely basis and in the ordinary course, the Government Parties seek an order granting to Genera
an allowed administrative expense claim for any accrued, due, and unpaid obligations PREPA

---

[2]   *See* Puerto Rico Electric Power System Transformation Act, Act No. 120-2018, Statement of Motives; *2022 Certified Fiscal Plan for the Puerto Rico Electric Power Authority* (June 28, 2022), https://drive.google.com/file/d/1f6VCpY8vWmshvshWLNlJn52LFAvLABgk/view (hereinafter "2022 Fiscal Plan"); *see also* Puerto Rico Energy Public Policy Act, Act 17-2019 (requiring the unbundling of the electric system through the transfer of operation and maintenance responsibilities of PREPA's transmission, distribution, and generation assets to private operators).

incurs to Genera under the Generation Contract during the initial 22-week period commencing

upon execution of the Generation Contract (the "Mobilization Period"). The Generation Contract

requires payment of such obligations, including the Mobilization Service Fee[3] (defined below),

during the Mobilization Period (collectively, the "Mobilization Obligations") in exchange for

Genera's performance of various services required to allow Genera to assume control over the

operation and maintenance of the Legacy Generation Assets. Additionally, the Generation

Contract requires that PREPA seek Title III Court approval for administrative expense treatment

for the Mobilization Obligations. Without these services, PREPA and its stakeholders cannot

realize the benefits of the Generation Contract, which is a key component in PREPA's ongoing

transformation.

4.      Pursuant to the Generation Contract, Genera will transform the Legacy Generation

Assets through a two-phase process: first, Genera will complete certain services during an initial

22-week period, which will allow for the smooth and efficient transition of operation and

maintenance from PREPA to Genera (the "Mobilization Services"); second, Genera will perform

various services over the life of the contract, subject to mutually agreed-upon extensions of the

term of the contract, to operate, maintain, manage, and, if necessary, decommission the Legacy

Generation Assets (the "O&M Services," and together with the Mobilization Services, the

"Generation Services"). Through this process, Genera will help to usher in a new era of reliable,

safe, and clean energy for Puerto Rico.

5.      The Generation Contract is another critical step in transforming Puerto Rico's

energy sector and modernizing its Legacy Generation Assets. A more efficient and cost-effective

---

[3] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Generation Contract or
the Partnership Committee Report.

PREPA will not only be important for Puerto Rico's macro-economic stability, but will also support PREPA's restructuring and exit from Title III. By incurring the Mobilization Obligations, PREPA is able to obtain the substantial benefits of the Generation Contract. In addition, as stated, the Mobilization Services confer additional benefits to PREPA beyond the mere transition of operations, including identifying and implementing cost-savings measures, improving the fuel supply chain, and health, safety, and environmental compliance.[4] Further, Genera has identified several opportunities that will benefit PREPA early in the contract term, including reviewing and executing emergency response drills and plans, optimizing existing fuel contracts, achieving better risk and credit terms on existing oil contracts, and making operational changes to increase fuel efficiency.[5]

6.     For these reasons, and as explained more fully below, the Government Parties respectfully request that this Court enter an order, substantially in the form of **Exhibit A**, allowing an administrative expense claim in favor of Genera for any present and future accrued Mobilization Obligations.

## JURISDICTION AND VENUE

7.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

8.     Venue is proper in this district pursuant to PROMESA section 307(a).

9.     The statutory predicates for the relief sought herein are sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, made applicable to this contested matter by PROMESA section 301(a).

---

[4]   *See* Marrero Decl. ¶¶ 6, 9–10; *id.*, Ex. B, Generation Contract, Annex VII.

[5]   *Id.* ¶¶ 8, 12.

## BACKGROUND[6]

10.     On July 2, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under Title III thereof (the "Title III Case").

11.     PROMESA section 301(a) incorporates sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, which provide for the allowance of administrative expenses granted priority over other unsecured claims in a Title III case. PROMESA section 314(b)(4) further provides that unpaid allowed administrative expenses are required to be paid upon the effective date of a plan of adjustment unless the claimholder agrees to different treatment.

### A. PREPA Operations and Management

12.     Throughout its history, PREPA has operated as a government instrumentality and vertically integrated monopoly. Since 1981, PREPA has been the sole energy-distribution service provider in Puerto Rico. PREPA currently serves approximately 1,500,000 customers (91% residential, 8% commercial, and <1% industrial).[7]  PREPA serves its clients through an extensive transmission and distribution system with approximately 2,600 miles of transmission and sub-transmission lines (230 kV/115 kV/38 kV), over 17,000 miles of primary voltage distribution lines (13kV, 8kV, 4kV), and over 300 utility-owned substations.[8] Electricity is supplied by PREPA-

---

[6]   The Government Parties are only seeking allowance of an administrative expense claim for the Mobilization Obligations, not approval of the Generation Contract from the Title III Court as no such approval is required under PROMESA. The process through which Genera was selected as the winning bidder and information regarding approval of the Generation Contract by the Oversight Board, the P3 Authority, PREPA, PREB, and the Government of Puerto Rico pursuant to Puerto Rico law are set forth herein to provide the Court with background information only. A more detailed recitation of the process is available in the "Partnership Committee Report" attached as Exhibit A to the Marrero Declaration.

[7]   2022 Fiscal Plan § 2.6.

[8]   *Id.* § 2.4.

owned generation plants and also procured from independent power producers under power purchase agreements.[9]

13.     For decades, PREPA has faced operational, strategic, and financial challenges.[10] In addition, Puerto Rico suffered catastrophic damage from Hurricane Irma and Hurricane Maria, which hit the Island within weeks of each other in 2017. The effects of the hurricanes left Puerto Rico's infrastructure, including energy systems, in critical need of recovery.[11] These challenges have resulted in inefficient and unreliable power service prone to frequent blackouts, negatively impacting PREPA, its customers, the environment, and Puerto Rico.

14.     Recognizing these issues, the Government of Puerto Rico and the Oversight Board have long been aligned in their determination that a complete transformation of both the grid assets and the Legacy Generation Assets is required to bring safe, reliable, and modern generation services to Puerto Rico and to move Puerto Rico's electric system and broader economy forward.[12] On January 22, 2018, consistent with the then certified fiscal plan for PREPA, then Governor Rosselló announced plans for the transformation of Puerto Rico's electric power system into one that is modern, sustainable, reliable, efficient, cost-effective, and more resilient to the ravages of nature.[13]

---

[9]   *Id.* § 2.5.

[10]  Marrero Decl. ¶ 5.

[11]  *See* 2022 Fiscal Plan at 17; Cent. Off. for Recovery, Reconstruction & Resiliency, https://recovery.pr.gov/en (last visited Feb. 6, 2023); Cent. Off. for Recovery, Reconstruction & Resiliency, *Transformation and Innovation in the Wake of Devastation, an Economic and Disaster Recovery Plan for Puerto Rico* (Aug. 8, 2018), https://reliefweb.int/sites/reliefweb.int/files/resources/pr-transformation-innovation-plan-congressional-submission-080818_0.pdf; *Puerto Rico One Year after Hurricanes Irma and María,* Federal Emergency Management Agency (Sept. 6, 2018), https://www.fema.gov/press-release/20210318/puerto-rico-one-year-after-hurricanes-irma-and-maria.

[12]  *See* Marrero Decl. ¶ 6; 2022 Fiscal Plan § 3.1.

[13]  Suzanne Gamboa, *Puerto Rico to Privatize its Hobbled Electric Power Company*, NBC News (Jan. 22, 2018), https://www.nbcnews.com/news/latino/puerto-rico-privatize-its-public-electric-power-company-n840051.

**B. Overview of the PREPA Transformation Process**

15.     In furtherance of these transformation plans, on June 21, 2018, the Government of

Puerto Rico enacted Act No. 120-2018 ("Act 120"), also known as the Puerto Rico Electric Power

System Transformation Act. Act 120 establishes the legal framework for the sale, disposition, or

transfer of the assets, operations, functions, and services of PREPA.

16.     Act 120 further designates the P3 Authority as the government entity responsible

for the functions, services, and facilities of public-private partnerships in the electric sector.[14] In

accordance with Act 120, the P3 Authority established a committee (the "Partnership Committee")

to evaluate and select qualified bidders and to negotiate the terms and conditions of any public-

private partnerships in the electric sector.[15]

17.     On June 5, 2018, the P3 Authority launched a procurement process under applicable

law to award a long-term contract to a qualified operation and maintenance service provider for

the transmission and distribution system ("T&D System"). After bidders performed due diligence

and evaluated the opportunity to serve as Puerto Rico's T&D System operator, the Partnership

Committee selected LUMA Energy as the preferred proponent to engage in exclusive discussions.

18.     Ultimately, on June 22, 2020, the T&D Contract[16] was executed following requisite

approvals. LUMA Energy assumed control of the T&D System operations on June 1, 2021 under

the supplemental terms of the T&D Contract. Under the T&D Contract, PREPA continues to own

the assets of its T&D System, and LUMA Energy acts as PREPA's agent in operating and

---

[14]   *See* Act 120-2018 § 5(a).

[15]   *See id.* § 5(c); *see also* Marrero Decl. ¶ 7; Marrero Decl., Ex. A at 33–34.

[16]   The "T&D Contract" shall refer to the *Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement, dated as of June 22, 2020, by and among the Puerto Rico Electric Power Authority, as Owner, the Puerto Rico Public-Private Partnerships Authority, as Administrator, LUMA, LCC as Management Co, and LUMA Servco, LLC as ServCo,* as supplemented and amended. A copy of the T&D Contract can be found on PREPA's docket at ECF No. 2053-4.

maintaining the T&D System. The T&D Contract has a term of 15 years from "Service Commencement,"[17] during which time LUMA Energy will continue to provide the services contemplated under the T&D Contract.

19.    Similarly, pursuant to Act 120, in August 2020, the P3 Authority, working in collaboration with the Oversight Board, launched a competitive process to award a long-term contract to a qualified operation and maintenance ("O&M") service provider for the Legacy Generation Assets.[18]

### C.  The Generation Contract Selection Process

20.    On August 10, 2020, the P3 Authority issued the Request for Qualifications (the "RFQ") pursuant to Sections 3 of Act 29 and 5 of Act 120. The RFQ sought statements of qualification from companies and consortia interested in managing and operating Puerto Rico's Legacy Generation Assets. After the RFQ process concluded, on October 22, 2020, the Partnership Committee selected eight (8) experienced and reputable respondents to participate in the next stage of the process.[19]

21.    The P3 Authority then initiated the Request for Proposals ("RFP") process—a robust, competitive, and transparent procurement process carried out in accordance with Act 120 and its corresponding regulations—that concluded on June 10, 2022.[20] Through that process, the Partnership Committee selected Genera as the preferred proponent with which to negotiate a final agreement.

---

[17]  As defined in the T&D Contract. PREPA expects the Service Commencement Date to occur upon the effective date of a plan of adjustment for PREPA.

[18]  Marrero Decl. ¶ 7; Marrero Decl., Ex. A at 36–54.

[19]  Marrero Decl., Ex. A, at 36–40.

[20]  *See id.*, Ex. A at 41–72.

### D.  *The Contract Approval Process*

22.     Pursuant to PROMESA and applicable Puerto Rico law, the Generation Contract—negotiated and approved by the Partnership Committee—was subject to further approval by (i) the P3 Authority's Board of Directors, (ii) PREPA's Governing Board, (iii) the Oversight Board, (iv) Puerto Rico Energy Bureau ("PREB")—PREPA's independent regulator—and (v) the Government of Puerto Rico pursuant to the procedures set forth in Act 29.

23.     Pursuant to, among others, PROMESA section 204(b)(2) (the "Contract Review Policy"),[21] and in accordance with PREPA's Fiscal Plan, the Oversight Board reviewed the form Generation Contract with the P3 Authority and, together with the Government of Puerto Rico, approved the updated Generation Contract.[22] On November 17, 2022, the P3 Authority filed the final Generation Contract with the PREB for regulatory approval. After receipt of all required approvals, the parties signed the Generation Contract on January 24, 2023 and the process immediately shifted to the Mobilization Period (as described below) to begin transitioning the generation facilities' functions to Genera.

### E.  *Genera's Services under the Generation Contract*

24.     Pursuant to the Generation Contract, Genera will perform the O&M Services, which include assuming responsibility for the management, operation, maintenance, repair, restoration, and replacement and other related services for the Legacy Generation Assets. These services include fuel and efficiency optimization approved by PREB, asset management,

---

[21]  Contract Review, *Fin. Oversight & Mgmt. Bd. for P.R.*, https://oversightboard.pr.gov/contract-review/ (last visited Feb. 6, 2023).

[22]  Financial Oversight and Management Board for Puerto Rico, *Statement* (Jan. 25, 2023), https://drive.google.com/file/d/1KRT24fMrkPW5z-c7mtEjKtPE5Ic9xoT_/view.

community and media relations, finance and accounting, testing and reporting, emergency response, and public and employee health and safety.[23]

25. In addition to the day-to-day operations and maintenance functions, as part of the O&M Services, Genera will play an integral role in executing PREPA's modernization goals, as well as actively participating and assisting in the deployment of federal funding for energy generation reconstruction.[24] Delivering major generation modernization capital projects on time and on budget is important to protect Puerto Rico from future devastation from hurricanes and other natural disasters. No less critical, the O&M Services will also help improve everyday efficiency, safety, and reliability, and benefit PREPA and its customers by putting PREPA's generation on a path to becoming a more modern, sustainable, reliable, efficient, cost-effective, and resilient power generation system.[25]

26. Consistent with the foregoing, the Government Parties intend and expect the Generation Contract to help:

   a. Transform PREPA's generation into modern, sustainable, reliable, efficient, cost-effective, and resilient power generation facilities with technologically and operationally prudent practices in order to improve and increase power generation;

   b. Deliver cost-effective power generation to the transmission and distribution system;

   c. Increase resiliency, achieving performance in line with codes, specifications, and standards consistent with U.S. mainland power generation facilities;

   d. Increase generation reliability; and

   e. Implement industry best practices and operational excellence through managerial continuity and long-term planning.[26]

---

[23] Marrero Decl., Ex. B., Generation Contract § 5.1, Annex IX.

[24] *See id*. § 5.8.

[25] *See* Marrero Decl., Ex. A. at 64.

[26] Marrero Decl. ¶ 6; Marrero Decl., Ex. A at 23–30.

10

27.     Pursuant to the Generation Contract, PREPA will be responsible for certain accrued and unpaid fixed and variable fees for the O&M Services.[27] Such fees will be paid in the ordinary course and are not the subject of this Motion. As detailed below, the Motion seeks only limited relief and it does not request the Court to approve the Generation Contract or to provide authority to enter into the Generation Contract.

### F. Mobilization Period

28.     Prior to assuming full operational control over PREPA and commencing the O&M Services, the Generation Contract contemplates a Mobilization Period to ensure an orderly transition of the responsibility for the management, operation, maintenance, repairs, restoration, and replacement of the Legacy Generation Assets. During the Mobilization Period, Genera is responsible for extensive Mobilization Services, including (i) planning and implementing information technology systems and tools; (ii) reviewing applicable permits and compliance obligations; (iii) developing plans/procedures for various aspects of operation (including a Procurement Manual, Legacy Generation Emergency Response Plan, O&M Procedures, and Operator Training Programs); (iv) developing a communication plan; (v) evaluating and maintaining inventory; (vi) planning for and achieving key milestones; and (vii) developing a fuel savings strategy, among other things. A plan describing these services in greater detail is set forth in Annex VII of the Generation Contract. These services are an essential prerequisite to Genera's ability to assume full control over the operation and maintenance of the Legacy Generation Assets and PREPA gaining the full benefits the Government Parties expect to achieve under the Generation Contract. These services, in addition to others provided by Genera during the

---

[27] Marrero Decl., Ex. B, Generation Contract, §§ 16.2, 17.3, 19.2; Marrero Decl., Ex. B, Generation Contract, Annex II, XIV.

Mobilization Period, lay the foundation for Genera to be able to perform the O&M Services in compliance with the Generation Contract and public policy.[28]

29.    As part of the Mobilization Services, Genera plans to ensure an optimal and timely transition of operation and management services from PREPA to Genera. Genera will update the P3 Authority and PREB with the status of the Mobilization Services on a bi-weekly basis.[29]

30.    The Generation Contract provides for payment by PREPA of the Mobilization Obligations, which include the Mobilization Service Fee, to Genera.[30] The Mobilization Service Fee consists of (i) the hourly fully allocated cost rate for each category of employee providing Mobilization Services, multiplied by the number of hours worked by each employee in such category providing Mobilization Services, plus (ii) all other reasonably necessary and documented costs and expenses incurred by Genera in the course of providing the Mobilization Services and satisfying the "Service Commencement Date Conditions" under the Generation Contract, including the cost of any subcontractors or consultants providing Mobilization Services.[31]

31.    The parties executed the Generation Contract on January 24, 2023, which commenced the Mobilization Period. The Mobilization Period will last approximately 22 weeks and the aggregate amount of the Mobilization Service Fee will not exceed $15 million.[32] Pursuant to Section 4.6(c) of the Generation Contract, PREPA is obligated to fund 4.5 months of the Mobilization Service Fee in advance into a designated account upon the execution of the

---

[28]  *See* Marrero Decl., Ex. B., Generation Contract, Annex IX.

[29]  Marrero Decl., Ex. B, Generation Contract § 4.2(i).

[30]  *Id.* § 4.6(a).

[31]  Marrero Decl., Ex. B, Generation Contract § 4.6(b).

[32]  *Id.* § 4.6(b), Annex VII.

agreement. PREPA is required to replenish this account on a monthly basis to maintain the 4.5 month estimated balance throughout the Mobilization Period.

32.    Section 4.1(c)(i) of the Generation Contract provides that "[n]o later than ten (10) Business Days after the [contract is executed, PREPA] shall file a motion with the Title III Court seeking administrative expense treatment for any accrued and unpaid amounts required to be paid by [PREPA] under [the Generation Contract] during the Mobilization Period, including the Mobilization Service Fee."[33] Pursuant to Section 4.1(c)(ii), Genera may terminate the generation Contract upon 30 days' prior written notice if such motion is not granted within 90 days after filing, subject to a 45-day extension by the P3 Authority, or such later date as Genera and the P3 Authority agree.

33.    The Mobilization Obligations required to be paid by PREPA to Genera during the Mobilization Period under the Generation Contract are the only obligations that are the subject of this Motion. [34]

## **RELIEF REQUESTED**

34.    By this Motion, the Government Parties seek entry of an order allowing an administrative expense claim in favor of Genera in the amount of any accrued and unpaid Mobilization Obligations in favor of Genera from time to time under the Generation Contract

---

[33]    Marrero Decl., Ex. B, Generation Contract § 4.1(c)(i).

[34]    For the avoidance of doubt PREPA is not requesting that the Court approve an administrative expense for the interest component of the Mobilization Obligations at this time. *See Mem. Op. Granting in Part and Denying in Part PREPA's Mot. for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* 21, Case No. 17-04780, (D.P.R. Oct. 19, 2020), ECF No. 2258 (denying, without prejudice, administrative expense claims for "amounts that might become due under . . . the T&D Contract as a result of PREPA's untimely payment of any Front-End Transition Obligations.") (hereinafter, the "Front-End Administrative Expense Opinion"). PREPA and/or Genera reserves the right to seek allowance of administrative expenses for these, and other, obligations required to be paid under the Generation Contract. These obligations are contingent as the Government Parties intend for PREPA to honor all its obligations under the Generation Contract on a timely basis.

through the end of the Mobilization Period, pursuant to sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, made applicable to this proceeding by section 301 of PROMESA, and granting such other relief as is just and proper. To be clear, the approval sought by this Motion is not approval of the Generation Contract itself or authority to enter into the agreement, but rather allowance of Genera's accrued and unpaid Mobilization Obligations as administrative expenses, as contemplated by § 503(b)(1)(A) and required by the Generation Contract, to the extent PREPA does not timely satisfy such Mobilization Obligations in the ordinary course.

## **BASIS FOR RELIEF**

35.    Section 503(b)(1)(A) of the Bankruptcy Code, made applicable by PROMESA section 301, provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate."[35] Section 301(a) of PROMESA also expressly incorporates section 507(a)(2) of the Bankruptcy Code, which gives priority to administrative expenses allowed under section 503(b) of the Bankruptcy Code.[36]

36.    Importantly, this Court made clear in its Front-End Administrative Expense Opinion that Bankruptcy Code § 503(b)(1)(A) permits allowance of administrative expense priority claims to parties who provide post-petition services that benefit a Title III debtor.[37] It held, among other things, that (i) Congress' decision to carve out specific subsections of other incorporated Bankruptcy Code provisions, while incorporating § 503 in its entirety, "provides a strong indication that Congress did not intend to preclude the applicability of section 503(b)(1)(A)

---

[35] 11 U.S.C. § 503(b)(1)(A).

[36] 48 U.S.C. § 2161(c)(5).

[37] *Front-End Administrative Expense Opinion* at 15 (holding that "the text and structure of PROMESA compel the conclusion that operating expenses of PREPA are eligible for administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code.").

in the Title III context," and (ii) PROMESA § 301(c)(5) is "properly read as applying not only to incorporated provisions of the Bankruptcy Code that use the specific term 'property of the estate,' but also to provisions such as section 503(b)(1)(A) that perform relevant functions and contain the term 'estate.'"[38] As a result, the Court concluded that § 503(b)(1)(A), as incorporated into PROMESA, "makes administrative expense priority available for the necessary costs and expenses of preserving PREPA during the course of its Title III case."[39]

37.    Under First Circuit precedent, allowance of administrative expense claims is determined by a two-prong test, whereby "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a post-petition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor."[40] Further, "[i]n light of the restrictions on judicial authority and the scope of PROMESA that are imposed by sections 303 and 305 of the statute, Oversight Board and debtor consent are also relevant considerations."[41] Indeed, PREPA is requesting Genera's services.

---

[38]  *Id.* at 14–16.

[39]  *Id.* at 16.

[40]  *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992) (citations omitted).

[41]  Front-End Administrative Expense Opinion at 19; *see also In re Craig Cnty. Hosp. Auth.*, 572 B.R. 340, 350 (Bankr. N.D. Okla. 2017) (finding in the chapter 9 context, it would be the "equitable result" to grant administrative expense status for the "actual and necessary costs and expenses of preserving the operations of [the debtor]" where the debtor had "expressed an intention to give administrative, priority status to post-petition claimants that conferred actual benefit on [the debtor] during the course of this case.").

38.     The Mobilization Obligations, which are substantially similar to those considered and approved by the Court in the Front-End Administrative Expense Opinion, meet all requirements for allowance as administrative expenses under § 503(b)(1)(A).

39.     *First*, the Mobilization Obligations will be incurred post-petition and the Mobilization Services provided by Genera will all be performed post-petition.

40.     *Second*, Genera's satisfaction of its contractual obligations to PREPA during the Mobilization Period will manifestly benefit the debtor and preserve PREPA's assets, as well as the debtor's post-petition operations.[42] The services Genera will provide in exchange for the Mobilization Obligations incurred under the Generation Contract are extensive. Specifically, the Mobilization Services provided by Genera will materially benefit PREPA, its operations, and customers by building on the positively progressing energy sector improvements and by making operational improvements to Puerto Rico's Legacy Generation Assets to provide modern, sustainable, reliable, efficient, cost-effective, and resilient power generation facilities.[43] Further, Genera's assumption of full responsibility for the day-to-day management, operation, maintenance, repair, restoration, and replacement of the Legacy Generation Assets at the end of the Mobilization Period will include fuel and efficiency optimization approved by PREB, asset management, community and media relations, finance and accounting, testing and reporting, emergency response, and public and employee health and safety.[44] Genera will also play an integral

---

[42]   *See Woburn Assocs.*, 954 F.2d at 5 ("Preservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor."). Section 503(b)(1)(A) of the Bankruptcy Code provides an open list of expenses that could be given administrative expense priority ("the actual, necessary costs and expenses of preserving the estate *__including__*— . . ." (emphasis added).

[43]   *See In re 1701 Commerce, LLC*, No. 12-41748-DML-11, 2014 WL 4657314, at *8 (Bankr. N.D. Tex. Sept. 17, 2014) (finding operation and management of the "Debtor's largest asset" were actual and necessary expenses of preserving the estate under section 503(b)(1)).

[44]   *See* Marrero Decl., Ex. B, Generation Contract § 5.1; Marrero Decl., Ex. B, Annex IX.

role in executing PREPA's energy sector modernization strategy, as well as actively participate
and assist in the deployment of federal funding for reconstruction work. The Government Parties
expect that these services will provide the substantial and material benefits to PREPA described
in paragraphs 24–26 and 28, above. To achieve these benefits, Genera must perform the
Mobilization Services and transition to full service under the Generation Contract.

41.     Implementation of the Mobilization Services is a crucial component of PREPA's
operational restructuring, and a structural reform required under the Board-certified PREPA Fiscal
Plan.[45] The Generation Contract not only accomplishes the transfer of operation and maintenance
of the Legacy Generation Assets to a private operator, but also facilitates compliance with specific
PREPA Fiscal Plan objectives, such as: (i) improving Legacy Generation Asset operational
performance through systematic improvements and introducing and leveraging experienced
personnel; (ii) upgrading Legacy Generation Asset technology to increase reliability and improve
system resilience and efficiency; (iii) improving Legacy Generation Asset related processes and
procedures; (iv) creating an energy sector environment that allows for decisions to be made free
of the kind of political interference; (v) implementing effective and efficient capital project
delivery; and (vi) enabling renewable energy generation.[46]

42.     *Lastly*, the Oversight Board consents to providing an administrative expense claim
for any accrued and unpaid Mobilization Obligations. The Government Parties all agree that
meeting such obligations is a necessary step to Genera's assumption of full control of PREPA's

---

[45]  Marrero Decl. ¶ 15; *see* 2022 Fiscal Plan, Ch. 3.

[46]  *See* 2022 Fiscal Plan § 3.3.1.

Legacy Generation Assets and realization of the full benefits of the Legacy Generation Asset transformation transaction.[47]

43.     For all the reasons outlined herein, the Government Parties respectfully request that the Mobilization Obligations be granted administrative expense treatment under sections 503(b) and 507(a)(2) of the Bankruptcy Code, as applicable under PROMESA.

[*Remainder of Page Intentionally Left Blank*]

---

[47] *See* Marrero Decl. ¶ 16.

WHEREFORE the Government Parties respectfully request the Court enter the Proposed

Order (a) granting the Motion, and (b) granting PREPA such other relief as is just and proper.

Dated: February 21, 2023
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock*
Paul V. Possinger*
Ehud Barak*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board, as representative for the
Puerto Rico Electric Power Authority*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board, as representative for the
Puerto Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC-PR No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Arturo Díaz-Angueira*
Arturo Díaz-Angueira
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.: (787) 395-7133
Fax: (787) 497-9664

*Attorneys for the Puerto Rico Electric Power
Authority*

**O'MELVENY & MYERS LLP**

*/s/ Maria J. DiConza*
John J. Rapisardi*
Maria J. DiConza*
Gabriel L. Olivera
USDC-PR No. 303314
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman*
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen*
Ashley M. Pavel*
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Admitted *pro hac vice*

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and the
Puerto Rico Electric Power Authority*

**Exhibit A**

Proposed Order

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. [____]** |

## [PROPOSED] ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR MOBILIZATION SERVICES UNDER THE PUERTO RICO THERMAL GENERATION FACILITIES OPERATION AND MANAGEMENT AGREEMENT

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Upon the Government Parties' *Motion for Order Allowing Administrative Expense Claim for Compensation for Mobilization Services Under the Puerto Rico Thermal Generation Facilities Operation and Management Agreement* (the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the Mobilization Obligations, to the extent incurred and payable under the Generation Contract during the Mobilization Period meet all applicable requirements for an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, made applicable to this Title III Case pursuant to section 301(a) of PROMESA; and the Oversight Board having consented to the allowance of the Mobilization Obligations as administrative expense claims; and that the relief requested in the Motion is in the best interests of PREPA, its creditors, and other parties in interest; and the Court having found that PREPA provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and its supporting materials, and having heard the arguments of counsel in respect of the Motion at the hearing held before the Court on _____ __, 2023 (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and its supporting materials and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation and sufficient cause appearing therefor,

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2

IT IS HEREBY ORDERED THAT:

1.  The Motion is **GRANTED** as set forth herein.

2.  Pursuant to sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, made applicable in this Title III Case pursuant to section 301(a) of PROMESA, Genera shall have an allowed administrative expense claim for its accrued and unpaid Mobilization Obligations incurred under the Generation Contract.

3.  Notwithstanding any applicability of any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4.  To the extent required, PREPA and the Oversight Board, as PREPA's representative in this Title III Case, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this Order in accordance with the Motion and without further order of this Court.

5.  The Court shall retain jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this Order.

Dated: [_____ ___], 2023

_____
HON. LAURA TAYLOR SWAIN

3