# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**R&D MASTER ENTERPRISES, INC.'S REPLY TO "*O'NEILL & BORGES LLC'S OPPOSITION TO "MOTION TO DISQUALIFY THE LAW FIRM O'NEILL & BORGES, LLC FOR UNRESOLVABLE CONFLICTS OF INTEREST INCURRED IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. § 2101 ET SEQ.""* FILED ON FEBRUARY 16, 2023, DOC. NO. 23,552**

**To the Honorable United States District Judge Laura Taylor Swain:**

Comes now R&D Master Enterprises, Inc., a corporation organized under the laws of the Commonwealth of Puerto Rico (the "Movant"), represented herein by its undersigned counsel, who hereby respectfully files this reply motion and petitions this Honorable Court (the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

1

"Title III Court") to permanently disqualify the law firm O'Neill & Borges, LLC ("O&B") as advisors to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as well as to disallow and disgorge fees paid and/or otherwise payable to O&B, for conflicts of interest and other violations incurred by O&B pursuant to the Puerto Rico Recovery Accuracy in Disclosures Act of 2021, 48 U.S.C. 2101 et seq., resultant from O&B's concurrent representation of the Oversight Board and of several private clients of O&B that possess private interests that are materially adverse to the public interests of the Oversight Board, of the Commonwealth of Puerto Rico and of the Puerto Rico Electric Power Authority ("PREPA"), who are debtors here. The Movant respectfully states and prays as follows:

1. The motion titled "*O'NEILL & BORGES LLC'S OPPOSITION TO "MOTION TO DISQUALIFY THE LAW FIRM O'NEILL & BORGES, LLC FOR UNRESOLVABLE CONFLICTS OF INTEREST INCURRED IN VIOLATION OF THE PUERTO RICO RECOVERY ACCURACY IN DISCLOSURES ACT OF 2021, 48 U.S.C. 2101 ET SEQ.*"" filed by O&B on February 16, 2023, Doc. No. 23,552 (the "Opposition Motion") is based on false and/or misleading premises and entirely fails to address key facts pertaining to O&B's disqualifying conflicts of interest.

2. First, the Economic Development Bank for Puerto Rico (by its Spanish acronym, the "BDE") is a covered entity subject to the supervision of the Oversight Board under PROMESA and, therefore, this Title III Court has unimpaired jurisdiction and competence to adjudicate any and all controversies involving the BDE.

3. Second, the Movant is a creditor of the Commonwealth of Puerto Rico and a client of PREPA suffering the consequences of ill-conceived contracts and, therefore, the Movant has unimpaired standing to plead the conflicts of interest incurred by O&B.

2

4. Third, O&B is in fact conflicted. The Movant has properly evidenced to the Title III Court of the multiple conflictive representations that disqualify O&B.

5. O&B's engagement as legal counsel to the Oversight Board does not excuse its ongoing violation of Canons 21 and 38 of the Canons of Professional Ethics applicable to all Puerto Rico attorneys.

6. The Oversight Board's engagement of O&B as its local legal counsel since 2016 does not exempt O&B from complying with the Canons of Professional Ethics applicable to all Puerto Rico attorneys and law firms since 1970.

7. Canon 21 of the Canons of Professional Ethics explicitly prohibits all Puerto Rico attorneys and law firms from simultaneously representing any clients holding adverse interests. The ethical standard imposed by Canon 21 expressly forbids any single lawyer or law firm from simultaneously representing contractual counterparties. It should be noted that in Puerto Rico, the Supreme Court has not recognized as applicable the so-called Chinese Wall doctrine, so as to avoid or side-step any possible conflict of interest between an attorney and the entire firm. See *Puerto Rico Fuels Inc. v. Empire Gas Co.*, 133 PR Dec. 112 (1993). Simply put, if an attorney within a firm has a conflict, then the entire firm has a conflict.

8. Furthermore, Article 5(G) of Law 237 of August 31, 2004, P.R. Laws Ann. Tit. 3 L.P.R.A. § 8611, expressly prohibits conflict of interest between a private contractor and any government agency, including public corporations. The law goes even further prohibiting the contractor from breaching public policy.

9. O&B cannot be deemed to be a "disinterested person" under PRRADA by self-declaring itself to be disinterested and omitting to address relevant facts relating to its conflictive representations.

10. O&B's misleading statements as to its own alleged disinterestedness under PRRADA do not conform to the reality at hand.

11. Contrary to O&B's assertions, O&B has in fact represented clients *included in the MIP List* holding interests adverse to the Commonwealth of Puerto Rico and/or PREPA during the same time period in which O&B represented the Oversight Board.

12. AES Ilumina, LLC[2] and AES Puerto Rico, L.P.[3] are clients of O&B, as self-reported by O&B in its PRRADA disclosures. (See Docket Entry No. 21,485, at page 19 of 37.) PREPA is the sole client and single source of revenue of AES Ilumina, LLC and AES Puerto Rico, L.P. in Puerto Rico. Therefore, all business and affairs that the aforesaid companies undertake in Puerto Rico – with or without the assistance of O&B – exclusively relate to their substantial contractual relationships with PREPA.

13. EcoElectrica, L.P.[4] and Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy)[5] are also clients of O&B, as self-reported by O&B in its PRRADA disclosures. (See Docket Entry No. 21,485, at page 21 of 37.) PREPA is the sole client and single source of revenue of EcoElectrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy).

---

[2] AES Ilumina, LLC maintains a Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority worth at least $90,000,000.00 that is registered at the Office of the Comptroller of Puerto Rico under registry number 2010-000050. Said contract was reviewed and approved by the Oversight Board on September 30, 2020.

[3] AES Puerto Rico, L.P. maintains a Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority that is registered at the Office of the Comptroller of Puerto Rico under registry number 1995-AI0077. AES Puerto Rico, L.P. also maintains an Additional Energy Sales Contract with the Puerto Rico Electric Power Authority worth at least $68,000,000.00 that is registered at the Office of the Comptroller of Puerto Rico under registry number 2012-P00036.

[4] EcoEléctrica, L.P. maintains an Amended and Restated Power Purchase and Operating Agreement with the Puerto Rico Electric Power Authority worth at least $1,800,000,000.00 that is registered at the Office of the Comptroller of Puerto Rico under registry number 2021-P00098. Said contract was reviewed and approved by the Oversight Board on December 26, 2019.

[5] Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy), who is EcoEléctrica, L.P.'s holding company, maintains a Natural Gas Sale and Purchase Agreement with the Puerto Rico Electric Power Authority worth at least $9,001,000,000.00 that is registered at the Office of the Comptroller of Puerto Rico under registry number 2012-P00107. Said contract was reviewed and approved by the Oversight Board on December 26, 2019.

Therefore, all business and affairs that the aforesaid companies undertake in Puerto Rico – with or without the assistance of O&B – exclusively relate to their substantial contractual relationships with PREPA.

14. Puma Energy Caribe, L.P.[6] is also client of O&B. (See Docket Entry No. 21,485, at page 27 of 37.) PREPA is the single source of PREPA revenues of Puma Energy Caribe, L.P. All business and affairs that the aforesaid company undertakes in Puerto Rico – with or without the assistance of O&B – exclusively relates to Puma Energy Caribe, L.P.'s substantial contractual relationships with PREPA.

15. Contrary to O&B's assertions, O&B has also in fact represented clients *excluded from the MIP List* and holding interests adverse to the Commonwealth of Puerto Rico and/or PREPA during the same time period in which O&B represented the Oversight Board.

16. NFEnergía, LLC (d/b/a New Fortress Energy)[7] is also an important client of O&B that O&B intentionally omitted from the MIP List for reasons unknown. O&B served as counsel to NFEnergía, LLC (d/b/a New Fortress Energy) in Civil Case No. SJ2020CV06070 before the Puerto Rico Court of First Instance, San Juan Part, styled *Sierra Club and El Puente de Williamsburgh, Inc. v. NFEnergía, LLC and others*, relating to certain terminal facilities constructed by New Fortress Energy in San Juan harbor in violation of FERC regulations. New Fortress Energy's subsidiary, Genera PR LLC, is also the newly awarded operator of all of

---

[6] Puma Energy Caribe, L.P. maintains a Fuel Oil Purchase Contract with the Puerto Rico Electric Power Authority worth at least $1,565,331,447.00 that is registered at the Office of the Comptroller of Puerto Rico under registry number 2022-P00020. Said contract was reviewed and approved by the Oversight Board on June 7, 2022.

[7] NFEnergía, LLC (d/b/a New Fortress Energy) maintains a Fuel Sale and Purchase Agreement with the Puerto Rico Electric Power Authority worth at least ONE BILLION FIVE HUNDRED MILLION DOLLARS ($1,500,000,000.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2019-P00079. Said contract was reviewed and approved by the Oversight Board on March 24, 2019. NFEnergía, LLC (d/b/a New Fortress Energy) also maintains a terminal facilities contract with the Puerto Rico Ports Authority worth at least EIGHT MILLION TWO HUNDRED TWENTY-SIX THOUSAND SIX HUNDRED SEVENTY-EIGHT DOLLARS ($8,226,678.00) that is registered at the Office of the Comptroller of Puerto Rico under registry number 2018-P00089.

PREPA's legacy energy generation assets island-wide under a $169,900,000 Thermal Generation Facilities, Operation and Maintenance Agreement entered into in early 2023, registered at the Office of the Comptroller of Puerto Rico under registry number 2023-PPP042. PREPA is the sole client and single source of revenue of New Fortress Energy in Puerto Rico. Therefore, all business and affairs that New Fortress Energy undertakes in Puerto Rico – with or without the assistance of O&B – exclusively relate to New Fortress Energy's substantial contractual relationships with PREPA.

17. Furthermore, O&B concurrently represented the Oversight Board during the same time period that O&B also represented the following private clients that contracted with the BDE in a highly controversial 2018 transaction that is causing economic and legal grief to the BDE and to hundreds of small Puerto Rican business owners: (a) PR Recovery and Development JV, LLC ("PR Recovery"); (b) Parliament Capital Management, LLC ("PCM"); (c) Parliament High Yield Fund, LLC ("PHYF"); and (d) Island Portfolio Services, LLC ("IPS", and together with PR Recovery, PCM and PHYF, collectively, the "BDE Conflict Parties").

18. Contrary to O&B's recent assertions, O&B in fact assisted the BDE Conflict Parties in the negotiation, drafting and execution of that certain $384,269,047 *Loan Sale Agreement* entered into as of September 7, 2018, by and between the BDE, as seller, and PR Recovery, as purchaser, thru unlawful circumvention of the Oversight Board's Contract Review Policy.

19. As the Title III Court is aware, the aforesaid *Loan Sale Agreement* caused the BDE's insolvency and is causing economic injury to the BDE, the Government of Puerto Rico[8]

---

[8] Should BDE not have enough reserves to cover its bond obligations, the Puerto Rico General Fund is obligated

6

and to hundreds of small business owners throughout Puerto Rico, including the Movant.

20. O&B has already admitted that it represents certain parties on the MIP List which hold interests adverse to the Commonwealth of Puerto Rico and/or PREPA. There is no doubt that O&B provides legal and lobbying services to AES Ilumina, LLC, AES Puerto Rico, L.P., EcoElectrica, L.P., Gas Natural Aprovisionamientos SDG, S.A. (d/b/a Naturgy), and Puma Energy Caribe, L.P. in their dealings with PREPA, their single source of revenues in Puerto Rico. O&B has already admitted those disqualifying connections in its PRRADA disclosures.

21. O&B also falsely states to the Title III Court that it did not represent any of the BDE's counterparts to the *Loan Sale Agreement*.

22. The $384,269,047 *Loan Sale Agreement* is a post-petition contract under PROMESA that was never reviewed nor approved by the Oversight Board, as required by the Oversight Board's own Contract Review Policy.

23. O&B in fact assisted the Conflict Parties in arranging the $384,269,047 *Loan Sale Agreement* and bypassing the Oversight Board's contract review process.

24. The *Loan Sale Agreement* explicitly identifies O&B as legal counsel to the buyer in that controversial transaction. See pages 29-30 of the *Loan Sale Agreement*.

25. Furthermore, several witnesses are capable of testifying as to O&B's protagonist role as legal counsel to the BDE Conflict Parties in that unfortunate transaction, including, but not limited to, Mr. Giovanni Dávila Egipciaco, Mr. Rodolfo Sánchez Colberg, Atty. Luis Marini, counsel to Commonwealth of Puerto Rico in these Title III proceedings and former O&B partner, among others.

---

by law to set aside said money in favor of the BDE in its annual budget. Article 8 (f) of Law 22 of July 24, 1985, P.R. Laws Ann. Tit. 7 L.P.R.A. § 611g.

26. The Oversight Board purports that it has not yet reviewed the highly controversial $384,269,047 *Loan Sale Agreement* because the BDE did not ask for the Oversight Board's approval and the BDE is now seeking to nullify the BDE Contract in litigation pending in the Puerto Rico Court of First Instance. The Oversight Board's explanation is absurd.

27. The reality is that in the year 2019 the Oversight Board's Executive Director, Natalie Jaresko, did have the intention of reviewing the *Loan Sale Agreement*, yet the Oversight Board never completed its ministerial duty of reviewing the same – a negligent misconduct that subsists to date.

28. On September 29, 2019, Natalie Jaresko, then Executive Director of the Oversight Board, correctly demanded that the Loan Sale Agreement be submitted to the Oversight Board's contract review process. In her September 29, 2019 letter, a true and exact copy of which is attached hereto as **Exhibit A**, Natalie Jaresko explicitly asserted that "***[a]ll government contracts and amendments thereto with an aggregate value of $10 million or more are subject to FOMB approval.*** *Moreover, the FOMB in its discretion may review any contract below such threshold. In accordance with the Policy, we hereby request that the contract mentioned above be submitted to the FOMB not later than October 4, 2019 together with an explanation of the reason for the failure to submit such contract prior to its execution.* ***Please note that the FOMB may issue subpoenas and exercise any other powers granted to it under PROMESA in order to effectuate the Policy.***" (Emphasis added.)

29. Contrary to O&B's recent assertions, the BDE, through its legal counsel, did ask the Oversight Board to intervene with the highly controversial *Loan Sale Agreement* "***in order to shed light and resolve this issue, for the wellbeing of Puerto Rico***", yet the Oversight

8

Board never completed its ministerial duty of reviewing the Loan Sale Agreement – a negligent, continuous misconduct that persists to date. (Emphasis added.) See the BDE's reply letter to the FOMB dated October 4, 2019, a true and exact copy of which is attached hereto as **Exhibit B**.

30. The Oversight Board indeed has the obligation to review all BDE contracts. In evidence of the foregoing, on September 21, 2022 the Oversight Board reviewed and approved a discounted payoff transaction pursuant to which a $35,070,738.52 loan extended to the BDE by the Government Development Bank was settled in full thru a one-time payment by the BDE to the Government Development Bank of $3,100,000.00, an 89% discount, "***to accomplish the requirements and goals of PROMESA for the benefit of Puerto Rico's 78 municipalities and its people.***" (Emphasis added.) See **Exhibit C** attached hereto.

31. The fact that the *Loan Sale Agreement* is presently under scrutiny before state court does not exempt the Oversight Board from reviewing the same, independently, pursuant to its federal mandate under PROMESA and the Oversight Board's Contract Review Policy. It is highly suspect that the Oversight Board has so vehemently denied examining the *Loan Sale Agreement* that the BDE has denounced in public court pleadings to be the product of a $384,269,047 fraud.

32. In further examining this matter, the Title III Court must consider that pursuant to Article 5 of the BDE's organic act the BDE's Board of Directors is comprised of the Government of Puerto Rico's highest-ranking officers, to wit: (a) *Omar J. Marrero Díaz*, Secretary of State and Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority; (b) *Manuel Cidre Miranda*, Secretary of the Department of Economic Development and Commerce; (c) *Juan Carlos Blanco*, Executive Director of the Puerto Rico

9

Office of Management and Budget; (d) *Francisco Parés Alicea*, Secretary of Treasury; (e) *Ramón González Beiró*, Secretary of Agricultura; and (f) four minority director appointed by the Governor of Puerto Rico, with the advice and consent of the Senate of Puerto Rico. All these well-respected, top-ranking cabinet members of the Commonwealth of Puerto Rico understand that the *Loan Sale Agreement* is the product of a mega-fraud requiring the Oversight Board's intervention. No public interest is served by the Oversight Board's negligent inaction as to the *Loan Sale Agreement*.

33. The Oversight Board commands a $60 million annual budget and has spent over $1.5 billion in outside advisors, attorneys, and consultants over the course of the last six years. The Oversight Board has the obligation to review the *Loan Sale Agreement* "*in order to shed light and resolve this issue, for the wellbeing of Puerto Rico*" and "*to accomplish the requirements and goals of PROMESA for the benefit of Puerto Rico's 78 municipalities and its people.*" See **Exhibit B** and **Exhibit C**, respectively.

34. For each day that the Oversight Board deliberately continues to evade its ministerial duty to review the *Loan Sale Agreement* pursuant to the Contract Review Policy, the *Loan Sale Agreement* is and remains voidable, unperfected, and legally incomplete.

35. In the adversary proceeding captioned *Luis A. Rivera Siaca v. The Financial Oversight and Management Board for Puerto Rico* that is being litigated as part of these Title III proceedings, the Oversight Board seeks to invalidate certain claims for payments due under a Puerto Rico government contract based on the premise that such contract: (a) was never reviewed nor approved by the Oversight Board in accordance with the Oversight Board's own Congressionally-mandated Contract Review Policy; and (b) remains pending review by the Oversight Board. See Docket Entry No. 21,509.

36. In the Oversight Board's own words – *[t]he Oversight Board established the [Contract Review] Policy to require prior Oversight Board approval of contracts or series of related contracts, inclusive of any amendments, modifications, or extensions, with an aggregate expected value of $10 million or more, proposed to be entered into by the Commonwealth or any covered instrumentality. Congress also identified certain benefits to the Commonwealth that the Policy was intended to promote, such as competitive procurement, fiscal sustainability and integrity as developed by the Oversight Board through fiscal plans, increased public faith in contracting, and preservation of Commonwealth resources. See id. ("to ensure such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan"); id. § 204(b)(3) ("to increase the public's faith in [the Commonwealth's contracting] process" and "to make appropriate use of the Oversight Board's time and resources"). ... Here, Congress's goals have been impeded because, contrary to PROMESA Section 204(b), the Oversight Board was not able to review the Contract for compliance with the Fiscal Plan or market competitiveness prior to execution and payment. Accordingly, any alleged benefit provided by the Contract has, at the very least, been reduced by the loss of the benefits that would have been provided had the Contract been reviewed in accordance with the Policy and competitively procured prior to execution. Furthermore, the Oversight Board has been unable to conclude the Contract complies with Puerto Rico's certification and registration requirements."* See Docket Entry No. 21,509, at pages 7-8.

37. Contrary to the assertions of the Oversight Board and its counsel, in the *Rivera Siaca* matter the Oversight Board and O&B correctly argued that a Puerto Rico government contract having a value of $10 million or more is invalid and incomplete until the Oversight

11

Board actually reviews and approves it.

38. The pendency of review of a public contract by the Oversight Board in fact renders it annullable and legally incomplete until the Oversight Board actually reviews it.

39. **The Oversight Board's contract review obligations are *evergreen*.** They don't expire, they carry no deadlines, and they're not subject to any applicable statute of limitations. O&B and the Oversight Board have not argued the contrary.

40. **The Oversight Board's contract review obligations are also *mandatory*.** They don't expire, they carry no exceptions (as to contracts having a transactional value of $10 million or more), and they're not subject to any statute of limitations. O&B and the Oversight Board have not argued the contrary.

41. In this case, the controversy at hand revolves around the highly controversial $384,269,047 *Loan Sale Agreement* that: (a) was crafted by O&B, the Oversight Board's own legal counsel, amidst serious conflicts of interest; (b) was never reviewed nor approved by the Oversight Board prior to its execution in the manner required by the Oversight Board's own Contract Review Policy; and (c) remains pending the Oversight Board's review in accordance with the Congressionally-mandated Contract Review Policy, as court record reflects. The Oversight Board is required to examine the *Loan Sale Agreement* and has failed to do so, presumably because doing so would expose its own local legal counsel to civil or criminal liability.

42. By applying the same reasoning of the Oversight Board in the *Rivera Siaca* matter, this Title III Court must find that the *Loan Sale Agreement* is deemed invalid and legally incomplete because the Oversight Board has not yet reviewed and approved it.

43. While the Oversight Board willfully continues to neglect its federal mandate in

12

relation to the *Loan Sale Agreement*, the top cabinet members of the Government of Puerto Rico are separately challenging the legality and validity of the *Loan Sale Agreement* under allegations of fraud and a myriad of other statutory defects, including: (a) the absence of a competitive bidding process; (b) the absence of the Oversight Board's review in accordance with the Contract Review Policy; (c) non-compliance with Puerto Rico's legal formalities and requirements; and (d) other motives.[9]

44. Although the Oversight Board admits having a policy of reviewing government contracts exceeding $10 million, it explains that it has not yet reviewed the *Loan Sale Agreement* because the BDE is seeking to nullify the same in litigation pending in Commonwealth court. The Oversight Board explains that it has not reviewed the *Loan Sale Agreement* under its Contract Review Policy while that litigation is pending. The Oversight Board is wrong.

45. The fact that the *Loan Sale Agreement* is under scrutiny before Commonwealth court does not exempt the Oversight Board from reviewing the same, independently, pursuant to federal mandate under PROMESA and its own Contract Review Policy.

46. The Commonwealth of Puerto Rico and hundreds of small Puerto Rican business owners like the Movant are being collaterally injured by the Oversight Board's willful misconduct and negligence in relation to the controversial *Loan Sale Agreement*.

47. Overseeing the legality and transparency of public contracting in Puerto Rico is one of the main reasons that the Oversight Board exists, yet the Oversight Board denies and delays its review of the *Loan Sale Agreement* without any justifiable cause and with the

---

[9] Case *sub judice* before the Puerto Rico Court of First Instance, San Juan Part, in Civil Case No. SJ2019CV11697, captioned *Banco de Desarrollo Económico Para Puerto Rico v. Garnet Capital Advisors LLC, PR Recovery and Development REO, LLC, PR Recovery and Development JV, LLC, and Parliament Capital Management LLC*.

apparent intent of financially favoring O&B's clients, the BDE Conflict Parties.

48. No public interest whatsoever is being served thru the Oversight Board's denial to intervene with the *Loan Sale Agreement*.

49. In sum, all Puerto Rico government contracts having a transactional value of $10 million or more are not legally valid and binding until the Oversight Board formally reviews and approves the same. The *Loan Sale Agreement* is no exception to that policy, and O&B and the Oversight Board have not argued the contrary.

50. It was the ministerial mandate of the Oversight Board to examine the *Loan Sale Agreement* before it was executed, and it continues to be ministerial mandate of the Oversight Board to examine the *Loan Sale Agreement* now.

51. Although the Movant's position is that the evidence and arguments presented to the Title III Court are sufficient to grant the remedies herein requested, should the Title III Court consider that more evidence is needed, the Movant reserves the right to conduct discovery.

For the reasons set forth above, the Movant requests that the Title III Court grants this reply motion as presented and issues a final Judgment that:

(a) Permanently disqualifies O&B and its members from serving as advisors to the Financial Oversight and Management Board for Puerto Rico for multiple conflicts of interest incurred;

(b) Provides for the disallowment and full disgorgement of fees;

(c) Declares null and void *ab initio* the $384,269,047 *Loan Sale Agreement* described above for lack of due process and the Oversight Board's willful failure to comply with the legal formalities imposed by the Oversight Board's own Contract

14

Review Policy, which requires the revision and approval of all Puerto Rico government contracts having a transactional value of $10 million or more; and

(d) Grants such other relief that the Title III Court deems just, fair, and equitable in light of the conflicts of interest that exist and that are continuing.

Dated: February 22, 2023
San Juan, Puerto Rico

Respectfully submitted,

<u>S/Javier A. Rivera Vaquer</u>
USDC-PR No. 225809

Javier A. Rivera Vaquer
PO Box 192376
San Juan, Puerto Rico 00919-2376
Tel. 787-759-3634
jariva@rimerico.com

15

## Certificate of Service

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this matter.

In San Juan, Puerto Rico, this 22nd day of February, 2023.

S/Javier A. Rivera Vaquer
USDC-PR No. 225809

Javier A. Rivera Vaquer
PO Box 192376
San Juan, Puerto Rico 00919-2376
Tel. 787-759-3634
jariva@rimerico.com

16