## **Exhibit R**

UNINSURED BOND SETTLEMENT AGREEMENT

**THIS NOTICE IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR
A SOLICITATION OF ACCEPTANCE OR REJECTION OF A TITLE III PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE INCORPORATED INTO PROMESA TITLE III BY SECTION 301.**

**ANY SUCH FUTURE OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROMESA.**

-------------------------------------------------------------------------------

**<u>NOTICE TO HOLDERS OF UNINSURED BONDS</u>**

of

**PUERTO RICO ELECTRIC POWER AUTHORITY**
**(Formerly Puerto Rico Water Resources Authority)**

**POWER REVENUE BONDS and
POWER REVENUE REFUNDING BONDS
(List of CUSIPS Attached as Exhibit A hereto)**

*Regarding*

***Opportunity for Uninsured Bondholders to Become Party to Settlement Agreement***

**"<u>Participation Date</u>":**              **5:00 p.m. ET on February 24, 2023**

This notice contains important information of interest to beneficial owners of the subject securities. To the extent applicable, all depositories, custodians, and other intermediaries receiving this notice are requested to expedite re-transmittal to such beneficial owners in a timely manner. **AS MORE FULLY DESCRIBED HEREIN, FAILURE TO SIGN THE SETTLEMENT AGREEMENT (AS DEFINED BELOW) AND TO TENDER YOUR BONDS FOR ASSIGNMENT OF A NEW CUSIP BY THE PARTICIPATION DATE WILL RESULT IN LOSS OF THIS OPPORTUNITY TO SETTLE.**

**This notice is addressed solely to holders of Bonds (as defined below) issued by the Puerto Rico Electric Power Authority ("<u>PREPA</u>") that are <u>not</u> insured under a primary insurance policy or secondary insurance policy (the "<u>Uninsured Bonds</u>"). Bonds insured under a primary insurance policy or secondary insurance policy ("<u>Insured Bonds</u>") are <u>not</u> eligible for the opportunity described herein and their respective monoline insurer will be provided with a similar proposal separately.  Accordingly, beneficial owners of such Insured Bonds and any custodian holding such Insured Bonds and a related secondary insurance policy are not eligible to sign the Settlement Agreement, should <u>not</u> tender such Insured Bonds, and should <u>not</u> sign the Settlement Agreement in respect of such Insured Bonds.**

Capitalized terms used but not defined in this notice shall have the respective meanings given to them in the Settlement Agreement.

1

## Settlement Agreement

NOTICE IS HEREBY GIVEN by the Financial Oversight and Management Board for Puerto Rico, as the Title III representative of PREPA ("**Oversight Board**") to each beneficial and registered owner of uninsured Puerto Rico Electric Power Authority Power Revenue Bonds and Power Revenue Refunding Bonds (the "**Bonds**"), issued and outstanding pursuant to that certain Trust Agreement, dated as of January 1, 1974, as amended and restated, supplemented, or otherwise modified from time to time, between PREPA and U.S. Bank National Association as successor trustee (the "**Trustee**"), to become a party to a Settlement Agreement (together with the annexes, exhibits, and schedules attached thereto, and as it may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, each a "**Settlement Agreement**") among (a) Oversight Board and (b) such beneficial or registered owner of Uninsured Bonds (together with all other beneficial or registered owners that become parties to a Settlement Agreement, the "**Settling Bondholders**"). Beneficial or registered owners of Uninsured Bonds who do not become a party to the Settlement Agreement are defined as "**Non-Settling Bondholders**".

Each Settling Bondholder will be party to an individual Settlement Agreement that will contain the same terms and conditions as the Settlement Agreements applicable to other Settling Bondholders. A copy of the terms of the Settlement Agreement is attached hereto as **Exhibit B**. A copy of the Settlement Agreement will also be available at: https://cases.ra.kroll.com/puertorico, the case site for the Title III Case of PREPA. Once on the case site, click the link named "PREPA Settlement Materials" on the left hand side of the site under "Quick Links" to obtain a copy of the Settlement Agreement. The Settlement Agreement will also be posted on the Electronic Municipal Market Access (EMMA) website of the Municipal Securities Rulemaking Board, currently located at http://emma.msrb.org, using the CUSIP numbers of the Uninsured Bonds eligible to participate in the settlement and agreements as described herein and in the Settlement Agreement.

This notice contains summaries of the Settlement Agreement and is qualified in its entirety by reference to the Settlement Agreement. **All registered and beneficial owners of the Uninsured Bonds are urged to review the Settlement Agreement in its entirety and to consult with their legal and financial advisors concerning any questions they have concerning the terms of the Settlement Agreement.**

### The PREPA Title III Case

On July 2, 2017 (the "**Petition Date**"), the Oversight Board filed a petition for relief for PREPA pursuant to section 304(a) of PROMESA[1] with the United States District Court for the District of Puerto Rico (the "**Title III Court**"), commencing a debt adjustment case under Title III of PROMESA, Case No. 17-bk-4780-LTS (the "**Title III Case**"). Pursuant to section 315(b) of PROMESA, the Oversight Board is the Title III representative of PREPA in PREPA's Title III Case.

### The Amended Lien & Recourse Challenge
### Challenging the Validity of the Bonds

This settlement offer applies to you if you are a beneficial holder of Uninsured Bonds issued by PREPA. As explained in more detail below, the validity of your Bonds and entitlement to payment have been challenged on two grounds: (1) the Oversight Board contends your Bonds are secured only by moneys in certain accounts that only amount to less than one percent (1.0%) of your claim; and (2) the Oversight Board contends your Bonds are not allowable claims against PREPA, but are only allowable claims against those certain accounts. If the Oversight Board prevails on both those contentions, your recovery

---

[1] "**PROMESA**" is codified at Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq.

will be less than one percent (1.0%) of your allowable Bond claims. If the Oversight Board prevails on its contention that the collateral securing your bonds is limited to what is in those certain accounts, but does not prevail on its contention that your bonds are not allowable claims against PREPA, your recovery will equal the recovery received by other general unsecured claimholders which may range from approximately forty percent (40.0%) to fifty percent (50.0)% of your allowable Bond Claims. If the Oversight Board does not prevail on its contention that the collateral securing your bonds is limited to what is in those certain accounts, but is rather secured by PREPA's revenues, your allowable Bond Claims will likely be paid more than fifty percent (50.0%) on the dollar and could possibly be paid in full, depending on the Title III Court's determination including as to PREPA's responsibility to raise electricity prices and PREPA's ability to collect more revenues as its customers are charged more for power.

Rather than risking nearly no recovery on your Bond Claims, this settlement offer allows you to settle for payment in the form of new bonds of approximately half your claims with the possibility of receiving more depending on how many bondholders settle and the outcome of the litigation over the two contentions described above. Your allowable Bond claims for settlement purposes include all unpaid principal and interest accrued as of PREPA's commencement of its Title III case on July 2, 2017, but excludes all interest accrued after that date. In exchange for eliminating the risk of nearly no recovery, your acceptance of the offer means that you also materially diminish the probability you will be paid in full or even more than the settlement offer if both the Oversight Board's contentions are rejected and the Bondholders' representatives prevail in the litigation.

On July 1, 2019, the Oversight Board commenced an adversary proceeding against the Trustee (the "**Amended Lien & Recourse Challenge**"), by filing a complaint (subsequently amended), styled The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank National Association, Adv. Proc. No. 19-00391-LTS, currently pending with the Title III Court, in which the Oversight Board asserts that the Trustee's lien and security interest is limited to funds in certain deposit accounts held by the Trustee (the "**Lien Scope Counts**") and that the Trustee's claims with respect to the PREPA Revenue Bonds are recourse solely to such deposit accounts and are non-recourse (meaning they are not valid claims) against PREPA (the "**Recourse Counts**"). All filings with respect to the Amended Lien & Recourse Challenge can be found at https://cases.ra.kroll.com/puertorico/Home-DocketInfo?DocAttribute=4451&DocAttrName=ADVCASENO.19-00391.

As of the date hereof, the various parties to the Amended Lien & Recourse Challenge, including the Oversight Board and the Trustee, have concluded briefing with respect to some of the most determinative claims, counterclaims, and defenses asserted in the Amended Lien & Recourse Challenge. The Title III Court has not issued any rulings with respect to the Amended Lien & Recourse Challenge, including with respect to the Lien Scope Counts or the Recourse Counts. The Title III Court has scheduled oral argument to be heard in connection with the Amended Lien & Recourse Challenge on February 1, 2023.

### The PREPA Plan

On December 16, 2022, the Oversight Board filed its proposed plan of adjustment for PREPA in connection with PREPA's Title III Case (as it may be further amended, modified, or supplemented from time to time as permitted by the Settlement Agreement, the "**PREPA Plan**")[2] and a corresponding

---

[2] The PREPA Plan can be accessed at this link:
https://document.epiq11.com/document/getdocumentsbydocket/?docketId=977702&projectCode=PR1&docketNumber=3110&source=DM. In the event of any inconsistency between this Notice and the PREPA Plan, the PREPA Plan shall control. All filed documents related to the Title III Case can be located at https://dm.epiq11.com/case/pr1/dockets.

proposed disclosure statement (the "**Disclosure Statement**").  As of the date hereof, the Disclosure Statement has not been approved and the PREPA Plan has not been confirmed by the Title III Court.

The PREPA Plan provides holders of Bonds the option to be classified in one of two classes of claims. The first class is the class of holders of Uninsured Bonds[3] that desire to settle their claims against PREPA for the treatment described in the PREPA Plan for such class (the "**Settling Class**").  The second class is the class of holders or insurers of Bonds desiring to have their distributions depend largely on the outcome of the litigation described above (the "**Non-Settling Class**").  The scope of the security interest and the allowance of the claims of the Non-Settling Class will be determined in the Amended Lien & Recourse Challenge through, among other things, resolution by the Title III Court (or other court with appropriate jurisdiction, including any applicable appellate court) of the Lien Scope Counts and Recourse Counts.  A ruling adverse to the Trustee in the Amended Lien & Recourse Challenge could eliminate the vast majority of the claims in the Non-Settling Class, resulting in such holders of claims in the Non-Settling Class receiving treatment on their claims substantially less than the treatment provided to the claims of the Settling Class.  Conversely, if the Trustee is successful in the Amended Lien & Recourse Challenge, the treatment provided to the claims of the Non-Settling Class could be substantially more than the treatment provided to the claims of the Settling Class.

The Oversight Board, pursuant to the Settlement Agreement, as the Title III representative of PREPA, is offering holders of Bonds the opportunity to choose between joining the Settling Class and becoming a Settling Bondholder or remaining in the Non-Settling Class.  A Settling Bondholder will, consistent with the Settlement Agreement, receive—subject to confirmation of the PREPA Plan— the treatment provided to the claims of the Settling Class in the PREPA Plan in exchange for the settlement of the Oversight Board's claims in the Amended Lien & Recourse Challenge against the Trustee, as applied to the Uninsured Bonds held by the Settling Bondholders, including the Lien Scope Counts and the Recourse Counts.  **By opting into the Settling Class Settling Bondholders waive their right to object to confirmation and to participate in the Amended Lien & Recourse Challenge; however, they retain the right to vote to accept or reject the Plan, after approval of the Disclosure Statement**.

## Overview of Certain Terms of Settlement Agreement

As described in greater detail in the Settlement Agreement, by signing the Settlement Agreement, a Settling Bondholder agrees (i) to become a member of the Settling Class and receive the treatment provided to holders of claims in such class in the PREPA Plan, as described in the Settlement Agreement, and (ii) to the settlements embodied in the Settlement Agreement, and to various covenants related thereto.  Settling Bondholders shall also be entitled to certain rights, claims, and protections, in each case, subject to the terms of the Settlement Agreement.  The following is a brief overview of certain terms of the Settlement Agreement relevant to the treatment given to the Settling Bondholders.

- *Settling Claims*: Pursuant to the PREPA Plan, Settling Bondholders shall have their claims allowed in an amount equal to the accrued and unpaid principal and interest on their Uninsured Bonds as of the Petition Date.  On account of that claim, Settling Bondholders shall be entitled to receive from PREPA a minimum recovery of fifty percent (50.0%) of their allowed claims, consisting of:
    - (a) their *pro rata* share of the cash in the deposit account(s) held by the Trustee which are subject to a perfected security interest in favor of the Trustee (collectively, the "**Sinking Fund**"); and
    - (b) a distribution of Series B Bonds (as defined in the Term Sheet (as defined in the Settlement Agreement)), such that the cash (received under subsection (a) above) and

---

[3] If PREPA reaches a settlement with any insurers of bonds, the claims of such parties may be classified separately from the Uninsured Bonds.

the face amount of the Series B Bonds received by each Settling Bondholder equals 50% of the amount of the allowed claim.[4]

- Settling Bondholders may receive additional distributions on their allowed claims depending on the result of the Amended Lien & Recourse Challenge. If the Oversight Board prevails on the Lien Scope Counts and/or Recourse Counts, such that New Bonds (as defined in the Term Sheet and Settlement Agreement) remain available for distribution after making the minimum distributions of New Bonds to Settling Bondholders and Non-Settling Bondholders, then the Settling Bondholders' will receive, after (i) the trust established for holders of general unsecured claims against PREPA receives the next distribution of New Bonds in a face amount sufficient to provide general unsecured claims fifty percent (50.0%) of the estimated value of their claims, and (ii) the trust established pursuant to the PREPA Plan to make payments to the PREPA pension system (for the benefit of PREPA pension beneficiaries) receives twenty percent (20.0%) of the Series B Bonds remaining after the distributions of Series B Bonds in (i), (A) forty percent (40.0%) of their *pro rata* share of remaining Series B Bonds available, and (B) if and only if the holders of general unsecured claims against PREPA and Fuel Line Lenders receive New Bonds in a face amount sufficient to pay them in full, up to the remaining sixty percent (60.0%) of their *pro rata share* of New Bonds.

- The Settling Bondholders will receive a contingent value instrument in an amount equal to their remaining portions of their allowed claims. The total recovery to be received by Settling Bondholders under the PREPA Plan is referred to herein as the "**Settling Claims Recovery**."

- *Non-settling Claims*: Non-Settling Bondholders' recovery is dependent on the outcome of the Amended Lien & Recourse Challenge.

  - If the Oversight Board prevails on the Lien Scope Counts and Recourse Counts, then Non-Settling Bondholders' Claims receive only their *pro rata* share of the cash in the Sinking Fund (less than one percent (1.0%) of such claims), and have no deficiency claim against PREPA. If the class of Non-Settling Bondholders votes to accept the PREPA Plan, however, they will receive a contingent value instrument that could pay up to the difference between the unpaid principal and accrued interest on their claims as of the Petition Date and the distributions made to them from the Sinking Fund, depending on future results. The prospects of the contingent value instrument paying material amounts is very speculative.

  - If the Oversight Board prevails on the Lien Scope Counts, but loses on the Recourse Counts, then the Non-Settling Bondholders' claims will receive a *pro rata* share of the Sinking Fund. Any potential unsecured deficiency claim will share, *pro rata*, with all other non-settled unsecured claims, in the recovery made available to holders of general unsecured claims.

  - If the Oversight Board loses the Lien Scope Counts, but prevails on the Recourse Counts, then the Non-Settling Bondholders' claims will receive their *pro rata* share of remaining New Bonds issued under the PREPA Plan in an amount equal to the value of PREPA's assets that are subject to a valid, perfected, and enforceable prepetition security interest in favor of the Bond Trustee as determined pursuant to the Amended Lien & Recourse Challenge (the "**Bond Collateral**") after payment of the (i) Settling Bondholders' allowed claims, (ii) the Fuel Line Lenders' (as defined in the Term Sheet and Settlement Agreement) allowed claims, and (iii) National's (as defined in the Term Sheet and Settlement Agreement) allowed claims. Non-Settling Bondholders will have no unsecured deficiency claims against

---

[4] Based upon the limited amount of cash currently held in such deposit accounts, the Oversight Board believes that the vast majority of the treatment provided to Settling Bondholders will be in the form of Series B Bonds.

PREPA.

- If the Non-Settling Bondholders prevail on both the Lien Scope Counts and the Recourse Counts, then the Non-Settling Bondholders' claims will receive their *pro rata* share of remaining New Bonds issued under the PREPA Plan in an amount equal to the value of the Bond Collateral after payment of the (i) Settling Bondholders' allowed claims, (ii) the Fuel Line Lenders' (as defined in the Term Sheet (as defined in the Settlement Agreement)) allowed claims, and (iii) National's (as defined in the Term Sheet (as defined in the Settlement Agreement)) allowed claims. They will also receive a *pro rata* share of the recovery made available to holders of general unsecured claims on account of their deficiency claim.

- *Transfer Covenants*: By signing the Settlement Agreement, a Settling Bondholder agrees that it will transfer Uninsured Bonds solely in accordance with the terms of Section 6 of the Settlement Agreement, as follows: to a transferee (i) that is a Settling Bondholder; or (ii) who becomes a Settling Bondholder by executing the joinder contained in Appendix B to the Settlement Agreement.

- *Termination of the* Settlement Agreement: If any Settlement Agreement terminates, the parties to that Settlement Agreement will be restored to their original rights (including regarding the potential claims and proofs of claim and potential objections thereto), subject to, and as more fully set forth in, the Settlement Agreement.

The below graphic depicts the projected recoveries for both Settling Bondholders and Non-Settling Bondholders based on various scenarios with respect to (i) the percentage of Bondholders that settle and do not settle and (ii) the outcome of the Lien Scope Counts and Recourse Counts in the Amended Lien & Recourse Challenge. The projections below are subject to material change.

| | **FOMB wins on Lien Scope Counts and Recourse Counts** | | **FOMB wins on Lien Scope Counts and Loses on Recourse Counts** | | **FOMB loses on Lien Scope Counts and Recourse Counts** | |
|---|---|---|---|---|---|---|
| **0% Bonds Settle** | Settling Bonds | N/A | Settling Bonds | N/A | Settling Bonds | N/A |
| | Non-Settling Bonds | 0.21% | Non-Settling Bonds | 46.42% | Non-Settling Bonds | 51.41% |
| **25% Bonds Settle** | Settling Bonds | 100% | Settling Bonds | 50.00% | Settling Bonds | 50.00% |
| | Non-Settling Bonds | 0.28% | Non-Settling Bonds | 45.38% | Non-Settling Bonds | 51.88% |
| **50% Bonds Settle** | Settling Bonds | 69.99% | Settling Bonds | 50.00% | Settling Bonds | 50.00% |
| | Non-Settling Bonds | 0.42% | Non-Settling Bonds | 43.48% | Non-Settling Bonds | 52.81% |
| **75% Bonds Settle** | Settling Bonds | 56.26% | Settling Bonds | 50.00% | Settling Bonds | 50.00% |
| | Non-Settling Bonds | 0.84% | Non-Settling Bonds | 38.91% | Non-Settling Bonds | 52.81% |
| **100% Bonds Settle** | Settling Bonds | 50.00% | Settling Bonds | N/A | Settling Bonds | N/A |
| | Non-Settling Bonds | N/A | Non-Settling Bonds | N/A | Non-Settling Bonds | N/A |

The foregoing is not a complete summary and is qualified in its entirety by reference to the Settlement Agreement. Beneficial owners and holders are encouraged to review the Settlement Agreement in its

entirety.  *Beneficial owners and holders should consult their bank, broker, or other financial or legal advisor in deciding whether to agree to be bound by the terms of the Settlement Agreement.*

### Rationale for Assignment of Alternative Identifying CUSIPs

Settling Bondholders are, subject to the terms and conditions of the Settlement Agreement, entitled to their *pro rata* share of the Settling Claims Recovery.  The rights to this Settling Claims Recovery and obligations of such Settling Bondholders "travel" with the Uninsured Bond if it is transferred to another Settling Bondholder.  Accordingly, in order to separately identify the Uninsured Bonds that fall into this category, the Settlement Agreement provides for the assignment of alternative identifying CUSIPs to track beneficial interests in Uninsured Bonds that become subject to the Settlement Agreement from time to time, including on or prior to 5:00 p.m. ET on February 24, 2023.  Although referred to in the below procedures as an "exchange," the assignment of such alternative identifying CUSIPs does not change or cause a reissuance of the Uninsured Bonds or change the prepetition nature of claims arising from the Uninsured Bonds in any way.  The terms of your Uninsured Bond remain the same regardless of your acceptance of the Settlement Agreement, but the beneficial owners thereof become subject to the terms, conditions, settlements, covenants and agreements of the Settlement Agreement.  The new CUSIP merely provides an administrative mechanism for tracking the beneficial interests of existing Uninsured Bonds that became subject to the Settlement Agreement prior to 5:00 p.m. ET on February 24, 2023.  There are no tax consequences resulting from the administrative change of CUSIP in respect of your Uninsured Bond.

A beneficial owner of an Uninsured Bond that chooses not to join the Settlement Agreement will continue to hold its Uninsured Bonds unchanged from its current form and under its original CUSIP. Beneficial owners are encouraged to monitor the Kroll Restructuring Administration LLC ("**Kroll**" or the "**Information and Tabulation Agent**") and EMMA websites for future information concerning their Uninsured Bonds.

In the event that there is a termination of a Settlement Agreement pursuant to Section 10 thereof prior to the commencement of distributions contemplated by the Settlement Agreement, then, unless otherwise agreed to by the parties to the Settlement Agreement, the Oversight Board shall employ its reasonable efforts to cause the reassignment of the original CUSIPs of Uninsured Bonds that had been subject to that Settlement Agreement.

The procedures for receiving such alternative identifying CUSIPs are set forth below.

### Procedures for Entering into the
### Settlement Agreement and Assignment of Replacement CUSIPs

Holders of Uninsured Bonds who enter into the Settlement Agreement do so with their understanding and their consent that their beneficial interests in Uninsured Bonds will be assigned a new replacement CUSIP to identify their beneficial interests in the Uninsured Bonds and their agreement to the terms of the Settlement Agreement.  The assignment of such replacement CUSIP is referred to herein as an "exchange" for these limited administrative purposes only.  The exchange will be a one-for-one exchange.  **It is anticipated that the Bonds identified by their new CUSIP will be delivered at the direction of PREPA on or before March 6, 2023 (the "Exchange Effective Date").**

For those beneficial owners of Uninsured Bonds entering into the Settlement Agreement, in addition to providing the beneficial owners' agreement by executing the Settlement Agreement through the delivery of a signature page in the form of **Exhibit D** hereto, Depository Trust Corporation ("**DTC**") participants should make book-entry delivery of the consenting Uninsured Bonds by causing DTC to transfer such

Uninsured Bonds into the ATOP account established by the Information and Tabulation Agent, on behalf of and as agent for PREPA in accordance with DTC's procedures for such transfer. Such book-entry delivery must be made on or prior to 5:00 p.m. ET on the Participation Date. *Please note that transferring Uninsured Bonds into the Information and Tabulation Agent's ATOP account alone is not sufficient to process the consent and exchange of a beneficial owner's Uninsured Bonds; the signature page to the Settlement Agreement Consent Form (defined below) and the Settlement Agreement, in the form of* **Exhibit C and Exhibit D** *hereto, respectively,* <u>must</u> *also be delivered to the Information and Tabulation Agent to effectively process such consent and exchange.*

The Information and Tabulation Agent will establish an ATOP account with respect to all Uninsured Bonds at DTC for purposes of joining holders to the Settlement Agreement. DTC Participants should make book-entry delivery of the Uninsured Bonds by causing DTC to transfer such Uninsured Bonds into the Information and Tabulation Agent's ATOP account in accordance with DTC's procedures for such transfer. Concurrently with the delivery of the Uninsured Bonds through book-entry transfer into the Information and Tabulation Agent's ATOP account at DTC, an Agent's Message (as defined below) in connection with such book-entry transfer must be transmitted to and received by the Information and Tabulation Agent on or prior to the Participation Date. The confirmation of a book-entry transfer into the Information and Tabulation Agent's ATOP account at DTC as described above is referred to herein as a "**Book-Entry Confirmation**."

"**Agent's Message**" means a message transmitted by DTC to, and received by, the Information and Tabulation Agent's ATOP account and forming a part of the Book-Entry Confirmation that states that DTC has received an express acknowledgment from the participants in DTC described in such Agent's Message, stating the aggregate principal amount of the Uninsured Bonds that have been tendered by such participants pursuant to this notice and that such participants have received this notice, have reviewed the Settlement Agreement and agree to be bound by the Settlement Agreement's terms and that PREPA may enforce such agreement against such participants.

Unless the Uninsured Bonds being tendered are received in the Information and Tabulation Agent's ATOP account on or prior to 5:00 p.m. ET on the Participation Date (accompanied by a properly transmitted Agent's Message), the holders of such Uninsured Bonds will be deemed to have not joined the Settlement Agreement. Uninsured Bonds tendered into the ATOP account may be withdrawn until the Participation Date.

Bulk tenders through ATOP are not permitted. Tenders must be submitted at the beneficial holder level into DTC's ATOP system. Tenders through ATOP will be accepted in each Uninsured Bond's minimum and multiple denominations.

The form associated with consent to the Settlement Agreement ("**Settlement Agreement Consent Form**"), attached as **Exhibit C** hereto, must include all participating CUSIPs, principal amounts, and VOI (Voluntary Offering Instruction) IDs per beneficial owner. If there are any irregularities with what has been delivered via book entry into ATOP and what is provided on the Settlement Agreement Consent Form, consent to the Settlement Agreement will be considered ineffective until the irregularity is corrected. All Uninsured Bonds tendered through DTC's ATOP will be restricted from further trading or transfer through the Exchange Effective Date for such participating Bonds in accordance with the terms of the Settlement Agreement.

A signature page to the Settlement Agreement, in the form of **Exhibit D** hereto, must be signed by the beneficial owner of the participating Uninsured Bonds or its nominee (if the nominee is permitted to act as a signatory for the beneficial owner) and must be returned to the Information and Tabulation Agent through Kroll's E-Portal system. If a beneficial owner holds multiple CUSIPs, the beneficial owner is

8

only required to sign one signature page to the Settlement Agreement for their entire principal amount of Uninsured Bonds consenting to the terms of the Settlement Agreement. **Beneficial owners of Uninsured Bonds corresponding to two or more CUSIPs must tender all of their Uninsured Bonds through the execution of a single signature page of the Settlement Agreement according to the terms herein, in addition to tendering all of their bonds through DTC's ATOP system. Once a beneficial owner has delivered a signature page to the Settlement Agreement, such signature page will be considered to have been delivered with respect to all of the Uninsured Bonds that beneficial owner holds.**

*Beneficial owners of Insured Bonds are <u>not</u> individually eligible to become party to the Settlement Agreement and are <u>not</u> subject to the procedures set forth herein.*

A beneficial owner or its DTC nominee (if the DTC nominee is permitted to act as signatory for the beneficial owner) should return a signed signature page to the Settlement Agreement to Kroll, in the form of **Exhibit D** hereto, no later than the Participation Date, 5:00 p.m. ET on February 24, 2023, via Kroll's E-Portal system. The information provided on the signature page and through the Information and Tabulation Agent's E-Portal system must be disclosed at the beneficial owner level. To access the E-Portal System visit https://cases.ra.kroll.com/puertorico, click on "Submit Settlement Agreement Signature Page" section of the website and follow the instructions to complete and submit your Settlement Agreement signature page and associated information. Unless the Settlement Agreement signature page is received by the Information and Tabulation Agent on or prior to the Participation Date of 5:00 p.m. ET on February 24, 2023, the holders of such Uninsured Bonds will be deemed to have **not** joined the Settlement Agreement. Please do not submit hard copies or emailed copies of the Settlement Agreement signature page. The E-Portal is the only valid method of submission.

Questions or requests for additional information may be directed to the Information and Tabulation Agent at:

Kroll Restructuring Administration LLC
Attn: Tiffany Archbell
Tel: +1 (646) 486-7944. E-Mail:
puertoricoballots@ra.kroll.com

Dated: January 27, 2023

## EXHIBIT A

The table below lists the CUSIPS related to the uninsured bonds in which bondholders are able to participate through DTC's ATOP program.

### Uninsured CUSIPs

| | | | |
|---|---|---|---|
| 74526QKK7 | 74526QZK1 | 74526QXW7 | 74526QYA4 |
| 74526QLH3 | 74526QAJ1 | 74526QYH9 | 74526QYM8 |
| 74526QZY1 | 74526QKN1 | 74526QYW6 | 74526QYS5 |
| 74526QUT7 | 74526QLP5 | 74526QZH8 | 74526QYY2 |
| 74526QWM0 | 74526QSX1 | 74526QZQ8 | 74526QVC3 |
| 74526QXS6 | 74526QPG1 | 74526QKS0 | 74526QWY4 |
| 74526QC67 | 74526QXT4 | 74526QVV1 | 74526QYB2 |
| 74526QD66 | 74526QUW0 | 74526QSW3 | 74526QYN6 |
| 74526QD74 | 74526QWQ1 | 74526QVU3 | 74526QYT3 |
| 74526QD33 | 74526QXD9 | 74526QVA7 | 74526QYZ9 |
| 74526QC83 | 74526QXK3 | 74526QWU2 | 74526QZB1 |
| 74526QD25 | 74526QZE5 | 74526QXP2 | 74526QYC0 |
| 74526QD82 | 74526QZL9 | 74526QXX5 | 74526QZX3 |
| 74526QC75 | 74526QKP6 | 74526QYJ5 | 74526QZZ8 |
| 74526QB92 | 74526QRN4 | 74526QYX4 | 74526QEX6 |
| 74526QB84 | 74526QSN3 | 74526QKT8 | 74526QYD8 |
| 74526QB76 | 74526QUX8 | 74526QLX8 | 74526QZR6 |
| 74526QB68 | 74526QWR9 | 74526QVW9 | 74526QA93 |
| 74526QC59 | 74526QXE7 | 74526QVB5 | 74526QLZ3 |
| 74526QC26 | 74526QXL1 | 74526QVY5 | 74526QYE6 |
| 74526QC42 | 74526QXU1 | 74526QWV0 | 74526QKW1 |
| 74526QC34 | 74526QYF3 | 74526QXQ0 | 74526QUH3 |
| 74526QD58 | 74526QYU0 | 74526QXY3 | 74526QZS4 |
| 74526QC91 | 74526QZF2 | 74526QYK2 | 74526QVD1 |
| 74526QD41 | 74526QZM7 | 74526QYQ9 | 74526QVL3 |
| 74526QD90 | 74526QKQ4 | 74526QUF7 | 74526QA77 |
| 74526QKL5 | 74526QSV5 | 74526QKU5 | 74526QWB4 |
| 74526QLL4 | 74526QUY6 | 74526QNS7 | 74526QWE8 |
| 74526QA51 | 74526QWS7 | 74526QSY9 | 74526QA69 |
| 74526QA28 | 74526QXF4 | 74526QVZ2 | 74526QKX9 |
| 74526QUU4 | 74526QXM9 | 74526QWC2 | 74526QVF6 |
| 74526QWN8 | 74526QXV9 | 74526QWW8 | 74526QVE9 |
| 74526QXB3 | 74526QYG1 | 74526QXR8 | 74526QVX7 |
| 74526QXJ6 | 74526QYV8 | 74526QXZ0 | |
| 74526QKM3 | 74526QZG0 | 74526QYL0 | |
| 74526QA85 | 74526QZN5 | 74526QYR7 | |
| 74526QZT2 | 74526QKR2 | 74526QZA3 | |
| 74526QUV2 | 74526QSU7 | 74526QKV3 | |
| 74526QWP3 | 74526QVT6 | 74526QNT5 | |
| 74526QXC1 | 74526QUZ3 | 74526QWA6 | |
| 74526QXH0 | 74526QWT5 | 74526QWD0 | |
| 74526QZD7 | 74526QXN7 | 74526QWX6 | |

The table below lists the CUSIPS that are insured by a primary insurance policy.  Accordingly, beneficial owners of such Insured Bonds and any custodian holding such Insured Bonds and a related secondary insurance policy are <u>not</u> eligible to sign the Settlement Agreement, are <u>not</u> able to tender such Insured Bonds, and should <u>not</u> sign the Settlement Agreement in respect of such Insured Bonds.

**Insured CUSIPs**

| | | | |
|---|---|---|---|
| 7452684W9 | 74526QEJ7 | 74526QLR1 | 74526QPJ5 |
| 7452686K3 | 74526QLM2 | 7452688G0 | 74526QDF6 |
| 7452688A3 | 74526QEK4 | 74526QAM4 | 74526QLV2 |
| 74526QCE0 | 7452688D7 | 74526QCL4 | 74526QPK2 |
| 74526QEE8 | 74526QCH3 | 74526QDC3 | 74526QDG4 |
| 74526QEF5 | 74526QEL2 | 74526QER9 | 74526QLW0 |
| 74526QFA5 | 74526QEM0 | 74526QLS9 | 74526QPL0 |
| 74526QCT7 | 74526QCZ3 | 74526QLT7 | 74526QDH2 |
| 7452684X7 | 74526QLN0 | 74526QZC9 | 74526QLY6 |
| 7452686L1 | 7452688E5 | 74526QZP0 | 74526QPM8 |
| 7452688B1 | 74526QAK8 | 74526QCM2 | 74526QEW8 |
| 74526QCF7 | 74526QCJ9 | 74526QDD1 | 74526QEY4 |
| 74526QEG3 | 74526QDA7 | 74526QES7 | 74526QPN6 |
| 74526QLJ9 | 74526QEN8 | 74526QET5 | 74526QPP1 |
| 74526QLK6 | 74526QLQ3 | 74526QPH9 | 74526QPQ9 |
| 74526QCU4 | 7452688F2 | 74526QLU4 | 74526QAR3 |
| 7452686M9 | 74526QAL6 | 74526QZJ4 | 74526QPR7 |
| 7452688C9 | 74526QCK6 | 74526QDE9 | 74526QPS5 |
| 74526QAH5 | 74526QDB5 | 74526QCN0 | 74526QPT3 |
| 74526QCG5 | 74526QEP3 | 74526QEU2 | |
| 74526QEH1 | 74526QEQ1 | 74526QEV0 | |

## EXHIBIT B

**Settlement Agreement**

**THIS SETTLEMENT AGREEMENT IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF A PLAN OF ADJUSTMENT FOR PURPOSES OF PROMESA TITLE III'S INCORPORATION OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE, OR OTHERWISE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF PROMESA.  NOTHING CONTAINED IN THIS AGREEMENT SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.**

**THIS SETTLEMENT AGREEMENT DOES NOT PURPORT TO SUMMARIZE ALL TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN AND THE CLOSING OF ANY TRANSACTION SHALL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH DEFINITIVE DOCUMENTS AND THE APPROVAL RIGHTS OF THE PARTIES SET FORTH HEREIN AND IN SUCH DEFINITIVE DOCUMENTS THIS SETTLEMENT AGREEMENT CONTEMPLATES TO FACILITATE THE IMPLEMENTATION OF THE SETTLEMENT AGREEMENT.**

## SETTLEMENT AGREEMENT

This Settlement Agreement (together with the exhibits attached hereto, which include, without limitation the Term Sheet (as defined herein) attached hereto as **Appendix A**, as each may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof, the "Agreement") dated as of the date set forth below on the signature page of the Settling Bondholder is entered into by and among: (i) the Puerto Rico Electric Power Authority ("PREPA") through the Financial Oversight and Management Board for Puerto Rico as PREPA's Title III representative ("FOMB"); and (ii) any holder of Bonds (as defined herein) that are not insured under a primary insurance policy or secondary insurance policy ("Uninsured Bonds") that determines to become party to this Agreement in accordance with the terms hereof (each such person, a "Settling Bondholder" and collectively, the "Settling Bondholders").  This Agreement collectively refers to the FOMB and each Settling Bondholder as the "Parties" and each individually as a "Party."

## RECITALS

**WHEREAS**, PREPA is the issuer of power revenue bonds and power revenue refunding bonds (together, the "Bonds") issued and outstanding pursuant to that certain Trust Agreement, dated as of January 1, 1974, as amended, amended and restated, supplemented, or otherwise modified from time to time (the "Trust Agreement"), between PREPA and U.S. Bank National Association as successor trustee (the "Trustee").

**WHEREAS**, on June 30, 2016, the Puerto Rico Oversight, Management, and Economic Stability Act was signed into law by the President of the United States (P.L. 114-187, "PROMESA").

**WHEREAS**, PROMESA created FOMB with certain powers over the finances and restructuring process with respect to the Commonwealth of Puerto Rico and its instrumentalities as provided for in PROMESA, and FOMB has designated PREPA as a Covered Territorial Instrumentality (as defined in PROMESA).

**WHEREAS**, on July 2, 2017 (the "Petition Date"), FOMB filed a Title III petition on behalf of PREPA (the "Title III Case") in the United States District Court for the District of Puerto Rico (the "Title III Court").

**WHEREAS**, the FOMB is the PROMESA Title III representative of PREPA in the Title III Case pursuant to PROMESA section 315(b).

**WHEREAS**, on July 1, 2019, the FOMB filed a complaint and adversary proceeding against the Trustee styled *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank National Association*, Adv. Proc. No. 19-00391-LTS (as amended), currently pending in the Title III Court (the "Amended Lien & Recourse Challenge").

**WHEREAS**, on December 16, 2022, the FOMB filed the (i) proposed *Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [Case No. 17-bk-04780-LTS, ECF No. 3110] (as amended from time to time, the "Plan"), pursuant to which the FOMB proposes to adjust the debts of PREPA, and (ii) the corresponding proposed *Disclosure Statement for the Title III Plan of Adjustment of the Puerto Rico Electric Power Authority* [Case No. 17-bk-04780-LTS, ECF No. 3111] (the "Disclosure Statement").

**WHEREAS**, consistent with the Plan and Disclosure Statement and this Agreement, the FOMB is offering to each holder of Uninsured Bonds the opportunity to have its claim for Uninsured Bonds classified in the class of Settling Bondholders' claims and receive for its Uninsured Bond claims the treatment provided to that class under the Plan.  Settling Bondholders will have the opportunity to vote to accept or reject the Plan upon receipt of a court-approved Disclosure Statement and balloting materials.  If the Plan is confirmed, Settling Bondholders will receive the treatment provided to the Settling Bondholder pursuant to the Plan, with respect to each Settling Bondholder's Uninsured Bonds, to be implemented in the manner as set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the covenants herein, each Party, intending to be legally bound hereby, agrees as follows:

**Section 1.**     *Agreement Effective Date*.  This Agreement shall become effective and binding upon each Party immediately following the execution and delivery of the Settling Bondholder's

signature to this Agreement, via The Depository Trust Company's ("DTC") Automatic Tender Offer Program ("ATOP") (the date of such delivery, the "Agreement Effective Date").

**Section 2.** *Settlement*. In settlement of (i) the Parties' respective asserted rights and claims as set forth in the Amended Lien & Recourse Challenge, (ii) all claims arising from a Settling Bondholder's Uninsured Bonds and the Trust Agreement, including without limitation any claimed security interest, right to receive current payments or interest, and/or right to receive adequate protection payments (if any), and (iii) any objection of the Settling Bondholder to confirmation of the Plan or assertion of rights under PROMESA Title III, the Parties covenant that (a) the Uninsured Bond claim of the Settling Bondholder shall be classified in the class of claims of "Settling Bondholders" under the Plan (i.e., Class 1 under the Plan, as it may be redesignated from time to time), and (b) the Plan, and each amendment, amendment and restatement, restatement, supplement, or modification thereto filed by the FOMB after the date hereof, and that becomes effective, shall, in every case, incorporate the treatment of the Settling Bondholder's claims with respect to its Uninsured Bonds set forth on the term sheet attached hereto as **Appendix A** (the "Term Sheet"). For the avoidance of doubt, the Settling Bondholder shall retain the right to accept or reject the Plan upon receipt of a court-approved Disclosure Statement. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Term Sheet.

**Section 3.** *Settlement Offer Termination Date*. The deadline for a holder of Uninsured Bonds to return its signature to this Agreement in accordance with the terms hereof and bind the FOMB to this Agreement shall be 5:00 p.m. Eastern Standard Time on February 24, 2023 (the "Participation Date"); *provided* that the FOMB reserves the right to extend the Participation Date in its sole discretion. All signatures received by the FOMB after the Participation Date shall be void, and there shall be no Agreement Effective Date with respect to the Uninsured Bonds represented by such signature; *provided* the FOMB may accept such signatures received after the Participation Date in its sole discretion and shall notify you within ten (10) business days of receipt of your signature as to whether FOMB is accepting your signature page or not.

**Section 4.** *Exhibits Incorporated by Reference*. Each of the exhibits and schedules attached hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include the exhibits.

**Section 5.** *Covenants of the Parties*.

5.01. Covenants of the FOMB. From and after the date hereof, provided this Agreement has not been terminated, the FOMB shall take, and use its reasonable best efforts to cause PREPA to take, all actions necessary to obtain, and shall not encourage any other person to, take any action which would, or would reasonably be expected to, impede or preclude, the approval of the Disclosure Statement and the entry of a confirmation order with respect to the Plan (the "Confirmation Order") and the consummation, implementation, and administration of the Plan, including the execution and delivery of all definitive documents required to implement the Plan, including an indenture governing the New Bonds (the "Definitive Documents"), *provided* that the Disclosure Statement, the Plan (and its consummation, implementation, and administration), and the other Definitive Documents are consistent with the terms herein. Such actions shall include, but not be limited to: (i) prosecuting, in a timely manner, the approval of the Disclosure Statement

3

and proposed confirmation schedule contemplating a confirmation hearing in or around July 2023 (or any other date set by the Court), and confirmation of the Plan; (ii) proposing a Confirmation Order consistent with the terms herein and in the Term Sheet; (iii) causing the effective date of the Plan (the "Plan Effective Date") to occur on or before June 30, 2024; and (iv) refraining from directly or indirectly commencing or supporting (or continuing to prosecute) any action or proceeding, or asserting any claim or objection, against any of the Settling Bondholders challenging their asserted security, priority, rights, and claims as set forth in the pleadings filed in the Amended Lien & Recourse Challenge, but solely as it relates to the Settling Bondholders; *provided*, *however*, the FOMB shall be entitled to prosecute the Amended Lien & Recourse Challenge against any party other than the Settling Bondholders, including, without limitation, the Trustee and any successor trustee for the Bonds, and any final judgment against any such party shall not adversely affect the Parties' rights under this Agreement.

5.02.   Covenants of the Settling Bondholder.  From and after the date hereof, provided this Agreement has not been terminated, the Settling Bondholder: (A) shall support, and not otherwise object to, (I) approval of the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code, and (II) confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code to the extent incorporated into PROMESA Title III and section 314 of PROMESA; *provided*, that a Settling Bondholder may vote to accept or reject, after receipt of a court-approved Disclosure Statement, the Plan, or abstain from voting, without such act, by itself, contravening the terms of this Agreement; (B) shall not commence, support (or continue to prosecute) and shall withdraw all its subpoenae, deposition notices, requests for production of documents, complaints, motions, and other requests for relief against PREPA or the FOMB, including, without limitation, any joinders relating to the Amended Lien & Recourse Challenge; and (C) shall support, and otherwise not, nor encourage any other person to, take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein, or impede or preclude, the administration of the Title III Case, the confirmation of the Plan, the entry of the Confirmation Order, and the consummation, implementation, and administration of the Plan including the execution and delivery of the Definitive Documents provided that the Disclosure Statement, the Confirmation Order, the Plan (and their consummation, implementation and administration) and the PREPA Definitive Documents are materially consistent with the terms herein.

5.03.   Mutual Covenants of the Parties.  Each of the Parties, severally and jointly, covenants that:

(a)   Subject to the terms and conditions hereof, such Party shall support, and otherwise not encourage any other person to take any action which would, or would reasonably be expected to, breach or be inconsistent with the terms herein or impede or preclude the filing of the Plan, including any amended Plan, the administration of the Title III Case, the approval of the Disclosure Statement, the entry of the Confirmation Order and the consummation, implementation, and administration of the Plan, including the execution and delivery of the Definitive Documents; *provided* that such Disclosure Statement, Confirmation Order, and Plan (and its consummation, implementation, and administration) and the other Definitive Documents are materially consistent with the terms herein and the Plan; and *provided further*, that the Settling Bondholder's right to vote to accept or reject the Plan is reserved.

4

(b)     Notwithstanding any other provision herein, this Agreement is not and shall not be deemed to be an offer with respect to any securities or solicitation of votes for the acceptance or rejection of a plan of adjustment for purposes of PROMESA and its incorporated sections 1125 and 1126 of the Bankruptcy Code, or otherwise.

(c)     Any such offer or solicitation will be made only in compliance with all applicable securities laws and provisions of PROMESA and the Bankruptcy Code provisions it incorporates, and will not be solicited until the Title III Court has approved the Disclosure Statement and related solicitation materials, and such Disclosure Statement and solicitation materials have been transmitted to parties entitled to receive same.

**Section 6.**      *Transfer of Claims and Interests*.

(a)     For the period commencing as of the Agreement Effective Date until the termination of this Agreement as to any Settling Bondholder pursuant to the terms hereof, such Settling Bondholder shall not sell, assign, transfer, or otherwise pledge or dispose of ("Transfer") any Uninsured Bonds beneficially owned or controlled by such Settling Bondholder, or any participation, voting, consent, or direction rights related to such Settling Bondholder, or any replacement thereof identifiable by a unique CUSIP in accordance with Section 8, except such Transfer may be made (i) if the transferee is a Settling Bondholder at the time of the Transfer or (ii) if the transferee is not a Settling Bondholder at the time of the Transfer, such transferee (a transferee pursuant to this clause (ii) or the immediately preceding clause (i), a "Qualified Transferee") delivers to the Information and Tabulation Agent, at or prior to the consummation of the Transfer, the joinder agreement (the "Joinder Agreement") attached hereto as **Appendix B**, pursuant to which such transferee shall assume all rights and obligations of such Settling Bondholder transferor hereunder (and such transferee if not already a Settling Bondholder, shall also be a "Settling Bondholder" hereunder).  To the extent a Transfer violates the provisions of this section, the Transfer shall be void *ab initio* and the applicable Uninsured Bonds and the Settling Bondholder attempting the Transfer of the Uninsured Bonds shall continue to remain subject to the terms of this Agreement.  This Agreement shall in no way be construed to preclude a Settling Bondholder from acquiring additional Uninsured Bonds; *provided* that such Settling Bondholder will be subject to Section 6 of this Agreement and shall comply with Section 5.02 hereof with respect to such additional Uninsured Bonds.

(b)     Notwithstanding anything contained in this Agreement to the contrary: (i) a Settling Bondholder may Transfer any right, title, or interest in the Uninsured Bonds or any security identifiable by a unique CUSIP for which Uninsured Bonds are exchanged in accordance with Section 8 to a Qualified Marketmaker (as defined below), acting in its capacity as a Qualified Marketmaker, without the requirement that such Qualified Marketmaker be or become a Settling Bondholder; *provided* that such Qualified Marketmaker subsequently Transfers such right, title, or interest in the Uninsured Bonds to a Settling Bondholder or a Qualified Transferee within the date that is the earlier of (A) thirty (30) days after such Qualified Marketmaker's acquisition of such right, title, or interest and (B) ten (10) business days prior to any voting deadline on the Plan (the "Marketmaker Holding Period"); and (ii) to the extent that a Settling Bondholder is acting in its capacity as a Qualified Marketmaker, it may Transfer any right, title, or interest in the Uninsured Bonds that the Qualified Marketmaker acquires from a holder of the Uninsured Bonds that is not a Settling Bondholder without the requirement that the transferee be or become a Settling

Bondholder. For the avoidance of doubt, upon expiration of the Marketmaker Holding Period, if the Qualified Marketmaker has not Transferred such right, title, or interest in the Uninsured Bonds to a Settling Bondholder or a Qualified Transferee, the Qualified Marketmaker shall be required to sign the Joinder Agreement, which Joinder Agreement shall be binding with respect to any Uninsured Bonds subject to this Settlement Agreement that are held by such Qualified Market maker in its capacity as a Qualified Marketmarker. Whether the Qualified Marketmaker signs a Joinder Agreement or not, upon expiration of the Marketmaker Holding Period, the Qualified Marketmaker (by accepting or otherwise participating in the Transfer of Uninsured Bonds subject to this Settlement Agreement) will be deemed to agree to refrain from voting the Uninsured Bonds on the Plan.

(c)     "<u>Qualified Marketmaker</u>" means an entity that: (i) holds itself out to the market as standing ready in the ordinary course of its business to purchase from customers and sell to customers debt securities such as the Uninsured Bonds or any security identifiable by a unique CUSIP for which Uninsured Bonds are exchanged in accordance with Section 8 or enter with customers into long and short positions in debt securities such as the Uninsured Bonds, in its capacity as a dealer or market maker in such Uninsured Bonds; (ii) is in fact regularly in the business of making a market in debt securities; and (iii) is registered with the Securities and Exchange Commission and Financial Institutions Regulatory Authority.

(d)     Any disclosures by any Settling Bondholder to any other Party of its holdings of Uninsured Bonds shall be treated as confidential information by such other Party unless such other Party receives such information through other means not subject to a duty of confidentiality.

(e)     In furtherance of the foregoing, the FOMB shall consent to assignments of the Uninsured Bonds in accordance with this Section 6, as applicable.

**Section 7.     *Representations and Warranties*.**

7.01.     <u>Mutual Representations and Warranties</u>.  Each Party hereby, severally and not jointly, represents and warrants to the other Party(ies) that the following statements are true and correct as of the date hereof (or in the case of a Qualified Transferee that is not a Settling Bondholder as of the date hereof, the date such Qualified Transferee becomes a Settling Bondholder):

(a)     such Party has the legal right, power, and authority to enter into this Agreement;

(b)     such Party, as applicable, is duly organized and validly existing and in good standing under the laws of the jurisdiction of its organization with full power and authority to execute and deliver, and to perform and observe the terms and provisions of, this Agreement; and

(c)     the execution, delivery, performance, and observance of this Agreement by such Party (i) has been duly authorized by all necessary action on the part of such Party, does not and will not conflict with, or result in a violation of, any law applicable to it, and does not require it to obtain any permit, consent, approval, order or authorization of, or provide notice to or

6

make a filing with, any court, governmental or regulatory agency or authority or other person or entity that has not been obtained, provided or made, as applicable, (ii) except to the extent modified, stayed, or otherwise excused by PROMESA, (A) with respect to the FOMB, does not contravene, or constitute a default under, any provision of applicable law or regulation or of any agreement, judgment, injunction, order, decree, or other instrument binding on the FOMB, as applicable and (B) with respect to each Party, do not and will not violate, conflict with, or result in the breach of any provision of its organizational or governance documents and (iii) does not and will not result in any breach of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any note, bond, mortgage, indenture, contract, agreement, lease, sublease, license, permit, franchise, or other instrument or arrangement to which it is a party, which would materially adversely affect its ability to carry out its obligations under and otherwise observe this Agreement or cause the occurrence of a Termination Event (defined below).

7.02.   <u>Additional Representations of the Settling Bondholder</u>.  Each Settling Bondholder represents, warrants, and covenants to the FOMB that the following statements are true, correct, and complete as of the date of this Agreement (or in the case of a Qualified Transferee that is not a Settling Bondholder as of the date hereof, the date such Qualified Transferee becomes a Settling Bondholder) (each of which is a continuing representation, warranty, and covenant): that it beneficially owns, controls, has investment management responsibility for accounts that beneficially own or hold such Uninsured Bonds in the principal amounts set forth on its respective signature page hereto or Joinder Agreement (as applicable), which it would be entitled to vote in a plan solicitation as the holder of the claim with respect to such Bonds under section 1126 of the Bankruptcy Code, and that it has not sold, assigned, transferred, participated, or otherwise pledged such Uninsured Bonds, or any voting, consent, or direction rights related to such Uninsured Bonds, to any other person or entity, that would prevent or adversely affect in any way such Settling Bondholder's performance of its obligations contained in this Agreement at the time such obligations are required to be performed, in each case, except as permitted by Section 6 of this Agreement.

**Section 8.**   ***Assignment of Alternative Identifying CUSIPs***.  The FOMB covenants to employ its reasonable efforts to cause the assignment of alternative identifying CUSIPs to track beneficial interests in Uninsured Bonds that become subject to the Agreement.  Uninsured Bonds with such alternative identifying CUSIPs shall remain Uninsured Bonds for all purposes of this Agreement and any holder thereof shall be bound by all applicable provisions of this Agreement.  If this Agreement terminates under Section 10 prior to the Plan Effective Date, the FOMB covenants to employ its reasonable efforts to cause the reassignment of the original CUSIPs of Uninsured Bonds that had been subject to the Agreement.

**Section 9.**   ***Amendments and Waivers***.  The terms and conditions of this Agreement, including any exhibits, annexes, or schedules to this Agreement, may not be waived, modified, amended, or supplemented without the written consents of (a) the FOMB and (b) the Settling Bondholder.

**Section 10.**   ***Termination***.

7

10.01.  Mutual Consent.  This Agreement may be terminated by the mutual written consent of (a) the FOMB and (b) the Settling Bondholder.

10.02.  Termination Events.

(a)  This Agreement may be terminated by (x) the FOMB or (y) the Settling Bondholder, in each case upon five (5) business days' prior written notice delivered to the other aforementioned Parties after the occurrence of any of the following events (each, a "Termination Event"); provided, however, that this Agreement may be terminated (I) solely by the Settling Bondholder (and not the FOMB) upon the occurrence of a Termination Event set forth in clauses (ii) and (iii), below, (II) solely by the FOMB (and not the Settling Bondholder) upon the occurrence of a Termination Event set forth in clauses, (iv), (v), (vi), (vii), (viii), (ix), (x), and (xi) below, and (III) solely by a non-breaching Party with respect to a breaching Party or Parties upon the occurrence of the Termination Event set forth in clause (i) below:

(i)  following the delivery of written notice thereof by a non-breaching Party, the continuation of a material breach by any of the Parties of any of its obligations, representations, warranties, covenants, or commitments set forth in this Agreement that is either unable to be cured or is not cured within five (5) business days following the delivery of such notice;

(ii)  the FOMB enters into, or formally supports, a proposed transaction, disclosure statement, plan of adjustment, legislation, confirmation order, or definitive documentation in connection therewith (by amendment or otherwise) that would prevent or materially impair the Settling Bondholder's treatment on account of its claim consistent with the terms of this Agreement;

(iii)  the formal determination by the FOMB (A) not to proceed with the transactions materially consistent with the economic treatment to be provided to the Settling Bondholder contemplated by this Agreement or (B) to proceed with a transaction that would be materially inconsistent with the economic treatment to be provided to the Settling Bondholder contemplated by this Agreement;

(iv)  the Plan Effective Date does not occur (or cannot occur) on or before June 30, 2024;

(v)  the Puerto Rico Energy Bureau ("PREB") fails or refuses to provide any required regulatory approval of the Legacy Charge and the Title III Court or court of competent jurisdiction does not require or deem PREB to provide such approval within sufficient time to allow the Plan Effective Date to occur on or before June 30, 2024;

(vi)  the Confirmation Order is reversed, dismissed, or vacated and the Title III Court does not within one hundred and eighty (180) days enter a revised order confirming the Plan reasonably acceptable to the FOMB;

8

(vii)     the Title III Court or other court of competent jurisdiction determines (A) the Oversight Board cannot separately classify the claims of the Settling Bondholders from one or more other classes of Bond claims in the Plan, (B) the Oversight Board must provide the Settling Bondholders treatment materially and adversely different than the treatment provided for in the Plan and consistent with  this Agreement, or (C) the Oversight Board must provide substantially the same consideration to the Non-Settling Bondholders as provided to the Settling Bondholders pursuant to the terms of the Plan and consistent with this Agreement;

(viii)    a Settling Bondholder objects to confirmation of a plan of adjustment that complies with the Agreement;

(ix)     confirmation of a plan of adjustment that complies with this Agreement is denied, or to confirm the Plan the Court requires the Oversight Board to further amend the Plan with respect to any provision set forth in the Settlement Summary, and the Oversight Board determines, in its sole and absolute discretion, not to make such amendment;

(x)     the Settling Bondholder (a) directly or indirectly, supports, continues, or attempts to continue, claims, causes of action, and counterclaims of the Trustee and other co-defendants in the Amended Lien & Recourse Challenge against the FOMB or PREPA, or any related action or appeal thereto, (b) seeks relief from the automatic stay to pursue any rights or remedies under the Trust Agreement or Uninsured Bonds, (c) moves to dismiss the Title III Case, or (d) seeks any other relief materially adverse to PREPA or the FOMB;

(xi)     FOMB determines the Agreement will impede or have an adverse impact on PREPA's operational restructuring of its generation assets;

(xii)    appointment of a receiver for PREPA;

(xiii)   the Title III Court enters an order (A) granting any relief that would impair the Parties' ability to perform their respective obligations under this Agreement in any material respect, including, without limitation, denying confirmation of the Plan or (B) that is materially inconsistent with the Term Sheet; or

(xiv)    the Title III Court grants either (A) the *Motion of the Ad Hoc Group of PREPA Bondholders, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Syncora Guarantee, Inc. to Dismiss PREPA's Title III Case, or for Relief from the Automatic Stay to Enforce Their Right to a Receiver (Docket Entry No. 22291 in Case No. 17-3283 and Docket Entry No. 2973 in Case No. 17-4780)* or (B) the *Motion of the Ad Hoc Group of PREPA*

9

> *Bondholders, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Syncora Guarantee, Inc. for Authorization to File a Combined Motion to Dismiss PREPA's Title III Case and Alternative Request for Relief from the Automatic Stay (Docket Entry No. 2971 in Case No. 17-4780).*

(b)     This Agreement shall automatically terminate on the Plan Effective Date.

(c)     The date on which this Agreement is terminated in accordance with the provisions of Section 10.01, Section 10.02(a), and Section 10.02(b), shall be referred to as the "Termination Date".  On the Termination Date, all provisions of this Agreement shall terminate, except as otherwise provided in Section 10.03 of this Agreement, unless the FOMB and the Settling Bondholder waive, in writing, the occurrence of the Termination Event giving rise to the occurrence of such Termination Date.

(d)     If at any time a Settling Bondholder is no longer the beneficial owner of any Uninsured Bonds subject to this Agreement as a result of a Transfer that complies with Section 6 hereof, then this Agreement shall terminate solely as to such Settling Bondholder (but shall remain in effect with respect to the applicable Qualified Transferee), and such Settling Bondholder shall no longer be a Party hereto (i) unless such Settling Bondholder reacquires Uninsured Bonds and (ii) until such Settling Bondholder subsequently becomes a beneficial owner of any Uninsured Bonds whereupon it will automatically be deemed to be a Settling Bondholder under this Agreement.

(e)     No Party may terminate this Agreement upon a Termination Event if such Termination Event is the result of such Party unreasonably failing to perform or comply in any material respect with the terms and conditions of this Agreement; *provided*, *however*, that nothing in this Section 10 shall relieve any Party of liability for any breach or non-performance of this Agreement occurring prior to the Termination Date.

10.03.   Obligations of the FOMB Surviving Termination.  From and after the Termination Date, the FOMB covenants to employ its reasonable efforts to cause the reassignment of the original CUSIPs of Uninsured Bonds that had been subject to this Agreement.

**Section 11.     *Miscellaneous*.**

11.01.   Entire Agreement.  This Agreement constitutes the entire agreement among the Parties with respect to the settlement restructuring process contemplated herein and supersedes all prior acts and agreements, oral, or written, among the Parties with respect thereto.

11.02.   Headings.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

11.03.   GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM.   THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO

CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAWS PRINCIPLES THEREOF THAT WOULD RESULT IN THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION.  Each Party shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Title III Court (or court of proper appellate jurisdiction) (the "Chosen Court"), and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the personal jurisdiction of the Chosen Court; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (c) waives any objection that the Chosen Court is an inconvenient forum or does not have jurisdiction over any Party hereto.  If the Title III Court determines it lacks subject matter jurisdiction and the determination becomes final and no longer subject to appeal, the action shall be brought in the United States District Court for the Southern District of New York if it has subject matter jurisdiction, and otherwise brought in the New York Supreme Court in Manhattan.

11.04.  Trial by Jury Waiver.  EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

11.05.  Execution of Agreement.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Except as expressly provided in this Agreement, each individual executing this Agreement on behalf of a Party represents by his or her signature that he or she has been duly authorized and empowered to execute and deliver this Agreement on behalf of said Party.

11.06.  Rules of Construction.  When a reference is made in this Agreement to a section or exhibit, such reference shall be to a section or exhibit, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby" and derivative or similar words refer to this entire Agreement, (c) the words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." "Writing," "written" and comparable terms refer to printing, typing and other means of reproducing words (including electronic media) in a visible form, and any requirement that any notice, consent or other information shall be provided "in writing" shall include email.  Any reference to "business day" means any day, other than a Saturday, a Sunday or any other day on which banks located in New York, New York are closed for business as a result of federal, state or local holiday and any other reference to day means a calendar day.

11.07.  Successors and Assigns; No Third Party Beneficiaries.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted actual assigns, as applicable.  There are no third party beneficiaries under this Agreement, and the rights or obligations of any Party under this Agreement may not be assigned, delegated, or transferred to any other person or entity, except as permitted herein.

11

11.08.  <u>Notices</u>.  All notices hereunder shall be deemed given if in writing and delivered by electronic mail, courier, or registered or certified mail (return receipt requested) (and if by any method other than electronic mail, then with a copy by electronic mail) to the following addresses (or at such other addresses as shall be specified by like notice):

> if to the FOMB, to:
>
>> Proskauer Rose LLP
>> 11 Times Square
>> New York, NY 10036
>> Attention: Martin J. Bienenstock, Paul V. Possinger, Ehud Barak, and Joshua A. Esses
>> Email: mbienenstock@proskauer.com; ppossinger@proskauer.com; ebarak@proskauer.com; jesses@prosakuer.com
>
> if to the Settling Bondholder(s) set forth on the signature pages below, to the notice addresses set forth on such pages:

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above.  Any notice given by delivery, mail (electronic or otherwise), or courier shall be effective when received.

11.09.  <u>Independent Analysis</u>.  Each Party hereby confirms that its decision to execute this Agreement has been based upon its independent assessment of documents and information available to it, as it has deemed appropriate.

11.10.  <u>Waiver</u>.  No Party shall be deemed to have waived any rights as a result of its entry into this Agreement, and, if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.

11.11.  <u>Relationship Among Parties</u>.  Notwithstanding anything herein to the contrary: (a) the agreements, representations, warranties, liabilities, duties, and obligations of the Parties under this Agreement are, in all respects, several and not joint and several; (b) no Party shall have any responsibility by virtue of this Agreement for any trading by any other unaffiliated entity; (c) no prior history, pattern, or practice of sharing confidences among or between the Parties shall in any way affect or negate this Agreement; (d) the Parties hereto acknowledge this Agreement does not constitute an agreement, arrangement or understanding with respect to acting together for the purpose of acquiring, holding, voting, or disposing of any securities of PREPA and the Parties do not constitute a "group" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended; (e) none of the Parties shall have any fiduciary duty, any duty of trust or confidence in any form, or other duties or responsibilities in any kind or form to each other; and (f) no action taken by any Party pursuant to this Agreement shall be deemed to constitute or to create a presumption by any of the Parties that the Parties are in any way acting in concert or as such a "group."

11.12.  <u>Specific Performance</u>.  Each of the Parties acknowledges that money damages are an insufficient remedy for any breach of this Agreement by any Party and each non-breaching

Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including, without limitation, an order of the Title III Court or such other court of competent jurisdiction requiring, in accordance with applicable law, any Party to comply promptly with any of its obligations hereunder. Notwithstanding anything contained in this Agreement to the contrary, specific performance and injunctive or other similar relief and the right to terminate this Agreement in accordance with the terms and provisions hereof shall be the sole and exclusive remedies for any breach of this Agreement by any Party (or any other person) and no Party (or any other person) shall be entitled to monetary damages for any breach of any provision of this Agreement.

11.13.   <u>Severability and Construction</u>.  If any provision of this Agreement shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, in whole or in part, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible if the new agreement provides each Party with an economic outcome not materially adverse to its original economic outcome.  If the same economics are not reconstructed without material change, this Agreement shall terminate with each Party restored to its rights upon entering into this Agreement.

11.14.   <u>Public Disclosure</u>.  Any public filing of this Agreement, with the Title III Court or otherwise, that includes executed signature pages to this Agreement shall include such signature pages only in redacted form with respect to the Uninsured Bonds held by the Settling Bondholder, unless otherwise required by the Title III Court or applicable law.

[<i>Remainder of page intentionally left blank.</i>]

**<u>Appendix A to Settlement Agreement</u>**

**Term Sheet**

## TERM SHEET

*This Term Sheet does not address all material terms that would be required in definitive documents and in order to consummate the transactions set forth in this Term Sheet.  Such definitive documents, including the New Master Indenture (as defined in the Plan) shall be consistent with the Settlement Agreement, this Term Sheet, and the Plan.  Nothing in this Term Sheet shall constitute an admission or representation of any fact or circumstance or an admission of any liability or waiver of any right or claim.*

*Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan Support and Settlement Agreement to which this Term Sheet is annexed (the "Agreement").*

| | |
|---|---|
| **CLAIM ALLOWANCE AND CLASSIFICATION** | ▪ Each claim of a Settling Bondholder shall be deemed allowed (not subject to challenge, objection, or revocation) in the aggregate amount equal to the principal amount of the Bonds held by such holder plus interest accrued and unpaid on such Bonds through the Petition Date (collectively, the "Settling Bondholder Prepetition Claim Amount") and will collectively be treated as one class of claims, distinct from all other classes of claims, including the classes of Bonds held by holders that are not Settling Bondholders. |
| **CONSIDERATION TO BE RECEIVED BY SETTLING BONDHOLDERS IF THE DISCLOSURE STATEMENT IS APPROVED AND PLAN IS CONFIRMED** | ▪ By signing the Agreement, the Settling Bondholder elects and agrees to be classified in the class of "Settling Bondholders" under the Plan.<br><br>▪ On behalf of its allowed Uninsured Bond claim, each Settling Bondholder shall receive:<br><br>　- Such Settling Bondholder's pro rata share of funds deposited in the Sinking Fund,[1] with respect to such Settling Bondholder's Uninsured Bonds;<br><br>　- Series B Bonds (defined below), including Series B-1 Bonds and/or Series B-2 Bonds (each defined below) in the Oversight Board's sole discretion, in the face amount equal to fifty percent (50.0%) times the amount of such Settling Bondholder's allowed claim minus the amount distributed to such Settling Bondholder from the Sinking Fund;<br><br>　- If the FOMB and PREPA prevail in, or agree to a settlement of, the Amended Lien & Recourse Challenge, and as a result there exist Series B Bonds to be issued under the Plan available for distribution in excess of Series B Bonds allocated for initial treatment of claims, the Settling Bondholder will receive, after (i) the trust established for holders of general unsecured claims against PREPA receives the next distribution of New Bonds in a face |

---

[1] "Sinking Fund" means the deposit account(s) held by the Trustee which are subject to a perfected security interest in favor of the Trustee, for the benefit of the holders of the Bonds.

|  |  |
|---|---|
|  | amount sufficient to provide general unsecured claims 50% of the estimated value of their claims, and (ii) the trust established pursuant to the PREPA Plan to make payments to the PREPA pension system (for the benefit of PREPA pension beneficiaries) receives 20% of the Series B Bonds remaining after the distributions of Series B Bonds in (i), (A) 40% of their *pro rata* share of remaining Series B Bonds available, and (B) if and only if the holders of general unsecured claims against PREPA and Fuel Line Lenders[2] receive New Bonds in a face amount sufficient to pay them in full, up to the remaining 60% of their *pro rata share* of New Bonds, but not more New Bonds than would cause their allowed Uninsured Bond claim to be paid in full. <br><br> - Such Settling Bondholder's pro rata share of CVI[3] along with all other creditors of PREPA entitled to receive CVI pursuant to the Plan, with the Settling Bondholder's pro rata share being computed based on the amount of its allowed claim not satisfied by the foregoing consideration. |
| **NEW BONDS** | ▪ Other than cash consideration paid on the Plan Effective Date, reorganized PREPA ("<u>Reorganized PREPA</u>") shall issue on the Plan Effective Date to PREPA's creditors only Series A Bonds (defined below) and Series B Bonds (defined below). |
| **LEGACY CHARGE** | ▪ "<u>Legacy Charge</u>" means a hybrid connection charge and volumetric charge to be added to PREPA's rate to fund payment of the New Bonds. |
| **REMAINING LEGACY CHARGE** | ▪ "<u>Remaining Legacy Charge</u>" means the Legacy Charge, from and after the date on which the New Bonds are defeased and until the CVI maturity date. |
| **SERIES A BONDS** | ▪ "<u>Series A Bonds</u>", which will be issued only to the Fuel Line Lenders, will have first priority of principal repayment following payment of accrued interest on all outstanding New Bonds. <br><br> ▪ If unpaid at the Series A Bonds' final maturity, the Series A Bonds will remain outstanding until paid in full in cash, but will cease accruing interest as of the Series A Bonds' final maturity. |

---

[2] "<u>Fuel Lien Lenders</u>" means the lenders of the principal amount of loans and other financial accommodations (including interest accrued and unpaid through the Petition Date) pursuant to (i) the Credit Agreement dated May 4, 2012, by and among PREPA, Scotiabank de Puerto Rico, and certain lenders (as amended, amended and restated, supplemented or otherwise modified from time to time) and (ii) the Trade Finance Facility Agreement, dated July 20, 2012, by and between PREPA and Citibank, N.A. (as amended, amended and restated, supplemented or otherwise modified from time to time), and the loans and advances issued under each).

[3] "<u>CVI</u>" means a contingent value instrument to be issued by Reorganized PREPA with a maturity date of thirty-five (35) years after the Plan Effective Date, payable from the revenues attributable to the Remaining Legacy Charge from and after the date on which all Series B Bonds have been indefeasibly paid in full in cash.

| | |
|---|---|
| **SERIES B BONDS** | ▪ "Series B Bonds," consisting of the "Series B-1 Bonds" and the "Series B-2 Bonds", the primary terms of which are described below (and, together with the Series A Bonds, the "New Bonds"), shall be distributed to (a) Settling Bondholders as described in the section of this Term Sheet titled "Consideration to Be Received by Settling Bondholders" and (b) other creditors of PREPA.<br><br>▪ No principal shall be paid on the Series B Bonds until the Series A Bonds have been paid in full in cash.  Thereafter, Series B Bonds shall receive 100% of the Legacy Charge revenues, in accordance with the Payment Waterfall, which shall be applied first to interest due and owing, and second to principal.<br><br>▪ If unpaid at the Series B Bonds' final maturity, the Series B Bonds will remain outstanding until paid in full in cash, but will cease accruing interest as of the Series B Bonds' final maturity. |
| **FINAL MATURITY** | ▪ Series A Bonds:  fifteen (15) year stated final maturity[4] (five (5) year expected repayment; three (3) year expected weighted average life).<br><br>▪ Series B-1 Bonds:  fifty (50) year stated final maturity (thirty-four (34) year expected repayment); (21.81 year expected weighted average life).<br><br>▪ Series B-2 Bonds:  fifty (50) year stated final maturity (thirty-four (35) year expected repayment); (34.51 year expected weighted average life).<br><br>Expected repayment periods are based on PREPA fiscal plan demand, customer data, and proposed rates, subject to the Payment Waterfall (defined below). |
| **COUPON** | ▪ Series A Bonds:  6.00% cash interest; senior to Series B Bonds<br><br>▪ Series B-1 Bonds:  6.00% cash interest; senior to Series B-2 Bonds<br><br>▪ Series B-2 Bonds:  convertible capital appreciation bonds, bearing interest at a rate of six and seventy-five one-hundredths percent (6.75%) per annum, accreting annually until July 1, 2028, at which point the Series B-2 Bonds shall convert to paying interest semi-annually |
| **CALL PROTECTION** | ▪ Series A Bonds:  Callable after ten (10) years at par<br><br>▪ Series B Bonds:  Callable after ten (10) years at par plus accreted value, if any |
| **SECURITY** | ▪ The New Bonds shall be secured by, and paid solely from, Reorganized PREPA's Net Revenues,[5] and the right to receive such |

---

[4] Subject to modification based on agreed upon covenants and Legacy Charge, to be negotiated among the FOMB and the Fuel Line Lenders (defined below).

[5] "Net Revenues" means Revenues (defined below) minus Operating Expenses.

"Revenues" means all moneys received by Reorganized PREPA, including the income derived by Reorganized

| | |
|---|---|
| | Net Revenues, up to the amount of the Legacy Charge revenues, in accordance with the Payment Waterfall. |
| **ACCOUNTS AND PAYMENT WATERFALL** | ▪ All Revenues shall be deposited in the general fund held by Reorganized PREPA.<br><br>▪ Reorganized PREPA shall apply or transfer, as applicable, Revenues in the amounts and in the order of priority set forth in the New Master Indenture (the "<u>Payment Waterfall</u>"); provided that the Payment Waterfall set forth in the New Master Indenture shall provide that Revenues will be (i) first, applied by Reorganized PREPA to the payment of Operating Expenses, (ii) second, transferred by Reorganized PREPA to the New Master Trustee for the payment of the New Master Trustee's fees and expenses not to exceed one hundred thousand dollars ($100,000) per year, and (iii) third, transferred to the New Master Trustee for deposit to the credit of the Debt Service Fund in an amount sufficient to pay debt service on all outstanding New Bonds, up to the amount of the Legacy Charge revenues and, from and after the New Bond are defeased and until the CVI maturity date, up to the amount of the Remaining Legacy Charge revenues. |
| **DEBT SERVICE FUND** | ▪ From and after the Plan Effective Date, until the New Bonds, refunding Bonds, and/or CVI have been paid or satisfied in full in accordance with their terms, Reorganized PREPA shall deposit, in accordance with the Payment Waterfall, Net Revenues up to the amount of the Legacy Charge revenues with respect to the New Bonds and up to the amount of the Remaining Legacy Charge revenues with respect to the CVI to the credit of the Debt Service Fund.[6]<br><br>▪ Such monies deposited in the Debt Service Fund shall be applied, to the extent available, as follows:<br><br>   - <u>New Bonds</u><br><br>      o *First*, to the payment of stated interest due and payable on the New Bonds;<br><br>      o *Second*, to the payment of principal on the Series A Bonds and any refunding Bonds issued to refund the Series A Bonds until repaid indefeasibly in full in cash or otherwise deemed not to be outstanding in accordance with the terms of the New Master Indenture; and |

---

PREPA from the sale of electricity generated or distributed, including, but not limited to, the Legacy Charge, any proceeds of use and occupancy insurance or any part thereof, and income from investments made by Reorganized PREPA; *provided*, *however*, that all funds from any federal or Commonwealth government grants, governmental appropriations, or government loans shall be deemed to not be Revenues for purposes of this definition and the New Master Indenture (as defined in the Plan).

[6] "<u>Debt Service Fund</u>" means the fund held by the New Master Trustee into which Reorganized PREPA shall deposit Net Revenues in accordance with the Payment Waterfall.

|  | |
|---|---|
| | o *Third*, to the payment of principal on the Series B Bonds and any refunding Bonds (other than the refunding bonds described in *Second* above) until repaid indefeasibly in full in cash or otherwise deemed not to be outstanding in accordance with the terms of the New Master Indenture.<br>- <u>CVI</u><br> o *Then*, to the payment of the CVI. |
| **NO RATE COVENANT** | ▪ After the Series A Bonds have been paid in full, the Series B Bonds shall not have the benefit of any interest rate covenant or ability to initiate a rate case before PREB or any other proceeding to compel PREB to implement an increase in the Legacy Charge sufficient to repay interest due and payable on the New Bonds in the succeeding fiscal year, including, if, in any given year, the Legacy Charge revenues deposited in the Debt Service Fund for the New Bonds are insufficient to satisfy the interest due and owing on the New Bonds that fiscal year. |
| **PAYMENT DEFAULT** | ▪ There shall be no event of default on the New Bonds for failure to pay scheduled debt service prior to the final maturity, as applicable, so long as Reorganized PREPA charges and employs its reasonable best efforts to collect revenues generated by the Legacy Charge, and the full amount collected under the Legacy Charge is deposited into the Debt Service Fund for the New Bonds in accordance with the Payment Waterfall. |
| **REMEDIES** | ▪ Upon the occurrence of an event of default, the New Bond trustee's sole remedies shall be to seek enforcement of Reorganized PREPA's obligation to take reasonable measures to collect revenues generated by the Legacy Charge and deposit such monies received into the Debt Service Fund for the new Bonds in accordance with the Payment Waterfall.<br><br>▪ The Plan and indenture for the New Bonds shall provide the "Right to Receivership Upon Default," codified at 22 L.P.R.A. § 207, are preempted as inconsistent with PROMESA.  There shall be no right of acceleration under the New Bonds other than an acceleration in connection with an insolvency proceeding (including under Title III of PROMESA). |
| **FEDERALLY-DECLARED DISASTERS** | ▪ In the event of a federally-declared disaster as a result of a storm or other catastrophic event that disrupts Reorganized PREPA's operations such that Reorganized PREPA cannot collect Legacy Charge revenue necessary to cover Operating Expenses and the debt service payable on the New Bonds for a given fiscal year, Reorganized PREPA may elect, in its sole discretion, to defer debt service on up to two (2) consecutive semi-annual debt service payments. |

| | |
|---|---|
| | ▪ For the avoidance of doubt, if Reorganized PREPA exercises such election, interest on the New Bonds will continue to accrete until paid. All deferred principal and interest related to such New Bonds impacted by such election shall be paid on or before the earlier of the respective New Bonds' final maturity or five (5) years after the end of such debt service deferral period. |
| **DEFINITIVE DOCUMENTATION** | ▪ The New Bonds shall be documented under an indenture or trust agreement on the terms set forth in this Term Sheet and otherwise on terms customary for transactions of this type. |
| **RELEASE** | ▪ The Parties shall release each other to the maximum extent permitted by law.  At the request of the FOMB, the Settling Bondholder shall release any other party in interest that may be liable on account of the Uninsured Bonds. |

## <u>Appendix B to Settlement Agreement</u>

**Form of Joinder**

## FORM OF JOINDER AGREEMENT

## (TO BE EXECUTED BY THE TRANSFEREE PRIOR TO ANY TRANSFER IN CONNECTION WITH THE UNINSURED BONDS ALTERNATIVE IDENTIFYING CUSIPS FOLLOWING THE AGREEMENT EFFECTIVE DATE)[1]

This Joinder Agreement (this "Joinder Agreement") to the Settlement Agreement (as amended, supplemented, or otherwise modified from time to time, the "Agreement"), dated as of the Agreement Effective Date by and among: (i) the Financial Oversight and Management Board for Puerto Rico ("FOMB"), as Title III representative of the Puerto Rico Electric Power Authority ("PREPA"), and (ii) the Settling Bondholder, is executed and delivered by [_____] (the "Joining Settling Bondholder") as of _____, 202_.  Each capitalized term used herein but not defined herein shall have the meaning set forth in the Agreement.

1.      Agreement to be Bound.  The Joining Settling Bondholder hereby agrees to be bound by all of the terms of the Agreement, including that the Joining Settling Bondholder shall assume all rights and obligations of a Settling Bondholder under the Agreement.  The Joining Settling Bondholder shall hereafter be deemed to be a "Settling Bondholder" and a Party for all purposes under the Agreement, including for the avoidance of doubt with respect to any Uninsured Bonds held by the Joining Settling Bondholder and subject to a separate plan support agreement with the FOMB as of the date of this Joinder Agreement.

2.      Representations and Warranties.  With respect to the aggregate principal amount of Uninsured Bonds held by the Settling Bondholder, including upon consummation of Transfer of Uninsured Bonds to the Joining Settling Bondholder, the Joining Settling Bondholder hereby makes, as of the date hereof, the representations and warranties of the Settling Bondholder set forth in Section 7.01 and Section 7.02 of the Agreement to each of the other Parties to the Agreement.

3.      Nominees/custodians.  If this Joinder Agreement is executed by a nominee/custodian on behalf of a Settling Bondholder, the nominee/custodian hereby certifies that (i) this Joinder Agreement is executed and delivered by the entity detailed below on behalf of its client, the beneficial owner of the Uninsured Bonds listed below, (ii) this signature page delivered to Kroll Restructuring Administration LLC (acting as Information and Tabulation Agent) by the entity detailed below contains a true and accurate schedule of the Uninsured Bonds that are the property of beneficial owners who have delivered their instruction to join the Agreement to the undersigned nominee/custodian, (iii) the undersigned nominee/custodian is the holder, through a position held at a securities depository, or in street name, of the Uninsured Bonds set forth in such signature page, and (iv) the undersigned has the authority to act on behalf of such beneficial owners of Uninsured Bonds.

---

[1] For the avoidance of doubt, if carrying out a Transfer, a holder of Uninsured Bonds must ensure the transferee is already a Settling Bondholder or must provide an executed joinder to the Information and Tabulation Agent in accordance with the instructions provided in this Appendix B.

4.      <u>Governing Law</u>.   Section 11.03 of the Agreement is incorporated by reference as if set forth fully herein, except that any references to "Agreement" shall be replaced with references to Joinder Agreement.

\* \* \* \* \*

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Joining Settling Bondholder has caused this Joinder Agreement to be executed as of the date set forth above.

**[NAME OF JOINING SETTLING BONDHOLDER (TRANSFEREE)]**

By: _____

Name: _____

Title: _____

Address:

Attention:

Email:

Please list the principal amount of Uninsured Bonds (Alternative Identifying CUSIPs) beneficially owned by the Joining Settling Bondholder, or beneficially owned by accounts for which the Joining Settling Bondholder has investment management responsibility, which it asserts it would be entitled to vote on in a plan solicitation: $_____ (total)

| Alternative Identifying CUSIPs | Principal Amount Participating in the Joinder | DTC Nominee Name of Transferee | DTC Nominee Number of Transferee | Email Address for DTC Nominee Contact |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**DELIVERY**

**Please deliver a copy of the Joinder Agreement along with this signature page to the Information and Tabulation Agent via their E-Portal system.  In order to facilitate this delivery, please coordinate with the Settling Bondholder and contact the Information and Tabulation Agent by e-mail at puertoricoballots@ra.kroll.com to request revisions to the electronic submission of the Settlement Agreement associate with such Settling Bondholder indicating where to upload its Joinder Agreement to complete the transfer..**

Please note:  Delivery of this Joinder Agreement in a way other than as set out above will not constitute valid consent to the Agreement.  Delivery of this Joinder Agreement to PREPA or any other person other than the Information and Tabulation Agent, whether or not such person is party to the Agreement, does not constitute delivery to the Information and Tabulation Agent.

## **EXHIBIT C**

**[Settlement Agreement Consent Form to be submitted via Kroll's E-Portal]**

| Beneficial Holder Name | CUSIP | Principal Amount Participating in the Joinder | DTC ATOP Confirmation Number (one DTC ATOP Confirmation Number -VOI - per CUSIP) | DTC Nominee Name | DTC Nominee Number | Email Address for DTC Nominee Contact |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

In addition to completing the above form via Kroll's E-Portal System, beneficial owners or their nominee (if permitted to sign on behalf of the beneficial owner) must provide a signature page to the Agreement, in the form of **Exhibit D**.  The signature page must be attached to the holder's submission through Kroll's E-Portal System.  If a signature page to the Agreement is not provided by the beneficial owner or its nominee (if authorized to do so), consent to the Agreement will not be deemed effective.

## EXHIBIT D

**[Form of Signature Page to Settlement Agreement]**

## EXECUTION BY AUTHORIZED SIGNATORY

This signature page is delivered under the terms of the notice provided to holders of uninsured Bonds issued by PREPA (the "Notice"), dated January 27, 2023, regarding an opportunity for to become a Settling Bondholder party to a certain Settlement Agreement (the "Settlement Agreement") distributed to such holder pursuant to the Notice.

Capitalized terms used but not defined herein shall have the respective meanings given to them in the Settlement Agreement or Notice, as applicable.

By signing below, the beneficial owner or its nominee/custodian (as authorized signatory for the beneficial owner) hereby certifies that (i) the Settlement Agreement is executed and delivered by the person or entity detailed below, as the beneficial owner (or authorized signatory) of the Bonds listed in **Exhibit C** to the Notice, (ii) this signature page delivered to Kroll Restructuring Administration LLC (the "Information and Tabulation Agent") by the person or entity detailed below contains a true and accurate schedule of the Bonds that are the property of beneficial owners who have delivered their instruction to join the Settlement Agreement to their nominee/custodian or directly to the Information and Tabulation Agent, (iii) the undersigned is the beneficial owner or the nominee/custodian, through a position held at a securities depository, or in street name, of the Bonds set forth in such signature page, and (iv) the undersigned is or has the authority to act on behalf of such beneficial owners of Bonds.

Date Submitted: _____

Beneficial Owner Name:_____

Signature of Beneficial Owner (or Authorized
Signatory):

_____

Print Name of
Signatory:

_____

Beneficial Owner contact information:

Tel. No:_____
E-Mail:_____

Address Line 1:_____
Address Line 2:_____

## DELIVERY

**Please deliver this signature page to the Information and Tabulation Agent as instructed in the Notice.  No other methods will be accepted.**

Please note:  Delivery of this signature page in a way other than as set out above will not constitute valid consent to the Settlement Agreement.  Delivery of this signature page to PREPA or any other person other than the Information and Tabulation Agent, whether or not such person is party to the Settlement Agreement, does not constitute delivery to the Information and Tabulation Agent.