# **EXHIBIT A**

March 2023

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY

### c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166

To the Holders of Class 7 General Unsecured Claims:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Title III case of the Puerto Rico Electric Power Authority ("PREPA") is writing to you in connection with PREPA's solicitation of your vote with respect to the enclosed proposed *Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated February 26, 2023 (the "Plan").[1] You should carefully read all the materials that accompany this letter (as it may be supplemented, the "Committee Letter"), including the instructions for completing and mailing your Ballot. All Ballots must be **received** by the Claims and Noticing Agent by **[_____], 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")** to be counted.

**AT THIS TIME, THE COMMITTEE DOES NOT SUPPORT THE OVERSIGHT BOARD'S PROPOSED PLAN, INCLUDING THE PROPOSED PLAN DISTRIBUTION TO HOLDERS OF GENERAL UNSECURED CLAIMS IN CLASS 7—A DISTRIBUTION THAT, ACCORDING TO THE DISCLOSURE STATEMENT, MAY RANGE FROM 0.1% AND 100%, DEPENDING ON THE OUTCOME OF NUMEROUS CONTINGENCIES, INCLUDING THE OUTCOME OF THE AMENDED LIEN & RECOURSE CHALLENGE.**

**ACCORDINGLY, AT THIS TIME, THE COMMITTEE URGES ALL HOLDERS OF CLASS 7 GENERAL UNSECURED CLAIMS TO VOTE TO REJECT THE PLAN.**

However, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors. **If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.** For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline. Please visit the Committee's website at **www.creditorspr.org** for any further updates.

A.  **Introduction**

The Committee's members were appointed by the United States Trustee, a unit of the United States Department of Justice, to represent, in a fiduciary capacity, the interests of all general unsecured creditors of PREPA (and other debtors under Title III of PROMESA). These unsecured creditors include, for example, employees, vendors, suppliers, service providers, and parties with litigation claims. The Committee's seven members serve without pay and

---

[1] All capitalized terms used but not defined in this letter have the meanings set forth in the Plan.

represent a broad cross-section of the general unsecured class. Committee members include, among others, suppliers of goods and services, contract counterparties, and litigation claimants.

The Committee is a fiduciary to holders, like you, of unsecured claims[2] against PREPA, and it has worked tirelessly during PREPA's Title III case to protect your interests. Among other things, in October 2019, the Committee objected to a settlement between the Oversight Board and certain holders of PREPA's non-recourse bonds that, if approved, would have allowed more than $8 billion in secured claims on account of such non-recourse bonds. The Committee believed then, and continues to believe today, that the collateral securing the non-recourse bonds consists only of limited funds on deposit in certain specified accounts controlled by the bond trustee, and that, as non-recourse obligations, the non-recourse bonds have no additional or deficiency claim against PREPA.

Several years after the Committee's October 2019 objection, the Oversight Board ultimately decided not to move forward with the proposed settlement and, instead, in the fall of 2022, adopted the Committee's position and filed an amended complaint and related summary judgment motion seeking a ruling from the Court that (a) the PREPA bond claims are secured only by very limited funds held in certain specified accounts (approximately $16 million) and (b) the PREPA bondholders are not entitled to an unsecured deficiency claim for the difference between their more than $8 billion in claims and the limited value of their collateral (*i.e.*, approximately $16 million) because their bond claims only have recourse only to the limited collateral in certain specified accounts. This litigation is referred in the Plan and the Disclosure Statement as the "<u>Amended Lien & Recourse Challenge</u>." On February 1, 2023, the Court heard oral argument on the Oversight Board's and PREPA bondholders' motions for summary judgment, but it has not yet issued a ruling on these matters.

### B.  <u>Treatment of Allowed Class 7 General Unsecured Claims</u>

The Plan provides that holders of allowed General Unsecured Claims in Class 7 will receive their *pro rata* share of the General Unsecured Claim Recovery, which is comprised of (a) Avoidance Action Proceeds, (b) the GUC New Bonds (in the form of Series B Bonds), if any, and (c) the GUC CVI.

According to the Disclosure Statement, the Avoidance Actions Proceeds and the GUC CVI have only *de minimis* value, and would provide holders of allowed General Unsecured Claims with an estimated recovery percentage of only 0.1%. Thus, the only component of the General Unsecured Claim Recovery that could provide material recoveries to general unsecured creditors are the GUC New Bonds (in the form of Series B Bonds). **However, the amount of Series B Bonds to be made available to holders of allowed General Unsecured Claims under the Plan is <u>unknown</u> at this time and depends, among other things, on the resolution of the Amended Lien & Recourse Challenge. For that reason, the Disclosure Statement estimates that the recovery to holders of allowed General Unsecured Claims ranges from 0.1% to 100%, depending on the resolution of the Amended Lien & Recourse Challenge and other contingencies.**

---

[2] Unsecured claims are claims that are not secured by any collateral.

1. <u>New Bonds Waterfall</u>

The aggregate amount of New Bonds to be distributed to holders of allowed General Unsecured Claims (Class 7) under the Plan is a function of a complex waterfall (the "<u>New Bonds Waterfall</u>") pursuant to which an aggregate amount of **$5.68 billion** of New Bonds (in the form of Series A Bonds and Series B Bonds) would be issued by Reorganized PREPA and then allocated to various creditor groups, taking into account the outcome of a series of contingencies, including, most notably, the outcome of the Amended Lien & Recourse Challenge.

Importantly, under the New Bonds Waterfall, holders of allowed General Unsecured Claims will **only receive Series B Bonds to the extent any such bonds remain available after mandatory distributions have been made to the Fuel Line Lenders, Bondholders, Monolines, and National**. The amount of New Bonds that would be so distributed to these creditor groups is not fixed, but, instead, depends on certain contingencies, including the outcome of the Amended Lien & Recourse Challenge. In fact, depending on the outcome of these contingencies, **it is possible that no Series B Bonds would be available to holders of allowed General Unsecured Claims**.

2. <u>Estimated Recovery Percentages for Holders of Allowed General Unsecured Claims</u>

The following table provides the estimated recovery percentages for holders of allowed General Unsecured Claims based on the outcome of two contingencies: (i) the resolution of the Amended Lien & Recourse Challenge and (ii) the aggregate amount of allowed General Unsecured Claims.

In particular, as it relates to the Amended Lien & Recourse Challenge, the recovery table below illustrates three potential outcomes:

a. the Bondholders' security interest is limited to the funds in certain specified accounts *and* the Bondholders have no recourse to PREPA's assets beyond the funds in such specified accounts;

b. the Bondholders' security interest is limited to the funds in certain specified accounts *but* the Bondholders have recourse to PREPA's present and future revenues (*i.e.*, they have Unsecured Deficiency Claims); and

c. the Bondholders are secured by, and have recourse to, all of PREPA's present and future revenues.

Moreover, as it relates to the aggregate size of allowed General Unsecured Claims, the recovery table below shows three illustrative examples, namely, $800 million in allowed claims, $1.2 billion in allowed claims, and $1.6 billion in allowed claims.

***As the below table illustrates, the recovery percentages for holders of allowed General Unsecured Claims cannot be determined with any specificity at this time.***

3

|  |  | Outcome in Amended Lien & Recourse Challenge | | |
|---|---|---|---|---|
|  |  | **Security Interest Limited to Funds in Specified Accounts and No Recourse Beyond Such Funds** | **Security Interest Limited to Funds in Specified Accounts, but Recourse to PREPA's Present and Future Revenues** | **Security Interest, and Recourse to, All Present and Future Revenues** |
| **Aggregate Amount of Allowed General Unsecured Claims** | $800 million | 100.00% | 46.5% | 0.10%+ |
| | $1.2 billion | 100.00% | 44.3% | 0.07%+ |
| | $1.6 billion | 100.00% | 42.4% | 0.05%+ |

C.   **What's the Problem with the Plan?**

The Committee believes that the Plan is not confirmable, for a variety of reasons.[3] First and foremost, under the Plan, various groups of unsecured creditors stand to receive **substantially greater** recoveries than holders of General Unsecured Claims in Class 7. Moreover, and unlike the distribution to holders of General Unsecured Claims, the distributions to these other unsecured creditors do **not** depend on the outcome of the Amended Lien & Recourse Challenge. In other words, while other creditors receive substantial, guaranteed recoveries, general unsecured creditors face a highly uncertain and contingent recovery under the Plan (as illustrated in the above recovery table).

For example, the Committee believes that:

- The Plan provides that unsecured Fuel Line Lenders receive a guaranteed distribution (which does not depend on the outcome of the Amended Lien & Recourse Challenge) in the form of Series A Bonds equal to approximately **92.7%** of their total allowed claims. Moreover, the Series A Bonds to be received by the Fuel Line Lenders are of significantly higher quality than the Series B Bonds to be distributed to general unsecured creditors, including as it relates to maturity (15 years vs. 50 years), expected repayment date (5 years vs. 35 years), and payment priority (payment of principal on the Series A Bonds must be paid before payment of principal on the Series B Bonds).

---

[3] For the avoidance of doubt, the Oversight Board does not agree with the Committee's views regarding the Plan, including the recovery percentages provided below for the Fuel Line Lenders and National.

4

- The Plan provides National (one of the monolines that insured PREPA's non-recourse bonds) with an aggregate distribution in the form of Series B Bonds of more than **83%** of their bond claims. As with the distribution to the unsecured Fuel Line Lenders, National's distribution does not depend on the outcome of the Amended Lien & Recourse Challenge, even though the Committee believes that National should have no claims at all (beyond a claim secured by very limited funds in the Sinking Fund).

**Please note that the Committee is also considering holding in-person creditor information sessions in Puerto Rico to explain, among other things, the New Bonds Waterfall and the Committee's opposition to the Plan. Please visit the Committee's website at www.creditorspr.org for details regarding the time and location of these sessions.**

D.     <u>Committee's Recommendation</u>

Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan. **That said, for the reasons stated above the Committee recommends that you vote to <u>reject</u> the Plan.**

**As noted, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors. <u>If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.</u> For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline. Please visit the Committee's website at www.creditorspr.org for any further updates.**

E.     <u>Submitting Your Ballot</u>

The Oversight Board has provided Ballots herewith for holders of claims in Class 7 to utilize in order to vote to accept or reject the Plan, which Ballots must be returned in accordance with the procedures set forth in the ballot instruction sheet and the Disclosure Statement. **Please read the directions on the Ballot carefully and complete your Ballot in its entirety before returning it. Your Ballot must be returned so as to be actually received by the Balloting Agent no later than the Voting Deadline, *i.e.*, 5:00 p.m. (Atlantic Standard Time) on _____, 2023**.

\* \* \*

The positions taken by the Committee in this Letter are those of the Committee and/or its advisors and have not been approved by or endorsed by the Bankruptcy Court. Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan.

5

**YOU ARE URGED TO CAREFULLY READ THE DISCLOSURE STATEMENT AND THE PLAN. THE DESCRIPTION OF THE PLAN IN THIS COMMITTEE LETTER IS INTENDED TO BE A SUMMARY ONLY.**

**THIS COMMITTEE LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE. THE COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN PREPA's TITLE III CASE. THE COMMITTEE CANNOT PROVIDE ANY ASSURANCES REGARDING THE AGGREGATE AMOUNT OF GENERAL UNSECURED CLAIMS THAT WILL ULTIMATELY BE ALLOWED, OR THE RATE OF RECOVERY THAT WILL ULTIMATELY BE REALIZED BY ANY HOLDER OF SUCH A CLAIM.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE.**

*THE OFFICIAL COMMITTEE OF*
*UNSECURED CREDITORS OF*
*THE PUERTO RICO ELECTRIC POWER AUTHORITY*