## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                   Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF FILING OF REVISED PROPOSED ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PLEASE TAKE NOTICE that, on December 16, 2022, the Financial Oversight and
Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the
Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to section 315(b) of
the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] filed the
*Motion of Puerto Rico Electric Power Authority for Order (I) Approving Disclosure Statement,
(II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation
Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving
Forms of Ballots and Voting Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing
Voting and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Case No.
17-4780, ECF No. 3113][3] (the "Disclosure Statement Motion"),[4] concurrently with the related
disclosure statement [ECF No. 3111].

PLEASE TAKE FURTHER NOTICE that, on February 10, 2023, the Debtor filed its
*Omnibus Reply of the Puerto Rico Electric Power Authority to Objections to the (I) Adequacy of
the Disclosure Statement, (II) Relief Requested in the Disclosure Statement Motion, and (III) Relief
Requested in the Confirmation Discovery Procedures Motion* [ECF No. 3206] (the "Omnibus
Reply").

PLEASE TAKE FURTHER NOTICE that attached to the Omnibus Reply as Exhibit B
is a revised form of proposed *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record
Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving*

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]   Unless otherwise stated, all ECF Nos. shall refer to the docket in Case No. 17-4780.

[4]   Attached to the Disclosure Statement Motion as Exhibit A is a form of proposed *Order (I) Approving Disclosure
Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation
Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots,
and Voting Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Confirmation
Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 3113, Exhibit A] (the "Proposed Order").

*Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting and Election Procedures, (VI) Approving Notice of Non-voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures*.

**PLEASE TAKE FURTHER NOTICE** that, on February 21, 2023, the Debtor filed the *Notice of Filing of Revised Proposed Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting and Election Procedures, (VI) Approving Notice of Non-voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. 3257] (the "Notice of Filing").

**PLEASE TAKE FURTHER NOTICE** that attached to the Notice of Filing as Exhibit A is a revised form of proposed *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting and Election Procedures, (VI) Approving Notice of Non-voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* (the "Second Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that, on February 28, 2028, the Court held a hearing to consider, among other things, the relief requested in the Disclosure Statement Motion.

**PLEASE TAKE FURTHER NOTICE** that, at the hearing, the Court directed the Oversight Board to submit a revised form of proposed *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving*

*Forms of Ballots and Voting and Election Procedures, (VI) Approving Notice of Non-voting Status,*

*(VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation*

*Procedures* reflecting revisions discussed at the hearing.

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a further

revised proposed *Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III)*

*Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation*

*Packages and Distribution Procedures, (V) Approving Forms of Ballots and Voting and Election*

*Procedures, (VI) Approving Notice of Non-voting Status, (VII) Fixing Voting, Election, and*

*Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* (the "Third Revised

Proposed Order"). A redline showing the changes between the Third Revised Proposed Order and

the Second Revised Proposed Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that all documents filed in these Title III cases

are available (a) free of charge by visiting https://cases.ra.kroll.com/puertorico/ or by calling

+1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the

procedures and fees set forth therein.

[*Remainder of page intentionally left blank*]

Dated: March 1, 2023
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Paul V. Possinger*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com
      ddesatnik@proskauer.com

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for
PREPA*

5

# **EXHIBIT A**

Third Revised Proposed Order

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                  Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon the motion (the "Motion"),[2] dated December 16, 2022, of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Debtor under PROMESA Section 315(b), pursuant to Sections 105, 502, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), and 1128 of title 11 of the United States Code (made applicable to the Title III Cases pursuant to PROMESA Section 301(a)) (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure (made applicable to the Title III Cases pursuant to PROMESA Section 310) (the "Bankruptcy Rules") 2002, 3016, 3017, 3018, 3020, 9013, 9014, and 9021, and Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules") 3016-2 and 9013-1 requesting an order: (i) approving the proposed Disclosure Statement (as defined below), (ii) fixing a Voting Record Date for voting on the Plan (as defined below), (iii) approving the Confirmation Hearing Notice and confirmation schedule, (iv) approving the proposed contents of the Solicitation Package and procedures for distribution thereof, (v) approving the forms of ballots, and establishing solicitation, voting, and balloting procedures, (vi) approving the form and manner of Notice of Non-Voting Status, (vii) fixing a Voting Deadline, (viii) approving procedures for tabulating creditor votes, and (ix) related relief, all as more fully described in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to PROMESA Section 306(a); and it appearing that venue in this district is proper pursuant to PROMESA Section 307(a); and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be provided; and the Court having held a hearing on February 28, 2023, to consider the

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion or the Plan (as defined below), as applicable.

adequacy of the information contained in the Disclosure Statement and the additional relief requested in the Motion (the "Disclosure Statement Hearing"); and the Court having determined the relief sought in the Motion is in the best interests of the Debtor, its creditors, and all parties in interest; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby found and determined that:[3]

A.  The Debtor, by and through the Oversight Board, as the Debtor's representative in its Title III Case pursuant to PROMESA Section 315(b), has full authority to propose and prosecute the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement") [Case No. 17-4780, ECF No. _____][4] and the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan") [ECF No. _____].

B.  The Disclosure Statement (including the exhibits attached thereto) contains adequate information within the meaning of Section 1125 of the Bankruptcy Code, and no other or further information is necessary for purposes of soliciting acceptances and rejections of the Plan as set forth herein.

C.  The Disclosure Statement (including the exhibits attached thereto) provides holders of Claims and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Articles XXVII and XXXVI of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c).

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

[4]  Docket references contained herein shall refer to the docket for Case No. 17-4780 unless otherwise specified.

D.      The forms of ballots, substantially in the forms attached hereto as **Schedules 3(a)**
**– 3(d)** (each a "Ballot") and the form of election notice, substantially in the form attached hereto
as **Schedule 5** (the "Election Notice"), are consistent with Official Bankruptcy Form No. B 314,
adequately address the particular needs of the Title III Case, and are appropriate for the relevant
Classes of Claims entitled under the Plan to vote to accept or reject the Plan and/or make an
election of the form of distribution pursuant to the Plan, as applicable.

E.      Ballots to vote to accept or reject the Plan (or, with respect to Settling Bondholders,
Non-Settling Bondholders, and holders of Claims in Class 4 (Fuel Line Loan Claims), instructions
to submit a vote on ATOP) need only be provided to:

(a) Settling Bondholders on account of PREPA Revenue Bond Claims in Class 1
(Settling Bondholder Claims);

(b) Non-Settling Bondholders on account of PREPA Revenue Bond Claims in
Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are
***not*** insured by a Monoline Insurer;

(c) Non-Settling Monolines on account of PREPA Revenue Bond Claims in Class
2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are
insured by a Monoline Insurer;

(d) National Public Finance Guarantee Corporation ("National") on account of
National Insured Bond Claims in Class 5 (National Insured Bond Claims); and

(e) holders of Claims in Class 3 (Pension Claims), Class 4 (Fuel Line Loan Claims),
Class 6 (National Reimbursement Claim), Class 7 (General Unsecured Claims),
Class 8 (Vitol Claims), Class 9 (Assured Insured Interest Rate Swaps Claims),
Class 11 (Eminent Domain/Inverse Condemnation Claims), and Class 12
(Federal Claims).

Beneficial Owners of Claims in Class 5 (National Insured Bond Claims) shall be entitled to receive
an Election Notice and make an election with respect to the form of distribution pursuant to the
Plan to the extent such elections are provided pursuant to the Plan.  Beneficial Owners of Claims
in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are insured by a
Non-Settling Monoline, shall be entitled to receive a Notice of Non-Voting Status informing such

4

Beneficial Owners that a Non-Settling Monoline shall be entitled to vote to approve or reject the Plan on account of such Claims.

F.       The solicitation procedures established pursuant to this Order provide Settling Bondholders in Class 1 the right to vote to reject the Plan, notwithstanding such Settling Bondholders' entry into the Uninsured Bond Settlement Agreement prior to the commencement of the solicitation of votes to accept or reject the Plan, and, therefore, the solicitation of the Uninsured Bond Settlement Agreement is not a solicitation of votes on the Plan.  *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19812 in Case No. 12-3283] at ¶¶ 141, 143.

G.       Ballots need not be provided to the holders of Claims in Class 10 (Ordinary Course Customer Claims) and Class 13 (Convenience Claims), because the holders of these Claims are unimpaired pursuant to the Plan and are deemed to accept the Plan.

H.       Ballots need not be provided to the holders of Claims in Class 14 (Section 510(b) Subordinated Claims), because such holders will receive no distributions pursuant to the Plan and are deemed to reject the Plan.

I.       The period set forth below, during which the Debtor may solicit acceptances and rejections to the Plan and elections with respect to the form of distribution thereunder, is a reasonable period of time for eligible holders of Claims to vote on the Plan or make elections regarding the form of distributions pursuant to the Plan.

J.       The procedures set forth below regarding notice to all parties in interest of (a) the time, date, and place of the hearing to consider confirmation of the Plan (the "Confirmation

Hearing"), (b) the deadline for filing of objections or responses to (i) the proposed confirmation of, or proposed modifications to, the Plan, or (ii) the Proposed Confirmation Order ("Confirmation Objections"), and (c) the distribution and contents of the solicitation packages (the "Solicitation Packages") provide a fair and equitable notice and voting process and comply with Bankruptcy Rules 2002, 3017, and 3018 and constitute sufficient notice to all interested parties of the Voting Record Date, the Voting Deadline, the Election Deadline, the Confirmation Objection Deadline, the Confirmation Hearing, and all related matters.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted as modified herein, and all other objections to the Motion and the Disclosure Statement are overruled.

2.      The Disclosure Statement is approved in its entirety, and the Debtor may accordingly solicit acceptances and rejections of the Plan as set forth herein.

3.      The forms of Ballots and Election Notice are approved.

4.      The Creditors' Committee's recommendation letter, substantially in the form attached hereto as **Schedule 7(a)** (the "Creditors' Committee Letter"),[5] and the Plan Summary substantially in the form attached hereto as **Schedule 7(b)** (the "Plan Summary")[6] is approved pursuant to section 1125 of the Bankruptcy Code.

*Confirmation Procedures and Deadlines*

5.      The Confirmation Hearing will be held on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**; provided, however, that the Confirmation Hearing may be

---

[5]   The Creditors' Committee shall provide the Oversight Board with finalized English and Spanish versions of the Creditors' Committee Letter no later than two (2) business days after entry of this Order.

[6]   The Plan Summary is the same summary contained in Section II.B of the Disclosure Statement. The Plan Summary is subject in its entirety to all disclaimers and provisions of the Disclosure Statement.

continued from time to time without further notice other than through adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.

6.      The Confirmation Hearing Notice setting forth the time, date, and place of the Confirmation Hearing, substantially in the form attached hereto as **__Schedule 2__**, is approved.

7.      The Debtor shall cause the Balloting Agent to complete the mailing of the Confirmation Hearing Notice in accordance with the Bankruptcy Rules and Local Rules on or before **five (5) business days after entry of this Order, or as soon as reasonably practicable thereafter**.

8.      The Debtor, through Kroll, shall publish the Confirmation Hearing Notice, on one occasion, in each of *El Nuevo Dia* in Spanish (primary circulation is in Puerto Rico), *The San Juan Daily Star* in English (primary circulation is in Puerto Rico), *El Diario* in Spanish (primary circulation is in New York), *El Nuevo Herald* in Spanish (primary circulation is Miami), *The New York Times*, *The Bond Buyer*, *El Vocero* in Spanish (primary circulation is in Puerto Rico), and *Primera Hora* in Spanish (primary circulation is in Puerto Rico) to the extent possible, during the week beginning on (1) April 17, 2023, (2) May 8, 2023, and (3) May 29, 2023, which notice is hereby approved and constitutes adequate and sufficient notice and complies with Bankruptcy Rule 2002. To the extent any of the above publications are unable to publish or suspends publication during the time periods above, the Debtor is permitted to use reasonable best efforts to secure a similar alternative publisher without further order of the Court.

9.      The Debtor, through Kroll, shall cause no less than ten (10) radio advertisements, to be aired to the extent possible during the periods from (i) April 17, 2023 up to and including April 21, 2023, (ii) May 8, 2023 up to and including May 12, 2023, and (iii) May 29, 2023 up to

7

and including June 2, 2023 (for a total of thirty (30) radio advertisements), on (a) WMEG FM (contemporary hit radio) in Spanish and (b) WKAQ AM (Spanish language talk radio) in Spanish, informing listeners of (i) the approval of the Disclosure Statement and the scheduling to the Confirmation Hearing, (ii) the date by which Confirmation Objections must be filed and served, (iii) the Voting Deadline and Election Deadline, and (iv) an information hotline to receive certain additional information.  To the extent any of the above radio stations are unable to broadcast or suspends broadcasting during the time period above, the Debtor is permitted to use reasonable best efforts to secure a similar alternative radio station, if feasible given the time required to produce a radio advertisement, without further order of the Court.

10.    The Debtor shall file a form of the New Master Indenture no later than **May 17, 2023**.

11.    The Debtor shall file the Proposed Confirmation Order no later than **5:00 p.m. (Atlantic Standard Time) on May 31, 2023**.

12.    Any Confirmation Objections must:

    a.    be in writing, in English, and signed,

    b.    state the name, address, and nature of the Claim of the objecting or responding party,

    c.    state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the proposed Plan or proposed order confirming the Plan to resolve any such objection or response,

    d.    be served so as to be actually received by the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: the Puerto Rico Electric Power Authority); and

    e.    be filed, together with proof of service, with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS and served so that such objections and responses are actually received by no later than **5:00**

**p.m. (Atlantic Standard Time) on June 7, 2023** (the "Confirmation Objection Deadline").

13.     Confirmation Objections that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

14.     Any objecting party that has not filed a timely Confirmation Objection will not be permitted to make an oral presentation at the Confirmation Hearing.

15.     The Debtor and other parties in interest are authorized to file and serve no later than **5:00 p.m. (Atlantic Standard Time) on June 21, 2023**: (i) replies or an omnibus reply to any objections to the confirmation of the Plan; (ii) the Debtor's memorandum of law in support of confirmation of the Plan; (iv) voting results tabulation; (v) the Debtor's proposed findings of fact and conclusions of law, and (vi) statements or joinders in support of confirmation of the Plan.

16.     Any objection to the Debtor's (i) voting results tabulation and/or (ii) proposed findings of fact and conclusions of law must:

     a.    be in writing, in English, and signed,

     b.    state the name, address, and nature of the Claim of the objecting or responding party,

     c.    state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in proposed findings of fact and conclusions of law to resolve any such objection or response,

     d.    be served so as to be actually received by the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: the Puerto Rico Electric Power Authority);

     e.    be filed, together with proof of service, with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on June 28, 2023**.

17.     The Debtor and other parties in interest are authorized to file and serve no later than

**5:00 p.m. (Atlantic Standard Time) on July 5, 2023** replies or an omnibus reply to any objections

to the Debtor's (i) voting results tabulation and (ii) proposed findings of fact and conclusions of

law.

*Solicitation Procedures and Deadlines; Vote Tabulation*

18.     The record date for purposes of determining creditors entitled to vote on the Plan

(except Classes 1, 2, 4, and 5 (collectively, the "ATOP Classes")[7]) or, in the case of the non-voting

Classes, to receive the applicable Notice of Non-Voting Status, shall be **February 28, 2023** (the

"Voting Record Date").

19.     With respect to any transferred Claim (except for any Uninsured PREPA Revenue

Bond Claims in Class 1 (Settling Bondholder Claims) and Class 2 (Non-Settling Bondholder and

Non-Settling Monoline Claims)), the transferee shall be entitled to receive a Solicitation Package

and vote to accept or reject the Plan on account of the transferred Claim only if:  (a) all actions

necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been

completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record

Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (ii)

a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is

transferred after the transferor has completed, executed, and returned a Ballot, the transferee of

---

[7]    For the avoidance of doubt, because holders of Claims in the ATOP Classes must submit their vote and/or election
through the Automated Tender Offer Platform ("ATOP") at The Depository Trust Company ("DTC"), the Voting
Record Date shall not apply to the ATOP Classes; provided, however, the Voting Record Date shall apply to (i)
any PREPA Revenue Bonds formerly insured by Assured in the primary market, and the principal amount of which
was paid by Assured on or after the original maturity date of such bonds (the "Assured Matured Bonds") or (ii)
any claim arising from PREPA Revenue Bonds for which voting through ATOP cannot be established ("ATOP
Ineligible Bonds"). The holder as of the Voting Record Date of the (i) claims arising from the Assured Matured
Bonds (including, without limitation, Assured) and (ii) claims arising from ATOP Ineligible Bonds shall not be
required to tender such bonds through ATOP, and instead shall be provided with a ballot with which to vote such
claims.

such Claim shall be bound by any vote (and the consequences thereof) made on the Ballot by such transferor of such transferred Claim.

20.     Cede & Company and DTC shall provide the Debtor within seven (7) Business Days of the date of this Order, or as soon as possible thereafter, a listing of the names and addresses of all Nominees that as of the Voting Record Date held, directly or indirectly, any of the securities with respect to Classes 1, 2, 4, and 5.

21.     The Debtor shall cause the Balloting Agent to complete the mailing of the appropriate Solicitation Package by **the date that is twenty-eight (28) days following entry of this Order, or as soon as reasonably practicable thereafter** (the "Solicitation Mailing Date") to all known holders (as of the Voting Record Date) of Claims in the following classes (collectively, the "Voting Classes"):

|  | Class |
|---|---|
| Settling Bondholder Claims | Class 1 |
| Non-Settling Bondholder and Non-Settling Monoline Claims[8] | Class 2 |
| Pension Claim[9] | Class 3 |
| Fuel Line Loan Claims | Class 4 |
| National Insured Bond Claims[10] | Class 5 |
| National Reimbursement Claim | Class 6 |
| General Unsecured Claims | Class 7 |
| Vitol Claims | Class 8 |
| Assured Insured Interest Rate Swaps Claims | Class 9 |
| Eminent Domain/Inverse Condemnation Claims | Class 11 |
| Federal Claims | Class 12 |

---

[8]   Solicitation Packages shall be provided to Beneficial Owners of PREPA Revenue Bonds that are not insured and Non-Settling Monolines in Class 2.

[9]   A Solicitation Package shall only be provided to the Puerto Rico Electric Power Authority Employee Retirement System (the "SREAEE" by its Spanish acronym) on account of the Pension Claim in Class 3.

[10]   A Solicitation Package shall only be provided to National on account of National Insured Bond Claims in Class 5.

22.     The Debtor shall not be required to mail or cause to be mailed Solicitation Packages to any holders of Claims that are, as of the Voting Record Date, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-3283, ECF No. 12274] ("Administrative Reconciliation Order"), as such holders shall not be entitled to vote such Claims to accept or reject the Plan, unless such holder's claim has been allowed pursuant to an order of the Court on or before the Voting Deadline;[11] provided, however, the Debtor shall complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to such holders of Claims.

23.     Solicitation Packages mailed to creditors holding Claims in the Voting Classes will contain, in English and Spanish translation: (i) the Confirmation Hearing Notice; (ii) a flash drive (or otherwise in the Debtor's discretion)[12] containing this Disclosure Statement Order (without the exhibits hereto) and Disclosure Statement (together with all exhibits thereto, including the Plan); (iii) the appropriate form of Ballot or Election Notice, if any, with instructions for voting and/or making any applicable election, and, as applicable, a pre-addressed, pre-paid return envelope, and (iv) with respect to Class 7, the Creditors' Committee Letter and Plan Summary.

24.     If it is a Nominee's (or Nominee's agent's) customary and accepted practice to (i) forward the solicitation information to (and collect votes from) Beneficial Owners by voter

---

[11]   For the avoidance of doubt, holders of Claims transferred into the alternative dispute procedures pursuant to the Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief [ECF No. 12576 in Case No. 17-03283] will not be precluded from voting such Claims to accept or reject the Plan, except as otherwise provided in this Order.

[12]   For the avoidance of doubt, the Debtor reserves the right (in its sole discretion) to distribute the Disclosure Statement (together with all exhibits thereto) and the Disclosure Statement Order in paper format to a subset of voting creditors if it is determined to be the most effective method of serving such a population of prospective voters.

information form, email, telephone or other customary means of communications, as applicable, or (ii) provide to Beneficial Owners an electronic link to the solicitation materials (including, but not limited to, the Disclosure Statement and Plan), the Nominee (or Nominee's agent) may employ that method of communication in lieu of sending the flash drive, paper Notice, and/or Solicitation Package, as applicable.  In such instances, the Nominee (or Nominee's agent) may return any excess or unused flash drives or paper copies to the Balloting Agent.

25.     The Debtor is authorized, but not required, to distribute the Disclosure Statement (together with all exhibits thereto) and the Disclosure Statement Order to the Voting Classes in electronic format (flash drive); provided, however, the Confirmation Hearing Notice, Ballots, Election Notice, Creditors' Committee Letter, and Plan Summary (each, as applicable) shall only be provided in paper format.

26.     Upon receipt of a request for a paper copy of the Disclosure Statement, Plan, and/or Disclosure Statement Order, the Balloting Agent shall, within three (3) business days of receipt of the request or as soon as reasonably practicable thereafter, deposit the requested documents with a postal or shipping service to deliver the requested documents.

27.     On or before the Solicitation Mailing Date, the Debtor shall provide (i) complete Solicitation Packages (excluding Ballots) to:

    a.  the U.S. Trustee,

    b.  counsel to AAFAF,

    c.  counsel to the Official Committee of Unsecured Creditors; Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Luc A. Despins, Esq. and G. Alexander Bongartz, Esq.

    d.  the Puerto Rico Energy Bureau;

and (ii) the Disclosure Statement Order (excluding the exhibits thereto) and the Confirmation Hearing Notice to the Debtor's Bankruptcy Rule 2002 list as of the Voting Record Date.

28.     The Debtor shall complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to all known holders (as of the Voting Record Date) or Beneficial Owners, as applicable, of Claims in the following Classes:

- Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) – solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Non-Settling Monoline.

- Class 10 (Ordinary Course Customer Claims)

- Class 13 (Convenience Claims)

- Class 14 (Section 510(b) Subordinated Claims)

29.     The Debtor shall complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to all known holders of Claims for which the Debtor has served an objection as of the Solicitation Mailing Date.

30.     The Debtor shall not be required to send Solicitation Packages to (i) any holder of an unimpaired Claim under the Plan or that is otherwise deemed to accept the Plan, (ii) any holder of a Claim in a Class deemed to reject the Plan, (iii) any party who holds a Claim, whether in the form of a filed proof of claim, or an amount listed on the list of creditors filed by the Debtor pursuant to Sections 924 and 925 of the Bankruptcy Code (as amended or modified, the "List of Creditors") in an amount of $0.00, (iv) any holder of a Claim to which the Debtor has served an objection or that has been expunged by order of the Court, and (v) a creditor that has a Claim that has already been paid in full.

31.     With respect to addresses from which notices of the Disclosure Statement hearing were returned as undeliverable by the United States Postal Service, the Debtor is excused from mailing Solicitation Packages or any other materials related to voting on or confirmation of the

14

Plan to entities listed at such addresses.  For purposes of serving the Solicitation Packages, the

Debtor is authorized to rely on the address information for all Classes as compiled, updated, and

maintained by the Balloting Agent as of the Voting Record Date.  In addition, to the extent any

Solicitation Packages are returned as undeliverable by the United States Postal Service (including

Solicitation Packages from voting creditors), neither the Debtor nor the Balloting Agent are

required to conduct additional research for updated addresses or to attempt to re-serve the

Solicitation Packages on such parties.

32.     The forms of Notice of Non-Voting Status (**Schedule 4(a) – 4(e)**) are hereby

approved.

33.     The Notices of Non-Voting Status are hereby deemed to satisfy the requirements

of the Bankruptcy Code and the Bankruptcy Rules, and the Debtor shall not be required to

distribute copies of the Plan, Disclosure Statement, and/or Disclosure Statement Order to any

holder of a Claim in the following Classes, except as to parties who request, in writing, copies of

such documents:

- Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) – solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Non-Settling Monoline.

- Class 10 (Ordinary Course Customer Claims)

- Class 13 (Convenience Claims)

- Class 14 (Section 510(b) Subordinated Claims)

34.     Each Ballot must be executed, completed, and delivered to the Balloting Agent

(i) by U.S. first-class mail, in the return envelope provided with each Ballot (or otherwise by first-

class mail); (ii) by overnight courier; (iii) by hand delivery, or (iv) Kroll's e-balloting platform

(where permitted), so that executed and completed Ballots are received by Kroll, the Balloting

Agent, by no later than **5:00 p.m. (Atlantic Standard Time) on June 7, 2023**, unless such time is extended (the "Voting Deadline"). Holders of Claims in the ATOP Classes, other than (i) Monoline Insurers (or a Monoline Insurer's transferee if the Monoline Insurer's right to vote has been transferred in accordance with decretal paragraph 19), (ii) holders of claims arising from the Assured Matured Bonds, and (iii) holders of claims arising from ATOP Ineligible Bonds, must deliver their voting instructions to the Nominee according to the instructions in the applicable Notice in sufficient time for the Nominee to receive and effectuate the creditor's vote through ATOP in accordance with the procedures of DTC by the Voting Deadline; provided, however, that any creditor who has executed, completed, and delivered through ATOP in accordance with the procedures of DTC its vote to accept or reject the Plan may revoke such vote and withdraw any securities that have been tendered with respect to a vote through ATOP in accordance with the procedures of DTC on or before the Voting Deadline.[13]

35.    An election of the form of distribution pursuant to the Plan must be executed, completed, and delivered to the Nominee in accordance with the instructions under the Election Notice so as to be effectuated through ATOP in accordance with the procedures of DTC by no later than **5:00 p.m. (Atlantic Standard Time) on June 7, 2023**, unless such time is extended (the "Election Deadline"); provided, however, that any election of the form of distribution pursuant to the Plan executed, completed, and delivered through ATOP in accordance with the procedures of DTC on or before the Election Deadline shall be deemed to be made as of the Election Deadline; provided, further, that any creditor who has executed, completed, and delivered through ATOP in accordance with the procedures of DTC its election of the form of distribution pursuant to the Plan

---

[13]    The Debtor has established that it is necessary to conduct this solicitation of votes and election of distributions, as applicable, with respect to the ATOP Classes through the DTC ATOP platform due to the magnitude and complexity of effectuating distributions among holders of Claims in the ATOP Classes.

may revoke such election and withdraw any securities that have been tendered with respect to an election through ATOP in accordance with the procedures of DTC on or before the Election Deadline.

36.     The Solicitation Agent shall use reasonable efforts to keep each of the following on-island ballot collection site listed below open for the full period between April 10, 2023 and June 7, 2023:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u> Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Oceana HUB Center</u> 2 Calle Acerina Caguas, PR 00725 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>LunaSpeiz</u> 157 Calle de Luna, San Juan, PR 00901 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Centro</u> Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Club de Leones de Ponce</u> Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |

The Solicitation Agent may close any such on-island ballot collection sites (at its sole discretion), or as required by law, including, without limitation, local ordinances.  To the extent any of the above locations are unavailable or are closed, the Debtor is permitted to use reasonable best efforts

to secure an alternative location without further order of the Court.  The Debtor shall make copies of the Disclosure Statement and Plan available at each on-island ballot collection site.

37.     All securities that are tendered with respect to a vote to accept or reject the Plan shall be restricted from further trading or transfer until the first business day following the Voting Deadline, or as soon as practicable thereafter, but no later than June 21, 2023.

38.     All securities that are tendered with respect to an election of distributions under the Plan in connection with Class 5 (National Insured Bond Claims) shall be restricted from further trading or transfer until the issuance of new CUSIPs in connection with such tendered bonds, which issuance shall occur as soon as reasonably practicable after the Voting Deadline.

39.     The Beneficial Owners of Settling Bondholder Claims in Class 1 (Settling Bondholder Claims) are entitled to cast a vote with respect to such Class.  The Beneficial Owners of uninsured securities giving rise of Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) and the Non-Settling Monolines holding Non-Settling Monoline Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) are entitled to cast a vote with respect to such Class. Only National will be entitled to cast a vote with respect to Class 5. With respect to any Claims in Classes 2 or 5 arising from Insured PREPA Revenue Bonds owned by a Monoline Insurer, by subrogation or otherwise, if the respective Monoline Insurer transfers the right to vote such Claim prior to the Voting Record Date in accordance with decretal paragraph 19 above, then the transferee shall be entitled to receive a Solicitation Package and a form of Ballot in the transferee's name.

40.     PREPA Revenue Bond Claims in Class 1 (Settling Bondholder Claims) shall be deemed allowed in the aggregate amount of $74,900,593.18 solely for purposes of voting to accept or reject the Plan.  PREPA Revenue Bond Claims in Class 2 (Non-Settling Bondholder and Non-

18

Settling Monoline Claims) shall be deemed allowed in the aggregate amount of $7,565,470,824.09[14] solely for purposes of voting to accept or reject the Plan. For the avoidance of doubt, holders of PREPA Revenue Bond Claims in Class 1 (Settling Bondholder Claims) and Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) are not required to file a motion for an order pursuant to Bankruptcy Rule 3018(a) (a "3018(a) Motion") in order to vote to accept or reject the Plan. The allowance of PREPA Revenue Bond Claims in Classes 1 and 2 solely for purposes of voting to accept or reject the Plan pursuant to this decretal paragraph 40 shall not prejudice any parties in connection with the Amended Lien & Recourse Challenge.

41.    Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtor in any other context, each Claim within a Class of Claims entitled to vote is temporarily allowed in an amount equal to the amount of such Claim as set forth in the claims register; provided:

      a.  If a Claim is deemed allowed under the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

      b.  If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated, or disputed, undetermined, or unknown in amount, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00; unless such Claim is disputed as set forth in subparagraph "h" below;

      c.  If a proof of claim was timely filed in an amount that is liquidated, non-contingent, and undisputed, such Claim is temporarily allowed in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph "h" below;

      d.  If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is

---

[14]    Such amount reflects $8,476,517,345.39 less (i) the aggregate PREPA Revenue Bond Claims held by Settling Bondholders ($74,900,593.18), and (ii) National Insured Bond Claim ($836,145,928.13).

liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

e.   If a Claim has been allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

f.   If a Claim is listed in the List of Creditors as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date, such Claim shall not be entitled to vote to accept or reject the Plan;

g.   Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are not entitled to vote;

h.   If the Debtor has served an objection or ACR transfer notice as to a Claim at least forty (40) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;[15]

i.   If the Debtor has served an objection specifically seeking to reduce the amount of the Claim but otherwise allow it for voting purposes, such Claim is allowed for voting purposes only in the amount sought in the objection;

j.   Any holders of Claims that are, as of the Voting Deadline, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the Administrative Reconciliation Order shall not be entitled to vote such Claims to accept or reject the Plan;

k.   For purposes of the numerosity requirement of Section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated based on the reasonable efforts of the Debtor and Balloting Agent as if such creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

l.   Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single

---

[15]   For the avoidance of doubt, Paragraph 41(h) of this Order shall not apply to any Claim that is Allowed pursuant to the Plan.

Claim in such Class, regardless of whether the Debtor has objected to such duplicate Claims;

m. If a proof of claim has been amended by a later filed proof of claim filed on or before the Voting Record Date, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtor has objected to such earlier filed Claim;

n. Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may (but is not required to) contact voters to cure any defects in the Ballots and is authorized to so cure any defects;

o. There shall be a rebuttable presumption that any claimant who submits a properly completed, superseding Ballot, or withdraws a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan, such that the earlier submitted Ballot shall be deemed superseded or withdrawn, as applicable; and

p. Any Class that contains claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan.

42.    The following additional procedures shall apply with respect to tabulating votes in

the ATOP Classes:

a. For the purposes of tabulating votes, (i) each Beneficial Owner entitled to vote securities held through DTC shall be deemed to have voted only the principal amount of its public securities as submitted through and reflected in ATOP; (ii) each Monoline Insurer, shall be deemed to have voted only the principal amount of the PREPA Revenue Bonds insured by such Monoline Insurer as submitted through and reflected on the form of Ballot; (iii) each holder (including, if applicable, Assured) of claims arising from any PREPA Revenue Bonds formerly insured by Assured in the primary market the principal amount of which was paid by Assured on or after the original maturity date shall be deemed to have voted only the principal amount of such claims as reflected on the form of Ballot; and (iv) each holder of claims arising from ATOP Ineligible Bonds shall be deemed to have voted only the principal amount of such claims as reflected on the form of Ballot.  Any principal amounts thus voted in accordance with clauses (i), (ii), (iii), or (iv) above may be thereafter adjusted by the Balloting Agent, on a proportionate basis with a view to the amount of securities actually voted, to reflect the corresponding claim amount with respect to the securities thus voted, including any accrued but unpaid prepetition interest or accreted principal, as applicable.

b. If conflicting votes or "over-votes" are submitted by a Nominee, the Balloting Agent shall use reasonable efforts to reconcile discrepancies with the Nominee.

43.     If any claimant seeks to challenge the allowance or disallowance of its Claim for voting purposes in accordance with the above procedures, such claimant shall serve upon counsel for the Debtor, counsel for AAFAF, and counsel for the Official Committee of Unsecured Creditors, and file with the Court (with a copy to Chambers) a 3018(a) Motion temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan, on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection, if any, as to such Claim; provided, however, that, as to any claimant filing a 3018(a) Motion, such claimant's Ballot shall not be counted unless temporarily allowed by an order entered by the Court prior to the Voting Deadline.

44.     The form of Rule 3018(a) Motion attached hereto as **Schedule 6** is approved, and the Debtor shall make available the form of Rule 3018(a) Motion on the Balloting Agent's website.

45.     Each creditor that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

46.     If a creditor casts more than one Ballot voting the same Claim(s) or submits more than one election with respect to the same Claim(s) before the Voting Deadline or Election Deadline, as applicable, the last Ballot received or election made before the Voting Deadline or Election Deadline, as applicable, is hereby deemed to reflect such creditor's intent or election, as applicable, and, thus, to supersede any prior Ballot(s) or elections made, as applicable.

47.     If a creditor in Class 5 (A) fails to timely and validly elect the National Non-Commutation Treatment, or (B) submits an election for less than all of its National Insured Bond Claims (in which case, such election shall be void and of no force and effect), then such creditor shall be deemed to have elected to receive the National Commutation Treatment pursuant to Article XX.A of the Plan.

22

48.     Any entity that holds a Claim in more than one Class that is entitled to vote must use separate Ballots for each such Claim; provided, however, that creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote(s), and thus, neither a Ballot that partially rejects and partially accepts the Plan, nor multiple Ballots casting conflicting votes in respect of the same Class under the Plan shall be counted.

49.     The following types of Ballots shall not be counted in determining whether the Plan has been accepted or rejected: (i) any Ballot or vote through ATOP received after the Voting Deadline, unless the Debtor has granted an extension with respect thereto; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (iii) any Ballot cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Plan; (iv) any unsigned Ballot; (v) any Ballot transmitted to the Balloting Agent by facsimile, electronic mail, or other means not specifically approved herein; (vi) any Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but does not indicate either an acceptance or rejection of the Plan; (vii) any Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but indicates both an acceptance and rejection of the Plan shall be counted as an acceptance of the Plan; and (viii) any Ballot without an original signature; provided, however, that any Ballot cast via the Balloting Agent's E-Ballot platform or the ATOP system shall be deemed to contain an original signature.[16]

---

[16] The Balloting Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, the Balloting Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

50.     Except as otherwise set forth herein, and subject to the entry of an order of the Court, the Debtor may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented (a) by an attorney's certification stating the terms, if any, associated with any such waiver, and (b) in the voting results tabulation prepared by the Ballot Agent.

51.     The voting results tabulation prepared by the Ballot Agent shall include an explanation or the calculations regarding any changes to voting amounts in the ATOP Classes.

*Miscellaneous*

52.     In accordance with the modification provisions of the Plan and Local Rule 3016-2, the Debtor is authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Election Notice, the Notices of Non-Voting Status, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages as may be necessary, prior to mailing.

53.     All notices to be provided pursuant to the procedures set forth herein are deemed good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing and no other or further notice need be provided.

54.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

55.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order, including, without limitation, disputes with respect to the validity of an election of the form of distributions to be made pursuant to the Plan.

56.     This Order resolves Docket Entry No. [___] in Case No. 17-3283, and Docket Entry

No. [___] in Case No. 17-4780.


Dated: _____, 2023
          San Juan, Puerto Rico
                                          _____

                                          Laura Taylor Swain
                                          United States District Court Judge

25

**Schedule 1**

**Disclosure Statement**[1]

---

[1]   In the interest of economy, a hard copy of the Disclosure Statement will not be included as a schedule to the
Disclosure Statement Order.  A copy of the Disclosure Statement was filed on March 1, 2023, and is available on
the Court's docket, as well as on the website of the Debtor's Balloting Agent, Kroll Restructuring Administration
LLC (f/k/a Prime Clerk LLC) ("Kroll"), at https://cases.ra.kroll.com/puertorico/.  A flash drive containing the
Disclosure Statement and all exhibits thereto will be included in the Solicitation Packages.  Hard copies of the
Disclosure Statement are available on request by contacting Kroll by telephone at (844) 822-9231 (toll free for
U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic
Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com.  Please do not direct any inquiries
to the Court.

**<u>Schedule 2</u>**

**Confirmation Hearing Notice**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>            Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>            Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**NOTICE OF (I) APPROVAL OF DISCLOSURE
STATEMENT, (II) ESTABLISHMENT OF RECORD DATES,
(III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT
AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF
ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN
OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

> **If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**
>
> **DEADLINE TO FILE DISCOVERY NOTICE:  5:00 p.m. (Atlantic Standard Time) on April 7, 2023**
>
> **VOTING AND ELECTION DEADLINE:  5:00 p.m. (Atlantic Standard Time) on June 7, 2023**
>
> **OBJECTION DEADLINE:  5:00 p.m. (Atlantic Standard Time) on June 7, 2023**
>
> **CONFIRMATION HEARING:  July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**
>
> **See below for additional deadlines.**
>
> If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.     ***Approval of Disclosure Statement.***  By order, dated [●], 2023 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

> **You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish translations thereof, free of charge, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):**
>
> **Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**

---

[2]     On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3]     All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

> **(844) 822-9231 (toll free for U.S. and Puerto Rico)**
> **(646) 486-7944 (for international callers)**
>
> **Email: puertoricoinfo@ra.kroll.com** (with 'PREPA Solicitation' in the subject line)
>
> Alternatively, electronic copies of the Disclosure Statement and Plan are available, free of charge, by visiting https://cases.ra.kroll.com/puertorico/.

2.　　Paper copies of the Plan and Disclosure Statement, including Spanish translations thereof, are also available, free of charge, at the following locations from April 10, 2023 to June 7, 2023 (except weekends and federal holidays):

| Locations in the Commonwealth<br>Providing Paper Copies of the Plan and Disclosure Statement | |
|---|---|
| **Address** | **Hours (AST)** |
| Don Frappe Inc.<br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| LunaSpeiz<br>157 Calle de Luna,<br>San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Centro<br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

3.　　Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan (the "Solicitation Package") to holders with Claims in the following Classes (collectively, the "Voting Classes"):

|  | Class |
|---|---|
| Settling Bondholder Claims | Class 1 |
| Non-Settling Bondholder and Non-Settling Monoline Claims | Class 2 |
| Pension Claim | Class 3 |
| Fuel Line Loan Claims | Class 4 |
| National Insured Bond Claims | Class 5 |
| National Reimbursement Claim | Class 6 |
| General Unsecured Claims | Class 7 |
| Vitol Claims | Class 8 |
| Assured Insured Interest Rate Swaps Claims | Class 9 |
| Eminent Domain/Inverse Condemnation Claims | Class 11 |
| Federal Claims | Class 12 |

4.      ***Confirmation Hearing.***   A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

5.      The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

6.      ***Plan Confirmation Depository***.  Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

7.      ***Confirmation Objection Deadline.***  The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation

4

of the proposed Plan and the proposed confirmation order[4] (the "<u>Confirmation Objection</u>

<u>Deadline</u>").  Parties who do not file an objection to the Plan or the proposed confirmation order

prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation

before the Court at the Confirmation Hearing.

       8.     ***Objections and Responses to Confirmation.***   Objections and responses to

confirmation of the Plan must:

    a.  Be in writing, in English, and signed;

    b.  State the name, address, and nature of the Claim of the objecting or responding party;

    c.  State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

    d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

        i.  If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

               United States District Court, Clerk's Office
               150 Ave. Carlos Chardon Ste. 150,
               San Juan, P.R. 00918-1767

           so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

    e.  Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Electric Power Authority) so as to be received **on or before the**

---

[4]  The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

**Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

9.      ***Participation in Confirmation Discovery***.  If you wish to participate in discovery in connection with confirmation of the Plan, you must file a notice of your intention to participate in discovery (a "Discovery Notice"), a form of which is available at https://cases.ra.kroll.com/puertorico/.  If you file your Discovery Notice on or before **April 7, 2023**, you may be granted access to documents in the Plan Depository, where information and documents concerning the Plan are kept, and will also be able to serve your own discovery requests.  If you file your Discovery Notice **after April 7, 2023, but on or before May 26, 2023**, you may be granted access to documents in the Plan Depository.  Please note that access to the information in the Plan Depository may also require complying with the Debtor's access requirements.

10.      You must submit the Discovery Notice in the form provided on the Title III Case website above, which must:

    a.   Be in writing, in English, and be signed;

    b.   State your name, address, the nature of your Claim, and your Claim number;

    c.   State your intention to participate in discovery in connection with confirmation of the Plan; and

    d.   Be filed electronically with the Court on the docket using the CM/ECF docket event Notice of Intent to Participate in Discovery for Plan Confirmation, in (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system on or before the applicable deadline.

        i.   If you are not represented by counsel, you may instead mail your Discovery Notice to the Court's Clerk's office at:

        United States District Court, Clerk's Office
        150 Ave. Carlos Chardon Ste. 150
        San Juan, P.R. 00918-1767

so as to be received on or before the applicable deadline.

11.      **You must timely file a Discovery Notice to participate in discovery in**

**connection with confirmation of the Plan**.  Failure to timely file a Discovery Notice, however,

will <u>not</u> preclude you from filing an objection to confirmation of the Plan on or before the

Confirmation Objection Deadline, but will preclude you from being able to view documents in the

Plan Depository, and from taking discovery.

12.      *Discovery Timetable and Deadlines*.  The Court has established the following

discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest

who have timely filed a Discovery Notice and are eligible to participate in discovery:[5]

| Summary of Discovery and Confirmation Deadlines | |
|---|---|
| **March 1, 2023** | Conversion of Disclosure Statement depository to Plan Depository |
| **Five Business Days After Entry of DS Approval Order** | Deadline for Confirmation Hearing Notice to be served. |
| **March 11, 2023** | Deadline for the Debtor to upload all documents to the Plan Depository |
| | Deadline for the Debtor to file a preliminary fact witness list and topics about which each witness will testify ("<u>Debtor's Preliminary Fact Witness List</u>"). |
| **28 Days After Entry of DS Approval Order** | Deadline for Debtor to complete mailing of solicitation materials. |
| **April 7, 2023** | Deadline for parties in interest to file a "Notice of Intent to Participate in Discovery," (hereafter, a "<u>Discovery Notice</u>").  Only parties in interest who file a timely Discovery Notice can propound discovery, but failure to do so does not preclude a party from objecting to confirmation of the Plan. |

---

5      All of the dates and procedures set forth in this notice are subject to change by further Court order.

| | |
|---|---|
| **April 14, 2023** | Deadline for all parties to serve requests for production of non-depository documents ("<u>Production Requests</u>").  Parties in interest may serve Production Requests only following their filing of a timely Discovery Notice.<br><br>Parties may serve up to one additional round of Production Requests, provided that they are served on or before May 8, 2023.<br><br>Responses and objections to any Production Requests shall be served within seven (7) days of service of such Production Requests. |
| | Deadline for parties in interest to file a preliminary fact witness list and topics about which each witness is expected to testify (a "<u>Party in Interest's Preliminary Fact Witness List</u>," and together with the Debtor's Preliminary Fact Witness List, the "<u>Preliminary Fact Witness Lists</u>"). |
| | Deadline for all parties to file opening expert disclosures ("<u>Opening Expert Disclosures</u>"). |
| **April 21, 2023** | Deadline for all parties to serve up to fifteen (15) interrogatories ("<u>Interrogatories</u>"), including subparts.  Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| **April 28, 2023** | Deadline for all parties to file opening expert reports ("<u>Opening Expert Reports</u>"). |
| | Deadline for all parties to serve initial notices of deposition, topics and requested times for depositions ("<u>Initial Notices of Deposition</u>") (all depositions are limited to a seven (7)-hour time limit.  Subsequent notices are allowed provided discovery is completed by the Fact Discovery Deadline or Expert Discovery Deadline, as applicable. |
| **May 8, 2023** | Deadline for all parties to file rebuttal expert disclosures ("<u>Rebuttal Expert Witness Disclosures</u>"). |
| | Deadline for parties who have served a Production Request on or before April 14, 2023 to serve up to one additional round of Production Requests.<br><br>Responses and objections to any Production Requests shall be served within seven (7) days of service of such Production Requests. |
| **May 15, 2023** | Deadline for all parties to file rebuttal expert reports ("<u>Rebuttal Expert Reports</u>"). |
| **May 17, 2023** | Deadline for the Debtor to file a form of the New Master Indenture. |

| May 26, 2023 | Deadline for all parties to serve requests for admission, limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of service of such Admission Requests. |
| | Deadline for completion of fact discovery (the "Fact Discovery Deadline"). |
| | Deadline for parties in interest who solely want access to documents in the Plan Depository to file a Discovery Notice. |
| May 31, 2023 | Deadline for the Debtor to file initial proposed confirmation order (the "Proposed Confirmation Order"). |
| June 2, 2023 | Deadline for completion of expert discovery (the "Expert Discovery Deadline"). |
| | Deadline for all parties to file Daubert motions and motions *in limine*. |
| June 7, 2023 | Voting Deadline & Election Deadline |
| | Deadline for parties in interest to file:<br><br>• Objections to confirmation of the Plan ("Plan Objections").<br><br>• Objections to Proposed Confirmation Order. |
| June 9, 2023 | Deadline for all parties to file oppositions to Daubert motions and motions *in limine*. |
| June 16, 2023 | Deadline for all parties to file replies in support of Daubert motions and motions *in limine*. |
| | Deadline for all parties to file finalized witness lists, exhibit lists, and deposition designations. |
| June 21, 2023 | Deadline for Debtor to file:<br><br>• Memorandum of law in support of confirmation of the Plan.<br><br>• Omnibus reply to Plan Objections and objections to the Proposed Confirmation Order.<br><br>• Witness Declarations.<br><br>• Vote Tabulation.<br><br>• Initial proposed findings of fact and conclusions of law ("Proposed Findings of Fact and Conclusions of Law"). |

|  | Deadline for parties in interest to file statements or joinders in support of confirmation of the Plan. |
|  | Deadline for non-Debtor parties to file witness declarations. |
| **June 23, 2023** | Deadline for all parties to file counter-designations, objections to deposition designations, or objections to exhibit lists. |
| **June 28, 2023** | Deadline for parties in interest to file objections to the (i) Vote Tabulation and/or (ii) Proposed Findings of Fact and Conclusions of Law. |
| **June 30, 2023** | Deadline for all parties to file objections to counter designations. |
| **July 5, 2023** | Deadline for Debtor to reply to objections to the (i) the Vote Tabulation and (ii) Proposed Findings of Fact and Conclusions of Law. |
| **Week of July 10, 2023** <br><br> **(or a date convenient for the court)** | [Virtual] hearing on motions *in limine* / pre-trial conference. |
| **July 17–21, 24–28, 2023** | Confirmation Hearing |

13.     ***Voting Record Date.***  The voting record date is **February 28, 2023** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Classes 1, 2, 4, and 5 (collectively, the "ATOP Classes")[6]) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the ATOP Classes) as of the Voting Record Date are entitled to vote on the Plan.

---

[6]   For the avoidance of doubt, because holders of Claims in the ATOP Classes must submit their vote and/or election through the Automated Tender Offer Platform at The Depository Trust Company, the Voting Record Date shall not apply to the ATOP Classes; provided, however, the Voting Record Date shall apply to (i) any PREPA Revenue Bonds formerly insured by Assured in the primary market, and the principal amount of which was paid by Assured on or after the original maturity date of such bonds (the "Assured Matured Bonds") or (ii) any claim arising from PREPA Revenue Bonds for which voting through ATOP cannot be established ("ATOP Ineligible Bonds"). The holder as of the Voting Record Date of the (i) claims arising from the Assured Matured Bonds (including, without limitation, Assured) and (ii) claims arising from ATOP Ineligible Bonds shall not be required to tender such bonds through ATOP, and instead shall be provided with a ballot with which to vote such claims.

14.     ***Voting Deadline.***  The deadline for voting on the Plan is **June 7, 2023, at 5:00 p.m.**
**(Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline").  ***You are not***
***required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if***
***confirmed by the Court, and provided you hold an Allowed Claim.  However, if you are a Settling***
***Bondholder or National receiving the treatment provided to holders of Claims in Class 1, Class***
***5, or Class 9, you should review your Uninsured Bond Settlement Agreement or National PSA,***
***as applicable, prior to voting or abstaining from voting on the Plan, and how it may affect your***
***right to receive distributions.***

15.     If you received a Solicitation Package, including a Ballot or Notice and intend to
vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required
information on the Ballot (as applicable); and (c) either (i) execute and return your completed
Ballot according to and as set forth in detail in the voting instructions included in the Solicitation
Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll
Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[7] on or before the Voting
Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your
bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company
("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting
Deadline.  ***Failure to follow such instructions may disqualify your vote.***

16.     ***Election Deadline.***  The deadline for holders of Claims in Class 5 that have the
right to make an election of the form of distributions pursuant to the Plan to make such election is
on **June 7, 2023, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the
"Election Deadline").  If you received an Election Notice with an option to make an election, you

---

[7]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

must: (a) follow the instructions carefully; and (b) deliver all of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to actually effectuate your election through DTC's ATOP on or before the Election Deadline.

17.   ***Parties in Interest Not Entitled to Vote.***   Creditors in Class 14 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

18.   Creditors in Class 10 (Ordinary Course Customer Claims) and Class 13 (Convenience Claims) are deemed to accept the Plan and not entitled to vote.

19.   If a Claim is listed on the Debtor's list of creditors [Case No. 17-4780, ECF No. 262] as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

20.   If you have timely filed a proof of claim and disagree with the Debtor's classification of, or objection to, your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 43 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection, if any, as to such Claim.  In accordance with Bankruptcy Rule 3018(a), as to any to

any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the **Voting Deadline (June 7, 2023, at 5:00 p.m. (Atlantic Standard Time), which corresponds to 5:00 p.m. prevailing Eastern Time**). Creditors may contact the Balloting Agent (i) via <u>first class mail</u> or via <u>overnight courier</u>, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line), to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted. Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

21.     If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.ra.kroll.com/puertorico/.

22.     ***Parties Who Will Not Be Treated as Creditors***.  Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

23.     *Additional Information*.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line), or may view such documents by accessing either https://cases.ra.kroll.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/.   Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

24.     *Bankruptcy Rules 2002(c)(3) and 3016(c))*.  **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 27(A) – Discharge and Release of Claims and Causes of Action:**

1.  **Complete Satisfaction, Discharge, and Release**

Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims or Causes of Action against PREPA and Reorganized PREPA that arose, in whole or in part, prior to the Effective Date, relating to the Title III Case, the Debtor or Reorganized Debtor or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action.  Upon the Effective Date, the Debtor and Reorganized Debtor shall be deemed discharged and released from any and all Claims, Causes of Action, and any other Debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all Debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not (a) a Proof of Claim based upon such Debt is filed or deemed filed under Bankruptcy Code section 501, (b) a Claim based upon such Debt is allowed under Bankruptcy Code section 502 (or is otherwise resolved), or (c) the Holder of a Claim based upon such Debt voted to accept the Plan; *provided*, for the avoidance of doubt, this Article XXVII.A.1 does not extend to or include any claims, rights, or defenses (whether ordinary or affirmative) of the Vitol Parties related to the Vitol-SCC AP preserved pursuant to the Vitol

14

Settlement Agreement, and the Vitol Parties are not releasing and instead is expressly preserving, all of its claims, rights, or defenses related to the Vitol-SCC AP as provided in the Vitol Settlement Agreement.

2. **Preclusion from Assertion of Claims Against the Debtor**

All Entities shall be precluded from asserting any and all Claims or other obligations, suits, judgments, damages, Debts, rights, remedies, Causes of Action, or liabilities, of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and Reorganized Debtor and each of their respective Assets, property and rights, relating to the Title III Case, regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, Debts, rights, remedies, Causes of Action, or liabilities. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action, or Debt of or against the Debtor and the Reorganized Debtor pursuant to Bankruptcy Code sections 524 and 944, applicable to the Title III Case pursuant to PROMESA section 301, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized Debtor and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, Debt, or liability. As of the Effective Date, and in consideration for the value provided under the Plan, each Holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive discharge as against the Debtor and Reorganized Debtor, and their respective Assets and property and all such Claims; *provided*, for the avoidance of doubt, this Article XXVII.A.2 does not extend to or include any claims, rights, or defenses (whether ordinary or affirmative) of the Vitol Parties related to the Vitol-SCC AP preserved pursuant to the Vitol Settlement Agreement, and the Vitol Parties are is not releasing and instead is expressly preserving, all of its claims, rights, or defenses related to the Vitol-SCC AP as provided in the Vitol Settlement Agreement.

3. **Injunction Related to Discharge of Claims**

Except as otherwise expressly provided in this Article XXVII of the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold, or may hold Claims or any other Debt or liability that is discharged or released pursuant to Article XXVII hereof or who have held, hold, or may hold Claims or any other Debt or liability that is discharged or released pursuant to Article XXVII hereof are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other Debt or liability that is discharged or released pursuant to the Plan against any of the Released Parties or any of their respective Assets or property, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other Debt or liability that is discharged or released pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other Debt or liability that is discharged or released pursuant to the Plan, and (d) except to the extent provided, permitted, or preserved by Bankruptcy Code sections 553,

555, 556, 559, or 560 or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other Debt or liability that is discharged or released pursuant to the Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

### Section 27(B) – Releases by the Debtor and Reorganized Debtor:

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized Debtor, the Distribution Agent and each of the Debtor's and Reorganized Debtor's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized Debtor, and the Distribution Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event, or other circumstance relating to the Title III Case, the Fuel Line PSA, the National PSA, or the Debtor taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs, or fees.

### Section 27(C) – Releases by Holders of Claims:

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, each Holder of a Claim is deemed to have released and discharged the Debtor and the Reorganized Debtor from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Title III Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Uninsured Bond Settlement Agreement, the Vitol Settlement Agreement, the Restructuring Transactions, the Fuel Line Lender PSA, the National PSA, or any contract, instrument, release, or other Definitive Documents, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Title III Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

16

**Section 27(D) – Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Title III Case, the formulation, preparation, dissemination, negotiation, or filing of the Fuel Line Lender PSA, the National PSA, Disclosure Statement, the Plan, the Uninsured Bond Settlement Agreement, the Vitol Settlement Agreement, or any Restructuring Transaction, contract, instrument, release or other Definitive Document, agreement, or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Title III Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything contained herein to the contrary, the Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable National Insurance Policy, to any beneficial holder of National Insured Bonds, in accordance with its terms solely to the extent of any failure of such holder to receive the treatment provided to Holders of Claims in Class 5 (or any claims that National may have against a beneficial holder of National Insured Bonds with respect to National's applicable obligations under the National Insurance Policies).

**Section 27(E) – Injunction**

As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to this Article XXVII of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions, whether directly or indirectly, derivatively, or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Article XXVII hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or the Confirmation Order.

17

## **Section 36(C) – Supplemental Injunction**

Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any Claim against the Debtor, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

1.  Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

2.  Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

3.  Creating, perfecting, or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

4.  Except as otherwise expressly provided in the Plan or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

5.  Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or the Confirmation Order, *provided*, *however*, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: _____ 2023
      San Juan, Puerto Rico

Respectfully submitted,

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com
       ddesatnik@proskauer.com

/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for
PREPA*

19

## <u>Schedule 3(a)</u>

**Form of Notice of Voting Instructions for
Settling Bondholder Claims in Class 1 (Settling Bondholder Claims), Non-Settling
Bondholder Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline
Claims), and Holders of Claims in Class 4 (Fuel Line Loan Claims)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                    Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF VOTING INSTRUCTIONS FOR [SETTLING BONDHOLDER CLAIMS IN CLASS 1] / [NON-SETTLING BONDHOLDER CLAIMS IN CLASS 2] / [HOLDERS OF CLAIM IN CLASS 4]

     This Notice of Voting (the "Notice") is being sent to the beneficial holders of securities [issued by the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor")][2] giving rise to claims in **Class [1 / 2 / 4]** of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-BK-4780, ECF No.

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   [Applicable only to Classes 1 and 2.]

_____]³ (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan").⁴  The **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** and the relevant CUSIPs are described on **Exhibit A** attached hereto.

[*PREPA Revenue Bond Claim.*  Settling Bondholders that are Holders of PREPA Revenue Bond Claims in Class 1 may vote to accept or reject the Plan.]  [*PREPA Revenue Bond Claim.* Non-Settling Bondholders that are Holders of PREPA Revenue Bond Claims in Class 2 may vote to accept or reject the Plan.]

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of PREPA, is soliciting votes with respect to the Plan, from the holders of certain impaired Claims against PREPA.  By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.  Instructions to cast your vote are below.

Electronic copies of the Plan and Disclosure Statement are enclosed in the package containing this Notice.  **If you have any questions regarding this Notice, please contact the Balloting Agent by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

\*   \*   \*   \*   \*   \*

## VOTING PROCESS

If you are a beneficial holder of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** giving rise to Impaired Claims in **Class [1 / 2 / 4]**, you are entitled to cast a vote either to accept or reject the Plan.  **To have your vote counted, you must properly vote in accordance with these instructions so that your vote is actually received no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023.**

*You are encouraged to review the entire Disclosure Statement before casting your vote to accept or reject the Plan.*

## How to Submit a Valid Vote

If you wish to cast a vote to accept or reject the Plan, you must:

---

³   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

⁴   Unless otherwise defined herein, each capitalized term used herein shall have the meaning given to it in the Plan.

- instruct your bank, broker or other intermediary through which you hold your [bonds] / [trust certificates] in 'street name' (each, a "Nominee") to electronically deliver your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan.

In addition, by delivering your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via ATOP, you are certifying that:

1. either (a) your vote cast is the only vote cast by you on account of a **[PREPA Revenue Bond Claim] / [Fuel Line Loan Claim]**, or (b) in addition to the vote cast, one or more additional votes ("Additional Votes") on account of other **[PREPA Revenue Bond Claims] / [Fuel Line Loan Claims]** have been cast by one or more Nominees, and you have provided (or coordinated with your Nominee to provide) the Numerosity Spreadsheet (as defined below) to the Balloting Agent by the Voting Deadline;

2. you have voted all of your Claims on account of your **[PREPA Revenue Bonds] / [Fuel Line Loans]** to either accept or reject the Plan and acknowledge that no split votes will be permitted, and that if you cast conflicting votes in respect of such Claims on account of your **[PREPA Revenue Bonds] / [Fuel Line Loans]**, all votes cast by you will be disregarded;

3. you are the holder of the Claims in Class **[1 / 2 / 4]** on account of **[PREPA Revenue Bonds] / [Fuel Line Loans]** to which this Notice pertains or are an authorized signatory of such holder, and have full power and authority to vote to accept or reject the Plan; and

4. you have been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order, and acknowledge that the vote cast pursuant to these instructions is subject to all the terms and conditions set forth in the Plan, Disclosure Statement, and Disclosure Statement Order.

No paperwork is required to be delivered to Kroll Restructuring Administration LLC to cast a vote (except in the limited circumstance noted below in the section titled "*Numerosity Information Request – Applicable Only for Beneficial Holders Submitting More Than One Instruction Through ATOP*"). The sole means of casting a vote is to validly tender your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** into the proper ATOP envelope at DTC.

---

**THE VOTING DEADLINE IS
5:00 P.M. (ATLANTIC STANDARD TIME) ON JUNE 7, 2023.**

This date and time is referred to as the "Voting Deadline."

---

***NOTE REGARDING RESTRICTIONS ON TRANSFER IF YOU TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES]*: IF YOU TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] THROUGH ATOP, IT IS ANTICIPATED THAT YOU WILL BE RESTRICTED FROM**

3

**TRANSFERRING YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] UNTIL IMMEDIATELY AFTER THE FIRST BUSINESS DAY FOLLOWING THE VOTING DEADLINE, OR AS SOON AS PRACTICABLE THEREAFTER, BUT NO LATER THAN JUNE 21, 2023.**

**YOU MAY, HOWEVER, TRADE OR TRANSFER YOUR TENDERED [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] BY REVOKING YOUR VOTE AND WITHDRAWING ANY TENDERED [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] AT ANY TIME BEFORE THE VOTING DEADLINE.**

**IF YOU DESIRE TO RETAIN THE ABILITY TO TRADE OR TRANSFER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] PRIOR TO THE VOTING DEADLINE, THEN YOU SHOULD NOT TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] THROUGH ATOP.**

\*     \*     \*     \*     \*

### How to Revoke a Valid Vote

You may revoke your vote to accept or reject the Plan and withdraw your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** tendered through DTC's ATOP at any time before the Voting Deadline.

If you wish to revoke your vote, you must instruct your Nominee to revoke your vote and withdraw your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via ATOP at DTC (which withdrawal will be confirmed by Kroll Restructuring Administration LLC ("Kroll")[5] once notified by DTC of the withdrawal request). No paperwork is required to be delivered to Kroll to effectuate the revocation.

If you revoke your vote any time before the Voting Deadline, you may vote again at any time before the Voting Deadline, in accordance with the instructions to submit a valid vote above.

\*     \*     \*     \*     \*

### Nominee Information Submission

Any Nominees with beneficial holder clients who submit vote(s) to reject the Plan on account of Claims Class 1 (Settling Bondholder Claims), must send an Excel spreadsheet to puertoricoballots@ra.kroll.com (with 'PREPA Nominee Spreadsheet' in the subject line) containing the name(s), address(es), and ATOP instruction confirmation number(s) (also referred to as ATOP voluntary offer instruction(s) or "VOI(s)") associated with each vote to reject the Plan.

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

\*   \*   \*   \*   \*

**Numerosity Information Submission**
**(Applicable Only for Beneficial Holders Submitting More than One Vote Through ATOP)**

Any beneficial holder of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** that holds multiple CUSIPs of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** and submits more than one vote through one or more Nominees, MUST submit (or coordinate with their Nominee(s) to submit) a list of all such ATOP instruction confirmation numbers (also referred to as ATOP voluntary offer instructions or "VOIs").  The Balloting Agent has made available a template electronic spreadsheet (the "Numerosity Spreadsheet") on its website at: https://cases.primeclerk.com/puertorico (click on the link titled "Numerosity Spreadsheet").

Please return (or coordinate with your Nominee to return) the Numerosity Spreadsheet to the Balloting Agent in Excel format via email to https://cases.ra.kroll.com/puertorico/ (with 'PREPA Numerosity Spreadsheet' in the subject line).  If you anticipate any difficulty in submitting your Numerosity Spreadsheet in Excel format, please contact Kroll at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers) or by e-mail at puertoricoballots@ra.kroll.com (with 'PREPA Numerosity Spreadsheet' in the subject line).

\*   \*   \*   \*   \*

If you have any questions about your holdings, please contact your Nominee.  Additionally, you must contact your Nominee to take any action described above.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC, BY TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR BY EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).  PLEASE NOTE THAT KROLL IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

5

**Exhibit A**

| Description | CUSIP |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**<u>Schedule 3(b)</u>**

**Form of Ballot for Non-Settling Monolines on Account of Claims in
Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## BALLOT FOR
## NON-SETTLING MONOLINES ON ACCOUNT OF CLAIMS IN CLASS 2
## (NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] is soliciting votes with respect to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§2101-2241

BK-4780, ECF No. _____][3] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot. **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent"),[4] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by a Non-Settling Monoline. Pursuant to the Disclosure Statement Order, a Non-Settling Monoline is entitled to vote to accept or reject the Plan on account of Impaired Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) arising from securities insured by such Non-Settling Monoline. **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.   **Online**:  Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.   **First Class Mail, Hand Delivery, or Overnight Courier**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

---

[3]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery<br><br>All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| Don Frappe Inc.<br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| LunaSpeiz<br>157 Calle de Luna,<br>San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Centro<br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).

The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.

3

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim or the right to vote on account of securities giving rise to such Claim.

PLEASE COMPLETE THE FOLLOWING:

**Item 1**.          **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds Claim(s) in **Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)** set forth below in the following aggregate amount:

$$\$\text{_____}$$

\* \* \* \* \* \*

**Item 2**.          **Vote on Plan**.

The undersigned holder of a Claim in the amount set forth in **Item 1** above hereby votes to (please check <u>one</u>):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☐ | **REJECT** (vote AGAINST) the Plan |

**To submit your Ballot via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

**Kroll's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Creditors who cast a Ballot using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

<u>**Item 3**</u>.              **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in <u>**Item 1**</u> above, or (ii) it has asserted full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Holder: _____

(Print or Type)

_____

Signature:_____

Name of Signatory:_____

(If other than holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

### VOTING INSTRUCTIONS FOR A NON-SETTLING MONOLINE
### COMPLETING A BALLOT ON ACCOUNT OF CLAIMS IN CLASS 2
### (<u>NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS</u>)

1. This Ballot is submitted to you to (i) solicit your vote to accept or reject the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-BK-4780, ECF No. ____]⁵ (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "<u>Plan</u>"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan. The terms of the Plan are described in the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "<u>Disclosure Statement</u>"). All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2. The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan. In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3. **To have your vote counted, you must properly complete, sign, and return this Ballot to the Balloting Agent so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "<u>Voting Deadline</u>").**

**Ballots must be delivered to the Balloting Agent by <u>one</u> of the following methods:**

a. **<u>Online</u>**: Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should <u>NOT</u> submit your paper copy Ballot as well.

b. **<u>First Class Mail, Hand Delivery, or Overnight Courier</u>**: Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

---

⁵ Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

**PUERTO RICO BALLOT PROCESSING**
**C/O KROLL RESTRUCTURING ADMINISTRATION LLC**
**(F/K/A PRIME CLERK LLC)**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery — All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u> Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Oceana HUB Center</u> 2 Calle Acerina Caguas, PR 00725 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>LunaSpeiz</u> 157 Calle de Luna, San Juan, PR 00901 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Centro</u> Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Club de Leones de Ponce</u> Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

7

4.      To properly complete the Ballot, you must follow the procedures described below:

a.  Ensure the information contained in **Item 1** of the Ballot is correct;

b.  You may not split your vote on the Plan.  You must vote to accept or reject the Plan with all the Claims you hold in a Class;

c.  If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

d.  If you also hold Claims in other Classes, you may receive more than one Ballot or Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e.  If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f.  Provide your name and mailing address;

g.  Sign and date your Ballot; and

h.  Return your Ballot using an authorized method of return indicated herein.

5.      If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

\*     \*     \*     \*     \*

**IF YOU:**

(A)  **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

(B)  **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

(C)  **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

(D)  **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

(E)  **NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **<u>TELEPHONE</u> AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR**

- **<u>EMAIL</u> AT <u>PUERTORICOINFO@RA.KROLL.COM</u> (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**<u>Schedule 3(c)</u>**

**Form of Ballot for National on Account of Claims in
Class 5 (National Insured Bond Claims)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                  Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## BALLOT FOR NATIONAL ON ACCOUNT OF CLAIMS
## IN CLASS 5 (NATIONAL INSURED BOND CLAIMS)

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] is soliciting votes with respect to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§2101-2241

BK-4780, ECF No. _____][3]  (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot.  **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan.  If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent"),[4] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by National Public Finance Guarantee Corporation ("National").  Pursuant to the Disclosure Statement Order, National is entitled to accept or reject the Plan on account of Impaired Claims in Class 5 (National Insured Bond Claims) arising from securities insured by National.  **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by <u>one</u> of the following methods:**

a.  **<u>Online</u>**:  Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link.  Follow the instructions set forth on the website.  You are encouraged to submit your Ballot via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should <u>NOT</u> submit your paper copy Ballot as well.

b.  **<u>First Class Mail, Hand Delivery, or Overnight Courier</u>**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

---

[3]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

<table>
<tr>
<td colspan="2"><b>Locations in the Commonwealth<br>Accepting Ballots by Hand Delivery</b><br><br>All locations are available from<br><b>April 10, 2023</b> to <b>June 7, 2023</b><br>(except weekends and federal holidays)</td>
</tr>
<tr>
<td><b>Address</b></td>
<td><b>Hours (AST)</b></td>
</tr>
<tr>
<td><u>Don Frappe Inc.</u><br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610</td>
<td><u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m.</td>
</tr>
<tr>
<td><u>Oceana HUB Center</u><br>2 Calle Acerina<br>Caguas, PR 00725</td>
<td><u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m.</td>
</tr>
<tr>
<td><u>LunaSpeiz</u><br>157 Calle de Luna,<br>San Juan, PR 00901</td>
<td><u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m.</td>
</tr>
<tr>
<td><u>Centro</u><br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918</td>
<td><u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m.</td>
</tr>
<tr>
<td><u>Club de Leones de Ponce</u><br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731</td>
<td><u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m.</td>
</tr>
</table>

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

**The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights

3

in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim.

PLEASE COMPLETE THE FOLLOWING:

**Item 1**.           **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds Claim(s) in **Class 5 (National Insured Bond Claims)** set forth below in the following aggregate amount:



\*   \*   \*   \*   \*   \*

**Item 2**.           **Vote on Plan**.

The undersigned holder of a Claim in the amount set forth in **Item 1** above hereby votes to (please check <u>one</u>):

| ☐ | **ACCEPT** (vote FOR) the Plan | ☐ | **REJECT** (vote AGAINST) the Plan |
|---|---|---|---|

**To submit your Ballot via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**_____

**Kroll's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Creditors who cast a Ballot using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

<u>**Item 3.**</u>          **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in <u>**Item 1**</u> above, or (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Holder: _____

(Print or Type)

_____

Signature:_____

Name of Signatory:_____

(If other than holder)

Title:        _____

Address:     _____

              _____

              _____

Telephone
Number:      _____

Email:        _____

Date Completed:  _____

5

**VOTING INSTRUCTIONS FOR NATIONAL ON ACCOUNT OF CLAIMS IN CLASS 5
(NATIONAL INSURED BOND CLAIMS)**

1.   This Ballot is submitted to you to (i) solicit your vote to accept or reject the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][5] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan.  The terms of the Plan are described in the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement").  All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.        The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan.  In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3.        **To have your vote counted, you must properly complete, sign, and return this Ballot to the Balloting Agent so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.   **Online**:   Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link.  Follow the instructions set forth on the website.  You are encouraged to submit your Ballot via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.   **First Class Mail, Hand Delivery, or Overnight Courier**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

---

[5]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery | |
| --- | --- |
| All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| **Address** | **Hours (AST)** |
| Don Frappe Inc. Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | M – F 8:30 a.m. to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M – F 8:30 a.m. to 5:00 p.m. |
| LunaSpeiz 157 Calle de Luna, San Juan, PR 00901 | M – F 8:30 a.m. to 5:00 p.m. |
| Centro Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |
| Club de Leones de Ponce Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | M – F 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

4.      To properly complete the Ballot, you must follow the procedures described below:

    a.  Ensure the information contained in **Item 1** of the Ballot is correct;

    b.  You may not split your vote on the Plan.  You must vote to accept or reject the Plan with all the Claims you hold in a Class;

    c.  If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

    d.  If you also hold Claims in other Classes, you may receive more than one Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

    e.  If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

    f.  Provide your name and mailing address;

    g.  Sign and date your Ballot; and

    h.  Return your Ballot using an authorized method of return indicated herein.

5.      If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

*   *   *   *   *

**IF YOU:**

    (A)  **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

    (B)  **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

    (C)  **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

    (D)  **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

    (E)  **NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **TELEPHONE** AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR

- **EMAIL** AT **PUERTORICOINFO@RA.KROLL.COM** (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**<u>Schedule 3(d)</u>**

**Form of Ballot for
Holders of Claims in Class 3 (Pension
Claim), Class 6 (National Reimbursement
Claim), Class 7 (General Unsecured
Claims), Class 8 (Vitol Claims), Class 9
(Assured Insured Interest Rate Swaps Claims),
Class 11 (Eminent Domain/Inverse Condemnation
Claims), and Class 12 (Federal Claims),
Holders of Claims arising from Assured Matured
Bonds, and Holders of Claims Arising from ATOP Ineligible Bonds**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>               Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>               Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## BALLOT FOR [HOLDERS OF CLAIMS IN [CLASS 1 (SETTLING BONDHOLDER CLAIMS)[2]] / [CLASS 2 (NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)[3]] / [CLASS 3 (PENSION CLAIM)] / [CLASS 6 (NATONAL REIMBURSEMENT CLAIMS)] / [CLASS 7 (GENERAL UNSECURED CLAIMS)] / [CLASS 8 (VITOL CLAIMS)] / [CLASS 9 (ASSURED INSURED INTEREST RATE

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   [**NTD**: ATOP Ineligible Bonds]

[3]   [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

**SWAPS CLAIMS)] / [CLASS 11 (EMINENT DOMAIN/INVERSE
CONDEMNATION CLAIMS)] / [CLASS 12 (FEDERAL CLAIMS)]]**

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[4] is soliciting votes with respect to the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][5]  (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot. **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll" or the "Balloting Agent"),[6] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by holders of Claims in the Classes listed below. **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.    **Online:**  Visit https://cases.ra.kroll.com/puertorico/ and click the "Submit E-Ballot" link.  Follow the instructions set forth on the website.  You are encouraged to submit your Ballot via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.    **First Class Mail, Hand Delivery, or Overnight Courier:**  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

---

[4]    PROMESA is codified at 48 U.S.C. §§2101-2241

[5]    Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[6]    On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site:**  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery<br><br>All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| Don Frappe Inc.<br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| LunaSpeiz<br>157 Calle de Luna,<br>San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Centro<br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

3

**The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim.

Pursuant to the Plan, you may be required, as a condition to receiving any distribution on your Claim, to complete the appropriate Internal Revenue Service Form W-8 or Form W-9, as applicable. Information relating to these forms and instructions on filling them out can be found on the Internal Revenue Service's website: https://www.irs.gov/.

*(Continued on Next Page)*

4

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**. **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds the Claim(s) in [[Class 1 (Settling Bondholder Claims)[1]] / [Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)[2]] [Class 3 (Pension Claim)] / [Class 6 (National Reimbursement Claim] / [Class 7 (General Unsecured Claims)] / [Class 8 (Vitol Claims)] / [Class 9 (Assured Insured Interest Rate Swaps Claims)] / [Class 11 (Eminent Domain/Inverse Condemnation Claims)] / [Class 12 (Federal Claims)]] / as of **February 28, 2023**, the Voting Record Date, as set forth below in the following aggregate amount:



$\$_____$

To submit your [election in Item 2 and] / [information in Item 2 and] vote in Item [2] / [3] below via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:_____**

Kroll's "E-Ballot" platform is the sole manner in which elections and votes will be accepted via electronic or online transmission.  Elections and votes submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

Creditors who make an election or vote using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

**Item 2**.[3] **Election to be Treated as Convenience Claim (Class 13).**

Pursuant to the Plan, any holder of an Allowed PREPA General Unsecured Claim may elect to (a) reduce the amount of such Allowed Claim to $10,000.00 and (b) have such reduced Claim be

---

[1]   [**NTD**: ATOP Ineligible Bonds]

[2]   [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

[3]   [Item 2 election only to be included for ballots delivered to holders of Claims in Class 7 (General Unsecured Claims)].

treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim.

Any holder of multiple Allowed PREPA General Unsecured Claims may elect to (a) reduce the amount of such multiple Claims to an aggregate amount of $20,000.00 and (b) have such reduced claims be treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim; provided, however, that the aggregate amount of consideration to be made available to Convenience Claims shall be One Million Dollars ($1,000,000.00); and provided, further, that in the event the Convenience Cap is exceeded, holders of Allowed Convenience Claims shall receive a Pro Rata Share of the Convenience Cap.  If you hold multiple Allowed PREPA General Unsecured Claims, receive more than one ballot, and wish to make this election, you must make a consistent election on all the ballots you received for them to be treated pursuant to Class 13 (Convenience Claims).  If the ballots do not all consistently elect to be treated Class 13 (Convenience Claims), such election will not be effective.

If you elect to have your Claim reduced and treated as a Convenience Claim in Class 13, you will be deemed to have accepted the Plan as a holder of a Claim in Class 13 (Convenience Claims).

<div align="center">*   *   *   *   *</div>

The undersigned holder of a General Unsecured Claim in Class 7 in the amount set forth in <u>Item 1</u> above hereby elects to have such holder's General Unsecured Claim (a) reduced to $10,000.00 (and if such holder holds multiple Allowed PREPA General Unsecured Claims, such multiple claims reduced to an aggregate amount of $20,000.00) and (b) treated as a Convenience Claim in Class 13.

---

☐   **Elect to be Treated as Convenience Claim in Class 13
(<u>Available only to holders of Claims in Class 7</u>)**

**If you make the election above, skip to Item 4 below as you are deemed to have accepted the Plan.**

---

**<u>Item [2] / [3]</u>.        Vote on Plan [(skip if you have elected to be treated as a Convenience Claim in Item 2 above)].**

The undersigned holder of a Claim in the amount set forth in <u>Item 1</u> above hereby votes to (please check <u>one</u>):

---

☐   **<u>ACCEPT</u> (vote FOR) the Plan**          ☐   **<u>REJECT</u> (vote AGAINST) the Plan**

---

<div align="center">6</div>

**Item [3] / [4].**          **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in <u>Item 1</u> above, or (ii) it has full power and authority to vote to accept or reject the Plan [and make the election in <u>Item 2</u> above].  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Holder: _____
                                          (Print or Type)

                              _____

Signature: _____

Name of Signatory: _____
                                          (If other than holder)

Title:       _____

Address:  _____

              _____

              _____

Telephone
Number:   _____

Email:     _____

Date Completed:  _____

7

**VOTING**
**AND ELECTION INSTRUCTIONS FOR COMPLETING**
**THE BALLOT FOR CLAIMS IN [CLASS 1**
**(SETTLING BONDHOLDER CLAIMS)[4] / [CLASS 2 (NON-SETTLING**
**BONDHOLDER AND NON-SETTLING MONOLINE**
**CLAIMS)[5] / [CLASS 3 (PENSION CLAIM)]**
**/ [CLASS 6 (NATONAL REIMBURSEMENT CLAIMS)]**
**/ [CLASS 7 (GENERAL UNSECURED CLAIMS)] / [CLASS**
**8 (VITOL CLAIMS)] / [CLASS 9 (ASSURED INSURED INTEREST**
**RATE SWAPS CLAIMS)] / [CLASS 11 (EMINENT DOMAIN/INVERSE**
**CONDEMNATION CLAIMS)] / [CLASS 12 (FEDERAL CLAIMS)]]**

1.      This Ballot is submitted to you to (i) solicit your vote to accept or reject the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][6] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan.  The terms of the Plan are described in the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement").  All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.      The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan.  In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3.      [Pursuant to the Plan, any holder of an Allowed PREPA General Unsecured Claim may elect to (a) reduce the amount of such Allowed Claim to $10,000.00 and (b) have such reduced Claim be treated pursuant to Class 13 (Convenience Claims),

---

4   [**NTD**: ATOP Ineligible Bonds]

5   [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

6   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

receiving a projected recovery of 100% of such reduced claim; provided, however, that the aggregate amount of consideration to be made available to Convenience Claims shall be One Million Dollars ($1,000,000.00); and provided, further, that in the event the Convenience Cap is exceeded, holders of Allowed Convenience Claims shall receive a Pro Rata Share of the Convenience Cap.  Any holder of multiple Allowed PREPA General Unsecured Claims may elect to (a) reduce the amount of such multiple Claims to an aggregate amount of $20,000.00 and (b) have such reduced claims be treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim.  If you elect to have your Claim reduced and treated as a Convenience Claim in Class 13, you will be deemed to have accepted the Plan as a holder of a Claim in Class 13 (Convenience Claims).][7]

4. **To have your vote or election counted, you must properly complete, sign, and return this Ballot to Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll" or the "Balloting Agent") so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a. **Online:**  Visit https://cases.ra.kroll.com/puertorico/ and click the "Submit E-Ballot" link.  Follow the instructions set forth on the website.  You are encouraged to submit your Ballot via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b. **First Class Mail, Hand Delivery, or Overnight Courier:**  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINSTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c. **Hand Delivery to On-Island Collection Site:**  Deliver to one of the following on-island locations:

---

[7]   Applicable only to Class 7 (General Unsecured Claims).

| **Locations in the Commonwealth**<br>**Accepting Ballots by Hand Delivery**<br><br>All locations are available from<br>**April 10, 2023** to **June 7, 2023**<br>(except weekends and federal holidays) | |
| :---: | :---: |
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u><br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Oceana HUB Center</u><br>2 Calle Acerina<br>Caguas, PR 00725 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>LunaSpeiz</u><br>157 Calle de Luna,<br>San Juan, PR 00901 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Centro</u><br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Club de Leones de Ponce</u><br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

5.     To properly complete the Ballot, you must follow the procedures described below:

a.   Ensure the information contained in <u>Item 1</u> of the Ballot is correct;

b.   You may not split your vote on the Plan.  You must vote to accept or reject the Plan, or make an election with respect to, all the Claims you hold in a Class;

c.   If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

10

d. If you also hold Claims in other Classes, you may receive more than one Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e. If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f. Provide your name and mailing address;

g. Sign and date your Ballot; and

h. Return your Ballot using an authorized method of return indicated herein.

6.      If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

*    *    *    *    *    *

**IF YOU:**

(A) **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

(B) **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

(C) **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

(D) **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

(E) **NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR**

- **EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**<u>Schedule 4(a)</u>**

**Notice of Non-Voting Status (Deemed to Reject)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS
## (CLASS 14 (SECTION 510(B) SUBORDINATED CLAIMS)) – DEEMED TO REJECT

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [Case

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOU ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF YOUR CLAIM(S) AGAINST THE DEBTOR. THEREFORE, PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE REJECTED THE PLAN, AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

*Confirmation Hearing*.  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

*Confirmation Objection Deadline.*  The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

of the proposed Plan or the proposed confirmation order[4] (the "<u>Confirmation Objection</u>
<u>Deadline</u>").  Parties who do not file an objection to the Plan or the proposed confirmation order
prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation
before the Court at the Confirmation Hearing.

*Plan Confirmation Depository*.  Information relating to confirmation of the Plan is
available online in the Plan Confirmation Depository at <u>titleiiiplandataroom.com</u>.

*Procedures for Filing Objections and Responses to Confirmation*.  Objections and
responses to confirmation of the Plan must:

a.  Be in writing, in English, and signed;

b.  State the name, address, and nature of the Claim of the objecting or responding party;

c.  State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

    i.  If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

        United States District Court, Clerk's Office
        150 Ave. Carlos Chardon Ste. 150,
        San Juan, P.R. 00918-1767

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

---

[4]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

e.  be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL"),[5] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

---

[5]  On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023
     San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
     ppossinger@proskauer.com
     ebarak@proskauer.com
     ddesatnik@proskauer.com


/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

**Schedule 4(b)**

**Notice of Non-Voting Status (Deemed to Accept)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                              Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS CLASS 10 (ORDINARY COURSE CUSTOMER CLAIMS) AND CLASS 13 (CONVENIENCE CLAIMS)) – DEEMED TO ACCEPT

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the

District of Puerto Rico approved the *Disclosure Statement for the Modified Second Amended Title*

*III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [Case

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTOR ARE <u>UNIMPAIRED</u>. THEREFORE, PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN, AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

***Confirmation Hearing***.  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

***Confirmation Objection Deadline.***  The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

of the proposed Plan or the proposed confirmation order[4] (the "<u>Confirmation Objection</u>
<u>Deadline</u>").  Parties who do not file an objection to the Plan or the proposed confirmation order
prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation
before the Court at the Confirmation Hearing.

   ***Plan Confirmation Depository***.  Information relating to confirmation of the Plan is
available online in the Plan Confirmation Depository at <u>titleiiiplandataroom.com</u>.

   ***Procedures for Filing Objections and Responses to Confirmation***. Objections and
responses to confirmation of the Plan must:

   a.  Be in writing, in English, and signed;

   b.  State the name, address, and nature of the Claim of the objecting or responding
       party;

   c.  State with particularity the basis and nature of any objection or response and
       include, where appropriate, proposed language to be inserted in the Plan or the
       proposed confirmation order to resolve any such objection or response;

   d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico
       Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re
       Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's
       case filing system in searchable portable document format **on or before the
       Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic
       Standard Time))**.

       i.  If you are <u>not</u> an attorney who is a registered user of the Court's case
           filing system, you may instead mail your objection to the Court's
           Clerk's office at:

               United States District Court, Clerk's Office
               150 Ave. Carlos Chardon Ste. 150,
               San Juan, P.R. 00918-1767

           so as to be received **on or before the Confirmation Objection
           Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**,
           and

---

[4]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing
      Atlantic Time).

e. be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

[*Remainder of page intentionally left blank*]

Dated: _____, 2023
     San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
     ppossinger@proskauer.com
     ebarak@proskauer.com
     ddesatnik@proskauer.com

/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

5

## **<u>Schedule 4(c)</u>**

**Notice of Non-Voting Status (Disputed Claims)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS (DISPUTED CLAIMS)

You are receiving this Notice because you hold a Claim that is subject to an objection.

You should read this Notice carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.  You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court.

**YOU ARE NOT ENTITLED TO VOTE YOUR CLAIM TO ACCEPT OR REJECT THE PLAN UNLESS YOUR CLAIM HAS BEEN ALLOWED PURSUANT TO AN ORDER OF THE COURT ON OR BEFORE JUNE 7, 2023.**

You may seek to challenge the allowance or disallowance of your Claim for voting purposes by filing a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your Claim (a "Rule 3018(a) Motion").  In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

ordered by the Court prior to **June 7, 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting**

**Deadline")**. A form of Rule 3018(a) Motion is available at https://cases.ra.kroll.com/puertorico/.

   *Procedures for Filing a Rule 3018(a) Motion*. A motion pursuant to Bankruptcy Rule

3018(a) must:

   a.   Be in writing, in English, and signed;

   b.   State your name and address;

   c.   State with particularity the basis and nature of your Claim and the reasons why
        the Court should temporarily allow your Claim for voting purposes;

   d.   Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico
        Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re
        Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's
        case filing system in searchable portable document format **on or before [●],
        2023 at 5:00 p.m. (Atlantic Standard Time)**. [4]

          i.   If you are <u>not</u> an attorney who is a registered user of the Court's
               case filing system, you may instead mail your objection to the
               Court's Clerk's office at:

               United States District Court, Clerk's Office
               150 Ave. Carlos Chardon Ste. 150,
               San Juan, P.R. 00918-1767

               so as to be received **on or before [●], 2023 at 5:00 p.m.
               (Atlantic Standard Time)**.[5]

               *       *       *       *       *

   *Confirmation Hearing*. A hearing to consider confirmation of the Plan (the "<u>Confirmation</u>

<u>Hearing</u>") will be held before The Honorable Laura Taylor Swain, United States District Court

Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario

United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as

---

[4]   [Tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an
      objection, if any, as to such Claim.]

[5]   [Tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an
      objection, if any, as to such Claim.]

otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023  at 9:30 a.m. (Atlantic Standard Time)**.

   *Confirmation Objection Deadline.*   The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[6] (the "Confirmation Objection Deadline").  Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

   *Plan Confirmation Depository*.  Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

   *Procedures for Filing Objections and Responses to Confirmation*.  Objections and responses to confirmation of the Plan must:

   a. Be in writing, in English, and signed;

   b. State the name, address, and nature of the Claim of the objecting or responding party;

   c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

   d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

        i. If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

---

[6]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before the Confirmation Objection
Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard
Time))**, and

  e. be served upon the Office of the United States Trustee for the District of Puerto
Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In
re: Puerto Rico Electric Power Authority*) so as to be received on or before the
**on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00
p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR
WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT,
PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL
RESTRUCTURING ADMINISTRATION LLC, BY (I) FIRST CLASS MAIL OR
OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL
RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD
AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231
(TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR
INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC
STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT
PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE
SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

Dated: _____, 2023
  San Juan, Puerto Rico

*/s/*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        ddesatnik@proskauer.com


*/s/*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

6

**Schedule 4(d)**

**Notice of Non-Voting Status for  Holders of PREPA
Revenue Bond Claims Insured by a Non-Settling Monoline**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE
## OF NON-VOTING STATUS CLASS 2 (NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the

District of Puerto Rico approved the *Disclosure Statement for the Modified Second Amended Title*

*III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [Case

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

*Voting with respect to PREPA Revenue Bond Claims Insured by a Non-Settling Monoline.*

> **PURSUANT TO THE ORDER APPROVING THE DISCLOSURE STATEMENT, [____] SHALL BE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ON ACCOUNT OF ALL [_____] INSURED BOND CLAIMS. ACCORDINGLY, YOU ARE NOT ENTITLED TO VOTE ON ACCOUNT OF SUCH CLAIM(S).**

*Confirmation Hearing*.  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time).**

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Confirmation Objection Deadline.*   The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[4] (the "Confirmation Objection Deadline"). Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

*Plan Confirmation Depository*.   Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

*Procedures for Filing Objections and Responses to Confirmation*.   Objections and responses to confirmation of the Plan must:

a.  Be in writing, in English, and signed;

b.  State the name, address, and nature of the Claim of the objecting or responding party;

c.  State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

  i.  If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

---

[4]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

3

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

e.   be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC,[5] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC) , 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

[*Remainder of page intentionally left blank*]

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023
     San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com
       ddesatnik@proskauer.com


/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

**<u>Schedule 4(e)</u>**

**Notice of Non-Voting Status for Holders of Claims
Subject to Administrative Claims Reconciliation**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                   Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS
## (CLAIMS SUBJECT TO ADMINISTRATIVE CLAIMS RECONCILIATION)

You are receiving this Notice because you hold a Claim that was transferred to administrative claims reconciliation pursuant to the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-3283, ECF No. 12274] (the "ACR Order").

You should read this Notice carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the *Disclosure Statement for the Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.  You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court.

 **YOU ARE NOT ENTITLED TO VOTE YOUR CLAIM TO ACCEPT OR REJECT THE PLAN, UNLESS YOUR CLAIM HAS BEEN ALLOWED PURSUANT TO AN ORDER OF THE COURT ON OR BEFORE JUNE 7, 2023.**

 You may seek to challenge the allowance or disallowance of your Claim for voting purposes by filing a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your Claim (a "Rule 3018(a) Motion").  In accordance with Bankruptcy Rule 3018(a), as to any to

---

[2] Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to **June 7, 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")**.  A form of Rule 3018(a) Motion, together with instructions for filing and serving the 3018(a) Motion, is available at https://cases.ra.kroll.com/puertorico/.

*Procedures for Filing a Rule 3018(a) Motion*.  A motion pursuant to Bankruptcy Rule 3018(a) must:

e.   Be in writing, in English, and signed;

f.   State either your or your designated representative's name, address, telephone number, and email address;

g.   State with particularity the basis and nature of your Claim and the reasons why the Court should temporarily allow your Claim for voting purposes;

h.   Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time)**.[4]

i.   If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time).**[5]

\*        \*        \*        \*        \*

*Confirmation Hearing.*  A hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") will be held before The Honorable Laura Taylor Swain, United States District Court

---

[4]   [**Note:** Tenth (10th) day after deadline to serve Confirmation Hearing Notice.]

[5]   [**Note:** Tenth (10th) day after deadline to serve Confirmation Hearing Notice.]

Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario

United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as

otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m.**

**(Atlantic Standard Time).**

> *Confirmation Objection Deadline.*   The Court has established **5:00 p.m. (Atlantic**
**Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation

of the proposed Plan or the proposed confirmation order[6] (the "Confirmation Objection

Deadline"). Parties who do not file an objection to the Plan prior to the Confirmation Objection

Deadline will be prohibited from making an oral presentation before the Court at the Confirmation

Hearing.

> *Plan Confirmation Depository*.   Information relating to confirmation of the Plan is

available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

> *Procedures for Filing Objections and Responses to Confirmation*.   Objections and

responses to confirmation of the Plan must:

> a. Be in writing, in English, and signed;

> b. State the name, address, and nature of the Claim of the objecting or responding
> party;

> c. State with particularity the basis and nature of any objection or response and
> include, where appropriate, proposed language to be inserted in the Plan or the
> proposed confirmation order to resolve any such objection or response;

> d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico
> Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re
> Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's
> case filing system in searchable portable document format **on or before the
> Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic
> Standard Time))**.

---

[6]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing
Atlantic Time).

      i.    If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

> United States District Court, Clerk's Office
> 150 Ave. Carlos Chardon Ste. 150,
> San Juan, P.R. 00918-1767

so as to be received **<u>on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))</u>**, and

    e.   be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Electric Power Authority) so as to be received **<u>on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))</u>**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC "<u>KROLL</u>"),[7] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT <u>PUERTORICOINFO@RA.KROLL.COM</u> (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

---

[7] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023
            San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        ddesatnik@proskauer.com


/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

## <u>Schedule 5</u>

**Form of Election Notice for Holders of Claims in Class 5**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                          Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**ELECTION NOTICE
FOR NATIONAL INSURED BONDHOLDERS WITH CLAIMS IN CLASS 5**

This Election Notice (the "Notice") is being sent to the beneficial holders of Allowed National Insured Bond Claims arising on account of National Insured Bonds, which are insured by National Public Finance Guarantee Corporation ("National"). These securities give rise to Claims in Class 5 of the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan").[2]  Although

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  Unless otherwise defined herein, each capitalized term used herein shall have the meaning given to it in the Plan.

National has the right to cast the vote on account of Claims arising from National Insured Bonds to accept or reject the Plan, holders of Claims in Class 5 are entitled to elect their form of treatment pursuant to the Plan.

Each holder of an Allowed National Insured Bond[3] has the option to elect to receive on the Effective Date, or as soon as reasonably practicable thereafter, in full consideration, satisfaction, release, and exchange of such holder's Claim:

**National Commutation Treatment (Option 1)**:  On the Effective Date, or as soon as reasonably practicable thereafter, you will receive the National Commutation Consideration, distributable by or at the direction of National in its sole and absolute discretion pursuant to Section 20.A of the Plan.  The National Commutation Consideration consists of a combination of some or all of the following: (i) your Pro Rata Share of the National Plan Consideration; (ii) a percentage, to be determined at National's sole discretion, of the amounts distributable to National in accordance with the terms and provisions of Article VIII.A of the Plan; and (iii) Cash in an amount to be determined by National in its sole discretion, in full and complete satisfaction, release, and discharge of any further obligation of National with respect to the applicable National Insurance Policies (and, by making such election, you shall be deemed to have agreed to commute the National Insurance Policies relating to your Allowed National Insured Bond Claim).

If you elect the National Commutation Treatment (Option 1), (i) you shall not receive any payments from National under the National Insurance Policies on account of accrued and unpaid interest on and after, or, in the case of any capital appreciation bonds, the accreted value on and after, the Effective Date, and to the extent any accrued or accreted interest is paid to you by National after such date, such amount shall be credited against the consideration you (or your successors, transferees, or assigns) are otherwise entitled to receive as National Commutation Consideration, (ii) the National Insured Bonds underlying your Allowed National Insured Bond Claim shall be deemed cancelled on the Effective Date, and (iii) you shall have no other or further rights under or with respect to the applicable National Insurance Policy or any of the National Non-Commutation Treatment options described in Section 20.B of the Plan or with respect to the National Non-Commutation Treatment (Option 2) below.

**National Non-Commutation Treatment (Option 2)**:  If you timely and validly elect to receive the National Non-Commutation Treatment, (i) National shall receive the National Plan Consideration distributable on account of the applicable Allowed National Insured Bond Claim, and (ii) such Holder shall receive the following treatment(s):[4]

---

[3]   Any calculations and/or payments to be made to you based on, or in relation to, your Allowed National Insured Bond Claims pursuant to the options set out herein will take into account any payments of principal and/or accrued interest already made to you by National pursuant to the terms of the relevant National Insurance Policies.  For the avoidance of doubt, you shall not be compensated for any amounts already paid to you pursuant to the terms of the relevant National Insurance Policies.

[4]   Pursuant to the Plan, National shall exercise in its sole discretion its election of treatments at or prior to the Plan Supplement Deadline.

(i)    **Custodial Trusts:** You shall (A) deposit, or be deemed to have deposited, among other things, your Pro Rata Share of the National Trust Consideration, the National Insured Bonds allocable to you, and the related National Insurance Policies into the applicable National Trust, (B) be deemed to have received your Pro Rata Share of the National Trust Consideration and National Certificates in consideration therefor, and (C) have no recourse to National or the National Insurance Policies other than as provided for under the terms of the National Trust.

(ii)    **Escrow:** You shall deposit, or be deemed to have deposited, among other things, your Pro Rata Share of the National Escrow Consideration in the National Escrow Account and such deposited National Escrow Consideration shall be held as security for National's obligations to the Holders of the National Insured Bonds whose National Escrow Consideration was deposited in the National Escrow Account under the National Insurance Policies.

(iii)    **Payment of Accelerated Amounts:** National shall receive the National Plan Consideration that would be otherwise allocable to you and National shall fully and completely discharge its obligation to you by paying on the Effective Date, in Cash, the amount thereof at the National Acceleration Price as of the date of payment.

(iv)    **Alternative Treatment:** The Oversight Board and National reserve the right to formulate an alternative election or implementation option with respect to the National Insured Bonds that is mutually acceptable to the Oversight Board and National, each in their respective sole discretion; *provided*, *however*, that any such alternative election or implementation option must be proposed, in writing, prior to the commencement of the Disclosure Statement hearing.

*If you fail to make a valid election or submit an election for less than all of your Claims in Class 5 (in which case, such election will be void and of no force and effect), you will be deemed to have elected to commute the applicable National Insurance Policies, to release and discharge National's obligations thereunder, and to receive distributions in accordance with the* <u>*National Commutation Treatment (Option 1)*</u>*. If you do not validly elect to receive the National Non-Commutation Treatment, you shall be deemed to have had, on or after the Effective Date, the National Insured Bonds, including the obligations of National under the related National Insurance Policies, underlying your Claim cancelled.*

*You are encouraged to review the entire Disclosure Statement and the Plan before making an election with respect to the form of distribution you will receive under the Plan. The tax consequences described in the Disclosure Statement are not a substitute for careful tax planning and professional tax advice upon your individual circumstances and you should seek advice from your own tax advisor.*

> Please take notice that you are not able to vote to accept or reject the Plan and will not receive separate voting instructions for such purpose.  Pursuant to the Plan and the Disclosure Statement Order, National is entitled to vote to accept or reject the Plan on account of Claims arising from securities insured by National.

**IF YOU WISH TO RECEIVE THE NATIONAL COMMUTATION TREATMENT (OPTION 1), YOU DO NOT NEED TO TAKE ANY FURTHER ACTION.  HOWEVER, IN SUCH CASE, YOU WILL BE DEEMED TO HAVE ELECTED TO RELEASE, DISCHARGE, AND COMMUTE NATIONAL'S OBLIGATIONS AND THE NATIONAL INSURANCE POLICY.**

**Each holder of National Insured Bonds described on __Exhibit A__ attached hereto that wishes to receive the National Non-Commutation Treatment (Option 2) must submit a valid election in the manner described herein.**

\* \* \* \* \*

### How to Submit a Valid Election

If you wish to elect to receive the National Non-Commutation Treatment (Option 2), you must instruct your broker or nominee (each, a "<u>Nominee</u>") to electronically deliver your National Insured Bonds via the Automated Tender Offer Program ("<u>ATOP</u>") at The Depository Trust Company ("<u>DTC</u>"), which will constitute an election via DTC's ATOP system to receive the National Non-Commutation Treatment (Option 2).

No paperwork is required to be delivered to Kroll to effectuate the election.  The sole means of effectuating this election is to (i) validly tender your National Insured Bonds into the proper ATOP envelope at DTC, and (ii) make the election to receive the National Non-Commutation Treatment (Option 2), each as described on DTC's ATOP system.

> **THE ELECTION DEADLINE IS
> 5:00 P.M. (ATLANTIC STANDARD TIME) ON JUNE 7, 2023.**
>
> This date and time is referred to as the "<u>Election Deadline</u>."

**PLEASE TAKE NOTICE THAT IF YOU TENDER YOUR NATIONAL INSURED BONDS THROUGH ATOP, YOU WILL BE RESTRICTED FROM TRANSFERRING YOUR NATIONAL INSURED BONDS UNTIL THE ISSUANCE OF NEW CUSIPS IN CONNECTION WITH SUCH TENDERED BONDS, WHICH ISSUANCE SHALL OCCUR AS SOON AS REASONABLY PRACTICABLE AFTER THE ELECTION DEADLINE.  IF YOU DESIRE TO RETAIN THE ABILITY TO TRADE OR TRANSFER YOUR NATIONAL INSURED BONDS PRIOR TO THE ISSUANCE OF NEW CUSIPS, THEN YOU SHOULD NOT TENDER YOUR NATIONAL INSURED BONDS THROUGH ATOP.**

**YOU MAY, HOWEVER, REVOKE YOUR ELECTION AT ANY TIME BEFORE THE ELECTION DEADLINE AND WITHDRAW ANY TENDERED NATIONAL INSURED BONDS.**

\*   \*   \*   \*   \*

### How to Revoke an Election

You may revoke an election to receive the National Non-Commutation Treatment (Option 2) and withdraw your National Insured Bonds tendered through DTC's ATOP at any time before the Election Deadline.

If you wish to revoke your election, you must instruct your Nominee to revoke your election and withdraw your National Insured Bonds via ATOP at DTC (which withdrawal will be confirmed by Kroll once notified by DTC of the withdrawal request). No paperwork is required to be delivered to Kroll to effectuate the election.

If you revoke your election at any time before the Election Deadline, you may make an election to receive the National Non-Commutation Treatment (Option 2) at any time before the Election Deadline, in accordance with the instructions to submit an election above.

\*   \*   \*   \*   \*

If you have any questions about your holdings, please contact your Nominee. Additionally, you must contact your Nominee to take any action described above.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL"),[5] BY TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR BY EMAIL AT PUERTORICOINFO@RA.KROLL.COM AND REFERENCE "NATIONAL DISTRIBUTION ELECTION" IN THE SUBJECT LINE. PLEASE NOTE THAT KROLL IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

All questions as to the validity, form and eligibility (including time of receipt) of your election will be determined by the Oversight Board, whose determination shall be final and binding on all parties. The Oversight Board and National reserve the absolute right to reject any or all elections that are not in proper form or the acceptance of which would, in its legal counsel's opinion, be unlawful. The Oversight Board and National also reserve the right to waive any defects, irregularities or conditions as to an election. A waiver of any defect or irregularity in one instance shall not constitute a waiver of the same or any other defect or irregularity with respect to any other instance except to the extent the Oversight Board may otherwise so provide. An election shall not be deemed to have been made until any defects or irregularities have been waived by us

---

[5] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

or cured.  None of the Oversight Board, National or the Balloting Agent, nor any other person will be under any duty to give notification of any defect or irregularity in this election, or will incur any liability to you for failure to give any such notification.

## Exhibit A

| Description | CUSIP |
|---|---|
|  |  |
|  |  |
|  |  |

## <u>Schedule 6</u>

**Form of 3018(a) Motion**

**INSTRUCTIONS FOR COMPLETING AND FILING 3018(A) MOTION**

---

> **THE PURPOSE OF RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE IS TO ALLOW PARTIES TO REQUEST THE COURT TO TEMPORARILY ALLOW THEIR CLAIMS FOR THE PURPOSE OF VOTING ON THE PLAN OF ADJUSTMENT.**
>
> **THE COURT WILL DETERMINE AFTER NOTICE AND HEARING WHETHER TO ALLOW YOUR CLAIMS FOR PURPOSES OF VOTING ON THE PLAN.**

**What to File**. Your motion <u>must</u> be in writing, in English, and contain the following information (a form of Rule 3018(a) motion is included that you may use).

(a) **Contact Information**.  Your motion must include the **name**, **address**, **telephone number**, and **email address** of either (1) the claimant (you); or (2) your attorney or designated representative to whom the attorneys for the Debtor should serve a reply to the motion, if any.

(b) **Claim Information**.  Your motion must contain **the proof of claim number(s) related thereto from Kroll** (You may search for your claim on https://cases.ra.kroll.com/puertorico/Home-ClaimInfo).  If you do not have a proof of claim number, you must describe the nature and amount of your asserted claim.

(c) **Reason(s) for filing**.  Your motion must contain a concise statement setting forth the reasons why the Court should permit you to vote on the Debtor's plan of adjustment and, if not amount is included in your proof of claim, the amount that you assert to be owed by the Debtor.

(d) **Signature.**  You must sign your motion.  If you do not sign your motion, the clerk will not accept it for filing.

**IMPORTANT NOTICE REGARDING SENSITIVE INFORMATION CONTAINED IN A MOTION.**

Your motion should **not include** sensitive documents or information, such as copies of driver's licenses, passports, birth certificates, Social Security cards, sensitive medical information or confidential business information. Sensitive information submitted to the Court must adhere to the following guidelines:

- Social Security numbers and taxpayer identification numbers should be redacted (that is, blacked out), except for their last four digits.

- Birthdays should be redacted, except for the year of an individual's birth.

- The name of any individual known to be a minor should be redacted, except for that person's initials.

- Financial account numbers should be redacted, except for their last four digits.

Any such sensitive or confidential information upon which a claimant relies in support of its motion must be provided directly to counsel for the Debtor, and will be kept confidential. You may provide this information by mailing it to the following address:

> Counsel for the Oversight Board
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036-8299
> Attn:   Martin J. Bienenstock, Esq.
>            Paul V. Possinger, Esq.
>            Ehud Barak, Esq.
>            Daniel S. Desatnik, Esq.

**Where and How to File and Serve a Motion**.  Your motion should be filed with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS.  There are two methods that you can use to file your motion:

(a) **Online**.  Registered users of the Court's case filing system must file their motion electronically in searchable portable document format.

(b) **By Mail**.  If you are not an attorney who is a registered user of the Court's case filing system, you may file and serve a motion by mailing it to the Court's Clerk's office, the Oversight Board, and the Creditors' Committee at the following addresses:

> Clerk's Office
> United States District Court
> Room 150 Federal Building
> San Juan, Puerto Rico 00918-1767

> Counsel for the Oversight Board
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036-8299
> Attn:   Martin J. Bienenstock
>            Paul V. Possinger
>            Ehud Barak
>            Daniel S. Desatnik

> Counsel for the Creditors' Committee
> Paul Hastings LLP
> 200 Park Avenue
> New York, New York 10166
> Attn:   Luc A. Despins
>            James Bliss

2

> James Worthington
> G. Alexander Bongartz

Your motion must be mailed or filed electronically so as to be received by the Clerk's Office, the Oversight Board, and the Creditors' Committee no later than the applicable deadline for filing your Bankruptcy Rule 3018(a) motion (refer to your Notice of Non-Voting Status for the applicable deadline).

If you are unable to file and serve a motion online or by mail as specified above, you may file a motion in person at the following address by the applicable deadline:

> Clerk's Office
> United States District Court
> #150 Chardon Avenue Federal Building
> San Juan, Puerto Rico 00918

A certificate of service should be included with your motion explaining how service was accomplished.

If you have any questions about filing and serving a motion, including questions about the Court's case filing system, please contact the **Kroll hotline** at **(844) 822-9231** (toll free for U.S. and Puerto Rico) or **(646) 486-7944** (for international callers).

---

### Additional Resources and Who to Contact with Questions

All documents filed in PREPA's Title III Case, including copies of claims filed using CM/ECF, are available free online at https://cases.ra.kroll.com/puertorico.  This website is maintained by Kroll and includes a searchable database to assist with locating documents.

If you require additional information, including the status of your motion, please contact the Kroll hotline at **(844) 822-9231** (toll free for U.S. and Puerto Rico) or **(646) 486-7944** (for international callers), available 10:00 a.m. to 7:00 p.m.  (Atlantic Standard Time) (Spanish available).  Inquiries may also be sent via email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                        Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## MOTION PURSUANT TO RULE 3018(A)
## OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
## <u>FOR TEMPORARY ALLOWANCE OF CLAIM FOR VOTING PURPOSES</u>

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Movant must provide all of the information below in English.**

| Part 1: | Identify Yourself |
|---|---|
| | |
| | **Name** |

| Part 2: | Where Should Notices Be Sent? |
|---|---|
| | |
| | **Name** |
| | **Number**                    **Street** |
| | **City**                              **State**                              **ZIP Code** |
| | **Contact phone** |
| | **Contact email** |

| Part 3: | Identify the Claim |
|---|---|
| | |
| | **Proof of Claim Number (if any)**<br>(You may search for your claim on https://cases.ra.kroll.com/puertorico/Home-ClaimInfo) |
| | **Please describe the nature of your claim, including the amount of your claim** |

| Part 4: | Explain Why You Should Be Permitted to Vote to Accept or Reject PREPA's Plan of Adjustment |
|---|---|
| | By filing this motion, you are seeking a court determination pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure to temporarily allow your claim in an amount the court deems proper for purposes of voting to accept or reject the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*.<br><br>Please provide below (1) the amount of your claim that should be allowed for voting purposes, and (2) the reasons why you believe you should be entitled to vote on the Debtor's plan of adjustment (attach additional pages if necessary).  Please also provide as much documentation as possible to support both the amount you are asserting and the reasons why you believe you should be entitled to vote: |

| Part 5: | Sign Below |
|---------|------------|

I respectfully request that this Court enter an order temporarily allowing my claim in the amount above for purposes of voting to accept or reject the *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*.

Executed on date _____ (MM/DD/YYYY)

Signature _____

**Print the name of the person who is completing and signing this motion:**

_____

First name                Middle name                Last name

## Schedule 7(a)

**Creditors' Committee Letter**

March 2023

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY**

**c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166**

To the Holders of Class 7 General Unsecured Claims:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Title III case of the Puerto Rico Electric Power Authority ("PREPA") is writing to you in connection with PREPA's solicitation of your vote with respect to the enclosed proposed *Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated February 26, 2023 (the "Plan").[1] You should carefully read all the materials that accompany this letter (as it may be supplemented, the "Committee Letter"), including the instructions for completing and mailing your Ballot. All Ballots must be **received** by the Claims and Noticing Agent by **[_____], 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")** to be counted.

AT THIS TIME, THE COMMITTEE DOES **NOT** SUPPORT THE OVERSIGHT BOARD'S PROPOSED PLAN, INCLUDING THE PROPOSED PLAN DISTRIBUTION TO HOLDERS OF GENERAL UNSECURED CLAIMS IN CLASS 7—A DISTRIBUTION THAT, ACCORDING TO THE DISCLOSURE STATEMENT, MAY RANGE FROM 0.1% AND 100%, DEPENDING ON THE OUTCOME OF NUMEROUS CONTINGENCIES, INCLUDING THE OUTCOME OF THE AMENDED LIEN & RECOURSE CHALLENGE.

ACCORDINGLY, AT THIS TIME, THE COMMITTEE URGES ALL HOLDERS OF CLASS 7 GENERAL UNSECURED CLAIMS TO VOTE TO **REJECT** THE PLAN.

However, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors. **If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.** For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline. Please visit the Committee's website at www.creditorspr.org for any further updates.

A.     **Introduction**

The Committee's members were appointed by the United States Trustee, a unit of the United States Department of Justice, to represent, in a fiduciary capacity, the interests of all general unsecured creditors of PREPA (and other debtors under Title III of PROMESA). These unsecured creditors include, for example, employees, vendors, suppliers, service providers, and

---

[1] All capitalized terms used but not defined in this letter have the meanings set forth in the Plan.

parties with litigation claims. The Committee's seven members serve without pay and represent a broad cross-section of the general unsecured class. Committee members include, among others, suppliers of goods and services, contract counterparties, and litigation claimants.

The Committee is a fiduciary to holders, like you, of unsecured claims[2] against PREPA, and it has worked tirelessly during PREPA's Title III case to protect your interests. Among other things, in October 2019, the Committee objected to a settlement between the Oversight Board and certain holders of PREPA's non-recourse bonds that, if approved, would have allowed more than $8 billion in secured claims on account of such non-recourse bonds. The Committee believed then, and continues to believe today, that the collateral securing the non-recourse bonds consists only of limited funds on deposit in certain specified accounts controlled by the bond trustee, and that, as non-recourse obligations, the non-recourse bonds have no additional or deficiency claim against PREPA.

Several years after the Committee's October 2019 objection, the Oversight Board ultimately decided not to move forward with the proposed settlement and, instead, in the fall of 2022, adopted the Committee's position and filed an amended complaint and related summary judgment motion seeking a ruling from the Court that (a) the PREPA bond claims are secured only by very limited funds held in certain specified accounts (approximately $16 million) and (b) the PREPA bondholders are not entitled to an unsecured deficiency claim for the difference between their more than $8 billion in claims and the limited value of their collateral (*i.e.*, approximately $16 million) because their bond claims only have recourse only to the limited collateral in certain specified accounts. This litigation is referred in the Plan and the Disclosure Statement as the "Amended Lien & Recourse Challenge." On February 1, 2023, the Court heard oral argument on the Oversight Board's and PREPA bondholders' motions for summary judgment, but it has not yet issued a ruling on these matters.

## B. Treatment of Allowed Class 7 General Unsecured Claims

The Plan provides that holders of allowed General Unsecured Claims in Class 7 will receive their *pro rata* share of the General Unsecured Claim Recovery, which is comprised of (a) Avoidance Action Proceeds, (b) the GUC New Bonds (in the form of Series B Bonds), if any, and (c) the GUC CVI.

According to the Disclosure Statement, the Avoidance Actions Proceeds and the GUC CVI have only *de minimis* value, and would provide holders of allowed General Unsecured Claims with an estimated recovery percentage of only 0.1%. Thus, the only component of the General Unsecured Claim Recovery that could provide material recoveries to general unsecured creditors are the GUC New Bonds (in the form of Series B Bonds). **However, the amount of Series B Bonds to be made available to holders of allowed General Unsecured Claims under the Plan is <u>unknown</u> at this time and depends, among other things, on the resolution of the Amended Lien & Recourse Challenge. For that reason, the Disclosure Statement estimates that the recovery to holders of allowed General Unsecured Claims**

---

[2]  Unsecured claims are claims that are not secured by any collateral.

**ranges from 0.1% to 100%, depending on the resolution of the Amended Lien & Recourse Challenge and other contingencies.**

     1.     <u>New Bonds Waterfall</u>

The aggregate amount of New Bonds to be distributed to holders of allowed General Unsecured Claims (Class 7) under the Plan is a function of a complex waterfall (the "<u>New Bonds Waterfall</u>") pursuant to which an aggregate amount of **$5.68 billion** of New Bonds (in the form of Series A Bonds and Series B Bonds) would be issued by Reorganized PREPA and then allocated to various creditor groups, taking into account the outcome of a series of contingencies, including, most notably, the outcome of the Amended Lien & Recourse Challenge.

Importantly, under the New Bonds Waterfall, holders of allowed General Unsecured Claims will **only receive Series B Bonds to the extent any such bonds remain available after mandatory distributions have been made to the Fuel Line Lenders, Bondholders, Monolines, and National**.  The amount of New Bonds that would be so distributed to these creditor groups is not fixed, but, instead, depends on certain contingencies, including the outcome of the Amended Lien & Recourse Challenge.  In fact, depending on the outcome of these contingencies, **it is possible that no Series B Bonds would be available to holders of allowed General Unsecured Claims**.

     2.     <u>Estimated Recovery Percentages for Holders of Allowed General Unsecured Claims</u>

The following table provides the estimated recovery percentages for holders of allowed General Unsecured Claims based on the outcome of two contingencies: (i) the resolution of the Amended Lien & Recourse Challenge and (ii) the aggregate amount of allowed General Unsecured Claims.

In particular, as it relates to the Amended Lien & Recourse Challenge, the recovery table below illustrates three potential outcomes:

     a.     the Bondholders' security interest is limited to the funds in certain specified accounts ***and*** the Bondholders have no recourse to PREPA's assets beyond the funds in such specified accounts;

     b.     the Bondholders' security interest is limited to the funds in certain specified accounts ***but*** the Bondholders have recourse to PREPA's present and future revenues (*i.e.*, they have Unsecured Deficiency Claims); and

     c.     the Bondholders are secured by, and have recourse to, all of PREPA's present and future revenues.

Moreover, as it relates to the aggregate size of allowed General Unsecured Claims, the recovery table below shows three illustrative examples, namely, $800 million in allowed claims, $1.2 billion in allowed claims, and $1.6 billion in allowed claims.

*As the below table illustrates, the recovery percentages for holders of allowed General Unsecured Claims cannot be determined with any specificity at this time.*

| | | Outcome in Amended Lien & Recourse Challenge | | |
|---|---|---|---|---|
| | | Security Interest Limited to Funds in Specified Accounts and No Recourse Beyond Such Funds | Security Interest Limited to Funds in Specified Accounts, but Recourse to PREPA's Present and Future Revenues | Security Interest, and Recourse to, All Present and Future Revenues |
| **Aggregate Amount of Allowed General Unsecured Claims** | **$800 million** | 100.00% | 46.5% | 0.10%+ |
| | **$1.2 billion** | 100.00% | 44.3% | 0.07%+ |
| | **$1.6 billion** | 100.00% | 42.4% | 0.05%+ |

## C.   What's the Problem with the Plan?

The Committee believes that the Plan is not confirmable, for a variety of reasons.[3]  First and foremost, under the Plan, various groups of unsecured creditors stand to receive **substantially greater** recoveries than holders of General Unsecured Claims in Class 7. Moreover, and unlike the distribution to holders of General Unsecured Claims, the distributions to these other unsecured creditors do **not** depend on the outcome of the Amended Lien & Recourse Challenge.  In other words, while other creditors receive substantial, guaranteed recoveries, general unsecured creditors face a highly uncertain and contingent recovery under the Plan (as illustrated in the above recovery table).

For example, the Committee believes that:

- The Plan provides that unsecured Fuel Line Lenders receive a guaranteed distribution (which does not depend on the outcome of the Amended Lien & Recourse Challenge) in the form of Series A Bonds equal to approximately **92.7%** of their total allowed claims.  Moreover, the Series A Bonds to be

---

[3]   For the avoidance of doubt, the Oversight Board does not agree with the Committee's views regarding the Plan, including the recovery percentages provided below for the Fuel Line Lenders and National.

received by the Fuel Line Lenders are of significantly higher quality than the Series B Bonds to be distributed to general unsecured creditors, including as it relates to maturity (15 years vs. 50 years), expected repayment date (5 years vs. 35 years), and payment priority (payment of principal on the Series A Bonds must be paid before payment of principal on the Series B Bonds).

- The Plan provides National (one of the monolines that insured PREPA's non-recourse bonds) with an aggregate distribution in the form of Series B Bonds of more than **83%** of their bond claims. As with the distribution to the unsecured Fuel Line Lenders, National's distribution does not depend on the outcome of the Amended Lien & Recourse Challenge, even though the Committee believes that National should have no claims at all (beyond a claim secured by very limited funds in the Sinking Fund).

**Please note that the Committee is also considering holding in-person creditor information sessions in Puerto Rico to explain, among other things, the New Bonds Waterfall and the Committee's opposition to the Plan. Please visit the Committee's website at www.creditorspr.org for details regarding the time and location of these sessions.**

## D.     Committee's Recommendation

Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan. **That said, for the reasons stated above the Committee recommends that you vote to reject the Plan.**

**As noted, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors. If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.   For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline.  Please visit the Committee's website at www.creditorspr.org for any further updates.**

## E.     Submitting Your Ballot

The Oversight Board has provided Ballots herewith for holders of claims in Class 7 to utilize in order to vote to accept or reject the Plan, which Ballots must be returned in accordance with the procedures set forth in the ballot instruction sheet and the Disclosure Statement. **Please read the directions on the Ballot carefully and complete your Ballot in its entirety before returning it.  Your Ballot must be returned so as to be actually received by the Balloting Agent no later than the Voting Deadline, *i.e.*, 5:00 p.m. (Atlantic Standard Time) on _____, 2023**.

5

* * *

The positions taken by the Committee in this Letter are those of the Committee and/or its advisors and have not been approved by or endorsed by the Bankruptcy Court.   Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan.

**YOU ARE URGED TO CAREFULLY READ THE DISCLOSURE STATEMENT AND THE PLAN.  THE DESCRIPTION OF THE PLAN IN THIS COMMITTEE LETTER IS INTENDED TO BE A SUMMARY ONLY.**

**THIS COMMITTEE LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE.  THE COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN PREPA's TITLE III CASE.  THE COMMITTEE CANNOT PROVIDE ANY ASSURANCES REGARDING THE AGGREGATE AMOUNT OF GENERAL UNSECURED CLAIMS THAT WILL ULTIMATELY BE ALLOWED, OR THE RATE OF RECOVERY THAT WILL ULTIMATELY BE REALIZED BY ANY HOLDER OF SUCH A CLAIM.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE.**

*THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
THE PUERTO RICO ELECTRIC POWER AUTHORITY*

**Schedule 7(b)**

**Plan Summary**

**Summary of Key Components of the Plan of Adjustment**

Except for Administrative Expense Claims and Professional Claims, which are not classified and do not vote on the Plan, all Claims are divided into classes under the Plan. Under the Bankruptcy Code, a plan may place a claim in a particular class only if such claim is substantially similar to the other claims of such class. Under Section 301(e) of PROMESA, in determining whether claims are "substantially similar" to one another, the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims. The following table shows the classes of claims against the Debtor, the approximate estimated claim amount, and the approximate percentage return or range of percentage returns proposed to be paid to the holders of claims in each class.

The amount a creditor may actually recover and the form of consideration a creditor may receive are dependent upon, among other things, the outcome of the Amended Lien & Recourse Challenge, as described in Section I of this Disclosure Statement. The amount a creditor may actually recover could vary materially from the summary below. The Ad Hoc Group believes that Series B Bonds are worth substantially less than their stated amount due to what they assert are off-market terms and purported lack of covenants and remedies.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| Settling Bondholder Claims | Class 1 | $74,900,593.18 | 100.00% if Oversight Board wins recourse and lien counts<br>50.00% if Oversight Board loses lien counts but wins recourse counts, or loses both | Pro rata shares of: Cash deposited in Sinking Fund, Series B Bonds, CVI |
| Non-Settling Bondholder and Non-Settling Monoline Claims | Class 2 | [$7,565,470,824.09][89] | [0.21]% if Oversight Board wins lien and recourse counts<br>[46.49]% if Oversight Board wins lien counts but loses recourse counts<br>[51.53]% if Oversight Board loses both lien and recourse counts [90] | Pro rata shares of: (i) Cash deposited in Sinking Fund, (ii) Series B Bonds, (i) if there is a Deficiency Claim, General Unsecured Claim Recovery, and/or (ii) if Class 2 votes to accept the Plan and PREPA Revenue Bonds are recourse solely to |

---

[89]   This number represents the remaining asserted Bond Claims. The Allowed amount of Non-Settling Bondholder and Non-Settling Monoline Claims will be determined following the Amended Lien & Recourse Challenge Final Resolution.

[90]   Certain bondholders have argued that PREPA is required under PROMESA to pay to creditors more than the $5.68 billion currently contemplated under the Plan. If these creditors prevail on their argument, recoveries for Non-Settling Bondholders could exceed those provided in the chart.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| | | | | the Sinking Fund, CVI |
| Pension Claim | Class 3 | $3.955 billion[91] | 86% (of Petition Date claim amount) | Cash, Series B Bonds |
| Fuel Line Loan Claims | Class 4 | $700,887,093.58 | 84.00–100.00%[92] | Series A Bonds, additional Series A Bonds or Cash, Remaining New Bonds |
| National Insured Bond Claims | Class 5 | $836,145,928.13 | 71.65%[93] | Series B Bonds |
| National Reimbursement Claim | Class 6 | [244,728,681.25][94] | 20.00% | Series B Bonds |
| General Unsecured Claims | Class 7 | $800,000,000.00[95] | 0.10–100.00% | General Unsecured Claim Recovery[96] |

---

[91] This represents the estimated present value of cash payments to be made by PREPA to the PREPA ERS under the PREPA ERS Regulations as of the Petition Date. Accounting for payments made to SREAEE during the case, this amount has come down to $3.622 billion.

[92] The Ad Hoc Group asserts the Fuel Line Lenders are receiving at least $61,324,709 in consummations costs, professional fees, and interest accrual per the terms of the Fuel Line Lender PSA in addition to their base recovery of 84%. The Ad Hoc Group also asserts this amount does not include amounts for the continued accrual of interest on the Series A Bonds through an Effective Date beyond July 1, 2023, up to one year of total interest accrual.

[93] The Ad Hoc Group asserts National is receiving $97,943,887.64 in consummation and structuring costs, as well as receiving additional recoveries on its reimbursement claim per the terms of the National PSA in addition to its base recovery of 71.65%. The Ad Hoc Group also asserts this amount does not include amounts for the continued accrual of the National Reimbursement Claim in the event of an Effective Date beyond July 1, 2023, or the National pro rata share of the contemplated Interim Charge.

[94] Pursuant to the Oversight Board's proposed settlement of the National Reimbursement Claim, the Oversight Board proposes to allow the National Reimbursement Claim in the amount of $244,728,681.25 (which will be the accrued amount of this claim as of July 1, 2023). This number may be higher in the event the Effective Date is beyond July 1, 2023.

[95] For an explanation of the Oversight Board's estimate, see Section II.B.8.

[96] The General Unsecured Claim Recovery is payable from the GUC Trust Assets, which are comprised of (a) the Avoidance Action Proceeds, (b) the GUC New Bonds, if any, and (c) the GUC CVI.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| Vitol Claim | Class 8 | $41,457,382.88 | 0.05–50.00% | General Unsecured Claim Recovery |
| Assured Insured Interest Rate Swap Claims | Class 9 | [TBD][97] | [0.21–51.53]% | Treatment provided to Class 2 |
| Ordinary Course Customer Claims | Class 10 | $235,309 | 100.00% | Cash |
| Eminent Domain/Inverse Condemnation Claims | Class 11 | $2,437,556 | **If payment in full is required:** 100.00%[98] | Cash |
| | | | **If Claims are dischargeable:** 0.10-100.00% | General Unsecured Claim Recovery |
| Federal Claims | Class 12 | $16,859,577 | **If payment in full is required pursuant to PROMESA Section 304(h):** 100.00%[99] | Treatment required by PROMESA Section 304(h) |
| | | | **If payment in full is not required:** 0.10–100.00% | General Unsecured Claim Recovery |
| Convenience Claims | Class 13 | Unknown | 100.00%[100] | Cash |
| Section 510(b) Subordinated Claims | Class 14 | Unknown | 0.00% | N/A |

Below is a chart setting forth in detail the potential recoveries to Settling Bondholders, Non-Settling Bondholders and Non-Settling Monolines, Fuel Line Lenders, National, holders of General Unsecured Claims, and Vitol based on different outcomes with respect to the Amended Lien and Recourse Challenge. The chart also illustrates the number of excess New Bonds that may remain after all allowable claims have been paid in full. At Reorganized PREPA's discretion, such bonds either would be deemed to have not been issued by Reorganized PREPA, or would be issued and distributed to the PREPA or the PREPA PayGo Trust.

---

[97] The Oversight Board reserves the right to object to the Assured Insured Interest Rate Swap Claims.

[98] The Plan provides that Eminent Domain/Inverse Condemnation Claims shall receive their *pro rata* share of the General Unsecured Claim recovery. If the Court declines in the Confirmation Order to confirm the Plan due to such treatment, the treatment shall automatically convert, without further action from the Debtor, such that such Holders will receive 100% of the unpaid balance of their claims in Cash unless (a) the Debtor appeals the Court's denial of the Plan's treatment of such Claims as General Unsecured Claims, (b) such appeal is ultimately successful, and (c) a Final Order is entered holding that such claims can be Impaired.

[99] If a Federal Claim is required to be paid in full pursuant to section 304(h) of PROMESA, the holder of such claim will receive a 100% recovery. Otherwise, the holder will receive its Pro Rata Share of the General Unsecured Claim Recovery.

[100] If Convenience Claims exceed the Convenience Cap of $1,000,000.00, holders of Allowed Convenience Claims shall receive their Pro Rata Share of the Convenience Cap.

[*Chart Begins on Following Page*]

**PREPA Plan of Adjustment Illustrative Recoveries[1]**

| FOMB wins on Lien Counts and Recourse Counts | | FOMB wins on Lien Counts and Loses on Recourse Counts | | FOMB loses on Lien Counts[2] and Recourse Counts | |
|---|---|---|---|---|---|
| Settling Bonds | 100% | Settling Bonds | 50% | Settling Bonds | 50% |
| Non-Settling Bonds | 0.21% | Non-Settling Bonds | 46.49% | Non-Settling Bonds | 51.53% |
| National[3] | 71.65% | National | 71.65% | National | 71.65% |
| FLLs[3] | 100.00% | FLLs | 84.00% | FLLs | 84.00% |
| GUCs | 100.00% | GUCs | 46.49% | GUCs* | 0.10%+ |
| Vitol | 50.00% | Vitol | 23.25% | Vitol* | 0.05%+ |
| PREPA PayGo Trust | $698.23m | PREPA PayGo Trust | $0 | PREPA PayGo Trust | $0 |
| Excess New Bonds | $2.22b | Excess New Bonds | $0 | Excess New Bonds | $0 |

\* Non-zero recovery to recipients of GUC Trust proceeds to reflect recoveries on account of avoidance action proceeds.

1 The numbers in this exhibit are for illustrative purposes. Neither the Oversight Board, PREPA, nor their respective advisors make any representations regarding the accuracy of these figures, which are subject in all respects to the terms of the Plan. Claimholders should consult their own advisors regarding potential recoveries. The above numbers are based on cash flow projected on the New Bonds and other consideration under the plan and do not account for whether the instruments will trade at their par value, which the Ad Hoc Group believes they will not. Since no cash flow is currently projected under the CVI, recoveries on account of CVI distributions is not included.

2 Certain bondholders have asserted that, if they prevail on the Lien Counts in the Amended Lien & Recourse Challenge, their collateral would be worth more than what is provided to them under the Plan. The Oversight Board disputes that contention. Accordingly, for purposes of this illustration only, it is assumed that Bondholders' collateral if they prevail on the Lien Counts would be valued to be the same as the remaining Series B Bonds available for distribution.

3 In all scenarios reflected in the chart, National will also receive $97,943,887.64 in consummation and structuring costs, as well as receiving additional recoveries on its reimbursement claim per the terms of the National PSA, while the Fuel Line Lenders will receive $61,324,709 in consummations costs, professional fees, and interest accrual per the terms of the Fuel Line Lender PSA. Since this consideration is not provided on account of their respective claims, but on account of other value provided, they are not incorporated into the above calculation of these creditors' respective recoveries on the par amount of their claims. Moreover, the Fuel Line Lenders will; receive Series A Bonds which accrue up to 1 years' worth of interest from the date the Fuel Line Lender PSA is effective, payable in Series A Bonds or Cash. Since the amount of interest is currently unknown, such amounts are not reflected in the Fuel Line Lenders' illustrative recoveries above.

The Debtor believes the Plan's contemplated restructuring is feasible and in the best interests of the Debtor's creditors. If confirmation of the Plan were to be denied, the Debtor's options would be either (i) for the Oversight Board to propose an alternate Title III plan of adjustment or (ii) for the Title III Cases to be dismissed, in which event the automatic stay would be terminated and multi-party, multifaceted litigation would ensue (including litigation commenced by Bondholders and other parties against PREPA), as holders of claims compete for the limited resources available to pay those claims.

The following overview summarizes certain key components of the Plan.  The overview is qualified in its entirety by the full text of the Plan.

### Fuel Line Lender PSA

On December 1, 2022, the Oversight Board, as PREPA's Title III Representative, and the Fuel Line Lenders entered into the Fuel Line Lender PSA, which generally resolves the Fuel Line Lenders' claims and asserted priority treatment as "Current Expenses" under the Trust Agreement and provides for the Fuel Line Lenders to support the Plan.  Pursuant to the Fuel Line Lender PSA, the Fuel Line Lenders will be receiving Series A Bonds, which will be current interest bonds with a 6.0% coupon, at an exchange ratio of 84% of the Allowed Fuel Line Loan Claim (as defined in the Plan).

Series A Bonds shall have a final maturity of fifteen (15) years from the Effective Date, with an expected repayment of five (5) years from the Effective Date based on upon 2022 Fiscal Plan Projections.  The Series A Bonds shall be issued on the Effective Date but shall accrue interest from the deemed issuance date of December 1, 2022 for purposes of the calculation of interest accrued; provided, however, the accrual of interest prior to the Effective Date shall be capped at one (1) year.  Such interest shall be payable in either cash or in the form of additional Series A Bonds at the Oversight Board's discretion.

Additionally, the Fuel Line Lenders will be entitled to receive on account of their Remaining Claim[101] a Pro Rata Share of Net Remaining New Bonds, if any, available for distribution to the Remaining Series B Bond Claims Pool (each, as defined in the Plan).  Finally, Fuel Line Lenders shall also receive certain consummation fees and professional fee reimbursement fees, in the amounts of $15,000,000 and up to $11,000,000, respectively, each of which shall be payable in either cash or in the form of additional Series A Bonds at the Oversight Board's discretion.

In exchange for such consideration, the Fuel Line Lenders have agreed to support confirmation of the Plan and, following the Effective Date, move to dismiss Adv. Pro. 19-00396 with prejudice.

### National Settlement

On January 31, 2023, the Oversight Board, as PREPA's Title III Representative, and National entered into the National PSA, which sets out the terms of the settlement of all Claims, interests, and controversies among PREPA, the Oversight Board, and National (the "National Settlement").  As a result of the National Settlement, National supports the Plan.  The National Settlement's terms have been embodied in the Plan and the Debtor is seeking its approval pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code via entry of the Confirmation Order, which will include findings that, among other things, the National Settlement is in the best

---

[101] "*Remaining Claim*," as it pertains to the Fuel Line Loan Claims, shall mean the Allowed Fuel Line Loan Claim minus the amount of Series A Bonds received on account of the Allowed Fuel Line Loan Claim (except for Series A Bonds received, if any, on account of payment of accrued interest prior to the Effective Date).

interests of PREPA, its creditors, and other parties in interest, is fair and equitable, and is well within the range of reasonableness.

### Principal Terms of the National PSA

The National PSA, among other things, generally resolves National's claims arising from Bonds it owns or insures, and its Asserted Reimbursement Claim, and provides for National to support the Plan. Pursuant to the National PSA, National will be receiving Series B Bonds at an exchange ratio of 71.65% of the Allowed National Insured Bond Claim (as defined in the Plan). National will also be receiving Series B Bonds at an exchange ratio of 20.00% of the Allowed National Reimbursement Claim (as defined in the Plan).

Pursuant to the National PSA, the Oversight Board and PREPA shall use their reasonable best efforts to cause PREPA to file, or cause PREPA to request that LUMA Energy file, an application with PREB to obtain approval of the equivalent of a one cent ($0.01)/KWH volumetric charge from the effective date of the National PSA times the National Insured Bond Claims divided by the PREPA Revenue Bond Claims, which, subject to PREB approval, shall be implemented by PREPA and added to customers' bills during the period from approval thereof by PREB up to and including the Effective Date (the "Interim Charge").

Subject to necessary approvals from PREB, from the effective date of the National PSA to the Plan Effective Date, National shall receive its pro rata share of revenues generated the Interim Charge.[102] If, however, PREB approval is not obtained for the Interim Charge, PREPA shall not be obligated to make interim payments to National. Cumulative revenues received by National on account of the Interim Charge shall not exceed National's existing coupon on Bonds it owns and/or insures. If National receives revenues from the Interim Charge and the Plan is not confirmed nor consummated, the amounts received shall constitute a reduction of the distributions to be received by National under a future plan, settlement, litigated judgment, or other resolution of National's claims, without further order from the Court.

National shall also receive certain consummation fees and structuring fees, in the amounts of 3% and 2.86% of the Allowed National Insured Bond Claim payable in either cash or in the form of additional Series B Bonds at the Oversight Board's discretion.

If a CVI is offered to other holders of Bonds pursuant to the Amended Plan, National shall receive CVI on account of its Bond claim and payments there from equal to fifty percent (50%) of the recovery of such holders' pro rata share until such other holders recover seventy-one and eighty-six one hundredths percent (71.65%) of their Bond claims and thereafter shall share, on a pro rata basis, equally with such holders.

Unlike certain other non-litigating classes of creditors, National will not receive additional Series B Bonds if the Oversight Board prevails on the Lien Counts and/or Recourse Counts in the Amended Lien & Recourse Challenge. In other words, National shall not share in Gross

---

[102] The Oversight Board anticipates that only the portion of the Interim Charge required to compensate National's *pro rata* portion will be charged. Thus, the Interim Charge will be slightly under 0.1 c/kWh.

Remaining New Bonds, Net Remaining New Bonds, or Excess New Bonds, if any, distributed under the Plan.

In exchange for such consideration, National has agreed to support confirmation of the Plan.

Additionally, as further described below, pursuant to the National PSA, in connection with the Oversight Board's pursuit of confirmation of the Plan, the Oversight Board will seek approval of its proposed settlement with National of the National Reimbursement Claim.

### National Reimbursement Claim

In connection with the issuance of the Bonds, National issued certain municipal bond insurance policies, insuring the payment of principal and interest on the Bonds.  In connection with the issuance of the insurance policies, PREPA entered into certain Bond insurance agreements with National, pursuant to which National asserts that PREPA agreed, to the extent that National made payments of principal and interest on or incurs any other costs with respect to the Bonds insured by PREPA, to reimburse National, with interest, for any and all such payments, and costs (i.e., the Asserted Reimbursement Claim).

Pursuant to the Oversight Board's proposed settlement of the National Reimbursement Claim, the Oversight Board proposes to allow the National Reimbursement Claim in the amount of $244,728,681.25 (which will be the accrued amount of this claim as of July 1, 2023), and provide the holder of such claim with Series B Bonds in a face amount equal to 20.0% thereof. The settlement of the National Reimbursement Claim avoids the risk that such claim could be allowed in full, including aspects that derive from payments of interest by National since the Petition Date, and secured by all net or gross revenues of PREPA, if the Oversight Board does not prevail in the Amended Lien & Recourse Challenge and the Court were to determine National is fully secured.  This recovery amount reflects a deep discount on account of this claim, in fact the deepest discount on any claim against PREPA proposed in the Plan.

The Oversight Board will demonstrate at confirmation that the proposed settlement of the National Reimbursement Claim should be approved pursuant to Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019.  If the Court finds that such settlement does not satisfy the standard for approval of settlements, or otherwise finds that the proposed settlement and treatment of National's claims under the Plan renders the Plan unconfirmable, such finding shall not give rise to an event of termination for National under the National PSA, and the settlement and the treatment of National's claims shall, without further action, convert to a settlement of National's claims, as the case may be, that eliminates the obligation to issue Series B Bonds on account of the National Reimbursement Claim and any payments for debt service and any legal, consummation, or other fees arising from, relating to, or on account of the National Reimbursement Claim; provided, that in such circumstance, National will have the option to forego all consideration under the National PSA, including the fees and expenses set forth in Article II.D.2, and, in exchange, receive the same treatment as another settling Class of Holders of PREPA Revenue Bonds Claims, so long as the settlement with such class whose recovery National would receive was reached prior to the earlier to occur of (i) any substantive ruling on the claims and counterclaims asserted in the Amended Lien & Recourse Challenge that Holders of PREPA

Revenue Bonds are secured by Revenues outside of the Sinking Fund, and (ii) an indication or a determination, either oral or written, at a hearing or otherwise, by the Title III Court that the Holders of PREPA Revenue Bonds are secured by Revenues outside of the Sinking Fund.

## Forms of Consideration Under the Plan

The consideration to be distributed to creditors under the Plan consists of the following, each of which is described in detail below:

    i.    monies deposited in the Sinking Fund;

    ii.    Up to approximately $5.68 billion in New Bonds to be issued on the Effective Date;

    iii.    the CVI, to be issued on the Effective Date in the notional amount of the sum of the GUC CVI, Settling CVI, and Non-Settling CVI;

    iv.    The Avoidance Action Proceeds, consisting of the net cash consideration received by PREPA in connection with the Avoidance Actions; and

    v.    cash flow as budgeted annually solely for payments to PREPA PayGo Trust on account of the Pension Claim.

## Overview of New Bonds to be Issued on the Effective Date

On the Effective Date, Reorganized PREPA shall issue two series of New Bonds—Series A Bonds and Series B Bonds.

Series A Bonds shall have a final maturity of fifteen (15) years from the Effective Date, with an expected repayment of five (5) years from the Effective Date based on upon 2022 Fiscal Plan Projections. Series A Bonds shall bear interest at a rate of 6.00%, payable semi-annually in cash. The Series A Bonds shall be issued on the Effective Date but shall accrue interest from the deemed issuance date of December 1, 2022 for purposes of the calculation of interest accrued; *provided*, *however*, the accrual of interest prior to the Effective Date shall not exceed one (1) year and that the interest accrued prior to the Effective Date shall be payable upon the Effective Date in the form of Series A Bonds or cash, at the Oversight Board's sole discretion. The Series A Bonds will be issued in a principal amount sufficient to comply with the terms of the Fuel Line Lender PSA, which shall be approximately $650,000,000.

Series B Bonds shall have a final stated maturity of fifty (50) years from the Effective Date. The Series B Bonds shall be dated as of the Effective Date. Series B Bonds may be issued in the form of current interest bonds or convertible capital appreciation bonds and shall bear interest rates at a range of six percent (6.00%) to six and seventy-five hundredths percent (6.75%).

Series B Bonds shall be issued in two series: Series B-1 Bonds (Current Interest Bonds) and Series B-2 Bonds (Convertible Capital Appreciation Bonds). The Series B-1 Bonds will be current interest bonds and shall bear interest at a rate of six percent (6.00%) per annum payable semi-annually, with an expected repayment of no later than thirty-four (34) years from the Effective Date based on 2022 Fiscal Plan Projections, subject to change based on load projections

in subsequent PREPA Fiscal Plans. The Series B-1 Bonds have priority in principal repayment over the Series B-2 Bonds. Series B-1 Bonds shall be issued in the principal amount of approximately $4.63 billion.

Series B-2 Bonds will be convertible capital appreciation bonds and shall bear interest at a rate of six and seventy-five one-hundredths percent (6.75%) per annum, accreting annually until July 1, 2028, at which point the Series B-2 Bonds shall convert to paying interest semi-annually, with an expected repayment of thirty-five (35) years from the Effective Date based upon 2022 Fiscal Plan Projections, subject to change based on load projections in subsequent PREPA Fiscal Plans. The Series B-2 Bonds shall be issued in an amount equal to the Administrative Expense Bonds Amount, with a maturity value of approximately $557,000,000 (with an assumed Effective Date of July 1, 2023 and an original principal value of approximately $400,000,000).

Where Reorganized PREPA is obligated to distribute Series B Bonds pursuant to the Plan, other than the Administrative Expense Bonds, Reorganized PREPA shall distribute Series B-1 Bonds.

The New Bonds shall have an aggregate original principal amount of up to approximately $5.68 billion.[103]  Series A Bonds shall be issued in a principal amount sufficient to comply with the terms of the Fuel Line Lender PSA.  The Series B Bonds shall be issued in a principal amount equal to the above referenced principal amounts.

 The New Bonds shall be secured by Reorganized PREPA's Net Revenues and the right to receive Net Revenues.  All Revenues shall be deposited in the "General Fund" held by Reorganized PREPA.  On the first business day of each month, Reorganized PREPA shall apply amounts in the following order of priority (the "Payment Waterfall"):

-   *First*, to the payment of Operating Expenses;

-   *Second*, to New Master Trustee fees and expenses not to exceed $100,000 per year;

-   *Third*, to the "Debt Service Fund" held by the New Master Trustee up to the amount of the Legacy Charge Revenues, and from and after the Series B Bond Defeasance Date and until the CVI Maturity Date, up to the amount of the Remaining Legacy Charge Revenues[104]; and

-   *Fourth*, to Reorganized PREPA for use as set forth in the New Master Indenture.

There shall be no event of default on the New Bonds  (prior to stated final maturity of the Series A Bonds, solely with respect to the Series A Bonds, and generally with respect to the Series B Bonds) for failure to pay scheduled debt service so long as Reorganized PREPA (a) takes

---

[103] The Ad Hoc Group believes that PREPA can afford to issue substantially more than the $5.68 billion in New Bonds.

[104] "Remaining Legacy Charge" means the fixed fee component of the Legacy Charge in place as of the Effective Date, from and after the Series B Bond Defeasance Date, through the CVI Maturity Date.

reasonable actions to (i) charge and collect the Legacy Charge,[105] (ii) collect the Revenues generated by the Legacy Charge, and (iii) deposit the full amount of Net Revenues up to the amount of the Legacy Charge Revenues into the Debt Service Fund after providing for distributions made in accordance with the Payment Waterfall, and (b) complies with the Interest Rate Covenant.

With respect to each series of New Bonds, all debt service that is not paid when due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid in full and shall be paid. Interest shall not accrue on outstanding obligations under the New Bonds at the regular coupon rate after its respective stated maturity; only unpaid interest accrued prior to stated maturity and principal will be payable following the stated maturity if any remains outstanding at that time, although the Interest Rate Covenant would no longer apply.

A detailed description of the New Bonds to be issued pursuant to the plan can be found in Section VI.F of this Disclosure Statement.

### Overview of CVI to be Issued on the Effective Date

On the Effective Date, Reorganized PREPA shall issue the CVI with a 0.00% coupon, a final maturity date of thirty-five (35) years after the Effective Date, which shall only be payable if the New Bonds and any Refunding Bonds are paid in full prior to their expected 35 year repayment. Payments shall be made on the CVI only after the occurrence of the Series B Bond Defeasance Date, so long as such date occurs prior to the CVI Maturity Date. If the Series B Bond Defeasance Date occurs prior to the CVI Maturity Date, the CVI shall be payable from that portion of Net Revenues constituting the Remaining Legacy Charge Revenues deposited to the credit of the Debt Service Fund in accordance with the Payment Waterfall until the earlier of (a) the date on which the CVI Notional Amount has been paid in full and (b) the CVI Maturity Date. There shall be no event of default on the CVI so long as Reorganized PREPA takes reasonable actions to collect Revenues generated by the Remaining Legacy Charge and deposits the full amount of Net Revenues up to the amount of the Remaining Legacy Charge Revenues into the Debt Service Fund.

Because the New Bonds are only expected to be repaid in 35 years under the projections in the Certified Fiscal Plan, the CVI is "truly contingent" because it would only generate any payment if PREPA's realized load exceeds the Certified Fiscal Plan projections, and Legacy Charge Revenues remain after payment of operating expenses, notwithstanding the expiration of the Interest Rate Covenant.

---

[105] The Plan does not currently provide that PREPA's failure to charge and collect any rates other than the Legacy Charge is an event of default under the New Bonds. It does, provide, however, that PREPA covenants to "make reasonable best efforts to (a) continue to levy and collect rates, fees, and charges, including, but not limited to, the Legacy Charge and the Remaining Legacy Charge and (b) deposit Net Revenues collected from such rates, fees, and charges into the Debt Service Fund in accordance with the Payment Waterfall." Plan Art. XIX.H.1. The Oversight Board anticipates adding this provision to the New Master Indenture.

**Overview of Legacy Charge**

<u>Legacy Charge</u>

PREPA's current rates are insufficient to provide for the repayment of legacy or restructured debts after payment of PREPA's operating expenses.  Accordingly, to provide sufficient Net Revenues to provide a source of repayment of the New Bonds to be issued by PREPA under the Plan, the Plan requires the Debtor to implement the Legacy Charge, which will be an additional charge to PREPA's current rates.

The Legacy Charge is comprised of two components, a fixed monthly flat fee (the "<u>Flat Fee</u>") and a volumetric fee ("<u>Volumetric Charge</u>"), set at levels for each customer class, to be included in customer rates pursuant to the Plan and Confirmation Order.  This hybrid structure accounts for important objectives, including providing proper recompense to PREPA's legacy creditors, while minimizing: (i) the strain of increased rates on low-income and vulnerable customers, (ii) revenue losses due to customers either reducing their electricity consumption or transitioning to alternative electricity supplies.  The Oversight Board reserves its rights and may amend the rates prior to the confirmation objection deadline, upon further discussion with PREB, LUMA Energy and AAFAF, in a manner that will provide similar recoveries to creditors to those provided for in the Plan.

The Legacy Charge will have different tiers that will be assessed for each of PREPA's existing customer classes based on various factors, such as a respective capacity to tolerate rate increases.  Solely for purposes of assessing the Legacy Charge, the Plan will also provide for the creation of one new exemption from the Flat Fee and a portion of the Volumetric Charge for other low-income residential customers not already falling within an exempted customer class (see below).

The increase in Net Revenues generated from inclusion of the Legacy Charge will fund debt service on the New Bonds after payment of PREPA's Operating Expenses, as specified in the Plan.  The Legacy Charge is calculated so that the increase in Net Revenues is projected to cover the debt issued under the Plan within 35 years. The Legacy Charge will remain in place for the later of (i) the maturity of the CVI[106] and (ii) payment in full of the Series B Bonds.  Because the increase in Net Revenues to be generated from the Legacy Charge is required by the Plan to pay debt service, and otherwise necessary to support repayment of the New Bonds issued under the Plan, the Oversight Board asserts that PREB is required under Puerto Rico law to approve the Legacy Charge rate increase, provided, that PREPA with the approval of PREB will be able to amend the Legacy Charge in an economically neutral manner subject to the Amendment Test (as defined in the Plan).  If repayment in full of the principal of the New Bonds occurs prior to the maturity of the CVI, revenues from the fixed fee component of the Legacy Charge in place as of the Effective Date thereafter will fund distributions to holders of CVI until the maturity of the CVI. Risks relating to the payment of New Bonds and CVI are discussed in Section VIII.

---

[106] The Legacy Charge that would support the CVI is limited to revenues from the Fixed Fee component of the Legacy Chare in place as of the Effective Date.

Application of the Legacy Charge: First, PREPA will charge the Flat Fee to all customers each month unless the customer qualifies for an exemption from the Flat Fee. The amount paid for the Flat Fee portion of the Legacy Charge is a connection charge assessed on each non-exempt customer connected to PREPA's electricity grid. Second, PREPA will charge a Volumetric Charge based on each customer's consumption of electricity supplied by PREPA. The Volumetric Charge will be assessed on a cents per-kilowatt hour basis, the amount of which will vary per customer class, for electricity consumed during each billing cycle. Mirroring PREPA's current rate structure, a different Volumetric Charge will be assessed for consumption at or below 500 kWh per month and for consumption above that level for all residential and certain commercial classes.[107] A detailed description of the derivation of the Legacy Charge structure is attached hereto as Exhibit P.

Customers eligible for an exemption from the Flat Fee will also be exempt from paying the Volumetric Charge up to 500 kWh of monthly metered consumption. If an exempt customer's utilization exceeds that threshold, that customer will be charged fifty percent of the Volumetric Charge applicable for such customer class for consumption above the threshold on a per-kilowatt hour basis.

The Debtor intends to provide a new exemption from the Flat Fee and the Volumetric Charge up to 500 kWh for certain customers. This exemption is intended to protect lower-income residential customers, which are the most vulnerable, from further burden. To ensure the most vulnerable customers are not overly strained by the Legacy Charge, PREPA will create a new exemption for qualifying low-income residential customers that are not enrolled in the Lifeline Residential Rate (*Servicio Residencial Especial*) (the LRS rate)[108] or the existing public housing subsidy rate (the RH3 and RFR rates)—the three rate classes that are also exempt and already receive certain subsidies. Residential customers of PREPA will qualify for this new exemption if their Modified Adjusted Gross Income (MAGI) is below a certain threshold similar to the MAGI eligibility levels needed to qualify for Medicaid healthcare benefits in Puerto Rico.[109] It is expected that the new exempt class will overlap with the three existing PREPA rate classes listed above that are exempt from the Legacy Charge, however, it will include additional customers that do not fall into existing exempt rate classes. The Oversight Board is developing a methodology for identifying and applying the specific criteria for the additional exemption from the Legacy Charge, as discussed in footnote 2 on page 4 of Exhibit P, that would not be burdensome to implement and will not change the projected cash flow derived from the Legacy Charge.

PREPA customers currently enrolled in one of PREPA's existing subsidy customer classes, such as those for the elderly, students, customers that depend on lifesaving medical equipment, customers with disabilities, and participants in the Puerto Rico Nutrition Assistance Program (Programa de Asistencia Nutricional), among others, will continue to receive their existing

---

[107] PREPA currently utilizes a 425kWh threshold.

[108] Customers who fulfill the criteria to enroll in the Nutritional Assistance Program are eligible to enroll in the LRS rate.

[109] It has not yet been determined how and how often MAGI threshold levels qualifying for an exemption will be monitored and when a customer no longer qualifies.

subsidies from PREPA without interruption and may or may not be exempt from the Legacy Charge depending on whether they fall within the exempted customer classes mentioned above.

The Legacy Charge will be collected as part of the PREPA bill by PREPA's operator and servicer in the same manner the bills are currently collected.

The level of Flat Fee and Volumetric Charge that different customer classes will incur to support payment of the New Bonds is set forth in the table below. Notably, however, PREPA, with the approval of PREB, subject to the Amendment Test, will have the ability to modify the Flat Fee and Volumetric Charge provided that it will be done in an economically neutral manner, in structure and amounts that do not delay or extend the respective expected repayment date and expected weighted average life of the Series A Bonds and the Series B Bonds, and otherwise that are reasonably acceptable to the Required Fuel Line Lenders, and which will not decrease the projected revenues attributable to the Legacy Charge as of the date of the amendment to the Legacy Charge.[110]

**Legacy Charge Allocation**

| | Fixed Fee ($/month) | Volumetric Charge (</=500 kWH, c/kWH) | Volumetric Charge (>500 kWH, c/kWH) |
|---|---|---|---|
| **RESIDENTIAL** | | | |
| RH3, LRS, RFR | $ - | - | 1.50 |
| GRS 111/112 (Subsidy-eligible) | $ - | - | 1.50 |
| GRS 111/112 (General) | $ 13 | 0.75 | 3.00 |
| **COMMERCIAL** | | | |
| GSS 211 | $ 16.25 | 1.50 | 3.00 |
| GSP 212 | $ 800 | 1.45 | 1.45 |
| GST 213 862 | $ 1,800 | 0.97 | 0.97 |
| **GOVERNMENT** | | | |
| GSS 211 | $ 20 | 1.45 | 2.90 |
| GSP 212 | $ 800 | 1.45 | 1.45 |
| GST 213 862 | $ 1,800 | 0.97 | 0.97 |
| **MUNICIPALITIES** | | | |
| GSS 211 | $ - | - | - |
| GSP 212 | $ - | - | - |

---

[110] The Legacy Charge will be assessed on all of PREPA's customers, except where the Plan specifically exempts some or all of the Flat Fee or Volumetric Charge. While all rate classes are subject to the Legacy Charge, some may currently be "empty" classes that do not have any customers. For the avoidance of doubt, any rate class not identified in the Plan or herein, any class not included in Annex 1 to Plan Schedule B (but included in Annex 2 to Plan Schedule B), any class that is subsequently created, or any existing but empty rate class that subsequently has customers, will be subject to the Legacy Charge and will be classified in a way that does not decrease the projected revenues attributable to the Legacy Charge, unless PREPA, with the approval of PREB, subject to the Amendment Test, will modify the Legacy Charge in an economically neutral manner, which shall not decrease the projected revenues attributable to the Legacy Charge.

| | | | |
|---|---|---|---|
| GST 213 862 | $ - | - | - |
| **INDUSTRIAL** | | | |
| GSS 311 | $ 20 | 2.18 | 2.18 |
| GSP 312 | $ 800 | 2.18 | 2.18 |
| GST 313 | $ 1,800 | 1.45 | 1.45 |
| TOU-T 363 | $ 1,800 | 1.45 | 1.45 |
| LIS 333 | $ 1,800 | 1.45 | 1.45 |
| TOU-T 963 | $ 1,800 | 1.45 | 1.45 |

## PREPA Customer Segmentation[111]

PREPA maintains a differentiated rate structure for its customers depending on their customer class. The descriptions below, in conjunction with any other categorization of customers currently utilized by PREPA, identify categories of PREPA's customer base that may be utilized in establishing how each PREPA customer is charged the Legacy Charge.

## Residential Classes

1. GENERAL RESIDENTIAL SERVICE (GRS) - This rate shall apply to residential customers for domestic uses for a residence or apartment unless they fit into one of the other classes below. This rate may also apply to houses, apartments, and other structures which are primarily intended for residential purposes, where no more than two rooms in which the total connected load does not exceed 500 watts are used by tenant for business or professional purposes.

2. LIFELINE RESIDENTIAL SERVICE (LRS) - This rate shall apply to residential customers, who fulfill the Nutritional Assistance Program criteria, for all domestic uses for a residence or apartment.

3. RESIDENTIAL SERVICE FOR PUBLIC HOUSING PROJECTS (RH3) - This rate shall apply to residential customers of Public Housing Projects supported or subsidized in whole or in part by loans, grants, contributions or appropriations of the federal, state, or municipal governments.

4. RESIDENTIAL FIXED RATE FOR PUBLIC HOUSING UNDER OWNERSHIP OF THE PUBLIC HOUSING ADMINISTRATION (RFR) - The RFR Rate is established by according to the dispositions of Act 22-2016 and is granted to customers residing in a housing unit physically located within a public housing project owned by the Public Housing Administration for all domestic uses.

## Commercial and Industrial Classes

---

[111] PREPA rate book, as of May 2019. Accessible at: https://lumapr.com/wp-content/uploads/2021/07/Tariff-Book-Electric-Service-Rates-and-Riders-Revised-by-Order-05172019-Approved-by-Order-05282019.pdf.

1. GENERAL SERVICE AT SECONDARY DISTRIBUTION VOLTAGE (GSS) **-** This rate shall apply to any non-residential service with a load lower than 50 kVA.  Also, it shall apply to temporary electric power service for limited use in streets, carnivals and others.

2. GENERAL SERVICE AT PRIMARY DISTRIBUTION VOLTAGE (GSP) **-** This rate shall apply to industrial customers and commercial customers.  Service shall be rendered through a single point of connection and a single meter.

3. GENERAL SERVICE AT TRANSMISSION VOLTAGE (GST) **-** This rate shall apply to commercial and industrial customers, connected to the transmission system, that have a demand of 250 kVA or greater, for general uses including motive power, heating, refrigeration, and incidental lighting of industries, hotels, and any other establishment.

4. TIME OF USE AT PRIMARY DISTRIBUTION VOLTAGE (TOU-P) **-** This rate shall apply to commercial and industrial customers with a demand of 1,000 kVA or greater, that: 1. Transfer load from the on-peak period to the off-peak period 2. Add load during the off-peak period 3. Remove load from the on-peak period

5. TIME OF USE AT TRANSMISSION VOLTAGE (TOU-T) **-** This rate shall apply to commercial and industrial customers with a demand of 1,000 kVA or greater, that: 1. Transfer load from the on-peak period to the off-peak period 2. Add load during the off-peak period 3. Remove load from the on-peak period

6. LARGE INDUSTRIAL SERVICE -115 kV (LIS) **-** This rate is exclusively for industries with a demand equal to 12,000 kW or higher, with a load factor equal to 80% or higher, and a monthly average power factor equal to 95% or higher.

7. GENERAL AGRICULTURAL SERVICE AND AQUEDUCT PUMPS OPERATED BY RURAL COMMUNITIES (GAS) **-** This rate applies to farmers and customers dedicated to raising animals.  The service shall be provided for motive power, lighting, irrigation pumps, refrigeration and heating.  Also, this rate applies to customers that operate pumps to supply aqueduct service exclusively in rural communities; incidental lighting related to this operation is permitted.

8. OUTDOOR SPORTS FIELD LIGHTING FOR PARKS WHERE ADMISSION RIGHTS ARE COLLECTED (LP-13) **-** This rate shall apply to sports fields where admission rights are collected having a connected load for outdoor illumination of 500 kilowatts or greater

9. CABLE TV POWER SUPPLIES (CATV) **-** This rate applies to all cable TV power supplies.

10. UNMETERED SERVICE FOR SMALL LOADS (USSL) **-** This rate shall apply to the services of the electric equipment installed on PREPA's pole or structures that operate 24 hours a day, except for that equipment for which PREPA has another rate available (for example: Cable TV).

11. <u>POWER PRODUCERS CONNECTED AT PREPA BUS BAR</u> **-** This rate shall apply to large power producers connected to the 230 kV bus bar that require PREPA's electric power service during startup, programmed maintenance, and outages of its generating equipment.

12. <u>PUBLIC LIGHTING GENERAL (PLG)</u> **-** This rate shall apply to the lighting of streets, ball parks and other parks of free admission, plazas, telephone booths, bus shelters, and traffic and police strobe lights.

## Overview of Avoidance Action Trust

PREPA has identified certain Avoidance Actions, listed on <u>Exhibit L</u>, which will be transferred to the Avoidance Actions Trust on the Effective Date.[112]   On or before the Effective Date, PREPA will enter into the Avoidance Actions Trust Agreement and establish the Avoidance Actions Trust.  The Avoidance Actions Trust Assets will consist of the Avoidance Actions and Cash held by the Avoidance Actions Trustee.  The Avoidance Actions Trust will be governed by a three-member board appointed as of the Effective Date, selected by the Oversight Board. This board will appoint the Avoidance Actions Trustee on or prior to the Effective Date.

The Avoidance Actions Trustee will have the power to litigate or compromise and settle the Avoidance Actions.  On a monthly basis, the Avoidance Actions Trustee will distribute to the GUC Trust all excess cash on hand, which will be part of the General Unsecured Claim Recovery.

## Class Treatment and Potential Variation Based on Contingent Litigation

PREPA is currently involved in various contested matters and adversary proceedings with parties such as the Bondholders and PREPA ERS.  Resolution of these proceedings, whether by decision or settlement, will have a material effect on certain creditors' recovery under the Plan. The following section first summarizes these proceedings and their individual significance, then describes the effect the outcomes of these proceedings will have on creditors' recovery under the Plan.

## Litigation Affecting Distributions Under the Plan

<u>*Amended Lien & Recourse Challenge*</u>

The Oversight Board is currently litigating *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019)

---

[112] The Oversight Board will disclose in a plan supplement whether certain avoidance actions, including what the UCC refers to as the "Fuel Oil Litigation" (Adv Proc. Nos. 19-00381, 19-00384), and other vendor actions, including Adv Proc. No. 19-00384, and/or their proceeds will be added to the Avoidance Actions Trust.  If the Oversight Board determines to transfer such actions or their proceeds to the Avoidance Actions Trust, it would only serve to enhance the GUC recoveries disclosed in the Plan.  These avoidance actions are described in Part V on the Disclosure Statement.  While the Oversight Board will not undertake to value these actions (which would likely involve some estimation of the probability of success), the amount PREPA is seeking to avoid can be determined by reference to the complaint themselves.

(the "Amended Lien & Recourse Challenge"), whereby the Oversight Board seeks to (i) disallow any secured claim held by the Bondholders beyond the funds actually deposited in the Sinking Fund (the "Lien Scope Counts"); and (ii) limit any potential recourse, secured or unsecured, to the monies deposited in the in the aforementioned funds (the "Recourse Counts").

If the Title III Court finds that the Bond Trustee's security interest and recourse is limited to the Sinking Fund, then PREPA may be able to satisfy the approximately $8.5 billion in asserted Bond claims by providing the monies currently in the Sinking Fund, thus greatly enhancing the recoveries of many of PREPA's other creditors.

If the Title III Court holds the security interest is limited in the manner described above, but that the Bond Trustee has an unsecured deficiency claim against PREPA for the amount not satisfied by the monies in the Sinking Fund, then such deficiency claim would share *pro rata* with PREPA's other General Unsecured Claims, significantly diluting such claimholders' recoveries.

Finally, if the Title III Court determines the Bond Trustee has a security interest in PREPA's present or future net or gross revenues, the Bondholders will receive Series B Bonds in a face amount equal to the value of their collateral, up to all Series B Bonds available for distribution under the Plan and subject to Series B Bonds provided to the Settling Bondholders. In addition, the Ad Hoc Group believes that the value of the Series B Bonds may be substantially less than their face amount because it insists they are not market securities. To the extent the Series B Bonds are insufficient to pay the Bond Trustee the value of its collateral, the Bond Trustee may argue at confirmation that PREPA is obligated to issue additional Series B Bonds or otherwise provide for additional payment to the Bond Trustee not currently contemplated by the Plan. In such circumstance, the Plan may not be confirmable or feasible without material amendments. Additionally, in this scenario, the Bond Trustee may also have an unsecured deficiency claim against PREPA, which claim, to the extent not satisfied by the issuance of Series B Bonds, would share *pro rata* with PREPA's other General Unsecured Claims.

### PREPA ERS Current Expense Litigation

On October 30, 2019, PREPA ERS filed an amended complaint against PREPA and other parties seeking determinations that all amounts owed to it are "Current Expenses" under the Trust Agreement and must be paid before any further payments are made to the Bond Trustee or the Bondholders. PREPA ERS further argued it is a third party beneficiary of the Trust Agreement and the Trust Agreement constitutes a valid subordination agreement under the Bankruptcy Code.

PREPA ERS holds a significant claim against PREPA. Should the Title III Court find PREPA ERS's claims are a "Current Expense" and entitle them to repayment in full before Bond claims receive any recovery, the distributions under the Plan may have to be amended, although the amount of overall consideration under the Plan could remain unchanged.

### Fuel Line Lender Priority Action

The Oversight Board, the Ad Hoc Group, the Monoline Insurers, the Bond Trustee, and the Fuel Line Lenders are currently litigating the Current Expense Adversary Proceeding, whereby the Fuel Line Lenders seek declarations that all amounts owed to them are "Current Expenses" under

the Trust Agreement and subordination of the Bondholders' claims.   The Oversight Board proposes to settle the Current Expense Adversary Proceeding

The Oversight Board has entered in the Fuel Line Lender PSA that settles the Fuel Line Lenders' claims against PREPA and the counts against PREPA in the Current Expense Adversary Proceeding as part of this Plan by giving the Fuel Line Lenders bonds that are senior to the bonds that all other creditors, including the Bondholders, will receive.  Certain creditors have argued that this is an intercreditor dispute that the Oversight Board cannot settle.  They also take issue with the amount and terms of the consideration.  The Oversight Board believes that, because the claims are against PREPA, it can settle such claims against PREPA in the reasonable amount embodied in the Fuel Line Lender PSA.  The Oversight Board further believes that, under the Trust Agreement, PREPA has discretion to determine which expenses constitute "Current Expenses" and can therefore be paid ahead of bondholders.  The Ad Hoc Group contends the Bonds are payable before other creditors and that the Trust Agreement does not permit payment of the Fuel Line Lenders' claims prior to payment on the Bonds.

### Class Treatment Based on Litigation Outcomes

*Settling Bondholder Claims*

Regardless of the outcome of the above-described proceedings, Settling Bondholders will receive from PREPA a stated recovery of 50.00% on their respective Allowed claims in the form of their *pro rata* share of the Sinking Fund and a distribution of Series B Bonds.  However, the quantity of recovery on the remaining portions of their Allowed claims depends on the result of the Amended Lien & Recourse Challenge.  If PREPA and the Oversight Board prevail on the Lien Scope Counts and Recourse Counts, then the Non-Settling Bondholders and Non-Settling Monolines' recovery may be limited to the Sinking Fund, and additional Series B Bonds may therefore be available for distribution to Settling Bondholders.  In such a scenario, the Oversight Board currently anticipates Settling Bondholder Claims would be receive 100% recoveries in Series B Bonds.  If, on the other hand, the Non-Settling Bondholders and Non-Settling Monolines prevail on some or all counts, then the Settling Bondholders will receive CVI in an amount equal to their remaining allowed claims.

*Non-Settling Bondholder and Non-Settling Monoline Claims*

The Non-Settling Bondholders and Non-Settling Monolines' recovery is determined, in part, by the outcome of the Amended Lien & Recourse Challenge and whether they vote to accept the Plan provided, however that regardless of the outcome, Non-Settling Bondholders and Non-Settling Monolines will receive their *pro rata* share of the Sinking Fund.

If Non-Settling Bondholders prevail on the Recourse Counts, then any allowed unsecured deficiency claim will share, *pro rata*, in the General Unsecured Claim Recovery with all other holders of Claims in the Unsecured Claims Pool.

If Non-Settling Bondholders and Non-Settling Monolines prevail on the Lien Scope Counts, they will receive Series B Bonds in the face amount equal to the value of their collateral beyond amounts in the Sinking Fund, up to the amount of Series B Bonds available for distribution after distributions to the Settling Bondholders.

If Non-Settling Bondholders and Non-Settling Monolines vote to accept the Plan and the Oversight Board prevails on the Recourse Counts, they will receive CVI in the notional amount of such holder's Remaining Disallowed Non-Settling Claim, defined as the principal and interest accrued and unpaid on their PREPA Revenue Bond claim through the Petition Date, minus the cash from the Sinking Fund distributed to such holder.

### Assured Insured Interest Rate Swap Claims

The Assured Insured Interest Rate Swap Claims were to have received substantially the same treatment as settled bond claims under the 2019 RSA.  The Assured Insured Interest Rate Swap Claims have the same priority, if any, as the PREPA Revenue Bond Claims, which the Oversight Board believes is the basis for the Plan's provisions affording the swap claims with the same treatment as the bond claims and for the related references in the Plan to the Amended Lien & Recourse Challenge.  The outcome of the Amended Lien & Recourse Challenge, therefore, would impact their recoveries in the same manner it would impact holders of claims in Class 2.

### Fuel Line Loan Claims

To settle their claims, including their assertion of priority over the Bond Claims and assertion of entitlement to postpetition interest, the Fuel Line Lenders will receive treatment of (i) Series A Bonds in the face amount equal to 84.00% of their prepetition claim, (ii) Series A Bonds or cash, in the Oversight Board's discretion, in the face amount of interest deemed to have accrued on account of each holder's *pro rata* share of Series A Bonds to be distributed during a period equal to the shorter of December 1, 2022 through the Effective Date or one (1) year, and (iii) for the remaining 16.00% of their claim, a *pro rata* share of the Series B Bonds that remain after distribution of such bonds to National, Settling Bondholders, and Non-Settling Bondholders, initial distribution to the GUC Trust for the benefit of holders of claims in the General Unsecured Claims Pool up to 50.00% of their Allowed Claims, and the 20% distribution of the Net Remaining New Bonds to the PREPA PayGo Trust.

In exchange for their efforts in connection with consummation of their settlement and confirmation of a plan, and not on account of their claims, the Fuel Line Lenders shall receive the Fuel Line Lender PSA Creditors Fees, comprised of $15 million in consummation costs and up to $11 million in professional fee reimbursement.

### General Unsecured Claims

Much like recovery for the Non-Settling Bondholders and Non-Settling Monolines, recovery for General Unsecured Claims will vary materially based on the Amended Lien & Recourse Challenge's outcome.

If the Non-Settling Bondholders and Non-Settling Monolines prevail on all counts, holders of General Unsecured Claims will receive their *pro rata* share of the Series B Bonds available for distribution, if any, after distribution of such Bonds to the Settling Bondholders, National, Fuel Line Lenders, and Non-Settling Bondholders (up to the amount of the value of their collateral).  If the Non-Settling Bondholders' collateral is determined to be the same or greater than the Series B Bonds available for distribution, holders of General Unsecured Claims will receive no New Bonds

under the Plan, but will share on a *pro rata* basis in the proceeds of the Avoidance Action Trust and CVI.

If the Non-Settling Bondholders and Non-Settling Monolines lose on the Lien Scope Counts, but prevail on the Recourse Counts, then their deficiency claims will receive the General Unsecured Claim Recovery. This result would substantially dilute the recovery of other holders of General Unsecured Claims. The Oversight Board currently estimates General Unsecured Claims would receive Series B Bonds in the amount of approximately 46.49% of their claim in this scenario.

If the Non-Settling Bondholders and Non-Settling Monolines lose on all counts in the Amended Lien & Recourse Challenge, then holders of General Unsecured Claims will receive their *pro rata* share of the Series B Bonds up to 100% of their claim.[113]

In all events, holders of General Unsecured Claims will receive, payable from the GUC Trust, their *pro rata* share of the Avoidance Action Proceeds. They will also receive CVI in the notional amount of their remaining claim after distributions of Series B Bonds, if any.

### Bondholder, Monoline, and Assured Insured Interest Rate Swap Exchange Offer

PREPA is currently a party to two interest rate swaps, with JPMorgan Chase Bank N.A. and UBS AG as counterparties, with notional amounts of $169.53 million and $83.34 million respectively. Both swaps mature on July 1, 2029. Given that swap payments are calculated periodically, the estimated amount of such payments (including termination damages) is not presently ascertainable.

In order to allow holders of PREPA Revenue Bond Claims and Assured Insured Interest Rate Swap Claims to settle their Claims against PREPA, the Oversight Board provided each such holder with the opportunity to sign a settlement agreement by the expiration of the Exchange Offer Period (as defined below), pursuant to which such holder could agree to be treated as a Settling Bondholder or Settling Monoline, as appropriate, pursuant to the Plan. Any signing claimholder shall receive a contra-CUSIP in exchange for their current holdings. Any holder that did not sign and deliver the settlement agreement shall be treated as a Non-Settling Bondholder or Non-Settling Monoline, as appropriate, and will not be able to join the Settling Bondholder and Settling Monoline Class, unless the Oversight Board agrees to extend such deadline, but in no event will

---

[113] This assumes the amount of General Unsecured Claims is less than $3 billion. The Oversight Board currently estimates the amount of General Unsecured Claims at $800 million, with a low estimated value of approximately $300 million and a high estimated value of approximately $1.43 billion. *See* Section II.B.8. If the amount of General Unsecured Claims exceeds $3 billion, distributions to General Unsecured Claims would be made as follows: General Unsecured Claims will receive their *pro rata* share of the Series B Bonds up to 50% of their claim. Of the Series B Bonds that remain available for distribution thereafter, 20% of such bonds will go to the PREPA PayGo Trust. The remaining 80% of Series B Bonds will be shared pro rata among (i) the Remaining Claims of the holders of General Unsecured Claims, (ii) 40.00% of Settling Bondholders Remaining Claims, and (iii) the Remaining Claims of the Fuel Line Lenders. If and only if both (a) GUC New Bonds equal 100% of the Remaining Claims of the Unsecured Claims Pool and (b) 100% of the Remaining Claims of the Fuel Line Lenders are paid in full, Settling Bondholders will receive up to an additional 60% of their pro rata share of Net Remaining New Bonds, if any.

such deadline be extended after a ruling by the Title III Court on the Amended Lien & Recourse Challenge.

The Holder of Assured Insured Interest Rate Swaps Claims was also entitled to settle claims, rights, and remedies against PREPA arising under the swap agreements and applicable law (including, without limitation, claims arising under the Bankruptcy Code safe harbor provisions). The Holder of Assured Insured Interest Rate Swap Claims did not elect to settle such claims during the Exchange Offer Period and, accordingly, will receive the same treatment as Non-Settling Bondholders and Non-Settling Monolines under the Plan if such claims are Allowed.

The Oversight Board commenced the period within which the holders of uninsured PREPA Revenue Bond Claims can sign the settlement offer (the "Exchange Offer Period") on January 27, 2023, with the Exchange Offer Period concluding on February 24, 2023 at 5p.m. (ET).  *See Notice of Distribution of Settlement Offer Notice to Uninsured Bondholders* [ECF No. 3171] ("Settlement Agreement Notice"). Each eligible holder received through The Depository Trust company ("DTC") a settlement offer notice, a settlement agreement, and settlement term sheet, pursuant to which such holder may become a Settling Bondholder under the Plan, and explaining, among other things, the proposed treatment of such holder's Claims if the holder signs the settlement agreement.[114]  During the Exchange Offer Period, 0.98% of eligible holders with claims totaling approximately $75 million signed the settlement agreement and elected to be treated as Settling Bondholders under the Plan. Any failure to deliver the signed agreement prior to the expiration of the Exchange Offer Period will prevents such holder from opting into the settlement class and from receiving the treatment that such class will receive if the Disclosure Statement is approved and the Plan is confirmed.

### Illustrative Distribution of New Bonds Under the Plan

For illustrative purposes only, the following summarizes the distributions of New Bonds under the Plan:

1. Approximately four-hundred million ($400,000,000), or such lower principal or original principal amount as determined by the Oversight Board at or prior to the Confirmation Hearing, in Series B Bonds will be sold to the Commonwealth at par for Cash to fund payments of Administrative Expense Claims.

2. Holders of Fuel Line Loan Claims will receive Series A Bonds in the amount of 84.00% of their Allowed Claim.  The Series A Bonds will accrue up to 1 years' worth of interest from the date the Fuel Line Lender PSA is effective, payable in Series A Bonds or Cash.  They will also receive Cash or Series A Bonds for the Fuel Line Lender Creditors Consummation Fees and Fuel Line Lender PSA Creditors Professionals' Reimbursement Fees.  They will also get distributions on their Remaining Claim (16.00%) depending on the outcome, or

---

[114] Copies of these documents are included as exhibits to the Settlement Agreement Notice.

favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

3. National will receive 71.65% of the Allowed National Insured Bond Claim and 20.00% of the Allowed National Reimbursement Claim in Series B Bonds.

4. Settling Bondholders will receive between 50.00% of their Allowed Claim in Series B Bonds. They will also get distributions on their Remaining Claim depending on the outcome, or favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

5. Non-Settling Bondholders and Non-Settling Monolines will receive Series B Bonds in accordance with their litigation recoveries. This could be nothing if they lose Lien Counts and Recourse Counts, or it could be up to all the Series B Bonds that remain available for distribution if they win the Lien Counts and the Court determines their collateral is worth as much as the Series B Bonds available for distribution after primary distributions to Settling Bondholders.[115] If the Non-Settling Bondholders and Non-Settling Monolines lose the Lien Counts but win on Recourse Counts, they will have a deficiency claim that will be treated the same as General Unsecured Claims.[116]

6. General Unsecured Claims will receive, up to 50.00% of their claim, the Series B Bonds that remain after distributions to the Fuel Line Lenders, National, the Settling Bondholders, and Non-Settling Bondholders and Non-Settling Monolines. They will also get distributions on their Remaining Claim (50.00%) depending on the outcome, or favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

7. If there are Series B Bonds remaining after paying General Unsecured Claims and Deficiency Claims (if any) up to 50.00% of their claims, then the PREPA PayGo Trust will get 20.00% of the Gross Remaining New Bonds.

8. The other 80.00% of the Gross Remaining New Bonds will be shared ratably between the Remaining Claims of (i) General Unsecured Claims (50.00%), (ii) the Fuel Line Lenders (16.00%), and (iii) 40.00% of the Remaining Claims of the Settling Bondholders (*i.e.*, 20.00% (40.00% of 50.00%)).

9. If and only if both (a) GUC New Bonds equal 100% of the Remaining Claims of the Unsecured Claims Pool and (b) 100% of the Remaining Claims of the

---

[115] Certain creditors have asserted the amount of Series B Bonds that Non-Settling Bondholders would receive could be more than the amount of Series B Bonds contemplated under this Plan (in which case this Plan may not be confirmable or feasible without material amendments).

[116] Holders of Assured Insured Interest Rate Swap Claims will receive the same treatment as Non-Settling Bondholders and Non-Settling Monolines.

Fuel Line Lenders are paid in full, Settling Bondholders will receive up to an additional 60% of their pro rata share of Net Remaining New Bonds, if any.

10. Excess New Bonds available after creditors recover fully on their Allowed Claims, shall either be deemed not to be issued by PREPA, or shall be issued and distributed to the PREPA PayGo Trust, at PREPA's discretion.



*This chart is for illustrative purposes only. To the extent of any discrepancy between the chart and the Plan, the Plan shall govern in all respects

## Settlement of Outstanding Disputes

### Settlement of Outstanding Disputes with National

Pursuant to the terms of the National PSA, and in exchange for the consideration to be provided in the Plan, National agrees to settle, waive, release, and discharge all claims against PREPA, including, but not limited to, the following disputes (such disputes are summarized in Section V of this Disclosure Statement):

- Amended Lien & Recourse Challenge:

    o All counterclaims and affirmative defenses related to *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019).

    o Any other claims, theories, rights, and defenses related to, among other things, their proofs of claims and/or the Master PREPA Bond Claim, including, but not limited to, the scope of the asserted security interest in PREPA's property, assets, or revenues, whether the claims have recourse beyond moneys deposited to the credit of the Sinking Fund, and other asserted rights related to certain contractual covenants or statutory rights, including to seek appointment of a

receiver, an increase in PREPA's electricity rates, or the enforcement of collection of customers' bills.

- Motion to Appoint Receiver and Dismiss Title III Case:

  o Motion to Dismiss PREPA's Title III Case.

  o Any other motions, objections or joinders to these or such other motions or objections that may be filed related to the requested relief, including, but not limited to, seeking to lift the automatic stay, the appointment of a receiver at PREPA, and the dismissal of PREPA's Title III Case.

Pursuant to the terms of the Settlement Offer Memorandum, Settling Bondholders made various covenants, including a covenant not to take or encourage any other person to take any action which would reasonably be expected to impede the administration of the Title III Case or the confirmation or consummation of the Plan.

Settling Bondholders may only terminate the Settlement Agreement in limited circumstances.

**Settlement of Outstanding Disputes with Settling Bondholders**

Pursuant to the terms of the Settlement Offer Memorandum, and in exchange for the consideration to be provided in the Plan, the Settling Bondholders agree to settle, waive, release, and discharge all claims against PREPA, including, but not limited to, the following disputes (such disputes are summarized in Section V of this Disclosure Statement):

- Amended Lien & Recourse Challenge:

  o All counterclaims and affirmative defenses related to *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019).

  o Any other claims, theories, rights, and defenses related to, among other things, their proofs of claims and/or the Master PREPA Bond Claim, including, but not limited to, the scope of the asserted security interest in PREPA's property, assets, or revenues, whether the claims have recourse beyond moneys deposited to the credit of the Sinking Fund, and other asserted rights related to certain contractual covenants or statutory rights, including to seek appointment of a receiver, an increase in PREPA's electricity rates, or the enforcement of collection of customers' bills.

- Motion to Appoint Receiver and Dismiss Title III Case:

  o Motion to Dismiss PREPA's Title III Case.

  o Any other motions, objections or joinders to these or such other motions or objections that may be filed related to the requested relief, including, but not

limited to, seeking to lift the automatic stay, the appointment of a receiver at PREPA, and the dismissal of PREPA's Title III Case.

### Settlement of Outstanding Disputes with Fuel Line Lenders

Pursuant to the terms of the Fuel Line Lender PSA, and in exchange for the consideration to be provided in the Plan, if the Fuel Line Lenders vote to accept the Plan, they agree to settle, waive, release, and discharge all claims against PREPA and the Settling Bondholders, including the following disputes (such disputes are summarized in Section V.G.3 of this Disclosure Statement):

- *Cortland Capital Market Services LLC v. The Financial Oversight and Management Board for Puerto Rico*, Adv. Proc. No. 19-00396 (D.P.R. July 9, 2019).

- Any other claims or rights related to the Fuel Line Loans, including, but not limited to, the Fuel Line Lenders' asserted priority and seniority over the Bonds pursuant to any agreement.

### Settlement of Outstanding Disputes with Vitol

Pursuant to the terms of the Vitol Settlement Agreement, and in exchange for the consideration to be provided in the Plan, the following disputes in connection with Vitol will be compromised and settled pursuant to the Plan (such disputes are summarized in Section V.G.20-21 of this Disclosure Statement):

- Vitol's Releases:

  o Upon the effective date of the Plan, Vitol has agreed to release PREPA and the Oversight Board from any and all claims and causes of action arising out of or relating in any manner whatsoever to *PREPA v. Vitol Inc. et al.*, Adv. Proc. No. 19-00453 (D.P.R. Nov. 14, 2019).

  o For the avoidance of doubt, the Vitol Settlement Agreement expressly preserves any and all of Vitol's claims, rights, and defenses related to the avoidance action styled *Special Claims Comm. v. Inspectorate America Corp.*, Adv. Proc. No. 19-00388 in Case No. 17-bk-3283-LTS, D.P.R.

- PREPA's Releases:

  o Upon the effective date of the Plan, PREPA has agreed to release Vitol from any and all claims and causes of action arising out of or relating in any manner whatsoever to *PREPA v. Vitol Inc. et al.*, Adv. Proc. No. 19-00453 (D.P.R. Nov. 14, 2019).

  o For the avoidance of doubt, the Vitol Settlement Agreement expressly preserves any and all of PREPA's claims, rights, and defenses related to the avoidance action styled *Special Claims Comm. v. Inspectorate America Corp.*, Adv. Proc. No. 19-00388 in Case No. 17-bk-3283-LTS, D.P.R.

## Estimation of Allowed General Unsecured Claims

As described further herein, the Plan treats and discharges claims filed against PREPA, including a class of General Unsecured Claims.  While almost $6 billion of General Unsecured Claims have been filed against PREPA, claims reconciliation remains ongoing by the Debtor, the Oversight Board, and their professional advisors.  Attached hereto as **Exhibit O** is a table describing the asserted amounts of filed claims, as well as the Debtor's current low and high estimates for various categories of General Unsecured Claims and the current "Adjusted Estimated Value," reflecting the Debtor's reasonably best projection regarding the ultimate allowed amount of General Unsecured Claims for purposes of providing information to holders of General Unsecured Claims regarding their potential recoveries under the Plan.  Of course, as noted in Article VIII of this Disclosure Statement, the recovery for holders of General Unsecured Claims might be higher or lower depending on the actual amount of General Unsecured Claims ultimately allowed.  This uncertainty is unavoidable as the claim reconciliation process is ongoing.

As described further on Exhibit O, the Debtor's Adjusted Estimated Claim Value is approximately $800 million, with a low estimated value of approximately $300 million and a high estimated value of approximately $1.43 billion.  The differences between the estimates are attributable to six categories of General Unsecured Claims:  (a) PPOA rejection damages claims, (b) the grievances portion of UTIER's proof of claim, (c) litigation claims, (d) a litigation claim filed by UITICE, and (e) employee-related claims.

## PPOA Claims.

Almost $3 billion of the General Unsecured Claims pool has been asserted by 12[1] counterparties to terminated PPOAs agreements or master PPOAs, each of whom alleges millions of dollars (in certain cases, hundreds of millions) in damages relating to development costs, loss of profits that such claimants believe they would have been entitled to under each claimant's respective PPOA, and other damages.

The Oversight Board anticipates it will object to certain PPOA claims in advance of Plan confirmation.  To develop its estimates, the Debtor and its professional advisors have investigated and considered the viability of each of the three components of the PPOA claims.  The vast majority of the face value of such claims assert damages in the form of lost profits.  However, the Oversight Board believes the holders of PPOA claims are not entitled to claim any such damages because (i) each of the PPOAs was terminated in accordance with its terms and subject to provisions contained therein that prohibit the claimant from seeking additional damages upon termination, (ii) the majority of the PPOAs contain a provision explicitly prohibiting any claim on account of lost profits, and (iii) in any event, the claims do not provide information sufficient to substantiate a lost profits damages claim.  Section 13.3 of most of the PPOAs provides that "[n]otwithstanding anything to the contrary in this Agreement, neither Party . . . shall in any event be liable to the other Party . . . for claims . . . made by either Party for lost profits . . . ."  Accordingly, the Oversight Board's estimates heavily discount the lost profits component of the PPOA Claims,

---

[1]   Fourteen claims were filed by PPOA counterparties.  Two of them, filed by AES and Ecoelectrica, relate to ongoing contracts and have been resolved by the parties.

and eliminate such amounts in the low end of the estimate.  The Adjusted Estimated Value of the PPOA claims thus amounts to approximately $460 million, which includes an adjustment for the lost profits aspects of these claims.

## UTIER Grievances Claim

In addition to the contract damages claim, the UTIER POC asserts a claim in the amount of approximately $1.1 billion in damages related to grievances and other claims under the UTIER CBA.  Following the filing of the proof of claim, the Debtor requested additional information and supporting documentation from UTIER to support the asserted claim amount, and received approximately 50,000 physical documents relating to various grievances asserted, none of which included any valuation information or other supporting data.  The Debtor's professionals have been diligently reviewing the claims asserted in the documentation provided, with the assistance of the Debtor's employees who have significant experience mediating union claims.  That review has identified approximately 26,000 individual grievance claims.  Valuing these claims with reference to historical claim valuation data, the Debtor believes the UTIER grievances will be allowed in an Adjusted Estimated Value of approximately $230 million.

## Litigation Claims

Approximately 200 proofs of claim were filed against the Debtor on account of various litigations pending against PREPA, for an aggregate asserted total of approximately $545 million.  In conjunction with its local counsel, who have been responsible for representing PREPA in litigation since well before the filing of this Title III Case, the Debtor has been diligently reviewing the claims asserted in the various litigations and, based upon its understanding of the litigations asserted, as well as offers made or accepted with respect to the claims in this category that have been included within the ADR process, have estimated the Adjusted Estimated Value to be approximately $30 million.

## UITICE Litigation Claim

UITICE, one of the Debtor's previous employee unions, filed proof of claim number 80187, which asserts damages purportedly arising from modifications to PREPA's health benefits program for employees and retirees. PREPA and UITICE were parties to a collective bargaining agreement that, among other things, provided retired UITICE employees and their spouses "will receive the Comprehensive Health Program known as the AR Plan" and that the "rules and conditions" of the Health Benefits Program to be provided pursuant to the CBA "shall not be inferior to those currently in effect . . . or to the terms, conditions, and benefits negotiated in this agreement.  The provider network will be materially similar to the current network in case of any change."  UITICE CBA, Art. XXV, § 4.  PREPA later altered the health insurance provider with similar coverage at a lower cost, recognizing savings of approximately $225 million.  UITICE challenged PREPA's action, and PREPA was later ordered to compensate retired members of UITICE for any loss of benefits they suffered, with such amount to be substantiated in a separate proceeding.  UITICE filed a proof of claim for the asserted amount of $225 million, attaching only

the judgment against PREPA as evidence in support of such amount.  PREPA disputes that UITICE's represented employees suffered any damages as coverage under the two health plans were substantially similar.  PREPA has therefore requested additional documentation from UITICE to support its asserted claim amount or to otherwise substantiate the loss of benefits incurred by its members.  Despite such requests, UITICE has to date not responded and has failed to provide any documentation to support its asserted claim amount.  PREPA intends to object to this claim and believes it should be reduced to $0 absent further documentary support for the alleged damages.  However, the Adjusted Estimated Claim value includes a reserve equating to an aggregate value of approximately $11 million, which equates to approximately $22,500 per UITICE employee.

## Employee Claims

Many PREPA employees have also asserted claims against PREPA in the aggregate amount of approximately $15 million, relating to various employment-related issues such as amounts allegedly owed on account of vacation pay, sick pay, Christmas Bonuses, and more. Many of these asserted amounts relate to amounts such employees believe they were entitled to earn above the amounts set forth in various Commonwealth laws, including, but not limited to, the amounts for fringe benefits such as Christmas Bonuses, sick pay, and vacation pay in, among others, Act 66-2014 and Act 26-2017.  The Debtor believes that some of these claimed amounts may be duplicative of UTIER's claim for damages under the UTIER CBA as asserted in Adversary Proceeding No. 17-00229, which was dismissed as to PREPA.  Accordingly, the low estimate for employee-related claims removes such asserted amounts, while the high estimate includes all asserted claim amounts.  The Debtor's current Adjusted Estimated Value is approximately $9 million.

# **EXHIBIT B**

Third Revised Proposed Order Redline

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**ORDER (I) APPROVING DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD DATE, (III) APPROVING CONFIRMATION HEARING NOTICE AND CONFIRMATION SCHEDULE, (IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION PROCEDURES, (V) APPROVING FORMS OF BALLOTS AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING, ELECTION, AND CONFIRMATION DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon the motion (the "Motion"),[2] dated December 16, 2022, of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Debtor under PROMESA Section 315(b), pursuant to Sections 105, 502, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), and 1128 of title 11 of the United States Code (made applicable to the Title III Cases pursuant to PROMESA Section 301(a)) (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure (made applicable to the Title III Cases pursuant to PROMESA Section 310) (the "Bankruptcy Rules") 2002, 3016, 3017, 3018, 3020, 9013, 9014, and 9021, and Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules") 3016-2 and 9013-1 requesting an order: (i) approving the proposed Disclosure Statement (as defined below), (ii) fixing a Voting Record Date for voting on the Plan (as defined below), (iii) approving the Confirmation Hearing Notice and confirmation schedule, (iv) approving the proposed contents of the Solicitation Package and procedures for distribution thereof, (v) approving the forms of ballots, and establishing solicitation, voting, and balloting procedures, (vi) approving the form and manner of Notice of Non-Voting Status, (vii) fixing a Voting Deadline, (viii) approving procedures for tabulating creditor votes, and (ix) related relief, all as more fully described in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to PROMESA Section 306(a); and it appearing that venue in this district is proper pursuant to PROMESA Section 307(a); and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be provided; and the Court having

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion or the Plan (as defined below), as applicable.

2

held a hearing on February 28, 2023, to consider the adequacy of the information contained in the Disclosure Statement and the additional relief requested in the Motion (the "Disclosure Statement Hearing"); and the Court having determined the relief sought in the Motion is in the best interests of the Debtor, its creditors, and all parties in interest; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby found and determined that:[3]

A.        The Debtor, by and through the Oversight Board, as the Debtor's representative in its Title III Case pursuant to PROMESA Section 315(b), has full authority to propose and prosecute the ~~Modified~~ *Disclosure Statement for the ~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~February 21~~March 1, 2023 (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement") [Case No. 17-4780, ECF No. _____][4] and the *~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~February 9~~March 1, 2023 (as the same may be amended or modified, including all exhibits and supplements thereto, the "Plan") [ECF No. _____].

B.        The Disclosure Statement (including the exhibits attached thereto) contains adequate information within the meaning of Section 1125 of the Bankruptcy Code, and no other or further information is necessary for purposes of soliciting acceptances and rejections of the Plan as set forth herein.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

[4]    Docket references contained herein shall refer to the docket for Case No. 17-4780 unless otherwise specified.

C.    The Disclosure Statement (including the exhibits attached thereto) provides holders of Claims and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Articles XXVII and XXXVI of the Plan in satisfaction of the requirements of Bankruptcy Rule 3016(c).

D.    The forms of ballots, substantially in the forms attached hereto as **Schedules 3(a) – 3(ed)** (each a "Ballot") and the form of election notice, substantially in the form attached hereto as **Schedule 5** (the "Election Notice"), are consistent with Official Bankruptcy Form No. B 314, adequately address the particular needs of the Title III Case, and are appropriate for the relevant Classes of Claims entitled under the Plan to vote to accept or reject the Plan and/or make an election of the form of distribution pursuant to the Plan, as applicable.

E.    Ballots to vote to accept or reject the Plan (or, with respect to Settling Bondholders, Non-Settling Bondholders, and holders of Claims in Class 4 (Fuel Line Loan Claims), instructions to submit a vote on ATOP) need only be provided to:

(a) Settling Bondholders and Settling Monolines on account of PREPA Revenue Bond Claims in Class 1 (Settling Bondholder and Settling Monoline Claims);

(b) Non-Settling Bondholders on account of PREPA Revenue Bond Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are *not* insured by a Monoline Insurer;

(c) Non-Settling Monolines on account of PREPA Revenue Bond Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are insured by a Monoline Insurer;

(d) National Public Finance Guarantee Corporation ("National") on account of National Insured Bond Claims in Class 5 (National Insured Bond Claims); and

(e) holders of Claims in Class 3 (Pension Claims), Class 4 (Fuel Line Loan Claims), Class 6 (National Reimbursement Claim), Class 7 (General Unsecured Claims), Class 8 (Vitol Claims), Class 9 (Assured Insured Interest Rate Swaps Claims), Class 11 (Eminent Domain/Inverse Condemnation Claims), and Class 12 (Federal Claims).

Beneficial Owners of Claims in Class 5 (National Insured Bond Claims) shall be entitled to receive an Election Notice and make an election with respect to the form of distribution pursuant to the Plan to the extent such elections are provided pursuant to the Plan.  Beneficial Owners of Claims in ~~Class 1 (Settling Bondholder and Settling Monoline Claims) that are insured by a Settling Monoline and~~ Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) that are insured by a Non-Settling Monoline, shall be entitled to receive a Notice of Non-Voting Status informing such Beneficial Owners that a ~~Settling Monoline or~~ Non-Settling Monoline~~, as applicable,~~ shall be entitled to vote to approve or reject the Plan on account of such Claims.

F.      The solicitation procedures established pursuant to this Order provide Settling Bondholders ~~and Settling Monolines~~ in Class 1 the right to vote to reject the Plan, notwithstanding such Settling Bondholders'~~ and Settling Monolines~~' entry into ~~a Monoline Settlement Agreement or~~the Uninsured Bond Settlement Agreement~~, as applicable,~~ prior to the commencement of the solicitation of votes to accept or reject the Plan, and, therefore, the solicitation of the ~~Monoline Settlement Agreement or~~ Uninsured Bond Settlement Agreement~~, as applicable,~~ is not a solicitation of votes on the Plan.  *See Findings of Fact and Conclusions of Law in Connection with Confirmation of the Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority* [ECF No. 19812 in Case No. 12-3283] at ¶¶ 141, 143.

G.      Ballots need not be provided to the holders of Claims in Class 10 (Ordinary Course Customer Claims) and Class 13 (Convenience Claims), because the holders of these Claims are unimpaired pursuant to the Plan and are deemed to accept the Plan.

H.      Ballots need not be provided to the holders of Claims in Class 14 (Section 510(b)

Subordinated Claims), because such holders will receive no distributions pursuant to the Plan

and are deemed to reject the Plan.

I.      The period set forth below, during which the Debtor may solicit acceptances and

rejections to the Plan and elections with respect to the form of distribution thereunder, is a

reasonable period of time for eligible holders of Claims to vote on the Plan or make elections

regarding the form of distributions pursuant to the Plan.

J.      The procedures set forth below regarding notice to all parties in interest of (a) the

time, date, and place of the hearing to consider confirmation of the Plan (the "Confirmation

Hearing"), (b) the deadline for filing of objections or responses to (i) the proposed confirmation

of, or proposed modifications to, the Plan, or (ii) the Proposed Confirmation Order

("Confirmation Objections"), and (c) the distribution and contents of the solicitation packages

(the "Solicitation Packages") provide a fair and equitable notice and voting process and comply

with Bankruptcy Rules 2002, 3017, and 3018 and constitute sufficient notice to all interested

parties of the Voting Record Date, the Voting Deadline, the Election Deadline, the Confirmation

Objection Deadline, the Confirmation Hearing, and all related matters.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted as modified herein, and all other objections to the Motion

and the Disclosure Statement are overruled.

2.      The Disclosure Statement is approved in its entirety, and the Debtor may

accordingly solicit acceptances and rejections of the Plan as set forth herein.

3.      The forms of Ballots and Election Notice are approved.

4.      The Creditors' Committee's recommendation letter, substantially in the form attached hereto as **Schedule 7(a)** (the "Creditors' Committee Letter"),[5] and the Plan Summary substantially in the form attached hereto as **Schedule 7(b)** (the "Plan Summary")[6] is approved pursuant to section 1125 of the Bankruptcy Code.

*Confirmation Procedures and Deadlines*

5.      The Confirmation Hearing will be held on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**; provided, however, that the Confirmation Hearing may be continued from time to time without further notice other than through adjournments announced in open Court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court.

6.      The Confirmation Hearing Notice setting forth the time, date, and place of the Confirmation Hearing, substantially in the form attached hereto as **Schedule 2**, is approved.

7.      The Debtor shall cause the Balloting Agent to complete the mailing of the Confirmation Hearing Notice in accordance with the Bankruptcy Rules and Local Rules on or before **five (5) business days after entry of this Order, or as soon as reasonably practicable thereafter**.

8.      The Debtor, through Kroll, shall publish the Confirmation Hearing Notice, on one occasion, in each of *El Nuevo Dia* in Spanish (primary circulation is in Puerto Rico), *The San Juan Daily Star* in English (primary circulation is in Puerto Rico), *El Diario* in Spanish (primary circulation is in New York), *El Nuevo Herald* in Spanish (primary circulation is Miami), *The*

---

[5]   The Creditors' Committee shall provide the Oversight Board with finalized English and Spanish versions of the Creditors' Committee Letter no later than two (2) business days after entry of this Order.

[6]   The Plan Summary is the same summary contained in Section II.B of the Disclosure Statement. The Plan Summary is subject in its entirety to all disclaimers and provisions of the Disclosure Statement.

*New York Times*, *The Bond Buyer*, *El Vocero* in Spanish (primary circulation is in Puerto Rico), and *Primera Hora* in Spanish (primary circulation is in Puerto Rico) to the extent possible, during the week beginning on (1) April 17, 2023, (2) May 8, 2023, and (3) May 29, 2023, which notice is hereby approved and constitutes adequate and sufficient notice and complies with Bankruptcy Rule 2002.  To the extent any of the above publications are unable to publish or suspends publication during the time periods above, the Debtor is permitted to use reasonable best efforts to secure a similar alternative publisher without further order of the Court.

9.      The Debtor, through Kroll, shall cause no less than ten (10) radio advertisements, to be aired to the extent possible during the periods from (i) April 17, 2023 up to and including April 21, 2023, (ii) May 8, 2023 up to and including May 12, 2023, and (iii) May 29, 2023 up to and including June 2, 2023 (for a total of thirty (30) radio advertisements), on (a) WMEG FM (contemporary hit radio) in Spanish and (b) WKAQ AM (Spanish language talk radio) in Spanish, informing listeners of (i) the approval of the Disclosure Statement and the scheduling to the Confirmation Hearing, (ii) the date by which Confirmation Objections must be filed and served, (iii) the Voting Deadline and Election Deadline, and (iv) an information hotline to receive certain additional information.  To the extent any of the above radio stations are unable to broadcast or suspends broadcasting during the time period above, the Debtor is permitted to use reasonable best efforts to secure a similar alternative radio station, if feasible given the time required to produce a radio advertisement, without further order of the Court.

10.     The Debtor shall file a form of the New Master Indenture no later than **May 17, 2023**.

11.     ~~10.~~ The Debtor shall file the Proposed Confirmation Order no later than **5:00 p.m. (Atlantic Standard Time) on May 31, 2023**.

12.   ~~11.~~ Any Confirmation Objections must:

    a.   be in writing, in English, and signed,

    b.   state the name, address, and nature of the Claim of the objecting or responding party,

    c.   state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the proposed Plan or proposed order confirming the Plan to resolve any such objection or response,

    d.   be served so as to be actually received by the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: the Puerto Rico Electric Power Authority); and

    e.   be filed, together with proof of service, with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** (the "Confirmation Objection Deadline").

13.   ~~12.~~ Confirmation Objections that are not timely filed, served, and actually received in the manner set forth above shall not be considered and shall be deemed overruled.

14.   ~~13.~~ Any objecting party that has not filed a timely Confirmation Objection will not be permitted to make an oral presentation at the Confirmation Hearing.

15.   ~~14.~~ The Debtor and other parties in interest are authorized to file and serve no later than **5:00 p.m. (Atlantic Standard Time) on June 21, 2023**: (i) replies or an omnibus reply to any objections to the confirmation of the Plan; (ii) the Debtor's memorandum of law in support of confirmation of the Plan; (iv) voting results tabulation; ~~and~~ (v) the Debtor's proposed findings of fact and conclusions of law, and (vi) statements or joinders in support of confirmation of the Plan.

9

16.   15. Any objection to the Debtor's (i) voting results tabulation and/or (ii) proposed findings of fact and conclusions of law must:

    a.   be in writing, in English, and signed,

    b.   state the name, address, and nature of the Claim of the objecting or responding party,

    c.   state with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in proposed findings of fact and conclusions of law to resolve any such objection or response,

    d.   be served so as to be actually received by the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: the Puerto Rico Electric Power Authority);

    e.   be filed, together with proof of service, with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS and served so that such objections and responses are actually received by no later than **5:00 p.m. (Atlantic Standard Time) on June 28, 2023**.

17.   16. The Debtor and other parties in interest are authorized to file and serve no later than **5:00 p.m. (Atlantic Standard Time) on July 5, 2023** replies or an omnibus reply to any objections to the Debtor's (i) voting results tabulation and (ii) proposed findings of fact and conclusions of law.

*Solicitation Procedures and Deadlines; Vote Tabulation*

18.   17. The record date for purposes of determining creditors entitled to vote on the Plan (except Classes 1, 2, 4, and 5 (collectively, the "ATOP Classes")[7]) or, in the case of the

---

[7]   For the avoidance of doubt, because holders of Claims in the ATOP Classes must submit their vote and/or election through the Automated Tender Offer Platform ("ATOP") at The Depository Trust Company ("DTC"), the Voting Record Date shall not apply to the ATOP Classes; provided, however, the Voting Record Date shall apply to (i) any PREPA Revenue Bonds formerly insured by Assured in the primary market, and the principal amount of which was paid by Assured on or after the original maturity date of such bonds (the "Assured Matured Bonds") or (ii) any claim arising from PREPA Revenue Bonds for which voting through ATOP cannot be established ("ATOP Ineligible Bonds"); the The holder as of the Voting Record Date of the (i) claims arising from the Assured Matured Bonds (including, without limitation, Assured) and (ii) claims arising from ATOP

non-voting Classes, to receive the applicable Notice of Non-Voting Status, shall be **February 28, 2023** (the "Voting Record Date").

19.  ~~18.~~ With respect to any transferred Claim (except for any Uninsured PREPA Revenue Bond Claims in Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims) and Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)), the transferee shall be entitled to receive a Solicitation Package and vote to accept or reject the Plan on account of the transferred Claim only if:  (a) all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer, and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the transferor has completed, executed, and returned a Ballot, the transferee of such Claim shall be bound by any vote (and the consequences thereof) made on the Ballot by such transferor of such transferred Claim.

20.  ~~19.~~ Cede & Company and DTC shall provide the Debtor within seven (7) Business Days of the date of this Order, or as soon as possible thereafter, a listing of the names and addresses of all Nominees that as of the Voting Record Date held, directly or indirectly, any of the securities with respect to Classes 1, 2, 4, and 5.

21.  ~~20.~~ The Debtor shall cause the Balloting Agent to complete the mailing of the appropriate Solicitation Package by **the date that is twenty-eight (28) days following entry of this Order, or as soon as reasonably practicable thereafter** (the "Solicitation Mailing Date")

---

Ineligible Bonds shall not be required to tender such bonds through ATOP, and instead shall be provided with a ballot with which to vote such claims.

to all known holders (as of the Voting Record Date) of Claims in the following classes (collectively, the "Voting Classes"):

| | Class |
|---|---|
| Settling Bondholder ~~and Settling Monoline~~ Claims[8] | Class 1 |
| Non-Settling Bondholder and Non-Settling Monoline Claims~~9~~8 | Class 2 |
| Pension Claim~~10~~9 | Class 3 |
| Fuel Line Loan Claims | Class 4 |
| National Insured Bond Claims~~11~~10 | Class 5 |
| National Reimbursement Claim | Class 6 |
| General Unsecured Claims | Class 7 |
| Vitol Claims | Class 8 |
| Assured Insured Interest Rate Swaps Claims | Class 9 |
| Eminent Domain/Inverse Condemnation Claims | Class 11 |
| Federal Claims | Class 12 |

22. ~~21.~~ The Debtor shall not be required to mail or cause to be mailed Solicitation Packages to any holders of Claims that are, as of the Voting Record Date, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-3283, ECF No. 12274] ("Administrative Reconciliation Order"), as such holders shall not be entitled to vote such Claims to accept or reject the Plan, unless such holder's claim has been allowed pursuant to an order of the Court on or before the Voting Deadline;~~12~~11 provided, however, the Debtor shall

---

~~8    Solicitation Packages shall be provided to Settling Bondholders and Settling Monolines in Class 1.~~

~~9~~8    Solicitation Packages shall be provided to Beneficial Owners of PREPA Revenue Bonds that are not insured and Non-Settling Monolines in Class 2.

~~10~~9    A Solicitation Package shall only be provided to the Puerto Rico Electric Power Authority Employee Retirement System (the "SREAEE" by its Spanish acronym) on account of the Pension Claim in Class 3.

~~11~~10    A Solicitation Package shall only be provided to National on account of National Insured Bond Claims in Class 5.

~~12~~11    For the avoidance of doubt, holders of Claims transferred into the alternative dispute procedures pursuant to the Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of

complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to such holders of Claims.

23.    22.    Solicitation Packages mailed to creditors holding Claims in the Voting Classes will contain, in English and Spanish translation: (i) the Confirmation Hearing Notice; (ii) a flash drive (or otherwise in the Debtor's discretion)[13][12] containing this Disclosure Statement Order (without the exhibits hereto) and Disclosure Statement (together with all exhibits thereto, including the Plan); (iii) the appropriate form of Ballot or Election Notice, if any, with instructions for voting and/or making any applicable election, and, as applicable, a pre-addressed, pre-paid return envelope, and (iv) with respect to Class 7, the Creditors' Committee Letter and Plan Summary.

24.    23.    If it is a Nominee's (or Nominee's agent's) customary and accepted practice to (i) forward the solicitation information to (and collect votes from) Beneficial Owners by voter information form, email, telephone or other customary means of communications, as applicable, or (ii) provide to Beneficial Owners an electronic link to the solicitation materials (including, but not limited to, the Disclosure Statement and Plan), the Nominee (or Nominee's agent) may employ that method of communication in lieu of sending the flash drive, paper Notice, and/or Solicitation Package, as applicable.  In such instances, the Nominee (or Nominee's agent) may return any excess or unused flash drives or paper copies to the Balloting Agent.

---

to the Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Form of Notice, and (C) Granting Related Relief [ECF No. 12576 in Case No. 17-03283] will not be precluded from voting such Claims to accept or reject the Plan, except as otherwise provided in this Order.

[13][12]    For the avoidance of doubt, the Debtor reserves the right (in its sole discretion) to distribute the Disclosure Statement (together with all exhibits thereto) and the Disclosure Statement Order in paper format to a subset of voting creditors if it is determined to be the most effective method of serving such a population of prospective voters.

25.   24.  The Debtor is authorized, but not required, to distribute the Disclosure Statement (together with all exhibits thereto) and the Disclosure Statement Order to the Voting Classes in electronic format (flash drive); provided, however, the Confirmation Hearing Notice, Ballots, Election Notice, Creditors' Committee Letter, and Plan Summary (each, as applicable) shall only be provided in paper format.

26.   25.  Upon receipt of a request for a paper copy of the Disclosure Statement, Plan, and/or Disclosure Statement Order, the Balloting Agent shall, within three (3) business days of receipt of the request or as soon as reasonably practicable thereafter, deposit the requested documents with a postal or shipping service to deliver the requested documents.

27.   26.  On or before the Solicitation Mailing Date, the Debtor shall provide (i) complete Solicitation Packages (excluding Ballots) to:

    a.  the U.S. Trustee,

    b.  counsel to AAFAF,

    c.  counsel to the Official Committee of Unsecured Creditors; Paul Hastings LLP, 200 Park Avenue, New York, NY 10166, Attn: Luc A. Despins, Esq. and G. Alexander Bongartz, Esq.

    d.  the Puerto Rico Energy Bureau;

and (ii) the Disclosure Statement Order (excluding the exhibits thereto) and the Confirmation Hearing Notice to the Debtor's Bankruptcy Rule 2002 list as of the Voting Record Date.

28.   27.  The Debtor shall complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to all known holders (as of the Voting Record Date) or Beneficial Owners, as applicable, of Claims in the following Classes:

- Class 1 (Settling Bondholder and Settling Monoline Claims)—solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Settling Monoline.

14

- Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) – solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Non-Settling Monoline.

- Class 10 (Ordinary Course Customer Claims)

- Class 13 (Convenience Claims)

- Class 14 (Section 510(b) Subordinated Claims)

29. 28. The Debtor shall complete, by no later than the Solicitation Mailing Date, the service of (i) the Confirmation Hearing Notice, and (ii) a Notice of Non-Voting Status to all known holders of Claims for which the Debtor has served an objection or request for estimation as to a Claim as of the Solicitation Mailing Date.

30. 29. The Debtor shall not be required to send Solicitation Packages to (i) any holder of an unimpaired Claim under the Plan or that is otherwise deemed to accept the Plan, (ii) any holder of a Claim in a Class deemed to reject the Plan, (iii) any party who holds a Claim, whether in the form of a filed proof of claim, or an amount listed on the list of creditors filed by the Debtor pursuant to Sections 924 and 925 of the Bankruptcy Code (as amended or modified, the "List of Creditors") in an amount of $0.00, (iv) any holder of a Claim to which the Debtor has served an objection or request for estimation, or that has been expunged by order of the Court, and (v) a creditor that has a Claim that has already been paid in full.

31. 30. With respect to addresses from which notices of the Disclosure Statement hearing were returned as undeliverable by the United States Postal Service, the Debtor is excused from mailing Solicitation Packages or any other materials related to voting on or confirmation of the Plan to entities listed at such addresses.  For purposes of serving the Solicitation Packages, the Debtor is authorized to rely on the address information for all Classes as compiled, updated, and maintained by the Balloting Agent as of the Voting Record Date.  In addition, to the extent

any Solicitation Packages are returned as undeliverable by the United States Postal Service (including Solicitation Packages from voting creditors), neither the Debtor nor the Balloting Agent are required to conduct additional research for updated addresses or to attempt to re-serve the Solicitation Packages on such parties.

32.    ~~31.~~ The forms of Notice of Non-Voting Status (**Schedule 4(a) – 4(e)**) are hereby approved.

33.    ~~32.~~ The Notices of Non-Voting Status are hereby deemed to satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules, and the Debtor shall not be required to distribute copies of the Plan, Disclosure Statement, and/or Disclosure Statement Order to any holder of a Claim in the following Classes, except as to parties who request, in writing, copies of such documents:

- ~~Class 1 (Settling Bondholder and Settling Monoline Claims) – solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Settling Monoline.~~

- Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) – solely with respect to Beneficial Owners of PREPA Revenue Bonds insured by a Non-Settling Monoline.

- Class 10 (Ordinary Course Customer Claims)

- Class 13 (Convenience Claims)

- Class 14 (Section 510(b) Subordinated Claims)

34.    ~~33.~~ Each Ballot must be executed, completed, and delivered to the Balloting Agent (i) by U.S. first-class mail, in the return envelope provided with each Ballot (or otherwise by first-class mail); (ii) by overnight courier; (iii) by hand delivery, or (iv) Kroll's e-balloting platform (where permitted), so that executed and completed Ballots are received by Kroll, the Balloting Agent, by no later than **5:00 p.m. (Atlantic Standard Time) on June 7, 2023**, unless

such time is extended (the "Voting Deadline").  Holders of Claims in the ATOP Classes, other than (i) Monoline Insurers (or a Monoline Insurer's transferee if the Monoline Insurer's right to vote has been transferred in accordance with decretal paragraph 1819), (ii) holders of claims arising from the Assured Matured Bonds, and (iii) holders of claims arising from ATOP Ineligible Bonds, must deliver their voting instructions to the Nominee according to the instructions in the applicable Notice in sufficient time for the Nominee to receive and effectuate the creditor's vote through ATOP in accordance with the procedures of DTC by the Voting Deadline; provided, however, that any creditor who has executed, completed, and delivered through ATOP in accordance with the procedures of DTC its vote to accept or reject the Plan may revoke such vote and withdraw any securities that have been tendered with respect to a vote through ATOP in accordance with the procedures of DTC on or before the Voting Deadline.[1413]

35.   34. An election of the form of distribution pursuant to the Plan must be executed, completed, and delivered to the Nominee in accordance with the instructions under the Election Notice so as to be effectuated through ATOP in accordance with the procedures of DTC by no later than **5:00 p.m. (Atlantic Standard Time) on June 7, 2023**, unless such time is extended (the "Election Deadline"); provided, however, that any election of the form of distribution pursuant to the Plan executed, completed, and delivered through ATOP in accordance with the procedures of DTC on or before the Election Deadline shall be deemed to be made as of the Election Deadline; provided, further, that any creditor who has executed, completed, and delivered through ATOP in accordance with the procedures of DTC its election of the form of distribution pursuant to the Plan may revoke such election and withdraw any securities that have

---

[1413]   The Debtor has established that it is necessary to conduct this solicitation of votes and election of distributions, as applicable, with respect to the ATOP Classes through the DTC ATOP platform due to the magnitude and complexity of effectuating distributions among holders of Claims in the ATOP Classes.

been tendered with respect to an election through ATOP in accordance with the procedures of DTC on or before the Election Deadline.

36. ~~35.~~ The Solicitation Agent shall use reasonable efforts to keep each of the following on-island ballot collection site listed below open for the full period between April 10, 2023 and June 7, 2023:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery<br><br>All locations are available from<br>**April 10, 2023** to **June 7, 2023**<br>(except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| Don Frappe Inc.<br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| LunaSpeiz<br>157 Calle de Luna,<br>San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Centro<br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

The Solicitation Agent may close any such on-island ballot collection sites (at its sole discretion), or as required by law, including, without limitation, local ordinances.  To the extent any of the above locations are unavailable or are closed, the Debtor is permitted to use

reasonable best efforts to secure an alternative location without further order of the Court.  The Debtor shall make copies of the Disclosure Statement and Plan available at each on-island ballot collection site.

37.   ~~36.~~ All securities that are tendered with respect to a vote to accept or reject the Plan shall be restricted from further trading or transfer until the ~~filing of the voting results tabulation on or before~~ first business day following the Voting Deadline, or as soon as practicable thereafter, but no later than June 21, 2023.

38.   ~~37.~~ All securities that are tendered with respect to an election of distributions under the Plan in connection with Class 5 (National Insured Bond Claims) shall be restricted from further trading or transfer ~~through~~ until the ~~Effective Date of the Plan to facilitate individualized distributions at the beneficial holder level to holders of such securities~~ issuance of new CUSIPs in connection with such tendered bonds, which issuance shall occur as soon as reasonably practicable after the Voting Deadline.

39.   ~~38.~~ The Beneficial Owners of Settling Bondholder Claims ~~and Settling Monolines holding Settling Monoline Claims~~ in Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims) are entitled to cast a vote with respect to such Class.  The Beneficial Owners of uninsured securities giving rise of Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) and the Non-Settling Monolines holding Non-Settling Monoline Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) are entitled to cast a vote with respect to such Class. Only National will be entitled to cast a vote with respect to Class 5. With respect to any Claims in Classes ~~1, 2, and~~ or 5 arising from Insured PREPA Revenue Bonds owned by a Monoline Insurer, by subrogation or otherwise, if the respective Monoline Insurer transfers the right to vote such Claim prior to the Voting Record Date in accordance with

19

decretal paragraph ~~18~~19 above, then the transferee shall be entitled to receive a Solicitation Package and a form of Ballot in the transferee's name.

40. ~~39.~~ PREPA Revenue Bond Claims in Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims) shall be deemed allowed in the aggregate amount of $[___][15]74,900,593.18 solely for purposes of voting to accept or reject the Plan. PREPA Revenue Bond Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) shall be deemed allowed in the aggregate amount of $[___][16]7,565,470,824.09[14] solely for purposes of voting to accept or reject the Plan. For the avoidance of doubt, holders of PREPA Revenue Bond Claims in Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims) and Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) are not required to file a motion for an order pursuant to Bankruptcy Rule 3018(a) (a "3018(a) Motion") in order to vote to accept or reject the Plan. The allowance of PREPA Revenue Bond Claims in Classes 1 and 2 solely for purposes of voting to accept or reject the Plan pursuant to this decretal paragraph ~~39~~40 shall not prejudice any parties in connection with the Amended Lien & Recourse Challenge.

41. ~~40.~~ Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a Claim, and without prejudice to the rights of the Debtor in any other context, each Claim within a Class of Claims entitled to vote is temporarily allowed in an amount equal to the amount of such Claim as set forth in the claims register; provided:

---

[15] ~~[Solely for purposes of voting on the Plan, to be determined after the Settlement Offer Deadline, but prior to the Disclosure Statement Hearing on February 28, 2023.]~~

[16][14] ~~[Solely for purposes of voting on the Plan,~~Such amount reflects $8,476,517,345.39 less (i) the aggregate PREPA Revenue Bond Claims held by Settling Bondholders ~~and Settling Monolines~~($74,900,593.18), and (ii) National Insured Bond Claim ($836,145,928.13). ~~To be determined after the Settlement Offer Deadline, but prior to the Disclosure Statement Hearing on February 28, 2023.]~~

a.  If a Claim is deemed allowed under the Plan, such Claim is allowed for voting purposes in the deemed allowed amount set forth in the Plan;

b.  If a Claim for which a proof of claim has been timely filed is wholly contingent, unliquidated, or disputed, undetermined, or unknown in amount, such Claim shall be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, at $1.00, and the Ballot mailed to the holder of such Claim shall be marked as voting at $1.00; unless such Claim is disputed as set forth in subparagraph "h" below;

c.  If a proof of claim was timely filed in an amount that is liquidated, non-contingent, and undisputed, such Claim is temporarily allowed in the amount set forth on the proof of claim, unless such Claim is disputed as set forth in subparagraph "h" below;

d.  If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

e.  If a Claim has been ~~estimated or otherwise~~ allowed for voting purposes by order of the Court, such Claim is temporarily allowed in the amount ~~so estimated or~~ allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

f.  If a Claim is listed in the List of Creditors as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Record Date, such Claim shall not be entitled to vote to accept or reject the Plan;

g.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are not entitled to vote;

h.  If the Debtor has served an objection ~~request for estimation,~~ or ACR transfer notice as to a Claim at least forty (40) days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and in the manner as may be set forth in such objection, or as ordered by the Court before the Voting Deadline;~~17~~15

---

~~17~~15     For the avoidance of doubt, Paragraph ~~40~~41(h) of this Order shall not apply to any Claim that is Allowed pursuant to the Plan.

i.  If the Debtor has served an objection specifically seeking to reduce the amount of the Claim but otherwise allow it for voting purposes, such Claim is allowed for voting purposes only in the amount sought in the objection;

j.  Any holders of Claims that are, as of the Voting Deadline, marked on the Title III register maintained by Kroll as subject to administrative reconciliation procedures pursuant to the Administrative Reconciliation Order shall not be entitled to vote such Claims to accept or reject the Plan;

k.  For purposes of the numerosity requirement of Section 1126(c) of the Bankruptcy Code separate Claims held by a single creditor in a particular Class shall be aggregated based on the reasonable efforts of the Debtor and Balloting Agent as if such creditor held one Claim against the applicable Debtor in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

l.  Notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class may be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtor has objected to such duplicate Claims;

m.  If a proof of claim has been amended by a later filed proof of claim filed on or before the Voting Record Date, only the later filed amending Claim will be entitled to vote, regardless of whether the Debtor has objected to such earlier filed Claim;

n.  Notwithstanding anything contained herein to the contrary, the Balloting Agent, in its discretion, may (but is not required to) contact voters to cure any defects in the Ballots and is authorized to so cure any defects;

o.  There shall be a rebuttable presumption that any claimant who submits a properly completed, superseding Ballot, or withdraws a Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such claimant's acceptance or rejection of the Plan, such that the earlier submitted Ballot shall be deemed superseded or withdrawn, as applicable; and

p.  Any Class that contains claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan.

42.  41. The following additional procedures shall apply with respect to tabulating votes in the ATOP Classes:

    a.   For the purposes of tabulating votes, (i) each Beneficial Owner entitled to vote securities held through DTC shall be deemed to have voted only the principal amount of its public securities as submitted through and reflected in ATOP; (ii) each Monoline Insurer, shall be deemed to have voted only the principal amount of the PREPA Revenue Bonds insured by such Monoline Insurer as submitted through and reflected on the form of Ballot; (iii) each holder (including, if applicable, Assured) of claims arising from any PREPA Revenue Bonds formerly insured by Assured in the primary market the principal amount of which was paid by Assured on or after the original maturity date shall be  deemed to have voted only the principal amount of such claims as reflected on the form of Ballot; and (iv) each holder of claims arising from ATOP Ineligible Bonds shall be deemed to have voted only the principal amount of such claims as reflected on the form of Ballot.  Any principal amounts thus voted in accordance with clauses (i), (ii), (iii), or (iv) above may be thereafter adjusted by the Balloting Agent, on a proportionate basis with a view to the amount of securities actually voted, to reflect the corresponding claim amount with respect to the securities thus voted, including any accrued but unpaid prepetition interest or accreted principal, as applicable.

    b.   If conflicting votes or "over-votes" are submitted by a Nominee, the Balloting Agent shall use reasonable efforts to reconcile discrepancies with the Nominee.

43.   42. If any claimant seeks to challenge the allowance or disallowance of its Claim for voting purposes in accordance with the above procedures, such claimant shall serve upon counsel for the Debtor, counsel for AAFAF, and counsel for the Official Committee of Unsecured Creditors, and file with the Court (with a copy to Chambers) a 3018(a) Motion temporarily allowing such Claim in a different amount for purposes of voting to accept or reject the Plan, on or before the tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection or request for estimation, if any, as to such Claim; provided, however, that, as to any claimant filing a 3018(a) Motion, such claimant's Ballot shall not be counted unless temporarily allowed by an order entered by the Court prior to the Voting Deadline.

23

44.   43. The form of Rule 3018(a) Motion attached hereto as **Schedule 6** is approved, and the Debtor shall make available the form of Rule 3018(a) Motion on the Balloting Agent's website.

45.   44. Each creditor that votes to accept or reject the Plan is deemed to have voted the full amount of its Claim therefor.

46.   45. If a creditor casts more than one Ballot voting the same Claim(s) or submits more than one election with respect to the same Claim(s) before the Voting Deadline or Election Deadline, as applicable, the last Ballot received or election made before the Voting Deadline or Election Deadline, as applicable, is hereby deemed to reflect such creditor's intent or election, as applicable, and, thus, to supersede any prior Ballot(s) or elections made, as applicable.

47.   46. If a creditor in Class 5 (A) fails to timely and validly elect the National Non-Commutation Treatment, or (B) submits an election for less than all of its National Insured Bond Claims (in which case, such election shall be void and of no force and effect), then such creditor shall be deemed to have elected to receive the National Commutation Treatment pursuant to Section 20Article XX.A of the Plan.

48.   47. Any entity that holds a Claim in more than one Class that is entitled to vote must use separate Ballots for each such Claim; provided, however, that creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote(s), and thus, neither a Ballot that partially rejects and partially accepts the Plan, nor multiple Ballots casting conflicting votes in respect of the same Class under the Plan shall be counted.

49.   48. The following types of Ballots shall not be counted in determining whether the Plan has been accepted or rejected: (i) any Ballot or vote through ATOP received after the

Voting Deadline, unless the Debtor has granted an extension with respect thereto; (ii) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (iii) any Ballot cast by a person or entity that does not hold a Claim in a Class entitled to vote to accept or reject the Plan; (iv) any unsigned Ballot; (v) any Ballot transmitted to the Balloting Agent by facsimile, electronic mail, or other means not specifically approved herein; (vi) any Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but does not indicate either an acceptance or rejection of the Plan; (vii) any Ballot that is properly completed, executed, and timely returned to the Balloting Agent, but indicates both an acceptance and rejection of the Plan shall be counted as an acceptance of the Plan; and (viii) any Ballot without an original signature; provided, however, that any Ballot cast via the Balloting Agent's E-Ballot platform or the ATOP system shall be deemed to contain an original signature.[1816]

50. 49. Except as otherwise set forth herein, and subject to the entry of an order of the Court, the Debtor may waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented (a) by an attorney's certification stating the terms, if any, associated with any such waiver, and (b) in the voting results tabulation prepared by the Ballot Agent.

51. 50. The voting results tabulation prepared by the Ballot Agent shall include an explanation or the calculations regarding any changes to voting amounts in the ATOP Classes.

---

[1816]    The Balloting Agent is required to retain all paper copies of Ballots and all solicitation-related correspondence for one (1) year following the Effective Date, whereupon, the Balloting Agent is authorized to destroy and/or otherwise dispose of all paper copies of Ballots; printed solicitation materials including unused copies of the Solicitation Package; and all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such one (1) year period.

*Miscellaneous*

52. ~~51.~~ In accordance with the modification provisions of the Plan and Local Rule 3016-2, the Debtor is authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Election Notice, the Notices of Non-Voting Status, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages as may be necessary, prior to mailing.

53. ~~52.~~ All notices to be provided pursuant to the procedures set forth herein are deemed good and sufficient notice to all parties in interest of all matters pertinent hereto and of all matters pertinent to the Confirmation Hearing and no other or further notice need be provided.

54. ~~53.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

55. ~~54.~~ The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order, including, without limitation, disputes with respect to the validity of an election of the form of distributions to be made pursuant to the Plan.

56. ~~55.~~ This Order resolves Docket Entry No. [____] in Case No. 17-3283, and Docket Entry No. [____] in Case No. 17-4780.


Dated: _____, 2023
    San Juan, Puerto Rico

                          Laura Taylor Swain
                          United States District Court Judge

**Schedule 1**

**Disclosure Statement[1]**

---

[1]   In the interest of economy, a hard copy of the Disclosure Statement will not be included as a schedule to the Disclosure Statement Order.  A copy of the Disclosure Statement was filed on ~~February 9~~March 1, 2023, and is available on the Court's docket, as well as on the website of the Debtor's Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll"), at https://cases.ra.kroll.com/puertorico/.  A flash drive containing the Disclosure Statement and all exhibits thereto will be included in the Solicitation Packages.  Hard copies of the Disclosure Statement are available on request by contacting Kroll by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com.  Please do not direct any inquiries to the Court.

**<u>Schedule 2</u>**

**Confirmation Hearing Notice**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATES, (III) HEARING ON CONFIRMATION OF THE PLAN OF ADJUSTMENT AND PROCEDURES FOR OBJECTION TO CONFIRMATION OF THE PLAN OF ADJUSTMENT, (IV) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN OF ADJUSTMENT AND MAKING CERTAIN ELECTIONS THEREUNDER

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

> **If you are entitled to vote on or make an election with respect to distributions pursuant to the Plan, you will receive a separate Solicitation Package (as defined below) on a future date.**
>
> **DEADLINE TO FILE DISCOVERY NOTICE:  5:00 p.m. (Atlantic Standard Time) on ~~March 29~~April 7, 2023**
>
> **VOTING AND ELECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on June 7, 2023**
>
> **OBJECTION DEADLINE: 5:00 p.m. (Atlantic Standard Time) on June 7, 2023**
>
> **CONFIRMATION HEARING:  July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**
>
> **See below for additional deadlines.**
>
> If you have any questions regarding this notice, please contact Kroll Restructuring Administration LLC ("Kroll")[2] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).

## PLEASE TAKE NOTICE OF THE FOLLOWING:

1.     ***Approval of Disclosure Statement.***  By order, dated [●], 2023 (the "Disclosure Statement Order"), the United States District Court for the District of Puerto Rico (the "Court") approved the adequacy of the information contained in the ~~*Modified*~~ *Disclosure Statement for the ~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~February 21~~March 1, 2023 (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board on behalf of the Debtor, and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~February 9~~March 1, 2023 (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"),[3] attached as **Exhibit A** to the Disclosure Statement.

> **You may obtain a hard copy of the Plan and Disclosure Statement, including Spanish**

---

[2]    On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

[3]    All capitalized terms used but not otherwise defined shall have the meanings given to such terms in the Plan.

translations thereof, free of charge, by contacting the Balloting Agent, Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC):

**Telephone (10:00 a.m. to 7:00 p.m. (AST)) (Spanish available):**
        (844) 822-9231 (toll free for U.S. and Puerto Rico)
        (646) 486-7944 (for international callers)

**Email: puertoricoinfo@ra.kroll.com** (with 'PREPA Solicitation' in the subject line)

Alternatively, electronic copies of the Disclosure Statement and Plan are available, free of charge, by visiting https://cases.ra.kroll.com/puertorico/.

2.    Paper copies of the Plan and Disclosure Statement, including Spanish translations thereof, are also available, free of charge, at the following locations from April 10, 2023 to June 7, 2023 (except weekends and federal holidays):

| Locations in the Commonwealth Providing Paper Copies of the Plan and Disclosure Statement | |
| --- | --- |
| **Address** | **Hours (AST)** |
| Don Frappe Inc. Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | M – F 8:30 a.m. to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M – F 8:30 a.m. to 5:00 p.m. |
| LunaSpeiz 157 Calle de Luna, San Juan, PR 00901 | M – F 8:30 a.m. to 5:00 p.m. |
| Centro Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |
| Club de Leones de Ponce Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | M – F 8:30 a.m. to 5:00 p.m. |

3.    ~~2.~~ Pursuant to the Disclosure Statement Order, the Debtor will mail materials needed for voting on the Plan (the "Solicitation Package") to holders with Claims in the following Classes (collectively, the "Voting Classes"):

|  | Class |
|---|---|
| Settling Bondholder ~~and Settling Monoline~~ Claims | Class 1 |
| Non-Settling Bondholder and Non-Settling Monoline Claims | Class 2 |
| Pension Claim | Class 3 |
| Fuel Line Loan Claims | Class 4 |
| National Insured Bond Claims | Class 5 |
| National Reimbursement Claim | Class 6 |
| General Unsecured Claims | Class 7 |
| Vitol Claims | Class 8 |
| Assured Insured Interest Rate Swaps Claims | Class 9 |
| Eminent Domain/Inverse Condemnation Claims | Class 11 |
| Federal Claims | Class 12 |

4.    ~~3.~~ *Confirmation Hearing.* A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

5.    ~~4.~~ The Confirmation Hearing may be continued from time to time by the Court or the Oversight Board, without further notice or through adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed with the Court, and the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation

Hearing, in accordance with the modification provisions of the Plan and Local Rule 3016-2, without further notice to interested parties.

6. 5. *Plan Confirmation Depository*.  Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

7. 6. *Confirmation Objection Deadline.*  The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan and the proposed confirmation order[4] (the "Confirmation Objection Deadline").  Parties who do not file an objection to the Plan or the proposed confirmation order prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

8. 7. *Objections and Responses to Confirmation.*  Objections and responses to confirmation of the Plan must:

    a.  Be in writing, in English, and signed;

    b.  State the name, address, and nature of the Claim of the objecting or responding party;

    c.  State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

    d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

        i.  If you are not an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

---

[4]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

e.   Be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Electric Power Authority) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

9.   8.   *Participation in Confirmation Discovery*.   If you wish to participate in discovery in connection with confirmation of the Plan, you must file a notice of your intention to participate in discovery (a "Discovery Notice"), a form of which is available at https://cases.ra.kroll.com/puertorico/.   If you file your Discovery Notice on or before ~~March 29~~April 7, 2023, you may be granted access to documents in the Plan Depository, where information and documents concerning the Plan are kept, and will also be able to serve your own discovery requests.   If you file your Discovery Notice **after ~~March 29~~April 7, 2023, but on or before ~~April 24~~May 26, 2023**, you may be granted access to documents in the Plan Depository. Please note that access to the information in the Plan Depository may also require complying with the Debtor's access requirements.

10.   9.   You must submit the Discovery Notice in the form provided on the Title III Case website above, which must:

a.   Be in writing, in English, and be signed;

b.   State your name, address, the nature of your Claim, and your Claim number;

c.   State your intention to participate in discovery in connection with confirmation of the Plan; and

d.   Be filed electronically with the Court on the docket using the CM/ECF docket event Notice of Intent to Participate in Discovery for Plan Confirmation, in (i)

34

*In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system on or before the applicable deadline.

   i.   If you are <u>not</u> represented by counsel, you may instead mail your Discovery Notice to the Court's Clerk's office at:

        United States District Court, Clerk's Office
        150 Ave. Carlos Chardon Ste. 150
        San Juan, P.R. 00918-1767

        so as to be received on or before the applicable deadline.

   11.   ~~10.~~ **You must timely file a Discovery Notice to participate in discovery in connection with confirmation of the Plan**.  Failure to timely file a Discovery Notice, however, will <u>not</u> preclude you from filing an objection to confirmation of the Plan on or before the Confirmation Objection Deadline, but will preclude you from being able to view documents in the Plan Depository, and from taking discovery.

   12.   ~~11.~~ *Discovery Timetable and Deadlines*.  The Court has established the following discovery dates and deadlines, which are applicable to the Debtor and to other parties in interest who have timely filed a Discovery Notice and are eligible to participate in discovery:[5]

| Summary of Discovery and Confirmation Deadlines | |
| --- | --- |
| ~~Date of Entry of Confirmation Discovery Procedures Order~~March 1, 2023 | Conversion of Disclosure Statement depository to Plan Depository |
| **Five Business Days After Entry of DS Approval Order** | Deadline for Confirmation Hearing Notice to be served. |
| ~~Ten Days After~~ | Deadline for the Debtor to upload all documents to the Plan Depository |

---

[5]   All of the dates and procedures set forth in this notice are subject to change by further Court order.

35

| | |
|---|---|
| ~~Entry of Confirmation Discovery Procedures Order~~**March 11, 2023** | Deadline for the Debtor to file a preliminary fact witness list and topics about which each witness will testify ("Debtor's Preliminary Fact Witness List"). |
| **28 Days After Entry of DS Approval Order** | Deadline for Debtor to complete mailing of solicitation materials. |
| ~~March 29~~**April 7**, 2023 | Deadline for parties in interest to file a "Notice of Intent to Participate in Discovery," (hereafter, a "Discovery Notice"). Only parties in interest who file a timely Discovery Notice can propound discovery, but failure to do so does not preclude a party from objecting to confirmation of the Plan. |
| ~~28 Days After Entry of DS Approval Order~~ | ~~Deadline for Debtor to complete mailing of solicitation materials.~~ |
| April ~~3~~**14**, 2023 | Deadline for all parties to serve requests for production of non-depository documents ("Production Requests"). Parties in interest may serve Production Requests only following their filing of a timely Discovery Notice.<br><br>Parties may serve up to one additional round of Production Requests, provided that they are served on or before ~~April 14~~**May 8**, 2023.<br><br>Responses and objections to any Production Requests shall be served within seven (7) days of service of such Production Requests. |
| | Deadline for parties in interest to file a preliminary fact witness list and topics about which each witness is expected to testify (a "Party in Interest's Preliminary Fact Witness List," and together with the Debtor's Preliminary Fact Witness List, the "Preliminary Fact Witness Lists"). |
| | Deadline for all parties to file opening expert disclosures ("Opening Expert Disclosures"). |
| **April 21, 2023** | Deadline for all parties to serve up to fifteen (15) interrogatories ("Interrogatories"), including subparts. Responses and objections to such Interrogatories shall be served within ten (10) days of service of such Interrogatories. |
| April ~~14~~**28**, 2023 | Deadline for all parties to file opening expert reports ("Opening Expert Reports"). |
| | Deadline for all parties to serve initial notices of deposition, topics and requested times for depositions ("Initial Notices of Deposition") (all |

| | depositions are limited to a seven (7)-hour time limit). Subsequent notices are allowed provided discovery is completed by the Fact Discovery Deadline or Expert Discovery Deadline, as applicable. |
|---|---|
| **May 8, 2023** | Deadline for all parties to file rebuttal expert disclosures ("Rebuttal Expert Witness Disclosures"). |
| | Deadline for parties who have served a Production Request on or before April ~~3~~14, 2023 to serve up to one additional round of Production Requests.<br><br>Responses and objections to any Production Requests shall be served within seven (7) days of service of such Production Requests. |
| ~~April 17~~**May 15**, 2023 | Deadline for all parties to file rebuttal expert ~~disclosures~~reports ("Rebuttal Expert ~~Witness Disclosures~~Reports"). |
| **May 17, 2023** | Deadline for the Debtor to file a form of the New Master Indenture. |
| ~~April 21~~**May 26**, 2023 | Deadline for all parties to serve requests for admission, limited to authentication of documents ("Admission Requests"). Responses and objections to such Admission Requests shall be served within four (4) business days of service of such Admission Requests. |
| | Deadline for ~~Completion~~completion of fact discovery (the "Fact Discovery Deadline"). |
| ~~April 24, 2023~~ | ~~Deadline for all parties to file rebuttal expert reports ("Rebuttal Expert Reports").~~ |
| | Deadline for parties in interest who solely want access to documents in the Plan Depository to file a Discovery Notice. |
| **May 31, 2023** | Deadline for the Debtor to file initial proposed confirmation order (the "Proposed Confirmation Order"). |
| ~~April 28, 2023~~ | ~~Deadline for all parties to file Daubert motions and motions *in limine*.~~ |
| **June 2, 2023** | Deadline for completion of expert discovery (the "Expert Discovery Deadline"). |
| | Deadline for all parties to file Daubert motions and motions *in limine*. |
| **June 7, 2023** | Voting Deadline & Election Deadline |
| | Deadline for parties in interest to file:<br><br>• Objections to confirmation of the Plan ("Plan Objections").<br>• Objections to Proposed Confirmation Order. |
| ~~May 5~~**June 9**, 2023 | Deadline for all parties to file oppositions to Daubert motions and motions *in limine*. |

| ~~May 12~~June 16, 2023 | Deadline for all parties to file replies in support of Daubert motions and motions *in limine*. |
| | Deadline for all parties to file finalized witness lists, exhibit lists, and deposition designations. |
| ~~May 17, 2023~~ | ~~Deadline for all parties to file counter-designations, objections to deposition designations, or objections to exhibit lists.~~ |
| ~~May 24, 2023~~ | ~~Deadline for all parties to file objections to counter designations.~~ |
| ~~May 31, 2023~~ | ~~Deadline for the Debtor to file initial proposed confirmation order (the "Proposed Confirmation Order").~~ |
| ~~June 7, 2023~~ | ~~Voting Deadline & Election Deadline~~ |
| ~~June 7, 2023~~ | ~~Deadline for parties in interest to file:~~<br>• ~~Objections to confirmation of the Plan ("Plan Objections").~~<br>• ~~Objections to Proposed Confirmation Order.~~ |
| June 21, 2023 | Deadline for Debtor to file:<br>• Memorandum of law in support of confirmation of the Plan.<br>• Omnibus reply to Plan Objections and objections to the Proposed Confirmation Order.<br>• Witness Declarations.<br>• Vote Tabulation.<br>• Initial proposed findings of fact and conclusions of law ("Proposed Findings of Fact and Conclusions of Law"). |
| | Deadline for parties in interest to file statements or joinders in support of confirmation of the Plan. |
| | Deadline for non-Debtor parties to file witness declarations. |
| June 23, 2023 | Deadline for all parties to file counter-designations, objections to deposition designations, or objections to exhibit lists. |
| June 28, 2023 | Deadline for parties in interest to file objections to the (i) Vote Tabulation and/or (ii) Proposed Findings of Fact and Conclusions of Law. |
| June 30, 2023 | Deadline for all parties to file objections to counter designations. |
| July 5, 2023 | Deadline for Debtor to reply to objections to the (i) the Vote Tabulation and (ii) Proposed Findings of Fact and Conclusions of Law. |
| Week of July 10, 2023<br><br>(or a date | [Virtual] hearing on motions *in limine* / pre-trial conference. |

38

| convenient for the court) | |
| --- | --- |
| July 17–21, 24–28, 2023 | Confirmation Hearing |

13. ~~12.~~ *Voting Record Date.* The voting record date is **February 28, 2023** (the "Voting Record Date"), which is the date for determining which holders of Claims in Voting Classes (except Classes 1, 2, 4, and 5 (collectively, the "ATOP Classes")[6]) are entitled to vote on the Plan. Therefore, only those creditors in a Class entitled to vote on the Plan and holding Claims against the Debtor (except in the ATOP Classes) as of the Voting Record Date are entitled to vote on the Plan.

14. ~~13.~~ *Voting Deadline.* The deadline for voting on the Plan is **June 7, 2023, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Voting Deadline"). *You are **not** required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court, and provided you hold an Allowed Claim. However, if you are a Settling Bondholder,* ~~*Settling Monoline,*~~ *or National receiving the treatment provided to holders of Claims in Class 1, Class 5, or Class 9, you should review your Uninsured Bond Settlement Agreement,* ~~*Monoline Settlement Agreement,*~~ *or National PSA, as applicable, prior to voting or abstaining from voting on the Plan, and how it may affect your right to receive distributions.*

---

[6]  For the avoidance of doubt, because holders of Claims in the ATOP Classes must submit their vote and/or election through ~~DTC's~~the Automated Tender Offer Platform at The Depository Trust Company, the Voting Record Date shall not apply to the ATOP Classes; provided, however, the Voting Record Date shall apply to (i) any PREPA Revenue Bonds formerly insured by Assured in the primary market, and the principal amount of which was paid by Assured on or after the original maturity date of such bonds, (the "Assured Matured Bonds") or (ii) any claim arising from PREPA Revenue Bonds for which voting through ATOP cannot be established ("ATOP Ineligible Bonds"). The holder as of the Voting Record Date of the (i) claims arising from ~~such bonds~~the Assured Matured Bonds (including, without limitation, Assured) and (ii) claims from ATOP Ineligible Bonds shall not be required to tender such bonds through ATOP, and instead shall be provided with a ballot with which to vote such claims.

15.   ~~14.~~ If you received a Solicitation Package, including a Ballot or Notice and intend to vote on the Plan, you ***must***: (a) follow the instructions carefully; (b) complete ***all*** of the required information on the Ballot (as applicable); and (c) either (i) execute and return your completed Ballot according to and as set forth in detail in the voting instructions included in the Solicitation Package so that your Ballot is ***actually received*** by the Debtor's solicitation agent, Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent")[7] on or before the Voting Deadline, or (ii) instruct your broker or nominee (each, a "Nominee") to electronically deliver your bonds via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan on or before the Voting Deadline. ***Failure to follow such instructions may disqualify your vote.***

16.   ~~15.~~ ***Election Deadline.***  The deadline for holders of Claims in Class 5 that have the right to make an election of the form of distributions pursuant to the Plan to make such election is on **June 7, 2023, at 5:00 p.m. (Atlantic Standard Time)**, unless such time is extended (the "Election Deadline").  If you received an Election Notice with an option to make an election, you must: (a) follow the instructions carefully; and (b) deliver all of the required information according to and as set forth in detail in the election instructions so that it is received by your Nominee in sufficient time for your Nominee to actually effectuate your election through DTC's ATOP on or before the Election Deadline.

17.   ~~16.~~ ***Parties in Interest Not Entitled to Vote.***  Creditors in Class 14 (Section 510(b) Subordinated Claims) are deemed to reject the Plan and not entitled to vote.

18.   ~~17.~~ Creditors in Class 10 (Ordinary Course Customer Claims) and Class 13 (Convenience Claims) are deemed to accept the Plan and not entitled to vote.

---

[7]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

19.   18. If a Claim is listed on the Debtor's list of creditors [Case No. 17-4780, ECF No. 262] as contingent, unliquidated, or disputed and a proof of claim was not (i) filed by the earlier of the applicable bar date for the filing of proofs of claim established by the Court or the Voting Record Date (as applicable); or (ii) deemed timely filed by an order of the Court prior to the Voting Deadline, such Claim shall not be entitled to vote to accept or reject the Plan.  Proofs of claim filed for $0.00 or Claims that have been expunged by order of the Court are also not entitled to vote.

20.   19. If you have timely filed a proof of claim and disagree with the Debtor's classification of, or objection to, or request for estimation of your Claim and believe you should be entitled to vote on the Plan, you must serve the Debtor and the parties listed in paragraph 4243 of the Disclosure Statement Order and file with the Court (with a copy to Chambers) a motion (a "Rule 3018(a) Motion") for an order pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") temporarily allowing your Claim in a different amount or in a different Class for purposes of voting to accept or reject the Plan.  All Rule 3018(a) Motions must be filed on or before the tenth (10th) day after the later of (i) service of this Confirmation Hearing Notice and (ii) service of notice of an objection or request for estimation, if any, as to such Claim.  In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to the **Voting Deadline (June 7, 2023, at 5:00 p.m. (Atlantic Standard Time), which corresponds to 5:00 p.m. prevailing Eastern Time**).  Creditors may contact the Balloting Agent (i) via first class mail or via overnight courier, at Puerto Rico Ballot Processing, C/O Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, NY 11232, (ii) by telephone at (844) 822-9231

41

(toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or (iii) by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line),  to receive an appropriate Ballot for any Claim for which a proof of claim has been timely filed and a Rule 3018(a) Motion has been granted.  Rule 3018(a) Motions that are not timely filed and served in the manner set forth herein shall not be considered.

21.   20. If you wish to have your Claim temporarily allowed for voting purposes pursuant to Bankruptcy Rule 3018(a), a form of Rule 3018(a) motion together with instructions for filing and serving the motion is available at https://cases.ra.kroll.com/puertorico/.

22.   21. *Parties Who Will Not Be Treated as Creditors*.  Any holder of a Claim that (i) is scheduled in the List of Creditors at $0.00 and is not the subject of a timely filed proof of Claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, or (ii) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Court pursuant to either the Bankruptcy Code or any order of the Court, or otherwise deemed timely filed under applicable law, shall not be treated as a creditor with respect to such Claim for purposes of (a) receiving notices regarding the Plan, and (b) voting on the Plan.

23.   22. *Additional Information*.  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan, including Spanish translations thereof, should contact the Balloting Agent, Kroll Restructuring Administration LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time)

(Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line), or may view such documents by accessing either https://cases.ra.kroll.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

24. ~~23.~~ *Bankruptcy Rules 2002(c)(3) and 3016(c)).* **In accordance with Bankruptcy Rules 2002(c)(3) and 3016(c), set forth below are the release, exculpation, and injunction provisions contained in the Plan:**

**Section 27(A) – Discharge and Release of Claims and Causes of Action:**

1. **Complete Satisfaction, Discharge, and Release**

   Except as expressly provided in the Plan or the Confirmation Order, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims or Causes of Action against PREPA and Reorganized PREPA that arose, in whole or in part, prior to the Effective Date, relating to the Title III Case, the Debtor or Reorganized Debtor or any of their respective Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action. Upon the Effective Date, the Debtor and Reorganized Debtor shall be deemed discharged and released from any and all Claims, Causes of Action, and any other Debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all Debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not (a) a Proof of Claim based upon such Debt is filed or deemed filed under Bankruptcy Code section 501, (b) a Claim based upon such Debt is allowed under Bankruptcy Code section 502 (or is otherwise resolved), or (c) the Holder of a Claim based upon such Debt voted to accept the Plan; *provided*, for the avoidance of doubt, this Article XXVII.A.1 does not extend to or include any claims, rights, or defenses (whether ordinary or affirmative) of the Vitol Parties related to the Vitol-SCC AP preserved pursuant to the Vitol Settlement Agreement, and the Vitol Parties are not releasing and instead is expressly preserving, all of its claims, rights, or defenses related to the Vitol-SCC AP as provided in the Vitol Settlement Agreement.

2. **Preclusion from Assertion of Claims Against the Debtor**

   All Entities shall be precluded from asserting any and all Claims or other obligations, suits, judgments, damages, Debts, rights, remedies, Causes of Action, or liabilities, of any nature

whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor and Reorganized Debtor and each of their respective Assets, property and rights, relating to the Title III Case, regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, Debts, rights, remedies, Causes of Action, or liabilities.   In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action, or Debt of or against the Debtor and the Reorganized Debtor pursuant to Bankruptcy Code sections 524 and 944, applicable to the Title III Case pursuant to PROMESA section 301, and such discharge shall void and extinguish any judgment obtained against the Debtor or Reorganized Debtor and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, Debt, or liability.  As of the Effective Date, and in consideration for the value provided under the Plan, each Holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtor and Reorganized Debtor, and their respective Assets and property and all such Claims;  *provided*, for the avoidance of doubt, this Article XXVII.A.2 does not extend to or include any claims, rights, or defenses (whether ordinary or affirmative) of the Vitol Parties related to the Vitol-SCC AP preserved pursuant to the Vitol Settlement Agreement, and the Vitol Parties are is not releasing and instead is expressly preserving, all of its claims, rights, or defenses related to the Vitol-SCC AP as provided in the Vitol Settlement Agreement.

### 3.    Injunction Related to Discharge of Claims

Except as otherwise expressly provided in this Article XXVII of the Plan, the Confirmation Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold, or may hold Claims or any other Debt or liability that is discharged or released pursuant to Article XXVII hereof or who have held, hold, or may hold Claims or any other Debt or liability that is discharged or released pursuant to Article XXVII hereof are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) of any kind on any such Claim or other Debt or liability that is discharged or released pursuant to the Plan against any of the Released Parties or any of their respective Assets or property, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other Debt or liability that is discharged or released pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other Debt or liability that is discharged or released pursuant to the Plan, and (d) except to the extent provided, permitted, or preserved by Bankruptcy Code sections 553, 555, 556, 559, or 560 or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other Debt or liability that is discharged or released pursuant to the Plan.  Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

**Section 27(B) – Releases by the Debtor and Reorganized Debtor:**

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, and for good and valuable consideration, each of the Debtor and Reorganized Debtor, the Distribution Agent and each of the Debtor's and Reorganized Debtor's Related Persons shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally, and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that the Debtor, Reorganized Debtor, and the Distribution Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event, or other circumstance relating to the Title III Case, the Fuel Line Lender PSA, the National PSA, or the Debtor taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs, or fees.

### Section 27(C) – Releases by Holders of Claims:

Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, for good and valuable consideration, each Holder of a Claim is deemed to have released and discharged the Debtor and the Reorganized Debtor from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, intercompany transactions, the Title III Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Uninsured Bond ~~Settlement Agreement, the Monoline~~ Settlement Agreement, the Vitol Settlement Agreement, the Restructuring Transactions, the Fuel Line Lender PSA, the National PSA, or any contract, instrument, release, or other Definitive Documents, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Title III Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### Section 27(D) – Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Title III Case, the formulation, preparation, dissemination, negotiation, or filing of the Fuel Line Lender PSA, the National PSA, Disclosure Statement, the Plan, the Uninsured Bond ~~Settlement~~

45

~~Agreement, the Monoline~~ Settlement Agreement, the Vitol Settlement Agreement, or any Restructuring Transaction, contract, instrument, release or other Definitive Document, agreement, or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Title III Case, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. For the avoidance of doubt, notwithstanding anything contained herein to the contrary, the Plan shall not, and shall not be construed to, release or exculpate, any payment obligation under the applicable National Insurance Policy, to any beneficial holder of National Insured Bonds, in accordance with its terms solely to the extent of any failure of such holder to receive the treatment provided to Holders of Claims in Class 5 (or any claims that National may have against a beneficial holder of National Insured Bonds with respect to National's applicable obligations under the National Insurance Policies).

### Section 27(E) – Injunction

As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to this Article XXVII of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions, whether directly or indirectly, derivatively, or otherwise, on account of or based on the subject matter of such discharged Released Claims: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting, or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Article XXVII hereof; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration, or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or the Confirmation Order.

### Section 36(C) – Supplemental Injunction

Notwithstanding anything contained herein to the contrary, except to the limited extent provided in the Plan, all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to the Title III Case or any

Claim against the Debtor, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

1. Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

2. Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

3. Creating, perfecting, or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

4. Except as otherwise expressly provided in the Plan or the Confirmation Order, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

5. Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or the Confirmation Order, *provided*, *however*, that the Debtor's compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

Dated: _____ 2023                    Respectfully submitted,
       San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
        ppossinger@proskauer.com
        ebarak@proskauer.com
        ddesatnik@proskauer.com


/s/
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com


*Attorneys for the Financial Oversight and
Management Board as representative for
PREPA*

**<u>Schedule 3(a)</u>**

**Form of Notice of Voting Instructions for**

**Settling Bondholder Claims in Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims),
Non-Settling Bondholder Claims in Class 2 (Non-Settling Bondholder and Non-Settling
Monoline Claims), and Holders of Claims in Class 4 (Fuel Line Loan Claims)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>              Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF VOTING INSTRUCTIONS FOR [SETTLING BONDHOLDER CLAIMS IN CLASS 1] / [NON-SETTLING BONDHOLDER CLAIMS IN CLASS 2] / [HOLDERS OF CLAIM IN CLASS 4]

This Notice of Voting (the "Notice") is being sent to the beneficial holders of securities [issued by the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor")][2] giving rise to claims in **Class [1 / 2 / 4]** of the ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated ~~[●]~~March 1, 2023 [Case No. 17-BK-4780, ECF

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  [Applicable only to Classes 1 and 2.]

No. _____][3] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan").[4]   The **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** and the relevant CUSIPs are described on **Exhibit A** attached hereto.

[*PREPA Revenue Bond Claim.*   Settling Bondholders that are Holders of PREPA Revenue Bond Claims in Class 1 may vote to accept or reject the Plan.]   [*PREPA Revenue Bond Claim.*   Non-Settling Bondholders that are Holders of PREPA Revenue Bond Claims in Class 2 may vote to accept or reject the Plan.]

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of PREPA, is soliciting votes with respect to the Plan, from the holders of certain impaired Claims against PREPA.   By order dated [●], 2023 [ECF No. ____] (the "Disclosure Statement Order"), the Court approved the ~~Modified~~ *Disclosure Statement for the* ~~First~~ *Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, ~~dated  [●]~~ March 1, 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.   Instructions to cast your vote are below.

Electronic copies of the Plan and Disclosure Statement are enclosed in the package containing this Notice.   **If you have any questions regarding this Notice, please contact the Balloting Agent by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

\* \* \* \* \*

### VOTING PROCESS

If you are a beneficial holder of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** giving rise to Impaired Claims in **Class [1 / 2 / 4]**, you are entitled to cast a vote either to accept or reject the Plan.   **To have your vote counted, you must properly vote in accordance with these instructions so that your vote is actually received no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023.**

*You are encouraged to review the entire Disclosure Statement before casting your vote to accept or reject the Plan.*

### How to Submit a Valid Vote

If you wish to cast a vote to accept or reject the Plan, you must:

---

[3]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]   Unless otherwise defined herein, each capitalized term used herein shall have the meaning given to it in the Plan.

- instruct your bank, broker or other intermediary through which you hold your [bonds] / [trust certificates] in 'street name' (each, a "Nominee") to electronically deliver your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via the Automated Tender Offer Program ("ATOP") at The Depository Trust Company ("DTC") in accordance with your desire to vote to accept or reject the Plan.

In addition, by delivering your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via ATOP, you are certifying that:

1. either (a) your vote cast is the only vote cast by you on account of a **[PREPA Revenue Bond Claim] / [Fuel Line Loan Claim]**, or (b) in addition to the vote cast, one or more additional votes ("Additional Votes") on account of other **[PREPA Revenue Bond Claims] / [Fuel Line Loan Claims]** have been cast by one or more Nominees, and you have provided (or coordinated with your Nominee to provide) the Numerosity Spreadsheet (as defined below) to the Balloting Agent by the Voting Deadline;

2. you have voted all of your Claims on account of your **[PREPA Revenue Bonds] / [Fuel Line Loans]** to either accept or reject the Plan and acknowledge that no split votes will be permitted, and that if you cast conflicting votes in respect of such Claims on account of your **[PREPA Revenue Bonds] / [Fuel Line Loans]**, all votes cast by you will be disregarded;

3. you are the holder of the Claims in Class **[1 / 2 / 4]** on account of **[PREPA Revenue Bonds] / [Fuel Line Loans]** to which this Notice pertains or are an authorized signatory of such holder, and have full power and authority to vote to accept or reject the Plan; and

4. you have been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order, and acknowledge that the vote cast pursuant to these instructions is subject to all the terms and conditions set forth in the Plan, Disclosure Statement, and Disclosure Statement Order.

No paperwork is required to be delivered to Kroll Restructuring Administration LLC to cast a vote (except in the limited circumstance noted below in the section titled "*Numerosity Information Request – Applicable Only for Beneficial Holders Submitting More Than One Instruction Through ATOP*"). The sole means of casting a vote is to validly tender your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** into the proper ATOP envelope at DTC.

---

**THE VOTING DEADLINE IS
5:00 P.M. (ATLANTIC STANDARD TIME) ON JUNE 7, 2023.**

This date and time is referred to as the "Voting Deadline."

---

***NOTE REGARDING RESTRICTIONS ON TRANSFER IF YOU TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES]: IF YOU TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES]***

THROUGH ATOP, IT IS ANTICIPATED THAT YOU WILL BE RESTRICTED FROM TRANSFERRING YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] UNTIL IMMEDIATELY AFTER THE FIRST BUSINESS DAY FOLLOWING THE VOTING ~~TABULATION HAS BEEN FILED AND ONCE DTC RELEASES YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] FROM ATOP IN ACCORDANCE WITH ITS CUSTOMARY PROCEDURES (WHICH RELEASE FROM ATOP IS EXPECTED TO BE ON~~DEADLINE, OR AS SOON AS ~~POSSIBLE AFTER~~PRACTICABLE THEREAFTER, BUT NO LATER THAN JUNE 21, 2023~~)~~.

YOU MAY, HOWEVER, TRADE OR TRANSFER YOUR TENDERED [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] BY REVOKING YOUR VOTE AND WITHDRAWING ANY TENDERED [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] AT ANY TIME BEFORE THE VOTING DEADLINE.

IF YOU DESIRE TO RETAIN THE ABILITY TO TRADE OR TRANSFER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] PRIOR TO THE VOTING DEADLINE, THEN YOU SHOULD NOT TENDER YOUR [PREPA REVENUE BONDS] / [FUEL LINE LOAN TRUST CERTIFICATES] THROUGH ATOP.

\*   \*   \*   \*   \*

### How to Revoke a Valid Vote

You may revoke your vote to accept or reject the Plan and withdraw your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** tendered through DTC's ATOP at any time before the Voting Deadline.

If you wish to revoke your vote, you must instruct your Nominee to revoke your vote and withdraw your **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** via ATOP at DTC (which withdrawal will be confirmed by Kroll Restructuring Administration LLC ("Kroll")[5] once notified by DTC of the withdrawal request).  No paperwork is required to be delivered to Kroll to effectuate the revocation.

If you revoke your vote any time before the Voting Deadline, you may vote again at any time before the Voting Deadline, in accordance with the instructions to submit a valid vote above.

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

*   *   *   *   *

**Nominee Information Submission**

Any Nominees with beneficial holder clients who submit vote(s) to reject the Plan on account of Claims Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims), must send an Excel spreadsheet to puertoricoballots@ra.kroll.com (with 'PREPA Nominee Spreadsheet' in the subject line) containing the name(s), address(es), and ATOP instruction confirmation number(s) (also referred to as ATOP voluntary offer instruction(s) or "VOI(s)") associated with each vote to reject the Plan.

*   *   *   *   *

**Numerosity Information Submission**
**(Applicable Only for Beneficial Holders Submitting More than One Vote Through ATOP)**

Any beneficial holder of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** that holds multiple CUSIPs of **[PREPA Revenue Bonds] / [Fuel Line Loan Trust Certificates]** and submits more than one vote through one or more Nominees, MUST submit (or coordinate with their Nominee(s) to submit) a list of all such ATOP instruction confirmation numbers (also referred to as ATOP voluntary offer instructions or "VOIs"). The Balloting Agent has made available a template electronic spreadsheet (the "Numerosity Spreadsheet") on its website at: https://cases.primeclerk.com/puertorico (click on the link titled "Numerosity Spreadsheet").

Please return (or coordinate with your Nominee to return) the Numerosity Spreadsheet to the Balloting Agent in Excel format via email to https://cases.ra.kroll.com/puertorico/ (with 'PREPA Numerosity Spreadsheet' in the subject line). If you anticipate any difficulty in submitting your Numerosity Spreadsheet in Excel format, please contact Kroll at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers) or by e-mail at puertoricoballots@ra.kroll.com (with 'PREPA Numerosity Spreadsheet' in the subject line).

*   *   *   *   *

If you have any questions about your holdings, please contact your Nominee. Additionally, you must contact your Nominee to take any action described above.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC, BY TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR BY EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE). PLEASE NOTE THAT KROLL IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

**Exhibit A**

| Description | CUSIP |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

## Schedule 3(b)

**Form of Ballot for Settling Monolines on Account of Claims in
Class 1 (Settling Bondholder and Settling Monoline Claims)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**BALLOT FOR SETTLING MONOLINE ON ACCOUNT OF CLAIMS IN CLASS 1
(SETTLING BONDHOLDER AND SETTLING MONOLINE CLAIMS)**

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Stability Act* ("PROMESA"),[2] is soliciting votes with respect to the *First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [●], 2023 [Case No. 17-BK-4780, ECF No. _____][3] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ____] (the "Disclosure Statement Order"), the Court approved the *Modified Disclosure Statement for the First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*; dated [●], 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot.  **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan.  If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent"),[4] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by a Settling Monoline.  Pursuant to the Disclosure Statement Order, a Settling Monoline is entitled to accept or reject the Plan on account of Impaired Claims in Class 1 (Settling Bondholder and Settling Monoline Claims) arising from securities insured by such Settling Monoline.  **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.   **Online**:   Visit  **https://cases.ra.kroll.com/puertorico/**  and click the "Submit E-Ballot" link.   Follow the instructions set forth on the website.   You are

---

[2]  PROMESA is codified at 48 U.S.C. §§2101-2241

[3]  Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]  On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.   **First Class Mail, Hand Delivery, or Overnight Courier**: Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING**
**C/O KROLL RESTRUCTURING ADMINISTRATION LLC**
**(F/K/A PRIME CLERK LLC)**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**: Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery  All locations are available from April 10, 2023 to June 7, 2023 (except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| Don Frappe Inc. Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR 00610 | M — F 8:30 a.m. to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M — F 8:30 a.m. to 5:00 p.m. |
| LunaSpeiz 157 Calle de Luna, San Juan, PR 00901 | M — F 8:30 a.m. to 5:00 p.m. |

| Locations in the Commonwealth Accepting Ballots by Hand Delivery  All locations are available from April 10, 2023 to June 7, 2023 (except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| Centro Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |
| Club de Leones de Ponce Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | M – F 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above. Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

**The Ballot must actually be received by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim.

PLEASE COMPLETE THE FOLLOWING:

**Item 1.**          **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds Claim(s) in **Class 1 (Settling Bondholder and Settling Monoline Claims)** set forth below in the following aggregate amount:

$

\*   \*   \*   \*   \*

**Item 2.**          **Vote on Plan**.

The undersigned holder of a Claim in the amount set forth in **Item 1** above hereby votes to (please check one):

☐      **ACCEPT** (vote FOR) the Plan          ☐      **REJECT** (vote AGAINST) the Plan

**To submit your Ballot via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

                    **Unique E-Ballot ID#:**

**Kroll's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Creditors who cast a Ballot using Kroll's "E-Ballot" platform should NOT also submit a paper Ballot.

**Item 3.        Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in **Item 1** above, or (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Name of Holder:
_____        (Print or Type)

Signature:

Name of Signatory:
_____ (If other than holder)

Title: _____

Address:

_____

_____

Telephone
Number:

Email: _____

Date Completed:

**VOTING INSTRUCTIONS FOR A SETTLING MONOLINE
COMPLETING A BALLOT ON ACCOUNT OF CLAIMS IN CLASS 1
(SETTLING BONDHOLDER AND SETTLING MONOLINE CLAIMS)**

1.      This Ballot is submitted to you to (i) solicit your vote to accept or reject the *First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●], 2023 [Case No. 17-BK-4780, ECF No. _____]⁵ (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan.  The terms of the Plan are described in the *Modified Disclosure Statement for the First Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*; dated [●], 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement").  All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.      The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan.  In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3.      **To have your vote counted, you must properly complete, sign, and return this Ballot to the Balloting Agent so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

---

⁵   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.  **Online**:   Visit  **https://cases.ra.kroll.com/puertorico/**  and  click  the  "Submit E-Ballot"  link.   Follow  the  instructions  set  forth  on  the  website.   You  are encouraged  to  submit  your  Ballot  via  the  E-Ballot  platform.   If  you  choose  to submit  your  Ballot  via  the  E-Ballot  platform,  you  should  NOT  submit  your  paper copy Ballot as well.

b.  **First Class Mail, Hand Delivery, or Overnight Courier**:   Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.  **Hand  Delivery  to  On-Island  Collection  Site**:   Deliver  to  one  of  the  following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery | |
|---|---|
| All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| **Address** | **Hours (AST)** |
| Don Frappe Inc. Carr. #2km 141.5 | M – F 8:30 a.m. |

| Locations in the Commonwealth Accepting Ballots by Hand Delivery | |
|---|---|
| All locations are available from April 10, 2023 to June 7, 2023 (except weekends and federal holidays) | |
| **Address** | **Hours (AST)** |
| Bo. Quebrada Larga Añasco, PR 00610 | to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M – F 8:30 a.m. to 5:00 p.m. |
| LunaSpeiz 157 Calle de Luna, San Juan, PR 00901 | M – F 8:30 a.m. to 5:00 p.m. |
| Centro Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |
| Club de Leones de Ponce Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | M – F 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

4.     To properly complete the Ballot, you must follow the procedures described below:

a.   Ensure the information contained in **Item 1** of the Ballot is correct;

b.   You may not split your vote on the Plan.  You must vote to accept or reject the Plan with all the Claims you hold in a Class;

1

c.   If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

d.   If you also hold Claims in other Classes, you may receive more than one Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e.   If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f.   Provide your name and mailing address;

g.   Sign and date your Ballot; and

h.   Return your Ballot using an authorized method of return indicated herein.

5.     If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

\*   \*   \*   \*   \*

**IF YOU:**

(A)   **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

1

(B)    ~~DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,~~

(C)    ~~DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,~~

(D)    ~~RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR~~

(E)    ~~NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,~~

~~PLEASE CONTACT THE BALLOTING AGENT BY:~~

- ~~TELEPHONE AT (844) 822-9231 (TOLL-FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR~~

- ~~EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).~~

~~PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.~~

**~~Schedule 3(c)~~**

**Form of Ballot for Non-Settling Monolines on Account of Claims in
Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                       Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**BALLOT FOR
NON-SETTLING MONOLINES ON ACCOUNT OF CLAIMS IN CLASS 2
(NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)**

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] is soliciting votes with respect to the ~~First~~*Modified Second*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§2101-2241

*Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][3] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ____] (the "Disclosure Statement Order"), the Court approved the ~~Modified~~ Disclosure Statement for the ~~First~~Modified Second Amended Title III *Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [●]March 1, 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot. **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent"),[4] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by a Non-Settling Monoline. Pursuant to the Disclosure Statement Order, a Non-Settling Monoline is entitled to vote to accept or reject the Plan on account of Impaired Claims in Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims) arising from securities insured by such Non-Settling Monoline. **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.  **Online**: Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.  **First Class Mail, Hand Delivery, or Overnight Courier**: Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC**

---

[3]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

**(F/K/A PRIME CLERK LLC)**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c. **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery  All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u> Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Oceana HUB Center</u> 2 Calle Acerina Caguas, PR 00725 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>LunaSpeiz</u> 157 Calle de Luna, San Juan, PR 00901 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Centro</u> Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Club de Leones de Ponce</u> Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

**The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim or the right to vote on account of securities giving rise to such Claim.

PLEASE COMPLETE THE FOLLOWING:

<u>Item 1</u>.        **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds Claim(s) in **Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)** set forth below in the following aggregate amount:

| |
|---|
| $ |

\*     \*     \*     \*     \*

<u>Item 2</u>.        **Vote on Plan**.

The undersigned holder of a Claim in the amount set forth in <u>**Item 1**</u> above hereby votes to (please check <u>one</u>):

| | |
|---|---|
| ☐     <u>**ACCEPT**</u> (vote FOR) the Plan | ☐     <u>**REJECT**</u> (vote AGAINST) the Plan |

**To submit your Ballot via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:**

**Kroll's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Creditors who cast a Ballot using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

<u>**Item 3**</u>.         **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.   The undersigned certifies that (i) it is the holder of the Claim(s) identified in **<u>Item 1</u>** above, or (ii) it has asserted full power and authority to vote to accept or reject the Plan.   The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Name of Holder: | (Print or Type) |
| Signature: | |
| Name of Signatory: | (If other than holder) |
| Title: | |
| Address: | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

5

**VOTING INSTRUCTIONS FOR A NON-SETTLING MONOLINE
COMPLETING A BALLOT ON ACCOUNT OF CLAIMS IN CLASS 2
(NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)**

1.　　　This Ballot is submitted to you to (i) solicit your vote to accept or reject the ~~First~~*Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][5] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan. The terms of the Plan are described in the ~~Modified~~ *Disclosure Statement for the ~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [●]March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"). All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.　　　The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan. In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3.　　　**To have your vote counted, you must properly complete, sign, and return this Ballot to the Balloting Agent so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by <u>one</u> of the following methods:**

a.　　　**<u>Online</u>**:　　Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should <u>NOT</u> submit your paper copy Ballot as well.

---

[5]　　Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

b.   **First Class Mail, Hand Delivery, or Overnight Courier**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

<div align="center">

**PUERTO RICO BALLOT PROCESSING**
**C/O KROLL RESTRUCTURING ADMINISTRATION LLC**
**(F/K/A PRIME CLERK LLC)**
**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

</div>

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery — All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| Don Frappe Inc. Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | M – F 8:30 a.m. to 5:00 p.m. |
| Oceana HUB Center 2 Calle Acerina Caguas, PR 00725 | M – F 8:30 a.m. to 5:00 p.m. |
| LunaSpeiz 157 Calle de Luna, San Juan, PR 00901 | M – F 8:30 a.m. to 5:00 p.m. |
| Centro Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | M – F 8:30 a.m. to 5:00 p.m. |
| Club de Leones de Ponce Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | M – F 8:30 a.m. to 5:00 p.m. |

You must deliver the Ballot in the manner described above.  **Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

4.     To properly complete the Ballot, you must follow the procedures described below:

a.  Ensure the information contained in **<u>Item 1</u>** of the Ballot is correct;

b.  You may not split your vote on the Plan.  You must vote to accept or reject the Plan with all the Claims you hold in a Class;

c.  If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

d.  If you also hold Claims in other Classes, you may receive more than one Ballot or Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e.  If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f.  Provide your name and mailing address;

g.  Sign and date your Ballot; and

h.  Return your Ballot using an authorized method of return indicated herein.

5.     If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

*     *     *     *     *

**IF YOU:**

(A)  **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

(B)  **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

(C)  **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

(D) **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

(E) **NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **TELEPHONE** **AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR**

- **EMAIL** **AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**Schedule 3(dc)**

**Form of Ballot for National on Account of Claims in
Class 5 (National Insured Bond Claims)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## BALLOT FOR NATIONAL ON ACCOUNT OF CLAIMS
## IN CLASS 5 (NATIONAL INSURED BOND CLAIMS)

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] is soliciting votes with respect to the ~~First~~*Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  PROMESA is codified at 48 U.S.C. §§2101-2241

[●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][3]  (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the *Modified* Disclosure Statement for the *First*Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [●]March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot. **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC ("Kroll" or the "Balloting Agent"),[4] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by National Public Finance Guarantee Corporation ("National"). Pursuant to the Disclosure Statement Order, National is entitled to accept or reject the Plan on account of Impaired Claims in Class 5 (National Insured Bond Claims) arising from securities insured by National. **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a.  **Online**:  Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

b.  **First Class Mail, Hand Delivery, or Overnight Courier**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)**

---

[3]  Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[4]  On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

**850 THIRD AVENUE, SUITE 412**
**BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.    **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery<br><br>All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u><br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Oceana HUB Center</u><br>2 Calle Acerina<br>Caguas, PR 00725 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>LunaSpeiz</u><br>157 Calle de Luna,<br>San Juan, PR 00901 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Centro</u><br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Club de Leones de Ponce</u><br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

**The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

3

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim.

PLEASE COMPLETE THE FOLLOWING:

**Item 1**.        **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds Claim(s) in **Class 5 (National Insured Bond Claims)** set forth below in the following aggregate amount:

| |
|---|
| $ |

*   *   *   *   *

**Item 2**.        **Vote on Plan**.

The undersigned holder of a Claim in the amount set forth in **Item 1** above hereby votes to (please check <u>one</u>):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT** (vote FOR) the Plan | ☐ | **REJECT** (vote AGAINST) the Plan |

**To submit your Ballot via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico. Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

        **Unique E-Ballot ID#:**

**Kroll's "E-Ballot" platform is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.**

Creditors who cast a Ballot using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

<u>Item 3</u>.        **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in **<u>Item 1</u>** above, or (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

| | |
|---|---|
| Name of Holder: | (Print or Type) |
| Signature: | |
| Name of Signatory: | (If other than holder) |
| Title: | |
| Address: | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

5

**VOTING INSTRUCTIONS FOR NATIONAL ON ACCOUNT OF CLAIMS IN CLASS 5
(NATIONAL INSURED BOND CLAIMS)**

1.   This Ballot is submitted to you to (i) solicit your vote to accept or reject the ~~First~~*Modified Second* Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, dated [●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][5] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan.  The terms of the Plan are described in the ~~Modified~~ *Disclosure Statement for the ~~First~~Modified Second* Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority, dated [●]March 1, 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement").  All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.    The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan.  In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

3.    **To have your vote counted, you must properly complete, sign, and return this Ballot to the Balloting Agent so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by <u>one</u> of the following methods:**

a.   **Online**:   Visit **https://cases.ra.kroll.com/puertorico/** and click the "Submit E-Ballot" link.   Follow the instructions set forth on the website.   You are encouraged to submit your Ballot via the E-Ballot platform.   If you choose to submit your Ballot via the E-Ballot platform, you should <u>NOT</u> submit your paper copy Ballot as well.

---

[5]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

b.   **First Class Mail, Hand Delivery, or Overnight Courier**:  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

<div align="center">

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

</div>

If you would like to coordinate hand delivery of your Ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.   **Hand Delivery to On-Island Collection Site**:  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery<br><br>All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| Don Frappe Inc.<br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Oceana HUB Center<br>2 Calle Acerina<br>Caguas, PR 00725 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| LunaSpeiz<br>157 Calle de Luna,<br>San Juan, PR 00901 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Centro<br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |
| Club de Leones de Ponce<br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | M – F<br>8:30 a.m.<br>to<br>5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

4.    To properly complete the Ballot, you must follow the procedures described below:

a.  Ensure the information contained in **<u>Item 1</u>** of the Ballot is correct;

b.  You may not split your vote on the Plan.  You must vote to accept or reject the Plan with all the Claims you hold in a Class;

c.  If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and submit satisfactory evidence of your authority to so act (*e.g.*, a power of attorney or a certified copy of board resolutions authorizing you to so act);

d.  If you also hold Claims in other Classes, you may receive more than one Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e.  If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f.  Provide your name and mailing address;

g.  Sign and date your Ballot; and

h.  Return your Ballot using an authorized method of return indicated herein.

5.    If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

*        *        *        *        *

**IF YOU:**

(A)    **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

(B)    **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

(C)    **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

(D)    **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

(E)　　**NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **TELEPHONE** AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR

- **EMAIL** AT **PUERTORICOINFO@RA.KROLL.COM** (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**Schedule 3(ed)**

**Form of Ballot for
Holders of Claims in Class 3 (Pension
Claim), Class 6 (National Reimbursement
Claim), Class 7 (General Unsecured
Claims), Class 8 (Vitol Claims), Class 9
(Assured Insured Interest Rate Swaps Claims),
Class 11 (Eminent Domain/Inverse Condemnation
Claims), and Class 12 (Federal Claims),
Holders of Claims arising from Assured Matured
Bonds, and Holders of Claims Arising from ATOP Ineligible Bonds**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**BALLOT FOR [HOLDERS OF CLAIMS
IN [CLASS 1 (SETTLING BONDHOLDER
~~AND SETTLING MONOLINE~~ CLAIMS)[2] / [CLASS 2 (NON-SETTLING
BONDHOLDER
AND NON-SETTLING MONOLINE CLAIMS)[3]
] / [CLASS 3 (PENSION CLAIM)] / [CLASS
6 (NATONAL REIMBURSEMENT CLAIMS)] / [CLASS**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  [**NTD**: ATOP Ineligible Bonds]

[3]  [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

**7 (GENERAL UNSECURED CLAIMS)] / [CLASS 8 (VITOL
CLAIMS)] / [CLASS 9 (ASSURED INSURED INTEREST RATE
SWAPS CLAIMS)] / [CLASS 11 (EMINENT DOMAIN/INVERSE
CONDEMNATION CLAIMS)] / [CLASS 12 (FEDERAL CLAIMS)]]**

The Financial Oversight And Management Board For Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[4] is soliciting votes with respect to the ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated ~~[●]~~March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][5] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of certain impaired Claims against PREPA.

By order dated [●], 2023 [ECF No. ___] (the "Disclosure Statement Order"), the Court approved the ~~Modified~~ *Disclosure Statement for the* ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~[●]~~March 1, 2023 [ECF No. ___] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), and authorized the Debtor to solicit votes with respect to the acceptance or rejection of the Plan.

Copies of the Plan and Disclosure Statement are enclosed in the package containing this Ballot. **All capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Plan. If you have any questions regarding the proper completion of this Ballot, please contact Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll" or the "Balloting Agent"),[6] by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).**

This Ballot is to be used for voting by holders of Claims in the Classes listed below. **To have your vote counted, you must complete, sign, and return this Ballot so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023, unless such time is extended (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by one of the following methods:**

a. **Online:** Visit https://cases.ra.kroll.com/puertorico/ and click the "Submit E-Ballot" link. Follow the instructions set forth on the website. You are encouraged to submit your Ballot via the E-Ballot platform. If you choose to submit your Ballot via the E-Ballot platform, you should NOT submit your paper copy Ballot as well.

---

[4]   PROMESA is codified at 48 U.S.C. §§2101-2241

[5]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[6]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

b.    **First Class Mail, Hand Delivery, or Overnight Courier:**  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINISTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

If you would like to coordinate hand delivery of your ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.    **Hand Delivery to On-Island Collection Site:**  Deliver to one of the following on-island locations:

| Locations in the Commonwealth Accepting Ballots by Hand Delivery  All locations are available from **April 10, 2023** to **June 7, 2023** (except weekends and federal holidays) | |
| --- | --- |
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u> Carr. #2km 141.5 Bo. Quebrada Larga Añasco, PR  00610 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Oceana HUB Center</u> 2 Calle Acerina Caguas, PR 00725 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>LunaSpeiz</u> 157 Calle de Luna, San Juan, PR 00901 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Centro</u> Ave. Muñoz Rivera 501, 3Fl San Juan, PR 00918 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |
| <u>Club de Leones de Ponce</u> Club House Bo. Carrillo Carretera #14 km 5.1, Ponce, PR 00731 | <u>M – F</u> 8:30 a.m. to 5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform).**

**The Ballot must <u>actually be received</u> by the Balloting Agent by no later than the Voting Deadline (5:00 p.m. (Atlantic Standard Time) on June 7, 2023), unless such time is extended by the Debtor.**

Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, any Claim, and without prejudice to the Debtor's rights in any other context, each Claim within a Class of Claims entitled to vote to accept or reject the Plan shall be in an amount as determined by the procedures set forth in the Disclosure Statement Order.

This Ballot does not and shall not be deemed to constitute (i) an assertion of a Claim, (ii) a proof of claim, or (iii) an admission by the Debtor of the nature, validity, or amount of any Claim.

Pursuant to the Plan, you may be required, as a condition to receiving any distribution on your Claim, to complete the appropriate Internal Revenue Service Form W-8 or Form W-9, as applicable.  Information relating to these forms and instructions on filling them out can be found on the Internal Revenue Service's website: https://www.irs.gov/.

*(Continued on Next Page)*

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1**.          **Amount of Claim**

For purposes of voting to accept or reject the Plan, the undersigned holds the Claim(s) in [[Class 1 (Settling Bondholder ~~and Settling Monoline~~ Claims)[1]] / [Class 2 (Non-Settling Bondholder and Non-Settling Monoline Claims)[2]] [Class 3 (Pension Claim)] / [Class 6 (National Reimbursement Claim] / [Class 7 (General Unsecured Claims)] / [Class 8 (Vitol Claims)] / [Class 9 (Assured Insured Interest Rate Swaps Claims)] / [Class 11 (Eminent Domain/Inverse Condemnation Claims)] / [Class 12 (Federal Claims)]] / as of **February 28, 2023**, the Voting Record Date, as set forth below in the following aggregate amount:

| |
|---|
| $ |

To submit your [election in Item 2 and] / [information in Item 2 and] vote in Item [2] / [3] below via the "E-Ballot" platform, please visit https://cases.ra.kroll.com/puertorico.  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

                   **Unique E-Ballot ID#:**

Kroll's "E-Ballot" platform is the sole manner in which elections and votes will be accepted via electronic or online transmission.  Elections and votes submitted by facsimile, email or other means of electronic transmission will not be counted.

Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an E-Ballot for each E-Ballot ID# you receive, as applicable.

Creditors who make an election or vote using Kroll's "E-Ballot" platform should <u>NOT</u> also submit a paper Ballot.

**Item 2**.[3]          **Election to be Treated as Convenience Claim (Class 13).**

Pursuant to the Plan, any holder of an Allowed PREPA General Unsecured Claim may elect to (a) reduce the amount of such Allowed Claim to $10,000.00 and (b) have such reduced Claim be

---

[1]   [**NTD**: ATOP Ineligible Bonds]

[2]   [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

[3]   [Item 2 election only to be included for ballots delivered to holders of Claims in Class 7 (General Unsecured Claims)].

treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim.

Any holder of multiple Allowed PREPA General Unsecured Claims may elect to (a) reduce the amount of such multiple Claims to an aggregate amount of $20,000.00 and (b) have such reduced claims be treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim; provided, however, that the aggregate amount of consideration to be made available to Convenience Claims shall be One Million Dollars ($1,000,000.00); and provided, further, that in the event the Convenience Cap is exceeded, holders of Allowed Convenience Claims shall receive a Pro Rata Share of the Convenience Cap. If you hold multiple Allowed PREPA General Unsecured Claims, receive more than one ballot, and wish to make this election, you must make a consistent election on all the ballots you received for them to be treated pursuant to Class 13 (Convenience Claims).  If the ballots do not all consistently elect to be treated Class 13 (Convenience Claims), such election will not be effective.

If you elect to have your Claim reduced and treated as a Convenience Claim in Class 13, you will be deemed to have accepted the Plan as a holder of a Claim in Class 13 (Convenience Claims).

*   *   *   *   *

The undersigned holder of a General Unsecured Claim in Class 7 in the amount set forth in Item 1 above hereby elects to have such holder's General Unsecured Claim (a) reduced to $10,000.00 (and if such holder holds multiple Allowed PREPA General Unsecured Claims, such multiple claims reduced to an aggregate amount of $20,000.00) and (b) treated as a Convenience Claim in Class 13.

| | |
|---|---|
| ☐ | **Elect to be Treated as Convenience Claim in Class 13 (Available only to holders of Claims in Class 7)** <br><br> **If you make the election above, skip to Item 4 below as you are deemed to have accepted the Plan.** |

**Item [2] / [3].**      **Vote on Plan [(skip if you have elected to be treated as a Convenience Claim in Item 2 above)].**

The undersigned holder of a Claim in the amount set forth in Item 1 above hereby votes to (please check one):

| | | | |
|---|---|---|---|
| ☐ | **ACCEPT (vote FOR) the Plan** | ☐ | **REJECT (vote AGAINST) the Plan** |

6

**Item [3] / [4].**          **Acknowledgements and Certification.**

By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Plan, Disclosure Statement, and Disclosure Statement Order.  The undersigned certifies that (i) it is the holder of the Claim(s) identified in Item 1 above, or (ii) it has full power and authority to vote to accept or reject the Plan [and make the election in Item 2 above].  The undersigned further acknowledges that the Debtor's solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the District Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

---

Name of Holder:

                                  (Print or Type)


Signature:

Name of Signatory:

                                  (If other than holder)

Title:

Address:




Telephone
Number:

Email:

Date Completed:

---

7

**VOTING
AND ELECTION INSTRUCTIONS FOR COMPLETING
THE BALLOT FOR CLAIMS IN [CLASS 1
(SETTLING BONDHOLDER ~~AND SETTLING MONOLINE~~ CLAIMS)[4]] / [CLASS 2
(NON-SETTLING
BONDHOLDER AND NON-SETTLING MONOLINE
CLAIMS)[5]] / [CLASS 3 (PENSION CLAIM)]
/ [CLASS 6 (NATONAL REIMBURSEMENT CLAIMS)]
/ [CLASS 7 (GENERAL UNSECURED CLAIMS)] / [CLASS
8 (VITOL CLAIMS)] / [CLASS 9 (ASSURED INSURED INTEREST
RATE SWAPS CLAIMS)] / [CLASS 11 (EMINENT DOMAIN/INVERSE
CONDEMNATION CLAIMS)] / [CLASS 12 (FEDERAL CLAIMS)]]**

1.      This Ballot is submitted to you to (i) solicit your vote to accept or reject the ~~First~~ _Modified Second_ _Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,_ dated [~~●~~]_March 1_, 2023 [Case No. 17-BK-4780, ECF No. _____][6] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), and (ii) consent to the injunction and release provisions of the Plan if you vote to accept the Plan.  The terms of the Plan are described in the ~~Modified~~ _Disclosure Statement for the_ ~~First~~ _Modified Second_ _Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority_, dated [~~●~~]_March 1_, 2023 [ECF No. ____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement").  All capitalized terms used but not otherwise defined herein or in the Ballot shall have the meanings given to such terms in the Plan.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.      The Plan will be accepted by a Class of Claims if it is accepted by the holders of two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in a Class that have voted to accept or reject the Plan.  In the event a Class rejects the Plan, the Court may nevertheless confirm the Plan and thereby make it binding on holders of Claims in the Class if the Court finds the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in the Class and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of PROMESA Section 314(b) and Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Court, all holders of Claims against the Debtor (including those holders who abstain from voting on or reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan.

---

[4]   [**NTD**: ATOP Ineligible Bonds]

[5]   [**NTD**: Assured Matured Bonds and ATOP Ineligible Bonds]

[6]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

3.  [Pursuant to the Plan, any holder of an Allowed PREPA General Unsecured Claim may elect to (a) reduce the amount of such Allowed Claim to $10,000.00 and (b) have such reduced Claim be treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim; provided, however, that the aggregate amount of consideration to be made available to Convenience Claims shall be One Million Dollars ($1,000,000.00); and provided, further, that in the event the Convenience Cap is exceeded, holders of Allowed Convenience Claims shall receive a Pro Rata Share of the Convenience Cap.  Any holder of multiple Allowed PREPA General Unsecured Claims may elect to (a) reduce the amount of such multiple Claims to an aggregate amount of $20,000.00 and (b) have such reduced claims be treated pursuant to Class 13 (Convenience Claims), receiving a projected recovery of 100% of such reduced claim.  If you elect to have your Claim reduced and treated as a Convenience Claim in Class 13, you will be deemed to have accepted the Plan as a holder of a Claim in Class 13 (Convenience Claims).][7]

4.  **To have your vote or election counted, you must properly complete, sign, and return this Ballot to Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll" or the "Balloting Agent") so that it is received by the Balloting Agent no later than 5:00 p.m. (Atlantic Standard Time) on June 7, 2023 (the "Voting Deadline").**

**Ballots must be delivered to the Balloting Agent by <u>one</u> of the following methods:**

a.  **Online:**  Visit https://cases.ra.kroll.com/puertorico/ and click the "Submit E-Ballot" link.  Follow the instructions set forth on the website.  You are encouraged to submit your Ballot via the E-Ballot platform.  If you choose to submit your Ballot via the E-Ballot platform, you should <u>NOT</u> submit your paper copy Ballot as well.

b.  **First Class Mail, Hand Delivery, or Overnight Courier:**  Deliver to the address below (or in the enclosed envelope, which may have a different zip code):

<div align="center">

**PUERTO RICO BALLOT PROCESSING
C/O KROLL RESTRUCTURING ADMINSTRATION LLC
(F/K/A PRIME CLERK LLC)
850 THIRD AVENUE, SUITE 412
BROOKLYN, NY 11232**

</div>

If you would like to coordinate hand delivery of your ballot to the address above, please send an email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line) and provide the anticipated date and time of your delivery.

c.  **Hand Delivery to On-Island Collection Site:**  Deliver to one of the following on-island locations:

---

[7]  Applicable only to Class 7 (General Unsecured Claims).

| **Locations in the Commonwealth**<br>**Accepting Ballots by Hand Delivery**<br><br>All locations are available from<br>**April 10, 2023** to **June 7, 2023**<br>(except weekends and federal holidays) | |
|---|---|
| **Address** | **Hours (AST)** |
| <u>Don Frappe Inc.</u><br>Carr. #2km 141.5<br>Bo. Quebrada Larga<br>Añasco, PR  00610 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Oceana HUB Center</u><br>2 Calle Acerina<br>Caguas, PR 00725 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>LunaSpeiz</u><br>157 Calle de Luna,<br>San Juan, PR 00901 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Centro</u><br>Ave. Muñoz Rivera 501, 3Fl<br>San Juan, PR 00918 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |
| <u>Club de Leones de Ponce</u><br>Club House Bo. Carrillo<br>Carretera #14 km 5.1,<br>Ponce, PR 00731 | <u>M – F</u><br>8:30 a.m.<br>to<br>5:00 p.m. |

**You must deliver the Ballot in the manner described above.  Ballots will not be accepted by telecopy, facsimile, electronic mail, or other electronic means of transmission (except online via Kroll's E-Ballot platform in accordance with the instructions above).**

5.      To properly complete the Ballot, you must follow the procedures described below:

a.  Ensure the information contained in <u>Item 1</u> of the Ballot is correct;

b.  You may not split your vote on the Plan.  You must vote to accept or reject the Plan, or make an election with respect to, all the Claims you hold in a Class;

c.  If you are completing this Ballot on behalf of another entity, indicate your relationship to such entity and the capacity in which you are signing and

submit satisfactory evidence of your authority to so act (e.g., a power of attorney or a certified copy of board resolutions authorizing you to so act);

d. If you also hold Claims in other Classes, you may receive more than one Ballot, labeled for a different Class of Claims.  Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims against the Debtor only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on the Ballot;

e. If you believe you have received the wrong Ballot, please contact the Balloting Agent immediately;

f. Provide your name and mailing address;

g. Sign and date your Ballot; and

h. Return your Ballot using an authorized method of return indicated herein.

6. If more than one Ballot voting the same Claim is received by the Balloting Agent, the latest Ballot received prior to the Voting Deadline will, to the extent of any inconsistencies between the Ballots, supersede and revoke any prior Ballot.

\*   \*   \*   \*   \*

**IF YOU:**

(A)   **HAVE ANY QUESTIONS REGARDING THE BALLOT,**

(B)   **DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT,**

(C)   **DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR THE PLAN,**

(D)   **RECEIVED SOLICITATION PACKAGE MATERIALS IN ELECTRONIC FORMAT AND DESIRE PAPER COPIES, OR**

(E)   **NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS,**

**PLEASE CONTACT THE BALLOTING AGENT BY:**

- **TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), OR**

- **EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

**PLEASE DO NOT DIRECT ANY INQUIRIES TO THE OVERSIGHT BOARD, AAFAF, THE DEBTOR, OR THE COURT.**

**Schedule 4(a)**

**Notice of Non-Voting Status (Deemed to Reject)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS
### (CLASS 14 (SECTION 510(B) SUBORDINATED CLAIMS)) – DEEMED TO REJECT

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the ~~Modified~~ Disclosure Statement for the *~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2]  (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *First**Modified Second** Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOU ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF YOUR CLAIM(S) AGAINST THE DEBTOR.  THEREFORE, PURSUANT TO SECTION 1126(g) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE REJECTED THE PLAN, AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

***Confirmation Hearing*.**  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Confirmation Objection Deadline.* The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[4] (the "Confirmation Objection Deadline"). Parties who do not file an objection to the Plan or the proposed confirmation order prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

*Plan Confirmation Depository.* Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

*Procedures for Filing Objections and Responses to Confirmation.* Objections and responses to confirmation of the Plan must:

    a. Be in writing, in English, and signed;

    b. State the name, address, and nature of the Claim of the objecting or responding party;

    c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

    d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

        i. If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

            United States District Court, Clerk's Office
            150 Ave. Carlos Chardon Ste. 150,
            San Juan, P.R. 00918-1767

---

[4] The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

e.   be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.


**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("<u>KROLL</u>"),[5] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT <u>PUERTORICOINFO@RA.KROLL.COM</u> (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

[*Remainder of page intentionally left blank*]

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023        */s/*
     San Juan, Puerto Rico        Martin J. Bienenstock

Paul V. Possinger

Ehud Barak

Margaret A. Dale

Michael T. Mervis

Daniel S. Desatnik

(Admitted *Pro Hac Vice*)

**PROSKAUER ROSE LLP**

Eleven Times Square

New York, NY 10036

Tel: (212) 969-3000

Fax: (212) 969-2900

Email: mbienenstock@proskauer.com

       ppossinger@proskauer.com

       ebarak@proskauer.com

       ddesatnik@proskauer.com

*/s/*

Hermann D. Bauer

USDC No. 215205

**O'NEILL & BORGES LLC**

250 Muñoz Rivera Ave., Suite 800

San Juan, PR 00918-1813

Tel:  (787) 764-8181

Fax:  (787) 753-8944

Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and Management Board as representative for the PREPA*

**<u>Schedule 4(b)</u>**
**Notice of Non-Voting Status (Deemed to Accept)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**NOTICE OF NON-VOTING STATUS CLASS 10 (ORDINARY COURSE CUSTOMER CLAIMS) AND CLASS 13 (CONVENIENCE CLAIMS)) – DEEMED TO ACCEPT**

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the ~~Modified~~ *Disclosure Statement for the* ~~First~~*Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *First**Modified Second* *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTOR ARE UNIMPAIRED. THEREFORE, PURSUANT TO SECTION 1126(f) OF THE BANKRUPTCY CODE, YOU ARE (I) DEEMED TO HAVE ACCEPTED THE PLAN, AND (II) NOT ENTITLED TO VOTE ON THE PLAN.**

***Confirmation Hearing*.** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time)**.

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Confirmation Objection Deadline.*   The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[4] (the "Confirmation Objection Deadline").  Parties who do not file an objection to the Plan or the proposed confirmation order prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

*Plan Confirmation Depository*.   Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

*Procedures for Filing Objections and Responses to Confirmation*. Objections and responses to confirmation of the Plan must:

 a. Be in writing, in English, and signed;

 b. State the name, address, and nature of the Claim of the objecting or responding party;

 c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

 d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

  i. If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

   United States District Court, Clerk's Office
   150 Ave. Carlos Chardon Ste. 150,
   San Juan, P.R. 00918-1767

---

[4] The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

e.  be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

Dated: _____, 2023
      San Juan, Puerto Rico

*/s/*
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com
       ddesatnik@proskauer.com

*/s/*
Hermann D. Bauer
USDC No. 215205

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

5

**Schedule 4(c)**

**Notice of Non-Voting Status (Disputed Claims)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                  Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**NOTICE OF NON-VOTING STATUS (DISPUTED CLAIMS)**

You are receiving this Notice because you hold a Claim that is subject to an objection.

You should read this Notice carefully and discuss it with your attorney.  If you do not have an attorney, you may wish to consult one.

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the ~~Modified~~ *Disclosure Statement for the ~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated ~~[●]~~March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated ~~[●]~~March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.  You are **not** required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court.

**YOU ARE NOT ENTITLED TO VOTE YOUR CLAIM TO ACCEPT OR REJECT THE PLAN UNLESS YOUR CLAIM HAS BEEN ALLOWED PURSUANT TO AN ORDER OF THE COURT ON OR BEFORE JUNE 7, 2023.**

You may seek to challenge the allowance or disallowance of your Claim for voting purposes by filing a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your Claim (a "Rule 3018(a) Motion").  In accordance with Bankruptcy Rule 3018(a), as to any to any

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to **June 7, 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")**.    A form of Rule 3018(a) Motion is available at https://cases.ra.kroll.com/puertorico/.

*Procedures for Filing a Rule 3018(a) Motion*. A motion pursuant to Bankruptcy Rule 3018(a) must:

a.   Be in writing, in English, and signed;

b.   State your name and address;

c.   State with particularity the basis and nature of your Claim and the reasons why the Court should temporarily allow your Claim for voting purposes;

d.   Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time)**. [4]

i.   If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time)**. [5]

*        *        *        *        *

*Confirmation Hearing*.    A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States

---

[4]   [Tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection ~~or request for estimation~~, if any, as to such Claim.]

[5]   [Tenth (10th) day after the later of (i) service of the Confirmation Hearing Notice, and (ii) service of notice of an objection ~~or request for estimation~~, if any, as to such Claim.]

District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023  at 9:30 a.m. (Atlantic Standard Time)**.

*Confirmation Objection Deadline.*  The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[6] (the "Confirmation Objection Deadline").  Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

*Plan Confirmation Depository*.  Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

*Procedures for Filing Objections and Responses to Confirmation*.  Objections and responses to confirmation of the Plan must:

a.  Be in writing, in English, and signed;

b.  State the name, address, and nature of the Claim of the objecting or responding party;

c.  State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

d.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

---

[6]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

i.   If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

e.   be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received on or before the **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC, BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

[*Remainder of page intentionally left blank*]

Dated: _____, 2023
　　　　San Juan, Puerto Rico

/s/
Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Margaret A. Dale
Michael T. Mervis
Daniel S. Desatnik
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
　　　　ppossinger@proskauer.com
　　　　ebarak@proskauer.com
　　　　ddesatnik@proskauer.com

/s/
Hermann D. Bauer
USDC No. 215205

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
PREPA*

6

**<u>Schedule 4(d)</u>**

**Notice of Non-Voting Status for  Holders of PREPA
Revenue Bond Claims Insured by
~~a Settling Monoline or~~ a Non-Settling Monoline**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**NOTICE
OF NON-VOTING STATUS [CLASS 1̶2 (S̶E̶T̶T̶L̶I̶N̶G̶ ̶B̶O̶N̶D̶H̶O̶L̶D̶E̶R̶ ̶A̶N̶D̶ ̶S̶E̶T̶T̶L̶I̶N̶G̶ ̶M̶O̶N̶O̶L̶I̶N̶E̶ ̶C̶L̶A̶I̶M̶S̶)̶]̶ ̶/̶ ̶[̶C̶L̶A̶S̶S̶ ̶2̶ ̶(NON-SETTLING BONDHOLDER AND NON-SETTLING MONOLINE CLAIMS)]̶**

      **PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the

District of Puerto Rico approved the ~~*Modified*~~ *Disclosure Statement for the* ~~*First*~~*Modified*

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [●]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the *FirstModified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.

**Voting with respect to PREPA Revenue Bond Claims Insured by *[a Settling Monoline / a Non-Settling Monoline]*.**

**PURSUANT TO THE ORDER APPROVING THE DISCLOSURE STATEMENT, [_____] SHALL BE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ON ACCOUNT OF ALL [_____] INSURED BOND CLAIMS. ACCORDINGLY, YOU ARE NOT ENTITLED TO VOTE ON ACCOUNT OF SUCH CLAIM(S).**

*Confirmation Hearing.*   A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767

(or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at**

**9:30 a.m. (Atlantic Standard Time).**

      *Confirmation Objection Deadline.*   The Court has established **5:00 p.m. (Atlantic**

**Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation

of the proposed Plan or the proposed confirmation order[4] (the "Confirmation Objection

Deadline").  Parties who do not file an objection to the Plan prior to the Confirmation Objection

Deadline will be prohibited from making an oral presentation before the Court at the

Confirmation Hearing.

      *Plan Confirmation Depository*.   Information relating to confirmation of the Plan is

available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

      *Procedures for Filing Objections and Responses to Confirmation*.   Objections and

responses to confirmation of the Plan must:

    a.   Be in writing, in English, and signed;

    b.   State the name, address, and nature of the Claim of the objecting or
        responding party;

    c.   State with particularity the basis and nature of any objection or response and
        include, where appropriate, proposed language to be inserted in the Plan or the
        proposed confirmation order to resolve any such objection or response;

    d.   Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico*
        *Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re*
        *Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the
        Court's case filing system in searchable portable document format **on or**
        **before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m.**
        **(Atlantic Standard Time))**.

---

[4]  The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing
Atlantic Time).

    i.   If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

> United States District Court, Clerk's Office
> 150 Ave. Carlos Chardon Ste. 150,
> San Juan, P.R. 00918-1767

so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

    e.  be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Puerto Rico Electric Power Authority*) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC,[5] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC) , 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT PUERTORICOINFO@RA.KROLL.COM (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023          /s/
     San Juan, Puerto Rico          Martin J. Bienenstock
                                     Paul V. Possinger
                                     Ehud Barak
                                     Margaret A. Dale
                                     Michael T. Mervis
                                     Daniel S. Desatnik
                                     (Admitted *Pro Hac Vice*)
                                     **PROSKAUER ROSE LLP**
                                     Eleven Times Square
                                     New York, NY 10036
                                     Tel: (212) 969-3000
                                     Fax: (212) 969-2900
                                     Email: mbienenstock@proskauer.com
                                                  ppossinger@proskauer.com
                                                  ebarak@proskauer.com
                                                  ddesatnik@proskauer.com

/s/
Hermann D. Bauer
USDC No. 215205

                                     **O'NEILL & BORGES LLC**
                                     250 Muñoz Rivera Ave., Suite 800
                                     San Juan, PR 00918-1813
                                     Tel:  (787) 764-8181
                                     Fax:  (787) 753-8944
                                     Email: hermann.bauer@oneillborges.com

                                     *Attorneys for the Financial Oversight and*
                                     *Management Board as representative for the*
                                     *PREPA*

**<u>Schedule 4(e)</u>**

**Notice of Non-Voting Status for Holders of Claims
Subject to Administrative Claims Reconciliation**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>              Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

## NOTICE OF NON-VOTING STATUS
## (CLAIMS SUBJECT TO ADMINISTRATIVE CLAIMS RECONCILIATION)

> You are receiving this Notice because you hold a Claim that was transferred to administrative claims reconciliation pursuant to the *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [Case No. 17-3283, ECF No. 12274] (the "ACR Order").
>
> You should read this Notice carefully and discuss it with your attorney.  If you do not have an

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

attorney, you may wish to consult one.

**PLEASE TAKE NOTICE THAT** on [●], 2023, the United States District Court for the District of Puerto Rico approved the ~~Modified~~ *Disclosure Statement for the* ~~First~~*Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated [~~●~~]March 1, 2023 [Case No. 17-BK-4780, ECF No. _____][2] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, including all exhibits and attachments thereto, the "Disclosure Statement"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] for use in soliciting acceptances or rejections of the ~~First~~*Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [~~●~~]March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan"), from the holders of impaired Claims who are (or may be) entitled to receive distributions under the Plan.  You are not required to vote on the Plan to receive distributions pursuant to the terms of the Plan, if confirmed by the Court.

**YOU ARE NOT ENTITLED TO VOTE YOUR CLAIM TO ACCEPT OR REJECT THE PLAN, UNLESS YOUR CLAIM HAS BEEN ALLOWED PURSUANT TO AN ORDER OF THE COURT ON OR BEFORE JUNE 7, 2023.**

You may seek to challenge the allowance or disallowance of your Claim for voting purposes by filing a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily

---

[2]   Unless otherwise specified herein, docket references shall refer to Case No. 17-BK-4780.

[3]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

allowing your Claim (a "Rule 3018(a) Motion").  In accordance with Bankruptcy Rule 3018(a), as to any to any creditor filing a Rule 3018(a) Motion, such creditor's Ballot will not be counted except as may be otherwise ordered by the Court prior to **June 7, 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")**.  A form of Rule 3018(a) Motion, together with instructions for filing and serving the 3018(a) Motion, is available at https://cases.ra.kroll.com/puertorico/.

*Procedures for Filing a Rule 3018(a) Motion*.  A motion pursuant to Bankruptcy Rule 3018(a) must:

e.  Be in writing, in English, and signed;

f.  State either your or your designated representative's name, address, telephone number, and email address;

g.  State with particularity the basis and nature of your Claim and the reasons why the Court should temporarily allow your Claim for voting purposes;

h.  Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time)**.[4]

i.  If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

United States District Court, Clerk's Office
150 Ave. Carlos Chardon Ste. 150,
San Juan, P.R. 00918-1767

so as to be received **on or before [●], 2023 at 5:00 p.m. (Atlantic Standard Time).** [5]

\*       \*       \*       \*       \*

---

[4]  [**Note:** Tenth (10th) day after deadline to serve Confirmation Hearing Notice.]

[5]  [**Note:** Tenth (10th) day after deadline to serve Confirmation Hearing Notice.]

***Confirmation Hearing.*** A hearing to consider confirmation of the Plan (the "Confirmation Hearing") will be held before The Honorable Laura Taylor Swain, United States District Court Judge, at the United States District Court for the District of Puerto Rico, Clemente Ruiz Nazario United States Courthouse, 150 Carlos Chardón Avenue, San Juan P.R. 00918-1767 (or as otherwise provided pursuant to an order of the Court) on **July 17–21, 24, 26–28, 2023 at 9:30 a.m. (Atlantic Standard Time).**

***Confirmation Objection Deadline.*** The Court has established **5:00 p.m. (Atlantic Standard Time) on June 7, 2023** as the deadline to file objections or responses to confirmation of the proposed Plan or the proposed confirmation order[6] (the "Confirmation Objection Deadline"). Parties who do not file an objection to the Plan prior to the Confirmation Objection Deadline will be prohibited from making an oral presentation before the Court at the Confirmation Hearing.

***Plan Confirmation Depository***. Information relating to confirmation of the Plan is available online in the Plan Confirmation Depository at titleiiiplandataroom.com.

***Procedures for Filing Objections and Responses to Confirmation***. Objections and responses to confirmation of the Plan must:

  a. Be in writing, in English, and signed;

  b. State the name, address, and nature of the Claim of the objecting or responding party;

  c. State with particularity the basis and nature of any objection or response and include, where appropriate, proposed language to be inserted in the Plan or the proposed confirmation order to resolve any such objection or response;

  d. Be filed electronically with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re*

---

[6]   The deadline for the Debtor to file the proposed confirmation order is May 31, 2023 at 5:00 p.m. (prevailing Atlantic Time).

4

*Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS, through the Court's case filing system in searchable portable document format **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

    i.    If you are <u>not</u> an attorney who is a registered user of the Court's case filing system, you may instead mail your objection to the Court's Clerk's office at:

        United States District Court, Clerk's Office
        150 Ave. Carlos Chardon Ste. 150,
        San Juan, P.R. 00918-1767

        so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**, and

    e.    be served upon the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Puerto Rico Electric Power Authority) so as to be received **on or before the Confirmation Objection Deadline (June 7, 2023 at 5:00 p.m. (Atlantic Standard Time))**.

**IF YOU HAVE ANY QUESTIONS ABOUT THE STATUS OF YOUR CLAIM(S) OR WANT TO REQUEST A COPY OF THE PLAN AND/OR DISCLOSURE STATEMENT, PLEASE CONTACT THE DEBTOR'S BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC "<u>KROLL</u>"),[7] BY (I) FIRST CLASS MAIL OR OVERNIGHT COURIER AT PUERTO RICO BALLOT PROCESSING, C/O KROLL RESTRUCTURING ADMINISTRATION LLC (F/K/A PRIME CLERK LLC), 850 THIRD AVENUE, SUITE 412, BROOKLYN, NY 11232; (II) TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR (III) EMAIL AT <u>PUERTORICOINFO@RA.KROLL.COM</u> (WITH 'PREPA SOLICITATION' IN THE SUBJECT LINE).**

*[Remainder of page intentionally left blank]*

---

[7] On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

Dated: _____, 2023                    /s/
      San Juan, Puerto Rico                          Martin J. Bienenstock
                                                             Paul V. Possinger
                                                              Ehud Barak
                                                              Margaret A. Dale
                                                              Michael T. Mervis
                                                              Daniel S. Desatnik
                                                              (Admitted *Pro Hac Vice*)
                                                              **PROSKAUER ROSE LLP**
    Eleven Times Square
    New York, NY 10036
    Tel: (212) 969-3000
    Fax: (212) 969-2900
    Email: mbienenstock@proskauer.com
               ppossinger@proskauer.com
               ebarak@proskauer.com
               ddesatnik@proskauer.com

/s/
Hermann D. Bauer
USDC No. 215205

                                                              **O'NEILL & BORGES LLC**
                                                              250 Muñoz Rivera Ave., Suite 800
                                                              San Juan, PR 00918-1813
                                                              Tel:  (787) 764-8181
                                                              Fax:  (787) 753-8944
                                                              Email: hermann.bauer@oneillborges.com

                                                              *Attorneys for the Financial Oversight and*
                                                              *Management Board as representative for the*
                                                              *PREPA*

**<u>Schedule 5</u>**

**Form of Election Notice for Holders of Claims in Class 5**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-4780-LTS<br><br>(Jointly Administered) |

**ELECTION NOTICE
FOR NATIONAL INSURED BONDHOLDERS WITH CLAIMS IN CLASS 5**

This Election Notice (the "Notice") is being sent to the beneficial holders of Allowed National Insured Bond Claims arising on account of National Insured Bonds, which are insured by National Public Finance Guarantee Corporation ("National"). These securities give rise to Claims in Class 5 of the ~~First~~Modified Second *Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority,* dated [●]March 1, 2023 [ECF No. _____] (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

"Plan").[2]  Although National has the right to cast the vote on account of Claims arising from National Insured Bonds to accept or reject the Plan, holders of Claims in Class 5 are entitled to elect their form of treatment pursuant to the Plan.

Each holder of an Allowed National Insured Bond[3] has the option to elect to receive on the Effective Date, or as soon as reasonably practicable thereafter, in full consideration, satisfaction, release, and exchange of such holder's Claim:

> **National Commutation Treatment (Option 1)**:  On the Effective Date, or as soon as reasonably practicable thereafter, you will receive the National Commutation Consideration, distributable by or at the direction of National in its sole and absolute discretion pursuant to Section 20.A of the Plan.   The National Commutation Consideration consists of a combination of some or all of the following: (i) your Pro Rata Share of the National Plan Consideration; (ii) a percentage, to be determined at National's sole discretion, of the amounts distributable to National in accordance with the terms and provisions of Article VIII.A of the Plan; and (iii) Cash in an amount to be determined by National in its sole discretion, in full and complete satisfaction, release, and discharge of any further obligation of National with respect to the applicable National Insurance Policies (and, by making such election, you shall be deemed to have agreed to commute the National Insurance Policies relating to your Allowed National Insured Bond Claim).

> If you elect the National Commutation Treatment (Option 1), (i) you shall not receive any payments from National under the National Insurance Policies on account of accrued and unpaid interest on and after, or, in the case of any capital appreciation bonds, the accreted value on and after, the Effective Date, and to the extent any accrued or accreted interest is paid to you by National after such date, such amount shall be credited against the consideration you (or your successors, transferees, or assigns) are otherwise entitled to receive as National Commutation Consideration, (ii) the National Insured Bonds underlying your Allowed National Insured Bond Claim shall be deemed cancelled on the Effective Date, and (iii) you shall have no other or further rights under or with respect to the applicable National Insurance Policy or any of the National Non-Commutation Treatment options described in Section 20.B of the Plan or with respect to the National Non-Commutation Treatment (Option 2) below.

> **National Non-Commutation Treatment (Option 2)**:  If you timely and validly elect to receive the National Non-Commutation Treatment, (i) National shall receive the National

---

[2]  Unless otherwise defined herein, each capitalized term used herein shall have the meaning given to it in the Plan.

[3]  Any calculations and/or payments to be made to you based on, or in relation to, your Allowed National Insured Bond Claims pursuant to the options set out herein will take into account any payments of principal and/or accrued interest already made to you by National pursuant to the terms of the relevant National Insurance Policies.  For the avoidance of doubt, you shall not be compensated for any amounts already paid to you pursuant to the terms of the relevant National Insurance Policies.

Plan Consideration distributable on account of the applicable Allowed National Insured Bond Claim, and (ii) such Holder shall receive the following treatment(s):[4]

(i) **Custodial Trusts:** You shall (A) deposit, or be deemed to have deposited, among other things, your Pro Rata Share of the National Trust Consideration, the National Insured Bonds allocable to you, and the related National Insurance Policies into the applicable National Trust, (B) be deemed to have received your Pro Rata Share of the National Trust Consideration and National Certificates in consideration therefor, and (C) have no recourse to National or the National Insurance Policies other than as provided for under the terms of the National Trust.

(ii) **Escrow:** You shall deposit, or be deemed to have deposited, among other things, your Pro Rata Share of the National Escrow Consideration in the National Escrow Account and such deposited National Escrow Consideration shall be held as security for National's obligations to the Holders of the National Insured Bonds whose National Escrow Consideration was deposited in the National Escrow Account under the National Insurance Policies.

(iii) **Payment of Accelerated Amounts:** National shall receive the National Plan Consideration that would be otherwise allocable to you and National shall fully and completely discharge its obligation to you by paying on the Effective Date, in Cash, the amount thereof at the National Acceleration Price as of the date of payment.

(iv) **Alternative Treatment:** The Oversight Board and National reserve the right to formulate an alternative election or implementation option with respect to the National Insured Bonds that is mutually acceptable to the Oversight Board and National, each in their respective sole discretion; *provided*, *however*, that any such alternative election or implementation option must be proposed, in writing, prior to the commencement of the Disclosure Statement hearing.

***If you fail to make a valid election or submit an election for less than all of your Claims in Class 5 (in which case, such election will be void and of no force and effect), you will be deemed to have elected to commute the applicable National Insurance Policies, to release and discharge National's obligations thereunder, and to receive distributions in accordance with the*** <ins>***National Commutation Treatment (Option 1)***</ins>***. If you do not validly elect to receive the National Non-Commutation Treatment, you shall be deemed to have had, on or after the Effective Date, the National Insured Bonds, including the obligations of National under the related National Insurance Policies, underlying your Claim cancelled.***

---

[4] Pursuant to the Plan, National shall exercise in its sole discretion its election of treatments at or prior to the Plan Supplement Deadline.

*You are encouraged to review the entire Disclosure Statement and the Plan before making an election with respect to the form of distribution you will receive under the Plan. The tax consequences described in the Disclosure Statement are not a substitute for careful tax planning and professional tax advice upon your individual circumstances and you should seek advice from your own tax advisor.*

**Please take notice that you are not able to vote to accept or reject the Plan and will not receive separate voting instructions for such purpose. Pursuant to the Plan and the Disclosure Statement Order, National is entitled to vote to accept or reject the Plan on account of Claims arising from securities insured by National.**

**IF YOU WISH TO RECEIVE THE NATIONAL COMMUTATION TREATMENT (OPTION 1), YOU DO NOT NEED TO TAKE ANY FURTHER ACTION. HOWEVER, IN SUCH CASE, YOU WILL BE DEEMED TO HAVE ELECTED TO RELEASE, DISCHARGE, AND COMMUTE NATIONAL'S OBLIGATIONS AND THE NATIONAL INSURANCE POLICY.**

**Each holder of National Insured Bonds described on <u>Exhibit A</u> attached hereto that wishes to receive the National Non-Commutation Treatment (Option 2) must submit a valid election in the manner described herein.**

\*   \*   \*   \*   \*

### How to Submit a Valid Election

If you wish to elect to receive the National Non-Commutation Treatment (Option 2), you must instruct your broker or nominee (each, a "<u>Nominee</u>") to electronically deliver your National Insured Bonds via the Automated Tender Offer Program ("<u>ATOP</u>") at The Depository Trust Company ("<u>DTC</u>"), which will constitute an election via DTC's ATOP system to receive the National Non-Commutation Treatment (Option 2).

No paperwork is required to be delivered to Kroll to effectuate the election. The sole means of effectuating this election is to (i) validly tender your National Insured Bonds into the proper ATOP envelope at DTC, and (ii) make the election to receive the National Non-Commutation Treatment (Option 2), each as described on DTC's ATOP system.

**THE ELECTION DEADLINE IS
5:00 P.M. (ATLANTIC STANDARD TIME) ON JUNE 7, 2023.**

This date and time is referred to as the "<u>Election Deadline</u>."

**PLEASE TAKE NOTICE THAT IF YOU TENDER YOUR NATIONAL INSURED BONDS THROUGH ATOP, YOU WILL BE RESTRICTED FROM TRANSFERRING YOUR NATIONAL INSURED BONDS ~~FROM~~<u>UNTIL THE ISSUANCE OF NEW CUSIPS IN CONNECTION WITH SUCH TENDERED BONDS, WHICH ISSUANCE</u>**

4

**SHALL OCCUR AS SOON AS REASONABLY PRACTICABLE AFTER** THE ELECTION DEADLINE ~~UNTIL THE EFFECTIVE DATE OF THE PLAN~~. **IF YOU DESIRE TO RETAIN THE ABILITY TO TRADE OR TRANSFER YOUR NATIONAL INSURED BONDS PRIOR TO THE ~~EFFECTIVE DATE~~ISSUANCE OF NEW CUSIPS, THEN YOU SHOULD NOT TENDER YOUR NATIONAL INSURED BONDS THROUGH ATOP.**

**YOU MAY, HOWEVER, REVOKE YOUR ELECTION AT ANY TIME BEFORE THE ELECTION DEADLINE AND WITHDRAW ANY TENDERED NATIONAL INSURED BONDS.**

\* \* \* \* \*

### How to Revoke an Election

You may revoke an election to receive the National Non-Commutation Treatment (Option 2) and withdraw your National Insured Bonds tendered through DTC's ATOP at any time before the Election Deadline.

If you wish to revoke your election, you must instruct your Nominee to revoke your election and withdraw your National Insured Bonds via ATOP at DTC (which withdrawal will be confirmed by Kroll once notified by DTC of the withdrawal request). No paperwork is required to be delivered to Kroll to effectuate the election.

If you revoke your election at any time before the Election Deadline, you may make an election to receive the National Non-Commutation Treatment (Option 2) at any time before the Election Deadline, in accordance with the instructions to submit an election above.

\* \* \* \* \*

If you have any questions about your holdings, please contact your Nominee. Additionally, you must contact your Nominee to take any action described above.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE, PLEASE CONTACT THE BALLOTING AGENT, KROLL RESTRUCTURING ADMINISTRATION LLC ("KROLL"),[5] BY TELEPHONE AT (844) 822-9231 (TOLL FREE FOR U.S. AND PUERTO RICO) OR (646) 486-7944 (FOR INTERNATIONAL CALLERS), AVAILABLE 10:00 A.M. TO 7:00 P.M. (ATLANTIC STANDARD TIME) (SPANISH AVAILABLE), OR BY EMAIL AT PUERTORICOINFO@RA.KROLL.COM AND REFERENCE "NATIONAL DISTRIBUTION ELECTION" IN THE SUBJECT LINE. PLEASE NOTE THAT KROLL IS NOT AUTHORIZED TO PROVIDE, AND WILL NOT PROVIDE, LEGAL ADVICE.**

---

[5]   On March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.

All questions as to the validity, form and eligibility (including time of receipt) of your election will be determined by the Oversight Board, whose determination shall be final and binding on all parties.  The Oversight Board and National reserve the absolute right to reject any or all elections that are not in proper form or the acceptance of which would, in its legal counsel's opinion, be unlawful.   The Oversight Board and National also reserve the right to waive any defects, irregularities or conditions as to an election.   A waiver of any defect or irregularity in one instance shall not constitute a waiver of the same or any other defect or irregularity with respect to any other instance except to the extent the Oversight Board may otherwise so provide.   An election shall not be deemed to have been made until any defects or irregularities have been waived by us or cured.  None of the Oversight Board, National or the Balloting Agent, nor any other person will be under any duty to give notification of any defect or irregularity in this election, or will incur any liability to you for failure to give any such notification.

## Exhibit A

| Description | CUSIP |
|---|---|
| | |
| | |
| | |

**<u>Schedule 6</u>**

**Form of 3018(a) Motion**

### INSTRUCTIONS FOR COMPLETING AND FILING 3018(A) MOTION

> **THE PURPOSE OF RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE IS TO ALLOW PARTIES TO REQUEST THE COURT TO TEMPORARILY ALLOW THEIR CLAIMS FOR THE PURPOSE OF VOTING ON THE PLAN OF ADJUSTMENT.**
>
> **THE COURT WILL DETERMINE AFTER NOTICE AND HEARING WHETHER TO ALLOW YOUR CLAIMS FOR PURPOSES OF VOTING ON THE PLAN.**

**What to File**. Your motion <u>must</u> be in writing, in English, and contain the following information (a form of Rule 3018(a) motion is included that you may use).

(a) **Contact Information**.  Your motion must include the **name**, **address**, **telephone number**, and **email address** of either (1) the claimant (you); or (2) your attorney or designated representative to whom the attorneys for the Debtor should serve a reply to the motion, if any.

(b) **Claim Information**.  Your motion must contain **the proof of claim number(s) related thereto from Kroll** (You may search for your claim on https://cases.ra.kroll.com/puertorico/Home-ClaimInfo).  If you do not have a proof of claim number, you must describe the nature and amount of your asserted claim.

(c) **Reason(s) for filing**.  Your motion must contain a concise statement setting forth the reasons why the Court should permit you to vote on the Debtor's plan of adjustment and, if not amount is included in your proof of claim, the amount that you assert to be owed by the Debtor.

(d) **Signature.**  You must sign your motion.  If you do not sign your motion, the clerk will not accept it for filing.

## IMPORTANT NOTICE REGARDING SENSITIVE INFORMATION CONTAINED IN A MOTION.

Your motion should **not** **include** sensitive documents or information, such as copies of driver's licenses, passports, birth certificates, Social Security cards, sensitive medical information or confidential business information. Sensitive information submitted to the Court must adhere to the following guidelines:

- Social Security numbers and taxpayer identification numbers should be redacted (that is, blacked out), except for their last four digits.

- Birthdays should be redacted, except for the year of an individual's birth.

- The name of any individual known to be a minor should be redacted, except for that person's initials.

- Financial account numbers should be redacted, except for their last four digits.

Any such sensitive or confidential information upon which a claimant relies in support of its motion must be provided directly to counsel for the Debtor, and will be kept confidential. You may provide this information by mailing it to the following address:

> Counsel for the Oversight Board
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036-8299
> Attn: Martin J. Bienenstock, Esq.
>       Paul V. Possinger, Esq.
>       Ehud Barak, Esq.
>       Daniel S. Desatnik, Esq.

**Where and How to File and Serve a Motion**. Your motion should be filed with the Court on the dockets of (i) *In re Puerto Rico Electric Power Authority*, Case No. 17 BK 4780-LTS and (ii) *In re Commonwealth of Puerto Rico*, Case No. 17 BK 3283-LTS. There are two methods that you can use to file your motion:

(a) **Online**. Registered users of the Court's case filing system must file their motion electronically in searchable portable document format.

(b) **By Mail**. If you are not an attorney who is a registered user of the Court's case filing system, you may file and serve a motion by mailing it to the Court's Clerk's office, the Oversight Board, and the Creditors' Committee at the following addresses:

> Clerk's Office
> United States District Court
> Room 150 Federal Building
> San Juan, Puerto Rico 00918-1767

> Counsel for the Oversight Board
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036-8299
> Attn: Martin J. Bienenstock
>       Paul V. Possinger
>       Ehud Barak
>       Daniel S. Desatnik

> Counsel for the Creditors' Committee
> Paul Hastings LLP
> 200 Park Avenue
> New York, New York 10166
> Attn: Luc A. Despins
>       James Bliss

James Worthington
G. Alexander Bongartz

Your motion must be mailed or filed electronically so as to be received by the Clerk's Office, the Oversight Board, and the Creditors' Committee no later than the applicable deadline for filing your Bankruptcy Rule 3018(a) motion (refer to your Notice of Non-Voting Status for the applicable deadline).

If you are unable to file and serve a motion online or by mail as specified above, you may file a motion in person at the following address by the applicable deadline:

Clerk's Office
United States District Court
#150 Chardon Avenue Federal Building
San Juan, Puerto Rico 00918

A certificate of service should be included with your motion explaining how service was accomplished.

If you have any questions about filing and serving a motion, including questions about the Court's case filing system, please contact the **Kroll hotline** at **(844) 822-9231** (toll free for U.S. and Puerto Rico) or **(646) 486-7944** (for international callers).

<div style="border:1px solid black; padding:10px;">

### Additional Resources and Who to Contact with Questions

All documents filed in PREPA's Title III Case, including copies of claims filed using CM/ECF, are available free online at https://cases.ra.kroll.com/puertorico.  This website is maintained by Kroll and includes a searchable database to assist with locating documents.

If you require additional information, including the status of your motion, please contact the Kroll hotline at **(844) 822-9231** (toll free for U.S. and Puerto Rico) or **(646) 486-7944** (for international callers), available 10:00 a.m. to 7:00 p.m.  (Atlantic Standard Time) (Spanish available). Inquiries may also be sent via email to puertoricoinfo@ra.kroll.com (with 'PREPA Solicitation' in the subject line).

</div>

<table>
<tr><td>

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

</td><td>

PROMESA
Title III

No. 17-BK-3283-LTS

(Jointly Administered)

</td></tr>
<tr><td>

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY,

     Debtor.

</td><td>

PROMESA
Title III

No. 17-BK-4780-LTS

(Jointly Administered)

</td></tr>
</table>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**MOTION PURSUANT TO RULE 3018(A)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
<u>FOR TEMPORARY ALLOWANCE OF CLAIM FOR VOTING PURPOSES</u>**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last  Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19- BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Movant must provide all of the information below in English.**

| Part 1: | Identify Yourself |
|---|---|
| | |
| | **Name** |

| Part 2: | Where Should Notices Be Sent? |
|---|---|
| | **Name** |
| | **Number**                    **Street** |
| | **City**                    **State**                    **ZIP Code** |
| | **Contact phone** |
| | **Contact email** |

| Part 3: | Identify the Claim |
|---|---|
| | |
| | **Proof of Claim Number (if any)** (You may search for your claim on https://cases.ra.kroll.com/puertorico/Home-ClaimInfo) |
| | **Please describe the nature of your claim, including the amount of your claim** |

| Part 4: | Explain Why You Should Be Permitted to Vote to Accept or Reject PREPA's Plan of Adjustment |
|---|---|
| | By filing this motion, you are seeking a court determination pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure to temporarily allow your claim in an amount the court deems proper for purposes of voting to accept or reject the ~~First~~Modified Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority.

Please provide below (1) the amount of your claim that should be allowed for voting purposes, and (2) the reasons why you believe you should be entitled to vote on the Debtor's plan of adjustment (attach additional pages if necessary).  Please also provide as much documentation as possible to support both the amount you are asserting and the reasons why you believe you should be entitled to vote: |

| Part 5: | Sign Below |
|---------|------------|

I respectfully request that this Court enter an order temporarily allowing my claim in the amount above for purposes of voting to accept or reject the ~~First~~ _Modified Second_ Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority.


Executed on date _____ (MM/DD/YYYY)


Signature _____


**Print the name of the person who is completing and signing this motion:**

_____
First name                     Middle name                     Last name

3

**Schedule 7(a)**

**Creditors' Committee Letter**

March 2023

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY**

**c/o Paul Hastings LLP, 200 Park Avenue, New York, New York 10166**

To the Holders of Class 7 General Unsecured Claims:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Title III case of the Puerto Rico Electric Power Authority ("PREPA") is writing to you in connection with PREPA's solicitation of your vote with respect to the enclosed proposed *Second Amended Title III Plan of Adjustment of the Puerto Rico Electric Power Authority*, dated February 26, 2023 (the "Plan").[1] You should carefully read all the materials that accompany this letter (as it may be supplemented, the "Committee Letter"), including the instructions for completing and mailing your Ballot.  All Ballots must be **received** by the Claims and Noticing Agent by **[_____], 2023 at 5:00 p.m. (Atlantic Standard Time) (the "Voting Deadline")** to be counted.

**AT THIS TIME, THE COMMITTEE DOES NOT SUPPORT THE OVERSIGHT BOARD'S PROPOSED PLAN, INCLUDING THE PROPOSED PLAN DISTRIBUTION TO HOLDERS OF GENERAL UNSECURED CLAIMS IN CLASS 7—A DISTRIBUTION THAT, ACCORDING TO THE DISCLOSURE STATEMENT, MAY RANGE FROM 0.1% AND 100%, DEPENDING ON THE OUTCOME OF NUMEROUS CONTINGENCIES, INCLUDING THE OUTCOME OF THE AMENDED LIEN & RECOURSE CHALLENGE.**

**ACCORDINGLY, AT THIS TIME, THE COMMITTEE URGES ALL HOLDERS OF CLASS 7 GENERAL UNSECURED CLAIMS TO VOTE TO REJECT THE PLAN.**

**However, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors.  If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.   For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline.  Please visit the Committee's website at www.creditorspr.org for any further updates.**

A.     **Introduction**

The Committee's members were appointed by the United States Trustee, a unit of the United States Department of Justice, to represent, in a fiduciary capacity, the interests of all general unsecured creditors of PREPA (and other debtors under Title III of PROMESA).  These

---

[1]   All capitalized terms used but not defined in this letter have the meanings set forth in the Plan.

unsecured creditors include, for example, employees, vendors, suppliers, service providers, and parties with litigation claims.  The Committee's seven members serve without pay and represent a broad cross-section of the general unsecured class.  Committee members include, among others, suppliers of goods and services, contract counterparties, and litigation claimants.

The Committee is a fiduciary to holders, like you, of unsecured claims[2] against PREPA, and it has worked tirelessly during PREPA's Title III case to protect your interests.  Among other things, in October 2019, the Committee objected to a settlement between the Oversight Board and certain holders of PREPA's non-recourse bonds that, if approved, would have allowed more than $8 billion in secured claims on account of such non-recourse bonds.  The Committee believed then, and continues to believe today, that the collateral securing the non-recourse bonds consists only of limited funds on deposit in certain specified accounts controlled by the bond trustee, and that, as non-recourse obligations, the non-recourse bonds have no additional or deficiency claim against PREPA.

Several years after the Committee's October 2019 objection, the Oversight Board ultimately decided not to move forward with the proposed settlement and, instead, in the fall of 2022, adopted the Committee's position and filed an amended complaint and related summary judgment motion seeking a ruling from the Court that (a) the PREPA bond claims are secured only by very limited funds held in certain specified accounts (approximately $16 million) and (b) the PREPA bondholders are not entitled to an unsecured deficiency claim for the difference between their more than $8 billion in claims and the limited value of their collateral (*i.e.*, approximately $16 million) because their bond claims only have recourse only to the limited collateral in certain specified accounts.  This litigation is referred in the Plan and the Disclosure Statement as the "Amended Lien & Recourse Challenge."  On February 1, 2023, the Court heard oral argument on the Oversight Board's and PREPA bondholders' motions for summary judgment, but it has not yet issued a ruling on these matters.

**B.**     **Treatment of Allowed Class 7 General Unsecured Claims**

The Plan provides that holders of allowed General Unsecured Claims in Class 7 will receive their *pro rata* share of the General Unsecured Claim Recovery, which is comprised of (a) Avoidance Action Proceeds, (b) the GUC New Bonds (in the form of Series B Bonds), if any, and (c) the GUC CVI.

According to the Disclosure Statement, the Avoidance Actions Proceeds and the GUC CVI have only *de minimis* value, and would provide holders of allowed General Unsecured Claims with an estimated recovery percentage of only 0.1%.  Thus, the only component of the General Unsecured Claim Recovery that could provide material recoveries to general unsecured creditors are the GUC New Bonds (in the form of Series B Bonds).  **However, the amount of Series B Bonds to be made available to holders of allowed General Unsecured Claims under the Plan is unknown at this time and depends, among other things, on the resolution of the Amended Lien & Recourse Challenge.  For that reason, the Disclosure Statement estimates that the recovery to holders of allowed General Unsecured Claims**

---

[2]   Unsecured claims are claims that are not secured by any collateral.

**ranges from 0.1% to 100%, depending on the resolution of the Amended Lien & Recourse Challenge and other contingencies.**

    1.    New Bonds Waterfall

The aggregate amount of New Bonds to be distributed to holders of allowed General Unsecured Claims (Class 7) under the Plan is a function of a complex waterfall (the "New Bonds Waterfall") pursuant to which an aggregate amount of **$5.68 billion** of New Bonds (in the form of Series A Bonds and Series B Bonds) would be issued by Reorganized PREPA and then allocated to various creditor groups, taking into account the outcome of a series of contingencies, including, most notably, the outcome of the Amended Lien & Recourse Challenge.

Importantly, under the New Bonds Waterfall, holders of allowed General Unsecured Claims will **only receive Series B Bonds to the extent any such bonds remain available after mandatory distributions have been made to the Fuel Line Lenders, Bondholders, Monolines, and National.**  The amount of New Bonds that would be so distributed to these creditor groups is not fixed, but, instead, depends on certain contingencies, including the outcome of the Amended Lien & Recourse Challenge.  In fact, depending on the outcome of these contingencies, **it is possible that no Series B Bonds would be available to holders of allowed General Unsecured Claims.**

    2.    Estimated Recovery Percentages for Holders of Allowed General Unsecured Claims

The following table provides the estimated recovery percentages for holders of allowed General Unsecured Claims based on the outcome of two contingencies: (i) the resolution of the Amended Lien & Recourse Challenge and (ii) the aggregate amount of allowed General Unsecured Claims.

In particular, as it relates to the Amended Lien & Recourse Challenge, the recovery table below illustrates three potential outcomes:

    a.    the Bondholders' security interest is limited to the funds in certain specified accounts *and* the Bondholders have no recourse to PREPA's assets beyond the funds in such specified accounts;

    b.    the Bondholders' security interest is limited to the funds in certain specified accounts *but* the Bondholders have recourse to PREPA's present and future revenues (*i.e.*, they have Unsecured Deficiency Claims); and

    c.    the Bondholders are secured by, and have recourse to, all of PREPA's present and future revenues.

Moreover, as it relates to the aggregate size of allowed General Unsecured Claims, the recovery table below shows three illustrative examples, namely, $800 million in allowed claims, $1.2 billion in allowed claims, and $1.6 billion in allowed claims.

***As the below table illustrates, the recovery percentages for holders of allowed General Unsecured Claims cannot be determined with any specificity at this time.***

| | | Outcome in Amended Lien & Recourse Challenge | | |
|---|---|---|---|---|
| | | **Security Interest Limited to Funds in Specified Accounts and No Recourse Beyond Such Funds** | **Security Interest Limited to Funds in Specified Accounts, but Recourse to PREPA's Present and Future Revenues** | **Security Interest, and Recourse to, All Present and Future Revenues** |
| **Aggregate Amount of Allowed General Unsecured Claims** | **$800 million** | 100.00% | 46.5% | 0.10%+ |
| | **$1.2 billion** | 100.00% | 44.3% | 0.07%+ |
| | **$1.6 billion** | 100.00% | 42.4% | 0.05%+ |

## C.    What's the Problem with the Plan?

The Committee believes that the Plan is not confirmable, for a variety of reasons.[3]  First and foremost, under the Plan, various groups of unsecured creditors stand to receive **substantially greater** recoveries than holders of General Unsecured Claims in Class 7. Moreover, and unlike the distribution to holders of General Unsecured Claims, the distributions to these other unsecured creditors do **not** depend on the outcome of the Amended Lien & Recourse Challenge.  In other words, while other creditors receive substantial, guaranteed recoveries, general unsecured creditors face a highly uncertain and contingent recovery under the Plan (as illustrated in the above recovery table).

For example, the Committee believes that:

---

[3]   For the avoidance of doubt, the Oversight Board does not agree with the Committee's views regarding the Plan, including the recovery percentages provided below for the Fuel Line Lenders and National.

- The Plan provides that unsecured Fuel Line Lenders receive a guaranteed distribution (which does not depend on the outcome of the Amended Lien & Recourse Challenge) in the form of Series A Bonds equal to approximately **92.7%** of their total allowed claims.  Moreover, the Series A Bonds to be received by the Fuel Line Lenders are of significantly higher quality than the Series B Bonds to be distributed to general unsecured creditors, including as it relates to maturity (15 years vs. 50 years), expected repayment date (5 years vs. 35 years), and payment priority (payment of principal on the Series A Bonds must be paid before payment of principal on the Series B Bonds).

- The Plan provides National (one of the monolines that insured PREPA's non-recourse bonds) with an aggregate distribution in the form of Series B Bonds of more than **83%** of their bond claims.  As with the distribution to the unsecured Fuel Line Lenders, National's distribution does not depend on the outcome of the Amended Lien & Recourse Challenge, even though the Committee believes that National should have no claims at all (beyond a claim secured by very limited funds in the Sinking Fund).

**Please note that the Committee is also considering holding in-person creditor information sessions in Puerto Rico to explain, among other things, the New Bonds Waterfall and the Committee's opposition to the Plan.  Please visit the Committee's website at www.creditorspr.org for details regarding the time and location of these sessions.**

**D.**     **Committee's Recommendation**

Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan. **That said, for the reasons stated above the Committee recommends that you vote to reject the Plan.**

**As noted, the Committee remains in discussions with the Oversight Board regarding potential modifications to the Plan to improve the recovery to general unsecured creditors. If such modifications are made, the Committee may supplement this Committee Letter, including to update its recommendation.   For that reason, if you have the ability to submit your Ballot online (in accordance with the procedures set forth on your Ballot), the Committee recommends that you hold off submitting your Ballot until we get closer to the Voting Deadline.  Please visit the Committee's website at www.creditorspr.org for any further updates.**

**E.**     **Submitting Your Ballot**

The Oversight Board has provided Ballots herewith for holders of claims in Class 7 to utilize in order to vote to accept or reject the Plan, which Ballots must be returned in accordance with the procedures set forth in the ballot instruction sheet and the Disclosure Statement.  **Please read the directions on the Ballot carefully and complete your Ballot in**

**its entirety before returning it.  Your Ballot must be returned so as to be actually received by the Balloting Agent no later than the Voting Deadline, *i.e.*, 5:00 p.m. (Atlantic Standard Time) on _____, 2023.**

* * *

The positions taken by the Committee in this Letter are those of the Committee and/or its advisors and have not been approved by or endorsed by the Bankruptcy Court.   Each creditor (including individual members of the Committee) must make its own independent decision as to whether or not the Plan is acceptable to that creditor and should consult with its own legal and/or financial advisor(s) before voting to accept or reject the Plan.

**YOU ARE URGED TO CAREFULLY READ THE DISCLOSURE STATEMENT AND THE PLAN.  THE DESCRIPTION OF THE PLAN IN THIS COMMITTEE LETTER IS INTENDED TO BE A SUMMARY ONLY.**

**THIS COMMITTEE LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE.  THE COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN PREPA's TITLE III CASE.  THE COMMITTEE CANNOT PROVIDE ANY ASSURANCES REGARDING THE AGGREGATE AMOUNT OF GENERAL UNSECURED CLAIMS THAT WILL ULTIMATELY BE ALLOWED, OR THE RATE OF RECOVERY THAT WILL ULTIMATELY BE REALIZED BY ANY HOLDER OF SUCH A CLAIM.**

**THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY ANY INDIVIDUAL MEMBER OF THE COMMITTEE.**

***THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
THE PUERTO RICO ELECTRIC POWER AUTHORITY***

**Schedule 7(b)**

**Plan Summary**

## Summary of Key Components of the Plan of Adjustment

Except for Administrative Expense Claims and Professional Claims, which are not classified and do not vote on the Plan, all Claims are divided into classes under the Plan. Under the Bankruptcy Code, a plan may place a claim in a particular class only if such claim is substantially similar to the other claims of such class. Under Section 301(e) of PROMESA, in determining whether claims are "substantially similar" to one another, the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims. The following table shows the classes of claims against the Debtor, the approximate estimated claim amount, and the approximate percentage return or range of percentage returns proposed to be paid to the holders of claims in each class.

The amount a creditor may actually recover and the form of consideration a creditor may receive are dependent upon, among other things, the outcome of the Amended Lien & Recourse Challenge, as described in Section I of this Disclosure Statement. The amount a creditor may actually recover could vary materially from the summary below. The Ad Hoc Group believes that Series B Bonds are worth substantially less than their stated amount due to what they assert are off-market terms and purported lack of covenants and remedies.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| Settling Bondholder Claims | Class 1 | $74,900,593.18 | 100.00% if Oversight Board wins recourse and lien counts<br><br>50.00% if Oversight Board loses lien counts but wins recourse counts, or loses both | Pro rata shares of: Cash deposited in Sinking Fund, Series B Bonds, CVI |
| Non-Settling Bondholder and Non-Settling Monoline Claims | Class 2 | [$7,565,470,824.09] [1] | [0.21]% if Oversight Board wins lien and recourse counts<br><br>[46.49]% if Oversight Board wins lien counts but loses recourse counts<br><br>[51.53]% if Oversight Board loses both lien and recourse counts [2] | Pro rata shares of: (i) Cash deposited in Sinking Fund, (ii) Series B Bonds, (i) if there is a Deficiency Claim, General Unsecured Claim Recovery, and/or (ii) if Class 2 votes to accept the Plan and PREPA Revenue Bonds are recourse solely to the Sinking Fund, |

[1]   This number represents the remaining asserted Bond Claims. The Allowed amount of Non-Settling Bondholder and Non-Settling Monoline Claims will be determined following the Amended Lien & Recourse Challenge Final Resolution.

[2]   Certain bondholders have argued that PREPA is required under PROMESA to pay to creditors more than the $5.68 billion currently contemplated under the Plan. If these creditors prevail on their argument, recoveries for Non-Settling Bondholders could exceed those provided in the chart.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| | | | | CVI |
| Pension Claim | Class 3 | $3.955 billion[3] | 86% (of Petition Date claim amount) | Cash, Series B Bonds |
| Fuel Line Loan Claims | Class 4 | $700,887,093.58 | 84.00–100.00%[4] | Series A Bonds, additional Series A Bonds or Cash, Remaining New Bonds |
| National Insured Bond Claims | Class 5 | $836,145,928.13 | 71.65%[5] | Series B Bonds |

[3]   This represents the estimated present value of cash payments to be made by PREPA to the PREPA ERS under the PREPA ERS Regulations as of the Petition Date.   Accounting for payments made to SREAEE during the case, this amount has come down to $3.622 billion.

[4]   The Ad Hoc Group asserts the Fuel Line Lenders are receiving at least $61,324,709 in consummations costs, professional fees, and interest accrual per the terms of the Fuel Line Lender PSA in addition to their base recovery of 84%. The Ad Hoc Group also asserts this amount does not include amounts for the continued accrual of interest on the Series A Bonds through an Effective Date beyond July 1, 2023, up to one year of total interest accrual.

[5]   The Ad Hoc Group asserts National is receiving $97,943,887.64 in consummation and structuring costs, as well as receiving additional recoveries on its reimbursement claim per the terms of the National PSA in addition to its base recovery of 71.65%.   The Ad Hoc Group also asserts this amount does not include amounts for the continued accrual of the National Reimbursement Claim in the event of an Effective Date beyond July 1, 2023, or the National pro rata share of the contemplated Interim Charge.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|---|---|---|---|---|
| National Reimbursement Claim | Class 6 | [244,728,681.25][6] | 20.00% | Series B Bonds |
| General Unsecured Claims | Class 7 | $800,000,000.00[7] | 0.10–100.00% | General Unsecured Claim Recovery[8] |
| Vitol Claim | Class 8 | $41,457,382.88 | 0.05–50.00% | General Unsecured Claim Recovery |
| Assured Insured Interest Rate Swap Claims | Class 9 | [TBD][9] | [0.21–51.53]% | Treatment provided to Class 2 |
| Ordinary Course Customer Claims | Class 10 | $235,309 | 100.00% | Cash |
| Eminent Domain/Inverse Condemnation Claims | Class 11 | $2,437,556 | If payment in full is required: 100.00%[10] | Cash |
| | | | If Claims are dischargeable: 0.10-100.00% | General Unsecured Claim Recovery |
| Federal Claims | Class 12 | $16,859,577 | If payment in full is required pursuant to PROMESA Section 304(h): 100.00%[11] | Treatment required by PROMESA Section 304(h) |
| | | | If payment in full is not required: 0.10–100.00% | General Unsecured Claim Recovery |
| Convenience Claims | Class 13 | Unknown | 100.00%[12] | Cash |

[6]  Pursuant to the Oversight Board's proposed settlement of the National Reimbursement Claim, the Oversight Board proposes to allow the National Reimbursement Claim in the amount of $244,728,681.25 (which will be the accrued amount of this claim as of July 1, 2023). This number may be higher in the event the Effective Date is beyond July 1, 2023.

[7]  For an explanation of the Oversight Board's estimate, see Section II.B.8.

[8]  The General Unsecured Claim Recovery is payable from the GUC Trust Assets, which are comprised of (a) the Avoidance Action Proceeds, (b) the GUC New Bonds, if any, and (c) the GUC CVI.

[9]  The Oversight Board reserves the right to object to the Assured Insured Interest Rate Swap Claims.

[10]  The Plan provides that Eminent Domain/Inverse Condemnation Claims shall receive their *pro rata* share of the General Unsecured Claim recovery. If the Court declines in the Confirmation Order to confirm the Plan due to such treatment, the treatment shall automatically convert, without further action from the Debtor, such that such Holders will receive 100% of the unpaid balance of their claims in Cash unless (a) the Debtor appeals the Court's denial of the Plan's treatment of such Claims as General Unsecured Claims, (b) such appeal is ultimately successful, and (c) a Final Order is entered holding that such claims can be Impaired.

[11]  If a Federal Claim is required to be paid in full pursuant to section 304(h) of PROMESA, the holder of such claim will receive a 100% recovery. Otherwise, the holder will receive its Pro Rata Share of the General Unsecured Claim Recovery.

[12]  If Convenience Claims exceed the Convenience Cap of $1,000,000.00, holders of Allowed Convenience Claims shall receive their Pro Rata Share of the Convenience Cap.

| Claim | Class | Estimated Claim Amount | Approx. Recovery (%) | Form of Consideration |
|-------|-------|------------------------|----------------------|------------------------|
| Section 510(b) Subordinated Claims | Class 14 | Unknown | 0.00% | N/A |

Below is a chart setting forth in detail the potential recoveries to Settling Bondholders, Non-Settling Bondholders and Non-Settling Monolines, Fuel Line Lenders, National, holders of General Unsecured Claims, and Vitol based on different outcomes with respect to the Amended Lien and Recourse Challenge.  The chart also illustrates the number of excess New Bonds that may remain after all allowable claims have been paid in full.  At Reorganized PREPA's discretion, such bonds either would be deemed to have not been issued by Reorganized PREPA, or would be issued and distributed to the PREPA or the PREPA PayGo Trust.

*[Chart Begins on Following Page]*

## PREPA Plan of Adjustment Illustrative Recoveries[1]

| FOMB wins on Lien Counts and Recourse Counts | | FOMB wins on Lien Counts and Loses on Recourse Counts | | FOMB loses on Lien Counts[2] and Recourse Counts | |
|---|---|---|---|---|---|
| Settling Bonds | 100% | Settling Bonds | 50% | Settling Bonds | 50% |
| Non-Settling Bonds | 0.21% | Non-Settling Bonds | 46.49% | Non-Settling Bonds | 51.53% |
| National[3] | 71.65% | National | 71.65% | National | 71.65% |
| FLLs[3] | 100.00% | FLLs | 84.00% | FLLs | 84.00% |
| GUCs | 100.00% | GUCs | 46.49% | GUCs* | 0.10%+ |
| Vitol | 50.00% | Vitol | 23.25% | Vitol* | 0.05%+ |
| PREPA PayGo Trust | $698.23m | PREPA PayGo Trust | $0 | PREPA PayGo Trust | $0 |
| Excess New Bonds | $2.22b | Excess New Bonds | $0 | Excess New Bonds | $0 |

\* Non-zero recovery to recipients of GUC Trust proceeds to reflect recoveries on account of avoidance action proceeds.

1 The numbers in this exhibit are for illustrative purposes.  Neither the Oversight Board, PREPA, nor their respective advisors make any representations regarding the accuracy of these figures, which are subject in all respects to the terms of the Plan.  Claimholders should consult their own advisors regarding potential recoveries.  The above numbers are based on cash flow projected on the New Bonds and other consideration under the plan and do not account for whether the instruments will trade at their par value, which the Ad Hoc Group believes they will not.  Since no cash flow is currently projected under the CVI, recoveries on account of CVI distributions is not included.

2 Certain bondholders have asserted that, if they prevail on the Lien Counts in the Amended Lien & Recourse Challenge, their collateral would be worth more than what is provided to them under the Plan.  The Oversight Board disputes that contention.  Accordingly, for purposes of this illustration only, it is assumed that Bondholders' collateral if they prevail on the Lien Counts would be valued to be the same as the remaining Series B Bonds available for distribution.

3 In all scenarios reflected in the chart, National will also receive $97,943,887.64 in consummation and structuring costs, as well as receiving additional recoveries per its reimbursement claim per the terms of the National PSA, while the Fuel Line Lenders will receive $61,324,709 in consummations costs, professional fees, and interest accrual per the terms of the Fuel Line Lender PSA.  Since this consideration is not provided on account of their respective claims, but on account of other value provided, they are not incorporated into the above calculation of these creditors' respective recoveries on the par amount of their claims.  Moreover, the Fuel Lien Lenders will receive Series A Bonds which accrue up to 1 years' worth of interest from the date the Fuel Line Lender PSA is effective, payable in Series A Bonds or Cash.  Since the amount of interest is currently unknown, such amounts are not reflected in the Fuel Line Lenders' illustrative recoveries above.

The Debtor believes the Plan's contemplated restructuring is feasible and in the best interests of the Debtor's creditors.  If confirmation of the Plan were to be denied, the Debtor's options would be either (i) for the Oversight Board to propose an alternate Title III plan of adjustment or (ii) for the Title III Cases to be dismissed, in which event the automatic stay would be terminated and multi-party, multifaceted litigation would ensue (including litigation

commenced by Bondholders and other parties against PREPA), as holders of claims compete for the limited resources available to pay those claims.

The following overview summarizes certain key components of the Plan.  The overview is qualified in its entirety by the full text of the Plan.

### Fuel Line Lender PSA

On December 1, 2022, the Oversight Board, as PREPA's Title III Representative, and the Fuel Line Lenders entered into the Fuel Line Lender PSA, which generally resolves the Fuel Line Lenders' claims and asserted priority treatment as "Current Expenses" under the Trust Agreement and provides for the Fuel Line Lenders to support the Plan.  Pursuant to the Fuel Line Lender PSA, the Fuel Line Lenders will be receiving Series A Bonds, which will be current interest bonds with a 6.0% coupon, at an exchange ratio of 84% of the Allowed Fuel Line Loan Claim (as defined in the Plan).

Series A Bonds shall have a final maturity of fifteen (15) years from the Effective Date, with an expected repayment of five (5) years from the Effective Date based on upon 2022 Fiscal Plan Projections.  The Series A Bonds shall be issued on the Effective Date but shall accrue interest from the deemed issuance date of December 1, 2022 for purposes of the calculation of interest accrued; provided, however, the accrual of interest prior to the Effective Date shall be capped at one (1) year.  Such interest shall be payable in either cash or in the form of additional Series A Bonds at the Oversight Board's discretion.

Additionally, the Fuel Line Lenders will be entitled to receive on account of their Remaining Claim[13] a Pro Rata Share of Net Remaining New Bonds, if any, available for distribution to the Remaining Series B Bond Claims Pool (each, as defined in the Plan).  Finally, Fuel Line Lenders shall also receive certain consummation fees and professional fee reimbursement fees, in the amounts of $15,000,000 and up to $11,000,000, respectively, each of which shall be payable in either cash or in the form of additional Series A Bonds at the Oversight Board's discretion.

In exchange for such consideration, the Fuel Line Lenders have agreed to support confirmation of the Plan and, following the Effective Date, move to dismiss Adv. Pro. 19-00396 with prejudice.

### National Settlement

On January 31, 2023, the Oversight Board, as PREPA's Title III Representative, and National entered into the National PSA, which sets out the terms of the settlement of all Claims, interests, and controversies among PREPA, the Oversight Board, and National (the "National Settlement").  As a result of the National Settlement, National supports the Plan.  The National Settlement's terms have been embodied in the Plan and the Debtor is seeking its approval

---

[13] "*Remaining Claim,*" as it pertains to the Fuel Line Loan Claims, shall mean the Allowed Fuel Line Loan Claim minus the amount of Series A Bonds received on account of the Allowed Fuel Line Loan Claim (except for Series A Bonds received, if any, on account of payment of accrued interest prior to the Effective Date).

pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code via entry of the Confirmation Order, which will include findings that, among other things, the National Settlement is in the best interests of PREPA, its creditors, and other parties in interest, is fair and equitable, and is well within the range of reasonableness.

**Principal Terms of the National PSA**

The National PSA, among other things, generally resolves National's claims arising from Bonds it owns or insures, and its Asserted Reimbursement Claim, and provides for National to support the Plan. Pursuant to the National PSA, National will be receiving Series B Bonds at an exchange ratio of 71.65% of the Allowed National Insured Bond Claim (as defined in the Plan). National will also be receiving Series B Bonds at an exchange ratio of 20.00% of the Allowed National Reimbursement Claim (as defined in the Plan).

Pursuant to the National PSA, the Oversight Board and PREPA shall use their reasonable best efforts to cause PREPA to file, or cause PREPA to request that LUMA Energy file, an application with PREB to obtain approval of the equivalent of a one cent ($0.01)/KWH volumetric charge from the effective date of the National PSA times the National Insured Bond Claims divided by the PREPA Revenue Bond Claims, which, subject to PREB approval, shall be implemented by PREPA and added to customers' bills during the period from approval thereof by PREB up to and including the Effective Date (the "Interim Charge").

Subject to necessary approvals from PREB, from the effective date of the National PSA to the Plan Effective Date, National shall receive its pro rata share of revenues generated the Interim Charge.[14]  If, however, PREB approval is not obtained for the Interim Charge, PREPA shall not be obligated to make interim payments to National.  Cumulative revenues received by National on account of the Interim Charge shall not exceed National's existing coupon on Bonds it owns and/or insures.  If National receives revenues from the Interim Charge and the Plan is not confirmed nor consummated, the amounts received shall constitute a reduction of the distributions to be received by National under a future plan, settlement, litigated judgment, or other resolution of National's claims, without further order from the Court.

National shall also receive certain consummation fees and structuring fees, in the amounts of 3% and 2.86% of the Allowed National Insured Bond Claim payable in either cash or in the form of additional Series B Bonds at the Oversight Board's discretion.

If a CVI is offered to other holders of Bonds pursuant to the Amended Plan, National shall receive CVI on account of its Bond claim and payments there from equal to fifty percent (50%) of the recovery of such holders' pro rata share until such other holders recover seventy-one and eighty-six one hundredths percent (71.65%) of their Bond claims and thereafter shall share, on a pro rata basis, equally with such holders.

Unlike certain other non-litigating classes of creditors, National will not receive additional Series B Bonds if the Oversight Board prevails on the Lien Counts and/or Recourse

---

[14] The Oversight Board anticipates that only the portion of the Interim Charge required to compensate National's *pro rata* portion will be charged.  Thus, the Interim Charge will be slightly under 0.1 c/kWh.

Counts in the Amended Lien & Recourse Challenge.  In other words, National shall not share in Gross Remaining New Bonds, Net Remaining New Bonds, or Excess New Bonds, if any, distributed under the Plan.

In exchange for such consideration, National has agreed to support confirmation of the Plan.

Additionally, as further described below, pursuant to the National PSA, in connection with the Oversight Board's pursuit of confirmation of the Plan, the Oversight Board will seek approval of its proposed settlement with National of the National Reimbursement Claim.

### National Reimbursement Claim

In connection with the issuance of the Bonds, National issued certain municipal bond insurance policies, insuring the payment of principal and interest on the Bonds.  In connection with the issuance of the insurance policies, PREPA entered into certain Bond insurance agreements with National, pursuant to which National asserts that PREPA agreed, to the extent that National made payments of principal and interest on or incurs any other costs with respect to the Bonds insured by PREPA, to reimburse National, with interest, for any and all such payments, and costs (i.e., the Asserted Reimbursement Claim).

Pursuant to the Oversight Board's proposed settlement of the National Reimbursement Claim, the Oversight Board proposes to allow the National Reimbursement Claim in the amount of $244,728,681.25 (which will be the accrued amount of this claim as of July 1, 2023), and provide the holder of such claim with Series B Bonds in a face amount equal to 20.0% thereof.  The settlement of the National Reimbursement Claim avoids the risk that such claim could be allowed in full, including aspects that derive from payments of interest by National since the Petition Date, and secured by all net or gross revenues of PREPA, if the Oversight Board does not prevail in the Amended Lien & Recourse Challenge and the Court were to determine National is fully secured.  This recovery amount reflects a deep discount on account of this claim, in fact the deepest discount on any claim against PREPA proposed in the Plan.

The Oversight Board will demonstrate at confirmation that the proposed settlement of the National Reimbursement Claim should be approved pursuant to Bankruptcy Code section 1123(b)(3)(A) and Bankruptcy Rule 9019.  If the Court finds that such settlement does not satisfy the standard for approval of settlements, or otherwise finds that the proposed settlement and treatment of National's claims under the Plan renders the Plan unconfirmable, such finding shall not give rise to an event of termination for National under the National PSA, and the settlement and the treatment of National's claims shall, without further action, convert to a settlement of National's claims, as the case may be, that eliminates the obligation to issue Series B Bonds on account of the National Reimbursement Claim and any payments for debt service and any legal, consummation, or other fees arising from, relating to, or on account of the National Reimbursement Claim; provided, that in such circumstance, National will have the option to forego all consideration under the National PSA, including the fees and expenses set forth in Article II.D.2, and, in exchange, receive the same treatment as another settling Class of Holders of PREPA Revenue Bonds Claims, so long as the settlement with such class whose recovery National would receive was reached prior to the earlier to occur of (i) any substantive ruling on

the claims and counterclaims asserted in the Amended Lien & Recourse Challenge that Holders of PREPA Revenue Bonds are secured by Revenues outside of the Sinking Fund, and (ii) an indication or a determination, either oral or written, at a hearing or otherwise, by the Title III Court that the Holders of PREPA Revenue Bonds are secured by Revenues outside of the Sinking Fund.

### Forms of Consideration Under the Plan

The consideration to be distributed to creditors under the Plan consists of the following, each of which is described in detail below:

i.     monies deposited in the Sinking Fund;

ii.     Up to approximately $5.68 billion in New Bonds to be issued on the Effective Date;

iii.     the CVI, to be issued on the Effective Date in the notional amount of the sum of the GUC CVI, Settling CVI, and Non-Settling CVI;

iv.     The Avoidance Action Proceeds, consisting of the net cash consideration received by PREPA in connection with the Avoidance Actions; and

v.     cash flow as budgeted annually solely for payments to PREPA PayGo Trust on account of the Pension Claim.

### Overview of New Bonds to be Issued on the Effective Date

On the Effective Date, Reorganized PREPA shall issue two series of New Bonds—Series A Bonds and Series B Bonds.

Series A Bonds shall have a final maturity of fifteen (15) years from the Effective Date, with an expected repayment of five (5) years from the Effective Date based upon 2022 Fiscal Plan Projections. Series A Bonds shall bear interest at a rate of 6.00%, payable semi-annually in cash. The Series A Bonds shall be issued on the Effective Date but shall accrue interest from the deemed issuance date of December 1, 2022 for purposes of the calculation of interest accrued; *provided, however*, the accrual of interest prior to the Effective Date shall not exceed one (1) year and that the interest accrued prior to the Effective Date shall be payable upon the Effective Date in the form of Series A Bonds or cash, at the Oversight Board's sole discretion. The Series A Bonds will be issued in a principal amount sufficient to comply with the terms of the Fuel Line Lender PSA, which shall be approximately $650,000,000.

Series B Bonds shall have a final stated maturity of fifty (50) years from the Effective Date. The Series B Bonds shall be dated as of the Effective Date. Series B Bonds may be issued in the form of current interest bonds or convertible capital appreciation bonds and shall bear interest rates at a range of six percent (6.00%) to six and seventy-five hundredths percent (6.75%).

Series B Bonds shall be issued in two series: Series B-1 Bonds (Current Interest Bonds) and Series B-2 Bonds (Convertible Capital Appreciation Bonds). The Series B-1 Bonds will be

current interest bonds and shall bear interest at a rate of six percent (6.00%) per annum payable semi-annually, with an expected repayment of no later than thirty-four (34) years from the Effective Date based on 2022 Fiscal Plan Projections, subject to change based on load projections in subsequent PREPA Fiscal Plans. The Series B-1 Bonds have priority in principal repayment over the Series B-2 Bonds. Series B-1 Bonds shall be issued in the principal amount of approximately $4.63 billion.

Series B-2 Bonds will be convertible capital appreciation bonds and shall bear interest at a rate of six and seventy-five one-hundredths percent (6.75%) per annum, accreting annually until July 1, 2028, at which point the Series B-2 Bonds shall convert to paying interest semi-annually, with an expected repayment of thirty-five (35) years from the Effective Date based upon 2022 Fiscal Plan Projections, subject to change based on load projections in subsequent PREPA Fiscal Plans.  The Series B-2 Bonds shall be issued in an amount equal to the Administrative Expense Bonds Amount, with a maturity value of approximately $557,000,000 (with an assumed Effective Date of July 1, 2023 and an original principal value of approximately $400,000,000).

Where Reorganized PREPA is obligated to distribute Series B Bonds pursuant to the Plan, other than the Administrative Expense Bonds, Reorganized PREPA shall distribute Series B-1 Bonds.

The New Bonds shall have an aggregate original principal amount of up to approximately $5.68 billion.[15]  Series A Bonds shall be issued in a principal amount sufficient to comply with the terms of the Fuel Line Lender PSA.  The Series B Bonds shall be issued in a principal amount equal to the above referenced principal amounts.

 The New Bonds shall be secured by Reorganized PREPA's Net Revenues and the right to receive Net Revenues.  All Revenues shall be deposited in the "General Fund" held by Reorganized PREPA.  On the first business day of each month, Reorganized PREPA shall apply amounts in the following order of priority (the "Payment Waterfall"):

- *First*, to the payment of Operating Expenses;

- *Second*, to New Master Trustee fees and expenses not to exceed $100,000 per year;

- *Third*, to the "Debt Service Fund" held by the New Master Trustee up to the amount of the Legacy Charge Revenues, and from and after the Series B Bond Defeasance Date and until the CVI Maturity Date, up to the amount of the Remaining Legacy Charge Revenues[16];  and

- *Fourth*, to Reorganized PREPA for use as set forth in the New Master Indenture.

---

[15] The Ad Hoc Group believes that PREPA can afford to issue substantially more than the $5.68 billion in New Bonds.

[16] "Remaining Legacy Charge" means the fixed fee component of the Legacy Charge in place as of the Effective Date, from and after the Series B Bond Defeasance Date, through the CVI Maturity Date.

There shall be no event of default on the New Bonds (prior to stated final maturity of the Series A Bonds, solely with respect to the Series A Bonds, and generally with respect to the Series B Bonds) for failure to pay scheduled debt service so long as Reorganized PREPA (a) takes reasonable actions to (i) charge and collect the Legacy Charge,[17] (ii) collect the Revenues generated by the Legacy Charge, and (iii) deposit the full amount of Net Revenues up to the amount of the Legacy Charge Revenues into the Debt Service Fund after providing for distributions made in accordance with the Payment Waterfall, and (b) complies with the Interest Rate Covenant.

With respect to each series of New Bonds, all debt service that is not paid when due, whether at or prior to final scheduled maturity, shall remain due and outstanding until paid in full and shall be paid.  Interest shall not accrue on outstanding obligations under the New Bonds at the regular coupon rate after its respective stated maturity; only unpaid interest accrued prior to stated maturity and principal will be payable following the stated maturity if any remains outstanding at that time, although the Interest Rate Covenant would no longer apply.

A detailed description of the New Bonds to be issued pursuant to the plan can be found in Section VI.F of this Disclosure Statement.

**Overview of CVI to be Issued on the Effective Date**

On the Effective Date, Reorganized PREPA shall issue the CVI with a 0.00% coupon, a final maturity date of thirty-five (35) years after the Effective Date, which shall only be payable if the New Bonds and any Refunding Bonds are paid in full prior to their expected 35 year repayment. Payments shall be made on the CVI only after the occurrence of the Series B Bond Defeasance Date, so long as such date occurs prior to the CVI Maturity Date.  If the Series B Bond Defeasance Date occurs prior to the CVI Maturity Date, the CVI shall be payable from that portion of Net Revenues constituting the Remaining Legacy Charge Revenues deposited to the credit of the Debt Service Fund in accordance with the Payment Waterfall until the earlier of (a) the date on which the CVI Notional Amount has been paid in full and (b) the CVI Maturity Date. There shall be no event of default on the CVI so long as Reorganized PREPA takes reasonable actions to collect Revenues generated by the Remaining Legacy Charge and deposits the full amount of Net Revenues up to the amount of the Remaining Legacy Charge Revenues into the Debt Service Fund.

Because the New Bonds are only expected to be repaid in 35 years under the projections in the Certified Fiscal Plan, the CVI is "truly contingent" because it would only generate any payment if PREPA's realized load exceeds the Certified Fiscal Plan projections, and Legacy Charge Revenues remain after payment of operating expenses, notwithstanding the expiration of the Interest Rate Covenant.

---

[17] The Plan does not currently provide that PREPA's failure to charge and collect any rates other than the Legacy Charge is an event of default under the New Bonds.  It does, provide, however, that PREPA covenants to "make reasonable best efforts to (a) continue to levy and collect rates, fees, and charges, including, but not limited to, the Legacy Charge and the Remaining Legacy Charge and (b) deposit Net Revenues collected from such rates, fees, and charges into the Debt Service Fund in accordance with the Payment Waterfall." Plan Art. XIX.H.1. The Oversight Board anticipates adding this provision to the New Master Indenture.

## Overview of Legacy Charge

**Legacy Charge**

PREPA's current rates are insufficient to provide for the repayment of legacy or restructured debts after payment of PREPA's operating expenses.  Accordingly, to provide sufficient Net Revenues to provide a source of repayment of the New Bonds to be issued by PREPA under the Plan, the Plan requires the Debtor to implement the Legacy Charge, which will be an additional charge to PREPA's current rates.

The Legacy Charge is comprised of two components, a fixed monthly flat fee (the "Flat Fee") and a volumetric fee ("Volumetric Charge"), set at levels for each customer class, to be included in customer rates pursuant to the Plan and Confirmation Order.  This hybrid structure accounts for important objectives, including providing proper recompense to PREPA's legacy creditors, while minimizing: (i) the strain of increased rates on low-income and vulnerable customers, (ii) revenue losses due to customers either reducing their electricity consumption or transitioning to alternative electricity supplies.  The Oversight Board reserves its rights and may amend the rates prior to the confirmation objection deadline, upon further discussion with PREB, LUMA Energy and AAFAF, in a manner that will provide similar recoveries to creditors to those provided for in the Plan.

The Legacy Charge will have different tiers that will be assessed for each of PREPA's existing customer classes based on various factors, such as a respective capacity to tolerate rate increases.  Solely for purposes of assessing the Legacy Charge, the Plan will also provide for the creation of one new exemption from the Flat Fee and a portion of the Volumetric Charge for other low-income residential customers not already falling within an exempted customer class (see below).

The increase in Net Revenues generated from inclusion of the Legacy Charge will fund debt service on the New Bonds after payment of PREPA's Operating Expenses, as specified in the Plan.  The Legacy Charge is calculated so that the increase in Net Revenues is projected to cover the debt issued under the Plan within 35 years. The Legacy Charge will remain in place for the later of (i) the maturity of the CVI[18] and (ii) payment in full of the Series B Bonds.  Because the increase in Net Revenues to be generated from the Legacy Charge is required by the Plan to pay debt service, and otherwise necessary to support repayment of the New Bonds issued under the Plan, the Oversight Board asserts that PREB is required under Puerto Rico law to approve the Legacy Charge rate increase, provided, that PREPA with the approval of PREB will be able to amend the Legacy Charge in an economically neutral manner subject to the Amendment Test (as defined in the Plan).  If repayment in full of the principal of the New Bonds occurs prior to the maturity of the CVI, revenues from the fixed fee component of the Legacy Charge in place as of the Effective Date thereafter will fund distributions to holders of CVI until the maturity of the CVI.  Risks relating to the payment of New Bonds and CVI are discussed in Section VIII.

---

[18] The Legacy Charge that would support the CVI is limited to revenues from the Fixed Fee component of the Legacy Chare in place as of the Effective Date.

Application of the Legacy Charge: First, PREPA will charge the Flat Fee to all customers each month unless the customer qualifies for an exemption from the Flat Fee.  The amount paid for the Flat Fee portion of the Legacy Charge is a connection charge assessed on each non-exempt customer connected to PREPA's electricity grid.  Second, PREPA will charge a Volumetric Charge based on each customer's consumption of electricity supplied by PREPA.  The Volumetric Charge will be assessed on a cents per-kilowatt hour basis, the amount of which will vary per customer class, for electricity consumed during each billing cycle.  Mirroring PREPA's current rate structure, a different Volumetric Charge will be assessed for consumption at or below 500 kWh per month and for consumption above that level for all residential and certain commercial classes.[19]  A detailed description of the derivation of the Legacy Charge structure is attached hereto as Exhibit P.

Customers eligible for an exemption from the Flat Fee will also be exempt from paying the Volumetric Charge up to 500 kWh of monthly metered consumption.  If an exempt customer's utilization exceeds that threshold, that customer will be charged fifty percent of the Volumetric Charge applicable for such customer class for consumption above the threshold on a per-kilowatt hour basis.

The Debtor intends to provide a new exemption from the Flat Fee and the Volumetric Charge up to 500 kWh for certain customers.  This exemption is intended to protect lower-income residential customers, which are the most vulnerable, from further burden.  To ensure the most vulnerable customers are not overly strained by the Legacy Charge, PREPA will create a new exemption for qualifying low-income residential customers that are not enrolled in the Lifeline Residential Rate (*Servicio Residencial Especial*) (the LRS rate)[20] or the existing public housing subsidy rate (the RH3 and RFR rates)—the three rate classes that are also exempt and already receive certain subsidies.  Residential customers of PREPA will qualify for this new exemption if their Modified Adjusted Gross Income (MAGI) is below a certain threshold similar to the MAGI eligibility levels needed to qualify for Medicaid healthcare benefits in Puerto Rico.[21]  It is expected that the new exempt class will overlap with the three existing PREPA rate classes listed above that are exempt from the Legacy Charge, however, it will include additional customers that do not fall into existing exempt rate classes. The Oversight Board is developing a methodology for identifying and applying the specific criteria for the additional exemption from the Legacy Charge, as discussed in footnote 2 on page 4 of Exhibit P, that would not be burdensome to implement and will not change the projected cash flow derived from the Legacy Charge.

PREPA customers currently enrolled in one of PREPA's existing subsidy customer classes, such as those for the elderly, students, customers that depend on lifesaving medical equipment, customers with disabilities, and participants in the Puerto Rico Nutrition Assistance

---

[19] PREPA currently utilizes a 425kWh threshold.

[20] Customers who fulfill the criteria to enroll in the Nutritional Assistance Program are eligible to enroll in the LRS rate.

[21] It has not yet been determined how and how often MAGI threshold levels qualifying for an exemption will be monitored and when a customer no longer qualifies.

Program (Programa de Asistencia Nutricional), among others, will continue to receive their existing subsidies from PREPA without interruption and may or may not be exempt from the Legacy Charge depending on whether they fall within the exempted customer classes mentioned above.

The Legacy Charge will be collected as part of the PREPA bill by PREPA's operator and servicer in the same manner the bills are currently collected.

The level of Flat Fee and Volumetric Charge that different customer classes will incur to support payment of the New Bonds is set forth in the table below. Notably, however, PREPA, with the approval of PREB, subject to the Amendment Test, will have the ability to modify the Flat Fee and Volumetric Charge provided that it will be done in an economically neutral manner, in structure and amounts that do not delay or extend the respective expected repayment date and expected weighted average life of the Series A Bonds and the Series B Bonds, and otherwise that are reasonably acceptable to the Required Fuel Line Lenders, and which will not decrease the projected revenues attributable to the Legacy Charge as of the date of the amendment to the Legacy Charge.[22]

**Legacy Charge Allocation**

| | Fixed Fee ($/month) | Volumetric Charge (<\/=500 kWH, c/kWH) | Volumetric Charge (>500 kWH, c/kWH) |
|---|---|---|---|
| **RESIDENTIAL** | | | |
| RH3, LRS, RFR | $ - | - | 1.50 |
| GRS 111/112 (Subsidy-eligible) | $ - | - | 1.50 |
| GRS 111/112 (General) | $ 13 | 0.75 | 3.00 |
| **COMMERCIAL** | | | |
| GSS 211 | $ 16.25 | 1.50 | 3.00 |
| GSP 212 | $ 800 | 1.45 | 1.45 |
| GST 213 862 | $ 1,800 | 0.97 | 0.97 |
| **GOVERNMENT** | | | |
| GSS 211 | $ 20 | 1.45 | 2.90 |
| GSP 212 | $ 800 | 1.45 | 1.45 |
| GST 213 862 | $ 1,800 | 0.97 | 0.97 |

---

[22] The Legacy Charge will be assessed on all of PREPA's customers, except where the Plan specifically exempts some or all of the Flat Fee or Volumetric Charge. While all rate classes are subject to the Legacy Charge, some may currently be "empty" classes that do not have any customers. For the avoidance of doubt, any rate class not identified in the Plan or herein, any class not included in Annex 1 to Plan Schedule B (but included in Annex 2 to Plan Schedule B), any class that is subsequently created, or any existing but empty rate class that subsequently has customers, will be subject to the Legacy Charge and will be classified in a way that does not decrease the projected revenues attributable to the Legacy Charge, unless PREPA, with the approval of PREB, subject to the Amendment Test, will modify the Legacy Charge in an economically neutral manner, which shall not decrease the projected revenues attributable to the Legacy Charge.

| MUNICIPALITIES | | | |
|---|---|---|---|
| GSS 211 | $          - | - | - |
| GSP 212 | $          - | - | - |
| GST 213 | $          - | - | - |
| 862 | | | |
| INDUSTRIAL | | | |
| GSS 311 | $          20 | 2.18 | 2.18 |
| GSP 312 | $          800 | 2.18 | 2.18 |
| GST 313 | $        1,800 | 1.45 | 1.45 |
| TOU-T 363 | $        1,800 | 1.45 | 1.45 |
| LIS 333 | $        1,800 | 1.45 | 1.45 |
| TOU-T 963 | $        1,800 | 1.45 | 1.45 |

**PREPA Customer Segmentation[23]**

PREPA maintains a differentiated rate structure for its customers depending on their customer class.   The descriptions below, in conjunction with any other categorization of customers currently utilized by PREPA, identify categories of PREPA's customer base that may be utilized in establishing how each PREPA customer is charged the Legacy Charge.

**Residential Classes**

1. GENERAL RESIDENTIAL SERVICE (GRS) - This rate shall apply to residential customers for domestic uses for a residence or apartment unless they fit into one of the other classes below.  This rate may also apply to houses, apartments, and other structures which are primarily intended for residential purposes, where no more than two rooms in which the total connected load does not exceed 500 watts are used by tenant for business or professional purposes.

2. LIFELINE RESIDENTIAL SERVICE (LRS) - This rate shall apply to residential customers, who fulfill the Nutritional Assistance Program criteria, for all domestic uses for a residence or apartment.

3. RESIDENTIAL SERVICE FOR PUBLIC HOUSING PROJECTS (RH3) - This rate shall apply to residential customers of Public Housing Projects supported or subsidized in whole or in part by loans, grants, contributions or appropriations of the federal, state, or municipal governments.

4. RESIDENTIAL FIXED RATE FOR PUBLIC HOUSING UNDER OWNERSHIP OF THE PUBLIC HOUSING ADMINISTRATION (RFR) - The RFR Rate is established by according to the dispositions of Act 22-2016 and is granted to customers residing in a

---

[23]      PREPA      rate      book,      as      of      May      2019.      Accessible      at: https://lumapr.com/wp-content/uploads/2021/07/Tariff-Book-Electric-Service-Rates-and-Riders-Revised-by-Order-05172019-Approved-by-Order-05282019.pdf.

housing unit physically located within a public housing project owned by the Public Housing Administration for all domestic uses.

**Commercial and Industrial Classes**

1. GENERAL SERVICE AT SECONDARY DISTRIBUTION VOLTAGE (GSS) - This rate shall apply to any non-residential service with a load lower than 50 kVA. Also, it shall apply to temporary electric power service for limited use in streets, carnivals and others.

2. GENERAL SERVICE AT PRIMARY DISTRIBUTION VOLTAGE (GSP) - This rate shall apply to industrial customers and commercial customers. Service shall be rendered through a single point of connection and a single meter.

3. GENERAL SERVICE AT TRANSMISSION VOLTAGE (GST) - This rate shall apply to commercial and industrial customers, connected to the transmission system, that have a demand of 250 kVA or greater, for general uses including motive power, heating, refrigeration, and incidental lighting of industries, hotels, and any other establishment.

4. TIME OF USE AT PRIMARY DISTRIBUTION VOLTAGE (TOU-P) - This rate shall apply to commercial and industrial customers with a demand of 1,000 kVA or greater, that: 1. Transfer load from the on-peak period to the off-peak period 2. Add load during the off-peak period 3. Remove load from the on-peak period

5. TIME OF USE AT TRANSMISSION VOLTAGE (TOU-T) - This rate shall apply to commercial and industrial customers with a demand of 1,000 kVA or greater, that: 1. Transfer load from the on-peak period to the off-peak period 2. Add load during the off-peak period 3. Remove load from the on-peak period

6. LARGE INDUSTRIAL SERVICE -115 kV (LIS) - This rate is exclusively for industries with a demand equal to 12,000 kW or higher, with a load factor equal to 80% or higher, and a monthly average power factor equal to 95% or higher.

7. GENERAL AGRICULTURAL SERVICE AND AQUEDUCT PUMPS OPERATED BY RURAL COMMUNITIES (GAS) - This rate applies to farmers and customers dedicated to raising animals. The service shall be provided for motive power, lighting, irrigation pumps, refrigeration and heating. Also, this rate applies to customers that operate pumps to supply aqueduct service exclusively in rural communities; incidental lighting related to this operation is permitted.

8. OUTDOOR SPORTS FIELD LIGHTING FOR PARKS WHERE ADMISSION RIGHTS ARE COLLECTED (LP-13) - This rate shall apply to sports fields where admission rights are collected having a connected load for outdoor illumination of 500 kilowatts or greater

9. CABLE TV POWER SUPPLIES (CATV) - This rate applies to all cable TV power supplies.

10. UNMETERED SERVICE FOR SMALL LOADS (USSL) - This rate shall apply to the services of the electric equipment installed on PREPA's pole or structures that operate 24 hours a day, except for that equipment for which PREPA has another rate available (for example: Cable TV).

11. POWER PRODUCERS CONNECTED AT PREPA BUS BAR - This rate shall apply to large power producers connected to the 230 kV bus bar that require PREPA's electric power service during startup, programmed maintenance, and outages of its generating equipment.

12. PUBLIC LIGHTING GENERAL (PLG) - This rate shall apply to the lighting of streets, ball parks and other parks of free admission, plazas, telephone booths, bus shelters, and traffic and police strobe lights.

**Overview of Avoidance Action Trust**

PREPA has identified certain Avoidance Actions, listed on Exhibit L, which will be transferred to the Avoidance Actions Trust on the Effective Date.[24]  On or before the Effective Date, PREPA will enter into the Avoidance Actions Trust Agreement and establish the Avoidance Actions Trust.  The Avoidance Actions Trust Assets will consist of the Avoidance Actions and Cash held by the Avoidance Actions Trustee.  The Avoidance Actions Trust will be governed by a three-member board appointed as of the Effective Date, selected by the Oversight Board. This board will appoint the Avoidance Actions Trustee on or prior to the Effective Date.

The Avoidance Actions Trustee will have the power to litigate or compromise and settle the Avoidance Actions.  On a monthly basis, the Avoidance Actions Trustee will distribute to the GUC Trust all excess cash on hand, which will be a part of the General Unsecured Claim Recovery.

**Class Treatment and Potential Variation Based on Contingent Litigation**

PREPA is currently involved in various contested matters and adversary proceedings with parties such as the Bondholders and PREPA ERS.  Resolution of these proceedings, whether by decision or settlement, will have a material effect on certain creditors' recovery under

---

[24] The Oversight Board will disclose in a plan supplement whether certain avoidance actions, including what the UCC refers to as the "Fuel Oil Litigation" (Adv Proc. Nos. 19-00381, 19-00384), and other vendor actions, including Adv Proc. No. 19-00384, and/or their proceeds will be added to the Avoidance Action Trust.  If the Oversight Board determines to transfer such actions or their proceeds to the Avoidance Actions Trust, it would only serve to enhance the GUC recoveries disclosed in the Plan.  These avoidance actions are described in Part V on the Disclosure Statement.  While the Oversight Board will not undertake to value these actions (which would likely involve some estimation of the probability of success), the amount PREPA is seeking to avoid can be determined by reference to the complaint themselves.

the Plan.   The following section first summarizes these proceedings and their individual significance, then describes the effect the outcomes of these proceedings will have on creditors' recovery under the Plan.

**Litigation Affecting Distributions Under the Plan**

*Amended Lien & Recourse Challenge*

The Oversight Board is currently litigating *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019) (the "Amended Lien & Recourse Challenge"), whereby the Oversight Board seeks to (i) disallow any secured claim held by the Bondholders beyond the funds actually deposited in the Sinking Fund (the "Lien Scope Counts"); and (ii) limit any potential recourse, secured or unsecured, to the monies deposited in the in the aforementioned funds (the "Recourse Counts").

If the Title III Court finds that the Bond Trustee's security interest and recourse is limited to the Sinking Fund, then PREPA may be able to satisfy the approximately $8.5 billion in asserted Bond claims by providing the monies currently in the Sinking Fund, thus greatly enhancing the recoveries of many of PREPA's other creditors.

If the Title III Court holds the security interest is limited in the manner described above, but that the Bond Trustee has an unsecured deficiency claim against PREPA for the amount not satisfied by the monies in the Sinking Fund, then such deficiency claim would share *pro rata* with PREPA's other General Unsecured Claims, significantly diluting such claimholders' recoveries.

Finally, if the Title III Court determines the Bond Trustee has a security interest in PREPA's present or future net or gross revenues, the Bondholders will receive Series B Bonds in a face amount equal to the value of their collateral, up to all Series B Bonds available for distribution under the Plan and subject to Series B Bonds provided to the Settling Bondholders. In addition, the Ad Hoc Group believes that the value of the Series B Bonds may be substantially less than their face amount because it insists they are not market securities.  To the extent the Series B Bonds are insufficient to pay the Bond Trustee the value of its collateral, the Bond Trustee may argue at confirmation that PREPA is obligated to issue additional Series B Bonds or otherwise provide for additional payment to the Bond Trustee not currently contemplated by the Plan.   In such circumstance, the Plan may not be confirmable or feasible without material amendments.   Additionally, in this scenario, the Bond Trustee may also have an unsecured deficiency claim against PREPA, which claim, to the extent not satisfied by the issuance of Series B Bonds, would share *pro rata* with PREPA's other General Unsecured Claims.

*PREPA ERS Current Expense Litigation*

On October 30, 2019, PREPA ERS filed an amended complaint against PREPA and other parties seeking determinations that all amounts owed to it are "Current Expenses" under the Trust Agreement and must be paid before any further payments are made to the Bond Trustee or the Bondholders.   PREPA ERS further argued it is a third party beneficiary of the Trust Agreement and the Trust Agreement constitutes a valid subordination agreement under the Bankruptcy Code.

PREPA ERS holds a significant claim against PREPA.  Should the Title III Court find PREPA ERS's claims are a "Current Expense" and entitle them to repayment in full before Bond claims receive any recovery, the distributions under the Plan may have to be amended, although the amount of overall consideration under the Plan could remain unchanged.

*Fuel Line Lender Priority Action*

The Oversight Board, the Ad Hoc Group, the Monoline Insurers, the Bond Trustee, and the Fuel Line Lenders are currently litigating the Current Expense Adversary Proceeding, whereby the Fuel Line Lenders seek declarations that all amounts owed to them are "Current Expenses" under the Trust Agreement and subordination of the Bondholders' claims.  The Oversight Board proposes to settle the Current Expense Adversary Proceeding

The Oversight Board has entered in the Fuel Line Lender PSA that settles the Fuel Line Lenders' claims against PREPA and the counts against PREPA in the Current Expense Adversary Proceeding as part of this Plan by giving the Fuel Line Lenders bonds that are senior to the bonds that all other creditors, including the Bondholders, will receive.  Certain creditors have argued that this is an intercreditor dispute that the Oversight Board cannot settle.  They also take issue with the amount and terms of the consideration.  The Oversight Board believes that, because the claims are against PREPA, it can settle such claims against PREPA in the reasonable amount embodied in the Fuel Line Lender PSA.  The Oversight Board further believes that, under the Trust Agreement, PREPA has discretion to determine which expenses constitute "Current Expenses" and can therefore be paid ahead of bondholders.  The Ad Hoc Group contends the Bonds are payable before other creditors and that the Trust Agreement does not permit payment of the Fuel Line Lenders' claims prior to payment on the Bonds.

**Class Treatment Based on Litigation Outcomes**

*Settling Bondholder Claims*

Regardless of the outcome of the above-described proceedings, Settling Bondholders will receive from PREPA a stated recovery of 50.00% on their respective Allowed claims in the form of their *pro rata* share of the Sinking Fund and a distribution of Series B Bonds.  However, the quantity of recovery on the remaining portions of their Allowed claims depends on the result of the Amended Lien & Recourse Challenge.  If PREPA and the Oversight Board prevail on the Lien Scope Counts and Recourse Counts, then the Non-Settling Bondholders and Non-Settling Monolines' recovery may be limited to the Sinking Fund, and additional Series B Bonds may therefore be available for distribution to Settling Bondholders.  In such a scenario, the Oversight Board currently anticipates Settling Bondholder Claims would be receive 100% recoveries in Series B Bonds.  If, on the other hand, the Non-Settling Bondholders and Non-Settling Monolines prevail on some or all counts, then the Settling Bondholders will receive CVI in an amount equal to their remaining allowed claims.

*Non-Settling Bondholder and Non-Settling Monoline Claims*

The Non-Settling Bondholders and Non-Settling Monolines' recovery is determined, in part, by the outcome of the Amended Lien & Recourse Challenge and whether they vote to

accept the Plan provided, however that regardless of the outcome, Non-Settling Bondholders and Non-Settling Monolines will receive their *pro rata* share of the Sinking Fund.

If Non-Settling Bondholders prevail on the Recourse Counts, then any allowed unsecured deficiency claim will share, *pro rata*, in the General Unsecured Claim Recovery with all other holders of Claims in the Unsecured Claims Pool.

If Non-Settling Bondholders and Non-Settling Monolines prevail on the Lien Scope Counts, they will receive Series B Bonds in the face amount equal to the value of their collateral beyond amounts in the Sinking Fund, up to the amount of Series B Bonds available for distribution after distributions to the Settling Bondholders.

If Non-Settling Bondholders and Non-Settling Monolines vote to accept the Plan and the Oversight Board prevails on the Recourse Counts, they will receive CVI in the notional amount of such holder's Remaining Disallowed Non-Settling Claim, defined as the principal and interest accrued and unpaid on their PREPA Revenue Bond claim through the Petition Date, minus the cash from the Sinking Fund distributed to such holder.

*Assured Insured Interest Rate Swap Claims*

The Assured Insured Interest Rate Swap Claims were to have received substantially the same treatment as settled bond claims under the 2019 RSA.  The Assured Insured Interest Rate Swap Claims have the same priority, if any, as the PREPA Revenue Bond Claims, which the Oversight Board believes is the basis for the Plan's provisions affording the swap claims with the same treatment as the bond claims and for the related references in the Plan to the Amended Lien & Recourse Challenge.  The outcome of the Amended Lien & Recourse Challenge, therefore, would impact their recoveries in the same manner it would impact holders of claims in Class 2.

*Fuel Line Loan Claims*

To settle their claims, including their assertion of priority over the Bond Claims and assertion of entitlement to postpetition interest, the Fuel Line Lenders will receive treatment of (i) Series A Bonds in the face amount equal to 84.00% of their prepetition claim, (ii) Series A Bonds or cash, in the Oversight Board's discretion, in the face amount of interest deemed to have accrued on account of each holder's *pro rata* share of Series A Bonds to be distributed during a period equal to the shorter of December 1, 2022 through the Effective Date or one (1) year, and (iii) for the remaining 16.00% of their claim, a *pro rata* share of the Series B Bonds that remain after distribution of such bonds to National, Settling Bondholders, and Non-Settling Bondholders,  initial distribution to the GUC Trust for the benefit of holders of claims in the General Unsecured Claims Pool up to 50.00% of their Allowed Claims, and the 20% distribution of the Net Remaining New Bonds to the PREPA PayGo Trust.

In exchange for their efforts in connection with consummation of their settlement and confirmation of a plan, and not on account of their claims, the Fuel Line Lenders shall receive the Fuel Line Lender PSA Creditors Fees, comprised of $15 million in consummation costs and up to $11 million in professional fee reimbursement.

*General Unsecured Claims*

Much like recovery for the Non-Settling Bondholders and Non-Settling Monolines, recovery for General Unsecured Claims will vary materially based on the Amended Lien & Recourse Challenge's outcome.

If the Non-Settling Bondholders and Non-Settling Monolines prevail on all counts, holders of General Unsecured Claims will receive their *pro rata* share of the Series B Bonds available for distribution, if any, after distribution of such Bonds to the Settling Bondholders, National, Fuel Line Lenders, and Non-Settling Bondholders (up to the amount of the value of their collateral).  If the Non-Settling Bondholders' collateral is determined to be the same or greater than the Series B Bonds available for distribution, holders of General Unsecured Claims will receive no New Bonds under the Plan, but will share on a *pro rata* basis in the proceeds of the Avoidance Action Trust and CVI.

If the Non-Settling Bondholders and Non-Settling Monolines lose on the Lien Scope Counts, but prevail on the Recourse Counts, then their deficiency claims will receive the General Unsecured Claim Recovery.  This result would substantially dilute the recovery of other holders of General Unsecured Claims.  The Oversight Board currently estimates General Unsecured Claims would receive Series B Bonds in the amount of approximately 46.49% of their claim in this scenario.

If the Non-Settling Bondholders and Non-Settling Monolines lose on all counts in the Amended Lien & Recourse Challenge, then holders of General Unsecured Claims will receive their *pro rata* share of the Series B Bonds up to 100% of their claim.[25]

In all events, holders of General Unsecured Claims will receive, payable from the GUC Trust, their *pro rata* share of the Avoidance Action Proceeds.  They will also receive CVI in the notional amount of their remaining claim after distributions of Series B Bonds, if any.

**Bondholder, Monoline, and Assured Insured Interest Rate Swap Exchange Offer**

PREPA is currently a party to two interest rate swaps, with JPMorgan Chase Bank N.A. and UBS AG as counterparties, with notional amounts of $169.53 million and $83.34 million respectively. Both swaps mature on July 1, 2029. Given that swap payments are calculated periodically, the estimated amount of such payments (including termination damages) is not presently ascertainable.

---

[25] This assumes the amount of General Unsecured Claims is less than $3 billion.  The Oversight Board currently estimates the amount of General Unsecured Claims at $800 million, with a low estimated value of approximately $300 million and a high estimated value of approximately $1.43 billion. *See* Section II.B.8.  If the amount of General Unsecured Claims exceeds $3 billion, distributions to General Unsecured Claims would be made as follows:  General Unsecured Claims will receive their *pro rata* share of the Series B Bonds up to 50% of their claim.  Of the Series B Bonds that remain available for distribution thereafter, 20% of such bonds will go to the PREPA PayGo Trust.  The remaining 80% of Series B Bonds will be shared pro rata among (i) the Remaining Claims of the holders of General Unsecured Claims, (ii) 40.00% of Settling Bondholders Remaining Claims, and (iii) the Remaining Claims of the Fuel Line Lenders.  If and only if both (a) GUC New Bonds equal 100% of the Remaining Claims of the Unsecured Claims Pool and (b) 100% of the Remaining Claims of the Fuel Line Lenders are paid in full, Settling Bondholders will receive up to an additional 60% of their pro rata share of Net Remaining New Bonds, if any.

In order to allow holders of PREPA Revenue Bond Claims and Assured Insured Interest Rate Swap Claims to settle their Claims against PREPA, the Oversight Board provided each such holder with the opportunity to sign a settlement agreement by the expiration of the Exchange Offer Period (as defined below), pursuant to which such holder could agree to be treated as a Settling Bondholder or Settling Monoline, as appropriate, pursuant to the Plan.  Any signing claimholder shall receive a contra-CUSIP in exchange for their current holdings.  Any holder that did not sign and deliver the settlement agreement shall be treated as a Non-Settling Bondholder or Non-Settling Monoline, as appropriate, and will not be able to join the Settling Bondholder and Settling Monoline Class, unless the Oversight Board agrees to extend such deadline, but in no event will such deadline be extended after a ruling by the Title III Court on the Amended Lien & Recourse Challenge.

The Holder of Assured Insured Interest Rate Swaps Claims was also entitled to settle claims, rights, and remedies against PREPA arising under the swap agreements and applicable law (including, without limitation, claims arising under the Bankruptcy Code safe harbor provisions).   The Holder of Assured Insured Interest Rate Swap Claims did not elect to settle such claims during the Exchange Offer Period and, accordingly, will receive the same treatment as Non-Settling Bondholders and Non-Settling Monolines under the Plan if such claims are Allowed.

The Oversight Board commenced the period within which the holders of uninsured PREPA Revenue Bond Claims can sign the settlement offer (the "Exchange Offer Period") on January 27, 2023, with the Exchange Offer Period concluding on February 24, 2023 at 5p.m. (ET). *See Notice of Distribution of Settlement Offer Notice to Uninsured Bondholders* [ECF No. 3171] ("Settlement Agreement Notice"). Each eligible holder received through The Depository Trust company ("DTC") a settlement offer notice, a settlement agreement, and settlement term sheet, pursuant to which such holder may become a Settling Bondholder under the Plan, and explaining, among other things, the proposed treatment of such holder's Claims if the holder signs the settlement agreement.[26]  During the Exchange Offer Period, 0.98% of eligible holders with claims totaling approximately $75 million signed the settlement agreement and elected to be treated as Settling Bondholders under the Plan. Any failure to deliver the signed agreement prior to the expiration of the Exchange Offer Period will prevents such holder from opting into the settlement class and from receiving the treatment that such class will receive if the Disclosure Statement is approved and the Plan is confirmed.

### **Illustrative Distribution of New Bonds Under the Plan**

For illustrative purposes only, the following summarizes the distributions of New Bonds under the Plan:

1.  Approximately four-hundred million ($400,000,000), or such lower principal or original principal amount as determined by the Oversight Board at or prior to the Confirmation Hearing, in Series B Bonds will be sold to the Commonwealth at par for Cash to fund payments of Administrative Expense Claims.

---

[26] Copies of these documents are included as exhibits to the Settlement Agreement Notice.

2.  Holders of Fuel Line Loan Claims will receive Series A Bonds in the amount of 84.00% of their Allowed Claim.  The Series A Bonds will accrue up to 1 years' worth of interest from the date the Fuel Line Lender PSA is effective, payable in Series A Bonds or Cash.  They will also receive Cash or Series A Bonds for the Fuel Line Lender Creditors Consummation Fees and Fuel Line Lender PSA Creditors Professionals' Reimbursement Fees.  They will also get distributions on their Remaining Claim (16.00%) depending on the outcome, or favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

3.  National will receive 71.65% of the Allowed National Insured Bond Claim and 20.00% of the Allowed National Reimbursement Claim in Series B Bonds.

4.  Settling Bondholders will receive between 50.00% of their Allowed Claim in Series B Bonds.  They will also get distributions on their Remaining Claim depending on the outcome, or favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

5.  Non-Settling Bondholders and Non-Settling Monolines will receive Series B Bonds in accordance with their litigation recoveries.  This could be nothing if they lose Lien Counts and Recourse Counts, or it could be up to all the Series B Bonds that remain available for distribution if they win the Lien Counts and the Court determines their collateral is worth as much as the Series B Bonds available for distribution after primary distributions to Settling Bondholders.[27] If the Non-Settling Bondholders and Non-Settling Monolines lose the Lien Counts but win on Recourse Counts, they will have a deficiency claim that will be treated the same as General Unsecured Claims.[28]

6.  General Unsecured Claims will receive, up to 50.00% of their claim, the Series B Bonds that remain after distributions to the Fuel Line Lenders, National, the Settling Bondholders, and Non-Settling Bondholders and Non-Settling Monolines.  They will also get distributions on their Remaining Claim (50.00%) depending on the outcome, or favorable settlement, of the Amended Lien & Recourse Challenge (*see* #7 below).

7.  If there are Series B Bonds remaining after paying General Unsecured Claims and Deficiency Claims (if any) up to 50.00% of their claims, then the PREPA PayGo Trust will get 20.00% of the Gross Remaining New Bonds.

---

[27] Certain creditors have asserted the amount of Series B Bonds that Non-Settling Bondholders would receive could be more than the amount of Series B Bonds contemplated under this Plan (in which case this Plan may not be confirmable or feasible without material amendments).

[28] Holders of Assured Insured Interest Rate Swap Claims will receive the same treatment as Non-Settling Bondholders and Non-Settling Monolines.

8. The other 80.00% of the Gross Remaining New Bonds will be shared ratably between the Remaining Claims of (i) General Unsecured Claims (50.00%), (ii) the Fuel Line Lenders (16.00%), and (iii) 40.00% of the Remaining Claims of the Settling Bondholders (*i.e.*, 20.00% (40.00% of 50.00%)).

9. If and only if both (a) GUC New Bonds equal 100% of the Remaining Claims of the Unsecured Claims Pool and (b) 100% of the Remaining Claims of the Fuel Line Lenders are paid in full, Settling Bondholders will receive up to an additional 60% of their pro rata share of Net Remaining New Bonds, if any.

10. Excess New Bonds available after creditors recover fully on their Allowed Claims, shall either be deemed not to be issued by PREPA, or shall be issued and distributed to the PREPA PayGo Trust, at PREPA's discretion.



### Settlement of Outstanding Disputes

### Settlement of Outstanding Disputes with National

Pursuant to the terms of the National PSA, and in exchange for the consideration to be provided in the Plan, National agrees to settle, waive, release, and discharge all claims against PREPA, including, but not limited to, the following disputes (such disputes are summarized in Section V of this Disclosure Statement):

- Amended Lien & Recourse Challenge:

  o All counterclaims and affirmative defenses related to *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019).

  o Any other claims, theories, rights, and defenses related to, among other things, their proofs of claims and/or the Master PREPA Bond Claim, including, but not limited to, the scope of the asserted security interest in PREPA's property, assets, or revenues, whether the claims have recourse beyond moneys deposited to the credit of the Sinking Fund, and other asserted rights related to certain contractual covenants or statutory rights, including to seek

appointment of a receiver, an increase in PREPA's electricity rates, or the enforcement of collection of customers' bills.

- Motion to Appoint Receiver and Dismiss Title III Case:

  o Motion to Dismiss PREPA's Title III Case.

  o Any other motions, objections or joinders to these or such other motions or objections that may be filed related to the requested relief, including, but not limited to, seeking to lift the automatic stay, the appointment of a receiver at PREPA, and the dismissal of PREPA's Title III Case.

Pursuant to the terms of the Settlement Offer Memorandum, Settling Bondholders made various covenants, including a covenant not to take or encourage any other person to take any action which would reasonably be expected to impede the administration of the Title III Case or the confirmation or consummation of the Plan.

Settling Bondholders may only terminate the Settlement Agreement in limited circumstances.

### Settlement of Outstanding Disputes with Settling Bondholders

Pursuant to the terms of the Settlement Offer Memorandum, and in exchange for the consideration to be provided in the Plan, the Settling Bondholders agree to settle, waive, release, and discharge all claims against PREPA, including, but not limited to, the following disputes (such disputes are summarized in Section V of this Disclosure Statement):

- Amended Lien & Recourse Challenge:

  o All counterclaims and affirmative defenses related to *The Financial Oversight and Management Board for Puerto Rico v. U.S. Bank Nat'l Ass'n*, Adv. Proc. No. 19-00391 (D.P.R. July 1, 2019).

  o Any other claims, theories, rights, and defenses related to, among other things, their proofs of claims and/or the Master PREPA Bond Claim, including, but not limited to, the scope of the asserted security interest in PREPA's property, assets, or revenues, whether the claims have recourse beyond moneys deposited to the credit of the Sinking Fund, and other asserted rights related to certain contractual covenants or statutory rights, including to seek appointment of a receiver, an increase in PREPA's electricity rates, or the enforcement of collection of customers' bills.

- Motion to Appoint Receiver and Dismiss Title III Case:

  o Motion to Dismiss PREPA's Title III Case.

  o Any other motions, objections or joinders to these or such other motions or objections that may be filed related to the requested relief, including, but not

limited to, seeking to lift the automatic stay, the appointment of a receiver at PREPA, and the dismissal of PREPA's Title III Case.

**Settlement of Outstanding Disputes with Fuel Line Lenders**

Pursuant to the terms of the Fuel Line Lender PSA, and in exchange for the consideration to be provided in the Plan, if the Fuel Line Lenders vote to accept the Plan, they agree to settle, waive, release, and discharge all claims against PREPA and the Settling Bondholders, including the following disputes (such disputes are summarized in Section V.G.3 of this Disclosure Statement):

- *Cortland Capital Market Services LLC v. The Financial Oversight and Management Board for Puerto Rico*, Adv. Proc. No. 19-00396 (D.P.R. July 9, 2019).

- Any other claims or rights related to the Fuel Line Loans, including, but not limited to, the Fuel Line Lenders' asserted priority and seniority over the Bonds pursuant to any agreement.

**Settlement of Outstanding Disputes with Vitol**

Pursuant to the terms of the Vitol Settlement Agreement, and in exchange for the consideration to be provided in the Plan, the following disputes in connection with Vitol will be compromised and settled pursuant to the Plan (such disputes are summarized in Section V.G.20-21 of this Disclosure Statement):

- Vitol's Releases:

  o Upon the effective date of the Plan, Vitol has agreed to release PREPA and the Oversight Board from any and all claims and causes of action arising out of or relating in any manner whatsoever to *PREPA v. Vitol Inc. et al.*, Adv. Proc. No. 19-00453 (D.P.R. Nov. 14, 2019).

  o For the avoidance of doubt, the Vitol Settlement Agreement expressly preserves any and all of Vitol's claims, rights, and defenses related to the avoidance action styled *Special Claims Comm. v. Inspectorate America Corp.*, Adv. Proc. No. 19-00388 in Case No. 17-bk-3283-LTS, D.P.R.

- PREPA's Releases:

  o Upon the effective date of the Plan, PREPA has agreed to release Vitol from any and all claims and causes of action arising out of or relating in any manner whatsoever to *PREPA v. Vitol Inc. et al.*, Adv. Proc. No. 19-00453 (D.P.R. Nov. 14, 2019).

  o For the avoidance of doubt, the Vitol Settlement Agreement expressly preserves any and all of PREPA's claims, rights, and defenses related to the avoidance action styled *Special Claims Comm. v. Inspectorate America Corp.*, Adv. Proc. No. 19-00388 in Case No. 17-bk-3283-LTS, D.P.R.

## Estimation of Allowed General Unsecured Claims

As described further herein, the Plan treats and discharges claims filed against PREPA, including a class of General Unsecured Claims.  While almost $6 billion of General Unsecured Claims have been filed against PREPA, claims reconciliation remains ongoing by the Debtor, the Oversight Board, and their professional advisors.  Attached hereto as **Exhibit O** is a table describing the asserted amounts of filed claims, as well as the Debtor's current low and high estimates for various categories of General Unsecured Claims and the current "Adjusted Estimated Value," reflecting the Debtor's reasonably best projection regarding the ultimate allowed amount of General Unsecured Claims for purposes of providing information to holders of General Unsecured Claims regarding their potential recoveries under the Plan.  Of course, as noted in Article VIII of this Disclosure Statement, the recovery for holders of General Unsecured Claims might be higher or lower depending on the actual amount of General Unsecured Claims ultimately allowed.  This uncertainty is unavoidable as the claim reconciliation process is ongoing.

As described further on Exhibit O, the Debtor's Adjusted Estimated Claim Value is approximately $800 million, with a low estimated value of approximately $300 million and a high estimated value of approximately $1.43 billion.  The differences between the estimates are attributable to six categories of General Unsecured Claims: (a) PPOA rejection damages claims, (b) the grievances portion of UTIER's proof of claim, (c) litigation claims, (d) a litigation claim filed by UITICE, and (e) employee-related claims.

## PPOA Claims.

Almost $3 billion of the General Unsecured Claims pool has been asserted by 12[1] counterparties to terminated PPOAs agreements or master PPOAs, each of whom alleges millions of dollars (in certain cases, hundreds of millions) in damages relating to development costs, loss of profits that such claimants believe they would have been entitled to under each claimant's respective PPOA, and other damages.

The Oversight Board anticipates it will object to certain PPOA claims in advance of Plan confirmation.  To develop its estimates, the Debtor and its professional advisors have investigated and considered the viability of each of the three components of the PPOA claims.  The vast majority of the face value of such claims assert damages in the form of lost profits.  However, the Oversight Board believes the holders of PPOA claims are not entitled to claim any such damages because (i) each of the PPOAs was terminated in accordance with its terms and subject to provisions contained therein that prohibit the claimant from seeking additional damages upon termination, (ii) the majority of the PPOAs contain a provision explicitly prohibiting any claim on account of lost profits, and (iii) in any event, the claims do not provide information sufficient to substantiate a lost profits damages claim.  Section 13.3 of most of the PPOAs provides that "[n]otwithstanding anything to the contrary in this Agreement, neither

---

[1]   Fourteen claims were filed by PPOA counterparties.  Two of them, filed by AES and Ecoelectrica, relate to ongoing contracts and have been resolved by the parties.

Party . . . shall in any event be liable to the other Party . . . for claims . . . made by either Party for lost profits . . . ."  Accordingly, the Oversight Board's estimates heavily discount the lost profits component of the PPOA Claims, and eliminate such amounts in the low end of the estimate.  The Adjusted Estimated Value of the PPOA claims thus amounts to approximately $460 million, which includes an adjustment for the lost profits aspects of these claims.

### UTIER Grievances Claim

In addition to the contract damages claim, the UTIER POC asserts a claim in the amount of approximately $1.1 billion in damages related to grievances and other claims under the UTIER CBA.  Following the filing of the proof of claim, the Debtor requested additional information and supporting documentation from UTIER to support the asserted claim amount, and received approximately 50,000 physical documents relating to various grievances asserted, none of which included any valuation information or other supporting data.  The Debtor's professionals have been diligently reviewing the claims asserted in the documentation provided, with the assistance of the Debtor's employees who have significant experience mediating union claims.  That review has identified approximately 26,000 individual grievance claims.  Valuing these claims with reference to historical claim valuation data, the Debtor believes the UTIER grievances will be allowed in an Adjusted Estimated Value of approximately $230 million.

### Litigation Claims

Approximately 200 proofs of claim were filed against the Debtor on account of various litigations pending against PREPA, for an aggregate asserted total of approximately $545 million.  In conjunction with its local counsel, who have been responsible for representing PREPA in litigation since well before the filing of this Title III Case, the Debtor has been diligently reviewing the claims asserted in the various litigations and, based upon its understanding of the litigations asserted, as well as offers made or accepted with respect to the claims in this category that have been included within the ADR process, have estimated the Adjusted Estimated Value to be approximately $30 million.

### UITICE Litigation Claim

UITICE, one of the Debtor's previous employee unions, filed proof of claim number 80187, which asserts damages purportedly arising from modifications to PREPA's health benefits program for employees and retirees. PREPA and UITICE were parties to a collective bargaining agreement that, among other things, provided retired UITICE employees and their spouses "will receive the Comprehensive Health Program known as the AR Plan" and that the "rules and conditions" of the Health Benefits Program be provided pursuant to the CBA "shall not be inferior to those currently in effect . . . or to the terms, conditions, and benefits negotiated in this agreement.  The provider network will be materially similar to the current network in case of any change."  UITICE CBA, Art. XXV, § 4.  PREPA later altered the health insurance provider with similar coverage at a lower cost, recognizing savings of approximately $225 million.  UITICE challenged PREPA's action, and PREPA was later ordered to compensate

retired members of UITICE for any loss of benefits they suffered, with such amount to be substantiated in a separate proceeding. UITICE filed a proof of claim for the asserted amount of $225 million, attaching only the judgment against PREPA as evidence in support of such amount. PREPA disputes that UITICE's represented employees suffered any damages as coverage under the two health plans were substantially similar. PREPA has therefore requested additional documentation from UITICE to support its asserted claim amount or to otherwise substantiate the loss of benefits incurred by its members. Despite such requests, UITICE has to date not responded and has failed to provide any documentation to support its asserted claim amount. PREPA intends to object to this claim and believes it should be reduced to $0 absent further documentary support for the alleged damages. However, the Adjusted Estimated Claim value includes a reserve equating to an aggregate value of approximately $11 million, which equates to approximately $22,500 per UITICE employee.

### Employee Claims

Many PREPA employees have also asserted claims against PREPA in the aggregate amount of approximately $15 million, relating to various employment-related issues such as amounts allegedly owed on account of vacation pay, sick pay, Christmas Bonuses, and more. Many of these asserted amounts relate to amounts such employees believe they were entitled to earn above the amounts set forth in various Commonwealth laws, including, but not limited to, the amounts for fringe benefits such as Christmas Bonuses, sick pay, and vacation pay in, among others, Act 66-2014 and Act 26-2017. The Debtor believes that some of these claimed amounts may be duplicative of UTIER's claim for damages under the UTIER CBA as asserted in Adversary Proceeding No. 17-00229, which was dismissed as to PREPA. Accordingly, the low estimate for employee-related claims removes such asserted amounts, while the high estimate includes all asserted claim amounts. The Debtor's current Adjusted Estimated Value is approximately $9 million.

Document comparison by Workshare Compare on Wednesday, March 1, 2023 9:57:07 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\na.proskauer.com\firm\Home\CH1\10109\Desktop\PREPA\2.21.23 Filing\PREPA - Revised Proposed Disclosure Statement Order (As Filed 2.21.23).docx |
| Description | PREPA - Revised Proposed Disclosure Statement Order (As Filed 2.21.23) |
| Document 2 ID | file://\\na.proskauer.com\firm\Home\CH1\10109\Desktop\PREPA - Revised Proposed Disclosure Statement Order (As Filed 3.1.23).docx |
| Description | PREPA - Revised Proposed Disclosure Statement Order (As Filed 3.1.23) |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 918 |
| Deletions | 506 |
| Moved from | 6 |
| Moved to | 6 |
| Style changes | 0 |

| Format changes | 0 |
|---|---|
| Total changes | 1436 |